

Deposition of:
## 30(b)(6) Michael Buchman

*January 4, 2019*

In the Matter of:

## The Mitchell Company, Inc. Vs. Knauf Gips KG, Et Al.

Veritext Legal Solutions
800.808.4958 | calendar-atl@veritext.com  | 770.343.9696

Page 1

1            IN THE UNITED STATES DISTRICT COURT

          FOR THE EASTERN DISTRICT OF LOUISIANA

2

3   IN RE:  CHINESE MANUFACTURED    MDL DOCKET NO. 2047

    DRYWALL PRODUCTS LIABILITY

4   LITIGATION,

5

    THIS DOCUMENT RELATES TO        SECTION L

6   Mitchell Co. Inc. v. Knauf      JUDGE FALLON

    Gips, et al., 09-cv-4115        MAG. JUDGE WILKINSON

7

8

9            30(b)(6)VIDEO DEPOSITION OF

10      TAISHAN GYPSUM CO., LTD. AND TAI'AN TAISHAN

11              PLASTERBOARD CO., LTD.

12                (MICHAEL BUCHMAN)

13         January 4, 2019 - 9:50 a.m.

14                King & Spalding

15             1180 Peachtree Street

16                Atlanta, Georgia

17      Robyn Bosworth, RPR, CRR, CRC, CCR-B-2138

18

19

20

21

22

23

24

25

30(b)(6) Michael Buchman                    January 4, 2019
The Mitchell Company, Inc. Vs. Knauf Gips KG, Et Al.

Page 2

1        INDEX TO EXHIBITS
2 EXHIBIT   DESCRIPTION                      PAGE
3 For the Defendants:
4 Exhibit 1  Notice of Deposition           9
5 Exhibit 2  Mitchell Class Discovery Request
6      List                                11
7 Exhibit 3  Subject properties list        21
8 Exhibit 4  Environ Phase 1:  Video and Drywall
9      Identification Inspection Form        28
10 Exhibit 5  Magnolia Lakes community map   31
11 Exhibit 6  Magnolia Lakes, Ft. Myers Banner
12      Deliveries                          38
13 Exhibit 7  Invoices                      40
14 Exhibit 8  Amended Complaint             42
15 Exhibit 9  Declaration of Ray Phillips in
16      Support of Motion for Class
17      Certification                       43
18 Exhibit 10 Settlement Agreement and Release   50
19 Exhibit 11 Settlement Agreement          55
20 Exhibit 12 Chinese Wall Settlement Program GBI
21      Payments to Beazer Homes Corp. as of
22      1/2/2018                            63
23 Exhibit 13 Builder Plaintiffs' Renewed Motion
24      for Class Certification Against
25      Taishan Gypsum Co., Ltd.            65

Page 3

1 Exhibit 14 Beazer accounting report       74
2 Exhibit 15 Beazer accounting report       86
3 Exhibit 16 Chinese Drywall flyer          89
4 Exhibit 17 4/24/09 letter from Kimberly Royal
5      to Beazer Homes                      91
6 Exhibit 18 6/25/09 letter from King & Spalding
7      to Robert Brown, Esq.                92
8 Exhibit 19 Work Authorization Agreement and
9      Limited Release and Assignment of
10      Property Damage Claims (Royal)      93
11 Exhibit 20 Work Authorization Agreement and
12      Limited Release and Assignment of
13      Property Damage Claims (Gill)       97
14 Exhibit 21 Work Authorization Agreement and
15      Limited Release and Assignment of
16      Property Damage Claims (Mary Jane
17      Trust)                              99
18 Exhibit 22 Work Authorization Agreement and
19      Limited Release and Assignment of
20      Property Damage Claims (Overbeck)   100
21 Exhibit 23 Work Authorization Agreement and
22      Limited Release and Assignment of
23      Property Damage Claims (Kapalin)    102
24
25

Page 4

1 Exhibit 24 Work Authorization Agreement and
2      Limited Release and Assignment of
3      Property Damage Claims (Wilcox)     104
4 Exhibit 25 6/10/11 letter from Stefanie Loomis
5      to Mr. and Mrs. Attard              105
6 Exhibit 26 5/21/09 letter from Keith Tobeck to
7      Kevin Clark                         106
8 Exhibit 27 Work Authorization Agreement and
9      Limited Release and Assignment of
10      Property Damage Claims (Morris)     108
11 Exhibit 28 Repair Protocol for Addressing
12      Damages from Defective Gypsum
13      Wallboard in Single-Family Detached
14      Units                              111
15 Exhibit 29 Repair Protocol for Addressing
16      Damages from Defective Gypsum
17      Wallboard in Multi-Family Units     113
18 Exhibit 30 Scope of Work                 114
19 Exhibit 31 Letter from Michael Batteau to
20      Glenn Davis                         117
21
22
23        INDEX TO EXAMINATION              PAGE
24 By Ms. Eikhoff                           6
25

Page 5

1 APPEARANCES OF COUNSEL:
2 On behalf of The Mitchell Co., Inc.:
3      STEVEN L. NICHOLAS, ESQ.
4      Cunningham Bounds, LLC
5      1601 Dauphin Street
6      Mobile, Alabama 36604
7 On behalf of Beazer Homes Corp.:
8      J. KEVIN BUSTER, ESQ.
9      SUSAN CLARE, ESQ.
10      King & Spalding LLP
11      1180 Peachtree Street NE
12      Atlanta, Georgia  30309
13 On behalf of Taishan Gypsum Co., Ltd. and Tai'An
14 Taishan Plasterboard Co., Ltd.:
15      CHRISTINA HULL EIKHOFF, ESQ.
16      MAE MANUPIPATPONG, ESQ.
17      Alston & Bird LLP
18      1201 West Peachtree Street NW
19      Atlanta, Georgia 30309
20 Also Present:  Bryan Robinson, videographer
21      (Pursuant to Article 10(B) of the Rules
22 and Regulations of the Georgia Board of Court
23 Reporting, a written disclosure statement was
24 submitted by the court reporter to all counsel
25 present at the proceeding.)

2 (Pages 2 - 5)

30(b)(6) Michael Buchman                    January 4, 2019
The Mitchell Company, Inc. Vs. Knauf Gips KG, Et Al.

Page 6

1        THE VIDEOGRAPHER:  We're on the record.
2 The time is 9:50 a.m.  Today is January 4th, 2019,
3 and this is the beginning of the 30(b)(6) video
4 deposition for Beazer Homes Corporation.  The
5 corporate representative is Michael Buchman.
6        Will counsel present please identify
7 themselves and who they represent.
8        MR. NICHOLAS:  Steve Nicholas representing
9 Mitchell Company and the proposed class.
10        MR. BUSTER:  Kevin Buster representing
11 Beazer.
12        MS. CLARE:  Susan Clare representing
13 Beazer.
14        MS. EIKHOFF:  Christy Eikhoff representing
15 Taishan.
16        MS. MANUPIPATPONG:  Mae Manupipatpong
17 representing Taishan.
18        THE VIDEOGRAPHER:  Thank you, Counsel.
19        Will the court reporter please swear in
20 the witness.
21             MICHAEL BUCHMAN,
22 having been first duly sworn, was examined and
23 testified as follows:
24             EXAMINATION
25 BY MS. EIKHOFF:

Page 7

1    Q   Good morning.  Will you please state your
2 name for the record?
3    A   Michael Buchman.
4    Q   Okay.  And by whom are you employed?
5    A   Beazer Homes.
6    Q   What is your title there?
7    A   I'm customer care manager for the Fort
8 Myers division.
9    Q   How long have you been with Beazer?
10    A   15 years.
11    Q   Okay.  And in your 15-year tenure, have
12 you always held the same title?
13    A   No.
14    Q   What -- how -- what was your original
15 title when you came to Beazer 15 years ago?
16    A   I was a warranty rep.
17    Q   Okay.  And was that in the Fort Myers
18 area?
19    A   Yes.
20    Q   Okay.  And after you were a warranty rep,
21 what did you become?
22    A   I was a construction superintendent.
23    Q   About when was that?
24    A   2006 -- I'm sorry, 2005.
25    Q   Okay.  And that was also in Fort Myers?

Page 8

1    A   Yes.
2    Q   Okay.  And then after construction
3 superintendent?
4    A   I went back to customer care in 2009.
5    Q   Okay.  And have you been there ever since?
6    A   Yes.
7    Q   Okay.  Who do you report to?
8    A   Grant Settle.
9    Q   Okay.  How long have you reported to
10 Mr. Settle?
11    A   About a year and a half.
12    Q   Okay.  And before that, who did you report
13 to?
14    A   Jim Moore.
15    Q   Okay.  Have you ever reported to Ray
16 Phillips?
17    A   Yes.
18    Q   When did you report to him?
19    A   Between 2006 and until his departure in, I
20 believe, 2008.
21    Q   Okay.
22    A   And there was -- there was a gap of time
23 between when I reported to him and then when I
24 reported to him again, which was around the end of
25 2009-2010 time frame.

Page 9

1    Q   Okay.  I thought you said that he left
2 around 2008?
3    A   Yeah.  He was brought back, though, to the
4 Orlando division.  It was a time of transition for
5 the company, and then --
6    Q   Okay.
7    A   -- from Orlando, they put him in charge,
8 pretty much, of the state.
9    Q   So he came back to Beazer after 2008?
10    A   Correct.
11    Q   And you reported to him again --
12    A   Yes.
13    Q   -- in 2009, 2010; is that correct?
14    A   2009, '10, yeah.
15    Q   Okay.
16    A   I think it stretched into 2011.
17    Q   Okay.
18        MS. EIKHOFF:  Can we get the depo notice?
19        (Defendant's Exhibit 1 was marked for
20 identification.)
21 BY MS. EIKHOFF:
22    Q   Mr. Buchman, I'm handing you a document
23 that's been marked as Exhibit 1.  I'll represent to
24 you it is the Notice of Deposition that was filed
25 for today's proceedings.

3 (Pages 6 - 9)

30(b)(6) Michael Buchman     January 4, 2019
The Mitchell Company, Inc. Vs. Knauf Gips KG, Et Al.

Page 10

1     Do you recognize that document?
2   A   Yes.
3   Q   Have you seen it before?
4   A   Yes.
5   Q   Okay. And are you familiar with the
6 deposition topics that are enumerated starting on
7 page 7?
8   A   Yes.
9   Q   Are you testifying today on behalf of
10 Beazer for each and every one of these deposition
11 topics?
12   A   I am.
13   Q   Okay. And so there's no one else that
14 Beazer Homes is going to proffer as a different
15 witness for any of these topics?
16     MR. BUSTER: Object to form.
17   A   Yeah, that, I -- that, I do not know.
18 BY MS. EIKHOFF:
19   Q   Do you have any knowledge of Beazer
20 designating any other witnesses to cover these
21 topics besides yourself?
22     MR. BUSTER: Object to form.
23   A   Not at the current time, no.
24 BY MS. EIKHOFF:
25   Q   Okay. You understand that you're

Page 11

1 testifying on behalf of the company?
2   A   I do.
3   Q   Okay.
4     (Defendant's Exhibit 2 was marked for
5 identification.)
6 BY MS. EIKHOFF:
7   Q   Mr. Buchman, I'm handing you a document
8 that's been marked as Exhibit 2. And I'll direct
9 your attention actually to the back side of that
10 document because those are document requests that
11 were directed to Beazer Homes.
12     Have you seen this list of document
13 requests before?
14   A   I don't believe so.
15   Q   Okay. So you have not been personally
16 involved in reviewing this list of requests and
17 determining whether the company has responsive
18 documents?
19   A   No, ma'am.
20   Q   Have you been involved at all in the
21 collection of responsive documents?
22   A   Yes.
23   Q   Okay. And who have you worked with on
24 collecting those documents?
25   A   I worked with counsel.

Page 12

1   Q   Okay. Anyone else at the company that you
2 worked with?
3   A   Cynthia Carter.
4   Q   Who is Cynthia Carter?
5   A   She's an assistant to our counsel.
6   Q   In the legal -- the Beazer legal
7 department?
8   A   Uh-huh.
9   Q   Okay. Anyone else?
10   A   No, ma'am.
11   Q   Okay. Have you ever testified in any case
12 involving Chinese drywall?
13   A   No, ma'am.
14   Q   Okay. Are you aware of anyone else at
15 Beazer testifying in relation to Chinese drywall
16 issues?
17   A   Former employees, yes.
18   Q   Okay. Which former employee or employees?
19   A   Ray Phillips and Jerry Smith.
20   Q   Okay. We talked about Ray Phillips.
21     Do you know what his -- his title was when
22 he testified on behalf of the company?
23   A   I believe he was VP of operations for
24 Florida.
25   Q   Okay. And what about Mr. Smith?

Page 13

1   A   Jerry -- Jerry had a hybrid job. He was
2 purchasing manager for Fort Myers and then a
3 customer care manager for Fort Myers.
4   Q   Okay. Did you ever report to Mr. Smith?
5   A   Yes.
6   Q   Okay. In what time frame?
7   A   '09-'0 -- I'm sorry, '09 and '10 time
8 frame.
9   Q   Okay. Do you know how it came to be that
10 Mr. Phillips testified as a witness for the
11 plaintiffs in the Hernandez matter?
12     MR. BUSTER: Object to form. Obviously
13 these are outside of the scope of the notice.
14 I'm -- I'm happy to let you ask him for his personal
15 knowledge.
16     MS. EIKHOFF: Oh, okay. We did ask -- we
17 did ask about prior proceedings, so...
18     MR. BUSTER: You did not -- this -- this
19 was not -- this was not a part of any of the areas
20 of the notice, but that's okay. You can ask him
21 for --
22     MS. EIKHOFF: Okay.
23     MR. BUSTER: -- his personal knowledge.
24 BY MS. EIKHOFF:
25   Q   Do you know?

4 (Pages 10 - 13)

30(b)(6) Michael Buchman                    January 4, 2019
The Mitchell Company, Inc. Vs. Knauf Gips KG, Et Al.

Page 14

1    A    I do not know why he was designated, no.
2    Q    Okay.  What lawsuits has Beazer been a
3  party to related to Chinese drywall?
4        MR. BUSTER:  Same objection.
5        MS. EIKHOFF:  It's actually directly in
6  the notice, so let me...
7        MR. BUSTER:  Not as framed.  Not as how
8  you framed the question.
9        MS. EIKHOFF:  I would just state for the
10 record that to the extent that Beazer's claim for
11 damages for attorneys' fees and for any legal
12 costs and legal judgments, that the lawsuits that
13 Beazer has been a party to involving Chinese drywall
14 is -- is directly within the scope.
15       MR. BUSTER:  That's a stretch.  It's not
16 something that we prepared for.  I don't think you
17 can read that into the deposition.
18       You can ask him for his knowledge, and I
19 can give you this information myself.
20       MS. EIKHOFF:  Okay.  Well, you're not a
21 sworn witness.  He's the company representative.
22       MR. BUSTER:  I'm a -- I'm an officer of
23 the court.  I can give you the information if you'd
24 like, but it's -- I'm objecting because it's outside
25 the scope of the notice, and we did not prepare for

Page 15

1  that.
2        MS. EIKHOFF:  Okay.  I -- I understand,
3  but I do think it's within the scope considering the
4  nature of the -- the nature of the claims.
5        MR. NICHOLAS:  You've asked the question.
6        MS. EIKHOFF:  Okay.
7  BY MS. EIKHOFF:
8    Q    So --
9    A    Yeah, I do not --
10   Q    -- you don't know?
11   A    I do not know.
12   Q    Okay.  What did you do to prepare for
13 today's testimony?
14   A    Met with counsel, reviewed documents.
15   Q    Okay.  Besides counsel, who else did you
16 talk to?
17   A    No one.
18   Q    No one?
19       You didn't reach out to Mr. Phillips?
20   A    No.
21   Q    Or Mr. Smith?
22   A    No.
23   Q    Okay.  Or anyone else that worked at
24 Beazer outside of the legal department during the
25 Chinese drywall issue time frame?

Page 16

1    A    To my knowledge, I'm the only one
2  remaining, so, no.
3    Q    Okay.  And did you review all the
4  documents that have been produced to us in response
5  to our document requests?
6    A    Not all, no.
7    Q    Okay.  Which documents do you recall, just
8  as a general category, do you recall reviewing?
9    A    We reviewed the work authorization
10 agreements --
11   Q    Okay.
12   A    -- job cost detail report; the repair
13 protocol from Environ; yeah, list of the properties;
14 reviewed some of the testing reports; scope of work.
15   Q    Okay.  Besides reviewing documents, did
16 you go into any company systems and look at data or
17 pull reports in preparation for today's deposition?
18   A    We -- not sure how to answer that.
19 Several months ago, we did --
20   Q    Okay.
21   A    -- a search for documents in our -- in our
22 system, in our Salesforce system.
23   Q    And that would -- the documents that you
24 were looking for would have been stored in
25 Salesforce?

Page 17

1    A    Yes.
2    Q    Okay.
3        MR. BUSTER:  Christy, if it'll help, I
4  don't think we were served with anything.  In fact,
5  I don't think this is an actual request for
6  production of documents.  Steve conveyed some stuff
7  to us that we then asked him to look for, so that's
8  how this worked.
9        MS. EIKHOFF:  Okay.  That is an actual
10 request for production of documents that was sent to
11 you and -- and has been the operative document
12 request in the case.
13       MR. BUSTER:  Well, nothing was served on
14 Beazer, let's put it that way.
15       MS. EIKHOFF:  Understood.  But -- Beazer's
16 counsel.  So that's -- that -- that's how it works.
17       MR. BUSTER:  No, class counsel.
18       MS. EIKHOFF:  Doesn't matter.  Counsel for
19 Beazer.
20       MR. BUSTER:  Well --
21       MS. EIKHOFF:  They're -- he represents
22 Beazer.
23       Steve you represent Beazer, yeah?
24       MR. NICHOLAS:  I do not represent Beazer.
25       MS. EIKHOFF:  No.

5 (Pages 14 - 17)

30(b)(6) Michael Buchman                                    January 4, 2019
The Mitchell Company, Inc. Vs. Knauf Gips KG, Et Al.

Page 18

1        MR. NICHOLAS: But -- A. But I'm not
2  trying to argue about whether we responded. I think
3  we did. I'm not sure that's a formal document
4  request, but I think we responded to it.
5        MS. EIKHOFF: You'll agree that the
6  parties have treated these as discovery requests for
7  the case?
8        MR. NICHOLAS: I'll agree I've tried to
9  comply with it as a document request, yes.
10       MS. EIKHOFF: Okay.
11       MR. BUSTER: I -- I was informed it was an
12  informal request for information, and we pulled --
13  Mike is the one who pulled everything in response to
14  it. But that's why he hasn't seen this particular
15  document.
16  BY MS. EIKHOFF:
17    Q   You mentioned looking for documents in
18  Salesforce. And that was done, you said, several
19  months ago, am I --
20    A   Yes, three to four months ago.
21    Q   I'm sorry, let me -- let me strike that
22  and start over --
23    A   Okay.
24    Q   -- because that was a -- a poorly worded
25  question on my part.

Page 19

1        So when was it that you went into
2  Salesforce to look for documents in response to our
3  requests?
4     A   My recollection is -- recollection is
5  three to four months ago.
6     Q   Okay. And what reports did you pull at
7  that time?
8     A   Well, Salesforce is our customer service
9  website, so basically any work authorization
10  agreements should have been scanned and filed in
11  there, some Environ reports. It wasn't -- it wasn't
12  total. Some of the documents we found were hard
13  copies in the homeowner files, which I also provided
14  to our counsel, which in turn provided them to
15  Susan.
16    Q   Okay. And what about accounting reports,
17  would those have also been pulled from Environ or
18  would that have come from a different system?
19    A   That was in-house from our accounting
20  department.
21    Q   Okay. And were you involved in pulling
22  the accounting reports or did someone else do that?
23    A   Someone else did that.
24    Q   Okay. Do you know who?
25    A   Yes.

Page 20

1     Q   Who?
2     A   Chad -- what's his last name. Oh my god.
3  He's going to kill me. Cassimere. And I --
4  C-A-S-S-I-M-E-R-E.
5     Q   Okay. Chad Cassimere --
6     A   Uh-huh.
7     Q   -- from accounting?
8     A   Yeah.
9     Q   Okay. We received six rounds of documents
10  from Beazer in this case. We received documents on
11  October 20th, 2017; February 9th, 2018; July 27th,
12  2018; August 2nd, 2018; and December 7th, 2018.
13       Were you involved in the collection and
14  production of documents during those times?
15    A   Only in the latter part of 2018.
16    Q   Okay. We received a document production
17  that was quite voluminous on December 7th, 2018, so
18  just a few weeks ago. And then just this morning,
19  counsel provided us with three more documents.
20       Are you aware of any further responsive
21  documents that Beazer has that they have not
22  produced to us?
23    A   I'm not aware, no.
24    Q   Okay. One of the documents that we were
25  provided shortly before the deposition started I'm

Page 21

1  going to mark as Exhibit 3.
2        MS. EIKHOFF: No, this.
3        MS. MANUPIPATPONG: Oh.
4        MS. EIKHOFF: That's mine.
5        Oh, here it is.
6        (Defendant's Exhibit 3 was marked for
7  identification.)
8  BY MS. EIKHOFF:
9     Q   Did you create this document, Mr. Buchman?
10    A   I did not.
11    Q   Okay. Were you involved in the creation
12  of this document?
13    A   No, ma'am.
14    Q   Do you know who created it?
15    A   I do not.
16       MS. EIKHOFF: Why don't we take a break
17  and go off the record for a second.
18       MR. BUSTER: Sure.
19       THE VIDEOGRAPHER: Off the record at
20  10:09.
21       (Recess 10:09-10:13 a.m.)
22       THE VIDEOGRAPHER: Back on the record at
23  10:13.
24  BY MS. EIKHOFF:
25    Q   During the break, counsel for Beazer and

6 (Pages 18 - 21)

30(b)(6) Michael Buchman                                            January 4, 2019
The Mitchell Company, Inc. Vs. Knauf Gips KG, Et Al.

Page 22

1 class counsel represented that this document is a
2 summary that counsel prepared based on other
3 documents in Beazer's possession.  I will ask you
4 about the information in this document even though
5 it sounds like you were not involved in the creation
6 of it, and we'll see what the company's knowledge is
7 with respect to the content of this document.  Okay?
8    A    All right.
9    Q    In our deposition notice, topic number 1
10 was all subject properties, including addresses,
11 owners, occupants, build dates, remediation dates,
12 and sales transactions.
13         And "subject properties" is defined as
14 properties which allegedly contain drywall
15 manufactured by Taishan and for which Beazer will
16 seek damages in Mitchell.
17         Looking as -- at Exhibit 3, can you
18 testify as to whether these are all of the subject
19 properties as defined in the deposition notice?
20    A    Yes, they are.
21    Q    The second -- the first column of
22 Exhibit 3 is a list of addresses.  By my count, it
23 appears that there are 26 addresses listed in the
24 first two pages and 22 in the second two pages for a
25 total of 48; is that correct?

Page 23

1    A    Yes, ma'am.
2    Q    Okay.  The second column has an owner
3 name.  Are these the owners of the subject
4 properties?
5    A    Yes, ma'am.
6    Q    Okay.  The original owners, I should say?
7    A    Some may not be the original owners.  It
8 was who owned the home at the time of the
9 remediation, but, yes.
10    Q    Okay.  And then the third column is
11 drywall stage.
12         Do you know what that date refers to?
13    A    This would be the date where drywall was
14 set to begin in our scheduling system called
15 BuildPro.
16    Q    The original installation of drywall?
17    A    Correct.
18    Q    Okay.  What is the close of escrow date?
19    A    That is the date that the original
20 homeowner closed on the home.
21    Q    Okay.  What is the repair cost?
22    A    Repair cost is basically our money out the
23 door as detailed in the job cost report, so what it
24 cost us to remediate the home.
25    Q    Remediate specifically with respect to

Page 24

1 Chinese drywall?
2    A    Correct.
3    Q    Okay.  And where -- from where did these
4 figures derive?
5    A    From Chad in the accounting department.
6    Q    Okay.  And do you know what accounting
7 software Chad uses?
8    A    I do not.
9    Q    Okay.  Do you know what reports would
10 yield the underlying cost information that would go
11 into this number?
12    A    Do you mean the specific cost per line
13 item?  In other words --
14    Q    What report would be run that would
15 itemize these costs that are being totaled in this
16 column?
17    A    Yeah, each -- each job has a job number in
18 Chad's system, so for each of these homes
19 originally, they had a specific community code.
20 When we did the Chinese drywall, they add everyone
21 in the system where it's this home but only for
22 Chinese drywall.  So Chad would go in under that
23 detail and then pull the costs associated with that.
24    Q    So there was a code for Chinese drywall
25 remediation?

Page 25

1    A    Correct.
2    Q    And Chad could run a report using that
3 code that would itemize the cost associated with
4 each subject property?
5    A    Exactly.
6    Q    And this column on Exhibit 3 is a total of
7 those costs?
8    A    Yes, ma'am.
9    Q    Okay.  The next column is Banner
10 settlement.  Do you know what that represents?
11    A    Vaguely.  I saw that for the first time
12 yesterday, but...
13    Q    Do -- do -- can you explain what your
14 understanding is?
15    A    My understanding is that's the moneys
16 received per home from the -- from Banner Supply,
17 which was a supplier in Fort Myers.
18    Q    And what about global settlement?
19    A    I believe that is the settlement with
20 Knauf.
21    Q    Repair cost is a total of Beazer's
22 expenses related to Chinese drywall remediation; is
23 that correct?
24    A    Yes.  Well, it's, money -- yeah, money out
25 the door that it cost to get the homeowner back in.

7 (Pages 22 - 25)

30(b)(6) Michael Buchman                    January 4, 2019
The Mitchell Company, Inc. Vs. Knauf Gips KG, Et Al.

Page 26

1    Q   Right.  Banner settlement and global
2  settlement moneys, are those moneys received by
3  Beazer?
4    A   Yes.
5    Q   Okay.  So even though on this spreadsheet
6  they're all shown as positive numbers, it is a cost
7  outlay, the -- the total in the repair cost column,
8  whereas Banner and global settlement columns are
9  actually moneys received?
10    A   That is my understanding, yes.
11    Q   And then the final column is summary of
12  drywall.  Do you know the basis of the data provided
13  in that column?
14    A   Yeah.  This information is derived from
15  Environ's initial reporting.  Basically when we --
16  when you did the demo on each home, they
17  photographed the back of each piece of drywall in
18  that home.  So there's a photograph of each piece of
19  drywall, and then they wrote down on the report how
20  many boards were certain types and then ran a
21  percentage average.
22    Q   Okay.  So the drywall manufacturer names
23  and percentages that are reported in this summary
24  that were prepared by counsel are based on Environ
25  inspection reports?

Page 27

1    A   Inspection reports and photographs, yes.
2    Q   Okay.  We previously received from class
3  counsel a list of properties and costs that is
4  different from Exhibit 3.
5    A   Uh-huh.
6    Q   To the extent that it is different from
7  Exhibit 3, is it the company's testimony that
8  Exhibit 3 is the correct list of subject properties
9  and itemization of costs?
10       MR. BUSTER:  Object to form.
11    A   For -- yeah, for costs out the door.  In
12  other words, for the construction and relocation
13  phase, yes.
14  BY MS. EIKHOFF:
15    Q   And it is the correct list of subject
16  properties?
17    A   It is.
18    Q   Did Beazer -- did Beazer rely on Environ
19  for the identification of drywall manufacturers in
20  the subject properties?
21    A   Yes.
22    Q   And Environ identified manufacturers of
23  drywall besides Taishan; is that correct?
24    A   Yes.
25    Q   Are the other drywall manufacturers

Page 28

1  identified by Environ listed in the final column of
2  Exhibit 3?
3    A   Yes.
4    Q   And are some of these drywall
5  manufacturers U.S. manufacturers in addition to
6  Chinese manufacturers?
7    A   Yes.
8       (Defendant's Exhibit 4 was marked for
9  identification.)
10  BY MS. EIKHOFF:
11    Q   Handing you a document that's been marked
12  as Exhibit 4.  I'll represent that these are
13  photographs that were produced by Beazer in response
14  to our discovery requests.
15       Do you know where these photographs came
16  from?
17    A   Yes, I do.
18    Q   Where?
19    A   Magnolia Lakes, Michael Batteau's house,
20  13270 Little Gem Circle.
21    Q   Okay.  And who took these photographs?
22    A   This would have been Environ.
23    Q   Okay.  And Environ was a consultant that
24  Beazer hired specifically for drywall -- Chinese
25  drywall issues?

Page 29

1    A   That is correct.
2    Q   Okay.  On Exhibit 3 for 13270 Little Gem
3  Circle, which is the property that you just
4  identified these pictures as relating to, the
5  summary of drywall report says:  Taishan,
6  24 percent; Knauf, 30 percent; National Gypsum,
7  46 percent; ceiling, 100 percent National Gypsum.
8       Do you see that?
9    A   I do.
10    Q   Do you know whether National Gypsum is a
11  Chinese drywall manufacturer or domestic drywall
12  manufacturer?
13    A   They are domestic.
14    Q   Okay.  And does Beazer have any
15  independent basis to attribute any of the markings
16  in this packet to Taishan?
17       MR. BUSTER:  Object to form.
18    A   Can -- can you restate the question?
19  BY MS. EIKHOFF:
20    Q   Does Beazer have any basis for asserting
21  that certain markings in this packet are
22  specifically Taishan markings?
23       MR. BUSTER:  Object to form.
24    A   Yeah, only through Environ.
25  BY MS. EIKHOFF:

8 (Pages 26 - 29)

Page 30

1    Q    Okay.
2    A    Uh-huh.
3    Q    So to the extent that Beazer is reporting
4  that certain markings are attributable to Taishan,
5  that is solely based on Environ's attribution --
6        MR. NICHOLAS: Object to the form.
7  BY MS. EIKHOFF:
8    Q    -- correct?
9    A    To your knowledge, yes.
10   Q    Okay.
11       MR. BUSTER: I'd also note that that's
12  outside the scope of the depo notice.
13       MS. EIKHOFF: It's not.
14       MR. BUSTER: Can you show me where you
15  asked Beazer to explain the basis for attributing
16  the source of the drywall in the notice?
17       MS. EIKHOFF: It is the basis of their
18  claims against our client. And it's each and every
19  one of the subject properties --
20       MR. BUSTER: Yeah, well --
21       MS. EIKHOFF: -- so subject properties are
22  properties with Taishan drywall, and so the
23  determination of which properties are identified as
24  subject properties is within the scope.
25       MR. BUSTER: Yeah. So we object that it's

Page 31

1  not, and I'm putting you on notice that he was --
2  he's -- was not prepared to testify for the company
3  on that topic. I don't think it's adequately
4  specified in here at all.
5        MS. EIKHOFF: Do this one.
6        We also asked about each -- all the
7  documents produced by Beazer. That was one of the
8  enumerated topics, so we can ask him questions about
9  the documents that have been produced.
10  BY MS. EIKHOFF:
11   Q    This is a --
12       MR. BUSTER: I'm sorry?
13  BY MS. EIKHOFF:
14   Q    -- the document --
15       MR. BUSTER: I'm sorry? What is --
16  what -- which number are you talking about?
17       MS. EIKHOFF: Documents produced by
18  Beazer.
19       MR. BUSTER: Where? Which number are you
20  talking about that you think triggers this line of
21  inquiry as a corporate representative?
22       MS. EIKHOFF: I stand corrected, documents
23  produced by Beazer was not one of the enumerated
24  topics.
25       (Defendant's Exhibit 5 was marked for

Page 32

1  identification.)
2  BY MS. EIKHOFF:
3    Q    Handing you a document that has been
4  marked as Exhibit 5. This is a document that was
5  produced by Beazer in response to our discovery
6  requests.
7        Do you recognize this document?
8        MR. BUSTER: I'm going to object to form.
9        Again, Beazer was never served with a
10  discovery request.
11       MS. EIKHOFF: They produced documents.
12       MR. BUSTER: Yes, voluntarily that we had
13  understood you -- you had asked Steve for.
14       MS. EIKHOFF: This is -- this is semantic.
15  They were documents produced by Beazer in relation
16  to this claim.
17       MR. BUSTER: They were, but not in
18  response to a document request. That's my only
19  point. We weren't --
20       MS. EIKHOFF: We requested documents, and
21  you guys produced them.
22       MR. BUSTER: Can you show me a certificate
23  of service or a letter or anything that shows
24  service --
25       MS. EIKHOFF: Can we --

Page 33

1        MR. BUSTER: -- on Beazer?
2        MS. EIKHOFF: -- take a break? Can we
3  take a break?
4        MR. BUSTER: I just don't want -- I don't
5  want --
6        MS. EIKHOFF: Off the record.
7        MR. BUSTER: No, I'm on the record.
8        MS. EIKHOFF: Okay. On the record, go
9  ahead. Speech.
10       MR. BUSTER: I just want -- I want the
11  record to be clear. I don't want there to be a
12  false impression created that Beazer was served with
13  discovery requests. We weren't. We haven't been.
14  That's all.
15       MS. EIKHOFF: We have made
16  representations --
17       MR. BUSTER: I'm counsel of record. Never
18  got anything from you. Never saw this document
19  right here that you claim is a -- a request for
20  production. That's all I want.
21       I'm happy to -- to -- to stipulate that we
22  produced documents in response to areas that we
23  understood you were interested in at Steve's
24  request. We did that. We can stipulate to that.
25       MS. EIKHOFF: Then I don't know what the

9 (Pages 30 - 33)

Page 34

1 argument is about.
2       MR. BUSTER: The -- your -- your use of
3 words.
4       MS. EIKHOFF: The use of words "document
5 request" when we requested documents and you guys
6 produced documents.
7       Are you done?
8       MR. BUSTER: Yeah, I'm done --
9       MS. EIKHOFF: Okay.
10       MR. BUSTER: -- for now.
11       MR. NICHOLAS: What's the question about
12 this document?
13       MS. EIKHOFF: This is a document with a
14 Bates number on it from Beazer. It says Beazer v.
15 Knauf Gips, et al., CB:706348. It was not only
16 provided to us in response to our requests for
17 documents, but it was also produced in other
18 litigation related to Chinese drywall.
19       MR. BUSTER: Correct.
20 BY MS. EIKHOFF:
21    Q   Do you recognize this document?
22    A   I do not.
23    Q   Okay. Can you explain what the positive
24 and negative annotations on this document relate to?
25    A   I can only make an assumption as to what

Page 35

1 they relate to.
2    Q   Okay. Do you recognize this map?
3    A   Yeah, this looks to be Magnolia Lakes
4 community.
5    Q   Okay. And Magnolia Lakes is one of the
6 communities where Chinese drywall was identified by
7 Environ?
8    A   That is correct.
9    Q   Okay. Was Chinese drywall found in every
10 one of the Magnolia Lakes properties?
11    A   No, it was not.
12    Q   Okay. Out of all of the Magnolia Lakes
13 properties, do you know how many did have Chinese
14 drywall?
15    A   26.
16    Q   Out of?
17    A   Of -- I think it's 113, 114.
18    Q   Okay. 26 out of 113 or 114?
19    A   I'm looking here. Looks like it would be
20 one -- looks like it would be 117.
21    Q   Somewhere around 20 to 25 percent, does
22 that sound right?
23    A   Roughly, yes.
24    Q   Okay. And so in the Magnolia Lakes
25 neighborhood, were there -- there would have to be

Page 36

1 instances based on those percentages where there
2 would be a house with Chinese drywall and then a
3 house next door with none; is that correct?
4    A   That is correct.
5    Q   Okay. And how did Beazer determine which
6 properties had Chinese drywall?
7    A   After an initial inspection and then
8 subsequent Environ inspection.
9    Q   Okay. And the amount of Chinese drywall
10 would vary from property to property?
11    A   That is correct.
12    Q   And the reported manufacturer of Chinese
13 drywall would vary from property to property?
14    A   It would.
15    Q   And the percentages of drywall that were
16 allocated between different manufacturers would
17 change from property to property, correct?
18    A   It did, yes.
19    Q   And all of that required a
20 property-specific inspection and analysis by
21 Environ?
22    A   Yes.
23    Q   Okay. How was the drywall used in the
24 subject properties supplied to Beazer?
25    A   You mean the names of the supplier or how

Page 37

1 our -- our installer acquired it?
2    Q   Thank you for breaking that down because
3 I'd like to ask both questions --
4    A   Okay.
5    Q   -- actually.
6       So let me ask you first just as a general
7 proposition for these two communities how Beazer
8 would supply drywall.
9       MR. BUSTER: Object to form.
10    A   Yeah, the vendor -- drywall vendor would
11 be hired turnkey, and he, in turn, would get his
12 drywall from a supply house. So in the case of Fort
13 Myers, it was Banner Supply --
14 BY MS. EIKHOFF:
15    Q   Okay.
16    A   -- and in the case of Tampa, it was
17 Black -- Black Bear, I believe --
18    Q   Okay.
19    A   -- was the supplier.
20    Q   Okay. And when you say turnkey, what does
21 that mean?
22    A   In other words, we pay them for labor,
23 installation, and materials, so we don't dictate who
24 they use to install, where they get their drywall.
25 It's just a turnkey proposition for the vendor.

10 (Pages 34 - 37)

30(b)(6) Michael Buchman                                    January 4, 2019
The Mitchell Company, Inc. Vs. Knauf Gips KG, Et Al.

Page 38

1    Q   Okay.  Was the relationship between
2  Beazer -- and let's just say Banner Supply because
3  that's one of the suppliers.
4        Was that a direct relationship or did
5  Banner Supply -- actually supply to another
6  contractor with whom Beazer had a relationship?
7    A   It supplied to another contractor.
8    Q   Okay.  So there was a -- a supply and
9  services chain?
10   A   That is correct.
11   Q   Okay.  But Beazer understands that the
12 entity in the chain responsible for procuring the
13 drywall was, in one community at issue, Banner, and
14 the other one, Black Bear?
15   A   Yes.
16       MR. BUSTER:  Object to form.
17 BY MS. EIKHOFF:
18   Q   Okay.
19       (Defendant's Exhibit 6 was marked for
20 identification.)
21 BY MS. EIKHOFF:
22   Q   Handing you a document that's been marked
23 as Exhibit Number 6, which was -- is a document
24 produced by Beazer.
25       Do you recognize this document?

Page 39

1    A   Yes.
2    Q   Okay.  What is it?
3    A   Appears to be drywall supplied by Banner
4  broken down per lot.
5    Q   And it says in the final column, D12R12
6  boards.  Do you know what D12R12 refers to?
7    A   I'm a bit rusty on that.
8    Q   Is it -- is this maybe the number of
9  drywall boards provided for each property?
10   A   Looks to be a bit low for that number
11 to -- to be accurate, but it's -- it's a good
12 assumption.
13   Q   Okay.  Were the houses -- all of these
14 addresses are Little Gem Circle, correct?
15   A   Yes, ma'am.
16   Q   And that's in the Magnolia Lakes
17 community; is that correct?
18   A   Yes, ma'am.
19   Q   Okay.  Were the homes in Magnolia Lakes on
20 Little Gem Circle, did they vary in size?
21   A   Yes.
22   Q   Such that some of these have lower numbers
23 of boards reported and some have higher numbers of
24 boards reported.
25       Would that be consistent with variations

Page 40

1  in square footage of the homes?
2        MR. BUSTER:  Object to form.
3    A   Yeah, the square footage should vary.
4  BY MS. EIKHOFF:
5    Q   Okay.
6    A   So -- uh-huh.
7        (Defendant's Exhibit 7 was marked for
8  identification.)
9  BY MS. EIKHOFF:
10   Q   Handing you a document that's been marked
11 as Exhibit 7, produced by Beazer.
12       Do you recognize this document?
13   A   This particular document, no.
14   Q   Okay.  Is this a type of document that
15 you've seen?
16   A   Yes, ma'am.
17   Q   Okay.  The other document we just looked
18 at for Banner Supply, document number 6, listed
19 multiple properties.
20       Looking at Exhibit 7, does this look like
21 an invoice for one property or multiple properties
22 or can you tell?
23   A   This looks to be a single unit in a
24 townhome building, yes.
25   Q   Okay.  And Black Bear Gypsum is the issuer

Page 41

1  of the invoice.
2        Is that the Black Bear supplier that you
3  referred to earlier in your testimony?
4    A   Yes, ma'am.
5    Q   Okay.  Has either Banner Supply or Black
6  Bear Gypsum ever provided Beazer with documents or
7  other information about their source of drywall?
8    A   That, I do not know.
9    Q   Okay.  So have you ever seen anything from
10 Banner Supply that shows that they ordered drywall
11 from Taishan specifically?
12   A   I have not.
13   Q   Have you ever seen any information from
14 Black Bear Gypsum that shows that they ordered
15 drywall from Taishan specifically?
16   A   I have not.
17   Q   Okay.  And have you ever had any
18 communications orally with Black Bear or Banner in
19 which they have explained that they sourced their
20 drywall from Taishan specifically?
21   A   I have not.
22   Q   Okay.  Has Beazer sued Taishan?
23       MR. BUSTER:  Object to form.  Continuing
24 objection.
25   A   I do not know.

11 (Pages 38 - 41)

30(b)(6) Michael Buchman                                   January 4, 2019
The Mitchell Company, Inc. Vs. Knauf Gips KG, Et Al.

Page 42

1      (Defendant's Exhibit 8 was marked for
2  identification.)
3  BY MS. EIKHOFF:
4      Q   Handing you a document that's been marked
5  as Exhibit 8.  Have you seen this document before?
6      A   No, ma'am.
7      Q   Okay.  If you'd look back at Exhibit 1,
8  which is the deposition notice.
9          I know, it's hard to keep track of these
10 things.
11     A   Okay.
12     Q   If you compare the first page of
13 Exhibit 1, the deposition notice, with the first
14 page of Exhibit 8, do you see that they are both for
15 a case The Mitchell Company, Inc. versus Knauf Gips
16 and others?
17     A   Yes.
18     Q   Okay.  So you understand that you are
19 providing testimony today in connection with The
20 Mitchell Company case?
21     A   Yes.
22     Q   Okay.  And Beazer is not a plaintiff in
23 that case --
24         MR. BUSTER:  Object to --
25 BY MS. EIKHOFF:

Page 43

1      Q   -- to your knowledge?
2          MR. BUSTER:  Object to form.
3      A   Yeah, I -- I don't understand the
4  intricacies, and I'm not an attorney, so...
5  BY MS. EIKHOFF:
6      Q   Okay.
7      (Defendant's Exhibit 9 was marked for
8  identification.)
9  BY MS. EIKHOFF:
10     Q   I'm going to show you a document that
11 we've marked as Exhibit Number 9, which you will see
12 also was filed in The Mitchell Company case.  It
13 says:  Declaration of Ray Phillips in support of
14 motion for class certification.
15         Have you seen this document before?
16     A   I am not sure.  It looks like something
17 I -- I'm not sure.
18     Q   You testified earlier that Ray Phillips
19 did work for Beazer?
20     A   That is correct.
21     Q   And was he responsible in part for
22 responding to Chinese drywall issues in certain
23 communities?
24     A   He was.
25     Q   Okay.  I'll note that this declaration is

Page 44

1  not signed by him.  Do you know why?
2      A   I do not.
3      Q   Okay.  Looking at the content of it,
4  paragraph 4 on page 2, it states:  25 single-family
5  homes in Beazer's Magnolia Lakes community in Fort
6  Myers and 23 townhomes in Beazer's Hampton Lakes
7  community in Tampa contained defective Chinese
8  drywall.
9      A   Yes.
10     Q   And it totals those to 48.
11     A   Yes.
12     Q   Is that consistent with your earlier
13 testimony today as to the total number of subject
14 properties?
15     A   It is not.
16     Q   Okay.  I thought we had 48 on Exhibit 3?
17     A   That is correct.
18     Q   Oh, okay.
19     A   The allocation is not correct.
20     Q   I see.
21         Can you tell me how this allocation is
22 incorrect?
23         MR. BUSTER:  Object to form.
24         MS. EIKHOFF:  He just said the allocation
25 is not correct.

Page 45

1  BY MS. EIKHOFF:
2      Q   Can you explain why it's not correct?
3      A   Yes.
4          MR. BUSTER:  I'm going to object to form.
5      A   Subsequent to when this -- this first
6  document was -- was produced, we found an additional
7  home in Magnolia.  And in the Hampton Lakes
8  community, I believe we had a settlement on a home,
9  which reduced this number by one.  So the total is
10 correct, but the allocation was off by one.
11 BY MS. EIKHOFF:
12     Q   Okay.  So it should be 26 in Magnolia
13 Lakes and --
14     A   22.
15     Q   -- 22 in Hampton Lakes?  Okay.
16     A   Yeah, this was produced in 2010, so...
17     Q   Right.  It says that the investigation was
18 ongoing --
19     A   Correct.
20     Q   -- at that time.
21         At the time of this draft declaration that
22 was filed on July 22nd, 2010, this document reports
23 that so far, Beazer has spent over $2 million
24 repairing homes containing defective Taishan
25 drywall.  Beazer estimates it will spend an

12 (Pages 42 - 45)

30(b)(6) Michael Buchman                January 4, 2019
The Mitchell Company, Inc. Vs. Knauf Gips KG, Et Al.

Page 46

1 additional 1 to $2 million repairing the 30 homes
2 identified to date as containing defective drywall
3 and projects that it will spend at least another 2
4 to $3 million repairing additional homes later found
5 to contain defective Chinese drywall.
6        Do you see where I read that?
7    A   Yes.
8    Q   Okay.  And as you just noted, this was
9 almost 10 years ago, and at the time, is stated as a
10 projection.
11       What is the total amount that was, in
12 fact, spent to repair homes containing, allegedly,
13 Taishan drywall?
14    A   It's on the job cost detail.  I have not
15 added them up, though, per lot, but the information
16 is on the job cost detail.
17    Q   Okay.  And the actual amounts that were
18 spent as recorded in the job cost detail would be
19 the damages that Beazer is claiming --
20       MR. BUSTER:  Object --
21 BY MS. EIKHOFF:
22    Q   -- correct?
23       MR. BUSTER:  Object to form.
24       MR. NICHOLAS:  Object to the form.
25    A   Yeah, that would be, as I said earlier,

Page 47

1 our costs out the door, so cost to relocate, cost to
2 repair the home to pre-repair condition.
3 BY MS. EIKHOFF:
4    Q   Right.  And that Beazer is seeking to
5 recover from Taishan?
6    A   That's not -- to my knowledge, that is not
7 the total number, but --
8    Q   Okay.
9    A   -- that's -- that's just our hard cost out
10 the door.
11   Q   Okay.  And we'll come back to the total
12 number later.
13       MR. BUSTER:  Just so you know, at this
14 stage of the case, we haven't ascertained or
15 calculated all the damages that we're going to seek.
16 We're going to seek all damages that we're entitled
17 by law to seek.
18       At this stage of the case, we're not to
19 the damages phase yet, so we -- we have not
20 calculated a total number.  The complaint lays out
21 the categories, I'm sure, of damages.
22 BY MS. EIKHOFF:
23   Q   One of the deposition topics today was
24 your claim for damages from Taishan in Mitchell,
25 correct?

Page 48

1       MR. BUSTER:  You want to point him to it?
2 BY MS. EIKHOFF:
3    Q   It's number 13.  It's on the last page,
4 yeah.
5    A   Yes, ma'am.
6    Q   And you are prepared to testify today
7 about Beazer's claim for damages against Taishan?
8       MR. BUSTER:  Subject to my objection, he
9 is.
10       MS. EIKHOFF:  I'm asking the witness.
11   A   Yeah, as stated earlier, we have the hard
12 cost out the door.  I'm not a lawyer, so I don't
13 know what legal fees will be assessed.  That's to be
14 determined.
15 BY MS. EIKHOFF:
16   Q   Okay.  But as Beazer's representative,
17 you're prepared to testify today about the damages
18 that Beazer has calculated --
19       MR. BUSTER:  Object to form.
20 BY MS. EIKHOFF:
21   Q   -- for --
22       MS. EIKHOFF:  Let me finish my question.
23 BY MS. EIKHOFF:
24   Q   As Beazer's representative prepared as a
25 30(b)(6) on these topics, you can testify about

Page 49

1 Beazer's claim for damages?
2       MR. BUSTER:  I'm going to object to
3 form -- hold on -- and I'm going to interpose an
4 objection.
5       I already pointed out we have not
6 calculated our damages.  You can't, by a 30(b)(6)
7 notice, make a party at the class certification
8 stage tell you what damages we're going to be
9 seeking at the end of the case.
10      He has tried to tell you he's familiar
11 fact -- you can ask him factual questions.  He's
12 familiar factually with Beazer's expenditures for
13 the remediated homes.  But, you know, we may seek
14 attorneys' fees, we may seek punitive damages, we
15 may seek other kinds of -- of -- damages.  That's
16 what I'm trying to get across to you.
17      So he can ask factually -- he can answer
18 factually questions about Beazer's expenditures in
19 remediating these homes, which we do intend to seek
20 as damages.
21      MS. EIKHOFF:  Move to strike counsel's
22 speaking objection.
23      Steve, did you have something to add?
24      MR. NICHOLAS:  I was going to say, I join
25 the objection.  So go ahead.

13 (Pages 46 - 49)

Page 50

1      MS. EIKHOFF:  Move to strike that too.
2      MR. BUSTER:  I'm afraid you can't strike
3  an objection.
4      MS. EIKHOFF:  Counsel, you just mentioned
5  punitive damages.
6      MR. BUSTER:  Yes.  I said we may.  I
7  believe it's pled in the complaint.
8      MS. EIKHOFF:  It's not a complaint that
9  your plaintiff filed.
10      MR. BUSTER:  It's on behalf of the class.
11  Beazer is a class member.  And you're -- otherwise,
12  you wouldn't be here deposing Beazer.
13  BY MS. EIKHOFF:
14      Q   Did Beazer sue Knauf?
15      A   Yes.
16      Q   Did it sue Knauf separately from -- as a
17  class member in the Mitchell complaint?  Do you know
18  if it had a direct claim against Knauf?
19      A   I do not know.
20      Q   Okay.
21          (Defendant's Exhibit 10 was marked for
22  identification.)
23  BY MS. EIKHOFF:
24      Q   Hand you a document that's been marked as
25  Exhibit 10.  Do you recognize this document,

Page 51

1  Mr. Buchman?
2      A   I do.
3      Q   Okay.  What is it?
4      A   It's a settlement agreement between Knauf
5  and Beazer Homes.
6      Q   Okay.  And did this agreement resolve any
7  and all claims between Beazer and Knauf related to
8  Chinese drywall?
9      MR. BUSTER:  Object to form.
10      A   I'm not an attorney, so I don't want to
11  say for certain, but that appears to be the case
12  given the --
13  BY MS. EIKHOFF:
14      Q   Is --
15      A   -- list of addresses.
16      Q   Is Beazer pursuing any claims against
17  Knauf currently?
18      MR. BUSTER:  Object to form.
19      A   Not to my knowledge.
20  BY MS. EIKHOFF:
21      Q   Okay.  Now, on the first page of
22  Exhibit 10 in the whereas clause that's third from
23  the bottom, it references that there are 116 homes
24  in Magnolia Lakes, 108 homes in Hampton Lakes, and
25  54 homes that Beazer has inspected outside of those

Page 52

1  two communities.
2      MR. BUSTER:  Did you say the third whereas
3  clause?
4      MR. NICHOLAS:  From the bottom.
5      MS. EIKHOFF:  Third from the bottom.
6      MR. BUSTER:  Oh, third from the bottom.
7  BY MS. EIKHOFF:
8      Q   Are those properties all properties in
9  which Beazer found Chinese drywall?
10      A   Can you rephrase the question?  Are you
11  ask -- I'm sorry, can you --
12      Q   Well, it -- this says that the agreement
13  relates to settling certain claims between Beazer
14  and Knauf --
15      A   Uh-huh.
16      Q   -- relating to 116 homes in Magnolia
17  Lakes, 108 homes in Hampton Lakes, and 54 homes
18  outside of those two communities.
19          Did Beazer find Knauf drywall in all of
20  the homes that are enumerated in this agreement?
21      A   It did not.
22      Q   I'm sorry, what's your answer?
23      A   I said it did not.
24      Q   Did not find.  Okay.
25      A   Did not, correct, sorry.

Page 53

1      Q   Are the numbers that are provided all of
2  the homes in Magnolia Lakes and all of the homes in
3  Hampton Lakes?
4      A   Yes.
5      Q   Okay.  Whether there was Chinese drywall
6  in it or not, correct?
7      A   That is correct.
8      Q   And as you testified earlier, only 20 to
9  25 percent of the homes in those communities were
10  found to have Chinese drywall; is that correct?
11      A   Approximately, yes.
12      Q   Okay.  And to the extent that all of the
13  properties in Magnolia Lakes and Hampton Lakes are
14  listed on Exhibits A and Exhibit B to this
15  Exhibit 10, these addresses include the subject
16  properties that we've been talking about, correct?
17      A   Correct, it's all-inclusive.
18      Q   On page 2 under paragraph 4,
19  consideration, it says that:  Knauf shall pay the
20  total sum of $800,000 to Beazer in connection with
21  the 278 homes listed on Exhibits A, B, and C.
22          Is that correct?
23      A   Yes.
24      Q   Did Knauf pay $800,000 to Beazer in this
25  settlement?

14 (Pages 50 - 53)

30(b)(6) Michael Buchman                                January 4, 2019
The Mitchell Company, Inc. Vs. Knauf Gips KG, Et Al.

Page 54

1    A   Yes.
2    Q   Do you know -- strike that.
3        If we wanted to determine which of the 278
4  properties Environ identified as containing Knauf,
5  or KPT, drywall, would that be reflected in the last
6  column of Exhibit 3?
7        MR. BUSTER:  Object to form, outside the
8  scope of the notice.
9    A   It's listed here, but as I said, this
10 information was pulled from the photo documentation
11 per each house, so...
12 BY MS. EIKHOFF:
13   Q   These percentages that were provided in
14 Exhibit 3 were pulled from Environ's reports; is
15 that correct?
16   A   Correct.
17   Q   And some of the properties have Knauf
18 listed.  Is that -- do you see that?
19   A   That is correct.
20   Q   Okay.  Would Beazer have any other source
21 for associating Knauf drywall with these properties
22 other than the Environ reports?
23       MR. BUSTER:  Object to form.
24   A   Here again, the reports are based on photo
25 documentation, so to be a hundred percent accurate

Page 55

1  you would need to review each photograph and make
2  sure there was not a discrepancy between counting
3  those photographs and tabulating them and then
4  translating it to this sheet.
5  BY MS. EIKHOFF:
6    Q   Okay.
7    A   So...
8        (Defendant's Exhibit 11 was marked for
9  identification.)
10 BY MS. EIKHOFF:
11   Q   I'm going to hand you a document that's
12 been marked as Exhibit 11.
13   A   Excuse me, can we take five before we hit
14 this?
15   Q   Absolutely.  Absolutely.  As a matter of
16 fact, I was thinking the same thing.
17       MS. EIKHOFF:  Let's go off the record.
18       THE VIDEOGRAPHER:  Off record at 11:04.
19       (Recess 11:04-11:15 a.m.)
20       THE VIDEOGRAPHER:  Back on the record at
21 11:16.
22 BY MS. EIKHOFF:
23   Q   You've been handed a document that's been
24 marked as Exhibit 11.  Do you recognize this
25 document?

Page 56

1    A   I do not.
2    Q   Okay.  It says:  Settlement agreement in
3  MDL Number 2047 regarding claims involving builders,
4  installers, suppliers, and participating insurers.
5        Do you know if Beazer was a party to this
6  settlement agreement?
7    A   For a fact, I do not.
8    Q   If you'll turn to page 46.
9    A   Yes.
10   Q   Beazer Homes Corp. is listed as a
11 signatory although there are no signatures on this
12 document.
13       Does that provide you with any additional
14 information to know whether Beazer was a party to
15 this agreement or not?
16   A   It would indicate that we were, yes.
17   Q   Okay.  Do you know if Beazer contributed
18 any settlement moneys to this settlement agreement?
19   A   I do not.
20   Q   Do you know if Beazer received any
21 settlement money under the settlement agreement?
22   A   This specific one, I do not.
23   Q   Okay.
24       MR. BUSTER:  We can stipulate if you want
25 us to to -- to those questions.

Page 57

1        MS. EIKHOFF:  Okay.
2        MR. BUSTER:  Yeah.  Yeah, this is the
3  global settlement, so we did receive money in
4  response to the global settlement.  It's listed on
5  Exhibit 3 under global settlement.
6        MR. NICHOLAS:  And he -- and he can talk
7  about -- a little bit about the global settlement.
8        MR. BUSTER:  Yeah, he can talk about the
9  global settlement.
10       MR. NICHOLAS:  He just wasn't --
11       MS. EIKHOFF:  He doesn't know that's --
12       MR. BUSTER:  He didn't know that that's
13 what it was.
14       MS. EIKHOFF:  -- the actual document?
15       MR. NICHOLAS:  Right.
16       MS. EIKHOFF:  Okay.
17       MR. NICHOLAS:  Right.
18   A   Yeah, I don't want to say the wrong
19 things.
20 BY MS. EIKHOFF:
21   Q   All right.  So --
22       MR. BUSTER:  We did pay $11,100 for one
23 home in -- in Hampton Lakes where a guy was in
24 bankruptcy, and so he wasn't included before.
25 BY MS. EIKHOFF:

15 (Pages 54 - 57)

30(b)(6) Michael Buchman                      January 4, 2019
The Mitchell Company, Inc. Vs. Knauf Gips KG, Et Al.

Page 58

1    Q   Okay.  So counsel for Beazer is making
2  representations about Beazer's participation in this
3  settlement.
4       Do you, as Beazer's representative, know
5  of any payments that Beazer made into a global
6  settlement?
7       MR. BUSTER:  That Beazer made into?
8       MS. EIKHOFF:  Yes.
9       MR. BUSTER:  You mean beyond what I just
10 stipulated to?
11      MS. EIKHOFF:  I'm asking if he knows about
12 what you just said because you're not --
13      MR. BUSTER:  It's a stipulation.  Okay.
14      MS. EIKHOFF:  He's the witness.
15      MR. BUSTER:  Okay.  Sure, go ahead.
16      MS. EIKHOFF:  So I've got to get -- I've
17 got to ask him.
18      MR. BUSTER:  Actually, you don't if it's a
19 stipulation, but go ahead.
20   A   Yeah, I am aware of the one home and the
21 $11,100 payment that he's referring to, I just
22 didn't know which agreement it was attached to.
23 BY MS. EIKHOFF:
24   Q   Okay.  And your lawyers have just stated
25 that they refer to the settlement agreement that's

Page 59

1  memorialized as Exhibit Number 11 as the global
2  settlement.
3       Does that refresh your recollection about
4  a settlement that Beazer participated in?
5    A   Yes.
6    Q   Okay.  And what is your understanding of
7  Beazer's participation in that settlement?
8       MR. BUSTER:  Object to form.
9    A   Yeah, there's -- I believe there was a
10 settlement with a supplier and with the installer,
11 so I'm just not sure which is which.
12 BY MS. EIKHOFF:
13   Q   Okay.  On Exhibit 3, which is a document
14 the lawyers prepared and provided to us shortly
15 before the deposition, there is a column that says
16 Banner settlement.
17   A   Uh-huh.  Yes.
18   Q   And you testified earlier that those are
19 moneys that Beazer received, right?
20   A   That is correct.
21   Q   Okay.  Do you know if the payments that
22 are identified Exhibit 3 were payments made to
23 Beazer as part of the global settlement?
24   A   You -- I'm sorry, you -- can you rephrase
25 the question or --

Page 60

1    Q   Sure.
2    A   -- ask it again?
3    Q   I'll ask it again.  Sure, no problem.
4       The payments that are itemized in
5  Exhibit 3 as Banner settlement --
6    A   Uh-huh.
7    Q   -- are those payments that Beazer received
8  as part of what's being referred to as the global
9  settlement?
10   A   It's my understanding it's separate.
11   Q   Oh, okay.  That was a separate settlement
12 agreement?
13   A   To the best of my knowledge, yeah.
14   Q   Okay.  And then I'm asking about the next
15 column in Exhibit 3, global settlement, and those
16 payments were received from whom?
17   A   That would have been the subcontractors,
18 to my understanding.  Oh.
19   Q   You understand that the payments that
20 Beazer received under the global settlement were
21 payments from subcontractors?
22   A   Here, again, I'm not an attorney, but
23 that's my understanding, yes.
24   Q   Okay.  Well, just one of the topics for
25 today was settlement agreements --

Page 61

1    A   Uh-huh.
2    Q   -- that Beazer entered into, so we're just
3  trying to sort out what settlement agreements were
4  entered into.  So --
5       MR. BUSTER:  And we stipulate that we
6  entered into the global settlement agreement that
7  you have put in front of the witness that spells out
8  the terms of that.
9       MS. EIKHOFF:  Okay.  Actually, part of the
10 problem is that Exhibit 11 doesn't itemize the
11 moneys that were paid from certain entities to other
12 entities, so I'm trying to understand what moneys
13 were paid either by or to Beazer in this settlement.
14 So --
15      MR. BUSTER:  Object to form.
16   A   Yeah, I'm not --
17      MS. EIKHOFF:  I'm actually responding to
18 you.  It wasn't a question to him.
19   A   I'm not prepared to answer that, though,
20 I'm just --
21 BY MS. EIKHOFF:
22   Q   Okay.  Okay.
23   A   I didn't bone up enough on that one.
24   Q   Got it.
25      You testified earlier -- I have in my

16 (Pages 58 - 61)

30(b)(6) Michael Buchman                                    January 4, 2019
The Mitchell Company, Inc. Vs. Knauf Gips KG, Et Al.

Page 62

1 notes -- that the global settlement, you thought
2 that those moneys were received from Knauf. Do
3 you -- and then you just more recently said you
4 thought maybe those came from -- it came from
5 subcontractors.
6        Do you know what the source of the global
7 settlement funds that are itemized on Exhibit 3 is?
8    A   I did, but I don't right now, to be quite
9 honest with you.
10   Q   Okay. All right. So it's not clear to
11 you?
12   A   No.
13   Q   Okay. But you do believe that there was a
14 separate Banner settlement?
15   A   Yes.
16   Q   Okay. And do you -- have you seen a
17 document that is an actual settlement agreement with
18 Banner -- between Banner and Beazer?
19   A   I have not.
20   Q   Okay. Do you know if one exists?
21   A   I do not.
22   Q   Okay.
23       MS. EIKHOFF: And I'll note that we have
24 not seen that.
25 BY MS. EIKHOFF:

Page 63

1    Q   We have looked at a settlement agreement
2 between Beazer and Knauf, which was an $800,000
3 settlement agreement. We also looked at Exhibit 11,
4 which is the MDL settlement, which your attorneys
5 refer to as the global settlement, and then you've
6 just referenced a Banner settlement.
7        Were there any other settlement agreements
8 that Beazer entered into related to Chinese drywall
9 other than individual agreements with homeowners?
10   A   Not to my knowledge.
11   Q   Okay.
12       (Defendant's Exhibit 12 was marked for
13 identification.)
14 BY MS. EIKHOFF:
15   Q   I'm handing you a document that's been
16 marked as Exhibit 12.
17       (Off-the-record discussion.)
18 BY MS. EIKHOFF:
19   Q   Have you seen this document before?
20   A   I have not.
21   Q   Okay. It appears that there are 50
22 properties that are listed in Exhibit 12.
23 Previously your testimony was that there are 48
24 subject properties.
25       Do you know why there are two more on this

Page 64

1 document than the subject properties you previously
2 identified through Exhibit 3 and otherwise?
3    A   I believe the 48 refer to Taishan only,
4 and I believe we had one home that was Knauf only,
5 which would account for one of these, and not sure
6 about the additional home.
7    Q   Okay. This document, similarly to
8 Exhibit 3, has a column for Banner amounts and
9 global amounts. Do you see that?
10   A   Yes.
11   Q   And I have not had a chance to compare
12 those because we just got this Exhibit 3 minutes
13 before the deposition, but is it your understanding
14 that the amounts in Exhibit 3 are the most recent
15 accurate amounts that were received from Banner and
16 global?
17       MR. BUSTER: Object to form.
18   A   Sorry, let me pull it out here. I don't
19 see a production date on number 3.
20 BY MS. EIKHOFF:
21   Q   Uh-huh.
22   A   The other document is a little over a year
23 old, so to add anything, I'm not sure.
24   Q   Okay. Do you know if Beazer made a claim
25 to any of its insurance carriers for losses related

Page 65

1 to Chinese drywall?
2    A   Yes, I do.
3    Q   Okay. Did Beazer make such claims?
4    A   We did.
5    Q   Okay. And were any of those claims
6 covered under a reservation of rights or otherwise?
7    A   Not sure what that means, but I -- I do
8 know that we were not reimbursed, we were denied.
9    Q   Okay. So no insurance carrier made any
10 insurance payments to Beazer related to Chinese
11 drywall; is that correct?
12   A   That is correct.
13   Q   Okay.
14       (Defendant's Exhibit 13 was marked for
15 identification.)
16 BY MS. EIKHOFF:
17   Q   I'm handing you a document that's been
18 marked as Exhibit 15 -- sorry, 13. Have you seen
19 this document before?
20   A   I don't believe so.
21   Q   Okay. If you turn to the page that in the
22 upper right-hand corner says page 6 of 21.
23   A   Yes, ma'am.
24   Q   Right in the middle of the page, it says:
25 The builder plaintiff, The Mitchell Company, and

17 (Pages 62 - 65)

Page 66

1 additional proposed class representative, Beazer
2 Homes Corporation, move for certification of a class
3 of homebuilders.
4      Do you see where I'm reading from?
5   A   Yes.
6   Q   Do you understand Beazer to be a proposed
7 class representative in the Mitchell case?
8   A   Yes.
9   Q   Okay.  If you turn to page 3?
10     MR. NICHOLAS:  3 of the memorandum?
11     MS. EIKHOFF:  Sorry, it's page 8 of 21.
12 Thank you.
13 BY MS. EIKHOFF:
14  Q   Towards the bottom of the page, it says:
15 With this motion, Mitchell and additional proposed
16 class representative, Beazer, requests certification
17 of the class defined as -- and then there's a block
18 paragraph.
19     Do you see that?
20  A   I do.
21  Q   Okay.  I'm going to ask questions related
22 to Beazer's proposal to represent other homebuilders
23 within this class.
24     MR. BUSTER:  I'm going to object to that
25 line of questions as outside the scope of the

Page 67

1 notice, but he can tell you his understanding if he
2 has one.
3 BY MS. EIKHOFF:
4   Q   Beazer alleges that it used drywall
5 manufactured by Taishan Gypsum Company for the
6 construction, repair, or remodeling of any
7 improvement to real property; is that correct?
8      MR. BUSTER:  Object to form.
9   A   Are you reading from this paragraph?
10 BY MS. EIKHOFF:
11  Q   Yeah, I was reading from it, but I'm
12 asking you a question.
13  A   Okay.
14  Q   And I understand that that might be
15 confusing, so --
16  A   Okay.
17  Q   -- I'm going to just -- I'm going to be
18 reading, but I'm just asking you the question.  So
19 not asking you whether I read it right, I'm just
20 asking you the question.
21     So my question is:  Does Beazer allege
22 that it used drywall manufactured by Taishan Gypsum
23 for the construction, repair, or remodeling of any
24 improvement to real property?
25     MR. BUSTER:  Continuing objection as

Page 68

1 outside the scope, but I'll let him answer based on
2 his understanding.
3   A   Yes.
4 BY MS. EIKHOFF:
5   Q   Okay.  And where were -- where are the
6 subject properties for Beazer?  What state?
7   A   Florida.
8   Q   All in Florida?
9   A   Correct.
10  Q   And none anywhere else?
11  A   Not to my knowledge.
12  Q   Okay.  Beazer does construct homes outside
13 of the state of Florida, correct?
14  A   Correct.
15  Q   How many other states?
16  A   I believe we're in 13 states at the
17 moment.
18  Q   Okay.  Okay.  And did Beazer incur
19 expenses associated with the repair or replacement
20 of the defective drywall?
21  A   Absolutely.
22  Q   Okay.  And did Beazer incur expenses
23 associated with repair or replacement of other
24 property damaged by the defective drywall, not just
25 the drywall itself but other property?

Page 69

1   A   Yes.
2   Q   Okay.  And did Beazer incur attorneys'
3 fees and costs in the defense of claims by affected
4 homeowners?
5   A   That would be an assumption on my part.  I
6 haven't seen any settlement agreements.
7   Q   Or --
8   A   Can you --
9   Q   The -- the question is --
10  A   Yeah.
11  Q   -- did Beazer incur attorneys' fees and
12 costs associated with claims by homeowners?
13     MR. NICHOLAS:  Your lawyers.
14  A   So not -- not settlements between
15 homeowners --
16 BY MS. EIKHOFF:
17  Q   Not settlements but -- but attorneys'
18 fees.
19  A   I'm sure.
20  Q   Okay.  And did Beazer incur other
21 expenses, specifically cost of investigation and
22 expert analysis?
23  A   Yes.
24  Q   And did Beazer incur costs of relocating
25 customers displaced by the presence of the drywall?

18 (Pages 66 - 69)

30(b)(6) Michael Buchman                    January 4, 2019
The Mitchell Company, Inc. Vs. Knauf Gips KG, Et Al.

Page 70

1      A   Yes.
2      Q   Okay.  And as we sit here today in this
3  30(b)(6) deposition, are you prepared to testify as
4  to the amount that Beazer paid for repair or
5  replacement of the defective drywall?
6      A   Yes.
7      Q   And are you prepared to testify as to the
8  amount Beazer paid for repair or replacement of
9  other property because of the drywall?
10     A   Yes.
11     Q   Okay.  And are you prepared to testify
12  about the amount of attorneys' fees and costs in
13  defense?
14     A   No.
15     Q   Okay.  And are you prepared to testify
16  about the other expenses, including the inspection
17  and analysis of the properties?
18     A   No.
19         MR. NICHOLAS:  On that last one, Christy,
20  you mind if I just get a clarification:  You talking
21  about amount of?
22         MS. EIKHOFF:  Amount of.
23         MR. NICHOLAS:  Not -- not fact of?
24         MS. EIKHOFF:  Amount of.
25         MR. NICHOLAS:  Okay.  Thank you.

Page 71

1  BY MS. EIKHOFF:
2      Q   Besides -- strike that.
3          You've testified today that Beazer hired a
4  consultant called Environ for inspections and
5  analysis related to Chinese drywall; is that
6  correct?
7      A   Yes.
8      Q   And do you, as we sit here today, know
9  what the cost of those services provided by Environ
10  were to Beazer?
11     A   No.
12     Q   Okay.  Does anyone know that?
13         MR. BUSTER:  Object to form.
14     A   Yeah, it's -- it's my understanding we
15  still have things in storage with them, so I would
16  assume the costs are still being incurred.  And it's
17  my understanding that we also, on the job cost
18  detail report, may not be all-inclusive for
19  everything that Environ was paid.
20  BY MS. EIKHOFF:
21     Q   Would certain Environ expenses be itemized
22  on the job cost report?
23     A   I do not believe they're itemized, no.
24     Q   Would they be included in any way?
25     A   Yeah, we do -- they -- they -- they're --

Page 72

1  they do have some of their costs listed on the job
2  detail report, yes.
3      Q   Okay.  Some of Environ's costs?
4      A   Yes.
5      Q   But you're saying there may be additional
6  Environ costs that are not on the job detail report?
7      A   Yeah.  We still have a good amount of
8  material in storage with them, so...
9      Q   How would that cost be calculated?
10     A   We would have to contact Environ, I'm
11  assuming, and see what the cost of storage of these
12  materials are.
13     Q   Wouldn't the accounting department of
14  Beazer have a record of amounts that it has paid and
15  does pay to Environ?
16     A   I'm not sure of that.  I'm not sure how
17  the billing cycle works on that, if they're billing
18  monthly, yearly.  And at this point, it's been nine
19  years, so --
20     Q   Right.
21     A   -- I'm --
22     Q   But Environ is a payee in Beazer's system,
23  correct?
24     A   Yes.
25     Q   And so could Chad or someone else in the

Page 73

1  accounting department run a report that quantifies
2  the amounts that have been paid to Environ as of a
3  certain date?
4      A   Yes.
5      Q   Okay.  And to your knowledge, nobody has
6  done that?
7      A   Yeah, to my knowledge, the amount listed
8  that we have on the job cost detail report, I don't
9  know when that was pulled, so we would have costs
10  subsequent to the date of that report.
11     Q   I see.  I see.  And I think that we're --
12  I may be catching on.
13         But to the extent that there were costs
14  incurred by Environ as of the date of the job detail
15  report, those would be included?
16     A   Yes.
17     Q   Okay.  And so to the extent that they're
18  not included in the job detail report, it would be
19  only to the extent they were incurred after the date
20  that the job detail report was run; is that correct?
21     A   I believe that to be the case, yes.
22     Q   Okay.  So the job detail report, it's
23  going to be comprehensive as to the cost of
24  remediation, other costs associated with the
25  remediation, and the costs of inspection; is that

19 (Pages 70 - 73)

Page 74

1 correct?
2    A    That is correct.
3    Q    Okay.  But not attorneys' fees?
4    A    That is correct.
5    Q    And not any costs incurred subsequent to
6 the date that the job detail report was run,
7 correct?
8    A    That is correct.
9    Q    All right.
10       MR. BUSTER:  And I will tell you that we
11 believe there's actually some remaining costs that
12 aren't in there, but we can -- we can confirm that
13 and get that to you.
14       (Defendant's Exhibit 14 was marked for
15 identification.)
16 BY MS. EIKHOFF:
17    Q    I'm handing you a document that's been
18 marked as Exhibit 14.  It's big.
19       You've testified today about a job cost
20 detail report?
21    A    Yes.
22    Q    Is that what this is, Exhibit 14?
23    A    Yes, it is.
24    Q    Okay.  And is this a report that is run
25 from Beazer's accounting system or from Salesforce?

Page 75

1    A    Accounting.
2    Q    Okay.  You know who prepared this
3 particular report?
4    A    This would have been Chad Cassimere.
5    Q    And the date on the top of the report says
6 as of July 31st, 2018.
7       Is that when you were working with Chad to
8 gather information in response to our requests?
9    A    Sounds right, yes.
10    Q    Okay.  How do we know what specific Beazer
11 properties are included in this report?
12    A    Yeah, I'm only seeing Tampa homes in this
13 one.  I don't see anything from the Fort Myers
14 division.
15    Q    Okay.  It says in the title field at the
16 top center Hampton Lakes --
17    A    Yes.
18    Q    -- drywall job cost report?
19       Is Hampton Lakes in Tampa?
20    A    I'm sorry, yes, that's the Tampa
21 community.
22    Q    Okay.  And you know if this report was
23 run for all of the properties in the Hampton Lakes
24 community or only the subject properties in the
25 Hampton Lakes community?

Page 76

1    A    This should only have been run for homes
2 that had Chinese drywall, so they would have a
3 different cost code that Chad could pull from.
4    Q    Okay.  And so the -- there -- it looks
5 like in the upper left-hand corner there's an
6 address.  The -- the one on the first page is 14129
7 Stowbridge Avenue.
8    A    Yes.
9    Q    Do you see that?
10    A    Yes.
11    Q    But then when I flip forward a few pages,
12 that address changes.  Do you see that?
13    A    Yes.
14    Q    So -- okay.  So is it your understanding
15 that this report includes job cost details for each
16 of the subject properties in the Hampton Lakes
17 community?
18    A    That appears to be the case, yes.
19    Q    Okay.  What about -- towards the end of
20 the report, it goes from addresses in the upper
21 left-hand corner, and when you get to the back of
22 the report, instead of addresses, it starts giving
23 lot numbers instead.
24       Can you explain that?
25    A    You talking about the very last pages?

Page 77

1    Q    Well, like, I'm looking at -- if you look
2 in the upper right-hand corner, it says page 162
3 page number.  It's part of the report.
4    A    Okay.
5       MR. NICHOLAS:  If I can help, if you -- it
6 looks like it starts at the Bates number ending in
7 071 in the lower right.
8       MS. EIKHOFF:  Yeah.
9       MR. NICHOLAS:  Is that accurate, Christy?
10       MS. EIKHOFF:  Yeah, that's right -- well,
11 it -- it actually starts, looks like, a little bit
12 before that.
13       MR. NICHOLAS:  Okay.
14       MS. EIKHOFF:  It's definitely in that
15 range.
16    A    Okay, yeah, I see it.
17 BY MS. EIKHOFF:
18    Q    Okay.  So do you know what the portion of
19 the report that is itemized by lot number relates
20 to?
21    A    Where are you seeing the lot number again?
22 I'm sorry.
23    Q    Okay.  So if you look at the -- okay,
24 these numbers on the bottom that say --
25    A    Ah, okay.

20 (Pages 74 - 77)

30(b)(6) Michael Buchman                                    January 4, 2019
The Mitchell Company, Inc. Vs. Knauf Gips KG, Et Al.

Page 78

1    Q   -- Beazer versus Knauf.
2    A   I'm sorry, I got it.
3    Q   Okay.  So in -- in the upper left-hand
4  corner of each page, there is an address until you
5  get to page number 158, and then in the upper
6  left-hand corner, it starts -- instead of address,
7  it says lot number, and that continues for the
8  remainder of the report.  And I'm trying to figure
9  out what that portion of the report is reporting.
10   A   Yeah, this looks -- these look like things
11 that would be on the job template that would
12 normally apply, but on a Chinese drywall home, there
13 would be.  They shouldn't apply here; in other
14 words, design center options, custom options.
15       You know, that just -- in other words,
16 it's on the accounting software, but it would not
17 apply to a Chinese drywall home.  That's what it
18 looks to me like.
19   Q   Okay.  So let's look at the page that's
20 Bates numbered CB704071.
21   A   Okay.
22   Q   Okay.  In the upper left-hand corner of
23 this page, it says Hampton Lakes lot 0201.  And then
24 there's -- it says option discounts, base house
25 totals.  Under column revised budget, it says 1,295.

Page 79

1  And then to the right, there's a negative 1,295.
2  And as you flip through the report, you see several
3  more instances.
4        Do you know what these figures are
5  accounting for?
6    A   Yeah, the first one, it looks like it says
7  permitting.  And then the contingency, which I'm not
8  sure what that would -- what the contingency would
9  be.  I'd have to get with accounting on that.
10   Q   Are these costs, starting on page Bates
11 number 704069 for the remainder of the document, are
12 these costs related to Chinese drywall?
13   A   That's what it says on top of the report,
14 so yes.
15   Q   Can you explain why, for example, on page
16 704079 there's a figure entered $1,295 and then
17 negative $1,295?
18   A   Yeah, it's the same amount.  It's showing
19 again for permit and contingency.  Showing that for
20 each house it looks like.  I'm not sure why it's
21 minused out, though.  I would have to get with
22 accounting to really clearly answer this.
23   Q   Okay.  And do you know why the address is
24 listed as lot numbers instead of actual addresses?
25   A   I'm assuming that's -- yeah, this is all

Page 80

1  stuff that, you know, is generated by the computer
2  system it looks like, not manually entered, so I'm
3  assuming that's the way the program operates.  But
4  here again, I would have to clarify with accounting.
5    Q   And do you know if these lot numbers
6  relate to the subject properties?
7    A   Offhand, no, but it could be easily
8  confirmed.
9    Q   Okay.  All right.  So why don't we look
10 back at the first part of the document, the part
11 that has addresses and not lot numbers.  Just look
12 at the first page of the document.
13   A   All right.
14   Q   In the right-hand column, the far
15 right-hand column, there is -- it looks -- VAR code
16 and says CDW.
17       Do you understand CDW to be Chinese
18 drywall?
19   A   Yes.
20   Q   Are the entries that have Chinese --
21 sorry.
22       Are the entries that have CDW the job cost
23 detail reports related to Chinese drywall?
24   A   Yes.
25       MR. NICHOLAS:  To the --

Page 81

1  BY MS. EIKHOFF:
2    Q   Okay.
3        MR. NICHOLAS:  To the exclusion of the --
4  object to the form.
5        MS. EIKHOFF:  To the exclusion --
6  BY MS. EIKHOFF:
7    Q   Yeah, that's my question.
8    A   Oh.
9    Q   To the exclusion of the others?
10   A   No, these are all Chinese drywall.
11   Q   So everything listed in this job cost
12 detail report is a cost that Beazer alleges is
13 associated with Chinese drywall?
14   A   That is correct.
15   Q   And do you know why some of them say CDW
16 in -- to the right and others don't?
17   A   I do not.
18   Q   Okay.  And so --
19   A   I can speculate, but I don't know for
20 sure.
21   Q   Okay.  So one of --
22       MR. BUSTER:  Don't speculate.
23 BY MS. EIKHOFF:
24   Q   -- the -- one of the entries on the first
25 page, I think the fourth one down, it says garage

21 (Pages 78 - 81)

Case 2:09-md-02047-EEF-MBN   Document 22277-21   Filed 06/20/19   Page 23 of 60

30(b)(6) Michael Buchman                                                January 4, 2019
The Mitchell Company, Inc. Vs. Knauf Gips KG, Et Al.

Page 82

1 door opener, and it lists a cost of $230.
2     Do you see that?
3   A   Yes.
4   Q   Okay.  So is garage door opener --
5 replacement of a garage door opener a cost
6 associated with Chinese drywall for the address
7 14129 Stowbridge Avenue?
8   A   Yes.
9   Q   Okay.  And was replacement of garage door
10 openers one of the typical remediation repairs that
11 were done in the properties?
12   A   Yes.
13   Q   Okay.  If you look on -- it says page
14 number 6.  It's the Bates number 703918.
15   A   Yes.
16   Q   There are costs itemized that's under a
17 heading customer reimburse.  Do you see that?
18   A   I guess I'm blind.  Hold on.  Oh, I see
19 it.
20   Q   Okay.  Do you know what those costs were
21 for?
22   A   Generally, yes.
23   Q   Okay.  Generally what were they for?
24   A   Like on this one, if the homeowner had
25 decided to get a pod to put some things in, it would

Page 83

1 be that, electric, water and sewer, and then just
2 their monthly stipend of 3,200.
3   Q   Beazer paid homeowners who vacated the
4 property for remediation a monthly stipend of -- of
5 $3,200; is that correct?
6   A   That is correct.
7   Q   Okay.  And did that stipend intend to
8 cover their alternative living expenses while their
9 properties were being remediated?
10   A   That is correct.
11   Q   Okay.  And how long were the homeowners
12 typically out of the property for remediation?
13   A   My recollection is anywhere from two and a
14 half to five months.  It varied.
15   Q   Okay.  And could they go anywhere they
16 want or did Beazer ever provide them with housing at
17 other Beazer communities, for example?
18   A   To my knowledge, no, they -- they were
19 given the stipend, and they could pick and choose
20 where they went.
21   Q   Okay.  And then I see on the same page
22 we're looking at, page 6, that there is -- it says
23 documentation EXP, and there is a -- the name
24 Environ listed on those line items.
25     Do you see that?

Page 84

1   A   Yes, I do.
2   Q   Is it your understanding that these are
3 payments made to Environ for their inspection and
4 analysis related to that property?
5   A   Yes, ma'am.
6   Q   Okay.  And this address that we're looking
7 at on page 6 is 14129 Stowbridge Avenue?
8   A   Yes.
9   Q   The column that says "actual" provides a
10 business unit total of $112,331.55.  Do you see
11 that?
12   A   Yes.
13   Q   Okay.  And then looking back at Exhibit 3,
14 the last page of Exhibit 3.
15   A   Give me a second here.
16   Q   Sure, I know.
17   A   I'm buried in exhibits.
18   Q   I think it's this one.
19     The last page has 14129 Stowbridge, and
20 the total reported for actual cost is $112,331.55.
21 Do you see that?
22   A   I do.
23   Q   So is it your understanding, Mr. Buchman,
24 that the amounts that are listed in Exhibit 3 in the
25 repair cost column are supported by the job cost

Page 85

1 detail reports?
2   A   That should be the case, yes.
3   Q   Okay.  And did the job cost detail reports
4 include the monthly stipend?
5   A   Yes.
6   Q   Okay.  And includes the repair cost,
7 right?
8   A   Yes.
9   Q   Includes replacement of other property,
10 such as garage door openers, correct?
11   A   That is correct.
12   Q   And basically everything except for
13 attorneys' fees?
14     MR. BUSTER:  Object to form.
15   A   And other costs that he talked about
16 before.
17 BY MS. EIKHOFF:
18   Q   Well, he's -- I'm asking you.
19   A   Okay.
20   Q   Okay.  So do you as we sit here today know
21 of any other costs besides attorneys' fees and
22 besides costs incurred subsequent to the date of the
23 report --
24   A   Uh-huh.
25   Q   -- that are not included in the job detail

22 (Pages 82 - 85)

30(b)(6) Michael Buchman                                    January 4, 2019
The Mitchell Company, Inc. Vs. Knauf Gips KG, Et Al.

Page 86

1 cost report?
2    A   I do not.
3         (Defendant's Exhibit 15 was marked for
4 identification.)
5 BY MS. EIKHOFF:
6    Q   Okay.  All right.  And I'm just going to
7 mark, for the record, Exhibit 15, which I'll hand to
8 you.  It's even bigger than Exhibit 14, believe it
9 or not.  And Exhibit 15 has a title Magnolia Lakes
10 drywall job cost detail report.
11        Is it your understanding that this is the
12 analogous job cost detail report for the Magnolia
13 Lakes community?
14   A   That appears to be the case, yes.
15   Q   Okay.  The last one we looked at was for
16 Hampton Lakes, correct?
17   A   That is correct.
18   Q   Okay.  And in the Knauf settlement
19 agreement we looked at, there was a reference to
20 other homes outside these two communities.
21        My question for you is:  Are there any
22 subject properties, as we've defined them here
23 today, outside of those two communities?
24   A   No, ma'am.
25   Q   Okay.  And you would expect, based on the

Page 87

1 exercise we just did with the last exhibit, that if
2 we went through this job cost detail report address
3 by address it would itemize the costs that are
4 totaled in the repair cost column in Exhibit 3,
5 right?
6    A   That should be the case, yes.
7    Q   Okay.  And if there's a discrepancy
8 between the Exhibit 3 summary and the detailed job
9 cost -- sorry -- and the job cost detail report, do
10 you believe that the job cost detail report would be
11 more accurate?
12   A   Yeah, any discrepancy would be Susan's
13 fault, so -- not Chad's.
14        MR. BUSTER:  Client's always right.
15 BY MS. EIKHOFF:
16   Q   And to the extent that this is described
17 in Exhibit 3 as repair costs, as we've already
18 discussed, the costs are broader than just repairs,
19 correct?
20   A   That is correct.
21   Q   Okay.
22        MR. NICHOLAS:  We're -- we're a little
23 after 12 if you're --
24        MS. EIKHOFF:  Oh.
25        MR. NICHOLAS:  -- changing gears.

Page 88

1        MS. EIKHOFF:  Well, then why don't we take
2 a break.
3        THE VIDEOGRAPHER:  Off the record at
4 12:05.
5        (Recess 12:05-12:41 p.m.)
6        THE VIDEOGRAPHER:  We're back on the
7 record at 12:41.
8 BY MS. EIKHOFF:
9    Q   Mr. Buchman, how did it come to Beazer's
10 attention that Chinese drywall had been installed in
11 some of Beazer homes?
12   A   I believe it was once it had made the --
13 the local news, you know, people had been reporting
14 odor and different symptoms, lot of A/C failures, we
15 started to get some calls, we started looking into
16 it, really didn't know what was going on.  We knew
17 we had had some A/C failures prior to that.
18        And I believe it was Lennar that figured
19 out what was going on, that's when it broke the
20 news, that's when more calls came in, and we started
21 doing our investigations.
22   Q   You just referred to Lennar.  That's
23 another home builder; is that correct?
24   A   Correct.  That's correct.
25   Q   And they also -- did Lennar also build

Page 89

1 homes in the Tampa and Fort Myers communities?
2    A   Yes, they did.
3    Q   Okay.  And it's a competitor --
4    A   Right.
5    Q   -- of Beazer's, right?
6    A   Correct.
7    Q   Okay.  Did any homeowners sue Beazer?
8    A   I believe so, yes.
9    Q   Okay.  Do you know how many?
10   A   I believe it was under 10, but --
11   Q   Okay.
12   A   -- more than a handful probably.
13   Q   Okay.
14        (Defendant's Exhibit 16 was marked for
15 identification.)
16 BY MS. EIKHOFF:
17   Q   Going to show you a document that Beazer
18 produced to us.  It's been marked as Exhibit 16.
19        MR. NICHOLAS:  What number is this one?
20        MS. EIKHOFF:  16.
21        MR. NICHOLAS:  Thank you.
22 BY MS. EIKHOFF:
23   Q   Do you recognize this document?
24   A   I do not, but it makes sense coming out of
25 that HOA, yeah.

23 (Pages 86 - 89)

30(b)(6) Michael Buchman                           January 4, 2019
The Mitchell Company, Inc. Vs. Knauf Gips KG, Et Al.

Page 90

1    Q   Okay.  Was Beazer aware of homeowners
2 holding meetings about Chinese drywall?
3    A   I do recall something about that, yes.
4    Q   Okay.  And this flyer states -- it's right
5 about in the middle.  It says:  Attorneys handling
6 hundreds of lawsuits, including those within your
7 neighborhood, will be available to answer any
8 questions that you may have.
9        Were you aware that homeowners were
10 meeting with attorneys about the Chinese drywall
11 issue?
12   A   Yes.
13   Q   And I believe you said were calling
14 Beazer, right?
15   A   Uh-huh.
16   Q   And then in --
17   A   Yes.
18   Q   -- in some cases, actually filing suit
19 against Beazer?
20   A   Yeah.  Pretty much most homeowners we met
21 with would immediately threaten you with litigation,
22 obviously, but the amount that actually followed
23 through were --
24   Q   Okay.
25   A   -- fairly small.

Page 91

1        (Defendant's Exhibit 17 was marked for
2 identification.)
3 BY MS. EIKHOFF:
4    Q   I'm going to show you another document
5 that Beazer produced.  I've marked it as Exhibit 17.
6        Have you seen this document before?
7    A   I have not.
8    Q   Okay.  Do you know who Kimberly Royal is?
9    A   I do.
10   Q   You recognize that name as one of the
11 homeowners that had Chinese drywall in the -- her
12 property?
13   A   I do.
14   Q   Okay.  What stands out to you about her?
15   A   She -- she purchased a home from us that
16 we had purchased back from the original buyer due to
17 an odor in the home that at the time could not be
18 identified.
19   Q   I see.
20       So she was not the original homeowner of
21 13512 Little Gem --
22   A   No.
23   Q   -- Circle?
24   A   No, ma'am.
25   Q   And was Chinese drywall found in that

Page 92

1 property?
2    A   Yes.
3    Q   It is one of the subject properties?
4    A   It is.
5    Q   Okay.
6        (Defendant's Exhibit 18 was marked for
7 identification.)
8 BY MS. EIKHOFF:
9    Q   I'm going to show you a document that's
10 been marked as Exhibit 18 which was produced to us.
11       Have you seen this document before?
12   A   I have not.
13   Q   Okay.  It is -- it starts out on King &
14 Spalding letterhead with the attorney Kevin Buster.
15       I believe you know him, right?
16   A   Yeah, somewhat.
17   Q   Can you vouch that he is counsel for
18 Beazer?
19   A   I can.
20   Q   Okay.  And so Beazer engaged counsel to
21 respond to certain homeowner complaints; is that
22 correct?
23   A   That is correct.
24   Q   Okay.  And this letter includes laboratory
25 results and Environ reports.  Do you see that?

Page 93

1    A   Yes.  I'm looking at it right now, yes,
2 ma'am.
3    Q   Okay.  And so I believe you testified
4 earlier that the costs of these lab tests or
5 investigation or analysis would be included in the
6 job cost detail report for this particular property,
7 correct?
8    A   To my knowledge, yes.
9    Q   Okay.
10       MR. BUSTER:  And as I mentioned before,
11 they were supposed to be we think, many of them
12 weren't, so we're going to have to dig down on that.
13       (Defendant's Exhibit 19 was marked for
14 identification.)
15 BY MS. EIKHOFF:
16   Q   Going to show you a document marked as
17 Exhibit 19.  Oh, sorry, I just marked -- sorry,
18 that's my copy.
19   A   I'll take that one.
20   Q   It's probably clean, but you never know.
21 Exhibit 19.
22       I'll note that I'm going to go back to
23 Exhibit 16, which is the flyer about the Chinese
24 drywall meeting.
25   A   Yes.

24 (Pages 90 - 93)

Page 94

1    Q   The contact at the bottom is Kim Royal at
2 her address.
3    A   Yes.
4    Q   Does it surprise you that she was
5 organizing such a meeting?
6    A   It does not.
7    Q   Okay.  Back to Exhibit 19, can you tell me
8 what this document is?
9    A   This is our work authorization agreement
10 that we had the homeowners sign.
11    Q   Okay.  It says:  Work authorization
12 agreement and limited release and assignment of
13 property damages claims.
14       Am I reading that right?
15    A   Yes, you are.
16    Q   And so was this the agreement that Beazer
17 entered into with Ms. Royal to resolve her Chinese
18 drywall claims?
19    A   Yes, it is.
20    Q   Okay.  And in this agreement, is it
21 memorializing that Beazer would remediate the home
22 in exchange for a release of claims by Ms. Royal
23 against Beazer?
24    A   That is my understanding, yes.
25    Q   Okay.  And, also, if you look at page --

Page 95

1 ah, see, it's a good thing I didn't give you this
2 one.  It's got my highlighting on it.
3    A   I was --
4    Q   Page 8 -- it would make it easier for you
5 to find what I'm looking at, wouldn't it.
6       The Section E, assignment of claims.
7    A   Yes.
8    Q   And did Beazer -- in exchange for the
9 release and as part of this work authorization
10 agreement, did Beazer take an assignment of the
11 homeowner's property claims against any other
12 parties?
13    A   Can you define "assignment"?
14    Q   Do you know what an assignment is?
15    A   No.  That's why I'm asking you to clarify.
16    Q   Okay.  So you are not prepared to testify
17 about assignments that -- assignment agreements that
18 were entered between Beazer and the homeowners?
19       MR. NICHOLAS:  Object to the form.
20    A   I guess not.
21 BY MS. EIKHOFF:
22    Q   Okay.  This is a -- Exhibit 19 is an
23 executed agreement between Beazer and Ms. Royal,
24 that's correct?
25    A   That is correct.

Page 96

1    Q   Okay.  And on page 7, there's a
2 paragraph D, limited release.
3    A   Yes.
4    Q   Do you know independently from what's
5 written in this document how the release was
6 limited?
7       MR. NICHOLAS:  Object to the form.
8       MR. BUSTER:  Join.
9    A   Wouldn't want to speculate, so I'll say
10 no.
11 BY MS. EIKHOFF:
12    Q   Okay.  This document -- this document
13 details repair work that would be done at the home;
14 is that correct?
15       Looking -- I'm looking at page 3.
16    A   It does.
17    Q   And then paragraph 4 on the next page
18 says:  Beazer will also pay the cost of moving
19 homeowner's personal property to a temporary
20 residence.
21       Do you see that?
22    A   Yes, I do.  That is correct.
23    Q   And then paragraph 5, it says:  Beazer
24 will also pay homeowner a monthly stipend of $3,200
25 for all living and other expenses.

Page 97

1       Do you see that?
2    A   I do.
3    Q   Okay.  And were any additional amounts
4 paid to the Royals besides what's described in this
5 document?
6    A   To my knowledge, no.
7    Q   Okay.
8       (Defendant's Exhibit 20 was marked for
9 identification.)
10 BY MS. EIKHOFF:
11    Q   Okay.  I'm going to show you a different
12 work authorization agreement and general release and
13 assignment of claims.  It's marked as Exhibit 20.
14       Is this the document that memorializes the
15 resolution of Theodore and Pamela Gill's claims
16 against Beazer related to Chinese drywall?
17    A   It is.
18    Q   Okay.  And if you look at the bottom of
19 page 7 of this document under the general release --
20    A   Yes.
21    Q   -- do you know why the Gills' agreement is
22 identified as a general release, whereas the Royals'
23 was a limited release?
24       Do you have an explanation for that?
25    A   Yeah, looks like there's a rider on here

25 (Pages 94 - 97)

30(b)(6) Michael Buchman                    January 4, 2019
The Mitchell Company, Inc. Vs. Knauf Gips KG, Et Al.

Page 98

1 for an additional 2,500.
2    Q    Right.
3         When you say a rider, I think you're
4 referring to -- under paragraph D1, it says: Beazer
5 agrees to perform the repair work as described in
6 the scope of work section at the home, to provide
7 the additional limited warranty, and to pay
8 homeowner the sum of $2,500 in exchange for a full
9 settlement.
10        And it goes on, right?
11   A    Yes.
12   Q    And do you know what that additional 2,500
13 payment was for?
14   A    I did work very closely with them, but I
15 do not recall this additional --
16   Q    Okay.
17   A    -- payment.
18   Q    And so you -- you don't know why the Gills
19 would get an additional payment of $2,500 that
20 the -- Ms. Royal didn't get?
21   A    I do not.
22   Q    Okay.  Do you know if anyone at the
23 company would know?
24        Just the lawyers?
25   A    Just -- yeah, only the attorneys would

Page 99

1 have records at this point.
2        MR. BUSTER:  I can tell you --
3        MS. EIKHOFF:  Okay.  Well, that's --
4        MR. BUSTER:  -- if you would like.
5        MS. EIKHOFF:  No, you're not the witness.
6        MR. BUSTER:  No, I'm Beazer's counsel.
7        MS. EIKHOFF:  Not the witness.
8        (Defendant's Exhibit 21 was marked for
9 identification.)
10 BY MS. EIKHOFF:
11   Q    Let's look at the next one.  I'm going to
12 show you a document that's been marked as 21.
13        Do you recognize the name of the homeowner
14 Mary Jane Trust, paren, Adrian Lynn, Trustee?
15   A    This one I do not remember, no.
16   Q    Okay.  So you don't remember if you were
17 involved in dealing with the Chinese drywall claim
18 for this particular property?
19   A    I'm sure I was because I was involved in
20 every home, especially a home of this late date, I
21 just do not recall.
22   Q    Okay.  And if you look at page 7 of this
23 document, it -- the -- the form of this is -- is
24 limited release.
25        Do you know how that release was limited?

Page 100

1        MR. NICHOLAS:  Object to the form.
2        MR. BUSTER:  Join.
3   A    I do not.
4 BY MS. EIKHOFF:
5   Q    Okay.  And it appears from paragraph 7
6 that Beazer -- sorry, not paragraph 7.
7        On page 7, paragraph D1, Beazer agrees to
8 perform the repair work as described in the scope
9 of work and to provide the additional limited warranty
10 in the -- exchange for a full settlement of any and
11 all claims, right?
12       MR. NICHOLAS:  Object to form.
13       MR. BUSTER:  Object to form.
14   A    Yeah, that's what it states, yes.
15 BY MS. EIKHOFF:
16   Q    Okay.  And so are you aware of any
17 additional payments that were made to this homeowner
18 besides what's enumerated in this document?
19   A    I am not.
20       (Defendant's Exhibit 22 was marked for
21 identification.)
22 BY MS. EIKHOFF:
23   Q    Okay.  Let's look at this one.  I'm going
24 to hand you a document that's been marked as
25 Exhibit 22.

Page 101

1        Do you recognize the name David Overbeck?
2   A    I do.
3   Q    Okay.  Were you involved in dealing with
4 his Chinese drywall claims?
5   A    I was.
6   Q    Okay.  And if you look at page 8 of 17,
7 looks like there's an additional payment of $2,500.
8        Do you know what that payment was for?
9   A    I remember generally he had some
10 complaints.  I -- I do not recall what the 2,500 was
11 for, though --
12   Q    Okay.
13   A    -- specifically.
14   Q    And so you can't recall why Mr. Overbeck
15 got an additional payment of 2,500 that the Mary
16 Jane Trust did not get?
17   A    I remember he was an extremely challenging
18 homeowner, and he had a long list of things that he
19 wanted compensation for.
20   Q    Okay.  So if there was a homeowner that
21 was particularly challenging, to use your word,
22 would Beazer take that into consideration in putting
23 together a resolution package for that particular
24 homeowner?
25       MR. BUSTER:  Object to form.

26 (Pages 98 - 101)

30(b)(6) Michael Buchman                                    January 4, 2019
The Mitchell Company, Inc. Vs. Knauf Gips KG, Et Al.

Page 102

1    A   Yeah, I wouldn't, but if they retained
2 counsel, then that goes above my pay grade and out
3 of my hands so...
4 BY MS. EIKHOFF:
5    Q   Okay.
6    A   It would not surprise me in the least that
7 he had counsel.
8        (Defendant's Exhibit 23 was marked for
9 identification.)
10 BY MS. EIKHOFF:
11   Q   Okay.  I'm going to show you another work
12 authorization agreement and general release and
13 assignment of claims form.
14       Do you recognize the names Daniel and
15 Danielle Kapalin?
16   A   I do not.
17   Q   Okay.  If you'll turn to page 8 of 17
18 under the general release section.
19   A   Yes.
20   Q   Here it states that:  Beazer agrees to
21 perform the repair work, to provide the additional
22 limited warranty, and to pay the homeowner the sun
23 of 10 -- the sum of $10,000.
24       Do you see that?
25   A   I do.

Page 103

1    Q   Do you know why these homeowners got an
2 additional payment of $10,000?
3    A   I do not.
4    Q   Okay.  Is it fair to say that Beazer
5 tailored resolutions with individual homeowners
6 based on the individual facts and circumstances of
7 that homeowner?
8        MR. BUSTER:  Object to form.
9        MR. NICHOLAS:  Join.
10   A   Yeah, here again, these would most likely
11 involve litigation, and that's -- that's above my
12 pay grade.  I don't want to speculate as to why --
13 BY MS. EIKHOFF:
14   Q   Okay.
15   A   -- they were compensated additional
16 moneys.
17   Q   I want to point out something else in this
18 document on page 9.  At the very bottom, it says
19 that:  The homeowner reserves the right to seek
20 additional damages for personal injuries and medical
21 monitoring against other responsible parties and do
22 not assign these rights to Beazer but do agree to
23 release such claims as against Beazer only.
24       Did anyone ever make personal injury
25 claims against Beazer?

Page 104

1    A   Not to my knowledge.
2    Q   Okay.  And do you recall carving out
3 personal injury and medical monitoring claims from
4 the assignment that Beazer took?
5        MR. BUSTER:  Object to form.
6    A   Yeah, that's -- that's above my pay grade,
7 so --
8 BY MS. EIKHOFF:
9    Q   Okay.
10   A   -- I do not know.
11       (Defendant's Exhibit 24 was marked for
12 identification.)
13 BY MS. EIKHOFF:
14   Q   Hand you the document that's been marked
15 as Exhibit 24.  Do you know the names Karen Marie
16 Wilcox and Eric Raymond Wilcox?
17   A   No, ma'am.
18   Q   Okay.  So you don't remember this
19 particular homeowner or their claim?
20   A   Yeah, they were in Tampa, so, no, I --
21   Q   Oh, so you didn't -- you only --
22   A   -- had no personal --
23   Q   You only dealt with the Fort Myers ones?
24   A   Correct.
25   Q   Okay.  And on page 8 of 8, looks like

Page 105

1 these homeowners got an additional sum of $10,000.
2 Do you see that?
3    A   I do.
4    Q   And you don't know why?
5    A   I do not.
6    Q   Okay.
7        (Defendant's Exhibit 25 was marked for
8 identification.)
9 BY MS. EIKHOFF:
10   Q   I'm going to hand you a document that's
11 been marked as Exhibit 25.
12       Do you recognize the names Steve and
13 Samantha Attard?
14   A   Attard, yes.
15   Q   Attard?
16   A   Uh-huh.
17   Q   And what do you remember about their
18 claim?
19   A   I remember them well.  They were, I
20 believe, probably one of the first few to call our
21 warranty center, and I believe they were one of the
22 last to finally allow us to begin work.
23       I remember actually Ray Phillips had to
24 come down and meet with them personally to hammer
25 out an agreement and let us -- pretty much allow us

27 (Pages 102 - 105)

30(b)(6) Michael Buchman                         January 4, 2019
The Mitchell Company, Inc. Vs. Knauf Gips KG, Et Al.

Page 106

1  to start work.
2      Q    The cover letter on this agreement
3  indicates that there's a check in the amount of
4  $20,000, which is also referenced in the agreement
5  on page 7 under the general release.
6          Do you know why the Attards got $20,000 in
7  addition to the work and warranty?
8      A    This one I was aware, obviously, that
9  there were issues with them.  I do not know
10 specifically why they received that amount, but it
11 does not surprise me that they received an amount,
12 not in the least.
13     Q    Because they were particularly vociferous
14 about their complaints?
15     A    Yeah.  And I believe he had definitely
16 retained counsel, so it may have been a cost benefit
17 analysis where it cost more to pay Steve -- or, I'm
18 sorry, Clare and Kevin than just to --
19         (Defendant's Exhibit 26 was marked for
20 identification.)
21 BY MS. EIKHOFF:
22     Q    Let me show you a document related to this
23 property that Beazer produced to us.  It's been
24 marked as Exhibit 26.
25         Have you seen this document before?

Page 107

1      A    I have not.
2      Q    Do you know who Keith Tobeck is?
3      A    I do not.
4      Q    Okay.  If you look at the second page of
5  the document, it's signed by Keith Tobeck, Steve
6  Attard, and Samantha Attard.
7          And the Attards are the homeowners, right?
8      A    They are.
9      Q    And the letter is copied to Senator
10 Nelson; Representative Nick Thompson; Lanty Smith,
11 CEO of Wachovia Bank; Ian McCarthy, CEO of Beazer
12 Homes; and NBC, the TODAY Show.
13         Do you see that?
14     A    I do.
15     Q    Does --
16     A    Not surprising.
17     Q    You say it's not surprising because they
18 were very vocal critics?
19     A    Here again, that opinion may be colored by
20 subsequent issues I've had with the Attards, but
21 let's just say I -- you know.
22     Q    Their -- their Chinese drywall claim was
23 ultimately resolved, though, by the work
24 authorization agreement and release that we looked
25 at; is that correct?

Page 108

1      A    That is correct.
2      Q    Okay.
3          (Defendant's Exhibit 27 was marked for
4  identification.)
5  BY MS. EIKHOFF:
6      Q    Show you a document that's been marked as
7  Exhibit 27.
8          Do you recognize the name John -- Robert
9  Morris?
10     A    I do not.
11     Q    Okay.  This is a property in Tampa; is
12 that correct?
13     A    It is.
14     Q    So you would not have been involved in
15 this in your regular work duties?
16     A    No, ma'am.
17     Q    Okay.  And you'll see on page 9 that --
18 oh, sorry, on page 8 that they received an
19 additional payment of $10,000?
20     A    Yes, I see that.
21     Q    Okay.  But you don't know why?
22     A    No, ma'am.
23     Q    Okay.  For each of the homeowners that
24 signed a work authorization agreement and release --
25 and we've looked at several examples now -- Beazer

Page 109

1  covered the cost of the full remediation of the
2  property, correct?
3      A    That is correct.
4      Q    And additional replacements, correct?
5  Additional --
6      A    You mean --
7      Q    Additional property replacement such as
8  garage door openers and --
9      A    That is correct, yes.
10     Q    -- fire alarms, that sort of thing?
11     A    Exactly.
12     Q    And also paid for alternative living
13 expenses, right?
14     A    Correct.
15     Q    Did you know that every single one of
16 these homeowners, with the exception of Ms. Royal,
17 is suing Taishan to recover costs of remediation of
18 their property?
19     A    I didn't --
20         MR. BUSTER:  Object to form.
21     A    I did not.
22 BY MS. EIKHOFF:
23     Q    Okay.  And from where you sit based on
24 your knowledge, they did not expend any personal
25 expenses to remediate their property, correct?

28 (Pages 106 - 109)

30(b)(6) Michael Buchman                    January 4, 2019
The Mitchell Company, Inc. Vs. Knauf Gips KG, Et Al.

Page 110

1      MR. NICHOLAS: Object to the form.
2   A   To remediate the property, no.
3 BY MS. EIKHOFF:
4   Q   Okay. These documents show that Beazer
5 took an assignment of their litigation rights. And
6 I know you said you don't know what that means, and
7 so that'll be something for the lawyers to talk
8 about.
9      But is Beazer pursuing claims against
10 Taishan on behalf of any of these individuals?
11      MR. BUSTER: Object to form.
12      MR. NICHOLAS: Object to form.
13   A   Not to my knowledge.
14 BY MS. EIKHOFF:
15   Q   Okay. So through this lawsuit, the
16 Mitchell case, Beazer is seeking to recover the
17 costs and expenses associated with Chinese drywall
18 that Beazer expended, right?
19   A   That is my understanding.
20   Q   Beazer is not involved in other lawsuits
21 standing in the shoes of any of these individual
22 homeowners; is that correct?
23      MR. NICHOLAS: Object to form.
24      MR. BUSTER: Object to form.
25   A   Not to my knowledge.

Page 111

1 BY MS. EIKHOFF:
2   Q   Okay.
3      (Defendant's Exhibit 28 was marked for
4 identification.)
5 BY MS. EIKHOFF:
6   Q   Show you a document that's been marked as
7 Exhibit 28. Do you recognize this document,
8 Mr. Buchman?
9   A   I do.
10   Q   Okay. What is it?
11   A   It's the repair protocol from Environ for
12 Chinese drywall remediation.
13   Q   Okay. And Environ prepared this report?
14   A   Correct.
15   Q   Did Beazer work with Environ to draft this
16 report?
17   A   To my knowledge, the only change that we
18 were involved in was the amount of time that the
19 house would off-gas.
20   Q   You said off-gas?
21   A   Uh-huh.
22   Q   And can you explain what that is?
23   A   After the home was -- interior was demoed
24 and we did the pressure cleaning on the interior,
25 there would be a time where the home would be left

Page 112

1 alone, you would have air exchange units pulling air
2 out of the home. And I believe we generally started
3 that at -- with 10 days, and at our request, Environ
4 changed it to 14 days.
5   Q   Okay. Just to give the property a little
6 more time to air out?
7   A   Uh-huh, yes.
8   Q   And in this particular protocol, do you
9 know if this is 10 or 14?
10   A   I'm sure it's in here.
11      MR. NICHOLAS: Page 6. It actually says
12 15.
13   A   Oh, I stand corrected, 15.
14 BY MS. EIKHOFF:
15   Q   Okay. So you believe that Beazer
16 suggested that there be a minimum of 15 days for
17 what you are calling off-gassing?
18   A   Correct.
19   Q   Okay. Other than that, do you know of any
20 other contributions that Beazer made in coming up
21 with this protocol?
22   A   I know we changed -- this is minor, may
23 not be on this protocol, but as far as protecting
24 the floors, originally we were going to go with
25 carpet, and we went ahead to include a -- just a

Page 113

1 rubber matting that went on the floor, in other
2 words, protect the tile better and actually save
3 costs going forward.
4   Q   Okay.
5   A   Other than that, I can't recall anything
6 right now.
7      (Defendant's Exhibit 29 was marked for
8 identification.)
9 BY MS. EIKHOFF:
10   Q   Okay. And let me show you another
11 document that you-all have produced that I wanted to
12 ask you about related to the protocol. This is
13 document number 29.
14      The date on this document is one to two
15 weeks after the date of the last document. And I
16 just didn't know if you knew why a second protocol
17 was issued.
18   A   Yeah, looks these -- looks like these are
19 the -- for the ones in Tampa, which are attached
20 villas which would have a slightly different
21 protocol because there's a third floor and then
22 there's a common wall in between the units.
23   Q   Okay. And can you direct me to how you
24 differentiated this one from the last one as
25 applying to townhomes as opposed to detached

29 (Pages 110 - 113)

30(b)(6) Michael Buchman                    January 4, 2019
The Mitchell Company, Inc. Vs. Knauf Gips KG, Et Al.

Page 114

1 single-family homes?
2    A   Yeah, let me -- give me a second.
3    Q   I'm being told by your lawyers it's in the
4 bold, all-caps letters right across the top of the
5 first page.
6    A   Well, yeah --
7        MR. BUSTER:  Where we never look.
8    A   Well, yeah, but that's why I said
9 originally, yeah, it's -- it's for attached and
10 detached.
11 BY MS. EIKHOFF:
12   Q   Got it.
13   A   Okay.  I'm sorry, I thought you were
14 looking for --
15   Q   No.
16   A   -- what was different inside the protocol
17 itself.
18   Q   Got it.
19       Did Beazer follow these protocols, the
20 ones that we just looked at, Exhibits 28 and 29, for
21 all of the subject properties?
22   A   To my knowledge, yes, absolutely.
23       (Defendant's Exhibit 30 was marked for
24 identification.)
25 BY MS. EIKHOFF:

Page 115

1    Q   Okay.  I'm going to show you a document
2 that we've marked as Exhibit 30.  Do you recognize
3 this document?
4    A   I do.
5    Q   What is it?
6    A   This is the scope of work for Chinese
7 drywall remediation.
8    Q   And who prepared this?
9    A   This looks like it would have been --
10 would have been prepared by our attorneys.
11   Q   It has a Lee County code and building
12 service stamp on it.  Do you see that?
13   A   I do.
14   Q   And so why does it have a stamp on it?
15   A   When we pulled permits there, we had to
16 bring a copy of our scope of work along with floor
17 plans, et cetera, and they would have to stamp each
18 one.  We'd have to get a permit, post it in the box
19 just like normal.
20   Q   Okay.
21   A   Just like a brand-new home.
22   Q   Right.
23       So when you went in to remediate the
24 properties with Chinese drywall, you had to get a
25 new permit --

Page 116

1    A   Correct.
2    Q   -- and submit a scope of work, and then
3 that scope of work would be stamped by the county
4 regulator?
5    A   Correct.
6    Q   And that's what we see here?
7    A   Uh-huh.  Building department, yes.
8    Q   And Lee County is -- is that Fort Myers or
9 Tampa?
10   A   Fort Myers.
11   Q   Okay.  And so there would be one of these
12 for Tampa too?
13   A   Yes, ma'am.
14   Q   Okay.  And this scope of work is
15 consistent with the Environ scope of works that we
16 just looked at?
17   A   Yes.
18   Q   Okay.
19       (Off-the-record discussion.)
20       MS. EIKHOFF:  Let's go off the record for
21 a second.
22       THE VIDEOGRAPHER:  Off the record at 1:23.
23       (Recess 1:23-1:27 p.m.)
24       THE VIDEOGRAPHER:  Back on the record at
25 1:27.

Page 117

1        (Defendant's Exhibit 31 was marked for
2 identification.)
3 BY MS. EIKHOFF:
4    Q   Handing you a document that's been marked
5 as Exhibit 31.
6        Do you know who Michael Batteau is?
7    A   I do.
8    Q   Who is it?
9    A   It's a homeowner in Magnolia, 13270 Little
10 Gem if memory serves -- there it is right there.
11   Q   Yeah, right across the top?
12   A   Uh-huh.
13   Q   Did Mr. Batteau negotiate additional
14 remediation measures beyond the typical scope of
15 work?
16   A   That appears to be the case, although some
17 of these were things that we were already doing, he
18 was just nitpicking the language on it, but yes.
19   Q   Okay.  And so we talked before about
20 individual homeowners had different levels of being
21 demanding; is that fair?
22   A   Special -- special attention, yeah.
23   Q   Yes, required different levels of
24 attention.
25   A   Yes.

30 (Pages 114 - 117)

Page 118

1   Q   And Beazer would respond to those
2   individual cases as needed?
3   A   Each -- each personality type, as you
4   know, some people want to be left alone, some people
5   want to be communicated with constantly, so, yeah,
6   there are different -- different needs.
7       Lot of these things here, I don't even
8   know if we would have agreed to these, but
9   timeline -- we give every homeowner a timeline.
10  Same with number 2.  Number 3 is something we
11  already do.  Number 4, a pre-drywall tour is
12  something we do.  Clarification on the scope, which
13  he lists below, those are things that we were
14  already doing.  All appliances went.  All light
15  fixtures went.  All HVAC systems went.
16      And maybe I'm out on a limb here, but
17  there's no way, no way that he received a lifetime
18  transferable warranty.
19  Q   He demands one, but you're testifying on
20  behalf of Beazer that you would not -- Beazer would
21  not have granted that?
22  A   In 15 years, no, I've never heard of that
23  situation.
24  Q   Okay.
25  A   Not surprising that he demanded it, it's

Page 119

1   just -- no.
2   Q   You testified earlier that Beazer became
3   aware of Chinese drywall as an issue, in part,
4   because Lennar, a competitor, was made aware of it
5   as well?
6   A   Yeah.  My recollection is when it hit the
7   news, Lennar had done their research and they had
8   figured out exactly what the issue is.
9       For instance, on Kim Royal's house,
10  obviously we knew about the issue several years
11  before but had no idea what it was, what the cause
12  was.
13  Q   Okay.  And are you aware of any litigation
14  that Lennar initiated against Taishan?
15      Is Beazer involved in that at all?
16      MR. NICHOLAS:  Object to the form.  Those
17  are two different questions.
18      MS. EIKHOFF:  Okay.  Thank you.
19  BY MS. EIKHOFF:
20  Q   Let me split that up.
21      Are you aware of any litigation that
22  Lennar initiated against Taishan?
23  A   I am not.
24  Q   Okay.  Has Beazer been involved at all in
25  joining forces with Lennar to make Chinese drywall

Page 120

1   claims?
2       MR. BUSTER:  Object to form.
3   A   I would assume so, but here again, not to
4   my knowledge.
5   BY MS. EIKHOFF:
6   Q   Okay.
7   A   I'm not an attorney.
8   Q   Are there any other home builders that
9   Beazer was in communication with relating to Chinese
10  drywall claims?
11      MR. NICHOLAS:  Object to the form.
12      MR. BUSTER:  Object to form.
13  A   Not to my knowledge.
14  BY MS. EIKHOFF:
15  Q   Besides Lennar?
16  A   No, not to my knowledge.
17  Q   Okay.  So Lennar is the only one that you
18  can name?
19      MR. BUSTER:  Object to form.
20      MR. NICHOLAS:  Object to form.
21  A   What -- you mean -- in other words, we
22  were aware through media reports that they had an
23  issue in Environ and they had worked on it.  By the
24  time it came to our attention, we did not work
25  directly with Lennar.

Page 121

1   BY MS. EIKHOFF:
2   Q   Understood.
3   A   Yeah.
4   Q   And -- and my current question is whether
5   Beazer is aware of any other home builders besides
6   Lennar that had to deal with Chinese drywall issues.
7   A   I personally am, but I can't speak for the
8   company on that.
9   Q   Okay.  So personally what other home
10  builders are you aware of?
11  A   D.R. Horton.
12  Q   Okay.  Any others?
13  A   No.
14  Q   Okay.
15      MS. EIKHOFF:  Why don't we take a break.
16  I think we're almost done.
17      MR. NICHOLAS:  Okay.
18      THE VIDEOGRAPHER:  Off the record at 1:33.
19      (Recess 1:33-1:41 p.m.)
20      THE VIDEOGRAPHER:  Back on the record.
21  The time is 1:41.
22  BY MS. EIKHOFF:
23  Q   Mr. Buchman, you testified that you
24  personally are aware of another home builder called
25  D.R. Horton that experienced Chinese drywall

31 (Pages 118 - 121)

30(b)(6) Michael Buchman                                    January 4, 2019
The Mitchell Company, Inc. Vs. Knauf Gips KG, Et Al.

Page 122

1 problems; is that correct?
2     A    That is correct.
3     Q    Do you know what states those problems
4 were experienced in?
5     A    I just know about Florida because my wife
6 works for the company.
7     Q    Oh, okay.  All right.  And just as -- D.R.
8 Horton is a competitor of Beazer?
9     A    Correct.
10    Q    Okay.  And are they bigger or smaller than
11 Beazer in Florida?
12    A    They're I think the largest in the
13 country, one or two, so --
14    Q    Okay.
15    A    -- larger.
16    Q    Okay.  And do you have any idea of the
17 scope of the number of homes that they had affected
18 by Chinese drywall?
19    A    Just what my wife and I would talk about.
20 She had --
21    Q    All right.  Well, don't -- don't tell me
22 about what you -- you and your wife talk about
23 because that's actually privileged, so...
24         Let's look back at Exhibit 3, which is all
25 the way -- these are back in order.

Page 123

1         We looked at the column that's called
2 repair costs, and you testified earlier that those
3 numbers are taken from the job detail cost
4 reports --
5     A    Job -- yes.
6     Q    -- job cost detail reports?
7     A    Yes.
8     Q    Did I say that right?
9         And -- and you already testified that it's
10 more than just, quote, repairs, it's broader than
11 that, right?  It's Beazer's costs associated with
12 responding to Chinese drywall?
13    A    Correct.
14        MR. BUSTER:  Object to form.
15 BY MS. EIKHOFF:
16    Q    Okay.  And then there are columns for
17 Banner settlement and global settlement, correct?
18    A    Correct.
19    Q    The Banner settlement and global
20 settlement totals that are reflected in Exhibit 3
21 offset Beazer's costs also reflected in Exhibit 3,
22 correct?
23        MR. NICHOLAS:  Object to the form.
24        MR. BUSTER:  Object to form.
25    A    They have not been minused out of the

Page 124

1 repair costs as of yet, so...
2 BY MS. EIKHOFF:
3     Q    But the -- the moneys that were received
4 by those settlements were intended to compensate for
5 Chinese drywall costs and expenses, correct?
6     A    To compensate for what we had spent, yes.
7     Q    Okay.  And so even though it hasn't been
8 done on this particular spreadsheet, it's your
9 understanding that what Beazer is seeking in damages
10 in this case would be offset by the settlement
11 moneys already received from other parties?
12        MR. NICHOLAS:  Object to the form.
13        MR. BUSTER:  Object to form, calls for a
14 legal conclusion.
15        MS. EIKHOFF:  Doesn't.
16        MR. NICHOLAS:  I join in that.
17    A    To my knowledge, yes, but I'm not an
18 attorney.
19 BY MS. EIKHOFF:
20    Q    Okay.
21        MS. EIKHOFF:  That's all the questions I
22 have.  Thank you.
23        THE WITNESS:  Thank you.
24        MR. BUSTER:  I've just got a couple hours.
25 Kidding.

Page 125

1         MS. CLARE:  Did we put on the record
2 that's it going to be signed?
3         THE VIDEOGRAPHER:  Anything further?
4         MR. BUSTER:  We want him to read and sign.
5         MS. EIKHOFF:  Okay.  No problem.
6         THE VIDEOGRAPHER:  This concludes the
7 deposition.  The time is 1:44.  We are off the
8 record.
9         (Deposition concluded at 1:44 p.m.)
10        (Signature reserved.)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

32 (Pages 122 - 125)

30(b)(6) Michael Buchman                                    January 4, 2019
The Mitchell Company, Inc. Vs. Knauf Gips KG, Et Al.

Page 126

1       The following reporter and firm
disclosures were presented by me at this proceeding
2 for review by counsel:
3           REPORTER DISCLOSURES
4       The following representations and
disclosures are made in compliance with Georgia Law,
5 more specifically:
        Article 10 (B) of the Rules and
6 Regulations of the Board of Court Reporting
(disclosure forms)
7       OCGA Section 9-11-28 (c) (disqualification
of reporter for financial interest)
8       OCGA Sections 15-14-37 (a) and (b)
(prohibitions against contracts except on a
9 case-by-case basis)
10 - I am a certified court reporter in the State of
Georgia.
11 - I am a subcontractor for Veritext.
   - I have been assigned to make a complete and
12 accurate record of these proceedings.
   - I have no relationship of interest in the matter
13 on which I am about to report which would disqualify
me from making a verbatim record or maintaining my
14 obligation of impartiality in compliance with the
Code of Professional Ethics.
15 - I have no direct contract with any party in this
action, and my compensation is determined solely by
16 the terms of my subcontractor agreement.
17
18          FIRM DISCLOSURES
19 - Veritext was contacted to provide reporting
services by the noticing or taking attorney in this
20 matter.
   - There is no agreement in place that is prohibited
21 by OCGA 15-14-37 (a) and (b).  Any case-specific
discounts are automatically applied to all parties,
22 at such time as any party receives a discount.
   - Transcripts:  The transcript of this proceeding as
23 produced will be a true, correct, and complete
record of the colloquies, questions, and answers as
24 submitted by the certified court reporter.
   - Exhibits:  No changes will be made to the exhibits
25 as submitted by the reporter, attorneys, or
witnesses.

Page 127

1 - Password-Protected Access:  Transcripts and
   exhibits relating to this proceeding will be
2 uploaded to a password-protected repository, to
   which all ordering parties will have access.
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 128

1              CERTIFICATE
2 STATE OF GEORGIA:
  COUNTY OF FULTON:
3
4       I hereby certify that the foregoing
transcript was taken down, as stated in the caption,
5 and the colloquies, questions and answers were
reduced to typewriting under my direction; that the
6 transcript is a true and correct record of the
evidence given upon said proceeding.
7       I further certify that I am not a relative
or employee or attorney of any party, nor am I
8 financially interested in the outcome of this
action.
9       I have no relationship of interest in this
matter which would disqualify me from maintaining my
10 obligation of impartiality in compliance with the
Code of Professional Ethics.
11      I have no direct contract with any party
in this action and my compensation is based solely
12 on the terms of my subcontractor agreement.
        Nothing in the arrangements made for this
13 proceeding impacts my absolute commitment to serve
all parties as an impartial officer of the court.
14
15      This the 8th day of January, 2019.
16
17
18      _Robyn Bosworth_
19      ROBYN BOSWORTH, RPR, CRR, CRC, CCR-B-2138
20
21
22
23
24
25

Page 129

1 To: Steven Nicholas, Esq.
2 Re: Signature of Deponent Mark Buchman
3 Date Errata due back at our offices: 02/18/2019
4
5 Greetings:
6 This deposition has been requested for read and sign
  by the deponent.  It is the deponent's
7 responsibility to review the transcript, noting any
  changes or corrections on the attached PDF Errata.
8 The deponent may fill out the Errata electronically
  or print and fill out manually.
9
  Once the Errata is signed by the deponent and
10 notarized, please mail it to the offices of Veritext
  (below).
11
  When the signed Errata is returned to us, we will
12 seal and forward to the taking attorney to file with
  the original transcript.  We will also send copies
13 of the Errata to all ordering parties.
14 If the signed Errata is not returned within the time
  above, the original transcript may be filed with the
15 court without the signature of the deponent.
16
17 Please send completed Errata to:
18 Veritext Production Facility
19 20 Mansell Court, Suite 300
20 Roswell, GA 30076
21 (770) 343-9696
22
23
24
25

33 (Pages 126 - 129)

Page 130

1  ERRATA for ASSIGNMENT #
2  I, the undersigned, do hereby certify that I have
   read the transcript of my testimony, and that
3
4  ___ There are no changes noted.
5  ___ The following changes are noted:
6
   Pursuant to Rule 30(7)(e) of the Federal Rules of
7  Civil Procedure and/or OCGA 9-11-30(e), any changes
   in form or substance which you desire to make to
8  your testimony shall be entered upon the deposition
   with a statement of the reasons given for making
9  them.  To assist you in making any such corrections,
   please use the form below.  If additional pages are
10 necessary, please furnish same and attach.
11 Page No._____Line No._____Change to_____
12 _____
13 Reason for change_____
14 Page No._____Line No._____Change to_____
15 _____
16 Reason for change_____
17 Page No._____Line No._____Change to_____
18 _____
19 Reason for change_____
20 Page No._____Line No._____Change to_____
21 _____
22 Reason for change_____
23 Page No._____Line No._____Change to_____
24 _____
25 Reason for change_____

Page 131

1  Page No._____Line No._____Change to_____
2  _____
3  Reason for change_____
4  Page No._____Line No._____Change to_____
5  _____
6  Reason for change_____
7  Page No._____Line No._____Change to_____
8  _____
9  Reason for change_____
10 Page No._____Line No._____Change to_____
11 _____
12 Reason for change_____
13 Page No._____Line No._____Change to_____
14 _____
15 Reason for change_____
16 Page No._____Line No._____Change to_____
17 _____
18 Reason for change_____
19
         _____
20              DEPONENT'S SIGNATURE
21 Sworn to and subscribed before me this____day of
   _____, 20__.
22
23 _____
   NOTARY PUBLIC
24
25 My Commission Expires:_____

34 (Pages 130 - 131)

Case 2:09-md-02047-EEF-MBN   Document 22277-21   Filed 06/20/19   Page 36 of 60

30(b)(6) Michael Buchman                                    January 4, 2019
The Mitchell Company, Inc. Vs. Knauf Gips KG, Et Al.

[& - 38]                                                        Page 1

**&**

**&**   1:14 3:6 5:10,17
  92:13

**0**

**0**   13:7
**02/18/2019**   129:3
**0201**   78:23
**071**   77:7
**09**   1:6 13:7,7

**1**

**1**   2:4 9:19,23 22:9
  42:7,13 46:1
**1,295**   78:25 79:1
  79:16,17
**1/2/2018**   2:22
**10**   2:18 5:21 9:14
  13:7 46:9 50:21
  50:25 51:22 53:15
  89:10 102:23
  112:3,9 126:5
**10,000**   102:23
  103:2 105:1
  108:19
**100**   3:20 29:7
**102**   3:23
**104**   4:3
**105**   4:5
**106**   4:7
**108**   4:10 51:24
  52:17
**10:09**   21:20
**10:09-10:13**   21:21
**10:13**   21:23
**11**   2:6,19 55:8,12
  55:24 59:1 61:10
  63:3
**11,100**   57:22 58:21
**111**   4:14
**112,331.55.**   84:10
  84:20

**113**   4:17 35:17,18
**114**   4:18 35:17,18
**116**   51:23 52:16
**117**   4:20 35:20
**1180**   1:15 5:11
**11:04**   55:18
**11:04-11:15**   55:19
**11:16**   55:21
**12**   2:20 63:12,16
  63:22 87:23
**1201**   5:18
**12:05**   88:4
**12:05-12:41**   88:5
**12:41**   88:7
**13**   2:23 48:3 65:14
  65:18 68:16
**13270**   28:20 29:2
  117:9
**13512**   91:21
**13609**   128:18
**14**   3:1 74:14,18,22
  86:8 112:4,9
**14129**   76:6 82:7
  84:7,19
**15**   3:2 7:10,11,15
  65:18 86:3,7,9
  112:12,13,16
  118:22
**15-14-37**   126:8,21
**158**   78:5
**16**   3:3 89:14,18,20
  93:23
**1601**   5:5
**162**   77:2
**17**   3:4 91:1,5
  101:6 102:17
**18**   3:6 92:6,10
**19**   3:8 93:13,17,21
  94:7 95:22
**1:23**   116:22

**1:23-1:27**   116:23
**1:27**   116:25
**1:33**   121:18
**1:33-1:41**   121:19
**1:41**   121:21
**1:44**   125:7,9

**2**

**2**   2:5 11:4,8 44:4
  45:23 46:1,3
  53:18 118:10
**2,500**   98:1,8,12,19
  101:7,10,15
**20**   3:11 35:21 53:8
  97:8,13 129:19
  131:21
**20,000**   106:4,6
**2005**   7:24
**2006**   7:24 8:19
**2008**   8:20 9:2,9
**2009**   8:4 9:13,14
**2009-2010**   8:25
**2010**   9:13 45:16,22
**2011**   9:16
**2017**   20:11
**2018**   20:11,12,12
  20:12,15,17 75:6
**2019**   1:13 6:2
  128:15
**2047**   1:3 56:3
**20th**   20:11
**21**   2:7 3:14 65:22
  66:11 99:8,12
**2138**   1:17 128:19
**22**   3:18 22:24
  45:14,15 100:20
  100:25
**22nd**   45:22
**23**   3:21 44:6 102:8
**230**   82:1
**24**   4:1 29:6 104:11
  104:15

**25**   4:4 35:21 44:4
  53:9 105:7,11
**26**   4:6 22:23 35:15
  35:18 45:12
  106:19,24
**27**   4:8 108:3,7
**278**   53:21 54:3
**27th**   20:11
**28**   2:9 4:11 111:3
  111:7 114:20
**29**   4:15 113:7,13
  114:20
**2nd**   20:12

**3**

**3**   2:7,8 21:1,6
  22:17,22 25:6
  27:4,7,8 28:2 29:2
  44:16 46:4 54:6
  54:14 57:5 59:13
  59:22 60:5,15
  62:7 64:2,8,12,14
  64:19 66:9,10
  84:13,14,24 87:4,8
  87:17 96:15
  118:10 122:24
  123:20,21
**3,200**   83:2,5 96:24
**30**   1:9 4:18 6:3
  29:6 46:1 48:25
  49:6 70:3 114:23
  115:2 130:6
**300**   129:19
**30076**   129:20
**30309**   5:12,19
**31**   2:10 4:19 117:1
  117:5
**31st**   75:6
**343-9696**   129:21
**36604**   5:6
**38**   2:12

30(b)(6) Michael Buchman                                        January 4, 2019
The Mitchell Company, Inc. Vs. Knauf Gips KG, Et Al.

**[4 - amount]**                                                       Page 2

**4**

**4**   1:13 2:8 28:8,12
  44:4 53:18 96:17
  118:11
**4/24/09**   3:4
**40**   2:13
**4115**   1:6
**42**   2:14
**43**   2:17
**46**   29:7 56:8
**48**   22:25 44:10,16
  63:23 64:3
**4th**   6:2

**5**

**5**   2:10 31:25 32:4
  96:23
**5/21/09**   4:6
**50**   2:18 63:21
**54**   51:25 52:17
**55**   2:19

**6**

**6**   1:9 2:11 4:24 6:3
  38:19,23 40:18
  48:25 49:6 65:22
  70:3 82:14 83:22
  84:7 112:11
**6/10/11**   4:4
**6/25/09**   3:6
**63**   2:22
**65**   2:25

**7**

**7**   2:13 10:7 40:7
  40:11,20 96:1
  97:19 99:22 100:5
  100:6,7 106:5
  130:6
**703918**   82:14
**704069**   79:11
**704079**   79:16

**706348**   34:15
**74**   3:1
**770**   129:21
**7th**   20:12,17

**8**

**8**   2:14 42:1,5,14
  66:11 95:4 101:6
  102:17 104:25,25
  108:18
**800,000**   53:20,24
  63:2
**86**   3:2
**89**   3:3
**8th**   128:15

**9**

**9**   2:4,15 43:7,11
  103:18 108:17
**9-11-28**   126:7
**9-11-30**   130:7
**91**   3:5
**92**   3:7
**93**   3:10
**97**   3:13
**99**   3:17
**9:50**   1:13 6:2
**9th**   20:11

**a**

**a.m.**   1:13 6:2
  21:21 55:19
**absolute**   128:13
**absolutely**   55:15
  55:15 68:21
  114:22
**access**   127:1,2
**account**   64:5
**accounting**   3:1,2
  19:16,19,22 20:7
  24:5,6 72:13 73:1
  74:25 75:1 78:16
  79:5,9,22 80:4

**accurate**   39:11
  54:25 64:15 77:9
  87:11 126:12
**acquired**   37:1
**action**   126:15
  128:8,11
**actual**   17:5,9
  46:17 57:14 62:17
  79:24 84:9,20
**add**   24:20 49:23
  64:23
**added**   46:15
**addition**   28:5
  106:7
**additional**   45:6
  46:1,4 56:13 64:6
  66:1,15 72:5 97:3
  98:1,7,12,15,19
  100:9,17 101:7,15
  102:21 103:2,15
  103:20 105:1
  108:19 109:4,5,7
  117:13 130:9
**address**   76:6,12
  78:4,6 79:23 82:6
  84:6 87:2,3 94:2
**addresses**   22:10
  22:22,23 39:14
  51:15 53:15 76:20
  76:22 79:24 80:11
**addressing**   4:11
  4:15
**adequately**   31:3
**adrian**   99:14
**afraid**   50:2
**ago**   7:15 16:19
  18:19,20 19:5
  20:18 46:9
**agree**   18:5,8
  103:22

**agreed**   118:8
**agreement**   2:18,19
  3:8,11,14,18,21
  4:1,8 51:4,6 52:12
  52:20 56:2,6,15,18
  56:21 58:22,25
  60:12 61:6 62:17
  63:1,3 86:19 94:9
  94:12,16,20 95:10
  95:23 97:12,21
  102:12 105:25
  106:2,4 107:24
  108:24 126:16,20
  128:12
**agreements**   16:10
  19:10 60:25 61:3
  63:7,9 69:6 95:17
**agrees**   98:5 100:7
  102:20
**ah**   77:25 95:1
**ahead**   33:9 49:25
  58:15,19 112:25
**air**   112:1,1,6
**al**   1:6 34:15
**alabama**   5:6
**alarms**   109:10
**allege**   67:21
**allegedly**   22:14
  46:12
**alleges**   67:4 81:12
**allocated**   36:16
**allocation**   44:19
  44:21,24 45:10
**allow**   105:22,25
**alston**   5:17
**alternative**   83:8
  109:12
**amended**   2:14
**amount**   36:9
  46:11 70:4,8,12,21
  70:22,24 72:7

Case 2:09-md-02047-EEF-MBN   Document 22277-21   Filed 06/20/19   Page 38 of 60

30(b)(6) Michael Buchman                                    January 4, 2019
The Mitchell Company, Inc. Vs. Knauf Gips KG, Et Al.

[amount - beazer]                                              Page 3

73:7 79:18 90:22
106:3,10,11
111:18
**amounts**  46:17
64:8,9,14,15 72:14
73:2 84:24 97:3
**analogous**  86:12
**analysis**  36:20
69:22 70:17 71:5
84:4 93:5 106:17
**annotations**  34:24
**answer**  16:18
49:17 52:22 61:19
68:1 79:22 90:7
**answers**  126:23
128:5
**appearances**  5:1
**appears**  22:23
39:3 51:11 63:21
76:18 86:14 100:5
117:16
**appliances**  118:14
**applied**  126:21
**apply**  78:12,13,17
**applying**  113:25
**approximately**
53:11
**area**  7:18
**areas**  13:19 33:22
**argue**  18:2
**argument**  34:1
**arrangements**
128:12
**article**  5:21 126:5
**ascertained**  47:14
**asked**  15:5 17:7
30:15 31:6 32:13
**asking**  48:10
58:11 60:14 67:12
67:18,19,20 85:18
95:15

**asserting**  29:20
**assessed**  48:13
**assign**  103:22
**assigned**  126:11
**assignment**  3:9,12
3:15,19,22 4:2,9
94:12 95:6,10,13
95:14,17 97:13
102:13 104:4
110:5 130:1
**assignments**  95:17
**assist**  130:9
**assistant**  12:5
**associated**  24:23
25:3 68:19,23
69:12 73:24 81:13
82:6 110:17
123:11
**associating**  54:21
**assume**  71:16
120:3
**assuming**  72:11
79:25 80:3
**assumption**  34:25
39:12 69:5
**atlanta**  1:16 5:12
5:19
**attach**  130:10
**attached**  58:22
113:19 114:9
129:7
**attard**  4:5 105:13
105:14,15 107:6,6
**attards**  106:6
107:7,20
**attention**  11:9
88:10 117:22,24
120:24
**attorney**  43:4
51:10 60:22 92:14
120:7 124:18

126:19 128:7
129:12
**attorneys**  14:11
49:14 63:4 69:2
69:11,17 70:12
74:3 85:13,21
90:5,10 98:25
115:10 126:25
**attributable**  30:4
**attribute**  29:15
**attributing**  30:15
**attribution**  30:5
**august**  20:12
**authorization**  3:8
3:11,14,18,21 4:1
4:8 16:9 19:9 94:9
94:11 95:9 97:12
102:12 107:24
108:24
**automatically**
126:21
**available**  90:7
**avenue**  76:7 82:7
84:7
**average**  26:21
**aware**  12:14 20:20
20:23 58:20 90:1
90:9 100:16 106:8
119:3,4,13,21
120:22 121:5,10
121:24

**b**

**b**  1:9,17 5:21 6:3
48:25 49:6 53:14
53:21 70:3 126:5
126:8,21 128:19
**back**  8:4 9:3,9
11:9 21:22 25:25
26:17 42:7 47:11
55:20 76:21 80:10
84:13 88:6 91:16

93:22 94:7 116:24
121:20 122:24,25
129:3
**bank**  107:11
**bankruptcy**  57:24
**banner**  2:11 25:9
25:16 26:1,8
37:13 38:2,5,13
39:3 40:18 41:5
41:10,18 59:16
60:5 62:14,18,18
63:6 64:8,15
123:17,19
**base**  78:24
**based**  22:2 26:24
30:5 36:1 54:24
68:1 86:25 103:6
109:23 128:11
**basically**  19:9
23:22 26:15 85:12
**basis**  26:12 29:15
29:20 30:15,17
126:9
**bates**  34:14 77:6
78:20 79:10 82:14
**batteau**  4:19 117:6
117:13
**batteau's**  28:19
**bear**  37:17 38:14
40:25 41:2,6,14,18
**beazer**  2:21 3:1,2
3:5 5:7 6:4,11,13
7:5,9,15 9:9 10:10
10:14,19 11:11
12:6,15 14:2,13
15:24 17:14,19,22
17:23,24 20:10,21
21:25 22:15 26:3
27:18,18 28:13,24
29:14,20 30:3,15
31:7,18,23 32:5,9

Case 2:09-md-02047-EEF-MBN   Document 22277-21   Filed 06/20/19   Page 39 of 60

30(b)(6) Michael Buchman                                    January 4, 2019
The Mitchell Company, Inc. Vs. Knauf Gips KG, Et Al.

**[beazer - calls]**                                                   Page 4

32:15 33:1,12
34:14,14 36:5,24
37:7 38:2,6,11,24
40:11 41:6,22
42:22 43:19 45:23
45:25 46:19 47:4
48:18 50:11,12,14
51:5,7,16,25 52:9
52:13,19 53:20,24
54:20 56:5,10,14
56:17,20 58:1,5,7
59:4,19,23 60:7,20
61:2,13 62:18
63:2,8 64:24 65:3
65:10 66:1,6,16
67:4,21 68:6,12,18
68:22 69:2,11,20
69:24 70:4,8 71:3
71:10 72:14 75:10
78:1 81:12 83:3
83:16,17 88:11
89:7,17 90:1,14,19
91:5 92:18,20
94:16,21,23 95:8
95:10,18,23 96:18
96:23 97:16 98:4
100:6,7 101:22
102:20 103:4,22
103:23,25 104:4
106:23 107:11
108:25 110:4,9,16
110:18,20 111:15
112:15,20 114:19
118:1,20,20 119:2
119:15,24 120:9
121:5 122:8,11
124:9
**beazer's**   14:10
17:15 22:3 25:21
44:5,6 48:7,16,24
49:1,12,18 58:2,4

59:7 66:22 72:22
74:25 88:9 89:5
99:6 123:11,21
**beginning**   6:3
**behalf**   5:2,7,13
10:9 11:1 12:22
50:10 110:10
118:20
**believe**   8:20 11:14
12:23 25:19 37:17
45:8 50:7 59:9
62:13 64:3,4
65:20 68:16 71:23
73:21 74:11 86:8
87:10 88:12,18
89:8,10 90:13
92:15 93:3 105:20
105:21 106:15
112:2,15
**benefit**   106:16
**best**   60:13
**better**   113:2
**beyond**   58:9
117:14
**big**   74:18
**bigger**   86:8 122:10
**billing**   72:17,17
**bird**   5:17
**bit**   39:7,10 57:7
77:11
**black**   37:17,17
38:14 40:25 41:2
41:5,14,18
**blind**   82:18
**block**   66:17
**board**   5:22 126:6
**boards**   26:20 39:6
39:9,23,24
**bold**   114:4
**bone**   61:23

**bosworth**   1:17
128:19
**bottom**   51:23 52:4
52:5,6 66:14
77:24 94:1 97:18
103:18
**bounds**   5:4
**box**   115:18
**brand**   115:21
**break**   21:16,25
33:2,3 88:2
121:15
**breaking**   37:2
**bring**   115:16
**broader**   87:18
123:10
**broke**   88:19
**broken**   39:4
**brought**   9:3
**brown**   3:7
**bryan**   5:20
**buchman**   1:12 6:5
6:21 7:3 9:22 11:7
21:9 51:1 84:23
88:9 111:8 121:23
129:2
**budget**   78:25
**build**   22:11 88:25
**builder**   2:23 65:25
88:23 121:24
**builders**   56:3
120:8 121:5,10
**building**   40:24
115:11 116:7
**buildpro**   23:15
**buried**   84:17
**business**   84:10
**buster**   5:8 6:10,10
10:16,22 13:12,18
13:23 14:4,7,15,22
17:3,13,17,20

18:11 21:18 27:10
29:17,23 30:11,14
30:20,25 31:12,15
31:19 32:8,12,17
32:22 33:1,4,7,10
33:17 34:2,8,10,19
37:9 38:16 40:2
41:23 42:24 43:2
44:23 45:4 46:20
46:23 47:13 48:1
48:8,19 49:2 50:2
50:6,10 51:9,18
52:2,6 54:7,23
56:24 57:2,8,12,22
58:7,9,13,15,18
59:8 61:5,15
64:17 66:24 67:8
67:25 71:13 74:10
81:22 85:14 87:14
92:14 93:10 96:8
99:2,4,6 100:2,13
101:25 103:8
104:5 109:20
110:11,24 114:7
120:2,12,19
123:14,24 124:13
124:24 125:4
**buyer**   91:16

**c**

**c**   20:4 53:21 88:14
88:17 126:7
**calculated**   47:15
47:20 48:18 49:6
72:9
**call**   105:20
**called**   23:14 71:4
121:24 123:1
**calling**   90:13
112:17
**calls**   88:15,20
124:13

[caps - commission]

Page 5

caps  114:4
caption  128:4
care  7:7 8:4 13:3
carpet  112:25
carrier  65:9
carriers  64:25
carter  12:3,4
carving  104:2
case  12:11 17:12
  18:7 20:10 37:12
  37:16 42:15,20,23
  43:12 47:14,18
  49:9 51:11 66:7
  73:21 76:18 85:2
  86:14 87:6 110:16
  117:16 124:10
  126:9,9,21
cases  90:18 118:2
cassimere  20:3,5
  75:4
catching  73:12
categories  47:21
category  16:8
cause  119:11
cb  34:15
cb704071  78:20
ccr  1:17 128:19
cdw  80:16,17,22
  81:15
ceiling  29:7
center  75:16 78:14
  105:21
ceo  107:11,11
certain  26:20
  29:21 30:4 43:22
  51:11 52:13 61:11
  71:21 73:3 92:21
certificate  32:22
  128:1
certification  2:17
  2:24 43:14 49:7

66:2,16
certified  126:10
  126:24
certify  128:4,7
  130:2
cetera  115:17
chad  20:2,5 24:5,7
  24:22 25:2 72:25
  75:4,7 76:3
chad's  24:18 87:13
chain  38:9,12
challenging
  101:17,21
chance  64:11
change  36:17
  111:17 130:11,13
  130:14,16,17,19
  130:20,22,23,25
  131:1,3,4,6,7,9,10
  131:12,13,15,16
  131:18
changed  112:4,22
changes  76:12
  126:24 129:7
  130:4,5,7
changing  87:25
charge  9:7
check  106:3
chinese  1:3 2:20
  3:3 12:12,15 14:3
  14:13 15:25 24:1
  24:20,22,24 25:22
  28:6,24 29:11
  34:18 35:6,9,13
  36:2,6,9,12 43:22
  44:7 46:5 51:8
  52:9 53:5,10 63:8
  65:1,10 71:5 76:2
  78:12,17 79:12
  80:17,20,23 81:10
  81:13 82:6 88:10

90:2,10 91:11,25
  93:23 94:17 97:16
  99:17 101:4
  107:22 110:17
  111:12 115:6,24
  119:3,25 120:9
  121:6,25 122:18
  123:12 124:5
choose  83:19
christina  5:15
christy  6:14 17:3
  70:19 77:9
circle  28:20 29:3
  39:14,20 91:23
circumstances
  103:6
civil  130:7
claim  14:10 32:16
  33:19 47:24 48:7
  49:1 50:18 64:24
  99:17 104:19
  105:18 107:22
claiming  46:19
claims  3:10,13,16
  3:20,23 4:3,10
  15:4 30:18 51:7
  51:16 52:13 56:3
  65:3,5 69:3,12
  94:13,18,22 95:6
  95:11 97:13,15
  100:11 101:4
  102:13 103:23,25
  104:3 110:9 120:1
  120:10
clare  5:9 6:12,12
  106:18 125:1
clarification  70:20
  118:12
clarify  80:4 95:15
clark  4:7

class  2:5,16,24 6:9
  17:17 22:1 27:2
  43:14 49:7 50:10
  50:11,17 66:1,2,7
  66:16,17,23
clause  51:22 52:3
clean  93:20
cleaning  111:24
clear  33:11 62:10
clearly  79:22
client  30:18
client's  87:14
close  23:18
closed  23:20
closely  98:14
code  24:19,24 25:3
  76:3 80:15 115:11
  126:14 128:10
collecting  11:24
collection  11:21
  20:13
colloquies  126:23
  128:5
colored  107:19
column  22:21 23:2
  23:10 24:16 25:6
  25:9 26:7,11,13
  28:1 39:5 54:6
  59:15 60:15 64:8
  78:25 80:14,15
  84:9,25 87:4
  123:1
columns  26:8
  123:16
come  19:18 47:11
  88:9 105:24
coming  89:24
  112:20
commission
  131:25

Case 2:09-md-02047-EEF-MBN   Document 22277-21   Filed 06/20/19   Page 41 of 60

30(b)(6) Michael Buchman
The Mitchell Company, Inc. Vs. Knauf Gips KG, Et Al.

January 4, 2019

[commitment - costs]

Page 6

**commitment**
128:13
**common** 113:22
**communicated**
118:5
**communication**
120:9
**communications**
41:18
**communities** 35:6
37:7 43:23 52:1
52:18 53:9 83:17
86:20,23 89:1
**community** 2:10
24:19 35:4 38:13
39:17 44:5,7 45:8
75:21,24,25 76:17
86:13
**company** 6:9 9:5
11:1,17 12:1,22
14:21 16:16 31:2
42:15,20 43:12
65:25 67:5 98:23
121:8 122:6
**company's** 22:6
27:7
**compare** 42:12
64:11
**compensate** 124:4
124:6
**compensated**
103:15
**compensation**
101:19 126:15
128:11
**competitor** 89:3
119:4 122:8
**complaint** 2:14
47:20 50:7,8,17
**complaints** 92:21
101:10 106:14

**complete** 126:11
126:23
**completed** 129:17
**compliance** 126:4
126:14 128:10
**comply** 18:9
**comprehensive**
73:23
**computer** 80:1
**concluded** 125:9
**concludes** 125:6
**conclusion** 124:14
**condition** 47:2
**confirm** 74:12
**confirmed** 80:8
**confusing** 67:15
**connection** 42:19
53:20
**consideration**
53:19 101:22
**considering** 15:3
**consistent** 39:25
44:12 116:15
**constantly** 118:5
**construct** 68:12
**construction** 7:22
8:2 27:12 67:6,23
**consultant** 28:23
71:4
**contact** 72:10 94:1
**contacted** 126:19
**contain** 22:14 46:5
**contained** 44:7
**containing** 45:24
46:2,12 54:4
**content** 22:7 44:3
**contingency** 79:7
79:8,19
**continues** 78:7
**continuing** 41:23
67:25

**contract** 126:15
128:11
**contractor** 38:6,7
**contracts** 126:8
**contributed** 56:17
**contributions**
112:20
**conveyed** 17:6
**copied** 107:9
**copies** 19:13
129:12
**copy** 93:18 115:16
**corner** 65:22 76:5
76:21 77:2 78:4,6
78:22
**corp** 2:21 5:7
56:10
**corporate** 6:5
31:21
**corporation** 6:4
66:2
**correct** 9:10,13
22:25 23:17 24:2
25:1,23 27:8,15,23
29:1 30:8 34:19
35:8 36:3,4,11,17
38:10 39:14,17
43:20 44:17,19,25
45:2,10,19 46:22
47:25 52:25 53:6
53:7,10,16,17,22
54:15,16,19 59:20
65:11,12 67:7
68:9,13,14 71:6
72:23 73:20 74:1
74:2,4,7,8 81:14
83:5,6,10 85:10,11
86:16,17 87:19,20
88:23,24,24 89:6
92:22,23 93:7
95:24,25 96:14,22

104:24 107:25
108:1,12 109:2,3,4
109:9,14,25
110:22 111:14
112:18 116:1,5
122:1,2,9 123:13
123:17,18,22
124:5 126:23
128:6
**corrected** 31:22
112:13
**corrections** 129:7
130:9
**cost** 16:12 23:21
23:22,23,24 24:10
24:12 25:3,21,25
26:6,7 46:14,16,18
47:1,1,9 48:12
69:21 71:9,17,22
72:9,11 73:8,23
74:19 75:18 76:3
76:15 80:22 81:11
81:12 82:1,5
84:20,25,25 85:3,6
86:1,10,12 87:2,4
87:9,9,10 93:6
96:18 106:16,17
109:1 123:3,6
**costs** 14:12 24:15
24:23 25:7 27:3,9
27:11 47:1 69:3
69:12,24 70:12
71:16 72:1,3,6
73:9,13,24,25 74:5
74:11 79:10,12
82:16,20 85:15,21
85:22 87:3,17,18
93:4 109:17
110:17 113:3
123:2,11,21 124:1
124:5

Case 2:09-md-02047-EEF-MBN   Document 22277-21   Filed 06/20/19   Page 42 of 60
30(b)(6) Michael Buchman
The Mitchell Company, Inc. Vs. Knauf Gips KG, Et Al.
January 4, 2019

[counsel - different]                                                    Page 7

**counsel** 5:1,24 6:6
6:18 11:25 12:5
15:14,15 17:16,17
17:18 19:14 20:19
21:25 22:1,2
26:24 27:3 33:17
50:4 58:1 92:17
92:20 99:6 102:2
102:7 106:16
126:2
**counsel's** 49:21
**count** 22:22
**counting** 55:2
**country** 122:13
**county** 115:11
116:3,8 128:2
**couple** 124:24
**court** 1:1 5:22,24
6:19 14:23 126:6
126:10,24 128:13
129:15,19
**cover** 10:20 83:8
106:2
**covered** 65:6
109:1
**crc** 1:17 128:19
**create** 21:9
**created** 21:14
33:12
**creation** 21:11
22:5
**critics** 107:18
**crr** 1:17 128:19
**cunningham** 5:4
**current** 10:23
121:4
**currently** 51:17
**custom** 78:14
**customer** 7:7 8:4
13:3 19:8 82:17

**customers** 69:25
**cv** 1:6
**cycle** 72:17
**cynthia** 12:3,4

### d

**d** 96:2
**d.r.** 121:11,25
122:7
**d1** 98:4 100:7
**d12r12** 39:5,6
**damage** 3:10,13
3:16,20,23 4:3,10
**damaged** 68:24
**damages** 4:12,16
14:11 22:16 46:19
47:15,16,19,21,24
48:7,17 49:1,6,8
49:14,15,20 50:5
94:13 103:20
124:9
**daniel** 102:14
**danielle** 102:15
**data** 16:16 26:12
**date** 23:12,13,18
23:19 46:2 64:19
73:3,10,14,19 74:6
75:5 85:22 99:20
113:14,15 129:3
**dates** 22:11,11
**dauphin** 5:5
**david** 101:1
**davis** 4:20
**day** 128:15 131:21
**days** 112:3,4,16
**deal** 121:6
**dealing** 99:17
101:3
**dealt** 104:23
**december** 20:12
20:17

**decided** 82:25
**declaration** 2:15
43:13,25 45:21
**defective** 4:12,16
44:7 45:24 46:2,5
68:20,24 70:5
**defendant's** 9:19
11:4 21:6 28:8
31:25 38:19 40:7
42:1 43:7 50:21
55:8 63:12 65:14
74:14 86:3 89:14
91:1 92:6 93:13
97:8 99:8 100:20
102:8 104:11
105:7 106:19
108:3 111:3 113:7
114:23 117:1
**defendants** 2:3
**defense** 69:3 70:13
**define** 95:13
**defined** 22:13,19
66:17 86:22
**definitely** 77:14
106:15
**deliveries** 2:12
**demanded** 118:25
**demanding** 117:21
**demands** 118:19
**demo** 26:16
**demoed** 111:23
**denied** 65:8
**department** 12:7
15:24 19:20 24:5
72:13 73:1 116:7
**departure** 8:19
**depo** 9:18 30:12
**deponent** 129:2,6
129:8,9,15
**deponent's** 129:6
131:20

**deposing** 50:12
**deposition** 1:9 2:4
6:4 9:24 10:6,10
14:17 16:17 20:25
22:9,19 42:8,13
47:23 59:15 64:13
70:3 125:7,9
129:6 130:8
**derive** 24:4
**derived** 26:14
**described** 87:16
97:4 98:5 100:8
**description** 2:2
**design** 78:14
**designated** 14:1
**designating** 10:20
**desire** 130:7
**detached** 4:13
113:25 114:10
**detail** 16:12 24:23
46:14,16,18 71:18
72:2,6 73:8,14,18
73:20,22 74:6,20
80:23 81:12 85:1
85:3,25 86:10,12
87:2,9,10 93:6
123:3,6
**detailed** 23:23
87:8
**details** 76:15
96:13
**determination**
30:23
**determine** 36:5
54:3
**determined** 48:14
126:15
**determining** 11:17
**dictate** 37:23
**different** 10:14
19:18 27:4,6

Case 2:09-md-02047-EEF-MBN   Document 22277-21   Filed 06/20/19   Page 43 of 60

30(b)(6) Michael Buchman                                        January 4, 2019
The Mitchell Company, Inc. Vs. Knauf Gips KG, Et Al.

**[different - eikhoff]**                                                    Page 8

36:16 76:3 88:14
97:11 113:20
114:16 117:20,23
118:6,6 119:17
**differentiated**
113:24
**dig** 93:12
**direct** 11:8 38:4
50:18 113:23
126:15 128:11
**directed** 11:11
**direction** 128:5
**directly** 14:5,14
120:25
**disclosure** 5:23
126:6
**disclosures** 126:1
126:3,4,18
**discount** 126:22
**discounts** 78:24
126:21
**discovery** 2:5 18:6
28:14 32:5,10
33:13
**discrepancy** 55:2
87:7,12
**discussed** 87:18
**discussion** 63:17
116:19
**displaced** 69:25
**disqualification**
126:7
**disqualify** 126:13
128:9
**district** 1:1,1
**division** 7:8 9:4
75:14
**docket** 1:3
**document** 1:5 9:22
10:1 11:7,10,10,12
16:5 17:11 18:3,9

18:15 20:16 21:9
21:12 22:1,4,7
28:11 31:14 32:3
32:4,7,18 33:18
34:4,12,13,21,24
38:22,23,25 40:10
40:12,13,14,17,18
42:4,5 43:10,15
45:6,22 50:24,25
55:11,23,25 56:12
57:14 59:13 62:17
63:15,19 64:1,7,22
65:17,19 74:17
79:11 80:10,12
89:17,23 91:4,6
92:9,11 93:16
94:8 96:5,12,12
97:5,14,19 99:12
99:23 100:18,24
103:18 104:14
105:10 106:22,25
107:5 108:6 111:6
111:7 113:11,13
113:14,15 115:1,3
117:4
**documentation**
54:10,25 83:23
**documents** 11:18
11:21,24 15:14
16:4,7,15,21,23
17:6,10 18:17
19:2,12 20:9,10,14
20:19,21,24 22:3
31:7,9,17,22 32:11
32:15,20 33:22
34:5,6,17 41:6
110:4
**doing** 88:21
117:17 118:14
**domestic** 29:11,13

**door** 23:23 25:25
27:11 36:3 47:1
47:10 48:12 82:1
82:4,5,9 85:10
109:8
**draft** 45:21 111:15
**drywall** 1:3 2:8
3:3 12:12,15 14:3
14:13 15:25 22:14
23:11,13,16 24:1
24:20,22,24 25:22
26:12,17,19,22
27:19,23,25 28:4
28:24,25 29:5,11
29:11 30:16,22
34:18 35:6,9,14
36:2,6,9,13,15,23
37:8,10,12,24
38:13 39:3,9 41:7
41:10,15,20 43:22
44:8 45:25 46:2,5
46:13 51:8 52:9
52:19 53:5,10
54:5,21 63:8 65:1
65:11 67:4,22
68:20,24,25 69:25
70:5,9 71:5 75:18
76:2 78:12,17
79:12 80:18,23
81:10,13 82:6
86:10 88:10 90:2
90:10 91:11,25
93:24 94:18 97:16
99:17 101:4
107:22 110:17
111:12 115:7,24
118:11 119:3,25
120:10 121:6,25
122:18 123:12
124:5

**due** 91:16 129:3
**duly** 6:22
**duties** 108:15

**e**

**e** 20:4,4 95:6 130:6
130:7
**earlier** 41:3 43:18
44:12 46:25 48:11
53:8 59:18 61:25
93:4 119:2 123:2
**easier** 95:4
**easily** 80:7
**eastern** 1:1
**eikhoff** 4:24 5:15
6:14,14,25 9:18,21
10:18,24 11:6
13:16,22,24 14:5,9
14:20 15:2,6,7
17:9,15,18,21,25
18:5,10,16 21:2,4
21:8,16,24 27:14
28:10 29:19,25
30:7,13,17,21 31:5
31:10,13,17,22
32:2,11,14,20,25
33:2,6,8,15,25
34:4,9,13,20 37:14
38:17,21 40:4,9
42:3,25 43:5,9
44:24 45:1,11
46:21 47:3,22
48:2,10,15,20,22
48:23 49:21 50:1
50:4,8,13,23 51:13
51:20 52:5,7
54:12 55:5,10,17
55:22 57:1,11,14
57:16,20,25 58:8
58:11,14,16,23
59:12 61:9,17,21
62:23,25 63:14,18

**[eikhoff - factually]**

64:20 65:16 66:11
66:13 67:3,10
68:4 69:16 70:22
70:24 71:1,20
74:16 77:8,10,14
77:17 81:1,5,6,23
85:17 86:5 87:15
87:24 88:1,8
89:16,20,22 91:3
92:8 93:15 95:21
96:11 97:10 99:3
99:5,7,10 100:4,15
100:22 102:4,10
103:13 104:8,13
105:9 106:21
108:5 109:22
110:3,14 111:1,5
112:14 113:9
114:11,25 116:20
117:3 119:18,19
120:5,14 121:1,15
121:22 123:15
124:2,15,19,21
125:5
**either** 41:5 61:13
**electric** 83:1
**electronically**
129:8
**employed** 7:4
**employee** 12:18
128:7
**employees** 12:17
12:18
**engaged** 92:20
**entered** 61:2,4,6
63:8 79:16 80:2
94:17 95:18 130:8
**entities** 61:11,12
**entitled** 47:16
**entity** 38:12

**entries** 80:20,22
81:24
**enumerated** 10:6
31:8,23 52:20
100:18
**environ** 2:8 16:13
19:11,17 26:24
27:18,22 28:1,22
28:23 29:24 35:7
36:8,21 54:4,22
71:4,9,19,21 72:6
72:10,15,22 73:2
73:14 83:24 84:3
92:25 111:11,13
111:15 112:3
116:15 120:23
**environ's** 26:15
30:5 54:14 72:3
**eric** 104:16
**errata** 129:3,7,8,9
129:11,13,14,17
130:1
**escrow** 23:18
**especially** 99:20
**esq** 3:7 5:3,8,9,15
5:16 129:1
**estimates** 45:25
**et** 1:6 34:15
115:17
**ethics** 126:14
128:10
**evidence** 128:6
**exactly** 25:5
109:11 119:8
**examination** 4:23
6:24
**examined** 6:22
**example** 79:15
83:17
**examples** 108:25

**exception** 109:16
**exchange** 94:22
95:8 98:8 100:10
112:1
**exclusion** 81:3,5,9
**excuse** 55:13
**executed** 95:23
**exercise** 87:1
**exhibit** 2:2,4,5,7,8
2:10,11,13,14,15
2:18,19,20,23 3:1
3:2,3,4,6,8,11,14
3:18,21 4:1,4,6,8
4:11,15,18,19 9:19
9:23 11:4,8 21:1,6
22:17,22 25:6
27:4,7,8 28:2,8,12
29:2 31:25 32:4
38:19,23 40:7,11
40:20 42:1,5,7,13
42:14 43:7,11
44:16 50:21,25
51:22 53:14,15
54:6,14 55:8,12,24
57:5 59:1,13,22
60:5,15 61:10
62:7 63:3,12,16,22
64:2,8,12,14 65:14
65:18 74:14,18,22
84:13,14,24 86:3,7
86:8,9 87:1,4,8,17
89:14,18 91:1,5
92:6,10 93:13,17
93:21,23 94:7
95:22 97:8,13
99:8 100:20,25
102:8 104:11,15
105:7,11 106:19
106:24 108:3,7
111:3,7 113:7
114:23 115:2

117:1,5 122:24
123:20,21
**exhibits** 2:1 53:14
53:21 84:17
114:20 126:24,24
127:1
**exists** 62:20
**exp** 83:23
**expect** 86:25
**expend** 109:24
**expended** 110:18
**expenditures**
49:12,18
**expenses** 25:22
68:19,22 69:21
70:16 71:21 83:8
96:25 109:13,25
110:17 124:5
**experienced**
121:25 122:4
**expert** 69:22
**expires** 131:25
**explain** 25:13
30:15 34:23 45:2
76:24 79:15
111:22
**explained** 41:19
**explanation** 97:24
**extent** 14:10 27:6
30:3 53:12 73:13
73:17,19 87:16
**extremely** 101:17

**f**

**facility** 129:18
**fact** 17:4 46:12
49:11 55:16 56:7
70:23
**facts** 103:6
**factual** 49:11
**factually** 49:12,17
49:18

30(b)(6) Michael Buchman                                      January 4, 2019
The Mitchell Company, Inc. Vs. Knauf Gips KG, Et Al.

**[failures - going]**                                                    Page 10

failures  88:14,17
fair  103:4 117:21
fairly  90:25
fallon  1:6
false  33:12
familiar  10:5
  49:10,12
family  4:13,17
  44:4 114:1
far  45:23 80:14
  112:23
fault  87:13
february  20:11
federal  130:6
fees  14:11 48:13
  49:14 69:3,11,18
  70:12 74:3 85:13
  85:21
field  75:15
figure  78:8 79:16
figured  88:18
  119:8
figures  24:4 79:4
file  129:12
filed  9:24 19:10
  43:12 45:22 50:9
  129:14
files  19:13
filing  90:18
fill  129:8,8
final  26:11 28:1
  39:5
finally  105:22
financial  126:7
financially  128:8
find  52:19,24 95:5
finish  48:22
fire  109:10
firm  126:1,18
first  6:22 22:21,24
  25:11 37:6 42:12

42:13 45:5 51:21
  76:6 79:6 80:10
  80:12 81:24
  105:20 114:5
five  55:13 83:14
fixtures  118:15
flip  76:11 79:2
floor  113:1,21
  115:16
floors  112:24
florida  12:24 68:7
  68:8,13 122:5,11
flyer  3:3 90:4
  93:23
follow  114:19
followed  90:22
following  126:1,4
  130:5
follows  6:23
footage  40:1,3
forces  119:25
foregoing  128:4
form  2:9 10:16,22
  13:12 27:10 29:17
  29:23 30:6 32:8
  37:9 38:16 40:2
  41:23 43:2 44:23
  45:4 46:23,24
  48:19 49:3 51:9
  51:18 54:7,23
  59:8 61:15 64:17
  67:8 71:13 81:4
  85:14 95:19 96:7
  99:23 100:1,12,13
  101:25 102:13
  103:8 104:5
  109:20 110:1,11
  110:12,23,24
  119:16 120:2,11
  120:12,19,20
  123:14,23,24

124:12,13 130:7,9
formal  18:3
former  12:17,18
forms  126:6
fort  7:7,17,25 13:2
  13:3 25:17 37:12
  44:5 75:13 89:1
  104:23 116:8,10
forward  76:11
  113:3 129:12
found  19:12 35:9
  45:6 46:4 52:9
  53:10 91:25
four  18:20 19:5
fourth  81:25
frame  8:25 13:6,8
  15:25
framed  14:7,8
front  61:7
ft  2:11
full  98:8 100:10
  109:1
fulton  128:2
funds  62:7
furnish  130:10
further  20:20
  125:3 128:7

**g**

ga  129:20
gap  8:22
garage  81:25 82:4
  82:5,9 85:10
  109:8
gas  111:19,20
gassing  112:17
gather  75:8
gbi  2:20
gears  87:25
gem  28:20 29:2
  39:14,20 91:21
  117:10

general  16:8 37:6
  97:12,19,22
  102:12,18 106:5
generally  82:22,23
  101:9 112:2
generated  80:1
georgia  1:16 5:12
  5:19,22 126:4,10
  128:2
gill  3:13
gill's  97:15
gills  97:21 98:18
gips  1:6 34:15
  42:15
give  14:19,23
  84:15 95:1 112:5
  114:2 118:9
given  51:12 83:19
  128:6 130:8
giving  76:22
glenn  4:20
global  25:18 26:1
  26:8 57:3,4,5,7,9
  58:5 59:1,23 60:8
  60:15,20 61:6
  62:1,6 63:5 64:9
  64:16 123:17,19
go  16:16 21:17
  24:10,22 33:8
  49:25 55:17 58:15
  58:19 83:15 93:22
  112:24 116:20
god  20:2
goes  76:20 98:10
  102:2
going  10:14 20:3
  21:1 32:8 43:10
  45:4 47:15,16
  49:2,3,8,24 55:11
  66:21,24 67:17,17
  73:23 86:6 88:16

Case 2:09-md-02047-EEF-MBN   Document 22277-21   Filed 06/20/19   Page 46 of 60
30(b)(6) Michael Buchman
The Mitchell Company, Inc. Vs. Knauf Gips KG, Et Al.
January 4, 2019

[going - includes]                                                          Page 11

88:19 89:17 91:4
92:9 93:12,16,22
97:11 99:11
100:23 102:11
105:10 112:24
113:3 115:1 125:2
**good** 7:1 39:11
72:7 95:1
**grade** 102:2
103:12 104:6
**grant** 8:8
**granted** 118:21
**greetings** 129:5
**guess** 82:18 95:20
**guy** 57:23
**guys** 32:21 34:5
**gypsum** 1:10 2:25
4:12,16 5:13 29:6
29:7,10 40:25
41:6,14 67:5,22

**h**

**half** 8:11 83:14
**hammer** 105:24
**hampton** 44:6
45:7,15 51:24
52:17 53:3,13
57:23 75:16,19,23
75:25 76:16 78:23
86:16
**hand** 50:24 55:11
65:22 76:5,21
77:2 78:3,6,22
80:14,15 86:7
100:24 104:14
105:10
**handed** 55:23
**handful** 89:12
**handing** 9:22 11:7
28:11 32:3 38:22
40:10 42:4 63:15
65:17 74:17 117:4

**handling** 90:5
**hands** 102:3
**happy** 13:14 33:21
**hard** 19:12 42:9
47:9 48:11
**heading** 82:17
**heard** 118:22
**held** 7:12
**help** 17:3 77:5
**hernandez** 13:11
**higher** 39:23
**highlighting** 95:2
**hired** 28:24 37:11
71:3
**hit** 55:13 119:6
**hoa** 89:25
**hold** 49:3 82:18
**holding** 90:2
**home** 23:8,20,24
24:21 25:16 26:16
26:18 45:7,8 47:2
57:23 58:20 64:4
64:6 78:12,17
88:23 91:15,17
94:21 96:13 98:6
99:20,20 111:23
111:25 112:2
115:21 120:8
121:5,9,24
**homebuilders**
66:3,22
**homeowner** 19:13
23:20 25:25 82:24
91:20 92:21 96:24
98:8 99:13 100:17
101:18,20,24
102:22 103:7,19
104:19 117:9
118:9
**homeowner's**
95:11 96:19

**homeowners** 63:9
69:4,12,15 83:3,11
89:7 90:1,9,20
91:11 94:10 95:18
103:1,5 105:1
107:7 108:23
109:16 110:22
117:20
**homes** 2:21 3:5 5:7
6:4 7:5 10:14
11:11 24:18 39:19
40:1 44:5 45:24
46:1,4,12 49:13,19
51:5,23,24,25
52:16,17,17,20
53:2,2,9,21 56:10
66:2 68:12 75:12
76:1 86:20 88:11
89:1 107:12 114:1
122:17
**honest** 62:9
**horton** 121:11,25
122:8
**hours** 124:24
**house** 19:19 28:19
36:2,3 37:12
54:11 78:24 79:20
111:19 119:9
**houses** 39:13
**housing** 83:16
**huh** 12:8 20:6 27:5
30:2 40:6 52:15
59:17 60:6 61:1
64:21 85:24 90:15
105:16 111:21
112:7 116:7
117:12
**hull** 5:15
**hundred** 54:25
**hundreds** 90:6

**hvac** 118:15
**hybrid** 13:1

**i**

**ian** 107:11
**idea** 119:11
122:16
**identification** 2:9
9:20 11:5 21:7
27:19 28:9 32:1
38:20 40:8 42:2
43:8 50:22 55:9
63:13 65:15 74:15
86:4 89:15 91:2
92:7 93:14 97:9
99:9 100:21 102:9
104:12 105:8
106:20 108:4
111:4 113:8
114:24 117:2
**identified** 27:22
28:1 29:4 30:23
35:6 46:2 54:4
59:22 64:2 91:18
97:22
**identify** 6:6
**immediately** 90:21
**impacts** 128:13
**impartial** 128:13
**impartiality**
126:14 128:10
**impression** 33:12
**improvement** 67:7
67:24
**include** 53:15 85:4
112:25
**included** 57:24
71:24 73:15,18
75:11 85:25 93:5
**includes** 76:15
85:6,9 92:24

30(b)(6) Michael Buchman                                                January 4, 2019
The Mitchell Company, Inc. Vs. Knauf Gips KG, Et Al.

[including - know]                                                              Page 12

**including** 22:10
70:16 90:6
**inclusive** 53:17
71:18
**incorrect** 44:22
**incur** 68:18,22
69:2,11,20,24
**incurred** 71:16
73:14,19 74:5
85:22
**independent** 29:15
**independently**
96:4
**index** 2:1 4:23
**indicate** 56:16
**indicates** 106:3
**individual** 63:9
103:5,6 110:21
117:20 118:2
**individuals** 110:10
**informal** 18:12
**information** 14:19
14:23 18:12 22:4
24:10 26:14 41:7
41:13 46:15 54:10
56:14 75:8
**informed** 18:11
**initial** 26:15 36:7
**initiated** 119:14
119:22
**injuries** 103:20
**injury** 103:24
104:3
**inquiry** 31:21
**inside** 114:16
**inspected** 51:25
**inspection** 2:9
26:25 27:1 36:7,8
36:20 70:16 73:25
84:3

**inspections** 71:4
**install** 37:24
**installation** 23:16
37:23
**installed** 88:10
**installer** 37:1
59:10
**installers** 56:4
**instance** 119:9
**instances** 36:1
79:3
**insurance** 64:25
65:9,10
**insurers** 56:4
**intend** 49:19 83:7
**intended** 124:4
**interest** 126:7,12
128:9
**interested** 33:23
128:8
**interior** 111:23,24
**interpose** 49:3
**intricacies** 43:4
**investigation**
45:17 69:21 93:5
**investigations**
88:21
**invoice** 40:21 41:1
**invoices** 2:13
**involve** 103:11
**involved** 11:16,20
19:21 20:13 21:11
22:5 99:17,19
101:3 108:14
110:20 111:18
119:15,24
**involving** 12:12
14:13 56:3
**issue** 15:25 38:13
90:11 119:3,8,10
120:23

**issued** 113:17
**issuer** 40:25
**issues** 12:16 28:25
43:22 106:9
107:20 121:6
**it'll** 17:3
**item** 24:13
**itemization** 27:9
**itemize** 24:15 25:3
61:10 87:3
**itemized** 60:4 62:7
71:21,23 77:19
82:16
**items** 83:24

**j**

**j** 5:8
**jane** 3:16 99:14
101:16
**january** 1:13 6:2
128:15
**jerry** 12:19 13:1,1
**jim** 8:14
**job** 13:1 16:12
23:23 24:17,17
46:14,16,18 71:17
71:22 72:1,6 73:8
73:14,18,20,22
74:6,19 75:18
76:15 78:11 80:22
81:11 84:25 85:3
85:25 86:10,12
87:2,8,9,10 93:6
123:3,5,6
**john** 108:8
**join** 49:24 96:8
100:2 103:9
124:16
**joining** 119:25
**judge** 1:6,6
**judgments** 14:12

**july** 20:11 45:22
75:6

**k**

**kapalin** 3:23
102:15
**karen** 104:15
**keep** 42:9
**keith** 4:6 107:2,5
**kevin** 4:7 5:8 6:10
92:14 106:18
**kidding** 124:25
**kill** 20:3
**kim** 94:1 119:9
**kimberly** 3:4 91:8
**kinds** 49:15
**king** 1:14 3:6 5:10
92:13
**knauf** 1:6 25:20
29:6 34:15 42:15
50:14,16,18 51:4,7
51:17 52:14,19
53:19,24 54:4,17
54:21 62:2 63:2
64:4 78:1 86:18
**knew** 88:16
113:16 119:10
**know** 10:17 12:21
13:9,25 14:1
15:10,11 19:24
21:14 23:12 24:6
24:9 25:10 26:12
28:15 29:10 33:25
35:13 39:6 41:8
41:25 42:9 44:1
47:13 48:13 49:13
50:17,19 54:2
56:5,14,17,20
57:11,12 58:4,22
59:21 62:6,20
63:25 64:24 65:8
71:8,12 73:9 75:2

Case 2:09-md-02047-EEF-MBN Document 22277-21 Filed 06/20/19 Page 48 of 60

30(b)(6) Michael Buchman
The Mitchell Company, Inc. Vs. Knauf Gips KG, Et Al.
January 4, 2019

[know - mae]

Page 13

75:10,22 77:18
78:15 79:4,23
80:1,5 81:15,19
82:20 84:16 85:20
88:13,16 89:9
91:8 92:15 93:20
95:14 96:4 97:21
98:12,18,22,23
99:25 101:8 103:1
104:10,15 105:4
106:6,9 107:2,21
108:21 109:15
110:6,6 112:9,19
112:22 113:16
117:6 118:4,8
122:3,5
**knowledge** 10:19
13:15,23 14:18
16:1 22:6 30:9
43:1 47:6 51:19
60:13 63:10 68:11
73:5,7 83:18 93:8
97:6 104:1 109:24
110:13,25 111:17
114:22 120:4,13
120:16 124:17
**knows** 58:11
**kpt** 54:5

**l**

**l** 1:5 5:3
**lab** 93:4
**labor** 37:22
**laboratory** 92:24
**lakes** 2:10,11
28:19 35:3,5,10,12
35:24 39:16,19
44:5,6 45:7,13,15
51:24,24 52:17,17
53:2,3,13,13 57:23
75:16,19,23,25
76:16 78:23 86:9

86:13,16
**language** 117:18
**lanty** 107:10
**larger** 122:15
**largest** 122:12
**late** 99:20
**law** 47:17 126:4
**lawsuit** 110:15
**lawsuits** 14:2,12
90:6 110:20
**lawyer** 48:12
**lawyers** 58:24
59:14 69:13 98:24
110:7 114:3
**lays** 47:20
**lee** 115:11 116:8
**left** 9:1 76:5,21
78:3,6,22 111:25
118:4
**legal** 12:6,6 14:11
14:12 15:24 48:13
124:14
**lennar** 88:18,22,25
119:4,7,14,22,25
120:15,17,25
121:6
**letter** 3:4,6 4:4,6
4:19 32:23 92:24
106:2 107:9
**letterhead** 92:14
**letters** 114:4
**levels** 117:20,23
**liability** 1:3
**lifetime** 118:17
**light** 118:14
**limb** 118:16
**limited** 3:9,12,15
3:19,22 4:2,9
94:12 96:2,6
97:23 98:7 99:24
99:25 100:9

102:22
**line** 24:12 31:20
66:25 83:24
130:11,14,17,20
130:23 131:1,4,7
131:10,13,16
**list** 2:6,7 11:12,16
16:13 22:22 27:3
27:8,15 51:15
101:18
**listed** 22:23 28:1
40:18 53:14,21
54:9,18 56:10
57:4 63:22 72:1
73:7 79:24 81:11
83:24 84:24
**lists** 82:1 118:13
**litigation** 1:4
34:18 90:21
103:11 110:5
119:13,21
**little** 28:20 29:2
39:14,20 57:7
64:22 77:11 87:22
91:21 112:5 117:9
**living** 83:8 96:25
109:12
**llc** 5:4
**llp** 5:10,17
**local** 88:13
**long** 7:9 8:9 83:11
101:18
**look** 16:16 17:7
19:2 40:20 42:7
77:1,23 78:10,19
80:9,11 82:13
94:25 97:18 99:11
99:22 100:23
101:6 107:4 114:7
122:24

**looked** 40:17 63:1
63:3 86:15,19
107:24 108:25
114:20 116:16
123:1
**looking** 16:24
18:17 22:17 35:19
40:20 44:3 77:1
83:22 84:6,13
88:15 93:1 95:5
96:15,15 114:14
**looks** 35:3,19,20
39:10 40:23 43:16
76:4 77:6,11
78:10,18 79:6,20
80:2,15 97:25
101:7 104:25
113:18,18 115:9
**loomis** 4:4
**losses** 64:25
**lot** 39:4 46:15
76:23 77:19,21
78:7,23 79:24
80:5,11 88:14
118:7
**louisiana** 1:1
**low** 39:10
**lower** 39:22 77:7
**lynn** 99:14

**m**

**m** 20:4
**ma'am** 11:19
12:10,13 21:13
23:1,5 25:8 39:15
39:18 40:16 41:4
42:6 48:5 65:23
84:5 86:24 91:24
93:2 104:17
108:16,22 116:13
**mae** 5:16 6:16

Case 2:09-md-02047-EEF-MBN   Document 22277-21   Filed 06/20/19   Page 49 of 60

30(b)(6) Michael Buchman                                    January 4, 2019
The Mitchell Company, Inc. Vs. Knauf Gips KG, Et Al.

[mag - never]                                                       Page 14

**mag** 1:6
**magnolia** 2:10,11
  28:19 35:3,5,10,12
  35:24 39:16,19
  44:5 45:7,12
  51:24 52:16 53:2
  53:13 86:9,12
  117:9
**mail** 129:10
**maintaining**
  126:13 128:9
**making** 58:1
  126:13 130:8,9
**manager** 7:7 13:2
  13:3
**mansell** 129:19
**manually** 80:2
  129:8
**manufactured** 1:3
  22:15 67:5,22
**manufacturer**
  26:22 29:11,12
  36:12
**manufacturers**
  27:19,22,25 28:5,5
  28:6 36:16
**manupipatpong**
  5:16 6:16,16 21:3
**map** 2:10 35:2
**marie** 104:15
**mark** 21:1 86:7
  129:2
**marked** 9:19,23
  11:4,8 21:6 28:8
  28:11 31:25 32:4
  38:19,22 40:7,10
  42:1,4 43:7,11
  50:21,24 55:8,12
  55:24 63:12,16
  65:14,18 74:14,18
  86:3 89:14,18

91:1,5 92:6,10
93:13,16,17 97:8
97:13 99:8,12
100:20,24 102:8
104:11,14 105:7
105:11 106:19,24
108:3,6 111:3,6
113:7 114:23
115:2 117:1,4
**markings** 29:15
  29:21,22 30:4
**mary** 3:16 99:14
  101:15
**material** 72:8
**materials** 37:23
  72:12
**matter** 13:11
  17:18 55:15
  126:12,20 128:9
**matting** 113:1
**mccarthy** 107:11
**mdl** 1:3 56:3 63:4
**mean** 24:12 36:25
  37:21 58:9 109:6
  120:21
**means** 65:7 110:6
**measures** 117:14
**media** 120:22
**medical** 103:20
  104:3
**meet** 105:24
**meeting** 90:10
  93:24 94:5
**meetings** 90:2
**member** 50:11,17
**memorandum**
  66:10
**memorialized**
  59:1
**memorializes**
  97:14

**memorializing**
  94:21
**memory** 117:10
**mentioned** 18:17
  50:4 93:10
**met** 15:14 90:20
**michael** 1:12 4:19
  6:5,21 7:3 28:19
  117:6
**middle** 65:24 90:5
**mike** 18:13
**million** 45:23 46:1
  46:4
**mind** 70:20
**mine** 21:4
**minimum** 112:16
**minor** 112:22
**minused** 79:21
  123:25
**minutes** 64:12
**mitchell** 1:6 2:5
  5:2 6:9 22:16
  42:15,20 43:12
  47:24 50:17 65:25
  66:7,15 110:16
**mobile** 5:6
**moment** 68:17
**money** 23:22
  25:24,24 56:21
  57:3
**moneys** 25:15 26:2
  26:2,9 56:18
  59:19 61:11,12
  62:2 103:16 124:3
  124:11
**monitoring** 103:21
  104:3
**monthly** 72:18
  83:2,4 85:4 96:24
**months** 16:19
  18:19,20 19:5

83:14
**moore** 8:14
**morning** 7:1 20:18
**morris** 4:10 108:9
**motion** 2:16,23
  43:14 66:15
**move** 49:21 50:1
  66:2
**moving** 96:18
**multi** 4:17
**multiple** 40:19,21
**myers** 2:11 7:8,17
  7:25 13:2,3 25:17
  37:13 44:6 75:13
  89:1 104:23 116:8
  116:10

**n**

**name** 7:2 20:2
  23:3 83:23 91:10
  99:13 101:1 108:8
  120:18
**names** 26:22 36:25
  102:14 104:15
  105:12
**national** 29:6,7,10
**nature** 15:4,4
**nbc** 107:12
**ne** 5:11
**necessary** 130:10
**need** 55:1
**needed** 118:2
**needs** 118:6
**negative** 34:24
  79:1,17
**negotiate** 117:13
**neighborhood**
  35:25 90:7
**nelson** 107:10
**never** 32:9 33:17
  33:18 93:20 114:7
  118:22

**new** 115:21,25
**news** 88:13,20
  119:7
**nicholas** 5:3 6:8,8
  15:5 17:24 18:1,8
  30:6 34:11 46:24
  49:24 52:4 57:6
  57:10,15,17 66:10
  69:13 70:19,23,25
  77:5,9,13 80:25
  81:3 87:22,25
  89:19,21 95:19
  96:7 100:1,12
  103:9 110:1,12,23
  112:11 119:16
  120:11,20 121:17
  123:23 124:12,16
  129:1
**nick** 107:10
**nine** 72:18
**nitpicking** 117:18
**normal** 115:19
**normally** 78:12
**notarized** 129:10
**notary** 131:23
**note** 30:11 43:25
  62:23 93:22
**noted** 46:8 130:4,5
**notes** 62:1
**notice** 2:4 9:18,24
  13:13,20 14:6,25
  22:9,19 30:12,16
  31:1 42:8,13 49:7
  54:8 67:1
**noticing** 126:19
**noting** 129:7
**number** 22:9
  24:11,17 31:16,19
  34:14 38:23 39:8
  39:10 40:18 43:11
  44:13 45:9 47:7

47:12,20 48:3
56:3 59:1 64:19
77:3,6,19,21 78:5
78:7 79:11 82:14
82:14 89:19
113:13 118:10,10
118:11 122:17
**numbered** 78:20
**numbers** 26:6
  39:22,23 53:1
  76:23 77:24 79:24
  80:5,11 123:3
**nw** 5:18

**o**

**object** 10:16,22
  13:12 27:10 29:17
  29:23 30:6,25
  32:8 37:9 38:16
  40:2 41:23 42:24
  43:2 44:23 45:4
  46:20,23,24 48:19
  49:2 51:9,18 54:7
  54:23 59:8 61:15
  64:17 66:24 67:8
  71:13 81:4 85:14
  95:19 96:7 100:1
  100:12,13 101:25
  103:8 104:5
  109:20 110:1,11
  110:12,23,24
  119:16 120:2,11
  120:12,19,20
  123:14,23,24
  124:12,13
**objecting** 14:24
**objection** 14:4
  41:24 48:8 49:4
  49:22,25 50:3
  67:25
**obligation** 126:14
  128:10

**obviously** 13:12
  90:22 106:8
  119:10
**occupants** 22:11
**ocga** 126:7,8,21
  130:7
**october** 20:11
**odor** 88:14 91:17
**offhand** 80:7
**officer** 14:22
  128:13
**offices** 129:3,10
**offset** 123:21
  124:10
**oh** 13:16 20:2 21:3
  21:5 44:18 52:6
  60:11,18 81:8
  82:18 87:24 93:17
  104:21 108:18
  112:13 122:7
**okay** 7:4,11,17,20
  7:25 8:2,5,7,9,12
  8:15,21 9:1,6,15
  9:17 10:5,13,25
  11:3,15,23 12:1,9
  12:11,14,18,20,25
  13:4,6,9,16,20,22
  14:2,20 15:2,6,12
  15:15,23 16:3,7,11
  16:15,20 17:2,9
  18:10,23 19:6,16
  19:21,24 20:5,9,16
  20:24 21:11 22:7
  23:2,6,10,18,21
  24:3,6,9 25:9 26:5
  26:22 27:2 28:21
  28:23 29:2,14
  30:1,10 33:8 34:9
  34:23 35:2,5,9,12
  35:18,24 36:5,9,23
  37:4,15,18,20 38:1

38:8,11,18 39:2,13
39:19 40:5,14,17
40:25 41:5,9,17,22
42:7,11,18,22 43:6
43:25 44:3,16,18
45:12,15 46:8,17
47:8,11 48:16
50:20 51:3,6,21
52:24 53:5,12
54:20 55:6 56:2
56:17,23 57:1,16
58:1,13,15,24 59:6
59:13,21 60:11,14
60:24 61:9,22,22
62:10,13,16,20,22
63:11,21 64:7,24
65:3,5,9,13,21
66:9,21 67:13,16
68:5,12,18,18,22
69:2,20 70:2,11,15
70:25 71:12 72:3
73:5,17,22 74:3,24
75:2,10,15,22 76:4
76:14,19 77:4,13
77:16,18,23,23,25
78:3,19,21,22
79:23 80:9 81:2
81:18,21 82:4,9,13
82:20,23 83:7,11
83:15,21 84:6,13
85:3,6,19,20 86:6
86:15,18,25 87:7
87:21 89:3,7,9,11
89:13 90:1,4,24
91:8,14 92:5,13,20
92:24 93:3,9 94:7
94:11,20,25 95:16
95:22 96:1,12
97:3,7,11,18 98:16
98:22 99:3,16,22
100:5,16,23 101:3

30(b)(6) Michael Buchman
January 4, 2019
The Mitchell Company, Inc. Vs. Knauf Gips KG, Et Al.

**[okay - photograph]**

Page 16

101:6,12,20 102:5
102:11,17 103:4
103:14 104:2,9,18
104:25 105:6
107:4 108:2,11,17
108:21,23 109:23
110:4,15 111:2,10
111:13 112:5,15
112:19 113:4,10
113:23 114:13
115:1,20 116:11
116:14,18 117:19
118:24 119:13,18
119:24 120:6,17
121:9,12,14,17
122:7,10,14,16
123:16 124:7,20
125:5
**old**  64:23
**once**  88:12 129:9
**ones**  104:23
113:19 114:20
**ongoing**  45:18
**opener**  82:1,4,5
**openers**  82:10
85:10 109:8
**operates**  80:3
**operations**  12:23
**operative**  17:11
**opinion**  107:19
**opposed**  113:25
**option**  78:24
**options**  78:14,14
**orally**  41:18
**order**  122:25
**ordered**  41:10,14
**ordering**  127:2
129:13
**organizing**  94:5
**original**  7:14 23:6
23:7,16,19 91:16

91:20 129:12,14
**originally**  24:19
112:24 114:9
**orlando**  9:4,7
**outcome**  128:8
**outlay**  26:7
**outside**  13:13
14:24 15:24 30:12
51:25 52:18 54:7
66:25 68:1,12
86:20,23
**overbeck**  3:20
101:1,14
**owned**  23:8
**owner**  23:2
**owners**  22:11 23:3
23:6,7

**p**

**p.m.**  88:5 116:23
121:19 125:9
**package**  101:23
**packet**  29:16,21
**page**  2:2 4:23 10:7
42:12,14 44:4
48:3 51:21 53:18
56:8 65:21,22,24
66:9,11,14 76:6
77:2,3 78:4,5,19
78:23 79:10,15
80:12 81:25 82:13
83:21,22 84:7,14
84:19 94:25 95:4
96:1,15,17 97:19
99:22 100:7 101:6
102:17 103:18
104:25 106:5
107:4 108:17,18
112:11 114:5
130:11,14,17,20
130:23 131:1,4,7
131:10,13,16

**pages**  22:24,24
76:11,25 130:9
**paid**  61:11,13 70:4
70:8 71:19 72:14
73:2 83:3 97:4
109:12
**pamela**  97:15
**paragraph**  44:4
53:18 66:18 67:9
96:2,17,23 98:4
100:5,6,7
**paren**  99:14
**part**  13:19 18:25
20:15 43:21 59:23
60:8 61:9 69:5
77:3 80:10,10
95:9 119:3
**participated**  59:4
**participating**  56:4
**participation**  58:2
59:7
**particular**  18:14
40:13 75:3 93:6
99:18 101:23
104:19 112:8
124:8
**particularly**
101:21 106:13
**parties**  18:6 95:12
103:21 124:11
126:21 127:2
128:13 129:13
**party**  14:3,13 49:7
56:5,14 126:15,22
128:7,11
**password**  127:1,2
**pay**  37:22 53:19
53:24 57:22 72:15
96:18,24 98:7
102:2,22 103:12
104:6 106:17

**payee**  72:22
**payment**  58:21
98:13,17,19 101:7
101:8,15 103:2
108:19
**payments**  2:21
58:5 59:21,22
60:4,7,16,19,21
65:10 84:3 100:17
**pdf**  129:7
**peachtree**  1:15
5:11,18
**people**  88:13
118:4,4
**percent**  29:6,6,7,7
35:21 53:9 54:25
**percentage**  26:21
**percentages**  26:23
36:1,15 54:13
**perform**  98:5
100:8 102:21
**permit**  79:19
115:18,25
**permits**  115:15
**permitting**  79:7
**personal**  13:14,23
96:19 103:20,24
104:3,22 109:24
**personality**  118:3
**personally**  11:15
105:24 121:7,9,24
**phase**  2:8 27:13
47:19
**phillips**  2:15 8:16
12:19,20 13:10
15:19 43:13,18
105:23
**photo**  54:10,24
**photograph**  26:18
55:1

Case 2:09-md-02047-EEF-MBN   Document 22277-21   Filed 06/20/19   Page 52 of 60
30(b)(6) Michael Buchman                                    January 4, 2019
The Mitchell Company, Inc. Vs. Knauf Gips KG, Et Al.

[photographed - putting]                                            Page 17

**photographed** 26:17

**photographs** 27:1 28:13,15,21 55:3

**pick** 83:19

**pictures** 29:4

**piece** 26:17,18

**place** 126:20

**plaintiff** 42:22 50:9 65:25

**plaintiffs** 2:23 13:11

**plans** 115:17

**plasterboard** 1:11 5:14

**please** 6:6,19 7:1 129:10,17 130:9 130:10

**pled** 50:7

**pod** 82:25

**point** 32:19 48:1 72:18 99:1 103:17

**pointed** 49:5

**poorly** 18:24

**portion** 77:18 78:9

**positive** 26:6 34:23

**possession** 22:3

**post** 115:18

**pre** 47:2 118:11

**preparation** 16:17

**prepare** 14:25 15:12

**prepared** 14:16 22:2 26:24 31:2 48:6,17,24 59:14 61:19 70:3,7,11,15 75:2 95:16 111:13 115:8,10

**presence** 69:25

**present** 5:20,25 6:6

**presented** 126:1

**pressure** 111:24

**pretty** 9:8 90:20 105:25

**previously** 27:2 63:23 64:1

**print** 129:8

**prior** 13:17 88:17

**privileged** 122:23

**probably** 89:12 93:20 105:20

**problem** 60:3 61:10 125:5

**problems** 122:1,3

**procedure** 130:7

**proceeding** 5:25 126:1,22 127:1 128:6,13

**proceedings** 9:25 13:17 126:12

**procuring** 38:12

**produced** 16:4 20:22 28:13 31:7 31:9,17,23 32:5,11 32:15,21 33:22 34:6,17 38:24 40:11 45:6,16 89:18 91:5 92:10 106:23 113:11 126:23

**production** 17:6 17:10 20:14,16 33:20 64:19 129:18

**products** 1:3

**professional** 126:14 128:10

**proffer** 10:14

**program** 2:20 80:3

**prohibited** 126:20

**prohibitions** 126:8

**projection** 46:10

**projects** 46:3

**properties** 2:7 16:13 22:10,13,14 22:19 23:4 27:3,8 27:16,20 30:19,21 30:22,23,24 35:10 35:13 36:6,24 40:19,21 44:14 52:8,8 53:13,16 54:4,17,21 63:22 63:24 64:1 68:6 70:17 75:11,23,24 76:16 80:6 82:11 83:9 86:22 92:3 114:21 115:24

**property** 3:10,13 3:16,20,23 4:3,10 25:4 29:3 36:10 36:10,13,13,17,17 36:20 39:9 40:21 67:7,24 68:24,25 70:9 83:4,12 84:4 85:9 91:12 92:1 93:6 94:13 95:11 96:19 99:18 106:23 108:11 109:2,7,18,25 110:2 112:5

**proposal** 66:22

**proposed** 6:9 66:1 66:6,15

**proposition** 37:7 37:25

**protect** 113:2

**protected** 127:1,2

**protecting** 112:23

**protocol** 4:11,15 16:13 111:11 112:8,21,23 113:12,16,21 114:16

**protocols** 114:19

**provide** 56:13 83:16 98:6 100:9 102:21 126:19

**provided** 19:13,14 20:19,25 26:12 34:16 39:9 41:6 53:1 54:13 59:14 71:9

**provides** 84:9

**providing** 42:19

**public** 131:23

**pull** 16:17 19:6 24:23 64:18 76:3

**pulled** 18:12,13 19:17 54:10,14 73:9 115:15

**pulling** 19:21 112:1

**punitive** 49:14 50:5

**purchased** 91:15 91:16

**purchasing** 13:2

**pursuant** 5:21 130:6

**pursuing** 51:16 110:9

**put** 9:7 17:14 61:7 82:25 125:1

**putting** 31:1 101:22

Case 2:09-md-02047-EEF-MBN   Document 22277-21   Filed 06/20/19   Page 53 of 60
30(b)(6) Michael Buchman
The Mitchell Company, Inc. Vs. Knauf Gips KG, Et Al.
January 4, 2019

[quantifies - repair]                                                                 Page 18

| q | | | |
|---|---|---|---|
| **quantifies** 73:1 | **receive** 57:3 | **references** 51:23 | 108:24 |
| **question** 14:8 15:5 | **received** 20:9,10 | **referred** 41:3 60:8 | **relocate** 47:1 |
| 18:25 29:18 34:11 | 20:16 25:16 26:2 | 88:22 | **relocating** 69:24 |
| 48:22 52:10 59:25 | 26:9 27:2 56:20 | **referring** 58:21 | **relocation** 27:12 |
| 61:18 67:12,18,20 | 59:19 60:7,16,20 | 98:4 | **rely** 27:18 |
| 67:21 69:9 81:7 | 62:2 64:15 106:10 | **refers** 23:12 39:6 | **remainder** 78:8 |
| 86:21 121:4 | 106:11 108:18 | **reflected** 54:5 | 79:11 |
| **questions** 31:8 | 118:17 124:3,11 | 123:20,21 | **remaining** 16:2 |
| 37:3 49:11,18 | **receives** 126:22 | **refresh** 59:3 | 74:11 |
| 56:25 66:21,25 | **recess** 21:21 55:19 | **regarding** 56:3 | **remediate** 23:24 |
| 90:8 119:17 | 88:5 116:23 | **regular** 108:15 | 23:25 94:21 |
| 124:21 126:23 | 121:19 | **regulations** 5:22 | 109:25 110:2 |
| 128:5 | **recognize** 10:1 | 126:6 | 115:23 |
| **quite** 20:17 62:8 | 32:7 34:21 35:2 | **regulator** 116:4 | **remediated** 49:13 |
| **quote** 123:10 | 38:25 40:12 50:25 | **reimburse** 82:17 | 83:9 |
| | 55:24 89:23 91:10 | **reimbursed** 65:8 | **remediating** 49:19 |
| r | 99:13 101:1 | **relate** 34:24 35:1 | **remediation** 22:11 |
|---|---|---|---|
| **r** 20:4 | 102:14 105:12 | 80:6 | 23:9 24:25 25:22 |
| **ran** 26:20 | 108:8 111:7 115:2 | **related** 14:3 25:22 | 73:24,25 82:10 |
| **range** 77:15 | **recollection** 19:4,4 | 34:18 51:7 63:8 | 83:4,12 109:1,17 |
| **ray** 2:15 8:15 | 59:3 83:13 119:6 | 64:25 65:10 66:21 | 111:12 115:7 |
| 12:19,20 43:13,18 | **record** 6:1 7:2 | 71:5 79:12 80:23 | 117:14 |
| 105:23 | 14:10 21:17,19,22 | 84:4 97:16 106:22 | **remember** 99:15 |
| **raymond** 104:16 | 33:6,7,8,11,17 | 113:12 | 99:16 101:9,17 |
| **reach** 15:19 | 55:17,18,20 63:17 | **relates** 1:5 52:13 | 104:18 105:17,19 |
| **read** 14:17 46:6 | 72:14 86:7 88:3,7 | 77:19 | 105:23 |
| 67:19 125:4 129:6 | 116:19,20,22,24 | **relating** 29:4 | **remodeling** 67:6 |
| 130:2 | 121:18,20 125:1,8 | 52:16 120:9 127:1 | 67:23 |
| **reading** 66:4 67:9 | 126:12,13,23 | **relation** 12:15 | **renewed** 2:23 |
| 67:11,18 94:14 | 128:6 | 32:15 | **rep** 7:16,20 |
| **real** 67:7,24 | **recorded** 46:18 | **relationship** 38:1 | **repair** 4:11,15 |
| **really** 79:22 88:16 | **records** 99:1 | 38:4,6 126:12 | 16:12 23:21,22 |
| **reason** 130:13,16 | **recover** 47:5 | 128:9 | 25:21 26:7 46:12 |
| 130:19,22,25 | 109:17 110:16 | **relative** 128:7 | 47:2,2 67:6,23 |
| 131:3,6,9,12,15,18 | **reduced** 45:9 | **release** 2:18 3:9,12 | 68:19,23 70:4,8 |
| **reasons** 130:8 | 128:5 | 3:15,19,22 4:2,9 | 84:25 85:6 87:4 |
| **recall** 16:7,8 90:3 | **refer** 58:25 63:5 | 94:12,22 95:9 | 87:17 96:13 98:5 |
| 98:15 99:21 | 64:3 | 96:2,5 97:12,19,22 | 100:8 102:21 |
| 101:10,14 104:2 | **reference** 86:19 | 97:23 99:24,25 | 111:11 123:2 |
| 113:5 | **referenced** 63:6 | 102:12,18 103:23 | 124:1 |
| | 106:4 | 106:5 107:24 | |

**[repairing - says]**                                                    Page 19

**repairing** 45:24
  46:1,4
**repairs** 82:10
  87:18 123:10
**rephrase** 52:10
  59:24
**replacement** 68:19
  68:23 70:5,8 82:5
  82:9 85:9 109:7
**replacements**
  109:4
**report** 3:1,2 8:7,12
  8:18 13:4 16:12
  23:23 24:14 25:2
  26:19 29:5 71:18
  71:22 72:2,6 73:1
  73:8,10,15,18,20
  73:22 74:6,20,24
  75:3,5,11,18,22
  76:15,20,22 77:3
  77:19 78:8,9 79:2
  79:13 81:12 85:23
  86:1,10,12 87:2,9
  87:10 93:6 111:13
  111:16 126:13
**reported** 8:9,15,23
  8:24 9:11 26:23
  36:12 39:23,24
  84:20
**reporter** 5:24 6:19
  126:1,3,7,10,24,25
**reporting** 5:23
  26:15 30:3 78:9
  88:13 126:6,19
**reports** 16:14,17
  19:6,11,16,22 24:9
  26:25 27:1 45:22
  54:14,22,24 80:23
  85:1,3 92:25
  120:22 123:4,6

**repository** 127:2
**represent** 6:7 9:23
  17:23,24 28:12
  66:22
**representations**
  33:16 58:2 126:4
**representative** 6:5
  14:21 31:21 48:16
  48:24 58:4 66:1,7
  66:16 107:10
**represented** 22:1
**representing** 6:8
  6:10,12,14,17
**represents** 17:21
  25:10
**request** 2:5 17:5
  17:10,12 18:4,9,12
  32:10,18 33:19,24
  34:5 112:3
**requested** 32:20
  34:5 129:6
**requests** 11:10,13
  11:16 16:5 18:6
  19:3 28:14 32:6
  33:13 34:16 66:16
  75:8
**required** 36:19
  117:23
**research** 119:7
**reservation** 65:6
**reserved** 125:10
**reserves** 103:19
**residence** 96:20
**resolution** 97:15
  101:23
**resolutions** 103:5
**resolve** 51:6 94:17
**resolved** 107:23
**respect** 22:7 23:25
**respond** 92:21
  118:1

**responded** 18:2,4
**responding** 43:22
  61:17 123:12
**response** 16:4
  18:13 19:2 28:13
  32:5,18 33:22
  34:16 57:4 75:8
**responsibility**
  129:7
**responsible** 38:12
  43:21 103:21
**responsive** 11:17
  11:21 20:20
**restate** 29:18
**results** 92:25
**retained** 102:1
  106:16
**returned** 129:11
  129:14
**review** 16:3 55:1
  126:2 129:7
**reviewed** 15:14
  16:9,14
**reviewing** 11:16
  16:8,15
**revised** 78:25
**rider** 97:25 98:3
**right** 22:8 26:1
  33:19 35:22 45:17
  47:4 57:15,17,21
  59:19 62:8,10
  65:22,24 67:19
  72:20 74:9 75:9
  77:2,7,10 79:1
  80:9,13,14,15
  81:16 85:7 86:6
  87:5,14 89:4,5
  90:4,14 92:15
  93:1 94:14 98:2
  98:10 100:11
  103:19 107:7

  109:13 110:18
  113:6 114:4
  115:22 117:10,11
  122:7,21 123:8,11
**rights** 65:6 103:22
  110:5
**robert** 3:7 108:8
**robinson** 5:20
**robyn** 1:17 128:19
**roswell** 129:20
**roughly** 35:23
**rounds** 20:9
**royal** 3:4,10 91:8
  94:1,17,22 95:23
  98:20 109:16
**royal's** 119:9
**royals** 97:4,22
**rpr** 1:17 128:19
**rubber** 113:1
**rule** 130:6
**rules** 5:21 126:5
  130:6
**run** 24:14 25:2
  73:1,20 74:6,24
  75:23 76:1
**rusty** 39:7

---

                    **s**

**s** 20:4,4
**sales** 22:12
**salesforce** 16:22
  16:25 18:18 19:2
  19:8 74:25
**samantha** 105:13
  107:6
**save** 113:2
**saw** 25:11 33:18
**saying** 72:5
**says** 29:5 34:14
  39:5 43:13 45:17
  52:12 53:19 56:2
  59:15 65:22,24

Case 2:09-md-02047-EEF-MBN Document 22277-21 Filed 06/20/19 Page 55 of 60

30(b)(6) Michael Buchman                    January 4, 2019
The Mitchell Company, Inc. Vs. Knauf Gips KG, Et Al.

[says - specified]                                                    Page 20

66:14 75:5,15
77:2 78:7,23,24,25
79:6,13 80:16
81:25 82:13 83:22
84:9 90:5 94:11
96:18,23 98:4
103:18 112:11
**scanned** 19:10
**scheduling** 23:14
**scope** 4:18 13:13
14:14,25 15:3
16:14 30:12,24
54:8 66:25 68:1
98:6 100:8 115:6
115:16 116:2,3,14
116:15 117:14
118:12 122:17
**seal** 129:12
**search** 16:21
**second** 21:17
22:21,24 23:2
84:15 107:4
113:16 114:2
116:21
**section** 1:5 95:6
98:6 102:18 126:7
**sections** 126:8
**see** 22:6 29:8
42:14 43:11 44:20
46:6 54:18 64:9
64:19 66:4,19
72:11 73:11,11
75:13 76:9,12
77:16 79:2 82:2
82:17,18 83:21,25
84:10,21 91:19
92:25 95:1 96:21
97:1 102:24 105:2
107:13 108:17,20
115:12 116:6

**seeing** 75:12 77:21
**seek** 22:16 47:15
47:16,17 49:13,14
49:15,19 103:19
**seeking** 47:4 49:9
110:16 124:9
**seen** 10:3 11:12
18:14 40:15 41:9
41:13 42:5 43:15
62:16,24 63:19
65:18 69:6 91:6
92:11 106:25
**semantic** 32:14
**senator** 107:9
**send** 129:12,17
**sense** 89:24
**sent** 17:10
**separate** 60:10,11
62:14
**separately** 50:16
**serve** 128:13
**served** 17:4,13
32:9 33:12
**serves** 117:10
**service** 19:8 32:23
32:24 115:12
**services** 38:9 71:9
126:19
**set** 23:14
**settle** 8:8,10
**settlement** 2:18,19
2:20 25:10,18,19
26:1,2,8 45:8 51:4
53:25 56:2,6,18,18
56:21,21 57:3,4,5
57:7,9 58:3,6,25
59:2,4,7,10,16,23
60:5,9,11,15,20,25
61:3,6,13 62:1,7
62:14,17 63:1,3,4
63:5,6,7 69:6

**seen** 86:18 98:9 100:10
123:17,17,19,20
124:10
**settlements** 69:14
69:17 124:4
**settling** 52:13
**sewer** 83:1
**sheet** 55:4
**shoes** 110:21
**shortly** 20:25
59:14
**show** 30:14 32:22
43:10 89:17 91:4
92:9 93:16 97:11
99:12 102:11
106:22 107:12
108:6 110:4 111:6
113:10 115:1
**showing** 79:18,19
**shown** 26:6
**shows** 32:23 41:10
41:14
**side** 11:9
**sign** 94:10 125:4
129:6
**signatory** 56:11
**signature** 125:10
128:18 129:2,15
131:20
**signatures** 56:11
**signed** 44:1 107:5
108:24 125:2
129:9,11,14
**similarly** 64:7
**single** 4:13 40:23
44:4 109:15 114:1
**sit** 70:2 71:8 85:20
109:23
**situation** 118:23
**six** 20:9

**size** 39:20
**slightly** 113:20
**small** 90:25
**smaller** 122:10
**smith** 12:19,25
13:4 15:21 107:10
**software** 24:7
78:16
**solely** 30:5 126:15
128:11
**somewhat** 92:16
**sorry** 7:24 13:7
18:21 31:12,15
52:11,22,25 59:24
64:18 65:18 66:11
75:20 77:22 78:2
80:21 87:9 93:17
93:17 100:6
106:18 108:18
114:13
**sort** 61:3 109:10
**sound** 35:22
**sounds** 22:5 75:9
**source** 30:16 41:7
54:20 62:6
**sourced** 41:19
**spalding** 1:14 3:6
5:10 92:14
**speak** 121:7
**speaking** 49:22
**special** 117:22,22
**specific** 24:12,19
36:20 56:22 75:10
126:21
**specifically** 23:25
28:24 29:22 41:11
41:15,20 69:21
101:13 106:10
126:5
**specified** 31:4

30(b)(6) Michael Buchman                                January 4, 2019
The Mitchell Company, Inc. Vs. Knauf Gips KG, Et Al.

**[speculate - talking]**                                Page 21

**speculate** 81:19,22
96:9 103:12
**speech** 33:9
**spells** 61:7
**spend** 45:25 46:3
**spent** 45:23 46:12
46:18 124:6
**split** 119:20
**spreadsheet** 26:5
124:8
**square** 40:1,3
**stage** 23:11 47:14
47:18 49:8
**stamp** 115:12,14
115:17
**stamped** 116:3
**stand** 31:22
112:13
**standing** 110:21
**stands** 91:14
**start** 18:22 106:1
**started** 20:25
88:15,15,20 112:2
**starting** 10:6
79:10
**starts** 76:22 77:6
77:11 78:6 92:13
**state** 7:1 9:8 14:9
68:6,13 126:10
128:2
**stated** 46:9 48:11
58:24 128:4
**statement** 5:23
130:8
**states** 1:1 44:4
68:15,16 90:4
100:14 102:20
122:3
**stefanie** 4:4
**steve** 6:8 17:6,23
32:13 49:23

105:12 106:17
107:5
**steve's** 33:23
**steven** 5:3 129:1
**stipend** 83:2,4,7
83:19 85:4 96:24
**stipulate** 33:21,24
56:24 61:5
**stipulated** 58:10
**stipulation** 58:13
58:19
**storage** 71:15 72:8
72:11
**stored** 16:24
**stowbridge** 76:7
82:7 84:7,19
**street** 1:15 5:5,11
5:18
**stretch** 14:15
**stretched** 9:16
**strike** 18:21 49:21
50:1,2 54:2 71:2
**stuff** 17:6 80:1
**subcontractor**
126:11,16 128:12
**subcontractors**
60:17,21 62:5
**subject** 2:7 22:10
22:13,18 23:3
25:4 27:8,15,20
30:19,21,24 36:24
44:13 48:8 53:15
63:24 64:1 68:6
75:24 76:16 80:6
86:22 92:3 114:21
**submit** 116:2
**submitted** 5:24
126:24,25
**subscribed** 131:21
**subsequent** 36:8
45:5 73:10 74:5

85:22 107:20
**substance** 130:7
**sue** 50:14,16 89:7
**sued** 41:22
**suggested** 112:16
**suing** 109:17
**suit** 90:18
**suite** 129:19
**sum** 53:20 98:8
102:23 105:1
**summary** 22:2
26:11,23 29:5
87:8
**sun** 102:22
**superintendent**
7:22 8:3
**supplied** 36:24
38:7 39:3
**supplier** 25:17
36:25 37:19 41:2
59:10
**suppliers** 38:3
56:4
**supply** 25:16 37:8
37:12,13 38:2,5,5
38:8 40:18 41:5
41:10
**support** 2:16
43:13
**supported** 84:25
**supposed** 93:11
**sure** 16:18 18:3
21:18 43:16,17
47:21 55:2 58:15
59:11 60:1,3 64:5
64:23 65:7 69:19
72:16,16 79:8,20
81:20 84:16 99:19
112:10
**surprise** 94:4
102:6 106:11

**surprising** 107:16
107:17 118:25
**susan** 5:9 6:12
19:15
**susan's** 87:12
**swear** 6:19
**sworn** 6:22 14:21
131:21
**symptoms** 88:14
**system** 16:22,22
19:18 23:14 24:18
24:21 72:22 74:25
80:2
**systems** 16:16
118:15

**t**

**tabulating** 55:3
**tai'an** 1:10
**tailored** 103:5
**taishan** 1:10,10
2:25 5:13,14 6:15
6:17 22:15 27:23
29:5,16,22 30:4,22
41:11,15,20,22
45:24 46:13 47:5
47:24 48:7 64:3
67:5,22 109:17
110:10 119:14,22
**tai'an** 5:13
**take** 21:16 33:2,3
55:13 88:1 93:19
95:10 101:22
121:15
**taken** 123:3 128:4
**talk** 15:16 57:6,8
110:7 122:19,22
**talked** 12:20 85:15
117:19
**talking** 31:16,20
53:16 70:20 76:25

30(b)(6) Michael Buchman
The Mitchell Company, Inc. Vs. Knauf Gips KG, Et Al.
January 4, 2019

**tampa** 37:16 44:7 75:12,19,20 89:1 104:20 108:11 113:19 116:9,12
**tell** 40:22 44:21 49:8,10 67:1 74:10 94:7 99:2 122:21
**template** 78:11
**temporary** 96:19
**tenure** 7:11
**terms** 61:8 126:16 128:12
**testified** 6:23 12:11,22 13:10 43:18 53:8 59:18 61:25 71:3 74:19 93:3 119:2 121:23 123:2,9
**testify** 22:18 31:2 48:6,17,25 70:3,7 70:11,15 95:16
**testifying** 10:9 11:1 12:15 118:19
**testimony** 15:13 27:7 41:3 42:19 44:13 63:23 130:2 130:8
**testing** 16:14
**tests** 93:4
**thank** 6:18 37:2 66:12 70:25 89:21 119:18 124:22,23
**theodore** 97:15
**thing** 55:16 95:1 109:10
**things** 42:10 57:19 71:15 78:10 82:25 101:18 117:17 118:7,13

**think** 9:16 14:16 15:3 17:4,5 18:2,4 31:3,20 35:17 73:11 81:25 84:18 93:11 98:3 121:16 122:12
**thinking** 55:16
**third** 23:10 51:22 52:2,5,6 113:21
**thompson** 107:10
**thought** 9:1 44:16 62:1,4 114:13
**threaten** 90:21
**three** 18:20 19:5 20:19
**tile** 113:2
**time** 6:2 8:22,25 9:4 10:23 13:6,7 15:25 19:7 23:8 25:11 45:20,21 46:9 91:17 111:18 111:25 112:6 120:24 121:21 125:7 126:22 129:14
**timeline** 118:9,9
**times** 20:14
**title** 7:6,12,15 12:21 75:15 86:9
**tobeck** 4:6 107:2,5
**today** 6:2 10:9 42:19 44:13 47:23 48:6,17 60:25 70:2 71:3,8 74:19 85:20 86:23 107:12
**today's** 9:25 15:13 16:17
**told** 114:3
**top** 75:5,16 79:13 114:4 117:11

**topic** 22:9 31:3
**topics** 10:6,11,15 10:21 31:8,24 47:23 48:25 60:24
**total** 19:12 22:25 25:6,21 26:7 44:13 45:9 46:11 47:7,11,20 53:20 84:10,20
**totaled** 24:15 87:4
**totals** 44:10 78:25 123:20
**tour** 118:11
**townhome** 40:24
**townhomes** 44:6 113:25
**track** 42:9
**transactions** 22:12
**transcript** 126:22 128:4,6 129:7,12 129:14 130:2
**transcripts** 126:22 127:1
**transferable** 118:18
**transition** 9:4
**translating** 55:4
**treated** 18:6
**tried** 18:8 49:10
**triggers** 31:20
**true** 126:23 128:6
**trust** 3:17 99:14 101:16
**trustee** 99:14
**trying** 18:2 49:16 61:3,12 78:8
**turn** 19:14 37:11 56:8 65:21 66:9 102:17
**turnkey** 37:11,20 37:25

**two** 22:24,24 37:7 52:1,18 63:25 83:13 86:20,23 113:14 119:17 122:13
**type** 40:14 118:3
**types** 26:20
**typewriting** 128:5
**typical** 82:10 117:14
**typically** 83:12

**u**

**u.s.** 28:5
**uh** 12:8 20:6 27:5 30:2 40:6 52:15 59:17 60:6 61:1 64:21 85:24 90:15 105:16 111:21 112:7 116:7 117:12
**ultimately** 107:23
**underlying** 24:10
**undersigned** 130:2
**understand** 10:25 15:2 42:18 43:3 60:19 61:12 66:6 67:14 80:17
**understanding** 25:14,15 26:10 59:6 60:10,18,23 64:13 67:1 68:2 71:14,17 76:14 84:2,23 86:11 94:24 110:19 124:9
**understands** 38:11
**understood** 17:15 32:13 33:23 121:2
**unit** 40:23 84:10
**united** 1:1

30(b)(6) Michael Buchman                                      January 4, 2019
The Mitchell Company, Inc. Vs. Knauf Gips KG, Et Al.

**[units - yield]**                                              Page 23

**units**  4:14,17
   112:1 113:22
**uploaded**  127:2
**upper**  65:22 76:5
   76:20 77:2 78:3,5
   78:22
**use**  34:2,4 37:24
   101:21 130:9
**uses**  24:7

**v**

**v**  1:6 34:14
**vacated**  83:3
**vaguely**  25:11
**var**  80:15
**variations**  39:25
**varied**  83:14
**vary**  36:10,13
   39:20 40:3
**vendor**  37:10,10
   37:25
**verbatim**  126:13
**veritext**  126:11,19
   129:10,18
**versus**  42:15 78:1
**video**  1:9 2:8 6:3
**videographer**  5:20
   6:1,18 21:19,22
   55:18,20 88:3,6
   116:22,24 121:18
   121:20 125:3,6
**villas**  113:20
**vocal**  107:18
**vociferous**  106:13
**voluminous**  20:17
**voluntarily**  32:12
**vouch**  92:17
**vp**  12:23

**w**

**wachovia**  107:11

**wall**  2:20 113:22
**wallboard**  4:13,17
**want**  33:4,5,10,10
   33:11,20 48:1
   51:10 56:24 57:18
   83:16 96:9 103:12
   103:17 118:4,5
   125:4
**wanted**  54:3
   101:19 113:11
**warranty**  7:16,20
   98:7 100:9 102:22
   105:21 106:7
   118:18
**water**  83:1
**way**  17:14 71:24
   80:3 118:17,17
   122:25
**we've**  43:11 53:16
   86:22 87:17
   108:25 115:2
**website**  19:9
**weeks**  20:18
   113:15
**went**  8:4 19:1
   83:20 87:2 112:25
   113:1 115:23
   118:14,15,15
**west**  5:18
**wife**  122:5,19,22
**wilcox**  4:3 104:16
   104:16
**wilkinson**  1:6
**witness**  6:20 10:15
   13:10 14:21 48:10
   58:14 61:7 99:5,7
   124:23
**witnesses**  10:20
   126:25
**word**  101:21

**worded**  18:24
**words**  24:13 27:12
   34:3,4 37:22
   78:14,15 113:2
   120:21
**work**  3:8,11,14,18
   3:21 4:1,8,18 16:9
   16:14 19:9 43:19
   94:9,11 95:9
   96:13 97:12 98:5
   98:6,14 100:8,9
   102:11,21 105:22
   106:1,7 107:23
   108:15,24 111:15
   115:6,16 116:2,3
   116:14 117:15
   120:24
**worked**  11:23,25
   12:2 15:23 17:8
   120:23
**working**  75:7
**works**  17:16 72:17
   116:15 122:6
**written**  5:23 96:5
**wrong**  57:18
**wrote**  26:19

**y**

**yeah**  9:3,14 10:17
   15:9 16:13 17:23
   20:8 24:17 25:24
   26:14 27:11 29:24
   30:20,25 34:8
   35:3 37:10 40:3
   43:3 45:16 46:25
   48:4,11 57:2,2,8
   57:18 58:20 59:9
   60:13 61:16 67:11
   69:10 71:14,25
   72:7 73:7 75:12
   77:8,10,16 78:10
   79:6,18,25 81:7

87:12 89:25 90:20
   92:16 97:25 98:25
   100:14 102:1
   103:10 104:6,20
   106:15 113:18
   114:2,6,8,9 117:11
   117:22 118:5
   119:6 121:3
**year**  7:11 8:11
   64:22
**yearly**  72:18
**years**  7:10,15 46:9
   72:19 118:22
   119:10
**yesterday**  25:12
**yield**  24:10

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF SEPTEMBER 1, 2016.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

## VERITEXT LEGAL SOLUTIONS
### COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.