## SETTLEMENT AGREEMENT IN MDL NO. 2047
## REGARDING CLAIMS INVOLVING
## BUILDERS, INSTALLERS, SUPPLIERS
## AND PARTICIPATING INSURERS[1]

This Settlement Agreement is entered into by and among the Plaintiffs' Steering Committee on behalf of the Class Members, as defined below, in *In re: Chinese Manufactured Drywall Products Liability Litigation*, MDL No. 2047 (EDLA), including the various consolidated Omnibus Complaints and individual actions, and those Builders, Installers and Suppliers identified in Exhibit 1 (included within the definition of "Participating Defendants" as hereinafter defined), together with the Participating Defendants' Participating Insurers identified in Exhibit 2, as of the latest date of a Party's signature below.

**WHEREAS**, certain Participating Defendants and some of their Participating Insurers have been named as defendants in MDL No. 2047, in state or federal court litigation, and/or are otherwise alleged to be liable for the damages and/or injuries related to Chinese Drywall that was installed in various properties throughout the United States; and

**WHEREAS**, the Participating Defendants and Participating Insurers deny the allegations against them and dispute liability, causation and damages with respect to any and all claims relating to Chinese Drywall; and

**WHEREAS**, certain Participating Defendants have sought insurance coverage from the Participating Insurers with respect to the Litigation and/or other claims relating to Chinese Drywall, and certain Participating Insurers have reserved rights and/or denied insurance coverage; and

**WHEREAS**, without conceding the correctness of any other Party's legal position, claims and/or defenses, the Parties wish to avoid the effort, expense and risk of continued litigation,

**NOW, THEREFORE**, in consideration of the mutual covenants contained herein and intending to be legally bound, the Parties agree as follows:

1. **Definitions**

    1.1. **Parties.** "Parties" shall mean the Class, Participating Defendants, and Participating Insurers:

        1.1.1. **Class.** "Class," also referred to as "Settlement Class" or "Class Members," shall include all persons or entities, along with their heirs, representatives, attorneys, executors, administrators, executives, subsequent purchasers, residents, guests, tenants, lenders, successors

---

[1]     This Settlement is referred to in the Knauf Defendants' Settlement Agreement as the "Prospective Insurance Agreement."



DEFENDANT'S
EXHIBIT
11

CDW000500

and assigns, with claims, known or unknown, arising from or related to actual or alleged Chinese Drywall purchased, imported, supplied, distributed, marketed, installed, used, sold or in any way alleged to be within the legal responsibility of any Participating Defendant. A Participating Defendant shall also be a Class Member to the extent the Participating Defendant has remediated or participated in the settlement of claims related to the Chinese Drywall in one or more Affected Properties or repurchased an Affected Property. Participating Insurers are not Class Members. Class Members do not include persons or entities with claims involving an Affected Property in the Commonwealth of Virginia.

1.1.2.   **Participating Defendants; Participating Defendant**. "Participating Defendants" shall mean those persons or entities identified in Exhibit 1. "Participating Defendant" shall mean any one of the Participating Defendants. Knauf shall not be considered a Participating Defendant.

    1.1.2.1.   **Participating Defendant Released Parties; Participating Defendant Released Party**. "Participating Defendant Released Parties" shall mean all Participating Defendants and their respective past, present, and future officers, directors, board members, members, agents, attorneys, consultants, claim administrators, managers, employees, partners, parent corporations, sister corporations, subsidiaries, Affiliates, related entities, divisions, heirs, associates, stockholders, shareholders, retail dealers, distributors, insurers, reinsurers, and all of their predecessors, successors, assigns, legatees, legal representatives, and any other stakeholders of each of the foregoing. "Participating Defendant Released Party" shall mean any one of the Participating Defendant Released Parties.

1.1.3.   **Participating Insurers; Participating Insurer**. "Participating Insurers" shall mean (a) all insurers identified in Exhibit 2 to the extent of any insurance policy issued or alleged (i) to have been issued to any non-insurer Participating Defendant and/or under which any non-insurer asserts an entitlement to rights or benefits, or (ii) to include any Participating Defendant as an additional insured. An insurer listed on Exhibit 2 as a Participating Insurer may also be a Non-Participating Defendant to the extent of a Reserved Claim against that insurer in Exhibit 3, an assignment against that insurer in Exhibit 4, or to the extent that insurer issued a policy of insurance to a Non-Participating Defendant. "Participating Insurer" shall mean any one of the Participating Insurers.

CDW000501

1.1.3.1.  **Participating Insurer Released Parties; Participating Insurer Released Party**. "Participating Insurer Released Parties" shall mean all Participating Insurers, and their respective past, present, and future officers, directors, board members, members, agents, attorneys, consultants, claim administrators, managers, employees, partners, parent corporations, sister corporations, subsidiaries, Affiliates, related entities, divisions, heirs, associates, stockholders, shareholders, retail dealers, distributors, insurers, reinsurers, and all of their predecessors, successors, assigns, legatees, legal representatives, and any other stakeholders of each of the foregoing. "Participating Insurer Released Party" shall mean any one of the Participating Insurer Released Parties.

1.2.   **Affected Property**. "Affected Property" shall mean any real or personal property, residential or commercial, actually or allegedly containing or exposed to Chinese Drywall allegedly purchased from, imported, supplied, distributed, marketed, installed, used, sold and/or delivered by or in any way alleged to be within the legal responsibility of any Participating Defendant.

1.3.   **Affiliate.** "Affiliate" shall mean: (1) any entity or person that directly or indirectly owns, controls, or holds with the power to vote, any outstanding voting securities or interests of a Participating Defendant; (2) an entity any of whose outstanding voting securities or interests are or were directly or indirectly owned, controlled, or held with power to vote, by a Participating Defendant, or by an entity or person that directly or indirectly owns or owned, controls or controlled, or holds or held with the power to vote, any outstanding voting securities or interests of a Participating Defendant; (3) an entity or person whose business is or was operated under a lease, management or operating agreement by a Participating Defendant, or person or entity substantially all of whose property is or was operated or managed under an operating or management agreement with a Participating Defendant; or (4) an entity that operates or operated, manages or managed the business or substantially all of the property of a Participating Defendant under a lease, management or operating agreement, subject to the limitation that an individual person holding common shares of publicly issued and traded stock of a Participating Defendant or Participating Insurer, either directly or through an investment fund, shall not be deemed an Affiliate hereunder.

1.4.   **CDW-Related Actions**. "CDW-Related Actions" shall mean any and all state court, federal court, international tribunal, arbitration claims or other claims, including any claim under Section 558 of the Florida Statutes or any similar statute in any other state, against any Participating Defendant or Participating Insurer arising out of or relating to Chinese Drywall.

1.5.   **Chinese Drywall**. "Chinese Drywall" shall mean any and all drywall products actually or allegedly purchased from, imported, supplied, distributed, marketed,

3

CDW000502

installed, used, sold and/or delivered prior to the Effective Date of this Settlement by or in any way alleged to be within the legal responsibility of any Participating Defendant, which drywall product was allegedly manufactured, in whole or in part, in China, or that include components manufactured, in whole or in part, in China, including, but not limited to, drywall manufactured by Knauf Plasterboard (Tianjin) Co., Ltd.; Knauf Plasterboard (Wuhu), Co., Ltd.; Guangdong Knauf New Building Materials Products Co., Ltd.; Knauf Gips KG; Gebrueder Knauf Verwaltungsgesellschaft, KG; Knauf International GmbH; Knauf Insulation GmbH; Knauf UK GmbH; Knauf AMF GmbH & Co. KG; Knauf do Brasil Ltd.; PT Knauf Gypsum Indonesia; Beijing New Building Materials Public Ltd. Co.; CNBM; Taishan Gypsum Co., Ltd. f/k/a/ Shandong Taihe Dongxin Co., Ltd.; Taian Taishan Plasterboard Co., Ltd.; Pingyi Zhongxin Paper-Faced Plasterboard Co., Ltd. f/k/a Shandong Chenxiang Building Materials Co., Ltd.; Crescent City Gypsum, Inc.; The China Corporation, Ltd.; Run & Fly (Jinan) New Building Material Co., Ltd; Baier Building Materials Co. Ltd. "Chinese Drywall" shall also include any and all drywall products at issue in the Litigation whose origin or manufacturer is not ascertainable.

1.6.    **Counsel**. "Counsel" shall mean:

    1.6.1.    Plaintiffs' Class Counsel shall mean Russ Herman of Herman Herman & Katz LLP, 820 O'Keefe Avenue, New Orleans, LA 70113 and Arnold Levin of Levin, Fishbein, Sedran & Berman, 510 Walnut Street, Suite 500, Philadelphia, PA 19106.

    1.6.2.    As to the PSC, those counsel as defined in Section 1.15.

    1.6.3.    As to Participating Defendants, those counsel of record for each entity identified in Exhibit 1.

    1.6.4.    As to Participating Insurers, those counsel of record for each entity identified in Exhibit 2.

1.7.    **Court.** "Court" shall mean The Honorable Eldon E. Fallon who presides over *In re Chinese Manufactured Drywall Products Liability Litigation*, MDL No. 2047, in the United States District Court for the Eastern District of Louisiana.

1.8.    **Escrow Account.** "Escrow Account" shall mean an account to be approved by the Court that is a Qualified Settlement Fund pursuant to Section 1.468B-1 *et seq.* of the Treasury Regulation promulgated under Section 468B of the Internal Revenue Code of 1981, as amended.

1.9.    **Execution Date.** "Execution Date" shall mean the latest date on which any of the Parties signs this Settlement Agreement, as shown by their signature blocks below.

1.10.    **Knauf.** "Knauf" shall mean Knauf Plasterboard (Tianjin) Co., Ltd.; Knauf Plasterboard (Wuhu), Co., Ltd.; Guangdong Knauf New Building Materials

4

CDW000503

Products Co., Ltd.; Knauf Gips KG; Gebrueder Knauf Verwaltungsgesellschaft KG; Knauf International GmbH; Knauf Insulation GmbH; Knauf UK GmbH; Knauf AMF GmbH & Co. KG; Knauf do Brasil Ltd.; and PT Knauf Gypsum Indonesia.

> 1.10.1. **Knauf Released Parties**. "Knauf Released Parties" shall mean Knauf, and their respective past, present, and future officers, directors, board members, members, agents, attorneys, consultants, claim administrators, managers, employees, partners, parent corporations, sister corporations, subsidiaries, Affiliates, related entities, divisions, heirs, associates, stockholders, shareholders, retail dealers, distributors, insurers, reinsurers, and all of their predecessors, successors, assigns, legatees, legal representatives, and any other stakeholders of each of the foregoing.

1.11. **Knauf Class Settlement.** "Knauf Class Settlement" shall mean the Settlement Agreement Regarding Claims Against the Knauf Defendants in MDL No. 2047.

1.12. **Litigation.** "Litigation" shall mean all Class Action Omnibus Complaints ("Omni Complaints") and all other complaints filed in or consolidated with MDL No. 2047 and all CDW-Related Actions, as defined in Section 1.4.

1.13. **Non-Participating Defendant**. "Non-Participating Defendant" shall mean any person or entity that is not a Participating Defendant (whether or not that person or entity is named as a defendant, cross-defendant, third-party defendant or fourth-party defendant in the Litigation or any CDW-Related Actions) and, to the extent of applicable insurance coverage allegedly provided, that person's or entity's insurers. Non-Participating Defendant shall also include Beijing New Building Materials Public Ltd. Co.; CNBM; Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd.; Taian Taishan Plasterboard Co., Ltd.; Pingyi Zhongxin Paper-Faced Plasterboard Co., Ltd. f/k/a Shandong Chenxiang Building Materials Co., Ltd.; Crescent City Gypsum, Inc., The China Corporation, Ltd.; Run & Fly (Jinan) New Building Material Co., Ltd.; Baier Building Materials Co., Ltd., and any other manufacturers of Chinese Drywall; as well as any person or entity listed on Exhibit 1 or Exhibit 2 that subsequently withdraws from and cancels its obligations under this Settlement pursuant to Sections 6.4, 8.3.2, 8.4.1 or 13.2 below. Non-Participating Defendant, however, shall not include Knauf.

1.14. **Order and Judgment.** The "Order and Judgment" shall mean the final order and judgment entered by the Court following the Fairness Hearing, that:

> 1.14.1.   Certifies the Settlement Class pursuant to Fed. R. Civ. P. 23(b)(3);

> 1.14.2.   Finds that the Settlement is fair, reasonable, and adequate; finds that the Settlement was entered into in good faith and without collusion; finds the Settlement represents a negotiated agreement; and approves the Settlement;

CDW000504

1.14.3.   Issues the Orders identified in Section 10;

1.14.4.   Finds that the indemnity, defense and judgment reduction provisions in Sections 4.3 and 5.2.6 are valid, binding, and enforceable; and therefore, bars the assertion by any Class Member of any contribution, indemnification, subrogation, or other claims related to or arising out of Chinese Drywall against the Participating Defendants or Participating Insurers, excluding only any Reserved Claims;

1.14.5.   Enters the findings of fact and conclusions of law proposed in Section 17.4; and

1.14.6.   Finds that pursuant to Fed. R. Civ. P. 54(b), there is no just reason for delay of entry of final judgment with respect to the foregoing.

1.15.   **Plaintiffs' Steering Committee; PSC.**   "Plaintiffs' Steering Committee" or "PSC" shall mean the group of plaintiffs' counsel appointed by the Court to manage and administer the affairs of all plaintiffs in MDL No. 2047 and to assist the Court in administering its docket.   The PSC, as currently constituted, is described by Pretrial Order No. 8B (Rec. Doc. No. 13084) in MDL No. 2047.

1.16.   **Preliminary Approval Order.**   "Preliminary Approval Order" shall mean an order of the Court preliminarily certifying the Class and approving this Settlement.

1.17.   **Related Claims**.   "Related Claims" shall mean any unlitigated claims, known or unknown, against any Participating Defendant or Participating Insurer related to or arising out of Chinese Drywall. "Related Claims" shall not include Reserved Claims.

1.18.   **Released Claim; Released Claims**.   "Released Claim" or "Released Claims" shall be as defined in Section 5.1, and shall include all releases described in Sections 5.1-5.5. "Released Claims" shall not include Reserved Claims.

1.19.   **Released Party; Released Parties**.   Except as provided in Section 5.6, "Released Party" or "Released Parties" shall mean each Participating Defendant Released Party and each Participating Insurer Released Party.   "Released Party" or "Released Parties" shall also include the Knauf Released Parties, but only to the extent provided in Sections 5.3.1 and 5.4.1.

1.20.   **Reserved Claims.**   "Reserved Claims" shall mean those claims reserved in Section 5.6.

1.21.   **Settlement; Agreement**.   "Settlement" or "Agreement" shall mean this Settlement Agreement in MDL No. 2047 Regarding Claims Involving Builders, Installers, Suppliers and Participating Insurers.

6

CDW000505

1.22.   **Settlement Class Counsel**.  "Settlement Class Counsel" shall mean MDL No. 2047 Plaintiffs' Liaison Counsel, Russ Herman and MDL No. 2047 Lead Counsel, Arnold Levin.

1.23.   **Settling Party; Settling Parties**.  "Settling Parties" shall mean all Class Members who do not opt-out of this Settlement and all Participating Defendants and Participating Insurers who do not withdraw from this Settlement, except to the extent of Reserved Claims in Section 5.6.  "Settling Party" shall mean any one of the Settling Parties.   To the extent a Participating Defendant is also a Class Member as described in Section 1.1.1 above, that Participating Defendant may be a Settling Party in its capacity as a Participating Defendant but not be a Settling Party in its capacity as a Class Member by choosing to opt-out one or more of its claims in accordance with the procedure set forth in Section 8 below.

1.24.   **Fairness Hearing**.  "Fairness Hearing" shall mean the hearing before the Court described in Section 10 of this Settlement.

## 2.   Effective Date

2.1.   The "Effective Date" of this Settlement shall be the date when the Settlement is Final irrespective of the Execution Date or the date of the Preliminary Approval Order.  "Final" means the later of:

2.1.1.   The date after the time to appeal the Order and Judgment has expired with no appeal having been taken; or

2.1.2.   If an appeal is sought from the Order and Judgment, the day after the Order and Judgment is either affirmed, or any and all appeals, or motions for reargument or reconsideration are dismissed or denied, and the judgment is no longer subject to further appellate review.

2.2.   An appeal from any order approving the payment of fees and costs which seeks to reduce amounts to be paid to Petitioning Attorneys, as defined in Section 16.6, shall not affect the finality of the  Settlement.

## 3.   Settlement of All Claims Against Participating Defendants and Participating Insurers

3.1.   Except as to any Class Member who opts out of the Class in accordance with Section 8, and except as to any Reserved Claims described in Section 5.6, the Parties agree to settle and resolve all claims asserted by and amongst each other as set forth in Sections 5.1 – 5.5. This Settlement will settle and resolve with finality the Litigation, the Released Claims, and the Related Claims involving the Class Members, the Participating Defendants and Participating Insurers and any other claims that have been brought, could have been brought or could be brought now or at any time in the future in the Litigation or in any other proceeding of any kind against any Participating Defendant and/or Participating Insurer relating to or arising out of Chinese Drywall, whether based in law, equity or otherwise.

7

CDW000506

4. **Payments by Participating Defendants and Participating Insurers and Application of Proceeds**

4.1.   In consideration of the settlement of all Class Members' claims arising out of or related to Chinese Drywall in the Litigation and/or CDW-Related Actions and/or Related Claims against Participating Defendants and Participating Insurers, the Participating Defendants and Participating Insurers will pay the collective sum of EIGHTY MILLION DOLLARS ($80,000,000.00) (the "Settlement Funds"), subject to the credits in Section 4.2. The credits in Section 4.2 shall not be included in the Settlement Funds subject to allocation under Section 16.1. No Participating Defendant and none of his, her or its Participating Insurers is liable to pay settlement funds committed by or on behalf of any other Participating Defendant and his, her or its Participating Insurers. Each Participating Defendant and his, her or its Participating Insurers, are obligated only to pay their individual settlement amounts, as committed in response to the MDL No. 2047 Mediator's confidential settlement proposal, and which amounts are to be paid as follows:

4.1.1.   Each Participating Defendant and/or its Participating Insurers shall deposit 5% of the total sum to be paid by such Participating Defendant and/or its Participating Insurers into the trust account for Insurance Liaison Counsel, Judy Y. Barrasso, payable to Barrasso Usdin Kupperman Freeman & Sarver, L.L.C., IOLTA Account and sent c/o H. Minor Pipes, III, 909 Poydras Street, 24th Floor, New Orleans, Louisiana 70112. This amount is to be paid within seven (7) days following the entry of the Preliminary Approval Order by the Court. These funds are to be used for the purposes of (a) paying Mediator's costs, and (b) paying the cost of class notice. To the extent any of the funds are spent on those purposes, there shall be no refund of this sum, or any portion thereof, to any Participating Defendant or Participating Insurer who withdraws from this Settlement pursuant to Sections 8.3.2 or 8.4.1. However, if any Participating Defendant or Participating Insurer properly withdraws from this settlement when a portion of these funds has not been spent on these stated purposes, it shall be entitled to a refund of the portion of its payment in the same percentage as that left unspent on the date of withdrawal. Any of these funds remaining after payment of the Mediator's costs and class notice, and not refunded to withdrawing Participating Defendants, shall be deposited in the Escrow Account for use in the allocations provided in Section 16.

4.1.2.   Each Participating Defendant and/or its Participating Insurers shall deposit into the Escrow Account the remaining 95% of the total sum to be paid by such Participating Defendant and/or its Participating Insurers within fifteen (15) days of the Effective Date of this Settlement. These funds will be allocated in accordance with Section 16 of this Settlement Agreement.

8

CDW000507

4.2.     The following amounts shall be applied towards satisfying the Settlement Funds in Section 4.1, but shall not be applied towards satisfying the recovery of attorneys' fees and reimbursement of costs available under Section 16.6 (because these funds will be the subject of a separate recovery from the Knauf Defendants (if used by those entities to satisfy a builders' claim, *e.g.,* CastleRock) or by a Class Member that opts-out of this settlement and pursues its claim against a Participating Defendant or Non-Participating Defendant):

4.2.1.     Separate Settlements.   Because the following entities have either reached, or have been in negotiations for, separate full or partial settlements regarding claims involving Chinese Drywall, after the negotiations that led to this Settlement, thereby removing those claims from this Settlement, the following amounts will be credited against the Settlement Funds due in Section 4.1:

4.2.1.1.     CastleRock Communities LP – $1,284,000.

4.2.1.2.     Coastal Construction Group of South Florida, Inc. – $3,936,000.

4.2.1.3.     Devon International Industries, Inc. – $756,000.

4.2.1.4.     Gulf Coast Shelter, Inc. and Shelter Products, Inc. – $720,000.

4.2.1.5.     RCR Holdings II, LLC – $2,376,000.

4.2.1.6.     Shoma Homes Splendido, Inc. – $358,000.

4.2.2.     For each of the Separate Settlements listed in Section 4.2.1., the PSC, class counsel, common benefit attorneys and privately retained attorneys for all Class Members shall be entitled to recover an award of attorneys fees equivalent to the common benefit percentage set by the Court in accordance with Section 16.6.

4.2.3.     Opt-outs and Withdrawals.   To the extent of any opt-outs or withdrawals pursuant to Sections 8.1, 8.3 or 8.4, the payment of Settlement Funds by an individual Participating Defendant for the Affected Properties associated with any opt-outs shall be reduced pro-rata relative to the number of units comprising the Mediator's confidential settlement proposal for the number of opt-outs to the applicable Participating Defendant, or for the Participating Defendant's share if a withdrawal, and these amounts will be credited against the Settlement Funds due in Section 4.1.

4.3.     In consideration of the payments and other consideration made by Participating Defendants and Participating Insurers, Class Members agree, in addition to other conditions set forth in this Settlement Agreement, to apply the settlement

9

CDW000508

proceeds they receive, except for funds allocated to resolve claims for bodily injury pursuant to Section 16, to assist in the remediation of their Affected Property allegedly damaged by Chinese Drywall, or, in instances where a lender holds a mortgage or deed of trust on the Affected Property, the Class Member may defer remediation by securing the release of all of the lender's claims regarding the Chinese Drywall and recording a notice in the land records office of the appropriate governmental agency of the presence of Chinese Drywall in the Class Member's property.  This provision does not apply to the extent the Class Member is a Participating Defendant who has remediated the Affected Property.  Any Class Member that fails to comply with the obligations set forth in this paragraph shall indemnify, (including attorney fees and costs, both at trial court and appellate court levels), defend and hold harmless each Participating Defendant and Participating Insurer for any claim brought by any person or entity, including, without limitation, that Class Member's lender or any subsequent purchaser of that Affected Property, against the Participating Defendant or Participating Insurer relating to the existence of Chinese Drywall in the Affected Property.

## 5.   Releases

5.1.   **"Released Claim"** or **"Released Claims"** shall mean, except as listed below, and except for Reserved Claims in Section 5.6, any and all claims of any kind and nature whatsoever of a Class Member, Participating Defendant, Participating Insurer or Knauf (a) arising out of, or in any manner related to, Chinese Drywall, the Litigation, CDW-Related Actions or Related Claims, and/or (b) for any and all losses, damages and/or injuries arising from, or in any manner related to, all and/or any of the claims described in (a) above, including but not limited to, any and all claims that a Class Member, Participating Defendant, Participating Insurer, or Knauf, or anyone claiming by or through any of these individuals or entities, has, may have, or may have had, regardless of whether such claim is known or unknown, filed or unfiled, asserted or as yet unasserted, or existing or contingent, whether asserted by petition, complaint, cross-claim, third party complaint, fourth-party complaint, arbitral demand, written demand, or otherwise (or any judgment or order entered on such claims), based upon or alleging any act, conduct, status or obligation of any person or entity (including any Participating Defendant or Participating Insurer) and/or any source of liability whatsoever, and regardless of the legal theory or theories of damages involved and/or (c) for any and all claims for insurance coverage (including claims for additional insured coverage), indemnity, duty to defend, common law and statutory bad faith claims, and/or extra-contractual liability or any other insurer misconduct of any kind, which claims arise under state, or other law (including common law) and any and all past, present, and/or future claims arising out of, or related to indemnity obligations, duty to defend, claims handling, claims adjustment, breach of contract, breach of duty or duties, negligent investigation, breach of warranty, failure to warn, breach of implied warranty, breach of good faith and fair dealing, bad faith, statutory bad faith, negligent or intentional interference with contractual relationships, deceptive trade practices, unfair trade practices, unfair settlement

10

CDW000509

practices, or conduct in violation of any insurance code, and/or any other alleged misconduct, omission, or wrongdoing of any kind, of whatever nature or source, known or unknown.  Notwithstanding the above, the only persons or entities released are those defined as Participating Defendant Released Parties and/or Participating Insurer Released Parties.  This Settlement does not provide complete compensation to redress all Class Members' damages and therefore Class Members' claims are reserved against any person or entity that is not a Participating Defendant Released Party or a Participating Insurer Released Party. The term "Released Claim" or "Released Claims" includes, but is not limited to, the following:

5.1.1.    For personal injury, bodily injury (including death), damage to real or personal property, remediation and/or clean-up of property, diminution of property value, stigma, groundwater contamination, loss of use, loss of enjoyment, economic loss, fear, fear of illness or disease, fear of developing illness or disease, fright, mental or emotional distress, pain and suffering, loss of earnings, impairment of earning capacity, loss of consortium, loss of support, loss of love and affection, equity and medical monitoring, bystander liability, wrongful death, survival actions, breach of contract, all statutory claims, punitive or exemplary damages, attorneys' fees, attorneys' costs or expenses, moving expenses, or additional rental or mortgage payments;

5.1.2.    For nuisance, trespass, inconvenience, loss of use or enjoyment, negligence, negligence *per se*, tort, public or private nuisance, custody of a thing containing a vice or defect, strict liability, liability for ultra hazardous activities or conduct, absolute liability, wanton and reckless misconduct, malicious misconduct, servitude or obligation of vicinage, abuse of right, or any other liability legally asserted or assertable under any federal, state, or local statute, directive or regulation, redhibition, violation of any state or federal home warranty act, products liability act, unfair trade practices or consumer protection law, negligent discharge of a pollutant or corrosive substance, unjust enrichment, breach of express or implied warranty, breach of implied warranty of fitness and merchantability, breach of implied warranty of habitability, negligent misrepresentation, building code violations;

5.1.3.    For damages or alleged damages resulting in whole, or in part, from exposure of the Class or Class Members or property of the Class Members to hazardous or allegedly hazardous, toxic, dangerous or harmful substances;

5.1.4.    For all personal injury and related statutory violations;

5.1.5.    For bad faith damages, whether statutory or at common law, extra-contractual damages based upon any alleged insurer misconduct of any kind or nature and punitive damages;

11

CDW000510

5.1.6.   For any and all claims under any state, federal, tribal or local law, rule or regulation, including but not limited to any environmental law, rule or regulation;

5.1.7.   For derivative or vicarious liability arising out of the conduct or fault of others for which the Participating Defendants and/or Participating Insurers may be responsible;

5.1.8.   For any right legally assertable by the Class or any Class Member now or in the future, whether the claim is personal to each individual, is derivative of a claim now or in the future, or as assignee, successor, survivor, beneficiary, subrogee, or representative of a Class Member;

5.1.9.   For a past, present, future, known, unknown, foreseen, unforeseen, contingent, nascent, mature claim or a claim arising at law, in equity or otherwise, including but not limited to, claims for survival and wrongful death;

5.1.10.  For any claim, right, or action arising out of, based on, or relating to any body of law whatsoever;

5.1.11.  For all injuries or damages of any type, nature, or character arising from, attributable to, or in any way resulting from the Chinese Drywall;

5.1.12.  For any conduct of any of the Participating Defendants and/or Participating Insurers with respect to Chinese Drywall, CDW-Related Actions, Related Claims or the Litigation; however, this provision shall not prevent or impede the enforcement of claims or entitlements to benefits under this Settlement;

5.1.13.  For any claim, known or unknown, for contribution, subrogation, or indemnity, contractual or otherwise, arising out of, attributable to, or in any way related to Chinese Drywall;

5.1.14.  For any further claims and/or liabilities arising out of, or otherwise relating to, the purchase, import, sale, supply, storage, handling, installation, marketing, distribution, and/or use of Chinese Drywall, including, but not limited to, punitive damages, fines, interest, attorneys' fees, and costs of any nature.

5.2.  **Class Release**

5.2.1.   Except as provided in Section 5.6, as of the Effective Date of the Settlement, each Class Member, and any person or entity claiming by, through, and/or on behalf of a Class Member, hereby fully, finally, and forever releases, remises, waives, surrenders, foregoes, gives up, abandons, cancels, acquits and forever discharges any and all Released

12

CDW000511

Claims against the (a) Participating Defendant Released Parties and (b) Participating Insurer Released Parties. The release of the Participating Insurer Released Parties is only to the extent of a Participating Insurer's obligations relating to any policies alleged to provide insurance coverage to any Participating Defendant, whether as a named or additional insured.

5.2.2.   Without limiting the foregoing, with respect to any Affected Property involving WCI Communities, Inc., and its affiliates, the Class Release set forth in Section 5.2.1 of this Settlement shall extend to and include the following: WCI Communities, Inc., New WCI, the Chinese Drywall Trust, Robert C. Pate, as Trustee for the Chinese Drywall Trust, and their respective past, present and future owners, partners, shareholders, officers, directors, board members, members, managers, agents, attorneys, employees, parents, associates, subsidiaries, divisions, affiliates, insurers and all predecessors and successors, assigns or legal representatives.

5.2.3.   Without limiting the foregoing, with respect to any Affected Property involving North Pacific Group, Inc., and its affiliates, the Class Release set forth in Section 5.2.1 of this Settlement shall extend to and include the following: North Pacific Group, Inc., Northern Pacific Lumber Co., the NPG Chinese Drywall Property Damage and Personal Injury Settlement Trust (the "NPG Chinese Drywall Trust"), Robert C. Pate as Trustee of the NPG Chinese Drywall Trust, and their respective past, present and future owners, partners, shareholders, officers, directors, board members, members, managers, agents, attorneys, employees, parents, associates, subsidiaries, divisions, affiliates, insurers and all predecessors and successors, assigns or legal representatives.

5.2.4.   As of the Effective Date of the Settlement, all Class Members, and anyone claiming by, through and/or on behalf of any of them, will be forever barred and enjoined from asserting any and/or all Released Claims, but not Reserved Claims, against the (a) Participating Defendant Released Parties and/or the (b) Participating Insurer Released Parties only to the extent of any policy issued or allegedly issued by a Participating Insurer alleged to provide insurance to a Participating Defendant, whether as a named or additional insured.

5.2.5.   Each Class Member represents and warrants that it has not assigned and will not assign any claims relating to Chinese Drywall it may possess against any Participating Defendant or Participating Insurer to any person or entity, except as set forth below and in Exhibit 4. This representation and warranty shall not, however, apply to a Class Member who has had their Affected Property remediated by a

13

CDW000512

Participating Defendant and assigned some or all of their claims in connection with this remediation.

5.2.6.   As of the Effective Date of the Settlement, each Class Member receiving an allocated settlement payment under Section 16 shall: (i) **DEFEND, INDEMNIFY (INCLUDING ATTORNEY FEES) AND HOLD HARMLESS** each of the Participating Defendant Released Parties and Participating Insurer Released Parties from and against (a) any and all Chinese Drywall-related claims involving that Affected Property brought or otherwise asserted by, on behalf of, through, or deriving from other owners or occupiers of the Affected Property or from such Class Member's lenders, heirs, executors, representatives, attorneys or former attorneys, successors, employers, insurers, employers' insurers, health insurers, health care providers, assignees, subrogees, predecessors in interest, successors in interest, beneficiaries or survivors; and (b) any claims for contribution, common law indemnity, contractual indemnity, and/or subrogation, whether arising under tort, contract or otherwise, brought or otherwise asserted against the Participating Defendants and/or Participating Insurers as a result of such Class Member's or a surety's continued pursuit of Chinese Drywall-related claims related to that particular Affected Property; and (ii) reduce or satisfy any judgment involving that Affected Property against the Participating Defendants and/or Participating Insurers under applicable federal or state law, whether it be *pro rata*, *pro tanto*, and/or by set off, to reduce or extinguish (a) any and all Chinese Drywall-related claims, other than Reserved Claims, involving that Affected Property brought or otherwise asserted by, on behalf of, through, or deriving from other owners or occupiers of the Affected Property or from such Class Member's lenders, heirs, executors, representatives, attorneys or former attorneys, successors, employers, insurers, employers' insurers, health insurers, health care providers, assignees, subrogees, predecessors in interest, successors in interest, beneficiaries or survivors; and (b) any claims for contribution, common law indemnity, contractual indemnity, and/or subrogation, whether arising under tort, contract or otherwise, brought or otherwise asserted against the Participating Defendants and/or Participating Insurers as a result of such Class Member's or a surety's continued pursuit of Chinese Drywall-related claims related to that particular Affected Property.   To the extent the Class Member is also a Participating Defendant with respect to a particular Affected Property, the total amount of the defense and indemnity obligation that will be due under this provision is limited to the amount the Class Member actually receives pursuant to Section 16 for this Affected Property.

14

CDW000513

## 5.3.    Participating Defendants' Releases

5.3.1.   Except as provided in Section 5.6, as of the Effective Date of the Settlement, each Participating Defendant and any person or entity claiming by, through, and/or on behalf of a Participating Defendant hereby fully, finally and forever releases, remises, waives, surrenders, foregoes, gives up, abandons, cancels, acquits, and forever discharges any and all Released Claims against all Class Members, all Participating Defendant Released Parties and all Participating Insurer Released Parties.

5.3.2.   Except as provided in Section 5.6, as of the Effective Date of the Settlement, each Participating Defendant and any person or entity claiming by, through or on behalf of a Participating Defendant hereby fully, finally and forever releases, remises, waives, surrenders, foregoes, gives up, abandons, cancels, acquits and forever discharges any and all claims against the Knauf Released Parties to recover on claims arising out of or related to any Affected Properties, and the payments for those Affected Properties under this Settlement by such Participating Defendant.  The Participating Defendants' release of the Knauf Released Parties is contingent upon Knauf providing a reciprocal release to the Participating Defendant Released Parties as provided in Section 5.5.  Knauf's release will not release any claim Knauf may have to participate in this Settlement as the assignee of a Class Member.  The Participating Defendants' obligations under this Agreement, including their release of the Knauf Released Parties, are contingent on the entry of a mutually satisfactory allocation plan pursuant to Section 16.1.

5.3.3.   To the extent a Participating Defendant has remediated, settled or repurchased an Affected Property, and has the right to recover from other Participating Defendants for the costs associated with this remediation, settlement or repurchase that Participating Defendant may participate in this Settlement as a Class Member for that Affected Property, or opt-out those claims as provided in this Settlement. However, in the event that a Participating Defendant opts-out as a Class Member for any Affected Property, that Participating Defendant shall be permitted to pursue claims against other Participating Defendants in an attempt to recover the costs associated with this remediation, but shall be precluded from pursuing any claims against the Participating Defendants and/or Participating Insurers for defense costs and/or insurance coverage as an additional insured on any other Participating Defendants' insurance policies.

5.3.4.   Each Participating Defendant represents and warrants that it has not assigned and will not assign any claims relating to Chinese Drywall it may possess against any Participating Insurer to any person or entity,

15

except as set forth below and in Exhibit 4, assigning certain claims to the PSC.

5.3.4.1.   PSC Assignments.   The Participating Defendants and Participating Insurers listed on Exhibit 4 assign to the PSC any and all claims for insurance coverage (excluding reinsurance claims), claim handling, defense, indemnity, contribution, or bad faith claims handling, whether statutory or common law and related to Chinese Drywall against the non-participating entities listed in Exhibit 4 for all claims related to any policies which may provide coverage to the Participating Defendant listed.  The PSC will be entitled to separately petition for an award of attorney fees and reimbursement of reasonable costs from any additional recoveries obtained through these assignments.  However, any such award shall not be paid to the Participating Defendant and/or Participating Insurer that provided the Assignment.

5.4.   **Participating Insurers' Releases**

5.4.1.   Except as provided in Section 5.6, as of the Effective Date of the Settlement, each Participating Insurer and any person or entity claiming by, through, and/or on behalf of a Participating Insurer hereby fully, finally and forever releases, remises, waives, surrenders, foregoes, gives up, abandons, cancels, acquits, and forever discharges any and all Released Claims against all Class Members, all Participating Defendant Released Parties and all other Participating Insurer Released Parties.

5.4.2.   Except as provided in Section 5.6, as of the Effective Date of the Settlement, each Participating Insurer and any person or entity claiming by, through or on behalf of a Participating Insurer hereby fully, finally and forever releases, remises, waives, surrenders, foregoes, gives up, abandons, cancels, acquits, and forever discharges any and all claims whatsoever against the Knauf Released Parties, to recover on claims arising out of or related to any Affected Properties, and the payments for those Affected Properties under this Settlement by such Participating Insurer.  The Participating Insurers' release of the Knauf Released Parties is contingent upon Knauf providing a reciprocal release to the Participating Insurer Released Parties as provided in Section 5.5.  Knauf's release will not release any claim Knauf may have to participate in this Settlement as the assignee of a Class Member.  The Participating Insurers' obligations under this Agreement, including their release of the Knauf Released Parties, are contingent on the entry of a mutually satisfactory allocation plan under Section 16.1.

16

CDW000515

5.4.3.      Each Participating Insurer represents and warrants that it has not assigned and will not assign any claims relating to Chinese Drywall it may possess against any Participating Defendant or Participating Insurer to any person or entity, except to the extent of a written settlement agreement regarding a remediated Affected Property that was executed before the Effective Date of this Settlement and except as set forth in Sections 5.3.4.1 and 5.6 and in Exhibit 4.

## 5.5. Knauf Release

5.5.1.      Except as provided in Section 5.6, as of the Effective Date of the Settlement, Knauf and/or any person or entity who or which derives any right or claim for, by and/or through Knauf, shall execute an agreement that fully, finally and forever releases, remises, waives, surrenders, foregoes, gives up, abandons, cancels, acquits and forever discharges any and all claims whatsoever against all Participating Defendant Released Parties and all Participating Insurer Released Parties to recover on claims arising out of or related to any Affected Properties, and the payments for those Affected Properties under the Knauf Class Settlement by Knauf, including but not limited to those for subrogation, implied or express indemnification, contribution, the inability to seek damages from any third parties for monies paid to settle and/or resolve claims, common law and statutory bad faith and/or any other alleged misconduct, omissions, or wrongdoing of any kind, of whatever nature or source, known or unknown, that Knauf ever had, now has, could have had, may have in the future, or that it may acquire, against any Participating Defendant and/or Participating Insurer. However, this release is not intended to release any claim Knauf may have to participate in this settlement as the assignee of a Class Member.

## 5.6. Reserved Claims

5.6.1.      This Settlement does not release any claims or defenses whatsoever that any Class Member, Participating Defendant, or Participating Insurer may have against any Non-Participating Defendant, or with respect to any insurance policy or policies issued to a Non-Participating Defendant, even if issued by a Participating Insurer, arising out of, in any manner related to, or connected in any way with Chinese Drywall. The Parties will not interfere with any Class Member's, Participating Defendant's, or Participating Insurer's rights or efforts to assert claims and obtain recoveries against any Non-Participating Defendant arising out of, in any manner related to, or connected in any way with Chinese Drywall or those claims assigned in Exhibit 4.

CDW000516

5.6.2.    The Parties expressly reserve all claims or defenses against Class Members who opt-out from this Settlement.  Further, in the event a Class Member opts out from this Settlement, Participating Defendants and Participating Insurers reserve all claims, defenses and coverage positions against that Class Member, against each other, and against any person or entity alleged to have any liability related to the Chinese Drywall in the Affected Property of that opt-out Class Member (including, without limitation, builders, developers, installers, suppliers, distributors, importers, exporters, manufacturers, Knauf, etc.), and that person's or entity's insurers (including, without limitation, under any policy under which a Participating Defendant claims to be an additional insured), whether or not that person or entity might also be a Participating Defendant or Participating Insurer, but only to the extent the claims arise out of the Affected Property opted-out by that Class Member. Notwithstanding, anything in this Settlement, or in Exhibit 3, it is the intent of this Settlement that the Parties retain all rights and coverage positions as to opts outs that the Parties possessed prior to the Effective Date of this Settlement, and the Parties reserve all claims, defenses and coverage positions relating to any opt-outs.

To the extent an opt-out Class Member is also a Participating Defendant for a remediated, settled or repurchased Affected Property that Participating Defendant shall be precluded from pursuing any claims against the other Participating Defendants and/or Participating Insurers for defense costs and/or insurance coverage as an additional insured on any Participating Defendants' insurance policy.  This remediating Participating Defendant, however, reserves all other claims and defenses, relating to that opted-out Affected Property, from and against any person or entity alleged to have liability related to the Chinese Drywall in that Affected Property (including, without limitation, installers, suppliers, distributors, importers, exporters, manufacturers, and Knauf), along with that person's or entity's insurers, whether or not that person or entity might also be a Participating Defendant or Participating Insurer.    The defense, indemnity and hold harmless provisions of Section 5.2.6 shall not apply to any claims reserved as a result of an opt-out.

5.6.3.    This Settlement does not release any claims whatsoever that any Participating Defendant or Participating Insurer may have against another Participating Defendant or Participating Insurer to the extent that those claims are reserved in Exhibit 3 of this Settlement or assigned in Exhibit 4 of this Settlement.  In addition, this Settlement does not release or waive any defenses or coverage positions whatsoever that any insurer, whether a Participating Insurer or not, has to those claims reserved in Exhibit 3 and/or assigned in Exhibit 4.

18

CDW000517

5.6.4.    Except for the release of the Knauf Released Parties as provided in Sections 5.3.1 and 5.4.1, the Parties do not release any claims against persons or entities who are manufacturers of Chinese Drywall, including, but not limited to Beijing New Building Materials Public Ltd. Co.; CNBM; Taishan Gypsum Co., Ltd. f/k/a/ Shandong Taihe Dongxin Co., Ltd.; Taian Taishan Plasterboard Co., Ltd.; Pingyi Zhongxin Paper-Faced Plasterboard Co., Ltd. f/k/a Shandong Chenxiang Building Materials Co., Ltd.; Crescent City Gypsum, Inc.; The China Corporation, Ltd.; Run & Fly (Jinan) New Building Material Co., Ltd.; Baier Building Materials Co., Ltd., and any other manufacturer of Chinese Drywall.  To the extent this Agreement is terminated under Section 13, or a mutually satisfactory allocation plan is not approved pursuant to Section 16.1, all claims against Knauf are also reserved.

5.6.5.    This Settlement does not release any rights, claims or causes of action any Participating Insurer may have arising out of the payment of claims or settlements made to or on behalf of insureds which are not identified as a Participating Defendant on Exhibit 1.  Specifically, nothing in this Settlement shall in any way affect the rights identified in or release any claims preserved in Sections 3.2 and 3.5.2 of the "Amended Stipulation and Agreement of Settlement" among Banner, its insurers and class members, dated August 8, 2011.

5.6.6.    This settlement does not release any rights, claims or causes of action for reinsurance recovery that any Participating Insurer may have, including, but not limited to those against any other Participating Insurer acting in its capacity as a reinsurer or retrocessionaire for any claims paid, settled or released herein.

5.6.7.    This Settlement does not release any rights, claims or causes of action whatsoever that a Class Member may have against any performance and payment surety bond, including the surety bond in *Hobbie, et al. v. RCR Holdings, II, LLC, et al.,* No. 10-1113 (E.D. La.).

5.6.8.    The releases set forth in Sections 5.3.2 and 5.4.2 are not intended to release, nor shall they operate to release:  (a) any obligations of Knauf under the Knauf Class Settlement; (b) any obligations of Knauf under any existing or later executed settlement agreements between Knauf and any Participating Defendant, including, without limitation, any agreements with any Participating Defendant that has remediated or paid to remediate any portion of one or more Affected Properties; (c) any unresolved claims between Knauf and any Participating Defendant that has remediated or paid to remediate one or more Affected Properties, including, without limitation, any claims a Participating Defendant may have against Knauf by virtue of any settlement with a property owner or any assignment of claims from a property owner

19

CDW000518

related to the remediation of any Affected Property; (d) any responsibility of Knauf to Participating Defendants arising out of or related to claims of persons or entities who do not fall within the definition of a "Class Member" as that term is defined in either Section 1.1.1 of this Agreement or Section 1.1.2 of the Knauf Class Settlement; and (e) claims, defenses and coverage positions of a Participating Defendant arising out of or related to an Affected Property connected in any way with a person or entity who opts out of this Settlement as reserved in Section 5.6.2.

5.6.9.  The release contemplated by Section 5.5.1 is not intended to release, nor shall it operate to release:  (a) any obligation of any Participating Defendant or Participating Insurer under any existing or later executed settlement agreements between Knauf and any Participating Defendant or Participating Insurer; (b) any unresolved claims between any Participating Defendant or Participating Insurer and Knauf related to Affected Properties as to which Knauf is not receiving a release under Section 5.6.8(c); (c) any responsibility of any Participating Defendant or Participating Insurer to Knauf arising out of or related to claims of persons or entities who do not also fall within the definition of a "Class Member" as that term is defined in either Section 1.1.1 of this Agreement or 1.1.2 of the Knauf Class Settlement; and (d) claims and defenses of Knauf arising out of or related to an Affected Property connected in any way with a person or entity who opts out of this Settlement as reserved in Section 5.6.2.

5.6.10.  Each Participating Insurer reserves the right to collect a deductible, if due (and not otherwise expressly waived or resolved in writing by the Participating Insurer), or to enforce a fronting policy.   Each Participating Defendant reserves the right to assert defenses or coverage positions to a Participating Insurer's attempt to collect a deductible allegedly due or to enforce a fronting policy.

5.6.11.  The Parties expressly reserve all claims or defenses against a Participating Defendant or a Participating Insurer who withdraws from this Settlement.  Further, in the event a Participating Defendant or a Participating Insurer withdraws from this Settlement, all other Participating Defendants and Participating Insurers reserve all claims, defenses and coverage positions against that withdrawing Participating Defendant or Participating Insurer, and if a Participating Defendant, that withdrawing Participating Defendant's insurers, whether a Participating Insurer or not. Notwithstanding, anything in this Settlement, or in Exhibit 3, it is the intent of this Settlement that the Parties retain all rights and coverage positions as to withdrawals that the Parties possessed prior to the Effective Date of this Settlement, and the Parties reserve all claims, defenses and coverage positions relating to any withdrawals.

CDW000519

**6.**     **Certification of Federal Rule of Civil Procedure 23(b)(3) Settlement Class and Related Motions**

6.1.     This Settlement shall be subject to approval of the Court.

6.2.     Within ten (10) days of the Execution Date of this Settlement, the PSC will move for an order:

    6.2.1.     Preliminarily certifying the Class and approving the Settlement (the "Preliminary Approval Order");

    6.2.2.     Staying all claims in the Litigation and CDW-Related Actions as to all Participating Defendants and their Participating Insurers, except for Reserved Claims; and

    6.2.3.     Declaring that, in entering into the Settlement, the Parties are acting in good faith and in compromise of disputed claims, and therefore, that the Settlement and the Preliminary Approval Order cannot be used as evidence in any other claim, lawsuit or other proceeding relating to allegations of harm, including bodily injury or property damage, alleged to be associated with defective drywall manufactured in China (in whole or in part), whether offered as evidence of liability, of insurance coverage, or of good or bad faith in the treatment of any party or non-party to the Settlement or in any fashion whatsoever.

6.3.     The PSC shall file a separate motion, which the Participating Defendants and Participating Insurers shall join, seeking the following Orders, which are to remain in force until the issuance of the Order and Judgment:

    6.3.1.     Approval of an Order to stay all future payments under insurance policies issued by Participating Insurers to Participating Defendants, other than payments to counsel engaged by Participating Insurers to defend Participating Defendants, payments of costs related to defending the Participating Defendants, payments in satisfaction of the settling Participating Defendants' obligations under prior settlements or pending settlements, or claims related to opt-outs or Reserved Claims under this Settlement, or claims not related to Chinese Drywall and payments made pursuant to Section 4.1.1;

    6.3.2.     Approval of an Order or Orders to stay all claims as to all Participating Defendants and Participating Insurers in the Litigation and all CDW-Related Actions, except for Reserved Claims; and

    6.3.3.     Approval of an Order or Orders staying and enjoining all claims and cases involving Chinese Drywall, except for Reserved Claims, in which any person or entity claims to be an insured, additional insured, by definition, endorsement or otherwise, third-party beneficiary, or

CDW000520

named insured under any insurance policy issued to any Participating Defendant.

6.4.    Any one of the Participating Defendants or Participating Insurers shall have the right to withdraw from the Settlement if the Court does not issue any of the requested orders, if the Class is not certified, or as provided in Section 8.3.2.

6.5.    The Parties will stipulate to the Court in the request for entry of the Preliminary Approval Order that (i) the Class is being certified for settlement purposes only pursuant to the Settlement, (ii) the Participating Defendants and Participating Insurers reserve the right to object to certification in the event this Settlement is terminated for any reason, including termination pursuant to Section 13, and (iii) this Settlement shall have no precedential effect with regard to certification of a litigation class that may arise if this matter is not fully and completely resolved through this Settlement, or otherwise.

7.    **Notice to Class Members**

7.1.    **Type of Notice Required**

7.1.1.    Within thirty (30) days after entry of the Preliminary Approval Order preliminarily certifying the Settlement Class as defined in Section 1.1.1, Settlement Class Counsel will commence the Class Settlement Notice Period by disseminating, or, for purchased media, initiating efforts to disseminate, the Class Settlement Notice ("Notice") by:

7.1.1.1.    First-class mail, postage prepaid, to the last known address of all Class Members who are identifiable through the Plaintiff Profile Forms and their counsel;

7.1.1.2.    First-class mail, postage prepaid, to the last known address of all Class Members with claims in all CDW-Related Actions and their counsel, involving those Class Members ascertainable from available records, such as the notices required by Fla. Stat. § 558 *et. seq.*;

7.1.1.3.    Publication in local newspapers in markets to be identified at least 5 days before the hearing on any motion for preliminary approval of this Settlement;

7.1.1.4.    Publication in periodicals to be identified at least 5 days before the hearing on any motion for preliminary approval of this Settlement;

7.1.1.5.    Publication in community newspapers throughout those markets to be identified at least 5 days before the hearing on any motion for preliminary approval of this Settlement

22

with substantial African American and Hispanic populations;

7.1.1.6.    Providing a press release to include national press release distribution, Twitter post to reporters, video distribution of TV spot, selected image distribution, and distribution to select microlists including Construction & Building, Banking, and Real Estate;

7.1.1.7.    Publication on 30 second television spots for two to three weeks in each of the markets identified in Section 7.1.1.3;

7.1.1.8.    Publication in on-line media including 24/7 Media Network, Quadrant One, Yahoo and Facebook;

7.1.1.9.    Providing a copy of the Notice and requesting that it be posted at the United States District Court, Eastern District of Louisiana;

7.1.1.10.   Providing a copy of the Notice and requesting that it be posted at each courthouse in which the CDW-Related Actions are pending;

7.1.1.11.   Providing a copy of the Notice and requesting that it be posted on the Court's Chinese Drywall MDL website, the CPSC website, and the following state departments of health websites: Florida Department of Health;

7.1.1.12.   Providing a copy of the Notice and requesting that it be posted at such other public places as may be ordered by the Court or by request of the Parties; and

7.1.1.13.   As the Court may direct, in accordance with the requirements of Federal Rule of Civil Procedure 23(c)(2).

## 8.    Opt-Outs and Withdrawals

### 8.1.    Opt-Out Period

8.1.1.    Following the Class Notice, Class Members (including Participating Defendants in their capacity as Class Members) will have sixty (60) days (or such different period as the Court may direct) to opt-out of the Settlement in accordance with Section 8.2.  Class Members with claims involving more than one Affected Property may opt-out on a property-by-property basis.  A Participating Defendant who opts out in its capacity as a Class Member on any Affected Property may still participate in this Settlement in its capacity as a Participating Defendant, subject to its right to withdraw from or cancel its

23

CDW000522

obligations under this Settlement pursuant to Sections 8.3.2 or 13.2 below. At the end of the sixty (60) day period (and provided the Settlement is finally approved by the Court), all Class Members (including Participating Defendants in their capacity as Class Members but not in their capacity as Participating Defendants) who have not opted out of the Class will be deemed to be bound by the Settlement, and the relief provided by the Settlement will be their sole and exclusive remedy for their claims arising out of, in any manner related to, or in any way connected with Chinese Drywall, except to the extent of Reserved Claims.

8.2. **Opt-Out Process**

8.2.1.   Any Class Member wishing to opt-out of the Settlement must notify Plaintiffs' Lead Counsel, Arnold Levin, Levin, Fishbein, Sedran & Berman, 510 Walnut Street, Suite 500, Philadelphia, PA 19106, and Russ Herman of Herman Herman & Katz LLP, 820 O'Keefe Avenue, New Orleans, LA 70113, in writing, postmarked no later than sixty (60) days following the Class Notice. To be effective, the opt-out notice must set forth the full name and current address of the Class Member seeking to opt-out, the address of the property allegedly damaged by Chinese Drywall and/or the address of the property from which the Class Member alleges injurious exposure to Chinese Drywall, and to the best of the Class Member's knowledge, the identities of every purchaser, supplier, marketer, installer, builder, developer and its/their insurers, and any other Participating Defendant and Participating Insurer against which the Class Member intends to pursue his, or her, or its claims. The opt-out notice must be signed by the Class Member, and contain a sentence stating: "The undersigned hereby opts out from the Builder, Installer, Supplier and Participating Insurer Settlement Class in the Chinese Drywall Action."

8.2.2.   For each property identified on an opt-out notice, the Class Member shall use its best efforts to confirm and further identify every builder, developer, purchaser, supplier, distributor, marketer, installer, and its/their insurers and any other Participating Defendant and Participating Insurer pertaining to such property.

8.2.3.   Arnold Levin and Russ Herman shall provide a copy of any opt-outs to all Liaison Counsel and file a copy with the Court no later than twenty-four (24) hours after receipt of the opt-out through LexisNexis File & Serve.

8.2.4.   This Settlement is an integral part of the Knauf Class Settlement. A Class Member who participates in the Knauf Class Settlement also must, if eligible, participate in this Settlement. The Notice shall advise Class Members that if eligible to participate in the Knauf Class

24

CDW000523

Settlement, they can receive no benefits under the Knauf Class Settlement if they opt out of this Settlement. Any opt out from this Settlement by a Class Member otherwise eligible to participate in the Knauf Class Settlement will be invalid if the Class Member did not timely opt out of the Knauf Class Settlement.

8.3.    **Rights With Respect to Opt-outs**

8.3.1.   Consistent with the Court's oversight of the process and its inherent jurisdiction, the Parties recognize that the Court may use its good offices to attempt to resolve any opt-out.

8.3.2.   The Parties agree and acknowledge that any opt-out by a Class Member may materially alter the benefit of each Party's respective bargain, so each Participating Defendant or Participating Insurer shall have the right to withdraw from the Settlement in his, her or its sole discretion if the opt-out relates to an Affected Property of that Participating Defendant. This right to withdraw from the Settlement must be exercised by written notice to the Court and filing with Lexis/Nexis File & Serve no earlier than ten (10) days after notification of such opt-outs, if any, and no later than seven (7) days before the Fairness Hearing to consider this Settlement. If the withdrawal of a Participating Defendant or Participating Insurer results in any other Participating Defendant or Participating Insurer choosing to withdraw, the other Participating Defendant or Participating Insurer shall have two (2) business days from the service of such withdrawal to itself withdraw from this Settlement by filing written notice with the Court and filing with Lexis/Nexis File & Serve. A Participating Defendant who is a Class Member for a remediated or repurchased Affected Property may continue as a Class Member for those Affected Properties even if it withdraws as a Participating Defendant from this Settlement.

8.3.3.   Any party exercising its right to opt-out shall have a right to rescind its opt-out and participate in the Settlement by notifying Plaintiffs' Lead Counsel, Arnold Levin, Levin, Fishbein, Sedran & Berman, 510 Walnut Street, Suite 500, Philadelphia, PA 19106 and Russ Herman of Herman Herman & Katz LLP, 820 O'Keefe Avenue, New Orleans, LA 70113, in writing, postmarked no later than twenty-one (21) days before the Final Fairness Hearing. To be effective, the rescission of the opt-out notice must set forth the full name and current address of the Class Member seeking to rescind the opt-out, be signed by the Class Member, provide the address of the property allegedly damaged by Chinese Drywall and/or the address of the property from which the Class Member alleges injurious exposure to Chinese Drywall, and contain a sentence stating: "The undersigned hereby rescinds its opt-

25

CDW000524

out from the Builder, Installer, Supplier and Participating Insurer Settlement Class in the Chinese Drywall Action."

8.3.4.     Arnold Levin and Russ Herman shall provide a copy of any rescission of opt-outs to all Liaison Counsel and file a copy with the Court no later than twenty-four (24) hours after receipt of the rescission of opt-out through LexisNexis File & Serve.

8.4.    **Rights With Respect to Surety Bonds**

8.4.1.     Any Participating Defendant or Participating Insurer may withdraw from the Settlement in the event any Class Member is still pursuing a claim against any performance and/or payment surety bond, including the performance or surety bond at issue in *Hobbie, et al. v. RCR Holdings, II, LLC, et al.*, No. 10-1113 (E.D. La. ) and that Participating Defendant, or its Participating Insurer, is or can be the subject of a claim or indemnity obligation brought by either: (1) the issuer of that surety or performance bond, or (2) any other party as a result of being sued by the issuer of the surety or performance bond to recover amounts that are or may be paid under that performance or surety bond.

## 9.    Objections

9.1.    Any Class Member who objects to certification of the Class and/or to approval of this Settlement, any terms hereof, or the approval process must make that objection by the following procedure:

9.1.1.     The objection must be in writing;

9.1.2.     The objection must set forth all objections and the reasons therefor, and a statement whether the Class Member intends to appear at the Fairness Hearing either with or without the objector's counsel. The objection must identify any witnesses intended to be called, the subject area of the witnesses' testimony, and all documents to be used or offered into evidence at the Fairness Hearing;

9.1.3.     The objection must be signed by the Class Member and his, her or its counsel; an objection signed by counsel alone shall not be sufficient;

9.1.4.     The objection must contain the caption of the Litigation and include the name, mailing address, e-mail address, if any (an e-mail address is not required), and telephone number of the objecting Class Member; and

9.1.5.     The objection shall be mailed to Plaintiffs' Lead Counsel, Arnold Levin, Levin, Fishbein, Sedran & Berman, 510 Walnut Street, Suite 500, Philadelphia, PA 19106 and Russ Herman of Herman Herman &

CDW000525

Katz LLP, 820 O'Keefe Avenue, New Orleans, LA 70113, in writing, postmarked no later than sixty (60) days following the Class Notice.

9.1.6.   Arnold Levin and Russ Herman shall provide a copy of all objections to other liaison counsel and file any objections with the Court no later than seventy (70) days after commencement of the Class Settlement Notice Period.  The objection must be filed in MDL No. 2047 and served through LexisNexis File & Serve.

9.2.   Failure to comply timely and fully with these procedures shall result in the invalidity and dismissal of any objection.  Class Members who fail to file and serve timely written objections in accordance with Section 9.1 shall be deemed to have waived any objections, shall not be heard at the Fairness Hearing, and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement.

9.3.   The PSC, Participating Defendants and Participating Insurers shall file any response to the objections with the Court no later than five (5) days before the date of the Fairness Hearing.

## 10.   Fairness Hearing

10.1.   After close of the Class Settlement Notice Period, the PSC shall move for final approval of the Settlement and final certification of the Class.

10.1.1.   As part of that motion, the Parties shall:

10.1.1.1.   Move the Court to enter the Order and Judgment described in 1.14;

10.1.1.2.   Move the Court to enjoin and forever bar any and all Class Members, including, but not limited to, those who have not properly opted out of the Class, from maintaining, continuing, prosecuting, and/or commencing the Litigation, CDW-Related Actions, Related Claims, or any action, pending or future, against the Settling Parties (but excluding any Reserved Claims) that arises from, concerns, or otherwise relates, directly or indirectly, to Chinese Drywall; and

10.1.1.3.   Jointly submit to the Court, or the appropriate forum, a proposed order dismissing with prejudice all claims and actions against the Participating Defendants and Participating Insurers in the Eastern District of Louisiana and all other CDW-Related Actions in state court, federal court, international tribunal, or in any arbitral forum, with each party to bear his, her or its own costs.

27

10.1.2.   Any Participating Defendant and any Participating Insurer shall have the right to withdraw from the proposed Settlement if the Court does not issue all of the requested orders and/or injunctions.

10.2.   At the Fairness Hearing the Court shall be requested to, *inter alia*, (i) consider any properly filed objections to the Settlement, (ii) determine whether the Settlement is fair, reasonable, and adequate, was entered into in good faith and without collusion, and should be approved, (iii) provide findings in connection therewith, and (iv) enter a proposed Order and Judgment.

## 11.   Dismissals

11.1.   Within thirty (30) days of the Effective Date, the PSC and/or counsel for each Class Member shall file motions to dismiss with prejudice, with each party to bear his, her or its own costs, the Litigation, all CDW-Related Actions by Class Members which are pending in any court, except for Reserved Claims, but only to the extent that they assert claims against the Participating Defendants and their insurers or against Participating Insurers, and the PSC shall use its best efforts to assist the Participating Defendants and their insurers and the Participating Insurers in obtaining the dismissal with prejudice of any other CDW-Related Actions maintained by any Class Member, with each party to bear his, her or its own costs, but only to the extent that they assert claims against the Participating Defendants and their insurers and/or Participating Insurers, whether in state court, federal court or any arbitral forum.

## 12.   Bar Order

12.1.   As part of the Order and Judgment, the Court shall issue a bar order and permanent injunction against any and all pending or future claims or lawsuits, other than Reserved Claims or assigned claims on Exhibit 4, by any and all Class Members who do not opt-out against the Participating Defendants and Participating Insurers in connection with claims arising out of, or otherwise related to, Chinese Drywall purchased, imported, supplied, distributed, marketed, installed, used, sold, and/or delivered, or alleged in any way to be within the responsibility of any Participating Defendant.

12.2.   The bar order and permanent injunction shall:

12.2.1.   Except for any Reserved Claims or assigned claims on Exhibit 4, enjoin and forever bar any and all Class Members or any entity or person claiming through a Class Member who does not opt-out from commencing and/or maintaining any action, and/or asserting any claim, suit, counterclaim or cross-claim, legal or otherwise, against the Participating Defendants and Participating Insurers arising out of, or otherwise relating to Chinese Drywall.

12.2.2.   Except for any Reserved Claims or opt-outs, bar the assertion by any entity or person against the Participating Defendants and/or

28

CDW000527

Participating Insurers of any contribution, indemnification, subrogation, or other claims concerning (i) Chinese Drywall, the Litigation, CDW-Related Action, Released Claims or Related Claims, or (ii) this Settlement.

12.3.    This provision is not intended to prevent or impede the enforcement of claims or entitlements to benefits under this Settlement.

## 13.    **Termination of this Settlement**

13.1.    This Settlement shall be terminated and cancelled upon any of the following events:

13.1.1.    The Court declines to enter the Preliminary Approval Order or the bar order described in Section 12;

13.1.2.    The Fairness Hearing is not held by the Court;

13.1.3.    The Order and Judgment is not entered by the Court, or is reversed by a higher court, or is entered in a form inconsistent with the terms of this Settlement; or

13.1.4.    The Court declines to dismiss the Participating Defendants and Participating Insurers with prejudice.

13.2.    Any Participating Defendant and/or any Participating Insurer may, at their sole and exclusive discretion and option, withdraw from and cancel their obligations under this Settlement, except for their obligations under Section 4.1.1, upon any of the following events:

13.2.1.    The Class Settlement Notice does not comply with the Order of the Court;

13.2.2.    Any Participating Defendant or Participating Insurer exercises his, her or its rights pursuant to Section 8.3.2;

13.2.3.    Any Participating Defendant and/or Participating Insurer and/or the PSC may, at their sole and exclusive discretion and option, withdraw from and cancel their obligations under this Settlement, except for their obligations under Section 4.1.1, upon any of the following events:

29

CDW000528

13.2.3.1.   The Parties fail to reach a plan for allocation of the Settlement Funds that is satisfactory to that Participating Defendant and/or Participating Insurer and/or the PSC; or

13.2.3.2.   Knauf terminates the Knauf Class Settlement because the condition set forth in Section 2.1 of the Knauf Class Settlement has not been satisfied or the Knauf Class Settlement is terminated for any other reason specified in that agreement.

13.2.4.   The PSC, on behalf of the Class, materially breaches the Settlement and such breach materially frustrates the purposes of this Settlement;

13.2.5.   The Litigation and CDW-Related Actions against the Participating Defendants and Participating Insurers are not dismissed with prejudice;

13.2.6.   The bar order and permanent injunction barring and preventing each and every Class Member, or any entity or person claiming through a Class Member, including, but not limited to, those who have not properly opted out of the Class, from maintaining, continuing, prosecuting and/or commencing any subsequent claims or causes of action in law or equity that arise from or are related to, directly or indirectly, Chinese Drywall, the Litigation, the CDW-Related Actions, and/or any Released Claims or Related Claims is not entered by the Court in the Order and Judgment.  However, such injunction shall not prevent any of the Participating Defendants or Participating Insurers from asserting their Reserved Claims, or from monitoring or participating in the Litigation, at their discretion, so as to protect their rights before the Settlement is Final;

13.2.7.   The Court does not enter the Order described in paragraph 6.2.3 above; or

13.2.8.   This Settlement is changed in any material respect, except by written consent of the Parties.

14.   **Severability**

14.1.   If any Participating Defendant or Participating Insurer chooses to withdraw from the Settlement in accordance with Sections 8.3.2 and 13.2, all remaining provisions of this Settlement shall remain in full force and effect, except Section 4.1.1, will be amended to exclude the withdrawing Participating Defendant's and Participating Insurer's settlement contribution *nunc pro tunc*.

30

CDW000529

15.   **Court to Retain Jurisdiction to Implement and Enforce Settlement Agreement**

15.1.   Notwithstanding any other provision of this Settlement, the Court shall retain continuing jurisdiction over the Litigation, the Class, the Class Members, and the Settlement for the purposes of administering, supervising, construing and enforcing same, and also continuing and exclusive jurisdiction over the Settlement Funds and the distribution of same to Class Members. This Section shall not be construed as a finding, admission, or consent that the Court or any other court in the State of Louisiana has general or specific personal jurisdiction over any Participating Defendant or Participating Insurer, nor as a finding, admission, or consent that the law of the State of Louisiana shall apply to any aspect of the Litigation or this Settlement.

16.   **Allocation of Payments**

16.1.   This Agreement is contingent on an allocation plan that is mutually acceptable to the PSC, Participating Defendants, Participating Insurers and Knauf. The Court shall establish a procedure for allocation of the Settlement Funds among the various interests who have claimed entitlement to the same. An Allocation Committee, which will include representatives appointed by the Court from the PSC, the Participating Defendants, the Participating Insurers and Knauf, will be appointed to make recommendations to the Court as to: (i) a fair and equitable plan of allocation of the Settlement Funds; and (ii) the evidence that Class Members will need to provide as part of their Proof of Claim to submit a valid claim, including proof of reactive Chinese Drywall. The allocation will apportion funds (including any funds to resolve claims for bodily injury and personal property damages), without regard to fees or costs, by each Affected Property. The Settlement Funds will be segregated into a builder fund, an installer fund, and a supplier fund. A Class Member's entitlement to funds from each of these three segregated funds will depend on whether that Class Member's builder, installer, or supplier is a Participating Defendant. A Participating Defendant that is a builder shall not receive any funds out of the builder fund. The funds that will ultimately be distributed to Class Members out of each of these segregated funds may not necessarily correlate to the actual contribution to this Settlement made by such Class Members' builder, installer or supplier. The PSC will recommend that the Court appoint a Special Master to assist the Court in the allocation process. The Court shall entertain interventions for the purpose of determining the allocation and shall establish procedures by order setting forth the manner in which this allocation shall proceed. The allocation by the Special Master may be appealed solely to Judge Fallon, whose decision shall be final.

16.2.   The Parties agree to comply with the provisions of Section 111 of the Medicare, Medicaid & SCHIP Extension Act of 2007 as codified in 42 U.S.C. Sec. 1395y(b)(8) ("MMSEA") and/or any state equivalents and/or other delegated authority (collectively "Medicare").

31

CDW000530

16.2.1.   This Settlement is based upon a good faith determination of the Parties to resolve a disputed claim in which certain Class Members have alleged bodily injury. The Participating Defendants and Participating Insurers deny that there is any evidence of bodily injury arising from or related to Chinese Drywall.  Requests for compensation related to bodily injury will be considered by the Special Master, who will have the authority to allocate Settlement Funds towards such injury claims. Any funds so allocated by the Special Master as part of the procedure set forth in Section 16.1 above will be paid directly to the Class Member, unless he or she is a Medicare Beneficiary as defined by MMSEA and/or Medicare, in which case, such funds shall be paid into an escrow account maintained by Settlement Class Counsel pending resolution of that Class Member's Medicare Claim.   Written documentation from Medicare establishing resolution of any Medicare claim shall be provided to Participating Defendants and Participating Insurers prior to the distribution of any settlement proceeds from the escrow account to the Class Member.

16.2.2.   In instances where a Class Member requests compensation related to bodily injury, that Class Member and Settlement Class Counsel shall provide within ten (10) days of each such request notice of that request and the following information to those individuals identified in Section 17.8 *infra*: (a) the Class Member's identity (including his or her name, date of birth, social security number, and gender) and (b) the Participating Defendant(s) that allegedly caused that Class Member's bodily injury.  Settlement Class Counsel shall ensure compliance with these provisions.

16.2.3.   Each Class Member who receives in excess of the MMSEA and/or Medicare reporting dollar threshold in effect at the time the Settlement is Final from the Settlement Funds ("Excess Recipient") acknowledges his/her duty to cooperate with Settlement Class Counsel, Participating Defendants and Participating Insurers in order to permit Responsible Reporting Entity(ies), as defined by MMSEA, to fulfill their reporting obligations to comply with MMSEA and/or Medicare. Within ten (10) days of the date on which the Excess Recipient receives an allocation of any Settlement Funds for personal injury or bodily injury claims, each Excess Recipient and his/her attorney agrees to provide the Responsible Reporting Entity(ies) with any and all information necessary for the Responsible Reporting Entity(ies) to comply with MMSEA and/or Medicare, including his or her legal name, date of birth, social security number, and gender, so as to allow the Responsible Reporting Entity(ies), or their agents, to determine whether the Excess Recipient is a Medicare Beneficiary, as defined by MMSEA and/or Medicare (a "Triggering Claimant").

32

CDW000531

16.2.4.   Each Triggering Claimant and his/her attorney shall provide any additional information requested by the Responsible Reporting Entity(ies) to comply with MMSEA and/or Medicare, including without limitation the identity of his/her attorney, his/her address, his/her ICD9 code (if applicable), and information related to the injuries allegedly arising from Chinese Drywall.  Such information may be reported to the Centers for Medicare & Medicaid Services (CMS), as well as certain agent(s) necessary to facilitate reporting to CMS, pursuant to the Responsible Reporting Entity's duty to comply with MMSEA and/or Medicare.

16.2.5.   Each Triggering Claimant represents and warrants that all bills, costs or liens resulting from or arising out of alleged injuries, claims or lawsuits related to Chinese Drywall are his/her responsibility to pay, including, without limitation, all Medicare conditional payments, subrogation claims, liens, or other rights to payment, relating to medical treatment or lost wages that have been or may be asserted by any health care provider, insurer, governmental entity, employer or other person or entity ("Medical Claims").  Further, each Triggering Claimant will indemnify, defend and hold each Participating Defendant and Participating Insurer harmless from any and all damages, claims and rights to payment, including any attorneys' fees or fines, brought by any person, entity or governmental agency arising out of or relating to Medical Claims.

16.2.6.   The procedures set forth in this Section 16.2 are intended to ensure compliance with 42 U.S.C. § 1395y (and/or any state equivalents and/or other delegated authority).  The Parties resolved this matter in compliance with both state and federal law.

16.2.7.   Any Class Member alleging a bodily injury claim has been apprised of his/her right to seek assistance from legal counsel of his/her choosing or directly from the Social Security Administration or other governmental agencies regarding the impact this Settlement Agreement may have on that Class Member's current or future entitlement to Social Security or other governmental benefits.

16.2.8.   Any Class Member alleging a bodily injury claim understands that the receipt of settlement funds may affect that Class Member's rights to other governmental benefits, insurance benefits, disability benefits, or pension benefits.  Despite this possibility, any such Class Member desires to enter into this Settlement to settle his/her injury claim as set forth in this Settlement.

16.2.9.   Any Class Member alleging a bodily injury claim understands that should CMS (Medicare) find that a Medicare Set-Aside Allocation should have been established and that Medicare's interests were not

33

CDW000532

adequately protected, CMS (Medicare) may require the Class Member to expend up to the entire settlement amount allocated to that Class Member on Medicare covered expenses related to the injury before Medicare will provide coverage for the injury.  Any Class Member alleging a bodily injury claim voluntarily accepts this risk and waives any and all claims of any nature and/or damages against the Participating Defendants and Participating Insurers should Medicare take such action, including, but not limited to a Private Cause of Action against the Participating Defendants and Participating Insurers under the Medicare Secondary Payer Act (MSP) pursuant to 42 USC §1395y(b)(3)(A).

16.3.   Any disputes as to the allocation of payments among Class Members (including Participating Defendants in their capacity as Class Members) pursuant to the allocation procedure referenced in Section 16.1 will not defeat this Settlement and shall not involve the Participating Defendants (in their capacity as Participating Defendants) or Participating Insurers except as provided for in Section 16.2.

16.4.   All costs of administering the allocation of Settlement Funds and the cost of notice to Class Members will be paid out of the Settlement Funds.

16.5.   Notwithstanding any other provision of this Settlement or of any other document, the Participating Defendants and Participating Insurers shall not be liable for, and shall have no responsibility whatsoever for any payment of, any fees, costs, and expenses incurred by the PSC, Settlement Class Counsel, plaintiffs' counsel or privately retained counsel for Class Members, or common benefit counsel, whether at the trial, appellate or administrative levels, Mediator's fees and costs, court costs, Notice Costs, the fees and costs of any person or entity retained by the Mediator, and/or all other costs and fees associated with this Litigation, CDW-Related Actions, Released Claims and/or Related claims, the approval and/or implementation of this Settlement, the administration of claims, and/or the disposition of the Settlement Funds.  Notwithstanding the provisions of this Settlement or of any other document, the Participating Defendants and Participating Insurers shall have no obligation to pay any amount beyond the obligations set forth in Section 4.1 of this Settlement, except to the extent of any Reserved or Assigned Claims.

16.6.   After the Effective Date, the PSC, Class Counsel, common benefit attorneys, and privately retained attorneys for all Class Members (the "Petitioning Attorneys") shall be entitled to petition the Court for attorneys' fees totaling in the aggregate up to 32% of the Settlement Funds, with no more than 15% of the Settlement Funds to be allocated to common benefit fees, and reimbursement of reasonable expenses, excluding the cost of notice.  Participating Defendants and Participating Insurers reserve their right to object to or oppose any such petition, in whole or in part, including, without limitation, on grounds that Petitioning Attorneys' fees on certain Affected Properties already remediated or agreed to be remediated by certain Participating Defendants shall be limited to the common benefit

34

CDW000533

percentage set by the Court, if any at all. The determination of any attorneys' fee or court cost issue, including the allocation between and amongst the Petitioning Attorneys, shall be determined by the Court and all Parties agree such determination is not appealable and hereby waive all appeals of any such determination.

16.7.   If a Class Member opts out of this Settlement pursuant to Section 8.2.1, then the PSC has the right to petition the Court for attorneys fees and reimbursement of reasonable costs in the event that Class Member subsequently obtains a separate recovery to the extent of the predetermined individual settlement amounts of Section 4.1 attributable to that Class Member, and the Class Member has the right to oppose such a petition.

## 17.   **Miscellaneous**

17.1.   The Parties and their attorneys and agents shall not attempt to use the payments made pursuant to this Settlement or the terms hereof to argue in any other proceeding or context that there is insurance coverage for Chinese Drywall claims.

17.2.   The Participating Defendants, Participating Insurers and Knauf do not admit or concede any liability or damages whatsoever relating to Chinese Drywall.

17.3.   The Participating Insurers do not admit or concede any liability or insurance coverage obligation for any claims relating to Chinese Drywall.

17.4.   As part of the Order and Judgment, the Court will be requested to enter findings of fact and conclusions of law stating that:

17.4.1.   Other than as it relates to Reserved Claims or Assigned Claims, or to enforce any term of the Settlement, or as to insurance matters concerning depletion or exhaustion of one or more policies of insurance, or prior compensation for a claimed loss or set-off, no person or entity may use or refer to any aspect of this Settlement in any litigation in which any Participating Defendant or Participating Insurer is a party.

17.4.2.   The Settlement shall not constitute a waiver of any coverage defense or position taken by any Participating Defendant and/or its insurers, whether a Participating Insurer or not, related to Chinese Drywall and no insurer, whether a Participating Insurer or not, shall be estopped from raising any coverage issue or defense by reason of the Settlement. In addition, any payment by a Participating Insurer as set forth in Section 4, shall not be considered a confession of judgment or trigger any obligation to pay attorney's fees under Florida Stat. 627.428 or any other fee shifting statute in any state.

35

CDW000534

17.4.3.   Except for any Reserved Claims referenced in Section 5.6.3, the Parties agree that by entering this Settlement, each Participating Insurer has acted in good faith and fairly, reasonably, and honestly towards its insured Participating Defendant, and any actual and/or potential Class Members and with due regard for the Participating Insurer's Participating Defendant, and any potential Class Members' interests regarding Chinese Drywall.

17.4.4.   Except for any Reserved Claims referenced in Section 5.6.3, the Parties agree that the actions and positions of the Participating Insurers, being in good faith, upon the Settlement becoming Final, precludes any Participating Defendant and any actual and/or potential Class Member from asserting,  maintaining or assigning any statutory and/or common law bad faith claim against any Participating Insurer.

17.4.5.   The Settlement shall not constitute a waiver or release by any Participating Defendant or Participating Insurer of any claims or defenses related to any actual or alleged obligations under a policy of insurance that such Participating Defendant or Participating Insurer may have against any person or entity, including another Participating Insurer, in any manner related to or connected in any way with the Chinese Drywall claims of Class Members who opt-out of this Settlement.

17.5.   If the last day of any period mentioned in this Settlement falls on a weekend or legal holiday, the period shall include the next business day.

17.6.   All persons shall be on notice of their continuing duty to monitor the Court's docket for the most current filings and information.  The Court, in its discretion, may alter, postpone or amend any of these deadlines scheduled by the Court in connection with the certification of the class and approval of this Settlement without additional formal notice.  Orders of any such changes are expected to be presented on the Court's website:
http://www.laed.uscourts.gov/Drywall/Drywall.htm.

17.7.   Any Class Member (or his or her attorney) who submits false or intentionally misleading information, through any form of deception, dishonesty or fraud, shall be subject to appropriate sanctions (including monetary sanctions and costs).

17.8.   Unless otherwise specified, any written notices and other communications under this Settlement shall be in writing and shall be sent to:

36

CDW000535

For Settlement Class Counsel:
Arnold Levin
Fred S. Longer
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA  19106
alevin@lfsblaw.com
flonger@lfsblaw.com

Russ Herman
Leonard A. Davis
Herman Herman & Katz LLP
820 O'Keefe Avenue, Suite 100
New Orleans, LA  70113
rherman@hhkc.com
ldavis@hhkc.com

For Builders' Liaison Counsel:
Dorothy Wimberly
Stone Pigman Walther Wittmann LLC
546 Carondelet Street
New Orleans, LA 70130
mailto:dwimberly@stonepigman.com

For Installers' Liaison Counsel
Robert V. Fitzsimmons
Rumberger, Kirk &    Caldwell
Brickell Bayview Centre, Suite 3000
80 Southwest 8th Street
Miami, FL  33130
rfitzsimmons@rumberger.com

For Insurers' Liaison Counsel:
H. Minor Pipes, III
Barrasso Usdin Kupperman Freeman & Sarver, LLC
909 Poydras Street, 24th Floor
New Orleans, LA  70112
mpipes@barrassousdin.com

Routine communications may be by email.  Communications asserting a breach of this Settlement shall be by hand delivery or overnight courier (*e.g.* Express Mail, Overnight UPS or Federal Express).

17.9.  All prior settlements entered into by any of the Parties shall be recognized and nothing in this Settlement shall in any way affect prior settlements.

CDW000536

17.10. This Settlement is the product of arms' length negotiations between the PSC, the Participating Defendants and Participating Insurers. Neither the PSC, Participating Defendants nor Participating Insurers shall be deemed to be the drafter of this Settlement or any provision thereof. No presumption shall be deemed to exist in favor of or against either the PSC, Participating Defendants or Participating Insurers as a result of the preparation or negotiation of this Settlement.

17.11. This Settlement, including its exhibits, constitutes the entire agreement between the Parties. The Parties have not received or relied upon any agreements or promises other than as contained in writing in this Settlement, including its exhibits.

17.12. Except with respect to Reserved Claims identified on Exhibit 3, this Settlement may not be modified or amended unless such modification or amendment is in writing executed by all Parties. Reserved Claims may be modified or amended in a writing executed by all parties identified in the reservation.

17.13. This Settlement may be executed in multiple counterparts, all of which taken together shall constitute one and the same Settlement.

## 18.    Federal Rule of Evidence 408

18.1. The Parties specifically acknowledge, agree and admit that this Settlement and its exhibits, along with all related drafts, motions, pleadings, conversations, negotiations and correspondence, shall be considered a compromise within the meaning of Federal Rules of Evidence Rule 408, and any equivalent rule of evidence or procedure of any state, and shall not (i) constitute, be construed, be offered, or received into evidence as an admission of the validity of any claim or defense, or the truth of any fact alleged or other allegation in the Litigation, the CDW-Related Actions, or in any other pending or subsequently filed action, or of any wrongdoing, fault, violation of law, or liability of any kind on the part of any Party, except as permitted in Section 18.3(vi) of this Settlement or (ii) be used to establish a waiver of any defense or right, or to establish or contest jurisdiction or venue.

18.2. The Parties also agree that this Settlement, any orders, pleadings or other documents entered in furtherance of this Settlement, and any acts in the performance of this Settlement are not intended to be, nor shall they in fact be, admissible, discoverable, or relevant in any case or other proceeding against the Participating Defendants or Participating Insurers to establish grounds for certification of any class involving any Class Member, against the Participating Defendants or Participating Insurers to prove either the acceptance by any Party hereto of any particular theory of coverage, or as evidence of any obligation that any Party hereto has or may have to anyone.

CDW000537

18.3. The provisions of this Settlement, and any orders, pleadings or other documents entered in furtherance of this Settlement, may be offered or received in evidence solely (i) to enforce the terms and provisions hereof or thereof, (ii) as may be specifically authorized by a court of competent jurisdiction after contradictory hearing upon application of a Party hereto, (iii) in order to establish payment, proof of depletion or exhaustion of an insurance policy, prior payment for a claimed loss, set-off or an affirmative defense of exception in a subsequent case, including *res judicata*, (iv) in connection with any motion to enjoin or stay any of the CDW-Related Actions, (v) to obtain Court approval of the Settlement, or (vi) to comply with Participating Insurers' reporting requirements pursuant to Section 111 of the MMSEA.

**IN WITNESS HEREOF**, the Parties have executed this Settlement Agreement by their duly authorized representatives on the dates stated below.

For the Plaintiffs' Steering Committee:

**Witnesses:**

_____

Print Name: _____

_____

Print Name: _____

**Russ M. Herman**
**Plaintiffs' Liaison Counsel with the full**
**authority and consent of the PSC**

By: _____

Print Name: _____

Title: _____

Date: _____

**Witnesses:**

_____

Print Name: _____

_____

Print Name: _____

**Arnold Levin**
**Plaintiffs' Lead Counsel with the full**
**authority and consent of the PSC**

By: _____

Print Name: _____

Title: _____

Date: _____

39

For the Participating Defendants and Participating Insurers, on behalf of Insurance Liaison Counsel and Lead Negotiator:

Witnesses:

**H. Minor Pipes, III, on behalf of Insurer's Lead Counsel with the full authority and consent of the Participating Defendants and Participating Insurers**

_____

By: _____

Print Name: _____

Print Name: _____

Title: _____

Date: _____

_____

Print Name: _____

IN WITNESS HEREOF, the Parties have read and understood the terms and conditions of this Settlement, agree to be bound by all of its provisions, and have executed this Settlement on the date shown by their signatures below.

## PARTICIPATING DEFENDANTS

**1st Choice Construction, Inc.**

By:_____
Its:_____
Date:_____

**1st Drywall, LLC**

By:_____
Its:_____
Date:_____

**3180 Lamb Court Acquisition LLC; and Linel Consulting LLC**

By:_____
Its:_____
Date:_____

**5177 Builders, Ltd.**

By:_____
Its:_____
Date:_____

40

CDW000539

**84 Lumber Company**

By:_____
Its:_____
Date:_____

**A.A. Stucco & Drywall, Inc.**

By:_____
Its:_____
Date:_____

**A.R.B.C. Corporation**

By:_____
Its:_____
Date:_____

**Aarco, L.L.C.**

By:_____
Its:_____
Date:_____

**ABC Drywall Corporation**

By:_____
Its:_____
Date:_____

**ABF Drywall, Inc.**

By:_____
Its:_____
Date:_____

**Aburton Homes, Inc.**

By:_____
Its:_____
Date:_____

**AC1 Supply, Inc.**

By:_____
Its:_____
Date:_____

**Acadian Builders & Contractors, L.L.C.**

By:_____
Its:_____
Date:_____

**ACE Home Center, Inc.**

By:_____
Its:_____
Date:_____

**Active Drywall South, Inc.**

By:_____
Its:_____
Date:_____

**Adams Homes of Northwest Florida, Inc.;
Adams Homes LLC; and Adams Homes
Realty, Inc.**

By:_____
Its:_____
Date:_____

41

**Advantage Builders of America, Inc.; and Advantage Builders of SW Florida, Inc.**

By:_____
Its:_____
Date:_____

**Affordable Homes & Land, L.L.C.**

By:_____
Its:_____
Date:_____

**AHS Construction Group, Inc.; AH Salce Construction Group, Inc.**

By:_____
Its:_____
Date:_____

**Al Brothers, Inc. a/k/a S3 Enterprises, Inc. a/k/a Al Brother Metal Framing & Drywall**

By:_____
Its:_____
Date:_____

**Albanese-Popkin The Oaks Development Group, L.P.; and Albanese Popkin Development Group, LLC**

By:_____
Its:_____
Date:_____

**All Florida Drywall Supplies, Inc.**

By:_____
Its:_____
Date:_____

**Allied Building Products Corp d/b/a Southern Atlantic Supply Division Corp; and Old Castle, Inc.**

By:_____
Its:_____
Date:_____

**Allsteel & Gypsum Products, Inc.**

By:_____
Its:_____
Date:_____

**Alpha Homes, Inc. f/k/a Suarez Housing Corp.**

By:_____
Its:_____
Date:_____

**Alvarez Homes, Inc.**

By:_____
Its:_____
Date:_____

42

CDW000541

Alvian Homes, Inc. d/b/a Stones & More; Alvian Custom Homes, LLC; and Alvian Incorporated

By:_____
Its:_____
Date:_____

Alvin G. Royles, Jr., L.L.C.

By:_____
Its:_____
Date:_____

Alvin R. Savoie & Associates, Inc.; Savoie Construction, Inc.; Savoie Real Estate Holdings, LLC; Savoie Realty, LLC; and Savoie Construction & Development, LLC

By:_____
Its:_____
Date:_____

American Building Materials, Inc.

By:_____
Its:_____
Date:_____

American Dream Builders, Inc.

By:_____
Its:_____
Date:_____

American Gallery Development, LLC; and American Gallery Development Group, LLC

By:_____
Its:_____
Date:_____

American Housing Corporation

By:_____
Its:_____
Date:_____

America's First Home of Southwest Florida, L.L.P., incorrectly named as America's First Home, Inc.

By:_____
Its:_____
Date:_____

Amerisouth, Inc.

By:_____
Its:_____
Date:_____

AnaDon Construction, LLC

By:_____
Its:_____
Date:_____

CDW000542

**Angel Developments, LLC**

By:_____
Its:_____
Date:_____

**Anthony F. Marino General Contractor, LLC**

By:_____
Its:_____
Date:_____

**Anthony Stirp d/b/a Excel Construction of SW Florida, Inc.**

By:_____
Its:_____
Date:_____

**Anthony's Drywall, Inc.**

By:_____
Its:_____
Date:_____

**Aranda Homes, Inc.**

By:_____
Its:_____
Date:_____

**ARM Structural, Inc.; and Schenley Park Homes, LLC**

By:_____
Its:_____
Date:_____

**Arthur Homes, L.L.C.**

By:_____
Its:_____
Date:_____

**Ashton Houston Residential L.L.C.**

By:_____
Its:_____
Date:_____

**Ashton Tampa Residential L.L.C.**

By:_____
Its:_____
Date:_____

**Associated Builders and Developers, Inc.**

By:_____
Its:_____
Date:_____

**ATCO Interior Corp.**

By:_____
Its:_____
Date:_____

**Aubuchon Homes, Inc.**

By:_____
Its:_____
Date:_____

44

CDW000543

**Aurora Commercial Construction, Inc.**

By:_____
Its:_____
Date:_____

**Avalon Building Corporation of Tampa Bay a/k/a Avalon Building Corporation of Tampa Bay, Inc.**

By:_____
Its:_____
Date:_____

**Avatar Properties Inc.**

By:_____
Its:_____
Date:_____

**Azimuth E & E, Inc.**

By:_____
Its:_____
Date:_____

**B E Construction Corp.**

By:_____
Its:_____
Date:_____

**B J & K Condo Construction, Inc.**

By:_____
Its:_____
Date:_____

**B&B Disposal Services, LLC d/b/a Builder's Choice Home Center**

By:_____
Its:_____
Date:_____

**Bagley Construction, LLC**

By:_____
Its:_____
Date:_____

**Banner Homes of Florida, Inc.**

By:_____
Its:_____
Date:_____

**Barloy Contractors, Inc.**

By:_____
Its:_____
Date:_____

CDW000544

**Bass Homes, Inc.**

By:_____
Its:_____
Date:_____

**Bauhaus Solutions, Inc.; Bauhaus Solutions; and Bauhaus, Inc.**

By:_____
Its:_____
Date:_____

**Bayou Building Products, LLC**

By:_____
Its:_____
Date:_____

**Bayshore Construction Company, Inc.**

By:_____
Its:_____
Date:_____

**Baystate Drywall, Inc.**

By:_____
Its:_____
Date:_____

**Baywood Construction, Inc.**

By:_____
Its:_____
Date:_____

**BBL-Florida, LLC**

By:_____
Its:_____
Date:_____

**Beazer Homes Corp.**

By:_____
Its:_____
Date:_____

**Bella Builders, Inc.**

By:_____
Its:_____
Date:_____

**Ben & Joy Money & BMD, Inc.**

By:_____
Its:_____
Date:_____

**Bender Construction and Development, Inc.**

By:_____
Its:_____
Date:_____

**Benoit Builders, LLC**

By:_____
Its:_____
Date:_____

CDW000545

**Best Drywall Services, Inc.**

By:_____
Its:_____
Date:_____

**Beta Credit Management, LLC**

By:_____
Its:_____
Date:_____

**Beta Drywall, LLC; and Beta Construction, LLC**

By:_____
Its:_____
Date:_____

**BFS Townhomes, L.L.C.**

By:_____
Its:_____
Date:_____

**Big Bear Construction Co., Inc.**

By:_____
Its:_____
Date:_____

**Big River Construction & Remodeling Co., Inc.**

By:_____
Its:_____
Date:_____

**Bill Gregory Drywall**

By:_____
Its:_____
Date:_____

**Black Bear Gypsum Supply, Inc.; and Black Bear Gypsum, LLC**

By:_____
Its:_____
Date:_____

**Blanchard Homes Inc.**

By:_____
Its:_____
Date:_____

**BMI Construction, L.L.C.**

By:_____
Its:_____
Date:_____

**Boardwalk Drywall, Inc.**

By:_____
Its:_____
Date:_____

**Boohaker & Associates, LLC**

By:_____
Its:_____
Date:_____

CDW000546

**Boulanger Drywall Corp.**

By:_____
Its:_____
Date:_____

**Bovis Lend Lease, Inc. n/k/a Lend Lease**

By:_____
Its:_____
Date:_____

**Boyle Lumber Company**

**Boynton Village, LLC; Hollywood Dixie
Associates, LLC; Cornerstone Group
Construction, Inc.; BoyntonVillage
Associates, Ltd.; Cornerstone Group
Development Corp.; Cornerstone Group
Development, LLC; and San Remo
Associates, Ltd.**

By:_____
Its:_____
Date:_____

By:_____
Its:_____
Date:_____

**Bradford Lumber & Supply, Inc.**

By:_____
Its:_____
Date:_____

**Bradford Plastering, Inc.**

By:_____
Its:_____
Date:_____

**Brandi Rogers d/b/a Gulf South Drywall**

By:_____
Its:_____
Date:_____

**Breakwater Custom Homes, Inc.**

By:_____
Its:_____
Date:_____

**Brent Garrod Drywall, Inc.**

By:_____
Its:_____
Date:_____

**Brooks & Freund, LLC**

By:_____
Its:_____
Date:_____

48

CDW000547

Brownstone Builders Inc.

By:_____
Its:_____
Date:_____

Builders Gypsum Supply LLP; and Builders Gypsum Supply Co., Inc.

By:_____
Its:_____
Date:_____

Building Materials Wholesale

By:_____
Its:_____
Date:_____

Burmaster Construction, Inc.

By:_____
Its:_____
Date:_____

Burmon Properties, LLC

By:_____
Its:_____
Date:_____

By-George, Inc.

By:_____
Its:_____
Date:_____

C & C Homebuilders Construction, Inc.; C&C Home Builders, Inc.; and Christopher T. Cadis

By:_____
Its:_____
Date:_____

C & D Plastering & Stucco, Inc.

By:_____
Its:_____
Date:_____

C. Adams Construction & Design, LLC

By:_____
Its:_____
Date:_____

C.A. Steelman, Inc.

By:_____
Its:_____
Date:_____

Caliber Properties, LLC

By:_____
Its:_____
Date:_____

Calmar Construction Company, Inc.

By:_____
Its:_____
Date:_____

49

CDW000548

**Capitol Materials, Inc.**

By:_____
Its:_____
Date:_____

**Capricorn III Construction**

By:_____
Its:_____
Date:_____

**Capstone Builders, LLC**

By:_____
Its:_____
Date:_____

**Caribe Central LLC; and Caribe East, LLC**

By:_____
Its:_____
Date:_____

**Caribe East LLC**

By:_____
Its:_____
Date:_____

**Carl B. Hamilton, Inc.**

By:_____
Its:_____
Date:_____

**Carl Gonzales**

By:_____
Its:_____
Date:_____

**Carruth Brothers Lumber Company, Inc.**

By:_____
Its:_____
Date:_____

**Carter's Custom Homes, Inc.**

By:_____
Its:_____
Date:_____

**CastleRock Communities LP**

By:_____
Its:_____
Date:_____

CDW000549

**CDC Builders, Inc.**

Centerline Homes, Inc.; Centerline Homes
Construction, Inc.; Briella Townhomes,
LLC; Centerline Homes at B and A, LLC
n/k/a Completed Communities II, LLC;
Centerline Homes at Tradition, LLC n/k/a
Completed Communities II, LLC;
Centerline Homes at Delray, Inc.;
Centerline Port St. Lucie, Ltd. n/k/a
Completed Communities II, LLC;
Centerline Homes at Georgetown, LLC; and
Centerline Homes Signature Series, Inc.

By:_____
Its:_____
Date:_____

By:_____
Its:_____
Date:_____

**Central Florida Finishers, Inc.**

**Chabot Enterprises, Inc.**

By:_____
Its:_____
Date:_____

By:_____
Its:_____
Date:_____

**Cherry Bark Builders**

**Christopher Duet d/b/a Woodtech**

By:_____
Its:_____
Date:_____

By:_____
Its:_____
Date:_____

**Ciara Homes LLC (incorrectly named as
Cierra Homes, LLC); and Dylan Bourg**

**Citrus Park Development Group, LLC**

By:_____
Its:_____
Date:_____

By:_____
Its:_____
Date:_____

**City Salvage, Inc.**

**CL Architects and Contractors, Corp.**

By:_____
Its:_____
Date:_____

By:_____
Its:_____
Date:_____

51

CDW000550

**Clayton's Drywall, Inc.**

By:_____
Its:_____
Date:_____

**Cloutier Brothers, Inc.**

By:_____
Its:_____
Date:_____

**Coastal Living Homes, LLC**

By:_____
Its:_____
Date:_____

**Cockerham Construction, LLC**

By:_____
Its:_____
Date:_____

**Continental Drywall Contractors, Inc.**

By:_____
Its:_____
Date:_____

**Coral Plastering & Wall Systems, Inc.**

By:_____
Its:_____
Date:_____

**CORE Construction Services, Southeast, Inc. d/b/a Core Construction**

By:_____
Its:_____
Date:_____

**Cothern Construction Company; and Volney Cothern**

By:_____
Its:_____
Date:_____

**Cox Lumber Company, formerly d/b/a HD Supply Lumber and Building Materials**

By:_____
Its:_____
Date:_____

**Craftmaster, LLC**

By:_____
Its:_____
Date:_____

**Craig Homes, Inc.**

By:_____
Its:_____
Date:_____

**Cypress Builders, Inc.**

By:_____
Its:_____
Date:_____

52

CDW000551

**D & A Construction Services Inc.**

By:_____
Its:_____
Date:_____

**D.C. Builders LLC**

By:_____
Its:_____
Date:_____

**D'Alessio Drywall & Painting Company**

By:_____
Its:_____
Date:_____

**Dalbert Porée; and Dalbert Porée General Repairs & Renovations, Inc.**

By:_____
Its:_____
Date:_____

**Danal Homes Development, Inc.**

By:_____
Its:_____
Date:_____

**Dave Walker Construction Inc.**

By:_____
Its:_____
Date:_____

**D & W Drywall, Inc.**

By:_____
Its:_____
Date:_____

**D.R. Horton, Inc.; and D.R. Horton, Inc. – Gulf Coast**

By:_____
Its:_____
Date:_____

**Daelen of Tangipahoa, L.L.C.**

By:_____
Its:_____
Date:_____

**Daly Construction, Inc.**

By:_____
Its:_____
Date:_____

**Darwin Sharp Construction LLC**

By:_____
Its:_____
Date:_____

**David E. Diggs, LLC; and David Diggs**

By:_____
Its:_____
Date:_____

CDW000552

**Davis Construction Supply, LLC**

By:_____
Its:_____
Date:_____

**Deco Paver Bricks, Inc.**

By:_____
Its:_____
Date:_____

**Deerfield Court Townhomes, LLC a/k/a
Lavish Holding Corp.**

By:_____
Its:_____
Date:_____

**Deloach Corporation, Inc.**

By:_____
Its:_____
Date:_____

**Design Drywall of South Florida, LLC; and
Design Drywall, Inc.**

By:_____
Its:_____
Date:_____

**Deangelis Diamond Construction, Inc.; and
Deangelis Diamond Homes, Inc.**

By:_____
Its:_____
Date:_____

**Deer Creek Estates II, LLC**

By:_____
Its:_____
Date:_____

**DeLaCruz Drywall Plastering & Stucco,
Inc.**

By:_____
Its:_____
Date:_____

**Derouen Homes, LLC**

By:_____
Its:_____
Date:_____

**Devon International Industries, Inc. f/k/a
Devon International Trading, Inc.; Devon
International Group, Inc.; Devon
International, Inc.; Devon Health Services,
Inc.; and John A. Bennett**

By:_____
Its:_____
Date:_____

54

CDW000553

Devonshire Properties, Inc.; and Devonshire   Diamond Court Construction Company
Builders, Inc.

By:_____
Its:_____                By:_____
Date:_____                Its:_____
                                             Date:_____


Distinctive Drywall Designs, Inc.            Distinctive Finishes, Inc.

By:_____                 By:_____
Its:_____                Its:_____
Date:_____                 Date:_____


Diversified General Contractors, Inc.        DMH Development Co.

By:_____                 By:_____
Its:_____                Its:_____
Date:_____                 Date:_____


Dobson Construction, Inc.                    Douglas B. Francis; and Douglas B. Francis,
                                             Inc.

By:_____                 By:_____
Its:_____                Its:_____
Date:_____                 Date:_____


Drywall Experts, Inc.                        Dunn Wright Construction, Inc.

By:_____                 By:_____
Its:_____                Its:_____
Date:_____                 Date:_____


Duo Fast Construction, Inc.                  duPont Builders, Inc.; and duPont
                                             Construction and Renovations, LLC

By:_____                 By:_____
Its:_____                Its:_____
Date:_____                 Date:_____


55

CDW000554

**Dupree Construction Company, Inc.; Dupree Construction, LLC; Dupree Construction Company, LLC; Dupree Construction, Inc.; Dupree Contractors, Inc.; and CB Dupree Construction, LLC**

By:_____
Its:_____
Date:_____

**E. Jacob Construction, Inc.; and E. Jacob Fakouri Construction, Inc.**

By:_____
Its:_____
Date:_____

**E.L. Cretin, LLC; Cretin Homes, LLC; and Cretin Homes, Inc.**

By:_____
Its:_____
Date:_____

**Eastern Construction Group, Inc.**

By:_____
Its:_____
Date:_____

**Eastmond Enterprises, Inc.; and Eastmond Homes, LLC**

By:_____
Its:_____
Date:_____

**Ed Price Building Materials Inc.**

By:_____
Its:_____
Date:_____

**Eddleman Homes, LLC; Highland Lakes Homes, LLC; Courtside Development, Inc.; Eddleman Properties, Inc.; Park Homes, LLC; and Dunnavant Place, LLC**

By:_____
Its:_____
Date:_____

**Edwards Construction**

By:_____
Its:_____
Date:_____

**EH/Transeastern LLC, d/b/a Transeastern Homes**

By:_____
Its:_____
Date:_____

**Empire Construction, L.L.C.**

By:_____
Its:_____
Date:_____

56

CDW000555

**Empire Properties, LLC; and Empire Products, LLC**

By:_____
Its:_____
Date:_____

**Everglades Lumber & Building Supplies, LLC**

By:_____
Its:_____
Date:_____

**F&L Developers, Inc.**

By:_____
Its:_____
Date:_____

**F. Vicino Drywall, Inc.; F. Vicino Drywall II, Inc.; and F. Vicino & Company, Inc.**

By:_____
Its:_____
Date:_____

**Faith Built Homes, LLC**

By:_____
Its:_____
Date:_____

**Farthing MTR Enterprises, Inc. d/b/a Star Drywall, Inc.**

By:_____
Its:_____
Date:_____

**Federal Construction Specialists, Inc.**

By:_____
Its:_____
Date:_____

**Fekel Stucco & Plastering, Inc.**

By:_____
Its:_____
Date:_____

**Finest Drywall, Inc.**

By:_____
Its:_____
Date:_____

**First Choice Homes of SW Florida, Inc.**

By:_____
Its:_____
Date:_____

**First Home Builders of Florida, LLC**

By:_____
Its:_____
Date:_____

**Florida Home Partnership, Inc.**

By:_____
Its:_____
Date:_____

57

CDW000556

**Florida Style Services, Inc.**

By:_____
Its:_____
Date:_____

**Font Builders, Inc.**

By:_____
Its:_____
Date:_____

**Forester Homes, Inc.; and Forester Construction Corp.**

By:_____
Its:_____
Date:_____

**Four Star Innovations, LLC**

By:_____
Its:_____
Date:_____

**Frost Metal Framing & Drywall, Inc.**

By:_____
Its:_____
Date:_____

**G Drywall Corp.; and G. Drywalls Corporation**

By:_____
Its:_____
Date:_____

**G. Patrick Bourgeois & Associates, Inc.**

By:_____
Its:_____
Date:_____

**G. Proulx, LLC; and G. Proulx, Inc.**

By:_____
Its:_____
Date:_____

**G.L. Building Corporation; G.L. Homes of Florida Corporation; G.L. Homes Limited Corporation; G.L. Homes of Boynton Beach Associates IX, Ltd.; Boynton Beach Associates XVI, LLLP; Boynton Beach XVI Corporation; Miramar Associates IV, LLLP; Miramar IV Corporation; G.L. Homes of Davie Associates II, Ltd.; G.L. Homes of Davie Associates III, Ltd.; G.L. Homes of Davie Associates IV, Ltd.; G.L. Homes of Davie IV Corporation**

By:_____
Its:_____
Date:_____

**Gant & Shivers Homes, LLC**

By:_____
Its:_____
Date:_____

58

CDW000557

**Gateway Building and Design Corp.**

By:_____
Its:_____
Date:_____

**Gator Gypsum, Inc.**

By:_____
Its:_____
Date:_____

**George Fraker General Contractor, Inc.**

By:_____
Its:_____
Date:_____

**GH Vero Beach Development, LLC**

By:_____
Its:_____
Date:_____

**Gibson & Anderson Construction, Inc.**

By:_____
Its:_____
Date:_____

**GLM Remodeling Building Contractors, Inc.**

By:_____
Its:_____
Date:_____

**Global Home Builders, Inc.**

By:_____
Its:_____
Date:_____

**GMI Construction, Inc.**

By:_____
Its:_____
Date:_____

**Gold Coast Homes of SW Florida, Inc.**

By:_____
Its:_____
Date:_____

**Gomez's Interiors Corp.**

By:_____
Its:_____
Date:_____

**Grand Harbour Homes, Inc.**

By:_____
Its:_____
Date:_____

**Grays Bay Builders, Inc.**

By:_____
Its:_____
Date:_____

CDW000558

**Great Southern Builders, LLC**

By:_____
Its:_____
Date:_____

**Great Southern Homes, Inc.**

By:_____
Its:_____
Date:_____

**Great Western Building Materials**

By:_____
Its:_____
Date:_____

**Gregan Construction Corp.; and Gregan Construction, Inc.**

By:_____
Its:_____
Date:_____

**Gregg Nieberg, Inc.**

By:_____
Its:_____
Date:_____

**Gremillion Homes, Inc.**

By:_____
Its:_____
Date:_____

**Groff Construction, Inc.**

By:_____
Its:_____
Date:_____

**Groza Builders, Inc.**

By:_____
Its:_____
Date:_____

**Gyphon Construction, LLC**

By:_____
Its:_____
Date:_____

**GSF Enterprises, Inc. d/b/a Foster Painting**

By:_____
Its:_____
Date:_____

**Guarantee Service Team of Professionals, Inc.; and William Folks**

By:_____
Its:_____
Date:_____

**Gulf Coast Drywall, L.L.C.; and Correct Custom Drywall, Inc.**

By:_____
Its:_____
Date:_____

CDW000559

**Gulf Coast Engineering, LLC a/k/a Gulfcoast Engineering, Inc.**

By:_____
Its:_____
Date:_____

**Gulf Coast Shelter, Inc.; and Shelter Products Inc.**

By:_____
Its:_____
Date:_____

**Gulfside Supply, Inc. d/b/a Gulfeagle Supply**

By:_____
Its:_____
Date:_____

**Gulfstream Homes, Inc.**

By:_____
Its:_____
Date:_____

**H. C. Owen Builder, Inc.**

By:_____
Its:_____
Date:_____

**Hal Collums Construction, LLC; and HPC Holdings, LLC**

By:_____
Its:_____
Date:_____

**Hallmark International Lands & Investments, Inc.**

By:_____
Its:_____
Date:_____

**Hammer Commercial Services, LLC; and Hammer Commercial Services, Ltd.**

By:_____
Its:_____
Date:_____

**Hammer Construction Services, Ltd.**

By:_____
Its:_____
Date:_____

**Hanover Homes, Inc.**

By:_____
Its:_____
Date:_____

**Hansen Homes of South Florida, Inc.**

By:_____
Its:_____
Date:_____

**Harbor Springs Construction and Development, LLC**

By:_____
Its:_____
Date:_____

61

CDW000560

Harold "Frank" Causey

By:_____
Its:_____
Date:_____

Hartsville Lumber & Barns, Inc.

By:_____
Its:_____
Date:_____

Hearthstone, Inc. as Receiver for Rottlund
Homes of Florida, Inc.

By:_____
Its:_____
Date:_____

Heights Properties, LLC; Heights Custom
Homes, Inc.; Heights Properties, Inc.;
Heights Custom Homes, LLC; Heights Title
Services, LLC; and Heights Realty and
Investment, LLC

By:_____
Its:_____
Date:_____

Hendrickson Construction, LLC

By:_____
Its:_____
Date:_____

Heritage Builders of West Palm Beach, Inc.

By:_____
Its:_____
Date:_____

Heritage Homes of Northwest Florida, LLC;
and Heritage Homes of NW FL, LLC

By:_____
Its:_____
Date:_____

Hilliard Butler Construction, Inc.

By:_____
Its:_____
Date:_____

Hinkle Drywall, LLC; and Hinkle Drywall,
Inc.

By:_____
Its:_____
Date:_____

Holiday Builders Construction of Florida,
LLC

By:_____
Its:_____
Date:_____

Holiday Builders, Inc.

By:_____
Its:_____
Date:_____

Home Depot U.S.A., Inc.

By:_____
Its:_____
Date:_____

62

CDW000561

**Home One Homes, Inc.**

By:_____
Its:_____
Date:_____

**Home Tech, LLC**

By:_____
Its:_____
Date:_____

**HomeTown Lumber & Supply, Inc.**

By:_____
Its:_____
Date:_____

**Hovnanian Developments of Florida, Inc.**

By:_____
Its:_____
Date:_____

**Hovnanian Enterprises, Inc.**

By:_____
Its:_____
Date:_____

**Hovstone Properties Florida, LLC**

By:_____
Its:_____
Date:_____

**Hoyt's Construction Co., Inc.**

By:_____
Its:_____
Date:_____

**Image Drywall, Inc.**

By:_____
Its:_____
Date:_____

**Independent Builders Supply Assoc., Inc.; and Bert Radford**

By:_____
Its:_____
Date:_____

**Independent Drywall Distributors, LLC f/k/a China Drywall Funding Partners**

By:_____
Its:_____
Date:_____

**In-Line Contractors, L.L.C.; and In-Line Design, L.L.C.**

By:_____
Its:_____
Date:_____

**Ironwood Properties, Inc.; and Antilles Vero Beach LLC**

By:_____
Its:_____
Date:_____

63

CDW000562

**J & A Stucco Drywall, Inc.; and J&A Brothers Drywall & Stucco, Inc.**

By:_____
Its:_____
Date:_____

**J&J Builders Northshore, Inc.**

By:_____
Its:_____
Date:_____

**J. Cherry & Sons, Inc.**

By:_____
Its:_____
Date:_____

**J. Helm Construction, Inc.**

By:_____
Its:_____
Date:_____

**J.D. Tillman Construction Co.**

By:_____
Its:_____
Date:_____

**J.M.G. Drywall, Inc.**

By:_____
Its:_____
Date:_____

**J.P. Real Estate Development, Corp.**

By:_____
Its:_____
Date:_____

**J.S.D. Builders, Inc.**

By:_____
Its:_____
Date:_____

**J.W. Allen & Co., Inc.**

By:_____
Its:_____
Date:_____

**J.W. Hodges Drywall, Inc.**

By:_____
Its:_____
Date:_____

**Jack's Drywall, LLC**

By:_____
Its:_____
Date:_____

**Jack's, Inc.**

By:_____
Its:_____
Date:_____

64

CDW000563

**James Drywall, LLC**

By:_____
Its:_____
Date:_____

**James G. Hoskins, Inc. d/b/a Chippendale Contractors**

By:_____
Its:_____
Date:_____

**JB Plaster, Inc.**

By:_____
Its:_____
Date:_____

**JDC of Florida, Inc.**

By:_____
Its:_____
Date:_____

**JDL Drywall, Inc.**

By:_____
Its:_____
Date:_____

**JDM Builders, Inc.**

By:_____
Its:_____
Date:_____

**JEBCO, Inc.; and Chapel Hills, Inc.**

By:_____
Its:_____
Date:_____

**Jim Morris & Sons, Inc.**

By:_____
Its:_____
Date:_____

**Jim Walter Homes, Inc.; and Jim Walter Homes, LLC**

By:_____
Its:_____
Date:_____

**Jimmy Stokley d/b/a Choctaw Builders, Inc.**

By:_____
Its:_____
Date:_____

**JK Construction, LLC**

By:_____
Its:_____
Date:_____

**John A. Carter d/b/a Patriot Homes, LLC**

By:_____
Its:_____
Date:_____

CDW000564

**John Carew, Sr. d/b/a Carew Construction, Inc.; and Carew Construction, Inc.**

By:_____
Its:_____
Date:_____

**John Gillespie**

By:_____
Its:_____
Date:_____

**John Korn Builders**

By:_____
Its:_____
Date:_____

**John L. Crosby, LLC**

By:_____
Its:_____
Date:_____

**Joseph Grimsly, LLC**

By:_____
Its:_____
Date:_____

**JSK Construction, Inc.**

By:_____
Its:_____
Date:_____

**Judson Construction Group, LLC**

By:_____
Its:_____
Date:_____

**JWR Construction Services, Inc.**

By:_____
Its:_____
Date:_____

**K. Hovnanian Developments of New Jersey, Inc.**

By:_____
Its:_____
Date:_____

**K. Hovnanian Developments of Texas, Inc.**

By:_____
Its:_____
Date:_____

**K. Hovnanian First Homes, LLC**

By:_____
Its:_____
Date:_____

**K. Hovnanian of Houston, LLC f/k/a K. Hovnanian of Houston, LP d/b/a Parkside Homes**

By:_____
Its:_____
Date:_____

CDW000565

**K. Hovnanian of Houston II, LLC f/k/a Hovnanian of Houston II, LP d/b/a Brighton Homes**

By:_____
Its:_____
Date:_____

**K. Hovnanian of Palm Beach XIII, Inc.**

By:_____
Its:_____
Date:_____

**K. Hovnanian Windward Homes, LLC**

By:_____
Its:_____
Date:_____

**Karr Drywall, Inc.**

By:_____
Its:_____
Date:_____

**Kaye Homes, Inc.; and Custom Homes by Kaye, Inc.**

By:_____
Its:_____
Date:_____

**KB HOME Tampa, LLC; KB HOME Florida, LLC; KB HOME Treasure Coast, LLC; KB HOME Jacksonville, LLC; KB HOME Orlando, LLC; KB HOME Fort Myers, LLC; and KB HOME/SHAL Louisiana, LLC**

By:_____
Its:_____
Date:_____

**KCG, Inc.; REW Materials, Inc.; REW Materials Orlando, LLC; and KC Gypsum, Inc.**

By:_____
Its:_____
Date:_____

**Kelley Drywall, Inc.**

By:_____
Its:_____
Date:_____

**Kelley's Quality Drywall, Inc.**

By:_____
Its:_____
Date:_____

**Kemah Construction, Inc.**

By:_____
Its:_____
Date:_____

67

CDW000566

**King Cash and Carry Building Supplies,**
**LLC**

By:_____
Its:_____
Date:_____

**Klepk Bros. Drywall, Inc.**

By:_____
Its:_____
Date:_____

**KT Drywall, Inc.**

By:_____
Its:_____
Date:_____

**L & J Builders, Inc.**

By:_____
Its:_____
Date:_____

**L.A. Homes, Inc.**

By:_____
Its:_____
Date:_____

**L.R. Gardere Drywall Construction, Inc.**

By:_____
Its:_____
Date:_____

**Lake Ashton Development Group II, LLC;**
**A&M Business Properties, Inc. f/k/a A&M**
**Properties, Inc.; CRF Management Co.,**
**Inc.; and Century Homes-Carlsberg, LLC**

By:_____
Its:_____
Date:_____

**Lakehill Ventures, Inc.**

By:_____
Its:_____
Date:_____

**Lancer Enterprises, Inc.**

By:_____
Its:_____
Date:_____

**Land Services of FL, LLC; and Butler**
**Properties, LLC**

By:_____
Its:_____
Date:_____

**LaPorte Builders, Inc.**

By:_____
Its:_____
Date:_____

**Law Developers, LLC**

By:_____
Its:_____
Date:_____

68

CDW000567

Lebaron Brothers Drywall, LLC

By:_____
Its:_____
Date:_____

Lee Roy Jenkins, Inc.; and Lee Roy Jenkins

By:_____
Its:_____
Date:_____

Lee Wetherington Development, Inc.

By:_____
Its:_____
Date:_____

Legend Custom Builders & Best Homes of SW FL, Inc.

By:_____
Its:_____
Date:_____

Lennar Corporation; Lennar Homes, LLC f/k/a Lennar Homes, Inc.; and U.S. Home Corporation

By:_____
Its:_____
Date:_____

Levet Homes, L.L.C.

By:_____
Its:_____
Date:_____

Likeness Construction of SW FL.

By:_____
Its:_____
Date:_____

Littles Construction of Central Florida, Inc.

By:_____
Its:_____
Date:_____

L'Oasis Builders Incorporated

By:_____
Its:_____
Date:_____

Louran Builders; Vincent Montalto Const., Inc.; and Vincent Montalto Construction Inc.

By:_____
Its:_____
Date:_____

69

CDW000568

**LPR Builders, Inc.**

By:_____
Its:_____
Date:_____

**LTL Construction, Inc.**

By:_____
Its:_____
Date:_____

**Lucas Construction Corporation**

By:_____
Its:_____
Date:_____

**Lucchetti Drywall; Anthony Lucchetti; and AML Drywall**

By:_____
Its:_____
Date:_____

**Lucky Strike M.K., Inc.**

By:_____
Its:_____
Date:_____

**Luke & Sons Construction, Inc.**

By:_____
Its:_____
Date:_____

**Lumar Builders, Inc.**

By:_____
Its:_____
Date:_____

**M. Carbine Restorations, Ltd.**

By:_____
Its:_____
Date:_____

**M. Slayton Construction, Inc.**

By:_____
Its:_____
Date:_____

**M.K. Developers, Inc.**

By:_____
Its:_____
Date:_____

**M/I Homes (including all subsidiaries and affiliates)**

By:_____
Its:_____
Date:_____

**MACC Construction, Inc.**

By:_____
Its:_____
Date:_____

70

CDW000569

Management Services of Lee County, Inc.
(f/k/a Paul Homes, Inc.)

By:_____
Its:_____
Date:_____


Manclar Builders, Inc.

By:_____
Its:_____
Date:_____


Mandalay Homes, Inc.

By:_____
Its:_____
Date:_____


Mandy Drywall, Inc. a/k/a Mandy's Drywall
& Stucco Corporation

By:_____
Its:_____
Date:_____


Manuel Development Corporation

By:_____
Its:_____
Date:_____


Marantha Construction Corp.

By:_____
Its:_____
Date:_____


Maronda Homes, Inc. of Florida

By:_____
Its:_____
Date:_____


Marsiglia Construction Co., Inc.

By:_____
Its:_____
Date:_____


Marty's Drywall Services, Inc.

By:_____
Its:_____
Date:_____


Marvin's, Inc.

By:_____
Its:_____
Date:_____


Mastercraft Properties, LLC

By:_____
Its:_____
Date:_____


Matmo Construction, L.L.C.

By:_____
Its:_____
Date:_____


71

CDW000570

Mavied Corp.

By:_____
Its:_____
Date:_____

Mayeaux Construction, Inc.

By:_____
Its:_____
Date:_____

Mazer's Discount Home Centers, Inc.

By:_____
Its:_____
Date:_____

MC Contractors, Inc.

By:_____
Its:_____
Date:_____

McCar Homes, Inc.; McCar Homes –
Tampa, LLC; and McCar Homes, Inc. -
Jacksonville

By:_____
Its:_____
Date:_____

McCluskey Custom Homes, Inc.

By:_____
Its:_____
Date:_____

McCombs Services, LLC

By:_____
Its:_____
Date:_____

McDowell Builders, LLC

By:_____
Its:_____
Date:_____

McMath Construction, Inc.; McMath
Construction, LLC; and Don McMath

By:_____
Its:_____
Date:_____

MDW Drywall, Inc. a/k/a McCoy Drywall,
Inc.

By:_____
Its:_____
Date:_____

Meadows of Estero-Bonita Springs Limited
Partnership

By:_____
Its:_____
Date:_____

Medallion Homes Gulf Coast, Inc.; Cargor
Partners III – Parrish LC; and Cargor
Partners IV – Bobcat LC

By:_____
Its:_____
Date:_____

72

CDW000571

Melvin Prange, Jr. Construction, LLC

By:_____
Its:_____
Date:_____

Mercado Enterprises, Inc.

By:_____
Its:_____
Date:_____

Mercedes Homes, Inc.

By:_____
Its:_____
Date:_____

Meridian Homes USA, Inc.

By:_____
Its:_____
Date:_____

Meritage Homes of Florida, Inc.; and
Meritage Homes of Texas, LLC

By:_____
Its:_____
Date:_____

MGB Construction, Inc.

By:_____
Its:_____
Date:_____

Mid-State Drywall, Inc. d/b/a Michael
Mosley Drywall

By:_____
Its:_____
Date:_____

Mike Glass

By:_____
Its:_____
Date:_____

Millennium Homes & Development, Inc.

By:_____
Its:_____
Date:_____

MJF Construction Corp.; and MJF
Construction, Inc.

By:_____
Its:_____
Date:_____

Mobley Homes Florida, LLC; and M.
Tampa Corp.

By:_____
Its:_____
Date:_____

Modern Construction Group, Inc.

By:_____
Its:_____
Date:_____

CDW000572

Moore Unique Interiors, Inc.

By:_____
Its:_____
Date:_____

Morgan Homes, Inc.

By:_____
Its:_____
Date:_____

MSC of NWF, Inc.; and Michael Stanley
Construction, Inc.

By:_____
Its:_____
Date:_____

Nautical Homes, LLC n/k/a Statewide
Structural, LLC

By:_____
Its:_____
Date:_____

New Millennium Builders, Inc.; and New
Millenium at MCC, Inc.

By:_____
Its:_____
Date:_____

New Orleans Area Habitat for Humanity,
Inc.

By:_____
Its:_____
Date:_____

Newcastle Construction, Inc.

By:_____
Its:_____
Date:_____

Nice Homes, Inc.

By:_____
Its:_____
Date:_____

North Pacific Group, Inc. in Receivership

By:_____
Its:_____
Date:_____

Northstar Holdings, Inc.; Northstar Homes,
Inc.; Northstar Holdings at B&A, LLC

By:_____
Its:_____
Date:_____

Northstar Homebuilders, LLC

By:_____
Its:_____
Date:_____

Northstar Homes, LLC

By:_____
Its:_____
Date:_____

74

CDW000573

Nu Way Drywall, LLC

By:_____
Its:_____
Date:_____

Oak Tree Homes, Inc.; and Thompson
Wood Products, Inc.

By:_____
Its:_____
Date:_____

Oakbrook Building and Design, Inc.;
Stonebrook Estates Ltd.; Stonebrook
Estates, Inc.; and Viking V., Inc.

By:_____
Its:_____
Date:_____

Ocean Coast Drywall of South Florida, Inc.;
and O.C.D. of S. Florida, Inc.

By:_____
Its:_____
Date:_____

Ocean Construction, Inc.

By:_____
Its:_____
Date:_____

O'Key Homes, Inc. d/b/a Dennis O'Key
Affordable Homes

By:_____
Its:_____
Date:_____

Osprey Gulfshore Building Materials, Inc.

By:_____
Its:_____
Date:_____

Other Brothers Drywall, Inc.

By:_____
Its:_____
Date:_____

Oxnard Building Materials d/b/a Great
Western Building Materials, Inc.

By:_____
Its:_____
Date:_____

Oyster Bay Homes, Inc.

By:_____
Its:_____
Date:_____

CDW000574

**P.D.C. Drywall Contractors, Inc.**

By:_____
Its:_____
Date:_____

**Patrick Drywall, Inc.**

By:_____
Its:_____
Date:_____

**Penn Construction Co., LLC; and Penn Construction Company, LLC**

By:_____
Its:_____
Date:_____

**Pezzano Contracting & Development LLC f/k/a Cornerstone Construction of SW FL Inc.**

By:_____
Its:_____
Date:_____

**PHL Construction L.L.C. d/b/a Summit Homes, LLC**

By:_____
Its:_____
Date:_____

**Palm Coast Construction, LLC**

By:_____
Its:_____
Date:_____

**Pat's Construction, LLC**

By:_____
Its:_____
Date:_____

**Pensacola Stevedore Company, Inc.; and Pate Stevedore Company, Inc.**

By:_____
Its:_____
Date:_____

**Phillip W. Giles Drywall, LLC**

By:_____
Its:_____
Date:_____

**Picayune Discount Building Supply**

By:_____
Its:_____
Date:_____

CDW000575

**Platinum Property Management, Inc.**

By:_____
Its:_____
Date:_____

**Portofino Homes, Inc.**

By:_____
Its:_____
Date:_____

**Precision Drywall, Inc.**

By:_____
Its:_____
Date:_____

**Premier Communities, Inc.**

By:_____
Its:_____
Date:_____

**Premier Design Homes, Inc.; and Sedgwick Developers, Inc.**

By:_____
Its:_____
Date:_____

**Prestige Development, Inc.**

By:_____
Its:_____
Date:_____

**Pride Homes of Lakes by the Bay Parcel H, LLC; and Pride Homes of Lakes by the Bay Parcel J, LLC**

By:_____
Its:_____
Date:_____

**Princeton Homes, Inc.**

By:_____
Its:_____
Date:_____

**ProBuild Holdings LLC, a Delaware limited liability company, sole owner of ProBuild Company LLC, a Delaware limited liability company, as successor by merger to ProBuild East LLC; The Contractor Yard LLC; and Rosen Building Supplies, Inc.**

By:_____
Its:_____
Date:_____

**Probuilders and Restoration of Louisiana, LLC**

By:_____
Its:_____
Date:_____

77

CDW000576

**Professional Drywall Construction, Inc.**

By:_____
Its:_____
Date:_____

**Pukka Development, Inc.**

By:_____
Its:_____
Date:_____

**R & H Masonry Contractors, Inc.**

By:_____
Its:_____
Date:_____

**R.A. Tabora Enterprises, Inc.**

By:_____
Its:_____
Date:_____

**RAH of Texas, LP**

By:_____
Its:_____
Date:_____

**Ray Adams d/b/a Rightway Drywall, Inc. & Rightway Finishing**

By:_____
Its:_____
Date:_____

**Protocol Construction, L.L.C.; and G & H Restorations, L.L.C.**

By:_____
Its:_____
Date:_____

**Quality Builders of North Florida, Inc.**

By:_____
Its:_____
Date:_____

**R. Fry Builders, Inc.**

By:_____
Its:_____
Date:_____

**Radd Builders, Inc.**

By:_____
Its:_____
Date:_____

**Ramos Builders, Inc.**

By:_____
Its:_____
Date:_____

**Ray Beck, Inc.**

By:_____
Its:_____
Date:_____

78

CDW000577

**Ray Horvath Drywall, Inc.**

By:_____
Its:_____
Date:_____

**RCH Drywall Service, Inc.**

By:_____
Its:_____
Date:_____

**RCL Development, Inc.**

By:_____
Its:_____
Date:_____

**Reed Builders, LLC**

By:_____
Its:_____
Date:_____

**Regatta Construction, LLC**

**Regency Homes, Inc.; Regency Homes
Group LLC; Regency Constructors LLC;
Regency Constructors Inc.; Regency at
Plantation Acres, LLC; Regency at
Stonebrook Estates LLC; Regency Custom
Homes of Weston LLC; Stonebrook Homes
LLC; Stonebrook Partners LLC;
Stonebrook Homes J.V.; San Melina
Holdings LLC; Balmoral at Delray Lakes
Estates LLC; Tuscany at Davie LLC; Black
Hawk Reserve J.V.; Blackhawk Reserve
LLC;  Blackhawk Partners LLC; Saraceno
at Plantation Acres LLC; Greyhawk a Joint
Venture; and Saraceno at Plantation J.V.**

By:_____
Its:_____
Date:_____

By:_____
Its:_____
Date:_____

**Residential Drywall, Inc.**

By:_____
Its:_____
Date:_____

**Reve Development Corporation**

By:_____
Its:_____
Date:_____

**RFC Homes, Inc.**

By:_____
Its:_____
Date:_____

**Richard Hoover**

By:_____
Its:_____
Date:_____

79

CDW000578

**Richard Jones Construction Company, Inc.; and Scarborough Estates, LLC**

By:_____
Its:_____
Date:_____

**Richmond Heights Community Development Corp.**

By:_____
Its:_____
Date:_____

**Rick Strawbridge, Inc.**

By:_____
Its:_____
Date:_____

**Rightway Drywall, Inc.**

By:_____
Its:_____
Date:_____

**Rinker Materials of Florida, Inc. n/k/a CEMEX Construction Materials Florida, LLC**

By:_____
Its:_____
Date:_____

**Rivera & Company of SW Florida, Inc.**

By:_____
Its:_____
Date:_____

**Rivercrest, LLC; St. Joe Towns & Resorts, LP; The St. Joe Company f/k/a St. Joe Corporation f/k/a St. Joe Paper Company; and St. Joe Home Building LP**

By:_____
Its:_____
Date:_____

**RiverStreet Homes, Inc.**

By:_____
Its:_____
Date:_____

**RJL Drywall, Inc.**

By:_____
Its:_____
Date:_____

**RJM Builders North, Inc.; RJM Builders Inc.; and RJM Builders South, Inc.**

By:_____
Its:_____
Date:_____

CDW000579

**RL Drywall**

By:_____
Its:_____
Date:_____

**Robert Lynch Builders, L.L.C.**

By:_____
Its:_____
Date:_____

**Robert/Charles Builders, Inc.**

By:_____
Its:_____
Date:_____

**Robertson Construction Corporation a/k/a Robertson Construction, Inc.**

By:_____
Its:_____
Date:_____

**Roche Jr. Construction Inc.**

By:_____
Its:_____
Date:_____

**Rockwell Builders, L.L.C.**

By:_____
Its:_____
Date:_____

**Rogers Co., LLC**

By:_____
Its:_____
Date:_____

**Royal Homes, L.L.C.; and Marigold Court, LLC**

By:_____
Its:_____
Date:_____

**Russ Mills d/b/a Mills Construction**

By:_____
Its:_____
Date:_____

**S & D Specialties, Inc.**

By:_____
Its:_____
Date:_____

**S&O Investments**

By:_____
Its:_____
Date:_____

**S. Petersen Homes Inc.**

By:_____
Its:_____
Date:_____

81

CDW000580

**S.D. & Associates, Inc.**

By:_____
Its:_____
Date:_____

**S3 Enterprises, Inc.**

By:_____
Its:_____
Date:_____

**SAM Drywall, Inc.**

By:_____
Its:_____
Date:_____

**Saturno Construction AB, Inc.**

By:_____
Its:_____
Date:_____

**Saucedo Construction, Inc.**

By:_____
Its:_____
Date:_____

**Schear Corporation**

By:_____
Its:_____
Date:_____

**Schmidt Brothers Homes, Inc.**

By:_____
Its:_____
Date:_____

**Shamrock Building Materials, Inc.**

By:_____
Its:_____
Date:_____

**Shelby Building Corp.**

By:_____
Its:_____
Date:_____

**Shirley Construction and Drywall, Inc.**

By:_____
Its:_____
Date:_____

**Shoma Homes at Keys Cove Phase II, Inc.**

By:_____
Its:_____
Date:_____

**Shoma Homes Splendido, Inc.**

By:_____
Its:_____
Date:_____

82

CDW000581

**Sidney Sutton Drywall, Inc.**

By:_____
Its:_____
Date:_____

**Siesta Bay Custom Homes, LLC**

By:_____
Its:_____
Date:_____

**Sixty Fifth and One LLC**

By:_____
Its:_____
Date:_____

**Sleuth, Inc.**

By:_____
Its:_____
Date:_____

**Smith Family Homes Corporation; and Smith Family Homes, Inc.**

By:_____
Its:_____
Date:_____

**Smoky Mountain Materials, Inc. d/b/a Emerald Coast Building Materials**

By:_____
Its:_____
Date:_____

**Sodrel Construction, Inc.**

By:_____
Its:_____
Date:_____

**Sorrento Lumber Company, Inc.**

By:_____
Its:_____
Date:_____

**South Florida Custom Trim, Inc.**

By:_____
Its:_____
Date:_____

**South Kendall Construction, Inc. a/k/a South Kendall Construction, LLC**

By:_____
Its:_____
Date:_____

**Southbay Development Corp.**

By:_____
Its:_____
Date:_____

**Southern Bay Homes, Inc.**

By:_____
Its:_____
Date:_____

83

CDW000582

Southern Heritage Builders, Inc.

By:_____
Its:_____
Date:_____

Southern Homes of Broward XI, Inc.

By:_____
Its:_____
Date:_____

Southern Homes, LLC; Tallow Creek, LLC; Springhill, LLC; and Adrian Kornman

By:_____
Its:_____
Date:_____

Southern Star Construction Co., Inc.; Chinchuba Creek Garden Homes, LLC; and Laporte Family Properties, LLC

By:_____
Its:_____
Date:_____

Southwell Homes, LLC

By:_____
Its:_____
Date:_____

Southwest Innovations, Inc.

By:_____
Its:_____
Date:_____

Speedy Drywall Service, LLC

By:_____
Its:_____
Date:_____

Spring Park Builders, LLC

By:_____
Its:_____
Date:_____

Standard Pacific Corp.; Standard Pacific of South Florida GP, Inc.; Standard Pacific Homes of South Florida GP, Inc.; Standard Pacific of Tampa GP, Inc.; Standard Pacific of Colorado, Inc.; HWB Construction, Inc.; Westbrooke Homes; Westfield Homes of Florida, Inc.; and Standard Pacific Homes of Southwest Florida, Inc.

By:_____
Its:_____
Date:_____

Star Homes of Florida LLC

By:_____
Its:_____
Date:_____

84

CDW000583

Star Services, Inc.

By:_____
Its:_____
Date:_____

Steeler, Inc.

By:_____
Its:_____
Date:_____

Sterling Communities at Talavera, LLC

By:_____
Its:_____
Date:_____

Sterling Communities, Inc.; and Sterling Communities Realty, Inc.

By:_____
Its:_____
Date:_____

Steven R. Carter, Inc.

By:_____
Its:_____
Date:_____

Steven Sweet Drywall, LLC

By:_____
Its:_____
Date:_____

Stock Building Supply, LLC; Stock Building Supply of Florida, LLC; Stock Building Supply, Inc.; Stock Building Supply Holdings, LLC; and Stock Building Supply West, LLC

By:_____
Its:_____
Date:_____

Stocker Drywall, Inc.

By:_____
Its:_____
Date:_____

Stonebrook Estates, Inc.

By:_____
Its:_____
Date:_____

Stuart South Group, LC d/b/a Treasure Coast Homes

By:_____
Its:_____
Date:_____

85

CDW000584

**Sumaj Builders Corp.**

By:_____
Its:_____
Date:_____

**Summit Contractors, Inc.; and Summit Homes of LA, Inc.**

By:_____
Its:_____
Date:_____

**Sun Construction, L.L.C. d/b/a Sunrise Homes; Sunrise Construction; Sun Construction, LLC; and Sunrise Construction and Development, LLC**

By:_____
Its:_____
Date:_____

**Suncoast Building Materials, Inc.**

By:_____
Its:_____
Date:_____

**Sunset Drywall, Inc.**

By:_____
Its:_____
Date:_____

**Suntree Homes, Inc.**

By:_____
Its:_____
Date:_____

**Swedberg Enterprises, Inc. d/b/a Florida Drywall**

By:_____
Its:_____
Date:_____

**Sweet Interiors, Inc.**

By:_____
Its:_____
Date:_____

**T & T Green Construction, Inc.**

By:_____
Its:_____
Date:_____

**Taber Construction, LLC**

By:_____
Its:_____
Date:_____

CDW000585

Taylor Construction Services, Inc.

Taylor Morrison of Florida, Inc.; Taylor
Morrison Services, Inc.; Taylor Morrison,
Inc.; Taylor Woodrow, Inc.; Taylor
Woodrow Communities at Vasari, L.L.C.;
and Taylor Woodrow Communities at
Herons Glen, L.L.C.

By:_____
Its:_____
Date:_____

By:_____
Its:_____
Date:_____

Teamwork Construction, LLC

Teo's Drywall, Inc.

By:_____
Its:_____
Date:_____

By:_____
Its:_____
Date:_____

Terry Mott Builder

The David Group Inc.

By:_____
Its:_____
Date:_____

By:_____
Its:_____
Date:_____

The Haskell Company

The Henning Group, LC

By:_____
Its:_____
Date:_____

By:_____
Its:_____
Date:_____

The Jade Organization, Inc.; Jade
Organization, Inc.; and Jade Organization
General Contractor, LLC

The Mitchell Company, Inc.; and The
Mitchell Company, Ltd.

By:_____
Its:_____
Date:_____

By:_____
Its:_____
Date:_____

CDW000586

**The Ryland Group, Inc.**

By:_____
Its:_____
Date:_____

**The Sterling Collection, Inc.**

By:_____
Its:_____
Date:_____

**Thomas F. Gray Construction, Inc.**

By:_____
Its:_____
Date:_____

**Thomas R. Gould, Inc.; and Thomas Gould, Inc.**

By:_____
Its:_____
Date:_____

**Three County Construction Co., Inc.**

By:_____
Its:_____
Date:_____

**Tim Barnett d/b/a Barnett Drywall**

By:_____
Its:_____
Date:_____

**Timberline Builders, Inc.**

By:_____
Its:_____
Date:_____

**Titan Drywall, Inc.**

By:_____
Its:_____
Date:_____

**TMO Global Logistics, L.L.C.**

By:_____
Its:_____
Date:_____

**Toll Estero Limited Partnership**

By:_____
Its:_____
Date:_____

**Tommy Ganey**

By:_____
Its:_____
Date:_____

**Total Community Action, Inc.**

By:_____
Its:_____
Date:_____

CDW000587

**Total Drywall**

**Toula Properties LLC; Total Maintenance Services of the South, Inc. and Professional Construction and Restoration, LLC; and Enoch R. Emmons Jr.**

By:_____
Its:_____
Date:_____

By:_____
Its:_____
Date:_____

**TOUSA, Inc., TOUSA Homes Florida, L.P., successor by merger to EH/Transeastern, LLC, d/b/a Transeastern Homes and TOUSA Homes, Inc.**

**Tracey Construction, Inc.**

By:_____
Its:_____
Date:_____

By:_____
Its:_____
Date:_____

**Treasure Coast Communities, LC**

**Triple Crown Homes, Inc.; and The 103 Investments, LLC**

By:_____
Its:_____
Date:_____

By:_____
Its:_____
Date:_____

**Triple E Corporation**

**Triple J Plus Enterprises, Inc.**

By:_____
Its:_____
Date:_____

By:_____
Its:_____
Date:_____

**Triple M Drywall, Inc.**

**Trivium Construction, Inc.**

By:_____
Its:_____
Date:_____

By:_____
Its:_____
Date:_____

89

CDW000588

**Trust America Homes, Inc. d/b/a First American Homes**

By:_____

Its:_____

Date:_____

**Tudela's Classic Homes, L.L.C.**

By:_____

Its:_____

Date:_____

**Turley Heating & Cooling, Inc.; and J. Brian Turley**

By:_____

Its:_____

Date:_____

**Turn Key Home Builders, Inc.**

By:_____

Its:_____

Date:_____

**Turner Wall Systems**

By:_____

Its:_____

Date:_____

**Tuscan Harvey Estate Homes, Inc.; and Tuscan Harvey Custom Homes, Inc.**

By:_____

Its:_____

Date:_____

**United Dream Builders, Inc.**

By:_____

Its:_____

Date:_____

**United Drywall & Stucco, Inc.**

By:_____

Its:_____

Date:_____

**United-Bilt Homes, L.L.C.**

By:_____

Its:_____

Date:_____

**V&I Drywall & Stucco a/k/a V and I Drywall & Stucco, Inc.**

By:_____

Its:_____

Date:_____

**Van Aller Construction, Inc.**

By:_____

Its:_____

Date:_____

**Venetian Village, LLC**

By:_____

Its:_____

Date:_____

CDW000589

**Vernon Construction Corp.**

By:_____
Its:_____
Date:_____

**Vet Construction, Inc.**

By:_____
Its:_____
Date:_____

**Vetter Lumber Company, Inc.**

By:_____
Its:_____
Date:_____

**Vicinity Drywall, Inc.**

By:_____
Its:_____
Date:_____

**Viking Homes of SW Florida, Inc.**

By:_____
Its:_____
Date:_____

**Villa Development, Inc. d/b/a Villa Homes of SW Florida**

By:_____
Its:_____
Date:_____

**Villas at Oak Hammock, LLC**

By:_____
Its:_____
Date:_____

**Vintage Homes, LLC**

By:_____
Its:_____
Date:_____

**Vista Builders, Inc.**

By:_____
Its:_____
Date:_____

**Vortex Wall Systems**

By:_____
Its:_____
Date:_____

**W. McDaniel Construction, Inc. f/k/a Nicholas McDaniel Construction a/k/a W. McDaniel Construction**

By:_____
Its:_____
Date:_____

**WCI Communities, Inc.**

By:_____
Its:_____
Date:_____

CDW000590

**Weekley Homes, LLC f/k/a Weekley Homes, L.P.; and David Weekley Homes, LLC**

By:_____
Its:_____
Date:_____

**Wellington Shores – Wellington Limited Partnership**

By:_____
Its:_____
Date:_____

**West Coast Drywall Construction, Inc.**

By:_____
Its:_____
Date:_____

**West Construction, Inc.**

By:_____
Its:_____
Date:_____

**Wholesale Building Products, LLC**

By:_____
Its:_____
Date:_____

**William L. Perry Plastering & Drywall, Inc.**

By:_____
Its:_____
Date:_____

**Williams-Brown, Inc.**

By:_____
Its:_____
Date:_____

**Woodland Enterprises, Inc.**

By:_____
Its:_____
Date:_____

**Woodside Group**

By:_____
Its:_____
Date:_____

**Wyman Stokes Builder, Inc.**

By:_____
Its:_____
Date:_____

**Yarco, Inc.**

By:_____
Its:_____
Date:_____

**Ybarzabal Contractors, LLC**

By:_____
Its:_____
Date:_____

CDW000591

**Zahn Luxury Homes, Inc.; and Zahn Builders Florida, Inc.**

By:_____
Its:_____
Date:_____

## PARTICIPATING INSURERS

**Alfa Mutual Insurance Company**

**American Economy Insurance Company; American States Insurance Company; American States Insurance Company of Texas; American Fire and Casualty Company; Montgomery Insurance Company; General Insurance Company of America; and First National Insurance Company of America**

By:_____
Its:_____
Date:_____

By:_____
Its:_____
Date:_____

**American Empire Surplus Lines Insurance Company**

**American Home Assurance Company**

By:_____
Its:_____
Date:_____

By:_____
Its:_____
Date:_____

**American Strategic Insurance Corporation; ACA Home; Home Pointe; American Capital Assurance; Ark Royal Insurance Company; ASI Assurance Corp.; ASI Corp.; ASI Lloyds; ASI Preferred; and ASI Select**

**Amerisure Insurance Company; and Amerisure Mutual Insurance Company**

By:_____
Its:_____
Date:_____

By:_____
Its:_____
Date:_____

93

CDW000592

Arch Insurance Company

Argo Underwriting Agency, Ltd., the sole underwriting member or "Name" for Syndicate 1200, improperly identified in the Amended Amato Complaint as "Underwriters at Lloyd's, London"

By:_____

By:_____

Its:_____

Its:_____

Date:_____

Date:_____

Atlantic Casualty Insurance Company

Audubon Indemnity Company

By:_____

By:_____

Its:_____

Its:_____

Date:_____

Date:_____

Bankers Insurance Group; and Bankers Insurance Company

Builders Mutual Insurance Company

By:_____

By:_____

Its:_____

Its:_____

Date:_____

Date:_____

Canal Indemnity

Catlin Specialty Insurance Company; and Wellington Specialty Insurance Company

By:_____

By:_____

Its:_____

Its:_____

Date:_____

Date:_____

Certain Underwriters at Lloyd's, London (each severally subscribed to the insurance policy each for its own part and not one for the other, numbered ART001135)

Chartis Specialty Insurance Company, f/k/a American International Specialty Lines Insurance Company

By:_____

By:_____

Its:_____

Its:_____

Date:_____

Date:_____

CDW000593

**Cincinnati Insurance Company**

**Clarendon America Insurance Company, Praetorian Specialty Insurance Company, QBE Specialty Insurance Company, QBE Insurance Corporation, Southern Guaranty Insurance Company and Praetorian Insurance Co., f/k/a the Insurance Company of Hanover**

By:_____

Its:_____

Date:_____

By:_____

Its:_____

Date:_____

**Colony Insurance Company**

**Companion Property & Casualty Group**

By:_____

Its:_____

Date:_____

By:_____

Its:_____

Date:_____

**Continental Casualty Company**

**Continental Insurance Company**

By:_____

Its:_____

Date:_____

By:_____

Its:_____

Date:_____

**Continental Western Insurance Company**

**Employers Mutual Casualty Company**

By:_____

Its:_____

Date:_____

By:_____

Its:_____

Date:_____

95

CDW000594

**Endurance American Specialty Insurance Company**

By:_____
Its:_____
Date:_____

**FCCI Insurance Company; FCCI Commercial Insurance Company; National Trust Insurance Company; Brierfield Insurance Company; and FCCI Advantage Insurance Company**

By:_____
Its:_____
Date:_____

**Federal Insurance Company**

By:_____
Its:_____
Date:_____

**Federated Mutual Insurance Company; and Federated Service Insurance Company**

By:_____
Its:_____
Date:_____

**Federated National Insurance Company f/k/a American Vehicle Insurance Company**

By:_____
Its:_____
Date:_____

**Fireman's Fund Insurance Company; and Interstate Fire and Casualty Company**

By:_____
Its:_____
Date:_____

**Florida Insurance Guaranty Association**

By:_____
Its:_____
Date:_____

**Gemini Insurance Company**

By:_____
Its:_____
Date:_____

**General Fidelity Insurance Company**

By:_____
Its:_____
Date:_____

**Granada Insurance Company**

By:_____
Its:_____
Date:_____

**Granite State Insurance Company**

By:_____
Its:_____
Date:_____

**Great American Insurance Company**

By:_____
Its:_____
Date:_____

CDW000595

Harleysville Mutual Insurance Company

Hartford Fire Insurance Company;
Hartford Casualty Insurance Company;
Hartford Insurance Company of the
Southwest; Hartford Underwriters
Insurance Company; and Twin City Fire
Insurance Company

By:_____
Its:_____
Date:_____

By:_____
Its:_____
Date:_____

Illinois National Insurance Company

Illinois Union Insurance Company

By:_____
Its:_____
Date:_____

By:_____
Its:_____
Date:_____

Indian Harbor Insurance Company

James River Insurance Company

By:_____
Its:_____
Date:_____

By:_____
Its:_____
Date:_____

Kingsway Amigo Insurance Company

Landmark American Insurance Company;
and RSUI Indemnity Company

By:_____
Its:_____
Date:_____

By:_____
Its:_____
Date:_____

Lexington Insurance Company

Liberty Mutual Insurance Company;
Liberty Mutual Fire Insurance Company;
Liberty Surplus Insurance Corporation and
LSI Corporation; and Liberty Insurance
Underwriters, Inc.

By:_____
Its:_____
Date:_____

By:_____
Its:_____
Date:_____

CDW000596

**Louisiana HomeBuilders Association
General Liability Trust**

By:_____
Its:_____
Date:_____

**Maxum Indemnity Company**

By:_____
Its:_____
Date:_____

**Mid-Continent Casualty Company; and
Mid-Continent Insurance**

By:_____
Its:_____
Date:_____

**Montpelier US Insurance Company**

By:_____
Its:_____
Date:_____

**National Surety Corporation**

By:_____
Its:_____
Date:_____

**National Union Fire Insurance Company of
Pittsburgh, Pa.**

By:_____
Its:_____
Date:_____

**Nationwide Mutual Insurance Company;
Nationwide Mutual Fire Insurance
Company**

By:_____
Its:_____
Date:_____

**Nautilus Insurance Company**

By:_____
Its:_____
Date:_____

**New Hampshire Insurance Company**

By:_____
Its:_____
Date:_____

**North American Specialty Insurance
Company**

By:_____
Its:_____
Date:_____

CDW000597

North Pointe Casualty Insurance Company;
North Pointe Insurance Company; and
Queensway International Indemnity
Company

By:_____
Its:_____
Date:_____

Northbridge Indemnity Insurance
Corporation, f/k/a Commonwealth
Insurance Company

By:_____
Its:_____
Date:_____

Old Dominion Insurance Company

By:_____
Its:_____
Date:_____

Omega Dedicated Ltd (UK), the sole
underwriting member or "Name" for
Syndicate 958 (improperly identified in the
Amended Amato Complaint as
"Underwriters at Lloyd's, London")

By:_____
Its:_____
Date:_____

Owners Insurance Company; Southern
Owners Insurance Company; and Auto-
Owners Insurance Company

By:_____
Its:_____
Date:_____

Penn-America Insurance Company

By:_____
Its:_____
Date:_____

Pennsylvania Lumbermens Mutual
Insurance Company

By:_____
Its:_____
Date:_____

Quanta Indemnity Company; and Quanta
Specialty Lines Insurance Company

By:_____
Its:_____
Date:_____

Republic Underwriters Insurance
Company; and Southern Insurance
Company

By:_____
Its:_____
Date:_____

Rockhill Insurance Company

By:_____
Its:_____
Date:_____

99

CDW000598

**Scottsdale Insurance Company**

By:_____
Its:_____
Date:_____

**Sentry Insurance, A Mutual Company**

By:_____
Its:_____
Date:_____

**State Farm Fire and Casualty Company;
and State Farm Florida Insurance Company**

By:_____
Its:_____
Date:_____

**The American Insurance Company**

By:_____
Its:_____
Date:_____

**The Insurance Company of the State of
Pennsylvania**

By:_____
Its:_____
Date:_____

**The Ohio Casualty Insurance Company;
and West American Insurance Company**

By:_____
Its:_____
Date:_____

**The Underwriting Member of Lloyd's
Syndicate 3500 in its capacity as Reinsurer
to Close of Lloyd's Syndicate 2112 c/o
RiverStone Managing Agency Limited of
Park Gate, 161-163 Preston Road, Brighton
BN1 6AU ("the RiverStone Syndicate")**

By:_____
Its:_____
Date:_____

**Travelers Property Casualty Company of
America f/k/a The Travelers Indemnity
Company of Illinois; The Travelers
Indemnity Company of America; St. Paul
Surplus Lines Insurance Company; and The
Charter Oak Fire Insurance Company**

By:_____
Its:_____
Date:_____

**Unigard Insurance Company**

By:_____
Its:_____
Date:_____

**USF Insurance Company**

By:_____
Its:_____
Date:_____

CDW000599

**Valley Forge Insurance Company**

By:_____
Its:_____
Date:_____

**Wausau Underwriters Insurance Company;
Wausau Business Insurance Company;
Employers Insurance Company of Wausau;
and Employers Insurance of Wausau**

By:_____
Its:_____
Date:_____

**Wesco Insurance Company**

By:_____
Its:_____
Date:_____

**Western Pacific Mutual Insurance
Company**

By:_____
Its:_____
Date:_____

**Western World Insurance Company**

By:_____
Its:_____
Date:_____

**Westfield Insurance Company**

By:_____
Its:_____
Date:_____

**Zurich American Insurance Company;
American Zurich Insurance Company;
Maryland Casualty Company; Steadfast
Insurance Company; Assurance Company
of America; and American Guarantee and
Liability Insurance Company**

By:_____
Its:_____
Date:_____

CDW000600