```
 1                    UNITED STATES DISTRICT COURT

 2                    EASTERN DISTRICT OF LOUISIANA

 3

 4   ****************************************************************

 5   IN RE:  CHINESE-MANUFACTURED
     DRYWALL PRODUCTS
 6   LIABILITY LITIGATION

 7                              CIVIL DOCKET NO. 09-MD-2047 "L"
                                NEW ORLEANS, LOUISIANA
 8                              WEDNESDAY, JUNE 19, 2019, 9:30 A.M.

 9
     THIS DOCUMENT RELATES TO
10   REF:  09-4115

11   ****************************************************************

12

13            TRANSCRIPT OF EVIDENTIARY HEARING PROCEEDINGS
              HEARD BEFORE THE HONORABLE ELDON E. FALLON
14                    UNITED STATES DISTRICT JUDGE

15

16   APPEARANCES:

17

18   FOR BUILDER PLAINTIFFS:    LIEFF CABRASER HEIMANN & BERNSTEIN
                                BY:  ELIZABETH J. CABRASER, ESQUIRE
19                                   SARAH R. LONDON, ESQUIRE
                                EMBARCADERO CENTER WEST
20                              275 BATTERY STREET, 29TH FLOOR
                                SAN FRANCISCO, CALIFORNIA 94111
21

22
                                CUNNINGHAM BOUNDS
23                              BY:  STEVEN L. NICHOLAS, ESQUIRE
                                1601 DAUPHIN STREET
24                              MOBILE, ALABAMA 36604

25
```

***OFFICIAL TRANSCRIPT***

```
1    APPEARANCES CONTINUED:

2

3    FOR TAISHAN GYPSUM CO.,
     LTD, AND TAI'AN TAISHAN
4    PLASTERBOARD CO., LTD.:    ALSTON & BIRD
                                BY:  CHRISTINA H. EIKHOFF, ESQUIRE
5                                    BERNARD TAYLOR, SR., ESQUIRE
                                ONE ATLANTIC CENTER
6                               1201 WEST PEACHTREE STREET
                                ATLANTA, GA 30309
7

8
     FOR THE TAISHAN, BNMB
9    ENTITIES AND CNBM ENTITIES
     LIAISON COUNSEL:           PHELPS DUNBAR
10                              BY:  HARRY ROSENBERG, ESQUIRE
                                365 CANAL STREET, SUITE 2000
11                              NEW ORLEANS, LA 70130

12

13   CHINA NATIONAL BUILDING
     MATERIALS GROUP CORPORATION
14   AND CHINA NATIONAL BUILDING
     MATERIALS COMPANY LIMITED
15   (COLLECTIVELY, "CNBM"):    ORRICK HERRINGTON & SUTCLIFFE
                                BY:  JAMES L. STENGEL, ESQUIRE
16                              51 WEST 52ND STREET
                                NEW YORK, NY 10019
17

18
                                ORRICK HERRINGTON & SUTCLIFFE
19                              BY:  L. CHRISTOPHER VEJNOSKA, ESQ.
                                THE ORRICK BUILDING
20                              405 HOWARD STREET
                                SAN FRANCISCO, CA 94105
21

22
                                GORDON, ARATA, MCCOLLAM,
23                              DUPLANTIS & EAGAN
                                BY:  EWELL E. EAGAN, JR., ESQUIRE
24                                   DONNA P. CURRAULT, ESQUIRE
                                     ALEX B. ROTHENBERG, ESQUIRE
25                              201 ST. CHARLES AVENUE, 40TH FLOOR
                                NEW ORLEANS, LA 70170
```

*OFFICIAL TRANSCRIPT*

1    APPEARANCES CONTINUED:

2

3    OFFICIAL COURT REPORTER:    CATHY PEPPER, CRR, RMR, CCR
                                CERTIFIED REALTIME REPORTER
4                               CERTIFIED MERIT REPORTER
                                500 POYDRAS STREET, ROOM B406
5                               NEW ORLEANS, LA 70130
                                (504) 589-7779
6                               Cathy_Pepper@laed.uscourts.gov

7

8    PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.   TRANSCRIPT
     PRODUCED BY COMPUTER.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*OFFICIAL TRANSCRIPT*

1                               **I N D E X**

2

3        SPEAKERS                                        PAGE

4

5    THE COURT...........................................   5

6    MS. LONDON..........................................   7

7    MS. EIKHOFF.........................................  19

8    MS. LONDON..........................................  37

9    THE COURT...........................................  43

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*OFFICIAL TRANSCRIPT*

1        **P-R-O-C-E-E-D-I-N-G-S**

2                WEDNESDAY, JUNE 19, 2019

3            M O R N I N G   S E S S I O N

4                (COURT CALLED TO ORDER)

5

6

7        THE DEPUTY CLERK:  All rise.

8        THE COURT:  Be seated, please.  Let's call the case.

9        THE DEPUTY CLERK:  MDL No. 2047, In re:  Chinese

10   Manufactured Drywall Products Liability Litigation.

11        THE COURT:  Counsel make their appearance for the

12   record, please.

13        MS. LONDON:  Good morning, Your Honor.  Sarah London,

14   on behalf of the Builder plaintiffs, Mitchell, from Lieff

15   Cabraser.

16        THE COURT:  Okay.

17        MS. EIKHOFF:  Christy Hull Eikhoff on behalf of

18   Taishan.

19        THE COURT:  We're here today on the Builders' motion

20   for class certification.  This involves Chinese drywall

21   litigation.

22            In this particular litigation, there were

23   individuals, homeowners, who had filed class actions on their

24   behalf to recover for the damages which they feel they

25   sustained as a result of defective drywall.  In addition to

**OFFICIAL TRANSCRIPT**

1    those individuals, there is a group of builders who feel that

2    they have been damaged.

3            In some portions of the country, particularly in

4    Florida, where new construction was undertaken, the individual

5    homeowner employed a builder to build their house.  They bought

6    a lot in a subdivision and employed a builder to build their

7    house.  The builder did so, and Chinese drywall was utilized in

8    the construction of the house.

9            The individual homeowners in many cases,

10    particularly in Florida, sued the builder under theories of

11    warranty, because a manufacturer, of course, is strictly liable

12    for their defective product that they produce.  Most other

13    individuals down the line from the manufacturer are responsible

14    in negligence.  Negligence requires knowledge or opportunity to

15    know or should have known.

16            But in some states, particularly Florida, a

17    builder, in addition to negligence responsibilities, oftentimes

18    has warranty concepts that make them liable to the purchaser of

19    their building, or their client, for any faulty construction

20    that they, the builders, do.

21            In any event, they were sued, and they paid the

22    homeowners the damages which the homeowner claimed or incurred.

23            The builders now take the position that they have

24    an opportunity or a right to proceed against the tortfeasor,

25    which they feel is Taishan.  The Mitchell Company has filed a

*OFFICIAL TRANSCRIPT*

1    claim taking the position that they are a representative, and

2    they have filed a class action seeking to include all of the

3    builders -- excluding homeowners, but all the builders that

4    have sustained damages as a result of this incident.

5              So we're here today to hear from Mitchell

6    regarding their motion to have a class certified for the

7    builders.

8              I'll hear from the parties.

9         MS. LONDON:  Thank you.  May it please the Court.

10             Your Honor, you're correct.  Mitchell is here

11   today to advocate for what we believe is the most appropriate

12   and superior method for resolving what seems to be the last

13   piece of this litigation.

14             As Your Honor well recounted, what brought us

15   here today, for Mitchell and the other builders, is they

16   started receiving phone calls from the homeowners.  Their air

17   conditioning units were fixed -- or were broken.  Their

18   refrigerators needed repair.  So they're going out on all of

19   these warranty calls, and they think it's the air conditioning.

20   They think it's defects all around.

21             Eventually, through lots of investigation and

22   expert analysis, they determine, like the rest of us, that the

23   drywall is what caused it.

24             Then, from there, as Your Honor has found,

25   through trial and error, the builders developed a protocol over

*OFFICIAL TRANSCRIPT*

1    time that would allow them to fulfill their warranty

2    obligations to the homeowners by fully repairing the damage

3    caused by the drywall in the most cost effective means

4    possible.

5              Of course, that protocol was the basis or a part

6    of the basis for Your Honor's finding of fact and conclusions

7    of law.

8              So, the builders then -- of course, as we all

9    know now, the most economical way and practical way to

10   remediate a home with Chinese drywall is to take it down to its

11   studs, as you know, remove the wiring, and take out the other

12   property as needed.  The builders in this class, they did that,

13   to the extent they could.

14             You know, some of these homeowners were out four

15   to six months.  The home builders paid for those relocation

16   costs under their warranty obligations.

17             So the builders undertook all of these steps, of

18   course, you know, while Taishan was nowhere to be found.

19   They've incurred costs, what we estimate, somewhere between

20   two, three hundred million dollars collectively.

21             Of course, not every builder incurred those kinds

22   of costs, not only in paying damages to homeowners through

23   settlements, but also simply in the remediation costs or in the

24   repair of certain appliances and property as a result of the

25   drywall.

*OFFICIAL TRANSCRIPT*

1          THE COURT:  Did some of the builders have insurance

2     that got reimbursed?

3          MS. LONDON:  Yes, Your Honor, some did.

4          THE COURT:  They take the position that that is

5     collateral source; is that their argument?

6          MS. LONDON:  It will depend on -- there will be setoff

7     arguments.  Certainly, there will have to be some type of

8     resolution made.

9               What we're looking to recover are the

10    out-of-pocket costs that have not yet been reimbursed some way

11    or another, through an up-the-chain settlement or setoff by

12    some type of insurance.  So these are out-of-pocket costs that

13    the builders are still left holding the bag on.

14         THE COURT:  Some builders had insurance, other builders

15    did not.  Some insurance covered some things, and some

16    insurance didn't cover other things.

17         MS. LONDON:  That would be fair, yes.

18              So, now --

19         THE COURT:  Well, the defendants take the position,

20    first, that Mitchell is really the only plaintiff in this case,

21    in the sense the named plaintiff in this case.  I know there's

22    a Beazer reference, but Beazer is not involved in the

23    pleadings.  They are not part of the pleadings.  They are not

24    in the pleadings.  So it's just Mitchell in the pleadings at

25    this time.  Is that the way you see it?

*OFFICIAL TRANSCRIPT*

1    MS. LONDON:  That's right, Your Honor.  If necessary,

2    you know, to cure any of the concerns the Court might have

3    around adequacy or typicality or anything like that, of course,

4    we would certainly ask Your Honor to move to intervene for

5    Beazer.  But, at this point in time, we believe Mitchell is an

6    appropriate and adequate representative.

7    THE COURT:  Well, they take the position that the

8    reason that Mitchell is not is that Mitchell only had remedied

9    one home.  They remedied that home by settling it.  They didn't

10   do any work on it.  They just gave the individuals a sum to

11   resolve the case.  That is not the same or commonality or

12   typicality or anything of that sort.

13   How do you see that?

14   MS. LONDON:  Well, certainly, you know, Mitchell does

15   not have to show that his damages incurred were identical with

16   those.  Of course, typicality comes down to the nature of the

17   claims and defenses; and, on that front, they are identical.

18   The costs that were incurred to Mitchell are due

19   to a uniformity of conduct and obligation to the homeowners.

20   So whether they paid out of pocket to remediate a home fully

21   under the Court's protocol, or whether they incurred the costs

22   to investigate the source of the problem before the protocol

23   even existed, when they thought maybe this is a faulty HVAC

24   system or defect, to get to the bottom of it, those were costs

25   that were incurred.  The same with paying out a settlement to a

*OFFICIAL TRANSCRIPT*

1    homeowner.  Those are all the same -- they all have the same

2    source, they all arise from the same set of facts, the same

3    conduct, the same -- the nature of Mitchell's claims are the

4    exact same as the nature of the claims for all of the other

5    builders.

6              THE COURT:  Well, I don't know how many builders there

7    are.  There is no evidence.  What's the evidence that there

8    are -- you know and I know that in the Fifth Circuit, they look

9    to be about 40 individuals to make up a class.  More often than

10   not, it's more than that, but at least that.  Before me now is

11   only Mitchell.  How do I know that there are other people

12   involved?

13             MS. LONDON:  Yes, Your Honor.  In our papers, and

14   particularly in our reply, I believe we go through and document

15   for Your Honor the sources of information that give us the

16   evidence for what we understand to be several hundred builders.

17   I can walk through that with you.

18                  First, in the homeowners class case, there has

19   been a spreadsheet filed that identifies at least -- I believe

20   it's 2,500 homes, you know, documented Taishan product ID.

21                  Of those, we've already been able to identify a

22   hundred builders who built at least 200 of those homes.

23                  So, assuming we are able to complete that work

24   and line up the profile forms that name the builders with the

25   homes on those spreadsheets, we believe that, at the very

                          *OFFICIAL TRANSCRIPT*

1    minimum, you know, we are looking at 200 builders that built

2    the at least 2,500 homes with Taishan board, all of which, of

3    course, was defective.

4              Second, the *Banner* settlement.  *Banner* was a

5    supplier of Taishan.  *Banner* entered into a settlement with a

6    number of builders who sought to recover some of their costs

7    arising out of the drywall defects and the warranty claims that

8    they were up against.

9              In the *Banner* settlement, there were 34 builders

10   who participated in that settlement who recovered at least some

11   portion of their costs from higher up in the chain.  There were

12   55 builders who would have been qualified to participate in

13   that settlement, but who opted out.  So that gives us 89

14   builders that we know were at least able to qualify to recover

15   at least some of their costs back from Taishan.  So that well

16   exceeds 40.

17             But *Banner*, of course, was not only the

18   distributor -- or supplier of Chinese drywall -- or of Taishan.

19   Mitchell, for example, had a different distributor.  There were

20   at least two others that we know of.  Those, unfortunately,

21   have gone defunct, and there is no way to recover costs from

22   those suppliers anymore.  But, you know, you add the other

23   builders that came from these other suppliers, they would be

24   included as well.

25             Then, of course, we have a settlement with the

*OFFICIAL TRANSCRIPT*

1  homeowners, where at least 200 builders did settle their claims

2  with homeowners.

3      THE COURT:  That's the Knauf?

4      MS. LONDON:  It was combined.  All of the claims

5  against all of the builders at this point have been resolved.

6          So, it's our understanding and estimation that

7  there are at least a hundred, if not more.

8          But setting aside the actual numbers, which the

9  Fifth Circuit has said is not required, one of the other

10  factors here that I would suggest to Your Honor is critically

11  important is the dispersement geographically of these builders.

12  That's one of the items that we look at in numerosity, whether

13  it's practical or practicable to join everybody.

14          Of course, we have builders dispersed across six

15  states.  We do have some complications in joining everybody, if

16  that was what we had to do, with respect to potential personal

17  jurisdiction challenges with some of those states.  So we do

18  have some complications that, in our view, readily satisfy the

19  numerosity requirement.

20      THE COURT:  When you say that, what does it mean?  You

21  will produce that information?  Because the briefs, I didn't --

22  I mean, we're here today on a motion for certification.  You're

23  pointing out these things, but you're really doing it orally.

24  What do you intend to do, introduce evidence to that later on,

25  or supplement the record, or how do you do that?

*OFFICIAL TRANSCRIPT*

1          MS. LONDON:  So, Your Honor, in the reply brief, we

2     have attached certain exhibits that would provide the list of

3     builders that we know about, and we reference certain docket

4     entries.  We also produced the declaration of Robert DeMott,

5     who was a scientist and one of the experts who assisted

6     builders in investigating the causes of the various homeowners'

7     complaints and uncovering and discovering the drywall issues

8     and how to remediate it.

9               Mr. DeMott has declared and looked at the list of

10    34 builders, and confirms at least 14 of those that they

11    personally worked with on Taishan remediation.

12               So we have submitted, Your Honor, evidence of

13    this numerosity.  If Your Honor would like us to submit

14    supplemental briefing on it, we would be happy to do that; but,

15    we do think that the record is amply sufficient at this point

16    for Your Honor to rule on the numerosity issue.

17         THE COURT:  What about the commonality?  You take the

18    position that only damages are due, that the Court has held in

19    another case -- or that the liability is present, and there was

20    default on that.  How is that transferred to this case?

21         MS. LONDON:  Well, that's a good question, Your Honor,

22    and, frankly, a bit unsettled, the issue of how the default

23    will apply here class-wide.

24               It's our view that we would need to certify the

25    class, and then bring a summary adjudication motion or

*OFFICIAL TRANSCRIPT*

1    proceeding that could determine either the applicability of the

2    default class-wide, or at least what are the implications of

3    Taishan's admissions to all the complaint -- to the factual

4    allegations in the complaint, and how that might spread across

5    class-wide.

6              Then, of course, we have Your Honor's finding of

7    fact and conclusions of law in the *Germano* proceedings and

8    *Hernandez*, to the extent they're relevant to Taishan on

9    *Hernandez*.

10             We believe that, you know, we would need and

11   would seek summary adjudication on liability by seeking to use

12   the preclusive effect of those findings.  But none of that,

13   standing here right now, has been determined.

14             So it's our view that liability is still

15   something very much in dispute.  We believe that it can be

16   resolved in a streamlined, efficient proceeding, but it's not

17   done.

18             So that is one of the common, and the great

19   common issues, frankly, before us today.

20        THE COURT:  Predominance is both liability as well as

21   damages.  What is it that predominates over the multitude of

22   issues?

23        MS. LONDON:  Sure.  Well, Your Honor, thankfully, due

24   to Your Honor's very careful considered case management and

25   extensive findings and many hearings, and, of course, all of

*OFFICIAL TRANSCRIPT*

1    the parties here, to the extent they were here, working

2    together on this, we have a very strong foundation for a lot of

3    common issues we think can be decided on a relatively

4    streamlined basis, but they are very important.

5              So liability is one.

6              On damages, the entitlement to damages is still

7    something that is common and yet to be decided.  So we even if

8    we are able to achieve liability here, the next question, of

9    course, will be, well, are the builders entitled to be paid

10   back for what they've done.  Is that something they are

11   entitled to; and, if so, then we look at how much.

12             The question of entitlement to damages, again, we

13   think that can be handled through a summary judgment

14   proceeding.  That's sort of an up or down question.  These are

15   really essentially all the same claims.  The homebuilders

16   fulfilled the warranty obligations that they had, incurred

17   those costs, and are they entitled to be paid back for that

18   from Taishan.

19             So it's a relatively simple question, the

20   entitlement, but it certainly still has to be decided and is an

21   overarching, very important common issue.

22             Then, on the question of how much damages would

23   each builder be entitled to, that's practically mechanical.

24   These are sophisticated businesses -- well, some are more than

25   others, but they are all businesses, and they keep records.

*OFFICIAL TRANSCRIPT*

1    They've followed the protocol set by this Court in remediation.

2    There are check stubs or other kinds of proof to document

3    payment to the homeowners.

4            These are very discrete line items of damage that

5    they are seeking to recover.  So that type of damage

6    calculation is not the kind of individualized, overarching,

7    broad, complicated determination.

8            Frankly, we think some of that also could be

9    handled through summary adjudication.  We don't know what

10   genuine issue would even be remaining once entitlement was

11   determined and what the actual amounts would be to a

12   homebuilder that comes up with receipts that were consistent

13   with the protocol.  We don't know what individualized issues.

14           Perhaps, product ID, but even product ID, as

15   Your Honor has noted in the homeowners case, there are some

16   global issues around markings or sourcing chains that can be

17   handled on a class-wide basis.

18           Any specific arguments about specific product ID,

19   you know, we think those are just less important, less driving

20   of the overall litigation.  The amounts that each homebuilder

21   is owed, that doesn't dominate or take over this litigation.

22   We have big fish to fry at the outset, and it kind of funnels

23   down into those more discrete issues.

24        THE COURT:  Well, I understand the argument on the

25   basis of damages because there are a lot of cases that

*OFFICIAL TRANSCRIPT*

1    recognize that, although there are some individualized damages,

2    that does not necessarily stop a class certification.

3              But, here, even the liability aspect is in

4    dispute.  Florida, of course, has warranty, and a strong

5    warranty.  Warranties even include builders and other people,

6    because of all of the construction that that state has.

7              But other states, you've got Alabama in this one,

8    you've got Louisiana, and a couple of other states, and you may

9    simply be looking at negligence in some of those states.  That

10   is really individualized, what they knew, what they should have

11   known, what they could have known.

12             How do you get predominance above the individual

13   aspects of those states?

14        MS. LONDON:  Well, I think we start from the place that

15   this Court has already found in the homeowners, that what is

16   owed to the homeowners is standard across all states.  There

17   were no meaningful differences in law in terms of what was a

18   homeowner entitled to to fully repair their property.  That's

19   standard.

20             The protocol for what the builders had to follow,

21   of course, also was standard across these six states that we're

22   seeking to certify.

23             So, the only question then is, in some states,

24   are the builders not able to recover that?  Are they able to

25   recover it in other states?

                    *OFFICIAL TRANSCRIPT*

1          Part of that determination, of course, will come

2     down to our summary judgment motion on liability.  So if we can

3     establish liability on all of our counts, maybe it doesn't

4     matter whether it's negligence or warranty, if all those states

5     recognize that there is some avenue for a builder to recover

6     its costs incurred in fulfilling its obligation under the

7     warranties, which we've already determined are applicable in

8     all states, then it's really an up and down type determination.

9          We can do a choice of law analysis.  We can sever

10    out or deal with certain states individually, if we have to.

11    But sitting here today, everything is uniform about what's

12    happened, and the nature of the conduct, and the claims that

13    arose against the builders, and what they had to do to deal

14    with it.

15          THE COURT:  Okay.  Is that it from your standpoint?

16          MS. LONDON:  So we ask that you certify the class under

17    Rule 23, which believe to be superior to any other alternative

18    here, given the cost, time and administrative hurdles.  Thank

19    you.

20          THE COURT:  Let me hear a response, Christy.

21          MS. EIKHOFF:  Good morning, Your Honor.  Christy

22    Eikhoff, of Alston & Bird, on behalf of the defendant, Taishan

23    Gypsum.

24          Your Honor, The Mitchell Company's effort to

25    create a class out of a handful of --

*OFFICIAL TRANSCRIPT*

1    THE COURT:  You've got a little feedback.

2    MS. EIKHOFF:  Your Honor -- I'm going to start again --

3  The Mitchell Company's effort to create a class out of a

4  handful of sophisticated corporate homebuilders with unique

5  commercial claims is self-defeating.

6    Mitchell has the burden to prove with evidence

7  that they meet every requirement of Rule 23.  As we'll show

8  you, Your Honor, they have fallen short at every step.

9    Now, fundamentally, the plaintiff moving for

10  class certification carries the burden.  That is undisputed.

11  Your Honor, I refer you to a Northern District of Texas case

12  that has an excellent survey of Fifth Circuit requirements.

13  It's the *In re Kosmos Energy* case --

14    THE COURT:  Right.

15    MS. EIKHOFF:  -- which surveys Fifth Circuit law and

16  shows that the movant must produce actual evidence that they

17  are entitled to class status.  The Court is required to examine

18  the parties' claims and evidence, and to find, not just

19  presume, that enough facts support class certification.

20    So, Your Honor, today we're here on an

21  evidentiary hearing, but there is no evidence here.  It's not

22  in the briefing that was on the record.

23    What I'm hearing and what we saw in the papers is

24  Mitchell asking this Court to rely on allegations, to make

25  assumptions, to speculate, and to piggyback off of this Court's

*OFFICIAL TRANSCRIPT*

1    prior certification of a different class of different claims

2    and different plaintiffs in this MDL.

3            Legally, it doesn't work that way.  Each class

4    must be certified on its own merits.  This Court has a duty to

5    do a rigorous evidence-based analysis every time.

6            Now, I said legally it doesn't work that way.

7    You can't look to *Amorin* and say, well, I certified it there,

8    so I must certify it here.  Factually, it doesn't work either,

9    Your Honor.

10            There are critical differences factually between

11    the *Amorin* homeowner claims and the Mitchell homebuilders.  In

12    *Amorin*, there were thousands of homeowners.  Here, there are

13    less than ten homebuilders that have been identified to the

14    Court.  I'm going to get into how we're getting to that number

15    and why the higher numbers that you heard today are not based

16    on evidence.

17            In *Amorin*, each claim was for a single property.

18    Here, the homebuilders have multiple properties at stake.

19            In *Amorin*, the individual plaintiffs were

20    consumers.  Here, you're looking at sophisticated commercial

21    entities.

22            In *Amorin*, the homeowners were end users.  They

23    got in the house, and there was drywall in it.  They didn't put

24    it there.  But here, the homebuilders are active participants

25    in the supply chain.

*OFFICIAL TRANSCRIPT*

1            Then, on damages, at the time that you certified

2     the *Amorin* class, especially, you were looking to meet their

3     prospective remediation needs for individuals who couldn't

4     afford to undertake the cost of remediating their property

5     themselves; but, here, these years later, the Mitchell

6     homebuilders are looking for simply reimbursement of costs that

7     were already incurred.

8            Now, when we get to the Rule 23 factors that this

9     Court must consider and analyze, you will see, and we will

10    explain, that Mitchell fails at every step of the analysis.

11           As we go through these today, some of these,

12    Your Honor, are related to each other.  We're not going to

13    necessarily go through them in this order, and we're going to

14    couple some of them up.

15           Now, the Court asked plaintiffs' counsel, how do

16    we know who else is out there?  We have been wanting to know

17    that question, too.

18           Actually, back when we served class certification

19    discovery back in September of 2017, we asked Mitchell to

20    provide us with a list of other homebuilders that they think

21    are in the class.  We never got such a list.

22           Then, it wasn't until more than a year later that

23    we finally got the documents we had -- some of the documents

24    that we had requested, and we deposed Mitchell's 30(b)(6)

25    representative.  That was in November of 2018.  We asked him,

1   who else is out there?  Who else do you know are members of

2   your class?

3           That was, by the way, one of the 30(b)(6) topics

4   that we had him be prepared on.

5           This is a list that he gave us.  He said, well,

6   there is Beazer, Lennar, Horton and WCI.

7           Well, Beazer is in this -- Mitchell is not

8   representing Beazer.  They propose that Beazer come in as a

9   separate class rep.  So we know that, to the extent that Beazer

10  is involved in this case, they are not a member of Mitchell's

11  class.

12          Then Lennar, Your Honor, Taishan settled an

13  individual lawsuit with Lennar quite a while ago, so Lennar is

14  already taken care of.  They are not part of this class.

15          So that gets you four names, but, really, only

16  two of them are potential class members.

17      THE COURT:  What's your input as to why the builders

18  haven't been just knocking on the door to get in here?  Why is

19  that?

20      MS. EIKHOFF:  They have, Your Honor.  I'm actually

21  going to show you that we have settled with three homebuilders.

22  There is a better way to resolve these claims, and other

23  homebuilders have figured that out.

24          So then, in January of this year, we deposed

25  Beazer's representative, and we asked him, who else is out

*OFFICIAL TRANSCRIPT*

1    there?  He said, Lennar, which we have settled with.  Then,

2    again, he said Horton.  So we didn't add any names to the list.

3                Discovery was closed, so we thought, and we filed

4    our response to their class certification motion.  We said, you

5    don't have numerosity.  We were surprised in the reply that

6    they come up with a new witness that purports to give

7    additional names to satisfy numerosity.

8                Your Honor allowed us to depose him.  His name

9    was Dr. DeMott.  I want to clarify, he is not testifying as an

10   expert on this class certification motion.  He had previously

11   served as an expert, but he was only presented as a fact

12   witness for this -- these purposes.

13               So we asked him, who do you think is out there?

14   He said, well, there is the Beazer.  There is Lennar.  Again,

15   Horton comes up.  Then he's able to come up with five more

16   names that he thinks potentially had Taishan drywall.

17               Now, to be clear, Your Honor, Dr. DeMott had no

18   actual foundation to conclude that it was Taishan drywall.  We

19   will submit to the Court his testimony, and it will make clear

20   that he was relying on very old documents from the case that

21   have since been rejected by the plaintiffs and by the

22   defendants as having contained inaccurate information.

23               But even if you credit all of these, his whole

24   list of five more, you don't even get to ten.

25               Now, in their brief and in oral argument today,

*OFFICIAL TRANSCRIPT*

1    the plaintiff side is throwing out bigger numbers.  Oh, well,

2    there is all these people -- all these homebuilders that were

3    involved in the litigation at some point, and some of them were

4    involved in these other settlements.  In their brief, they

5    relied on the amount of drywall that Taishan had sent into the

6    U.S., and said, well, you can just assume from that, that there

7    have got to be a lot.

8              But that doesn't work in the Fifth Circuit.  The

9    Fifth Circuit has already encountered similar attempts to

10   speculate on numerosity instead of provide actual evidence.

11             So, here, you see where they, in their reply,

12   talk about appealing to common sense, that surely it has to be

13   more than 40.  But in the *Zeidman* case in the Fifth Circuit

14   case, the plaintiffs -- that was a securities litigation case,

15   Your Honor.  The plaintiffs said, well, there were six million

16   trades at the relevant time period, so common sense is that

17   there have to be a lot of traders.

18             But the problem with that, Your Honor, and the

19   Fifth Circuit noted -- and, actually, the district court in

20   that case noted as well, because it was denied, this class cert

21   was denied, is that not all of the traders would be in the

22   class.  So that assumption breaks down because not every trader

23   is a class member.

24             The same is here, Your Honor, because not every

25   person who eventually got Chinese drywall was a builder.  Then

*OFFICIAL TRANSCRIPT*

1    not every builder that has been involved in this case had

2    Taishan drywall.  So there has to be actual evidence of the

3    number of builders that had Taishan drywall.

4              There is no evidence before this Court that there

5    are even ten.  I think that ten is probably generous, given the

6    lack of foundation and the basis for Dr. DeMott's testimony on

7    that point.

8              Now, Your Honor raised the issue about that we're

9    here today, this is the evidentiary hearing.  I heard

10   plaintiffs' counsel say that they are still working to complete

11   that work, to complete some analysis on numerosity.

12             Now is the time.  Your Honor, this renewed motion

13   for class certification was filed in July of 2017.  The

14   discovery period in this case went from September 2018 until

15   January of -- sorry, from September 2017, until January of

16   2019.  It was 16 months, Your Honor.

17             Then, when the 16 months were up, and we thought

18   we were done, we got a new witness and a new declaration, and

19   we had to reopen the discovery.  They have had all the time in

20   the world to get their evidence together on numerosity.  Now is

21   the day.  It's not here.  So we would ask that supplemental

22   briefing or supplemental evidence not be permitted.

23             Now, I'm going to turn to typicality and

24   adequacy, and want to look in particular at the class rep and

25   the only plaintiff in this case, which is The Mitchell Company,

**OFFICIAL TRANSCRIPT**

1   a homebuilder.

2          The Mitchell Company stands in a uniquely

3   disqualified position to be a class rep because it does not

4   meet its own class definition.  That was repeatedly admitted at

5   the Mitchell 30(b)(6) deposition.

6          We're going to go through some of these points

7   because, at the beginning of argument, there was discussion

8   about, here is what the homebuilders did, the homebuilders had

9   warranty claims, and they had to go out, and they had to follow

10  the protocol, and they had to, like, fix everyone's houses.

11         Your Honor, the word "warranty" does not appear

12  anywhere in the Mitchell deposition.  Mitchell did not

13  remediate a single home by removing and replacing drywall.  I

14  want to go through some of the excerpts of the testimony to

15  underscore that point.

16         So, first, Mitchell did not remediate any homes

17  by removing and replacing drywall.  I'm going to play a clip.

18         (Whereupon, at this point in the proceeding, a video

19  clip was played.)

20         "QUESTION:  So Mitchell is not an example of a

21  homebuilders that went in and remediated the properties

22  themselves by removing and replacing drywall?

23         "ANSWER:  In respect of Taishan, that's correct."

24         (Whereupon, at this point in the proceeding, the video

25  clip concluded.)

*OFFICIAL TRANSCRIPT*

1       MS. EIKHOFF:  Mitchell is also not a homebuilders that
2   replaced appliances for its homeowners.
3           (Whereupon, at this point in the proceeding, a video
4   clip was played.)
5           "QUESTION:  So Mitchell is not an example of a
6   homebuilder that went in and replaced all of the kitchen
7   appliances for all of the homes that had Chinese drywall?
8           "ANSWER:  Not in respect of Taishan drywall."
9           (Whereupon, at this point in the proceedings, the video
10  clip concluded.)
11      MS. EIKHOFF:  Mitchell is also not a homebuilder that
12  paid to relocate its homeowners during remediations because
13  remediations weren't occurring.
14          (Whereupon, at this point in the proceedings, a video
15  clip was played.)
16          "QUESTION:  So Mitchell Company is not an example of a
17  homebuilder that paid to relocate all of its homeowners that
18  had Taishan Chinese drywall?
19          "ANSWER:  That's correct."
20      MS. EIKHOFF:  Mitchell does not fit into the category
21  of a homebuilder that, instead of remediating, just paid checks
22  to all of its homebuilders.  That didn't happen either.
23          (Whereupon, at this point in the proceedings, a video
24  clip was played.)
25          "QUESTION:  So Mitchell Company is not an example of a

*OFFICIAL TRANSCRIPT*

1     homebuilder that resolved its Chinese drywall claims with its

2     homeowners by writing checks to each of the homebuilders?

3             "ANSWER:  That's correct in respect to Taishan."

4             (Whereupon, at this point in the proceedings, the video

5     clip concluded.

6             MS. EIKHOFF:  It begs the question, what did Mitchell

7     actually do?  What Mitchell did in response to the Chinese

8     drywall problem is a response that I have never seen from

9     anyone else, and I've been working on the Chinese drywall cases

10    for more than four years.  I had never heard of this before

11    until we got into discovery in this case.

12            Instead of removing and replacing Chinese

13    drywall, the Mitchell Company decided to follow the advice of a

14    start-up company that claimed to have invented an experimental

15    spray that could -- as they claimed, could just be sprayed on

16    Chinese drywall, and that would remediate it.

17            So, they used this experimental spray through

18    this start-up company on one of their homes, the home of a

19    homeowner named Mindy Lister (spelled phonetically).  By all

20    accounts, that experiment was a disaster.

21            She ended up suing the start-up and some

22    individuals, and sued The Mitchell Company in one lawsuit.

23    That case was eventually settled for $279,000.  But, as this

24    testimony is about to explain, the Mitchell Company did not pay

25    for any of it out of pocket.  In fact, their allocation, which

*OFFICIAL TRANSCRIPT*

1    was paid by insurance, was only about 20 percent.

2              I want to tell the Court that on the next slide,

3    all of the testimony is not written on the slide.  There is --

4    we couldn't fit it.  But there is -- so there is some

5    contextual excerpts that you won't see on the page.

6              (Whereupon, at this point in the proceeding, a video

7    clip was played.)

8              "QUESTION:  Did Mitchell pay $279,000 to settle the

9    Lister claim?

10             "ANSWER:  No, ma'am.

11             "QUESTION:  How much did Mitchell pay?

12             "ANSWER:  Our share was 57,000.

13             "QUESTION:  Did insurance cover any of that payment?

14             "ANSWER:  I believe that Scottsdale made that payment

15   then under the policy sought reimbursement from Mitchell.

16             "QUESTION:  And as we sit here today, do you know if

17   Mitchell ever paid any part of that $57,000?

18             "ANSWER:  When we researched that, we could not find a

19   payment.

20             "QUESTION:  So it could be that Mitchell never paid

21   $57,000 itself --

22             "ANSWER:  That's correct.

23             "QUESTION:  -- ever?

24              "Okay.  Did you make payments to any other

25   homeowners?

*OFFICIAL TRANSCRIPT*

1          "ANSWER:  No, ma'am."

2          (Whereupon, at this point in the proceedings, the video

3     clip concluded.)

4          MS. EIKHOFF:

5               So, Your Honor, the Court raised earlier the

6     question of insurance, did insurance pay.  Some did, some

7     didn't.

8               The response that we got from plaintiffs' counsel

9     was, well, some did, some didn't.  That's going to have to be

10    addressed.

11              That is fundamental.  That's an individualized

12    factor.  That is another individualized factor that completely

13    undercuts this idea that these claims are all the same.

14              So, Mitchell's damages are unique, and they are

15    not representative of any other homebuilder.

16              It seems, Your Honor, to me that the plaintiff

17    side recognized that, and they're trying to fix it by bringing

18    in Beazer.  But Beazer can't be a class representative.  Beazer

19    is not even a plaintiff.

20              Under the Fifth Circuit, a class rep must be a

21    plaintiff or must become a plaintiff by amendment of the

22    complaint or by intervention.  That's the *Johnson v. American*

23    *Credit Co.* case.

24              What's curious to me is that Mitchell has never

25    even attempted to cure this deficiency.  Mitchell has had

                    ***OFFICIAL TRANSCRIPT***

1    deficient filings over the course of this litigation.

2              They have attempted to amend the complaint once.

3    The clerk flagged that as deficient.

4              They filed -- I think I counted seven different

5    motions for class certification attempting to cure

6    deficiencies, but they've never once attempted to add Beazer as

7    a plaintiff.  We pointed that out as a deficiency in January of

8    this year.

9              Now, I heard counsel represent that these are

10   essentially the same claims, and everything is uniform.

11             Now, Beazer is not a plaintiff and can't be a

12   class rep; but, we're actually glad that Mitchell decided to

13   bring them up and to make them available for discovery because

14   that discovery showed us just how radically different these two

15   homebuilders are.

16             There is no commonality and no predominance.  The

17   only two homebuilders that we have evidence for, Your Honor,

18   are nothing alike.

19             I'll show you, starting with product

20   identification.  Their product identification, completely

21   different.  Different markings for the two different companies.

22   Mitchell, from what we've seen, just has made in China

23   markings.

24             Beazer, Beazer doesn't have the same markings in

25   their two different subdivisions.  They have such a wide

                      *OFFICIAL TRANSCRIPT*

1    variety of drywall markings, including Knauf, including

2    domestic drywall.  It's a hodgepodge, but none of them are the

3    same markings as Mitchell's markings.

4           That shouldn't be too surprising because we also

5    have found out, the evidence shows, that they got their drywall

6    from completely different sources.

7           Mitchell traced a supply chain, orally, that

8    they -- as far back as they could get was to Devon

9    International.  We don't know if Devon got it from Taishan or

10   not.  But then Beazer had two different suppliers for their two

11   different subdivisions, and none of their suppliers are the

12   same as Mitchell's suppliers.

13          The argument was made that this is the same

14   source, that we have the same source of drywall.  No, we don't.

15   There is no evidence.  In fact, all of the evidence is that

16   these -- this was different drywall obtained from different

17   sources.

18          Then, the way that the two companies responded to

19   the Chinese drywall problem, completely different.  We just

20   talked about Mitchell's use of a third-party experimental

21   remediation spray to treat one property.  Then they settled

22   with that one homeowner 20 percent of a lawsuit settlement that

23   was paid for by their insurance.

24          Meanwhile, Beazer did go in and actually

25   physically remediate 48 properties through contractors and paid

*OFFICIAL TRANSCRIPT*

1    stipends to relocated homeowners.  Their damages are different

2    in type and different in amounts.

3            Now, it's interesting to hear how easy -- the

4    representations were made about how easy it would be to

5    calculate their damages.  We asked Mitchell what the company's

6    damages were, and the witness could not say.  In fact, he gave

7    an estimate that then was corrected by class counsel on the

8    record that the estimate included costs that they are not

9    seeking to recover.

10           We did get some accounting records from them, and

11   they were very confusing.  Our best attempts to go through the

12   line items on the accounting records got us to 162,000, not

13   even.  A lot of those accounting entries, we were told at the

14   deposition weren't actual cash outlays.  They were accounting

15   entries, but not representative of monies actually spent.  So

16   it's not more than 162,000 for Mitchell.

17           Beazer has detailed accounting records showing

18   more than $3.1 million.  These are, again, not the same.

19           Your Honor, these individual differences

20   predominate.  This is not representative litigation.  They are

21   not even trying to say that it is.

22           Because from day one, in their renewed motion,

23   they have admitted that every class member is going to have to

24   prove its damages individually, so Mitchell is not going to

25   represent anyone.  They can't represent anyone.  That's not a

*OFFICIAL TRANSCRIPT*

1    class action.  It's not even a mass action.  There is not

2    enough.

3          Your Honor, when we're talking about

4    predominance, Your Honor also raised the concerns about state

5    law differences, which are required consideration, another

6    reason why this class action is just doomed.

7          Finally, superiority, Your Honor.  What we have

8    here are a few sophisticated corporate entities that are

9    pursuing their commercial claims.  They have their own lawyers.

10         Beazer, at its deposition, was defended not by

11   class counsel, but by its own lawyer at King & Spalding, and

12   that deposition took place at King & Spalding's offices.

13         They are motivated to individually control their

14   own litigation, which is a Rule 23(b) factor that cuts against

15   superiority.

16         The Fifth Circuit has said that the most

17   compelling rationale for finding superiority in a class action

18   is the existence of a negative value suit, a suit that no one

19   party could bring on their own because it wouldn't be

20   economically justified.

21         We're talking about six and seven-figure values

22   damages claims for a handful of sophisticated, represented

23   corporate entities.

24         We know the homebuilders can bring their own

25   suits because they've already done it, and that's the superior

*OFFICIAL TRANSCRIPT*

1    way of resolution.

2              Your Honor, in 2015, before The Mitchell Company

3    renewed its motion for class certification, we had already

4    settled a lawsuit in Virginia with the Dragas Management

5    Corporation, which is a homebuilder in Florida.

6              In Florida, we have settled with Lennar Homes,

7    the one whose name kept coming up over and over by

8    The Mitchell Company and Beazer as one of the other ones.  They

9    are already taken care of and settled.  That case has been

10   dismissed.

11             Also in Florida, Meritage Homes of Florida

12   brought an individual suit.  We settled that individual suit.

13             These homebuilders brought their claims and got

14   them resolved the old fashioned way, the superior way.

15             The Supreme Court has made clear that the class

16   actions aren't the old fashioned way, they are the exception.

17   In *Comcast v. Behrend*, 569 U.S. 27, the Supreme Court has said

18   that class actions are the exception; and, because they are the

19   exception, every requirement has to be met sufficiently with

20   evidence.  Mitchell has not done that, and class certification

21   should be denied.

22             Your Honor, as a housekeeping measure, we have

23   the deposition transcripts and exhibits from class

24   certification discovery.  I almost don't want to submit it

25   because we don't need to submit evidence.  It's not our burden.

*OFFICIAL TRANSCRIPT*

1    But we do think it would be helpful to the Court.

2              So, Your Honor, we would just ask for the Court's

3    guidance in the best way to submit that to the Court.  We could

4    file a notice of submission of original transcripts

5    electronically.  We also have a hard copy here of all of that,

6    if you would like for me to submit it to the clerk to be

7    admitted now.

8              THE COURT:  The hard copy would make it a little

9    easier, for me, anyway.

10             MS. EIKHOFF:  Okay.

11             THE COURT:  Let me hear a response.

12             MS. LONDON:  Thank you, Your Honor.

13             THE COURT:  How do you see the numerosity argument?

14   She says that you haven't proved it, and there's nothing in the

15   record to prove it.  How do you see that?

16             MS. LONDON:  Yes, Your Honor.  We provided Your Honor

17   with lists and lists of names of builders that we believe would

18   be part of this class.  We could consolidate those into one

19   long list.  Frankly, we'll need to do that anyway to provide

20   notice.  That's our list for notice.  We have it.  We've

21   submitted it to Your Honor in the reply.

22             We have produced names of at least 200 builders

23   that we believe are part of this class.  We've given those

24   names.  If it would be helpful for streamlining for Your Honor,

25   we could put it in one long list.  I recognize that they are a

1   bit dispersed in sort of exhibit to this, exhibit to that,

2   exhibit to this.  But the numbers are what they are.  The

3   builders are who they are.

4           We need to give these builders notice, whether we

5   go through a class, or we decide to join everybody -- which we

6   don't think is the superior way to go -- but, you know, either

7   way, we'll have to give notice to everybody, and we've got that

8   list, and we believe we can do it.

9       THE COURT:  She says you fail on typicality because

10  Mitchell did not remediate one single home, and they didn't

11  relocate anybody and pay or relocation.  How do you see that?

12      MS. LONDON:  Sure.  Well, the 160,000 that was provided

13  in documented expenses, those were for repairs, repairs subject

14  to the Court's protocol.

15          So it's true, Mitchell did not do every single

16  thing that could have been done in any possible home.  Other

17  builders did.  There are certain elements of what kind of costs

18  that this Court has said would be incurred in remediating or

19  repairing or dealing with any home.  All of those kinds of

20  costs fall under our class definition.  They are all deriving

21  from the same source, Taishan's conduct, the same defects in

22  the product, the same type of repairs that had to be done.

23          So Mitchell's damages of incurring costs arising

24  out of the repair of the property from this drywall is typical.

25  Some builders may remediated fully.  Some may have incurred

*OFFICIAL TRANSCRIPT*

1    costs for repairing just HVAC systems or appliances, but those

2    are all part and parcel of the exact same type of protocol

3    already put in place by this Court.

4        THE COURT:  With respect to superiority, she takes the

5    position that these are sophisticated companies, sophisticated

6    business entities, that many of them have already settled, and

7    that's the, as she terms it, old fashioned way of dealing with

8    this.

9        MS. LONDON:  Your Honor, if the old fashioned way

10   worked, then we wouldn't be here.  Mitchell has not settled its

11   claim.  Beazer has not settled its claim.  Several hundred

12   other builders that we've identified, not settled their claims.

13            So we have to litigate.  The only question before

14   this Court is what's the best way to litigate this number of

15   claims?  What is the superior method?

16            Based on the history in litigating against

17   Taishan -- and, of course, Mitchell was involved in all of the

18   personal jurisdiction discovery argued before the Fifth Circuit

19   to establish personal jurisdiction in Florida.  Mitchell at

20   this point is a negative value suit.  The costs far dwarf what

21   Mitchell would be able to recover under this case.

22            Mitchell is not alone.  It's perfectly reasonable

23   for any individual builder not to want to go through this

24   process on their own.  Individual litigation, where you still

25   have liability to be determined, where the entitlement to

*OFFICIAL TRANSCRIPT*

1    damages still has to be determined, these are fundamentally

2    common issues that should not be adjudicated one by one.

3           So I don't think, respectfully, that individual

4    litigation would even satisfy Rule 1 here.  There is so much

5    duplicity -- a lot of duplication of proceedings that would

6    have to come from that, whether -- the only comparator here --

7    and we're looking at *In re:  TWL*, which is a case out of the

8    Fifth Circuit, really analyzed this question of numerosity and

9    superiority, in looking at it in a case where the Court has to

10   deal with these numbers of cases, and what's the best method

11   for doing that, and so we have to compare the relative

12   advantages.

13          So, respectfully, we don't believe that

14   individual litigation is realistic, practical, economical or

15   satisfies Rule 1.  So we have to look at, is it joinder, under

16   Rule 20, or are we going under Rule 23?

17          Rule 23, frankly, gives us the clearest runway to

18   resolving this case.  We appoint counsel with representatives.

19   We have one docket.  We don't have millions of filings and lots

20   of administrative headaches for the Court and all the things

21   that come with, you know, having to join everybody.

22          I mean, we have a plan for moving this case

23   forward very, very quickly, in a way that will resolve all of

24   those claims in one swoop, in one action.  Rule 23 gives us

25   that opportunity.  If we were to try to do this the old

*OFFICIAL TRANSCRIPT*

1  fashioned way, not only is that far inferior in terms of a

2  methodology for getting this case resolved, but it's frankly

3  unjust.  It will leave builders out.  It will leave builders

4  holding the bag.

5          So it is our strong view that we should be able

6  to move ahead under Rule 23.  We can give direct notice to the

7  list of builders that we have, and at the same time provide

8  them with a claim form.  Let's get all that information all in

9  one swoop, proceed through summary adjudication on the big

10  common questions, narrow this down as far as we can using all

11  of the Court's procedures that have already been put in place.

12          I think Your Honor asked why the builders haven't

13  been knocking at the door.  That's a fair question.  But I do

14  have to point out that the builders have been here from the

15  beginning, going through the jurisdictional discovery.  They

16  participated in the *Germano* proceedings, helped develop that

17  protocol.  From the get-go, they've been here.

18          But I think, respectfully, Your Honor's case

19  management has been correct, to front load, you know, the

20  homeowners' claims, allow those proceedings to unfold and

21  figure out exactly what these homeowners are owed and what the

22  right appropriate costs are.

23          Getting those proceedings front-loaded, that

24  makes good sense, not only because it streamlines the issues

25  for the builders, but, I mean, to look at -- we're talking

*OFFICIAL TRANSCRIPT*

1    about people that were living in contaminated homes with no

2    recourse.

3              So I think Your Honor's ordering makes sense.

4    But here we are, we've got all of the conditions ripe to

5    resolve this, and the rules and the tools to do it.

6         THE COURT:  Just thinking down the line, though, what

7    would you -- I mean, this case has been transferred to me.  It

8    hadn't been directly filed here.  So, would I be then remanding

9    it back to Florida?

10        MS. LONDON:  So we would request that Your Honor handle

11   this through pretrial, whether that's notice and going through

12   the summary judgment motions.  Given Your Honor's extensive

13   familiarity with the record, we believe that would be most

14   efficient.

15             But Your Honor certainly can handle this however

16   you would like.  If you would like to remand this to Florida

17   and let the court there handle it.  We think the efficiencies

18   that come from a class proceeding will be so great that we are

19   prepared to proceed in any forum.

20             If Your Honor prefers to manage those proceedings

21   up through the point where we have whatever remaining issues of

22   fact are on the amount of damages and remand then, that's fine

23   too.  We would waive *Lexecon*.  We would let you do it all,

24   but...

25        MS LONDON:  Thank you, Your Honor.

**OFFICIAL TRANSCRIPT**

1            THE COURT:  Thank you very much.  I appreciate both of

2    you all's argument.  I'll take it under consideration.  Thank

3    you.

4                    Court will stand in recess.

5            THE DEPUTY CLERK:  All rise.

6            (WHEREUPON, at 10:25 a.m., the proceedings were

7    concluded.)

8                                *    *    *

9

10

11                    REPORTER'S CERTIFICATE

12

13          I, Cathy Pepper, Certified Realtime Reporter, Registered

14    Merit Reporter, Certified Court Reporter in and for the State

15    of Louisiana, Official Court Reporter for the United States

16    District Court, Eastern District of Louisiana, do hereby

17    certify that the foregoing is a true and correct transcript to

18    the best of my ability and understanding from the record of the

19    proceedings in the above-entitled and numbered matter.

20

21                                *s/Cathy Pepper*

22                                Cathy Pepper, CRR, RMR, CCR
                                  Certified Realtime Reporter
23                                Registered Merit Reporter
                                  Official Court Reporter
24                                United States District Court
                                  Cathy_Pepper@laed.uscourts.gov

25

                    ***OFFICIAL TRANSCRIPT***

## $

**$279,000** [2] - 29:23, 30:8
**$57,000** [2] - 30:17, 30:21

## 0

**09-4115** [1] - 1:10
**09-MD-2047** [1] - 1:7

## 1

**1** [2] - 40:4, 40:15
**10019** [1] - 2:16
**10:25** [1] - 43:6
**1201** [1] - 2:6
**14** [1] - 14:10
**16** [2] - 26:16, 26:17
**160,000** [1] - 38:12
**1601** [1] - 1:23
**162,000** [2] - 34:12, 34:16
**19** [3] - 1:8, 4:7, 5:2

## 2

**2,500** [2] - 11:20, 12:2
**20** [3] - 30:1, 33:22, 40:16
**200** [4] - 11:22, 12:1, 13:1, 37:22
**2000** [1] - 2:10
**201** [1] - 2:25
**2015** [1] - 36:2
**2017** [3] - 22:19, 26:13, 26:15
**2018** [2] - 22:25, 26:14
**2019** [3] - 1:8, 5:2, 26:16
**2047** [1] - 5:9
**23** [7] - 19:17, 20:7, 22:8, 40:16, 40:17, 40:24, 41:6
**23(b** [1] - 35:14
**27** [1] - 36:17
**275** [1] - 1:20
**29TH** [1] - 1:20

## 3

**3.1** [1] - 34:18
**30(b)(6** [3] - 22:24, 23:3, 27:5
**30309** [1] - 2:6

**34** [2] - 12:9, 14:10
**365** [1] - 2:10
**36604** [1] - 1:24
**37** [1] - 4:8

## 4

**40** [3] - 11:9, 12:16, 25:13
**405** [1] - 2:20
**40TH** [1] - 2:25
**43** [1] - 4:9
**48** [1] - 33:25

## 5

**5** [1] - 4:5
**500** [1] - 3:4
**504** [1] - 3:5
**51** [1] - 2:16
**52ND** [1] - 2:16
**55** [1] - 12:12
**569** [1] - 36:17
**57,000** [1] - 30:12
**589-7779** [1] - 3:5

## 7

**7** [1] - 4:6
**70130** [2] - 2:11, 3:5
**70170** [1] - 2:25

## 8

**89** [1] - 12:13

## 9

**94105** [1] - 2:20
**94111** [1] - 1:20
**9:30** [1] - 1:8

## A

**a.m** [1] - 43:6
**A.M** [1] - 1:8
**ability** [1] - 43:18
**able** [9] - 11:21, 11:23, 12:14, 16:8, 18:24, 24:15, 39:21, 41:5
**above-entitled** [1] - 43:19
**accounting** [5] - 34:10, 34:12, 34:13, 34:14, 34:17
**accounts** [1] - 29:20

**achieve** [1] - 16:8
**action** [6] - 7:2, 35:1, 35:6, 35:17, 40:24
**actions** [3] - 5:23, 36:16, 36:18
**active** [1] - 21:24
**actual** [7] - 13:8, 17:11, 20:16, 24:18, 25:10, 26:2, 34:14
**add** [3] - 12:22, 24:2, 32:6
**addition** [2] - 5:25, 6:17
**additional** [1] - 24:7
**addressed** [1] - 31:10
**adequacy** [2] - 10:3, 26:24
**adequate** [1] - 10:6
**adjudicated** [1] - 40:2
**adjudication** [4] - 14:25, 15:11, 17:9, 41:9
**administrative** [2] - 19:18, 40:20
**admissions** [1] - 15:3
**admitted** [3] - 27:4, 34:23, 37:7
**advantages** [1] - 40:12
**advice** [1] - 29:13
**advocate** [1] - 7:11
**afford** [1] - 22:4
**ago** [1] - 23:13
**ahead** [1] - 41:6
**air** [2] - 7:16, 7:19
**ALABAMA** [1] - 1:24
**Alabama** [1] - 18:7
**ALEX** [1] - 2:24
**alike** [1] - 32:18
**all's** [1] - 43:2
**allegations** [2] - 15:4, 20:24
**allocation** [1] - 29:25
**allow** [2] - 8:1, 41:20
**allowed** [1] - 24:8
**almost** [1] - 36:24
**alone** [1] - 39:22
**Alston** [1] - 19:22
**ALSTON** [1] - 2:4
**alternative** [1] - 19:17
**amend** [1] - 32:2
**amendment** [1] - 31:21
**American** [1] - 31:22
**Amorin** [7] - 21:7, 21:11, 21:12, 21:17, 21:19, 21:22, 22:2
**amount** [2] - 25:5, 42:22

**amounts** [3] - 17:11, 17:20, 34:2
**amply** [1] - 14:15
**analysis** [5] - 7:22, 19:9, 21:5, 22:10, 26:11
**analyze** [1] - 22:9
**analyzed** [1] - 40:8
**AND** [3] - 2:3, 2:9, 2:14
**ANSWER** [9] - 27:23, 28:8, 28:19, 30:10, 30:12, 30:14, 30:18, 30:22, 31:1
**aNSWER** [1] - 29:3
**anyway** [2] - 37:9, 37:19
**appealing** [1] - 25:12
**appear** [1] - 27:11
**appearance** [1] - 5:11
**APPEARANCES**[3] - 1:16, 2:1, 3:1
**appliances** [4] - 8:24, 28:2, 28:7, 39:1
**applicability** [1] - 15:1
**applicable** [1] - 19:7
**apply** [1] - 14:23
**appoint** [1] - 40:18
**appreciate** [1] - 43:1
**appropriate** [3] - 7:11, 10:6, 41:22
**ARATA** [1] - 2:22
**argued** [1] - 39:18
**argument** [7] - 9:5, 17:24, 24:25, 27:7, 33:13, 37:13, 43:2
**arguments** [2] - 9:7, 17:18
**arise** [1] - 11:2
**arising** [2] - 12:7, 38:23
**arose** [1] - 19:13
**aside** [1] - 13:8
**aspect** [1] - 18:3
**aspects** [1] - 18:13
**assisted** [1] - 14:5
**assume** [1] - 25:6
**assuming** [1] - 11:23
**assumption** [1] - 25:22
**assumptions** [1] - 20:25
**ATLANTA** [1] - 2:6
**ATLANTIC** [1] - 2:5
**attached** [1] - 14:2
**attempted** [3] - 31:25, 32:2, 32:6
**attempting** [1] - 32:5
**attempts** [2] - 25:9,

34:11
**available** [1] - 32:13
**avenue** [1] - 19:5
**AVENUE** [1] - 2:25

## B

**B406** [1] - 3:4
**bag** [2] - 9:13, 41:4
**Banner** [5] - 12:4, 12:5, 12:9, 12:17
**based** [3] - 21:5, 21:15, 39:16
**basis** [6] - 8:5, 8:6, 16:4, 17:17, 17:25, 26:6
**BATTERY** [1] - 1:20
**Beazer** [22] - 9:22, 10:5, 23:6, 23:7, 23:8, 23:9, 24:14, 31:18, 32:6, 32:11, 32:24, 33:10, 33:24, 34:17, 35:10, 36:8, 39:11
**Beazer's** [1] - 23:25
**become** [1] - 31:21
**BEFORE** [1] - 1:13
**beginning** [2] - 27:7, 41:15
**begs** [1] - 29:6
**behalf** [4] - 5:14, 5:17, 5:24, 19:22
**Behrend** [1] - 36:17
**BERNARD** [1] - 2:5
**BERNSTEIN** [1] - 1:18
**best** [5] - 34:11, 37:3, 39:14, 40:10, 43:18
**better** [1] - 23:22
**between** [2] - 8:19, 21:10
**big** [2] - 17:22, 41:9
**bigger** [1] - 25:1
**Bird** [1] - 19:22
**BIRD** [1] - 2:4
**bit** [2] - 14:22, 38:1
**BNMB** [1] - 2:8
**board** [1] - 12:2
**bottom** [1] - 10:24
**bought** [1] - 6:5
**BOUNDS** [1] - 1:22
**breaks** [1] - 25:22
**brief** [3] - 14:1, 24:25, 25:4
**briefing** [3] - 14:14, 20:22, 26:22
**briefs** [1] - 13:21
**bring** [4] - 14:25, 32:13, 35:19, 35:24
**bringing** [1] - 31:17

**broad** [1] - 17:7
**broken** [1] - 7:17
**brought** [3] - 7:14, 36:12, 36:13
**build** [2] - 6:5, 6:6
**Builder** [1] - 5:14
**builder** [11] - 6:5, 6:6, 6:7, 6:10, 6:17, 8:21, 16:23, 19:5, 25:25, 26:1, 39:23
**BUILDER** [1] - 1:18
**builders** [54] - 6:1, 6:20, 6:23, 7:3, 7:7, 7:15, 7:25, 8:8, 8:12, 8:15, 8:17, 9:1, 9:13, 9:14, 11:5, 11:6, 11:16, 11:22, 11:24, 12:1, 12:6, 12:9, 12:12, 12:14, 12:23, 13:1, 13:5, 13:11, 13:14, 14:3, 14:6, 14:10, 16:9, 18:5, 18:20, 18:24, 19:13, 23:17, 26:3, 37:17, 37:22, 38:3, 38:4, 38:17, 38:25, 39:12, 41:3, 41:7, 41:12, 41:14, 41:25
**Builders'** [1] - 5:19
**BUILDING** [3] - 2:13, 2:14, 2:19
**building** [1] - 6:19
**built** [2] - 11:22, 12:1
**burden** [3] - 20:6, 20:10, 36:25
**business** [1] - 39:6
**businesses** [2] - 16:24, 16:25
**but..** [1] - 42:24
**BY** [9] - 1:18, 1:23, 2:4, 2:10, 2:15, 2:19, 2:23, 3:7, 3:8

## C

**CA** [1] - 2:20
**Cabraser** [1] - 5:15
**CABRASER** [2] - 1:18, 1:18
**calculate** [1] - 34:5
**calculation** [1] - 17:6
**CALIFORNIA** [1] - 1:20
**CALLED** [1] - 5:4
**CANAL** [1] - 2:10
**care** [2] - 23:14, 36:9
**careful** [1] - 15:24
**carries** [1] - 20:10
**case** [32] - 5:8, 9:20,

9:21, 10:11, 11:18, 14:19, 14:20, 15:24, 17:15, 20:11, 20:13, 23:10, 24:20, 25:13, 25:14, 25:20, 26:1, 26:14, 26:25, 29:11, 29:23, 31:23, 36:9, 39:21, 40:7, 40:9, 40:18, 40:22, 41:2, 41:18, 42:7
**cases** [4] - 6:9, 17:25, 29:9, 40:10
**cash** [1] - 34:14
**category** [1] - 28:20
**CATHY** [1] - 3:3
**Cathy** [2] - 43:13, 43:22
**Cathy_Pepper@laed .uscourts.gov** [2] - 3:6, 43:24
**caused** [2] - 7:23, 8:3
**causes** [1] - 14:6
**CCR** [2] - 3:3, 43:22
**CENTER** [2] - 1:19, 2:5
**cert** [1] - 25:20
**certain** [5] - 8:24, 14:2, 14:3, 19:10, 38:17
**certainly** [5] - 9:7, 10:4, 10:14, 16:20, 42:15
**CERTIFICATE** [1] - 43:11
**certification** [14] - 5:20, 13:22, 18:2, 20:10, 20:19, 21:1, 22:18, 24:4, 24:10, 26:13, 32:5, 36:3, 36:20, 36:24
**certified** [4] - 7:6, 21:4, 21:7, 22:1
**Certified** [3] - 43:13, 43:14, 43:22
**CERTIFIED** [2] - 3:3, 3:4
**certify** [5] - 14:24, 18:22, 19:16, 21:8, 43:17
**chain** [4] - 9:11, 12:11, 21:25, 33:7
**chains** [1] - 17:16
**challenges** [1] - 13:17
**CHARLES** [1] - 2:25
**check** [1] - 17:2
**checks** [2] - 28:21, 29:2
**CHINA** [2] - 2:13, 2:14
**China** [1] - 32:22
**Chinese** [14] - 5:9,

5:20, 6:7, 8:10, 12:18, 25:25, 28:7, 28:18, 29:1, 29:7, 29:9, 29:12, 29:16, 33:19
**CHINESE** [1] - 1:5
**CHINESE-MANUFACTURED** [1] - 1:5
**choice** [1] - 19:9
**CHRISTINA** [1] - 2:4
**CHRISTOPHER** [1] - 2:19
**Christy** [3] - 5:17, 19:20, 19:21
**Circuit** [2] - 11:8, 13:9, 20:12, 20:15, 25:8, 25:9, 25:13, 25:19, 31:20, 35:16, 39:18, 40:8
**CIVIL** [1] - 1:7
**claim** [6] - 7:1, 21:17, 30:9, 39:11, 41:8
**claimed** [3] - 6:22, 29:14, 29:15
**claims** [24] - 10:17, 11:3, 11:4, 12:7, 13:1, 13:4, 16:15, 19:12, 20:5, 20:18, 21:1, 21:11, 23:22, 27:9, 29:1, 31:13, 32:10, 35:9, 35:22, 36:13, 39:12, 39:15, 40:24, 41:20
**clarify** [1] - 24:9
**class** [58] - 5:20, 5:23, 7:2, 7:6, 8:12, 11:9, 11:18, 14:23, 14:25, 15:2, 15:5, 17:17, 18:2, 19:16, 19:25, 20:3, 20:10, 20:17, 20:19, 21:1, 21:3, 22:2, 22:18, 22:21, 23:2, 23:9, 23:11, 23:14, 23:16, 24:4, 24:10, 25:20, 25:22, 25:23, 26:13, 26:24, 27:3, 27:4, 31:18, 31:20, 32:5, 32:12, 34:7, 34:23, 35:1, 35:6, 35:11, 35:17, 36:3, 36:15, 36:18, 36:20, 36:23, 37:18, 37:23, 38:5, 38:20, 42:18
**class-wide** [4] - 14:23, 15:2, 15:5, 17:17
**clear** [3] - 24:17, 24:19, 36:15
**clearest** [1] - 40:17

**CLERK** [3] - 5:7, 5:9, 43:5
**clerk** [2] - 32:3, 37:6
**client** [1] - 6:19
**clip** [10] - 27:17, 27:19, 27:25, 28:4, 28:10, 28:15, 28:24, 29:5, 30:7, 31:3
**closed** [1] - 24:3
**CNBM** [1] - 2:9
**Co** [1] - 31:23
**CO** [2] - 2:3, 2:4
**collateral** [1] - 9:5
**COLLECTIVELY** [1] - 2:15
**collectively** [1] - 8:20
**combined** [1] - 13:4
**Comcast** [1] - 36:17
**coming** [1] - 36:7
**commercial** [3] - 20:5, 21:20, 35:9
**common** [9] - 15:18, 15:19, 16:3, 16:7, 16:21, 25:12, 25:16, 40:2, 41:10
**commonality** [3] - 10:11, 14:17, 32:16
**companies** [2] - 32:21, 33:18, 39:5
**Company** [10] - 6:25, 26:25, 27:2, 28:16, 28:25, 29:13, 29:22, 29:24, 36:2, 36:8
**COMPANY** [1] - 2:14
**company** [2] - 29:14, 29:18
**company's** [1] - 34:5
**Company's** [2] - 19:24, 20:3
**comparator** [1] - 40:6
**compare** [1] - 40:11
**compelling** [1] - 35:17
**complaint** [4] - 15:3, 15:4, 31:22, 32:2
**complaints** [1] - 14:7
**complete** [3] - 11:23, 26:10, 26:11
**completely** [4] - 31:12, 32:20, 33:6, 33:19
**complicated** [1] - 17:7
**complications** [2] - 13:15, 13:18
**COMPUTER** [1] - 3:8
**concepts** [1] - 6:18
**concerns** [2] - 10:2, 35:4
**conclude** [1] - 24:18
**concluded** [5] - 27:25, 28:10, 29:5, 31:3,

43:7
**conclusions** [2] - 8:6, 15:7
**conditioning** [2] - 7:17, 7:19
**conditions** [1] - 42:4
**conduct** [4] - 10:19, 11:3, 19:12, 38:21
**confirms** [1] - 14:10
**confusing** [1] - 34:11
**consider** [1] - 22:9
**consideration** [2] - 35:5, 43:2
**considered** [1] - 15:24
**consistent** [1] - 17:12
**consolidate** [1] - 37:18
**construction** [4] - 6:4, 6:8, 6:19, 18:6
**consumers** [1] - 21:20
**contained** [1] - 24:22
**contaminated** [1] - 42:1
**contextual** [1] - 30:5
**CONTINUED** [2] - 2:1, 3:1
**contractors** [1] - 33:25
**control** [1] - 35:13
**copy** [2] - 37:5, 37:8
**corporate** [3] - 20:4, 35:8, 35:23
**CORPORATION** [1] - 2:13
**Corporation** [1] - 36:5
**correct** [7] - 7:10, 27:23, 28:19, 29:3, 30:22, 41:19, 43:17
**corrected** [1] - 34:7
**cost** [3] - 8:3, 19:18, 22:4
**costs** [23] - 8:16, 8:19, 8:22, 8:23, 9:10, 9:12, 10:18, 10:21, 10:24, 12:6, 12:11, 12:15, 12:21, 16:17, 19:6, 22:6, 34:8, 38:17, 38:20, 38:23, 39:1, 39:20, 41:22
**counsel** [8] - 5:11, 22:15, 26:10, 31:8, 32:9, 34:7, 35:11, 40:18
**COUNSEL** [1] - 2:9
**counted** [1] - 32:4
**country** [1] - 6:3
**counts** [1] - 19:3
**couple** [2] - 18:8, 22:14
**course** [19] - 6:11, 8:5,

8:8, 8:18, 8:21, 10:3, 10:16, 12:3, 12:17, 12:25, 13:14, 15:6, 15:25, 16:9, 18:4, 18:21, 19:1, 32:1, 39:17

**COURT** [30] - 1:1, 3:3, 5:4, 5:8, 5:11, 5:16, 5:19, 9:1, 9:4, 9:14, 9:19, 10:7, 11:6, 13:3, 13:20, 14:17, 15:20, 17:24, 19:15, 19:20, 20:1, 20:14, 23:17, 37:8, 37:11, 37:13, 38:9, 39:4, 42:6, 43:1

**court** [3] - 25:19, 42:17, 43:4

**Court** [29] - 7:9, 10:2, 14:18, 17:1, 18:15, 20:17, 20:24, 21:4, 21:14, 22:9, 22:15, 24:19, 26:4, 30:2, 31:5, 36:15, 36:17, 37:1, 37:3, 38:18, 39:3, 39:14, 40:9, 40:20, 43:14, 43:15, 43:16, 43:23, 43:24

**Court's** [5] - 10:21, 20:25, 37:2, 38:14, 41:11

**COURT.....................
................... [2] -
4:5, 4:9

**cover** [2] - 9:16, 30:13
**covered** [1] - 9:15
**create** [2] - 19:25, 20:3
**Credit** [1] - 31:23
**credit** [1] - 24:23
**critical** [1] - 21:10
**critically** [1] - 13:10
**CRR** [2] - 3:3, 43:22
**CUNNINGHAM** [1] - 1:22
**cure** [3] - 10:2, 31:25, 32:5
**curious** [1] - 31:24
**CURRAULT** [1] - 2:24
**cuts** [1] - 35:14

## D

**damage** [3] - 8:2, 17:4, 17:5
**damaged** [1] - 6:2
**damages** [23] - 5:24, 6:22, 7:4, 8:22, 10:15, 14:18, 15:21,

---

16:6, 16:12, 16:22, 17:25, 18:1, 22:1, 31:14, 34:1, 34:5, 34:6, 34:24, 35:22, 38:23, 40:1, 42:22
**DAUPHIN** [1] - 1:23
**deal** [3] - 19:10, 19:13, 40:10
**dealing** [2] - 38:19, 39:7
**decide** [1] - 38:5
**decided** [5] - 16:3, 16:7, 16:20, 29:13, 32:12
**declaration** [2] - 14:4, 26:18
**declared** [1] - 14:9
**default** [3] - 14:20, 14:22, 15:2
**defeating** [1] - 20:5
**defect** [1] - 10:24
**defective** [3] - 5:25, 6:12, 12:3
**defects** [3] - 7:20, 12:7, 38:21
**defendant** [1] - 19:22
**defendants** [2] - 9:19, 24:22
**defended** [1] - 35:10
**defenses** [1] - 10:17
**deficiencies** [1] - 32:6
**deficiency** [2] - 31:25, 32:7
**deficient** [2] - 32:1, 32:3
**definition** [2] - 27:4, 38:20
**defunct** [1] - 12:21
**DeMott** [4] - 14:4, 14:9, 24:9, 24:17
**DeMott's** [1] - 26:6
**denied** [3] - 25:20, 25:21, 36:21
**depose** [1] - 24:8
**deposed** [2] - 22:24, 23:24
**deposition** [6] - 27:5, 27:12, 34:14, 35:10, 35:12, 36:23
**DEPUTY** [3] - 5:7, 5:9, 43:5
**deriving** [1] - 38:20
**detailed** [1] - 34:17
**determination** [3] - 17:7, 19:1, 19:8
**determine** [2] - 7:22, 15:1
**determined** [5] - 15:13, 17:11, 19:7, 39:25, 40:1

---

**develop** [1] - 41:16
**developed** [1] - 7:25
**Devon** [2] - 33:8, 33:9
**differences** [4] - 18:17, 21:10, 34:19, 35:5
**different** [18] - 12:19, 21:1, 21:2, 32:4, 32:14, 32:21, 32:25, 33:6, 33:10, 33:11, 33:16, 33:19, 34:1, 34:2
**direct** [1] - 41:6
**directly** [1] - 42:8
**disaster** [1] - 29:20
**discovering** [1] - 14:7
**discovery** [10] - 22:19, 24:3, 26:14, 26:19, 29:11, 32:13, 32:14, 36:24, 39:18, 41:15
**discrete** [2] - 17:4, 17:23
**discussion** [1] - 27:7
**dismissed** [1] - 36:10
**dispersed** [2] - 13:14, 38:1
**dispersement** [1] - 13:11
**dispute** [2] - 15:15, 18:4
**disqualified** [1] - 27:3
**distributor** [2] - 12:18, 12:19
**District** [4] - 20:11, 43:16, 43:24
**district** [1] - 25:19
**DISTRICT** [3] - 1:1, 1:2, 1:14
**docket** [2] - 14:3, 40:19
**DOCKET** [1] - 1:7
**document** [2] - 11:14, 17:2
**DOCUMENT** [1] - 1:9
**documented** [2] - 11:20, 38:13
**documents** [3] - 22:23, 24:20
**dollars** [1] - 8:20
**domestic** [1] - 33:2
**dominate** [1] - 17:21
**done** [7] - 15:17, 16:10, 26:18, 35:25, 36:20, 38:16, 38:22
**DONNA** [1] - 2:24
**doomed** [1] - 35:6
**door** [2] - 23:18, 41:13
**down** [10] - 6:13, 8:10, 10:16, 16:14, 17:23, 19:2, 19:8, 25:22,

---

41:10, 42:6
**Dr** [3] - 24:9, 24:17, 26:6
**Dragas** [1] - 36:4
**driving** [1] - 17:19
**Drywall** [1] - 5:10
**DRYWALL** [1] - 1:5
**drywall** [35] - 5:20, 5:25, 6:7, 7:23, 8:3, 8:10, 8:25, 12:7, 12:18, 14:7, 21:23, 24:16, 24:18, 25:5, 25:25, 26:2, 26:3, 27:13, 27:17, 27:22, 28:7, 28:8, 28:18, 29:1, 29:8, 29:9, 29:13, 29:16, 33:1, 33:2, 33:5, 33:14, 33:16, 33:19, 38:24
**due** [3] - 10:18, 14:18, 15:23
**DUNBAR** [1] - 2:9
**DUPLANTIS** [1] - 2:23
**duplication** [1] - 40:5
**duplicity** [1] - 40:5
**during** [1] - 28:12
**duty** [1] - 21:4
**dwarf** [1] - 39:20

## E

**EAGAN** [2] - 2:23, 2:23
**easier** [1] - 37:9
**Eastern** [1] - 43:16
**EASTERN** [1] - 1:2
**easy** [2] - 34:3, 34:4
**economical** [2] - 8:9, 40:14
**economically** [1] - 35:20
**effect** [1] - 15:12
**effective** [1] - 8:3
**efficiencies** [1] - 42:17
**efficient** [2] - 15:16, 42:14
**effort** [2] - 19:24, 20:3
**EIKHOFF** [12] - 2:4, 5:17, 19:21, 20:2, 20:15, 23:20, 28:1, 28:11, 28:20, 29:6, 31:4, 37:10
**Eikhoff** [2] - 5:17, 19:22
**EIKHOFF.....................
................... [1] -
4:7
**either** [4] - 15:1, 21:8,

---

28:22, 38:6
**ELDON** [1] - 1:13
**electronically** [1] - 37:5
**elements** [1] - 38:17
**ELIZABETH** [1] - 1:18
**EMBARCADERO** [1] - 1:19
**employed** [2] - 6:5, 6:6
**encountered** [1] - 25:9
**end** [1] - 21:22
**ended** [1] - 29:21
**Energy** [1] - 20:13
**entered** [1] - 12:5
**entities** [4] - 21:21, 35:8, 35:23, 39:6
**ENTITIES** [1] - 2:9
**entitled** [7] - 16:9, 16:11, 16:17, 16:23, 18:18, 20:17, 43:19
**entitlement** [5] - 16:6, 16:12, 16:20, 17:10, 39:25
**entries** [3] - 14:4, 34:13, 34:15
**error** [1] - 7:25
**especially** [1] - 22:2
**ESQ** [1] - 2:19
**ESQUIRE** [10] - 1:18, 1:19, 1:23, 2:4, 2:5, 2:10, 2:15, 2:23, 2:24, 2:24
**essentially** [2] - 16:15, 32:10
**establish** [2] - 19:3, 39:19
**estimate** [3] - 8:19, 34:7, 34:8
**estimation** [1] - 13:6
**event** [1] - 6:21
**eventually** [3] - 7:21, 25:25, 29:23
**evidence** [22] - 11:7, 11:16, 13:24, 14:12, 20:6, 20:16, 20:18, 20:21, 21:5, 21:16, 25:10, 26:2, 26:4, 26:20, 26:22, 32:17, 33:5, 33:15, 36:20, 36:25
**evidence-based** [1] - 21:5
**EVIDENTIARY** [1] - 1:13
**evidentiary** [2] - 20:21, 26:9
**EWELL** [1] - 2:23
**exact** [2] - 11:4, 39:2

**exactly** [1] - 41:21
**examine** [1] - 20:17
**example** [5] - 12:19, 27:20, 28:5, 28:16, 28:25
**exceeds** [1] - 12:16
**excellent** [1] - 20:12
**exception** [3] - 36:16, 36:18, 36:19
**excerpts** [2] - 27:14, 30:5
**excluding** [1] - 7:3
**exhibit** [3] - 38:1, 38:2
**exhibits** [2] - 14:2, 36:23
**existed** [1] - 10:23
**existence** [1] - 35:18
**expenses** [1] - 38:13
**experiment** [1] - 29:20
**experimental** [3] - 29:14, 29:17, 33:20
**expert** [3] - 7:22, 24:10, 24:11
**experts** [1] - 14:5
**explain** [2] - 22:10, 29:24
**extensive** [2] - 15:25, 42:12
**extent** [4] - 8:13, 15:8, 16:1, 23:9

## F

**fact** [7] - 8:6, 15:7, 24:11, 29:25, 33:15, 34:6, 42:22
**factor** [2] - 31:12, 35:14
**factors** [2] - 13:10, 22:8
**facts** [2] - 11:2, 20:19
**factual** [1] - 15:3
**factually** [2] - 21:8, 21:10
**fail** [1] - 38:9
**fails** [1] - 22:10
**fair** [2] - 9:17, 41:13
**fall** [1] - 38:20
**fallen** [1] - 20:8
**FALLON** [1] - 1:13
**familiarity** [1] - 42:13
**far** [4] - 33:8, 39:20, 41:1, 41:10
**fashioned** [5] - 36:14, 36:16, 39:7, 39:9, 41:1
**faulty** [2] - 6:19, 10:23
**feedback** [1] - 20:1
**few** [1] - 35:8

**Fifth** [12] - 11:8, 13:9, 20:12, 20:15, 25:8, 25:9, 25:13, 25:19, 31:20, 35:16, 39:18, 40:8
**figure** [2] - 35:21, 41:21
**figured** [1] - 23:23
**file** [1] - 37:4
**filed** [8] - 5:23, 6:25, 7:2, 11:19, 24:3, 26:13, 32:4, 42:8
**filings** [2] - 32:1, 40:19
**finally** [2] - 22:23, 35:7
**findings** [2] - 15:12, 15:25
**fine** [1] - 42:22
**first** [3] - 9:20, 11:18, 27:16
**fish** [1] - 17:22
**fit** [2] - 28:20, 30:4
**five** [2] - 24:15, 24:24
**fix** [2] - 27:10, 31:17
**fixed** [1] - 7:17
**flagged** [1] - 32:3
**FLOOR** [2] - 1:20, 2:25
**Florida** [11] - 6:4, 6:10, 6:16, 18:4, 36:5, 36:6, 36:11, 39:19, 42:9, 42:16
**follow** [3] - 18:20, 27:9, 29:13
**followed** [1] - 17:1
**FOR** [3] - 1:18, 2:3, 2:8
**foregoing** [1] - 43:17
**form** [1] - 41:8
**forms** [1] - 11:24
**forum** [1] - 42:19
**forward** [1] - 40:23
**foundation** [3] - 16:2, 24:18, 26:6
**four** [3] - 8:14, 23:15, 29:10
**FRANCISCO** [2] - 1:20, 2:20
**frankly** [6] - 14:22, 15:19, 17:8, 37:19, 40:17, 41:2
**front** [3] - 10:17, 41:19, 41:23
**front-loaded** [1] - 41:23
**fry** [1] - 17:22
**fulfill** [1] - 8:1
**fulfilled** [1] - 16:16
**fulfilling** [1] - 19:6
**fully** [4] - 8:2, 10:20,

18:18, 38:25
**fundamental** [1] - 31:11
**fundamentally** [2] - 20:9, 40:1
**funnels** [1] - 17:22

## G

**GA** [1] - 2:6
**generous** [1] - 26:5
**genuine** [1] - 17:10
**geographically** [1] - 13:11
**Germano** [2] - 15:7, 41:16
**get-go** [1] - 41:17
**given** [4] - 19:18, 26:5, 37:23, 42:12
**glad** [1] - 32:12
**global** [1] - 17:16
**GORDON** [1] - 2:22
**great** [2] - 15:18, 42:18
**GROUP** [1] - 2:13
**group** [1] - 6:1
**guidance** [1] - 37:3
**Gypsum** [1] - 19:23
**GYPSUM** [1] - 2:3

## H

**handful** [3] - 19:25, 20:4, 35:22
**handle** [2] - 42:10, 42:15, 42:17
**handled** [3] - 16:13, 17:9, 17:17
**happy** [1] - 14:14
**hard** [2] - 37:5, 37:8
**HARRY** [1] - 2:10
**headaches** [1] - 40:20
**hear** [5] - 7:5, 7:8, 19:20, 34:3, 37:11
**HEARD** [1] - 1:13
**heard** [4] - 21:15, 26:9, 29:10, 32:9
**HEARING** [1] - 1:13
**hearing** [3] - 20:21, 20:23, 26:9
**hearings** [1] - 15:25
**HEIMANN** [1] - 1:18
**held** [1] - 14:18
**helped** [1] - 41:16
**helpful** [2] - 37:1, 37:24
**hereby** [1] - 43:16
**Hernandez** [2] - 15:8,

15:9
**HERRINGTON** [2] - 2:15, 2:18
**higher** [2] - 12:11, 21:15
**history** [1] - 39:16
**hodgepodge** [1] - 33:2
**holding** [2] - 9:13, 41:4
**home** [10] - 8:10, 8:15, 10:9, 10:20, 27:13, 29:18, 38:10, 38:16, 38:19
**homebuilder** [10] - 17:12, 17:20, 27:1, 28:6, 28:11, 28:17, 28:21, 29:1, 31:15, 36:5
**homebuilders** [21] - 16:15, 20:4, 21:11, 21:13, 21:18, 21:24, 22:6, 22:20, 23:21, 23:23, 25:2, 27:8, 27:21, 28:1, 28:22, 29:2, 32:15, 32:17, 35:24, 36:13
**homeowner** [7] - 6:5, 6:22, 11:1, 18:18, 21:11, 29:19, 33:22
**homeowners** [25] - 5:23, 6:9, 6:22, 7:3, 7:16, 8:2, 8:14, 8:22, 10:19, 11:18, 13:1, 13:2, 17:3, 17:15, 18:15, 18:16, 21:12, 21:22, 28:2, 28:12, 28:17, 29:2, 30:25, 34:1, 41:21
**homeowners'** [2] - 14:6, 41:20
**Homes** [2] - 36:6, 36:11
**homes** [8] - 11:20, 11:22, 11:25, 12:2, 27:16, 28:7, 29:18, 42:1
**Honor** [57] - 5:13, 7:10, 7:14, 7:24, 9:3, 10:1, 10:4, 11:13, 11:15, 13:10, 14:1, 14:12, 14:13, 14:16, 14:21, 15:23, 17:15, 19:21, 19:24, 20:2, 20:8, 20:11, 20:20, 21:9, 22:12, 23:12, 23:20, 24:8, 24:17, 25:15, 25:18, 25:24, 26:8, 26:12, 26:16, 27:11, 31:5, 31:16,

32:17, 34:19, 35:3, 35:4, 35:7, 36:2, 36:22, 37:2, 37:12, 37:16, 37:21, 37:24, 39:9, 41:12, 42:10, 42:15, 42:20, 42:25
**Honor's** [6] - 8:6, 15:6, 15:24, 41:18, 42:3, 42:12
**HONORABLE** [1] - 1:13
**Horton** [3] - 23:6, 24:2, 24:15
**house** [4] - 6:5, 6:7, 6:8, 21:23
**housekeeping** [1] - 36:22
**houses** [1] - 27:10
**HOWARD** [1] - 2:20
**Hull** [1] - 5:17
**hundred** [5] - 8:20, 11:16, 11:22, 13:7, 39:11
**hurdles** [1] - 19:18
**HVAC** [2] - 10:23, 39:1

## I

**ID** [4] - 11:20, 17:14, 17:18
**idea** [1] - 31:13
**identical** [2] - 10:15, 10:17
**identification** [2] - 32:20
**identified** [2] - 21:13, 39:12
**identifies** [1] - 11:19
**identify** [1] - 11:21
**implications** [1] - 15:2
**important** [4] - 13:11, 16:4, 16:21, 17:19
**IN** [1] - 1:5
**inaccurate** [1] - 24:22
**incident** [1] - 7:4
**include** [2] - 7:2, 18:5
**included** [2] - 12:24, 34:8
**including** [1] - 33:1
**incurred** [12] - 6:22, 8:19, 8:21, 10:15, 10:18, 10:21, 10:25, 16:16, 19:6, 22:7, 38:18, 38:25
**incurring** [1] - 38:23
**individual** [12] - 6:4, 6:9, 18:12, 21:19, 23:13, 34:19, 36:12, 39:23, 39:24, 40:3,

40:14
**individualized** [6] - 17:6, 17:13, 18:1, 18:10, 31:11, 31:12
**individually** [3] - 19:10, 34:24, 35:14
**individuals** [7] - 5:23, 6:1, 6:13, 10:10, 11:9, 22:3, 29:22
**inferior** [1] - 41:1
**information** [4] - 11:15, 13:21, 24:22, 41:8
**input** [1] - 23:17
**instead** [3] - 25:10, 28:21, 29:12
**insurance** [10] - 9:1, 9:12, 9:14, 9:15, 9:16, 30:1, 30:13, 31:6, 33:23
**intend** [1] - 13:24
**interesting** [1] - 34:3
**International** [1] - 33:9
**intervene** [1] - 10:4
**intervention** [1] - 31:22
**introduce** [1] - 13:24
**invented** [1] - 29:14
**investigate** [1] - 10:22
**investigating** [1] - 14:6
**investigation** [1] - 7:21
**involved** [7] - 9:22, 11:12, 23:10, 25:3, 25:4, 26:1, 39:17
**involves** [1] - 5:20
**issue** [5] - 14:16, 14:22, 16:21, 17:10, 26:8
**issues** [10] - 14:7, 15:19, 15:22, 16:3, 17:13, 17:16, 17:23, 40:2, 41:24, 42:21
**items** [3] - 13:12, 17:4, 34:12
**itself** [1] - 30:21

## J

**JAMES** [1] - 2:15
**January** [4] - 23:24, 26:15, 32:7
**Johnson** [1] - 31:22
**join** [3] - 13:13, 38:5, 40:21
**joinder** [1] - 40:15
**joining** [1] - 13:15

**JR** [1] - 2:23
**JUDGE** [1] - 1:14
**judgment** [3] - 16:13, 19:2, 42:12
**July** [1] - 26:13
**JUNE** [2] - 1:8, 5:2
**jurisdiction** [3] - 13:17, 39:18, 39:19
**jurisdictional** [1] - 41:15
**justified** [1] - 35:20

## K

**keep** [1] - 16:25
**kept** [1] - 36:7
**kind** [3] - 17:6, 17:22, 38:17
**kinds** [3] - 8:21, 17:2, 38:19
**King** [2] - 35:11, 35:12
**kitchen** [1] - 28:6
**Knauf** [2] - 13:3, 33:1
**knocking** [2] - 23:18, 41:13
**knowledge** [1] - 6:14
**known** [3] - 6:15, 18:11
**Kosmos** [1] - 20:13

## L

**LA** [3] - 2:11, 2:25, 3:5
**lack** [1] - 26:6
**last** [1] - 7:12
**law** [6] - 8:7, 15:7, 18:17, 19:9, 20:15, 35:5
**lawsuit** [4] - 23:13, 29:22, 33:22, 36:4
**lawyer** [1] - 35:11
**lawyers** [1] - 35:9
**least** [13] - 11:10, 11:19, 11:22, 12:2, 12:10, 12:14, 12:15, 12:20, 13:1, 13:7, 14:10, 15:2, 37:22
**leave** [2] - 41:3
**left** [1] - 9:13
**legally** [2] - 21:3, 21:6
**Lennar** [7] - 23:6, 23:12, 23:13, 24:1, 24:14, 36:6
**less** [3] - 17:19, 21:13
**Lexecon** [1] - 42:23
**Liability** [1] - 5:10
**LIABILITY** [1] - 1:6
**liability** [10] - 14:19,

15:11, 15:14, 15:20, 16:5, 16:8, 18:3, 19:2, 19:3, 39:25
**liable** [2] - 6:11, 6:18
**LIAISON** [1] - 2:9
**Lieff** [1] - 5:14
**LIEFF** [1] - 1:18
**LIMITED** [1] - 2:14
**line** [5] - 6:13, 11:24, 17:4, 34:12, 42:6
**list** [12] - 14:2, 14:9, 22:20, 22:21, 23:5, 24:2, 24:24, 37:19, 37:20, 37:25, 38:8, 41:7
**Lister** [2] - 29:19, 30:9
**lists** [2] - 37:17
**litigate** [2] - 39:13, 39:14
**litigating** [1] - 39:16
**LITIGATION** [1] - 1:6
**Litigation** [1] - 5:10
**litigation** [13] - 5:21, 5:22, 7:13, 17:20, 17:21, 25:3, 25:14, 32:1, 34:20, 35:14, 39:24, 40:4, 40:14
**living** [1] - 42:1
**load** [1] - 41:19
**loaded** [1] - 41:23
**LONDON** [21] - 1:19, 5:13, 7:9, 9:3, 9:6, 9:17, 10:1, 10:14, 11:13, 13:4, 14:1, 14:21, 15:23, 18:14, 19:16, 37:12, 37:16, 38:12, 39:9, 42:10, 42:25
**London** [1] - 5:13
**LONDON.................. ....................** [2] - 4:6, 4:8
**look** [7] - 11:8, 13:12, 16:11, 21:7, 26:24, 40:15, 41:25
**looked** [1] - 14:9
**looking** [8] - 9:9, 12:1, 18:9, 21:20, 22:2, 22:6, 40:7, 40:9
**LOUISIANA** [2] - 1:2, 1:7
**Louisiana** [3] - 18:8, 43:15, 43:16
**LTD** [2] - 2:3, 2:4

## M

**ma'am** [2] - 30:10, 31:1

**manage** [1] - 42:20
**Management** [1] - 36:4
**management** [2] - 15:24, 41:19
**Manufactured** [1] - 5:10
**MANUFACTURED** [1] - 1:5
**manufacturer** [2] - 6:11, 6:13
**markings** [7] - 17:16, 32:21, 32:23, 32:24, 33:1, 33:3
**mass** [1] - 35:1
**MATERIALS** [2] - 2:13, 2:14
**matter** [2] - 19:4, 43:19
**MCCOLLAM** [1] - 2:22
**MDL** [2] - 5:9, 21:2
**mean** [5] - 13:20, 13:22, 40:22, 41:25, 42:7
**meaningful** [1] - 18:17
**means** [1] - 8:3
**meanwhile** [1] - 33:24
**measure** [1] - 36:22
**MECHANICAL** [1] - 3:7
**mechanical** [1] - 16:23
**meet** [3] - 20:7, 22:2, 27:4
**member** [3] - 23:10, 25:23, 34:23
**members** [2] - 23:1, 23:16
**MERIT** [1] - 3:4
**Merit** [2] - 43:14, 43:23
**Meritage** [1] - 36:11
**merits** [1] - 21:4
**met** [1] - 36:19
**method** [3] - 7:12, 39:15, 40:10
**methodology** [1] - 41:2
**might** [2] - 10:2, 15:4
**million** [3] - 8:20, 25:15, 34:18
**millions** [1] - 40:19
**Mindy** [1] - 29:19
**minimum** [1] - 12:1
**Mitchell** [64] - 5:14, 6:25, 7:5, 7:10, 7:15, 9:20, 9:24, 10:5, 10:8, 10:14, 10:18, 11:11, 12:19, 19:24, 20:3, 20:6, 20:24,

21:11, 22:5, 22:10, 22:19, 23:7, 26:25, 27:2, 27:5, 27:12, 27:16, 27:20, 28:1, 28:5, 28:11, 28:16, 28:20, 28:25, 29:6, 29:7, 29:13, 29:22, 29:24, 30:8, 30:11, 30:15, 30:17, 30:20, 31:24, 31:25, 32:12, 32:22, 33:7, 34:5, 34:16, 34:24, 36:2, 36:8, 36:20, 38:10, 38:15, 39:10, 39:17, 39:19, 39:21, 39:22
**Mitchell's** [8] - 11:3, 22:24, 23:10, 31:14, 33:3, 33:12, 33:20, 38:23
**MOBILE** [1] - 1:24
**monies** [1] - 34:15
**months** [3] - 8:15, 26:16, 26:17
**morning** [2] - 5:13, 19:21
**most** [6] - 6:12, 7:11, 8:3, 8:9, 35:16, 42:13
**motion** [10] - 5:19, 7:6, 13:22, 14:9, 19:2, 24:4, 24:10, 26:12, 34:22, 36:3
**motions** [2] - 32:5, 42:12
**motivated** [1] - 35:13
**movant** [1] - 20:16
**move** [2] - 10:4, 41:6
**moving** [2] - 20:9, 40:22
**MS** [34] - 4:6, 4:7, 4:8, 5:13, 5:17, 7:9, 9:3, 9:6, 9:17, 10:1, 10:14, 11:13, 13:4, 14:1, 14:21, 15:23, 18:14, 19:16, 19:21, 20:2, 20:15, 23:20, 28:1, 28:11, 28:20, 29:6, 31:4, 37:10, 37:12, 37:16, 38:12, 39:9, 42:10, 42:25
**multiple** [1] - 21:18
**multitude** [1] - 15:21
**must** [6] - 20:16, 21:4, 21:8, 22:9, 31:20, 31:21

## N

**name** [3] - 11:24, 24:8,

36:7

**named** [2] - 9:21,
29:19

**names** [7] - 23:15,
24:2, 24:7, 24:16,
37:17, 37:22, 37:24

**narrow** [1] - 41:10

**NATIONAL** [2] - 2:13,
2:14

**nature** [4] - 10:16,
11:3, 11:4, 19:12

**necessarily** [2] - 18:2,
22:13

**necessary** [1] - 10:1

**need** [5] - 14:24,
15:10, 36:25, 37:19,
38:4

**needed** [2] - 7:18,
8:12

**needs** [1] - 22:3

**negative** [2] - 35:18,
39:20

**negligence** [6] - 6:14,
6:17, 18:9, 19:4

**never** [6] - 22:21,
29:8, 29:10, 30:20,
31:24, 32:6

**new** [4] - 6:4, 24:6,
26:18

**NEW** [5] - 1:7, 2:11,
2:16, 2:25, 3:5

**next** [2] - 16:8, 30:2

**NICHOLAS** [1] - 1:23

**NO** [1] - 1:7

**none** [3] - 15:12, 33:2,
33:11

**Northern** [1] - 20:11

**noted** [3] - 17:15,
25:19, 25:20

**nothing** [2] - 32:18,
37:14

**notice** [7] - 37:4,
37:20, 38:4, 38:7,
41:6, 42:11

**November** [1] - 22:25

**nowhere** [1] - 8:18

**number** [4] - 12:6,
21:14, 26:3, 39:14

**numbered** [1] - 43:19

**numbers** [5] - 13:8,
21:15, 25:1, 38:2,
40:10

**numerosity** [11] -
13:12, 13:19, 14:13,
14:16, 24:5, 24:7,
25:10, 26:11, 26:20,
37:13, 40:8

**NY** [1] - 2:16

## O

**obligation** [2] - 10:19,
19:6

**obligations** [3] - 8:2,
8:16, 16:16

**obtained** [1] - 33:16

**occurring** [1] - 28:13

**OF** [2] - 1:2, 1:13

**offices** [1] - 35:12

**OFFICIAL** [1] - 3:3

**Official** [2] - 43:15,
43:23

**often** [1] - 11:9

**oftentimes** [1] - 6:17

**old** [6] - 24:20, 36:14,
36:16, 39:7, 39:9,
40:25

**once** [3] - 17:10, 32:2,
32:6

**one** [25] - 10:9, 13:9,
13:12, 14:5, 15:18,
16:5, 18:7, 23:3,
29:18, 29:22, 33:21,
33:22, 34:22, 35:18,
36:7, 36:8, 37:18,
37:25, 38:10, 40:2,
40:19, 40:24, 41:9

**ONE** [1] - 2:5

**ones** [1] - 36:8

**opportunity** [3] - 6:14,
6:24, 40:25

**opted** [1] - 12:13

**oral** [1] - 24:25

**orally** [2] - 13:23, 33:7

**order** [1] - 22:13

**ORDER** [1] - 5:4

**ordering** [1] - 42:3

**original** [1] - 37:4

**ORLEANS** [4] - 1:7,
2:11, 2:25, 3:5

**ORRICK** [3] - 2:15,
2:18, 2:19

**out-of-pocket** [2] -
9:10, 9:12

**outlays** [1] - 34:14

**outset** [1] - 17:22

**overall** [1] - 17:20

**overarching** [2] -
16:21, 17:6

**owed** [3] - 17:21,
18:16, 41:21

**own** [8] - 21:4, 27:4,
35:9, 35:11, 35:14,
35:19, 35:24, 39:24

## P

**page** [1] - 30:5

**PAGE** [1] - 4:3

**paid** [13] - 6:21, 8:15,
10:20, 16:9, 16:17,
28:12, 28:17, 28:21,
30:1, 30:17, 30:20,
33:23, 33:25

**papers** [2] - 11:13,
10:23

**parcel** [1] - 39:2

**part** [8] - 8:5, 9:23,
19:1, 23:14, 30:17,
37:18, 37:23, 39:2

**participants** [1] -
21:24

**participate** [1] - 12:12

**participated** [2] -
12:10, 41:16

**particular** [2] - 5:22,
26:24

**particularly** [4] - 6:3,
6:10, 6:16, 11:14

**parties** [2] - 7:8, 16:1

**parties'** [1] - 20:18

**party** [2] - 33:20,
35:19

**pay** [5] - 29:24, 30:8,
30:11, 31:6, 38:11

**paying** [2] - 8:22,
10:25

**payment** [4] - 17:3,
30:13, 30:14, 30:19

**payments** [1] - 30:24

**PEACHTREE** [1] - 2:6

**people** [4] - 11:11,
18:5, 25:2, 42:1

**Pepper** [3] - 43:13,
43:21, 43:22

**PEPPER** [1] - 3:3

**percent** [2] - 30:1,
33:22

**perfectly** [1] - 39:22

**perhaps** [1] - 17:14

**period** [2] - 25:16,
26:14

**permitted** [1] - 26:22

**person** [1] - 25:25

**personal** [3] - 13:16,
39:18, 39:19

**personally** [1] - 14:11

**PHELPS** [1] - 2:9

**phone** [1] - 7:16

**phonetically** [1] -
29:19

**physically** [1] - 33:25

**piece** [1] - 7:13

**piggyback** [1] - 20:25

**place** [4] - 18:14,
35:12, 39:3, 41:11

**plaintiff** [11] - 9:20,
9:21, 20:9, 25:1,
26:25, 31:16, 31:19,
31:21, 32:7, 32:11

**PLAINTIFFS** [1] - 1:18

**plaintiffs** [6] - 5:14,
21:2, 21:19, 24:21,
25:14, 25:15

**plaintiffs'** [3] - 22:15,
26:10, 31:8

**plan** [1] - 40:22

**PLASTERBOARD** [1]
- 2:4

**play** [1] - 27:17

**played** [5] - 27:19,
28:4, 28:15, 28:24,
30:7

**pleadings** [4] - 9:23,
9:24

**pocket** [4] - 9:10,
9:12, 10:20, 29:25

**point** [18] - 10:5, 13:5,
14:15, 25:3, 26:7,
27:15, 27:18, 27:24,
28:3, 28:9, 28:14,
28:23, 29:4, 30:6,
31:2, 39:20, 41:14,
42:21

**pointed** [1] - 32:7

**pointing** [1] - 13:23

**points** [1] - 27:6

**policy** [1] - 30:15

**portion** [1] - 12:11

**portions** [1] - 6:3

**position** [8] - 6:23,
7:1, 9:4, 9:19, 10:7,
14:18, 27:3, 39:5

**possible** [2] - 8:4,
38:16

**potential** [2] - 13:16,
23:16

**potentially** [1] - 24:16

**POYDRAS** [1] - 3:4

**practicable** [1] - 13:13

**practical** [3] - 8:9,
13:13, 40:14

**practically** [1] - 16:23

**preclusive** [1] - 15:12

**predominance** [4] -
15:20, 18:12, 32:16,
35:4

**predominate** [1] -
34:20

**predominates** [1] -
15:21

**prefers** [1] - 42:20

**prepared** [2] - 23:4,
42:19

**present** [1] - 14:19

**presented** [1] - 24:11

**presume** [1] - 20:19

**pretrial** [1] - 42:11

**previously** [1] - 24:10

**problem** [4] - 10:22,
25:18, 29:8, 33:19

**procedures** [1] -
41:11

**proceed** [3] - 6:24,
41:9, 42:19

**proceeding** [8] - 15:1,
15:16, 16:14, 27:18,
27:24, 28:3, 30:6,
42:18

**PROCEEDINGS** [3] -
1:13, 3:7, 5:1

**proceedings** [13] -
15:7, 28:9, 28:14,
28:23, 29:4, 31:2,
40:5, 41:16, 41:20,
41:23, 42:20, 43:6,
43:19

**process** [1] - 39:24

**produce** [3] - 6:12,
13:21, 20:16

**PRODUCED** [1] - 3:8

**produced** [2] - 14:4,
37:22

**product** [8] - 6:12,
11:20, 17:14, 17:18,
32:19, 32:20, 38:22

**Products** [1] - 5:10

**PRODUCTS** [1] - 1:5

**profile** [1] - 11:24

**proof** [1] - 17:2

**properties** [3] - 21:18,
27:21, 33:25

**property** [7] - 8:12,
8:24, 18:18, 21:17,
22:4, 33:21, 38:24

**propose** [1] - 23:8

**prospective** [1] - 22:3

**protocol** [11] - 7:25,
8:5, 10:21, 10:22,
17:1, 17:13, 18:20,
27:10, 38:14, 39:2,
41:17

**prove** [3] - 20:6,
34:24, 37:15

**proved** [1] - 37:14

**provide** [5] - 14:2,
22:20, 25:10, 37:19,
41:7

**provided** [2] - 37:16,
38:12

**purchaser** [1] - 6:18

**purports** [1] - 24:6

**purposes** [1] - 24:12

**pursuing** [1] - 35:9

**put** [4] - 21:23, 37:25, 39:3, 41:11

## Q

**qualified** [1] - 12:12
**qualify** [1] - 12:14
**QUESTION** [8] - 27:20, 28:16, 28:25, 30:8, 30:13, 30:16, 30:20, 30:23
**questions** [1] - 41:10
**quickly** [1] - 40:23
**quite** [1] - 23:13

## R

**radically** [1] - 32:14
**raised** [3] - 26:8, 31:5, 35:4
**rationale** [1] - 35:17
**re** [3] - 5:9, 20:13, 40:7
**RE** [1] - 1:5
**readily** [1] - 13:18
**realistic** [1] - 40:14
**really** [7] - 9:20, 13:23, 16:15, 18:10, 19:8, 23:15, 40:8
**Realtime** [2] - 43:13, 43:22
**REALTIME** [1] - 3:3
**reason** [2] - 10:8, 35:6
**reasonable** [1] - 39:22
**receipts** [1] - 17:12
**receiving** [1] - 7:16
**recess** [1] - 43:4
**recognize** [3] - 18:1, 19:5, 37:25
**recognized** [1] - 31:17
**record** [8] - 5:12, 13:25, 14:15, 20:22, 34:8, 37:15, 42:13, 43:18
**RECORDED** [1] - 3:7
**records** [4] - 16:25, 34:10, 34:12, 34:17
**recounted** [1] - 7:14
**recourse** [1] - 42:2
**recover** [11] - 5:24, 9:9, 12:6, 12:14, 12:21, 17:5, 18:24, 18:25, 19:5, 34:9, 39:21
**recovered** [1] - 12:10
**REF** [1] - 1:10
**refer** [1] - 20:11
**reference** [2] - 9:22, 14:3

**refrigerators** [1] - 7:18
**regarding** [1] - 7:6
**Registered** [1] - 43:13
**registered** [1] - 43:23
**reimbursed** [2] - 9:2, 9:10
**reimbursement** [2] - 22:6, 30:15
**rejected** [1] - 24:21
**related** [1] - 22:12
**RELATES** [1] - 1:9
**relative** [1] - 40:11
**relatively** [2] - 16:3, 16:19
**relevant** [2] - 15:8, 25:16
**relied** [1] - 25:5
**relocate** [3] - 28:12, 28:17, 38:11
**relocated** [1] - 34:1
**relocation** [2] - 8:15, 38:11
**rely** [1] - 20:24
**relying** [1] - 24:20
**remaining** [2] - 17:10, 42:21
**remand** [2] - 42:16, 42:22
**remanding** [1] - 42:8
**remediate** [8] - 8:10, 10:20, 14:8, 27:13, 27:16, 29:16, 33:25, 38:10
**remediated** [2] - 27:21, 38:25
**remediating** [3] - 22:4, 28:21, 38:18
**remediation** [5] - 8:23, 14:11, 17:1, 22:3, 33:21
**remediations** [2] - 28:12, 28:13
**remedied** [2] - 10:8, 10:9
**remove** [1] - 8:11
**removing** [4] - 27:13, 27:17, 27:22, 29:12
**renewed** [3] - 26:12, 34:22, 36:3
**reopen** [1] - 26:19
**rep** [5] - 23:9, 26:24, 27:3, 31:20, 32:12
**repair** [4] - 7:18, 8:24, 18:18, 38:24
**repairing** [3] - 8:2, 38:19, 39:1
**repairs** [3] - 38:13, 38:22
**repeatedly** [1] - 27:4
**replaced** [2] - 28:2,

28:6
**replacing** [4] - 27:13, 27:17, 27:22, 29:12
**reply** [5] - 11:14, 14:1, 24:5, 25:11, 37:21
**REPORTER** [3] - 3:3, 3:3, 3:4
**Reporter** [7] - 43:13, 43:14, 43:15, 43:22, 43:23, 43:23
**REPORTER'S** [1] - 43:11
**represent** [1] - 32:9, 34:25
**representations** [1] - 34:4
**representative** [8] - 7:1, 10:6, 22:25, 23:25, 31:15, 31:18, 34:15, 34:20
**representatives** [1] - 40:18
**represented** [1] - 35:22
**representing** [1] - 23:8
**request** [1] - 42:10
**requested** [1] - 22:24
**required** [3] - 13:9, 20:17, 35:5
**requirement** [2] - 13:19, 20:7, 36:19
**requirements** [1] - 20:12
**requires** [1] - 6:14
**researched** [1] - 30:18
**resolution** [2] - 9:8, 36:1
**resolve** [4] - 10:11, 23:22, 40:23, 42:5
**resolved** [5] - 13:5, 15:16, 29:1, 36:14, 41:2
**resolving** [2] - 7:12, 40:18
**respect** [5] - 13:16, 17:23, 28:8, 29:3, 39:4
**respectfully** [3] - 40:3, 40:13, 41:18
**responded** [1] - 33:18
**response** [6] - 19:20, 24:4, 29:7, 29:8, 31:8, 37:11
**responsibilities** [1] - 6:17
**responsible** [1] - 6:13
**rest** [1] - 7:22
**result** [5] - 5:25, 7:4, 8:24

**rigorous** [1] - 21:5
**ripe** [1] - 42:4
**rise** [2] - 5:7, 43:5
**RMR** [2] - 3:3, 43:22
**Robert** [1] - 14:4
**ROOM** [1] - 3:4
**ROSENBERG** [1] - 2:10
**ROTHENBERG** [1] - 2:24
**Rule** [11] - 19:17, 20:7, 22:8, 35:14, 40:4, 40:15, 40:16, 40:17, 40:24, 41:6
**rule** [1] - 14:16
**rules** [1] - 42:5
**runway** [1] - 40:17

## S

**s/Cathy** [1] - 43:21
**SAN** [2] - 1:20, 2:20
**SARAH** [1] - 1:19
**Sarah** [1] - 5:13
**satisfies** [1] - 40:15
**satisfy** [3] - 13:18, 24:7, 40:4
**saw** [1] - 20:23
**scientist** [1] - 14:5
**Scottsdale** [1] - 30:14
**seated** [1] - 5:8
**second** [1] - 12:4
**securities** [1] - 25:14
**see** [8] - 9:25, 10:13, 22:9, 25:11, 30:5, 37:13, 37:15, 38:11
**seek** [1] - 15:11
**seeking** [5] - 7:2, 15:11, 17:5, 18:22, 34:9
**self** [1] - 20:5
**self-defeating** [1] - 20:5
**sense** [5] - 9:21, 25:12, 25:16, 41:24, 42:3
**sent** [1] - 25:5
**separate** [1] - 23:9
**September** [3] - 22:19, 26:14, 26:15
**served** [2] - 22:18, 24:11
**set** [2] - 11:2, 17:1
**setoff** [2] - 9:6, 9:11
**setting** [1] - 17:8
**settle** [2] - 13:1, 30:8
**settled** [13] - 23:12, 23:21, 24:1, 29:23, 33:21, 36:4, 36:6,

36:9, 36:12, 39:6, 39:10, 39:11, 39:12
**settlement** [9] - 9:11, 10:25, 12:4, 12:5, 12:9, 12:10, 12:13, 12:25, 33:22
**settlements** [2] - 8:23, 25:4
**settling** [1] - 10:9
**seven** [2] - 32:4, 35:21
**seven-figure** [1] - 35:21
**sever** [1] - 19:9
**several** [2] - 11:16, 39:11
**share** [1] - 30:12
**short** [1] - 20:8
**show** [4] - 10:15, 20:7, 23:21, 32:19
**showed** [1] - 32:14
**showing** [1] - 34:17
**shows** [2] - 20:16, 33:5
**side** [2] - 25:1, 31:17
**similar** [1] - 25:9
**simple** [1] - 16:19
**simply** [3] - 8:23, 18:9, 22:6
**single** [4] - 21:17, 27:13, 38:10, 38:15
**sit** [1] - 30:16
**sitting** [1] - 19:11
**six** [5] - 8:15, 13:14, 18:21, 25:15, 35:21
**slide** [2] - 30:2, 30:3
**somewhere** [1] - 8:19
**sophisticated** [7] - 16:24, 20:4, 21:20, 35:8, 35:22, 39:5
**sorry** [1] - 26:15
**sort** [3] - 10:12, 16:14, 38:1
**sought** [2] - 12:6, 30:15
**source** [6] - 9:5, 10:22, 11:2, 33:14, 38:21
**sources** [3] - 11:15, 33:6, 33:17
**sourcing** [1] - 17:16
**Spalding** [1] - 35:11
**Spalding's** [1] - 35:12
**SPEAKERS** [1] - 4:3
**specific** [2] - 17:18
**speculate** [2] - 20:25, 25:10
**spelled** [1] - 29:19
**spent** [1] - 34:15
**spray** [3] - 29:15, 29:17, 33:21

sprayed [1] - 29:15
spread [1] - 15:4
spreadsheet [1] - 11:19
spreadsheets [1] - 11:25
SR [1] - 2:5
ST [1] - 2:25
stake [1] - 21:18
stand [1] - 43:4
standard [3] - 18:16, 18:19, 18:21
standing [1] - 15:13
standpoint [1] - 19:15
stands [1] - 27:2
start [5] - 18:14, 20:2, 29:14, 29:18, 29:21
start-up [3] - 29:14, 29:18, 29:21
started [1] - 7:16
starting [1] - 32:19
state [2] - 18:6, 35:4
State [1] - 43:14
states [14] - 6:16, 13:15, 13:17, 18:7, 18:8, 18:9, 18:13, 18:16, 18:21, 18:23, 18:25, 19:4, 19:8, 19:10
States [2] - 43:15, 43:24
STATES [2] - 1:1, 1:14
status [1] - 20:17
STENGEL [1] - 2:15
STENOGRAPHY [1] - 3:7
step [2] - 20:8, 22:10
steps [1] - 8:17
STEVEN [1] - 1:23
still [7] - 9:13, 15:14, 16:6, 16:20, 26:10, 39:24, 40:1
stipends [1] - 34:1
stop [1] - 18:2
streamlined [2] - 15:16, 16:4
streamlines [1] - 41:24
streamlining [1] - 37:24
STREET [7] - 1:20, 1:23, 2:6, 2:10, 2:16, 2:20, 3:4
strictly [1] - 6:11
strong [3] - 16:2, 18:4, 41:5
stubs [1] - 17:2
studs [1] - 8:11
subdivision [1] - 6:6
subdivisions [2] -

32:25, 33:11
subject [1] - 38:13
submission [1] - 37:4
submit [6] - 14:13, 24:19, 36:24, 36:25, 37:3, 37:6
submitted [2] - 14:12, 37:21
sued [3] - 6:10, 6:21, 29:22
sufficient [1] - 14:15
sufficiently [1] - 36:19
suggest [1] - 13:10
suing [1] - 29:21
suit [5] - 35:18, 36:12, 39:20
SUITE [1] - 2:10
suits [1] - 35:25
sum [1] - 10:10
summary [7] - 14:25, 15:11, 16:13, 17:9, 19:2, 41:9, 42:12
superior [6] - 7:12, 19:17, 35:25, 36:14, 38:6, 39:15
superiority [5] - 35:7, 35:15, 35:17, 39:4, 40:9
supplement [1] - 13:25
supplemental [3] - 14:14, 26:21, 26:22
supplier [2] - 12:5, 12:18
suppliers [5] - 12:22, 12:23, 33:10, 33:11, 33:12
supply [2] - 21:25, 33:7
support [1] - 20:19
Supreme [2] - 36:15, 36:17
surely [1] - 25:12
surprised [1] - 24:5
surprising [1] - 33:4
survey [1] - 20:12
surveys [1] - 20:15
sustained [2] - 5:25, 7:4
SUTCLIFFE [2] - 2:15, 2:18
swoop [2] - 40:24, 41:9
system [1] - 10:24
systems [1] - 39:1

**T**

TAΓAN [1] - 2:3

Taishan [24] - 5:18, 6:25, 8:18, 11:20, 12:2, 12:5, 12:15, 12:18, 14:11, 15:8, 16:18, 19:22, 23:12, 24:16, 24:18, 25:5, 26:2, 26:3, 27:23, 28:8, 28:18, 29:3, 33:9, 39:17
TAISHAN [3] - 2:3, 2:3, 2:8
Taishan's [2] - 15:3, 38:21
TAYLOR [1] - 2:5
ten [4] - 21:13, 24:24, 26:5
terms [3] - 18:17, 39:7, 41:1
testifying [1] - 24:9
testimony [5] - 24:19, 26:6, 27:14, 29:24, 30:3
Texas [1] - 20:11
thankfully [1] - 15:23
THE [35] - 1:13, 2:8, 2:19, 4:5, 4:9, 5:7, 5:8, 5:9, 5:11, 5:16, 5:19, 9:1, 9:4, 9:14, 9:19, 10:7, 11:6, 13:3, 13:20, 14:17, 15:20, 17:24, 19:15, 19:20, 20:1, 20:14, 23:17, 37:8, 37:11, 37:13, 38:9, 39:4, 42:6, 43:1, 43:5
themselves [2] - 22:5, 27:22
theories [1] - 6:10
they've [6] - 8:19, 16:10, 17:1, 32:6, 35:25, 41:17
thinking [1] - 42:6
thinks [1] - 24:16
third [1] - 33:20
third-party [1] - 33:20
THIS [1] - 1:9
thousands [1] - 21:12
three [2] - 8:20, 23:21
throwing [1] - 25:1
TO [2] - 1:9, 5:4
today [13] - 5:19, 7:5, 7:11, 7:15, 13:22, 15:19, 19:11, 20:20, 21:15, 22:11, 24:25, 26:9, 30:16
together [2] - 16:2, 26:20
took [1] - 35:12
tools [1] - 42:5
topics [1] - 23:3

tortfeasor [1] - 6:24
traced [1] - 33:7
trader [1] - 25:22
traders [2] - 25:17, 25:21
trades [1] - 25:16
transcript [1] - 43:17
TRANSCRIPT [2] - 1:13, 3:7
transcripts [2] - 36:23, 37:4
transferred [1] - 14:20, 42:7
treat [1] - 33:21
trial [1] - 7:25
true [2] - 33:13, 43:17
try [1] - 40:25
trying [2] - 31:17, 34:21
turn [1] - 26:23
TWL [1] - 40:7
two [10] - 8:20, 12:20, 23:16, 32:14, 32:17, 32:21, 32:25, 33:10, 33:18
type [7] - 9:7, 9:12, 17:5, 19:8, 34:2, 38:22, 39:2
typical [1] - 38:24
typicality [5] - 10:3, 10:12, 10:16, 26:23, 38:9

**U**

U.S [2] - 25:6, 36:17
uncovering [1] - 14:7
under [13] - 6:10, 8:16, 10:21, 19:6, 19:16, 30:15, 31:20, 38:20, 39:21, 40:15, 40:16, 41:6, 43:2
undercuts [1] - 31:13
underscore [1] - 27:15
undertake [1] - 22:4
undertaken [1] - 6:4
undertook [1] - 8:17
undisputed [1] - 20:10
unfold [1] - 41:20
unfortunately [1] - 12:20
uniform [2] - 19:11, 32:10
uniformity [1] - 10:19
unique [2] - 20:4, 31:14
uniquely [1] - 27:2
UNITED [2] - 1:1, 1:14

United [2] - 43:15, 43:24
units [1] - 7:17
unjust [1] - 41:3
unsettled [1] - 14:22
up [20] - 9:11, 11:9, 11:24, 12:8, 12:11, 16:14, 17:12, 19:8, 22:14, 24:6, 24:15, 26:17, 29:14, 29:18, 29:21, 32:13, 36:7, 42:21
up-the-chain [1] - 9:11
users [1] - 21:22
utilized [1] - 6:7

**V**

value [2] - 35:18, 39:20
values [1] - 35:21
variety [1] - 33:1
various [1] - 14:6
VEJNOSKA [1] - 2:19
video [9] - 27:18, 27:24, 28:3, 28:9, 28:14, 28:23, 29:4, 30:6, 31:2
view [4] - 13:18, 14:24, 15:14, 41:5
Virginia [1] - 36:4

**W**

waive [1] - 42:23
walk [1] - 11:17
warranties [2] - 18:5, 19:7
warranty [12] - 6:11, 6:18, 7:19, 8:1, 8:16, 12:7, 16:16, 18:4, 18:5, 19:4, 27:9, 27:11
WCI [1] - 23:6
WEDNESDAY [2] - 1:8, 5:2
WEST [3] - 1:19, 2:6, 2:16
WHEREUPON [1] - 43:6
whole [1] - 24:23
wide [5] - 14:23, 15:2, 15:5, 17:17, 32:25
wiring [1] - 8:11
witness [4] - 24:6, 24:12, 26:18, 34:6
word [1] - 27:11

**OFFICIAL TRANSCRIPT**

**world** [1] - 26:20
**writing** [1] - 29:2
**written** [1] - 30:3

## Y

**year** [3] - 22:22, 23:24,
32:8
**years** [2] - 22:5, 29:10
**YORK** [1] - 2:16

## Z

**Zeidman** [1] - 25:13

"

**"CNBM"** [1] - 2:15

*OFFICIAL TRANSCRIPT*