# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

EDUARDO AND CARMEN AMORIN,
*et al.*, individually, and on behalf of all
others similarly situated,

        Plaintiffs,

v.

TAISHAN GYPSUM CO., LTD. f/k/a
SHANDONG TAIHE DONGXIN CO.,
LTD.; TAIAN TAISHAN
PLASTERBOARD CO., LTD., *et al.*,

        Defendants.

Case No. 1:11-CV-22408-MGC

## CLASS COUNSEL'S MOTION AND MEMORANDUM OF LAW FOR AN AWARD OF COMMON BENEFIT COSTS AND/OR FEES OUT OF THE PROCEEDS OF THE FLORIDA INDIVIDUAL SETTLEMENT

Pursuant to S.D. Fla. L.R. 7.1, Class Counsel hereby file this Motion and Incorporated Memorandum of Law for an award of common benefit costs and/or fees out of the proceeds of the Florida Individual Settlement of certain Florida *Amorin* claims in this litigation and in support thereof, state as follows:

## I.    INTRODUCTION

After a decade of arduous and protracted litigation against the Taishan Defendants,[1] overseen by this Court, the MDL Court and other courts,[2] Class Counsel[3] are on the cusp of

---

[1] Taishan Gypsum Company Ltd., f/k/a Shandong Taihe Dongxin Co. Ltd.; Taian Taishan Plasterboard Co. Ltd. (collectively "Taishan"); Beijing New Building Materials Public Limited Company ("BNBM"); Beijing New Building Materials (Group) Co., Ltd. ("BNBM Group"); and China National Building Materials Co., Ltd. ("CNBM").

[2] *See Brooke v. The State-Owned Assets Supervision and Administration Commission of the State Council, et al.*, Civ. No. 1:15-cv-24348-KMW (S.D. Fla.) (Williams, J.); *Amorin, et al. v. Taishan Gypsum Co., Ltd. et al.*, Civ. No. 2:11-cv-00377-MSD-RJK (E.D. Va.) (Davis, J.).

[3] Class Counsel consist of Arnold Levin, Stephen J. Herman, Richard J. Serpe, Patrick S. Montoya, and Sandra L. Duggan. These attorneys are also Lead and Liaison Counsel and members of the Plaintiffs' Steering Committee in MDL 2047 ("PSC"). As a convention for the sake of convenience, throughout this Memorandum the use of the term "Class Counsel" refers to those one or more of the attorneys who, over the entire course of this lengthy litigation, were Class Counsel in *Amorin*, Proposed Settlement Class Counsel in the anticipated Global Settlement, members of the PSC and/or those common benefit attorneys working at their direction in MDL 2047, and also includes those

finally resolving this litigation by concluding a "Global Settlement" with Taishan that provides fair, reasonable and adequate compensation to *Amorin* class members, plaintiffs named on the *Brooke* Complaints and absent class members. However, there are 498 *Amorin* class plaintiffs with properties in Florida represented by "Settling Attorneys"[4] who agreed to separately settle their claims on different terms. These Settling Attorneys separately negotiated a discrete settlement only for their individual *Amorin* clients apart from the existing *Amorin* class -- the "Florida Individual Settlement" or "FIS"-- while still relying on Class Counsel to litigate these same clients' claims and also resolve the claims for their remaining clients in the separate *Brooke* litigation.

Throughout this litigation, Class Counsel expended all the time, money, effort, and have assumed all the risk and responsibility of prosecuting the claims of <u>all</u> of the plaintiffs, including those in the remanded Florida *Amorin* case which, of course, includes the 498 plaintiffs involved in the FIS. In contrast to the Knauf settlement, Class Counsel expended extraordinarily more time, more money and more resources prosecuting the plaintiffs' claims against the Taishan Defendants in comparison to the Knauf Defendants. These expenditures of time, money and resources laid the groundwork for resolution of the litigation with Taishan. No negotiation, much less a settlement, with the Settling Attorneys would have been realistic or possible without the preceding nine-plus years of prosecution committed by Class Counsel.

Settling Attorneys' negotiation of the FIS for their 498 individual clients was predicated on the labors and achievements of Class Counsel. It was Class Counsel who prepared the pleadings in which the Settling Attorneys' clients are named as plaintiffs. At considerable expense, Class Counsel served those pleadings pursuant to the Hague Convention or through alternative service granted by the MDL Court, prosecuted the claims, took the discovery, litigated the motions, briefed and argued the appeals, administered the remands to the Transferor Courts, and, following remand, developed and executed the trial

---

counsel working together in this remand court and others, *e.g.* Allison Grant, Baron & Budd, Morgan & Morgan. This convention is intended to distinguish Mr. Faircloth and the other Settling Attorneys.
[4] "Settling Attorneys" include: (i) Faircloth Melton Sobel & Bash, LLC, (ii) Parker Waichman PR LLC, (iii) Milstein Jackson Fairchild & Wade LLC, (iv) Whitfield Bryson & Mason LLP, (v) Mrachek Fitzgerald Rose Konopka Thomas & Weiss, PA, (vi) Roberts & Durkee, PA, and (vii) Levin Papantonio Thomas Mitchell Rafferty Proctor PA.

plans that brought Taishan to the settlement table. Apart from negotiating the terms of their FIS, Settling Attorneys devoted little to no time and paid none of the costs to prosecute their clients' claims against Taishan; they were standing on the shoulders of Class Counsel whose work-product (which settling attorneys were ready to fall back on) pressured Taishan to negotiate. It was Class Counsel who prosecuted these cases. Class Counsel's common benefit work produced the circumstances under which the FIS became possible and, even as to the FIS, Settling Attorneys included a "most favored nations" clause as a backstop to take advantage of whatever settlement benefits Class Counsel might obtain in the anticipated Global Settlement. Class Counsel's labors enabled the Settling Attorneys to resolve the claims of their *Amorin* clients, but the anticipated Global Settlement will also resolve the claims of Settling Attorneys' *Brooke* clients, whose interests they apparently were unwilling or unable to resolve due to significant liability issues presented by the absence of default judgments against the Defendants in these complaints, as well as statute of limitations and product identification defenses. Notwithstanding all of the benefits conferred upon the Settling Attorneys by Class Counsel, they refuse to acknowledge that any common benefit fee is owed. As discussed below, the recent pronouncement by the Eleventh Circuit in *In re Home Depot, Inc.,* 2019 WL 3330867 (11th Cir. July 25, 2019), proves them wrong.

As demonstrated below, for these efforts Class Counsel are entitled to 20% of the total funds paid in the FIS, which will also be used to reimburse the proportionate share of reasonable expenses.

## II.    RELEVANT PROCEDURAL BACKGROUND

### A.    Background of the Proceedings in the MDL.

After the devastation of Hurricanes Katrina and Rita along the Gulf Coast in 2005, and as a result of a housing boom, there was a shortage of drywall available domestically. *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.,* 2017 WL 1421627, at *1 (E.D. La. Apr. 21, 2017). Unfortunately for these property owners, some drywall imported from China was defective because it emits corrosive sulfur gases that create a toxic environment. *See Chinese Drywall,* 2017 WL 1421627, at *1. When the defects of Chinese drywall started to become apparent, homeowners began to file suit in various state and federal courts against the manufacturers and their parent entities, as well as homebuilders, developers, installers, suppliers, importers, exporters, and distributors in the Chinese drywall supply chain. *See id.*

The defective Chinese drywall at issue was predominately manufactured by two groups of defendants: (1) Knauf entities, and (2) Taishan entities. *See id.* On June 15, 2009, all federal cases involving Chinese drywall were consolidated in MDL 2047,[5] where the cases proceeded for nine years prior to their remand to this Court on June 7, 2018.[6] Unlike the early settlement obtained against the Knauf entities, *see* Declaration of Patrick S. Montoya and Sandra L. Duggan in Support of Class Counsel's Motion for an Award of Common Benefit Costs and/or Fees Out of the Proceeds of the Florida Individual Settlement ¶2 (Attached hereto as Exhibit "A") [hereafter "Leadership Dec. "], the litigation against the Taishan entities took a vastly different course because of the dilatory strategy of these Defendants.   That strategy commenced in 2009, when Taishan and its parent companies, CNBM and BNBM, chose to ignore the lawsuits against them and allow default judgments to be entered.   While Defendants sat on the sidelines in China for a year, the MDL Court proceeded with a bellwether trial (the *Germano* case). *See Chinese Drywall*, 2017 WL 1421627, at *3.   Class Counsel presented evidence specific to seven properties. Following the hearing, Judge Fallon issued detailed Findings of Fact & Conclusions of Law. *See id.*

When the $2.6 million judgment in *Germano* was entered, Defendants arranged for Taishan to enter an appearance in the MDL on the last day to appeal the *Germano* judgment, but *solely* to contest jurisdiction and open the default. *See id.* at *3-4.   Two years later, following significant discovery conducted by movants and others, including a week of depositions in Hong Kong personally overseen by Judge Fallon, and extensive briefing and oral argument, Judge Fallon issued a comprehensive jurisdictional opinion addressing Taishan's targeting of U.S. customers for sales of its drywall. *See id.* at 881-82.   The MDL court's rulings were upheld on appeal two years later by two different panels of the Fifth Circuit Court of Appeals. *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 742 F.3d 576 & 753 F.3d 521 (5th Cir. 2014).

Thereafter, Taishan   fired its counsel   and refused to appear in open court for a judgment debtor examination. *See Chinese Drywall*, 2017 WL 1421627, at *4.   This resulted in civil and criminal contempt sanctions against Taishan on July 17, 2014. *Id.*   During Taishan's absence from the jurisdiction, Class Counsel filed a Motion for Class Certification pursuant

---

[5] *In re Chinese-Manufactured Drywall Prod. Liab. Litig.,* 626 F.Supp.2d 1346 (J.P.M.L. 2009).
[6] Florida Remand Order (ECF No. 13).

to Rule 23(b)(3). *Id.* On September 26, 2014, Judge Fallon certified the *Amorin* class of homeowners with defective drywall manufactured by the Taishan Defendants and appointed class counsel to oversee the prosecution of the litigation against Taishan. *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2014 WL 4809520 (E.D. La. Sept. 24, 2014) ("Class Certification FOFCOL"). Judge Fallon scheduled a hearing to determine class damages. *See Chinese Drywall*, 2017 WL 1421627, at *5.

On the day of the class damages hearing in February 2015, BNBM appeared for the first time and requested a continuance, which was granted. *See id.* Shortly thereafter, Taishan returned to the litigation and paid the *Germano* judgment, plus fines. *Id.* Upon their return, Defendants vigorously contested several important issues, seeking to challenge jurisdiction, decertify the *Amorin* class, and avoid a class damages verdict. *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2018 WL 279629 (E.D. La. Jan. 2, 2018). All of these motions were just as vigorously opposed by Class Counsel.

On June 9, 2015, the MDL Court oversaw the class damages hearing. *See Chinese Drywall*, 2017 WL 1421627, at *5. After a failed attempt at mediation in 2016, Judge Fallon issued "Findings of Fact & Conclusions of Law Related to the June 9, 2015 Damages Hearing" ("Class Damages FOFCOL") on April 21, 2017. *Id.* Prior to remanding the Florida *Amorin* cases, Judge Fallon denied Defendants' motions to decertify the *Amorin* class[7] and vacate the default judgments against them. *Chinese Drywall*, 2018 WL 279629, at *8. The motions were denied. On March 17, 2018, Judge Fallon issued a Suggestion of Remand, Opinion & Order for approximately 1,700 Florida *Amorin* Plaintiffs, including the 498 involved in the FIS.[8]

After the Suggestion of Remand of the Florida *Amorin* cases, Class Counsel in the MDL filed a motion addressing the Court's suggestion for the need to establish a Plaintiffs' attorneys' fees fund to compensate and reimburse attorneys for services performed for MDL administration and common benefit.[9] Several counsel represented by one of the Settling Attorneys, Mr. Faircloth, opposed the Holdback Motion not because common benefit counsel do not deserve to be compensated but rather to avoid the MDL court's ruling on common

---

[7] *See* Order & Reasons dated 4/21/2017 [MDL Rec. Doc. 20740].
[8] MDL Rec. Doc. 21242.
[9] MDL Rec. Doc. 21267 ("Holdback Motion").

benefit fees.[10]When the Conditional Remand Order was entered by the JPML, Mr. Faircloth also opposed, not because the cases should not be remanded to Florida but because Settling Attorney Parker Waichman did not want the MDL Court to retain authority over any future common benefit fee awards.[11] But, the MDL Court had issued PTO 32, retaining jurisdiction over attorneys' fees in the remanded actions.[12]

To address the current circumstances of the presentment of a potential Global Settlement and FIS, on July 1, 2019, the Settling Attorneys filed in the MDL an Unopposed Motion to Lift PTO 32 for Individual Settlements on Remand and Request for Expedited Consideration.[13] Therein, Settling Attorneys suggested that the MDL Court "should direct that all issues related to an aggregate award of common benefit fees and costs from the Florida Individual Settlement be directed to the Transferor Court, but with [the MDL] Court retaining jurisdiction to allocate any such award between and among the individual common benefit attorneys in accordance with Pretrial Order No. 9."[14] On July 16, 2019, the MDL Court lifted the stay imposed by PTO 32 to allow the FIS to proceed and for this Court to consider this petition for "an award of common benefit fees and costs from the proceeds of the Florida Individual Settlement."[15]

**B.** **Proceedings in this Court.**

Upon remand, this Court ordered the parties to submit a Joint Plan detailing how to move this case forward.[16] The parties submitted competing trial plans.[17] The Court also requested briefing on the deference to be afforded to Judge Fallon's rulings in the MDL,[18] which Class Counsel carefully prepared and promptly submitted.

On November 16, 2018, the Court issued its Trial Plan, which effectively recognized the value of, and accorded dispositive weight to, the common benefit work of Class Counsel in the MDL. The Plan "**ADOPTS all** of Judge Fallon's finding of facts and legal

---

[10] MDL Rec. Doc. 21372.
[11] See MDL No. 2047, JPML Rec. Doc. 504-1, at 5-7.
[12] See Suggestion of Remand [ECF No. 33]; see also Order & Reasons (staying Florida actions in Louisiana) [MDL Rec. Doc. 21935] and PTO 32 [ECF No. 21328].
[13] See MDL Rec. Doc. 22283.
[14] Id., ¶10.
[15] MDL Rec.Doc. 22289.
[16] ECF No. 38.
[17] See, e.g., ECF Nos. 52, 53, 64, 65, 69 & 71; see also ECF No. 112 at 1.
[18] See ECF No. 91; see also ECF No. 112 at 2.

conclusions." (ECF No. 112 at 2).[19] The Court found that Judge Fallon's decisions were "well-reasoned and well-supported by the evidentiary record" and made clear it would "not revisit any of his rulings absent a compelling showing of an intervening change in law and fact." *Id.* The Court established two tracks for resolution – one for property damages and the other for "other damages," including alternate living expenses, loss of use and enjoyment, lost rent, bankruptcy, foreclosure and short sale. *Id.* at 6-9.

Class Counsel thereafter coordinated and provided direct oversight over the administration of plaintiffs' efforts to execute the Court's Trial Plan. From the outset, Class Counsel oversaw the briefing and preparation of materials for the property damages track and the scheduling of Priority Claimants' litigation efforts in anticipation of the "other damages" trial. The oversight and efforts provided by Class Counsel addressed each and every plaintiff present in this Court and was provided without regard to individual representation. Thus, Settling Attorneys received the benefits of Class Counsel's labors.

For the Property Damages track, Class Counsel performed essential functions processing claims for each of the Participating Plaintiffs. *See infra* at 16. Class Counsel also made extensive efforts regarding preparation for the "other damages" trial which covered every manner of process and procedure. *See infra* at 16-17. Notably, these expenditures of time were also accompanied by costs, especially as it relates to expert discovery. The Class Counsel paid these costs with no contribution from Settling Attorneys, even though the funded efforts and activities in the litigation conferred significant benefit on Settling Attorneys' clients.

The parties were preparing for the scheduled July 22, 2019 trial on "other damages" (ECF No. 112 at 11), including preparation of motions *in limine*, at the time that the Court-mandated mediation occurred with Mr. John Sigmund Freud. The mediation took place over two days between May 22-23, 2019 and was successful. Because of careful planning and diligent preparation, Class Counsel were able to negotiate for terms to reach a potential Global Settlement to resolve the claims of all *Amorin* plaintiffs, all *Brooke* plaintiffs, and absent class members.[20] The filing and presence of the *Brooke* complaints proved to be a prescient

---

[19] There can be no doubt that this ruling was solely achieved by Class Counsel's work and efforts in the MDL with not an ounce of work by the Settling Attorneys. This ruling set the table for the both settlements to occur.
[20] *See* June 5, 2019 Motions Hearing Tr. at 7. (Attached hereto as Exhibit "B").

decision by Class Counsel as they permitted Taishan to obtain the comfort and *res judicata* protection the Defendants desired over claimants for which class certification had not yet been determined and no default judgments existed. However, the 498 Plaintiffs listed on Exhibit 1 to the FIS will separately resolve their claims.[21] Because of the agreements reached in the mediation of the Global Settlement, Class Counsel and Taishan requested that this Court stay these proceedings to allow the class action settlement to be presented to the MDL Court.

The mediation was confounded by the Settling Attorneys' FIS. Mr. Parker had been a member of the MDL Plaintiffs' Steering Committee who resigned his position when informed of the effect of the proposed allocation by the MDL's Fee Committee would have on his attorneys' fees derived from his Taishan clients, and he became a serial objector to the Fee Committee.[22] The obstructionist propensities of Parker Waichman and its counsel, Mr. Faircloth, were detailed by the MDL Court in its Order and Reasons Setting Common Benefit Fees, where the court found these counsel "'over-played' their hand"[23] during the fee allocation process. In the MDL, the Fee Committee recognized the disparity of effort between those counsel who performed common benefit work as opposed to base-tending clients and recommended an award of 9.181% of the amount recovered to common benefit counsel. Parker Waichman and Faircloth "filed some 23 objections, commenced unnecessary proceedings, and prolonged the discovery process by filing unnecessary written discovery and seeking pointless depositions of the Court-appointed CPA and various members of the PSC

---

[21] MDL Rec. Doc. 22125-1. *See* June 5, 2019 Motions Hearing Tr. at 8.

[22] These attorneys began a campaign of improper conduct throughout the satellite fee litigation involving Knauf. An example of which is easily demonstrated by the Motion to Disqualify the Fee Committee, Strike its Allocation Recommendation, and Stay or Dismiss Proceedings before the Special Master and Request for Expedited Consideration (MDL Rec. Doc. 20735) filed by Mr. Faircloth on behalf of Parker Waichman. The inflammatory motion was promptly denied by Order dated 5/24/2017 (MDL Rec. Doc. 20789). Notwithstanding this ruling, PW through its counsel Jimmy Faircloth, filed a second Motion to Disqualify Fee Committee Chair and Co-Chair, to Strike the Step Six Recommendation of the Majority of Fee Committee Regarding Allocation of the Common Benefit (MDL Rec. Doc. 21455), and to Lift the Seal on Related Filings (MDL Rec. Doc. 21489). The MDL Court summarily rejected this motion finding "no evidence of impropriety from the Chair or Co-Chair of the Fee Committee." Order & Reasons at 1 (MDL Rec. Doc. 21686).

[23] *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, MDL 2047, Order & Reasons Setting Common Benefit Fees at 23 (E.D. La. Jan. 31, 2018) (hereafter "Fee Allocation O&R") [MDL Rec. Doc. 21168].

and Fee Allocation Committee. Their accomplished results: havoc and needless delay."[24] Yet, it was these counsel that negotiated and promoted the FIS as a benchmark.

The FIS was announced by Settling Attorneys filing of a Notice of Filing in the MDL on March 7, 2019.[25] When Class Counsel became aware of the FIS, it immediately raised concerns that class members were not adequately being informed of the current state of the proceedings in this Court and the deleterious effect that the "Most favored Nations" clause might impart on the class' ability to resolve their claims.[26] On March 14, 2019, Class Counsel filed a Motion for an Order Under Rule 23(d) to Protect the Florida *Amorin* Class.[27] On March 19, 2019, this Court stayed the FIS and required the Settling Attorneys to present their Settlement Agreement to the Court under seal.[28] Thereafter, the Court set a Hearing on June 5, 2019 to address the outstanding matters regarding the FIS.[29] In the meantime, the Parties successfully mediated the Global Settlement to resolve this litigation. Thus, at the June 5 Hearing, the Court heard the announcement of the parties and their intentions on how to proceed with the Global Settlement in the MDL Court.[30] The Court then lifted the stay on the execution of the FIS, denied as moot Class Counsel's motion to protect the class, and stayed the case to allow the parties to finalize the Global Settlement Agreement.[31]

With the advent of the MDL Court's ruling lifting the stay of PTO 32, the time to address common benefit attorney's fees derived from the FIS has now arrived.

## III.   ARGUMENT

### A.   Under the Common Benefit Doctrine, the Law Compensates Attorneys from Common Funds Created By Their Efforts.

---

[24] *Id.*

[25] *See* Joint Notice of Settlement Agreement (MDL Rec. Doc. 22125).

[26] It has become abundantly clear that Taishan was only willing to offer Settling Attorneys the FIS with the Most Favored Nations clause to afford them parity knowing that the potential Global Settlement with Class Counsel would reflect improved terms. In fact, Class Counsel have received correspondence from a Parker Waichman client which confirms that the ongoing process of negotiating the Global Settlement is being employed by Settling Attorneys to encourage their clients to participate in the FIS. *See* July 2, 2019 email of Melissa Reber [a motion to file UNDER SEAL will be promptly filed] (placeholder attached hereto as Exhibit "C").

[27] ECF No. 192.

[28] Order Striking Joint Notice of Settlement Agreement (ECF No. 196).

[29] Order of April 29, 2019 (ECF No. 242).

[30] *See* June 5, 2019 Motions Hearing Tr. at 6-9.

[31] Order of June 6, 2019 (ECF No. 313). *See also* ECF. Nos. 317 & 319.

When a class settlement creates a fund for class members, attorneys' fees should be awarded to class counsel under the common benefit doctrine based on a percentage of the fund. *See In re Home Depot, Inc.,* 2019 WL 3330867at *5 ; *Camden I Condominium Ass'n v. Dunkle,* 946 F.2d 768, 771 (11th Cir. 1991); *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980). Following from the premise that those who receive the benefit of a lawsuit without contributing to its costs are "unjustly enriched," the common benefit doctrine "allows a court to prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit." *Boeing,* 444 U.S. at 478; *Mills v. Elec. Auto-Lite Co.,* 396 U.S. 375, 392 (1970). The Supreme Court, the Eleventh Circuit, and courts in this District, therefore, have all held that "the law is well established that 'a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.'" *Cifuentes v. Regions Bank,* No. 11-cv-23455, 2014 WL 1153772, at *7 (S.D. Fla. Mar. 20, 2014) (Moreno, J.) (quoting *Boeing,* 444 U.S. at 478).

The common benefit doctrine is not restricted to class actions either. It equally applies to aggregated litigation where individual clients receive the benefits of having their claims prepared for trial or resolution by court-appointed attorneys to conduct and oversee their litigation strategy. *See Home Depot* at *8 & n.12 (discussing fee spreading); *Fee Allocation O&R* at 7-8. The intent is to compensate those counsel who most benefit the clients by charging those counsel who are "free-riders" so they are not unjustly enriched. Based on controlling precedent such as *In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972,* 549 F.2d 1006, 1008 (5th Cir. 1977),[32] the MDL Court recognized its "inherent authority" to compensate common benefit count to 1) "bring management power to bear upon massive and complex litigation" and 2) "to encourage attorneys to accept the considerable risks associated with prosecuting complex, multi-plaintiff matters for the benefit and protection of all plaintiff rights."[33] In an analogous situation to the FIS, the Eleventh Circuit recognized that work performed for a class which results in a separate resolution involving other parties is subject to a common fund fee. *Home Depot* at *21 ("A rule establishing that class counsel can get no credit for

---

[32] *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir. 1981) (recognizing that Fifth Circuit decisions preceding the creation of the Eleventh Circuit are considered binding precedent).
[33] *Fee Allocation O&R* at 7-8.

settlements with putative class members done before the class as a whole settles would entrench the very unjust enrichment and collective-action problem that class actions are designed to solve."). Thus, whether the FIS is perceived as a class action, quasi-class action, or individual litigation, persuasive authority exists for awarding Class Counsel compensation from the funds paid by Taishan in the FIS through the Common Benefit Doctrine.[34]

In the Eleventh Circuit, in particular, class counsel/common benefit fee awards must be based on a percentage of the common fund generated. In *Camden I*—the controlling authority in the Eleventh Circuit dealing with the issue of attorneys' fees in common fund cases—the court held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774. *See also Home Depot* at *5. The well-established starting point or "benchmark" percentage for fee awards is 25 percent, which then may be adjusted based on the circumstances of each case. *See Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1243 (11th Cir. 2011) (affirming fee award above the "25% benchmark"); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294 (11th Cir. 1999) (directing district courts "to view [the 20 percent to 30 percent] range as a 'benchmark,' which 'may be adjusted in accordance with the individual circumstances of each case'") (quoting *Camden I*, 946 F.2d at 774-75 (observing that "[t]he majority of common fund fee awards fall between 20 percent to 30 percent of the fund")).

Our fee and cost request of 20 percent of the total value of the proceeds from the FIS falls well below the Eleventh Circuit's benchmark, and therefore should be awarded considering the circumstances of this litigation where Class Counsel performed all but the settlement negotiation of the FIS.[35]

---

[34] By adopting all of Judge Fallon's findings and legal conclusions, this Court's Order of November 16, 2018 gives great weight to the persuasive reasoning of the *Fee Allocation O&R*. To disregard the application of the Common Benefit Doctrine to these *Amorin* class members would require the imposition of an attorneys' fee lien on each file for *quantum meruit* compensation, which would ultimately require a lodestar analysis like that in *Home Depot*. Thus, any suggestion by the Settling Attorneys that Class Counsel are not entitled to a common benefit fee is not well founded.

[35] *See Waters*, 190 F.3d at 1294 (approving fee award where the district court determined that the benchmark should be 30 percent and then adjusted the fee award higher based on the circumstances of the case); *Allapattah Services, Inc. v. Exxon Corp.*, 454 F.Supp.2d 1185, 1203 (S.D. Fla. 2006) (determining that "the 25% 'benchmark' should be considered a floor for a fee award in this case, and

**B.**     <u>The *Camden I* Factors Support Class Counsel's Requested Fee.</u>

The Eleventh Circuit has identified a set of factors the Court should consider when determining the appropriate percentage to award common benefit counsel. These factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; (12) awards in similar cases.[36]

These twelve factors are not exclusive. *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001). The Eleventh Circuit also has "encouraged the lower courts to consider additional factors unique to the particular case." *Camden I*, 946 F.3d at 775. As applied here, the *Camden I* factors, together with other pertinent facts, all support awarding Class Counsel the requested fee.

### i. The claims against the Taishan Defendants required substantial time and labor.

Prosecuting and resolving this litigation demanded immense amounts of time and labor, making this fee request reasonable. *See* Leadership Dec. ¶4. Throughout the 10-year pendency of the litigation, the internal organization of all counsel, including assignments of work, conference calls, oversight of various tasks and projects, was directed by the Class Counsel to ensure that other common benefit counsel were continuously engaged in coordinated, productive work to maximize efficiency and minimize duplication of effort. *Id.* With over (20) law firms involved in prosecuting the claims against the Taishan Defendants, such coordination was particularly important. *Id.*

The work performed in the MDL was substantial and involved extensive briefing of complex issues of 1) personal jurisdiction involving foreign corporations, as well as State-Owned Enterprises who presented unique defenses under the Foreign Sovereign Immunities

---

that the percentage should be adjusted upward" based on the circumstances of the case); *Fee Allocation O&R* at 19-20 (recognizing award to common benefit counsel of 9.181% of a $1.12 billion fund, to be at the "low end" of similar recoveries); *In re Educational Testing Service*, 555 F.Supp.2d 661 (E.D. La. 2007) (awarding 14.5% of recovery to common benefit counsel).

[36] *Camden I*, 946 F.2d at 772 n.3 (citing factors originally set forth in *Johnson v. Ga. Hwy. Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

Act;[37] 2) class certification and the defendants' efforts to have the class decertified; 3) the ability to employ formulaic class damages, and 4) contempt. Opposing these potentially dispositive motions required substantial legal research, as well as an enormous briefing effort that ultimately resulted in thousands of pages of briefing. Class Counsel regularly convened in advance of oral argument on the various motions to prepare for the evidentiary hearings or lengthy arguments that ensued. *Id.*¶¶5-6.

Since January 2014, extensive common benefit discovery involving over 30 depositions of parties and third parties was conducted to produce an incontrovertible record regarding the Defendants' targeted efforts to sell their products in the United States and that (i) CNBM, BNBM Group, BNBM, and Taishan operate as a single business enterprise under Louisiana law, (ii) Taishan and BNBM are agents under Virginia and Florida law, and (iii) there is jurisdiction over BNBM under Florida law for its manufacture and sales of BNBM/Dragon board in Florida. MDL Counsel served written discovery requests on each of the Defendants, seeking relevant and probative documents and information in their possession. *Id.* ¶13. Defendants produced over 300,000 documents exceeding 1.9 million pages in response to Plaintiffs' discovery requests, and also served responses to interrogatories. *Id.* ¶14. Defendants also asserted layers of objections to Plaintiffs' discovery requests, *id.*, which generated discovery disputes that demanded considerable time and effort. *Id.*

In the MDL, a document review team of attorneys from participating law firms was assembled to diligently review, sort, and code the mountain of documents Defendants produced. *Id.* ¶15. The document review was especially complicated and demanding, because many documents were produced in Chinese, requiring time-consuming translation and specialized translators, at great expense. *Id.* To make the review and subsequent litigation more efficient, document reviewers remained in constant contact with each other to ensure that all counsel became aware of significant emerging evidence in real time. *Id.* Such document review efforts and coordination were essential to make the depositions that followed productive. *Id.*

---

[37] *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 168 F.Supp.3d 918 (E.D. La. 2016).

Upon remand to this Court, Class Counsel expended significant time and effort engaging in a renewed round of substantive briefing addressing the Trial Plan. *Id.* ¶16. Thereafter, to implement the Trial Plan in the abbreviated time available, Class Counsel performed essential functions processing claims for remediation damages for each of the Participating Plaintiffs, including: 1) preparing a Master Spreadsheet that set forth vetted square footage, product ID proof, ownership information, and remediation damages calculations for each Florida *Amorin* property; 2) taking discovery and preparing briefing addressing Taishan Product ID contentions, and presenting oral argument to the Special Master on March 12, 2019; 3) taking discovery and preparing briefing addressing BNBM Product ID contentions; 4) negotiating and responding to Square Footage & Ownership Discovery for Property Damage claims; 5) responding to Defendants' preliminary contests and requests for set-offs for Property Damage claims; and 6) responding to Defendants' final contests and requests for set-offs for Property Damage claims, and presenting oral argument and post-hearing briefing to the Special Master on April 11-12, 2019. *Id.*

Class Counsel's extensive efforts regarding preparation for the "other damages" trial covered every manner of process and procedure, including: 1) tracking and organizing responses to two sets of supplemental discovery requests, 2) scheduling and coordinating dozens of fact depositions, and participating in and overseeing the discovery of 20 Priority Claimants to ensure consistency and preparedness, [38] 4) exchanging names & addresses of fact witnesses to be called at trial for Priority Claimants; 5) negotiating a stipulation regarding authentication and hearsay as to certain categories of documents for Priority Claimants (ECF No. 156); 6) retaining and identifying Priority Claimants experts & providing summaries/reports pursuant to Fed.R.Civ.P. 26(a)(2); 7) participating in expert discovery of Plaintiffs' experts and Defendants' experts, which required travel to Orange County,

---

[38] This included the depositions of Mr. Weiss's Priority Claimants who became Participating Plaintiffs in the FIS (Etters and Deeg/Hooker). Class Counsel had worked extensively with all the Priority Claimants and their counsel, including the Etters and Deeg/Hooker, to present the clients' claims during the pending Property Damage and Other Damage proceedings, so when the FIS was announced it created uncertainty as whether these clients intended to proceed and whether Class Counsel should continue to prosecute these claims on behalf of Mr. Weiss's clients. Based on March 10-11, 2019 email correspondence with Mr. Weiss (attached hereto as Exhibit "D"), it was resolved that Class Counsel would continue to represent these Priority Claimants and protect their interests at upcoming hearings and subsequent trial, if necessary. Thus, both counsel and clients were substantially benefited from the ongoing work-product of Class Counsel.

California, Chicago, Illinois, Atlanta, Georgia, and Boca Raton, Florida; and 7) briefing affirmative and responsive *Daubert* Motions and Motion for Summary Judgment. *Id.* ¶17.

Beginning in February 2016, Class Counsel began preliminary settlement discussions with Counsel for the Taishan Defendants. *Id.* ¶18. Throughout 2016, Class Counsel prepared for and participated in numerous days of negotiations with a mediator at various locations in an attempt to settle the Action. *Id.* But after an agreement in principle was reached, the settlement faltered, and litigation renewed. Not until the actions were remanded did new settlement discussions ensue, thanks, in large part, to this Court's mandate for mediation. In advance of the May 22-23, 2019 mediation, at the behest of Mr. Freud, the parties exchanged documents and position papers which set the stage for the successful mediation. Mr. Faircloth attended the mediation but had little input as the 498 clients he represented have a separate settlement with Taishan. Notably, as a direct result of the ongoing Global Class Settlement negotiation efforts by Class Counsel, the 498 plaintiffs represented by Settling Attorneys are anticipated to achieve parity and consistency with the other class members that may be able to participate in the Global Settlement under a "most-favored-nations" clause which could substantially increase the value of their settlement. *Id.*

All told, Class Counsel's steadfast and coordinated work paid great dividends for the clients. *Id.* This effort was substantial, and since January 2014 consumed over 110,525.32 hours by attorneys with a lodestar value of $76,933,607.75.[39] Each of the above-described efforts was essential to achieving the FIS currently before the Court. *Id.* Taken together, the time, expertise, effort, and resources Class Counsel devoted to prosecuting and settling this litigation of nationwide importance justify the fee and cost reimbursement Class Counsel are now seeking. *Id.*

### ii. The issues involved were novel and difficult and required the exceptional skill of a highly talented group of attorneys.

---

[39] *See* Affidavit of Philip A. Garrett, C.P.A. (attached hereto as Exhibit "E"). Mr. Garrett is the court-appointed CPA in MDL 2047 who is responsible for initial vetting and reporting of the common benefit time records submitted by common benefit counsel. *See* PTO 9 (MDL Rec. Doc. 147). As set forth in Mr. Garrett's Affidavit, because of the Fee award for time reported until year-end 2013 related to the Knauf Settlement, *see Fee Allocation O&R*, only submissions for time reported after January 2014 to May 2019 and costs after January 1, 2015 are being presented to this Court. Excluded from the time reported by Mr. Garrett is any time associated within the billing category intended to capture work associated with Fee Committee and other work intended to collect a fee. *Id.*, ¶14.

The Court regularly witnessed the high quality of Class Counsel's legal work, which conferred an exceptional benefit on the clients in the face of daunting litigation obstacles and highly sophisticated defense counsel. Leadership Dec., ¶20. As the Court is aware, it is a formidable and complicated challenge to successfully prosecute a case like this. *Id*. Moreover, the orderly and effective management of the massive MDL and the remanded cases, with claims against Chinese Defendants on behalf of thousands of property owners, presented challenges that many law firms and lawyers simply would not be able to meet. *Id*. Indeed, litigation of a case like this requires counsel highly trained in class action law and procedure as well as the specialized issues these cases present. *Id*. Those lawyers, whom the MDL Court appointed to represent Plaintiffs, possess these attributes, and their participation as Class Counsel added significant value to the representation of the clients. *Id*. The record before the Court establishes that the litigation involved a wide array of complex and novel challenges, which Class Counsel met at every juncture based on their collective, extensive experience in complex litigation and class action litigation. *Id*. As such, the skill and diligence demonstrated by Class Counsel in this litigation supports the requested fee.[40]

### iii. The claims against the Taishan Defendants entailed considerable risk which was borne by Class Counsel.

The Taishan Defendants mounted vigorous defenses to Plaintiffs' claims, denying personal jurisdiction, class certification, any and all liability, and threatening to withdraw from the litigation altogether. Leadership Dec., ¶22. These defenses were set out with considerable force by opposing counsel and met with oppositions prepared by Class Counsel of equal (and often greater weight). The Settling Attorneys took no part in the substantive part of the litigation nor did they expend any of the substantial costs necessary to mount the prosecution of their clients' claims. They bore none of these risks of non-collection. The success of Class Counsel to bring these defendants to the table (even though Settling Attorneys

---

[40] The quality of opposing counsel with whom Class Counsel sparred also bears on an assessment of the quality of representation. *Id*. ¶21. *See Walco Inv., Inc. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997) (explaining that "[g]iven the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results"); *see also Camden I*, 946 F.2d at 772 n.3; *Johnson*, 488 F.2d at 718. The Taishan Defendants were represented by extremely able, sophisticated, and diligent attorneys, who fought at every turn to protect their clients' interests. In the face of highly skilled and well-funded adversaries, Class Counsel performed admirably and deserve to be compensated for their successful efforts.

were the ones seated at the table) under these circumstances, where a Chinese corporation is fully participating in the federal judicial system and funding a multi-million dollar products liability settlement thus represents a genuine milestone. *Id.*

In considering the "undesirability" factor, courts consider, among things, the "expense and time involved in prosecuting [the] litigation on a contingent basis, with no guarantee or high likelihood of recovery." *Waters v. Cook's Pest Control, Inc.,* No. 2:07-CV-00394-LSC, 2012 WL 2923542, at *18 (N.D. Ala. July 17, 2012). "[T]his factor recognizes that counsel should be rewarded for taking on a case from which other law firms shrunk." *In re Sunbeam*, 176 F. Supp. 2d at 1336. "Undesirability" and relevant risks must be evaluated from the standpoint of plaintiffs' counsel as of the time they commenced the suit – not retroactively, with the benefit of hindsight. *Lindy Bros. Builders, Inc. v. Am. Radiator & Std. Sanitary Corp.*, 540 F.2d 102, 112 (3d Cir. 1976); *Walco*, 975 F. Supp. at 1473.

Prosecuting this litigation was risky from the outset, with numerous obstacles to overcome. *Id.* ¶23. For example, when litigation began in 2009, CNBM and BNBM allowed default judgments to be entered against them and Taishan, *Id.* ¶23 n.13. Defendants have since contested plaintiffs' claims at every turn, challenging the jurisdiction of the courts (an appeal is currently pending at the 5th Circuit), the validity of the defaults entered against them, class certification, and the applicability of formulaic damages to the class. The Taishan Defendants have made the recoverability of damages an underlying risk throughout this litigation, given the potential they might ultimately prevent plaintiffs from enforcing U.S. judgments in China. *Id.* ¶23 n.14. Finally, the Defendants have successfully defended themselves on issues regarding certain product identification, *id.*¶23 n.15, and they still challenge Plaintiffs' liability and recovery theories. Class Counsel have successfully responded to these defenses on behalf of all the plaintiffs, including those in the FIS.

Though Class Counsel believe that they would prevail at the contemplated findings remediation damages and trials of the Priority Plaintiffs, the Taishan Defendants have already asserted numerous arguments against certification of the class and class damages. *Id.* ¶24. Moreover, even if Plaintiffs were successful in obtaining a judgment against the Defendants, the Taishan Defendants would inevitably seek review of the findings and verdict(s) in the Court of Appeals, delaying any judgment obtained for months, if not years. *Id.*

Each of these risks, standing alone, could have impeded Plaintiffs' successful prosecution of these claims at trial (and in any appeal). *Id.* ¶25. Together, they overwhelmingly show that Plaintiffs' claims against the Taishan Defendants were far from a "slam dunk" and that, in light of all the circumstances, Class Counsel's assistance achieved an excellent result for the 498 participants in the FIS, who were the beneficiaries of Class Counsel's outstanding work-product. *Id.*

### iv. This Consuming litigation precluded Class Counsel from other employment.

Class Counsel prosecuted this litigation entirely on a contingent fee basis with no contribution whatsoever from the Settling Attorneys. *Id.* ¶26. Meeting the immense time and expense demands of the case limited the ability of Class Counsel to work on numerous other matters, all without any guarantee that such a substantial investment of the decade worth of time and effort would ever be reimbursed. For example, Lead Counsel alone devoted three partners to this litigation virtually full time for the past decade without any promise of compensation and incurred since 2015 unreimbursed held costs exceeding $670,000.00. This significant risk of nonpayment or underpayment warrants the requested fee. *Id.* ¶27.

Numerous cases recognize that contingent-fee risk is an important factor in determining the fee award. "A contingency fee arrangement often justifies an increase in the award of attorney's fees." *In re Sunbeam*, 176 F. Supp. 2d at 1335; *see also In re Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) (holding that when a common fund case has been prosecuted on a contingent basis, plaintiffs' counsel must be compensated adequately for the risk of non-payment).

The slow progress of the litigation to date readily demonstrates the inherent risk that Class Counsel faced in prosecuting these cases on a contingency fee basis. *Id.* ¶28. Despite Class Counsel's enormous and ongoing effort in prosecuting this litigation, the Taishan Defendants have relentlessly and successfully delayed the proceedings. During this time, Class Counsel have not received any reimbursement or compensation for the millions of dollars of time and expenses that have been spent for the benefit of all the plaintiffs. Class Counsel even paid for the service of process in China under the Hague Convention which exceeded $100,000.00 per Complaint. *Id.* Moreover, since 2015, Class Counsel have funded the litigation against the Taishan Defendants by assessing themselves $1,669,824.00. Altogether, Class Counsel have spent over $5,404,463 in shared and held expenses

prosecuting this litigation.[41]   Uncompensated expenditures of this magnitude, for this duration, can severely damage or even destroy some law firms. It cannot be disputed that this litigation entailed substantial risk of nonpayment and resulting financial hardship for Class Counsel's practices, who were precluded from participating in other cases.

This factor strongly militates in favor of the requested fee.

### v. Class Counsel Achieved an Excellent Result.

For the participants in the FIS, Class Counsel's ability to bring a Chinese corporation to the bargaining table to resolve a product liability action in the United States represents an outstanding result. *Id.* ¶30.  There should be no doubt that it was Class Counsel's efforts that gave these other attorneys the opportunity to even participate in settlement talks, let alone obtain the settlement they completed.   The achievement reached by Class Counsel is noteworthy and deserving of compensation. *Id.*

### vi. The requested fee comports with customary fees awarded in similar cases.

The fee requested is well below the fee typically awarded in similar cases, particularly in this District and Circuit. *Id.* ¶31.  As countless decisions have recognized, a fee award of 30 percent of a common fund is well within the range of a customary fee or benchmark in this District and Circuit.[42]  Of course, the fee requested by Class Counsel is more modest in recognition that the Settling Attorneys are also being compensated from the same fund. *Id.* ¶32.   Class Counsel's requested fee and cost award, 20 percent of the total value of the Settlements, comports easily with customary awards in other class/common benefit cases.[43]

---

[41] Garrett Affidavit, ¶¶17-19.

[42] *See, e.g., In re Checking Account Overdraft Litig.,* 830 F. Supp. 2d at 1366; *In re Sunbeam*, 176 F. Supp. 2d at 1333-34. Numerous decisions in this District, alone, have awarded attorneys' fees up to (and in excess of) 30 percent, precedent which confirms the fairness and reasonableness of the fee requested here. *See, e.g., In re Checking Account Overdraft Litig.,* 830 F. Supp. 2d at 1366 (awarding fees of 30 percent of $410 million); *Allapattah Servs., Inc.,* 454 F. Supp. 2d at 1210 (awarding fees equaling 31¼ percent of settlement of over $1 billion including interest); *In re Managed Care Litig.,* No. 00-md-1334, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (35.5 percent including costs on settlement of $100 million); *In re Takata Airbag Prod. Liab. Litig.,* No. 15-02599-MD-MORENO, 2017 WL 5290875, *5 (S.D. Fla. Nov. 1, 2017) (30% fee award).

[43] By separate agreement, the Settling Attorneys are only escrowing 16% of the total award. They refused to holdback 20% of the award, despite knowing that Class Counsel would submit such a request. Class Counsel agreed to the lesser escrow (without prejudice to our right to challenge the amount escrowed) because, unlike the Settling Attorneys, Class Counsel are committed to protecting the interests of the 498 clients getting paid irrespective of the consequences to our fee award. [Attached hereto as Exhibit "G".

*See* cases discussed above.  Indeed, in the Knauf litigation, a "mega-fund" settlement valued in excess of $1.1 Billion, Judge Fallon awarded common benefit counsel 9.181% of the total settlement to common benefit counsel.  *Fee Allocation O&R* at 20.   Unlike the Knauf settlements, where the Defendants settled far earlier, and class counsel had far less involvement in processing the individual client cases, here, by contrast, the work-up of the Taishan clientele involved enormous input and efforts of Class Counsel. *Id.* ¶33.   *See also* Affidavit of Emma Kingsdorf Schwab (attached hereto as Exhibit "F").   Class Counsel processed Settling Attorney's clients' information making certain it was properly presented and analyzed in the settlement.  *Id.* As the effort against Taishan consumed extraordinary amounts of time and resources over a far longer time frame, where counsel worked contingently without compensation, an even greater award is warranted than that afforded common benefit counsel in the MDL.

### vii. The remaining *Camden I* factors Support the fee requested.

As noted, the burdens of this litigation have precluded Class Counsel's pursuit of other cases. The relatively small size of most of the firms representing Plaintiffs, and the major commitment involved in pursuing this representation, prevented Class Counsel firms from working on other matters and accepting other representations. *Id.* ¶34. Class Counsel have advanced millions of dollars in out-of-pocket costs and expenses, which the requested fee award will include and cover.[44] Without adequate compensation and financial reward, cases such as this simply could not and would not be pursued. Leadership Dec., ¶34.

Finally, the time constraints imposed on Class Counsel have varied over time, but Class Counsel were regularly taxed to produced enormous volumes of work-product under extreme time constraints. *Id.* ¶35. Under all these extraordinary constraints, often requiring around-the-clock effort, Class Counsel regularly produced high-caliber, well-reasoned work-product, which enabled the Settling Attorneys to even begin negotiating the Individual Florida Settlement. *Id.*

### IV.   CONCLUSION

Class Counsel request that the Court grant this fee petition.

---

[44] In the event the Court grants an award, Class Counsel propose to ascribe to that award for expenses, the proportionate share of expenses attributable to the 498 plaintiffs of the total expenditure that was incurred for all plaintiffs.

**Certification of Pre-Filing Conference Pursuant to S.D. FLA. L.R. 7.1(A)(3)**

Class Counsel has engaged in extensive discussions with the Settling Attorneys in a good faith effort to resolve the issues raised in this motion and has been unable to do so.

**Request for Oral Argument**

Class Counsel believes that given the prolix nature of this litigation oral argument of 1.5 hours would assist the Court in making its determination and is sufficient time for the parties to argue their respective positions.

Dated:  August 8, 2019

Respectfully Submitted,

/s/ Patrick S. Montoya, Esq.
Patrick Shanan Montoya
Fla. Bar No. 0524441
Email: Patrick@colson.com
Colson Hicks Eidson
255 Alhambra Circle, PH
Coral Gables, FL  33134-2351
Telephone:  (305) 476-7400
Facsimile:  (305) 476-7444
*Interim Lead Counsel for Plaintiffs*
*On behalf of Class Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Southern District of Florida by using the CM/ECF System, which will send a notice of electronic filing on this 8th day of August, 2019.

/s/ Patrick S. Montoya, Esq.
Patrick Shanan Montoya
Fla. Bar No. 0524441
Email: Patrick@colson.com
Colson Hicks Eidson
255 Alhambra Circle, PH
Coral Gables, FL  33134-2351
Telephone:  (305) 476-7400
Facsimile:  (305) 476-7444
*Interim Lead Counsel for Plaintiffs*
*On behalf of Class Counsel*