**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L JUDGE FALLON MAG. JUDGE WILKINSON |
|---|---|
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS (except *The Mitchell Co., Inc. v. Knauf Gips KG, et al.*, Civil Action No. 09-4115 (E.D. La.)) | |

**SETTLEMENT CLASS COUNSEL'S MEMORANDUM OF LAW
IN SUPPORT OF THEIR UNOPPOSED MOTION FOR AN ORDER:
(1) PRELIMINARILY APPROVING THE CLASS SETTLEMENT AGREEMENT
WITH TAISHAN; (2) PRELIMINARILY CERTIFYING A SETTLEMENT CLASS;
(3) DIRECTING THE DISSEMINATION OF CLASS NOTICE; (4) SCHEDULING
A FAIRNESS HEARING; AND (5) CONTINUING THE STAY OF CLAIMS
<u>AGAINST TAISHAN AND THE ADDITIONAL RELEASED PARTIES</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................... iii

I.      INTRODUCTION .............................................................................................1

II.     FACTUAL BACKGROUND ..............................................................................2

        A.      History of the Litigation.........................................................................2

                1.      The Origins of the Litigation ....................................................2

                2.      The Omni Complaints ................................................................3

                3.      Initial Proceedings in the MDL.................................................4

                4.      Litigation Against Knauf ...........................................................5

                5.      Litigation Against Taishan.........................................................6

                6.      The *Brooke* Actions .................................................................9

                7.      The Remands .............................................................................9

        B.      History of the Settlement Negotiations and Mediation.......................11

        C.      Key Terms of the Settlement ...............................................................12

                1.      Proposed Settlement Class......................................................12

                2.      Amount of Settlement.............................................................12

                3.      Releases...................................................................................13

                4.      Administrative Provisions.......................................................17

                5.      Notice......................................................................................19

                6.      Opt-Outs and Right to Terminate ...........................................21

                7.      Objections ...............................................................................22

                8.      Fairness Hearing and Final Approval .....................................24

                9.      Attorneys' Fees .......................................................................25

                10.     Incentive Awards ....................................................................26

III.    ARGUMENT...................................................................................................26

        A.      The Standard for Preliminary Approval of the Class Settlement with
                Taishan .................................................................................................26

        B.      The Requirements of Rule 23 Have Been Met For Certification
                of the Class ...........................................................................................29

                1.      Numerosity...............................................................................31

2.      Commonality.............................................................................31

3.      Typicality ................................................................................32

4.      Adequacy of Representation ....................................................33

5.      Common Questions of Law and Fact Predominate ..............34

6.      The Class Settlement is Superior ...........................................35

C.      The Proposed Form and Method of Class Notice Is Adequate and Satisfies
the Requirement of Rule 23 ..............................................................35

D.      The Court Should Preliminarily Approve the Settlement and Continue
the Requested Stay of Litigation.......................................................37

E.      Proposed Schedule ............................................................................40

IV.    CONCLUSION.............................................................................................41

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### <u>Cases</u>

*Almanazar v. Select Portfolio Servicing, Inc.*,
    2016 WL 1169198 (S.D. Fla. Mar. 25, 2016) ........................................................................ 28

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997) .................................................................................................. passim

*Amorin v. Taishan Gypsum Co. Ltd.*,
    2019 WL 2172707 (E.D. Va. May 20, 2019) ....................................................................... 30

*Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*,
    211 F.R.D. 457 (S.D. Fla. 2002) ......................................................................................... 27

*Bennett v. Behring Corp.*,
    737 F.2d 982 (11th Cir. 1984) ............................................................................................. 27

*Bristol-Myers Squibb v. Superior Court of California*,
    137 S. Ct. 1773 (2017) .......................................................................................................... 8

*Califano v. Yamasaki*,
    442 U.S. 682 (1979) ............................................................................................................. 32

*Camp v. The Progressive Group*,
    2004 WL 2149079 (E.D. La. Sept. 23, 2004) ..................................................................... 28

*Chun-Hoon v. McKee Foods Corp.*,
    2009 WL 3349549 (N.D. Cal. Oct. 15, 2009) ..................................................................... 40

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ................................................................................................ 38

*Cope v. Duggins*,
    2001 WL 333102 (E.D. La. Apr. 4, 2001) .......................................................................... 28

*Cotton v. Hinton*,
    559 F.2d 1326 (5th Cir. 1977) ........................................................................... 26, 27, 37, 38

*DeJulius v. New England Health Care Emps. Pension Fund*,
    429 F.3d 935 (10th Cir. 2005) ............................................................................................. 36

*Eisen v. Carlisle & Jacqueline*,
    471 U.S. 156 (1974) ............................................................................................................. 36

*Evans v. Jeff D.,*
  475 U.S. 717 (1986) ........................................................................................ 26

*Fidel v. Farley,*
  534 F.3d 508 (6th Cir. 2008)........................................................................... 36

*General Telephone Co. of Southwest v. Falcon,*
  457 U.S. 147 (1982) ........................................................................................ 32

*Grunin v. Int'l House of Pancakes*,
  513 F.2d 114 (8th Cir. 1975)........................................................................... 38

*Hines v. Widnall,*
  334 F.3d 1253 (11th Cir. 2003)....................................................................... 32

*In re Chicken Antitrust Litig. Am. Poultry,*
  669 F.2d 228 (5th Cir. 1982)........................................................................... 37

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.,*
  2019 WL 1057003 (E.D. La. Mar. 6, 2019) .................................................... 11

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
  2018 WL 6046189 (E.D. La. Nov. 19, 2018).............................................. 4, 10

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
  2018 WL 279629 (E.D. La. Jan. 2, 2018) ......................................................... 7

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
  2017 WL 1421627 (E.D. La. Apr. 21, 2017) .......................................... 4, 5, 6, 7

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
  2017 WL 1476595 (E.D. La. Apr. 21, 2017) ..................................................... 8

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
  168 F. Supp. 3d 918 (E.D. La. 2016) ........................................................... 4, 6

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
  2014 WL 4809520 (E.D. La. Sept. 26, 2014) .......................................... passim

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
  2013 WL 499474 (E.D. La. Feb. 7, 2013) .................................................. 5, 33

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.,*
  894 F. Supp. 2d 819 (E.D. La. 2012) ............................................................... 6

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
706 F. Supp. 2d 655 (E.D. La. 2010) ............................................................ 2, 5

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
626 F. Supp. 2d 1346 (J.P.M.L. 2009) ......................................................... 3, 31

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
55 F.3d 768 (3rd Cir. 1995) ............................................................................. 39

*In re Hyundai and Kia Fuel Economy Litig.*,
2019 WL 2376831 (9th Cir. June 6, 2019) ...................................................... 37

*In re Jiffy Lube Sec. Litig.*,
927 F.2d 155 (4th Cir. 1991) ............................................................................ 37

*In re Nat'l Football League Players Concussion Injury Litig.*,
775 F3d 570 (3d Cir. 2014) ....................................................................... 27, 30

*In re Nissan Motor Corp. Antitrust Litig.*,
552 F.2d 1088 (5th Cir. 1977) .......................................................................... 36

*In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*,
739 F.3d 790 (5th Cir. 2014) ............................................................................ 35

*In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*,
910 F. Supp. 2d 891 (E.D. La. 2012) ................................................................ 35

*In re Train Derailment Near Amite Louisiana on October 12, 2002*,
2006 WL 644494 (E.D. La. Jan. 27, 2006) ...................................................... 39

*In re United States Oil & Gas Litig.*,
967 F.2d 489 (11th Cir. 1992) .................................................................... 27, 37

*Kornberg v. Carnival Cruise Lines, Inc.*,
741 F.2d 1332 (11th Cir. 1984) ........................................................................ 32

*Maher v. Zapata Corp.*,
714 F.2d 436 (5th Cir. 1983) ..................................................................... 26, 38

*Miller v. Republic Nat'l Life Ins. Co.*,
559 F.2d 426 (5th Cir. 1977) ............................................................................ 37

*OCA, Inc. Sec. and Der. Litig.*,
2008 WL 4681369 (E.D. La. Oct. 17, 2008) ........................................ 28, 36, 39

*Pearson v. Ecological Sci. Corp.*,
559 F.2d 171 (5th Cir. 1975) ............................................................................ 37

*Pettway v. Am. Cast Iron Pipe Co.*,
   576 F.2d 1157 (5th Cir. 1978) ................................................................ 39

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ............................................................................. 35

*Reed v. GMC*,
   703 F.2d 170 (5th Cir. 1983) ................................................................ 39

*Smith v. Wm. Wrigley Jr. Co.*,
   2010 WL 2401149 (S.D. Fla. June 15, 2010) ..................................... 28

*Sullivan v. Chase Inv. Servs., Inc.*,
   79 F.R.D. 246 (N.D. Cal. 1978) .......................................................... 31

*Turner v. Murphy Oil USA, Inc.*,
   472 F. Supp. 2d 830 (E.D. La. 2007) ................................... 27, 37, 38

*Twigg v. Sears, Roebuck & Co.*,
   153 F.3d 1222 (11th Cir. 1998) .......................................................... 36

*United States v. Allegheny-Ludlum Indus., Inc.*,
   517 F.2d 826 (5th Cir. 1975) ............................................................. 27

*United States v. Tex. Educ. Agency*,
   679 F.2d 1104 (5th Cir. 1982) ............................................................ 38

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ...................................................................... 32, 34

*Winingear v. City of Norfolk*,
   2014 WL 12526327 (E.D. Va. June 5, 2014) ............................... 28, 36

*Young v. Katz*,
   447 F.2d 431 (5th Cir. 1971) ............................................................. 38

## **Statutes**

28 U.S.C. § 1292(b) ..................................................................................... 8

28 U.S.C. § 1407 .......................................................................................... 3

Cal. Civ. Code § 1542 ............................................................................... 16

**Rules**

Fed. R. Civ. P. 16 ................................................................................................................ 27

Fed. R. Civ. P. 23 .......................................................................................................... passim

**Other Authorities**

2 William B. Rubenstein, NEWBERG ON CLASS ACTIONS § 4:63 (5th ed. 2018) .......................... 35

2 William B. Rubenstein, NEWBERG ON CLASS ACTIONS § 13:45 (5th ed. 2018) ........................ 40

Manual for Complex Litigation § 13.14 (4th ed. 2004) .................................................................. 29

Manual for Complex Litigation § 21.22 (4th ed. 2004) .................................................................. 30

Manual for Complex Litigation § 21.63 (4th ed. 2004) .................................................................. 28

Manual for Complex Litigation § 21.632 (4th ed. 2004) ........................................... 27, 29, 30, 39

## I.    **INTRODUCTION**

This Memorandum of Law is submitted by proposed Settlement Class Counsel[1] in support of their Unopposed Motion for Preliminary Approval of the Class Settlement Agreement (the "Agreement") with Taishan Gypsum Company Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd. and Taian Taishan Plasterboard Co., Ltd. (collectively "Taishan")[2] and Certification of a Settlement Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3) and 23(e).  Settlement Class Counsel seek entry of a Preliminary Approval Order[3] finding preliminarily that: (1) the Agreement is fair, reasonable and adequate and thus sufficient to promulgate notice of settlement to the Class; (2) the Agreement is within the range of possible judicial approval; (3) the Agreement was negotiated and entered into at arm's-length, in good faith, and free of collusion to the detriment of the Class; (4) the requirements for certifying the Settlement Class under Rule 23(a) and Rule 23(b)(3) have been met; and (5) Class Members shall be notified of the terms of the Agreement and of their rights in connection therewith.

In addition, Settlement Class Counsel respectfully request that the Court:  (1) approve the form and method of Class notice[4]; (2) approve the Allocation Model developed by the Allocation Neutral and filed on the Court docket[5]; (3) approve the proposed Claim Form[6]; (4) schedule a

---

[1] Proposed Settlement Class Counsel are Arnold Levin, Stephen J. Herman, Richard J. Serpe, Patrick S. Montoya, and Sandra L. Duggan.

[2] The Settlement Agreement with Taishan is attached hereto as Exhibit "1" (the "Agreement").  Capitalized terms used in this Memorandum have the same meaning as those defined in the Agreement.

[3] The "Preliminary Approval Order" is attached hereto as Exhibit "2."

[4] The proposed form of individual mailed Notice to Class Members ("Long-form Notice") is attached hereto as Exhibit "3."  The proposed Summary Notice for publication and Notice Plan are set forth in the Declaration of Shannon R. Wheatman, Ph.D. on Adequacy of Notices and Proposed Notice Plan ("Wheatman Declaration") attached hereto as Exhibit "4."

[5] The Allocation Model was filed with the Court on August 19, 2019 [Rec. Doc. 22304-1].

[6] The proposed Claim Form is attached hereto as Exhibit "5."

fairness hearing to determine whether the Agreement should be given final approval ("Fairness Hearing"); (5) establish dates for the dissemination of Class notice, opt-outs, and objections to the Settlement and other relevant deadlines; and (6) continue the stay of litigation of Claims against Taishan and the Additional Released Parties pending final approval of the Settlement.

## II.   FACTUAL BACKGROUND

### A.   History of the Litigation.

#### 1.   The Origins of the Litigation.

The *Chinese Drywall* Litigation arose out of thousands of individual and class action lawsuits filed in state and federal courts throughout the country on behalf of Plaintiffs seeking compensation for property damage and personal injuries allegedly caused by defective Chinese Drywall. Chinese Drywall was installed in tens of thousands of homes, commercial buildings and other structures in the United States following the devastation caused by Hurricanes Katrina and Rita at the end of the summer of 2005.  In the aftermath of these disasters and in conjunction with a housing boom, there was a critical shortage of drywall in this country, which led to the importation of millions of square feet of drywall from China beginning in the fall of 2005 through 2008.

Chinese Drywall was installed in thousands of properties, primarily in Florida, Louisiana, and Virginia, and also in Alabama, Mississippi, Texas, Tennessee, Georgia, North Carolina, Illinois, Oklahoma, South Carolina, and California.  Once installed, many residents and owners began to notice unpleasant odors and corrosion to certain items made of metal.[7]  Plaintiffs filed claims for damages in various jurisdictions across the country alleging that Chinese Drywall emits

---

[7] *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.* (*Germano*), 706 F. Supp. 2d 655, 663 (E.D. La. 2010) (Findings of Fact and Conclusions of Law).

sulfur gases that cause extensive damage to property and also, in some cases, physical ailments.[8]
On June 15, 2009, the Judicial Panel for Multidistrict Litigation transferred all federal actions
alleging damage from Chinese Drywall to the Eastern District of Louisiana for coordinated
discovery and consolidated pretrial proceedings in MDL 2047 pursuant to 28 U.S.C. § 1407.[9]

### 2.     The Omni Complaints.

Since the formation of the MDL, thousands of claimants have been named in one or more
of the Plaintiffs' Steering Committee's ("PSC") Omnibus Class Action Complaints filed against
more than 1,650 different manufacturers, importers, suppliers, distributors, builders, installers, and
their insurers involved in the supply chain of Chinese Drywall installed in Plaintiffs' properties.[10]

---

[8] *Id.* at 659, 664-66, 710.

[9] Rec. Doc. 1; *See also In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 626 F. Supp. 2d 1346 (J.P.M.L. 2009).

[10] *See Payton v. Knauf Gips, KG*, No. 09-7628 (E.D. La.) (Omni I, I(A), I(B), I(C)); *Wiltz v. Beijing New Building Materials Public Limited Co.*, No. 10-361 (E.D. La.) (Omni II, II(A), II(B), II(C)); *Gross v. Knauf Gips, KG*, No. 09-6690 (E.D. La.) (original complaint, Omni III, III(A)); *Rogers v. Knauf Gips, KG*, No. 10-362 (E.D. La.) (Omni IV, IV(A), IV(B), IV(C)); *Amato v. Liberty Mutual Ins. Co.*, No. 10-932 (E.D. La.) (Omni V); *Hernandez v. AAA Ins.*, No. 10-3070 (E.D. La.) (Omni VI); *Abel v. Taishan Gypsum Co., Ltd.*, No. 11-080 (E.D. La.) (Omni VII); *Abreu v. Gebrueder Knauf Verwaltungsgesellschaft, KG*, No. 11-252 (E.D. La.) (Omni VIII); *Haya v. Taishan Gypsum Co., Ltd.*, No. 11-1077 (E.D.La.) (Omni IX); *Block v. Gebrueder Knauf Verwaltungsgesellschaft, KG*, No. 11-1363 (E.D. La.) (Omni X); *Benoit v. Lafarge S.A.*, No. 11-1893 (E.D. La.) (Omni XI); *Arndt v. Gebrueder Knauf Verwaltungsgesellschaft, KG*, No. 11-2349 (E.D. La.) (Omni XII); *Almeroth v. Taishan Gypsum Co., Ltd.*, No. 12-0498 (E.D. La.) (Omni XIII); *Cassidy v. Gebrueder Knauf Verwaltungsgesellschaft, KG*, No. 11-3023 (E.D. La.) (Omni XIV); *Amorin v. Taishan Gypsum Co., Ltd.*, No. 11-1672 (E.D. La.) (Omni XV); *Amorin v. Taishan Gypsum Co., Ltd.*, No. 11-1395 (E.D. La.) (Omni XVI); *Amorin v. Taishan Gypsum Co., Ltd.*, No. 11-1673 (Omni XVII); *Beane v. Gebrueder Knauf Verwaltungsgesellschaft, KG*, No. 13-609 (E.D. La.) (Omni XVIII); *Amorin v. State-Owned Assets Supervision and Administration Commission of the State Council*, No. 14-1727 (E.D. La.) (Omni XIX); *Brooke v. State-Owned Assets Supervision and Administration Commission of the State Council*, No. 15-4127 (E.D. La.) (Omni XX); *Macon v. Taishan Gypsum Co., Ltd.*, No. 17-1287 (N.D. Ala.) (Omni XXI); *Peoples v. Taishan Gypsum Co., Ltd.*, No. 17-2890 (N.D.Ga.) (Omni XXII); *Polk v. Taishan Gypsum Co., Ltd.*, No. 17-216H50 (S.D. Miss.) (Omni XXIII); *Bright v. Taishan Gypsum Co., Ltd.*, No. 17-0035 (E.D.N.C.) (Omni XXIV); *DeOliveira v. Taishan Gypsum Co., Ltd.*, No. 17-2019 (D.S.C.) (Omni XXV); *Redden v. Taishan Gypsum Co., Ltd.*, No. 17-1146 (W.D.Tenn.) (Omni XXVI); *Mertlitz v. Taishan Gypsum Co., Ltd.*, No. 17-140 (E.D. Tex.) (Omni XXVII); *Bayne, v. Taishan Gypsum Co., Ltd.*, No. 17-1286 (N.D.Ala.) (Omni XXVIII); *Abner v. Taishan Gypsum Co., Ltd.*, No. 11-3094 (N.D.Calif.) (Omni XXIX); *Bentz v. Taishan Gypsum Co., Ltd.*, No. 17-2892 (N.D. Ga.) (Omni XXX); *Allen v. Taishan Gypsum Co., Ltd.*, No. 17-217LG (S.D. Miss.) (Omni XXXI); *Lochhead v. Taishan Gypsum Co.*, No. 17-

In 2010, Taishan filed motions to dismiss for lack of personal jurisdiction under Louisiana, Florida, and Virginia law. In order to protect the Plaintiffs' Claims where jurisdiction over Taishan was in question, the PSC filed identical *Amorin* Class Action Complaints in the MDL, the Southern District of Florida, and the Eastern District of Virginia. Each of the *Amorin* actions included all Plaintiffs named on any of the Omni actions regardless of where the Plaintiff's property was located. These identical *Amorin* Complaints were then transferred by the Judicial Panel on Multidistrict Litigation ("JPML") to the MDL Court in Louisiana.[11]

### 3.   Initial Proceedings in the MDL.

The PSC pursued primarily two groups of drywall-manufacturer Defendants: (1) the Knauf entities, and (2) the Taishan entities.[12] Knauf entered its appearance early in the litigation, in July 2009, agreeing to a limited waiver of service in November 2009.[13] In contrast, the Taishan entities failed to appear in the litigation and a default was entered against Taishan in 2009.[14] In February

---

294 (S.D.Tex.); *Stutzman, et al v. Taishan Gypsum Co., Ltd., et al*, No. 17-1209 (S.D. Ill.) (Omni XXXIII); *Allman, et al v. Taishan Gypsum Co., Ltd., et al*, No. 17-00051 (E.D.N.C.) (Omni XXXIV); *Cole, et al, v State-Owned Assets Supervision and Administration Commission of the State Council, et al*, No. 18-00562 (E.D. La.) (Omni XXXV).

[11] *See In re Chinese-Manufactured Drywall Prod. Liab. Litig*., 2018 WL 6046189, at *2-3 (E.D. La. Nov. 19, 2018) (discussing background of identical *Amorin* complaints).

[12] *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2017 WL 1421627, *1 (E.D. La. Apr. 21, 2017). The Knauf entities ("Knauf") are German-based, international manufacturers of building products, including drywall, whose Chinese subsidiary, Knauf Plasterboard (Tianjin) Co., Ltd., manufactured and sold its Chinese drywall in the United States. The Taishan entities are Chinese companies that include Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd. ("TTP") (collectively, "Taishan"), and their parents CNBM Company ("CNBM"), BNBM (Group) Co. Ltd. ("BNBM Group"), and BNBM PLC ("BNBM"). On March 10, 2016, the Court dismissed CNBM Group on the grounds of the Foreign Sovereign Immunity Act. *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 168 F. Supp. 3d 918 (E.D. La. 2016). Taishan, BNBM, BNBM Group, CNBM, and the State-Owned Assets Supervision and Administration Commission of the State Council ("SASAC") are referred to herein collectively as "Defendants."

[13] *See Chinese Drywall*, 2017 WL 1421627, at *1.

[14] *See In re Chinese-Manufactured Drywall Prod. Liab. Litig*., 2014 WL 4809520 (E.D. La. Sept. 26, 2014) ("*Class FOFCOL*").

2010, the Court presided over a trial of seven families' claims in *Germano, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co. Ltd., et al*., Case No. 09-6687 (E.D. La.), after which the Court entered a monetary judgment in favor of Plaintiffs and against Taishan.[15]  In March 2010, the Court presided over a trial of homeowners' claims in *Hernandez v. Knauf Gips KG*, Case No. 09-6050 (E.D. La.), after which the Court found in favor of Plaintiffs and against Knauf.[16]

### 4.    Litigation Against Knauf.

The Court's findings in *Germano* and *Hernandez* provided a foundation for Knauf and the PSC to enter into a comprehensive pilot remediation program for Knauf claimants on October 14, 2010 ("KPT Pilot Program").[17]  The KPT Pilot Program proved a catalyst toward a negotiated resolution with Knauf.  As a result, on December 20, 2011, the Knauf entities and the PSC entered into a class settlement agreement providing comprehensive remediation and cash benefits to homeowners with Knauf drywall, which the Court certified as a class action and approved on February 7, 2013.[18]  In addition, the PSC reached class settlement agreements with hundreds of downstream defendant homebuilders, suppliers, and installers (and most of their insurers), resulting in the resolution of "almost all of the Knauf Entities' chain-of-commerce litigation."[19]  Relatedly, the PSC negotiated, and the Court approved, four additional class settlements with

---

[15] *See Chinese Drywall*, 706 F. Supp. 2d 655.

[16] *See Chinese Drywall*, 2017 WL 1421627, at *1.

[17] *See id*. at *2.

[18] *See In re Chinese-Manufactured Drywall Prod. Liab. Litig*., 2013 WL 499474 (E.D. La. Feb. 7, 2013); *see also Chinese Drywall*, 2017 WL 1421627, at *2.

[19] *Chinese Drywall*, 2017 WL 1421627, at *2.

"several downstream entities in the Taishan chain of commerce and their insurers" for the benefit of mostly Virginia claimants.[20]

### 5.   Litigation Against Taishan.

After entry of the *Germano* judgment, Taishan entered its appearance in the MDL to contest jurisdiction and open the default judgments.  In the meantime, defaults were entered against CNBM, BNBM, and BNBM Group.[21]  Two years later, after significant jurisdictional discovery, including depositions on several continents and a week of depositions personally overseen by the Court in Hong Kong, and extensive briefing, the Court issued its jurisdictional opinion.  The Court declined to vacate the default judgments against Taishan and determined that Taishan was subject to the Court's jurisdiction under Louisiana, Florida, and Virginia law.[22]

With the issue of jurisdiction resolved, Taishan left the litigation and did not appear for a judgment debtor examination.[23]  The Court entered a civil and criminal contempt order and injunction enjoining Taishan and its affiliates and/or subsidiaries from conducting any business in the United States until or unless Taishan participated in this judicial process.[24]  During Taishan's absence from the jurisdiction, Plaintiffs filed a Motion for Class Certification pursuant to Rule 23(b)(3).[25]  On September 26, 2014, the Court certified the *Amorin* class of homeowners with

---

[20] *See* Order and Judgment dated 7/9/2013 [Rec. Doc. 16934], at 6.

[21] *See Chinese Drywall*, 2017 WL 1421627, at *8.

[22] *Chinese Drywall*, 894 F. Supp. 2d 819 (E.D. La. 2012), *aff'd*, 742 F.3d 576 & 753 F.3d 521 (5th Cir. 2014).

[23] *Chinese Drywall*, 168 F. Supp. 3d at 932.

[24] Contempt Order dated 7/17/2014 [Rec. Doc. 17869].

[25] *Chinese Drywall*, 2017 WL 1421627, at *4.

defective drywall manufactured by any of the Taishan entities.[26]  The Court scheduled a hearing to determine class damages.[27]

On the day of that hearing in February 2015, BNBM entered an appearance and requested a continuance of the class damages hearing.  Shortly thereafter, Taishan returned to the litigation and paid the *Germano* judgment, plus fines, and BNBM Group, CNBM, and additional CNBM entities appeared.  BNBM, BNBM Group, and the CNBM entities filed jurisdictional challenges. In addition, Defendants sought to decertify the *Amorin* class.[28]

On June 9, 2015, the Court oversaw the class damages hearing.  Following extensive pretrial briefing, which included *Daubert* motions, the parties presented evidence at the class damages hearing and after that hearing prepared extensive findings of fact and conclusions of law.[29]  On April 21, 2017, the Court entered an order on class damages against Taishan and denied the motion to decertify the *Amorin* class.[30] The Court also rejected BNBM's and CNBM's efforts to vacate the defaults that had been entered against them.[31]

With respect to the ongoing efforts of CNBM and BNBM to contest jurisdiction over them, the Court entered an Order and Reasons on April 21, 2017, holding that for jurisdictional purposes (i) CNBM, BNBM Group, BNBM, and Taishan operate as a single business enterprise under

---

[26] *Class FOFCOL*, 2014 WL 4809520, at 16.

[27] *Chinese Drywall*, 2017 WL 1421627, at *5.

[28] *See*, *e.g.*, BNBM and CNBM entities' Motions to Dismiss [Rec. Docs. 19527, 19646, 19663, 19664]; CNBM's Motion to Decertify the Class [Rec. Doc. 20627]; Taishan's joinder in CNBM's Motion to Decertify the Class [Rec. Doc. 20632]; Defendants' Motion to Certify an Immediate Appeal from the Court's Order Denying their Motions to Decertify the Class (§1292(b) Motion #2) [Rec. Doc. 20780]; Taishan's Motion to Amend the Order Denying Class Decertification and the Class Damages Order and to Certify for Interlocutory Appeal Under Section 1292(b) [Rec. Doc. 20778].

[29] Rec. Doc. 19197.

[30] *See* Rec. Doc. 20741.

[31] *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2018 WL 279629, at *8 (E.D. La. Jan. 2, 2018).

Louisiana law, (ii) Taishan and BNBM are agents under Virginia and Florida law, (iii) there is jurisdiction over BNBM under Florida law for its manufacture and sales of BNBM Dragon board in Florida, and (iv) the Court does not have jurisdiction over BNBM Group or the CNBM entities under Florida law or Virginia law.[32]  Following these rulings, BNBM and CNBM filed motions pursuant to 28 U.S.C. § 1292(b), seeking immediate appellate review.[33]  On August 4, 2017, the Court certified its jurisdiction order for immediate appeal but, thereafter, Taishan, BNBM and CNBM filed supplemental motions to dismiss based on *Bristol-Myers Squibb v. Superior Court of California*, 137 S. Ct. 1773 (2017) ("*BMS*").[34]  Extensive briefing occurred on the issue of the Court's jurisdiction over the Defendants and, on November 30, 2017, the Court issued an opinion on personal jurisdiction that rejected the challenges under *BMS*.[35]

Thereafter, the BNBM and CNBM entities revisited their request for interlocutory review.[36]  That request was granted in part by the Court, certifying the issues arising from the original jurisdiction order but denying certification with respect to issues raised by *BMS*.[37]  BNBM and CNBM petitioned the Fifth Circuit for permission to appeal the Jurisdiction Order, which

---

[32] *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2017 WL 1476595 (E.D. La. Apr. 21, 2017), *mot. to certify appeal granted*, 2018 WL 4863625 (E.D. La. Mar. 06, 2018).

[33] Rec. Doc. 20779; Defendants' Petition for Permission to Appeal Pursuant to 28 U.S.C. § 1292(b), Fifth Circuit Docket 17-90027, filed by CNBM, BNBM Group, and BNBM [Rec. Doc. 20898-2] (permission denied by the Fifth Circuit on September 1, 2017).

[34] *See* Order and Reasons (8/4/2017) [Rec. Doc. 20890], vacated while *BMS* briefing occurred [Rec. Doc. 20927]; *see also* Rec. Doc. 20882.  Defendants' 1292(b) motions on class damages and decertification were denied by Order and Reasons (8/22/2017) [Rec. Doc. 20910].

[35] Rec. Doc. 20188.

[36] Rec. Doc. 21095; Rec. Doc. 21096.

[37] Rec. Doc. 21231.

prompted additional briefing.[38]  That petition was granted and the jurisdictional appeal is currently pending.[39]

### 6.    The *Brooke* Actions.

After the *Amorin* Class was certified, additional complaints were filed with new Plaintiffs, who were not part of the certified *Amorin* Class, asserting similar claims against the Taishan, BNBM and CNBM entities and including, among the Defendants, the State-Owned Assets Supervision and Administration Commission of the State Council ("SASAC").[40]  Much like the protective *Amorin* Complaints, identical *Brooke* Complaints containing all of the same Plaintiffs were filed in Louisiana, Florida, and Virginia, which were then transferred to the MDL Court in Louisiana.  Taishan, BNBM, BNBM Group, and CNBM entered their appearances in *Brooke*. There have been no defaults entered in the *Brooke* cases, there have not been any responsive pleadings filed, and a class has not been certified.  All of the issues in the *Brooke* actions are yet to be litigated, and the applicability of any rulings from the *Amorin* actions has not been determined.

### 7.    The Remands.

In 2018, the Court suggested that the Florida and Virginia *Amorin* actions be remanded.[41]

On March 11, 2019, the Court suggested that the Florida and Virginia *Brooke* actions be

---

[38] *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, No. 18-90013 (5th Cir.), Doc. No. 00514397054, filed March 15, 2018 (Defendants' Petition); Doc. No. 0051440659, filed March 28, 2018 (Response).

[39] *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, No. 18-30742 (5th Cir.).

[40] *See* fn. 46, *infra*.

[41] *See* Rec. Doc. 21242 (Florida); Rec. Doc. 21695 (Virginia).  The *Amorin* cases were remanded by Order of the JPML to Florida on June 6, 2018, and to Virginia on October 10, 2018.  *See* JPML Rec. Doc. 524 (Florida); JPML Rec. Doc. 547 (Virginia).

remanded.[42]  As a result, the Florida *Amorin* action is pending before Judge Cooke in the Southern District of Florida (Civil Action No. 11-22408), the Virginia *Amorin* action is pending before Judge Davis in the Eastern District of Virginia (Norfolk Civil Action No. 11-00377), the Florida *Brooke* action is pending before Judge Williams in the Southern District of Florida (Civil Action No. 15-24348), the Virginia *Brooke* action is pending before Judge Smith in the Eastern District of Virginia (Norfolk Civil Action No. 15-00506); and the Louisiana *Amorin* and *Brooke* actions are pending before the MDL Court.  Even though the MDL Court remanded the Florida and Virginia *Amorin* and *Brooke* actions, all of those Plaintiffs' claims also remain in the Louisiana *Amorin* and *Brooke* actions because the Complaints are identical.[43]

Upon remand of the Florida *Amorin* cases, Judge Cooke entered a two-track scheduling order designed to move the cases to a resolution – one track for remediation damages and one track for other damages.[44]  Since that time, the Parties have worked diligently to execute Judge Cooke's trial plan including engaging in discovery for: (1) remediation damages, including document production and depositions regarding Product ID as well as ownership status and square footage; and (2) "other damages," including document production, written discovery and depositions for twenty Priority Plaintiffs.  In addition, with respect to "other damages," the parties engaged in expert discovery and motions practice and have been preparing to proceed to trials on the "other damages" claims, which were set to begin on July 22, 2019.  Similar trial plans, in whole or in part, were recently set by the MDL Court with respect to the Louisiana *Amorin* cases,

---

[42] *See* Rec. Doc. 22198; JPML Rec. Doc. 556.

[43] *See also Chinese Drywall*, 2018 WL 6046189, at *5-6 (staying, instead of dismissing, Florida and Virginia-based claims in the Louisiana *Amorin* Complaint).

[44] *See* Florida Trial Plan, *Amorin v. Taishan*, Civil Action No. 11-cv-22409 (S.D. Fla. Nov. 16, 2108) [ECF No. 112].

as well as by Judge Davis with respect to the Virginia *Amorin* cases.[45] Proceedings with respect to the remanded *Brooke* cases are still in their infancy.  However, in addressing Defendants' motion to dismiss on statute of limitations grounds, the MDL Court recognized class action tolling did not broadly apply and thus the viability of many claims would have to be addresses on a case-by-case basis.[46]

The MDL Court and the remand courts have all entered orders staying proceedings pending the determination of the Agreement.

### B.   History of the Settlement Negotiations and Mediation.

These Chinese Drywall proceedings have been pending for over ten years.  Settlement Class Counsel are very familiar with the strengths and weaknesses of the Plaintiffs' cases and the risks of continued litigation against foreign Defendants.  The Parties engaged in arm's-length negotiations over several weeks to reach this Settlement.  With the assistance of mediator John S. Freud,[47] Settlement Class Counsel made a global demand of Taishan, and the Parties exchanged detailed damage calculations, counter-offers and responses.  Following intense, hard-fought in-person negotiations that proceeded over a two-day period, where each side acquiesced to compromises, the Parties agreed to a Term Sheet on behalf of the Settlement Class that set forth the class definition, the cash payment amount, and the non-cash settlement terms. Thereafter, the Parties participated in several in-person meetings, as well as numerous meetings over the phone, to negotiate the terms of the final Agreement that is presented for Preliminary Approval.  At all times, the Parties proceeded at arm's length, and did not enter into any side agreements.

---

[45] *See* Order & Reasons re Trial Plan [Rec. Doc. 22251] (Louisiana Trial Plan); Memorandum Order re Trial Plan, Civil Action No. 11-cv-00377 (E.D. Va.) [ECF No. 87].

[46] *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2019 WL 1057003 (E.D. La. Mar. 6, 2019).

[47] *See* CV of Mr. Freud (attached hereto as Exhibit "7").

### C.   Key Terms of the Settlement.

#### 1.   Proposed Settlement Class.

The proposed Settlement Class is defined to include:

> (1) all Class Members in the *Amorin* Class certified in MDL No. 2047 in *In re Chinese-Manufactured Prod. Liab. Litig.*, 2014 WL 4809520 (E.D. La. Sept. 26, 2014) ("*Amorin* Plaintiffs"); (2) all Plaintiffs who are named on one or more of the *Brooke* Complaints[48] ("*Brooke* Plaintiffs"); and (3) all other property owners with Chinese Drywall alleged to be attributed to Taishan and/or the Additional Released Parties ("absent Class Members").  *Amorin* Plaintiffs and *Brooke* Plaintiffs are collectively referred to as "Known Class Members."

> EXCLUDED from the Class are: (1) Plaintiffs listed on **Exhibit 1** to the Agreement (Exhibit 1 includes 498 Plaintiffs who are included in a separate  settlement agreement with Taishan); (2) the named Plaintiff and putative class members in *The Mitchell Co., Inc. v. Knauf Gips KG, et al.*, Civil Action No. 09-4115 (E.D. La.)[49]; and (3) Plaintiffs who asserted Claims against Taishan and/or the Additional Released Parties, but whose Claims were dismissed for failure to complete a Supplemental Plaintiff Profile Form or by motion for voluntary dismissal.

*See* Ex. 1, at ¶ 1.1.1.

#### 2.   Amount of Settlement.

The Agreement provides for the funding by Taishan of a Settlement Fund in the aggregate amount of $248,000,000.  The Settlement Fund will be funded by Taishan as follows: (1) an initial payment of $24,800,000.00 no later than 30 days following Preliminary Approval; (2) a second payment of $74,000,000.00 no later than (120) days following Preliminary Approval; and (3) a final payment of the remainder, $148,000,000.00, no later than 60 days after Final Approval of the Settlement.  *See* Ex. 1, at ¶¶ 4.1.1-4.1.3.  None of these payments must be made in a lump sum

---

[48] The operative *Brooke* Complaints are: *Brooke, et al. v. The State-Owned Assets Supervision and Administration Commission of the State Council, et al.*, Civ. Action No. 15-4127 (E.D. La.); *Brooke, et al. v. The State-Owned Assets Supervision and Administration Commission of the State Council, et al.*, Civ. Action No. 15-6631 (S.D. Fla.) (Miami Case No. 15-24348); *Brooke, et al. v. The State-Owned Assets Supervision and Administration Commission of the State Council, et al.*, Civ. Action No. 15-6632 (E.D. Va.) (Norfolk Case No. 15-506).

[49] *Mitchell* Plaintiffs consist of commercial builders and are not Class Members.

provided the final payment deadline is met. *See id*. at ¶ 4.1.6. A portion of the initial payment may, subject to Court approval, be used to pay the costs of individual mailed Class Notice and other administrative expenses associated with the retention of the Allocation Neutral and Claims Administrator. *See id*. at ¶ 4.1.1.

The Effective Date of the Settlement shall be the date when the Settlement is Final (after exhaustion of all appeals), irrespective of the Execution Date or the date of the Preliminary Approval Order. *See id*. at ¶ 2.1. The Effective Date of the Settlement will be the later of: 1) the date after the time to appeal the Order and Judgment has expired with no appeal having been taken; or 2) if an appeal is sought from the Order and Judgment, the day after the Order and Judgment is either affirmed, or any and all appeals, or motions for reargument or reconsideration are dismissed or denied, and the judgment is no longer subject to further appellate review. *See id*. at ¶¶ 2.1.1-2.1.2.

### 3. Releases.

The released parties are Taishan Gypsum Company Ltd. f/k/a/ Shandong Taihe Dongxin Co., Ltd. and Taian Taishan Plasterboard Co., Ltd., and their respective past, present, and future officers, directors, board members, members, agents, attorneys, consultants, claim administrators, managers, employees, partners, parent corporations, sister corporations, subsidiaries, affiliates, related entities, divisions, heirs, associates, stockholders, shareholders, retail dealers, distributors, insurers, reinsurers, and all of their predecessors, successors, assigns, legatees, legal representatives, and any other stakeholders.

"Additional Released Parties" shall mean Beijing New Building Materials Public Limited Company ("BNBM PLC"); Beijing New Building Materials (Group) Co., Ltd. ("BNBM Group"); China National Building Materials Co., Ltd. ("CNBM"); China National Building Materials Group Corporation ("CNBM Group"), and the State-Owned Assets Supervision and Administration Commission of the State Council ("SASAC") and their respective past, present, and future officers, directors, board members,

members, agents, employees, former employees, attorneys, consultants, claim administrators, managers, employees, partners, parent corporations, sister corporations, subsidiaries, related or affiliated entities, affiliates, divisions, heirs, associates, stockholders, shareholders, retail dealers, distributors, insurers, reinsurers, and all of their predecessors, successors, assigns, legatees, legal representatives, and any other stakeholders, as well as all other persons acting by, through, under or in concert with them, including those who are, may be, or are alleged to be jointly or jointly and severally liable with them, or any of them.  *See* Ex. 1, at ¶1.1.2.

F.    "Claims" are defined to include: any and all claims of any kind and nature whatsoever of a Class Member (a) arising out of, or in any manner related to, Covered Chinese Drywall, the Litigation, or CDW-Related Actions, and/or (b) for any and all losses, damages and/or injuries arising from, or in any manner related to, all and/or any of the claims described in (a) above, including but not limited to, any and all claims that a Class Member or anyone claiming by or through any Class Member has, may have, or may have had, regardless of whether such claim is known or unknown, filed or unfiled, asserted or as yet unasserted, or existing or contingent, whether asserted by petition, complaint, cross-claim, third party complaint, fourth-party complaint, arbitral demand, written demand, or otherwise (or any judgment or order entered on such claims), based upon or alleging any act, conduct, status or obligation of any person or entity (including Taishan and/or any Released Party) and/or any source of liability whatsoever, and regardless of the legal theory or theories of damages involved.  The term "Claim" includes, but is not limited to, the following:

1.    For damage to real or immovable property and/or personal or movable  property, remediation and/or clean-up of property, diminution of property value, stigma, contamination, alternative living expenses, loss of use, loss of enjoyment, economic loss, personal injury, bodily injury (including death), fear, fear of illness or disease, fear of developing illness or disease, fright,

mental or emotional distress, pain and suffering, loss of earnings, impairment of earning capacity, loss of consortium, loss of support, loss of love and affection, equity and medical monitoring, bystander liability, wrongful death, survival actions, breach of contract, all statutory claims, punitive or exemplary damages, attorneys' fees, attorneys' costs or expenses, moving expenses, or additional rental or mortgage payments;

2.     For nuisance, trespass, inconvenience, loss of use or enjoyment, negligence, negligence per se, tort, public or private nuisance, custody of a thing containing a vice or defect, strict liability, liability for ultrahazardous activities or conduct, absolute liability, wanton and reckless misconduct, malicious misconduct, servitude or obligation of vicinage, abuse of right, or any other liability legally asserted or assertable under any federal, state, or local statute, directive or regulation, redhibition, violation of any state or federal home warranty act, products liability act, unfair trade practices or consumer protection law, negligent discharge of a pollutant or corrosive substance, unjust enrichment, breach of express or implied warranty, breach of implied warranty of fitness and merchantability, breach of implied warranty of habitability, negligent misrepresentation, building code violations;

3.     For punitive damages, whether statutory or common law;

4.     For derivative or vicarious liability arising out of the conduct or fault of others for which Taishan and/or any Released Party may be responsible;

5.     For any right legally assertable by the Class or any Class Member now or in the future, whether the claim is personal to each individual, is derivative of a claim now or in the future, or as assignee, successor, survivor, beneficiary, subrogee, or representative of a Class Member;

15

6. For a past, present, future, known, unknown, foreseen, unforeseen, contingent, nascent, mature claim or a claim arising at law, in equity or otherwise, including but not limited to, claims for survival and wrongful death;

7. For all injuries or damages of any type, nature, or character arising from, attributable to, or in any way resulting from Covered Chinese Drywall.

*See id*. at ¶1.7.

The Released Claims are "any and all Claims, including Other Losses, of a Class Member against Taishan or the Additional Released Parties pertaining to Chinese Drywall." *See id*. at ¶ 5.1.

The Release by the Class reads: "As of the Effective Date of the Settlement, each Class Member (known and unknown), and any person or entity claiming by, through, and/or on behalf of a Class Member, hereby fully, finally, and forever releases, remises, waives, surrenders, foregoes, gives up, abandons, cancels, acquits and forever discharges and covenants not to sue with respect to any and all Released Claims, against Taishan or the Additional Released Parties. With respect to any and all Released Claims, each Class Member expressly waives any and all rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar or equivalent to Cal. Civ. Code § 1542 (providing, "[a] general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."). *See id*. at ¶ 5.2.1.

The Release from Taishan reads: "As of the Effective Date of the Settlement, Taishan hereby fully, finally and forever releases, remises, waives, surrenders, foregoes, gives up,

abandons, cancels, acquits, and forever discharges and covenants not to sue with respect to any and all Released Claims against all Class Members." *See id.* at ¶ 5.3.1.

### 4. Administrative Provisions.

The Parties selected Cal Mayo, subject to approval by the Court, to serve as an "Allocation Neutral." *See* Ex. 1, at ¶¶ 1.3, 6.1. 6.1; *see also* CV of Mr. Mayo (attached hereto as Exhibit "6"). The Allocation Neutral developed an Allocation Model for the allocation and distribution of the Settlement Funds among Affected Properties and Eligible Class Members based on Objective Allocation Criteria, subject to the terms of the Agreement, and approval of the Court, and the Court's determination that the Allocation Neutral appropriately performed his assigned function. *See* Ex. 1, at ¶ 6.1. There will be only one Allocation Payment per Affected Property. The Allocation Payment is intended to provide compensation for remediation damages as well as Other Losses. Depending on the circumstances, an Allocation Payment may need to be divided among Eligible Class Members asserting Claims with respect to the same Affected Property. The Claims Administrator shall have sole discretion to determine the division of an Allocation Payment among Eligible Class Members, unless the Allocation Model directs a specific division and distribution of the Allocation Amount applicable to the circumstances. *See id.* at ¶ 6.2. In order to be considered eligible for an Allocation Payment, the Class Member must provide sufficient proof of indicia of Covered Chinese Drywall in the subject Affected Property. *See id.* at ¶ 1.13. There will be no payments of Settlement Funds to Class Members for Claims for personal injury or bodily injury. *See id.* at ¶ 6.3. The Allocation Neutral shall have the ability to communicate, *ex parte* or otherwise, with and obtain information from Settlement Class Counsel and Counsel for Taishan and/or the Court in furtherance of his assigned function. *See id.* at ¶ 6.4. The Allocation Neutral filed the Allocation Model on the Court docket on August 19, 2019 [Rec. Doc. 22304-1].. The

Allocation Model shall be available for review by Settlement Class Members during the Class Notice / Opt-Out period. *See id*. at ¶ 6.5.  The review, determination and approval of the Allocation Model by the Court shall be final and binding on the Parties and the Class. There shall be no right of appeal of the approval of the Allocation Model to any other court, including the U.S. Court of Appeals for the Fifth Circuit, such right of appeal having been knowingly and intentionally waived by each Settlement Class Member. *See id*. at ¶ 6.6.

Within ten (10) days of the filing of the Motion for Preliminary Approval, Settlement Class Counsel are required to file on the Court's docket and publish on the Chinese Drywall Settlement Website (ChineseDrywallSettlement.com) a Master Spreadsheet of Known Class Member Claims with sufficient proof of indicia of Covered Chinese Drywall in the subject Affected Property.  *See id*. at ¶ 12.1.1.  The Master Spreadsheet shall include the following information for each Claim: (i) Under Air Square Footage, (ii) Product Identification, (iii) Ownership Status, (iv) Remediation Status, (v) Set-Offs, (vi) Assignments of rights to pursue Claims, (vii) whether the claimant is an *Amorin* Plaintiff or a *Brooke* Plaintiff, and (viii) any other objective fields to the Allocation Model approved by the Court.  *Id.*  Any Settlement Class Member who disputes the information on the Master Spreadsheet relating to his or her Claim may, within thirty-five (35) days of the Preliminary Approval Order, provide to the Claims Administrator what he or she contends to be the correct information, as well as any supporting evidence or corroborating documentation. *See id*. at ¶ 12.1.2.  The Claims Administrator shall, in its discretion, make changes, if any, that it deems appropriate to the Master Spreadsheet based on supporting evidence or corroborating documentation provided by the Class Member to the Claims Administrator in support of the addition or change to the Master Spreadsheet.  *See id*. at ¶ 12.1.3.

18

Absent Class Members and any other Class Members not listed on the Master Spreadsheet who seek an Allocation Amount must complete a court-approved Claim Form under oath and submit supporting proofs of Objective Allocation Criteria to the Claims Administrator no later than the deadline set by the Court for making a claim for an Allocation Amount, which shall be within 30 days of Final Approval. *See id*. at ¶ 12.1.4.

The Claims Administrator shall distribute Allocation Amounts based on the application of the Court-approved Allocation Model to the Objective Allocation Criteria in the Master Spreadsheet, as modified by the Claims Administrator if necessary, for Known Class Members and to the supporting proofs of Objective Allocation Criteria timely submitted to the Claims Administrator by absent Class Members or any other Class Members not listed on the Master Spreadsheet.  No additional evidence, documents or other information shall be considered by the Claims Administrator.  *See id*. at ¶ 12.1.5.  Subject to approval by the Court, the Parties have selected BrownGreer as the Claims Administrator. *See id*. at ¶ 1.8.

### 5.  Notice.

The Class Notice Period shall commence upon the entry of the Preliminary Approval Order.  *See id*. at ¶ 8.1.1.  Settlement Class Counsel will disseminate Class Notice ("Notice") by: (1) first-class mail, postage prepaid, to the last known address of all Known Class Members and their counsel of record, if any; (2) providing a copy of the Notice and requesting that it be posted at each courthouse in which the CDW-Related Actions are pending, including the Court, the Florida Courts, the Virginia Courts, and all other Courts listed on Exhibit 6 to the Agreement; (3) providing a copy of the Notice and requesting that it be posted on the Court's Chinese Drywall website as well as on the websites for the Florida and Virginia courts; (4) providing a copy of the Notice and requesting that it be posted at such other public places as may be ordered by the Court

or by request of the Parties; and (5) publication notice. *See id*. at ¶ 8.1.2.  Publication Notice will be made in print and online/mobile ads. *See id*. at ¶ 8.1.2.5.

The Parties will retain Kinsella Media to develop and implement a Media Notice Program[50] that will include publishing the Notice in the following newspapers and magazines: People, Florida Weekly, Louisiana Life, News Press, Gainesville Sun, Florida Times Union, Miami Herald, Orlando Sentinel, Panama City News, Tallahassee Democrat, Tampa Bay Times, Palm Beach Post, Baton Rouge Advocate, Daily Advertiser, American Press, Monroe News Star, New Orleans Advocate, Shreveport Times, Nuevo Ecos, Hola Noticias, El Clarin, El Sentinel, Centro Tampa, El Semanario Accion.  *See id*.  Those publications have been identified by Kinsella Media due to their broad circulation to readers in the six states with at least 2% of the members of the *Amorin* and *Brooke* claimants.  *See id*.  Publication in each newspaper and magazine will occur bi-weekly, weekly, or daily depending on each publication's specific schedule for thirty (30) days. *See id*. The Notice will be published in newspapers and magazines in a space measuring at least one-sixth (1/6) of a page. *See id*.  The Media Notice Program will also include a 30-day digital program comprised of programmatic advertising and social media with focused targeting based on keywords, geography, and topics. *See id*.  Further, it will include banner ads on digital media, including premium websites (*e.g.,* DIY Network), local news and newspapers sites, contextual targeting, Facebook, and Google Display Network (which includes YouTube). *See id*.  The digital program will be monitored and adjusted by Kinsella Media as needed to enhance the effectiveness of the Notice. *See id*.

---

[50] The Notice Program is described in detail in paragraphs 16 through 31 of the Wheatman Declaration, attached hereto as Exhibit 4.

Along with individual, mailed notice to Known Class Members, all Known Class Members listed on the Master Spreadsheet will also be provided with a gross *estimate* of the amount of money that could be awarded for the Affected Property at issue (before attorneys' fees and costs are deducted, subject to Court approval) by the Claims Administrator.  In cases where there are competing claims with regard to the same Affected Property, those claimants will be instructed to submit to the Claims Administrator any documents they have to support their claim no later than 35 days after entry of the Preliminary Approval Order, so that the Claims Administrator can make a determination as to how the final Allocation Amount should be allocated between competing claimant(s).  *See id.* at ¶ 12.1.2.

Subject to Court approval, a portion of Taishan's Initial Payment may be used to pay for the cost of mailing individual notice to known Class Members, and Taishan shall separately pay for the cost of Publication Notice.  *See id.*at ¶¶ 4.1.1, 8.2.2.

**6.      Opt-Outs and Right to Terminate.**

Class Members will have ninety (90) days following the commencement of the Class Notice Period (or such different period as the Courts may direct) to opt out of the Settlement. *See* Ex. 1, at ¶ 9.1.1. If the Settlement is finally approved by the Court, all Class Members who have not opted out by the end of the ninety (90) day period will be bound by the Settlement, and the relief provided by the Agreement will be their sole and exclusive remedy for the Claims alleged by the Class. *See id*. To assure that each Class Member has adequate time for consideration of the Agreement, no opt-out will be effective if filed earlier than twenty-one (21) days after the commencement of the Class Notice Period. *See id*.

To opt-out, individual Class Members must request to opt-out and must sign a pleading seeking exclusion from the Agreement. *See id*. at ¶ 9.2.1.  A pleading or any other request made

or signed by counsel for a Class Member shall not be sufficient. An original request to opt-out signed by the Class Member must be mailed to Settlement Class Counsel: Arnold Levin and Sandra L. Duggan, Levin Sedran & Berman, 510 Walnut Street, Suite 500, Philadelphia, PA 19106, with copies mailed to Richard J. Serpe, Law Offices of Richard J. Serpe, PC, 580 East Main St., Suite 310, Norfolk, VA 23510, and Stephen J. Herman, Herman, Herman & Katz, LLC, 820 O'Keefe Ave., New Orleans, LA 70113, and Patrick S. Montoya, Colson Hicks Eidson, 255 Alhambra Circle, Penthouse, Coral Gables, FL 33134. *See id.* The opt-out request must be postmarked within the 90-day opt-out period. Settlement Class Counsel shall be obliged to file all opt-outs with the MDL Court by a date prior to the Fairness Hearing to be determined by the Courts. *See id.* Settlement Class Counsel also shall provide a copy of all opt-out forms by email to Taishan's Counsel and Counsel for the Additional Released Parties within twenty-four (24) hours of receipt.

In addition, Taishan will have a right, exercised in good faith, to terminate the Agreement on account of the existence of any opt-out. *See id.* at ¶ 9.3.1. If any Class Members remain as an opt-out fourteen (14) days prior to the Fairness Hearing, then Taishan has the right, in its discretion, to be exercised in good faith, to terminate the Settlement in its entirety. *See id.*. This right to terminate the Agreement must be exercised by written notice to the Courts seven (7) days before the Fairness Hearing. *See id.* at ¶ 9.3.2. If timely exercised, Taishan's "walk away" rights are not reviewable by the Court. *See id.*

## 7.   Objections.

Any Class Member may object to the Agreement, any terms of the Agreement, or the approval process. *See* Ex. 1, at ¶ 10.1. That Class Member must make that objection in writing postmarked no later than ninety (90) days following commencement of the Class Settlement Notice Period. *Id.* at ¶ 10.1.6. The objection must state whether it applies only to the objector, to a specific

subset of the class, or to the entire class, and also state with specificity the grounds for the objection. The objection must also include a statement whether the Class Member intends to appear at the Fairness Hearing either with or without the objector's counsel (who shall be identified). The objection must identify any witnesses intended to be called, the subject area of the witnesses' testimony, and all documents to be used or offered into evidence at the Fairness Hearing. *See id.* at ¶ 10.1.2. The objection must be signed by the Class Member and his, her or its counsel; an objection signed by counsel alone shall not be sufficient. *See id.* at ¶ 10.1.3. The objection must contain the caption of MDL No. 2047 and any Litigation in which the Class Member is a named party and include the name, mailing address, e-mail address, if any (an e-mail address is not required), and telephone number of the objecting Class Member. *See id.* at ¶ 10.1.4. The objection also must provide the address of the Affected Property to which the Class Member's claims relate; and be mailed to Settlement Class Counsel. *See id.* at ¶¶ 10.1.5-10.1.6.

Settlement Class Counsel shall provide a copy of all objections to Taishan's Counsel and Counsel for the Additional Release Parties within twenty-four (24) hours by email and file any objections with the Court no later than one hundred (100) days after commencement of the Class Settlement Notice Period. *See id.* at ¶ 10.1.7. The objection must be filed in the Court and served on Taishan's Counsel and Counsel for the Additional Released Parties through LexisNexis File & Serve. *See id.*

An objector's failure to comply timely and fully with the procedures stated above shall result in the invalidity and dismissal of any objection. *See id.* at ¶ 10.2. In addition, Class Members who fail to file and serve timely written objections in accordance with the procedures set forth above shall be deemed to have waived any objections, shall not be heard at the Fairness Hearing, and shall be foreclosed from making any objection (whether by appeal or otherwise) to the

Settlement. *See id.* Settlement Class Counsel and Taishan's Counsel shall file any response to the objections with the Court no later than five (5) days before the date of the Fairness Hearing. *See id.* at ¶ 10.3.

## 8. Fairness Hearing and Final Approval.

After close of the Class Notice Period, Settlement Class Counsel and Taishan's Counsel shall move for final approval of the Agreement. *See* Ex. 1, at ¶ 11.1. As part of that motion, the Parties shall move the Court to enter an Order and Judgment finding that the Agreement is fair, reasonable and adequate, entered into in good faith and without collusion, represents a negotiated agreement, certifies the Settlement Class pursuant to Fed. R. Civ. P. 23(a) and (b) and approves the Agreement pursuant to Fed. R. Civ. P. 23(e). *See id.* at ¶ 11.1.1.1. In addition, the Parties will: (1) move the Court to enjoin and forever bar any and all Class Members from maintaining, continuing, and/or prosecuting the Claims in the Litigation or CDW-Related Actions, or any action, pending or future, against Taishan and/or the Additional Released Parties that arises from, concerns, or otherwise relates, directly or indirectly to, the Claims related to Chinese Drywall in connection with the Affected Properties; and (2) jointly submit to the MDL Court or other appropriate forum, a proposed order dismissing with prejudice all Claims against Taishan and the Additional Released Parties in the Litigation and CDW-Related Actions in state court or federal court, with each party to bear his, her or its own costs. *See id.* at ¶¶ 11.1.1.2-11.1.1.3. Taishan shall have the right to withdraw from the proposed Agreement if the MDL Court does not issue all of the requested orders and/or injunctions. *See id.* at ¶¶ 11.1.2.

At the Fairness Hearing the MDL Court shall be requested to, *inter alia*, (i) consider any properly filed objections to the Agreement, (ii) certify the Settlement Class pursuant to Fed. R. Civ. P. 23(a) and (b), (iii) determine whether the Agreement is fair, reasonable, and adequate, was

entered into in good faith and without collusion, and should be approved, (iv) provide findings in connection therewith, and (v) enter a proposed Order and Judgment. *See id.* at ¶ 11.2.

### 9.    Attorneys' Fees.

Upon final approval of the Settlement, Settlement Class Counsel, common benefit attorneys, and privately retained attorneys for all Class Members (the "Petitioning Attorneys") will petition the Court for an award of attorneys' fees and expenses of up to 33% of the $248 million Settlement Fund.[51]  The award of any attorney's fee or reimbursement of any cost, including the allocation between and amongst the Petitioning Attorneys, shall be determined by the Court; and all Petitioning Attorneys agree that such determination is not appealable and hereby waive all appeals of any such determination. *See* Ex. 1, at ¶ 16.1.

The request for attorneys' fees will be limited to 30% of the Settlement Amount, which will compensate both common benefit attorneys and privately retained attorneys for any and all attorneys' fees that might be claimed from or owed by Class Members.  In addition to the request for attorneys' fees, Settlement Class Counsel, the Plaintiffs' Steering Committee and other common benefit attorneys have collectively incurred approximately $4.4 million in Shared Costs[52] and a total of approximately $1.3 million in Held Costs,[53] for which Settlement Class Counsel will seek reimbursement.  Further, Settlement Class Counsel will seek a stipend of up to $500 (less any

---

[51] The Agreement provides that Petitioning Attorneys shall be entitled to petition the MDL Court for attorneys' fees totaling in the aggregate up to 32% of the Settlement Funds, and reimbursement of reasonable expenses, excluding the cost of notice. *See* Ex. 1, at ¶ 16.1. Settlement Class Counsel have agreed to limit the *combined* fee and expense request to 33% of the Settlement Fund, comprised of 30% in fees and the remaining 3% toward expenses, as set forth above.

[52] Shared Costs are defined in Pretrial Order No. 9, at 3-4 [Rec. Doc. 147].

[53] Held Costs are defined in Pretrial Order No. 9, at 4-7 [Rec. Doc. 147].

prior stipend payments)[54] for each Affected Property to cover the individual case costs associated with the prosecution of each eligible Class Member's claim.   In total, the fee and cost reimbursement request will not exceed 33% of the Settlement Funds.

### 10.   Incentive Awards.

The Parties will recommend to the Courts that Incentive Awards be made, subject to Court approval, to the Priority Plaintiff claimants in Florida (one incentive award per property) who are members of the Settlement Class, to the Select Claimants in Louisiana (one incentive award per property) who are members of the Settlement Class, and to the Settlement Class Representatives (to the extent they are not Florida Priority Plaintiff claimants or Louisiana Select Claimants), for their prior efforts in participating in individualized discovery, including subjecting themselves for a deposition, and/or for serving as a named class representative. *See* Ex. 1, at ¶ 16.2.

## III.   ARGUMENT

### A.   The Standard for Preliminary Approval of the Class Settlement with Taishan.

Federal Rule of Civil Procedure 23(e) requires court approval for any compromise of a class action.  *Evans v. Jeff D.,* 475 U.S. 717, 727-28 (1986); *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 617 (1997).  In determining whether to approve the Settlement, the Court should be guided by the strong judicial policy favoring pretrial settlement of complex class action lawsuits. *See, e.g., Maher v. Zapata Corp*., 714 F.2d 436, 455 (5th Cir. 1983); *Cotton v. Hinton,* 559 F.2d

---

[54] Under PTO 30 [Rec. Doc. 19787], stipends were awarded from prior settlements to compensate attorneys for individual case costs incurred related to claims of properties with Knauf and non-Knauf drywall (either $1,000 or $150 depending on the case).  The total value of the stipends per Affected Property in this Settlement will be $500, net of any prior stipends awarded for each property.  Therefore, if a cost stipend of $150 was paid in relation to another settlement, the stipend to be paid out of this Settlement for that Affected Property would be $350 ($500-$150), subject to Court approval.  If a stipend of $1,000 was previously paid for an Affected Property, no further stipend will be paid here.

1326, 1331 (5th Cir. 1977); *Turner v. Murphy Oil USA, Inc*., 472 F. Supp. 2d 830, 843 (E.D. La.

2007) (Fallon, J.).  This is, in part, because of the complexity and size of class actions:

> Particularly in class action suits, there is an overriding public
> interest in favor of settlement…. It is common knowledge that class
> action suits have a well deserved reputation as being most complex.
> The requirement that counsel for the class be experienced attests to
> the complexity of the class action…. In these days of increasing
> congestion within the federal court system, settlements contribute
> greatly to the efficient utilization of our scarce judicial resources.

*Cotton*, 559 F.2d at 1331 (citing *United States v. Allegheny-Ludlum Indus., Inc*., 517 F.2d 826 (5th

Cir. 1975)); *see also Bennett v. Behring Corp*., 737 F.2d 982, 986 (11th Cir. 1984) (courts are

mindful of the "strong judicial policy favoring settlement as well as by the realization that

compromise is the essence of settlement.").

In addition:

> Complex litigation - like the instant case - can occupy a court's
> docket for years on end, depleting the resources of the parties and
> the taxpayers while rendering meaningful relief increasingly
> evasive.  Accordingly, the Federal Rules of Civil Procedure
> authorize district courts to facilitate settlements in all types of
> litigation, not just class actions…. Although class action settlements
> require court approval, such approval is committed to the sound
> discretion of the trial court.

*In re United States Oil & Gas Litig*., 967 F.2d 489, 493-94 (11th Cir. 1992) (citing Fed. R. Civ. P.

16(a), (c), 23(e)); *Bennett*, 737 F.2d at 987; *Cotton*, 559 F.2d at 1331; *Ass'n for Disabled*

*Americans, Inc. v. Amoco Oil Co.,* 211 F.R.D. 457, 466 (S.D. Fla. 2002).

Preliminary approval of a proposed class action settlement under Rule 23(e) is the first step

in a two-step process.[55] At the preliminary approval stage, courts make an initial evaluation of the

---

[55] Manual for Complex Litigation § 21.632 (4th ed. 2004) (hereinafter "MCL").  *See also In re Nat'l
Football League Players Concussion Injury Litig.*, 775 F3d 570, 583-84 (3d Cir. 2014) (hereinafter "*NFL
Players*").

fairness of the settlement terms.[56]  Rule 23(e) instructs that a class action "may be settled . . . or compromised only with the court's approval." The Rule requires the court to "direct notice in a reasonable manner" to class members and determine that the proposed settlement "is fair, reasonable, and adequate."[57]  Thus, "the role of a court reviewing the proposed settlement of a class action under [Rule] 23(e) is to assure that the procedures followed meet the requirements of the Rule and comport with due process and to examine the settlement for fairness and adequacy."[58]

At the preliminary stage, the Court's review is "not as stringent as those applied to a motion for final approval."  *See, e.g., In re OCA, Inc. Sec. and Der. Litig.*, 2008 WL 4681369, *11 (E.D. La. Oct. 17, 2008); MCL § 21.63 ("At the stage of preliminary approval, the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval.").  Indeed, a hearing is neither necessary nor required under Rule 23(e) at the preliminary approval stage.

As set forth above, the parties reached their Agreement after many years of litigation and following arm's-length negotiations during a court-ordered mediation, which was conducted by a well-respected, seasoned mediator.  The Court may presume, therefore, that the proposed Settlement is fair and reasonable, as it is the result of arm's-length negotiations.  *See Camp v. The*

---

[56] *Id.  See also Cope v. Duggins*, 2001 WL 333102, *1 (E.D. La. Apr. 4, 2001) (Fallon, J.) (The first step in determining whether to grant preliminary approval to a class settlement, is for "the Court [to] make[] a preliminary fairness evaluation of the proposed settlement.").

[57] Fed. R. Civ. P. 23(e)(1)-(2); *see also Winingear v. City of Norfolk*, No. 12-cv-560, 2014 WL 12526327, at *1 (E.D. Va. June 5, 2014) ("[Rule 23(e)] requires that class members receive notice of the settlement before the court approves it.").

[58] *See also Cope*, 2001 WL 333102 at *1 (The Court must "evaluate the likelihood that the Court would approve the settlement during its second review stage, the full fairness hearing." In so doing, "the Court will examine the submitted materials and determine whether the proposed settlement appears fair on its face."); *Smith v. Wm. Wrigley Jr. Co.*, No. 09-cv-60646, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010) ("Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason.").

*Progressive Group,* 2004 WL 2149079, *7 (E.D. La. Sept. 23, 2004); *Almanazar v. Select Portfolio Servicing, Inc.,* No. 14-cv-22586-FAM, 2016 WL 1169198, at *1 (S.D. Fla. Mar. 25, 2016) (noting that settlement negotiations that involve arm's-length discussions by experienced counsel support a preliminary finding of fairness).  The Agreement contains the material economic terms of the Settlement, the manner of notice to be given to the Class, the contingencies or conditions to the Settlement's final approval, and other terms.

Proposed Settlement Class Counsel possessed adequate information concerning the strengths and weaknesses of the litigation against Taishan after ten years of proceedings, substantial investigation of Plaintiffs' claims, and the exchange of information during multiple negotiation sessions, including detailed damages calculations.  In addition, proposed Settlement Class Counsel are highly competent counsel, all with many years of experience litigating complex class action and multidistrict cases.   Finally, as explained above, the complexity, expense, uncertainty, and likely duration of the litigation, as well as the likely difficulty of collection also militate in favor of consummating the settlement process.  Therefore, proposed Settlement Class Counsel respectfully submit that all the above-cited circumstances support preliminary approval of the proposed Settlement so that Class Members may receive notice of the Settlement's terms and the date and time of the Fairness Hearing at which Class Members may be heard, and at which further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement may be presented by the Parties.[59]

### B.   <u>The Requirements of Rule 23 Have Been Met For Certification of the Class</u>.

For purposes of certifying the Rule 23(b)(3) Class sought by the Settling Parties, the MCL § 21.632 advises that "[i]f the case is presented for both class certification and settlement approval,

---

[59] *See* MCL, §§ 13.14,21.632.

the certification hearing and preliminary fairness evaluation can usually be combined.  The judge

should make a preliminary determination that the proposed class satisfies the criteria set out in

Rule 23(a) and at least one of the subsections of Rule 23(b)."  *See* MCL § 21.22.  The judge must

make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement

terms and must direct the preparation of notice of the certification, proposed settlement, and date

of the final fairness hearing."  *Id.* at § 21.632.  This comports with the Supreme Court's holding

in *Amchem*, 521 U.S. at 619-20, that "[s]ettlement is relevant to a class certification," but the

requirements of Rule 23(a) and 23(b)(3) must still be met.  *Id.* at 620.  However, when a court is

"[c]onfronted with a request for settlement-only class certification, a district court need not inquire

whether the case, if tried, would present intractable management problems."  *Id.*  In the Third

Circuit, when confronted with a settlement class, requires district courts to "make clear that they

are making a 'preliminary determination' on class-action certification for the purpose of issuing

notice of settlement, and that they are reserving the issuance of a certification order until after a

fairness hearing."  *NFL Players*, 775 F.3d at 584.

In this case, a litigation class involving the *Amorin* Plaintiffs has already been certified and

adopted in all jurisdictions.  *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2014 WL

4809520 (E.D. La. Sept. 26, 2014); *Amorin v. Taishan Gypsum Co. Ltd.*, 1:11-cv-22408-MGC,

Order (S.D. Fla. Nov. 16, 2018) (ECF No. 112) (adopting all MDL rulings including certification

of the *Amorin* class); *Amorin v. Taishan Gypsum Co. Ltd.*,  2:11-cv-377, 2019 WL 2172707, at *2

(E.D. Va. May 20, 2019) (adopting all pre-remand rulings of the MDL including certification of

the *Amorin* class).  Given that the *Amorin* class was already certified, it is not difficult to observe

that the requirements for Rule 23(a) have been met for the proposed Settlement Class.  Rule 23(a)

requires that:  (1) the class is so numerous that joinder of all members is impracticable; (2) there

are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  As determined by *Amchem*, the issue of class management is not relevant for purposes of certifying the Class in the context of a settlement.

### 1.    Numerosity.

The class definition includes over 3,000 Plaintiffs in the *Amorin* Class that filed suit against the Taishan and the Additional Released Parties alleging damages sustained as a result of Covered Chinese Drywall that was installed in Plaintiffs' homes and properties. In addition, there are approximately 1,200 Plaintiffs named on the *Brooke* Complaints.  The Settlement Class consists of the *Amorin* Plaintiffs, with the exception of 498 Plaintiffs who entered into separate settlements with Taishan, the *Brooke* Plaintiffs, and absent class members.  Under these circumstances, the numerosity factor specified in Rule 23(a)(1) is satisfied.  *Class FOFCOL*, 2014 WL 4809520 at *11; *see also Sullivan v. Chase Inv. Servs., Inc.*, 79 F.R.D. 246, 257 (N.D. Cal. 1978) (a class consisting of 1,000 members "clearly satisfies the numerosity requirement.").

### 2.    Commonality.

The commonality requirement of Rule 23(a)(2) is easily met in this case.  The JPML ordered that these actions be consolidated in the MDL based on "the commonality of facts in the various cases."[60] Questions surrounding the defectiveness of Chinese Drywall, the effects of Chinese Drywall on Class Members, and the damages caused thereby are issues common to all

---

[60] *Chinese Drywall,* 626 F. Supp. 2d 1346.

Plaintiffs, satisfying this element of Rule 23(a).  *See Califano v. Yamasaki*, 442 U.S. 682, 701 (1979) (Class relief is "peculiarly appropriate" when the "issues involved are common to the class as a whole" and they "turn on questions of law applicable in the same manner to each member of the class."); *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 359 (2011) ("even a single common question will do") (citations omitted); *Class FOFCOL*, 2014 WL 4809520 at *11 ("The factual determination of class-wide property damages is common to the class members, and resolution of this common question will generate common answers apt to drive the resolution of the litigation.").

### 3. Typicality.

The third Rule 23(a) element requires that the class representative's claims be typical of the claims of the putative class members. Fed. R. Civ. P. 23(a)(3). "[T]ypicality measures whether a sufficient nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003) (internal quotations omitted). A plaintiff's claim is typical of the class members' claims if they "arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984).  The measure of whether a plaintiff's claims are typical is whether the nature of the plaintiff's claims, judged from both a factual and a legal perspective, are such that in litigating his or her personal claims he or she reasonably can be expected to advance the interests of absent class members.  *See, e.g., General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 156-57 (1982).

Each of the Plaintiffs in the Settlement Class is seeking to recover, from Defendants, remediation damages and/or other losses allegedly caused by Covered Chinese Drywall. The Court previously found in *Amorin* that "[t]he property damage claims of the class representatives are typical of, if not identical in nature to, those of the class members. The determination of these damages depends on the same factual predicate as to the manufacturer of the defective product,

product identification, the mechanism of damage occurring in Class Members' homes, the need for remediation, the scope of remediation, the square footage costs of accomplishing the remediation, and alternative living expenses during remediation." *Class FOFCOL*, 2014 WL 4809520, at *12. The typicality requirement is satisfied.

### 4. Adequacy of Representation.

Rule 23(a)(4) requires that the named class representatives not possess interests which are antagonistic to the interests of the class. *See Amchem*, 521 U.S. at 625-26 ("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members.") (internal citation and quotations omitted). Second, the named class representatives' counsel "must be qualified, experienced, and generally able to conduct the litigation." *Chinese Drywall*, 2013 WL 499474 at *8. At this preliminary stage of the approval process, there is nothing to suggest that this requirement has not been met. The named representatives are David Griffin, who formerly owned an Affected Property at 9801 Cobblestone Creek Drive, Boynton Beach, FL, 33472; Lillian Eyrich, who owns an Affected Property at 130 22nd Street, New Orleans, LA 70124; Michelle Germano, who formerly owned an Affected Property at 8171 N. View Boulevard, Norfolk, VA 23518; Virginia Tiernan, who owns an Affected Property at 4326 Garden Boulevard, Cape Coral, FL 33909; Debra Williams, who owns an Affected Property at 8600 Scottsdale Drive, New Orleans, LA 70128; and Judd Mendelson, who owns an Affected Property at 1507 Burrowin Drive, Chesapeake, VA 23321. Mr. Griffin, Ms. Eyrich and Ms. Germano are *Amorin* Plaintiffs, and Mr. Griffin and Ms. Eyrich served as Priority Plaintiffs during the litigation, while Ms. Germano served as the named class representative in the *Germano* action. Ms. Tiernan, Ms. Williams and Mr. Mendelson are *Brooke* Plaintiffs. All proposed settlement class representatives are members of the Class they seek to represent, and they do not possess any interests antagonistic to that class. Moreover, proposed Settlement Class

Counsel are Lead and Liaison Counsel of the MDL, and leading counsel in the Florida and Virginia *Amorin* and *Brooke* cases, all of whom have vast experience in class actions and multidistrict litigation. Having such zealous representation ensures that the Settlement Class is adequately represented. *See Class FOFCOL*, 2014 WL 4809520, at *12; *see also* CVs of Settlement Class Counsel (attached hereto as Exhibit "8").

**5.      Common Questions of Law and Fact Predominate.**

For purposes of satisfying Rule 23(b)(3)'s requirements, "[t]he Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "Predominance is established where common answers to common questions are likely to 'drive the resolution of the [instant] litigation.'" *Class FOFCOL*, 2014 WL 4809520, at *14 (quoting *Dukes*, 131 S. Ct. at 2551 ("what matters to class certification is not the raising of common 'questions'—even in droves—but, rather the capacity of a class wide proceedings to generate common answers apt to drive the resolution of the litigation.")). Here, the issue of Taishan's liability for Class Members' damages is a predominating common question applicable to all Class Members. *Id.* A class settlement will ensure that Class Members are compensated for their remediation damages and other losses.

Plaintiffs satisfy the predominance requirement because liability questions common to all Class Members substantially outweigh any possible issues that are individual to each Settlement Class Member. The salient evidence necessary to establish Plaintiffs' claims is common to both the Class Representatives and all members of the Class—they would all seek to prove entitlement to damages for Covered Chinese Drywall and that Taishan's conduct was wrongful. Furthermore,

34

resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). [61]

For these reasons, the Court should certify the proposed Class defined in the Agreement.

### 6.    The Class Settlement is Superior.

The superiority of this settlement class is patent.  Resolving the claims of all class members in one fell swoop demonstrates the efficiency and benefits of the class procedure.  These qualities are plainly superior to binary litigation.  *See In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 910 F. Supp. 2d 891, 928-29 (E.D. La. 2012) ("The Class Structure enables the claims process established by the Settlement to be administered under Court supervision, provides the due process protections of Rule 23 to the class member Claimants, and enables the Court to enforce the Settlement terms and administrative procedures for the benefit of class members, without necessitating new or individualized litigation."), *aff'd* 739 F.3d 790 (5th Cir. 2014).  Further, the ability to administer the litigation in the context of the proposed settlement class is vastly more desirable than confronting an uncertain future of costly litigation and the risks posed by collection from a foreign corporation.  For these reasons, the Court should preliminarily certify the proposed Class defined in the Agreement.

### C.    The Proposed Form and Method of Class Notice Is Adequate and Satisfies the Requirement of Rule 23.

Under Rule 23(e)(1) of the Federal Rules of Civil Procedure, when approving a class action settlement, the district court "must direct notice in a reasonable manner to all class members who would be bound by the proposal."  In addition, for classes certified under Rule 23(b)(3), courts

---

[61]  In evaluating the proposed Settlement, any difficulties regarding management of this Class need not be considered.  *Amchem*, 521 U.S. at 620; *see also* 2 William B. Rubenstein, NEWBERG ON CLASS ACTIONS § 4:63 (5th ed. 2018) ("Courts ... regularly certify settlement classes that might not have been certifiable for trial purposes because of manageability concerns.").

must ensure that class members receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  *See Eisen v. Carlisle & Jacqueline*, 471 U.S. 156, 173 (1974); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *see also In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1097 (5th Cir. 1977).  Courts have held that "[t]he Due Process Clause also gives unnamed class members the right to notice of the settlement of a class action."  *See OCA*, 2008 WL 4681369 at *15 (citing *Fidel v. Farley*, 534 F.3d 508, 513-14 (6th Cir. 2008)); *Twigg v. Sears, Roebuck & Co.,* 153 F.3d 1222, 1227 (11th Cir. 1998) ("notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt out of the action.") (citation omitted); *see also Winingear*, 2014 WL 12526327, at *1.  Notice must be "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *See OCA,* 2008 WL 4681369, at *15 (quoting *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005)).

In accordance with these legal parameters, the Parties have agreed to provide an extensive notice program, which includes direct mailing, printed notice in established newspapers and magazines, and on-line digital media.  In conjunction with direct mail, the overall notice program is estimated to reach over 90% of the Class.  The Court should approve the proposed manner of notice since it satisfies the requirements of due process as it is reasonably calculated to apprise Class Members of the pendency of the action and their rights under the Settlement.

The Notice is written in plain English and straightforward language consistent with Rules 23(c)(2)(B) and 23(e)(1).  The Notice will objectively and neutrally apprise all Class Members of the nature of the action, the definition of the Class sought to be certified, the Class claims and

issues, the Allocation Model created by the Allocation Neutral, that Class Members may enter an appearance and appear at the Fairness Hearing (in accordance with the procedures to be set forth in the Notice), that the Courts will exclude from the Class any Class Member who requests exclusion (and will set forth the procedures and deadlines for doing so), and the binding effect of a class judgment on Class Members under Rule 23(c)(3)(B). The Notice will additionally disclose the date, time and location of the Fairness Hearing and the procedures and deadlines for the submission of objections to any aspect of the Settlement.

Thus, the Class Notice should be approved by the Court.

### D.   The Court Should Preliminarily Approve the Settlement and Continue the Requested Stay of Litigation.

Determining the fairness of the Settlement is left to the sound discretion of the Court, and an appellate court will not overturn the Court's decision absent a clear showing of abuse of that discretion. *See In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982) (citing *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 429 (5th Cir. 1977); *see also In re Jiffy Lube Sec. Litig.,* 927 F.2d 155, 158 (4th Cir. 1991); *U.S. Oil and Gas Litig.*, 967 F.2d at 493. The Fifth Circuit has consistently held that, as a result of their highly-favored status, settlements "'will be upheld whenever possible *because* they are a means of amicably resolving doubts and preventing lawsuits.'" *Miller*, 559 F.2d at 428 (emphasis added) (quoting *Pearson v. Ecological Sci. Corp.,* 559 F.2d 171, 176 (5th Cir. 1975)). Settlements of class actions are "particularly favored" and are not to be lightly rejected. *See Cotton*, 559 F.2d at 1331; *Turner,* 472 F. Supp. 2d at 843. In the case of class actions, courts recognize that "there is an overriding public interest in favor of settlement," because such suits "have a well deserved reputation as being most complex." *Cotton*, 559 F.2d at 1331. *See generally In re Hyundai and Kia Fuel Economy Litig.*, 2019 WL 2376831, *4 (9th Cir. June 6, 2019) ("In light of the 'strong judicial policy that favors settlements,

particularly where complex class action litigation is concerned,' . . . we perform an 'extremely limited' review of a district court's approval of a class settlement . . . Parties seeking to overturn the settlement approval must make a 'strong showing' that the district court clearly abused its discretion.") (citations omitted).

Moreover, it is widely recognized that courts should exercise restraint in examining a proposed settlement and should not "make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." *Cotton*, 559 F.2d at 1330. In other words, in weighing the benefits obtained by settlement against benefits dependent on the likelihood of recovery on the merits, courts are not expected to balance the scales. *See id.* The very object of a compromise "is to avoid the determination of sharply contested and dubious issues." *Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971).

In addition, a court should not engage in a trial on the merits when considering the propriety of a settlement:

> It cannot be overstated that neither the trial court in approving the settlement nor [the appellate court] in reviewing that approval have the right or the duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute.

*Cotton*, 559 F.2d at 1330 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 456 (2d Cir. 1974)); *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975); *see also Turner*, 472 F. Supp. 2d at 843 ("The Court may not resolve contested issues of fact or law, but instead is concerned with the overall fairness, reasonableness, and adequacy of the proposed settlement as compared to the alternative of litigation.").

The trial court is not required to decide the merits of Class Members' claims or substitute a different view of the merits for that of the parties or counsel. *Maher*, 714 F.2d at 455 ("In other

words, in determining the fairness, reasonableness, and adequacy of a proposed settlement, neither the district court nor the appellate court on review, should reach ultimate conclusions on the issues of fact and law underlying the dispute."). Where, as here, experienced counsel, representing many interested parties, have extensively negotiated the Agreement at arm's-length, a strong initial presumption is created that the compromise is fair and reasonable. *United States v. Tex. Educ. Agency*, 679 F.2d 1104, 1108 (5th Cir. 1982). The Fifth Circuit has recognized that courts must rely to a large degree on the judgment of competent counsel, terming such counsel the "linchpin" of an adequate settlement. *Reed v. GMC*, 703 F.2d 170, 175 (5th Cir. 1983). Thus, if experienced counsel determine that a settlement is in the class's best interests, "the attorney's views must be accorded great weight." *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978); *see also OCA*, 2008 WL 4681369 at \*11 (where there is "no reason to doubt [the] fairness" of the settlement and it "appears to fall within the range of possible approval, the court should grant preliminary approval."); *In re Train Derailment Near Amite Louisiana on October 12, 2002*, 2006 WL 644494, at \*1 (E.D. La. Jan. 27, 2006) (granting preliminary approval of class settlement negotiated at arm's-length and without collusion, where the compromise bore "a probable, reasonable relationship to the claims and exposure and to the risks presented in the litigation" and was "within the possible range of judicial approval").

Moreover, the Court is not required at this point to make a determination as to whether the Agreement should be finally approved. As stated in the MCL § 21.632: "First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation." Generally, "this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by parties." *Id*. Although non-binding, the preliminary approval establishes "an initial presumption of fairness." *In re General Motors*

*Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 785 (3rd Cir. 1995); *Chun-Hoon v. McKee Foods Corp.*, 2009 WL 3349549, *2 (N.D. Cal. Oct. 15, 2009); *see also* 2 William B. Rubenstein, Newberg on Class Actions § 13:45 (5th ed. 2018).

The Taishan Agreement before the Court is the product of extensive arm's-length negotiations between counsel for the Parties, which culminated in the Agreement. The Parties negotiated the terms of the Agreement in detail before an experienced mediator after ten years of litigation, and the Parties each made concessions.  Therefore, the Agreement should be preliminarily approved.

At the Fairness Hearing, any Class Member who timely files an objection and states their intention to appear may voice any objections.  The Court can then consider the merits of the Agreement considering any objections and determine whether to grant final approval of the Settlement.  Further, at the Fairness Hearing, the Parties will have submitted briefs and other documents in support of the Settlement.  Then, if the Court finds the Agreement to be fair and reasonable, the Court should enter the Order and Judgment contemplated by the Agreement.

> ### E.   **Proposed Schedule.**

Settlement Class Counsel suggest the following schedule leading to the Fairness Hearing. Blanks for the actual dates are provided in the proposed Preliminary Approval Order submitted herewith:

| Event | Day |
| --- | --- |
| Preliminary Approval Order | |
| Notice | 10 days after PAO |
| Opt-Outs | 90 days after Class Settlement Notice Period Begins |
| Objections | 90 days after Class Settlement Notice Period Begins |
| Fairness Hearing | December 11, 2019 |

En>

In the event the Court agrees to preliminarily approve the Agreement, the temporary stay imposed upon the announcement of the Term Sheet should be extended until a determination following the Fairness Hearing.

## IV.   CONCLUSION

Settlement Class Counsel respectfully request that the Courts find preliminarily that the Class Settlement with Taishan is fair, reasonable and adequate, and that notification to Class Members of the terms of the Agreement and their rights in connection with the Agreement be approved.   Settlement Class Counsel seek entry of an Order:  (1) preliminarily approving the Agreement; (2) certifying the Class as set forth in the Preliminary Approval Order; (3) directing that Notice be given to the Class and approving the manner of Notice to the Class; (4) scheduling a Fairness Hearing; (5) establishing dates for the dissemination of Class notice, opt-outs, and objections to the Agreement and other relevant deadlines; and (6) continuing the stay and enjoining the prosecution of Class Members' claims against Taishan and the Additional Released Parties.

Respectfully submitted,

Dated:  August 20, 2019

By: */s/ Stephen J. Herman*
Russ M. Herman (Bar No. 6819)
Leonard A. Davis (Bar No. 14190)
Stephen J. Herman (Bar No. 23129)
Charles King (Bar No.34621)
Herman, Herman & Katz, LLC
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
SHerman@hhklawfim.com
*Plaintiffs' Liaison Counsel MDL 2047 and Settlement Class Counsel*

Arnold Levin
Fred S. Longer
Sandra L. Duggan
Keith Verrier
Levin Sedran & Berman LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
alevin@lfsblaw.com
*Plaintiffs' Lead Counsel MDL 2047 and Settlement
Class Counsel*

Patrick Shanan Montoya
Fla. Bar No. 0524441
Patrick@colson.com
Colson Hicks Eidson
255 Alhambra Circle, PH
Coral Gables, FL  33134-2351
Telephone:  (305) 476-7400
Facsimile:  (305) 476-7444
*Plaintiffs' Steering Committee MDL 2047 and
Settlement Class Counsel*

Richard J. Serpe, Esq.
LAW OFFICES OF RICHARD J. SERPE, PC
580 E. Main Street, Suite 310
Norfolk, Virginia 23510
757-233-0009
Rserpe@serpefirm.com
*Plaintiffs' Steering Committee MDL 2047 and
Settlement Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, which will serve a notice of the uploading in accordance with the procedures established in MDL 2047, on this 20th day of August, 2019.

*/s/ Stephen J. Herman*
Stephen J. Herman
Herman, Herman & Katz, LLC
820 O'Keefe Avenue
New Orleans, LA 70113
Phone: (504) 581-4892
Fax: (504) 561-6024
SHerman@hhklawfim.com
*Plaintiffs' Liaison Counsel MDL 2047 and*
*Settlement Class Counsel*
