**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L JUDGE FALLON MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO: <br><br> ALL ACTIONS (except *The Mitchell Co., Inc. v. Knauf Gips KG, et al.*, Civil Action No. 09-4115 (E.D. La.)) | |

**DECLARATION OF SHANNON R. WHEATMAN, PH.D. ON**
**ADEQUACY OF NOTICES AND PROPOSED NOTICE PLAN**

I, Shannon R. Wheatman, being duly sworn, hereby declare as follows:

1.       I am president of Kinsella Media, LLC ("KM"), an advertising and notification consulting firm in Washington, D.C. specializing in the design and implementation of class action and bankruptcy notification programs.  My business address is 2101 L Street NW, Suite 800, Washington, D.C. 20037.  My telephone number is (202) 686-4111.

2.       This declaration will describe my experience in designing and implementing notices and notice programs, as well as my credentials to opine on the overall adequacy of the notice effort.  It will also describe the notices (the "Notice" or "Notices") and the notice program (the "Notice Program") proposed here for *In Re: Chinese-Manufactured Drywall Products Liability Litigation*, including how they were developed and why I believe they will be effective and satisfy the requirements of Federal Rule of Civil Procedure 23(c) and due process.

3.  KM implemented the media program in an earlier settlement in this litigation with the Banner Supply Company.

4.   This declaration is based upon my personal knowledge and upon information provided by Counsel, my associates, and staff.  The information is of a type reasonably relied upon in the fields of advertising, media and communications.

5.   KM was retained to design a Notice Program to reach Class Members.  I submit this declaration to describe the Notice Program and Notices.

## RELEVANT EXPERIENCE

6.   I have served as a qualified class action notice expert in many major class actions. State and federal courts have accepted my analyses and expert testimony on whether information is effectively communicated to people.  My C.V. is attached as **Exhibit 1**.

7.   I have testified in court as an expert in *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 2672 (N.D. Cal.); *State v. Farmer Group Inc.*, No. D-1-GV-02-002501 (D. Ct. Tex., Travis County); *Scharfstein v. BP West Coast Products, LLC*, No. 1112-17046 (Cir. Ct. Ore.); *Spillman v. RPM Pizza, Inc.*, No. 10-349 (M.D. La.); *PRC Holdings, LLC v. East Resources, Inc.*, No. 06-C-81 (Cir. Ct. W. Va.); *Guidry v. American Public Life Ins. Co.*, No. 2008-3465 (14th Jud. Dist. Ct., Calcasieu Parish); *Webb v. Liberty Mutual Ins. Co.*, No. CV-2007-418-3 (Cir. Ct. Ark); and *Beasley v. The Reliable Life Insurance Co.*, No. CV-2005-58-1 (Cir. Ct. Ark).  I have been deposed as an expert in *Hale v. CNX Gas Company, LLC*, No. 10-CV-59 (W.D. Va.) and *Thomas v. A. Wilbert Sons, LLC*, No. 55,127 (18th Jud. Dist. Ct., Iberville Parish).

8.   I have been involved in some of the largest and most complex national notification programs in the country, including: *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 2672 (N.D. Cal.); *Precision Associates, Inc. v. Panalpina World Transport*, No. 08-CV-00042 (E.D.N.Y.);  *In re Transpacific Passenger Air Transportation Antitrust Litigation,* MDL No. 1913 (N.D. Cal.) (involving millions of international airline passengers); *In re Dynamic Random Memory Antitrust Litig.,* MDL No. 1486

(N.D. Cal.) (involving tens of millions of consumers); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827 (N.D. Cal.) (involving millions of indirect purchasers); *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010,* MDL No. 2179 (E.D. La.); *Kramer v. B2Mobile, LLC*, No. 10-CV-02722 (N.D. Cal.) (text messaging case involving tens of millions of consumers); *In re Target Corp. Customer Data Security Breach Litig*., MDL No. 14-2522 (D. Minn.) (data breach); *In re Sony Gaming Networks & Customer Data Security Breach Litig.*, No. 11-MD-2258 (S.D. Cal.) (data breach); *Fogel v. Farmers Group, Inc.*, No. BC300142 (Cal. Super. Ct., LA County) ($455 million settlement involving tens of millions of insureds); *In re Katrina Canal Breaches Consolidated Litig.*, No. 05-4182 (E.D. La.) (settlement obtained for Hurricane Katrina and Rita survivors); and many others.

9.      Courts have admitted my expert testimony on quantitative and qualitative evaluations of the effectiveness of notice programs, and several courts have commented favorably, on the record, regarding the effectiveness of notice programs I have done.  Selected judicial comments are included in the attached curriculum vitae.

10.     My qualifications include expertise in the form and content of notice.  For example, while serving with the Federal Judicial Center ("FJC"), I played an integral part in the development of the illustrative, "model" forms of notice designed to satisfy the plain language requirements of Federal Rule of Civil Procedure 23(c)(2).  This research formed the basis for my doctoral dissertation, *The Effects of Plain Language Drafting on Layperson's Comprehension of Class Action Notices* (2001) (Ph.D. dissertation, University of Georgia).  To assist judges and attorneys, both in state and federal courts, the FJC posted the notices at www.fjc.gov.

11.     I have authored and co-authored articles on notice and due process.  I believe notice and due process depend upon clear communication with the people affected.  *See, e.g.,* Shannon R. Wheatman & Katherine M. Kinsella, *International Class Action Notice*, WORLD CLASS ACTION: A GUIDE TO GROUP AND REPRESENTATIVE CLASS ACTIONS AROUND THE GLOBE 673-686 (Paul

Karlsgodt ed., 2012); Katherine Kinsella & Shannon Wheatman, *Class Notice and Claims Administration*, PRIVATE ENFORCEMENT OF ANTITRUST LAW IN THE UNITED STATES: A HANDBOOK 338-348 (Albert A. Foer & Randy M. Stutz eds., 2012); Katherine Kinsella & Shannon R. Wheatman, *Class Notice and Claims Administration*, THE INTERNATIONAL PRIVATE ENFORCEMENT OF COMPETITION LAW 264–274 (Albert A. Foer & Jonathan W. Cuneo eds., 2010); Todd B. Hilsee, Shannon R. Wheatman & Gina M. Intrepido, *Do you really want me to know my rights? The ethics behind due process in class action notice is more than just plain language: A desire to actually inform*, 18 GEO. J. LEGAL ETHICS 1359 (2005); and Todd B. Hilsee, Gina M. Intrepido & Shannon R. Wheatman, *Hurricanes, Mobility and Due Process: The "Desire-to-Inform" Requirement for Effective Class Action Notice Is Highlighted by Katrina*, 80 TULANE LAW REV. 1771 (2006).

## OVERVIEW

12.     In developing the Notice Program, it was first determined that a mailing list of *Amorin* and *Brooke* Plaintiffs is available and it would be reasonable to implement an individual notification effort to reach them.

13.     Coverage to reach Absent Class Members will be done through paid media in all of the impacted states.  Specifically, the media heavily targets states that have over 1% of the Chinese Drywall claimed by the *Amorin/Brooke* Plaintiffs (Florida, Louisiana, Alabama, Virginia, Mississippi, and Georgia).  The Top Six States account for over 90% of the Chinese Drywall product at issue in this Settlement.[1]  The media program includes one newspaper to cover each media market in Florida and Louisiana (the top two states), ads on two lifestyle websites in Florida and Louisiana, Hispanic newspapers for each media market in Florida,[2] and a national magazine and national digital media to reach all states affected by this litigation.

---

[1] The breakdown by state is: Florida (62.0%), Louisiana (13.8%), Alabama (6.6%), Virginia (5.2%), Mississippi (1.8%), Georgia (1.1%).
[2] Hispanic population represents 26.1% of Florida, which is higher than the national average of 18.3%.  Source: www.census.gov.

14.     The various forms of Notice are described below.  All forms of Notice are clear, concise, and in plain, easily understood language.

15.     As detailed below, in my opinion, the Notice Program represents the best notice practicable under the circumstances.

## NOTICE PROGRAM

16.     Although each case is unique, the methods and tools used in developing the Notice Program for this case have been employed in many other court-approved notice plans.

17.     In this case, the Notice Program was designed to reach the greatest practicable number of Class Members ensuring that they will be exposed to the Notice, to see, review and understand it.

### *Individual Notice*

18.     Individual Notice will be the principal method of providing *Amorin* and *Brooke* Plaintiffs with opportunities to see, read, and understand their rights, and act if they so choose.

19.     Individual notice will consist of mailing the Long Form Notice to *Amorin* and *Brooke* Plaintiffs and their attorneys of record to inform them of their rights and how they may participate in the Settlement.  The mailing to the *Amorin* Plaintiffs will also include a Cover Letter which will provide an Allocation Estimate.

20.     Notices that are returned as non-deliverable will be re-mailed to any address indicated by the postal service in the case of an expired automatic forwarding order.  Notices returned as non-deliverable, but for which a new address is not indicated by the postal service, will be further searched through a third-party vendor to obtain a more current address.  If any such address is found, the Notice will be re-mailed.

### *Paid Media*

21.     To supplement the Individual Notice, KM designed a paid media program to reach Absent Class Members.

22.     KM researched the most appropriate media vehicles that would be best for this case. Given the specifics of this case and the demographics and media habits of homeowners, a mix of digital and print are the recommended components of the Notice Program.  This multi-layered approach will generate awareness in reaching Class Members where they consume media.  On average, homeowners read eight magazines issues in a month and spend 21 hours on the internet within a week.[3]

### *Print Media*

23.     A Publication Notice will be published one time, as a 1/3rd page ad in the following weekly national magazine:

| Title | Circulation | Description |
|---|---|---|
| *People* | 3,400,000 | Highest performing magazine against homeowners. Contains insightful, compassionate, and entertaining coverage of the most intriguing people in our culture, from extraordinary people doing the ordinary to ordinary people caught up in extraordinary circumstances. |

24. A Publication Notice will appear one time as a 1/6th page ad in the highest circulating newspapers in Florida and Louisiana:

| Title | Coverage | Circulation |
|---|---|---|
| *News Press* | Florida | 39,036 |
| *Gainesville Sun* | Florida | 16,717 |
| *Florida Times Union* | Florida | 37,041 |
| *Miami Herald* | Florida | 73,781 |
| *Orlando Sentinel* | Florida | 117,832 |
| *Panama City News Herald* | Florida | 15,514 |

---

[3] Source: GfK MRI Doublebase

| | | |
|---|---|---|
| *Tallahassee Democrat* | Florida | 20,931 |
| *Tampa Bay Times* | Florida | 157,236 |
| *Palm Beach Post* | Florida | 56,540 |
| *Baton Rouge Advocate* | Louisiana | 97,321 |
| *Daily Advertiser* | Louisiana | 9,345 |
| *American Press* | Louisiana | 17,755 |
| *Monroe News Star* | Louisiana | 8,562 |
| *New Orleans Advocate* | Louisiana | 34,764 |
| *Shreveport Times* | Louisiana | 37,666 |

25.     A Publication Notice will appear one time as a 1/6th page ad in the top local

Hispanic newspapers in Florida:

| Title | Circulation |
|---|---|
| *Nuevos Ecos* (Bi-weekly) | 10,000 |
| *Hola Noticias (Weekly)* | 6,100 |
| *El Clarin (Weekly)* | 180,000 |
| *El Sentinel (Weekly)* | 130,395 |
| *Centro Tampa (Weekly)* | 50,000 |
| *El Semanario Accion (Weekly)* | 45,000 |

### *Digital Media*

26.     Banner ads will appear for four weeks using the following digital targeting tactics:

| Property/Network | Ad Type/Size | Geography | Description |
|---|---|---|---|
| *Florida Weekly* | 160x600, 300x250, 728x90 | Florida | Coverage includes news, entertainment, health, arts, business, automotive, and real estate. |
| *Louisiana Life* | 160x600, 300x250, 728x90 | Louisiana | Provides commentaries from Louisiana leaders, columns on safety, health, energy conservation, gardening, a calendar of events, and recipes. |
| *Premium Websites* | 160x600, 300x250, | | Ads placed on specific home or home improvement websites/outlets.  Example |

| | 728x90, 320x50 | Top 6 States | sites include: DIY Network, DoItYourself.com, or Bobvila.com. |
| *Local News and Newspapers Sites* | 160x600, 300x250, 728x90, 320x50 | Top 6 States | Ads placed on a variety of news websites to reach homeowners. |
| *Contextual Targeting* | 160x600, 300x250, 728x90, 320x50 | Top 6 States | Banner ads delivered to websites with editorial content that is most likely to be of interest to homeowners. Editorial content may include home topics, home improvement related topics, or any other related items. |
| *Facebook* | Image & Ad Text | Top 6 States + National | Ads delivered via the newsfeed of Facebook users. |
| *Google Display Network* | 160x600, 300x250, 728x90, 320x50 | Top 6 States + National | Ads delivered via Google properties. |

### *Earned Media*

27.     An earned media program will be implemented to amplify the paid media and provide additional notice to Class Members.  A nationwide press release will be distributed on PR Newswire's US1 news circuit reaching 5,400 traditional media outlets (television, radio, newspapers, magazines) and relevant trade publications and 4,000 national websites.  The release will highlight the toll-free telephone number and case website address, so that Class Members can obtain complete information.

### *Settlement Website*

28.     An informational, interactive website is a critical component of the Notice Program. A website is a constant information source instantly accessible to Class Members.  The website will enable Class Members to get information about the Settlement, including the Long Form Notice and the Settlement Agreement.

29.     The website will be updated at the URL www.ChineseDrywallSettlement.com to enable potential Class Members to get information about the Settlement.

### *Other*

30.     The toll-free phone number will be updated allowing Class Members to call and request that a Settlement Notice be mailed to them or listen to frequently asked questions.

31.     A post office box will be established to receive Class Member requests for exclusion, as well as requests for Long Form Notice or other information.

### NOTICE FORM AND CONTENT

32.     Attached as **Exhibits 2, 3, 4, and 5** are drafts of the Long Form Notice, *Amorin* Cover Letters, Outside of the Envelope, and the Publication Notice.

33.     The Notices effectively communicate the required information about the Settlement.  All print advertising will carry a phone number and the Settlement website address for potential Class Members to request or access the Long Form Notice.

34.     Fed. R. Civ. Proc. 23(c)(2) requires class action notices to be written in "plain, easily understood language."  KM applies the plain language requirement in drafting notices in federal and state class actions.  All notice materials in this case are in plain, easily understood language.

35.     The Long Form Notice will be mailed to Known Class Members and be available at the website or by calling the toll-free number.  The Long Form Notice provides substantial information, including background on the issues in the case and all specific instructions Class Members need to follow to properly exercise their rights.  No important or required information is missing or omitted.  It is designed to encourage readership and understanding, in a well-organized and reader-friendly format.  The Long Form Notice will be translated into Spanish and available

at the website or by calling the toll-free number.

36.     The Publication Notice is designed to capture the Class Member's attention with clear, concise, plain language.  The plain language text provides important information regarding the subject of the litigation, the Class definition, and the legal rights available to Class Members. It directs readers to the case website for more information.  No important or required information is missing or omitted.  In fact, the Notice concisely and clearly states, in plain easily understandable language, all required information, without omitting significant facts that Class Members need to understand their rights.  The Publication Notice will be translated into Spanish.

## CONCLUSION

37.     It is my opinion that the Notice Program provides the best notice practicable under the circumstances.  It is consistent with the standards employed by KM in notification programs designed to reach class members.  The Notice Program, as designed, is fully compliant with Rule 23 of the Federal Rules of Civil Procedure and satisfies due process requirements.


I declare under penalty of perjury that the foregoing is true and correct.  Executed in Souderton, PA this 19th day of August 2019.


_____
Shannon R. Wheatman, Ph.D.

# EXHIBIT 1



# Shannon R. Wheatman, Ph.D.

President
Kinsella Media, LLC
2101 L Street NW, Suite 800
Washington, DC 20037
2010 – Present

Dr. Wheatman specializes in designing, developing, analyzing, and implementing large-scale legal notification plans. She is a court-recognized expert who provides testimony on the best notice practicable. Dr. Wheatman began her class action career in 2000 at the Federal Judicial Center where she was instrumental in the development of model notices to satisfy the plain language amendment to Rule 23. Her plain language expertise was advanced by her education, including her doctoral dissertation on plain language drafting of class action notice and her master's thesis on comprehension of jury instructions. Dr. Wheatman has been involved in over 600 class actions.  Her selected case experience includes:

*Antitrust*

*Allen v. Dairy Farmers of America, Inc*., No. 09-CV-00230-CR (D. Vt.).

*Blessing v. Sirius XM Radio, Inc.*, No. 09-CV-10035 HB (S.D.N.Y.).

*Brookshire Bros. v. Chiquita*, No. 05-CV-21962 (S.D. Fla.).

*Cipro Cases I and II*, No. 4154 and No. 4220 (Super. Ct. Cal.).

*In re Automotive Parts Antitrust Litig.,* MDL No. 2311 (E.D. Mich.).

*In re Dynamic Random Memory (DRAM) Antitrust Litig.,* MDL No. 1486 (N.D. Cal.).

*In re Flonase Antitrust Litig.*, No. 08-CV-3301 (E.D. Pa.).

*In re LIBOR-Based Financial Instruments Antitrust Litig.* (Barclays Bank, Citibank, Deutsche Bank and HSBC settlements), MDL No. 2262 (S.D.N.Y.).

*In re Metoprolol Succinate End-Payor Antitrust Litig.*, No. 06-CV-71 (D. De.).

*In re NYC Bus Tour Antitrust Litig.,* No. 13-CV-0711 (S.D. N.Y.).

*In re Online DVD Rental Antitrust Litig.*, MDL No. 2029 (N.D. Cal.).

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827 (N.D. Cal.).

*In re Transpacific Passenger Air Trans. Antitrust Litig.*, MDL No. 1913 (N.D. Cal.).

*Precision Associates, Inc. v. Panalpina World Transport*, No. 08-CV-00042 (E.D. N.Y.).

*Roos v. Honeywell Int'l, Inc.*, No. 04-0436205 (Super. Ct. Cal.).

*Sweetwater Valley Farm, Inc. v. Dean Foods*, No. 07-CV-208 (E.D. Tenn.).

*The Shane Grp., Inc., v. Blue Cross Blue Shield of Michigan*, No. 10-CV-14360 (D. Minn.).

### Consumer and Personal Injury/Product Liability

*Abbott v. Lennox Industries, Inc.,* No. 16-2011-CA-010656 (4th Jud. Cir. Ct., Dade Cty. Fla) (defective product).

*Anderson v. Trans Union, LLC*, No. 16-CV-00558 (E.D. Va.) and *Clark v. Trans Union, LLC*, No. 15-CV-00391 (E.D. Va.) (consumer finance).

*Beringer v. Certegy Check Servs., Inc*., No. 07-CV-1434 (M.D. Fla.) (data breach).

*Chaudhri v. Osram Sylvania, Inc.,* No. 11-CV-05504 (D.N.J.) (false advertising).

*Clark v. Experian Info. Sols., Inc.,* No. 3:16-cv-00032 (E.D. Va.) and *Brown v. Experian Info. Sols., Inc.,* No. 3:16-cv-00670 (E.D. Va.) (consumer finance).

*CSS, Inc. v. FiberNet, L.L.C.*, No. 07-C-401 (Cir. Ct. W. Va.) (telecommunications).

*Donovan v. Philip Morris USA, Inc.,* No. 06-CV-12234 (D. Mass.) (tobacco).

*FIA Card Servs., N.A. v. Camastro*, No. 09-C-233 (Cir. Ct. W.Va.) (credit card arbitration).

*George v. Uponor Corp.*, No. 12-CV-249 (D. Minn.) (defective product).

*Glazer v. Whirlpool Corp.*, No. 08-CV-65001 (N.D. Ohio) (defective product).

*Grays Harbor v. Carrier Corp*., No. 05-CV-21962 (W.D. Wash.) (defective product).

*In re Building Materials Corp. of America Asphalt Roofing Shingle Prods. Liab. Litig.,* No. 11-CV-02000 (D.S.C.) (defective product).

*In re Checking Account Overdraft Litig.*, MDL No. 2036 (S.D. Fla.) (JP Morgan, U.S. Bank, BOA settlements; overdraft fees).

*In re Enfamil LIPIL Mktg. & Sales Practs. Litig.*, MDL No. 2222 (S.D. Fla.) (false advertising).

*In re M3Power Razor System Mktg. & Sales Practs. Litig.*, MDL No. 1704 (D. Mass.) (false advertising).

*In re: National Football League Players' Concussion Injury Litig.,* MDL No. 2323 (E.D. Pa.)

*In re Netflix Privacy Litig.*, No. 11-CV-00379 (N.D. Cal.) (privacy).

*In re Pharm. Industry Average Wholesale Price Litig.*, MDL No. 1456 (D. Mass.) (pharmaceutical).



*In re SCBA Liquidation, Inc., f/k/a Second Chance Body Armor, Inc.,* No. 04-12515 (Bankr. W.D. Mich.) (class action within a bankruptcy/defective product).

*In re Sony Gaming Networks & Customer Data Security Breach Litig.*, MDL No. 2258 (S.D. Cal.) (data breach).

*In re Target Corp. Customer Data Security Breach Litig.*, MDL No. 2522 (D. Minn.) (data breach).

*In re Toyota Motor Corp. Unintended Acceleration Mktg, Sales Practs., & Prods. Litig.,* No. 10-ml-2151 (C.D. Cal.) (unintended acceleration).

*In re: Volkswagen "Clean Diesel" Marketing, Sales Practs., and Prods. Liability Litig.*, MDL No. 2672 (N.D. Cal.) (false advertising).

*In re Vioxx Prods. Liab. Litig.*, MDL No. 1657 (E.D. La) (pharmaceutical).

*In re Wachovia Corp. "Pick-a-Payment" Mortgage Mktg & Sales Practs. Litig.*, MDL No. 2015 (N.D. Cal.) (negative amortization).

*In re Wirsbo Non-F1807 Yellow Brass Fittings*, No. 08-CV-1223 (D. Nev.) (defective product).

*Jabbari v. Wells Fargo*, No. 15-CV-02159 (N.D. Cal.) (unauthorized accounts).

*Keilholtz v. Lennox Hearth Prods.*, No. 08-CV-00836 (N.D. Cal.) (defective product).

*Kramer v. B2Mobile, LLC*, No. 10-CV-02722 (N.D. Cal.) (TCPA).

*Lee v. Carter Reed Co., L.L.C.*, No. UNN-L-39690-04 (N.J. Super. Ct.) (false advertising).

*Mirakay v. Dakota Growers Pasta Co., Inc.*, No. 13-CV-4229 (D.N.J.) (false advertising).

*Palace v. DaimlerChrysler*, No. 01-CH-13168 (Cir. Ct. Ill.) (defective product).

*Pauley v. Hertz Global Holdings, Inc.*, No. 13-C-236 (Cir. Ct. W.Va.) (administrative fees).

*Rowe v. UniCare Life & Health Ins. Co.*, No. 09-CV-02286 (N.D. Ill.) (data breach).

*Spillman v. Domino's Pizza*, No. 10-CV-349 (M.D. La.) (robo-call).

*Trammell v. Barbara's Bakery, Inc.*, No. 12-CV-02664 (N.D. Cal.) (false advertising).

*United Desert Charities v. Sloan Valve Company*, No. 12-CV-06878 (C.D. Cal.) (defective product).

*Wolph v. Acer America Corp.*, No. 09-CV-01314 (N.D. Cal.) (false advertising).

**Environmental/Property**

*Allen v. Monsanto Co.*, No. 041465 and *Carter v. Monsanto Co.*, No. 00-C-300 (Cir. Ct. W. Va.) (dioxin release).



*Andrews et al. v. Plains All American Pipeline, L.P.*, No. 15-CV-04113 (C.D. Cal.) (Santa Barbara Oil Spill).

*Angel v. U.S. Tire Recovery*, No. 06-C-855 (Cir. Ct. W.Va.) (tire fire).

*Cather v. Seneca-Upshur Petroleum Inc.*, No. 09-CV-00139 (N.D. W.Va.) (oil & gas rights).

*Ed Broome, Inc. v. XTO Energy, Inc.,* No. 09-CV-147 (N.D. W.Va.) (oil & gas rights).

*Good v. West Virginia American Water Co.*, No. 14-CV-1374 (S.D.W. Va.) (water contamination).

*In re Katrina Canal Breaches Litig.*, No. 05-CV-4182 (E.D. La.) (Hurricanes Katrina and Rita).

*In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010,* MDL No. 2179 (E.D. La.) (BP, Halliburton and Transocean settlements).

*Jones v. Dominion Transmission Inc.*, No. 06-CV-00671 (S.D. W.Va.) (oil & gas rights).

*Thomas v. A. Wilbert & Sons, LLC*, No. 55,127 (18th Jud. Dist. Ct., Iberville Parish) (vinyl chloride water contamination).

### Government

*Cobell v. Salazar*, No. 96-CV-01285 (D.C.), Depts. of Interior and Treasury.

Countrywide Mortgage Settlement, Department of Justice.

Iovate Settlement, Federal Trade Commission.

National Mortgage Settlement, Attorneys General.

Walgreens Settlement, Federal Trade Commission.

### Insurance

*Beasley v. Hartford Ins. Co. of the Midwest*, No. CV-2005-58-1 (Cir. Ct. Ark.) (homeowners insurance).

*Bond v. Am. Family Ins. Co*., No. 06-CV-01249 (D. Ariz) (property insurance).

*Burgess v. Farmers Ins. Co*., No. 2001-CV-292 (Dist. Ct. Okla.) (homeowners insurance).

*Cole's Wexford Hotel, Inc. v. UPMC,* No. 10-CV-01609 (W.D. Pa.) (health insurance).

*Campbell v. First Am. Title Ins. Co.*, No. 08-CV-311(D. Me.) (title insurance).

*DesPortes v. ERJ Ins. Co.,* No. SU2004-CV-3564 (Ga. Super. Ct.) (credit premium insurance).

*Fogel v. Farmers Grp., Inc.*, No. BC300142 (Super. Ct. Cal.) (management exchange fees).

*Guidry v. Am. Public Life Ins. Co*., No. 2008-3465 (14th Jud. Dist. Ct.) (cancer insurance).



*Gunderson v. F.A. Richard & Assocs., Inc*., No. 2004-2417-D. (14th Jud. D. Ct. La.) (PPO).

*Johnson v. Progressive Casualty Ins., Co*., No. CV-2003-513 (Cir. Ct. Ark.) (automobile insurance).

*McFadden v. Progressive Preferred*, No. 09-CV-002886 (Ct. C.P. Ohio) (UM/UIM).

*Orrill v. Louisiana Citizens Fair Plan*, No. 05-11720 (Civ. Dist. Ct., Orleans Parish) (Hurricane Katrina property insurance).

*Press v. Louisiana Citizens Fair Plan Prop. Ins. Co*., No. 06-5530 (Civ. Dist. Ct., Orleans Parish) (Hurricane Katrina property insurance).

*Purdy v. MGA Ins. Co.*, No. D412-CV-2012-298 (4th Jud. Ct. N. Mex.) (UM/UIM).

*Shaffer v. Continental Casualty Co*., No. 06-CV-2235 (C.D. Cal.) (long term care insurance).

*Sherrill v. Progressive Northwestern Ins. Co*., No. DV-03-220 (18th D. Ct. Mont.) (automotive premiums).

*Soto v. Progressive Mountain Ins. Co*., No. 2002-CV-47 (Dist. Ct. Mont.) (personal injury insurance).

*Webb v. Liberty Mutual Ins. Co*., No. CV-2007-418-3 (Cir. Ct. Ark) (bodily injury claims).

### *Securities*

*In re Municipal Derivatives Antitrust Litig.*, MDL No. 1950 (S.D.N.Y.).

*In re Mutual Funds Inv. Litig.,* MDL No. 1586 (D. Md.) (Allianz Sub-Track).

### *Canada*

*Bechard v. Province of Ontario*, No. CV-10-417343 (Ont. S.C.J.) (personal injury).

*Clarke v. Province of Ontario*, No. CV-10-411911 (Ont. S.C.J.) (personal injury).

*Dolmage v. Province of Ontario*, No. CV-09-376927CP00 (Ont. S.C.J.) (personal injury).

*Donnelly v. United Technologies Corp.,* No. 06-CV-320045 CP (Ont. S.C.J.) (defective product).

*Hall v. Gillette Canada Co.*, No. 47521CP (Ont. S.C.J.) (false advertising).

*Wener v. United Technologies Corp*., 2008 QCCS 6605 (Québec) (defective product).

## Articles and Presentations

Shannon Wheatman, Speaker, *How to Get Your Notice Actually Noticed: Claims Stimulation 3.0*, Women Antitrust Plaintiffs' Attorneys, Napa, CA (June 2018).



Shannon Wheatman & Katherine Kinsella, *The Plain Language Toolkit for Class Action Notice*, in A PRACTITIONER'S GUIDE TO CLASS ACTIONS, 2ND ED. 701 - 710 (Marcy Greer ed., 2017).

Katherine Kinsella & Shannon Wheatman, *Quantifying Notice Results in Class Actions,* in A PRACTITIONER'S GUIDE TO CLASS ACTIONS, 2ND ED. 693 - 700 (Marcy Greer ed., 2017).

Maureen Gorman & Shannon Wheatman, *Reality Check: The State of Media and Its Usage in Class Notice*, in A PRACTITIONER'S GUIDE TO CLASS ACTIONS, 2ND ED. 711-722 (Marcy Greer ed., 2017).

Joshua P. Davis, Shannon Wheatman, & Cristen Stephansky, *Writing Better Jury Instructions: Antitrust As An Example*, 119 W. VA. L. REV. 235 (Fall 2016).

Shannon Wheatman, Webinar Speaker, *Balancing Due Process and Claims: A Conversation on Strategies to Safeguard Your Settlement*, American Association for Justice (Sept. 2016).

Shannon Wheatman & Alicia Gehring, *Mixed Media: A Smarter Approach To Class Action Notice*, Law360.com (June 11, 2015).

Shannon Wheatman, Speaker, *Balancing Due Process and Claims: A Conversation on Strategies to Safeguard Your Settlement*, Plaintiffs' Forum, Rancho Palos Verdes, CA (Apr. 2015).

Joshua Davis, Shannon Wheatman & Cristen Stephansky, *Writing Better Jury Instructions: Antitrust as an Example*, Paper presented at 15th Annual Loyola Antitrust Colloquium, Chicago, IL (Apr. 2015).

Shannon R. Wheatman, Speaker, *Can Competition Concepts be Made Comprehensible to Juries (and Judges)*, American Antitrust Institute's Business Behavior & Competition Policy in the Courtroom: Current Challenges for Judges, Stanford, CA (Aug. 2014).

Shannon R. Wheatman, Webinar Speaker, *Crafting Class Settlement Notice Programs: Due Process, Reach, Claims Rates, and More*, Strafford Publications (Feb. 2014).

Shannon R. Wheatman, *Cutting Through the Clutter: Eight Tips for Creatively Engaging Class Members and Increasing Response*, CLASS ACTION LITIGATION REPORT, 15 CLASS 88 (Jan. 24, 2014).
Shannon Wheatman & Michelle Ghiselli, *Privacy Policies: How To Communicate Effectively with Consumers*, International Association of Privacy Professionals (2014).

Shannon R. Wheatman, Speaker, *Report on Model Jury Instructions in Civil Antitrust Cases, Presentation*,



American Antitrust Institute's 7th Annual Private Antitrust Enforcement Conference, Washington, DC (Dec. 2013).

Shannon R. Wheatman, Speaker, Class Action Notice, Reach & Administration, CLE International's 9th Annual Class Action Conference, Washington, DC (Oct. 2013).

Shannon R. Wheatman, *Ensuring Procedural Fairness Through Effective Notice,* in NATIONAL CONFERENCE ON CLASS ACTIONS: RECENT DEVELOPMENTS IN QUÉBEC, IN CANADA AND IN THE UNITED STATES 83-99 (Yvon Blais ed., 2013).

Shannon R. Wheatman, Speaker, *Class Action Developments and Settlements*, 18th Annual Consumer Financial Services Institute, New York, New York (Apr. 2013).

Shannon R. Wheatman, Speaker, *Recent Trends in Class Actions in the United States*, National Conference on Class Actions: Recent Developments in Québec, in Canada and in the United States, Montreal, Canada (Mar. 2013).

Shannon R. Wheatman, Speaker, *Report on Model Jury Instructions in Civil Antitrust Cases, Presentation*, American Antitrust Institute's 6th Annual Private Antitrust Enforcement Conference, Washington, DC (Dec. 2012).

Shannon R. Wheatman & Katherine M. Kinsella, *International Class Action Notice*, in WORLD CLASS ACTION: A GUIDE TO GROUP AND REPRESENTATIVE ACTIONS AROUND THE GLOBE 673-686 (Paul Karlsgodt ed., 2012).

Katherine Kinsella & Shannon Wheatman, *Class Notice and Claims Administration*, in PRIVATE ENFORCEMENT OF ANTITRUST LAW IN THE UNITED STATES: A HANDBOOK 338–348 (Albert A. Foer & Randy M. Stutz eds., 2012).

Shannon R. Wheatman, Webinar Speaker, *Class Action Notice Requirements: Challenges for Plaintiffs and Defendants*, Strafford Publications (July 2012).

Shannon R. Wheatman, Webinar Speaker, *How to Craft Plain Language Privacy Notices*, Int'l Assoc. of Privacy Professionals (Oct. 2011).

Shannon R. Wheatman, Speaker, *Improving Take-Up Rates in Class Actions*, The Canadian Institute's 12th Annual National Forum on Class Actions, Ontario, Canada (Sept. 2011).



Shannon R. Wheatman & Terri R. LeClercq, *Majority of Publication Class Action Notices Fail to Satisfy Rule 23 Requirements*, 30 REV. LITIG. 53 (2011).

Shannon R. Wheatman & Terri R. LeClercq, *Majority of Publication Class Action Notices Fail to Satisfy Rule 23 Requirements*, CLASS ACTION LITIGATION REPORT, 12 CLASS 560, (June 24, 2011).

Katherine Kinsella & Shannon Wheatman, *Class Notice and Claims Administration*, in THE INTERNATIONAL PRIVATE ENFORCEMENT OF COMPETITION LAW 264–274 (Albert A. Foer & Jonathan W. Cuneo eds., 2010).

Shannon R. Wheatman, Speaker, *Majority of Publication Class Action Notices Fail to Satisfy Plain Language Requirements*, Clarity International Conference, Lisbon, Portugal (Oct. 2010).

Shannon R. Wheatman, Webinar Speaker, *Class Action Notification with Electronic Media: Emerging Legal Issues*, Stratford Publications (Sept. 2010).

Shannon R. Wheatman & Thomas E. Willging, *Does Attorney Choice of Forum in Class Action Litigation Really Make a Difference?* 17 CLASS ACTIONS & DERIVATIVES SUITS 1 (2007).

Todd B. Hilsee, Gina M. Intrepido & Shannon R. Wheatman, *Hurricanes, Mobility and Due Process: The "Desire-to-Inform" Requirement for Effective Class Action Notice Is Highlighted by Katrina*, 80 TULANE L. REV. 1771 (2006).

Thomas E. Willging & Shannon R. Wheatman, *Attorney Choice of Forum in Class Action Litigation: What Difference Does it Make?* NOTRE DAME L. REV., 81 (2), 101, 161 (2006).

Todd B. Hilsee, Shannon R. Wheatman & Gina M. Intrepido, *Do you really want me to know my rights? The ethics behind due process in class action notice is more than just plain language: A desire to actually inform*. GEO. J. LEGAL ETHICS, 18 (4), 1359-1382 (2005).

Thomas E. Willging & Shannon R. Wheatman, *An Empirical Examination of Attorneys' Choice of Forum in Class Action Litigation*. FEDERAL JUDICIAL CENTER (2005).

Elizabeth C. Wiggins & Shannon R. Wheatman, *So what's a concerned psychologist to do? Translating the research on interrogations, confessions, and entrapment into policy*, in INTERROGATIONS, CONFESSIONS AND ENTRAPMENT 265–280 (G. Daniel Lassiter ed., 2004).



Thomas E. Willging & Shannon R. Wheatman, *Attorneys' Experiences and Perceptions of Class Action Litigation in Federal and State Courts. A Report to the Advisory Committee on Civil Rules Regarding a Case Based Survey*. FEDERAL JUDICIAL CENTER (2003).

Shannon R. Wheatman, *Survey of Bankruptcy Judges on Effectiveness of Case-Weights*. FEDERAL JUDICIAL CENTER (2003).

Elizabeth C. Wiggins & Shannon R. Wheatman, *Judicial Evaluation of Bankruptcy Judges*. FEDERAL JUDICIAL CENTER (2003).

Robert Niemic, Thomas Willging, & Shannon Wheatman, *Effects of Amchem/Ortiz on Filing of Federal Class Actions: Report to the Advisory Committee on Civil Rules*. FEDERAL JUDICIAL CENTER (2002).

Shannon Wheatman, Robert Niemic & Thomas Willging, *Report to the Advisory Committee on Civil Rules: Class Action Notices*. FEDERAL JUDICIAL CENTER (2002).

Elizabeth C. Wiggins & Shannon R. Wheatman, *Implementation of Selected Amendments to Federal Rule of Civil Procedure 26 by United States Bankruptcy Courts*. FEDERAL JUDICIAL CENTER (2001).

Shannon R. Wheatman & David R. Shaffer, *On finding for defendants who plead insanity: The crucial impact of dispositional instructions and opportunity to deliberate*. LAW & HUM. BEH., 25(2), 165, 181 (2001).

Shannon R. Wheatman, *Distance Learning in the Courts*. FEDERAL JUDICIAL CENTER (2000).

David R. Shaffer & Shannon R. Wheatman, *Does personality influence the effectiveness of judicial instructions?* PSYCHOL. PUB. POL'Y & L., 6, 655, 676 (2000).

## Court Testimony

*In re: Think Finance, LLC,* No. 17-33964 (Bankr. N.D. Tex.).

*In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Prods. Liability Litig.*, MDL No. 2672 (N.D. Cal.).

*State v. Farmer Group Inc.*, No. D-1-GV-02-002501(D. Ct. Tex., Travis County).

*Scharfstein v. BP West Coast Prods., LLC*, No. 1112-17046 (Cir. Ct. Ore.).



*Spillman v. Domino's Pizza*, No. 10-CV-349 (M.D. La.).

*PRC Holdings LLC v. East Resources, Inc.*, No. 06-C-81 (Cir. Ct. W. Va.).

*Guidry v. Am. Public Life Ins. Co.*, No. 2008-3465 (14th Jud. Dist. Ct., Calcasieu Parish).

*Webb v. Liberty Mutual Ins. Co.*, No. CV-2007-418-3 (Cir. Ct. Ark).

*Beasley v. The Reliable Life Ins. Co.*, No. CV-2005-58-1 (Cir. Ct. Ark).

## Depositions

*In re: Think Finance, LLC,* No. 17-33964 (Bankr. N.D. Tex.).

*Hale v. CNX Gas Co., LLC*, No. 10-CV-59 (W.D. Va.).

*Thomas v. A. Wilbert Sons, LLC*, No. 55,127 (18th Jud. Dist. Ct., Iberville Parish).

## Judicial Comments

*Ferrell v. U-Haul*, No. 11-C-1427 (Cir. Ct. W. Va.)
In overruling objections to the notice program, the Court found that "Dr. Wheatman is one of the foremost experts on class notice and has been qualified as a class notice expert in both the courts of this state (including this Court) and nationwide." - Hon. Joanna I. Tabit (2018)

*Jabbari v. Wells Fargo*, No. 15-CV-02159 (N.D. Cal.)
"In addition to that robust direct mail and email notice program, the Settlement provided an extensive media and advertising component. *See* Wheatman Decl. (ECF 183). That included printing a color publication notice in national news outlets and Spanish-language outlets. Id. ¶¶ 17-19. "Banner ads" were also placed on websites, using targeted ad campaigns. Id. ¶ 23. Supplementing all of these efforts was a media outreach program designed to drive awareness of the Settlement and point Settlement Class Members to the Settlement Website, www.WFSettlement.com, which provided notice, frequently asked questions, and key court documents. Id. ¶¶ 28-33 . . . In short, the parties and their Court-appointed experts used every reasonable tool to create and implement and [sic] wide-ranging program to provide the best notice practicable to potential Settlement Class Members . . . Because the Court finds that the Notice complied with due process and the requirements of Rule 23, it overrules objections to the Notice." - Hon. Vince Chhabria (2018)

*Good v. West Virginia American Water Co.*, No. 14-CV-1374 (S.D.W. Va.)
"The Notice transmitted to the Settlement Class met the requirements of Fed. R. Civ. P. 23(c), constituted the best notice practicable under the circumstances, and satisfied the Constitutional due



process requirements of notice with respect to all Settlement Class Members, . . . The Notice Program was executed by qualified and experienced Notice Administrators . . ." - Hon. John T. Copenhaver, Jr. (2018)

*In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010,* MDL No. 2179 (E.D. La.) (Haliburton and Transocean settlements)
"The Class Notices were 'noticeable, clear, concise, substantive, and informative.' Wheatman Decl. ¶ 4(b).14 The notice distribution method satisfied Rule 23(c)(2), as it was the 'best notice that is practicable under the circumstances.' Fed. R. Civ. P. 23(c)(2); *see* Wheatman Decl. ¶ 5. The notice contents satisfied Rule 23(c)(2)(B)(i)–(vii) . . . " - Hon. Carl J. Barbier (2017)

*In re Automotive Parts Antitrust Litig.,* MDL No. 2311 (E.D. Mich.)
"EPPs, through EPPs' class action notice expert consultant, Kinsella Media, LLC ("Kinsella"), implemented a class-notice program utilizing paid and earned media. See, e.g., Declaration of Shannon R. Wheatman, Ph.D. . . . Notice was published in *Field & Stream, ESPN The Magazine, People, Reader's Digest, Southern Living, Woman's Day, The Wall Street Journal, Auto Rental News, Automotive Fleet, Reuters, NBC Money, Consumer Reports,* and *Automotive Weekly,* and online media efforts through banner advertisements on outlets like Facebook and Yahoo!. The banner advertisements . . . have been seen a total estimated 354,593,140 times. The earned media component of this notice program included a multimedia news release distributed on PR Newswire's US1 National Circuit on November 29, 2016. Id. [T]he release was republished across 171 news websites and received over 11,415 views. Id. A total of 248 journalists engaged with the multimedia news release, and major national outlets that covered the Settlements, include: *Reuters, Associated Press, Boston Globe, Chicago Tribune, The Today Show, NBC Money, Consumer Reports,* and *Automotive Weekly.* Other earned media efforts . . . included statewide press releases in the EPP States as well as outreach to 275 national and local reporters for print and television." - Hon. Marianne O. Battani (2017)

*In re Volkswagen "Clean Diesel" Marketing, Sales Practs., and Prods. Liability Litig.*, MDL No. 2672 (N.D. Cal.)
"The Notice Program included 811,944 mailings, 453,797 emails, 125 newspaper insertions and targeted online advertising.  The Court is satisfied that the extensive Notice Program was reasonably calculated to notify Class Members of the proposed Settlement.  The Notice 'apprise[d] interested parties of the pendency of the action and afford them an opportunity to present their objections.' *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  Indeed, the Notice Administrator reports the Notice Program reached more than 90% of potential Class Members." - Hon. Charles R. Breyer (2016)

*In re Transpacific Passenger Air Trans. Antitrust Litig.*, MDL No. 1913 (N.D. Cal.)
In overruling an objection that direct notice should have been done, the Court found "[T]he notice



program, which the Court already approved, reached 80.3% of the potential class members in the United States an average of 2.6 times and "at least 70%" of members of the Settlement Classes living in Japan. See Mot. for Final Approval at 4; Wheatman Decl. ¶¶ 8, 18. The notice also included paid media in 13 other countries. Id.; ¶ 25. There were 700,961 unique visits to the website, toll-free numbers in 15 countries received over 2,693 calls, and 1,015 packages were mailed to potential class members. Id. ¶¶ 6, 9, 10. It was therefore adequate." - Hon. Charles R. Breyer (2015)

*In re Target Corp. Customer Data Security Breach Litig.*, MDL No. 2522 (D. Minn)
"The parties accomplished notice here through direct notice, paid and earned media, and an informational website . . . [T]he notice program reached 83% of potential class members. The notice here comports with Rule 23(e) . . . Class notice reached more than 80 million people, with direct notice sent to 61 million consumers . . . [The] infinitesimally small amount of opposition weighs in favor of approving the settlement." - Hon. Paul A. Magnuson (2015)

*The Shane Grp., Inc., v. Blue Cross Blue Shield of Michigan*, No. 10-CV-14360 (D. Minn.)
"The notice to Settlement Class Members consisted of postcard notices to millions of potential class members, as well as advertisements in newspapers and newspaper supplements, in *People* magazine, and on the Internet . . . The Court finds that this notice . . . was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to be provided with notice; and . . . fully complied with due process principles and Federal Rule of Civil Procedure 23." - Hon. Denise Page Hood (2015)

*Mirakay v. Dakota Growers Pasta Co., Inc.*, No. 13-CV-4229 (D. N.J.)
"Having heard the objections made, the Court is unimpressed with the Objectors argument that there was somehow insufficient notice . . . This notice program has fully informed members of their rights and benefits under the settlement, and all required information has been fully and clearly presented to class members. Accordingly, this widespread and comprehensive campaign provides sufficient notice under the circumstances, satisfying both due process and Rule 23 and the settlement is therefore approved by this Court." - Hon. Joel A. Pisano (2014)

*Spillman v. Dominos Pizza, LLC.*, No. 10-CV-349 (M.D. La.)
"At the fairness hearing notice expert Wheatman gave extensive testimony about the design and drafting of the notice plan and its implementation, the primary goal of which was to satisfy due process under the applicable legal standards . . . Wheatman, who has extensive experience developing plain-language jury instructions, class action notices and rules of procedure, testified that the notice was composed at a ninth grade reading level because many adults read below a high school level." - Hon. Stephen C. Riedlinger (2013)

*Kramer v. B2Mobile, LLC*, No. 10-CV-02722 (N.D. Cal.)



"The Court approved Notice Plan to the Settlement Classes . . . was the best notice practicable under the circumstances, including comprehensive nationwide newspaper and magazine publication, website publication, and extensive online advertising. The Notice Plan has been successfully implemented and satisfies the requirements of Federal Rule of Civil Procedure 23 and Due Process." - Hon. Claudia A. Wilken (2012)

*Cather v. Seneca-Upshur Petroleum, Inc.,* No. 09-CV-00139 (N.D. W. Va.)
 "The Court finds that Class Members have been accorded the best notice as is practical under the circumstances, and have had the opportunity to receive and/or access information relating to this Settlement by reading the comprehensive written notice mailed to them . . . or by reading the published Notice in the local newspapers . . . The Court further finds that the Notice provided to the members of the Settlement Class had been effective and has afforded such class members a reasonable opportunity to be heard at the Final Fairness Hearing and to opt-out of the subject settlement should anyone so desire."
- Hon. Irene M. Keeley (2012)

*In re Checking Account Overdraft Fee Litig.*, MDL No. 2036 (S.D. Fla.)  (JP Morgan Settlement)
"The Court finds that the Settlement Class Members were provided with the best practicable notice; the notice was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Shutts*, 472 U.S. at 812 (quoting *Mullane*, 339 U.S. at 314-15). This Settlement with Chase was widely publicized, and any Settlement Class Member who wished to express comments or objections had ample opportunity and means to do so." - Hon. James Lawrence King (2012)

*Purdy v. MGA Ins. Co.,* No. D412-CV-2012-298 (N.M. 4th Jud. Dist. Ct.)
"Notice of the Settlement Class was constitutionally adequate, both in terms of it substance and the manner in which it was disseminated.  The Notice contained the essential elements necessary to satisfy due process . . . [T]he Notice also contained a clear and concise Claim Form, and a described a clear deadline and procedure for filing of Claims.  Notice was directly mailed to all Class Members whose current whereabouts could be identified by reasonable effort.  Notice reached a large majority of the Class Members.  The Court finds that such notice constitutes the best notice practicable." - Hon. Eugenio Mathis (2012)

*Soto v. Progressive Mountain Ins. Co.*, No. 2002-CV-47 (Dist. Ct. Colo.)
"Notice of the Settlement Class was constitutionally adequate, both in terms of its substance and the manner in which it was disseminated. The Notice contained the essential elements necessary to satisfy due process . . . Finally, the Notice also contained a clear and concise Claim Form, and described a clear deadline and procedure for filing of claims . . . Notice reached a large majority of the Class Members. The Court finds that such notice constitutes the best notice practicable." - Hon. J. Steven Patrick (2010)



*In re Katrina Canal Breaches*, No. 05-CV-4182 (E.D. La.)

"The notice here was crafted by Shannon Wheatman, Ph.D., whose affidavit was received as evidence . . . The entire notice was drafted in plain, comprehensible language . . . The Court finds this notice adequately reached the potential class." - Hon. Stanwood R. DuVal, Jr. (2009)

*Jones v. Dominion Transmission Inc.*, No. 06-CV-00671 (S.D. W. Va.)

"The Parties' notice expert Shannon R. Wheatman, Ph.D. . . . testified that in this case . . . that the mailed notices reached approximately 95.4 percent of the potential class . . . I HOLD that personal jurisdiction exists over the Class Members because notice was reasonable and afforded the Settlement Class an opportunity to be heard and to opt out." - Hon. Joseph R. Goodwin (2009)

*Guidry v. Am. Public Life Ins. Co.*, No. 2008-3465 (14th Jud. Dist. Ct.)

"The facts show that the notice plan . . . as adequate to design and implementation . . . Dr. Shannon R. Wheatman, a notice expert, also testified at the fairness hearing as to the sufficiency of the notice plan. Dr. Wheatman testified that the notice form, content, and dissemination was adequate and reasonable, and was the best notice practicable." - Hon. G. Michael Canaday (2008)

*Webb v. Liberty Mutual Ins. Co.*, (March 3, 2008) No. CV-2007-418-3 (Cir. Ct. Ark)

"Ms. Wheatman's presentation today was very concise and straight to the point . . . that's the way the notices were . . . So, I appreciate that . . . Having admitted and reviewed the Affidavit of Shannon Wheatman and her testimony concerning the success of the notice campaign, including the fact that written notice reached 92.5% of the potential Class members, the Court finds that it is unnecessary to afford a new opportunity to request exclusion to individual Class members who had an earlier opportunity to request exclusion but failed to do so . . . The Court finds that there was minimal opposition to the settlement. After undertaking an extensive notice campaign to Class members of approximately 10,707 persons, mailed notice reached 92.5% of potential Class members." - Hon. Kirk D. Johnson (2008)

*Sherrill v. Progressive Northwestern Ins. Co.*, No. DV-03-220 (18th D. Ct. Mont.)

"Dr. Wheatman's affidavit was very informative, and very educational, and very complete and thorough about the process that was undertaken here . . . So I have reviewed all of these documents and the affidavit of Dr. Wheatman and based upon the information that is provided . . . and the significant number of persons who are contacted here, 90 percent, the Court will issue the order." - Hon. Mike Salvagni (2008)

*Beasley v. The Reliable Life Ins. Co.*, No. CV-2005-58-1 (Cir. Ct. Ark)

"[T]he Court has, pursuant to the testimony regarding the notification requirements, that were specified and adopted by this Court, has been satisfied and that they meet the requirements of due process. They are fair, reasonable, and adequate. I think the method of notification certainly meets the requirements of



due process . . . So the Court finds that the notification that was used for making the potential class members aware of this litigation and the method of filing their claims, if they chose to do so, all those are clear and concise and meet the plain language requirements and those are completely satisfied as far as this Court is concerned in this matter." - Hon. Joe Griffin (2007)

## Education and Experience

*Education*

Ph.D., Social Psychology, 2001; The University of Georgia, Athens, GA
Dissertation Title: *The effects of plain language drafting on layperson's comprehension of class action notices.*

M.S., Social Psychology, 1999; The University of Georgia, Athens, GA
Thesis Title: *Effects of verdict choice, dispositional instructions, opportunity to deliberate, and locus of control on juror decisions in an insanity case.*

M.L.S., Legal Studies, 1996; The University of Nebraska-Lincoln, Lincoln, NE

B.A., Psychology, 1993; Millersville University of Pennsylvania, Millersville, PA
Honor's Thesis Title: *The effects of inadmissible evidence and judicial admonishment in individual versus group decisions in a mock jury simulation.*

*Related Experience*

Hilsoft Notifications
Souderton, PA
2004-2009

Dr. Wheatman was the Vice President (2006-2009) and Notice Director (2004-2009) at Hilsoft Notifications, a legal notification firm.

Federal Judicial Center
Washington, DC
2000-2004



Dr. Wheatman was a Research Associate at the Federal Judicial Center.  The Federal Judicial Center is the education and research agency for the Federal Courts.  The Research Division performs empirical and explanatory research on federal judicial processes and court management.  Dr. Wheatman worked with the Civil Rules Advisory Committee on a number of class action studies and with the Bankruptcy Administration Committee on judicial evaluations.

### *Supplementary Background*

Dr. Wheatman has a strong statistical background, having completed nine graduate level courses as well as teaching undergraduate statistics at the University of Georgia.



# EXHIBIT 2

<u>U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA</u>

# Chinese Drywall Settlement

### *Your Rights Could Be Affected*

*A Federal Court authorized this notice.  This is not a solicitation.*

- Please read this notice carefully and in its entirety: you may be entitled to receive a payment in the proposed settlement <u>if</u> you are a member of the settlement class.

- This is a summary.  The full settlement agreement is available at the website: www.ChineseDrywallSettlement.com.  Class members are strongly urged to consult with legal counsel concerning the full settlement agreement, including their rights and obligations under the settlement.

- The Settlement Class consists of: (1) all Class Members in the *Amorin* Class certified in MDL No. 2047 in *In re Chinese-Manufactured Products Liability Litigation*, 2014 WL 4809520 (E.D. La. Sept. 26, 2014) ("*Amorin* Plaintiffs"); (2) all Plaintiffs who are named on one or more of the *Brooke* Complaints ("*Brooke* Plaintiffs"); and (3) all other property owners with Chinese Drywall alleged to be attributed to Taishan and/or the Additional Released Parties ("Absent Class Members").  *Amorin* Plaintiffs and *Brooke* Plaintiffs are collectively referred to as "Known Class Members."

- To obtain additional information, the Master Spreadsheet of Known Class Members, other important documents, and case updates, visit the website www.ChineseDrywallSettlement.com.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **HOW TO GET A PAYMENT** | If you are a Known Class Member whose information is included in the Master Spreadsheet, and you agree with the information on the Master Spreadsheet relating to your Claim, you do not have to do anything to get a payment from the settlement.<br><br>If you are not listed on the Master Spreadsheet, you must complete and submit a Claim Form online or mail a paper Claim Form to the Claims Administrator to share in the settlement.  The deadline to file a claim will be no earlier than <mark>Month X, 20XX [120 days from preliminary approval],</mark> and will be updated on the website. |
| **EXCLUDE YOURSELF** | If you ask to be excluded from the settlement, you won't be eligible to share in the benefits.  But you keep any rights to sue the Defendants on your own about the same legal claims in this lawsuit.  You must exclude yourself by <mark>Month X, 2019</mark>. |
| **OBJECT TO THE SETTLEMENT** | Write to the Court explaining why you have an objection to the settlement.  You must object to the settlement by <mark>Month X, 2019</mark>. |
| **GO TO THE HEARING** | Ask to speak in Court about the settlement. |

These rights and options – **and the deadlines to exercise them** – are explained in this Notice.

| WHAT THIS NOTICE CONTAINS |
|---|

**BASIC INFORMATION** ..................................................................................................Page 3
   1.  What is this Notice about?
   2.  What is the lawsuit about?
   3.  What is a class action?
   4.  Why is there a Settlement?

**WHO IS INCLUDED** ........................................................................................................Page 4
   5.  How do I know if I am included in the Settlement Class?
   6.  What is "Covered Chinese Drywall?"

**THE SETTLEMENT'S BENEFITS** ....................................................................................Page 5
   7.  What does the Settlement provide?
   8.  How much money will I receive?
   9.  What do Known Class Members have to do to get a payment from the Settlement?
  10.  What do Absent Class Members have to do to get a payment from the Settlement?
  11.  What if I disagree with my Allocation Amount?

**HOW TO GET BENEFITS** ................................................................................................Page 7
  12.  How do I get benefits?
  13.  When will I get benefits?

**REMAIN IN THE SETTLEMENT CLASS** ........................................................................Page 7
  14.  What am I giving up if I stay in the Settlement Class?

**EXCLUDE YOURSELF FROM THE SETTLEMENT CLASS** ................................................Page 8
  15.  How do I get out of the Settlement Class?
  16.  If I don't exclude myself, can I sue for the same thing later?
  17.  If I exclude myself, can I still get benefits?

**OBJECT TO OR COMMENT ON THE SETTLEMENT** ........................................................Page 9
  18.  How do I object to or comment on the Settlement?
  19.  What is the difference between excluding myself from the Class and objecting to the Settlement?

**THE LAWYERS REPRESENTING YOU** ..........................................................................Page 10
  20.  Do I have a lawyer representing me?
  21.  How will the lawyers be paid?

**THE FAIRNESS HEARING** ............................................................................................Page 10
  22.  When and where will the Fairness Hearing take place?
  23.  Do I have to come to the hearing?
  24.  May I speak at the hearing?

**GET MORE INFORMATION** ..........................................................................................Page 11
  25.  Where can I get more information?

## BASIC INFORMATION

| 1.  What is this Notice about? |

The purpose of this Notice is to inform you that:

    (a) a class of which you may be a member has been preliminarily certified for consideration of a proposed settlement with Taishan[1] (the "Settlement");

    (b) a Settlement Agreement regarding claims against the Defendants (the "Settlement Agreement"), which provides for the creation of a settlement fund (the "Settlement Fund") and dismissal of all actions against the Defendants, was entered into on August __, 2019, and submitted to the Court for its approval; and

    (c) a hearing on the fairness, reasonableness, and adequacy of the Settlement will be held on Month X, 2019, in Courtroom C-456 of the United States Courthouse, 500 Poydras Street, New Orleans, LA 70130.

| 2. What is the lawsuit about? |

On June 15, 2009, the Judicial Panel on Multidistrict Litigation created MDL 2047 by transferring to Judge Fallon of the Eastern District of Louisiana (the "Court"), lawsuits that were filed in federal district courts throughout the Gulf Coast and mid-Atlantic regions of the United States by property owners whose homes or other properties were alleged to have been damaged by Chinese Drywall. Plaintiffs sued the manufacturers of Chinese Drywall as well as related companies and other entities in the chain of distribution and their insurers. The lawsuits seek money damages on behalf of a class of persons and entities with claims against Defendants arising out of Chinese Drywall. Settlements were reached with some defendants beginning in 2011. The litigation against Taishan, BNBM, BNBM Group, CNBM, CNBM Group, and the SASAC has been ongoing. There are two major groups of Plaintiffs: those that were named on an *Amorin* Complaint, and those that were named on a *Brooke* Complaint.

The Court previously certified the *Amorin* class action. There is no class certified in the *Brooke* action. In addition, Taishan was found to be in default in the *Amorin* action, but not in the *Brooke* action. Additional Defendants were also defaulted in *Amorin*, but no defaults have been entered in the *Brooke* action. In circumstances where there is a default, the Defendants contest whether they manufactured the drywall at issue and whether some of the claimed damages were caused by drywall that they made. To date, no court has fully determined the merits of these issues. As to the non-defaulted actions, Defendants deny liability.

---

[1] "Taishan" refers Taishan Gypsum Company Ltd. f/k/a Shandong Taihe Dongxin Co. Ltd., and Taian Taishan Plasterboard Co. Ltd. (collectively, "Taishan"), as well as individuals and entities related to Taishan. The Additional Released Parties are: (1) Beijing New Building Materials Public Limited Company ("BNBM"); (2) Beijing New Building Materials (Group) Co., Ltd. ("BNBM Group"); (3) China National Building Materials Co., Ltd. ("CNBM"); (4) China National Building Materials Group Corporation ("CNBM Group"); and (5) the State-Owned Assets Supervision and Administration Commission of the State Council ("SASAC"), as well as individuals and entities related to each. Taishan and the Additional Released Parties are collectively referred to as the "Defendants."

**3. What is a class action?**

In a class action, one or more people called class representatives sue on behalf of a group or a "class" of people who have similar claims.  In a class action, the court resolves the issues for all class members, except for those who exclude themselves from the class.

**4. Why is there a Settlement?**

Counsel for the Settlement Class ("Settlement Class Counsel") entered into the Settlement after weighing the substantial benefits that Class Members will receive as a result of the Settlement against the risk of non-recovery, the likelihood of additional delay due to appeals from any judgment, and the risk of inability to collect a judgment from foreign Defendants.  Settlement Class Counsel consider it to be in the best interests of the Settlement Class to settle with Taishan and the Additional Released Parties and believe that the Settlement is fair, reasonable, and adequate for the Settlement Class.

Although Taishan denies all liability and the existence of any class (other than for settlement purposes) in the Litigation, Taishan considers it desirable to settle the Litigation on the terms proposed to avoid further expense and inconvenience.

## WHO IS INCLUDED

**5. How do I know if I am included in the Settlement Class?**

The Settlement Class includes:

(1) all Class Members in the *Amorin* Class certified in MDL No. 2047 in *In re Chinese-Manufactured Products Liability Litigation*, 2014 WL 4809520 (E.D. La. Sept. 26, 2014) ("*Amorin* Plaintiffs");
(2) all Plaintiffs who are named on one or more of the *Brooke* Complaints[2] ("*Brooke* Plaintiffs"); and
(3) all other property owners with Chinese Drywall alleged to be attributed to Taishan and/or the Additional Released Parties ("Absent Class Members").

*Amorin* Plaintiffs and *Brooke* Plaintiffs are collectively referred to as "Known Class Members."

Excluded from the Class are (1) Plaintiffs listed on Exhibit 1 to the Settlement Agreement (Exhibit 1 lists 498 Plaintiffs who are included in a separate settlement agreement with Taishan); (2) the named Plaintiff and putative class members in *The Mitchell Co., Inc. v. Knauf Gips KG, et al.*, Civil Action No. 09-4115 (E.D. La.) (which consist of commercial builders); and (3) Plaintiffs who asserted Claims against Taishan and/or the Additional Released Parties, but whose Claims were dismissed for failure to complete a Supplemental Plaintiff Profile Form or by motion for voluntary dismissal.

---

[2] The operative *Brooke* Complaints are: *Brooke, et al. v. The State-Owned Assets Supervision and Administration Commission of the State Council, et al*., Civ. Action No. 15-4127 (E.D. La.); *Brooke, et al. v. The State-Owned Assets Supervision and Administration Commission of the State Council, et al*., Civ. Action No. 15-6631 (S.D. Fla.) (Miami Case No. 15-24348); *Brooke, et al. v. The State-Owned Assets Supervision and Administration Commission of the State Council, et al.*, Civ. Action No. 15-6632 (E.D. Va.) (Norfolk Case No. 15-506).

**6. What is "Covered Chinese Drywall?"**

"Covered Chinese Drywall" means all drywall products alleged to be attributable to Taishan and/or the Additional Released Parties, including but not limited to those products identified in the Taishan Product ID Catalog (*see* Exhibit 2 of the Settlement Agreement available at www.ChineseDrywallSettlement.com): (a) BNBM and Dragon Brand; (b) C&K; (c) Chinese Manufacturer #2 (purple stamp); (d) Crescent City Gypsum; (e) DUN; (f) IMT Gypsum; (g) ProWall; (h) TAIAN TAISHAN and Taihe edge tape; (i) MADE IN CHINA MEET[S] OR EXCEED[S]; (j) various Drywall dimensions, including 4feet[x/*]12feet[x/*]1/2inch; (k) Venture Supply; and (l) White Edge Tape, boards with no markings or boards with no markings other than numbers or letters. Covered Chinese Drywall excludes the following drywall products: Knauf, Knauf Tianjin, KPT, Bedrock, ProRoc, Panel Rey, IMG, USG, Shamrock Gold, Lafarge, Georgia Pacific, National Gypsum, and any drywall manufactured outside of the People's Republic of China.

## THE SETTLEMENT'S BENEFITS

**7. What does the Settlement provide?**

The Settlement Agreement provides for the funding by Taishan of a Settlement Fund in the amount of $248,000,000.

A portion of the Settlement Fund will, subject to Court approval, be used to pay the costs of mailing individual Class Notice to the *Amorin* Plaintiffs and *Brooke* Plaintiffs, and other reasonable administrative expenses from the retention and/or services of the Allocation Neutral and the Claims Administrator. Other than the initial payment of those costs, no funds from the Settlement Fund will be distributed to any Class Member before the Court has granted final approval to the Settlement and all appeals are resolved.

**8. How much money will I receive?**

The amount of money that you receive will be determined by the application of an allocation model and objective allocation criteria. The Court appointed an Allocation Neutral, Mr. Cal Mayo, to develop a model for the allocation of Settlement Funds ("Allocation Model") among Eligible Class Members and to determine the amount of payments to Eligible Class Members. The Allocation Model is available at www.ChineseDrywallSettlement.com. This Allocation Model takes into consideration certain criteria to determine payments ("Objective Allocation Criteria"), including, but not limited to: (a) Under Air Square Footage of the subject Affected Property, (b) Product Identification, (c) Affected Property Ownership Status, (d) Affected Property Remediation Status, (e) Set-Offs, (f) Assignments of Class Members' rights to pursue claims, and (g) whether a claimant is an *Amorin* Plaintiff or a *Brooke* Plaintiff, or an absent Class Member.

The Court-appointed Claims Administrator, BrownGreer, will, among other things, apply the Allocation Model to determine each Eligible Class Member's allocation of Settlement Funds ("Allocation Amount"). The exact Allocation Amounts will depend on the number of participants in the Settlement and cannot be determined at this time. However, the Claims Administrator has calculated an *estimated* Allocation Amount ("Allocation Estimate") for each Known Class Member listed on the Master Spreadsheet. If you are a Known Class Member listed on the Master Spreadsheet, your Allocation Estimate is enclosed with this Notice. Note that the Allocation Estimate is a gross total (before deductions for attorneys' fees and costs), and will change upon completion of the claims process and Final Approval. Your current Allocation Estimate may be higher or lower than your final Allocation Amount.

The Allocation Amount is intended to provide compensation for remediation damages as well as other losses, which include loss of use and enjoyment, lost equity, diminution of value, damages for bankruptcies, foreclosures and/or short sales, stigma damages, attorneys' fees, and/or punitive damages. **There will be no payments of Settlement Funds to Class Members for Claims of personal injury or bodily injury, however, those claims are being released by this Settlement.**

There will be only one Allocation Amount per Affected Property. Depending on the circumstances, an Allocation Amount may need to be divided among Eligible Class Members asserting Claims relating to the same Affected Property. The Claims Administrator will have sole discretion to determine the division of an Allocation Amount among Eligible Class Members, unless the Allocation Model directs a specific division and distribution of the Allocation Amount applicable to the circumstances.

In addition, the Parties intend to ask the Court to authorize additional Incentive Awards of up to $10,000 to the Priority Plaintiffs in Florida and the Select Claimants in Louisiana who are members of the Settlement Class (one incentive award per property), and up to $2,500 to the Settlement Class Representatives (to the extent they are not Florida Priority Plaintiffs or Louisiana Select Claimants), for their prior efforts in participating in individualized discovery, including subjecting themselves for a deposition, and/or for serving as a Settlement Class Representative.

## 9. What do the Known Class Members have to do to get a payment from the Settlement?

The Known Class Members need to review the information on their Affected property that is available at the Settlement website (www.ChineseDrywallSettlement.com) in a document called the Master Spreadsheet. This document includes information on Known Class Member Claims with sufficient proof of Covered Chinese Drywall in the subject Affected Property. The Master Spreadsheet includes the following information for each Claim: (a) Under Air Square Footage, (b) Product Identification, (c) Ownership Status, (d) Remediation Status, (e) Set-Offs, (f) Assignments of rights to pursue Claims, (g) whether the claimant is an *Amorin* Plaintiff or a *Brooke* Plaintiff, and (h) any other objective fields to the Allocation Model approved by the Court.

Any Settlement Class Member who disputes the information on the Master Spreadsheet relating to his or her Claim will, by **Month X, 20XX [within thirty (35) days of the Preliminary Approval Order]**, provide to the Claims Administrator what he or she contends to be the correct information, as well as any supporting evidence or corroborating documentation. The Claims Administrator will, in its discretion, make changes, if any, that it deems appropriate to the Master Spreadsheet based on reliable supporting evidence and/or corroboration documentation provided by the Class Member to the Claims Administrator in support of the addition or change to the Master Spreadsheet.

## 10. What do Absent Class Members have to do to get a payment from the Settlement?

Absent Class Members and any other Class Members not listed on the Master Spreadsheet who seek an Allocation Amount must complete a court-approved Claim Form under oath and submit supporting proofs of Objective Allocation Criteria to the Claims Administrator no later than the deadline set by the Court for making a claim for an Allocation Amount, which will be within 30 days after Final Approval. The deadline to file a claim will be no earlier than **Month X, 20XX [120 days from preliminary approval],** and will be updated on the website.

In order to be considered eligible for an Allocation Amount, Absent Class Members must provide sufficient proof of Covered Chinese Drywall in the subject Affected Property.

## 11. What if I disagree with my Allocation Amount?

To determine the Allocation Amount, the Claims Administrator will apply the court-approved Allocation Model to the Objective Allocation Criteria (a) for Known Class Members as set forth in the Master Spreadsheet, as modified if necessary, and (b) for absent Class Members and any other Class Members not listed on the Master Spreadsheet, that is timely submitted in a Claim Form approved by the Court.

Each Class Member will be provided with an Allocation Amount determination by the Claims Administrator, and a brief summary or explanation of how the Class Member's objective facts and circumstances were applied under the Allocation Model. Any Class Member who believes that the Allocation Model has been misapplied to his or her Claim will have 30 days after being notified of their Allocation Amount to present a written objection, no longer than three-pages, double-spaced, to the Court. The record for appealing an Allocation Amount will be limited to (a) the original Master Spreadsheet submitted by the Parties, (b) any additional documents, evidence or information submitted by the Settlement Class Member to the Claims Administrator in a dispute over the information in the Master Spreadsheet; (c) the revised Master Spreadsheet as modified by the Claims Administrator; and/or (d) the Objective Allocation Criteria and supporting documentation submitted to the Claims Administrator by absent Class Members or any other Class Members not listed on the Master Spreadsheet. Class Members may not submit any new or additional evidence for purposes of appealing his or her Allocation Amount determination.

**The decision of the District Court with respect to appeals from Allocation Amount determinations will be final and binding on Class Members.**

## HOW TO GET BENEFITS

## 12. How do I get benefits?

If you are an *Amorin* Plaintiff or a *Brooke* Plaintiff whose information is included in the Master Spreadsheet, and you agree with the information on the Master Spreadsheet relating to your Claim, you do not have to do anything and you do not need to complete a Claim Form.

If you are an Absent Class Member or you are a Class Member who is not listed on the Master Spreadsheet, you must complete and submit a Claim Form online or mail a paper Claim Form in order to share in the Settlement. The deadline to file a claim will be no earlier than ==Month X, 20XX [120 days from preliminary approval],== and will be updated on the website. For additional information regarding completing a Claim Form, visit www.ChineseDrywallSettlement.com or call 1-800-000-0000.

## 13. When will I get benefits?

Settlement Class Members who are entitled to payments will receive their payments after the Court grants final approval to the Settlement (*see* "The Fairness Hearing" below) and after any appeals are resolved. If there are appeals, resolving them can take time. Please be patient.

## REMAIN IN THE SETTLEMENT CLASS

## 14. What am I giving up if I stay in the Settlement Class?

If you do nothing, you will automatically remain in the Settlement Class. You will be legally bound by all Court orders, which means you won't be able to separately sue, or continue to sue, the Defendants about

the legal claims in this case.  Alternatively, if you exclude yourself, you won't get any money from distributions to the Class.

In return for paying the Settlement Amount, the Defendants will be released for all claims relating to the facts underlying the lawsuit.  Once the Court grants final approval to the Settlement and after any appeals are resolved, the Class will irrevocably and unconditionally fully release and forever discharge all claims, whether or not such claims were asserted in the Litigation, against the Defendants.  If you have any questions, you can talk to Class Counsel listed in Question 20 for free or you can talk to your own lawyer.

## EXCLUDE YOURSELF FROM THE SETTLEMENT CLASS

### 15. Can I get out of the Settlement Class?

Yes.  Class  Members  may  exclude  themselves,  which  is  also  called "opting out" of the Settlement Class.  If you elect to opt out, you will be excluded from sharing in the benefits of this Settlement and from the binding effect of final approval of this Settlement and dismissal of the Litigation as to Taishan, BNBM, CNBM Group, CNBM, BNBM Group, and SASAC.

**If you do not wish to opt out, you do not have to do anything at this time.**

The notice of intent to opt-out must be in writing and postmarked no later than **Month X, 2019**.  The opt-out notice must include:

a) full name and current address of the person electing to opt-out,
b) address of the property allegedly damaged by Covered Chinese Drywall, and
c) signature of the individual Class Member.

To opt out, you must provide signed, written notice of your intention to opt out of the Settlement, and send the signed, written notice by first-class mail, post-marked no later than **Month X, 2019**, to these four addresses:

| Original to: | Copy to: |
|---|---|
| Arnold Levin and Sandra L. Duggan, Levin Sedran & Berman 510 Walnut Street, Suite 500 Philadelphia, PA 19106 | Stephen J. Herman Herman, Herman & Katz, LLC 820 O'Keefe Ave. New Orleans, LA 70113 |
| Copy to: | Copy to: |
| Richard J. Serpe Law Offices of Richard J. Serpe, PC 580 East Main St., Suite 310 Norfolk, VA 23510 | Patrick S. Montoya Colson Hicks Eidson 255 Alhambra Circle, Penthouse Coral Gables, FL 33134 |

To assure that each Class Member has adequate time for consideration of the Settlement, no opt-out will be effective if filed earlier than **Month XX, 20XX [21 days after commencement of notice period]**.

**If you wish to pursue an individual claim against Taishan, BNBM, BNBM GROUP, CNBM, CNBM GROUP, SASAC, or any of the additional released parties by litigation or otherwise, you must opt out.**  Otherwise, if the Settlement is approved, you will not be able to pursue claims against Taishan or the Additional Released Parties related to the Covered Chinese Drywall.

Taishan has reserved the right to terminate or withdraw from the Settlement seven days prior to the Fairness Hearing based on Class Member opt-outs exercised up to fourteen days prior to the Fairness Hearing.

### 16. If I don't exclude myself, can I sue for the same thing later?

No. If the Settlement is approved, the Court will enter an Order and Judgment dismissing the Litigation and discharging Defendants from all claims which were, or could have been, asserted by you or on your behalf arising from, concerning, or related to Covered Chinese Drywall.

**If you are a member of the Settlement Class, unless you have chosen to opt out of the Class, upon court approval of the Settlement you will be bound by the Settlement, including the judgment of dismissal.**

### 17. If I exclude myself, can I still get benefits?

No. If you exclude yourself from the Class, you will not be eligible for payments from the Settlement.

## OBJECTIONS TO THE SETTLEMENT

### 18. How do I object to the Settlement?

Class Members may object to the Settlement, in whole or in part.  Any objection(s) must be made in writing and must:

a) set forth whether it applies only to the objector, to a specific subset of the Class, or to the entire Class;

b) state with specificity the grounds for the objection;

c) include a statement as to whether the Class Member intends to appear at the Fairness Hearing either with or without the objector's counsel (who needs to be identified);

d) identify any witnesses intended to be called, the subject area of the witnesses' testimony, and all documents to be used or offered into evidence at the Fairness Hearing;

e) be signed by the Class Member and his, her or its counsel; an objection signed by counsel alone will not be sufficient;

f) contain the caption of MDL No. 2047 and any Litigation in which the Class Member is a named party;

g) include the name, mailing address, e-mail address, if any (an e-mail address is not required), and telephone number of the objecting Class Member; and

h) provide the address of the Affected Property to which the Class Member's claims relate.

The objection must be mailed, post-marked no later than ==**Month X, 2019**==, to Settlement Class Counsel:

| | |
|---|---|
| Arnold Levin and Sandra L. Duggan<br>Levin Sedran & Berman<br>510 Walnut Street, Suite 500<br>Philadelphia, PA 19106 | Stephen J. Herman<br>Herman, Herman & Katz, LLC<br>820 O'Keefe Ave.<br>New Orleans, LA 70113 |
| Richard J. Serpe<br>Law Offices of Richard J. Serpe, PC<br>580 East Main St., Suite 310<br>Norfolk, VA 23510 | Patrick S. Montoya<br>Colson Hicks Eidson<br>255 Alhambra Circle, Penthouse<br>Coral Gables, FL 33134 |

At the Fairness Hearing, any Class Member who has provided timely written notice of the intention to object to the Settlement following the procedures above may appear in person or by counsel and show cause why the Settlement should not be approved.  Such Class Member may present any admissible evidence relevant to the issues to be heard, provided that such Class Member has timely provided any and all papers in opposition to the Settlement upon which the objection may be based in accordance with the Settlement Agreement.

Failure to comply timely and fully with the procedures stated above will result in the invalidity and dismissal of any objection.  In addition, Class Members who fail to file and serve timely written objections in accordance with the procedures set forth above will be deemed to have waived any objections, will not be heard at the Fairness Hearing, and will be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement.

| **19. What is the difference between excluding myself from the Class and objecting to the Settlement?** |
| --- |

If you exclude yourself from the Class, you are telling the Court that you don't want to participate in the Settlement.  Therefore, you will not be eligible to receive any benefits from the Settlement, and you will not be able to object to the Settlement.  Objecting to the Settlement means that you are asking the Court to invalidate the Settlement because you think is unfair to you and/or others.  Objecting does not disqualify you from making a claim nor does it make you ineligible to receive a payment.

## THE LAWYERS REPRESENTING YOU

| **20. Do I have a lawyer representing me?** |
| --- |

The Court has appointed the following law firms as Class Counsel to represent you and all other members of the Class: Arnold Levin and Sandra L. Duggan, Levin Sedran & Berman, 510 Walnut Street, Suite 500, Philadelphia, PA 19106, telephone number (215) 592-1500; Richard J. Serpe, Law Offices of Richard J. Serpe, PC, 580 East Main St., Suite 310, Norfolk, VA 23510, telephone number (757) 233-0009; Stephen J. Herman, Herman, Herman & Katz, LLC, 820 O'Keefe Ave., New Orleans, LA 70113, telephone number (504) 561-6024; and Patrick S. Montoya, Colson Hicks Eidson, 255 Alhambra Circle, Penthouse, Coral Gables, FL 33134, telephone number (305) 476-7400.

If you have any questions about the Settlement, you can talk to Class Counsel, or you can retain your own lawyer at your own expense.

| **21. How will the lawyers be paid?** |
| --- |

After the Court grants final approval to the Settlement and after any appeals are resolved, Settlement Class Counsel, common benefit attorneys, and privately retained attorneys for all Class Members (the "Petitioning Attorneys") will petition the Court for attorneys' fees and reimbursement of expenses (excluding the cost of class notice and claims administration) totaling in the aggregate up to 33% of the Settlement Funds.  The determination of any attorney's fee or court cost issue, including the allocation between and amongst the Petitioning Attorneys, will be determined by the Court.

## THE FAIRNESS HEARING

| **22. When and where will the Fairness Hearing take place?** |
| --- |

A hearing will be held in Courtroom C-456 of the United States Courthouse, 500 Poydras Street, New Orleans, LA 70130, at 9:00 a.m., on December 11, 2019 (the "Fairness Hearing"), for the purpose of determining whether the Settlement is fair, reasonable, and adequate and should be finally approved by the Court. The Fairness Hearing may be adjourned from time to time by the Court without further notice, so check www.ChineseDrywallSettlement.com for any updates.

**Settlement Class Members who do not oppose the proposed settlement do not need to appear at the hearing or file any papers.**

You will be represented at the Fairness Hearing by Settlement Class Counsel listed in Question 20, unless you enter an appearance in person or through your own counsel. As a member of the preliminarily approved Settlement Class, you will not be personally responsible for attorney's fees, costs or disbursements except those of your own counsel.

| 23. Do I have to come to the hearing? |
|---|

No. Class Counsel will answer any questions the Court may have. But you are welcome to come at your own expense. If you send an objection or comment, you don't have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also retain a lawyer to appear on your behalf at your own expense.

| 24. May I speak at the hearing? |
|---|

If you send an objection on the Settlement as described in Question 18, you can ask the Court to speak at the Fairness Hearing.

## GET MORE INFORMATION

| 25. Where can I get more information? |
|---|

The foregoing is only a summary of the Litigation, the claims, and the Settlement. You can get more information about the Settlement, and for the precise terms and conditions of the Settlement, please see the Settlement Agreement, at www.ChineseDrywallSettlement.com or by calling 1-800-000-0000.

The Settlement and documents, as well as the pleadings and other papers filed in the Litigation, may also be reviewed at the office of the Clerk of the Court, United States Courthouse, 500 Poydras Street, New Orleans, LA 70130; Clerk of the Court, United States Courthouse, 400 North Miami Avenue, Miami, FL 33128; Clerk of the Court, United States Courthouse, 600 Granby Street, Norfolk, VA 23510; and any other courts where CDW-Related actions are pending; or during regular business hours at the offices of Richard J. Serpe, Law Offices of Richard J. Serpe, PC, 580 East Main St., Suite 310, Norfolk, VA 23510, telephone number (757) 233-0009; Stephen J. Herman, Herman, Herman & Katz, LLC, 820 O'Keefe Ave., New Orleans, LA 70113, telephone number (504) 561-6024; and Patrick S. Montoya, Colson Hicks Eidson, 255 Alhambra Circle, Penthouse, Coral Gables, FL 33134, telephone number (305) 476-7400.

Any papers Settlement Class Counsel and counsel for the Defendants file in support of the Settlement will be made available for review at these locations at the time they are filed. Any questions that any person to whom this Notice is addressed may have with respect thereto, or with respect to the right to opt out, should be directed to Class Counsel, or his or her own counsel.

# EXHIBIT 3

**BrownGreer - Claims Administrator**
**for Class Settlement with Taishan Gypsum Company Ltd.**

Re:     ___*Estimated* Gross Allocation Amount for Claim regarding [Affected Property___
___Address ("Property")]___

*Note: Capitalized terms in this letter are defined and explained in the Class Notice*

Dear [Known Class Member on Master Spreadsheet]:

This letter provides you with a gross *estimate* of the money that could be awarded to you for Property that is included in the Class Settlement with Taishan. Your estimate is a *gross* total (before deductions for attorneys' fees and reasonable costs). Payments will not be made until after the Court grants Final Approval and all appeals are resolved.

The exact amount you will receive will depend on the number of participants in the Settlement, which cannot be determined at this time. However, we have calculated an *estimated* gross Allocation Amount ("Allocation Estimate") for your claim: **$_____**.

To arrive at this estimate, we applied the Allocation Model developed by an Allocation Neutral to the following information on the Master Spreadsheet for this Property:

(a) Under Air Square Footage;

(b) Product Identification;

(c) prior payments you may have received for Chinese Drywall claims for this Property;

(d) whether you assigned any of your rights to pursue claims with respect to this Property;

(e) whether you are an *Amorin* Plaintiff or a *Brooke* Plaintiff; and

(f) whether more than one owner is making a claim regarding this Property.

We took into consideration the estimated costs of class notice and claims administration, and made assumptions regarding the number and value of claims that will be made by absent class members.

The *gross* Allocation Amount ultimately awarded to you from the Settlement may be higher or lower than this Allocation Estimate. The *net* amount you actually receive will be lower because of the reduction for Court-approved attorneys' fees and costs. Under the Settlement, Class Counsel, common benefit attorneys, and privately retained attorneys for all Class Members will seek, in total, a maximum of 33% of the Settlement Amount for attorneys' fees and expenses, subject to Court approval.

Additional information regarding the Settlement is provided in the Class Notice sent to you with this letter and posted on the website www.ChineseDrywallSettlement.com.

BrownGreer
Claims Administrator

cc: Counsel for [Known Class Member on Master Spreadsheet]

**BrownGreer - Claims Administrator**
**for Class Settlement with Taishan Gypsum Company Ltd.**

Re:      ***Estimated* Gross Allocation Amount for Claim regarding [Affected Property Address ("Property")]**

*Note: Capitalized terms in this letter are defined and explained in the Class Notice*

Dear [Known Class Member on Master Spreadsheet]:

This letter provides you with a gross *estimate* of the money that could be awarded for Property that is included in the Class Settlement with Taishan.   The estimate is a *gross* total (before deductions for attorneys' fees and reasonable costs).   Payments will not be made until after the Court grants Final Approval and all appeals are resolved.

Another claimant in the litigation has asserted a claim for the same Property as you. **Therefore, you must submit to us any documents you have to support your claim** no later than [DATE 35 days after Preliminary Approval Order].   We will then make a determination as to how the final Allocation Amount should be allocated between you and the other claimant(s). Please see additional instructions in Section 12.1.2 of the Settlement Agreement and the Allocation Model and Allocation Neutral Report available at www.ChineseDrywallSettlement.com.

The exact amount you will receive (if any) will depend on the Claims Administrator's allocation of the estimate between you and the other claimant(s), and also on the number of participants in the Settlement, which cannot be determined at this time. However, we have calculated an *estimated* gross Allocation Amount ("Allocation Estimate") for the Property: **$_____**.

To arrive at this estimate, we applied the Allocation Model developed by an Allocation Neutral to the following information on the Master Spreadsheet for this Property:

(a) Under Air Square Footage;

(b) Product Identification;

(c) prior payments you may have received for Chinese Drywall claims for this Property;

(d) whether you assigned any of your rights to pursue claims with respect to this Property;

(e) whether you are an *Amorin* Plaintiff or a *Brooke* Plaintiff; and

(f) whether more than one owner is making a claim regarding this Property.

We took into consideration the estimated costs of class notice and claims administration, and made assumptions regarding the number and value of claims that will be made by absent class members.

The *gross* Allocation Amount for the Property under the Settlement may be higher or lower than this Allocation Estimate. The *net* amount for the Property will be lower because of the reduction for Court-approved attorneys' fees and costs.   Under the Settlement, Class Counsel, common benefit attorneys, and privately retained attorneys for all Class Members will seek, in total, a maximum of 33% of the Settlement Amount for attorneys' fees and  expenses, subject to Court approval.

Additional information regarding the Settlement is provided in the Class Notice sent to you with this letter and posted on the website www.ChineseDrywallSettlement.com.


BrownGreer
Claims Administrator


cc: Counsel for [Known Class Member on Master Spreadsheet]

# EXHIBIT 4

**A Class Action Settlement Involving Chinese Drywall**

**May Affect Your Rights**

**If You Are Not a Settlement Class Member,**
**Please Return this Notice to the Sender or Call 1-XXX-XXX-XXXX**

**This is not a solicitation**

**Court Ordered Legal Notice**
**CHINESE DRYWALL SETTLEMENT**
**PO BOX XXXX**
**City, State XXXXX**

PRESORTED
FIRST-CLASS MAIL
U.S. POSTAGE
PAID

## Important Notice About Chinese Drywall Settlement

NAME
ADDRESS
CITY STATE ZIP CODE

# EXHIBIT 5

# Chinese Drywall Settlement

## *Your Rights Could be Affected*

A Settlement has been reached with Taishan Gypsum Company, and other entities ("Defendants") in class action lawsuits involving drywall imported from China. The lawsuits claim that the drywall caused property damage and personal injuries. The Defendants deny that they did anything wrong.

### Who is included?

The Settlement includes property owners with Chinese Drywall attributed to the Defendants. Go to ChineseDrywallSettlement.com ("website") for a full description of the Class and a Master Spreadsheet of Known Class Members.

### What does the Settlement provide?

The Defendants will contribute $248 million into a Settlement Fund. Eligible claimants will receive payments according to an Allocation Model (more info at website). The Allocation Amount will compensate for remediation damages and other loss claims. There will be no payment for personal or bodily injuries although those claims will be released by this Settlement.

### How can I get a payment?

Claimants not already listed on the Master Spreadsheet or the website must submit a Claim Form online or by mail. The deadline to submit a claim will be no earlier than **Month 00, 201X** and will be updated on the website.

### What are my rights?

If you are not listed on the Master Spreadsheet and you do nothing, you will not be considered for any payment and you will be barred from individually suing the Defendants. If you want to keep your right to individually sue the Defendants, you must exclude yourself by **Month 00, 2019**. If you object to the Settlement, you must do so by **Month 00, 2019**.

The Court will hold a hearing on **December 11, 2019** to consider whether to approve the Settlement. Class Counsel will also request attorneys' fees and costs not to exceed 33% of the Settlement Fund. You or your own lawyer may appear and ask to speak at the hearing at your own expense.

---

**For More Information:**
**1-800-000-0000**
**ChineseDrywallSettlement.com**