# EXHIBIT "1"

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **EDUARDO AND CARMEN AMORIN,** *et al.*, **individually, and on behalf of all others similarly situated,** | |
| **Plaintiffs,** | |
| **v.** | **Case No. 1:11-CV-22408-MGC** |
| **TAISHAN GYPSUM CO., LTD. f/k/a SHANDONG TAIHE DONGXIN CO., LTD.; TAIAN TAISHAN PLASTERBOARD CO., LTD.,** *et al.*, | |
| **Defendants.** | |

**NOTICE AND INCORPORATED MEMORNADUM IN OPPOSITION TO CLASS COUNSEL'S MOTION FOR AN AWARD OF COMMON BENEFIT COSTS AND/OR FEES OUT OF THE PROCEEDS OF THE FLORIDA INDIVIDUAL SETTLEMENT (ECF No. 320), AND FOR DISCOVERY AND A HEARING**

Pursuant to S.D. Fla. L.R. 7.3, the undersigned file this Notice of Opposition and Incorporated Memorandum on behalf of the law firms of Parker Waichman LLC and Milstein Jackson Fairchild & Wade LLC (collectively, "Individual Counsel") to Class Counsel's Motion For An Award Of Common Benefit Costs And/Or Fees Out Of The Proceeds Of The Florida Individual Settlement (ECF No. 320) ("Fee Motion"). The Fee Motion should be denied for the reasons stated in the Memorandum accompanying this Notice. Individual Counsel further request the opportunity to conduct limited discovery and participate in a contradictory hearing on

1

the Fee Motion.

Respectfully submitted,

 /s/ Francisco A. Albites
Jay P. Dinan
FL Bar No.: 876593
Email:  jdinan@yourlawyer.com
Francisco A. Albites
FL Bar No.: 78046
Email: falbites@yourlawyer.com
Parker Waichman LLP
27300 Riverview Center Boulevard, Suite 103
Bonita Springs, Florida 34134
Office: 239.390.1000
Fax: 239.390.0055


 /s/ *Mark Milstein*
 Mark Milstein
 Email:  mmilstein@mjfwlaw.com
 Milstein, Jackson, Fairchild & Wade, LLP
 10250 Constellation Blvd., 14th Floor
 Los Angeles, CA 90067
 Office:  310.396.9600
 Fax: 310.396.9635

 *Counsel for Parker Waichman LLP Plaintiffs*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Notice and Incorporated Memorandum in Opposition to Class Counsel's Motion for an Award of Common Benefit Costs and/or Fees out of the Proceeds of the Florida Individual Settlement (ECF No. 320), and for Discovery and a Hearing was served on September 20, 2019, by electronically filing the foregoing with the Clerk of Court using the CM/ECF system, which automatically served all parties authorized to receive service via CM/ECF.

 */s/ Francisco A. Albites*
 OF COUNSEL

2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**EDUARDO AND CARMEN AMORIN,** *et al.***, individually, and on behalf of all others similarly situated,**

      **Plaintiffs,**

              **v.**

**TAISHAN GYPSUM CO., LTD. f/k/a SHANDONG TAIHE DONGXIN CO., LTD.; TAIAN TAISHAN PLASTERBOARD CO., LTD.,** *et al.***,**

      **Defendants.**

**Case No. 1:11-CV-22408-MGC**

**MEMORANDUM IN OPPOSITION TO CLASS COUNSEL'S MOTION FOR AN AWARD OF COMMON BENEFIT COSTS AND/OR FEES OUT OF THE PROCEEDS OF THE FLORIDA INDIVIDUAL SETTLEMENT (ECF No. 320), AND FOR DISCOVERY AND A HEARING**

**SUMMARY OF ARGUMENT**

The motion by "Class Counsel"[1] for an award of fees and costs (ESF No. 320) ("Fee Motion") is a misguided attempt to invoke federal equity authority to recover a share of *contractual* contingency fees – not a common fund recovery – paid to private attorneys who negotiated and continue to administer hundreds of individual, non-Rule 23, settlements. The Fee Motion must be denied.

First, the fee request is barred by Florida's law on forfeiture of fees, as Class Counsel voluntarily terminated their relationship with the individual plaintiffs before execution of the individual settlement agreements. *See Faro v. Romani*, 641 So.2d 69, 71 (Fla. 1994) (the

---

[1] The Fee Motion defines "Class Counsel" as a "convention" of attorneys who have participated in various roles during the course of the litigation. *See* Fee Motion at 1, note 2. In fact, this "convention" of attorneys lack formal authority in this Court. Nevertheless, for the sake of consistency, this Memorandum follows this informal designation.

voluntary withdrawal from representation under a contingency fee agreement before the contingency occurs "forfeits all right to compensation."); *Wells v. Powell Powell & Powell PA*, 711 Fed. Appx. 517, 521 (11th Cir. 2017) (affirming forfeiture and noting that "*Faro* does not distinguish between attorneys who seek fees directly from clients and those who seek to share fees with other attorneys").

Second, the fee request is also barred by unclean hands, equity's version of forfeiture. Although cautioned by Individual Counsel at the initial status conference about their lack of formal authority (See ECF No. 40 at 8-9, 22), Class Counsel declined to secure orders in this Court to avoid scrutiny regarding certification issues and the adequacy of representation.[2] In addition, Class Counsel breached their fiduciary duty to the 498 *Amorin* class members eligible for the individual settlements (the "Eligible Plaintiffs") by (1) taking adversarial action to delay execution of the individual settlements agreements, and (2) negotiating a settlement for all other plaintiffs – to the exclusion of Eligible Plaintiffs - *during the stay* issued by the Court.

Third, there is no unjust enrichment to support an award in equity. Every settling plaintiff has paid, or will pay, attorney fees from their recovery under contingency fee contracts with Individual Counsel. Further, Individual Counsel earned these fees through eighteen months (and counting) of complex negotiations, litigating (against Class Counsel), and administering the settlements.[3]

---

[2] The terms of the Florida Individual Settlements ("FISs") and the proposed Global Class Settlement demonstrate the red flags regarding commonality, typicality, and adequacy of representation.

[3] Individual Counsel have been active in these proceedings since the earliest days of the litigation. For example, Parker Waichman filed the first class action lawsuit in federal court in the Middle District of Florida in *Allen v. Plasterboard Tianjin Co., Ltd.*, Case No. 2:09-cs-00054 and subsequently filed suit on behalf of individual plaintiffs in the Middle District of Florida in *Schatlze v. Knauf Gips KG,* Case No. 2;09-cs-419. In addition, Jerry Parker of Parker Waichman

Finally, if Class Counsel is entitled to a fee, it must be based on *quantum meruit* and reasonable under the circumstances. *See In re Home Depot Inc.*, 2019 WL 3330867, *11 (11th Cir. July 25, 2019) ("A reasonable fee is one sufficient to attract competent counsel to represent the case, but not one that provides a windfall for attorneys."). The fee requested by Class Counsel is unreasonable on its face, given the limited timeframe at issue and the lack of success by Class Counsel, and as a percentage of the total contingency fees. To determine what constitutes a reasonable fee, Due Process dictates that Individual Counsel be permitted to conduct discovery, participate in a hearing, and submit additional briefing after the record is adequately developed.

## RELEVANT HISTORY

The Fee Motion distorts important history and omits critical facts relevant to the issues before the Court.

1. This Court has exclusive jurisdiction over the Fee Motion and must make its own findings on the issues raised by the Fee Motion.

On March 12, 2018, the Eastern District of Louisiana (the "Transferee Court") issued a Suggestion of Remand, Opinion and Order (MDL R. Doc. 21242) to return claims involving defective Chinese drywall to the Transferor Courts, but sought to retain jurisdiction over common benefit issues arising from recoveries on remand. MDL R. Doc. 21242. Individual Counsel timely objected to this retained jurisdiction (JPML R. Doc. 504), but the JPML Panel declined to decide the issue on grounds of prematurity. MDL R. Doc. 524 at 1 ("In seeking vacatur, movants do not argue against remand per se', but, rather, dispute whether the transfer

---

and Daniel Byson of Whitfield Bryson & Mason served on the MDL Plaintiffs' Steering Committee.

3

court may retain jurisdiction over the remanded action to determine a future common benefit fee assessment. We need not reach this issue, as the plaintiffs have not yet achieved any recovery.")

Following this Court's order lifting the stay on the individual settlements (*See* ECF No. 196), Individual Counsel informed Class Counsel of their intention to request that the Transferee Court lift its hold (PTO 32) on the individual settlements (as the issue had fully ripened). To avoid potential disruption to the approval process for the Global Settlement, Individual Counsel and Class Counsel entered an Agreement Regarding Pre-Trial Order No. 32 and Related Issues ("Agreement") (Fee Motion Exhibit A), leading to an Unopposed Motion to Lift PTO 32 (MDL R. Doc. 22283), and an Order by the Transferee Court relinquishing all authority over the issues raised in the Fee Motion. MDL R. Doc. 22289. The Agreement reserved all arguments in this Court raised in the Fee Motion. In addition, the Agreement also includes a waiver by Individual Counsel of any objection to, or claim for, common benefit fees from the Global Settlement (Fee Motion Exhibit A at ¶4) in exchange for the right to argue "that one or more of the Settling Attorneys contributed to the common benefit of plaintiffs participating in the . . . Global Settlement Class as a factor for Judge Cooke to weigh" when deciding how to allocate fees as between Individual Counsel and Class Counsel. Id. at ¶ 6. In other words, that Class Counsel's fee request be balanced against the value that Individual Counsel added to the Global Settlement.

All issues raised by the Fee Motion are now properly and exclusively in this Court.

2. <u>All common benefit time prior to 2014 and all cost prior to 2014 **have been paid**, and all subsequent time and expenses will be paid from the Global Settlement, if approved.</u>

The Fee Motion strains to cast the fee request in the context of the entire history of the litigation with statements such as "After a decade of arduous and protracted litigation" (Fee Motion at 1) and "Prosecuting this litigation was risky from the outset" (Id. at 17), and confuses

the record by describing many activities occurring before 2014 for which common benefit counsel have already been paid.[4] To be clear, the Knauf Settlement rendered common benefit fees and costs totaling **$111,389,016.26** for work prior to 2014, including work pursuing the Taishan Defendants, and for all costs prior to 2015. See MDL R. Doc. 22089.[5] Further, if Class Counsel is awarded 20% of the Global Settlement, as reportedly requested, another $50 million or so will be paid for all subsequent time and expenses.

3.  Class Counsel refused to participate in negotiations initiated by Individual Counsel and opposed the settlements.

At the time of remand, Class Counsel was locked in litigation with no realistic strategy for resolution. In fact, negotiations between Individual Counsel and defense counsel originated precisely because Class Counsel appeared unwilling to even contemplate a methodological or qualitative framework for settlement.

After many months of negotiations, Individual Counsel informed Class Counsel about progress and invited Class Counsel's participation toward a resolution of all outstanding claims and disputes. But Class Counsel refused, determined to continue their vain pursuit of a one-size-fits-all resolution. See Declaration of Faircloth, attached hereto as Exhibit "A." Ultimately,

---

[4] For example, the Fee Motion states: "It was class counsel who prepared the pleadings in which the Settling Attorneys' clients are named as plaintiffs. At considerable expense, Class Counsel served those pleadings pursuant to the Hague Convention or through alternative service granted by the MDL Court, prosecuted the claims, took the discovery, litigated the motions, briefed and argued the appeals… ." Fee Motion at 2.

[5] The Knauf Fee litigation was prompted in large part by the Fee Committee because the Knauf Lodestar included Taishan-related time and expenses. The Fee Committee successfully blocked disclosure of time records that could have been used to sort out the proper allocations. Here, the Fee Motion attempts to avoid the same appearance of a double recovery by limiting the relevant time frame, stating: "because of the [Knauf] Fee award . . . only submissions for time reported after January 2014 to May 2019 and costs after January 1, 2015 are being presented to this Court." ESF No. 320 at 15 n.39. See also Declaration of Montoya and Duggan (ECF No. 320-1) at ¶3.

however, recommendations by the Special Master on "Product ID Categories Attributable to Taishan Defendants" (ECF Nos. 233) and "Regarding Defendants' Contest and Set-Offs" (ECF Nos. 266 and 268) made clear that a qualitative settlement methodology is necessary in light of the broad disparity in claims and defenses.

Faced with the inevitable, Class Counsel needed time to construct their own version of a settlement model and a rationale for demanding fees from individual settlements that they had worked hard to oppose. Hence, Class Counsel formally objected to the individual settlements in both this Court (ECF No. 192) and the Transferee Court (MDL Doc. R. 22158) to delay the individual settlements. Using the fruits of progress cultivated by Individual Counsel during a year of negotiations (and an excellent mediator) they reached agreement on the principle terms of the Global Settlement in mere days.

4. <u>Class Counsel terminated their relationship with the 498 Eligible Plaintiffs by excluding them from the Global Settlement during the stay and prior to execution of any individual settlements.</u>

The Taishan Settlement Agreement was carefully constructed to operate as an offer to 498 individual plaintiffs (the "Eligible Plaintiffs"), giving each the opportunity to decide whether to settle their individual claims based on a payment formula or remain in the litigation as members of the *Amorin* class.[6] Although the effective date of the agreement is March 12, 2019 (for purposes of calculating the funding schedule), the agreement was a merely an *offer* unless and until accepted by delivery of executed "Acceptance of Settlement Offer and Release of Claims" forms within the "Client Signature Deadline[s]" proscribed in the agreement. This

---

[6] *See* Settlement Agreement and Release. ECF Doc. No. 197 [under seal]. Class Counsel incorrectly describe the individual settlements as a single agreement. *See* Fee Motion at 2 and 8. *See also* Notice of Global Settlement, ECF Doc. No. 336 at 4.

important feature – that this was a mere *offer* - was explained to Class Counsel (See Declaration of Faircloth), to the Court (See ESC No. 199), and to every Eligible Plaintiff in the notice letters from Individual Counsel.[7]  Thus, when the Court issued the stay on March 19, 2019 (ECF No. 196), there was no enforceable individual settlement agreement for any Eligible Plaintiffs. Simply put, the stay *prevented* acceptance of the offer.

While the stay was in place and the status quo suspended, Class Counsel negotiated the Global Settlement to the exclusion of Eligible Plaintiffs over the objection of Individual Counsel. See Declaration of Faircloth, Exhibit "A."  And since that time, Class Counsel has disavowed all responsibility for advising and protecting these excluded class members.

## ARGUMENT

### A. Class Counsel Forfeited the Right to Recover a Share of Fees Under Contingency Contracts Based on Controlling Florida Law

The common fund doctrine is a product of federal common law and is applied by courts siting in equity to avoid unjust enrichment, as most recently explained by the Eleventh Circuit in *In re Home Depot Inc.*, 2019 WL 3330867 (11th Cir. July 25, 2019) (rejecting percentage method for fees awarded under fee-shifting statute).  "A common benefit case is when 'a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.'" *In re Home Depot Inc.*, at *8, *quoting Boeing Co. v. Van Gemert*, 44 U.S. 472, 478 (1980).  In this instance, Class Counsel are requesting a portion of contingency fees paid to Individual Counsel from hundreds of individual settlements, each governed by a separate contingency fee contract.  They make no effort to argue

---

[7] The Notice letters were filed under seal as exhibits to the Joint Motion for In Camera Review of Settlement Materials.  ECF No. 307.

how fees from hundreds of individual settlements somehow constitutes a common fund. Instead, they effectively urge the Court to treat all fees in the aggregate as a *constructive* common fund.[8] In fact, the common fund doctrine has no application here because there is no common fund recovery, actual or constructive. Further, because these are individual settlements not subject to Rule 23 approval,[9] the Court's authority to approve class action settlements is not applicable. Thus, under these circumstances, the allocation of contractual contingency fees is governed by state law. *See Lewis v. Haskell Slaughter Young & Rediker, LLC*, 567 Fed.Appx. 703, 705 (11th Cir. 2014) ("the rights and obligations of a party to a contingency fee contract are governed by state law").[10]

Florida law is clear: An attorney who voluntarily withdraws from representation under a contingency fee agreement before the contingency occurs "forfeits all right to compensation." *Faro v. Romani*, 641 So.2d 69, 71 (Fla. 1994). *See Santini v. Cleveland Clinic Florida*, 65 So.3d 22, 29-30 (Fla. 4th DCA 2011) (canvassing "rules of law regarding an attorney's entitlement to recover fees under a contingency agreement where the attorney either withdraws or is discharged prior to the contingency occurring."). This rule has been consistently followed in the Eleventh Circuit. *Wells v. Powell Powell & Powell PA*, 711 Fed. Appx. 517, 521 (11th Cir. 2017) (affirming forfeiture and noting that "*Faro* does not distinguish between attorneys who seek fees

---

[8] *See In re Home Depot Inc*., 2019 WL 3330867 at *8-10 (discussing the difference between a common fund and a constructive common fund and the rationale for each).

[9] *See In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1139 n.59 (7th Cir. 1979) ("it is only the settlement of the class action itself without court approval that Rule 23(e) prohibits"); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 183 F.3d 1, 6 (1st Cir. 1999); *Weight Watchers, Inc. v. Weight Watchers International, Inc.*, 455 F.2d 770,773 (2d Cir. 1972)

[10] *Compare Allapattah Services, Inc. v. Exxon Corp*., 454 F.Supp.2d 1185, 1200 (S.D. Fla. 2006) (Applying federal common law, rather than state law, for awarding class action fees in diversity case).

directly from clients and those who seek to share fees with other attorneys."); *Aldar Tobacco Group, LLC v. American Cigarette Co., Inc.,* 577 Fed.Appx. 903, 907 (11th Cir. 2014).

Undoubtedly, Class Counsel will argue that a federal court may resort to equity in diversity proceedings. But this is not an instance where federal equity authority may be used to fashion a remedy merely unavailable under state law. *See Clark Equip. Company v. Armstrong Equip. Co.*, 431 F.2d 54, 57 (5th Cir. 1970). Rather, Florida law squarely forbids the use of equity in this instance, where the lawyer voluntarily terminates representation before contingency event occurs. Applying federal equity authority here would produce the untenable result of granting Class Counsel superior rights to contractual fees than those of Individual Counsel under the same contracts, who surely would have forfeited their rights under state law if the shoe was on the other foot.

It is indisputable that Class Counsel terminated their representation of the Eligible Plaintiffs prior to execution of individual settlement agreements. By doing so, Class Counsel forfeited the right to share in fees under the contingency fee contracts of Individual Counsel.

## B. Alternatively, if Federal Equity Authority Governs, the Doctrine of Unclean Hands Prevents Class Counsel from Benefitting From Their Actions to Evade Rule 23 Scrutiny.

"[T]he 'common benefit' theory is premised on a court's equity power." *United Steelworkers of America, AFL-CIO-CLC v. Sadlowski*, 435 U.S. 977, 979 (1978). *See Reuderman ex rel. Schwartz v. Washington Nat. Ins. Co.*, No. 08-23401, 2001 WL 915721, *6 (S.D. Fla. 2011) (Cohn, J.) ("Class counsel's entitlement to a percentage of the common fund derives from the equitable power of the courts under the doctrines of *quantum meruit*, unjust enrichment and the 'common benefit' doctrine."). But a fundamental tenet of equity is that "[h]e [or she] who comes into equity must come with clean hands." *Keystone Driller Co. v. Gen.*

*Excavator Co*., 290 U.S. 240, 241, (1933). "The unclean hands doctrine 'closes the door of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *ABF Freight Sys., Inc. v. N.L.R.B.*, 510 U.S. 317, 329–30 (1994)). *See Bailey v. TitleMax of Georgia, Inc.*, 776 F.3d 797, 801-01 (11th Cir. 2015); *Calloway v. Partners Nat'l Health Plans*, 986 F.2d 446, 450-51 (11th Cir. 1993). Courts have also treated the doctrine of unclean hands as a rule of "forfeiture" in class action fee proceedings. *See Piambino v. Bailey*, 757 F.2d 1112, 1141 (11th Cir. 1985) (finding forfeiture appropriate for breach of fiduciary duty); *Allapattah Services, Inc.*, 454 F.Supp.2d at 1200 (finding that "bad faith" conduct by attorney warranted partial forfeiture of fees). *See also In Re Austrian and German Bank Holocaust*, 317 F.3d 91, 102 (2nd Cir. 2003) (recognizing forfeiture as a remedy for violation of fiduciary duty to class).

    **1. Class Counsel Deliberately Avoided Formal Authority to Avoid Rule 23 Scrutiny.**

        The Fee Motion is built on the faulty premise that the authority of this Court to administer these proceedings is a mere extension of the authority of the Transferee Court to administer *that* proceeding. On the contrary, this Court has an independent duty to assure that the standards of Rule 23 are satisfied and maintained throughout litigation, including the obligation of Class Counsel to act in the best interest of the class and to disclose and avoid conflicts that threaten the collective interest of the class. *See Grigsby v. North Miss. Medical Center, Inc*., 586 F.2d 457, 462 (5th Cir. 1978) ("The court's responsibilities do not end [after class certification]; it must continue carefully to scrutinize the adequacy of representation and withdraw certification if such representation is not furnished."); *In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1124 (7th Cir. 1979) ("This court has several times

commented on the trial court's continuing duty to undertake a stringent examination of the adequacy of representation by the named class representatives and their counsel at all stages of the litigation").

The issue of attorney authority was raised, delicately, at the initial status conference in this Court by counsel for Parker Waichman, who informed the Court that there was no "formal aggregation of the proceeding," that the "extent of aggregation" needed to be addressed, and that there was "no formal leadership sanctioned by this Court." *See* Transcript (ECF No. 40) at 8-9, and 22. These comments were primarily made because the case was no longer under the wide administrative discretion afforded to an MDL court and there was an obvious need to consider the use of subclasses and to establish the lines of authority.[11] Simply put, the remand materially altered the litigation paradigm, requiring a fresh look at the adequacy of representation, if not all the requirements under Rule 23. Secondarily, Individual Counsel wanted to establish ground rules to avoid another contentious fee proceeding.[12]

---

[11] "Subclasses must be created when differences in the positions of the class members require separate representation and separate counsel." Manual for Complex Litigation at § 21.23. Moreover, "[e]ach class or subclass must independently satisfy all the prerequisites of Rule 23(a) and (b)." Id. Judge Fallon denied a request for a common benefit holdback by Class Counsel applicable to remanded cases because "individually retained counsel may perform significant tasks when the cases are remanded, including work for trials." MDL R. Doc. 21323 at 2.

[12] The attorneys who objected in the fee proceeding following the Knauf Settlement were treated brutally by the Fee Committee for having exercised basic due process; when in fact the leaders of the Fee Committee were deeply conflicted. Judge Fallon refused to grant motions to disqualify, but also refused to address the specific allegations and evidence of obvious conflicts. The same venom by Class Counsel to stifle dissent is reflected in the Fee Motion, where Parker Waichman is accused of being an "obstructionist," and of having filed "some 23 objections" during the fee proceeding (Fee Motion at 8); when in fact 23 firms filed objections, only one by Parker Waichman. Further, the "unnecessary discovery" referenced by the Class Counsel (Id. at 8), included records that the Plaintiffs Steering Committee was required to maintain by court order and time sheets relied on by the Fee Committee to support a bloated lodestar. Remarkably, objectors were denied access to highly relevant evidence introduced by the other party (the Fee Committee) and used by the Judge to support the ruling. For that reason and others Due Process

In response, the Court appointed Interim Lead Counsel, who thereafter directed the litigation without seeking additional authority and under the thumb of the MDL leadership. This was by design, to guard the leadership gate and control the potential for fees by pressing the litigation in hopes of forcing a one-size-fits-all resolution. Ultimately, however, Class Counsel could not avoid the inevitable and was forced to embrace a methodological formula for settlement, but only after years of non-productive litigation that did little more than reveal the futility of (and conflicts inherent in) litigating diverse claims in lock-step. This point is demonstrated by comparing the Notice of *Amorin* Class issued in 2015, which describes a fully aligned pursuit of aggregate resolution, with the recent Notice of the Global Settlement. According to the *Amorin* Notice:

> Because of these default judgments, the Taishan Defendants will be precluded from offering any defenses concerning their liability to the Class. In future proceedings, plaintiffs will establish class-wide damages pursuant to Rule 55(b)(2)(B). Plaintiffs will prove class-wide damages on an aggregate basis by presenting evidence concerning the total square footage of properties owned by class members and the cost per square foot to repair and replace the defective drywall in a class members' properties (i.e., the current price per square foot to remediate multiplied by the number of square feet in class members' homes = damages).

was clearly offended. In the end, the court awarded common benefit fees in excess of fees to private attorneys, most of which was paid to only a few firms in control of the case. Parker Waichman appealed both the process and the awards, but the matter settled before a decision by the Fifth Circuit.

The record of the fee proceeding following the Knauf Settlement is not before this Court and surely not a part of the "findings of facts and legal conclusions" adopted by this Court on remand. See ECF No. 112 at 2. There is no authority for this Court to give "great weight" to the transferee court's reasons for allocating fees in a separate fee proceeding, as suggested by Class Counsel. Fee Motion at 11 n.34. At a minimum, Rule 23 requires the Court to make its own independent findings based on fee requests arising out of settlements on remand. *See Manual for Complex Litigation* § 14.211 (4th ed. 2004) ("Judges have an independent duty to review fees and specifically determine if they are reasonable, applying traditional legal tests.").

MDL Doc. No. 18028-1 at 2. By contrast, the Global Settlement effectively constitutes an individualized settlement tied to many unresolved liability questions, described in the Notice as follows:

> The Court previously certified the *Amorin* class action. There is no class certification in the *Brooke* action. In addition, Taishan was found to be in default in the *Amorin* action, but not in the *Brooke* action. Additional Defendants were also defaulted in *Amorin*, but no defaults have been entered in the *Brooke* action. In circumstances where there is a default, the Defendants contest whether they manufactured the drywall at issue and whether some of the claimed damages were caused by drywall that they made. To date, no court has fully determined the merits of these issues. As to the non-defaulted actions, Defendants deny liability.

ECF Doc. No. 336 at 3.

Class Counsel's refusal to secure formal authority at the outset exposed all plaintiffs to predictable risks.[13] Although the Global Settlement may prevent those risks from materializing, there is no denying that the rights of individual litigants would have been better served under a leadership regime respecting the disparity of the claims and the limitations of counsel. *See In re Agent Orange Prod, Liab. Litig*. 818 F.2d 216, 224 (2nd Cir. 1987) (recognizing that a successful outcome cannot cure an improper fee arrangement that placed class counsel in a position "that may endanger the fair representation of their clients"). Class Counsel's intentional avoidance of formal authority under these circumstances constitutes unclean hands for purposes of the Fee Motion.

---

[13] *See* Manual for Complex Litigation § 10.22 (describing lead lawyers as fiduciaries who are required to "act fairly, efficiently, and economically in the interest of all parties and parties counsel."); PRINCIPLES OF THE LAW OF AGGREGATE LITIGATION § 1.04 reporter's notes cmt. A (2010) (observing that "[c]lass counsel is a [] fiduciary to a client [the named plaintiff,] who is also a fiduciary [to other class members]," and that "[a] similar relationship obtains between lead attorneys and other lawyers in multidistrict litigation."); Lynn A. Baker and Charles Silver, *Fiduciaries and Fees: Preliminary Thoughts*, 79 Fordham L. Rev. 1833 (2010); Charles Silver, *The Responsibilities of Lead Lawyers and Judges in Multidistrict Litigation*, 79 Fordham L. Rev. 1985 (2011).

In addition, under the circumstances, Class Counsel should have pursued orders in anticipation of fee proceedings, so the Court would not be asked to effectively ratify fee authority and approve the marshalling of time and expenses *post facto*. It was incumbent on those seeking the benefits of attorney leadership to timely pursue orders defining their authority. See Manual for Complex Litigation at § 10.21 (2004) (discussing the "greater demands" on appointed counsel in complex litigation).

As stated in the Manual for Complex Litigation, "Few decisions by the court in complex litigation are as difficult and sensitive as the appointment of designated counsel." Manual for Complex Litigation at § 10.224. The Court's authority to do so is provided by FRCP Rule 23(d) and (g).[14] Under paragraph (d), a court may issue orders to govern the action, including to impose "conditions on the representative parties." Rule 23(g)(1) mandates the appointment of class counsel and permits the order to include guidelines for fee awards and non-taxable costs. Rule 23(g)(3) authorizes the appointment of "interim counsel to act on behalf of the putative class" pending a certification decision. But the appointment of interim counsel surely does not diminish the obligation to assure that questions of adequacy in representation are addressed throughout the proceeding. Moreover, appointing interim counsel does not address the need to assign certain protocols "at the outset" as emphasized by the 2003 Advisory Committee Notes to Rule 23.[15]

---

[14] *See* Manual for Complex Litigation at § 14.21 ("Setting Guidelines and Ground Rules"). The procedural safeguards of Rule 23 have an overriding purpose of safeguarding the interest of passive class members. See *Taylor v. Sturgell*, 553 U.S. 880 (2008).

[15] The Committee observes that subdivision (g) "also provides a method by which the court may make directions from the outset about the potential fee award . . ." and that "attention" to a fee process should be given from the outset." Also, regarding subdivision (h), the Committee states: "This subdivision is designed to work in tandem with new subdivision (g) on appointment of class counsel, which may afford an opportunity for the court to provide an early framework for

There is no doubt that Class Counsel fully understand the requirements under Rule 23 for securing authority and for establishing a process for marshalling time and resources. In this instance, they dodged those formalities for selfish reasons, which posed unnecessary risks for members of the class and an enormous burden on Individual Counsel to protect their clients.

### 2. Class Counsel Breached Their Fiduciary Duty to the Eligible Plaintiffs.

The Eleventh Circuit has recognized that forfeiture of fees awarded under Rule 23 is an appropriate remedy to "give the district judges and the plaintiffs' bar an added incentive to discharge in full and with appropriate professional care the supervisory and fiduciary duties the rule imposes upon them." *Piambino v. Bailey*, 757 F.2d 1112, 1141 (11 Cir. 1985) (class counsel owe a "heavy fiduciary responsibility").[16] "Class Counsel must not, on threat of sanction, use the class action for his own personal aggrandizement, ignore conflicts, or prejudice the class by self-interested misbehavior." *Allapattah Services, Inc.*, 454 Supp.2d at 1236 (partial forfeiture for "bad faith"). *See also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1156 (8th Cir. 1999) (affirming disqualification and denial of fees even though services were beneficial to class).

In this instance, Class Counsel breached their fiduciary duty to the 498 Eligible Plaintiffs, all of whom are class members, by negotiating a class settlement to their exclusion, effectively

---

an eventual fee award for monitoring the work of class counsel during the pendency of the action."

    The Manual for Complex Litigation likewise recognizes that "[s]etting guidelines at the outset, subject to revision, can reduce the potential for later conflict and facilitate judicial review of fee applications" (§14.212) and that "[e]arly in the litigation, the court should define designated counsel's functions, determine the method of compensation, specify the records to be kept, an establish the arrangements for their compensation, including setting up a fund in which designated parties should contribute in specified proportions." § 14.215. In addition, courts are encouraged to "establish ground rules at the outset" governing non-taxable expenses and appointed counsel are cautioned to "obtain clearance before incurring" such expenses. Id. at §14.216.

[16] Rule 23(4) requires that "Class counsel must fairly and adequately represent the interest of the class."

extinguishing their option to remain in the class, and by abandoning any pretense of representation. For all practical purposes, Class Counsel kicked the Eligible Plaintiffs out of the *Amorin* Class during the stay. Under these circumstances, forfeiture of a common benefit fee *from the individual settlements* is appropriate.

### C. There is No Unjust Enrichment to Justify an Award in Equity.

The rationale for the common benefit doctrine is the avoidance of unjust enrichment. It "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Camden I Condominium Ass'n, Inc. v. Dunkle,* 945 F. 768, 771 (11th Cir. 1991). Much like their failure to address what actually constitutes the "common fund" at issue, Class Counsel similarly fail to identify who allegedly is being unjustly enriched, or how. In fact, every settling individual plaintiff has paid and will pay (those who accept in tranche 3 and for all MFN payments) attorney fees from their recovery under contingency fee contracts with Individual Counsel. There are no "free rider" claimants.[17]

The Fee Motion actually targets Individual Counsel, not the individual plaintiffs, a point that Class Counsel carefully avoids because it draws attention to the lack of a common fund. At base, Class Counsel is arguing that Individual Counsel did not earn their fees. This argument disregards the year-long negotiations orchestrated by Individual Counsel to create the settlement methodology for the individual settlements, the litigation against Class Counsel to permit the individual settlements, and the process of advising the clients throughout the ordeal and administering the settlements, which continues.

---

[17] *See In re Nineteen Appeals,* 982 F.2d 603, 606 (1st Cir. 1992) (recognizing authority to employer measures to avoid "free-rider problem").

16

## D. **At Most, Class Counsel is Entitled to Reasonable Compensation Based the Lodestar Methodology.**

For the reasons explained above, there is authority to award Class Counsel a percentage of the contractual contingency fees from the individual settlements.[18] Thus, if fees are due (which is denied), the Court must rely on quantum meruit and utilize the lodestar methodology, as under Florida law (where a contract is terminated through no fault of a lawyer) or under federal common law in for fee-shifting claims. *See In Re Home Depot*, 2019 WL 33330867 at *15.

"Time spent is reasonable, and thus compensable, if it would be proper to charge the time to a client. (cite omitted) As with a client, counsel should not include in the lodestar hours that are 'excessive, redundant or otherwise unnecessary." *Id*. Further, "A district court's 'order on attorneys fees must allow meaningful review – the district court must articulate the decisions it made, give principled reasons for those decisions, and show its calculation." Id. *quoting Norman v. Housing Auth. Of Montgomery,* 836 F.2d 1292,1304 (11th Cir. 1988). However, "[t]he level of specificity required by district courts is proportional to the specificity of the fee opponents'

---

[18] Alternatively, if a percentage method is employed, the Court should note that Class Counsel's argument regarding "benchmark" percentages is wrong. The benchmark referenced in the jurisprudence is the entire fee paid from a common fund recovery. Judge Fallon discussed this important distinction in *Vioxx Prods. Liab. Litig*., 760 F. Supp.2d 640, 660-61 (E.D. La. 2010) (capping total fees as 32% and dividing the total award 79.69% to primary counsel and 20.31% to common benefit counsel), wherein he observed that "a common benefit award is deducted not from the claimant's portion but from the total amount of counsel fees payable under the individual contingent fee arrangements . . . [and] The tension in this case is between the attorneys who have done common benefit work and the primary attorneys who have not."

Awarding a percentage recovery as suggested by Class Counsel would render common benefit fees more than double the award for the *Knauf* Settlement, based on the ratio of fees to recovery. Judge Fallon awarded the common benefit less than 10% of the total value of Knauf recovery; Class Counsel are requesting 20% here.

objections." *In Re Home Depot*, 2019 WL 33330867 at \*17, citing American Civil Liberties Union of Georgia v. Barnes, 168 F.3d 423, 428-29 (11th Cir. 1999).

 To be clear, Individual Counsel expressly challenge the lodestar alleged by Class Counsel as including excessive, redundant and unnecessary time and expenses.

### E. <u>Due Process Dictates That Objectors be Allowed to Conduct Limited Discovery and Participate in a Hearing.</u>

 The essence of Due Process is the sense of fair play. *Galvan v. Press*, 347 U.S. 522, 530 (1954). It requires, "the opportunity to be heard at a meaningful time and in a meaningful manner" prior to depriving an individual of a constitutionally protected property interest. *Mathews v. Elbridge*, 424 U.S. 319, 335 (1976). These principles apply with equal force in the context of attorney fee disputes. *See In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litigation*, 982 F.2d 603 (1st Cir. 1982); *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litigation*, 56 F.3d 295, 302 (1st Cir. 1995); *In re High Sulphur Content Gasoline Products Liability Litigation*, 517 F.3d 220, 231 (5th Cir. 2008); *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536 (9th Cir. 2016); *Gorman v. University of R.I.*, 837 F.2d 7, 14 (1st Cir. 1988). When "a court chooses to hold a 'fee-determination hearing, the hearing format itself ha[s] to be fair. In other words, when a judge constructs a process for setting fees, the process must contain at least the procedural minima' of due process: notice and an opportunity to be heard." *In re High Sulphur*, at 231.

 To satisfy Due Process, objecting counsel must be entitled to conduct limited discovery and to participate in a meaningful hearing. *See In re Nineteen Appeals,* 56 F.3d at 304 (recognizing that "Due Process does not require freewheeling discovery" in fee proceedings, but that objectors had access to "all data reasonably necessary to formulate their objections,

including all the PSC members' time and expense submissions"); *Yamada*, 825 F.3d at 545 ("the Due Process Clause requires that opposing counsel have access to the timesheets relied on to support [a] fee order.").

It is not possible to fairly oppose the Fee Motion based solely on the selective and self-serving arguments and submissions made by Class Counsel. Individual Counsel should be permitted to conduct limited discovery to determine, and to challenge, the productive efforts of Class Counsel allegedly attributable to the individual settlements.

**CONCLUSION**

Individual Counsel respectfully request that the Fee Motion be denied as a matter of law based on Florida's rule barring contingency fees where the attorney terminates representation prior to occurrence of the contingency. In the alternative, the Fee Motion should be denied on the basis of unclean hands. Finally, if the Fee Motion is granted, Individual Counsel request the opportunity for limited discovery and a hearing to assist the Court in determining an appropriate award based on a lodestar analysis.

**CERTIFICATE OF CONFERENCE PURSUANT TO S.D. FLA. L.R. 7.1(A)(3)**

As set forth herein, Settling Attorneys have conferred with Class Counsel in a good faith effort to resolve the issues raised in the motion and have been unable to do so.

**REQUEST FOR HEARING**

In accordance with S.D. Fla. L.R. 7.1(b), Parker Waichman requests oral argument on this motion. Settling Attorneys believe that given the important legal, factual and procedural

issues that are raised, as well as the complex nature of this litigation, oral argument of 2 hours would assist the Court in making its determination and is sufficient time for the parties to argue their respective positions.

Date: September 20, 2019

Respectfully submitted,

/s/ Francisco A. Albites
Jay P. Dinan
FL Bar No.: 876593
Email:  jdinan@yourlawyer.com
Francisco A. Albites
FL Bar No.: 78046
Email: falbites@yourlawyer.com
Parker Waichman LLP
27300 Riverview Center Boulevard, Suite 103
Bonita Springs, Florida 34134
Office: 239.390.1000
Fax: 239.390.0055

 /s/ *Mark Milstein*
Mark Milstein
Email:  mmilstein@mjfwlaw.com
Milstein, Jackson, Fairchild & Wade, LLP
10250 Constellation Blvd., 14th Floor
Los Angeles, CA 90067
Office:  310.396.9600
Fax: 310.396.9635

*Counsel for Parker Waichman LLP Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Memorandum in Opposition to Class Counsel's Motion for an Award of Common Benefit Costs and/or Fees out of the Proceeds of the Florida Individual Settlement (ECF No. 320), and for Discovery and a Hearing was served on September 20, 2019, by electronically filing the foregoing with the Clerk of Court using the CM/ECF system, which automatically served all parties authorized to receive service via CM/ECF.

_____*/s/ Francisco A. Albites*_____
OF COUNSEL

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| **EDUARDO AND CARMEN AMORIN,** *et al.*, **individually, and on behalf of all others similarly situated,** | |
| **Plaintiffs,** | |
| **v.** | **Case No. 1:11-CV-22408-MGC** |
| **TAISHAN GYPSUM CO., LTD. f/k/a SHANDONG TAIHE DONGXIN CO., LTD.; TAIAN TAISHAN PLASTERBOARD CO., LTD.,** *et al.*, | |
| **Defendants.** | |

DECLARATION OF JIMMY R. FAIRCLOTH, JR.

JIMMY R. FAIRCLOTH, JR. declares and states as follows:

1. Jimmy R. Faircloth, Jr. is a partner in the law firm of Faircloth Melton Sobel & Bash, 105 Yorktown Drive, Alexandria, Louisiana.

2. I was hired in 2016 to represent Parker Waichman LLP in the litigation pending in the Easter District of Louisiana arising from the settlement of claims against the Knauf Defendants.

3. The scope of my representation was expanded when the unresolved claims against the Taishan Defendants were remanded to the transferor courts.

4. At or about the time of the Suggestion of Remand, in March of 2018, I made contact with attorneys for the Taishan Defendants to discuss the potential for settlement of the claims by clients represented by Parker Waichman.

5. At the outset, I emphasized to counsel for the Taishan Defendants that Parker Waichman was unwilling to take any action that may be perceived in conflict with orders issued by

1

Judge Fallon or inconsistent with pending negotiations between the Taishan Defendants and the MDL attorney leadership. I was informed that there were no pending negotiations.

6. Over the next twelve months, I engaged in complex negotiations with counsel for Taishan to develop a methodology that could be used to potentially settle the individual claims.

7. During the first few months of negotiations, I was joined by several attorneys who are now among the "convention" of lawyers referred to as "Class Counsel" in the Fee Motion filed as ECF No. 320.

8. Commencing in September 2018, I had multiple conversations with attorneys appointed by Judge Fallon to the Plaintiffs Steering Committee (collectively the "PSC"), hoping to use the progress made during my negotiations with Taishan as a catalyst, if not a foundation, for settlement of all Chinese drywall claims and disputes. I provided the PSC with details about the proposed settlement formula under negotiation and a spreadsheet reflecting the potential value of claims across the litigation. In addition, I emphasized that the amount of funds Taishan may be willing to contribute to a settlement may be proportionate to the number of claims involved. Despite my best efforts to involve the PSC in the negotiations, they refused to participate.

9. I also explained the formula under negotiation to other members of "Class Counsel" and encourage their participation, but all opted to remain in the litigation.

10. Ultimately, I was joined in my efforts by the firms of Milstein Jackson Fairchild & Wade, LLC; Whitfield Bryson & Mason LLP; Mrachek Fitzgerald Rose Knonpka Thomas & Weiss, PA; Roberts & Durkee, PA; and Levin Papantonio Thomas Mitchell Rafferty

Proctor PA (collectively "Individual Counsel), all of whom agreed to share Parker Waichman's costs (my fees and expenses) for work on the individual settlement agreements.

11. I successfully negotiated an agreement with Taishan, effective March 6, 2019, that operates as an offer to 498 individual clients represented by Individual Counsel. The agreement was filed under seal, as ordered by Judge Cooke.

12. The Notice letters issued by Individual Counsel to individual clients regarding the Taishan settlement offer informed clients that they would remain as member of the Amorin Class if they declined the settlement offer.

13. Following entry of a stay by Judge Cooke (See ECF No. 196), which prevented individual plaintiffs from accepting the Taishan offer, I was informed that Class Counsel was engaged in settlement negotiations with the defendants toward a potential global resolution and that a mediation was scheduled.

14. I immediately notified Interim Lead Counsel, Patrick Montoya, of Individual Counsel's objection to any actions that may harm the right of the plaintiffs eligible to accept the Taishan offer.

15. On April 29, 2019, I sent a letter to Mr. Montoya questioning the extent of his authority and stating that I would attend the mediation out of an abundance of caution to preserve the rights Individual Counsel's clients under the Taishan settlement offer.

16. On April 30, 2019, I sent a letter to the mediator, John S. Freud, advising him that I would be attending the mediation.

17. On May 22-23, 210, I attended the mediation, but was not involved in the negotiations between Class Counsel and defense counsel.

3

18. Near the end of the mediation, I was informed that an agreement in principle was reached that excluded all 498 plaintiffs eligible to accept the Taishan offer. I expressed my objection to Class Counsel and to counsel for Taishan that these plaintiffs being effectively removed from the *Amorin* class while the stay was in place and before accepting the individual settlement offers. I have since renewed my objection on multiple occasions.

19. No individual settlement agreements were accepted, and thus executed, until after the stay was lifted on June 6, 2019. See ECF No. 313.

20. Class Counsel has not assisted Individual Counsel in advising the excluded class members regarding the terms of the Global Settlement or their rights relating thereto.

21. To date, 492 of the 498 individual clients have accepted the Taishan offer.

22. Individual Counsel have paid my firm $593,462.90 for work solely related to the individual Taishan settlement agreements. Additional fees and expenses of roughly $100,000.00 are owed.

23. My work continues as I help to administer the settlements and advice individual clients about their rights under the agreements.

I declare under penalty of law that the foregoing is true and correct.

Executed on September 20, 2019.

/s/ Jimmy R. Faircloth, Jr.
Jimmy R. Faircloth, Jr.

4