# EXHIBIT "2"

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **EDUARDO AND CARMEN AMORIN,** *et al.*, **individually, and on behalf of all others similarly situated,** | |
| **Plaintiffs,** | **Case No. 1:11-CV-22408-MGC** |
| **v.** | |
| **TAISHAN GYPSUM CO., LTD. f/k/a SHANDONG TAIHE DONGXIN CO., LTD.; TAIAN TAISHAN PLASTERBOARD CO., LTD.,** *et al.*, | |
| **Defendants.** | |

## CLASS COUNSEL'S REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR AN AWARD OF COMMON BENEFIT COSTS AND/OR FEES OUT OF THE PROCEEDS OF THE FLORIDA INDIVIDUAL SETTLEMENT

## I. INTRODUCTION

Class Counsel submit this Reply Memorandum in response to the remaining two "Settling Attorneys"[1] who opposed our motion for an award of Common Benefit Costs and/or Fees out of the proceeds of the Florida Individual Settlement ("FIS"). Nothing set forth in their opposition warrants a denial of our fee petition, which is amply justified by the record and governing fee jurisprudence. In fact, their Response in opposition is striking for its efforts to deny what they ultimately concede: "there is authority to award Class Counsel a percentage of the contractual contingency fees from the individual settlements" (ECF No. 337-1 at 17).

---

[1] "Settling Attorneys" are comprised of: (i) Faircloth Melton Sobel & Bash, LLC, (ii) Parker Waichman LLC ("Parker Waichman"), (iii) Milstein Jackson Fairchild & Wade LLC ("Milstein"), (iv) Whitfield Bryson & Mason LLP, (v) Mrachek Fitzgerald Rose Konopka Thomas & Weiss, PA, (vi) Roberts & Durkee, PA, and (vii) Levin Papantonio Thomas Mitchell Rafferty Proctor PA. Although, Class Counsel's motion was directed to all the Settling Attorneys, only Parker Waichman and Milstein (through Jimmy Faircloth) responded under the newly minted convention of "Individual Counsel." As the motion is unopposed by the other Settling Attorneys, who have conceded that significant common benefit efforts of Class Counsel contributed to the creation of the FIS, an order granting Class Counsel's motion as to them should issue directing them to pay 20% of the proceeds from each of their FIS clients' recoveries.

1

After ten years of litigation overseen, conducted and paid for at great expense and effort by Class Counsel, Individual Counsel have the temerity to argue that their rogue efforts over the past year to negotiate an inventory settlement for just their Florida *Amorin* clients, separate and apart from the ongoing class efforts to prosecute the claims of both *Brooke* and *Amorin* claimants in all jurisdictions (including Florida, Louisiana, and Virginia), is what brought Taishan to the bargaining table. But facts are stubborn things and the facts remain that Class Counsel have been the driving force behind it all since the inception of this litigation over ten years ago. It is indisputable that Class Counsel effectuated expensive and complicated service of process on foreign entities under the Hague Convention, established jurisdiction over Taishan and its wholly-owned subsidiary TTP, and over BNBM in Florida, obtained default judgments against Defendants, certified a litigation class, which as a result of the default judgments established liability for all *Amorin* class members (including every Plaintiff in the FIS), proved to this Court that the rulings obtained in the MDL were correct and should be adopted in this tribunal,[2] presented the trial plan to resolve all of the Florida *Amorin* Plaintiffs' remediation damage claims on a formulaic basis through a process overseen by the Court-appointed Special Master, and implemented a trial plan to resolve other losses by prosecuting the Priority Plaintiffs' claims in anticipation of trials that were scheduled to begin in July 2019. Individual Counsel depended on the efforts of Class Counsel to prosecute all their clients' claims, which placed mounting pressure on Taishan to resolve the litigation. And, Individual Counsel contributed nothing towards the escalating litigation expenses incurred by Class Counsel.

Having tirelessly performed such work at the behest of the clients of Individual Counsel, which greatly inured to their common benefit and the benefit of Individual Counsel (who performed virtually no services for their clients over the past decade), Class Counsel are entitled to be compensated. And the leading authority for compensating counsel appointed by a Court to oversee complex litigation from the proceeds of each settlement recovery originated in this District. *See In re Air Crash Disaster at Florida Everglades on December 29, 1972*, 549 F.2d 1006 (5th Cir. 1977).

---

[2] In its Order of November 16, 2018, the Court ruled: "the Court **ADOPTS** <u>all</u> of Judge Fallon's findings of facts and legal conclusions." (ECF No. 112 at 2)., Thus, the Court accepted the MDL Court's finding of adequacy of Class Counsel and continued Class Counsel's formal authority to represent the interests of all class members – a fact overlooked by Individual Counsel.

To avoid this controlling authority, Individual Counsel ignore it altogether and instead attempt to besmirch Class Counsel for having "refused" Mr. Faircloth's invitation "to involve the PSC in the negotiations"[3] that led to the FIS (ECF No. 337-1 at 5). But unmentioned is that the invitation came with a catch attached to it, *i.e.,* a demand for a pay-off of his client's common benefit fees in the unrelated Knauf settlement, which was pending before the MDL court at the time, as well as $2 million for his fees performed on behalf of Parker Waichman. The demand was explicit: "we must <u>first</u> resolve [Parker Waichman's] common benefit and expense issues." *See* Supplemental Declaration of Sandra L. Duggan ("Duggan Decl.") at ¶13 [Attached hereto as Exhibit "A"]. This illegitimate and inappropriate solicitation to link the Taishan clients' recovery to Parker Waichman's and Mr. Faircloth's fee regarding Knauf clients was properly rejected by Class Counsel, whose allegiance to the Court and representation of all the Plaintiffs in the litigation never wavered. *Id.* at ¶14.

Equally unfounded is Individual Counsel's contention that Class Counsel have unclean hands and breached a fiduciary duty owed to the 498 FIS Plaintiffs because they were excluded from the class definition in the Global Settlement or because Class Counsel withdrew from their representation (a false fact). Individual Counsel regularly insisted that they represented their clients individually and would settle their claims outside of any class-wide settlement process, which they chose to do. In their Response, Individual Counsel portray Class Counsel's deference to Individual Counsel's insistence to negotiate separately for their clients as a breach of fiduciary duty, when the undisputed facts prove that Mr. Faircloth objected to Class Counsel entering into negotiations on behalf of his 498 FIS clients, that Mr. Faircloth appeared at the mediation purporting to represent his 498 FIS clients individually, and at the June 5, 2019 Hearing announcing the settlement, Mr. Faircloth insisted that he was "speaking for the 498." *See* Duggan Decl. at ¶¶24-28. Further weighing against these false accusations, is the presence of the "Most Favored Nations" clause ("MFN") in the FIS, which enabled Individual Counsel to utilize the work-product of Class Counsel, whose labor provided a common benefit to all claimants, including the 498 FIS claimants whose settlement values improved approximately 46%, from approximately $27.7

---

[3] Declaration of Jimmy R. Faircloth, Jr., ¶8 (ECF No. 337-2).

million to $40.7 million as a result of Global Settlement's impact on the operation of the MFN.[4]

As demonstrated below, the work-product of Class Counsel conferred a significant benefit upon the 498 FIS Plaintiffs and Individual Counsel. Both *Florida Everglades* and *Home Depot* provide ample authority for this Court to award a percentage assessment upon the proceeds of the FIS, *i.e.*, the individual recoveries from each FIS Plaintiff's settlements. Because Class Counsel were not parties to a contingency fee contract with Individual Counsel's 498 FIS Plaintiffs, Individual Counsel's arguments that Class Counsel are subject to forfeiture of their fee based on Florida contractual law is misplaced. Further, awarding Class Counsel a percentage award for common benefit work readily satisfies the *Camden I* factors,[5] which are not offset by Individual Counsel's groundless assertions of "unclean hands." And there is no justification for the discovery of Class Counsel's time records sought by Individual Counsel whose previous requests of the same material were refused by the MDL court.[6]

## II.    FACTUAL BACKGROUND

In our moving papers, Class Counsel recounted the significant procedural history of this litigation and the tremendous efforts expended over the past decade to achieve the resolution of this litigation.[7] Individual Counsel responded with a less-than-complete and inaccurate recitation of the historical background to support their erroneous portrayal of Class

---

[4] *See* Supplementary Announcement re Settlement between Subsidiary Taishan Gypsum Co., Ltd. and some of the claimants in Amorin case in the US Drywall Litigation by Beijing New Building Materials Public Limited Company at 3 ("Taishan's maximum payment obligation under the Settlement Agreement and Release will be capped at $40,724,422.86") [Duggan Decl., Exhibit 2].

[5] *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir. 1991).

[6] *See infra* at 14 n.14.

[7] Unlike the Knauf settlements, where (i) the Defendants settled far earlier (in 2012), (ii) Class Counsel had far less involvement in processing the individual client cases, (iii) Class Counsel recovered 52% of the total Knauf fees awarded (representing a 16.6% recovery of a 32% contingency fee), and (iv) individual counsel recovered 48% of the total Knauf fees awarded (representing a 15.4% recovery of a 32% contingency fee), here, by contrast, the work-up of the Taishan clientele cases involved enormous input and efforts by Class Counsel over a far lengthier time period (more than 10 years). *See, e.g.*, Duggan Decl. ¶¶5 (a-p) & 9 (a-p) and *see also, generally*, Montoya & Duggan Decl. [ECF. No. 330-1]. Therefore, Class Counsel's request for 20% of the total recoveries from the proceeds of the FIS is justified.

4

Counsel allegedly having failed or abandoned their clients and not deserving a fee.  For the avoidance of doubt, a brief recounting to set the record straight is in order.

Since the initial hearing following remand, Mr. Faircloth appeared on behalf of approximately 280 Parker Waichman clients and made clear his position that "Mr. Montoya has no authority to speak for Parker Waichman's clients."  Transcript of Status Conf. dated 7/13/2018 at 22 [ECF No. 40].  Yet, despite this contention, Individual Counsel allowed Mr. Montoya and Class Counsel to represent these very 280 clients, to continue to prosecute the claims of all of their *Amorin* clients in Florida, all of their *Amorin* clients in other jurisdictions, and all *Brooke* clients throughout the country.  In fact, without any objection from Individual Counsel, Class Counsel undertook significant and substantial efforts to achieve the maximum recovery possible for more than 1,700 Plaintiffs.  Duggan Decl. ¶5.

Based on Class Counsel's extensive briefing and argument in Court, on November 16, 2018, the Court entered an Order "**ADOPT[ING] all** of Judge Fallon's findings of facts and legal conclusions" including the MDL Court's orders (1) certifying the *Amorin* class, (2) holding all of the Defendants in default, (3) establishing liability as to all Defendants, and (4) approving the remediation damages formula as a reasonable and reliable measure of the remediation damages which the Court would apply to determine the appropriate amount of Plaintiffs' property damages [ECF No. 112 at 2-3].  Further, the Court adopted a two-track Trial Plan to resolve Plaintiffs' claims on an expedited basis.  First, the Court appointed Special Master Tiffani Lee [ECF No. 110] to calculate all Florida *Amorin* Plaintiffs' remediation damages by May 31, 2019, based on Judge Fallon's remediation damages formula.  The Court permitted limited discovery on the Chinese Drywall products attributed to Taishan and BNBM, under air square footage of Plaintiffs' properties, and ownership status, and set a schedule for Defendants to assert contests to Plaintiffs' remediation damages [ECF No. 112 at 6-8].  Second, the Court set an aggressive schedule to try within eight months the other damages of 20 Priority Plaintiffs selected by Plaintiffs, including claims for alternate living expenses, loss of use and enjoyment, lost rent, bankruptcy, foreclosure, and short sale [ECF No. 112 at 9-11].  Duggan Decl. ¶6.

Immediately, upon entry of the Court's Order, Class Counsel constituted several trial teams to meet the tight deadlines and requirements set by the Court, all with an eye towards maximizing the resolution of these cases as expeditiously as possible.  On a regular basis,

Individual Counsel were advised of the many common benefit efforts being made on behalf of all of the Florida Plaintiffs without complaint. Duggan Decl. ¶8. At no time during this grueling process did Mr. Faircloth, Parker Waichman, or Milstein object to any efforts on our part to preserve their clients' claims and seek the maximum recovery possible under the law. On the contrary, they allowed us to expend significant efforts (which included thousands of hours of legal time and thousands of dollars) to work up the remediation damages claims of all Florida *Amorin* Plaintiffs, including their clients. Duggan Decl. ¶10. By silently benefitting from these efforts and now objecting to compensate Class Counsel for them, it is these Individual Counsel who present the Court with less than "clean hands."

On or about October 2, 2018, Mr. Faircloth contacted Class Counsel regarding settlement talks he was engaged in with Taishan to resolve his inventory of *Amorin* cases in the litigation. Mr. Faircloth's discussions with Taishan did not include resolution of any non-Florida cases, any BNBM cases, or any *Brooke* cases, which had significant statute of limitations problems and no defaults against Defendants. Mr. Faircloth offered to bring us into his discussions with Defendants, but only on one condition: "[b]efore going further, we must <u>first</u> resolve [his] client's common benefit and expense issues [referring to Parker Waichman's dispute with the Fee Committee regarding Knauf settlement fees and expenses]." *See* Email from Mr. Faircloth dated 10/2/2018 [ECF No. 221-2]. About a month later, Mr. Faircloth elaborated that he would insist that "all claims [against Taishan] be included [in a Taishan settlement] *if [we] support[ed] a reallocation on the fee issues as reflected on the attached documents* [referring to charts prepared by Mr. Faircloth that proposed to reallocate common benefit and individual counsel Knauf fees awarded by Judge Fallon such that Parker Waichman's recovery would be substantially increased]." *See* Email from Mr. Faircloth dated 11/2/2018 [ECF No. 221-1] (emphasis in original) (filed under seal). In this same communication, Mr. Faircloth pointed out that his "proposal" to broaden settlement talks with Taishan in an effort to include additional Plaintiffs would require a payment of $2,000,000 to him for his fees (half of which would be charged to individual counsel since they would be getting the benefit of Mr. Faircloth's efforts to dispute the Knauf fee). *Id.* Meanwhile, Judge Fallon had already determined that the only "accomplished results" of Mr. Faircloth's fee dispute efforts were "havoc and needless delay." (MDL Rec. Doc. 21168 at 23). Duggan Decl. ¶13.

Class Counsel made it clear to Mr. Faircloth in several in-person meetings and conversations over the phone that took place in October and November, 2018, that any attempt to tie the resolution of Parker Waichman's Knauf fee dispute in the MDL (which was solely in Parker Waichman's financial interest) to a global resolution of Parker Waichman's clients' cases against Taishan in Florida was inappropriate, improper, and fraught with ethical problems. Duggan Decl. ¶14.

As soon as Class Counsel succeeded in convincing the Court to adopt all of the MDL Court's factual findings and legal conclusions prior to remand (*see* Trial Plan Order [ECF No. 112]), Mr. Faircloth suspended his negotiations with Taishan, because "Team Taishan ha[d] repeatedly insisted that they would withdraw the offer to PW [Parker Waichman] if Judge Cooke ruled in their favor and, if she ruled against them, they would litigate and appeal." *See* Email from Mr. Faircloth dated 11/16/2018. Duggan Decl. ¶15. Class Counsel heard nothing further from Individual Counsel regarding an inventory settlement with Taishan until March 7, 2019, when the Settling Attorneys filed a Notice of Settlement Agreement on behalf of 498 Florida *Amorin* Plaintiffs and a motion to lift PTO 32 in the MDL (MDL Rec. Docs. 22125 & 22126) [*see* ECF No.187]. Duggan Decl. ¶16.

Those filings made plain that the Settling Attorneys were attempting to resolve their inventory of Florida *Amorin* claimants (all of whom were members of a certified class) without any judicial oversight and outside the procedural safeguards of Rule 23 of the Federal Rules of Civil Procedure. Accordingly, Class Counsel felt legally obligated to file a motion to protect those class members [ECF No. 192].[8] In our filing before this Court we made clear that "Class Counsel fully support the fair, reasonable, and adequate resolution of Class claims by knowing and fully informed Class Members" and that "Class Counsel do not have any desire or intention to stand in the way of homeowners who want to amicably resolve their Chinese Drywall claims." *Id*. at 1. However, given the importance of the interests at stake, Class Counsel asked the Court to conduct an "inquiry into the details of the proposed settlement, the settlement negotiations, and the accuracy and completeness of the information conveyed to any Class Members about their rights with regard to this settlement." *Id*. at 3. Contrary to Mr. Faircloth's contentions, Class Counsel did not object to the FIS. Class

---

[8] Class Counsel filed a similar motion before Judge Fallon seeking a Rule 23(d) notice to the Class, in coordination with this Court. *See* ECF No. 188.

Counsel have always "favor[ed] the prompt payment of fair compensation to Class Members for their damages caused by Taishan's Chinese Drywall," but Class Counsel were concerned that "without judicial oversight, there [was] no protection for the *Amorin* Class Members to ensure they w[ere] given accurate, complete or balanced information as to the benefits and/or risks of participating in the settlement." *Id.* Duggan Decl. ¶17.

Without any further briefing, on March 19, 2019, this Court entered an Order Striking the Joint Notice of Settlement Agreement filed by Parker Waichman [ECF No 196]. Tellingly, the Court found that the FIS "does not comply with the requirements for a class action settlement because it does not provide adequate notice to all affected parties nor does it allow adequate time for the Court to review the terms of the agreement for fairness. Consequently, the Court stayed execution of the FIS until further order of the Court and directed the Settling Parties to file their proposed settlement under seal so the Court could review it (something they had not previously done). The Court indicated that after reviewing the FIS, the Court would schedule a hearing and determine procedures for notice to the class members involved. *Id.* at 2. Duggan Decl. ¶18.

On April 18, 2018, the Court set a hearing for June 5, 2019, on Class Counsel's motion for an Order to protect the Florida *Amorin* Class and on Parker Waichman's motion to lift the stay on the FIS [ECF No. 242]. Duggan Decl. ¶ 19. Also that day, Individual Counsel filed objections to the Notice of Mediation scheduled with Mr. John Freud for May 22-23, 2019, implicating their rights to represent their clients. Duggan Decl. ¶¶20-22.

On June 5, 2019, the Court held a hearing regarding the FIS. Mr. Faircloth appeared on behalf of Parker Waichman and its clients in this litigation, and Mr. Milstein appeared on behalf of 58 of his clients who were Florida *Amorin* class members, all of whom were offered the FIS by Taishan. Transcript of Motions Hearing dated 6/5/2019 [ECF No. 315] at 4. Duggan Decl. ¶23. At the hearing, Taishan's counsel Christy Eikhoff argued that the FIS constitutes "individual settlements" that "do not require a fairness review under rule 23." According to Taishan, "[t]he reason that the settlement communications were submitted to [the Court] were for the Court's review in terms of the adequacy of the notice to [the class members], but not for a review of fairness of the actual terms [of the settlement]." *Id.* at 10. When the Court asked Taishan's counsel if the Defendant "contemplate[d] settling with people who don't want to settle," Ms. Eikhoff responded: "Well, so we have reached an

agreement with their attorneys, and they have multiple chances to opt into an individual settlement agreement with us. And if they do not choose to reach a settlement agreement with us, then those [Plaintiffs] will be handled just like any other individual claim would be." *Id.* (emphasis added). *Id.* ¶24. The Court asked Mr. Faircloth if he agreed with Taishan's statement describing the FIS. He responded affirmatively with an explanation. *Id.* ¶26. Without objection, Individual Counsel confirmed that they were in agreement with Taishan's counsel and that they represented their clients *individually* and not on a class basis. *Id.* ¶¶27, 28.

## III. ARGUMENT

### A. THE COMMON BENEFIT DOCTRINE ESPOUSED IN *FLORIDA EVERGLADES* PERMITS THE AWARD OF ATTORNEYS' FEES FROM THE FEES RECEIVED BY OTHER PLAINTIFFS' COUNSEL

Class Counsel's initial memorandum described how the controlling precedent of *In re Air Crash Disaster at Florida Everglades on December 29, 1972*, 549 F.2d 1006 (5th Cir. 1977), the seminal authority for modern MDL fee practice, endorsed the practice of applying the common fund doctrine to MDL Common Benefit Attorneys to enable them to be compensated from individual, non-class settlements achieved in complex litigation. (ECF 330-1 at 10). Class Counsel also explained how the Eleventh Circuit in *Home Depot* recently confirmed this reasoning:

> A rule establishing that class counsel can get no credit for settlements with putative class members done before the class as a whole settles would entrench the very unjust enrichment and collective-action problem that class actions are designed to solve. Plus, "[t]here is no question ... that federal courts may award counsel fees based on benefits resulting from litigation efforts even where adjudication on the merits is never reached, e.g., after a settlement."

*Id.,* quoting *Home Depot,* 931 F.3d at 1094 (citations omitted).[9]  In addition, the Eleventh Circuit in *Camden I* directed that "attorneys' fees awarded from a common fund shall be based

---

[9] Individual Counsel take issue with the suggestion that they are unjustly enriched by Class Counsel's common benefit work because they understand to have earned their fee by negotiating the FIS with Taishan. (ECF 337-1 at 16). The insistence that Individual Counsel have earned a private fee for their services is both undisputed and irrelevant to the matter at hand. The question is not whether private fees under contracts are owed by the settling clients of Individual Counsel, but whether those counsel will be "unjustly enriched" unless a reasonable portion of the fees owed by these clients is apportioned

upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774. This authority was never addressed by Individual Counsel.

Individual Counsel ignored this established precedent even though the reasoning of these cases clearly applies to the fee petition now pending before this Court. For example, confronting similar arguments to those now raised by Individual Counsel that only individual settlements were present and not a collective fund, the Court in *Florida Everglades* rejected such unprincipled contentions by noting:

> Appellants approach the case as though it were purely a private contest over fees between competing lawyers. This approach is a nostalgic luxury no longer available in the hard-pressed federal courts. It overlooks the much larger interests which arise in litigation such as this. Each case in the consolidated case was private in its inception. But the number and cumulative size of the massed cases created a penumbra of class-type interest on the part of all the litigants and of public interest on the part of the court and the world at large. The power of the court must be assayed in this semi-public context.[10]

The Court thereafter recognized that lead counsel become "officers of the court" whose services extend far beyond merely advancing the interests of their personal clients.[11] Acknowledging that it was unnecessary to have a fund in court provided there was power of the court to control the award, it affirmed the district court's award "of the monies involved in all suits pending before the court" as being the common fund. *Id.* at 1018, citing John P. Dawson, *Lawyers and Involuntary Clients: Attorney Fees from Funds*, 87 HARVARD L. REV. 1597 (June 1974). And contrary to Individual Counsel's misplaced contentions that there are only individual contingency fee settlements and no common fund, Dawson noted, "Funds can appear in many different forms, and in some instances may be subdivided into several minifunds. This fund concept is employed to realize the broadly defined purpose of recapturing unjust enrichment." *Id.* at 1597.

In addition to this controlling authority, Individual Counsel should be estopped from challenging the principle that Class Counsel can receive fees from the funds obtained from

---

and awarded to counsel whose common benefit work, both before and after remand, substantially contributed to the clients' recovery.
[10] *Id.* at 1012.
[11] *Id.* at 1017.

the FIS for each claimant based on the representations of Individual Counsel in the Unopposed Motion to Lift PTO 32 for Individual Settlements on Remand and Request for Expedited Consideration (MDL Rec. Doc. 22283) filed by Mr. Faircloth in the MDL, which was the predicate for the current fee petition. Specifically, Individual Counsel's proposed order for the MDL Court regarding the lifting of PTO 32, provided that the MDL Court would authorize this Court to consider the instant petition for "an award of common benefit fees and costs **from the proceeds of the Florida Individual Settlement**." (MDL Rec. Doc. 22283-1 (emphasis added)). This proposed order was endorsed by Judge Fallon on July 16, 2019 (MDL Rec. Doc. 22289). Because Individual Counsel consented to this procedure (ECF No. 320-7, ¶3) ("Judge Cooke has jurisdiction over a request by Class Counsel for an award of Common Benefit Cost and/or Fees *out of the Florida Individual Settlement funds*") (emphasis added), they should not be permitted to avoid it by taking an inconsistent position before this Court in their response.

Surprisingly, the controlling on-point authority of *Florida Everglades* is never mentioned by Individual Counsel. Instead, they posit that Florida contract law governs the obligations of Class Counsel. For this incorrect proposition, Individual Counsel mistakenly argue that *Faro v. Romani*, 641 So.2d 69 (Fla. 1994), applies. In *Faro*, the Florida Supreme Court ruled that an attorney who voluntarily withdraws in a contingency fee case before the happening of the contingency is not entitled to a fee, unless the client's conduct makes continued performance impossible. *Id.* at 71. The fallacy of this argument is that Class Counsel have no contingency fee contract with any of the 498 FIS Plaintiffs and have made no pretense of a right to a fee based upon a contractual theory.[12] Moreover, as described above, Class Counsel never withdrew from representing these Plaintiffs and, more to the point, never withdrew from their position that they have performed legal services which have substantially benefitted these Plaintiffs. Rather, Individual Counsel made plain their intent on representing their clientele individually and separate from the other *Amorin* class members, which request was respected and observed by Class Counsel. Plainly, under these circumstances, *Faro* is

---

[12] For a general discussion of the obligations of MDL Counsel to the litigants in an MDL *see* Stephen J. Herman, *Duties Owed by Appointed Counsel to MDL Litigants Whom They Do No Formally Represent,* 64 LOYOLA L. REV. 1, 22 (2018).

inapposite, and *Florida Everglades* directs the rationale for assessing Class Counsel's entitlement to common benefit attorney's fees.

### 1. Individual Counsel's Arguments that Class Counsel Have "Unclean Hands" Are Baseless and Unfounded

Without any support in the record, Individual Counsel contend that Class Counsel have forfeited their entitlement to a common benefit fee based on the equitable sanction of "unclean hands" because 1) there was no "formal authority" established and 2) Class Counsel breached their fiduciary duty to the 498 FIS Plaintiffs by excluding them from the Global settlement class. (ECF No. 337-1 at 9-16). Neither argument is justified.

First, as Individual Counsel concede, this Court did provide formal authority at the July 13, 2018 Hearing by appointing Mr. Montoya Interim Lead Counsel. (ECF No. 40 at 22). Later, by adopting the MDL Court's class certification ruling, which included the appointment of Class Counsel, the Court firmly implemented a structure of Plaintiffs' counsel to conduct the litigation. Notably, Individual Counsel never formally challenged these rulings prior to the resolution of the litigation. *See* Duggan Decl. ¶10. *See also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1145 (8th Cir. 1999) (criticizing objectors for never having "made a formal motion to decertify or divide the class").

Second, throughout the May 22-23, 2019 mediation, Individual Counsel insisted on their separate representation of the 498 FIS Plaintiffs. Duggan Decl. ¶¶20-29. And contrary to the assertion by Individual Counsel in their response, at the June 5, 2019 Hearing, they agreed with Taishan that any FIS Plaintiff that did not accept an individual settlement, "those [Plaintiffs] would be handled just like any other **individual** claim would be." Duggan Decl. ¶¶24 (emphasis added). Moreover, the presence of the MFN in the FIS enabled the 498 FIS claimants to improve their settlement values 46%, from approximately $27.7 million to $40.7 million as a result of Class Counsel's Global Settlement's impact on the operation of the MFN. Under these circumstances, Class Counsel did not breach any fiduciary duty. Duggan Decl. ¶30.

Individual Counsel's confection that Class Counsel have unclean hands is completely unfounded and contrary to the record facts. Their argument is simply a veiled attempt to maximize their fees by denying Class Counsel's entitlement to the fees that we justly earned. Duggan Decl. ¶31.

**B.  The Eleventh Circuit's Directive that Courts Shall Award Common Benefit Fees Based on a Percentage of the Fund Avoids the Need for the Discovery Requested by Individual Counsel**

*Camden I* announced the policy decision of the Eleventh Circuit to adhere to percentage of fund analyses over the lodestar method. *Camden I*, 946 F.2d at 774.  Following the recommendations announced in *Court Awarded Attorney Fees,* Report of the Third Circuit Task Force, 108 F.R.D. 237, 242 (1985), most courts, including the Eleventh Circuit, recognized the inefficiencies attending the lodestar analysis with its demand for detailed evaluation of time records, and expressed a preference for the percentage-of-fund analysis to avoid protracted disputes over line-item time entries.

Bucking this clear expression of policy preference, Individual Counsel argue that Due Process requires that they be granted discovery to obtain all of Class Counsel's time records that support their fee petition.  (ECF 337-1 at 19).  Anticipating this argument and any concern for a lodestar cross-check, Class Counsel earlier produced the Corrected Affidavit of Philip A. Garrett, the MDL court-appointed Certified Public Accountant responsible for vetting time records pursuant to PTO 9.  (ECF No. 330-2)  This evidence provided summary analyses of time records produced in MDL 2047 detailing the work performed by Class Counsel after January 1, 2014.[13]  All told, Class Counsel expended over 104,539 hours prosecuting the claims of all the Plaintiffs with a lodestar calculated to be $71,906,164.00 (based on hourly rates at inception), well in excess of the amount requested in this motion. *Id.* These efforts were done at considerable expense with both held and shared costs exceeding $5.3 million, including the $594,176.22 cost of Mr. Garrett's services.  *Id.*  Despite all this hard work, effort and results provided by Class Counsel, none of the Individual Counsel contributed to any of these efforts.  They were quintessentially "free-riders" who now attempt to avoid a well-deserved payment to Class Counsel by suggesting they are entitled to detailed discovery of Class Counsel's time records.  Such a request should be denied.

---

[13] Class Counsel recognized that they were previously compensated under the Knauf settlement for their time from the inception of MDL 2047 to December 31, 2013, and therefore excluded that time from their submissions to this Court.  It goes without saying, however, that the work performed during that earlier time period is still relevant to consider since it too represents the common benefit efforts bestowed upon the 498 FIS Plaintiffs by Class Counsel.

In connection with the Knauf fee petition, Parker Waichman's identical demands for Class Counsel's time records were repeatedly rejected in the MDL. First, the Special Master in connection with his Recommendation on the allocation between common benefit counsel and individually retained counsel rejected the same request. *See* Special Master's Recommendations Concerning Attorneys' Fees and Expenses at 14 n.12 (Sept. 12, 2017) (MDL Rec. Doc. 20950), citing *Yamada v. Nobel Biocare Holding AG,* 821 F.3d 1058 (9th Cir. 2016), *order amended and superseded on other grounds*, 825 F.3d 536 (9th Cir. 2016) and *In re Genetically Modified Rice Litig.*, 764 F.3d 864 (8th Cir. 2014). The Special Master ruled in light of the application of the percentage-of-fund doctrine "that the time summaries which have been produced are sufficient under the circumstances." Then again, the Special Master in connection with discovery related to the allocation of the common benefit fees rejected the same request. *See* Special Master's Written Reasons Concerning Requests for Discovery (Sept. 26, 2018) (MDL Rec. Doc. 21798) ("The Special Master adheres to his previous determination that opening the door to the time sheets which underlie the Court-appointed CPA's materials is not appropriate under the circumstances."). Finally, the MDL Court, adopting the Special Master's ruling "as its own," refused to permit discovery of detailed time records. *See* October 15, 2018 Order (MDL Rec. Doc. 21851).[14]

---

[14] There is ample authority supporting the District Court's ruling. To begin, the MDL Court thoroughly vets all the time records presented to it pursuant to PTO No. 9. Further, it is widely accepted that the production of detailed time records is not required and, in fact, is often disfavored because review of such records is a time-consuming, laborious process, particularly in large cases. *See, e.g.*, *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 281 (6th Cir.), *cert. denied*, 137. S.Ct. 1065 (2017) (finding declarations by counsel acceptable and stating that all that is required is that "the documentation . . . must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation"); *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, MDL No. 2001, 2016 WL 5338012, at *18 (N.D. Ohio Sept. 23, 2016) (concluding "that objectors have no right to see Class Counsel's fee and expense records," especially where "any such review by objectors would not affect the Court's ultimate conclusion."); *In re Diet Drugs*, 582 F.3d 524, 539 (3d Cir. 2009) (approving of reliance on time summaries and stating that consideration of individual billing records is a "time-consuming process").

Indeed, the avoidance of reviewing detailed time records has been cited as an advantage of applying the "percentage-of-fund" approach to attorneys' fees in common fund cases. *See In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995) ("*Thirteen Appeals*") (recognizing the percentage-of-fund approach is often less burdensome to administer than the lodestar method in part because the judge does not need to review detailed time records); *see also In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*, 148 F.3d 283, 342 (3d Cir. 1998), *cert. denied*, 525 U.S. 1114 (1999) (finding no abuse of discretion denying access to time records because

Individual Counsel are plainly attempting to get an inconsistent opinion from this Court on a matter that has already been litigated in the MDL. There is no need to engage in the very type of satellite dispute sought to be avoided by the percentage-of-fund approach, when by any stretch of the imagination Class Counsel's lodestar far exceeds the requested award.

## IV.   **CONCLUSION**

Judge Fallon is very familiar with this case, having presided over the matter for the past decade. He has invested enormous judicial resources in the matter, including personally attending and overseeing depositions of Taishan witnesses in Hong Kong.  Demonstrating his encyclopedic knowledge of the case, on August 19, 2019, he presided over a hearing addressing the motion for preliminary approval of the Global Settlement. Following the hearing, Judge Fallon issued an order preliminarily approving the Global Settlement (MDL Rec. Doc. 22314), which also approved the notice plan. Notice of the settlement has begun, and publication notice is currently being implemented.  A Final Fairness Hearing is scheduled for December 11, 2019.  If matters proceed as anticipated, Judge Fallon will also soon determine the fee petition contemplated there. As a consequence, this Court could await that ruling before delving into the factually involved analysis required by *Camden I*.  Alternatively, this Court should grant the Motion for an Award of Common Benefit Costs and/or Fees Out of the Proceeds of the Florida Individual Settlement as to the Individual Counsel.  By default, the fee motion should be granted as to the remaining Settling Attorneys who have not opposed it.

---

the percentage-of-recovery methodology "counsels a cautious approach to additional fee discovery"); *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 49-50 (2d Cir. 2000) (approving the use of percentage fees and stating "we see no need to compel district courts to undertake the 'cumbersome, enervating, and often surrealistic process' of lodestar computation").  The court in *Thirteen Appeals* noted that getting away from detailed time records did not render them irrelevant because "time records tend to illuminate the attorneys' role in the creation of the fund"; however, "the shift in focus [away from time records] lessens the possibility of collateral disputes that might transform the fee proceeding into a second major litigation." *Id.*

Further, there may be ongoing litigation against Taishan (of opt-out claims from the Global Settlement and/or of claimants who reject the FIS here). Revealing Class Counsel's attorney work product through the production of their time records would give Taishan an unfair advantage to the detriment of Plaintiffs, solely to satisfy Mr. Faircloth's desire for a larger fee.  Such request for production should be denied.

Dated:  October 7, 2019                         Respectfully Submitted,

                                                /s/ Patrick S. Montoya, Esq.
                                                Patrick Shanan Montoya
                                                Fla. Bar No. 0524441
                                                Email: Patrick@colson.com
                                                Colson Hicks Eidson
                                                255 Alhambra Circle, PH
                                                Coral Gables, FL  33134-2351
                                                Telephone:  (305) 476-7400
                                                Facsimile:  (305) 476-7444
                                                *Interim Lead Counsel for Plaintiffs*
                                                *On behalf of Class Counsel*

# EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF FLORIDA

EDUARDO AND CARMEN AMORIN, *et al.*, individually, and on behalf of all others similarly situated,

        Plaintiffs,

v.

TAISHAN GYPSUM CO., LTD. f/k/a SHANDONG TAIHE DONGXIN CO., LTD.; TAIAN TAISHAN PLASTERBOARD CO., LTD., *et al.*,

        Defendants.

Case No. 1:11-CV-22408-MGC

---

**SUPPLEMENTAL DECLARATION OF SANDRA L. DUGGAN
IN SUPPORT OF CLASS COUNSEL'S MOTION FOR AN AWARD
OF COMMON BENEFIT COSTS AND/OR FEES OUT OF THE
PROCEEDS OF THE FLORIDA INDIVIDUAL SETTLEMENT**

SANDRA L. DUGGAN declares and states as follows:

    1.      I submit this supplemental declaration in further support of Class Counsel's Motion for an Award of Common Benefit Costs and/or Fees out of the proceeds of the Florida Individual Settlement ("FIS") (ECF No. 320) and in reply to the opposition thereto filed by the law firms of Parker Waichman LLC ("Parker Waichman") and Milstein Jackson Fairchild & Wade LLC ("Milstein") (collectively, "Individual Counsel") (ECF No. 337).[1] Except as otherwise noted, I have personal knowledge of the facts set forth in this declaration and could testify competently to them if called upon to do so.

---

[1] It is worth noting that the other "Settling Attorneys" – namely, Whitfield Bryson & Mason LLP, Mrachek Fitzgerald Rose Konopka Thomas & Weiss, PA, Roberts & Durkee, PA, and Levin Papantonio Thomas Mitchell Rafferty Proctor PA. did not file an opposition to our Fee Petition.

**For More Than A Decade, Common Benefit Counsel Devoted Their Legal
Practices to Prosecuting Thousands of Plaintiffs' Claims Alleging Remediation
Damages and Other Losses Caused by Defendants' Defective Chinese Drywall**

2.       At the outset of the MDL in 2009, Judge Fallon appointed Arnold Levin as Plaintiffs' Lead Counsel to coordinate the responsibilities of the Plaintiffs' Steering Committee ("PSC") and to "[a]ct as a spokesperson for all plaintiffs ... subject, of course to the right of any plaintiff's counsel to present ... different positions." MDL Pretrial Order No. 8 [MDL Rec. Doc. 144-2 at 3]. The MDL Court also appointed Russ Herman as Plaintiffs' Liaison Counsel. MDL Pretrial Order No. 3 [MDL Rec. Doc. 21 ]. Mr. Levin and the PSC were tasked by the MDL Court with the responsibility and authority, among other things, to "conduct all pretrial discovery on behalf of [P]laintiffs in all actions," prepare motions pertaining to Plaintiffs and oppose motions filed by Defendants against Plaintiffs, "[n]egotiate and enter into stipulations with Defendants regarding this litigation," and "[e]xplore, develop, and pursue all settlement options pertaining to any claim or portion thereof of any case filed in this litigation." *Id.* at 4.

3.       Since Mr. Levin's appointment, I have worked with Lead Counsel and the PSC on virtually a daily basis for more than a decade to prosecute the claims of all Plaintiffs in these Chinese Drywall proceedings, including the Plaintiffs in the certified *Amorin* class (which includes the 498 Plaintiffs involved in the FIS Settlement) and all Plaintiffs named on a *Brooke* Complaint (*e.g.*, *Brooke, et al. v. The State-Owned Assets Supervision and Administration Commission of the State Council, et al.*, Civ. Action No. 15-4127 (E.D. La.); *Brooke, et al. v. The State-Owned Assets Supervision and Administration Commission of the State Council, et al.*, Civ. Action No. 15-6631 (S.D. Fla.) (Miami Case No. 15-24348); *Brooke, et al. v. The State-Owned Assets Supervision and Administration Commission of the State Council, et al.*, Civ. Action No. 15-6632 (E.D. Va.) (Norfolk Case No. 15-506)).

4.       On September 26, 2014, the MDL Court certified the *Amorin* class of property owners with claims against the Taishan Defendants for damages relating to Chinese Drywall and appointed Lead Counsel Mr. Levin and Liaison Counsel Mr. Herman as Class Counsel. *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2014 WL 4809520, *14 (E.D. La. Sept. 26, 2014). In the class certification order, the MDL Court specifically found that all elements of Rule 23(a) and 23(b)(3) were met. *Id.* at *10-16.

2

5.      On June 6, 2018, the Judicial Panel for Multidistrict Litigation remanded the above-captioned *Amorin* action from MDL 2047 to this Court [ECF No. 13]. At the initial status conference on July 13, 2018, the Court ordered the parties to submit by August 10, 2018, a joint plan to move this case forward. *See* Transcript of Status Conf. dated 7/13/2018 at 21-22 [ECF No. 40]; Order Requiring Joint Plan [ECF No. Doc. 38]. In addition, the Court appointed PSC member Patrick Montoya as interim Lead Counsel for the *Amorin* Plaintiffs in Florida. 7/13/2018 Tr. at 22. At that hearing, Mr. Faircloth appeared on behalf of approximately 280 Parker Waichman clients and made clear his position that "Mr. Montoya has no authority to speak for Parker Waichman's clients." Transcript of Status Conf. dated 7/13/2018 at 22 [ECF No. 40]. Yet, despite this contention, Mr. Faircloth and Parker Waichman allowed Mr. Montoya, myself, and the leadership in the MDL to continue to prosecute the claims of all of their *Amorin* clients in Florida, all of their *Amorin* clients in other jurisdictions, and all of Parker Waichman's *Brooke* clients throughout the country. In fact, without any objection from Mr. Faircloth, Parker Waichman, or Milstein, we undertook significant and substantial efforts, often working around the clock on an expedited schedule, to achieve the maximum recovery possible for more than 1,700 Plaintiffs. Specifically, we performed the following tasks on behalf of all Florida litigants:

a.  We negotiated with Defendants a Joint Case Management Plan to resolve the *Amorin* cases [ECF No. 45]. The Joint Plan included a proposed schedule of pretrial deadlines, mediation, and trial dates. Based on this filing, the Court entered an Order setting trial dates and pretrial deadlines, including for the selection of 20 Priority Plaintiffs [ECF No. 47].

b.  We prepared and filed a motion to stay the non-Florida claims on the *Amorin* complaint while we prosecuted those claims in the MDL and other jurisdictions [ECF Nos. 49 & 63]. Dozens of these claimants are represented by Parker Waichman and Milstein.

c.  We opposed Defendants' motion to dismiss the non-Florida claims [ECF No. 57].

d.  On February 13, 2019, Patrick Montoya presented argument in support of our motion to stay and opposed Defendants' motion to dismiss the non-Florida

*Amorin* claims. Ultimately, the Court granted our motion and stayed all non-Florida claims on the *Amorin* complaint [ECF No. 195].

e. We prepared a motion to adopt a plan for resolution of the Florida Plaintiffs' claims for remediation and other damages [ECF Nos. 52 & 71]. In our papers, we argued that "the judicial labor [was] completed" because liability already had been established in the MDL by the PSC. Plaintiffs' Trial Plan Motion at 7. We contended that the only remaining issue to be determined on remand was the amount of damages, and we implored the Court to limit discovery to: 1) verification of under air square footage, 2) proof of Defendants' product in the affected properties, and 3) proof of ownership. *Id.* at 5.

f. We opposed Defendants' trial plan proposal, which essentially sought to relitigate all matters previously decided in the MDL in an effort to undo Plaintiffs' progress and further delay resolution of Plaintiffs' claims [ECF No. 64].

g. We opposed BNBM's motion to enforce trial rights, which challenged Judge Fallon's determination that liability has been established as to all Defendants – including BNBM [ECF No. 80].

h. We opposed Taishan's motion to reject application of the MDL Court's remediation damages formula [ECF No. 84].

i. We opposed Defendants' motion to enforce discovery rights, which sought to reopen discovery into liability and causation [ECF No. 88].

j. We responded to Defendants' motion to dismiss claims for failure to complete a Supplemental Plaintiff Profile Form [ECF Nos. 82 & 175].

k. We vetted and selected 20 Priority Plaintiffs for trial [ECF No. 73] and identified all fact witnesses for these Plaintiffs [*see* ECF Nos. 86, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150]. Parker Waichman submitted numerous Plaintiffs for consideration as Priority Plaintiffs, but without explanation withdrew their submission at the last minute before our filing was due.

l. We analyzed Defendants' selection of a different set of Priority Plaintiffs [ECF No. 72] and the list of fact witnesses identified for those Plaintiffs [ECF No. 153].

m. We filed a joint motion for a hearing to address the parties' competing trial plans and for a determination on which set of Priority Plaintiffs would be set for trial [ECF No. 89].

n. Pursuant to the Court's order, we filed supplemental briefing urging this Court to give entirely preclusive effect to Judge Fallon's findings of liability and to apply the remediation damages formula to Plaintiffs' claims [ECF No. 99].

o. We responded to Defendants' supplemental briefing addressing liability as to BNBM [ECF No. 100].

p. On November 7, 2018, Patrick Montoya and I presented oral argument in support of this Court giving entirely preclusive effect to the MDL Court's rulings prior to remand and in opposition to BNBM's motion seeking to erase Judge Fallon's prior decisions on default. *See* Transcript of Motion Hearing dated 11/7/2019 [ECF No. 109].

6. Based on our extensive briefing and argument in Court, on November 16, 2018, the Court entered an Order "**ADOPT[ING] all** of Judge Fallon's findings of facts and legal conclusions" including the MDL Court's orders (1) certifying the *Amorin* class, (2) holding all of the Defendants in default, (3) establishing liability as to all Defendants, and (4) approving the remediation damages formula as a reasonable and reliable measure of the remediation damages which the Court would apply to determine the appropriate amount of Plaintiffs' property damages [ECF No. 112 at 2-3]. Further, the Court adopted a two-track Trial Plan to resolve Plaintiffs' claims on an expedited basis.

a. First, the Court appointed Special Master Tiffani Lee [ECF No. 110] to calculate all Florida *Amorin* Plaintiffs' remediation damages by May 31, 2019, based on Judge Fallon's remediation damages formula. The Court permitted limited discovery on the Chinese Drywall products attributed to Taishan and BNBM, under air square footage of Plaintiffs' properties, and ownership status, and set a schedule for Defendants to assert contests to Plaintiffs' remediation damages [ECF No. 112 at 6-8].

b. Second, the Court set an aggressive schedule to try within eight months the other damages of 20 Priority Plaintiffs selected by Plaintiffs, including claims for alternate living expenses, loss of use and enjoyment, lost rent, bankruptcy, foreclosure, and short sale [ECF No. 112 at 9-11].

7. This was a watershed moment in the litigation, which had been ongoing for more than nine years. Both Mr. Faircloth and Mr. Milstein acknowledged this when they congratulated us the day the Trial Plan Order was entered.

8. Immediately, upon entry of the Court's Order, we constituted several trial teams to meet the tight deadlines and requirements set by the Court, all with an eye towards maximizing the resolution of these cases as expeditiously as possible. I personally oversaw the management of this complex litigation from the Plaintiffs' perspective and I coordinated the efforts expended on behalf of all Plaintiffs, including the Florida *Amorin* Plaintiffs represented by Mr. Faircloth, Parker Waichman, and Milstein. Often, multiple, overlapping events were scheduled in different locations across the state of Florida and in many cities in the U.S., including Atlanta, Chicago, Irvine, San Francisco, New Orleans, and Norfolk, requiring an incredible amount of detailed organization and coordination among multiple teams to ensure consistency of position and to maximize the recovery for all Chinese Drywall litigants.

9. On a regular basis, I circulated spreadsheets to Plaintiffs' individual counsel, including Mr. Faircloth, Jerry Parker and other counsel from Parker Waichman, and Mark Milstein, showing the status of assignments and tasks that needed to be completed, upcoming deadlines, and important developments in the proceedings among the relevant jurisdictions. At all times, I invited interested counsel to assist with common benefit efforts and I made myself available 24/7 by email and cell phone to answer questions and give direction where needed. Similarly, others partners from my firm (Fred Longer and Keith Verrier), Florida Lead Counsel and PSC member Patrick Montoya and Natalie Rico from Colson Hicks, other members of the PSC (Richard Serpe, Jerry Meunier, Pete Albanis, Emma Schwab from Barrios, Kingsdorf & Casteix, and Pearl Robertson from Irpino Law), Steve Herman from Plaintiffs' Liaison Counsel's firm Herman, Herman & Katz, Florida Counsel Allison Grant, Jeff Breit from Breit Cantor, Holly Werkema from Baron & Budd, and others made

6

themselves available to help individual counsel and pro se litigants with the prosecution of their cases. Specifically, in Florida:

  a. We negotiated a joint stipulation regarding authentication and hearsay regarding certain categories of documents for the Priority Plaintiffs [ECF No. 156].

  b. We engaged experts around the country in support of Plaintiffs' other losses and the current measure of Plaintiffs' remediation damages.

  c. We defended Plaintiffs' expert depositions and took discovery of Defendants' rebuttal experts.

  d. We opposed Defendants' *Daubert* motions seeking to strike our experts [ECF Nos. 272, 273, 280] and we filed a motion to strike Defendants' proposed expert on proper remediation protocols [*see* ECF No. 244].

  e. We propounded written discovery on Defendants and scheduled 30(b)(6) depositions of Taishan [ECF No. 160] and BNBM [ECF No. 167] regarding Product ID.

  f. We prepared briefing and presented argument to the Special Master at a hearing to determine whether the various categories of Chinese Drywall present in Plaintiffs' properties should be attributed to Defendants despite their denials.

  g. We filed objections to and an appeal from the Special Master's Report and Recommendation regarding Product ID categories attributable to Taishan [ECF No. 253].

  h. We coordinated and assisted in the defense of dozens of Priority Plaintiff and other fact witness depositions.

  i. We analyzed and approved the protocol to be used to inspect Plaintiffs' homes and we coordinated and monitored the inspections.

  j. We responded to remediation damages discovery directed to more than 1,700 Florida Plaintiffs, including those represented by Mr. Faircloth, Parker Waichman, and Milstein.

  k. We responded to 17 categories of individualized preliminary and final contests lodged against 1,700 Plaintiffs' claims for remediation damages, including those represented by Mr. Faircloth, Parker Waichman, and Milstein, following

months of detailed and time-consuming analysis and negotiations with Defendants.

l.  We updated the calculation of remediation damages for all Florida *Amorin* Plaintiffs, including those represented by Mr. Faircloth, Parker Waichman, and Milstein, in conformity with 2019 national R.S. Means data.

m.  We prepared voluminous briefing and presented oral argument to the Special Master in opposition to Defendants' contests to remediation damages.

n.  We prepared complex spreadsheets setting forth the support for each Plaintiff's claim for remediation damages, including those represented by Mr. Faircloth, Parker Waichman, and Milstein.

o.  We filed a comprehensive opposition to Defendants' motion for summary judgment directed to all of the Priority Plaintiffs [ECF Nos. 269, 270, 276, 278, 279, 281, 282, 283, 284, 288]

p.  We were in the process of preparing limited objections to the Special Master's Reports and Recommendations regarding Defendants' contests and set-offs [ECF Nos. 266 & 268], motions *in limine*, a joint pretrial statement, summaries of the claims and defenses regarding each of the Priority Plaintiffs, and a response to Defendants' expedited motion to establish a bench trial [ECF No. 299], when the global class settlement was reached.

10.  At no time during this grueling process did Mr. Faircloth, Parker Waichman, or Milstein object to any efforts on our part to preserve their clients' claims and seek the maximum recovery possible under the law. On the contrary, they allowed us to expend significant efforts (which included thousands of hours of legal time and tens of thousands of dollars) to work up the remediation damages claims of all Florida *Amorin* Plaintiffs, including their clients.

11.  At the same time that all of this was transpiring in the Florida *Amorin* litigation before this Court, we continued to prosecute the Chinese Drywall cases that remained in the MDL before Judge Fallon, and we oversaw the litigation of the Virginia *Amorin* cases that were remanded to Judge Davis in the Eastern District of Virginia. In addition, we opposed the interlocutory jurisdictional appeal of BNBM, BNBM Group, and CNBM (pending in the Fifth Circuit) challenging the MDL Court's findings that (a) under Louisiana law, these

Defendants operated as a single business enterprise with Taishan; (b) under Florida and Virginia law, Taishan is BNBM's agent; and (c) under Florida law, there is personal jurisdiction over BNBM for its sales of Dragon board. The briefing in that appeal is complete.

12.     In April, 2019, the Florida *Brooke* cases were remanded to the Southern District of Florida, and on May 9, 2019, I appeared before Judge Williams on behalf of approximately 850 Florida *Brooke* Plaintiffs, including those represented by Mr. Faircloth, Parker Waichman, and Milstein. None of these counsel were present at the hearing, and no one objected to my efforts to fight on behalf of these claimants against Defendants' attempts to delay Plaintiffs' day in Court, with the ultimate goal of dismissing their cases. Pursuant to the Court's direction, we provided Judge Williams with access to BrownGreer's Chinese Drywall portal and sample profile forms, including the Supplemental Plaintiff Profile form completed by all *Amorin* Plaintiffs pursuant to the MDL Court's Pretrial Order No. 11(A). We also began preparing a draft Joint Scheduling Order due on June 7, 2019.

### *Amorin* Class Counsel Undertook Appropriate Steps to Protect the Florida *Amorin* Class Members Who Were Offered Individual Settlements by Taishan

13.     On or about October 2, 2018, Mr. Faircloth contacted me, Lead Counsel Arnold Levin, and PSC Member and Lead Florida Counsel Patrick Montoya regarding settlement talks he was engaged in with Taishan to resolve his inventory of *Amorin* cases in the litigation. Mr. Faircloth's discussions with Taishan were not intended to resolve any non-Florida cases, any BNBM cases, or any *Brooke* cases, which had significant statute of limitations problems and no defaults against Defendants. Mr. Faircloth offered to bring us into his discussions with Defendants, but only on one condition: "[b]efore going further, we must first resolve [his] client's common benefit and expense issues [referring to Parker Waichman's dispute with the Fee Committee regarding Knauf settlement fees and expenses]." *See* Email from Mr. Faircloth dated 10/2/2018 [ECF No. 221-2]. About a month later, Mr. Faircloth elaborated that he would insist that "all claims [against Taishan] be included [in a Taishan settlement] *if [we] support[ed] a reallocation on the fee issues as reflected on the attached documents* [referring to charts prepared by Mr. Faircloth that proposed to reallocate common benefit and individual counsel Knauf fees awarded by Judge Fallon such that Parker Waichman's recovery would be substantially increased]." *See* Email from Mr. Faircloth dated 11/2/2018 [ECF No. 221-1] (emphasis in original) (filed under seal). In this same

communication, Mr. Faircloth pointed out that his "proposal" to broaden settlement talks with Taishan in an effort to include additional Plaintiffs would require a payment of $2,000,000 to him for his fees (half of which would be charged to individual counsel since they would be getting the benefit of Mr. Faircloth's efforts to dispute the Knauf fee). *Id.* Meanwhile, Judge Fallon had already determined that the only "accomplished results" of Mr. Faircloth's fee dispute efforts were "havoc and needless delay." (MDL Rec. Doc. 21168 at 23).

14.     We made it clear to Mr. Faircloth in several in-person meetings and conversations over the phone that took place in October and November, 2018, that any attempt to tie the resolution of Parker Waichman's Knauf fee dispute (which was solely in Parker Waichman's financial interest) to a global resolution of Parker Waichman's clients' cases against Taishan was inappropriate, improper, and fraught with ethical problems.

15.     As soon as we were successful in convincing the Court to adopt all of the MDL Court's factual findings and legal conclusions prior to remand (*see* Trial Plan Order [ECF No. 112]), Mr. Faircloth suspended his negotiations with Taishan, because "Team Taishan ha[d] repeatedly insisted that they would withdraw the offer to PW [Parker Waichman] if Judge Cooke ruled in their favor and, if she ruled against them, they would litigate and appeal." *See* Email from Mr. Faircloth dated 11/16/2018 (attached hereto as Exhibit "1").

16.     We heard nothing further from Mr. Faircloth regarding an inventory settlement with Taishan until March 7, 2019, when the Settling Attorneys filed a Notice of Settlement Agreement on behalf of 498 Florida *Amorin* Plaintiffs and a motion to lift PTO 32 in the MDL (MDL Rec. Docs. 22125 & 22126) [*see* ECF No.187].

17.     Those filings made plain that the Settling Attorneys were attempting to resolve their inventory of Florida *Amorin* claimants (all of whom were members of a certified class) without any judicial oversight and outside the procedural safeguards of Rule 23 of the Federal Rules of Civil Procedure.  Accordingly, Class Counsel felt it necessary to file a motion to protect those class members [ECF No. 192].[2]  In our filing before this Court we made clear that "Class Counsel fully support the fair, reasonable, and adequate resolution of Class claims by knowing and fully informed Class Members" and that "Class Counsel do not have any

---

[2] Class Counsel filed a similar motion before Judge Fallon seeking a Rule 23(d) notice to the Class, in coordination with this Court. *See* ECF No. 188.

desire or intention to stand in the way of homeowners who want to amicably resolve their Chinese Drywall claims." *Id.* at 1. However, given the importance of the interests at stake, Class Counsel asked the Court to conduct an "inquiry into the details of the proposed settlement, the settlement negotiations, and the accuracy and completeness of the information conveyed to any Class Members about their rights with regard to this settlement." *Id.* at 3. Contrary to Mr. Faircloth's contentions, we did not object to the FIS. Class Counsel have always "favor[ed] the prompt payment of fair compensation to Class Members for their damages caused by Taishan's Chinese Drywall," but we were concerned that "without judicial oversight, there [was] no protection for the *Amorin* Class Members to ensure they w[ere] given accurate, complete or balanced information as to the benefits and/or risks of participating in the settlement." *Id.*

18.     Without any further briefing, on March 19, 2019, this Court entered an Order Striking the Joint Notice of Settlement Agreement filed by Parker Waichman [ECF No 196]. Tellingly, the Court found that the FIS "does not comply with the requirements for a class action settlement because it does not provide adequate notice to all affected parties nor does it allow adequate time for the Court to review the terms of the agreement for fairness. *See* Fed. R. Civ. P. 23(e); *see also Bennett v. Behring Corp.*, 737 F.2d 982, 985-86 (11th Cir. 1984) (stating 'a settlement or compromise of a class action be approved by the district court…the district court must find that it is fair, adequate, and reasonable and is not the product of collusion between the parties')." *See* Order Striking FIS Settlement [ECF No. 196], at 1. The Court agreed with Class Counsel that:

> Courts have a duty to review a settlement and must ensure that settling class members have enough information to determine "1) whether to accept the offer to settle, 2) the effects of settling, and 3) the available avenues for pursuing his claim if he does not settle." *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1139 (7th Cir. 1979). This duty exists irrespective of whether the purported settlement covers individual claims or the entire class. *Id.*; *see also Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1217 (11th Cir. 2012) (noting "class actions can **only** be settled with the approval of the court") (emphasis added).

*Id.* at 1-2. Consequently, the Court stayed execution of the FIS until further order of the Court and directed the Settling Parties to file their proposed settlement under seal so the Court could review it (something they had not previously done). The Court indicated that after reviewing

11

the FIS, the Court would schedule a hearing and determine procedures for notice to the class members involved. *Id.* at 2.

19.     On April 18, 2018, the Court set a hearing for June 5, 2019, on Class Counsel's motion for an Order to protect the Florida *Amorin* Class and on Parker Waichman's motion to lift the stay on the FIS [ECF No. 242].

### Mr. Faircloth and Mr. Milstein Represented to the Court that the 498 Plaintiffs in the FIS Were Not Part of Any Class Settlement, But, Rather, These Plaintiffs Were Settling Their Claims Individually

20.     In accordance with the Court's Order regarding Court Practices and Procedures [ECF No. 113 at ¶ 3], Patrick Montoya negotiated with Defendants regarding the selection of a mutually acceptable mediator, John Freud. A two-day mediation was scheduled for May 22-23, 2019, in Austin, Texas [see ECF Nos. 235 & 237].

21.     On April 18, 2019, Parker Waichman filed an objection to the Notice of Mediation "and any resulting mediation implicating the rights of Parker Waichman's clients under the settlement offer made by the Taishan entities" [ECF No. 239], at 1. Parker Waichman represented that:

> Taishan's settlement offer was extended to 265 Parker Waichman claimants. To date, 219 clients have accepted. In light of the time remaining to accept the Taishan entities' offer and the Special Master's Report and Recommendation Regarding Product ID Categories Attributable to Taishan Defendants (R. Doc. 233) (finding that 28 of the 44 Product IDs are not attributable to Taishan), Parker Waichman anticipates that additional clients may accept Taishan's settlement offer." *Id.* at 1 n.1.

22.     Milstein similarly objected to "any mediation involving the claims of clients of Roberts & Durkee, PA and Milstein" [ECF No. 286], at 1.

23.     On June 5, 2019, the Court held a hearing regarding the FIS. Mr. Faircloth appeared on behalf of Parker Waichman and its clients in this litigation, and Mr. Milstein appeared on behalf of 58 of his clients who were Florida *Amorin* class members, all of whom were offered the FIS by Taishan. Transcript of Motions Hearing dated 6/5/2019 [ECF No. 315] at 4.

24.     At the hearing, Taishan's counsel Christy Eikhoff argued that the FIS constitutes "individual settlements" that "do not require a fairness review under rule 23."

According to Taishan, "[t]he reason that the settlement communications were submitted to [the Court] were for the Court's review in terms of the adequacy of the notice to [the class members], but not for a review of fairness of the actual terms [of the settlement]." *Id.* at 10. When the Court asked Taishan's counsel if the Defendant "contemplate[d] settling with people who don't want to settle," Ms. Eikhoff responded: "Well, so we have reached an agreement with their attorneys, and they have multiple chances to opt into an individual settlement agreement with us. And if they do not choose to reach a settlement agreement with us, then those [Plaintiffs] will be handled just like any other individual claim would be." *Id.* (emphasis added).

25. The Court asked Mr. Faircloth if he agreed with Taishan's statement describing the FIS. Mr. Faircloth responded: "Yes, … with one explanation. The way the individual settlements are structured, Your Honor, is there is a formula. The notices have gone out, that we provided to the Court, to all of the claimants. The vast majority of those folks have written back saying, 'We want to be in.'" *Id.* at 10.

26. Mr. Faircloth further explained that:

> There's another component to the schedule -- to the settlement, Your Honor, that I think is important that's still being discussed. There's a most-favorite-nations ["MFN"] piece of the settlement which allows these claimants in the event there's a subsequent settlement to receive additional money that is tailored or tethered to the same allegation, if you will, in any subsequent settlements. We have that piece in our particular proposal.
>
> Now that the class award or class settlement is being discussed, we are discussing with Taishan how to deal with that in a favorable way, frankly, to both parties to allow those who participate in this individual settlement to make decisions to exit now in their entirety.
>
> In other words, take the deal they've been offered, and instead of waiting to see how the MFN plays out, to perhaps cash out your MFN. I think that's a favorable conversation for Taishan; I think it's a favorable conversation for our individual claimants.
>
> At the end of the day, … I do think that both of the settlements [the class settlement that has now been preliminarily approved by Judge Fallon and the FIS] contemplate everyone exiting [the litigation] on acceptable terms.

13

*Id.* at 10-11.

27.     Mr. Faircloth expressly confirmed for the Court that he was speaking at this hearing on behalf of the 498 Plaintiffs who are involved in the FIS. *Id.* at 11 ("I'm speaking for the 498. Yes, Your Honor.").[3]

28.     Mr. Milstein echoed Mr. Faircloth's contentions regarding the nature of the FIS as it pertained to the 498 Plaintiffs:

> The 498 was not a class settlement. Those are strictly individuals who are -- individuals who may be named or putative class members, but they're settling their claims individually. So we agree with counsel, Your Honor. There really isn't a requirement that this Court evaluate these settlements for fairness, reasonableness, or adequacy because they're simply individual private settlements. And we believe, you know, based -- certainly it looks like we're going to have 100 percent of our clients sign, and it sounds like it's going to come very close to that by the time the process works its way through. *Id.* at 15-16.

29.     Following the hearing, the Court lifted the stay on the FIS, finding that upon review, Mr. Faircloth's "settlement notices [filed under seal] provided enough information to allow plaintiffs to determine whether to settle their individual claims or proceed in this case." Order dated 6/6/2019 [ECF No. 313].

### As a Direct Result of Class Counsel's Efforts in Negotiating a Class Settlement with Taishan, the Plaintiffs in the FIS Have Been Offered, in the Aggregate, a 46.4% Increase in Their Recovery Pursuant to the MFN

30.     On August 8, 2019, BNBM issued a public announcement regarding the FIS and the value of the MFN. As a direct result of the class settlement reached in the MDL, the relevant provisions of the Most Favored Nation Provisions were triggered. *See* BNBM Supplementary Announcement dated 8/8/2019 (attached hereto as Exhibit "2") (English translation provided by counsel for Taishan). "Taishan as a result is obliged to pay the 498 claimants in the Amorin case (Florida) the difference calculated by the agreed means." *Id.* at 3. Rather than await the results of the approval process in the MDL, Taishan and the Settling

---

[3] This is consistent with Mr. Faircloth's attendance at the mediation of the class settlement on behalf of the firms with clients and the clients included in private Taishan Settlement Agreement: Parker Waichman; Levin Papantonio; Mrachek, Fitzgerald et al.; Roberts & Durkee/Milstein Adelman; Whitfield Bryson & Mason.

Attorneys agreed to increase the settlements offered to the 498 Plaintiffs by $12,866,528.89 in the aggregate. This amount represents a 46.4% increase in "the basic settlement calculation of $27,713,848.47 under the [FIS]." *Id.*

31.     It is undeniable that *solely* Class Counsel's efforts in achieving a class settlement with Taishan[4] created an additional $12.86 million in settlement value for the Plaintiffs in the FIS under the MFN. Class Counsel would be justified in seeking any and all attorneys' fees for this portion of the FIS. However, as described above and in my prior Joint Declaration [ECF No. 320-1], based on the extensive work performed by Class Counsel on behalf of the *Amorin* Class, which equally benefitted the 498 FIS Plaintiffs and Individual Counsel, Class Counsel are requesting an award of a common benefit fee comprising 20% of the total recoveries from the proceeds of the FIS (both the initial FIS offer and the MFN payment).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 7, 2019.

SANDRA L. DUGGAN

---

[4] The class settlement with Taishan was preliminarily approved by the MDL Court on August 29, 2019 [ECF No. 336-1]. Individual notices have been mailed to all known class members, and the fairness hearing for final approval of the class settlement will take place on December 11, 2019, before Judge Fallon [*see* ECF No. 336].

15

# EXHIBIT "1"

**From:** Jimmy Faircloth <jfaircloth@faircothlaw.com>
**Sent:** Friday, November 16, 2018 4:41 PM
**To:** Arnold Levin; Sandra L. Duggan; Patrick Montoya (patrick@colson.com)
**Subject:** FW: Follow up

Fyi.   Maybe we can figure out a way to coordinate the next round.   Team Taishan has repeatedly insisted that they would withdraw the offer to PW if Judge Cooke ruled in their favor and, if she ruled against them, they would litigate and appeal.   I guess we'll see how committed they are to the latter.

**From:** Jimmy Faircloth
**Sent:** Friday, November 16, 2018 3:32 PM
**To:** 'Eikhoff, Christy Hull' <Christy.Eikhoff@alston.com>
**Cc:** Taylor, Bernard <Bernard.Taylor@alston.com>; Venderbush, David <David.Venderbush@alston.com>; Kenny, Mike <Mike.Kenny@alston.com>
**Subject:** RE: Follow up

In light of Judge Cooke's ruling, I must suspend my client's negotiations.  I appreciate Taishan's engagement and hope it leads to something fruitful.  Hopefully, we can pick back up in the future after we've all had a chance to consider the new landscape.

Jimmy

1

# EXHIBIT "2"

---

**Stock Code: 000786      Stock Symbol: BNBM      Announcement
No.: 2019-031**

**Supplementary Announcement re Settlement between subsidiary
Taishan Gypsum Co., Ltd. and some of the claimants in Amorin case
in the US Drywall Litigation by Beijing New Building Materials
Public Limited Company**

    **The Company and all members of the board of directors
guarantee that the disclosed information is true, accurate and
complete without false description, misleading statements or major
omissions.**

    Taishan Gypsum Company Ltd. ("Taishan Gypsum") and Taian
Taishan Plasterboard Co., Ltd. (collectively, "Taishan") entered Settlement
Agreement and Release ("Settlement Agreement and Release") with some
of the claimants in Amorin case (Florida) on March 18, 2019. Beijing New
Building Materials Public Limited Company ("BNBM") released
Announcement re Settlement between subsidiary Taishan Gypsum Co., Ltd.
and some of the claimants in Amorin case in Drywall Litigation in the US
(Announcement No.2019-010) in the designated information disclosure
media platform on March 20, 2019. On August 7, 2019, Taishan has
entered Amendment 1 to Settlement Agreement and Release and

1

Amendment 2 to Settlement Agreement and Release with the 498 plaintiffs represented by several law firms. This information is disclosed below:

1. As a result of the receipt of supplemental documentation concerning certain of the aforementioned 498 plaintiffs, the parties agreed to modify the data and accordingly adjust settlement values for six (6) of the 498 plaintiffs, which modifies Taishan's total maximum settlement payment obligation (not including any additional payments under the Most Favored Nations provision of the Settlement Agreement and Release) from $27,713,848.47 to an amended total of $27,857,893.97, with an increase of $144,045.50. The parties executed the Amendment 1 to Settlement Agreement and Release on the aforementioned matters.

2. Since Taishan and most of the claimants of multi-district action in the Chinese Drywall Litigation in the US has reached a class settlement (For more details, please see the Announcement re Settlement between subsidiary Taishan Gypsum Co., Ltd. and most of the claimants of multi-district action in the Chinese Drywall Litigation in the US by BNBM, released in the designated information disclosure media platform on July 31, 2019), which triggered relevant provisions on the payment of differences (i.e. Most Favored Nation Protection) prescribed in the Settlement Agreement and Release, Taishan as a result is obliged to pay the 498 claimants in the Amorin case (Florida) the difference calculated by the agreed means. However, the timing and exact amounts of that Most

2

Favored Nation Protection payment obligation are uncertain for both parties. To avoid the risk of a higher obligation and to extinguish any future obligations of payment by Taishan under the relevant provisions on the payment of differences prescribed in the Settlement Agreement and Release (namely, the Most Favored Nations provision), the parties have agreed to resolve this matter with an agreed payment in the maximum amount of $12,866,528.89, with the earliest payment due no later than October 21, 2019. The parties executed the Amendment 2 to Settlement Agreement and Release on the aforementioned matters.

After the aforementioned two amendments were executed, Taishan's maximum payment obligation under the Settlement Agreement and Release will be capped at $40,724,422.86 (the sum of the basic settlement calculation of $27,713,848.47 under the Settlement Agreement and Release executed in March 2019, and the increased base settlement calculation of $144,045.50 under Amendment 1, and the negotiated maximum Most Favored Nation calculation of $12,866,528.89 under Amendment 2), among which amount, $27,713,848.47 has been reflected in a single amount as estimated liabilities in BNBM's 2018 annual consolidated statement. The remaining $13,010,574.39  (the sum of the increased $144,045.50 calculation under the Amendment 1 to the Settlement Agreement and Release and the negotiated maximum Most Favored Nation calculation of $12,866,528.89 under the Amendment 2 to

3

the Settlement Agreement and Release), will be reflected in a single amount as estimated liabilities in Taishan Gypsum's financial statement for the first half of 2019 according to the relevant regulations for Accounting Standards, resulting in Taishan Gypsum's net profit in the first half of 2019 decreased by approximately RMB89.4438 million. Under the influence of this matter, the net profit reflected in BNBM's consolidated statement for the first half of 2019 will be effected for approximately RMB89.4438 million.

As of the announcement date, there are not any other litigation or arbitration matters that BNBM and its subsidiaries should have disclosed but not disclosed yet. BNBM will fulfill its information disclosure obligations in a timely manner as to the progress with the drywall litigation in the US, and investors hereby are advised to pay attention to investment risks.

Hereby announced.

Board of Directors

Beijing New Building Materials Public Limited Company

August 8, 2019