UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:   CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION<br><br>This document relates to *All Cases* | MDL 2047<br><br>SECTION "L"<br><br>JUDGE ELDON FALLON<br><br>MAGISTRATE JOSEPH WILKINSON, JR. |

**KNAUF DEFENDANTS'**
**REPLY SUBMISSION TO GUILFORT DIEUVIL**

**MAY IT PLEASE THE COURT:**

The Knauf Defendants[1] file this reply to Liaison Counsel's submission on behalf of Guilfort Dieuvil. This claim has been discussed, briefed, and argued *ad nauseum*. At the October 3, 2019 status conference, this Court asked Liaison Counsel and the Knauf Defendants to brief the issues related to what compensation, if any, Mr. Dieuvil would be owed from the Remediation Fund as a class member to the Knauf Class Settlement Agreement,[2] if deemed eligible. Therefore, the Knauf Defendants will not re-hash or re-brief its arguments regarding Mr. Dieuvil's compliance with PTO 1(B) as it relates to the Settlement Agreement. Pursuant to those authorities and arguments before this Court and the Special Master, which are consistent with the Knauf Class Settlement Agreement, the Court should deny Mr. Dieuvil any compensation under

---

[1] The Knauf Defendants include Knauf Plasterboard (Tianjin) Co., Ltd., Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf Gips KG, Gebr. Knauf Verwaltungsgesellschaft KG, Knauf International GmbH, Knauf Insulation GmbH, Knauf UK GmbH, Knauf AMF GmbH & Co. KG, Knauf do Brasil Ltda., and PT Knauf Gypsum Indonesia.

[2] Rec. Doc. 16407-3. (Third Amended Knauf Class Settlement Agreement).

the agreement. Now, the Knauf Defendants will respond to Liaison Counsel's arguments and authorities as to what Mr. Dieuvil would be owed as a class member from the Remediation Fund, if eligible.

**A.    Dieuvil is not an Option 1 or Option 2 Property and the Knauf Class Settlement Agreement Does Not Provide Cash-Out Benefits to Option 1 or Option 2 Class Members from the Remediation Fund.**

The Knauf Class Settlement Agreement Remediation Fund allowed payments for both remediated and non-remediated properties. Non-remediated properties could choose one of three options, if eligible, Option 1 (Section 4.3.1 - Program Contractor Remediation), Option 2 (Section 4.3.2 - Property Owner's Certified Contractor Remediation); or Option 3 (Section 4.3.3 - Discounted Cash-Out to Property Owner). Remediated properties were allowed to seek Reimbursable Costs as an Already Remediated Property (Section 4.3.7).

The Knauf Class Settlement Agreement does not provide for and Knauf has never otherwise accepted a partially remediated property to be remediated by the Program Contractor as an Option 1 or a certified contractor as an Option 2 claim. Here, Dieuvil is not seeking and the Program Contractor is not completing an Option 1 Remediation whereby the Program Contractor is receiving direct funding from the Settlement Administrator to complete the remediation. Furthermore, Dieuvil is not seeking nor is Dieuvil eligible for an Option 2 remediation where a qualified contractor receives directly from the Settlement Administrator the Remediation Fund benefits in order to complete the remediation. Dieuvil is seeking cash compensation for his settlement claim. The only manner in which a class member receives cash compensation for remediation expenses from the Remediation Fund is as an Already Remediated Property (Section 4.3.7) or as an Option 3 - Cash Out (Section 4.3.3).[3]

---

[3] Exhibit A: Affidavit of Jacob Woody at ¶ 16.

**B.      Dieuvil Should be Treated as an Already Remediated Property, or alternatively, as an Option 3 Discounted Cash-Out Option.**

While Dieuvil states he wants to fix his property, it is undisputed Dieuvil is seeking a cash-out of a partially remediated property that would have been completely remediated at no cost to Dieuvil but for his unfounded dispute with GL Homes in relation to replacement of metal studs. Because he is seeking a cash-out from the Remediation Fund for a partially remediated property, Dieuvil can only be treated an Already Remediated Property, as it was always postured without objection until now, or as an Option 3 Cash-Out.

As an Already Remediated Property, Dieuvil would be entitled to receive reasonable Reimbursable Costs pursuant to the ARH Protocol.[4] It is undisputed that Dieuvil did not and has not incurred any remediation expenses. As an Option 3 Cash-Out, Dieuvil would be entitled to a discounted cash out representing a $7.50 per square foot discount from the higher of the Final Cost Estimate prepared by the Lead Contractor or 65% of the Xactimate prepared by the Lead Contractor.[5]

Throughout the administration of the Knauf Class Settlement Agreement, following the submission of a settlement claim, claims have been delayed for many different reasons: procedural defects, claim denials, special master appeals, foreclosure, short sales, contractor issues etc. None of those class members were allowed to increase their actual Reimbursable Costs or increase the calculated Option 3 Cash-Out payment at the time the claim was submitted, notwithstanding the fact that a class member may incur an increase or decrease in costs due to deflation, inflation, or other issues like neglect. Therefore, if eligible to receive benefits from the Knauf Class Settlement Agreement, and in order to be treated consistently with all other similarly

---

[4] Rec. Doc. 16407-3(Knauf Class Settlement Agreement at § 4.3.7).
[5] Rec. Doc. 16407-3(Knauf Class Settlement Agreement at § 4.3.3).

situated class members to the Knauf Class Settlement Agreement, Mr. Dieuvil's cash compensation as an Already Remediated Property or as an Option 3 claimant must be determined by the remediation cost at the time GL suspended the remediation and Dieuvil made a claim to the Knauf Class Settlement Agreement for compensation. It is irrelevant under the Knauf Class Settlement Agreement if his claim was denied or delayed, or that inflation increased construction costs, or that costs increased because the property fell into disrepair due to neglect despite over $150,000 worth of previous remediation work by GL Homes' at no cost to Dieuvil. The increase or decrease of costs due to the passage of time between the time of the settlement claim and the payment of benefits does not inure to the benefit of Dieuvil or any other class member under the Knauf Class Settlement Agreement.[6]

Although the property was not fully remediated, and in light of the fact the property was partially remediated by GL Homes (at a cost of $150,169.00 to GL Homes) and all Chinese-drywall and drywall dust was removed from Dieuvil's property, the Knauf Defendants are willing to stipulate to Reimbursable Costs in the amount of the Final Cost Estimate by GL Homes to complete the remediation ($260,000.00), notwithstanding the fact Dieuvil did not incur any Reimbursable Costs under the ARH Protocol.[7] Therefore, as an ARH, and if a KPT percentage is determined by this Court, Dieuvil would be eligible to receive an amount equal to the Reimbursable Costs ($260,000.00) multiplied by the KPT determined by this Court (%).[8]

Alternatively, if Mr. Dieuvil is not an Already Remediated Property, the only other avenue under the Knauf Class Settlement Agreement to receive a cash-out is as an Option 3 Cash-Out calculated at the cost to complete the remediation at the time Dieuvil suspended GL Homes remediation and submitted his claim to the Knauf Class Settlement Agreement. Based on

---

[6] Exhibit A: Affidavit of Jacob Woody at ¶14-16.

the Final Cost Estimate to complete the remediation following GL Homes' suspension of the remediation ($260,000.00), the square footage of the property (6,609 square feet), and the Option 3 Cash-Out discount factor ($7.50 per square foot discount), the Option 3 Cash Out amounts to $210,432.50.[9]

**C.     Claims for Non-Remediation Expenses are Covered by the Other Loss Fund**

Although Liaison Counsel did not submit a position on certain other losses, Mr. Dieuvil still seeks compensation for Pre-Remediation Alternative Living Expenses, Loss of Net Equity, Loss of Furniture, Property Taxes and Property Insurance. As the Court is well aware, the Settlement Agreement has two funds: a Remediation Fund and the Other Loss Fund.[10] The Other Loss Fund was a capped fund for all class members to seek certain types of benefits including Pre-Remediation Alternative Living Expenses, Loss of Net Equity, Loss of Furniture, Property Taxes and Property Insurance as set forth in Section 4.7 of the Knauf Class Settlement Agreement.[11] To obtain benefits from the Other Loss Fund, claimants were required to submit their claims to the Settlement Administrator. The Settlement Administrator would review and process the Other Loss Claims of all claimants and provide an allocation award.[12] If the claimant disagreed with the allocation award, they were permitted to appeal to the Special Master. Because this was a capped fund, Knauf was completely removed from this process, which was solely and completely administered by the Settlement Administrator, with appeal rights to the Special Master.

---

[7] Exhibit B: Affidavit of Heather Keith.
[8] Rec. Doc. 12061-6 (Exhibit A to Knauf Class Settlement Agreement).
[9] Exhibit B: Affidavit of Heather Keith; Rec. Doc. 16407-3 (Knauf Class Settlement Agreement at § 4.3.3).
[10] Rec. Doc. 16407-3 (Knauf Class Settlement agreement at §§ 4.3; 4.7); Exhibit A: Affidavit of Jacob Woody at ¶ 5.
[11] Exhibit A: Affidavit of Jacob Woody at ¶ 6-13.
[12] *Id*.

In the case of Mr. Dieuvil, he did make an Other Loss Fund claims under the "Miscellaneous" category and was given a $2,656.36 allocation for Other Loss Fund benefits, which Mr. Dieuvil accepted.[13] The Miscellaneous category would include losses for Loss of Furniture, Property Taxes and Property Insurance.[14] Mr. Dieuvil also made a Pre-Remediation Alternative Living expense claim to the Other Loss Fund.[15] The Settlement Administrator denied the claim because no supporting documentation was presented.[16] Mr. Dieuvil provided no additional information to the Settlement Administrator and did not appeal the claim denial to the Special Master.[17] Finally, although he was allowed to make a claim to the Other Loss Fund for Loss of Net Equity, Mr. Dieuvil did not make any such claims to the Other Loss Fund.[18]

Therefore, while Mr. Dieuvil could have, and did in some instances, seek compensation from the Other Loss Fund for Pre-Remediation Alternative Living Expenses, Loss of Net Equity, Loss of Furniture, Property Taxes and Property Insurance, Mr. Dieuvil is not permitted to now seek those same damages from the Remediation Fund. As such, Mr. Dieuvil should receive no compensation for these claims.

**D.    Dieuvil is Not Eligible for the Delay Period Payment under Section 4.3.1.2.2 or the Lump Sum Payment under Section 4.3.1.1.2.**

Section 4.3.1.2 applies to and only allows the delay period payment to be provided to class members when they are Option 1 class members. As set forth above, Mr. Dieuvil has never been an Option 1 Program Contractor Remediation. He has never elected Option 1 and he would not have been able to elect Option 1 as a partially remediated property. Furthermore, the Settlement Agreement only allows an Option 1 claimant to receive the delay period payment

---

[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*

when "the remediation work is not substantially complete" following three months from Program Contractor's commencement of the remediation work ("Move-Out Date"). The Program Contractor never commenced any remediation work on Dieuvil's property.

Like the delay period payment, Dieuvil is also not eligible to receive the Lump Sum Payment under Section 4.3.1.1.2 because he is not an Option 1 class member eligible to receive the Lump Sum Payment under Section 4.3.1.1.  payment under Section 4.3.1.2.2 or the Lump Sum Payment under Section 4.3.1.1.2.

E. **Any Compensation to Dieuvil Must Be Reduced by an Amount Commensurate with Global, Banner, and INEX Settlement Funds, Which are Assigned to the Knauf Defendants.**

Pursuant to Section 4.8 of the Knauf Class Settlement Agreement, class members that receive benefits from the Global, Banner, and INEX Settlement Fund shall assign the amounts received and deposit them into the Remediation Fund. If the class member does not deposit the amounts into the Remediation Fund, "that amount shall be deducted from any benefit otherwise" owing to the class member. As a class member, Mr. Dieuvil received $37,402.88 from the Global, Banner, and INEX settlements.[19]  Mr. Dieuvil has never deposited any monies into the Remediation Fund.  Therefore, any compensation owed to Mr. Dieuvil from the Remediation Fund shall be deducted by an amount equal to $37,402.88.

---

[18] *Id.*

F.  **Recapitulation**

| Dieuvil's Settlement Claim | Applicable KCSA Provision | Possible Remediation Fund Benefits |
|---|---|---|
| Alternative Living Expenses | Other Loss Fund - Section 4.7 KCSA. Dieuvil Claim Denied by Brown Greer for Lack of Documentation. No Appeal Taken. | $0 |
| Loss of Net Equity in the Home | Other Loss Fund - Section 4.7 KCSA. Lost Equity/Foreclosure/Short Sale Claim. No Claim Filed by Dieuvil. | $0 |
| Loss of Furnitures | Other Loss Fund - Section 4.7 KCSA. Miscellaneous Claim. Awarded Max $2,500 by Brown Greer. No Appeal Taken. | $0 |
| Property Taxes | Other Loss Fund - Section 4.7 KCSA. Miscellaneous Claim. See above. | $0 |
| Property Insurance | Other Loss Fund - Section 4.7 KCSA. Miscellaneous Claim. See above. | $0 |
| ARH Reimbursable Costs or Discounted Cash Out. | Cost to Complete Remediation at time Partial ARH was Stopped by Dieuvil OR Option 3 Cash-Out Amount. | $260,000.00 x KPT % (ARH) OR $210,432.50 (OPTION 3) |
| Delay Period Payment under Section 4.3.1.2.2. | Remediation Fund – Section 4.3.1, Option 1. Dieuvil Not Option 1, not eligible. | 0 |
| Lump Sum Payment under Section 4.3.1.1.2 | Remediation Fund – Section 4.3.1, Option 1. Dieuvil Not Option 1, not eligible. | 0 |
| [Deduction for Amounts Received from Global, Banner, and INEX Settlements] | Allocation of Amounts from Other Settlements - Section 4.8. | [$37,402.88] |
| Total Possible Remediation Fund Compensation to Dieuvil | | $260,000.00 x KPT % -    $37,402.88 (ARH) OR $173,029.62 (Option 3) |

---

[19] *Id*. at ¶ 13.

Respectfully submitted,

**FISHMAN HAYGOOD, L.L.P.**

*/s/ Kerry J. Miller*
**KERRY J. MILLER (#24562), T.A.**
**PAUL C. THIBODEAUX (#29446)**
**DANIEL J. DYSART (#33812)**
201 St. Charles Avenue, 46th Floor
New Orleans, LA  70170
Telephone:     (504) 556-5549
Facsimile:      (504) 310-0275
Email:            kmiller@fishmanhaygood.com
Email:            pthibodeaux@fishmanhaygood.com
Email:            ddysart@fishmanhaygood.com

**Counsel for the Knauf Defendants**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, and to all parties by electronically uploading the same to File and Serve Xpress in accordance with Pre-Trial Order No. 6, and that the foregoing was filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana, on this the 17th day of October, 2019.

*/s/ Kerry J. Miller*
**KERRY J. MILLER**