UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: Chinese Manufactured Drywall Products Liability Litigation | MDL 09-md-2047 |
| | SECTION "L" |
| *This Document Relates to:* | JUDGE ELDON E. FALLON |
| *Guilfort Dieuvil;* Case No. 2:13-cv-609 | MAGISTRATE JOHN C. WILKINSON, JR. |

AFFIDAVIT

STATE OF FLORIDA

COUNTY OF BROWARD

**BEFORE ME**, the undersigned authority, personally came and appeared:

HEATHER C. KEITH

who, after being duly sworn, did depose and say:

1. I am a licensed Florida attorney who, at all relevant times herein, has served as the Assistant General Counsel for Boynton Beach Associates XVI, LLLP ("GL") and I am personally familiar with GL's various Chinese drywall matters;

2. GL was the developer and seller of the home located on Lot 79 in the Canyon Isles residential community (the "Home"). The Home was a plan 85 model and Guilfort Dieuvil ("Dieuvil") closed on January 9, 2007;

3. After the discovery of Chinese Drywall in Dieuvil's Home, GL offered to remediate the Home free of charge;

4. On April 19, 2010, Dieuvil signed a repair contract and authorized GL to repair his Home;

5. The drywall demolition commenced on Dieuvil's Home on September 29, 2010;

6. Between September and December of 2010, GL removed all drywall from the Home as well as the electrical wiring, copper plumbing and insulation. GL also conducted a thorough cleaning of the Home after the demolition. After cleaning, GL began the process

EXHIBIT B

of re-wiring the Home and re-installing the plumbing and the insulation. At that point in December 2010, Dieuvil instructed GL that he wanted all of the studs in the Home replaced with new studs. Stud replacement was not part of the repair protocol, there was no evidence of Dieuvil's studs being compromised and no other GL customer was seeking or receiving stud removal;

7. Despite the extraordinary nature of Dieuvil's request, GL agreed to accommodate Dieuvil provided he pay $25,000 for the cost of the stud removal and associated electrical and insulation work. Such agreement would have required the removal and replacement of the electrical wiring and insulation which had already been re-installed at GL's expense;

8. Dieuvil rejected GL's offer, ordered GL to stop repairing the Home and stated that he had retained Ervin Gonzalez as his new attorney. GL ceased repairs, removed all contractors from the Home, and has had no further access to the Home;

9. Based on information available to me from our staff, had Dieuvil allowed GL to complete the reconstruction back in 2010-2011, GL would have spent approximately an additional $110,000 to complete the reconstruction of the Home and facilitated the process to fully move the Dieuvil family back into the reconstructed Home;

10. GL actually spent $150,169 on the Dieuvil remediation and reconstruction which included funds for air testing, permits, inspections, demolition, trash dumpsters, temporary housing, moving, storage, and the initial reconstruction until we were ordered to stop work by Dieuvil in December 2010. Had GL been allowed to complete the reconstruction at that time, based on the data available to me from our staff, GL would have spent approximately $260,000 for the total demolition, reconstruction and move back process.

Further affiant sayeth naught.

_____
Heather C. Keith
Assistant General Counsel

Boynton Beach Associates XVI, LLLP, a
dissolved Florida limited liability limited
partnership

SWORN TO AND SUBSCRIBED BEFORE
ME, THIS 16th DAY OF OCTOBER, 2019
_____
Notary Signature

Rebecca C. Medley
Printed Name

#GG 192428
Notary No.
My commission expires May 4, 2022