# EXHIBIT 29

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| EDUARDO AND CARMEN AMORIN, *et al.*, individually, and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No. 1:11-CV-22408-MGC |
| v. | |
| TAISHAN GYPSUM CO., LTD. f/k/a SHANDONG TAIHE DONGXIN CO., LTD.; TAIAN TAISHAN PLASTERBOARD CO., LTD., *et al.*, | |
| Defendants. | |

## PLAINTIFFS' OBJECTIONS TO AND APPEAL FROM THE SPECIAL MASTER'S REPORT AND RECOMMENDATION REGARDING PRODUCT ID CATEGORIES ATTRIBUTABLE TO TAISHAN GYPSUM CO., LTD.

# TABLE OF CONTENTS

Table of Authorities .................................................................................................. ii

I.     INTRODUCTION ............................................................................................ 1

II.    THE STANDARD OF PROOF TO BE APPLIED............................................ 5

       A.    The Default Judgment is Not Irrelevant to the Burden of Proof. .............. 5

       B.    "Greater Weight of the Evidence" Requires Consideration of
             the Totality of the Circumstances To Determine What is More Likely
             Than Not. ................................................................................................... 6

       C.    Defendants' Litigation Misconduct Is Relevant to their Credibility. ......... 6

III.   ERRORS IN SPECIAL MASTER'S ANALYSIS THAT FLOW THROUGH
       THE ENTIRE REPORT & RECOMMENDATION ......................................... 7

       A.    There Is No Evidence in the Record of Additional Manufacturers
             of Defective Chinese Drywall ................................................................... 7

       B.    Evidence Regarding Taishan's Manufacturing Process. ............................ 9

       C.    Taishan's Suggested Chemical Analysis Test Doesn't Exist. ...................10

IV.    CATEGORY-SPECIFIC ISSUES WITH THE SPECIAL
       MASTER'S R&R ...........................................................................................11

       A.    Made in China Meet[s] or Exceed[s] .......................................................11

       B.    Various Drywall Dimensions, Including 4feetx12feetx1/2inch. ...............13

       C.    IMT Gypsum ............................................................................................16

       D.    ProWall ....................................................................................................17

       E.    White Edge Tape, Boards with No Markings or
             Boards with No Markings Other Than Numbers. .....................................18

       F.    C&K Drywall. ..........................................................................................20

V.     CONCLUSION .............................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Au Bon Pain Corp. v. Artect, Inc.,*
653 F.2d 61 (2d Cir. 1981) ...................................................................... 5

*Finkel v. Romanowicz,*
577 F.3d 79 (2d Cir. 2009) ...................................................................... 5

*Huck v. Louisville Ladder, Inc.,*
2008 WL 222682 (M.D. Fla. Jan. 25, 2008) ........................................... 6

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.,*
894 F. Supp. 2d 819 (E.D. La. 2012) ...................................................... 9

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.,*
2017 WL 1421627 (E.D. La. Apr. 21, 2017) ........................................ 5, 8

*In re Levin,*
434 B.R. 910 (S.D. Fla. 2010) ................................................................. 6

*Lowery v. Ala. Power Co.,*
483 F.3d 1184 (11th Cir. 2007) ............................................................... 6

*Michalic v. Cleveland Tankers, Inc.,*
364 U.S. 325 (1960) ................................................................................. 6

*Peach State Labs, Inc. v. Environmental Manufacturing Solutions, LLC,*
2011 WL 13140669 (M.D. Fla. Dec. 29, 2011) ...................................... 6

*Pulte Home Corp. v. Ply Gem Indus., Inc.,*
804 F.Supp. 1471 (M.D. Fla. 1992) ........................................................ 6

*Sweeney v. Kimberly-Clark Corp.,*
2016 WL 727173 (M.D. Fla. Feb. 22, 2016) ........................................... 6

*United States v. Almedina,*
686 F.3d 1312 (11th Cir. 2012) ............................................................... 6

**Statutes**

19 U.S.C. §1304(a) ........................................................................................ 9

**Rules**

Fed. R. Civ. P. 53(f) .........................................................................................................2, 5

Fed. R. Civ. P. 55(b)(2)........................................................................................................ 5

## I.    __INTRODUCTION__

On April 8, 2019, the Special Master issued her Report and Recommendation Regarding Product ID Categories Attributable to Taishan ("Special Master's R&R").[1] Before the Special Master was the determination of whether eight Product ID categories were attributable to Taishan.[2] Because Taishan accepted responsibility for two of the Product ID categories (Venture Supply and Taihe Tape), the Special Master addressed six Product ID categories (C&K; IMT Gypsum; ProWall; Made in China Meet or Exceeds ("Meet[s] or Exceed[s]"); various Drywall dimensions, including 4feetx12feetx1/2 inch and 4feet*12feet*1/2inchs ("Dimensions"); and White Edge Tape, boards with no markings or boards with no markings other than numbers ("White Edge Tape"). Two of these Product ID categories (Meet[s] or Exceed[s] and Dimensions) are demonstrated by thirteen variations of the relevant markings, which are referenced by the respective photos in the Taishan Product ID Catalog (ECF No. 155-2) reflecting the marking variations.[3]

The Special Master determined that Plaintiffs did not meet their burden of proof on four of the Product ID categories at issue (C&K; IMT Gypsum; ProWall; and White Edge Tape). She also determined that Plaintiffs did not meet their burden with respect to the majority of the "subdivided" Meet[s] or Exceed[s] and Dimensions categories, finding that attribution had been established for the markings in only three out of six photos within the

---

[1] *See* Special Master's Report and Recommendation Regarding Product ID Categories Attributable to Taishan Defendants ("SM R&R") (ECF No. 233). Taishan Gypsum Co., Ltd. and its wholly-owned subsidiary and alter ego Taian Taishan Plasterboard Co., Ltd. will be referred to herein as "Taishan" or "Defendant." Plaintiffs' Brief in Support of Product ID Categories Attributable to Taishan ("Plaintiffs' PID Brief") is attached hereto as Exhibit "A" and incorporated herein by reference. The Exhibits to the Plaintiffs' PID Brief are referred to herein by their respective "Tab" number as "Plaintiffs' Tab" and incorporated herein by reference. An Appendix with hyperlinks to the relevant documents is attached hereto as Exhibit "B."

[2] The Court's Omnibus Order Regarding Trial Plan set forth twelve categories of Product ID (*see* ECF No. 112 at 6 n.2), but four of those categories were not before the Special Master at this time. Two categories – BNBM/Dragon Board and Chinese Manufacturer #2 (purple stamp) – are alleged to be manufactured by Defendant BNBM, which will be addressed separately; and DUN and Crescent City Gypsum are not alleged to be present in any Florida properties.

[3] The Court's Trial Plan required the Special Master to issue a Report and Recommendation as to whether the Product ID *categories* at issue should be attributed to Defendants despite their denial (ECF No. 112 at 6 (para. 3.a.vi)). Problematically, the Special Master subdivided the Meet or Exceeds and Dimensions categories by attributing only certain specific photos in the Taishan Product ID Catalog to Taishan.

Meet[s] or Exceed[s] category and three out of seven photos within the Dimensions category. SM R&R at 10-11. In each of those six circumstances, Taishan had either explicitly or implicitly admitted it manufactured boards with the markings in question.[4]

Plaintiffs file these Objections to the Special Master's R&R[5] not only because the Special Master made specific errors with respect to the categories of Product ID that she found were not attributable to Taishan; but also, and equally important, because she applied an unmeetable burden of proof and completely disregarded the substantial and compelling direct and circumstantial evidence of attribution presented by Plaintiffs. There is no better illustration of the standard applied by the Special Master than the fact that there was only one piece of evidence that satisfied it – an *admission* by Taishan. On this score, the Special Master applied the preponderance standard in such a way that it literally could not be met by Plaintiffs. This is not hyperbole but merely an acknowledgment that *the Special Master only found that the burden of proof had been satisfied when it came with a Taishan admission.*

By requiring an admission by Taishan as a predicate for attribution, the Special Master disregarded direct evidence linking Taishan to certain Product ID categories and, importantly, gave no weight to the significant amount of compelling circumstantial evidence that supported Plaintiffs' claims, which should have tilted the scales in Plaintiffs' favor. In this regard, the Special Master effectively placed the burden on Plaintiffs to prove, not only by the greater weight of the evidence, but by evidence that was *direct and incontrovertible* that a particular board of drywall was manufactured by Taishan. In most cases, the Special Master conducted no analysis of the Plaintiffs' evidence.

To make matters worse, Taishan's acceptance of responsibility for particular markings was based largely, if not exclusively, on whether the exact same markings were contained on certain "residual" American-sized boards that Taishan discovered in its warehouse in late

---

[4] Of the seven contested photos within these two Product ID categories, the Special Master found the Plaintiffs met their burden of showing attribution on only two and that was because (1) the pictures of one were <u>identical</u> to pictures that were admitted by Defendant and (2) the wording on the second was the same as that listed in Defendant's Manufacturer Profile Form, *i.e.*, Taishan admitted the language. *See* SM R&R [ECF No. 233] at 9.

[5] Plaintiffs object pursuant to FRCP 53(f)(2). Specifically, Plaintiffs object to the Special Master's findings with respect to C&K, IMT Gypsum, ProWall, Meet[s] or Exceed[s] with respect to the findings regarding Photos 18, 19, and 21, Dimensions with respect to the findings regarding Photos 6, 7, 8, 10 and 11, and White Edge Tape.

2018, even though Plaintiffs had requested this evidence long ago.[6]  Problematically, Taishan did not find exemplars of all of the American-sized boards it ever manufactured; therefore, there is no basis to attribute only the "residual" drywall to Taishan, and exclude other drywall not found in the warehouse.  Moreover, Taishan's Manufacturer Profile Form ("MPF") states that Taishan only labeled its products when, and as, a certain purchaser might request that the drywall bear particular markings.[7]  Therefore, whether a particular marking is not found on a given piece of drywall is not, in and of itself, probative.  In fact, some of Taishan's admissions, after finding the residual boards, involved boards with markings it denied responsibility for merely months ago prior to discovery of these boards.[8]  Yet, the Special Master based her Product ID determinations almost exclusively on these flawed admissions.

In contrast, the Special Master ignored direct photographic evidence and significant circumstantial evidence.  For example, it is relevant, probative and significant that after ten years of litigation, Taishan has been unable to identify any specific manufacturer, other than Taishan, BNBM, Knauf and C&K, who manufactured defective Chinese drywall (*i.e.*, reactive drywall that experienced the same type of high-sulfur off-gassing).[9]  Taishan is aware that this highly relevant fact is damaging, so Defendant goes to great lengths to make the irrelevant point that other companies manufactured drywall in China and exported it to the United States, in the hopes of a creating an inference that these other companies also made

---

[6] *See generally* 2019 CHE Dep. [Pls.' Tab 20] at 258:4-260:12, 268:21-271:13; *see also* Pls.' Tabs 16-18.

[7] *See* Pls.' Tab 11 at 2; *see also, e.g.,* Pls.' Tab 10, at TG-0129675-676 (Taishan manufactured and exported to the U.S. 998778.91 m² of boards with "unlettered edge band, no coding, and neutral packaging" and 1,020,749.45 m² with "unknown" markings); Pls.' Tab 11 at 2.

[8] *See* Taishan's MPF [Pls.' Tab 11] at Ex. A (listing numerous markings with "Meet or Exceed"); Def.'s PID Br. at 37-38 (acknowledging manufacture of board with markings "Meet or Exceeds," "Exceeds" with an "s" after finding residual boards); SM R&R at 8-9.

[9] *See* CPSC RELEASE NO.10-243 (May 25, 2010) [Pls.' Tab 27] (identifying 10 manufacturers of the defective drywall, (all Taishan/Taihe, BNBM, Knauf, and/or C&K), and noting that the other Chinese drywall samples and the domestically manufactured samples "had low or no detectible emissions").  The only other company identified is "C&K," which Plaintiffs continue to believe received some or all of its drywall from Taishan. *See, e.g.,* Pls.' Tabs 40-45.  In 2004, CNBM (parent to BNBM) acquired C&K to manufacture their drywall beginning in 2004. Shortly thereafter, CNBM went public and assigned its manufacturing operations to BNBM. CNBM's public offering reorganized the lightweight building sector (which is dominated by gypsum board manufacturing), and gave BNBM control over gypsum board manufacturing, including majority control over Taishan's stock.  Finally, the loop is closed in 2009, upon C&K's bankruptcy and BNBM's purchase of all C&K assets on September 22, 2009.

the <u>defective</u> drywall that is at issue in this case.[10]  Indeed, the Consumer Product Safety Commission ("CPSC") tested drywall from different manufacturers and those tests confirmed what Judge Fallon has repeated throughout this litigation – not all Chinese-manufactured drywall is defective, but the defective Chinese-manufactured drywall *at issue in this litigation* was manufactured by either Taishan, BNBM, Knauf or C&K.[11]  Taishan does not point to any piece of evidence that identifies another manufacturer of *defective* Chinese drywall. Therefore, it is reasonable, and supported by the evidence, to infer that a non-Knauf board of high-sulfur off-gassing drywall manufactured during this time period was, more likely than not, made by Taishan or BNBM.  *Yet, this was given no weight by the Special Master*.

Similarly, the Special Master disregarded evidence of Defendant's misconduct throughout the course of the litigation.  Viewing numerous aspects of Defendant's litigation misconduct as relevant, Plaintiffs raised this issue before the Special Master, but she appeared to view it as a binary choice – either the Defendant's behavior was egregious enough to warrant a finding of spoliation or an adverse inference, or the behavior warranted no consideration at all.  Even assuming *arguendo* that Taishan's conduct does not constitute a predicate for formal spoliation sanctions or does not change the burden of proof, it is nevertheless relevant and important evidence first as to the ultimate Product ID determination under a "greater weight of the evidence" standard and second *as a matter of credibility*, particularly where much of Defendant's "rebuttal" to Plaintiffs' evidence involves Taishan's own largely self-serving contentions and representations.  Despite the relevance of this circumstantial evidence, *these facts were given effectively no weight by the Special Master*.

If left unaltered, the Special Master's R&R would dismiss, in their entirety, the claims of close to half of the Florida *Amorin* Class, who have been waiting nearly ten years to receive some compensation for the devastating financial damage and often heartbreaking emotional losses they incurred as a result of having defective Chinese drywall installed in their homes. Realizing that the impact on these homeowners is not a reason to hold Taishan accountable for damage done by someone else's product, it is important nonetheless that these

---

[10] *See, e.g.*, Defendant Taishan's Product Identification Contentions and Defenses, attached hereto as Exhibit "D," at 4-6.

[11] *See* fn.9, *supra*, discussing CPSC findings and C&K's relationship with Taishan.

homeowners not be held to an insurmountable burden of proof. This is particularly true here where Taishan does not outright deny that it manufactured the defective drywall in question but instead offers the unsatisfying non-denial position that "it has no records to reflect that it ever made a product with that marking" coupled with unsupported references to other possible guilty manufacturers.

The Court's review of the legal and factual findings of the Special Master is *de novo*.[12] For the reasons set forth herein and in Plaintiffs' PID Brief, Plaintiffs respectfully request that the Special Master's Report and Recommendation should be modified and amended.

## II.    THE STANDARD OF PROOF TO BE APPLIED

### A.    The Default Judgment is Not Irrelevant to the Burden of Proof.

The Special Master did not consider the fact that Taishan is in default when assessing the standard of proof. "Causation and liability have been conclusively established." *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2017 WL 1421627, at *23 ¶ 85 (E.D. La. Apr. 21, 2017). While the plaintiff generally maintains a burden to establish damages under FRCP 55(b)(2), Product ID would appear to be an issue of liability and/or causation,[13] and not damages. The Court, in this regard, has referred to a *challenge* by the *Defendants* to Product ID – as opposed to an affirmative burden on the part of the Plaintiffs.[14] That Taishan is liable for causing injury or loss to the Plaintiffs should accordingly be presumed, with the Defendants carrying the burden of persuasion. Even where the Plaintiffs have the burden to prove damages in a default proceeding, moreover, all reasonable inferences from the evidence are generally drawn in the Plaintiffs' favor. *See, e.g., Finkel v. Romanowicz,* 577 F.3d 79, 84 (2d Cir. 2009); *Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir. 1981).

### B.    "Greater Weight of the Evidence" Requires Consideration of the Totality of the Circumstances To Determine What is More Likely Than Not.

The Special Master stated at the outset that Plaintiffs bore the burden of proof "by the greater weight of the evidence standard," SM R&R at 4, a phrase that is used interchangeably

---

[12] Fed. R. Civ. P. 53(f).

[13] *See, e.g.,* SM R&R at 3 ("Plaintiffs bear the burden of proof to establish … that the drywall that *caused* any claimed damages was manufactured by the Taishan Defendants") (emphasis added).

[14] *See, e.g., Chinese Drywall*, 2017 WL 1421627, AT *50 ("Taishan will then be permitted to review and contest"); ECF No. 112 at 6 ("*Defendants may challenge* only....") (emphasis added); SM R&R at 3 ("the *Defendants are entitled to challenge* ….") (emphasis added).

with "preponderance of the evidence." *In re Levin,* 434 B.R. 910, 921 (S.D. Fla. 2010). Plaintiffs satisfy this burden when, upon consideration of ***all*** the evidence, it is ***more likely than not*** that the boards in question were manufactured by the Defendant. *See United States v. Almedina,* 686 F.3d 1312, 1315 (11th Cir. 2012); *see also Lowery v. Ala. Power Co.,* 483 F.3d 1184 (11th Cir. 2007). Significantly, "direct evidence of a fact is not required. Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Michalic v. Cleveland Tankers, Inc.,* 364 U.S. 325, 330 (1960); *Peach State Labs, Inc. v. Environmental Mfct. Solutions, LLC,* 2011 WL 13140669, at *4 (M.D. Fla. Dec. 29, 2011).

There is no caselaw in Florida that limits the method for establishing Product ID to direct photographic evidence and markings only even though it appears that was the standard applied by the Special Master. *See, e.g., Sweeney v. Kimberly-Clark Corp.,* 2016 WL 727173, at *7 (M.D. Fla. Feb. 22, 2016), *order clarified,* 2016 WL 7138530 (M.D. Fla. Mar. 3, 2016). ***Instead***, the appropriate standard involves a totality-of-the-circumstance approach. *See also, e.g., Huck v. Louisville Ladder, Inc.,* 2008 WL 222682, at *2 (M.D. Fla. Jan. 25, 2008); *Pulte Home Corp. v. Ply Gem Indus., Inc.,* 804 F.Supp. 1471, 1486 (M.D. Fla. 1992) (same).

### C. Defendants' Litigation Misconduct Is Relevant to its Credibility.

It is relevant to Taishan's credibility that its conduct at every point has been designed with one goal in mind – minimizing its financial exposure to the aggrieved homeowners – and it has not hesitated to disregard the rules and litigation norms when it thought that was the best way to achieve that goal. In addition, Defendants' discovery abuses and overall litigation tactics are important when weighing the presence or absence of certain evidence. For example, if Taishan says that it will only respond to discovery by providing evidence beneficial to the company and only do so "when necessary,"[15] it would explain, among other things, why volumes of direct evidence may be hard to obtain, why there are so few records "kept," and why Taishan denies it is responsible for certain markings and then change its position years later when "residual boards" turn up at the last minute.

This is significant because the Special Master essentially accepted without question Taishan's *post hoc* explanations at face value, disregarded the fact that Taishan intentionally failed to put its name or other identifying information on the vast majority of the drywall it

---

[15] Taishan Information Report [Pls.' Tab 6], at TG-0208430.

admits to manufacturing, and ignored the substantial body of direct photographic evidence and circumstantial evidence presented by Plaintiffs to refute same.[16]

Perhaps the Special Master was swayed, in part, by Taishan's new attempt to play the victim, repeatedly stating or implying that it has been denied a fair opportunity to have its arguments considered. Taishan argued that it is being wrongly condemned "because it is a Chinese company," that "[t]he rhetoric has at times swung dangerously close to xenophobic prejudice," and that this is the first time it has "had an opportunity to defend itself to a fact-finder on PID."[17] In other words, Taishan audaciously claims that it has been mistreated by Plaintiffs as an appeal to prejudice when, in fact, it is simply an innocent litigant seeking their day in court which has finally arrived. To be clear, Plaintiffs' citations to Defendant's litigation misconduct are based on Taishan's documents and direct quotations from Judge Fallon's opinions addressing that misconduct – they are not based upon preconceptions.

## III. ERRORS IN SPECIAL MASTER'S ANALYSIS THAT FLOW THROUGH THE ENTIRE REPORT & RECOMMENDATION

### A. There Is No Evidence in the Record of Additional Manufacturers of Defective Chinese Drywall.

One of the most persuasive pieces of evidence that a given sheet of drywall was manufactured by Taishan is that there are no additional manufacturers of defective Chinese drywall. The fact that a sheet of drywall is non-Knauf and high-sulfur off-gassing immediately gives rise to a presumption that it is a Taishan (or BNBM) board. Taishan understands this, so it goes all-in on trying to refute this fact but in doing so, does not offer a single piece of evidence that there are additional manufacturers of *defective* Chinese drywall.

Testing by the CPSC confirmed that the only drywall that was reactive (*i.e.*, high-sulfur off-gassing defective) was manufactured by Taishan, BNBM, Knauf and C&K.[18] That is consistent with Judge Fallon's findings that the "Chinese drywall at issue was largely manufactured by two groups of defendants: (1) the Knauf Entities, and (2) the Taishan Entities" with the Taishan Entities including both Taishan and BNBM. *See Chinese Drywall*,

---

[16] A detailed discussion of litigation tactics that have impacted on discovery is contained in Plaintiffs' PID Brief at pages 11-22, 23-30.

[17] Defs.' PID Br. [Ex. D] at 4, 13.

[18] *See* fn.9, *supra*, discussing CPSC findings and C&K's relationship with Taishan.

2017 WL 1421627, at *1-2.[19]  The CPSC tested samples of over fifteen other manufacturers' drywall and concluded that they "had low or no detectable emission of hydrogen sulfide as did the drywall samples tested that were manufactured domestically."[20] There is no question from these findings that there are multiple manufacturers of drywall imported from China **but only four** manufacturers of **defective** Chinese drywall.

Taishan then used the mere existence of other Chinese drywall manufacturers to recast the entire case from one that involves **defective** Chinese drywall to one that, according to Taishan, involves any and all Chinese drywall – this is simply false.  By changing the question, it allows Taishan to create its strawman – "one of the misconceptions that has perpetuated in this litigation is the notion that only two companies in China manufactured drywall that was sent to the United States in the 2005-2009 time frame" – and then knock it down with a series of charts and statistics about overall drywall manufacturing in China and imports to the U.S.[21] But, this is a total misdirection and was irrelevant to the issues before the Special Master.[22]  It is indisputable that the drywall at issue here is not **all** drywall manufactured in China, **it is high-sulfur off-gassing defective drywall** and Taishan did not offer any evidence that there are additional, unknown manufacturers of **defective** Chinese drywall.

Beyond trying to shift the focus away from the CPSC testing of drywall samples and Judge Fallon's findings, Taishan was apparently hoping to create an inference that if other companies manufactured drywall in China, one could assume they also manufactured defective drywall.[23]  There is no evidence to support this inference and in fact, the CPSC report

---

[19] Taishan also quotes this statement from Judge Fallon's opinions and notes that he has made this exact statement in at least 27 different orders.  *See* Def.'s PID Br. [Ex. D] at 4 n.3.

[20] CSPC Report [Pls.' Tab 15] at 1-2.

[21] *See, e.g.,* Def.'s PID Br. [Ex. D] at 4-6. *See also* March 11, 2019 PID Hearing Tr., attached hereto as Exhibit "E," at 182:19-184:16 (Taishan discussing pie chart reflecting sales of drywall from China **not sales of defective drywall**), at 216:18-219:23 (discussing problems with pie chart and fact that only drywall at issue is high-sulfur off-gassing defective drywall).

[22] In fact, Taishan was clever with its word choice, always referring to "manufacturers of drywall," and never other manufacturers of "defective drywall." *See, e.g.,* Def.'s PID Br. [Ex. D] at 6.

[23] The only other piece of "evidence" Taishan argues supports its "other manufacturer" assertion is that Plaintiffs named other manufacturer defendants early in the litigation.  These manufacturers were not pursued once it became clear that the evidence showed that the manufacturers of defective drywall were Knauf, Taishan and BNBM.

rebuts it. That did not stop Taishan from going to great pains to create a false impression, specifically identifying Pingyi Baier Building Materials Co., Ltd. ("Baier")[24] as another Chinese drywall manufacturer whose samples were tested by the CPSC, but failing to note that the CPSC found Baier's drywall non-reactive (not defective).[25] Yet, in spite of the complete lack of evidence that there are other manufacturers of *defective* Chinese drywall, the Special Master accepted Taishan's invitation to make unsupported inferences and gave no weight to the fact that a given piece of drywall was non-Knauf and defective.

**B.      Evidence Regarding Taishan's Manufacturing Process.**

It is clear that Taishan's manufacturing process and record-keeping were inconsistent and inaccurate. These inconsistencies and inaccuracies provide circumstantial evidence that further Plaintiffs' position but were given no weight by the Special Master. For example, the Special Master ignored that: (1) Taishan sold at least 86 million square feet of its drywall to American homeowners during the relevant time period, with more than 9 million square feet going directly to Florida;[26] (2) Taishan made blank boards for export to the U.S., knowing that others might add markings;[27] (3) Taishan was legally required to, but did not, ensure that its boards for sale to and use in the United States were permanently marked as "Made in China" under the Tariff Act of 1930;[28] (4) Taishan claims that its Labeling Manuals "do not relate to Taishan's foreign sales or production;"[29] (5) Taishan used a multitude of different spray marking machines, which often stopped functioning after a short period of time and had to be replaced, and Taishan had no formal protocols for giving "employees in the production department…any written instructions on using the spray machines to put markings on American-sized drywall" and, in fact, Taishan admits "[t]here was no written instruction on the [spray machine printing] operation. Usually we [Taishan] did what the

---

[24] Def.'s PID Br. [Ex. D] at 8 (citing "Baier").

[25] Pls.' Tab 15 at 2.

[26] *See* Pls.' Tab 6. *See also, generally, In re Chinese-Manufactured Drywall Prod. Liab. Litig.,* 894 F. Supp. 2d 819 (E.D. La. 2012), *aff'd,* 742 F.3d 576 & 753 F.3d 521 (5th Cir. 2014).

[27] *See,* fn. 7, *supra.*

[28] 19 U.S.C. §1304(a). *See also* 2019 Che Dep. [Pls.' Tab 20] at 252:14-254:10 (Taishan was aware of the requirement).

[29] Pls.' Tab 71, at ¶7.

9

customers requested";[30] (6) Taishan's 30(b)(6) Representative implausibly suggests that the
edge tape production department (i) had no computers to receive email orders,[31] and (ii) no
written requests were made for edge tape (and if such a request was ever jotted down, no
records of any type, electronic or otherwise, were kept of the edge tape manufacturing
process);[32] (7) Taishan's repeated acknowledgments and admissions that its customers would
frequently put their own markings on the Taishan-manufactured drywall;[33] (8) Taishan's
corporate representative testified to the lack of accuracy in the spray markings applied to
boards: "according to our memory and speculation, usually [the printer] would use the font
left from the prior work, only to change the content of the spray mark. People are always
lazy;[34] and (9) the fact that Taishan did not keep records of any specific spray markings.[35] This
mounting evidence is directly relevant to why there may be slight differences in font,
differences in wording (*e.g.*, meet"s" versus meet, "x" versus "*", etc.), no records of spray
markings, etc. Yet, the Special Master accorded the evidence no weight.

### C. Taishan's Suggested Chemical Analysis Test Doesn't Exist.

In an effort to heighten Plaintiffs evidentiary burden in this default proceeding,
Taishan suggested that in the case of boards with "white edge tape, blank boards with no
markings" Plaintiffs should be required to conduct something along the lines of chemical
analysis, an argument that seemed to resonate with the Special Master who cited it in footnote
6 of her R&R, even though Taishan knows no such analysis can be performed. In doing so,
Taishan raised the required evidentiary bar by creating an inference that, without the bogus
chemical analysis, Plaintiffs would fail to satisfy their burden. Taishan argued to the Special
Master that with drywall samples, "chemical analysis could identify the maker of a drywall."
Immediately thereafter, Plaintiffs called upon Taishan to acknowledge that Product ID by
chemical analysis was a fiction; after that was denied, sought discovery on the matter; and
ultimately, Taishan acknowledged that it has never done any chemical analysis and refused

---

[30] *See, e.g.,* 2019 Che Dep. [Pls.' Tab 20] at 184:4-191:11, 212:25-215:13.

[31] *Id.* at 244:23-245:8.

[32] *Id.* at 247:19-248:3.

[33] *See, e.g.,* Pls.' Tab 10, at TG-0129675-676; Pls.' Tab 11 at 2.

[34] *See, e.g., id.* at 215:13.

[35] *See, e.g., id.* at 288:14-21.

to answer as to any reliable method for Product ID by chemical analysis. Taishan's suggestion that a chemical analysis product identification system was available was pure fiction and more evidence that the gamesmanship has never stopped.[36]

## IV.    CATEGORY-SPECIFIC ISSUES WITH THE SPECIAL MASTER'S R&R

### A.    Made in China Meet[s] or Exceed[s].

This category contains markings reflected in six photos – Photos 13, 17, 18, 19, 20 and 21. Taishan admits it manufactured markings reflected in Photos 13, 17, and 20 which contain the words "Meet or Exceeds," but denies manufacturing markings reflected in Photos 18, 19, and 21. The difference between the markings that were admitted and those that were denied is the addition of the letter "s" to the word "Meet" – in other words, Taishan admits it manufactured boards labelled "Meet or Exceeds" but denies it manufactured those labelled "Meet**s** or Exceeds." Because Taishan admits responsibility for these two markings, the Special Master attributed those specific markings to Taishan. *Id*. at 9.

As it relates to markings that contain an "s" in "Meets," the Special Master reached a vastly different conclusion because Taishan "den[ied], however, that it manufactured drywall with product markings that include 'MEETS'" and according to the Special Master, "[t]he Plaintiffs have not established otherwise." SM R&R at 9. The Special Master was simply wrong on both counts.

First, Taishan's "denial" is not really a denial, but simply a statement that "there are no records at Taishan of any -- of ever us manufacturing boards with an S at the end of MEETS."[37] As discussed above, this lack of records is not surprising in light of all of the evidence of Taishan's manufacturing process and poor record keeping. Indeed, as noted above, the evidence suggests that variations in fonts such as an additional "s" could be easily predicted. This is further corroborated by Taishan's MPF on this very issue. Taishan incorrectly filled out the MPF, denying responsibility for boards marked "Meet or Exceeds" because it had no records of manufacturing boards with that marking, but then after the

---

[36] *See* March 11, 2019 PID Hearing Tr. [Ex. E] at 232:14-19 ("they could do it that way . . . it has the same chemical analysis that a Taishan board has."); *see also* Taishan's Resp. and Obj. to PSC's Supp. Doc. Requests, attached hereto as Exhibit "F" (responses to discovery requests regarding purported chemical analysis); April 18, 2019 Eickhoff Letter to Serpe regarding chemical analysis testing, attached hereto as Exhibit "G."

[37] March 11, 2019 PID Hearing Tr. [Ex. E] at 192:2-6.

"residual boards" that said "Meet or Exceeds" were found in late-2018, it had to accept responsibility for those despite prior denials, SM R&R at 9.[38]

Furthermore, Photo 18, for which the Special Master denied attribution, depicts a board with the marking "Meets" with an "s," and illustrates that the board also contains the aqua blue Taihe edge tape that Taishan admits making.[39] Taishan has admitted that it manufactured boards with the aqua blue edge tape. Taishan Br., Ex. B, at 23; *see also* SM R&R at 8. Additionally, the font and print in Photo 18 is identical to Photo 17, which Taishan admits manufacturing.

The same is true for the version of Photo 19 that was provided to the Special Master as part of Plaintiffs' Product ID presentation. The same board with the marking "Meets" with an "s" also contains Taihe edge tape.[40] ***This is direct evidence that Taishan manufactured boards with the marking "Meets" with an "s."*** And, to make matters worse, the Special Master asked Taishan directly about the Taihe Tape in Photo 19 at the hearing and Taishan did not even pretend to offer explanation but simply repeated its position that it has no records indicating it manufactured boards with the marking "Meets" with an "s." Tr. at 191:20-192:10. Even with this "smoking gun" evidence, the Special Master ruled in favor of Taishan without so much as mentioning the direct photographic evidence in Photos 18 and 19. The Special Master also ignored the fact that the numerical sequence in Photo 19 is identical to Photo 9, which the Special Master found attributable to Taishan. In addition, Taishan admitted that

---

[38] *See* fn. 8, *supra*, (discussing discovery of residual boards and Taishan's eventual acknowledgement of responsibility for "Meet or Exceeds" marking).

[39] March 11, 2019 PID Hearing Tr. [Ex. E] at 191:3-19. *See also* Photo 18 [Pls.' Tab 57]. Other pictures of the same exact board that is reflected in Photo 18 show the edge tape even more clearly. *See* Dennis S. Hocker, 509 E. Sheridan Street, Unit 304, Dania, Florida, BrownGreer Doc 191809, at 11, attached hereto as Exhibit "H." Numerous pictures produced in this litigation illustrate the same "Meets" with an "s" along with aqua blue Taihe edge tape that show conclusively that Taishan does, in fact, manufacture boards with "Meets" with an "s" "or Exceeds." *See, e.g.*, Priority Plaintiffs John and Bertha Hernandez, 3516 N. Perry Avenue, Tampa, FL, BrownGreer Doc 365098, at 10-11, attached hereto as Exhibit "I."

[40] *See* Plaintiffs' PID Powerpoint, attached hereto as Exhibit "C," at Slides 78, 82 (all photos of the same board).

it manufactured Photo 15. Although the "s" was obscured in Photo 15, other pictures with this identical marking and font reveal the word "Meets" following the comma in the photo.[41]

In addition to the direct photographic evidence, there is voluminous circumstantial evidence that supports attribution of all photos in the "Meet[s] or Exceed[s]" category to Taishan. The Special Master conceded that the "font variations are minimal" among the pictures with that variation to be expected because of the numerous production lines and machines in use by Taishan. SM R&R at 8 & n.5. So, the Court could simply walk through the facts: (1) drywall with the "Meet[s] or Exceed[s]" is defective; (2) the "Meet[s] or Exceed[s]" is not a Knauf product; (3) Taishan admits it made drywall marked "Meet or Exceeds"; (4) boards with the "Meets or Exceeds" marking have been found to contain Taihe edge tape; (5) Taishan admits that its use of singular and plural was not always accurate;[42] (6) the "Meets" with an "s" "or Exceeds" marking is the same font as other admitted markings; and (7) Taishan had previously not taken responsibility for "Meet or Exceeds" markings it manufactured until it found the residual boards in December 2018. Add to that the evidence discussed above with respect to Taishan's manufacturing process and record keeping.

This evidentiary mountain is met with only Taishan's self-serving statements: (1) that the "Meet[s] or Exceed[s]" label is generic; (2) that these markings could be from some unidentified competitor; and (3) that it has no records of using "Meets" with an "s" marking. Nevertheless, the Special Master accepted, at face value, Defendant's unreliable, incredible and self-serving denials and ignored not only the circumstantial evidence discussed above, but also the direct photographic evidence. This is clear error.

**B.    Various Drywall Dimensions, Including 4feetx12feetx1/2inch.**

It is undisputed that Taishan manufactured drywall with the word "Drywall" and the phrase "4feetx12feetx1/2inch." This category involved 7 photos – Photos 5, 6, 7, 8, 9, 10 and 11. Taishan does not deny that it made the boards with the markings reflected in Photo 2 which shows the phrase "DrYwall" with a capital "Y" and the phrase "4feetx12feetx1/2inch."[43] SM R&R at 9. In addition, Taishan acknowledged in its MFP that

---

[41] *See* Photo 15 [Pls.' Tab 55]; *see also* John and Bertha Hernandez, BrownGreer Doc. 365099, at 14, 19 and 3650987, at 7, attached hereto as Exhibit "J."

[42] 2019 Che Dep. [Pls.' Tab 20] at 107:13-18.

[43] Def.'s PID Br. [Ex. D], at 41-44.

it made boards with the phrase "DRYWALL 4feetx12feetx1/2inch." Beyond that, Taishan once claimed it did not have any records to confirm or deny whether it made boards with the markings contained in the remaining photos and denies responsibility primarily because some of the photos reflect marking where the word "Drywall" is written in different font (*e.g.*, all capital letters – even though their MFP states "DRYWALL" in all capital letters) and several of the photos reflect an asterisk instead of a multiplication sign between the dimensions (*i.e.*, "4feet*12feet*1/2inch"). Based upon Taishan's admission, the Special Master found the markings found in Photo 2 to be attributable to Taishan and then, found Taishan responsible for the markings in Photo 5 because it used the same words as the MFP – "Drywall 4feetx12feetx1/2inch" – and Photo 9 because it had the same font for the word "DrYwall" with a capital "Y" as the admitted Photo 2. In other words, the Special Master only attributed the drywall markings in this category to Taishan when it admitted it or the markings in a given photo were identical to the markings it admitted.

The Special Master offers no explanation for denying Taishan's responsibility for the markings in Photos 6, 7, 8, 10 and 11. By finding Taishan liable only for the markings it admitted, either directly or indirectly, and accepting Taishan's self-serving representations with respect to their use of capital lettering or asterisks, the Special Master essentially made Taishan's credibility the determining factor in her analysis. And, what is troubling is that she did so in the face of compelling evidence showing Taishan's representations were inaccurate, and significant circumstantial evidence linking these boards to Taishan. In addition to the arguments below, the Special Master ignored all of the evidence regarding Taishan's manufacturing processes and record-keeping discussed above.

*First*, there is a fundamental problem with the Special Master's denial of the markings in Photo 6. That denial contained no explanation, which is significant because the Special Master appropriately found the markings in Photo 5 attributable to Taishan because "the marking on photo #5 reflects the same words listed on [Taishan's MPF], specifically "Drywall 4feetx12feetx1/2inch" – and Photo 6 is identical to Photo 5.[44] SM R&R at 9. Both contain

---

[44] The exemplar that is reflected in Photo 6 is cut off because it came from a ripped piece of drywall so it shows only "Drywall 4feetx12" with the jagged edge of the tear cutting through the "2" but there is no plausible dispute that had the piece of drywall not been torn, the remainder of the phrase – "feetx1/2inch" would follow what is seen in the photo.

the same words listed on Taishan's MPF, namely the "Drywall 4feetx12feetx1/2inch."[45] Both contain the same elongated "y" and both contain the same font. The only difference is that the markings in Photo 6 are printed in dot matrix. That difference is inconsequential particularly given the fact that other markings in dot matrix are (correctly and appropriately) attributed to Taishan. Furthermore, the dot matrix printing in Photo 6 (including the irregular/stray marks, particularly the letter "D") are identical to those that appear in Photo 17 (which the Special Master found attributable to Taishan).

*Second*, the Special Master's determination that the nearly identical marking – "Drywall 4feet*12feet*1/2inch" (an asterisk in place of the multiplication sign) – contained on the drywall in Photos 7 and 8 should not be attributable to Taishan flies in the face of the evidence. Indeed, the Special Master's refusal to infer that drywall with the nearly identical markings "Drywall 4feet*12feet*1/2inch" was also manufactured by Taishan can only be explained by her requirement that Taishan's responsibility be shown with *direct* evidence – *i.e.* an admission by Defendants – that Taishan used an asterisk in representing the board's dimensions. Taishan's key defense, beyond claiming that "other manufacturers may have produced drywall with these markings," was that it has not uncovered any records showing that it used an asterisk in place of a multiplication sign.[46] Yet, not only did Plaintiffs produce evidence directly calling into question this defense, namely numerous emails between Taishan personnel and United States' customers in which Taishan used asterisks instead of multiplication signs when discussing drywall dimensions,[47] but also Taishan initially admitted manufacturing the type of drywall depicted in Photo 35 in which an asterisk is used.[48] Photos 7 and 8 should have been attributed to Taishan.

*Finally*, with respect to the variations in the capitalization of the word "Drywall," the Special Master denied attribution for the markings in Photo 10 ("DRYWALL") and Photo 11 ("DryWall") without explanation. First, "DRYWALL" with all capital letters was identified on Taishan's MPF. In addition, Taishan admittedly has no idea what style the

---

[45] Pls.' Tab 61.

[46] *See* 2019 CHE Dep., [Pls.' Tab 20], at 129:16-25; *see also* Def.'s PID Br. [Ex. D], at 44.

[47] *See, e.g.*, Pls.' PID Br. 49, Tabs 62-64, 65 and 67.

[48] *See* MDL Rec. Doc. 8310-1, at 6.

word "Drywall" took when it was placed on their boards because it has no records. It is clear that it made boards with the specific dimensions described above and that those boards had the word "Drywall" on them in different forms. Given that Taishan manufactured defective high-sulfur "DrYwall" with a capital "Y," is it *more likely than not* that it also manufactured defective "DryWall" with a capital "W," particularly given the evidence in the record about the inconsistency of its manufacturing process, or instead that some other unknown and unidentified company manufactured defective high-sulfur "DryWall" with a capital W? The weight of the evidence clearly points to Taishan.

### C.    IMT Gypsum

It is undisputed that Taishan manufactured drywall with "IMTGYPSUM" printed on it,[49] but the Special Master hinges her opinion on a distinction drawn between Taishan manufacturing board with "IMT Gypsum" printed on edge tape (admitted) vs. "IMT Gypsum" printed with spray markings, as opposed to edge tape (not admitted). Again, the Special Master accepted, at face value, the self-serving testimony of Defendants that it did not use "IMTGypsum.com" (simply because it found no records "that Taishan had sprayed the marking of 'IMT' on the back of its boards"[50]) and that it has no evidence of having used asterisks instead of multiplication signs.[51]

This conclusion flies in the face of the overwhelming weight of the evidence, including the facts referenced above with respect to Taishan's manufacturing process as well as the following: (1) the existence of at least one 2006 Sales Plan Notification from Taishan's Sales Department for the manufacture of IMT Gypsum drywall to Taishan's Management Department wherein the edge tape was to clearly read "IMT Gypsum" and a spray marking was to be attached (Taishan's production of the Sales Plan Notification did not include the attached spray marking);[52] (2) when asked what the "IMTGypsum" edge tape identified in the Manufacturer Profile Form looks like, Mr. CHE responded, "I was not able to discover

---

[49] SM R&R at 6 (citing Def.'s Tab 29).

[50] 2019 Che Dep. [Pls.' Tab 20] at 60:23-25.

[51] *See* SM R&R at 6.

[52] *See* Pls.' Tab 15, at TG-PID-000041-42.

the edge tape during my depo preparation as the corporation's representative";[53] (3) Taishan initially admitted to the manufacture of the type of drywall depicted in Photo 35 in which an asterisk is used;[54] and (4) Taishan's numerous emails to United States customers listing drywall dimensions using asterisks in lieu of a multiplication sign (*e.g.,* 12'*4'*1/2").[55]

Taking the fact that Taishan admittedly manufactured board marked "IMTGYPSUM" and the Sales Plan Notification indicated that there were to be spray markings (although not attached) would certainly make it more probable than not, absent evidence to the contrary, that the boards in questions were manufactured by Taishan.

### D.    ProWall

The evidence presented to the Special Master clearly established that Taishan manufactured ProWall for a Chinese entity called Run & Fly (Jinan) New Materials Co. Ltd. who imported that drywall into the U.S.[56] SM R&R at 7. In fact, it is undisputed that Taishan sold at least 9,936 sheets of blank drywall to Run & Fly in 2006.[57] The evidence also shows that Run & Fly sold that same amount, 9,936 sheets of ProWall, to a North Carolina entity called Manchester In Home and Manchester subsequently sold, that same amount, 9,936 sheets of ProWall, to Stock Building Supply whose Florida locations distributed ProWall to installers in Florida. With these facts, it cannot seriously be questioned that Plaintiffs have established that it was "more likely than not" that Taishan manufactured ProWall.

However, the Special Master found that Plaintiffs did not meet their burden relying upon: (1) the suspect and self-serving deposition testimony of Taishan's corporate representative who had claimed that the batch of drywall it manufactured for Run & Fly was only a test batch and Run & Fly ultimately went with a less expensive manufacturer to fulfill

---

[53] *See, e.g.,* 2019 Che Dep. [Pls.' Tab 20] at 67:22-24.

[54] *See* MDL Rec. Doc. 8310-1, at 6. (While the document refers to "4feetX12feetX1/2inch" the photograph itself depicts "4feet*12feet").

[55] *See, e.g.,* Pls.' Tabs 62-64. *See also* March 11, 2019 PID Hearing [Ex. "E"] at 144:17-146:2 (Taishan admits to manufacturing DUN drywall. The "Product Markings" column on the MPF is blank for DUN drywall but indicates under the "Edge Sealing Tape Markings" column that it contains "Edge sealing tape: DUN Drywall." However, contrary to the MPF, the DUN boards have "DUN Drywall" markings on the boards themselves, not the edge tape, which Taishan admits it manufactured.).

[56] Pls.' PID Br. [Ex. A] at 40-43.

[57] *See, e.g.,* Pls.' Tab 19; 2019 Che Dep. [Tab 20] at 146:20-148:15.

their drywall needs; and (2) Taishan's claim that it has no record of having manufactured boards with the phrase "Meets ASTM C36/C1396 STANDARD," which appears on the ProWall boards as opposed to "Meet or Exceeds" that is indicated in the MPF.[58]

The only evidence in the record that any other entity produced ProWall drywall for Run & Fly is the self-serving testimony of Taishan's Rule 30(b)(6) witness.[59] *Yet, the Special Master found this denial to be conclusive*. This is precisely where Taishan's credibility problem comes into play and yet, the Special Master gave it no weight. Instead, the Special Master found this speculative and self-serving "evidence" overcame the direct and unrefuted evidence that Taishan provided Run & Fly with ProWall who then provided that drywall downstream to Stock who used that drywall in Florida.

### E. White Edge Tape, Boards with No Markings or Boards with No Markings Other Than Numbers.

There is no dispute that Taishan manufactured boards in this category, and noting that "Plaintiffs assert that the Taishan Defendants manufactured and exported nearly one million square meters of blank board with white edge tape to the United States," the Special Master concedes "it is likely that at least some of the boards in the Florida claimants' homes that fit this Product ID category were manufactured by the Taishan Defendants." SM R&R at 10. Yet, the Special Master declined to attribute this Product ID Category to Taishan because without more information, she "is unable to determine what portion or which claimants' homes" contained boards manufactured by Taishan. *Id*. In other words, the Special Master declined to hold Taishan accountable for none of the "nearly one million square meters of blank board[s]" because there would be no way to determine if a given "blank" board was manufactured by Taishan or someone else. The intentional failure to mark one's product should not provide a free pass to manufacturers of those products if they cause harm.

The relevant inquiry in this default proceeding is whether under the totality of the circumstances, it is more likely than not that Taishan manufactured the boards in the Category that were used in claimants' homes. Plaintiffs satisfied their burden of proving that

---

[58] The Special Master also noted Taishan's claim that their invoice with Run & Fly was a "common invoice" indicating for use in China as opposed to an "export invoice," a fact that hardly seems relevant in that the manufactured boards were American-sized and the evidence noted by the Special Master shows the boards ended up in the United States. SM R&R at 7.

[59] 2019 Che Dep. [Pls.' Tab 20] at 150:7-151:21; *see also* Def.'s PID Br. [Ex. D] at 34.

Taishan manufactured boards in this category generally, but the Special Master argues that Plaintiffs cannot meet their burden specifically as to each board. First of all, Plaintiffs are entitled to the reasonable inference that this non-Knauf high-sulfur off-gassing defective drywall was made by Taishan. Second, it is Taishan's manufacturing process and procedures, or lack thereof, that created the identification problem by failing to property mark their boards as required under U.S. law.[60] That alone should shift the burden to Defendant to refute that it did not manufacture a given board.

Attribution to Taishan is also supported by the fact that: (1) Taishan's documents admit to the manufacture and export of nearly one million square meets of blank board with white edge tape to the U.S.;[61] (2) Taishan admits in its MPF that it manufactured 351,745 sheets of drywall with no "Product Markings" and no "Edge Sealing Tape Markings" from 3/13/2006 to 9/15/2006;[62] (3) Taishan admits in its MPF that it manufactured 19,565 sheets of drywall with no "Product Markings" but "Edge Sealing Tape Markings" identified as "White Edge Sealing Tape (without words printed thereon)" from 4/26/2006-4/30/2007;[63] (4) Taishan reported, in April of 2006, that the "labeling for the remaining 1020749.452 square meters [10,987,347.10 square feet] of gypsum boards is *unknown*";[64] (5) Taishan admits it manufactured boards without any product or edge sealing tape markings, which were exported by Taian Taigo Trading Corp.;[65] and (6) there is no evidence (no document and no witness) who can say that there was ever any defective blank board with white edge tape exported to the U.S. by any competitor or other manufacturer.[66]

In response, Defendant argues that (1) other companies manufactured drywall, ***not defective drywall***, with white backing or white edge tape that contained no other markings;

---

[60] Pls.' PID Br. [Ex. A] at 28-30.

[61] *See* Pls.' Tab 10; *see also* Taishan MPF [Pls.' Tab 11] at lines 11, 62-63, 131, 198-201, 224-228, 231, 235.

[62] *See* Taishan MPF [Pls.' Tab 11] at lines 2-5, 16-21, 24-28, 122, 218 (totaling 351,745 sheets of drywall with no "Product Markings" and no "Edge Sealing Tape Markings" markings).

[63] *See id.* at lines 11, 62-63, 131, 198-201, 224-228, 231, 235 (totaling 19,565 sheets of drywall with no "Product Markings" but "White Edge Sealing Tape (without words printed thereon)").

[64] *See* Pls.' Tab 68, (emphasis supplied).

[65] *See* Pls.' Tabs 11 and 68.

[66] *See* 2019 Che Dep. [Pls.' Tab 20] at 27:5-13.

and (2) Plaintiffs should provide a "chemical analysis" to trace the drywall to Taishan – the very "chemical analysis" that Taishan knows is not possible to conduct.[67] Yet, the Special Master did not stop to weigh the evidence (since Taishan presented none) and merely accepted Taishan's argument that more was required than the evidence set forth above for Plaintiffs to meet their burden, even going so far as to seemingly accept Taishan's bogus "chemical analysis" claim. Under the Special Master's approach, Taishan is allowed to escape liability for millions of square feet of defective drywall that Taishan *admits* was shipped to the U.S.[68]

### F. C&K Drywall.

The Special Master found that Taishan was not responsible for boards bearing markings in this Category. SM R&R at 5. Taishan's key rebuttal to its responsibility for this Category is that these boards were manufactured by a competitor, Shandong Chenxiang Building Materials Co., Ltd. ("Shandong Chenxiang"). *Id.* Three key points were left unaddressed by the Special Master's analysis: (1) Shandong Chenxiang is noted as the shipper, not the manufacturer, of the drywall in question on many of Taishan's documents; (2) Taishan regularly fulfilled orders for American-sized drywall during times of increased demand for smaller gypsum board factories; and (3) York Building Supply imported C&K drywall, and (4) evidence indicated that Taishan had a contractual relationship with York Building Supply/International Materials Group to produce drywall.[69] In addition, Shandong Chenxiang eventually went bankrupt and was ultimately acquired by BNBM.[70]

## V. CONCLUSION

For these reasons, the Court should sustain Plaintiffs' Objections to the Special Master's R&R and find that the following Product ID Categories (and markings contained in all photos therein) are attributable to Taishan: C&K; IMT Gypsum; ProWall; Meet[s] or Exceed[s]; Dimensions; and White Edge Tape.

---

[67] *See* Section III.C, *supra*.

[68] *See, e.g.,* SM R&R at 10 (citing Def's Tabs 27-29 and noting that "it is likely that at least some of the boards in the Florida claimants' homes that fit this Product ID were manufactured by the Taishan Defendants").

[69] *See, e.g.,* 2019 CHE Dep. [Pls.' Tab 20] at 68:11-15, 133:10-138:25; *see also* Pls.' Tabs 42-45.

[70] *See* fn.9, *supra*, discussing CPSC findings and C&K's relationship with Taishan.

Dated: April 29, 2019

Respectfully Submitted,

/s/ Patrick S. Montoya, Esq.
Patrick Shanan Montoya
Fla. Bar No. 0524441
Email: Patrick@colson.com
Colson Hicks Eidson
255 Alhambra Circle, PH
Coral Gables, FL  33134-2351
Telephone:  (305) 476-7400
Facsimile:  (305) 476-7444
*Interim Lead Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Southern District of Florida by using the CM/ECF System, which will send a notice of electronic filing on this 29th day of April, 2019.

/s/ Patrick S. Montoya, Esq.
Patrick Shanan Montoya
Fla. Bar No. 0524441
Email: Patrick@colson.com
Colson Hicks Eidson
255 Alhambra Circle, PH
Coral Gables, FL 33134-2351
Telephone: (305) 476-7400
Facsimile: (305) 476-7444
*Interim Lead Counsel for Plaintiffs*

# EXHIBIT

# "A"

# <u>FILED UNDER SEAL</u>

# EXHIBIT

## "B"

# FILED UNDER SEAL

# EXHIBIT

# "C"

# <u>FILED UNDER SEAL</u>

# EXHIBIT

# "D"

# <u>FILED UNDER SEAL</u>

# EXHIBIT

# "E"

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/18/19 Page 33 of 344
Case 1:11-cv-22408-MGC Document 291 Entered on FLSD Docket 04/29/2019 Page 2 of 281
March 11, 2019

```
 1          IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF FLORIDA
 2
 3   EDUARDO AND CARMEN          )
     AMORIN, et al.,             )
 4   individually, and on        )   Case No.
     behalf of all others        )   1:11-CV-22408-MGC
 5   similarly situated,         )
                                 )
 6        Plaintiffs,            )
                                 )
 7   v.                          )
                                 )
 8   TAISHAN GYPSUM CO., LTD.    )
     F/k/a SHANDONG TAIHE        )
 9   DONGXIN CO., LTD.; TAIAN    )
     TAISHAN PLASTERBOARD        )
10   CO., LTD., et al.,          )
                                 )
11        Defendants.            )
12
13             Monday, March 11, 2019
14
15        HEARING RE: PRODUCT IDENTIFICATION,
16   held before Special Master Tiffani G. Lee at
17   the offices of Holland & Knight LLP,
18   701 Brickell Avenue, Miami, Florida,
19   commencing at 9:45 a.m. on the above date,
20   before Michael E. Miller, Registered
21   Diplomate Reporter, Certified Realtime
22   Reporter and Notary Public.
23             — — —
24        GOLKOW LITIGATION SERVICES
         877.370.3377 ph | 917.591.5672 fax
25            deps@golkow.com
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 34 of 344
Case 1:11-cv-22408-MGC Document 25 Entered on FLSD Docket 04/29/2013 Page 3 of 281
March 11, 2019

```
 1     A P P E A R A N C E S:
 2   SPECIAL MASTER:
 3       TIFFANI G. LEE, ESQUIRE
         HOLLAND & KNIGHT, LLP
 4
 5   COUNSEL FOR THE PLAINTIFF CLASS:
 6       COLSON HICKS EIDSON
         BY:  PATRICK S. MONTOYA, ESQUIRE
 7           patrick@colson.com
         255 Alhambra Circle
 8       Penthouse
         Coral Gables, Florida 33134
 9       (305) 476-7400
10
11       LAW OFFICES OF RICHARD J. SERPE PC
         BY:  RICHARD J. SERPE, ESQUIRE
12           rserpe@serpefirm.com
         580 East Main Street
13       Suite 310
         Norfolk, Virginia 23510
14       (757) 233-0009
15
16       LEVIN SEDRAN & BERMAN
         BY:  SANDRA L. DUGGAN, ESQUIRE
17           sduggan@lfsblaw.com
         510 Walnut Street
18       Suite 500
         Philadelphia, Pennsylvania 19106
19       (215) 592-1500
20
21       IRPINO LAW FIRM
         BY:  PEARL A. ROBERTSON, ESQUIRE
22           probertson@irpinolaw.com
         2216 Magazine Street
23       New Orleans, Louisiana 70130
         (504) 525-1500
24
25
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 35 of 344
Case 1:11-cv-22408-MGC Document 25-11 Entered on FLSD Docket 04/29/2013 Page 4 of 281
March 11, 2019

```
 1      A P P E A R A N C E S :
 2          BARRIOS KINGSDORF & CASTEIX LLP
            BY:  EMMA SCHWAB, ESQUIRE
 3              eschwab@bkc-law.com
            701 Poydras Street
 4          Suite 3650
            New Orleans, Louisiana 70139-3650
 5          (504) 524-3300
 6
 7          LAW OFFICE OF ALLISON GRANT, P.A.
            BY:  ALLISON KAY GRANT, ESQUIRE
 8              agrant@allisongrantpa.com
            14 Southeast 14th Street
 9          Boca Raton, Florida 33432
            (561) 994-9646
10
11      COUNSEL FOR TAISHAN GYPSUM COMPANY:
12          ALSTON & BIRD LLP
            BY:  BERNARD TAYLOR, ESQUIRE
13              bernard.taylor@alston.com
                CHRISTY HULL EIKHOFF, ESQUIRE
14              christy.eikhoff@alston.com
            One Atlantic Center
15          1201 West Peachtree Street
            Atlanta, Georgia 30309-3424
16          (404) 881-7000
17
            ALSTON & BIRD LLP
18          BY:  DAVID VENDERBUSH, ESQUIRE
                david.venderbush@alston.com
19          90 Park Avenue
            15th Floor
20          New York, New York 10016
            (212) 210-9400
21
22          AKERMAN LLP
            BY:  ENJOLIQUE D. AYTCH, ESQUIRE
23              enjolique.aytch@akerman.com
            350 East Las Olas Boulevard
24          Suite 1600
            Fort Lauderdale, Florida 33301
25          (954) 463-2700
```

```
 1     A P P E A R A N C E S:
 2     COUNSEL FOR BNBM DEFENDANTS:
 3         ORRICK HERRINGTON & SUTCLIFFE LLP
           BY:  ANDREW K. DAVIDSON, ESQUIRE
 4              adavidson@orrick.com
           The Orrick Building
 5         405 Howard Street
           San Francisco, California 94105
 6         (415) 773-5700
 7
           ABALLI MILNE KALIL
 8         BY:  JOSHUA D. POYER, ESQUIRE
                jpoyer@aballi.com
 9         2250 SunTrust International Center
           One Southeast Third Avenue
10         Miami, Florida 33131
           (305) 373-6600
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/18/19 Page 37 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 6 of
281
March 11, 2019

```
 1                  PROCEEDINGS
 2          (March 11, 2019 at 9:45 a.m.)
 3          SPECIAL MASTER LEE:  Good
 4     morning, everyone.  This is Tiffani
 5     Lee, court-appointed special master in
 6     the case styled Amorin v. Taishan
 7     Gypsum, et al pending in the Southern
 8     District of Florida.
 9          We're here at the Miami office
10     of Holland & Knight for a hearing on
11     product identification issues that
12     will be related to the property damage
13     claims that I've been appointed to
14     adjudicate.
15          We'll first start with
16     appearances of the counsel.  For the
17     plaintiffs.
18          MR. MONTOYA:  Your Honor,
19     Patrick Montoya.
20          MR. SERPE:  Richard Serpe.
21          MS. DUGGAN:  Sandra Duggan from
22     Levin Sedran & Berman.
23          MS. GRANT:  Allison Grant.
24          MS. SCHWAB:  Emma Schwab.
25          MS. ROBERTSON:  Pearl
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/18/19 Page 38 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 7 of 281
March 11, 2019

```
 1          Robertson.
 2               MR. POYER:  Joshua Poyer for
 3          Beijing National Building Materials
 4          PLC.
 5               MR. DAVIDSON:  Andrew Davidson
 6          for BNBM PLC.
 7               MS. AYTCH:  Enjolique D. Aytch
 8          for Defendant Taishan.
 9               MR. TAYLOR:  Bernard Taylor for
10          Taishan.
11               MR. VENDERBUSH:  David
12          Venderbush for Taishan.
13               MS. EIKHOFF:  Christy Hull
14          Eikhoff for Taishan.
15               SPECIAL MASTER LEE:  Thank you
16          very much, and we'll turn it over to
17          plaintiff's counsel for presentation.
18               MR. MONTOYA:  Thank you.
19               Your Honor, thank you for
20          hosting us today.  I'm going to call
21          you Your Honor just because I'm much
22          more comfortable in that manner and I
23          won't trip over the phrasing
24          otherwise.
25               You were appointed with a very
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 39 of 344
Case 1:11-cv-22408-MGC Document 25 Entered on FLSD Docket 04/29/2019 Page 8 of
281

March 11, 2019

1       serious responsibility in this case.

2       We're here on behalf of 1700

3       plaintiffs that were affected in

4       Florida by Chinese drywall.

5               Your job, while a large one, is

6       also very limited in scope.  One of

7       the things we will talk about today I

8       think is, in many ways, the simplicity

9       of what you've been tasked with, but

10      the difficulties that the defendants

11      have made of this case and of the

12      information that's been available.  So

13      on behalf of those homeowners, I thank

14      you for your time today.

15              A little brief background on

16      Chinese drywall, and frankly, why we

17      are here.  Back in 2009 in this group

18      we filed among the first cases in the

19      Southern District of Florida were

20      Chinese drywall.  Basically, what

21      Chinese drywall does is it off-gases

22      sulfur.

23              There were mines in China that

24      had a layer of sulfur shale that ran

25      throughout the mines, was not cooked

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/18/19 Page 40 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2014 Page 9 of 281
Margaret Ferron, March 11, 2019

1    out of the drywall when the drywall
2    was made.  It got into people's homes
3    and it off-gases, and that off-gassing
4    basically affects what we call
5    anything with a button, anything that
6    has silver, metal or copper.
7         So all the electronics, silver
8    tarnishes, it oxidizes the silver, and
9    computers, anything with a chip or a
10   motherboard, TVs.  It also affects
11   copper plumbing, so wiring and
12   plumbing as well.
13        It affected the -- the only
14   remedy and the court-ordered remedy
15   and the court-ordered protocol is to
16   rip and tear a home down to its studs,
17   take all the drywall out, HEPA vacuum
18   it, wipe it down, replace all the
19   appliances, all the affected wiring,
20   all the affected plumbing.  That's the
21   remedy.
22        So if you think to myself, this
23   is my home, this is my -- for most
24   people it's their biggest investment
25   in Florida.  The Chinese drywall was

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 41 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/29/2013 Page 10 of 281
March 11, 2013

1    imported from '05 to '09.  That

2    coincided with the building boom that

3    was going on at that time and also the

4    hurricanes that were going on at the

5    time, and the shortage of drywall in

6    the U.S.

7         Typically, companies would not

8    import drywall because it wasn't

9    economical to do so.  Drywall is

10   heavy.  It costs a lot of money to

11   ship, so the U.S. gypsum market has

12   always been healthy and always been

13   able to satisfy demand.

14        But when the hurricanes

15   happened back in '05 to '09, the

16   building boom, the U.S. market simply

17   couldn't take on the demand.  So U.S.

18   distributors and others started

19   calling over to China to get drywall.

20   That's how the drywall problem started

21   was due to the building boom and to

22   the hurricanes.

23        You will hear some allusions in

24   this case and there was testimony from

25   the corporate heads of Taishan that

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 42 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2013 Page 11 of 281
March 11, 2013

```
 1        essentially U.S. consumers were stuck
 2        in a foreclosure crisis and now
 3        they're blaming Chinese drywall.
 4        Nothing could be further from the
 5        truth.
 6              The drywall has been found
 7        defective.  The Court's found it
 8        defective.  And we are here in a
 9        default proceeding, so we're not here
10        to argue about the defective nature of
11        the drywall, but we wanted to give
12        Your Honor a background of how it
13        impacts people's lives.
14              I mentioned the foreclosure
15        aspect of it because I do believe it
16        goes to the conduct and overall
17        demeanor of the defendants.
18              For the defendants to come in
19        and blame the U.S. consumer saying:
20        Well, they can't pay their mortgages,
21        they got in over their head and now
22        they want to blame defective drywall
23        is indicative of the stance that these
24        companies have taken in this
25        litigation and the litigation abuse
```

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 43 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2013 Page 12 of 281
March 11, 2013

```
1        that has gone on in this case.
2              At no time when I talk of the
3        litigation abuse or the -- we say
4        misrepresentations, I will say lies of
5        Taishan, I do not impute any of that
6        to lawyers in this room.  I think the
7        lawyers in the room are fine people.
8        I think they're doing the best job
9        they can with a very difficult and
10       very recalcitrant client.
11             We often go to hearings and
12       before or after a hearing you may
13       represent folks, I've represented
14       folks and I've had to tell people on
15       the other side, hey, you know what,
16       I'm having a hard time with my client.
17       We're going to fight on this issue,
18       but I really need an order to help
19       push my client towards what it needs
20       to do.
21             I have not had that
22       conversation with these folks in this
23       room on the other side of the table,
24       but I get the sense from what has
25       happened in this case, and I'm going
```

March 11, 2019

```
 1        to go through it, that they're dealing
 2        with a very difficult and recalcitrant
 3        client.
 4               So I don't want to have
 5        anything construed that I'm saying
 6        here as against the lawyers in this
 7        room.  I think what they're dealing
 8        with is a very, very difficult client.
 9               And as an example, Taishan sat
10        on the sidelines for a year in this
11        case before they came in.  They were
12        defaulted, served through The Hague
13        Convention properly, and on the eve of
14        the default, on the appeal, they came
15        in and they only came in to contest
16        jurisdiction.
17               So the MDL Court, Judge Fallon,
18        allowed them to contest jurisdiction,
19        and we did discovery on jurisdiction
20        for about a year and a half to two
21        years.
22               When it went up on appeal, we
23        prevailed on jurisdiction, the
24        plaintiffs prevailed on jurisdiction
25        in front of two panels at the Fifth
```

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 45 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/29/2015 Page 14 of 281
March 11, 2015

1    Circuit.  This was one of the

2    statements in Taishan's brief.

3         Over its entire history, TG,

4    Taishan Gypsum, made only two sales to

5    a U.S. company.  That's back in 2010.

6         And you'll see from the heading

7    of the slide, Taishan actually

8    manufactured and shipped 86 million

9    square feet of drywall to the U.S.

10   I'm laying this out because you will

11   see how the story changes and evolves.

12   So I want you to remember two

13   shipments -- or sales of drywall to a

14   U.S. company.

15        May 11th, 2009, this is about

16   three or four months after the first

17   lawsuit was actually filed.  Taishan

18   hasn't appeared in the cases at all,

19   but their own internal documents show

20   that by May 11th, 2009, they're

21   already categorizing and able to

22   organize and report to themselves, to

23   their parent company, how much drywall

24   they had shipped to the U.S.

25        Now, back on May 11th, 2009, we

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 46 of 344
Case 1:11-cv-22408-MGC Document 294 Entered on FLSD Docket 04/29/2019 Page 15 of
281
March 11, 2019

1    didn't have this document.  We didn't

2    have it in 2010.  We didn't have it in

3    '11, '12, '13, '14, or '15.  What we

4    found throughout this case is that we

5    get documents two, three, four, five

6    years later down the road after

7    they've been produced.

8         So why am I telling you all

9    this?  Because the fight on

10   jurisdiction was how much drywall did

11   they ship to Florida, how much drywall

12   did they ship to Louisiana,

13   North Carolina, Virginia.  And what we

14   found was a pattern of hiding

15   information and not being forthcoming

16   with information.

17        So this is by Taishan's own

18   admission in their own documents that

19   we didn't get until 2015.  This is at

20   Tab 6 in the binder: 446,000 meters of

21   drywall in 2005, 5.9 million square

22   meters, 240,000 square meters, 16,000

23   square meters.  Contrast that with

24   their statement to the Fifth Circuit

25   that they only made two sales to a

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 47 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 16 of 281
March 11, 2019

1    U.S. company.

2         October 20th, 2010, yet again

3    another document that we did not have

4    until 2015.  Six months after

5    litigation was filed against them and

6    they hadn't answered -- they knew that

7    they had been sued.  They had already

8    retained counsel.  They were already

9    talking to lawyers about what was

10   happening.

11        They were making their own

12   internal reports about what was there.

13   They already knew -- is there -- I

14   don't know if there's a pointer on

15   this.  Let me find one that has a

16   pointer.

17        So they still haven't responded

18   to the lawsuits at this point.

19   They're sitting on the sidelines, they

20   made a conscious decision to sit on

21   the sidelines, and you'll see their

22   internal documents will show that.

23        But by this point -- and this

24   starts to get to what we're really

25   here about today, which is the

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 48 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 17 of 281

March 11, 2019

1          markings and the labelings on the

2          drywall.

3               They were able to categorize

4          and knew that they printed Shandong

5          Taihe Dongxin, which is our name for

6          Taishan Gypsum in the factory -- on

7          the back of boards, 687,000 meters;

8          the same for Taian Taishan

9          Plasterboard, what we call TTP,

10         117,000 square meters; Taishan brand

11         edge sealing tape, 965,000 meters.

12              And another important category,

13         number 4, white, letter-free edge

14         sealing tape and no sprayed code

15         neutral packaging.  In other words, no

16         identifying marks on the board

17         whatsoever, almost a million square

18         meters.

19              And then 3.5 million square

20         meters that was custom ordered from

21         U.S. customers, where they should have

22         documents of what they sent out.

23              Again, they told the Fifth

24         Circuit two shipments, and here they

25         are in 2010, before they're even in

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 49 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 18 of 281

March 11, 2019

1    the litigation, already knowing what
2    they did, how they did it, who they
3    shipped to and how it was marked or
4    not marked.
5         And probably the most
6    remarkable category, at least to me,
7    in the litigation is number 6.  Over
8    a million square meters, the labeling
9    is unknown.
10        So here I am as the plaintiff
11   with the burden of proof, and I've got
12   a defendant who hides information for
13   four to five years or more -- and
14   we'll get into this later -- up and to
15   the eve of the depositions in January
16   is producing documents and producing
17   labeling on documents and producing
18   photos of drywall that they magically
19   found in their factory after ten years
20   of litigation.
21        When in October of 2010 they
22   apparently had the wherewithal to know
23   what was being shipped, where it was
24   being shipped and how much was being
25   shipped.

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 50 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2015 Page 19 of
281
March 11, 2015

```
 1              And they don't want to take

 2       responsibility for unmarked board, and

 3       they've got a million square meters.

 4       The labeling on the remaining drywall

 5       of 1 million square meters is unknown.

 6       And this isn't Patrick talking.  This

 7       is in their own documents at Tab 27.

 8              Again, we didn't have these

 9       documents until 2015.  I think it came

10       from the -- and my team will correct

11       me if I'm wrong -- from the magically

12       found computer.  So there was an

13       employee in the plant named Peng

14       Wenlong.  You'll hear this name.

15              Mr. Pong or Mr. Peng, depending

16       on the pronunciation, testified that

17       he was in the foreign sales department

18       at Taishan, but that was back in, I

19       think, his second deposition.

20              In his first deposition he just

21       said that he was responsible for

22       watering flowers and being the

23       gardener, but then later on it evolved

24       that he was in foreign sales.

25              Well, later on it evolved, when
```

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 51 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2015 Page 20 of
281
March 11, 2015

1      he got fired, the computer that he had

2      that had close to 300,000 documents on

3      it that were relevant to this case

4      were on his computer.

5           So after the jurisdictional

6      discovery in 2010 and then the rulings

7      in '11 and '12, we were finally able

8      to get ahold of his computer in 2015.

9           That's all detailed in the

10     brief, but that goes, again, to the

11     pattern -- and I'm trying to be

12     delicate -- of lies in this case.

13          June 2010, again, they still

14     have not appeared in the litigation at

15     this point.  This is their own

16     internal documents.  They prepared a

17     statistical spreadsheet and analysis

18     for their parent entity for the

19     purpose of concluding the lawsuit.

20          What had -- what were they able

21     to tell from their own internal

22     documents about what they created?

23     They had a two-page statement of the

24     data and statistics of exports to the

25     U.S. from 2005 to 2007, a three-page

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 52 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2015 Page 21 of 281
March 11, 2015

1    spreadsheet from U.S. buyers -- so

2    they knew they were selling to the

3    U.S., even though they told the Fifth

4    Circuit they only made two shipments

5    there -- and then a 28-page

6    spreadsheet of product labeling.

7    That's at Tab 10 of this e-mail chain.

8           Why do we go through this here?

9    Why are we telling you about this?

10          So this is one of those

11   spreadsheets.  This was the detail

12   that they had back in 2010.  They were

13   able to track date, invoice number,

14   manufacturer, exporter, who the U.S.

15   customer was -- and remember, we don't

16   sell board to the U.S., we don't know

17   anything about the U.S. -- who issued

18   the invoice, where the drywall came

19   from, the size of it, how much they

20   produced, how it was delivered, where

21   it was going, how much it was worth,

22   how it was exported, what the product

23   label said.

24          We're here about, in part

25   today, about product labeling.  They

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 53 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/28/2015 Page 22 of 281
March 11, 2019

1    were able to track the labeling.

2    Absolutely they were doing it.  They

3    were able to do it at the time.  This

4    was 2010.  They produced the drywall

5    in '05, '06, '7, '8 and '9.  Yet in

6    2010 they could tell you what they

7    had.

8         What you'll find out later as

9    we continue to go on is, well, certain

10   sales invoices and certain sales

11   notifications get produced on the eve

12   of deposition 10 years later that they

13   magically find in the factory.

14        The bottom line is their

15   discovery practices, their hiding of

16   documents -- Taishan's hiding of

17   documents, not counsel -- is used both

18   as a sword and a shield in this

19   litigation.  So when there's something

20   they don't like, they don't have it.

21   When they find something that's

22   beneficial to them, all of a sudden

23   they have it.

24        And then what they want to do

25   is flip the burden and say:  When we

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 54 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2015 Page 23 of
281
March 11, 2015

1        make unlabeled drywall that is unknown

2        to us, well, plaintiffs' got the

3        burden.  No, it can't be that way.

4        And that's what we briefed and put in

5        our papers to you is that burden of

6        proof needs to be shifted.

7                We made a prima facie case.

8        We've passed muster.  We have the

9        markings that they either admit or

10       deny that we all agree are at issue in

11       litigation.  The burden should shift

12       to them because of what they've done

13       and what they've hidden in this case.

14               What I wanted to get to was the

15       amount of detail that they were able

16       to provide to themselves for their

17       parent company.  And this is part of

18       the 28-page spreadsheet.  All this is

19       in the briefing in your documents.

20               So what do we know now?

21       86 million square feet of drywall have

22       been imported from '05 to '08.  They

23       knowingly exported to the United

24       States and targeted Florida in

25       particular.  They had exclusive

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 55 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 24 of 281
March 11, 2019

1    distributorship agreements with a

2    customer in Florida.

3            But what did they say?  Why did

4    this all happen this way?  This was a

5    very early litigation strategy, and

6    it's at Tab 6 in your binder.  This is

7    probably, to me at least, probably the

8    most important document in the case as

9    we sit here today.

10           So if you don't know, and we

11   didn't go into it enough in our

12   briefing, Taishan was held in both

13   civil and criminal contempt by

14   Judge Fallon in the MDL back in 2015.

15   And part of that process was there was

16   the discovery of attorney-client

17   privileged documents and a lot of

18   Taishan's own internal documents.

19           And what we later found out

20   is -- and it's in the packet -- is

21   Taishan took the very early stance

22   that responding to lawsuits would be

23   too expensive.  They knew that their

24   assets were located in China and they

25   basically said, even if they lost,

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 56 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2015 Page 25 of 281
March 11, 2015

1    they can't get us.  They thumbed their

2    nose at us because there's no treaty.

3    They figure you can't collect, so why

4    do we have to respond at all?  And

5    that's the stance they took throughout

6    this.

7        This is the document I'm

8    talking about.  This is Tab 6.  This

9    is the translation from their own

10   internal documents, and they say:

11   Summarizing the reasons above,

12   Taishan Company is inclined not to

13   respond to the lawsuit, but when

14   necessary, it will adopt methods such

15   as mailing the evidence that is

16   beneficial to Taishan Company to the

17   U.S. court and having the government

18   departments interfere, so as to

19   eliminate and reduce some negative

20   impact.

21       The key term there is

22   "beneficial," and you'll see that

23   throughout.  When it benefits them,

24   when it benefits Taishan to produce

25   the documents, like when they found

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 57 of 344
Case 1:11-cv-22408-MGC Document 294 Entered on FLSD Docket 04/29/2015 Page 26 of 281
March 11, 2015

```
 1          the magic residual boards that were

 2          left over in their factories in

 3          December of 2018 and then gave us the

 4          photos in January of 2019, just before

 5          the depositions a month or two ago, it

 6          benefits them because they want to be

 7          able to say, well, here's proof

 8          positive that these are the boards we

 9          made and these are the markings.  All

10          the other stuff, well, you know, I

11          don't know if we have documents of

12          that.  We don't have the documents of

13          that.  But we do have these, so we get

14          the benefit from that.  That's the

15          sword and the shield that I'm speaking

16          of.

17               Also in that same document:

18          After analysis, Taishan Company

19          believes that this lawsuit is

20          relatively complicated, and it plans

21          not to respond.

22               This is back in 2010, after the

23          lawsuits were filed, before they

24          responded.  It's a conscious

25          litigation strategy not to respond, to
```

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 58 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2015 Page 27 of
281
March 11, 2019

1       continue to delay and to create

2       problems for these plaintiffs.

3               We already went through these

4       statements here, but this is their

5       words:  No treaty, they can't get us.

6               So they came in in 2010 only to

7       contest jurisdiction.  They denied any

8       knowledge in 2010 of exporting the

9       drywall to the U.S.

10              Well, I just spent the last ten

11      minutes, frankly, belaboring the

12      points that they knew what they

13      produced back in 2010.

14              They lied to the Fifth Circuit

15      and they have in their own internal

16      documents the volumes and volumes and

17      volumes of drywall.  So this is a

18      conscious strategy.

19              The last bullet point:

20      Taishan's witnesses were deemed not

21      credible, necessitating a second round

22      of depositions overseen by

23      Judge Fallon in Hong Kong.

24              First time I've ever heard of

25      it, I was involved in it, but we took

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 59 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2015 Page 28 of
281
March 11, 2015

1    the first round of jurisdictional

2    depositions in Hong Kong of Taishan.

3    We agreed to go out to Hong Kong to

4    conduct the depositions there, and we

5    set aside a week to do it.

6         Present counsel was not

7    involved in the case at that time.  It

8    was four days of lawyer hell and

9    torture, I will tell you that.  And

10   I'm not -- I'm not prone to hyperbole,

11   but here I will tell you the truth.

12   There was a lineup across the table

13   about like we are here in this room

14   with the party chairman, with a

15   translator from Taishan, with a

16   lawyer, two lawyers and a check

17   interpreter that they brought.

18        Within minutes, the

19   interpreters starting fighting with

20   each other, but what was most

21   remarkable to me was as the witness

22   was answering questions, was looking

23   down the row at the table at the party

24   boss to make sure that he could answer

25   the questions correctly.

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 60 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 29 of
281
March 11, 2019

```
 1              So again, I don't blame the
 2         lawyers for what's happening in this
 3         case, but the short version is those
 4         depositions were so chaotic and so
 5         bad, I moved for sanctions in a case
 6         for the first time in my life, and I
 7         stood in front of Judge Fallon and
 8         moved for sanctions.
 9              And he took a look at the
10         transcripts and his quote in his order
11         was "these depositions turned into
12         chaos and dark night."  That was his
13         quote.
14              He said:  You know what, we're
15         going to do these over again.  I'm
16         going to fly out there myself.  I'm
17         going to go with the parties.  We're
18         getting a State Department
19         interpreter.  We're going to do this
20         the right way.
21              So what took a week and was
22         absolute madness ended up taking three
23         days with Judge Fallon coming out.
24         But he had to sit in and officiate and
25         try and get this right.  Those
```

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 61 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2015 Page 30 of
281
March 11, 2015

1      depositions led to him finding

2      jurisdiction and then eventually the

3      appeals that went up to the Fifth

4      Circuit.

5            What we haven't touched on yet

6      is once they lost the jurisdictional

7      battle, that's when they left the

8      litigation, fired their lawyers, and

9      that's when they were found in

10     criminal and civil contempt.  So

11     that's the timeline of what's going

12     on.  Constant running, cat and mouse,

13     hiding.

14           So again, misrepresentations,

15     that's a polite word.  In 2011, this

16     is the chairman, Chairman Jia of

17     Taishan.  He says:  TG produced the

18     plasterboard.  They are very heavy.

19     So we don't have plan to sell it to

20     foreign countries.

21           But we know they did.  We know

22     by their own internal documents they

23     did, and he knew in 2011 when he

24     testified that they did.

25           Mr. Peng, who I alluded to

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 62 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 31 of
281
March 11, 2019

1    before, the guy who had the missing

2    computer that went hidden for five

3    years, he says:  There is no exports

4    for us to the United States.

5             That's sworn testimony.

6             2015, Mr. Che, who you'll hear

7    a lot about as the day goes on, was

8    the -- I think was deposed three times

9    in this case, the most recent time in

10   Atlanta in January, and he's the

11   corporate representative at this time

12   because Mr. Peng has apparently been

13   fired and is no longer with the

14   company.

15             Mr. Che said:  Because I cannot

16   confirm where the gypsum boards that

17   were shipped to the United States, I

18   was unable to prepare for that.  So he

19   wasn't ready to testify about that in

20   2015.

21             Let's see what they say now.

22   Same guy, Mr. Che, in 2019:  In

23   preparation for the deposition, I did

24   read in detail what Mr. Peng (Wenlong)

25   had created regarding the detailed

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 63 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2013 Page 32 of
281
March 11, 2019

1       American-sized gypsum board.

2               So what is he referring to

3       here?  There was a spreadsheet that

4       was prepared by Peng Wenlong; that was

5       that 28-page spreadsheet that I

6       referred to before.

7               So by 2019, Mr. Che thought it

8       was due time to go ahead and review

9       that, nine years after the fact, and

10      now understands that there was

11      American-sized gypsum board.  Because

12      we know China operates on the metric

13      system and we've got -- what's it

14      called, the English system or whatever

15      it is that we do with feet.

16              They made custom board that

17      said 4X12X1/2 inch.  They knew when

18      they were shipping it out in '05, '06,

19      '07, '08, '09, it was going to the

20      U.S., because those markings make no

21      sense in China.  But they would not

22      admit to it.  It didn't matter how

23      many times you asked them or how you

24      asked them, they don't know where it

25      went; they just produced the board.

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 64 of 344
Case 1:11-cv-22408-MGC Document 294 Entered on FLSD Docket 04/29/2019 Page 33 of 281
March 11, 2019

```
 1           Well, we all know it was going to the

 2      U.S.

 3               So they started to change their

 4      tune a little bit.  The question was

 5      asked:  Why use the term

 6      American-sized drywall?  Because

 7      frankly, they had never used it in the

 8      litigation up until this point.

 9               He says:  I used

10      "American-sized gypsum board" because

11      the gypsum board of this kind of size

12      is generally used in America and other

13      countries generally do not use this

14      size of gypsum board.

15               So they knew all along, but it

16      took us ten years to get to that

17      point.

18               I'll talk a little bit about

19      the markings.  These markings -- and

20      you'll see in the next two slides,

21      these come from the court-created --

22      the MDL court-created Chinese drywall

23      markings catalog.  This is what they

24      would admit to in 2011, the ones that

25      had the Taishan or Taihe brand on
```

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 65 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/29/2015 Page 34 of 281
March 11, 2015

1    them.  So you'll become familiar very

2    quickly with these labels and what the

3    logos look like.  But at this point in

4    2011, this was all that they would

5    admit to as to their markings.

6         They would also admit in 2011

7    that they had drywall markings on the

8    back of the boards, they had produced

9    drywall with markings on the back of

10   the board that had these phrases;

11   DRYWALL 4feetX12feetX1/2inch, all

12   capital letters, MADE IN CHINA MEET OR

13   EXCEED ASTM, and then the standard,

14   and then the VENTURE SUPPLY.

15        Well, why do I bring this up

16   about what they're admitting?  They

17   admit they put those words on the back

18   of the board when they looked at those

19   photographs in the catalog that we

20   just looked at.  So if it's got this

21   edge tape that goes along the drywall

22   border, they'll admit to that.  And

23   they know they put these markings on

24   the back, but unless they've got the

25   tape and the markings on the same

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 66 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 35 of 281
March 11, 2019

1       photo, they don't admit to it.

2           So basically what they said is

3       we know we made this board with this

4       type of marking, but there's

5       insufficient evidence to conclude that

6       the drywall depicted in this image was

7       sold by TTP, Taian Taishan

8       Plasterboard; among other reasons,

9       other manufacturers might have

10      produced drywall with these markings.

11          So on one hand, they'll say,

12      yeah, we knew we put it out there, we

13      had it, but it could have come from

14      somebody else.  We have yet to see who

15      that somebody else is.

16          So we talk about burden of

17      proof, plaintiffs got the burden of

18      proof.  Well, this is their defense.

19      Now, they really don't have any

20      affirmative defenses because they've

21      been defaulted.  But if this is their

22      defense, they then have the burden of

23      proof.

24          So who are the others?  You'll

25      hear a little bit about counterfeiting

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 67 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/28/2019 Page 36 of 281
March 11, 2019

1    and how they were very careful in the

2    market to watch out for counterfeiting

3    because their product is so good, but

4    all we've heard is innuendo.  We've

5    seen nothing about other Chinese

6    manufacturers making boards with these

7    markings.

8           These are the same markings in

9    2011.  They will admit to -- and this

10   is an example.  They'll admit to these

11   words, the meets or exceeds -- MEET OR

12   EXCEEDS ASTM.  They know they printed

13   drywall with those words, but they

14   won't admit to those specific photos,

15   whether it be because of the font or

16   some other reason, you'll hear more

17   about that, but that's really what's

18   in front of you today and for the next

19   few days.

20          Same thing with this marking,

21   Drywall 4feetX12feetX1/2inch, they'll

22   contend that there's insufficient

23   evidence.

24          So where are they today?  That

25   was back in 2011.  This is where they

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 68 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 37 of 281
March 11, 2019

```
 1         are today.  They say that they do not
 2         deny Taian Taishan or Taihe tape, so
 3         this is the edge tape I've been
 4         talking a little bit about.  So the
 5         edge tape and the manufacturing
 6         process is done to protect the board,
 7         and what the testimony has borne out
 8         in this case is that when installers
 9         put the board in in a home, generally
10         what they do is they rip the tape off
11         and then they install it.  But that's
12         what the drywall tape is.
13              So from a proof standpoint,
14         frankly, there's going to be some
15         issues because you're not always going
16         to have drywall end tape just by
17         nature of how the drywall is
18         installed.
19              But they will admit to this
20         tape, they will admit to stuff only
21         with their name on it, but they won't
22         admit to anything else.
23              Venture Supply, you'll hear a
24         little more about.  Not so much an
25         issue in Florida, but that was a
```

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 69 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 38 of 281

March 11, 2019

1    specific run of drywall that Taishan

2    did for a company in Virginia named

3    Venture Supply, and they painted it on

4    the back.

5             And why do I go through these

6    slides, for example, Venture Supply

7    and the ones with edge tape?  Because

8    you'll find throughout our

9    presentation, whether it be the font

10   or the labeling or the phrasing, there

11   are other what we called buckets of

12   drywall.  There's eight other -- eight

13   total categories of drywall where

14   you're going to see similar font and

15   similar wording.

16            So what I'm getting at is

17   they'll admit to this, they'll admit

18   to this phrasing, they'll admit to the

19   font in this section, but when you see

20   another piece of drywall with the same

21   font but not the same edge tape,

22   they'll say, oh, must be somebody

23   else's.  Well, it's the same font.  It

24   came from the same printer, it came

25   from the same factory.  So that's the

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 70 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2013 Page 39 of
281
March 11, 2019

```
 1            game that they're going to be playing.
 2                 We'll talk about the markings
 3            for a moment.  We found out at the
 4            depositions in January that the
 5            drywall labeling machines that they
 6            have, my colleague, Mr. Serpe is going
 7            to address this in much more detail.
 8            They had four different machines for
 9            labeling drywall.
10                 They have no records of what
11            font was used, whether it came out
12            with little dots or if it came out
13            with straight lines.  They have none
14            of that because -- and the testimony,
15            at least, was any notes of that were
16            thrown away.
17                 There were four different
18            machines.  They don't know what font
19            was there.  They don't have any
20            records of what was actually written
21            on the back from those machine
22            operators.  There's no protocol for
23            what the machine operators were
24            supposed to do.  It's one big guess at
25            this point, but they know they had
```

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 71 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2013 Page 40 of 281
March 11, 2019

```
1            four different machines.

2                 So what they're doing, again,

3        these unknowns, they want to push back

4        on us from a burden of proof

5        standpoint when they had the

6        information at one time, they had the

7        information at the time of production,

8        but they didn't keep it.

9                 So they want to take their lack

10       of recordkeeping and foist that burden

11       upon the plaintiff to be able to prove

12       it.  And that's why I'm going through

13       those categories.  It will become more

14       relevant later.

15                Same thing here, the markings.

16       There's going to be a lot of

17       discussion about a capital Y in the

18       middle of "DrYwall" and whether it's

19       their drywall or not and how it looks

20       like others.  These are their denials.

21                So they'll admit some that say

22       "DrYwall" with a capital Y, others, if

23       there's no capital Y they're going to

24       deny that.  But what we all know is

25       they say -- have the dimensions.
```

March 11, 2013

```
 1           So in terms of how we're
 2      splitting this up, Mr. Serpe is going
 3      to finish up when I sit down, and then
 4      I think they will open, and then we'll
 5      get into the specific categories of
 6      documents.
 7           I also -- one point I'm
 8      missing, I skipped over that.  So
 9      there was a Manufacturer Profile Form
10      that was produced in this litigation.
11      Just like in any mass tort, you'll
12      have court-ordered discovery.  There
13      was a profile form that was created
14      that they had to fill out.  There's a
15      Distributor Profile Form as well.  So
16      all the defendants had to fill in
17      these profile forms.
18           On the Manufacturer Profile
19      Form, they did a listing of the
20      drywall that was created and the
21      markings that were on it.  But what
22      you find in the Manufacturer Profile
23      Form is they will admit to marking
24      drywall with 4feetX12feetX1/2inch, but
25      what they didn't detail on the
```

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 73 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2013 Page 42 of 281

March 11, 2013

1    Manufacturer Profile Form was whether

2    it was in uppercase and lowercase

3    letters or whether it was in all

4    capital letters.

5         So Mr. Che, who was the

6    corporate representative testifying

7    this past January, had to admit that,

8    well, Mr. Peng's spreadsheet that he

9    made that was really part of the

10   Manufacturer Profile Form, it doesn't

11   go into great detail about what the

12   markings are.

13        We know it says Drywall

14   4feetX12feetX1/2, but they can't tell

15   us one way or the other whether it's

16   all capital letters or a mix of both.

17   Again, and you'll see what his

18   testimony was:  Well, maybe Mr. Peng

19   wasn't that careful in creating it.

20        Well, what has that done to us

21   ten years later?  It's left us as the

22   plaintiffs trying to figure out what

23   is what with this drywall when that is

24   their own records.  They admit to this

25   phrasing.  They just won't admit to

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 74 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2013 Page 43 of 281
March 11, 2013

```
 1      the font, they won't admit to the
 2      capital letters, they won't admit to
 3      singulars or plurals.  That's what
 4      you're going to be seeing with the
 5      product ID binders.
 6              This is a direct quote from
 7      Judge Fallon:  The Court is
 8      disheartened that delay tactics have
 9      permeated every aspect of the
10      defendant's litigation strategy; from
11      their initial failure to appear to
12      their now perpetual motion to
13      relitigate settled matters.
14              We see that same delay tactic
15      from jurisdiction to document
16      discovery to document production and
17      to late-produced suddenly found
18      information on the eves of
19      depositions.
20              So what do we know?
21      9.4 million square feet of drywall
22      directly to Florida, part of the
23      86 million.
24              At this point, Taishan only
25      admits the manufacture of 1.4 million
```

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 75 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2013 Page 44 of 281
March 11, 2013

```
1         square feet of drywall in Florida
2         plaintiffs' homes.  How does that come
3         about?
4              So a few weeks ago the parties
5         exchanged claimant-specific objections
6         or denials on homes, and whether or
7         not Taishan believed that the drywall
8         in a particular home based on the
9         photos was theirs or not.
10             So of the 1,700 claims that we
11        went through on the individual sheets,
12        they only admitted to about
13        1.4 million square sheet of drywall,
14        when their own records show they
15        shipped 9.4 million square feet of
16        drywall to Florida.
17             So overall, they know they've
18        got almost 9? million square feet of
19        drywall in Florida, yet when we look
20        at the individual contests, they'll
21        only admit to about a million and a
22        half square feet, which amounts to
23        about 15% of their total shipments
24        here.
25             So there's obviously a lot more
```

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 76 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2013 Page 45 of 281
March 11, 2019

1    drywall that made it to Florida from

2    Taishan that is either not being --

3    that is not being admitted to by them.

4         Those denials are inconsistent

5    with the product ID admissions from

6    Taishan and to the evidence that

7    plaintiffs have.

8         So we had to go back -- and

9    this was in 2012 this was filed.  This

10   was during the jurisdictional

11   discovery -- and try to figure out how

12   much drywall they actually shipped

13   here.

14        And the people in this room

15   along here to the left side of you, we

16   took everything that we had from

17   different distributors in the U.S.

18   because we weren't getting that

19   information from Taishan, and we

20   compiled this spreadsheet based off of

21   invoices and shipping documents, and

22   what we came up with was 87 million

23   total square feet of drywall and

24   9.3 million square feet, so very close

25   to what the numbers actually ended up

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 77 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2013 Page 46 of
281
March 11, 2013

 1     being.
 2          The point of the matter is,
 3     though, we had to figure that out for
 4     ourselves when Taishan had that
 5     information the whole time.  And that
 6     was the information that I showed you
 7     very early on in the presentation.
 8     Back in 2010, before they came into
 9     the lawsuit, they had already figured
10     out how much drywall they manufactured
11     and how it was labeled or wasn't
12     labeled.
13          This is an overall view of the
14     1,700 cases, where they're located in
15     Florida.  There's 1,707 total claims
16     representing 1,581 properties.
17          The reason there's less
18     properties than claims are
19     condominiums.  So if you've got a
20     condominium with 30 units or 40 units
21     of drywall, we counted it as one
22     property.  But this is what it looks
23     like geographically.
24          And not surprisingly, it
25     follows along the major building

Case 2:09-md-02047-EEF-MBN   Document 22363-39   Filed 11/19/19   Page 78 of 344
Case 1:11-cv-22408-MGC   Document 29   Entered on FLSD Docket 04/29/2013   Page 47 of 281
March 11, 2013

1          points when the building boom was

2          going on in '05 to '08.

3                  So as broad as this case is,

4          your task is product ID, which we're

5          here about today, ownership

6          verification, whether the plaintiff

7          owned or didn't own the home, and what

8          the square footage is.

9                  Frankly, I think that the

10         square footage issues will probably be

11         pretty easy to solve between the

12         parties.  I think for the most part

13         the ownership verification will

14         probably be along the same lines.

15                 The product ID is really where

16         the rubber meets the road.  These are

17         the calls that you have to make and

18         that are so important to these

19         plaintiffs.

20                 This is the general, what we

21         call buckets.  Again, we're going to

22         probably use the term "buckets"

23         throughout the day, the different

24         categories of drywall.  There are

25         eight of them at issue today; C&K has

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 79 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2013 Page 48 of
281
March 11, 2013

```
 1        50; IMT, 66; ProWall, 96; Taian
 2        Taishan or Taihe Tape, 107; with the
 3        markings MADE IN CHINA MEETS OR
 4        EXCEEDS, 266; the various drywall
 5        dimension boards, 960; Venture Supply
 6        has 5 in Florida; and then the
 7        unmarked board with the white edge
 8        tape, 80 Florida properties.
 9             So, Your Honor, you can see
10        that the bulk of the claims are the
11        dimensional and the MADE IN CHINA.
12        Those really make up the bulk of the
13        claims, and then lesser down the line.
14        And these are the order we'll take
15        them in once we start doing the
16        product-specific categories.
17             We talked a little bit about
18        edge tape.  I just wanted to -- I
19        wanted to familiarize Your Honor with
20        that term.  I'm going to ask you to
21        put a pin in edge tape, I'm going to
22        get to it in a minute, because I've
23        got some slides that better address
24        what edge tape is.  I kind of already
25        did.  I told you it's the bottom
```

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 80 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 49 of 281
March 11, 2019

```
 1          protective tape that typically gets

 2          peeled off during installation.

 3                   I've talked to you about these

 4          magic boards that showed up in their

 5          factory in December of 2018 when

 6          opposing counsel went out to

 7          prepare -- to China to prepare their

 8          clients for deposition and they were

 9          advised that there was three pallets

10          of drywall, one in an office area, I

11          believe, and one in a factory.  I may

12          be wrong on exactly where they are,

13          but I know they were in two different

14          spots in China with three different

15          sets of markings.  We call them

16          residual boards.

17                   The point is this:  We're ten

18          years down the line after the

19          lawsuit's been filed in 2009.  It's

20          December, it's the eve of the

21          depositions, and now all of a sudden

22          Taishan is finding drywall in their

23          own factory.

24                   And this isn't one board; this

25          is 400-something boards.  And you've
```

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 81 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2013 Page 50 of
281
March 11, 2019

1     seen drywall before, it's

2     4feetX12feetX1/2inch.  It's not

3     something that you move around easily

4     or it gets lost.  They come in huge

5     pallets, and they would, you know,

6     take up the corner of this room

7     without a problem when they're stacked

8     up 40 or 50 high.  It's not something

9     that you lose.  It's not like losing

10    your cell phone.

11         This is 400 and something

12    sheets of drywall that could have been

13    found, that could have been made

14    available to us that weren't.  So it

15    begs the question:  What else is

16    there?  What else is out there at this

17    point, ten years later, that we don't

18    know about?

19         And our situation is this:  We

20    are now at this point ten years after

21    litigation.  The truth of the matter

22    is we could discover this case for

23    another five years.  Our folks have

24    been out of these homes since '5, '6,

25    '7, '8.  The time is now.  We have to

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 82 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 51 of 281
March 11, 2019

1    do it.  We are forced to do it,

2    because this litigation has to come to

3    an end for these plaintiffs.  They

4    need an answer one way or the other.

5         But for us to be forced, for

6    the plaintiffs to be forced into the

7    situation where we're getting stuff on

8    the eve of depositions ten years

9    later, that's where I ask you as the

10    finder of fact, as the trier of fact,

11    to shift the burden.

12         We've made a prima facie case.

13    They need to put up their defenses,

14    just based on their conduct alone.

15    That's the residual boards.

16         The Manufacturer Profile Form I

17    alluded to a little bit earlier.  That

18    was a court-ordered form.  We're

19    calling product ID, we're referring to

20    as PID.  The Taishan product ID

21    catalog was filed in the MDL at 155-2.

22    It's also in your materials.

23         And you'll see Taishan Gypsum

24    referred to as TG sometimes.  Taian

25    Taishan Plasterboard as TTP.  I refer

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 83 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2013 Page 52 of 281
March 11, 2019

1    to both the companies overall as

2    Taishan.  Just makes it a lot easier.

3         Here's the scoreboard of what

4    you're having to deal with.

5         Taishan has denied they

6    produced C&K Gypsum, IMT is denied,

7    ProWall is denied.  Taian Taishan is

8    admitted to, MADE IN CHINA MEETS OR

9    EXCEEDS, whether it's singular or

10   plural, part of them are admitted to,

11   part are denied.

12        The dimensions, same thing,

13   admitted -- partially admitted,

14   partially denied.  Venture Supply is

15   admitted.  The unmarked boards with

16   the white edge tape are denied.

17        The point of this slide is here

18   you see the edge tape with the

19   color -- or the markings, and there --

20   so we know this is their board.  And

21   here you see the font and the typing,

22   the MADE IN CHINA.

23        What we found throughout our

24   analysis is that you will see this

25   same font and the same typing on other

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 84 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 53 of
281
March 11, 2019

1      buckets of drywall that they won't

2      admit to, but unless it has their

3      tape, they won't admit to it.

4              So basically what they're

5      saying is if it's just this alone, I'm

6      not going to admit to it.  It's got to

7      have the tape for me to be able to

8      admit to it.  Well, it can't be.  You

9      produced it with this label, with this

10     font from whatever machines that you

11     no longer have and don't have the

12     labels to, and now you want to take

13     the position that that's not your

14     board when we know it's your board,

15     but you only admit to it when the tape

16     is on there.

17             It's that type of hiding, it's

18     that type of delay tactics, and

19     frankly, that lack of candor about

20     their own board that lead us to being

21     here today.

22             These are more examples of what

23     they've admitted to with their edge

24     tape, what it looks like.

25             And I'd ask you to put a pin on

March 11, 2015

1       edge tape in terms of what it is in

2       describing it.  I just pulled this

3       piece of the testimony because I told

4       you there was record evidence that the

5       edge tape gets pulled off during

6       construction.

7               Taishan's corporate

8       representative understands that.  It's

9       the normal practice to remove the edge

10      sealing tape before the drywall is

11      installed, and in reality, this is

12      what it looks like on a construction

13      site.

14              So workers get the -- the

15      drywall installers go to put it in,

16      they rip off the edge tape.  So a lot

17      of times you just simply won't have

18      the edge tape when we're trying to

19      identify what's in a home or what's

20      not.

21              Before I turn the program over

22      to my colleague, Mr. Serpe, I think

23      there's one passage or one quote from

24      Judge Fallon that probably sums up

25      everything that I'm trying to talk to

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 86 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/29/2013 Page 55 of
281
March 11, 2013

1          you about today.  It at page 10 of our

2          brief.

3                    Judge Fallon, this was last

4          August:  The whole approach is just

5          delay, delay because people die, delay

6          because people lose their homes, delay

7          because they're frustrated and giving

8          up.

9                    And as a litigation strategy,

10          and it's kind of one of the elephants

11          in the room, maybe not the elephant in

12          this room, but in the litigation

13          overall.

14                    Part of the litigation strategy

15          is to make people walk away, have

16          people sell their homes, have people

17          give up on their homes, because when

18          people were faced with this problem,

19          they had the choice of keeping their

20          families in a toxic home that affected

21          their health, or moving out.

22                    Moving out -- can't pay two

23          mortgages.  Biggest asset.  I've got

24          to get rid of my home.

25                    Well, depending on how you see

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 87 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2013 Page 56 of 281
March 11, 2013

1      damages in the state of Florida and

2      damage law, you've got to mitigate,

3      right?  We all know you've got to

4      mitigate.  That benefits their client.

5      The longer they drag this out, the

6      less they've got to deal with it.

7              That's not right.  We know

8      that's not right, and we know it's not

9      right because in 2010 when we see

10     those documents they produced and they

11     created, that was their tactic.  They

12     said they would delay it.  They're not

13     going to respond to the lawsuits.

14             So we're asking you to shift

15     the burden of proof.  We know you take

16     this task extremely seriously for

17     these plaintiffs that are before you.

18             But I think as you hear our

19     presentations, I think it's very

20     important for you to consider the

21     equities in the situation.  As the

22     trier of fact, you have the ability to

23     determine credibility, to make

24     inferences, direct evidence,

25     circumstantial evidence, and in many

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 88 of 344
Case 1:11-cv-22408-MGC Document 294 Entered on FLSD Docket 04/29/2013 Page 57 of 281
March 11, 2013

1          cases the circumstantial evidence may

2          be much stronger than the direct

3          evidence.

4               So I ask you to keep those

5          concepts and thoughts in mind as I

6          turn the clicker over to Mr. Serpe.

7               SPECIAL MASTER LEE:  Before you

8          do, and if you're going to get to it,

9          it may be a trivial matter, but what

10         were the markings on the residual

11         boards that were discovered?

12              MR. MONTOYA:  We have photos of

13         those.

14              MR. SERPE:  I'm going to cover

15         that.

16              SPECIAL MASTER LEE:  Okay.

17              MR. MONTOYA:  Thank you.

18         Special Master, let me ask two favors.

19              Would it be all right if I sat

20         here during the presentation?

21              SPECIAL MASTER LEE:  Sure.

22              MR. SERPE:  And second, I beg

23         your indulgence.  I'm going to jump

24         around a little bit with the order of

25         the slides.  Can I get you to go back

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 89 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 58 of 281
March 11, 2019

1    to 25 just for a minute.

2         Patrick emphasized the point,

3    which is critical to us, that with the

4    documentation of exports to Florida

5    where 9.4 million square feet of

6    Taishan drywall clearly came into

7    Florida, you're talking about a degree

8    of record where you've got the actual

9    purchaser of the supply house and,

10   boom, the board is landing there,

11   9.4 million square feet, representing

12   now, at this point, what Taishan had

13   admitted is only 15% of that.

14        The point that I wanted to

15   emphasize, if you go to the next

16   slide, 26, and the callout, look above

17   at the deliveries that Taishan made to

18   unknown, state unknown, at 56,866,080

19   square feet.

20        So here we don't have the

21   actual supply house that it's coming

22   into, but it came into the United

23   States.  These are export records.

24   Clearly 87 million square feet from

25   Taishan came in.

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 90 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2013 Page 59 of 281
March 11, 2013

```
1              I just wanted to make the point
2         that, when you look around the
3         country, what states got hammered,
4         hammered with Chinese drywall from
5         Taishan.  Florida is by far and away
6         triple any other state.  And there's
7         only a handful of states that have had
8         the impact.
9              So the point becomes, when
10        you're considering the fact that
11        Taishan has only admitted 15%, 15% of
12        the boards that went into Florida,
13        understand that that is augmented by
14        the fact that 56 million additional
15        square foot got spread around the
16        United States, we would argue, the
17        majority to Florida.
18             Now, do we have direct proof on
19        which supply house?  No.  But it went
20        somewhere.  Where did these homes end
21        up?  Where did the drywall end up?
22        Florida, triple any other state.
23             And the point becomes it's not
24        that they're admitting 15%.  That's
25        15% they're admitting of sales that we
```

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 91 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 60 of 281
March 11, 2019

1          know the supply house.

2                  When it comes to their overall

3          drywall that came into the United

4          States, we're talking about like 1%

5          that they've admitted for the state of

6          Florida.

7                  So the question becomes, well,

8          where did it all go?  Where did it all

9          go?

10                 Another question is who else

11         was out there?  We addressed this in

12         the briefing.  And there was another

13         company, Knauf, who was a German-based

14         company.  They also imported drywall

15         with the same defect, the sulfur that

16         caused off-gassing.

17                 Within a year, they admitted

18         their responsibility, began a program

19         fixing houses, and ultimately fixed

20         every house that their drywall was in.

21         Every one of their boards was marked

22         with the name Knauf on it, as is the

23         custom for U.S. drywall makers, USG,

24         National Gypsum, boom, right on the

25         board.  People -- responsible

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 92 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 61 of
281
March 11, 2019

1    manufacturers mark their board.

2         But Knauf came in and repaired

3    everything.  None of these cases we're

4    talking about today have Knauf because

5    we know Knauf never made a board

6    blank, never made a board MEETS OR

7    EXCEEDS without a manufacturer name.

8         So who is this third boogieman?

9    Who is capable of sending 90 million

10   square feet of Chinese drywall into

11   the United States other than Taishan?

12        That was the specific topic

13   identified on the 30(b)(6) notice to

14   Taishan in the deposition we took in

15   January.  Where are the documents?

16   Who are the witnesses?  Who's going to

17   say anybody made any of these buckets.

18        Taishan hasn't produced a

19   single document or a single witness to

20   indicate that there was a third player

21   out there.

22        So not only are they admitting

23   a tiny percentage of what they sent

24   into the United States, they've got no

25   evidence that somebody else did.

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 93 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 62 of 281
March 11, 2019

```
 1              So perhaps my learned opposing
 2         counsel would say:  Well, that's not
 3         our burden of proof to tell you who
 4         did it.  They accused us.
 5              In the documentation before the
 6         court in the record, we have Taishan
 7         as a dominant player in the market.
 8         We have quoted in the product ID brief
 9         the testimony where they've got their
10         own internal investigation department
11         looking at other manufacturers; are
12         they counterfeiting us, let's shut
13         that down.  They study the market.
14         They know it.
15              They bragged about how they had
16         brought claims against the other small
17         manufacturers and had shut down, and
18         they quoted percentages and dollars
19         that they had shut down other
20         manufacturers on counterfeiting.
21              So with a sophisticated, huge
22         market player, with its own division
23         studying other Chinese drywall
24         manufacturers, where is the first
25         document that some company other than
```

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 94 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 63 of
281
March 11, 2019

```
 1        Taishan sent drywall into the state of
 2        Florida?  Not one that's been
 3        produced.
 4             Let me go back to where Patrick
 5        dropped off at slide 36.  So now we
 6        have the question of what markings did
 7        they make on the boards?  Separate
 8        topic that they made some boards that
 9        were unmarked, and we're going to come
10        to that separately.  But let's start
11        with those boards for which they did
12        put markings.
13             Well, they didn't put their
14        name on anything, as opposed to Knauf
15        and what we would argue responsible
16        U.S. manufacturers did.
17             So instead, they had various
18        markings.  And we're going to spend
19        most of the day today and tomorrow
20        looking at those markings.
21             But let's draw some
22        conclusions.  How did the markings get
23        on the boards?  As these boards are
24        moving down the factory line, there
25        are printers that put the markings on
```

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 95 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 64 of 281
March 11, 2019

1          the board, one board after another as

2          they go down the line.  They're moving

3          hundreds of thousands of these boards

4          through.

5              So you can imagine that a

6          printer that's dealing with that kind

7          of volume is taking a lot of ink.  In

8          fact, in the deposition, Mr. Che told

9          us that they've got -- needed to buy

10         so much ink that the manufacturers of

11         the machines would give them the

12         machines because they were looking for

13         the ink sales.

14             So these things were in a rough

15         environment.  There were lots of them,

16         at least four by manufacturing that

17         they told us about.  That often broke

18         down, they often had to be replaced.

19             So we've got multiple

20         production lines, multiple printers,

21         the printers are breaking, new

22         printers are come in.

23             Okay.  So what does that tell

24         you about what the markings are going

25         to look like?  If you look at the next

March 11, 2019

1    slide, no standard protocol for
2    delivering marking instructions to the
3    spray marking operators.
4          Pause for a second.  So again,
5    on the eve of deposition we found, in
6    a reference in another document, that
7    there was a markings manual and a
8    highly detailed set of instructions on
9    how markings are supposed to be done
10   on the boards.
11         We wrote to opposing counsel.
12   Where is the manual?  We're ten years
13   in, we're arguing about markings.
14   Where is the manual on how to do the
15   markings on the board?
16         The day before the deposition,
17   two days before the deposition, we're
18   in Atlanta for the deposition.  Here
19   it is, it's in Chinese.
20         We get it, we use our resources
21   for interpreting, and it says this is
22   the current version but there were
23   three previous versions going right
24   back to the time when this board was
25   being manufactured.

March 11, 2019

1        Where are the earlier versions?

2    Do you have an English translation?

3    Answer, well, that manual only applies

4    to drywall we make in China.  We don't

5    really have a manual for the board

6    that we exported that was American

7    sized.  That was something else, and

8    there's no documentation whatsoever.

9        So you've got a company, a big

10   industrial player, factories going up

11   everywhere, corporate chains of

12   authority, annual reports being filed,

13   and their claim is, yeah, we had this

14   process where we sold tens of millions

15   of, for them, square meters of drywall

16   to the United States, yet we had no

17   procedures, no written rules, no

18   protocol for how to mark the boards,

19   despite the fact that you can sure

20   believe that we got it for every other

21   board that we make.

22       So then how would the machine

23   operator know how to mark the board?

24   We call them on the phone, say, put

25   this in there.  Or maybe we would walk

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 98 of 344
Case 1:11-cv-22408-MGC Document 291 Entered on FLSD Docket 04/29/2019 Page 67 of 281
March 11, 2019

```
 1        over to him and say, you know, say
 2        Venture Supply, Inc., Made in Taihe,
 3        or say 4feetX12feetX1/2inch.  We would
 4        tell them face-to-face or on the
 5        phone.  There's no e-mails, there's no
 6        documents of that.  We don't have any
 7        records of that.
 8              And Mr. Che acknowledges,
 9        well -- as a principle, so how does he
10        get that in to the printer?  Is there
11        a keyboard?  Is there a separate
12        computer that has memory?  No, no, no.
13        There's a keyboard, but it goes right
14        into the printer, and the printer
15        prints, and then when you're ready to
16        do a label change, it doesn't remember
17        what the previous labels were.  You
18        overwrite when you put in the key for
19        the next label.
20              I said, so who selects the
21        font, capitals versus small, periods,
22        the spacing, who does that?
23              Well, the machine operator does
24        that, he does all of that.  But some
25        of them are lazy -- his word -- and
```

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 99 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 68 of
281
March 11, 2019

1        what they do is they don't really

2        change the settings from the last time

3        we did a label.

4               So there's no documentation,

5        there's no consistency, it changes all

6        the time.  You've got multiple

7        machines that come with different

8        fonts.  And who makes the decision?

9        Well, the machine operator -- the lazy

10       machine operators will key it in, and

11       that's how the printer knows what

12       labels to put out onto the boards.

13              So I'm going to do one more

14       flipping around.  We're going to go

15       from 37 and I want to go to the

16       residual board on page 40.  If you'll

17       go to slide 40 for me.  I'll come back

18       and pick up these other three slides.

19              This becomes important because

20       in December of -- just this last year,

21       Taishan goes out and finally looks for

22       examples of what they call

23       American-sized drywall.  That's their

24       new euphemism for the stuff that they

25       knew that they sent to the United

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/18/19 Page 100 of 344
Case 1:14-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 69 of
281
March 11, 2019

1    States.  And they -- they say, we

2    searched for it to see if it was

3    possible that the residual boards, in

4    every corner of the warehouse, and in

5    the end I discovered these residual

6    boards.  So I called lawyers and the

7    lawyers came and took pictures.

8         Your Honor asked me a minute

9    ago, what were those residual boards?

10   There were only three types.  In slide

11   41, which is the next slide, you'll

12   see that they did MADE IN CHINA MEET,

13   singular, OR EXCEEDS ASTM.

14        Not pictured here, they had a

15   stack of boards that had what you see

16   above, you know, the MEET OR EXCEEDS,

17   but also had Crescent City on it.

18   That is for the Louisiana case.  It's

19   not an issue in the state of Florida.

20        And then in a final photograph,

21   which we can supplement to you,

22   TG-PID-22.  It's very difficult to

23   read.  What we call it internally, it

24   was an illegible marking, and we're

25   not making really heads or tails out

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/18/19 Page 101 of 344
Case 2:14-cv-22408-MGC Document 23 Entered on FLSD Docket 04/29/2019 Page 70 of 281
March 11, 2019

```
1            of it.
2                 So as the special master has
3            now clearly discerned, we don't have
4            one exemplar per bucket.  We don't
5            have what they contend to be like a
6            mug shot book.  Let's get every label
7            you ever made, lay them out.  Then
8            when we get a photograph from one of
9            the houses we can compare it to the
10           mug shot book and see which labels,
11           what matched.  And if there's a match,
12           a photo identification, you have the
13           product ID.
14                So what we have here is now
15           we've got three mug shots.  That's all
16           we've got.  One of them we can't read.
17           Two of them, now, Taishan wants to
18           take the position that we're lucky
19           that they found them, because if they
20           can match -- now they're going to be
21           the arbiters.  So if they match the
22           font and the wording, the lettering to
23           the sample, they'll admit it.  And if
24           you can't, well, that's not their
25           drywall.
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/18/19 Page 102 of 344
Case 1:14-cv-22408-MGC Document 23 Entered on FLSD Docket 04/29/2015 Page 71 of 281
March 11, 2019

1          Why don't we have a full mug

2     shot book after all this time?  I

3     believe Mr. Montoya made the point

4     repeatedly, which is, the strategy has

5     been don't give anything hurtful to

6     us; only give things that are

7     beneficial to us.

8          Why these boards?  Well, they

9     want to use them now as a sword.

10     They're going to say that unless it

11     meets these fonts exactly, we're going

12     to say, no, that's not our font.  We

13     didn't print that way.

14          So the last time I'll do it,

15     but if you'll go up to slide 38.  So

16     Venture Supply, there were only five

17     in Florida, they've all been admitted.

18          Why do we put the slide in

19     here?  Because it elegantly

20     demonstrates just how many different

21     fonts, type styles, layouts are here.

22     I think I'll jump up out of the chair

23     and actually point at a couple of

24     things here.

25          Number one, different printer

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/18/19 Page 103 of 344
Case 2:14-cv-02408-MSG Document 25 Filed March 11, 2019 Docket 04/29/2019 Page 72 of 281
March 11, 2019

```
 1          types.  Look at the smooth printing.
 2          Different technical people use
 3          different words for it, but my IT
 4          people tell me this is technically
 5          called an impact printer versus a
 6          nonimpact printer.  I think of laser
 7          versus an old dot matrix.
 8              So Venture here is clearly the
 9          more advanced type of printer that's
10          making the nice smooth label.  And if
11          you'll look for the other red one
12          here, you've got these rows of
13          printing where it's spitting dots out
14          to create the letters that way.
15              So clearly you've got two
16          different types of printers here that
17          Taishan is using to print the label
18          VENTURE SUPPLY INC.
19              Mr. Che, in his deposition,
20          said:  We never did this.  But clearly
21          they did.  Clearly they did.
22              Why is that important?  Because
23          if we turn over photographic proof
24          with this type of printing, they're
25          denying it, saying we never did it.
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/18/19 Page 104 of 344
Case 1:14-cv-22405-MGC Document 23-1 Entered on FLSD Docket 01/23/2015 Page 73 of 281

March 11, 2019

```
 1          Until they're caught.  Oh, yeah, I
 2      guess we did.  And then they're going
 3      to back off and come up with yet
 4      another strategy on how they're going
 5      to deny it.
 6              What are the other differences?
 7      Print differences.  Look at the E here
 8      and here and here.  That's at least
 9      three different types of Es.
10              Font.  Look at the U's.  This
11      one's got kind of an angle in it.
12      This one comes down and makes a harsh
13      kind of 90-degree turn, and this one
14      is a nice loop.  Different fonts.
15              And then this goes to the lazy
16      machine operator.  I hate the term,
17      but I'm using what Mr. Che told me,
18      not my characterization.  Are you
19      putting a space after the period, as,
20      you know, was drilled into us in
21      grammar school?  Or are you going to
22      jam it all together, not put the
23      space?
24              So now we're down on font
25      levels to this tremendous variation
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/18/19 Page 105 of 344
Case 2:09-cv-22408-MBN Document 2s Filed 11/18/19 Docket 04/29/2019 Page 74 of
281
March 11, 2019

```
 1        depending on the machine operator on
 2        any given day, on which machine that
 3        it's being done on, what's the
 4        standard fonts.
 5             But the point, Special Master,
 6        becomes that any attempt by Taishan to
 7        disavow a board because the font
 8        doesn't match what's in that residual
 9        board is hopelessly insupportable
10        because they can't account for the
11        massive amount of variation that they
12        had within their own printers and with
13        their own print operators, without a
14        manual.
15             Gosh, it would be nice to have
16        the paper, right?  What did they
17        actually put on the board.
18             In this next slide, again,
19        late-discovered documents, just got
20        them.  And we're looking at
21        specifications that were internal to
22        the factory, and look at this.  It
23        says board with dimensions and so that
24        3660x1220x12.7-millimeter, that's the
25        metric equivalent of the U.S. drywall.
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/18/19 Page 106 of 344
Case 1:19-cv-22408-MGC Document 25 Entered on FLSD Docket 04/29/2019 Page 75 of 281

March 11, 2019

1          I guess their machines ran off of

2          millimeters.

3                So 12-foot by 4-foot by -- I'm

4          sorry, 12-foot by 8-foot by half an

5          inch thick, that's 3660x1220x12.7mm.

6          So this is clearly going to the United

7          States.  I'm just going to steal one

8          of my colleague's thunder, because

9          Patrick stole a couple of my things.

10               But IMT, we're going to point

11         that -- that's one of the issues that

12         we have here.  So we know this is

13         going to have a specific marking.  But

14         look here at the spray markings that

15         are attached to the document.  Produce

16         them.  We want to see what your

17         instructions were for the spray

18         marking so we can have them.

19               Answer:  The information of the

20         spray marking that is attached for the

21         use of the worker who inputs the

22         information, when they're done with

23         the information, the piece of paper is

24         thrown away.  This is our common

25         practice.

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/18/19 Page 107 of 344
Case 1:19-cv-22408-MGC Document 25-1 Entered on FLSD Docket 04/29/2019 Page 76 of 281
March 11, 2019

1          I come back to the slide
2     Patrick showed you with the 12 columns
3     of information down to, you know,
4     where it was made, when it was made,
5     the cost, et cetera.  They've got
6     their internal records when they want
7     them for their purposes.
8          When we ask for records,
9     everything either never existed or was
10    thrown away.
11         I'm going to go off on a
12    tangent for one second and say these
13    are the markings on the boards, but
14    the edge tape that goes along the side
15    where they said Taihe -- they admitted
16    that one because that was their
17    standard tape they used over and over
18    again, it's in product catalogs.  You
19    can't miss it.
20         But we asked them, where's the
21    rest of the documents for what you
22    printed on other edge tapes?  Like
23    they made a specialty tape for Venture
24    Supply.  Show us how you made the edge
25    tapes for U.S. customers.

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/18/19 Page 108 of 344
Case 1:14-cv-22408-MGC Document 23 Entered on FLSD Docket 04/29/2015 Page 77 of 281
March 11, 2019

```
 1                  In the deposition of Mr. Che,
 2         he told me that the separate factory
 3         that made the tapes had no computers,
 4         so they couldn't take an e-mail.
 5         There were no records of what they
 6         made.  And the way they would know
 7         what to print was that somebody would
 8         call them on the phone and tell them
 9         to print tape, that they wouldn't
10         write it down anywhere, and there were
11         no permanent records.
12                  So you've got a warehouse
13         producing millions of miles of edge
14         tape with no e-mails, no computers and
15         no filing cabinets.  And that was the
16         document production for the edge tape
17         examples.
18                  So we got no spray marking
19         documents and we got no edge tape
20         documents.
21                  In conclusion, the plaintiffs
22         would ask that as the day unfolds with
23         respect to these individual so-called
24         buckets and the issues thrown back and
25         forth about burden of proof and what
```

Case 2:09-md-02047-EEF-MBN  Document 22363-38  Filed 11/18/19  Page 109 of 344
Case 2:14-cv-22408-MGC  Document 23  Entered on FLSD Docket 04/29/2019  Page 78 of 281
March 11, 2019

```
 1          has been shown versus not, that the
 2          Court take into account not only
 3          Mr. Montoya's description of the
 4          practices as found by Judge Fallon of
 5          delay and obfuscation by the
 6          defendant, but also take into account
 7          the incredible lengths that the
 8          plaintiffs have gone to to try and
 9          find this information from them, to
10          build the mug shot book to have every
11          picture so that we can compare
12          markings and do a fair assessment,
13          when we're told that we get two boards
14          that you can actually read the photo
15          of and that's it, despite ten years of
16          effort.
17              So that when we show that
18          enough drywall that says MEET OR
19          EXCEEDS was sent by Taishan into
20          Florida to make thousands of homes,
21          and that we have those markings, that
22          they haven't shown that anybody else
23          in China ever sent a board out that
24          said that, that when they argue that's
25          not enough, other people could have
```

Case 2:09-md-02047-EEF-MBN  Document 22363-38 Filed 11/18/19  Page 110 of 344
Case 2:14-cv-22408-MCE  Document 2  Entered on FLSD Docket 04/23/2015  Page 79 of
281
March 11, 2019

```
 1          done it, that the special master takes
 2          into consideration, we asked at every
 3          step for this information, and we're
 4          getting implausible answers like, oh,
 5          yeah, those documents that we had for
 6          spray markings, we threw those away.
 7          Never had a document for edge tape,
 8          and we could only find two samples in
 9          2018, nine years after Judge Fallon
10          issued an order saying everyone
11          preserve physical evidence in this
12          case.
13               And find that we have satisfied
14          our burden of moving forward with
15          proof that they made a drywall with
16          the markings that we claim, and that
17          the inference based on their conduct
18          should be that unless they can
19          disprove it, that's their drywall.
20               Thank you.
21               SPECIAL MASTER LEE:  I have one
22          question.  Did plaintiff ever obtain
23          the earlier marking manuals, either
24          for China-produced drywall or U.S.
25          directly?
```

Case 2:09-md-02047-EEF-MBN  Document 22363-38  Filed 11/18/19  Page 111 of 344
Case 1:14-cv-22408-MGC  Document 29-4 Entered on FLSD Docket 04/29/2019  Page 80 of
281

March 11, 2019

```
 1              MR. SERPE:  We had the manual
 2         itself in Chinese produced to us from
 3         2015.  Now, the earlier manuals --
 4              MS. DUGGAN:  We were told
 5         that -- Christy can correct me if I'm
 6         wrong, that they overwrote them as
 7         they revised them and there is no
 8         longer an earlier version; is that
 9         correct?
10              MS. EIKHOFF:  You had the
11         earlier manuals from -- that were
12         produced in 2012, and that was the
13         basis of your request for the
14         manuals -- you had, I guess, one of
15         them, right?  You had one of the
16         manuals.  That was the basis of your
17         request the Thursday before the
18         Tuesday deposition for the manuals
19         that were referenced in what you had.
20              SPECIAL MASTER LEE:  That's not
21         what he said.
22              MS. ROBERTSON:  Can I please
23         clarify?
24              I think this was unfortunately
25         some wires got crossed.  We had
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/10/19 Page 112 of 344
Case 2:14-cv-22408-MGC Document 25-1 Entered on FLSD Docket 04/29/2015 Page 81 of 281
March 11, 2019

1    pulled -- we had a document that was

2    produced to us.  It referred to two

3    manuals.  We asked for the two

4    manuals --

5            SPECIAL MASTER LEE:  What was

6    the date of that document?

7            MS. ROBERTSON:  That document

8    was dated 2009, I believe.

9            MS. EIKHOFF:  And it was

10   produced in 2012 by Taishan's prior

11   counsel.

12           MS. ROBERTSON:  Correct.  And

13   it referred to these two manuals.  We

14   asked for the two manuals that were

15   referred to in the document.

16           I think that potentially where

17   there's a little bit of -- where we're

18   not having a meeting of the minds is I

19   think that you were just representing

20   is that one of the attachments to that

21   2009 e-mail was one of the -- one of

22   the documents we sought.  And we

23   didn't read the document to be that

24   way.

25           MS. EIKHOFF:  Okay.

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/10/19 Page 113 of 344
Case 1:09-cv-02408-MSC Document 23 Filed 04/29/2019 Page 82 of
281
March 11, 2019

```
 1                MS. ROBERTSON:  We read the
 2        document to refer to two manuals that
 3        we only received the later versions
 4        of.
 5                MS. EIKHOFF:  Okay.
 6                MS. DUGGAN:  But am I correct
 7        that you've represented to us that the
 8        earlier versions of these manuals have
 9        been overwritten over time, so they
10        don't exist?
11                MS. EIKHOFF:  That's right.  We
12        have the current versions of the
13        manuals and the declaration --
14                MR. SERPE:  For domestic --
15                MS. EIKHOFF:  For domestic,
16        that's right.
17                MR. SERPE:  There was never a
18        separate manual for American-sized or
19        U.S. imports.
20                MS. EIKHOFF:  And I'm sorry for
21        talking over you.  Sorry.  And I
22        apologize to the court reporter too.
23                But you're right, there was
24        never a separate manual that would
25        govern foreign sales, foreign
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/10/19 Page 114 of 344
Case 1:14-cv-22405-MGC Document 23 Entered on FLSD Docket 04/29/2015 Page 83 of 281
March 11, 2019

```
 1         markings.  So the manuals that were

 2         produced relate to Chinese domestic

 3         practices.

 4              MR. SERPE:  Subject to our

 5         suggestion to the special master that

 6         that's implausible.  That didn't

 7         happen.  And this is another example

 8         that everything they do is highly

 9         detailed, except when it benefits them

10         not to have a manual, not to have

11         documents, not to have attachments,

12         and then they disappear.

13              As they indicated, all the way

14         back to 2009, they were going to do,

15         only send beneficial documents.  What

16         does that mean?  Don't send the ones

17         that hurt us.

18              SPECIAL MASTER LEE:  Okay.  So

19         why don't we take a five-minute break,

20         and we'll turn it over to defendant.

21              MS. EIKHOFF:  Sounds great.

22              (Recess taken, 10:58?a.m. to

23         11:07?a.m.)

24              MS. EIKHOFF:  Ms. Lee, I've

25         already introduced myself.  I'm
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/18/19 Page 115 of 344
Case 1:14-cv-22408-MGC Document 25-1 Entered on FLSD Docket 01/29/2015 Page 84 of
281
March 11, 2019

1    Christy Eikhoff of Alston & Bird.

2    Alston & Bird has represented Taishan

3    since 2015 when Taishan came back into

4    the litigation after they had taken a

5    break from -- they broke from their

6    prior counsel in the case.

7         And Mr. Taylor, my partner

8    Mr. Taylor, Mr. Venderbush, we have

9    been working on this case for the last

10   four years plus.  And on the day that

11   we came into Judge Fallon's courtroom,

12   which was March 17th, 2015 was when we

13   first physically appeared in his

14   courtroom, and we stood up and said to

15   Judge Fallon that Taishan was coming

16   back into the litigation to find out

17   who did they owe and how much did they

18   owe them.

19        Taishan understands it's in

20   default.  Taishan does not contest

21   jurisdiction in Florida.  And that has

22   been our focus over the four-plus

23   years that we've been involved in this

24   case, and that is our focus here today

25   to find out who had Taishan drywall

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/18/19 Page 116 of 344
Case 2:14-cv-22408-MCR Document 254 Entered on FLSD Docket 04/23/2015 Page 85 of
281
March 11, 2019

1    and how much should the damages be.

2    That's what we're here to do.

3              Now, what the plaintiffs have

4    focused on today is exactly what we

5    predicted they would focus on, and we

6    said it in our brief; that they're

7    going to come in and hammer two themes

8    home.

9              One theme that they will hammer

10   is that there were only ever two

11   Chinese drywall manufacturers that

12   sent goods into the U.S.  There was

13   Knauf, who we settled with, and then

14   there was Taishan, who should be

15   responsible for everything else that's

16   not Knauf.

17             And that myth, as we said in

18   our brief and as we'll go through in

19   more detail today, is demonstrably

20   false.  There were other Chinese

21   drywall manufacturers that sent goods

22   into the marketplace.  We'll get into

23   that in just a few slides.

24             But what they've spent the

25   lion's share of their time today doing

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/18/19 Page 117 of 344
Case 2:14-cv-02408-MSG Document 23 Filed on 5/53 Docket 04/29/2019 Page 86 of
281
March 11, 2019

```
1          is to paint Taishan as a bad actor, to

2          say Taishan's a bad guy, the company

3          is full of bad guys, and they've been

4          bad guys in this litigation; and

5          therefore, they shouldn't get a fair

6          shake.  We should just assume that

7          they're responsible for everything,

8          unless they can affirmatively disprove

9          it.

10              There's a lot of problems with

11         that approach, and we're going to go

12         through those too.  But one of the

13         problems is you cannot take at face

14         value their characterizations of

15         Taishan's conduct and Taishan's

16         motives in this litigation.  Some of

17         their renditions of what has happened

18         is misleading.

19              In particular, a point that

20         Mr. Montoya made, he said that we lied

21         to the Fifth Circuit.  Not going to be

22         delicate about it, Taishan lied to the

23         Fifth Circuit.  That is what he told

24         you.  That is not true.  That did not

25         happen.
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/10/19 Page 118 of 344
Case 2:14-cv-02408-MSG Document 25 Filed on 5/19 Docket 04/23/2019 Page 87 of 281
March 11, 2019

1          As Mr. Montoya explained, there

2     are two related defendants that are

3     called Taishan.  There is Taishan

4     Gypsum, TG, and then Taian Taishan

5     Paperboard, TTP.  TTP is a subsidiary

6     of TG, and for purposes of this

7     litigation, we do call them both

8     Taishan.  We tend to merge them

9     because, for all practical purposes,

10    the liability is ultimately going to

11    be the same.  But they're two separate

12    companies.

13         And so these two separate

14    companies, TG and TTP, submitted in

15    the MDL two separate Manufacturer

16    Profile Forms, or MPFs.  One of the

17    Manufacturer Profile Forms was for

18    TTP, one for TG.

19         TTP's Manufacturer Profile Form

20    has a big exhibit to it, and it's a

21    chart, and you've seen it and you'll

22    see more of it; the chart that lists

23    each of the sales of the drywall in

24    American sizes and who ordered it,

25    what the sizes were, what the spray

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/18/19 Page 119 of 344
Case 2:14-cv-22408-MCC-EJ Document 23 Entered on FLSD Docket 04/29/2019 Page 88 of 281
March 11, 2019

 1          markings were, what the edge tape was.

 2                But TG only made two sales ever

 3          to a U.S. company, and both of those

 4          sales were to Venture Supply, a

 5          category that we have admitted.

 6                So here's Taishan Gypsum's

 7          Manufacturer Profile Form from the

 8          case.  It is not attached to what the

 9          plaintiffs submitted, and frankly,

10          it's not attached to what we submitted

11          because Venture Supply is not at

12          issue.  That's not a disputed

13          category, so there really wouldn't be

14          any reason for them to show TG's

15          Manufacturer Profile Form with these

16          two sales.

17                But the quote that he showed

18          you from the Fifth Circuit was a quote

19          that said TG made two sales to a U.S.

20          company.  That is true.  It was to

21          Venture Supply.

22                So I use that as an example of

23          how careful you should be in accepting

24          some of the characterizations of our

25          client, mischaracterizations of our

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/18/19 Page 120 of 344
Case 1:19-cv-22408-MGC Document 25 Entered on FLSD Docket 04/29/2019 Page 89 of
281
March 11, 2019

1          client.

2                  So they can be misleading, but

3          more importantly here, they're

4          irrelevant, because under the law, the

5          factfinder, the adjudicator, which is

6          the situation that you have been

7          commissioned to be, cannot be

8          prejudiced by thinking that someone's

9          a bad guy or a good guy.

10                 Your job is to look at the

11         facts and the evidence and to make

12         decisions based on what the facts and

13         the evidence show, not the paint with

14         which a party has been colored as a

15         bad guy or a good guy.

16                 And the reason that the

17         plaintiffs spend so much time

18         hammering these two themes, we

19         believe, is because it is -- they're

20         replacing those themes for evidence.

21                 If they have an evidentiary gap

22         where they can't prove that Taishan

23         made the drywall that's at issue, then

24         they want to fill that gap with

25         presumptions that Taishan is a bad

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/18/19 Page 121 of 344
Case 1:14-cv-22408-MGC Document 23 Entered on FLSD Docket 04/29/2015 Page 90 of 281
March 11, 2019

1    actor and a presumption that Taishan's

2    the only other manufacturer out there

3    who could have possibly made this, so

4    let's just assume it was Taishan.

5           Now, plaintiffs acknowledge

6    Florida law that they have the burden

7    of proof and that their burden of

8    proof is to show by the greater weight

9    of the evidence that these boards are

10   manufactured by Taishan.

11          This is from the plaintiffs'

12   brief, and it is a correct statement

13   of the law:  The determination before

14   the special master is governed by the

15   greater weight of the evidence

16   standard.

17          That is correct, and Mr. Serpe

18   at the beginning of our proceedings

19   today, said we bear the burden of

20   proof, and so that's why we think we

21   should have a rebuttal.  That's a fair

22   point.

23          But then from that clear and

24   correct statement of Florida law, they

25   take a bizarre pivot to say but you

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/18/19 Page 122 of 344
Case 1:14-cv-22405-MGC Document 23 Entered on FLSD Docket 04/29/2019 Page 91 of
281

March 11, 2019

```
 1          should change Florida law.  Adjustment
 2          should be made to the burden of proof.
 3          And Mr. Montoya said explicitly, the
 4          burden of proof should be flipped
 5          here.
 6               Special Master Lee, you don't
 7          have the authority to flip the burden
 8          of proof.  You don't have that
 9          authority as the special master, but
10          more importantly, Judge Cooke doesn't
11          have that authority.  No district
12          court has that authority.  And this
13          has been tried before in the product
14          ID setting.
15               The Eleventh Circuit in the
16          Blackston case, that was a case that
17          involved asbestos, another product
18          that caused a lot of harm to a lot of
19          people over a lot of years and a lot
20          of litigation, and aggravation on
21          behalf of all of the parties involved
22          in the courts.  Asbestos has been a
23          litigation nightmare.
24               And so there was a plaintiff in
25          the Blackston case that said to the
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/18/19 Page 123 of 344
Case 1:14-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2015 Page 92 of 281
Mar. 11, 2019

```
 1          court, similarly to what the
 2          plaintiffs are saying here today:
 3          This isn't fair that we should have to
 4          prove that you made this asbestos.
 5          It's too hard.  It's too difficult.
 6          There aren't enough records, there's
 7          not enough identifying features.
 8               We think there should be a
 9          rebuttable presumption that the
10          defendant made this asbestos and make
11          the defendant rebut it.  If they can't
12          rebut it, then it's theirs.
13               And the Eleventh Circuit said
14          you can't do that.  Even if you've
15          been litigating a lot of years, even
16          if the records aren't great, even if
17          it's hard.  The burden of proof is
18          still on the plaintiff.
19               Now, plaintiffs have cited to
20          no Florida law that would allow this
21          court or you to change the burden of
22          proof.  They cited to the law what the
23          burden of proof is.
24               Now, we all know that under
25          Rule 37 there are times when an
```

Case 2:09-md-02047-EEF-MBN  Document 22363-38  Filed 11/18/19  Page 124 of 344
Case 1:09-cv-22408-MGC  Document 29  Entered on FLSD Docket 04/29/2019  Page 93 of 281
March 11, 2019

1    adverse inference can be imposed by a

2    court, but Rule 37 adverse inferences

3    are governed by a very concrete set of

4    judicial principles and rules that are

5    not invoked here.

6         The plaintiffs haven't moved

7    for a Rule 37 sanction.  As we have

8    explained, no spoliation occurred

9    here, and they have admitted that our

10   recordkeeping was in the normal

11   course.

12        When Mr. Serpe was selling you,

13   oh, they got these slips of paper and

14   then they input them in the machine

15   and then they just threw them away.

16   Yeah, because it was a piece of paper

17   in a factory, and they threw it away

18   in the normal course.  They didn't

19   know there was any U.S. litigation.

20   This was in China in 2006.  They

21   didn't know that there was going to be

22   litigation over it.

23        And we cited in our brief

24   Eleventh Circuit law and all law is

25   clear on this issue.  Unless and until

Case 2:09-md-02047-EEF-MBN  Document 22363-38  Filed 11/18/19  Page 125 of 344
Case 1:19-cv-22408-MGC  Document 29  Entered on FLSD Docket 04/29/2019  Page 94 of 281
March 11, 2019

1        you know that there's a claim being

2        brought, you don't have to save every

3        piece of paper, and they didn't.  So

4        no adverse inference can flow from

5        that.

6             And Mr. Montoya, as we

7        expected, told stories about how bad

8        things were in Hong Kong in 2012 and

9        everybody was agitated, the judge was

10       agitated.  That was years ago, and

11       Judge Fallon has dealt with that.

12       Those were in his court.  They were

13       his issues to deal with and he has

14       dealt with them.  The Peng issues that

15       you heard about, Judge Fallon dealt

16       with that.

17            There have been times in this

18       litigation, even since we've come in,

19       where we've had to deal with some

20       discovery issues and sometimes --

21       sometimes the plaintiffs have won

22       those issues, sometimes we've won.

23       There's been some back-and-forth, as

24       you would expect.

25            But that's not before you

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/18/19 Page 126 of 344
Case 1:19-cv-22408-MGC Document 25 Entered on FLSD Docket 04/29/2019 Page 95 of 281
March 11, 2019

```
1      today, and that cannot change the
2      burden of proof.  The fact that there
3      have been discovery issues in the past
4      that another judge dealt with, that
5      doesn't change the burden of proof.
6      That doesn't flip the burden as
7      they're asking you to do.
8           So they didn't refer to it
9      today, but they talk about the Tariff
10     Act of 1930.  Same thing.  It's not --
11     that can't flip the burden.  And so
12     there's no basis under Florida law
13     that says that a violation of a 1930
14     statute would shift the burden of
15     proof.
16          And I want to move past this
17     because they didn't spend much time on
18     it, so I don't want to spend more time
19     on it than they do, but I will say
20     this:  Even if the word "China" had
21     been printed on some of the boards,
22     that obviously doesn't resolve the
23     product ID issues, because we have
24     product ID disputes about boards that
25     say "China" on them.  So it would not
```

March 11, 2019

```
 1          shed any more light on whether Taishan
 2          made the boards or not.
 3                Now, let me turn away for a
 4          minute from their characterization of
 5          Taishan as a bad actor and talk about
 6          this myth, pervasive myth, that if
 7          it's not Knauf, then it must be
 8          Taishan.
 9                So we laid this out in our
10          brief, and I'll explain it again
11          today, that there have been two
12          Chinese manufacturing defendants that
13          were served and that appeared in this
14          litigation:  Knauf and then Taishan
15          and BNBM -- so three, but we're
16          talking about Taishan today, okay?
17                And what the plaintiffs have
18          done and the myth that's been created
19          and perpetuated over the course of
20          this litigation is, well, Knauf put
21          their name on their boards, and so
22          Knauf boards are Knauf's.  Knauf
23          settled those cases a few years ago,
24          and so now, everything else we have
25          that we think is Chinese drywall must
```

Case 2:09-md-02047-EEF-MBN  Document 22363-38  Filed 11/18/19  Page 128 of 344
Case 2:14-cv-22408-MCC-EC  Document 2353  Entered on FLSD Docket 04/29/2019  Page 97 of
281
March 11, 2019

1        have been made by Taishan.

2               But plaintiffs know that there

3        are other Chinese drywall

4        manufacturers besides Knauf and

5        Taishan and BNBM.

6               Mr. Serpe today referred to who

7        is this third bogeyman.  Who else

8        could possibly have made this drywall

9        if not Taishan?  They asked the

10       question in their brief:  If the

11       drywall is not Knauf's and, as Taishan

12       claims, it is not Taishan's, it begs

13       the question whose drywall is it, as

14       if this is an unanswerable question.

15              But they know the answer to

16       this question because they sued other

17       Chinese drywall manufacturers.  They

18       sued them, but they did not pursue

19       them.

20              And so you will see today as we

21       go through the specific categories

22       that there is another major Chinese

23       drywall manufacturer in China that's

24       called Shandong Chenxiang Building

25       Materials.  Today we're going to call

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/18/19 Page 129 of 344
Case 2:17-cv-22408-MGC Document 23 Entered on FLSD Docket 04/23/2019 Page 98 of
281
March 11, 2019

1        it Chenxiang or C&K.  There's Pingyi

2        Baier.  We're calling them Baier.

3        There's Tai'an Kangyija Building

4        Materials.  We'll call them Kang Yi

5        Jia.

6              These are just some of the

7        other manufacturers that we know made

8        drywall that came into the United

9        States and that we know the plaintiffs

10       sued because they're named on the

11       early complaints.

12             But instead of pursuing those

13       other manufacturers, they've had their

14       eyes on Taishan, and with that blinder

15       vision are now saying Taishan made

16       everything.  Unless it says Knauf, you

17       should assume that Taishan made it.

18       You should find that Taishan made it.

19             But it's not just the

20       plaintiffs that know about these other

21       manufacturers.  The government

22       agencies of the United States know

23       that there are other manufacturers.

24       So when there was -- when the problem

25       with Chinese drywall arose in the 2008

Case 2:09-md-02047-EEF-MBN   Document 22363-38   Filed 11/18/19   Page 130 of 344
Case 1:19-cv-22408-MGC   Document 29   Entered on FLSD Docket 04/29/2019   Page 99 of 281
March 11, 2019

1    and '9 time period, and it became --

2    as Mr. Montoya said, it was really the

3    first time Chinese drywall had ever

4    come into the United States because

5    drywall supply had always been handled

6    domestically until that point, until

7    the circumstances created a shortage

8    of domestic supply and forced builders

9    and drywall suppliers to go outside of

10   the U.S. for their drywall needs.

11        So when this problem arose, the

12   Consumer Product Safety Commission did

13   a study into the drywall -- Chinese

14   drywall issue, and they identified

15   other manufacturers, including

16   Chenxiang and including Baier.

17        And the Housing and Urban

18   Development Agency also did a study.

19   Theirs came later than the CPSC study

20   and it is our understanding from

21   reading those reports that they relied

22   on some of the data that had been

23   collected by the CPSC, and they

24   concluded that 6,229,166 boards of

25   drywall from China came into the

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 131 of 344
Case 1:11-cv-22408-MGC Document 293-1 Entered on FLSD Docket 04/25/2013 Page 100 of 281
March 11, 2019

1      United States in the 2005 to 2007 time

2      frame, and by the way, the vast

3      majority came in in 2006.  That was

4      the year that it really came in.

5              What we've done is we've said,

6      well, this is the volume -- these are

7      the three defendants that the

8      plaintiffs have pursued.  This is the

9      volume that Knauf has reported.  This

10     is the volume Taishan reported.  This

11     is the volume BNBM reported.

12             And so that leaves about 22% of

13     the marketplace supplied by other

14     Chinese drywall manufacturers that

15     aren't one of the three defendants

16     that actively have been involved in

17     this litigation.  So that's more than

18     a fifth of the marketplace are other

19     Chinese drywall manufacturers.

20             Who is in this piece of the

21     pie, Chenxiang, Baier, Kang Yi Jia,

22     and countless others, smaller

23     manufacturers, some whose names we

24     know, some we don't know.

25             So there was a statistic that

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 132 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/29/2013 Page 101 of 281
March 11, 2019

```
 1          was used in the plaintiffs' opening
 2          that Taishan has only admitted to 15%,
 3          only 15%, and I think there was maybe
 4          a little bit of -- the way the numbers
 5          were presented perhaps didn't tell you
 6          the full story; and so we thought --
 7          we were scratching our heads, because
 8          here we are at a PID, categorical PID
 9          hearing, and we're looking at how much
10          of this PID we've admitted by category
11          and how much we're still disputing.
12              And if you look at how much of
13          the boards, according to the
14          plaintiffs' numbers, fall into the
15          categories that we have admitted, we
16          have admitted 47% of the boards by
17          category, almost half.
18              Keeping in mind we were 31% of
19          the marketplace, but we have admitted
20          almost half of these boards by
21          category so they can tell you how they
22          got to 15%.
23              What I surmise, based on what I
24          heard, is they looked at other
25          objections, nonproduct ID objections
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 133 of 344
Case 2:11-cv-22408-MCE-Document 253 Filed on 01/29/2013 Docket 04/25/2013 Page 102 of
281
March 11, 2019

 1           that we have asserted.  We do have

 2           other defenses.  We'll get to those on

 3           another day, they're not what we're

 4           here for.

 5                 What we're here for today is to

 6           determine product ID by category, and

 7           within those categories, our

 8           admissions of those categories cover

 9           almost half of the boards that are

10           being presented to you.

11                 So speaking of those other

12           defenses and other stages of your

13           adjudication as a special master, we

14           wanted to reiterate a point that we

15           made in our brief, but that's

16           important today.

17                 So today's hearing is about the

18           categorical PID attribution.  I like

19           to think of that as the macro

20           determination, whether certain big

21           categories can be rightfully

22           attributed to Taishan with the

23           plaintiffs' proof by the greater

24           weight of the evidence, and which ones

25           there is insufficient proof to

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 134 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 103 of 281
March 11, 2019

1    attribute the whole category to

2    Taishan.

3         Now, there still will need to

4    be, in some cases, a claim-specific

5    determination of whether the

6    claim-specific proof falls into that

7    category.  So let me give you an

8    example.

9         Taihe edge tape, as Mr. Montoya

10   told you, is a product ID marking that

11   we admit is ours, and I know that

12   there's been some things come up about

13   maybe it's counterfeit, maybe it's

14   not.

15        For purposes of this

16   litigation, we have said this Taihe

17   edge tape is ours, and we're going to

18   concede for litigation purposes that

19   it's ours, even if maybe it was

20   counterfeited, it doesn't matter.  If

21   it looks like this, we are taking

22   responsibility for it.

23        It says Taihe in English, by

24   the way.  These characters have our

25   brand name in Chinese.

Case 1:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 135 of 344
Case 2:09-md-02047-EEF-MBN Document 253-3 Filed 04/25/2013 Page 104 of 281
March 11, 2019

1          But some of the proof for some

2     of the specific claims aren't this

3     clear, and so this is an example of

4     one of the claims that the plaintiff

5     says, well, this is Taihe edge tape,

6     and you just see a little piece of

7     tape and a little line of blue.

8          And we object to that because

9     we say if this is all you've got,

10    this, to us, is not enough to prove

11    that this is a Taihe product.

12         We have identified those

13    objections on our claim-specific

14    contest.  We've done the preliminary.

15    We're going to do the final.  We are

16    working with the plaintiffs' side to

17    try to resolve as many of those

18    differences as we can, but

19    undoubtedly, there may be some, a few

20    at the margins, where we're going to

21    need a claim-specific proof

22    determination made of whether it falls

23    into the category or not.

24         So this is step one of PID, and

25    that second step will come in those

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 136 of 344
Case 1:11-cv-22408-MGC Document 293-1 Entered on FLSD Docket 04/25/2013 Page 105 of 281
March 11, 2019

1      subsequent proceedings.

2           So at this point, we are ready

3      to get into the claim-specific

4      categories and as we laid them out,

5      these are the ones that are in

6      dispute.

7           Category I and J are the

8      generic categories that are partially

9      contested, and we will -- have agreed

10     to take them in order as they're laid

11     out.  Do you have any questions for

12     me, Ms. Lee?

13          SPECIAL MASTER LEE:  Do we know

14     anything about any markings used by

15     the other Chinese drywall

16     manufacturers or has that not been

17     discovered?

18          MS. EIKHOFF:  That's a very

19     good question.  We have records that

20     we have obtained and we will show you

21     that demonstrate what the other

22     manufacturers were doing in the

23     marketplace, but we do not have

24     detailed information about exactly

25     what their markings looked like

March 11, 2019

```
1        because they were never pursued in
2        this litigation.
3              And so if they had been
4        pursued, let's say that they had been
5        served and they came into the U.S.
6        litigation, like Taishan and BNBM and
7        Knauf did, they would have a
8        Manufacturer Profile Form, and their
9        Manufacturer Profile Form would do
10       what TTP's did and itemize each order
11       and describe the spray markings on the
12       side and describe what was on the end
13       tape.  But because they were never
14       pursued as defendants, we don't have
15       that.
16             So that's one of the ways that
17       the plaintiffs have tried to flip the
18       script and say we sued you, you gave
19       us a list of what you did, and now
20       we're going to say it must be you
21       because we see this generic marking on
22       your form, so it must be you.  It must
23       be you.  You said that you produced
24       some blank boards.  All blank boards
25       must be you.
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 138 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 107 of 281
March 11, 2019

```
 1              Well, that's not enough,
 2       especially when, as you will see as we
 3       go through the evidence, the evidence
 4       will show that it is more likely than
 5       not and sometimes incredibly
 6       compelling showing that the drywall at
 7       issue that they're putting to Taishan
 8       was made by another specific
 9       manufacturer, ones that we can
10       identify and ones that they could have
11       pursued and didn't.
12              SPECIAL MASTER LEE:  And how
13       does the defense propose that we
14       resolve the edge tape issues if, as
15       the plaintiff says, the edge tape is
16       typically removed during installation
17       of the drywall?
18              MS. EIKHOFF:  So the way that
19       the PID claim-specific determinations
20       have been made is to look at whatever
21       product ID documentation is available,
22       and so the decisions have to be made
23       based on what was provided at the
24       time.
25              SPECIAL MASTER LEE:  Okay.
```

March 11, 2019

```
1              Now we're going to go through
2         specific categories, and we're going
3         to have to switch back and forth.
4              MS. DUGGAN:  I wanted to know
5         if I could just make one clarification
6         with regard to the defendants at issue
7         in this case, and I don't think
8         Ms. Eikhoff would disagree with me.
9         There's TG, as we refer to as Taishan
10        Gypsum Company, and TTP, Taihe Taishan
11        Plasterboard Company, they were two
12        separate defendants that were sued.
13        They're both represented by Alston &
14        Bird here and previously by
15        Hogan Lovells, and there is a ruling
16        from Judge Fallon in the MDL and then
17        the Fifth Circuit Court of Appeals
18        that they are alter egos and one and
19        the same, and for that reason we refer
20        to them as Taishan and we consider all
21        the documents for both to be
22        applicable.
23             MS. EIKHOFF:  We agree with
24        that.  The quote that was given from
25        the Fifth Circuit court was in the
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 140 of 344
Case 2:11-cv-22408-MCE Document 253 Filed 400-of-349 Docket 04/25/2013 Page 109 of 281
March 11, 2019

1    course of making that decision and

2    specifically referred to TG having

3    only two sales.

4           MR. VENDERBUSH:  And that was

5    relevant in the jurisdictional

6    setting.

7           SPECIAL MASTER LEE:  Okay.  So

8    I think you're up.

9           MR. MONTOYA:  We are if you

10   could switch the PowerPoints.  Judge,

11   I'm going to defer to Ms. Robertson

12   who's going to make the presentation

13   on C&K, and we're at slide 43 then.

14          SPECIAL MASTER LEE:  I think

15   we'll do this category and then we'll

16   get lunch.

17          MS. ROBERTSON:  All right.  So

18   the first bucket in our brief is C&K.

19   C&K is not on Taishan's Manufacturer

20   Profile Form.  C&K is not on the

21   informational reports that you heard

22   about earlier from Mr. Montoya.

23          However, plaintiffs do

24   recognize and observe that Taishan,

25   throughout the years, has acknowledged

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 141 of 344
Case 2:12-cv-22408-MCT-Document 295 Entered on FLSD Docket 04/25/2013 Page 110 of 281
March 11, 2019

1       that they exported drywall to the

2       United States that they either don't

3       know what markings were on them or

4       they had unspecified markings.

5               And that's clear on the

6       Manufacturer Profile Form and that's

7       also clear on the statistical

8       spreadsheets you saw earlier.

9               Specifically at slide 7, you

10      can see that the product label column

11      is filled with unspecified, and so we

12      believe that C&K could fall in the

13      sort of unspecified, unknown category,

14      despite the fact that Taishan doesn't

15      have it on their Manufacturer Profile

16      Form.

17              C&K, the markings do read C&K

18      GYPSUM BOARD, as well as ASTM C 1396,

19      MADE IN CHINA.  I skipped up to slide

20      47 just to give you a quick overview

21      of what the markings look like.  This

22      is from an Amorin claimant's home, and

23      then the very next slide is what is in

24      the PID catalog as well as Florida

25      Amorin claimants.

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 142 of 344
Case 2:21-cv-22409-MCE-EFM Document 293 Entered on FLSD Docket 04/25/2013 Page 411 of 281
March 11, 2019

```
 1              So briefly real quick, as we
 2         get into these buckets and we start to
 3         talk about markings, what happened in
 4         the course of the litigation is a
 5         claimant would suspect drywall, maybe
 6         their -- suspect Chinese drywall.
 7         Maybe their neighbor found Chinese
 8         drywall, maybe they were in a condo
 9         unit, maybe had a smell.  One way or
10         another, in 2008-2009, plaintiffs
11         started to suspect they had this
12         Chinese drywall.
13              Usually this resulted in
14         calling an inspector or calling
15         somebody in the industry to say:  Will
16         you come look at my home?  Is there
17         any indication of Chinese drywall?  I
18         have these sort of concerns.
19              So with those concerns, an
20         inspector would come, and they would
21         do a visual inspection.  The visual
22         inspection was usually looking at some
23         sort of wiring, some sort of coil,
24         anything that was sort of metal, as
25         Mr. Montoya said.  Button pushing,
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 143 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 112 of 281
March 11, 2019

1       we're looking maybe even at light

2       fixtures.  Is there corrosion on

3       there?

4           If there was a visual identity

5       or perhaps there's corrosion, then you

6       would start to do destructive testing,

7       which would be removing boards from

8       the home, removing chunks of boards

9       and looking for markings.  So that's

10      why we kind of get into this marking

11      thing that comes up.

12          So the markings followed at

13      first the visual of I believe there

14      could be Chinese drywall in my home.

15      Just to give a background, it also

16      explains why sometimes we get full

17      boards, sometimes we have partial

18      boards.

19          Partial boards are usually

20      those that were more destructive

21      testing or pulled out.  Whole boards

22      are for those claimants who usually

23      did full remediation, which wasn't

24      always possible here, as we've heard.

25      There are a bunch of claimants who

March 11, 2019

1      haven't even remediated their homes

2      yet.  So those markings in those

3      plaintiffs' homes aren't usually full

4      boards because they haven't pulled

5      those walls out yet.

6              So we just have some quality

7      issues.  Just trying to get a little

8      bit of background on that.

9              So back to C&K.  C&K clearly

10     shows C&K GYPSUM BOARD.  I don't think

11     there's a dispute with either side

12     that the product ID in this bucket

13     reads C&K.  We can agree on that.

14             Our link from the plaintiffs'

15     side is through Taishan's documents as

16     well as documents that were pulled

17     from a bankruptcy proceeding.  The

18     document here at slide 44 is a

19     contract proposal between

20     International Materials Group, IMG,

21     and Shandong Taihe.

22             It's very clear just from the

23     face of the document that you have IMG

24     desiring to do business with Taishan

25     in March of 2006 for drywall.  It is

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 145 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 114 of
281
March 11, 2019

```
 1          unsigned, we understand that, but the

 2          TG_1292, 1293, that was from the

 3          production that was produced to us in

 4          2012.  Apollo Yang is a representative

 5          of Taishan who did have the authority

 6          to engage in contracts on behalf of

 7          Taishan with United States customers.

 8               So how and why would

 9          International Materials Group at all

10          be relevant to Florida specifically

11          and C&K drywall?

12               So Guardian Industries was a

13          distributor defendant in this

14          litigation.  They had depositions.

15          There was potentially -- there was

16          even a settlement that kind of came

17          out.

18               Guardian is trying to figure

19          out how to get this drywall in 2006.

20          There's a need, there's a shortage,

21          and we're getting a discussion here of

22          oh, well, International Materials

23          Group, sounds like they're working

24          with Taihe.

25               Taihe is shipping product to
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 146 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2019 Page 115 of 281
March 11, 2019

1       the United States, so on, so forth.

2       We're looking for these links.  We're

3       trying to piece together what we can

4       from the documents related to C&K.

5               So just as a quick reminder, we

6       have C&K -- or sorry, we have IMG

7       dealing with Apollo, and again,

8       confirmation that this is the same IMG

9       that Guardian, a Florida distributor,

10      knows is working with Taihe.

11              We're going to go a tiny bit

12      weedy.  Unfortunately, Special Master,

13      we just kind of have to with this

14      particular bucket.

15              So this next document is a

16      contract between the seller, York

17      Supply Company, and the buyer, WCI.

18              York Supply Company has the

19      same address and common ownership as

20      IMG.  We have Steve Gordon and we have

21      Steve Gordon.  Common ownership and

22      same address came out and was

23      confirmed by their bankruptcy

24      proceedings when they went to the

25      bankruptcy with WCI.  Those are tabs

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 147 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 116 of
281
March 11, 2019

1          to our PID brief.  They are also in

2          the C&K section, as you might recall.

3               So as plaintiffs are trying to

4          piece these puzzles together, we're

5          starting to see a little bit of

6          overlap, a little bit of similarities

7          here.  It looks like we're getting a

8          link to Taihe.  We don't have board

9          markings.  You know, they were not

10         part of the residual boards from

11         Taihe.  We have our claimants'

12         markings and then we have these

13         documents that are suggesting that

14         Taihe sold this -- sold to York Supply

15         and York Supply sold to WCI.

16              WCI only has C&K in its homes.

17         Like that's what they build their

18         homes with.  So that's how we're

19         closing the loop in a way here, what

20         we've been able to understand.

21              Now, WCI and York, they were

22         sued, but they were sued at a time

23         when WCI was already going into

24         bankruptcy or was bankrupt, so this

25         document is not part of the litigation

Case 2:09-md-02047-EEF-MBN   Document 22363-38   Filed 11/19/19   Page 148 of 344
Case 1:11-cv-22408-MGC   Document 253   Entered on FLSD Docket 04/25/2013   Page 117 of
281

March 11, 2019

```
 1          here, but is a public document pulled

 2          from part of the bankruptcy

 3          proceedings that we're doing trying to

 4          piece together our product ID for C&K.

 5                  Now, when we actually look at

 6          the markings, which all C&K markings

 7          are denied by Taishan.  We are seeing

 8          that, more or less, it's C&K GYPSUM

 9          BOARD with ASTM C 1396, MADE IN CHINA.

10                  What plaintiffs contend is, as

11          we looked at the Venture Supply

12          markings that had so many variations

13          and there were some font similarities,

14          some similarities -- some fonts that

15          weren't similar as well as the

16          residual boards that had the MEET AND

17          EXCEED that then became similar.

18                  We find that we're also finding

19          lots of similarities here because,

20          importantly, photo ID 1, which is from

21          the Taihe tape section, is admitted by

22          Taishan.  These product, these

23          markings, this font is admitted by

24          Taishan.

25                  When we look here and we have a
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 149 of 344
Case 2:14-cv-22408-MSC Document 293-1 Entered on FLSD Docket 04/25/2019 Page 118 of 281
March 11, 2019

1      denial, but we're starting to see very

2      similar sort of fonts, caps, reading

3      about kind of in the same spot of the

4      board, but, you know, again, we're

5      denied here, we don't have Taihe tape

6      like we do here.

7            But as you sort of do kind of a

8      massage out the C&K bucket and you're

9      really kind of getting into the grits,

10     we're finding the contract ties that

11     are pretty suggestive that there was

12     some dealings with Florida companies

13     with Taihe to import board.

14           Those builders were using C&K

15     to complete their homes, and then you

16     actually are starting to get a

17     comparison of it, finally an admission

18     of these markings.  And I'm comparing

19     the font.

20           Now, I can promise that, you

21     know, Taishan's position is like,

22     well, of course we're going to admit

23     this marking.  It says Taishan on it.

24     You know, and so I think we can all

25     agree that this doesn't say Taishan.

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 150 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 119 of
281
March 11, 2019

```
 1          It says C&K.  But Taishan doesn't

 2          admit to only board that only says

 3          Taishan.  We're more focusing on the

 4          actual font, the eyeball, and kind of

 5          looking at, well, you know, it's

 6          looking like we've got the same

 7          printer going off and we also have the

 8          board coming in at the same time that

 9          we know this admitted board came into

10          Florida.

11              I think that I will want to ask

12          really quickly just with my colleague

13          to make sure I properly represented

14          the sequence of the businesses.

15              (Pause.)

16              MS. ROBERTSON:  Sorry.  Thank

17          you so much for that short pause.  I

18          just want to clarify just so it's not

19          misrepresented.  WCI has other brands

20          they did build homes with, but when

21          you have a WCI home that has C&K in

22          it, it's only C&K.  So I just wanted

23          to clarify that sort of tie.

24              So I think we'll volley.

25              MS. EIKHOFF:  Yeah.  We have to
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 151 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 120 of
281
March 11, 2019

```
 1     volley the PowerPoint.  My C&K starts
 2     on page 10.
 3          In my introductory remarks, I
 4     referenced a former defendant in this
 5     case called Chenxiang, otherwise known
 6     as C&K.  Ms. Lee, all of the evidence
 7     that has been developed is that C&K
 8     boards were made by Chenxiang.
 9          Taishan testified that it
10     understood that C&K drywall was made
11     by Chenxiang.  Chenxiang is a
12     competitor of Taishan's.
13          The plaintiffs asked Taishan's
14     representative, well, would you ever
15     print boards with the competitor's
16     name on it?  And he said that would be
17     impossible.  We would never print
18     boards with our competitor's name on
19     it.
20          But it's not just Taishan's
21     testimony that says that C&K boards
22     were made by Chenxiang.  American
23     buyers who were deposed in this suit
24     testified that C&K boards were made by
25     Chenxiang.
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 152 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/29/2013 Page 121 of
281
March 11, 2019

```
 1              There was a particular American

 2         distributor who went out and procured

 3         Chinese drywall.  The name of that

 4         witness was Wood Nation.  And he was

 5         asked about Chenxiang documents and

 6         C&K drywall, and he said yep,

 7         Chenxiang, that's C&K.

 8              And he said, but I thought we

 9         were here talking about Taishan sales.

10         And plaintiffs' counsel said, well, we

11         need to talk about the C&K sales too

12         because they're also a defendant in

13         this lawsuit.

14              The Consumer Product Safety

15         Commission report identifies Chenxiang

16         as the maker of C&K drywall.  We

17         provided a web link at page 27 of our

18         brief.

19              And the plaintiffs know exactly

20         who Chenxiang is because they named

21         them as a defendant in a complaint,

22         which is a point we've already made.

23              And their brief about C&K

24         markings says approximately 50,000

25         sheets of C&K drywall were shipped by
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 153 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 122 of
281
March 11, 2019

1    Chenxiang to Port Everglades in

2    July 2006.

3           So how are they possibly saying

4    that Taishan made C&K drywall?  Well,

5    their theory keeps changing, and as

6    you will see when you go back and look

7    at our brief, the theory of

8    attribution that we anticipated they

9    would make when we wrote our brief was

10   apparently the last theory of

11   attribution, and now they have

12   developed a new theory of attribution

13   that somehow ties York to IMG.

14          And you'll notice when we look

15   back at the transcript that

16   Ms. Robertson didn't even say anything

17   about C&K when she showed you those

18   documents.

19          She said, well, here you see

20   there's a proposal by IMG to buy

21   boards from Taihe and then there's

22   this other e-mail talking about IMG,

23   ordering boards from IMG.  There was

24   nothing said about C&K in any of those

25   documents or in any of those

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 154 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 123 of 281
March 11, 2019

```
 1        discussions.  And so they don't have
 2        any evidence connecting C&K.
 3             Boiling down what we have
 4        perceived their argument to be, and
 5        this wasn't all presented to you, but
 6        it's more laid out in their brief,
 7        that one buyer bought C&K drywall from
 8        Chenxiang.  That buyer was York.
 9             And then a related company
10        sought to buy other drywall from
11        Taishan.  That related company is IMG.
12        Therefore, Taishan made all C&K
13        drywall.  That's not evidence.  That's
14        not even good logic.
15             If the plaintiffs wanted to get
16        after the manufacturer of C&K drywall,
17        they should have pursued their claims
18        against Chenxiang, who all the
19        witnesses said made it, who the U.S.
20        government says made it, and Mr. Serpe
21        said at the beginning in his
22        introductory remarks, well, Knauf put
23        their name on the sides of the
24        drywall.  Maybe Taishan should have.
25             Well, so did C&K.  They put
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 155 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 124 of 281
March 11, 2019

1    their name on the side of the drywall,

2    C&K.  That's Chenxiang.

3         So the scales are so tipped

4    against the plaintiffs here, they have

5    not shown by the greater weight of the

6    evidence that Taishan made C&K

7    drywall.  The evidence shows that

8    Chenxiang did.

9         MR. MONTOYA:  Briefly, Your

10   Honor.

11        MS. ROBERTSON:  Yeah, I think

12   just briefly, I don't think I have to

13   respond to anything on there.

14        I think just briefly, I don't

15   think that plaintiffs disagree with

16   the link we're trying to make and how

17   it seems convoluted, but that's how

18   all -- not all.  That's how most

19   drywall from Taishan came into the

20   United States.

21        We can use Richard Hamm and

22   Wood Nation as an example, just as

23   Taishan's counsel did.  Richard Hamm

24   needed some drywall.  He calls up a

25   U.S. company called BNBM USA.  BNBM

Case 2:09-md-02047-EEF-MBN  Document 22363-38  Filed 11/19/19  Page 156 of 344
Case 2:11-cv-22408-MCE  Document 293  Information 44-6 Docket 04/25/2019  Page 125 of
281
March 11, 2019

```
1        USA says, oh, yeah, I know a guy.
2        He's in China.  BNBM USA contacts
3        Taishan.
4             Taishan says, oh, yeah, we just
5        have this alter ego out there.
6        They're going to make it, but you
7        contract with BNBM.
8             TG contacts TTP.  TTP contacts
9        BNBM, they make a contract.  Richard
10       Hamm signs his contract with BNBM
11       only.
12            So all of this import of
13       drywall comes in this convoluted, why
14       are we going in these weird circles
15       with all these names.  You're saying
16       it's like Shandong Chenxiang in your
17       brief, but really Shandong Chenxiang
18       was also an exporter of drywall.
19            So it's kind of -- it's one of
20       those things where you're working with
21       the evidence, you're trying to draw
22       what you can out of it because all of
23       this drywall that comes into the
24       United States came through and touched
25       many different hands until,
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 157 of 344
Case 2:14-cv-22408-MCE Document 293 Entered on FLSD Docket 04/25/2019 Page 126 of 281
March 11, 2019

1    ultimately, it ended up in a

2    plaintiff's home.  I think that that's

3    point one.

4         I think the other part that is

5    very convenient with Shandong

6    Chenxiang, particularly, Shandong

7    Chenxiang went bankrupt in 2007.  We

8    know this because Bill Cher, who is

9    also Che Gang, wrote an e-mail to a

10   U.S. customer and said:  Well, they

11   were bankrupt, they closed their

12   factory three months ago.

13        And so I think it's a little

14   bit more of the story.  We are

15   constantly digging for evidence to try

16   to lift up and support our plaintiffs'

17   homes -- or claims rather, for the

18   evidence that they have in their homes

19   that we believe is attributable to

20   Taishan.

21        SPECIAL MASTER LEE:  So does

22   the plaintiff currently have any

23   evidence of a relationship between

24   Taishan and Chenxiang?

25        MS. ROBERTSON:  I don't think

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 158 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 127 of 281
March 11, 2019

```
1          the plaintiffs themselves have any

2          evidence of Taishan and the Chenxiang

3          company.  I think that the -- I think

4          that what we have is the evidence that

5          through the distributors, we're

6          linking the plaintiff's home to the

7          distributor to Shandong Chenxiang to

8          Taishan.

9               And it is kind of as presented

10         on the screen going through those

11         various contracts of just over time

12         they're looking for York or IMG with

13         WCI, York/IMG contacts Taishan, and

14         the drywall is coming into the United

15         States.

16              SPECIAL MASTER LEE:  And was

17         this a topic of the depositions that

18         were taken earlier this year?  And if

19         so, what was the testimony around

20         this?

21              MS. EIKHOFF:  The testimony --

22         I alluded to the testimony.  And if we

23         go back a slide, I have a specific

24         citation to it.  133 and 138.  You

25         will see the testimony of Taishan that
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 159 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2019 Page 128 of 281
March 11, 2019

1    Chenxiang made C&K drywall and it was

2    a competitor, that Taishan would never

3    use their brand on anything that they

4    made.

5        MS. ROBERTSON:  Yeah, I think

6    that as far as a depo topic, was the

7    relationship of Taishan and Chenxiang

8    a depo topic?  No.  Product ID was the

9    depo topic.  And so C&K by, I guess,

10   reference, was the depo topic.

11       But I don't believe the depo

12   notice read the relationship between

13   Taishan and Chenxiang.

14       MS. EIKHOFF:  No, but it did

15   ask for manufacturers that may have

16   made drywall at issue.

17       SPECIAL MASTER LEE:  And how

18   much of the product falls into this

19   category?

20       MS. ROBERTSON:  I think there's

21   50 homes.

22       MS. DUGGAN:  50 homes.

23       SPECIAL MASTER LEE:  Thank you.

24       I think lunch is here.  Do you

25   want to take a break for lunch?

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 160 of 344
Case 2:11-cv-22408-MCE Document 253 Entered on FLSD Docket 04/25/2013 Page 129 of
281
March 11, 2019

```
 1            (Recess taken, 11:59?a.m. to

 2       12:45?p.m.)

 3            MS. ROBERTSON:  We are moving

 4       on to the next bucket, which is

 5       IMT Gypsum.  IMT Gypsum does appear on

 6       Taishan's manufacturer profile forms,

 7       which was Tab 11 to our PID brief.  It

 8       appears on several different lines,

 9       and Taishan admits through its

10       Manufacturer Profile Form to

11       manufacturing 206,595 sheets of

12       drywall with both blue and white edge

13       sealing tape, IMTGYPSUM, and spray

14       markings with DRYWALL

15       4feetX12feetX1/2inch.

16            Highlighted here are lines 110,

17       111 and 112 showing that they used the

18       exporter Beijing Building Material

19       Import & Export Company and the

20       quantity -- or the drywall had

21       markings on the edge sealing tape and

22       markings on the board itself.

23            Prior to the deposition in

24       2019, Taishan produced a package of

25       sales notification plans.  The entire
```

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 161 of 344
Case 2:14-cv-22408-MCE Document 253 Entered on FLSD Docket 04/25/2019 Page 130 of 281
March 11, 2019

1     package is found at Tab 15 of our

2     product identification brief.  That is

3     the Chinese version, followed by the

4     English version, which was a

5     translation by Taishan's counsel's

6     vendor.  I didn't want to misstate.

7              MS. EIKHOFF:  Yes.

8              MS. ROBERTSON:  The PSC had a

9     couple of issues with some of the

10    translations, so we haven't come to an

11    agreement with that yet, but that is

12    just kind of a little background,

13    Counsel, if you want to add one

14    qualifier.

15             MS. EIKHOFF:  Yeah.  Actually,

16    for the sales plan notification, those

17    translations were done in-house.  We

18    did not have a vendor for the sales

19    plan notification translations.

20             MS. ROBERTSON:  Okay.  Thank

21    you.

22             So just days before the

23    deposition, in response to the

24    deposition notice and the request for

25    production, we get the sales plan

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 162 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 131 of 281
March 11, 2019

1          notifications.  They were not
2          previously produced at any other time
3          in this litigation.
4              When asked about where these
5          sales plan notifications were found,
6          how they were found, where they were
7          held, Taishan's corporate
8          representative testified that he --
9          you know, he worked very diligently,
10         searched very, very hard and long for
11         responsive documents to prepare for
12         his deposition in 2019 and found a
13         cabinet that had a lot of paperwork,
14         and he and a colleague went though
15         this cabinet, found these sheets,
16         which I think totals 24 sales plan
17         notifications total, and gave them to
18         their lawyers.  They were translated
19         and produced I think somewhere around
20         the 19th of January of 2019.
21             The sales plan notification is
22         very important to the IMT bucket
23         because Taishan's own documents show
24         that they did, in fact, manufacture
25         IMT Gypsum, as is consistent with

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 163 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2019 Page 132 of 281
March 11, 2019

1      their Manufacturer Profile Form.

2           So the sales plan notification

3      is from the sales company to the

4      management department, all done

5      in-house, in-house document saying,

6      hey management department, we have

7      gotten a sales plan.  This is for --

8      this is the quantity, this is the

9      standard, and this is the specific

10     requirements.

11          The words are missing here.

12     There should be 6560 sheets and 1920

13     sheets for the respective different

14     sizes.

15          So we talked a lot with Mr. Che

16     about these sales plan notifications.

17     He said this is all he could find.  He

18     could only find these 24.  But we see

19     here for IMT specifically, we need to

20     have the specific edge tape that says

21     IMTGYMSUM.  Unfortunately, there's a

22     typo.  That typo is also in the

23     Chinese version.

24          We do know from Taishan's

25     Manufacturer Profile Form it is IMT

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 164 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/29/2013 Page 133 of 281
March 11, 2019

```
 1          Gypsum.  I don't think there's much
 2          dispute over the fact that there's a
 3          typo here in the specific requirement.
 4               We'll note, though, that one
 5          thing in the specific requirements is
 6          back to those spray markings.  We have
 7          one type of board being manufactured
 8          here with no markings but with tape,
 9          and another part of the order is
10          attached spray markings.  There's no
11          attachment.
12               The attachment here is what you
13          heard from my colleague earlier.
14          Those were those sheets given to the
15          spray marking workers that were thrown
16          away.
17               You know, so unfortunately,
18          we're left with this implication that
19          we have a spray marking on IMT Gypsum
20          board, Taishan gave specific
21          instructions regarding that spray
22          marking, and that sheet was thrown
23          away.
24               Plaintiffs have the burden of
25          persuasion here and we believe it is
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 165 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 134 of 281
March 11, 2019

```
1     persuasive that IMT Gypsum was

2     manufactured by Taishan.  It went from

3     their sales department to their

4     management department and then to the

5     production folks with specific

6     instructions.

7              Now, this sales plan

8     notification specifically says

9     IMT Gypsum.  In preparation for this

10    presentation, there is a later sales

11    plan notification at 00046 that

12    incorporates by reference 00042.

13    Unfortunately, because I just realized

14    it in preparing for this, I didn't

15    question the witness, so I understand

16    if there's a contest of the

17    incorporation by reference.

18              But reading the facts in the

19    way it's presented here, we can

20    account for 39,780 sheets of drywall

21    that Taishan has provided records for,

22    yet their Manufacturer Profile Form

23    admits to 206,595 sheets of drywall.

24              Here again, we have an example

25    of we have partial evidence.  We don't
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 166 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 135 of 281
March 11, 2019

```
 1          have all the evidence.  Taishan really

 2          is in the best position to have had

 3          this evidence for us.  They're able to

 4          find one, possibly two, sales plan

 5          notifications, but they represented to

 6          us they could find no others.

 7              Finding documents to support

 8          the Manufacturer Profile Form and also

 9          documents to support the spreadsheets

10          that we talked about earlier, that was

11          part of the deposition notice.  We

12          asked the witness to be prepared to

13          testify and produce documents to

14          support those charts, those

15          statistics.  We got this and other

16          company documents.

17              Now, IMT Gypsum is another one

18          that has branded IMTGYPSUM.COM with

19          the 4feetX12feetX1/2inch.  PID catalog

20          photo, this references the ECF filing

21          in Florida 155-2.

22              We have a couple of variations

23          as we've seen with some of the other

24          boards.  And then we have this

25          particular picture.  So PID-51 was
```

Case 2:09-md-02047-EEF-MBN   Document 22363-38   Filed 11/19/19   Page 167 of 344
Case 1:11-cv-22408-MGC   Document 293   Entered on FLSD Docket 04/25/2013   Page 136 of 281
March 11, 2019

1    introduced at the deposition of Che

2    Gang.  This is from a plaintiff's

3    home.  And we asked Mr. Che:  Is the

4    blue-and-white edge tape with

5    IMTGYPSUM the same as in this

6    paragraph?

7         Their Manufacturer Profile Form

8    identifies blue-and-white edge sealing

9    tape, IMTGYPSUM.

10        We have positive photo evidence

11   from a plaintiff's home, yet Mr. Che

12   says:  The information we still have

13   is incomplete.  And he can't make a

14   decision because he couldn't find or

15   discover this edge tape while he was

16   preparing for his deposition.

17        It's a little bit problematic

18   in that we did ask, as previously

19   stated, for the supporting material of

20   how they all came up with an MPF.  How

21   did you create this Manufacturer

22   Profile Form?  Where is the evidence

23   you used to support this Manufacturer

24   Profile Form?  That's not the first

25   time similar-type productions have

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 168 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/29/2019 Page 137 of 281
March 11, 2019

1          been asked in this litigation.

2               But again, we get this sales

3          plan notification that talks about

4          IMT Gypsum.  It talks about IMT Gypsum

5          tape.  It talks about not having

6          boards marked.  It talks about marking

7          boards with this attached marking, all

8          of which, when we get to the

9          plaintiff's photo, does match what's

10         represented on the profile form,

11         what's represented by Che that this

12         blue-and-white tape looks similar, but

13         because he couldn't find any

14         additional documents, he can't confirm

15         it.

16              This is another one of those

17         examples of the sword and shield sort

18         of thing we kind of have throughout

19         the litigation and throughout these

20         product ID buckets.

21              Plaintiffs present this

22         evidence, we get so far, we feel like

23         we've pushed the limit, and then all

24         of a sudden we get pushback, well, I

25         couldn't find it, though.  But you did

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 169 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 138 of 281
March 11, 2019

1        find the sales plan notification.

2            It says the same thing as your

3        Manufacturer Profile Form.  It's

4        matching what we're showing you on

5        this picture, but because you didn't

6        find this tape, which we also learned

7        isn't manufactured at Taishan's

8        facility, you're going to deny the

9        plaintiff's ID of this particular

10       bucket.

11           MS. EIKHOFF:  We should be at

12       slide 14, Ms. Lee.

13           So that presentation by

14       plaintiffs made it sound like Taishan

15       admitted on its Manufacturer Profile

16       Form that it made boards that looked

17       like the IMT Gypsum boards in this

18       category, and I want to make very

19       clear that that is not the case.

20           It is true that Taishan sold

21       boards with IMTGYPSUM on edge tape.

22       They have never denied that.  As a

23       matter of fact, they're the ones that

24       reported that.  And they reported it

25       in their Manufacturer Profile Form all

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 170 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2019 Page 139 of 281
March 11, 2019

```
 1          the way back in 2012 with specificity.
 2               And part of that specificity
 3          was that although those orders had
 4          IMTGYPSUM written on the edge tape,
 5          that what was sprayed on the side of
 6          the board was DRYWALL
 7          4feetX12feetX1/2inch.
 8               In the catalog that we are
 9          using to make these categorical
10          determinations, the photos that we
11          were required to admit or deny are
12          photos of the sides of boards with a
13          spray marking IMTGYPSUM.COM.  And
14          there is no evidence anywhere that
15          Taishan ever made any boards sprayed
16          IMTGYPSUM.COM on the side.
17               We did do some business with a
18          brand called IMT Gypsum, and I'm about
19          to show you, so did a lot of other
20          manufacturers and in quantities that
21          dwarf the business that Taishan did
22          for that brand.
23               Ms. Robertson also brought up
24          that the sales plan notifications, the
25          numbers of orders with IMT Gypsum tape
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 171 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2019 Page 140 of 281
March 11, 2019

1    are smaller than the numbers that they

2    reported on their MPF, and that's

3    easily explained.

4         Mr. Serpe explained that to you

5    this morning.  He showed you a slide

6    that said that instructions on how to

7    prepare tapes and how to prepare

8    boards was often done orally or by

9    phone, in various other ways.

10        And so it is to Taishan's

11   credit that this initial discovery

12   offering in the case reported far more

13   than the sales plan notifications that

14   exist to this day.

15        So what we will show you is

16   that the plaintiffs have not satisfied

17   their burden of proof that Taishan

18   made boards with the specific

19   IMTGYPSUM.COM spray marking, and

20   instead are asking you to fill those

21   evidentiary gaps; to just assume that

22   Taishan made it.  Because they did one

23   transaction that relates to the

24   IMT Gypsum brand, then you should

25   assume that every board that has that

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 172 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 141 of 281
March 11, 2019

1    brand on it was also made by Taishan,

2    even when that assumption is refuted

3    by the evidence in the case.

4            So one of the things that

5    you've been hearing all morning, and

6    Ms. Robertson talked about it when she

7    was talking about C&K, is that you had

8    distributors and brokers and buyers

9    trying to get as much drywall from

10   China as they could during this

11   shortage.

12           And so we talked about

13   suppliers who have testified in this

14   case who said they were buying from

15   Chenxiang and they were buying from

16   Taishan and they were buying from

17   other manufacturers.  And U.S.

18   shipping records bear that out, and

19   specifically bear it out for

20   IMT Gypsum.

21           So we have located U.S.

22   shipping records that IMT, the company

23   at issue here, purchased lots of

24   boards from multiple manufacturers in

25   2006 and brought them into the United

March 11, 2019

1      States, specifically brought them into

2      Florida.

3            And this transaction right

4      here, to Beijing Building Materials

5      Import, is reported on our MPF.  It's

6      the one with the IMT on the edge tape.

7      And the exporter listed on our MPF is

8      Beijing Building Materials.  So we can

9      line up this one shipment as probably

10     coming from Taishan.

11           But then you look at who else

12     IMT was buying from at this same time

13     and look at the quantities.  There's

14     two lines here for Pingyi Baier.  So

15     there's -- they ordered twice as much

16     from Baier as they did from Taishan.

17           And then you look at who else

18     shows up on this shipping record, and

19     guess who it is.  Chenxiang, the

20     manufacturer who used to be a

21     defendant here that plaintiffs want to

22     pretend never existed, the same one

23     that made C&K drywall.

24           And look at the volume.  IMT

25     ordered ten times as much drywall from

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 174 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2019 Page 143 of 281
March 11, 2019

1       Chenxiang as it did from Taishan, and

2       twice as much from Baier as it did

3       from Taishan.

4            But Taishan's the only

5       defendant here and the only one who

6       has submitted an MPF, and Taishan's

7       MPF says, yeah, here it is, we did

8       that transaction, and the spray

9       markings on the side didn't say

10      IMTGYPSUM.

11           Now, the shipping records show

12      that the lion's share of IMT board was

13      made by C&K.  We know because the

14      evidence shows that C&K is the brand

15      of Chenxiang.

16           C&K GYPSUM, the bottom two

17      pictures are C&K, the brand for

18      Chenxiang.  IMTGYPSUM, this is the

19      exemplar we have that you have to

20      decide did Taishan make it or not.

21           It is exact -- the word

22      "GYPSUM" in C&K's drywall and in IMT's

23      drywall is exactly the same.  Compare

24      the G, the Y, the P, the S, the U and

25      the M.

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 175 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 144 of 281
March 11, 2019

1        So what the evidence is showing

2     you is not some attenuated speculative

3     theory that Taishan says that it made

4     board with IMTGYPSUM on the side, on

5     the edge tape, but they misrepresented

6     what they sprayed on the side, and we

7     should just assume that IMTGYPSUM,

8     that they really sprayed it on the

9     side, you should just assume that

10     that's what they did.

11        So instead of that speculative

12     theory, what the evidence is showing

13     you is that most of IMT came from

14     Chenxiang, who made C&K boards; and

15     IMT boards and C&K boards are almost

16     exactly identical.  The word "GYPSUM"

17     is identical in the two boards.

18        So we do not believe that the

19     plaintiffs have put forth the greater

20     weight of the evidence that Taishan

21     made the boards with IMT sprayed on

22     the side.

23        MR. MONTOYA:  Brief rebuttal?

24        MS. ROBERTSON:  So counsel's

25     representation that there was one

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 176 of 344
Case 2:11-cv-22408-MCE Document 293 Interpreton 8/1/39 Docket 04/25/2019 Page 145 of
281
March 11, 2019

1    transaction by Taishan of IMT Gypsum

2    just doesn't quite follow the same

3    logic.

4         IMT Gypsum appears on several

5    different lines of their Manufacturer

6    Profile Form.  It also appears on

7    several different lines of the

8    statistical spreadsheet that we

9    recovered from the 2010 e-mail.

10        In addition to that, we have

11   the witness, corporate witness for

12   Taishan, testifying:  I believe the

13   Manufacturer Profile Form created by

14   Mr. Peng is correct, but it's possible

15   that it's not very accurate, did not

16   pay attention to small details.

17        You'll hear some more about

18   this later from my colleague when she

19   talks about some of the other buckets,

20   but in particular, Taishan's argument

21   today that while their Manufacturer

22   Profile Form was so careful, that it

23   was so precise that it clearly says on

24   the edge sealing tape and from the

25   beginning we had admitted we put IMT

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 177 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 146 of 281
March 11, 2019

```
1        on our sealing tape, but the product
2        marking, it doesn't have those same
3        words.
4             That is again a sword/shield
5        argument, because if we look -- and
6        it's not at issue here in Florida, but
7        DUN Drywall, which is admitted to by
8        Taishan on their Manufacturer Profile
9        Form, does not include the sprayed
10       marking and the product marking on
11       their Manufacturer Profile Form.
12            So we have a bunch of
13       inconsistencies that really are
14       occurring here of when it is to their
15       benefit to say, well, that's not what
16       we read on the Manufacturer Profile
17       Form, so your argument's wrong.  You
18       didn't get it.
19            But they'll admit some of these
20       other things, and DUN is a perfect
21       example.  No contest there.  No
22       contest.
23            The product marking column of
24       the Manufacturer Profile Form does not
25       match the markings that are found on
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 178 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2019 Page 147 of 281
March 11, 2019

```
 1          that board.  IMT should be looked at

 2          no differently.

 3                  MS. EIKHOFF:  Could I just make

 4          a point of clarification?  We did

 5          submit an errata that the word

 6          "accurate" in this quote was

 7          mistranslated, and when that same

 8          Chinese word was used every other

 9          instance in the deposition, it was

10          translated as "precise."

11                  And so on February 28th, we

12          provided to the PSC an errata signed

13          by Mr. Che, the witness, that noted

14          that translation error, and consistent

15          with the rest of the translation of

16          the deposition, that word should have

17          been translated as "precise."

18                  MS. ROBERTSON:  We haven't

19          really addressed any of the errata

20          between the parties.  They did in fact

21          submit it.  I'm not trying to mislead

22          the special master.  If they'd like it

23          read into the record that it's not

24          very precise, so be it.

25                  MS. EIKHOFF:  Thank you.
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 179 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2019 Page 148 of
281
March 11, 2019

```
1              SPECIAL MASTER LEE:  Before we
2         get to the next category, as we go
3         through the categories, are any of
4         those categories overlapping, meaning
5         is there a home that has drywall that
6         has several categories?
7              MS. ROBERTSON:  Yes.
8              SPECIAL MASTER LEE:  So it's
9         not all distinct?
10             MS. ROBERTSON:  Yes.
11             SPECIAL MASTER LEE:  So what's
12        next?
13             MS. ROBERTSON:  It will be
14        ProWall.  That will be slide 57.
15             Next bucket is ProWall.
16        ProWall gets into the weeds again.
17        Anybody who knows my experience with
18        this case, I live in the weeds.  It's
19        fair.
20             MS. EIKHOFF:  True.
21             MS. ROBERTSON:  We have
22        Taishan, Run & Fly Jinan,
23        Manchester Holdings, Inc., Stock
24        Building Supply Company -- Stock
25        Building Supply Inc., apologies.
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 180 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 149 of 281
March 11, 2019

```
 1              Our trace from Taishan to Stock
 2         Building Supply Inc., who built the
 3         homes in Florida, is that Taishan
 4         manufactured the drywall.  It was
 5         purchased by Run & Fly Jinan, which
 6         was a domestic Chinese company and
 7         exporter who sent the drywall from
 8         China to the United States through
 9         Manchester Holdings Inc., and
10         eventually purchased by Stock Building
11         Supply Inc., who built the plaintiffs'
12         homes.
13              Again, this document is another
14         one of those that was newly produced
15         to us in January of 2019, everything
16         except for the TG-PID-00079, which is
17         the Bates number, and the red circle
18         in the middle, that was how it was
19         produced to plaintiffs who received a
20         version that did not have the English
21         red lettering and a version that had
22         the English red lettering, which is
23         the translation of each of the various
24         parts of this invoice.
25              When we talked to Mr. Che about
```

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 181 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2019 Page 150 of 281
March 11, 2019

```
1        this invoice, we asked him why it
2        wasn't produced until now.  Where was
3        it from, what are we showing?  Because
4        Run & Fly Jinan is not a company that
5        is new to some of the arguments in
6        this litigation.
7             Mr. Che explained that this
8        type of invoice for Taishan is known
9        as a domestic invoice.  It's domestic
10       and they keep it -- it came from a
11       book or what appears to be sort of a
12       ledger book that has a carbon copy
13       that you flip through, write on one
14       page, flip to the next page, fill it
15       out, flip to the next page.  We only
16       received this one page as part of the
17       deposition production in 2019.
18            So why does it matter?  Why
19       were we all excited as plaintiffs when
20       we got this document?  We got this
21       document because, as I mentioned
22       earlier, Taishan to Run & Fly, Run &
23       Fly to Manchester Holdings.
24            We know from Manchester
25       Holdings' documents that they had a
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 182 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 151 of 281
March 11, 2019

1    packing list of drywall that came from

2    Run & Fly Jinan New Materials.  We

3    further know that Manchester sold that

4    drywall they purchased to Stock

5    Building Supply Inc.

6         Now, let's back up and see why

7    we care.  This is why we care.  The

8    volume here on the invoice produced by

9    Taishan is extremely important because

10   it is a precise number, 9,936 pieces,

11   which we can take to mean sheets, of

12   drywall.  If we take 598 plus 9338, we

13   get 9,936 pieces of drywall.

14        We have the Taishan invoice

15   going to Run & Fly.  Run & Fly

16   invoicing Manchester Holdings for the

17   same amount of gypsum board.

18        And then finally, coming in

19   through Georgia to Manchester-in-Home

20   and eventually to Stock Building

21   Supply, who built the homes, we have

22   this same 9,936 sheets of drywall,

23   country of origin is China.

24        Now, ProWall is another one of

25   those -- another one of these buckets

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 183 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/29/2013 Page 152 of 281
March 11, 2019

1          that we're going to hear about how

2          ProWall was manufactured by some other

3          folks and certainly not Taishan's, you

4          guys can't show it, and the like.

5              But again, we have traced this

6          distributor -- or the builder to the

7          distributor to the importer to the

8          maker for this drywall of 9,936

9          sheets.

10             Manchester asked where are we

11         getting this drywall?  Where is this

12         drywall coming from?  Who is your

13         manufacturer?  Let me know.

14             Manufacturer gets the response:

15         The full postal address of our gypsum

16         board manufacturer is as follows:

17         Headquarters, Shandong Taihe

18         Dongxin Co., Ltd.  That is the Taishan

19         that we've been talking about today.

20         That is the company that manufactured

21         the drywall that Manchester sold to

22         Stock Building Supply.

23             ProWall has markings that say

24         MADE IN CHINA MEETS ASTM with various

25         standards, with the C36 and the slash

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 184 of 344
Case 2:11-cv-22408-MCE-DEK Document 255-1 Filed on 04/25/2013 Docket 04/25/2013 Page 153 of 281
March 11, 2019

    1          C1396.  These are relatively clear

    2          markings in the homes.

    3                  So we have the plaintiff's

    4          home -- or the product ID catalog

    5          photo that shows that we have ProWall.

    6          The reason they're in this category

    7          specifically is the tape the Pro and

    8          the capital W for the Wall and the

    9          marking, all because we're able now in

   10          2019 to receive an invoice from

   11          Taishan that shows the 9,936 pieces of

   12          drywall.

   13                  Now, Taishan's corporate

   14          representative again did say the

   15          reason that this board did not make it

   16          to their Manufacturer Profile Form is

   17          because that is the type of invoice

   18          they use for domestic sales and

   19          therefore didn't make it to the

   20          Manufacturer Profile Form, and that's

   21          why we don't see Taishan ProWall on

   22          their Manufacturer Profile Form,

   23          because it isn't what they would call

   24          a VAT invoice, which is how they

   25          suggest they put together their

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 185 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 154 of
281
March 11, 2019

```
 1        Manufacturer Profile Form.

 2              But again, we don't have

 3        everything they used to support their

 4        Manufacturer Profile Form, so we're

 5        using the connection of Taishan to

 6        Run & Fly, Run & Fly Chinese domestic

 7        corporation shipped it to

 8        Manchester Holdings.

 9        Manchester Holdings sells it to Stock

10        Building Supply to build the homes

11        with the 9,936 sheets of drywall that

12        they purchased through the chain from

13        Taishan.

14              MS. EIKHOFF:  All right,

15        Ms. Lee, we are at slide 18.

16              So when I start talking to you

17        about the ProWall category, I want to

18        introduce to you a theme, and it's a

19        theme that we see throughout what the

20        plaintiffs have presented today, but

21        it's particularly pronounced in this

22        category.

23              And the theme is to just look

24        through a very small scope, something

25        that they say points to Taishan and
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 186 of 344
Case 2:14-cv-22408-MCE-EEF Document 253, Deposition Doc 04/25/2019 Page 155 of 281

March 11, 2019

1    ignore the rest of the story.  Ignore

2    that there are other manufacturers out

3    there, ignore that there are other

4    documents out there.

5         They present you with a single

6    transaction and they have a theory

7    that it somehow connects Taishan to

8    the boards at issue and say just look

9    at that, ignore other manufacturers,

10   just assume that Taishan made all of

11   this.

12        And in this case, it is

13   particularly pronounced because the

14   plaintiffs are not only saying that

15   Taishan made ProWall boards.  They are

16   also saying that BNBM made ProWall

17   boards, but not the ProWall

18   attributable to Taishan.

19        We have no idea what ProWall

20   they say is attributable to Taishan

21   versus attributable to BNBM, but I

22   will tell you that their theories of

23   attribution are mutually exclusive.

24   They're completely different stories.

25        And so in a few weeks, when you

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 187 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 156 of
281
March 11, 2019

```
1        hear their presentation attributing
2        ProWall to BNBM, there's not going to
3        be any mention of Manchester or any
4        mention of Jinan Run & Fly or Stock
5        Building Supply or any of these
6        documents that they've just shown you.
7             There's a whole different set
8        of documents and there will be a
9        different flowchart involving
10       different players and different
11       documents; Great Western Building
12       Materials, ProWall Building Products.
13            So before I get started, and we
14       will show you that we can identify and
15       have identified another manufacturer
16       that is responsible for the ProWall
17       boards that they've shown you, I would
18       submit to the special master that it
19       would not be appropriate for the
20       special master to make a decision
21       based on this set of evidence for
22       Taishan until she has also seen the
23       competing theory attributing it to
24       BNBM.  Because if you've already made
25       a decision as to Taishan and then
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 188 of 344
Case 2:11-cv-22408-MCE Document 253 Entered on FLSD Docket 04/25/2013 Page 157 of 281
March 11, 2019

1    you'll be presented with alternative

2    evidence attributing it to BNBM, the

3    special master will not have all of

4    the relevant evidence before her to

5    make this decision.

6         So I would ask that on this

7    particular category, because they're

8    attributing it under two different

9    theories to two different defendants,

10   that the special master reserve her

11   final ruling on this category.

12        I don't know why that's coming

13   up a little fuzzy, but the question

14   before the special master in this

15   category is:  Did Taishan make the

16   boards with these unique ProWall

17   markings?  These are what identify

18   these boards as ProWall, spray

19   markings that say ProWall GYPSUM BOARD

20   or end tape that says ProWall.  And I

21   don't know why that's coming up

22   pixillated on the screen, but I

23   believe on your copy it's clear.

24        Unlike their theory for

25   IMT Gypsum, where they say, oh, the

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 189 of 344
Case 2:11-cv-22408-MCE Deposition of Peter George Lecker 04/25/2019 Page 158 of
281
March 11, 2019

         1          word "IMT Gypsum" shows up somewhere

         2          on the MPF, so let's just assume

         3          anything with that word is Taishan's,

         4          the word "ProWall" shows up nowhere in

         5          Taishan's documents; not in any

         6          e-mails they've produced, not in any

         7          correspondence, not in the MPF,

         8          nowhere.  No connection whatsoever to

         9          ProWall.

        10              And so how have the plaintiffs

        11          come up with an explanation that would

        12          attribute ProWall to Taishan?  Well,

        13          once again, they're relying on

        14          speculation and gap-filling in trying

        15          to tie these products to Taishan

        16          through a common buyer.  And in this

        17          case the common buyer is Jinan Run &

        18          Fly.  That's the common buyer.

        19              But in this case, and I'm about

        20          to lay this out in a little more

        21          detail, the other manufacturer that is

        22          being ignored is Tai'an Kang Yi Jia, a

        23          competing drywall manufacturer also in

        24          Taian, the same area of Taishan's

        25          manufacturing facilities.

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 190 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2019 Page 159 of
281
March 11, 2019

 1              Now, plaintiff's theory of

 2         attribution rests on Taishan's single

 3         sale of blank board with unmarked

 4         white edge tape to Jinan Run & Fly.  I

 5         want to be clear, we do not dispute

 6         that that transaction occurred.

 7              So lining up the 9,936 on our

 8         invoice and the 9,936 on the other

 9         e-mails, we agree that there was a

10         Taishan transaction with Jinan Run &

11         Fly.  But the documents tell the rest

12         of the story.

13              So on the same e-mail at Tab 53

14         of the plaintiff's exhibit, where the

15         plaintiff circled this is the address

16         where it came from, that's true.  That

17         is the address where that shipment

18         came from.  If you look at page 3 of

19         4 -- I'm sorry, it's one of their

20         exhibits, but, yes, if you look at

21         page 3 of 4 of their Tab 53 document,

22         the e-mail talks about --

23              Yes, I'll show it to you, and

24         can I get my glasses so I can see it?

25         Thank you.

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 191 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 160 of 281
March 11, 2019

```
 1              And I'll show it to you,
 2       Ms. Lee.  In view this is going to be
 3       the first order we don't want to mess
 4       up, a trial order, quantity of 10,000
 5       sheets.  10,000 is approximately
 6       9,936.  They say where is it coming
 7       from.  They say it's coming from
 8       Taishan.
 9              Taishan did a blank unmarked
10       trial order for Jinan Run & Fly which
11       looks like it was going to be shipped
12       forward through Manchester and Stock
13       and eventually to ProWall.
14              But then what happened after
15       this very small trial order?  Mr. Che
16       testified that Jinan Run & Fly thought
17       that Taishan was too expensive and so
18       they turned to the competitor, Kang Yi
19       Jia.  Kang Yi Jia is also in the Taian
20       region.
21              And plaintiffs' counsel used to
22       have a document that they used as part
23       of their ProWall story that is a Jinan
24       Run & Fly production run from
25       May-June 2006 showing that someone
```

March 11, 2019

1       made 55,440 boards, and those boards,

2       that later bigger order, the nontrial

3       run order, that production run

4       specifies that those boards were on

5       steel pallets and had ProWall tapes.

6           So there was a subsequent order

7       specified with ProWall markings after

8       the initial trial run with Taishan,

9       which was the only run they ever did,

10      and those boards were blank.

11          Now, Taishan -- I'm sorry.

12      ProWall is apparently a building

13      materials company, and that part of

14      the story they're going to tell you

15      later when they unroll their theory

16      attributing these boards to BNBM.

17          But what happened in this case,

18      when you take off the myopic blinders

19      that just say I just want to look at

20      Taishan, what you see is a bigger

21      story, that there was an undisputed

22      trial run of blank boards by Taishan,

23      but that the rest of the order was

24      made by a competitor with ProWall

25      tapes, and therefore, we do not

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/10/19 Page 193 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/29/2019 Page 162 of 281
March 11, 2019

1          believe that this one transaction

2          translates into Taishan is the

3          manufacturer of everything with

4          ProWall markings on it.

5                    SPECIAL MASTER LEE:  Is the

6          e-mail that you showed me the same

7          e-mail that's on page 62 of their

8          PowerPoint?

9                    MS. EIKHOFF:  Yes, the one with

10         the address?  Yeah, it's the page 3 of

11         that same e-mail.

12                   MS. ROBERTSON:  Quickly, one

13         thing I do want to clear up real

14         quick.  We didn't remove any evidence

15         not represented in our brief.  I

16         believe it's at Tab 50 and it's the

17         stock defendant -- or Distributors

18         Profile Form.  I think that's what

19         you're referring to as far as that.

20                   To the extent you were

21         referring to something else, I

22         apologize.  I believe we just felt

23         that Tab 50 accomplished that.

24                   But nonetheless, the point is

25         this:  I'm not asking you to assume

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 194 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 163 of
281
March 11, 2019

```
 1              anything.  There's no reason to delay
 2              the ProWall bucket as it relates to
 3              Taishan.  This ProWall, this Florida
 4              ProWall has nothing to do with BNBM.
 5              BNBM doesn't -- it has no part in this
 6              discussion.
 7                   What I am asking -- what I am
 8              telling you is that it is clear with
 9              this number of this 9,936 pieces, as
10              we pop out here, we have ProWall
11              sheetrock and then 9,936.
12                   So as we've done so frequently
13              in this case throughout the years, we
14              have gone and pored through various
15              different records to piece together
16              the evidence to tie the drywall in
17              plaintiffs' homes to Taishan.
18                   This is a precise and specific
19              example of what you would do in a
20              products liability case to establish
21              the entire supply chain, and that was
22              done here for the 9,936 boards that we
23              find in Florida homes that have the
24              ProWall marking.
25                   My understanding is that this
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 195 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 164 of 281
March 11, 2019

1    ProWall with the capital W here, this

2    marking, this board from PID catalog

3    photo 44, is not going to come up in

4    the BNBM/ProWall argument at all.

5         We contend that this marking,

6    this language, this tape is Taishan.

7    This will not be discussed with BNBM.

8         SPECIAL MASTER LEE:  Can you

9    just go back to slide 60?

10        MS. ROBERTSON:  Yes.

11        SPECIAL MASTER LEE:  What is

12   the date on that packing list?

13        MS. ROBERTSON:  That's

14   March 23rd.

15        MR. SERPE:  It is March 23.

16        SPECIAL MASTER LEE:  Okay.  And

17   this is the packing list from Run &

18   Fly to Manchester Holdings?

19        MS. ROBERTSON:  Yes.

20        SPECIAL MASTER LEE:  So I guess

21   my question is:  Why is that packing

22   list dated before the one on 59?

23        MS. ROBERTSON:  This May 5 one?

24   And I think that's a very good

25   question.  I think what we often found

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 196 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 165 of 281
March 11, 2019

1    and that we see with a lot of the

2    other documents, whether it's the

3    statistical spreadsheet, the

4    Manufacturer Profile Form, the packing

5    list, the invoices, the export

6    materials, the dates do vary every

7    once in a while until everything goes

8    through.

9         I will definitely tell you,

10   Special Master, we did not talk to

11   Run & Fly Jinan.  We didn't.  So a

12   precise answer for you is probably

13   inappropriate for me to give.

14        But we do have varying dates

15   depending on whether it's a packing

16   list, an invoice, an export list.  And

17   these were the pieces we were able to

18   find and establish.

19        SPECIAL MASTER LEE:  So you

20   have varying dates even with other --

21   in other transactions, not just this

22   one?

23        MS. ROBERTSON:  Yes, correct.

24        SPECIAL MASTER LEE:  Okay.

25        MS. EIKHOFF:  If I may just

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 197 of 344
Case 2:11-cv-22408-MCE Document 255 Entered on FLSD Docket 04/25/2019 Page 166 of 281
March 11, 2019

1    state for the record that the document

2    that we were relying on for the 55,440

3    boards with ProWall tapes that we

4    referred to is in the Defendant

5    Taishan's appendix at 55.

6         MS. ROBERTSON:  I am going to

7    sit down, and I believe my colleague

8    is going to go, but I think maybe we

9    want to do a short break, if that's

10   possible.

11        SPECIAL MASTER LEE:  Sure.

12   Take five minutes.

13        (Recess taken, 1:35?p.m. to

14   1:42?p.m.)

15        MS. SCHWAB:  So as we discussed

16   earlier, this is a bucket that is

17   admitted.  We are going over this only

18   to discuss the markings that have been

19   found on boards with edge tape, and as

20   we alluded to earlier, edge tape, the

21   practice is for it to be removed.  So

22   it's very important that we review the

23   markings on the boards because most of

24   the time the edge tape is no longer

25   there.

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 198 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2019 Page 167 of 281
March 11, 2019

```
 1              So this is just to discuss
 2         how -- this is the edge tape.  I
 3         believe Ms. Eikhoff reviewed it
 4         earlier.  It's teal, it's Taihe.  I
 5         can't read Chinese characters but I
 6         will take the representation that it's
 7         the company's name.  And it is
 8         identified in the Manufacturer's
 9         Profile Form as Taishan edge sealing
10         tape.
11              This is a recap that Taishan
12         admits to this bucket, but because the
13         edge tape is removed, that's why it's
14         so important; that's why we are going
15         over this.  And any markings on boards
16         with edge tape, whether it's still
17         there in present day or whether it has
18         been removed, is critical and should
19         be admitted as well.
20              So this is a picture that
21         Taishan has admitted to the edge
22         sealing tape.  As you will see, I have
23         circled it in red.  That is admitted.
24              But what you also see is right
25         to the left of the beam is a date.  I
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 199 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/29/2013 Page 168 of
281
March 11, 2019

```
 1          believe that's 214491 is what it says.
 2          However, Taishan, in the deposition,
 3          Mr. Che Gang said -- and Taishan in
 4          its brief said:  The photo category
 5          includes additional numerical markings
 6          that are not consistent with Taishan's
 7          records.
 8               So if we had this marking
 9          without the Taishan tape, this would
10          be denied because it is not consistent
11          with Taishan's records.
12               However, because this claimant
13          was lucky and had the number, the
14          numerical marking and edge sealing
15          tape, it was admitted.  And there's a
16          few other examples like this.
17               Again, this is just a picture
18          with just the numbers, no marking.
19          This would be denied.  Here's another
20          one.  This is a better picture, and I
21          will represent to you that this photo
22          on the bottom of the edge tape, which
23          is the top of the Taihe edge tape, was
24          found on the same board, but to get a
25          better picture, I broke it into two
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 200 of 344
Case 2:14-cv-22408-MCE-EEF Document 295 Printed on FileStoke/04/25/2013 Page 169 of
281
March 11, 2019

1        pictures, but this is the same board.
2             And this is admitted because
3        the plaintiff was lucky and had the
4        Taihe tape as well as the numerical
5        marking.
6             But again, it's Taishan's
7        position that they did not manufacture
8        boards with numerical markings.  So
9        unless the claimant had Taihe edge
10       tape, that would be denied.
11            So that is all that I want to
12       say about that category, if you want
13       to respond.  Keep going?
14            SPECIAL MASTER LEE:  I have a
15       question:  The numbers, what do the
16       numbers represent?  Are they lot
17       numbers or something else?
18            MS. SCHWAB:  I believe that we
19       call them batch numbers.  We don't
20       know.  We call them batch numbers, and
21       I believe my colleague would like to
22       respond.
23            MS. ROBERTSON:  Quickly, we
24       have one document that was part of the
25       sales plan notification bundle that's

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 201 of 344
Case 2:11-cv-22408-MCC Document 293-2 Entered on FLSD Docket 04/25/2013 Page 170 of 281
March 11, 2019

1        at Tab 15 to our PID brief -- wait, I

2        apologize, it was a -- we have a

3        notification of collaboration of

4        drywall.  We attached this to our

5        brief.

6               And it's a one-sheet paper

7        where Taishan is essentially

8        subcontracting or outsourcing some of

9        its manufacture of drywall, and the

10       specific requirement, like we saw that

11       one thing says specific requirement,

12       that one document shows the specific

13       requirement was to have a work shift

14       stamp on the board.

15              So that's really the only piece

16       that we have that explains this date,

17       time and some particular number.  I

18       think there was potentially one other

19       piece of evidence.  I'll look up both

20       for you, Special Master, so you have

21       it.  I'll also give it to the

22       defendants, to the extent it's not in

23       our brief, but I'm pretty sure it is,

24       that potentially the other numbers

25       could have been a sheet number, but I

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 202 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 171 of
281

March 11, 2019

```
1        think after giving that -- seeing the
2        document, we thought it was a work
3        shift time stamp.
4               And we'll provide those to both
5        sides, but I think you know what I'm
6        talking about.
7               MS. EIKHOFF:  Yeah.  And I will
8        be happy to respond on this.  We did
9        not expect this to be a topic for
10       today, but I'll be happy to state
11       Taishan's position on it for the
12       record.
13              Taishan, as I said at the
14       outset, does admit and has admitted to
15       the category that is Taihe edge tape
16       with its unique brand, with its --
17       with its name on it and its unique
18       markings on it.  That is not in
19       dispute.
20              And so when the plaintiffs say,
21       oh, but if there's just numbers on a
22       board without the tape, then they're
23       not admitting it.  That's right.
24       Because if you just show a board with
25       numbers on it, there's nothing from
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 303 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 172 of 281
March 11, 2019

1          that picture that can positively

2          identify that as Taishan's product.

3                    And as we've been saying all

4          day today, Taishan was not the only

5          manufacturer in this space and other

6          manufacturers could just as easily

7          make drywall board with numbers on it.

8                    So if there is Taishan's unique

9          branding indicia, then yes, it is a

10         category that we've admitted.  It is

11         not a surprise that if there's not

12         Taishan's unique branding indicia that

13         we're not admitting it.

14                   We're not just admitting that

15         any board they show that has numbers

16         on it is Taishan's board.

17                   And my colleague,

18         Mr. Venderbush, is going to be talking

19         more about this whole category that

20         we're about to move into of generics,

21         where there are generic markings like

22         numbers, like MADE IN CHINA stamps on

23         boards that we cannot be in a position

24         to say that we admit all of them are

25         ours, because they aren't all ours.

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 204 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 173 of
281
March 11, 2019

```
 1          MS. ROBERTSON:  So quickly,
 2     Special Master, apologies.  It's
 3     Tab 34 to our PID brief.  The title of
 4     the document is Notification of
 5     Collaborative Processing.  It was
 6     produced by Taishan at TG0211714.
 7          MS. SCHWAB:  And, Your Honor, I
 8     just want to make one note.
 9     Ms. Eikhoff said anybody can produce
10     these -- these boards with just
11     numbers without the edge tape.  So
12     without the edge tape, their position
13     would be that they would deny it.
14          I think that this is a good
15     representation of where the tape is on
16     the board.  It's on the side that's
17     perpendicular to the markings, and so
18     if the marking is in the middle of the
19     board, the chances that you get the
20     tape and the marking are slim to none.
21          So unless you have a photo of
22     the entire board -- unless you have a
23     photo of the entire board, which would
24     only be if the claimant remediated and
25     took out the walls or was willing to
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 305 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 174 of
281
March 11, 2019

1    have their entire home destructed,

2    then you wouldn't get this entire

3    picture.

4         So chances are you would get a

5    bore scope hole, which is just a small

6    hole and a camera can go up the small

7    hole inside the wall cavity and you'd

8    just get the numbers and not the edge

9    tape.

10        So the next category is MADE IN

11   CHINA MEETS OR EXCEEDS.  And the

12   reason why the S's are in brackets

13   will be explained as we go through

14   this bucket.

15        So to begin, Taishan in its

16   Manufacturer Profile Form admits to

17   manufacturing 482,435 sheets of

18   drywall with MADE IN CHINA MEET OR

19   EXCEED ASTM C1396 04 standard

20   markings.

21        Now, it's important to note

22   that it just says MEET OR EXCEED.

23   Both of them are singular.  And also

24   with white edge sealing tape.

25        Taishan also admits to

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 306 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 175 of
281
March 11, 2019

1    manufacturing 244,120 sheets with the

2    same MADE IN CHINA MEET OR EXCEED,

3    singular, with Taishan edge sealing

4    tape.  That's the Taihe teal tape that

5    we looked at earlier.

6         So there are, in this bucket, I

7    will call it, four different font

8    variations.  The first one -- this

9    picture looks a little grainy, but

10   it's like triple dot.  The second one

11   is single dot.  The third one is --

12   it's not really dotted at all.  And

13   the last one, again, not dotted, but

14   it's -- the font differences, you can

15   see in the A primarily and the D.

16        So let's look at the first one

17   that's number 15.  So this is a better

18   picture that you can see.  It's a

19   triple dot, is what I will call it.

20   And Taishan, in their position paper,

21   says they do not -- they do not deny

22   that products -- that boards with this

23   marking is theirs.  So that takes care

24   of the first font variation.

25        The second font variation,

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 207 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 176 of 281
March 11, 2019

1    these are the residual boards that

2    Your Honor asked about earlier that

3    were found in 2018, and there are two

4    variations.  The first one is MADE IN

5    CHINA MEET OR EXCEEDS ASTM.  The

6    second one is MADE IN CHINA MEET OR

7    EXCEEDS, again, ASTM.  Both of the

8    MEET is singular, and both of the

9    EXCEEDS is plural.

10        The difference is in the font.

11    It's very minuscule, but they are

12    different.  And as you will see, the

13    top one takes care of the second

14    marking for font variations, and the

15    bottom one takes care of the font

16    variation at the third entry right

17    there, so we can check off both of

18    those font variations.

19        Now, the last one, Taishan has

20    not admitted and did not find any

21    residual boards.  However, we found

22    this board in one of the claimants'

23    homes in Florida who has remediated.

24    And as you'll see, it's the same

25    marking with the pointed A and it's

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 208 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 177 of 281
March 11, 2019

1          MADE IN CHINA dot.  There's not a

2          space in between CHINA and MEETS.  But

3          as you'll see on the right-hand side,

4          the Taihe edge tape.  There's some

5          other Taihe edge tape, you can see

6          some above, but I have it circled

7          right here; and which is important

8          because -- we will review this in a

9          second, but for right now I will just

10         note that the font for this, we had

11         the Taihe edge tape, and that font,

12         Taishan would have admitted this

13         because of the Taihe edge tape;

14         however, if the edge tape was not

15         present, then it would have been

16         denied.

17              But I would represent to you,

18         Your Honor, that this -- that this

19         photo shows that they also

20         manufactured boards with this type of

21         font, so we can put a check on the

22         last one.

23              Now, this is a good

24         side-by-side comparison because at the

25         catalog which is at Tab 3 to the

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 209 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 178 of 281
March 11, 2019

1    plaintiff's product ID brief, photo 20

2    and photo 21 look nearly identical.

3    The only difference is that Taishan

4    has admitted to photo 20, but has

5    denied photo 21.

6         And why is that?  It's because

7    this is MEETS, plural, and the top,

8    photo 20 is MEET, singular.

9         Same thing for 17 and 18.

10    Identical font, identical words,

11    except for the top one is singular,

12    Taishan has admitted to it.  The MEET

13    is singular, and the bottom one,

14    Taishan has denied because it's MEETS,

15    plural.

16         Now, Your Honor, I would remind

17    you that the Manufacturer Profile Form

18    says MEET OR EXCEED, both singular.

19    Nowhere does it say MEET OR EXCEEDS,

20    plural.  It's only until the residual

21    boards were found in 2018 that Taishan

22    started to admit these boards.

23         They -- back in 2011, they

24    claimed that they had insufficient

25    evidence to admit or deny that they

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 210 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 179 of
281
March 11, 2019

1          manufactured these boards, but in

2          2018, whenever they were found with

3          the MEET OR EXCEEDS, plural, they were

4          now admitted to.

5              And I'd just like to point one

6          other thing out for this picture that

7          we saw earlier.  Again, edge tape,

8          different kind of font that's found at

9          photo 19 of the catalog.  There's

10         MEETS, MEETS OR EXCEEDS.  Both

11         MEETS -- both plural, which Taishan

12         claims they did not manufacture any

13         boards with MEETS, plural.  And also,

14         this is a date stamp or work shift

15         number also on this board.

16             Mr. Che Gang was asked in his

17         deposition -- we saw this slide

18         earlier -- about whether -- which is

19         correct.  You found the residual

20         boards in 2018 that say MEET OR

21         EXCEEDS plural, but the Manufacturer

22         Profile Form says MEET OR EXCEED, both

23         singular.  Which one is correct?  You

24         can't have it both ways.

25             And his response, and I will

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 211 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 180 of 281
March 11, 2019

1   read it as Ms. Eikhoff alluded to

2   earlier with the errata, says:  I

3   believe the Manufacturer Profile Form

4   created by Mr. Peng is correct, but

5   it's possible that it's not very

6   precise.  It did not pay attention to

7   small details such as the changes

8   between plural and singular forms.

9        And this is unfortunate because

10  this is such a big issue in the

11  plaintiffs' homes because a lot of

12  plaintiffs in Florida have variations

13  of drywall, and we don't have the

14  information from the printers from

15  Taishan, we don't have the records, we

16  don't have any of that.

17       So if we can't rely on the

18  Manufacturer Profile Form and can only

19  rely on Taishan's residual boards that

20  they luckily found, our hands are

21  tied.

22       So we believe that we have put

23  forth enough to show that Taishan

24  manufactured boards with MEETS OR

25  EXCEEDS, MEET OR EXCEEDS, and all of

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 212 of 344
Case 2:11-cv-22408-MCC Document 253-1 Entered on FLSD Docket 04/25/2013 Page 181 of
281
March 11, 2019

1          the four font variations.

2                    MR. VENDERBUSH:  So I think

3          we're going to slide 23.  So now we're

4          into the first of the two generic

5          categories, and I just want to reframe

6          the table that we're looking at

7          specific categories here, and we have

8          admitted to this where we found the

9          residual boards in our factory, so we

10         know that we made those, but these

11         other ones are different.

12                   And given what you've heard

13         today and given what we know about the

14         market conditions in this time and

15         other manufacturers were out there and

16         other manufacturers were making boards

17         and other manufacturers were making

18         generic boards, that it does not

19         automatically flow that every board

20         with a generic marking was

21         fortuitously made by the only

22         manufacturer that plaintiffs continue

23         to pursue in this litigation when they

24         named other manufacturers and chose

25         not to pursue them.

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 313 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 182 of 281
March 11, 2019

```
 1              That's what they are asking you
 2         to presume, that they're all made by
 3         Taishan because we're the only ones
 4         here before you, and that doesn't
 5         logically flow.
 6              So it's not about a
 7         presumption.  It's about -- I'll just
 8         touch on their legal burden again --
 9         that plaintiffs have to prove each of
10         the markings that we're talking about.
11         It's not just an, oh, MADE IN CHINA,
12         throw it all to Taishan.
13              My understanding, the special
14         master has to make a determination as
15         to each of the catalog pictures that
16         the parties have agreed to and make a
17         specific finding that plaintiffs have
18         met their burden of proof to tie that
19         specific finding, one by one, to
20         Taishan.
21              And some of the pictures that
22         they've showed you today from specific
23         claimants' houses then also show how
24         important it is that we're going to
25         have another step that's claim
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 214 of 344
Case 2:14-cv-22408-MCE-DEK Document 293 Entered on FLSD Docket 04/25/2014 Page 183 of 281
March 11, 2019

1    specific to say what is it that that

2    picture shows?  Does it show enough?

3    Because we've seen that we then have

4    issues about what is the level of

5    claim-specific proof to tie any

6    claimant to a category that you found

7    to be sufficient or that Taishan has

8    admitted to.

9          So we think that is going to be

10   a step in this process when we get

11   down to a claim-specific objection

12   level in the future.

13         So I ask the special master to

14   require them to have the greater

15   weight of the evidence, not just to

16   make a presumption because they're

17   claiming that there are proof

18   problems.

19          And so here's where it's

20   important to go back to the myth of

21   only the two manufacturers.  And we've

22   showed you this chart before, that we

23   were at, at most, 30% of this market.

24   And remember, this is -- the equities

25   here have been a little skewed so far,

March 11, 2019

```
1          because we have admitted when we found

2          the residual board, and even before

3          that in the MPF, back in 2011.  It's

4          not that we were denying that we made

5          board with some generic mark.

6               We said that we did make some

7          board with generic mark, and that was

8          the question presented to us by

9          Judge Fallon as the MPF exercise.  But

10         consistent with our understanding of

11         the market was that we hadn't made

12         every board with generic mark.

13              So that was the distinction we

14         were trying to draw in our MPF and

15         which we are still trying to draw to

16         this day, that it is not a binary

17         choice between did Taishan make all

18         generic board, did Taishan not make

19         all generic board.

20              We have accepted responsibility

21         for 128 of the 266 claims in the

22         generic board super-category that has

23         five subcategories that you have to

24         make five separate -- or not only --

25              MS. EIKHOFF:  Four.
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 216 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 185 of 281
March 11, 2019

```
 1              MR. VENDERBUSH:  -- four now.

 2          So the plaintiffs have ignored

 3      all the other manufacturers when they

 4      give you their presentation.  They

 5      sued those manufacturers and they

 6      didn't pursue them, and so we don't

 7      have the discovery on what -- on what

 8      their boards would have looked like.

 9          And I want to suggest that it

10      makes sense -- it makes more sense

11      that Taishan did not make every

12      generic board that is in Florida, that

13      it makes much more sense, if you're

14      going to make a presumption, that

15      Taishan did not make every board

16      that's in Florida.

17          Because you've heard people

18      touch on it at the time -- or today,

19      but at the time, this was an

20      incredibly chaotic market and time

21      because for the -- there was a huge

22      drywall shortage.  People for the

23      first time were trying to source

24      drywall from other places, and it was

25      almost like drug dealing, right?  A
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 217 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/29/2013 Page 186 of 281
March 11, 2019

1    guy heard about a guy who could get

2    you some drywall from China and I need

3    some drywall.

4         So people were scurrying

5    around, and you've gotten a sense of

6    that in the documents today.  Hey, I'm

7    sending you this random e-mail, and

8    maybe we documented it, maybe we

9    haven't, and so where can I find some

10   drywall?

11        And so people were asking --

12   and this was not a market that had

13   been put together before.  People were

14   making it up as they were going along,

15   and Taishan was making it up as it was

16   going along too because they had not

17   been in the export to America market

18   before this, which explains many of

19   the practices you've heard today.

20        This was new territory for

21   Taishan, and Taishan now doesn't sell

22   to the United States.  This was a

23   finite period in 2006 to 2007 that

24   Taishan, because of market conditions,

25   was drawn into the United States

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 218 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 187 of 281
March 11, 2019

1          market.

2                 And so that is why they didn't

3          have a manual for foreign sales,

4          because they had never done it before.

5          But now suddenly people were

6          clambering.  And you saw -- you know,

7          IMT went to all the different people

8          in China to try to get some drywall

9          because we're -- it's a housing boom

10         and we're repairing from all the

11         hurricanes.  We can make money if we

12         can get some drywall.  And so that's

13         what's happening here.

14                And the shipping -- so the

15         shipping records show it.  We've also

16         cited you to the Devon Trading Company

17         testimony where the Devon

18         representative states that customers

19         were specifically requesting generic

20         markings.

21                Do you have that cite there?

22                MS. EIKHOFF:  There's a lot of

23         different record citations, but they

24         are all laid out on pages 39 and 40 of

25         our PID brief.

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 219 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 188 of
281
March 11, 2019

1          MR. VENDERBUSH:  Thank you.

2          So that's really important,

3     that this was a mark that -- because

4     people were getting drywall from

5     sources that they had never gotten it

6     before, because you have the

7     manufacturer.  Then you have these

8     brokers and importers who are getting

9     the drywall, and then they sell to

10    their customers, who are usually the

11    suppliers.

12         So they want to have something

13    that they can represent, right?  They

14    don't want to have Chinese characters

15    over all of it, they don't want to

16    have Chinese names.  So this generic

17    marking that meets minimum standards

18    for them that says MADE IN CHINA, that

19    says that it meets or exceeds the ASTM

20    American standard, that would be good

21    for them.

22         And they asked for that, and so

23    that's what they could sell to

24    suppliers.  Because it wasn't going to

25    say U.S. Gypsum on it, which was, you

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 220 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 189 of
281
March 11, 2019

```
1        know, the usual domestic companies

2        that brokers would sell to suppliers.

3        It was new, and so it's this generic

4        product.  You wanted drywall?  I've

5        got drywall for you.

6               So that's where this generic

7        market comes from, and so importers

8        were asking different people to --

9        different manufacturers in China to

10       make it that way so they could resell

11       it, and those are the examples that

12       are on those, 38 and 39.

13              So they're making a big deal

14       out of the MPF, whether it has --

15       where we said MEET OR EXCEED, and that

16       that somehow proves or disproves

17       something.  It sort of gets used both

18       ways.

19              But I just want to sort of take

20       the attention off of that, because

21       when Mr. Che testified that -- this is

22       a discussion between accurate and

23       precise.

24              And I think it's when Mr. Peng

25       put that together, these are peoples
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 221 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 190 of
281
March 11, 2019

1    who are native Chinese speakers, and

2    they're being asked to fill out

3    American documents, and so the sort of

4    variation is understandable, really.

5         So -- and actually, the

6    plaintiffs themselves mention it.

7    It's footnote 208 in their brief,

8    which is on page 46.  And they say

9    it's not a stretch that a Chinese

10   manufacturer operating in a foreign

11   language would make a grammatical

12   error.

13        So it's -- the MPF is not that

14   it included an S or it doesn't include

15   an S.  We relied on what we saw in our

16   board, right, the board that we found

17   in our factory.  And so that had the

18   MEET OR EXCEEDS, and that's what we

19   based our admission on.

20        So I want to close with the

21   idea that we do not presume that every

22   single MADE IN CHINA is Taishan just

23   because some of them were admitted.

24   But look at each picture and see if

25   the greater weight proves it because

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 222 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 191 of 281
March 11, 2019

1        there were other manufacturers in this

2        area.

3              MS. SCHWAB:  Ms. Lee, if you

4        can go to slide 80, please.

5              SPECIAL MASTER LEE:

6        Eight-zero?

7              MS. SCHWAB:  Eight-zero.

8              Very briefly, I just want to

9        touch on a few points that

10       Mr. Venderbush made.

11             There's three boards or three

12       photos that Taishan denies in this

13       category.  The first one is photo 21,

14       and as you'll see, it's not just a

15       generic, as Taishan calls it.  The

16       similarities are -- they're nearly

17       identical.

18             The top one and the bottom one,

19       same font, same lettering, same

20       spacing, same everything.  The only

21       difference, as we looked at before, is

22       the S.

23             Another one Taishan denies is

24       photo 18.  This is the second one,

25       MADE IN CHINA MEET OR EXCEEDS, top one

Case 2:09-md-02047-EEF-MBN   Document 22363-39   Filed 11/19/19   Page 323 of 344
Case 1:11-cv-22408-MGC   Document 253   Entered on FLSD Docket 04/25/2013   Page 192 of
281
March 11, 2019

```
 1          they accept.  The bottom one they deny

 2          because MEETS is plural.

 3               Finally, the third one that

 4          they denied is because -- it's photo

 5          19 -- is because it says MADE IN CHINA

 6          MEETS, plural.  And they say that they

 7          didn't find any residual boards with

 8          MEETS, plural, and so they -- it's

 9          their -- they don't believe that

10          Taishan manufactured boards with

11          MEETS, plural.

12               However, the Taishan edge tape

13          on the right, also the date stamp and

14          the MEETS.  That's the third category

15          that they deny.

16               So we feel that we have met our

17          burden of persuasion to -- that all

18          three of these markings, 18, 19 and

19          21, are Taishan products.

20               SPECIAL MASTER LEE:  So

21          Defendants, can you just address photo

22          19?  Like what is your position on

23          that one?

24               MS. EIKHOFF:  Do you want me

25          to?
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 224 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 193 of
281
March 11, 2019

```
 1              MR. VENDERBUSH:  Go ahead.

 2              MS. EIKHOFF:  Photo 19 has

 3        MEETS with an S, and there are no

 4        records at Taishan of any -- of ever

 5        us manufacturing boards with an S at

 6        the end of MEETS.

 7              The evidence that we have and

 8        what we have accepted responsibility

 9        for are boards that say MEET OR

10        EXCEEDS.

11              I just want to take an

12        opportunity, and I don't think that

13        you'll disagree with me on this, that

14        when you have on your presentation PID

15        Catalog Photo 19, those are actually

16        not the photos from the catalog.

17              MS. SCHWAB:  Right.  This is

18        just a photo, an exemplar of photo 19.

19              MS. EIKHOFF:  Right.  So --

20              MR. VENDERBUSH:  According to

21        you.

22              MS. SCHWAB:  According?

23              MR. VENDERBUSH:  To you.

24              MS. SCHWAB:  Okay.  If you

25        classify this differently --
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 225 of 344
Case 1:11-cv-22408-MGC Document 295 Entered on FLSD Docket 04/25/2013 Page 194 of 281
March 11, 2019

```
 1              MR. VENDERBUSH:  We don't know.
 2         This is the first we're seeing it.
 3              MS. EIKHOFF:  Yeah.  So I just
 4         want to just make clear that when
 5         Taishan was stating its positions for
 6         the court, it was stating them on the
 7         basis of the PID photo catalog and the
 8         photos in that catalog.
 9              So I just want to -- since that
10         says PID Catalog Photo 19, it is
11         another photo from a claim file that
12         you guys have attributed to category
13         photo 19.
14              MS. SCHWAB:  Right.  And, you
15         know, and I'll represent to you that
16         photo 19 says MADE IN CHINA.MEETS, and
17         it's the same font that's in this
18         photo.  This is just a photo that we
19         came across that we are using because
20         we think that it's a better picture
21         because it gives the full board.
22              SPECIAL MASTER LEE:  Does the
23         catalog photo have the tape?
24              MS. SCHWAB:  It does not.
25              MS. EIKHOFF:  No.  And
```

March 11, 2019

```
 1          actually, here's -- that's photo 19

 2          from the catalog, if you want to just

 3          see.

 4              SPECIAL MASTER LEE:  Okay.

 5              MS. SCHWAB:  And one final

 6          comment, Your Honor.  I would just

 7          like to note that I understand that

 8          Ms. Eikhoff's position is they haven't

 9          come across any records that they

10          manufactured boards with MEETS,

11          plural.  However, in light of the

12          Manufacturer Profile Form, only having

13          MEET OR EXCEEDS singular, and Mr. Che

14          Gang's testimony that it was not

15          necessarily precise with regards to

16          singular or plural, I think that --

17          I'm belaboring the point, but I will

18          move on.

19              So Category J, which is drywall

20          with dimensions.  So again, in

21          Taishan's Manufacturing Profile Form,

22          they admit to manufacturing 203,130

23          sheets of drywall with white edge

24          tape -- with white edge sealing tape

25          without words printed thereon and
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 227 of 344
Case 2:11-cv-22408-MCE-DEK Document 253-1 Filed 04/25/2013 Page 196 of 281
March 11, 2019

1    product markings DRYWALL, all caps,

2    4feetX12feetX1/2inch.

3           Now, as Your Honor is likely

4    aware by now, that is the size of the

5    American size of gypsum board.

6           So this is actually the photo

7    from the catalog, photo number 2, and

8    this is the only drywall with

9    dimensions marking that Taishan admits

10   in this bucket.

11          In Mr. Che Gang's deposition in

12   2019, his position was Taishan does

13   not deny the possibility that 2 is a

14   product of Taishan as a possibility.

15          In Taishan's brief, they say:

16   Taishan's litigation position to

17   accept responsibility for the markings

18   in photo 2 relied on its similarities

19   in font and print style to the MADE IN

20   CHINA exemplars it found.

21          That's at page 44 in Taishan's

22   brief.

23          So it's talking about this W,

24   and that's what Mr. Che Gang

25   explained, that they found some other

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 228 of 344
Case 2:11-cv-22408-MCE Document 293 Entered on FLSD Docket 04/29/2013 Page 197 of 281
March 11, 2019

```
1      residual board in 2018 that had a

2      similar W, so because of the

3      similarities in the W with the drywall

4      with dimensions, they are accepting

5      this vari- -- this font variation.

6            Again, this is the same sword

7      and shield argument.  At one point

8      they want to say, oh, the fonts are

9      similar, and so they will accept it.

10     But whenever the fonts are -- whenever

11     other fonts are similar, like the

12     GYPSUM in C&K and the GYPSUM in

13     another marking, the Taishan sealing

14     board, they don't want to acknowledge

15     it and say, no, just because fonts are

16     similar, it doesn't mean that they're

17     both our product.

18           But here, they relied

19     exclusively on the similarities in the

20     W to accept this marking variation.

21           So this is photo number 2 from

22     the catalog, and this is photo

23     number 9 from the catalog, and I tried

24     to blow it up so I see that it's kind

25     of pixillated, but this is at Tab 3 to
```

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 229 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 198 of 281
March 11, 2019

1          plaintiff's product ID brief, and

2          there are better pictures.

3                  So number 2, Taishan admits

4          responsibility.  So you have drywall

5          with dimensions.  And as you'll see,

6          this is a big Y.  The D is capitalized

7          and the Y is capitalized, and that's

8          very important because the DRYWALL

9          4feetX12feetX1/2inch that is indicated

10         in the Manufacturer Profile Form that

11         Taishan admits to manufacturing, all

12         of the DRYWALL is capitalized.  Here,

13         just the D and just the Y is

14         capitalized.  So Taishan admits to

15         manufacturing this.

16                 However, at page 19 of the

17         catalog, again, big Y, big D, Taishan

18         says, no, this isn't ours because we

19         didn't make -- the numerical markings

20         are not consistent with Taishan's

21         records.  They didn't manufacture

22         this.  So they said even though the Y

23         is similar, even though both of these

24         look nearly identical, this isn't one

25         of ours.

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 230 of 344
Case 2:11-cv-22408-MCE-E Document 253 Interrogatory 191 Docket 04/25/2013 Page 199 of 281
March 11, 2019

```
 1              Again, Mr. Che Gang was shown
 2       this picture -- this is found at photo
 3       5 in the catalog -- and was asked what
 4       did Taishan rely on to deny this
 5       marking?
 6              Mr. Che Gang's testimony was:
 7       Based on my years of experience in the
 8       gypsum board industry, the marking on
 9       page 5 is not a sprayed marking, but
10       rather a painted marking.
11              Now, that was discussed
12       earlier, the difference between a
13       spray marking and a painted marking
14       and the numerous font variations.
15              However, whenever this photo
16       was shown to Mr. Che Gang, which was
17       from Taishan's own production -- and
18       this makes it look like that it's
19       really grainy.  It's not that grainy,
20       but be that as it may, same font
21       variations, same type of writing --
22       was asked:  Is this the same marking
23       that's found at photo 5?
24              Mr. Che Gang's response was:
25       There's some similarities of fonts,
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 231 of 344
Case 2:12-cv-22408-MCR-CJK Document 253, March 11, 2019 PageID #2931 Page 200 of 281
March 11, 2019

1    but because the picture is in black

2    and white, you cannot see whether or

3    not it is injected by needle sprayer.

4    In addition to that, this set of

5    pictures cannot prove that the

6    products are from Taishan.

7         Now, this will come up and will

8    be discussed, but we would love to

9    have better quality photos.  We would

10   love to have photos that aren't in

11   black and white.  We would love to

12   have color photos.  But this is what

13   we were given.  We've asked for better

14   quality, we've asked for color photos

15   and have been told that this is the

16   best that we can do.

17        So even though the similarities

18   are striking, he said that there's

19   some similarities, but because of the

20   quality, he can't accept that.  And

21   that's why this marking was denied by

22   Taishan.

23        So this is a photo from

24   Venture, and I put this in here only

25   to show that this is also a painted

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 232 of 344
Case 2:11-cv-22408-MCE Document 253 Entered on FLSD Docket 04/25/2013 Page 201 of 281
March 11, 2019

1    marking.  And what's Taishan's

2    position here?  They accept this

3    Venture marking.

4         So if we go to the next slide,

5    I just show this to again show the

6    work shift number, work shift stamp I

7    think is what the correct term is.

8         Again, big Y that Taishan has

9    admitted to whenever it's followed by

10   or preceded by dimensions.  But if

11   it's with a date and work shift

12   number, what do they do?  They deny

13   the top one, but the bottom one, which

14   is Venture Supply, and we looked at

15   all of the different variations, the

16   bottom one is admitted.

17        And Mr. Venderbush said earlier

18   that anybody can stamp these numbers

19   and these dates and the time on their

20   boards.  But I would submit that the

21   fonts in these two photos are very --

22   are very similar.  I think that's

23   important because, again, whenever

24   it's beneficial to Taishan, they say

25   look at the similarities, we'll admit

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 233 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 202 of
281
March 11, 2019

1          that.  Whenever -- and then in other

2          situations when it's similar, they

3          won't take the same position.

4               Now, Your Honor, there are some

5          other markings for drywall with

6          dimensions that I have not gone over.

7          Those can be found at 6, 7, 8 and 10

8          of the catalog.  And I would submit

9          that because of all of the variations

10         in Taishan's position, that the reason

11         why they accepted just this one was

12         because of the similarity in the W

13         and, in contrast with the Manufacturer

14         Profile Form, where all of the letters

15         were in caps, that -- and this is

16         outlined in the brief, in the

17         variations in all of them, that

18         there's no way, because we weren't

19         lucky to find any residual boards for

20         any of these markings, that all of

21         them should be attributed to Taishan.

22               MS. EIKHOFF:  We should be at

23         slide 28.

24               MR. VENDERBUSH:  Thank you.

25               So here in drywall with

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 234 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 203 of 281
March 11, 2019

1 dimensions, the plaintiffs begin to do

2 what they should be doing, which is --

3 which as I suggested in the last

4 category, which is to bring to you

5 their proof for each category.

6    And we heard about

7 subcategory 9 and we heard about

8 subcategory 5, and at the end,

9 Ms. Schwab said she didn't touch on 6,

10 7, 8 and 10.

11    So the fact that they have some

12 proof for 9 and some proof for 5

13 doesn't mean that then you just roll

14 all the cards over and put it all to

15 Taishan, that there is a burden of

16 proof and there is a fact-specific

17 inquiry for each of the different

18 subcategories.  And just because

19 there's variation doesn't mean that it

20 all goes to Taishan.

21    So here we can see the

22 variation in this category, we have at

23 least eight different looks of that.

24 And earlier today I think the

25 plaintiffs showed you the picture

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 235 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/29/2013 Page 204 of 281
March 11, 2019

1    of -- for Venture, and they put five

2    different versions up here, and I

3    would suggest that there's actually,

4    at most, three, that this one and this

5    one are the same, and this one and

6    this one are the same, and this one --

7    I mean, that doesn't really count

8    because they haven't shown you

9    anything that looks anything like that

10   in MADE IN CHINA or in DRYWALL.

11        So were there two different

12   sets that they showed you?  Yes, but

13   that's not eight different sets.  And

14   so there's not so much variation here

15   as meets the eye.

16        So the inquiry continues to be

17   subcategory specific, and we haven't

18   heard anything about 6, 7, 8 and 10.

19        And so they continue to rely on

20   the myth of the two manufacturers in

21   this hearing, and they discount

22   Taishan's attempt to acknowledge its

23   responsibility here where, by

24   accepting Category 2 -- which we did

25   accept.  We did not have to do that,

March 11, 2019

```
 1          but that Category 2 actually accounts

 2          for 529 of the 960 claims that are in

 3          this category.  So that is not a

 4          small -- even though it's only one of

 5          the eight, it's actually by far the

 6          largest section.

 7               So that was not something that

 8          Taishan had to do, but they could

 9          have -- you know, if we were as

10          recalcitrant as we have been painted

11          today to just sit back and say prove

12          your case, right, so we haven't done

13          that.

14               And so the equitable picture

15          here, I'm just trying to reset it a

16          little bit, that there have been

17          reasonable admissions that my client

18          has made, and it's not just we threw

19          away all the documents that were

20          making you prove your case, right?

21               We're making denials where we

22          reasonably felt that we couldn't admit

23          it because that's what defendants do.

24          That's the defendant's right, to make

25          the plaintiffs prove their case.  And
```

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 337 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 206 of
281
March 11, 2019

1    so on some they may have better proof,

2    on some they may have no proof.  So we

3    ask the special master to honor

4    Florida law and honor the record here

5    to make the determinations.

6         SPECIAL MASTER LEE:  Okay.

7         MS. SCHWAB:  Slide 88, please.

8    Your Honor, I just -- I noticed that

9    there's wasn't a cite to the photo on

10   the right that I represented was from

11   Taishan's production that I wanted to

12   provide.  It's Tab 30 at page 3 of

13   plaintiffs' product ID brief.

14        Mr. Venderbush is right.  We

15   didn't go through 6, we didn't go

16   through 7, we didn't go through the

17   other ones, but the reason is, is

18   because all of that is discussed in

19   depth in our brief.

20        We can go through all of those

21   today, but we don't think that it

22   would be efficient or beneficial

23   considering the Manufacturer Profile

24   Form doesn't distinguish between

25   capitalizations, plural, singular,

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 338 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 207 of 281
March 11, 2019

1      none of that.

2              So we're relying on the

3      evidence that we have and the markings

4      that we have and the admissions, and

5      from that, we can extrapolate what we

6      can.

7              Taishan just said earlier that

8      there are other manufacturers besides

9      them that mark boards with these

10     markings.  Yet they haven't named one

11     manufacturer.  They haven't pointed to

12     one manufacturer with the drywall with

13     dimensions, so there's no one else

14     that we know of with the DRYWALL

15     4feetX12feetX1/2inch except for

16     Taishan.

17             And I am going to pass at the

18     time to my colleague, Mr. Serpe.

19             MR. SERPE:  One moment.

20     Special Master, I'd like to take a

21     short break.  I've got a couple of

22     questions I want to bounce of off

23     counsel about one of the slides they

24     put up that would be helpful for me on

25     this presentation, and then I'll be

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 239 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 208 of 281
March 11, 2019

1          ready to go.

2                    SPECIAL MASTER LEE:  Okay.

3          We'll take five minutes.

4                    (Recess taken, 2:33?p.m. to

5          2:40?p.m.)

6                    MR. SERPE:  The next bucket

7          we're going to attend to are unmarked

8          boards with white edge tapes.  The

9          denomination of these is an area that

10         calls for a little bit of precision as

11         to whether there was no edge tape or

12         whether it was white edge tape, but

13         we're going to -- let me start by

14         saying unmarked, there were no

15         markings on the board itself, white

16         edge tape.

17                   So we start with Taishan's

18         Manufacturer Profile Form, we've

19         provided as Tab 11, and they admit to

20         351,745 sheets of drywall with no

21         product markings, no edge sealing tape

22         markings from -- it's a narrow window,

23         March of '6 to September of '6, so

24         it's a six-month window for Taishan,

25         and in that window they generated

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 340 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 209 of
281

```
 1        351,745 boards to go into the United

 2        States.

 3              I like to convert boards to

 4        homes, how many homes are we talking

 5        about.  And you can measure a home and

 6        calculate.  But let me just tell you

 7        that my metric is 500.  Counsel might

 8        suggest a different number.  500

 9        sheets go into a home.  I've done that

10        based on having looked at sales

11        invoices for 200 homes built with

12        Taishan drywall in Virginia and

13        counted how many boards.  500 would be

14        an overestimate of how many Taishan

15        boards went into a home, but I use

16        that.

17              If you do that math, which I'm

18        terrible at, but did it before I

19        started, you're talking about enough

20        drywall to do 700 homes.  700 homes

21        with white board.

22              At line 11 of the profile form,

23        they admit to 19,000 sheets of drywall

24        with no product markings, but edge

25        sealing tape that is white edge
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 241 of 344
Case 2:11-cv-22408-MCE-DEK Document 253 Transferred 09/13/19 Docket 04/25/2013 Page 210 of 281
March 11, 2019

1    sealing tape without words printed

2    thereon.  So, you know, add that to

3    the pile.

4         Despite having sent that volume

5    in, into the United States, Taishan,

6    for the purposes of the contest that

7    you're deciding, has admitted zero

8    boards that are unmarked.

9         Taishan has no lucky residual

10   board exemplar for which we can turn

11   to, so we end up in a situation where,

12   by counsel's definition, pounding away

13   on the burden of proof, Taishan's

14   position would be on a white board,

15   even though we sent in enough drywall

16   for here, 700 -- I'm going to do a

17   little bit more calculations on some

18   other documents -- we're responsible

19   for none of it.

20        The deposition which we took in

21   January, we went over a document with

22   Mr. Che, who was the 30(b)(6)

23   deponent.  And in it they acknowledged

24   998,778 square meters of board with

25   white, unlettered edge banding and

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 242 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 211 of 281
March 11, 2019

1    another 1,020,749 square meters of

2    gypsum board with unknown.

3         So let me just look at the

4    unknowns for a second.  We've got,

5    from their Manufacturer Profile Form,

6    351,000 boards.  I said that's 700

7    homes.

8         For the unknown category, at a

9    million square meters, Counsel can

10   correct my math, but I'm looking at

11   228,000 sheets.  That would be enough

12   for another 457 homes of unknown.  It

13   was unknown white and blank, but we

14   don't know.  We don't know.

15        Did they have records that have

16   been destroyed that haven't been

17   turned over?  But between these two

18   categories, the ones they acknowledge

19   were white, 700 homes.  Here's another

20   450 homes that they're saying unknown.

21   Between the two of them, that's 1,200

22   homes that Chinese -- that Taishan's

23   drywall installed in a home is going

24   to destroy that home from the inside

25   out, damaging the plaintiffs

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 343 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 212 of
281
March 11, 2019

1          monumentally, turning their lives

2          upside down.

3                  1,200 -- enough drywall, 1,200

4          families lives turned upside down.

5          Only 80 homes now are in this contest

6          to say, hey, I had the white board.

7          This has got to be yours, Taishan.

8                  How many does Taishan accept?

9          The answer?  Zero.

10                 So when we're talking about

11         equities, when we're talking about how

12         you should interpret evidence and the

13         defendants' conduct in this

14         litigation, we want to make sure that

15         we've emphasized the fact that because

16         of their marketing and marking

17         strategies, they end up in the

18         luxurious position where even though

19         they dumped toxic drywall on 1200

20         homes, they're able to sit back and

21         say, burden of proof, get out of jail

22         free card.

23                 In the briefing we laid out how

24         United States custom law has very

25         specific regulations with respect to

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 244 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 213 of 281
March 11, 2019

1    how products have to be marked before

2    they're imported into the United

3    States.

4         We also provided citations to

5    documents where some of the U.S.

6    customers that were dealing with

7    Taishan at the time said, hey, you

8    need to make -- you have to print MADE

9    IN CHINA, you have to put other

10   identification information on those

11   boards according to U.S. custom law.

12   That's the law.

13        So we know back in 2006 that

14   Taishan was aware of it.  It would be

15   real incredulous to suggest that a

16   huge manufacturing concern like

17   Taishan was unaware of U.S. imports,

18   but we can show, because one of the

19   customers was e-mailing the U.S.

20   customs requirement to Taishan

21   contemporaneously, they knew about it.

22        In the 30(b)(6), Mr. Che

23   offhandedly brushed it aside.  Oh,

24   different companies -- countries have

25   different things that they may require

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 245 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 214 of 281
March 11, 2019

1    on their board.  We don't pay any

2    attention to that.

3          So we now end up with enough --

4    clearly enough for 700 homes.  In my

5    mind, I lump their unknown into this

6    category as well.  To me it fits

7    conceptually, either 1,200 or 700

8    homes with these blank boards, no

9    information.

10          And we've got them specifically

11    violating U.S. law which required them

12    to print the identifying information

13    on the boards.

14          In terms of burden of proof,

15    burden of persuasion, we believe we

16    presented the special master with

17    overwhelming evidence regarding the

18    fact that Chinese clearly -- that

19    Taishan clearly made these boards.

20    They clearly imported them.  It's here

21    in the United States.

22          Now we have 80 homes, a tiny

23    fraction of that where people have

24    pulled the boards out, submitted the

25    proof, that's what it is.  Taishan is

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 246 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 215 of 281
March 11, 2019

```
 1          saying none of that is ours, so you

 2          can't satisfy your burden of proof,

 3          hiding behind a violation of U.S. law

 4          that they were supposed to print

 5          information on the board and did not.

 6               We think in that situation that

 7          the law -- they're quite right on the

 8          burden of proof, and I went back and

 9          looked at the inference and shifting

10          burden section of our brief, and we'll

11          be happy to supplement, but we believe

12          you do have the ability, as the finder

13          of fact, to make inferences against

14          the defendants based upon their

15          conduct.

16               Start with the basic jury

17          instruction, credibility of a witness,

18          in every trial you've ever been in.

19          If you believe that the witness has

20          been untruthful about one thing, you

21          may infer that they've been untruthful

22          for their entire testimony.  That's

23          standard.

24               If they violate U.S. law and

25          say, you know what, we're not going to
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 247 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 216 of
281
March 11, 2019

1    mark those boards, thumbing their nose
2    at the U.S. legal requirements for
3    importing, and then dump 700 or 1200
4    homes worth of drywall, hundreds of
5    thousands of sheets of drywall on the
6    U.S. market, engage in the course of
7    discovery, which we've briefed
8    ad nauseam, we've argued back and
9    forth over whether or not Taishan has
10   acted with -- beyond callous
11   disregard, really with intent to
12   deceive.
13        And we believe Judge Fallon has
14   so found, and we've laid that out.
15   I'm not going to delve into specific
16   items and argue back and forth with
17   counsel, but I believe that the court
18   will find that after the years of
19   delay, after the hide-the-ball
20   discovery tactics, after they violated
21   U.S. law, after they lied in
22   depositions, that the court has got
23   the ability to infer that on that vast
24   volume of blank board or white board
25   without markings that came in, tiny

March 11, 2019

1          portion that is 80 homes, zero

2          admitted in violation of the law, that

3          you should infer against the

4          defendants and let's turn that

5          burden -- the burden of persuasion,

6          not the burden of proof.  Let's turn

7          the burden of persuasion to Taishan.

8                  Explain yourselves.  Why didn't

9          you mark those boards?  Do you have

10         any evidence?

11                 Now, I appreciate the Court's

12         ability to take a minute to ask

13         learned counsel where they got this

14         pie chart from, which is their slide

15         30, but I think it shows up like five

16         times in their presentation.  They

17         keep coming back to it, the pie chart.

18                 And which, you put it up and

19         you look and they're calculating out

20         to 22%, how much drywall came from

21         other manufacturers other than

22         Taishan, Knauf and BNBM, who is their

23         parent company, right.  And they come

24         down, all these other companies, it's

25         this vast -- of the drywall that came

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 249 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 218 of 281
March 11, 2019

1      into the United States, it's a vast

2      22%.  And counsel keep pounding me

3      specifically and the plaintiffs' team.

4      They had these plaintiffs, they let

5      them go, they should have presented

6      it.  Here's the evidence that there

7      were all those manufacturers.

8            Where did that come from?

9      Where do you get 22% from?

10           Well, it turns out that they

11     pick one of their markers for how much

12     drywall total came into the United

13     States.  They picked the HUD number.

14     So they start with, well, that's how

15     much drywall came in, in the number of

16     sheets or square meters, whatever unit

17     that you want.

18           What did they deduct from that?

19     They deducted how much they admitted

20     they sent in.  Those are their

21     numbers.  Assuming we put in 20% here

22     and 20% there and 20% here; so

23     therefore, add that up and you know

24     what we're not admitting?  We're not

25     admitting 22% of this.  So therefore,

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 350 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 219 of 281
March 11, 2019

1          ergo, that had to have been some other

2          manufacturer in China that was sending

3          that stuff in there.  I think that's

4          hogwash.

5                You put it in a pie chart and

6          take it out to a percentage like 22%

7          and cloak it with what looks like a

8          reliable amount of information, but

9          it's based on a deduction from their

10         assumptions or how much they've been

11         willing to admit they manufactured.

12               Where is the hard documentation

13         that these manufacturers sent in

14         drywall to the United States?  Where

15         are the sales records, where are the

16         sheets, where are these other items?

17               So two last kind of points on

18         this.  One of the points counsel makes

19         is, yeah, we named these other

20         manufacturers in the complaint.  Where

21         are they?  How come you haven't

22         brought them in?

23               Counsel relies on the Consumer

24         Product Safety Commission as part of

25         the slide here.  When you go back and

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 351 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 220 of
281

March 11, 2019

```
 1        look at the Consumer Product Safety
 2        Commission, several of these
 3        manufacturers had their boards
 4        submitted to the Consumer Product
 5        Safety Commission and they were tested
 6        to see if they came from the same
 7        region, the same strata of the mine
 8        that Mr. Montoya was talking about,
 9        that you picked up the contamination
10        and that they would release gases.
11            And guess what?  Many, many of
12        the Chinese companies that were
13        sending a small amount of drywall at
14        the time, yeah, they had drywall, but
15        it wasn't from that mine.  There was
16        no sulfur in it.  It wasn't
17        off-gassing.
18            So it's not enough that it was
19        a Chinese company that happened to
20        make drywall at the time.  It had to
21        have been the problematic drywall that
22        had the sulfur that released the
23        corrosion.
24            So we come back again to --
25        we've been pursuing this for a decade,
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 252 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 221 of 281

March 11, 2019

1    fighting as hard as we can, looking

2    everywhere, to China.  Every time we

3    serve a complaint over there, it's

4    $100,000.  We've done everything we

5    can to get documentation.

6         And we turn to -- we're in the

7    United States.  We're doing this

8    across the ocean, we're doing it from

9    the standpoint where the state of

10    China goes through documents that

11    we've asked for and makes sure that

12    they're okay for state secrets before

13    they release them to us.

14         That laptop computer that

15    Mr. Montoya told you about?  Before

16    they gave us anything off the laptop,

17    it had to go through the state secrets

18    commission.  We only saw what they

19    wanted us to see.  So that's how we

20    get documents from companies like

21    that.

22         They're a Chinese company

23    that's state owned, and they've got

24    state ownership going all the way up

25    to the state of China.

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 353 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/29/2013 Page 222 of
281

March 11, 2019

1      They have a division -- we

2      cited this in your brief -- who

3      specifically looks at their

4      competitors to see what they're doing.

5          And I again, in the deposition

6      and today, I said show me a document

7      where there was any substantial

8      exporting of unmarked boards with

9      white edge tape from any manufacturer

10     that was from the Taihe region that

11     had the contaminated sulfur.  One

12     document, one invoice.  I haven't seen

13     one.

14         Is there one out there?  Is it

15     possible another company sent them?

16     Anything's possible, Special Master,

17     but what I can tell you is, they did

18     enough to destroy 700 homes, 1200

19     homes if you lump in the unknowns.

20         We know they did, and it's

21     here, and it's corrosive, and we have

22     80 homes with that board that have

23     been destroyed.  Their response is:

24     Burden of proof.  We're done.  Didn't

25     mark it.  Too bad.  Still your burden

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 354 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 223 of 281
March 11, 2019

```
1            of proof.

2                 They're in China, they know

3            their competitors.  They know how to

4            access documents and how to do the

5            research.  We're not there, we can't

6            do any of that, yet they want to say

7            we have to go and figure out about

8            these other companies, et cetera.

9                 We've done our best and what I

10           can tell you is we're unaware of

11           another Chinese company making

12           unmarked boards with white edge tape

13           that were sent into this state by

14           anyone other than Taishan.

15                Thank you.  Special Master,

16           forgive me, I got ahead of myself.  I

17           just want to point out three last

18           documents that were in the PowerPoint.

19           Thank you, and I apologize for that.

20                We were layering additional

21           proof of our diligence in pursuing

22           documentation.  Here is Taishan

23           specifically indicating that they're

24           not going to do spray markings.

25                Exhibit A to the Defendant's
```

March 11, 2019

1    Manufacturer Profile Form

2    acknowledging that they made white

3    edge sealing tape without words.  And,

4    as an example, the Wheeler case --

5    this is one of the 80 families --

6    white board, white tape, highly

7    corrosive, and there's no markings on

8    it.

9         And the question becomes what

10   do you tell the Wheelers?  In this

11   situation and for the reasons I just

12   articulated, we believe we've met our

13   burden of persuasion because of the

14   huge volume they sent.  Their conduct,

15   particularly in not marking the

16   boards, and not marking the boards,

17   and their lack of presenting any

18   affirmative data to the contrary.

19        Thank you.

20        MR. VENDERBUSH:  Slide 32, I

21   think we're at.  So Mr. Serpe did a

22   little bit of a mini closing there, so

23   I'm not going to touch on everything

24   that he talked on.  I'm going to talk

25   about white edge tape and the -- some

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 256 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 225 of
281
March 11, 2019

```
 1        of the legal issues that relate to

 2        white edge tape, and then I understand

 3        we're going to have some real

 4        closings.  So I think my colleague,

 5        Ms. Eikhoff, will address some of the

 6        other issues that Mr. Serpe raised

 7        that were more global.

 8              So I just want to give you a

 9        quick picture of what white edge tape

10        looks like.  We were talking about

11        generics before.  This is as generic

12        as it gets.  This is -- these are the

13        kinds of pictures that we're looking

14        at for them to say this was made by

15        Taishan, right?

16              And, I mean, I have been a

17        products liability lawyer for

18        25 years, and product ID is a critical

19        issue in many cases.  And the

20        plaintiffs have to make the

21        connection, and Florida law requires

22        it, to connect the product to the

23        manufacturer.

24              So the ultimate question in --

25        for each of these claims is going to
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 357 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 226 of
281
March 11, 2019

 1          be can the claimant prove that the

 2          product in the home was corrosive,

 3          number one.

 4              I mean, Mr. Serpe says, oh,

 5          look at Mr. Wheeler's boards, they're

 6          corrosive.  We don't know that those

 7          boards are corrosive.  There's nothing

 8          about them on their face that says

 9          they're corrosive.

10              Do they have -- are there

11          chemical reports that say those

12          particular boards are corrosive?  And

13          then there's nothing that says that

14          those are Taishan boards.

15              So he said we don't know

16          anything about other people making

17          blank boards, but we do.  There is in

18          this record, and we -- there's buyer

19          testimony in our Appendix 67.

20              What distinguishing marks does

21          Pingyi Baier drywall have on it?

22              None.

23              Does it say Pingyi Baier on it?

24              No.

25              Does it say Chinese drywall?

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 258 of 344
Case 2:11-cv-22408-MCE-Document 293 Entered on FLSD Docket 04/25/2013 Page 227 of 281
March 11, 2019

```
 1                    No.
 2                    It has no markings on it at
 3          all?
 4                    Not that I recall.
 5                    How about the Beijing product,
 6          Beijing Materials?
 7                    How about it?
 8                    What distinguishing marks does
 9          it have?
10                    None.
11                    It doesn't say anything.
12                    So in this hectic market,
13          people were getting the drywall that
14          they could get and Chinese
15          manufacturers were making it in
16          various different ways.
17                    And so there is nothing that is
18          distinctive or unique about blank
19          drywall, and there's -- actually, we
20          have to look at each one of these
21          pictures.  It's not like it says
22          ProWall on it, or it's not like it's
23          something that's distinctive as we
24          would be used to in a product
25          liability product identification
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 259 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 228 of
281
March 11, 2019

1    setting.  If you have a product and
2    there's nothing identifying about it,
3    then there's nothing to tie it to the
4    manufacturer.
5         So if there's an absence of
6    evidence, that is the state of the
7    record.  And that's what the Blackston
8    case is about, is that the Eleventh
9    Circuit said in the asbestos setting,
10   which I will submit the equities were
11   even greater, the Eleventh Circuit
12   said just because it's hard to prove
13   exposure to asbestos doesn't mean that
14   we're going to create a presumption
15   that does not exist in the applicable
16   state law.
17        And that's what they're asking
18   you to do, to sua sponte create a
19   presumption that shifts the burden of
20   proof to us to disprove that any of
21   these products are ours.  And there's
22   just no authority for that.
23        So Blackston says you cannot do
24   that.  They have not invoked Rule 37,
25   and the inherent power that they cite

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 360 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 229 of
281
March 11, 2019

1    in their brief, the cases that suggest

2    that might be available, they also say

3    that that would be a Rule 37-like

4    procedure.

5         So they need to move for that

6    and allow us to defend on that if

7    they're going to try to meet the very

8    specific Rule 37 factors, which

9    include bad faith, which they

10   themselves have said we couldn't have

11   done because we did this in the normal

12   course.

13        So I don't want to get into

14   litigating Rule 37.  I'm just saying

15   Rule 37 is not here.  So that's not a

16   basis for doing it.

17        And the reference to the

18   Tariff Act of 1930, which Mr. Serpe

19   obliquely referred to -- that's what

20   he was referring to about the

21   markings.  And he misstated it,

22   because it's not a statute that

23   requires a manufacturer to identify

24   their product.  It identifies -- in a

25   conspicuous place as legibly,

Case 2:09-md-02047-EEF-MBN Document 22362-38 Filed 11/19/19 Page 361 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 230 of
281
March 11, 2019

1     indelibly and permanently as the

2     nature of the article or container

3     will permit in such manner as to

4     indicate to an alternate purchaser in

5     the United States the English name of

6     the country of origin of the article.

7         So it's not a product

8     identification statute, so there's not

9     some sort of reasonable care standard

10     that we have violated or something.

11     It is country of origin.

12         And the sanction for violating

13     the Tariff Act, if we have done that,

14     is set forth in the statute, and it is

15     not to change Florida law on the

16     burden of proof.

17         So -- and even if we put

18     that -- and it's not relevant because

19     even if we put it on, MADE IN CHINA,

20     we've seen MADE IN CHINA is not an

21     indelibly uniquely mark.

22         So there's just no basis that

23     they've provided you other than just

24     do it because we've been doing this

25     for ten years and it's hard.  And so

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 262 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 281 of 281
March 11, 2019

1      that would just be unlawful as far as

2      we're concerned.

3           So we think that this is a

4      situation where the plaintiffs have --

5      that the special master cannot say as

6      a categorical matter not only have

7      they not proved that this has to be

8      our board, but that's not a -- that

9      wouldn't even be a meaningful ruling

10     because when we look at some of these

11     pictures, they're calling white edge

12     tape things that aren't edge tape,

13     right?

14          This came up at the -- at

15     Mr. Che's deposition where the

16     plaintiffs were calling things edge

17     tape and he had to correct them to say

18     that that's joint tape or face tape.

19          So we actually, if -- we would

20     have to go through each one of

21     these -- even if there were some

22     categorical saying, anytime you see

23     tape, that means it's Taishan, we

24     would still have to go through and say

25     but that's not edge tape.  Just the

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 363 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 232 of 281
March 11, 2019

1    fact that we made product with edge

2    tape doesn't mean that every time you

3    see a piece of white that it has to be

4    ours.

5         And they -- we haven't made

6    this impossible for them, right?

7    There are ways that could be done, but

8    they -- in a difficult situation, and

9    the Eleventh Circuit envisions that

10   there will be difficult situations of

11   proof in the product ID space.

12        So what could they have done?

13   They could have gone to every home and

14   found out where those boards came

15   from.  These supply chain records

16   exist and they've shown you some of

17   them over the course of the day.  It's

18   a difficult situation.

19        If you have proof -- they have

20   all documents from many of these

21   suppliers, and they could trace those

22   back to home -- because this is what

23   they're going to have to do eventually

24   is go, all right, Mr. Wheeler's house,

25   those five blank boards, how are those

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 264 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 233 of 281
March 11, 2019

1    Taishan, right?  Well, they could go
2    find who -- the builder who built that
3    home and get the supply records and
4    then tie those back, and did those
5    come from one of the shipments that
6    Mr. Serpe referenced.
7         But it is not enough for an
8    individual product identification
9    inquiry to say -- to use volume.  You
10   shipped a lot of boards, therefore any
11   board that we call white edge tape is
12   yours.  That cannot be how a product
13   identification inquiry works.
14        So they could do it that way,
15   they could do drywall samples, where
16   they find one of these they can tie
17   back to a Taishan shipment and then
18   go, look, it has the same chemical
19   analysis that a Taishan board has.
20        But we don't even know that the
21   particular boards that we saw are
22   corrosive.
23        So this is not impossible.  It
24   is very difficult, I totally grant you
25   that.  But that is the burden that

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 265 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 234 of
281
March 11, 2019

```
 1          Florida law puts on a party that wants
 2          to shift resources from one side of
 3          the V to the other side of the V.  And
 4          the wisdom of hundreds of years of law
 5          says that this is what we demand in
 6          our legal system before we do that
 7          property shifting.
 8               And on the white, unmarked edge
 9          tape, it is a complete failure of
10          proof for what they've given you.
11               MR. SERPE:  You can leave that
12          up.  Drywall samples, chemical
13          analysis could identify the maker of
14          the drywall.
15               I've been in this case since
16          2009.  Tried the first case against
17          Taishan in the fall.  I have been on
18          every expert and science team since
19          then.  I have never heard an expert
20          witness, not once, that purported to
21          say here's a drywall sample and I can
22          do a chemical signature and show it
23          came from the same company.
24               If such proof existed, I'm
25          shocked that we haven't seen chemical
```

March 11, 2019

1    analyses that have attempted to

2    exculpate the defendant presented at

3    this point.

4         We have a defendant in default.

5    Their drywall has already been

6    demonstrated to be corrosive,

7    demonstrated and adopted by

8    Judge Fallon, adopted by Judge Cooke,

9    that it off-gases and causes corrosion

10   in the homes.

11        We go in the homes, we find the

12   corrosion.  We have done all of the

13   scientific testing that we think is

14   possible in this case.

15        Supply chain.  We took those

16   depositions.  We went through all the

17   employees.  We went through the

18   records.  If we had found -- if there

19   was a way to do this, we would have

20   unturned those stones to have looked

21   for additional documentation and

22   presented it.  And it's not there.

23        So we're left with the burden

24   now to say what do you do with a

25   white, unmarked board?  Well, you do

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 267 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 236 of
281
March 11, 2019

 1          what we did here, which is find out

 2          exactly how much they made and under

 3          what circumstances, and we did.

 4                   Counsel is quite right, and I

 5          tried to say -- it's in our brief

 6          about the Tariff Act because my strong

 7          suit is more on the science than on

 8          the legal analysis.  And in our brief

 9          we specifically outlined the Tariff

10          Act and what their requirements are.

11                   I think I just heard counsel

12          acknowledge his client violated that

13          law, they're not contesting that.

14          Guilty.  He points to penalties that

15          are in there that U.S. Customs could

16          have imposed against the manufacturer

17          for each shipment that had come in,

18          but that's not the context we're

19          talking about here.

20                   We're talking about what do you

21          do, what does Your Honor do in the

22          context of this case.

23                   Counsel talks about we've got

24          to go picture by picture because one

25          of the reasons is that there's joint

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 268 of 344
Case 1:11-cv-22408-MGC Document 293-1 Entered on FLSD Docket 04/25/2013 Page 237 of
281
March 11, 2019

1          tape, and Mr. Che had to educate us

2          plaintiff lawyers what about joint

3          tape was when we took his deposition

4          in January.

5                    Well, I'm sure Your Honor has

6          been in a home that's under

7          construction.  Before they paint, they

8          put the two boards together and then

9          the drywall mechanic puts a piece of

10         tape on the outside of the board, and

11         they put plaster over it and they sand

12         it smooth so that when you paint it

13         you can't see where the seam is.

14         That's joint tape for joints.  We know

15         what that is.  We know what joint tape

16         is, and we're not saying that a joint

17         tape is an edge tape.

18                   Now, is there one photograph

19         somewhere where you look at it and

20         say, now, is that a joint tape or an

21         edge tape?  We can have that debate as

22         part of the contests or an individual

23         one-off, but really what we're here

24         about is what are we going to do with

25         Taishan having sent enough drywall to

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 269 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 238 of
281
March 11, 2019

 1          destroy 700 or 1200 homes, and now the
 2          confirmation, how many of them are
 3          they going to admit to?  Zero.
 4              Why?  Burden of proof.
 5              Eleventh Circuit, in our
 6          closing we're going to distinguish
 7          Eleventh Circuit and tell you how that
 8          is inapplicable in this context, but
 9          we'll hide behind the Eleventh Circuit
10          and say because of burden of proof and
11          the massive destruction we did, 80
12          homes here, zero, and we're going to
13          go home.
14              We don't think that the special
15          master should rule that way.  We
16          think, based on the huge volume of
17          data, the fact that, you know,
18          counsel, again with an opportunity to
19          show where is this drywall coming
20          from, this white drywall that's
21          corrosive and it's from the Taihe
22          region.  Where is that coming from?
23              We hear Pingyi again.  That's
24          one of the companies CPSC says makes a
25          drywall that doesn't release gases.

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 270 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2019 Page 239 of
281
March 11, 2019

```
 1            I'm looking for the proof at long
 2       last.  Here we are.  Who else did
 3       this?  I'm not seeing a single
 4       documentary evidence of that.
 5            We are urging Your Honor to
 6       judge the credibility of this
 7       corporate player, and they're a bad
 8       actor, to not believe their
 9       representations in this contest, to
10       take a look at this evidence,
11       including their decision to violate
12       the law, and make inferences against
13       Taishan based upon those adverse
14       negative conduct which is in your
15       power to do.
16            And we ask that you find that
17       we have met our burden of persuasion,
18       that Taishan was responsible for these
19       homes, and that in that context, it
20       should be Taishan's responsibility to
21       come forward with at least definitive
22       proof that another company made a
23       corrosive Chinese drywall board or
24       that they weren't responsible in this
25       context, and there's been none.
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 271 of 344
Case 2:14-cv-22408-MCR-ECF Document 295 Entered on FLSD Docket 04/25/2013 Page 240 of 281
March 11, 2019

```
1              Instead, it's a waving of hands
2         that we're sorry that this is hard.
3         This is just like the asbestos
4         victims, these people all need to go
5         home.  We're asking Your Honor to not
6         rule that way.  Thank you.
7              MR. MONTOYA:  Your Honor, that
8         concludes the presentations on the
9         buckets.
10             SPECIAL MASTER LEE:  I think
11        there was more on the PowerPoint.
12             MS. ROBERTSON:  Yeah, that's
13        for the conclusion.
14             SPECIAL MASTER LEE:  Okay.
15             MR. VENDERBUSH:  So you guys
16        are done with the buckets?
17             SPECIAL MASTER LEE:  Was there
18        anything else you wanted to address?
19             MR. VENDERBUSH:  Yeah, so
20        there's two more -- if you put ours up
21        one more time.
22             MS. EIKHOFF:  It should be the
23        very last slide of the presentation.
24             MR. VENDERBUSH:  The last two
25        slides, I think.
```

Case 2:09-md-02047-EEF-MBN Document 23363-38 Filed 11/19/19 Page 272 of 344
Case 2:14-cv-22408-MCE Document 293 Entered on FLSD Docket 04/25/2019 Page 241 of
281

March 11, 2019

```
 1                    MS. EIKHOFF:  It's the last one
 2          slide.
 3                    MR. VENDERBUSH:  Yeah, last
 4          slide.  So there's just photos 3 and 4
 5          are in the catalog, and they're not in
 6          their brief, and they weren't
 7          addressed here, so we -- there's no
 8          proof on that.
 9                    MS. ROBERTSON:  I can --
10                    MS. EIKHOFF:  You guys just
11          said you closed.  You said you were
12          done with the presentation.
13                    MS. ROBERTSON:  It's not an
14          argument.  We were simply explaining
15          to the special master those markings
16          are in homes that have other markings
17          that were already discussed during
18          this presentation.
19                    MR. VENDERBUSH:  Okay.
20                    MS. ROBERTSON:  So apologies.
21                    MR. VENDERBUSH:  She's going to
22          have to go through and do every photo,
23          so she's going to have to say
24          something about it presumably.
25                    SPECIAL MASTER LEE:  Did the
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 373 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 242 of
281
March 11, 2019

```
 1          plaintiff want to say anything else
 2          about these?
 3                  MS. DUGGAN:  I don't think so.
 4                  SPECIAL MASTER LEE:  No?  Okay.
 5          So anything else before we do the
 6          closing?  Yeah, we're going to take a
 7          break.
 8                  MR. SERPE:  Nothing else before
 9          closing.
10                  SPECIAL MASTER LEE:  Okay.  Did
11          the plaintiff want to say anything
12          more about the drywall dimensions, 6,
13          7, 8, 10?  I think the defense was
14          pointing out that you didn't really
15          say anything about them other than
16          that they're variations on the same
17          theme.
18                  MR. SERPE:  Just a minute,
19          please.
20                  SPECIAL MASTER LEE:  You can
21          talk about it over the break, but
22          that's one question I have.
23                  MS. EIKHOFF:  Do you have any
24          questions for us?
25                  SPECIAL MASTER LEE:  On the
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 274 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 243 of 281
March 11, 2019

1    defense side, did you want to say

2    anything more about the whole adverse

3    inference argument?

4            MS. EIKHOFF:  Yes.

5            SPECIAL MASTER LEE:  If you're

6    going to address in your closing.

7            MS. EIKHOFF:  Will do, thank

8    you.

9            SPECIAL MASTER LEE:  All right.

10   Give me one second.  One question just

11   for my knowledge:  Were there any

12   preservation issues addressed in the

13   MDL?

14           MS. ROBERTSON:  I think over

15   time of the MDL we had various

16   different arguments regarding the

17   preservation of evidence.  I think

18   that plaintiffs always consistently

19   tried to -- we presented a few times

20   asking for sanctions.

21           I don't believe that

22   Judge Fallon ever found spoliation had

23   been the result of the preservation

24   order as far as PTO #1 goes.  That is

25   correct, right, Christy?

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 275 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 244 of
281

March 11, 2019

```
 1              MS. EIKHOFF:  There has never

 2        been a finding of spoliation in the

 3        MDL, despite some allegations.

 4              MR. MONTOYA:  Judge, I think in

 5        terms of the spoliation type issues

 6        and the discovery issues, they are

 7        fully briefed in our brief.

 8        There are sections in there and we

 9        would rely on those.

10              SPECIAL MASTER LEE:  Yeah, I

11        read that.  I just didn't know -- it

12        didn't make clear to me whether there

13        was ever a ruling, a finding, anything

14        like that.

15              MS. DUGGAN:  No, there was not.

16              MS. ROBERTSON:  I can pull the

17        MDL record document from the orders

18        and read them if you would like.

19              SPECIAL MASTER LEE:  And I'm

20        correct that defense position is that

21        ProWall should be decided after the

22        BNBM hearing but the plaintiff doesn't

23        agree with that?

24              MS. DUGGAN:  We don't agree

25        because it's a different set of
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 276 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 245 of 281
March 11, 2019

1    allegations in the homes at issue in

2    Florida with regard to the boards that

3    we claim were made by Taishan are not

4    at issue.

5        MS. GRANT:  One thing.  It's a

6    Texas home, and I believe there's only

7    one of them.  That is the BNBM

8    argument.  That's the reason.

9        MS. EIKHOFF:  So why don't you

10   let us talk at the break, because we

11   had never heard until it was said

12   today that there was a distinction

13   between ProWall markings and

14   attribution.

15       We only saw the footnote in

16   their brief that said some are to

17   BNBM, some are to Taishan, but we

18   don't know how those are -- how those

19   are distinguished from one another.

20       MR. VENDERBUSH:  Can I ask how

21   a Texas home is being litigated in the

22   Florida BNBM proceeding?

23       MS. ROBERTSON:  I think that's

24   a question for BNBM, but we can

25   address that with the BNBM counsel.

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 277 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 246 of
281
March 11, 2019

```
 1          Once we get to the BNBM argument, I'm
 2          happy to address that, but probably
 3          not today.
 4                  MR. DAVIDSON:  I was just
 5          asking if we had to address it at all
 6          in front of Special Master Lee since
 7          it's a Texas property.
 8                  MS. ROBERTSON:  Maybe we can
 9          discuss and go offline.
10                  SPECIAL MASTER LEE:  From the
11          defense, when will the claim-specific
12          objections be addressed?  You said
13          there are claim-specific objections
14          that would have to be decided later.
15                  MS. EIKHOFF:  Yes, Your Honor.
16          So we -- Your Honor, I'm sorry.  That
17          was an old habit.
18                  Special Master Lee, we
19          submitted a preliminary list of
20          contests.
21                  SPECIAL MASTER LEE:  I saw it.
22                  MS. EIKHOFF:  And then our
23          final contest list is due on
24          April 8th.
25                  MS. DUGGAN:  I thought yours
```

Case 1:19-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 278 of 344
Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 247 of 281

March 11, 2019

1    was due on April 2nd.

2            MS. EIKHOFF:  April 2nd.  April

3    2nd.

4            MS. DUGGAN:  We're going to

5    respond on April 8th and then we have

6    three days set aside with the special

7    master April 10th, 11th and 12th.

8            SPECIAL MASTER LEE:  Okay.

9            MS. EIKHOFF:  And in the

10   meantime, Ms. Lee, to the extent that

11   some of those objections can be

12   resolved between the parties, we're

13   working to see if we can.  But there

14   will no doubt be many objections that

15   will need to be resolved by the finder

16   of fact.

17           SPECIAL MASTER LEE:  Okay.  So

18   how much of a break do you want?

19           MS. DUGGAN:  10 minutes?  Is

20   that enough?

21           MS. EIKHOFF:  Sure.

22           SPECIAL MASTER LEE:

23   15 minutes?

24           MR. SERPE:  15, thanks.

25           (Recess taken, 3:21?p.m. to

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 279 of 344
Case 2:11-cv-22408-MCE-EED Document 253-1 Entered on FLSD Docket 04/25/2013 Page 248 of 281
March 11, 2019

1        3:42?p.m.)

2              MS. SCHWAB:  Your Honor, you

3        asked earlier about Category -- or

4        photos 6, 7, 8 and 10, and I would

5        just like to briefly respond to those.

6              Photo number 6 is the same W as

7        photo number 2 that Taishan relied on

8        in making -- in admitting photo 2.

9              Photo 7 is DRYWALL in all caps,

10       as stated in the Manufacturer Profile

11       Form, and Tab 62 to plaintiff's brief

12       is an e-mail chain between Che Gang

13       and Ivan Gonima, who is a U.S.

14       customer.  Mr. Che uses the asterisk

15       instead of X's to -- in the place of

16       4feetX12feetX1/2inch.

17             Number 8 is the same DRYWALL

18       all caps, just as the Manufacturer

19       Profile Form, and the asterisk again,

20       I would direct Your Honor to Tab 62 in

21       plaintiff's brief.

22             And 10, photo 10 is DRYWALL in

23       all caps again as indicated in the

24       Manufacturer Profile Form, and all of

25       these are discussed at length in

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 280 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 249 of
281

March 11, 2019

```
 1          plaintiff's brief.  Thank you.
 2              SPECIAL MASTER LEE:  Thank you.
 3      Are we ready for closing?
 4              MR. MONTOYA:  Mr. Serpe is
 5      going to close.
 6              MS. EIKHOFF:  Are you guys
 7      going to preserve a rebuttal?  Because
 8      if you're saying it's our burden of
 9      proof, then we should go first.  I'm
10      confused now as to whether you want it
11      to be our burden of proof or don't.
12              MS. DUGGAN:  You want to go
13      first right now?  That would be fine
14      with us.
15              MR. SERPE:  Go ahead.
16              MS. DUGGAN:  That's fine, we'll
17      go last.
18              MR. VENDERBUSH:  That's the
19      point, if they go first --
20              MS. EIKHOFF:  The point is
21      we're not accepting that we have the
22      burden of proof.
23              MR. SERPE:  Christy, we know
24      that you're not accepting that.  We're
25      stipulating that you're not accepting
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 281 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 250 of 281
March 11, 2019

1          that you have the burden of proof.

2                MS. EIKHOFF:  Then go ahead.

3                MR. SERPE:  Special Master,

4          there's a problem here, and the

5          question is who's responsible.

6                I think it's clear from the

7          presentation today that this is

8          entirely a problem that was created by

9          the defendants.  100% of this problem

10         was from their conduct, not only when

11         manufacturing, but what they've done

12         since that time.

13               From the decision to make U.S.

14         drywall allegedly without a manual,

15         detailing how markings are supposed to

16         be put on the board, when the rest of

17         the company's corporate discipline is

18         you have a very specific manual on

19         exactly how to put the markings, where

20         to put them, what has to be on there,

21         and get our name on it.

22               On the U.S. side, they either

23         didn't have that manual or it existed

24         and we're just being told that it

25         doesn't exist.

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 282 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 251 of 281
March 11, 2019

1          But from our standpoint, we

2     don't have the 40-page highly detailed

3     manual that they have for all the rest

4     of their drywall production.  We have

5     nothing.

6          What about the documents that

7     got sent down from the factory floor

8     saying make this much drywall for this

9     customer with these markings?  We got

10    those records.  They preserved those

11    records.

12         But we're being asked to

13    believe that the critical sheet of

14    paper, the part of the order that had

15    the marking information on it, well,

16    we just happened to throw that piece

17    out.  But not the order, just the

18    attachment that said what we put it

19    on.  And then we'll see if -- the

20    record that you can't show our product

21    from.

22         I'll go back to the opening

23    slide where Taishan told its

24    stockholders that they're going to

25    send over documents, only documents

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 383 of 344
Case 1:11-cv-22408-MGC Document 253-1 Entered on FLSD Docket 04/29/2013 Page 252 of 281
March 11, 2019

1    that are beneficial to their case, and

2    we'll use agencies to run interference

3    for us.  So we don't get proof on what

4    the markings were because supposedly

5    they were thrown out.

6           We asked about edge tapes and

7    what was printed on those.  Where are

8    those records?  We haven't seen the

9    first record of how the edge tapes

10   were printed and what was printed on

11   them and what was the order and how

12   was it accounted for.  Did the sales

13   documents -- you know, how was it

14   billed out.

15          So we wait a decade, and

16   finally get a 30(b)(6) deposition of a

17   witness who he's been deposed three

18   times, his story has changed each

19   time.  But in his third iteration,

20   with a specific time frame on edge

21   tapes, what was your process, what was

22   the documentation, where are the

23   records.

24          And his answer was there was a

25   whole factory to make the edge tapes.

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 384 of 344
Case 1:11-cv-22408-MGC Document 253-1 Entered on FLSD Docket 04/25/2013 Page 253 of 281
March 11, 2019

 1       It was so complex and big we have to

 2       put it in its own factory.

 3               Well, how did they know what to

 4       make?  Did you send e-mails?  Where

 5       are those e-mails?  Who looked for the

 6       e-mails on the edge tape?  Oh, they

 7       didn't have computers.  So what, you

 8       would hand-deliver forms to them with

 9       the specifications on how to make the

10       edge tape?  No, there was no paper.

11       We would call them or maybe I could go

12       over and tell them what to make.

13               So when they were making it,

14       did they keep a record?  Okay, today

15       we made, you know, 10,000 miles of

16       tape that said IMT or another marking

17       on the edge tape and then put it into

18       their file on what they had concluded

19       for that day.  No, no records

20       whatsoever of any edge tape

21       manufacturing process.

22               Did they really exist and we're

23       just being told they didn't, or did

24       Taishan just have a practice that

25       was -- that operated around no

March 11, 2019

1    evidence being saved in realtime?  In

2    either event, this problem we're

3    facing is of their making.

4         So the question becomes if they

5    created a problem through their

6    practices, do they get a pass now to

7    say, whew, it was a good thing we did

8    that.  Now, no one's going to be able

9    to prove our drywall, and we should

10   get a pass with no responsibility

11   whatsoever.

12        And we're asking the special

13   master to not accept that definition,

14   that the entity that created the

15   problem shouldn't be able to walk away

16   from the damages that they caused.

17        So on the next layer down, the

18   records that we did get and the

19   photographs that we did get, we were

20   very sensitive to looking for pictures

21   of the markings so that we could match

22   them up and say now we have another

23   mug shot for the mug shot book that we

24   could compare a homeowner's home to to

25   see is this Taishan drywall.

March 11, 2019

1          So we are produced this record

2          from Taishan, and in a deposition --

3          next slide, please -- of Mr. Che, he

4          was asked about the drywall in the

5          left-hand side, the black-and-white

6          picture.

7          And his answer is:  "This

8          picture is very much unclear.  If you

9          look at it from afar, it looks similar

10         in a small degree that that resembles

11         that of Taishan's; however, it would

12         be great if you can give me a more

13         clear version of it.

14         "Sir, do you see the words

15         'Taihe' in that photograph on the

16         labels?

17         "Well, I can only see the

18         Chinese character 'mountain.'  It was

19         blurry before the character and it's

20         pretty blurry after.  If I were to

21         speculate, and I can only speculate,

22         it might be Taishan's edge tape."

23         So we begin the process saying,

24         all right, do we have a better

25         picture?  Asked Taishan, please send

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 387 of 344
Case 2:11-cv-22408-MCE-DDocumentProcument253 FiledDocket 04/25/2019 Page 256 of
281
March 11, 2019

1      us the color, the clearer picture of

2      this.  And lo and behold, last week we

3      get this picture, and it's clearly

4      Taihe edge tape.  Absolutely,

5      indisputably their edge tape.

6              Where has this photograph been?

7      Why do we go through ten years of

8      litigation, take a deposition where

9      this is what we're provided and a

10     witness says I don't know, maybe it

11     looks like mountain.  It's a little

12     blurry, I can only speculate about

13     that, when in their records all along

14     they had the color picture which

15     definitively proved product ID in the

16     case.

17             You've got to ask, who was it

18     that looked for this stuff?  Did they

19     really look hard or did they kind of

20     do a half-baked search, put a few

21     things together that are beneficial to

22     them in the U.S. litigation and send

23     those over, letting other people run

24     interference for them.

25             I suggest this is another of

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 288 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 257 of 281
March 11, 2019

1      many examples in the brief and that we

2      presented today where Taishan has had

3      evidence and has not turned it over.

4              Really, after ten years, in

5      January, at the deposition and new

6      documents, the product ID briefing, we

7      see the final stand by Taishan on

8      their theme on how it is that we're

9      supposed to prove product ID.

10             It's the "luckily" testimony

11     from Mr. Che; a very ironic word from

12     our standpoint.  Let's break that

13     down.

14             A corporate witness, on the

15     basis of all of the depositions, all

16     of the records, this guy is the

17     foreign sales manager.  He's been

18     deposed three times.  He's asked about

19     the residual American-sized drywall

20     samples, those three pallets of

21     drywall that we found, and he said:

22     However, very luckily, during my

23     preparation of the witness testimony

24     in deposition representing Taishan,

25     these American-sized residual boards

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/10/19 Page 289 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 258 of 281
March 11, 2019

1      were discovered.

2              So very luckily for who?  Very

3      luckily for who?

4              Well, consider now that

5      Taishan's product ID paradigm is that

6      if you can match your product ID

7      exactly to what we see on these three

8      pallets, we're going to accept it.

9              But if you can't, insufficient

10     proof, we deny it.  This is their --

11     this is their final position.

12             So three pallets of drywall

13     with two markings and one illegible --

14     call it three markings of all of the

15     different buckets that we've talked

16     about.

17             Now, it's on a pallet.  I think

18     a reasonable inference for Your Honor

19     is that that came from the same

20     production run, the same printer,

21     (indicating) sprayed those words that

22     you see from the residual buckets,

23     residual boards that we talked about.

24     That was the same printer, same

25     production run, it's all on the same

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 290 of 344
Case 2:11-cv-22408-MCE-Document 253-1 Thereupon, it is ordered/04/25/2013 Page 259 of
281
March 11, 2019

```
 1          pallet.  It was stacked up in the

 2          warehouse at the same time.

 3               So we've got one printer only

 4          for three different types of markings

 5          when there were at least four printers

 6          that were repeatedly changed out.

 7          Every time it was changed it was a

 8          different font.

 9               And we don't have pictures of

10          any other Taishan marking, even the

11          ones they acknowledge that they made

12          on their Manufacturer Profile Form.

13          We don't have a single picture of

14          that.

15               So, therefore, we don't have

16          the picture.  We don't have any of the

17          other production runs with any of the

18          other fonts, so we don't have a

19          picture like these three where we can

20          show it and Taishan will say, you know

21          what, we'll accept that one.

22               So to accept their formulation,

23          the only narrow band of homeowner that

24          gets compensation happens to be

25          someone that had the same font from
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 391 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 260 of 281
March 11, 2019

1          the same production run that got lucky

2          that it was one of these three stacks

3          that they found.

4                Anyone else that's not a direct

5          match to this, they're out because we

6          can't prove that it matches an example

7          of the drywall that was in their

8          possession.

9                In so doing, they walk away

10         from the responsibility for every

11         other piece of drywall that they

12         manufactured which was sufficient to

13         build thousands of homes.

14               So the question becomes if

15         we're in the situation where we want

16         to know what else is there besides

17         these three -- just these three

18         pallets, where are the e-mails

19         directly to the customers in the U.S.?

20               We know Mr. Che, foreign sales

21         manager, and we've produced many

22         examples where he's directly e-mailing

23         back and forth with U.S. customers.

24               He's got a computer that he did

25         that with in this time frame.  He

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 392 of 344
Case 2:11-cv-22408-MCE-Document 253-2 Document 8-1 Docket 04/25/2013 Page 261 of 281
March 11, 2019

1        testified that it's been preserved.

2        He was told to hang on to the

3        computer.  So far so good.

4              Then the question becomes:  In

5        preparation for the deposition today,

6        did you search your own e-mails, your

7        own records to see what you had for

8        foreign sales?  Did you e-mail a

9        customer?  Did they e-mail back an

10       edge tape or a photograph or something

11       that they had that they wanted that

12       would be evidence to us that could be

13       used in the case?  What do you have?

14             And his response was:

15             (Video playback commenced.)

16             "QUESTION:  In preparing for

17       testifying as Taishan's corporate

18       representative, did you look at your

19       own computer hardware and e-mails to

20       look for evidence of

21       American-sized-drywall?

22             "ANSWER:  No, because the

23       attorneys already have all the

24       documents and evidence.  It would be

25       unefficient for unprofessionals like

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 393 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 262 of
281
March 11, 2019

1          us to work on that.  In that case, you

2          have to wait until next year to depose

3          me."

4                    (Video playback stopped.)

5                    MR. SERPE:  So when asked did

6          he look at his own e-mails, he says,

7          no, I didn't.  It would be inefficient

8          for unprofessionals like us to work on

9          that.  In that case you would have to

10         wait until next year to depose me.

11                   Let me break that down into two

12         halves.  The first is:  This is his

13         computer, where he stores e-mails from

14         foreign entities, who they were, how

15         to search that.  Who better to look at

16         that computer for evidence of U.S.

17         sales than the guy whose computer it

18         was who is the director of foreign

19         sales who's the 30(b)(6) witness?

20                   Yet his testimony is he didn't

21         look at any of that.  He didn't do a

22         search.  He's going to rely on maybe

23         somebody else did that.

24                   And then he concludes, in that

25         case, if you want me to do this,

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 294 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 263 of 281
March 11, 2019

```
1        you'll have to wait until next year to
2        depose me.
3             Third time out deposing him,
4        clearly on the notice of deposition it
5        was directly on this topic.  One of
6        the topics was making sure you got the
7        witness completely ready to testify
8        with documents in a manner in which he
9        was prepared for the deposition, and
10       he wasn't even reviewing his own
11       e-mails.  He did no search and then
12       he -- he'll joke that if he's got to
13       do that, if he's actually got to look
14       for his own responsive documents, we
15       can come back next year.
16            The look on his face as he
17       finished that answer to me was a
18       triumphant smirk.
19            Special Master, it's to do just
20       this and bring it back to burden and
21       to the equities here.
22            Mr. Walls, Mr. and Mrs. Walls
23       are one of the priority plaintiffs
24       whose case is set for trial this
25       summer.  They're a lovely retired
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 295 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 264 of 281
March 11, 2019

```
 1        couple.  Their entire life was focused
 2        towards being able to retire and have
 3        this home.
 4              The testimony from Mr. Walls
 5        indicates what a day in the life is
 6        like for the Walls family, and his
 7        testimony is very gripping, but I
 8        particularly want to point out that
 9        twice a day she drives by the house.
10        Some days she pulls over.  She pulls
11        over because the house that she picks
12        up is just down the street and she
13        sees, and when she comes home, she's a
14        wreck.  She's crying, she's all messed
15        up.
16              So a year, come back in a year
17        if you want me to look for my own
18        records, which we didn't keep, or the
19        ones that are on my computer as the
20        head of the foreign sales department
21        I'm not actually going to look at,
22        when their overall strategy was don't
23        turn it over unless it's beneficial to
24        us.
25              We believe that in that
```

Case 2:09-md-02047-EEF-MBN Document 22380-39 Filed 11/19/19 Page 296 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 265 of 281
March 11, 2019

1    environment, as special master,

2    reviewing the evidence and for the

3    reasons we pointed out, that you

4    should find that this problem that

5    they created, that the plaintiffs are

6    suffering with, that these plaintiffs,

7    based on this vast amount of evidence

8    on the drywall imported by Taishan and

9    their lack of any concrete information

10   that it wasn't their drywall, we

11   believe you should rule in favor

12   across the board on all of these

13   buckets.  Thank you.

14        MS. EIKHOFF:  I don't have a

15   PowerPoint for my closing, Your Honor,

16   Special Master Lee.  But if you have

17   their PowerPoint handy, at a certain

18   point I may ask you to put up their

19   slide number 9.

20        Ms. Lee, what you just heard

21   from the plaintiffs was not a

22   summation of the evidence as closings

23   are.  Their conclusion was not focused

24   on the proof that they have to satisfy

25   their Florida law burden to show by

Case 2:09-md-02047-EEF-MBN   Document 22363-38   Filed 11/19/19   Page 297 of 344
Case 1:11-cv-22408-MGC   Document 253   Entered on FLSD Docket 04/25/2013   Page 266 of 281
March 11, 2019

```
 1          the greater weight of the evidence

 2          that certain of these categories

 3          should be attributed to Taishan.

 4               Instead of a summation of their

 5          evidence on product ID, you heard more

 6          of the same theme; the theme that we

 7          told you to expect when we filed our

 8          brief, the theme that we told you to

 9          expect when I stood up here this

10          morning in my opening remarks, the

11          theme that they have articulated

12          bluntly and clearly:  Taishan is a bad

13          actor.

14               And that's what they're trying

15          to put in front of you in place of

16          evidence of product ID to connect the

17          boards of their clients to boards that

18          were manufactured by Taishan.

19               And they keep telling you over

20          and over in many ways with many

21          distorted examples of what a bad actor

22          Taishan is.  And the goal of those

23          stories is to persuade you to presume

24          the evidence that they don't have, to

25          flip the burden of proof on Taishan,
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 298 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 267 of 281
March 11, 2019

1    to make Taishan prove that it didn't

2    make the boards for their hundreds and

3    hundreds of claimants.

4         That is not how Florida law

5    works, and it would be a violation of

6    Florida law to be persuaded by these

7    discovery stories and these

8    anti-Chinese manufacturer defendant

9    stories.  It would be a violation of

10   Florida law to replace their

11   evidentiary burden with an assumption

12   that Taishan made these boards because

13   we don't like Taishan.

14        That is not fair, that is not

15   justice, and that is not the law.

16        Now, we've heard a lot about

17   Taishan.  They've been painted as a

18   very nefarious villain today.  It's

19   not the first time we've heard it.

20   We've been hearing it for years.

21        They say Taishan is a giant

22   corporation over there in China.  Let

23   me tell you a little bit more about

24   Taishan's operations in China, because

25   I've been there more than once.

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 299 of 344
Case 2:11-cv-22408-MCE-DPC Document 253 Trial Preparation, Ludbecke 04/29/2019 Page 268 of 281
March 11, 2019

1    Taishan has no English speakers

2    that work in Taishan.  They have no

3    presence outside of -- in the United

4    States whatsoever.  E-mails that you

5    have seen in English, the testimony

6    has been that they were translated

7    from Chinese to English using

8    something akin to Google Translate.

9    They don't have an e-mail

10   server.  Any e-mails that they send

11   are on the Chinese equivalent of like

12   a Yahoo or a Hotmail.

13   They have never exported goods

14   to the United States before 2006.  As

15   we've described, this was new for them

16   to ever be called upon to make boards

17   of these sizes to go over to the

18   United States.

19   And they certainly had no

20   experience with U.S. litigation.  The

21   idea, the whole concept of the U.S.

22   legal system is something that is so

23   foreign to their minds, they had no

24   frame of reference.

25   And I'm -- I've just been to

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 300 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2019 Page 269 of 281
March 11, 2019

1    Taishan's headquarters and factory in
2    the last couple of months.  I went the
3    week after Christmas, working on this
4    case.
5        There's no heat in the factory.
6    There's no heat in the offices.  It
7    was 18 degrees.  There's no lights in
8    the offices unless -- only in the room
9    that you're in.  There's no
10   receptionist.
11       This is a company that in 2006
12   was called upon to make a new type of
13   board for a new type of customer with
14   absolutely no frame of reference at
15   all that U.S. litigation would arise
16   from it.
17       And so they operated the way
18   that they always operate, in a
19   not-very-sophisticated manufacturing
20   environment in the Shandong province
21   of the People's Republic of China.
22       They communicated using slips
23   of paper.  They communicated by phone.
24   They communicated in person.
25       Yeah, there were some e-mails.

Case 2:09-md-02047-EEF-MBN   Document 22363-38   Filed 11/19/19   Page 301 of 344
Case 2:11-cv-22408-MCE-DLB   Document 293   Filed 04/25/2019   Docket 04/25/2019   Page 270 of 281
March 11, 2019

```
1      We produced those e-mails.  Those

2      e-mails were produced -- e-mails

3      regarding American sales were produced

4      in 2012 in this case.  Plaintiffs have

5      had those for years.

6            And so we hear so much about

7      this evil intent to only mail the

8      evidence that is beneficial to

9      Taishan Company.  That's the modus

10     operandi of this evil Chinese company.

11           Let me give you a little

12     context of this document, because

13     you've heard it a lot today.  This was

14     an internal memorandum that was

15     written by Taishan in Chinese to other

16     Chinese nationals.

17           On May 11th, 2009, they were

18     just hearing about litigation in the

19     U.S., and before Taishan had retained

20     U.S. counsel, they were discussing how

21     to respond to this new development

22     that they weren't expecting.

23           And they respond to it the way

24     that nonlawyer, non-American, Chinese

25     manufacturing executives would
```

March 11, 2019

1          respond, in an uninformed, probably

2          naive manner.

3               What they say here doesn't make

4          sense in the U.S. legal system, and

5          the plaintiffs have alluded to that.

6          They say, well, we're inclined not to

7          respond to the lawsuit, but if it's

8          necessary, we can maybe mail some

9          evidence that's helpful to the

10         Taishan Company, just to the court.

11         We'll mail it to the court, and then

12         we can have the government departments

13         interfere to eliminate and reduce some

14         of this negative impact.

15              They have contorted that

16         uninformed internal nonlegal

17         discussion, contorted it to a motive

18         that they say persists to this day and

19         this month.  They accuse us currently

20         of only producing things that are

21         beneficial to us and accuse us of

22         withholding documents that aren't

23         beneficial to us.

24              It was not beneficial to us to

25         find these exemplars of generic

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 303 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2019 Page 272 of
281
March 11, 2019

```
 1          markings because with the admissions
 2          of those exemplars, Taishan has
 3          accepted the legal responsibility for
 4          PID for half of the generic boards at
 5          issue in this case.
 6               If we were going to
 7          systematically withhold negative
 8          documents and evidence and only
 9          produce what's beneficial to us in
10          this case for nine years, those
11          exemplar photos that we produced never
12          would have seen the light of day.
13               So what you have here is not a
14          spoliation story.  What you have here
15          is a story of a manufacturing company
16          in China that didn't know that what it
17          was doing would, years later, become
18          subject to lawsuits in the United
19          States of America.
20               And the plaintiffs acknowledge
21          this.  They've acknowledged it today.
22          They've acknowledged it in their
23          brief, that when we threw away slips
24          of paper that might have said exactly
25          what the spray marking was going to be
```

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 304 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2019 Page 273 of
281
March 11, 2019

1       at the -- that went to the factory,

2       that was in the normal course.  That

3       wasn't with knowledge that it was

4       evidence.  That wasn't in bad faith,

5       dereliction of U.S. litigation duties.

6               And so you look at their brief,

7       and they don't use the word

8       "spoliation."  It's nowhere in their

9       brief.  Instead, they want to infuse

10      Taishan's normal recordkeeping in

11      China in 2006 and 2007 with this bad

12      motive and this evil intent that's

13      unfounded and it's unfair.

14              Now, this isn't the first time

15      they've tried to make these kind of

16      points to the court, and we spent a

17      lot of time in this case in 2015 and

18      early 2016 dealing with discovery

19      issues that the plaintiffs said was

20      spoliation.

21              And I'm going to read to you

22      from Judge Fallon's order, which is at

23      the MDL Docket No. 19959 filed on

24      January 8th, 2016.

25              And in that order the Court

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 305 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2019 Page 274 of
281
March 11, 2019

```
 1            said -- this is the bold heading:  The

 2            PSC Has Not Proven Spoliation.  He

 3            said, "This Court's Pretrial Order

 4            No. 1 entered on June 16th, 2009

 5            required all parties to take

 6            reasonable steps to preserve all

 7            documents, data and tangible things

 8            containing information potentially

 9            relevant to the subject matter of the

10            litigation.

11                 "The Court finds insufficient

12            evidence of intentional failure to

13            preserve evidence under PTO #1 to

14            justify a finding of spoliation.  The

15            PSC has failed to prove that Taishan

16            destroyed, lost or altered evidence

17            relevant to potential violations of

18            the injunction or the relationship

19            between the defendants.

20                 "The Court does not find

21            evidence that Taishan intentionally

22            violated PTO #1 or the general duty of

23            preservation."

24                 They don't have a Rule 37

25            spoliation case.  That's why they
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 306 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2019 Page 275 of 281
March 11, 2019

1    haven't filed a motion, and their

2    brief doesn't say that.  Instead,

3    their brief kind of makes it sort of

4    murkier.

5         Well, they threw away documents

6    at the time, and those documents would

7    be helpful now if they had been saved,

8    and they're bad guys, so let's go

9    ahead and presume that those documents

10   would be helpful to us.

11        You can't do that under Florida

12   law.  You can't do it under the

13   Eleventh Circuit either.

14        And there's another issue with

15   PTO #1 preservation and spoliation,

16   and we put it in our brief.  I didn't

17   think we were going to have to go

18   there today, but seems like the door's

19   been opened.

20        If we want to look at failure

21   to comply with PTO #1 preservation in

22   this case, we need look no further

23   than the plaintiffs' Supplemental

24   Profile Forms, which have been turned

25   in in this case in the last year.

March 11, 2019

 1            And those forms, which were

 2       signed by the plaintiffs under penalty

 3       of perjury, 624 of the claimants said

 4       they did not comply with PTO #1 and

 5       preserve the specific drywall evidence

 6       that Judge Fallon ordered them to.

 7            That is 79% of the plaintiffs

 8       that said that they remediated their

 9       properties.  79% of them got rid of

10       the samples of drywall that could have

11       helped us on PID.

12            And so we don't think that they

13       can be heard to talk about Taishan and

14       document preservation, particularly

15       when there's no showing that Taishan

16       violated PTO #1.  They cannot be heard

17       and at the same time hundreds of their

18       clients have not complied with the

19       same order that they would be pointing

20       to.

21            And so what we come to is this:

22       We're not standing before you, Special

23       Master Lee, and being a recalcitrant

24       defendant that won't accept any

25       responsibility for anything and is

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 308 of 344
Case 2:12-cv-22408-MCE Document 253 Entered on FLSD Docket 04/25/2019 Page 277 of 281
March 11, 2019

1    making them prove every single jot and

2    every single tittle.

3         It is not consistent with the

4    plaintiffs' characterization of us of

5    taking no responsibility when we have

6    admitted to categories, based on our

7    own evidence production, that assumes

8    responsibility for the PID for 47% of

9    the claims in this case.

10         But they're using their

11   mischaracterization of Taishan and

12   their prejudices against Taishan as a

13   party in this case in asking you to

14   flip the burden, to not make them

15   produce evidence, and to ignore away

16   all of the other evidence.

17         And we've shown you today,

18   Ms. Lee, that there is evidence of

19   other manufacturers and other players

20   in the marketplace that should be

21   called here -- should have been called

22   here to also stand and defend

23   themselves against these allegations.

24         It is not reasonable to

25   conclude that every variation of

March 11, 2019

1     drywall, every marking, including no

2     markings, all of them, every single

3     one that's presented to you today,

4     they're all Taishan.

5          That is not a reasonable

6     conclusion, and we think that the only

7     way you could conclude it would be if

8     you accepted their mischaracterization

9     of Taishan as a litigant and of

10    Florida law and Eleventh Circuit law.

11    And we ask you to hold them to their

12    burden of proof.  Thank you.

13         MR. SERPE:  Special Master, was

14    there anything as part of that

15    argument that you had a question about

16    that you would like us to address?  I

17    mean, I'm dying to jump up and

18    ad seriatim go through that, but I

19    think that the parties have

20    articulated our positions.

21         SPECIAL MASTER LEE:  Okay.  So

22    you're done?

23         MR. SERPE:  Yes.

24         SPECIAL MASTER LEE:  Okay.

25    Does either side desire to do any

March 11, 2019

```
 1          supplemental briefing on any issue?
 2          We should decide that today.
 3                  MR. SERPE:  Special Master,
 4          unless you would like anything
 5          addressed, of course we'll respond to
 6          any request you make for
 7          clarification.
 8                  In an effort to bring closure
 9          for these families and not inject
10          another briefing schedule into this,
11          we would just as soon stand on what
12          we've submitted so far.
13                  MS. EIKHOFF:  We agree.
14                  SPECIAL MASTER LEE:  Okay.
15          Then what I'm inclined to do is I'm
16          going to go back through my notes and
17          go back through your briefs and the
18          appendices to your briefs, and then if
19          there's something that I have a
20          specific question about, I will e-mail
21          the group by Friday, probably, and
22          I'll group everything and we can
23          decide then if we should have a
24          conference call or you can just answer
25          in writing.  It won't be anything that
```

Case 2:09-md-02047-EEF-MBN Document 22363-38 Filed 11/19/19 Page 311 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2019 Page 280 of 281
March 11, 2019

1    requires long anything, so answering

2    in writing is perfectly okay, but if

3    you think there's a reason that we'd

4    want to get on the phone, we can do

5    that as well.  So I will let you know

6    that by Friday.

7         Is there anything else that we

8    need to address?

9         MS. DUGGAN:  We did have one

10   small favor.  I don't know if this has

11   to be on the record.

12        SPECIAL MASTER LEE:  We can go

13   off the record.

14        (Proceedings recessed at

15   4:29 p.m.)

16             --o0o--

17

18

19

20

21

22

23

24

25

Case 2:09-md-02047-EEF-MBN Document 22363-39 Filed 11/19/19 Page 312 of 344
Case 2:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2019 Page 281 of 281
March 11, 2019

```
1              REPORTER'S CERTIFICATION

2

3          I, Michael E. Miller, FAPR, RDR, CRR,

4    Notary Public, hereby certify that this

5    transcript is a true record of the

6    proceedings held in the foregoing matter on

7    Monday, March 11, 2019.

8          I further certify that I am neither

9    counsel for, related to, nor employed by any

10   of the parties or attorneys in the action in

11   which these proceedings were taken; and,

12   further, I am not a relative or employee of

13   any attorney of record in these proceedings,

14   nor am I financially or otherwise interested

15   in the outcome of said proceedings.

16

17         Subscribed and sworn to on March 13, 2019.

18

19

20   _____

     MICHAEL E. MILLER,

21   Fellow of the Academy of

     Professional Reporters

22   NCRA Registered Diplomate Reporter

     NCRA Certified Realtime Reporter

23

     Notary Public

24   My Commission Expires: 7/9/2020

25
```

# EXHIBIT

## "F"

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION, | MDL Docket No. 2047 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE FALLON MAG. JUDGE WILKINSON |
| EDUARDO AND CARMEN AMORIN, *et al.*, individually and on behalf of others similarly situated | |
| Plaintiffs, | Case No. 2:11-cv-01395-EEF-JCW |
| vs. | |
| TAISHAN GYPSUM CO., LTD. F/K/A SHANDONG TAIHE DONGXIN CO., LTD.; TAIAN TAISHAN PLASTERBOARD CO., LTD., *et al.*, | |
| Defendants. | |

### TAISHAN GYPSUM CO., LTD. AND TAI'AN TAISHAN PLASTERBOARD CO., LTD.'s OBJECTIONS AND RESPONSES TO THE PLAINTIFF'S STEERING COMMITTEE'S SUPPLEMENTAL DOCUMENT REQUEST

Defendants Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd. ("Taishan") object and respond to the Plaintiff's Steering Committee's ("PSC") Supplemental Document Request as follows:

### GENERAL OBJECTIONS

Taishan hereby sets forth its general objections to the PSC's Supplemental Document Request on the following basis, all of which are incorporated into Taishan's responses by this reference:

1. Taishan objects to these Requests as unauthorized and untimely to the extent it purports to relate to "ALL CASES" in the MDL. Taishan submits that the only case in the MDL to

1

which these Requests could possibly relate is *Amorin*, 2:11-CV-01395-EEF-JCW (E.D. La.).

2. Taishan objects to all of the Document Requests to the extent they seek information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, and/or other applicable privileges.

3. Taishan objects to these Document Requests to the extent they seek or purport to seek information or documents: which are already in the custody of PSC; which are in the possession of other parties, third parties or in the public domain; or which are not in Taishan's possession, custody or control. To the extent that the PSC seeks information that is more readily available from other sources or already in the possession of the PSC, Taishan objects to these Document Requests as unduly burdensome. Taishan also objects to these Document Requests to the extent they seek to impose upon Taishan the duty to obtain documents, things, or other information from any sources other than its own corporate records. Such document requests are improper and exceed the scope of permissible discovery.

4. All of these General Objections are incorporated by reference into each and every Document Request response set forth below. Without waiving, and in addition to the foregoing, Taishan makes the following specific objections to the PSC's Document Request:

## SPECIFIC OBJECTIONS AND RESPONSES TO THE PLAINTIFF'S STEERING COMMITTEE'S SUPPLEMENTAL DOCUMENT REQUEST

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 1:**

All documents relating to the method that you were relying on in your assertion to Special Master Lee that "chemical analysis could identify the maker of the drywall" (Taishan PowerPoint Slide 36) and/or that Taishan believes is available to compare chemical components of residual boards found in Taishan's warehouse with boards from Plaintiffs' homes. See 2019 CHE Dep. At 71:1-6.

**RESPONSE NO. 1:**

Taishan objects to Document Request No. 1 to the extent that it seeks attorney-client communications and attorney-work product. Specifically, "the method you were relying on in your assertion to Special Master Lee" quotes from a demonstrative created by attorneys and not entered into evidence. For the basis of this demonstrative, Taishan refers Plaintiffs to Taishan's PID Deposition, January 22, 2019, at 71:1-6. Additionally, Plaintiffs are not entitled to documents reflecting privileged and protected communications between Taishan, its attorneys and consulting experts regarding possible chemical analyses. Subject to and without waiving the foregoing objections, Taishan responds that it has no non-privileged, non-work product protected documents in its custody and control.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 2:**

All documents relating to any and all methods for chemical analysis for product identification for Chinese drywall.

**RESPONSE NO. 2:**

Taishan objects to Document Request No. 2 to the extent that it seeks attorney-client communications and attorney-work product. Specifically, Plaintiffs are not entitled to documents reflecting privileged and protected communications between Taishan, its attorneys and consulting experts regarding possible chemical analyses. Subject to and without waiving the foregoing objections, Taishan responds that it has no non-privileged, non-work product protected documents in its custody and control.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 3:**

All documents and samples (including those from other manufacturers) that you contend can serve as exemplars or known samples of Chinese drywall that can be used for the purpose of matching them against samples from individual homes.

**RESPONSE NO. 3:**

Taishan objects to Document Request No. 3 as vague, ambiguous and confusing because "documents" cannot be "exemplars" of Chinese drywall. Reasonably interpreting Request No. 3 as seeking only drywall samples, Taishan refers Plaintiffs to Taishan's PID Deposition, January 22, 2019, which states, "from the chemical analysis channel, we can compare whether the component of chemical from this board is the same as the chemical component which is covered from the residual boards in Taishan's warehouse." Subject to and without waiving the foregoing objections, Taishan is willing to make available to Plaintiffs exemplars from the drywall in its custody and control that are photographed in TG-PID-000001-000033, subject to the Court's approval for any untimely discovery activity.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 4:**

All documents from any tests you have conducted regarding chemical analysis to

4

identify the maker of the drywall.

**RESPONSE NO. 4:**

      Taishan responds that it has conducted no "tests . . . regarding chemical analysis to identify the maker of the drywall," and thus has no documents responsive to Document Request No. 4.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 5:**

      All documents from any tests in which chemical analysis was used to identify the maker of the drywall.

**RESPONSE NO. 5:**

      See Response to Request No. 4.  N/A.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 6:**

      Documents identifying the person(s) who conducted the above mentioned tests and their credentials.

**RESPONSE NO. 6:**

      See Response to Request No. 4.  N/A.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 7:**

      Documents identifying the source of the gypsum used in the drywall used in any of the above mentioned samples and/or tests.

**RESPONSE NO. 7:**

      See Response to Request No. 4.  N/A.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 8:**

      Documents identifying the batches, lot numbers, factory, and dates of manufacture for the drywall used in any of the above mentioned samples and/or tests.

**RESPONSE NO. 8:**

See Response to Request No. 4.  N/A.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 9:**

Documents identify [sic] the end market(s) to which drywall from the aforementioned batches and lot numbers were sold.

**RESPONSE NO. 9:**

Taishan objects to Document Request No. 9 as vague, ambiguous and confusing.  To the extent Request No. 9 references "aforementioned batches and lot numbers," and to the extent that phrase references Document Request No. 8, and to the extent that Document Request No. 8 is limited to "above mentioned samples and/or tests," Taishan refers to its Response to Requests No. 3 and No. 4.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 10:**

All literature, reports, and other documentation that discusses the reliability of chemical analysis to accurately conduct product identification for Chinese drywall.

**RESPONSE NO. 10:**

Taishan objects to Document Request No. 10 to the extent that it seeks attorney-client communications and attorney-work product.  Specifically, Plaintiffs are not entitled to documents reflecting privileged and protected communications between Taishan, its attorneys and consulting experts regarding possible chemical analyses.  Subject to and without waiving the foregoing objections, Taishan responds that it has no non-privileged, non-work product protected documents in its custody and control.

Respectfully submitted this 12th day of April 2019.

/s Michael P. Kenny
Bernard Taylor, Esq.
Georgia Bar No. 669625
Michael P. Kenny, Esq.
Georgia Bar No. 415064
Christina Hull Eikhoff, Esq.
Georgia Bar No. 242539
David Venderbush, Esq.
New York Bar No. 2920817
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
bernard.taylor@alston.com
mike.kenny@alston.com
christy.eikhoff@alston.com
david.venderbush@alston.com

*Counsel for Taishan Gypsum Co., Ltd. and
Tai'an Taishan Plasterboard Co., Ltd.*

Alan Dean Weinberger
Louisiana Bar No. 13331
HANGARTNER, RYDBERG & TERRELL, LLC
One Shell Square
701 Poydras Street, Suite 310
New Orleans, Louisiana 70179
Phone: (504) 434-6815
Fax: (504) 522-5689
aweinberger@hanrylaw.com

*Local Counsel for Taishan Gypsum Co., Ltd. and
Tai'an Taishan Plasterboard Co., Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, by U.S. mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 12th day of April, 2019.

/s Michael P. Kenny
Michael P. Kenny, Esq.
Georgia Bar No. 415064
ALSTON & BIRD LLP
1201 West Peachtree Street NW
Atlanta, Georgia  30309
Phone: (404) 881-7000
Fax: (404) 881-7777
mike.kenny@alston.com

*Counsel for Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No. 1:11-CV-22408-MGC**

EDUARDO AND CARMEN AMORIN, *et al.*,
individually, and on behalf of all others
similarly situated,

       Plaintiffs,

v.

TAISHAN GYPSUM CO., LTD. F/K/A SHANDONG
TAIHE DONGXIN CO., LTD.; TAIAN TAISHAN
PLASTERBOARD CO., LTD., *et al.*,

       Defendants.

_____/

**TAISHAN GYPSUM CO., LTD. AND TAI'AN TAISHAN PLASTERBOARD**
**CO., LTD.'s OBJECTIONS AND RESPONSES TO THE PLAINTIFF'S STEERING**
**COMMITTEE'S SUPPLEMENTAL DOCUMENT REQUEST**

    Defendants Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd.

("Taishan") object and respond to the Plaintiff's Steering Committee's ("PSC") Supplemental

Document Request as follows:

**GENERAL OBJECTIONS**

    Taishan hereby sets forth its general objections to the PSC's Supplemental Document

Request on the following basis, all of which are incorporated into Taishan's responses by this

reference:

1.   Taishan objects to these Requests as untimely under Dkt. No. 174, which established a PID

     discovery deadline of March 5, 2019, and a PID evidentiary hearing, which was conducted

     on March 10, 2019. These Requests were served on Taishan after the close of PID

     discovery and after the PID evidentiary hearing.

1

2. Taishan objects to all of the Document Requests to the extent they seek information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, and/or other applicable privileges.

3. Taishan objects to these Document Requests to the extent they seek or purport to seek information or documents: which are already in the custody of PSC; which are in the possession of other parties, third parties or in the public domain; or which are not in Taishan's possession, custody or control. To the extent that the PSC seeks information that is more readily available from other sources or already in the possession of the PSC, Taishan objects to these Document Requests as unduly burdensome. Taishan also objects to these Document Requests to the extent they seek to impose upon Taishan the duty to obtain documents, things, or other information from any sources other than its own corporate records. Such document requests are improper and exceed the scope of permissible discovery.

4. All of these General Objections are incorporated by reference into each and every Document Request response set forth below. Without waiving, and in addition to the foregoing, Taishan makes the following specific objections to the PSC's Document Request:

**SPECIFIC OBJECTIONS AND RESPONSES TO THE PLAINTIFF'S STEERING COMMITTEE'S SUPPLEMENTAL DOCUMENT REQUEST**

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 1:**

All documents relating to the method that you were relying on in your assertion to Special Master Lee that "chemical analysis could identify the maker of the drywall" (Taishan

PowerPoint Slide 36) and/or that Taishan believes is available to compare chemical components of residual boards found in Taishan's warehouse with boards from Plaintiffs' homes. See 2019 CHE Dep. At 71:1-6.

**RESPONSE NO. 1:**

Taishan objects to Document Request No. 1 to the extent that it seeks attorney-client communications and attorney-work product. Specifically, "the method you were relying on in your assertion to Special Master Lee" quotes from a demonstrative created by attorneys and not entered into evidence. For the basis of this demonstrative, Taishan refers Plaintiffs to Taishan's PID Deposition, January 22, 2019, at 71:1-6. Additionally, Plaintiffs are not entitled to documents reflecting privileged and protected communications between Taishan, its attorneys and consulting experts regarding possible chemical analyses. Subject to and without waiving the foregoing objections, Taishan responds that it has no non-privileged, non-work product protected documents in its custody and control.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 2:**

All documents relating to any and all methods for chemical analysis for product identification for Chinese drywall.

**RESPONSE NO. 2:**

Taishan objects to Document Request No. 2 to the extent that it seeks attorney-client communications and attorney-work product. Specifically, Plaintiffs are not entitled to documents reflecting privileged and protected communications between Taishan, its attorneys and consulting experts regarding possible chemical analyses. Subject to and without waiving the foregoing objections, Taishan responds that it has no non-privileged, non-work product protected documents in its custody and control.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 3:**

All documents and samples (including those from other manufacturers) that you contend can serve as exemplars or known samples of Chinese drywall that can be used for the purpose of matching them against samples from individual homes.

**RESPONSE NO. 3:**

Taishan objects to Document Request No. 3 as vague, ambiguous and confusing because "documents" cannot be "exemplars" of Chinese drywall. Reasonably interpreting Request No. 3 as seeking only drywall samples, Taishan refers Plaintiffs to Taishan's PID Deposition, January 22, 2019, which states, "from the chemical analysis channel, we can compare whether the component of chemical from this board is the same as the chemical component which is covered from the residual boards in Taishan's warehouse." Subject to and without waiving the foregoing objections, Taishan is willing to make available to Plaintiffs exemplars from the drywall in its custody and control that are photographed in TG-PID-000001-000033, subject to the Court's approval for any untimely discovery activity.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 4:**

All documents from any tests you have conducted regarding chemical analysis to identify the maker of the drywall.

**RESPONSE NO. 4:**

Taishan responds that it has conducted no "tests . . . regarding chemical analysis to identify the maker of the drywall," and thus has no documents responsive to Document Request No. 4.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 5:**

All documents from any tests in which chemical analysis was used to identify the maker of the drywall.

**RESPONSE NO. 5:**

See Response to Request No. 4.  N/A.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 6:**

Documents identifying the person(s) who conducted the above mentioned tests and

their credentials.

**RESPONSE NO. 6:**

See Response to Request No. 4.  N/A.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 7:**

Documents identifying the source of the gypsum used in the drywall used in any of

the above mentioned samples and/or tests.

**RESPONSE NO. 7:**

See Response to Request No. 4.  N/A.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 8:**

Documents identifying the batches, lot numbers, factory, and dates of manufacture

for the drywall used in any of the above mentioned samples and/or tests.

**RESPONSE NO. 8:**

See Response to Request No. 4.  N/A.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 9:**

Documents identify [sic] the end market(s) to which drywall from the aforementioned

batches and lot numbers were sold.

**RESPONSE NO. 9:**

Taishan objects to Document Request No. 9 as vague, ambiguous and confusing.  To the

extent Request No. 9 references "aforementioned batches and lot numbers," and to the extent that

phrase references Document Request No. 8, and to the extent that Document Request No. 8 is limited to "above mentioned samples and/or tests," Taishan refers to its Response to Requests No. 3 and No. 4.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 10:**

All literature, reports, and other documentation that discusses the reliability of chemical analysis to accurately conduct product identification for Chinese drywall.

**RESPONSE NO. 10:**

Taishan objects to Document Request No. 10 to the extent that it seeks attorney-client communications and attorney-work product. Specifically, Plaintiffs are not entitled to documents reflecting privileged and protected communications between Taishan, its attorneys and consulting experts regarding possible chemical analyses. Subject to and without waiving the foregoing objections, Taishan responds that it has no non-privileged, non-work product protected documents in its custody and control.

Dated: April 12, 2019

Respectfully submitted,

*/s/ Enjoliqué Aytch*
Enjoliqué Aytch
Fla. Bar No. 0104881
Email: enjolique.aytch@akerman.com
Akerman LLP
Las Olas Centre II, Suite 1600
350 East Las Olas Boulevard
Fort Lauderdale, FL 33301-2229
Telephone: (954) 463-2700
Facsimile: (954) 463-2224

**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777

Bernard Taylor, Esq.
Georgia Bar No. 669625
Michael P. Kenny, Esq.
Georgia Bar No. 415064
Christina Hull Eikhoff, Esq.
Georgia Bar No. 242539
David Venderbush, Esq.
New York Bar No. 2920817
bernard.taylor@alston.com
mike.kenny@alston.com
christy.eikhoff@alston.com
david.venderbush@alston.com

*Attorneys for Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd.*

## SERVICE LIST

Arnold Levin, Esq.
Sandra Duggan, Esq.
Frederick S. Longer, Esq.
LEVIN SEDRAN & BERMAN LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500
*Attorneys for Plaintiffs*

Jay P. Dinan
Email: jdinan@yourlawyer.com
Parker Waichman LLP
27300 Riverview Center Boulevard, Suite
103
Bonita Springs, Florida 34134
Office: 239.390.1000
Fax: 239.390.0055
*Counsel for Parker Waichman LLP Plaintiffs*

Dawn Barrios, Esq.
Emma Kingsdorf Schwab, Esq.
BARRIOS, KINGSDORF & CASTEIX,
LLP
701 Poydras Street, Suite 3650
New Orleans, Louisiana 70139,
504-524-3300
*Attorneys for Plaintiffs*

Jimmy Faircloth, Esq.
Faircloth, Melton, & Sobel
Gras Town Plaza,
412 N. 4th Street, Suite 230
Baton Rouge, LA 70802,
(225) 343-9535
*Attorney for Plaintiffs*

Leonard A. Davis, Esq.
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue,
New Orleans, Louisiana 70113,
PH: (504) 581-4892
*Attorneys for Plaintiffs*

Scott A. George, Esq.
Jeffrey S. Grand, Esq.
Christopher Seeger, Esq.
Seeger Weiss LLP
1515 Market Street, Suite 1380
Philadelphia, PA 19102,
(215) 564-2300
*Attorney for Plaintiffs*

Pearl Anna Robertson, Esq.
IRPINO, AVIN, HAWKINS, LLP
2216 Magazine Street
New Orleans, LA 70130
504-525-1500
*Attorneys for Plaintiffs*

Jeffrey A. Breit, Esq.
BREIT DRESCHER IMPREVENTO,
P.C.
600 22nd Street, Suite 402
Virginia Beach, VA 23451
757-622-6000
*Attorneys for Plaintiffs*

James V. Doyle, Esq.
DOYLE LAW FIRM, PC
2100 Southbridge Pkwy., Suite 650
Birmingham, AL 35209
Tele: 205-533-9500 Fax: 844-638-5812
Jim.Doyle@DoyleFirm.com

Richard S. Lewis, Esq.
Hausfeld LLP,
1700 K Street, NW., Ste. 650
Washington, DC 20006
(202) 540-7200
*Attorneys for Plaintiffs*

*Attorneys for Plaintiffs*

| | |
|---|---|
| Richard J. Serpe, Esq.<br>LAW OFFICES OF RICHARD J.<br>SERPE, PC.<br>580 E. MAIN STREET, SUITE 310<br>Norfolk, Virginia 23510<br>757-233-0009<br>*Attorneys for Plaintiffs* | Patrick Shanan Montoya<br>Email: Patrick@colson.com<br>Colson Hicks Eidson<br>255 Alhambra Circle, PH<br>Coral Gables, FL 33134-2351<br>Telephone: (305) 476-7400<br>Facsimile: (305) 476-7444<br>*Interim Lead Counsel for Plaintiffs* |
| David Venderbush, Esq.<br>Michael P. Kenney, Esq.<br>Kristine McAlister Brown, Esq.<br>Christina Hull Eikhoff, Esq.<br>Bernard Taylor, Esq.<br>Alston & Bird LLP<br>1201 West Peachtree Street<br>Atlanta, Georgia 30309-3424<br>Tel: 404-881-7000 Fax: 404-881-7777<br>*Counsel for Defendant Taishan Gypsum Co.<br>Ltd, & Tai'an Taishan Plasterboard Co.* | Eric Matthew Hairston, Esq.<br>L. Christopher Vejnoska, Esq.<br>James L. Stengel, Esq.<br>Andrew K. Davidson, Esq.<br>Orrick, Herrington & Sutcliffe, LLP<br>The Orrick Building<br>405 Howard Street<br>San Francisco, CA 94105<br>Tel: 415-773-5700<br>*Counsel for BNBM PLC* |

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF VIRGINIA
## Case No. 2:11-CV-377-MSD

EDUARDO AND CARMEN AMORIN, *et al.*,
individually, and on behalf of all others
similarly situated,

       Plaintiffs,

v.

TAISHAN GYPSUM CO., LTD. F/K/A SHANDONG
TAIHE DONGXIN CO., LTD.; TAIAN TAISHAN
PLASTERBOARD CO., LTD., *et al.*,

       Defendants.

_____/

### TAISHAN GYPSUM CO., LTD. AND TAI'AN TAISHAN PLASTERBOARD CO., LTD.'s OBJECTIONS AND RESPONSES TO THE PLAINTIFF'S STEERING COMMITTEE'S SUPPLEMENTAL DOCUMENT REQUEST

Defendants Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd.

("Taishan") object and respond to the Plaintiff's Steering Committee's ("PSC") Supplemental

Document Request as follows:

### OBJECTION

Taishan objects to these Requests as not in compliance with Federal Rule of Civil

Procedure 26, unauthorized and untimely, as the Court is considering the parties' competing

discovery and trial plans, and has not established any discovery period.

1

Dated: April 12, 2019                    Respectfully submitted,

<div style="margin-left:40%">

*/s/ Eric D. Cook*
Eric D. Cook
Virginia Bar No. 68054
Willcox & Savage P.C.
Wells Fargo Center
440 Monticello Ave., Suite 2200
Norfolk, VA 23510
Telephone: 757-628-5500
Facsimile: 757-628-5566

**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777

Bernard Taylor
Georgia Bar No. 669625
Michael P. Kenny, Esq.
Georgia Bar No. 415064
Christina Hull Eikhoff, Esq.
Georgia Bar No. 242539
David Venderbush, Esq.
New York Bar No. 2920817
bernard.taylor@alston.com
mike.kenny@alston.com
christy.eikhoff@alston.com
david.venderbush@alston.com

*Attorneys for Taishan Gypsum Co., Ltd. and
Tai'an Taishan Plasterboard Co., Ltd.*

</div>

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on the 12th day of April, 2019, I electronically filed the foregoing Notice and Request for Oral Argument with the Clerk of the Court using the CM/ECF system which will then send a notification of such filing (NEF) to counsel of records.

<div align="right">

*/s/ Eric D. Cook*
Eric D. Cook
Virginia Bar No. 68054
Willcox & Savage P.C.
Wells Fargo Center
440 Monticello Ave., Suite 2200
Norfolk, VA 23510
Telephone: 757-628-5500
Facsimile: 757-628-5566
*Counsel for Taishan Gypsum Co., Ltd. and*
*Tai'an Taishan Plasterboard Co., Ltd.*

</div>

# EXHIBIT

# "G"

# ALSTON & BIRD

One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
404-881-7000 | Fax: 404-881-7777

Christina Hull Eikhoff                Direct Dial: 404-881-4496                Email: christy.eikhoff@alston.com

April 18, 2019

**VIA EMAIL**

Richard J. Serpe, Esq.
Law Offices of Richard J. Serpe, PC
580 East Main Street, Suite 310
Norfolk, VA 23510
rserpe@serpefirm.com

Re:  *Amorin v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co.,*
         *Ltd*, Civil Action No. 1:11-CV-22408-MGC (S.D. Fla.);
       *Amorin v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co.,*
         *Ltd*, Civil Action No. : 2:11-CV-01395-EEF-JCW (E.D. La.);
       *Amorin v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co.,*
         *Ltd,* Civil Action No. 2:11-CV-377-MSD (E.D. Va.)

Dear Richard:

This letter relates to your Requests for Production of Documents to Taishan served on March 13,
2019, and our objections and responses to those discovery requests served on April 12, 2019.
Your discovery pursuit is controversial, and we have met and conferred about the discovery
extensively by email and on the phone.  I expressly incorporate all of our positions stated in
those dialogues, and we stand by all of our objections.

However, in an effort to resolve this discovery dispute, you have requested in writing some
statements by us.  Because these statements are true and entirely consistent with what we've
already told you, we have agreed to summarize them here.

We understand that your new discovery pursuit arises from the following testimony of Taishan's
corporate representative on January 22, 2019:

> Of course, there are other ways to make the [PID] determination.  . . .
>
> Number two, from the chemical analysis channel, we can compare whether the
> component of chemical from this board is the same as the chemical component which is
> covered from the residual boards in Taishan's warehouse.

---

Alston & Bird LLP                                                                                    www.alston.com

Atlanta  |  Beijing  |  Brussels  |  Charlotte  |  Dallas  |  Los Angeles  |  New York  |  Raleigh  |  San Francisco  |  Silicon Valley  |  Washington, D.C.

April 18, 2019
Page 2

(Taishan Dep., Jan. 21, 2019, at 70-71). That proposal was made in good faith based on the witness's true beliefs from his long experience in the drywall manufacturing industry. To this day, you have never asked Taishan any questions about that statement, either during the remainder of that 2-day deposition or by subsequent interrogatories. Taishan did not represent, and has never represented, that it has in fact performed chemical analysis tests on its boards (or any other boards) for product identification purposes. That is why Taishan has no responsive documents to your document requests about prior testing.

At the Florida PID hearing on March 11, our demonstrative and oral argument paraphrased the above quoted deposition testimony. On the record, you vigorously argued against the feasibility of a comparative analysis of the chemical composition of drywall.

The possibility of doing a comparative analysis of the chemical composition of sample drywall boards has been discussed in attorney-client communications many times during our representation of Taishan. Any documentation of those communications would either be in an attorneys' notes of the conversations, or in the client's notes of the conversations. Both would be privileged and very difficult to isolate considering our 4+ year engagement in this case. We have also had oral conversations with consulting experts about the concept of doing a comparative analysis. However, no expert has ever been engaged by us on that issue, and it is not in the scope of any of our designated experts analysis and reports.

We continue to object to your discovery requests on this issue as substantively and procedurally improper. It is not Taishan's job to show you how to meet your burden of proof on Product ID, nor did it become Taishan's job by merely making suggestions (this was one of many) of ways you could do it. Moreover, the discovery requests are too late in Florida, too early in Virginia, and a distinct departure from our course of litigation in Louisiana.

We know you disagree. We are nevertheless providing you with this letter in the hopes that this dispute can come to an end.

Sincerely,

Christina Hull Eikhoff

cc:    Bernard Taylor, Esq.
       Mike Kenny, Esq.
       David Venderbush, Esq.
       Sandra Duggan, Esq.
       Leonard Davis, Esq.

LEGAL02/38910730v1

# EXHIBIT

# "H"



# EXHIBIT

## "I"

Case 2:09-cv-24082-MCE-Document 253-9  Entered on FLSD Docket 09/29/2019  Page 2 of 2



# EXHIBIT

## "J"





# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

EDUARDO AND CARMEN AMORIN,
*et al.*, individually, and on behalf of all
others similarly situated,

      Plaintiffs,

v.

TAISHAN GYPSUM CO., LTD. f/k/a
SHANDONG TAIHE DONGXIN CO.,
LTD.; TAIAN TAISHAN
PLASTERBOARD CO., LTD., *et al.*,

      Defendants.

Case No. 1:11-CV-22408-MGC

**[PROPOSED] ORDER GRANTING PLAINTIFFS' OBJECTIONS TO THE SPECIAL MASTER'S REPORT AND RECOMMENDATION REGARDING PRODUCT ID CATEGORIES ATTRIBUTABLE TO TAISHAN GYPSUM CO., LTD.**

THIS MATTER is before the Court on Plaintiffs' Objections to the Special Master's Report and Recommendation Regarding Product ID Categories Attributable to Taishan Gypsum Co., Ltd., filed April 29, 2019.

The Court having reviewed the Objections and being fully advised in the premises, IT IS HEREBY ORDERED THAT Plaintiffs' Objections are **GRANTED**.

The Court **FURTHER ORDERS and ADJUDGES** that the Special Master's Report and Recommendation Regarding Product ID Categories Attributable to Taishan Gypsum Co., Ltd. is hereby **MODIFIED** so that the following Product ID Categories (and markings contained in all photos therein) are attributable to Taishan Gypsum Co. Ltd.: C&K; IMT Gypsum; ProWall; Taian Tape or Taihe Tape; Made in China Meet[s] or Exceed[s]; Various drywall dimensions, including 4feetx12feetx1/2inch; Venture Supply; and White Edge Tape, boards with no markings or boards with no markings other than numbers.

**DONE and ORDERED** in Chambers, Miami, Florida, this ___ day of _____, 20__.

_____
Honorable Marcia G. Cooke
United States District Judge