# EXHIBIT 35 part 2

# EXHIBIT F6

**Integra Realty Resources**
Miami/Palm Beach

**Appraisal Report & Post-Remediation Damage Related to Chinese Drywall**

**Griffin, David & Diane**
Hypothetical Market Value "As If" Remediated
9801 Cobblestone Lakes Ct
Boynton Beach, Palm Beach County, Florida 33472
Client Reference: 5

**Prepared For:**
Colson Hicks Eidson

**Effective Date of the Appraisal:**
May 1, 2010

**Report Format:**
Appraisal Report

**IRR - Miami/Palm Beach**
File Number: 123-2018-0275





**Griffin, David & Diane**
9801 Cobblestone Lakes Ct
Boynton Beach, Florida

| Integra Realty Resources | In Miami | In Orlando | In Naples/Sarasota |
|---|---|---|---|
| Miami | Dadeland Centre | The Magnolia Building | Horseshoe Professional Park |
| Orlando | 9155 South Dadeland Blvd. | 326 N. Magnolia Ave. | 2770 Horseshoe Drive S. |
| Southwest Florida | Suite 1208 | | Suite 3 |
| | Miami, FL 33156 | Orlando, FL 32801 | Naples, FL 34104 |
| www.irr.com | (305) 670-0001 | (407) 843-3377 | (239)-643-6888 |



February 7, 2019


Patrick S. Montoya
Partner
Colson Hicks Eidson
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134


SUBJECT:     Hypothetical Market Value "As If" Remediated
                      Case No 11-22408-Civ-COOKE
                      United States District Court Southern District of Florida in the matter of
                      Eduardo and Carmen Amorin, et al. individually and on behalf of others situated
                      similarly v. Taishan Gypsum Co., LTD., f/k/a Shandong Taiche Dongxin Co. Ltd., et al
                      Priority Claimant Case at:
                      Griffin, David & Diane
                      9801 Cobblestone Lakes Ct
                      Boynton Beach, Palm Beach County, Florida 33472
                      Client Reference: 5
                      IRR - Miami/Palm Beach File No. 123-2018-0275


Dear Mr. Montoya:


Integra Realty Resources – Miami/Palm Beach submits the following damage estimate in the
referenced property as of the effective date assuming all remediation was completed by an
appropriate contractor with experience and credentials in remediating defective drywall.

The report is intended to comply the Uniform Standards of Professional Appraisal Practice (USPAP). It
presents summary discussions of the data, reasoning, and analysis that were used in the appraisal
process to develop the opinions. Additional information is contained within our workfile.

The findings will form the basis of expert witness testimony in the above referenced case.

Case 2:09-md-02047-EEF-MBN Document 22363-57 Filed 11/19/19 Page 6 of 140
Case 1:11-cv-22408-MGC Document 201-6 Entered on FLSD Docket 05/13/2019 Page 6 of 45

Identification of Subject          2

## Identification of Subject

The subject of this report is a single-family Mediterranean style home configured with 5 bedroom and 4 baths with 3,670 SF under air-conditioning. The subject property was built in 2006 and is located on an 8,712 SF site.

## Purpose of the Appraisal

The purpose of the appraisal is to develop an opinion of the diminution in value and related damages, collectively "the damages" as of the effective date of the appraisal, May 1, 2010. The damage estimate assumes the defective drywall remediation was completed and does not consider the cost to cure. The date of the report is February 7, 2019. The appraisal is valid only as of the stated effective date or dates.

## Intended Use and User

The intended use of the appraisal is for litigation purposes. The client, Colson Hicks Eidson and related co-counsel, Plaintiff and the Court are the intended users. Integra Realty Resources – Miami/Palm Beach is not responsible for unauthorized use of this report.

## Most Recent Sale History

The most recent closed sale of the subject is summarized as follows:

| Most Recent Subject Sale (Closed) | |
|---|---|
| Sale Date (Most Recent) | October 5, 2006 |
| Seller | Northstar Holdings at B & A, LLC |
| Buyer | Griffin, David D. & Diane |
| Sale Price | $731,544 |
| Recording Instrument Number | 20060576393 |
| Disposition Details | Original purchase of home from developer |

To the best of our knowledge, no other sale or transfer of ownership has taken place within a three-year period prior to the effective appraisal date.

Subsequent the effective date of value the property was listed for sale October 08, 2009 with an asking price of $275,000, with a status change to Pending Sale July 8, 2010 and Closed Sale July 27, 2010 at $240,000. The Realtors MLS listing states the home was in need of remediation of Chinese Drywall.

## Pending Transactions

To the best of our knowledge, the property is not subject to an agreement of sale or an option to buy, nor is it listed for sale, as of the effective appraisal date.

## Definition of Market Value

The following definition of market value is used by agencies that regulate federally insured financial institutions in the United States:



Case 2:09-md-02047-EEF-MBN Document 22363-57 Filed 11/19/19 Page 7 of 140
Case 1:11-cv-22408-MGC Document 281-6 Entered on FLSD Docket 05/13/2019 Page 6 of 45

Definition of Retrospective Value Opinion                                    3

"The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:

- Buyer and seller are typically motivated;

- Both parties are well informed or well advised, and acting in what they consider their own best interests;

- A reasonable time is allowed for exposure in the open market;

- Payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and

- The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale."

*(12 C.F.R. Part 34.42(g); 55 Federal Register 54696, August 24, 1990, as amended at 57 Federal Register 12202, April 9, 1992, 59 Federal Register 29499, June 7, 1994)*

### Definition of Retrospective Value Opinion

A value opinion effective as of a specified historical date. The term retrospective does not define a type of value. Instead, it identifies a value opinion as being effective at some specific prior date. Value as of a historical date is frequently sought in connection with property tax appeals, damage models, lease renegotiation, deficiency judgements, estate tax, and condemnation. Inclusion of the type of value with this term is appropriate, e.g. "retrospective market value opinion".

*(Source: The Dictionary of Real Estate Appraisal – 6th Edition; Appraisal Institute, 200 W. Madison, Suite 1500, Chicago, IL 60606, www.appraisalinstitute.org)*

### Definition of Hypothetical Condition

1. A condition that is presumed to be true when it is known to be false. (SVP)

2. A condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis. Comment: Hypothetical conditions are contrary to known facts about physical, legal, or economic characteristics of the subject property; or about conditions external to the property, such as market conditions or trends; or about the integrity of date used in an analysis. (USPAP, 2016-2017 ed.)

*(Source: The Dictionary of Real Estate Appraisal – 6th Edition; Appraisal Institute, 200 W. Madison, Suite 1500, Chicago, IL 60606, www.appraisalinstitute.org)*

### Scope of Work

Integra was retained as an expert in the captioned matter of this report to address potential damages related to the subject property, specifically excluding the costs to cure.



Case 2:09-md-02047-EEF-MBN Document 22363-57 Filed 11/19/19 Page 8 of 140
Case 1:11-cv-22408-MGC Document 281-6 Entered on FLSD Docket 05/13/2019 Page 7 of 45

Scope of Work 4

Integra was retained to estimate any post remediation damages, and conducted a separate study to determine whether damages persist following defective drywall remediation.  The result of that study are outlined within Integra's report entitled "Market Analysis of the Post Remediation Impact of Chinese Drywall on Residential Property Values in Florida."  The results of that study are incorporated by reference herein.

In addition, our damage model was requested to include a rental value analysis of the Priority Claimant residence, and a determination of the relevant economic damage associated with having to vacate the home for a period of time (and secure alternate living arrangements) during the remediation.  As of the effective date, the claimant would have suffered the damages.

Integra established individual case files on each Priority Claimant residence, and retained professional assistance from qualified residential appraisers in each jurisdiction.  Integra managed the process of these retrospective appraisals, interfaced with the residential appraisers, and reviewed the form appraisals completed on each assignment including review of the comparables, adjustments, and form narrative to establish the market value of the residence unimpaired as of the effective date.

Integra professionals reviewed various materials exchanged as part of this case and considered materials that were relevant to the market valuation.  These materials were downloaded from the attorney's dropbox and are retained within our workfile.

Integra's participation in and review of the final appraised values results in a conclusion of the market value of the home defined as "Hypothetical Market Value" assuming defective drywall had never been identified within the subject property.  This forms the basis of the unimpaired market value as of the effective date.

All properties and comparables were inspected by the local residential appraisers without the benefit of interior inspections.  Adjustments for condition and age at the time of sale are based upon photographs contained within the various MLS databases, paired analysis from amongst the comparables, and for the subject, were based on photos, if available.  In the event a property had not been remediated as of the effective date, we assume average condition for the property in the market as of the effective date.

The damage analysis expressed within this report follows the peer teachings and market accepted processes for damage analysis.  However, the damage analysis only represents a portion of the overall damages because we were specifically requested to exclude the consideration of the costs to cure.  This represents a relevant component of damage in this case for property that factually have not been remediated.

Integra's role was strictly to identify post remediation value damage (sometime referred to as a "stigma") and estimate the relevant rental value and moving costs as a proxy for the temporary loss of use during remediation.



Case 2:09-md-02047-EEF-MBN Document 22363-57 Filed 11/19/19 Page 9 of 140
Case 1:11-cv-22408-MGC Document 291-6 Entered on FLSD Docket 03/13/2019 Page 8 of 45

Highest and Best Use                                                                 5

## Significant Appraisal Assistance

In addition to Anthony M. Graziano, MAI ,CRE, principal, it is acknowledged that Peter G. Kayworth, Yuliya Georgieva, Joseph Melloni and Paul L. Jones of IRR-Miami/Palm Beach were involved in the assignment consisting of conducting research on the subject and transactions involving comparable properties, performing appraisal analyses and assisting in report writing, under the supervision of the persons signing the report.  The local residential appraisers are also named as providing significant assistance, including exterior inspection of the properties and comparables, application of their local knowledge in adjusting and estimating the unimpaired value, and developing the form report valuations incorporated herein.

## Prior Services

USPAP requires appraisers to disclose to the client any other services they have provided in connection with the subject property in the prior three years, including valuation, consulting, property management, brokerage, or any other services. We have not performed any services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

## Valuation Methodology

Appraisers usually consider the use of three approaches to value when developing a market value opinion for real property. These are the cost approach, sales comparison approach, and income capitalization approach.  The valuations consider the only relevant approach for residential valuation, the sales comparison analysis.  The cost and income approach are not considered relevant.

The sales comparison approach is the most applicable valuation method since there is an active market for similar properties, and sufficient sales data is available for analysis.  Additionally, this approach directly considered the prices of alternative properties having similar utility.

### Highest and Best Use

The highest and best use of the subject as if vacant for development of a single-family home which is physically possible, legally permissible as per zoning, financially feasible and maximally productive.

The highest and best use of the subject as improved is for continued use as a single-family home with no other use that could reasonably be expected to provide a higher value to the land as if vacant.  The improvements contribute to the over all value to a greater extent than the land value alone, and therefore, continued use as improved concluded to be maximally productive and the highest and best use of the property.

### Conclusion of Value

The Hypothetical market value appraisal as of the effective date, reflective of a traditional form appraisal, is contained within the Addenda of this report.  This value us hypothetical since it assumes that defective drywall had never been present at the subject property.



Case 2:09-md-02047-EEF-MBN Document 22363-57 Filed 11/16/19 Page 10 of 140
Case 1:11-cv-22408-MGC Document 291-6 Entered on FLSD Docket 05/13/2019 Page 9 of 45

Conclusion of Value                                                                                          6

Against this value, we then apply the Post Impairment Discount as a percentage of unimpaired value as developed within the Integra report studying this issue.  This represents a compensable damage resulting from the prior existence of defective drywall in the home as of the effective date.

In addition, each appraisal (unimpaired) reflects a rental value analysis as of the effective date.  This rental value analysis concludes to the equivalent market rent for the home (unimpaired) and reflects a proxy for the probable actual costs the homeowner would experience by having to move-out of the primary residence during remediation.

The homeowner would also have to incur moving /storage costs twice, once before and once after remediation.  Professional packing, moving and storage for an average home is estimated at $1,500 per move, or $3,000 in total.  This amount is added to the loss of use estimate as an additional damage.

This loss of use calculation does not consider the costs of alternative housing or other tangible costs potentially incurred for damages suffered between the date of discovery and the date of value.  These damages, if applicable, are being estimated by a separate expert (Elkins et al). To the extent Elkins posits costs which are duplicative or actual costs that are greater or less, some minor adjustments to Integra's damage model may be required.

The timeframe for remediation (months of actual loss) could vary depending upon the permitting process in the specific community, the availability of labor, and the size of the home.  Integra reviewed a number of transactions that were remediated by investors and found the typical timeframe between purchase of an unremediated home and listing[1] of the home post-remediation to be 3-6 months.

Larger more expansive homes would be expected to take longer to remediate since more materials are required, and in higher-priced homes, supplies would typically be custom-ordered.  Therefore, we apply the following timeframes based on the subject's size and price range:

< $150,000 Home up to 2,000+/- SF                    4 months

$150,000 - $750,000 home up to 4,000 SF              6 months

$750,000+ home up over 4,000 SF                      9 months

---

[1] The "listing date" is most relevant since a homeowner conducting their own remediation can move back in once the home is ready for sale (ie- coinciding with a final certificate of occupancy).

Griffin, David & Diane



Case 2:09-md-02047-EEF-MBN Document 22363-57 Filed 11/19/19 Page 11 of 140
Case 1:11-cv-22408-MGC Document 281-6 Entered on FLSD Docket 09/13/2013 Page 10 of 45

Conclusion of Value                                                                                              7

The following shows our final estimate of damages as of the effective date, and assuming costs to cure (i.e. – to conduct the remediation) have been expended.

**Conclusions of Damage**

| | | | |
|---|---|---|---|
| Hypothetical Value (Unimpaired - Before) | | $380,000 | |
| Market Impairment Discount (As if Remediated) | | 10% | |
| Post Impairment Damage ($) | | $38,000 | |
| **Hypothetical Value As IF Remediated** | | | **$342,000** |
| Post Remediation Damages as of Effective Date | | | **$38,000** |
| Loss of Use: | | | |
| Rental Rate ($/Month) | **$2,650** | | |
| Moving & Storage Costs | | $3,000 | |
| Loss of Use Subject (# Months) | 6x | $15,900 | |
| Subject Total | | | **$18,900** |
| **Post Remediation Damage** | | | **$56,900** |

Note: Does not consider "cost to cure". Assumes remediation was completed by qualified contractor who warranties the work.

Subsequent the effective date of value the property was listed for sale October 08, 2009 with an asking price of $275,000, with a status change to Pending Sale July 8, 2010 and Closed Sale July 27, 2010 at $240,000. The Realtors MLS listing states the home was in need of remediation of Chinese Drywall. The sale price reflects a discount greater than estimated in the above conclusions of damage because the property sold un-remediated at a 37% discount to unimpaired value. Cost to cure damages are being separately examined by the Court's special master.



Case 2:09-md-02047-EEF-MBN Document 22363-57 Filed 11/19/19 Page 12 of 140
Case 1:11-cv-22408-MGC Document 201-6 Entered on FLSD Docket 09/13/2013 Page 11 of 45

Certification 8

## Certification

We certify that, to the best of our knowledge and belief:

1. The statements of fact contained in this report are true and correct.

2. The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are our personal, impartial, and unbiased professional analyses, opinions, and conclusions.

3. We have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.

4. We have not performed any services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

5. We have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

6. Our engagement in this assignment was not contingent upon developing or reporting predetermined results.

7. Our compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

8. Our analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice as well as applicable state appraisal regulations.

9. The reported analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute.

10. The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

11. Anthony M. Graziano, MAI, CRE did not make a personal inspection of the property that is the subject of this report. Carlos Fong has personally inspected the subject.

12. Significant real property appraisal assistance was provided by Peter G. Kayworth, Yuliya Georgieva, Joseph Melloni and Paul L. Jones. Additionally, real estate assistance was provided by various Valucentric employees and subcontractors, including: John Barcelo, Angela Barcelo, Fred Stites, Carlos Fong, Sarah D. Wilson and Rob Baird.

13. We have experience in appraising properties similar to the subject and are in compliance with the Competency Rule of USPAP.

14. As of the date of this report, Anthony M. Graziano, MAI, CRE, has completed the continuing education program for Designated Members of the Appraisal Institute.

Anthony M. Graziano, MAI, CRE
Senior Managing Director - Miami
State-Certified General RE Appraiser
FL Certificate # RZ#3510

Griffin, David & Diane

Case 2:09-md-02047-EEF-MBN Document 22363-57 Filed 11/19/19 Page 13 of 140
Case 1:11-cv-22408-MGC Document 201-6 Entered on FLSD Docket 09/13/2013 Page 12 of 45

Assumptions and Limiting Conditions                                                    9

## Assumptions and Limiting Conditions

This appraisal and any other work product related to this engagement are limited by the following standard assumptions, <u>except as otherwise noted in the report</u>:

1.  The title is marketable and free and clear of all liens, encumbrances, encroachments, easements and restrictions. The property is under responsible ownership and competent management and is available for its highest and best use.

2.  There are no existing judgments or pending or threatened litigation that could affect the value of the property.

3.  There are no hidden or undisclosed conditions of the land or of the improvements that would render the property more or less valuable. Furthermore, there is no asbestos in the property.

4.  The revenue stamps placed on any deed referenced herein to indicate the sale price are in correct relation to the actual dollar amount of the transaction.

5.  The property is in compliance with all applicable building, environmental, zoning, and other federal, state and local laws, regulations and codes.

6.  The information furnished by others is believed to be reliable, but no warranty is given for its accuracy.

This appraisal and any other work product related to this engagement are subject to the following limiting conditions, except as otherwise noted in the report:

1.  An appraisal is inherently subjective and represents our opinion as to the value of the property appraised.

2.  The conclusions stated in our appraisal apply only as of the effective date of the appraisal, and no representation is made as to the effect of subsequent events.

3.  No changes in any federal, state or local laws, regulations or codes (including, without limitation, the Internal Revenue Code) are anticipated.

4.  No environmental impact studies were either requested or made in conjunction with this appraisal, and we reserve the right to revise or rescind any of the value opinions based upon any subsequent environmental impact studies. If any environmental impact statement is required by law, the appraisal assumes that such statement will be favorable and will be approved by the appropriate regulatory bodies.

5.  Unless otherwise agreed to in writing, we are not required to give testimony, respond to any subpoena or attend any court, governmental or other hearing with reference to the property without compensation relative to such additional employment.

6.  We have made no survey of the property and assume no responsibility in connection with such matters. Any sketch or survey of the property included in this report is for illustrative purposes only and should not be considered to be scaled accurately for size. The appraisal covers the property as described in this report, and the areas and dimensions set forth are assumed to be correct.



Case 2:09-md-02047-EEF-MBN Document 22363-57 Filed 11/19/19 Page 14 of 140
Case 1:11-cv-22408-MGC Document 281-6 Entered on FLSD Docket 09/13/2013 Page 13 of 45

Assumptions and Limiting Conditions                                                          10

7.  No opinion is expressed as to the value of subsurface oil, gas or mineral rights, if any, and we have assumed that the property is not subject to surface entry for the exploration or removal of such materials, unless otherwise noted in our appraisal.

8.  We accept no responsibility for considerations requiring expertise in other fields. Such considerations include, but are not limited to, legal descriptions and other legal matters such as legal title, geologic considerations such as soils and seismic stability; and civil, mechanical, electrical, structural and other engineering and environmental matters. Such considerations may also include determinations of compliance with zoning and other federal, state, and local laws, regulations and codes.

9.  The distribution of the total valuation in the report between land and improvements applies only under the reported highest and best use of the property. The allocations of value for land and improvements must not be used in conjunction with any other appraisal and are invalid if so used. The appraisal report shall be considered only in its entirety. No part of the appraisal report shall be utilized separately or out of context.

10. Neither all nor any part of the contents of this report (especially any conclusions as to value, the identity of the appraisers, or any reference to the Appraisal Institute) shall be disseminated through advertising media, public relations media, news media or any other means of communication (including without limitation prospectuses, private offering memoranda and other offering material provided to prospective investors) without the prior written consent of the persons signing the report.

11. Information, estimates and opinions contained in the report and obtained from third-party sources are assumed to be reliable and have not been independently verified.

12. Any income and expense estimates contained in the appraisal report are used only for the purpose of estimating value and do not constitute predictions of future operating results.

13. If the property is subject to one or more leases, any estimate of residual value contained in the appraisal may be particularly affected by significant changes in the condition of the economy, of the real estate industry, or of the appraised property at the time these leases expire or otherwise terminate.

14. Unless otherwise stated in the report, no consideration has been given to personal property located on the premises or to the cost of moving or relocating such personal property; only the real property has been considered.

15. The current purchasing power of the dollar is the basis for the values stated in the appraisal; we have assumed that no extreme fluctuations in economic cycles will occur.

16. The values found herein are subject to these and to any other assumptions or conditions set forth in the body of this report but which may have been omitted from this list of Assumptions and Limiting Conditions.

17. The analyses contained in the report necessarily incorporate numerous estimates and assumptions regarding property performance, general and local business and economic conditions, the absence of material changes in the competitive environment and other matters. Some estimates or assumptions, however, inevitably will not materialize, and unanticipated events and circumstances may occur; therefore, actual results achieved during

Griffin, David & Diane



Case 2:09-md-02047-EEF-MBN Document 22363-57 Filed 11/19/19 Page 15 of 140
Case 1:11-cv-22408-MGC Document 281-6 Entered on FLSD Docket 09/18/2013 Page 14 of 45

Assumptions and Limiting Conditions                                                                11

the period covered by our analysis will vary from our estimates, and the variations may be material.

18. The Americans with Disabilities Act (ADA) became effective January 26, 1992. We have not made a specific survey or analysis of the property to determine whether the physical aspects of the improvements meet the ADA accessibility guidelines. We claim no expertise in ADA issues, and render no opinion regarding compliance of the subject with ADA regulations. Inasmuch as compliance matches each owner's financial ability with the cost to cure the non-conforming physical characteristics of a property, a specific study of both the owner's financial ability and the cost to cure any deficiencies would be needed for the Department of Justice to determine compliance.

19. The appraisal report is prepared for the exclusive benefit of the Client, its subsidiaries and/or affiliates. It may not be used or relied upon by any other party. All parties who use or rely upon any information in the report without our written consent do so at their own risk.

20. No studies have been provided to us indicating the presence or absence of hazardous materials on the subject property or in the improvements, and our valuation is predicated upon the assumption that the subject property is free and clear of any environment hazards including, without limitation, hazardous wastes, toxic substances and mold. No representations or warranties are made regarding the environmental condition of the subject property. Integra Realty Resources – Miami/Palm Beach, Integra Realty Resources, Inc., Integra Strategic Ventures, Inc. and/or any of their respective officers, owners, managers, directors, agents, subcontractors or employees (the "Integra Parties"), shall not be responsible for any such environmental conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because we are not experts in the field of environmental conditions, the appraisal report cannot be considered as an environmental assessment of the subject property.

21. The persons signing the report may have reviewed available flood maps and may have noted in the appraisal report whether the subject property is located in an identified Special Flood Hazard Area. We are not qualified to detect such areas and therefore do not guarantee such determinations. The presence of flood plain areas and/or wetlands may affect the value of the property, and the value conclusion is predicated on the assumption that wetlands are non-existent or minimal.

22. Integra Realty Resources – Miami/Palm Beach is not a building or environmental inspector. Integra Miami/Palm Beach does not guarantee that the subject property is free of defects or environmental problems. Mold may be present in the subject property and a professional inspection is recommended.

23. The appraisal report and value conclusions for an appraisal assume the satisfactory completion of construction, repairs or alterations in a workmanlike manner.

24. It is expressly acknowledged that in any action which may be brought against any of the Integra Parties, arising out of, relating to, or in any way pertaining to this engagement, the appraisal reports, and/or any other related work product, the Integra Parties shall not be responsible or liable for any incidental or consequential damages or losses, unless the appraisal was fraudulent or prepared with intentional misconduct. It is further acknowledged



Case 2:09-md-02047-EEF-MBN Document 22363-57 Filed 11/19/19 Page 16 of 140
Case 1:11-cv-22408-MGC Document 201-6 Entered on FLSD Docket 09/18/2013 Page 15 of 45

Assumptions and Limiting Conditions                                                    12

that the collective liability of the Integra Parties in any such action shall not exceed the fees paid for the preparation of the appraisal report unless the appraisal was fraudulent or prepared with intentional misconduct. Finally, it is acknowledged that the fees charged herein are in reliance upon the foregoing limitations of liability.

25.   Integra Realty Resources – Miami/Palm Beach, an independently owned and operated company, has prepared the appraisal for the specific intended use stated elsewhere in the report. The use of the appraisal report by anyone other than the Client is prohibited except as otherwise provided. Accordingly, the appraisal report is addressed to and shall be solely for the Client's use and benefit unless we provide our prior written consent. We expressly reserve the unrestricted right to withhold our consent to your disclosure of the appraisal report or any other work product related to the engagement (or any part thereof including, without limitation, conclusions of value and our identity), to any third parties. Stated again for clarification, unless our prior written consent is obtained, no third party may rely on the appraisal report (even if their reliance was foreseeable).

26.   The conclusions of this report are estimates based on known current trends and reasonably foreseeable future occurrences. These estimates are based partly on property information, data obtained in public records, interviews, existing trends, buyer-seller decision criteria in the current market, and research conducted by third parties, and such data are not always completely reliable. The Integra Parties are not responsible for these and other future occurrences that could not have reasonably been foreseen on the effective date of this assignment. Furthermore, it is inevitable that some assumptions will not materialize and that unanticipated events may occur that will likely affect actual performance. While we are of the opinion that our findings are reasonable based on current market conditions, we do not represent that these estimates will actually be achieved, as they are subject to considerable risk and uncertainty. Moreover, we assume competent and effective management and marketing for the duration of the projected holding period of this property.

27.   All prospective value opinions presented in this report are estimates and forecasts which are prospective in nature and are subject to considerable risk and uncertainty. In addition to the contingencies noted in the preceding paragraph, several events may occur that could substantially alter the outcome of our estimates such as, but not limited to changes in the economy, interest rates, and capitalization rates, behavior of consumers, investors and lenders, fire and other physical destruction, changes in title or conveyances of easements and deed restrictions, etc. It is assumed that conditions reasonably foreseeable at the present time are consistent or similar with the future.

Griffin, David & Diane



Addenda

## Addenda



| Borrower | David & Diane Griffin | | | File No. | VALU-18-12-1470 | | |
|---|---|---|---|---|---|---|---|
| Property Address | 9801 Cobblestone Lakes Ct | | | | | | |
| City | Boynton Beach | County | Palm Beach | State | FL | Zip Code | 33472 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |

## TABLE OF CONTENTS



Supplemental Addendum ................................................................................................. 1
USPAP Identification Addendum ..................................................................................... 2
Exterior-Only .................................................................................................................... 3
Single Family Comparable Rent Schedule ..................................................................... 9
General Text Addendum .................................................................................................. 10
Subject Photos ................................................................................................................. 13
Comparable Photos 1-3 ................................................................................................... 14
Rental Photos 1-3 ............................................................................................................ 15
Assessor Map .................................................................................................................. 16
Location Map .................................................................................................................... 17
Subject Aerial Map .......................................................................................................... 18
Assessor Data .................................................................................................................. 19
MLS Listing Sheet ........................................................................................................... 20
MLS Listing History .......................................................................................................... 21
Tax Information ................................................................................................................. 22
License ............................................................................................................................. 23

**Supplemental Addendum**

File No. VALU-18-12-1470

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower | David & Diane Griffin | | | | | |
| Property Address | 9801 Cobblestone Lakes Ct | | | | | |
| City | Boynton Beach | County | Palm Beach | State | FL | Zip Code 33472 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | |

ADDITIONAL COMMENTS(02/07/2019)

On 2/7/2019 the appraiser removed comparable 1 from the analysis due to being a non arms length short sale. Based on the removal of comparable 1 the appraiser has amended the final opinion of market value to $380,000 with comparable 2 receiving the most weight for requiring no adjustments and for being the most recent sale.

# USPAP ADDENDUM

VALU-18-12-1470

File No. VALU-18-12-1470

| Borrower | David & Diane Griffin | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 9801 Cobblestone Lakes Ct | | | | | |
| City | Boynton Beach | County | Palm Beach | State | FL | Zip Code 33472 |
| Lender | Integra Realty Resources (IRR) | | | | | |

This report was prepared under the following USPAP reporting option:

☒ Appraisal Report      This report was prepared in accordance with USPAP Standards Rule 2-2(a).

☐ Restricted Appraisal Report      This report was prepared in accordance with USPAP Standards Rule 2-2(b).

---

**Reasonable Exposure Time**

My opinion of a reasonable exposure time for the subject property at the market value stated in this report is:    30-90 DAYS

EXPOSURE TIME: estimated length of time that the property interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of the appraisal.

USPAP 2018-19 Comment: Exposure time is a retrospective opinion based on an analysis of past events assuming a competitive and open market

---

**Additional Certifications**

I certify that, to the best of my knowledge and belief:

☒ I have NOT performed services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

☐ I HAVE performed services, as an appraiser or in another capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment. Those services are described in the comments below.

- The statements of fact contained in this report are true and correct.
- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.
- Unless otherwise indicated, I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.
- I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.
- My engagement in this assignment was not contingent upon developing or reporting predetermined results.
- My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice that were in effect at the time this report was prepared.
- Unless otherwise indicated, I have made a personal inspection of the property that is the subject of this report.
- Unless otherwise indicated, no one provided significant real property appraisal assistance to the person(s) signing this certification (if there are exceptions, the name of each individual providing significant real property appraisal assistance is stated elsewhere in this report).

---

**Additional Comments**

APPRAISER COMPETENCY

An appraiser must determine, prior to accepting an assignment, that he or she can perform the assignment competently. Competency requires:

1. the ability to properly identify the problem to be addressed; and
2. the knowledge and experience to complete the assignment competently; and
3. recognition of, and compliance with, laws and regulations that apply to the appraiser or to the assignment.

I am competent to perform this assignment based on my state appraiser license and familiarity with this type of property in the subject market

I performed this appraisal in accordance with the requirements of Title XI of the Financial Institution Reform, Recovery and Enforcement Act of 1989, (12 U.S.C.3331 et seq.), and any implementing regulations

---

**APPRAISER:**

Signature: *Carlos Fong*

Name: Carlos Fong

Date Signed: 02/13/2019

State Certification #: RD 6782

or State License #:

State: FL

Expiration Date of Certification or License: 11/30/2020

Effective Date of Appraisal: 05/01/2010

**SUPERVISORY APPRAISER: (only if required)**

Signature:

Name:

Date Signed:

State Certification #:

or State License #:

State:

Expiration Date of Certification or License:

Supervisory Appraiser Inspection of Subject Property:

☐ Did Not    ☐ Exterior-only from Street    ☐ Interior and Exterior

**Exterior-Only Inspection Residential Appraisal Report**

VALU-18-12-1470
File # VALU-18-12-1470

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| | | | | |
|---|---|---|---|---|
| Property Address | 9801 Cobblestone Lakes Ct | City Boynton Beach | State FL | Zip Code 33472 |

Borrower David & Diane Griffin — Owner of Public Record David & Diane Griffin — County Palm Beach

Legal Description COUNTRYSIDE MEADOWS LT 120 BLK 2

Assessor's Parcel # 00-42-45-20-05-002-1200 — Tax Year 2017 — R.E. Taxes $ 6,044

Neighborhood Name Countryside Meadows — Map Reference 48424 — Census Tract 0077.13

Occupant ☒ Owner ☐ Tenant ☐ Vacant — Special Assessments $ 0 — ☐ PUD HOA $ 0 ☐ per year ☐ per month

Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)

Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe) Litigation

Lender/Client Integra Realty Resources (IRR) — Address 9155 South Dadeland Boulevard, Miami, FL 33156

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☒ Yes ☐ No

Report data source(s) used, offering price(s), and date(s). DOM 292;The Subject was offered for sale on 10/08/2009 for $275,000 per the MIAMI MLS #R3056547, and closed on 07/27/2010 for $240,000.

I ☐ did ☒ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $ — Date of Contract — Is the property seller the owner of public record? ☐ Yes ☐ No Data Source(s)

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☐ No
If Yes, report the total dollar amount and describe the items to be paid.

Note: Race and the racial composition of the neighborhood are not appraisal factors.

**Neighborhood Characteristics** | **One-Unit Housing Trends** | **One-Unit Housing** | **Present Land Use %**

Location ☐ Urban ☒ Suburban ☐ Rural — Property Values ☐ Increasing ☒ Stable ☐ Declining — PRICE / AGE — One-Unit 90 %

Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% — Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply — $ (000) / (yrs) — 2-4 Unit %

Growth ☐ Rapid ☒ Stable ☐ Slow — Marketing Time ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths — 175 Low 0 — Multi-Family 5 %

Neighborhood Boundaries The subject is bound to the north by Hypoluxo Rd, to the west by FL Route — 520 High 50 — Commercial 5 %
441, to the east by Florida's Tpke and to the south by Boynton Beach Blvd. — 285 Pred. 10 — Other %

Neighborhood Description There are no apparent factors that should affect the subject's marketability. The subject has access to all necessary supporting facilities including schools, shopping, recreation and employment centers.

Market Conditions (including support for the above conclusions) See Attached Addendum

Dimensions See Assessor Map — Area 8,712 sf — Shape Irregular — View B;Wtr;

Specific Zoning Classification AGR-PUD — Zoning Description Agricultural Reserve PUD (00-Unincorporated)

Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street Asphalt | ☒ | |
| Gas | ☒ | | Sanitary Sewer | ☒ | | Alley None | | |

FEMA Special Flood Hazard Area ☐ Yes ☒ No — FEMA Flood Zone X — FEMA Map # 12099C0770F — FEMA Map Date 10/5/2017

Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No If Yes, describe

No observed or known adverse influences to market value were noted.

Source(s) Used for Physical Characteristics of Property ☐ Appraisal Files ☒ MLS ☒ Assessment and Tax Records ☐ Prior Inspection ☐ Property Owner
☐ Other (describe) — Data Source for Gross Living Area Assessor

| **General Description** | **General Description** | **Heating/Cooling** | **Amenities** | **Car Storage** |
|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | ☒ Concrete Slab ☐ Crawl Space | ☒ FWA ☐ HWBB | Fireplace(s) # 0 ☐ None | ☒ None |
| # of Stories 2 | ☐ Full Basement ☐ Finished | ☐ Radiant | Woodstove(s) # 0 | ☒ Driveway # of Cars 2 |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | ☐ Partial Basement ☐ Finished | ☐ Other Fuel Elec. | ☒ Patio/Deck Patio | Driveway Surface pavers |
| ☒ Existing ☐ Proposed ☐ Under Const. | Exterior Walls CBS | ☒ Central Air Conditioning | ☒ Porch Porch | ☒ Garage # of Cars 2 |
| Design (Style) Mediterranean | Roof Surface S-Tile | ☐ Individual | Pool None | ☐ Carport # of Cars 0 |
| Year Built 2006 | Gutters & Downspouts None | ☐ Other | ☒ Fence Iron | ☒ Attached ☐ Detached |
| Effective Age (Yrs) 3 | Window Type Single Hung | ☐ Other | ☐ Built-in | |

Appliances ☒ Refrigerator ☒ Range/Oven ☒ Dishwasher ☒ Disposal ☒ Microwave ☒ Washer/Dryer ☐ Other (describe)

Finished area above grade contains: 9 Rooms 5 Bedrooms 4.0 Bath(s) 3,670 Square Feet of Gross Living Area Above Grade

Describe the condition of the property and data source(s) (including apparent needed repairs, deterioration, renovations, remodeling, etc.). Upon visual inspection of the neighborhood the property was located in a gated community where public access was restricted. We therefore assume the subject is in average condition relative to our observations of the general condition of the neighborhood.

Are there any apparent physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No
If Yes, describe.

There are no apparent external or functional inadequacies noted or reported at time of inspection. Physical depreciation is calculated by the modified age life method.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No If No, describe.

The construction quality is typical for the area.

| | | |
|---|---|---|
| Freddie Mac Form 2055 March 2005 | Page 1 of 6 | Fannie Mae Form 2055 March 2005 |

# Exterior-Only Inspection Residential Appraisal Report

File # VALU-18-12-1470

VALU-18-12-1470

| | | | |
|---|---|---|---|
| There are | 9 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 435,000 to $ 620,000 . |
| There are | 21 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 175,000 to $ 520,000 . |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE # 2 | COMPARABLE SALE # 3 |
|---|---|---|---|---|
| Address | 9801 Cobblestone Lakes Ct Boynton Beach, FL 33472 | 10148 Cobblestone Creek Dr Boynton Beach, FL 33472 | 10164 Cobblestone Creek Dr Boynton Beach, FL 33472 | 10116 Cobblestone Creek Dr Boynton Beach, FL 33472 |
| Proximity to Subject | | 0.06 miles NW | 0.06 miles NW | 0.08 miles N |
| Sale Price | $ | $ 420,000 | $ 380,000 | $ 320,000 |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 114.97 sq.ft. | $ 104.02 sq.ft. | $ 94.23 sq.ft. |
| Data Source(s) | | SEF #R2889162;DOM 409 | SEF #R2889163;DOM 578 | SEF #R2889160;DOM 498 |
| Verification Source(s) | | Assessor, Realist | Assessor, Realist | Assessor, Realist |

| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
|---|---|---|---|---|---|---|---|
| Sales or Financing | | ArmLth | | ArmLth | | ArmLth | |
| Concessions | | Conv;0 | | Cash;0 | | Conv;0 | |
| Date of Sale/Time | | s05/09;c03/09 | | s09/09;c08/09 | | s06/09;c05/09 | |
| Location | Residential | Residential | | Residential | | N;Res; | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 8712 sf | 7205 sf | 0 | 7309 sf | | 6617 sf | |
| View | Water | Water | | Water | | N;Res; | |
| Design (Style) | Mediterranean | Mediterranean | | Mediterranean | | Mediterranean | |
| Quality of Construction | Stucco | Stucco | | Stucco | | Stucco | |
| Actual Age | 4 | 4 | | 4 | | 4 | |
| Condition | Good | Good | | Good | | Good | |
| Above Grade | Total / Bdrms. / Baths | Total / Bdrms. / Baths | | Total / Bdrms. / Baths | | Total / Bdrms. / Baths | |
| Room Count | 9 / 5 / 4.0 | 9 / 5 / 4.0 | | 9 / 5 / 4.0 | | 9 / 4 / 3.0 | +10,000 |
| Gross Living Area | 3,670 sq.ft. | 3,653 sq.ft. | | 3,653 sq.ft. | | 3,396 sq.ft. | +11,000 |
| Basement & Finished | No Basement | No Basement | | No Basement | | No Basement | |
| Rooms Below Grade | None | None | | None | | None | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | EFA/CAC | EFA/CAC | | EFA/CAC | | EFA/CAC | |
| Energy Efficient Items | None | None | | None | | None | |
| Garage/Carport | 2-Car Garage | 2ga2dw | | 2ga2dw | | 3ga3dw | |
| Porch/Patio/Deck | Patio,Porch | Patio,Porch | | Patio,Porch | | Patio,Porch | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| Net Adjustment (Total) | | ☐ + ☐ - | $ | ☐ + ☐ - | $ | ☒ + ☐ - | $ 21,000 |
| Adjusted Sale Price | | Net Adj. 0.0 % | | Net Adj. 0.0 % | | Net Adj. 6.6 % | |
| of Comparables | | Gross Adj. 0.0 % | $ 420,000 | Gross Adj. 0.0 % | $ 380,000 | Gross Adj. 6.6 % | $ 341,000 |

☐ I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s) MIAMI MLS, Palm Beach County Records, and Realist
My research ☐ did ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s) MIAMI MLS, Palm Beach County Records, and Realist
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | | | | |
| Data Source(s) | MLS, Assessor, Realist | MLS, Assessor, Realist | MLS, Assessor, Realist | MLS, Assessor, Realist |
| Effective Date of Data Source(s) | 05/01/2010 | 05/01/2010 | 05/01/2010 | 05/01/2010 |

Analysis of prior sale or transfer history of the subject property and comparable sales   Per public record, the Subject has not sold or transferred in the past 36 months.

Summary of Sales Comparison Approach   See Attached Addendum

Indicated Value by Sales Comparison Approach $ 380,000

Indicated Value by: Sales Comparison Approach $ 380,000   Cost Approach (if developed) $   Income Approach (if developed) $

see attached addendum.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair: No special conditions are noted.

Personal property is not included in this valuation.
Based on a visual inspection of the exterior areas of the subject property from at least the street, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 380,000 , as of 05/01/2010 , which is the date of inspection and the effective date of this appraisal.

**Exterior-Only Inspection Residential Appraisal Report**

VALU-18-12-1470

**File #** VALU-18-12-1470

| ADDITIONAL COMMENTS | PLEASE ATTACHED ADDENDUM FOR FURTHER INFORMATION |
|---|---|

**COST APPROACH TO VALUE (not required by Fannie Mae)**

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)   Site value is estimated and/or supported by the

sales comparison approach whenever data is available, otherwise extraction method is used.

| COST APPROACH | | | | | | |
|---|---|---|---|---|---|---|
| ESTIMATED ☐ REPRODUCTION OR ☐ REPLACEMENT COST NEW | | OPINION OF SITE VALUE | . . . . . . . . . . . . . . . . . . . =$ | | 25,000 |
| Source of cost data   N/A | | DWELLING | 3,670 Sq.Ft. @ $ | . . . . . . . =$ | |
| Quality rating from cost service   N/A   Effective date of cost data   N/A | | | Sq.Ft. @ $ | . . . . . . . =$ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | | | . . . . . . . =$ | |
| The cost approach was not applied as the area is fully built up and there | | Garage/Carport | Sq.Ft. @ $ | . . . . . . . =$ | |
| is no vacant land available, except where an existing house will be torn | | Total Estimate of Cost-New | | . . . . . . . =$ | |
| down.  Although the Cost Approach could be considered an applicable | | Less   Physical   Functional   External | | | |
| approach to value, it is not typically relied upon by market participants | | Depreciation | | =$( | ) |
| for one to four family properties. | | Depreciated Cost of Improvements | . . . . . . . . . . . . . . =$ | | |
| | | "As-is" Value of Site Improvements | . . . . . . . . . . . . . . =$ | | |
| Estimated Remaining Economic Life (HUD and VA only)   57 Years | | INDICATED VALUE BY COST APPROACH | . . . . . . . . . . . . . . = $ | | |

**INCOME APPROACH TO VALUE (not required by Fannie Mae)**

| INCOME | | | | |
|---|---|---|---|---|
| Estimated Monthly Market Rent $   2,650   X Gross Rent Multiplier | = $ | Indicated Value by Income Approach | |
| Summary of Income Approach (including support for market rent and GRM)   The income approach is not applicable to this report as homes in the area are | | | |
| typically owner occupied. | | | |

**PROJECT INFORMATION FOR PUDs (if applicable)**

| PUD INFORMATION | |
|---|---|
| Is the developer/builder in control of the Homeowners' Association (HOA)? ☐ Yes ☐ No   Unit type(s) ☐ Detached ☐ Attached | |
| Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit. | |
| Legal Name of Project | |
| Total number of phases   Total number of units   Total number of units sold | |
| Total number of units rented   Total number of units for sale   Data source(s) | |
| Was the project created by the conversion of existing building(s) into a PUD? ☐ Yes ☐ No  If Yes, date of conversion | |
| Does the project contain any multi-dwelling units? ☐ Yes ☐ No  Data Source(s) | |
| Are the units, common elements, and recreation facilities complete? ☐ Yes ☐ No  If No, describe the status of completion. | |
| Are the common elements leased to or by the Homeowners' Association? ☐ Yes ☐ No  If Yes, describe the rental terms and options. | |
| Describe common elements and recreational facilities. | |

| Freddie Mac Form 2055 March 2005 | Page 3 of 6 | Fannie Mae Form 2055 March 2005 |
|---|---|---|

**Exterior-Only Inspection Residential Appraisal Report**

VALU-18-12-1470
File # VALU-18-12-1470

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

SCOPE OF WORK: The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a visual inspection of the exterior areas of the subject property from at least the street, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

The appraiser must be able to obtain adequate information about the physical characteristics (including, but not limited to, condition, room count, gross living area, etc.) of the subject property from the exterior-only inspection and reliable public and/or private sources to perform this appraisal. The appraiser should use the same type of data sources that he or she uses for comparable sales such as, but not limited to, multiple listing services, tax and assessment records, prior inspections, appraisal files, information provided by the property owner, etc.

INTENDED USE: The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

INTENDED USER: The intended user of this appraisal report is the lender/client.

DEFINITION OF MARKET VALUE: The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS: The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

3. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

4. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

5. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

**Exterior-Only Inspection Residential Appraisal Report**

VALU-18-12-1470
File # VALU-18-12-1470

APPRAISER'S CERTIFICATION:    The   Appraiser   certifies   and   agrees   that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a visual inspection of the exterior areas of the subject property from at least the street. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

**Exterior-Only Inspection Residential Appraisal Report**

VALU-18-12-1470
File # VALU-18-12-1470

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature *Carlos Fong* | Signature |
| Name  Carlos Fong | Name |
| Company Name  Valucentric LLC | Company Name |
| Company Address  7908 Montecito Pl, Delray Beach, FL 33446 | Company Address |
| | |
| Telephone Number  (844) 825-8236 | Telephone Number |
| Email Address  info@valucentric.com | Email Address |
| Date of Signature and Report  02/13/2019 | Date of Signature |
| Effective Date of Appraisal  05/01/2010 | State Certification # |
| State Certification #  RD 6782 | or State License # |
| or State License # | State |
| or Other (describe)               State # | Expiration Date of Certification or License |
| State  FL | |
| Expiration Date of Certification or License  11/30/2020 | SUBJECT PROPERTY |
| ADDRESS OF PROPERTY APPRAISED | |
| 9801 Cobblestone Lakes Ct | ☐ Did not inspect exterior of subject property |
| Boynton Beach, FL 33472 | ☐ Did inspect exterior of subject property from street |
| | Date of Inspection |
| APPRAISED VALUE OF SUBJECT PROPERTY $  380,000 | COMPARABLE SALES |
| LENDER/CLIENT | |
| Name | ☐ Did not inspect exterior of comparable sales from street |
| Company Name  Integra Realty Resources (IRR) | ☐ Did inspect exterior of comparable sales from street |
| Company Address  9155 South Dadeland Boulevard, Miami, FL 33156 | Date of Inspection |
| Email Address | |

Freddie Mac Form 2055 March 2005          Page 6 of 6          Fannie Mae Form 2055 March 2005

# SINGLE FAMILY COMPARABLE RENT SCHEDULE

VALU-18-12-1470
File # VALU-18-12-1470

This form is intended to provide the appraiser with a familiar format to estimate the market rent of the subject property. Adjustments should be made only for items of significant difference between the comparables and the subject property.

| ITEM | SUBJECT | COMPARABLE NO. 1 | | COMPARABLE NO. 2 | | COMPARABLE NO. 3 | |
|------|---------|------------------|--|------------------|--|------------------|--|
| Address | 9801 Cobblestone Lakes Ct Boynton Beach, FL 33472 | 10148 Cobblestone Creek Dr Boynton Beach, FL 33472 | | 9962 Equus Cir Boynton Beach, FL 33472 | | 9246 Equus Cir Boynton Beach, FL 33472 | |
| Proximity to Subject | | 0.06 miles NW | | 0.95 miles NW | | 0.79 miles NW | |
| Date Lease Begins Date Lease Expires | | 04/10 Unk | | 11/09 Unk | | 05/09 Unk | |
| Monthly Rental | If Currently Rented: $ | $ 2,650 | | $ 3,000 | | $ 3,500 | |
| Less: Utilities Furniture | $ | $ | | $ | | $ | |
| Adjusted Monthly Rent | $ | $ 2,650 | | $ 3,000 | | $ 3,500 | |
| Data Source | MLS,Inspection Assessor,Realist | MLS #R3080995 Assessor, Realist | | MLS #R3053795 Assessor, Realist | | MLS #R3013459 Assessor, Realist | |
| RENT ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. |
| Rent Concessions | | | | | | | |
| Location/View | Residential Water | Residential Water | | Residential Residential | | Residential Residential | |
| Design and Appeal | Mediterranean | Mediterranean | | Mediterranean | | Mediterranean | |
| Age/Condition | 4 Good | 3 Good | | 6 Good | | 3 Good | |
| Above Grade Room Count Gross Living Area | Total 9 Bdrms 5 Baths 4.0 3,670 Sq. Ft. | Total 9 Bdrms 5 Baths 4.0 3,653 Sq. Ft. | | Total 9 Bdrms 4 Baths 5.1 4,403 Sq. Ft. | | Total 9 Bdrms 4 Baths 5.1 4,588 Sq. Ft. | |
| Other (e.g., basement, etc.) | No Basement None | No Basement None | | No Basement None | | No Basement None | |
| Other: | | | | | | | |
| Net Adj. (total) | | ☐ + ☐ − $ | 0 | ☐ + ☐ − $ | 0 | ☐ + ☐ − $ | 0 |
| Indicated Monthly Market Rent | | $ 2,650 | | $ 3,000 | | $ 3,500 | |

Comments on market data, including the range of rents for single family properties, an estimate of vacancy for single family rental properties, the general trend of rents and vacancy, and support for the above adjustments. (Rent concessions should be adjusted to the market, not to the subject property.)   Rentals of comparable style dwellings ranged from $2,650 to $3,500.

Final Reconciliation of Market Rent:   All rentals were taken into the final consideration. The opinion of market rent is $2,650

I (WE) ESTIMATE THE MONTHLY MARKET RENT OF THE SUBJECT AS OF   05/01/2010   TO BE $   2,650

Appraiser(s) SIGNATURE   *Carlos Fong*
NAME   Carlos Fong
Certified Residential Appraiser
Date Property Inspected   05/01/2010   Report Signed   02/13/2019
License or Certification #   RD 6782   State   FL
Expiration Date of License or Certification   11/30/2020

Review Appraiser SIGNATURE
(If applicable)   NAME
Date Property Inspected _____ Report Signed _____
License or Certification # _____ State _____
Expiration Date of License or Certification _____
Review Appraiser ☐ Did ☐ Did Not   Inspect Subject Property

Freddie Mac Form 1000 (8/88)                                   Fannie Mae Form 1007 (8/88)

Form 1007 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

**Supplemental Addendum**

File No. VALU-18-12-1470

| Borrower | David & Diane Griffin | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 9801 Cobblestone Lakes Ct | | | | | | |
| City | Boynton Beach | County | Palm Beach | | State | FL | Zip Code 33472 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |

**PURPOSE OF APPRAISAL REPORT**

The purpose of this appraisal is to estimate the market value of the subject property as defined herein. The function of the appraisal is to assist the above-named Lender/Client, its successors and/or assigns, in evaluating the subject property for lending purposes. This is a federally regulated transaction. Additional supporting data can be found in our appraiser work file.

It is assumed that the title to this property is good and marketable. No title search has been made, nor have we attempted to determine ownership of the property. The value estimate is given without regard to any questions of title, boundaries, or encroachments. It is assumed that all assessments are paid. We assume the property to be free and clear of liens and encumbrances except as noted.

The legal description, if included herein, should be verified by legal counsel before being relied upon or used in any conveyance or other document.

We are not familiar with any engineering studies made to determine the bearing capacity of the land. Improvements in the area appear to be structurally sound. It is therefore assumed that soil and subsoil conditions are stable unless specifically outlined in this report.

Any exhibits in the report are intended to assist the reader in visualizing the property and its surroundings. The drawings are not intended as surveys and no responsibility is assumed for their cartographic accuracy. Drawings are not intended to be exact in size, scale or detail.

Areas and dimensions of the property were physically measured. If data is furnished by the principal or from plot plans or surveys furnished by the principal, or from public records, we assume it to be reasonably accurate. In the absence of current surveys, land areas may be based upon representations made by the owner's agents or the client. No attempt has been made to render an opinion or determine the status of easements that may exist. No responsibility is assumed for discrepancies that may become evident from a licensed survey of the property.

The value estimate involves only the real estate and all normal building equipment if any improvements are involved. No consideration was given to personal property, (or special equipment), unless stated.

It is assumed that the property is subject to lawful, competent and informed ownership and management unless noted.

Information in this report concerning market data was obtained from buyers, sellers, brokers, attorneys, trade publications or public records. To the extent possible, this information was examined for accuracy and is believed to be reliable. Dimensions, areas or data obtained from others is believed correct; however, no guarantee is made.

Any information, in whatever form, furnished by others is believed to b e reliable; however, no responsibility is assumed for accuracy.

The separate allocations between land and improvements, if applicable, represents our judgment only under the existing utilization of the property. A re-evaluation should be made if the improvements are removed or substantially altered, and the land utilized for another purpose.

All information and comments concerning the location, neighborhood trends, construction quality and costs, loss in value from whatever cause, condition, rents, or any other data for the property appraised herein, represents the estimates and opinions of the appraiser formed after an examination and study of the property.

Any valuation analysis of the income stream has been predicted upon financing conditions as specified herein, which we have reason to believe are currently available for this property. Financing terms and conditions other than those indicated may alter the final value conclusions.

The appraiser is not required to give testimony or appear in court because of having made this appraisal, with reference to the property in question, unless arrangements have been made previously thereto. If the appraiser (s) is subpoenaed pursuant to court order, the client will be required to compensate said appraiser(s) for his/her time at his/her regular hourly rates, plus expenses.

All opinions, as to values stated, are presented as the appraiser's considered opinion based on the information set forth in the report and his experience. We assume no responsibility for changes in market conditions or for the inability of the client or any other party to achieve their desired results based upon the appraised value. Further, some of the assumptions made can be subject to variation depending upon evolving events. We realize some assumptions may never occur and unanticipated events or circumstances may occur. Therefore, actual results achieved during the projection period may vary from those in this report.

The appraisal assignment was not based on developing or reporting predetermined results, or a requested minimum valuation, a specific valuation, or the approval of a loan.

Our analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the requirements of: USPAP Uniform Standards of Professional Appraisal Practice, and SPP-AI Code of Professional Ethics and the Standards of Professional Practice of the Appraisal Institute; and, except as noted in the Scope of Appraisal, in conformity with specific implementation rules of the following agencies:

FIRREA Title XI of the Financial Institutions Reform, Recovery and Enforcement Act and section 5(b) of the Bank Company Holding Act; FRB – Federal Reserve Board; RTC-Resolution Trust Corporation; OTS-Office of Thrift Supervision; FDIC – Federal Deposit Insurance Corporation; OTC – Office of the Comptroller; NCUA – National Credit Union Association.

**THE APPRAISER HAS PREPARED THIS APPRAISAL IN FULL COMPLIANCE WITH THE APPRAISAL INDEPENDENCE REQUIREMENTS AND HAS NOT PERFORMED, PARTICIPATED IN, OR BEEN ASSOCIATED WITH ANY ACTIVITY IN VIOLATION OF AIR.**

**AT THE REQUEST OF THE CLIENT, THIS APPRAISAL REPORT HAS BEEN PREPARED IN COMPLIANCE WITH THE**

## Supplemental Addendum

File No. VALU-18-12-1470

| Borrower | David & Diane Griffin | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 9801 Cobblestone Lakes Ct | | | | | |
| City | Boynton Beach | County | Palm Beach | State | FL | Zip Code 33472 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | |

**UNIFORM APPRAISAL DATASET (UAD) FROM FANNIE MAE AND FREDDIE MAC. THE UAD REQUIRES THE APPRAISER TO USE STANDARDIZED RESPONSES THAT INCLUDE SPECIFIC FORMATS, DEFINITIONS, ABBREVIATIONS, AND ACRONYMS.**

We do not authorize the out-of-context quoting from or partial reprinting of this appraisal report.  Further, neither all nor any part of the contents of this report (especially any conclusions as to value, the identity of the appraiser nor the name of the firm which he is connected, shall be reproduced, published, or disseminated to the public through advertising media, public relations media, news media, or another public means of communication, without the prior written consent of the appraiser signing this report.

Adobe's Distiller software or equivalent may be utilized by appraiser to transmit this encrypted PDF-formatted appraisal.  At a minimum, the software contains the following security measure:

- identifies transmission error during the transmission process, and confirms date, time and quantity of data submitted by appraiser and the date, time and quantity of data received by the Client, and/or its assigns and
- secures data from editing by means of a password, hardware device, or other means that remains in the sole control of the transmitting appraiser.

**THIRTY SIX MONTH LISTING HISTORY**

We are not aware of any prior listings pertaining to the subject property in the past three years as researched through the local Multiple Listing Service.

**NEIGHBORHOOD MARKET CONDITIONS**

No discounts, buy downs or other concessions were noted.  Current 30 year fixed rate financing at 4.5 - 5.5% and 0-2 points.

Stricter Lending Standards and the availability of Mortgage Capital may affect the average sales prices in the area, however, given the market data analyzed by the appraiser, there are no fiscal or economic trends expected to occur that would significantly impact the relatively stable market currently experienced in this neighborhood.

Neighborhood conditions can be found in detail in the attached 1004MC form.

**SITE COMMENTS**

This site is very typical of the neighborhood in terms of size, topography, view and general appeal.  It provides a suitable setting for the improvements and is consistent with market expectations in this price range.  Statements regarding zoning compliance are intended only in the most general sense.  Zoning and building ordinances vary significantly from one municipality to another and can be extremely detailed.  The scope of this assignment does not include a comparison of every potentially significant characteristic of the subject property's site and improvements relative to zoning and building ordinances.  Unless otherwise noted, standard utility and right-of-way easements are insignificant to value.  However, a current locational or boundary survey or title report may reveal encroachments, easements, zoning violations or other matters of interest that could warrant modification of the appraised value.

**COMMENTS REGARDING HIGHEST AND BEST USE**

In compliance with USPAP the following is included in the appraisal;
•         The current use of the real estate as of the date of value is Residential as described in the improvements section of this appraisal.

•         The use of the real estate reflected in this appraisal is as currently improved

•         The rationale and support for the opinion of highest and best use developed for this assignment is as per below:
Highest and Best Use is defined as "The reasonably probable and legal use of vacant land or an improved property that is physically possible, appropriately supported, financially feasible, and that results in the highest value. The four criteria the highest and best use must meet are legal permissibility, physical possibility, financial feasibility, and maximum productivity. Alternatively, the probable use of land or improved property-specific with respect to the user and timing of the use-that is adequately supported and results in the highest present value"
Source: Appraisal Institute, The Dictionary of Real Estate Appraisal, 5th ed. (Appraisal Institute, 2010).
The highest and best use analysis is a critical step in the valuation process.  The comparable properties incorporated into the appraisal are directly affected by the highest and best use analysis. The analysis is based on the use that a hypothetical purchaser would make of the property based on the four tests cited above:
•         Legally Permissible
•         Physically Possible
•         Financially Feasible
•         Maximally Productive

After consideration of the above criteria it has been determined that the current improvements continue to contribute to the total market value of the property and the return from a new improvement would not currently offset the cost of demolishing the existing improvements and constructing a new one.   Therefore, the highest and best use is as improved.

**COMMENTS ON SALES COMPARISON APPROACH**

All comparables provided strong support.  The most weight, and opinion of value fell on comparable 2 for being the most recent sale and for requiring not adjustments.

Comparables were adjusted for their differences in above grade bathroom count, and gross living area.  Gross living area adjustments were made at $40 per square foot.  Comparables within 100 square feet of the subject property did not warrant an adjustment.

The remaining adjustments are indicated on the sales comparison grid.

## Supplemental Addendum

File No. VALU-18-12-1470

| Borrower | David & Diane Griffin | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 9801 Cobblestone Lakes Ct | | | | | | |
| City | Boynton Beach | County | Palm Beach | | State | FL | Zip Code 33472 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |

ALL ADJUSTMENTS WERE DERIVED FROM THE SUBJECT MARKET AND THE APPRAISERS EXPERTISE IN THE MARKET PLACE.

I performed this appraisal in accordance with the requirements of Title XI of the Financial Institution Reform, Recovery and Enforcement Act of 1989, (12 U.S.C.3331 et seq.), and any implementing regulations.

All comparables are located within the subject's neighborhood boundaries. No geographic boundaries were crossed.

It should be noted that the estimated value of the subject exceeds the predominate value in the subject neighborhood. This will not have a negative effect on the marketability of the subject property. The subject property is in no way an over improvement for the market area.

**RECONCILIATION**

The sales comparison approach was considered most applicable for the subject property because a typical buyer or seller would most readily understand and apply this approach. The income approach was not considered applicable due to the fact that the majority of housing stock in the area is owner occupied and not typically used for investment property. The cost approach was not completed due to the subjectivity in estimating depreciation and because the typical buyer does not base price points on the cost approach. The quality of available data utilized in the Sales comparison Approach was considered adequate.

**EXTERIOR INSPECTION ADDENDA**

The appraiser has been requested to perform an appraisal based on an exterior only inspection and not to disturb the occupants by entering the building. The physical characteristics used to develop this appraisal are based on the assessment records of Palm Beach County, Florida and on the multiple listing service. The subject property was observed from the public street as of the effective date of the appraisal. On the basis of the observed conditions, the assessment records and multiple listing service information appear to be accurate. For the purposes of this appraisal, it is assumed that the interior condition of the subject property is consistent with the exterior conditions as observed and that the information concerning the interior condition as provided by the assessor's records and the multiple listing service is accurate.

**PHYSICAL DEFICIENCIES OR ADVERSE CONDITIONS**

Unless otherwise stated in this report, the existence of hazardous material and/or electromagnetic emission, which may or may not be present on the property, was not observed by the appraiser. The appraiser has no such knowledge of the existence of such materials on or in the subject property, or in the properties of the subject neighborhood. The appraiser is not qualified to detect such substances. The presence of such substances as asbestos, urea formaldehyde foam insulation, radon, mold, or other potentially hazardous material may affect the value of the property. The value estimate expressed is predicated on the assumption that there is no such material in or on the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The customer is urged to retain an expert in this field.

Dwellings built prior to 1978 may contain lead-based paint.

**MOLD**

The appraiser is not a home or environmental inspector. The appraiser provides an opinion of value. The appraisal does not guarantee that the property is free of defects or environmental problems. The appraiser performs an inspection of visible and accessible areas only. Mold may be present in areas the appraiser cannot see. A professional home inspection or environmental inspection is recommended.

**CONCLUSION**

This is an Appraisal Report which is intended to comply with the reporting requirements set forth under Standards Rule 2-2(a) of the Uniform Standards of Professional Appraisal Practice for an Appraisal Report. As such, it presents only minimal discussions of the data, reasoning, and analyses that were used in the appraisal process to develop the appraiser's opinion of value. Supporting documentation concerning the data, reasoning, and analyses is retained in the appraiser's file. The depth of discussion contained in this report is specific to the needs of the client and for the intended use stated herein. The appraiser is not responsible for unauthorized use of this report.

## Subject Photo Page

| Borrower | David & Diane Griffin | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 9801 Cobblestone Lakes Ct | | | | | | |
| City | Boynton Beach | County | Palm Beach | | State | FL | Zip Code | 33472 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |



**Subject Front**

9801 Cobblestone Lakes Ct
Sales Price
Gross Living Area    3,670
Total Rooms          9
Total Bedrooms       5
Total Bathrooms      4.0
Location             Residential
View                 Water
Site                 8712 sf
Quality              Stucco
Age                  4



**Subject Rear**



**Subject Street**

## Comparable Photo Page

| Borrower | David & Diane Griffin | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 9801 Cobblestone Lakes Ct | | | | | | |
| City | Boynton Beach | County | Palm Beach | | State | FL | Zip Code 33472 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |



### Comparable 1

10148 Cobblestone Creek Dr
Prox. to Subject     0.06 miles NW
Sales Price     420,000
Gross Living Area     3,653
Total Rooms     9
Total Bedrooms     5
Total Bathrooms     4.0
Location     Residential
View     Water
Site     7205 sf
Quality     Stucco
Age     4



### Comparable 2

10164 Cobblestone Creek Dr
Prox. to Subject     0.06 miles NW
Sales Price     380,000
Gross Living Area     3,653
Total Rooms     9
Total Bedrooms     5
Total Bathrooms     4.0
Location     Residential
View     Water
Site     7309 sf
Quality     Stucco
Age     4



### Comparable 3

10116 Cobblestone Creek Dr
Prox. to Subject     0.08 miles N
Sales Price     320,000
Gross Living Area     3,396
Total Rooms     9
Total Bedrooms     4
Total Bathrooms     3.0
Location     N;Res;
View     N;Res;
Site     6617 sf
Quality     Stucco
Age     4

# Rental Photo Page

| Borrower | David & Diane Griffin | | | | |
|---|---|---|---|---|---|
| Property Address | 9801 Cobblestone Lakes Ct | | | | |
| City | Boynton Beach | County | Palm Beach | State | FL | Zip Code | 33472 |
| Lender/Client | Integra Realty Resources (IRR) | | | | |



### Rental 1

10148 Cobblestone Creek Dr

| | |
|---|---|
| Proximity to Subject | 0.06 miles NW |
| Adj. Monthly Rent | 2,650 |
| Gross Living Area | 3,653 |
| Total Rooms | 9 |
| Total Bedrooms | 5 |
| Total Bathrooms | 4.0 |
| Location | Residential |
| View | Water |
| Condition | Good |
| Age/Year Built | 3 |



### Rental 2

9962 Equus Cir

| | |
|---|---|
| Proximity to Subject | 0.95 miles NW |
| Adj. Monthly Rent | 3,000 |
| Gross Living Area | 4,403 |
| Total Rooms | 9 |
| Total Bedrooms | 4 |
| Total Bathrooms | 5.1 |
| Location | Residential |
| View | Residential |
| Condition | Good |
| Age/Year Built | 6 |

### Rental 3

9246 Equus Cir

| | |
|---|---|
| Proximity to Subject | 0.79 miles NW |
| Adj. Monthly Rent | 3,500 |
| Gross Living Area | 4,588 |
| Total Rooms | 9 |
| Total Bedrooms | 4 |
| Total Bathrooms | 5.1 |
| Location | Residential |
| View | Residential |
| Condition | Good |
| Age/Year Built | 3 |

**Assessor Map**

| Borrower | David & Diane Griffin | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 9801 Cobblestone Lakes Ct | | | | | | |
| City | Boynton Beach | County | Palm Beach | | State | FL | Zip Code | 33472 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |



## Location Map

| Borrower | David & Diane Griffin | | | | |
|---|---|---|---|---|---|
| Property Address | 9801 Cobblestone Lakes Ct | | | | |
| City | Boynton Beach | County | Palm Beach | State | FL | Zip Code | 33472 |
| Lender/Client | Integra Realty Resources (IRR) | | | | |



## Subject Aerial Map

| Borrower | David & Diane Griffin | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 9801 Cobblestone Lakes Ct | | | | | | |
| City | Boynton Beach | County | Palm Beach | | State | FL | Zip Code | 33472 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |



**SUBJECT**
9801 Cobblestone Lakes Ct
Boynton Beach, FL 33472

## Assessor Data

| Borrower | David & Diane Griffin | | | | | | | |
|----------|----------------------|--|--|--|--|--|--|--|
| Property Address | 9801 Cobblestone Lakes Ct | | | | | | | |
| City | Boynton Beach | | County | Palm Beach | | State | FL | Zip Code 33472 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | | |



Case 2:09-md-02047-EEF-MBN Document 22363-57 Filed 11/19/19 Page 38 of 140
Case 1:11-cv-22408-MGC Document 281-6 Entered on FLSD Docket 09/15/2015 Page 87 of
MLS Listing Sheet

| Borrower | David & Diane Griffin | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 9801 Cobblestone Lakes Ct | | | | | | |
| City | Boynton Beach | County | Palm Beach | State | FL | Zip Code | 33472 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |



1/3/2019     Matrix

**Listing**

**Single Family**

**9801 Cobblestone Lakes Ct #**
BOYNTON BEACH, 33472

| | | | |
|---|---|---|---|
| **ML#:** | R3056547 | **List Price:** | $275,000 |
| **Rng Price:** | | **Sold Price:** | $240,000 |
| **LLP:** | | **Status:** | Closed Sale |
| **Short Sale:** | Yes | **REO:** | |
| **Listing Brkr:** | FLL404289 /Corcoran Group Palm Beach | | |
| **County:** | Palm Beach County | | |
| **Area:** | 4710 | **Auction:** | |
| **Geo Area:** | Palm Beach 4710; 4720; 4820; 4830 | | |
| **Legal:** | Countryside Meadows Lot:120 Blk:2 | | |
| **Furnished:** | | | |
| **Bedrooms:** | 5 | **Baths:** | 4/0 |
| **Convert Bed:** | | | |
| **SqFt (Liv):** | 3,364 | **Tot SqFt:** | 3,364 |
| **SqFt (Adj):** | | | |
| **Bld Ar/Src:** | | | |
| **Year Built:** | 2006/New Construction | | |
| **Virtual Tour:** | Click Here | | |

**No Picture Available**

### Location Information

| | | | | | |
|---|---|---|---|---|---|
| **Folio#:** | 00424520050021200 | **Parcel #:** | | **Model Name:** | Fairfax |
| **Municipal Code:** | | **Town/Range:** | | **Section:** | |
| **Subdivision #:** | | **Map Coord:** | | **Zoning:** | Resident |
| **Subdivision:** | Cobblestone Creek | **Development:** | Cobblestone Creek | | |
| **Elementary:** | | **Middle:** | | | |
| **High:** | | | | | |
| **Neighborhood:** | | | | | |

### General Information

| | | | | | |
|---|---|---|---|---|---|
| **Type Property:** | Single | **Front Exposure:** | South East | **HOPA:** | |
| **For Lease:** | | **For Lease MLS#:** | | **SS Addend:** | |
| **Boat Services:** | | | | | |
| **Style:** | R32-WF/No Ocean Access | | | | |
| **Garage:** | 2/Attached | | | | |
| **Lot SF:** | | **Appr Lot Size:** | 35X120X106X120 | **Carport:** | 0 |
| **Parking Desc:** | | | | | |
| **Parking Restr:** | | | | | |
| **Lot Desc:** | Less Than 1/4 Acre Lot, Cul-De-Sac Lot | | | | |
| **Waterfront:** | Yes/Lake Front | | | | |
| **Water Access:** | | | | | |
| **Water Frontage:** | 100 | **View:** | Water View | | |
| **Pool Dim:** | X | **Spa:** | | | |
| **Pool:** | No | | | | |
| **Design/Desc:** | | | | | |
| **Construction:** | | | | | |
| **Roof Desc:** | Curved/S-Tile Roof | | | | |
| **Floor:** | Carpeted Floors, Marble Floors, Wood Floors | | | | |

### Remarks

**Remarks:**     **This home has Chinese Drywall and will need an estimated $80k in repairs.** Fairfax model with all upgrades. Premier exterior, marble floors, extra bath, plus much, much more. This lot is a large waterfront location on cul-de-sac. Expansive water vi ews from almost every room. Gated community. Beautiful clubhouse with state of the art fitness center. Resort style community pool and children's aqua park and playground. Conve nient to shopping, entertainment, parks, schools, transportation & business.

**Driving Directions:**     BOYNTON BEACH BLVD TO N IN LYONS, 1ST R AT GATE, GO R TO 2ND LEFT

**Broker Remarks:**     Property has Chinese Drywall.

### Rooms

| Room | Dim | Room | Dim | Room | Dim |
|---|---|---|---|---|---|
| SecondBedroom | 12X11 | ThirdBedroom | 13X12 | FourthBedroom | 13X12 |
| FifthBedroom | 13X12 | Den | 11X9 | DiningRoom | 18X12 |
| FamilyRoom | 17X17 | Kitchen | 12X17 | LivingRoom | 16X14 |
| MasterBedroom | 14X20 | PatioBalcony | 15X9 | | |

| | |
|---|---|
| **Bedroom Desc:** | |
| **Master Bath:** | Dual Sinks |
| **Addition Rooms:** | Den/Library/Office, Family Room, Great Room |
| **Dining Desc:** | Eat-In Kitchen |
| **ADA Compliant:** | |

### Additional Information

https://sef.mlsmatrix.com/Matrix/Printing/PrintOptions.aspx?c=AAEAAAD*****AQAAAAAAAARAQAAAFQAAAAGAgAAAAQ3MjIyBgMAAAABMwYE...     1/3

## MLS Listing History

| Borrower | David & Diane Griffin | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 9801 Cobblestone Lakes Ct | | | | | | |
| City | Boynton Beach | County | Palm Beach | | State | FL | Zip Code 33472 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |

**MLS#:**  R3056547          9801 Cobblestone Lakes Ct #          Single Family

No Picture Available

| Price | Chg Type | Chg Info | Eff Date | Agent ID | Office ID | DOM |
|---|---|---|---|---|---|---|
| $240,000 | CS | ($240,000) | 07/27/2010 | FLL6308348 | FLL404289 | |
| $275,000 | PS | AC -> PS | 07/08/2010 | FLL6308348 | FLL404289 | |
| $275,000 | AC | A -> AC | 10/13/2009 | FLL6308348 | FLL404289 | |
| $275,000 | NEW | ACTV -> $275,000 | 10/08/2009 | FLL6308348 | FLL404289 | |

## Tax Information

| Borrower | David & Diane Griffin | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 9801 Cobblestone Lakes Ct | | | | | | |
| City | Boynton Beach | County | Palm Beach | | State | FL | Zip Code 33472 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |



Case 2:09-md-02047-EEF-MBN Document 22363-57 Filed 11/19/19 Page 41 of 140
Case 1:11-cv-22408-MGC Document 291-6 Entered on FLSD Docket 08/13/2019 Page 40 of 45
License

| Borrower | David & Diane Griffin | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 9801 Cobblestone Lakes Ct | | | | | | |
| City | Boynton Beach | County | Palm Beach | | State | FL | Zip Code 33472 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |

RICK SCOTT, GOVERNOR

JONATHAN ZACHEM, SECRETARY




dbpr

**STATE OF FLORIDA**
**DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION**

**FLORIDA REAL ESTATE APPRAISAL BD**

THE CERTIFIED RESIDENTIAL APPRAISER HEREIN IS CERTIFIED UNDER THE
PROVISIONS OF CHAPTER 475, FLORIDA STATUTES

**FONG, CARLOS RAFAEL**

10601 S.W. 124 ROAD.
MIAMI           FL 33186

LICENSE NUMBER: RD6782

**EXPIRATION DATE:  NOVEMBER 30, 2020**

Always verify licenses online at MyFloridaLicense.com



Do not alter this document in any form.

This is your license. It is unlawful for anyone other than the licensee to use this document.

# Anthony M. Graziano, MAI, CRE

**Integra Realty Resources**
Miami/Palm Beach

Dadeland Centre
9155 S. Dadeland Boulevard
Suite 1208
Miami, FL 33156

T 305.670.0001
F 305.670.2276

irr.com

## Experience

Senior Managing Director of Integra Realty Resources – Miami/Palm Beach.

Mr. Graziano has actively counseled and advised clients on the sale, leasing, valuation, management, and development of commercial real estate assets throughout the northeast and southeast U.S. since 1992.

Mr. Graziano's professional perspective is a blend of his experience and educational background which includes formal training in architecture, urban planning, macro and micro economics, real estate finance, institutional asset management, and land development. His market experience in sales, leasing, management, and valuation disciplines combine to bring practical real world answers to complex planning and development projects. He has been actively involved as a consultant and/or member of a consultant team on various major redevelopment and land use projects for public and private clients over the past 25+ years.

Mr. Graziano has specialized in consulting and valuation assignments for corporate and private clients on a wide array of complex issues related to estate and condemnation matters, title defects, environmental contamination/damages, air rights, partial and fractional interests, contract disputes, and mediation/arbitration disputes. Mr. Graziano's experience in these matters provides a comprehensive framework for effective strategic real estate consulting.

## Professional Activities & Affiliations

Advisory Board Member: Urban Land Institute (ULI) South Florida / Caribbean
Advisory Board Member: University of Miami M+RED Program
Member: Economic Roundtable - Miami Beacon Council (2012-present)
Board of Director: Integra Realty Resources, Inc. (2011-2016)
Chairman of the Board:     Integra Realty Resources, Inc. (2016-present)
Director: South Florida Chapter of the Appraisal Institute (2014-2016)
Board Member: Builders Association of South Florida (BASF) (2014-2016)
Subject Matter Expert (SME): Appraisal Practice Board, Appraisal Foundation
Member: Appraisal Institute (MAI) (2008-Present)
Member: Counselors of Real Estate (CRE) (2007-Present)
National Association of Realtors (REALTOR)
Miami Association of REALTORS Industry Analyst of the Year (2016)
Former Fellow: Royal Institute of Chartered Surveyors (FRICS) (2007-2014)
AI Leadership Development Advisory Council, March 1998 - February 2001
Lifetime Member: National Eagle Scout Association (NESA)

## Licenses

Florida, State-Certified General Real Estate Appraiser, RZ3510
New Jersey, State-Certified General Real Estate Appraiser, RG001261

## Education

University of Miami, Coral Gables, Florida 1988-1992
Degree: Bachelor of Science in Land Development and Planning, School of Architecture

New York University Real Estate Institute, New York, New York 1993-1996
Degree: Master of Science in Real Estate Development and Investment



amgraziano@irr.com     -     305.670.0001 x320

# Anthony M. Graziano, MAI, CRE

### Qualified Before Courts & Administrative Bodies

Qualified and accepted as an expert before:
US Bankruptcy Court (Newark, Southern District of Texas, Southern District of Florida)
US Federal District Court (Southern District of Florida)
FL Circuit Court (Miami-Dade, Broward, and Monroe Counties)
NJ State Tax Court
NJ Superior Court - Chancery Division
NJ Superior Court - Law Division
Various municipal planning and zoning boards throughout New Jersey and Florida
Various Taxing Authorities and Boards throughout New Jersey and Florida

**Integra Realty Resources**
**Miami/Palm Beach**

The Douglas Centre
2600 Douglas Road, Suite 801
Coral Gables, FL 33134

T 305.670.0001
F 305.670.2276

irr.com



amgraziano@irr.com     -     305.670.0001 x320

**Anthony M. Graziano, MAI, CRE, FRICS**
PROFERRED OR DISCLOSED EXPERT WITNESS REPORTS/SETTLEMENTS

| RETENTION DATE | ON BEHALF | IRR FILE # | COURT CASE NO. | COURT / VENUE | CASE NAME | RETAINED BY | TYPE OF CASE |
|---|---|---|---|---|---|---|---|
| 1/2015 | Defendant | 123-2015-0037 | 14-CV-22384 LIU | Miami-Dade County, FL | Ray Benson & Maria Helena V. QBE Insurance Corporation | John A. Camp | Retrospective (2004-2006) analysis of market value claims against insurance company related to property |
| 9/2014 | Defendant | 123-2014-0194 | 13-03084CA 10 | 11th Judicial Circuit Miami-Dade, FL | Manuel Soltero V. Adorno & Yoss, LLP | Kaplan Zeena, LLP | Professional Liability suit against law firm and attorneys for malfeasance in litigation matter. |
| 2/2014 | Plaintiff | 123-2014-0030 | Settled | Caribbean Islands | Rainmaker Development V. A&F Bahamas, etal | VLASAC & SHMARUK, LLC | Partnership Dispute between Joint Venture in Caribbean development project (golf course, villas, and large-scale marina-commercial-retail development) |
| 11/2012 | Defendant | 123-2012-0140 | 42-2012-CA-001065 | Marion County, FL | CSX Transportation, Inc. V. Moshen Saranzi, Faith Ann Safaranzi, Proveribann Hldg, LLC, USA & George Albright | Ne-Jame, La Foy, Jancha, Ahmed, Barker, Joshi & Moreno, P.A. | Condemnation of partial interest with damages |
| 7/2012 | Confidential | 123-2012-0076 | Confidential | Broward County, FL | Ft. Lauderdale-Hollywood Int'l Airport Expansion | White & Case, LLP | Value Diminution Study to assist public agency in good faith negotiations based on airport expansion. |
| 6/2012 | Defendant | 123-2012-0070 | 10-49616-CA-40 | Miami-Dade County, FL | CB Entertainment, LLC V. South Beach Ocean Parcel | Kubicki Draper, P.A. | Construction Damages claim |
| 12/2009 | Plaintiff | 109-2009-0443 | Dept. Justice File 90-11-3-5801 | Federal District Court of Virginia | United States vs. Atlantic Wood Industries, Inc. | U.S. Department of Justice | Damages/environmental contamination dispute between United States Navy and responsible party (Atlantic Wood Industries) |



**Anthony M. Graziano, MAI, CRE, FRICS**
IDENTIFIED EXPERT WITNESS TESTIMONY AT DEPOSITION and/or TRIAL

| RETENTION DATE | ON BEHALF | TRI COURT/CASE FILE # | COURT/CASE NO. # | COURT / VENUE | CASE NAME | RETAINED BY | TYPE OF CASE |
|---|---|---|---|---|---|---|---|
| 6/2015 | Plaintiff | 123-2015-0170 | 15-008930-CA-01 | 11th Judicial Circuit Dade County, Florida (Hon. Peter R. Lopez) | Aaron Stauber & Aviva Stauber V. BH33, LLC | Piedra & Associates, P.A. | Motion to dismiss Lis Pendens in an action to enforce contractual specific performance clause |
| 1/2015 | Defendant | 123-2015-0037 | 14-CV-22384 UU | Southern District of Florida | Ray Benson & Maria Helena Campos V. QBE Insurance Corporation | John Campis | Retrospective (2004-2006) analysis of market value claims against insurance company related to property damage claims arising from Hurricane Wilma |
| 1/2014 | Plaintiff | 123-2015-0031 | Pending | Miami-Dade County | Igor Ger V. Yacht Club at Portofino Condo Association | Weil Quaranta McGovern, P.A. | Construction defect dispute related to water-intrusion and damage-detrimental conditions analysis of |
| 10/2014 | Plaintiff | 123-2014-0226 | 08-CA-408-P | Monroe County | Ocean Bank V. Lindback, Monroe County | Ocean Bank | Deficiency claim against borrower on real estate collateral in the Florida Keys (development site plus marine related improvements) |
| 10/2014 | Defendant | 123-2014-0215 | 11-24994 CA 06 | 11th Judicial Circuit Dade County, Florida | Palm-Aire Holdings V. JRGS Investments, LLC, Jorge Garcia-Serliff and Course Drive Investments, LLC | Cole, Scott & Kissane, P.A. | Partnership dispute over valuation issues proximal to a fractured condominium project (respective values), and operating agreement dispute |
| 7/2014 | Plaintiff | 123-2014-0194 | 13-018022 CACE 02 | 17th Judicial Circuit Broward County, Florida | Amalia I. Inarda-Rivera V. Rivera Diagnostic Center, Inc., Olexay Rivera & Yudil Rivero | Amalia I. Iñarda-Rivera | Rent default judgment and market rental and damage analysis associated with lease default. |
| 10/2014 | Defendant | 123-2014-0159 | 2014FLL534 (Pending) | Palm Beach County | Roehm Title Resources Claim | Title Resources Guaranty Company | Title insurance claim related to before and after damage/value diminution analysis based on defined title defects not identified by Title Insurance Company |
| 4/2014 | Plaintiff | 123-2014-0117 | 4:14-CV-01077 (Pending) | USA District Court for the Eastern District of Missouri Eastern Division | USA V. GSA-VA St. Louis Property, LLC | Bryan Cave LLP | Condemnation of a possessory interest for a term. Retained as consulting/rebuttal expert |
| 5/2014 | Defendant | 123-2014-0114 | Pending | Miami-Dade County | Euforia Club | Rennert Bogel Mandler & Rodriguez, P.A. | Rent dispute regarding forced relocation of a nightclub, and relevant market rental rate of replacement club space in Miami |
| 4/2014 | Plaintiff | 123-2014-0089 | | Broward County | Pan American Holdings Corp. V. Florida DOT Right of Way (ROW) Acquisition S.R. 7 | Henry Wulf, Esq. | Condemnation for R.O.W. purposes including before and after damage analysis |
| 1/2014 | Debtor | 123-2014-005 | 13-25728-BKC-RAM | US Federal Bankruptcy - Southern District of Florida - Miami Division (Hon. R. Mark) | West Airport Plaza Business Park, LLC | Counsel for the Debtor, Michael D. Seese, Esq. | Fairness Opinion and market value opinions in conjunction with Debtor's Plan for Reorganization |
| 8/2013 | Defendant | 123-2000-0016 | 02-23922-CA 09 | 11th Judicial Circuit Dade County, Florida | American Educational Enterprises LLC v. The Board of Trustees of the Internal Improvement Trust Fund | Richard Alayon, Esq. - Alayon and Associates | Economic Damages case associated with an alleged misrepresentation or omission by seller of real property |
| 7/2013 | Plaintiff | 123-2013-0126 | CACE 08057624 (14) | 17th Judicial Circuit Broward County, Florida (Hon. Carlos A. Rodriguez) | Bayview Loan Servicing, LLC v. Kayhan Soodjani; Muhammad Mahmoodi, et al | Bayview Servicing, represented by Tabais, Freedman and Soloff; Stacey Soloff, Esq. | Deficiency judgment on multi-family project (Dewey Street Apartments) |
| 3/2013 | Defendant | 123-2013-0105 | 11-23561-CIV - Rosenbaum | US District Court - Southern District of Florida (Hon. Rosenbaum) | United States of America v. G.K.K. etal | Richard Duvall, Holland and Knight and Jeffrey Neiman, Esq. | Condemnation claim on the 137,779 s.f. Miami Federal Bureau of Investigation (F.B.I.) building, condemnation of possessory interest (leasehold) |
| 2/2013 | Plaintiff | 123-2011-0670 | 09-05650 CA 04 | 11th Judicial Circuit Dade County, Florida (Hon. Beth Bloom) | Zenaida Gomez v. City of Pinecrest | Cynthia A. Everett, Cynthia A. Everett, P.A. | Economic damage resulting from temporary taking (seizure) of private residence |
| 7/2013 | Defendant | 123-2013-0016 | 12-60950-CIV | 11th Judicial Circuit Dade County, Florida | Q Lending, Inc., Equity Financial Group, Inc., and Equity Commercial Group, Inc. v. Travelers Companies, Inc. etal | Heidi Raschke, Butler Pappas etal | Value diminution resulting from alleged mortgage fraud. |
| 11/2012 | Plaintiff | 123-2012-0128 | Pending | 11th Judicial Circuit Dade County, Florida | 2011 and 2012 Ad Valorem Tax Protest | Ken Wurtenberger, Esq., Kozyak Tropin Throckmorton | Tax protest of commercial condominium. |
| 10/19/2012 | Plaintiff | 123-2012-0111 | 2011-1107 CA-23 | 11th Judicial Circuit Dade County, Florida (Hon. Stanford Blake) | Renegade at Hialeah Blvd v. Dynatech Engineering | Daniel Levin, Esq., Cole Scott, Kissane, P.A. | Economic Damages case, diminution in value resulting from ground lease modification. |
| 10/12/2012 | Plaintiff | 123-2012-0109 | 11-30189 CA21 | 11th Judicial Circuit Dade County, Florida | Yaffa Yakubov vs. Bayview at Fisher Island No 3 | Craig Minko, Esq., Cole Scott Kissane, P.A. | Market Value estimate of Fisher Island Condominium purchased under right of first refusal, economic damages claimed by Plaintiff due to contract dispute arising from association's exercise of right of first refusal. |
| 8/20/2012 | Plaintiff | 123-2012-0012 | CA-02180 CA-25 | 11th Judicial Circuit Dade County, Florida | 7935 NBV, LLC v. Harbour East Development LTD, Mario Egozi, etal | Jose Casal, Esq., Holland and Knight | Deficiency judgment on 32-unit fractured condominium, substitute expert following issuance of IRR-Miami reports in 2010 and 2012. |
| 8/15/2012 | Disclosed Dual Expert | 123-2012-0072 | | Matrimonial Mediation | Vazquez v. Vazquez Matrimonial Matter | Colon and Mendoza and Robert Hertzberg, P.A. | Retained as a court-appointed third party expert to both parties to appraise (2) marital assets comprised of office, retail, single and multi-family units in FL, TN, NC and Illinois, Bahamas. |
| 7/2012 | Plaintiff | 109-2011-0172 | | Tax Court of New Jersey (Hon. Patrick DeMuendia) | BASF Inc., successor Ciba Geigy Inc. vs. Township of Toms River | Phil Genuario, Garippa, etal on behalf of BASF | Challenge to multi-year appeal of $60 Million+ land assessment on contaminated superfund site in Central New Jersey. |
| 3/2012 | Plaintiff | 109-2010-0172 | ATL-L-4451-08 | Superior Court of New Jersey, Law Division Atlantic County | Scot Netherlands Inc. vs. State of New Jersey Department of Environmental Protection (NJDEP) | Jay Rhatican, Connell Foley on behalf of Scot Netherlands, Inc. | Challenge to NJDEP permit denial to fill wetlands, deprivation of all reasonable investment backed expectations. |
| 7/2011 | Defendant | 109-2010-0199 | MER-L-3034-08 | Superior Court of New Jersey Mercer County | 460 Mercer Street, LLP and Bruckener Southern, LLC vs. Hightstown | Aneel Zaro Grimm & Aaron, P.C. Hussam Chater | Litigation-Dispute Resolution - Hightstown Zoning Challenge |
| 12/2009 | Plaintiff | 109-2009-0443 | Dept. Justice File 90-11-3-580-1 | Federal District Court of Virginia | United States v.s. Atlantic Wood Industries, Inc. | U.S. Department of Justice | Damages/environmental contamination dispute between United States Navy and responsible party (Atlantic Wood Industries) |
| 12/2009 | Plaintiff | 109-2009-0377 | | Tax Court of New Jersey | Westrust/HPC Mortgage Fund v.s. City of Atlantic City | Cole, Schotz, Meisel, Forman & Leonard, P.A. Carl Rizzo, Esq. | Tax Appeals - To develop an opinion of the market value of the fee simple interest in the property |

**Anthony M. Graziano, MAI, CRE, FRICS**
IDENTIFIED EXPERT WITNESS TESTIMONY AT DEPOSITION and/or TRIAL

| RETENTION DATE | ON BEHALF | IRR FILE # | COURT CASE NO | CASE NAME | COURT / VENUE | RETAINED BY | TYPE OF CASE |
|---|---|---|---|---|---|---|---|
| 11/2009 | Secured Creditor | 109-2009-0439 | | Erickson Building | US Bankruptcy Court - Southern District of Texas | Stuart Glick, Esq., Sills, Cummis & Gross | Market Value for Bankruptcy of 140,000 SF corporate campus in Bethesda, Maryland |
| 09/2009 | Plaintiff | 109-2009-0123 | 3035-001 | Bay Head Yacht Club vs. Ocean County Tax Board | Tax Court of New Jersey | John Doyle, Carluccio, Leone, Dimon, Doyle & Sacks, LLC | Tax Appeal for Bay Head Yacht Club |
| 12/2008 | Plaintiff | 109-2008-XXX | INA (DEPS Pending) | Mirage Atlantic City (MAC) vs. City of Atlantic City | Tax Court of New Jersey | Hank Rovillard, Esq. | Tax Appeal at State Tax Court on 15 acre casino site adjacent to Trump Marina |
| 08/2008 | Defendant | 109-2008-0252 | L-2424-05 | The City of South Amboy vs. Lower Main Street Development, LLC & Amboy Aggregates Joint Venture | Superior Court of New Jersey Law Division, Middlesex County | Bathgate, Wegenar, etal | Verified complaint in condemnation |
| 6/2008 | Defendant | 109-2008-345 | C.A. No. OCNL-3361-06 | Osbourne Associates, Melbourne Associates VI, LLC, Kingsway Realty Profit Share vs. Citta Enterprises Co, JAC Property Management etal and Eckerd Corporation | Superior Court of New Jersey, Law Division, Ocean County | Francis X. Manning, Esq, Stradley Ronon Stevens & Young & Michael Camboli, Esq. Partridge Snow and Hahn on behalf of JAC | Dispute re: proper valuation of leasehold and sub-lessee's sandwich leasehold interest on damage claim for breach of agreement claim |
| 1/2008 | Defendant | 109-2008-0125- | N/A | Toms River Township vs. Giba Geigy Corporation | American Arbitration Association [testimony at Arbitration conducted by Hon. Eugene Serpentelli] | Mark Troncone, Esq., In-house Counsel to Township of Toms River | Arbitration of environmental damages claim, and counter-claim of appropriateness of zoning on 1,900 acre superfund site. |
| 11/2007 | Defendant | 109-2007-211 | L-000635-06 | Kyle Mosteller vs. Gaila Neeman | Superior Court of New Jersey, Law Division | Frank Caruso, Esq, Hoagland, Longo, Moran and Dunst | Damage claim due to loss of trees and screening between urban properties |
| 6/2007 | Plaintiff | 109-2007-0134 | 3:07-CV-2322 | Silver Lakes Inc. vs. Township of Freehold Inc. | Superior Court of New Jersey, Chancery Division, Monmouth County | Christopher Hanlon, Esq, Hanlon and Niemann | Challenge to validity of Rent Control Ordinance as transfer of property rights from Lessor to Lessee |
| 06/2007 | Plaintiff | 109-2007-0173 | | Laurelwood Homes, LLC vs. United States Department of Navy | Federal District Court of Virginia | William A. Shook Esq. | Leasehold interest in the property, breach of lease claim on behalf of leasehold owner (Laurelwood) claiming breach of lease and damages |
| 12/2006 | Defendant | 109-2006-0192 | CAM - L - 9731-05 | Brandywine Operating Partnership, LP vs. UFCW Local 56 | Superior Court of New Jersey, Law Division, Camden County | Brett Last, Esq. O'Brien, Belland and Bushinsky | Estimate the value of damages to landlord on breach of above-market lease |
| 08/2006 | Defendant | 109-2006-0257 | | County Line & Browers Bridge, Jackson Township | Superior Court of New Jersey, Law Division | Levin, Shea, Pfeffer, PA, Steven Pfeffer | To develop an opinion of the hypothetical market value of the fee simple interest in the property |
| 02/2006 | Defendant | 109-2006-0044 | OCN-L-2482-04 | Carl Brooks vs. K. Hovanian | Ocean Superior Court, Ocean County Courthouse | Ronan, Tuzzio & Glannone    Linda Olsen | To estimate value diminution in the subject property as a result of various issues asserted by the property owner in conjunction with pending litigation between the property owner and the subject developer K. Hovnanian @ Sea Oaks |
| 10/2005 | Defendant | 109-2005-0315 | OCN-L-1810-5 | Atlantic City Electric Company d/b/a Conectiv Power Delivery, a regulated public utility in the state of New Jersey vs. AC1 Manahawkin, LLC, family and/or Armstrong | Superior Court of New Jersey, Chancery Division Ocean County | Flaster/Greenberg, PC,    David R. Oberlander, Esq. | Compensation for the taking of an easement for construction and maintenance of a 230kv transmission line and towers by Atlantic City Electric |
| 06/2005 | Defendant | 109-2005-0214 | MON-L-2609-05 | Township of Howell vs. George Harms Construction Co., Inc. etal | Superior Court of New Jersey Law Division, Monmouth County | Connell & Foley, LLP Kevin Coakley, Esq. | To develop an opinion of the market value of the fee simple estate of the property |
| 08/2003 | Defendant | 109-2003-0282 | | Giuffre vs. Giuffre | Superior Court of New Jersey Chancery Division, Family Part, Monmouth County | Louis & Wolf - Frank A. Louis | To develop an opinion of the market value of the Fee Simple estate of two properties for purposes of equitable distribution of marital assets |
| 07/2003 | Plaintiff | 109-2003-0203 | OCN-C-78-03 | West, etal vs. Pompaino, etal | Superior Court of New Jersey, Chancery Division, Ocean County | Stephen E. Smith, Esq. | To develop an opinion of the diminution in value due to a loss of useable land area |
| 06/2003 | Plaintiff | 109-2003-0151 | OCN-C-316-02 | Eugene M. Lord vs. Donald W. Rinaldo | Superior Court of New Jersey Law Division, Ocean County | Lombardi & Lombardi Scott Telson | To develop an opinion of the market value of the fee simple estate of the property |
| 04/2003 | Plaintiff | 109-2003-0128 | FM-15-468-03-C | Vincent Urbank vs. Lisa Urbank | Superior Court of New Jersey, Chancery Division, Family Part Ocean County | Marianna Pontoriero, Esq. | Litigation-Matrimonial |
| 02/2002 | Plaintiff | 109-2002-0055 | | Shenandoah Mobile Home Park | | Winders Marx Lane & Mittendorf, LLP - William Cagney | Inverse Condemnation - Rent Control Ordinance |
| 04/2001 | Claimant | 109-2001-0169 | NJ-2624-00 | DeForest John Ely and Kimberle A. Ely, h/w | Superior Court of New Jersey, Chancery Division | First American Title Insurance Co. Jack Milks | To derive an opinion of the fair compensation of the fee simple estate, subject to the temporary title encumbrance |
| 03/1999 | Secured Creditors | 109-1999-0062 | | Georgetown Apartments | US Bankruptcy Court - District of Newark | Emmes & Co. Andrew Schwarz | To estimate the market value of the Leased Fee Estate of the property, inclusive of 28 Apartment complexes through NY, NJ, PA, and MD |
| 12/1997 | Defendant | LKW-257-3186 | FM-15-1465-94 | Lisa Franklin, etal vs. Donald Franklin, etal | Superior Court of New Jersey, Chancery Division, Family Part, Ocean County | Greenbaum, Rowe, Smith, Ravin, Davis & Himmel LLP    Robert S. Underhill | Estimating the market value of the leased fee interest |
| 8/1984 | Creditor | HUD-XX | | Hudson Marina Association vs. Emmes & Co. | US Bankruptcy Court - District of Newark | | Bankruptcy Reorganization of 200+ slip failed marina/dockominium complex |



# EXHIBIT F7

**Integra Realty Resources**
Miami/Palm Beach

**Appraisal Report & Post-Remediation Damage Related to Chinese Drywall**

**Rosen, Michael & Robyn**
Hypothetical Market Value "As If" Remediated
17538 Middlebrook Way
Boca Raton, Palm Beach County, Florida 33496
Client Reference: 6

**Prepared For:**
Colson Hicks Eidson

**Effective Date of the Appraisal:**
August 1, 2009

**Report Format:**
Appraisal Report

**IRR - Miami/Palm Beach**
File Number: 123-2018-0275





**Rosen, Michael & Robyn**
17538 Middlebrook Way
Boca Raton, Florida

| Integra Realty Resources | In Miami | In Orlando | In Naples/Sarasota |
|---|---|---|---|
| Miami | Dadeland Centre | The Magnolia Building | Horseshoe Professional Park |
| Orlando | 9155 South Dadeland Blvd. | 326 N. Magnolia Ave. | 2770 Horseshoe Drive S. |
| Southwest Florida | Suite 1208 | | Suite 3 |
| | Miami, FL 33156 | Orlando, FL 32801 | Naples, FL 34104 |
| www.irr.com | (305) 670-0001 | (407) 843-3377 | (239)-643-6888 |



February 12, 2019


Patrick S. Montoya
Partner
Colson Hicks Eidson
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134


SUBJECT:    Hypothetical Market Value "As If" Remediated
Case No 11-22408-Civ-COOKE
United States District Court Southern District of Florida in the matter of
Eduardo and Carmen Amorin, et al. individually and on behalf of others situated
similarly v. Taishan Gypsum Co., LTD., f/k/a Shandong Taiche Dongxin Co. Ltd., et al
Priority Claimant Case at:
Rosen, Michael & Robyn
17538 Middlebrook Way
Boca Raton, Palm Beach County, Florida 33496
Client Reference: 6
IRR - Miami/Palm Beach File No. 123-2018-0275


Dear Mr. Montoya:

Integra Realty Resources – Miami/Palm Beach submits the following damage estimate in the
referenced property as of the effective date assuming all remediation was completed by an
appropriate contractor with experience and credentials in remediating defective drywall.

The report is intended to comply the Uniform Standards of Professional Appraisal Practice (USPAP). It
presents summary discussions of the data, reasoning, and analysis that were used in the appraisal
process to develop the opinions. Additional information is contained within our workfile.

The findings will form the basis of expert witness testimony in the above referenced case.

Case 2:09-md-02047-EEF-MBN Document 22363-57 Filed 11/10/19 Page 51 of 140
Case 1:11-cv-22408-MGC Document 291-7 Entered on FLSD Docket 05/13/2019 Page 45 of 49

Identification of Subject                                                                    2

## Identification of Subject

The subject of this report is a single-family ranch style home configured with 5 bedroom and 5.5 baths with 5,935 SF under air-conditioning.  The subject property was built in 2006 and is located on a 10,393 SF site.

## Purpose of the Appraisal

The purpose of the appraisal is to develop an opinion of the diminution in value and related damages, collectively "the damages" as of the effective date of the appraisal, August 1, 2009. The damage estimate assumes the defective drywall remediation was completed and does not consider the cost to cure. The date of the report is February 12, 2019. The appraisal is valid only as of the stated effective date or dates.

## Intended Use and User

The intended use of the appraisal is for litigation purposes. The client, Colson Hicks Eidson and related co-counsel, Plaintiff and the Court are the intended users.  Integra Realty Resources – Miami/Palm Beach is not responsible for unauthorized use of this report.

## Most Recent Sale History

The most recent closed sale of the subject is summarized as follows:

| Most Recent Subject Sale (Closed) | |
| --- | --- |
| Sale Date (Most Recent) | November 6, 2006 |
| Seller | Albanese-Popkin The Oaks Development Group |
| Buyer | Rosen, Michael & Robyn |
| Sale Price | $1,600,000 |
| Recording Instrument Number | 21066 / 01743 |
| Disposition Details | Original Sale from homebuilder |

To the best of our knowledge, no other sale or transfer of ownership has taken place within a three-year period prior to the effective appraisal date.

On December 4, 2009, the subject was sold for $876,000 after being on the market for 334 days (MLS #R2983257).  Per the MLS, the property was originally listed for $1,949,000 on December 16, 2008. The listing price was reduced to $1,848,000 on July 10, 2009.  The sales price represented a 44.9% discount to the original listing price and a 54.8% discount to the most recent sale.

On March 3, 2016, the subject property was listed for sale for $1,795,000 (MLS #R10213453) and sold for $1,499,656 after 84 days on market.  It was put under contract on May 26, 2016 – 74 days before the closing.  The broker indicated that the property had been "totally remastered by award-winning Brenner Architecture Group…"



Case 2:09-md-02047-EEF-MBN Document 22363-57 Filed 11/16/19 Page 52 of 140
Case 1:11-cv-22408-MGC Document 201-4 Entered on FLSD Docket 05/13/2019 Page 46 of 49

Pending Transactions                                                                     3

## Pending Transactions

To the best of our knowledge, the property is not subject to an agreement of sale or an option to buy, nor is it listed for sale, as of the effective appraisal date.

The property was listed for sale with an asking price of $1,599,900 on November 27, 2018 (MLS #10483913). Per the MLS, it has been put under contract at the listing price.

### Definition of Market Value

The following definition of market value is used by agencies that regulate federally insured financial institutions in the United States:

"The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:

- Buyer and seller are typically motivated;

- Both parties are well informed or well advised, and acting in what they consider their own best interests;

- A reasonable time is allowed for exposure in the open market;

- Payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and

- The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale."

*(12 C.F.R. Part 34.42(g); 55 Federal Register 54696, August 24, 1990, as amended at 57 Federal Register 12202, April 9, 1992, 59 Federal Register 29499, June 7, 1994)*

## Definition of Retrospective Value Opinion

A value opinion effective as of a specified historical date. The term retrospective does not define a type of value. Instead, it identifies a value opinion as being effective at some specific prior date. Value as of a historical date is frequently sought in connection with property tax appeals, damage models, lease renegotiation, deficiency judgements, estate tax, and condemnation. Inclusion of the type of value with this term is appropriate, e.g. "retrospective market value opinion".

(*Source: The Dictionary of Real Estate Appraisal – 6th Edition; Appraisal Institute, 200 W. Madison, Suite 1500, Chicago, IL 60606, www.appraisalinstitute.org*)

## Definition of Hypothetical Condition

1. A condition that is presumed to be true when it is known to be false. (SVP)

2. A condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis. Comment: Hypothetical conditions are contrary to known facts about



Case 2:09-md-02047-EEF-MBN Document 22363-57 Filed 11/10/19 Page 53 of 140
Case 1:11-cv-22408-MGC Document 201-7 Entered on FLSD Docket 05/13/2019 Page 49 of 49

Scope of Work                                                                                            4

physical, legal, or economic characteristics of the subject property; or about conditions external to the property, such as market conditions or trends; or about the integrity of date used in an analysis. (USPAP, 2016-2017 ed.)

(*Source: The Dictionary of Real Estate Appraisal – 6th Edition; Appraisal Institute, 200 W. Madison, Suite 1500, Chicago, IL 60606, www.appraisalinstitute.org*)

## Scope of Work

Integra was retained as an expert in the captioned matter of this report to address potential damages related to the subject property, specifically excluding the costs to cure.

Integra was retained to estimate any post remediation damages, and conducted a separate study to determine whether damages persist following defective drywall remediation.  The result of that study are outlined within Integra's report entitled "Market Analysis of the Post Remediation Impact of Chinese Drywall on Residential Property Values in Florida."  The results of that study are incorporated by reference herein.

In addition, our damage model was requested to include a rental value analysis of the Priority Claimant residence, and a determination of the relevant economic damage associated with having to vacate the home for a period of time (and secure alternate living arrangements) during the remediation.  As of the effective date, the claimant would have suffered the damages.

Integra established individual case files on each Priority Claimant residence, and retained professional assistance from qualified residential appraisers in each jurisdiction.  Integra managed the process of these retrospective appraisals, interfaced with the residential appraisers, and reviewed the form appraisals completed on each assignment including review of the comparables, adjustments, and form narrative to establish the market value of the residence unimpaired as of the effective date.

Integra professionals reviewed various materials exchanged as part of this case and considered materials that were relevant to the market valuation.  These materials were downloaded from the attorney's dropbox and are retained within our workfile.

Integra's participation in and review of the final appraised values results in a conclusion of the market value of the home defined as "Hypothetical Market Value" assuming defective drywall had never been identified within the subject property.  This forms the basis of the unimpaired market value as of the effective date.

All properties and comparables were inspected by the local residential appraisers without the benefit of interior inspections.  Adjustments for condition and age at the time of sale are based upon photographs contained within the various MLS databases, paired analysis from amongst the comparables, and for the subject, were based on photos, if available.  In the event a property had not been remediated as of the effective date, we assume average condition for the property in the market as of the effective date.

The damage analysis expressed within this report follows the peer teachings and market accepted processes for damage analysis.  However, the damage analysis only represents a <u>portion of the overall</u>

Rosen, Michael & Robyn



Case 2:09-md-02047-EEF-MBN Document 22363-57 Filed 11/16/19 Page 54 of 140
Case 1:11-cv-22408-MGC Document 201-7 Entered on FLSD Docket 05/13/2019 Page 49 of 49

Highest and Best Use                                                                                      5

<u>damages</u> because we were specifically requested to exclude the consideration of the costs to cure. This represents a relevant component of damage in this case for property that factually have not been remediated.

Integra's role was strictly to identify post remediation value damage (sometime referred to a "stigma") and estimate the relevant rental value and moving costs as a proxy for the temporary loss of use during remediation.

## Significant Appraisal Assistance

In addition to Anthony M. Graziano, MAI ,CRE, principal, it is acknowledged that Peter G. Kayworth, Yuliya Georgieva, Joseph Melloni and Paul L. Jones of IRR-Miami/Palm Beach were involved in the assignment consisting of conducting research on the subject and transactions involving comparable properties, performing appraisal analyses and assisting in report writing, under the supervision of the persons signing the report.  The local residential appraisers are also named as providing significant assistance, including exterior inspection of the properties and comparables, application of their local knowledge in adjusting and estimating the unimpaired value, and developing the form report valuations incorporated herein.

## Prior Services

USPAP requires appraisers to disclose to the client any other services they have provided in connection with the subject property in the prior three years, including valuation, consulting, property management, brokerage, or any other services. We have not performed any services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

## Valuation Methodology

Appraisers usually consider the use of three approaches to value when developing a market value opinion for real property. These are the cost approach, sales comparison approach, and income capitalization approach.  The valuations consider the only relevant approach for residential valuation, the sales comparison analysis.  The cost and income approach are not considered relevant.

The sales comparison approach is the most applicable valuation method since there is an active market for similar properties, and sufficient sales data is available for analysis.  Additionally, this approach directly considered the prices of alternative properties having similar utility.

### Highest and Best Use

The highest and best use of the subject as if vacant for development of a single-family home which is physically possible, legally permissible as per zoning, financially feasible and maximally productive.

The highest and best use of the subject as improved is for continued use as a single-family home with no other use that could reasonably be expected to provide a higher value to the land as if vacant.  The improvements contribute to the over all value to a greater extent than the land value alone, and therefore, continued use as improved concluded to be maximally productive and the highest and best use of the property.



Case 2:09-md-02047-EEF-MBN Document 22363-57 Filed 11/10/19 Page 55 of 140
Case 1:11-cv-22408-MGC Document 291-4 Entered on FLSD Docket 05/13/2015 Page 9 of 49

Conclusion of Value                                                                        6

## Conclusion of Value

The Hypothetical market value appraisal as of the effective date, reflective of a traditional form appraisal, is contained within the Addenda of this report. This value us hypothetical since it assumes that defective drywall had never been present at the subject property.

Against this value, we then apply the Post Impairment Discount as a percentage of unimpaired value as developed within the Integra report studying this issue. This represents a compensable damage resulting from the prior existence of defective drywall in the home as of the effective date.

In addition, each appraisal (unimpaired) reflects a rental value analysis as of the effective date. This rental value analysis concludes to the equivalent market rent for the home (unimpaired) and reflects a proxy for the probable actual costs the homeowner would experience by having to move-out of the primary residence during remediation.

The homeowner would also have to incur moving /storage costs twice, once before and once after remediation. Professional packing, moving and storage for an average home is estimated at $1,500 per move, or $3,000 in total. This amount is added to the loss of use estimate as an additional damage.

This loss of use calculation does not consider the costs of alternative housing or other tangible costs potentially incurred for damages suffered between the date of discovery and the date of value. These damages, if applicable, are being estimated by a separate expert (Elkins et al). To the extent Elkins posits costs which are duplicative or actual costs that are greater or less, some minor adjustments to Integra's damage model may be required.

The timeframe for remediation (months of actual loss) could vary depending upon the permitting process in the specific community, the availability of labor, and the size of the home. Integra reviewed a number of transactions that were remediated by investors and found the typical timeframe between purchase of an unremediated home and listing[1] of the home post-remediation to be 3-6 months.

Larger more expansive homes would be expected to take longer to remediate since more materials are required, and in higher-priced homes, supplies would typically be custom-ordered. Therefore, we apply the following timeframes based on the subject's size and price range:

< $150,000 Home up to 2,000+/- SF              4 months

$150,000 - $750,000 home up to 4,000 SF        6 months

$750,000+ home up over 4,000 SF                9 months

---

[1] The "listing date" is most relevant since a homeowner conducting their own remediation can move back in once the home is ready for sale (ie- coinciding with a final certificate of occupancy).

Rosen, Michael & Robyn



Case 2:09-md-02047-EEF-MBN Document 22363-57 Filed 11/19/19 Page 56 of 140
Case 1:11-cv-22408-MGC Document 281-7 Entered on FLSD Docket 09/13/2019 Page 10 of 49

Conclusion of Value 7

The following shows our final estimate of damages as of the effective date, and assuming costs to cure (i.e. – to conduct the remediation) have been expended.

| Conclusions of Damage | | | |
|---|---|---|---|
| Hypothetical Value (Unimpaired - Before) | | $1,725,000 | |
| Market Impairment Discount (As if Remediated) | | 10% | |
| Post Impairment Damage ($) | | $172,500 | |
| **Hypothetical Value As IF Remediated** | | | **$1,552,500** |
| Post Remediation Damages as of Effective Date | | | **$172,500** |
| Loss of Use: | | | |
| Rental Rate ($/Month) | **$10,000** | | |
| Moving & Storage Costs | | $3,000 | |
| Loss of Use Subject (# Months) | 9x | $90,000 | |
| Subject Total | | | **$93,000** |
| **Post Remediation Damage** | | | **$265,500** |

Note: Does not consider "cost to cure". Assumes remediation was completed by qualified contractor who warranties the work.

On December 4, 2009, the subject was sold for $876,000 after being on the market for 334 days (MLS #R2983257). Per the MLS, the property was originally listed for $1,949,000 on December 16, 2008. The listing price was reduced to $1,848,000 on July 10, 2009. The sales price represented a 44.9% discount to the original listing price and a 54.8% discount to the most recent sale. Compared to the August 2009 unimpaired value estimate by Integra ($1,725,000), this resale (4 months later) reflects a 50.8% value dimunition.

Rosen, Michael & Robyn



Case 2:09-md-02047-EEF-MBN Document 22363-57 Filed 11/19/19 Page 57 of 140
Case 1:11-cv-22408-MGC Document 281-7 Entered on FLSD Docket 09/18/2015 Page 11 of 49

Certification                                                                                                8

## Certification

We certify that, to the best of our knowledge and belief:

1.  The statements of fact contained in this report are true and correct.

2.  The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are our personal, impartial, and unbiased professional analyses, opinions, and conclusions.

3.  We have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.

4.  We have not performed any services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

5.  We have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

6.  Our engagement in this assignment was not contingent upon developing or reporting predetermined results.

7.  Our compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

8.  Our analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice as well as applicable state appraisal regulations.

9.  The reported analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute.

10. The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

11. Anthony M. Graziano, MAI, CRE did not make a personal inspection of the property that is the subject of this report. Carlos Fong has personally inspected the subject.

12. Significant real property appraisal assistance was provided by Peter G. Kayworth, Yuliya Georgieva, Joseph Melloni and Paul L. Jones. Additionally, real estate assistance was provided by various Valucentric employees and subcontractors, including: John Barcelo, Angela Barcelo, Fred Stites, Carlos Fong, Sarah D. Wilson and Rob Baird.

13. We have experience in appraising properties similar to the subject and are in compliance with the Competency Rule of USPAP.

14. As of the date of this report, Anthony M. Graziano, MAI, CRE, has completed the continuing education program for Designated Members of the Appraisal Institute.

Anthony M. Graziano, MAI, CRE
Senior Managing Director - Miami
State-Certified General RE Appraiser
FL Certificate # RZ#3510

Rosen, Michael & Robyn

Case 2:09-md-02047-EEF-MBN Document 22363-57 Filed 11/19/19 Page 58 of 140
Case 1:11-cv-22408-MGC Document 281-7 Entered on FLSD Docket 03/18/2013 Page 12 of 49

Assumptions and Limiting Conditions                                                                                    9

## Assumptions and Limiting Conditions

This appraisal and any other work product related to this engagement are limited by the following standard assumptions, <u>except as otherwise noted in the report</u>:

1.  The title is marketable and free and clear of all liens, encumbrances, encroachments, easements and restrictions. The property is under responsible ownership and competent management and is available for its highest and best use.

2.  There are no existing judgments or pending or threatened litigation that could affect the value of the property.

3.  There are no hidden or undisclosed conditions of the land or of the improvements that would render the property more or less valuable. Furthermore, there is no asbestos in the property.

4.  The revenue stamps placed on any deed referenced herein to indicate the sale price are in correct relation to the actual dollar amount of the transaction.

5.  The property is in compliance with all applicable building, environmental, zoning, and other federal, state and local laws, regulations and codes.

6.  The information furnished by others is believed to be reliable, but no warranty is given for its accuracy.

This appraisal and any other work product related to this engagement are subject to the following limiting conditions, except as otherwise noted in the report:

1.  An appraisal is inherently subjective and represents our opinion as to the value of the property appraised.

2.  The conclusions stated in our appraisal apply only as of the effective date of the appraisal, and no representation is made as to the effect of subsequent events.

3.  No changes in any federal, state or local laws, regulations or codes (including, without limitation, the Internal Revenue Code) are anticipated.

4.  No environmental impact studies were either requested or made in conjunction with this appraisal, and we reserve the right to revise or rescind any of the value opinions based upon any subsequent environmental impact studies. If any environmental impact statement is required by law, the appraisal assumes that such statement will be favorable and will be approved by the appropriate regulatory bodies.

5.  Unless otherwise agreed to in writing, we are not required to give testimony, respond to any subpoena or attend any court, governmental or other hearing with reference to the property without compensation relative to such additional employment.

6.  We have made no survey of the property and assume no responsibility in connection with such matters. Any sketch or survey of the property included in this report is for illustrative purposes only and should not be considered to be scaled accurately for size. The appraisal covers the property as described in this report, and the areas and dimensions set forth are assumed to be correct.

Rosen, Michael & Robyn



Case 2:09-md-02047-EEF-MBN Document 22363-57 Filed 11/19/19 Page 59 of 140
Case 1:11-cv-22408-MGC Document 281-7 Entered on FLSD Docket 08/15/2019 Page 13 of 49

Assumptions and Limiting Conditions                                                    10

7.  No opinion is expressed as to the value of subsurface oil, gas or mineral rights, if any, and we have assumed that the property is not subject to surface entry for the exploration or removal of such materials, unless otherwise noted in our appraisal.

8.  We accept no responsibility for considerations requiring expertise in other fields. Such considerations include, but are not limited to, legal descriptions and other legal matters such as legal title, geologic considerations such as soils and seismic stability; and civil, mechanical, electrical, structural and other engineering and environmental matters. Such considerations may also include determinations of compliance with zoning and other federal, state, and local laws, regulations and codes.

9.  The distribution of the total valuation in the report between land and improvements applies only under the reported highest and best use of the property. The allocations of value for land and improvements must not be used in conjunction with any other appraisal and are invalid if so used. The appraisal report shall be considered only in its entirety. No part of the appraisal report shall be utilized separately or out of context.

10. Neither all nor any part of the contents of this report (especially any conclusions as to value, the identity of the appraisers, or any reference to the Appraisal Institute) shall be disseminated through advertising media, public relations media, news media or any other means of communication (including without limitation prospectuses, private offering memoranda and other offering material provided to prospective investors) without the prior written consent of the persons signing the report.

11. Information, estimates and opinions contained in the report and obtained from third-party sources are assumed to be reliable and have not been independently verified.

12. Any income and expense estimates contained in the appraisal report are used only for the purpose of estimating value and do not constitute predictions of future operating results.

13. If the property is subject to one or more leases, any estimate of residual value contained in the appraisal may be particularly affected by significant changes in the condition of the economy, of the real estate industry, or of the appraised property at the time these leases expire or otherwise terminate.

14. Unless otherwise stated in the report, no consideration has been given to personal property located on the premises or to the cost of moving or relocating such personal property; only the real property has been considered.

15. The current purchasing power of the dollar is the basis for the values stated in the appraisal; we have assumed that no extreme fluctuations in economic cycles will occur.

16. The values found herein are subject to these and to any other assumptions or conditions set forth in the body of this report but which may have been omitted from this list of Assumptions and Limiting Conditions.

17. The analyses contained in the report necessarily incorporate numerous estimates and assumptions regarding property performance, general and local business and economic conditions, the absence of material changes in the competitive environment and other matters. Some estimates or assumptions, however, inevitably will not materialize, and unanticipated events and circumstances may occur; therefore, actual results achieved during

Rosen, Michael & Robyn



Case 2:09-md-02047-EEF-MBN Document 22363-57 Filed 11/19/19 Page 60 of 140
Case 1:11-cv-22408-MGC Document 281-7 Entered on FLSD Docket 08/15/2019 Page 14 of 49

Assumptions and Limiting Conditions                                                    11

the period covered by our analysis will vary from our estimates, and the variations may be material.

18. The Americans with Disabilities Act (ADA) became effective January 26, 1992. We have not made a specific survey or analysis of the property to determine whether the physical aspects of the improvements meet the ADA accessibility guidelines. We claim no expertise in ADA issues, and render no opinion regarding compliance of the subject with ADA regulations. Inasmuch as compliance matches each owner's financial ability with the cost to cure the non-conforming physical characteristics of a property, a specific study of both the owner's financial ability and the cost to cure any deficiencies would be needed for the Department of Justice to determine compliance.

19. The appraisal report is prepared for the exclusive benefit of the Client, its subsidiaries and/or affiliates. It may not be used or relied upon by any other party. All parties who use or rely upon any information in the report without our written consent do so at their own risk.

20. No studies have been provided to us indicating the presence or absence of hazardous materials on the subject property or in the improvements, and our valuation is predicated upon the assumption that the subject property is free and clear of any environment hazards including, without limitation, hazardous wastes, toxic substances and mold. No representations or warranties are made regarding the environmental condition of the subject property. Integra Realty Resources – Miami/Palm Beach, Integra Realty Resources, Inc., Integra Strategic Ventures, Inc. and/or any of their respective officers, owners, managers, directors, agents, subcontractors or employees (the "Integra Parties"), shall not be responsible for any such environmental conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because we are not experts in the field of environmental conditions, the appraisal report cannot be considered as an environmental assessment of the subject property.

21. The persons signing the report may have reviewed available flood maps and may have noted in the appraisal report whether the subject property is located in an identified Special Flood Hazard Area. We are not qualified to detect such areas and therefore do not guarantee such determinations. The presence of flood plain areas and/or wetlands may affect the value of the property, and the value conclusion is predicated on the assumption that wetlands are non-existent or minimal.

22. Integra Realty Resources – Miami/Palm Beach is not a building or environmental inspector. Integra Miami/Palm Beach does not guarantee that the subject property is free of defects or environmental problems. Mold may be present in the subject property and a professional inspection is recommended.

23. The appraisal report and value conclusions for an appraisal assume the satisfactory completion of construction, repairs or alterations in a workmanlike manner.

24. It is expressly acknowledged that in any action which may be brought against any of the Integra Parties, arising out of, relating to, or in any way pertaining to this engagement, the appraisal reports, and/or any other related work product, the Integra Parties shall not be responsible or liable for any incidental or consequential damages or losses, unless the appraisal was fraudulent or prepared with intentional misconduct. It is further acknowledged



Case 2:09-md-02047-EEF-MBN Document 22363-57 Filed 11/19/19 Page 61 of 140
Case 1:11-cv-22408-MGC Document 281-7 Entered on FLSD Docket 03/15/2019 Page 15 of 49

Assumptions and Limiting Conditions                                                           12

that the collective liability of the Integra Parties in any such action shall not exceed the fees paid for the preparation of the appraisal report unless the appraisal was fraudulent or prepared with intentional misconduct. Finally, it is acknowledged that the fees charged herein are in reliance upon the foregoing limitations of liability.

25.     Integra Realty Resources – Miami/Palm Beach, an independently owned and operated company, has prepared the appraisal for the specific intended use stated elsewhere in the report. The use of the appraisal report by anyone other than the Client is prohibited except as otherwise provided. Accordingly, the appraisal report is addressed to and shall be solely for the Client's use and benefit unless we provide our prior written consent. We expressly reserve the unrestricted right to withhold our consent to your disclosure of the appraisal report or any other work product related to the engagement (or any part thereof including, without limitation, conclusions of value and our identity), to any third parties. Stated again for clarification, unless our prior written consent is obtained, no third party may rely on the appraisal report (even if their reliance was foreseeable).

26.     The conclusions of this report are estimates based on known current trends and reasonably foreseeable future occurrences. These estimates are based partly on property information, data obtained in public records, interviews, existing trends, buyer-seller decision criteria in the current market, and research conducted by third parties, and such data are not always completely reliable. The Integra Parties are not responsible for these and other future occurrences that could not have reasonably been foreseen on the effective date of this assignment. Furthermore, it is inevitable that some assumptions will not materialize and that unanticipated events may occur that will likely affect actual performance. While we are of the opinion that our findings are reasonable based on current market conditions, we do not represent that these estimates will actually be achieved, as they are subject to considerable risk and uncertainty. Moreover, we assume competent and effective management and marketing for the duration of the projected holding period of this property.

27.     All prospective value opinions presented in this report are estimates and forecasts which are prospective in nature and are subject to considerable risk and uncertainty. In addition to the contingencies noted in the preceding paragraph, several events may occur that could substantially alter the outcome of our estimates such as, but not limited to changes in the economy, interest rates, and capitalization rates, behavior of consumers, investors and lenders, fire and other physical destruction, changes in title or conveyances of easements and deed restrictions, etc. It is assumed that conditions reasonably foreseeable at the present time are consistent or similar with the future.



Addenda

# Addenda



**Supplemental Addendum**

File No. VALU-18-12-1471

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower | Michael & Robyn Rosen | | | | | |
| Property Address | 17538 Middlebrook Way | | | | | |
| City | Boca Raton | County | Palm Beach | State | FL | Zip Code | 33496 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | |

02/12/2019

On this date above, the appraiser added comparables 5, 6, and 7 to the final analysis. These sales were provided to the appraiser in order to include more recent sales. After analyzing, and adjusting for the more recent sales, the appraiser has amended the opinion of value from $1,900,000 to $1,725,000, with more emphasis and weight placed on the more recent sales.

Signature *Carlos Fong*

Name  Carlos Fong

Date Signed  02/12/2019

State Certification #  RD 6782                   State  FL

Or State License #                   State

Signature

Name

Date Signed

State Certification #                   State

Or State License #                   State

| Borrower | Michael & Robyn Rosen | | | File No. | VALU-18-12-1471 |
|---|---|---|---|---|---|
| Property Address | 17538 Middlebrook Way | | | | |
| City | Boca Raton | County | Palm Beach | State FL | Zip Code 33496 |
| Lender/Client | Integra Realty Resources (IRR) | | | | |

## TABLE OF CONTENTS



Supplemental Addendum w/sig block .............................................................................. 1
USPAP Identification Addendum .................................................................................... 2
Exterior-Only ............................................................................................................... 3
Additional Comparables 4-6 .......................................................................................... 9
Additional Comparables 7-9 .......................................................................................... 10
Single Family Comparable Rent Schedule ....................................................................... 11
General Text Addendum ................................................................................................ 12
Subject Photos ............................................................................................................. 15
Comparable Photos 1-3 ................................................................................................. 16
Comparable Photos 4-6 ................................................................................................. 17
Comparable Photos 7-9 ................................................................................................. 18
Rental Photos 1-3 ........................................................................................................ 19
Assessor Map .............................................................................................................. 20
Location Map ............................................................................................................... 21
Subject Aerial Map ....................................................................................................... 22
Assessor Data ............................................................................................................. 23
MLS Listing Sheet ........................................................................................................ 24
MLS Listing History ...................................................................................................... 25
Tax Information ........................................................................................................... 26
License ....................................................................................................................... 27

USPAP ADDENDUM

File No. VALU-18-12-1471

| Borrower | Michael & Robyn Rosen | | | | | |
|----------|------------------------|--|--|--|--|--|
| Property Address | 17538 Middlebrook Way | | | | | |
| City | Boca Raton | County | Palm Beach | State | FL | Zip Code 33496 |
| Lender | Integra Realty Resources (IRR) | | | | | |

This report was prepared under the following USPAP reporting option:

☒ Appraisal Report      This report was prepared in accordance with USPAP Standards Rule 2-2(a).

☐ Restricted Appraisal Report      This report was prepared in accordance with USPAP Standards Rule 2-2(b).

---

**Reasonable Exposure Time**

My opinion of a reasonable exposure time for the subject property at the market value stated in this report is:    90-180 DAYS

EXPOSURE TIME: estimated length of time that the property interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of the appraisal.

USPAP 2018-19 Comment: Exposure time is a retrospective opinion based on an analysis of past events assuming a competitive and open market

---

**Additional Certifications**

I certify that, to the best of my knowledge and belief:

☒ I have NOT performed services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

☐ I HAVE performed services, as an appraiser or in another capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment. Those services are described in the comments below.

- The statements of fact contained in this report are true and correct.
- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.
- Unless otherwise indicated, I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.
- I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.
- My engagement in this assignment was not contingent upon developing or reporting predetermined results.
- My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice that were in effect at the time this report was prepared.
- Unless otherwise indicated, I have made a personal inspection of the property that is the subject of this report.
- Unless otherwise indicated, no one provided significant real property appraisal assistance to the person(s) signing this certification (if there are exceptions, the name of each individual providing significant real property appraisal assistance is stated elsewhere in this report).

---

**Additional Comments**

APPRAISER COMPETENCY

An appraiser must determine, prior to accepting an assignment, that he or she can perform the assignment competently. Competency requires:

1. the ability to properly identify the problem to be addressed; and
2. the knowledge and experience to complete the assignment competently; and
3. recognition of, and compliance with, laws and regulations that apply to the appraiser or to the assignment.

I am competent to perform this assignment based on my state appraiser license and familiarity with this type of property in the subject market

I performed this appraisal in accordance with the requirements of Title XI of the Financial Institution Reform, Recovery and Enforcement Act of 1989, (12 U.S.C.3331 et seq.), and any implementing regulations

---

**APPRAISER:**

Signature: *Carlos Fong*
Name: Carlos Fong
Date Signed: 02/12/2019
State Certification #: RD 6782
or State License #:
State: FL
Expiration Date of Certification or License: 11/30/2020
Effective Date of Appraisal: 08/01/2009

**SUPERVISORY APPRAISER: (only if required)**

Signature: _____
Name: _____
Date Signed: _____
State Certification #: _____
or State License #: _____
State: _____
Expiration Date of Certification or License: _____
Supervisory Appraiser Inspection of Subject Property:
☐ Did Not    ☐ Exterior-only from Street    ☐ Interior and Exterior

# Exterior-Only Inspection Residential Appraisal Report

VALU-18-12-1471
File # VALU-18-12-1471

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

## SUBJECT

| | | | |
|---|---|---|---|
| Property Address | 17538 Middlebrook Way | City Boca Raton | State FL Zip Code 33496 |
| Borrower Michael & Robyn Rosen | Owner of Public Record Michael & Robyn Rosen | | County Palm Beach |

Legal Description FOX HILL ESTATES OF BOCA RATON LT 148

| Assessor's Parcel # 00-42-46-31-01-000-1480 | Tax Year 2017 | R.E. Taxes $ $18,700 |
|---|---|---|
| Neighborhood Name Fox Hill Estates of Boca Raton | Map Reference 48424 | Census Tract 0077.43 |

Occupant ☒ Owner ☐ Tenant ☐ Vacant   Special Assessments $ 0   ☐ PUD   HOA $ 0   ☐ per year ☐ per month

Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)

Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe) Litigation

Lender/Client Integra Realty Resources (IRR)   Address 9155 South Dadeland Boulevard, Miami, FL 33156

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☒ Yes ☐ No

Report data source(s) used, offering price(s), and date(s). DOM 334;The Subject was offered for sale on 12/16/2008 for $1,949,000 per the MIAMI MLS #R2983257, and closed on 12/04/2009 for $876,000.

## CONTRACT

I ☐ did ☒ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $   Date of Contract   Is the property seller the owner of public record? ☐ Yes ☐ No Data Source(s)

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☐ No
If Yes, report the total dollar amount and describe the items to be paid.

## NEIGHBORHOOD

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | One-Unit Housing Trends | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | | Property Values ☐ Increasing ☒ Stable ☐ Declining | | PRICE | AGE | One-Unit | 90 % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | | $ (000) | (yrs) | 2-4 Unit | % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | | Marketing Time ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | | 92 Low | 0 | Multi-Family | 5 % |
| Neighborhood Boundaries The subject is bound to the north by Gulf Stream, to the west by FL Route 441, | | | | 3,098 High | 40 | Commercial | 5 % |
| to the east by Lyons Rd and to the south by Clint Moore Rd. | | | | 360 Pred. | 25 | Other | % |

Neighborhood Description There are no adverse factors that should affect the subject's marketability. The subject has access to all necessary supporting facilities including schools, shopping, recreation and employment centers.

Market Conditions (including support for the above conclusions) There is a slight oversupply of active listings. This will lead to higher marketing times, however, will not adversely effect the subject.

## SITE

| Dimensions Per Palm Beach County Assr | Area 10,393 sf | Shape Rectangular | View N;Wtr; |
|---|---|---|---|

Specific Zoning Classification AGR-PUD   Zoning Description Agricultural Reserve PUD (00-Unincorporated)

Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No If No, describe

| Utilities | Public | Other (describe) | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water ☒ | | Street Asphalt | ☒ | |
| Gas | ☒ | | Sanitary Sewer ☒ | | Alley None | | |

FEMA Special Flood Hazard Area ☐ Yes ☒ No   FEMA Flood Zone X   FEMA Map # 12099C0965F   FEMA Map Date 10/5/2017

Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No If Yes, describe
No observed or known adverse influences to market value were noted.

## IMPROVEMENTS

Source(s) Used for Physical Characteristics of Property ☐ Appraisal Files ☒ MLS ☒ Assessment and Tax Records ☐ Prior Inspection ☐ Property Owner
☐ Other (describe)   Data Source for Gross Living Area Sefimapp

| General Description | General Description | Heating/Cooling | Amenities | Car Storage |
|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | ☒ Concrete Slab ☐ Crawl Space | ☒ FWA ☐ HWBB | Fireplace(s) # 0 ☐ None | ☐ None |
| # of Stories 2 | ☐ Full Basement ☐ Finished | ☐ Radiant | Woodstove(s) # 0 | ☒ Driveway # of Cars 3 |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | ☐ Partial Basement ☐ Finished | ☐ Other | ☒ Patio/Deck Patio | Driveway Surface Pavers |
| ☒ Existing ☐ Proposed ☐ Under Const. | Exterior Walls CBS | Fuel Gas/Elec | ☒ Porch Porch | ☒ Garage # of Cars 3 |
| Design (Style) Mediterranean | Roof Surface S-Tile | ☒ Central Air Conditioning | ☒ Pool Pool | ☐ Carport # of Cars 0 |
| Year Built 2006 | Gutters & Downspouts Gutters | ☐ Individual | ☒ Fence Fence | ☒ Attached ☐ Detached |
| Effective Age (Yrs) 3 | Window Type Pic./Sliders | ☐ Other | ☐ Built-in | |

Appliances ☒ Refrigerator ☒ Range/Oven ☒ Dishwasher ☒ Disposal ☒ Microwave ☐ Washer/Dryer Other (describe)

Finished area above grade contains: 9 Rooms 5 Bedrooms 5.1 Bath(s) 5,935 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.) None

Describe the condition of the property and data source(s) (including apparent needed repairs, deterioration, renovations, remodeling, etc.). C2;The subject was noted in average condition upon inspection. Subject is located in a gated community and access was not granted.

Are there any apparent physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No
If Yes, describe.
There are no apparent external or functional inadequacies noted or reported at time of inspection. Physical depreciation is calculated by the modified age life method.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No If No, describe.
The construction quality is typical for the area.

**Exterior–Only Inspection Residential Appraisal Report**

VALU-18-12-1471
File # VALU-18-12-1471

| | | | |
|---|---|---|---|
| There are | 28 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 899,000 to $ 9,490,000 . | |
| There are | 14 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 1,290,000 to $ 3,097,500 . | |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE # 2 | COMPARABLE SALE # 3 |
|---|---|---|---|---|
| Address | 17538 Middlebrook Way<br>Boca Raton, FL 33496 | 9391 Bridgebrook Dr<br>Boca Raton, FL 33496 | 17807 Cadena Dr<br>Boca Raton, FL 33496 | 17690 Lomond Ct<br>Boca Raton, FL 33496 |
| Proximity to Subject | | 0.32 miles E | 0.75 miles E | 0.21 miles E |

| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
|---|---|---|---|---|---|---|---|
| Sale Price | $ | $ 2,010,000 | | $ 1,950,000 | | $ 1,910,000 | |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 321.29 sq.ft. | | $ 336.09 sq.ft. | | $ 282.80 sq.ft. | |
| Data Source(s) | | SEF #R2885821;DOM 49 | | SEF #R2607252;DOM 62 | | SEF #R2818416;DOM 315 | |
| Verification Source(s) | | Assessor, Realist | | Assessor, Realist | | Assessor, Realist | |
| Sales or Financing | | ArmLth | | ArmLth | | ArmLth | |
| Concessions | | Conv;0 | | Cash;0 | | Cash;0 | |
| Date of Sale/Time | | s03/08;c02/08 | | s07/07;c03/08 | | s07/08;c04/08 | |
| Location | Residential | Residential | | Residential | | Residential | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 10393 sf | 10019 sf | | 9165 sf | | 13939 sf | -17,730 |
| View | Water | Water | | Water | | Water | |
| Design (Style) | Mediterranean | Mediterranean | | Mediterranean | | Mediterranean | |
| Quality of Construction | Good | Good | | Good | | Good | |
| Actual Age | 3 | 3 | | 3 | | 4 | |
| Condition | Good | Good | | Good | | Good | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 9 5 5.1 | 10 6 7.1 | -40,000 | 9 5 5.1 | | 10 6 5.2 | -10,000 |
| Gross Living Area | 5,935 sq.ft. | 6,256 sq.ft. | | 5,802 sq.ft. | | 6,754 sq.ft. | -81,900 |
| Basement & Finished | No Basement | No Basement | | No Basement | | No Basement | |
| Rooms Below Grade | None | None | | None | | None | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | EFA/CAC | EFA/CAC | | EFA/CAC | | EFA/CAC | |
| Energy Efficient Items | None | None | | None | | None | |
| Garage/Carport | 3-Car Garage | 3-Car Garage | | 3-Car Garage | | 3-Car Garage | |
| Porch/Patio/Deck | Porch/Patio | Porch/Patio | | Porch/Patio | | Porch/Patio | |
| Net Adjustment (Total) | | ☐ + ☒ - $ | -40,000 | ☐ + ☐ - $ | | ☐ + ☒ - $ | -109,630 |
| Adjusted Sale Price | | Net Adj. 2.0 % | | Net Adj. 0.0 % | | Net Adj. 5.7 % | |
| of Comparables | | Gross Adj. 2.0 % $ | 1,970,000 | Gross Adj. 0.0 % $ | 1,950,000 | Gross Adj. 5.7 % $ | 1,800,370 |

☒ I ☐ did did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☒ did ☐ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s)   MIAMI MLS, Palm Beach County Records, and Realist
My research ☐ did ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s)   MIAMI MLS, Palm Beach County Records, and Realist
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 04/30/2009 | | | |
| Price of Prior Sale/Transfer | 0 | | | |
| Data Source(s) | MLS, Assessor, Realist | MLS, Assessor, Realist | MLS, Assessor, Realist | MLS, Assessor, Realist |
| Effective Date of Data Source(s) | 08/01/2009 | 08/01/2009 | 08/01/2009 | 08/01/2009 |

Analysis of prior sale or transfer history of the subject property and comparable sales   Per public record, the Subject transferred on 04/30/2009 for $0 from
Oaks At Boca Raton Venture to Albanese-Popkin Th Oaks Dev Group (Special Warranty Deed #23215-208).

Summary of Sales Comparison Approach   See Attached Addendum.

Indicated Value by Sales Comparison Approach $   1,725,000

Indicated Value by: Sales Comparison Approach $ 1,725,000   Cost Approach (if developed) $   Income Approach (if developed) $
see attached addendum.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair: No special conditions are noted.
Personal property is not included in this valuation.
Based on a visual inspection of the exterior areas of the subject property from at least the street, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$ 1,725,000 , as of 08/01/2009 , which is the date of inspection and the effective date of this appraisal.

**Exterior-Only Inspection Residential Appraisal Report**

VALU-18-12-1471
File # VALU-18-12-1471

| PLEASE ATTACHED ADDENDUM FOR FURTHER INFORMATION |
| --- |

ADDITIONAL COMMENTS

### COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)     Site value is estimated and/or supported by the

sales comparison approach whenever data is available, otherwise extraction method is used.

COST APPROACH

| ESTIMATED ☐ REPRODUCTION OR ☐ REPLACEMENT COST NEW | OPINION OF SITE VALUE | ............................................ | =$ | 150,000 |
| --- | --- | --- | --- | --- |
| Source of cost data     N/A | DWELLING | 5,935 Sq.Ft. @ $ | ............. =$ | |
| Quality rating from cost service     N/A     Effective date of cost data     N/A | | 0 Sq.Ft. @ $ | ............. =$ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | | ............. =$ | |
| The cost approach was not applied as the area is fully built up and there | Garage/Carport | Sq.Ft. @ $ | ............. =$ | |
| is no vacant land available, except where an existing house will be torn | Total Estimate of Cost-New | | ............. =$ | |
| down.  Although the Cost Approach could be considered an applicable | Less     Physical     Functional     External | | | |
| approach to value, it is not typically relied upon by market participants | Depreciation | | =$( | ) |
| for one to four family properties. | Depreciated Cost of Improvements | ............................................ | =$ | |
| | "As-is" Value of Site Improvements | ............................................ | =$ | |
| Estimated Remaining Economic Life (HUD and VA only)     57 Years | INDICATED VALUE BY COST APPROACH | ............................................ | =$ | |

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

INCOME

| Estimated Monthly Market Rent $     10,000     X Gross Rent Multiplier     = $     Indicated Value by Income Approach |
| --- |
| Summary of Income Approach (including support for market rent and GRM)     The income approach is not applicable to this report as homes in the area are |
| typically owner occupied. |

### PROJECT INFORMATION FOR PUDs (if applicable)

PUD INFORMATION

| Is the developer/builder in control of the Homeowners' Association (HOA)? ☐ Yes ☐ No     Unit type(s) ☐ Detached ☐ Attached |
| --- |
| Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit. |
| Legal Name of Project |
| Total number of phases     Total number of units     Total number of units sold |
| Total number of units rented     Total number of units for sale     Data source(s) |
| Was the project created by the conversion of existing building(s) into a PUD? ☐ Yes ☐ No  If Yes, date of conversion |
| Does the project contain any multi-dwelling units? ☐ Yes ☐ No  Data Source(s) |
| Are the units, common elements, and recreation facilities complete? ☐ Yes ☐ No  If No, describe the status of completion. |
| |
| Are the common elements leased to or by the Homeowners' Association? ☐ Yes ☐ No  If Yes, describe the rental terms and options. |
| |
| Describe common elements and recreational facilities. |

**Exterior-Only Inspection Residential Appraisal Report**

VALU-18-12-1471
File # VALU-18-12-1471

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

SCOPE OF WORK: The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a visual inspection of the exterior areas of the subject property from at least the street, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

The appraiser must be able to obtain adequate information about the physical characteristics (including, but not limited to, condition, room count, gross living area, etc.) of the subject property from the exterior-only inspection and reliable public and/or private sources to perform this appraisal. The appraiser should use the same type of data sources that he or she uses for comparable sales such as, but not limited to, multiple listing services, tax and assessment records, prior inspections, appraisal files, information provided by the property owner, etc.

INTENDED USE: The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

INTENDED USER: The intended user of this appraisal report is the lender/client.

DEFINITION OF MARKET VALUE: The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS: The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

3. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

4. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

5. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Form 2055 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

**Exterior-Only Inspection Residential Appraisal Report**

VALU-18-12-1471
File # VALU-18-12-1471

APPRAISER'S CERTIFICATION:    The    Appraiser    certifies    and    agrees    that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this  appraisal  report.

2. I performed a visual inspection of the exterior areas of the subject property from at least the street. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness,  or  structural  integrity  of  the  property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place  at  the  time  this  appraisal  report  was  prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them,  unless  otherwise  indicated  in  this  report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to  the  date  of  sale  of  the  comparable  sale,  unless  otherwise  indicated  in  this  report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has  been  built  or  will  be  built  on  the  land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property  and  the  comparable  sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the  sale  or  financing  of  the  subject  property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable  sources  that  I  believe  to  be  true  and  correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability  of  the  subject  property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements  and  information  in  this  appraisal  report  are  true  and  correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are  subject  only  to  the  assumptions  and  limiting  conditions  in  this  appraisal  report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage  loan  application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility  for  it.

Form 2055 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

**Exterior-Only Inspection Residential Appraisal Report**

VALU-18-12-1471
File # VALU-18-12-1471

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

SUPERVISORY APPRAISER'S CERTIFICATION:    The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature *Carlos Fong* | Signature |
| Name   Carlos Fong | Name |
| Company Name   Valuecentric LLC | Company Name |
| Company Address   7908 Montecito Pl, Delray Beach, FL 33446 | Company Address |
| Telephone Number   (844) 825-8236 | Telephone Number |
| Email Address   info@valuecentric.com | Email Address |
| Date of Signature and Report   02/12/2019 | Date of Signature |
| Effective Date of Appraisal   08/01/2009 | State Certification # |
| State Certification #   RD 6782 | or State License # |
| or State License # | State |
| or Other (describe)                        State # | Expiration Date of Certification or License |
| State   FL | |
| Expiration Date of Certification or License   11/30/2020 | SUBJECT PROPERTY |
| ADDRESS OF PROPERTY APPRAISED | ☐ Did not inspect exterior of subject property |
| 17538 Middlebrook Way | ☐ Did inspect exterior of subject property from street |
| Boca Raton, FL 33496 | Date of Inspection |
| APPRAISED VALUE OF SUBJECT PROPERTY $   1,725,000 | |
| LENDER/CLIENT | COMPARABLE SALES |
| Name | ☐ Did not inspect exterior of comparable sales from street |
| Company Name   Integra Realty Resources (IRR) | ☐ Did inspect exterior of comparable sales from street |
| Company Address   9155 South Dadeland Boulevard, Miami, FL 33156 | Date of Inspection |
| Email Address | |

Form 2055 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

# Exterior–Only Inspection Residential Appraisal Report

VALU-18-12-1471
File # VALU-18-12-1471

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | | COMPARABLE SALE # 5 | | COMPARABLE SALE # 6 | |
|---|---|---|---|---|---|---|---|
| Address | 17538 Middlebrook Way, Boca Raton, FL 33496 | 17897 Monte Vista Dr, Boca Raton, FL 33496 | | 9115 Redonda Dr, Boca Raton, FL 33496 | | 17776 Vecino Way, Boca Raton, FL 33496 | |
| Proximity to Subject | | 0.59 miles SE | | 0.63 miles E | | 0.69 miles E | |
| Sale Price | $ | $ 1,888,213 | | $ 1,775,000 | | $ 1,860,000 | |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 308.03 sq.ft. | | $ 272.57 sq.ft. | | $ 276.33 sq.ft. | |
| Data Source(s) | | SEF #R2635967;DOM 134 | | SEF #R2811246; DOM 610 | | SEF #R3013996;DOM 17 | |
| Verification Source(s) | | Assessor, Realist | | Assessor, Realist | | Assessor, Realist | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing Concessions | | ArmLth Cash;0 | | ArmLth Cash;0 | | ArmLth Cash;0 | |
| Date of Sale/Time | | s09/07;c06/06 | | s02/09;c01/09 | | s05/09;c05/09 | |
| Location | Residential | Residential | | Residential | | Residential | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 10393 sf | 10454 sf | | 11275 sf | | 18687 sf | -41,470 |
| View | Water | Residential | 0 | Water | | Water | |
| Design (Style) | Mediterranean | Mediterranean | | Mediterranean | | Mediterranean | |
| Quality of Construction | Good | Good | | Good | | Good | |
| Actual Age | 3 | 3 | | 1 | | 0 | |
| Condition | Good | Good | | Good | | Good | |
| Above Grade | Total 9 Bdrms. 5 Baths 5.1 | Total 10 Bdrms. 6 Baths 6.2 | -30,000 | Total 10 Bdrms. 5 Baths 7.2 | -50,000 | Total 10 Bdrms. 6 Baths 6.1 | -20,000 |
| Gross Living Area | 5,935 sq.ft. | 6,130 sq.ft. | | 6,512 sq.ft. | | 6,731 sq.ft. | -79,600 |
| Basement & Finished Rooms Below Grade | No Basement None | No Basement None | | No Basement None | | No Basement None | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | EFA/CAC | EFA/CAC | | EFA/CAC | | EFA/CAC | |
| Energy Efficient Items | None | None | | None | | None | |
| Garage/Carport | 3-Car Garage | 3-Car Garage | | 3-Car Garage | | 3-Car Garage | |
| Porch/Patio/Deck | Porch/Patio | Porch/Patio | | Porch/Patio | | Porch/Patio | |
| Net Adjustment (Total) | | ☐ + ☒ - $ | -30,000 | ☐ + ☒ - $ | -50,000 | ☐ + ☒ - $ | -141,070 |
| Adjusted Sale Price of Comparables | | Net Adj. 1.6 % Gross Adj. 1.6 % $ | 1,858,213 | Net Adj. 2.8 % Gross Adj. 2.8 % $ | 1,725,000 | Net Adj. 7.6 % Gross Adj. 7.6 % $ | 1,718,930 |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 4 | COMPARABLE SALE # 5 | COMPARABLE SALE # 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 04/30/2009 | | | 05/06/2009 |
| Price of Prior Sale/Transfer | 0 | | | 0 |
| Data Source(s) | MLS, Assessor, Realist | MLS, Assessor, Realist | MLS, Assessor, Realist | MLS, Assessor, Realist |
| Effective Date of Data Source(s) | 08/01/2009 | 08/01/2009 | 08/01/2009 | 08/01/2009 |

Analysis of prior sale or transfer history of the subject property and comparable sales    17602 Middle Lake Dr has no 12-month prior transfer history. 17777 Key Vista Way has no 12-month prior transfer history.

Analysis/Comments

# Exterior-Only Inspection Residential Appraisal Report

VALU-18-12-1471
File # VALU-18-12-1471

| FEATURE | SUBJECT | COMPARABLE SALE # 7 | | COMPARABLE SALE # 8 | | COMPARABLE SALE # 9 | |
|---|---|---|---|---|---|---|---|
| Address | 17538 Middlebrook Way | 9107 Redonda Dr | | | | | |
| | Boca Raton, FL 33496 | Boca Raton, FL 33496 | | | | | |
| Proximity to Subject | | 0.64 miles E | | | | | |
| Sale Price | $ | $ 1,839,200 | | $ | | $ | |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 270.83 sq.ft. | | $ sq.ft. | | $ sq.ft. | |
| Data Source(s) | | SEF #R2780361; DOM 760 | | | | | |
| Verification Source(s) | | Assessor, Realist | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | ArmLth | | | | | |
| Concessions | | Conv;0 | | | | | |
| Date of Sale/Time | | c05/09;c03/09 | | | | | |
| Location | Residential | Residential | | | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | | | | |
| Site | 10393 sf | 11275 | | | | | |
| View | Water | Water | | | | | |
| Design (Style) | Mediterranean | Mediterranean | | | | | |
| Quality of Construction | Good | Good | | | | | |
| Actual Age | 3 | 1 | | | | | |
| Condition | Good | Good | | | | | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 9 5 5.1 | 10 6 7.2 | -50,000 | | | | |
| Gross Living Area | 5,935 sq.ft. | 6,791 sq.ft. | -85,600 | sq.ft. | | sq.ft. | |
| Basement & Finished | No Basement | No Basement | | | | | |
| Rooms Below Grade | None | None | | | | | |
| Functional Utility | Average | Average | | | | | |
| Heating/Cooling | EFA/CAC | EFA/CAC | | | | | |
| Energy Efficient Items | None | None | | | | | |
| Garage/Carport | 3-Car Garage | 3-Car Garage | | | | | |
| Porch/Patio/Deck | Porch/Patio | Porch/Patio | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| Net Adjustment (Total) | | ☐ + ☒ - | $ -135,600 | ☐ + ☐ - | $ | ☐ + ☐ - | $ |
| Adjusted Sale Price | | Net Adj. 7.4 % | | Net Adj. 0.0 % | | Net Adj. 0.0 % | |
| of Comparables | | Gross Adj. 7.4 % | $ 1,703,600 | Gross Adj. 0.0 % | $ 0 | Gross Adj. 0.0 % | $ |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 7 | COMPARABLE SALE # 8 | COMPARABLE SALE # 9 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 04/30/2009 | | | |
| Price of Prior Sale/Transfer | 0 | | | |
| Data Source(s) | MLS, Assessor, Realist | MLS, Assessor, Realist | | |
| Effective Date of Data Source(s) | 08/01/2009 | 08/01/2009 | | |

Analysis of prior sale or transfer history of the subject property and comparable sales

Analysis/Comments

# SINGLE FAMILY COMPARABLE RENT SCHEDULE

VALU-18-12-1471
File # VALU-18-12-1471

This form is intended to provide the appraiser with a familiar format to estimate the market rent of the subject property. Adjustments should be made only for items of significant difference between the comparables and the subject property.

| ITEM | SUBJECT | COMPARABLE NO. 1 | | COMPARABLE NO. 2 | | COMPARABLE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 17538 Middlebrook Way Boca Raton, FL 33496 | 17570 Middlebrook Way Boca Raton, FL 33496 | | 17979 Lake Azure Way Boca Raton, FL 33496 | | 17827 Lake Azure Way Boca Raton, FL 33496 | |
| Proximity to Subject | | 0.06 miles N | | 0.44 miles SE | | 0.45 miles SE | |
| Date Lease Begins Date Lease Expires | | 02/08 Unk | | 11/07 Unk | | 04/07 Unk | |
| Monthy Rental | If Currently Rented: $ | $ 12,000 | | $ 8,000 | | $ 8,000 | |
| Less: Utilities Furniture | $ | $ | | $ | | $ | |
| Adjusted Monthly Rent | $ | $ 12,000 | | $ 8,000 | | $ 8,000 | |
| Data Source | MLS,Inspection Assessor,Realist | MLS #R2899248 Assessor, Realist | | MLS #R2873477 Assessor, Realist | | MLS #R2799568 Assessor, Realist | |
| RENT ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. |
| Rent Concessions | | | | | | | |
| Location/View | Residential Water | Residential Water | | Residential Water | | Residential Water | |
| Design and Appeal | Mediterranean | Mediterranean | | Mediterranean | | Mediterranean | |
| Age/Condition | 3 Good | 7 Good | | 3 Good | | 3 Good | |
| Above Grade Room Count Gross Living Area | Total 9 / Bdrms 5 / Baths 5.1 / 5,935 Sq. Ft. | Total 9 / Bdrms 5 / Baths 5.1 / 5,511 Sq. Ft. | | Total 9 / Bdrms 5 / Baths 4.2 / 4,661 Sq. Ft. | | Total 9 / Bdrms 5 / Baths 4.2 / 4,661 Sq. Ft. | |
| Other (e.g., basement, etc.) | No Basement None | No Basement None | | No Basement None | | No Basement None | |
| Other: | | | | | | | |
| Net Adj. (total) | | ☐ + ☐ − $ | 0 | ☐ + ☐ − $ | 0 | ☐ + ☐ − $ | 0 |
| Indicated Monthly Market Rent | | $ 12,000 | | $ 8,000 | | $ 8,000 | |

Comments on market data, including the range of rents for single family properties, an estimate of vacancy for single family rental properties, the general trend of rents and vacancy, and support for the above adjustments. (Rent concessions should be adjusted to the market, not to the subject property.)  Rentals of comparable style dwellings ranged from $8,000 to $12,000.

Final Reconciliation of Market Rent:     All rentals were taken into the final consideration.  The opinion of market rent is $10,000

I (WE) ESTIMATE THE MONTHLY MARKET RENT OF THE SUBJECT AS OF     08/01/2009     TO BE $     10,000

Appraiser(s) SIGNATURE  *Carlos Fong*     Review Appraiser SIGNATURE
NAME  Carlos Fong     (If applicable)  NAME
Certified Residential Appraiser
Date Property Inspected  08/01/2009   Report Signed  02/12/2019     Date Property Inspected _____ Report Signed _____
License or Certification #  RD 6782   State  FL     License or Certification # _____ State _____
Expiration Date of License or Certification  11/30/2020     Expiration Date of License or Certification _____
     Review Appraiser ☐ Did  ☐ Did Not  Inspect Subject Property

Freddie Mac Form 1000 (8/88)     Fannie Mae Form 1007 (8/88)
Form 1007 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

## Supplemental Addendum

File No. VALU-18-12-1471

| Borrower | Michael & Robyn Rosen | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 17538 Middlebrook Way | | | | | | |
| City | Boca Raton | County | Palm Beach | | State | FL | Zip Code | 33496 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |

**PURPOSE OF APPRAISAL REPORT**

The purpose of this appraisal is to estimate the market value of the subject property as defined herein. The function of the appraisal is to assist the above-named Lender/Client, its successors and/or assigns, in evaluating the subject property for lending purposes. This is a federally regulated transaction. Additional supporting data can be found in our appraiser work file.

It is assumed that the title to this property is good and marketable. No title search has been made, nor have we attempted to determine ownership of the property. The value estimate is given without regard to any questions of title, boundaries, or encroachments. It is assumed that all assessments are paid. We assume the property to be free and clear of liens and encumbrances except as noted.

The legal description, if included herein, should be verified by legal counsel before being relied upon or used in any conveyance or other document.

We are not familiar with any engineering studies made to determine the bearing capacity of the land. Improvements in the area appear to be structurally sound. It is therefore assumed that soil and subsoil conditions are stable unless specifically outlined in this report.

Any exhibits in the report are intended to assist the reader in visualizing the property and its surroundings. The drawings are not intended as surveys and no responsibility is assumed for their cartographic accuracy. Drawings are not intended to be exact in size, scale or detail.

Areas and dimensions of the property were physically measured. If data is furnished by the principal or from plot plans or surveys furnished by the principal, or from public records, we assume it to be reasonably accurate. In the absence of current surveys, land areas may be based upon representations made by the owner's agents or the client. No attempt has been made to render an opinion or determine the status of easements that may exist. No responsibility is assumed for discrepancies that may become evident from a licensed survey of the property.

The value estimate involves only the real estate and all normal building equipment if any improvements are involved. No consideration was given to personal property, (or special equipment), unless stated.

It is assumed that the property is subject to lawful, competent and informed ownership and management unless noted.

Information in this report concerning market data was obtained from buyers, sellers, brokers, attorneys, trade publications or public records. To the extent possible, this information was examined for accuracy and is believed to be reliable. Dimensions, areas or data obtained from others is believed correct; however, no guarantee is made.

Any information, in whatever form, furnished by others is believed to b e reliable; however, no responsibility is assumed for accuracy.

The separate allocations between land and improvements, if applicable, represents our judgment only under the existing utilization of the property. A re-evaluation should be made if the improvements are removed or substantially altered, and the land utilized for another purpose.

All information and comments concerning the location, neighborhood trends, construction quality and costs, loss in value from whatever cause, condition, rents, or any other data for the property appraised herein, represents the estimates and opinions of the appraiser formed after an examination and study of the property.

Any valuation analysis of the income stream has been predicted upon financing conditions as specified herein, which we have reason to believe are currently available for this property. Financing terms and conditions other than those indicated may alter the final value conclusions.

The appraiser is not required to give testimony or appear in court because of having made this appraisal, with reference to the property in question, unless arrangements have been made previously thereto. If the appraiser (s) is subpoenaed pursuant to court order, the client will be required to compensate said appraiser(s) for his/her time at his/her regular hourly rates, plus expenses.

All opinions, as to values stated, are presented as the appraiser's considered opinion based on the information set forth in the report and his experience. We assume no responsibility for changes in market conditions or for the inability of the client or any other party to achieve their desired results based upon the appraised value. Further, some of the assumptions made can be subject to variation depending upon evolving events. We realize some assumptions may never occur and unanticipated events or circumstances may occur. Therefore, actual results achieved during the projection period may vary from those in this report.

The appraisal assignment was not based on developing or reporting predetermined results, or a requested minimum valuation, a specific valuation, or the approval of a loan.

Our analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the requirements of: USPAP Uniform Standards of Professional Appraisal Practice, and SPP-AI Code of Professional Ethics and the Standards of Professional Practice of the Appraisal Institute; and, except as noted in the Scope of Appraisal, in conformity with specific implementation rules of the following agencies:

FIRREA Title XI of the Financial Institutions Reform, Recovery and Enforcement Act and section 5(b) of the Bank Company Holding Act; FRB – Federal Reserve Board; RTC-Resolution Trust Corporation; OTS-Office of Thrift Supervision; FDIC – Federal Deposit Insurance Corporation; OTC – Office of the Comptroller; NCUA – National Credit Union Association.

**THE APPRAISER HAS PREPARED THIS APPRAISAL IN FULL COMPLIANCE WITH THE APPRAISAL INDEPENDENCE REQUIREMENTS AND HAS NOT PERFORMED, PARTICIPATED IN, OR BEEN ASSOCIATED WITH ANY ACTIVITY IN VIOLATION OF AIR.**

**AT THE REQUEST OF THE CLIENT, THIS APPRAISAL REPORT HAS BEEN PREPARED IN COMPLIANCE WITH THE**

## Supplemental Addendum

File No. VALU-18-12-1471

| Borrower | Michael & Robyn Rosen | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 17538 Middlebrook Way | | | | | | |
| City | Boca Raton | County | Palm Beach | | State | FL | Zip Code | 33496 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |

**UNIFORM APPRAISAL DATASET (UAD) FROM FANNIE MAE AND FREDDIE MAC. THE UAD REQUIRES THE APPRAISER TO USE STANDARDIZED RESPONSES THAT INCLUDE SPECIFIC FORMATS, DEFINITIONS, ABBREVIATIONS, AND ACRONYMS.**

We do not authorize the out-of-context quoting from or partial reprinting of this appraisal report.  Further, neither all nor any part of the contents of this report (especially any conclusions as to value, the identity of the appraiser nor the name of the firm which he is connected, shall be reproduced, published, or disseminated to the public through advertising media, public relations media, news media, or another public means of communication, without the prior written consent of the appraiser signing this report.

Adobe's Distiller software or equivalent may be utilized by appraiser to transmit this encrypted PDF-formatted appraisal.  At a minimum, the software contains the following security measure:

- identifies transmission error during the transmission process, and confirms date, time and quantity of data submitted by appraiser and the date, time and quantity of data received by the Client, and/or its assigns and
- secures data from editing by means of a password, hardware device, or other means that remains in the sole control of the transmitting appraiser.

**THIRTY SIX MONTH LISTING HISTORY**

We are not aware of any prior listings pertaining to the subject property in the past three years as researched through the local Multiple Listing Service.

**NEIGHBORHOOD MARKET CONDITIONS**

No discounts, buy downs or other concessions were noted.  Current 30 year fixed rate financing at 4.5 - 5.5% and 0-2 points.

Stricter Lending Standards and the availability of Mortgage Capital may affect the average sales prices in the area, however, given the market data analyzed by the appraiser, there are no fiscal or economic trends expected to occur that would significantly impact the relatively stable market currently experienced in this neighborhood.

Neighborhood conditions can be found in detail in the attached 1004MC form.

**SITE COMMENTS**

This site is very typical of the neighborhood in terms of size, topography, view and general appeal.  It provides a suitable setting for the improvements and is consistent with market expectations in this price range.  Statements regarding zoning compliance are intended only in the most general sense.  Zoning and building ordinances vary significantly from one municipality to another and can be extremely detailed.  The scope of this assignment does not include a comparison of every potentially significant characteristic of the subject property's site and improvements relative to zoning and building ordinances.  Unless otherwise noted, standard utility and right-of-way easements are insignificant to value.  However, a current locational or boundary survey or title report may reveal encroachments, easements, zoning violations or other matters of interest that could warrant modification of the appraised value.

**COMMENTS REGARDING HIGHEST AND BEST USE**

In compliance with USPAP the following is included in the appraisal;
•        The current use of the real estate as of the date of value is Residential as described in the improvements section of this appraisal.

•        The use of the real estate reflected in this appraisal is as currently improved

•        The rationale and support for the opinion of highest and best use developed for this assignment is as per below:
Highest and Best Use is defined as "The reasonably probable and legal use of vacant land or an improved property that is physically possible, appropriately supported, financially feasible, and that results in the highest value. The four criteria the highest and best use must meet are legal permissibility, physical possibility, financial feasibility, and maximum productivity. Alternatively, the probable use of land or improved property-specific with respect to the user and timing of the use-that is adequately supported and results in the highest present value"
Source: Appraisal Institute, The Dictionary of Real Estate Appraisal, 5th ed. (Appraisal Institute, 2010).
The highest and best use analysis is a critical step in the valuation process.  The comparable properties incorporated into the appraisal are directly affected by the highest and best use analysis. The analysis is based on the use that a hypothetical purchaser would make of the property based on the four tests cited above:
•        Legally Permissible
•        Physically Possible
•        Financially Feasible
•        Maximally Productive

After consideration of the above criteria it has been determined that the current improvements continue to contribute to the total market value of the property and the return from a new improvement would not currently offset the cost of demolishing the existing improvements and constructing a new one.   Therefore, the highest and best use is as improved.

**COMMENTS ON SALES COMPARISON APPROACH**

All comparables provided strong support.  The most weight, and opinion of value fell on comparables 1, and 2, for requiring the lowest gross adjustments.

Comparables were adjusted for their differences in lot square footages, above grade bathroom count, and gross living area.  Gross living area adjustments were made at $100 per square foot.  Comparables within 10% of the subject property did not warrant an adjustment.

The remaining adjustments are indicated on the sales comparison grid.

**Supplemental Addendum**

File No. VALU-18-12-1471

| Borrower | Michael & Robyn Rosen | | | | | | |
|----------|----------------------|--|--|--|--|--|--|
| Property Address | 17538 Middlebrook Way | | | | | | |
| City | Boca Raton | County | Palm Beach | State | FL | Zip Code | 33496 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |

ALL ADJUSTMENTS WERE DERIVED FROM THE SUBJECT MARKET AND THE APPRAISERS EXPERTISE IN THE MARKET PLACE.

I performed this appraisal in accordance with the requirements of Title XI of the Financial Institution Reform, Recovery and Enforcement Act of 1989, (12 U.S.C.3331 et seq.), and any implementing regulations.

All comparables are located within the subject's neighborhood boundaries.  No geographic boundaries were crossed.

It should be noted that the estimated value of the subject exceeds the predominate value in the subject neighborhood.  This will not have a negative effect on the marketability of the subject property.  The subject property is in no way an over improvement for the market area.

**RECONCILIATION**

The sales comparison approach was considered most applicable for the subject property because a typical buyer or seller would most readily understand and apply this approach.  The income approach was not considered applicable due to the fact that the majority of housing stock in the area is owner occupied and not typically used for investment property.  The cost approach was not completed due to the subjectivity in estimating depreciation and because the typical buyer does not base price points on the cost approach.  The quality of available data utilized in the Sales comparison Approach was considered adequate.

**EXTERIOR INSPECTION ADDENDA**

The appraiser has been requested to perform an appraisal based on an exterior only inspection and not to disturb the occupants by entering the building.  The physical characteristics used to develop this appraisal are based on the assessment records of Palm Beach County, Florida and on the multiple listing service.  The subject property was observed from the public street as of the effective date of the appraisal.  On the basis of the observed conditions, the assessment records and multiple listing service information appear to be accurate.  For the purposes of this appraisal, it is assumed that the interior condition of the subject property is consistent with the exterior conditions as observed and that the information concerning the interior condition as provided by the assessor's records and the multiple listing service is accurate.

**PHYSICAL DEFICIENCIES OR ADVERSE CONDITIONS**

Unless otherwise stated in this report, the existence of hazardous material and/or electromagnetic emission, which may or may not be present on the property, was not observed by the appraiser.  The appraiser has no such knowledge of the existence of such materials on or in the subject property, or in the properties of the subject neighborhood.  The appraiser is not qualified to detect such substances.  The presence of such substances as asbestos, urea formaldehyde foam insulation, radon, mold, or other potentially hazardous material may affect the value of the property.  The value estimate expressed is predicated on the assumption that there is no such material in or on the property that would cause a loss in value.  No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them.  The customer is urged to retain an expert in this field.

Dwellings built prior to 1978 may contain lead-based paint.

**MOLD**

The appraiser is not a home or environmental inspector.  The appraiser provides an opinion of value.  The appraisal does not guarantee that the property is free of defects or environmental problems.  The appraiser performs an inspection of visible and accessible areas only.  Mold may be present in areas the appraiser cannot see.  A professional home inspection or environmental inspection is recommended.

**CONCLUSION**

This is an Appraisal Report which is intended to comply with the reporting requirements set forth under Standards Rule 2-2(a) of the Uniform Standards of Professional Appraisal Practice for an Appraisal Report.  As such, it presents only minimal discussions of the data, reasoning, and analyses that were used in the appraisal process to develop the appraiser's opinion of value.  Supporting documentation concerning the data, reasoning, and analyses is retained in the appraiser's file.  The depth of discussion contained in this report is specific to the needs of the client and for the intended use stated herein.  The appraiser is not responsible for unauthorized use of this report.

## Subject Photo Page

| Borrower | Michael & Robyn Rosen | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 17538 Middlebrook Way | | | | | | |
| City | Boca Raton | County | Palm Beach | State | FL | Zip Code | 33496 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |



**Subject Front**

| | |
|---|---|
| 17538 Middlebrook Way | |
| Sales Price | |
| Gross Living Area | 5,935 |
| Total Rooms | 9 |
| Total Bedrooms | 5 |
| Total Bathrooms | 5.1 |
| Location | Residential |
| View | Water |
| Site | 10393 sf |
| Quality | Good |
| Age | 3 |



**Subject Rear**



**Subject Street**

## Comparable Photo Page

| Borrower | Michael & Robyn Rosen | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 17538 Middlebrook Way | | | | | | |
| City | Boca Raton | County | Palm Beach | | State | FL | Zip Code | 33496 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |



### Comparable 1
9391 Bridgebrook Dr

| | |
|---|---|
| Prox. to Subject | 0.32 miles E |
| Sales Price | 2,010,000 |
| Gross Living Area | 6,256 |
| Total Rooms | 10 |
| Total Bedrooms | 6 |
| Total Bathrooms | 7.1 |
| Location | Residential |
| View | Water |
| Site | 10019 sf |
| Quality | Good |
| Age | 3 |



### Comparable 2
17807 Cadena Dr

| | |
|---|---|
| Prox. to Subject | 0.75 miles E |
| Sales Price | 1,950,000 |
| Gross Living Area | 5,802 |
| Total Rooms | 9 |
| Total Bedrooms | 5 |
| Total Bathrooms | 5.1 |
| Location | Residential |
| View | Water |
| Site | 9165 sf |
| Quality | Good |
| Age | 3 |



### Comparable 3
17690 Lomond Ct

| | |
|---|---|
| Prox. to Subject | 0.21 miles E |
| Sales Price | 1,910,000 |
| Gross Living Area | 6,754 |
| Total Rooms | 10 |
| Total Bedrooms | 6 |
| Total Bathrooms | 5.2 |
| Location | Residential |
| View | Water |
| Site | 13939 sf |
| Quality | Good |
| Age | 4 |

## Comparable Photo Page

| Borrower | Michael & Robyn Rosen | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 17538 Middlebrook Way | | | | | | |
| City | Boca Raton | County | Palm Beach | State | FL | Zip Code | 33496 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |



### Comparable 4

17897 Monte Vista Dr

| | |
|---|---|
| Prox. to Subject | 0.59 miles SE |
| Sales Price | 1,888,213 |
| Gross Living Area | 6,130 |
| Total Rooms | 10 |
| Total Bedrooms | 6 |
| Total Bathrooms | 6.2 |
| Location | Residential |
| View | Residential |
| Site | 10454 sf |
| Quality | Good |
| Age | 3 |



### Comparable 5

9115 Redonda Dr

| | |
|---|---|
| Prox. to Subject | 0.63 miles E |
| Sales Price | 1,775,000 |
| Gross Living Area | 6,512 |
| Total Rooms | 10 |
| Total Bedrooms | 5 |
| Total Bathrooms | 7.2 |
| Location | Residential |
| View | Water |
| Site | 11275 sf |
| Quality | Good |
| Age | 1 |



### Comparable 6

17776 Vecino Way

| | |
|---|---|
| Prox. to Subject | 0.69 miles E |
| Sales Price | 1,860,000 |
| Gross Living Area | 6,731 |
| Total Rooms | 10 |
| Total Bedrooms | 6 |
| Total Bathrooms | 6.1 |
| Location | Residential |
| View | Water |
| Site | 18687 sf |
| Quality | Good |
| Age | 0 |

**Comparable Photo Page**

| Borrower | Michael & Robyn Rosen | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 17538 Middlebrook Way | | | | | | |
| City | Boca Raton | County | Palm Beach | State | FL | Zip Code | 33496 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |



**Comparable 7**

| | |
|---|---|
| 9107 Redonda Dr | |
| Prox. to Subject | 0.64 miles E |
| Sale Price | 1,839,200 |
| Gross Living Area | 6,791 |
| Total Rooms | 10 |
| Total Bedrooms | 6 |
| Total Bathrooms | 7.2 |
| Location | Residential |
| View | Water |
| Site | 11275 |
| Quality | Good |
| Age | 1 |

**Comparable 8**

| | |
|---|---|
| Prox. to Subject | |
| Sale Price | |
| Gross Living Area | |
| Total Rooms | |
| Total Bedrooms | |
| Total Bathrooms | |
| Location | |
| View | |
| Site | |
| Quality | |
| Age | |

**Comparable 9**

| | |
|---|---|
| Prox. to Subject | |
| Sale Price | |
| Gross Living Area | |
| Total Rooms | |
| Total Bedrooms | |
| Total Bathrooms | |
| Location | |
| View | |
| Site | |
| Quality | |
| Age | |

# Rental Photo Page

| Borrower | Michael & Robyn Rosen | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 17538 Middlebrook Way | | | | | | |
| City | Boca Raton | County | Palm Beach | State | FL | Zip Code | 33496 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |



### Rental 1

17570 Middlebrook Way
Proximity to Subject  0.06 miles N
Adj. Monthly Rent  12,000
Gross Living Area  5,511
Total Rooms  9
Total Bedrooms  5
Total Bathrooms  5.1
Location  Residential
View  Water
Condition  Good
Age/Year Built  7



### Rental 2

17979 Lake Azure Way
Proximity to Subject  0.44 miles SE
Adj. Monthly Rent  8,000
Gross Living Area  4,661
Total Rooms  9
Total Bedrooms  5
Total Bathrooms  4.2
Location  Residential
View  Water
Condition  Good
Age/Year Built  3



### Rental 3

17827 Lake Azure Way
Proximity to Subject  0.45 miles SE
Adj. Monthly Rent  8,000
Gross Living Area  4,661
Total Rooms  9
Total Bedrooms  5
Total Bathrooms  4.2
Location  Residential
View  Water
Condition  Good
Age/Year Built  3

**Assessor Map**

| Borrower | Michael & Robyn Rosen | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 17538 Middlebrook Way | | | | | | |
| City | Boca Raton | County | Palm Beach | State | FL | Zip Code | 33496 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |



### Location Map

| Borrower | Michael & Robyn Rosen | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 17538 Middlebrook Way | | | | | | |
| City | Boca Raton | County | Palm Beach | | State | FL | Zip Code | 33496 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |



## Subject Aerial Map

| Borrower | Michael & Robyn Rosen | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 17538 Middlebrook Way | | | | | |
| City | Boca Raton | County | Palm Beach | State | FL | Zip Code 33496 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | |



**Assessing Data**

| Borrower | Michael & Robyn Rosen | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 17538 Middlebrook Way | | | | | |
| City | Boca Raton | County | Palm Beach | State | FL | Zip Code 33496 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | |



**Property Detail**

| | | | | |
|---|---|---|---|---|
| Parcel Control Number: | 00-42-46-31-01-000-1480 | Location Address: | 17538 MIDDLEBROOK WAY | |
| Owners: | KIM ANNA ,KIM PHILLIP | | | |
| Mailing Address: | 17538 MIDDLEBROOK WAY,BOCA RATON FL 33496 1022 | | | |
| Last Sale: | AUG-2016 | Book/Page#: | 28515 / 1419 | Price: $1,499,656 |
| Property Use Code: | 0100 - SINGLE FAMILY | Zoning: | AGR-PUD - Agricultural Reserve PUD ( 00-UNINCORPORATED ) | |
| Legal Description: | FOX HILL ESTATES OF BOCA RATON LT 148 | Total SF: | 7539 | Acres 0.2386 |

**2018 Values (Current)**

| | |
|---|---|
| Improvement Value | $903,101 |
| Land Value | $230,423 |
| Total Market Value | $1,133,524 |
| Assessed Value | $1,110,962 |
| Exemption Amount | $50,000 |
| Taxable Value | $1,060,962 |

All values are as of January 1st each year.

**2018 Taxes**

| | |
|---|---|
| Ad Valorem | $18,424 |
| Non Ad Valorem | $394 |
| Total Tax | $18,818 |

**2019 Qualified Exemptions**

Homestead
Additional Homestead

**Applicants**

KIM ANNA &
KIM PHILLIP

**Building Footprint (Building 1 )**

**Subarea and Square Footage (Building 1 )**

| Description | Area Sq. Footage |
|---|---|
| BAS Base Area | 3108 |
| BLC Balcony | 157 |
| FGR Finished Garage | 595 |
| FOP Finished Open Porch | 110 |
| FOP Finished Open Porch | 182 |
| FOP Finished Open Porch | 380 |
| FOP Finished Open Porch | 39 |
| FOP Finished Open Porch | 50 |
| FOP Finished Open Porch | 91 |
| FUS Finished Upper Story | 2827 |
| | Total Square Footage : 7539 |
| | Total Area Under Air : 5935 |

**Extra Features**

| Description | Unit |
|---|---|
| Bbq | 1 |
| Pool - In-Ground | 1 |

Unit may represent the perimeter, square footage, linent footage, total number or other measurement.

**Structural Details (Building 1 )**

| No | Description | |
|---|---|---|
| 1. | Exterior Wall 1 | CB STUCCO |
| 2. | Year Built | 2006 |
| 3. | Air Condition Desc. | HTG & AC |
| 4. | Heat Type | FORCED AIR DUCT |
| 5. | Heat Fuel | ELECTRIC |
| 6. | Bed Rooms | |
| 7. | Full Baths | 5 |
| 8. | Half Baths | 1 |
| 9. | Roof Structure | WOOD TRUSS |
| 10. | Roof Cover | CONC. TILE |
| 11. | Interior Wall 1 | DRYWALL |
| 12. | Floor Type 1 | MARBLE |
| 13. | Floor Type 2 | CARPETING |
| 14. | Stories | 2 |

**MAP**

Dorothy Jacks, CFA, AAS PALM BEACH COUNTY PROPERTY APPRAISER www.pbcgov.org/PAPA          1/3/2019

Owner : KIM ANNA ,KIM PHILLIP  PCN  00424631010001480    1 of 1

# MLS Listing Sheet

| Borrower | Michael & Robyn Rosen | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 17538 Middlebrook Way | | | | | | |
| City | Boca Raton | County | Palm Beach | State | FL | Zip Code | 33496 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |

1/3/2019          Matrix

🏠 Listing

**Single Family**
**17538 Middlebrook Wy**
BOCA RATON, 33496

| | | | |
|---|---|---|---|
| **ML#:** | R2983257 | **List Price:** | $1,848,000 |
| **Rng Price:** | | **Sold Price:** | $876,000 |
| **LLP:** | | **Status:** | Closed Sale |
| **Short Sale:** | No | **REO:** | No |
| **Listing Brkr:** | FLL606632 /Berkshire Hathaway Florida Realty | | |
| **County:** | Palm Beach County | | |
| **Area:** | 4750 | **Auction:** | |
| **Geo Area:** | Palm Beach 4750; 4760; 4770; 4780; 4860; 4870; 488 | | |
| **Legal:** | Fox Hill Estates Boca Raton Lot:148 Blk: Lot SqFt:10454 | | |
| | Frontage: Depth: | | |

**Furnished:**

| | | | |
|---|---|---|---|
| **Bedrooms:** | 6 | **Baths:** | 5 |
| **Convert Bed:** | | | |
| **SqFt (Liv):** | 5,961 | **Tot SqFt:** | 5,961 |
| **SqFt (Adj):** | | | |
| **Bld Ar/Src:** | | | |
| **Year Built:** | 2006 | | |
| **Virtual Tour:** | Click Here | | |

## Location Information

| | | | |
|---|---|---|---|
| **Folio#:** | 00424631010001480 | **Parcel #:** | **Model Name:** MONTECITO |
| **Municipal Code:** | | **Town/Range:** | **Section:** |
| **Subdivision #:** | | **Map Coord:** | **Zoning:** RES |
| **Subdivision:** | the oaks | **Development:** THE OAKS | |
| **Elementary:** | | | |
| **High:** | | | |
| **Neighborhood:** | | | |

## General Information

| | | | |
|---|---|---|---|
| **Type Property:** | Single | **Front Exposure:** West | **HOPA:** No HOPA |
| **For Lease:** | | **For Lease MLS#:** | **SS Addend:** |
| **Boat Services:** | | | |
| **Style:** | R33-WF/Pool/No Ocean Access | | |
| **Garage:** | 3/Attached | | **Carport:** |
| **Lot SF:** | | **Appr Lot Size:** .24 | |
| **Parking Desc:** | | | |
| **Parking Restr:** | | | |
| **Lot Desc:** | Less Than 1/4 Acre Lot | | |
| **Waterfront:** | Yes | | |
| **Water Access:** | | | |
| **Water Frontage:** | | **View:** Pool Area View, Water View | |
| **Pool Dim:** | 33 X | **Spa:** | |
| **Pool:** | Yes | | |
| **Design/Desc:** | | | |
| **Construction:** | CBS Construction | | |
| **Roof Desc:** | Curved/S-Tile Roof | | |
| **Floor:** | Carpeted Floors, Marble Floors, Wood Floors | | |

## Remarks

**Remarks:** PROFESSIONALLY DECORATOR-FINISHED HOME DESIGNED FOR THE MOST DISCRIMINATING BUYER*FROM THE MOMENT YOU WALK INTO THIS LUXURY ESTATE THE ATTENTION TO DETAIL IS OBVIOUS*CUSTOME-SELECTED STONE, FABRICS AND MILLWORK BLEND TOGETHER IN PERFECT HARMONY TO CREATE AN ULTRA BRIGHT COSMOPOLITAN AMBIANCE*THIS HOME IS NOT A HEAVY, DARK, MEDITERRANEAN DUNGEON*THIS HOME IS SLEEK, OPEN AND BRIGHT*THE WELL PLANNED ARCHITECTURAL DESIGN ALLOWS FOR 6 BEDROOMS, 5 BATHS, OFFICE AND BILLIARD ROOM*ABUNDANT CLOSET SPACE AND A THRE

**Driving Directions:** clintmoore rd. to entr. on north side. 2nd left to middlebrook on right

**Broker Remarks:**

## Rooms

| Room | Dim | Room | Dim | Room | Dim |
|---|---|---|---|---|---|
| SecondBedroom | 15X13 | ThirdBedroom | 13X16 | FourthBedroom | 15X12 |
| FifthBedroom | 14X12 | Den | 15X15 | DiningRoom | 16X12 |
| FamilyRoom | 21X19 | Kitchen | 15X15 | LivingRoom | 28X19 |
| MasterBedroom | 19X15 | | | | |

**Bedroom Desc:**
**Master Bath:** Bidet, Dual Sinks
**Addition Rooms:** Attic, Family Room, Loft, Storage Room
**Dining Desc:** Breakfast Area
**ADA Compliant:**

## Additional Information

https://sef.mlsmatrix.com/Matrix/Printing/PrintOptions.aspx?c=AAEAAAD*****AQAAAAAAAARAQAAAFQAAAAGAgAAAAQ3MjjyBgMAAAABNwYEA...    1/3

## MLS Listing History

| Borrower | Michael & Robyn Rosen | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 17538 Middlebrook Way | | | | | | |
| City | Boca Raton | County | Palm Beach | State | FL | Zip Code | 33496 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |

**MLS#:** R2983257    17538 Middlebrook Wy     Single Family

| Price | Chg Type | Chg Info | Eff Date | Agent ID | Office ID | DOM |
|---|---|---|---|---|---|---|
| $876,000 | CS | ($876,000) | 12/04/2009 | FLL60654325 | FLL606632 | |
| $1,848,000 | X | AC -> X | 12/01/2009 | FLL60654325 | FLL606632 | |
| $1,848,000 | AC | A -> AC | 11/19/2009 | FLL60654325 | FLL606632 | |
| $1,848,000 | DECR | $1,849,000 -> $1,848,000 | 07/10/2009 | FLL60654325 | FLL606632 | |
| $1,849,000 | DECR | $1,949,000 -> $1,849,000 | 06/03/2009 | FLL60654325 | FLL606632 | |
| $1,949,000 | NEW | ACTV -> $1,949,000 | 12/16/2008 | FLL60654325 | FLL606632 | |

No Picture Available

# Tax Information

| Borrower | Michael & Robyn Rosen | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 17538 Middlebrook Way | | | | | | |
| City | Boca Raton | County | Palm Beach | State | FL | Zip Code | 33496 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |

1/3/2019      Southeast Florida MLS - Palm Beach County Tax Report - 17538 MIDDLEBROOK WAY, BOCA RATON, FL 33496-1022



**Southeast Florida MLS - IMAPP**
Palm Beach County Tax Report - 17538 MIDDLEBROOK WAY, BOCA RATON, FL 33496-1022

## PROPERTY INFORMATION

**PID #** 00-42-46-31-01-000-1480
**Property Type:** Residential
**Property Address:**
17538 MIDDLEBROOK WAY
BOCA RATON, FL 33496-1022
**Current Owner:**
ANNA KIM
PHILLIP KIM
**Tax Mailing Address:**
17538 MIDDLEBROOK WAY
BOCA RATON, FL 33496-1022

**Use Code:** 01 / SINGLE FAMILY
RESIDENTIAL
**Total Land Area:**
0.2385 acres / 10,387 sf
**Land Areas:**
1. SFR WATER (0130)
**Zoning:** AGR-PUD/AGRICULTURAL
RESERVE PLANNED UNIT
DEVELOPMENT DISTRICT
**Frontage:** 78 ft
**Waterfront:** No
**Subdivision:**
FOX HILL ESTATES OF BOCA RATON
**Census Tract/Block:** 007743 / 1004
**Twn:** 46S / **Rng:** 42E / **Sec:** 31
**Block:** 000 / **Lot:** 1480
**Latitude:** 26.413661
**Longitude:** -80.199415
**Legal Description:**
FOX HILL ESTATES OF BOCA RATON LT 148



Legend: Residential / Commercial | Agricultural / Industrial | Government / Other | Water / Condo
Active | Sold | Pending | Withdrawn | Expired

Foreclosures

## VALUE INFORMATION

| | 2014 | 2015 | 2016 | 2017 | 2018 |
|---|---|---|---|---|---|
| **Improved Value:** | $934,751 | $1,013,775 | $889,756 | $878,637 | $903,101 |
| **Land Value:** | $200,000 | $190,000 | $199,500 | $209,475 | $230,423 |
| **Just Market Value:** | $1,134,751 | $1,203,775 | $1,089,256 | $1,088,112 | $1,133,524 |
| **Percent Change:** | - n/a - | 6.08% | -9.51% | -0.11% | 4.17% |
| **Total Assessed Value:** | $844,699 | $851,457 | $857,417 | $1,088,112 | $1,088,112 |
| **Homestead Exemption:** | $25,000 | $25,000 | $25,000 | $25,000 | $25,000 |
| **Total Exemptions:** | $50,000 | $50,000 | $50,000 | $50,000 | $50,000 |
| **Taxable Value:** | $794,699 | $801,457 | $807,417 | $1,038,112 | $1,060,962 |
| **Ad Valorem Taxes:** | $15,130.67 | $15,089.85 | $14,694.84 | $18,336.49 | $18,423.65 |
| **Non-Ad Valorem Taxes:** | $361.00 | $357.00 | $360.50 | $364.00 | $393.50 |
| **Total Tax Amount:** | $15,491.67 | $15,446.85 | $15,055.34 | $18,700.49 | $18,817.15 |

**Taxing District(s):** 00355 - UNINCORPORATED COUNTY(355)
**\*Non-Ad Valorem Levies:** SOLID WASTE AUTHORITY OF PBC ($316.00) LAKE WORTH DRAINAGE DISTRICT MAINT ($48.00)

Link To County Tax Collector

http://sef.imapp.com/links/property?upin=US120990004246310100001480      1/2

Case 2:09-md-02047-EEF-MBN Document 22363-57 Filed 11/19/19 Page 90 of 140
Case 1:11-cv-22408-MGC Document 281-7 Entered on FLSD Docket 03/15/2019 Page 44 of 49
License

| Borrower | Michael & Robyn Rosen | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 17538 Middlebrook Way | | | | | | |
| City | Boca Raton | County | Palm Beach | | State | FL | Zip Code | 33496 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |



RICK SCOTT, GOVERNOR

JONATHAN ZACHEM, SECRETARY



## STATE OF FLORIDA
## DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION

### FLORIDA REAL ESTATE APPRAISAL BD

THE CERTIFIED RESIDENTIAL APPRAISER HEREIN IS CERTIFIED UNDER THE
PROVISIONS OF CHAPTER 475, FLORIDA STATUTES

## FONG, CARLOS RAFAEL

10601 S.W. 124 ROAD
MIAMI        FL 33186

LICENSE NUMBER: RD6782

EXPIRATION DATE: NOVEMBER 30, 2020

Always verify licenses online at MyFloridaLicense.com



Do not alter this document in any form.

This is your license. It is unlawful for anyone other than the licensee to use this document.

# Anthony M. Graziano, MAI, CRE

**Integra Realty Resources**
**Miami/Palm Beach**

Dadeland Centre
9155 S. Dadeland Boulevard
Suite 1208
Miami, FL 33156

T 305.670.0001
F 305.670.2276

irr.com

## Experience

Senior Managing Director of Integra Realty Resources – Miami/Palm Beach.

Mr. Graziano has actively counseled and advised clients on the sale, leasing, valuation, management, and development of commercial real estate assets throughout the northeast and southeast U.S. since 1992.

Mr. Graziano's professional perspective is a blend of his experience and educational background which includes formal training in architecture, urban planning, macro and micro economics, real estate finance, institutional asset management, and land development. His market experience in sales, leasing, management, and valuation disciplines combine to bring practical real world answers to complex planning and development projects. He has been actively involved as a consultant and/or member of a consultant team on various major redevelopment and land use projects for public and private clients over the past 25+ years.

Mr. Graziano has specialized in consulting and valuation assignments for corporate and private clients on a wide array of complex issues related to estate and condemnation matters, title defects, environmental contamination/damages, air rights, partial and fractional interests, contract disputes, and mediation/arbitration disputes. Mr. Graziano's experience in these matters provides a comprehensive framework for effective strategic real estate consulting.

## Professional Activities & Affiliations

Advisory Board Member: Urban Land Institute (ULI) South Florida / Caribbean
Advisory Board Member: University of Miami M+RED Program
Member: Economic Roundtable - Miami Beacon Council (2012-present)
Board of Director: Integra Realty Resources, Inc. (2011-2016)
Chairman of the Board:    Integra Realty Resources, Inc. (2016-present)
Director: South Florida Chapter of the Appraisal Institute (2014-2016)
Board Member: Builders Association of South Florida (BASF) (2014-2016)
Subject Matter Expert (SME): Appraisal Practice Board, Appraisal Foundation
Member: Appraisal Institute (MAI) (2008-Present)
Member: Counselors of Real Estate (CRE) (2007-Present)
National Association of Realtors (REALTOR)
Miami Association of REALTORS Industry Analyst of the Year (2016)
Former Fellow: Royal Institute of Chartered Surveyors (FRICS) (2007-2014)
AI Leadership Development Advisory Council, March 1998 - February 2001
Lifetime Member: National Eagle Scout Association (NESA)

## Licenses

Florida, State-Certified General Real Estate Appraiser, RZ3510
New Jersey, State-Certified General Real Estate Appraiser, RG001261

## Education

University of Miami, Coral Gables, Florida 1988-1992
Degree: Bachelor of Science in Land Development and Planning, School of Architecture

New York University Real Estate Institute, New York, New York 1993-1996
Degree: Master of Science in Real Estate Development and Investment



amgraziano@irr.com    -    305.670.0001 x320

# Anthony M. Graziano, MAI, CRE

Integra Realty Resources
Miami/Palm Beach

The Douglas Centre
2600 Douglas Road, Suite 801
Coral Gables, FL 33134

T 305.670.0001
F 305.670.2276

irr.com

### Qualified Before Courts & Administrative Bodies

Qualified and accepted as an expert before:
US Bankruptcy Court (Newark, Southern District of Texas, Southern District of Florida)
US Federal District Court (Southern District of Florida)
FL Circuit Court (Miami-Dade, Broward, and Monroe Counties)
NJ State Tax Court
NJ Superior Court - Chancery Division
NJ Superior Court - Law Division
Various municipal planning and zoning boards throughout New Jersey and Florida
Various Taxing Authorities and Boards throughout New Jersey and Florida



amgraziano@irr.com    -    305.670.0001 x320

**Anthony M. Graziano, MAI, CRE, FRICS**
PROFERRED OR DISCLOSED EXPERT WITNESS REPORTS/SETTLEMENTS

| RETENTION DATE | ON BEHALF | IRR FILE # | COURT CASE NO. | COURT / VENUE | CASE NAME | RETAINED BY | TYPE OF CASE |
|---|---|---|---|---|---|---|---|
| 1/2015 | Defendant | 123-2015-0037 | 14-CV-22384 LU | Miami-Dade County, FL | Ray Benson & Maria Helena V. QBE Insurance Corporation | John A. Camp | Retrospective (2004-2006) analysis of market value claims against insurance company related to property |
| 9/2014 | Defendant | 123-2014-0194 | 13-03084CA 10 | 11th Judicial Circuit Miami-Dade, FL | Manuel Soltero V. Adorno & Yoss, LLP | Kaplan Zeena, LLP | Professional Liability suit against law firm and attorneys for malfeasance in litigation matter. |
| 2/2014 | Plaintiff | 123-2014-0030 | Settled | Caribbean Islands | Rainmaker Development V. A&F Bahamas, etal | VLASAC & SHMARUK, LLC | Partnership Dispute between Joint Venture in Carribean development project (golf course, villas, and large-scale marina-commercial-retail development) |
| 11/2012 | Defendant | 123-2012-0140 | 42-2012-CA-001065 | Marion County, FL | CSX Transportation, Inc. V. Moshen Saranazi, Faith Ann Safarazi, Proverbium Hdg, LLC, USA & George Albright | NeJame, La Fay, Jancha, Ahmed, Barker, Joshi & Moreno, P.A. | Condemnation of partial interest with damages |
| 7/2012 | Confidential | 123-2012-0076 | Confidential | Broward County, FL | Ft. Lauderdale-Hollywood Int'l Airport Expansion | White & Case, LLP | Value Diminution Study to assist public agency in good faith negotiations based on airport expansion. |
| 6/2012 | Defendant | 123-2012-0070 | 10-49616-CA-40 | Miami-Dade County, FL | CB Entertainment, LLC V. South Beach Ocean Parcel | Kubicki Draper, P.A. | Construction Damages claim |
| 12/2009 | Plaintiff | 109-2009-0443 | Dept. Justice File 90-11-3-5801 | Federal District Court of Virginia | United States vs. Atlantic Wood Industries, Inc. | U.S. Department of Justice | Damages/environmental contamination dispute between United States Navy and responsible party (Atlantic Wood Industries) |

**Anthony M. Graziano, MAI, CRE, FRICS**

IDENTIFIED EXPERT WITNESS TESTIMONY AT DEPOSITION and/or TRIAL

| RETENTION DATE | ON BEHALF OF | TRI FILE # | COURT/CASE NO. # | CASE NAME | COURT / VENUE | RETAINED BY | TYPE OF CASE |
|---|---|---|---|---|---|---|---|
| 6/2015 | Plaintiff | 123-2015-0170 | 15-008930-CA-01 | Aaron Stauber & Aviva Stauber V. BH 33, LLC | 11th Judicial Circuit Dade County, Florida (Hon. Peter R. Lopez) | Piedra & Associates, P.A. | Motion to dismiss Lis Pendens in an action to enforce contractual specific performance clause |
| 1/2015 | Defendant | 123-2015-0037 | 14-CV-22384 UU | Ray Benson & Maria Helena Campos V. QBE Insurance Corporation | Southern District of Florida | John Camps | Retrospective (2004-2008) analysis of market value claims against insurance company related to property damage claims arising from Hurricane Wilma |
| 1/2014 | Plaintiff | 123-2015-0031 | Pending | Igor Geri V. Yacht Club at Portofino Condo Association | Miami-Dade County | Weil Quaranta McGovern, P.A. | Construction defect dispute related to water-intrusion and damage-detrimental conditions analysis of |
| 10/2014 | Plaintiff | 123-2014-0226 | 08-CA-408-P | Ocean Bank V. Lindback, Monroe County | Monroe County | Ocean Bank | Deficiency claim against borrower on real estate collateral in the Florida Keys (development site plus marine related improvements) |
| 10/2014 | Defendant | 123-2014-0215 | 11-24994 CA 06 | Palm-Aire Holdings V. JRGS Investments, LLC, Jorge Garcia-Sariff and Coursi Drive Investments, LLC | 11th Judicial Circuit Dade County, Florida | Cole, Scott & Kissane, P.A. | Partnership dispute over valuation issues proximal to a fractured condominium project (retrospective values), and operating agreement dispute |
| 7/2014 | Plaintiff | 123-2014-0194 | 13-01822 CACE 02 | Amalia I. Inarda-Rivera V. Rivera Diagnostic Center, Inc., Olexay Rivera & Yudit Rivero | 13-Judicial Circuit Broward County, Florida | Amalia I. Iñarda-Rivera | Rent default judgment and market rental and damage analysis associated with lease default. |
| 10/2014 | Defendant | 123-2014-0159 | 2014FL534 (Pending) | Roehm Title Resources Claim | Palm Beach County | Title Resources Guaranty Company | Title insurance claim related to before and after damage/value diminution analysis based on defined title defects not identified by Title Insurance Company |
| 4/2014 | Plaintiff | 123-2014-0117 | 4:14-CV-01077 (Pending) | USA V. GSA-VA St. Louis Property, LLC | USA District Court for the Eastern District of Missouri Eastern Division | Bryan Cave LLP | Condemnation of a possessory interest for a term. Retained as consulting/rebuttal expert |
| 5/2014 | Defendant | 123-2014-0114 | Pending | Euforia Club | Miami-Dade County | Rennert Bogel Mandler & Rodriguez, P.A. | Rent dispute regarding forced relocation of a nightclub, and relevant market rental rate of replacement club space in Miami |
| 4/2014 | Plaintiff | 123-2014-0089 | | Pan American Holdings Corp. V. Florida DOT Right of Way (ROW) Acquisition S.R.-7 | Broward County | Henry Wulf, Esq. | Condemnation for R.O.W. purposes including before and after damage analysis |
| 1/2014 | Debtor | 123-2014-005 | 13-25728-BKC-RAM | West Airport Plaza Business Park, LLC | US Federal Bankruptcy - Southern District of Florida - Miami Division (Hon. R. Mark) | Counsel for the Debtor, Michael D. Seese, Esq. | Fairness Opinion and market value opinions in conjunction with Debtor's Plan for Reorganization |
| 8/2013 | Defendant | 123-2009-0016 | 02-23922-CA 09 | American Educational Enterprises, LLC v. The Board of Trustees of the Internal Improvement Trust Fund | 11th Judicial Circuit Dade County, Florida | Richard Alayon, Esq. - Alayon and Associates | Economic Damages case associated with an alleged misrepresentation or omission by seller of real property |
| 7/2013 | Plaintiff | 123-2013-0126 | CACE 08857624 (14) | Bayview Loan Servicing, LLC v. Kayhan Soodjani; Muhammad Mahmood; et al | 17th Judicial Circuit Broward County, Florida (Hon. Carlos A. Rodriguez) | Bayview Servicing, represented by Tabas, Freedman and Soloff; Stacey Soloff, Esq. | Deficiency judgment on multi-family project (Dewey Street Apartments) |
| 3/2013 | Defendant | 123-2013-0105 | 11-23561-CIV - Rosenbaum | United States of America v. G.K.K. etal | US District Court - Southern District of Florida (Hon. Rosenbaum) | Richard Duvall, Holland and Knight and Jeffrey Neiman, Esq. | Condemnation claim on the 137,779 s.f. Miami Federal Bureau of Investigation (F.B.I.) building; condemnation of a possessory interest (leasehold) |
| 2/2013 | Defendant | 123-2011-0670 | 09-05650 CA 04 | Zenaida Gomez v. City of Pinecrest | 11th Judicial Circuit Dade County, Florida (Hon. Beth Bloom) | Cynthia A. Everett, Cynthia A. Everett, P.A. | Economic damage resulting from temporary taking (seizure) of private residence |
| 7/2013 | Defendant | 123-2013-0016 | 12-60950-CIV | Q Lending, Inc., Equity Financial Group, Inc., and Equity Commercial Group, Inc. v. Travelers Companies, Inc. etal | US Federal Court - Southern District of Florida | Heidi Raschke, Butler Pappas etal | Value diminution resulting from alleged mortgage fraud. |
| 1/2012 | Plaintiff | 123-2013-0128 | Pending | Vazquez v. Vazquez Tax Protest | 11th Judicial Circuit Dade County, Florida | Ken Wurdenberger, Esq., Kopelowitz Ostrow Ferguson | Tax protest of commercial condominium. |
| 10/19/2012 | Plaintiff | 123-2013-0111 | 2011-1107 CA-23 | Renegade at Hialeah Blvd v. Dynatech Engineering | 11th Judicial Circuit Dade County, Florida (Hon. Stanford Blake) | Daniel Levin, Esq., Cole, Scott, Kissane, P.A. | Economic Damages case, diminution in value resulting from ground lease modification. |
| 10/12/2012 | Plaintiff | 123-2012-0109 | 11-30189 CA21 | Yaffa Yakubov vs. Bayview at Fisher Island No 3 | 11th Judicial Circuit Dade County, Florida | Craig Minko, Esq., Cole Scott Kissane, P.A. | Market Value estimate of Fisher Island Condominium purchased under right of first refusal. Economic damages claimed by Plaintiff due to contract dispute arising from association's exercise of right of first refusal |
| 8/20/2012 | Plaintiff | 123-2010-0012 | CA-02180 CA-25 | 7935 NBV, LLC v. Harbour East Development LTD, Mario Egozi, etal | 11th Judicial Circuit Dade County, Florida | Jose Casal, Esq., Holland and Knight | Deficiency judgment on 32-unit fractured condominium, substitute expert following issuance of IRA-Milam reports in 2010 |
| 8/15/2012 | Disclosed Dual Expert | 123-2012-0072 | | Vazquez v. Vazquez Matrimonial Matter | Matrimonial Mediation | Colon and Mendoza and Robert Hertzberg, P.A. | Retained as a court-appointed third party expert to both parties to appraise (2) marital assets comprised of office, retail, single and multi-family units in FL, TN, NC, and Illinois, Bahamas |
| 7/2012 | Plaintiff | 109-2011- | Pending; 2003-2014 | BASF Inc., successor Ciba Geigy Inc. vs. Township of Toms River | Tax Court of New Jersey (Hon. Patrick DeKlementi) | Phil Genuario, Gangea, etal on behalf of BASF | Challenge to multi-year appeal of $80 Million+ land assessment on contaminated superfund site in Central New Jersey |
| 3/2012 | Plaintiff | 109-2010-0172 | ATL-L-4481-08 | Scot Netherlands Inc. vs. State of New Jersey Department of Environmental Protection (NJDEP) | Superior Court of New Jersey, Law Division Atlantic County | Jay Rhatican, Connell Foley on behalf of Scot Netherlands, Inc. | Challenge to NJDEP permit denial to fill wetlands, deprivation of all reasonable investment backed expectations |
| 7/2011 | Defendant | 109-2010-0199 | MER-L-3034-08 | 460 Mercer Street, LLP and Bruckener Southern, LLC vs. Hightstown | Superior Court of New Jersey Mercer County | Areeil Zarro Grimm & Aaron, P.C. Husam Chater | Litigation-Dispute Resolution - Hightstown Zoning Challenge |
| 12/2009 | Plaintiff | 109-2009-0443 | Dept.-Justice File 90-11-3-5801- | United States v.s. Atlantic Wood Industries, Inc. | Federal District Court of Virginia | U.S. Department of Justice | Damages/environmental contamination dispute between United States Navy and responsible party (Atlantic Wood Industries) |
| 12/2009 | Plaintiff | 109-2009-0377 | | Westrust/HPO Mortgage Fund v.s. City of Atlantic City | Tax Court of New Jersey | Cole, Schotz, Meisel, Forman & Leonard, P.A. Carl Rizzo, Esq. | Tax Appeals - To develop an opinion of the market value of the fee simple interest in the property |



M. Qualis: Graziano; Trial Lists

**Anthony M. Graziano, MAI, CRE, FRICS**
IDENTIFIED EXPERT WITNESS TESTIMONY AT DEPOSITION and/or TRIAL

| RETENTION DATE | ON BEHALF OF | IRR FILE # | COURT CASE NO | CASE NAME | COURT / VENUE | RETAINED BY | TYPE OF CASE |
|---|---|---|---|---|---|---|---|
| 1/1/2009 | Secured Creditor | 109-2009-0439 | | Erickson Building | US Bankruptcy Court - Southern District of Texas | Stuart Glick, Esq., Sills, Cummis & Gross | Market Value for Bankruptcy of 140,000 SF corporate campus in Bethesda, Maryland |
| 9/9/2009 | Plaintiff | 109-2009-0123 | 3035-601 | Bay Head Yacht Club vs. Ocean County Tax Board | Tax Court of New Jersey | John Doyle, Carluccio, Leone, Dimon, Doyle & Sacks, LLC | Tax Appeal for Bay Head Yacht Club |
| 12/2/2008 | Plaintiff | 109-2009-XXX | INA (DEPS Pending) | Mirage Atlantic City (MAC) vs. City of Atlantic City | Tax Court of New Jersey | Hank Rovitzel, Esq. | Tax Appeal at State Tax Court on 15 acre casino site adjacent to Trump Marina |
| 8/8/2008 | Defendant | 109-2008-0252 | L-2424-05 | The City of South Amboy vs. Lower Main Street Development, LLC & Amboy Aggregates Joint Venture | Superior Court of New Jersey Law Division, Middlesex County | Bathgate, Wegenar, etal | Verified complaint in condemnation |
| 6/2/2008 | Defendant | 109-2008-345 | C.A. No. OCNL-3361-06 | Osbourne Associates, Melbourne Associates VI, LLC, Kingsway Realty Profit Share vs. Citta Enterprises Co, JAC Property Management etal and Eckert Corporation | Superior Court of New Jersey, Law Division Ocean County | Francis X. Manning, Esq, Stradley Ronon Stevens & Young & Michael Canfoli, Esq. Partridge Snow and Hahn, both on behalf of | Dispute re: proper valuation of leasehold and sub-lessee's sandwich leasehold interest on damage claim for breach of agreement claim |
| 1/1/2008 | Defendant | 109-2008-0125- | N/A | Toms River Township vs. Gba Geigy Corporation | American Arbitration Association [testimony at Arbitration conducted by Hon. Eugene Serpentelli] | Mark Troncone, Esq., In-house Counsel to Township of Toms River | Arbitration of environmental damages claim, and counter-claim of appropriateness of zoning on 1,900 acre superfund site. |
| 11/2/2007 | Defendant | 109-2007-211 | L-0008/35-06 | Kyle Mosteller vs. Gaila Neeman | Superior Court of New Jersey, Law Division Middlesex County | Frank Carusio, Esq, Hoagland, Longo, Moran and Dunst | Damage claim due to loss of trees and screening between urban properties |
| 6/2/2007 | Plaintiff | 109-2007-0134 | 3:07-CV-2322 | Silver Lakes Inc. vs. Township of Freehold Inc. | Superior Court of New Jersey, Chancery Division Monmouth County | Christopher Hanlon, Esq, Hanlon and Niemann | Challenge to validity of Rent Control Ordinance as transfer of property rights from Lessor to Lessee |
| 6/2/2007 | Plaintiff | 109-2007-0173 | | Laurelwood Homes, LLC vs. United States Department of Navy | Federal District Court of Virginia | William A. Shook Esq. | Leasehold interest in the property, breach of lease claim on behalf of leasehold owner (Laurelwood) claiming breach of lease and damages |
| 12/2/2006 | Defendant | 109-2006-0192 | CAM - L - 9731-05 | Brandywine Operating Partnership, LP vs. UFCW Local 56 | Superior Court of New Jersey, Law Division, Camden County | Brett Last, Esq, O'Brien, Beiland and Bushinsky | Estimate the value of damages to landlord on breach of above-market lease |
| 8/8/2006 | Defendant | 109-2006-0257 | | County Line & Browers Bridge, Jackson Township | Superior Court of New Jersey, Chancery Division | Levin, Shea, Pfeffer, PA Steven Pfeffer | To develop an opinion of the hypothetical market value of the fee simple interest in the property |
| 2/2/2006 | Defendant | 109-2006-0044 | OCN-L-2482-04 | Carl Brooks vs. K. Hovanian | Ocean Superior Court, Ocean County Courthouse | Ronan, Tuzzio & Giannone    Linda Olsen | To estimate value diminution in the subject property as a result of various issues asserted by the property owner in conjunction with pending litigation between the property owner, and the subject developer K. Hovnanian @ Sea Oaks |
| 10/2/2005 | Defendant | 109-2005-0315 | OCN-L-1810-5 | Atlantic City Electric Company d/b/a Conectiv Power Delivery, a regulated public utility of the state of New Jersey vs. ACI Manahawkin, LLC family and/or Manchester Armstrong | Superior Court of New Jersey Ocean County | Flaster/Greenberg, PC,    David R. Oberlander, Esq. | Compensation for the taking of an easement for construction and maintenance of a 230kv transmission line and towers by Atlantic City Electric |
| 6/6/2005 | Defendant | 109-2005-0214 | MON-L-2609-05 | Township of Howell vs. George Harms Construction Co., Inc. etal | Superior Court of New Jersey Law Division Monmouth County | Connell & Foley, LLP Kevin Coakley, Esq. | To develop an opinion of the market value of the fee simple estate of the property |
| 8/8/2003 | Defendant | 109-2003-0282 | | Giuffie vs. Giuffre | Superior Court of New Jersey Chancery Division Family Part, Monmouth County | Louis & Wolf - Frank A. Louis | To develop an opinion of the market value of the Fee Simple estate of five properties for purposes of equitable distribution of marital assets |
| 7/7/2003 | Defendant | 109-2003-0203 | OCN-C-78-03 | West, etal vs. Pompaino, etal | Superior Court of New Jersey, Chancery Division, Ocean County | Stephen E. Smith, Esq | To develop an opinion of the diminution in value due to a loss of useable land area |
| 6/6/2003 | Plaintiff | 109-2003-0101 | OCN-C-316-02 | Eugene M. Lord vs. Donald W. Rinaldo | Superior Court of New Jersey Law Division, Ocean County | Lombardi & Lombardi Scott Telson | To develop an opinion of the market value of the fee simple estate of the property |
| 4/4/2003 | Plaintiff | 109-2003-0128 | FM-15-468-03-C | Vincent Urbank vs. Lisa Urbank | Superior Court of New Jersey, Chancery Division, Family Part Ocean County | Marianna Pontoriero, Esq. | Litigation-Matrimonial |
| 2/2/2002 | Plaintiff | 109-2002-0055 | | Shenandoah Mobile Home Park | | Windels Marx, Lane & Mittendorf, LLP - William Cagney | Inverse Condemnation - Rent Control Ordinance |
| 4/4/2001 | Claimant | 109-2001-0169 | NJ-2624-00 | DeForest John Ely and Kimberle A. Ely, h/w | Superior Court of New Jersey, Chancery Division Middlesex County | First American Title Insurance Co. Jack Mikis | To derive an opinion of the fair compensation of the fee simple estate, subject to the temporary title encumbrance |
| 3/3/1999 | Defendant | 109-1999-0062 | | Georgetown Apartments | US Bankruptcy Court - District of Newark | Emmes & Co. Andrew Schwarz | To estimate the market value of the Leased Fee Estate of the property inclusive of 28 Apartment complexes through NY, NJ, PA, and MD. |
| 12/1997 | Defendant | LKW-257-3186 | FM-15-1465-94 | Lisa Franklin, etal vs. Donald Franklin, etal | Superior Court of New Jersey, Chancery Division, Family Part, Ocean County | Greenbaum, Rowe, Smith, Ravin, Davis & Himmel LLP - Robert S. Underhill | Estimating the market value of the leased fee interest |
| 8/1984 | Creditor | HUD-XX | | Hudson Marina Association vs. Emmes & Co. | US Bankruptcy Court - District of Newark | | Bankruptcy Reorganization of 200+ slip failed marina/dockominium complex |



# EXHIBIT F8

**Integra Realty Resources**
Miami/Palm Beach

**Appraisal Report & Post-Remediation Damage Related to Chinese Drywall**

**Etter, Steven & Cathy**
Market Value - "As Remediated"
18894 SE Jupiter Inlet Way
Tequesta, Martin County, Florida 33469
Client Reference: 7

**Prepared For:**
Colson Hicks Eidson

**Effective Date of the Appraisal:**
September 28, 2016

**Report Format:**
Appraisal Report

**IRR - Miami/Palm Beach**
File Number: 123-2018-0275

**Etter, Steven & Cathy**
18894 SE Jupiter Inlet Way
Tequesta, Florida

| Integra Realty Resources | In Miami | In Orlando | In Naples/Sarasota |
|---|---|---|---|
| Miami | Dadeland Centre | The Magnolia Building | Horseshoe Professional Park |
| Orlando | 9155 South Dadeland Blvd. | 326 N. Magnolia Ave. | 2770 Horseshoe Drive S. |
| Southwest Florida | Suite 1208 | | Suite 3 |
| | Miami, FL 33156 | Orlando, FL 32801 | Naples, FL 34104 |
| www.irr.com | (305) 670-0001 | (407) 843-3377 | (239)-643-6888 |



February 7, 2019

Patrick S. Montoya
Partner
Colson Hicks Eidson
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134

SUBJECT:     Market Value - "As Remediated"
             Case No 11-22408-Civ-COOKE
             United States District Court Southern District of Florida in the matter of
             Eduardo and Carmen Amorin, et al. individually and on behalf of others situated
             similarly v. Taishan Gypsum Co., LTD., f/k/a Shandong Taiche Dongxin Co. Ltd., et al
             Priority Claimant Case at:
             Etter, Steven & Cathy
             18894 SE Jupiter Inlet Way
             Tequesta, Martin County, Florida 33469
             Client Reference: 7
             IRR - Miami/Palm Beach File No. 123-2018-0275

Dear Mr. Montoya:

Integra Realty Resources – Miami/Palm Beach submits the following damage estimate in the referenced property as of the effective date assuming all remediation was completed by an appropriate contractor with experience and credentials in remediating defective drywall.

The report is intended to comply the Uniform Standards of Professional Appraisal Practice (USPAP). It presents summary discussions of the data, reasoning, and analysis that were used in the appraisal process to develop the opinions. Additional information is contained within our workfile.

The findings will form the basis of expert witness testimony in the above referenced case.

Case 2:09-md-02047-EEF-MBN Document 22383-57 Filed 11/19/19 Page 100 of 140
Case 1:11-cv-22408-MGC Document 201-8 Entered on FLSD Docket 05/13/2019 Page 9 of 45

Identification of Subject                                                                      2

## Identification of Subject

The subject of this report is a single-family Mediterranean style home configured with 3 bedroom and 3 full baths, 2 half baths with 4,597 SF under air-conditioning. The subject property was built in 2006 and is located on a 9,104 SF site.

## Purpose of the Appraisal

The purpose of the appraisal is to develop an opinion of the diminution in value and related damages, collectively "the damages" as of the effective date of the appraisal, September 28, 2016. The damage estimate assumes the defective drywall remediation was completed and does not consider the cost to cure. The date of the report is February 7, 2019. The appraisal is valid only as of the stated effective date or dates.

## Intended Use and User

The intended use of the appraisal is for litigation purposes. The client, Colson Hicks Eidson and related co-counsel, Plaintiff and the Court are the intended users. Integra Realty Resources – Miami/Palm Beach is not responsible for unauthorized use of this report.

## Most Recent Sale History

The most recent closed sale of the subject is summarized as follows:

| Most Recent Subject Sale (Closed) | |
| --- | --- |
| Sale Date (Most Recent) | December 8, 2004 |
| Seller | EMERALD HARBOUR OF JUPITER INC |
| Buyer | Etter, Steven M & Cathy L |
| Sale Price | $600,000 |
| Recording Instrument Number | 1798714 |
| Disposition Details | Original purchase of land from the developer |

To the best of our knowledge, no other sale or transfer of ownership has taken place within a three-year period prior to the effective appraisal date.

Per the Evidence Preservation Report by Chinese Drywall Screening LLC, the house was remediated on December 17, 2012.

On September 29, 2016, the subject was sold for $1,580,000 after 88 days on market (DOM). The listing did not disclose the prior presence of Chinese drywall. The original listing price was $1,795,000. The sales price was 88% of the listing price. Based upon Integra's unimpaired value, there was 0% discount. However, this is not probative since the sale did not disclose prior drywall remediation.

## Pending Transactions

To the best of our knowledge, the property is not subject to an agreement of sale or an option to buy, nor is it listed for sale, as of the effective appraisal date.



Case 2:09-md-02047-EEF-MBN Document 22263-57 Filed 11/19/19 Page 101 of 140
Case 1:11-cv-22408-MGC Document 201-8 Entered on FLSD Docket 05/13/2019 Page 6 of 45

Definition of Market Value                                                    3

## Definition of Market Value

The following definition of market value is used by agencies that regulate federally insured financial institutions in the United States:

"The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:

- Buyer and seller are typically motivated;

- Both parties are well informed or well advised, and acting in what they consider their own best interests;

- A reasonable time is allowed for exposure in the open market;

- Payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and

- The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale."

*(12 C.F.R. Part 34.42(g); 55 Federal Register 54696, August 24, 1990, as amended at 57 Federal Register 12202, April 9, 1992, 59 Federal Register 29499, June 7, 1994)*

## Definition of Retrospective Value Opinion

A value opinion effective as of a specified historical date. The term retrospective does not define a type of value.  Instead, it identifies a value opinion as being effective at some specific prior date. Value as of a historical date is frequently sought in connection with property tax appeals, damage models, lease renegotiation, deficiency judgements, estate tax, and condemnation.  Inclusion of the type of value with this term is appropriate, e.g. "retrospective market value opinion".

(*Source: The Dictionary of Real Estate Appraisal – 6th Edition; Appraisal Institute, 200 W. Madison, Suite 1500, Chicago, IL 60606, www.appraisalinstitute.org*)

## Definition of Hypothetical Condition

1. A condition that is presumed to be true when it is known to be false. (SVP)

2. A condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis. Comment: Hypothetical conditions are contrary to known facts about physical, legal, or economic characteristics of the subject property; or about conditions external to the property, such as market conditions or trends; or about the integrity of date used in an analysis. (USPAP, 2016-2017 ed.)

(*Source: The Dictionary of Real Estate Appraisal – 6th Edition; Appraisal Institute, 200 W. Madison, Suite 1500, Chicago, IL 60606, www.appraisalinstitute.org*)



Case 2:09-md-02047-EEF-MBN Document 22363-57 Filed 11/19/19 Page 102 of 140
Case 1:11-cv-22408-MGC Document 291-6 Entered on FLSD Docket 05/13/2019 Page 4 of 45

Scope of Work                                                                                          4

## Scope of Work

Integra was retained as an expert in the captioned matter of this report to address potential damages related to the subject property, specifically excluding the costs to cure.

Integra was retained to estimate any post remediation damages, and conducted a separate study to determine whether damages persist following defective drywall remediation. The result of that study are outlined within Integra's report entitled "Market Analysis of the Post Remediation Impact of Chinese Drywall on Residential Property Values in Florida." The results of that study are incorporated by reference herein.

In addition, our damage model was requested to include a rental value analysis of the Priority Claimant residence, and a determination of the relevant economic damage associated with having to vacate the home for a period of time (and secure alternate living arrangements) during the remediation. As of the effective date, the claimant would have suffered the damages.

Integra established individual case files on each Priority Claimant residence, and retained professional assistance from qualified residential appraisers in each jurisdiction. Integra managed the process of these retrospective appraisals, interfaced with the residential appraisers, and reviewed the form appraisals completed on each assignment including review of the comparables, adjustments, and form narrative to establish the market value of the residence unimpaired as of the effective date.

Integra professionals reviewed various materials exchanged as part of this case and considered materials that were relevant to the market valuation. These materials were downloaded from the attorney's dropbox and are retained within our workfile.

Integra's participation in and review of the final appraised values results in a conclusion of the market value of the home defined as "Hypothetical Market Value" assuming defective drywall had never been identified within the subject property. This forms the basis of the unimpaired market value as of the effective date.

All properties and comparables were inspected by the local residential appraisers without the benefit of interior inspections. Adjustments for condition and age at the time of sale are based upon photographs contained within the various MLS databases, paired analysis from amongst the comparables, and for the subject, were based on photos, if available. In the event a property had not been remediated as of the effective date, we assume average condition for the property in the market as of the effective date.

The damage analysis expressed within this report follows the peer teachings and market accepted processes for damage analysis. However, the damage analysis only represents a <u>portion of the overall damages</u> because we were specifically requested to exclude the consideration of the costs to cure. This represents a relevant component of damage in this case for property that factually have not been remediated.

Integra's role was strictly to identify post remediation value damage (sometime referred to as "stigma") and estimate the relevant rental value and moving costs as a proxy for the temporary loss of use during remediation.

Etter, Steven & Cathy



Case 2:09-md-02047-EEF-MBN Document 22263-57 Filed 11/19/19 Page 103 of 140
Case 1:11-cv-22408-MGC Document 201-6 Entered on FLSD Docket 03/13/2019 Page 8 of 45

Highest and Best Use                                                                                  5

## Significant Appraisal Assistance

In addition to Anthony M. Graziano, MAI ,CRE, principal, it is acknowledged that Peter G. Kayworth, Yuliya Georgieva, Joseph Melloni and Paul L. Jones of IRR-Miami/Palm Beach were involved in the assignment consisting of conducting research on the subject and transactions involving comparable properties, performing appraisal analyses and assisting in report writing, under the supervision of the persons signing the report.  The local residential appraisers are also named as providing significant assistance, including exterior inspection of the properties and comparables, application of their local knowledge in adjusting and estimating the unimpaired value, and developing the form report valuations incorporated herein.

## Prior Services

USPAP requires appraisers to disclose to the client any other services they have provided in connection with the subject property in the prior three years, including valuation, consulting, property management, brokerage, or any other services. We have not performed any services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

## Valuation Methodology

Appraisers usually consider the use of three approaches to value when developing a market value opinion for real property. These are the cost approach, sales comparison approach, and income capitalization approach.  The valuations consider the only relevant approach for residential valuation, the sales comparison analysis.  The cost and income approach are not considered relevant.

The sales comparison approach is the most applicable valuation method since there is an active market for similar properties, and sufficient sales data is available for analysis.  Additionally, this approach directly considered the prices of alternative properties having similar utility.

### Highest and Best Use

The highest and best use of the subject as if vacant for development of a single-family home which is physically possible, legally permissible as per zoning, financially feasible and maximally productive.

The highest and best use of the subject as improved is for continued use as a single-family home with no other use that could reasonably be expected to provide a higher value to the land as if vacant.  The improvements contribute to the over all value to a greater extent than the land value alone, and therefore, continued use as improved concluded to be maximally productive and the highest and best use of the property.

### Conclusion of Value

The Hypothetical market value appraisal as of the effective date, reflective of a traditional form appraisal, is contained within the Addenda of this report.  This value us hypothetical since it assumes that defective drywall had never been present at the subject property.



Against this value, we then apply the Post Impairment Discount as a percentage of unimpaired value as developed within the Integra report studying this issue. This represents a compensable damage resulting from the prior existence of defective drywall in the home as of the effective date.

In addition, each appraisal (unimpaired) reflects a rental value analysis as of the effective date. This rental value analysis concludes to the equivalent market rent for the home (unimpaired) and reflects a proxy for the probable actual costs the homeowner would experience by having to move-out of the primary residence during remediation.

The homeowner would also have to incur moving /storage costs twice, once before and once after remediation. Professional packing, moving and storage for an average home is estimated at $1,500 per move, or $3,000 in total. This amount is added to the loss of use estimate as an additional damage.

This loss of use calculation does not consider the costs of alternative housing or other tangible costs potentially incurred for damages suffered between the date of discovery and the date of value. These damages, if applicable, are being estimated by a separate expert (Elkins et al). To the extent Elkins posits costs which are duplicative or actual costs that are greater or less, some minor adjustments to Integra's damage model may be required.

The timeframe for remediation (months of actual loss) could vary depending upon the permitting process in the specific community, the availability of labor, and the size of the home. Integra reviewed a number of transactions that were remediated by investors and found the typical timeframe between purchase of an unremediated home and listing[1] of the home post-remediation to be 3-6 months.

Larger more expansive homes would be expected to take longer to remediate since more materials are required, and in higher-priced homes, supplies would typically be custom-ordered. Therefore, we apply the following timeframes based on the subject's size and price range:

< $150,000 Home up to 2,000+/- SF                4 months

$150,000 - $750,000 home up to 4,000 SF          6 months

$750,000+ home up over 4,000 SF                  9 months

---

[1] The "listing date" is most relevant since a homeowner conducting their own remediation can move back in once the home is ready for sale (ie- coinciding with a final certificate of occupancy).

Etter, Steven & Cathy



Case 2:09-md-02047-EEF-MBN   Document 22363-57   Filed 11/10/19   Page 105 of 140
Case 1:11-cv-22408-MGC   Document 281-8   Entered on FLSD Docket 05/13/2019   Page 10 of 45

Conclusion of Value                                                                                    7

The following shows our final estimate of damages as of the effective date, and assuming costs to cure (i.e. – to conduct the remediation) have been expended.

| Conclusions of Damage | | | |
|---|---|---|---|
| Hypothetical Value (Unimpaired - Before) | | $1,580,000 | |
| Market Impairment Discount (As if Remediated) | | 10% | |
| Post Impairment Damage ($) | | $158,000 | |
| **Hypothetical Value As IF Remediated** | | | **$1,422,000** |
| Post Remediation Damages as of Effective Date | | | **$158,000** |
| Loss of Use: | | | |
| Rental Rate ($/Month) | **$6,200** | | |
| Moving & Storage Costs | | $3,000 | |
| Loss of Use Subject (# Months) | 9x | $55,800 | |
| Subject Total | | | **$58,800** |
| **Post Remediation Damage** | | | **$216,800** |

Note: Does not consider "cost to cure". Assumes remediation was completed by qualified contractor who warranties the work.

On September 29, 2016, the subject was sold for $1,580,000 after 88 days on market (DOM).  The listing did not disclose the prior presence of Chinese drywall.  The original listing price was $1,795,000.  The sales price was 88% of the listing price.  Based upon Integra's unimpaired value, there was 0% discount.  However, this is not probative since the sale did not disclose prior drywall remediation.

The Court will be left to decide whether the value diminution damages apply because the claimant did not disclose the prior remediation, but achieved a price "as if unimpaired."  In instant case, the sellers did not appear to suffer the value diminution estimated above, but have incurred future potential risk/potential liability through non-disclosure.

Etter, Steven & Cathy



Case 2:09-md-02047-EEF-MBN Document 22363-57 Filed 11/18/19 Page 106 of 140
Case 1:14-cv-22408-MGC Document 281-8 Entered on FLSD Docket 05/13/2019 Page 21 of 45
Certification                                                                                    8

## Certification

We certify that, to the best of our knowledge and belief:

1.    The statements of fact contained in this report are true and correct.

2.    The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are our personal, impartial, and unbiased professional analyses, opinions, and conclusions.

3.    We have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.

4.    We have not performed any services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

5.    We have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

6.    Our engagement in this assignment was not contingent upon developing or reporting predetermined results.

7.    Our compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

8.    Our analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice as well as applicable state appraisal regulations.

9.    The reported analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute.

10.   The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

11.   Anthony M. Graziano, MAI, CRE did not make a personal inspection of the property that is the subject of this report. Carlos Fong has personally inspected the subject.

12.   Significant real property appraisal assistance was provided by Peter G. Kayworth, Yuliya Georgieva, Joseph Melloni and Paul L. Jones.  Additionally, real estate assistance was provided by various Valucentric employees and subcontractors, including: John Barcelo, Angela Barcelo, Fred Stites, Carlos Fong, Sarah D. Wilson and Rob Baird.

13.   We have experience in appraising properties similar to the subject and are in compliance with the Competency Rule of USPAP.

14.   As of the date of this report, Anthony M. Graziano, MAI, CRE, has completed the continuing education program for Designated Members of the Appraisal Institute.

Anthony M. Graziano, MAI, CRE
Senior Managing Director - Miami
State-Certified General RE Appraiser
FL Certificate # RZ#3510

Case 2:09-md-02047-EEF-MBN Document 22363-57 Filed 11/18/19 Page 107 of 140
Case 1:11-cv-22408-MGC Document 281-8 Entered on FLSD Docket 05/13/2019 Page 12 of 45

Assumptions and Limiting Conditions                                                        9

## Assumptions and Limiting Conditions

This appraisal and any other work product related to this engagement are limited by the following standard assumptions, <u>except as otherwise noted in the report</u>:

1.  The title is marketable and free and clear of all liens, encumbrances, encroachments, easements and restrictions. The property is under responsible ownership and competent management and is available for its highest and best use.

2.  There are no existing judgments or pending or threatened litigation that could affect the value of the property.

3.  There are no hidden or undisclosed conditions of the land or of the improvements that would render the property more or less valuable. Furthermore, there is no asbestos in the property.

4.  The revenue stamps placed on any deed referenced herein to indicate the sale price are in correct relation to the actual dollar amount of the transaction.

5.  The property is in compliance with all applicable building, environmental, zoning, and other federal, state and local laws, regulations and codes.

6.  The information furnished by others is believed to be reliable, but no warranty is given for its accuracy.

This appraisal and any other work product related to this engagement are subject to the following limiting conditions, except as otherwise noted in the report:

1.  An appraisal is inherently subjective and represents our opinion as to the value of the property appraised.

2.  The conclusions stated in our appraisal apply only as of the effective date of the appraisal, and no representation is made as to the effect of subsequent events.

3.  No changes in any federal, state or local laws, regulations or codes (including, without limitation, the Internal Revenue Code) are anticipated.

4.  No environmental impact studies were either requested or made in conjunction with this appraisal, and we reserve the right to revise or rescind any of the value opinions based upon any subsequent environmental impact studies. If any environmental impact statement is required by law, the appraisal assumes that such statement will be favorable and will be approved by the appropriate regulatory bodies.

5.  Unless otherwise agreed to in writing, we are not required to give testimony, respond to any subpoena or attend any court, governmental or other hearing with reference to the property without compensation relative to such additional employment.

6.  We have made no survey of the property and assume no responsibility in connection with such matters. Any sketch or survey of the property included in this report is for illustrative purposes only and should not be considered to be scaled accurately for size. The appraisal covers the property as described in this report, and the areas and dimensions set forth are assumed to be correct.



Case 2:09-md-02047-EEF-MBN Document 22363-57 Filed 11/18/19 Page 108 of 140
Case 1:14-cv-22408-MGC Document 281-8 Entered on FLSD Docket 05/13/2019 Page 13 of 45

Assumptions and Limiting Conditions                                                                10

7.  No opinion is expressed as to the value of subsurface oil, gas or mineral rights, if any, and we have assumed that the property is not subject to surface entry for the exploration or removal of such materials, unless otherwise noted in our appraisal.

8.  We accept no responsibility for considerations requiring expertise in other fields. Such considerations include, but are not limited to, legal descriptions and other legal matters such as legal title, geologic considerations such as soils and seismic stability; and civil, mechanical, electrical, structural and other engineering and environmental matters. Such considerations may also include determinations of compliance with zoning and other federal, state, and local laws, regulations and codes.

9.  The distribution of the total valuation in the report between land and improvements applies only under the reported highest and best use of the property. The allocations of value for land and improvements must not be used in conjunction with any other appraisal and are invalid if so used. The appraisal report shall be considered only in its entirety. No part of the appraisal report shall be utilized separately or out of context.

10. Neither all nor any part of the contents of this report (especially any conclusions as to value, the identity of the appraisers, or any reference to the Appraisal Institute) shall be disseminated through advertising media, public relations media, news media or any other means of communication (including without limitation prospectuses, private offering memoranda and other offering material provided to prospective investors) without the prior written consent of the persons signing the report.

11. Information, estimates and opinions contained in the report and obtained from third-party sources are assumed to be reliable and have not been independently verified.

12. Any income and expense estimates contained in the appraisal report are used only for the purpose of estimating value and do not constitute predictions of future operating results.

13. If the property is subject to one or more leases, any estimate of residual value contained in the appraisal may be particularly affected by significant changes in the condition of the economy, of the real estate industry, or of the appraised property at the time these leases expire or otherwise terminate.

14. Unless otherwise stated in the report, no consideration has been given to personal property located on the premises or to the cost of moving or relocating such personal property; only the real property has been considered.

15. The current purchasing power of the dollar is the basis for the values stated in the appraisal; we have assumed that no extreme fluctuations in economic cycles will occur.

16. The values found herein are subject to these and to any other assumptions or conditions set forth in the body of this report but which may have been omitted from this list of Assumptions and Limiting Conditions.

17. The analyses contained in the report necessarily incorporate numerous estimates and assumptions regarding property performance, general and local business and economic conditions, the absence of material changes in the competitive environment and other matters. Some estimates or assumptions, however, inevitably will not materialize, and unanticipated events and circumstances may occur; therefore, actual results achieved during

Etter, Steven & Cathy



Case 2:09-md-02047-EEF-MBN Document 22363-57 Filed 11/18/19 Page 109 of 140
Case 1:11-cv-22408-MGC Document 281-8 Entered on FLSD Docket 05/13/2019 Page 24 of 45

Assumptions and Limiting Conditions 11

the period covered by our analysis will vary from our estimates, and the variations may be material.

18. The Americans with Disabilities Act (ADA) became effective January 26, 1992. We have not made a specific survey or analysis of the property to determine whether the physical aspects of the improvements meet the ADA accessibility guidelines. We claim no expertise in ADA issues, and render no opinion regarding compliance of the subject with ADA regulations. Inasmuch as compliance matches each owner's financial ability with the cost to cure the non-conforming physical characteristics of a property, a specific study of both the owner's financial ability and the cost to cure any deficiencies would be needed for the Department of Justice to determine compliance.

19. The appraisal report is prepared for the exclusive benefit of the Client, its subsidiaries and/or affiliates. It may not be used or relied upon by any other party. All parties who use or rely upon any information in the report without our written consent do so at their own risk.

20. No studies have been provided to us indicating the presence or absence of hazardous materials on the subject property or in the improvements, and our valuation is predicated upon the assumption that the subject property is free and clear of any environment hazards including, without limitation, hazardous wastes, toxic substances and mold. No representations or warranties are made regarding the environmental condition of the subject property. Integra Realty Resources – Miami/Palm Beach, Integra Realty Resources, Inc., Integra Strategic Ventures, Inc. and/or any of their respective officers, owners, managers, directors, agents, subcontractors or employees (the "Integra Parties"), shall not be responsible for any such environmental conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because we are not experts in the field of environmental conditions, the appraisal report cannot be considered as an environmental assessment of the subject property.

21. The persons signing the report may have reviewed available flood maps and may have noted in the appraisal report whether the subject property is located in an identified Special Flood Hazard Area. We are not qualified to detect such areas and therefore do not guarantee such determinations. The presence of flood plain areas and/or wetlands may affect the value of the property, and the value conclusion is predicated on the assumption that wetlands are non-existent or minimal.

22. Integra Realty Resources – Miami/Palm Beach is not a building or environmental inspector. Integra Miami/Palm Beach does not guarantee that the subject property is free of defects or environmental problems. Mold may be present in the subject property and a professional inspection is recommended.

23. The appraisal report and value conclusions for an appraisal assume the satisfactory completion of construction, repairs or alterations in a workmanlike manner.

24. It is expressly acknowledged that in any action which may be brought against any of the Integra Parties, arising out of, relating to, or in any way pertaining to this engagement, the appraisal reports, and/or any other related work product, the Integra Parties shall not be responsible or liable for any incidental or consequential damages or losses, unless the appraisal was fraudulent or prepared with intentional misconduct. It is further acknowledged



Case 2:09-md-02047-EEF-MBN Document 23363-57 Filed 11/18/19 Page 110 of 140
Case 1:14-cv-22408-MGC Document 281-8 Entered on FLSD Docket 05/13/2019 Page 15 of 45

Assumptions and Limiting Conditions                                          12

that the collective liability of the Integra Parties in any such action shall not exceed the fees paid for the preparation of the appraisal report unless the appraisal was fraudulent or prepared with intentional misconduct. Finally, it is acknowledged that the fees charged herein are in reliance upon the foregoing limitations of liability.

25.     Integra Realty Resources – Miami/Palm Beach, an independently owned and operated company, has prepared the appraisal for the specific intended use stated elsewhere in the report. The use of the appraisal report by anyone other than the Client is prohibited except as otherwise provided. Accordingly, the appraisal report is addressed to and shall be solely for the Client's use and benefit unless we provide our prior written consent. We expressly reserve the unrestricted right to withhold our consent to your disclosure of the appraisal report or any other work product related to the engagement (or any part thereof including, without limitation, conclusions of value and our identity), to any third parties. Stated again for clarification, unless our prior written consent is obtained, no third party may rely on the appraisal report (even if their reliance was foreseeable).

26.     The conclusions of this report are estimates based on known current trends and reasonably foreseeable future occurrences. These estimates are based partly on property information, data obtained in public records, interviews, existing trends, buyer-seller decision criteria in the current market, and research conducted by third parties, and such data are not always completely reliable. The Integra Parties are not responsible for these and other future occurrences that could not have reasonably been foreseen on the effective date of this assignment. Furthermore, it is inevitable that some assumptions will not materialize and that unanticipated events may occur that will likely affect actual performance. While we are of the opinion that our findings are reasonable based on current market conditions, we do not represent that these estimates will actually be achieved, as they are subject to considerable risk and uncertainty. Moreover, we assume competent and effective management and marketing for the duration of the projected holding period of this property.

27.     All prospective value opinions presented in this report are estimates and forecasts which are prospective in nature and are subject to considerable risk and uncertainty. In addition to the contingencies noted in the preceding paragraph, several events may occur that could substantially alter the outcome of our estimates such as, but not limited to changes in the economy, interest rates, and capitalization rates, behavior of consumers, investors and lenders, fire and other physical destruction, changes in title or conveyances of easements and deed restrictions, etc. It is assumed that conditions reasonably foreseeable at the present time are consistent or similar with the future.



Case 2:09-md-02047-EEF-MBN Document 22363-57 Filed 11/10/19 Page 111 of 140
Case 1:11-cv-22408-MGC Document 281-8 Entered on FLSD Docket 05/13/2019 Page 16 of 45

Addenda

# Addenda



| Borrower | Cathy & Steven Etter | | | File No. | VALU-18-12-1472 |
|---|---|---|---|---|---|
| Property Address | 18894 SE Jupiter Inlet Way | | | | |
| City | Tequesta | County | Martin | State | FL | Zip Code | 33469 |
| Lender/Client | Integra Realty Resources (IRR) | | | | |

## TABLE OF CONTENTS



Supplemental Addendum ........................................................................... 1
USPAP Identification Addendum ................................................................ 2
Exterior-Only ............................................................................................. 3
General Text Addendum ............................................................................ 9
Single Family Comparable Rent Schedule ................................................ 12
Subject Photos .......................................................................................... 13
Comparable Photos 1-3 ............................................................................ 14
Rental Photos 1-3 ..................................................................................... 15
Assessor Map ........................................................................................... 16
Location Map ............................................................................................ 17
Subject Aerial Map ................................................................................... 18
Assessor Data .......................................................................................... 19
MLS Listing Sheet .................................................................................... 20
MLS Listing History .................................................................................. 21
Tax Information ......................................................................................... 22
License ...................................................................................................... 23

## Supplemental Addendum

File No. VALU-18-12-1472

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower | Cathy & Steven Etter | | | | | |
| Property Address | 18894 SE Jupiter Inlet Way | | | | | |
| City | Tequesta | County | Martin | State | FL | Zip Code 33469 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | |

ADDITIONAL COMMENTS(02/07/2019)

It should be noted that the subject along with comparables 1 and 2 have both a private inground pool and a private boat dock.
Comparable 3 has a private inground pool, but no boat dock which required a positive adjustment.  The subject property has 3
full bathrooms and 2 half baths which was considered equal to the 4 full bathrooms of comparable 3.  No additional adjustments
were warranted.

# USPAP ADDENDUM

VALU-18-12-1472

File No. VALU-18-12-1472

| Borrower | Cathy & Steven Etter | | | | |
|---|---|---|---|---|---|
| Property Address | 18894 SE Jupiter Inlet Way | | | | |
| City | Tequesta | County Martin | | State FL | Zip Code 33469 |
| Lender | Integra Realty Resources (IRR) | | | | |

This report was prepared under the following USPAP reporting option:

☒ Appraisal Report — This report was prepared in accordance with USPAP Standards Rule 2-2(a).

☐ Restricted Appraisal Report — This report was prepared in accordance with USPAP Standards Rule 2-2(b).

**Reasonable Exposure Time**

My opinion of a reasonable exposure time for the subject property at the market value stated in this report is: 30-90 DAYS

EXPOSURE TIME: estimated length of time that the property interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of the appraisal.

USPAP 2018-19 Comment: Exposure time is a retrospective opinion based on an analysis of past events assuming a competitive and open market

**Additional Certifications**

I certify that, to the best of my knowledge and belief:

☒ I have NOT performed services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

☐ I HAVE performed services, as an appraiser or in another capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment. Those services are described in the comments below.

- The statements of fact contained in this report are true and correct.
- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.
- Unless otherwise indicated, I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.
- I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.
- My engagement in this assignment was not contingent upon developing or reporting predetermined results.
- My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice that were in effect at the time this report was prepared.
- Unless otherwise indicated, I have made a personal inspection of the property that is the subject of this report.
- Unless otherwise indicated, no one provided significant real property appraisal assistance to the person(s) signing this certification (if there are exceptions, the name of each individual providing significant real property appraisal assistance is stated elsewhere in this report).

**Additional Comments**

APPRAISER COMPETENCY

An appraiser must determine, prior to accepting an assignment, that he or she can perform the assignment competently. Competency requires:

1. the ability to properly identify the problem to be addressed; and
2. the knowledge and experience to complete the assignment competently; and
3. recognition of, and compliance with, laws and regulations that apply to the appraiser or to the assignment.

I am competent to perform this assignment based on my state appraiser license and familiarity with this type of property in the subject market

I performed this appraisal in accordance with the requirements of Title XI of the Financial Institution Reform, Recovery and Enforcement Act of 1989, (12 U.S.C.3331 et seq.), and any implementing regulations

| APPRAISER: | SUPERVISORY APPRAISER: (only if required) |
|---|---|
| Signature: *Carlos Fong* | Signature: |
| Name: Carlos Fong | Name: |
| Date Signed: 02/07/2019 | Date Signed: |
| State Certification #: RD 6782 | State Certification #: |
| or State License #: | or State License #: |
| State: FL | State: |
| Expiration Date of Certification or License: 11/30/2020 | Expiration Date of Certification or License: |
| Effective Date of Appraisal: 09/28/2016 | Supervisory Appraiser Inspection of Subject Property: |
| | ☐ Did Not  ☐ Exterior-only from Street  ☐ Interior and Exterior |

## Exterior-Only Inspection Residential Appraisal Report

VALU-18-12-1472
File # VALU-18-12-1472

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

### SUBJECT

| | |
|---|---|
| Property Address | 18894 SE Jupiter Inlet Way |  City Tequesta | State FL | Zip Code 33469 |
| Borrower Cathy & Steven Etter | Owner of Public Record Daniel W & Jessica L Corns | County Martin |
| Legal Description | LOT 4 EMERALD HARBOUR (PB 15 PG 75) |
| Assessor's Parcel # 19-40-43-002-000-00040-0 | Tax Year 2016 | R.E. Taxes $ 11,605 |
| Neighborhood Name Emerald Harbour | Map Reference 38940 | Census Tract 0015.00 |
| Occupant ☒ Owner ☐ Tenant ☐ Vacant | Special Assessments $ 0 | ☒ PUD | HOA $ 400 | ☐ per year ☒ per month |
| Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe) | |
| Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe) Litigation | |
| Lender/Client Integra Realty Resources (IRR) | Address 9155 South Dadeland Boulevard, Miami, FL 33156 |

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal?  ☒ Yes  ☐ No
Report data source(s) used, offering price(s), and date(s).  DOM 88;The Subject was offered for sale on 05/31/2016 for $1,795,000 per the MIAMI MLS #R10240297, and closed on 09/28/2016 for $1,580,000.

### CONTRACT

I ☐ did ☒ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $ | Date of Contract | Is the property seller the owner of public record? ☐ Yes ☐ No Data Source(s)
Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☐ No
If Yes, report the total dollar amount and describe the items to be paid.

### NEIGHBORHOOD

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % |
|---|---|---|---|---|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | | | Property Values ☐ Increasing ☒ Stable ☐ Declining | | | PRICE | AGE | One-Unit 90 % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | | | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | | | $ (000) | (yrs) | 2-4 Unit % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | | | Marketing Time ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | | | 161 Low 0 | | Multi-Family 5 % |
| Neighborhood Boundaries The subject is bound to the north by County Line Rd, to the west by | | | | | | 5,495 High 75 | | Commercial 5 % |
| Loxahatchee River, to the east by Atlantic Ocean and to the south by Loxahatchee River. | | | | | | 460 Pred. 30 | | Other % |

Neighborhood Description There are no apparent factors that should affect the subject's marketability. The subject has access to all necessary supporting facilities including schools, shopping, recreation and employment centers.

Market Conditions (including support for the above conclusions) There is a slight oversupply of active listings. This will lead to higher marketing times, however, will not adversely effect the subject.

### SITE

| | | | | | |
|---|---|---|---|---|---|
| Dimensions Per Martin County Assr | Area 9,104 sf | Shape Irregular | View N;Res; | | |
| Specific Zoning Classification WRC | Zoning Description Waterfront Resort Commercial District | | | | |
| Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe) | | | | | |

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street Asphalt | ☒ | |
| Gas | ☒ | | Sanitary Sewer | ☒ | | Alley None | | |

FEMA Special Flood Hazard Area ☐ Yes ☒ No FEMA Flood Zone X FEMA Map # 12085C0527G FEMA Map Date 3/16/2015
Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No If No, describe
Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No If Yes, describe
No observed or known adverse influences to market value were noted.

### IMPROVEMENTS

Source(s) Used for Physical Characteristics of Property ☐ Appraisal Files ☒ MLS ☒ Assessment and Tax Records ☐ Prior Inspection ☐ Property Owner
☐ Other (describe) Data Source for Gross Living Area Sefimapp

| General Description | | General Description | | Heating/Cooling | | Amenities | | Car Storage |
|---|---|---|---|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | | ☒ Concrete Slab ☐ Crawl Space | | ☒ FWA ☐ HWBB | | Fireplace(s) # 0 ☒ None | | ☐ None |
| # of Stories 2 | | ☐ Full Basement ☐ Finished | | ☐ Radiant | | Woodstove(s) # 0 | | ☒ Driveway # of Cars 6 |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | | ☐ Partial Basement ☐ Finished | | ☐ Other | | ☒ Patio/Deck Patio | | Driveway Surface Pavers |
| ☒ Existing ☐ Proposed ☐ Under Const. | Exterior Walls CBS | Fuel Gas/Elec. | | ☒ Porch Porch | | ☒ Garage # of Cars 3 |
| Design (Style) Mediterranean | Roof Surface S-Tile | ☒ Central Air Conditioning | | ☒ Pool Pool | | ☐ Carport |
| Year Built 2006 | Gutters & Downspouts Gutters | ☐ Individual | | ☒ Fence Fence | | ☒ Attached ☐ Detached |
| Effective Age (Yrs) 8 | Window Type SH | ☐ Other | | ☐ Built-in | | |

Appliances ☒ Refrigerator ☒ Range/Oven ☒ Dishwasher ☐ Disposal ☒ Microwave ☐ Washer/Dryer ☐ Other (describe)
Finished area above grade contains: 7 Rooms 3 Bedrooms 3.2 Bath(s) 4,597 Square Feet of Gross Living Area Above Grade
Additional features (special energy efficient items, etc.) None

Describe the condition of the property and data source(s) (including apparent needed repairs, deterioration, renovations, remodeling, etc.). The subject was noted in good condition upon inspection. Subject is located in a gated community and access was not granted.

Are there any apparent physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No
If Yes, describe.
There are no apparent external or functional inadequacies noted or reported at time of inspection. Physical depreciation is calculated by the modified age life method.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No If No, describe.
The construction quality is typical for the area.

Form 2055 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

# Exterior–Only Inspection Residential Appraisal Report

File # VALU-18-12-1472

| | | | |
|---|---|---|---|
| There are | 20 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 987,000 to $ 5,250,000 . |
| There are | 17 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 696,888 to $ 5,495,000 . |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 18894 SE Jupiter Inlet Way | 25 Saddleback Rd | | 10482 SE Banyan Way | | 11992 SE Tiffany Way | |
| | Tequesta, FL 33469 | Tequesta, FL 33469 | | Tequesta, FL 33469 | | Tequesta, FL 33469 | |
| Proximity to Subject | | 1.62 miles W | | 1.62 miles W | | 1.38 miles N | |
| Sale Price | $ | | $ 1,800,000 | | $ 1,700,000 | | $ 1,375,000 |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 345.56 sq.ft. | | $ 354.46 sq.ft. | | $ 317.41 sq.ft. | |
| Data Source(s) | | MLS #R10195226; DOM 7 | | MLS #R10189312; DOM 10 | | MLS #R10130142; DOM 153 | |
| Verification Source(s) | | Assessor, Realist | | Assessor, Realist | | Assessor, Realist | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | Arms Length | | Arms Length | | Arms Length | |
| Concessions | | Cash;0 | | Conv;0 | | Conv;0 | |
| Date of Sale/Time | | c01/16;s03/16 | | c01/16;s01/16 | | c09/15;s10/15 | |
| Location | Residential | Res/WaterFrnt | -90,000 | Residential | | Residential | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 9,104 sf | 16248 sf | -21,432 | 19733 sf | -31,887 | 15464 sf | -19,080 |
| View | Residential | Res/Water | -54,000 | Residential | | Residential | |
| Design (Style) | Mediterranean | Contemp | | Mediterranean | | Mediterranean | |
| Quality of Construction | Good | Good | | Good | | Good | |
| Actual Age | 13.8 | 32 | | 12 | 0 | 24 | |
| Condition | Good | Good | | Good | | Good | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 7 3 3.2 | 9 5 3.1 | +10,000 | 8 4 4.1 | -10,000 | 9 5 4.0 | 0 |
| Gross Living Area | 4,597 sq.ft. | 5,209 sq.ft. | -61,200 | 4,796 sq.ft. | -19,900 | 4,332 sq.ft. | +26,500 |
| Basement & Finished | No Basement | No Basement | | No Basement | | No Basement | |
| Rooms Below Grade | None | None | | None | | None | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | EFA/CAC | EFA/CAC | | EFA/CAC | | EFA/CAC | |
| Energy Efficient Items | None | None | | None | | None | |
| Garage/Carport | 3-Car Garage | 3-Car Garage | | 2-Car Garage | +10,000 | 2-Car Garage | +10,000 |
| Porch/Patio/Deck | Porch,Patio | Deck/Porch | | Porch,Patio | | Patios/Deck | 0 |
| Other | Pool/Boat Dock | Pool/Boat Dock | | Pool/Boat Dock | | Pool | +50,000 |
| Net Adjustment (Total) | | ☐ + ☒ - $ | -216,632 | ☐ + ☒ - $ | -51,787 | ☒ + ☐ - $ | 67,420 |
| Adjusted Sale Price | | Net Adj. 12.0 % | | Net Adj. 3.0 % | | Net Adj. 4.9 % | |
| of Comparables | | Gross Adj. 13.1 % $ | 1,583,368 | Gross Adj. 4.2 % $ | 1,648,213 | Gross Adj. 7.7 % $ | 1,442,420 |

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☒ did ☐ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s) MIAMI MLS, Martin County Records, and Realist
My research ☐ did ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s) MIAMI MLS, Martin County Records, and Realist
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 09/28/2016 | | | |
| Price of Prior Sale/Transfer | 1,580,000 | | | |
| Data Source(s) | MLS, Assessor, Realist | MLS, Assessor, Realist | MLS, Assessor, Realist | MLS, Assessor, Realist |
| Effective Date of Data Source(s) | 09/28/2016 | 09/28/2016 | 09/28/2016 | 09/28/2016 |

Analysis of prior sale or transfer history of the subject property and comparable sales  Per public record, the Subject sold on 09/28/2016 for $1,580,000 from
Steven M & Cathy L Etter to Daniel W & Jessica L Corns (Warranty Deed #2881-2968).

Summary of Sales Comparison Approach  See Attached Addendum.

Indicated Value by Sales Comparison Approach $ 1,580,000

Indicated Value by: Sales Comparison Approach $ 1,580,000  Cost Approach (if developed) $  Income Approach (if developed) $
see attached addendum.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair: No special conditions are noted.
Personal property is not included in this valuation.
Based on a visual inspection of the exterior areas of the subject property from at least the street, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 1,580,000 , as of 09/28/2016 , which is the date of inspection and the effective date of this appraisal.

Form 2055 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

**Exterior-Only Inspection Residential Appraisal Report**

VALU-18-12-1472
File # VALU-18-12-1472

| | |
|---|---|
| PLEASE ATTACHED ADDENDUM FOR FURTHER INFORMATION | |

**ADDITIONAL COMMENTS**

**COST APPROACH TO VALUE (not required by Fannie Mae)**

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)  Site value is estimated and/or supported by the
sales comparison approach whenever data is available, otherwise extraction method is used.

**COST APPROACH**

| ESTIMATED ☐ REPRODUCTION OR ☐ REPLACEMENT COST NEW | OPINION OF SITE VALUE ................................. =$ | 300,000 |
|---|---|---|
| Source of cost data    N/A | DWELLING        4,597 Sq.Ft. @ $ .......... =$ | |
| Quality rating from cost service    N/A    Effective date of cost data    N/A | Sq.Ft. @ $ .......... =$ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | .......... =$ | |
| The cost approach was not applied as the area is fully built up and there | Garage/Carport        Sq.Ft. @ $ .......... =$ | |
| is no vacant land available, except where an existing house will be torn | Total Estimate of Cost-New        .......... =$ | |
| down.  In addition, physical depreciation is often difficult to estimate for | Less        Physical    Functional    External | |
| homes over 5 years of age.  Although the Cost Approach could be | Depreciation =$( | ) |
| considered an applicable approach to value, it is not typically relied | Depreciated Cost of Improvements ................. =$ | |
| upon by market participants for one to four family properties. | "As-is" Value of Site Improvements ................. =$ | |
| | | |
| Estimated Remaining Economic Life (HUD and VA only)        52 Years | INDICATED VALUE BY COST APPROACH ................ =$ | |

**INCOME APPROACH TO VALUE (not required by Fannie Mae)**

| INCOME | Estimated Monthly Market Rent $    6,200    X Gross Rent Multiplier    = $ | Indicated Value by Income Approach |
|---|---|---|
| | Summary of Income Approach (including support for market rent and GRM)    The income approach is not applicable to this report as homes in the area are | |
| | typically owner occupied. | |

**PROJECT INFORMATION FOR PUDs (if applicable)**

Is the developer/builder in control of the Homeowners' Association (HOA)?  ☐ Yes  ☒ No  Unit type(s)  ☒ Detached  ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

**PUD INFORMATION**

| Total number of phases | Total number of units | Total number of units sold |
|---|---|---|
| Total number of units rented | Total number of units for sale | Data source(s) |

Was the project created by the conversion of existing building(s) into a PUD?  ☐ Yes  ☐ No  If Yes, date of conversion

Does the project contain any multi-dwelling units?  ☐ Yes  ☐ No  Data Source(s)

Are the units, common elements, and recreation facilities complete?  ☐ Yes  ☐ No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?  ☐ Yes  ☐ No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

**Exterior-Only Inspection Residential Appraisal Report**

VALU-18-12-1472
File # VALU-18-12-1472

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

SCOPE OF WORK: The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a visual inspection of the exterior areas of the subject property from at least the street, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

The appraiser must be able to obtain adequate information about the physical characteristics (including, but not limited to, condition, room count, gross living area, etc.) of the subject property from the exterior-only inspection and reliable public and/or private sources to perform this appraisal. The appraiser should use the same type of data sources that he or she uses for comparable sales such as, but not limited to, multiple listing services, tax and assessment records, prior inspections, appraisal files, information provided by the property owner, etc.

INTENDED USE: The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

INTENDED USER: The intended user of this appraisal report is the lender/client.

DEFINITION OF MARKET VALUE: The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS: The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

3. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

4. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

5. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Form 2055 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

**Exterior-Only Inspection Residential Appraisal Report**

VALU-18-12-1472
File # VALU-18-12-1472

APPRAISER'S CERTIFICATION:    The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a visual inspection of the exterior areas of the subject property from at least the street. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

**Exterior-Only Inspection Residential Appraisal Report**

VALU-18-12-1472
File # VALU-18-12-1472

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:**    The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature *Carlos Fong* | Signature |
| Name   Carlos Fong | Name |
| Company Name   Valucentric LLC | Company Name |
| Company Address   7908 Montecito Pl, Delray Beach, FL 33446 | Company Address |
| | |
| Telephone Number   (844) 825-8236 | Telephone Number |
| Email Address   info@valucentric.com | Email Address |
| Date of Signature and Report   02/07/2019 | Date of Signature |
| Effective Date of Appraisal   09/28/2016 | State Certification # |
| State Certification #   RD 6782 | or State License # |
| or State License # | State |
| or Other (describe)   State # | Expiration Date of Certification or License |
| State   FL | |
| Expiration Date of Certification or License   11/30/2020 | SUBJECT PROPERTY |
| ADDRESS OF PROPERTY APPRAISED | |
| 18894 SE Jupiter Inlet Way | ☐ Did not inspect exterior of subject property |
| Tequesta, FL 33469 | ☐ Did inspect exterior of subject property from street |
| | Date of Inspection |
| APPRAISED VALUE OF SUBJECT PROPERTY $   1,580,000 | |
| LENDER/CLIENT | COMPARABLE SALES |
| Name | |
| Company Name   Integra Realty Resources (IRR) | ☐ Did not inspect exterior of comparable sales from street |
| Company Address   9155 South Dadeland Boulevard, Miami, FL | ☐ Did inspect exterior of comparable sales from street |
| 33156 | Date of Inspection |
| Email Address | |

Form 2055 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

**Supplemental Addendum**

File No. VALU-18-12-1472

| Borrower | Cathy & Steven Etter | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 18894 SE Jupiter Inlet Way | | | | | | |
| City | Tequesta | County | Martin | State | FL | Zip Code | 33469 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |

**PURPOSE OF APPRAISAL REPORT**

The purpose of this appraisal is to estimate the market value of the subject property as defined herein. The function of the appraisal is to assist the above-named Lender/Client, its successors and/or assigns, in evaluating the subject property for lending purposes. This is a federally regulated transaction. Additional supporting data can be found in our appraiser work file.

It is assumed that the title to this property is good and marketable. No title search has been made, nor have we attempted to determine ownership of the property. The value estimate is given without regard to any questions of title, boundaries, or encroachments. It is assumed that all assessments are paid. We assume the property to be free and clear of liens and encumbrances except as noted.

The legal description, if included herein, should be verified by legal counsel before being relied upon or used in any conveyance or other document.

We are not familiar with any engineering studies made to determine the bearing capacity of the land. Improvements in the area appear to be structurally sound. It is therefore assumed that soil and subsoil conditions are stable unless specifically outlined in this report.

Any exhibits in the report are intended to assist the reader in visualizing the property and its surroundings. The drawings are not intended as surveys and no responsibility is assumed for their cartographic accuracy. Drawings are not intended to be exact in size, scale or detail.

Areas and dimensions of the property were physically measured. If data is furnished by the principal or from plot plans or surveys furnished by the principal, or from public records, we assume it to be reasonably accurate. In the absence of current surveys, land areas may be based upon representations made by the owner's agents or the client. No attempt has been made to render an opinion or determine the status of easements that may exist. No responsibility is assumed for discrepancies that may become evident from a licensed survey of the property.

The value estimate involves only the real estate and all normal building equipment if any improvements are involved. No consideration was given to personal property, (or special equipment), unless stated.

It is assumed that the property is subject to lawful, competent and informed ownership and management unless noted.

Information in this report concerning market data was obtained from buyers, sellers, brokers, attorneys, trade publications or public records. To the extent possible, this information was examined for accuracy and is believed to be reliable. Dimensions, areas or data obtained from others is believed correct; however, no guarantee is made.

Any information, in whatever form, furnished by others is believed to be reliable; however, no responsibility is assumed for accuracy.

The separate allocations between land and improvements, if applicable, represents our judgment only under the existing utilization of the property. A re-evaluation should be made if the improvements are removed or substantially altered, and the land utilized for another purpose.

All information and comments concerning the location, neighborhood trends, construction quality and costs, loss in value from whatever cause, condition, rents, or any other data for the property appraised herein, represents the estimates and opinions of the appraiser formed after an examination and study of the property.

Any valuation analysis of the income stream has been predicted upon financing conditions as specified herein, which we have reason to believe are currently available for this property. Financing terms and conditions other than those indicated may alter the final value conclusions.

The appraiser is not required to give testimony or appear in court because of having made this appraisal, with reference to the property in question, unless arrangements have been made previously thereto. If the appraiser (s) is subponeaed pursuant to court order, the client will be required to compensate said appraiser(s) for his/her time at his/her regular hourly rates, plus expenses.

All opinions, as to values stated, are presented as the appraiser's considered opinion based on the information set forth in the report and his experience. We assume no responsibility for changes in market conditions or for the inability of the client or any other party to achieve their desired results based upon the appraised value. Further, some of the assumptions made can be subject to variation depending upon evolving events. We realize some assumptions may never occur and unanticipated events or circumstances may occur. Therefore, actual results achieved during the projection period may vary from those in this report.

The appraisal assignment was not based on developing or reporting predetermined results, or a requested minimum valuation, a specific valuation, or the approval of a loan.

Our analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the requirements of: USPAP Uniform Standards of Professional Appraisal Practice, and SPP-AI Code of Professional Ethics and the Standards of Professional Practice of the Appraisal Institute; and, except as noted in the Scope of Appraisal, in conformity with specific implementation rules of the following agencies:

FIRREA Title XI of the Financial Institutions Reform, Recovery and Enforcement Act and section 5(b) of the Bank Company Holding Act; FRB – Federal Reserve Board; RTC-Resolution Trust Corporation; OTS-Office of Thrift Supervision; FDIC – Federal Deposit Insurance Corporation; OTC – Office of the Comptroller; NCUA – National Credit Union Association.

**THE APPRAISER HAS PREPARED THIS APPRAISAL IN FULL COMPLIANCE WITH THE APPRAISAL INDEPENDENCE REQUIREMENTS AND HAS NOT PERFORMED, PARTICIPATED IN, OR BEEN ASSOCIATED WITH ANY ACTIVITY IN VIOLATION OF AIR.**

**AT THE REQUEST OF THE CLIENT, THIS APPRAISAL REPORT HAS BEEN PREPARED IN COMPLIANCE WITH THE**

## Supplemental Addendum

File No. VALU-18-12-1472

| Borrower | Cathy & Steven Etter | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 18894 SE Jupiter Inlet Way | | | | | |
| City | Tequesta | County | Martin | State | FL | Zip Code | 33469 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | |

**UNIFORM APPRAISAL DATASET (UAD) FROM FANNIE MAE AND FREDDIE MAC. THE UAD REQUIRES THE APPRAISER TO USE STANDARDIZED RESPONSES THAT INCLUDE SPECIFIC FORMATS, DEFINITIONS, ABBREVIATIONS, AND ACRONYMS.**

We do not authorize the out-of-context quoting from or partial reprinting of this appraisal report.  Further, neither all nor any part of the contents of this report (especially any conclusions as to value, the identity of the appraiser nor the name of the firm which he is connected, shall be reproduced, published, or disseminated to the public through advertising media, public relations media, news media, or another public means of communication, without the prior written consent of the appraiser signing this report.

Adobe's Distiller software or equivalent may be utilized by appraiser to transmit this encrypted PDF-formatted appraisal.  At a minimum, the software contains the following security measure:

- identifies transmission error during the transmission process, and confirms date, time and quantity of data submitted by appraiser and the date, time and quantity of data received by the Client, and/or its assigns and
- secures data from editing by means of a password, hardware device, or other means that remains in the sole control of the transmitting appraiser.

**THIRTY SIX MONTH LISTING HISTORY**

See attached listing history.

**NEIGHBORHOOD MARKET CONDITIONS**

No discounts, buy downs or other concessions were noted.  Current 30 year fixed rate financing at 4.5 - 5.5% and 0-2 points.

Stricter Lending Standards and the availability of Mortgage Capital may affect the average sales prices in the area, however, given the market data analyzed by the appraiser, there are no fiscal or economic trends expected to occur that would significantly impact the relatively stable market currently experienced in this neighborhood.

Neighborhood conditions can be found in detail in the attached 1004MC form.

**SITE COMMENTS**

This site is very typical of the neighborhood in terms of size, topography, view and general appeal.  It provides a suitable setting for the improvements and is consistent with market expectations in this price range.  Statements regarding zoning compliance are intended only in the most general sense.  Zoning and building ordinances vary significantly from one municipality to another and can be extremely detailed.  The scope of this assignment does not include a comparison of every potentially significant characteristic of the subject property's site and improvements relative to zoning and building ordinances.  Unless otherwise noted, standard utility and right-of-way easements are insignificant to value.  However, a current locational or boundary survey or title report may reveal encroachments, easements, zoning violations or other matters of interest that could warrant modification of the appraised value.

**COMMENTS REGARDING HIGHEST AND BEST USE**

In compliance with USPAP the following is included in the appraisal;
•         The current use of the real estate as of the date of value is Residential as described in the improvements section of this appraisal.

•         The use of the real estate reflected in this appraisal is as currently improved

•         The rationale and support for the opinion of highest and best use developed for this assignment is as per below:
Highest and Best Use is defined as "The reasonably probable and legal use of vacant land or an improved property that is physically possible, appropriately supported, financially feasible, and that results in the highest value. The four criteria the highest and best use must meet are legal permissibility, physical possibility, financial feasibility, and maximum productivity. Alternatively, the probable use of land or improved property-specific with respect to the user and timing of the use-that is adequately supported and results in the highest present value"
Source: Appraisal Institute, The Dictionary of Real Estate Appraisal, 5th ed. (Appraisal Institute, 2010).
The highest and best use analysis is a critical step in the valuation process. The comparable properties incorporated into the appraisal are directly affected by the highest and best use analysis. The analysis is based on the use that a hypothetical purchaser would make of the property based on the four tests cited above:
•         Legally Permissible
•         Physically Possible
•         Financially Feasible
•         Maximally Productive

After consideration of the above criteria it has been determined that the current improvements continue to contribute to the total market value of the property and the return from a new improvement would not currently offset the cost of demolishing the existing improvements and constructing a new one.   Therefore, the highest and best use is as improved.

**COMMENTS ON SALES COMPARISON APPROACH**

All comparables provided strong support.  The most weight, and opinion of value fell on comparable 1, for being the most recent sale.

*Due to the lack of comparable sales located within a 1 mile radius of the subject, it was necessary for the appraiser to expand the comparable search to a 2 mile radius of the subject in order to provide comparables more similar in condition, quality, lot size, and gross living area.  No location adjustments were warranted as all comparables are located within neighborhood boundaries.*

Comparables were adjusted for their differences in locations, lot square footages, views, bathroom count, gross living area,

## Supplemental Addendum

File No. VALU-18-12-1472

| Borrower | Cathy & Steven Etter | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 18894 SE Jupiter Inlet Way | | | | | |
| City | Tequesta | County | Martin | State | FL | Zip Code | 33469 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | |

parking, and other features. Gross living area adjustments were made at $100 per square foot. Comparables within 100 square feet of the subject property did not warrant an adjustment. Lot adjustments were made at $3 per square foot. No bedroom count adjustments were warranted as this was demonstrated through the gross living area line item. Comparable 1 received a 5% negative location adjustment, and 3% negative view adjustment, for being a river front property. Comparable 3 received a positive boat dock adjustment.

ALL ADJUSTMENTS WERE DERIVED FROM THE SUBJECT MARKET AND THE APPRAISERS EXPERTISE IN THE MARKET PLACE.

I performed this appraisal in accordance with the requirements of Title XI of the Financial Institution Reform, Recovery and Enforcement Act of 1989, (12 U.S.C.3331 et seq.), and any implementing regulations.

All comparables are located within the subject's neighborhood boundaries. No geographic boundaries were crossed.

It should be noted that the estimated value of the subject exceeds the predominate value in the subject neighborhood. This will not have a negative effect on the marketability of the subject property. The subject property is in no way an over improvement for the market area.

### RECONCILIATION

The sales comparison approach was considered most applicable for the subject property because a typical buyer or seller would most readily understand and apply this approach. The income approach was not considered applicable due to the fact that the majority of housing stock in the area is owner occupied and not typically used for investment property. The cost approach was not completed due to the subjectivity in estimating depreciation and because the typical buyer does not base price points on the cost approach. The quality of available data utilized in the Sales comparison Approach was considered adequate.

### EXTERIOR INSPECTION ADDENDA

The appraiser has been requested to perform an appraisal based on an exterior only inspection and not to disturb the occupants by entering the building. The physical characteristics used to develop this appraisal are based on the assessment records of Palm Beach County, Florida and on the multiple listing service. The subject property was observed from the public street as of the effective date of the appraisal. On the basis of the observed conditions, the assessment records and multiple listing service information appear to be accurate. For the purposes of this appraisal, it is assumed that the interior condition of the subject property is consistent with the exterior conditions as observed and that the information concerning the interior condition as provided by the assessor's records and the multiple listing service is accurate.

### PHYSICAL DEFICIENCIES OR ADVERSE CONDITIONS

Unless otherwise stated in this report, the existence of hazardous material and/or electromagnetic emission, which may or may not be present on the property, was not observed by the appraiser. The appraiser has no such knowledge of the existence of such materials on or in the subject property, or in the properties of the subject neighborhood. The appraiser is not qualified to detect such substances. The presence of such substances as asbestos, urea formaldehyde foam insulation, radon, mold, or other potentially hazardous material may affect the value of the property. The value estimate expressed is predicated on the assumption that there is no such material in or on the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The customer is urged to retain an expert in this field.

Dwellings built prior to 1978 may contain lead-based paint.

### MOLD

The appraiser is not a home or environmental inspector. The appraiser provides an opinion of value. The appraisal does not guarantee that the property is free of defects or environmental problems. The appraiser performs an inspection of visible and accessible areas only. Mold may be present in areas the appraiser cannot see. A professional home inspection or environmental inspection is recommended.

### CONCLUSION

This is an Appraisal Report which is intended to comply with the reporting requirements set forth under Standards Rule 2-2(a) of the Uniform Standards of Professional Appraisal Practice for an Appraisal Report. As such, it presents only minimal discussions of the data, reasoning, and analyses that were used in the appraisal process to develop the appraiser's opinion of value. Supporting documentation concerning the data, reasoning, and analyses is retained in the appraiser's file. The depth of discussion contained in this report is specific to the needs of the client and for the intended use stated herein. The appraiser is not responsible for unauthorized use of this report.

# SINGLE FAMILY COMPARABLE RENT SCHEDULE

VALU-18-12-1472
File # VALU-18-12-1472

This form is intended to provide the appraiser with a familiar format to estimate the market rent of the subject property. Adjustments should be made only for items of significant difference between the comparables and the subject property.

| ITEM | SUBJECT | COMPARABLE NO. 1 | | COMPARABLE NO. 2 | | COMPARABLE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 18894 SE Jupiter Inlet Way Tequesta, FL 33469 | 18687 SE Tortuga Ct Tequesta, FL 33469 | | 9806 SE Landing Pl Tequesta, FL 33469 | | 18730 SE Lakeside Way Tequesta, FL 33469 | |
| Proximity to Subject | | 2.57 miles W | | 2.14 miles W | | 1.45 miles W | |
| Date Lease Begins Date Lease Expires | | 06/16 Unk | | 05/16 Unk | | 09/16 Unk | |
| Monthy Rental | If Currently Rented: $ | $ 6,500 | | $ 3,800 | | $ 3,300 | |
| Less: Utilities Furniture | $ | $ | | $ | | $ | |
| Adjusted Monthly Rent | $ | $ 6,500 | | $ 3,800 | | $ 3,300 | |
| Data Source | MLS,Inspection Assessor,Realist | MLS #R10200435 Assessor, Realist | | MLS #R10237449 Assessor, Realist | | MLS #R10250847 Assessor, Realist | |
| RENT ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. |
| Rent Concessions | | | | | | | |
| Location/View | Residential Residential | Residential Residential | | Residential Residential | | Residential Residential | |
| Design and Appeal | Mediterranean | Mediterranean | | Ranch | | Ranch | |
| Age/Condition | 13,8 Good | 3 Good | | 24 Average | | 17 Average | |
| Above Grade Room Count Gross Living Area | Total 7 / Bdrms 3 / Baths 3.2 / 4,597 Sq. Ft. | Total 7 / Bdrms 4 / Baths 3.1 / 3,653 Sq. Ft. | | Total 10 / Bdrms 6 / Baths 4.0 / 3,490 Sq. Ft. | | Total 6 / Bdrms 3 / Baths 3.0 / 2,900 Sq. Ft. | |
| Other (e.g., basement, etc.) | No Basement None | No Basement None | | No Basement None | | No Basement None | |
| Other: | | | | | | | |
| Net Adj. (total) | | + − $ | 0 | + − $ | 0 | + − $ | 0 |
| Indicated Monthly Market Rent | | $ 6,500 | | $ 3,800 | | $ 3,300 | |

Comments on market data, including the range of rents for single family properties, an estimate of vacancy for single family rental properties, the general trend of rents and vacancy, and support for the above adjustments. (Rent concessions should be adjusted to the market, not to the subject property.) Rentals of comparable style dwellings ranged from $3,300 to $6,500.

Final Reconciliation of Market Rent: All rentals were taken into the final consideration, however, fell near the higher end due to GLA, condition, and quality. The opinion of market rent is $6,200

I (WE) ESTIMATE THE MONTHLY MARKET RENT OF THE SUBJECT AS OF 09/28/2016 TO BE $ 6,200

Appraiser(s) SIGNATURE *Carlos Fong*
NAME Carlos Fong
Certified Residential Appraiser
Date Property Inspected 09/28/2016 Report Signed 02/07/2019
License or Certification # RD 6782 State FL
Expiration Date of License or Certification 11/30/2020

Review Appraiser SIGNATURE
(If applicable) NAME
Date Property Inspected Report Signed
License or Certification # State
Expiration Date of License or Certification
Review Appraiser ☐ Did ☐ Did Not Inspect Subject Property

Freddie Mac Form 1000 (8/88)
Form 1007 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE
Fannie Mae Form 1007 (8/88)

## Subject Photo Page

| Borrower | Cathy & Steven Etter | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 18894 SE Jupiter Inlet Way | | | | | |
| City | Tequesta | County | Martin | State | FL | Zip Code 33469 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | |



**Subject Front**

18894 SE Jupiter Inlet Way

| | |
|---|---|
| Sales Price | |
| Gross Living Area | 4,597 |
| Total Rooms | 7 |
| Total Bedrooms | 3 |
| Total Bathrooms | 3.2 |
| Location | Residential |
| View | Residential |
| Site | 9,104 sf |
| Quality | Good |
| Age | 13,8 |



**Subject Rear**



**Subject Street**

## Comparable Photo Page

| Borrower | Cathy & Steven Etter | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 18894 SE Jupiter Inlet Way | | | | | | |
| City | Tequesta | County | Martin | | State | FL | Zip Code 33469 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |



### Comparable 1

25 Saddleback Rd

| | |
|---|---|
| Prox. to Subject | 1.62 miles W |
| Sales Price | 1,800,000 |
| Gross Living Area | 5,209 |
| Total Rooms | 9 |
| Total Bedrooms | 5 |
| Total Bathrooms | 3.1 |
| Location | Res/WaterFrnt |
| View | Res/Water |
| Site | 16248 sf |
| Quality | Good |
| Age | 32 |



### Comparable 2

10482 SE Banyan Way

| | |
|---|---|
| Prox. to Subject | 1.62 miles W |
| Sales Price | 1,700,000 |
| Gross Living Area | 4,796 |
| Total Rooms | 8 |
| Total Bedrooms | 4 |
| Total Bathrooms | 4.1 |
| Location | Residential |
| View | Residential |
| Site | 19733 sf |
| Quality | Good |
| Age | 12 |



### Comparable 3

11992 SE Tiffany Way

| | |
|---|---|
| Prox. to Subject | 1.38 miles N |
| Sales Price | 1,375,000 |
| Gross Living Area | 4,332 |
| Total Rooms | 9 |
| Total Bedrooms | 5 |
| Total Bathrooms | 4.0 |
| Location | Residential |
| View | Residential |
| Site | 15464 sf |
| Quality | Good |
| Age | 24 |

# Rental Photo Page

| | |
|---|---|
| Borrower | Cathy & Steven Etter |
| Property Address | 18894 SE Jupiter Inlet Way |
| City | Tequesta |
| County | Martin |
| State | FL |
| Zip Code | 33469 |
| Lender/Client | Integra Realty Resources (IRR) |



### Rental 1

18687 SE Tortuga Ct

| | |
|---|---|
| Proximity to Subject | 2.57 miles W |
| Adj. Monthly Rent | 6,500 |
| Gross Living Area | 3,653 |
| Total Rooms | 7 |
| Total Bedrooms | 4 |
| Total Bathrooms | 3.1 |
| Location | Residential |
| View | Residential |
| Condition | Good |
| Age/Year Built | 3 |



### Rental 2

9806 SE Landing Pl

| | |
|---|---|
| Proximity to Subject | 2.14 miles W |
| Adj. Monthly Rent | 3,800 |
| Gross Living Area | 3,490 |
| Total Rooms | 10 |
| Total Bedrooms | 6 |
| Total Bathrooms | 4.0 |
| Location | Residential |
| View | Residential |
| Condition | Average |
| Age/Year Built | 24 |



### Rental 3

18730 SE Lakeside Way

| | |
|---|---|
| Proximity to Subject | 1.45 miles W |
| Adj. Monthly Rent | 3,300 |
| Gross Living Area | 2,900 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 3.0 |
| Location | Residential |
| View | Residential |
| Condition | Average |
| Age/Year Built | 17 |

**Assessor Map**

| Borrower | Cathy & Steven Etter | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 18894 SE Jupiter Inlet Way | | | | | | |
| City | Tequesta | County | Martin | State | FL | Zip Code | 33469 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |



Case 2:09-md-02047-EEF-MBN Document 22363-57 Filed 11/18/19 Page 129 of 140
Case 9:11-cv-22408-MGC Document 281-8 Entered on FLSD Docket 05/13/2019 Page 94 of
106

**Location Map**

| Borrower | Cathy & Steven Etter | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 18894 SE Jupiter Inlet Way | | | | | | |
| City | Tequesta | County | Martin | | State | FL | Zip Code | 33469 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |



## Subject Aerial Map

| Borrower | Cathy & Steven Etter | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 18894 SE Jupiter Inlet Way | | | | | | |
| City | Tequesta | County | Martin | | State | FL | Zip Code | 33469 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |



## Assessor Data

| Borrower | Cathy & Steven Etter | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Property Address | 18894 SE Jupiter Inlet Way | | | | | | | |
| City | Tequesta | County | Martin | | State | FL | Zip Code | 33469 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | | |

1/3/2019          Martin County, Florida - Laurel Kelly, C.F.A

### Martin County, Florida - Laurel Kelly, C.F.A

*generated on 1/3/2019 6:45:07 PM EST*

### Summary

| Parcel ID | Account # | Unit Address | Market Total Value | Website Updated |
|---|---|---|---|---|
| 19-40-43-002-000-00040-0 | 609075 | 18894 SE JUPITER INLET WAY, TEQUESTA | $1,225,860 | 12/29/2018 |

#### Owner Information

| | |
|---|---|
| Owner(Current) | CORNS DANIEL W CORNS JESSICA L |
| Owner/Mail Address | 18894 SE JUPITER INLET WAY TEQUESTA FL 33469 |
| Sale Date | 9/28/2016 |
| Document Book/Page | 2881 2968 |
| Document No. | 2598381 |
| Sale Price | 1580000 |

#### Location/Description

| | | | |
|---|---|---|---|
| Account # | 609075 | Map Page No. | U-19 S1/2(R43E) |
| Tax District | 3003 | Legal Description | LOT 4 EMERALD HARBOUR (PB 15 PG 75) |
| Parcel Address | 18894 SE JUPITER INLET WAY, TEQUESTA | | |
| Acres | .2090 | | |

#### Parcel Type

| | |
|---|---|
| Use Code | 0100 Single Family |
| Neighborhood | 813035 Rllng,Indn,Emrld Hrbr,2000 |

#### Assessment Information

| | |
|---|---|
| Market Land Value | $400,000 |
| Market Improvement Value | $825,860 |
| Market Total Value | $1,225,860 |

http://fl-martin-appraiser.governmax.com/propertymax/GRM/tab_parcel_v1002_FLMartin.asp?PrintView=True&r_nm=tab%5Freport&t_wc=%7Cparceli...  1/1

**MLS Listing Sheet**

| | |
|---|---|
| Borrower | Cathy & Steven Etter |
| Property Address | 18894 SE Jupiter Inlet Way |
| City | Tequesta | County | Martin | State | FL | Zip Code | 33469 |
| Lender/Client | Integra Realty Resources (IRR) |

1/3/2019 — Matrix

🏠 Listing

**Single Family**
18894 SE Jupiter Inlet Way
TEQUESTA, FL 33469

| | | | |
|---|---|---|---|
| ML#: | R10240297 | List Price: | $1,695,000 |
| Rng Price: | | Sold Price: | $1,580,000 |
| LLP: | | Status: | Closed Sale |
| Short Sale: | No | REO: | No |
| Listing Brkr: | FLL303248 /Water Pointe Realty Group | | |
| County: | Martin County | | |
| Area: | 5020 | Auction: | No |
| Geo Area: | Palm Beach 5020; 5030; 5060; 5080 | | |
| Legal: | LOT 4 EMERALD HARBOUR (PB 15 PG 75) | | |
| Furnished: | Unfurnished | | |
| Bedrooms: | 3 | Baths: | 3/2 |
| Convert Bed: | | | |
| SqFt (Liv): | 4,597 | Tot SqFt: | 6,124 |
| SqFt (Adj): | | | |
| Bld Ar/Src: | | | |
| Year Built: | 2006 | | |
| Virtual Tour: | Click Here | | |

**Location Information**

| | | | | | |
|---|---|---|---|---|---|
| Folio#: | 194043002000000400 | Parcel #: | 1940 | Model Name: | |
| Municipal Code: | | Town/Range: | | Section: | |
| Subdivision #: | | Map Coord: | | Zoning: | RES |
| Subdivision: | Emerald Harbour | Development: | | | |
| Elementary: | | Middle: | | | |
| High: | | | | | |
| Neighborhood: | | | | | |

**General Information**

| | | | | | |
|---|---|---|---|---|---|
| Type Property: | Single | Front Exposure: | East | HOPA: | No HOPA |
| For Lease: | | For Lease MLS#: | | SS Addend: | No |
| Boat Services: | Electric Available, Lift, Private Dock, Up to 30 Ft Boat, UP to 40 Ft Boat, Up to 50 Ft Boat, Water Available | | | | |
| Style: | R31-Pool Only | | | | |
| Garage: | 3/Attached | | | Carport: | |
| Lot SF: | 9,104 | Appr Lot Size: | < 1/4 Acre,Cul-De-Sac,Ea | | |
| Parking Desc: | Driveway | | | | |
| Parking Restr: | | | | | |
| Lot Desc: | Less Than 1/4 Acre Lot, Cul-De-Sac Lot, East Of US 1 | | | | |
| Waterfront: | No/Intracoastal Front, Ocean Access | | | | |
| Water Access: | | | | | |
| Pool Dim: | | Spa: | | | |
| Pool: | Yes/Heated | | | | |
| Design/Desc: | Garden Apartment/Mediterranean | | | | |
| Construction: | CBS Construction | | | | |
| Roof Desc: | Barrel Roof | | | | |
| Floor: | Carpeted Floors, Marble Floors, Wood Floors | | | | |

**Remarks**

Remarks: Beautifully finished estate home situated in a small, gated Intracoastal community! The upscale, gourmet kitchen boasts high-end, Viking refrigerator/freezer, professional gas range and double oven, Miele dishwasher, wine cooler, appliance garage with slide-out shelf, Leed's custom cabinetry, large walk-in pantry and bar with ice machine. Interior features include Travertine & hardwood flooring throughout the home and carpeting in the 2nd & 3rd bedrooms, an elevator, hurricane impact glass (except in breakfast area), exquisite decorator touches throughout including crown molding, arched doorways & pillars, custom lighting & fixtures, Bose whole-house sound system & more! The inviting entry features a rotunda with custom medallion, faux painting and floor-to-ceiling windows that

Driving Directions: N. US One (SE Federal Hwy), 1/3 mi. north of County Line Rd. (just north of the Waterfront Inn).

Broker Remarks: ***MARK IS OUT OF TOWN 8/24 - 9/4. DURING THIS TIME, PLEASE CALL JULIANNE JOHNSON, 561-762-0117 TO SHOW. All sizes and dimensions are approximate and not guaranteed.

**Rooms**

| Room | Dim | Room | Dim | Room | Dim |
|---|---|---|---|---|---|
| MasterBedroom | 20x22 | SecondBedroom | 12x15 | ThirdBedroom | 14x16 |
| Den | 14x14 | DiningRoom | 15x15 | FamilyRoom | 22x18 |
| Kitchen | 16x17 | LivingRoom | 14x15 | | |

Bedroom Desc:
Master Bath:
Addition Rooms: Attic, Den/Library/Office, Family Room, Laundry, Media Room
Dining Desc: Breakfast Area, Formal Dining, Snack Bar/Counter
ADA Compliant:

**Additional Information**

https://sef.mlsmatrix.com/Matrix/Printing/PrintOptions.aspx?c=AAEAAAD\*\*\*\*\*AQAAAAAAAARAQAAAFQAAAAGAgAAAAQ3MjlyBgMAAAABOQYE...   1/3

## MLS Listing History

| Borrower | Cathy & Steven Etter | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Property Address | 18894 SE Jupiter Inlet Way | | | | | | | |
| City | Tequesta | | County | Martin | | State | FL | Zip Code | 33469 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | | |

**MLS#:** R10240297      18894 SE Jupiter Inlet Way                    Single Family



| Price | Chg Type | Chg Info | Eff Date | Agent ID | Office ID | DOM |
|---|---|---|---|---|---|---|
| $1,580,000 | CS | ($1,580,000) | 09/28/2016 | FLL3039725 | CFLL303248 | 88 |
| $1,695,000 | AC | A -> AC | 08/27/2016 | FLL3039725 | CFLL303248 | 88 |
| $1,695,000 | DECR | $1,795,000 -> $1,695,000 | 07/28/2016 | FLL3039725 | CFLL303248 | 58 |
| $1,795,000 | NEW | ACTV -> $1,795,000 | 05/31/2016 | FLL3039725 | CFLL303248 | 3 |

# Tax Information

| Borrower | Cathy & Steven Etter | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 18894 SE Jupiter Inlet Way | | | | | | |
| City | Tequesta | County | Martin | | State | FL | Zip Code 33469 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |



Case 2:09-cv-02047-EEF-MBN Document 22363-57 Filed 11/18/19 Page 135 of 140
Case 1:14-cv-22408-MGC Document 284-8 Entered on FLSD Docket 05/13/2015 Page 40 of 45
License

| Borrower | Cathy & Steven Etter | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 18894 SE Jupiter Inlet Way | | | | | | |
| City | Tequesta | County | Martin | | State | FL | Zip Code | 33469 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |



RICK SCOTT, GOVERNOR

JONATHAN ZACHEM, SECRETARY



## STATE OF FLORIDA
## DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION

### FLORIDA REAL ESTATE APPRAISAL BD

THE CERTIFIED RESIDENTIAL APPRAISER HEREIN IS CERTIFIED UNDER THE
PROVISIONS OF CHAPTER 475, FLORIDA STATUTES

## FONG, CARLOS RAFAEL

10601 S.W. 124 ROAD.
MIAMI          FL 33186

**LICENSE NUMBER: RD6782**

**EXPIRATION DATE: NOVEMBER 30, 2020**

Always verify licenses online at MyFloridaLicense.com



Do not alter this document in any form.

This is your license. It is unlawful for anyone other than the licensee to use this document.

# Anthony M. Graziano, MAI, CRE

**Integra Realty Resources**
**Miami/Palm Beach**

Dadeland Centre
9155 S. Dadeland Boulevard
Suite 1208
Miami, FL 33156

T 305.670.0001
F 305.670.2276

irr.com

## Experience

Senior Managing Director of Integra Realty Resources – Miami/Palm Beach.

Mr. Graziano has actively counseled and advised clients on the sale, leasing, valuation, management, and development of commercial real estate assets throughout the northeast and southeast U.S. since 1992.

Mr. Graziano's professional perspective is a blend of his experience and educational background which includes formal training in architecture, urban planning, macro and micro economics, real estate finance, institutional asset management, and land development. His market experience in sales, leasing, management, and valuation disciplines combine to bring practical real world answers to complex planning and development projects. He has been actively involved as a consultant and/or member of a consultant team on various major redevelopment and land use projects for public and private clients over the past 25+ years.

Mr. Graziano has specialized in consulting and valuation assignments for corporate and private clients on a wide array of complex issues related to estate and condemnation matters, title defects, environmental contamination/damages, air rights, partial and fractional interests, contract disputes, and mediation/arbitration disputes. Mr. Graziano's experience in these matters provides a comprehensive framework for effective strategic real estate consulting.

## Professional Activities & Affiliations

Advisory Board Member: Urban Land Institute (ULI) South Florida / Caribbean
Advisory Board Member: University of Miami M+RED Program
Member: Economic Roundtable - Miami Beacon Council (2012-present)
Board of Director: Integra Realty Resources, Inc. (2011-2016)
Chairman of the Board:    Integra Realty Resources, Inc. (2016-present)
Director: South Florida Chapter of the Appraisal Institute (2014-2016)
Board Member: Builders Association of South Florida (BASF) (2014-2016)
Subject Matter Expert (SME): Appraisal Practice Board, Appraisal Foundation
Member: Appraisal Institute (MAI) (2008-Present)
Member: Counselors of Real Estate (CRE) (2007-Present)
National Association of Realtors (REALTOR)
Miami Association of REALTORS Industry Analyst of the Year (2016)
Former Fellow: Royal Institute of Chartered Surveyors (FRICS) (2007-2014)
AI Leadership Development Advisory Council, March 1998 - February 2001
Lifetime Member: National Eagle Scout Association (NESA)

## Licenses

Florida, State-Certified General Real Estate Appraiser, RZ3510
New Jersey, State-Certified General Real Estate Appraiser, RG001261

## Education

University of Miami, Coral Gables, Florida 1988-1992
Degree: Bachelor of Science in Land Development and Planning, School of Architecture

New York University Real Estate Institute, New York, New York 1993-1996
Degree: Master of Science in Real Estate Development and Investment

amgraziano@irr.com    -    305.670.0001 x320



# Anthony M. Graziano, MAI, CRE

### Qualified Before Courts & Administrative Bodies

Qualified and accepted as an expert before:
US Bankruptcy Court (Newark, Southern District of Texas, Southern District of Florida)
US Federal District Court (Southern District of Florida)
FL Circuit Court (Miami-Dade, Broward, and Monroe Counties)
NJ State Tax Court
NJ Superior Court - Chancery Division
NJ Superior Court - Law Division
Various municipal planning and zoning boards throughout New Jersey and Florida
Various Taxing Authorities and Boards throughout New Jersey and Florida

**Integra Realty Resources**
**Miami/Palm Beach**

The Douglas Centre
2600 Douglas Road, Suite 801
Coral Gables, FL 33134

T 305.670.0001
F 305.670.2276

irr.com



amgraziano@irr.com    -    305.670.0001 x320

**Anthony M. Graziano, MAI, CRE, FRICS**
PROFERRED OR DISCLOSED EXPERT WITNESS REPORTS/SETTLEMENTS

| RETENTION DATE | ON BEHALF | IRR FILE # | COURT CASE NO. | COURT / VENUE | CASE NAME | RETAINED BY | TYPE OF CASE |
|---|---|---|---|---|---|---|---|
| 1/2015 | Defendant | 123-2015-0037 | 14-CV-22384-UU | Miami-Dade County, FL | Ray Benson & Maria Helena V. QBE Insurance Corporation | John A. Camp | Retrospective (2004-2006) analysis of market value claims against insurance company related to property |
| 9/2014 | Defendant | 123-2014-0194 | 13-03084CA 10 | 11th Judicial Circuit Miami-Dade, FL | Manuel Soltero V. Adorno & Yoss, LLP | Kaplan Zeena, LLP | Professional Liability suit against law firm and attorneys for malfeasance in litigation matter. |
| 2/2014 | Plaintiff | 123-2014-0030 | Settled | Caribbean Islands | Rainmaker Development V. A&F Bahamas, etal | VLASAC & SHMARUK, LLC | Partnership Dispute between Joint Venture in Caribbean development project (golf course, villas, and large-scale marina-commercial-retail development) |
| 11/2012 | Defendant | 123-2012-0140 | 42-2012-CA-001066 | Marion County, FL | CSX Transportation, Inc. V. Moshen Saranazi, Faith Ann Safarrazi, Proverbium Hldg, LLC, USA & George Albrgit | NeJame, La Fay, Jancha, Ahmed, Barker, Joshi & Moreno, P.A. | Condemnation of partial interest with damages |
| 7/2012 | Confidential | 123-2012-0076 | Confidential | Broward County, FL | Ft. Lauderdale-Hollywood Int'l Airport Expansion | White & Case, LLP | Value Diminution Study to assist public agency in good faith negotiations based on airport expansion. |
| 6/2012 | Defendant | 123-2012-0070 | 10-49616-CA-40 | Miami-Dade County, FL | CB Entertainment, LLC V. South Beach Ocean Parcel | Kubicki Draper, P.A. | Construction Damages claim |
| 12/2009 | Plaintiff | 109-2009-0443 | Dept. Justice File 90-11-3-5801 | Federal District Court of Virginia | United States vs. Atlantic Wood Industries, Inc. | U.S. Department of Justice | Damages/environmental contamination dispute between United States Navy and responsible party (Atlantic Wood Industries) |

**Anthony M. Graziano, MAI, CRE, FRICS**
IDENTIFIED EXPERT WITNESS TESTIMONY AT DEPOSITION and/or TRIAL

| RETENTION DATE | ON BEHALF | TRI FILE # | COURT/CASE NO. # | COURT / VENUE | CASE NAME | RETAINED BY | TYPE OF CASE |
|---|---|---|---|---|---|---|---|
| 6/2015 | Plaintiff | 123-2015-0170 | 15-008930-CA-01 | 11th Judicial Circuit Court, Florida (Hon. Peter R. Lopez) | Aaron Stauber & Aviva Stauber V. BH 33, LLC | Piedra & Associates, P.A. | Motion to dismiss Lis Pendens in an action to enforce contractual specific performance clause |
| 1/2015 | Defendant | 123-2015-0037 | 14-CV-22384 UU | Southern District of Florida | Ray Benson & Maria Helena Campos V. QBE Insurance Corporation | John Camps | Retrospective (2004-2006) analysis of market value claims against insurance company related to property damage claims arising from Hurricane Wilma |
| 1/2014 | Plaintiff | 123-2015-0031 | Pending | Miami-Dade County | Igor Gert V. Yacht Club at Portofino Condo Association | Weil Quaranta McGovern, P.A. | Construction defect dispute related to water-intrusion and damage-detrimental conditions analysis of |
| 10/2014 | Plaintiff | 123-2014-0226 | 08-CA-408-P | Monroe County | Ocean Bank V. Lindsack, Monroe County | Ocean Bank | Deficiency claim against borrower on real estate collateral in the Florida Keys (development site plus marine related improvements) |
| 10/2014 | Defendant | 123-2014-0215 | 11-24994 CA 06 | 11th Judicial Circuit Court, Florida | Palm-Aire Holdings V. JRGS Investments, LLC, Jorge Garcia-Serilff and Course Drive Investments, LLC | Cole, Scott & Kissane, P.A. | Partnership dispute over valuation issues proximal to a fractured condominium project (respective values), and operating agreement dispute |
| 7/2014 | Plaintiff | 123-2014-0194 | 13-01822 CACE 02 | 17th Judicial Circuit Court, Florida | Amalia I. Irianda-Rivera V. Rivera Diagnostic Center, Inc., Oknay Rivera & Yudit Rivero | Amalia I. Irianda-Rivera | Rent default judgment and market rental and damage analysis associated with lease default. |
| 10/2014 | Defendant | 123-2014-0159 | 2014FLL534 (Pending) | Palm Beach County | Roehm Title Resources Claim | Title Resources Guaranty Company | Title insurance claim related to before and after damage/value diminution analysis based on defined title defects not identified by Title Insurance Company |
| 4/2014 | Plaintiff | 123-2014-0117 | 4-14-CV-01077 (Pending) | USA District Court for the Eastern District of Missouri Eastern Division | USA V. GSA-VA St. Louis Property, LLC | Bryan Cave LLP | Condemnation of a possessory interest for a term. Retained as consulting/rebuttal expert |
| 5/2014 | Defendant | 123-2014-0114 | Pending | Miami-Dade County | Euforia Club | Rennert Bogel Mandler & Rodriguez, P.A. | Rent dispute regarding forced relocation of a nightclub and relevant market value plus of replacement club space in Miami |
| 4/2014 | Plaintiff | 123-2014-0089 | | Broward County | Pan American Holdings Corp. V. Florida DOT Right of Way (ROW) Acquisition S.R. 7 | Henry Wulf, Esq. | Condemnation for R.O.W. purposes including before and after damage analysis |
| 1/2014 | Debtor | 123-2014-005 | 13-25728-BKC-RAM | US Federal Bankruptcy - Southern District of Florida - Miami Division (Hon. R. Mark) | West Airport Plaza Business Park, LLC | Counsel for the Debtor, Michael D. Seese, Esq. | Fairness Opinion and market value opinions in conjunction with Debtor's Plan for Reorganization |
| 8/2013 | Defendant | 123-2000-0016 | 02-23922-CA 09 | 11th Judicial Circuit Court, Florida | American Educational Enterprises LLC v. The Board of Trustees of the Internal Improvement Trust Fund | Richard Alayon, Esq. - Alayon and Associates | Economic Damages case associated with an alleged misrepresentation or omission by seller of real property |
| 7/2013 | Plaintiff | 123-2013-0126 | CACE 08857624 (14) | 17th Judicial Circuit Court, Florida (Hon. Carlos A. Rodriguez) | Bayview Loan Servicing, LLC v. Kayhan Soodjani; Muhammad Mahmood; et al | Bayview Servicing, represented by Tabads, Freedman and Soloff; Stacey Soloff, Esq. | Deficiency Judgment on multi-family project (Dewey Street Apartments) |
| 3/2013 | Defendant | 123-2013-0105 | 11-23561-CIV-Rosenbaum | US District Court - Southern District of Florida (Hon. Rosenbaum) | United States of America v. G.K.K. etal | Richard Duvall, Holland and Knight and Jeffrey Neman, Esq. | Condemnation claim on the 137.779 s.f. Miami Federal Bureau of Investigation (F.B.I.) building; condemnation of a possessory interest (leasehold) |
| 2/2013 | Plaintiff | 123-2013-0070 | 09-05650 CA 04 | 11th Judicial Circuit Court, Florida (Hon. Beth Bloom) | Zenaida Gomez v. City of Pinecrest | Cynthia A. Everett, Cynthia A. Everett, P.A. | Economic damage resulting from temporary taking (seizure) of private residence |
| 7/2013 | Defendant | 123-2013-0016 | | 11th Judicial Circuit Court, Florida | G Lending, Inc., Equity Financial Group, Inc., and Equity Commercial Group, Inc. v. Travelers Companies, Inc. etal | Heidi Raschke, Butler Pappas etal | Value diminution resulting from alleged mortgage fraud. |
| 11/2012 | Plaintiff | 123-2012-0128 | Pending | 11th Judicial Circuit Court, Florida | 2011 and 2012 Ad Valorem Tax Protest | Ken Wurtenberger, Esq. Kopelowitz Ostrow Ferguson | Tax protest of commercial condominium. |
| 10/19/2012 | Plaintiff | 123-2012-0111 | 2011-1107 CA-23 | 11th Judicial Circuit Court, Florida (Hon. Stanford Blake) | Renegade at Hialeah Blvd v. Dynatech Engineering | Daniel Levin, Esq., Cole, Scott, Kissane, P.A. | Economic Damages case, diminution in value resulting from prepaid lease modification. |
| 10/12/2012 | Plaintiff | 123-2012-0109 | 11-30189 CA21 | 11th Judicial Circuit Court, Florida | Yaffa Yakubov vs. Bayview at Fisher Island No 3 | Craig Minko, Esq., Cole Scott Kissane, P.A. | Market Value estimate of Fisher Island Condominium purchased under right of first refusal; economic damages claimed by Plaintiff due to contract dispute arising from association's exercise of right of first refusal |
| 8/20/2012 | Plaintiff | 123-2012-0012 | CA-02180 CA-25 | 11th Judicial Circuit Court, Florida | 7935 NBV, LLC v. Harbour East Development LTD, Mario Egozi, etal | Jose Casal, Esq., Holland and Knight | Deficiency judgment on 32-unit fractured condominium, substitute expert following issuance of IRR-Miami reports in 2010 and 2012 |
| 8/15/2012 | Disclosed Dual Expert | 123-2012-0072 | | Matrimonial Mediation | Vazquez v. Vazquez Matrimonial Matter | Colon and Mendoza and Robert Hertzberg, P.A. | Retained as a court-appointed third party expert to both parties to appraise (2) marital assets comprised of office, retail, single and multi-family units in FL, TN, NC, and Illinois, Bahamas |
| 7/2012 | Plaintiff | 109-2011-0172 | | Tax Court of New Jersey (Hon. Patrick DeKlerenda) | BASF Inc., successor Ciba Geigy Inc., vs. Township of Toms River | Phil Genuario, Garippa, etal on behalf of BASF | Challenge to multi-year appeal of $80 Million+ land assessment on contaminated superfund site in Central New Jersey |
| 3/2012 | Plaintiff | 109-2010-0172 | ATL-L-4451-08 | Superior Court of New Jersey, Law Division Atlantic County | Scot Netherlands Inc. vs. State of New Jersey Department of Environmental Protection (NJDEP) | Jay Rhatican, Connell Foley on behalf of Scot Netherlands, Inc. | Challenge to NJDEP permit denial to fill wetlands, deprivation of all reasonable investment backed expectations |
| 7/2011 | Defendant | 109-2010-0199 | MER-L-3034-08 | Superior Court of New Jersey Mercer County | 460 Mercer Street, LLP and Bruckener Southern, LLC vs. Hightstown | Ansell Zarro Grimm & Aaron, P.C. Husam Chater | Litigation-Dispute Resolution - Hightstown Zoning Challenge |
| 12/2009 | Plaintiff | 109-2009-0445 | Dept. Justice File 90-11-5-3660-1 | Federal District Court of Virginia | United States vs. Atlantic Wood Industries, Inc. | U.S. Department of Justice | Damage/Environmental contamination dispute between United States Navy and responsible party (Atlantic Wood Industries) |
| 12/2009 | Plaintiff | 109-2009-0377 | | Tax Court of New Jersey | Westrust/HPC Mortgage Fund vs. City of Atlantic City | Cole, Schotz, Meisel, Forman & Leonard, P.A. Carl Rizzo, Esq. | Tax Appeals - To develop an opinion of the market value of the fee simple interest in the property |

Anthony M. Graziano, MAI, CRE, FRICS
IDENTIFIED EXPERT WITNESS TESTIMONY AT DEPOSITION and/or TRIAL

| RETENTION DATE | ON BEHALF OF | IRR FILE # | COURT CASE NO. | CASE NAME | COURT / VENUE | RETAINED BY | TYPE OF CASE |
|---|---|---|---|---|---|---|---|
| 1/2009 | Secured Creditor | 109-2009-0438 | | Erickson Building | US Bankruptcy Court - Southern District of Texas | Stuart Glick, Esq., Sills, Cummis & Gross | Market Value for Bankruptcy of 140,000 SF corporate campus in Bethesda, Maryland |
| 9/2009 | Plaintiff | 109-2009-0123 | 3035-001 | Bay Head Yacht Club vs. Ocean County Tax Board | Tax Court of New Jersey | John Doyle, Carluccio, Leone, Dimon, Doyle & Sacks, LLC | Tax Appeal for Bay Head Yacht Club |
| 12/2008 | Plaintiff | 109-2008-XXX | INA (DEFS Pending) | Mirage Atlantic City (MAC) vs. City of Atlantic City | Tax Court of New Jersey | Hank Rovillard, Esq. | Tax Appeal at State Tax Court on 15 acre casino site adjacent to Trump Marina |
| 8/2008 | Defendant | 109-2008-0252 | L-2424-05 | The City of South Amboy vs. Lower Main Street Development, LLC & Amboy Aggregates Joint Venture | Superior Court of New Jersey Law Division, Middlesex County | Bathgate, Wegenar, etal | Verified complaint in condemnation |
| 6/2008 | Defendant | 109-2008-345 | C.A. No. OCNL-3361-06 | Osbourne Associates, Melbourne Associates VI, LLC, Kingsway Realty Profit Share vs. Citta Enterprises Co, JAC Property Management etal and Eckerd Corporation | Superior Court of New Jersey, Law Division Ocean County | Francis X. Manning, Esq. Stradley Ronon Stevens & Young & Michael Canfoldi, Esq. Partridge Snow and Hahn, both on behalf of | Dispute re: proper valuation of leasehold and sub-lessee's sandwich leasehold interest on damage claim for breach of agreement claim |
| 1/2008 | Defendant | 109-2008-0125- | N/A | Toms River Township vs. Citta Geigy Corporation | American Arbitration Association [testimony at Arbitration conducted by Hon. Eugene Serpenteli] | Mark Troncone, Esq., In-house Counsel to Township of Toms River | Arbitration of environmental damages claim, and counter-claim of appropriateness of zoning on 1,900 acre superfund site. |
| 11/2007 | Defendant | 109-2007-211 | L-0008/35-06 | Kyle Mosteller vs. Galia Neeman | Superior Court of New Jersey, Law Division | Frank Canuso, Esq. Hoagland, Longo, Moran and Dunst | Damage claim due to loss of trees and screening between urban properties |
| 6/2007 | Plaintiff | 109-2007-0134 | 3:07-CV-2322 | Silver Lakes Inc. vs. Township of Freehold Inc. | Superior Court of New Jersey, Chancery Division Monmouth County | Christopher Hanlon, Esq. Hanlon and Niemann | Challenge to validity of Rent Control Ordinance as transfer of property rights from Lessor to Lessee |
| 6/2007 | Plaintiff | 109-2007-0173 | | Laurelwood Homes, LLC vs. United States Department of Navy | Federal District Court of Virginia | William A. Shook Esq. | Leasehold interest in the property, breach of lease claim on behalf of leasehold owner (Laurelwood) claiming breach of lease and damages |
| 12/2006 | Defendant | 109-2006-0192 | CAM - L - 9731-05 | Brandywine Operating Partnership, LP vs. UFCW Local 56 | Superior Court of New Jersey, Chancery Division, Camden County | Brett Last, Esq. O'Brien, Belland and Bushinsky | Estimate the value of damages to landlord on breach of above-market lease |
| 8/2006 | Defendant | 109-2006-0257 | | County Line & Browers Bridge, Jackson Township | Superior Court of New Jersey, Chancery Division, Ocean County | Levin, Shea, Pfeffer, PA Steven Pfeffer | To develop an opinion of the hypothetical market value of the fee simple interest in the property |
| 2/2006 | Defendant | 109-2006-0044 | OCNL-2482-04 | Carl Brooks vs. K. Hovranian | Ocean Superior Court, Ocean County Courthouse | Ronan, Tuzzio & Giannone, Linda Olsen | To estimate value diminution in the subject property as a result of various issues asserted by the property owner in conjunction with pending litigation between the property owner, and the subject developer K. Hovranian @ Sea Oaks |
| 10/2005 | Defendant | 109-2005-0315 | OCNL-1810-5 | Atlantic City Electric Company d/b/a Conectiv Power Delivery, a regulated public utility of the state of New Jersey vs. AG Mastellouine, LLC family and/or Anthony Armstrong | Superior Court of New Jersey, Chancery Division Ocean County | Flaster/Greenberg, PC, David R. Oberlander, Esq. | Compensation for the taking of an easement for construction and maintenance of a 230kv transmission line and towers by Atlantic City Electric |
| 9/2005 | Defendant | 109-2005-0214 | MONL-2609-05 | Township of Howell vs. George Harms Construction Co., Inc. etal | Superior Court of New Jersey Law Division Monmouth County | Connell & Foley, LLP Kevin Coakley, Esq. | To develop an opinion of the market value of the fee simple estate of the property |
| 8/2003 | Defendant | 109-2003-0282 | | Giuffre vs. Giuffre | Superior Court of New Jersey Chancery Division, Family Part, Monmouth County | Louis & Wolf - Frank A. Louis | To develop an opinion of the market value of the Fee Simple estate of two properties for purposes of equitable distribution of marital assets |
| 7/2003 | Plaintiff | 109-2003-0203 | OCN-C-78-03 | West, etal vs. Pompaino, etal | Superior Court of New Jersey, Chancery Division, Ocean County | Stephen E. Smith, Esq. | To develop an opinion of the diminution in value due to a loss of useable land area |
| 6/2003 | Plaintiff | 109-2003-0191 | OCN-C-316-02 | Eugene M. Lord vs. Donald W. Rinaldo | Superior Court of New Jersey Law Division, Ocean County | Lombardi & Lombardi Scott Telson | To develop an opinion of the market value of the fee simple estate of the property |
| 4/2003 | Plaintiff | 109-2003-0128 | FM-15-468-03-C | Vincent Urbank vs. Lisa Urbank | Superior Court of New Jersey, Chancery Division, Family Part Ocean County | Marianna Pontoriero, Esq. | Litigation-Matrimonial |
| 2/2002 | Plaintiff | 109-2002-0055 | | Shenandoah Mobile Home Park | | Windels Marx Lane & Mittendorf, LLP - William Cagney | Inverse Condemnation - Rent Control Ordinance |
| 4/2001 | Claimant | 109-2001-0169 | NJ-2624-00 | DeForest John Ely and Kimberle A. Ely, h/w | Superior Court of New Jersey, Chancery Division, Middlesex County | First American Title Insurance Co. Jack Mirkis | To derive an opinion of the fair compensation of the fee simple estate, subject to the temporary title encumbrance |
| 03/1999 | Defendant | 109-1999-0062 | | Georgetown Apartments | US Bankruptcy Court - District of Newark | Emmes & Co., Andrew Schwarz | To estimate the market value of the Leased Fee Estate of the property; inclusive of 28 Apartment complexes through NY, NJ, PA, and MD. |
| 12/1997 | Defendant | LKW-257-3186 | FM-15-1465-94 | Lisa Franklin, etal vs. Donald Franklin, etal | Superior Court of New Jersey, Chancery Division, Family Part, Ocean County | Greenbaum, Rowe, Smith, Ravin, Davis & Himmel LLP Robert S. Underhill | Estimating the market value of the leased fee interest |
| 8/1984 | Creditor | HUD-XX | | Hudson Marina Association vs. Emmes & Co. | US Bankruptcy Court - District of Newark | | Bankruptcy Reorganization of 200+ slip failed marina/dockominium complex |



M. Quails: Graziano: Trial Lists