# EXHIBIT 35 part 3

# EXHIBIT F9

**Integra Realty Resources**
Miami/Palm Beach

**Appraisal Report & Post-Remediation Damage Related to Chinese Drywall**

**Chatmon, Lillian**
Hypothetical Market Value "As If" Remediated
4151 Bismarck Palm Dr
Tampa, Hillsborough County, Florida 33610
Client Reference: 8

**Prepared For:**
Colson Hicks Eidson

**Effective Date of the Appraisal:**
January 1, 2019

**Report Format:**
Appraisal Report

**IRR - Miami/Palm Beach**
File Number: 123-2018-0275





**Chatmon, Lillian**
4151 Bismarck Palm Dr
Tampa, Florida



| Integra Realty Resources | In Miami | In Orlando | In Naples/Sarasota |
|---|---|---|---|
| Miami | Dadeland Centre | The Magnolia Building | Horseshoe Professional Park |
| Orlando | 9155 South Dadeland Blvd. | 326 N. Magnolia Ave. | 2770 Horseshoe Drive S. |
| Southwest Florida | Suite 1208 | | Suite 3 |
| | Miami, FL 33156 | Orlando, FL 32801 | Naples, FL 34104 |
| www.irr.com | (305) 670-0001 | (407) 843-3377 | (239)-643-6888 |

January 21, 2019

Patrick S. Montoya
Partner
Colson Hicks Eidson
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134

SUBJECT:  Hypothetical Market Value "As If" Remediated
Case No 11-22408-Civ-COOKE
United States District Court Southern District of Florida in the matter of
Eduardo and Carmen Amorin, et al. individually and on behalf of others situated
similarly v. Taishan Gypsum Co., LTD., f/k/a Shandong Taiche Dongxin Co. Ltd., et al
Priority Claimant Case at:
Chatmon, Lillian
4151 Bismarck Palm Dr
Tampa, Hillsborough County, Florida 33610
Client Reference: 8
IRR - Miami/Palm Beach File No. 123-2018-0275

Dear Mr. Montoya:

Integra Realty Resources – Miami/Palm Beach submits the following damage estimate in the
referenced property as of the effective date assuming all remediation was completed by an
appropriate contractor with experience and credentials in remediating defective drywall.

The report is intended to comply the Uniform Standards of Professional Appraisal Practice (USPAP). It
presents summary discussions of the data, reasoning, and analysis that were used in the appraisal
process to develop the opinions. Additional information is contained within our workfile.

The findings will form the basis of expert witness testimony in the above referenced case.

Case 2:09-md-02047-EEF-MBN Document 22263-58 Filed 11/19/19 Page 6 of 106
Case 1:11-cv-22408-MGC Document 281-9 Entered on FLSD Docket 05/13/2019 Page 6 of 53

Identification of Subject                                                      2

## Identification of Subject

The subject of this report is a single-family home configured with 2 bedroom and 2.5 baths with 1,240 SF under air-conditioning. The subject property was built in 2006 and is located on a 1,168 square foot site.

## Purpose of the Appraisal

The purpose of the appraisal is to develop an opinion of the diminution in value and related damages, collectively "the damages" as of the effective date of the appraisal, January 1, 2019. The damage estimate assumes the defective drywall remediation was completed and does not consider the cost to cure. The date of the report is January 21, 2019. The appraisal is valid only as of the stated effective date or dates.

## Intended Use and User

The intended use of the appraisal is for litigation purposes. The client, Colson Hicks Eidson and related co-counsel, Plaintiff and the Court are the intended users. Integra Realty Resources – Miami/Palm Beach is not responsible for unauthorized use of this report.

## Most Recent Sale History

The most recent closed sale of the subject is summarized as follows:

| Most Recent Subject Sale (Closed) | |
| --- | --- |
| Sale Date (Most Recent) | March 30, 2007 |
| Seller | Rottlund Homes of Florida Inc |
| Buyer | Chatmon, Lillian |
| Sale Price | $169,900 |
| Recording Instrument Number | 17635-1068 |
| Disposition Details | Sale from the homebuilder |

To the best of our knowledge, no other sale or transfer of ownership has taken place within a three-year period prior to the effective appraisal date.

## Pending Transactions

To the best of our knowledge, the property is not subject to an agreement of sale or an option to buy, nor is it listed for sale, as of the effective appraisal date.

## Definition of Market Value

The following definition of market value is used by agencies that regulate federally insured financial institutions in the United States:

"The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:

Chatmon, Lillian



Case 2:09-md-02047-EEF-MBN Document 22363-58 Filed 11/19/19 Page 7 of 106
Case 1:11-cv-22408-MGC Document 281-9 Entered on FLSD Docket 03/13/2019 Page 6 of 53

Definition of Retrospective Value Opinion                                                                    3

- Buyer and seller are typically motivated;

- Both parties are well informed or well advised, and acting in what they consider their own best interests;

- A reasonable time is allowed for exposure in the open market;

- Payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and

- The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale."

*(12 C.F.R. Part 34.42(g); 55 Federal Register 54696, August 24, 1990, as amended at 57 Federal Register 12202, April 9, 1992, 59 Federal Register 29499, June 7, 1994)*

## Definition of Retrospective Value Opinion

A value opinion effective as of a specified historical date. The term retrospective does not define a type of value. Instead, it identifies a value opinion as being effective at some specific prior date. Value as of a historical date is frequently sought in connection with property tax appeals, damage models, lease renegotiation, deficiency judgements, estate tax, and condemnation. Inclusion of the type of value with this term is appropriate, e.g. "retrospective market value opinion".

(*Source: The Dictionary of Real Estate Appraisal – 6th Edition; Appraisal Institute, 200 W. Madison, Suite 1500, Chicago, IL 60606, www.appraisalinstitute.org*)

## Definition of Hypothetical Condition

1. A condition that is presumed to be true when it is known to be false. (SVP)

2. A condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis. Comment: Hypothetical conditions are contrary to known facts about physical, legal, or economic characteristics of the subject property; or about conditions external to the property, such as market conditions or trends; or about the integrity of date used in an analysis. (USPAP, 2016-2017 ed.)

(*Source: The Dictionary of Real Estate Appraisal – 6th Edition; Appraisal Institute, 200 W. Madison, Suite 1500, Chicago, IL 60606, www.appraisalinstitute.org*)

## Scope of Work

Integra was retained as an expert in the captioned matter of this report to address potential damages related to the subject property, specifically excluding the costs to cure.

Integra was retained to estimate any post remediation damages, and conducted a separate study to determine whether damages persist following defective drywall remediation. The result of that study are outlined within Integra's report entitled "Market Analysis of the Post Remediation Impact of Chinese Drywall on Residential Property Values in Florida." The results of that study are incorporated by reference herein.



Case 2:09-md-02047-EEF-MBN Document 22363-58 Filed 11/19/19 Page 8 of 106
Case 1:11-cv-22408-MGC Document 281-9 Entered on FLSD Docket 09/13/2019 Page 7 of 53

Scope of Work                                                                                  4

In addition, our damage model was requested to include a rental value analysis of the Priority Claimant residence, and a determination of the relevant economic damage associated with having to vacate the home for a period of time (and secure alternate living arrangements) during the remediation. As of the effective date, the claimant would have suffered the damages.

Integra established individual case files on each Priority Claimant residence, and retained professional assistance from qualified residential appraisers in each jurisdiction. Integra managed the process of these retrospective appraisals, interfaced with the residential appraisers, and reviewed the form appraisals completed on each assignment including review of the comparables, adjustments, and form narrative to establish the market value of the residence unimpaired as of the effective date.

Integra professionals reviewed various materials exchanged as part of this case and considered materials that were relevant to the market valuation. These materials were downloaded from the attorney's dropbox and are retained within our workfile.

Integra's participation in and review of the final appraised values results in a conclusion of the market value of the home defined as "Hypothetical Market Value" assuming defective drywall had never been identified within the subject property. This forms the basis of the unimpaired market value as of the effective date.

All properties and comparables were inspected by the local residential appraisers without the benefit of interior inspections. Adjustments for condition and age at the time of sale are based upon photographs contained within the various MLS databases, paired analysis from amongst the comparables, and for the subject, were based on photos, if available. In the event a property had not been remediated as of the effective date, we assume average condition for the property in the market as of the effective date.

The damage analysis expressed within this report follows the peer teachings and market accepted processes for damage analysis. However, the damage analysis only represents a <u>portion of the overall damages</u> because we were specifically requested to exclude the consideration of the costs to cure. This represents a relevant component of damage in this case for property that factually have not been remediated.

Integra's role was strictly to identify post remediation value damage (sometime referred to a "stigma") and estimate the relevant rental value and moving costs as a proxy for the temporary loss of use during remediation.

## Significant Appraisal Assistance

In addition to Anthony M. Graziano, MAI ,CRE, principal, it is acknowledged that Peter G. Kayworth, Yuliya Georgieva, Joseph Melloni and Paul L. Jones of IRR-Miami/Palm Beach were involved in the assignment consisting of conducting research on the subject and transactions involving comparable properties, performing appraisal analyses and assisting in report writing, under the supervision of the persons signing the report. The local residential appraisers are also named as providing significant assistance, including exterior inspection of the properties and comparables, application of their local



Case 2:09-md-02047-EEF-MBN Document 22363-58 Filed 11/19/19 Page 9 of 106
Case 1:11-cv-22408-MGC Document 291-9 Entered on FLSD Docket 09/13/2019 Page 8 of 53

Highest and Best Use                                                                              5

knowledge in adjusting and estimating the unimpaired value, and developing the form report valuations incorporated herein.

## Prior Services

USPAP requires appraisers to disclose to the client any other services they have provided in connection with the subject property in the prior three years, including valuation, consulting, property management, brokerage, or any other services. We have not performed any services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

## Valuation Methodology

Appraisers usually consider the use of three approaches to value when developing a market value opinion for real property. These are the cost approach, sales comparison approach, and income capitalization approach. The valuations consider the only relevant approach for residential valuation, the sales comparison analysis. The cost and income approach are not considered relevant.

The sales comparison approach is the most applicable valuation method since there is an active market for similar properties, and sufficient sales data is available for analysis. Additionally, this approach directly considered the prices of alternative properties having similar utility.

## Highest and Best Use

The highest and best use of the subject as if vacant for development of a single-family home which is physically possible, legally permissible as per zoning, financially feasible and maximally productive.

The highest and best use of the subject as improved is for continued use as a single-family home with no other use that could reasonably be expected to provide a higher value to the land as if vacant. The improvements contribute to the over all value to a greater extent than the land value alone, and therefore, continued use as improved concluded to be maximally productive and the highest and best use of the property.

## Conclusion of Value

The Hypothetical market value appraisal as of the effective date, reflective of a traditional form appraisal, is contained within the Addenda of this report. This value us hypothetical since it assumes that defective drywall had never been present at the subject property.

Against this value, we then apply the Post Impairment Discount as a percentage of unimpaired value as developed within the Integra report studying this issue. This represents a compensable damage resulting from the prior existence of defective drywall in the home as of the effective date.

In addition, each appraisal (unimpaired) reflects a rental value analysis as of the effective date. This rental value analysis concludes to the equivalent market rent for the home (unimpaired) and reflects a proxy for the probable actual costs the homeowner would experience by having to move-out of the primary residence during remediation.

Chatmon, Lillian



The homeowner would also have to incur moving /storage costs twice, once before and once after remediation.  Professional packing, moving and storage for an average home is estimated at $1,500 per move, or $3,000 in total.  This amount is added to the loss of use estimate as an additional damage.

This loss of use calculation does not consider the costs of alternative housing or other tangible costs potentially incurred for damages suffered between the date of discovery and the date of value.  These damages, if applicable, are being estimated by a separate expert (Elkins et al). To the extent Elkins posits costs which are duplicative or actual costs that are greater or less, some minor adjustments to Integra's damage model may be required.

The timeframe for remediation (months of actual loss) could vary depending upon the permitting process in the specific community, the availability of labor, and the size of the home.  Integra reviewed a number of transactions that were remediated by investors and found the typical timeframe between purchase of an unremediated home and listing[1] of the home post-remediation to be 3-6 months.

Larger more expansive homes would be expected to take longer to remediate since more materials are required, and in higher-priced homes, supplies would typically be custom-ordered.  Therefore, we apply the following timeframes based on the subject's size and price range:

< $150,000 Home up to 2,000+/- SF                       4 months

$150,000 - $750,000 home up to 4,000 SF               6 months

$750,000+ home up over 4,000 SF                          9 months

---

[1] The "listing date" is most relevant since a homeowner conducting their own remediation can move back in once the home is ready for sale (ie- coinciding with a final certificate of occupancy).

Chatmon, Lillian



The following shows our final estimate of damages as of the effective date, and assuming costs to cure (i.e. – to conduct the remediation) have been expended.

**Conclusions of Damage**

| | | | |
|---|---|---|---|
| Hypothetical Value (Unimpaired - Before) | | $145,000 | |
| Market Impairment Discount (As if Remediated) | | 10% | |
| Post Impairment Damage ($) | | $14,500 | |
| **Hypothetical Value As IF Remediated** | | | **$130,500** |
| **Post Remediation Damages as of Effective Date** | | | **$14,500** |
| Loss of Use: | | | |
|   Rental Rate ($/Month) | **$1,250** | | |
|   Moving & Storage Costs | | $3,000 | |
|   Loss of Use Subject (# Months) | 4x | $5,000 | |
|     Subject Total | | | **$8,000** |
| **Post Remediation Damage** | | | **$22,500** |

Note: Does not consider "cost to cure". Assumes remediation was completed by qualified contractor who warranties the work.

As of the effective date of value, the home remains un-remediated. Additional cost to cure damages would apply. These are being handled by the Court's special master.



Case 2:09-md-02047-EEF-MBN Document 22363-59 Filed 11/19/19 Page 12 of 106
Case 1:11-cv-22408-MGC Document 281-9 Entered on FLSD Docket 08/15/2013 Page 11 of 53

Certification                                                                        8

## Certification

We certify that, to the best of our knowledge and belief:

1.  The statements of fact contained in this report are true and correct.

2.  The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are our personal, impartial, and unbiased professional analyses, opinions, and conclusions.

3.  We have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.

4.  We have not performed any services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

5.  We have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

6.  Our engagement in this assignment was not contingent upon developing or reporting predetermined results.

7.  Our compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

8.  Our analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice as well as applicable state appraisal regulations.

9.  The reported analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute.

10. The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

11. Anthony M. Graziano, MAI, CRE did not make a personal inspection of the property that is the subject of this report. Rob Baird has personally inspected the subject.

12. Significant real property appraisal assistance was provided by Peter G. Kayworth, Yuliya Georgieva, Joseph Melloni and Paul L. Jones. Additionally, real estate assistance was provided by various Valucentric employees and subcontractors, including: John Barcelo, Angela Barcelo, Fred Stites, Carlos Fong, Sarah D. Wilson and Rob Baird.

13. We have experience in appraising properties similar to the subject and are in compliance with the Competency Rule of USPAP.

14. As of the date of this report, Anthony M. Graziano, MAI, CRE, has completed the continuing education program for Designated Members of the Appraisal Institute.

Anthony M. Graziano, MAI, CRE
Senior Managing Director - Miami
State-Certified General RE Appraiser
FL Certificate # RZ#3510

Chatmon, Lillian

irr

Case 2:09-md-02047-EEF-MBN Document 22363-59 Filed 11/19/19 Page 13 of 106
Case 1:11-cv-22408-MGC Document 281-9 Entered on FLSD Docket 08/13/2013 Page 12 of 53
Assumptions and Limiting Conditions                                                                9

## Assumptions and Limiting Conditions

This appraisal and any other work product related to this engagement are limited by the following standard assumptions, <u>except as otherwise noted in the report</u>:

1.  The title is marketable and free and clear of all liens, encumbrances, encroachments, easements and restrictions. The property is under responsible ownership and competent management and is available for its highest and best use.

2.  There are no existing judgments or pending or threatened litigation that could affect the value of the property.

3.  There are no hidden or undisclosed conditions of the land or of the improvements that would render the property more or less valuable. Furthermore, there is no asbestos in the property.

4.  The revenue stamps placed on any deed referenced herein to indicate the sale price are in correct relation to the actual dollar amount of the transaction.

5.  The property is in compliance with all applicable building, environmental, zoning, and other federal, state and local laws, regulations and codes.

6.  The information furnished by others is believed to be reliable, but no warranty is given for its accuracy.

This appraisal and any other work product related to this engagement are subject to the following limiting conditions, except as otherwise noted in the report:

1.  An appraisal is inherently subjective and represents our opinion as to the value of the property appraised.

2.  The conclusions stated in our appraisal apply only as of the effective date of the appraisal, and no representation is made as to the effect of subsequent events.

3.  No changes in any federal, state or local laws, regulations or codes (including, without limitation, the Internal Revenue Code) are anticipated.

4.  No environmental impact studies were either requested or made in conjunction with this appraisal, and we reserve the right to revise or rescind any of the value opinions based upon any subsequent environmental impact studies. If any environmental impact statement is required by law, the appraisal assumes that such statement will be favorable and will be approved by the appropriate regulatory bodies.

5.  Unless otherwise agreed to in writing, we are not required to give testimony, respond to any subpoena or attend any court, governmental or other hearing with reference to the property without compensation relative to such additional employment.

6.  We have made no survey of the property and assume no responsibility in connection with such matters. Any sketch or survey of the property included in this report is for illustrative purposes only and should not be considered to be scaled accurately for size. The appraisal covers the property as described in this report, and the areas and dimensions set forth are assumed to be correct.

Chatmon, Lillian



Case 2:09-md-02047-EEF-MBN Document 22363-59 Filed 11/19/19 Page 14 of 106
Case 1:11-cv-22408-MGC Document 281-9 Entered on FLSD Docket 09/18/2013 Page 13 of 53

Assumptions and Limiting Conditions                                                                                            10

7.  No opinion is expressed as to the value of subsurface oil, gas or mineral rights, if any, and we have assumed that the property is not subject to surface entry for the exploration or removal of such materials, unless otherwise noted in our appraisal.

8.  We accept no responsibility for considerations requiring expertise in other fields. Such considerations include, but are not limited to, legal descriptions and other legal matters such as legal title, geologic considerations such as soils and seismic stability; and civil, mechanical, electrical, structural and other engineering and environmental matters. Such considerations may also include determinations of compliance with zoning and other federal, state, and local laws, regulations and codes.

9.  The distribution of the total valuation in the report between land and improvements applies only under the reported highest and best use of the property. The allocations of value for land and improvements must not be used in conjunction with any other appraisal and are invalid if so used. The appraisal report shall be considered only in its entirety. No part of the appraisal report shall be utilized separately or out of context.

10. Neither all nor any part of the contents of this report (especially any conclusions as to value, the identity of the appraisers, or any reference to the Appraisal Institute) shall be disseminated through advertising media, public relations media, news media or any other means of communication (including without limitation prospectuses, private offering memoranda and other offering material provided to prospective investors) without the prior written consent of the persons signing the report.

11. Information, estimates and opinions contained in the report and obtained from third-party sources are assumed to be reliable and have not been independently verified.

12. Any income and expense estimates contained in the appraisal report are used only for the purpose of estimating value and do not constitute predictions of future operating results.

13. If the property is subject to one or more leases, any estimate of residual value contained in the appraisal may be particularly affected by significant changes in the condition of the economy, of the real estate industry, or of the appraised property at the time these leases expire or otherwise terminate.

14. Unless otherwise stated in the report, no consideration has been given to personal property located on the premises or to the cost of moving or relocating such personal property; only the real property has been considered.

15. The current purchasing power of the dollar is the basis for the values stated in the appraisal; we have assumed that no extreme fluctuations in economic cycles will occur.

16. The values found herein are subject to these and to any other assumptions or conditions set forth in the body of this report but which may have been omitted from this list of Assumptions and Limiting Conditions.

17. The analyses contained in the report necessarily incorporate numerous estimates and assumptions regarding property performance, general and local business and economic conditions, the absence of material changes in the competitive environment and other matters. Some estimates or assumptions, however, inevitably will not materialize, and unanticipated events and circumstances may occur; therefore, actual results achieved during

Chatmon, Lillian



Case 2:09-md-02047-EEF-MBN Document 22363-59 Filed 11/19/19 Page 15 of 106
Case 1:11-cv-22408-MGC Document 281-9 Entered on FLSD Docket 08/13/2015 Page 14 of 53

Assumptions and Limiting Conditions                                                    11

the period covered by our analysis will vary from our estimates, and the variations may be material.

18. The Americans with Disabilities Act (ADA) became effective January 26, 1992. We have not made a specific survey or analysis of the property to determine whether the physical aspects of the improvements meet the ADA accessibility guidelines. We claim no expertise in ADA issues, and render no opinion regarding compliance of the subject with ADA regulations. Inasmuch as compliance matches each owner's financial ability with the cost to cure the non-conforming physical characteristics of a property, a specific study of both the owner's financial ability and the cost to cure any deficiencies would be needed for the Department of Justice to determine compliance.

19. The appraisal report is prepared for the exclusive benefit of the Client, its subsidiaries and/or affiliates. It may not be used or relied upon by any other party. All parties who use or rely upon any information in the report without our written consent do so at their own risk.

20. No studies have been provided to us indicating the presence or absence of hazardous materials on the subject property or in the improvements, and our valuation is predicated upon the assumption that the subject property is free and clear of any environment hazards including, without limitation, hazardous wastes, toxic substances and mold. No representations or warranties are made regarding the environmental condition of the subject property. Integra Realty Resources – Miami/Palm Beach, Integra Realty Resources, Inc., Integra Strategic Ventures, Inc. and/or any of their respective officers, owners, managers, directors, agents, subcontractors or employees (the "Integra Parties"), shall not be responsible for any such environmental conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because we are not experts in the field of environmental conditions, the appraisal report cannot be considered as an environmental assessment of the subject property.

21. The persons signing the report may have reviewed available flood maps and may have noted in the appraisal report whether the subject property is located in an identified Special Flood Hazard Area. We are not qualified to detect such areas and therefore do not guarantee such determinations. The presence of flood plain areas and/or wetlands may affect the value of the property, and the value conclusion is predicated on the assumption that wetlands are non-existent or minimal.

22. Integra Realty Resources – Miami/Palm Beach is not a building or environmental inspector. Integra Miami/Palm Beach does not guarantee that the subject property is free of defects or environmental problems. Mold may be present in the subject property and a professional inspection is recommended.

23. The appraisal report and value conclusions for an appraisal assume the satisfactory completion of construction, repairs or alterations in a workmanlike manner.

24. It is expressly acknowledged that in any action which may be brought against any of the Integra Parties, arising out of, relating to, or in any way pertaining to this engagement, the appraisal reports, and/or any other related work product, the Integra Parties shall not be responsible or liable for any incidental or consequential damages or losses, unless the appraisal was fraudulent or prepared with intentional misconduct. It is further acknowledged

Chatmon, Lillian



Case 2:09-md-02047-EEF-MBN Document 22363-59 Filed 11/19/19 Page 16 of 106
Case 1:11-cv-22408-MGC Document 281-9 Entered on FLSD Docket 09/13/2013 Page 15 of 53

Assumptions and Limiting Conditions                                                                                    12

that the collective liability of the Integra Parties in any such action shall not exceed the fees paid for the preparation of the appraisal report unless the appraisal was fraudulent or prepared with intentional misconduct. Finally, it is acknowledged that the fees charged herein are in reliance upon the foregoing limitations of liability.

25.     Integra Realty Resources – Miami/Palm Beach, an independently owned and operated company, has prepared the appraisal for the specific intended use stated elsewhere in the report. The use of the appraisal report by anyone other than the Client is prohibited except as otherwise provided. Accordingly, the appraisal report is addressed to and shall be solely for the Client's use and benefit unless we provide our prior written consent. We expressly reserve the unrestricted right to withhold our consent to your disclosure of the appraisal report or any other work product related to the engagement (or any part thereof including, without limitation, conclusions of value and our identity), to any third parties. Stated again for clarification, unless our prior written consent is obtained, no third party may rely on the appraisal report (even if their reliance was foreseeable).

26.     The conclusions of this report are estimates based on known current trends and reasonably foreseeable future occurrences. These estimates are based partly on property information, data obtained in public records, interviews, existing trends, buyer-seller decision criteria in the current market, and research conducted by third parties, and such data are not always completely reliable. The Integra Parties are not responsible for these and other future occurrences that could not have reasonably been foreseen on the effective date of this assignment. Furthermore, it is inevitable that some assumptions will not materialize and that unanticipated events may occur that will likely affect actual performance. While we are of the opinion that our findings are reasonable based on current market conditions, we do not represent that these estimates will actually be achieved, as they are subject to considerable risk and uncertainty. Moreover, we assume competent and effective management and marketing for the duration of the projected holding period of this property.

27.     All prospective value opinions presented in this report are estimates and forecasts which are prospective in nature and are subject to considerable risk and uncertainty. In addition to the contingencies noted in the preceding paragraph, several events may occur that could substantially alter the outcome of our estimates such as, but not limited to changes in the economy, interest rates, and capitalization rates, behavior of consumers, investors and lenders, fire and other physical destruction, changes in title or conveyances of easements and deed restrictions, etc. It is assumed that conditions reasonably foreseeable at the present time are consistent or similar with the future.

Chatmon, Lillian



Case 2:09-md-02047-EEF-MBN   Document 22363-59   Filed 11/19/19   Page 17 of 106
Case 1:11-cv-22408-MGC   Document 281-9   Entered on FLSD Docket 09/15/2013   Page 16 of 53

Addenda

# Addenda



| Client | Integra Realty Resources | | File No. | 18-12-1457a |
|--------|--------------------------|---|----------|-------------|
| Property Address | 4151 Bismarck Palm Dr | | | |
| City | Tampa | County Hillsborough | State FL | Zip Code 33610 |
| Client | Integra Realty Resources | | | |

## TABLE OF CONTENTS

Exterior-Only ................................................................................................ 1
Additional Comparables 4-6 ................................................................................ 7
Additional Commentary Addendum ........................................................................ 8
Market Conditions Addendum to the Appraisal Report ................................................. 9
Additional Rentals 1-3 ..................................................................................... 10
Comparable Photos 1-3 .................................................................................... 11
Comparable Photos 4-6 .................................................................................... 12
Comparables Location Map ................................................................................ 13
Rent Comparables Photos .................................................................................. 14
Subject Photos Page 1 ...................................................................................... 15
Scope of Work .............................................................................................. 16
Subject Aerial Photograph ................................................................................. 17
Flood Map .................................................................................................. 18
Property Appraiser Page 1 .................................................................................. 19
Property Appraiser Page 2 .................................................................................. 20
License ..................................................................................................... 21
E & O ...................................................................................................... 22
USPAP Identification ....................................................................................... 23
Certifications & Limiting Conditions - Residential ...................................................... 24
Supplemental Addendum ................................................................................... 26
Supplemental Addendum ................................................................................... 27
Supplemental Addendum ................................................................................... 28
UAD Definitions Addendum ................................................................................ 29

Serial# 6CE6A285
esign.alamode.com/verify

# Exterior-Only Inspection Residential Appraisal Report

18-12-1457a
File # 18-12-1457a

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

**SUBJECT**

| | | | |
|---|---|---|---|
| Property Address | 4151 Bismarck Palm Dr | City Tampa | State FL Zip Code 33610 |
| Borrower N/A | | Owner of Public Record Lillian E. Chatmon | County Hillsborough |
| Legal Description TOWNHOMES AT SABAL POINTE LOT 3 BLOCK 26Folio No. 065456-1062 | | | |
| Assessor's Parcel # U-06-29-20-83E-000026-00003.0; 065456-1062 | | Tax Year 2018 | R.E. Taxes $ 425 |
| Neighborhood Name Sabal Park | | Map Reference 45300 | Census Tract 0121.03 |

Occupant ☒ Owner ☐ Tenant ☐ Vacant    Special Assessments $ 0    ☒ PUD    HOA $ 174 ☐ per year ☒ per month
Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)
Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe) Estimate market value for litigation
Lender/Client Integra Realty Resources    Address 9155 South Dadeland Blvd, #1208, Miami, FL 33156
Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☐ Yes ☒ No
Report data source(s) used, offering price(s), and date(s). The subject property has not been listed for sale in the prior 12 months.

**CONTRACT**

I ☐ did ☒ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $     Date of Contract     Is the property seller the owner of public record? ☐ Yes ☐ No Data Source(s)
Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☐ No
If Yes, report the total dollar amount and describe the items to be paid.

**NEIGHBORHOOD**

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | One-Unit Housing Trends | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | | Property Values ☒ Increasing ☐ Stable ☐ Declining | | PRICE $ (000) | AGE (yrs) | One-Unit | 75 % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | | 50 Low | 0 | 2-4 Unit | 2 % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | | Marketing Time ☒ Under 3 mths ☐ 3-6 mths ☐ Over 6 mths | | 500 High | 100 | Multi-Family | 3 % |
| | | | | 150 Pred. | 55 | Commercial | 20 % |
| | | | | | | Other | % |

Neighborhood Boundaries Interstate 4 to the north, Interstate 75 to the east, E. Broadway Avenue to the
south, and Interstate 4 to the west.
Neighborhood Description The subject property is located approximately 7.50 miles northeast of Downtown Tampa, in the Sabal Park area. The area is desirable
to the market for its proximity to the employment center of Sabal Park, transportation linkages (such as U.S. Highway 301, Interstates 75 and 4, and Dr. Martin
Luther King Jr. Boulevard), and recreational amenities such as the Florida State Fairgrounds. All support services are located in a three to five mile radius.
Market Conditions (including support for the above conclusions) Based on data from the S&P Corelogic Case-Shiller Tampa Home Price NSA Index, property values
are increasing in the Tampa Bay area. Currently, prices are appreciating on an annual basis of 6.41%. The current cycle of appreciating prices began in 2012.
Please see the 1004MC for additional market conditions (time) data.

**SITE**

Dimensions 16'x73'    Area 1,168 sf    Shape Rectangular    View B;Woods;
Specific Zoning Classification PD    Zoning Description Planned Development
Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)
Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No If No, describe The Highest
and Best Use as Improved is a continuation of the townhouse use.

| Utilities | Public | Private | Other (describe) | | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | | | Street Asphalt | ☒ | |
| Gas | ☐ | | None | | Alley None | | |

Water ☒ Sanitary Sewer ☒

FEMA Special Flood Hazard Area ☐ Yes ☒ No FEMA Flood Zone X    FEMA Map # 12057C0380J    FEMA Map Date 09/27/2013
Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No If No, describe
Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No If Yes, describe
No observed or known adverse influences to market value were noted. The subject property backs to a greenspace (common area) which is a benefit.

**IMPROVEMENTS**

Source(s) Used for Physical Characteristics of Property ☐ Appraisal Files ☐ MLS ☒ Assessment and Tax Records ☐ Prior Inspection ☐ Property Owner
☐ Other (describe)    Data Source for Gross Living Area Public records

| General Description | General Description | Heating/Cooling | Amenities | Car Storage |
|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | ☒ Concrete Slab ☐ Crawl Space | ☐ FWA ☐ HWBB | Fireplace(s) # 0 ☒ None | ☒ None |
| # of Stories 2.00 | ☐ Full Basement ☐ Finished | ☐ Radiant | Woodstove(s) # 0 | ☐ Driveway # of Cars 1 |
| Type ☐ Det. ☒ Att. ☐ S-Det./End Unit | ☐ Partial Basement ☐ Finished | ☒ Central | Patio/Deck None | Driveway Surface Concrete |
| ☒ Existing ☐ Proposed ☐ Under Const. | Exterior Walls Stucco/Avg | Fuel Electric | Porch Screen | ☐ Garage # of Cars |
| Design (Style) Townhouse | Roof Surface Shingles/Avg | ☒ Central Air Conditioning | Pool None | ☒ Carport # of Cars 0 |
| Year Built 2006 | Gutters & Downspouts Alum/Avg | ☐ Individual | Fence None | ☐ Attached ☐ Detached |
| Effective Age (Yrs) 13 | Window Type Sliding/Avg | ☐ Other | Porch None | ☐ Built-in |

Appliances ☒ Refrigerator ☒ Range/Oven ☒ Dishwasher ☐ Disposal ☒ Microwave ☐ Washer/Dryer ☐ Other (describe)
Finished area above grade contains: 6 Rooms    2 Bedrooms    2.1 Bath(s)    1,240 Square Feet of Gross Living Area Above Grade
Additional features (special energy efficient items, etc.). Entry porch, screen porch, wood cabinets, and sliding glass doors.

Describe the condition of the property and data source(s) (including apparent needed repairs, deterioration, renovations, remodeling, etc.). C3;An interior inspection of the
subject property was not performed by the appraiser. I have depended on the public records and information provided by the client for a
description of the improvements. Please see the Extraordinary Assumption under the Scope of Work.

Are there any apparent physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☒ Yes ☐ No
If Yes, describe.
The subject property has Chinese Drywall. The opinion of value is based on Hypothetical Condition found in the Scope of Work.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No If No, describe.
The functional utility, style, condition, use, quality of construction quality are typical for the area.

Freddie Mac Form 2055 March 2005    UAD Version 9/2011    Page 1 of 6    2055 March 2005

Form 2055UAD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Serial# 6CE6A285
esign.alamode.com/verify

**Exterior-Only Inspection Residential Appraisal Report**

File # 18-12-1457a

| | | | | |
|---|---|---|---|---|
| There are | 14 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 139,999 | to $ 223,320 | |
| There are | 76 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 64,900 | to $ 217,250 | |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE # 2 | COMPARABLE SALE # 3 |
|---|---|---|---|---|
| Address | 4151 Bismarck Palm Dr Tampa, FL 33610 | 4044 Bismarck Palm Dr Tampa, FL 33610 | 4211 Fan Palm Way Tampa, FL 33610 | 9812 Fan Palm Way Tampa, FL 33610 |
| Proximity to Subject | | 0.11 miles SW | 0.02 miles NE | 0.08 miles N |
| Sale Price | $ | $ 167,500 | $ 142,000 | $ 168,000 |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 99.00 sq.ft. | $ 114.52 sq.ft. | $ 99.29 sq.ft. |
| Data Source(s) | | MLS No. T3128630;DOM 20 | MLS No. T3112433;DOM 8 | MLS No. T3100986;DOM 4 |
| Verification Source(s) | | Public Records | Public Records | Public Records |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION +(-) $ Adjustment | DESCRIPTION +(-) $ Adjustment | DESCRIPTION +(-) $ Adjustment |
| Sales or Financing | | ArmLth | REO | ArmLth |
| Concessions | | Conv;0 | Conv;0 | FHA;3500 -3,500 |
| Date of Sale/Time | | s11/18;c09/18 0 | s07/18;c06/18 +3,000 | s06/18;c04/18 +4,000 |
| Location | N;Res; | N;Res; | N;Res; | N;Res; |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | Fee Simple | Fee Simple |
| Site | 1,168 sf | 1,533 sf 0 | 1,168 sf | 1,533 sf 0 |
| View | B;Woods; | B;Wtr; 0 | B;Woods; | N;Res; +1,500 |
| Design (Style) | AT2.00;Townho | AT2.00;Townho | AT2.00;Townho | AT2.00;Townho |
| Quality of Construction | Q3 | Q3 | Q3 | Q3 |
| Actual Age | 13 | 8 0 | 12 0 | 12 0 |
| Condition | C3 | C3 | C3 | C3 |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | Total Bdrms. Baths | Total Bdrms. Baths |
| Room Count | 6 2 2.1 | 7 3 2.1 -1,000 | 6 2 2.1 | 7 3 2.1 -1,000 |
| Gross Living Area | 1,240 sq.ft. | 1,692 sq.ft. -22,600 | 1,240 sq.ft. | 1,692 sq.ft. -22,600 |
| Basement & Finished Rooms Below Grade | 0sf | 0sf | 0sf | 0sf |
| Functional Utility | Typical | Typical | Typical | Typical |
| Heating/Cooling | Central | Central | Central | Central |
| Energy Efficient Items | Typical | Typical | Typical | Typical |
| Garage/Carport | 1ga1dw | 2ga2dw -2,500 | 1ga1dw | 2ga2dw -2,500 |
| Porch/Patio/Deck | Screen porch | Screen porch | Screen porch | Screen porch |
| Net Adjustment (Total) | | ☐ + ☒ - $ -26,100 | ☒ + ☐ - $ 3,000 | ☐ + ☒ - $ -24,100 |
| Adjusted Sale Price of Comparables | | Net Adj. 15.6 % Gross Adj. 15.6 % $ 141,400 | Net Adj. 2.1 % Gross Adj. 2.1 % $ 145,000 | Net Adj. 14.3 % Gross Adj. 20.9 % $ 143,900 |

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s) Public records and CoreLogic
My research ☒ did ☐ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s) Public Records and CoreLogic
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | 04/23/2018 | |
| Price of Prior Sale/Transfer | | | $100 | |
| Data Source(s) | Corelogic | Corelogic | Corelogic | Corelogic |
| Effective Date of Data Source(s) | 01/01/2019 | 01/01/2019 | 01/01/2019 | 01/01/2019 |

Analysis of prior sale or transfer history of the subject property and comparable sales    No prior sales of the subject, Comparables 1 or 2 in the last three years.
The subject property is located in a townhouse development known as Townhomes at Sabal Pointe. Over the prior 12 months, there have been ten sales in this development. The sales prices ranged from $115,764 to $168,000. The comparable at the low end of the range was sold at an auction. The room count adjustment is a net adjustment considering the number of bedrooms and bathrooms. If warranted, bedrooms were adjusted $1,000, half baths $1,500 and bathrooms $3,000. Comparable No. 3 sold with seller concessions thus a downward adjustment was warranted. The adjustment was $1.00 on the $1.00. Market conditions (time) adjustments were warranted for the older transactions.
Summary of Sales Comparison Approach    he comparable sales have been analyzed in chronological order from the most current to the oldest sale. A 0 in the adjustment column indicates that there were differences between the subject and the comparable , however, the market would not recognize an adjustment. The comparable sales ranged from $99.00 to $114.52 per sq. ft. This includes the site, site improvements, bathrooms, kitchen, garage, etc. The living area adjustment reflects only living area size differences. It would be reasonable for the living area adjustment to be less than the price per square foot paid for the entire comparable. A living area adjustment of $50 per sq. ft. was made to reflect differences in the living area size. The balance of the adjustments were based on their contributory value in the final reconciliation of the Sales Comparison Approach, all of the comparables were given approximate equal weight.

Indicated Value by Sales Comparison Approach $ 145,000

| Indicated Value by: Sales Comparison Approach $ 145,000 | Cost Approach (if developed) $ | Income Approach (if developed) $ |
|---|---|---|

The subject is a townhouse. Typically, the market will rely on the Sales Comparison Approach. Sufficient market data was available to develop a reasonable and credible opinion of value. The Cost Approach is not applicable for an individual townhouse unit in a townhouse development. The Income Approach would not be considered by the market.
This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☒ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair: No personal property has been included in this valuation.
Based on a visual inspection of the exterior areas of the subject property from at least the street, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 145,000 , as of 01/01/2019 , which is the date of inspection and the effective date of this appraisal.

Serial# 6CE6A285
esign.alamode.com/verify

## Exterior-Only Inspection Residential Appraisal Report

File # 18-12-1457a

18-12-1457a

18-12-1457a

**ADDITIONAL COMMENTS**

I have considered relevant competitive listings/contract offerings in performing this appraisal and any trend indicated by that data is supported by the listing/offering information included in this report. The Hillsborough County Property Appraiser uses a Parcel Id No. and a Folio No. to identify properties. On page 1 of the form, I have provided both numbers. The commercial land use in the neighborhood is situated on the major roads. This does not adversely affect the subject.

**Predominant Value**

The subject's indicated value is below the indicated predominant value in the area but falls within the value range and is not an under-improvement. This does not adversely affect the marketability of the subject.

**Highest and Best Use**

The Highest and Best Use as Vacant is not applicable for a single townhouse in a townhouse development because the approach would have to included common areas that are not part of the subject. The Highest and Best Use as Improved is a continuation of the current use.

### COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)    The Cost Approach is not applicable for an individual townhouse in a townhouse development because the approach would have to include common areas that are not included in the scope of this assignment.

| COST APPROACH | | | | | | |
|---|---|---|---|---|---|---|
| ESTIMATED ☐ REPRODUCTION OR ☐ REPLACEMENT COST NEW | | OPINION OF SITE VALUE | | | ........... | =$ |
| Source of cost data | | DWELLING | | Sq.Ft. @ $ | ........... | =$ |
| Quality rating from cost service | Effective date of cost data | | | Sq.Ft. @ $ | ........... | =$ |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | | | | ........... | =$ |
| | | Garage/Carport | | Sq.Ft. @ $ | ........... | =$ |
| | | Total Estimate of Cost-New | | | ........... | =$ |
| | | Less | Physical | Functional | External | |
| | | Depreciation | | | | =$(         ) |
| | | Depreciated Cost of Improvements | | | ........... | =$ |
| | | "As-is" Value of Site Improvements | | | ........... | =$ |
| Estimated Remaining Economic Life (HUD and VA only) | 52 Years | INDICATED VALUE BY COST APPROACH | | | ........... | = $ |

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

Estimated Monthly Market Rent $ _____ X Gross Rent Multiplier _____ = $ _____ Indicated Value by Income Approach _____

Summary of Income Approach (including support for market rent and GRM)

### PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)? ☐ Yes ☒ No   Unit type(s)   ☐ Detached   ☒ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

| Total number of phases | Total number of units | | Total number of units sold |
|---|---|---|---|
| Total number of units rented | Total number of units for sale | | Data source(s) |

Was the project created by the conversion of existing building(s) into a PUD?   ☐ Yes   ☐ No   If Yes, date of conversion

Does the project contain any multi-dwelling units?   ☐ Yes   ☐ No   Data Source(s)

Are the units, common elements, and recreation facilities complete?   ☐ Yes   ☐ No   If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?   ☐ Yes   ☐ No   If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.   Pool, ingress/egress, and green space.

Serial# 6CE6A285
esign.alamode.com/verify

**Exterior-Only Inspection Residential Appraisal Report**

18-12-1457a
File # 18-12-1457a

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

SCOPE OF WORK: The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a visual inspection of the exterior areas of the subject property from at least the street, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

The appraiser must be able to obtain adequate information about the physical characteristics (including, but not limited to, condition, room count, gross living area, etc.) of the subject property from the exterior-only inspection and reliable public and/or private sources to perform this appraisal. The appraiser should use the same type of data sources that he or she uses for comparable sales such as, but not limited to, multiple listing services, tax and assessment records, prior inspections, appraisal files, information provided by the property owner, etc.

INTENDED USE: The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

INTENDED USER: The intended user of this appraisal report is the lender/client.

DEFINITION OF MARKET VALUE: The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS: The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

3. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

4. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

5. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Freddie Mac Form 2055 March 2005      UAD Version 9/2011      Page 4 of 6      2055 March 2005

Form 2055UAD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Serial# 6CE6A285
esign.alamode.com/verify

**Exterior-Only Inspection Residential Appraisal Report**

18-12-1457a
File # 18-12-1457a

APPRAISER'S CERTIFICATION:   The   Appraiser   certifies   and   agrees   that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this  appraisal  report.

2. I performed a visual inspection of the exterior areas of the subject property from at least the street. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness,  or  structural  integrity  of  the  property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them,  unless  otherwise  indicated  in  this  report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to  the  date  of  sale  of  the  comparable  sale,  unless  otherwise  indicated  in  this  report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property  and  the  comparable  sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable  sources  that  I  believe  to  be  true  and  correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability  of  the  subject  property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements  and  information  in  this  appraisal  report  are  true  and  correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage  loan  application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility  for  it.

Serial# 6CE6A285
esign.alamode.com/verify

**Exterior-Only Inspection Residential Appraisal Report**

18-12-1457a
File # 18-12-1457a

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

SUPERVISORY APPRAISER'S CERTIFICATION:   The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name  Robert K. Baird | Name |
| Company Name  Valucentric, LLC | Company Name |
| Company Address  4590 Ulmerton Road, #204 | Company Address |
| Clearwater, FL 33762 | |
| Telephone Number  813-252-1140 | Telephone Number |
| Email Address  info@valucentric.com | Email Address |
| Date of Signature and Report  01/21/2019 | Date of Signature |
| Effective Date of Appraisal  01/01/2019 | State Certification # |
| State Certification #  Cert Gen RZ2497 | or State License # |
| or State License # | State |
| or Other (describe)  State # | Expiration Date of Certification or License |
| State  FL | |
| Expiration Date of Certification or License  11/30/2020 | SUBJECT PROPERTY |
| ADDRESS OF PROPERTY APPRAISED | ☐ Did not inspect exterior of subject property |
| 4151 Bismarck Palm Dr | ☐ Did inspect exterior of subject property from street |
| Tampa, FL 33610 | Date of Inspection |
| APPRAISED VALUE OF SUBJECT PROPERTY $  145,000 | |
| LENDER/CLIENT | COMPARABLE SALES |
| Name  No AMC | |
| Company Name  Integra Realty Resources | ☐ Did not inspect exterior of comparable sales from street |
| Company Address  9155 South Dadeland Blvd, #1208, Miami, FL | ☐ Did inspect exterior of comparable sales from street |
| 33156 | Date of Inspection |
| Email Address | |

Freddie Mac Form 2055 March 2005          UAD Version 9/2011     Page 6 of 6                                 2055 March 2005

Form 2055UAD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Serial# 6CE6A285
esign.alamode.com/verify

18-12-1457a
File # 18-12-1457a

## Exterior–Only Inspection Residential Appraisal Report

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | | COMPARABLE SALE # 5 | | COMPARABLE SALE # 6 | |
|---|---|---|---|---|---|---|---|
| Address | 4151 Bismarck Palm Dr<br>Tampa, FL 33610 | 4222 Bismarck Palm Dr<br>Tampa, FL 33610 | | | | | |
| Proximity to Subject | | 0.05 miles NW | | | | | |
| Sale Price | $ | | $ 136,000 | | $ | | $ |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 109.68 sq.ft. | | $ sq.ft. | | $ sq.ft. | |
| Data Source(s) | | MLS No. T2912513;DOM 15 | | | | | |
| Verification Source(s) | | Public Records | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | ArmLth | | | | | |
| Concessions | | FHA;0 | | | | | |
| Date of Sale/Time | | s05/18;c11/17 | +4,000 | | | | |
| Location | N;Res; | N;Res; | | | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | | | | |
| Site | 1,168 sf | 1,168 sf | | | | | |
| View | B;Woods; | B;Woods; | | | | | |
| Design (Style) | AT2.00;Townho | AT2.00;Townho | | | | | |
| Quality of Construction | Q3 | Q3 | | | | | |
| Actual Age | 13 | 12 | 0 | | | | |
| Condition | C3 | C3 | | | | | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 6 2 2.1 | 6 2 2.1 | | | | | |
| Gross Living Area | 1,240 sq.ft. | 1,240 sq.ft. | | sq.ft. | | sq.ft. | |
| Basement & Finished | 0sf | 0sf | | | | | |
| Rooms Below Grade | | | | | | | |
| Functional Utility | Typical | Typical | | | | | |
| Heating/Cooling | Central | Central | | | | | |
| Energy Efficient Items | Typical | Typical | | | | | |
| Garage/Carport | 1ga1dw | 1ga1dw | | | | | |
| Porch/Patio/Deck | Screen porch | Screen porch | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| Net Adjustment (Total) | | ☒ + ☐ - | $ 4,000 | ☐ + ☐ - | $ | ☐ + ☐ - | $ |
| Adjusted Sale Price | | Net Adj. 2.9 % | | Net Adj. % | | Net Adj. % | |
| of Comparables | | Gross Adj. 2.9 % | $ 140,000 | Gross Adj. % | $ | Gross Adj. % | $ |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 4 | COMPARABLE SALE # 5 | COMPARABLE SALE # 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | 04/28/2016 | | |
| Price of Prior Sale/Transfer | | $111,500 | | |
| Data Source(s) | Corelogic | Corelogic | | |
| Effective Date of Data Source(s) | 01/01/2019 | 01/01/2019 | | |

Analysis of prior sale or transfer history of the subject property and comparable sales    No prior sales of the subject in the last three years.

Analysis/Comments

Freddie Mac Form 2055 March 2005    UAD Version 9/2011    Fannie Mae Form 2055 March 2005

Serial# 6CE6A285
esign.alamode.com/verify

## Additional Commentary Addendum

File No. 18-12-1457a

| Client | Integra Realty Resources | | | | | | |
|--------|--------------------------|--|--|--|--|--|--|
| Property Address | 4151 Bismarck Palm Dr | | | | | | |
| City | Tampa | County | Hillsborough | | State | FL | Zip Code | 33610 |
| Client | Integra Realty Resources | | | | | | |

• **SALES COMPARISON ANALYSIS - Comparable #1 Size varies from subject by more than 25%. (Var = 36.45%)**

• **SALES COMPARISON ANALYSIS - Comparable #1 Age varies from subject by more than 30%. (Var = -38.46%)**

• **SALES COMPARISON ANALYSIS - Comparable #1 Largest Adjustment exceeds 10% of Comp Sale Price.**

• **SALES COMPARISON ANALYSIS - Comparable #1 Net Adjustment exceeds 15% of Comp Sale Price.**

• **SALES COMPARISON ANALYSIS - Comparable #3 Size varies from subject by more than 25%. (Var = 36.45%)**

• **SALES COMPARISON ANALYSIS - Comparable #3 Largest Adjustment exceeds 10% of Comp Sale Price.**

**The above does not affect the credibility of the Sales Comparison Approach.**

Serial# 6CE6A285
alamode.com/verify

Case 8:19-cv-02409-WFC Document 201-9 Entered on FLSD Docket 08/18/2023 Page 26 of
Case 2:09-md-02047-EEF-MBN Document 22363-58 Filed 11/19/19 Page 27 of 106
18-12-1457a

## Market Conditions Addendum to the Appraisal Report

File No. 18-12-1457a

The purpose of this addendum is to provide the lender/client with a clear and accurate understanding of the market trends and conditions prevalent in the subject neighborhood. This is a required addendum for all appraisal reports with an effective date on or after April 1, 2009.

| Property Address | 4151 Bismarck Palm Dr | City Tampa | State FL | ZIP Code 33610 |
|---|---|---|---|---|

| Borrower | N/A |
|---|---|

**Instructions:** The appraiser must use the information required on this form as the basis for his/her conclusions, and must provide support for those conclusions, regarding housing trends and overall market conditions as reported in the Neighborhood section of the appraisal report form. The appraiser must fill in all the information to the extent it is available and reliable and must provide analysis as indicated below. If any required data is unavailable or is considered unreliable, the appraiser must provide an explanation. It is recognized that not all data sources will be able to provide data for the shaded areas below; if it is available, however, the appraiser must include the data in the analysis. If data sources provide the required information as an average instead of the median, the appraiser should report the available figure and identify it as an average. Sales and listings must be properties that compete with the subject property, determined by applying the criteria that would be used by a prospective buyer of the subject property. The appraiser must explain any anomalies in the data, such as seasonal markets, new construction, foreclosures, etc.

| Inventory Analysis | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | 36 | 18 | 22 | ☐ Increasing | ☐ Stable | ☒ Declining |
| Absorption Rate (Total Sales/Months) | 6 | 6 | 7.33 | ☒ Increasing | ☐ Stable | ☐ Declining |
| Total # of Comparable Active Listings | 3 | 21 | 14 | ☐ Declining | ☐ Stable | ☒ Increasing |
| Months of Housing Supply (Total Listings/Ab.Rate) | 0.5 | 3.5 | 1.91 | ☐ Declining | ☐ Stable | ☒ Increasing |
| **Median Sale & List Price, DOM, Sale/List %** | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
| Median Comparable Sale Price | $142,000 | $152,450 | $151,500 | ☒ Increasing | ☐ Stable | ☐ Declining |
| Median Comparable Sales Days on Market | 8 | 11 | 31 | ☐ Declining | ☐ Stable | ☒ Increasing |
| Median Comparable List Price | $189,750 | $172,620 | $172,620 | ☐ Increasing | ☐ Stable | ☒ Declining |
| Median Comparable Listings Days on Market | 67 | 34 | 126 | ☐ Declining | ☐ Stable | ☒ Increasing |
| Median Sale Price as % of List Price | 98.18 | 97.72 | 98.40 | ☒ Increasing | ☐ Stable | ☐ Declining |
| Seller (developer, builder, etc.)paid financial assistance prevalent? | ☐ Yes | ☐ No | | ☐ Declining | ☐ Stable | ☒ Increasing |

Explain in detail the seller concessions trends for the past 12 months (e.g., seller contributions increased from 3% to 5%, increasing use of buydowns, closing costs, condo fees, options, etc.). The MFR MLS indicates there were 76 closed sales during the past 12 months and 28 of those sales contained seller concessions which is 37% of the total transactions in this market area. Prior Months 7-12: 36 Sales; 9 with concessions; 25% of sales for this period. 4-6: 18 Sales; 9 with concessions; 50% of sales for this period. 0-3: 22 Sales; 10 with concessions; 45% of sales for this period. The concessions ranged between $300 and $9,000. The median concession amount is $4,425.

Are foreclosure sales (REO sales) a factor in the market? ☐ Yes ☒ No If yes, explain (including the trends in listings and sales of foreclosed properties).
The MFR MLS indicates there were 76 closed sales during the past 12 months and 6 of those sales were either foreclosures or short sales which is 8% of the total transactions in this market area. Prior Months 7-12: 36 Sales; 3 foreclosures or short sales; 8% of sales for this period. 4-6: 18 Sales; 2 foreclosures or short sales; 11% of sales for this period. 0-3: 22 Sales; 1 foreclosures or short sales; 5% of sales for this period.

Cite data sources for above information. The MFR MLS was the data source used to complete the Market Conditions Addendum.

Summarize the above information as support for your conclusions in the Neighborhood section of the appraisal report form. If you used any additional information, such as an analysis of pending sales and/or expired and withdrawn listings, to formulate your conclusions, provide both an explanation and support for your conclusions.
According to the S&P Corelogic Case-Shiller price index for the Tampa Bay area (as of October 2018 and published December 2018) the median home price in October 2017 was $200,410 and it increased 6.41% to $213,260 by October 2018. Over the prior year prices have increased 0.53% per month. Furthermore, they indicated that home prices have appreciated 58.06%, since October 2010. So this index indicates that overall homes prices are appreciating in the Tampa Bay area. Considering all of the market data, on page 1 of the form I have indicated increasing property values. As of December 2018 the 30-year fixed interest rate was 4.75 and the 15-year fixed was 4.83%. In November 2018, Fannie Mae's Home Purchase Sentiment Index increased slightly by 0.5 points to 86.2. The increase can be attributed primarily to an increase in the net share of Americans who reported significantly higher income, which hit a new survey high after jumping 5 percentage points. According to NAR, existing home sales nationally increased 1.9% in November 2018.

| If the subject is a unit in a condominium or cooperative project, complete the following: | | Project Name: | | | | |
|---|---|---|---|---|---|---|
| Subject Project Data | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
| Total # of Comparable Sales (Settled) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Absorption Rate (Total Sales/Months) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Total # of Active Comparable Listings | | | | ☐ Declining | ☐ Stable | ☐ Increasing |
| Months of Unit Supply (Total Listings/Ab.Rate) | | | | ☐ Declining | ☐ Stable | ☐ Increasing |

Are foreclosure sales (REO sales) a factor in the project? ☐ Yes ☐ No If yes, indicate the number of REO listings and explain the trends in listings and sales of foreclosed properties.

Summarize the above trends and address the impact on the subject unit and project.

esign.alamode.com/verify Serial:6CE6A285

| Signature | | Signature | |
|---|---|---|---|
| Appraiser Name | Robert K. Baird | Supervisory Appraiser Name | |
| Company Name | Valucentric, LLC | Company Name | |
| Company Address | 4590 Ulmerton Road, #204, Clearwater, FL 33762 | Company Address | |
| State License/Certification # | Cert Gen RZ2497 State FL | State License/Certification # | State |
| Email Address | info@valucentric.com | Email Address | |

Form 1004MC2 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Serial# 6CE6A285
esign.alamode.com/verify

## SINGLE FAMILY COMPARABLE RENT SCHEDULE

This form is intended to provide the appraiser with a familiar format to estimate the market rent of the subject property. Adjustments should be made only for items of significant difference between the comparables and the subject property.

| ITEM | SUBJECT | COMPARABLE NO. 1 | | COMPARABLE NO. 2 | | COMPARABLE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 4151 Bismarck Palm Dr Tampa, FL 33610 | 9811 Blue Palm Way Tampa, FL 33610 | | 4107 Key Thatch Dr Tampa, FL 33610 | | 4241 Key Thatch Dr Tampa, FL 33610 | |
| Proximity to Subject | | 0.14 miles S | | 0.12 miles SE | | 0.06 miles NE | |
| Date Lease Begins Date Lease Expires | | 8/2018 7/2019 | | 7/2018 6/2019 | | 7/2018 6/2019 | |
| Monthly Rental | If Currently Rented: $ | $ 1,325 | | $ 1,250 | | $ 1,195 | |
| Less: Utilities Furniture | $ | $ 0 0 | | $ 0 0 | | $ 0 0 | |
| Adjusted Monthly Rent | | $ 1,325 | | $ 1,250 | | $ 1,195 | |
| Data Source | Inspection Public records | MLS T3125877 Public records | | MLS T3110075 Public records | | MLS T3113790 Public records | |
| RENT ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. |
| Rent Concessions | | None | | None | | None | |
| Location/View | N;Res; B;Woods; | Average Greenspace | | Average Greenspace | | Average Greenspace | |
| Design and Appeal | AT2.00;Townhou | Townhouse | | Townhouse | | Townhouse | |
| Age/Condition | 13 C3 | 13 Average | | 13 Average | | 13 Below Average | +50 |
| Above Grade Room Count Gross Living Area | Total 6 Bdrms 2 Baths 2.1 1,240 Sq. Ft. | Total 7 Bdrms 3 Baths 2.1 1,692 Sq. Ft. | -25 -25 | Total 6 Bdrms 2 Baths 2.1 1,240 Sq. Ft. | | Total 6 Bdrms 2 Baths 2.1 1,240 Sq. Ft. | |
| Other (e.g., basement, etc ) | 0sf | 0sf | | 0sf | | 0sf | |
| Other: | 1-garage | 2-garage | -25 | 1-garage | | 1-garage | |
| Net Adj. (total) | | ☐ + ☒ − $ | -75 | ☐ + ☐ − $ | | ☒ + ☐ − $ | 50 |
| Indicated Monthly Market Rent | | $ | 1,250 | $ | 1,250 | $ | 1,245 |

Comments on market data, including the range of rents for single family properties, an estimate of vacancy for single family rental properties, the general trend of rents and vacancy, and support for the above adjustments. (Rent concessions should be adjusted to the market, not to the subject property.)   All of the rent comparables are located in the same development as the subject. The analysis include a superior comparable (No. 1) and two similar models as the subject.

Final Reconciliation of Market Rent:   After adjustments, the comparables range from $1,245 to $1,250 per month. Overall, a reasonable rent estimate would be $1,250 per month.

🔒 esign.alamode.com/verify   Serial 6CE6A285

I (WE) ESTIMATE THE MONTHLY MARKET RENT OF THE SUBJECT AS OF   01/01/2019   TO BE $ 1,250

Appraiser(s) SIGNATURE _____   Review Appraiser SIGNATURE _____
(if applicable)

NAME Robert K. Baird _____   NAME _____

Freddie Mac Form 1000  (8/88) [Y2K]   Fannie Mae Form 1007  (8/88)

Robert Baird

Form 2055UAD.(AR) - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Serial# 6CE6A285
esign.alamode.com/verify

## Comparables Photo Page

| Client | Integra Realty Resources | | | | |
|---|---|---|---|---|---|
| Property Address | 4151 Bismarck Palm Dr | | | | |
| City | Tampa | County Hillsborough | | State FL | Zip Code 33610 |
| Client | Integra Realty Resources | | | | |



### Comparable 1

| | |
|---|---|
| 4044 Bismarck Palm Dr | |
| Prox. to Subject | 0.11 miles SW |
| Sale Price | 167,500 |
| Gross Living Area | 1,692 |
| Total Rooms | 7 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.1 |
| Location | N;Res; |
| View | B;Wtr; |
| Site | 1,533 sf |
| Quality | Q3 |
| Age | 8 |



### Comparable 2

| | |
|---|---|
| 4211 Bismarck Palm Dr | |
| Prox. to Subject | 0.02 miles NE |
| Sale Price | 142,000 |
| Gross Living Area | 1,240 |
| Total Rooms | 6 |
| Total Bedrooms | 2 |
| Total Bathrooms | 2.1 |
| Location | N;Res; |
| View | B;Woods; |
| Site | 1,168 sf |
| Quality | Q3 |
| Age | 12 |



### Comparable 3

| | |
|---|---|
| 9812 Fan Palm Way | |
| Prox. to Subject | 0.08 miles N |
| Sale Price | 168,000 |
| Gross Living Area | 1,692 |
| Total Rooms | 7 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.1 |
| Location | N;Res; |
| View | N;Res; |
| Site | 1,533 sf |
| Quality | Q3 |
| Age | 12 |

### Comparables 3 Photo Page

| Client | Integra Realty Resources | | | | |
|---|---|---|---|---|---|
| Property Address | 4151 Bismarck Palm Dr | | | | |
| City | Tampa | County Hillsborough | | State FL | Zip Code 33610 |
| Client | Integra Realty Resources | | | | |



**Comparable 4**

4222 Bismarck Palm Dr

| | |
|---|---|
| Prox. to Subject | 0.05 miles NW |
| Sale Price | 136,000 |
| Gross Living Area | 1,240 |
| Total Rooms | 6 |
| Total Bedrooms | 2 |
| Total Bathrooms | 2.1 |
| Location | N;Res; |
| View | B;Woods; |
| Site | 1,168 sf |
| Quality | Q3 |
| Age | 12 |



**Comparable 5**

| | |
|---|---|
| Prox. to Subject | |
| Sale Price | |
| Gross Living Area | |
| Total Rooms | |
| Total Bedrooms | |
| Total Bathrooms | |
| Location | |
| View | |
| Site | |
| Quality | |
| Age | |



**Comparable 6**

| | |
|---|---|
| Prox. to Subject | |
| Sale Price | |
| Gross Living Area | |
| Total Rooms | |
| Total Bedrooms | |
| Total Bathrooms | |
| Location | |
| View | |
| Site | |
| Quality | |
| Age | |

Serial# 6CE6A285
esign.alamode.com/verify

**Comparables Location Map**

| Client | Integra Realty Resources | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 4151 Bismarck Palm Dr | | | | | | |
| City | Tampa | County | Hillsborough | | State | FL | Zip Code | 33610 |
| Client | Integra Realty Resources | | | | | | |



**Rent Comparables Photos**

| Client | Integra Realty Resources | | | | |
|---|---|---|---|---|---|
| Property Address | 4151 Bismarck Palm Dr | | | | |
| City | Tampa | County Hillsborough | State FL | Zip Code 33610 | |
| Client | Integra Realty Resources | | | | |



### Rent Comparable 1

Prox. to Subject
Sale Price
Gross Living Area
Total Rooms
Total Bedrooms
Total Bathrooms
Location
View
Site
Quality
Age



### Rent Comparable 2

Prox. to Subject
Sale Price
Gross Living Area
Total Rooms
Total Bedrooms
Total Bathrooms
Location
View
Site
Quality
Age



### Rent Comparable 3

Prox. to Subject
Sale Price
Gross Living Area
Total Rooms
Total Bedrooms
Total Bathrooms
Location
View
Site
Quality
Age

Serial# 6CE6A285
esign.alamode.com/verify

## Subject Photo Page

| Client | Integra Realty Resources | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 4151 Bismarck Palm Dr | | | | | | |
| City | Tampa | County | Hillsborough | State | FL | Zip Code | 33610 |
| Client | Integra Realty Resources | | | | | | |



### Subject Front

4151 Bismarck Palm Dr

| | |
|---|---|
| Sales Price | |
| Gross Living Area | 1,240 |
| Total Rooms | 6 |
| Total Bedrooms | 2 |
| Total Bathrooms | 2.1 |
| Location | N;Res; |
| View | B;Woods; |
| Site | 1,168 sf |
| Quality | Q3 |
| Age | 13 |



### Subject Rear



### Subject Street



Serial# 6CE6A285
esign.alamode.com/verify

**Scope of Work**

File No. 18-12-1457a

| Client | Integra Realty Resources | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 4151 Bismarck Palm Dr | | | | | |
| City | Tampa | County | Hillsborough | State | FL | Zip Code 33610 |
| Client | Integra Realty Resources | | | | | |

The scope of work applied to this specific appraisal assignment is summarized below.

In the preparation of this report, the appraisal problem was identified; that being the client, intended use, intended users, type and definition of value opinion, effective date of the opinion and conclusion, subject of the assignment and relevant characteristics about that subject, and the assignment conditions. A solution to the appraisal problem (scope of work) was planned, and then implemented so as to arrive at a credible result. The appraiser(s) of this report have the knowledge and experience to complete the assignment competently.

The scope of work applied in this assignment is summarized as:

Viewed the general neighborhood of the subject property.
Inspected the exterior of the subject property from the street.
Gathered information about relevant characteristics of the property.
Noted the characteristics of the property relevant to this assignment.
Analyzed the highest and best use of the property to come to a conclusion.
Market data researched included market trends, rent comparables, and comparable improved sales.
Comparables were researched from varied sources which included the appraisal firm's own database, the public records, and national data services.
Analyzed the data collected and applied it to the Sales Comparison approach to value.
The client has requested a rental analysis, however, an Income Approach was not developed.

The scope of work did not include the following:
I was unable to inspect the interior of the improvements.

The subject property comprises a townhouse. As such the Cost Approach is not applicable because it would have to include common areas that are outside the scope of the assignment.

The client has requested a rent analysis. However, townhomes are typically not purchased for their anticipated income stream. Thus, the market does not consider the Income Approach applicable.

**Extraordinary Assumption**

Per USPAP 2018-2019 - An extraordinary assumption is defined as: "as assignment-specific assumption as of the effective date regarding uncertain information used in the analysis which, if found to be false, could alter the appraiser's opinions or conclusions".

I have only inspected the subject property from the street and have not performed a thorough interior and exterior inspection. The opinion of value is based on the subject property being in average condition as of the effective date.

**Hypothetical Condition**

Per USPAP 2018-2019 - A hypothetical condition is defined as: "a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis.2"

The opinion of value is based on the Hypothetical Condition the value of the subject property is not affected by any detrimental conditions including Chinese drywall.

Serial# 6CE6A285
esign.alamode.com/verify

**Subject Aerial Photograph**



Serial# 6CE6A285
esign.alamode.com/verify

Case 2:09-md-02047-EEF-MBN Document 22363-59 Filed 11/19/19 Page 36 of 106
Case 4:11-cv-22408-MCC Document 281-9 Entered on FLSD Docket 09/18/2015 Page 85 of 93
**Flood Map**



**Property Appraiser Page 1**



Bob Henriquez
Hillsborough County Property Appraiser

https://www.hcpafl.org/
15th Floor County Ctr.
601 E. Kennedy Blvd, Tampa, Florida 33602-4932
Ph: (813) 272-6100

## Folio: 065456-1062



### Owner Information

| | |
|---|---|
| Owner Name | CHATMON LILLIAN E |
| Mailing Address | 4151 BISMARCK PALM DR<br>TAMPA, FL 33610-9038 |
| Site Address | 4151 BISMARCK PALM DR, TAMPA |
| PIN | U-06-29-20-83E-000026-00003.0 |
| Folio | 065456-1062 |
| Prior PIN | U-06-29-20-ZZZ-000002-39680.0 |
| Prior Folio | 065350-0000 |
| Tax District | U - UNINCORPORATED |
| Property Use | 0106 TOWNHOUSE/VILLA |
| Plat Book/Page | 104/53 |
| Neighborhood | 218002.00 | By-Pass Canal Area W of I-75 & E of 301 |
| Subdivision | 83E | TOWNHOMES AT SABAL POINTE |

### Value Summary

| Taxing District | Market Value | Assessed Value | Exemptions | Taxable Value |
|---|---|---|---|---|
| County | $10,661 | $8,818 | $0 | $8,818 |
| Public Schools | $10,661 | $10,661 | $0 | $10,661 |
| Municipal | $10,661 | $8,818 | $0 | $8,818 |
| Other Districts | $10,661 | $8,818 | $0 | $8,818 |

Note: This section shows Market Value, Assessed Value, Exemptions, and Taxable Value for taxing districts. Because of changes in Florida Law, it is possible to have different assessed and taxable values on the same property. For example, the additional $25,000 Homestead Exemption and the non-homestead CAP do not apply to public schools, and the Low Income Senior Exemption only applies to countywide and certain municipal millages.

### Sales Information

| Book | Page | Month | Year | Type Inst | Qualified or Unqualified | Vacant or Improved | Price |
|---|---|---|---|---|---|---|---|
| 17635 | 1068 | 03 | 2007 | WD | Qualified | Improved | $169,900 |
| 17300 | 0097 | 12 | 2006 | WD | Unqualified | Improved | $173,400 |
| 14386 | 1658 | 11 | 2004 | WD | Unqualified | Vacant | $140,300 |

Page 1 - 1/1/2019 7:58:58 PM

Serial# 6CE6A285
esign.alamode.com/verify

Case 2:09-md-02047-EEF-MBN Document 22363-59 Filed 11/19/19 Page 38 of 106
Case 1:11-cv-22408-MGC Document 291-9 Entered on FLSD Docket 08/13/2019 Page 37 of 73
Property Appraiser Page 2

## Building Information

**Building 1**

| | |
|---|---|
| Type | 24 | TOWNHOUSE |
| Year Built | 2006 |



### Building 1 Construction Details

| Element | Code | Construction Detail |
|---|---|---|
| Class | C | Masonry or Concrete Frame |
| Exterior Wall | 7 | Masonry Frm: Stucco |
| Exterior Wall | 6 | Wd/Mtl Frm: Stucco |
| Roof Structure | 3 | Gable or Hip |
| Roof Cover | 3 | Asphalt/Comp. Shingle |
| Interior Walls | 5 | Drywall |
| Interior Flooring | 8 | Carpet |
| Interior Flooring | 7 | Tile |
| Heat/AC | 2 | Central |
| Condition | 3 | Average |
| Bathrooms | 2.5 | |
| Bedrooms | 2.0 | |
| Stories | 2.0 | |
| Units | 1.0 | |



### Building 1 subarea

| Area Type | Gross Area | Heated Area | Depreciated Value |
|---|---|---|---|
| FOP | 112 | | $133 |
| FUS | 112 | 112 | $481 |
| TWO | 1,104 | 1,104 | $4,992 |
| FOP | 24 | | $29 |
| FUS | 24 | 24 | $105 |
| FGR | 276 | | $657 |
| **Totals** | **1,652** | **1,240** | **$6,397** |

## Extra Features

| OB/XF Code | Description | Building | Year On Roll | Length | Width | Units | Value |
|---|---|---|---|---|---|---|---|
| 0400 | SCREEN ENCLOSURE | 1 | 2007 | 0 | 0 | 144.00 | $449 |

## Land Information - Total Acreage: 0.03

| Use Code | Description | Zone | Front | Depth | Land Type | Total Land Units | Land Value |
|---|---|---|---|---|---|---|---|
| 0040 | CONDO/TOWNHOUSE | PD | 0.0 | 0.0 | UT | UNITS | 1.00 | $100 |

## Legal Description

TOWNHOMES AT SABAL POINTE LOT 3 BLOCK 26

Form SCNLGL - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Serial# 6CE6A285
esign.alamode.com/verify

Case 2:09-md-02047-EEF-MBN Document 22363-59 Filed 11/19/19 Page 39 of 106
Case 4:11-cv-22408-MGC Document 291-9 Entered on FLSD Docket 08/13/2015 Page 88 of
License
59



RICK SCOTT, GOVERNOR                                        JONATHAN ZACHEM, SECRETARY



### STATE OF FLORIDA
### DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION

#### FLORIDA REAL ESTATE APPRAISAL BD

THE CERTIFIED GENERAL APPRAISER HEREIN IS CERTIFIED UNDER THE
PROVISIONS OF CHAPTER 475, FLORIDA STATUTES

## BAIRD, ROBERT KEITH



1423 S HOWARD AVE
TAMPA          FL 33606

LICENSE NUMBER: RZ2497

EXPIRATION DATE: NOVEMBER 30, 2020

Always verify licenses online at MyFloridaLicense.com

Do not alter this document in any form.

This is your license. It is unlawful for anyone other than the licensee to use this document.

Case 1:11-cv-22408-MGC Document 201-9 Entered on FLSD Docket 08/13/2019 Page 39 of
Case 2:09-md-02047-EEF-MBN Document 22363-59 Filed 11/19/19 Page 40 of 106
E 380



**LIA Administrators & Insurance Services**

August 28, 2018

RE:   Aspen Specialty Insurance Company
      (A.M. Best Rated A (Excellent), Financial Size Class XV.
      Policy # LR0092M18 Customer ID: 600284

For Clients of
VALUCENTRIC, LLC
1003 Mt. Hermon Road, Suite 201
Salisbury, MD 21804

The purpose of this letter is to advise you of the professional liability (E&O) insurance coverage
of VALUCENTRIC, LLC and staff appraisers performing work on its behalf.

VALUCENTRIC, LLC is the named insured under the professional liability insurance policy
identified above. This policy provides the following coverage, subject to its terms and
conditions:

| Limit of Liability (Each Claim/Aggregate) | Deductible | Effective Date | Expiration Date |
|---|---|---|---|
| $1,000,000/$2,000,000 | $10,000 | 09/19/2018 | 09/19/2019 |

Under the policy, any appraiser who "is, was, or hereafter becomes" a staff appraiser or other
employee/contractor for VALUCENTRIC, LLC is also an insured under the policy while acting
on behalf of VALUCENTRIC, LLC.   The definition of insured includes the following staff
appraisers of VALUCENTRIC, LLC:

(Sample)

If you have any questions concerning the insurance coverage arranged by our company, please
feel free to contact me directly.

Sincerely,

*Susan Lomeli*

Susan Lomeli
LIA Administrators & Insurance Services
800.334.0652 Ext.139
Susan@Liability.com

| Client | Integra Realty Resources | | | | File No. 18-12-1457a |
|---|---|---|---|---|---|
| Property Address | 4151 Bismarck Palm Dr | | | | |
| City | Tampa | County | Hillsborough | State FL | Zip Code 33610 |
| Client | Integra Realty Resources | | | | |

## APPRAISAL AND REPORT IDENTIFICATION

This Report is one of the following types:

[X] Appraisal Report   (A written report prepared under Standards Rule 2-2(a), pursuant to the Scope of Work, as disclosed elsewhere in this report.)

[ ] Restricted Appraisal Report   (A written report prepared under Standards Rule 2-2(b), pursuant to the Scope of Work, as disclosed elsewhere in this report, restricted to the stated intended use by the specified client or intended user.)

### Comments on Standards Rule 2-3

I certify that, to the best of my knowledge and belief:
- The statements of fact contained in this report are true and correct.
- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.
- Unless otherwise indicated, I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.
- Unless otherwise indicated, I have performed no services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.
- I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.
- My engagement in this assignment was not contingent upon developing or reporting predetermined results.
- My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice that were in effect at the time this report was prepared.
- Unless otherwise indicated, I have made a personal inspection of the property that is the subject of this report.
- Unless otherwise indicated, no one provided significant real property appraisal assistance to the person(s) signing this certification (if there are exceptions, the name of each individual providing significant real property appraisal assistance is stated elsewhere in this report).

### Reasonable Exposure Time   (USPAP defines Exposure Time as the estimated length of time that the property interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of the appraisal.)
My Opinion of Reasonable Exposure Time for the subject property at the market value stated in this report is:    3 to 6 months

### Comments on Appraisal and Report Identification
Note any USPAP-related issues requiring disclosure and any state mandated requirements:

In the past three years, from the date of this report, we have not performed an appraisal or any other services for the subject.

I certify, as the appraiser, that I have completed all aspects of this valuation, including reconciling my opinion of value, free of influence from the client, client's representatives, borrower, or any other party to the transaction.

As of the date of this report, I, (Robert K. Baird) have completed the Standards and Ethics Education Requirement of the Appraisal Institute for associate members.

GEOGRAPHIC COMPETENCE - In accordance with Certification 11, the appraiser further attest to my competence for the market area of this report. The location of the subject property is within an area regularly serviced within my appraisal practice and I utilize the MRED MLS, Realist and other data sources specific to this market area.

APPRAISER COMPETENCY

An appraiser must determine prior to accepting the assignment that he or she can perform the assignment competently. Competency requires:

1. The ability to properly identify the problem to be addressed; and

2. The knowledge and experience to complete the assignment competently; and

3. Recognition of, and compliance with, laws and regulations that apply to the appraiser or to the assignment.

I am competent to perform this assignment based on my state appraiser license and familiarity with this type of property in the subject market area.

I performed this appraisal in accordance with ... Recovery and Enforcement Act of 1989, (12 U.S.C.3331 et seq.) and any implementing regulations

| APPRAISER: | SUPERVISORY or CO-APPRAISER (if applicable): |
|---|---|
| Signature: | Signature: |
| Name: Robert K. Baird | Name: |
| 4590 Ulmerton Rd #201 Clearwater, FL 33762 | |
| State Certification #: Cert Gen RZ2497 | State Certification #: |
| or State License #: | or State License #: |
| State: FL   Expiration Date of Certification or License: 11/30/2020 | State:   Expiration Date of Certification or License: |
| Date of Signature and Report: 01/21/2019 | Date of Signature: |
| Effective Date of Appraisal: 01/01/2019 | |
| Inspection of Subject: [ ] None [ ] Interior and Exterior [X] Exterior-Only | Inspection of Subject: [ ] None [ ] Inter... [ ] Exterior-Only |
| Date of Inspection (if applicable): 01/01/2019 | Date of Inspection (if applicable): |

Form ID14E - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

esign.alamode.com/verify   Serial# 6CE6A285

Case 2:09-md-02047-EEF-MBN Document 22363-59 Filed 11/19/19 Page 42 of 106
Case 4:11-cv-22409-WSC Document 281-9 Entered on FLSD Docket 09/13/2018 Page 24 of 31
File No. 18-12-1457a   Page # 24 of 31

| Client: | Integra Realty Resources | Client File #: | 18-12-1457 |
| Subject Property: | 4151 Bismarck Palm Dr, Tampa, FL 33610 | Appraisal File #: | 18-12-1457a |

## STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS

This appraisal is subject to the following assumptions and limiting conditions:

- This report is prepared using forms developed and copyrighted by the Appraisal Institute. However, the content, analyses, and opinions set forth in this report are the sole product of the appraiser. The Appraisal Institute is not liable for any of the content, analyses, or opinions set forth herein.

- No responsibility is assumed for matters legal in character or nature. No opinion is rendered as to title, which is assumed to be good and marketable. All existing liens, encumbrances, and assessments have been disregarded, unless otherwise noted, and the property is appraised as though free and clear, having responsible ownership and competent management.

- I have examined the property described herein exclusively for the purposes of identification and description of the real property. The objective of our data collection is to develop an opinion of the highest and best use of the subject property and make meaningful comparisons in the valuation of the property. The appraiser's observations and reporting of the subject improvements are for the appraisal process and valuation purposes only and should not be considered as a warranty of any component of the property. This appraisal assumes (unless otherwise specifically stated) that the subject is structurally sound and all components are in working condition.

- I will not be required to give testimony or appear in court because of having made an appraisal of the property in question, unless specific arrangements to do so have been made in advance, or as otherwise required by law.

- I have noted in this appraisal report any significant adverse conditions (such as needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) discovered during the data collection process in performing the appraisal. Unless otherwise stated in this appraisal report, I have no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and have assumed that there are no such conditions and make no guarantees or warranties, express or implied. I will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because I am not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable public and/or private sources that I believe to be true and correct.

- I will not disclose the contents of this appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice, and/or applicable federal, state or local laws.

- The Client is the party or parties who engage an appraiser (by employment contract) in a specific assignment. A party receiving a copy of this report from the client does not, as a consequence, become a party to the appraiser-client relationship. Any person who receives a copy of this appraisal report as a consequence of disclosure requirements that apply to an appraiser's client, does not become an intended user of this report unless the client specifically identified them at the time of the assignment. The appraiser's written consent and approval must be obtained before this appraisal report can be conveyed to anyone to the public through advertising, public relations, news, sales, or other media.

- If this valuation conclusion is subject to satisfactory completion, repairs, or alterations, it is assumed that the improvements will be completed competently and without significant deviation.

## VALUE DEFINITION

| ☒ Market Value Definition (below) | ☐ Alternate Value Definition (attached) |

MARKET VALUE is defined as the most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:

1. buyer and seller are typically motivated;

2. both parties are well informed or well advised and acting in what they consider their own best interests;

3. a reasonable time is allowed for exposure in the open market;

4. payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and

5. the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale.

Source: The Dictionary of Real Estate Appraisal, 5th ed., Appraisal Institute

* NOTICE:   The Appraisal Institute publishes this form for use by appraisers where the appraiser deems use of the form appropriate. Depending on the assignment, the appraiser may need to provide additional data, analysis and work product not called for in this form. The Appraisal Institute plays no role in completing the form for the data, analysis or any other work product provided by the individual appraiser(s).
AI Reports® AI-900.04 Certification, Assumptions and Limiting Conditions      © Appraisal Institute 2013, All Rights Reserved      January 2013

Form AI9004 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Serial# 6CE6A285
esign.alamode.com/verify

Case 2:09-md-02047-EEF-MBN Document 22363-59 Filed 11/19/19 Page 43 of 106
Case 8:11-cv-22409-WGC Document 281-9 Entered on FLSD Docket 03/13/2019 Page 25 of 31
File No. 18-12-1457 Page # 25 of 31

| Client: | Integra Realty Resources | Client File #: | 18-12-1457 |
|---|---|---|---|
| Subject Property: | 4151 Bismarck Palm Dr, Tampa, FL 33610 | Appraisal File #: | 18-12-1457a |

## APPRAISER CERTIFICATION

I certify that, to the best of my knowledge and belief:

- The statements of fact contained in this report are true and correct.
- The reported analysis, opinions, and conclusions are limited only by the report assumptions and limiting conditions, and are my personal, unbiased professional analysis, opinions, and conclusions.
- I have no present (unless specified below) or prospective interest in the property that is the subject of this report, and I have no (unless specified below) personal interest with respect to the parties involved.
- I have no bias with respect to any property that is the subject of this report or to the parties involved with this assignment.
- My engagement in this assignment was not contingent upon the developing or reporting predetermined results.
- My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
- My analysis, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.
- Individuals who have provided significant real property appraisal assistance are named below. The specific tasks performed by those named are outlined in the Scope of Work section of this report.

☒ None    ☐ Name(s)    N/A

As previously identified in the Scope of Work section of this report, the signer(s) of this report certify to the inspection of the property that is the subject of this report as follows:

Property inspected by Appraiser         ☐ Yes  ☐ No

Property inspected by Co-Appraiser      ☐ Yes  ☐ No

- Services provided, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment:    ☒ None   ☐ Specify services provided:

## ADDITIONAL CERTIFICATION FOR APPRAISAL INSTITUTE MEMBERS, CANDIDATES AND PRACTICING AFFILIATES

Appraisal Institute Designated Member, Candidate for Designation, or Practicing Affiliate Certify:

- The reported analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the requirements of the Code of Professional Ethics and the Standards of Professional Appraisal Practice of the Appraisal Institute, which include the Uniform Standards of Professional Appraisal Practice.
- The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

| - I am a Candidate for Designation in the Appraisal Institute. As of the date of this report, I have completed the Standard and Ethics Education Requirements for Candidates of the Appraisal Institute. | ▪ |
|---|---|

esign.alamode.com/verify    Serial# 6CE6A285

## APPRAISERS SIGNATURES

| APPRAISER: | CO-APPRAISER: |
|---|---|
| Signature | Signature |
| Name   Robert K. Baird | Name |
| Report Date   01/21/2019 | Report Date |
| Trainee ☐  Licensed ☐  Certified Residential ☒  Certified General ☐ | Trainee ☐  Licensed ☐  Certified Residential ☐  Certified General ☐ |
| License #   Cert Gen RZ2497          State  FL | License #          State |
| Expiration Date   11/30/2020 | Expiration Date |

* NOTICE: The Appraisal Institute publishes this form for use by appraisers where the appraiser deems use of the form appropriate. Depending on the assignment, the appraiser may need to provide additional data, analysis and work product not called for in this form. The Appraisal Institute plays no role in completing the form, responsibility for the data, analysis or any other work product provided by the individual appraiser(s).

AI Reports® AI-900.04 Certification, Assumptions and Limiting Conditions          © Appraisal Institute 2013, All Rights Reserved          January 2013

Serial# 6CE6A285
esign.alamode.com/verify

Form AI9004 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

## Supplemental Addendum

File No. 18-12-1457a

| Client | Integra Realty Resources | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 4151 Bismarck Palm Dr | | | | | |
| City | Tampa | County | Hillsborough | State | FL | Zip Code 33610 |
| Client | Integra Realty Resources | | | | | |

**PURPOSE OF THE APPRAISAL REPORT**

The purpose of this appraisal report is to estimate the market value of the subject property as defined herein. The use of the appraisal is to assist the above-named lender/client, its successors and/or assigns, in evaluating the subject property for lending purposes. This is a federally regulated transaction. Additional supporting data can be found in the appraiser's work file.

It is assumed that the title to this property is good and marketable. No title search has been made, nor have we attempted to determine ownership of the property. The value estimate is given without regard to any questions of title, boundaries, or encroachments. It is assumed that all assessments are paid. We assume the property to be free and clear of liens and encumbrances except as noted.

We are not familiar with any engineering studies made to determine the bearing capacity of the land. Improvements in the area appear to be structurally sound. It is therefore assumed that soil and subsoil conditions are stable unless specifically outlined in this report.

Any exhibits in the report are intended to assist the reader in visualizing the subject property and its surroundings. The drawings are not intended as surveys and no responsibility is assumed for their cartographic accuracy. Drawings are not intended to be exact in size, scale or detail.

Areas and dimensions of the property were physically measured. If data is furnished by the principal or from plot plans or surveys furnished by the principal, or from public records, we assume it to be reasonably accurate. In the absence of current surveys, land areas may be based upon representations made by the owner's agents or the client. No attempt has been made to render an opinion or determine the status of easements that may exist. No responsibility is assumed for discrepancies that may become evident from a licensed survey of the property.

The value estimate involves only the real estate and all normal building equipment if any improvements are involved. Unless otherwise indicated, the opinion of value arrived at in this appraisal report is for the real estate only and DOES NOT INCLUDE ANY PERSONAL PROPERTY OF ANY KIND. Above ground pools or non-attached items such as freestanding appliances and window treatments are some examples of personal property. The inclusion of personal property in the sale of real estate is common. Although only the real estate is valued in this report, including typical personal property in a sale does not limit the marketability of a house.

The separate allocations between land and improvements, if applicable, represent our judgment only under the existing utilization of the property. A re-evaluation should be made if the improvements are removed or substantially altered, and the land utilized for another purpose.

All information and comments concerning the location, neighborhood trends, construction quality and costs, loss in value from whatever cause, condition, rents, or any other data for the property appraised herein, represents the estimates and opinions of the appraiser formed after an examination of the subject property.

All opinions, as to values stated, are presented as the appraiser's considered opinion based on the information set forth in the report and his experience. We assume no responsibility for changes in market conditions or for the inability of the client or any other party to achieve their desired results based upon the appraised value. Further, some of the assumptions made can be subject to variation depending upon evolving events. We realize some assumptions may never occur and unanticipated events or circumstances may occur. Therefore, actual results achieved during the projection period may vary from those in this report.

The appraisal report was not based on developing or reporting predetermined results, or a requested minimum valuation, a specific valuation, or the approval of a loan.

Our analysis, opinions, and conclusions were developed, and this report has been prepared, in conformity with the requirements of: USPAP – Uniform Standards of Professional Appraisal Practice.

***THE APPRAISER HAS PREPARED THIS APPRAISAL IN FULL COMPLIANCE WITH THE APPRAISER INDEPENDENCE REQUIREMENTS AND HAS NOT PERFORMED, PARTICIPATED IN, OR BEEN ASSOCIATED WITH ANY ACTIVITY IN VIOLATION OF AIR.***

At the request of the client, this appraisal has been prepared in compliance with the Uniform Appraisal Dataset (UAD) from Fannie Mae and Freddie Mac. The UAD requires the appraiser to use standardized responses that include specific formats, definitions, abbreviations, and acronyms. The UAD standard requires property information for the subject and comparables that may be difficult to verify in the normal course of business. The appraiser relies on MLS data, public records data, property owner and realtor verification when available. However, when those collective sources cannot provide precise information, estimates and assumptions are made to comply with the UAD requirements. Should information become available that was not known during the original appraisal due diligence, it could impact the appraisal. The UAD data standard also requires the use of whole numbers in certain data fields. The appraiser was required to round certain numeric entries in order to comply with the UAD data standard.

We do not authorize the out of context quoting or partial reprinting of this appraisal report. Further, neither all nor any part of the contents of this report (especially any conclusions as to value, the identity of the appraiser nor the name of the firm which he/she is connected, shall be reproduced, published, or disseminated to the public through advertising media, public relations media, news media, or another public means of communication, without the prior written consent of the appraiser signing the report.

Serial# 6CE6A285
esign.alamode.com/verify

## Supplemental Addendum

File No. 18-12-1457a

| Client | Integra Realty Resources | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 4151 Bismarck Palm Dr | | | | | | |
| City | Tampa | County | Hillsborough | State | FL | Zip Code | 33610 |
| Client | Integra Realty Resources | | | | | | |

**APPRAISAL DATA**

Appraisal reports are technical documents addressed to the specific needs of clients. In most cases, appraisals are made for mortgage companies and/or banks whose use for this report may be wholly different than that of the casual reader. Therefore, the reader should understand that this was made with a limited amount of data and limited ability to verify certain information. Information was verified when possible through public records, multiple listing services, real estate agents and exterior inspection. This includes verifications that the comparables are actually closed sales and the transactions are arms-length. No verification technique is one hundred percent accurate but the appraiser has relied upon information as reported and recorded unless better sources prevail.

From time to time, the indicated sizes of comparables shown in the available sources such as MLS services listing sheets or assessor appears to be incorrect based on the appraisers professional experience. If the size used in the MLS sheets does not correlate with other known data, the appraiser will estimate the size of comparables. These included assessor's sheets, physical inspection and use of interior room measurements along with a multiplier to depict size based on exterior measurements. The deviation of comparable size from published sizes only indicates an attempt at higher accuracy in the final report. However, there are many times that the exact size and features found in comparables cannot be confirmed except by any exterior inspection from the street. We have used three or more comparables in this report to eliminate the limited data associated with any single comparable.

Information regarding the comparable sales has been obtained from public sources and listing agencies. If any significant discrepancies are revealed, the right to amend this report is reserved.

**CONDITION OF MATERIALS**

The appraisal report requires the appraiser to note the condition of materials of several components of the subject property. The appraiser makes no representations, guarantees or warranties (express or implied), regarding the materials, their fitness, quality, condition or remaining economic life. An appraiser is NOT QUALIFIED OR TRAINED to discover/disclose hidden defects in material or workmanship. The lender/client should utilize or at least consider the services of a professional licensed home inspector to evaluate same if concerned about the condition of materials of the subject property.

**ENVIRONMENTAL**

The opinion of value reported in this appraisal report is predicated on the belief that there are no adverse conditions that would affect the livability, soundness, or structural integrity of the property, unless noted in the appraisal report. Adverse conditions include but are not limited to the following: Needed repairs, deterioration, the presence of hazardous wastes, toxic substances, and other adverse environmental conditions. Neither the appraiser(s), nor the appraisal firm and the associate's staff have the expertise required to discover any environmental hazards, toxic substances or infestation concerning the subject property. The appraiser is not an expert in the field of environmental hazards and this report is not to be considered as an environmental assessment of the property. The appraiser does not make any representations, guarantees, or warranties, express or implied, that the property is free of defects or environmental problems including but not limited to the following:

**INFESTATION** – The appraiser has no expertise in the field of insect, termites or pest infestation. We are not qualified to detect the presence of these or any other unfavorable infestations. We have not specifically inspected the subject property to determine the presence of any infestation. No effort was made to dismantle or probe the structure to observe enclosed, encased, or otherwise concealed evidence of infestation. Infestation may be present in areas the appraiser cannot see.

**LEAD BASE PAINT** – A residential dwelling that was built prior to 1978 may present exposure to lead based paint that may place young children at risk of developing lead poisoning. The appraiser is not qualified to determine if lead based paint is present or if it poses any risk or hazard to its inhabitants.

**MECHANICAL SYSTEMS** – The appraiser is NOT A HOME INSPECTOR, ELECTRICIAN, OR PLUMBER. Mechanical systems, including but not limited to plumbing, electrical, HVAC, appliances, septic systems and wells, have not been tested by the appraiser to determine their fitness of condition. If an electrical capacity has been noted in the appraisal report, it has been taken from the electrical service panel within the subject property or provided by another source including but not limited to, the owner, the blueprints, specifications, contractors, or other sources believed to be reliable. The appraiser will not be responsible for the condition, alterations, defects, or other unapparent modifications related to the mechanical systems of the subject property.

**MOLD** – The appraiser is not qualified to determine if mold is present in the property and if present, the appraiser is not qualified to determine the cause of the mold, the type of mold, or whether it poses any risk or hazard to the inhabitants.

**SEASONAL CONDITIONS** – There are instances when portions of the exterior of the property are obscured or not readily observable due to weather related conditions. In those instances, the appraiser(s) has relied upon a source(s) familiar with the property to cite the material and the condition of those improvements.

**PROPERTY INSPECTION**

A "complete visual inspection" includes a walking tour of the property, interior and exterior and viewing all readily observable items; observing the floor plan and layout; identifying relevant amenities, evaluating conformity of the subject with the neighborhood; observing general conditions; assessing functional utility; measuring the house or utilizing other data and information to calculate the living area, and noting any renovations or remodeling that may have been done to the property. A "complete visual inspection" does not include observing or


Serial# 6CE6A285
esign.alamode.com/verify

# Supplemental Addendum

File No. 18-12-1457a

| Client | Integra Realty Resources | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 4151 Bismarck Palm Dr | | | | | | |
| City | Tampa | County | Hillsborough | | State | FL | Zip Code | 33610 |
| Client | Integra Realty Resources | | | | | | |

viewing any portion of the property not readily accessible from a walking tour include full access to attics and/or crawl spaces; activation or operation of all mechanicals, electrical, or plumbing equipment or fixtures; any observation or viewing of the roof surface other than that which is readily viewable from ground level; or activation or testing of any water system of sewage or septic tank; walking the entire home site if the size and/or topography do not readily allow.  THE APPRAISER IS NOT A QUALIFIED HOME INSPECTOR OR ENGINEER AND DOES NOT REPRESENT THOSE SERVICES.  THIS APPRAISAL IS NOT A WARRANTY AGAINST ANY DEFECT OF THE IMPROVEMENTS.

**SITE COMMENTS**

The site is very typical of the neighborhood in terms of size, topography, view and general appeal.  It provides a suitable setting for the improvements and is consistent with market expectations in this price range.  While no readily apparent adverse site conditions or external factors were noted, many site-related issues are beyond the scope of this assignment.  Statements regarding zoning compliances are intended only in the most general sense.  Zoning and building ordinances vary significantly from one municipality to another and can be extremely detailed.  The scope of this assignment does not include a comparison of every potentially significant characteristics of the subject property's site and improvements relative to zoning and building ordinances.  Unless otherwise noted, standard utility and right of way easements are insignificant to value.  However, a current locational or boundary survey or title report may reveal encroachments, easements, zoning violations or other matters of interest that could warrant modifications of the appraised value.

**LEGAL DESCRIPTION**

F.I.R.R.E.A. regulations require the appraiser to attempt to provide a legal description as part of the appraisal.  If the legal description is provided, the appraiser has assumed it is correct.  The legal description should be verified through legal documentation.

**MARKET CONDITIONS**

Trends in real estate are directly related to historic, economic, demographic, and political forces within a market area.  Events occurring nationally, regionally and locally can significantly impact the success of all types of real estate development.  Macroeconomic conditions, such as interest rates, inflation, job security, industrial productivity, and stability in the stock market, shape consumer confidence and business investment activity.  Regional and local indicators do not always mirror national trends.  As a result, the economic conditions on a regional and local level have the most significant impact on real estate markets and must be analyzed separately.  Diversity and stability in employment, job growth, business expansion and the profile of the available labor force all impact the economic stability of a region.  Consumer demographics in the local market, such a population growth, household statistics, age/family characteristics and income levels, specifically impact the type of real estate development that can be sustained, the amount of development supported, prices/rents, absorption of space and the amenities required.

1004 MC Instructions state:  "Sales and listings must be properties that compete with the subject property, determined by applying the criteria that would be used by a prospective buyer of the subject property".

"Subject Specific" parameters are often utilized, but by doing this, it will yield a smaller number of sales, too low to be considered statistically significant, it is then the appraiser's parameters may be expanded to include areas outside of the subject's immediate market neighborhood but still within the surrounding area to produce a statistically credible amount of data to achieve results in which support the appraiser's trend conclusions & not miss-lead the reader with an inadequate amount of statistical data.

**ADDITIONAL SALES COMPARABLE COMMENTS**

The comparables utilized were considered the best available to derive subject's valuation.  Appropriate market adjustments were made for dissimilarities in all comps.  Square footage where obtained from the assessor's office.  Where assessor records were unavailable or appeared inaccurate, square footages were obtained from a multiplier derived from the market.  The appraiser uses a variety of data services such as public and private online databases which include assessor's records, county recorder, FEMA Flood Maps, county websites, local zoning maps and/or phone confirmations by the appropriate zoning authorities, local MLS information, or any other reliable sources considered typical for the market area.  All sources are considered to be reliable sources of data.  When discrepancies in the information are found, the appraiser will use the source(s) that is believed to be the most reliable in the appraisal report.  The appraiser will report only the data pertinent to the valuation process.  When applicable, the data presented in the Sales Comparison Approach has been verified by more than one source unless otherwise noted.

THE UAD REQUIRES THAT COMPARABLE SALES BASEMENT AREA AND FINISHED AREA ARE INCLUDED IN THE SALES GRID.  IT SHOULD BE NOTED THAT THE BASEMENT SQUARE FOOTAGE AND BASEMENT FINISHED SQUARE FOOTAGE HAVE BEEN ESTIMATED.  THIS DATA IS NOT AVAILABLE THROUGH MRED MLS OR PUBLIC ASSESSOR RECORDS.

The appraiser attempted to obtain an adequate amount of information in the normal course of business regarding the subject and comparable properties.  Some of the standardized responses required by the UAD, especially those in which the appraiser has not had the opportunity to verify personally or measure, could mistakenly imply greater precision and reliability in the data than is factually correct or typical in the normal course of business.  Examples include condition and quality ratings as well as comparable sales and listing data.  Not every element of the subject property was viewable (list if necessary) and comparable property data was generally obtained from third-party sources (list sources).  Consequently, this information should be considered an "estimate" unless otherwise noted by the appraiser.

Serial# 6CE6A285
esign.alamode.com/verify

18-12-1457a
File No.    18-12-1457a

## UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM
(Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)

Condition Ratings and Definitions

C1
The improvements have been recently constructed and have not been previously occupied. The entire structure and all components are new and the dwelling features no physical depreciation.

Note: Newly constructed improvements that feature recycled or previously used materials and/or components can be considered new dwellings provided that the dwelling is placed on a 100 percent new foundation and the recycled materials and the recycled components have been rehabilitated/remanufactured into like-new condition. Improvements that have not been previously occupied are not considered "new" if they have any significant physical depreciation (that is, newly constructed dwellings that have been vacant for an extended period of time without adequate maintenance or upkeep).

C2
The improvements feature no deferred maintenance, little or no physical depreciation, and require no repairs. Virtually all building components are new or have been recently repaired, refinished, or rehabilitated. All outdated components and finishes have been updated and/or replaced with components that meet current standards. Dwellings in this category are either almost new or have been recently completely renovated and are similar in condition to new construction.

Note: The improvements represent a relatively new property that is well maintained with no deferred maintenance and little or no physical depreciation, or an older property that has been recently completely renovated.

C3
The improvements are well maintained and feature limited physical depreciation due to normal wear and tear. Some components, but not every major building component, may be updated or recently rehabilitated. The structure has been well maintained.

Note: The improvement is in its first-cycle of replacing short-lived building components (appliances, floor coverings, HVAC, etc.) and is being well maintained. Its estimated effective age is less than its actual age. It also may reflect a property in which the majority of short-lived building components have been replaced but not to the level of a complete renovation.

C4
The improvements feature some minor deferred maintenance and physical deterioration due to normal wear and tear. The dwelling has been adequately maintained and requires only minimal repairs to building components/mechanical systems and cosmetic repairs. All major building components have been adequately maintained and are functionally adequate.

Note: The estimated effective age may be close to or equal to its actual age. It reflects a property in which some of the short-lived building components have been replaced, and some short-lived building components are at or near the end of their physical life expectancy; however, they still function adequately. Most minor repairs have been addressed on an ongoing basis resulting in an adequately maintained property.

C5
The improvements feature obvious deferred maintenance and are in need of some significant repairs. Some building components need repairs, rehabilitation, or updating. The functional utility and overall livability is somewhat diminished due to condition, but the dwelling remains useable and functional as a residence.

Note: Some significant repairs are needed to the improvements due to the lack of adequate maintenance. It reflects a property in which many of its short-lived building components are at the end of or have exceeded their physical life expectancy but remain functional.

C6
The improvements have substantial damage or deferred maintenance with deficiencies or defects that are severe enough to affect the safety, soundness, or structural integrity of the improvements. The improvements are in need of substantial repairs and rehabilitation, including many or most major components.

Note: Substantial repairs are needed to the improvements due to the lack of adequate maintenance or property damage. It reflects a property with conditions severe enough to affect the safety, soundness, or structural integrity of the improvements.

Quality Ratings and Definitions

Q1
Dwellings with this quality rating are usually unique structures that are individually designed by an architect for a specified user. Such residences typically are constructed from detailed architectural plans and specifications and feature an exceptionally high level of workmanship and exceptionally high-grade materials throughout the interior and exterior of the structure. The design features exceptionally high-quality exterior refinements and ornamentation, and exceptionally high-quality interior refinements. The workmanship, materials, and finishes throughout the dwelling are of exceptionally high quality.

Q2
Dwellings with this quality rating are often custom designed for construction on an individual property owner's site. However, dwellings in this quality grade are also found in high-quality tract developments featuring residence constructed from individual plans or from highly modified or upgraded plans. The design features detailed, high quality exterior ornamentation, high-quality interior refinements, and detail. The workmanship, materials, and finishes throughout the dwelling are generally of high or very high quality.

UAD Version 9/2011 (Updated 1/2014)

Serial# 6CE6A285
esign.alamode.com/verify

# UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM
(Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)

Quality Ratings and Definitions (continued)

**Q3**

Dwellings with this quality rating are residences of higher quality built from individual or readily available designer plans in above-standard residential tract developments or on an individual property owner's site. The design includes significant exterior ornamentation and interiors that are well finished. The workmanship exceeds acceptable standards and many materials and finishes throughout the dwelling have been upgraded from "stock" standards.

**Q4**

Dwellings with this quality rating meet or exceed the requirements of applicable building codes. Standard or modified standard building plans are utilized and the design includes adequate fenestration and some exterior ornamentation and interior refinements. Materials, workmanship, finish, and equipment are of stock or builder grade and may feature some upgrades.

**Q5**

Dwellings with this quality rating feature economy of construction and basic functionality as main considerations. Such dwellings feature a plain design using readily available or basic floor plans featuring minimal fenestration and basic finishes with minimal exterior ornamentation and limited interior detail. These dwellings meet minimum building codes and are constructed with inexpensive, stock materials with limited refinements and upgrades.

**Q6**

Dwellings with this quality rating are of basic quality and lower cost; some may not be suitable for year-round occupancy. Such dwellings are often built with simple plans or without plans, often utilizing the lowest quality building materials. Such dwellings are often built or expanded by persons who are professionally unskilled or possess only minimal construction skills. Electrical, plumbing, and other mechanical systems and equipment may be minimal or non-existent. Older dwellings may feature one or more substandard or non-conforming additions to the original structure

Definitions of Not Updated, Updated, and Remodeled

Not Updated

Little or no updating or modernization. This description includes, but is not limited to, new homes.

Residential properties of fifteen years of age or less often reflect an original condition with no updating, if no major components have been replaced or updated. Those over fifteen years of age are also considered not updated if the appliances, fixtures, and finishes are predominantly dated. An area that is 'Not Updated' may still be well maintained and fully functional, and this rating does not necessarily imply deferred maintenance or physical/functional deterioration.

Updated

The area of the home has been modified to meet current market expectations. These modifications are limited in terms of both scope and cost.

An updated area of the home should have an improved look and feel, or functional utility. Changes that constitute updates include refurbishment and/or replacing components to meet existing market expectations. Updates do not include significant alterations to the existing structure.

Remodeled

Significant finish and/or structural changes have been made that increase utility and appeal through complete replacement and/or expansion.

A remodeled area reflects fundamental changes that include multiple alterations. These alterations may include some or all of the following: replacement of a major component (cabinet(s), bathtub, or bathroom tile), relocation of plumbing/gas fixtures/appliances, significant structural alterations (relocating walls, and/or the addition of) square footage). This would include a complete gutting and rebuild.

Explanation of Bathroom Count

Three-quarter baths are counted as a full bath in all cases. Quarter baths (baths that feature only a toilet) are not included in the bathroom count. The number of full and half baths is reported by separating the two values using a period, where the full bath count is represented to the left of the period and the half bath count is represented to the right of the period.

Example:
3.2 indicates three full baths and two half baths.

Serial# 6CE6A285
esign.alamode.com/verify

## UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM
(Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)

Abbreviations Used in Data Standardization Text

| Abbreviation | Full Name | Fields Where This Abbreviation May Appear |
|---|---|---|
| A | Adverse | Location & View |
| ac | Acres | Area, Site |
| AdjPrk | Adjacent to Park | Location |
| AdjPwr | Adjacent to Power Lines | Location |
| ArmLth | Arms Length Sale | Sale or Financing Concessions |
| AT | Attached Structure | Design (Style) |
| B | Beneficial | Location & View |
| ba | Bathroom(s) | Basement & Finished Rooms Below Grade |
| br | Bedroom | Basement & Finished Rooms Below Grade |
| BsyRd | Busy Road | Location |
| c | Contracted Date | Date of Sale/Time |
| Cash | Cash | Sale or Financing Concessions |
| Comm | Commercial Influence | Location |
| Conv | Conventional | Sale or Financing Concessions |
| cp | Carport | Garage/Carport |
| CrtOrd | Court Ordered Sale | Sale or Financing Concessions |
| CtySky | City View Skyline View | View |
| CtyStr | City Street View | View |
| cv | Covered | Garage/Carport |
| DOM | Days On Market | Data Sources |
| DT | Detached Structure | Design (Style) |
| dw | Driveway | Garage/Carport |
| e | Expiration Date | Date of Sale/Time |
| Estate | Estate Sale | Sale or Financing Concessions |
| FHA | Federal Housing Authority | Sale or Financing Concessions |
| g | Garage | Garage/Carport |
| ga | Attached Garage | Garage/Carport |
| gbi | Built-in Garage | Garage/Carport |
| gd | Detached Garage | Garage/Carport |
| GlfCse | Golf Course | Location |
| Glfvw | Golf Course View | View |
| GR | Garden | Design (Style) |
| HR | High Rise | Design (Style) |
| in | Interior Only Stairs | Basement & Finished Rooms Below Grade |
| Ind | Industrial | Location & View |
| Listing | Listing | Sale or Financing Concessions |
| Lndfl | Landfill | Location |
| LtdSght | Limited Sight | View |
| MR | Mid-rise | Design (Style) |
| Mtn | Mountain View | View |
| N | Neutral | Location & View |
| NonArm | Non-Arms Length Sale | Sale or Financing Concessions |
| o | Other | Basement & Finished Rooms Below Grade |
| O | Other | Design (Style) |
| op | Open | Garage/Carport |
| Prk | Park View | View |
| Pstrl | Pastoral View | View |
| PwrLn | Power Lines | View |
| PubTrn | Public Transportation | Location |
| Relo | Relocation Sale | Sale or Financing Concessions |
| REO | REO Sale | Sale or Financing Concessions |
| Res | Residential | Location & View |
| RH | USDA - Rural Housing | Sale or Financing Concessions |
| rr | Recreational (Rec) Room | Basement & Finished Rooms Below Grade |
| RT | Row or Townhouse | Design (Style) |
| s | Settlement Date | Date of Sale/Time |
| SD | Semi-detached Structure | Design (Style) |
| Short | Short Sale | Sale or Financing Concessions |
| sf | Square Feet | Area, Site, Basement |
| sqm | Square Meters | Area, Site |
| Unk | Unknown | Date of Sale/Time |
| VA | Veterans Administration | Sale or Financing Concessions |
| w | Withdrawn Date | Date of Sale/Time |
| wo | Walk Out Basement | Basement & Finished Rooms Below Grade |
| Woods | Woods View | View |
| Wtr | Water View | View |
| WtrFr | Water Frontage | Location |
| wu | Walk Up Basement | Basement & Finished Rooms Below Grade |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

UAD Version 9/2011 (Updated 1/2014)

Serial# 6CE6A285
esign.alamode.com/verify

# Anthony M. Graziano, MAI, CRE

**Integra Realty Resources**
Miami/Palm Beach

Dadeland Centre
9155 S. Dadeland Boulevard
Suite 1208
Miami, FL 33156

T 305.670.0001
F 305.670.2276

irr.com

## Experience

Senior Managing Director of Integra Realty Resources – Miami/Palm Beach.

Mr. Graziano has actively counseled and advised clients on the sale, leasing, valuation, management, and development of commercial real estate assets throughout the northeast and southeast U.S. since 1992.

Mr. Graziano's professional perspective is a blend of his experience and educational background which includes formal training in architecture, urban planning, macro and micro economics, real estate finance, institutional asset management, and land development. His market experience in sales, leasing, management, and valuation disciplines combine to bring practical real world answers to complex planning and development projects. He has been actively involved as a consultant and/or member of a consultant team on various major redevelopment and land use projects for public and private clients over the past 25+ years.

Mr. Graziano has specialized in consulting and valuation assignments for corporate and private clients on a wide array of complex issues related to estate and condemnation matters, title defects, environmental contamination/damages, air rights, partial and fractional interests, contract disputes, and mediation/arbitration disputes. Mr. Graziano's experience in these matters provides a comprehensive framework for effective strategic real estate consulting.

## Professional Activities & Affiliations

Advisory Board Member: Urban Land Institute (ULI) South Florida / Caribbean
Advisory Board Member: University of Miami M+RED Program
Member: Economic Roundtable - Miami Beacon Council (2012-present)
Board of Director: Integra Realty Resources, Inc. (2011-2016)
Chairman of the Board:    Integra Realty Resources, Inc. (2016-present)
Director: South Florida Chapter of the Appraisal Institute (2014-2016)
Board Member: Builders Association of South Florida (BASF) (2014-2016)
Subject Matter Expert (SME): Appraisal Practice Board, Appraisal Foundation
Member: Appraisal Institute (MAI) (2008-Present)
Member: Counselors of Real Estate (CRE) (2007-Present)
National Association of Realtors (REALTOR)
Miami Association of REALTORS Industry Analyst of the Year (2016)
Former Fellow: Royal Institute of Chartered Surveyors (FRICS) (2007-2014)
AI Leadership Development Advisory Council, March 1998 - February 2001
Lifetime Member: National Eagle Scout Association (NESA)

## Licenses

Florida, State-Certified General Real Estate Appraiser, RZ3510
New Jersey, State-Certified General Real Estate Appraiser, RG001261

## Education

University of Miami, Coral Gables, Florida 1988-1992
Degree: Bachelor of Science in Land Development and Planning, School of Architecture

New York University Real Estate Institute, New York, New York 1993-1996
Degree: Master of Science in Real Estate Development and Investment



amgraziano@irr.com    -    305.670.0001 x320

# Anthony M. Graziano, MAI, CRE

### Qualified Before Courts & Administrative Bodies

Qualified and accepted as an expert before:
US Bankruptcy Court (Newark, Southern District of Texas, Southern District of Florida)
US Federal District Court (Southern District of Florida)
FL Circuit Court (Miami-Dade, Broward, and Monroe Counties)
NJ State Tax Court
NJ Superior Court - Chancery Division
NJ Superior Court - Law Division
Various municipal planning and zoning boards throughout New Jersey and Florida
Various Taxing Authorities and Boards throughout New Jersey and Florida

**Integra Realty Resources**
Miami/Palm Beach

The Douglas Centre
2600 Douglas Road, Suite 801
Coral Gables, FL 33134

T 305.670.0001
F 305.670.2276

irr.com



amgraziano@irr.com    -    305.670.0001 x320

**Anthony M. Graziano, MAI, CRE, FRICS**
PROFERRED OR DISCLOSED EXPERT WITNESS REPORTS/SETTLEMENTS

| RETENTION DATE | ON BEHALF | IRR FILE # | COURT CASE NO. | COURT / VENUE | CASE NAME | RETAINED BY | TYPE OF CASE |
|---|---|---|---|---|---|---|---|
| 1/2015 | Defendant | 123-2015-0037 | 14-CV-22384 UU | Miami-Dade County, FL | Ray Benson & Maria Helena V. QBE Insurance Corporation | John A. Camp | Retrospective (2004-2006) analysis of market value claims against insurance company related to property |
| 9/2014 | Defendant | 123-2014-0194 | 13-03084CA 10 | 11th Judicial Circuit Miami-Dade, FL | Manuel Soltero V. Adorno & Yoss, LLP | Kaplan Zeena, LLP | Professional Liability suit against law firm and attorneys for malfeasance in litigation matter. |
| 2/2014 | Plaintiff | 123-2014-0030 | Settled | Carribean Islands | Rainmaker Development V. A&F Bahamas, etal | VLASAC & SHMARUK, LLC | Partnership Dispute between Joint Venture in Carribean development project (golf course, villas, and large-scale marina-commercial-retail development) |
| 11/2012 | Defendant | 123-2012-0140 | 42-2012-CA-001066 | Marion County, FL | CSX Transportation, Inc. V. Moshen Saranazi, Faith Ann Safarazi, Proverbium Hldg, LLC, USA & George Albrigit | NeJame, La Fay, Jancha, Ahmed, Barker, Joshi & Moreno, P.A. | Condemnation of partial interest with damages |
| 7/2012 | Confidential | 123-2012-0076 | Confidential | Broward County, FL | Ft. Lauderdale-Hollywood Int'l Airport Expansion | White & Case, LLP | Value Diminution Study to assist public agency in good faith negotiations based on airport expansion. |
| 6/2012 | Defendant | 123-2012-0070 | 10-49616-CA-40 | Miami-Dade County, FL | CB Entertainment, LLC V. South Beach Ocean Parcel | Kubicki Draper, P.A. | Construction Damages claim |
| 12/2009 | Plaintiff | 109-2009-0443 | Dept. Justice File 90-11-3-5801 | Federal District Court of Virginia | United States vs. Atlantic Wood Industries, Inc. | U.S. Department of Justice | Damages/environmental contamination dispute between United States Navy and responsible party (Atlantic Wood Industries) |

M. Quals: Graziano: Trial Lists

**Anthony M. Graziano, MAI, CRE, FRICS**
IDENTIFIED EXPERT WITNESS TESTIMONY AT DEPOSITION and/or TRIAL

| RETENTION DATE | ON BEHALF OF | TRI FILE # | COURT/CASE NO. # | COURT / VENUE | CASE NAME | RETAINED BY | TYPE OF CASE |
|---|---|---|---|---|---|---|---|
| 6/2015 | Plaintiff | 123-2015-0170 | 15-00893/I-CA-01 | 11th Judicial Circuit Dade County, Florida (Hon. Peter R. Lopez) | Aaron Stauber & Aviva Stauber V. BH33, LLC | Piedra & Associates, P.A. | Motion to dismiss Lis Pendens in an action to enforce contractual specific performance clause |
| 1/2015 | Defendant | 123-2015-0037 | 14-CV-22384 UU | Southern District of Florida | Ray Benson & Maria Helena Campos V. QBE Insurance Corporation | John Camps | Retrospective (2004-2006) analysis of market value claims against insurance company related to property damage claims arising from Hurricane Wilma |
| 1/2014 | Plaintiff | 123-2015-0031 | Pending | Miami-Dade County | Igor Gex V. Yacht Club at Portofino Condo Association | Weil Quaranta McGovern, P.A. | Construction defect dispute related to water-intrusion and damage-detrimental conditions analysis of |
| 10/2014 | Plaintiff | 123-2014-0226 | 08-CA-408-P | Monroe County | Ocean Bank V. Lindsack, Monroe County | Ocean Bank | Deficiency claim against borrower on real estate collateral in the Florida Keys (development site plus marine related improvements) |
| 10/2014 | Defendant | 123-2014-0215 | 11-24994 CA 06 | 11th Judicial Circuit Dade County, Florida | Palm-Aire Holdings V. JRGS Investments, LLC, Jorge Garcia-Sariff and Coural Drive Investments, LLC | Cole, Scott & Kissane, P.A. | Partnership dispute over valuation issues proximal to a fractured condominium project (retrospective values), and operating agreement dispute |
| 7/2014 | Plaintiff | 123-2014-0194 | 13-018022 CACE 02 | 17th Judicial Circuit Broward County, Florida | Amalia I. Irianda-Rivera V. Rivera Diagnostic Center, Inc., Okray Rivera & Yudit Rivero | Amalia I. Irianda-Rivera | Rent default judgment and market rental and damage analysis associated with lease default. |
| 10/2014 | Defendant | 123-2014-0159 | 2014FL534 (Pending) | 17th Judicial Circuit Broward County, Florida | Roehm Title Resources Claim | Title Resources Guaranty Company | Title insurance claim related to before and after damage/value diminution analysis based on defined title defects not identified by Title Insurance Company |
| 4/2014 | Plaintiff | 123-2014-0117 | 4:14-CV-01077 (Pending) | USA District Court for the Eastern District of Missouri Eastern Division | USA V. GSA-VA St. Louis Property, LLC | Bryan Cave LLP | Deficiency of a possessory interest for a term. Retained as consulting/rebuttal expert |
| 5/2014 | Defendant | 123-2014-0114 | Pending | Miami-Dade County | Euforia Club | Rennert Bogen Marder & Rodriguez, P.A. | Rent dispute regarding forced relocation of a nightclub, and relevant market rental rate of replacement club space in Miami |
| 4/2014 | Plaintiff | 123-2014-0089 | Pending | Broward County | Pan American Holdings Corp. V. Florida DOT Right of Way (ROW) Acquisition S.R. 7 | Henry Wulf, Esq. | Condemnation for R.O.W. purposes including before and after damage analysis |
| 1/2014 | Debtor | 123-2014-005 | 13-25728-BKC-RAM | US Federal Bankruptcy - Southern District of Florida - Miami Division (Hon. R. Mark) | West Airport Plaza Business Park, LLC | Counsel for the Debtor, Michael D. Seese, Esq. | Fairness Opinion and market value opinions in conjunction with Debtor's Plan for Reorganization |
| 8/2013 | Defendant | 123-2000-0016 | 02-23922-CA 09 | 11th Judicial Circuit Dade County, Florida | American Educational Enterprises LLC v. The Board of Trustees of the Internal Improvement Trust Fund | Richard Alayon, Esq. - Alayon and Associates | Economic Damages case associated with an alleged misrepresentation or omission by seller of real property |
| 7/2013 | Defendant | 123-2013-0126 | CACE 08957624 (14) | 17th Judicial Circuit Broward County, Florida (Hon. Carlos A. Rodriguez) | Bayview Loan Servicing, LLC v. Kayhan Soodjani; Muhammad Mahmood; et al | Bayview Servicing, represented by Tabass, Freedman and Soloff; Stacey Soloff, Esq. | Deficiency judgment on multi-family project (Dewey Street Apartments) |
| 3/2013 | Defendant | 123-2013-0105 | 11-23561-CIV - Rosenbaum | US District Court - Southern District of Florida (Hon. Rosenbaum) | United States of America v. G.K.K. etal | Richard Duvall, Holland and Knight and Jeffrey Neiman, Esq. | Condemnation claim on the 137.779 +/- Miami Federal Bureau of Investigation (F.B.I.) building, condemnation of a possessory interest (leasehold) |
| 2/2013 | Defendant | 123-2013-0070 | 09-05650 CA 04 | 11th Judicial Circuit Dade County, Florida (Hon. Beth Bloom) | Zenaida Gomez v. City of Pinecrest | Cynthia A. Everett, Cynthia A. Everett, P.A. | Economic damage resulting from temporary taking (seizure) of private residence |
| 1/2013 | Defendant | 123-2013-0016 | 12-60950-CIV | US Federal Court - Southern District of Florida | Q Lending, Inc., Equity Financial Group, Inc., and Equity Commercial Group, Inc. v. Travelers Companies, Inc. etal | Heidi Raschke, Butler Pappas etal | Value diminution resulting from alleged mortgage fraud. |
| 1/2012 | Plaintiff | 123-2012-0129 | Pending | 11th Judicial Circuit Dade County, Florida | 2011 and 2012 Ad Valorem Tax Protest | Ken Wurtenberger, Esq. Kopelowitz Ostrow Ferguson | Tax protest of commercial condominium. |
| 10/19/2012 | Plaintiff | 123-2012-0111 | 2011-1107 CA-23 | 17th Judicial Circuit Broward County, Florida (Hon. Patrick DeMahenida) | Renegade at Hialeah Blvd v. Dynatech Engineering | Daniel Levin, Esq., Cole Scott, Kissane, P.A. | Economic Damages case, diminution in value resulting from unpaid lease modification. |
| 10/12/2012 | Plaintiff | 123-2012-0108 | 11-30189 CA21 | 11th Judicial Circuit Dade County, Florida | Yaffa Yakubov vs. Bayview at Fisher Island No 3 | Craig Minko, Esq., Cole Scott Kissane, P.A. | Market Value estimate of Fisher Island Condominium purchased under right of first refusal, economic damages claimed by Plaintiff due to contract dispute arising from association's exercise of right of first refusal |
| 8/20/2012 | Plaintiff | 123-2012-0012 | CA-02160 CA-25 | 11th Judicial Circuit Dade County, Florida | 7935 NBV, LLC v. Harbour East Development LTD, Mario Egozi, etal | Jose Casal, Esq., Holland and Knight | Deficiency judgment on 32-unit fractured condominium, substitute expert following issuance of IRR-Miami reports in 2010 and 2012. |
| 8/15/2012 | Disclosed Dual Expert | 123-2012-0072 | | Matrimonial Mediation | Vazquez v. Vazquez Matrimonial Matter | Colon and Mendoza and Robert Hertzberg, P.A. | Retained as a court-appointed third party expert to both parties to appraise (2) marital assets comprised of office, retail, single and multi-family units in FL, TN, NC and Illinois, Bahamas |
| 7/2012 | Plaintiff | 109-2011-0190 | Pending: 2003-2014 | Tax Court of New Jersey (Hon. Patrick DeMahenida) | BASF Inc., successor Ciba Geigy Inc. vs. Township of Toms River | Phil Gensario, Garippa, etal on behalf of BASF | Challenge to multi-year appeal of $80 Million+ land assessment on contaminated superfund site in Central New Jersey |
| 3/2012 | Plaintiff | 109-2010-0172 | ATL-L-4451-08 | Superior Court of New Jersey, Law Division Atlantic County | Scot Netherlands Inc. vs. State of New Jersey Department of Environmental Protection (NJDEP) | Jay Rhatican, Connell Foley on behalf of Scot Netherlands, Inc. | Challenge to NJDEP permit denial to fill wetlands, deprivation of all reasonable investment backed expectations |
| 7/2011 | Defendant | 109-2010-0199 | MER-L-3034-08 | Superior Court of New Jersey Mercer County | 460 Mercer Street, LLP and Bruckener Southern, LLC vs. Hightstown | Aneel Zarin Grimm & Aaron, P.C. Hussam Chater | Litigation-Dispute Resolution - Hightstown Zoning Challenge |
| 12/2009 | Plaintiff | 109-2009-0443 | Dept. Justice File 90-11-3-5801 | Federal District Court of Virginia | United States v.s. Atlantic Wood Industries, Inc. | U.S. Department of Justice | Damages/environmental contamination dispute between United States Navy and responsible party (Atlantic Wood Industries) |
| 12/2009 | Plaintiff | 109-2009-0377 | | Tax Court of New Jersey | Westrust/HPC Mortgage Fund vs. City of Atlantic City | Cole, Schotz, Meisel, Forman & Leonard, P.A. Carl Rizzo, Esq. | Tax Appeals - To develop an opinion of the market value of the fee simple interest in the property |



**Anthony M. Graziano, MAI, CRE, FRICS**
IDENTIFIED EXPERT WITNESS TESTIMONY AT DEPOSITION and/or TRIAL

| RETENTION DATE | ON BEHALF OF | IRR FILE # | COURT CASE NO | COURT / VENUE | CASE NAME | RETAINED BY | TYPE OF CASE |
|---|---|---|---|---|---|---|---|
| 1/12/2009 | Secured Creditor | 109-2009-0430 | | US Bankruptcy Court - Southern District of Texas | Erickson Building | Stuart Glick, Esq., Sills, Cummis & Gross | Market Value for Bankruptcy of 140,000 SF corporate campus in Bethesda, Maryland |
| 09/20/09 | Plaintiff | 109-2009-0123 | 3035-001 | Tax Court of New Jersey | Bay Head Yacht Club vs. Ocean County Tax Board | John Doyle, Carluccio, Leone, Dimon, Doyle & Sacks, LLC | Tax Appeal for Bay Head Yacht Club |
| 1/2/2008 | Plaintiff | 109-2008-XXX | INA (DEPS Pending) | Tax Court of New Jersey | Mirage Atlantic City (MAC) vs. City of Atlantic City | Hank Rovitari, Esq. | Tax Appeal at State Tax Court on 15 acre casino site adjacent to Trump Marina |
| 6/2008 | Defendant | 109-2008-0252 | L-2424-05 | Superior Court of New Jersey Law Division, Middlesex County | The City of South Amboy vs. Lower Main Street Development, LLC & Amboy Aggregates Joint Venture | Bathgate, Wegenar, etal | Verified complaint in condemnation |
| 6/2008 | Defendant | 109-2008-345 | C.A. No. OCNL-3361-06 | Superior Court of New Jersey, Law Division Ocean County | Oxbourne Associates, Melbourne Associates VI, LLC, Kingsway Realty Profit Share vs. Citta Enterprises Co., JAC Property Management etal and Eckert Corporation | Francis X. Manning, Esq, Stradley Ronon Stevens & Young & Michael Camboli, Esq, Partridge Snow and Hahn, both on behalf of | Dispute re: proper valuation of leasehold and sub-lessee's sandwich leasehold interest on damage claim for breach of agreement claim |
| 1/2008 | Defendant | 109-2008-0125 | N/A | American Arbitration Association [testimony at Arbitration conducted by Hon. Eugene Serpentelli] | Toms River Township vs. Citta Geigy Corporation | Mark Troncone, Esq., In-house Counsel to Township of Toms River | Arbitration of environmental damages claim, and counter-claim of appropriateness of zoning on 1,900 acre superfund site. |
| 1/12/2007 | Defendant | 109-2007-211 | L-000635-06 | Superior Court of New Jersey, Law Division | Kyle Mosteller vs. Gaila Neeman | Frank Caruso, Esq, Hoogland, Longo, Moran and Dunst | Damage claim due to loss of trees and screening between urban properties |
| 6/2007 | Plaintiff | 109-2007-0134 | 3:07-CV-2322 | Superior Court of New Jersey, Chancery Division Monmouth County | Silver Lakes Inc. vs. Township of Freehold Inc. | Christopher Hanlon, Esq, Hanlon and Nieman | Challenge to validity of Rent Control Ordinance as transfer of property rights from Lessor to Lessee |
| 2/6/2007 | Plaintiff | 109-2007-0173 | | Federal District Court of Virginia | Laurelwood Homes, LLC vs. United States Department of Navy | William A. Shook Esq. | Leasehold interest in the property, breach of lease claim on behalf of leasehold owner (Laurelwood) claiming breach of lease and damages |
| 12/2006 | Defendant | 109-2006-0192 | CAM - L - 9731-05 | Superior Court of New Jersey, Chancery Division, Camden County | Brandywine Operating Partnership, LP vs. UFCW Local 56 | Brett Last, Esq, O'Brien, Belland and Bushinsky | Estimate the value of damages to landlord on breach of above-market lease |
| 8/6/2006 | Defendant | 109-2006-0257 | | Superior Court of New Jersey, Law Division | County Line & Browns Bridge, Jackson Township | Levin, Shea, Pfeffer, PA Steven Pfeffer | To develop an opinion of the hypothetical market value of the fee simple interest in the property |
| 2/2006 | Defendant | 109-2006-0044 | OCN-L-2482-04 | Ocean Superior Court, Ocean County Courthouse | Carl Brooks vs. K. Hovanian | Ronan, Tuzzio & Giannone — Linda Olsen | To estimate value diminution in the subject property as a result of various issues asserted by the property owner in conjunction with pending litigation between the property owner, and the subject developer K. Hovnanian @ Sea Oaks |
| 10/2005 | Defendant | 109-2005-0315 | OCN-L-1810-5 | Superior Court of New Jersey, Chancery Division Ocean County | Atlantic City Electric Company d/b/a Conectiv Power Delivery, a regulated public utility in the state of New Jersey vs. ACE Manahawkin, LLC family and etal | Flaster/Greenberg, PC, R. Oberlander, Esq. — David | Compensation for the taking of an easement for construction and maintenance of a 230kv transmission line and towers by Atlantic City Electric |
| 9/2005 | Defendant | 109-2005-0214 | MON-L-2609-05 | Superior Court of New Jersey Law Division, Monmouth County | Township of Howell vs. George Harms Construction Co., Inc. etal | Connell & Foley, LLP Kevin Coakley, Esq. | To develop an opinion of the market value of the fee simple estate of the property |
| 8/2003 | Defendant | 109-2003-0282 | | Superior Court of New Jersey Chancery Division, Family Part, Monmouth County | Giuffre vs. Giuffre | Louis & Wolf - Frank A. Louis | To develop an opinion of the market value of the Fee Simple estate of five properties for purposes of equitable distribution of marital assets |
| 7/2003 | Plaintiff | 109-2003-0203 | OCN-C-79-03 | Superior Court of New Jersey, Chancery Division, Ocean County | West, etal vs. Pompaino, etal | Stephen E. Smith, Esq | To develop an opinion of the diminution in value due to a loss of useable land area |
| 6/2003 | Plaintiff | 109-2003-0101 | OCN-C-316-02 | Superior Court of New Jersey Law Division, Ocean County | Eugene M. Lord vs. Donald W. Rinaldo | Lombardi & Lombardi Scott Telson | To develop an opinion of the market value of the fee simple estate of the property |
| 4/2003 | Plaintiff | 109-2003-0128 | FM-15-468-03-C | Superior Court of New Jersey, Chancery Division, Family Part Ocean County | Vincent Urbank vs. Lisa Urbank | Marianna Pontoriero, Esq. | Litigation-Matrimonial |
| 2/2002 | Plaintiff | 109-2002-0055 | | | Shenandoah Mobile Home Park | Windels Marx Lane & Mittendorf, LLP - William Cagney | Inverse Condemnation - Rent Control Ordinance |
| 4/2001 | Claimant | 109-2001-0169 | NJ-2624-00 | | DeForest John Ely and Kimberle A. Ely, h/w | First American Title Insurance Co. Jack Miklis | To derive an opinion of the fair compensation of the fee simple estate, subject to the temporary title encumbrance |
| 3/1999 | Plaintiff | 109-1999-0062 | | | Georgetown Apartments | Emmes & Co. Andrew Schwarz | To estimate the market value of the Leased Fee Estate of the property, inclusive of 28 Apartment complexes through NY, NJ, PA, and MD. |
| 12/1997 | Defendant | LKW-257-3186 | FM-15-1465-94 | Superior Court of New Jersey, Chancery Division, Family Part | Lisa Franklin, etal vs. Donald Franklin, etal | Greenbaum, Rowe, Smith, Ravin, Davis & Himmel LLP - Robert S. Underhill | Estimating the market value of the leased fee interest |
| 8/1984 | Creditor | HUD-XX | | US Bankruptcy Court - District of Newark | Hudson Marina Association vs. Emmes & Co. | | Bankruptcy Reorganization of 200+ slip failed marina/dockominium condominium |



# EXHIBIT F10

**Integra Realty Resources**
Miami/Palm Beach

**Appraisal Report & Post-Remediation Damage Related to Chinese Drywall**

**Hernandez, Bertha**
Market Value - "As Remediated"
3516 N. Perry Ave
Tanpa, Hillsborough County, Florida 33603
Client Reference: 9

**Prepared For:**
Colson Hicks Eidson

**Effective Date of the Appraisal:**
January 21, 2019

**Report Format:**
Appraisal Report

**IRR - Miami/Palm Beach**
File Number: 123-2018-0275





**Hernandez, Bertha**
3516 N. Perry Ave
Tanpa, Florida



| | | | |
|---|---|---|---|
| **Integra Realty Resources** | In Miami | In Orlando | In Naples/Sarasota |
| Miami | Dadeland Centre | The Magnolia Building | Horseshoe Professional Park |
| Orlando | 9155 South Dadeland Blvd. | 326 N. Magnolia Ave. | 2770 Horseshoe Drive S. |
| Southwest Florida | Suite 1208 | | Suite 3 |
| | Miami, FL 33156 | Orlando, FL 32801 | Naples, FL 34104 |
| www.irr.com | (305) 670-0001 | (407) 843-3377 | (239)-643-6888 |

January 22, 2019

Patrick S. Montoya
Partner
Colson Hicks Eidson
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134

SUBJECT:       Market Value - "As Remediated"
Case No 11-22408-Civ-COOKE
United States District Court Southern District of Florida in the matter of
Eduardo and Carmen Amorin, et al. individually and on behalf of others situated
similarly v. Taishan Gypsum Co., LTD., f/k/a Shandong Taiche Dongxin Co. Ltd., et al
Priority Claimant Case at:
Hernandez, Bertha
3516 N. Perry Ave
Tanpa, Hillsborough County, Florida 33603
Client Reference: 9
IRR - Miami/Palm Beach File No. 123-2018-0275

Dear Mr. Montoya:

Integra Realty Resources – Miami/Palm Beach submits the following damage estimate in the
referenced property as of the effective date assuming all remediation was completed by an
appropriate contractor with experience and credentials in remediating defective drywall.

The report is intended to comply the Uniform Standards of Professional Appraisal Practice (USPAP). It
presents summary discussions of the data, reasoning, and analysis that were used in the appraisal
process to develop the opinions. Additional information is contained within our workfile.

The findings will form the basis of expert witness testimony in the above referenced case.

Case 2:09-md-02047-EEF-MBN Document 22363-58 Filed 11/19/19 Page 59 of 106
Case 1:11-cv-22408-MGC Document 281-10 Entered on FLSD Docket 05/13/2019 Page 5 of 52

Identification of Subject                                                                                        2

## Identification of Subject

The subject of this report is a single-family home configured with 4 bedroom and 2.5 baths with 3,578 SF under air-conditioning. The subject property was built in 2006 and is located on a 12,000 square foot site.

## Purpose of the Appraisal

The purpose of the appraisal is to develop an opinion of the diminution in value and related damages, collectively "the damages" as of the effective date of the appraisal, January 21, 2019. The damage estimate assumes the defective drywall remediation was completed and does not consider the cost to cure. The date of the report is January 22, 2019. The appraisal is valid only as of the stated effective date or dates.

## Intended Use and User

The intended use of the appraisal is for litigation purposes. The client, Colson Hicks Eidson and related co-counsel, Plaintiff and the Court are the intended users. Integra Realty Resources – Miami/Palm Beach is not responsible for unauthorized use of this report.

## Most Recent Sale History

The most recent closed sale of the subject is summarized as follows:

| Most Recent Subject Sale (Closed) | |
| --- | --- |
| Sale Date (Most Recent) | March 6, 1996 |
| Seller | Morgan, Jody L. et al |
| Buyer | Hernandez, Bertha |
| Sale Price | $125,000 |
| Recording Instrument Number | 8068-1608 |
| Disposition Details | This was the acquisition of land |

To the best of our knowledge, no other sale or transfer of ownership has taken place within a three-year period prior to the effective appraisal date.

## Pending Transactions

To the best of our knowledge, the property is not subject to an agreement of sale or an option to buy, nor is it listed for sale, as of the effective appraisal date.

## Definition of Market Value

The following definition of market value is used by agencies that regulate federally insured financial institutions in the United States:

"The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:

Hernandez, Bertha



Case 2:09-md-02047-EEF-MBN   Document 22363-58   Filed 11/19/19   Page 60 of 106
Case 1:11-cv-22408-MGC   Document 281-10   Entered on FLSD Docket 05/13/2019   Page 6 of 52

Definition of Retrospective Value Opinion                                              3

- Buyer and seller are typically motivated;

- Both parties are well informed or well advised, and acting in what they consider their own best interests;

- A reasonable time is allowed for exposure in the open market;

- Payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and

- The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale."

*(12 C.F.R. Part 34.42(g); 55 Federal Register 54696, August 24, 1990, as amended at 57 Federal Register 12202, April 9, 1992, 59 Federal Register 29499, June 7, 1994)*

## Definition of Retrospective Value Opinion

A value opinion effective as of a specified historical date. The term retrospective does not define a type of value.  Instead, it identifies a value opinion as being effective at some specific prior date. Value as of a historical date is frequently sought in connection with property tax appeals, damage models, lease renegotiation, deficiency judgements, estate tax, and condemnation.  Inclusion of the type of value with this term is appropriate, e.g. "retrospective market value opinion".

(*Source: The Dictionary of Real Estate Appraisal – 6th Edition; Appraisal Institute, 200 W. Madison, Suite 1500, Chicago, IL 60606, www.appraisalinstitute.org*)

## Definition of Hypothetical Condition

1. A condition that is presumed to be true when it is known to be false. (SVP)

2. A condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis. Comment: Hypothetical conditions are contrary to known facts about physical, legal, or economic characteristics of the subject property; or about conditions external to the property, such as market conditions or trends; or about the integrity of date used in an analysis. (USPAP, 2016-2017 ed.)

(*Source: The Dictionary of Real Estate Appraisal – 6th Edition; Appraisal Institute, 200 W. Madison, Suite 1500, Chicago, IL 60606, www.appraisalinstitute.org*)

## Scope of Work

Integra was retained as an expert in the captioned matter of this report to address potential damages related to the subject property, specifically excluding the costs to cure.

Integra was retained to estimate any post remediation damages, and conducted a separate study to determine whether damages persist following defective drywall remediation.  The result of that study are outlined within Integra's report entitled "Market Analysis of the Post Remediation Impact of Chinese Drywall on Residential Property Values in Florida."  The results of that study are incorporated by reference herein.

Hernandez, Bertha



Case 2:09-md-02047-EEF-MBN Document 22363-58 Filed 11/18/19 Page 61 of 106
Case 1:11-cv-22408-MGC Document 281-10 Entered on FLSD Docket 05/13/2019 Page 7 of 52

Scope of Work                                                                            4

In addition, our damage model was requested to include a rental value analysis of the Priority Claimant residence, and a determination of the relevant economic damage associated with having to vacate the home for a period of time (and secure alternate living arrangements) during the remediation.  As of the effective date, the claimant would have suffered the damages.

Integra established individual case files on each Priority Claimant residence, and retained professional assistance from qualified residential appraisers in each jurisdiction.  Integra managed the process of these retrospective appraisals, interfaced with the residential appraisers, and reviewed the form appraisals completed on each assignment including review of the comparables, adjustments, and form narrative to establish the market value of the residence unimpaired as of the effective date.

Integra professionals reviewed various materials exchanged as part of this case and considered materials that were relevant to the market valuation.  These materials were downloaded from the attorney's dropbox and are retained within our workfile.

Integra's participation in and review of the final appraised values results in a conclusion of the market value of the home defined as "Hypothetical Market Value" assuming defective drywall had never been identified within the subject property.  This forms the basis of the unimpaired market value as of the effective date.

All properties and comparables were inspected by the local residential appraisers without the benefit of interior inspections.  Adjustments for condition and age at the time of sale are based upon photographs contained within the various MLS databases, paired analysis from amongst the comparables, and for the subject, were based on photos, if available.  In the event a property had not been remediated as of the effective date, we assume average condition for the property in the market as of the effective date.

The damage analysis expressed within this report follows the peer teachings and market accepted processes for damage analysis.  However, the damage analysis only represents a <u>portion of the overall damages</u> because we were specifically requested to exclude the consideration of the costs to cure.  This represents a relevant component of damage in this case for property that factually have not been remediated.

Integra's role was strictly to identify post remediation value damage (sometime referred to a "stigma") and estimate the relevant rental value and moving costs as a proxy for the temporary loss of use during remediation.

## Significant Appraisal Assistance

In addition to Anthony M. Graziano, MAI ,CRE, principal, it is acknowledged that Peter G. Kayworth, Yuliya Georgieva, Joseph Melloni and Paul L. Jones of IRR-Miami/Palm Beach were involved in the assignment consisting of conducting research on the subject and transactions involving comparable properties, performing appraisal analyses and assisting in report writing, under the supervision of the persons signing the report.  The local residential appraisers are also named as providing significant assistance, including exterior inspection of the properties and comparables, application of their local



Case 2:09-md-02047-EEF-MBN Document 22363-58 Filed 11/18/19 Page 62 of 106
Case 1:11-cv-22408-MGC Document 201-10 Entered on FLSD Docket 05/13/2013 Page 8 of 52

Highest and Best Use                                                                                   5

knowledge in adjusting and estimating the unimpaired value, and developing the form report valuations incorporated herein.

## Prior Services

USPAP requires appraisers to disclose to the client any other services they have provided in connection with the subject property in the prior three years, including valuation, consulting, property management, brokerage, or any other services. We have not performed any services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

## Valuation Methodology

Appraisers usually consider the use of three approaches to value when developing a market value opinion for real property. These are the cost approach, sales comparison approach, and income capitalization approach.  The valuations consider the only relevant approach for residential valuation, the sales comparison analysis.  The cost and income approach are not considered relevant.

The sales comparison approach is the most applicable valuation method since there is an active market for similar properties, and sufficient sales data is available for analysis.  Additionally, this approach directly considered the prices of alternative properties having similar utility.

## Highest and Best Use

The highest and best use of the subject as if vacant for development of a single-family home which is physically possible, legally permissible as per zoning, financially feasible and maximally productive.

The highest and best use of the subject as improved is for continued use as a single-family home with no other use that could reasonably be expected to provide a higher value to the land as if vacant.  The improvements contribute to the over all value to a greater extent than the land value alone, and therefore, continued use as improved concluded to be maximally productive and the highest and best use of the property.

## Conclusion of Value

The Hypothetical market value appraisal as of the effective date, reflective of a traditional form appraisal, is contained within the Addenda of this report.  This value us hypothetical since it assumes that defective drywall had never been present at the subject property.

Against this value, we then apply the Post Impairment Discount as a percentage of unimpaired value as developed within the Integra report studying this issue.  This represents a compensable damage resulting from the prior existence of defective drywall in the home as of the effective date.

In addition, each appraisal (unimpaired) reflects a rental value analysis as of the effective date.  This rental value analysis concludes to the equivalent market rent for the home (unimpaired) and reflects a proxy for the probable actual costs the homeowner would experience by having to move-out of the primary residence during remediation.



Hernandez, Bertha

Case 2:09-md-02047-EEF-MBN Document 22363-58 Filed 11/19/19 Page 63 of 106
Case 1:11-cv-22408-MGC Document 281-10 Entered on FLSD Docket 05/13/2019 Page 9 of 52

Conclusion of Value                                                                                    6

The homeowner would also have to incur moving /storage costs twice, once before and once after remediation.  Professional packing, moving and storage for an average home is estimated at $1,500 per move, or $3,000 in total.  This amount is added to the loss of use estimate as an additional damage.

This loss of use calculation does not consider the costs of alternative housing or other tangible costs potentially incurred for damages suffered between the date of discovery and the date of value.  These damages, if applicable, are being estimated by a separate expert (Elkins et al). To the extent Elkins posits costs which are duplicative or actual costs that are greater or less, some minor adjustments to Integra's damage model may be required.

The timeframe for remediation (months of actual loss) could vary depending upon the permitting process in the specific community, the availability of labor, and the size of the home.  Integra reviewed a number of transactions that were remediated by investors and found the typical timeframe between purchase of an unremediated home and listing[1] of the home post-remediation to be 3-6 months.

Larger more expansive homes would be expected to take longer to remediate since more materials are required, and in higher-priced homes, supplies would typically be custom-ordered.  Therefore, we apply the following timeframes based on the subject's size and price range:

< $150,000 Home up to 2,000+/- SF            4 months

$150,000 - $750,000 home up to 4,000 SF      6 months

$750,000+ home up over 4,000 SF              9 months

---

[1] The "listing date" is most relevant since a homeowner conducting their own remediation can move back in once the home is ready for sale (ie- coinciding with a final certificate of occupancy).

Hernandez, Bertha



Case 2:09-md-02047-EEF-MBN Document 22363-58 Filed 11/19/19 Page 64 of 106
Case 1:11-cv-22408-MGC Document 291-40 Entered on FLSD Docket 05/13/2019 Page 10 of 52

Conclusion of Value                                                                    7

The following shows our final estimate of damages as of the effective date, and assuming costs to cure (i.e. – to conduct the remediation) have been expended.

| Conclusions of Damage | | | |
|---|---|---|---|
| Hypothetical Value (Unimpaired - Before) | | $1,065,000 | |
| Market Impairment Discount (As if Remediated) | | 10% | |
| Post Impairment Damage ($) | | $106,500 | |
| **Hypothetical Value As IF Remediated** | | | **$958,500** |
| Post Remediation Damages as of Effective Date | | | **$106,500** |
| Loss of Use: | | | |
| Rental Rate ($/Month) | **$3,600** | | |
| Moving & Storage Costs | | $3,000 | |
| Loss of Use Subject (# Months) | 9x | $32,400 | |
| Subject Total | | | **$35,400** |
| **Post Remediation Damage** | | | **$141,900** |

Note:  Does not consider "cost to cure". Assumes remediation was completed by qualified contractor who warranties the work.

The home was remediated by the current owner and cost to cure damages apply in addition to the damages estimated above.

Hernandez, Bertha



Case 2:09-md-02047-EEF-MBN Document 22363-58 Filed 11/18/19 Page 65 of 106
Case 1:11-cv-22408-MGC Document 201-40 Entered on FLSD Docket 05/13/2015 Page 11 of 52

Certification 8

## Certification

We certify that, to the best of our knowledge and belief:

1. The statements of fact contained in this report are true and correct.

2. The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are our personal, impartial, and unbiased professional analyses, opinions, and conclusions.

3. We have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.

4. We have not performed any services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

5. We have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

6. Our engagement in this assignment was not contingent upon developing or reporting predetermined results.

7. Our compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

8. Our analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice as well as applicable state appraisal regulations.

9. The reported analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute.

10. The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

11. Anthony M. Graziano, MAI, CRE did not make a personal inspection of the property that is the subject of this report. Rob Baird has personally inspected the subject.

12. Significant real property appraisal assistance was provided by Peter G. Kayworth, Yuliya Georgieva, Joseph Melloni and Paul L. Jones. Additionally, real estate assistance was provided by various Valucentric employees and subcontractors, including: John Barcelo, Angela Barcelo, Fred Stites, Carlos Fong, Sarah D. Wilson and Rob Baird.

13. We have experience in appraising properties similar to the subject and are in compliance with the Competency Rule of USPAP.

14. As of the date of this report, Anthony M. Graziano, MAI, CRE, has completed the continuing education program for Designated Members of the Appraisal Institute.

Anthony M. Graziano, MAI, CRE
Senior Managing Director - Miami
State-Certified General RE Appraiser
FL Certificate # RZ#3510

Hernandez, Bertha

Case 2:09-md-02047-EEF-MBN Document 22363-58 Filed 11/19/19 Page 66 of 106
Case 1:11-cv-22408-MGC Document 201-40 Entered on FLSD Docket 05/13/2019 Page 12 of 52

Assumptions and Limiting Conditions                                                    9

## Assumptions and Limiting Conditions

This appraisal and any other work product related to this engagement are limited by the following standard assumptions, <u>except as otherwise noted in the report</u>:

1.  The title is marketable and free and clear of all liens, encumbrances, encroachments, easements and restrictions. The property is under responsible ownership and competent management and is available for its highest and best use.

2.  There are no existing judgments or pending or threatened litigation that could affect the value of the property.

3.  There are no hidden or undisclosed conditions of the land or of the improvements that would render the property more or less valuable. Furthermore, there is no asbestos in the property.

4.  The revenue stamps placed on any deed referenced herein to indicate the sale price are in correct relation to the actual dollar amount of the transaction.

5.  The property is in compliance with all applicable building, environmental, zoning, and other federal, state and local laws, regulations and codes.

6.  The information furnished by others is believed to be reliable, but no warranty is given for its accuracy.

This appraisal and any other work product related to this engagement are subject to the following limiting conditions, except as otherwise noted in the report:

1.  An appraisal is inherently subjective and represents our opinion as to the value of the property appraised.

2.  The conclusions stated in our appraisal apply only as of the effective date of the appraisal, and no representation is made as to the effect of subsequent events.

3.  No changes in any federal, state or local laws, regulations or codes (including, without limitation, the Internal Revenue Code) are anticipated.

4.  No environmental impact studies were either requested or made in conjunction with this appraisal, and we reserve the right to revise or rescind any of the value opinions based upon any subsequent environmental impact studies. If any environmental impact statement is required by law, the appraisal assumes that such statement will be favorable and will be approved by the appropriate regulatory bodies.

5.  Unless otherwise agreed to in writing, we are not required to give testimony, respond to any subpoena or attend any court, governmental or other hearing with reference to the property without compensation relative to such additional employment.

6.  We have made no survey of the property and assume no responsibility in connection with such matters. Any sketch or survey of the property included in this report is for illustrative purposes only and should not be considered to be scaled accurately for size. The appraisal covers the property as described in this report, and the areas and dimensions set forth are assumed to be correct.

Hernandez, Bertha



Case 2:09-md-02047-EEF-MBN Document 22363-58 Filed 11/18/19 Page 67 of 106
Case 1:11-cv-22408-MGC Document 201-10 Entered on FLSD Docket 05/13/2019 Page 13 of 52

Assumptions and Limiting Conditions                                                10

7. No opinion is expressed as to the value of subsurface oil, gas or mineral rights, if any, and we have assumed that the property is not subject to surface entry for the exploration or removal of such materials, unless otherwise noted in our appraisal.

8. We accept no responsibility for considerations requiring expertise in other fields. Such considerations include, but are not limited to, legal descriptions and other legal matters such as legal title, geologic considerations such as soils and seismic stability; and civil, mechanical, electrical, structural and other engineering and environmental matters. Such considerations may also include determinations of compliance with zoning and other federal, state, and local laws, regulations and codes.

9. The distribution of the total valuation in the report between land and improvements applies only under the reported highest and best use of the property. The allocations of value for land and improvements must not be used in conjunction with any other appraisal and are invalid if so used. The appraisal report shall be considered only in its entirety. No part of the appraisal report shall be utilized separately or out of context.

10. Neither all nor any part of the contents of this report (especially any conclusions as to value, the identity of the appraisers, or any reference to the Appraisal Institute) shall be disseminated through advertising media, public relations media, news media or any other means of communication (including without limitation prospectuses, private offering memoranda and other offering material provided to prospective investors) without the prior written consent of the persons signing the report.

11. Information, estimates and opinions contained in the report and obtained from third-party sources are assumed to be reliable and have not been independently verified.

12. Any income and expense estimates contained in the appraisal report are used only for the purpose of estimating value and do not constitute predictions of future operating results.

13. If the property is subject to one or more leases, any estimate of residual value contained in the appraisal may be particularly affected by significant changes in the condition of the economy, of the real estate industry, or of the appraised property at the time these leases expire or otherwise terminate.

14. Unless otherwise stated in the report, no consideration has been given to personal property located on the premises or to the cost of moving or relocating such personal property; only the real property has been considered.

15. The current purchasing power of the dollar is the basis for the values stated in the appraisal; we have assumed that no extreme fluctuations in economic cycles will occur.

16. The values found herein are subject to these and to any other assumptions or conditions set forth in the body of this report but which may have been omitted from this list of Assumptions and Limiting Conditions.

17. The analyses contained in the report necessarily incorporate numerous estimates and assumptions regarding property performance, general and local business and economic conditions, the absence of material changes in the competitive environment and other matters. Some estimates or assumptions, however, inevitably will not materialize, and unanticipated events and circumstances may occur; therefore, actual results achieved during

Hernandez, Bertha



Case 2:09-md-02047-EEF-MBN Document 22363-58 Filed 11/19/19 Page 68 of 106
Case 1:11-cv-22408-MGC Document 291-40 Entered on FLSD Docket 05/13/2019 Page 14 of 52

Assumptions and Limiting Conditions                                                                    11

the period covered by our analysis will vary from our estimates, and the variations may be material.

18.  The Americans with Disabilities Act (ADA) became effective January 26, 1992. We have not made a specific survey or analysis of the property to determine whether the physical aspects of the improvements meet the ADA accessibility guidelines. We claim no expertise in ADA issues, and render no opinion regarding compliance of the subject with ADA regulations. Inasmuch as compliance matches each owner's financial ability with the cost to cure the non-conforming physical characteristics of a property, a specific study of both the owner's financial ability and the cost to cure any deficiencies would be needed for the Department of Justice to determine compliance.

19.  The appraisal report is prepared for the exclusive benefit of the Client, its subsidiaries and/or affiliates. It may not be used or relied upon by any other party. All parties who use or rely upon any information in the report without our written consent do so at their own risk.

20.  No studies have been provided to us indicating the presence or absence of hazardous materials on the subject property or in the improvements, and our valuation is predicated upon the assumption that the subject property is free and clear of any environment hazards including, without limitation, hazardous wastes, toxic substances and mold. No representations or warranties are made regarding the environmental condition of the subject property. Integra Realty Resources – Miami/Palm Beach, Integra Realty Resources, Inc., Integra Strategic Ventures, Inc. and/or any of their respective officers, owners, managers, directors, agents, subcontractors or employees (the "Integra Parties"), shall not be responsible for any such environmental conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because we are not experts in the field of environmental conditions, the appraisal report cannot be considered as an environmental assessment of the subject property.

21.  The persons signing the report may have reviewed available flood maps and may have noted in the appraisal report whether the subject property is located in an identified Special Flood Hazard Area. We are not qualified to detect such areas and therefore do not guarantee such determinations. The presence of flood plain areas and/or wetlands may affect the value of the property, and the value conclusion is predicated on the assumption that wetlands are non-existent or minimal.

22.  Integra Realty Resources – Miami/Palm Beach is not a building or environmental inspector. Integra Miami/Palm Beach does not guarantee that the subject property is free of defects or environmental problems. Mold may be present in the subject property and a professional inspection is recommended.

23.  The appraisal report and value conclusions for an appraisal assume the satisfactory completion of construction, repairs or alterations in a workmanlike manner.

24.  It is expressly acknowledged that in any action which may be brought against any of the Integra Parties, arising out of, relating to, or in any way pertaining to this engagement, the appraisal reports, and/or any other related work product, the Integra Parties shall not be responsible or liable for any incidental or consequential damages or losses, unless the appraisal was fraudulent or prepared with intentional misconduct. It is further acknowledged



Case 2:09-md-02047-EEF-MBN Document 22363-58 Filed 11/19/19 Page 69 of 106
Case 1:11-cv-22408-MGC Document 201-40 Entered on FLSD Docket 05/13/2019 Page 15 of 52

Assumptions and Limiting Conditions                                                    12

that the collective liability of the Integra Parties in any such action shall not exceed the fees paid for the preparation of the appraisal report unless the appraisal was fraudulent or prepared with intentional misconduct. Finally, it is acknowledged that the fees charged herein are in reliance upon the foregoing limitations of liability.

25. Integra Realty Resources – Miami/Palm Beach, an independently owned and operated company, has prepared the appraisal for the specific intended use stated elsewhere in the report. The use of the appraisal report by anyone other than the Client is prohibited except as otherwise provided. Accordingly, the appraisal report is addressed to and shall be solely for the Client's use and benefit unless we provide our prior written consent. We expressly reserve the unrestricted right to withhold our consent to your disclosure of the appraisal report or any other work product related to the engagement (or any part thereof including, without limitation, conclusions of value and our identity), to any third parties. Stated again for clarification, unless our prior written consent is obtained, no third party may rely on the appraisal report (even if their reliance was foreseeable).

26. The conclusions of this report are estimates based on known current trends and reasonably foreseeable future occurrences. These estimates are based partly on property information, data obtained in public records, interviews, existing trends, buyer-seller decision criteria in the current market, and research conducted by third parties, and such data are not always completely reliable. The Integra Parties are not responsible for these and other future occurrences that could not have reasonably been foreseen on the effective date of this assignment. Furthermore, it is inevitable that some assumptions will not materialize and that unanticipated events may occur that will likely affect actual performance. While we are of the opinion that our findings are reasonable based on current market conditions, we do not represent that these estimates will actually be achieved, as they are subject to considerable risk and uncertainty. Moreover, we assume competent and effective management and marketing for the duration of the projected holding period of this property.

27. All prospective value opinions presented in this report are estimates and forecasts which are prospective in nature and are subject to considerable risk and uncertainty. In addition to the contingencies noted in the preceding paragraph, several events may occur that could substantially alter the outcome of our estimates such as, but not limited to changes in the economy, interest rates, and capitalization rates, behavior of consumers, investors and lenders, fire and other physical destruction, changes in title or conveyances of easements and deed restrictions, etc. It is assumed that conditions reasonably foreseeable at the present time are consistent or similar with the future.

Hernandez, Bertha



Addenda

# Addenda



| Client | Integra Realty Resources | | | File No. | 18-12-1459 | |
|---|---|---|---|---|---|---|
| Property Address | 3516 N Perry Ave | | | | | |
| City | Tampa | County | Hillsborough | State | FL | Zip Code 33603 |
| Client | Integra Realty Resources | | | | | |

## TABLE OF CONTENTS

Exterior-Only ............................................................................................................. 1
Additional Commentary Addendum ........................................................................ 7
Comparable Photos 1-3 ............................................................................................ 8
Comparable Photos 4-6 ............................................................................................ 9
Rent Comparable Photos 1-3 ................................................................................... 10
Comparable Sales Map ............................................................................................. 11
Subject Photos Page 1 .............................................................................................. 12
Market Conditions Addendum to the Appraisal Report ....................................... 13
Single Family Comparable Rent Schedule ............................................................. 14
Scope of Work ........................................................................................................... 15
Subject Aerial Photograph ....................................................................................... 16
Subject Flood Map .................................................................................................... 17
Property Appraiser Page 1 ........................................................................................ 18
Property Appraiser Page 2 ........................................................................................ 19
License ........................................................................................................................ 20
E & O .......................................................................................................................... 21
USPAP Identification ................................................................................................ 22
Certifications & Limiting Conditions - Residential .............................................. 23
UAD Definitions Addendum .................................................................................... 25
Supplemental Addendum .......................................................................................... 28
Supplemental Addendum .......................................................................................... 29
Supplemental Addendum .......................................................................................... 30

Serial# 17AE706A
esign.alamode.com/verify

**Exterior-Only Inspection Residential Appraisal Report**

File # 18-12-1459

18-12-1459

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| | |
|---|---|
| Property Address 3516 N Perry Ave | City Tampa State FL Zip Code 33603 |
| Borrower N/A | Owner of Public Record Bertha L Hernandez County Hillsborough |

Legal Description Riverside North Lot 18 And Water Lot 18 And Closed River Blvd Lying Between Lot 18 And Water Lot 18 Block 22

| | | | |
|---|---|---|---|
| Assessor's Parcel # 167032-0100; A-11-29-18-4HA-000022-00018.0 | Tax Year 2018 | R.E. Taxes $ 6,934 | |
| Neighborhood Name Riverside North | Map Reference 11-29-18 | Census Tract 28.00 | |
| Occupant ☒ Owner ☐ Tenant ☐ Vacant | Special Assessments $ 0 | ☐ PUD HOA $ 0 ☐ per year ☐ per month |
| Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe) | | | |
| Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe) Estimate market value for litigation | | | |
| Lender/Client Integra Realty Resources Address 9155 South Dadeland Blvd, #1208, Miami, FL 33156 | | | |

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☐ Yes ☒ No

Report data source(s) used, offering price(s), and date(s). The subject property has not been listed for sale in the prior 12 months.

**CONTRACT**

☐ I ☐ did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $   Date of Contract   Is the property seller the owner of public record? ☐ Yes ☐ No Data Source(s)

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☐ No
If Yes, report the total dollar amount and describe the items to be paid.

**NEIGHBORHOOD**

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | One-Unit Housing Trends | | One-Unit Housing | | Present Land Use % |
|---|---|---|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | | Property Values ☒ Increasing ☐ Stable ☐ Declining | | PRICE $ (000) | AGE (yrs) | One-Unit 75 % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | | 100 Low 0 | | 2-4 Unit 2 % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | | Marketing Time ☒ Under 3 mths ☐ 3-6 mths ☐ Over 6 mths | | 1,200 High 100 | | Multi-Family 1 % |
| | | | | 200 Pred. 60 | | Commercial 20 % |
| | | | | | | Other 2 % |

Neighborhood Boundaries Dr Martin Luther King Jr. Boulevard to the north, N. Boulevard to the east,
Columbus Drive to the south, and the Hillsborough River to the west.

Neighborhood Description The subject is located approximately two miles north of Downtown Tampa, in an area known as Riverside Heights. This is one of the early neighborhoods in Tampa with bungalow style homes that were constructed in the early 1900's. This is desirable to the market due to its central location, restaurants, proximity to linkages, and bungalow style homes. All support services are located in a three mile radius.

Market Conditions (including support for the above conclusions) Based on data from the S&P Corelogic Case-Shiller Tampa Home Price NSA Index, property values are increasing in the Tampa Bay area. Currently, prices are appreciating on an annual basis of 6.86%. The current cycle of appreciating prices began in 2012. Please see the 1004MC for additional market conditions (time) data.

**SITE**

| | | |
|---|---|---|
| Dimensions 60'x200' | Area 12000 sf | Shape Rectangular View B;Wtr; |
| Specific Zoning Classification RS-60 | Zoning Description Residential Single Family | |

Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No If No, describe

| Utilities | Public | Other (describe) | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | Street Asphalt | ☒ | |
| Gas | ☒ | | Sanitary Sewer | ☒ | Alley None | | |

FEMA Special Flood Hazard Area ☐ Yes ☒ No FEMA Flood Zone X FEMA Map # 12057 C0351H FEMA Map Date 08/28/2008

Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No If Yes, describe

No observed or known adverse influences to market value were noted. The subject site backs to the Hillsborough River which is a benefit to the subject.

**IMPROVEMENTS**

Source(s) Used for Physical Characteristics of Property ☐ Appraisal Files ☐ MLS ☒ Assessment and Tax Records ☐ Prior Inspection ☐ Property Owner
☐ Other (describe)   Data Source for Gross Living Area Prior appraisal

| General Description | | General Description | | Heating/Cooling | | Amenities | | Car Storage | |
|---|---|---|---|---|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | | ☐ Concrete Slab ☐ Crawl Space | | ☐ FWA ☐ HWBB | | Fireplace(s) # 0 | | ☐ None | |
| # of Stories 2.00 | | ☐ Full Basement ☐ Finished | | ☐ Radiant | | Woodstove(s) # 0 | | ☒ Driveway # of Cars 2 | |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | | ☐ Partial Basement ☐ Finished | | ☒ Other Central | | ☒ Patio/Deck Open | | Driveway Surface Pavers | |
| ☒ Existing ☐ Proposed ☐ Under Const. | | Exterior Walls Stucco/Avg | | Fuel Electric | | ☒ Porch Open | | ☒ Garage # of Cars 2 | |
| Design (Style) Contemporary | | Roof Surface Tile/Average | | ☒ Central Air Conditioning | | ☒ Pool Open | | ☐ Carport # of Cars 0 | |
| Year Built 2006 | | Gutters & Downspouts Alum/Avg | | ☐ Individual | | ☒ Fence Vinyl | | ☒ Attached ☐ Detached | |
| Effective Age (Yrs) 13 | | Window Type Awn/Avg | | ☐ Other | | ☒ Other Balcony | | ☐ Built-in | |

Appliances ☒ Refrigerator ☒ Range/Oven ☒ Dishwasher ☒ Disposal ☒ Microwave ☐ Washer/Dryer ☐ Other (describe)

Finished area above grade contains: 8 Rooms 4 Bedrooms 2.1 Bath(s) 3,578 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.). Entry porch, ceiling fans, balcony, generator, wood cabinets, crown molding, insulated windows, and Travertine floors.

Describe the condition of the property and data source(s) (including apparent needed repairs, deterioration, renovations, remodeling, etc.). C3;An interior inspection of the subject property was not performed by the appraiser. I have depended on the public records and information provided by the client for a description of the improvements. Please see the Extraordinary Assumption under the Scope of Work.

Are there any apparent physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No
If Yes, describe.
No observed or known adverse influences to market value were noted.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No If No, describe.
The functional utility, style, condition, use, quality of construction quality are typical for the area.

| | | |
|---|---|---|
| Freddie Mac Form 2055 March 2005 | UAD Version 9/2011   Page 1 of 6 | 2055 March 2005 |

Serial# 17AE706A
esign.alamode.com/verify

**Exterior-Only Inspection Residential Appraisal Report**

18-12-1459
File # 18-12-1459

| There are | 15 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 509,900 to $ 1,200,000 |
| There are | 17 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 510,000 to $ 1,200,000 |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 3516 N Perry Ave Tampa, FL 33603 | 1021 W Henry Ave Tampa, FL 33604 | | 3916 1/2 N Albany Ave Tampa, FL 33603 | | 9425 Oak St Riverview, FL 33578 | |
| Proximity to Subject | | 3.81 miles NE | | 0.27 miles NE | | 10.18 miles SE | |
| Sale Price | $ | $ | 1,179,000 | $ | 840,000 | $ | 915,000 |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 240.17 sq.ft. | | $ 264.73 sq.ft. | | $ 330.32 sq.ft. | |
| Data Source(s) | | T3141351;DOM 4 | | T2939449;DOM 33 | | T2926565;DOM 56 | |
| Verification Source(s) | | Public Records | | Public Records | | Public Records | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing Concessions | | ArmLth Cash;0 | | ArmLth Conv;25500 | -13,000 | ArmLth Conv;0 | |
| Date of Sale/Time | | s12/18;c11/18 | 0 | s08/18;c05/18 | 0 | s01/18;c12/17 | +55,000 |
| Location | N;Res; | N;Res; | +59,000 | A;BsyRd; | +84,000 | N;Res; | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 12000 sf | 21080 sf | 0 | 11642 sf | 0 | 10645 sf | 0 |
| View | B;Wtr; | B;Wtr; | | B;Wtr; | | B;Wtr; | |
| Design (Style) | DT2.00;Contem | DT2.00;Contem | | DT2.00;Contem | | DT2.00;Contem | |
| Quality of Construction | Q2 | Q2 | | Q3 | +50,000 | Q2 | |
| Actual Age | 13 | 21 | +2,000 | 1 | -3,000 | 4 | -2,500 |
| Condition | C3 | C3 | | C1 | -50,000 | C2 | -36,000 |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 8 4 2.1 | 8 4 3.0 | -1,500 | 8 4 4.0 | -3,000 | 7 3 2.0 | +2,500 |
| Gross Living Area | 3,578 sq.ft. | 4,909 sq.ft. | -66,600 | 3,173 sq.ft. | +20,300 | 2,770 sq.ft. | +40,400 |
| Basement & Finished Rooms Below Grade | 0sf | 0sf | | 0sf | | 0sf | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | Central | Central | | Central | | Central | |
| Energy Efficient Items | None | None | | None | | None | |
| Garage/Carport | 2ga2dw | 4ga4dw | -10,000 | 2ga2dw | | 2ga2dw | |
| Porch/Patio/Deck | Open porch | Open porch | | Open porch | | Screen porch | -2,500 |
| Pool/Spa | Open pool | Open pool | | None | +20,000 | Screen pool | -5,000 |
| Net Adjustment (Total) | | ☐ + ☒ - $ | -17,100 | ☒ + ☐ - $ | 105,300 | ☒ + ☐ - $ | 51,900 |
| Adjusted Sale Price of Comparables | | Net Adj. 1.5 % Gross Adj. 11.8 % $ | 1,161,900 | Net Adj. 12.5 % Gross Adj. 29.0 % $ | 945,300 | Net Adj. 5.7 % Gross Adj. 15.7 % $ | 966,900 |

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☒ did ☐ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s)  Public records
My research ☒ did ☐ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s)  Public records
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | 11/7/2016 | | 10/18/2016 |
| Price of Prior Sale/Transfer | | $650,000 | | $370,000 |
| Data Source(s) | Corelogic | Corelogic | Corelogic | Corelogic |
| Effective Date of Data Source(s) | 01/22/2019 | 01/22/2019 | 01/22/2019 | 01/22/2019 |

Analysis of prior sale or transfer history of the subject property and comparable sales  No prior sales of the subject and Comparable 3 in the last three years.
The subject and Comparables Nos. 1 and 2 are located on the Hillsborough River. Comparable No. 3 is located on the Alafia River. Comparable No. 2 was adjusted downward for seller concessions. The adjustment was $0.50 on the $1.00. Comparable No. 1 was adjusted for having an inferior location. Comparable No. 2 was adjusted upward for having a view of overpass for Dr. ML King, Jr. Blvd. The room count adjustment is a net adjustment considering the number of bedrooms and bathrooms. If warranted, bedrooms were adjusted $1,000, half baths $1,500 and bathrooms $3,000. The quality of construction adjustment reflects differences in the quality of construction.
Summary of Sales Comparison Approach  A 0 in the adjustment column indicates that were differences between the subject and the comparable , however, the market would not recognize an adjustment. The comparable sales were sold from $240.17 to $330.32 per square foot. This includes the site, site improvements, bathrooms, kitchen, garage, etc. The view adjustment reflects only living area size differences. It would be reasonable for the living area adjustment to be less than the price per square foot paid for the entire comparable. A living area adjustment of $75 was made to reflect differences in the living area size. The balance of the adjustments were based on their contributory value. In the final reconciliation of the Sales Comparison Approach, all of the comparables were given approximate equal weight.

Indicated Value by Sales Comparison Approach $  1,065,000

Indicated Value by: Sales Comparison Approach $  1,065,000  Cost Approach (if developed) $  Income Approach (if developed) $

The subject is a single family residence. Typically, the market will rely on the Sales Comparison Approach. Sufficient market data was available to develop a reasonable and credible opinion of value. The Cost Approach is not necessary to develop a credible indication of value. The Income Approach would not be considered by the market.
This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☒ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:  No personal property has been included in this valuation.
Based on a visual inspection of the exterior areas of the subject property from at least the street, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $  1,065,000 , as of  01/21/2019 , which is the date of inspection and the effective date of this appraisal.

Serial# 17AE706A
esign.alamode.com/verify

**Exterior–Only Inspection Residential Appraisal Report**

File # 18-12-1459

18-12-1459

I have considered relevant competitive listings/contract offerings in performing this appraisal and any trend indicated by that data is supported by the listing/offering information included in this report. The Hillsborough County Property Appraiser uses a Parcel Id No. and a Folio No. to identify properties. On page 1 of the form, I have provided both numbers. The commercial land in the neighborhood is situated on the major roads. This does not adversely affect the subject.

**Above Predominant Value**

It is noted that the subject's appraised valuation exceeds the predominant value for the neighborhood. Please remember that the predominant value for the subject's neighborhood includes all homes and all sales, just not similar homes like the subject, or similar comparable sales to the subject. On Page 1 of this report, Fannie Mae is requesting the predominant value for all homes in the subject's neighborhood, which can be confusing and at times misleading, especially in a very diverse area of existing, older and smaller homes combined with larger, new construction homes, such as the subject's neighborhood is comprised of at this time. This does not affect the marketability of the subject.

**Highest and Best Use**

As If Vacant

**ADDITIONAL COMMENTS**

Legally Permissible - As previously reported, the subject's current zoning allows for residential use. Commercial, industrial and other uses are not permitted under the current zoning classification. A residential use is legally permissible.

Physically Possible - The site is typical in size, terrain, shape and has sufficient access and is adequately served by utilities. There are no known physical characteristics that would adversely affect the site to support any legally permissible development. The current improvements provide additional support for development on the site as a residential property.

Financially Feasible - The current improvements continue to contribute to the overall value of the property in excess of the site value and therefore, utilization of the current improvements is financially feasible.

Maximally Productive - The use that conforms to neighborhood trends, is consistent with existing land uses and produces the highest price or value is typically the highest and best use. The sales comparison approach will indicate that single family properties that are similar to the subject have been purchased to be utilized by owners and tenants and none of the comparable sales have been converted to an alternative use. These sales indicate that the maximally productive use of the property is consistent with the existing single family use.

**As Improved**

The site is improved with a single family home that was constructed in 2005. The improvements appear to have been updated and maintained over the years. The Highest and Best Use as Improved is a continuation of the single family use

**COST APPROACH TO VALUE (not required by Fannie Mae)**

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)    The improvements were built in 2006. Due to the age of the improvements, the Cost Approach would have an abundant physical depreciation estimate which would weaken the reliability of the approach. Therefore, the Cost Approach would not be considered by the market.

**COST APPROACH**

| ESTIMATED ☐ REPRODUCTION OR ☐ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | | | =$ |
|---|---|---|---|---|---|
| Source of cost data | DWELLING | | Sq Ft. @ $ | | =$ |
| Quality rating from cost service       Effective date of cost data | | | Sq Ft. @ $ | | =$ |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | | | | =$ |
| | Garage/Carport | | Sq Ft. @ $ | | =$ |
| | Total Estimate of Cost-New | | | | =$ |
| | Less | Physical | Functional | External | |
| | Depreciation | | | | =$(             ) |
| | Depreciated Cost of Improvements | | | | =$ |
| | "As-is" Value of Site Improvements | | | | =$ |
| Estimated Remaining Economic Life (HUD and VA only)          52 Years | INDICATED VALUE BY COST APPROACH | | | | = $ |

**INCOME APPROACH TO VALUE (not required by Fannie Mae)**

**INCOME**

Estimated Monthly Market Rent $        3,600    X Gross Rent Multiplier          = $          Indicated Value by Income Approach

Summary of Income Approach (including support for market rent and GRM)

**PROJECT INFORMATION FOR PUDs (if applicable)**

**PUD INFORMATION**

Is the developer/builder in control of the Homeowners' Association (HOA)?   ☐ Yes   ☐ No   Unit type(s)   ☐ Detached   ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

| Total number of phases | Total number of units | Total number of units sold |
|---|---|---|
| Total number of units rented | Total number of units for sale | Data source(s) |

Was the project created by the conversion of existing building(s) into a PUD?   ☐ Yes   ☐ No   If Yes, date of conversion

Does the project contain any multi-dwelling units?   ☐ Yes   ☐ No   Data Source(s)

Are the units, common elements, and recreation facilities complete?   ☐ Yes   ☐ No   If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?   ☐ Yes   ☐ No   If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

Serial# 17AE706A
esign.alamode.com/verify

**Exterior-Only Inspection Residential Appraisal Report**

18-12-1459
File # 18-12-1459

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

SCOPE OF WORK: The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a visual inspection of the exterior areas of the subject property from at least the street, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

The appraiser must be able to obtain adequate information about the physical characteristics (including, but not limited to, condition, room count, gross living area, etc.) of the subject property from the exterior-only inspection and reliable public and/or private sources to perform this appraisal. The appraiser should use the same type of data sources that he or she uses for comparable sales such as, but not limited to, multiple listing services, tax and assessment records, prior inspections, appraisal files, information provided by the property owner, etc.

INTENDED USE: The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

INTENDED USER: The intended user of this appraisal report is the lender/client.

DEFINITION OF MARKET VALUE: The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS: The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

3. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

4. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

5. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Form 2055UAD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Serial# 17AE706A
esign.alamode.com/verify

**Exterior-Only Inspection Residential Appraisal Report**

File # 18-12-1459

18-12-1459

APPRAISER'S CERTIFICATION:     The   Appraiser   certifies   and   agrees   that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a visual inspection of the exterior areas of the subject property from at least the street. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

Serial# 17AE706A
esign.alamode.com/verify

**Exterior-Only Inspection Residential Appraisal Report**

18-12-1459
File # 18-12-1459

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

SUPERVISORY APPRAISER'S CERTIFICATION:     The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name  Robert K. Baird | Name |
| Company Name  Valucentric; LLC | Company Name |
| Company Address  4590 Ulmerton Road, #204 | Company Address |
| Clearwater, FL 33762 | |
| Telephone Number  813-252-1140 | Telephone Number |
| Email Address  info@valucentric.com | Email Address |
| Date of Signature and Report  01/22/2019 | Date of Signature |
| Effective Date of Appraisal  01/21/2019 | State Certification # |
| State Certification #  Cert Gen RZ2497 | or State License # |
| or State License # | State |
| or Other (describe)  State # | Expiration Date of Certification or License |
| State  FL | |
| Expiration Date of Certification or License  11/30/2020 | SUBJECT PROPERTY |

**ADDRESS OF PROPERTY APPRAISED**

3516 N Perry Ave

Tampa, FL 33603

APPRAISED VALUE OF SUBJECT PROPERTY $          1,065,000

**LENDER/CLIENT**

Name  No AMC

Company Name  Integra Realty Resources

Company Address  9155 South Dadeland Blvd, #1208, Miami, FL
33156

Email Address

**SUBJECT PROPERTY**

☐ Did not inspect exterior of subject property
☐ Did inspect exterior of subject property from street
   Date of Inspection

**COMPARABLE SALES**

☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
   Date of Inspection

Freddie Mac Form 2055 March 2005                    UAD Version 9/2011        Page 6 of 6                    2055 March 2005

Serial# 17AE706A
esign.alamode.com/verify

## Additional Commentary Addendum

File No. 18-12-1459

| Client | Integra Realty Resources | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 3516 N Perry Ave | | | | | |
| City | Tampa | County | Hillsborough | State | FL | Zip Code 33603 |
| Client | Integra Realty Resources | | | | | |

• **SALES COMPARISON ANALYSIS - Comparable #1 Size varies from subject by more than 25%. (Var = 37.2%)**

• **SALES COMPARISON ANALYSIS - Comparable #1 Age varies from subject by more than 30%. (Var = 61.54%)**

• **SALES COMPARISON ANALYSIS - Comparable #2 Age varies from subject by more than 30%. (Var = -92.31%)**

• **SALES COMPARISON ANALYSIS - Comparable #2 Gross Adjustment exceeds 25% of Comp Sale Price.**

• **SALES COMPARISON ANALYSIS - Comparable #3 Age varies from subject by more than 30%. (Var = -69.23%)**

**The above does not affect the credibility of the Sales Comparison Approach.**

Serial# 17AE706A
alamode.com/verify

## Comparable Photo Page

| Client | Integra Realty Resources | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 3516 N Perry Ave | | | | | |
| City | Tampa | County Hillsborough | | State FL | Zip Code 33603 | |
| Client | Integra Realty Resources | | | | | |



**Comparable 1**

1021 W Henry Ave

| | |
|---|---|
| Prox. to Subject | 3.81 miles NE |
| Sale Price | 1,179,000 |
| Gross Living Area | 4,909 |
| Total Rooms | 8 |
| Total Bedrooms | 4 |
| Total Bathrooms | 3.0 |
| Location | N;Res; |
| View | B;Wtr; |
| Site | 21080 sf |
| Quality | Q2 |
| Age | 21 |



**Comparable 2**

3916 1/2 N Ridge Ave

| | |
|---|---|
| Prox. to Subject | 0.27 miles NE |
| Sale Price | 840,000 |
| Gross Living Area | 3,173 |
| Total Rooms | 8 |
| Total Bedrooms | 4 |
| Total Bathrooms | 4.0 |
| Location | A;BsyRd; |
| View | B;Wtr; |
| Site | 11642 sf |
| Quality | Q3 |
| Age | 1 |



**Comparable 3**

9425 Oak St

| | |
|---|---|
| Prox. to Subject | 10.18 miles SE |
| Sale Price | 915,000 |
| Gross Living Area | 2,770 |
| Total Rooms | 7 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.0 |
| Location | N;Res; |
| View | B;Wtr; |
| Site | 10645 sf |
| Quality | Q2 |
| Age | 4 |

Photo is from the MLS
people were outside during
the inspection

Serial# 17AE706A
esign.alamode.com/verify

## Comparable Photo Page

| Client | Integra Realty Resources | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 3516 N Perry Ave | | | | | |
| City | Tampa | County | Hillsborough | State | FL | Zip Code | 33603 |
| Client | Integra Realty Resources | | | | | |

**Comparable 4**

Prox. to Subject
Sale Price
Gross Living Area
Total Rooms
Total Bedrooms
Total Bathrooms
Location
View
Site
Quality
Age

**Comparable 5**

Prox. to Subject
Sale Price
Gross Living Area
Total Rooms
Total Bedrooms
Total Bathrooms
Location
View
Site
Quality
Age

**Comparable 6**

Prox. to Subject
Sale Price
Gross Living Area
Total Rooms
Total Bedrooms
Total Bathrooms
Location
View
Site
Quality
Age

Serial# 17AE706A
esign.alamode.com/verify

**Rent Comparable Photos 1-3**

| Client | Integra Realty Resources | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 3516 N Perry Ave | | | | | |
| City | Tampa | County | Hillsborough | State | FL | Zip Code 33603 |
| Client | Integra Realty Resources | | | | | |



### Rent Comparable 1

Prox. to Subject
Sale Price
Gross Living Area
Total Rooms
Total Bedrooms
Total Bathrooms
Location
View
Site
Quality
Age



### Rent Comparable 2

Prox. to Subject
Sale Price
Gross Living Area
Total Rooms
Total Bedrooms
Total Bathrooms
Location
View
Site
Quality
Age



### Rent Comparable 3

Prox. to Subject
Sale Price
Gross Living Area
Total Rooms
Total Bedrooms
Total Bathrooms
Location
View
Site
Quality
Age

Serial# 17AE706A
esign.alamode.com/verify

# Comparable Sales Map

| Client | Integra Realty Resources | | | | |
|---|---|---|---|---|---|
| Property Address | 3516 N Perry Ave | | | | |
| City | Tampa | County Hillsborough | | State FL | Zip Code 33603 |
| Client | Integra Realty Resources | | | | |



Serial# 17AE706A
esign.alamode.com/verify

## Subject Photo Page

| Client | Integra Realty Resources | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 3516 N Perry Ave | | | | | | |
| City | Tampa | County | Hillsborough | | State | FL | Zip Code 33603 |
| Client | Integra Realty Resources | | | | | | |



### Subject Front

3516 N Perry Ave

| | |
|---|---|
| Sales Price | |
| Gross Living Area | 3,578 |
| Total Rooms | 8 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2.1 |
| Location | N;Res; |
| View | B;Wtr; |
| Site | 12000 sf |
| Quality | Q2 |
| Age | 13 |



### Subject Front



### Subject Street



Serial# 17AE706A
esign.alamode.com/verify

# Market Conditions Addendum to the Appraisal Report

File No. 18-12-1459

The purpose of this addendum is to provide the lender/client with a clear and accurate understanding of the market trends and conditions prevalent in the subject neighborhood. This is a required addendum for all appraisal reports with an effective date on or after April 1, 2009.

| Property Address | 3516 N Perry Ave | City | Tampa | State | FL | ZIP Code | 33603 |
|---|---|---|---|---|---|---|---|

| Borrower | N/A |
|---|---|

**Instructions:** The appraiser must use the information required on this form as the basis for his/her conclusions, and must provide support for those conclusions, regarding housing trends and overall market conditions as reported in the Neighborhood section of the appraisal report form. The appraiser must fill in all the information to the extent it is available and reliable and must provide analysis as indicated below. If any required data is unavailable or is considered unreliable, the appraiser must provide an explanation. It is recognized that not all data sources will be able to provide data for the shaded areas below; if it is available, however, the appraiser must include the data in the analysis. If data sources provide the required information as an average instead of the median, the appraiser should report the available figure and identify it as an average. Sales and listings must be properties that compete with the subject property, determined by applying the criteria that would be used by a prospective buyer of the subject property. The appraiser must explain any anomalies in the data, such as seasonal markets, new construction, foreclosures, etc.

| Inventory Analysis | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | 5 | 7 | 5 | ☐ Increasing | ☒ Stable | ☐ Declining |
| Absorption Rate (Total Sales/Months) | 0.83 | 2.33 | 1.67 | ☒ Increasing | ☐ Stable | ☐ Declining |
| Total # of Comparable Active Listings | 23 | 20 | 15 | ☒ Declining | ☐ Stable | ☐ Increasing |
| Months of Housing Supply (Total Listings/Ab.Rate) | 27.6 | 8.57 | 9 | ☒ Declining | ☐ Stable | ☐ Increasing |

| Median Sale & List Price, DOM, Sale/List % | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Median Comparable Sale Price | $649,000 | $600,000 | $807,000 | ☒ Increasing | ☐ Stable | ☐ Declining |
| Median Comparable Sales Days on Market | 13 | 47 | 77 | ☐ Declining | ☐ Stable | ☒ Increasing |
| Median Comparable List Price | $690,000 | $732,450 | $650,000 | ☐ Increasing | ☐ Stable | ☒ Declining |
| Median Comparable Listings Days on Market | 96 | 146 | 212 | ☐ Declining | ☐ Stable | ☒ Increasing |
| Median Sale Price as % of List Price | 98.92 | 97.27 | 95.22 | ☐ Increasing | ☐ Stable | ☒ Declining |
| Seller-(developer, builder, etc.)paid financial assistance prevalent? | ☒ Yes | ☐ No | | ☐ Declining | ☐ Stable | ☒ Increasing |

Explain in detail the seller concessions trends for the past 12 months (e.g., seller contributions increased from 3% to 5%, increasing use of buydowns, closing costs, condo fees, options, etc.). The MFR MLS indicates there were 17 closed sales during the past 12 months and 4 of those sales contained seller concessions which is 24% of the total transactions in this market area. Prior Months 7-12: 5 Sales; 0 with concessions; 0% of sales for this period. 4-6: 7 Sales; 2 with concessions; 29% of sales for this period. 0-3: 5 Sales; 2 with concessions; 40% of sales for this period. The concessions ranged between $2,000 and $25,500. The median concession amount is $8,125.

Are foreclosure sales (REO sales) a factor in the market? ☐ Yes ☒ No If yes, explain (including the trends in listings and sales of foreclosed properties).
The data used in the grid above does not indicate there were any REO/Short sales or other distressed properties associated with the reported transactions. However, this is not a mandatory reporting field for agents and there may be some distressed sales that were not reported. It is beyond the scope of this assignment to confirm each sale used in the Market Conditions Report.

Cite data sources for above information. The MFR MLS was the data source used to complete the Market Conditions Addendum.

Summarize the above information as support for your conclusions in the Neighborhood section of the appraisal report form. If you used any additional information, such as an analysis of pending sales and/or expired and withdrawn listings, to formulate your conclusions, provide both an explanation and support for your conclusions.
According to the S&P Corelogic Case-Shiller price index for the Tampa Bay area (as of October 2018 and published December 2018) the median home price in October 2017 was $200,410 and it increased 6.41% to $213,260 by October 2018. Over the prior year prices have increased 0.53% per month. Furthermore, they indicated that home prices have appreciated 58.06%, since October 2010. So this index indicates that overall homes prices are appreciating in the Tampa Bay area. Considering all of the market data, on page 1 of the form I have indicated increasing property values. As of December 2018 the 30-year fixed interest rate was 4.75 and the 15-year fixed was 4.83%. In November 2018, Fannie Mae's Home Purchase Sentiment Index increased slightly by 0.5 points to 86.2. The increase can be attributed primarily to an increase in the net share of Americans who reported significantly higher income, which hit a new survey high after jumping 5 percentage points. According to NAR, existing home sales nationally increased 1.9% in November 2018.

| If the subject is a unit in a condominium or cooperative project, complete the following: | | Project Name: | | | | |
|---|---|---|---|---|---|---|
| Subject Project Data | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
| Total # of Comparable Sales (Settled) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Absorption Rate (Total Sales/Months) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Total # of Active Comparable Listings | | | | ☐ Declining | ☐ Stable | ☐ Increasing |
| Months of Unit Supply (Total Listings/Ab.Rate) | | | | ☐ Declining | ☐ Stable | ☐ Increasing |

Are foreclosure sales (REO sales) a factor in the project? ☐ Yes ☐ No If yes, indicate the number of REO listings and explain the trends in listings and sales of foreclosed properties.

Summarize the above trends and address the impact on the subject unit and project.

🔒 esign.alamode.com/verify    Serial# 17AE706A

| Signature | | Signature | |
|---|---|---|---|
| Appraiser Name | Robert K. Baird | Supervisory Appraiser Name | |
| Company Name | Valucentric, LLC | Company Name | |
| Company Address | 4590 Ulmerton Road, #201, Clearwater, FL 33762 | Company Address | |
| State License/Certification # | Cert Gen RZ2497 State FL | State License/Certification # | State |
| Email Address | info@valucentric.com | Email Address | |

| Freddie Mac Form 71 March 2009 | Page 1 of 1 | Fannie Mae Form 1004MC March 2009 |
|---|---|---|

Form 1004MC2 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Serial# 17AE706A
esign.alamode.com/verify

Sidebar labels: MARKET RESEARCH & ANALYSIS | CONDO/CO-OP PROJECTS | APPRAISER

# SINGLE FAMILY COMPARABLE RENT SCHEDULE

File # 18-12-1459
File # 18-12-1459

This form is intended to provide the appraiser with a familiar format to estimate the market rent of the subject property. Adjustments should be made only for items of significant difference between the comparables and the subject property.

| ITEM | SUBJECT | COMPARABLE NO. 1 | | COMPARABLE NO. 2 | | COMPARABLE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 3516 N Perry Ave Tampa, FL 33603 | 4824 N River Blvd Tampa, FL 33603 | | 13310 Waterford Run Dr Riverview, FL 33569 | | 11949 Riverhills Dr Tampa, FL 33617 | |
| Proximity to Subject | | 1.17 miles NE | | 15.10 miles SE | | 8.38 miles NE | |
| Date Lease Begins Date Lease Expires | | 4/2018 3/2019 | | 8/2018 7/2019 | | 3/2018 2/2019 | |
| Monthy Rental | If Currently Rented: $ | $ 4,000 | | $ 3,500 | | $ 2,700 | |
| Less: Utilities Furniture | $ | $ 0 0 | | $ 0 0 | | $ 0 0 | |
| Adjusted Monthly Rent | $ | $ 4,000 | | $ 3,500 | | $ 2,700 | |
| Data Source | Inspection Public records | MLS T2912237 Public records | | MLS T3115186 Public records | | MLS T2923302 Public records | |
| RENT ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. |
| Rent Concessions | | None | | None | | None | |
| Location/View | N;Res; B;Wtr; | N;Res; B;Wtr; | | N;Res; B;Wtr; | | N;Res; B;Wtr; | |
| Design and Appeal | DT2.00;Contemp | DT2.00;Contemp | | DT2.00;Contemp | | DT2.00;Contemp | |
| Age/Condition | 13 C3 | 15 C3 | | 15 C3 | | 14 C3 | |
| Above Grade Room Count | Total Bdrms Baths 8 4 2.1 | Total Bdrms Baths 7 3 3.1 | -25 | Total Bdrms Baths 8 4 4 | -25 | Total Bdrms Baths 7 3 3.1 | -25 |
| Gross Living Area | 3,578 Sq. Ft. | 2,396 Sq. Ft. | +300 | 4,755 Sq. Ft. | -300 | 2,700 Sq. Ft. | |
| Other (e.g., basement, etc.) | 0sf | 0sf | | 0sf | | 0sf | |
| Other: | 2-garage | 6-garage | -200 | 3-garage | -50 | 2-garage | |
| Net Adj. (total) | | ☒ + ☐ − $ | 75 | ☐ + ☒ − $ | -375 | ☐ + ☒ − $ | -25 |
| Indicated Monthly Market Rent | | Net 1.9 % Gross 13.1 % $ 4,075 | | Net 10.7 % Gross 10.7 % $ 3,125 | | Net 0.9 % Gross 0.9 % $ 2,675 | |

Comments on market data, including the range of rents for single family properties, an estimate of vacancy for single family rental properties, the general trend of rents and vacancy, and support for the above adjustments. (Rent concessions should be adjusted to the market, not to the subject property.)   All of the rent comparables are located in riverfront locations. The rent comparables indicate an adjusted range from $2,675/month to $4,075/month. Properties along the river vary greatly. However, due to the subject's central location and living area size it should have a value to the high end of the range or $3,600 per month.

Final Reconciliation of Market Rent:    A reasonable and credible lease rate is $3,600 per month.

🔒 esign.alamode.com/verify    Serial: 17AE706A

I (WE) ESTIMATE THE MONTHLY MARKET RENT OF THE SUBJECT AS OF _____ 01/21/2019 _____ TO BE $ _____ 3,600 _____

| Appraiser(s) SIGNATURE | Review Appraiser SIGNATURE |
|---|---|
| NAME Robert K. Baird | (If applicable) NAME |
| 4590 Ulmerton Rd #201 Clearwater, FL 33762 | |
| Date Property Inspected 01/21/2019 Report Signed 01/22/2019 | Date Property Inspected _____ Report Signed _____ |
| License or Certification # Cert Gen RZ2497 State FL | License or Certification # _____ State _____ |
| Expiration Date of License or Certification 11/30/2020 | Expiration Date of License or Certification _____ |
| | Review Appraiser ☐ Did ☐ Did Not Inspect Subject Property |

Freddie Mac Form 1000 (8/88)
Form 1007 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE
Fannie Mae Form 1007 (8/88)

Serial# 17AE706A
esign.alamode.com/verify

**Scope of Work**

File No. 18-12-1489

| Client | Integra Realty Resources | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 3516 N Perry Ave | | | | | | |
| City | Tampa | County | Hillsborough | State | FL | Zip Code | 33603 |
| Client | Integra Realty Resources | | | | | | |

The scope of work applied to this specific appraisal assignment is summarized below.

In the preparation of this report, the appraisal problem was identified; that being the client, intended use, intended users, type and definition of value opinion, effective date of the opinion and conclusion, subject of the assignment and relevant characteristics about that subject, and the assignment conditions. A solution to the appraisal problem (scope of work) was planned, and then implemented so as to arrive at a credible result. The appraiser(s) of this report have the knowledge and experience to complete the assignment competently.

The scope of work applied in this assignment is summarized as:

Viewed the general neighborhood of the subject property.
Inspected the exterior of the subject property from the street.
Gathered information about relevant characteristics of the property.
Noted the characteristics of the property relevant to this assignment.
Analyzed the highest and best use of the property to come to a conclusion.
Market data researched included market trends, rent comparables, and comparable improved sales.
Comparables were researched from varied sources which included the appraisal firm's own database, the public records, and national data services.
Analyzed the data collected and applied it to the Sales Comparison approach to value.
The client has requested a rental analysis, however, an Income Approach was not developed.

The scope of work did not include the following:
I was unable to inspect the interior of the improvements.

The subject property comprises a single family home that was built in 2006. Due to the age of the improvements, the Cost Approach would have an abundant depreciation which weakens the reliability of the approach. Therefore, the Cost Approach was not applicable.

The client has requested a rent analysis. However, single family homes are typically not purchased for their anticipated income stream. Thus, the market does not consider the Income Approach applicable.

Extraordinary Assumption

Per USPAP 2018-2019 - An extraordinary assumption is defined as: "as assignment-specific assumption as of the effective date regarding uncertain information used in the analysis which, if found to be false, could alter the appraiser's opinions or conclusions".

I have only inspected the subject property from the street and have not performed a thorough interior and exterior inspection. The opinion of value is based on the subject property being in average condition as of the effective date.

The opinion of value assumes the improvements are in average condition.

Hypothetical Condition

Per USPAP 2018-2019 - A hypothetical condition is defined as: "a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis.2"

The opinion of value is based on the Hypothetical Condition the value of the subject property is not affected by any detrimental conditions including Chinese drywall.

Serial# 17AE706A
esign.alamode.com/verify

**Subject Aerial Photograph**



January 1, 2019

Bob Henriquez, CFA
Hillsborough County Property Appraiser
This map is for assessment purposes only.
It is not a survey.
2017 Aerials

Serial# 17AE706A
esign.alamode.com/verify

## Subject Flood Map



Serial# 17AE706A
esign.alamode.com/verify

Case 2:09-md-02047-EEF-MBN Document 22363-58 Filed 11/19/19 Page 89 of 106
Case 4:11-cv-22408-MGC Document 201-40 Entered on FLSD Docket 05/13/2019 Page 35 of 02
Property Appraiser Page 1



**Bob Henriquez**
**Hillsborough County Property Appraiser**

https://www.hcpafl.org/
15th Floor County Ctr.
601 E. Kennedy Blvd, Tampa, Florida 33602-4932
Ph: (813) 272-6100

## Folio: 167032-0100



W Indiana Ave

### Owner Information

| | |
|---|---|
| Owner Name | HERNANDEZ BERTHA L |
| Mailing Address | 3516 N PERRY AVE<br>TAMPA, FL  33603-5242 |
| Site Address | 3516 N PERRY AVE, TAMPA |
| PIN | A-11-29-18-4HA-000022-00018.0 |
| Folio | 167032-0100 |
| Prior PIN | |
| Prior Folio | 167032-0000 |
| Tax District | TA - TAMPA |
| Property Use | 0100 SINGLE FAMILY R |
| Plat Book/Page | 1/134 |
| Neighborhood | 204006.00 | Tampa Hts Area, N of Columbus to River |
| Subdivision | 4HA | RIVERSIDE NORTH |

### Value Summary

| Taxing District | Market Value | Assessed Value | Exemptions | Taxable Value |
|---|---|---|---|---|
| County | $758,578 | $371,336 | $50,000 | $321,336 |
| Public Schools | $758,578 | $371,336 | $25,000 | $346,336 |
| Municipal | $758,578 | $371,336 | $50,000 | $321,336 |
| Other Districts | $758,578 | $371,336 | $50,000 | $321,336 |

Note: This section shows Market Value, Assessed Value, Exemptions, and Taxable Value for taxing districts. Because of changes in Florida Law, it is possible to have different assessed and taxable values on the same property. For example, the additional $25,000 Homestead Exemption and the non-homestead CAP do not apply to public schools, and the Low Income Senior Exemption only applies to countywide and certain municipal millages.

### Sales Information

| Book | Page | Month | Year | Type Inst | Qualified or Unqualified | Vacant or Improved | Price |
|---|---|---|---|---|---|---|---|
| 8068 | 1608 | 02 | 1996 | WD | Qualified | Improved | $125,000 |
| 7779 | 1000 | 06 | 1995 | WD | Qualified | Improved | $115,000 |
| 5360 | 0886 | 03 | 1988 | WD | Qualified | | $82,500 |

Form SCNLGL - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Serial# 17AE706A
esign.alamode.com/verify

Case 2:09-md-02047-EEF-MBN Document 22363-58 Filed 11/18/19 Page 90 of 106
Case 4:11-cv-22408-MGC Document 281-10 Entered on FLSD Docket 05/13/2019 Page 36 of 52
**Property Appraiser Page 2**

## Building Information

**Building 1**

| | |
|---|---|
| Type | 01 | SINGLE FAMILY |
| Year Built | 2006 |

### Building 1 Construction Details

| Element | Code | Construction Detail |
|---|---|---|
| Class | C | Masonry or Concrete Frame |
| Exterior Wall | 7 | Masonry Frm: Stucco |
| Exterior Wall | 6 | Wd/Mtl Frm: Stucco |
| Roof Structure | 3 | Gable or Hip |
| Roof Cover | 6 | Tile |
| Interior Walls | 5 | Drywall |
| Interior Flooring | 8 | Carpet |
| Interior Flooring | 7 | Tile |
| Heat/AC | 2 | Central |
| Architectural Style | 10 | Contemporary Multi-Story |
| Condition | 3 | Average |
| Bedrooms | 3.0 | |
| Bathrooms | 3.5 | |
| Stories | 2.0 | |
| Units | 1.0 | |




### Building 1 subarea

| Area Type | Gross Area | Heated Area | Depreciated Value |
|---|---|---|---|
| SFB | 121 | 121 | $13,593 |
| FOP | 432 | | $15,134 |
| BAS | 2,422 | 2,422 | $339,395 |
| FOP | 63 | | $2,242 |
| FGR | 543 | | $38,115 |
| FOP | 230 | | $8,128 |
| ADD | | | $0 |
| BAL | 567 | | $11,911 |
| FOP | 398 | | $14,013 |
| FUS | 1,070 | 1,070 | $134,945 |
| **Totals** | **5,846** | **3,613** | **$577,476** |

## Extra Features

| OB/XF Code | Description | Building | Year On Roll | Length | Width | Units | Value |
|---|---|---|---|---|---|---|---|
| 0350 | POOL 01 NO ENCL | 1 | 2003 | 0 | 0 | 1.00 | $22,490 |
| 0190 | DOCK WOOD | 1 | 2003 | 0 | 0 | 300.00 | $2,805 |
| 0245 | BOATPORT | 1 | 2003 | 24 | 12 | 288.00 | $2,189 |
| 0850 | ELEVATOR | 1 | 2008 | 0 | 0 | 1.00 | $17,117 |

## Land Information - Total Acreage: 0.28

| Use Code | Description | Zone | Front | Depth | Land Type | Total Land Units | Land Value |
|---|---|---|---|---|---|---|---|
| 05HK | Hillsborough River Class 18 | RS-60 | 60.00 | 200.00 | FF | FRONT FEET | 60.00 | $130,800 |
| 993I | Acreage Class 3 | RS-60 | 0.0 | 0.0 | AC | ACREAGE | 0.15 | $5,700 |

## Legal Description

RIVERSIDE NORTH LOT 18 AND WATER LOT 18 AND CLOSED RIVER BLVD LYING BETWEEN LOT 18 AND WATER LOT 18 BLOCK 22

Form SCNLGL - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Serial# 17AE706A
esign.alamode.com/verify

Case 2:09-md-02047-EEF-MBN Document 22363-58 Filed 11/19/19 Page 91 of 106
Case 4:11-cv-22408-MGC Document 291-40 Entered on FLSD Docket 05/13/2019 Page 37 of 52
License



RICK SCOTT, GOVERNOR                                   JONATHAN ZACHEM, SECRETARY



## STATE OF FLORIDA
## DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION

### FLORIDA REAL ESTATE APPRAISAL BD

THE CERTIFIED GENERAL APPRAISER HEREIN IS CERTIFIED UNDER THE
PROVISIONS OF CHAPTER 475, FLORIDA STATUTES

## BAIRD, ROBERT KEITH

1423 S HOWARD AVE
TAMPA          FL 33606

LICENSE NUMBER: RZ2497

EXPIRATION DATE: NOVEMBER 30, 2020

Always verify licenses online at MyFloridaLicense.com



Do not alter this document in any form.

This is your license. It is unlawful for anyone other than the licensee to use this document.

Case 2:09-md-02047-EEF-MBN Document 22363-58 Filed 11/19/19 Page 92 of 106
Case 4:11-cv-22408-MGC Document 201-40 Entered on FLSD Docket 05/13/2019 Page 38 of 52
E 320



**LIA Administrators & Insurance Services**

August 28, 2018

RE:  Aspen Specialty Insurance Company
      (A.M. Best Rated A (Excellent), Financial Size Class XV.
      Policy # LR0092M18 Customer ID: 600284

For Clients of
VALUCENTRIC, LLC
1003 Mt. Hermon Road, Suite 201
Salisbury, MD 21804

The purpose of this letter is to advise you of the professional liability (E&O) insurance coverage of VALUCENTRIC, LLC and staff appraisers performing work on its behalf.

VALUCENTRIC, LLC is the named insured under the professional liability insurance policy identified above. This policy provides the following coverage, subject to its terms and conditions:

| Limit of Liability (Each Claim/Aggregate) | Deductible | Effective Date | Expiration Date |
|---|---|---|---|
| $1,000,000/$2,000,000 | $10,000 | 09/19/2018 | 09/19/2019 |

Under the policy, any appraiser who "is, was, or hereafter becomes" a staff appraiser or other employee/contractor for VALUCENTRIC, LLC is also an insured under the policy while acting on behalf of VALUCENTRIC, LLC. The definition of insured includes the following staff appraisers of VALUCENTRIC, LLC:

(Sample)

If you have any questions concerning the insurance coverage arranged by our company, please feel free to contact me directly.

Sincerely,

*Susan Lomeli*

Susan Lomeli
LIA Administrators & Insurance Services
800.334.0652 Ext.139
Susan@Liability.com

| Client | Integra Realty Resources | | | | | | File No. 18-12-1459 |
|---|---|---|---|---|---|---|---|
| Property Address | 3516 N Perry Ave | | | | | | |
| City | Tampa | | County | Hillsborough | State | FL | Zip Code 33603 |
| Client | Integra Realty Resources | | | | | | |

## APPRAISAL AND REPORT IDENTIFICATION

This Report is <u>one</u> of the following types:

[X] Appraisal Report    (A written report prepared under Standards Rule 2-2(a) , pursuant to the Scope of Work, as disclosed elsewhere in this report.)

[ ] Restricted Appraisal Report    (A written report prepared under Standards Rule 2-2(b) , pursuant to the Scope of Work, as disclosed elsewhere in this report, restricted to the stated intended use by the specified client or intended user.)

### Comments on Standards Rule 2-3

I certify that, to the best of my knowledge and belief:
- The statements of fact contained in this report are true and correct.
- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.
- Unless otherwise indicated, I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.
- Unless otherwise indicated, I have performed no services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.
- I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.
- My engagement in this assignment was not contingent upon developing or reporting predetermined results.
- My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice that were in effect at the time this report was prepared.
- Unless otherwise indicated, I have made a personal inspection of the property that is the subject of this report.
- Unless otherwise indicated, no one provided significant real property appraisal assistance to the person(s) signing this certification (if there are exceptions, the name of each individual providing significant real property appraisal assistance is stated elsewhere in this report).

### Reasonable Exposure Time    (USPAP defines Exposure Time as the estimated length of time that the property interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of the appraisal.)

My Opinion of Reasonable Exposure Time for the subject property at the market value stated in this report is:    3 to 6 months

### Comments on Appraisal and Report Identification

Note any USPAP-related issues requiring disclosure and any state mandated requirements:

In the past three years, from the date of this report, we have not performed an appraisal or any other services for the subject.

I certify, as the appraiser, that I have completed all aspects of this valuation, including reconciling my opinion of value, free of influence from the client, client's representatives, borrower, or any other party to the transaction.

As of the date of this report, I, (Robert K. Baird) have completed the Standards and Ethics Education Requirement of the Appraisal Institute for associate members.

GEOGRAPHIC COMPETENCE - In accordance with Certification 11, the appraiser further attest to my competence for the market area that is the subject of this report. The location of the subject property is within an area regularly serviced within my appraisal practice and I utilize the MRED MLS, Realist and other data sources specific to this market area.

APPRAISER COMPETENCY

An appraiser must determine prior to accepting the assignment that he or she can perform the assignment competently. Competency requires:

1. The ability to properly identify the problem to be addressed; and

2. The knowledge and experience to complete the assignment competently; and

3. Recognition of, and compliance with, laws and regulations that apply to the appraiser or to the assignment.

I am competent to perform this assignment based on my state appraiser license and familiarity with this type of property in the subject market.

I performed this appraisal in accordance with the requirements of Title XI of the Financial Institution Reform, Recovery and Enforcement Act of 1989, (12 U.S.C.3331 et seq.), and any implementing regulations

esign.alamode.com/verify    Serial:17AE706A

| APPRAISER: | SUPERVISORY or CO-APPRAISER (if applicable): |
|---|---|
| Signature: | Signature: |
| Name: Robert K. Baird | Name: |
| 4590 Ulmerton Rd #201 Clearwater, FL 33762 | |
| State Certification #: Cert Gen RZ2497 | State Certification #: |
| or State License #: | or State License #: |
| State: FL   Expiration Date of Certification or License: 11/30/2020 | State:   Expiration Date of Certification or License: |
| Date of Signature and Report: 01/22/2019 | Date of Signature: |
| Effective Date of Appraisal: 01/21/2019 | |
| Inspection of Subject: [ ] None [X] Interior and Exterior [ ] Exterior-Only | Inspection of Subject: [ ] None [ ] Interior [ ] Exterior-Only |
| Date of Inspection (if applicable): 01/17/2019 | Date of Inspection (if applicable): |

Serial# 17AE706A
esign.alamode.com/verify

Form ID14E - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

| Client: | Integra Realty Resources | Client File #: | 18-12-1459 |
|---|---|---|---|
| Subject Property: | 3516 N Perry Ave, Tampa, FL 33603 | Appraisal File #: | 18-12-1459 |

## STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS

This appraisal is subject to the following assumptions and limiting conditions:

- This report is prepared using forms developed and copyrighted by the Appraisal Institute. However, the content, analyses, and opinions set forth in this report are the sole product of the appraiser. The Appraisal Institute is not liable for any of the content, analyses, or opinions set forth herein.

- No responsibility is assumed for matters legal in character or nature. No opinion is rendered as to title, which is assumed to be good and marketable. All existing liens, encumbrances, and assessments have been disregarded, unless otherwise noted, and the property is appraised as though free and clear, having responsible ownership and competent management.

- I have examined the property described herein exclusively for the purposes of identification and description of the real property. The objective of our data collection is to develop an opinion of the highest and best use of the subject property and make meaningful comparisons in the valuation of the property. The appraiser's observations and reporting of the subject improvements are for the appraisal process and valuation purposes only and should not be considered as a warranty of any component of the property. This appraisal assumes (unless otherwise specifically stated) that the subject is structurally sound and all components are in working condition.

- I will not be required to give testimony or appear in court because of having made an appraisal of the property in question, unless specific arrangements to do so have been made in advance, or as otherwise required by law.

- I have noted in this appraisal report any significant adverse conditions (such as needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) discovered during the data collection process in performing the appraisal. Unless otherwise stated in this appraisal report, I have no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and have assumed that there are no such conditions and make no guarantees or warranties, express or implied. I will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because I am not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable public and/or private sources that I believe to be true and correct.

- I will not disclose the contents of this appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice, and/or applicable federal, state or local laws.

- The Client is the party or parties who engage an appraiser (by employment contract) in a specific assignment. A party receiving a copy of this report from the client does not, as a consequence, become a party to the appraiser-client relationship. Any person who receives a copy of this appraisal report as a consequence of disclosure requirements that apply to an appraiser's client, does not become an intended user of this report unless the client specifically identified them at the time of the assignment. The appraiser's written consent and approval must be obtained before this appraisal report can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

- If this valuation conclusion is subject to satisfactory completion, repairs, or alterations, it is assumed that the improvements will be completed competently and without significant deviation.

## VALUE DEFINITION

| ☒ Market Value Definition (below) | ☐ Alternate Value Definition (attached) |
|---|---|

MARKET VALUE is defined as the most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:

1. buyer and seller are typically motivated;

2. both parties are well informed or well advised and acting in what they consider their own best interests;

3. a reasonable time is allowed for exposure in the open market;

4. payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and

5. the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale.

Source: The Dictionary of Real Estate Appraisal, 5th ed., Appraisal Institute

* NOTICE: The Appraisal Institute publishes this form for use by appraisers where the appraiser deems use of the form appropriate. Depending on the assignment, the appraiser may need to provide additional data, analysis and work product not called for in this form. The Appraisal Institute plays no role in completing the form appropriate, the responsibility for the data, analysis or any other work product provided by the individual appraiser(s).

AI Reports® AI-900.04 Certification, Assumptions and Limiting Conditions          © Appraisal Institute 2013, All Rights Reserved          January 2013

Form AI9004 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Serial# 17AE706A
esign.alamode.com/verify

Case 2:09-md-02047-EEF-MBN Document 22363-58 Filed 11/18/19 Page 95 of 106
Case 4:11-cv-22408-MGC Document 201-10 Entered on FLSD Docket 05/13/2013 Page 9 of 41
File No: 18-12-1459    Page 9 of 24 of 30

| Client: | Integra Realty Resources | Client File #: | 18-12-1459 |
|---|---|---|---|
| Subject Property: | 3516 N Perry Ave, Tampa, FL 33603 | Appraisal File #: | 18-12-1459 |

## APPRAISER CERTIFICATION

I certify that, to the best of my knowledge and belief:

- The statements of fact contained in this report are true and correct.

- The reported analysis, opinions, and conclusions are limited only by the report assumptions and limiting conditions, and are my personal, unbiased professional analysis, opinions, and conclusions.

- I have no present (unless specified below) or prospective interest in the property that is the subject of this report, and I have no (unless specified below) personal interest with respect to the parties involved.

- I have no bias with respect to any property that is the subject of this report or to the parties involved with this assignment.

- My engagement in this assignment was not contingent upon the developing or reporting predetermined results.

- My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

- My analysis, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.

- Individuals who have provided significant real property appraisal assistance are named below. The specific tasks performed by those named are outlined in the Scope of Work section of this report.

☒ None    ☐ Name(s)    N/A

As previously identified in the Scope of Work section of this report, the signer(s) of this report certify to the inspection of the property that is the subject of this report as follows:

Property inspected by Appraiser    ☒ Yes    ☐ No

Property inspected by Co-Appraiser    ☐ Yes    ☐ No

- Services provided, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment:    ☒ None    ☐ Specify services provided:

## ADDITIONAL CERTIFICATION FOR APPRAISAL INSTITUTE MEMBERS, CANDIDATES AND PRACTICING AFFILIATES

Appraisal Institute Designated Member, Candidate for Designation, or Practicing Affiliate Certify:

- The reported analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the requirements of the Code of Professional Ethics and the Standards of Professional Appraisal Practice of the Appraisal Institute, which include the Uniform Standards of Professional Appraisal Practice.

- The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

- I am a Candidate for Designation in the Appraisal Institute.
As of the date of this report, I have completed the Standard and Ethics Education Requirements for Candidates of the Appraisal Institute.

esign.alamode.com/verify    Serial 17AE706A

## APPRAISERS SIGNATURES

| APPRAISER: | CO-APPRAISER: |
|---|---|
| Signature | Signature |
| Name    Robert K. Baird | Name |
| Report Date    01/22/2019 | Report Date |
| Trainee ☐    Licensed ☐    Certified Residential ☐    Certified General ☒ | Trainee ☐    Licensed ☐    Certified Residential ☐    Certified General ☐ |
| License #    Cert Gen RZ2497    State  FL | License #    State |
| Expiration Date    11/30/2020 | Expiration Date |

* NOTICE:   The Appraisal Institute publishes this form for use by appraisers where the appraiser deems use of the form appropriate. Depending on the assignment, the appraiser may need to provide additional data, analysis and work product not called for in this form. The Appraisal Institute plays no role in completing the form  responsibility for the data, analysis or any other work product provided by the individual appraiser(s).

AI Reports® AI-900.04 Certification, Assumptions and Limiting Conditions        © Appraisal Institute 2013, All Rights Reserved        January 2013

Serial# 17AE706A
esign.alamode.com/verify

Form AI9004 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Case 2:09-md-02047-EEF-MBN Document 22363-58 Filed 11/18/19 Page 96 of 106
Case 4:11-cv-22408-MGC Document 291-40 Entered on FLSD Docket 05/13/2019 Page 42 of 52

18-12-1459
File No.    18-12-1459

## UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM
(Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)

Condition Ratings and Definitions

C1
The improvements have been recently constructed and have not been previously occupied. The entire structure and all components are new and the dwelling features no physical depreciation.

Note: Newly constructed improvements that feature recycled or previously used materials and/or components can be considered new dwellings provided that the dwelling is placed on a 100 percent new foundation and the recycled materials and the recycled components have been rehabilitated/remanufactured into like-new condition. Improvements that have not been previously occupied are not considered "new" if they have any significant physical depreciation (that is, newly constructed dwellings that have been vacant for an extended period of time without adequate maintenance or upkeep).

C2
The improvements feature no deferred maintenance, little or no physical depreciation, and require no repairs. Virtually all building components are new or have been recently repaired, refinished, or rehabilitated. All outdated components and finishes have been updated and/or replaced with components that meet current standards. Dwellings in this category are either almost new or have been recently completely renovated and are similar in condition to new construction.

Note: The improvements represent a relatively new property that is well maintained with no deferred maintenance and little or no physical depreciation, or an older property that has been recently completely renovated.

C3
The improvements are well maintained and feature limited physical depreciation due to normal wear and tear. Some components, but not every major building component, may be updated or recently rehabilitated. The structure has been well maintained.

Note: The improvement is in its first-cycle of replacing short-lived building components (appliances, floor coverings, HVAC, etc.) and is being well maintained. Its estimated effective age is less than its actual age. It also may reflect a property in which the majority of short-lived building components have been replaced but not to the level of a complete renovation.

C4
The improvements feature some minor deferred maintenance and physical deterioration due to normal wear and tear. The dwelling has been adequately maintained and requires only minimal repairs to building components/mechanical systems and cosmetic repairs. All major building components have been adequately maintained and are functionally adequate.

Note: The estimated effective age may be close to or equal to its actual age. It reflects a property in which some of the short-lived building components have been replaced, and some short-lived building components are at or near the end of their physical life expectancy; however, they still function adequately. Most minor repairs have been addressed on an ongoing basis resulting in an adequately maintained property.

C5
The improvements feature obvious deferred maintenance and are in need of some significant repairs. Some building components need repairs, rehabilitation, or updating. The functional utility and overall livability is somewhat diminished due to condition, but the dwelling remains useable and functional as a residence.

Note: Some significant repairs are needed to the improvements due to the lack of adequate maintenance. It reflects a property in which many of its short-lived building components are at the end of or have exceeded their physical life expectancy but remain functional.

C6
The improvements have substantial damage or deferred maintenance with deficiencies or defects that are severe enough to affect the safety, soundness, or structural integrity of the improvements. The improvements are in need of substantial repairs and rehabilitation, including many or most major components.

Note: Substantial repairs are needed to the improvements due to the lack of adequate maintenance or property damage. It reflects a property with conditions severe enough to affect the safety, soundness, or structural integrity of the improvements.

Quality Ratings and Definitions

Q1
Dwellings with this quality rating are usually unique structures that are individually designed by an architect for a specified user. Such residences typically are constructed from detailed architectural plans and specifications and feature an exceptionally high level of workmanship and exceptionally high-grade materials throughout the interior and exterior of the structure. The design features exceptionally high-quality exterior refinements and ornamentation, and exceptionally high-quality interior refinements. The workmanship, materials, and finishes throughout the dwelling are of exceptionally high quality.

Q2
Dwellings with this quality rating are often custom designed for construction on an individual property owner's site. However, dwellings in this quality grade are also found in high-quality tract developments featuring residence constructed from individual plans or from highly modified or upgraded plans. The design features detailed, high quality exterior ornamentation, high-quality interior refinements, and detail. The workmanship, materials, and finishes throughout the dwelling are generally of high or very high quality.

Serial# 17AE706A
esign.alamode.com/verify

UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM
(Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)

Quality Ratings and Definitions (continued)

Q3

Dwellings with this quality rating are residences of higher quality built from individual or readily available designer plans in above-standard residential tract developments or on an individual property owner's site. The design includes significant exterior ornamentation and interiors that are well finished. The workmanship exceeds acceptable standards and many materials and finishes throughout the dwelling have been upgraded from "stock" standards.

Q4

Dwellings with this quality rating meet or exceed the requirements of applicable building codes. Standard or modified standard building plans are utilized and the design includes adequate fenestration and some exterior ornamentation and interior refinements. Materials, workmanship, finish, and equipment are of stock or builder grade and may feature some upgrades.

Q5

Dwellings with this quality rating feature economy of construction and basic functionality as main considerations. Such dwellings feature a plain design using readily available or basic floor plans featuring minimal fenestration and basic finishes with minimal exterior ornamentation and limited interior detail. These dwellings meet minimum building codes and are constructed with inexpensive, stock materials with limited refinements and upgrades.

Q6

Dwellings with this quality rating are of basic quality and lower cost; some may not be suitable for year-round occupancy. Such dwellings are often built with simple plans or without plans, often utilizing the lowest quality building materials. Such dwellings are often built or expanded by persons who are professionally unskilled or possess only minimal construction skills. Electrical, plumbing, and other mechanical systems and equipment may be minimal or non-existent. Older dwellings may feature one or more substandard or non-conforming additions to the original structure

Definitions of Not Updated, Updated, and Remodeled

Not Updated

Little or no updating or modernization. This description includes, but is not limited to, new homes.

Residential properties of fifteen years of age or less often reflect an original condition with no updating, if no major components have been replaced or updated. Those over fifteen years of age are also considered not updated if the appliances, fixtures, and finishes are predominantly dated. An area that is 'Not Updated' may still be well maintained and fully functional, and this rating does not necessarily imply deferred maintenance or physical/functional deterioration.

Updated

The area of the home has been modified to meet current market expectations. These modifications are limited in terms of both scope and cost.

An updated area of the home should have an improved look and feel, or functional utility. Changes that constitute updates include refurbishment and/or replacing components to meet existing market expectations. Updates do not include significant alterations to the existing structure.

Remodeled

Significant finish and/or structural changes have been made that increase utility and appeal through complete replacement and/or expansion.

A remodeled area reflects fundamental changes that include multiple alterations. These alterations may include some or all of the following: replacement of a major component (cabinet(s), bathtub, or bathroom tile), relocation of plumbing/gas fixtures/appliances, significant structural alterations (relocating walls, and/or the addition of) square footage). This would include a complete gutting and rebuild.

Explanation of Bathroom Count

Three-quarter baths are counted as a full bath in all cases.  Quarter baths (baths that feature only a toilet) are not included in the bathroom count.  The number of full and half baths is reported by separating the two values using a period, where the full bath count is represented to the left of the period and the half bath count is represented to the right of the period.

Example:
3.2 indicates three full baths and two half baths.

Serial# 17AE706A
esign.alamode.com/verify

## UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM
(Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)

Abbreviations Used in Data Standardization Text

| Abbreviation | Full Name | Fields Where This Abbreviation May Appear |
|---|---|---|
| A | Adverse | Location & View |
| ac | Acres | Area, Site |
| AdjPrk | Adjacent to Park | Location |
| AdjPwr | Adjacent to Power Lines | Location |
| ArmLth | Arms Length Sale | Sale or Financing Concessions |
| AT | Attached Structure | Design (Style) |
| B | Beneficial | Location & View |
| ba | Bathroom(s) | Basement & Finished Rooms Below Grade |
| br | Bedroom | Basement & Finished Rooms Below Grade |
| BsyRd | Busy Road | Location |
| c | Contracted Date | Date of Sale/Time |
| Cash | Cash | Sale or Financing Concessions |
| Comm | Commercial Influence | Location |
| Conv | Conventional | Sale or Financing Concessions |
| cp | Carport | Garage/Carport |
| CrtOrd | Court Ordered Sale | Sale or Financing Concessions |
| CtySky | City View Skyline View | View |
| CtyStr | City Street View | View |
| cv | Covered | Garage/Carport |
| DOM | Days On Market | Data Sources |
| DT | Detached Structure | Design (Style) |
| dw | Driveway | Garage/Carport |
| e | Expiration Date | Date of Sale/Time |
| Estate | Estate Sale | Sale or Financing Concessions |
| FHA | Federal Housing Authority | Sale or Financing Concessions |
| g | Garage | Garage/Carport |
| ga | Attached Garage | Garage/Carport |
| gbi | Built-in Garage | Garage/Carport |
| gd | Detached Garage | Garage/Carport |
| GlfCse | Golf Course | Location |
| Glfvw | Golf Course View | View |
| GR | Garden | Design (Style) |
| HR | High Rise | Design (Style) |
| in | Interior Only Stairs | Basement & Finished Rooms Below Grade |
| Ind | Industrial | Location & View |
| Listing | Listing | Sale or Financing Concessions |
| Lndfl | Landfill | Location |
| LtdSght | Limited Sight | View |
| MR | Mid-rise | Design (Style) |
| Mtn | Mountain View | View |
| N | Neutral | Location & View |
| NonArm | Non-Arms Length Sale | Sale or Financing Concessions |
| o | Other | Basement & Finished Rooms Below Grade |
| O | Other | Design (Style) |
| op | Open | Garage/Carport |
| Prk | Park View | View |
| Pstrl | Pastoral View | View |
| PwrLn | Power Lines | View |
| PubTrn | Public Transportation | Location |
| Relo | Relocation Sale | Sale or Financing Concessions |
| REO | REO Sale | Sale or Financing Concessions |
| Res | Residential | Location & View |
| RH | USDA - Rural Housing | Sale or Financing Concessions |
| rr | Recreational (Rec) Room | Basement & Finished Rooms Below Grade |
| RT | Row or Townhouse | Design (Style) |
| s | Settlement Date | Date of Sale/Time |
| SD | Semi-detached Structure | Design (Style) |
| Short | Short Sale | Sale or Financing Concessions |
| sf | Square Feet | Area, Site, Basement |
| sqm | Square Meters | Area, Site |
| Unk | Unknown | Date of Sale/Time |
| VA | Veterans Administration | Sale or Financing Concessions |
| w | Withdrawn Date | Date of Sale/Time |
| wo | Walk Out Basement | Basement & Finished Rooms Below Grade |
| Woods | Woods View | View |
| Wtr | Water View | View |
| WtrFr | Water Frontage | Location |
| wu | Walk Up Basement | Basement & Finished Rooms Below Grade |
| HBU | Highest and Best Use | Page 1 |
| MLS No. | Multiple Listing Service Number | Page 2 |
| Avg | Average | Page 1 |
| Cpt | Carpet | Page 1 |
| Tl | Tile | Page 1 |
| Vinyl | Vinyl | Page 1 |

## Supplemental Addendum

File No. 18-12-1459

| Client | Integra Realty Resources | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 3516 N Perry Ave | | | | | |
| City | Tampa | County | Hillsborough | State | FL | Zip Code 33603 |
| Client | Integra Realty Resources | | | | | |

**PURPOSE OF THE APPRAISAL REPORT**

The purpose of this appraisal report is to estimate the market value of the subject property as defined herein. The use of the appraisal is to assist the above-named lender/client, its successors and/or assigns, in evaluating the subject property for lending purposes. This is a federally regulated transaction. Additional supporting data can be found in the appraiser's work file.

It is assumed that the title to this property is good and marketable. No title search has been made, nor have we attempted to determine ownership of the property. The value estimate is given without regard to any questions of title, boundaries, or encroachments. It is assumed that all assessments are paid. We assume the property to be free and clear of liens and encumbrances except as noted.

We are not familiar with any engineering studies made to determine the bearing capacity of the land. Improvements in the area appear to be structurally sound. It is therefore assumed that soil and subsoil conditions are stable unless specifically outlined in this report.

Any exhibits in the report are intended to assist the reader in visualizing the property and its surroundings. The drawings are not intended as surveys and no responsibility is assumed for their cartographic accuracy. Drawings are not intended to be exact in size, scale or detail.

Areas and dimensions of the property were physically measured. If data is furnished by the principal or from plot plans or surveys furnished by the principal, or from public records, we assume it to be reasonably accurate. In the absence of current surveys, land areas may be based upon representations made by the owner's agents or the client. No attempt has been made to render an opinion or determine the status of easements that may exist. No responsibility is assumed for discrepancies that may become evident from a licensed survey of the property.

The value estimate involves only the real estate and all normal building equipment if any improvements are involved. Unless otherwise indicated, the opinion of value arrived at in this appraisal report is for the real estate only and DOES NOT INCLUDE ANY PERSONAL PROPERTY OF ANY KIND. Above ground pools or non-attached items such as freestanding appliances and window treatments are some examples of personal property. The inclusion of personal property in the sale of real estate is common. Although only the real estate is valued in this report, including typical personal property in a sale does not limit the marketability of a house.

The separate allocations between land and improvements, if applicable, represent our judgment only under the existing utilization of the property. A re-evaluation should be made if the improvements are removed or substantially altered, and the land utilized for another purpose.

All information and comments concerning the location, neighborhood trends, construction quality and costs, loss in value from whatever cause, condition, rents, or any other data for the property appraised herein, represents the estimates and opinions of the appraiser formed after an examination of the subject property.

All opinions, as to values stated, are presented as the appraiser's considered opinion based on the information set forth in the report and his experience. We assume no responsibility for changes in market conditions or for the inability of the client or any other party to achieve their desired results based upon the appraised value. Further, some of the assumptions made can be subject to variation depending upon evolving events. We realize some assumptions may never occur and unanticipated events or circumstances may occur. Therefore, actual results achieved during the projection period may vary from those in this report.

The appraisal report was not based on developing or reporting predetermined results, or a requested minimum valuation, a specific valuation, or the approval of a loan.

Our analysis, opinions, and conclusions were developed, and this report has been prepared, in conformity with the requirements of: USPAP – Uniform Standards of Professional Appraisal Practice.

***THE APPRAISER HAS PREPARED THIS APPRAISAL IN FULL COMPLIANCE WITH THE APPRAISER INDEPENDENCE REQUIREMENTS AND HAS NOT PERFORMED, PARTICIPATED IN, OR BEEN ASSOCIATED WITH ANY ACTIVITY IN VIOLATION OF AIR.***

At the request of the client, this appraisal has been prepared in compliance with the Uniform Appraisal Dataset (UAD) from Fannie Mae and Freddie Mac. The UAD requires the appraiser to use standardized responses that include specific formats, definitions, abbreviations, and acronyms. The UAD standard requires property information for the subject and comparables that may be difficult to verify in the normal course of business. The appraiser relies on MLS data, public records data, property owner and realtor verification when available. However, when those collective sources cannot provide precise information, estimates and assumptions are made to comply with the UAD requirements. Should information become available that was not known during the original appraisal due diligence, it could impact the appraisal. The UAD data standard also requires the use of whole numbers in certain data fields. The appraiser was required to round certain numeric entries in order to comply with the UAD data standard.

We do not authorize the out of context quoting or partial reprinting of this appraisal report. Further, neither all nor any part of the contents of this report (especially any conclusions as to value, the identity of the appraiser nor the name of the firm which he/she is connected, shall be reproduced, published, or disseminated to the public through advertising media, public relations media, news media, or another public means of communication, without the prior written consent of the appraiser signing the report.

Serial# 17AE706A
esign.alamode.com/verify

**Supplemental Addendum**

File No. 18-12-1459

| Client | Integra Realty Resources | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 3516 N Perry Ave | | | | | | |
| City | Tampa | County | Hillsborough | State | FL | Zip Code | 33603 |
| Client | Integra Realty Resources | | | | | | |

**APPRAISAL DATA**

Appraisal reports are technical documents addressed to the specific needs of clients. In most cases, appraisals are made for mortgage companies and/or banks whose use for this report may be wholly different than that of the casual reader. Therefore, the reader should understand that this was made with a limited amount of data and limited ability to verify certain information. Information was verified when possible through public records, multiple listing services, real estate agents and exterior inspection. This includes verifications that the comparables are actually closed sales and the transactions are arms-length. No verification technique is one hundred percent accurate but the appraiser has relied upon information as reported and recorded unless better sources prevail.

From time to time, the indicated sizes of comparables shown in the available sources such as MLS services listing sheets or assessor appears to be incorrect based on the appraisers professional experience. If the size used in the MLS sheets does not correlate with other known data, the appraiser will estimate the size of comparables. These include assessor's sheets, physical inspection and use of interior room measurements along with a multiplier to depict size based on exterior measurements. The deviation of comparable size from published sizes only indicates an attempt at higher accuracy in the final report. However, there are many times that the exact size and features found in comparables cannot be confirmed except by any exterior inspection from the street. We have used three or more comparables in this report to eliminate the limited data associated with any single comparable.

Information regarding the comparable sales has been obtained from public sources and listing agencies. If any significant discrepancies are revealed, the right to amend this report is reserved.

**CONDITION OF MATERIALS**

The appraisal report requires the appraiser to note the condition of materials of several components of the subject property. The appraiser makes no representations, guarantees or warranties (express or implied), regarding the materials, their fitness, quality, condition or remaining economic life. An appraiser is NOT QUALIFIED OR TRAINED to discover/disclose hidden defects in material or workmanship. The lender/client should utilize or at least consider the services of a professional licensed home inspector to evaluate same if concerned about the condition of materials of the subject property.

**ENVIRONMENTAL**

The opinion of value reported in this appraisal report is predicated on the belief that there are no adverse conditions that would affect the livability, soundness, or structural integrity of the property, unless noted in the appraisal report. Adverse conditions include but are not limited to the following: Needed repairs, deterioration, the presence of hazardous wastes, toxic substances, and other adverse environmental conditions. Neither the appraiser(s), nor the appraisal firm and the associate's staff have the expertise required to discover any environmental hazards, toxic substances or infestation concerning the subject property. The appraiser is not an expert in the field of environmental hazards and this report is not to be considered as an environmental assessment of the property. The appraiser does not make any representations, guarantees, or warranties, express or implied, that the property is free of defects or environmental problems including but not limited to the following:

**INFESTATION** – The appraiser has no expertise in the field of insect, termites or pest infestation. We are not qualified to detect the presence of these or any other unfavorable infestations. We have not specifically inspected the subject property to determine the presence of any infestation. No effort was made to dismantle or probe the structure to observe enclosed, encased, or otherwise concealed evidence of infestation. Infestation may be present in areas the appraiser cannot see.

**LEAD BASE PAINT** – A residential dwelling that was built prior to 1978 may present exposure to lead based paint that may place young children at risk of developing lead poisoning. The appraiser is not qualified to determine if lead based paint is present or if it poses any risk or hazard to its inhabitants.

**MECHANICAL SYSTEMS** – The appraiser is NOT A HOME INSPECTOR, ELECTRICIAN, OR PLUMBER. Mechanical systems, including but not limited to plumbing, electrical, HVAC, appliances, septic systems and wells, have not been tested by the appraiser to determine their fitness of condition. If an electrical capacity has been noted in the appraisal report, it has been taken from the electrical service panel within the subject property or provided by another source including but not limited to, the owner, the blueprints, specifications, contractors, or other sources believed to be reliable. The appraiser will not be responsible for the condition, alterations, defects, or other unapparent modifications related to the mechanical systems of the subject property.

**MOLD** – The appraiser is not qualified to determine if mold is present in the property and if present, the appraiser is not qualified to determine the cause of the mold, the type of mold, or whether it poses any risk or hazard to the inhabitants.

**SEASONAL CONDITIONS** – There are instances when portions of the exterior of the property are obscured or not readily observable due to weather related conditions. In those instances, the appraiser(s) has relied upon a source(s) familiar with the property to cite the material and the condition of those improvements.

**PROPERTY INSPECTION**

A "complete visual inspection" includes a walking tour of the property, interior and exterior and viewing all readily observable items; observing the floor plan and layout; identifying relevant amenities, evaluating conformity of the subject with the neighborhood; observing general conditions; assessing functional utility; measuring the house or utilizing other data and information to calculate the living area, and noting any renovations or remodeling that may have been done to the property. A "complete visual inspection" does not include observing or



Serial# 17AE706A
esign.alamode.com/verify

**Supplemental Addendum**

File No. 18-12-1459

| Client | Integra Realty Resources | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 3516 N Perry Ave | | | | | | |
| City | Tampa | County | Hillsborough | | State | FL | Zip Code | 33603 |
| Client | Integra Realty Resources | | | | | | |

viewing any portion of the property not readily accessible from a walking tour include full access to attics and/or crawl spaces; activation or operation of all mechanicals, electrical, or plumbing equipment or fixtures; any observation or viewing of the roof surface other than that which is readily viewable from ground level; or activation or testing of any water system of sewage or septic tank; walking the entire home site if the size and/or topography do not readily allow. THE APPRAISER IS NOT A QUALIFIED HOME INSPECTOR OR ENGINEER AND DOES NOT REPRESENT THOSE SERVICES. THIS APPRAISAL IS NOT A WARRANTY AGAINST ANY DEFECT OF THE IMPROVEMENTS.

**SITE COMMENTS**

The site is very typical of the neighborhood in terms of size, topography, view and general appeal. It provides a suitable setting for the improvements and is consistent with market expectations in this price range. While no readily apparent adverse site conditions or external factors were noted, many site-related issues are beyond the scope of this assignment. Statements regarding zoning compliances are intended only in the most general sense. Zoning and building ordinances vary significantly from one municipality to another and can be extremely detailed. The scope of this assignment does not include a comparison of every potentially significant characteristics of the subject property's site and improvements relative to zoning and building ordinances. Unless otherwise noted, standard utility and right of way easements are insignificant to value. However, a current locational or boundary survey or title report may reveal encroachments, easements, zoning violations or other matters of interest that could warrant modifications of the appraised value.

**LEGAL DESCRIPTION**

F.I.R.R.E.A. regulations require the appraiser to attempt to provide a legal description as part of the appraisal. If the legal description is provided, the appraiser has assumed it is correct. The legal description should be verified through legal documentation.

**MARKET CONDITIONS**

Trends in real estate are directly related to historic, economic, demographic, and political forces within a market area. Events occurring nationally, regionally and locally can significantly impact the success of all types of real estate development. Macroeconomic conditions, such as interest rates, inflation, job security, industrial productivity, and stability in the stock market, shape consumer confidence and business investment activity. Regional and local indicators do not always mirror national trends. As a result, the economic conditions on a regional and local level have the most significant impact on real estate markets and must be analyzed separately. Diversity and stability in employment, job growth, business expansion and the profile of the available labor force all impact the economic stability of a region. Consumer demographics in the local market, such a population growth, household statistics, age/family characteristics and income levels, specifically impact the type of real estate development that can be sustained, the amount of development supported, prices/rents, absorption of space and the amenities required.

1004 MC Instructions state: "Sales and listings must be properties that compete with the subject property, determined by applying the criteria that would be used by a prospective buyer of the subject property".

"Subject Specific" parameters are often utilized, but by doing this, it will yield a smaller number of sales, too low to be considered statistically significant, it is then the appraiser's parameters may be expanded to include areas outside of the subject's immediate market neighborhood but still within the surrounding area to produce a statistically credible amount of data to achieve results in which support the appraiser's trend conclusions & not miss-lead the reader with an inadequate amount of statistical data.

**ADDITIONAL SALES COMPARABLE COMMENTS**

The comparables utilized were considered the best available to derive subject's valuation. Appropriate market adjustments were made for dissimilarities in all comps. Square footage where obtained from the assessor's office. Where assessor records were unavailable or appeared inaccurate, square footages were obtained from a multiplier derived from the market. The appraiser uses a variety of data services such as public and private online databases which include assessor's records, county recorder, FEMA Flood Maps, county websites, local zoning maps and/or phone confirmations by the appropriate zoning authorities, local MLS information, or any other reliable sources considered typical for the market area. All sources are considered to be reliable sources of data. When discrepancies in the information are found, the appraiser will use the source(s) that is believed to be the most reliable in the appraisal report. The appraiser will report only the data pertinent to the valuation process. When applicable, the data presented in the Sales Comparison Approach has been verified by more than one source unless otherwise noted.

THE UAD REQUIRES THAT COMPARABLE SALES BASEMENT AREA AND FINISHED AREA ARE INCLUDED IN THE SALES GRID. IT SHOULD BE NOTED THAT THE BASEMENT SQUARE FOOTAGE AND BASEMENT FINISHED SQUARE FOOTAGE HAVE BEEN ESTIMATED. THIS DATA IS NOT AVAILABLE THROUGH MRED MLS OR PUBLIC ASSESSOR RECORDS.

The appraiser attempted to obtain an adequate amount of information in the normal course of business regarding the subject and comparable properties. Some of the standardized responses required by the UAD, especially those in which the appraiser has not had the opportunity to verify personally or measure, could mistakenly imply greater precision and reliability in the data than is factually correct or typical in the normal course of business. Examples include condition and quality ratings as well as comparable sales and listing data. Not every element of the subject property was viewable (list if necessary) and comparable property data was generally obtained from third-party sources (list sources). Consequently, this information should be considered an "estimate" unless otherwise noted by the appraiser.

Serial# 17AE706A
esign.alamode.com/verify

# Anthony M. Graziano, MAI, CRE

**Integra Realty Resources**
Miami/Palm Beach

Dadeland Centre
9155 S. Dadeland Boulevard
Suite 1208
Miami, FL 33156

T 305.670.0001
F 305.670.2276

irr.com

## Experience

Senior Managing Director of Integra Realty Resources – Miami/Palm Beach.

Mr. Graziano has actively counseled and advised clients on the sale, leasing, valuation, management, and development of commercial real estate assets throughout the northeast and southeast U.S. since 1992.

Mr. Graziano's professional perspective is a blend of his experience and educational background which includes formal training in architecture, urban planning, macro and micro economics, real estate finance, institutional asset management, and land development. His market experience in sales, leasing, management, and valuation disciplines combine to bring practical real world answers to complex planning and development projects. He has been actively involved as a consultant and/or member of a consultant team on various major redevelopment and land use projects for public and private clients over the past 25+ years.

Mr. Graziano has specialized in consulting and valuation assignments for corporate and private clients on a wide array of complex issues related to estate and condemnation matters, title defects, environmental contamination/damages, air rights, partial and fractional interests, contract disputes, and mediation/arbitration disputes. Mr. Graziano's experience in these matters provides a comprehensive framework for effective strategic real estate consulting.

## Professional Activities & Affiliations

Advisory Board Member: Urban Land Institute (ULI) South Florida / Caribbean
Advisory Board Member: University of Miami M+RED Program
Member: Economic Roundtable - Miami Beacon Council (2012-present)
Board of Director: Integra Realty Resources, Inc. (2011-2016)
Chairman of the Board:    Integra Realty Resources, Inc. (2016-present)
Director: South Florida Chapter of the Appraisal Institute (2014-2016)
Board Member: Builders Association of South Florida (BASF) (2014-2016)
Subject Matter Expert (SME): Appraisal Practice Board, Appraisal Foundation
Member: Appraisal Institute (MAI) (2008-Present)
Member: Counselors of Real Estate (CRE) (2007-Present)
National Association of Realtors (REALTOR)
Miami Association of REALTORS Industry Analyst of the Year (2016)
Former Fellow: Royal Institute of Chartered Surveyors (FRICS) (2007-2014)
AI Leadership Development Advisory Council, March 1998 - February 2001
Lifetime Member: National Eagle Scout Association (NESA)

## Licenses

Florida, State-Certified General Real Estate Appraiser, RZ3510
New Jersey, State-Certified General Real Estate Appraiser, RG001261

## Education

University of Miami, Coral Gables, Florida 1988-1992
Degree: Bachelor of Science in Land Development and Planning, School of Architecture

New York University Real Estate Institute, New York, New York 1993-1996
Degree: Master of Science in Real Estate Development and Investment



amgraziano@irr.com    -    305.670.0001 x320

# Anthony M. Graziano, MAI, CRE

## Qualified Before Courts & Administrative Bodies

Qualified and accepted as an expert before:
US Bankruptcy Court (Newark, Southern District of Texas, Southern District of Florida)
US Federal District Court (Southern District of Florida)
FL Circuit Court (Miami-Dade, Broward, and Monroe Counties)
NJ State Tax Court
NJ Superior Court - Chancery Division
NJ Superior Court - Law Division
Various municipal planning and zoning boards throughout New Jersey and Florida
Various Taxing Authorities and Boards throughout New Jersey and Florida

**Integra Realty Resources**
**Miami/Palm Beach**

The Douglas Centre
2600 Douglas Road, Suite 801
Coral Gables, FL 33134

T 305.670.0001
F 305.670.2276

irr.com



amgraziano@irr.com    -    305.670.0001 x320

**Anthony M. Graziano, MAI, CRE, FRICS**
PROFERRED OR DISCLOSED EXPERT WITNESS REPORTS/SETTLEMENTS

| RETENTION DATE | ON BEHALF | IRR FILE # | COURT CASE NO. | COURT / VENUE | CASE NAME | RETAINED BY | TYPE OF CASE |
|---|---|---|---|---|---|---|---|
| 1/2015 | Defendant | 123-2015-0037 | 14-CV-22384 UU | Miami-Dade County, FL | Ray Benson & Maria Helena V. QBE Insurance Corporation | John A. Camp | Retrospective (2004-2006) analysis of market value claims against insurance company related to property |
| 9/2014 | Defendant | 123-2014-0194 | 13-03084CA 10 | 11th Judicial Circuit Miami-Dade, FL | Manuel Soltero V. Adorno & Yoss, LLP | Kaplan Zeena, LLP | Professional Liability suit against law firm and attorneys for malfeasance in litigation matter. |
| 2/2014 | Plaintiff | 123-2014-0030 | Settled | Caribbean Islands | Rainmaker Development V. A&F Bahamas, etal | VLASAC & SHMARUK, LLC | Partnership Dispute between Joint Venture in Caribbean development project (golf course, villas, and large-scale marina-commercial-retail development) |
| 11/2012 | Defendant | 123-2012-0140 | 42-2012-CA-001065 | Marion County, FL | CSX Transportation, Inc. V. Moshen Saranazi, Faith Ann Safarazi, Proverbium Hldg, LLC, USA & George Albright | NeJame, La Fay, Jancha, Ahmed, Barker, Joshi & Moreno, P.A. | Condemnation of partial interest with damages |
| 7/2012 | Confidential | 123-2012-0076 | Confidential | Broward County, FL | Ft. Lauderdale-Hollywood Int'l Airport Expansion | White & Case, LLP | Value Diminution Study to assist public agency in good faith negotiations based on airport expansion. |
| 6/2012 | Defendant | 123-2012-0070 | 10-49616-CA-40 | Miami-Dade County, FL | CB Entertainment, LLC V. South Beach Ocean Parcel | Kubicki Draper, P.A. | Construction Damages claim |
| 12/2009 | Plaintiff | 109-2009-0443 | Dept. Justice File 90-11-3-5801 | Federal District Court of Virginia | United States vs. Atlantic Wood Industries, Inc. | U.S. Department of Justice | Damages/environmental contamination dispute between United States Navy and responsible party (Atlantic Wood Industries) |



**Anthony M. Graziano, MAI, CRE, FRICS**
IDENTIFIED EXPERT WITNESS TESTIMONY AT DEPOSITION and/or TRIAL

| RETENTION DATE | ON BEHALF OF | TRI FILE # | COURT/CASE NO. # | COURT / VENUE | CASE NAME | RETAINED BY | TYPE OF CASE |
|---|---|---|---|---|---|---|---|
| 6/2015 | Plaintiff | 123-2015-0170 | 15-008930-CA-01 | 11th Judicial Circuit Dade County, Florida (Hon. Peter R. Lopez) | Aaron Stauber & Aviva Stauber V. BH 33, LLC | Piedra & Associates, P.A. | Motion to dismiss Lis Pendens in an action to enforce contractual specific performance clause |
| 1/2015 | Defendant | 123-2015-0037 | 14-CV-22384 UU | Southern District of Florida | Ray Benson & Maria Helena Campos V. QBE Insurance Corporation | John Campis | Retrospective (2004-2006) analysis of market value claims against insurance company related to property damage claims arising from Hurricane Wilma |
| 1/2014 | Plaintiff | 123-2015-0031 | Pending | Miami-Dade County | Igor Ger V. Yacht Club at Portofino Condo Association | Weil Quaranta McGovern, P.A. | Construction defect dispute related to water-intrusion and damage-detrimental conditions analysis of |
| 10/2014 | Plaintiff | 123-2014-0226 | 08-CA-408-P | Monroe County | Ocean Bank V. Lindsack, Monroe County | Ocean Bank | Deficiency claim against borrower on real estate collateral in the Florida Keys (development site plus marine related improvements) |
| 10/2014 | Defendant | 123-2014-0215 | 11-24994 CA 06 | 11th Judicial Circuit Dade County, Florida | Palm-Aire Holdings V. JRGS Investments, LLC, Jorge Garcia-Seriff and Coures Drive Investments, LLC | Cole, Scott & Kissane, P.A. | Partnership dispute over valuation issues proximal to a fractured condominium project (retrospective values), and operating agreement dispute |
| 7/2014 | Plaintiff | 123-2014-0194 | 13-01822 CACE 02 | 13th Judicial Circuit Broward County, Florida | Amalia I. Irarda-Rivera V. Rivera Diagnostic Center, Inc., Olexay Rivera & Yudit Rivero | Amalia I. Irlanda-Rivera | Rent default judgment and market rental and damage analysis associated with lease default. |
| 10/2014 | Defendant | 123-2014-0159 | 2014FL534 (Pending) | Palm Beach County | Roehm Title Resources Claim | Title Resources Guaranty Company | Title insurance claim related to before and after damage/value diminution analysis based on defined title defects not identified by Title Insurance Company |
| 4/2014 | Plaintiff | 123-2014-0117 | 4:14-CV-01077 (Pending) | USA District Court for the Eastern District of Missouri Eastern Division | USA V. GSA-VA St. Louis Property, LLC | Bryan Cave LLP | Condemnation of a possessory interest for a term. Retained as consulting/rebuttal expert |
| 5/2014 | Defendant | 123-2014-0114 | Pending | Miami-Dade County | Euforia Club | Rennert Bogel Mandler & Rodriguez, P.A. | Rent dispute regarding forced relocation of a nightclub, and relevant market rental rate of replacement club space in Miami |
| 4/2014 | Plaintiff | 123-2014-0099 | | Broward County | Pan American Holdings Corp. V Florida DOT Right of Way (ROW) Acquisition S.R. 7 | Henry Wulf, Esq. | Condemnation for R.O.W. purposes including before and after damage analysis |
| 1/2014 | Debtor | 123-2014-005 | 13-25728-BKC-RAM | US Federal Bankruptcy - Southern District of Florida - Miami Division (Hon. R. Mark) | West Airport Plaza Business Park, LLC | Counsel for the Debtor, Michael D. Seese, Esq. | Fairness Opinion and market value opinions in conjunction with Debtor's Plan for Reorganization |
| 8/2013 | Defendant | 123-2014-0016 | 02-23922-CA 09 | 11th Judicial Circuit Dade County, Florida | American Educational Enterprises LLC v. The Board of Trustees of the Internal Improvement Trust Fund | Richard Alayon, Esq. - Alayon and Associates | Economic Damages case associated with an alleged misrepresentation or omission by seller of real property. |
| 7/2013 | Defendant | 123-2013-0126 | CACE 08057624 (14) | 17th Judicial Circuit Broward County, Florida (Hon. Carlos A. Rodriguez) | Bayview Loan Servicing, LLC v. Kayhan Soodjani; Muhammad Mahmoodi, et al | Bayview Servicing, represented by Tabas, Freedman and Soloff; Stacey Soloff, Esq. | Deficiency judgment on multi-family project (Dewey Street Apartments) |
| 3/2013 | Defendant | 123-2013-0105 | 11-23561-CIV - Rosenbaum | US District Court - Southern District of Florida (Hon. Rosenbaum) | United States of America v. G.K.K. etal | Richard Duvall, Holland and Knight and Jeffrey Neiman, Esq. | Condemnation claim on the 137,779 s.f. Miami Federal Bureau of Investigation (F.B.I.) building, condemnation of a possessory interest (leasehold) |
| 2/2013 | Plaintiff | 123-2011-0070 | 09-05650 CA 04 | 11th Judicial Circuit Dade County, Florida (Hon. Beth Bloom) | Zenaida Gomez v. City of Pinecrest | Cynthia A. Everett, Cynthia A. Everett, P.A. | Economic damage resulting from temporary taking (seizure) of private residence |
| 7/2013 | Plaintiff | 123-2013-0016 | 12-60950-CIV | 11th Judicial Circuit Dade County, Florida | Q Lending, Inc., Equity Financial Group, Inc., and Equity Commercial Group, Inc. v. Travelers Companies, Inc. etal | Heidi Raschke, Butler Pappas etal | Value diminution resulting from alleged mortgage fraud. |
| 11/2012 | Plaintiff | 123-2013-0128 | Pending | 11th Judicial Circuit Dade County, Florida | 2011 and 2012 Ad Valorem Tax Protest | Ken Wurtenberger, Esq. Kapelewicz Cifloe Fergoson | Tax protest of commercial condominium. |
| 10/19/2012 | Plaintiff | 123-2012-0111 | 2011-1107 CA-23 | 11th Judicial Circuit Dade County, Florida (Hon. Stanford Blake) | Renegade at Hialeah Blvd v. Dynatech Engineering | Daniel Levin, Esq., Cole, Scott, Kissane, P.A. | Economic Damages case, diminution in value resulting from ground lease modification. |
| 10/12/2012 | Plaintiff | 123-2012-0109 | 11-30189 CA21 | 11th Judicial Circuit Dade County, Florida | Yaffa Yakubov vs. Bayview at Fisher Island No 3 | Craig Minko, Esq., Cole Scott Kissane, P.A. | Market Value estimate of Fisher Island Condominium purchased under right of first refusal, economic damages claimed by Plaintiff due to contract dispute arising from association's exercise of right of first refusal |
| 8/20/2012 | Plaintiff | 123-2010-0012 | CA-02160 CA-25 | 11th Judicial Circuit Dade County, Florida | 7935 NBV, LLC v. Harbour East Development LTD, Mario Egozi, etal | Jose Casal, Esq., Holland and Knight | Deficiency judgment on 32-unit fractured condominium, substitute expert following issuance of IRR-Miami reports in 2010 and 2012 |
| 8/15/2012 | Disclosed Dual Expert | 123-2012-0072 | | Matrimonial Mediation | Vazquez v. Vazquez Matrimonial Matter | Colon and Mendoza and Robert Hertzberg, P.A. | Retained as a court-appointed third party expert to both parties to appraise (2) marital assets comprised of office, retail, single and multi-family units in FL, TN, NC, and Illinois, Bahamas |
| 7/2012 | Plaintiff | 109-2011-0161 | Pending, 2003-2014 | Tax Court of New Jersey (Hon. Patrick DeMenelia) | BASF Inc., successor Ciba Geigy Inc, vs. Township of Toms River | Phil Gersurio, Garippa, etal on behalf of BASF | Challenge to multi-year appeal of $80 Million+ land assessment on contaminated superfund site in Central New Jersey |
| 3/2012 | Plaintiff | 109-2010-0172 | ATL-L-4451-08 | Superior Court of New Jersey, Law Division Atlantic County | Scot Netherlands Inc. vs. State of New Jersey Department of Environmental Protection (NJDEP) | Jay Rhatican, Connell Foloey on behalf of Scot Netherlands, Inc. | Challenge to NJDEP permit denial to fill wetlands, deprivation of all reasonable investment backed expectations |
| 7/2011 | Defendant | 109-2010-0199 | MER-L-3034-08 | Superior Court of New Jersey Mercer County | 460 Mercer Street, LLP and Brueckner Southern, LLC vs. Hightstown | Aneel Zaro Grimm & Aaron, P.C. Husam Chater | Litigation-Dispute Resolution - Hightstown Zoning Challenge |
| 12/2009 | Plaintiff | 109-2009-0443 | Dept. Justice File 90-11-3-5861 | Federal District Court of Virginia | United States v.s. Atlantic Wood Industries, Inc. | U.S. Department of Justice | Damages/environmental contamination dispute between United States Navy and responsible party (Atlantic Wood Industries) |
| 12/2009 | Plaintiff | 109-2009-0377 | | Tax Court of New Jersey | Westrust/HPC Mortgage Fund v.s. City of Atlantic City | Cole, Schotz, Meisel, Forman & Leonard, P.A. Carl Rizzo, Esq. | Tax Appeals - To develop an opinion of the market value of the fee simple interest in the property |

M. Quals: Graziano: Trial Lists

## Anthony M. Graziano, MAI, CRE, FRICS
### IDENTIFIED EXPERT WITNESS TESTIMONY AT DEPOSITION and/or TRIAL

| RETENTION DATE | ON BEHALF | IRR FILE # | COURT CASE NO | CASE NAME | COURT / VENUE | RETAINED BY | TYPE OF CASE |
|---|---|---|---|---|---|---|---|
| 1/12/09 | Secured Creditor | 109-2009-0438 | | Erickson Building | US Bankruptcy Court - Southern District of Texas | Stuart Glick, Esq., Sills, Cummis & Gross | Market Value for Bankruptcy of 140,000 SF corporate campus in Bethesda, Maryland |
| 9/2009 | Plaintiff | 109-2009-0123 | 3035-001 | Bay Head Yacht Club vs. Ocean County Tax Board | Tax Court of New Jersey | John Doyle, Carluccio, Leone, Dimon, Doyle & Sacks, LLC | Tax Appeal for Bay Head Yacht Club |
| 12/2008 | Plaintiff | 109-2009-XXXX | INA (DEPS Pending) | Mirage Atlantic City (MAC) vs. City of Atlantic City | Tax Court of New Jersey | Hank Rovitzart, Esq. | Tax Appeal at State Tax Court on 15 acre casino site adjacent to Trump Marina |
| 8/6/2008 | Defendant | 109-2008-0252 | L-2424-05 | The City of South Amboy vs. Lower Main Street Development, LLC & Amboy Aggregates Joint Venture | Superior Court of New Jersey Law Division, Middlesex County | Bathgate, Wegenar, etal | Verified complaint in condemnation |
| 6/2008 | Defendant | 109-2008-345 | C.A. No. OCNL-3361-06 | Oilbourne Associates, Melbourne Associates VII, LLC, Kingsway Realty Profit Share vs. Citta Enterprises Co, JAC Property Management etal and Eckerd Corporation | Superior Court of New Jersey, Law Division, Ocean County | Francis X. Manning, Esq, Stradley Ronon Stevens & Young & Michael Canticdi, Esq. Partridge Snow and Hahn, both on behalf of | Dispute re: proper valuation of leasehold and sub-lessee's sandwich leasehold interest on damage claim for breach of agreement claim |
| 1/2008 | Defendant | 109-2008-0125- | N/A | Toms River Township vs. Cba Geigy Corporation | American Arbitration Association [testimony at Arbitration conducted by Hon. Eugene Serpentelli] | Mark Troncone, Esq., In-house Counsel to Township of Toms River | Arbitration of environmental damages claim, and counter-claim of appropriateness of zoning on 1,900 acre superfund site. |
| 11/2007 | Defendant | 109-2007-211 | L-0008-35-06 | Kyle Mosteller vs. Gaila Neeman | Superior Court of New Jersey, Law Division Middlesex County | Frank Canuso, Esq, Hoagland, Longo, Moran and Dunst | Damage claim due to loss of trees and screening between usfush properties |
| 6/2007 | Plaintiff | 109-2007-0134 | 3:07-CV-2322 | Silver Lakes Inc. vs. Township of Freehold Inc. | Superior Court of New Jersey, Chancery Division Monmouth County | Christopher Hanlon, Esq, Hanlon and Niemann | Challenge to validity of Rent Control Ordinance as transfer of property rights from Lessor to Lessee. |
| 6/2007 | Plaintiff | 109-2007-0173 | | Laurelwood Homes, LLC vs. United States Department of Navy | Federal District Court of Virginia | William A. Shook Esq. | Leasehold interest in the property, breach of lease claim on behalf of leasehold owner (Laurelwood) claiming breach of lease and damages |
| 12/2006 | Defendant | 109-2006-0192 | CAM - L - 9731-05 | Brandywine Operating Partnership, LP vs. UFCW Local 56 | Superior Court of New Jersey, Law Division, Camden County | Brett Last, Esq. O'Brien, Belland and Bushinsky | Estimate the value of damages to landlord on breach of above-market lease |
| 8/2006 | Defendant | 109-2006-0257 | | County Line & Browers Bridge, Jackson Township | Superior Court of New Jersey, Chancery Division Ocean County | Levin, Shea, Pfeffer, PA Steven Pfeffer | To develop an opinion of the hypothetical market value of the fee simple interest in the property |
| 2/2006 | Defendant | 109-2006-0044 | OCN-L-2482-04 | Carl Brooks vs. K. Hovanian | Ocean Superior Court, Ocean County Courthouse | Ronan, Tuzzio & Giannone   Linda Olsen | To estimate value diminution in the subject property as a result of various issues asserted by the property owner in conjunction with pending litigation between the property owner and the subject developer K. Hovanian @ Sea Oaks |
| 10/2005 | Defendant | 109-2005-0315 | OCN-L-1810-5 | Atlantic City Electric Company dba Conectiv Power Delivery, a regulated public utility in the state of New Jersey vs. AC1 Manahawkin, LLC formerly Armstrong | Superior Court of New Jersey, Law Division Ocean County | Flaster/Greenberg, PC, David R. Oberlander, Esq. | Compensation for the taking of an easement for construction and maintenance of a 230kv transmission line and towers by Atlantic City Electric |
| 9/0/2005 | Defendant | 109-2005-0214 | MON-L-2609-05 | Township of Howell vs. George Harms Construction Co., Inc. etal | Superior Court of New Jersey Law Division, Monmouth County | Connell & Foley, LLP Kevin Coakley, Esq. | To develop an opinion of the market value of the fee simple estate of the property |
| 9/8/2003 | Defendant | 109-2003-0282 | | Giuffre vs. Giuffre | Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County | Louis & Wolf - Frank A. Louis | To develop an opinion of the market value of the Fee Simple estate of five properties for purposes of equitable distribution of marital assets |
| 7/7/2003 | Defendant | 109-2003-0203 | OCN-C-79-03 | West, etal vs. Pompaino, etal | Superior Court of New Jersey, Chancery Division, Ocean County | Stephen E. Smith, Esq | To develop an opinion of the diminution in value due to a loss of useable land area |
| 6/0/2003 | Plaintiff | 109-2003-0101 | OCN-C-316-02 | Eugene M. Lord vs. Donald W. Rinaldo | Superior Court of New Jersey Law Division, Ocean County | Lombardi & Lombardi Scott Telson | To develop an opinion of the market value of the fee simple estate of the property |
| 4/0/2003 | Plaintiff | 109-2003-0128 | FM-15-468-03-C | Vincent Urbank vs. Lisa Urbank | Superior Court of New Jersey, Chancery Division, Family Part Ocean County | Marianna Pontonero, Esq. | Litigation-Matrimonial |
| 2/2/2002 | Plaintiff | 109-2002-0055 | | Shenandoah Mobile Home Park | | Windels Marx Lane & Mittendorf, LLP - William Cagney | Inverse Condemnation - Rent Control Ordinance |
| 4/2001 | Claimant | 109-2001-0169 | NJ-2624-00 | DeForest John Ely and Kimberle A. Ely, h/w | Superior Court of New Jersey, Chancery Division, Middlesex County | First American Title Insurance Co. Jack Mikis | To derive an opinion of the fair compensation of the fee simple estate, subject to the temporary title encumbrance |
| 3/0/1999 | Defendant | 109-1999-0062 | | Georgetown Apartments | US Bankruptcy Court - District of Newark | Emmes & Co., Andrew Schwarz | To estimate the market value of the Leased Fee Estate of the property, inclusive of 28 Apartment complexes through NY, NJ, PA, and MD. |
| 12/1997 | Defendant | LKW 257-3186 | FM-15-1465-94 | Lisa Franklin, etal vs. Donald Franklin, etal | Superior Court of New Jersey, Chancery Division, Family Part, Ocean County | Greenbaum, Rowe, Smith, Ravin, Davis & Himmel LLP   Robert S. Underhill | Estimating the market value of the leased fee interest |
| 8/1984 | Creditor | HUD-XX | | Hudson Marina Association vs. Emmes & Co. | US Bankruptcy Court - District of Newark | | Bankruptcy Reorganization of 200+ slip failed marina/dockominium complex |

