# EXHIBIT 35 part 5

# EXHIBIT F13

**Integra Realty Resources**
Miami/Palm Beach

**Appraisal Report & Post-Remediation Damage Related to Chinese Drywall**

**Foster, William P. & Vicki D.**
Hypothetical Market Value "As If" Remediated
10814 Fortina Dr.
Fort Myers , Lee County, Florida 33913
Client Reference: 12

**Prepared For:**
Colson Hicks Eidson

**Effective Date of the Appraisal:**
January 1, 2019

**Report Format:**
Appraisal Report

**IRR - Miami/Palm Beach**
File Number: 123-2018-0275





**Foster, William P. & Vicki D.**
10814 Fortina Dr.
Fort Myers , Florida



| Integra Realty Resources | In Miami | In Orlando | In Naples/Sarasota |
| --- | --- | --- | --- |
| Miami | Dadeland Centre | The Magnolia Building | Horseshoe Professional Park |
| Orlando | 9155 South Dadeland Blvd. | 326 N. Magnolia Ave. | 2770 Horseshoe Drive S. |
| Southwest Florida | Suite 1208 | | Suite 3 |
| | Miami, FL 33156 | Orlando, FL 32801 | Naples, FL 34104 |
| www.irr.com | (305) 670-0001 | (407) 843-3377 | (239)-643-6888 |

February 12, 2019

Patrick S. Montoya
Partner
Colson Hicks Eidson
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134

SUBJECT:     Hypothetical Market Value "As If" Remediated
             Case No 11-22408-Civ-COOKE
             United States District Court Southern District of Florida in the matter of
             Eduardo and Carmen Amorin, et al. individually and on behalf of others situated
             similarly v. Taishan Gypsum Co., LTD., f/k/a Shandong Taiche Dongxin Co. Ltd., et al
             Priority Claimant Case at:
             Foster, William P. & Vicki D.
             10814 Fortina Dr.
             Fort Myers , Lee County, Florida 33913
             Client Reference: 12
             IRR - Miami/Palm Beach File No. 123-2018-0275

Dear Mr. Montoya:

Integra Realty Resources – Miami/Palm Beach submits the following damage estimate in the
referenced property as of the effective date assuming all remediation was completed by an
appropriate contractor with experience and credentials in remediating defective drywall.

The report is intended to comply the Uniform Standards of Professional Appraisal Practice (USPAP). It
presents summary discussions of the data, reasoning, and analysis that were used in the appraisal
process to develop the opinions. Additional information is contained within our workfile.

The findings will form the basis of expert witness testimony in the above referenced case.

Case 2:09-md-02047-EEF-MBN Document 22363-60 Filed 11/18/19 Page 6 of 110
Case 1:11-cv-22408-MGC Document 291-13 Entered on FLSD Docket 05/13/2019 Page 5 of 54

Identification of Subject                                                                                           2

## Identification of Subject

The subject of this report is a single-family ranch style home configured with 3 bedroom and 2 baths with 1,823 SF under air-conditioning. The subject property was built in 2006 and is located on a 10,898 SF site.

## Purpose of the Appraisal

The purpose of the appraisal is to develop an opinion of the diminution in value and related damages, collectively "the damages" as of the effective date of the appraisal, January 1, 2019. The damage estimate assumes the defective drywall remediation was completed and does not consider the cost to cure. The date of the report is February 12, 2019. The appraisal is valid only as of the stated effective date or dates.

## Intended Use and User

The intended use of the appraisal is for litigation purposes. The client, Colson Hicks Eidson and related co-counsel, Plaintiff and the Court are the intended users. Integra Realty Resources – Miami/Palm Beach is not responsible for unauthorized use of this report.

## Most Recent Sale History

The most recent closed sale of the subject is summarized as follows:

| Most Recent Subject Sale (Closed) | |
| --- | --- |
| Sale Date (Most Recent) | March 21, 2007 |
| Seller | Bay Colony-Gateway |
| Buyer | Foster, William P. & Vicki D. |
| Sale Price | $435,000 |
| Recording Instrument Number | 2007000099594 |
| Disposition Details | Original purchase of home from developer |

To the best of our knowledge, no other sale or transfer of ownership has taken place within a three-year period prior to the effective appraisal date.

## Pending Transactions

To the best of our knowledge, the property is not subject to an agreement of sale or an option to buy, nor is it listed for sale, as of the effective appraisal date.

## Definition of Market Value

The following definition of market value is used by agencies that regulate federally insured financial institutions in the United States:

"The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:

Foster, William P. & Vicki D.



- Buyer and seller are typically motivated;

- Both parties are well informed or well advised, and acting in what they consider their own best interests;

- A reasonable time is allowed for exposure in the open market;

- Payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and

- The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale."

*(12 C.F.R. Part 34.42(g); 55 Federal Register 54696, August 24, 1990, as amended at 57 Federal Register 12202, April 9, 1992, 59 Federal Register 29499, June 7, 1994)*

## Definition of Retrospective Value Opinion

A value opinion effective as of a specified historical date. The term retrospective does not define a type of value.  Instead, it identifies a value opinion as being effective at some specific prior date. Value as of a historical date is frequently sought in connection with property tax appeals, damage models, lease renegotiation, deficiency judgements, estate tax, and condemnation.  Inclusion of the type of value with this term is appropriate, e.g. "retrospective market value opinion".

(*Source: The Dictionary of Real Estate Appraisal – 6th Edition; Appraisal Institute, 200 W. Madison, Suite 1500, Chicago, IL 60606, www.appraisalinstitute.org*)

## Definition of Hypothetical Condition

1. A condition that is presumed to be true when it is known to be false. (SVP)

2. A condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis. Comment: Hypothetical conditions are contrary to known facts about physical, legal, or economic characteristics of the subject property; or about conditions external to the property, such as market conditions or trends; or about the integrity of date used in an analysis. (USPAP, 2016-2017 ed.)

(*Source: The Dictionary of Real Estate Appraisal – 6th Edition; Appraisal Institute, 200 W. Madison, Suite 1500, Chicago, IL 60606, www.appraisalinstitute.org*)

## Scope of Work

Integra was retained as an expert in the captioned matter of this report to address potential damages related to the subject property, specifically excluding the costs to cure.

Integra was retained to estimate any post remediation damages, and conducted a separate study to determine whether damages persist following defective drywall remediation.  The result of that study are outlined within Integra's report entitled "Market Analysis of the Post Remediation Impact of Chinese Drywall on Residential Property Values in Florida."  The results of that study are incorporated by reference herein.



Case 2:09-md-02047-EEF-MBN Document 22363-60 Filed 11/18/19 Page 8 of 110
Case 1:11-cv-22408-MGC Document 291-18 Entered on FLSD Docket 05/13/2019 Page 7 of 54

Scope of Work                                                                                                    4

In addition, our damage model was requested to include a rental value analysis of the Priority Claimant residence, and a determination of the relevant economic damage associated with having to vacate the home for a period of time (and secure alternate living arrangements) during the remediation.  As of the effective date, the claimant would have suffered the damages.

Integra established individual case files on each Priority Claimant residence, and retained professional assistance from qualified residential appraisers in each jurisdiction.  Integra managed the process of these retrospective appraisals, interfaced with the residential appraisers, and reviewed the form appraisals completed on each assignment including review of the comparables, adjustments, and form narrative to establish the market value of the residence unimpaired as of the effective date.

Integra professionals reviewed various materials exchanged as part of this case and considered materials that were relevant to the market valuation.  These materials were downloaded from the attorney's dropbox and are retained within our workfile.

Integra's participation in and review of the final appraised values results in a conclusion of the market value of the home defined as "Hypothetical Market Value" assuming defective drywall had never been identified within the subject property.  This forms the basis of the unimpaired market value as of the effective date.

All properties and comparables were inspected by the local residential appraisers without the benefit of interior inspections.  Adjustments for condition and age at the time of sale are based upon photographs contained within the various MLS databases, paired analysis from amongst the comparables, and for the subject, were based on photos, if available.  In the event a property had not been remediated as of the effective date, we assume average condition for the property in the market as of the effective date.

The damage analysis expressed within this report follows the peer teachings and market accepted processes for damage analysis.  However, the damage analysis only represents a <u>portion of the overall damages</u> because we were specifically requested to exclude the consideration of the costs to cure.  This represents a relevant component of damage in this case for property that factually have not been remediated.

Integra's role was strictly to identify post remediation value damage (sometime referred to a "stigma") and estimate the relevant rental value and moving costs as a proxy for the temporary loss of use during remediation.

## Significant Appraisal Assistance

In addition to Anthony M. Graziano, MAI ,CRE, principal, it is acknowledged that Peter G. Kayworth, Yuliya Georgieva, Joseph Melloni and Paul L. Jones of IRR-Miami/Palm Beach were involved in the assignment consisting of conducting research on the subject and transactions involving comparable properties, performing appraisal analyses and assisting in report writing, under the supervision of the persons signing the report.  The local residential appraisers are also named as providing significant assistance, including exterior inspection of the properties and comparables, application of their local



Case 2:09-md-02047-EEF-MBN Document 22363-60 Filed 11/18/19 Page 9 of 110
Case 1:11-cv-22408-MGC Document 291-18 Entered on FLSD Docket 05/13/2019 Page 8 of 54

Highest and Best Use                                                                                                   5

knowledge in adjusting and estimating the unimpaired value, and developing the form report valuations incorporated herein.

## Prior Services

USPAP requires appraisers to disclose to the client any other services they have provided in connection with the subject property in the prior three years, including valuation, consulting, property management, brokerage, or any other services. We have not performed any services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

## Valuation Methodology

Appraisers usually consider the use of three approaches to value when developing a market value opinion for real property. These are the cost approach, sales comparison approach, and income capitalization approach.  The valuations consider the only relevant approach for residential valuation, the sales comparison analysis.  The cost and income approach are not considered relevant.

The sales comparison approach is the most applicable valuation method since there is an active market for similar properties, and sufficient sales data is available for analysis.  Additionally, this approach directly considered the prices of alternative properties having similar utility.

### Highest and Best Use

The highest and best use of the subject as if vacant for development of a single-family home which is physically possible, legally permissible as per zoning, financially feasible and maximally productive.

The highest and best use of the subject as improved is for continued use as a single-family home with no other use that could reasonably be expected to provide a higher value to the land as if vacant.  The improvements contribute to the over all value to a greater extent than the land value alone, and therefore, continued use as improved concluded to be maximally productive and the highest and best use of the property.

### Conclusion of Value

The Hypothetical market value appraisal as of the effective date, reflective of a traditional form appraisal, is contained within the Addenda of this report.  This value us hypothetical since it assumes that defective drywall had never been present at the subject property.

Against this value, we then apply the Post Impairment Discount as a percentage of unimpaired value as developed within the Integra report studying this issue.  This represents a compensable damage resulting from the prior existence of defective drywall in the home as of the effective date.

In addition, each appraisal (unimpaired) reflects a rental value analysis as of the effective date.  This rental value analysis concludes to the equivalent market rent for the home (unimpaired) and reflects a proxy for the probable actual costs the homeowner would experience by having to move-out of the primary residence during remediation.



Case 2:09-md-02047-EEF-MBN Document 22363-60 Filed 11/19/19 Page 10 of 110
Case 1:11-cv-22408-MGC Document 281-18 Entered on FLSD Docket 05/13/2019 Page 9 of 54

Conclusion of Value                                                                                 6

The homeowner would also have to incur moving /storage costs twice, once before and once after remediation.  Professional packing, moving and storage for an average home is estimated at $1,500 per move, or $3,000 in total.  This amount is added to the loss of use estimate as an additional damage.

This loss of use calculation does not consider the costs of alternative housing or other tangible costs potentially incurred for damages suffered between the date of discovery and the date of value.  These damages, if applicable, are being estimated by a separate expert (Elkins et al). To the extent Elkins posits costs which are duplicative or actual costs that are greater or less, some minor adjustments to Integra's damage model may be required.

The timeframe for remediation (months of actual loss) could vary depending upon the permitting process in the specific community, the availability of labor, and the size of the home.  Integra reviewed a number of transactions that were remediated by investors and found the typical timeframe between purchase of an unremediated home and listing[1] of the home post-remediation to be 3-6 months.

Larger more expansive homes would be expected to take longer to remediate since more materials are required, and in higher-priced homes, supplies would typically be custom-ordered.  Therefore, we apply the following timeframes based on the subject's size and price range:

< $150,000 Home up to 2,000+/- SF                    4 months

$150,000 - $750,000 home up to 4,000 SF              6 months

$750,000+ home up over 4,000 SF                      9 months

---

[1] The "listing date" is most relevant since a homeowner conducting their own remediation can move back in once the home is ready for sale (ie- coinciding with a final certificate of occupancy).

Foster, William P. & Vicki D.



The following shows our final estimate of damages as of the effective date, and assuming costs to cure (i.e. – to conduct the remediation) have been expended.

**Conclusions of Damage**

| | | | |
|---|---|---|---|
| Hypothetical Value (Unimpaired - Before) | | $356,000 | |
| Market Impairment Discount (As if Remediated) | | 10% | |
| | | | |
| Post Impairment Damage ($) | | $35,600 | |
| **Hypothetical Value As IF Remediated** | | | **$320,400** |
| | | | |
| **Post Remediation Damages as of Effective Date** | | | **$35,600** |
| Loss of Use: | | | |
| Rental Rate ($/Month) | **$2,000** | | |
| Moving & Storage Costs | | $3,000 | |
| Loss of Use Subject (# Months) | 6x | $12,000 | |
| Subject Total | | | **$15,000** |
| | | | |
| **Post Remediation Damage** | | | **$50,600** |

Note:  Does not consider "cost to cure".  Assumes remediation was completed by qualified contractor who warranties the work.

The home has reportedly been "partially remediated" as of the effective date.  For remediation by a qualified contractor would be required to restore the property value to $320,400.  Additional cost to cure damages are considered applicable but are being estimated by a special master under a separate track of the case.

Foster, William P. & Vicki D.



Case 2:09-md-02047-EEF-MBN Document 22363-60 Filed 11/18/19 Page 12 of 110
Case 1:11-cv-22408-MGC Document 201-43 Entered on FLSD Docket 05/13/2015 Page 11 of 54

Certification                                                                                      8

---

## Certification

We certify that, to the best of our knowledge and belief:

1.   The statements of fact contained in this report are true and correct.

2.   The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are our personal, impartial, and unbiased professional analyses, opinions, and conclusions.

3.   We have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.

4.   We have not performed any services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

5.   We have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

6.   Our engagement in this assignment was not contingent upon developing or reporting predetermined results.

7.   Our compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

8.   Our analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice as well as applicable state appraisal regulations.

9.   The reported analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute.

10.  The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

11.  Anthony M. Graziano, MAI, CRE did not make a personal inspection of the property that is the subject of this report. Sarah D. Wilson has personally inspected the subject.

12.  Significant real property appraisal assistance was provided by Peter G. Kayworth, Yuliya Georgieva, Joseph Melloni and Paul L. Jones. Additionally, real estate assistance was provided by various Valucentric employees and subcontractors, including: John Barcelo, Angela Barcelo, Fred Stites, Carlos Fong, Sarah D. Wilson and Rob Baird.

13.  We have experience in appraising properties similar to the subject and are in compliance with the Competency Rule of USPAP.

14.  As of the date of this report, Anthony M. Graziano, MAI, CRE, has completed the continuing education program for Designated Members of the Appraisal Institute.

Anthony M. Graziano, MAI, CRE
Senior Managing Director - Miami
State-Certified General RE Appraiser
FL Certificate # RZ#3510

Foster, William P. & Vicki D.

irr.

Case 2:09-md-02047-EEF-MBN Document 22363-60 Filed 11/18/19 Page 13 of 110
Case 4:11-cv-22408-MGC Document 201-43 Entered on FLSD Docket 05/13/2013 Page 12 of 54

Assumptions and Limiting Conditions                                                        9

## Assumptions and Limiting Conditions

This appraisal and any other work product related to this engagement are limited by the following standard assumptions, <u>except as otherwise noted in the report</u>:

1.   The title is marketable and free and clear of all liens, encumbrances, encroachments, easements and restrictions. The property is under responsible ownership and competent management and is available for its highest and best use.

2.   There are no existing judgments or pending or threatened litigation that could affect the value of the property.

3.   There are no hidden or undisclosed conditions of the land or of the improvements that would render the property more or less valuable. Furthermore, there is no asbestos in the property.

4.   The revenue stamps placed on any deed referenced herein to indicate the sale price are in correct relation to the actual dollar amount of the transaction.

5.   The property is in compliance with all applicable building, environmental, zoning, and other federal, state and local laws, regulations and codes.

6.   The information furnished by others is believed to be reliable, but no warranty is given for its accuracy.

This appraisal and any other work product related to this engagement are subject to the following limiting conditions, except as otherwise noted in the report:

1.   An appraisal is inherently subjective and represents our opinion as to the value of the property appraised.

2.   The conclusions stated in our appraisal apply only as of the effective date of the appraisal, and no representation is made as to the effect of subsequent events.

3.   No changes in any federal, state or local laws, regulations or codes (including, without limitation, the Internal Revenue Code) are anticipated.

4.   No environmental impact studies were either requested or made in conjunction with this appraisal, and we reserve the right to revise or rescind any of the value opinions based upon any subsequent environmental impact studies. If any environmental impact statement is required by law, the appraisal assumes that such statement will be favorable and will be approved by the appropriate regulatory bodies.

5.   Unless otherwise agreed to in writing, we are not required to give testimony, respond to any subpoena or attend any court, governmental or other hearing with reference to the property without compensation relative to such additional employment.

6.   We have made no survey of the property and assume no responsibility in connection with such matters. Any sketch or survey of the property included in this report is for illustrative purposes only and should not be considered to be scaled accurately for size. The appraisal covers the property as described in this report, and the areas and dimensions set forth are assumed to be correct.

Foster, William P. & Vicki D.



Case 2:09-md-02047-EEF-MBN Document 22363-60 Filed 11/18/19 Page 14 of 110
Case 1:11-cv-22408-MGC Document 201-43 Entered on FLSD Docket 05/13/2019 Page 13 of 54

Assumptions and Limiting Conditions                                                    10

7. No opinion is expressed as to the value of subsurface oil, gas or mineral rights, if any, and we have assumed that the property is not subject to surface entry for the exploration or removal of such materials, unless otherwise noted in our appraisal.

8. We accept no responsibility for considerations requiring expertise in other fields. Such considerations include, but are not limited to, legal descriptions and other legal matters such as legal title, geologic considerations such as soils and seismic stability; and civil, mechanical, electrical, structural and other engineering and environmental matters. Such considerations may also include determinations of compliance with zoning and other federal, state, and local laws, regulations and codes.

9. The distribution of the total valuation in the report between land and improvements applies only under the reported highest and best use of the property. The allocations of value for land and improvements must not be used in conjunction with any other appraisal and are invalid if so used. The appraisal report shall be considered only in its entirety. No part of the appraisal report shall be utilized separately or out of context.

10. Neither all nor any part of the contents of this report (especially any conclusions as to value, the identity of the appraisers, or any reference to the Appraisal Institute) shall be disseminated through advertising media, public relations media, news media or any other means of communication (including without limitation prospectuses, private offering memoranda and other offering material provided to prospective investors) without the prior written consent of the persons signing the report.

11. Information, estimates and opinions contained in the report and obtained from third-party sources are assumed to be reliable and have not been independently verified.

12. Any income and expense estimates contained in the appraisal report are used only for the purpose of estimating value and do not constitute predictions of future operating results.

13. If the property is subject to one or more leases, any estimate of residual value contained in the appraisal may be particularly affected by significant changes in the condition of the economy, of the real estate industry, or of the appraised property at the time these leases expire or otherwise terminate.

14. Unless otherwise stated in the report, no consideration has been given to personal property located on the premises or to the cost of moving or relocating such personal property; only the real property has been considered.

15. The current purchasing power of the dollar is the basis for the values stated in the appraisal; we have assumed that no extreme fluctuations in economic cycles will occur.

16. The values found herein are subject to these and to any other assumptions or conditions set forth in the body of this report but which may have been omitted from this list of Assumptions and Limiting Conditions.

17. The analyses contained in the report necessarily incorporate numerous estimates and assumptions regarding property performance, general and local business and economic conditions, the absence of material changes in the competitive environment and other matters. Some estimates or assumptions, however, inevitably will not materialize, and unanticipated events and circumstances may occur; therefore, actual results achieved during



Case 2:09-md-02047-EEF-MBN Document 22363-60 Filed 11/18/19 Page 15 of 110
Case 1:11-cv-22408-MGC Document 201-18 Entered on FLSD Docket 05/13/2015 Page 14 of 54

Assumptions and Limiting Conditions                                                                11

the period covered by our analysis will vary from our estimates, and the variations may be material.

18. The Americans with Disabilities Act (ADA) became effective January 26, 1992. We have not made a specific survey or analysis of the property to determine whether the physical aspects of the improvements meet the ADA accessibility guidelines. We claim no expertise in ADA issues, and render no opinion regarding compliance of the subject with ADA regulations. Inasmuch as compliance matches each owner's financial ability with the cost to cure the non-conforming physical characteristics of a property, a specific study of both the owner's financial ability and the cost to cure any deficiencies would be needed for the Department of Justice to determine compliance.

19. The appraisal report is prepared for the exclusive benefit of the Client, its subsidiaries and/or affiliates. It may not be used or relied upon by any other party. All parties who use or rely upon any information in the report without our written consent do so at their own risk.

20. No studies have been provided to us indicating the presence or absence of hazardous materials on the subject property or in the improvements, and our valuation is predicated upon the assumption that the subject property is free and clear of any environment hazards including, without limitation, hazardous wastes, toxic substances and mold. No representations or warranties are made regarding the environmental condition of the subject property. Integra Realty Resources – Miami/Palm Beach, Integra Realty Resources, Inc., Integra Strategic Ventures, Inc. and/or any of their respective officers, owners, managers, directors, agents, subcontractors or employees (the "Integra Parties"), shall not be responsible for any such environmental conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because we are not experts in the field of environmental conditions, the appraisal report cannot be considered as an environmental assessment of the subject property.

21. The persons signing the report may have reviewed available flood maps and may have noted in the appraisal report whether the subject property is located in an identified Special Flood Hazard Area. We are not qualified to detect such areas and therefore do not guarantee such determinations. The presence of flood plain areas and/or wetlands may affect the value of the property, and the value conclusion is predicated on the assumption that wetlands are non-existent or minimal.

22. Integra Realty Resources – Miami/Palm Beach is not a building or environmental inspector. Integra Miami/Palm Beach does not guarantee that the subject property is free of defects or environmental problems. Mold may be present in the subject property and a professional inspection is recommended.

23. The appraisal report and value conclusions for an appraisal assume the satisfactory completion of construction, repairs or alterations in a workmanlike manner.

24. It is expressly acknowledged that in any action which may be brought against any of the Integra Parties, arising out of, relating to, or in any way pertaining to this engagement, the appraisal reports, and/or any other related work product, the Integra Parties shall not be responsible or liable for any incidental or consequential damages or losses, unless the appraisal was fraudulent or prepared with intentional misconduct. It is further acknowledged

Foster, William P. & Vicki D.



Case 2:09-md-02047-EEF-MBN  Document 22363-60  Filed 11/18/19  Page 16 of 110
Case 1:11-cv-22408-MGC  Document 291-13  Entered on FLSD Docket 05/13/2015  Page 15 of 54

Assumptions and Limiting Conditions                                                                    12

that the collective liability of the Integra Parties in any such action shall not exceed the fees paid for the preparation of the appraisal report unless the appraisal was fraudulent or prepared with intentional misconduct. Finally, it is acknowledged that the fees charged herein are in reliance upon the foregoing limitations of liability.

25.    Integra Realty Resources – Miami/Palm Beach, an independently owned and operated company, has prepared the appraisal for the specific intended use stated elsewhere in the report. The use of the appraisal report by anyone other than the Client is prohibited except as otherwise provided. Accordingly, the appraisal report is addressed to and shall be solely for the Client's use and benefit unless we provide our prior written consent. We expressly reserve the unrestricted right to withhold our consent to your disclosure of the appraisal report or any other work product related to the engagement (or any part thereof including, without limitation, conclusions of value and our identity), to any third parties. Stated again for clarification, unless our prior written consent is obtained, no third party may rely on the appraisal report (even if their reliance was foreseeable).

26.    The conclusions of this report are estimates based on known current trends and reasonably foreseeable future occurrences. These estimates are based partly on property information, data obtained in public records, interviews, existing trends, buyer-seller decision criteria in the current market, and research conducted by third parties, and such data are not always completely reliable. The Integra Parties are not responsible for these and other future occurrences that could not have reasonably been foreseen on the effective date of this assignment. Furthermore, it is inevitable that some assumptions will not materialize and that unanticipated events may occur that will likely affect actual performance. While we are of the opinion that our findings are reasonable based on current market conditions, we do not represent that these estimates will actually be achieved, as they are subject to considerable risk and uncertainty. Moreover, we assume competent and effective management and marketing for the duration of the projected holding period of this property.

27.    All prospective value opinions presented in this report are estimates and forecasts which are prospective in nature and are subject to considerable risk and uncertainty. In addition to the contingencies noted in the preceding paragraph, several events may occur that could substantially alter the outcome of our estimates such as, but not limited to changes in the economy, interest rates, and capitalization rates, behavior of consumers, investors and lenders, fire and other physical destruction, changes in title or conveyances of easements and deed restrictions, etc. It is assumed that conditions reasonably foreseeable at the present time are consistent or similar with the future.



**Addenda**



# USPAP Compliance Addendum

Loan # VALU-18-12-1450
File # VALU-18-12-1450

| Borrower | William & Vicki Foster | | | | |
|---|---|---|---|---|---|
| Property Address | 10814 Fortina Dr | | | | |
| City | Fort Myers | County Lee | | State FL | Zip Code 33913 |
| Lender/Client | Integra Realty Resources (IRR) - Miami | Palm Beach | | | |

## APPRAISAL AND REPORT IDENTIFICATION

This Appraisal Report is one of the following types:

☒ Appraisal Report — This report was prepared in accordance with the requirements of the Appraisal Report option of USPAP Standards Rule 2-2(a).

☐ Restricted Appraisal Report — This report was prepared in accordance with the requirements of the Restricted Appraisal Report option of USPAP Standards Rule 2-2(b). The intended user of this report is limited to the identified client. This is a Restricted Appraisal Report and the rationale for how the appraiser arrived at the opinions and conclusions set forth in the report may not be understood properly without the additional information in the appraiser's workfile.

Appraisal Report; Prepared in Accordance with USPAP Standards Rule 2-2(a). PURPOSE AND INTENDED USE OF THE APPRAISAL

This Appraisal Report is for the sole use of our clients Intended users of this report is to assist the Client with arriving at a conclusion of fair market value for litigation purposes. The intended users of this report is the client listed above, and if other parties choose to rely on the report, the appraiser is not obligated to such parties and does not result in such parties becoming intended users. Finally, I understand that this appraisal may not be a part of a federally related transaction.

## ADDITIONAL CERTIFICATIONS

I certify that, to the best of my knowledge and belief:

• The statements of fact contained in this report are true and correct.

• The report analyses, opinions, and conclusions are limited only by the reported assumptions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.

• I have no (or the specified) present or prospective interest in the property that is the subject of this report and no (or specified) personal interest with respect to the parties involved.

• I have no bias with respect to the property that is the subject of this report or the parties involved in this assignment.

• My engagement in this assignment was not contingent upon developing or reporting predetermined results.

• My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

• My analyses, opinions, and conclusions were developed and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.

• This appraisal report was prepared in accordance with the requirements of Title XI of FIRREA and any implementing regulations.

## PRIOR SERVICES

☒ I have NOT performed services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

☐ I HAVE performed services, as an appraiser or in another capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment. Those services are described in the comments below.

## PROPERTY INSPECTION

☐ I have NOT made a personal inspection of the property that is the subject of this report.

☒ I HAVE made a personal inspection of the property that is the subject of this report.

## APPRAISAL ASSISTANCE

Unless otherwise noted, no one provided significant real property appraisal assistance to the person signing this certification. If anyone did provide significant assistance, they are hereby identified along with a summary of the extent of the assistance provided in the report.

APPRAISER INDEPENDENCE REQUIREMENTS:The appraiser has prepared this appraisal in full compliance with applicable Appraiser Independence Requirements and has not performed, participated in, or been associated with any activity in violation of those requirements.All photos in report are appraiser originals taken during the course of this assignment.All of the comparables were "driven by" during the course of this assignment by Appraiser. No one provided significant real property appraisal assistance to the Appraiser Sarah D. Wilson

## ADDITIONAL COMMENTS

Additional USPAP related issues requiring disclosure and/or any state mandated requirements: The analyses, opinions, and conclusions in this appraisal and appraisal report were developed and the report was prepared, to the best of the appraiser(s) ability, in accordance with the standards and reporting requirements of the Appraisal Institute. In addition, this appraisal report conforms to the current Uniform Standards of Professional Appraisal Practice (USPAP), as promulgated by the Appraisal Foundation and FIRREA (Financial Institutions Reform, Recovery and Enforcement Act of 1989) and FDIC minimum requirements. The report conforms to the Federal Reserve Board, Department of the Treasury, Federal Deposit Insurance Corporation, Sate of Florida and the Office of the Comptroller of the Currency, 12CFR, Part 34, Appraisals (Final Rule).
See Addendum

## MARKETING TIME AND EXPOSURE TIME FOR THE SUBJECT PROPERTY

☒ A reasonable marketing time for the subject property is 90-180 day(s) utilizing market conditions pertinent to the appraisal assignment.

☒ A reasonable exposure time for the subject property is 90-180 day(s).

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name Sarah D. Wilson | Name |
| Date of Signature 02/12/2019 | Date of Signature |
| State Certification # RD7689 | State Certification # |
| or State License # | or State License # |
| State FL | State |
| Expiration Date of Certification or License 11/30/2020 | Expiration Date of Certification or License |
| | Supervisory Appraiser Inspection of Subject Property |
| Effective Date of Appraisal 01/01/2019 | ☐ Did Not ☐ Exterior-only from Street ☐ Interior and Exterior |

## Exterior-Only Inspection Residential Appraisal Report

File # VALU-18-12-1450

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| | | | |
|---|---|---|---|
| Property Address | 10814 Fortina Dr | City Fort Myers | State FL Zip Code 33913 |

**SUBJECT**

| | |
|---|---|
| Borrower William & Vicki Foster | Owner of Public Record FOSTER WILLIAM P + VICKI D | County Lee |

Legal Description VILLA CAPRI AT PELICAN PRESERVE TRACT 1 DESC IN INST #2006-126026BLK A LOT 6

| | | |
|---|---|---|
| Assessor's Parcel # 02-45-25-P3-0200A.0060 | Tax Year 2018 | R.E. Taxes $ 5,709 |

Neighborhood Name Pelican Preserve Map Reference 15980 Census Tract 0401.14

Occupant [X] Owner [ ] Tenant [ ] Vacant Special Assessments $ 0 [X] PUD HOA $ 5,772 [X] per year [ ] per month

Property Rights Appraised [X] Fee Simple [ ] Leasehold [ ] Other (describe)

Assignment Type [ ] Purchase Transaction [ ] Refinance Transaction [X] Other (describe) Litigation Retrospective DOV 01/01/2019 Client Request

Lender/Client Integra Realty Resources (IRR) - Miami / Palm Address 9155 South Dadeland Boulevard, Ste 1208, Miami, FL 33156

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? [ ] Yes [X] No

Report data source(s) used, offering price(s), and date(s). MLS

**CONTRACT**

I [ ] did [ ] did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $ Date of Contract Is the property seller the owner of public record? [ ] Yes [ ] No Data Source(s)

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? [ ] Yes [ ] No

If Yes, report the total dollar amount and describe the items to be paid.

**NEIGHBORHOOD**

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|
| Location | [ ] Urban [X] Suburban [ ] Rural | | Property Values | [ ] Increasing [X] Stable [ ] Declining | | PRICE | AGE | One-Unit | 50 % |
| Built-Up | [X] Over 75% [ ] 25-75% [ ] Under 25% | | Demand/Supply | [ ] Shortage [X] In Balance [ ] Over Supply | | $ (000) | (yrs) | 2-4 Unit | 6 % |
| Growth | [ ] Rapid [X] Stable [ ] Slow | | Marketing Time | [ ] Under 3 mths [X] 3-6 mths [ ] Over 6 mths | | 181 Low | 1 | Multi-Family | 3 % |
| Neighborhood Boundaries | | The subject is bounded to the north by Alico Rd, to the south by Estero Pkwy, | | | | 750 High | 22 | Commercial | 38 % |
| | | to the east by Interstate 75, and to the west by S Tamiami Trl. Fort Myers,FL | | | | 356 Pred. | 13 | Other | 3 % |

Neighborhood Description The subject is located in the city of Fort Myers FL which provides the area with access to major north and south centers of employment. Area schools and recreation parks are in close proximity, supporting services are located on Alico Rd and US 41. The 3% other land use consists of schools, parks and vacant land, and is not considered an adverse external factor.

Market Conditions (including support for the above conclusions) The market is stable and in balance.

**SITE**

| | | | |
|---|---|---|---|
| Dimensions 88 x 100 | Area 10898 sf | Shape Rectangular | View B;Wtr; |

Specific Zoning Classification RS-1 Zoning Description Residential Single Family

Zoning Compliance [X] Legal [ ] Legal Nonconforming (Grandfathered Use) [ ] No Zoning [ ] Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? [X] Yes [ ] No If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | | Water | [X] | | Street Asphalt | | [X] |
| Gas | [ ] | None | Sanitary Sewer | [X] | | Alley None | | |

FEMA Special Flood Hazard Area [ ] Yes [X] No FEMA Flood Zone X FEMA Map # 12071C0433G FEMA Map Date 12/07/2018

Are the utilities and off-site improvements typical for the market area? [X] Yes [ ] No If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? [ ] Yes [X] No If Yes, describe

The subject is not located in a flood zone. The subject is located in a planned unit development with mandatory HOA dues and private streets. Private streets are common/typical and has no adverse affect to market or appraisal.

**IMPROVEMENTS**

| | | |
|---|---|---|
| Source(s) Used for Physical Characteristics of Property | [ ] Appraisal Files [X] MLS [X] Assessment and Tax Records [ ] Prior Inspection [ ] Property Owner | |
| [ ] Other (describe) | Data Source for Gross Living Area Lee County Property Appraiser | |

| General Description | | General Description | | Heating/Cooling | | Amenities | | Car Storage | |
|---|---|---|---|---|---|---|---|---|---|
| Units [X] One [ ] One with Accessory Unit | | [X] Concrete Slab [ ] Crawl Space | | [X] FWA [ ] HWBB | | Fireplace(s) # 0 | | [X] None | |
| # of Stories 1 | | [ ] Full Basement [ ] Finished | | [ ] Radiant | | Woodstove(s) # 0 | | [X] Driveway # of Cars 3 | |
| Type [X] Det. [ ] Att. [ ] S-Det./End Unit | | [ ] Partial Basement [ ] Finished | | [ ] Other | | [X] Patio/Deck None | | Driveway Surface Concrete | |
| [X] Existing [ ] Proposed [ ] Under Const. | | Exterior Walls CBS | | Fuel Electricity | | [X] Porch Porches | | [X] Garage # of Cars 3 | |
| Design (Style) Ranch | | Roof Surface Tile | | [X] Central Air Conditioning | | [X] Pool Pool | | [ ] Carport # of Cars 0 | |
| Year Built 2006 | | Gutters & Downspouts Average | | [ ] Individual | | [X] Fence None | | [X] Attached [ ] Detached | |
| Effective Age (Yrs) 7 | | Window Type Unknown | | [ ] Other | | [X] Other Spa | | [ ] Built-in | |
| Appliances [X] Refrigerator [X] Range/Oven | | [X] Dishwasher [ ] Disposal [ ] Microwave | | [X] Washer/Dryer | | [X] Other (describe) Ext Inspection Only-See addend | | | |

Finished area above grade contains: 7 Rooms 3 Bedrooms 2.0 Bath(s) 1,823 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.) See attached addenda. Exterior Inspection Only.

Describe the condition of the property and data source(s) (including apparent needed repairs, deterioration, renovations, remodeling, etc.). C3:For purposes of this report as of effective day, subject property is considered to be an overall C3 condition. Appraiser utilized comparable properties which are considered overall C3 condition similar to the subject property. Appraiser reserves the right to change and or modify should evidence be presented of the true condition of the subject property. Appraiser has utilized the best available comparable sales and comparable listings within the subject's immediate market area, and which represent similar buying alternatives to the subject. Due to the assignment type, exterior inspection only, the condition of the subject property is unknown.

Are there any apparent physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? [ ] Yes [X] No

If Yes, describe.

The appraiser is not a home inspector and this is not intended to be a home inspection. A professional home inspector and structural inspector should be contacted for an inspection if any parties may be concerned. The appraiser makes no warranties.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? [X] Yes [ ] No If No, describe.

## Exterior–Only Inspection Residential Appraisal Report

File # VALU-18-12-1450

| | | | |
|---|---|---|---|
| There are 14 comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 320,000 to $ 589,700 . | | | |
| There are 47 comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 305,000 to $ 530,500 . | | | |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 10814 Fortina Dr Fort Myers, FL 33913 | 10545 Bella Vista Dr Fort Myers, FL 33913 | | 10859 Tiberio Dr Fort Myers, FL 33913 | | 10543 Bella Vista Dr Fort Myers, FL 33913 | |
| Proximity to Subject | | 0.39 miles NE | | 0.24 miles S | | 0.38 miles NE | |
| Sale Price | $ | | $ 322,500 | | $ 361,250 | | $ 355,000 |
| Sale Price/Gross Liv. Area | $ 125.77 sq.ft. | $ 176.91 sq.ft. | | $ 207.14 sq.ft. | | $ 188.93 sq.ft. | |
| Data Source(s) | | MLS # 218002713;DOM 108 | | MLS # 218010200;DOM 120 | | MLS #217071608;DOM 43 | |
| Verification Source(s) | | Pub Records/MLS/Field Inspection | | Pub Records/MLS/Field Inspection | | Pub Records/MLS/Field Inspection | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | ArmLth | 0 | ArmLth | 0 | ArmLth | 0 |
| Concessions | | Conv;0 | | Conv;0 | | Conv;0 | |
| Date of Sale/Time | | s05/18;c05/18 | +2,500 | s07/18;c07/18 | 0 | s01/18;c01/18 | 0 |
| Location | N;Res; | N;Res; | | N;Res; | | N;Res; | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 10898 sf | 11687 sf | 0 | 11996 sf | 0 | 9117 sf | 0 |
| View | B;Wtr; | B;Wtr; | | B;Wtr; | | B;Wtr; | |
| Design (Style) | DT1;Ranch | DT1;Ranch | | DT1;Ranch | | DT1;Ranch | |
| Quality of Construction | Q3 | Q3 | | Q3 | | Q3 | |
| Actual Age | 13 | 16 | 0 | 8 | -5,000 | 16 | 0 |
| Condition | C3 | C3 | | C3 | | C3 | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 7 3 2.0 | 7 3 2.0 | 0 | 7 2 2.0 | 0 | 7 3 3.0 | -2,500 |
| Gross Living Area | 1,823 sq.ft. | 1,823 sq.ft. | 0 | 1,744 sq.ft. | 0 | 1,879 sq.ft. | 0 |
| Basement & Finished Rooms Below Grade | 0sf | 0sf | | 0sf | | 0sf | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | Central | Central | | Central | | Central | |
| Energy Efficient Items | Average | Average | | Average | | Average | |
| Garage/Carport | 3ga3dw | 2ga2dw | +3,500 | 3ga3dw | | 2ga2dw | +3,500 |
| Porch/Patio/Deck | Porches | Porches | | Porches | | Porches | |
| Pool/Spa Package | Pool/Spa Pkg | None | +27,000 | Pool/Spa Pkg | | Pool/Spa Pkg | |
| Net Adjustment (Total) | | [X] + [ ] - $ 33,000 | | [ ] + [X] - $ -5,000 | | [X] + [ ] - $ 1,000 | |
| Adjusted Sale Price of Comparables | | Net Adj. 10.2 % Gross Adj. 10.2 % $ 355,500 | | Net Adj. 1.4 % Gross Adj. 1.4 % $ 356,250 | | Net Adj. 0.3 % Gross Adj. 1.7 % $ 356,000 | |

[ ] [X] did  [ ] did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research [ ] did [X] did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s)  Public Records
My research [ ] did [X] did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s)  Public Records
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | | | | |
| Data Source(s) | Lee County Tax Assessor | Lee County Tax Assessor | Lee County Tax Assessor | Lee County Tax Assessor |
| Effective Date of Data Source(s) | 01/19/2019 | 01/19/2019 | 01/19/2019 | 01/19/2019 |

Analysis of prior sale or transfer history of the subject property and comparable sales   See attached addenda.  All closed comparable sales were verified by at
least 3 supported, reliable resources:
Local MLS, multiple listing service
Lee County Property Appraiser
Realist.com
According to the Lee County Public Records these are the transfers documented within the last thirty six months of the effective appraisal date.
Summary of Sales Comparison Approach   See attached addenda.

Indicated Value by Sales Comparison Approach $  356,000

| Indicated Value by: Sales Comparison Approach $ 356,000 | Cost Approach (if developed) $ | Income Approach (if developed) $ |
|---|---|---|

Of the three approaches the value conclusion relies on the Sales Comparison approach. Cost approach was not developed due to the
assignment type per client request, as this was an exterior inspection from the street only.  Due to assignment type per client request, the income
approach to value was not developed.
This appraisal is made [ ] "as is",  [ ] subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been
completed,  [ ] subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or [X] subject to the
following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair: See attached addenda.  Exterior
Inspection only - Value is based on hypothetical condition the subject interior is in average C3 condition.
Based on a visual inspection of the exterior areas of the subject property from at least the street, defined scope of work, statement of assumptions and limiting
conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$  356,000 , as of  01/01/2019 , which is the date of inspection and the effective date of this appraisal.

Serial# CBFCB53E
esign.alamode.com/verify

## Exterior–Only Inspection Residential Appraisal Report

VALU-18-12-1450

File # VALU-18-12-1450

**ADDITIONAL COMMENTS**

In developing this appraisal an attempt was made to locate properties that are "most like" the subject; in other words, properties that are similar in design, appeal, materials, size and additional amenities and thereby requiring the least amount of adjustments. In the adjustment process it may be necessary to expand guidelines, due to the neighborhood  housing stock, especially where housing design, quality and age vary beyond that which is typical of a homogenous area. I Therefore, find that the extended marketing time, use of comparables from outside the desired radius and/or adjustments exceeding the usual parameters are considered a general economic condition. It is not necessarily adverse and does not weaken the report or the indicated value.Specific information relating to the subject property is obtained from the tax rolls of the county in which the property is located as provided by private data sources. Neighborhood information is obtained from an inspection of the neighborhood as well as sales activity which can be monitored through public and private data sources.

The sales used are obtained from a variety of sources.  The primary sources are MLS computer generated sales activity provided by local Board of Realtors, deed transfers as reported by private data sources as well as linkages to the county records.  Whenever possible this information is verified by one of the principals involved in the sale. These sales are supplemented by current listings in the subject's neighborhood. Square footage of living area and other sizes and dimensions of the comparables are obtained through public records. Since the appraiser does not measure the comparables (unless it was a previous subject) these figures cannot be warranted. Since the flood maps published by the National Flood Insurance Program are vague and poorly defined in some areas, the appraiser has used his best judgement as to the subject property by both visual inspection and plotting on the map. In the absence of a survey, the appraiser assumes no responsibility for the flood zone classification.

Adjustments are based on paring of sales, where market data is unavailable or inconclusive a fraction of cost may have been used. The adjustments in the sales comparison approach are rounded to the nearest hundred. Minimal features such as fences, storage areas, sheds, and patios are considered to have no contributory value to the overall opinion of value and are excluded from the sales comparison approach.

**The cost approach was not developed due to assignment type, exterior appraisal only.**

### COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)          Cost approach not developed.

**COST APPROACH**

ESTIMATED ☐ REPRODUCTION OR ☐ REPLACEMENT COST NEW

Source of cost data

Quality rating from cost service          Effective date of cost data

Comments on Cost Approach (gross living area calculations, depreciation, etc.)

| | | | |
|---|---|---|---|
| OPINION OF SITE VALUE | | ......... | =$ |
| DWELLING | Sq.Ft. @ $ | ......... | =$ |
| | Sq.Ft. @ $ | ......... | =$ |
| | | ......... | =$ |
| Garage/Carport | Sq.Ft. @ $ | ......... | =$ |
| Total Estimate of Cost-New | | ......... | =$ |
| Less | Physical | Functional | External |
| Depreciation | | | =$( ) |
| Depreciated Cost of Improvements | | ......... | =$ |
| "As-is" Value of Site Improvements | | ......... | =$ |

Estimated Remaining Economic Life (HUD and VA only)          Years  **INDICATED VALUE BY COST APPROACH**          ......... **= $**

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

**INCOME**

Estimated Monthly Market Rent $    $2,000    X Gross Rent Multiplier          = $          Indicated Value by Income Approach

Summary of Income Approach (including support for market rent and GRM)          per client request a rent schedule was included, however income approach was not developed.

### PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)?     ☐ Yes ☒ No    Unit type(s)    ☒ Detached    ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

**PUD INFORMATION**

Legal Name of Project

Total number of phases          Total number of units          Total number of units sold

Total number of units rented          Total number of units for sale          Data source(s)

Was the project created by the conversion of existing building(s) into a PUD?     ☐ Yes    ☐ No  If Yes, date of conversion

Does the project contain any multi-dwelling units?     ☐ Yes    ☐ No  Data Source(s)

Are the units, common elements, and recreation facilities complete?     ☐ Yes    ☐ No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?     ☐ Yes    ☐ No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

**Exterior-Only Inspection Residential Appraisal Report**

VALU-18-12-1450
File # VALU-18-12-1450

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a visual inspection of the exterior areas of the subject property from at least the street, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

The appraiser must be able to obtain adequate information about the physical characteristics (including, but not limited to, condition, room count, gross living area, etc.) of the subject property from the exterior-only inspection and reliable public and/or private sources to perform this appraisal. The appraiser should use the same type of data sources that he or she uses for comparable sales such as, but not limited to, multiple listing services, tax and assessment records, prior inspections, appraisal files, information provided by the property owner, etc.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

3. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

4. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

5. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

---

Form 2055UAD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Serial# CBFCB53E
esign.alamode.com/verify

**Exterior-Only Inspection Residential Appraisal Report**

VALU-18-12-1450
File # VALU-18-12-1450

APPRAISER'S CERTIFICATION:    The  Appraiser  certifies  and  agrees  that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a visual inspection of the exterior areas of the subject property from at least the street. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

Serial# CBFCB53E
esign.alamode.com/verify

## Exterior-Only Inspection Residential Appraisal Report

VALU-18-12-1450
File # VALU-18-12-1450

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

SUPERVISORY APPRAISER'S CERTIFICATION:    The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name  Sarah D. Wilson | Name |
| Company Name  Valucentric, LLC | Company Name |
| Company Address  4590 Ulmerton Road | Company Address |
| Clearwater, FL 33762 | |
| Telephone Number  844-825-8236 | Telephone Number |
| Email Address  info@valucentric.com | Email Address |
| Date of Signature and Report  02/12/2019 | Date of Signature |
| Effective Date of Appraisal  01/01/2019 | State Certification # |
| State Certification #  RD7689 | or State License # |
| or State License # | State |
| or Other (describe)  State # | Expiration Date of Certification or License |
| State  FL | |
| Expiration Date of Certification or License  11/30/2020 | SUBJECT PROPERTY |

ADDRESS OF PROPERTY APPRAISED

10814 Fortina Dr

Fort Myers, FL 33913

APPRAISED VALUE OF SUBJECT PROPERTY $    356,000

LENDER/CLIENT

Name  No AMC

Company Name  Integra Realty Resources (IRR) - Miami | Palm Bea

Company Address  9155 South Dadeland Boulevard, Ste 1208,

Miami, FL 33156

Email Address

SUBJECT PROPERTY

☐ Did not inspect exterior of subject property
☐ Did inspect exterior of subject property from street
Date of Inspection

COMPARABLE SALES

☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
Date of Inspection

Freddie Mac Form 2055 March 2005                    UAD Version 9/2011        Page 6 of 6                    n 2055 March 2005

Form 2055UAD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Serial# CBFCB53E
esign.alamode.com/verify

# SINGLE FAMILY COMPARABLE RENT SCHEDULE

File # VALU-18-12-1450
File # VALU-18-12-1450

This form is intended to provide the appraiser with a familiar format to estimate the market rent of the subject property. Adjustments should be made only for items of significant difference between the comparables and the subject property.

| ITEM | SUBJECT | COMPARABLE NO. 1 | | COMPARABLE NO. 2 | | COMPARABLE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 10814 Fortina Dr<br>Fort Myers, FL 33913 | 10456 Migliera Way<br>Fort Myers, FL 33913 | | 10362 Materita Dr<br>Fort Myers, FL 33913 | | 11610 Giulia Dr<br>Fort Myers, FL 33913 | |
| Proximity to Subject | | 1.00 miles NE | | 1.06 miles NE | | 0.59 miles E | |
| Date Lease Begins<br>Date Lease Expires | unknown<br>unknown | 03/01/2018<br>03/01/2019 | | 01/01/2018<br>01/01/2019 | | 08/01/2018<br>08/01/2019 | |
| Monthly Rental | If Currently<br>Rented: $ | $ 2,000 | | $ 2,000 | | $ 2,000 | |
| Less: Utilities<br>Furniture | $ 0<br>0 | $ 0<br>0 | | $ 0<br>0 | | $ 0<br>0 | |
| Adjusted<br>Monthly Rent | $ | $ 2,000 | | $ 2,000 | | $ 2,000 | |
| Data Source | Field Inspection<br>Public Records | MLS 218007506<br>Public Records | | MLS 217007466<br>Public Records | | MLS 218035146<br>Public Records | |
| RENT ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. |
| Rent<br>Concessions | | None<br>None | | None<br>None | | None<br>None | |
| Location/View | N;Res;<br>B;Wtr; | N;Res;<br>B;Wtr; | | N;Res;<br>B;Wtr; | | N;Res;<br>B;Wtr; | |
| Design and Appeal | DT1;Ranch<br>Ranch | DT1;Ranch<br>Ranch | | DT1;Ranch<br>Ranch | | DT1;Ranch<br>Ranch | |
| Age/Condition | 13<br>C3 | 3<br>C3 | 0 | 3<br>C3 | 0 | 5<br>C3 | 0 |
| Above Grade<br>Room Count<br>Gross Living Area | Total 7 Bdrms 3 Baths 2.0<br>1,823 Sq. Ft. | Total 7 Bdrms 3 Baths 2.1<br>2,250 Sq. Ft. | 0<br>0<br>0 | Total 6 Bdrms 2 Baths 2<br>1,913 Sq. Ft. | 0<br>0<br>0 | Total 7 Bdrms 3 Baths 2.1<br>2,286 Sq. Ft. | 0<br>0<br>0 |
| Other (e.g., basement, etc.) | 0sf | 0sf<br>None | | 0sf<br>None | | 0sf<br>None | |
| Other: | Pool Package | Pool Package | 0 | None | 0 | Pool Package | 0 |
| Net Adj. (total) | | ☐ + ☐ − $ | 0 | ☐ + ☐ − $ | 0 | ☐ + ☐ − $ | 0 |
| Indicated Monthly<br>Market Rent | | $ 2,000 | | $ 2,000 | | $ 2,000 | |

Comments on market data, including the range of rents for single family properties, an estimate of vacancy for single family rental properties, the general trend of rents and vacancy, and support for the above adjustments. (Rent concessions should be adjusted to the market, not to the subject property.) All rental comps represent similar buying and renting alternatives to the subject property and are all located within the immediate neighborhood and market area.

The subject property is located in the development known as Pelican Preserve which is a 55 + and over community.

All rental comps are located in the same development known as Pelican Preserve.

Final Reconciliation of Market Rent:   All rental comps represent similar buying and renting alternatives to the subject property and are all located within the immediate neighborhood and market area.

All rental comps are rented with ~~the rental amount actually in the current market~~ as well as actual rent.

I (WE) ESTIMATE THE MONTHLY MARKET RENT OF THE SUBJECT AS OF    01/01/2019    TO BE $    $2,000

Appraiser(s)  SIGNATURE
NAME    Sarah D. Wilson

Review Appraiser  SIGNATURE
(If applicable)  NAME

| | | | |
|---|---|---|---|
| Date Property Inspected 01/01/2019 | Report Signed 02/12/2019 | Date Property Inspected | Report Signed |
| License or Certification # RD7689 | State FL | License or Certification # | State |
| Expiration Date of License or Certification 11/30/2020 | | Expiration Date of License or Certification | |
| | | Review Appraiser ☐ Did ☐ Did Not Inspect Subject Property | |

Freddie Mac Form 1000 (8/88)

Form 1007 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Fannie Mae Form 1007 (8/88)

Serial# CBFCB53E
esign.alamode.com/verify

## Subject Photo Page

| Borrower | William & Vicki Foster | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10814 Fortina Dr | | | | | | |
| City | Fort Myers | County | Lee | State | FL | Zip Code | 33913 |
| Lender/Client | Integra Realty Resources (IRR) - Miami \| Palm Beach | | | | | | |



**Subject Front**

10814 Fortina Dr
Sales Price
Gross Living Area  1,823
Total Rooms  7
Total Bedrooms  3
Total Bathrooms  2.0
Location  N;Res;
View  B;Wtr;
Site  10898 sf
Quality  Q3
Age  13

Exterior Inspection
from road only
Per Client Request



**Subject Front**

Exterior Inspection
from road only
Per Client Request



**Subject Street**

Exterior Inspection
from road only
Per Client Request

Serial# CBFCB53E
esign.alamode.com/verify

## Comparable Photos 1-3

| Borrower | William & Vicki Foster | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10814 Fortina Dr | | | | | | |
| City | Fort Myers | County | Lee | | State | FL | Zip Code | 33913 |
| Lender/Client | Integra Realty Resources (IRR) - Miami | Palm Beach | | | | | | |



### Comparable 1

| | |
|---|---|
| 10545 Bella Vista Dr | |
| Prox. to Subject | 0.39 miles NE |
| Sales Price | 322,500 |
| Gross Living Area | 1,823 |
| Total Rooms | 7 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.0 |
| Location | N;Res; |
| View | B;Wtr; |
| Site | 11687 sf |
| Quality | Q3 |
| Age | 16 |

Due To Privacy Rights
Appraiser took best photo.



### 2

| | |
|---|---|
| 10859 T berio Dr | |
| Prox. to Subject | 0.24 miles S |
| Sales Price | 361,250 |
| Gross Living Area | 1,744 |
| Total Rooms | 7 |
| Total Bedrooms | 2 |
| Total Bathrooms | 2.0 |
| Location | N;Res; |
| View | B;Wtr; |
| Site | 11996 sf |
| Quality | Q3 |
| Age | 8 |

Due To Privacy Rights
Appraiser took best photo.



### 3

| | |
|---|---|
| 10543 Bella Vista Dr | |
| Prox. to Subject | 0.38 miles NE |
| Sales Price | 355,000 |
| Gross Living Area | 1,879 |
| Total Rooms | 7 |
| Total Bedrooms | 3 |
| Total Bathrooms | 3.0 |
| Location | N;Res; |
| View | B;Wtr; |
| Site | 9117 sf |
| Quality | Q3 |
| Age | 16 |

Due To Privacy Rights
Appraiser took best photo.

# Rental Photo Page

| Borrower | William & Vicki Foster | | | | |
|---|---|---|---|---|---|
| Property Address | 10814 Fortina Dr | | | | |
| City | Fort Myers | County | Lee | State | FL | Zip Code | 33913 |
| Lender/Client | Integra Realty Resources (IRR) - Miami \| Palm Beach | | | | |



### Rental 1

10456 Migliera Way

| Proximity to Subject | 1.00 miles NE |
|---|---|
| Adj. Monthly Rent | 2,000 |
| Gross Living Area | 2,250 |
| Total Rooms | 7 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.1 |
| Location | N;Res; |
| View | B;Wtr; |
| Condition | C3 |
| Age/Year Built | 3 |



### Rental 2

10362 Materita Dr

| Proximity to Subject | 1.06 miles NE |
|---|---|
| Adj. Monthly Rent | 2,000 |
| Gross Living Area | 1,913 |
| Total Rooms | 6 |
| Total Bedrooms | 2 |
| Total Bathrooms | 2 |
| Location | N;Res; |
| View | B;Wtr; |
| Condition | C3 |
| Age/Year Built | 3 |



### Rental 3

11610 Giulia Dr

| Proximity to Subject | 0.59 miles E |
|---|---|
| Adj. Monthly Rent | 2,000 |
| Gross Living Area | 2,286 |
| Total Rooms | 7 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.1 |
| Location | N;Res; |
| View | B;Wtr; |
| Condition | C3 |
| Age/Year Built | 5 |

# Market Conditions Addendum to the Appraisal Report

The purpose of this addendum is to provide the lender/client with a clear and accurate understanding of the market trends and conditions prevalent in the subject neighborhood. This is a required addendum for all appraisal reports with an effective date on or after April 1, 2009.

| Property Address | 10814 Fortina Dr | City Fort Myers | State FL | ZIP Code 33913 |
|---|---|---|---|---|

| Borrower | William & Vicki Foster |
|---|---|

**Instructions:** The appraiser must use the information required on this form as the basis for his/her conclusions, and must provide support for those conclusions, regarding housing trends and overall market conditions as reported in the Neighborhood section of the appraisal report form. The appraiser must fill in all the information to the extent it is available and reliable and must provide analysis as indicated below. If any required data is unavailable or is considered unreliable, the appraiser must provide an explanation. It is recognized that not all data sources will be able to provide data for the shaded areas below; if it is available, however, the appraiser must include the data in the analysis. If data sources provide the required information as an average instead of the median, the appraiser should report the available figure and identify it as an average. Sales and listings must be properties that compete with the subject property, determined by applying the criteria that would be used by a prospective buyer of the subject property. The appraiser must explain any anomalies in the data, such as seasonal markets, new construction, foreclosures, etc.

| Inventory Analysis | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | 15 | 15 | 17 | Increasing | ☒ Stable | Declining |
| Absorption Rate (Total Sales/Months) | 2.50 | 5.00 | 5.67 | Increasing | ☒ Stable | Declining |
| Total # of Comparable Active Listings | 19 | 19 | 19 | Declining | ☒ Stable | Increasing |
| Months of Housing Supply (Total Listings/Ab.Rate) | 7.6 | 3.8 | 3.4 | Declining | ☒ Stable | Increasing |
| **Median Sale & List Price, DOM, Sale/List %** | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
| Median Comparable Sale Price | 356,000 | 356,000 | 356,000 | Increasing | ☒ Stable | Declining |
| Median Comparable Sales Days on Market | 150 | 150 | 150 | Declining | ☒ Stable | Increasing |
| Median Comparable List Price | 362,700 | 362,700 | 362,700 | Increasing | ☒ Stable | Declining |
| Median Comparable Listings Days on Market | 60 | 60 | 60 | Declining | ☒ Stable | Increasing |
| Median Sale Price as % of List Price | 94.34 | 94.59 | 94.00 | Increasing | ☒ Stable | Declining |
| Seller-(developer, builder, etc.)paid financial assistance prevalent? | | Yes | ☒ No | Declining | ☒ Stable | Increasing |

Explain in detail the seller concessions trends for the past 12 months (e.g., seller contributions increased from 3% to 5%, increasing use of buydowns, closing costs, condo fees, options, etc.).    Seller concessions vary greatly with each individual sale. Where there has been an above normal amount of sellers concessions in the past three years, there has been a decrease lately due to lowered asking prices, with more sales being cash transactions. *The local MLS system stores data in real time, and thus it is impossible to act as if it was, or is, a date in the past. *Current-3 months comparable list price and comparable listing days on market is as of the effective date and may not reflect the prior 3 months accurately. Furthermore, there is no reliable method to track for sale by owner properties.

| Are foreclosure sales (REO sales) a factor in the market? | | Yes | ☒ No | If yes, explain (including the trends in listings and sales of foreclosed properties). |
|---|---|---|---|---|

See attached addenda.

Cite data sources for above information.    Local MLS statistics provided the above information.

Summarize the above information as support for your conclusions in the Neighborhood section of the appraisal report form. If you used any additional information, such as an analysis of pending sales and/or expired and withdrawn listings, to formulate your conclusions, provide both an explanation and support for your conclusions. Appraiser's 'Inventory Analysis', 'Median Sale & List Price, DOM' and other observations in this addendum are based on the data source identified above, which appraiser generally believes to be a reliable source of market data. However, the appraiser cannot verify all of the information in that data source and cannot guarantee the accuracy of such data or conclusions based thereon.* Pending sales, expired listings, and withdrawn listings were included in this analysis. The local MLS system stores data in real time, and thus it is impossible to act as if it was, or is, a date in the past. Furthermore, there is no reliable method to track for sale by owner properties. The appraiser cannot guarantee future market conditions affecting the subject property.

| If the subject is a unit in a condominium or cooperative project , complete the following: | | | | Project Name: | | |
|---|---|---|---|---|---|---|
| Subject Project Data | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
| Total # of Comparable Sales (Settled) | | | | Increasing | Stable | Declining |
| Absorption Rate (Total Sales/Months) | | | | Increasing | Stable | Declining |
| Total # of Active Comparable Listings | | | | Declining | Stable | Increasing |
| Months of Unit Supply (Total Listings/Ab.Rate) | | | | Declining | Stable | Increasing |

| Are foreclosure sales (REO sales) a factor in the project? | | Yes | No | If yes, indicate the number of REO listings and explain the trends in listings and sales of |
|---|---|---|---|---|

foreclosed properties.

Summarize the above trends and address the impact on the subject unit and project.

esign.alamode.com/verify    Serial:CBFCB53E

| Signature | Signature |
|---|---|
| Appraiser Name Sarah D. Wilson | Supervisory Appraiser Name |
| Company Name Valucentric, LLC | Company Name |
| Company Address 4590 Ulmerton Road, Clearwater, FL 33762 | Company Address |
| State License/Certification # RD7689    State FL | State License/Certification #    State |
| Email Address info@valucentric.com | Email Address |

Serial# CBFCB53E
esign.alamode.com/verify
Form 1004MC2 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

**Supplemental Addendum**

File No. VALU-18-12-1450

| Borrower | William & Vicki Foster | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 10814 Fortina Dr | | | | | |
| City | Fort Myers | County | Lee | State | FL | Zip Code 33913 |
| Lender/Client | Integra Realty Resources (IRR) - Miami | Palm Beach | | | | |

PURPOSE AND INTENDED USE OF THE APPRAISAL
This Appraisal Report is for the sole use of our client  Intended users of this report is to assist the Client with arriving at a conclusion of fair market value for litigation purposes.  The intended users of this report is the client listed above, and if other parties choose to rely on the report, the appraiser is not obligated to such parties and does not result in such parties becoming intended users. Finally, I understand that this appraisal may not be a part of a federally related transaction. Because it may not be part of a federally related transaction, the following does not apply:

The analyses, opinions, and conclusions in this appraisal and appraisal report were developed and the report was prepared, to the best of the appraiser(s) ability, in accordance with the standards and reporting requirements of the Appraisal Institute.  In addition, this appraisal report conforms to the current Uniform Standards of Professional Appraisal Practice (USPAP), as promulgated by the Appraisal Foundation and FIRREA (Financial Institutions Reform, Recovery and Enforcement Act of 1989) and FDIC minimum requirements. The report conforms to the Federal Reserve Board, Department of the Treasury, Federal Deposit Insurance Corporation, Sate of Florida and the Office of the Comptroller of the Currency, 12CFR, Part 34, Appraisals (Final Rule).

INTEREST VALUED – FEE SIMPLE ESTATE DEFINITION: "Absolute ownership unencumbered by any other interest or estate, subject only to the limitations imposed by the governmental powers of taxation, eminent domain, police power, and escheat."

The Dictionary of Real Estate Appraisal, Forth Edition, Copyright 2002 by the Appraisal Institute an Illinois Not For Profit Corporation

It is the Appraiser's opinion, for purposes of this appraisal report only, that reasonable "exposure time" for the subject property would be a marketing time of 3-6 months.  "Exposure time" as defined by the current, 2018-2019 Uniform Standards of Professional Appraisal Practice (USPAP) is defined as:  "Estimated length of time that the property interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of the appraisal."  "Exposure time is a retrospective opinion based on an analysis of past events assuming a competitive and open market." USPAP Standards Rule 1-2(c) requires the appraiser, when developing a real property appraisal, to "identify the type and definition of value…" USPAP further comments, "when reasonable exposure time is a component of the definition for the value opinion being developed, the appraiser must also develop an opinion of reasonable exposure time linked to that value opinion.

Appraiser has had no involvement with the subject property within 3 years of the effective date of this appraisal.

Appraiser, Sarah D. Wilson has performed no services , as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three year period immediately preceding acceptance of this assignment.

SCOPE OF WORK
The scope of this appraisal entails all of the necessary steps required to develop an Appraisal Report. The report is directed toward the specific needs of our client for the intended use stated herein. It includes valuing the subject property using two of the three traditional approaches to value. For this assignment we utilized local market data obtained from the sources mentioned throughout the report. Neighborhood data is based on our inspection and delineation. Site and building (if improved) data was obtained from the sources mentioned throughout the report. The Highest and Best Use analysis considers the intended purpose of this assignment (this appraisal is not a feasibility study). Furthermore, this appraisal is subject to the Assumptions and Limiting Conditions and the Certification contained herein. With respect to this appraisal assignment, the appraiser(s) completed the following;

The reported analyses, opinions, and conclusions were developed, and the report has been prepared, in conformity with the requirements of the code of Professional Ethics & Standards of Professional Appraisal Practice of the Appraisal Institute, which includes the Uniform Standards of Professional Appraisal Practice. The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

An Appraisal Report on the subject property has been prepared.  The subject property data such as size, location, quality, and zoning are considered.  Market data, including comparable improved sales and listings, supply and demand are among the items researched, analyzed, and presented. The data is used to consider the highest and best use of the subject property and to conclude an opinion of the market value.

The appraiser(s) lack the knowledge and experience with respect to the detection and measurement of hazardous substances. Therefore, this assignment does not cover the presence or absence of such substances as discussed in the General Underlying Assumptions section.  However, any visual or obviously known hazardous substances affecting the property will be reported and an indication of its impact on value will be discussed.

The documentation necessary to arrive at the value is considered in this appraisal report.  A view of the interior and exterior is done to describe the improvements. The market data has been collected, verified, and analyzed.  Comparable sales were chosen for their similar highest and best uses as outlined within the report.  All sales were analyzed and compared. Due to the current state of residential real estate market the Cost Approach is not given any weight.  (The market is currently over supplied). The Income Approach was deemed not applicable for this appraisal since properties of this type are typically owner occupied and are not held for their income producing value. Of the three approaches the value conclusion relies on the Sales Comparisons Approach

This Appraisal Report is a brief recapitulation of the appraiser(s)' data, analyses and conclusions. Supporting documentation is retained in our office file.

No employee, director, officer, or agent of the lender, or any other third party acting as a joint venture partner, independent contractor, appraisal management company, or partner on behalf of the lender

Serial# CBFCB53E
esign.alamode.com/verify

**Supplemental Addendum**

File No. VALU-18-12-1450

| Borrower | William & Vicki Foster | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 10814 Fortina Dr | | | | | |
| City | Fort Myers | County | Lee | State | FL | Zip Code 33913 |
| Lender/Client | Integra Realty Resources (IRR) - Miami | Palm Beach | | | | | |

has influenced or attempted to influence the development, reporting, result, or review of this assignment through coercion, extortion, collusion, compensation, instruction, inducement, intimidation, bribery or in any other manner. I have not been contacted by anyone other than the intended user (lender/client as identified on the first page of the report), borrower, or designated contact to make an appointment to enter the property. I agree to immediately report any unauthorized contacts either personally by phone or electronic to our client.

PERSONAL PROPERTY, TRADE FIXTURES OR INTANGIBLE ITEMS
This appraisal and its value opinion does not include any personal property (furniture, fixtures & equipment) or other intangible items that are not real property (note: normal real property fixtures are included).

EASEMENTS, RESTRICTIONS, ENCUMBRANCES OR LEASES, ETC.
Unless otherwise referenced herein, there are no known adverse easements, encroachments, restrictions, encumbrances, leases, reservations, covenants, contracts, declarations, special assessments, ordinances or other items of a similar nature.

CONCURRENCY ISSUES, ROAD WIDENING ISSUES & MORATORIUMS
To the best of my knowledge there are no concurrency (level of service) issues, road- widening issues or moratoriums associated with the subject property or access to the subject property.

OIL, GAS, MINERAL DEPOSITS, CROPS, TIMBER, ETC
There were no existing crops found on the property at the time of my inspection and no value has been attributed to timber in this appraisal assignment. I was not provided with a Title Report for use in this appraisal and the ownership of oil, gas and mineral rights has not been considered in my valuation. The opinion of value in this report reflects the assumption that all sub-surface rights transfer with surface rights.

HIGHEST & BEST USE
The reasonably probable and legal use of vacant land or an improved property, which is physically possible, appropriately supported, financially feasible, and that results in the highest value. The four criteria the highest and best use must meet are legal permissibility, physical possibility, financial feasibility, and maximum productivity. The subject is being used at it's highest & best use and is within the neighborhood norm for the assigned zoning class.

Highest and Best Use as if Vacant
Legally Permissible: According to public records, the subject site is currently zoned "RS-1" (Residential Single Family), which is an applicable zoning classification. The code provides for various restrictions such as principal permitted uses, etc. A change in zoning is not anticipated for the subject property nor is it deemed necessary or appropriate.

Physically Possible: Adequate utilities are available to enable development. Based on the subject's physical characteristics, development of the site is physically possible.

Financially Feasible: In terms of financial feasibility, speculative development would not be warranted at the present time. In addition, the current soft market in addition to an oversupply of property types across will also inhibit build-to-suit or owner/user development. As noted, the market is perceived to be slowing and will likely continue in the near future. Thus, if the site were vacant, a speculative hold would likely be the best investment position until the market reflects a positive move in regards to demand.

Maximally Productive: The financially feasible use that produces the greatest value consistent with investment requirements from the market is the highest and best use. Speculative hold with the ultimate use being residential development in the form of single family residential should be maximally productive.

Conclusion as Vacant: Given the above information, the highest and best use as vacant is a speculative hold with the ultimate use being for residential use.

Highest and Best Use as Improved
Legally Permissible: If the current improvements cannot be legally inhabited, then removal may be required. The current improvements are not in violation of any known legal restrictions.

Physically Possible: The subject is configured as a single family dwelling. The improvements are in average condition and are assumed to be of sound design. As a result, the physical characteristics of the improvements do not appear to hinder marketability. Lastly, the existing building use currently provides an economic contribution to the property as a whole and neither demolition of the improvements nor redevelopment of the site appears warranted.

Financially Feasible: The current improvements must provide a return that exceeds land value. As indicated in the valuation sections, the improvements provide a return to the land and thus, create value.

Maximally Productive: The use that provides the greatest return relative to risk is the highest and best use as improved. Given the cost of demolition and the uncertainty of profitability for a new development, there is not a use that would financially justify the removal or major alteration of the current improvements.

Conclusion as Improved: Given the above information, the subject's current use as a single family dwelling is its highest and best use as improved.

# Supplemental Addendum

| Borrower | William & Vicki Foster | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10814 Fortina Dr | | | | | | |
| City | Fort Myers | County | Lee | | State | FL | Zip Code 33913 |
| Lender/Client | Integra Realty Resources (IRR) - Miami | Palm Beach | | | | | | |

## APPRAISER INDEPENDENCE REQUIREMENTS

The appraiser, Sarah D. Wilson, has prepared this appraisal in full compliance with applicable Appraiser Independence Requirements and has not performed, participated in, or been associated with any activity in violation of those requirements.

All subject photos in report are appraiser originals taken during the course of this assignment. This was an exterior inspection only. Appraiser inspected the subject property from the road only.

All of the comparables were "driven by" during the course of this assignment, unless otherwise noted in the addendum due to reasons beyond the appraiser's control such as, but not limited to: privacy rights, gated communities, etc.

Appraiser has performed competently while completing this assignment.

## ASSIGNMENT RESULTS

**Physical characteristics are not ASSIGNMENT RESULTS. Appraiser has taken reasonable steps to safeguard access to confidential information and assignment results by unauthorized individuals, whether such information or results are in physical or electronic form.**

**Appraiser ensures that employees, co-workers, sub-contractors, or others who may have access to confidential information or assignment results, are aware of the prohibitions on disclosure of such information or results.**

### • Exterior-Only : Sales Comparison Analysis - Summary of Sales Comparison Approach

Appraiser has utilized the best available comparable sales which occurred within 1-12 months prior to effective date of this appraisal, and within 1-2 miles of the subject property, and which represent the most similar buying alternatives.

All comps are located within the subject's immediate development known as Pelican Preserve, which is a 55+ community. Appraiser utilized the best available comps within a 2 mile radius, and which closed within 12 months prior to effective date, and which represent the most similar buying alternatives to the subject property, and which are also located in 55+ commuties. Requests for additional comps would result in comps over 3 miles, comps with greater adjustments which would exceed lender guidelines and comps which do not represent similar buying alternatives to the subject property.

All adjustments were determined by appraiser's extensive market research and knowledge of the subject's immediate neighborhood as well as market area. Adjustments are determined by the market, and what the market is willing to pay for such features/ similarities/ improvements etc. All adjustments are derived from the market.

All comparables are considered to be overall C3 condition and Q3 quality of construction. For purposes of this report, due to assignment type, exterior only, the subject is assumed to be in average condition and have an overall C3 condition and Q3 quality of construction.

No age adjustments were calculated when there was not a difference of 5 +/- years of the subject's age. Age adjustments were calculated at $1,000.00 per year difference of 5 +/- years of subject's age.

No GLA adjustments were warranted when there was not a difference of 100 +/-SF the subject's GLA. GLA adjustments were calculated at $65.00 per SF difference of the subject's GLA where there was a difference of 100 +/- SF. This is not considered distorting, and necessary to utilize these comparables for credible results. Appraiser utilized the best available comparables, requests for additional comparables would result in sales outside of the subject's immediate market area, sales over 12 months old, and sales which do not represent similar buying alternatives.

No adjustments were warranted for bedroom vs/ den count.

Bath adjustments were warranted for bath amenity differences.

Sales comp 1 was given the least weight, although was same GLA and bed/bath count as subject property, it was over 6 months old, had inferior garage count, and no pool/spa package. A time/marketing condition was warranted. Not considered distorting and necessary for credible results.

Sales comp 2 had significant weight due to design/style, although smaller in bed count, and newer,had similar 3 car garage and pool/spa amenity.

Sales comp 3 had equal weight due to similar GLA and pool amenity.

All adjustments were descrbied in the original appraisal, which were based on extensive research by the appraiser of closed sales 1-15 months prior to effective date of this appraisal and what a typical buyer is willing to spend on differences such as location, design/style, gross living area, bed/bath count. age, amenities, view.

No financing concessions were noted for any of the comparable properties utilized.

No adjustments were warranted for minimal features such as furnishings, fireplaces, sheds, exterior storage, porches, patios, decks, fences, etc.

All 3 closed sales are given consideration in the Final Opinion of value. The mean is $355,916 and final opinion of value is $356,000.

Subject is appraising right at the predominate neighborhood values of $356,000. However, not considered under built, or overbuilt, and has no adverse affect on marketability.

Serial# CBFCB53E
esign.alamode.com/verify

**Supplemental Addendum**

File No. VALU-18-12-1450

| Borrower | William & Vicki Foster | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10814 Fortina Dr | | | | | | |
| City | Fort Myers | County | Lee | | State | FL | Zip Code | 33913 |
| Lender/Client | Integra Realty Resources (IRR) - Miami | Palm Beach | | | | | | |

Adjustments are based on paring of sales, where market data is unavailable or inconclusive a fraction of cost may have been used. The adjustments in the sales comparison approach are rounded to the nearest hundred. Minimal features such as fences, storage areas, sheds, and patios are considered to have no contributory value to the overall opinion of value and are excluded from the sales comparison approach.

The documentation necessary to arrive at the value is considered in this appraisal report. This was an exterior inspection only, as mentioned throughout report. Comparable sales were chosen for their similar highest and best uses as outlined within the report.  All sales were analyzed and compared.

My analysis, opinions, and conclusions were developed, and this report has been prepared, in conformity with USPAP.

Appraiser utilized at least 3 supported, reliable resources:
Local MLS, multiple listing service
Lee County Property Appraiser
Realist.com

Of the three approaches the value conclusion relies on the Sales Comparison approach.  Due to the assignment type, exterior inspection only,  appraiser did not develop cost approach or income approach.

The documentation necessary to arrive at the value is considered in this appraisal report. Comparable sales were chosen for their similar highest and best uses as outlined within the report.  All sales were analyzed and compared.

My analysis, opinions, and conclusions were developed, and this report has been prepared, in conformity with USPAP.

**• Market Conditions Addendum to the Appraisal Report : Foreclosure/REO Sales in the Market**

The market continues to be stabilized, and in balance.

The predominate value is a compilation of closed sales within the last 12 months, and within a 2 mile radius of the subject.  Not all comparables are necessarily the same age, same GLA, or overall same condition as the subject.

Appraiser has utilized the best available comparable sales which occurred within 1-12 months prior to effective date of this appraisal, and within 1-2 miles of the subject property,  and which represent the most similar buying alternatives.

**• Exterior-Only : Site - Adverse Conditions or External Factors**

The subject property has city water and utilities  This is common/ typical in the subject's immediate neighborhood as well as market area and has no adverse affect on market value or marketability.

No apparent adverse easements, encroachments, environmental conditions etc. noted, however the appraiser is not a surveyor.

**APPRAISER IS NOT A HOME INSPECTOR.**

**A HOME INSPECTOR IS RECOMMENDED FOR ANY INTERESTED PARTIES.**

The subject is located in FEMA declared disaster area:  As of effective date of this report, appraiser  visually saw the subject property slightly from the road.  The subject property is located in a deed restricted development, and due to privacy rights, and assignment type per client reuest, this was an exterior inspection only.  Appraiser can not confirm if the subject had any damage due to being in a fema declared disaster area.  However, appraiser did mot visually see any damage from the exterior inspection from the road only.

The subject property is not located in a flood zone however, has no adverse effect on value or marketability. Appraiser utilized comparable properties in the same flood zone as the subject property.

**• Exterior-Only : Improvements - Additional Features**

This was an exterior inspection only, per client request.

According to the subject's property records recorded with Lee County Property Appraiser, the subject is a ranch style home built in 2006 with 3 bedrooms, and 2 baths, kitchen,  living room, dining area, and 3 car attached garage.  The subject also has a below ground pool/ spa package with screen enclosure.

According to Lee County Property Appraiser, the subject is overall 1823 sf under air.  This was an exterior inspection only.  For purposes of this report, Appraiser is basing the subject property's sf at 1823 sf under air.

Appraiser has attached a copy of the record detail as recorded with Lee County Property Appraiser.

The subject property  is located in a Planned Unit Development with mandatory HOA dues.  This is common/typical in the subject's immediate market area and not considered adverse to market or appeal.  All comps utilized are in similar/same deed restricted communities.

Serial# CBFCB53E
esign.alamode.com/verify

## Supplemental Addendum

File No. VALU-18-12-1450

| Borrower | William & Vicki Foster | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10814 Fortina Dr | | | | | | |
| City | Fort Myers | County | Lee | State | FL | Zip Code | 33913 |
| Lender/Client | Integra Realty Resources (IRR) - Miami | Palm Beach | | | | | | |

**EXTERIOR IMPROVEMENTS:**

**No contributory value was given for porches, fireplaces,patios, decks, fences, gazebos, ext storage sheds etc.**

**Contributory value was given for the below ground pool and spa package as recorded on Lee County Property Appraiser.**

**Exterior Inspection Only:**

**Per client request, this was an exterior inspection only from the road.  Due to property rights, appraiser viewed the property from the road only.**

**Appraiser relied on mls records, Lee County Property Appraiser records to determine physical characteristics of the subject property.**

**It is assumed for purposes of this report that the subject property is in average condition and is an overall C3 condition.**

**Appraiser has attached a copy of the subject property's record detail as recorded with Lee County Property Appraiser.**

**Extraordinary Assumption**

An extraordinary assumption is defined as: "as assignment-specific assumption as of the effective date regarding uncertain information used in the analysis which, if found to be false, could alter the appraiser's opinions or conclusions".

We have only inspected the subject property from the street and have not performed a thorough interior and exterior inspection. The opinion of value is based on the subject property being in average condition as of the effective date.

**Hypothetical Condition**

A hypothetical condition is defined as: "a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis."

The opinion of value is based on the Hypothetical Condition  the value of the subject property is not affected by any detrimental conditions including Chinese drywall.

**Plat Map — Aerial View**



## Flood Map

| Borrower | William & Vicki Foster | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10814 Fortina Dr | | | | | | |
| City | Fort Myers | County | Lee | | State | FL | Zip Code | 33913 |
| Lender/Client | Integra Realty Resources (IRR) - Miami | Palm Beach | | | | | | |



**MAP DATA**

FEMA Special Flood Hazard Area: **No**

Map Number: **12071C0433G**

Zone: **X**

Map Date: **December 07, 2018**

FIPS: **12071**

**MAP LEGEND**

- Areas inundated by 500-year flooding
- Areas inundated by 100-year flooding
- Velocity Hazard
- Protected Areas
- Floodway
- Subject Area

Powered by CoreLogic©

Form MAP.FLOOD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE
Serial# CBFCB53E
esign.alamode.com/verify

## Location Map

| Borrower | William & Vicki Foster | | | | |
|---|---|---|---|---|---|
| Property Address | 10814 Fortina Dr | | | | |
| City | Fort Myers | County | Lee | State | FL | Zip Code | 33913 |
| Lender/Client | Integra Realty Resources (IRR) - Miami | Palm Beach | | | | |



Serial# CBFCB53E
esign.alamode.com/verify

## Record Detail – Page 1

Lee County Property Appraiser - Online Parcel Inquiry     https://www.leepa.org/Display/DisplayParcel.aspx?FolioID=10524767&...

### Property Data
**STRAP: 02-45-25-P3-0200A.0060   Folio ID: 10524767**

**Owner Of Record - Tenants by Entirety**

FOSTER WILLIAM P + VICKI D
10814 FORTINA DR
FORT MYERS FL 33913

**Site Address**

10814 FORTINA DR
FORT MYERS FL 33913

**Property Description**
Do not use for legal documents!

VILLA CAPRI AT PELICAN PRESERVE
TRACT T DESC IN INST #2006-126026
BLK A LOT 6

**Classification / DOR Code**

SINGLE FAMILY RESIDENTIAL / 01

[ Tax Map Viewer ] [ View Comparables ]



[ Pictometry Aerial Viewer ]

**Image of Structure**

◄ **Photo Date October of 2018** ► ☐ View other photos

Last Inspection Date: 02/26/2018

### Current Working Values

| | | | |
|---|---|---|---|
| **Just** | 278,608 | As Of | 07/16/2018 |

**Attributes**

| | |
|---|---|
| Land Units Of Measure | LT |
| Units | 1.00 |
| Total Number of Buildings | 1 |
| Total Bedrooms / Bathrooms | 3 / 2.0 |
| Total Living Area | 1,823 |
| 1st Year Building on Tax Roll | 2006 |
| Historic District | No |

### Property Value History

| Tax Year | Just | Market Assessed | Capped Assessed | Taxable |
|---|---|---|---|---|
| 2006 | 38,450 | 38,450 | 38,450 | 38,450 |
| 2007 | 275,720 | 275,720 | 275,720 | 275,720 |
| 2008 | 288,920 | 288,920 | 288,920 | 238,920 |
| 2009 | 132,940 | 132,940 | 132,940 | 82,940 |
| 2010 | 44,720 | 44,720 | 44,720 | 19,720 |
| 2011 | 30,059 | 30,059 | 30,059 | 5,059 |
| 2012 | 28,010 | 28,010 | 28,010 | 3,010 |
| 2013 | 31,010 | 31,010 | 28,486 | 3,486 |
| 2014 | 50,010 | 50,010 | 28,913 | 3,913 |
| 2015 | 295,711 | 295,711 | 241,300 | 191,300 |
| 2016 | 287,027 | 287,027 | 242,989 | 192,989 |
| 2017 | 286,654 | 286,654 | 248,092 | 198,092 |
| 2018 | 278,608 | 278,608 | 253,302 | 203,302 |

The **Just** value is the total parcel assessment (less any considerations for the cost of sale). This is the closest value to *Fair Market Value* we produce and is dated as of January 1st of the tax year in question (*F.A.C. 12D-1.002*).

The **Market Assessed** value is the total parcel assessment (less any considerations for the cost of sale) based upon the assessment standard. Most parcels are assessed based either upon the *Highest and Best Use* standard or the *Present Use* standard (*F.S. 193.011*). For *Agriculturally Classified* parcels (or parts thereof), only agricultural uses are considered in the assessment (*F.S. 193.461 (6) (a)*). The difference between the *Highest and Best Use/Present Use* and the *Agricultural Use* is often referred to as the *Agricultural Exemption*.
(i.e. Market Assessed = Just – Agricultural Exemption)

The **Capped Assessed** value is the *Market Assessment* after any *Save Our Homes* or *10% Assessment Limitation* cap is applied. This assessment cap is applied to all properties and limits year-to-year assessment increases to either the *Consumer Price Index* or 3%, whichever is lower for Homestead properties OR 10% for non-Homestead properties.

The **Taxable** value is the *Capped Assessment* after exemptions (*Homestead, etc.*) are applied to it. This is the value that most taxing authorities use to calculate a parcel's taxes.
(i.e. Taxable = Capped Assessed – Exemptions)

2019, 12:11 PM

Serial# CBFCB53E
esign.alamode.com/verify

Form SCNLTR - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

## Record Detail – Page 2

Lee County Property Appraiser - Online Parcel Inquiry     https://www.leepa.org/Display/DisplayParcel.aspx?FolioID=10524767&...

### Exemptions

| Exemption | Amount |
|---|---|
| Homestead | 25,000.00 |
| Additional | 25,000.00 |

### Values (2018 Tax Roll)

| Property Values | | Attributes | |
|---|---|---|---|
| Just | 278,608 | Land Units Of Measure | LT |
| Assessed | 278,608 | Units | 1.00 |
| Portability Applied | 0 | Total Number of Buildings | 1 |
| Cap Assessed | 253,302 | Total Bedrooms / Bathrooms | 3 / 2.0 |
| Taxable | 203,302 | Total Living Area | 1,823 |
| Cap Difference | 25,306 | 1st Year Building on Tax Roll | 2006 |
| | | Historic District | No |

### Taxing Authorities
#### CITY OF FORT MYERS / 090

| Name / Code | Category | Mailing Address |
|---|---|---|
| LEE CO GENERAL REVENUE / 044 | County | Lee County Office of Management & Budget PO BOX 398 FORT MYERS FL 33902-0398 |
| LEE CO LIBRARY DIST / 052 | Dependent District | Lee County Office of Management & Budget PO BOX 398 FORT MYERS FL 33902-0398 |
| LEE CO HYACINTH CONTROL DIST / 051 | Independent District | RUSSELL BAKER 15191 HOMESTEAD RD LEHIGH ACRES FL 33971 |
| LEE CO MOSQUITO CONTROL DIST / 053 | Independent District | RUSSELL BAKER 15191 HOMESTEAD RD LEHIGH ACRES FL 33971 |
| WEST COAST INLAND NAVIGATION DIST / 098 | Independent District | Justin D. McBride EXECUTIVE DIRECTOR 200 MIAMI AVE E VENICE FL 34285-2408 |
| CITY OF FORT MYERS / 031 | Municipal | CHRISTINE TENNEY BUDGET MANAGER PO DRAWER 2217 FORT MYERS FL 33902 |
| PUBLIC SCHOOL - BY LOCAL BOARD / 012 | Public Schools | AMI DESAMOURS BUDGET DEPARTMENT 2855 COLONIAL BLVD FORT MYERS FL 33966 |
| PUBLIC SCHOOL - BY STATE LAW / 013 | Public Schools | AMI DESAMOURS BUDGET DEPARTMENT 2855 COLONIAL BLVD FORT MYERS FL 33966 |
| CITY OF FORT MYERS FIRE RESCUE SERVICES / 189 | Special District | CHRISTINE TENNEY BUDGET MANAGER PO DRAWER 2217 FORT MYERS FL 33902 |
| CITY OF FORT MYERS RESIDENTIAL SOLID WASTE SERVICES / 196 | Special District | FABIAN BUSTOS 2925 DR MARTIN LUTHER KING JR BLVD FORT MYERS FL 33916 |
| GATEWAY SERVICES CDD / 043 | Special District | Inframark 210 N UNIVERSITY DR STE 702 CORAL SPRINGS FL 33071 |
| SFWMD-DISTRICT-WIDE / 110 | Water District | MICHELLE QUIGLEY 3301 GUN CLUB RD WEST PALM BEACH, FL 33406 |
| SFWMD-EVERGLADES CONSTRUCTION PROJECT / 084 | Water District | MICHELLE QUIGLEY 3301 GUN CLUB RD WEST PALM BEACH, FL 33406 |
| SFWMD-OKEECHOBEE BASIN / 308 | Water District | MICHELLE QUIGLEY 3301 GUN CLUB RD WEST PALM BEACH FL 33406 |

### Sales / Transactions

Serial# CBFCB53E
esign.alamode.com/verify

Form SCNLTR - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

# Record Detail – Page 3

Lee County Property Appraiser - Online Parcel Inquiry     https://www.leepa.org/Display/DisplayParcel.aspx?FolioID=10524767&...

| Sale Price | Date | OR Number | Type | Description | Vacant/Improved |
|---|---|---|---|---|---|
| 435,000.00 | 03/21/2007 | 2007000099594 | 06 | **Sales qualified and included for sales ratio analysis** Qualified (Fair Market Value / Arms Length / One STRAP #) | I |
| 13,094,500.00 | 02/16/2001 | 3368/4894 | 02 | **Sales qualified but excluded from sales ratio analysis** Qualified (Multiple STRAP # / 06-091) | V |
| 11,308,400.00 | 06/14/1999 | 3133/142 | 02 | **Sales qualified but excluded from sales ratio analysis** Qualified (Multiple STRAP # / 06-091) | V |
| 100.00 | 07/24/1995 | 2626/3647 | 04 | **Sales disqualified as a result of examination of the deed** Disqualified (Multiple STRAP # - 01,03,04,07) | V |
| 3,570,800.00 | 07/01/1991 | 2232/3507 | 04 | **Sales disqualified as a result of examination of the deed** Disqualified (Multiple STRAP # - 01,03,04,07) | V |

## Building/Construction Permit Data

| Permit Number | Permit Type | Date |
|---|---|---|
| TRD2018-02134 | Building Miscellaneous | 07/19/2018 |
| BLD2012-01210 | Building Addition | 08/31/2012 |
| BLD2008-00932 | Shutter, Awning | 05/12/2008 |
| BLD2006-01962 | Screen Room / Enclosure | 05/23/2006 |
| PSP2006-00017 | Pool & Spa | 04/03/2006 |
| BLD2005-03492 | Building New Construction | 01/13/2006 |

**IMPORTANT INFORMATION: THIS MAY NOT BE A COMPREHENSIVE OR TIMELY LISTING OF PERMITS ISSUED FOR THIS PROPERTY.**

Note: The Lee County Property Appraiser's Office does not issue or maintain any permit information. The Building/Construction permit data displayed here represents only those records this Office may find necessary to conduct Property Appraiser business. Use of this information is with the understanding that in no way is this to be considered a comprehensive listing of permits for this or any other parcel.

The Date field represents the date the property appraiser received information regarding permit activity; it may or not represent the actual date of permit issuance or completion.

Full, accurate, active and valid permit information for parcels can only be obtained from the appropriate permit issuing agency.

## Parcel Numbering History ⓘ

| Prior STRAP | Prior Folio ID | Renumber Reason | Renumber Date |
|---|---|---|---|
| 02-45-25-P2-0200A.0060 | N/A | Delete Parcel-add back to roll under new STRAP(same value) | 04/28/2006 |
| 02-45-25-P2-00002.0010 | 10255059 | Spilt (From another Parcel) | 04/28/2006 |
| 02-45-25-P2-00002.0010 | 10583279 | Spilt (From another Parcel) | 04/28/2006 |

## Location Information

| Township | Range | Section | Block | Lot |
|---|---|---|---|---|
| 45 | 25E | 02 | 0200A | 0060 |

| Municipality | Latitude | | Longitude | |
|---|---|---|---|---|
| City of Fort Myers | 26.58854 | | -81.7819 | |

**Links**

View Parcel on Google Maps     View Parcel on GeoView

## Solid Waste (Garbage) Roll Data

| Solid Waste District | Roll Type | Category | Unit / Area | Tax Amount |
|---|---|---|---|---|
| 009 - City of Fort Myers | R - Residential Category | | 1 | 18.72 |

## Flood and Storm Information

## Appraisal Details (2018 Tax Roll)

**Land**

3 of 5

2019, 12:11 PM

Serial# CBFCB53E
esign.alamode.com/verify

## Record Detail – Page 4

Lee County Property Appraiser - Online Parcel Inquiry          https://www.leepa.org/Display/DisplayParcel.aspx?FolioID=10524767&...

### Land Tracts

| Use Code | Use Code Description | Number of Units | Unit of Measure |
|---|---|---|---|
| 140 | Single Family Residential, Golf Course | 1.00 | Lot |

### Land Features

| Description | Year Added | Units |
|---|---|---|
| IRRIGATION SYSTEM LAWN | 2006 | 1 |

### Buildings

### Building 1 of 1

### Building Characteristics

| Improvement Type | Model Type | Stories | Living Units |
|---|---|---|---|
| 102 - Ranch | 1 - single family residential | 1.0 | 1 |

| Bedrooms | Bathrooms | Year Built | Effective Year Built |
|---|---|---|---|
| 3 | 2.0 | 2006 | 2009 |

### Building Subareas

| Description | Heated / Under Air | Area (Sq Ft) |
|---|---|---|
| BAS – BASE | Y | 1,823 |
| FGR – FINISHED GARAGE | N | 444 |
| FOP – FINISHED OPEN PORCH | N | 75 |
| FOP – FINISHED OPEN PORCH | N | 220 |
| PS1 - 1 STORY SCREEN ENCL | N | 1,000 |

### Building Features

| Description | Year Added | Units |
|---|---|---|
| POOL - RESIDENTIAL | 2006 | 392 |
| PATIO - CONCRETE | 2006 | 608 |
| JACUZZI - TYPE B | 2006 | 1 |
| A/C-POOL HEATERS | 2006 | 1 |

**Building Front Photo**          **Building Footprint**

Photo Date: October of 2018

### Appraisal Details (Current Working Values)

### Land

### Land Tracts

| Use Code | Use Code Description | Number of Units | Unit of Measure |
|---|---|---|---|
| 140 | Single Family Residential, Golf Course | 1.00 | Lot |

2019, 12:11 PM

Form SCNLTR - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Serial# CBFCB53E
esign.alamode.com/verify

# Record Detail – Page 5

Lee County Property Appraiser - Online Parcel Inquiry          https://www.leepa.org/Display/DisplayParcel.aspx?FolioID=10524767&...



### Land Features

| Description | Year Added | Units |
|---|---|---|
| IRRIGATION SYSTEM LAWN | 2006 | 1 |

### Buildings
#### Building 1 of 1
#### Building Characteristics

| Improvement Type | Model Type | Stories | Living Units |
|---|---|---|---|
| 102 - Ranch | 1 - single family residential | 1.0 | 1 |

| Bedrooms | Bathrooms | Year Built | Effective Year Built |
|---|---|---|---|
| 3 | 2.0 | 2006 | 2009 |

#### Building Subareas

| Description | Heated / Under Air | Area (Sq Ft) |
|---|---|---|
| BAS - BASE | Y | 1,823 |
| FGR - FINISHED GARAGE | N | 444 |
| FOP - FINISHED OPEN PORCH | N | 220 |
| FSP - FINISHED SCREEN PORCH | N | 75 |
| PS1 - 1 STORY SCREEN ENCL | N | 1,000 |

#### Building Features

| Description | Year Added | Units |
|---|---|---|
| POOL - RESIDENTIAL | 2006 | 392 |
| PATIO - CONCRETE | 2006 | 608 |
| JACUZZI - TYPE B | 2006 | 1 |
| A/C-POOL HEATERS | 2006 | 1 |

**Building Front Photo**

**Building Footprint**

Photo Date: October of 2018

2019, 12:11 PM

Serial# CBFCB53E
esign.alamode.com/verify

Form SCNLTR - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

# Tax Card - Page 1

Lee County Tax Collector - Print Results

https://www.leetc.com/ncp/search_detail.asp

 Help

**Real Property Information**



| Account | Tax Year | Status |
|---|---|---|
| 02-45-25-P3-0200A.0060 | 2018 | PAID |

Original Account
02-45-25-P3-0200A.0060

Owner
FOSTER WILLIAM P + VICKI D

| Physical Address | Mailing Address |
|---|---|
| 10814 FORTINA DR | 10814 FORTINA DR |
| FORT MYERS FL 33913 | FORT MYERS FL 33913 |
| | USA |

**Legal Description**

VILLA CAPRI AT PELICAN PRESERVE TRACT T DESC IN INST #2006-126026 BLK A LOT 6

Outstanding Balance as of 1/27/2019          $0.00

## Values & Exemptions

| | |
|---|---|
| District | 090 |
| Market Assessed Value | $278,608 |
| Cap Assessed Value | $253,302 |
| Homestead Exemption Value | $50,000 |
| Taxable Value | $203,302 |
| Combined Tax & Assessment Amount | $5,708.84 |

### Ad Valorem Taxes

| Taxing Authority | Mill Rate | Assessed | Exempt | Taxable | Amount |
|---|---|---|---|---|---|
| LEE COUNTY GENERAL REVENUE | 4.0506 | 253,302 | 50,000 | 203,302 | $823.50 |
| PUBLIC SCHOOL - BY LOCAL BOARD | 2.2480 | 253,302 | 25,000 | 228,302 | $513.22 |
| PUBLIC SCHOOL - BY STATE LAW | 4.1530 | 253,302 | 25,000 | 228,302 | $948.14 |
| CITY OF FORT MYERS | 8.4500 | 253,302 | 50,000 | 203,302 | $1,717.90 |
| LEE COUNTY LIBRARY FUND | 0.4956 | 253,302 | 50,000 | 203,302 | $100.76 |
| SFL WATER MGMT-DISTRICT LEVY | 0.1209 | 253,302 | 50,000 | 203,302 | $24.58 |
| SFL WATER MGMT-EVERGLADE CONST | 0.0417 | 253,302 | 50,000 | 203,302 | $8.48 |
| SFL WATER MGMT-OKEECHOBEE LEVY | 0.1310 | 253,302 | 50,000 | 203,302 | $26.63 |
| LEE COUNTY HYACINTH CONTROL | 0.0239 | 253,302 | 0 | 253,302 | $6.05 |
| LEE COUNTY MOSQUITO CONTROL | 0.2636 | 253,302 | 0 | 253,302 | $66.77 |
| WEST COAST INLAND NAVIGATION DISTRICT | 0.0394 | 253,302 | 50,000 | 203,302 | $8.01 |

### Non-Ad Valorem Assessments

| Taxing Authority | Rate | Basis | Amount |
|---|---|---|---|
| CITY OF FORT MYERS FIRE SERVICES AND FACILITIES | 1.0000 | ACTL LEVY | $77.91 |
| CITY OF FORT MYERS RESIDENTIAL SOLID WASTE | 228.9600 | PER UNIT | $228.96 |
| GATEWAY SERVICES CDD | 1.0000 | ACTL LEVY | $1,139.21 |
| LEE COUNTY SOLID WASTE ASSESSMENT | 1.0000 | VARIES | $18.72 |

### Amount Due If Paid In

| Nov 2018 | Dec 2018 | Jan 2019 | Feb 2019 | Mar 2019 |
|---|---|---|---|---|
| $5,480.49 | $5,537.57 | $5,594.66 | $5,651.75 | $5,708.84 |

**Additional Options:**

- eNotify
- Tax Detail
- Payments Made
- All Unpaid Taxes
- Tax History
- Link to Property Appraiser's Tax Estimator

See also:

Property Appraiser

1 of 2

2019, 12:12 PM

Serial# CBFCB53E
esign.alamode.com/verify

# Tax Card - Page 2

Lee County Tax Collector - Print Results

https://www.leetc.com/ncp/search_detail.asp

Clerk of Court

2019, 12:12 PM

Serial# CBFCB53E
esign.alamode.com/verify

Form SCNLTR - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Case 2:09-md-02047-EEF-MBN Document 22363-60 Filed 11/18/19 Page 45 of 110
Case 4:11-cv-22408-MGC Document 291-43 Entered on FLSD Docket 05/13/2015 Page 44 of 54
**License**



RICK SCOTT, GOVERNOR                                    JONATHAN ZACHEM, SECRETARY



## STATE OF FLORIDA
## DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION

### FLORIDA REAL ESTATE APPRAISAL BD

THE CERTIFIED RESIDENTIAL APPRAISER HEREIN IS CERTIFIED UNDER THE
PROVISIONS OF CHAPTER 475, FLORIDA STATUTES

# WILSON, SARAH DENISE

9409 IVY BROOK RUN 1305
FORT MYERS                FL 33913

**LICENSE NUMBER: RD7689**

**EXPIRATION DATE: NOVEMBER 30, 2020**

Always verify licenses online at MyFloridaLicense.com



Do not alter this document in any form.

This is your license. It is unlawful for anyone other than the licensee to use this document.

Serial# CBFCB53E
esign.alamode.com/verify

Case 2:09-md-02047-EEF-MBN Document 22363-60 Filed 11/18/19 Page 46 of 110
Case 1:11-cv-22408-MGC Document 201-13 Entered on FLSD Docket 05/13/2015 Page 45 of 54
**E&O Insurance – Page 1**

# NAVIGATORS INSURANCE COMPANY

## THIS IS A CLAIMS MADE INSURANCE POLICY.

THIS POLICY APPLIES ONLY TO THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD. ALL CLAIMS MUST BE REPORTED IN WRITING TO THE COMPANY DURING THE POLICY PERIOD OR WITHIN 60 DAYS AFTER THE END OF THE POLICY PERIOD.

### PLEASE READ THIS POLICY CAREFULLY.

## REAL ESTATE PROFESSIONAL ERRORS AND OMISSIONS INSURANCE POLICY DECLARATIONS

POLICY NUMBER: PH17RELM01679IV    RENEWAL OF: PH16RELM01679IV

1. **NAMED INSURED:**
   Valucentric LLC

2. **ADDRESS:**
   1003 Mt Hermon rd Ste 201
   Salisbury, MD  21804

3. **POLICY PERIOD:    FROM:** 09/19/2017    **TO:** 09/19/2018
   12:01 A.M. Standard Time at the address of the **Named Insured** as stated in Number 2 above.

4. **LIMITS OF LIABILITY:**        $ 1,000,000        **Per Claim**

                                   $ 2,000,000        **Annual Aggregate**

5. **DEDUCTIBLE:**   $ 10,000

6. **PREMIUM:**  $ 19,304.00
   **TAXES:**    $                    $

7. **RETROACTIVE DATE:** 08/14/2014

NAV REL DEC (02 14)                Page 1 of 2

Serial# CBFCB53E
esign.alamode.com/verify

Form SCNLTR - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

# E&O Insurance – Page 2

**8.    FORMS ATTACHED:**

| | |
|---|---|
| NAV REL DEC | Real Estate Professionals Declarations |
| NAV REL NIC PF | Real Estate Professionals Policy |
| NAV REL 025 | Claims Expenses Inside the Limits of Liability |
| NAV REL 027 | Specified Entity Coverage |
| NAV REL 300 MD | Maryland Amendatory |
| MD PREM NOTICE | Notice to Applicants in Maryland Regarding Cancellation and Premium Recalculation |
| NAV-ML-002 | OFAC Endorsement |

**PROGRAM ADMINISTRATOR:**



**McGowan Program Administrators**
**(A Division of McGowan & Company, Inc.)**
**20595 Lorain Road, Suite 300**
**Fairview Park, OH 44126**
**(440) 333-6300**

By Acceptance of this policy the Insured agrees that the statements in the Declarations and the Application and any attachments hereto are the Insured's agreements and representations and that this policy embodies all agreements existing between the Insured and the Company or any of its representatives relating to this insurance.

---

**IN WITNESS WHEREOF, we have caused this policy to be signed by our President and Secretary.**

[Emily Miner]
Secretary

[Stanley A. Galanski]
President



Insuring A World In Motion®

NAV REL DEC (02 14)                    Page 2 of 2

Serial# CBFCB53E
esign.alamode.com/verify

VALU-18-12-1450
File No.     VALU-18-12-1450

## UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM
(Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)

### Condition Ratings and Definitions

**C1**

The improvements have been recently constructed and have not been previously occupied. The entire structure and all components are new and the dwelling features no physical depreciation.

Note: Newly constructed improvements that feature recycled or previously used materials and/or components can be considered new dwellings provided that the dwelling is placed on a 100 percent new foundation and the recycled materials and the recycled components have been rehabilitated/remanufactured into like-new condition. Improvements that have not been previously occupied are not considered "new" if they have any significant physical depreciation (that is, newly constructed dwellings that have been vacant for an extended period of time without adequate maintenance or upkeep).

**C2**

The improvements feature no deferred maintenance, little or no physical depreciation, and require no repairs. Virtually all building components are new or have been recently repaired, refinished, or rehabilitated. All outdated components and finishes have been updated and/or replaced with components that meet current standards. Dwellings in this category are either almost new or have been recently completely renovated and are similar in condition to new construction.

Note: The improvements represent a relatively new property that is well maintained with no deferred maintenance and little or no physical depreciation, or an older property that has been recently completely renovated.

**C3**

The improvements are well maintained and feature limited physical depreciation due to normal wear and tear. Some components, but not every major building component, may be updated or recently rehabilitated. The structure has been well maintained.

Note: The improvement is in its first-cycle of replacing short-lived building components (appliances, floor coverings, HVAC, etc.) and is being well maintained. Its estimated effective age is less than its actual age. It also may reflect a property in which the majority of short-lived building components have been replaced but not to the level of a complete renovation.

**C4**

The improvements feature some minor deferred maintenance and physical deterioration due to normal wear and tear. The dwelling has been adequately maintained and requires only minimal repairs to building components/mechanical systems and cosmetic repairs. All major building components have been adequately maintained and are functionally adequate.

Note: The estimated effective age may be close to or equal to its actual age. It reflects a property in which some of the short-lived building components have been replaced, and some short-lived building components are at or near the end of their physical life expectancy; however, they still function adequately. Most minor repairs have been addressed on an ongoing basis resulting in an adequately maintained property.

**C5**

The improvements feature obvious deferred maintenance and are in need of some significant repairs. Some building components need repairs, rehabilitation, or updating. The functional utility and overall livability is somewhat diminished due to condition, but the dwelling remains useable and functional as a residence.

Note: Some significant repairs are needed to the improvements due to the lack of adequate maintenance. It reflects a property in which many of its short-lived building components are at the end of or have exceeded their physical life expectancy but remain functional.

**C6**

The improvements have substantial damage or deferred maintenance with deficiencies or defects that are severe enough to affect the safety, soundness, or structural integrity of the improvements. The improvements are in need of substantial repairs and rehabilitation, including many or most major components.

Note: Substantial repairs are needed to the improvements due to the lack of adequate maintenance or property damage. It reflects a property with conditions severe enough to affect the safety, soundness, or structural integrity of the improvements.

### Quality Ratings and Definitions

**Q1**

Dwellings with this quality rating are usually unique structures that are individually designed by an architect for a specified user. Such residences typically are constructed from detailed architectural plans and specifications and feature an exceptionally high level of workmanship and exceptionally high-grade materials throughout the interior and exterior of the structure. The design features exceptionally high-quality exterior refinements and ornamentation, and exceptionally high-quality interior refinements. The workmanship, materials, and finishes throughout the dwelling are of exceptionally high quality.

**Q2**

Dwellings with this quality rating are often custom designed for construction on an individual property owner's site. However, dwellings in this quality grade are also found in high-quality tract developments featuring residence constructed from individual plans or from highly modified or upgraded plans. The design features detailed, high quality exterior ornamentation, high-quality interior refinements, and detail. The workmanship, materials, and finishes throughout the dwelling are generally of high or very high quality.

Serial# CBFCB53E
esign.alamode.com/verify

## UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM
(Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)

Quality Ratings and Definitions (continued)

Q3
Dwellings with this quality rating are residences of higher quality built from individual or readily available designer plans in above-standard residential tract developments or on an individual property owner's site. The design includes significant exterior ornamentation and interiors that are well finished. The workmanship exceeds acceptable standards and many materials and finishes throughout the dwelling have been upgraded from "stock" standards.

Q4
Dwellings with this quality rating meet or exceed the requirements of applicable building codes. Standard or modified standard building plans are utilized and the design includes adequate fenestration and some exterior ornamentation and interior refinements. Materials, workmanship, finish, and equipment are of stock or builder grade and may feature some upgrades.

Q5
Dwellings with this quality rating feature economy of construction and basic functionality as main considerations. Such dwellings feature a plain design using readily available or basic floor plans featuring minimal fenestration and basic finishes with minimal exterior ornamentation and limited interior detail. These dwellings meet minimum building codes and are constructed with inexpensive, stock materials with limited refinements and upgrades.

Q6
Dwellings with this quality rating are of basic quality and lower cost; some may not be suitable for year-round occupancy. Such dwellings are often built with simple plans or without plans, often utilizing the lowest quality building materials. Such dwellings are often built or expanded by persons who are professionally unskilled or possess only minimal construction skills. Electrical, plumbing, and other mechanical systems and equipment may be minimal or non-existent. Older dwellings may feature one or more substandard or non-conforming additions to the original structure

Definitions of Not Updated, Updated, and Remodeled

Not Updated
Little or no updating or modernization. This description includes, but is not limited to, new homes.
Residential properties of fifteen years of age or less often reflect an original condition with no updating, if no major components have been replaced or updated. Those over fifteen years of age are also considered not updated if the appliances, fixtures, and finishes are predominantly dated. An area that is 'Not Updated' may still be well maintained and fully functional, and this rating does not necessarily imply deferred maintenance or physical/functional deterioration.

Updated
The area of the home has been modified to meet current market expectations. These modifications are limited in terms of both scope and cost.
An updated area of the home should have an improved look and feel, or functional utility. Changes that constitute updates include refurbishment and/or replacing components to meet existing market expectations. Updates do not include significant alterations to the existing structure.

Remodeled
Significant finish and/or structural changes have been made that increase utility and appeal through complete replacement and/or expansion.
A remodeled area reflects fundamental changes that include multiple alterations. These alterations may include some or all of the following: replacement of a major component (cabinet(s), bathtub, or bathroom tile), relocation of plumbing/gas fixtures/appliances, significant structural alterations (relocating walls, and/or the addition of) square footage). This would include a complete gutting and rebuild.

Explanation of Bathroom Count

Three-quarter baths are counted as a full bath in all cases.  Quarter baths (baths that feature only a toilet) are not included in the bathroom count.  The number of full and half baths is reported by separating the two values using a period, where the full bath count is represented to the left of the period and the half bath count is represented to the right of the period.

Example:
3.2 indicates three full baths and two half baths.

Serial# CBFCB53E
esign.alamode.com/verify

## UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM
(Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)

Abbreviations Used in Data Standardization Text

| Abbreviation | Full Name | Fields Where This Abbreviation May Appear |
|---|---|---|
| ac | Acres | Area, Site |
| AdjPrk | Adjacent to Park | Location |
| AdjPwr | Adjacent to Power Lines | Location |
| A | Adverse | Location & View |
| ArmLth | Arms Length Sale | Sale or Financing Concessions |
| ba | Bathroom(s) | Basement & Finished Rooms Below Grade |
| br | Bedroom | Basement & Finished Rooms Below Grade |
| B | Beneficial | Location & View |
| Cash | Cash | Sale or Financing Concessions |
| CtySky | City View Skyline View | View |
| CtyStr | City Street View | View |
| Comm | Commercial Influence | Location |
| c | Contracted Date | Date of Sale/Time |
| Conv | Conventional | Sale or Financing Concessions |
| CrtOrd | Court Ordered Sale | Sale or Financing Concessions |
| DOM | Days On Market | Data Sources |
| e | Expiration Date | Date of Sale/Time |
| Estate | Estate Sale | Sale or Financing Concessions |
| FHA | Federal Housing Authority | Sale or Financing Concessions |
| GlfCse | Golf Course | Location |
| Glfvw | Golf Course View | View |
| Ind | Industrial | Location & View |
| in | Interior Only Stairs | Basement & Finished Rooms Below Grade |
| Lndfl | Landfill | Location |
| LtdSght | Limited Sight | View |
| Listing | Listing | Sale or Financing Concessions |
| Mtn | Mountain View | View |
| N | Neutral | Location & View |
| NonArm | Non-Arms Length Sale | Sale or Financing Concessions |
| BsyRd | Busy Road | Location |
| o | Other | Basement & Finished Rooms Below Grade |
| Prk | Park View | View |
| Pstrl | Pastoral View | View |
| PwrLn | Power Lines | View |
| PubTrn | Public Transportation | Location |
| rr | Recreational (Rec) Room | Basement & Finished Rooms Below Grade |
| Relo | Relocation Sale | Sale or Financing Concessions |
| REO | REO Sale | Sale or Financing Concessions |
| Res | Residential | Location & View |
| RH | USDA - Rural Housing | Sale or Financing Concessions |
| s | Settlement Date | Date of Sale/Time |
| Short | Short Sale | Sale or Financing Concessions |
| sf | Square Feet | Area, Site, Basement |
| sqm | Square Meters | Area, Site |
| Unk | Unknown | Date of Sale/Time |
| VA | Veterans Administration | Sale or Financing Concessions |
| w | Withdrawn Date | Date of Sale/Time |
| wo | Walk Out Basement | Basement & Finished Rooms Below Grade |
| wu | Walk Up Basement | Basement & Finished Rooms Below Grade |
| WtrFr | Water Frontage | Location |
| Wtr | Water View | View |
| Woods | Woods View | View |

Other Appraiser-Defined Abbreviations

| Abbreviation | Full Name | Fields Where This Abbreviation May Appear |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

# Anthony M. Graziano, MAI, CRE

**Integra Realty Resources**
Miami/Palm Beach

Dadeland Centre
9155 S. Dadeland Boulevard
Suite 1208
Miami, FL 33156

T 305.670.0001
F 305.670.2276

irr.com

## Experience

Senior Managing Director of Integra Realty Resources – Miami/Palm Beach.

Mr. Graziano has actively counseled and advised clients on the sale, leasing, valuation, management, and development of commercial real estate assets throughout the northeast and southeast U.S. since 1992.

Mr. Graziano's professional perspective is a blend of his experience and educational background which includes formal training in architecture, urban planning, macro and micro economics, real estate finance, institutional asset management, and land development. His market experience in sales, leasing, management, and valuation disciplines combine to bring practical real world answers to complex planning and development projects. He has been actively involved as a consultant and/or member of a consultant team on various major redevelopment and land use projects for public and private clients over the past 25+ years.

Mr. Graziano has specialized in consulting and valuation assignments for corporate and private clients on a wide array of complex issues related to estate and condemnation matters, title defects, environmental contamination/damages, air rights, partial and fractional interests, contract disputes, and mediation/arbitration disputes. Mr. Graziano's experience in these matters provides a comprehensive framework for effective strategic real estate consulting.

## Professional Activities & Affiliations

Advisory Board Member: Urban Land Institute (ULI) South Florida / Caribbean
Advisory Board Member: University of Miami M+RED Program
Member: Economic Roundtable - Miami Beacon Council (2012-present)
Board of Director: Integra Realty Resources, Inc. (2011-2016)
Chairman of the Board:    Integra Realty Resources, Inc. (2016-present)
Director: South Florida Chapter of the Appraisal Institute (2014-2016)
Board Member: Builders Association of South Florida (BASF) (2014-2016)
Subject Matter Expert (SME): Appraisal Practice Board, Appraisal Foundation
Member: Appraisal Institute (MAI) (2008-Present)
Member: Counselors of Real Estate (CRE) (2007-Present)
National Association of Realtors (REALTOR)
Miami Association of REALTORS Industry Analyst of the Year (2016)
Former Fellow: Royal Institute of Chartered Surveyors (FRICS) (2007-2014)
AI Leadership Development Advisory Council, March 1998 - February 2001
Lifetime Member: National Eagle Scout Association (NESA)

## Licenses

Florida, State-Certified General Real Estate Appraiser, RZ3510
New Jersey, State-Certified General Real Estate Appraiser, RG001261

## Education

University of Miami, Coral Gables, Florida 1988-1992
Degree: Bachelor of Science in Land Development and Planning, School of Architecture

New York University Real Estate Institute, New York, New York 1993-1996
Degree: Master of Science in Real Estate Development and Investment



amgraziano@irr.com    -    305.670.0001 x320

# Anthony M. Graziano, MAI, CRE

## Qualified Before Courts & Administrative Bodies

Qualified and accepted as an expert before:
US Bankruptcy Court (Newark, Southern District of Texas, Southern District of Florida)
US Federal District Court (Southern District of Florida)
FL Circuit Court (Miami-Dade, Broward, and Monroe Counties)
NJ State Tax Court
NJ Superior Court - Chancery Division
NJ Superior Court - Law Division
Various municipal planning and zoning boards throughout New Jersey and Florida
Various Taxing Authorities and Boards throughout New Jersey and Florida

**Integra Realty Resources**
**Miami/Palm Beach**

The Douglas Centre
2600 Douglas Road, Suite 801
Coral Gables, FL 33134

T 305.670.0001
F 305.670.2276

irr.com



amgraziano@irr.com    -    305.670.0001 x320

**Anthony M. Graziano, MAI, CRE, FRICS**
PROFERRED OR DISCLOSED EXPERT WITNESS REPORTS/SETTLEMENTS

| RETENTION DATE | ON BEHALF | IRR FILE # | COURT CASE NO. | COURT / VENUE | CASE NAME | RETAINED BY | TYPE OF CASE |
|---|---|---|---|---|---|---|---|
| 1/2015 | Defendant | 123-2015-0037 | 14-CV-22384 UU | Miami-Dade County, FL | Ray Benson & Maria Helena V. QBE Insurance Corporation | John A. Camp | Retrospective (2004-2006) analysis of market value claims against insurance company related to property |
| 9/2014 | Defendant | 123-2014-0194 | 13-03084CA 10 | 11th Judicial Circuit Miami-Dade, FL | Manuel Soltero V. Adorno & Yoss, LLP | Kaplan Zeena, LLP | Professional Liability suit against law firm and attorneys for malfeasance in litigation matter. |
| 2/2014 | Plaintiff | 123-2014-0030 | Settled | Carribean Islands | Rainmaker Development V. A&F Bahamas, etal | VLASAC & SHMARUK, LLC | Partnership Dispute between Joint Venture in Carribean development project (golf course, villas, and large-scale marina-commercial-retail development) |
| 11/2012 | Defendant | 123-2012-0140 | 42-2012-CA-001065 | Marion County, FL | CSX Transportation, Inc. V. Moshen Saranazi, Faith Ann Safanazi, Proverbium Hldg, LLC, USA & George Albright | NeJame, La Fay, Jancha, Ahmed, Barker, Joshi & Moreno, P.A. | Condemnation of partial interest with damages |
| 7/2012 | Confidential | 123-2012-0076 | Confidential | Broward County, FL | Ft. Lauderdale-Hollywood Int'l Airport Expansion | White & Case, LLP | Value Diminution Study to assist public agency in good faith negotiations based on airport expansion. |
| 6/2012 | Defendant | 123-2012-0070 | 10-49616-CA-40 | Miami-Dade County, FL | CB Entertainment, LLC V. South Beach Ocean Parcel | Kubicki Draper, P.A. | Construction Damages claim |
| 12/2009 | Plaintiff | 109-2009-0443 | Dept. Justice File 90-11-3-5801 | Federal District Court of Virginia | United States vs. Atlantic Wood Industries, Inc. | U.S. Department of Justice | Damages/environmental contamination dispute between United States Navy and responsible party (Atlantic Wood Industries) |

M. Quals: Graziano: Trial Lists



**Anthony M. Graziano, MAI, CRE, FRICS**
IDENTIFIED EXPERT WITNESS TESTIMONY AT DEPOSITION and/or TRIAL

| RETENTION DATE | ON BEHALF | TRI FILE # | COURT/CASE NO. # | CASE NAME | COURT / VENUE | RETAINED BY | TYPE OF CASE |
|---|---|---|---|---|---|---|---|
| 6/2015 | Plaintiff | 123-2015-0170 | 15-008930-CA-01 | Aaron Stauber & Aviva Stauber V. BH 33, LLC | 11th Judicial Circuit Dade County, Florida (Hon. Peter R. Lopez) | Piedra & Associates, P.A. | Motion to dismiss Lis Pendens in an action to enforce contractual specific performance clause |
| 1/2015 | Defendant | 123-2015-0037 | 14-CV-22364 UU | Ray Benson & Maria Helena Campos V. QBE Insurance Corporation | Southern District of Florida | John Campos | Retrospective (2004-2008) analysis of market value claims against insurance company related to property damage claims arising from Hurricane Wilma |
| 1/2014 | Plaintiff | 123-2015-0031 | Pending | Igor Gel V. Yacht Club at Portofino Condo Association | Miami-Dade County | Weil Quaranta McGovern, P.A. | Construction defect dispute related to water-intrusion and damage-detrimental conditions analysis of |
| 10/2014 | Plaintiff | 123-2014-0226 | 08-CA-408-P | Ocean Bank V. Lindsack, Monroe County | Monroe County | Ocean Bank | Deficiency claim against borrower on real estate collateral in the Florida Keys (development site plus marine related improvements) |
| 10/2014 | Defendant | 123-2014-0215 | 11-24994 CA 04 | Palm-Aire Holdings V. JRGS Investments, LLC, Jorge Garcia-Saroff and Course Drive Investments, LLC | 11th Judicial Circuit Dade County, Florida | Cole, Scott & Kissane, P.A. | Partnership dispute over valuation issues proximal to a fractured condominium project (retrospective values), and operating agreement dispute |
| 7/2014 | Plaintiff | 123-2014-0194 | 13-010822 CACE 02 | Amalia I. Irianda-Rivera V. Rivero Diagnostic Center, Inc., Obray Rivero & Yudit Rivero | 17th Judicial Circuit Broward County, Florida | Amalia I. Irianda-Rivera | Rent default judgment and market rental and damage analysis associated with lease default. |
| 10/2014 | Defendant | 123-2014-0159 | 2014FLS34 (Pending) | Roehm Title Resources Claim | 17th Judicial Circuit Broward County, Florida | Title Resources Guaranty Company | Title insurance claim related to before and after damage/value diminution analysis based on defined title defects not identified by Title Insurance Company |
| 4/2014 | Plaintiff | 123-2014-0117 | 4:14-CV-01077 (Pending) | USA V. GSA-VA St. Louis Property, LLC | USA District Court for the Eastern District of Missouri Eastern Division | Bryan Cave LLP | Condemnation of a possessory interest for a term. Retained as consulting/rebuttal expert |
| 5/2014 | Defendant | 123-2014-0114 | Pending | Euforia Club | Miami-Dade County | Rennert Bogert Mandler & Rodriguez, P.A. | Rent dispute regarding forced relocation of a nightclub, and relevant market rent/values of replacement club space in Miami |
| 4/2014 | Plaintiff | 123-2014-0089 | | Pan American Holdings Corp. V. Florida DOT Right of Way (ROW) Acquisition S.R.7 | Broward County | Henry Wulf, Esq. | Condemnation for R.O.W. purposes including before and after damage analysis |
| 1/2014 | Debtor | 123-2014-005 | 13-25728-BKC-RAM | West Airport Plaza Business Park, LLC | US Federal Bankruptcy - Southern District of Florida - Miami Division (Hon. R. Mark) | Counsel for the Debtor, Michael D. Seese, Esq. | Fairness Opinion and market value opinion in conjunction with Debtor's Plan for Reorganization |
| 8/2013 | Defendant | 123-2000-0016 | 02-23922-CA 09 | American Educational Enterprises LLC v. The Board of Trustees of the Internal Improvement Trust Fund | 17th Judicial Circuit Dade County, Florida | Richard Alayon, Esq. - Alayon and Associates | Economic Damages case associated with an alleged misrepresentation or omission by seller of real property. |
| 7/2013 | Plaintiff | 123-2013-0126 | CACE 08657624 (14) | Bayview Loan Servicing, LLC v. Kayhan Soodjani; Muhammad Mahmoodi, et al | 17th Judicial Circuit Broward County, Florida (Hon. Carlos A. Rodriguez) | Bayview Servicing, represented by Tabass, Freedman and Soloff; Stacey Soloff, Esq. | Deficiency Judgment on multi-family project (Dewey Street Apartments) |
| 3/2013 | Defendant | 123-2013-0105 | 11-23561-CIV - Rosenbaum | United States of America v. G.K.K. etal | US District Court - Southern District of Florida (Hon. Rosenbaum) | Richard Duvall, Holland and Knight and Jeffrey Neiman, Esq. | Condemnation claim on the 137,779 s.f. Miami Federal Bureau of Investigation (F.B.I.) building; condemnation of a possessory interest (leasehold) |
| 2/2013 | Defendant | 123-2011-0670 | 09-05650 CA 04 | Zenaida Gomez v. City of Pinecrest | 11th Judicial Circuit Dade County, Florida (Hon. Beth Bloom) | Cynthia A. Everett, Cynthia A. Everett, P.A. | Economic damage resulting from temporary taking (seizure) of private residence |
| 7/2013 | Plaintiff | 123-2012-0016 | 12-60950-CIV | Q Lending, Inc., Equity Financial Group, Inc., and Equity Commercial Group, Inc. v. Travelers Companies, Inc. etal | US Federal Court - Southern District of Florida | Heidi Raschke, Butler Pappas etal | Value diminution resulting from alleged mortgage fraud. |
| 11/2012 | Plaintiff | 123-2012-0129 | Pending | 2011 and 2012 Ad Valorem Tax Protest | 11th Judicial Circuit Dade County, Florida | Ken Wurtenberger, Esq. Kozelowski Osbome Fergusson | Tax protest of commercial condominium. |
| 10/19/2012 | Defendant | 123-2012-0111 | 2011-1107 CA-23 | Renegade at Hialeah Blvd v. Dynatech Engineering | 11th Judicial Circuit Dade County, Florida (Hon. Stanford Blake) | Daniel Levin, Esq., Cole, Scott, Kissane, P.A. | Economic Damages case, diminution in value resulting from prepaid lease modification. |
| 10/12/2012 | Defendant | 123-2012-0109 | 11-30189 CA21 | Yaffa Yakubov vs. Bayview at Fisher Island No 3 | 11th Judicial Circuit Dade County, Florida | Craig Minko, Esq., Cole Scott Kissane, P.A. | Market Value estimate of Fisher Island Condominium purchased under right of first refusal; economic damages claimed by Plaintiff due to contract dispute arising from association's exercise of right of first refusal |
| 8/20/2012 | Plaintiff | 123-2010-0012 | CA-CZ180 CA-25 | 7935 NBV, LLC v. Harbour East Development LTD, Mario Egoz, etal | 11th Judicial Circuit Dade County, Florida | Jose Casal, Esq., Holland and Knight | Deficiency Judgment on 32-unit fractured condominium, substitute expert following issuance of IRR-Miami reports in 2010 and 2012. |
| 8/15/2012 | Disclosed Dual Expert | 123-2012-0072 | | Vazquez v. Vazquez Matrimonial Matter | Matrimonial Mediation | Colon and Mendoza and Robert Hertzberg, P.A. | Retained as a court-appointed third party expert to both parties to appraise (2) marital assets comprised of office, retail, single and multi-family units in FL, TN, NC, and Illinois, Bahama |
| 7/2012 | Plaintiff | 109-2011-0199 | | BASF Inc, successor Ciba Geigy Inc, vs. Township of Toms River | Tax Court of New Jersey (Hon. Patrick DeKlemeida) | Phil Geruario, Garippa, etal on behalf of BASF | Challenge to multi-year appeal of $80 Million+ land assessment on contaminated superfund site in Central New Jersey |
| 3/2012 | Plaintiff | 109-2010-0172 | ATL-L-4451-08 | Scot Netherlands Inc. vs. State of New Jersey Department of Environmental Protection (NJDEP) | Superior Court of New Jersey, Law Division Atlantic County | Jay Rhatican, Connell Foley on behalf of Scot Netherlands, Inc. | Challenge to NJDEP permit denial to wetlands, deprivation of all reasonable investment backed expectations |
| 7/2011 | Defendant | 109-2010-0199 | MER-L-3034-08 | 460 Mercer Street, LLP and Brueckner Southern, LLC vs. Hightstown | Superior Court of New Jersey Mercer County | Arevii Zarro Grimm & Aaron, P.C. Husam Chater | Litigation-Dispute Resolution - Hightstown Zoning Challenge |
| 12/2009 | Plaintiff | 109-2009-0443 | Dept. Justice File 90-11-3-5801 | United States v. Atlantic Wood Industries, Inc. | Federal District Court of Virginia | U.S. Department of Justice | Damages/environmental contamination dispute between United States Navy and responsible party (Atlantic Wood Industries) |
| 12/2009 | Plaintiff | 109-2009-0377 | | Westrust/HPC Mortgage Fund vs. City of Atlantic City | Tax Court of New Jersey | Cole, Schotz, Meisel, Forman & Leonard, P.A. Carl Rizzo, Esq. | Tax Appeals - To develop an opinion of the market value of the fee simple interest in the property |

## Anthony M. Graziano, MAI, CRE, FRICS
### IDENTIFIED EXPERT WITNESS TESTIMONY AT DEPOSITION and/or TRIAL

| RETENTION DATE | ON BEHALF | IRR FILE # | COURT CASE NO | CASE NAME | COURT / VENUE | RETAINED BY | TYPE OF CASE |
|---|---|---|---|---|---|---|---|
| 1/1/2009 | Secured Creditor | 109-2009-0439 | 3035-601 | Erickson Building | US Bankruptcy Court - Southern District of Texas | Stuart Glick, Esq., Sills, Cummis & Gross | Market Value for Bankruptcy of 140,000 SF corporate campus in Bethesda, Maryland |
| 9/2009 | Plaintiff | 109-2009-0123 | | Bay Head Yacht Club vs. Ocean County Tax Board | Tax Court of New Jersey | John Doyle, Carluccio, Leone, Dimon, Doyle & Sacks, LLC | Tax Appeal for Bay Head Yacht Club |
| 12/2008 | Plaintiff | 109-2008-XXX | INA (DEFS Pending) | Mirage Atlantic City (MAC) vs. City of Atlantic City | Tax Court of New Jersey | Hank Rovitzari, Esq. | Tax Appeal at State Tax Court on 15 acre casino site adjacent to Trump Marina |
| 8/2008 | Defendant | 109-2008-0252 | L-2424-05 | The City of South Amboy vs. Lower Main Street Development, LLC & Amboy Aggregates Joint Venture | Superior Court of New Jersey Law Division, Middlesex County | Bathgate, Wegenar, etal | Verified complaint in condemnation |
| 6/2008 | Defendant | 109-2008-345 | C.A. No. OCNL-3361-06 | Osbourne Associates, Melbourne Associates VI, LLC, Kingsway Realty Profit Share vs. Citta Enterprises Co, JAC Property Management etal and Eckerd Corporation | Superior Court of New Jersey, Law Division Ocean County | Francis X. Manning, Esq, Stradley Ronon Stevens & Young & Michael Canniol, Esq, Partridge Snow and Hahn, both on behalf of | Dispute re: proper valuation of leasehold and sub-lessee's sandwich leasehold interest on damage claim for breach of agreement claim |
| 1/2008 | Defendant | 109-2008-0125- | N/A | Toms River Township vs. Citta Geigy Corporation | American Arbitration Association [testimony at Arbitration conducted by Hon. Eugene Serpentelli] | Mark Troncone, Esq., In-house Counsel to Township of Toms River | Arbitration of environmental damages claim, and counter-claim of appropriateness of zoning on 1,900 acre superfund site. |
| 11/2007 | Defendant | 109-2007-211 | L-008635-06 | Kyle Mosteller vs. Gaila Neeman | Superior Court of New Jersey, Law Division Middlesex County | Frank Canuso, Esq, Hoagland, Longo, Moran and Dunst | Damage claim due to loss of trees and screening between urban properties |
| 6/2007 | Plaintiff | 109-2007-0134 | 3:07-CV-2322 | Silver Lakes Inc. vs. Township of Freehold Inc. | Superior Court of New Jersey, Chancery Division Monmouth County | Christopher Hanlon, Esq, Hanlon and Niemann | Challenge to validity of Rent Control Ordinance as transfer of property rights from Lessor to Lessee. |
| 6/2007 | Plaintiff | 109-2007-0173 | | Laurelwood Homes, LLC vs. United States Department of Navy | Federal District Court of Virginia | William A. Shook Esq. | Leasehold interest in the property; breach of lease claim on behalf of leasehold owner (Laurelwood) claiming breach of lease and damages |
| 12/2006 | Defendant | 109-2006-0192 | CAM - L - 9731-05 | Brandywine Operating Partnership, LP vs. UFCW Local 56 | Superior Court of New Jersey, Law Division Camden County | Brett Last, Esq, O'Brien, Belland and Bushinsky | Estimate the value of damages to landlord on breach of above-market lease |
| 8/2006 | Defendant | 109-2006-0257 | | County Line & Browers Bridge, Jackson Township | | Levin, Shea, Pfeffer, PA Steven Pfeffer | To develop an opinion of the hypothetical market value of the fee simple interest in the property |
| 2/2006 | Defendant | 109-2006-0044 | OCN-L-2482-04 | Carl Brooks vs. K. Hovanian | Ocean Superior Court, Ocean County Courthouse | Ronan, Tuzzio & Giannone, Linda Olsen | To estimate value diminution in the subject property as a result of various issues asserted by the property owner in conjunction with pending litigation between the property owner and the subject developer K. Hovnanian @ Sea Oaks |
| 10/2005 | Defendant | 109-2005-0315 | OCNL-1810-5 | Atlantic City Electric Company d/b/a Conectiv Power Delivery, a regulated public utility of the state of New Jersey vs. AC1 Manahawkin, LLC family and/or Armstrong | Superior Court of New Jersey, Law Division Ocean County | Flaster/Greenberg, PC, David R. Oberlander, Esq. | Compensation for the taking of an easement for construction and maintenance of a 230kv transmission line and towers by Atlantic City Electric |
| 9/2005 | Defendant | 109-2005-0214 | MON-L-2609-05 | Township of Howell vs. George Harms Construction Co., Inc. etal | Superior Court of New Jersey Law Division: Monmouth County | Connell & Foley, LLP Kevin Coakley, Esq. | To develop an opinion of the market value of the fee simple estate of the property |
| 8/2003 | Defendant | 109-2005-0282 | | Giuffre vs. Giuffre | Superior Court of New Jersey Chancery Division, Family Part, Monmouth County | Louis & Wolf - Frank A. Louis | To develop an opinion of the market value of the Fee Simple estate of the properties for purposes of equitable distribution of marital assets |
| 7/2003 | Defendant | 109-2003-0203 | OCN-C-78-03 | West, etal vs. Pompano, etal | Superior Court of New Jersey, Chancery Division, Ocean County | Stephen E. Smith, Esq | To develop an opinion of the diminution in value due to a loss of useable land area |
| 6/2003 | Plaintiff | 109-2003-0200 | OCN-C-316-02 | Eugene M. Lord vs. Donald W. Rinaldo | Superior Court of New Jersey Law Division, Ocean County | Lombardi & Lombardi, Scott Telson | To develop an opinion of the market value of the fee simple estate of the property |
| 6/2003 | Plaintiff | 109-2003-0101 | FM-15-468-03-C | Vincent Urbank vs. Lisa Urbank | Superior Court of New Jersey, Chancery Division, Family Part Ocean County | Marianna Pontorero, Esq. | Litigation-Matrimonial |
| 4/2003 | Plaintiff | 109-2003-0128 | FM-15-1485-94 | Shenandoah Mobile Home Park | | Winokis Marx Lane & Mittendorf, LLP - William Cagney | Inverse Condemnation - Rent Control Ordinance |
| 2/2002 | Claimant | 109-2002-0055 | NJ-2624-00 | DeForest John Ely and Kimberle A. Ely, h/w | | First American Title Insurance Co Jack Milks | To derive an opinion of the fair compensation of the fee simple estate, subject to the temporary title encumbrance |
| 3/1999 | Secured Creditors | 109-1999-0062 | | Georgetown Apartments | US Bankruptcy Court - District of Newark | Emmes & Co., Andrew Schwarz | To estimate the market value of the Leased Fee Estate of the property, inclusive of 28 Apartment complexes through NY, NJ, PA, and MD. |
| 12/1997 | Defendant | LKW-257-3186 | | Lisa Franklin, etal vs. Donald Franklin, etal | Superior Court of New Jersey, Chancery Division, Family Part, Ocean County | Greenbaum, Rowe, Smith, Ravin, Davis & Himmel LLP Robert S. Underhill | Estimating the market value of the leased fee interest |
| 8/1984 | Creditor | HUD-XX | | Hudson Marina Association vs. Emmes & Co. | US Bankruptcy Court - District of Newark | | Bankruptcy Reorganization of 200+ slip failed marina/dockominium complex |



# EXHIBIT F14

**Integra Realty Resources**
Miami/Palm Beach

**Appraisal Report & Post-Remediation Damage Related to Chinese Drywall**

**Gody, Anthony T. & Candace D.**
Hypothetical Market Value "As If" Remediated
10842 Tiberio Dr.
Fort Myers , Lee County, Florida 33913
Client Reference: 13

**Prepared For:**
Colson Hicks Eidson

**Effective Date of the Appraisal:**
January 1, 2019

**Report Format:**
Appraisal Report

**IRR - Miami/Palm Beach**
File Number: 123-2018-0275





**Gody, Anthony T. & Candace D.**
10842 Tiberio Dr.
Fort Myers , Florida



Integra Realty Resources
Miami
Orlando
Southwest Florida

www.irr.com

In Miami
Dadeland Centre
9155 South Dadeland Blvd.
Suite 1208
Miami, FL 33156
(305) 670-0001

In Orlando
The Magnolia Building
326 N. Magnolia Ave.

Orlando, FL 32801
(407) 843-3377

In Naples/Sarasota
Horseshoe Professional Park
2770 Horseshoe Drive S.
Suite 3
Naples, FL 34104
(239)-643-6888

January 28, 2019

Patrick S. Montoya
Partner
Colson Hicks Eidson
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134

SUBJECT:    Hypothetical Market Value "As If" Remediated
Case No 11-22408-Civ-COOKE
United States District Court Southern District of Florida in the matter of
Eduardo and Carmen Amorin, et al. individually and on behalf of others situated
similarly v. Taishan Gypsum Co., LTD., f/k/a Shandong Taiche Dongxin Co. Ltd., et al
Priority Claimant Case at:
Gody, Anthony T. & Candace D.
10842 Tiberio Dr.
Fort Myers , Lee County, Florida 33913
Client Reference: 13
IRR - Miami/Palm Beach File No. 123-2018-0275

Dear Mr. Montoya:

Integra Realty Resources – Miami/Palm Beach submits the following damage estimate in the referenced property as of the effective date assuming all remediation was completed by an appropriate contractor with experience and credentials in remediating defective drywall.

The report is intended to comply the Uniform Standards of Professional Appraisal Practice (USPAP). It presents summary discussions of the data, reasoning, and analysis that were used in the appraisal process to develop the opinions. Additional information is contained within our workfile.

The findings will form the basis of expert witness testimony in the above referenced case.

Case 2:09-md-02047-EEF-MBN Document 22363-60 Filed 11/18/19 Page 60 of 110
Case 1:11-cv-22408-MGC Document 281-14 Entered on FLSD Docket 05/13/2019 Page 5 of 55

Identification of Subject                                                                   2

## Identification of Subject

The subject of this report is a single-family ranch style home configured with 3 bedroom and 2.5 baths with 2,246 SF under air-conditioning.  The subject property was built in 2006 and is located on a 8,800 SF site.

## Purpose of the Appraisal

The purpose of the appraisal is to develop an opinion of the diminution in value and related damages, collectively "the damages" as of the effective date of the appraisal, January 1, 2019. The damage estimate assumes the defective drywall remediation was completed and does not consider the cost to cure. The date of the report is January 28, 2019. The appraisal is valid only as of the stated effective date or dates.

## Intended Use and User

The intended use of the appraisal is for litigation purposes. The client, Colson Hicks Eidson and related co-counsel, Plaintiff and the Court are the intended users.  Integra Realty Resources – Miami/Palm Beach is not responsible for unauthorized use of this report.

## Most Recent Sale History

The most recent closed sale of the subject is summarized as follows:

| Most Recent Subject Sale (Closed) | |
| --- | --- |
| Sale Date (Most Recent) | April 19, 2007 |
| Seller | Bay Colony-Gateway Inc. |
| Buyer | Gody, Anthony T. & Candace D. |
| Sale Price | $479,500 |
| Recording Instrument Number | 2007000131090 |
| Disposition Details | Original sale from homebuilder |

To the best of our knowledge, no other sale or transfer of ownership has taken place within a three-year period prior to the effective appraisal date.  The original property owner remains in possession and has reportedly completed a "partial remediation".

## Pending Transactions

To the best of our knowledge, the property is not subject to an agreement of sale or an option to buy, nor is it listed for sale, as of the effective appraisal date.

## Definition of Market Value

The following definition of market value is used by agencies that regulate federally insured financial institutions in the United States:

"The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and

Gody, Anthony T. & Candace D.



Case 2:09-md-02047-EEF-MBN Document 22363-60 Filed 11/18/19 Page 61 of 110
Case 1:11-cv-22408-MGC Document 281-14 Entered on FLSD Docket 05/13/2019 Page 6 of 55

Definition of Retrospective Value Opinion                                                    3

assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:

- Buyer and seller are typically motivated;

- Both parties are well informed or well advised, and acting in what they consider their own best interests;

- A reasonable time is allowed for exposure in the open market;

- Payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and

- The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale."

*(12 C.F.R. Part 34.42(g); 55 Federal Register 54696, August 24, 1990, as amended at 57 Federal Register 12202, April 9, 1992, 59 Federal Register 29499, June 7, 1994)*

## Definition of Retrospective Value Opinion

A value opinion effective as of a specified historical date. The term retrospective does not define a type of value. Instead, it identifies a value opinion as being effective at some specific prior date. Value as of a historical date is frequently sought in connection with property tax appeals, damage models, lease renegotiation, deficiency judgements, estate tax, and condemnation. Inclusion of the type of value with this term is appropriate, e.g. "retrospective market value opinion".

*(Source: The Dictionary of Real Estate Appraisal – 6th Edition; Appraisal Institute, 200 W. Madison, Suite 1500, Chicago, IL 60606, www.appraisalinstitute.org)*

## Definition of Hypothetical Condition

1. A condition that is presumed to be true when it is known to be false. (SVP)

2. A condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis. Comment: Hypothetical conditions are contrary to known facts about physical, legal, or economic characteristics of the subject property; or about conditions external to the property, such as market conditions or trends; or about the integrity of date used in an analysis. (USPAP, 2016-2017 ed.)

*(Source: The Dictionary of Real Estate Appraisal – 6th Edition; Appraisal Institute, 200 W. Madison, Suite 1500, Chicago, IL 60606, www.appraisalinstitute.org)*

## Scope of Work

Integra was retained as an expert in the captioned matter of this report to address potential damages related to the subject property, specifically excluding the costs to cure.

Integra was retained to estimate any post remediation damages, and conducted a separate study to determine whether damages persist following defective drywall remediation. The result of that study



Case 2:09-md-02047-EEF-MBN Document 22363-60 Filed 11/18/19 Page 62 of 110
Case 1:11-cv-22408-MGC Document 281-14 Entered on FLSD Docket 05/13/2013 Page 7 of 55

Scope of Work                                                                                                        4

are outlined within Integra's report entitled "Market Analysis of the Post Remediation Impact of Chinese Drywall on Residential Property Values in Florida." The results of that study are incorporated by reference herein.

In addition, our damage model was requested to include a rental value analysis of the Priority Claimant residence, and a determination of the relevant economic damage associated with having to vacate the home for a period of time (and secure alternate living arrangements) during the remediation. As of the effective date, the claimant would have suffered the damages.

Integra established individual case files on each Priority Claimant residence, and retained professional assistance from qualified residential appraisers in each jurisdiction. Integra managed the process of these retrospective appraisals, interfaced with the residential appraisers, and reviewed the form appraisals completed on each assignment including review of the comparables, adjustments, and form narrative to establish the market value of the residence unimpaired as of the effective date.

Integra professionals reviewed various materials exchanged as part of this case and considered materials that were relevant to the market valuation. These materials were downloaded from the attorney's dropbox and are retained within our workfile.

Integra's participation in and review of the final appraised values results in a conclusion of the market value of the home defined as "Hypothetical Market Value" assuming defective drywall had never been identified within the subject property. This forms the basis of the unimpaired market value as of the effective date.

All properties and comparables were inspected by the local residential appraisers without the benefit of interior inspections. Adjustments for condition and age at the time of sale are based upon photographs contained within the various MLS databases, paired analysis from amongst the comparables, and for the subject, were based on photos, if available. In the event a property had not been remediated as of the effective date, we assume average condition for the property in the market as of the effective date.

The damage analysis expressed within this report follows the peer teachings and market accepted processes for damage analysis. However, the damage analysis only represents a <u>portion of the overall damages</u> because we were specifically requested to exclude the consideration of the costs to cure. This represents a relevant component of damage in this case for property that factually have not been remediated.

Integra's role was strictly to identify post remediation value damage (sometime referred to a "stigma") and estimate the relevant rental value and moving costs as a proxy for the temporary loss of use during remediation.

## Significant Appraisal Assistance

In addition to Anthony M. Graziano, MAI ,CRE, principal, it is acknowledged that Peter G. Kayworth, Yuliya Georgieva, Joseph Melloni and Paul L. Jones of IRR-Miami/Palm Beach were involved in the assignment consisting of conducting research on the subject and transactions involving comparable



Case 2:09-md-02047-EEF-MBN Document 22363-60 Filed 11/18/19 Page 63 of 110
Case 1:11-cv-22408-MGC Document 281-14 Entered on FLSD Docket 05/13/2019 Page 8 of 55

Highest and Best Use                                                                                   5

properties, performing appraisal analyses and assisting in report writing, under the supervision of the persons signing the report. The local residential appraisers are also named as providing significant assistance, including exterior inspection of the properties and comparables, application of their local knowledge in adjusting and estimating the unimpaired value, and developing the form report valuations incorporated herein.

## Prior Services

USPAP requires appraisers to disclose to the client any other services they have provided in connection with the subject property in the prior three years, including valuation, consulting, property management, brokerage, or any other services. We have not performed any services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

## Valuation Methodology

Appraisers usually consider the use of three approaches to value when developing a market value opinion for real property. These are the cost approach, sales comparison approach, and income capitalization approach. The valuations consider the only relevant approach for residential valuation, the sales comparison analysis. The cost and income approach are not considered relevant.

The sales comparison approach is the most applicable valuation method since there is an active market for similar properties, and sufficient sales data is available for analysis. Additionally, this approach directly considered the prices of alternative properties having similar utility.

### Highest and Best Use

The highest and best use of the subject as if vacant for development of a single-family home which is physically possible, legally permissible as per zoning, financially feasible and maximally productive.

The highest and best use of the subject as improved is for continued use as a single-family home with no other use that could reasonably be expected to provide a higher value to the land as if vacant. The improvements contribute to the over all value to a greater extent than the land value alone, and therefore, continued use as improved concluded to be maximally productive and the highest and best use of the property.

### Conclusion of Value

The Hypothetical market value appraisal as of the effective date, reflective of a traditional form appraisal, is contained within the Addenda of this report. This value us hypothetical since it assumes that defective drywall had never been present at the subject property.

Against this value, we then apply the Post Impairment Discount as a percentage of unimpaired value as developed within the Integra report studying this issue. This represents a compensable damage resulting from the prior existence of defective drywall in the home as of the effective date.

In addition, each appraisal (unimpaired) reflects a rental value analysis as of the effective date. This rental value analysis concludes to the equivalent market rent for the home (unimpaired) and reflects a



Case 2:09-md-02047-EEF-MBN Document 22363-60 Filed 11/19/19 Page 64 of 110
Case 1:11-cv-22408-MGC Document 281-14 Entered on FLSD Docket 05/13/2019 Page 9 of 55

Conclusion of Value                                                                                         6

proxy for the probable actual costs the homeowner would experience by having to move-out of the primary residence during remediation.

The homeowner would also have to incur moving /storage costs twice, once before and once after remediation.  Professional packing, moving and storage for an average home is estimated at $1,500 per move, or $3,000 in total.  This amount is added to the loss of use estimate as an additional damage.

This loss of use calculation does not consider the costs of alternative housing or other tangible costs potentially incurred for damages suffered between the date of discovery and the date of value.  These damages, if applicable, are being estimated by a separate expert (Elkins et al). To the extent Elkins posits costs which are duplicative or actual costs that are greater or less, some minor adjustments to Integra's damage model may be required.

The timeframe for remediation (months of actual loss) could vary depending upon the permitting process in the specific community, the availability of labor, and the size of the home.  Integra reviewed a number of transactions that were remediated by investors and found the typical timeframe between purchase of an unremediated home and listing[1] of the home post-remediation to be 3-6 months.

Larger more expansive homes would be expected to take longer to remediate since more materials are required, and in higher-priced homes, supplies would typically be custom-ordered.  Therefore, we apply the following timeframes based on the subject's size and price range:

< $150,000 Home up to 2,000+/- SF                    4 months

$150,000 - $750,000 home up to 4,000 SF              6 months

$750,000+ home up over 4,000 SF                      9 months

---

[1] The "listing date" is most relevant since a homeowner conducting their own remediation can move back in once the home is ready for sale (ie- coinciding with a final certificate of occupancy).

Gody, Anthony T. & Candace D.



The following shows our final estimate of damages as of the effective date, and assuming costs to cure (i.e. – to conduct the remediation) have been expended.

| Conclusions of Damage | | | |
|---|---|---|---|
| Hypothetical Value (Unimpaired - Before) | | $381,000 | |
| Market Impairment Discount (As if Remediated) | | 10% | |
| Post Impairment Damage ($) | | $38,100 | |
| **Hypothetical Value As IF Remediated** | | | **$342,900** |
| Post Remediation Damages as of Effective Date | | | **$38,100** |
| Loss of Use: | | | |
| Rental Rate ($/Month) | **$2,000** | | |
| Moving & Storage Costs | | $3,000 | |
| Loss of Use Subject (# Months) | 6x | $12,000 | |
| Subject Total | | | **$15,000** |
| **Post Remediation Damage** | | | **$53,100** |

Note: Does not consider "cost to cure". Assumes remediation was completed by qualified contractor who warranties the work.

The original owner has reportedly completed a "partial remediation". To restore the value to $342,900 as above, additional costs to cure likely apply. These costs are being handled separately by a court master.

Gody, Anthony T. & Candace D.



Case 2:09-md-02047-EEF-MBN Document 22363-60 Filed 11/19/19 Page 66 of 110
Case 1:11-cv-22408-MGC Document 201-44 Entered on FLSD Docket 05/13/2019 Page 11 of 55

Certification                                                                                    8

## Certification

We certify that, to the best of our knowledge and belief:

1.  The statements of fact contained in this report are true and correct.

2.  The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are our personal, impartial, and unbiased professional analyses, opinions, and conclusions.

3.  We have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.

4.  We have not performed any services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

5.  We have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

6.  Our engagement in this assignment was not contingent upon developing or reporting predetermined results.

7.  Our compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

8.  Our analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice as well as applicable state appraisal regulations.

9.  The reported analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute.

10. The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

11. Anthony M. Graziano, MAI, CRE did not make a personal inspection of the property that is the subject of this report. Sarah D. Wilson has personally inspected the subject.

12. Significant real property appraisal assistance was provided by Peter G. Kayworth, Yuliya Georgieva, Joseph Melloni and Paul L. Jones. Additionally, real estate assistance was provided by various Valucentric employees and subcontractors, including: John Barcelo, Angela Barcelo, Fred Stites, Carlos Fong, Sarah D. Wilson and Rob Baird.

13. We have experience in appraising properties similar to the subject and are in compliance with the Competency Rule of USPAP.

14. As of the date of this report, Anthony M. Graziano, MAI, CRE, has completed the continuing education program for Designated Members of the Appraisal Institute.

Anthony M. Graziano, MAI, CRE
Senior Managing Director - Miami
State-Certified General RE Appraiser
FL Certificate # RZ#3510

Case 2:09-md-02047-EEF-MBN Document 22363-60 Filed 11/18/19 Page 67 of 110
Case 1:11-cv-22408-MGC Document 201-44 Entered on FLSD Docket 05/13/2019 Page 12 of 55

Assumptions and Limiting Conditions                                                          9

## Assumptions and Limiting Conditions

This appraisal and any other work product related to this engagement are limited by the following standard assumptions, <u>except as otherwise noted in the report</u>:

1.  The title is marketable and free and clear of all liens, encumbrances, encroachments, easements and restrictions. The property is under responsible ownership and competent management and is available for its highest and best use.

2.  There are no existing judgments or pending or threatened litigation that could affect the value of the property.

3.  There are no hidden or undisclosed conditions of the land or of the improvements that would render the property more or less valuable. Furthermore, there is no asbestos in the property.

4.  The revenue stamps placed on any deed referenced herein to indicate the sale price are in correct relation to the actual dollar amount of the transaction.

5.  The property is in compliance with all applicable building, environmental, zoning, and other federal, state and local laws, regulations and codes.

6.  The information furnished by others is believed to be reliable, but no warranty is given for its accuracy.

This appraisal and any other work product related to this engagement are subject to the following limiting conditions, except as otherwise noted in the report:

1.  An appraisal is inherently subjective and represents our opinion as to the value of the property appraised.

2.  The conclusions stated in our appraisal apply only as of the effective date of the appraisal, and no representation is made as to the effect of subsequent events.

3.  No changes in any federal, state or local laws, regulations or codes (including, without limitation, the Internal Revenue Code) are anticipated.

4.  No environmental impact studies were either requested or made in conjunction with this appraisal, and we reserve the right to revise or rescind any of the value opinions based upon any subsequent environmental impact studies. If any environmental impact statement is required by law, the appraisal assumes that such statement will be favorable and will be approved by the appropriate regulatory bodies.

5.  Unless otherwise agreed to in writing, we are not required to give testimony, respond to any subpoena or attend any court, governmental or other hearing with reference to the property without compensation relative to such additional employment.

6.  We have made no survey of the property and assume no responsibility in connection with such matters. Any sketch or survey of the property included in this report is for illustrative purposes only and should not be considered to be scaled accurately for size. The appraisal covers the property as described in this report, and the areas and dimensions set forth are assumed to be correct.



Case 2:09-md-02047-EEF-MBN Document 22363-60 Filed 11/18/19 Page 68 of 110
Case 1:11-cv-22408-MGC Document 201-14 Entered on FLSD Docket 05/13/2019 Page 13 of 55

Assumptions and Limiting Conditions                                    10

7. No opinion is expressed as to the value of subsurface oil, gas or mineral rights, if any, and we have assumed that the property is not subject to surface entry for the exploration or removal of such materials, unless otherwise noted in our appraisal.

8. We accept no responsibility for considerations requiring expertise in other fields. Such considerations include, but are not limited to, legal descriptions and other legal matters such as legal title, geologic considerations such as soils and seismic stability; and civil, mechanical, electrical, structural and other engineering and environmental matters. Such considerations may also include determinations of compliance with zoning and other federal, state, and local laws, regulations and codes.

9. The distribution of the total valuation in the report between land and improvements applies only under the reported highest and best use of the property. The allocations of value for land and improvements must not be used in conjunction with any other appraisal and are invalid if so used. The appraisal report shall be considered only in its entirety. No part of the appraisal report shall be utilized separately or out of context.

10. Neither all nor any part of the contents of this report (especially any conclusions as to value, the identity of the appraisers, or any reference to the Appraisal Institute) shall be disseminated through advertising media, public relations media, news media or any other means of communication (including without limitation prospectuses, private offering memoranda and other offering material provided to prospective investors) without the prior written consent of the persons signing the report.

11. Information, estimates and opinions contained in the report and obtained from third-party sources are assumed to be reliable and have not been independently verified.

12. Any income and expense estimates contained in the appraisal report are used only for the purpose of estimating value and do not constitute predictions of future operating results.

13. If the property is subject to one or more leases, any estimate of residual value contained in the appraisal may be particularly affected by significant changes in the condition of the economy, of the real estate industry, or of the appraised property at the time these leases expire or otherwise terminate.

14. Unless otherwise stated in the report, no consideration has been given to personal property located on the premises or to the cost of moving or relocating such personal property; only the real property has been considered.

15. The current purchasing power of the dollar is the basis for the values stated in the appraisal; we have assumed that no extreme fluctuations in economic cycles will occur.

16. The values found herein are subject to these and to any other assumptions or conditions set forth in the body of this report but which may have been omitted from this list of Assumptions and Limiting Conditions.

17. The analyses contained in the report necessarily incorporate numerous estimates and assumptions regarding property performance, general and local business and economic conditions, the absence of material changes in the competitive environment and other matters. Some estimates or assumptions, however, inevitably will not materialize, and unanticipated events and circumstances may occur; therefore, actual results achieved during



Case 2:09-md-02047-EEF-MBN Document 22363-60 Filed 11/18/19 Page 69 of 110
Case 1:11-cv-22408-MGC Document 201-14 Entered on FLSD Docket 05/13/2019 Page 14 of 55

Assumptions and Limiting Conditions                                                                11

the period covered by our analysis will vary from our estimates, and the variations may be
material.

18.   The Americans with Disabilities Act (ADA) became effective January 26, 1992. We have not
made a specific survey or analysis of the property to determine whether the physical aspects
of the improvements meet the ADA accessibility guidelines. We claim no expertise in ADA
issues, and render no opinion regarding compliance of the subject with ADA regulations.
Inasmuch as compliance matches each owner's financial ability with the cost to cure the non-
conforming physical characteristics of a property, a specific study of both the owner's financial
ability and the cost to cure any deficiencies would be needed for the Department of Justice to
determine compliance.

19.   The appraisal report is prepared for the exclusive benefit of the Client, its subsidiaries and/or
affiliates. It may not be used or relied upon by any other party. All parties who use or rely
upon any information in the report without our written consent do so at their own risk.

20.   No studies have been provided to us indicating the presence or absence of hazardous
materials on the subject property or in the improvements, and our valuation is predicated
upon the assumption that the subject property is free and clear of any environment hazards
including, without limitation, hazardous wastes, toxic substances and mold. No
representations or warranties are made regarding the environmental condition of the subject
property. Integra Realty Resources – Miami/Palm Beach, Integra Realty Resources, Inc.,
Integra Strategic Ventures, Inc. and/or any of their respective officers, owners, managers,
directors, agents, subcontractors or employees (the "Integra Parties"), shall not be responsible
for any such environmental conditions that do exist or for any engineering or testing that
might be required to discover whether such conditions exist. Because we are not experts in
the field of environmental conditions, the appraisal report cannot be considered as an
environmental assessment of the subject property.

21.   The persons signing the report may have reviewed available flood maps and may have noted
in the appraisal report whether the subject property is located in an identified Special Flood
Hazard Area. We are not qualified to detect such areas and therefore do not guarantee such
determinations. The presence of flood plain areas and/or wetlands may affect the value of the
property, and the value conclusion is predicated on the assumption that wetlands are non-
existent or minimal.

22.   Integra Realty Resources – Miami/Palm Beach is not a building or environmental inspector.
Integra Miami/Palm Beach does not guarantee that the subject property is free of defects or
environmental problems. Mold may be present in the subject property and a professional
inspection is recommended.

23.   The appraisal report and value conclusions for an appraisal assume the satisfactory
completion of construction, repairs or alterations in a workmanlike manner.

24.   It is expressly acknowledged that in any action which may be brought against any of the
Integra Parties, arising out of, relating to, or in any way pertaining to this engagement, the
appraisal reports, and/or any other related work product, the Integra Parties shall not be
responsible or liable for any incidental or consequential damages or losses, unless the
appraisal was fraudulent or prepared with intentional misconduct. It is further acknowledged



Case 2:09-md-02047-EEF-MBN Document 22363-60 Filed 11/19/19 Page 70 of 110
Case 1:11-cv-22408-MGC Document 201-14 Entered on FLSD Docket 05/13/2015 Page 15 of 55

Assumptions and Limiting Conditions                                                    12

that the collective liability of the Integra Parties in any such action shall not exceed the fees paid for the preparation of the appraisal report unless the appraisal was fraudulent or prepared with intentional misconduct. Finally, it is acknowledged that the fees charged herein are in reliance upon the foregoing limitations of liability.

25.  Integra Realty Resources – Miami/Palm Beach, an independently owned and operated company, has prepared the appraisal for the specific intended use stated elsewhere in the report. The use of the appraisal report by anyone other than the Client is prohibited except as otherwise provided. Accordingly, the appraisal report is addressed to and shall be solely for the Client's use and benefit unless we provide our prior written consent. We expressly reserve the unrestricted right to withhold our consent to your disclosure of the appraisal report or any other work product related to the engagement (or any part thereof including, without limitation, conclusions of value and our identity), to any third parties. Stated again for clarification, unless our prior written consent is obtained, no third party may rely on the appraisal report (even if their reliance was foreseeable).

26.  The conclusions of this report are estimates based on known current trends and reasonably foreseeable future occurrences. These estimates are based partly on property information, data obtained in public records, interviews, existing trends, buyer-seller decision criteria in the current market, and research conducted by third parties, and such data are not always completely reliable. The Integra Parties are not responsible for these and other future occurrences that could not have reasonably been foreseen on the effective date of this assignment. Furthermore, it is inevitable that some assumptions will not materialize and that unanticipated events may occur that will likely affect actual performance. While we are of the opinion that our findings are reasonable based on current market conditions, we do not represent that these estimates will actually be achieved, as they are subject to considerable risk and uncertainty. Moreover, we assume competent and effective management and marketing for the duration of the projected holding period of this property.

27.  All prospective value opinions presented in this report are estimates and forecasts which are prospective in nature and are subject to considerable risk and uncertainty. In addition to the contingencies noted in the preceding paragraph, several events may occur that could substantially alter the outcome of our estimates such as, but not limited to changes in the economy, interest rates, and capitalization rates, behavior of consumers, investors and lenders, fire and other physical destruction, changes in title or conveyances of easements and deed restrictions, etc. It is assumed that conditions reasonably foreseeable at the present time are consistent or similar with the future.



## Addenda



# USPAP Compliance Addendum

| | | | | |
|---|---|---|---|---|
| | | | Loan # VALU-18-12-1452 | |
| | | | File # VALU-18-12-1452 | |

| Borrower | Gody, Anthony & Candace | | | | |
|---|---|---|---|---|---|
| Property Address | 10842 Tiberio Dr | | | | |
| City | Fort Myers | County | Lee | State FL | Zip Code 33913 |
| Lender/Client | Integra Realty Resources (IRR) - Miami | Palm Beach | | | | |

## APPRAISAL AND REPORT IDENTIFICATION

This Appraisal Report is one of the following types:

☒ Appraisal Report    This report was prepared in accordance with the requirements of the Appraisal Report option of USPAP Standards Rule 2-2(a).

☐ Restricted Appraisal Report    This report was prepared in accordance with the requirements of the Restricted Appraisal Report option of USPAP Standards Rule 2-2(b). The
   intended user of this report is limited to the identified client. This is a Restricted Appraisal Report and the rationale for how the appraiser arrived
   at the opinions and conclusions set forth in the report may not be understood properly without the additional information in the appraiser's workfile.

### Appraisal Report; Prepared in Accordance with USPAP Standards Rule 2-2(a). PURPOSE AND INTENDED USE OF THE APPRAISAL

This Appraisal Report is for the sole use of our clients Intended users of this report is to assist the Client with arriving at a conclusion of fair market value
for litigation purposes. The intended users of this report is the client listed above, and if other parties choose to rely on the report, the appraiser is not
obligated to such parties and does not result in such parties becoming intended users. Finally, I understand that this appraisal may not be a part of a
federally related transaction.

## ADDITIONAL CERTIFICATIONS

I certify that, to the best of my knowledge and belief:

- The statements of fact contained in this report are true and correct.

- The report analyses, opinions, and conclusions are limited only by the reported assumptions and are my personal, impartial, and unbiased professional analyses,
  opinions, and conclusions.

- I have no (or the specified) present or prospective interest in the property that is the subject of this report and no (or specified) personal interest with respect to the
  parties involved.

- I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.

- My engagement in this assignment was not contingent upon developing or reporting predetermined results.

- My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause
  of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of
  this appraisal.

- My analyses, opinions, and conclusions were developed and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.

- This appraisal report was prepared in accordance with the requirements of Title XI of FIRREA and any implementing regulations.

## PRIOR SERVICES

☒ I have NOT performed services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period
   immediately preceding acceptance of this assignment.

☐ I HAVE performed services, as an appraiser or in another capacity, regarding the property that is the subject of this report within the three-year period immediately
   preceding acceptance of this assignment. Those services are described in the comments below.

## PROPERTY INSPECTION

☐ I have NOT made a personal inspection of the property that is the subject of this report.

☒ I HAVE made a personal inspection of the property that is the subject of this report.

## APPRAISAL ASSISTANCE

Unless otherwise noted, no one provided significant real property appraisal assistance to the person signing this certification. If anyone did provide significant assistance, they
are hereby identified along with a summary of the extent of the assistance provided in the report.

APPRAISER INDEPENDENCE REQUIREMENTS:The appraiser has prepared this appraisal in full compliance with applicable Appraiser Independence
Requirements and has not performed, participated in, or been associated with any activity in violation of those requirements.All photos in report are
appraiser originals taken during the course of this assignment.All of the comparables were "driven by" during the course of this assignment by Appraiser.
No one provided significant real property appraisal assistance to the Appraiser Sarah D. Wilson

## ADDITIONAL COMMENTS

Additional USPAP related issues requiring disclosure and/or any state mandated requirements:    The analyses, opinions, and conclusions in this appraisal and
appraisal report were developed and the report was prepared, to the best of the appraiser(s) ability, in accordance with the standards and
reporting requirements of the Appraisal Institute. In addition, this appraisal report conforms to the current Uniform Standards of Professional
Appraisal Practice (USPAP), as promulgated by the Appraisal Foundation and FIRREA (Financial Institutions Reform, Recovery and
Enforcement Act of 1989) and FDIC minimum requirements. The report conforms to the Federal Reserve Board, Department of the Treasury,
Federal Deposit Insurance Corporation, Sate of Florida and the Office of the Comptroller of the Currency, 12CFR, Part 34, Appraisals (Final
Rule).
See Addendum

## MARKETING TIME AND EXPOSURE TIME FOR THE SUBJECT PROPERTY

☒ A reasonable marketing time for the subject property is   90-180   utilizing market conditions pertinent to the appraisal assignment.

☒ A reasonable exposure time for the subject property is   90-180   days(s).

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name   Sarah D. Wilson | Name |
| Date of Signature   01/28/2019 | Date of Signature |
| State Certification #   RD7689 | State Certification # |
| or State License # | or State License # |
| State   FL | State |
| Expiration Date of Certification or License   11/30/2020 | Expiration Date of Certification or License |
| | Supervisory Appraiser Inspection of Subject Property |
| Effective Date of Appraisal   01/01/2019 | ☐ Did Not    ☐ Exterior-only from Street    ☐ Interior and Exterior |

Serial# C4904295
esign.alamode.com/verify

# Exterior-Only Inspection Residential Appraisal Report

VALU-18-12-1452
File # VALU-18-12-1452

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

## SUBJECT

| | | |
|---|---|---|
| Property Address | 10842 Tiberio Dr | City Fort Myers  State FL  Zip Code 33913 |
| Borrower Gody, Anthony & Candace | Owner of Public Record  GODY ANTHONY T + CANDACE D | County Lee |

Legal Description  VILLA CAPRI AT PELICAN PRESERVE TRACT T DESC IN OR #2006-126026BLK A LOT 18

Assessor's Parcel #  02-45-25-P3-0200A.0180  Tax Year 2018  R.E. Taxes $ 6,102

Neighborhood Name  Pelican Preserve  Map Reference 15980  Census Tract 0401.14

Occupant ☒ Owner ☐ Tenant ☐ Vacant  Special Assessments $ 0  ☒ PUD  HOA $ 5,772  ☒ per year ☐ per month

Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)

Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe)  Litigation Retrospective DOV 01/01/2019 Client Request

Lender/Client  Integra Realty Resources (IRR) - Miami | Palm  Address  9155 South Dadeland Boulevard, Ste 1208, Miami, FL 33156

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☐ Yes ☒ No

Report data source(s) used, offering price(s), and date(s).  MLS

## CONTRACT

☐ I ☐ did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $  Date of Contract  Is the property seller the owner of public record? ☐ Yes ☐ No  Data Source(s)

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☐ No

If Yes, report the total dollar amount and describe the items to be paid.

## NEIGHBORHOOD

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | One-Unit Housing Trends | One-Unit Housing | Present Land Use % |
|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | Property Values ☐ Increasing ☒ Stable ☐ Declining | PRICE $ (000)  AGE (yrs) | One-Unit 50 % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | 181 Low 1 | 2-4 Unit 6 % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | Marketing Time ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | 750 High 22 | Multi-Family 3 % |
| | | 385 Pred. 13 | Commercial 38 % |
| | | | Other 3 % |

Neighborhood Boundaries  The subject is bounded to the north by Alico Rd., to the south by Estero Pkwy., to the east by Interstate 75, and to the west by S Tamiami Trl. Fort Myers,FL

Neighborhood Description  The subject is located in the city of Fort Myers FL which provides the area with access to major north and south centers of employment. Area schools and recreation parks are in close proximity, supporting services are located on Alico Rd and US 41. The 3% other land use consists of schools, parks and vacant land, and is not considered an adverse external factor.

Market Conditions (including support for the above conclusions)  The market is stable and in balance.

## SITE

Dimensions 88 x 100  Area 8800 sf  Shape Rectangular  View B;Wtr;

Specific Zoning Classification  RS-1  Zoning Description  Residential Single Family

Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No  If No, describe

| Utilities | Public | Other (describe) | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water ☒ | | Street Asphalt | | ☒ |
| Gas | ☐ None | | Sanitary Sewer ☒ | | Alley None | | |

FEMA Special Flood Hazard Area ☐ Yes ☒ No  FEMA Flood Zone X  FEMA Map # 12071C0433G  FEMA Map Date 12/07/2018

Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No  If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No  If Yes, describe

The subject is not located in a flood zone. The subject is located in a planned unit development with mandatory HOA dues and private streets. Private streets are common/typical and has no adverse affect to market or appraisal.

## IMPROVEMENTS

Source(s) Used for Physical Characteristics of Property ☐ Appraisal Files ☒ MLS ☒ Assessment and Tax Records ☐ Prior Inspection ☐ Property Owner
☐ Other (describe)  Data Source for Gross Living Area  Lee County Property Appraiser

| General Description | General Description | Heating/Cooling | Amenities | Car Storage |
|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | ☒ Concrete Slab ☐ Crawl Space | ☒ FWA ☐ HWBB | Fireplace(s) # 0 | ☒ None |
| # of Stories 1 | ☐ Full Basement ☐ Finished | ☐ Radiant | Woodstove(s) # 0 | ☒ Driveway # of Cars 2 |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | ☐ Partial Basement ☐ Finished | ☐ Other | ☒ Patio/Deck None | Driveway Surface Concrete |
| ☒ Existing ☐ Proposed ☐ Under Const. | Exterior Walls CBS | ☐ Electricity | ☒ Porch Porches | ☒ Garage # of Cars 2 |
| Design (Style) Ranch | Roof Surface Tile | ☒ Central Air Conditioning | ☒ Pool Pool | ☐ Carport # of Cars 0 |
| Year Built 2006 | Gutters & Downspouts Average | ☐ Individual | ☐ Fence None | ☒ Attached ☐ Detached |
| Effective Age (Yrs) 7 | Window Type Unknown | ☐ Other | ☐ Other Spa | ☐ Built-in |
| Appliances ☒ Refrigerator ☒ Range/Oven ☐ Dishwasher ☐ Disposal ☐ Microwave ☐ Washer/Dryer ☒ Other (describe) Ext Inspection Only-See addend | | | | |

Finished area above grade contains:  7 Rooms  3 Bedrooms  2.1 Bath(s)  2,246 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.).  See attached addenda. Exterior Inspection Only.

Describe the condition of the property and data source(s) (including apparent needed repairs, deterioration, renovations, remodeling, etc.).  C3;For purposes of this report as of effective day, subject property is considered to be an overall C3 condition.  Appraiser utilized comparable properties which are considered overall C3 condition similar to the subject property.  Appraiser reserves the right to change and or modify should evidence be presented of the true condition of the subject property. Appraiser has utilized the best available comparable sales and comparable listings within the subject's immediate market area, which represent similar buying alternatives to the subject property.  Due to the assignment type, exterior inspection only, the condition of the subject property is unknown.

Are there any apparent physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No
If Yes, describe.

The appraiser is not a home inspector and this is not intended to be a home inspection. A professional home inspector and structural inspector should be contacted for an inspection if any parties may be concerned.  The appraiser makes no warranties.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No  If No, describe.

Form 2055UAD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Serial# C4904295
esign.alamode.com/verify

# Exterior–Only Inspection Residential Appraisal Report

File # VALU-18-12-1452
File # VALU-18-12-1452

There are **14** comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 320,000 to $ 589,700 .
There are **47** comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 305,000 to $ 530,500 .

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 10842 Tiberio Dr | 10834 Tiberio Dr | | 10543 Bella Vista Dr | | 10836 Tiberio Dr | |
| | Fort Myers, FL 33913 | Fort Myers, FL 33913 | | Fort Myers, FL 33913 | | Fort Myers, FL 33913 | |
| Proximity to Subject | | 0.04 miles N | | 0.52 miles NE | | 0.03 miles N | |
| Sale Price | $ | | $ 382,000 | | $ 355,000 | | $ 351,000 |
| Sale Price/Gross Liv. Area | $ 125.77 sq.ft. | $ 170.08 sq.ft. | | $ 188.93 sq.ft. | | $ 192.54 sq.ft. | |
| Data Source(s) | | MLS # 218021304;DOM 213 | | MLS #217071608;DOM 43 | | MLS #218026540;DOM 127 | |
| Verification Source(s) | | Pub Records/MLS/Field Inspection | | Pub Records/MLS/Field Inspection | | Pub Records/MLS/Field Inspection | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | ArmLth | 0 | ArmLth | 0 | ArmLth | 0 |
| Concessions | | Conv;0 | | Conv;0 | | Conv;0 | |
| Date of Sale/Time | | s11/18;c11/18 | 0 | s01/18;c01/18 | +5,000 | s10/18;c10/18 | 0 |
| Location | N;Res; | N;Res; | | N;Res; | | N;Res; | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 8800 sf | 8581 sf | 0 | 9117 sf | 0 | 10019 sf | 0 |
| View | B;Wtr; | B;Wtr; | | B;Wtr; | | B;Wtr; | |
| Design (Style) | DT1;Ranch | DT1;Ranch | | DT1;Ranch | | DT1;Ranch | |
| Quality of Construction | Q3 | Q3 | | Q3 | | Q3 | |
| Actual Age | 13 | 13 | | 16 | 0 | 12 | 0 |
| Condition | C3 | C3 | | C3 | | C3 | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | 0 | Total Bdrms. Baths | 0 |
| Room Count | 7 3 2.1 | 7 3 2.1 | | 7 3 3.0 | -2,500 | 6 2 2.0 | +2,500 |
| Gross Living Area | 2,246 sq.ft. | 2,246 sq.ft. | | 1,879 sq.ft. | +24,000 | 1,823 sq.ft. | +27,000 |
| Basement & Finished | 0sf | 0sf | | 0sf | | 0sf | |
| Rooms Below Grade | | | | | | | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | Central | Central | | Central | | Central | |
| Energy Efficient Items | Average | Average | | Average | | Average | |
| Garage/Carport | 2ga2dw | 2ga2dw | | 2ga2dw | | 2ga2dw | |
| Porch/Patio/Deck | Porches | Porches | | Porches | | Porches | |
| Pool/Spa Package | Pool/Spa Pkg | Pool/Spa Pkg | | Pool/Spa Pkg | | Pool/Spa Pkg | |
| | | | | | | | |
| Net Adjustment (Total) | | ☐ + ☐ - | $ 0 | ☒ + ☐ - | $ 26,500 | ☒ + ☐ - | $ 29,500 |
| Adjusted Sale Price | | Net Adj. 0.0 % | | Net Adj. 7.5 % | | Net Adj. 8.4 % | |
| of Comparables | | Gross Adj. 0.0 % $ 382,000 | | Gross Adj. 8.9 % $ 381,500 | | Gross Adj. 8.4 % $ 380,500 | |

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain



My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s) Public Records
My research ☐ did ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s) Public Records
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | | | | |
| Data Source(s) | Lee County Tax Assessor | Lee County Tax Assessor | Lee County Tax Assessor | Lee County Tax Assessor |
| Effective Date of Data Source(s) | 01/19/2019 | 01/19/2019 | 01/19/2019 | 01/19/2019 |

Analysis of prior sale or transfer history of the subject property and comparable sales      See attached addenda.  All closed comparable sales were verified by at
least 3 supported, reliable resources:
Local MLS, multiple listing service
Lee County Property Appraiser
Realist.com
According to the Lee County Public Records these are  the  transfers documented within the last thirty six months of the effective appraisal date.
Summary of Sales Comparison Approach      See attached addenda.







Indicated Value by Sales Comparison Approach $      381,000
Indicated Value by: Sales Comparison Approach $      381,000      Cost Approach (if developed) $      Income Approach (if developed) $
Of the three approaches the value conclusion relies on the Sales Comparison approach. Cost approach was not developed due to the
assignment type per client request, as this was an exterior inspection from the street only.  Due to assignment type per client request, the income
approach to value was not developed.
This appraisal is made ☐ "as is",  ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been
completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☒ subject to the
following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair: See attached addenda. Exterior
Inspection only - Value is based on hypothetical condition the subject interior is in average C3 condition.
Based on a visual inspection of the exterior areas of the subject property from at least the street, defined scope of work, statement of assumptions and limiting
conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$ 381,000 , as of 01/01/2019 , which is the date of inspection and the effective date of this appraisal.

Form 2055UAD – "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Serial# C4904295
esign.alamode.com/verify

**Exterior–Only Inspection Residential Appraisal Report**

VALU-18-12-1452
File # VALU-18-12-1452

**ADDITIONAL COMMENTS**

In developing this appraisal an attempt was made to locate properties that are "most like" the subject; in other words, properties that are similar in design, appeal, materials, size and additional amenities and thereby requiring the least amount of adjustments. In the adjustment process it may be necessary to expand guidelines, due to the neighborhood housing stock, especially where housing design, quality and age vary beyond that which is typical of a homogenous area. I Therefore, find that the extended marketing time, use of comparables from outside the desired radius and/or adjustments exceeding the usual parameters are considered a general economic condition. It is not necessarily adverse and does not weaken the report or the indicated value.Specific information relating to the subject property is obtained from the tax rolls of the county in which the property is located as provided by private data sources. Neighborhood information is obtained from an inspection of the neighborhood as well as sales activity which can be monitored through public and private data sources.

The sales used are obtained from a variety of sources. The primary sources are MLS computer generated sales activity provided by local Board of Realtors, deed transfers as reported by private data sources as well as linkages to the county records. Whenever possible this information is verified by one of the principals involved in the sale. These sales are supplemented by current listings in the subject's neighborhood. Square footage of living area and other sizes and dimensions of the comparables are obtained through public records. Since the appraiser does not measure the comparables (unless it was a previous subject) these figures cannot be warranted. Since the flood maps published by the National Flood Insurance Program are vague and poorly defined in some areas, the appraiser has used his best judgement as to the subject property by both visual inspection and plotting on the map. In the absence of a survey, the appraiser assumes no responsibility for the flood zone classification.

Adjustments are based on paring of sales, where market data is unavailable or inconclusive a fraction of cost may have been used. The adjustments in the sales comparison approach are rounded to the nearest hundred. Minimal features such as fences, storage areas, sheds, and patios are considered to have no contributory value to the overall opinion of value and are excluded from the sales comparison approach.

**The cost approach was not developed due to assignment type, exterior appraisal only.**

**COST APPROACH**

**COST APPROACH TO VALUE (not required by Fannie Mae)**

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)    Cost approach not developed.

| | | | |
|---|---|---|---|
| ESTIMATED ☐ REPRODUCTION OR ☐ REPLACEMENT COST NEW | OPINION OF SITE VALUE | =$ | |
| Source of cost data | DWELLING | Sq Ft. @ $ | =$ |
| Quality rating from cost service    Effective date of cost data | | Sq Ft. @ $ | =$ |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | | =$ |
| | Garage/Carport | Sq Ft. @ $ | =$ |
| | Total Estimate of Cost-New | | =$ |
| | Less    Physical    Functional    External | | |
| | Depreciation | | =$( ) |
| | Depreciated Cost of Improvements | | =$ |
| | "As-is" Value of Site Improvements | | =$ |
| Estimated Remaining Economic Life (HUD and VA only)    Years | INDICATED VALUE BY COST APPROACH | | = $ |

**INCOME**

**INCOME APPROACH TO VALUE (not required by Fannie Mae)**

| | | | |
|---|---|---|---|
| Estimated Monthly Market Rent $  $2,000  X Gross Rent Multiplier | | = $ | Indicated Value by Income Approach |

Summary of Income Approach (including support for market rent and GRM)    per client request a rent schedule was included, however income approach was not developed.

**PUD INFORMATION**

**PROJECT INFORMATION FOR PUDs (if applicable)**

Is the developer/builder in control of the Homeowners' Association (HOA)?  ☐ Yes  ☒ No  Unit type(s)  ☒ Detached  ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

| | | |
|---|---|---|
| Total number of phases | Total number of units | Total number of units sold |
| Total number of units rented | Total number of units for sale | Data source(s) |

Was the project created by the conversion of existing building(s) into a PUD?  ☐ Yes  ☐ No  If Yes, date of conversion

Does the project contain any multi-dwelling units?  ☐ Yes  ☐ No  Data Source(s)

Are the units, common elements, and recreation facilities complete?  ☐ Yes  ☐ No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?  ☐ Yes  ☐ No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

Form 2055UAD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Serial# C4904295
esign.alamode.com/verify

**Exterior-Only Inspection Residential Appraisal Report**

VALU-18-12-1452
File # VALU-18-12-1452

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

SCOPE OF WORK: The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a visual inspection of the exterior areas of the subject property from at least the street, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

The appraiser must be able to obtain adequate information about the physical characteristics (including, but not limited to, condition, room count, gross living area, etc.) of the subject property from the exterior-only inspection and reliable public and/or private sources to perform this appraisal. The appraiser should use the same type of data sources that he or she uses for comparable sales such as, but not limited to, multiple listing services, tax and assessment records, prior inspections, appraisal files, information provided by the property owner, etc.

INTENDED USE: The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

INTENDED USER: The intended user of this appraisal report is the lender/client.

DEFINITION OF MARKET VALUE: The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS: The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

3. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

4. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

5. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Form 2055UAD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Serial# C4904295
esign.alamode.com/verify

**Exterior-Only Inspection Residential Appraisal Report**

VALU-18-12-1452
File # VALU-18-12-1452

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a visual inspection of the exterior areas of the subject property from at least the street. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

Serial# C4904295
esign.alamode.com/verify

**Exterior-Only Inspection Residential Appraisal Report**

VALU-18-12-1452
File # VALU-18-12-1452

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

SUPERVISORY APPRAISER'S CERTIFICATION:    The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name  Sarah D. Wilson | Name |
| Company Name  Valucentric, LLC | Company Name |
| Company Address  4590 Ulmerton Road | Company Address |
| Clearwater, FL 33762 | |
| Telephone Number  844-825-8236 | Telephone Number |
| Email Address  info@valucentric.com | Email Address |
| Date of Signature and Report  01/28/2019 | Date of Signature |
| Effective Date of Appraisal  01/01/2019 | State Certification # |
| State Certification #  RD7689 | or State License # |
| or State License # | State |
| or Other (describe)  State #  | Expiration Date of Certification or License |
| State  FL | |
| Expiration Date of Certification or License  11/30/2020 | SUBJECT PROPERTY |
| | ☐ Did not inspect exterior of subject property |
| ADDRESS OF PROPERTY APPRAISED | ☐ Did inspect exterior of subject property from street |
| 10842 T berio Dr | Date of Inspection |
| Fort Myers, FL 33913 | |
| APPRAISED VALUE OF SUBJECT PROPERTY $  381,000 | COMPARABLE SALES |
| LENDER/CLIENT | |
| Name  No AMC | ☐ Did not inspect exterior of comparable sales from street |
| Company Name  Integra Realty Resources (IRR) - Miami | Palm Bea | ☐ Did inspect exterior of comparable sales from street |
| Company Address  9155 South Dadeland Boulevard, Ste 1208, | Date of Inspection |
| Miami, FL 33156 | |
| Email Address | |

Freddie Mac Form 2055 March 2005                    UAD Version 9/2011        Page 6 of 6                                    2055 March 2005

Form 2055UAD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Serial# C4904295
esign.alamode.com/verify

## SINGLE FAMILY COMPARABLE RENT SCHEDULE

File # VALU-18-12-1452

This form is intended to provide the appraiser with a familiar format to estimate the market rent of the subject property. Adjustments should be made only for items of significant difference between the comparables and the subject property.

| ITEM | SUBJECT | COMPARABLE NO. 1 | | COMPARABLE NO. 2 | | COMPARABLE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 10842 Tiberio Dr<br>Fort Myers, FL 33913 | 10456 Migliera Way<br>Fort Myers, FL 33913 | | 10362 Materita Dr<br>Fort Myers, FL 33913 | | 11610 Giulia Dr<br>Fort Myers, FL 33913 | |
| Proximity to Subject | | 1.09 miles NE | | 1.17 miles NE | | 0.63 miles E | |
| Date Lease Begins<br>Date Lease Expires | unknown<br>unknown | 03/01/2018<br>03/01/2019 | | 01/01/2018<br>01/01/2019 | | 08/01/2018<br>08/01/2019 | |
| Monthly Rental | If Currently<br>Rented: $ | $ 2,000 | | $ 2,000 | | $ 2,000 | |
| Less: Utilities<br>Furniture | $ 0<br>0 | $ 0<br>0 | | $ 0<br>0 | | $ 0<br>0 | |
| Adjusted<br>Monthly Rent | $ | $ 2,000 | | $ 2,000 | | $ 2,000 | |
| Data Source | Field Inspection<br>Public Records | MLS 218007506<br>Public Records | | MLS 217007466<br>Public Records | | MLS 218035146<br>Public Records | |
| RENT ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. |
| Rent<br>Concessions | | None<br>None | | None<br>None | | None<br>None | |
| Location/View | N;Res;<br>B;Wtr; | N;Res;<br>B;Wtr; | | N;Res;<br>B;Wtr; | | N;Res;<br>B;Wtr; | |
| Design and Appeal | DT1;Ranch<br>Ranch | DT1;Ranch<br>Ranch | | DT1;Ranch<br>Ranch | | DT1;Ranch<br>Ranch | |
| Age/Condition | 13<br>C3 | 3<br>C3 | 0 | 3<br>C3 | 0 | 5<br>C3 | 0 |
| Above Grade<br>Room Count<br>Gross Living Area | Total 7 Bdrms 3 Baths 2.1<br>2,246 Sq. Ft. | Total 7 Bdrms 3 Baths 2.1<br>2,250 Sq. Ft. | 0 | Total 6 Bdrms 2 Baths 2<br>1,913 Sq. Ft. | 0<br>0 | Total 7 Bdrms 3 Baths 2.1<br>2,286 Sq. Ft. | 0<br>0 |
| Other (e.g., basement, etc.) | 0sf | 0sf<br>None | | 0sf<br>None | | 0sf<br>None | |
| Other: | Pool Package | Pool Package | 0 | None | 0 | Pool Package | 0 |
| Net Adj. (total) | | ☐ + ☐ − $ | 0 | ☐ + ☐ − $ | 0 | ☐ + ☐ − $ | 0 |
| Indicated Monthly<br>Market Rent | | $ 2,000 | | $ 2,000 | | $ 2,000 | |

Comments on market data, including the range of rents for single family properties, an estimate of vacancy for single family rental properties, the general trend of rents and vacancy, and support for the above adjustments. (Rent concessions should be adjusted to the market, not to the subject property.)  All rental comps represent similar buying and renting alternatives to the subject property and are all located within the immediate neighborhood and market area.

The subject property is located in the development known as Pelican Preserve which is a 55 + and over community.

All rental comps are located in the same development known as Pelican Preserve.

Final Reconciliation of Market Rent:   All rental comps represent similar buying and renting alternatives to the subject property and are all located within the immediate neighborhood and market area.

All rental comps are rented within [illegible] market as well as actual rent.

I (WE) ESTIMATE THE MONTHLY MARKET RENT OF THE SUBJECT AS OF _____ 01/01/2019 _____ TO BE $ _____ $2,000 _____

Appraiser(s) SIGNATURE _____
NAME   Sarah D. Wilson

Review Appraiser SIGNATURE _____
(If applicable)  NAME _____

| Date Property Inspected 01/01/2019 | Report Signed 01/28/2019 | Date Property Inspected _____ | Report Signed _____ |
|---|---|---|---|
| License or Certification # RD7689 | State FL | License or Certification # _____ | State _____ |
| Expiration Date of License or Certification 11/30/2020 | | Expiration Date of License or Certification _____ | |
| | | Review Appraiser ☐ Did ☐ Did Not  Inspect Subject Property | |

Freddie Mac Form 1000 (8/88)

Form 1007 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Fannie Mae Form 1007 (8/88)

Serial# C4904295
esign.alamode.com/verify

## Subject Photo Page

| Borrower | Gody, Anthony & Candace | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 10842 Tiberio Dr | | | | | |
| City | Fort Myers | County | Lee | State | FL | Zip Code 33913 |
| Lender/Client | Integra Realty Resources (IRR) - Miami | Palm Beach | | | | | |



**Subject Front**

10842 T berio Dr
Sales Price
Gross Living Area    2,246
Total Rooms    7
Total Bedrooms    3
Total Bathrooms    2.1
Location    N;Res;
View    B;Wtr;
Site    8800 sf
Quality    Q3
Age    13

Exterior Inspection
from road only
Per Client Request



**Subject Front**

Exterior Inspection
from road only
Per Client Request



**Subject Street**

Exterior Inspection
from road only
Per Client Request

**Comparable Photos 1-3**

| Borrower | Gody, Anthony & Candace | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 10842 Tiberio Dr | | | | | |
| City | Fort Myers | County | Lee | State | FL | Zip Code 33913 |
| Lender/Client | Integra Realty Resources (IRR) - Miami \| Palm Beach | | | | | |



### Comparable 1

10834 Tiberio Dr

| | |
|---|---|
| Prox. to Subject | 0.04 miles N |
| Sales Price | 382,000 |
| Gross Living Area | 2,246 |
| Total Rooms | 7 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.1 |
| Location | N;Res; |
| View | B;Wtr; |
| Site | 8581 sf |
| Quality | Q3 |
| Age | 13 |

Due To Privacy Rights
Appraiser took best photo.



### 2

10543 Bella Vista Dr

| | |
|---|---|
| Prox. to Subject | 0.52 miles NE |
| Sales Price | 355,000 |
| Gross Living Area | 1,879 |
| Total Rooms | 7 |
| Total Bedrooms | 3 |
| Total Bathrooms | 3.0 |
| Location | N;Res; |
| View | B;Wtr; |
| Site | 9117 sf |
| Quality | Q3 |
| Age | 16 |

Due To Privacy Rights
Appraiser took best photo.



### 3

10836 Tiberio Dr

| | |
|---|---|
| Prox. to Subject | 0.03 miles N |
| Sales Price | 351,000 |
| Gross Living Area | 1,823 |
| Total Rooms | 6 |
| Total Bedrooms | 2 |
| Total Bathrooms | 2.0 |
| Location | N;Res; |
| View | B;Wtr; |
| Site | 10019 sf |
| Quality | Q3 |
| Age | 12 |

Due To Privacy Rights
Appraiser took best photo.

Serial# C4904295
esign.alamode.com/verify

# Rental Photo Page

| Borrower | Gody, Anthony & Candace | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 10842 Tiberio Dr | | | | | |
| City | Fort Myers | County | Lee | State | FL | Zip Code | 33913 |
| Lender/Client | Integra Realty Resources (IRR) - Miami | Palm Beach | | | | | |



### Rental 1

10456 Migliera Way

| | |
|---|---|
| Proximity to Subject | 1.09 miles NE |
| Adj. Monthly Rent | 2,000 |
| Gross Living Area | 2,250 |
| Total Rooms | 7 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.1 |
| Location | N;Res; |
| View | B;Wtr; |
| Condition | C3 |
| Age/Year Built | 3 |



### Rental 2

10362 Materita Dr

| | |
|---|---|
| Proximity to Subject | 1.17 miles NE |
| Adj. Monthly Rent | 2,000 |
| Gross Living Area | 1,913 |
| Total Rooms | 6 |
| Total Bedrooms | 2 |
| Total Bathrooms | 2 |
| Location | N;Res; |
| View | B;Wtr; |
| Condition | C3 |
| Age/Year Built | 3 |



### Rental 3

11610 Giulia Dr

| | |
|---|---|
| Proximity to Subject | 0.63 miles E |
| Adj. Monthly Rent | 2,000 |
| Gross Living Area | 2,286 |
| Total Rooms | 7 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.1 |
| Location | N;Res; |
| View | B;Wtr; |
| Condition | C3 |
| Age/Year Built | 5 |

# Market Conditions Addendum to the Appraisal Report

File No. VALU-18-12-1452

The purpose of this addendum is to provide the lender/client with a clear and accurate understanding of the market trends and conditions prevalent in the subject neighborhood. This is a required addendum for all appraisal reports with an effective date on or after April 1, 2009.

| Property Address | 10842 Tiberio Dr | City | Fort Myers | State | FL | ZIP Code | 33913 |
|---|---|---|---|---|---|---|---|

| Borrower | Gody, Anthony & Candace |
|---|---|

**Instructions:** The appraiser must use the information required on this form as the basis for his/her conclusions, and must provide support for those conclusions, regarding housing trends and overall market conditions as reported in the Neighborhood section of the appraisal report form. The appraiser must fill in all the information to the extent it is available and reliable and must provide analysis as indicated below. If any required data is unavailable or is considered unreliable, the appraiser must provide an explanation. It is recognized that not all data sources will be able to provide data for the shaded areas below; if it is available, however, the appraiser must include the data in the analysis. If data sources provide the required information as an average instead of the median, the appraiser should report the available figure and identify it as an average. Sales and listings must be properties that compete with the subject property, determined by applying the criteria that would be used by a prospective buyer of the subject property. The appraiser must explain any anomalies in the data, such as seasonal markets, new construction, foreclosures, etc.

**MARKET RESEARCH & ANALYSIS**

| Inventory Analysis | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | 15 | 15 | 17 | Increasing | ☒ Stable | Declining |
| Absorption Rate (Total Sales/Months) | 2.50 | 5.00 | 5.67 | Increasing | ☒ Stable | Declining |
| Total # of Comparable Active Listings | 19 | 19 | 19 | Declining | ☒ Stable | Increasing |
| Months of Housing Supply (Total Listings/Ab.Rate) | 7.6 | 3.8 | 3.4 | Declining | ☒ Stable | Increasing |

| Median Sale & List Price, Days on Market/List % | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Median Comparable Sale Price | 385,000 | 385,000 | 385,000 | Increasing | ☒ Stable | Declining |
| Median Comparable Sales Days on Market | 150 | 150 | 150 | Declining | ☒ Stable | Increasing |
| Median Comparable List Price | 392,700 | 392,700 | 392,700 | Increasing | ☒ Stable | Declining |
| Median Comparable Listings Days on Market | 60 | 60 | 60 | Declining | ☒ Stable | Increasing |
| Median Sale Price as % of List Price | 94.34 | 94.59 | 94.00 | Increasing | ☒ Stable | Declining |
| Seller-(developer, builder, etc.)paid financial assistance prevalent? | | ☐ Yes | ☒ No | Declining | ☒ Stable | Increasing |

Explain in detail the seller concessions trends for the past 12 months (e.g., seller contributions increased from 3% to 5%, increasing use of buydowns, closing costs, condo fees, options, etc.).    Seller concessions vary greatly with each individual sale. Where there has been an above normal amount of sellers concessions in the past three years, there has been a decrease lately due to lowered asking prices, with more sales being cash transactions. *The local MLS system stores data in real time, and thus it is impossible to act as if it was, or is, a date in the past. *Current-3 months comparable list price and comparable listing days on market is as of the effective date and may not reflect the prior 3 months accurately. Furthermore, there is no reliable method to track for sale by owner properties.

| Are foreclosure sales (REO sales) a factor in the market? | ☐ Yes | ☒ No | If yes, explain (including the trends in listings and sales of foreclosed properties). |
|---|---|---|---|

See attached addenda.

Cite data sources for above information.    Local MLS statistics provided the above information.

Summarize the above information as support for your conclusions in the Neighborhood section of the appraisal report form. If you used any additional information, such as an analysis of pending sales and/or expired and withdrawn listings, to formulate your conclusions, provide both an explanation and support for your conclusions. Appraiser's 'Inventory Analysis', 'Median Sale & List Price, DOM' and other observations in this addendum are based on the data source identified above, which appraiser generally believes to be a reliable source of market data. However, the appraiser cannot verify all of the information in that data source and cannot guarantee the accuracy of such data or conclusions based thereon." Pending sales, expired listings, and withdrawn listings were included in this analysis. The local MLS system stores data in real time, and thus it is impossible to act as if it was, or is, a date in the past. Furthermore, there is no reliable method to track for sale by owner properties. The appraiser cannot guarantee future market conditions affecting the subject property.

**CONDO/CO-OP PROJECTS**

| If the subject is a unit in a condominium or cooperative project , complete the following: | | | Project Name: | | | |
|---|---|---|---|---|---|---|
| Subject Project Data | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
| Total # of Comparable Sales (Settled) | | | | Increasing | Stable | Declining |
| Absorption Rate (Total Sales/Months) | | | | Increasing | Stable | Declining |
| Total # of Active Comparable Listings | | | | Declining | Stable | Increasing |
| Months of Unit Supply (Total Listings/Ab.Rate) | | | | Declining | Stable | Increasing |

| Are foreclosure sales (REO sales) a factor in the project? | ☐ Yes | ☐ No | If yes, indicate the number of REO listings and explain the trends in listings and sales of foreclosed properties. |
|---|---|---|---|

Summarize the above trends and address the impact on the subject unit and project.

🔒 esign.alamode.com/verify     Serial# C4904295

**APPRAISER**

| Signature | | Signature | |
|---|---|---|---|
| Appraiser Name | Sarah D. Wilson | Supervisory Appraiser Name | |
| Company Name | Valucentric, LLC | Company Name | |
| Company Address | 4590 Ulmerton Road, Clearwater, FL 33762 | Company Address | |
| State License/Certification # | RD7689    State  FL | State License/Certification # | State |
| Email Address | info@valucentric.com | Email Address | |

Form 1004MC2 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Serial# C4904295
esign.alamode.com/verify

# Supplemental Addendum

File No. VALU-18-12-1452

| Borrower | Gody, Anthony & Candace | | | | |
|---|---|---|---|---|---|
| Property Address | 10842 Tiberio Dr | | | | |
| City | Fort Myers | County Lee | State FL | Zip Code 33913 | |
| Lender/Client | Integra Realty Resources (IRR) - Miami \| Palm Beach | | | | |

PURPOSE AND INTENDED USE OF THE APPRAISAL
This Appraisal Report is for the sole use of our client. Intended users of this report is to assist the Client with arriving at a conclusion of fair market value for litigation purposes. The intended users of this report is the client listed above, and if other parties choose to rely on the report, the appraiser is not obligated to such parties and does not result in such parties becoming intended users. Finally, I understand that this appraisal may not be a part of a federally related transaction. Because it may not be part of a federally related transaction, the following does not apply:

The analyses, opinions, and conclusions in this appraisal and appraisal report were developed and the report was prepared, to the best of the appraiser(s) ability, in accordance with the standards and reporting requirements of the Appraisal Institute. In addition, this appraisal report conforms to the current Uniform Standards of Professional Appraisal Practice (USPAP), as promulgated by the Appraisal Foundation and FIRREA (Financial Institutions Reform, Recovery and Enforcement Act of 1989) and FDIC minimum requirements. The report conforms to the Federal Reserve Board, Department of the Treasury, Federal Deposit Insurance Corporation, Sate of Florida and the Office of the Comptroller of the Currency, 12CFR, Part 34, Appraisals (Final Rule).

INTEREST VALUED – FEE SIMPLE ESTATE DEFINITION: "Absolute ownership unencumbered by any other interest or estate, subject only to the limitations imposed by the governmental powers of taxation, eminent domain, police power, and escheat."

The Dictionary of Real Estate Appraisal, Forth Edition, Copyright 2002 by the Appraisal Institute an Illinois Not For Profit Corporation

It is the Appraiser's opinion, for purposes of this appraisal report only, that reasonable "exposure time" for the subject property would be a marketing time of 3-6 months. "Exposure time" as defined by the current, 2018-2019 Uniform Standards of Professional Appraisal Practice (USPAP) is defined as: "Estimated length of time that the property interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of the appraisal." "Exposure time is a retrospective opinion based on an analysis of past events assuming a competitive and open market." USPAP Standards Rule 1-2(c) requires the appraiser, when developing a real property appraisal, to "identify the type and definition of value…" USPAP further comments, "when reasonable exposure time is a component of the definition for the value opinion being developed, the appraiser must also develop an opinion of reasonable exposure time linked to that value opinion.

Appraiser has had no involvement with the subject property within 3 years of the effective date of this appraisal.

Appraiser, Sarah D. Wilson has performed no services , as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three year period immediately preceding acceptance of this assignment.

SCOPE OF WORK
The scope of this appraisal entails all of the necessary steps required to develop an Appraisal Report. The report is directed toward the specific needs of our client for the intended use stated herein. It includes valuing the subject property using two of the three traditional approaches to value. For this assignment we utilized local market data obtained from the sources mentioned throughout the report. Neighborhood data is based on our inspection and delineation. Site and building (if improved) data was obtained from the sources mentioned throughout the report. The Highest and Best Use analysis considers the intended purpose of this assignment (this appraisal is not a feasibility study). Furthermore, this appraisal is subject to the Assumptions and Limiting Conditions and the Certification contained herein. With respect to this appraisal assignment, the appraiser(s) completed the following;

The reported analyses, opinions, and conclusions were developed, and the report has been prepared, in conformity with the requirements of the code of Professional Ethics & Standards of Professional Appraisal Practice of the Appraisal Institute, which includes the Uniform Standards of Professional Appraisal Practice. The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

An Appraisal Report on the subject property has been prepared. The subject property data such as size, location, quality, and zoning are considered. Market data, including comparable improved sales and listings, supply and demand are among the items researched, analyzed, and presented. The data is used to consider the highest and best use of the subject property and to conclude an opinion of the market value.

The appraiser(s) lack the knowledge and experience with respect to the detection and measurement of hazardous substances. Therefore, this assignment does not cover the presence or absence of such substances as discussed in the General Underlying Assumptions section. However, any visual or obviously known hazardous substances affecting the property will be reported and an indication of its impact on value will be discussed.

The documentation necessary to arrive at the value is considered in this appraisal report. A view of the interior and exterior is done to describe the improvements. The market data has been collected, verified, and analyzed. Comparable sales were chosen for their similar highest and best uses as outlined within the report. All sales were analyzed and compared. Due to the current state of residential real estate market the Cost Approach is not given any weight. (The market is currently over supplied). The Income Approach was deemed not applicable for this appraisal since properties of this type are typically owner occupied and are not held for their income producing value. Of the three approaches the value conclusion relies on the Sales Comparisons Approach

This Appraisal Report is a brief recapitulation of the appraiser(s)' data, analyses and conclusions. Supporting documentation is retained in our office file.

No employee, director, officer, or agent of the lender, or any other third party acting as a joint venture partner, independent contractor, appraisal management company, or partner on behalf of the lender has influenced or attempted to influence the development, reporting, result, or review of this

Serial# C4904295
esign.alamode.com/verify

## Supplemental Addendum

File No. VALU-18-12-1452

| Borrower | Gody, Anthony & Candace | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 10842 Tiberio Dr | | | | | |
| City | Fort Myers | County | Lee | State | FL | Zip Code | 33913 |
| Lender/Client | Integra Realty Resources (IRR) - Miami | Palm Beach | | | | | |

assignment through coercion, extortion, collusion, compensation, instruction, inducement, intimidation, bribery or in any other manner. I have not been contacted by anyone other than the intended user (lender/client as identified on the first page of the report), borrower, or designated contact to make an appointment to enter the property. I agree to immediately report any unauthorized contacts either personally by phone or electronic to our client.

PERSONAL PROPERTY, TRADE FIXTURES OR INTANGIBLE ITEMS
This appraisal and its value opinion does not include any personal property (furniture, fixtures & equipment) or other intangible items that are not real property (note: normal real property fixtures are included).

EASEMENTS, RESTRICTIONS, ENCUMBRANCES OR LEASES, ETC.
Unless otherwise referenced herein, there are no known adverse easements, encroachments, restrictions, encumbrances, leases, reservations, covenants, contracts, declarations, special assessments, ordinances or other items of a similar nature.

CONCURRENCY ISSUES, ROAD WIDENING ISSUES & MORATORIUMS
To the best of my knowledge there are no concurrency (level of service) issues, road- widening issues or moratoriums associated with the subject property or access to the subject property.

OIL, GAS, MINERAL DEPOSITS, CROPS, TIMBER, ETC
There were no existing crops found on the property at the time of my inspection and no value has been attributed to timber in this appraisal assignment. I was not provided with a Title Report for use in this appraisal and the ownership of oil, gas and mineral rights has not been considered in my valuation. The opinion of value in this report reflects the assumption that all sub-surface rights transfer with surface rights.

HIGHEST & BEST USE
The reasonably probable and legal use of vacant land or an improved property, which is physically possible, appropriately supported, financially feasible, and that results in the highest value. The four criteria the highest and best use must meet are legal permissibility, physical possibility, financial feasibility, and maximum productivity. The subject is being used at it's highest & best use and is within the neighborhood norm for the assigned zoning class.

Highest and Best Use as if Vacant
Legally Permissible: According to public records, the subject site is currently zoned "RS-1" (Residential Single Family), which is an applicable zoning classification. The code provides for various restrictions such as principal permitted uses, etc. A change in zoning is not anticipated for the subject property nor is it deemed necessary or appropriate.

Physically Possible: Adequate utilities are available to enable development. Based on the subject's physical characteristics, development of the site is physically possible.

Financially Feasible: In terms of financial feasibility, speculative development would not be warranted at the present time. In addition, the current soft market in addition to an oversupply of property types across will also inhibit build-to-suit or owner/user development. As noted, the market is perceived to be slowing and will likely continue in the near future. Thus, if the site were vacant, a speculative hold would likely be the best investment position until the market reflects a positive move in regards to demand.

Maximally Productive: The financially feasible use that produces the greatest value consistent with investment requirements from the market is the highest and best use. Speculative hold with the ultimate use being residential development in the form of single family residential should be maximally productive.

Conclusion as Vacant: Given the above information, the highest and best use as vacant is a speculative hold with the ultimate use being for residential use.

Highest and Best Use as Improved
Legally Permissible: If the current improvements cannot be legally inhabited, then removal may be required. The current improvements are not in violation of any known legal restrictions.

Physically Possible: The subject is configured as a single family dwelling. The improvements are in average condition and are assumed to be of sound design. As a result, the physical characteristics of the improvements do not appear to hinder marketability. Lastly, the existing building use currently provides an economic contribution to the property as a whole and neither demolition of the improvements nor redevelopment of the site appears warranted.

Financially Feasible: The current improvements must provide a return that exceeds land value. As indicated in the valuation sections, the improvements provide a return to the land and thus, create value.

Maximally Productive: The use that provides the greatest return relative to risk is the highest and best use as improved. Given the cost of demolition and the uncertainty of profitability for a new development, there is not a use that would financially justify the removal or major alteration of the current improvements.

Conclusion as Improved: Given the above information, the subject's current use as a single family dwelling is its highest and best use as improved.

Serial# C4904295
esign.alamode.com/verify

**Supplemental Addendum**

File No. VALU-18-12-1452

| Borrower | Gody, Anthony & Candace | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 10842 Tiberio Dr | | | | | |
| City | Fort Myers | County | Lee | State | FL | Zip Code 33913 |
| Lender/Client | Integra Realty Resources (IRR) - Miami | Palm Beach | | | | | |

### APPRAISER INDEPENDENCE REQUIREMENTS

The appraiser, Sarah D. Wilson, has prepared this appraisal in full compliance with applicable Appraiser Independence Requirements and has not performed, participated in, or been associated with any activity in violation of those requirements.

All subject photos in report are appraiser originals taken during the course of this assignment. This was an exterior inspection only. Appraiser inspected the subject property from the road only.

All of the comparables were "driven by" during the course of this assignment, unless otherwise noted in the addendum due to reasons beyond the appraiser's control such as, but not limited to: privacy rights, gated communities, etc.

Appraiser has performed competently while completing this assignment.

### ASSIGNMENT RESULTS

**Physical characteristics are not ASSIGNMENT RESULTS. Appraiser has taken reasonable steps to safeguard access to confidential information and assignment results by unauthorized individuals, whether such information or results are in physical or electronic form.**

**Appraiser ensures that employees, co-workers, sub-contractors, or others who may have access to confidential information or assignment results, are aware of the prohibitions on disclosure of such information or results.**

• Exterior-Only : Sales Comparison Analysis - Summary of Sales Comparison Approach

Appraiser has utilized the best available comparable sales which occurred within 1-12 months prior to effective date of this appraisal, and within 1-2 miles of the subject property, and which represent the most similar buying alternatives.

All comps are located within the subject's immediate development known as Pelican Preserve, which is a 55+ community. Appraiser utilized the best available comps within a 2 mile radius, and which closed within 12 months prior to effective date, and which represent the most similar buying alternatives to the subject property, and which are also located in 55+ commuities. Requests for additional comps would result in comps over 3 miles, comps with greater adjustments which would exceed lender guidelines and comps which do not represent similar buying alternatives to the subject property.

All adjustments were determined by appraiser's extensive market research and knowledge of the subject's immediate neighborhood as well as market area. Adjustments are determined by the market, and what the market is willing to pay for such features/ similarities/ improvements etc. All adjustments are derived from the market.

All comparables are considered to be overall C3 condition and Q3 quality of construction. For purposes of this report, due to assignment type, exterior only, the subject is assumed to be in average condition and have an overall C3 condition and Q3 quality of construction.

No age adjustments were calculated when there was not a difference of 5 +/- years of the subject's age.

No GLA adjustments were warranted when there was not a difference of 100 +/-SF the subject's GLA. GLA adjustments were calculated at $65.00 per SF difference of the subject's GLA where there was a difference of 100 +/- SF. This is not considered distorting, and necessary to utilize these comparables for credible results. Appraiser utilized the best available comparables, requests for additional comparables would result in sales outside of the subject's immediate market area, sales over 12 months old, and sales which do not represent similar buying alternatives.

Sales comp 1 was given the most weight, as it was a model match and year match to the subject property.

Sales comp 3 had significant weight due to age, design/style, although smaller in GLA, occurred within 3 months of effective date.

Sales comp 2 had the least amount of weight due to being over 6 months old. A time/marketing condition was warranted. Not considered distorting and necessary for credible results.

All adjustments were desrcibed in the original appraisal, which were based on extensive research by the appraiser of closed sales 1-15 months prior to effective date of this appraisal and what a typical buyer is willing to spend on differences such as location, design/style, gross living area, bed/bath count. age, amenities, view.

No financing concessions were noted for any of the comparable properties utilized.

No adjustments were warranted for minimal features such as furnishings, fireplaces, sheds, exterior storage, porches, patios, decks, fences, etc.

All 3 closed sales are given consideration in the Final Opinion of value. The mean is $381,333 and final opinion of value is $381,000.

Subject is appraising slightly below the predominate neighborhood values of $385,000. However, not considered under built, and has no adverse affect on marketability.

Adjustments are based on paring of sales, where market data is unavailable or inconclusive a fraction of cost may have been used. The adjustments in the sales comparison approach are rounded to the nearest hundred. Minimal features such as fences, storage areas, sheds, and patios are considered to have no contributory value to the overall opinion of value and are excluded from the sales comparison approach.

Case 2:09-md-02047-EEF-MBN Document 22363-60 Filed 11/19/19 Page 87 of 110
Case 4:11-cv-22408-KMW Document 20-14 Entered on FLSD Docket 03/13/2019 Page 32 of
455

# Supplemental Addendum

File No. VALU-18-12-1452

| Borrower | Gody, Anthony & Candace | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10842 Tiberio Dr | | | | | | |
| City | Fort Myers | County | Lee | State | FL | Zip Code | 33913 |
| Lender/Client | Integra Realty Resources (IRR) - Miami | Palm Beach | | | | | | |

The documentation necessary to arrive at the value is considered in this appraisal report. This was an exterior inspection only, as mentioned throughout report. Comparable sales were chosen for their similar highest and best uses as outlined within the report.  All sales were analyzed and compared.

My analysis, opinions, and conclusions were developed, and this report has been prepared, in conformity with USPAP.

Appraiser utilized at least 3 supported, reliable resources:
Local MLS, multiple listing service
Lee County Property Appraiser
Realist.com

Of the three approaches the value conclusion relies on the Sales Comparison approach.  Due to the assignment type, exterior inspection only,  appraiser did not develop cost approach or income approach.

The documentation necessary to arrive at the value is considered in this appraisal report. Comparable sales were chosen for their similar highest and best uses as outlined within the report.  All sales were analyzed and compared.

My analysis, opinions, and conclusions were developed, and this report has been prepared, in conformity with USPAP.

**• Market Conditions Addendum to the Appraisal Report : Foreclosure/REO Sales in the Market**

The market continues to be stabilized, and in balance.

The predominate value is a compilation of closed sales within the last 12 months, and within a 2 mile radius of the subject.  Not all comparables are necessarily the same age, same GLA, or overall same condition as the subject.

Appraiser has utilized the best available comparable sales which occurred within 1-12 months prior of effective date of this appraisal, and within 1-2 miles of the subject property,  and which represent the most similar buying alternatives.

**• Exterior-Only : Site - Adverse Conditions or External Factors**

The subject property has city water and utilities  This is common/ typical in the subject's immediate neighborhood as well as market area and has no adverse affect on market value or marketability.

No apparent adverse easements, encroachments, environmental conditions etc. noted, however the appraiser is not a surveyor.

**APPRAISER IS NOT A HOME INSPECTOR.**

**A HOME INSPECTOR IS RECOMMENDED FOR ANY INTERESTED PARTIES.**

The subject is located in FEMA declared disaster area:  As of effective date of this report, appraiser  visually saw the subject property slightly from the road.  The subject property is located in a deed restricted development, and due to privacy rights, and assignment type per client reuest, this was an exterior inspection only.  Appraiser can not confirm if the subject had any damage due to being in a fema declared disaster area.  However, appraiser did mot visually see any damage from the exterior inspection from the road only.

The subject property is not located in a flood zone however, has no adverse effect on value or marketability. Appraiser utilized comparable properties in the same flood zone as the subject property.

**• Exterior-Only : Improvements - Additional Features**

This was an exterior inspection only, per client request.

According to prior MLS listing, which appraiser has attached as an addendum to this appraisal, as well as property records recorded with Lee County Property Appraiser, the subject is a ranch style home built in 2006 with 3 bedrooms, and 2.1 baths, kitchen,  living room, dining area, and 2 car attached garage.  The subject also has a below ground pool/ spa package with screen enclosure.

According to Lee County Property Appraiser, the subject is overall 2246 sf under air.  This was an exterior inspection only.  For purposes of this report, Appraiser is basing the subject property's sf at 2246 sf under air.

Appraiser has attached a copy of the record detail as recorded with Lee County Property Appraiser.

The subject property  is located in a Planned Unit Development with mandatory HOA dues.  This is common/typical in the subject's immediate market area and not considered adverse to market or appeal.  All comps utilized are in similar/same deed restricted communities.
**EXTERIOR IMPROVEMENTS:**

**No contributory value was given for porches, fireplaces,patios, decks, fences, gazebos, ext storage sheds etc.**

Serial# C4904295
esign.alamode.com/verify

**Supplemental Addendum**

File No. VALU-18-12-1452

| Borrower | Gody, Anthony & Candace | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 10842 Tiberio Dr | | | | | |
| City | Fort Myers | County | Lee | State | FL | Zip Code | 33913 |
| Lender/Client | Integra Realty Resources (IRR) - Miami | Palm Beach | | | | | |

**Contributory value was given for the below ground pool and spa package as recorded on Lee County Property Appraiser.**

**Exterior Inspection Only:**

**Per client request, this was an exterior inspection only from the road. Due to property rights, appraiser viewed the property from the road only.**

**Appraiser relied on mls records, Lee County Property Appraiser records to determine physical characteristics of the subject property.**

**It is assumed for purposes of this report that the subject property is in average condition and is an overall C3 condition.**

**Appraiser has attached a copy of the subject property's record detail as recorded with Lee County Property Appraiser.**

**Extraordinary Assumption**

An extraordinary assumption is defined as: "as assignment-specific assumption as of the effective date regarding uncertain information used in the analysis which, if found to be false, could alter the appraiser's opinions or conclusions".

We have only inspected the subject property from the street and have not performed a thorough interior and exterior inspection. The opinion of value is based on the subject property being in average condition as of the effective date.

**Hypothetical Condition**

A hypothetical condition is defined as: "a condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis."

The opinion of value is based on the Hypothetical Condition  the value of the subject property is not affected by any detrimental conditions including Chinese drywall.

Serial# C4904295
esign.alamode.com/verify

**Flood Map**

| Borrower | Gody, Anthony & Candace | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 10842 Tiberio Dr | | | | | |
| City | Fort Myers | County | Lee | State | FL | Zip Code 33913 |
| Lender/Client | Integra Realty Resources (IRR) - Miami | Palm Beach | | | | | |



**Location Map**

| Borrower | Gody, Anthony & Candace | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 10842 Tiberio Dr | | | | | | |
| City | Fort Myers | County | Lee | | State | FL | Zip Code | 33913 |
| Lender/Client | Integra Realty Resources (IRR) - Miami | Palm Beach | | | | | | |



Serial# C4904295
esign.alamode.com/verify

**Plat Map Aerial View**



# Tax Card

Lee County Tax Collector - Print Results                                            https://www.leetc.com/ncp/search_detail.asp



**Real Property Information**



| Account | Tax Year | Status |
|---|---|---|
| 02-45-25-P3-0200A.0180 | 2018 | PAID |
| **Original Account** | **Instrument No** | |
| 02-45-25-P3-0200A.0180 | 2007000131090 | |

**Owner**

GODY ANTHONY T + CANDACE D

| Physical Address | Mailing Address |
|---|---|
| 10842 TIBERIO DR<br>FORT MYERS FL  33913 | 10842 TIBERIO DR<br>FORT MYERS FL  33913<br>USA |

**Legal Description**

VILLA CAPRI AT PELICAN PRESERVE TRACT T DESC IN INST #2006-126026 BLK A LOT 18

Outstanding Balance as of 1/25/2019              $0.00

**Additional Options:**

- eNotify
- Tax Detail
- Payments Made
- All Unpaid Taxes
- Tax History
- Link to Property Appraiser's Tax Estimator

See also:

Property Appraiser

Clerk of Court

1 of 1                                                                                            /2019, 2:34 PM

Serial# C4904295
esign.alamode.com/verify

## Record Detail – Page 1

Lee County Property Appraiser - Online Parcel Inquiry          https://www.leepa.org/Display/DisplayParcel.aspx?FolioID=10524779&...



### Property Data
**STRAP: 02-45-25-P3-0200A.0180     Folio ID: 10524779**

**Owner Of Record - Tenants by Entirety**

GODY ANTHONY T + CANDACE D
10842 TIBERIO DR
FORT MYERS FL 33913

**Site Address**

10842 TIBERIO DR
FORT MYERS FL 33913

**Property Description**
Do not use for legal documents!

VILLA CAPRI AT PELICAN PRESERVE
TRACT T DESC IN INST #2006-126026
BLK A LOT 18

**Classification / DOR Code**

SINGLE FAMILY RESIDENTIAL / 01

**[ Tax Map Viewer ] [ View Comparables ]**

**[ Pictometry Aerial Viewer ]**

**Current Working Values**

| Just | 301,195 | As Of | 07/16/2018 |

**Attributes**

| Land Units Of Measure | LT |
| Units | 1.00 |
| Total Number of Buildings | 1 |
| Total Bedrooms / Bathrooms | 3 / 2.5 |
| Total Living Area | 2,246 |
| 1st Year Building on Tax Roll | 2006 |
| Historic District | No |

**Image of Structure**

‹ Photo Date March of 2008 ›    ☐ View other photos

Last Inspection Date: 02/26/2018

### Property Value History

| Tax Year | Just | Market Assessed | Capped Assessed | Taxable |
|----------|------|-----------------|-----------------|---------|
| 2006 | 38,450 | 38,450 | 38,450 | 38,450 |
| 2007 | 315,960 | 315,960 | 315,960 | 315,960 |
| 2008 | 322,790 | 322,790 | 234,670 | 184,670 |
| 2009 | 152,180 | 152,180 | 152,180 | 102,180 |
| 2010 | 42,510 | 42,510 | 42,510 | 17,510 |
| 2011 | 28,010 | 28,010 | 28,010 | 3,010 |
| 2012 | 28,010 | 28,010 | 28,010 | 3,010 |
| 2013 | 261,681 | 261,681 | 254,148 | 204,148 |
| 2014 | 270,219 | 270,219 | 257,960 | 207,960 |
| 2015 | 314,593 | 314,593 | 260,024 | 210,024 |
| 2016 | 309,965 | 309,965 | 261,844 | 211,844 |
| 2017 | 311,689 | 311,689 | 267,343 | 217,343 |
| 2018 | 301,195 | 301,195 | 272,957 | 222,957 |

The **Just** value is the total parcel assessment (less any considerations for the cost of sale). This is the closest value to *Fair Market Value* we produce and is dated as of January 1st of the tax year in question (F.A.C. 12D-1.002).

The **Market Assessed** value is the total parcel assessment (less any considerations for the cost of sale) based upon the assessment standard. Most parcels are assessed based either upon the *Highest and Best Use* standard or the *Present Use* standard (F.S. 193.011). For *Agriculturally Classified* parcels (or parts thereof), only agricultural uses are considered in the assessment (F.S. 193.461 (6) (a)). The difference between the *Highest and Best Use/Present Use* and the *Agricultural Use* is often referred to as the *Agricultural Exemption*.
(i.e. Market Assessed = Just – Agricultural Exemption)

The **Capped Assessed** value is the *Market Assessment* after any *Save Our Homes* or *10% Assessment Limitation* cap is applied. This assessment cap is applied to all properties and limits year-to-year assessment increases to either the *Consumer Price Index* or 3%, whichever is lower for Homestead properties OR 10% for non-Homestead properties.

The **Taxable** value is the *Capped Assessment* after exemptions (*Homestead, etc.*) are applied to it. This is the value that most taxing authorities use to calculate a parcel's taxes.
(i.e. Taxable = Capped Assessed – Exemptions)

Serial# C4904295
esign.alamode.com/verify

Form SCNLTR - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

# Record Detail – Page 2

Lee County Property Appraiser - Online Parcel Inquiry      https://www.leepa.org/Display/DisplayParcel.aspx?FolioID=10524779&...

## Exemptions

| Exemption | Amount |
|---|---|
| Homestead | 25,000.00 |
| Additional | 25,000.00 |

## Values (2018 Tax Roll)

| Property Values | | Attributes | |
|---|---|---|---|
| Just | 301,195 | Land Units Of Measure | LT |
| Assessed | 301,195 | Units | 1.00 |
| Portability Applied | 0 | Total Number of Buildings | 1 |
| Cap Assessed | 272,957 | Total Bedrooms / Bathrooms | 3 / 2.5 |
| Taxable | 222,957 | Total Living Area | 2,246 |
| Cap Difference | 28,238 | 1st Year Building on Tax Roll | 2006 |
| | | Historic District | No |

## Taxing Authorities

### CITY OF FORT MYERS / 090

| Name / Code | Category | Mailing Address |
|---|---|---|
| LEE CO GENERAL REVENUE / 044 | County | Lee County Office of Management & Budget PO BOX 398 FORT MYERS FL 33902-0398 |
| LEE CO LIBRARY DIST / 052 | Dependent District | Lee County Office of Management & Budget PO BOX 398 FORT MYERS FL 33902-0398 |
| LEE CO HYACINTH CONTROL DIST / 051 | Independent District | RUSSELL BAKER 15191 HOMESTEAD RD LEHIGH ACRES FL 33971 |
| LEE CO MOSQUITO CONTROL DIST / 053 | Independent District | RUSSELL BAKER 15191 HOMESTEAD RD LEHIGH ACRES FL 33971 |
| WEST COAST INLAND NAVIGATION DIST / 098 | Independent District | Justin D. McBride EXECUTIVE DIRECTOR 200 MIAMI AVE E VENICE FL 34285-2408 |
| CITY OF FORT MYERS / 031 | Municipal | CHRISTINE TENNEY BUDGET MANAGER PO DRAWER 2217 FORT MYERS FL 33902 |
| PUBLIC SCHOOL - BY LOCAL BOARD / 012 | Public Schools | AMI DESAMOURS BUDGET DEPARTMENT 2855 COLONIAL BLVD FORT MYERS FL 33966 |
| PUBLIC SCHOOL - BY STATE LAW / 013 | Public Schools | AMI DESAMOURS BUDGET DEPARTMENT 2855 COLONIAL BLVD FORT MYERS FL 33966 |
| CITY OF FORT MYERS FIRE RESCUE SERVICES / 189 | Special District | CHRISTINE TENNEY BUDGET MANAGER PO DRAWER 2217 FORT MYERS FL 33902 |
| CITY OF FORT MYERS RESIDENTIAL SOLID WASTE SERVICES / 196 | Special District | FABIAN BUSTOS 2925 DR MARTIN LUTHER KING JR BLVD FORT MYERS FL 33916 |
| GATEWAY SERVICES CDD / 043 | Special District | Inframark 210 N UNIVERSITY DR STE 702 CORAL SPRINGS FL 33071 |
| SFWMD-DISTRICT-WIDE / 110 | Water District | MICHELLE QUIGLEY 3301 GUN CLUB RD WEST PALM BEACH, FL 33406 |
| SFWMD-EVERGLADES CONSTRUCTION PROJECT / 084 | Water District | MICHELLE QUIGLEY 3301 GUN CLUB RD WEST PALM BEACH, FL 33406 |
| SFWMD-OKEECHOBEE BASIN / 308 | Water District | MICHELLE QUIGLEY 3301 GUN CLUB RD WEST PALM BEACH FL 33406 |

## Sales / Transactions

    /2019, 2:33 PM

Serial# C4904295
esign.alamode.com/verify

Form SCNLTR - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

# Record Detail – Page 3

Lee County Property Appraiser - Online Parcel Inquiry      https://www.leepa.org/Display/DisplayParcel.aspx?FolioID=10524779&...

| Sale Price | Date | OR Number | Type | Description | Vacant/Improved |
|---|---|---|---|---|---|
| 479,500.00 | 04/19/2007 | 2007000131090 | 06 | **Sales qualified and included for sales ratio analysis**<br>Qualified (Fair Market Value / Arms Length / One STRAP #) | I |
| 13,094,500.00 | 02/16/2001 | 3368/4894 | 02 | **Sales qualified but excluded from sales ratio analysis**<br>Qualified (Multiple STRAP # / 06-091) | V |
| 11,308,400.00 | 06/14/1999 | 3133/142 | 02 | **Sales qualified but excluded from sales ratio analysis**<br>Qualified (Multiple STRAP # / 06-091) | V |
| 100.00 | 07/24/1995 | 2626/3647 | 04 | **Sales disqualified as a result of examination of the deed**<br>Disqualified (Multiple STRAP # - 01,03,04,07) | V |
| 3,570,800.00 | 07/01/1991 | 2232/3507 | 04 | **Sales disqualified as a result of examination of the deed**<br>Disqualified (Multiple STRAP # - 01,03,04,07) | V |

## Building/Construction Permit Data

| Permit Number | Permit Type | Date |
|---|---|---|
| BLD2014-02259 | Shutter, Awning | 08/22/2014 |
| BLD2007-00746 | Screen Room / Enclosure | 03/22/2007 |
| PSP2007-00027 | Pool & Spa | 03/13/2007 |
| BLD2005-03503 | Building New Construction | 01/13/2006 |

**IMPORTANT INFORMATION: THIS MAY NOT BE A COMPREHENSIVE OR TIMELY LISTING OF PERMITS ISSUED FOR THIS PROPERTY.**

Note: The Lee County Property Appraiser's Office does not issue or maintain any permit information. The Building/Construction permit data displayed here represents only those records this Office may find necessary to conduct Property Appraiser business. Use of this information is with the understanding that in no way is this to be considered a comprehensive listing of permits for this or any other parcel.

The Date field represents the date the property appraiser received information regarding permit activity; it may or not represent the actual date of permit issuance or completion.

Full, accurate, active and valid permit information for parcels can only be obtained from the appropriate permit issuing agency.

## Parcel Numbering History ⓘ

| Prior STRAP | Prior Folio ID | Renumber Reason | Renumber Date |
|---|---|---|---|
| 02-45-25-P2-0200A.0180 | N/A | Delete Parcel-add back to roll under new STRAP(same value) | 04/28/2006 |
| 02-45-25-P2-00002.0010 | 10255059 | Split (From another Parcel) | 04/28/2006 |
| 02-45-25-P2-00002.0010 | 10583279 | Split (From another Parcel) | 04/28/2006 |

## Location Information

| Township | Range | Section | Block | Lot |
|---|---|---|---|---|
| 45 | 25E | 02 | 0200A | 0180 |
| **Municipality** | | **Latitude** | | **Longitude** |
| City of Fort Myers | | 26.58651 | | -81.78236 |

**Links**

View Parcel on Google Maps          View Parcel on GeoView

## Solid Waste (Garbage) Roll Data

| Solid Waste District | Roll Type | Category | Unit / Area | Tax Amount |
|---|---|---|---|---|
| 009 - City of Fort Myers | R - Residential Category | | 1 | 18.72 |

## Flood and Storm Information

## Appraisal Details (2018 Tax Roll)

| Land | | | |
|---|---|---|---|
| **Land Tracts** | | | |
| **Use Code** | **Use Code Description** | **Number of Units** | **Unit of Measure** |

Form SCNLTR - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Serial# C4904295
esign.alamode.com/verify

### Record Detail – Page 4

Lee County Property Appraiser - Online Parcel Inquiry — https://www.leepa.org/Display/DisplayParcel.aspx?FolioID=10524779&...



| 140 | Single Family Residential, Golf Course | 1.00 | Lot |

**Land Features**

| Description | Year Added | Units |
| --- | --- | --- |
| IRRIGATION SYSTEM LAWN | 2006 | 1 |

**Buildings**

**Building 1 of 1**

**Building Characteristics**

| Improvement Type | Model Type | Stories | Living Units |
| --- | --- | --- | --- |
| 102 - Ranch | 1 - single family residential | 1.0 | 1 |
| **Bedrooms** | **Bathrooms** | **Year Built** | **Effective Year Built** |
| 3 | 2.5 | 2006 | 2006 |

**Building Subareas**

| Description | Heated / Under Air | Area (Sq Ft) |
| --- | --- | --- |
| BAS - BASE | Y | 2,246 |
| FGR - FINISHED GARAGE | N | 441 |
| FOP - FINISHED OPEN PORCH | N | 93 |
| FSP - FINISHED SCREEN PORCH | N | 71 |
| PS1 - 1 STORY SCREEN ENCL | N | 1,005 |

**Building Features**

| Description | Year Added | Units |
| --- | --- | --- |
| PATIO - CONCRETE | 2007 | 612 |
| POOL - RESIDENTIAL | 2007 | 392 |
| JACUZZI - TYPE B | 2007 | 1 |
| POOL HEATER | 2007 | 1 |

**Building Front Photo**

**Building Footprint**

Photo Date: March of 2008

## Appraisal Details (Current Working Values)

**Land**

**Land Tracts**

| Use Code | Use Code Description | Number of Units | Unit of Measure |
| --- | --- | --- | --- |
| 140 | Single Family Residential, Golf Course | 1.00 | Lot |

**Land Features**

| Description | Year Added | Units |
| --- | --- | --- |

Serial# C4904295
esign.alamode.com/verify
Form SCNLTR - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

# Record Detail – Page 5

Lee County Property Appraiser - Online Parcel Inquiry     https://www.leepa.org/Display/DisplayParcel.aspx?FolioID=10524779&...



| IRRIGATION SYSTEM LAWN | | 2006 | 1 |

## Buildings
### Building 1 of 1
#### Building Characteristics

| Improvement Type | Model Type | Stories | Living Units |
|---|---|---|---|
| 102 - Ranch | 1 - single family residential | 1.0 | 1 |

| Bedrooms | Bathrooms | Year Built | Effective Year Built |
|---|---|---|---|
| 3 | 2.5 | 2006 | 2006 |

#### Building Subareas

| Description | Heated / Under Air | Area (Sq Ft) |
|---|---|---|
| BAS – BASE | Y | 2,246 |
| FGR – FINISHED GARAGE | N | 441 |
| FOP – FINISHED OPEN PORCH | N | 93 |
| FSP – FINISHED SCREEN PORCH | N | 71 |
| PS1 – 1 STORY SCREEN ENCL | N | 1,005 |

#### Building Features

| Description | Year Added | Units |
|---|---|---|
| PATIO - CONCRETE | 2007 | 612 |
| POOL - RESIDENTIAL | 2007 | 392 |
| JACUZZI – TYPE B | 2007 | 1 |
| POOL HEATER | 2007 | 1 |

#### Building Front Photo     Building Footprint

**Photo Date: March of 2008**

Serial# C4904295
esign.alamode.com/verify
/2019, 2:33 PM

Form SCNLTR - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

## Subject's Original MLS Listing – Page 1



Matrix                                                          https://matrix.swflamls.com/Matrix/Printing/PrintOptions.aspx?c=AA...

Sam Schackow
Chapman & Associates Inc
samschack@yahoo.com
Ph (941) 356-2430

### Residential REALTOR Report with Photos



| General Information | | | |
|---|---|---|---|
| List Price: | $490,551 | ML# 200691697 | |
| MLS#: | 200691697 | Sold Price: | $479,421 |
| Address: | 10842 TIBERIO DR #18 | Status: | Sold (04/19/07) |
| | FORT MYERS, FL 33913 | | |
| GEO Area: | FM22 - Fort Myers City Limits | Property Class: | Residential |
| County: | Lee | Subdivision: | |
| Status Type: | New Construction | Development: | PELICAN PRESERVE |
| Sold Price/Sqft: | $213.17 | DOM: | 64 |
| Property ID: | 02452SP30200A0180 | CDOM: | 129 |
| Furnished: | Unfurnished | Bedrooms: | 3+Den |
| Approx. Living Area: | 2249 | Baths: | 3 (2 1) |
| Approx.Total Area: | 2858 | Year Built: | 2006 |
| Building Design: | Single Family | Virtual Tour URL: | http://ts.rtvpix.com/tour/BU/tour.view.lt.php?utl=BU-2898-2YF12L-01 |
| Virtual Tour URL: | | Listing Broker: | WCI Realty Inc |

**Detailed Property Information**                                                                ML# 200691697
**Property Information:** Builder spec, new construction. Tiberio neighborhood in Pelican Preserve. This Madrid model features 3 bedrooms plus den, 2.5 baths, and 2,249 sq. ft. of living area. The Madrid model also features a premium kitchen package and upgrades in baths. Pelican Preserve features a vast array of amenities set amid lakes and natural preserves. Outstanding amenity complex with indoor, outdoor pools, movie theatre, fitness center and full service restaurant. Golfers will enjoy the championship course by renowned architect Chip Powell. Note: the virtual tour loaded is of the Madrid model and not this particular home.

| | | | |
|---|---|---|---|
| Ownership: | Single Family | Pets: | No Approval Needed |
| Lot Size: | .20 (acres) / 8,886 (sqft) | Pets - Max. Weight: | |
| Cable: | Yes | Pets - Max. Number: | |
| | | Pets - Breed Limits: | |
| | | Pets - Other Limits: | |
| Guest House L.A.: | | Approx. Lot Size: | 8888x8888x8888x8888 |
| Guest House Desc: | | Gulf Access Type: | |
| Elementary School: | | Windows: | Other |
| Middle School: | | Exterior Finish: | |
| High School: | | Community Type: | Gated, Golf Course |
| Flooring: | Carpet, Tile | Golf Type: | |
| Cooling: | Central Electric | Floor Plan Type: | |
| Kitchen: | | Heating: | Central Electric |
| View: | Lake | Gas YN: | |
| Private Pool: | No | Gas Description: | |
| Private Spa: | No | | |
| Amenities: | BBQ - Picnic, Bike And Jog Path, Business Center, Clubhouse, Community Room, Exercise Room, Golf Course, Hobby Room, Library, Putting Green, Streetlight, Tennis Court, Underground Utility | | |
| Bedroom: | | | |
| Dining: | | | |
| Equipment: | Auto Garage Door, Dishwasher, Disposal, Dryer, Microwave, Smoke Detector, Washer | | |
| Exterior Features: | | | |
| Interior Features: | Cable Prewire, Foyer, Pantry, Smoke Detectors | | |
| Master Bath: | | | |
| Additional Rooms: | Great Room, Laundry In Residence, Open Lanai/Porch | | |
| Parking: | | | |
| Road: | | | |
| Restrictions: | Deeded | | |
| Security: | Gated, Guard At Gate | | |
| Storm Protection: | Shutters | | |

**Unit/Bldg.Information**                                                                        ML# 200691697
| | | | | | |
|---|---|---|---|---|---|
| Building #: | 0 | Units in Complex: | 0 | Builder Product: | Yes |
| Total Floors in Property: | 1 | Building Style: | | | |
| Total Building Floors: | | Construction | Concrete Block | | |
| Unit Floor: | 0 | Roof: | Tile | | |
| Units in Building: | 0 | Elevator: | None | | |
| Garage: | Attached | Carport: | | | |
| # Garage Spaces: | 2 | # Carport Spaces: | 0 | | |

**Lot Information**                                                                              ML# 200691697
| | | | |
|---|---|---|---|
| Waterfront: | Yes | Waterfront Descrip.: | Lake |
| Gulf Access: | No | Boat/Dock Info: | |
| Canal Width: | | Water: | Central |
| Rear Exposure: | W | Sewer: | Central |
| Sec/Town/Rng: | 0// | Irrigation: | Central |
| Legal Unit: | N/A | Lot Description: | Regular |
| Subdivision #: | | Lot: | 0 |
| Zoning: | Res | Block/Bldg: | 0 |
| Legal Desc: | Pelican Preserve; Tiberio Neighborhood; Lot 18; Madrid Model | | |

**Room Information**                                                                             ML# 200691697
| Room Type | Room Dimensions | Room Type | Room Dimensions | Room Type | Room Dimensions | Room Type | Room Dimensions |
|---|---|---|---|---|---|---|---|
| Living Room | 12 x 17 | Lanai | 11 x 8 | Kitchen | 11 x 15 | Garage | 20 x 20 |
| Family Room | 14 x 18 | Dining Room | 9 x 13 | Den | 11 x 14 | Bedroom | 11 x 11 |
| Bedroom | 11 x 11 | Master Bedroom | 16 x 13 | | | | |

**Financial/Transaction Information**                                                            ML# 200691697
| | | | |
|---|---|---|---|
| Total Tax Bill: | | HOA Description: | |
| Tax Year: | 2006 | Association Mngmt Phone: | |
| Tax Desc: | City And County | | |
| Tax District Type: | Community Development District | Recurring Fees: | |
| | | HOA Fee: | $192 Monthly |

Serial# C4904295
esign.alamode.com/verify

Form SCNLTR - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

## Subject's Original MLS Listing – Page 2

Matrix     https://matrix.swflamls.com/Matrix/Printing/PrintOptions.aspx?c=AA...

| | | | |
|---|---|---|---|
| **Terms:** | Buyer Finance/Cash | **Master HOA Fee:** | $82 Monthly |
| **Possession:** | At Closing | **Condo Fee:** | $0 |
| **Approval:** | Application Fee | **Spec Assessment:** | $0 |
| **Management:** | | **Other Fee:** | $0 |
| **Maintenance:** | Cable, Irrigation Water, Security | **Land Lease:** | $0 |
| **Special Info:** | | **Annual Food & Beverage** | |
| **Num of Leases/Yr:** | 12 | **Minimum:** | |
| **Min. Days Of Lease:** | 30 | **Mandatory Club Fee:** | $0 |
| **Subject to FIRPTA:** | | **Rec. Lease Fee:** | $1,718 Annually |
| **Subject To Lease YN:** | | **Total Annual Recurring Fees:** | |
| **Lease Description:** | | | |
| **Lease Expiration Date:** | | **One Time Fees** | |
| | | **Mandatory Club Fee:** | $0 |
| | | **Land Lease:** | $0 |
| | | **Rec. Lease Fee:** | |
| | | **Other Fee:** | |
| | | **Spec Assessment:** | $0 |
| | | **Transfer Fee:** | $2,550 |
| | | **Application Fee:** | |
| | | **Total One Time Fees:** | |

**Office Information**          ML# 200691697

| | | | |
|---|---|---|---|
| **Office Code:** | FIKE | **Agent ID:** | 19179 |
| **Office Name:** | WCI Realty Inc | **Agent Name:** | Mike Curtin |
| **Office Address:** | 10571 Veneto Dr. | **Agent Phone:** | (239) 985-1600 |
| | Fort Myers FL, 33913 | **Agent Fax:** | |
| **Office Ph:** | (239) 985-1600 | **Agent Email:** | mlsdata@wcicommunities.com |
| **Office Fax:** | (239) 985-1602 | | |
| **Board:** | Florida Gulf Coast | | |

**Settlement Agent Information**

| | | | |
|---|---|---|---|
| **Name:** | | **Phone:** | |
| **Address:** | | **Email:** | |

**Listing Information**          ML# 200691697

| | | | |
|---|---|---|---|
| **Owner Name:** | WCI Communities, Inc. | | |
| **Bonus Amount:** | | **Appointment Req.:** | Yes |
| **Bonus Amount Description:** | | **Appointment Phone:** | (239) 985-1600 |
| **Auction:** | | | |
| **Foreclosed (REO):** | No | **Variable Rate Comm.:** | No |
| **Potential Short Sale:** | No | **Target Marketing:** | |
| **Short Sale Comp:** | | **Listing on Internet:** | Yes |
| **Buyer Agent Comp:** | 3% | **Address on Internet:** | Yes |
| **Trans Broker Comp:** | 3% | **Blogging:** | No |
| **Non-Rep Comp:** | 0% | **AVM:** | No |
| **Joint Agency:** | | | |
| **Listing Date:** | 12/11/06 | **Contract Closing Date** | |
| **Date Expiration:** | | | |
| **Source Of Measurements:** | | | |
| **Internet Sites:** | | | |
| **Showing Inst.:** | Call Listing Office | | |
| **Listing Type:** | Limited Services | | |
| **Is there a sign on the property with Seller contact information:** | | No | |
| **Contact Seller for showing:** | Yes | | |
| **Listing Broker available on contract presentation and negotiations:** | | No | |
| **Listing Broker will perform post contract services:** | | Yes | |
| **Limited Service Listing:** | | | |

**Confidential Information**          ML# 200691697
Agents: For all showings and additional information, please contact sales office at 239-985-1600. Special incentives may apply. See sales office for details.

**Driving Directions**          ML# 200691697
I-75 to exit 136 (old 22). Head east on Colonial Boulevard for 1 mile to main entrance on right.

**Sold Information**          ML# 200691697

| | | | |
|---|---|---|---|
| **Selling Agent:** | Mike Curtin | **Selling Agent Phone:** | (239) 985-1600 |
| **Selling Office:** | WCI Realty Inc | **Selling Office Phone:** | (239) 985-1600 |
| **Seller Info On Sign:** | No | **Sell $ Per Sqft:** | $213.17 |
| **Sold Financing Type:** | Other | **Seller Concession Y:** | |

**Video and/or audio surveillance with recording capability may be in use on these premises. Conversations should not be considered private.**

The source of the foregoing property information is a database compilation of an organization that is a member of the Southwest Florida Multiple Listing Service. Each Southwest Florida Multiple Listing Service member organization owns the copyright rights in its respective proprietary database compilation, and reserves all such rights. Copyright © 2019. The foregoing information including, but not limited to, any information about the size or area of lots, structures, or living space, such as room dimensions, square footage calculations, or acreage is believed to be accurate, but is not warranted or guaranteed. This information should be independently verified before any person enters into a transaction based upon it.

Form SCNLTR - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Serial# C4904295
esign.alamode.com/verify

**License**



RICK SCOTT, GOVERNOR

JONATHAN ZACHEM, SECRETARY



## STATE OF FLORIDA
## DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION

### FLORIDA REAL ESTATE APPRAISAL BD

THE CERTIFIED RESIDENTIAL APPRAISER HEREIN IS CERTIFIED UNDER THE
PROVISIONS OF CHAPTER 475, FLORIDA STATUTES

## WILSON, SARAH DENISE

9409 IVY BROOK RUN 1305
FORT MYERS          FL 33913

LICENSE NUMBER: RD7689
**EXPIRATION DATE: NOVEMBER 30, 2020**
Always verify licenses online at MyFloridaLicense.com



Do not alter this document in any form.

This is your license. It is unlawful for anyone other than the licensee to use this document.

Serial# C4904295
esign.alamode.com/verify

## E&O Insurance – Page 1

# NAVIGATORS INSURANCE COMPANY

## THIS IS A CLAIMS MADE INSURANCE POLICY.

**THIS POLICY APPLIES ONLY TO THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD. ALL CLAIMS MUST BE REPORTED IN WRITING TO THE COMPANY DURING THE POLICY PERIOD OR WITHIN 60 DAYS AFTER THE END OF THE POLICY PERIOD.**

### PLEASE READ THIS POLICY CAREFULLY.

## REAL ESTATE PROFESSIONAL ERRORS AND OMISSIONS INSURANCE POLICY DECLARATIONS

POLICY NUMBER: PH17RELM01679IV          RENEWAL OF: PH16RELM01679IV

1.  **NAMED INSURED:**
    Valucentric LLC

2.  **ADDRESS:**
    1003 Mt Hermon rd Ste 201
    Salisbury, MD 21804

3.  **POLICY PERIOD:**    FROM: 09/19/2017        TO: 09/19/2018
    12:01 A.M. Standard Time at the address of the **Named Insured** as stated in Number 2 above.

4.  **LIMITS OF LIABILITY:**          $ 1,000,000          **Per Claim**

                                       $ 2,000,000          **Annual Aggregate**

5.  **DEDUCTIBLE:**    $ 10,000

6.  **PREMIUM:** $ 19,304.00
    **TAXES:**    $                    $

7.  **RETROACTIVE DATE:** 08/14/2014

NAV REL DEC (02 14)                    Page 1 of 2

**Navigators**
Insuring A World In Motion®

Serial# C4904295
esign.alamode.com/verify

8.   **FORMS ATTACHED:**

| | |
|---|---|
| NAV REL DEC | Real Estate Professionals Declarations |
| NAV REL NIC PF | Real Estate Professionals Policy |
| NAV REL 025 | Claims Expenses Inside the Limits of Liability |
| NAV REL 027 | Specified Entity Coverage |
| NAV REL 300 MD | Maryland Amendatory |
| MD PREM NOTICE | Notice to Applicants in Maryland Regarding Cancellation and Premium Recalculation |
| NAV-ML-002 | OFAC Endorsement |

**PROGRAM ADMINISTRATOR:**            **McGowan Program Administrators**
(A Division of McGowan & Company, Inc.)
**20595 Lorain Road, Suite 300**
**Fairview Park, OH 44126**
**(440) 333-6300**

By Acceptance of this policy the Insured agrees that the statements in the Declarations and the Application and any attachments hereto are the Insured's agreements and representations and that this policy embodies all agreements existing between the Insured and the Company or any of its representatives relating to this insurance.

---

**IN WITNESS WHEREOF, we have caused this policy to be signed by our President and Secretary.**

*Emily Miner*

[Emily Miner]
Secretary

*Stanley Adam Galanski*

[Stanley A. Galanski]
President


Insuring A World In Motion®

NAV REL DEC (02 14)                Page 2 of 2

Serial# C4904295
esign.alamode.com/verify

VALU-18-12-1452
File No.   VALU-18-12-1452

## UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM
(Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)

Condition Ratings and Definitions

C1

The improvements have been recently constructed and have not been previously occupied. The entire structure and all components are new and the dwelling features no physical depreciation.

Note: Newly constructed improvements that feature recycled or previously used materials and/or components can be considered new dwellings provided that the dwelling is placed on a 100 percent new foundation and the recycled materials and the recycled components have been rehabilitated/remanufactured into like-new condition. Improvements that have not been previously occupied are not considered "new" if they have any significant physical depreciation (that is, newly constructed dwellings that have been vacant for an extended period of time without adequate maintenance or upkeep).

C2

The improvements feature no deferred maintenance, little or no physical depreciation, and require no repairs. Virtually all building components are new or have been recently repaired, refinished, or rehabilitated. All outdated components and finishes have been updated and/or replaced with components that meet current standards. Dwellings in this category are either almost new or have been recently completely renovated and are similar in condition to new construction.

Note: The improvements represent a relatively new property that is well maintained with no deferred maintenance and little or no physical depreciation, or an older property that has been recently completely renovated.

C3

The improvements are well maintained and feature limited physical depreciation due to normal wear and tear. Some components, but not every major building component, may be updated or recently rehabilitated. The structure has been well maintained.

Note: The improvement is in its first-cycle of replacing short-lived building components (appliances, floor coverings, HVAC, etc.) and is being well maintained. Its estimated effective age is less than its actual age. It also may reflect a property in which the majority of short-lived building components have been replaced but not to the level of a complete renovation.

C4

The improvements feature some minor deferred maintenance and physical deterioration due to normal wear and tear. The dwelling has been adequately maintained and requires only minimal repairs to building components/mechanical systems and cosmetic repairs. All major building components have been adequately maintained and are functionally adequate.

Note: The estimated effective age may be close to or equal to its actual age. It reflects a property in which some of the short-lived building components have been replaced, and some short-lived building components are at or near the end of their physical life expectancy; however, they still function adequately. Most minor repairs have been addressed on an ongoing basis resulting in an adequately maintained property.

C5

The improvements feature obvious deferred maintenance and are in need of some significant repairs. Some building components need repairs, rehabilitation, or updating. The functional utility and overall livability is somewhat diminished due to condition, but the dwelling remains useable and functional as a residence.

Note: Some significant repairs are needed to the improvements due to the lack of adequate maintenance. It reflects a property in which many of its short-lived building components are at the end of or have exceeded their physical life expectancy but remain functional.

C6

The improvements have substantial damage or deferred maintenance with deficiencies or defects that are severe enough to affect the safety, soundness, or structural integrity of the improvements. The improvements are in need of substantial repairs and rehabilitation, including many or most major components.

Note: Substantial repairs are needed to the improvements due to the lack of adequate maintenance or property damage. It reflects a property with conditions severe enough to affect the safety, soundness, or structural integrity of the improvements.

Quality Ratings and Definitions

Q1

Dwellings with this quality rating are usually unique structures that are individually designed by an architect for a specified user. Such residences typically are constructed from detailed architectural plans and specifications and feature an exceptionally high level of workmanship and exceptionally high-grade materials throughout the interior and exterior of the structure. The design features exceptionally high-quality exterior refinements and ornamentation, and exceptionally high-quality interior refinements. The workmanship, materials, and finishes throughout the dwelling are of exceptionally high quality.

Q2

Dwellings with this quality rating are often custom designed for construction on an individual property owner's site. However, dwellings in this quality grade are also found in high-quality tract developments featuring residence constructed from individual plans or from highly modified or upgraded plans. The design features detailed, high quality exterior ornamentation, high-quality interior refinements, and detail. The workmanship, materials, and finishes throughout the dwelling are generally of high or very high quality.

Serial# C4904295
esign.alamode.com/verify

## UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM
(Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)

Quality Ratings and Definitions (continued)

Q3

Dwellings with this quality rating are residences of higher quality built from individual or readily available designer plans in above-standard residential tract developments or on an individual property owner's site. The design includes significant exterior ornamentation and interiors that are well finished. The workmanship exceeds acceptable standards and many materials and finishes throughout the dwelling have been upgraded from "stock" standards.

Q4

Dwellings with this quality rating meet or exceed the requirements of applicable building codes. Standard or modified standard building plans are utilized and the design includes adequate fenestration and some exterior ornamentation and interior refinements. Materials, workmanship, finish, and equipment are of stock or builder grade and may feature some upgrades.

Q5

Dwellings with this quality rating feature economy of construction and basic functionality as main considerations. Such dwellings feature a plain design using readily available or basic floor plans featuring minimal fenestration and basic finishes with minimal exterior ornamentation and limited interior detail. These dwellings meet minimum building codes and are constructed with inexpensive, stock materials with limited refinements and upgrades.

Q6

Dwellings with this quality rating are of basic quality and lower cost; some may not be suitable for year-round occupancy. Such dwellings are often built with simple plans or without plans, often utilizing the lowest quality building materials. Such dwellings are often built or expanded by persons who are professionally unskilled or possess only minimal construction skills. Electrical, plumbing, and other mechanical systems and equipment may be minimal or non-existent. Older dwellings may feature one or more substandard or non-conforming additions to the original structure

Definitions of Not Updated, Updated, and Remodeled

Not Updated

Little or no updating or modernization. This description includes, but is not limited to, new homes.

Residential properties of fifteen years of age or less often reflect an original condition with no updating, if no major components have been replaced or updated. Those over fifteen years of age are also considered not updated if the appliances, fixtures, and finishes are predominantly dated. An area that is 'Not Updated' may still be well maintained and fully functional, and this rating does not necessarily imply deferred maintenance or physical/functional deterioration.

Updated

The area of the home has been modified to meet current market expectations. These modifications are limited in terms of both scope and cost.

An updated area of the home should have an improved look and feel, or functional utility. Changes that constitute updates include refurbishment and/or replacing components to meet existing market expectations. Updates do not include significant alterations to the existing structure.

Remodeled

Significant finish and/or structural changes have been made that increase utility and appeal through complete replacement and/or expansion.

A remodeled area reflects fundamental changes that include multiple alterations. These alterations may include some or all of the following: replacement of a major component (cabinet(s), bathtub, or bathroom tile), relocation of plumbing/gas fixtures/appliances, significant structural alterations (relocating walls, and/or the addition of) square footage). This would include a complete gutting and rebuild.

Explanation of Bathroom Count

Three-quarter baths are counted as a full bath in all cases. Quarter baths (baths that feature only a toilet) are not included in the bathroom count. The number of full and half baths is reported by separating the two values using a period, where the full bath count is represented to the left of the period and the half bath count is represented to the right of the period.

Example:
3.2 indicates three full baths and two half baths.

Serial# C4904295
esign.alamode.com/verify

# UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM

(Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)

Abbreviations Used in Data Standardization Text

| Abbreviation | Full Name | Fields Where This Abbreviation May Appear |
|---|---|---|
| ac | Acres | Area, Site |
| AdjPrk | Adjacent to Park | Location |
| AdjPwr | Adjacent to Power Lines | Location |
| A | Adverse | Location & View |
| ArmLth | Arms Length Sale | Sale or Financing Concessions |
| ba | Bathroom(s) | Basement & Finished Rooms Below Grade |
| br | Bedroom | Basement & Finished Rooms Below Grade |
| B | Beneficial | Location & View |
| Cash | Cash | Sale or Financing Concessions |
| CtySky | City View Skyline View | View |
| CtyStr | City Street View | View |
| Comm | Commercial Influence | Location |
| c | Contracted Date | Date of Sale/Time |
| Conv | Conventional | Sale or Financing Concessions |
| CrtOrd | Court Ordered Sale | Sale or Financing Concessions |
| DOM | Days On Market | Data Sources |
| e | Expiration Date | Date of Sale/Time |
| Estate | Estate Sale | Sale or Financing Concessions |
| FHA | Federal Housing Authority | Sale or Financing Concessions |
| GlfCse | Golf Course | Location |
| Glfvw | Golf Course View | View |
| Ind | Industrial | Location & View |
| in | Interior Only Stairs | Basement & Finished Rooms Below Grade |
| Lndfl | Landfill | Location |
| LtdSght | Limited Sight | View |
| Listing | Listing | Sale or Financing Concessions |
| Mtn | Mountain View | View |
| N | Neutral | Location & View |
| NonArm | Non-Arms Length Sale | Sale or Financing Concessions |
| BsyRd | Busy Road | Location |
| o | Other | Basement & Finished Rooms Below Grade |
| Prk | Park View | View |
| Pstrl | Pastoral View | View |
| PwrLn | Power Lines | View |
| PubTrn | Public Transportation | Location |
| rr | Recreational (Rec) Room | Basement & Finished Rooms Below Grade |
| Relo | Relocation Sale | Sale or Financing Concessions |
| REO | REO Sale | Sale or Financing Concessions |
| Res | Residential | Location & View |
| RH | USDA - Rural Housing | Sale or Financing Concessions |
| s | Settlement Date | Date of Sale/Time |
| Short | Short Sale | Sale or Financing Concessions |
| sf | Square Feet | Area, Site, Basement |
| sqm | Square Meters | Area, Site |
| Unk | Unknown | Date of Sale/Time |
| VA | Veterans Administration | Sale or Financing Concessions |
| w | Withdrawn Date | Date of Sale/Time |
| wo | Walk Out Basement | Basement & Finished Rooms Below Grade |
| wu | Walk Up Basement | Basement & Finished Rooms Below Grade |
| WtrFr | Water Frontage | Location |
| Wtr | Water View | View |
| Woods | Woods View | View |

Other Appraiser-Defined Abbreviations

| Abbreviation | Full Name | Fields Where This Abbreviation May Appear |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

# Anthony M. Graziano, MAI, CRE

**Integra Realty Resources**
Miami/Palm Beach

Dadeland Centre
9155 S. Dadeland Boulevard
Suite 1208
Miami, FL 33156

T 305.670.0001
F 305.670.2276

irr.com

## Experience

Senior Managing Director of Integra Realty Resources – Miami/Palm Beach.

Mr. Graziano has actively counseled and advised clients on the sale, leasing, valuation, management, and development of commercial real estate assets throughout the northeast and southeast U.S. since 1992.

Mr. Graziano's professional perspective is a blend of his experience and educational background which includes formal training in architecture, urban planning, macro and micro economics, real estate finance, institutional asset management, and land development. His market experience in sales, leasing, management, and valuation disciplines combine to bring practical real world answers to complex planning and development projects. He has been actively involved as a consultant and/or member of a consultant team on various major redevelopment and land use projects for public and private clients over the past 25+ years.

Mr. Graziano has specialized in consulting and valuation assignments for corporate and private clients on a wide array of complex issues related to estate and condemnation matters, title defects, environmental contamination/damages, air rights, partial and fractional interests, contract disputes, and mediation/arbitration disputes. Mr. Graziano's experience in these matters provides a comprehensive framework for effective strategic real estate consulting.

## Professional Activities & Affiliations

Advisory Board Member: Urban Land Institute (ULI) South Florida / Caribbean
Advisory Board Member: University of Miami M+RED Program
Member: Economic Roundtable - Miami Beacon Council (2012-present)
Board of Director: Integra Realty Resources, Inc. (2011-2016)
Chairman of the Board:    Integra Realty Resources, Inc. (2016-present)
Director: South Florida Chapter of the Appraisal Institute (2014-2016)
Board Member: Builders Association of South Florida (BASF) (2014-2016)
Subject Matter Expert (SME): Appraisal Practice Board, Appraisal Foundation
Member: Appraisal Institute (MAI) (2008-Present)
Member: Counselors of Real Estate (CRE) (2007-Present)
National Association of Realtors (REALTOR)
Miami Association of REALTORS Industry Analyst of the Year (2016)
Former Fellow: Royal Institute of Chartered Surveyors (FRICS) (2007-2014)
AI Leadership Development Advisory Council, March 1998 - February 2001
Lifetime Member: National Eagle Scout Association (NESA)

## Licenses

Florida, State-Certified General Real Estate Appraiser, RZ3510
New Jersey, State-Certified General Real Estate Appraiser, RG001261

## Education

University of Miami, Coral Gables, Florida 1988-1992
Degree: Bachelor of Science in Land Development and Planning, School of Architecture

New York University Real Estate Institute, New York, New York 1993-1996
Degree: Master of Science in Real Estate Development and Investment



amgraziano@irr.com    -    305.670.0001 x320

# Anthony M. Graziano, MAI, CRE

## Qualified Before Courts & Administrative Bodies

Qualified and accepted as an expert before:

US Bankruptcy Court (Newark, Southern District of Texas, Southern District of Florida)
US Federal District Court (Southern District of Florida)
FL Circuit Court (Miami-Dade, Broward, and Monroe Counties)
NJ State Tax Court
NJ Superior Court - Chancery Division
NJ Superior Court - Law Division
Various municipal planning and zoning boards throughout New Jersey and Florida
Various Taxing Authorities and Boards throughout New Jersey and Florida

**Integra Realty Resources**
**Miami/Palm Beach**

The Douglas Centre
2600 Douglas Road, Suite 801
Coral Gables, FL 33134

T 305.670.0001
F 305.670.2276

irr.com



amgraziano@irr.com    -    305.670.0001 x320

**Anthony M. Graziano, MAI, CRE, FRICS**
PROFERRED OR DISCLOSED EXPERT WITNESS REPORTS/SETTLEMENTS

| RETENTION DATE | ON BEHALF | IRR FILE # | COURT CASE NO. | COURT / VENUE | CASE NAME | RETAINED BY | TYPE OF CASE |
|---|---|---|---|---|---|---|---|
| 1/2015 | Defendant | 123-2015-0037 | 14-CV-22384 UU | Miami-Dade County, FL | Ray Benson & Maria Helena V. QBE Insurance Corporation | John A. Camp | Retrospective (2004-2006) analysis of market value claims against insurance company related to property |
| 9/2014 | Defendant | 123-2014-0194 | 13-03084CA 10 | 11th Judicial Circuit Miami-Dade, FL | Manuel Soltero V. Adorno & Yoss, LLP | Kaplan Zeena, LLP | Professional Liability suit against law firm and attorneys for malfeasance in litigation matter. |
| 2/2014 | Plaintiff | 123-2014-0030 | Settled | Carribean Islands | Rainmaker Development V. A&F Bahamas, etal | VLASAC & SHMARUK, LLC | Partnership Dispute between Joint Venture in Carribean development project (golf course, villas, and large-scale marina-commercial-retail development) |
| 11/2012 | Defendant | 123-2012-0140 | 42-2012-CA-001065 | Marion County, FL | CSX Transportation, Inc. V. Moshen Saranizi, Fatih Ann Safarazi, Proverbium Hldg, LLC, USA & George Albright | NeJame, La Fay, Jancha, Ahmed, Barker, Joshi & Moreno, P.A. | Condemnation of partial interest with damages |
| 7/2012 | Confidential | 123-2012-0076 | Confidential | Broward County, FL | Ft. Lauderdale-Hollywood Int'l Airport Expansion | White & Case, LLP | Value Diminution Study to assist public agency in good faith negotiations based on airport expansion. |
| 6/2012 | Defendant | 123-2012-0070 | 10-49616-CA-40 | Miami-Dade County, FL | CB Entertainment, LLC V. South Beach Ocean Parcel | Kubicki Draper, P.A. | Construction Damages claim |
| 12/2009 | Plaintiff | 109-2009-0443 | Dept. Justice File 90-11-3-5801 | Federal District Court of Virginia | United States vs. Atlantic Wood Industries, Inc. | U.S. Department of Justice | Damages/environmental contamination dispute between United States Navy and responsible party (Atlantic Wood Industries) |

**Anthony M. Graziano, MAI, CRE, FRICS**
IDENTIFIED EXPERT WITNESS TESTIMONY AT DEPOSITION and/or TRIAL

| RETENTION DATE | ON BEHALF | TRI FILE # | COURT/CASE NO. # | COURT / VENUE | CASE NAME | RETAINED BY | TYPE OF CASE |
|---|---|---|---|---|---|---|---|
| 6/2015 | Plaintiff | 123-2015-0170 | 15-008930-CA-01 | 11th Judicial Circuit Dade County, Florida (Hon. Peter R. Lopez) | Aaron Stauber & Aviva Stauber V. BH33, LLC | Piedra & Associates, P.A. | Motion to dismiss Lis Pendens in an action to enforce contractual specific performance clause |
| 1/2015 | Defendant | 123-2015-0037 | 14-CV-22384 UU | Southern District of Florida | Ray Benson & Maria Helena Campos V. QBE Insurance Corporation | John Campa | Retrospective (2004-2006) analysis of market value claims against insurance company related to property damage claims arising from Hurricane Wilma |
| 1/2014 | Plaintiff | 123-2015-0031 | Pending | Miami-Dade County | Igor Gel V. Yacht Club at Portofino Condo Association | Weil Quaranta McGovern, P.A. | Construction defect dispute related to water-intrusion and damage-detrimental conditions analysis of |
| 10/2014 | Plaintiff | 123-2014-0226 | 08-CA-408-P | Monroe County | Ocean Bank V. Lindback, Monroe County | Ocean Bank | Deficiency claim against borrower on real estate collateral in the Florida Keys (development site plus marine related improvements) |
| 10/2014 | Defendant | 123-2014-0215 | 11-24994 CA 06 | 11th Judicial Circuit Dade County, Florida | Palm-Aire Holdings V. JRGS Investments, LLC, Jorge Garcia-Serliff and Course Drive Investments, LLC | Cole, Scott & Kissane, P.A. | Partnership dispute over valuation issues proximal to a fractured condominium project (retrospective values), and operating agreement dispute |
| 7/2014 | Plaintiff | 123-2014-0194 | 13-016922 CACE 02 | 17th Judicial Circuit Broward County, Florida | Amalia I. Irlanda-Rivera V. Rivera Diagnostic Center, Inc., Olinay Rivera & Yudit Rivero | Amalia I. Irlanda-Rivera | Rent default judgment and market rental and damage analysis associated with lease default. |
| 10/2014 | Defendant | 123-2014-0159 | 2014FL534 (Pending) | Palm Beach County | Roehm Title Resources Claim | Title Resources Guaranty Company | Title insurance claim related to before and after damage/value diminution analysis based on defined title defects not identified by Title Insurance Company |
| 4/2014 | Defendant | 123-2014-0117 | 4:14-CV-01077 (Pending) | USA District Court for the Eastern District of Missouri Eastern Division | USA V. GSA-VA St. Louis Property, LLC | Bryan Cave LLP | Condemnation of a possessory interest for a term. Retained as consulting/rebuttal expert |
| 5/2014 | Defendant | 123-2014-0114 | Pending | Miami-Dade County | Euforia Club | Rennert Bogel Mandler & Rodriguez, P.A. | Rent dispute regarding forced relocation of a nightclub, and relevant market rental value of replacement club space in Miami |
| 4/2014 | Plaintiff | 123-2014-0089 | Pending | Broward County | Pan American Holdings Corp. V. Florida DOT Right of Way (ROW) Acquisition SR-7 | Henry Wulf, Esq. | Condemnation for R.O.W. purposes including before and after damage analysis |
| 1/2014 | Debtor | 123-2014-005 | 13-25728-BKC-RAM | US Federal Bankruptcy - Southern District of Florida - Miami Division (Hon. R. Mark) | West Airport Plaza Business Park, LLC | Counsel for the Debtor, Michael D. Seese, Esq. | Fairness Opinion and market value opinions in conjunction with Debtor's Plan for Reorganization |
| 8/2013 | Defendant | 123-2009-0016 | 02-23922-CA 09 | 11th Judicial Circuit Dade County, Florida | American Educational Enterprises, LLC v. The Board of Trustees of the Internal Improvement Trust Fund | Richard Alayon, Esq. - Alayon and Associates | Economic Damages case associated with an alleged mispresentation or omission by seller of real property |
| 7/2013 | Defendant | 123-2013-0126 | CACE 08057624 (14) | 17th Judicial Circuit Broward County, Florida (Hon. Carlos A. Rodriguez) | Bayview Loan Servicing, LLC v. Kayhan Soodjani; Muhammad Mahmoodi; et al | Bayview Servicing, represented by Tabacs, Freedman and Soloff; Stacey Soloff, Esq. | Deficiency judgment on multi-family project (Dewey Street Apartments) |
| 3/2013 | Defendant | 123-2013-0105 | 11-23561-CIV - Rosenbaum | US District Court - Southern District of Florida (Hon. Rosenbaum) | United States of America v. G.K.K. etal | Richard Duvall, Holland and Knight and Jeffrey Neiman, Esq. | Condemnation claim on the 137,779 s.f. Miami Federal Bureau of Investigation (F.B.I.) building; condemnation of a possessory interest (leasehold) |
| 2/2013 | Defendant | 123-2011-0670 | 09-05650 CA 04 | 11th Judicial Circuit Dade County, Florida (Hon. Beth Bloom) | Zenaida Gomez v. City of Pinecrest | Cynthia A. Everett, Cynthia A. Everett, P.A. | Economic damage resulting from temporary taking (seizure) of private residence |
| 1/2013 | Plaintiff | 123-2013-0016 | 12-60950-CIV | US Federal Court - Southern District of Florida | G Lending, Inc., Equity Financial Group, Inc., and Equity Commercial Group, Inc. v. Travelers Companies, Inc. etal | Heidi Raschke, Butler Pappas etal | Value diminution resulting from alleged mortgage fraud. |
| 11/2012 | Plaintiff | 123-2012-0129 | Pending | 11th Judicial Circuit Dade County, Florida | 2011 and 2012 Ad Valorem Tax Protest | Ken Wurtenberger, Esq. Kalbirenko Oblasve Property | Tax protest of commercial condominium. |
| 10/19/2012 | Plaintiff | 123-2012-0111 | 2011-1107 CA-23 | 11th Judicial Circuit Dade County, Florida (Hon. Patrick DeMuniz/etal?) | Renegade at Hialeah Blvd v. Dynatech Engineering | Daniel Levin, Esq., Cole Scott, Kissane, P.A. | Economic Damages case, diminution in value resulting from prejudicial lease modification. |
| 10/12/2012 | Plaintiff | 123-2012-0109 | 11-30189 CA21 | 17th Judicial Circuit Broward County, Florida | Yaffa Yakubov vs. Bayview at Fisher Island No 3 | Craig Minko, Esq., Cole Scott Kissane, P.A. | Market Value estimate of Fisher Island Condominium purchased under lift of first refusal; economic damages claimed by Plaintiff due to contract dispute arising from association's exercise of right of first refusal |
| 8/20/2012 | Plaintiff | 123-2010-0012 | CA-02180 CA-25 | 11th Judicial Circuit Dade County, Florida | 7935 NBV, LLC v. Harbour East Development LTD, Marino Egoz, etal | Jose Casal, Esq., Holland and Knight | Deficiency judgment on 32-unit fractured condominium, substitute expert following issuance of IRR-Miami reports in 2010 and 2012 |
| 8/15/2012 | Disclosed Dual Expert | 123-2012-0072 | | Matrimonial Mediation | Vazquez v. Vazquez Matrimonial Matter | Colon and Mendoza and Robert Hertzberg, P.A. | Retained as a court-appointed third party expert to both parties to appraise (2) marital assets comprised of office, retail, single and multi-family units in FL, TN, NC, and Illinois Bahamas. |
| 7/2012 | Plaintiff | 109/2011- | Pending: 2003-2014 | Tax Court of New Jersey (Hon. Patrick DeMemnida) | BASF Inc., successor Ciba Geigy Inc. vs. Township of Toms River | Phil Gerousis, Garippa, etal on behalf of BASF | Challenge to multi-year appeal of $60 Million+ land assessment on contaminated superfund site in Central New Jersey |
| 3/2012 | Plaintiff | 109/2010- 0172 | ATL-L-4461-08 | Superior Court of New Jersey, Law Division Atlantic County | Scot Netherlands Inc. vs. State of New Jersey Department of Environmental Protection (NJDEP) | Jay Rhatican, Connell Foley on behalf of Scot Netherlands, Inc. | Challenge to NJDEP permit denial to fill wetlands, deprivation of all reasonable investment backed expectations |
| 07/2011 | Defendant | 109/2010- 0199 | MER-L-3034-08 | Superior Court of New Jersey Mercer County | 460 Mercer Street, LLP and Brueckener Southern, LLC vs. Hightstown | Aneel Zaric Grimm & Aaron, P.C. Husam Chater | Litigation-Dispute Resolution - Hightstown Zoning Challenge |
| 12/2009 | Plaintiff | 109-2009- 0443 | Dept. Justice File 90-11-3-5801 | Federal District Court of Virginia | United States v.s. Atlantic Wood Industries, Inc. | U.S. Department of Justice | Damage / Environmental contamination dispute between United States Navy and responsible party (Atlantic Wood Industries) |
| 12/2009 | Plaintiff | 109-2009- 0377 | | Tax Court of New Jersey | Wextrust/HPC Mortgage Fund vs. City of Atlantic City | Cole, Schotz, Meisel, Forman & Leonard. P.A. Carl Rizzo, Esq. | Tax Appeals - To develop an opinion of the market value of the fee simple interest in the property |

M. Qualis: Graziano, Trial Lists

**Anthony M. Graziano, MAI, CRE, FRICS**
IDENTIFIED EXPERT WITNESS TESTIMONY AT DEPOSITION and/or TRIAL

M. Qualls; Graziano; Trial Lists

| RETENTION DATE | ON BEHALF | IRR FILE # | COURT CASE NO | CASE NAME | COURT / VENUE | RETAINED BY | TYPE OF CASE |
|---|---|---|---|---|---|---|---|
| 1/1/2009 | Secured Creditor | 109-2009-0430 | | Erickson Building | US Bankruptcy Court - Southern District of Texas | Stuart Glick, Esq., Sills, Cummis & Gross | Market Value for Bankruptcy of 140,000 SF corporate campus in Bethesda, Maryland |
| 9/9/2009 | Plaintiff | 109-2009-0123 | 3035-001 | Bay Head Yacht Club vs. Ocean County Tax Board | Tax Court of New Jersey | John Doyle, Carluccio, Leone, Dimon, Doyle & Sacks, LLC | Tax Appeal for Bay Head Yacht Club |
| 12/2/2008 | Plaintiff | 109-2008-XXX | INA (DEPS Pending) | Mirage Atlantic City (MAC) vs. City of Atlantic City | Tax Court of New Jersey | Hank Rovillard, Esq. | Tax Appeal at State Tax Court on 15 acre casino site adjacent to Trump Marina |
| 8/6/2008 | Defendant | 109-2008-0252 | L-2424-05 | The City of South Amboy vs. Lower Main Street Development, LLC & Amboy Aggregates Joint Venture | Superior Court of New Jersey Law Division, Middlesex County | Bathgate, Wegenar, etal | Verified complaint in condemnation |
| 6/2008 | Defendant | 109-2008-345 | C.A. No. OCNL-3361-06 | Osbourne Associates, Melbourne Associates VI, LLC, Kingsway Realty Profit Share vs. Citta Enterprises Co, JAC Property Management etal and Eckerd Corporation | Superior Court of New Jersey, Law Division Ocean County | Francis X. Manning, Esq, Stradley Ronon Stevens & Young & Michael Canholi, Esq, Partridge Snow and Hahn, both on behalf | Dispute re: proper valuation of leasehold and sub-lessee's sandwich leasehold interest on damage claim for breach of agreement claim |
| 1/2008 | Defendant | 109-2008-0125- | N/A | Toms River Township vs. Gba Geigy Corporation | American Arbitration Association [testimony at Arbitration conducted by Hon. Eugene Serpentelli] | Mark Troncone, Esq., In-house Counsel to Township of Toms River | Arbitration of environmental damages claim, and counter-claim of appropriateness of zoning on 1,900 acre superfund site. |
| 11/2007 | Defendant | 109-2007-211 | L-000635-06 | Kyle Mosteller vs. Galla Neeman | Superior Court of New Jersey, Law Division | Frank Caruso, Esq, Hoagland, Longo, Moran and Dunst | Damage claim due to loss of trees and screening between urban properties |
| 6/2007 | Plaintiff | 109-2007-0134 | 3:07-CV-2322 | Silver Lakes Inc. vs. Township of Freehold Inc. | Superior Court of New Jersey, Chancery Division Monmouth County | Christopher Hanlon, Esq, Hanlon and Niemann | Challenge to validity of Rent Control Ordinance as transfer of property rights from Lessor to Lessee. |
| 6/2007 | Plaintiff | 109-2007-0173 | | Laurelwood Homes, LLC vs. United States Department of Navy | Federal District Court of Virginia | William A. Shook Esq. | Leasehold interest in the property, breach of lease claim on behalf of leasehold owner (Laurelwood) claiming breach of lease and damages |
| 12/2006 | Defendant | 109-2006-0192 | CAM - L - 9731-05 | Brandywine Operating Partnership, LP vs. UFCW Local 56 | Superior Court of New Jersey, Chancery Division, Camden County | Brett Last, Esq, O'Brien, Belland and Bushinsky | Estimate the value of damages to landlord on breach of above-market lease |
| 8/2006 | Defendant | 109-2006-0257 | | County Line & Browers Bridge, Jackson Township | Superior Court of New Jersey, Law Division | Levin, Shea, Pfeffer, PA Steven Pfeffer | To develop an opinion of the hypothetical market value of the fee simple interest in the property |
| 2/2006 | Defendant | 109-2006-0044 | OCN-L-2482-04 | Carl Brooks vs. K. Hovranian | Ocean Superior Court, Ocean County Courthouse | Ronan, Tuzzio & Giannone - Linda Olsen | To estimate value diminution in the subject property as a result of various issues asserted by the property owner in conjunction with pending litigation between the property owner, and the subject developer K. Hovranian @ Sea Oaks |
| 10/2005 | Defendant | 109-2005-0315 | OCN-L-1810-5 | Atlantic City Electric Company d/b/a Conectiv Power Delivery, a regulated public utility in the state of New Jersey vs. AC1 Manahawkin, LLC formerly owned | Superior Court of New Jersey, Law Division Ocean County | Flaster/Greenberg, PC, R. Oberlander, Esq. David | Compensation for the taking of an easement for construction and maintenance of a 230kv transmission line and towers by Atlantic City Electric |
| 6/2005 | Defendant | 109-2005-0214 | MON-L-2609-05 | Township of Howell vs. George Harms Construction Co., Inc. etal | Superior Court of New Jersey Law Division Monmouth County | Connell & Foley, LLP Kevin Coakley, Esq. | To develop an opinion of the market value of the fee simple estate of the property |
| 8/2003 | Defendant | 109-2003-0282 | | Giuffre vs. Giuffre | Superior Court of New Jersey Chancery Division Family Part, Monmouth County | Louis & Wolf - Frank A. Louis | To develop an opinion of the market value of the Fee Simple estate of five properties for purposes of equitable distribution of marital assets |
| 7/2003 | Defendant | 109-2003-0203 | OCN-C-78-03 | West, etal vs. Pompaino, etal | Superior Court of New Jersey, Chancery Division, Ocean County | Stephen E. Smith, Esq | To develop an opinion of the diminution in value due to a loss of useable land area |
| 6/2003 | Plaintiff | 109-2003-0101 | OCN-C-316-02 | Eugene M. Lord vs. Donald W. Rinaldo | Superior Court of New Jersey Law Division, Ocean County | Lombardi & Lombardi Scott Telson | To develop an opinion of the market value of the fee simple estate of the property |
| 4/2003 | Plaintiff | 109-2003-0128 | FM-15-468-03-C | Vincent Urbank vs. Lisa Urbank | Superior Court of New Jersey, Chancery Division, Family Part Ocean County | Marianna Pontorero, Esq. | Litigation-Matrimonial |
| 2/2002 | Plaintiff | 109-2002-0055 | | Shenandoah Mobile Home Park | | Windels Marx, Lane & Mittendorf, LLP - William Cagney | Inverse Condemnation - Rent Control Ordinance |
| 4/2001 | Claimant | 109-2001-0189 | NJ-2624-00 | DeForest John Ely and Kimberle A. Ely, h/w | Superior Court of New Jersey, Chancery Division Middlesex County | First American Title Insurance Co. Jack Mikis | To derive an opinion of the fair compensation of the fee simple estate, subject to the temporary title encumbrance |
| 3/1999 | Defendant | 109-1999-0062 | | Georgetown Apartments | US Bankruptcy Court - District of Newark | Emmes & Co. Andrew Schwarz | To estimate the market value of the Leased Fee Estate of the property, inclusive of 28 Apartment complexes through NY, NJ, PA, and MD. |
| 12/1997 | Defendant | LKW 257-3186 | FM-15-1485-94 | Lisa Franklin, etal vs. Donald Franklin, etal | Superior Court of New Jersey, Chancery Division, Family Part, Ocean County | Greenbaum, Rowe, Smith, Ravin, Davis & Himmel LLP Robert S. Underhill | Estimating the market value of the leased fee interest in the property |
| 8/1984 | Creditor | HUD-XX | | Hudson Marina Association vs. Emmes & Co. | US Bankruptcy Court - District of Newark | | Bankruptcy Reorganization of 200+ slip failed marina/dockominium complex |

