# EXHIBIT 43

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| EDUARDO AND CARMEN AMORIN, *et al.*, individually, and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>TAISHAN GYPSUM CO., LTD. f/k/a SHANDONG TAIHE DONGXIN CO., LTD.; TAIAN TAISHAN PLASTERBOARD CO., LTD., *et al.*,<br><br>    **Defendants.** | Case No. 1:11-CV-22408-MGC |

**PLAINTIFFS' OMNIBUS RESPONSE TO TAISHAN'S AND BNBM PLC'S PRELIMINARY CONTESTS AND REQUESTS FOR SET-OFFS REGARDING THE CALCULATION OF REMEDIATION DAMAGES FOR THE *AMORIN* PLAINTIFFS**

**I.    INTRODUCTION**

Pursuant to the Court's Trial Plan for Property Damages and by agreement of the Parties, Plaintiffs hereby submit to the Special Master their omnibus response to the preliminary contests and requests for set-offs of Taishan and BNBM PLC.[1]

On February 1, 2019, Plaintiffs served their response to Defendants' discovery requests (Nos. 1-3) regarding ownership and square footage. As agreed-to by the Parties, Plaintiffs provided Defendants with a spreadsheet setting forth verified "under air" square footage information and current ownership/assignment status for all of the 1,802 Florida *Amorin* claimants before the Court, some of which may not be claiming remediation damages, but are entitled to other losses.

---

[1] ECF Nos. 110, 112, 162. Judge Cooke appointed the Special Master to issue Reports and Recommendations regarding Product ID, ownership, and square footage for purposes of awarding remediation damages in this case. Plaintiffs preserve all objections to defenses that have been waived by virtue of the defaults in this case and as to a recommendation by the Special Master concerning anything outside the scope of the three areas set forth in Judge Cooke's order (*i.e.*, Product ID, ownership, and square footage).

On February 11, 2019, Taishan provided Plaintiffs with a contest chart listing one or more of 17 categories ("A"-"Q") of preliminary contests and requests for set-offs as to 1,581 claimants who identified one or more of the alleged Taishan Product ID categories of drywall in their properties (*i.e.*, C&K drywall; IMT Gypsum; ProWall; Taian Taishan or Taihe Tape; Made in China Meet[s] or Exceed[s]; Various Drywall dimensions, including 4feetx12feetx1/2 inch and 4feet*12feet*1/2inch; Venture Supply; and/or White Edge Tape, boards with no markings or boards with no markings other than numbers).[2] BNBM PLC ("BNBM") also served Plaintiffs with a contest chart listing one or more of 17 categories of contests ("A"-"Q") and requests for set-offs as to 95 claimants who identified one or more alleged BNBM Product ID categories of drywall in their properties (*i.e.*, BNBM/Dragon Board; Chinese Manufacturer #2 (purple stamp); and/or Prowall). Significantly, every Florida *Amorin* Plaintiff received at least one contest from Defendants challenging their entitlement to remediation damages.

In their contest charts, Defendants collectively omitted 126 individual claimants. Each of these claimants had reported essentially "zero" square footage for their properties because the "Sq ft is captured under condo association's claim," and Plaintiffs did not want to double count any square footage in this case.[3] Nonetheless, the claimants omitted by Defendants are valid Florida *Amorin* class members pursuing damages in this case against Taishan and/or BNBM. Plaintiffs contend that these 126 claimants should be included on the spreadsheet for purposes of addressing their claims. Plaintiffs are working with Defendants on a "master spreadsheet" that includes all Florida *Amorin* claimants, including those which Defendants had omitted. Further, Plaintiffs have offered Defendants an opportunity to assert contests and requests for set-offs for these omitted claimants.

BNBM's preliminary contests and requests for set-offs also include objections to personal jurisdiction, liability, causation, defect, imputation, transferability of entities of

---

[2] BNBM joined in Taishan's contests and requests for set-offs.

[3] As will be discussed further below, in most instances, the condominium association is the entity with standing to bring the claim for remediation damages for affected units. Where applicable, the individual unit owners' claims relate to non-remediation damages, such as alternate living expenses, loss of use and enjoyment, etc. To be clear, Plaintiffs will not be seeking double recovery for remediation damages for any property.

default against other parties, and damages. The MDL Court already ruled on these objections, multiple times, and Judge Cooke "**adopt[ed] all** of Judge Fallon's findings of facts and legal conclusions" after an opportunity for briefing and argument.[4] Any further consideration of these points is outside the scope of the Special Master's role in this proceeding; moreover, there is no reason BNBM should be entitled to relitigate issues already ruled upon.

The MDL Court specifically entered a default against BNBM in the *Amorin* action originally filed in the Eastern District of Virginia.[5] Subsequently, when the Court certified the *Amorin* class, it found that liability was established as to all class members against BNBM because it had been defaulted in at least one of the *Amorin* actions.[6] The MDL Court's ruling treated all Defendants the same, stating:

> Because the only claims at issue here are against default judgment Defendants, and because the Court has already found sufficient facts to establish the causation issue associated with these types of claims, all that is required is an assessment of damages. Liability is conceded by default. Accordingly, the Court will establish class-wide damages pursuant to Rule 55(b)(2)(B).[7]

BNBM challenged the defaults before the MDL Court by filing motions to vacate the defaults[8] and decertify the class.[9] The MDL Court denied these motions.[10] As if that weren't enough, once remanded, BNBM attempted to get a different ruling in a new venue by filing a Motion to Enforce Trial Rights in Florida.[11] Judge Cooke denied BNBM's motion finding

---

[4] *See* Order dated 11/16/2018 [ECF No. 112].

[5] *See* MDL Rec. Doc. 20740.

[6] *See* MDL Rec. Doc. 20740, at 12 ("each of the Defendants have defaulted in at least one action" and "the Court has already held that Findings of Fact and Conclusions of Law have a preclusive effect in this class proceeding").

[7] MDL Rec. Doc. 18028, at 31, ¶ 71

[8] MDL Rec. Doc. 21050

[9] *See* CNBM's Motion to Decertify the Class [MDL Rec. Doc. 20627]; BNBM's Joinder in CNBM's Motion to Decertify the Class [MDL Rec. Doc. 20631]; Taishan's Joinder in CNBM's Motion to Decertify the Class [MDL Rec. Doc. 20632].

[10] *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2018 WL 279629, at *2 (Jan. 2, 2018); *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2017 WL 1421627, at *24-25 (Apr. 21, 2017).

[11] ECF No. 66.

3

that all Defendants have been held in default, "[l]iability has been conclusively established as to all Defendants and the only remaining issue is the amount of the award."[12] Still, BNBM refuses to accept these rulings and now expects the Special Master to address issues that the MDL Court and Judge Cooke have ruled on numerous times.

* * *

Plaintiffs and Defendants are presently discussing, and will continue to discuss, Defendants' contest charts in an attempt to understand Defendants' general and specific reasons for the listed objections. Plaintiffs have requested additional detail for several categories of contests, as the "letter" objections ("A"-"Q") provide only limited information in many instances. Plaintiffs hope to receive more data from Defendants this week and will continue to meet with defense counsel over the next several weeks to resolve as many contests as possible. In the interim, in accordance with the agreed-to schedule and in compliance with the Court's Trial Plan, Plaintiffs submit their response to Defendants' preliminary contests and set-offs and address each Objection separately.

### A. Category "A" (Claimant Not *Amorin* Named Plaintiff)

There are 49 claimants included in Defendants' Category A objection. Based on discussions with counsel for Taishan, Plaintiffs learned that this category is comprised of claimants who allegedly were not named on the *Amorin* complaint even though they may be an *Amorin* class member.[13] According to counsel for BNBM, this category includes one

---

[12] ECF No. 112.

[13] The certified *Amorin* class is broader than the Plaintiffs named on identical Florida, Virginia, and Louisiana *Amorin* complaints, since it is comprised of: "active litigants (either in the original action or in complaints in intervention) who are participants in *Germano, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co. Ltd., et al.*, Case No. 09–6687 (E.D. La.); *Gross, et al. v. Knauf Gips, KG, et al.*, Case No. 09–6690 (E.D. La.); *Wiltz, et al. v. Beijing New Building Materials Public Limited Co., et al.*, Civ. Action No. 10–361 (E.D. La); *Abel, et al. v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Civ. Action No. 11–080 (E.D.La); *Haya, et al. v. Taishan Gypsum Co. Ltd., et al.*, Civ. Action No. 11–1077 (E.D. La.); *Almeroth, et al. v. Taishan Gypsum Co., Ltd., et al.*, Civ. Action. 12–0498 (E.D. La.); *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Civ. Action No. 11–1672 (E.D. La.); *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Civ. Action No. 11–1395 (E.D. La.); *Amorin, et al. v. Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd., et al.*, Civ. Action No. 11–1673 (E.D. La.)." *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2014 WL 4809520, at *16 (E.D. La. Sept. 26, 2014).

claimant who is not in the Florida *Amorin* class.[14] Plaintiffs agree that if a claimant is not a member of the *Amorin* class, that claimant should not be included in this process, but would still maintain his or her right to seek damages from Defendants in a different forum. With regard to any Florida *Amorin* class members who may not have been named on the *Amorin* complaint (but were included in *Wiltz*, *Gross*, *Abel, Almeroth* and/or *Haya*), Plaintiffs contend they are nevertheless entitled to a calculation of their remediation damages as part of this process. First, all 49 claimants with a Category A objection are listed on Appendix A to the MDL Court's Suggestion of Remand for the Florida cases.[15] Second, in the Parties' Joint Case Management Plan submitted to Judge Cooke, Defendants agreed that approximately "1,700 *Amorin* Plaintiffs are actively pursuing claims for properties in the State of Florida, which are listed on Attachment 'B'" thereto.[16] All 49 claimants with a Category A objection are included on Attachment B to the Joint Case Management Plan. In any event, Plaintiffs disagree with Taishan's contention that a Florida *Amorin* class member who was omitted from the *Amorin* complaint (but is named on *Gross*, *Wiltz*, *Abel*, *Haya*, and/or *Almeroth*) is not properly before the Special Master for an award of remediation damages.[17]

Plaintiffs are in discussions with Defendants regarding this category and believe all Category A objections should be resolved before the final contests and set-offs are submitted to the Special Master.

### B. Category "B" (Assigned Claim to Another Entity or Person)

There are 36 claimants with a Category B objection. From discussions with Defendants, it is Plaintiffs' understanding that this category is comprised of claimants who assigned their remediation claim to a homebuilder and/or another entity that performed the remediation. Some of these homebuilders are part of the *Mitchell*[18] litigation, which is a

---

[14] In other words, BNBM contends that Plaintiff is not named on *Amorin*, *Wiltz*, *Gross*, *Abel, Almeroth* or *Haya*. *Id*.

[15] ECF No. 33.

[16] ECF. No. 45, at 2, ¶ 3.

[17] Plaintiffs' initial investigation has revealed that most, if not all, 49 claimants are in the *Amorin* class, as they were named on the *Amorin*, *Wiltz*, and/or *Haya* complaints.

[18] *Mitchell Company, Inc. v. Knauf Gips, KG, et al*, No. 09-4115 (E.D. La.).

5

separate action where homebuilders are seeking reimbursement from Chinese Drywall manufacturers and distributors for remediation expenses.[19]

Plaintiffs concede that if proper assignments of remediation claims exist, those Plaintiffs would not be entitled to remediation damages here. However, these claimants are still entitled to bring claims for other losses, if reserved or retained. On the other hand, if the referenced agreement is one for subrogation or reimbursement as opposed to an outright assignment of remediation claims, the claimant would have standing to bring his or her claim for remediation damages.

Defendants have agreed to provide Plaintiffs with documents evidencing these assignments, to the extent they are in Defendants' possession. Plaintiffs are in the process of reaching out to individual counsel whose clients have a Category B objection to request their position with regard to each affected claimant.

Plaintiffs and Defendants are working together to identify proper assignments before the final contests and set-offs are submitted to the Special Master.

### C. Category "C" (Bought with Knowledge of Chinese Drywall)

There are 9 claimants identified by Defendants as having a Category C objection. Defendants claim that Plaintiffs included in this category bought the affected property with knowledge of the defective Chinese Drywall. This objection does not take into consideration whether the claimant who purchased the property with knowledge of defective Chinese Drywall (i) obtained an assignment from the former owner to pursue the claim; (ii) knew that the Chinese Drywall was defective and the significance thereof at the time of purchase; and/or (iii) suffered damages at that point in time or subsequently. Importantly, Defendants do not contend that the prior owner or any other party has asserted the same claim for remediation damages for the same property resulting in a "double recovery." Allowing Defendants to pay no party for a property they damaged with their defective drywall would permit an unjust result in favor of defaulted Companies. Moreover, *Amorin* is a certified class action. Defendants are in default. Liability has been established. A Plaintiff's actual knowledge of

---

[19] We understand that Defendants learned of the assignments through the *Mitchell* litigation, as many of the alleged assignments were not disclosed on the SPPFs. In fact, the assignment questions in the SPPF only relate to assignments <u>at the time of purchase and/or sale</u>, not assignments given at the time remediation occurred. Contrary to what Defendants may suggest, Plaintiffs have not attempted to conceal any of this information.

Chinese Drywall in the property at the time of purchase does not preclude recovery of remediation damages – a factual inquiry regarding the right to the claim is necessary in such instances.

Notwithstanding that the objection lacks merit, Plaintiffs are analyzing the claims in this category and will address issues with Defendants on a case-by-case basis.

### D. Category "D" (Claimant Does Not Currently Own Affected Property)

There are 784 claimants with a Category D objection. This category is comprised of claimants who no longer own the affected property. Defendants assert that these former owners are disqualified from the remediation-damages formula. However, the *Amorin* class definition is clear that it "includes all current and former owners of properties in the United States containing drywall manufactured by [the Taishan] Defendants …."[20] Moreover Judge Cooke's Order does not distinguish between former and current owners.[21] The sad truth is that many of the *Amorin* Plaintiffs are former owners now, through no fault of their own, but because of Defendants' ongoing litigation-delay strategy that was hatched before the MDL was even formed in 2009. The majority of Plaintiffs who lost their homes did so from foreclosure or sales in mitigation because they did not want to expose themselves and their families to Defendants' toxic drywall, but could not afford to pay their mortgage and rent elsewhere at the same time. From the outset, Defendants were determined not to pay any Chinese Drywall judgments.

Plaintiffs contend that former owners are entitled to formulaic damages against these defaulted Defendants. But even assuming *arguendo* that Defendants are correct, they offer no analysis as to *when* current vs. former ownership status should be determined – at the outset of the case in 2009? – when the default judgments were entered in 2009, 2010, 2011, and 2014?[22] – when Judge Fallon held the Class Damages Hearing in 2015? – when the MDL

---

[20] *Chinese Drywall*, 2014 WL 4809520, at *16; *see also Amorin* Class Notice [MDL Rec. Doc. 18028-1, at fn. 2]; MDL Order & Reasons clarifying that the *Amorin* class includes current and former owners [MDL Rec. Doc. 21846].

[21] *See*, *generally*, ECF No. 112.  Moreover, some Plaintiffs and purchasers of the affected properties entered into a written agreement wherein Plaintiffs expressly reserved all claims against Defendants notwithstanding the sale of the affected property.

[22] *See* MDL Rec. Doc. 277 (holding Taishan in default in *Mitchell*); MDL Rec. Doc. 3013 (*Germano* default judgment against Taishan totaling $2,609,129.99); MDL Rec. Doc. 7302 (holding BNBM, BNBM Group, CNBM, and CNBM Group in default in *Gross*); MDL Rec. Doc. 7735 (holding BNBM

7

Court entered the Class Damages Order approving the remediation damages formula in 2017? – or, when remediation damages are finally calculated in 2019? The inequities of Defendants' position are palpable.[23] An *Amorin* class member who was a current owner when the MDL was established in 2009 (and was entitled to remediation damages), but then lost her home through foreclosure or short sale during the litigation because she could not afford to pay her mortgage while also paying rent for alternate housing and/or could not refinance her mortgage due to the defective drywall in the home and was forced to enter foreclosure, as the case dragged on for years while Defendants did everything they could do to avoid the jurisdiction of the courts, should not be deprived of remediation damages *solely* on the grounds that she is considered by Defendants to be a *former* owner in 2019 when the approved formula is finally used to calculate remediation damages for the *Amorin* class.

Even if a change in ownership status could deprive Plaintiffs of their rights, the question still remains whether a Plaintiff with a valid *default judgment against Defendants*, who subsequently loses her property, no longer retains her right to collect the judgment. Plaintiffs reject this proposition and reserve the right to argue same at the appropriate time (which is not here).

In any event, this is a judicial decision that ultimately will be made Judge Cooke and not resolved by the Parties.

### E. Category "E" (Claimant Never Owned Affected Property)

There are 293 claimants with a Category E objection. Defendants' Category E objection claims to identify claimants who neither formerly nor currently own the affected

---

in default in *Wiltz*); MDL Rec. Doc. 7736 (holding BNBM in default in *Gross*); MDL Rec. Doc. 15687 (holding BNBM in default in *Wiltz*; holding BNBM, BNBM Group, CNBM Group, and CNBM in default in *Gross*); MDL Rec. Doc. 17814 (holding Taishan, TTP, and CNBM in default in *Amorin* (Louisiana); holding Taishan and TTP in default in *Amorin* (Florida)); MDL Rec. Doc. 17815 (holding Taishan, TTP, BNBM, CNBM, and CNBM Group in default in *Amorin* (Virginia)).

[23] Defendants previously attempted to exclude former owners from the *Amorin* class (after it was certified), but that notion was rejected by Judge Fallon. *See* Order & Reasons clarifying composition of *Amorin* class [MDL Rec. Doc. 21846]. The MDL Court articulated the absurdity of Defendants' position with respect to former owners: "given the glacial speed with which this case has progressed, by the time the case is resolved, there will be very few class members left, if any. Such a construction is untenable and leads to an absurd result."). *Id*. at 11-12. The same reasoning is true with regard to the calculation of remediation damages for these class members, which is further justification to reject Defendants' Category D objection.

property and/or the claimant is a condominium association or developer. Defendants contend that these claimants are not proper Plaintiffs thus are disqualified from the remediation-damages formula.

Florida courts have consistently held that a condominium association may sue on behalf of all unit owners concerning matters of common interest, including, but not limited to, the common elements of the building.[24] Standing is not only practical in terms of litigation efficiency and cost, but given the facts of this case, the condominium association's participation may be essential where some unit owners never filed claims or where those who filed claims no longer own the affected property. An affected unit impacts all members of the condominium association. Additionally, in some instances, the condominium association's claim for remediation goes beyond the affected unit and includes common areas like the lobbies and hallways. Defendants have objected to those claims on the ground that "Claimant never owned the affected property." The problem with Defendants' argument is that the hallways are common areas owned by the individual unit owners, who make up the condominium association. Common areas are not individually titled.

Moreover, the condominium associations in this litigation have done exactly what was contemplated by Fla. Stat. §711.111(3) and that which was ordered by Judge Fallon in prior settlements in this case.[25] Condominium associations are properly seeking remediation damages for affected units and common areas.[26] A condominium association's standing to bring these claims is blackletter Florida law codified in section 718.111(3) and endorsed by the Florida Supreme Court and lower courts. In addition to 718.111(3) conferring standing upon condominium associations to sue, the Florida Supreme Court adopted Florida Rule of Civil Procedure 1.221,[27] specifically for condominium associations. There is clear Florida

---

[24] *Charley Toppino & Sons, Inc. v. Seawatch at Marathon Condo. Ass'n, Inc.*, 658 So. 2d 922 (Fla. 1995). *See also Four Jay's Constr., Inc. v. Marina at Bluffs Condo. Ass'n, Inc.*, 846 So. 2d 555, 556 (Fla. 4th DCA 2003); *Graves v. Ciega Verde Condo. Ass'n, Inc.*, 703 So. 2d 109, 111 (Fla. 2nd DCA 1997).

[25] MDL Rec. Doc. 16407-3.

[26] Furthermore, the default in this case establishes Defendants' liability and estops them from offering any defense that would defeat the right of recovery. Defendants' objections should be limited to the quantum of damages only.

[27] "A homeowners' or condominium association, after control of such association is obtained by homeowners or unit owners other than the developer, may institute, maintain, settle, or appeal actions or hearings in its name on behalf of all association members, including, but not limited to: (1) the

precedent and preference for condominium associations to bring class actions "as a matter of law" if a claim relates to a matter of "common interest to most or all unit owners." *The Florida Bar, In Re: Rule 1.220(b), Florida Rules of Civil Procedure,* 353 So. 2d 95, 97 (Fla. 1977). Again, individual unit owners will not be seeking duplicative remediation damages.

Plaintiffs contend that all 293 claimants with a Category E objection are current or former owners, and with respect to those claimants that are condominium associations, the association has standing to bring claims for remediation damages and thus, they are proper Plaintiffs entitled to formulaic damages. The objection lacks merit.

### F. Category "F" (Claimant Failed to Submit an SPPF)

There are 20 claimants with a Category F objection. Defendants filed a Motion to Dismiss those claims on February 13, 2019.[28] Plaintiffs' response to that motion is due February 27, 2019, and will be decided by the Court. It goes without saying that claimants dismissed by Judge Cooke for failure to submit an SPPF will be removed from the master spreadsheet when the final contests and set-offs are submitted to the Special Master.

### G. Category "G" (No Signature on Current SPPF Submission)

There are 587 claimants with a Category G objection. From discussions with Defendants, it is Plaintiffs' understanding that this category is comprised of claimants who have filed amended SPPFs without a verification. Pursuant to PTO 11A,[29]

---

common property, area, or elements; (2) the roof or structural components of a building, or other improvements (in the case of homeowners' associations, being specifically limited to those improvements for which the association is responsible); (3) mechanical, electrical, or plumbing elements serving a property or an improvement or building (in the case of homeowners' associations, being specifically limited to those elements for which the association is responsible); (4) representations of the developer pertaining to any existing or proposed commonly used facility; (5) protests of ad valorem taxes on commonly used facilities; and, in the case of homeowners' associations, (6) defense of actions in eminent domain or prosecution of inverse condemnation actions. If an association has the authority to maintain a class action under this rule, the association may be joined in an action as representative of that class with reference to litigation and disputes involving the matters for which the association could bring a class action under this rule. Nothing herein limits any statutory or common law right of any individual homeowner or unit owner, or class of such owners, to bring any action that may otherwise be available. An action under this rule shall not be subject to the requirements of rule 1.220." Fla. R. Civ. P. 1.221.

[28] ECF No. 171.

[29] The deadlines in PTO 11A were amended by PTO 11B [MDL Rec. Doc. 21181]. All other provisions of PTO 11A remain in effect.

> If a Plaintiff must amend a SPPF, all subsequent versions must be named accordingly ('First Amended Supplemental Profile Form,' 'Second Amended Supplemental Profile Form', etc.), and all iterations of a Party's Profile Form will remain available and accessible to all Parties to a case through trial, appeal (if any), or other resolution of the litigation.[30]

PTO 11A is silent as to amended SPPFs requiring a verification. Defendants' Category G objection is simply their latest ploy to avoid paying Plaintiffs who were injured by their defective products. Moreover, Category G does not relate to Product ID, ownership, or square footage, and, thus, is beyond the scope of the Special Master's role in this proceeding.

### H. Category "H" (Relevant Fields in SPPF Not Completed)

There are 608 claimants with a Category H objection. From discussions with Defendants, it is Plaintiffs' understanding that this category is comprised of claimants who have not provided responses to Section II (ownership/assignment) and/or Section V (remediation status and preservation) on the SPPF. Defendants' objection appears to go beyond pertinent missing information for Sections II and V.[31] Notwithstanding, Plaintiffs have reached out to individual counsel and are working to resolve these issues. However, Category H does not relate to Product ID, ownership, or square footage. Plaintiffs provided updated ownership and square footage information in their response to Defendants' square footage and ownership discovery requests on February 1, 2019. Moreover, as stated in Category B, *supra*, the assignment questions in the SPPF only relate to assignments at the time of purchase and/or sale, not assignments given at the time remediation occurred.

### I. Category "I" (Incorrect Square Footage Reported)

There are 741 claimants with a Category I objection. From discussions with Defendants, it is Plaintiffs' understanding that this category is comprised of claimants where 1) Defendants dispute Plaintiffs' under-air square footage number provided in response to Defendants' discovery requests on February 1, 2019; or 2) the documentation provided does not properly identify under-air square footage. Thus, Plaintiffs have requested that Defendants provide more detail regarding this objection. Plaintiffs are awaiting that

---

[30] MDL Rec. Doc. 21162, p. 4, ¶ 4(e).

[31] For example, a claimant who no longer owns an affected property (which was not remediated at the time of transfer) will typically leave portions of Section V blank.

information and will make efforts to resolve these objections before the final contests and set-offs are submitted to the Special Master.

### J. Category "J" (Chinese Drywall in Affected Property Not Manufactured by Taishan/BNBM)

There are 879 claimants with a Category J objection. The parties are separately briefing the Product ID issue, which is due March 1, 2019, for Taishan's Chinese Drywall products, and March 8, 2019, for BNBM's Chinese Drywall products. The Parties' presentation to the Special Master on the contentions, admissions, and denials of Product ID is scheduled to take place March 11-12, 2019.

Accordingly, issues of Product ID will be addressed on a separate, yet parallel, track.

### K. Category "K" (Insufficient Proof to Identify Manufacturer)

There are 142 claimants with a Category K objection. This category argues that claimants who do not have photographic proof of Defendants' product markings or have photo(s) but they are "unclear" are barred from recovery.

Defendants' objection lacks merit. Liability against Defendants is established *via* default and the Court has ruled that Plaintiffs are entitled to remediation damages according to the formula adopted by Judge Fallon in the MDL, provided they have proof of Chinese Drywall manufactured by Taishan or BNBM. The purpose of this proceeding is simply to show that the harm-causing products at issue in this litigation (*i.e.*, defective drywall) were manufactured by Defendants. *See*, generally, *Sweeney v. Kimberly–Clark Corporation*, Civil Action No. 14-cv-3201, 2016 WL 727173, at *6 (M.D. Fla. Feb. 22, 2016) (citing *Pulte Home Corp. v. Ply Gem Indus., Inc.*, 804 F. Supp. 1471, 1484-85 (M.D. Fla. 1992)). This determination is governed by the preponderance-of-the-evidence standard. *See id*. This means that upon consideration of all the evidence, <u>it is more likely than not that a given marking is attributable to Defendants</u>. *See United States v. Almedina*, 686 F.3d 1312, 1315 (11th Cir. 2012).

Further, evidence of Product ID can be direct or circumstantial and can be comprised of testimony, interrogatory answers, stipulations, documents, videotapes, photographs, recordings, and other physical evidence, such as delivery invoices, inspection reports, and affidavits. Where the property is part of a condominium building and/or larger group of units and the drywall was provided by a single supplier, indicia for one unit is reasonably sufficient for another. If the greater weight of the evidence favors the Plaintiff, then the factfinder is

obligated to find in Plaintiffs' favor.[32] "Greater weight of the evidence" is defined to mean "the more persuasive and convincing force and effect of the entire evidence in the case."[33] Obviously, what the "entire evidence" is depends on the facts of any particular case.

In this case, all 142 claimants with a Category K objection have proof of Product ID in their files. In fact, 43 properties that Defendants have placed in this category have clear, photographic indicia that show exact markings of Defendants' gypsum boards. Plaintiffs will address these issues with Defendants on a case-by-case basis. Additionally, Plaintiffs will address in their Product ID briefing the fact that Taishan manufactured millions of square feet of drywall, which Taishan's own documentation concedes has "unknown" labeling.

L. **Category "L" (Affected Property was Completely Remediated)**

There are 631 claimants with a Category L objection. This category is comprised of claimants Defendants believe completely remediated the property based on the documents provided, regardless of the answers provided in the SPPF. According to Judge Cooke's Trial Plan Order, claimants who completely remediated their properties "may only recover the actual cost of remediation."[34] Plaintiffs object to Defendants' determination as to which claimants completely remediated their properties vs. which claimants partially remediated their properties.

In the governing *Germano* Findings of Fact and Conclusions of Law, Judge Fallon defined precisely the scope of "appropriate remediation…supported by both the scientific and practical evidence."[35] According to the *Germano* ruling, complete remediation requires removing and replacing: all drywall, all electrical systems, all copper pipes and plumbing, HVAC assembly and units, damaged electrical devices and appliances (basically "anything that has a button"), any appliance with copper or silver components, carpet, hardwood, vinyl flooring, cabinets, countertops, trim work, crown molding and baseboards, bathroom fixtures, and insulation.[36] Complete remediation also requires post-drywall removal cleanup with a

---

[32] *See, generally*, Fla. Standard Jury Instrs. in Civil Cases §401.3.

[33] *Id.*

[34] ECF No. 112, p. 6, ¶ 1.

[35] *In re Chinese Manufactured Drywall Products Liab. Litig.*, 706 F. Supp. 2d 655, 671 (E.D. La. 2010).

[36] *Id.* at 671-85.

HEPA vacuum and a post-remediation certification verifying that the remediation was correctly performed and the home is safe to be reoccupied.[37]

Judge Cooke gave "preclusive effect to Judge Fallon's finding of fact and conclusions of law," including the *Germano* ruling.[38]

Out of the 631 claimants with a Category L objection, only 201 Plaintiffs identified "complete remediation" on their most recently filed SPPF. Defendants' self-serving determination as to the scope of the Plaintiffs' remediation is unfounded, contrary to the law of the case, and contrary to Judge Cooke's order.

Plaintiffs are open to conferring with Defendants regarding the meaning of "complete remediation," but this category will likely be an issue to be addressed in the final contests and set-offs, and/or by the Court.

### M. Category "M" (Affected Property was Partially Remediated)

There are 158 claimants with a Category M objection. From discussions with Defendants, it is Plaintiffs' understanding that this category is comprised of claimants who Defendants believe partially remediated the property. According to Defendants' preliminary objection key, claimants in this category are "disqualified from remediation damages formula." This assertion runs afoul of the plain language in Judge Cooke's order: "Plaintiffs who have not completely remediated may recover the amount provided by the remediation formula."[39] The term "not completely remediated" includes those properties that were partially remediated, *i.e.*, those that did not receive the proper scope of remediation in accordance with the *Germano* protocol, as well as those were not remediated at all.

Apparently, Defendants interpret Judge Cooke's Order to mean that the claimants who partially or completely remediated their properties are entitled to be reimbursed actual out-of-pocket costs of remediation only, and application of the remediation formula is limited to only those Plaintiffs who did not remediate at all. Defendants conveniently ignore the critical word: "Plaintiffs who have not *completely* remediated may recover the amount

---

[37] *Id.* at 685.

[38] ECF No. 112, p. 3.

[39] ECF No. 112, p. 6, fn. 1.

provided by the remediation formula."[40] If Judge Cooke intended to include only Plaintiffs who *never* remediated their properties as eligible for formula damages, the Court would have simply removed "completely" from the sentence. Claimants who did not fully comply with the *Germano* protocol are indeed entitled to the remediation formula by order of both the MDL Court and the transferee court here.

Plaintiffs are open to conferring with Defendants, but this will likely be an issue to be addressed in the final contests and set-offs, and/or by the Court.

### N. Category "N" (Remediation Funded by Other Person or Entity)

There are 458 claimants with a Category N objection. Defendants seek to deny a claimant's recovery based on the idea that the claimant's remediation was funded by another person or entity. However, the fact that someone other than the named claimant performed the remediation does not automatically disqualify the claimant from seeking damages, as Plaintiffs may have entered into a subrogation or reimbursement agreement and/or Plaintiff may have an obligation to pursue the claim. Plaintiffs should not be precluded from recovering remediation formula damages if the remediation was not funded by the claimant. Doing so would essentially give Defendants a windfall just because some third party or entity stepped up when the Defendants did not. This category is separate and apart from the Category B objection (assignments). Here, Defendants categorically deny any claimant remediation recovery if she did not pay for the remediation herself. However, in some instances, the third-party funded only a portion of the remediation and is not seeking reimbursement for the remediation. Under that scenario, the claimant clearly has retained the right to pursue damages for the remediation.

Plaintiffs reserve the right to raise further objections as the discussions with Defendants progress.

### O. Category "O" (Diminution of Value)

There are 50 claimants with a Category O objection. This category is comprised of claimants whose self-reported diminution of value in the SPPF is less than the remediation-damages formula. This is a judicial determination that will be made at a later date. Defendants will likely contend that Plaintiffs may not get both diminution in value and

---

[40] *Id*.

remediation damages. But Defendants are wrong on the facts of this case. Plaintiffs may recover both remediation and diminution in value damages. Plaintiffs' recovery of diminution in value for their home is permitted in Florida when the damages are permanent, due to the required disclosure of a material defect in their homes under the Florida Supreme Court landmark case of *Johnson v. Davis*, 480 So. 2d 625, 629 (Fla. 1985) (holding that a seller of residential property must disclose those facts materially affecting the value of the property which are not readily observable and not known to a buyer). Here, Plaintiffs merely seek the consequential damages from the defective Chinese Drywall.

In any event, Judge Cooke tasked the Special Master with issuing a report and recommendation concerning Product ID, ownership, and square footage, and ultimately by using the Remediation Formula "to issue a Report and Recommendation as to the total award for Property Damage Claims."[41] Diminution of value and other losses are not before the Special Master. Nevertheless, Plaintiffs' self-reported diminution of value figure cannot be used against them in advance of a determination regarding their damages pursuant to the remediation damages formula.

### P. Category "P" (Remediation Damages Formula)

All claimants in Florida have a Category P objection. Defendants object to the remediation calculation proffered by Plaintiffs because it uses the 2017 RS Means national square foot unit price, whereas Judge Fallon's Order utilized the 2015 RS Means national square foot unit price, since the Class Damages Hearing occurred in 2015. Plaintiffs' expert presented evidence of the national square foot unit price in effect at the time of the Class Damages hearing on June 9, 2015.[42] At that time, the RS Means national price per square foot was $105.91. Judge Fallon's ruling was not issued until April 2017,[43] at which time the national square foot unit price had increased to $109.85. The MDL Court's Class Damages Order adopted Plaintiffs' expert's "damages *methodology* to quantify the aggregate damages."[44] Moreover, the national square foot unit price was calculated by adjusting "the $86 per square

---

[41] *Id*. at pp. 6-8.

[42] MDL Rec. Doc. 20741.

[43] *Id*.

[44] *Id*. at p. 49, ¶ 92 (emphasis in original).

foot cost to reflect *current-day building materials and labor*."[45] Plaintiffs have waited long enough for an award and by no fault of their own, it has been an additional two years since Judge Fallon's Class Damages Order. Plaintiffs are entitled to current-day building materials and labor and, thus, the 2019 RS Means national price per square foot, as adjusted for local factors, is the proper figure for calculating formulaic damages.

### Q. Category "Q" (Preservation of Evidence)

There are 677 claimants with a Category Q objection. Defendants seek to disqualify these claimants from the remediation-damages formula for an alleged failure to comply with Pre-Trial Order 1. As a practical matter, PTO 1B only applies to those claimants that have remediated. According to Defendants' objection key, 782 claimants either partially or completely remediated and 677 claimants did not comply with PTO 1B.

The crux of a spoliation sanction, which Defendants appear to be seeking by their objection, is that a party is subject to sanction if found to have *willfully* destroyed evidence that is *relevant* (or *crucial*) to the other party's claim or defense. "[A] party moving for sanctions must establish, among other things, that the destroyed evidence was relevant to a claim or defense such that the destruction of that evidence **resulted in prejudice**."[46] Accordingly, in the Eleventh Circuit, courts consider five factors in determining whether spoliation sanctions are warranted: (1) whether the [responding party] was prejudiced as a result of the destruction of evidence; (2) whether the prejudice could be cured; (3) the practical importance of the evidence; (4) whether the [spoliating party] acted in good or bad faith; and (5) the potential for abuse [by the spoliating party] as a result.[47] Here, Defendants will not be prejudiced by the alleged destruction of evidence. All claimants have proof of Product ID to support their claims, such that tangible drywall samples are of no practical importance.

Moreover, Defendants are in default. Liability is established. In light of Judge Fallon's finding that if a home has even one board of defective Chinese Drywall Plaintiffs are entitled to damages because all of the drywall in the home needs to be removed, Product ID evidence consisting of photos, inspection reports, delivery receipts, and/or other indicia is sufficient.

---

[45] *Id*. at p. 50, fn.10 (emphasis added).

[46] *Eli Lilly and Co. v. Air Exp. Intern. USA, Inc.,* 615 F.3d 1305, 1318 (11th Cir. 2010) (citing *Flury,* 427 F.3d at 943) (emphasis added).

[47] *Flury,* 427 F.3d at 945.

17

Judge Cooke ordered the Special Master to issue a report and recommendation on Product ID, ownership and square footage. Although preservation indirectly relates to Product ID, it goes beyond the scope of the Special Master's role.

### R. Off-Sets

Defendants have accounted for prior payments that they believe should offset any recovery or remediation damages by Plaintiffs. The Knauf settlement had more than 10 different categories from which claimants could make claims. Not all settlement claims were related to remediation damages. Only prior payments related to remediation damages should be counted as an offset at this stage in the proceedings. Plaintiffs provided Defendants prior payment information related to remediation damages for each claimant. These payments include: 1) Pilot Program, 2) Already Remediated Homes (ARH), 3) Knauf remediation, 4) VA Settlement Gross Award,[48] and 5) Global Banner InEx (GBI) repair and relocation expenses. The following settlement payments should not be included in the off-set totals, as they are not related to remediation claims: 1) Bodily Injury, 2) Foreclosure or Short Sale, 3) Lost Rent, Use, or Sales, 4) Miscellaneous, 5) Pre-Remediation Alternative Living Expenses (PRALE), and 6) Tenant loss.

Defendants mistakenly applied all prior payments to Plaintiffs (notably none from the Defendants here), including those for bodily injury, lost rent, alternative living, etc., in determining their requests for "off-sets." Further, Defendants inadvertently counted the Knauf Pilot Program payments twice for 206 claimants. Plaintiffs have identified those claimants for Defendants and are addressing these issues with defense counsel.

Plaintiffs will continue to work with Defendants to resolve as many set-offs as possible before the final contests and set-offs are submitted to the Special Master.

---

[48] The remediation portion of the VA settlement was 80% of the gross settlement proceeds, with 20% funding other losses. Therefore, for the one Florida claimant who received an award from the Virginia settlement, Plaintiffs have included 80% of this figure in the calculation of prior payments for this claimant.

Dated: February 25, 2019	Respectfully Submitted,


      /s/ Patrick S. Montoya, Esq.
Patrick Shanan Montoya
Fla. Bar No. 0524441
Email: Patrick@colson.com
Colson Hicks Eidson
255 Alhambra Circle, PH
Coral Gables, FL  33134-2351
Telephone:  (305) 476-7400
Facsimile:  (305) 476-7444
*Interim Lead Counsel for Plaintiffs*