# EXHIBIT 51

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

|  |  |  |
|---|---|---|
| **EDUARDO AND CARMEN AMORIN et al.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Civil Action No. 2:11-cv-377-MSD-RJK** |
| **TAISHAN GYPSUM CO., LTD., F/K/A** | ) | |
| **SHANDONG TAIHE DONGXIN CO., LTD.** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## PLAINTIFFS' REPLY TO DEFENDANTS' TRIAL PLAN BRIEF

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ..................................................................................................... ii

I.     INTRODUCTION .......................................................................................................1

II.    ARGUMENT ..............................................................................................................4

     A.    Judge Fallon's MDL Rulings on Default Under Rule 55, on Class
           Certification Under Rule 23, and on the Reliability of the Remediation
           Damages Formula Under *Daubert* and Rule 23 Preclude Defendants from
           Further Delaying this Rule 55 (b)(2) Damages Proceeding by Challenging
           Those Rulings which are the Law of the Case ........................................................4

     B.    Defendants' Trial Plan Arguments Ignore the Preclusive Effect of the
           MDL Orders and Instead Offer Fact-Based Arguments on the Nature of
           the Damages in this Case, which the MDL Court has Already Thoroughly
           Considered and Rejected ........................................................................................5

     C.    Defendants' Specific Attack on the Remediation Damages Formula is
           Precluded by the MDL Court's 2017 Class Damages Order and Otherwise
           Utterly Fails to Raise an Issue Under the Due Process Clause of the U.S.
           Constitution ...........................................................................................................9

     D.    Rule 55 Requires a Rational Basis to Support a Damages Award and the
           Record Here Fully Establishes that for Remediation and Non-Remediation
           Damages ...............................................................................................................14

III.   CONCLUSION ........................................................................................................16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amorin v. Taishan Gypsum Co. Ltd.*,
No. 11-22408-CIV-MGC, Order (S.D. Fla. Nov. 16, 2018) .................................................... 2,4

*Anderson v. Foundation for Advancement, Educ. and Employment of Am. Indians*,
155 F.3d 500 (4th Cir. 1998) ......................................................................................................... 14

*Bank of Hampton Roads v. Powell*,
292 Va. 10, 785 S.E.2d 788 (2016) ............................................................................................... 8

*Broussard v. Mieneke*,
155 F.3d 331 (4th Cir. 1998) ...................................................................................................... 5,6

*Compton v. Alton S.S. Co.*,
608 F.2d 96 (4th Cir. 1979) ......................................................................................................... 16

*DirecTV, Inc. v. Yancey*,
No. 4:04CV00011, 2005 U.S. Dist. LEXIS 32601 at *2 (W.D. Va. 2005) ............................... 15

*Dillingham v. Hall*,
235 Va. 1, 365 S.E. 738 (1988) .................................................................................................. 6,7

*Eddins v. Medlar*,
881 F.2d 1069 (4th Cir. 1989) ..................................................................................................... 16

*Hailes v. Gonzales*,
207 Va. 612, 151 S.E.2d 388 (1966) ............................................................................................. 7

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
706 F. Supp. 2d 655 (E.D. La. 2010) ..................................................................................... 12,13

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
742 F.3d 576 (5th Cir. 2014) ......................................................................................................... 3

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
894 F. Supp. 2d 819 (E.D. La. 2012) ............................................................................................ 3

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
2014 WL 4809520 (E.D. La. Sept. 26, 2014) ............................................................................... 9

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
2015 WL 3603624 (E.D. La. June 5, 2015) ................................................................................ 10

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
2017 WL 1421627 (E.D. La. Apr. 21, 2017) .................................................................. passim

*In re Food Lion, Inc., Fair Labor Standards Act Effective Scheduling Litig.*,
73 F.3d 528 (4th Cir. 1996) ...................................................................................... 5,9

*In re Ford Motor Co.*,
591 F.3d 406 (5th Cir. 2009) ....................................................................................... 2

*In re Genesys Data Tecs., Inc.*,
204 F.3d 124 (4th Cir. 2000), 95 Haw. 33, 18 P.3d ...................................................... 15,16

*Kpadeh v. Emanuel*,
261 F.R.D. 687 (S.D. Fla. 2008) ................................................................................. 11

*Lockhaven Co. v. Master Pools*,
357 S.E.2d 534 (Va. 1987) ........................................................................................ 12

*Painters & Allied Trades Indus. Pension Fund v. Capital Restoration & Painting Co.*,
919 F.Supp.2d 680 (D. Md. 2013) .............................................................................. 15
*Ryan v. Homecomings Fin-Network*,

253 F.3d 778 (4th Cir. 2001) ...................................................................................... 14

*Virginia Elec. & Power Co. v. Savoy Const. Co.*,
224 Va. 36, 294 S.E.2d 811 (1982) ............................................................................ 12

*Younger v. Appalachian Power*,
214 Va. 662 (1974) .................................................................................................. 12

## **Statutes**

28 U.S.C. § 1407(a) .................................................................................................... 3

## **Rules**

Fed. R. Civ. P. 23 .................................................................................................. 4, 5, 11

Fed. R. Civ. P. 23(b)(3) ........................................................................................... 1,3,4

Fed. R. Civ. P. 54(c) ............................................................................................... 15,16

Fed. R. Civ. P. 55 ................................................................................................... passim

Fed. R. Civ. P. 55(b)(2) ........................................................................................ 4,5,11,14,15

Fed. R. Civ. P. 55(b)(2)(B) ........................................................................................................ 15

**Other Authorities**

Manual for Complex Litigation, Fourth, § 20.133 ....................................................................... 2

## I.  **INTRODUCTION**

The Parties have now briefed their views of the trial plan needed to resolve the 175
Virginia Taishan Chinese Drywall *Amorin* cases remanded to this Court from the MDL.
Plaintiffs seek to expeditiously and efficiently resolve these cases by putting forth a plan
fundamentally based on the pretrial and trial rulings issued by Judge Fallon over the last 9-plus
years of this litigation including Orders that: (1) found the Defendants are in default pursuant to
FRCP 55, (2) certified the *Amorin* class pursuant to FRCP 23(b)(3) for purposes of liability and
remediation damages – which are the core element of damages in this litigation, and (3) found
that a formula was the best method to determine remediation damages on an aggregate basis for
all class members and that the remediation damages formula approved of in this case passes
*Daubert* review.

In stark contrast, the defaulted Defendants seek an option that brings no end to this never-
ending litigation and rejects all these orders, arguing that Judge Fallon's numerous orders
rejecting their arguments violate the Due Process Clause of the U.S. Constitution.  Instead,
Defendants seek a trial plan consisting of "all issues" discovery of a small subset of claims (less
than 10% of the Virginia Plaintiffs), followed by individual evidentiary hearings for each of
those Plaintiffs to be concluded 9 months from now, and then followed-up by mediation.
Significantly, Defendants offer **no plan (other than a vague hope for settlement) to resolve the
remaining Virginia Amorin Plaintiffs' claims constituting a majority of the class**, even though
these victims of Taishan's Chinese Drywall have waited almost 10 years for their day in Court.

These *identical issues and arguments* were presented to Judge Cooke in the Southern
District of Florida – who also received hundreds of *Amorin* claims remanded from the MDL
transferee Court – a mere two months ago.  The same issues were thoroughly briefed and argued

1

before Judge Cooke, who ruled that at their core, these arguments: "seek to determine how much deference the Court would give to the decisions of Judge Fallon."[1] Judge Cooke found that under ***any of the potential legal tests*** that govern how a remand judge should utilize the MDL Court rulings, the results in Florida would be the same – deference should be given to the MDL Court because there were no changes in circumstances warranting a different outcome. *Id* at 2. Judge Cooke ruled that "the Court **ADOPTS <u>all</u>** of Judge Fallon's findings of facts and legal conclusions." *Id.* (emphasis in original).

Thus, Judge Cooke, faced with the identical issues and competing arguments on trial plans as are presented to this Court, ruled that the Defendants ***were in default pursuant to FRCP 55*** consistent with Judge Fallon's findings of default, that ***Defendants were liable for default damages***, that the class certification by Judge Fallon was appropriate, and that the remediation damages formula for the Class provides a reasonable and reliable measure of remediation damages. *Id.* at 3. In addition, Judge Cooke rejected the same Due Process arguments being advanced by Defendants here.

In explaining her reasoning, Judge Cooke found no legal basis whatsoever, (Constitutional or otherwise), for the Defendants' attempt to avoid the impact and rulings of the Orders already made in the case. Rather she analyzed the Defendants' trial plan arguments as follows:

> Defendants have not shown a "significant change of circumstances." Manual for Complex Litigation, Fourth Sec. 20.133. Rather, Defendants seemingly seek to revisit the MDL's decisions because they disagree with Judge Fallon's conclusions. They cannot, for to do so would "frustrate the purposes of the centralized trial proceedings." *In re Ford Motor Co.* 591 F.3d at 411. The Court will

---

[1] *See Amorin v. Taishan Gypsum Co. Ltd*., Case No. 11-22408-CIV-MGC, Order (S.D. Fla. Nov. 16, 2018) (ECF No. 112) [Jt. App'x, Tab 21].

> not allow parties to pervert the MDL process. ***Instead by giving preclusive effect to Judge Fallon's findings of fact and conclusions of law, the Court effectuates the purpose of a multidistrict litigation: to ensure the "just and efficient conduct of this action***." 28 U.S.C. Sec. 1407(a).

*Id.* at 2-3 (emphasis added).

Plaintiffs in Virginia actually have simpler claims than those remanded to Judge Cooke in Florida, because the issue of product identification cannot credibly be placed in dispute in Virginia. Venture Supply in Virginia sourced all their Chinese drywall from Taishan in China, it was all shipped to Virginia, the Virginia Plaintiffs have photographic and documentary proof that their homes contained Venture Supply Drywall manufactured by Taishan, and that evidence of Plaintiffs' damages has been provided to Defendants and previously reviewed and approved by the Court-appointed Special Master in the Venture Supply Settlement before the MDL Court.[2] Thus, Plaintiffs respectfully request a trial plan order appropriately tied to the preclusive effect of the FRCP 55 default judgments and Rule 23 (b)(3) class certification Orders already issued in this case to facilitate an efficient and timely resolution of the 175 claims remanded to this Court.

The cornerstone of the requested Virginia trial plan order is a schedule to obtain a judgment on remediation damages based on the formula adopted by Judge Fallon in the MDL, and now by Judge Cooke in the Southern District of Florida. Once the remediation damages are established, the remaining non-remediation damages can be determined based primarily on the non-remediation damages evidence already reviewed by the MDL court after an opportunity for objections by all interested parties as part of the approval of, and allocation plan used in, the Venture Supply Settlement.

---

[2] *In re Chinese Drywall*, 894 F. Supp. 2d 819, 853 (E.D. La 2012), *affd*, 742 F. 3d 576 (5th Cir. 2014); *Abel v Taishan*, Order and Judgment Approving the Porter Blaine/Venture Supply Settlement , Doc. 16394 (7/9/13);   MDL Order 10/23/15; J.A.  Tab 11, doc. 19639-1.

## II.  ARGUMENT

### A.  Judge Fallon's MDL Rulings on Default Under Rule 55, on Class Certification Under Rule 23, and on the Reliability of the Remediation Damages Formula Under *Daubert* and Rule 23 Preclude Defendants from Further Delaying this Rule 55 (b)(2) Damages Proceeding by Challenging <u>Those Rulings which are the Law of the Case.</u>

Defendants' arguments in opposition to Plaintiffs' trial plan are nothing more than "disagreement" with Judge Fallon's prior rulings and Findings of Fact and Conclusions of Law, as Judge Cooke has indicated.[3]  Defendants manufacture their arguments by asserting that the necessary effects of the operation of the Federal Rules of Civil Procedure, specifically the Rule 55 default judgment and Rule 23 (b)(3) class certification orders already issued in this case, will deprive them of their Constitutional rights under the Due Process clause. They assert that they are: (1) being deprived of an opportunity to defend themselves on Rule 55(b)(2) damages, and (2) that they have a "right" to have Rule 55(b)(2) damages determined on some basis other than the formulaic basis under Rule 23 ordered by Judge Fallon.

In trying to heighten the importance of their arguments, Defendants make sweeping statements about Constitutional principles, yet conveniently ignore the fact that they refused to respond to Plaintiffs' complaints that were validly served on them pursuant to the Hague, that they willfully defaulted because they thought it would be unlikely a U.S. judgment could be enforced in China, and deliberately chose to be absent from the class certification proceedings. They have since relitigated the default issue numerous times and sought to decertify the class only to have all of their arguments rejected by Judge Fallon (and Judge Cooke).

---

[3] *See Amorin v. Taishan Gypsum Co. Ltd*., Case No. 11-22408-CIV-MGC, Order (S.D. Fla. Nov. 16, 2018) (ECF No. 112) ("Florida *Amorin* Trial Plan") [Jt. App'x, Tab 21].

An evidentiary damages hearing is an appropriate manner to evaluate damages post-default. In arguing that their Due Process was violated, Defendants ignore the incontrovertible fact that a damages hearing was held on June 9, 2015 and they fully participated – in other words, they did have notice and a meaningful opportunity to be heard and they took advantage of it. Defendants participated in the hearing by presenting evidence, questioning witnesses and contesting Plaintiffs' evidence. Defendants were afforded Due Process; Judge Fallon just ruled against them.

Application by a federal (transferor) court, that has received remands from an MDL transferee court, of the rulings made by the MDL court under FRCP 55, FRCP 23, and *Daubert* is not a "shortcut," as Defendants characterize it, rather it is the "just and efficient conduct of this action." This is specifically recognized in the Fourth Circuit. *In re Food Lion Inc., Fair Labor Standards*, 73 F.3d 528, 531 (4th Cir. 1996) (bright-line rule prohibiting transferor court from overruling transferee courts). *See* Plaintiffs' Opening Memorandum (ECF No. 70) ("Pltffs' Mem."), at 21-28. Thus, Defendants' *disagreements* with the MDL Court's prior rulings on default under Rule 55, class certification under Rule 23, and the reliability of the remediation damages formula under *Daubert* and Rule 23 are of no moment here, and should not interfere with the progress of this case and the determination of a Rule 55 (b)(2) damages judgment.

**B.** **Defendants' Trial Plan Arguments Ignore the Preclusive Effect of the MDL Orders and Instead Offer Fact-Based Arguments on the Nature of the Damages in this Case, which the MDL Court has Already Thoroughly Considered and Rejected.**

Defendants try to avoid federal doctrine that MDL orders govern the ongoing progress of the case by citing a case concerning North Carolina law on lost profits and contractual rights, *Broussard v Mieneke*, 155 F.3d 331 (4th Cir. 1998), as evidence of a significant change of circumstances. But, the *Broussard* case raises no Constitutional issues whatsoever, and instead

5

deals with class certification standards, and finding certification inappropriate where plaintiffs'

contractual rights and obligations were different from each other, where defendants made

different representations to each plaintiff, and where profits lost by plaintiffs varied according to

their individual business circumstances. *Broussard,* 153 F.3d at 342-343. The *Broussard* court

found that "each putative class member's claim for lost profits damages was inherently

individualized and thus not easily amenable to class treatment." *Id.* The findings as to the nature

of the liability and damages in this Chinese drywall case are inapposite to *Broussard*, as

demonstrated by Judge Fallon's findings:

> The fact that each Taishan property owner suffered the same harm
> and the same nature of damages puts this case in contrast to cases
> where each plaintiff suffers a distinctly different kind of
> individualized wrong. *See supra* Section VI (B). The class
> remediation damages here do not present significant individualized
> issues, like physical ailments and loss of business profits. Id.
> Rather, the only variance is in the amount required to pay for each
> remediation, which can be readily determined using the formulaic
> methodology presented by Mr. Inglis in accordance with the
> following protocol.

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, MDL 2047, 2017 WL 1421627, *24

(E.D. La. Apr. 21, 2017).

The other cases Defendants cite do not support their argument that the "governing law" in

this case – the law of Virginia – rejects the use of a formula for determination of damages.

Defendants rely on *Dillingham v. Hall*, 235 Va. 1, 4, 365 S.E. 738, 739 (1988), for the

proposition that "Virginia law requires individualized proof of property damages and similarly

imposes the 'reasonable certainty' burden of proof." *See* Defs.' Response to Pltffs' Prop. Trial

Plan ("Defs.' Brief") (ECF No. 74) at 2. Defendants assert that *Dillingham* "reject[ed] a "per-

unit formula recovery [because it was] not based on property –specific evidence." *Id*. at 2. This

is not what the Court held in *Dillingham.*

In *Dillingham*, the trial court in a chancery case, after finding that an easement by necessity existed, awarded damages to the owners of the dominant tenant in the amount of one dollar per day for each day that easement had been obstructed by the owner of the servient tenement. *Id.* at 738. There was *no evidence whatsoever* from which to quantify the damages sustained by the owners. The fact-finder was furnished no facts or circumstances from which an intelligent and probable estimate could be made of the sum which would justly compensate them for their loss. "The one-dollar-per-day formula adopted by the court had no more support in the evidence than would one dollar per minute, per hour, or per year." *Id.* The Virginia Supreme Court rejected the chancellor's calculation of unliquidated damages on a per diem basis as "speculative" and "unsupported by the evidence," but it did not reject a formulaic application of damages as the Defendants mistakenly suggest.

To the contrary, the *Dillingham* court cited *Hailes v. Gonzales*, 207 Va. 612, 614, 151 S.E.2d 388, 390 (1966) (emphasis added) for the proposition that:

> In determining the quantum of proof required to sustain [compensatory] damage awards, we have said that a plaintiff must show the amount of his damages with reasonable certainty. ***Proof with mathematical precision is not required, but there must be at least sufficient evidence to permit an intelligent and probable estimate of the damage***.

This reasoning directly contradicts the Defendants' argument. The reasonable certainty requirement was obviously not met in *Dillingham*, where the chancellor's chosen formula had *absolutely no evidence* to support it. Here, however, it is clearly met as explicitly stated by Judge Fallon:

> The relevant case law supports the appropriateness and reliability of the Inglis remediation damages methodology presented at the June 9, 2015 hearing. Therefore, the Court finds the Inglis remediation damages methodology to be a reliable, fair and reasonable estimate of aggregate remediation damages…. The alternative to estimating

property damages on a class-wide basis would be a series of costly (and wasteful), individualized mini-trials, inspections, and estimates that would not provide a meaningfully more reliable estimate for class remediation damages.

*In re Chinese Drywall*, 2017 WL 1421627, at * 24-25.

Finally, Defendants' cherry-picked quote from *Bank of Hampton Roads v. Powell*, 292 Va. 10, 16, 785 SE.2d 788, 791 (2016), that "under Virginia law every piece of real estate is unique," also does nothing to support their argument when applied to what Judge Fallon actually found about the nature of damage at issue in this case – ***this is a case about standard costs of demolition and repair of standard interiors of homes***.

> The remediation costs take into account the uniform scope of the repair for each class member, the *limited* nature of repair (interiors only), and the use of well-established mid-points as the baseline for each damages estimate before considering individualized square footage and local building cost factors. Given these considerations, the degree of variability of square footage costs for remediation of these homes is typical of what is expected in the discipline of damages estimation, and is not significant when viewed in relation to the total costs of repair. Even the Defendants' suggestion—house by house inspection by a contractor—is not likely to lead to a more precise estimate, given the acknowledged variation of at least 17% in that method of estimation recognized by the estimation textbook authorities.

*In re Chinese Drywall*, 2017 WL 1421627, at *21.

Furthermore, *Powell* is of no legal significance here. The Court in *Powell* considered whether a court could impose a constructive trust on one subdivision lot after a developer breached its contract to convey a different lot to the plaintiff. To benefit from such a trust, however, a claimant's interest must be "distinctly traced" into the property that is made the subject of the trust. *Powell*, 292 Va. at 16, 785 S.E.2d at 790. The plaintiff's contract was for a particular lot, and since land is not fungible, the Court ruled that the trial court erred in imposing a constructive trust on a different lot. *Id. Powell* relates distinctly to the unique equitable remedy

8

of constructive trust in land and the requirement that a plaintiff have an interest in a particular
property in order to take advantage of the remedy. The opinion does nothing to further
Defendants' argument.

> **C. Defendants' Specific Attack on the Remediation Damages Formula is
> Precluded by the MDL Court's 2017 Class Damages Order and
> Otherwise Utterly Fails to Raise an Issue Under the Due Process
> <u>Clause of the U.S. Constitution.</u>**

The MDL Court's Class Certification Order, 2014 WL 4809520, paired with its Order on
Class Damages, 2017 WL 1421627, and the MDL's Court's denial of the Defendants' motion to
decertify the class (MDL Rec. Doc. 20740) closes the door firmly on any objection to the
remediation damages formula being heard at this late stage of the case. Under *Food Lion*, there
are no changed circumstances or new law justifying revisiting the multiple rulings Judge Fallon
has made that the formula (and the expert who applies this methodology) is reliable and
appropriate for aggregate remediation damages. The MDL court has ruled that:

> The damages awarded will be calculated by multiplying the under
> air square footage of the affected properties listed in the revised
> Class Plaintiffs' Spreadsheet by $105.91, *as adjusted* by the RS
> Means location factor.

*In re Chinese Drywall*, 2017 WL 1421627, at *24. The Court found the formula to be "evidence
based," and that the Plaintiffs' remediation damages expert relied on:

> multi-disciplinary corrosion science (as discussed at length in
> the Court's earlier FOFCOLs in *Germano* and *Hernandez*,
> particularly when defining the scope of work for remediation), in
> conjunction with bid pricing, unit pricing, square footage pricing,
> and localized construction cost factors, to establish the damages
> formula.

*Id*. at *21.

The MDL Court ruled on at least five (5) occasions that the remediation damages formula
and the expert's reliable methodology in determining the remediation damages are appropriate:

(1)    <u>June 5, 2015</u> – The MDL Court's *Daubert* Order upheld Plaintiff Expert George Inglis's use of the remediation damages formula ("Mr. Inglis's proposed expert opinion is highly relevant on the issue of class damages… Mr. Inglis is qualified to give an expert opinion within the scope of his experience as a building engineer… Mr. Inglis may testify based on facts or data that are reasonably relied upon by experts in his field…"). *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2015 WL 3603624, at *3 (E.D. La. June 5, 2015).

(2)    <u>August 3, 3015</u> – The MDL Court's Order denied Taishan's Motion to Exclude Plaintiffs' Class Spreadsheet [… which was based on the remediation damages formula and admitted at June 9, 2015 Damages Hearing]. *See* Order & Reasons regarding Taishan's Motion to Exclude Plaintiffs' Class Spreadsheet [MDL Rec. Doc. 19355]<u>.</u>

(3)    <u>April 21, 2017</u> – The Court entered Findings of Fact and Conclusions of Law ("FOFCOL") Related to the June 9, 2015 Damages Hearing rejecting every defense argument made in their motion to reject the formula. *Chinese Drywall*, 2017 WL 1421627. Based on a review of all the scientific and economic damages evidence, the MDL Court upheld the formula. found the following: The remediation protocol is evidence-based and has been confirmed by its application in the actual remediation of several thousand homes. *See id*. at *6, 11.

(4)    <u>April 21, 2017</u> – The Court denied Defendants' Motion to Decertify the Class, finding that the Plaintiffs properly established a formulaic method to determine class-wide [remediation] property damages, ("The only variation is the extent of damages suffered based on the square footage of the involved property"), and that remediation damages constituted the predominant issue in the case. *See* Decertification Order [MDL Rec. Doc. 20740], at 7, 14, 20.

(5)    <u>August 20, 2018</u> – The MDL Court's Suggestion of Remand stated that the MDL Court had established and "approved a class-wide evidence – based formula and methodology to

calculate property [remediation] damages involving defective drywall," and "strongly encouraged" transferor courts to utilize it "to determine the appropriate award in each individual case." *See* MDL Court's Suggestion of Remand [MDL Rec. Doc. 21695], at 10.

Furthermore, the Defendants' invoking the Due Process clause and their citation to a case involving damages by the victims of torture in in Liberia, *Kpadeh v. Emanuel*, 261 F.R.D. 687 (S.D. Fla. 2008), do nothing to further their baseless arguments that formulaic remediation damages are not appropriate in this case. The fact that the *Kpadeh* Court found formulaic damages inappropriate when applied to damages from torture, personal injury, and mutilation teaches us nothing about this case involving standardized demolition and renovation damages. Certainly, Judge Cooke in Florida utterly rejected that notion and so should this Court. As Judge Fallon found: "Each class member suffered the same kind of damage, and the only individualized determination required – the amount it will cost to remediate the properties – can be calculated using a formula to estimate the amount of each class member's damages." This, of course, is the appropriate Rule 23 analysis and Defendants' inapposite references to the Due Process clause do not advance the analysis of the limited Rule 55(b)(2) issues before this Court.

Finally, Defendants speculate that the remediation damages formula will generate *windfall* profits to Virginia homeowners as their final reason for the Court to discard Judge Fallon's prior rulings. The notion that a Virginia homeowner, who has had his or her home contaminated and rendered uninhabitable by a violation of the Virginia Building Code and then has waited a decade to recover the cost of repair to that home from Defendants who purposely flouted the Court's jurisdiction, has somehow received a windfall is simply not a credible argument on the facts or the law. In fact, if litigating Chinese Drywall cases has revealed anything, it is that affected homeowners can never be made whole, much less receive a windfall.

11

Plaintiffs have waited nearly ten years losing time with their families and loved ones, unable to host family gatherings, living in a toxic environment – with their lives stuck. It is the Defendants who have created a windfall for themselves by delaying and delaying.

However, as it relates to the remediation formula itself, on the law, Virginia recognizes that "the measure of damages in a negligence action is that amount necessary to compensate the injured party for the damages proximately caused by the tortious conduct. *Lochaven Co. v. Master Pools*, 357 S.E. 2d 534, 537 (Va. 1987). Further the calculation of compensatory damages should be the "most equitable and functional formula." *Younger v. Appalachian Power,* 214 Va. 662, 665 (1974). This law combined with the fact that the only way to cure the Virginia Building Code violations caused by the Taishan drywall and make the homes inhabitable again is to remediate the home and bring it into compliance with the Building Code – reinforces Judge Fallon's opinion that complete remediation is an appropriate response to the corrosive Taishan Venture Supply drywall. *In re Chinese Drywall*, 2017 WL 1421627 at *21-24; *Virginia Elec. & Power Co. v. Savoy Const. Co.*, 224 Va. 36, 44, 294 S.E.2d 811, 817 (1982) ("The dominant purpose of the Building Code, therefore, is to provide comprehensive protection of the public health and safety."). Judge Fallon's findings were absolutely clear that a complete remediation (listing 11 items described in meticulous detail over 17 pages) was necessary to restore the property to its prior condition and to protect the health and safety of the home's inhabitants. *In re Chinese Drywall,* 706 F. sup 2d 655, 671 (E.D. La. 2010) ("The evidence supports the conclusion that the appropriate remediation ….includes the removal of all drywall, all electric wiring, the entire HVAC system, and many other items…The scope of this remediation is supported by both the scientific and practical evidence presented."). .

On the facts, Defendants' speculative suggestion that the remediation formula damages will greatly exceed the actual remediation damages is based on faulty data, because the actual remediation costs were often merely those partial costs that paid for less than the complete scope of work, *i.e.*, "proper full remediation," that Judge Fallon ordered, 2017 WL 1421627 at *12. Instead, the "actual remediation costs" in some cases ***represent merely the best partial remediation the homeowner could afford to mitigate his or her situation of being trapped in a contaminated home***.[4]  Similarly, when Defendants speculate about the cost of repair under the remediation formula compared to the total value of the home or the diminished value of the home, they appear to rely on City tax records, which are known to provide undervalued assessments compared to real market-based appraisals. [5]

---

[4] For example, Taishan points to Mr. Francis Donahue as someone who would be overcompensated by the formula approach for remediation which would award him $144,564 whereas his actual cost of remediation was $83,698. *See* Defs.' Brief (ECF No. 74) at 28. Taishan has been provided with all of Mr. Donahue's remediation claims documentation as part of the materials given to them as part of the MDL claims submission process.  *See* PTO 11A (MDL Rec. Doc. 21162) (MDL pretrial order mandating SPPF's).  From those documents, Taishan could easily determine that: Mr. Francis acted as his own General Contractor; the bank records submitted with his Supplemental Plaintiff Profile Form ("SPPF") demonstrate that Mr. Francis did much of the labor himself; Mr. Francis did not have a HEPA vacuum clean-up or wipe down, and did not get clearance testing, all expensive elements of Judge Fallon's remediation protocol. Taishan apparently seeks to profit from a homeowner who was forced to do the work himself, and then only compensate them for their actual out-of-pocket expenses. Given the lack of clean-up and clearance, Mr. Donahue has amended his SPPF to appropriately reflect Partial remediation.  *See Chinese Drywall*, 706 F. Supp. 2d at 671-87 (detailing all of the work needed to be done to have a complete remediation).

[5]  For example, Taishan provides a list of 8 total properties throughout the entire class and argues that because their property tax assessed value (according to public records) was less than the Court's remediation formula award, that the awards would be excessive. *See* Defs.' Brief (ECF No. 74) at 29.  Taishan presents no evidence that tax assessor values are accurate assessments of true market value. Indeed, if that were the case, no one would ever need an appraisal to sell or buy a home…the accurate value would be a matter of public record. It is well known in VA that tax assessors UNDER value properties so as to avoid long and expensive appeals from home owners that they are being over-taxed. So, they are an inadequate measure of market value and skew against the homeowner. Examples include:  Tim Anderson was listed by Taishan as having

Finally, Defendants' assertion that the MDL Court's approved remediation formula has been and will be "inflated" because the RS Means building construction and supplies cost factor is adjusted for periodic increase in the cost of labor and supplies flies in the face of the accepted practice of adjusting damages awards based on inflation from the time of the injury to the time of recovery.

### D. Rule 55 Requires a Rational Basis to Support a Damages Award and the Record Here Fully Establishes that for Remediation and Non-Remediation Damages.

The Defendants' argument seems to forget or ignore that this is a Rule 55 (b)(2) default proceeding with the exclusive purpose to establish the amount of damages. There is no entitlement to a jury trial or discovery, particularly here where robust evidence of damages has already been reviewed by the MDL Court and provided to Defendants well in advance of the anticipated hearing. *See* Pltffs' Mem. (ECF No. 70), at 38-40. If the facts alleged in the Complaint are sufficient to establish liability, the court must then determine the appropriate amount of damages. *Ryan v. Homecomings Fin-Network*, 253 F.3d 778, 780-81 (4th Cir. 2001). In so doing, the court may conduct an evidentiary hearing under Rule 55(b)(2). However, the court may make a determination of damages without a hearing as long as there is an adequate evidentiary basis in the record for the award. *See Anderson v. Foundation for Advancement, Educ. and Employment of Am. Indians*, 155 F.3d 500, 507 (4th Cir. 1998) (noting that "in some

---

a property worth only $121,900 at least according to the Virginia Beach tax assessor. What Taishan does not share with the Court is that these tax records were provided upon Defendants' request as part of the square footage verification project. *See* PTO 11A (MDL Rec. Doc. 21162). A current appraisal for Mr. Anderson's property by a certified property appraiser showed the market value to be $220,000, well in excess of the formula damages awardable of $165,216. As is frequently the case, the tax assessor listed the value of the property at over $100,000 less than market value. Taishan's use of this data to deny property remediation should not be condoned. Similar data is available for other plaintiffs listed by Taishan as receiving a "windfall."

circumstances a district court entering a default judgment may award damages ascertainable from the pleadings without holding a hearing"); *Painters & Allied Trades Indus. Pension Fund v. Capital Restoration & Painting Co.,* 919 F. Supp. 2d 680, 684 (D. Md. 2013) (finding that a court entering a default judgment need not conduct an evidentiary hearing to determine damages and "may rely instead on affidavits or documentary evidence in the record to determine the appropriate sum"); *DirecTV, Inc. v. Yancey*, No. 4:04CV00011, 2005 U.S. Dist. LEXIS 32601, at *2 (W.D. Va. 2005) (finding that a hearing to determine damages was not required because plaintiff "presented sufficient evidence to support its claim for damages, costs and fees by way of uncontradicted affidavits"). The evidence in support of a damage assessment in this case is based on objective documentary evidence: product identification, square footage, ownership,[6] and zip code, etc…. Thus there is an adequate evidentiary basis in the record for the Defendants to examine, and for the Court to evaluate in the Rule 55 (b)(2)(B) hearing.

Similarly, Defendants' assertion that Plaintiffs are precluded from a Rule 55 (b)(2) recovery because they did not plead a specific dollar amount in the Complaint is incorrect. Defendants misinterpret the Federal Rules of Civil Procedure and Fourth Circuit law regarding the amount of damages available to a plaintiff on a default judgment. Rule 54 of the Federal Rules of Civil Procedure states that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). The Fourth Circuit has applied this language to deny a plaintiff any amount *in excess* of that which is prayed for in the complaint when the complaint makes a demand for a specific dollar amount: *In re Genesys Data Techs., Inc.*, 204 F.3d 124, 132 (4th Cir. 2000), *certified question answered*, 95 Haw. 33, 18 P.3d

---

[6] The certified class includes all owners, former and present. *See* Pltffs' Mem. (ECF No. 70), at 10-12, & nn. 37, 46, 47.

895 (2001) (citing *Compton v. Alton S.S. Co.*, 608 F.2d 96, 104 (4th Cir. 1979)).[7] The Fourth

Circuit has not, however, interpreted the language of Rule 54(c) to require all plaintiffs to plead a

specific monetary amount in order to recover any damages on a default judgment. Instead, the

Fourth Circuit has limited damages on default judgment to the "kind" of damages prayed for in

the complaint, as well as the amount of monetary damages alleged in the complaint when a

specific dollar amount is prayed for by the plaintiff. *Eddins v. Medlar*, 881 F.2d 1069 (4th Cir.

1989). Unlike the plaintiff in *Eddins*, Plaintiffs in the case before the Court have not alleged a

specific dollar amount for their damages and are, therefore, not limited to a specific dollar

amount of damages on default. However, contrary to Defendants' assertions, Plaintiffs' general

allegations seeking compensatory and statutory damages, punitive damages as allowed by law,

pre- and post-judgment interest as allowed by law, injunctive relief, attorneys' fees as allowed by

law, and taxable costs do not prohibit their recovery of a monetary amount on a default judgment

under either Rule 54(c) or Fourth Circuit law.   Plaintiffs continue to seek the same kind of

damages prayed for in their complaint in compliance with Rule 54(c) of the Federal Rules of

Civil Procedure.

## III.   <u>CONCLUSION</u>

For all the reasons stated above and in Plaintiffs' Opening Memorandum (ECF No. 70),

Plaintiffs request the adoption of their proposed trial plan set forth as Attachment A to their

Opening Memorandum.

---

[7] It should be noted that *In re Genesys Data Techs., Inc.* concerned a question under the Hawaii
Rules of Civil Procedure. However, after determining that Rule 54(c) of the Hawaii rules
contained language identical to Rule 54(c) of the Federal Rules of Civil Procedure, the Fourth
Circuit conducted a multi-jurisdictional analysis of default judgment damages under the federal
rules.

Dated:   February 25, 2019     Respectfully Submitted,
EDUARDO and CARMEN AMORIN, *et al.*, Plaintiffs

_____/s/_____
Jeffrey A. Breit (VSB No. 18876)
Breit Drescher Imprevento, P.C.
600 22nd Street, Suite 402
Virginia Beach, VA 23451
Telephone: 757.670.3888
Facsimile: 757.670.3939
jeffrey@breit.law

Richard J. Serpe (VSB No. 33340)
Law Offices of Richard J. Serpe, P.C.
580 East Main Street, Suite 310
Norfolk, VA 23510
Telephone: 757.233.0009
Facsimile: 757.233.0455
Email: rserpe@serpefirm.com

Arnold Levin (*pro hac vice*)
Frederick S. Longer (*pro hac vice*)
Sandra L. Duggan (*pro hac vice*)
Levin Sedran & Berman LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Telephone: 215.592.1500
Facsimile: 215.592.4663
Email: alevin@lfsblaw.com
Email: flonger@lfsblaw.com
Email: sduggan@lfsblaw.com
*Co-Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that, on the 25th day of February 2019 I have electronically filed the foregoing with the Clerk of the Court using CM/ECF system which will then send a notification of such filing (NEF) to counsel of record.

_____/s/_____
Jeffrey A. Breit, Esquire (VSB No. 18876)
Breit Drescher Imprevento, P.C.
Towne Pavilion Center II
600 22nd Street, Suite 402
Virginia Beach, Virginia  23451
(757) 670-3888 Office
(757) 670-3939 Facsimile
jeffrey@breit.law
*Counsel for Plaintiffs Eduardo & Carmen Amorin et al.*