UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: **CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL 2047** |
| | **SECTION "L"** |
| **This document relates to:** *Elizabeth Bennett, et al v. Gebr. Knauf Verwaltungsgesellschaft, KG, et al* **Case No. 14:cv-2722** | **JUDGE ELDON FALLON** **MAGISTRATE JOSEPH WILKINSON, JR.** |

**MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
ON CLAIMS ASSERTED BY MARDECHRIA CHARLES MCDONALD**

**MAY IT PLEASE THE COURT:**

Defendants, Knauf Gips KG and Gebr. Knauf (Tianjin) Co., Ltd. (the "Knauf Defendants"), through undersigned counsel, respectfully submit this Memorandum in Support of their Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as to the claims asserted by Mardechria Charles McDonald ("Charles") against them in Plaintiffs' Fifth Amended Class Action Complaint (the "Fifth Amended Complaint").

**I.  Factual and Procedural Background**

**A.  MDL 2047 and the Bennett Complaint**

From 2004 through 2006, a housing boom in parts of the United States and rebuilding efforts necessitated by Hurricanes Rita and Katrina in the Gulf South led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used to construct and refurbish homes in coastal areas of the country,

notably the Gulf and East Coasts. Sometime after the Chinese drywall was installed, homeowners began to complain of foul-smelling odors, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829–30 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014). Many of these homeowners also began to complain of various physical afflictions believed to have been caused by the Chinese drywall.

These homeowners then began to file lawsuits in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. Because of the commonality of facts in the various cases, this litigation was designated as a multidistrict litigation. Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation ("JPML") on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 09-2047 before this Court. On June 16, 2009, this Court entered PTO 1 regarding preservation of evidence, amongst other things. On October 9, 2009, this Court entered PTO 1(B) regarding preservation of evidence. On January 24, 2012, this Court entered PTO 1(I) regarding preservation of evidence.

Since the inception of MDL 2047 in June of 2009, numerous cases have been consolidated, containing thousands of claims; over 20,000 documents have been entered into the record, millions of documents have been exchanged in discovery, dozens of depositions have been taken, and over 30 Pretrial Orders have been issued; the Court has appointed steering committees and liaison counsel for plaintiffs, homebuilders, insurers, installers, and manufacturers; it has presided over monthly status conferences, hearings, and several bellwether trials.[1]

---

[1] *See* Order, R. Doc. No. 16570 at 3-4.

### B.     The Bennett Complaint and Mardechria Charles McDonald

The original Bennett Complaint, in which Mardechria Charles McDonald ("Charles")[2] is a named plaintiff, was filed on November 13, 2014 in the Northern District of Alabama and was subsequently transferred and consolidated into MDL 2047. The Complaint was amended multiple times to amend the parties and claims. The Fifth Amended Complaint was filed on May 14, 2018. Following the Fifth Amended Complaint, certain plaintiffs intervened. The Fifth Amended Complaint is the operative complaint in this matter.

Charles is a plaintiff in the operative Fifth Amended Complaint and has made claims against the Knauf Defendants regarding the alleged presence of defective Chinese drywall installed in her former property located at 116 Dufresne Drive, Vacherie, Louisiana 70090 (the "Property"). In conducting discovery in this MDL and in the Bennett matter, this Court approved a Plaintiff Profile Form ("PPF"), Supplemental Plaintiff Profile Form ("SPPF"), Owner Disclosure Affidavit ("ODA"), and Plaintiff Fact Sheet ("PFS") to be completed by Plaintiffs and set forth full and complete answers regarding the claims and damage amounts sought by all Bennett Plaintiffs. Charles completed and submitted a PPF,[3] SPPF,[4] and PFS.[5] The documents were completed under penalty of perjury.

At the time Charles purchased the Property on June 18, 2007, the alleged Chinese drywall was already installed within the home.[6] Charles lived on the Property until 2011, when she moved to Michigan to live with her now-husband, Derrick McDonald ("McDonald").[7] Members of her

---

[2] In the original Bennett Complaint, as well as her documents in support of her claims, she is listed only as "Mardechria Charles." She was subsequently married.
[3] Exhibit 1 to Charles Depo. (attached as Exhibit A).
[4] Exhibit 2 to Charles Depo. (attached as Exhibit B).
[5] Exhibit 3 to Charles Depo. (attached as Exhibit C).
[6] *See* Deposition of Mardechria Charles McDonald ("Charles Depo.") at 16, 23-24; Act of Cash Sale, Exhibit 4 to Charles Depo. (attached as Exhibit D).
[7] Charles Depo. at 110.

and her husband's family continued to reside there after she moved (at one point paying rent), and Charles would occasionally return to the Property as well.[8] Starting in March of 2016, the Property remained vacant.[9]

Charles alleges that she began to suspect that the Property contained Chinese drywall some time prior to January 25, 2014.[10] On this date, her son, Damien Wiggins, inspected the Property for Chinese drywall.[11] Wiggins was not and is not a certified home inspector.[12] There is no report from Wiggins' inspection, nor were any follow-up inspections arranged.[13] Rather, Wiggins allegedly took one photo of Chinese drywall and submitted that evidence to Charles' attorney. This is the only evidence submitted in support of Charles' claims. Prior to her deposition, Charles had never seen the photograph.[14] Correspondingly, she could not verify that the photo was taken on the Property or provide information about the photo.[15] The photo itself shows only three letters ("ANJ") on a single board but has no unique characteristics that would allow for identifying where the photo was taken, when it was taken, or whether it was taken on the Property.[16] Charles does not recall being present when Wiggins "inspected" the Property.

After that "inspection," Charles initiated this action on November 13, 2014. Thereafter, Charles listed the Property for sale. She did not disclose the presence of Chinese drywall, despite having initiated the instant lawsuit.[17] Charles received only one offer to purchase the Property, but

---

[8] Charles Depo. at 34-35, 113-14, 131.
[9] *Id.* at 111.
[10] *Id.* at 74. Charles also recalled receiving a letter informing her that she may have Chinese drywall, though she was uncertain of when this occurred. *Id.* at 75.
[11] PPF at 2; Charles Depo. at 46.
[12] Charles Depo. at 46.
[13] At no point has an inspection been conducted that confirms the presence of Chinese drywall on the Property.
[14] *Id.* at 57, 62
[15] *Id.* at 47, 53-54.
[16] *See* Ex. 3 to PFS.
[17] Charles Depo. at 39-40.

the sale ultimately fell through.[18] Charles maintains that the sale fell through due to the discovery of Chinese drywall during the prospective buyer's inspection on May 4, 2016, but there is no documentation confirming as much.[19] By May 8, 2016, all furniture and some appliances had been removed from the Property.[20]

On July 10, 2016, there was a fire at the Property.[21] Charles' husband, McDonald, was arrested for suspected arson in connection with the fire.[22] The Louisiana Department of Public Safety and Corrections, Public Safety Services subsequently completed an Incident Investigation Report.[23] The Incident Investigation Report summarizes and provides the evidence linking Charles' husband, McDonald, to the fire. It includes, *inter alia*, plane tickets, rental car history, and phone records that indicate that McDonald flew from Detroit, Michigan to New Orleans, Louisiana on July 9, 2016, drove to Vacherie, Louisiana, was within the vicinity of the Property at the time of the fire around 1:32 AM on July 10, 2016, and returned to Detroit, Michigan later that same day.[24] The Incident Investigation Report concluded:

> Due to there being two separate area of origins, and multiple samples from Investigator Mulkey came back positive for weathered gasoline, the cause of the fire was determined to be the result of an intentionally set fire. An arrest warrant was issued for Mr. Derrick McDonald on the charge of 14:52 Simple Arson. Mr. McDonald turned himself in to the St. John Sheriff's Office on March 28th, 2017 on the warrant for Simple Arson and bonded out of jail.
> On May 22nd, 2017, I received a phone call from the St. John's DA office informing me that without a confession from Mr. McDonald, or without Mr. McDonald admitting that his cell phone was on his person for the entire trip to Louisiana, they would be unable to prosecute the case . . . .[25]

---

[18] *Id.* at 48.
[19] *Id.* at 39; *see* May 4, 2016 Inspection Report (attached as Exhibit E).
[20] Charles Depo. at 112.
[21] *Id.* at 111.
[22] *Id.* at 136.
[23] April 9, 2018 Report from Office of State Fire Marshal ("Incident Report"), Ex. 7D to Charles Depo. (attached as Exhibit F).
[24] *Id.*
[25] *Id.*

Legal proceedings were initiated in the United Stated District Court for the Eastern District of Louisiana, Case No. 17-5967, against Charles by her insurance company, for a declaratory judgment and restitution, based on insurance fraud in connection with the fire.[26] The lawsuit between Charles and her insurer ultimately settled and the balance of Charles' mortgage on the Property was paid in full, except for a subordinate mortgage owed to HUD that is personal to Charles.[27]

After the fire, photographs were taken of the damage and the remaining structure.[28] However, no photos of Chinese drywall were taken. The remainder of the structure on the Property was demolished, and all that remained was a slab of concrete.[29] Charles did not preserve or document any evidence of Chinese drywall prior to demolition, save for the photograph that was submitted by Wiggins in support of her claims—she has no additional photographs, nor did she preserve any part of the structure that was on the Property.[30] Charles eventually sold the Property (as a vacant lot) at some time between 2017 and 2019 and no longer owns the Property at 116 Dufresne Drive, Vacherie, Louisiana 70090.[31]

Charles is seeking damages for loss of the home due to the fire, loss of use, and personal property damages. Charles has failed to provide any evidence that the fire was caused by Chinese drywall, much less the Knauf Defendants' drywall. Moreover, all evidence indicates that Charles' husband is responsible for the fire. Charles has likewise failed to provide any support for her loss of use claim. Charles has not retained the damaged items she has claimed as personal property

---

[26] *See* Complaint for Declaratory Judgment and Restitution (attached as Exhibit G).
[27] Charles Depo. at 18-20, 108-09.
[28] *See* Incident Report.
[29] *Id.* at 29, 138.
[30] *Id.* at 54, 138-40.
[31] *Id.* at 19, 28-29.

Case 2:09-md-02047-EEF-MBN   Document 22368-1   Filed 11/25/19   Page 7 of 14

damages, nor does she have receipts or invoices supporting her alleged personal property damages.[32]

## II. Legal Standard for Rule 56 Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is required if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[33] "A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[34]

When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial.[35] However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[36]

On a motion for summary judgment, "[a]lthough 'the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor,' summary judgment remains appropriate if the non-movant's evidence is 'merely colorable' or 'not significantly probative.'"[37] "Only when 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party' is a full trial on the merits warranted."[38] Furthermore, "[d]iscovery is not a

---

[32] *Id.* at 77-106.
[33] Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").
[34] *Bennett v. Hartford Ins. Co. of Midwest*, 890 F.3d 597, 604 (5th Cir. 2018) (quoting *Johnson v. World All. Fin. Corp.*, 830 F.3d 192, 195 (5th Cir. 2016) (internal quotation marks omitted)).
[35] *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).
[36] *Id.* at 322; *see also Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir. 1993).
[37] *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, 892 F.3d 167, 170 (5th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 255 (1986)).
[38] *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249).

prerequisite to the disposition of a motion for summary judgment."[39] "If it appears that further discovery will not provide evidence creating a genuine issue of material fact, the district court may grant summary judgment."[40]

## III. Argument

### A. Plaintiff cannot prove that the Knauf Defendants' Chinese drywall is or was on the Property.

There is insufficient evidence of the Knauf Defendants' drywall on the Property. Additionally, further discovery will not provide evidence creating a genuine issue of material fact as to the existence of the Knauf Defendants' drywall on the Property, such that it is appropriate to grant summary judgment.[41]

As of this date, Plaintiff's only evidence of Chinese drywall on the Property is one low quality photograph. Prior to her deposition, Charles had never seen the photograph. Accordingly, she could not verify that the photo was, in fact, taken on the Property. The photo itself shows only three letters ("ANJ") on a single board but has no unique characteristics that would allow for identifying where the photo was taken, when it was taken, or whether it was taken on the Property.[42] Neither the board nor the photo have been labeled to provide additional info. Charles confirmed that this was the only photo evidence available—she does not possess additional photos of the boards on the Property, nor does she possess photos of blackening and/or corrosion of the plumbing and/or electrical systems.

---

[39] *Carder v. Cont'l Airlines, Inc.*, 595 F. App'x 293, 299 (5th Cir. 2014) (quoting *Skiba v. Jacobs Entm't Inc.*, 587 Fed. Appx. 136, 138 (5th Cir. 2014) (per curiam)).
[40] *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (citing *Access Telecom, Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 720 (5th Cir. 1999)); *see also Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990) ("This court has long recognized that a plaintiff's entitlement to discovery prior to a ruling on a motion for summary judgment is not unlimited, and may be cut off when the record shows that the requested discovery is not likely to produce the facts needed by the plaintiff to withstand a motion for summary judgment.").
[41] *See Raby*, 600 F.3d at 561.
[42] *See* Ex. 3 to PFS.

The only other photographs are those from the prospective buyer's Inspection Report.[43] The report provides limited photos of blackening and corrosion and notes that these are "[p]ossible indications of Chinese drywall," but does not confirm the presence of the Knauf Defendants' drywall or, for that matter, any Chinese drywall, on the Property.[44] Charles has never had an inspection confirm the presence Chinese drywall on the Property.

More importantly, Plaintiff (and the Knauf Defendants) have no future possibility of confirming the existence of Chinese drywall on the Property. Based on all available evidence, Charles' husband, McDonald, set fire to the Property on July 10, 2016, recklessly causing extensive damage to the structure that could have destroyed potential evidence of Chinese drywall contamination.[45] Nevertheless, photos of the Property after the incident demonstrate that significant portions of the structure remained after the fire—notably, it appears that the majority of the walls in the home were not destroyed by the fire. Hence, there was ample opportunity to confirm the existence of Chinese drywall on the Property even after the fire.[46]

Unfortunately, Charles did not preserve or document any evidence of Chinese drywall on the Property prior to demolishing the structure. Charles did not preserve samples of Chinese drywall boards removed from the Property, she did not photograph boards of Chinese drywall prior to their removal/demolition, and she did not maintain samples of the air-conditioner, plumbing, or electrical prior to demolition.[47] Charles demolished the entire structure, such that only a concrete

---

[43] *See* Ex. F.
[44] *Id.* at 24.
[45] *See* Incident Report. As will be discussed herein, Plaintiff should be precluded from recovery on that basis alone.
[46] In fact, some of the photos of the incident include images of the drywall on the Property—though it does not appear to have any of the Knauf Defendants' markings.
[47] Charles Depo. at 138-39.

slab remained.[48] She then sold the Property. There is no method for confirming that the Knauf Defendants' drywall is or was present on the Property.[49]

Consequently, "[a]lthough 'the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor,' summary judgment remains appropriate [because] the non-movant's evidence is 'merely colorable' or 'not significantly probative.'"[50] There is not "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" such that "a full trial on the merits warranted."[51] Accordingly, this Court should grant the Knauf Defendants' motion for summary judgment as to Charles' claims.

### B.     The unclean hands doctrine precludes recovery by Plaintiff.

"The clean hands doctrine, also referred to as the unclean hands doctrine, is recognized as a defense in Louisiana." *Lakewood Prop. Owners' Ass'n v. Smith*, 2014-1376 (La. App. 4 Cir. 12/23/15); 183 So. 3d 780, 792. The doctrine holds that a party cannot maintain an action if her cause of action relies—even partially—on any illegal or immoral act or transaction to which she was a party. *Id.* "The maxim of unclean hands is [] applied where plaintiff's misconduct is [] directly related to the merits of the controversy between the parties." *Claimant ID 100235033 v. BP Expl. & Prod., Inc.*, No. 18-30908, 2019 WL 5556753, at *9 (5th Cir. Oct. 29, 2019) (citing *Mitchell Bros. Film Grp. v. Cinema Adult Theater*, 604 F.2d 852, 863 (5th Cir. 1979)).

Charles has gone to extreme lengths to prevent the Knauf Defendants from assessing the merits of her claims. The destruction of the Property by Charles and her husband is directly related to the merits of her claims: Plaintiff's cause of action against the Knauf Defendants hinges on

---

[48] *Id.* at 29.
[49] Likewise, there is no evidence that Chinese drywall *caused* the fire. Rather, all evidence indicates that the fire was caused by McDonald.
[50] *Lowen Valley View*, 892 F.3d at 170 (quoting *Anderson*, 477 U.S. at 249, 255).
[51] *Lindsey*, 16 F.3d at 618 (quoting *Anderson*, 477 U.S. at 249) (internal quotation marks omitted).

whether Plaintiff's Property actually contained the Knauf Defendants' drywall and now no such inquiry can be made. Therefore, due to Plaintiff's own misconduct, her cause of action against the Knauf Defendants relies solely on her own self-serving testimony. Charles' claims should be dismissed on the basis of the unclean hands doctrine.

> **C. Plaintiff failed to comply with PTOs and to preserve and present evidence of drywall manufacturers and/or damages to the prejudice of the Knauf Defendants.**

The evidence demonstrates that Plaintiff did not comply with the requirements of PTO 1, PTO 1(B), or PTO 1(I). On June 16, 2009, this Court entered PTO 1 regarding preservation of evidence, amongst other things. On October 9, 2009, this Court entered PTO 1(B) regarding preservation of evidence. Pursuant to PTO 1(B), which was entered in October of 2009 and prior to demolition of the Property, the Court stated that Owners were and are required to preserve evidence by following a few basic procedures, including but not limited to:

> The parties shall photograph the backside of each Chinese drywall board immediately after it is removed on-site, and, document on a floor plan, building diagram, or other similar form of documentation, the location of each full or partial Chinese drywall board removed from the property and its photograph. Photographs of the wall sections should be taken so that any markings on the backside of the drywall sections are most clearly visible in the photographs.[52]

On January 24, 2012, this Court entered PTO 1(I) regarding preservation of evidence. Courts have routinely dismissed claims for failing to comply with pretrial orders, particularly when compliance is necessary to meet a plaintiff's burden.[53]

"A district court has broad discretion in all discovery matters, and such discretion will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse. Indeed, this Court has previously determined that failure of a plaintiff to comply with the preservation

---

[52] *Id*. at 3; *see also* PTO 1(B).
[53] *In re Deepwater Horizon*, 922 F.3d 660, 665 (5th Cir. 2019); *Moore v. CITGO Ref. & Chemicals Co., L.*P., 735 F.3d 309, 315 (5th Cir. 2013).

standards in PTO 1, PTO 1(B), and PTO 1(I) results in prejudice to the defendants because without compliance, a plaintiff cannot establish how much, if any, drywall of a particular manufacturer was or was not installed in the property.[54]

Here, Plaintiff disposed of the physical drywall, and does not have sufficient photographic evidence to demonstrate how much, if any, of the Knauf Defendants' drywall was in the Property. Further, Plaintiff is unable to prove how much drywall was Chinese drywall in the Property. This Court has recognized that while Plaintiff may be able to submit additional evidence, including testimony, such evidence is insufficient to establish product identification in this matter. Therefore, summary judgment should be granted.

### D. Plaintiff's damages are unsupported.

Plaintiff has also disposed of all personal property allegedly damaged by Chinese drywall. Additionally, she testified that she does not have receipts, invoices, or any other proof of payment for personal property damages. This Court has recognized that while Plaintiff may be able to submit additional evidence, including testimony, such evidence is insufficient to overcome the requirements to comply with the preservation and presentiment pretrial orders in this matter.

Similarly, Plaintiff's claim for loss of use is completely unsupported and Plaintiff has failed to provide any evidence in support of the claim. Therefore, summary judgment should be granted for lack of evidence to support damages.

### E. Plaintiff waived claims by knowingly and voluntarily purchasing the Property "as-is."

A buyer may agree to exclude the warranty against redhibitory defects; however, the terms of the exclusion must be clear and unambiguous and must be brought to the attention of the buyer.[55]

---

[54] *See* R. Docs. 20930 and 20933.
[55] La. Civ. Code art. 2548.

Charles testified that the Property was purchased "as-is" and without an inspection.[56] Accordingly, Charles knowingly and voluntarily entered the as-is sale and the waiver against redhibitory defects. She is precluded from seeking relief.

## IV.   Conclusion

Based on all the discovery in MDL 2047 and the case-specific discovery as to Charles, the facts do not support any claims against the Knauf Defendants. Charles cannot substantiate any of the facts forming the basis of the claims against the Knauf Defendants, and there is no genuine issue of material fact preventing summary judgment. Therefore, this Court should grant summary judgment, dismissing the claims with prejudice.

Respectfully submitted,

**FISHMAN HAYGOOD, L.L.P.**

*/s/ Kerry J. Miller*
**KERRY J. MILLER (#24562), T.A.**
**PAUL C. THIBODEAUX (#29446)**
**DANIEL J. DYSART (#33812)**
201 St. Charles Avenue, 46TH Floor
New Orleans, LA  70170
Telephone:     (504) 556-5549
Facsimile:     (504) 310-0275
Email:         kmiller@fishmanhaygood.com
Email:         pthibodeaux@fishmanhaygood.com
Email:         ddysart@fishmanhaygood.com

*Counsel for the Knauf Defendants,*
*Knauf Gips KG and*
*Knauf Plasterboard (Tianjin) Ltd.*

---

[56] Charles Depo. at 20.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the above and foregoing pleading has been filed with the Clerk via CM/ECF which will send a notice served via electronic mail on all counsel of record this 25th day of November, 2019.

></br>*/s/ Kerry J. Miller*  
**KERRY J. MILLER**