

**LOUISIANA DEPARTMENT OF PUBLIC SAFETY & CORRECTIONS**

**PUBLIC SAFETY SERVICES**

JOHN BEL EDWARDS
GOVERNOR

# OFFICE OF STATE FIRE MARSHAL



H. "BUTCH" BROWNING, JR.
STATE FIRE MARSHAL

April 9, 2018

RE:    16-FI-3-091 (116 Dufrense Drive; Vacherie, LA)

To Whom It May Concern:

The purpose of this correspondence is to certify the following information:

- That I am a Lieutenant with oversight of the Investigations & Special Services Division,

- As such, I serve as the custodian of the Investigations Records,

- Attached hereto are three hundred-fifty three (353) pages of documents and two hundred-twenty six (226) photographs from the Investigations Division as maintained by the Office of State Fire Marshal, and

- The attached documents are, to the best of my knowledge, true and correct copies of original records.

Ricky A. Roubique, Lieutenant
Investigations & Special Services Division
Louisiana Office of State Fire Marshal

---

> **EXHIBIT**
> **F**

٦ - ٦

Ex. D



# DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
**Public Safety Services**

# OFFICE OF STATE FIRE MARSHAL



John Bel Edwards
GOVERNOR

H. "Butch" Browning
FIRE MARSHAL

## Complaint / Incident Report

| | | | |
|---|---|---|---|
| **Complaint Number:** | 16-FE-3-000091 | **Date Submitted:** | 07/19/2016 |
| **Complaint Type:** | Emergency | **Complaint Subtype:** | Fire / Explosion |
| **Person Filing Report:** | CAPTAIN CHAD ROBICHAUX | **Contact Phone Number:** | (504) 261-7202 |
| **Reporting Agency:** | CHRIS MULKEY STRINGER AND ASSOCIATES | | |
| **Reporting Agency / Contact Address:** | | | |
| **Reason for Request:** | ORIGIN AND CAUSE INVESTIGATION | | |
| **Date & Time of Incident:** | 7/10/2016 12:00:00 AM | | |
| **Incident Location:** | 116 DUFRENSE DR, VACHERIE, SAINT JAMES, LA 70090 | | |
| **Description of Complaint:** | | | |
| SFM DISPATCH 16-FE-2-100 NON FATAL DEPUTY TYLER HEBERT ASSIGNED | | | |



**DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS**
**Public Safety Services**

**Office of State Fire Marshal**



John Bel Edwards
GOVERNOR

# INITIAL REPORT

H. "Butch" Browning
FIRE MARSHAL

| | | | |
|---|---|---|---|
| **INCIDENT NUMBER:** | 16-FI-3-000091 | **INCIDENT DATE:** | 7/10/2016 |
| **INCIDENT TYPE:** | Fire Incident | **INCIDENT TIME:** | 1:32 AM |
| **CITY/ZIP:** | WALLACE/ 70090 | **LEAD INVESTIGATOR:** | Tyler Hebert |
| **ADDRESS:** | 116 DUFRENSE DR, WALLACE, SAINT JOHN, LA 70090 | | |

## INCIDENT SUMMARY:

On 07/19/2016, at 9:00AM, Deputy State Fire Marshal Tyler Hebert responded to structure fire that occurred at 116 DUFRENSE DR, LA in SAINT JOHN parish.

The incident resulted in total loss to a 2,700 square foot unoccupied single family dwelling.



John Bel Edwards
GOVERNOR

**DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS**

**Public Safety Services**

8181 Independence Blvd. Baton Rouge, LA 70806

(225) 925-4911 (800) 256-5452 Fax (225) 925-4241



H. "Butch" Browning
FIRE MARSHAL

# INCIDENT INVESTIGATION REPORT

| INCIDENT DATE | | INCIDENT TIME | | INCIDENT TYPE | |
|---|---|---|---|---|---|
| 7/10/2016 | | 1:32 AM | | Fire Incident | |
| **OSFM CASE NUMBER** | | **REPORT START DATE** | | **REPORT COMPLETION DATE** | |
| 16-FI-3-000091 | | 7/19/2016 | | 6/17/2017 | |

| INCIDENT LOCATION: | FILE NAME |
|---|---|
| 116 DUFRENSE DR, WALLACE, LA 70090 (SAINT JOHN) | CHARLES, MARDECHREA |

| INVOLVEMENT | | | | | | |
|---|---|---|---|---|---|---|
| **NAME** | | **INVOLVEMENT** | | | **ADDRESS:** | |
| CHARLES, MARDECHREA | | Owner | | | | |
| **TYPE** | **GENDER** | | **DATE OF BIRTH** | **HOME PHONE** | **CELL PHONE** | **WORK PHONE** |
| Individual | F | | ▇▇▇▇ | | ▇▇▇▇ | |
| **NAME** | | **INVOLVEMENT** | | | **ADDRESS:** | |
| MCDONALD, DERRICK | | Arrestee, HUSBAND OF HOMEOWNER | | | | |
| **TYPE** | **GENDER** | **LICENSE NO** | **DATE OF BIRTH** | **HOME PHONE** | **CELL PHONE** | **WORK PHONE** |
| Individual | M | | ▇▇▇▇ | | ▇▇▇▇ | |

| Fire Investigation |
|---|
| **Fire Type** |
| Structure |
| Structure Type: Single Family |

| Scene Security Upon Arrival: | Legal Entry Gained By: |
|---|---|
| Unsecured | Written Consent |
| **Fire Cause** | **Property Insured?** |
| Incendiary | YES; Company: REPUBLIC FIRE AND CASUALTY; Amount: 221800.00 |

| Environmental Systems | | |
|---|---|---|
| **A/C:** | **Heat:** | **Water Heater:** |
| Central | None | None |

| Alarm/Protection/Security Systems | | | |
|---|---|---|---|
| **Fire Sprinkler Systems?** | Not Present | **Smoke Detectors?** | Present & Did Not Activate |

**REPORT NARRATIVE**

Case Narrative Reported By Tyler Hebert on Jun 15 2017 3:31PM: On July 18th at approximately 1700 hours, I, Deputy Tyler Hebert of the Louisiana State Fire Marshal's Office, received a phone call from Captain Brian Tauzin. Captain Tauzin informed me of a fire that occurred the previous week that was under investigation by the homeowner's insurance company. Captain Tauzin stated that the private fire investigator hired by the insurance agency was requesting assistance from the State Fire Marshal's Office. Captain Tauzin advised me to contact investigator Chris Mulkey and to arrange to meet with him the next day at the fire scene with Deputy Pete Lentini. Shortly after my conversation with Captain Tauzin, I contacted Mr. Mulkey, who agreed to meet with me the following day at 116 Dufrense Dr., Wallace, LA at 0900 hours.

On July 19th at approximately 0900 hours, Deputy Lentini and I arrived at 116 Dufrense Dr. in Wallace, Louisiana. Investigator Mulkey arrived shortly after our arrival, and gave written permission for Deputy Lentini and I to enter the residence. Deputy Lentini and I followed Investigator Mulkey, who escorted us to the back of the house, while explaining what steps in the investigation process he has already taken. Investigator Mulkey explained that he had already removed a majority of the fire debris from the residence in areas that may have contained possible ignition sources. I noticed that Bedroom 1 and Bedroom 2 were entirely empty, with no debris on the floor. Investigator Mulkey explained that he took five samples from Bedroom 1 and Bedroom 2, and all except for one came back positive for weathered gasoline one sample came back negative for any ignitable liquid residue.

I then began my exterior scene survey of the structure, which was identified as a 50'X54' wood framed unoccupied single family dwelling on a slab. I began my survey on the East side of the structure, which is where the front entrance facing Dufrense Drive is located. I noticed that only the roof eave was present, while the rest of the roof was missing. I also noticed heavy soot deposit coming from above the front door. I then moved to the North side of the structure, where I noticed that only the roof eave was present until the start of bedroom 1, where no roof or roof eave was present. I observed soot deposit above both windows for bedroom 1. I also noticed fire debris coming from both windows, but Investigator Mulkey explained that he had put that there in the process of examining bedroom 1. I continued to the West side of the structure, where I observed that the eave was still present, but the rest of the roof was missing around the area of bedroom 1. I also noticed that the siding around the roofline near bedroom 2 was slightly melted. Again I noticed debris coming from the windows of bedroom 2, but again was explained by Investigator Mulkey that the fire debris was from the interior of bedroom 2, and placed there by him. I continued to the South side of the structure, where I noticed the roof in the area of bedroom 2 was completely missing, and only the eave was present on the rest of the south side of the structure.

I then entered the structure from the East side by means of the garage door, which was opened upon arrival. I observed that this room was the garage, and proceeded to bedroom 3, located on the Northwest side of the structure, due to this area being one of the two areas in the structure that showed the most damage. I observed that the floors were clear from all fire debris, which was cleared out by Investigator Mulkey. I also noticed that most of the drywall was missing from the west wall, and the top of the plywood on the West and North wall appeared to be missing with charring around edges. The roof beams on the North West side of the room were missing. I then moved into restroom 2, where I observed heavy fire debris covering the floors, sink, bathtub and toilet, which appeared to be from the ceiling and roof. I noticed no fire damage to the sink, bathtub and toilet, and very light soot deposits on the walls. I moved into closets 3 and 4, which had no soot deposits, and fire debris from the ceiling and roof on the floor. I observed that the wood beams in the ceiling showed light charring on the top of the beams, with almost no fire damage to the rest of the wood. I then went into the kitchen, which showed an obvious line of demarcation with heavy soot deposits on top, and no soot deposits on the bottom portion, which continued into the living room. In the kitchen, a BIC brand lighter was found near the rear exit on the ground. There was fire debris from the ceiling on the ground and counter tops. The wooden beams above the ceiling, where visible, was charred on top, with no obvious fire damage on the bottom. I continued to Bedroom 1, which was the second area with the most fire damage in the structure. I observed that the ceiling and roof were almost completely missing. I also noticed that the beams on the South side of the room appeared to be heavily charred, and missing in the middle. There was heavy fire damage to the drywall, and sections of drywall appeared to be missing. The floors were completely free of fire debris due to Investigator Mulkey's previous visit to the structure. I then moved into restroom 1, where it was observed that the South side of the wall interior was missing in a "V" like pattern, and there was heavy char to the interior wall beams. There also appeared to be fire debris inside of the tub, which indicates that the "V" pattern was caused by fall down of the ceiling and roof debris. The rest of the restroom showed light soot deposits, and heavy fire debris from the ceiling and roof. I then continued to Bedroom 2, where it was observed that there was heavy fire debris from the ceiling and roof. It was also observed that there was light soot deposits on the walls of the bedroom. On the South wall, the drywall appeared to be pulled back with no obvious fire damage to the plywood and beams behind the drywall, except for heavy charring to a wooden beam that separated the exterior bricks to the interior wall. The ceiling and roof was missing, with heavy charring to the top beams for the walls. I then continued back to the laundry room, where it was observed that there was heavy fire debris from the ceiling and roof on the floor. It was also observed that the door separating the laundry room and the garage appeared to have no door handle. Upon further examination, the door handle was found on the ground next to the door, and the door appeared to show damage to the wood, where the bolt would usually be located. I then continued into the garage, and noticed heavy fire debris on the ground from the ceiling and roof. The roof was missing, and the beams for the ceiling closest to the north wall appeared to have obtained the most charring, with the beams closer to the south side of the garage being lightly charred.

After concluding my exterior and interior scene surveys, I determined that Bedroom 1 and 3 had the heaviest amount of damage, which led me to determine that these two bedrooms were both areas of origin, which created two separate areas of origin. At that time, Deputy Lentini took photographs of the interior and exterior of the structure for documentation purposes.

I exited the residence and spoke with Investigator Mulkey about what he had learned about the fire scene. Mr. Mulkey explained that when he spoke with the Fire Chief Helmond Lumar of the St John West Side Fire Department, he learned that the homeowner, Mardechrea Charles, was living in Michigan at the time of the fire. Chief Lumar was also informed from the homeowner that her furniture from the structure was supposed to be piled in the garage. When the fire department extinguished the flames, no furniture was found to be in the garage. I asked Mr. Mulkey if he had the information for the fire chief, the first firefighter on scene and any witnesses to the fire. Mr. Mulkey provided me with telephone numbers for these individuals. Mr. Mulkey also informed me that the neighbor, Mr. Warren Coleman III possibly had video surveillance footage, but would be difficult to get due to Mr. Coleman working nights. Mr. Mulkey also informed me that the residence had Chinese Drywall, and was on the market to be sold. Mr. Mulkey also informed me that he took approximately 5 samples, with all but one coming back positive for weathered gasoline. The samples were obtained from three various locations in Bedroom 3, and two separate locations in Bedroom 1. Once I had received all the information

16-FI-3-
000091

2 of 4

from Mr. Mulkey, Deputy Lentini and I left the fire scene.

On July 24th, 2016, I met with Mr. Warren Coleman III in an attempt to retrieve the surveillance camera footage from July 10th. Mr. Coleman explained that he was unfamiliar with the surveillance system due to him rarely using it, but if he would be able to find the footage I needed, he would allow me to copy it. When Mr. Coleman viewed his surveillance camera footage, it was discovered that the footage only went back to July 17th, and all footage prior to July 17th, 2016 had been recorded over.

On September 29th, 2016, I arrived at the St John West Side Fire Department to obtain a copy of their fire report and attempt to talk to the firefighters who were first on scene. I spoke with Mr. Devon Jackson, who was the first firefighter on scene on July 10th, 2016. Mr. Jackson stated that when he arrived on scene, the two rear bedrooms, identified as Bedroom 1 and Bedroom 3, had heavy fire coming from them. I then spoke with Mr. Alfred Cunningham, who stated that when he arrived on scene, the structure was already involved. Mr. Cunningham stated that he entered the home through the garage window, and noticed that the garage door was unlocked and the door leading to the structure from the garage appeared to be "kicked in." Mr. Cunningham stated that when Entergy arrived to pull the meter to the house, the Entergy worker stated that he would pull the meter, but the power was already off. Mr. Jackson and Mr. Cunningham both provided written voluntary statements, and Mr. Jackson provided me with the fire report from July 10th, 2016.

On September 30th, 2016 at approximately 1400 hours, I interviewed Fire Chief Helmond Lumar via telephone. Mr. Lumar stated that the structure was fully involved in the rear of structure and smoke was coming out of the eaves. I asked Mr. Lumar if he spoke with the homeowner, Ms. Charles, which he stated he did. Mr. Lumar stated that Ms. Charles had told him that she had planned on coming back for the furniture that was in the garage. Mr. Lumar also stated that there was no furniture in the garage when they extinguished the fire. Mr. Lumar then said that he heard that Ms. Charles was having trouble selling the house due to the presence of Chinese Drywall.

On October 20th, 2016, Captain Brian Tauzin and I met with Ms. Shannon Burr, who is an attorney from Deutsch Kerrigan, L.L.P, representing the insurance company, Republic Fire and Casualty, Ms. Burr explained to Captain Tauzin and I that they had questioned multiple individuals involved with the case under oath, and discovered that the day before the fire, Mrs. Charles's husband, Mr. Derrick McDonald, flew from Michigan to Louis Armstrong International Airport. The next day, Mr. McDonald flew from Louis Armstrong International Airport back to Michigan. While reviewing Mr. Mcdonald's statements under oath, I noticed that Mr. McDonald stated he was in New Orleans for a friend's party, and he claimed not to have left New Orleans. When asked specifically if Mr. McDonald traveled to Vacherie, Mr. McDonald stated that he did not travel to Vacherie. Mr. McDonald also stated that selling the house would relieve a financial burden due to paying for both the house in Wallace, and the apartment in Michigan. Ms. Burr showed Captain Tauzin and me the airline ticket that Mr. McDonald had purchased from Spirit Airlines, and produced a credit card statement showing Mr. McDonald purchased a hotel room at the Extended Stay in Metairie, as well as information that he rented a car. We then reviewed Mrs. Charles testimony under oath, where Ms. Charles stated that the house was listed for sale and had a potential buyer until the contract fell through after the house failed inspection due to the presence of Chinese drywall. During testimony, Mrs. Charles claimed to have received information of the Chinese drywall previously from an Attorney in Alabama, but did not think it was serious enough to inform potential buyers. Mrs. Charles originally stated that Mr. McDonald was home working during the week of the fire, but later stated that she misunderstood the question and stated Mr. McDonald came down to visit friends. At that time, I requested to obtain a copy of all information that we had reviewed, and Ms. Burr had the information sent to me via email.

On November 3rd, 2016, I faxed Sprint Compliance Department a court order signed by St John Parish ADA and St John Parish Judge J. Snowdy, requesting the cell phone records of Mr. Derrick McDonald. The cell phone records were to include date and time calls were placed or received, as well as cell site location that each call began and ended on. On November 4th, 2016, Sprint Compliance Department returned Mr. McDonald's cell phone records.

On November 4th, 2016, Sprint Compliance Department returned Mr. McDonald cell phone records. Through records of travel, phone records and other documents, I was able to confirm that Mr. McDonald arrived in the Louis Armstrong International Airport on July 9th at approximately 1700 hours. Mr. McDonald was "pinged" in the Kenner area at approximately 2237 hours. At approximately 0017 hours, Mr. McDonald called Mrs. Charles, "pinging" off of a cell tower in Laplace, speaking to Mrs. Charles for approximately 23 minutes, and when ending the conversation, "pinging" off a cell tower on Airline Highway in Gramercy. At approximately 0047 hours, Mr. McDonald received a phone call from Mrs. Charles. which Mr. McDonald's cell phone "pinging" off a cell tower off of Highway 44 in Gramercy, which is located approximately one mile across the Mississippi River from 116 Dufrense Drive in Wallace, Louisiana. At approximately 0056 hours, Mr. McDonald called Mrs. Charles, still "pinging" off the cell phone tower in Gramercy off of Highway 44. Mr. McDonald received a telephone call from Mrs. Charles, with Mr. McDonald's cell phone "pinging" off of a cell phone tower in Kenner at 0208 hours. Mr. McDonalds "pings" off of a cell phone tower in Louis Armstrong International Airport at approximately 1130 hours. During Mr. McDonald's visit to Louisiana, the only phone numbers he calls, texts, or received a call from, are ▮▮▮▮▮▮▮▮▮▮, which was identified as Mrs. Charles, and ▮▮▮▮▮▮

On January 4th, 2017 Captain Tauzin and I received an email from Ms. Shannon Burr with records from Thrifty Car Rental. Records indicate that Mr. Derrick McDonald picked up a Nissan Sentra from the Louis Armstrong International Airport on July 9th 2016 at 5:36pm and returned it on July 10th, 2016 at 2:00pm. Mr. McDonald left with the vehicle's odometer reading 23,878 miles and returned it with the odometer reading 24,155 miles, which shows Mr. McDonald traveled 277 miles.

Due to there being two separate area of origins, and multiple samples from Investigator Mulkey came back positive for weathered gasoline, the cause of the fire was determined to be the result of an intentionally set fire. An arrest warrant was issued for Mr. Derrick McDonald on the charge of 14:52 Simple Arson. Mr. McDonald turned himself in to the St. John Sheriff's Office on March 28th, 2017 on the warrant for Simple Arson and bonded out of jail.

On May 22nd, 2017, I received a phone call from the St John's DA office informing me that without a confession from Mr. McDonald, or without Mr. McDonald admitting that his cell phone was on his person for the entire trip to Louisiana, they would be unable to prosecute the case, and all charges relating to this fire would be dropped. This case will be closed until more information is able to be obtained.

| ATTACHED INVESTIGATION COMPONENTS | | | | |
|---|---|---|---|---|
| DIAGRAM / SKETCH | EVIDENCE LOG | K-9 REPORT | X | PHOTOGRAPHS |

| PHOTOGRAPHIC LOG | STATEMENTS (RECORDED) | STATEMENTS (WRITTEN) | OTHER: | |
|---|---|---|---|---|

| REPORTING DEPUTY NAME: | SIGNATURE: | | BADGE: |
|---|---|---|---|
| Tyler Hebert | | | 605 |

| NAME OF SUPERVISOR: | SIGNATURE OF SUPERVISOR: | | BADGE: |
|---|---|---|---|
| Brian Tauzin | | | 036 |

16-FI-3-
000091

4 of 4

































