IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANNA

| | | |
|---|---|---|
| REPUBLIC FIRE AND CASUALTY INSURANCE COMPANY, | : : : | CIVIL ACTION NO. |
| | : | JUDGE: |
| Plaintiff, | : : | MAGISTRATE: |
| v. | : : | |
| MARDECHRIA CHARLES and DERRICK MCDONALD, | : : | REQUEST FOR JURY TRIAL |
| Defendants. | | |

**COMPLAINT FOR DECLARATORY JUDGMENT AND RESTITUTION**

Plaintiff Republic Fire and Casualty Insurance Company ("Republic"), for its complaint against the defendants Mardechria Charles ("Charles") and Derrick McDonald ("McDonald") alleges as follows:

**INTRODUCTION**

1. This lawsuit is an action for declaratory judgment pursuant to 28 U.S.C. §2201, for the purpose of resolving an actual controversy between Republic and Charles arising under a Republic Residential Homeowners Insurance Policy HI3 0774069 09 12, ("the Policy") with the effective dates of June 15, 2016 through June 15, 2017 issued to Mardechria Charles ("Charles"), affording homeowners coverage to the premises located at 116 Dufresne Drive in Vacherie, LA. ("the Property")

2. Republic seeks a declaration as to whether it has any obligation to indemnify Charles under the Policy for property damage and additional living expenses/loss of use allegedly resulting from a fire ("the Fire") that occurred at 116 Dufresne Drive in Vacherie, LA

4824-8322-7722.1

on or about July 10, 2016.

3. Republic seeks a declaration judgment ruling it has no obligation to pay the balance of Charles's HUD mortgage, or any other mortgage amounts.

4. Republic also seeks reimbursement of payments it has made on behalf of Charles in connection with the Fire.

## THE PARTIES

5. Plaintiff, Republic, is an insurance company organized and existing under the laws of the state of Oklahoma, with its principal place of business in Texas.

6. Defendant, Mardechria Charles, is an individual of the age of majority, currently residing in the state of Michigan. Defendant, Derrick McDonald, is the husband of Mardechria Charles and, as such, is an insured under the contract/policy of insurance.

## JURISDICTION AND VENUE

7. This Court has specific personal jurisdiction over defendant because Charles owns the subject property in the state, and entered into the subject contract/policy of insurance in this state.

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332, because there is complete diversity between plaintiff and the defendant and the amount in controversy exceeds $75,000, exclusive of interest and costs.

9. Venue is proper in the United States District Court for the Eastern District of Louisiana because the property that is the subject of this litigation is located within the geographic boundaries of this Court.

# FACTUAL BACKGROUND

## The Fire

10. On July 10, 2016, at or around 1:00 a.m., a fire occurred at 116 Dufresne, Vacherie, Louisiana. The St. John Parish Fire Department received notification of a fire at the subject Property at 1:35 a.m. and Firefighters arrived on the scene at 1:41 a.m.

11. Firefighters noted that the home was vacant, "for sale", and there was no furniture or personal property in the home. Therefore, the home was vacant and unoccupied.

## The Property

12. The Property was a single family dwelling, located at 116 Dufresne, Vacherie, La.

13. Defendant Charles purchased the property, subject to a mortgage, on or about June 18, 2007. After purchasing the Property, Charles lived there until 2011 when she moved to Michigan.

14. Charles' son, Damien Wiggins, who had lived there from the date of purchase with Charles, continued to live at the Property until November, 2015.

15. On or about November, 2015 Charles' brother, Rory Charles, moved into the Property with his wife and children. Rory and his family moved out of the house mid-March, 2016.

16. No-one lived in the house after Rory and his family moved out in mid-March, 2016 until the July 10, 2016 fire. Thus, no-one resided at the house, which remained vacant and unoccupied for more than 60 days prior to the Fire.

17. On or about April 25, 2016, Charles listed the Property for sale with Lacher Real Estate LLC. The following day, April 26, 2016, Charles provided a Residential Property

Disclosure pursuant to La. R.S. 9:3195. Charles did not disclose the presence of Chinese drywall on the Residential Property Disclosure or to the realtor despite the fact that more than a year prior to listing the house for sale, on or about January 25, 2014, Charles learned that the Property contained Chinese drywall and retained an attorney to represent her for alleged damages related to the Chinese drywall at the property.

18. On or about April 27, 2016, Charles entered into a Louisiana Residential Agreement to Buy or Sell the Property with prospective buyer Kendell Wilson. However, the sale was not finalized, and upon information and belief the offer was revoked due to the discovery of Chinese drywall during the inspection.

19. Sometime on or around May, 2016, Charles visited the Property and removed all of her furniture, personal property, and contents from the Property.

20. On June 24, 2016, Charles married Derrick McDonald.

21. On July 9, 2016, (the day before the fire) McDonald traveled to New Orleans from Michigan and returned to Michigan the following day, mere hours after the fire.

21. On July 10, 2016, at the time of the Fire, the Property was still for sale, with a "For Sale" sign in the yard.

### Claim and Investigation

22. Charles notified Republic about the fire on or about July 10, 2016, whereupon Republic commenced an investigation of the fire, and assigned claim number 08HP 0476232 under policy number HI3 0774069 09 12.

23. Republic provided two hotel rooms under the policy's Loss of Use coverage provisions based on information provided by Charles. However, when Republic learned that no-

one had been living in the Property at the time of the fire, the hotel rooms were discontinued.

24. Pursuant to its investigation of the claim, Republic inspected the Property and retained a Cause and Origin expert to conduct an investigation of the fire, who took samples of the fire debris from several areas of the Property.

25. The samples of debris were tested and revealed the presence of gasoline.

26. The expert reported to Republic that a) there were two separate and distinct areas of origin, b) both of the areas of origin were intentionally set, and c) the item first ignited was gasoline vapors and the source of ignition was an open flame.

27. Republic requested that Charles provide a signed and sworn proof of loss documenting her alleged losses. No signed and sworn proof of loss documenting damages was provided to Republic.

28. Republic requested that Charles provide documents related to its investigation of the claim and requested Examinations Under Oath of Charles, her husband (Derrick McDonald), her son (Damien Wiggins) and Juanette Charles (Charles' sister).

29. Investigation and documents revealed that Charles' husband, McDonald flew to New Orleans from Michigan the night before the Fire, and returned to Michigan the following day. Charles denied that McDonald had traveled to New Orleans before the fire. Only after being confronted with the documents, did Charles admit under oath that McDonald had flown to New Orleans July 9, 2017 and returned to Michigan the following day.

30. The Louisiana State Fire Marshall investigated the fire and determined that the fire was intentionally set. Subsequently, an arrest warrant was issued for the arrest of Charles' husband, McDonald. McDonald was arrested for simple arson of an inhabited dwelling in

connection with the subject Fire.

31. Cell phone records indicate that there were numerous phone calls between Charles and McDonald the night of the fire.

## Mortgage

32. Although McDonald has been arrested for setting the fire, pursuant to jurisprudence, Republic upheld its obligation and on September 28, 2016 Republic issued check number 0004834784 to U.S. Bank N.A. ISAOA and C/O U.S. Bank Home Mortgage in the amount of $138,723.33 in full payment of mortgage loan number 9902412475 (See Exhibit A).

33. In a letter dated June 7, 2017, Republic was informed that HUD has a subordinate mortgage, and Charles requested that Republic pay the subordinate mortgage (See Exhibit B).

## The Policy

34. Republic issued a Residential Homeowners Policy to Charles, policy number HI3 0774069 09, with effective dates June 15, 2016 to June 15, 2017 (the "Policy) for 116 Dufresne Drive, Vacherie, La. A true and correct copy of the Policy is appended hereto as Exhibit C.

35. The Policy contains Declarations that provide, in pertinent part, that the Named Insured is "Charles, Mardechrea" (sic); the "residence premises" is 116 Dufresne Drive, Vacherie, La 70090; the policy period is June 15, 2016 to June 15, 2017. See Exhibit C, p. 1

36. The Declarations provide the following Limits of Liability:

```
A. Dwelling              $221,800.00
B. Other Structure        $22,180.00
C. Personal Property     $177,400.00
D. Loss of Use            $88,720.00
```

37. The Policy Contains a Definitions part, which provides, in relevant part:

**DEFINITONS**

A. In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household.

. . .

5. "Insured" means:

   a. You and residents of your household who are:

   (1) Your relatives; or
   (2) Other persons under the age of 21 and in your care or the care of a resident of your household who is your relative;

. . .

6. "Insured location" means:

   a. The "residence premises";

   b. The part of other premises, other structures and grounds used by you during the policy period for your use as a residence;

   **(1)** Which is shown in the Declarations; or
   **(2)** Which is acquired by you during the policy period for your use as a residence;

. . .

11. "Residence premises" means:

   a. The one family dwelling where you reside;

   b. The two-, three- or four-family dwelling where you reside in at least one of the family units; or

   c. That part of any other building where you reside;

and which is shown as the "residence premises" in the Declarations.

38. The Policy also contains a Dwelling Coverage Part, which provides, in [pertinent part:

**A. Coverage A- Dwelling**

1. We cover:

   a. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

   b. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises"

39. The Policy's applicable and relevant coverage B and C parts, for "other structures" and "Personal Property" also refer to the "resident premises". The Policy contains Loss of Use coverage, which provides, in pertinent part:

**Coverage D- Loss of Use**

The limit of liability for Coverage D is the total limit for the coverages in **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use below.

**1. Additional Living Expense**

If a loss covered under Section I makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

4824-8322-7722.1                               8

40. Additionally, the policy excludes coverage as follows:

**SECTION I – PERILS INSURED AGAINST**
   **A. Coverage A-Dwelling and Coverage B- Other Structures**
. . .
    **2**. We do not insure, however, for loss:
. . .
     **c**. Caused by:
. . .
      **(4)** Vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

41. The Policy provides the following relevant conditions:

**SECTION I – CONDITIONS**

**Duties After Loss.**

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

**1.** Give prompt notice to us or out agent;
**2.** Notify the police in case of loss of theft;

. . .

**4.** Protect the property from further damage. If repairs to the property are required, you must:
   **a.** Make reasonable and necessary repairs to protect the property; and
   **b.** Keep an accurate record of repair expenses;
**5.** Cooperate with us in the investigation of a claim;

4824-8322-7722.1     9

6. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;
7. As often as we reasonably require:
    a. Show the damages property;
    b. Provide us with records and documents we request and permit us to make copies; and
    c. Submit to examination under oath, while not in the presence of another "insured", and sign the same;
8. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:
    a. The time and cause of loss;
    b. The interests of all "insureds" and all others in the property involved and all liens on the property;
    c. Other insurance which may cover the loss;
    d. Changes in title or occupancy of the property during the term of the policy;
    e. Specifications of damaged buildings and detailed repair estimates;
    f. The inventory of damaged personal property described in **6.** Above;
    g. Receipts for additional living expenses incurred and records that support the fair rental value loss; and
    h. Evidence or affidavit that supports a claim under **E.6.** Credit Card, Electronic Funds Transfer Card or Access Device, Forgery and Counterfeit Money under Section I – Property Coverages, stating the amount and cause of loss.

42. The policy also contains the following exclusion (as provided in the Louisiana Endorsement)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

**SPECIAL PROVISIONS - LOUISIANA**

**SECTION I - EXCLUSIONS**

**Paragraph 8. Intentional Loss** is replaced by the following:

**8. Intentional Loss**

Intentional loss means any loss arising out of any act committed:

**a.** With respect to loss caused by fire:

**(1)** By or at the direction of the "insured"; and

**(2)** With the intent to cause a loss.

**SECTION I – CONDITIONS**

Paragraph **R. Concealment Or Fraud** is replaced by the following:

**R. Concealment Or Fraud**

**1.** With respect to loss caused by fire, we do not provide coverage to the "insured" who, whether before or after a loss, has:

**a.** Intentionally concealed or misrepresented any material fact or circumstance;

**b.** Engaged in fraudulent conduct; or

**c.** Made false statements;

relating to this insurance.

43. The Declaration page of the Policy provides, in pertinent part, that there is only one mortgage on the property as follows:

| Mortgagees | Number 1 | Number 2 |
|---|---|---|
| | U.S. BANK N.A. ISOAO | |
| | C/O U.S. BANK HOME MORTGAGE | |
| | P.O. BOX 7298 | |
| | SPRINGFIELD, OH 45501 | |
| | Loan Number    99102412475 | |

44. The Policy provides the following with regard to mortgages:

## COUNT I

### (Declaration As To No Coverage)

**L. Mortgage Clause**

1. If a mortgagee is named in this policy, any loss payable under Coverage **A** or **B** will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

2. If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

    a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

    b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

    c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Paragraphs **F.** Appraisal **H.** Suit Against Us and **J.** Loss Payment under Section **I** – Conditions also apply to the mortgage.

    . . .

4. If we pay the mortgage for any loss and deny payment to you:

    a. We are subrogated to all the rights of the mortgage granted under the mortgage on the property; or

    b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued

> interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.
>
> **5.** Subrogation will not impair the right of the mortgage to recover the full amount of the mortgagee's claim.

45. Republic hereby incorporates by reference all prior allegations as if fully set forth herein.

46. There is no coverage under the policy under the policy for the following reasons:

47. The Property was not a "residence premises" as defined by the policy because no one lived there at the time of the fire and for at least 90 days leading up to the fire; no one lived there at any time during the policy period, and the named insured had not lived there since 2011.

48. Coverage is excluded under the Intentional Loss exclusion of the policy because the fire was intentionally set by Derrick McDonald, insured under the policy, at the direction of Charles, as evidenced by telephone records and other evidence.

49. Coverage is excluded under the Concealment or Fraud exclusion of the policy because Charles fraudulently represented that loss of use expenses were needed for multiple persons, despite no-one having lived at the property for several months. In addition, Charles misrepresented the status of the property as a residence, and is thus prohibited from recovering pursuant to the "concealment or fraud" provisions. Charles further misrepresented to Republic that McDonald had not traveled to New Orleans shortly before the fire, although when confronted with the evidence Charles subsequently had to admit that McDonald had flown to New Orleans July 9, 2017 and returned to Michigan the following day.

50. Coverage is excluded under the "vandalism and malicious mischief" provision

because the property was vacant for more than 60 days prior to the fire.

51. The coverages usually granted under Coverage A-Dwelling coverage, Coverage B-Other Structures coverage, Coverage C Personal Property and Coverage D- Loss of use are not triggered in this case because the property was not a "residence premises".

52. No payment is owed under Coverage B, because no damage was sustained by other structures.

53. No payment is owed under Coverage C- because no personal property was located at the Property.

54. No payment is owed under Coverage D – Loss of Use because the property was not a "residence premises" and no-one was renting or living in the property at the time of the loss;

55. Charles failed to provide proof of loss as required by the policy.

## COUNT II

**(Declaration as to Rights and Responsibilities related to Mortgagees)**

55. The policy identifies one mortgagee, U.S. Bank, and Republic has satisfied its obligation to the mortgagee identified in the policy by paying the balance due in full on September 28, 2016, as described above.

56. Republic has no obligation to pay the HUD subordinate mortgage because it was not listed on the policy.

## COUNT III

**(Declaration As To Restitution/Reimbursement)**

57. Republic incorporates by reference all prior allegations as if fully set forth

4824-8322-7722.1 14

herein.

58. Republic has paid $138,723.33 to the mortgagee listed on the property.

59. Under the terms of the Mortgage Clause, Republic is subrogated to all the rights of the mortgagee granted under the mortgage on the property or full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

**WHEREFORE**, Republic demands judgment as follows:

a. For a declaration that Republic does not owe Charles or McDonald any payments and the Policy does not provide coverage for losses arising out of the fire of July 10, 2016;

b. For a declaration that Republic has paid the one Mortgage, U.S. Bank, the full balance of the Mortgage and owes no further Mortgage payments under the policy.

c. For judgment and restitution from Defendants in the amount of $ 138,723.33 plus interest and costs from the date of the filing of this complaint.

d. For such other and further relief as this Court may deem just and proper.

e. Republic, by statues, contracts, code and natural laws, is subrogee to the rights of the mortgagee for any agreements it was required to make by contract/policy, to the mortgagee, U.S. Bank, against the responsible parties for the fire, Mardechria Charles and Derrick McDonald, in the amount of $138,723.33 and to temporary housing in the amount of $816.72, which was paid under Loss of Use coverage due to Charles' misrepresentation, and hereby seeks reimbursement and restitution from Defendants for the above referenced amounts paid.

  f. A trial by jury on all issues so triable.

Respectfully submitted:

*/s/ James V. King, III*
JAMES W. HAILEY, III (23111)
SHANNON BURR (28445)
MEREDITH A. MAYBERRY (28958)
JAMES V. KING, III (36106)
Lewis Brisbois Bisgaard & Smith, LLP
400 Poydras Street, Suite 2000
New Orleans, LA 70130
Phone: 504-322-4100
Fax: 504-754-7569
Email: james.king@lewisbrisbois.com
*Attorneys for Republic Fire and Casualty Insurance Company*

## CERTIFICATE OF SERVICE

I certify that a copy of the above and foregoing pleading has been served upon by online filing to the Federal EM/ECF system, this 20th day of June, 2017.

            */s/ James V. King, III*
            JAMES V. KING, III