## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br><br>SECTION: L |
| THIS DOCUMENT RELATES TO:<br><br>*Elizabeth Bennett, et al. v. Knauf Gips, KG, et al.*<br>**2:14-cv-02722-EEF-JCW** | JUDGE ELDON FALLON<br><br>MAG. JUDGE WILKINSON |

## PLAINTIFF FACT SHEET

Name of Plaintiff:  David Fozard & Candace Fozard

Affected Property Address:  72685 Diamondhead Drive North, Diamondhead, MS  39525

## I.  Purchase, Sale and/or Transfer of Ownership of Property

1.  On what date did you purchase the Property?

**Response**:  Plaintiff objects to this question as duplicative.  In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants.  Plaintiff has previously provided this information to defendants in the Bennett Supplemental Plaintiff Profile Form ("SPPF").  Plaintiff directs the defendants to Section II of the SPPF. Without waiving said objection, Plaintiff adopts the SPPF response again here and intends to provide the exact same date as provided in the verified SPPF as follows: Plaintiff purchased the property:

(Month/Day/Year)     03 / 19 / 2015

2.  When you took ownership of the Property, what was the name of the seller?

Sally J. Cleek, Trustee of and under the Cleek Family R. Revocable Trust

**EXHIBIT**

**3**



3. Name and address of the realtor?

Marsha Buras, Coldwell Banker Alfonso REealty, 4300 Gex Road, Diamondhead, MS 39525

4. Name and address of the closing agent?

Casano Law Firm, PA, 4370 Leisure Time Drive, Diamondhead, MS  39525

5. What was the price of the home when you purchased it?  $ 137,000.00

6. Was it an "as-is" sale?

**Response**:  Plaintiff objects to the use of "as-is" in this question as vague, ambiguous, uncertain, and unintelligible; consequently, Plaintiff cannot determine the exact nature of the information being sought.  This term is not defined and is not commonly understood with one accepted meaning; multiple inpretations are possible.  Without waiving said objection, plaintiff responds as follows:

☐ Yes    ☑ No    ☐ I'm not sure.

7. If you sold or transferred ownership of the Property, what was the name of the purchaser?

N/A

8. If you sold or transferred ownership of the Property, what was the name and address of the realtor?

N/A

9. If you sold or transferred ownership of the Property, what was the name and address of closing agent?

N/A

10. If you sold or transferred ownership of the Property, what was the price paid for home?
$ N/A

## II.  Appraisal of the Home

11. Date of each appraisal:

a. _02_ / _23_ /20_15_

b. _____/_____/20_____

2

**PFS REQUEST FOR DOCUMENT PRODUCTION #1**: Please produce copies of any and all appraisals performed on the house both prior and subsequent to the occurrence of any of the events allenged in the petition.

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 1."

## III.  Discovery of Drywall

12.  Date that the property was constructed and/or renovated that installed the allegedly defective Chinese Drywall.

**Response**:  Plaintiff objects to this question as duplicative.  In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants.  Plaintiff has previously provided this information to defendants in the Bennett Supplemental Plaintiff Profile Form ("SPPF").  Plaintiff directs the defendants to  Section II of the SPPF. Without waiving said objection, Plaintiff adopts the SPPF response again here and intends to provide the exact same date as provided in the verified SPPF as follows: The property construction and/or renovation that installed the allegedly defective drywall occurred on or about the following date (to the best of my knowledge):

> (Month/Day/Year)        ____/____/20_06_

**PFS REQUEST FOR DOCUMENT PRODUCTION #2**: Please produce all documents, reports, photographs, videotapes, samples and any other materials which evidence and/or identify that there is defective Chinese Drywall in the Property.

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 2."

## IV.  Manufacturer/Seller of Drywall

13.  Who sold or distributed the drywall in the house?

**Response**:  Plaintiff objects to this question as duplicative.  In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants.  Plaintiff has previously provided this information to defendants in the Plaintiff Profile Form ("PPF"). Plaintiff directs the defendants to  Section X of the PPF.  Without waiving said objection, Plaintiff adopts the PPF response again here and intends to provide the exact same information as provided in the verified PPF as follows:   The drywall Supplier's name (to the best of my knowledge) is:

I don't know.

**PFS REQUEST FOR DOCUMENT PRODUCTION #3**: Please produce all documents, reports, photographs, videotapes, samples and any other materials which evidence and/or identify the manufacturer of drywall installed in the house. The submission must be in the form of PTO 1(B).

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 3."

## V.  Damages

14.  Identify any harm, financial or otherwise, that you contend was caused by defective Chinese Drywall installed in the Property.

**Response**:  Plaintiff directs the defendants to review the complaint filed with the court in this case for a full listing of the claims being asserted and the damages being sought.  The defective Knauf Chinese Drywall emitted gasses that cause damage to Plaintiff's home and the personal property contained therein.  It also significantly diminished the use and enjoyment of the home; therefore, Plaintiff seeks the following:  all compensatory, statutory, and/or punitive damages; all pre-judgment and post-judgment interest as allowed by law; any appropriate injunctive relief; an award of attorney's fees as allowed by law; an award of taxable costs; and, any and all such further relief as a jury or judge presiding over my trial deems just and proper.  Other damages include, but are not limited to:

Additional interest payments due to money borrowed to replace personal items damaged

by the defective Knauf drywall.  And, use of home is significantly impacted due to damage.

15.  If you contend that you entered personal bankruptcy as a result of damage to your property from defective Chinese Drywall, please describe the facts and circumstances that relate to your claim.

N/A

16.  If you contend that you entered short sale and/or foreclosure as a result of damage to your property from defective Chinese Drywall, please describe the facts and circumstances that relate to your claim.

N/A

**PFS REQUEST FOR DOCUMENT PRODUCTION #4**: If you claim loss of income, please produce any copies of any and all documentation upon which you intend to rely upon to prove this claim.

>   **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 4."

17. If you claim diminution of the property as a result of Chinese Drywall, state with particularity each fact which supports your claim.

N/A _____

_____

_____

_____

18. Identify the appliances, fixtures and/or other electronics, if any, that you claim were damaged by Chinese Drywall in the property.

>   **Response**: An list of damaged items is attached as "Exhibit 14."

19. If you vacated the property because of the alleged presence of Chinese Drywall, please provide: Address of each location you stayed thereafter.

>   a. N/A _____

>   b. _____

>   c. _____

20. If you vacated the property because of the alleged presence of Chinese Drywall, please provide: Time periods in which you resided at each property.

>   a. _____/_____/20_____   to   _____/_____/20_____

>   b. _____/_____/20_____   to   _____/_____/20_____

>   c. _____/_____/20_____   to   _____/_____/20_____

21. If you vacated the property because of the alleged presence of Chinese Drywall, please provide: Moving costs and/or alternative living expenses you claim to have incurred as a result of the alleged presence of Chinese Drywall.

>   a. $ N/A _____

>   b. $_____

>   c. $_____

**PFS REQUEST FOR DOCUMENT PRODUCTION #5**:  If you vacated the property because of the alleged presence of Chinese Drywall, please provide any documentation to support your claims.

> **Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 5."

22.  Are you claiming damages for personal injury?  ☐ Yes (explain below) ☑ No

_____

_____

23.  If you suffered personal injuries as a result of the alleged presence of Chinese Drywall:  Date you allege that you first sustained personal injuries as a result of your exposure to allegedly defective Chinese Drywall.

> **Response**:    ☑ N/A

24.  If you suffered personal injuries as a result of the alleged presence of Chinese Drywall:  What specific injuries have you suffered?

> **Response**:    ☑ N/A

25.  If you suffered personal injuries as a result of the alleged presence of Chinese Drywall:  Name and address of any doctor, physician, surgeon, chiropractor, or osteopath who examined and/or treated your alleged injuries.

> **Response**:    ☑ N/A

## VI.  Potential Witnesses/Evidence

26.  Has any written or recorded statement been taken from any witness or person who has knowledge of relevant facts, including the nature, character, and extent of the injuries referred to in the petition, and for each statement identified?

☐ Yes  ☑ No  ☐ I don't know

27.  If the answer to 26 is "yes," please state: The name, address, and telephone number of the person from whom the statement was taken.

N/A
_____

_____

6

28. If the answer to 26 is "yes," please state: The name, address, and telephone number of the person who took the statement.

N/A

29. If the answer to 26 is "yes," please state: The name address, and telephone number of the party having custody of such statement.

N/A

30. If the answer to 26 is "yes," please state: The date the statement was taken.

N/A

## VII.  Already Remediated Properties

31. If you already remediated the Property, who conducted the remediation?

   **Response:**   ☑ N/A

32. When did the remediation commencement date occur?

   **Response:**   ☑ N/A

33. When did the remediation end date occur?

   **Response:**   ☑ N/A

34. What was the scope of the remediation and the scope of the work carried out?

   **Response:**   ☑ N/A

35. What costs or expenses, if any, did you incur related to the remediation of the Property?

   **Response:**   ☑ N/A

36. Were any samples from the remediation retained?

   Response:   [✓] N/A

37. If the response to 36 is "yes," were the samples compliant with PTO 1(B)?

   Response:   [✓] N/A

38. Were any photographs taken of the allegedly defective Chinese Drywall?

   Response:   [✓] N/A

39. If the response to 38 is "yes," were the photographs compliant with PTO 1(B)?

   Response:   [✓] N/A

**PFS REQUEST FOR DOCUMENT PRODUCTION #6**:  Please produce the following documentation concerning the remediation of the Property:  Any evidence of KPT Chinese Drywall and Non-KPT Chinese Drywall, if any, in the Property prior to remediation.

   **Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 6."

**PFS REQUEST FOR DOCUMENT PRODUCTION #7**:  Please produce the following documentation concerning the remediation of the Property:  Interior photographs of the Affected Property immediately prior to the commencement of, and following completion of, the remediation, including photographs and/or video images of the flooring and major components such as cabinets, moldings, doors, intercom systems, and fixtures for every room and bathroom and, to the extent possible, security systems, appliances and audio such as surround sound.

\*\* The photographs do not need to be pictures taken specifically for the litigation. For example, family photographs or photographs taken for purposes of refinancing a mortgage are acceptable in the absence of other photographs.

   **Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 7."

**PFS REQUEST FOR DOCUMENT PRODUCTION #8**:  Please produce the following documentation concerning the remediation of the Property:  The remediation contract and an itemization from the contractor who performed the remediation work of the materials used during the remediation, including, but not limited to, manufacturer, model number, and quantity.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 8."

**PFS REQUEST FOR DOCUMENT PRODUCTION #9**:  Please produce the following documentation concerning the remediation of the Property:  An itemized invoice from the contractor who performed the remediation work ("Itemized Invoice") showing the scope of work carried out.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 9."

**PFS REQUEST FOR DOCUMENT PRODUCTION #10**:  Please produce the following documentation concerning the remediation of the Property:  Proof of payment of the Itemized Invoice and any other expenses, such as cancelled checks, credit card statements, etc.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 10."

**PFS REQUEST FOR DOCUMENT PRODUCTION #11**:  Please produce the following documentation concerning the remediation of the Property:  A floor plan of the Affected Property with dimensions.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 11."

**PFS REQUEST FOR DOCUMENT PRODUCTION #12**:  Please produce the following documentation concerning the remediation of the Property:  An Environmental Certificate.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 12."

**PFS REQUEST FOR DOCUMENT PRODUCTION #13**:  Please produce the following documentation concerning the remediation of the Property:  An Owner Disclosure Affidavit in the form attached as Exhibit 1, which includes a certification that the materials provided comprise all of the available documentation regarding the following:  The drywall that was in the Affected Property prior to the commencement of the remediation; and, the scope, extent, and cost of the remediation.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 13."

## **VERIFICATION**

I hereby verify that the responses to the Plaintiff Fact Sheet are correct to the best of my knowledge.

_____     1/16/2019
Signature of Plaintiff                                Date

_____
  David W. Fozard
Printed Name
   Candace S. Fozard

12

# Exhibit 1

# APPRAISAL OF REAL PROPERTY



**LOCATED AT**

72685 Diamondhead Dr N
Diamondhead, MS 39525
8 BLK 5 DHEAD PH1 UN2A

**FOR**

CEFCU
5401 W Dirksen Pkwy, Peoria, IL 61607

**OPINION OF VALUE**

140,000

**AS OF**

02/23/2015

**BY**

Karen Lorona
Karen Delk & Associates, Inc.

226-388-1171
appraiser300@att.net

Karen Delk & Associates, Inc.

228-388-1171

02/26/2015

Mercury Network
CEFCU
5401 W Dirksen Pkwy, Peoria, IL 61607

Re: Property:    72685 Diamondhead Dr N
                 Diamondhead, MS 39525
    Borrower:    Candace & David Fozard
    File No.:    72685DiamondheadN

Opinion of Value: $  140,000
Effective Date:      02/23/2015

In accordance with your request, we have appraised the above referenced property.  The report of that appraisal is
attached.

The purpose of the appraisal is to develop an opinion of market value for the property described in this appraisal
report, as improved, in unencumbered fee simple title of ownership.

This report is based on a physical analysis of the site and improvements, a locational analysis of the neighborhood and
city, and an economic analysis of the market for properties such as the subject.  The appraisal was developed and the
report was prepared in accordance with the Uniform Standards of Professional Appraisal Practice.

The opinion of value reported above is as of the stated effective date and is contingent upon the certification and
limiting conditions attached.

It has been a pleasure to assist you.  Please do not hesitate to contact me or any of my staff if we can be of additional
service to you.

Sincerely,

Karen Lorona
License or Certification #: RA607
State: MS      Expires: 06/30/2015
appraiser300@att.net

Karen Delk & Associates, Inc

## Uniform Residential Appraisal Report

Loan #0413482002
File # 72685DiamondheadN

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| Property Address | 72685 Diamondhead Dr N | City | Diamondhead | State | MS | Zip Code | 39525 |
|---|---|---|---|---|---|---|---|
| Borrower | Candace & David Fozard | Owner of Public Record | Cleek Sally J (Te) | | County | Hancock | |

Legal Description   8 BLK 5 DHEAD PH1 UN2A

| Assessor's Parcel # | 068Q-1-41-059.000 | Tax Year | 2013 | R.E. Taxes $ | 733 |
|---|---|---|---|---|---|
| Neighborhood Name | Diamondhead | Map Reference | 25060 | Census Tract | 0305.00 |

Occupant ☒ Owner ☐ Tenant ☐ Vacant   Special Assessments $ 0   ☒ PUD   HOA $ 65   ☐ per year ☒ per month

Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)

Assignment Type ☒ Purchase Transaction ☐ Refinance Transaction ☐ Other (describe)

Lender/Client CEFCU   Address 5401 W Dirksen Pkwy, Peoria, IL 61607

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☒ Yes ☐ No

Report data source(s) used, offering price(s), and date(s).   DOM 668;Subject is currently offered for sale. See attached MLS   Original list price $149,700

on 4/10/13 Reduced to $143,900 on 5/6/14

I ☒ did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.   Arms length sale;See attached sales contract. Standard closing costs.

| Contract Price $ | 137,000 | Date of Contract | 02/11/2015 | Is the property seller the owner of public record? | ☒ Yes ☐ No | Data Source(s) | Tax Detail |
|---|---|---|---|---|---|---|---|

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☒ No

If Yes, report the total dollar amount and describe the items to be paid.   $0;;

Note: Race and the racial composition of the neighborhood are not appraisal factors.

### Neighborhood Characteristics

| | | One-Unit Housing Trends | | One-Unit Housing | | Present Land Use % |
|---|---|---|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | Property Values ☐ Increasing ☒ Stable ☐ Declining | PRICE | AGE | One-Unit | 95 % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | $ (000) | (yrs) | 2-4 Unit | % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | Marketing Time ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | 45 Low | 1 | Multi-Family | 5 % |
| Neighborhood Boundaries | See location map for neighborhood boundaries. | 575 High | 125 | Commercial | % |
| | | 169 Pred. | 70 | Other | % |

Neighborhood Description   The subject is located in Diamondhead, MS. It is convenient to schools, shopping, hospital, places of worship and employment. Subject neighborhood consists of single family residences. No adverse conditions were observed.

Market Conditions (including support for the above conclusions)   Market condition conclusions noted above in "one unit housing trends" represents an analysis of properties that are competitive with the subject property.

| Dimensions | 103x115x91x128 | Area | 11786 sf | Shape | Rectangular | View | N;Res; |
|---|---|---|---|---|---|---|---|

Specific Zoning Classification R-1A   Zoning Description Single Family District

Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street Asphalt | ☒ | |
| Gas | ☒ | | Sanitary Sewer | ☒ | | Alley None | | |

| FEMA Special Flood Hazard Area ☒ Yes ☐ No | FEMA Flood Zone AE | FEMA Map # 28045C0244D | FEMA Map Date 10/16/2009 |
|---|---|---|---|

Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No If No, describe   Typical for the area

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No If Yes, describe

No adverse easements or encroachments were observed at the physical inspection. A survey was not provided to the appraiser.

| General Description | Foundation | Exterior Description | materials/condition | Interior | materials/condition |
|---|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | ☒ Concrete Slab ☐ Crawl Space | Foundation Walls | Concrete/Average | Floors | Cpt/Certile/Avg |
| # of Stories 1 | ☐ Full Basement ☐ Partial Basement | Exterior Walls | Brick/Average | Walls | Sheetrock/Avg |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | Basement Area 0 sq.ft. | Roof Surface | Asphalt Shingles/Ave | Trim/Finish | Wood/Avg |
| ☒ Existing ☐ Proposed ☐ Under Const. | Basement Finish 0 % | Gutters & Downspouts | None/Avg | Bath Floor | Ceramic/Avg |
| Design (Style) Acadian | ☐ Outside Entry/Exit ☐ Sump Pump | Window Type | DoubleAlum/Avg | Bath Wainscot | Fiberglass/Avg |
| Year Built 1996 | Evidence of ☐ Infestation | Storm Sash/Insulated No | | Car Storage ☐ None | |
| Effective Age (Yrs) 10 | ☐ Dampness ☐ Settlement | Screens Yes | | ☐ Driveway # of Cars 2 | |
| Attic ☐ None | Heating ☒ FWA ☐ HWBB ☐ Radiant | Amenities | Woodstove(s) # 0 | Driveway Surface Concrete | |
| ☐ Drop Stair ☐ Stairs | ☐ Other Fuel Elec. | ☒ Fireplace(s) # 1 | ☐ Fence None | ☐ Garage # of Cars 2 | |
| ☐ Floor ☐ Scuttle | Cooling ☒ Central Air Conditioning | ☐ Patio/Deck None | ☒ Porch Front Cvd | ☐ Carport # of Cars 0 | |
| ☐ Finished ☐ Heated | ☐ Individual ☐ Other | ☐ Pool None | ☐ Other None | ☒ Att. ☐ Det. ☐ Built-in | |
| Appliances ☐ Refrigerator ☒ Range/Oven | ☒ Dishwasher ☒ Disposal ☒ Microwave | ☐ Washer/Dryer ☐ Other (describe) | | | |

Finished area above grade contains:   7 Rooms   2.0 Bedrooms   2.0 Bath(s)   1,861 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.).   Ceiling fans throughout.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).   C3;No updates in the prior 15 years;Subject's patio appears to be enclosed to make a den/sunroom. This was done in a quality workman like manner. Kitchen has granite counters. There is a "hair line" crack in the bathroom ceramic tile. Cost to cure: $500 (to seal) See attached picture.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No If Yes, describe

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No If No, describe

Form 1004UAD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Page # 4

## Uniform Residential Appraisal Report

Loan #0413482002
File # 72685DiamondheadN

| There are | 53 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ | 119,900 | to $ | 249,000 |

| There are | 56 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ | 100,000 | to $ | 240,000 |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 72685 Diamondhead Dr N | 556 Ahoni St | | 561 Ahuli Pl | | 6944 Apaki Pl | |
| | Diamondhead, MS 39525 | Diamondhead, MS 39525 | | Diamondhead, MS 39525 | | Diamondhead, MS 39525 | |
| Proximity to Subject | | 1.40 miles SE | | 1.57 miles SE | | 2.52 miles E | |
| Sale Price | $ 137,000 | $ | 159,000 | $ | 150,000 | $ | 143,000 |
| Sale Price/Gross Liv. Area | 73.62 sq.ft. | 89.88 sq.ft. | | 78.95 sq.ft. | | 74.21 sq.ft. | |
| Data Source(s) | | MLS#272958;DOM 84 | | MLS#271834;DOM 84 | | MLS#263343;DOM 373 | |
| Verification Source(s) | | Blanchard, Alison | | Sullivan, Jeanette | | Hall, John | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | ArmLth | | ArmLth | | ArmLth | |
| Concessions | | FHA;6500 | -1,590 | Cash;0 | | Conv;0 | |
| Date of Sale/Time | | s04/14;c03/14 | | s04/14;c02/14 | | s04/14;c01/14 | |
| Location | N;Res; | N;Res; | | N;Res; | | N;Res; | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 11786 sf | 10400 sf | 0 | 10502 sf | 0 | 21240 sf | 0 |
| View | N;Res; | N;Res; | | N;Res; | | N;Res; | |
| Design (Style) | DT1;Acadian | DT1;Acadian | | DT1;Acadian | | DT1;Acadian | |
| Quality of Construction | Q3 | Q3 | | Q3 | | Q3 | |
| Actual Age | 19 | 16 | 0 | 20 | 0 | 21 | 0 |
| Condition | C3 | C3 | -500 | C3 | -500 | C3 | -500 |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 7 3 2.0 | 6 3 2.5 | -750 | 7 3 2.0 | | 6 3 2.0 | 0 |
| Gross Living Area | 1,861 sq.ft. | 1,769 sq.ft. | +4,048 | 1,900 sq.ft. | -1,716 | 1,927 sq.ft. | -2,904 |
| Basement & Finished | 0sf | 0sf | | 0sf | | 0sf | |
| Rooms Below Grade | | | | | | | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | CH&A | CH&A | | CH&A | | CH&A | |
| Energy Efficient Items | Average | Average | | Average | | Average | |
| Garage/Carport | 2ga2dw | 2ga2dw | | 2ga2dw | | 2ga2dw | |
| Porch/Patio/Deck | Porch | Por/Screen Pat/Deck | -2,000 | Porch/Patio | -500 | Porch/Deck | -1,500 |
| Fireplaces | One | None | +1,500 | None | +1,500 | One | |
| Fence | None | Privacy | -1,500 | None | | None | |
| Golf Cart Garage | None | None | | Golf Cart Garage | -1,000 | None | |
| Net Adjustment (Total) | | ☐ + ☒ - | -2,292 | ☐ + ☒ - | -2,216 | ☐ + ☒ - | -4,904 |
| Adjusted Sale Price | | Net Adj. 1.4 % | | Net Adj. 1.5 % | | Net Adj. 3.4 % | |
| of Comparables | | Gross Adj. 6.5 % $ | 156,708 | Gross Adj. 3.5 % $ | 147,784 | Gross Adj. 3.4 % $ | 138,096 |

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

| My research ☒ did ☐ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal. |
| Data Source(s) MLS |
| My research ☐ did ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale. |
| Data Source(s) MLS |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 0 | 0 | 0 | 0 |
| Price of Prior Sale/Transfer | $0 | $0 | $0 | $0 |
| Data Source(s) | 0 | 0 | 0 | 0 |
| Effective Date of Data Source(s) | 02/20/2015 | 02/20/2015 | 02/20/2015 | 02/20/2015 |

Analysis of prior sale or transfer history of the subject property and comparable sales    Mississippi is a NON DISCLOSURE state.  This means that if no data is recorded in the local MLS prior sale information may not be available.  Tax data may indicate a date of transfer without a price.  No other listings or sales were found in the past year for comparables.

Summary of Sales Comparison Approach    Many comparables were considered in making this appraisal. The comparables displayed were considered to be the most similar and the best indications of the value of the subject. GLA adjustments were made due to the lack of homes closed with 1861+/- sq. ft.  There is no data to support lot size adjustments.   Comp 1 has a seller's concession of 1% of sales price.  Appraiser used 3% as typical.   All comps have a $500 condition adjustment for the floor repairs stated on page 1.  All comparables are in the subject's market area.

| Indicated Value by Sales Comparison Approach $ | 140,000 |
| Indicated Value by: Sales Comparison Approach $ | 140,000 | Cost Approach (if developed) $ | | Income Approach (if developed) $ | |

The sales comparison approach is considered the most reliable approach to value for this report.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair: termite inspection

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$ 140,000 , as of 02/23/2015 , which is the date of inspection and the effective date of this appraisal.

| Freddie Mac Form 70 March 2005 | UAD Version 9/2011 | Page 2 of 6 | Fannie Mae Form 1004 March 2005 |

Form 1004UAD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

## Uniform Residential Appraisal Report

Loan #0413482002
File #   72685DiamondheadN

ADDITIONAL COMMENTS

The appraiser has not done any services regarding the subject property performed by the appraiser within the 3 year period immediately preceding acceptance of the assignment, as an appraiser or in any other capacity.

All sales were appropriately adjusted for all value influencing dissimilarities.  The appraiser has researched and analyzed all reasonably available data to arrive at an accurate appraisal of the subject property. The reader is cautioned that as additional data becomes available the value conclusion in this report may be affected.

Utilities were on at the time of inspection and were functioning properly.
2/26/15 Re-vised items:
add client loan #04131482002 to all pages per order
-change CU Appraisal Services on page 6 to NO AMC
-correct borrower name; CANDACE
-state whether utilities were on and functioning at time of inspection
-built up is checked over 75%?
-master bedroom photo is relabeled
-box checked yes for prior subject sale clarification.   It was checked yes because it is currently offered for sale.
-comment in neighborhood section states subject is above predominant value was taken out.
-states that the $500 across the board condition adjustment is indeed for the cost to cure for subject's cracked tile.

COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.
Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)   There are 5 closed comparable lots that have
sold within the past 12  months in Diamondhead as per the MLS.  Low $5300 High $30,000 Average $14560  DOM 355  SP/LP 85%

| ESTIMATED | ☐ REPRODUCTION OR | ☐ REPLACEMENT COST NEW | OPINION OF SITE VALUE | = $ | 6,000 |
| Source of cost data | | | DWELLING | Sq.Ft. @ $ | = $ |
| Quality rating from cost service | | Effective date of cost data | | Sq.Ft. @ $ | = $ |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | | | | = $ |
| S | | | Garage/Carport | Sq.Ft. @ $ | = $ |
| | | | Total Estimate of Cost-New | | = $ |
| | | | Less | Physical | Functional | External | |
| | | | Depreciation | | = $( ) |
| | | | Depreciated Cost of Improvements | | = $ |
| | | | "As-is" Value of Site Improvements | | = $ |
| Estimated Remaining Economic Life (HUD and VA only) | 45 Years | INDICATED VALUE BY COST APPROACH | | = $ |

INCOME APPROACH TO VALUE (not required by Fannie Mae)

| Estimated Monthly Market Rent $ | X Gross Rent Multiplier | = $ | Indicated Value by Income Approach |
Summary of Income Approach (including support for market rent and GRM)

PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)?  ☐ Yes  ☒ No    Unit type(s)  ☒ Detached  ☐ Attached
Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.
Legal Name of Project
Total number of phases                Total number of units                Total number of units sold
Total number of units rented          Total number of units for sale       Data source(s)
Was the project created by the conversion of existing building(s) into a PUD?  ☐ Yes  ☐ No  If Yes, date of conversion.
Does the project contain any multi-dwelling units?  ☐ Yes  ☐ No  Data Source
Are the units, common elements, and recreation facilities complete?  ☐ Yes  ☐ No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?  ☐ Yes  ☐ No  If Yes, describe the rental terms and options.
Describe common elements and recreational facilities.   Golf Course, Parks, Pools, Lakes, Clubhouse and an airstrip.

Freddie Mac Form 70 March 2005          UAD Version 9/2011          Page 3 of 6          Fannie Mae Form 1004 March 2005

Form 1004UAD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Page # 5

## Uniform Residential Appraisal Report

Loan #0413482002
File # 72685DiamondheadN

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | | COMPARABLE SALE # 5 | | COMPARABLE SALE # 6 | |
|---|---|---|---|---|---|---|---|
| Address | 72685 Diamondhead Dr N Diamondhead, MS 39525 | 57144 Diamondhead Dr E Diamondhead, MS 39525 | | | | | |
| Proximity to Subject | | 1.71 miles SE | | | | | |
| Sale Price | $ 137,000 | $ 143,000 | | $ | | $ | |
| Sale Price/Gross Liv. Area | $ 73.62 sq.ft. | $ 76.51 sq.ft. | | sq.ft. | | sq.ft. | |
| Data Source(s) | | MLS#269576;DOM 281 | | | | | |
| Verification Source(s) | | Buras, Marsha | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | ArmLth | | | | | |
| Concessions | | Cash;0 | | | | | |
| Date of Sale/Time | | s07/14;c08/14 | | | | | |
| Location | N;Res; | N;Res; | | | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | | | | |
| Site | 11786 sf | 11048 sf | 0 | | | | |
| View | N;Res; | N;Res; | | | | | |
| Design (Style) | DT1;Acadian | DT1;Acadian | | | | | |
| Quality of Construction | Q3 | Q3 | | | | | |
| Actual Age | 19 | 14 | 0 | | | | |
| Condition | C3 | C3 | -500 | | | | |
| Above Grade | Total / Bdrms. / Baths | Total / Bdrms. / Baths | | Total / Bdrms. / Baths | | Total / Bdrms. / Baths | |
| Room Count | 7 / 3 / 2.0 | 5 / 3 / 2.0 | 0 | | | | |
| Gross Living Area | 1,861 sq.ft. | 1,869 sq.ft. | 0 | sq.ft. | | sq.ft. | |
| Basement & Finished | 0sf | 0sf | | | | | |
| Rooms Below Grade | | | | | | | |
| Functional Utility | Average | Average | | | | | |
| Heating/Cooling | CH&A | CH&A | | | | | |
| Energy Efficient Items | Average | Average | | | | | |
| Garage/Carport | 2ga2dw | 2ga2dw | | | | | |
| Porch/Patio/Deck | Porch | Porch/Deck | -1,500 | | | | |
| Fireplaces | One | One | | | | | |
| Fence | None | Privacy | -1,500 | | | | |
| Golf Cart Garage | None | None | | | | | |
| Net Adjustment (Total) | | ☐ + ☒ - | $ -3,500 | ☐ + ☐ - | $ | ☐ + ☐ - | $ |
| Adjusted Sale Price | | Net Adj. 2.4 % | | Net Adj. % | | Net Adj. % | |
| of Comparables | | Gross Adj. 2.4 % | $ 139,500 | Gross Adj. % | $ | Gross Adj. % | $ |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 4 | COMPARABLE SALE # 5 | COMPARABLE SALE # 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | 0 | 0 | | |
| Price of Prior Sale/Transfer | $0 | $0 | | |
| Data Source(s) | 0 | 0 | | |
| Effective Date of Data Source(s) | 02/20/2015 | 02/20/2015 | | |

Analysis of prior sale or transfer history of the subject property and comparable sales

Analysis/Comments

Form 1004UAD.(AC) - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Uniform Residential Appraisal Report

Loan #0413482002
File # 72685DiamondheadN

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

SCOPE OF WORK:    The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

INTENDED USE:    The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

INTENDED USER:    The intended user of this appraisal report is the lender/client.

DEFINITION OF MARKET VALUE:    The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:    The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

## Uniform Residential Appraisal Report

Loan #0413482002
File # 72685DiamondheadN

**APPRAISER'S CERTIFICATION:**  The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

Page # 9

## Uniform Residential Appraisal Report

Loan #0413482002
File # 72685DiamondheadN

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

SUPERVISORY APPRAISER'S CERTIFICATION:      The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name  Karen Lorona | Name |
| Company Name  Karen Delk & Associates, Inc. | Company Name |
| Company Address  1956 E Pass Rd., Suite E | Company Address |
| Gulfport, MS  39507 | |
| Telephone Number  228-388-1171 | Telephone Number |
| Email Address  appraiser300@att.net | Email Address |
| Date of Signature and Report  02/26/2015 | Date of Signature |
| Effective Date of Appraisal  02/23/2015 | State Certification # |
| State Certification #  RA607 | or State License # |
| or State License # | State |
| or Other (describe)                         State # | Expiration Date of Certification or License |
| State  MS | |
| Expiration Date of Certification or License  06/30/2015 | SUBJECT PROPERTY |

ADDRESS OF PROPERTY APPRAISED

72685 Diamondhead Dr N
Diamondhead, MS 39525
APPRAISED VALUE OF SUBJECT PROPERTY $        140,000

LENDER/CLIENT

Name  No AMC
Company Name  CEFCU
Company Address  5401 W Dirksen Pkwy, Peoria, IL  61607

Email Address  requests@cuas.net

SUBJECT PROPERTY

☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
   Date of Inspection
☐ Did inspect interior and exterior of subject property
   Date of Inspection

COMPARABLE SALES

☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
   Date of Inspection

Freddie Mac Form 70 March 2005              UAD Version 9/2011              Page 6 of 6              Fannie Mae Form 1004 March 2005

Form 1004UAD - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

## Subject Photo Page

| Borrower | Candance & David Fozard | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 72685 Diamondhead Dr N | | | | | | |
| City | Diamondhead | County | Hancock | State | MS | Zip Code | 39525 |
| Lender/Client | CEFCU | | | | | | |



**Subject Front**

| | |
|---|---|
| 72685 Diamondhead Dr N | |
| Sales Price | 137,000 |
| Gross Living Area | 1,861 |
| Total Rooms | 7 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 11786 sf |
| Quality | Q3 |
| Age | 19 |



**Subject Rear**



**Subject Street**

## Photograph Addendum

| Borrower | Candance & David Fozard | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 72685 Diamondhead Dr N | | | | | | |
| City | Diamondhead | County | Hancock | State | MS | Zip Code | 39525 |
| Lender/Client | CEFCU | | | | | | |



**Across the Street**



**Right View**



**Bedroom**



**Ceramic Tile Floor Crack**



**Left View**



**Dining**

## Subject Interior Photo Page

| Borrower | Candance & David Fozard | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 72685 Diamondhead Dr N | | | | | | |
| City | Diamondhead | County | Hancock | State | MS | Zip Code | 39525 |
| Lender/Client | CEFCU | | | | | | |



### Bedroom Rm 2

72685 Diamondhead Dr N
| | |
|---|---|
| Sales Price | 137,000 |
| Gross Living Area | 1,861 |
| Total Rooms | 7 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 11786 sf |
| Quality | Q3 |
| Age | 19 |



**Bath**





**Kitchen**



Page # 13

## Subject Interior Photo Page

| Borrower | Candance & David Fozard | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 72685 Diamondhead Dr N | | | | | | |
| City | Diamondhead | County | Hancock | State | MS | Zip Code | 39525 |
| Lender/Client | CEFCU | | | | | | |



**Master Bedroom**

| 72685 Diamondhead Dr N | |
|---|---|
| Sales Price | 137,000 |
| Gross Living Area | 1,861 |
| Total Rooms | 7 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 11786 sf |
| Quality | Q3 |
| Age | 19 |



**Master Bath**



**Living Room**

### Subject Interior Photo Page

| Borrower | Candance & David Fozard | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 72685 Diamondhead Dr N | | | | | | |
| City | Diamondhead | County | Hancock | State | MS | Zip Code | 39525 |
| Lender/Client | CEFCU | | | | | | |



**Sun room**

| | |
|---|---|
| 72685 Diamondhead Dr N | |
| Sales Price | 137,000 |
| Gross Living Area | 1,861 |
| Total Rooms | 7 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 11786 sf |
| Quality | Q3 |
| Age | 19 |

## Comparable Photo Page

| Borrower | Candance & David Fozard | | | | |
|---|---|---|---|---|---|
| Property Address | 72685 Diamondhead Dr N | | | | |
| City | Diamondhead | County | Hancock | State MS | Zip Code 39525 |
| Lender/Client | CEFCU | | | | |



### Comparable 1

556 Ahoni St
Prox. to Subject    1.40 miles SE
Sale Price          159,000
Gross Living Area   1,769
Total Rooms         6
Total Bedrooms      3
Total Bathrooms     2.5
Location            N;Res;
View                N;Res;
Site                10400 sf
Quality             Q3
Age                 16



### Comparable 2

561 Ahuli Pl
Prox. to Subject    1.57 miles SE
Sale Price          150,000
Gross Living Area   1,900
Total Rooms         7
Total Bedrooms      3
Total Bathrooms     2.0
Location            N;Res;
View                N;Res;
Site                10502 sf
Quality             Q3
Age                 20



### Comparable 3

6944 Apaki Pl
Prox. to Subject    2.52 miles E
Sale Price          143,000
Gross Living Area   1,927
Total Rooms         6
Total Bedrooms      3
Total Bathrooms     2.0
Location            N;Res;
View                N;Res;
Site                21240 sf
Quality             Q3
Age                 21

## Comparable Photo Page

| Borrower | Candance & David Fozard | | | | |
|---|---|---|---|---|---|
| Property Address | 72685 Diamondhead Dr N | | | | |
| City | Diamondhead | County | Hancock | State MS | Zip Code 39525 |
| Lender/Client | CEFCU | | | | |



### Comparable 4

| | |
|---|---|
| 57144 Diamondhead Dr E | |
| Prox. to Subject | 1.71 miles SE |
| Sale Price | 143,000 |
| Gross Living Area | 1,869 |
| Total Rooms | 5 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.0 |
| Location | N;Res; |
| View | N;Res; |
| Site | 11048 sf |
| Quality | Q3 |
| Age | 14 |

### Comparable 5

Prox. to Subject
Sale Price
Gross Living Area
Total Rooms
Total Bedrooms
Total Bathrooms
Location
View
Site
Quality
Age

### Comparable 6

Prox. to Subject
Sale Price
Gross Living Area
Total Rooms
Total Bedrooms
Total Bathrooms
Location
View
Site
Quality
Age

Page # 17

**Supplemental Addendum**

File No. 72685DiamondheadN

| Borrower | Candance & David Fozard | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Property Address | 72685 Diamondhead Dr N | | | | | | | |
| City | Diamondhead | County | Hancock | State | MS | Zip Code | 39525 | |
| Lender/Client | CEFCU | | | | | | | |

MARKETING TIME AND EXPOSURE TIME
Estimated marketing time for the subject property is 3-22 months and the exposure time is 22. This is based on the appraiser's observations of the marketing time from listings and sales within the immediate area. Also considered was the location of the neighborhood, plus known and forecasted changes of the economic factors surrounding this absorption.

ADDITIONAL CERTIFICATION
The appraisers certify and agrees that:
- The statements of fact obtained in this report are true and correct.
- The reported analysis, opinions and conclusions are limited only the reported assumptions and limiting conditions and is our personal, impartial, and unbiased professional analysis, opinions and conclusions.
- They have no present or prospective interest in the property that is the subject of this report and I have no personal interest or bias with respect to the parties involved.
- They have no bias with report to the property that is the subject of this report or to the parties involved with this assignment.
- Our engagement in this assignment was not contingent upon developing or reporting predetermined results.
-Their compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
- Our analysis, opinions, and conclusions were developed and this report has been prepared in conformity with the Uniform Standards of Professional Appraisal Practice (USPAP).
- We did make a personal inspection of the property that is the subject of this report.
- No one provided significant professional assistance to the persons signing this report.
- This appraisal report has been made in conformity with, and is subject to, the requirements of the Code of Professional Ethics and Standards of Professional Conduct of the Appraisal Institute and the Appraisal Foundation.
- No pertinent information has knowingly been withheld. No single item of information was completely relied upon to the exclusion of the other information and all data was analyzed within the framework of my judgment, knowledge, and experience.
- The appraiser is competent to perform this appraisal of the subject property, and has appraised similar type properties.

ADDITIONAL (ENVIRONMENTAL) LIMITING CONDITIONS
The value estimated is based on the assumption that the property is not negatively affected by the existence of hazardous substances or detrimental environmental conditions unless otherwise stated in this report. The appraisers are not experts in the identification of hazardous substances or detrimental environmental conditions. The appraiser's routine inspection of and inquires about the subject property did not develop any information that indicated any apparent significant hazardous substances or detrimental environmental conditions which would affect the property negatively unless otherwise stated in this report. It is possible that tests and inspections made by a qualified hazardous substance and environmental expert would reveal the existence of hazardous substances or detrimental environmental conditions on or around the property that would negatively affect its value.

This appraisal was prepared to determine market value of the subject property to secure mortgage financing and /or internal decision making. The intended users of this appraisal is the mortgage company, underwriter, or other lending institutions for the purpose of financing or refinancing a mortgage. The client agrees that the appraisal will only be used by the intended users for the disclosed uses. Uses of this report by others is not intended by the appraiser. No other persons, firms, corporations or entities are authorized to rely on this appraisal.

This appraisal is not a home inspection and I am not acting as a home inspector when preparing this report. In performing the inspection of this property, I visually observed areas that where readily accessible. The inspection is not technically exhaustive and does not offer warranties or guarantees of any kind.
- I am not a structural engineer and I do not warrant the structure in any way. This appraisal is not a home inspection and I am not acting as a home inspector or structural engineer when

**Supplemental Addendum**

File No. 72685DiamondheadN

| Borrower | Candance & David Fozard | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 72685 Diamondhead Dr N | | | | | | |
| City | Diamondhead | County | Hancock | State | MS | Zip Code | 39525 |
| Lender/Client | CEFCU | | | | | | |

preparing this report.
- I am not a pest inspector. It is advised to have the structure inspected by a qualified pest inspector.

SOURCE OF DEFINITION OF MARKET VALUE - Appraisal Standards Board of Uniform Standards of Professional Appraisal Practice 1999 Edition, page 139.

PURPOSE & FUNCTION
The purpose of this report is to develop an opinion of market value by performing an evaluation of the real property. The function is to assist the lender in evaluating the subject property for lending purposes.

**Supplemental Addendum**

File No. 72685DiamondheadN

| Borrower | Candance & David Fozard | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Property Address | 72685 Diamondhead Dr N | | | | | | | |
| City | Diamondhead | County | Hancock | State | MS | Zip Code | 39525 | |
| Lender/Client | CEFCU | | | | | | | |

In response to the appraiser's client, the appraisers have conducted the required investigation, gathered the necessary data, and made certain analyses enabling him or her to form an opinion of the market value of the referenced subject property subject to any environmental conditions, and/or wetlands conditions, known or unknown to the appraisers.

Prior to accepting the assignment or entering into an agreement to perform any assignment, an appraiser must properly identify the problem to be addressed and have the knowledge and experience to complete the assignment competently. Our efforts have made possible the findings and conclusions in this report and my acceptance of this assignment is a representation of competence. There were no conditions discovered during the course of the appraisal assignment causing the appraiser to believe he lacked the required knowledge or experience to complete the assignment competently.

__X__This is a summary report, which is written and prepared under Standards Rule 2-2(b) of the complete or limited appraisal performed under Standard 1. This Summary Appraisal Report is a brief recapitulation of the data, analysis, and conclusions arising from the research performed during the course of this assignment; supporting documentation had been retained in file.

INTENDED USER of this report is for CEFCU. It is further understood that all factual data, analyses of such data and conclusions relating to any and all value estimates contained within the confines of this appraisal report are the sole property of the client and cannot be made available, either in part or in whole, to any third party including the general public without the expressed written consent of the respective signatures of this report.

INTENDED USE is for loan evaluation purposes.

SCOPE OF THE EVALUATION
The evaluation is based on information gathered by the appraiser from public records, other identified sources, inspection of the subject property and neighborhood, and selection of comparable sales within the subject market area. The original source of the comparables may include information provided by Multiple Listing Service, area brokers, appraisers, or confirmation from the purchaser or seller. The sources and data are considered reliable. When conflicting information was provided, the source deemed most reliable has been used. Data believed to be unreliable was not included in the report nor used as a basis for the value conclusion.

APPROACHES TO VALUE - Residential:
____X__ The cost approach to value was not processed due to the difficulty in estimating depreciation in older homes like the subject.
_____ The cost approach to value was taken into consideration when valuing the property.
____X___ The subject property is located in an area of primarily owner-occupied single family residences and the Income Approach is not considered to be meaningful. For this reason, the Income Approach was not processed.

HIGHEST & BEST USE "AS IMPROVED"
Based on the theory of Highest and Best Use, the subject was considered as vacant and as improved. As vacant, it is the appraiser's opinion that the highest and best use would be to construct a single family dwelling. The subject appears to conform with the physical and economic characteristics of the neighborhood. Since there is no alternative legal use that justifies removal of the existing improvements, the subject property, "as improved", represents the highest and best use of the site.

The included Flood map is not to be relied upon to determine any kind of insurance risk or liability. A survey should be performed to determine insurance risk.

Any and all measurements taken on improvements to the subject property where performed according to ANSI Z765-2003 Standards for calculating square footage.

Page # 20

## Market Conditions Addendum to the Appraisal Report

| | | 28 |
| File No. | 72685DiamondheadN |

The purpose of this addendum is to provide the lender/client with a clear and accurate understanding of the market trends and conditions prevalent in the subject neighborhood. This is a required addendum for all appraisal reports with an effective date on or after April 1, 2009.

**Property Address** 72685 Diamondhead Dr N   **City** Diamondhead   **State** MS   **ZIP Code** 39525

**Borrower** Candace & David Fozard

**Instructions:** The appraiser must use the information required on this form as the basis for his/her conclusions, and must provide support for those conclusions, regarding housing trends and overall market conditions as reported in the Neighborhood section of the appraisal report form. The appraiser must fill in all the information to the extent it is available and reliable and must provide analysis as indicated below. If any required data is unavailable or is considered unreliable, the appraiser must provide an explanation. It is recognized that not all data sources will be able to provide data for the shaded areas below; if it is available, however, the appraiser must include the data in the analysis. If data sources provide the required information as an average instead of the median, the appraiser should report the available figure and identify it as an average. Sales and listings must be properties that compete with the subject property, determined by applying the criteria that would be used by a prospective buyer of the subject property. The appraiser must explain any anomalies in the data, such as seasonal markets, new construction, foreclosures, etc.

| Inventory Analysis | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | 27 | 18 | 11 | ☐ Increasing | ☐ Stable | ☒ Declining |
| Absorption Rate (Total Sales/Months) | 4.50 | 6.00 | 3.67 | ☐ Increasing | ☐ Stable | ☒ Declining |
| Total # of Comparable Active Listings | | | 65 | ☒ Declining | ☐ Stable | ☐ Increasing |
| Months of Housing Supply (Total Listings/Ab.Rate) | | | 17.7 | ☐ Declining | ☐ Stable | ☒ Increasing |
| Median Sale & List Price, DOM, Sale/List % | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
| Median Comparable Sale Price | $150,000 | $145,000 | $148,900 | ☒ Increasing | ☐ Stable | ☐ Declining |
| Median Comparable Sales Days on Market | 141 | 128 | 155 | ☐ Declining | ☐ Stable | ☒ Increasing |
| Median Comparable List Price | $156,500 | $155,000 | $156,500 | ☐ Increasing | ☐ Stable | ☐ Declining |
| Median Comparable Listings Days on Market | 112 | 119 | 72 | ☒ Declining | ☐ Stable | ☐ Increasing |
| Median Sale Price as % of List Price | 95.98 | 96.94% | 95.51% | ☒ Increasing | ☐ Stable | ☐ Declining |
| Seller-(developer, builder, etc.)paid financial assistance prevalent? | | ☐ Yes ☒ No | | ☐ Declining | ☐ Stable | ☐ Increasing |

Explain in detail any seller concessions trends for the past 12 months (e.g., seller contributions increased from 3% to 5%, increasing use of buydowns, closing costs, condo fees, options, etc.).   Seller concessions appear to be stable.

Are foreclosure sales (REO sales) a factor in the market?  ☐ Yes  ☒ No   If yes, explain (including the trends in listings and sales of foreclosed properties).

Cite data sources for above information.   MLS

Summarize the above trends and address how you used them in the analysis of your conclusions in the Neighborhood section of the appraisal report form. If you used any additional information, such as an analysis of pending sales and/or expired and withdrawn listings, to formulate your conclusions, provide both an explanation and support for your conclusions.

If the subject is a unit in a condominium or cooperative project, complete the following:   **Project Name:**

| Subject Project Data | Prior 7–12 Months | Prior 4–6 Months | Current – 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Absorption Rate (Total Sales/Months) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Total # of Active Comparable Listings | | | | ☐ Declining | ☐ Stable | ☐ Increasing |
| Months of Unit Supply (Total Listings/Ab.Rate) | | | | ☐ Declining | ☐ Stable | ☐ Increasing |

Are foreclosure sales (REO sales) a factor in the project?  ☐ Yes  ☐ No   If yes, indicate the number of REO listings and explain the trends in listings and sales of foreclosed properties.

Summarize the above trends and address the impact on the subject unit and project.

| Signature | *Karen Lorona* | Signature | |
|---|---|---|---|
| Appraiser Name | Karen Lorona | Supervisory Appraiser Name | |
| Company Name | Karen Delk & Associates, Inc. | Company Name | |
| Company Address | 1956 E Pass Rd., Suite E, Gulfport, MS 39507 | Company Address | |
| State License/Certification # | RA607 State MS | State License/Certification # | State |
| Email Address | appraiser300@att.net | Email Address | |

Freddie Mac Form 71   March 2009          Page 1 of 1          Fannie Mae Form 1004MC   March 2009

Form 1004MC2 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

# License

License

File No.
Case No.



STATE OF MISSISSIPPI
MISSISSIPPI REAL ESTATE APPRAISER
LICENSING AND CERTIFICATION BOARD
LICENSE NO.
THIS IS TO CERTIFY THAT                    RA-607
LORONZA KARENE L
HAS BEEN GRANTED A LICENSE AS A
STATE CERTIFIED RESIDENTIAL
REAL ESTATE APPRAISER
FOR THE PERIOD: 06/30/2013 - 06/30/2015
VOID UNLESS SIGNED BY LICENSEE

27
File No.   72685DiamondheadN

## UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM
(Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)

### Condition Ratings and Definitions

**C1**

The improvements have been recently constructed and have not been previously occupied. The entire structure and all components are new and the dwelling features no physical depreciation.

Note: Newly constructed improvements that feature recycled or previously used materials and/or components can be considered new dwellings provided that the dwelling is placed on a 100 percent new foundation and the recycled materials and the recycled components have been rehabilitated/remanufactured into like-new condition. Improvements that have not been previously occupied are not considered "new" if they have any significant physical depreciation (that is, newly constructed dwellings that have been vacant for an extended period of time without adequate maintenance or upkeep).

**C2**

The improvements feature no deferred maintenance, little or no physical depreciation, and require no repairs. Virtually all building components are new or have been recently repaired, refinished, or rehabilitated. All outdated components and finishes have been updated and/or replaced with components that meet current standards. Dwellings in this category are either almost new or have been recently completely renovated and are similar in condition to new construction.

Note: The improvements represent a relatively new property that is well maintained with no deferred maintenance and little or no physical depreciation, or an older property that has been recently completely renovated.

**C3**

The improvements are well maintained and feature limited physical depreciation due to normal wear and tear. Some components, but not every major building component, may be updated or recently rehabilitated. The structure has been well maintained.

Note: The improvement is in its first-cycle of replacing short-lived building components (appliances, floor coverings, HVAC, etc.) and is being well maintained. Its estimated effective age is less than its actual age. It also may reflect a property in which the majority of short-lived building components have been replaced but not to the level of a complete renovation.

**C4**

The improvements feature some minor deferred maintenance and physical deterioration due to normal wear and tear. The dwelling has been adequately maintained and requires only minimal repairs to building components/mechanical systems and cosmetic repairs. All major building components have been adequately maintained and are functionally adequate.

Note: The estimated effective age may be close to or equal to its actual age. It reflects a property in which some of the short-lived building components have been replaced, and some short-lived building components are at or near the end of their physical life expectancy; however, they still function adequately. Most minor repairs have been addressed on an ongoing basis resulting in an adequately maintained property.

**C5**

The improvements feature obvious deferred maintenance and are in need of some significant repairs. Some building components need repairs, rehabilitation, or updating. The functional utility and overall livability is somewhat diminished due to condition, but the dwelling remains useable and functional as a residence.

Note: Some significant repairs are needed to the improvements due to the lack of adequate maintenance. It reflects a property in which many of its short-lived building components are at the end of or have exceeded their physical life expectancy but remain functional.

**C6**

The improvements have substantial damage or deferred maintenance with deficiencies or defects that are severe enough to affect the safety, soundness, or structural integrity of the improvements. The improvements are in need of substantial repairs and rehabilitation, including many or most major components.

Note: Substantial repairs are needed to the improvements due to the lack of adequate maintenance or property damage. It reflects a property with conditions severe enough to affect the safety, soundness, or structural integrity of the improvements.

### Quality Ratings and Definitions

**Q1**

Dwellings with this quality rating are usually unique structures that are individually designed by an architect for a specified user. Such residences typically are constructed from detailed architectural plans and specifications and feature an exceptionally high level of workmanship and exceptionally high-grade materials throughout the interior and exterior of the structure. The design features exceptionally high-quality exterior refinements and ornamentation, and exceptionally high-quality interior refinements. The workmanship, materials, and finishes throughout the dwelling are of exceptionally high quality.

**Q2**

Dwellings with this quality rating are often custom designed for construction on an individual property owner's site. However, dwellings in this quality grade are also found in high-quality tract developments featuring residence constructed from individual plans or from highly modified or upgraded plans. The design features detailed, high quality exterior ornamentation, high-quality interior refinements, and detail. The workmanship, materials, and finishes throughout the dwelling are generally of high or very high quality.

UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM
(Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)

Quality Ratings and Definitions (continued)

Q3

Dwellings with this quality rating are residences of higher quality built from individual or readily available designer plans in above-standard residential tract developments or on an individual property owner's site. The design includes significant exterior ornamentation and interiors that are well finished. The workmanship exceeds acceptable standards and many materials and finishes throughout the dwelling have been upgraded from "stock" standards.

Q4

Dwellings with this quality rating meet or exceed the requirements of applicable building codes. Standard or modified standard building plans are utilized and the design includes adequate fenestration and some exterior ornamentation and interior refinements. Materials, workmanship, finish, and equipment are of stock or builder grade and may feature some upgrades.

Q5

Dwellings with this quality rating feature economy of construction and basic functionality as main considerations. Such dwellings feature a plain design using readily available or basic floor plans featuring minimal fenestration and basic finishes with minimal exterior ornamentation and limited interior detail. These dwellings meet minimum building codes and are constructed with inexpensive, stock materials with limited refinements and upgrades.

Q6

Dwellings with this quality rating are of basic quality and lower cost; some may not be suitable for year-round occupancy. Such dwellings are often built with simple plans or without plans, often utilizing the lowest quality building materials. Such dwellings are often built or expanded by persons who are professionally unskilled or possess only minimal construction skills. Electrical, plumbing, and other mechanical systems and equipment may be minimal or non-existent. Older dwellings may feature one or more substandard or non-conforming additions to the original structure.

Definitions of Not Updated, Updated, and Remodeled

Not Updated

Little or no updating or modernization. This description includes, but is not limited to, new homes.

Residential properties of fifteen years of age or less often reflect an original condition with no updating, if no major components have been replaced or updated. Those over fifteen years of age are also considered not updated if the appliances, fixtures, and finishes are predominantly dated. An area that is 'Not Updated' may still be well maintained and fully functional, and this rating does not necessarily imply deferred maintenance or physical/functional deterioration.

Updated

The area of the home has been modified to meet current market expectations. These modifications are limited in terms of both scope and cost.

An updated area of the home should have an improved look and feel, or functional utility. Changes that constitute updates include refurbishment and/or replacing components to meet existing market expectations. Updates do not include significant alterations to the existing structure.

Remodeled

Significant finish and/or structural changes have been made that increase utility and appeal through complete replacement and/or expansion.

A remodeled area reflects fundamental changes that include multiple alterations. These alterations may include some or all of the following: replacement of a major component (cabinet(s), bathtub, or bathroom tile), relocation of plumbing/gas fixtures/appliances, significant structural alterations (relocating walls, and/or the addition of) square footage). This would include a complete gutting and rebuild.

Explanation of Bathroom Count

Three-quarter baths are counted as a full bath in all cases.  Quarter baths (baths that feature only a toilet) are not included in the bathroom count.  The number of full and half baths is reported by separating the two values using a period, where the full bath count is represented to the left of the period and the half bath count is represented to the right of the period.

Example:
3.2 indicates three full baths and two half baths.

UAD Version 9/2011 (Updated 1/2014)

UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM
(Source: Fannie Mae UAD Appendix D: UAD Field-Specific Standardization Requirements)

Abbreviations Used in Data Standardization Text

| Abbreviation | Full Name | Fields Where This Abbreviation May Appear |
|---|---|---|
| A | Adverse | Location & View |
| ac | Acres | Area, Site |
| AdjPrk | Adjacent to Park | Location |
| AdjPwr | Adjacent to Power Lines | Location |
| ArmLth | Arms Length Sale | Sale or Financing Concessions |
| AT | Attached Structure | Design (Style) |
| B | Beneficial | Location & View |
| ba | Bathroom(s) | Basement & Finished Rooms Below Grade |
| br | Bedroom | Basement & Finished Rooms Below Grade |
| BsyRd | Busy Road | Location |
| c | Contracted Date | Date of Sale/Time |
| Cash | Cash | Sale or Financing Concessions |
| Comm | Commercial Influence | Location |
| Conv | Conventional | Sale or Financing Concessions |
| cp | Carport | Garage/Carport |
| CrtOrd | Court Ordered Sale | Sale or Financing Concessions |
| CtySky | City View Skyline View | View |
| CtyStr | City Street View | View |
| cv | Covered | Garage/Carport |
| DOM | Days On Market | Data Sources |
| DT | Detached Structure | Design (Style) |
| dw | Driveway | Garage/Carport |
| e | Expiration Date | Date of Sale/Time |
| Estate | Estate Sale | Sale or Financing Concessions |
| FHA | Federal Housing Authority | Sale or Financing Concessions |
| g | Garage | Garage/Carport |
| ga | Attached Garage | Garage/Carport |
| gbi | Built-in Garage | Garage/Carport |
| gd | Detached Garage | Garage/Carport |
| GlfCse | Golf Course | Location |
| Glfvw | Golf Course View | View |
| GR | Garden | Design (Style) |
| HR | High Rise | Design (Style) |
| in | Interior Only Stairs | Basement & Finished Rooms Below Grade |
| Ind | Industrial | Location & View |
| Listing | Listing | Sale or Financing Concessions |
| Lndfll | Landfill | Location |
| LtdSght | Limited Sight | View |
| MR | Mid-rise | Design (Style) |
| Mtn | Mountain View | View |
| N | Neutral | Location & View |
| NonArm | Non-Arms Length Sale | Sale or Financing Concessions |
| o | Other | Basement & Finished Rooms Below Grade |
| O | Other | Design (Style) |
| op | Open | Garage/Carport |
| Prk | Park View | View |
| Pstrl | Pastoral View | View |
| PwrLn | Power Lines | View |
| PubTrn | Public Transportation | Location |
| Relo | Relocation Sale | Sale or Financing Concessions |
| REO | REO Sale | Sale or Financing Concessions |
| Res | Residential | Location & View |
| RH | USDA - Rural Housing | Sale or Financing Concessions |
| rr | Recreational (Rec) Room | Basement & Finished Rooms Below Grade |
| RT | Row or Townhouse | Design (Style) |
| s | Settlement Date | Date of Sale/Time |
| SD | Semi-detached Structure | Design (Style) |
| Short | Short Sale | Sale or Financing Concessions |
| sf | Square Feet | Area, Site, Basement |
| sqm | Square Meters | Area, Site |
| Unk | Unknown | Date of Sale/Time |
| VA | Veterans Administration | Sale or Financing Concessions |
| w | Withdrawn Date | Date of Sale/Time |
| wo | Walk Out Basement | Basement & Finished Rooms Below Grade |
| Woods | Woods View | View |
| Wtr | Water View | View |
| WtrFr | Water Frontage | Location |
| wu | Walk Up Basement | Basement & Finished Rooms Below Grade |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

UAD Version 9/2011 (Updated 1/2014)

27

File No.   72685DiamondheadN

UNIFORM APPRAISAL DATASET (UAD) DEFINITIONS ADDENDUM

Other Appraiser-Defined Abbreviations (continued)

| Abbreviation | Full Name | Fields Where This Abbreviation May Appear |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

Sales Contract - Page 1

## SELLER'S COUNTER OFFER # ___2___

This form is provided as a courtesy to the parties only. It is not required to be used in this transaction and may not fit the needs, goals and purposes of the parties. The Mississippi Association of REALTORS® makes no statement or warranty as to this form, its contents or use, and the parties, by their use of this form, acknowledge said facts and agree that neither the Mississippi Association of REALTORS® nor any member thereof shall be liable to any party or person for its contents or use. If any party to this transaction does not fully understand it, or has any question, the party should seek advice from a competent legal professional before signing.

1  The offer to purchase the real property commonly known as:
2  _____72685 Diamondhead Drive North, Diamondhead, MS   39525_____
3  _____
4  made by and between _____David W. Fozard, Candace S. Fozard_____ Buyer(s)
5  and _____Sally J. Cleek_____ Seller(s)
6  dated _____February 7, 2015_____ , is not acceptable in its present form but the following counter offer is hereby submitted:
   1. The price will be $137,000.  2. The Seller will provide a One Year Home Warranty.
8  3. The Seller's closing costs will include only the following items: Warranty Deed,
9  Recording Fee, WDIR-Wood Destroying Insect Report, Pro-rated Taxes, Pro-rated Diamondhead
10 POA Dues, Pro-rated Fire Dues, and Realtor commission. The Purchaser is responsible for all
11 Purchaser related closing costs including the $400 Diamondhead Property Owner's Association
12 transfer fee.
13 4. The Seller will pay up to $500 towards any non cosmetic repairs found by the Mississippi
14 Licensed Home Inspector, provided those pages of the report covering items to be repaired
15 are provided to Seller.
16 5. The Closing Date will be on or before March 20, 2015.
17 OTHER TERMS: All other terms shall remain the same.
18 EXPIRATION: This counter offer shall expire unless a copy thereof with Buyer's written acceptance is delivered to Seller or its
19 agent by: _____February 12, 2015_____ (date).

20 Signed this the 11th day of ____February____ , 2015 , at __2.00__ ☐ a.m. ☒ p.m., and a copy hereof received:
21 SELLER __Sally J Cleek__                    SELLER _____
       Sally J. Cleek
22 A copy of this Counter Offer # 2 ___ has been received this the 11th day of __February__ , at __5:00__ ☐ a.m. ☒ p.m.
23 BUYER __David W Fozard__                    BUYER __Candace S Fozard__
       David W. Fozard                              Candace S. Fozard

24 The foregoing Counter Offer # 2 ___ is accepted this the 11th day of __February__ , 2015 , at __6:00__ ☐ a.m.
25 ☒ p.m., and a copy hereof received:
26 BUYER __David W Fozard__                    BUYER __Candace S Fozard__
       David W. Fozard                              Candace S. Fozard
27 A copy of this acceptance has been received this the _____ day of _____ , at _____ ☐ a.m. ☐ p.m.
28 SELLER _____                    SELLER _____
       Sally J. Cleek

29 The Buyers have countered this Counter Offer subject to the terms of the attached Buyer's Counter Offer # 2 _____ this the _____
30 day of _____ , _____ , at _____ ☐ a.m. ☐ p.m., and a copy hereof received:
31 BUYER _____                    BUYER _____
       David W. Fozard                              Candace S. Fozard

32 The Buyers have rejected this Counter Offer and make no counter offer this the _____ day of _____ , _____ , at
33 _____ ☐ a.m. ☐ p.m., and a copy hereof received:
34 BUYER _____                    BUYER _____
       David W. Fozard                              Candace S. Fozard
35 A copy of this rejection has been received this _____ day of _____ , at _____ ☐ a.m. ☐ p.m.
36 SELLER _____                    SELLER _____
       Sally J. Cleek

Copyright ©2010 by Mississippi Association of REALTORS®
F14 Seller's Counter Offer                                                Rev. Date. 2/2010
REALTOR®
Coldwell Banker Coast Delta Re, 5408 Indian Hill Blvd, Diamondhead, MS 39525                              Sally J. Cleek
Betty Maxwell          Phone: (224)255-9188          Fax: (228)255-6623
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Sales Contract - Page 2

## CONTRACT FOR THE SALE AND PURCHASE OF REAL ESTATE

This form is provided as a courtesy to the parties only. It is not required to be used in this transaction and may not fit the needs, goals and purposes of the parties. The Mississippi Association of REALTORS® makes no statement or warranty as to this form, its contents or use, and the parties, by their use of this form, acknowledge said facts and agree that neither the Mississippi Association of REALTORS® nor any member thereof shall be liable to any party or person for its contents or use. If any party to this transaction does not fully understand it, or has any question, the party should seek advice from a competent legal professional before signing.

1.   **1. PARTIES.** Buyer(s) ____ David W. Fozard, Candace S. Fozard ____
2.   Seller(s) ____ Sally J. Cleek ____
3.   Buyer(s) agree to buy and Seller(s) agree to sell, the herein described property on the terms and conditions set forth herein.
4.   **2. PROPERTY. Description:** R BLK 5 Diamondhead PH 1 UN 2A ____
5.   _____
6.   ____ 72685 Diamondhead Dr. North ____ in ____ Diamondhead ____ 39525 ____ Hancock County, MS
7.   (street address)                          (city/town/zip code)
8.   together with the following items: as described & listed in MLS #262942 and stated on the property
9.   disclosure. _____
10.  _____ all items permanently attached, unless specifically excluded herein. The Property is further
11.  described as tax parcel # 068Q-1-41-059.000 ____ in the public records of the county
12.  within which the property is located, the exact legal description to be determined by survey (if warranted or agreed).
13.  **Mineral Rights:** Seller(s) will transfer [X] ANY [ ] NONE ____ [ ] OTHER 100 ____ (%) of mineral rights
14.  which it possesses in the real property to the Buyer(s).
15.  **3. PURCHASE PRICE:** Buyer will pay a total price of $ 127,000.00 ____ as follows:
16.  **Cash Down Payment at Closing** (subject to adjustments and pro-rations) $ TBD ____
17.  **Balance: $ 127,000.00** ____ payable as (check one)
18.  (A) [ ] Cash
19.  (B) [X] New Loan (check appropriate boxes): [ ] FHA [ ] VA [X] CONV [ ] Other: ____
20.  [ ] Adjustable [X] Fixed
21.  **4. EARNEST MONEY.** A sum of $ 500.00 ____ (cash [ ] check [X] ) is to be deposited with
22.  ____ Century 21 Diamond Properties ____ [Broker/Trustee], who shall hold it in trust, presuming clearance
23.  of check. Upon acceptance of the Contract, earnest money deposit and down payment received by above named Broker/Trustee
24.  shall be deposited in a federally insured escrow account and shall remain in that account until the transaction has been consummated
25.  or terminated. In any event of failure to close, Broker/Trustee has authority to provide the earnest money to the rightfully entitled
26.  party based upon the terms of the Contract. In the event the Broker/Trustee cannot determine by the terms of the Contract which
27.  party is rightfully entitled to the earnest money, the Broker/Trustee shall interplead the funds.
28.  **5. CONTINGENCIES.**
29.  (A) No Waste. This Contract is conditioned upon delivery of the Property and any and all improvements in their present condition,
30.  reasonable wear and tear excepted. Seller(s) shall preserve the Property in its present general condition, normal wear and tear
31.  excepted, and shall not permit the Property to suffer waste avoidable by the reasonable exercise of due care. Any material change to
32.  the Property shall be disclosed in accordance with the Mississippi Real Estate Brokers License Law of 1954, as amended, allowing
33.  for termination of the offer as prescribed by law (see Miss. Code Ann., Sec. 89-1-503).
34.  (B) Loan. Contract is contingent upon Buyer(s) being approved for a loan sufficient to close, provided that Buyer(s) makes timely
35.  application and good faith efforts to secure a loan prior to Closing. Within seven (7) calendar days after the Effective Date of the
36.  Contract, Buyer(s) will make application in proper form for the loan(s), shall cooperate with parties to obtain approval(s), diligently
37.  and timely pursue the same in good faith, execute all documents and furnish all information and documents required, and make
38.  timely payment of any costs of obtaining such loan approval. Failure of the Buyer(s) to make timely application for loan and
39.  exercise good faith efforts to facilitate its approval shall entitle the Seller(s) at its option to (A) excuse the failure and proceed with
40.  the transaction on such terms as the parties may agree in writing in the form of an amendment to the Contract; OR (B) declare the
41.  Contract void and refund to Buyer(s) the earnest money deposit. OR (C) treat the failure as a Breach by Buyer(s) under paragraph 10
42.  hereof.
43.  (C) Appraisal. [X] Applicable [ ] Not Applicable (Check One)
44.  If applicable, Property must appraise at or above Purchase Price or Buyer(s) shall not be obligated to complete the purchase of the

Page 1 of 6

Copyright ©2014 by Mississippi Association of REALTORS®
F1 - Contract for the Sale and Purchase of Real Estate

Rev. Date 02/2014

Sales Contract - Page 3

45. Property and all Earnest Money shall be refunded to Buyer(s), except when Buyer(s) have failed to secure a timely appraisal in good
46. faith. Failure of Buyer(s) to make good faith efforts to secure a timely appraisal shall constitute a Breach of this Contract.
47. (D) Warranty And Inspections. (Select One):
48.   ☐ "AS IS" Sale Without Warranty; No Home Inspection. Buyer(s) has/have inspected the property and find(s) same to be in
49. satisfactory condition and DO(ES) NOT wish to secure a home inspection. Buyer(s) accept(s) the Property "AS IS WHERE IS" in
50. its condition as of the Effective Date of this Contract, and acknowledge(s) that neither Seller(s) nor Listing Broker nor Seller Broker
51. or salespersons associated with this transaction have made any warranty, express, implied or otherwise, as to the Property, except
52. such express warranties as the parties agree to in writing attached hereto, which shall survive Closing.
53.    OR
54.   ☒ Home Inspection. Buyer(s) shall, at Buyer(s) expense, arrange for a Mississippi licensed home inspector(s) to conduct an
55. inspection (or inspections) for the purpose of evaluating non-cosmetic systems (roof, plumbing, heating, air conditioning, electrical,
56. appliances, pools, spas, treatment systems or other systems) to determine if they are in proper working order. Buyer(s), or any
57. designee, and Buyer's home inspector shall have the right to enter the Property at reasonable hours, with twenty-four (24) hours prior
58. notice, and conduct inspections for purposes of this paragraph. On the designated inspection date(s), Seller(s) shall provide
59. unlimited access to the Property, and shall see that all utilities are on at the time of the inspection. In the event of failure of Seller(s)
60. to make proper provision for properly noticed inspection(s), Seller(s) shall be responsible to Buyer(s) for reasonable loss or expense
61. incurred by Buyer(s) as a result of a failed or partial inspection, including the cost of necessitated secondary inspections.
62.   (1) If a timely (as defined herein) Home Inspection Report reveals material deficiencies that have not previously been disclosed on
63. the Property Condition Disclosure Statement ("PCDS") in accordance with Sections 89-1-501 through 89-1-527 of the
64. Mississippi Code of 1972 and which require amendment of the PCDS, Buyer(s) shall identify such material deficiencies to
65. Seller(s) in writing together with a copy of relevant portions of the Home Inspection Report and Seller and Buyer shall comply
66. with Sections 89-1-501 through 89-1-527 of the Mississippi Code of 1972 with regard to such disclosures, including Buyer's
67. option to rescind this Contract as set forth in Section 89-1-503 of the Mississippi Code of 1972, as amended.
68.   (2) If a timely (as defined herein) Home Inspection Report reveals non-cosmetic deficiencies that do not require amendment of the
69. PCDS, Buyer(s) shall identify such non-cosmetic deficiencies to Seller(s) in writing together with a copy of relevant portions of
70. the Home Inspection Report. Upon receipt of such written notice, Seller(s) agree(s) to pay for repairs of such non-cosmetic
71. items up to but not to exceed an aggregate total of $ 500.00 _____ , and Buyer(s) agree to accept such payment as
72. Seller(s)' sole obligation under this paragraph; if such repairs exceed this amount, Buyer(s) may elect within three (3) business
73. days of the date of the Home Inspection Report to terminate this Contract and receive a refund of any Earnest Money OR to
74. accept the Seller's payment and proceed to Closing. If Seller(s) has/have inserted a zero in this blank or failed to insert any
75. number therein and non-cosmetic deficiencies are revealed by the Home Inspection Report that do not require amendment of the
76. PCDS, Buyer(s) shall identify such non-cosmetic deficiencies to Seller(s) in writing together with a copy of relevant portions of
77. the Home Inspection Report; thereafter, Buyer(s) may elect within three (3) business days to terminate this Contract and receive
78. a refund of any Earnest Money OR to accept the Property "AS IS" and with no warranties or representations from Seller(s) or
79. their agent(s) or representative(s) and proceed to Closing, subject to any other supplemental agreement the parties may reach in
80. writing. Failure of the Buyer(s) to make its election within three (3) business days shall constitute a waiver by Buyer(s) of such
81. right, in which case Buyer(s) agree(s) to accept the property "AS IS" without repairs and with no warranties or representations
82. from Seller(s) or their agent(s) or representative(s), and the parties shall proceed to Closing.
83.   (3) The foregoing notwithstanding, if Buyer(s) fails to have property inspected AND give written notice with copies of relevant
84. portions of the Home Inspection Report as required above within ten (10) business days of the Effective Date of this Contract,
85. then Buyer(s) agree(s) to accept the property "AS IS" without repairs and with no warranties or representations from Seller(s) or
86. their agent(s) or representative(s), and the parties shall proceed to Closing.
87. (E) Final Walk-Through Inspection. Irrespective of the election made above, Buyer(s) retain(s) the right to perform a final walk-
88. through inspection of the Property prior to Closing to verify the terms of the Contract have been fulfilled.
89. (F) Wood Destroying Insect Report. (check one) ☐ Buyer(s) ☒ Seller(s) shall, at their expense, furnish within ___10___
90. calendar days before Closing approved FHA/VA Wood Destroying Insect Report ("WDIR") from a licensed termite company
91. indicating that Property shows no evidence of termite or other wood-destroying insect infestation. If such infestation constitutes
92. material damage, Buyer(s) can, within three (3) calendar days of receipt thereof, declare the Contract null and void and have its
93. earnest money refunded. Additionally, when infestation is found on the subject Property, Seller(s) can at its option either furnish a
94. warranty of approved treatment and correct any structural damage caused by such infestation OR deem said repairs as cost
95. prohibitive and declare the contract null and void, refunding Buyer(s)' earnest money. Parties acknowledge that Listing and Selling
96. Broker(s), salespersons associated with this transaction, Lender, and attorney(s) have the right to rely solely on the WDIR at Closing.
97. In the event damage is found thereafter, Buyer(s) release(s) Listing and Selling Broker(s), salespersons associated with this
98. transaction, Lender, and attorney(s) from any liability. Both Buyer and Seller acknowledge that the Broker(s) shall not recommend



Page 2 of 6

Copyright ©2014 by Mississippi Association of REALTORS®
F1 - Contract for the Sale and Purchase of Real Estate                                        Rev. Date 02/2014
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com        Diamondhead Dr

## Sales Contract - Page 4

99.  any pest control company or in any way warrant the inspection or treatment made by the company or any other person, and is in no
100.  way responsible for damage attributable to wood destroying insects or related repairs. The WDIR cost is a separate cost and is not
101.  considered "Closing Costs" under this Contract.
102.  (G) Pre-Closing Loss. In the event of damage to the Property or improvements before Closing by virtue of causes beyond the
103.  parties' control, such as fire, flood, war, acts of God or other causes, Seller(s) shall, within three (3) calendar days of a loss or as soon
104.  thereafter as reasonably possible, notify Buyer(s) in writing of said damage, at which time Buyer(s) may, at Buyer's option:
105.  (1)  cancel this contract and be entitled to the return of earnest money deposits; OR
106.  (2)  waive any objection and proceed to Closing on the terms set forth in this Contract; OR
107.  (3)  seek to reach suitable agreement with Seller(s) as to repair(s), extension of the Closing date and/or other adjustments to the
108.  Contract as may be agreed upon by the parties.  Failure of the parties to reach a suitable agreement within five (5) calendar days after
109.  election by Buyer(s) to proceed under this option (3) shall automatically and without further notice cancel this Contract and entitle
110.  Buyer(s) to the return of earnest money deposits.
111.  6.  CLOSING.
112.  (A) Deadline to Close. Closing to be on _____ March 20 _____, 2015 _____, or before if mutually agreed to in writing by the
113.  parties.
114.  (B) Title And Conveyance.  At Closing, Seller, at Seller's expense, shall deliver to Buyer a [X] General Warranty Deed
115.  ☐ Special Warranty Deed  ☐ Assignment of Lease  ☐ Quitclaim Deed vesting title to the Property in (write names clearly):
116.  David W. Fozard, Candace S. Fozard _____ ;
117.  and a certificate of title prepared by an attorney upon whose certificate title insurance may be obtained from a title insurance
118.  company acceptable to Buyer(s) and qualified to do and doing business in the State of Mississippi.  Seller(s) shall, prior to or at
119.  Closing, satisfy and pay all outstanding mortgages, deeds of trust, special liens, taxes or special assessments, escrow amount of
120.  Property Owner's Association or Condominium fees affecting the subject property which are not specifically assumed by Buyer(s)
121.  herein. Title shall be good and marketable, subject only to the following items recorded in the Chancery Clerk's Office of said
122.  county: easements without encroachments, applicable zoning ordinances, protective covenants and prior mineral reservations;
123.  otherwise Buyer(s), at its option, may either (A) if defects cannot be cured by designated Closing date, cancel this Contract, in which
124.  case any earnest money deposit shall be refunded to Buyer; (B) accept title as is and proceed to Closing; or (C) if the defects are of
125.  such character that they can be remedied by legal action within a reasonable time, permit Seller(s) such reasonable time to perform
126.  this curative work at Seller(s)' expense.  In the event curative work is performed by Seller(s), the time specified herein for Closing
127.  shall be extended for a reasonable period necessary for such cure, said period not to exceed thirty (30) days unless agreed to in
128.  writing by the parties.  The deed and certificate of title are separate costs and not considered "Closing Costs" under this Contract.
129.  (C) Proration.  All taxes, rents, utility and other assessments and appropriate condominium or Property Owner's Association fees
130.  are to be prorated as of the Closing date for the year of the sale.  Pro-rated items are not "Closing Costs" under this Contract.
131.  (D) Closing Costs.  At Closing, Seller agrees to pay up to $ _____ toward closing costs (subject to applicable law;
132.  does not include items in paragraphs 5(F), 6(B) or 6(C)).
133.  (E) Possession. Possession shall be delivered to Buyer(s) (check one):
134.      [X] Upon completion of Closing and full funding
135.      ☐ By separate *Possession Addendum* attached and made a part of this Contract
136.  7.  DISCLOSURES.
137.  (A) Multiple Listing Service ("MLS"). The Selling Broker is a participant of the _____ Mississippi Gulf Coast _____
138.  Multiple Listing Service and the sales information will be provided to the MLS to be published and disseminated to its Participants.
139.  (B) Property Condition Disclosure Statement ("PCDS"). (Select One):
140.      ☐ NO Property Condition Disclosure Statement is required in accordance with Sections 89-1-501 et seq. of the Mississippi
141.  Code, as amended.
142.  ────OR─────────────────────────────────────────────────────────
143.      [X] Buyer(s) acknowledge(s) receipt of the Property Condition Disclosure Statement in accordance with Sections 89-1-501 et seq.
144.  of the Mississippi Code, as amended.
145.      OR
146.      ☐ The Property Condition Disclosure Statement is to be delivered after the Buyer has made an offer, in accordance with
147.  Sections 89-1-501 et seq. of the Mississippi Code, as amended.  Upon delivery, the Buyer may terminate any resulting real estate
148.  contract, including this Contract, or withdraw any offer for a time period of three (3) days after the delivery in person or five (5) days
149.  after the delivery by deposit in mail.  Such termination or withdrawal shall be without penalty and any deposit or Earnest Money
150.  shall be promptly refunded.
151.  (C) Equal Housing Opportunity. In accordance with the federal Fair Housing Law, it is illegal to block bust or to discriminate
152.  against any person because of race, color, religion, sex, handicap, familial status or national origin in the sale or rental of housing or

Page 3 of 4

Copyright ©2014 by Mississippi Association of REALTORS®
F1 - Contract for the Sale and Purchase of Real Estate

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Rev. Date 02/2014

Diamondhead Dr

## Sales Contract – Page 5

153. residential lots, in advertising the sale or rental of housing, in the financing of housing or in the providing of real estate brokerage
154. services.
155. (D) Privacy. Signature of Buyer(s) on this Contract is authorization by Buyer(s) to the mortgage company processing a loan
156. application to examine the credit worthiness of Buyer(s). Signature of Seller(s) of this Contract is authorization to any mortgage
157. company to release any information pertinent to the mortgage secured by the Property to foresaid brokers or salespersons and the
158. closing attorney.
159. (E) Lead-Based Paint Disclosure. Every buyer of any interest in residential property on which a residential dwelling was built
160. prior to 1978 is notified that such subject property may present exposure to lead from lead-based paint that may place young
161. children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage,
162. including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses
163. a particular risk to pregnant women. The Seller of any interest in residential real property is required to provide the Buyer with any
164. information on lead-based paint hazards from risk assessments or inspections in the Seller's possession and notify the Buyer of any
165. unknown lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to
166. purchase.
167. 8.  BROKERS AND SALESPERSONS.
168. (A) The Brokers and Salespersons involved in the transaction associated with this Contract are as follows:
169. Selling Agency  Century 21  Diamond Properties          Selling Agent  Marsha H.  Buras
170. Business Phone  (228) 255-3550                           Business Phone  (985) 285-4690
171. Listing Agency  Coldwell Banker Coast Delta             Listing Agent  Betty Maxwell
172. Business Phone  (228) 255-2600                           Business Phone  (228) 363-1430
173. (B) Agency Relationship. (Check One:)
174. ☐ The Listing Firm, the Selling Firm, and their salespersons represent the Seller(s) as their Client. The Buyer(s) is/are the
175. customer.
176. ☒ The Listing Firm and its salespersons represent the Seller(s). The Selling Firm and its salespersons represent the Buyer(s).
177. ☐ The Listing Firm and its salespersons represent both Seller(s) and the Buyer(s) as dual agents by mutual agreement and all
178. parties have signed and understand the Dual Agency Confirmation form provided to them by the Listing Firm.
179. ☐ The Selling Firm and its salespersons represent the Buyer(s). The Seller(s) is/are not represented and is/are a customer.
180. (C) Compensation. The parties under this Contract or through any other negotiated agreement agree to pay as per listing agreement
181. or prior offer of cooperation and compensation. If Broker(s) collect(s) this compensation or any part thereof through legal action,
182. the defaulting party agrees to pay court costs including reasonable attorney fees.  Compensation due hereunder is deemed earned,
183. due and payable upon presentation of a buyer ready, willing and able to purchase on terms acceptable to Seller(s), though Broker
184. agrees to accept payment at Closing as an accomodation to the parties.
185. (D) No Reliance. Neither party shall be bound by any terms, conditions, oral statements, warranties or representations not herein
186. contained. Seller(s) and Buyer(s) acknowledge that neither of them have relied upon any statement, representation or omission made
187. or documentation provided by the other party or the Broker(s) and salesperson(s) and their representatives relating to this transaction
188. including, but not limited to, value of the Property, condition of the Property, the decision to sell or purchase the Property, the terms
189. or condition of sale, tax or legal considerations or liability, size or condition of the Property, the presence or lack thereof of UFFI
190. insulation, the presence of or lack thereof of Exterior Insulated Finish Systems (E.I.F.S.), previous flooding, effect of or location
191. within Mississippi State Tidelands or Federal wetlands, presence of expansive soils, or the presence or absence or enforceability of
192. acceleration clauses or tax or balloon notes.
193. (E) Liability. Broker's liability to Buyer(s) and Seller(s) in this transaction shall not exceed the amount it has received as
194. compensation.
195. 9.  GENERAL.
196. (A) Agreement Complete. This Contract incorporates all prior agreements between the parties, contains the entire and final
197. agreement of the parties and cannot be changed except by their written mutual consent. Neither party shall be bound by any terms,
198. conditions, oral statements, warranties or representations not herein contained.
199. (B) Read And Understood. Each party acknowledges and hereby affirms that it has read and understands this Contract.
200. (C) Assignment. This Contract shall not be assignable by either party without consent of the other party.
201. (D) Effective Date. For purposes of this contract the Effective Date is the date the last necessary party signs.
202. (E) Notices. Any notices required or permitted to be given under this Contract shall be delivered by hand or mailed by certified or
203. registered mail, return receipt requested, in a postage prepaid envelope or by nationally recognized overnight carrier service; by
204. facsimile with receipt acknowledgement (if the fax number is listed below); or by email (if the email address is listed below), at
205. Sender's option, and addressed as follows:

Page 4 of 6

Copyright ©2014 by Mississippi Association of REALTORS®
F1 - Contract for the Sale and Purchase of Real Estate                                Rev. Date 02/2014

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                      Dismondhead Dr

Sales Contract – Page 6

206. If to Seller(s): _____
207. Address: _____
208. Facsimile: _____
209. Email: _____
210. If to Buyer(s): _____
211. Address: _____
212. Facsimile: _____
213. Email: _____
214. (F) Survival Of Contract. All express representations, warranties and covenants shall survive termination of the Contract or
215. Closing unless specified to the contrary.  All other contractual obligations shall terminate at Closing.
216. (G) Time Is Of The Essence. Time Is of the essence as to all time periods and deadlines stated in this Contract, and delay in
217. performance is not excused unless expressly excused in writing signed by all parties.
218. 10. BREACH.  Specific performance is the essence of this Contract, except as otherwise specifically provided for herein and as
219. further delineated below, and TIME IS OF THE ESSENCE.
220. In the event of breach of this Contract by Buyer(s), Seller(s) may, at its/their option (A) accept the earnest money deposit as
221. liquidated damages and this Contract shall be null and void; OR (B) file suit in any court of competent jurisdiction for damages; OR
222. (C) file suit in any court of competent jurisdiction for specific performance and any damages.  If Seller elects to proceed under (A)
223. or (B) in this section, or if Seller(s) proceed(s) under (C) and is/are unsuccessful in a suit for specific performance but receive(s) an
224. award of the earnest money deposit and/or damages, Listing Broker shall retain or be paid one-half (1/2) of the earnest money
225. deposit amount or damages awarded as their compensation, not to exceed the full compensation due under the Listing Agreement. If
226. Seller(s) elects to proceed under option (C) and secure(s) specific performance, Listing Broker shall be paid the full compensation
227. due under the Listing Agreement.
228. In the event of breach of this Contract by Seller(s), Buyer(s) may at its/their option (A) accept the refund of its earnest money
229. deposit as liquidated damages and this Contract shall be null and void; OR (B) file suit in any court of competent jurisdiction for
230. damages, less credit for earnest money returned to Buyer(s); OR (C) file suit in any court of competent jurisdiction for specific
231. performance and any damages.  In the event of Seller(s)' breach, Listing Broker shall be paid the full compensation due under the
232. Listing Agreement, unless this Contract requires Buyer(s)' to pay all or any portion of said compensation.  If it becomes necessary to
233. ensure the performance of this Contract for either party to initiate litigation, then the non-prevailing party agrees to pay reasonable
234. attorney fees and court costs in connection therewith to the prevailing party.
235. 11. SPECIAL PROVISIONS. (If none, write "NONE" below):
236. Home inspection report must be suitable to the buyers. _____
237. Seller to provide a home warranty to buyers at closing. _____
238. _____
239. _____
240. _____
241. _____
242. _____
243. _____
244. _____
245. _____
246. _____
247. _____
248. _____
249. _____

Page 5 of 6

Copyright ©2014 by Mississippi Association of REALTORS®
F1 - Contract for the Sale and Purchase of Real Estate
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Rev. Date 02/2014

Diamondhead Dr

**Sales Contract – Page 7**

250. **12. EXPIRATION OF OFFER.** This offer expires at ____5____ o'clock ☐ AM ☒ PM, Central Standard Time (CST) on

251. __February 9, 2015__ [date] if not accepted, countered or rejected by Seller(s) by that time.

252. **13. ATTACHMENTS. (Check All That Apply):**
253. ____ Dual Agency Confirmation      __X__ Lead Based Paint Disclosure
254. __X__ Mandatory Arbitration Addendum      ____ Option Agreement
255. ____ Pre-Closing Repair/Improvement Addendum      ____ Back Up Agreement Contingency
256. ____ Right of First Refusal Addendum      __X__ Property Issues Addendum
257. ____ Pre-Closing Possession Addendum      ____ VA/FHA Disclosures (as required)
258. ____ Post-Closing Possession Addendum      ____ Other _____

259. **14. SIGNATURE BLOCKS.**

260. Signed this the 7th day of __February__, 2015, at _____ ☐ a.m. ☒ p.m. and a copy hereof received:
261. BUYER _David W. Fozard_      BUYER _Candace S. Fozard_
262. Phone _____      Phone _____

263. The foregoing offer is accepted this the ____ day of _____, _____, at _____ ☐ a.m. ☐ p.m.
264. and a copy hereof received:
265. SELLER _____      SELLER _____
266. Phone _____      Phone _____
267. A copy of this *acceptance* has been received this the ____ day of _____, ____, at _____ ☐ a.m. ☐ p.m.
268. BUYER _____      BUYER _____

269. The Sellers have countered this offer subject to the terms of the attached Counter Offer No. _____ this the _____
270. day of _____, _____, at _____ ☐ a.m. ☐ p.m. and a copy hereof received:
271. SELLER _____      SELLER _____

272. The Sellers have received a copy of this offer and rejected same and make no counter offer this the _____ day of
273. _____, _____, at _____ ☐ a.m. ☐ p.m. and a copy of this rejection has been delivered
274. to Buyer(s).
275. SELLER _____      SELLER _____
276. A copy of this *rejection* has been received this the ____ day of _____, ____, at _____ ☐ a.m. ☐ p.m.
277. BUYER _____      BUYER _____

Copyright ©2014 by Mississippi Association of REALTORS®
F1 - Contract for the Sale and Purchase of Real Estate
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Rev. Date 02/2014
Diamondhead Dr

Form SCNLGL - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

## Sales Contract - Page 8

### Residential Property

**S 262942 A**

Coldwell Banker Coast Delta Re  [#469]          228-255-2600
Maxwell, Betty  [maxwbb115]                      228-363-1430

| | |
|---|---|
| List Price: | $ 143,900 |
| Rental Y/N: | NO |
| DOM: | 668 days |
| List Date: | 04/10/13 |
| Excl. Agency: | N |
| Photo: | Agent to submit Front I |
| Internet: Y | IDX Y    Addr Public: Y |
| Manufactured: | N    Modular: N |
| Agency (A/B): | Y/N |
| Co-op (A/B): | 3.0/3.0    **or** |
| Other Info: | Fantastic custom built home walking distance to community swimming pool. Survey and elevation certificate available upon request. |

Click On Photo For More Info

## 72685 DIAMONDHEAD DRIVE NORT
*Unit #:*          *City:* Diamondhead
From the DH POA Circle go to Diamondhead Drive North. Go through the first 3 way stop sign.  Past Devil's Elbow. House is on the corner of DHDN and Ahl.

| | | | |
|---|---|---|---|
| Area: | 05-Diamondhead | N/S of I-10: N | Zip Code: 39525 |
| Lot Size: | 80.5 X 36.4 X 100.2 X 90.0 X 129.5 | | Subdivision: Diamondhead |
| Legal: | 1-2A-5-8 | | Parcel #: 068Q-1-41-059.000 |
| # Bedrooms: | 3 | | #Full/Half Baths: 2 |
| Apx H/C SqFt: | 1,911 | | SqFt Source: Hancock Co Tax Records |
| Age: | 1996 | | Age Source: Hancock Co Tax Records |
| Acreage: | | | County: Hancock County |
| Zoning: | Single Family Residence | | Map Coordinate: |

| | | | |
|---|---|---|---|
| Mortgage Type: | | Assumption: N | Appl. Required: |
| Monthly P&I: | | Interest Rate: | Total Mthly Paymt: |
| Equity: | | Loan Balance: | Est Annual Taxes: $ 735 |
| Homestead: | Y | Annl Home Ins: | Flood Ins Req: Yes |
| Condo/HO Assn Fee: | $ 65 Monthly | | Annl Flood Ins: |
| Potential Short Sale: | N | 3rd Party/Bank Owned: N | Other Condo/HO Fee: $ 20 Monthly |
| Short Sale Info: | | | |

| | | | |
|---|---|---|---|
| School District: | Hancock County | Elementary School: | East Hancock |
| Junior/Middle School: | Hancock Middle School | Senior High School: | Hancock High |
| Owner Name: | CLEEK | Owner/Agent: | N |

**Prop Desc:** Extra-ordinarily clean & pristine home! Enter the spacious family room w/two sided fireplace shared w/dining area in kitchen. Kitchen has center isle w/seating, black appliances & granite. FL room w/custom brick wall & built-in shelving for treasures-this is not an add-on. See today & fall-in love!

| | | | |
|---|---|---|---|
| Type: | 1 Story, House | Style: | Contemporary |
| Exterior: | | Waterfront: | |
| Flooring: | | Walls: | Sheet Rock |
| Foundation: | Slab | Heating Fuel: | |
| Heating Syst: | | Cooling Syst: | Central Electric |
| Water Heater: | Electric | Water/Sewer: | Community Water, Community Sewer |
| Parking: | Garage-Double, Driveway | Restrictions: | Restrictive Convenants, Architectural Review, Homeowners |
| Amenities: | Near Golf Course, Swimming, Boating, Tennis | Handicap: | Adaptable |
| Showing: | Call List Ofc for Appt, Electronic Keybox | Occupancy: | Owner |
| Possession: | At Closing | Accept Financ: | Conventional, F H A, V A, Cash |
| Rooms: | Formal Living Rm, Eat-In Kitchen, Florida Rm, Utility Rm Inside, Split Bedrm Plan | | |
| Equip/Appl.: | Range/Oven, Dishwasher, Refrigerator, Disposal, Microwave, Garage Opener, Smoke Alarm | | |
| Interior Feat: | Fireplace, Walk-In Closets, High Ceilings, Whirlpool Tub, Ceiling Fan, Attic Storage, Granite Counter Tops | | |
| Exterior Feat: | Energy Efficient, Encl/Screen Patio, Paved Drive, Paved Street, Gutters & Downspouts | | |
| Apx Age Code: | Under 25 Years | | |
| Miscellaneous: | Under One Acre, Shopping Nearby | | |
| Virtual Tour | http://www.PropertyPanorama.com/mls.asp?id=218748 | | |

-- THIS INFORMATION IS CONFIDENTIAL. DEEMED RELIABLE BUT NOT GUARANTEED. BUYER AND/OR BUYER'S AGENT SHOULD VERIFY DATA AND EVALUATE SOURCE. -- 02/07/15

Page # 34

## Building Sketch

| Borrower | Candance & David Fozard | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 72685 Diamondhead Dr N | | | | | | |
| City | Diamondhead | County | Hancock | State | MS | Zip Code | 39525 |
| Lender/Client | CEFCU | | | | | | |



TOTAL Sketch by a la mode, inc.

**Area Calculations Summary**

| Living Area | | Calculation Details |
|---|---|---|
| First Floor | 1861.21 Sq ft | 34.4 × 21.8 = 749.92 |
| | | 17.3 × 21  = 363.3 |
| | | 20.5 × 17.1 = 350.55 |
| | | 13.8 × 28.8 = 397.44 |
| 2 Car Attached | -555.9 Sq ft | 21.8 × 25.5 =  555.9 |
| **Total Living Area (Rounded):** | **1861 Sq ft** | |

Page # 35

## Location Map

| Borrower | Candance & David Fozard | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 72685 Diamondhead Dr N | | | | | | |
| City | Diamondhead | County | Hancock | State | MS | Zip Code | 39525 |
| Lender/Client | CEFCU | | | | | | |



## Flood Map

| Borrower | Candance & David Fozard | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 72685 Diamondhead Dr N | | | | | | |
| City | Diamondhead | County | Hancock | State | MS | Zip Code | 39525 |
| Lender/Client | CEFCU | | | | | | |



**InterFlood** by a la mode

Prepared for: Karen Delk & Associates, Inc.
72685 Diamondhead Dr N
Diamondhead, MS 39525

300 yards

bing

**MAP DATA**
FEMA Special Flood Hazard Area: Yes
Map Number: 28045C0244D
Zone: AE
Map Date: October 16, 2009
FIPS: 28045

**MAP LEGEND**
Areas inundated by 500-year flooding
Areas inundated by 100-year flooding
Velocity Hazard

Powered by CoreLogic©

Protected Areas
Floodway
Subject Area



P.O. Box 1715, Peoria, IL 61656-1715
309.633.7000 | 1.800.633.7077

5401 W. Dirksen Parkway, Peoria, IL 61607
www.cefcu.com

Good Afternoon Candace and David;

Attached you will find a copy of the recent appraisal of your home.  Please call the CEFCU
Mortgage team at 1.800.633.7077, ext. 33424, if you have any questions concerning this appraisal.

Please disregard any invoice that may be attached.

Thank you for choosing CEFCU!

Sincerely,

Judy
CEFCU First Mortgage Department

# Exhibit 2







# Exhibit 3







# Exhibit 4

# Exhibit 5

# Exhibit 6

# Exhibit 7

# Exhibit 8

# Exhibit 9

# Exhibit 10

# Exhibit 11

# Exhibit 12

# Exhibit 13

# Exhibit 14

# Plaintiff Fact Sheet

Plaintiff: David W. & Candace S. Fozard

Property Address: 72685 Diamondhead Drive North, Diamondhead, MS 39525

## Question #18 Itemization (Personal Property Damage)

| # | Description of Damaged Item | Value ($) |
|---|---|---|
| 1 | Refrigerator | $2300.00 |
| 2 | Microwave | $ 600.00 |
| 3 | Electric Range | $ 800.00 |
| 4 | Washer & Dryer | $1500.00 |
| 5 | Garbage Disposal | $ 150.00 |
| 6 | 4 laptop computers | $3000.00 |
| 7 | 2 tablet computers | $ 1000.00 |
| 8 | Television (55 inch Vizio smart TV) | $1000.00 |
| 9 | Television (32 inch Vizio smart TV) | $ 500.00 |
| 10 | HP Envy Deskjet printer | $ 250.00 |
| 11 | Sony Stereo 5-cd changer with speakers | $ 300.00 |
| 12 | Vizio Blu-ray player | $ 300.00 |
| 13 | Arris WiFi Router/Cable Modem | $ 300.00 |
| 14 | Xbox game system | $ 500.00 |
| 15 | 3 500 gb external hard drives | $ 150.00 |
| 16 | 1 1 tb external hard drive | $ 100.00 |

| 17 | Samsung S9 cell phone | $1000.00 |
|----|-----------------------|----------|
| 18 | Samsung S9+ cell phone | $1000.00 |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |
| 29 | | |
| 30 | | |
| 31 | | |
| 32 | | |
| 33 | | |
| 34 | | |
| 35 | | |

Total: $ $14,750.00