## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:  **CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL 2047** **SECTION "L"** |
| **This document relates to:** *Elizabeth Bennett, et al v. Gebr. Knauf Verwaltungsgesellschaft, KG, et al* **Case No. 14:cv-2722** | **JUDGE ELDON FALLON** **MAGISTRATE JOSEPH WILKINSON, JR.** |

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON CLAIMS ASSERTED BY NATHAN JUNIUS

**MAY IT PLEASE THE COURT:**

Defendants, Knauf Gips KG and Knauf Plasterboard (Tianjin) Co., Ltd. (the "Knauf Defendants"), through undersigned counsel, respectfully submit this Memorandum in Support of its Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as to the claims asserted by Nathan Junius against it in Plaintiffs' Fifth Amended Class Action Complaint (the "Fifth Amended Complaint").

I.      **Factual and Procedural Background**

A.      *MDL 2047 and the Bennett Complaint*

From 2004 through 2006, a housing boom in parts of the United States and rebuilding efforts necessitated by Hurricanes Rita and Katrina in the Gulf South led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used to construct and refurbish homes in coastal areas of the country,

notably the Gulf and East Coasts. Sometime after the Chinese drywall was installed, homeowners began to complain of foul-smelling odors, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829–30 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014). Many of these homeowners also began to complain of various physical afflictions believed to have been caused by the Chinese drywall.

These homeowners then began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. Because of the commonality of facts in the various cases, this litigation was designated as a multidistrict litigation. Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation ("JPML") on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 09-2047 before this Court.   On June 16, 2009, this Court entered PTO 1 regarding preservation of evidence, amongst other things. On October 9, 2009, this Court entered PTO 1(B) regarding preservation of evidence.   On January 24, 2012, this Court entered PTO 1(I) regarding preservation of evidence.

Since the inception of MDL 2047 in June of 2009, numerous cases have been consolidated, containing thousands of claims; over 20,000 records docs have been entered into the record, millions of documents exchanged in discovery, dozens of depositions, and over 30 Pretrial Orders have been issued; the Court has appointed steering committees and liaison counsel for plaintiffs, homebuilders, insurers, installers, and manufacturers; it has presided over monthly status conferences, hearings, and several bellwether trials.[1]

---

[1] *See* Order, R. Doc. No. 16570, pp. 3-4.

B. *The Bennett Complaint and the Junius Plaintiff*

The original Bennett Complaint was filed on November 13, 2014 in the Northern District of Alabama and was subsequently transferred and consolidated into MDL 2047. The Complaint was amended multiple times to amend the parties and claims. Junius did not file suit in this matter until November 24, 2016. The Fifth Amended Complaint was approved on May 14, 2018. Following the Fifth Amended Complaint, certain plaintiffs intervened. The Fifth Amended Complaint is the operative complaint in this matter.

Junius is a plaintiff in the operative Fifth Amended Complaint and has made claims against Knauf Gips KG and KPT regarding the alleged presence of defective Chinese drywall installed in their property located at 6537 Marshall Foch Street, New Orleans, LA 70124 (the "Property").

In conducting discovery in this MDL and in Bennett, this Court approved a Plaintiff Profile Form, Supplemental Plaintiff Profile Form, Owner Disclosure Affidavit, and Plaintiff Fact Sheet to be completed by Plaintiffs and set forth full and complete answers regarding the claims and damage amounts sought by all Bennett Plaintiffs. Junius completed and submitted a PPF, SPPF, PFS, and an Owner Disclosure Affidavit. *See* Exhibit A. The documents were completed under penalty of perjury.

At the time Junius bought the Property, the alleged defective Chinese drywall was not installed in the Property. The alleged Chinese drywall was installed in the Property following damage by Hurricane Katrina after the Junius purchased the Property in 2006 for $245,000.00. *See* Exhibit B: Deposition Transcript of Junius: 10:9-21; 42:10-17. Junius lived in the Property between 2006 and 2015, when they completed another residence at 4 Thrush Street. *See* Exhibit B: Deposition Transcript of Junius: 9:16-10:11.

Junius moved out of the Property and into Thrush street and alleges he never knew the Property had Chinese drywall during the time he was living in the Property. *See* Exhibit B: Deposition Transcript of Junius: 34:2 -21.Therefore, Junius moved out of the Property because of the new residence, and was unrelated to the alleged presence of Chinese drywall. Junius was not deprived of the use or benefits of the Property during the time he lived in the Property due to the alleged presence of Chinese drywall. *See* Exhibit B: Deposition Transcript of Junius: 34:22 – 37:10.

In 2009, the Property appraised for $430,000.00. Exhibit A (Depo. Exhibit 3).    In November 2015, the Property was listed for sale, and purportedly went under contract for $550,000.00.  *See* Exhibit B: Deposition Transcript of Junius: 24:12-18;  Exhibit A (Depo Exhibit 3).  Junius was alerted to the possibility of Chinese drywall, which was confirmed by an inspection company.  *See* Exhibit B: Deposition Transcript of Junius: 24:23-25:11; Exhibit A.  The sale did not close and the Property was remediated following the inspection. *See* Exhibit B: Deposition Transcript of Junius: 38:1-39:4; Exhibit A.   In May 2016, following remediation, the Property was appraised for $595,000.00. *See* Exhibit B: Deposition Transcript of Junius: 81:8-20; Exhibit A.  However, the Property was sold by Junius to his friend, and former business partner, Ben Chauffe for $416,500.00 *See* Exhibit B: Deposition Transcript of Junius: 32:9-33:9; Exhibit A. Junius and Chauffe had an agreement on the sale price and remediation costs because Chauffe did not have money to remediate the Property and was unable to obtain a mortgage on an unfinished property. *See* Exhibit B: Deposition Transcript of Junius: 33:1-22; 58:6 – 59:14.

The Property was remediated by C& J General Contractors, LLC, a company owned and run by Junius. It was previously a partnership between Junius and a friend, Ben Chauffe.  *See* Exhibit B: Deposition Transcript of Junius: 28:5-31:8; Exhibit A (Depo Exhibit 6).  Certain alleged

remediation costs were due to upgrades, were incurred after the sale from Junius to Chauffe, were invoiced to Chauffe, who was involved in the selection of items for the remediation of the Property, and/or were not supported by appropriate proof of payment. *See* Exhibit B: Deposition Transcript of Junius: 38:15-39:23; Exhibit A.

Junius did not comply with PTO 1(B), or PTO 1(I), did not retain any samples or physical evidence of drywall, electrical components, plumbing components, or any personal property they allege was damaged by Chinese-manufactured drywall. Exhibit A (Depo. Exhibit 1-3). The only evidence presented by Junius in support of their claim in terms of product ID and corrosion are photos of one alleged KPT board. Exhibit A (Depo Exhibit 1-3). Junius failed to provide any documentation regarding personal property losses.

## II.    Legal Standards

### A.    *Rule 56 Summary Judgment Standard*

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is required if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] "A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3]

When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial.[4] However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-

---

[2] FED. R. CIV. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").
[3] *Bennett v. Hartford Ins. Co. of Midwest*, 890 F.3d 597, 604 (5th Cir. 2018) (quoting *Johnson v. World All. Fin. Corp.*, 830 F.3d 192, 195 (5th Cir. 2016) (internal quotation marks omitted)).
[4] *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2558, 91 L.Ed.2d 265 (1986).

movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[5]

On a motion for summary judgment, "[a]lthough 'the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor,' summary judgment remains appropriate if the non-movant's evidence is 'merely colorable' or 'not significantly probative.'"[6] "Only when 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party' is a full trial on the merits warranted."[7] Furthermore, "[d]iscovery is not a prerequisite to the disposition of a motion for summary judgment."[8] "If it appears that further discovery will not provide evidence creating a genuine issue of material fact, the district court may grant summary judgment."[9]

## III.   Argument

### A.   Plaintiffs Failed to Comply with PTOs and to Preserve and Present Evidence of Drywall Manufacturers and/or Damages

The evidence demonstrates that Plaintiffs did not comply with the requirements of PTO 1, PTO 1(B), or PTO 1(I). On June 16, 2009, this Court entered PTO 1 regarding preservation of evidence, amongst other things. On October 9, 2009, this Court entered PTO 1(B) regarding preservation of evidence. Pursuant to PTO 1(B), which was entered in October 2009 prior to the

---

[5] *Id.* at 322; *see also Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir. 1993).

[6] *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.,* 892 F.3d 167, 170 (5th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)).

[7] *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249).

[8] *Carder v. Cont'l Airlines, Inc.*, 595 F. App'x 293, 299 (5th Cir. 2014) (quoting *Skiba v. Jacobs Entm't Inc.*, 587 Fed. Appx. 136, 138 (5th Cir. 2014) (per curiam)).

[9] *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (citing *Access Telecom, Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 720 (5th Cir.1999); *see also Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir.1990) ("This court has long recognized that a plaintiff's entitlement to discovery prior to a ruling on a motion for summary judgment is not unlimited, and may be cut off when the record shows that the requested discovery is not likely to produce the facts needed by the plaintiff to withstand a motion for summary judgment.").

remediation of any of the below claims, the Court stated that Owners were and are required to preserve evidence by following a few basic procedures, including but not limited to:

> The parties shall photograph the backside of each Chinese drywall board immediately after it is removed on-site, and, document on a floor plan, building diagram, or other similar form of documentation, the location of each full or partial Chinese drywall board removed from the property and its photograph. Photographs of the wall sections should be taken so that any markings on the backside of the drywall sections are most clearly visible in the photographs.[10]

On January 24, 2012, this Court entered PTO 1(I) regarding preservation of evidence. Courts have routinely dismissed claims for failing to comply with pretrial orders, particularly when compliance involves a necessary element to meet a plaintiff's burden. *In re Deepwater Horizon*, 922 F.3d 660, 665 (5th Cir. 2019); *Moore v. CITGO Ref. & Chemicals Co., L*.P., 735 F.3d 309, 315 (5th Cir. 2013) "A district court has broad discretion in all discovery matters, and such discretion will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse." *Moore*, 725 F.3d at 315 (quot*ing Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000) (internal quotation omitted). Indeed, this Court has previously determined that failure of a plaintiff to comply with the preservations standards in PTO 1, PTO 1(B), and PTO 1(I) results in prejudice to the defendants because without compliance, a plaintiff cannot establish how, much if any, drywall of a particular manufacturer was or was not installed in the property.[11]

The Property was remediated by C& J General Contractors, LLC, a company owned and run by Junius. Junius did not comply with PTO 1 1, PTO 1(B), or PTO 1(I), did not retain any samples or physical evidence of drywall, electrical components, plumbing components, or any personal property they allege was damaged by Chinese-manufactured drywall. The only evidence

---

[10] *Id*. at p. 3; *see also* PTO 1(B).
[11] *See* Rec. Doc. 20930 and Rec. Doc. 20933.

presented by Junius in support of their claim in terms of product ID and corrosion are photos of one alleged KPT board.

Summary judgment is appropriate because without compliance as to preservation and presentment of evidence, a plaintiff cannot establish how, much if any, drywall of particular manufacturer was or was not installed in the property.   Here, Plaintiffs disposed of the physical drywall, and do not have sufficient photographic evidence to demonstrate how much, if any, KPT drywall was in the Property.   Further, Plaintiffs are unable to prove how much drywall was replaced in the Property. This Court has recognized that while Plaintiffs may be able to submit additional evidence, including testimony, such evidence is insufficient to overcome the requirements to establish product identification in matter related to Chinese drywall.   Therefore, summary judgment should be granted.

**B.     No Evidence Supporting Diminution in Value Claim.**

Junius claims damages for diminution in value based on the difference in price between the lost sale to the contract in November 2015 as compared to the sale to his friend, and former business partner following remediation.  In November 2015, the Property was listed for sale, and purportedly went under contract for $550,000.00. The sale did not close and Junius performed a full remediation of the Property after November 2015. The Property appraised higher after the remediation: $595,000.00 than the initial contract price for the Property for sale in 2015 and more than the most recent appraisal amount prior to the remediation ($430,000.00). Nonetheless, following remediation, the Property was sold by Junius to his friend, and former business partner, Ben Chauffe for $416,500.00 despite the appraisal, based on some unknown agreement between Junius and Chauffe because Chauffe did not have money to remediate the Property and was unable to obtain a mortgage on an unfinished property. Therefore, Junius cannot show any evidence or

support for a diminution in value claim because the Property was appraised and valued higher following the remediation of the alleged Chinese drywall at the time of the sale to Chauffe than it was prior to the alleged discovery when it went under contract in 2015.

      **C.**    **No Evidence Supporting Loss of Use.**

Junius makes a claim for loss of use in the amount of $250,000.00. First, Plaintiffs lived in the Property between 2006 and October 2015 and during that time Junius was not deprived of the use or benefits of the Property due to the alleged presence of Chinese drywall.   Indeed, Junius alleges he had no idea and had no reason to believe or know Chinese drywall was inside the Property until the November 2015 inspection.  Therefore, Junius can offer no evidence to support a loss of use claim.

      **D.**    **No Evidence Supporting Moving Costs Claim.**

Junius claims damages for moving costs in the amount of approximately $5,300.00. Junius moved out of the Property and into Thrush street and alleges he never knew the Property had Chinese drywall during the time he was living in the Property. Therefore, Junius moved out of the Property because of the new residence, and not because of Chinese drywall, which was unrelated claimed expenses.

      **E.**    **No Evidence of Personal Property Damages.**

Junius cannot support any claims for personal property damages.  First, Junius alleges he had not knowledge or reason to know Chinese drywall was in the Property during the time he lived in the Property.  Second, Junius' claims that certain small appliances (TV, Microwave) failed after he moved himself and his personal belongings out of the Property and that the other appliances replaced were operational and working at the time they were replaced for newer ones. Third, Junius

has not provided any support for causation or damages associated with personal property damages by the presence of alleged Chinese drywall in the Property.

     **F.**     **Remediation Costs that are Unproven, Invoiced to Others, and/or are due to Upgrades are Not Recoverable.**

The Property was remediated by C& J General Contractors, LLC, a company owned and run by Junius. It was previously a partnership between Junius and a fried, Ben Chauffe. Certain alleged remediation costs were due to upgrades, were after the sale from Junius to Chauffe, were invoiced to Chauffe, who was involved in the selection of items for the remediation of the Property, and/or are not supported by appropriate proof of payment. Therefore, to the extent any remediation costs are owed, which is denied, recovery should be excluded to the extent Junius has failed to provide proof of payment, costs were invoiced to other non-parties, were after Junius sold the Property and/or were due to upgrades to the Property post-remediation.

**IV.**    **Conclusion**

Based on all the discovery in MDL 2047 and the case-specific discovery as to Plaintiff Nathan Junius, the facts do not support any claims against the Knauf Defendants. Junius cannot substantiate any of the facts forming the basis of the claims against the Knauf Defendants, and there is no genuine issue of material fact preventing summary judgment. Therefore, this Court should grant summary judgment, dismissing the Junius claims with prejudice.

Respectfully submitted,

**FISHMAN HAYGOOD, LLP**

/s/ *Kerry J. Miller*

**KERRY J. MILLER (#24562), T.A.**
**PAUL C. THIBODEAUX (#29446)**
**DANIEL J. DYSART (#33812)**
201 St. Charles Avenue, Suite 4600
New Orleans, LA  70170
Telephone:     504.556.5549
Facsimile:      504.310.0275
Email:            kmiller@fishmanhaygood.com
Email:            ddysart@fishmanhaygood.com

***Counsel for Defendants,***
***Knauf Gips KG and***
***Knauf Plasterboard (Tianjin) Co., Ltd.***

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, individually to pro se claimants via U.S. Mail, and that the foregoing was filed with the Clerk of Court of the United States Court for the Eastern District of Louisiana, on this 25th day of November, 2019.

/s/ *Kerry J. Miller*

**KERRY J. MILLER**