## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: **CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL 2047**<br><br>**SECTION "L"** |
| **This document relates to:**<br><br>***Elizabeth Bennett, et al v. Gebr. Knauf Verwaltungsgesellschaft, KG, et al***<br><br>**Case No. 14:cv-2722** | **JUDGE ELDON FALLON**<br><br>**MAGISTRATE JOSEPH WILKINSON, JR.** |

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON CLAIMS ASSERTED BY TONI MACKSEY

**MAY IT PLEASE THE COURT:**

Defendants, Knauf Gips KG and Knauf Plasterboard (Tianjin) Co., Ltd. (the "Knauf Defendants"), through undersigned counsel, respectfully submit this Memorandum in Support of its Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as to the claims asserted by Toni Macksey ("Macksey") against it in Plaintiffs' Fifth Amended Class Action Complaint (the "Fifth Amended Complaint").

### I.    Factual and Procedural Background

#### A.    *MDL 2047 and the Bennett Complaint*

From 2004 through 2006, a housing boom in parts of the United States and rebuilding efforts necessitated by Hurricanes Rita and Katrina in the Gulf South led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used to construct and refurbish homes in coastal areas of the country,

notably the Gulf and East Coasts. Sometime after the Chinese drywall was installed, homeowners began to complain of foul-smelling odors, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829–30 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014). Many of these homeowners also began to complain of various physical afflictions believed to have been caused by the Chinese drywall.

These homeowners then began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. Because of the commonality of facts in the various cases, this litigation was designated as a multidistrict litigation. Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation ("JPML") on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 09-2047 before this Court.   On June 16, 2009, this Court entered PTO 1 regarding preservation of evidence, amongst other things. On October 9, 2009, this Court entered PTO 1(B) regarding preservation of evidence.   On January 24, 2012, this Court entered PTO 1(I) regarding preservation of evidence.

 Since the inception of MDL 2047 in June of 2009, numerous cases have been consolidated, containing thousands of claims; over 20,000 records docs have been entered into the record, millions of documents exchanged in discovery, dozens of depositions, and over 30 Pretrial Orders have been issued; the Court has appointed steering committees and liaison counsel for plaintiffs, homebuilders, insurers, installers, and manufacturers; it has presided over monthly status conferences, hearings, and several bellwether trials.[1]

---

[1] *See* Order, R. Doc. No. 16570, pp. 3-4.

### B.   *The Bennett Complaint and Macksey*

The original Bennett Complaint was filed on November 13, 2014 in the Northern District of Alabama and was subsequently transferred and consolidated into MDL 2047. The Complaint was amended multiple times to amend the parties and claims. Macksey was listed in the original complaint, which was amended multiple times. The Fifth Amended Complaint was filed on May 14, 2018. The Fifth Amended Complaint is the operative complaint in this matter.

Macksey is a plaintiff in the operative Fifth Amended Complaint and has made claims against Knauf Gips KG and KPT regarding the alleged presence of defective Chinese drywall installed in their property located at 4321 Lucerne Street, Metairie, Louisiana (the "Property"). In conducting discovery in this MDL and in Bennett, this Court approved a Plaintiff Profile Form, Supplemental Plaintiff Profile Form, Owner Disclosure Affidavit, and Plaintiff Fact Sheet to be completed by Plaintiffs and set forth full and complete answers regarding the claims and damage amounts sought by all Bennett Plaintiffs. Macksey completed and submitted a PPF, SPPF, PFS, and an Owner Disclosure Affidavit. The documents were completed under penalty of perjury. Exhibit A (Depo Exhibits 1 – 4).

Macksey bought the Property on October 26, 2012. Macksey Transcript at 29:17-31:16; Exhibit A (Depo. Exhibit 5). Macksey was aware the Property was renovated after Hurricane Katrina and that the owner renovated several properties after Hurricane Katrina and was using the Property as a rental. Macksey Transcript at 35:20-36:1; 39:7-38:2. Macksey was aware of Chinese-drywall in general because prior to the sale of the Property, she was informed the current renters of the Property were living there because their own nearby home was being renovated due to Chinese-drywall. Macksey Transcript at 40:15-41:24. Macksey was also aware of the existence of allegedly defective Chinese-manufactured drywall from the news. Macksey Transcript at 42:15-

21.  Macksey viewed the Property two separate times and in both instances,  she detected a strong odor in the Property and a significant number of air fresheners throughout the Property. Macksey Transcript at 44:19-47:18.  The disclosures for the Property issued to Macksey by the sellers had notations for "Y" (Yes) and "NK" (Not Known) under the line for "Contaminated Drywall." Macksey Transcript at 54:9-56:4; Exhibit A (Depo. Exhibit 6).  Nonetheless, Macksey did not to conduct a Chinese drywall inspection. Macksey Transcript at 48:22 – 50:20. Macksey then decided to proceed to the final closing for the Property.  Notwithstanding the strong odors, the knowledge of the existence and possibility of Chinese drywall, the disclosures alerting her to the possibility of Chinese drywall, and the lack of a Chinese-drywall inspection,  Macksey still went forward with the sale and purchased the Property "as-is." Macksey Transcript at 56:5 – 59:3; Exhibit A (Depo. Exhibit 7).  Macksey knowingly and voluntarily waived the warranty of fitness and redhibition in the act of sale and addendum. Macksey Transcript at 56:5 – 59:3; Exhibit A (Depo Exhibit 7). Finally, as a subsequent purchaser, Macksey did not obtain any assignment of personal rights from the prior owner. Macksey Transcript at 62:6-14.

Macksey moved into the Property in March 2013.  Shortly after moving into the Property, Macksey alleges that her jewelry tarnished, and later the evaporator coil blackened, and the A/C and vents began to blacken. Macksey Transcript at 71:1-75:12; 81:22 -83:6; 87:1 – 94:1; 217:14-220:4. Macksey alleges within a couple of months, appliances failed, A/C coils needed to be replaced, and the throughout the time she lived there she could still detect a strong odor in the Property. Macksey Transcript at 71:1-75:12; 81:22 -83:6; 87:1 – 94:1; 217:14-220:4. Macksey retained current counsel and she was informed by counsel that INEX supplied her drywall and she identified an alleged KPT board in her attic.  Macksey Transcript at 25:11-22; 66:19-68:11.

In June 2014, she moved out of the Property and into another residence on 103 Stanton Hall Drive that she owned. Macksey Transcript at 141:12-19. Macksey previously lived in 103 Stanton Hall prior to moving into 4321 Lucerne and Macksey it was not being used for commercial or rental purposes. Macksey Transcript at 32:23-33:11; 64:9-24; 223:11-24. She moved back into 4321 Lucerne in November 2017. Macksey Transcript at 138:7-12.

Macksey discarded all personal property items she alleges were damaged due to Chinse drywall in 2014. Macksey Transcript at 190:1-5; 190:23-191:18; 193:5-9; 193:19-24; 195:11-16; 196:5-7; 204:19-205:4; 208:17-22; 210:14-16.  Furthermore, Macksey failed to provide invoices or proof of payment for personal property items replaced. Macksey Transcript at 94:4-7; 209:9-14; 222:14-18; 217:14-19; Exhibit A (Depo. Exhibit 16). Macksey also seeks loss of use of $25,000.00 per year she lived in 4321 Lucerne without submitting any evidence. Furthermore, Macksey seeks utility and mortgage costs for the Property as well as alternative living expenses for 103 Stanton Hall drive even though both were owned by Macksey and were used as personal, owned residences by Macksey. Macksey Transcript at 32:23-8; 64:9-24; 98:8-15; 223:11-24.

## II.    Legal Standards

### A.    *Rule 56 Summary Judgment Standard*

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is required if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2]  "A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3]

---

[2] FED. R. CIV. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

[3] *Bennett v. Hartford Ins. Co. of Midwest*, 890 F.3d 597, 604 (5th Cir. 2018) (quoting *Johnson v. World All. Fin. Corp.*, 830 F.3d 192, 195 (5th Cir. 2016) (internal quotation marks omitted)).

When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial.[4]  However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[5]

On a motion for summary judgment, "[a]lthough 'the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor,' summary judgment remains appropriate if the non-movant's evidence is 'merely colorable' or 'not significantly probative.'"[6]  "Only when 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party' is a full trial on the merits warranted."[7]  Furthermore, "[d]iscovery is not a prerequisite to the disposition of a motion for summary judgment."[8]  "If it appears that further discovery will not provide evidence creating a genuine issue of material fact, the district court may grant summary judgment."[9]

---

[4] *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2558, 91 L.Ed.2d 265 (1986).

[5] *Id.* at 322; *see also Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir. 1993).

[6] *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.,* 892 F.3d 167, 170 (5th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)).

[7] *Lindsey v. Sears Roebuck & Co*., 16 F.3d 616, 618 (5th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249).

[8] *Carder v. Cont'l Airlines, Inc*., 595 F. App'x 293, 299 (5th Cir. 2014) (quoting *Skiba v. Jacobs Entm't Inc*., 587 Fed. Appx. 136, 138 (5th Cir. 2014) (per curiam)).

[9] *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (citing *Access Telecom, Inc. v. MCI Telecomm. Corp*., 197 F.3d 694, 720 (5th Cir.1999); *see also Washington v. Allstate Ins. Co*., 901 F.2d 1281, 1285 (5th Cir.1990) ("This court has long recognized that a plaintiff's entitlement to discovery prior to a ruling on a motion for summary judgment is not unlimited, and may be cut off when the record shows that the requested discovery is not likely to produce the facts needed by the plaintiff to withstand a motion for summary judgment.").

III.     **Argument**

A.      **Plaintiff waived claims by knowingly and voluntarily purchasing the Property "As-Is"**

A buyer may agree to exclude the warranty against redhibitory defects; however, the terms of the exclusion must be clear and unambiguous and must be brought to the attention of the buyer. La. C.C. art. 2548. The language contained in the Act of Sale signed by Macksey  was sufficient to waive redhibition. Prior to Macksey agreeing to waive redhibition, she acquired knowledge of problems with the smell of the property, was given indications on the disclosure statement, and was aware of the issues surrounding Chinese drywall, and rather than investigating further, went forward without a Chinese drywall inspection and purchased the Property "As-Is."  Macksey entered the as-is sale and the waiver knowingly and voluntarily without obtaining any assignments from the seller. Considering the knowledge possessed by Macksey at the time she executed the waiver of redhibition, and the fact that she could have ascertained the truth by behaving as a reasonably prudent purchaser, it is simply not plausible that she relied on the inconsistent statement on the property disclosure form indicating the possibility of Chinese drywall in waiving redhibition. *See Vanek v. Seeber*, 2009-0066 (La. App. 1 Cir. 10/27/09), 29 So. 3d 582, 587–88. Furthermore, this Court has cautioned that when a property owner purchases property in areas known to have the possibility of Chinese drywall they are assuming a risk without conducting a Chinese drywall inspection.  Rec. Doc. 20934    For these reasons alone, Macksey's claims are waived and must be dismissed.

B.      **Plaintiffs' Claims are barred because the alleged defects were known to Macksey or could been discovered by a reasonably prudent buyer.**

A seller "owes no warranty for defects in the thing that were known to the buyer at the time of the sale, or for defects that should have been discovered by a reasonably prudent buyer of such

things." La. Civ. Code art. 2521 (2019). To determine whether a defect is apparent, courts consider whether a reasonably prudent buyer, acting under similar circumstances, would discover it through a simple inspection of the thing sold. A simple inspection is more than a casual observation; it is an examination of the article by the buyer with a view of ascertaining its soundness. *Stuck v. Long,* 40,034 (La.App.2d Cir.8/17/05), 909 So.2d 686, *writ denied,* 05–2367 (La.3/17/06), 925 So.2d 546, *citing Amend v. McCabe,* 95–0316 (La.12/1/95), 664 So.2d 1183. Whether an inspection is reasonable depends on the facts of each case and includes such factors as the knowledge and expertise of the buyer, the opportunity for inspection and the assurances made by the seller. *Stuck, supra; Morrison v. Allstar Dodge Inc.,* 00–0398 (La.App. 1st Cir. 5/11/01), 792 So.2d 9, *writ denied,* 01–2129 (La.11/2/01), 800 So.2d 878. If the defect is apparent and could have been discovered, a plaintiff has a duty to make a further investigation. A failure to do so waives the right to sue in *quanti minoris. Dage v. Obed,* 40,414 (La. App. 2d Cir.12/14/05), 917 So.2d 713.

Here, Macksey bought the Property on October 26, 2012.  Macksey Transcript at 29:17-31:16; Exhibit A (Depo. Exhibit 5).  Prior to purchasing the Property, Macksey was aware the Property was renovated after Hurricane Katrina and that the owner was using the Property as a rental.  Macksey Transcript at 35:20-36:1; 39:7-38:2.  Macksey was aware about Chinese-drywall because prior to the sale of the Property, she was informed the current renters of the Property were living there because their own nearby home was being renovated due to Chinese-drywall and was also aware of the existence of allegedly defective Chinese-manufactured drywall from the news. Macksey Transcript at Macksey Transcript at 40:15-41:24; 42:15-21.

Macksey viewed the Property two separate times and in both instances, she detected a strong odor in the Property and a significant number of air fresheners throughout the Property.

Macksey Transcript at 44:19-47:18. Further, prior to the sale, the disclosures for the Property issued to Macksey by the sellers had notations for "Y" (Yes) and "NK" (Not Known) under the line for "Contaminated Drywall." Macksey Transcript at 54:9-56:4; Exhibit A (Depo. Exhibit 6) Nonetheless, Macksey did not conduct a Chinese Drywall inspection. Macksey Transcript at 48:22 – 50:20.  This Court has cautioned that when property owners purchase property in areas known to have the possibility of Chinese drywall they are assuming a risk without conducting a Chinese drywall inspections.  Rec. Doc. 20934.  Based on the perceptions of Macksey when viewing the Property, her knowledge of Chinese drywall in general, and the inconsistent disclosures provided by the sellers, a reasonable buyer would have conducted a simple Chinese drywall inspection to inquiry as to the soundness of the Property. Therefore, pursuant to La. Civ. Code art. 2521, Mackse's claims are barred.

### C.      Plaintiffs' Claims are Prescribed or Otherwise are Barred by LPLA.

Plaintiffs' claims are prescribed. As to redhibition, under the discovery rule, prescription does not commence against an alleged manufacturer until the date the injured party discovers or should have discovered the facts upon which his cause of action is based.  La. Civ. Code 2434 (prescription for redhibition); *In re Ford Motor Co. Bronco II Prod. Liab. Litig*., 982 F. Supp. 388, 395 (E.D. La. 1997) (citing  *Corsey v. State Dept. of Corrections*, 375 So.2d 1319, 1321–22 (La.1979)).  The principle does not apply if plaintiff's ignorance is attributable to his own willfulness or neglect. *Id*.  In determining when the plaintiff should have known of the basis for his claim, the focus is on the reasonableness of the plaintiff's action or inaction. *Id*. A plaintiff will be deemed to know that which he could have learned through reasonable diligence. *Id*. (citing *Hospital Dist. No 1 v. Alas*, 657 So.2d 1378, 1383 (La. App. 5 Cir. 1995).  In sum, if an opportunity is afforded to a party to know and to learn about a certain matter bearing on his interest

and he fails or refuses it, and closes his eyes and ears to the notice before him, the law will hold him as bound by the same. *See id.*

Macksey bought the Property on October 26, 2012 and Macksey moved into the Property in March 2013.  After moving into the Property, Macksey alleges that her jewelry tarnished, the evaporator coil was blackened, and the A/C and vents began to blacken. Macksey Transcript at 71:1-75:12; 81:22 -83:6; 87:1 – 94:1; 217:14-220:4.  Prior to the sale of the Property , Macksey was already on notice of what Chinese drywall was.  Nonetheless, Macksey did not file suit in his matter until November 14, 2014. Therefore, on the face of the complaint, Macksey's redhibition claims are prescribed.

As to the remaining claims, under Louisiana law, prescriptive periods are not determined by the label of the cause of action, but are instead determined by the nature of the transaction and the underlying basis of the claim. *Stewart v. Ruston Louisiana Hosp. Co., LLC.*, No. 3:14-0083, 2016 WL 1715192, at *5 (W.D., La. Apr. 27, 2016) ("In determining the prescriptive period for a cause of action, 'Louisiana courts look to the nature of the duty that has been breached.'") (Citing *Carrier v. Jackson Hewitt Tax Serv. Inc.*, 750 F. Supp.. 2d 694, 704 (E.D. La. 2010)); *Roger v. Dufrene*, 613 So.2d 947 (La. 1993); *see also Duer & Taylor v. Blanchard, Walker, O'Quin & Roberts*, 354 So.2d 192, 194 (La. 1978) ("Louisiana jurisprudence is well settled that the character of an action given by a plaintiff in his pleadings determines the prescription applicable to it."). Therefore, actions that are tort-based claims, including all Louisiana claims in the Fifth Amended Complaint applicable are subject to a one-year liberative prescription period under La. Civ. Code art. 3492.  *Manion v. Pollingue*, 524 So.  2d 25 (La.  App. 3 Cir. 1988), *writ denied*, 530 So. 2d 572 (La. 1988) (finding tort claim against administrator for breach of fiduciary duty was "delictual action" and one-year prescriptive period. LSA-C.C. art. 3492); *Gad v. Granberry*, 2007-117 (La.

App. 3 Cir. 5/30/07); 958 So. 2d 125, *writ denied*, 2007-1336 (La. 9/28/07); 964 So. 2d 364, and *writ denied*, 2007-1361 (La. 9/28/07); 964 So. 2d 365 (finding purchaser's claims against vendor and real estate company for fraud and misrepresentation were delictual actions and subject to one-year prescriptive period);  *Cerullo v. Heisser*, 16-558 (La. App. 5 Cir. 2/8/17); 213 So. 3d 1232, 1237 (fraud and misrepresentation claims were delictual actions and one-year liberative prescription applied); *Williams v. Nexstar Broad., Inc*., 11-887 (La. App. 5 Cir. 4/10/12); 96 So. 3d 1195, 1201 (finding claims for defamation are subject to liberative prescription of one year running from the day injury or damage is sustained);  *AGEM Mgmt. Servs., LLC v. First Tennessee Bank Nat. Ass'n*, 942 F. Supp. 2d 611, 622 (E.D. La. 2013) (breach of contract based on misrepresentation governed by one-year prescriptive period).  Like the claims in redhibition, the other Louisiana claims relevant to Macksey are prescribed on their face and should be dismissed, with prejudice.

To the extent the claims are not prescribed, they are otherwise barred by the exclusive remedies contained in the LPLA, except as damages in redhibition to the extent damages are provided for the drywall itself or economic losses.  The LPLA, which "establishes the exclusive theories of liability for manufacturers for damage caused by their products" and explicitly provides that "[a]ttorney's fees are not recoverable under th[e LPLA.]" La. Rev. Stat. §§ 9:2800.52 (LPLA exclusivity) & 2800.53(5) (attorney fees prohibition). "Damage" under the LPLA, however, is a defined term, and it usually does not include "damage to the product itself [or] economic loss." *Id*. § 2800.53(5). Accordingly, the LPLA precludes Plaintiffs' redhibition claim—and, consequently, its entitlement to attorney fees—unless the jury awarded damages to compensate for "damage to [the bolts themselves or] economic loss," which are recoverable in redhibition. *Chevron USA, Inc. v. Aker Mar., Inc*., 604 F.3d 888, 900 (5th Cir. 2010); *see id*. § 2800.53(5); *Aucoin*, 984 So.2d at

691 n. 8; *De Atley v. Victoria's Secret Catalogue, LLC*, 876 So.2d 112, 115 (La. App. 4th Cir. 2004).

### D.       Plaintiffs' Claims are barred by the Subsequent Purchaser Doctrine

In its recent decision in *Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, the Louisiana Supreme Court undertook a comprehensive review of the legal principles undergirding the subsequent purchaser rule as well as the rule's development in Louisiana case law. 79 So.3d 246, 256-75 (La. 2011).The court stated:

> The subsequent purchaser rule is a jurisprudential rule which holds that an owner of property has no right or actual interest in recovering from a third party for damage which was inflicted on the property before his purchase, in the absence of an assignment or subrogation of the rights belonging to the owner of the property when the damage was inflicted.

*Id*. at 256-67; *see also  Guilbeau v. Hess Corp*., 854 F.3d 310, 312–13 (5th Cir. 2017)  There, the court explained that:

>  injury to property must be understood as damage to the real rights in the property. A tortfeasor who causes injury or damage to a real right in property owes an obligation to the owner of the real right. This relationship arises as a matter of law and provides to the owner of the real right a personal right to sue the tortfeasor for damages.

*Id*. at 279.  The Court clarified that damage to property creates a *personal* right to sue, which unlike a real right, does not transfer to a subsequent purchaser "[i]n the absence of an assignment or subrogation."[9] The Court concluded that a current property owner has no right to recover from a third party for property damages caused prior to his purchase. *Id*. at 262, 279.

Here, Macksey purchased the Property after the alleged defective drywall was installed in the Property.  In the Act of Sale, Macksey was not assigned or subrogated to any of the prior owners' rights.  Therefore, Macksey's claims are barred under the subsequent purchaser doctrine.

### E.     Plaintiffs Failed to Comply with PTOs and to Preserve and Present Evidence of Drywall Manufacturers and/or Damages to the Prejudice of the Knauf Defendants.

The evidence demonstrates that Plaintiffs did not comply with the requirements of PTO 1, PTO 1(B), or PTO 1(I). On June 16, 2009, this Court entered PTO 1 regarding preservation of evidence, amongst other things. On October 9, 2009, this Court entered PTO 1(B) regarding preservation of evidence. Pursuant to PTO 1(B), which was entered in October 2009 prior to the remediation of any of the below claims, the Court stated that Owners were and are required to preserve evidence by following a few basic procedures, including but not limited to:

> The parties shall photograph the backside of each Chinese drywall board immediately after it is removed on-site, and, document on a floor plan, building diagram, or other similar form of documentation, the location of each full or partial Chinese drywall board removed from the property and its photograph. Photographs of the wall sections should be taken so that any markings on the backside of the drywall sections are most clearly visible in the photographs.[10]

On January 24, 2012, this Court entered PTO 1(I) regarding preservation of evidence. Courts have routinely dismissed claims for failing to comply with pretrial orders, particularly when compliance involves a necessary element to meet a plaintiff's burden. *In re Deepwater Horizon*, 922 F.3d 660, 665 (5th Cir. 2019); *Moore v. CITGO Ref. & Chemicals Co., L.*P., 735 F.3d 309, 315 (5th Cir. 2013) "A district court has broad discretion in all discovery matters, and such discretion will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse." *Moore*, 725 F.3d at 315 (quot*ing Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000) (internal quotation omitted). Indeed, this Court has previously determined that failure of a plaintiff to comply with the preservations standards in PTO 1, PTO 1(B), and PTO 1(I)

---

[10] *Id*. at p. 3; *see also* PTO 1(B).

results in prejudice to the defendants because without compliance, a plaintiff cannot establish how, much if any, drywall of a particular manufacturer was or was not installed in the property.[11]

Here, Plaintiffs disposed of all personal property allegedly damaged by Chinese drywall. This Court has recognized that while Plaintiffs may be able to submit additional evidence, including testimony, such evidence is insufficient to overcome the requirements to comply with the preservation and presentment pretrial orders in this matter.  Therefore, summary judgment should be granted.

**F.    Plaintiff's Damages are Unsupported.**

Plaintiff's for loss of use are completely unsupported and Plaintiff has failed to provide any evidence in support of the claim.  Therefore, the summary judgment should be granted for lack of evidence to support damages.

**IV.    Conclusion**

Based on all the discovery in MDL 2047 and the case-specific discovery as to Macksey, the facts do not support any claims against the Knauf Defendants.  Macksey cannot substantiate any of the facts forming the basis of the claims against the Knauf Defendants, and there is no genuine issue of material fact preventing summary judgment.  Therefore, this Court should grant summary judgment, dismissing the claims with prejudice.

---

[11] *See* Rec. Doc. 20930 and Rec. Doc. 20933.

Respectfully submitted,

**FISHMAN HAYGOOD, LLP**

/s/ *Kerry J. Miller*

**KERRY J. MILLER (#24562), T.A.**
**PAUL C. THIBODEAUX (#29446)**
**DANIEL J. DYSART (#33812)**
201 St. Charles Avenue, Suite 4600
New Orleans, LA  70170
Telephone:     504.556.5549
Facsimile:     504.310.0275
Email:          kmiller@fishmanhaygood.com
Email:          ddysart@fishmanhaygood.com

***Counsel for Defendants,***
***Knauf Gips KG and***
***Knauf Plasterboard (Tianjin) Co., Ltd.***

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, individually to pro se claimants via U.S. Mail, and that the foregoing was filed with the Clerk of Court of the United States Court for the Eastern District of Louisiana, on this 25th day of November, 2019.

/s/ *Kerry J. Miller*

**KERRY J. MILLER**