UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: **CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL 2047** |
| | **SECTION "L"** |
| **This document relates to:** | |
| ***Elizabeth Bennett, et al v. Gebr. Knauf Verwaltungsgesellschaft, KG, et al*** | **JUDGE ELDON FALLON** |
| **Case No. 14:cv-2722** | **MAGISTRATE JOSEPH WILKINSON, JR.** |

MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
<u>ON CLAIMS ASSERTED BY RONALD AND MARIA NATAL</u>

**MAY IT PLEASE THE COURT:**

Defendants, Knauf Gips KG and Knauf Plasterboard (Tianjin) Co., Ltd. (the "Knauf Defendants"), through undersigned counsel, respectfully submit this Memorandum in Support of its Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as to the claims asserted against them by Ronald and Maria Natal ("Natal") in Plaintiffs' Fifth Amended Class Action Complaint (the "Fifth Amended Complaint").

**I.      Factual and Procedural Background**

*A.      MDL 2047 and the Bennett Complaint*

From 2004 through 2006, a housing boom in parts of the United States and rebuilding efforts necessitated by Hurricanes Rita and Katrina in the Gulf South led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used to construct and refurbish homes in coastal areas of the country,

notably the Gulf and East Coasts. Sometime after the Chinese drywall was installed, homeowners began to complain of foul-smelling odors, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829–30 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014). Many of these homeowners also began to complain of various physical afflictions believed to have been caused by the Chinese drywall.

These homeowners then began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. Because of the commonality of facts in the various cases, this litigation was designated as a multidistrict litigation. Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation ("JPML") on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 09-2047 before this Court.  On June 16, 2009, this Court entered PTO 1 regarding preservation of evidence, amongst other things. On October 9, 2009, this Court entered PTO 1(B) regarding preservation of evidence.   On January 24, 2012, this Court entered PTO 1(I) regarding preservation of evidence.

 Since the inception of MDL 2047 in June of 2009, numerous cases have been consolidated, containing thousands of claims; over 20,000 records docs have been entered into the record, millions of documents exchanged in discovery, dozens of depositions, and over 30 Pretrial Orders have been issued; the Court has appointed steering committees and liaison counsel for plaintiffs, homebuilders, insurers, installers, and manufacturers; it has presided over monthly status conferences, hearings, and several bellwether trials.[1]

---

[1] *See* Order, R. Doc. No. 16570, pp. 3-4.

### B.      The Bennett Complaint and the Martinez Plaintiffs

The original Bennett Complaint was filed on November 13, 2014 in the Northern District of Alabama and was subsequently transferred and consolidated into MDL 2047. The Complaint was amended multiple times to amend the parties and claims.  Ronald Natal did not file suit in this matter until he intervened in the Fifth Amended Complaint on September 10, 2018.  The Fifth Amended Complaint was filed on May 14, 2018. Following the Fifth Amended Complaint, certain plaintiffs intervened. The Fifth Amended Complaint is the operative complaint in this matter.

The Natal Plaintiffs are plaintiffs in the operative Fifth Amended Complaint and have made claims against Knauf Gips KG and KPT regarding the alleged presence of defective Chinese drywall installed in their property located at 1489 Lakeshore Drive, Slidell, Louisiana (the "Property").  In conducting discovery in this MDL and in Bennett, this Court approved a Plaintiff Profile Form, Supplemental Plaintiff Profile Form, Owner Disclosure Affidavit, and Plaintiff Fact Sheet to be completed by Plaintiffs and set forth full and complete answers regarding the claims and damage amounts sought by all Bennett Plaintiffs.   The Natal Plaintiffs completed and submitted a PPF, SPPF, PFS, and an Owner Disclosure Affidavit. *See* Exhibit A (Depo Exhibit 1-4).  The documents were completed under penalty of perjury.

The alleged Chinese drywall was installed in the Property before the Natal Plaintiffs purchased the Property. Exhibit B: Transcript of Ronald Natal at 17:5-12.  The Natal Plaintiffs did not acquire were not assigned or subrogated to any personal rights from the prior owner(s) in the Act of Sale. Exhibit A. As early as 2010 Plaintiff became aware of symptoms that could have been attributable to defective Chinese Drywall. Exhibit B: Transcript of Ronald Natal at 35:8-38:1; Exhibit C: Post-Deposition HVAC invoices.  Ronald and Maria Natal are owners of a construction business.  Ronald Natal is in the business of construction for forty-five years.  The Natal Plaintiffs

were aware of the existence of Chinese drywall from being in the business and the news. Exhibit B: Transcript of Ronald Natal at 22:5-19; 26:13-27:12.

In 2015, the Natal Plaintiffs hired an inspector to inspect for Chinese drywall. Exhibit B: Transcript of Ronald Natal at 31:11-33:11.  The Property was remediated of all alleged defective Chinese drywall and cleared by a third-party inspector. Exhibit B: Transcript of Ronald Natal at 74:2-11; Exhibit A (Depo Exhibit 4). The Natal Plaintiffs did not comply with PTO 1, PTO 1B, or PTO 1(I) in preserving samples or documenting the alleged defective Chinese drywall installed and removed from the Property or any of the building components or personal property allegedly impacted by defective Chinese drywall. Exhibit B: Transcript of Ronald Natal at 47:4-48:25; 52:13-53:22; 76:3-77:3; Exhibit A (Depo Exhibits 2-4). The only evidence presented by the Natal Plaintiffs in support of their claim in terms of product ID and corrosion are pictures of three KPT boards. Exhibit B: Transcript of Ronald Natal at 47:4-48:25; 52:13-53:22; 76:3-77:3; Exhibit A (Depo Exhibits 2-4).  *See* Exhibit D: Deposition Transcript of Maria Natal: 19:19-23:4.  Natal had a trailer full of the drywall removed from the Property during the remediation.  However, it was discarded by one of Natal's workers following the remediation and became known to Natal after December 2018. See Exhibit D: Deposition Transcript of Maria Natal: 19:19-23:4.

The Natal Plaintiffs are seeking damages for: Cost of Remediation ($72,374) and Loss of Use ($250,000.00). Exhibit A (Depo. Exhibit 4).  The Natal Plaintiffs have provided proof of payment for only $3,200.00 of remediation costs. Exhibit A (Depo Exhibit 4); Exhibit C: Post-Deposition Discovery Provided.  The Natal Plaintiffs have failed to provide any evidence regarding the Loss of Use claims.

## II.    Legal Standards

### A.    *Rule 56 Summary Judgment Standard*

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is required if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2]  "A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3]

When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial.[4]  However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[5]

On a motion for summary judgment, "[a]lthough 'the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor,' summary judgment remains appropriate if the non-movant's evidence is 'merely colorable' or 'not significantly probative.'"[6]  "Only when 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party' is a full trial on the merits warranted."[7]  Furthermore, "[d]iscovery is not a prerequisite to the disposition of a motion for summary judgment."[8]  "If it appears that

---

[2] FED. R. CIV. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

[3] *Bennett v. Hartford Ins. Co. of Midwest*, 890 F.3d 597, 604 (5th Cir. 2018) (quoting *Johnson v. World All. Fin. Corp*., 830 F.3d 192, 195 (5th Cir. 2016) (internal quotation marks omitted)).

[4] *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2558, 91 L.Ed.2d 265 (1986).

[5] *Id.* at 322; *see also Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir. 1993).

[6] *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.,* 892 F.3d 167, 170 (5th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)).

[7] *Lindsey v. Sears Roebuck & Co*., 16 F.3d 616, 618 (5th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249).

[8] *Carder v. Cont'l Airlines, Inc*., 595 F. App'x 293, 299 (5th Cir. 2014) (quoting *Skiba v. Jacobs Entm't Inc*., 587 Fed. Appx. 136, 138 (5th Cir. 2014) (per curiam)).

further discovery will not provide evidence creating a genuine issue of material fact, the district court may grant summary judgment."[9]

## III.     Argument

### A.     Plaintiffs' Claims are barred by the Subsequent Purchaser Doctrine

In *Eagle Pipe & Supply, Inc. v. Amerada Hess Corp.*, the Louisiana Supreme Court undertook a comprehensive review of the legal principles undergirding the subsequent purchaser rule as well as the rule's development in Louisiana case law. 79 So.3d 246, 256-75 (La. 2011).The court stated:

> The subsequent purchaser rule is a jurisprudential rule which holds that an owner of property has no right or actual interest in recovering from a third party for damage which was inflicted on the property before his purchase, in the absence of an assignment or subrogation of the rights belonging to the owner of the property when the damage was inflicted.

*Id*. at 256-67; *see also  Guilbeau v. Hess Corp.*, 854 F.3d 310, 312–13 (5th Cir. 2017)  There, the court explained that:

>  injury to property must be understood as damage to the real rights in the property. A tortfeasor who causes injury or damage to a real right in property owes an obligation to the owner of the real right. This relationship arises as a matter of law and provides to the owner of the real right a personal right to sue the tortfeasor for damages.

*Id*. at 279.  The Court clarified that damage to property creates a *personal* right to sue, which unlike a real right, does not transfer to a subsequent purchaser "[i]n the absence of an assignment or subrogation."[9] The Court concluded that a current property owner has no right to recover from a third party for property damages caused prior to his purchase. *Id*. at 262, 279.

---

[9] *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (citing *Access Telecom, Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 720 (5th Cir.1999); *see also Washington v. Allstate Ins. Co*., 901 F.2d 1281, 1285 (5th Cir.1990) ("This court has long recognized that a plaintiff's entitlement to discovery prior to a ruling on a motion for summary judgment is not unlimited, and may be cut off when the record shows that the requested discovery is not likely to produce the facts needed by the plaintiff to withstand a motion for summary judgment.").

Here, the Natal Plaintiffs purchased the Property after the alleged defective drywall installed in the Property. In the Act of Sale, the Natal Plaintiffs were not assigned or subrogated to any of the prior owners' rights. Therefore, the Natal Plaintiffs claims are barred under the subsequent purchaser doctrine.

**B.      Plaintiffs Failed to Comply with PTOs and to Preserve and Present Evidence of Drywall Manufacturers and/or Damages to the Prejudice of the Knauf Defendants.**

The evidence demonstrates that Plaintiffs did not comply with the requirements of PTO 1, PTO 1(B), or PTO 1(I). On June 16, 2009, this Court entered PTO 1 regarding preservation of evidence, amongst other things. On October 9, 2009, this Court entered PTO 1(B) regarding preservation of evidence. Pursuant to PTO 1(B), which was entered in October 2009 prior to the remediation of any of the below claims, the Court stated that Owners were and are required to preserve evidence by following a few basic procedures, including but not limited to:

> The parties shall photograph the backside of each Chinese drywall board immediately after it is removed on-site, and, document on a floor plan, building diagram, or other similar form of documentation, the location of each full or partial Chinese drywall board removed from the property and its photograph. Photographs of the wall sections should be taken so that any markings on the backside of the drywall sections are most clearly visible in the photographs.[10]

On January 24, 2012, this Court entered PTO 1(I) regarding preservation of evidence. Courts have routinely dismissed claims for failing to comply with pretrial orders, particularly when compliance involves a necessary element to meet a plaintiff's burden. *In re Deepwater Horizon*, 922 F.3d 660, 665 (5th Cir. 2019); *Moore v. CITGO Ref. & Chemicals Co., L.*P., 735 F.3d 309, 315 (5th Cir. 2013)

"A district court has broad discretion in all discovery matters, and such discretion will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse." *Moore*, 725

---

[10] *Id*. at p. 3; *see also* PTO 1(B).

F.3d at 315 (quot*ing Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000) (internal quotation omitted). Indeed, this Court has previously determined that failure of a plaintiff to comply with the preservations standards in PTO 1, PTO 1(B), and PTO 1(I) results in prejudice to the defendants because without compliance, a plaintiff cannot establish how, much if any, drywall of a particular manufacturer was or was not installed in the property.[11]

Here, Plaintiffs disposed of the physical drywall, and do not have sufficient photographic evidence to demonstrate how much, if any, KPT drywall was in the Property. This Court has recognized that while Plaintiffs may be able to submit additional evidence, including testimony, such evidence is insufficient to overcome the requirements to establish product identification in this matter.  Therefore, summary judgment should be granted.

### C.      Plaintiffs' Claims are Prescribed or otherwise Barred by the LPLA.

Plaintiffs' claims are prescribed. As to redhibition, under the discovery rule, prescription does not commence against an alleged manufacturer until the date the injured party discovers or should have discovered the facts upon which his cause of action is based.  La. Civ. Code 2434 (prescription for redhibition); *In re Ford Motor Co. Bronco II Prod. Liab. Litig*., 982 F. Supp. 388, 395 (E.D. La. 1997) (citing  *Corsey v. State Dept. of Corrections*, 375 So.2d 1319, 1321–22 (La.1979)).  The principle does not apply if plaintiff's ignorance is attributable to his own willfulness or neglect. *Id*.  In determining when the plaintiff should have known of the basis for his claim, the focus is on the reasonableness of the plaintiff's action or inaction. *Id*. A plaintiff will be deemed to know that which he could have learned through reasonable diligence. Id. (citing *Hospital Dist. No 1 v. Alas*, 657 So.2d 1378, 1383 (La. App. 5 Cir. 1995).  In sum, if an opportunity is afforded to a party to know and to learn about a certain matter bearing on his interest

---

[11] *See* Rec. Doc. 20930 and 20933.

and he fails or refuses it, and closes his eyes and ears to the notice before him, the law will hold him as bound by the same. *See id.*

Here, the Ronald Natal first filed a claim on September 10, 2018 when he sought to intervene in the Fifth Amended Complaint.   It is undisputed that the Natal Plaintiffs were put on notice of what they allege was Chinese drywall on October 27, 2015.  On this basis alone, the claim is prescribed on its face. Furthermore, the undisputed evidence is that the Natal Plaintiffs were by their own allegations put on notice of issues in the Property allegedly attributable to Chinese-manufactured drywall as early as 2010. Exhibit C (Post-Deposition Documents).  During the time they lived in the Property, Plaintiffs allegedly sustained multiple A/C failures.  During this time, Plaintiffs knew about the issue of Chinse-manufactured drywall, defective Chinese-drywall was knowledge to Plaintiffs, who are in the construction industry, and a pending MDL and Settlement Program were being administered by this Court nearby. For these reasons, the Natal Plaintiffs' claims are prescribed.

As to the remaining claims, under Louisiana law, prescriptive periods are not determined by the label of the cause of action, but are instead determined by the nature of the transaction and the underlying basis of the claim. *Stewart v. Ruston Louisiana Hosp. Co., LLC.*, No. 3:14-0083, 2016 WL 1715192, at *5 (W.D., La. Apr. 27, 2016) ("In determining the prescriptive period for a cause of action, 'Louisiana courts look to the nature of the duty that has been breached.'") (Citing *Carrier v. Jackson Hewitt Tax Serv. Inc.*, 750 F. Supp.. 2d 694, 704 (E.D. La. 2010)); *Roger v. Dufrene*, 613 So.2d 947 (La. 1993); *see also Duer & Taylor v. Blanchard, Walker, O'Quin & Roberts*, 354 So.2d 192, 194 (La. 1978) ("Louisiana jurisprudence is well settled that the character of an action given by a plaintiff in his pleadings determines the prescription applicable to it."). Therefore, actions that are tort-based claims, including all Louisiana claims in the Fifth Amended

Complaint applicable are subject to a one-year liberative prescription period under La. Civ. Code art. 3492. *Manion v. Pollingue*, 524 So. 2d 25 (La. App. 3 Cir. 1988), *writ denied*, 530 So. 2d 572 (La. 1988) (finding tort claim against administrator for breach of fiduciary duty was "delictual action" and one-year prescriptive period. LSA-C.C. art. 3492); *Gad v. Granberry*, 2007-117 (La. App. 3 Cir. 5/30/07); 958 So. 2d 125, *writ denied*, 2007-1336 (La. 9/28/07); 964 So. 2d 364, and *writ denied*, 2007-1361 (La. 9/28/07); 964 So. 2d 365 (finding purchaser's claims against vendor and real estate company for fraud and misrepresentation were delictual actions and subject to one-year prescriptive period); *Cerullo v. Heisser*, 16-558 (La. App. 5 Cir. 2/8/17); 213 So. 3d 1232, 1237 (fraud and misrepresentation claims were delictual actions and one-year liberative prescription applied); *Williams v. Nexstar Broad., Inc*., 11-887 (La. App. 5 Cir. 4/10/12); 96 So. 3d 1195, 1201 (finding claims for defamation are subject to liberative prescription of one year running from the day injury or damage is sustained); *AGEM Mgmt. Servs., LLC v. First Tennessee Bank Nat. Ass'n*, 942 F. Supp. 2d 611, 622 (E.D. La. 2013) (breach of contract based on misrepresentation governed by one-year prescriptive period). Like the claims in redhibition, the other Louisiana claims relevant to the Plaintiffs are prescribed on their face and should be dismissed, with prejudice.

To the extent the claims are not prescribed, they are otherwise barred by the exclusive remedies contained in the LPLA, except as damages in redhibition to the extent damages are provided for the drywall itself or economic losses. The LPLA, which "establishes the exclusive theories of liability for manufacturers for damage caused by their products" and explicitly provides that "[a]ttorney's fees are not recoverable under th[e LPLA.]" La. Rev. Stat. §§ 9:2800.52 (LPLA exclusivity) & 2800.53(5) (attorney fees prohibition). "Damage" under the LPLA, however, is a defined term, and it usually does not include "damage to the product itself [or] economic loss." *Id.*

§ 2800.53(5). Accordingly, the LPLA precludes Plaintiffs' redhibition claim—and, consequently, its entitlement to attorney fees—unless the jury awarded damages to compensate for "damage to [the bolts themselves or] economic loss," which are recoverable in redhibition. *Chevron USA, Inc. v. Aker Mar., Inc.*, 604 F.3d 888, 900 (5th Cir. 2010); *see id.* § 2800.53(5); *Aucoin*, 984 So.2d at 691 n. 8; *De Atley v. Victoria's Secret Catalogue, LLC*, 876 So.2d 112, 115 (La. App. 4th Cir. 2004).

> ### D.     Plaintiffs' Damages are Unsupported.

Plaintiffs' claims for remediation damages and loss of use are completely unsupported. The Natal Plaintiffs have provided proof of payment for only $3,200 in remediation expenses.  Any remediation expenses otherwise should be dismissed for lack of evidence.  Furthermore, although Plaintiffs claim $250,000 in loss of use, Plaintiffs have failed to provide any evidence in support of the claim.  Therefore, on this basis alone, summary judgment should be granted for lack of evidence to support damages except for the $3,200.00 in proof of payment provided by the Natal Plaintiffs.

## IV.   Conclusion

Based on all the discovery in MDL 2047 and the case-specific discovery as to the Natal Plaintiffs, the facts do not support any claims against the Knauf Defendants.  The Natal Plaintiffs cannot substantiate any of the facts forming the basis of the claims against the Knauf Defendants, and there is no genuine issue of material fact preventing summary judgment.  Therefore, this Court should grant summary judgment, dismissing the claims with prejudice.

Respectfully submitted,

**FISHMAN HAYGOOD, LLP**

/s/ *Kerry J. Miller*
**KERRY J. MILLER (#24562), T.A.**
**PAUL C. THIBODEAUX (#29446)**
**DANIEL J. DYSART (#33812)**
201 St. Charles Avenue, Suite 4600
New Orleans, LA  70170
Telephone:  (504) 556-5549
Facsimile:  (504) 310-0275
Email:        kmiller@fishmanhaygood.com
                 ddysart@fishmanhaygood.com

*Counsel for Defendants,*
*Knauf Gips KG and*
*Knauf Plasterboard (Tianjin) Co., Ltd.*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, and to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was filed with the Clerk of Court of the United States Court for the Eastern District of Louisiana, on this 25th day of November, 2019.

/s/ *Kerry J. Miller*
**KERRY J. MILLER**