# EXHIBIT 23—part 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

EDUARDO AND CARMEN AMORIN, *et al.*, individually, and on behalf of all others similarly situated,

      Plaintiffs,

          v.

TAISHAN GYPSUM CO., LTD. f/k/a SHANDONG TAIHE DONGXIN CO., LTD.; TAIAN TAISHAN PLASTERBOARD CO., LTD., et al.,

      Defendants.

Case No. 1:11-CV-22408-MGC

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' JOINT MOTION TO PRECLUDE THE PROPOSED TESTIMONY AND STRIKE THE EXPERT REPORT OF PLAINTIFFS' EXPERT MICHAEL P. ELKIN**

## I.    INTRODUCTION

    The Taishan Defendants, collectively BNBM PLC, Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd., have jointly moved to strike the expert report and testimony of Michael P. Elkin. Mr. Elkin is a Certified Public Accountant ("CPA"), who employed accepted principles of accounting to report the myriad costs and expenses incurred by each of the Priority Plaintiffs in connection with their out-of-pocket remediation costs and other damages. The Taishan Defendants contend that Mr. Elkin should be precluded under *Daubert*[1] from testifying because their expert found a smattering of errors in Mr. Elkin's analyses of the Priority Claimants' damages, those of which he agreed were incorrect he has since corrected, and because their expert reached a fundamentally different conclusion about these Plaintiffs' other damages. Defendants' challenge of Mr. Elkin, as explained below,

---

[1] *Daubert v. Merrill Dow Pharms., Inc.*, 509 U.S. 579 (1993).

defies the American Institute of Certified Public Accountants' Code of Professional Conduct ("AICPA"), the very code of accountant conduct that Defendants attempt to use.

As a veteran CPA with decades of forensic accounting experience who holds the AICPA's Certification in Financial Forensics ("CFF") and Accreditation in Business Valuation ("ABV") and is also a Certified Fraud Examiner ("CFE"), Mr. Elkin's qualifications are beyond reproach and unchallenged by the Defendants.[2] Defendants instead contend, based on their rebuttal expert report of Marci D. Bour, CPA, ABV, CVA, MAFF, ABAR, CDBV, that Mr. Elkin's methodology was not accurate, consistent or reliable. Upon closer inspection, however, including the testimony of Ms. Bour (who selected these 3 terms and imposed her subjective interpretation on them), there is no substance to the Defendants' arguments.

Defendants' contentions boil down to disputes between Ms. Bour and Mr. Elkin over 1) Mr. Elkin's professional judgment to rely on information provided to him by Plaintiffs or their counsel, 2) a semantic dispute over Mr. Elkin's "lost equity" analysis, which Ms. Bour terms a "net investment capital analysis," and 3) a misunderstanding of Mr. Elkin's attempt to present a framework for analyzing pre-judgment interest,[3] which was never an opinion intended to be presented to the trier of fact, and which has since been retracted.[4] Defendants' final argument that Mr. Elkin's compilation of Plaintiffs' damages will not be helpful for the jury to evaluate because of his purported errors is directed to the weight and credibility of the

---

[2] Elkin Report, Exhibit A [Attached hereto as Exhibit "A"].

[3] Elkin Report [Exb. A] at ¶¶25, 27.

[4] As to the framework analysis provided in Mr. Elkin's February 19, 2019 Expert Report, which was designed to "aid" the Court or the jury should it be determined that prejudgment interest is awardable, Mr. Elkin reaffirmed at his deposition and Report that he will not be offering expert opinions on prejudgment interest. He again restated this position in his April 26, 2019 Explanation of Revisions. *See* April 26, 2019 Explanation of Revisions at 1 ("As referenced in his deposition and in his report, Mr. Elkin will not be offering expert opinions on prejudgment interest. Rather, prejudgment interest exhibits had been prepared to offer the framework through which prejudgment interest would be calculated. Mr. Elkin testified that he expects that "the court will determine which elements of damage, if any, are subject to prejudgment interest, and will determine the relevant measurement dates.") [Attached hereto as Exhibit "B"].

evidence, not its admissibility.  These arguments are addressed to Mr. Elkin's conclusions rather than his methodology.  Thus, they are not properly considered under *Daubert*.

As discussed below, Defendants' arguments for the exclusion of Mr. Elkin's testimony do not pass muster.

## II.   FACTUAL BACKGROUND

Plaintiffs retained Mr. Elkin to opine about the Priority Claimants' damages, focusing on out-of-pocket expenses for those who completely or partially remediated and certain components of other damages, including alternate living expenses, personal property damage expenses, additional damages (lost rentals, etc.), and lost equity.[5]

Mr. Elkin has been an accountant since 1983.[6]  From 2002 to the present, he has been a Principal at Kaufman Rossin & Co., where he serves as the firm's Forensic, Advisory and Valuation Services Practice Leader.[7]  Over at least the past five years, Mr. Elkin has been admitted as an expert without exception in every matter he was tasked to testify as an expert and is well qualified to testify on Plaintiffs' damages.[8]

To perform his assignment, Mr. Elkin received, reviewed, assembled and compiled an enormous volume of material from the Plaintiffs.  Elkin Report, Attachment A; Elkin Depo. at 48:13-59:19.[9]  To accomplish this feat, Mr. Elkin considered each of the Priority Claimants' answers to interrogatories, their answers to second interrogatories, and any amended answers provided, plus Plaintiff Profile Forms and then Supplemental Plaintiff Profile Forms, 113 documents in all.  *Id.*  In addition, he reviewed deposition transcripts of each Priority Claimant and considered their exhibits, which consisted of 420 documents. *Id.*  Further, he analyzed all these Plaintiffs' supporting documents (receipts, invoices, etc., which amounted to another 237 sets of documents, not including subparts, that supported his database).  These

---

[5] Elkin Report at ¶6.
[6] Elkin Report, Exhibit A.
[7] *Id.*
[8] Elkin Report, Exhibit C.
[9] Deposition of Michael P Elkin (March 11-12, 2019) [Attached hereto as Exhibit "C"].

thousands of pages of material were synthesized and input into Mr. Elkin's support and master database, which contained more than 2,000 data points. Elkin Depo. at 61:7-62:8; Bour Depo. at 86:22-87:19. From this database, Mr. Elkin would, as appropriate, separately calculate damages for each of the 20 Priority Claimants, which information was recounted in the separate exhibits accompanying his Report for each Plaintiff.

Compared to the enormity of Mr. Elkin's efforts to construct the master database and individual calculations of damages, Defendants' retained expert, Marci Bour, was simply tasked to critique this work for her rebuttal report.[10] Ms. Bour is a CPA with certifications in forensic accounting.[11] She has been a forensic accountant for the past 23 years, who currently practices at YIP Associates.[12] Employing the same accounting standards as those of Mr. Elkin,[13] Ms. Bour discovered "data entry errors, duplications and omissions" in Mr. Elkin's report.[14] Among the errors she detected, one was for $21.11,[15] another was for $40.79.[16] Although critical of Mr. Elkin's accuracy, Ms. Bour's Report was itself replete with numerous errors and inaccuracies,[17] one of which was approximately $16,000, which she admitted "was not an insignificant amount."[18]

Plagued with the same infirmities with which she accuses Mr. Elkin, Ms. Bour nevertheless opined that Mr. Elkin's analysis fails for want of accuracy, consistency and

---

[10] Deposition of Marci D. Bour (April 15, 2019) at 87:11-19 [Attached hereto as Exhibit "D"].

[11] Expert Rebuttal Report of Marcie D. Bour, CPA/ABV, CVA, CFE, MAFF, ABAR, CDBV, Exhibit 2 [Attached hereto as Exhibit "E"].

[12] *Id.* This Court is familiar with YIP from other litigation. *See Coquina Investments v. Rothstein*, 2011 WL 4949191, *2 (S.D. Fla. Oct. 18, 2011) (finding YIP unqualified to testify about bank fraud alert failures).

[13] Bour Depo. at 89:5-18 (acknowledging that the AICPA Code of Professional Conduct applies to all accountants in the State of Florida).

[14] Bour Report at Para. 15 (a).

[15] *Id.* at Para. 70 (d); Bour Depo. 131:9-16.

[16] *Id.* at Para. 70 (b); Bour Depo. at 129:17-130:7. Ms. Bour never calculated the total amount of errors she discovered in Mr. Elkin's report. Bour Depo. at 132:24-133:21.

[17] S*ee* Errata Sheet for Expert Rebuttal Report issued March 25, 2019, Bour Depo., Exhibit 8 [Attached hereto as Exhibit "F"]; Bour Depo. at 85:7-15.

[18] Bour Depo. at 157:15-25.

reliability.[19] These conclusions, however, are exclusive to Ms. Bour. She concedes there are no accounting standards applicable to her findings about accuracy, consistency or reliability.[20] And, as to her major thesis that Mr. Elkin "performed limited forensic procedures,"[21] she admits there is "some latitude" in the applicable AICPA code attendant to obtaining sufficient relevant data.[22] Even the AICPA Practice Aid that she relies upon refutes her contention that Mr. Elkin improperly relied on facts provided by counsel or the Priority Claimants, because it states: "An expert witness can base opinion testimony on either facts or assumptions. *An expert may base assumptions on facts; presumptions from facts; or assumptions provided **by the client, other experts, or counsel**.*"[23] Ultimately, Ms. Bour admits that her dispute over the reliability of Mr. Elkin's analysis is not measurable from the standpoint of methodology and is really a question of fact for the trier of fact.[24]

Based on this admission alone, the premise for the Defendants' motion is misguided.

## III. ARGUMENT

### A. The Legal Standard Under Daubert Applicable to Technical Experts

The admission of expert evidence is governed by Federal Rule of Evidence 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

---

[19] Bour Report at Para. 15.

[20] Bour Depo. at 81:4-83:14.

[21] Bour Report at Para. 20.

[22] Bour Depo. at 91:9-92:13.

[23] Bour Depo., Exhibit 13 at 14 (emphasis added); Bour Depo. at 100:16-101:23 (professing a lack of knowledge over whether Mr. Elkin abided by the standard but "failed in identifying the reasonableness of some of his information"

[24] *Id.* at 96:17-25 ("Q. How many -- or is there a way to test your measure of what is reliable for the purpose? Do you -- like, how many errors does it have to be before you break the camel's back, so to speak? A. There isn't a number. It -- there is no quantification. It's a facts-and-circumstances situation and it depends upon the magnitude, and it affects reliability and credibility. And that will be a decision for a trier of fact to determine.").

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.[25]

District courts play the role of gatekeepers to admit expert testimony testing to ensure that the foundation for the opinions are reliable and relevant. *See Daubert v. Merrell-Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993); *Gomez v. General Nutrition Corp.*, 323 F.Supp.3d 1368, 1377 (S.D. Fla. 2018) (Cooke, J.), citing *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291–92 (11th Cir. 2005); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999).

Importantly, the *Daubert* inquiry is inherently a "flexible one" and district courts "have substantial discretion in deciding how to test the expert's reliability. . . ." *United States v. Majors*, 196 F.3d 1206, 1215 (11th Cir. 1999) (citations omitted). Indeed, the Eleventh Circuit recognizes that "Daubert issues are not precisely calibrated and must be applied in case-specific evidentiary circumstances that often defy generalization."[26] But, as *Daubert* explains, the "traditional and appropriate" method of addressing expert opinion is through cross-examination.[27] Therefore, "it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence."[28] This is so because the "district court's

---

[25] Fed. R. Evid. 702.

[26] *In re Teltronics, Inc.*, 904 F.3d 1303, 1311 (11th Cir. 2018), quoting *United States v. Brown*, 415 F.3d 1257, 1265-66 (11th Cir. 2005).

[27] *Daubert*, 505 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

[28] *Quiet Technology DC–8, Inc. v. HurelDubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003). *See also Ortiz v. Home Depot USA, Inc.*, 2013 WL 5774873, at *2 (S.D. Fla. Oct. 25, 2013) (J. Scola) (citation omitted).

gatekeeper role under *Daubert* 'is not intended to supplant the adversary system or the role of the jury.'"[29]  Consequently, the *Daubert* analysis focuses on the methodology underlying an expert's opinion, <u>not</u> the expert's conclusions.[30]  *Daubert* requires the proponent of the scientific evidence to show that the expert's conclusion has been arrived at "in a scientifically sound and methodologically reliable fashion," not that the expert's opinion or methodology is beyond reproach.[31]  Therefore, the focus of admissibility under *Daubert* is the reliability of the experts' methods, not the correctness of their conclusions.[32]  The trial court is not "empowered 'to determine which of several competing scientific theories has the best provenance.'"[33] As long as the expert's testimony falls within "the range where experts may reasonably differ," then it is up to the jury to decide among the competing views.[34]

The task of evaluating the admissibility of expert testimony is uniquely entrusted to the district court. *See McCovey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). Accordingly, district courts enjoy "considerable leeway" in the execution of their duty. *Kumho Tire,* 526 U.S. at 152. A district court's decision on the admissibility of expert testimony is reviewed under an abuse of discretion standard. *Id.*; *Rink*, 400 F.3d at 1291.  However, the framework for this Court to fulfill its obligations under the *Daubert* standard, requires a three-part determination of whether: (1) the expert is qualified to testify competently regarding the matters he or she intends to address; (2) the methodology by which the expert reaches his or her opinion is sufficiently reliable; and (3) the testimony is helpful to the trier of fact through the application of scientific, technical, or specialized expertise to understand the evidence. *See*

---

[29] *Maiz v. Virani,* 253 F.3d 641, 666 (11th Cir. 2001), quoting *Allison*, 184 F.3d at 1311.
[30] *Daubert,* 505 U.S. at 595.
[31] *Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co.*, 161 F.3d 77, 85 (1st Cir. 1998); *In re TMI Litig.*, 193 F.3d 613, 665 (3d Cir. 1999) (explaining that plaintiffs "do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable" (citation omitted)).
[32] *Daubert*, 509 U.S. at 585. S*ee also Allison,* 184 F.3d at 1312.
[33] *Milward v. Acuity Specialty Prod. Group, Inc.*, 639 F.3d 11, 15 (1st Cir. 2011) (quoting *Ruiz-Troche,* 161 F.3d at 85).
[34] *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 153 (1999).

*City of Tuscaloosa v. Harcros Chems., Inc.,* 158 F.3d 548, 562 (11th Cir.1998) (citing *Daubert,* 509 U.S. at 589). *See also United States v. Frazier,* 387 F.3d 1244, 1260 (11th Cir.2004) (describing the qualifications, reliability and helpfulness analysis).

The qualifications requirement for an expert are not excessively demanding. Courts focus on the expert's background observing their knowledge, skill, experience, training, or education. *Gomez,* 323 F.Supp.3d at 1377. But, as this Court has observed, "an expert is not necessarily unqualified simply because [his or her] experience does not precisely match the matter at hand. . . . [S]o long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility." *Id.* (citations omitted).

As to reliability, expert opinions are evaluated against three factors: "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Civ. P. 702 (b-d). *See also Mohamed v. American Motor Company, LLC,* 2017 WL 4310757, *2 (S.D. Fla. Sept. 28, 2017) (Cooke, J.). Courts evaluating complex scientific opinions may examine the following non-exhaustive list of considerations: "1) whether the expert's theory can be and has been tested; 2) whether the theory has been subjected to peer review and publication; 3) the known or potential rate of error of the particular scientific technique; and 4) whether the technique is generally accepted in the scientific community." *Frazier,* 387 F.3d at 1261–62. *See also Quiet Tech. DC–8,* 326 F.3d at 1341. Being a non-exhaustive list, courts are not required to apply each factor in every single case. However, "[t]he same criteria that are used to assess the reliability of a scientific opinion may be used to evaluate the reliability of non-scientific, experience-based testimony." *Frazier,* 387 F.3d at 1262 (citing *Kumho Tire Co.* 526 U.S. at 152). Because the list is non-exhaustive, this Court in the exercise of its discretion may "decide that nonscientific expert testimony is reliable based upon personal knowledge or experience" alone. *Mohamed,* 2017 WL 4310757 at *2, citing *Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC,* 555 F.3d 1331, 1338 (11th Cir. 2009). "In the context of an expert witness testifying on the basis of specialized experience, a reliable methodology means that the witness must explain how [his] experience leads to the

conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts [of the case]." *Id.*

Further, mere disagreement between experts about the reliability of one expert's opinion simply goes to weight, not admissibility. *See Kumho Tire,* 526 U.S. at 153 (experts may reasonably differ without necessitating *Daubert* exclusion); *Tampa Bay Water v. HDR Engineering, Inc.*, 731 F.3d 1171, 1185 (11th Cir. 2013), *overruled on other grounds by CSX Transp., Inc. v. Gen. Mills, Inc.*, 846 F.3d 1333, 1340 (11th Cir. 2017) (noting preference that any disagreements amongst experts "be aired out in front of the jury and tested by the crucible of cross-examination"). *See also See Rosenfeld v. Oceania Cruises, Inc.,* 654 F.3d 1190, 1193 (11th Cir. 2011) ("in most cases, objections to the inadequacies of a study are more appropriately considered an objection going to the weight of the evidence rather than its admissibility.") (citations omitted)); *Quiet Technology DC–8,* 326 F.3d at 1346, quoting *Bazemore v. Friday,* 478 U.S. 385, 400 (1986) (challenges to the inclusiveness of expert's analysis "will affect the analysis' probativeness, not its admissibility'").

Finally, the expert's opinion must be helpful. "This condition goes primarily to relevance." *Daubert,* 509 U.S. at 591. In other words, the opinion must relate to the matters at issue in the case. *See Quiet Technology*, 326 F.3d at 1347. To be helpful, the testimony of the expert must also "fit" the situation. *Id.,* citing *Daubert, 5*09 U.S. at 591. *See also Gomez*, 323 F.Supp.3d at 1378 ("To be appropriate, a "fit" must exist between the offered opinion and the facts of the case.").

**B.    Defendants' Challenges to Mr. Elkin Based on Methodology are Meritless**

The Taishan Defendants contend that Mr. Elkin's conclusions about Plaintiffs' damages are methodologically flawed. Defendants argue that Mr. Elkin made no critical assessment of the data provided to him by counsel and the Priority Claimants, which makes his tabulation of this data unreliable. Falsely accusing Mr. Elkin of performing minimal verification, they suggest his entire report and testimony must be excluded.

Defendants' mistaken arguments are premised upon the factually distinguishable caselaw of *Goldberg v. Florida Int'l Univ. Bd. of Trustees*, 2019 WL 692780 (S.D. Fla. Feb. 7,

9

2019) and *First Premium Services, Inc. v. Best Western Int'l, Inc.*, 2004 WL 7203535 (S.D. Fla. Jan. 8, 2004). In *Goldberg,* plaintiffs' counsel drafted the entirety of the substantive aspects of the experts' report addressing present value of future lost damages. At the expert's deposition, he testified to not knowing who drafted the challenged section of his report and certainly to not having personally conducted any independent research or analysis of the data in that portion of his report. Finding the expert to be a mere "conduit" of plaintiffs' counsel, the court excluded the expert. But those facts are not present here. Mr. Elkin drafted his entire report,[35] read the testimony of the witnesses,[36] reviewed "at least parts of every document" in his reliance list,[37] compiled his own database,[38] and, most importantly, the Defendants do not contend otherwise.

*First Premium* is equally distinct. There, the court excluded a forensic accountant whose lost profits analysis was based on the experts' blind reliance on a single unverified tax return for one year to forecast the company's future income for the next 15 years. Incredibly, even the company's president (who prepared the tax return) could not guarantee its reliability. *First Premium*, 2004 WL 7203535 at *3. More importantly, '[n]otwithstanding the language excerpted from *First Premium*, courts often conclude that experts are permitted to rely on information provided by clients without confirming the accuracy." *Companhia Energetica Potiguar v. Caterpillar Inc.*, 2016 WL 11547499, *12 (S.D. Fla. June 13, 2016) (citing cases). *See also* Fed.R.Evid. 703; *Smolow v. Hafer*, 513 F.Supp.2d 418, 427 (E.D. Pa. 2007) (an accounting expert can reasonably rely on interviews with clients and counsel because facts gathered from interviews with people "are normally and reasonably relied upon by accountants under Rule 703"); *Companhia Energetica Potiguar*, 2016 WL 11547499 at *13 ("A party confronted with an expert accountant's damages opinion is, of course, free to challenge the accuracy, completeness and relevance of the material provided to the expert during cross-examination

[35] Elkin Depo. at 77:11-78:21 (noting Mr. Elkin prepared each draft of his report).
[36] *Id.* at 53:12-54:4 ("I have personally viewed parts of, if not all of, the deposition transcripts.").
[37] *Id.* at 49:17-24.
[38] *Id.* at 73:20-74:4 (Noting his exhibits were "prepared in a combined effort by me" and his staff, but "at the end of the day, I did [the decision making]," and counsel were not involved).

(and in post-case motions and/or closing argument). If the information given to the expert accountant is incorrect, unreliable or speculative, then the jury will take that into consideration when deciding what weight, if any, to give the expert's conclusions."). *Accord* AICPA Forensic & Valuation Services Practice Aid: "Serving as an Expert Witness or Consultant" at 42 (interviewing knowledgeable persons is a recognized forensic investigative technique).[39]

Here, Mr. Elkin is attempting to assist the trier of fact by assembling the thousands of receipts, invoices, and other papers into an organized accounting report. Naturally, he would have to rely on the input of the Priority Claimants and their counsel to assess what information to input, whether it be their categorization of items as personal property damages or remediation costs, etc. But this is entirely consistent with the standards applicable to CPAs. In other words, the AICPA's General Standards Rule requires that he "obtain sufficient relevant data to afford a reasonable basis for conclusions and recommendations in relation to any professional services rendered."[40] Because he is afforded "some latitude" by this rule, whether his assessment was reasonable is not a challenge directed to his methodology, and instead a challenge to his conclusions. Since *Daubert* challenges are not properly directed to experts' conclusions, the Defendants' Motion is without merit.

### C. Mr. Elkin's Use of His Best Judgment Based Upon His Experience to Assess the Dates Property was Damaged to Calculate Damages to Personal Property Is an Appropriate Methodology

The Taishan Defendants contend that Mr. Elkin did not have a consistent methodology for analyzing when a particular piece of personal property was damaged for purposes of his damage calculations. Because of the multitude of variations for accounting for when an item was damaged, Mr. Elkin was forced to evaluate each circumstance

---

[39] Bour Deposition, Exhibit 13 [Attached hereto as Exhibit "G"].
[40] AICPA Code of Professional Conduct, 1.300.001.01 (d), Bour Deposition, Exhibit 12 [Attached hereto as Exhibit "H"].

individually.  That does not imply his methodology was inconsistent, merely that the results

could be.  The Taishan Defendants recognize that this determination was "challenging," ECF

No. 248 at 8, but then fault Mr. Elkin for attempting to determine a date of damage.

In such a situation, where the expert is providing opinions based on experiential

reasoning, provided he can well explain his reasoning and opinion, such testimony is

permitted.  See *Mohamed*, 2017 WL 4310757 at *2.  Here, Mr. Elkin carefully explained how

he arrived at his conclusions:

> Q.   Let me talk to you about dates of damage.  To the extent
> somebody has personal property that you've included as a
> damage, what did you use as the date of damage?
> A.   That was a difficult component.  And again, I've used them,
> to be clear, for purposes of these calculations, with what I hope
> was a clear caveat that ultimately those dates might be
> determined based on the law, or what have you, to be different
> dates.
>
> Sometimes I would have used -- if it was a cost that was
> incurred to replace something, I believe I would have used the
> cost on the date that they actually expended it, although there
> could be argument that it was damaged earlier than that.
>
> In some cases where I didn't have something that was
> replaced, I used my judgment on a line item basis to determine
> at what point that damage may have taken place.
>
> There were some things where I couldn't make a
> determination as to when they were put in place, so I used
> alternative dates, and I would have to go line item by line item.
>
> There was not a bright line, here's how you're going to do
> it for each one, because the facts and circumstances for each case
> were different.
>
> But when I had evidence of an actual date or what I
> believed would be the date, particularly in the alternate living
> expenses, I used a date then.
>
> What I ultimately did was I used a – I used -- I'm going to
> just call it a buffer period, but I added an additional 30 days to
> the calculation -- or I subtracted -- there is less days of interest

because I used a later date to try to account for what might be differences as to whether something hit a credit card expense or then got paid a month later, or what have you, although there's argument in other cases that I've been in where, if it hit your credit card, that was the date of the expense.

But I was trying to be as conservative as possible, recognizing there is a variety of different circumstances for these different dates.[41]

Defendants' demand for consistency is not appropriate, especially where because of the unique situations confronting Mr. Elkin flexibility was necessary. Mr. Elkin has adequately stated his reasoning, which may properly be evaluated by the trier of fact.

**D.    Whether Called a "Lost Equity" Analysis or a "Net Invested Capital" Analysis, Mr. Elkin Should Be Permitted to Testify to the Cash Flow Losses of the Plaintiffs**

In his report, Mr. Elkin attempted to describe the impact of the damages suffered by the Priority Claimants with regard to their net invested capital in their homes. He titled his analysis "lost equity."[42] The Defendants take issue with this analysis based on its title alone. Defendants posit that lost equity is typically understood to be the difference with the sale price of property less the amount of debt held against the property. Had Mr. Elkin's analysis been called a "net invested capital" analysis that did not include occupancy-related expenses, however, the Defendants' argument dissolves. This was confirmed by Ms. Bour at her deposition.[43]

---

[41] Elkin Depo. at 92:20-94:13.

[42] In Paragraph 22 of his Report, Mr. Elkin defined "lost equity" for purposes of his analysis to be: "Counsel requested that I determine the net investment capital certain Claimants have paid for the Affected Property. That is, the amount of money that was paid directly by Claimant through deposits, funds at closing, payments of p principal on mortgages, or capital improvements, less any funds received by the Claimant through the sale of the Affected Property. This net outlay is referred to as Lost Equity." Elkin Report at Para. 22.

[43] Bour Depo. at 152:16 to 152:22 ("Q. Thank you. And then you also, in order to adjust over all for him, what you were saying is look, I don't agree that it's lost equity, but if we are talking about lost invested cash, I need to remove the occupancy-related expenses, such as real estate taxes, water bills, and the like, correct? A. Yes.").

In his April 27, 2019 Revisions, Mr. Elkin eliminated those occupancy-related expenses which distinguished his prior analysis with Ms. Bour. Now that the two experts are reconciled, there is no meaningful dispute. Defendants as much acknowledge this agreement. ECF No. 248 at 9 n.6. Their only defense is that Mr. Elkin failed to account for market changes, which has no bearing on methodology or the admissibility of Mr. Elkin's report.

### E. The Correction of Errors Enhances Mr. Elkin's Report and Supports the Admission of his Testimony

Defendants repeatedly challenge Mr. Elkin for committing data entry errors while sifting through the enormous amounts of data necessary to compile the master database. They suggest this reflects poorly on Mr. Elkin's methodology, and, that even if corrected, does not root out the flaws in Mr. Elkin's analysis, which necessitate the exclusion of his opinion. Such draconian results are not supported by *Daubert* and its progeny.

In *Crowley v. Chait*, 322 F.Supp.2d 530, 540 (D. N.J. 2004), a similar challenge to that asserted against Mr. Elkin was presented to exclude the plaintiffs' insurance underwriting experts in that case. Like here, the defendant argued that plaintiffs' experts' "application of shifting and arguably subjective standards" were inconsistently applied. The *Crowley* court recognized the inherent flaw in this argument was that the underwriting experts were expressing "technical knowledge," not scientific opinions "so that the emphasis is placed not on the methodology of the expert testimony, but on the professional and personal experience of the witness." *Id.* at 539. Similarly, against the defendants' argument that the underwriting experts' reports were so riddled with error that the expert had to either retract or correct their opinions when confronted with these errors by the defendant, the court rejected the contention that these inaccuracies rendered the reports unreliable as to require exclusion. To the contrary, the court held:

> Daubert does not require that an expert's testimony be excluded simply because he admitted and corrected his own mistakes or retracted his false statements. In fact, one of the very purposes of a Daubert hearing, discussed above, is to give experts a chance to explain and even correct errors that they made in their reports.

14

*** There is no stigma attached to such error correction, nor should there be. If anything, it strengthens the quality of the expert report.[44]

In the end, the court recognized that "an expert's testimony need not be flawless for it to be reliable and admissible," and refused to exclude the expert opinion, preferring instead that it be subject to cross-examination.[45]

In *Baez v. Wal-Mart Stores East, LP,* 2012 WL 13005547 (S.D. Fla. May 14, 2012), this Court similarly recognized that any weaknesses in an expert's analysis, "including variables he may not have considered, may be highlighted with vigorous cross-examination."

As cross-examination is the appropriate and preferred methodology for addressing expert opinions, *Daubert, supra*, especially non-scientific opinions such as Mr. Elkin's forensic accounting report, there is no support for Defendants' Motion to Exclude Mr. Elkin.

### F.    Mr. Elkin's Analysis Fits the Matters at Issue and Would Greatly Assist the Trier of Fact

Mr. Elkin is an experienced CPA whose ability to explain the calculation of damages for each Priority Claimant would be of great assistance to any jury. *See Quiet Technology*, 326 F.3d at 1347; *Gomez*, 323 F.Supp.3d at 1378. Defendants' pejorative reference to Mr. Elkin as a "human calculator" misunderstands the beneficial function Mr. Elkin would serve at trial, including the organized presentation and explication of supporting documents underlying Plaintiffs' damages. Mr. Elkin's reports are meticulously prepared and readily understood in an immediate way. His capacity and knowledge of the documents and record was even commended by defense counsel.[46] It would be prejudicial to the Plaintiffs not to be able to utilize this extraordinarily talented and helpful witness. Moreover, in light of the significant volume of information (thousands of pages of receipts, contracts and invoices from

---

[44] *Id.* at 540 (emphasis added).
[45] *Id.* at 536, 541.
[46] Elkin Depo. at 298:7 - 298:8 ("You have a very good memory, Mr. Elkin.").

the Priority Claimants in addition to the volumes of information cited herein) will simplify the issues for the jury.

Of course, Defendants would prefer to avoid an experienced accountant capable of articulating document by document Plaintiffs' damages. That is why they argue at page 13 of their brief that Mr. Elkin's testimony would not be helpful, nor beyond the knowledge of the average lay-man. ECF No. 248 at 13. But on the very next page of their brief, they posit that oral argument would be "helpful" to the Court because of the "complex factual" record presented by Mr. Elkin's report and proposed testimony. *Id.* at 14. The Defendants cannot have it both ways. If the matter is complex enough for the Court, it is more than complicated for a jury. And because the probity of Mr. Elkin's testimony outweighs any prejudice, there is no valid reason under Fed. R. Evid. 403 to exclude it as being cumulative. This Court has many tools available to limit either party from unnecessarily delaying trial (which because it would be against Plaintiffs' interests, we have no intention of doing), including imposing time limits. Precluding relevant witnesses from testifying should be a matter of last resort, not the first instance as the Defendants request.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that this Court DENY the Defendants' Joint Motion to Preclude the Proposed Testimony and Strike the Expert Report of Plaintiffs' Expert Michael P. Elkin.

Respectfully submitted,

Dated:  May 13, 2019.

/s/ Patrick S. Montoya, Esq.
Patrick Shanan Montoya
Fla. Bar No. 0524441
Email: Patrick@colson.com
Colson Hicks Eidson
255 Alhambra Circle, PH
Coral Gables, FL  33134-2351
Telephone:  (305) 476-7400
Facsimile:  (305) 476-7444
*Interim Lead Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this document was served via email on May 13, 2019 on all counsel and/or parties of record as indicated in the service email.

<div style="margin-left: 50%;">

/s/ Patrick S. Montoya, Esq.
Patrick Shanan Montoya
Fla. Bar No. 0524441
Email: Patrick@colson.com
Colson Hicks Eidson
255 Alhambra Circle, PH
Coral Gables, FL 33134-2351
Telephone: (305) 476-7400
Facsimile: (305) 476-7444
*Interim Lead Counsel for Plaintiffs*

</div>

**SERVICE LIST**

Arnold Levin, Esq.
Sandra Duggan, Esq.
Frederick S. Longer, Esq.
LEVIN SEDRAN & BERMAN LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500
*Attorneys for Plaintiffs*

Dawn Barrios, Esq.
Emma Kingsdorf Schwab, Esq.
BARRIOS, KINGSDORF & CASTEIX,
LLP
701 Poydras Street, Suite 3650
New Orleans, Louisiana 70139,
504-524-3300
*Attorneys for Plaintiffs*

Leonard A. Davis, Esq.
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue,
New Orleans, Louisiana 70113,
PH: (504) 581-4892
*Attorneys for Plaintiffs*

Pearl Anna Robertson, Esq.
IRPINO, AVIN, HAWKINS, LLP
2216 Magazine Street
New Orleans, LA 70130
504-525-1500
*Attorneys for Plaintiffs*

James V. Doyle, Esq.
DOYLE LAW FIRM, PC
2100 Southbridge Pkwy., Suite 650
Birmingham, AL 35209
Tele: 205-533-9500 Fax: 844-638-5812
Jim.Doyle@DoyleFirm.com
*Attorney for Plaintiffs*

Jay P. Dinan
FL Bar No.: 876593
Email: jdinan@yourlawyer.com
Parker Waichman LLP
27300 Riverview Center Boulevard, Suite
103
Bonita Springs, Florida 34134
Office: 239.390.1000
Fax: 239.390.0055
*Counsel for Parker Waichman LLP Plaintiffs*

Jimmy Faircloth, Esq.
Faircloth, Melton, & Sobel
Gras Town Plaza,
412 N. 4th Street, Suite 230
Baton Rouge, LA 70802,
(225) 343-9535
*Attorney for Plaintiffs*

Scott A. George, Esq.
Jeffrey S. Grand, Esq.
Christopher Seeger, Esq.
Seeger Weiss LLP
1515 Market Street, Suite 1380
Philadelphia, PA 19102,
(215) 564-2300
*Attorney for Plaintiffs*

Jeffrey A. Breit, Esq.
BREIT DRESCHER IMPREVENTO,
P.C.
600 22nd Street, Suite 402
Virginia Beach, VA 23451
757-622-6000
*Attorney for Plaintiffs*

Richard S. Lewis, Esq.
Hausfeld LLP,
1700 K Street, NW., Ste. 650
Washington, DC 20006
(202) 540-7200
*Attorney for Plaintiffs*

Richard J. Serpe, Esq.
LAW OFFICES OF RICHARD J.
SERPE, PC
580 E. MAIN STREET, SUITE 310
Norfolk, Virginia 23510
757-233-0009
*Attorney for Plaintiffs*

David Venderbush, Esq.
Michael P. Kenney, Esq.
Kristine McAlister Brown, Esq.
Christina Hull Eikhoff, Esq.
Bernard Taylor, Esq.
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
PH 404-881-7000 Fax: 404-881-7777
kristy.brown@alston.com

*Attorney for Defendant Taishan Gypsum Co.
Ltd, & Tai'an Taishan Plasterboard Co.,*

Craig P. Kalil, Esq.
Aballi Milne Kalil, PA
2250 Suntrust International Center
One Southeast Third Avenue
Miami, Florida 33131
Tel: 305-373-6600
Tel: 305-372-5924
Fax: 305-373-7929
*Attorneys for BNBM PLC*

Eric Matthew Hairston, Esq.
Andrew K. Davidson, Esq.
L. Christopher Vejnoska, Esq.
James L. Stengel, Esq.
Orrick, Herrington & Sutcliffe, LLP
The Orrick Building
405 Howard Street
San Fancisco, CA 94105
Tel: 415-773-5700

*Attorneys for Beijing News Building Materials
Public*

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.: 11-22408-Civ-COOKE

EDUARDO AND CARMEN AMORIN, *et al.*,
individually and on behalf of others similarly
situated,

        Plaintiffs,

vs.

TAISHAN GYPSUM CO., LTD., f/k/a
SHANDONG TIASHE DONGXIN CO. LTD.,
*et al.*,

        Defendants.

_____

**EXPERT WITNESS REPORT OF:**
**<u>MICHAEL P. ELKIN, CPA/CFF/ABV, CFE</u>**
**<u>IN THE PRIORITY CLAIMANT TRIAL</u>**

February 19, 2019



*Eduardo and Carmen Amorin, et al. v. Taishan Gypsum Co. Ltd., et al. – Priority Claimant Trial*
Expert Witness Report of Michael P. Elkin, February 19, 2019

**TABLE OF CONTENTS:**

I.    BACKGROUND ..................................................................................................... 1

II.   SCOPE OF ASSIGNMENT ..................................................................................... 2

III.  QUALIFICATIONS ............................................................................................... 3

IV.  SUMMARY OF EXPERT OPINIONS, WORK PERFORMED AND BASES FOR OPINIONS ................. 4

    A.   *General* ........................................................................................... 4

    B.   *Full or Partial Out-of-Pocket Remediation Expenses* ............................................. 4

    C.   *Other Damages and Personal Injury Claims* ........................................................ 5

        i.    Alternate Living Expenses ................................................................... 5

        ii.   Personal Property Damage Expenses ..................................................... 6

        iii.  Additional Damages ........................................................................... 6

        iv.  Loss of Use and Enjoyment ................................................................ 6

        v.    Lost Equity .......................................................................................... 7

        vi.  Diminution in Value/Stigma ................................................................ 7

    D.   *Punitive Damages* ............................................................................. 7

    E.   *Prejudgment Interest* ........................................................................ 7

    F.   *Set-offs, Settlement Payments Received, and Collateral Sources* ............................. 9

V.    PENDING DISCOVERY AND ASSIGNMENT CONTINUATION ........................................... 9

VI.  FEES ................................................................................................................ 9

*Eduardo and Carmen Amorin, et al. v. Taishan Gypsum Co. Ltd., et al. – Priority Claimant Trial*
Expert Witness Report of Michael P. Elkin, February 19, 2019

**ATTACHMENTS:**

DOCUMENTS AND OTHER INFORMATION CONSIDERED ................................................................ A

CURRICULUM VITAE OF MICHAEL P. ELKIN ........................................................................... B

FIVE YEAR RECORD OF TESTIMONY FOR MICHAEL P. ELKIN ............................................... C

**EXHIBITS:** CALCULATIONS OF DAMAGES:

AVERY, JANET.. ................................................................................................................ 1

CHATMON, LILLIAN ........................................................................................................... 2

DEEG, DAVID AND HOOKER, DEBORAH ............................................................................. 3

ETTER, STEVEN AND CATHY ............................................................................................. 4

FELDKAMP, ANDREW AND DAWN ...................................................................................... 5

FOSTER, WILLIAM AND VICKI ........................................................................................... 6

GODY, ANTHONY AND CANDACE ....................................................................................... 7

GRIFFIN, DAVID AND DIANE ............................................................................................. 8

HERNANDEZ, JOHN AND BERTHA/BETTY ........................................................................... 9

LALWANI, GUL AND DEBORAH ......................................................................................... 10

MARIN, CASSANDRA ......................................................................................................... 11

MARTINEZ, DAILYN ......................................................................................................... 12

MIRANDA, JOSE AND ADELA ........................................................................................... 13

NGUYEN, TRACY AND MAI, TUYEN ................................................................................. 14

NUNEZ, JEOVANY AND MONICA ...................................................................................... 15

O'BRIEN, KELLY AND LORI ............................................................................................. 16

ROSEN, MICHAEL AND ROBYN ........................................................................................ 17

ROSEN, KEVIN AND STACEY ........................................................................................... 18

WALLS, LARRY AND ROSALEE ....................................................................................... 19

WITES, MARC AND JENNIFER .......................................................................................... 20

*Eduardo and Carmen Amorin, et al. v. Taishan Gypsum Co. Ltd., et al.* – *Priority Claimant Trial*
Expert Witness Report of Michael P. Elkin, February 15, 2019

## I.   BACKGROUND[1]

1.   From 2004 through 2006, the housing boom in Florida and rebuilding efforts necessitated by Hurricanes Rita and Katrina led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used in the construction and refurbishing of homes in coastal areas of the country, specifically in the Gulf and East Coast.   Subsequent to the installation of the Chinese drywall, homeowners began to complain of emissions of smelly gasses, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their respective homes, as well as various physical afflictions believed to be caused by Chinese drywall.   Homeowners began to file suit in various state and federal courts against various parties that were involved with the Chinese drywall.[2]

2.   One such case in the Southern District of Florida in United States District Court is the matter of *Eduardo and Carmen Amorin, et al., individually and on behalf of all others similarly situated v. Taishan Gypsum Co. Ltd., f/k/a Shandong Tiashe Dongxin Co. Ltd., et al* (Case No. 11-22408-Civ-COOKE) involving homeowners claims against defendants ("*Amorin*").

3.   In connection with the *Amorin* matter, on November 16, 2018 United States District Judge Marcia G. Cooke entered an order addressing, among other things, findings regarding liability and damages. Judge Cooke's Order includes a Trial Plan for Property Damage Claims and a Trial Plan for Other Damages and Personal Injury Claims.[3]

---

[1] This section provides my general understanding of background information based upon pleadings, information from Counsel, and other sources referenced herein, and is not intended to represent any expert opinions.

[2] Per Judge Fallon's Findings of Fact & Conclusions of Law Related to the June 9, 2015 Damages Hearing, dated April 21, 2017.

[3] Judge Cooke's Order entered November 16, 2018 (Judge Cooke's Order").

*Eduardo and Carmen Amorin, et al. v. Taishan Gypsum Co. Ltd., et al. – Priority Claimant Trial*
Expert Witness Report of Michael P. Elkin, February 15, 2019

4.   The Trial Plan for Property Damage Claims lays out a timeline and methodology for
     determination of property damages.[4]

5.   The Trial Plan for Other Damages and Personal Injury Claims lays out the timeline for 20
     Florida claims to be tried (the "Priority Claimants") with regard to Other Damages,
     including but limited to, claims for alternate living expenses, loss of use and enjoyment,
     lost rent, bankruptcy, foreclosure, and short sale.[5]

## II.   SCOPE OF ASSIGNMENT

6.   Kaufman Rossin & Co. ("KR") was retained by Colson Hicks Eidson on behalf of the
     Plaintiffs' Steering Committee in MDL 2047 ("Counsel"), in January 2019 to provide
     expert witness and consulting services regarding Priority Claimants' damages in
     connection with this matter. Specifically, Counsel requested that KR determine Out-of-
     Pocket Expenses for those who fully or partially remediated and certain components of
     Other Damages pursuant to Judge Cooke's Order.

7.   KR has not been requested to and is not rendering opinions relating to legal theories or
     conclusions. KR will not be rendering opinions with regard to issues of liability. KR will
     not be rendering opinions with regard to remediation formula damages, personal injury,
     loss of use and enjoyment, diminished value/stigma, or punitive damages.

8.   I, Michael P. Elkin, have directed the engagement, and am being offered as an expert
     witness in this matter.[6]

---

[4] Ibid.

[5] Ibid.

[6] For purposes of this report, the terms "I" or "KR" refer to me and other KR professionals that worked under my supervision.

*Eduardo and Carmen Amorin, et al. v. Taishan Gypsum Co. Ltd., et al. – Priority Claimant Trial*
Expert Witness Report of Michael P. Elkin, February 15, 2019

9.  I was asked to prepare this report and to be available to i) consider any further opinions that may be put forth by Defendants and/or their expert(s), ii) consider and analyze any relevant analyses and/or other documents, including deposition testimony, etc. that may become available or be produced in the discovery process, iii) testify by deposition and/or at the trial of this matter, and iv) consult with Counsel or the court on technical or otherwise specialized evidence related to economic damages.

10. In conducting this engagement to date, I have relied on documents and other information provided by Counsel as described throughout this report and the attached exhibits. A listing of the documents and information I considered is contained in ***ATTACHMENT A*** to this report.

## III. QUALIFICATIONS

11. I am a Principal of Kaufman Rossin & Co., an independent CPA and consulting firm with several offices in South Florida.  I serve as the practice leader of Forensic, Advisory and Valuation Services.  I am a Certified Public Accountant, licensed to practice in Florida.  I have extensive experience performing and reviewing economic damage studies, business valuation engagements and analyses of complex accounting, business and economic matters in commercial and civil litigation and on behalf of my accounting clients.  I have provided a wide range of business consulting services relating to acquisition assistance, business planning and other engagements designed to assist businesses with critical management decisions.  I have served as a Court-Appointed Receiver, Liquidating Receiver, Special Magistrate and Valuation Expert in order to resolve disputes and/or carry out the winding down of business affairs in a number of matters.

12.   A copy of my curriculum vitae, which further describes my education, professional history, professional affiliations and range of experience, is contained in **_ATTACHMENT B_**. Detail of the cases in which I have provided expert testimony in the past five years is contained in **_ATTACHMENT C_**.

## IV.   SUMMARY OF EXPERT OPINIONS, WORK PERFORMED AND BASES FOR OPINIONS

### A.   _General_

13.   In formulating my opinions, I considered qualitative and quantitative information relative to damages suffered for each Priority Claimant following prescribed or commonly applied methodology using the best available evidence.[7] The damages and corresponding data are summarized on the first page of each of the attached **_EXHIBITS 1 - 20_** (one for each of the 20 Priority Claimants).  Each exhibit includes corresponding schedules providing reference to information and detailed back-up supporting the calculations and conclusions reached for each component of damage. For each Priority Claimant I have relied on documentation common to all Priority Claimants as provided on **_ATTACHMENT A_** and also information specific to each Priority Claimant as separately identified in the exhibits pertaining to each.

### B.   _Full or Partial Out-of-Pocket Remediation Expenses_

14.   In formulating my opinions regarding Out-of-Pocket Expenses for complete or partial remediation, I relied on Counsel's representations with regard to which Priority Claimants

---

[7] Where available in most circumstances, damage components have been corroborated by invoices, check copies, contracts, leases, bank statements, credit card statements and other source documentation.  In some instances, either due to the passage of time or other limitations (e.g. hurricane damage) specific items may be supported by representations by Plaintiffs through sworn testimony or otherwise.  In all cases the support for each element is referenced in **_EXHIBITS 1 - 20_**.  As recognized in Judge Fallon's Order, damage calculations are based on the best available evidence, which need not be exact.  Ultimately the trier of fact will determine the sufficiency of the available evidence.

*Eduardo and Carmen Amorin, et al. v. Taishan Gypsum Co. Ltd., et al. – Priority Claimant Trial*
Expert Witness Report of Michael P. Elkin, February 15, 2019

15. For any Priority Claimants that Counsel has represented have partially or completely remediated, I have evaluated documentation and information in order to detail such expenses for each Priority Claimant as reflected in the corresponding ***EXHIBITS 1 – 20***. The exhibits provide indication of this detail based on the best evidence available as is identified for each component, along with reference to the source information.

have completely or partially remediated. I am not offering opinions regarding which, if any, Priority Claimants have or have not completely remediated.

**C.** ***Other Damages and Personal Injury Claims***

16. The Trial Plan for Other Damages and Personal Injury Claims lays out the timeline for the Priority Claimants with regard to Other Damages, including but limited to, claims for alternate living expenses, loss of use and enjoyment, lost rent, bankruptcy, foreclosure, and short sale.

   ***i.*** ***Alternate Living Expenses***

17. Dependent on the facts and circumstances for each Priority Claimant, Alternate Living Expenses vary in terms of duration, type, and many other factors. Some remained in the Affected Property for all or part of the time they owned the property; some have returned; and some have not. Some had to lease alternative residences while others had to live in properties that they had been renting out to others. I have evaluated documentation and information in order to detail such expenses for each Priority Claimant as reflected in the corresponding ***EXHIBITS 1 – 20***. The exhibits provide indication of this detail based on the best evidence available as is identified for each component, along with reference to the source information.

*Eduardo and Carmen Amorin, et al. v. Taishan Gypsum Co. Ltd., et al. – Priority Claimant Trial*
Expert Witness Report of Michael P. Elkin, February 15, 2019

18.   The period used for Alternative Living Expenses begins with the date the Priority Claimant moved out of the Affected Property and ends with either the date they returned, the date remediation was completed, or the date the property was foreclosed on or sold, regardless of the type of sale.

   ii.   ***Personal Property Damage Expenses***

19.   Many of the Priority Claimants suffered costs to repair or replace personal property or to repair faulty systems.  Many also have personal property that has been damaged, but not yet replaced.  I have evaluated documentation and information in order to detail such expenses and damages for each Priority Claimant as reflected in the corresponding ***EXHIBITS 1 – 20***.  The exhibits provide indication of this detail based on the best evidence available as is identified for each component, along with reference to the source information.

   iii.   ***Additional Damages***

20.   I have evaluated documentation and information in order to identify and quantify Additional Damages incurred by some Priority Claimants. These damages include lost rental income from affected properties, legal fees and costs in connection with foreclosures, short-sales or bankruptcy, and in one case additional living expenses and travel costs incurred by a Claimant because he needed to return to work.

   iv.   ***Loss of Use and Enjoyment***

21.   I have not been asked to provide an opinion to quantify the Priority Claimants' damages for the Loss of Use and Enjoyment of the Affected Properties

*Eduardo and Carmen Amorin, et al. v. Taishan Gypsum Co. Ltd., et al. – Priority Claimant Trial*
Expert Witness Report of Michael P. Elkin, February 15, 2019

### v.    *Lost Equity*

22.    Counsel requested that I determine the net investment capital certain Claimants have paid for the Affected Property. That is, the amount of money that was paid directly by Claimant through deposits, funds at closing, payments of principal on mortgages, or capital improvements, less any funds received by the Claimant through the sale of the Affected Property. This net outlay is referred to as Lost Equity. This calculation has been made for Claimants whose homes were foreclosed, sold through a short-sale, or sold as a sale in mitigation[8] and is reflected in ***EXHIBITS 1 – 20***.

### vi.    *Diminution in Value/Stigma*

23.    I have not been asked to perform any analysis or provide any opinions in connection with the diminution in value or stigma of the Affected Properties. I understand that evidence will be provided by another expert. Counsel has represented to me that the amounts will be provided to me by that expert at a later date.

### D.    *Punitive Damages*

24.    I have not been asked to perform any analysis or provide any opinions in connection with potential punitive damages.

### E.    *Prejudgment Interest*

25.    I was asked by Counsel to calculate prejudgment interest amounts as an aid for the judge or trier of fact should it be determined that prejudgment interest is awardable for any or all components of damage. I am not providing an opinion regarding whether such interest is a legal remedy in this matter. I understand that such conclusion is a matter for the court.

---

[8] Counsel refers to homes that were sold outside of foreclosure or short-sale as sales in mitigation as Claimants contend that such sales were made at amounts below what they should have sold for but-for the Chinese Drywall circumstances.

Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 33 of 802
Case 1:11-cv-22408-MGC Document 272-1 Entered on FLSD Docket 03/15/2019 Page 12 of
262

*Eduardo and Carmen Amorin, et al. v. Taishan Gypsum Co. Ltd., et al. – Priority Claimant Trial*
Expert Witness Report of Michael P. Elkin, February 15, 2019

26.   I have evaluated the nature and timing of the various damage components and I have
      calculated potential prejudgment interest for each Priority Claimant as reflected in the
      corresponding ***EXHIBITS 1 – 20***. I calculated prejudgment interest using the Florida
      statutory interest rates[9] following the simple interest method (i.e., not compounded) to
      calculate statutory interest for each element of damage, on a claim by claim basis.

27.   The period of prejudgment interest has been calculated to begin at a date corresponding
      with the date costs or damages were incurred and to end on July 22, 2019, the anticipated
      date of trial.   Because the timing of invoice dates, credit card posting dates and check
      posting dates can vary from the date costs are actually funded, I used a measurement date
      30 days after the corresponding date on the supporting documentation.   This is believed to
      be conservative in that it likely understates the timing of such payments and thus provides a
      more conservative (lower) interest amount.   I made various assumptions regarding the
      measurement date for some items, as denoted in the exhibits.   Ultimately, I expect that the
      court will determine which elements of damage, if any, are subject to prejudgment interest,
      and will determine the relevant measurement dates.

28.   The detail of these calculations are arranged in such a way to facilitate easy removal of any
      interest on any component of damage either not included in an ultimate damage award, or
      determined not to be subject to prejudgment interest.

---

[9] Historical Florida Judgment Interest Rates located at *https://www.myfloridacfo.com/Division/AA/Vendors/* and
*http://www.myfloridacfo.com/Division/AA/Vendors/JudgmentInterestRates.htm*

*Eduardo and Carmen Amorin, et al. v. Taishan Gypsum Co. Ltd., et al. – Priority Claimant Trial*
Expert Witness Report of Michael P. Elkin, February 15, 2019

**F.** **_Set-offs, Settlement Payments Received, and Collateral Sources_**

29. I was not asked by Counsel to address potential reductions in damages in connection with potential set-offs, settlement payments received by Claimants or other collateral sources. I understand that the applicability of these items is a matter for the court.

## V. PENDING DISCOVERY AND ASSIGNMENT CONTINUATION

30. The results of any further discovery in this matter may warrant updates or modifications of the conclusions reached herein and/or an expansion of the scope of this engagement, such as the line item damages to be provided by other experts. KR anticipates generating additional exhibits for use at trial. KR may also proceed with additional work as may be requested prior to trial.

## VI. FEES

31. Kaufman, Rossin & Co. will be compensated based upon the various levels of skill and responsibility required at the standard hourly billing rates of the individuals providing services in this matter plus administrative and out-of-pocket expenses. The billing rate for Michael Elkin's time is currently $575 per hour. The billing rates for other employees of Kaufman, Rossin & Co. that may work on this matter currently range from $85 per hour to $575 per hour.

Respectfully submitted,

_____
Michael P. Elkin, CPA/CFF/ABV, CFE
February 19, 2019

Attachment A
Documents and Other Information Considered - All Claimants

*Chinese Drywall Litigation Involving Priority Claimants*

|  |  |  | | *Bate Stamp (if applicable)* |
|---|---|---|---|---|
| No. | Claimant | General Description | First Page | Last Page |
| A. Pleadings and Other Legal Documents: |||||
| 1 | All | Judge Cooke's Order, dated November 16, 2018 | | |
| 2 | Avery | Priority Claimant Janet Avery Answers to Interrogatories, dated November 30, 2018 | | |
| 3 | Avery | Priority Claimant Janet Avery Answers to Defendant's Second Set of Interrogatories, dated November 30, 2018 | | |
| 4 | Avery | December 4, 2018 | | |
| 5 | Avery | Janet Avery Second Amended Supplemental Profile Plaintiff Profile Form, dated November 30, 2018 | | |
| 6 | Chatmon | Priority Claimant Lillian Chatmon Answers to Interrogatories, dated November 30, 2018 | | |
| 7 | Chatmon | Priority Claimant Lillian Chatmon Answers to Defendant's Second Set of Interrogatories, dated December 4, 2018 | | |
| 8 | Chatmon | Lillian Chatmon Second Amended Supplemental Profile Plaintiff Profile Form, dated November 30, 2018 | | |
| 9 | Deeg/Hooker | (Deposition Exhibit 11) | | |
| 10 | Deeg/Hooker | 2019 (Doc ID. 366723) | | |
| 11 | Deeg/Hooker | 351799) | | |
| 12 | Etter | Claimant Cathy Etter Answers to Interrogatories, dated November 30, 2018 | | |
| 13 | Etter | Priority Claimant Steven Etter Answers to Interrogatories, dated November 30, 2018 | | |
| 14 | Etter | Claimant Cathy Etter Answers to Defendant's Second Set of Interrogatories, dated December 4, 2018 | | |
| 15 | Etter | Priority Claimant Steven Etter Answers to Defendant's Second Set of Interrogatories, dated December 4, 2018 | | |
| 16 | Etter | Priority Claimant Steven Etter Supplemental Plaintiff Profile Form, dated December 13, 2018 (Doc ID. 366581) | | |
| 17 | Feldkamp | Priority Claimant Andrew Feldkamp Answers to Interrogatories, dated November 30, 2018 | | |
| 18 | Feldkamp | 2018 | | |
| 19 | Feldkamp | Priority Claimant Dawn Feldkamp Answers to Interrogatories, dated November 30, 2018 | | |
| 20 | Feldkamp | 2018 | | |
| 21 | Feldkamp | Priority Claimant Andrew Feldkamp First Amended Answers to Interrogatories, dated December 12, 2018 | | |
| 22 | Feldkamp | Priority Claimant Dawn Feldkamp First Amended Answers to Interrogatories, dated December 12, 2018 | | |
| 23 | Feldkamp | Andrew Feldkamp First Amended Supplemental Plaintiff Profile Form, dated December 5, 2018 | | |
| 24 | Foster | Priority Claimant Vicki Foster First Amended Answers to Interrogatories, dated January 10, 2019 | | |
| 25 | Foster | Priority Claimant William Foster First Amended Answers to Interrogatories, dated January 10, 2019 | | |
| 26 | Foster | December 4, 2018 | | |
| 27 | Foster | December 4, 2018 | | |
| 28 | Foster | William Foster Fourth Amended Supplemental Profile Plaintiff Profile Form, dated December 6, 2018 | | |
| 29 | Foster | Priority Claimant William Foster Answers to Interrogatories, dated November 30, 2018 | | |
| 30 | Foster | Priority Claimant William Foster Answers to Defendant's Second Set of Interrogatories, dated November 30, 2018 | | |
| 31 | Foster | Priority Claimant Vicki Foster Answers to Interrogatories, dated November 30, 2018 | | |
| 32 | Foster | Priority Claimant Vicki Foster Answers to Defendant's Second Set of Interrogatories, dated November 30, 2018 | | |

Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 36 of 802
Case 1:11-cv-22408-MGC Document 272-1 Entered on FLSD Docket 03/13/2019 Page 15 of
262

Attachment A
Documents and Other Information Considered - All Claimants

*Chinese Drywall Litigation Involving Priority Claimants*

<div style="text-align: right;">*Bate Stamp (if applicable)*</div>

| No. | Claimant | General Description | First Page | Last Page |
|-----|----------|---------------------|------------|-----------|
| 33 | Gody | Priority Claimant Candace Gody Answers to Interrogatories, dated November 30, 2018 | | |
| 34 | Gody | 2018 | | |
| 35 | Gody | Candace Gody Fourth Amended Supplemental Profile Plaintiff Profile Form, dated December 11, 2018 | | |
| 36 | Gody | December 11, 2018 | | |
| 37 | Griffin | Claimant David Griffin Answers to Interrogatories - Amended, dated December 4, 2018 | | |
| 38 | Griffin | Claimant Diane Griffin Answers to Defendant's Second Set of Interrogatories, dated December 4, 2018 | | |
| 39 | Griffin | Claimant Diane Griffin Supplemental Plaintiff Profile Form | | |
| 40 | Hernandez | Plaintiff John Hernandez Answers to Interrogatories, dated November 30, 2018 | | |
| 41 | Hernandez | Plaintiff Bertha Hernandez Answers to Interrogatories, dated November 30, 2018 | | |
| 42 | Hernandez | Plaintiff John Hernandez Supplemental Plaintiff Profile Form - Amended | | |
| 43 | Hernandez | Bertha Hernandez Answers to Interrogatories, dated November 30, 2018 | | |
| 44 | Hernandez | Bertha Hernandez Answers to Defendant's Second Set of Interrogatories, dated December 4, 2018 | | |
| 45 | Hernandez | Bertha Hernandez Answers to Defendant's 1st Request for Production - Amended, dated January 14, 2019 | | |
| 46 | Hernandez | Bertha Hernandez Answers to Defendant's 2nd Request for Production - Amended, dated January 14, 2019 | | |
| 47 | Hernandez | John Hernandez Answers to Defendant's Second Set of Interrogatories, dated December 4, 2018 | | |
| 48 | Hernandez | John Hernandez Answers to Defendant's 1st Request for Production - Amended, dated January 14, 2019 | | |
| 49 | Hernandez | John Hernandez Answers to Interrogatories, dated November 30, 2018 | | |
| 50 | Hernandez | John Hernandez Answers to Defendant's 2nd Request for Production - Amended, dated January 14, 2019 | | |
| 51 | Lalwani | Plaintiff Deborah Lalwani Answers to Interrogatories, dated November 30, 2018 | | |
| 52 | Lalwani | Plaintiff Gul Lalwani Answers to Interrogatories, dated November 30, 2018 | | |
| 53 | Lalwani | Plaintiff Gul Lalwani Supplemental Plaintiff Profile Form - Amended | | |
| 54 | Lalwani | January 14, 2019 | | |
| 55 | Lalwani | Documents, dated January 14, 2019 | | |
| 56 | Lalwani | January 14, 2019 | | |
| 57 | Lalwani | dated January 14, 2019 | | |
| 58 | Lalwani | Deborah Lalwani Response to Defendants' Second Set of Interrogatories, dated December 4, 2018 | | |
| 59 | Lalwani | Deborah Lalwani Response to Defendants' Interrogatories, dated November 30, 2018 | | |
| 60 | Lalwani | Gul Lalwani Response to Defendants' Interrogatories, dated November 30, 2018 | | |
| 61 | Lalwani | Gul Lalwani Response to Defendants' Second Set of Interrogatories, dated December 4, 2018 | | |
| 62 | Marin | Plaintiff Cassandra Marin Answers to Interrogatories, dated November 30, 2018 | | |
| 63 | Marin | Plaintiff Cassandra Marin Supplemental Plaintiff Profile Form, dated | | |
| 64 | Marin | January 14, 2019 | | |
| 65 | Marin | Documents, dated January 14, 2019 | | |

Attachment A
Documents and Other Information Considered - All Claimants

*Chinese Drywall Litigation Involving Priority Claimants*

*Bate Stamp (if applicable)*

| No. | Claimant | General Description | First Page | Last Page |
|-----|----------|---------------------|------------|-----------|
| 66 | Marin | Cassandra Marin Response to Defendants' Interrogatories, dated November 30, 2018 | | |
| 67 | Marin | 2018 | | |
| 68 | Marin | Cassandra Marin Response to Defendants' Request For Production of Documents, dated November 30, 2018 | | |
| 69 | Marin | Cassandra Marin Response to Defendants' Second Set of Interrogatories, dated December 4, 2018 | | |
| 70 | Martinez | Priority Claimant Dailny Martinez Answers to Interrogatories, dated November 30, 2018 | | |
| 71 | Martinez | Priority Claimant Dailny Martinez Answers to Defendant's Second Set of Interrogatories, dated December 4, 2018 | | |
| 72 | Martinez | Priority Claimant Dailny Martinez First Amended Answers to Interrogatories, dated December 13, 2018 | | |
| 73 | Martinez | Dailny Martinez First Amended Supplemental Plaintiff Profile Form, dated December 4, 2018 | | |
| 74 | Miranda | Plaintiff Jose Miranda Answers to Interrogatories, dated November 30, 2018 | | |
| 75 | Miranda | Plaintiff Jose Miranda Supplemental Plaintiff Profile Form - Amended, dated | | |
| 76 | Miranda | Plaintiff Adela Miranda Answers to Interrogatories, dated November 30, 2018 | | |
| 77 | Nguyen | Priority Claimant Tracy Nguyen Answers to Interrogatories, dated November 30, 2018 | | |
| 78 | Nguyen | Priority Claimant Tracy Nguyen Answers to Interrogatories - 2nd Amended, dated | | |
| 79 | Nguyen | Priority Claimant Tracy Nguyen Answers to Defendant's Second Set of Interrogatories, dated | | |
| 80 | Nguyen | November 30, 2018 | | |
| 81 | Nguyen | Tracy Nguyen Third Amended Supplemental Profile Plaintiff Profile Form, dated January 8, 2019 | | |
| 82 | Nunez | Plaintiff Jeovany Nunez Answers to Interrogatories, dated November 30, 2018 | | |
| 83 | Nunez | Plaintiff Jeovany Nunez Answers to Interrogatories, dated November 30, 2018 | | |
| 84 | Nunez | Plaintiff Jeovany Nunez Supplemental Plaintiff Profile Form - Amended, dated | | |
| 85 | Nunez | January 14, 2019 | | |
| 86 | Nunez | dated January 14, 2019 | | |
| 87 | Nunez | January 14, 2019 | | |
| 88 | Nunez | dated January 14, 2019 | | |
| 89 | Nunez | Jeovany Nunez Response to Defendants' Second Set of Interrogatories, dated December 4, 2018 | | |
| 90 | Nunez | Monica Nunez Response to Defendants' Second Set of Interrogatories, dated December 4, 2018 | | |
| 91 | O'Brien | Priority Claimant Kelly O'Brien Answers to Interrogatories, dated | | |
| 92 | O'Brien | Priority Claimant Kelly O'Brien Answers to Defendant's Second Set of Interrogatories, dated | | |
| 93 | O'Brien | Priority Claimant Lori O'Brien Answers to Interrogatories, dated | | |
| 94 | O'Brien | Priority Claimant Lori O'Brien Answers to Defendant's Second Set of Interrogatories, dated | | |
| 95 | O'Brien | Kelly O'Brien First Amended Supplemental Plaintiff Profile Form, dated December 5, 2018 | | |
| 96 | Rosen-MR | Claimant Michael & Robyn Rosen Answers to Interrogatories - Amended | | |
| 97 | Rosen-MR | 2018 | | |
| 98 | Rosen-MR | Claimant Michael & Robyn Rosen Supplemental Plaintiff Profile Form | | |

Attachment A
Documents and Other Information Considered - All Claimants

*Chinese Drywall Litigation Involving Priority Claimants*

*Bate Stamp (if applicable)*

| No. | Claimant | General Description | First Page | Last Page |
|-----|----------|---------------------|------------|-----------|
| 99 | Rosen-KS | Claimant Kevin & Stacey Rosen Answers to Interrogatories - Amended | | |
| 100 | Rosen-KS | Claimant Kevin & Stacey Rosen Answers to Defendant's Second Set of Interrogatories, dated December 4, 2018 | | |
| 101 | Rosen-KS | Claimant Kevin & Stacey Rosen Supplemental Plaintiff Profile Form | | |
| 102 | Walls | Priority Claimant Rosalee Walls Answers to Interrogatories, dated | | |
| 103 | Walls | Priority Claimant Rosalee Walls Answers to Defendant's Second Set of Interrogatories, dated | | |
| 104 | Walls | Priority Claimant Larry Walls Answers to Interrogatories, dated | | |
| 105 | Walls | Priority Claimant Larry Walls Answers to Defendant's Second Set of Interrogatories, dated | | |
| 106 | Walls | Larry Walls Third Amended Supplemental Profile Plaintiff Profile Form, dated December 10, 2018 | | |
| 107 | Walls | Priority Claimant Larry Walls First Amended Answers to Interrogatories, dated December 10, 2018 | | |
| 108 | Walls | Priority Claimant Rosalee Walls First Amended Answers to Interrogatories, dated December 10, 2018 | | |
| 109 | Wites | Claimant Jennifer Wites Answers to Defendant's Second Set of Interrogatories, dated December 4, 2018 | | |
| 110 | Wites | Claimant Marc Wites Answers to Defendant's Second Set of Interrogatories, dated December 4, 2018 | | |
| 111 | Wites | Claimant Jennifer Wites Answers to Defendant's Interrogatories, dated November 30, 2018 | | |
| 112 | Wites | Claimant Marc Wites Answers to Defendant's Interrogatories, dated November 30, 2018 | | |
| 113 | Wites | Claimant Marc Wites Supplemental Plaintiff Profile Form | | |

B. Depositions & Corresponding Exhibits:

| | | | | |
|-----|----------|---------------------|------------|-----------|
| 1 | Avery | Deposition Transcript of Janet Avery, dated December 7, 2018 | | |
| 2 | Avery | Deposition Exhibit 01 - Lee County Property Appraiser - Online Parcel Inquiry - Property Data | | |
| 3 | Avery | Deposition Exhibit 02 - Priority Claimant Janet Avery's Answers to Defendants' Second Set of Interrogatories | | |
| 4 | Avery | Deposition Exhibit 03 - Priority Claimant Janet Avery's Answers to Interrogatories | | |
| 5 | Avery | Deposition Exhibit 04 - Floor Plan | | |
| 6 | Avery | Deposition Exhibit 05 - Drywall Inspection Report - Kross Inspectors | | |
| 7 | Avery | Deposition Exhibit 06 - Ericksons's Drying Systems - Chinese Drywall Inspection | | |
| 8 | Avery | Deposition Exhibit 07 - Mortgage | | |
| 9 | Avery | Deposition Exhibit 08 - ACE - Fifth Third Bank | | |
| 10 | Avery | Deposition Exhibit 09 - Claim of Lien | | |
| 11 | Avery | Deposition Exhibit 10 - Notice of Lis Pendens | | |
| 12 | Avery | Deposition Exhibit 11 - U.S. Department of Housing and Urban Development - Settlement Statement | | |
| 13 | Avery | Deposition Exhibit 12 - Release of Mortgage | | |
| 14 | Avery | Deposition Exhibit 13 - Second Amended Supplemental Plaintiff Profile Form | | |
| 15 | Avery | Deposition Exhibit 14 - Chinese Drywall Settlement Program - Copies of Checks | | |
| 16 | Avery | Deposition Exhibit 15 - Note - 10671 Camarelle Circle | | |
| 17 | Avery | Deposition Exhibit 16 - Affidavit of Madeline Davis | | |
| 18 | Chatmon | Deposition Transcript of Lillian Chatmon, dated January 14, 2019 | | |

Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/03/19 Page 39 of 802
Case 1:11-cv-22408-MGC Document 272-1 Entered on FLSD Docket 08/15/2019 Page 18 of
262

Attachment A
Documents and Other Information Considered - All Claimants

*Chinese Drywall Litigation Involving Priority Claimants*

|  |  |  | Bate Stamp (if applicable) | |
| No. | Claimant | General Description | First Page | Last Page |
| --- | --- | --- | --- | --- |
| 19 | Chatmon | Deposition Exhibit 01 - Corporate Warranty Deed | Chatmon_000051 | Chatmon_000051 |
| 20 | Chatmon | Deposition Exhibit 02 - US Bank Home Mortgage Account Statement | Chatmon_000092 | Chatmon_000093 |
| 21 | Chatmon | Deposition Exhibit 03 - US Bank Home Mortgage Account Statement | Chatmon_000058 | Chatmon_000091 |
| 22 | Chatmon | Deposition Exhibit 04 - Hillsborough County Property Appraiser Property Records | Chatmon_000052 | Chatmon_000054 |
| 23 | Chatmon | Deposition Exhibit 05 - Koss Inspectors Inspection Report Dated 1/27/2010 | Chatmon_000094 | Chatmon_000102 |
| 24 | Chatmon | Deposition Exhibit 06 - Plaintiff Profile Form - Residential Properties | Chatmon_000037 | Chatmon_000050 |
| 25 | Chatmon | Deposition Exhibit 07 - Builder Defendant Profile Form | Chatmon_000171 | Chatmon_000223 |
| 26 | Chatmon | Deposition Exhibit 08 - JJ Staten Homes LLC, Corrosive Drywall Remediation Contract dated 10/2/2018 | Chatmon_000161 | Chatmon_000170 |
| 27 | Chatmon | Deposition Exhibit 09 - Alternative Living Expenses Documentation | Chatmon_000120 | Chatmon_000160 |
| 28 | Chatmon | Deposition Exhibit 10 - Chinese Drywall Settlement Program MDL 2047 Other Loss Eligibility Notice Dated 1/19/2015 | | |
| 29 | Chatmon | Deposition Exhibit 11 - Chinese Drywall Settlement Program Check Copies | Chatmon_000224 | Chatmon_000229 |
| 30 | Chatmon | Deposition Exhibit 12 - Priority Claimant Lillian Chatmon's Answers to Interrogatories | Chatmon_000027 | Chatmon_000031 |
| 31 | Chatmon | Deposition Exhibit 13 - Loss of Use/Loss of Enjoyment | Chatmon_000103 | Chatmon_000111 |
| 32 | Chatmon | Deposition Exhibit 14 - Second Amended Plaintiff Profile Form | Chatmon_000016 | Chatmon_000022 |
| 33 | Chatmon | Deposition Exhibit 15 - Sabal Pointe Townhomes POA Transaction History | Chatmon_000115 | Chatmon_000119 |
| 34 | Chatmon | Deposition Exhibit 16 - Florida Building Engineering & Inspections Chinese Drywall Inspection Report dated 12/2/2009 | | |
| 35 | Deeg/Hooker | Deposition Transcript of David Deeg, dated January 3, 2019 | | |
| 36 | Deeg/Hooker | Deposition Transcript of Deborah Hooker, dated January 3, 2019 | | |
| 37 | Deeg/Hooker | Deposition Exhibit 01 - Special Warranty Deed | DEEG000027 | DEEG000028 |
| 38 | Deeg/Hooker | Deposition Exhibit 02 - Contract for Purchase and Sale | DEEG000029 | DEEG000054 |
| 39 | Deeg/Hooker | Deposition Exhibit 03 - National Property Inspections Square Footage Affidavit | DEEG000005 | DEEG000024 |
| 40 | Deeg/Hooker | Deposition Exhibit 04 - Plaintiff Profile Form - Residential Properties | Deeg-Hooker000001 | Deeg-Hooker000096 |
| 41 | Deeg/Hooker | Deposition Exhibit 05 - Supplemental Plaintiff Profile Form | | |
| 42 | Deeg/Hooker | Deposition Exhibit 06 - Chinese Drywall Screening Report dated 11/9/2010 | DEEG000145 | DEEG000178 |
| 43 | Deeg/Hooker | Deposition Exhibit 07 - Personal Property Loss | DEEG000058 | DEEG000069 |
| 44 | Deeg/Hooker | Deposition Exhibit 08 - Duraclean Restoration & Remediation Estimate dated 3/9/2010 | DEEG000070 | DEEG000144 |
| 45 | Deeg/Hooker | Deposition Exhibit 09 - Copies of Checks | DEEG000222 | DEEG000225 |
| 46 | Deeg/Hooker | Deposition Exhibit 10 - Letter Titled History of Property | | |
| 47 | Deeg/Hooker | Deposition Exhibit 11 - Claimant, Deborah Hooker's Unverified Answers to Defendants' Interrogatories | | |
| 48 | Deeg/Hooker | Deposition Exhibit 12 - Page from Martin County Property Appraiser Website pertaining to 516 SW Akron Avenue, Stuart, Florida | | |
| 49 | Deeg/Hooker | Deposition Exhibit 13 - Page from Martin County Property Appraiser Website pertaining to 516 SW Akron Avenue, Stuart, Florida | | |
| 50 | Etter | Deposition Transcript of Cathy Etter, dated January 11, 2019 | | |
| 51 | Etter | Deposition Transcript of Steven Etter, dated January 11, 2019 | | |

Attachment A
Documents and Other Information Considered - All Claimants

*Chinese Drywall Litigation Involving Priority Claimants*

<div align="right">Bate Stamp (if applicable)</div>

| No. | Claimant | General Description | First Page | Last Page |
|-----|----------|--------------------|------------|-----------|
| 52 | Etter | Deposition Exhibit 01 - Special Warranty Deed | | |
| 53 | Etter | Deposition Exhibit 02 - AIA Document A101-1997 Standard Form of Agreement | ETTER000018 | ETTER000027 |
| 54 | Etter | Deposition Exhibit 03 - Seacoast National Bank Loan Statement | | |
| 55 | Etter | Deposition Exhibit 04 - Matin County, Florida - Laurel Kelly, C.F.A - Summary | | |
| 56 | Etter | Deposition Exhibit 05 - IMR Test Labs - Analysis of Drywall Sample | CDWIND01-006020 | CDWIND01-006023 |
| 57 | Etter | Deposition Exhibit 06 - Declaration of Correctness of Square Footage on Chinese Drywall Clients Property for Remediation Damages | | |
| 58 | Etter | Deposition Exhibit 07 - Floor Plan and Site Plan - Lot 4 Emerald Harbour, Martin County, Florida | | |
| 59 | Etter | Deposition Exhibit 08 - Plaintiff Profile Form - Residential Properties | ETTER000001 | ETTER000035 |
| 60 | Etter | Deposition Exhibit 09 - January 4, 2019 Letter and September 18, 2012 Settlement Agreement and Release Between the Etters and USAA | | |
| 61 | Etter | Deposition Exhibit 10 - May 8, 2013 Letter, Check, and Confidential Settlement and General Release Agreement (Etters and J. Helm Construction) | ETTER000082 | ETTER000093 |
| 62 | Etter | Deposition Exhibit 11 - Photographs | Taishan000026 | Taishan000029 |
| 63 | Etter | Deposition Exhibit 12 - November 5, 2010 Chinese Drywall Screening, LLC Report Summary | | |
| 64 | Etter | Deposition Exhibit 13 - Chinese Drywall Screening, LLC Evidence Preservation Report | | |
| 65 | Etter | Deposition Exhibit 14 - Supplemental Plaintiff Profile Form - Residential and Commercial Properties (Non-Knauf) | | |
| 66 | Etter | Deposition Exhibit 15 - Christian Thomas Construction, Inc. Remediation Cost of Repairs | | |
| 67 | Etter | Deposition Exhibit 16 - Spreadsheets - Total Costs Directly Related to Chinese Drywall Remediation of the Etter Property | | |
| 68 | Etter | Deposition Exhibit 17 - Invoices | ETTER000021 | ETTER000081 |
| 69 | Etter | Deposition Exhibit 18 - Priority Claimant, Steven Etter's Answers to Defendants' Interrogatories | | |
| 70 | Feldkamp | Deposition Transcript of Andrew Feldkamp, dated December 13, 2018 | | |
| 71 | Feldkamp | Deposition Transcript of Dawn Feldkamp, dated December 13, 2018 | | |
| 72 | Feldkamp | Deposition Exhibit 01 - "As Is" Contract for Sale and Purchase | | |
| 73 | Feldkamp | Deposition Exhibit 02 - Lee County Property Appraiser - Online Parcel Inquiry - Property Data | | |
| 74 | Feldkamp | Deposition Exhibit 03 - Plaintiff Profile Form - Residential Properties | Feldkamp,D0001 | Feldkamp,D0023 |
| 75 | Feldkamp | Deposition Exhibit 04 - Comprehensive Building Consultants Confidential Chinese Drywall Inspection Report | | |
| 76 | Feldkamp | Deposition Exhibit 05 - Important Taishan Notice - Supplemental Submission of Evidence for the Taishan Trial Scheduled on April 28, 2015 | | |
| 77 | Feldkamp | Deposition Exhibit 06 - Priority Claimant Andrew Feldkamp's First Amended Answers to Interrogatories | | |
| 78 | Feldkamp | Deposition Exhibit 07 - Air-Conditioning Invoices | | |
| 79 | Feldkamp | Deposition Exhibit 08 - First Amended Supplemental Plaintiff Profile Form | | |
| 80 | Feldkamp | Deposition Exhibit 09 - Suncoast Credit Union September 21, 2018 Letter and Check Copies | | |
| 81 | Feldkamp | Deposition Exhibit 10 - Uniform Borrower Assistance | | |
| 82 | Feldkamp | Deposition Exhibit 11 - Notice of Lis Pendens | | |

Attachment A
Documents and Other Information Considered - All Claimants

*Chinese Drywall Litigation Involving Priority Claimants*

|  |  |  | *Bate Stamp (if applicable)* | |
| No. | Claimant | General Description | First Page | Last Page |
|---|---|---|---|---|
| 83 | Feldkamp | Deposition Exhibit 12 - Final Judgment of Foreclosure | | |
| 84 | Feldkamp | Deposition Exhibit 13 - United States Bankruptcy Court Middle District of Florida Voluntary Petition | | |
| 85 | Feldkamp | Deposition Exhibit 14 - Chapter 13 Standing Trustee's Final Report and Account | | |
| 86 | Feldkamp | Deposition Exhibit 04 - Comprehensive Building Consultants Confidential Chinese Drywall Inspection Report | | |
| 87 | Feldkamp | Deposition Exhibit 07 - Air-Conditioning Invoices | | |
| 88 | Foster | Deposition Transcript of William Foster, dated January 8, 2019 | | |
| 89 | Foster | Deposition Transcript of Vicki Foster, dated December 7, 2018 | | |
| 90 | Foster | Deposition Transcript of Vicki Foster, dated January 8, 2019 | | |
| 91 | Foster | Deposition Exhibit 01 - Priority Claimant Vicki Foster's Answers to Interrogatories | | |
| 92 | Foster | Deposition Exhibit 02 - Foster, Vicki and William Damages Spreadsheet - Personal Property Damages | | |
| 93 | Foster | Deposition Exhibit 03 - Miscellaneous Claim Form Worksheet Bates Numbered 000076 to 000089 | F000076 | F000089 |
| 94 | Foster | Deposition Exhibit 04 - Receipts - Bates Numbered 00305 to 000425 | F000305 | F000425 |
| 95 | Foster | Deposition Exhibit 05 - Receipts - Additional Items Replaced When Cost-Effective - Bates Numbered F000905 to F000915 | F000905 | F000915 |
| 96 | Foster | Deposition Exhibit 06 - Receipts - Golf-Related Items - Bates Numbered F000777 to F000782 | F000777 | F000782 |
| 97 | Foster | Deposition Exhibit 07 - Foster, Vicki and William Damages Spreadsheet - Discarded but Not Replaced | | |
| 98 | Foster | Deposition Exhibit 08 - Foster, Vicki and William Damages Spreadsheet - Items Wanting to be Replaced | | |
| 99 | Foster | Deposition Exhibit 09 - October 19, 2011 Polkow Construction Chinese Drywall Remediation Proposal - Bates Numbered 000090 to 000094 | F000090 | F000094 |
| 100 | Foster | Deposition Exhibit 01 - Housing and Utilities Accumulated Due to Having to Return to Work | F000783 | F000791 |
| 101 | Foster | Deposition Exhibit 02 - Receipts/Invoices - Re: Alternative Living Expenses - Bates Numbered F000801 to F000904 | F000801 | F000904 |
| 102 | Foster | 1st Deposition Exhibit 01 - Warranty Deed | | |
| 103 | Foster | 1st Deposition Exhibit 02 - Floor Plan | | |
| 104 | Foster | 1st Deposition Exhibit 03 - Property Listing - Banner Supply | | |
| 105 | Foster | 1st Deposition Exhibit 04 - Allied Home Inspections Report | | |
| 106 | Foster | 1st Deposition Exhibit 05 - Intuitive Environmental Solutions Report | | |
| 107 | Foster | 1st Deposition Exhibit 06 - Polkow Construction Proposal | | |
| 108 | Foster | 1st Deposition Exhibit 07 - Check Copies | | |
| 109 | Foster | 1st Deposition Exhibit 08 - Lease Agreement | | |
| 110 | Foster | 1st Deposition Exhibit 09 - Receipts and Supporting Documents for Replacement Items | | |
| 111 | Foster | 1st Deposition Exhibit 10 - Remediation Checklist | | |
| 112 | Foster | 1st Deposition Exhibit 11 - Additional Receipts and Supporting Documents for Replacement Items | | |
| 113 | Foster | 1st Deposition Exhibit 12 - Lee County Property Appraiser Report | | |
| 114 | Foster | 1st Deposition Exhibit 13 - Plaintiff Profile Form | | |
| 115 | Foster | 1st Deposition Exhibit 14 - Plaintiff Profile Form | | |
| 116 | Foster | 1st Deposition Exhibit 15 - Supplemental Plaintiff Profile Form | | |

Attachment A
Documents and Other Information Considered - All Claimants

*Chinese Drywall Litigation Involving Priority Claimants*

Bate Stamp (if applicable)

| No. | Claimant | General Description | First Page | Last Page |
|-----|----------|---------------------|------------|-----------|
| 117 | Foster | 1st Deposition Exhibit 16 - First Amended Supplemental Plaintiff Profile Form | | |
| 118 | Foster | 1st Deposition Exhibit 17 - Second Amended Supplemental Plaintiff Profile Form | | |
| 119 | Foster | 1st Deposition Exhibit 18 - Third Amended Supplemental Plaintiff Profile Form | | |
| 120 | Foster | 1st Deposition Exhibit 19 - Fourth Amended Supplemental Plaintiff Profile Form | | |
| 121 | Foster | 1st Deposition Exhibit 20 - Miscellaneous Claim Form Worksheets | | |
| 122 | Gody | Deposition Transcript of Candace Gody, dated December 12, 2018 | | |
| 123 | Gody | Acknowledgment of Deponent Candace Gody, dated January 3, 2019 | | |
| 124 | Gody | Errata Sheet Candace Gody, dated January 3, 2019 | | |
| 125 | Gody | Deposition Exhibit 01 - Lee County Property Appraiser - Property Data | | |
| 126 | Gody | Deposition Exhibit 02 - Plaintiff Profile Form - Residential Properties | GodyA00001 | GodyA00026 |
| 127 | Gody | Deposition Exhibit 03 - Kross Inspectors - Inspection Report | | |
| 128 | Gody | Deposition Exhibit 04 - Priority Claimant Candace Gody's Answers to Interrogatories | | |
| 129 | Gody | Deposition Exhibit 05 - Receipts of Section III - Personal Property | | |
| 130 | Gody | Deposition Exhibit 06 - Invoices - Wiegold & Sons, Inc. and Certified Heating and Cooling | | |
| 131 | Gody | Deposition Exhibit 07 - Fourth Amended Supplemental Plaintiff Profile Form | | |
| 132 | Gody | Deposition Exhibit 08 - Receipts for Alternative Living - Section IV | | |
| 133 | Gody | Deposition Exhibit 09 - Photographs | | |
| 134 | Gody | Deposition Exhibit 10 - April 5, 2011 Polkow Construction, Inc. Chinese Drywall Remediation Proposal | | |
| 135 | Gody | Deposition Exhibit 11 - June 28, 2011 Polkow Construction, Inc. Chinese Drywall Remediation Proposal | | |
| 136 | Gody | Deposition Exhibit 12 - Wells Fargo Checks and Statements | | |
| 137 | Gody | Deposition Exhibit 13 - City of Fort Myers - Letter of Completion | | |
| 138 | Gody | Deposition Exhibit 14 - Payments Made for Remediation at 10842 Tiberio Drive, Fort Myers, Florida 33913 | | |
| 139 | Gody | Deposition Exhibit 15 - Excel Spreadsheet - Expenses | | |
| 140 | Gody | Deposition Exhibit 16 - Intuitive Environmental Solutions, LLC Invoice | | |
| 141 | Gody | Deposition Exhibit 17 - July 8, 2011 Intuitive Environmental Solutions, LLC Report | | |
| 142 | Gody | Deposition Exhibit 18 - August 31, 2011 Intuitive Environmental Solutions, LLC Report | | |
| 143 | Gody | Deposition Exhibit 19 - Supplemental Plaintiff Profile Form | | |
| 144 | Gody | Deposition Exhibit 20 - First Amended Supplemental Plaintiff Profile Form | | |
| 145 | Griffin | Deposition Transcript of David Griffin, dated January 8, 2019 | | |
| 146 | Griffin | Deposition Transcript of Diane Griffin, dated January 8, 2019 | | |
| 147 | Griffin | Deposition Exhibit 01 - Letter dated 2/3/2005, Purchase and Sale Agreement | DGRIFFIN000121 | DGRIFFIN000176 |
| 148 | Griffin | Deposition Exhibit 02 - Mortgage | DGRIFFIN000602 | DGRIFFIN000632 |
| 149 | Griffin | Deposition Exhibit 03 - Mortgage | DGRIFFIN000633 | DGRIFFIN000646 |
| 150 | Griffin | Deposition Exhibit 04 - Special Warranty Deed - Book 209481/Page 1426 through Page 1431 | | |
| 151 | Griffin | Deposition Exhibit 05 - Aurora Loan Services Account Statement | DGRIFFIN000119 | DGRIFFIN000120 |
| 152 | Griffin | Deposition Exhibit 06 - Plaintiff Profile Form - Residential Properties | DGRIFFIN000001 | DGRIFFIN000003 |
| 153 | Griffin | Deposition Exhibit 07 - Inspection Report dated 5/11/2010 | DGRIFFIN000199 | DGRIFFIN000200 |

Attachment A
Documents and Other Information Considered - All Claimants

*Chinese Drywall Litigation Involving Priority Claimants*

|  | | | Bate Stamp (if applicable) | |
|---|---|---|---|---|
| No. | Claimant | General Description | First Page | Last Page |
| 154 | Griffin | Deposition Exhibit 08 - Photographs | DGRIFFIN000201 | DGRIFFIN000601 |
| 155 | Griffin | Deposition Exhibit 09 - Palm Beach County Property Appraiser Online Search Information | | |
| 156 | Griffin | Deposition Exhibit 10 - Claimants David and Diane Griffin's Amended Answers to Defendants Interrogatories | | |
| 157 | Griffin | Deposition Exhibit 11 - Supplemental Plaintiff Profile Form - 113 Residential and Commercial Properties (Non-Knauf) | | |
| 158 | Griffin | Deposition Exhibit 12 - Warranty Deed Book 23976/Page 1784 through 1786 | | |
| 159 | Griffin | Deposition Exhibit 13 - Settlement Statement DGRIFFIN - 000179 through 000197 | DGRIFFIN000179 | DGRIFFIN000197 |
| 160 | Griffin | Deposition Exhibit 14 -  Chinese Drywall Settlement Program - Foreclosure and Short Sale Claim Form | | |
| 161 | Griffin | Deposition Exhibit 15 - Plaintiff Profile Form | Griffin, D 0001 | Griffin, D 0006 |
| 162 | Hernandez | Deposition Transcript of John Hernandez, dated December 18, 2018 | | |
| 163 | Hernandez | Deposition Transcript of Bertha Hernandez, dated December 18, 2018 | | |
| 164 | Hernandez | Deposition Exhibit 01 - Warranty Deed | | |
| 165 | Hernandez | Deposition Exhibit 02 - US Department of Housing & Urban Development Settlement Statement Dated 4/1/2008 | | |
| 166 | Hernandez | Deposition Exhibit 03 - Annual Escrow Account Disclosure Statement Projections for Coming Year; Bank Statement Dated 12/12/2009 | Hernandez Dep.0000480 | Hernandez Dep.0000486 |
| 167 | Hernandez | Deposition Exhibit 04 - Warranty Deed Dated 1/11/2017 | | |
| 168 | Hernandez | Deposition Exhibit 05 - Hillsborough County Property Appraiser Property Record Card | | |
| 169 | Hernandez | Deposition Exhibit 06 - Floor Plan | Hernandez.J00007 | Hernandez.J00008 |
| 170 | Hernandez | Deposition Exhibit 07 - Chinese Drywall Screening LLC Drywall Investigation Report dated 1/25/2010 | Hernandez Dep.0000008 | Hernandez Dep.0000021 |
| 171 | Hernandez | Deposition Exhibit 08 - Chinese Drywall Screening LLC Evidence Preservation Report dated 10/31/2013 | Hernandez Dep.0000022 | Hernandez Dep.0000061 |
| 172 | Hernandez | Deposition Exhibit 09 - Environmental Certificate Dated 12/10/2013 | | |
| 173 | Hernandez | Deposition Exhibit 10 - Various Remediation Invoices | Hernandez Dep.0000146 | Hernandez Dep.0000157 |
| 174 | Hernandez | Deposition Exhibit 11 - Check Stubs, Bank Statements and Invoices | 000342 | 000355 |
| 175 | Hernandez | Deposition Exhibit 12 - PLAINTIFF BERTHA HERNANDEZ'S FIRST AMENDED RESPONSE TO DEFENDANTS' INTERROGATORIES | | |
| 176 | Hernandez | Deposition Exhibit 13 - SUPPLEMENTAL PLAINTIFF PROFILE FORM | | |
| 177 | Hernandez | Deposition Exhibit 14 - Residential Lease, Handwritten Notes and Invoices | Hernandez Dep.0000240 | Hernandez Dep.0000246 |
| 178 | Hernandez | Deposition Exhibit 15 - WATER BILLS FROM 9/16/2013 TO 05/19/2015; TECO ELECTRIC BILLS FROM 8/28/2013 TO 5/19/2015 | Hernandez Dep.0000198 | Hernandez Dep.0000239 |
| 179 | Hernandez | Deposition Exhibit 16 - Copies of Checks, Receipts and Bank Statements | 000333 | 000341 |
| 180 | Hernandez | Deposition Exhibit 17 - PLAINTIFF BERTHA HERNANDEZ'S RESPONSE TO DEFENDANTS' REQUEST FOR PRODUCTION OF DOCUMENTS | | |
| 181 | Lalwani | Deposition Transcript of Gul Lalwani, dated January 4, 2019 | | |
| 182 | Lalwani | Deposition Transcript of Deborah Lalwani, dated January 4, 2019 | | |
| 183 | Lalwani | Deposition Transcript of Vance Brinkerhoff, dated January 14, 2019 | | |
| 184 | Lalwani | Deposition Exhibit 01 - New Home Purchase & Construction Agreement | | |

Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/03/19 Page 44 of 802
Case 1:11-cv-22408-MGC Document 272-1 Entered on FLSD Docket 09/18/2019 Page 23 of
262

Attachment A
Documents and Other Information Considered - All Claimants

*Chinese Drywall Litigation Involving Priority Claimants*

*Bate Stamp (if applicable)*

| No. | Claimant | General Description | First Page | Last Page |
|-----|----------|---------------------|------------|-----------|
| 185 | Lalwani | Deposition Exhibit 02 - Letter from GHO Homes dated 9/17/2004 | | |
| 186 | Lalwani | Deposition Exhibit 03 - Letter dated 7/16/2005 | | |
| 187 | Lalwani | Deposition Exhibit 04 - Letter dated 7/19/2005 | | |
| 188 | Lalwani | Deposition Exhibit 05 - Memo from John E. Fuchs of GHO Homes | | |
| 189 | Lalwani | Deposition Exhibit 06 - Chinese Drywall Settlement Program Global, Banner, Inex Repair and relocation expenses claim form, dated 9/30/13 | | |
| 190 | Lalwani | Deposition Exhibit 07 - Letter dated 4/1/2009, with attached Chinese Drywall Screening Property Screen Report dated 3/30/2009 | | |
| 191 | Lalwani | Deposition Exhibit 08 - Chinese Drywall Screening Drywall Investigation Report, dated 11/17/2009 | | |
| 192 | Lalwani | Deposition Exhibit 09 - First Amended Supplemental Plaintiff Profile Form | | |
| 193 | Lalwani | Deposition Exhibit 10 - Supplemental Plaintiff Profile Form | | |
| 194 | Lalwani | Deposition Exhibit 11 - Letter dated 2/21/2012, with attached copies of checks | | |
| 195 | Lalwani | Deposition Exhibit 12 - HUD-1 Settlement Statement, dated 3/11/2011 | | |
| 196 | Lalwani | Deposition Exhibit 13 - Forwarded e-mails dated 8/12/2009 and 8/10/2009 | | |
| 197 | Lalwani | Deposition Exhibit 14 - Information on property at 4590 Kodiak Drive, Vero Beach, Florida 32967 | | |
| 198 | Lalwani | Deposition Exhibit 15 - E-mail string dated 6/15/2010 | | |
| 199 | Lalwani | Deposition Exhibit 16 - E-mail string dated 4/18/2010, with attachments - Proposed Findings of Fact and Conclusions of Law | | |
| 200 | Lalwani | Deposition Exhibit 01 - MLS #117881 for 4590 Kodiak Dr., Vero Beach, 32967 for $550,000 | | |
| 201 | Lalwani | Deposition Exhibit 02 - Status Report - Coldwell Banker Ed Schlitt LC for Indian River MLS#154259 | | |
| 202 | Lalwani | Deposition Exhibit 03 - Status Report - Coldwell Banker Ed Schlitt LC for Property address 4590 Kodiak Drive, Vero Beach, FL 32967 | | |
| 203 | Lalwani | Deposition Exhibit 04 - Status Report - Coldwell Banker Ed Schlitt LC property address 4590 Kodiak Drive, Vero Beach, FL 32967 | | |
| 204 | Lalwani | Deposition Exhibit 05 - Email string ending with 12/29/2018 email from: Deborah Lalwani to: Holly Werkema, subject: Fw: FW:, attachment: Estimate.pdf | | |
| 205 | Lalwani | Deposition Exhibit 06 - Email string ending with 12/29/2018 email from: Deborah Lalwani to: Holly Werkema, subject: Fw: Chinese Drywall | | |
| 206 | Lalwani | Deposition Exhibit 07 - Document titled Findings of Fact & Conclusions of Law In re: Chinese Manufactured Drywall Products Liability Litigation, MDL No. 2047, Section: L, Judge Fallon | | |
| 207 | Marin | Deposition Transcript of Cassandra Marin, dated January 7, 2019 | | |
| 208 | Marin | Deposition Transcript of Yvette Marin, dated January 10, 2019 | | |
| 209 | Marin | Deposition Exhibit 1 - Purchase Agreement | | |
| 210 | Marin | Deposition Exhibit 2 - Declaration of Correctness of Square Footage on Chinese Drywall Client(s) Property for Remediation Damages dated 5/19/2017 | | |
| 211 | Marin | Deposition Exhibit 3 - First Amended Supplemental Plaintiff Profile Form | | |
| 212 | Marin | Deposition Exhibit 4 - Property Screening Report dated 10/28/2009 | | |

Attachment A
Documents and Other Information Considered - All Claimants

*Chinese Drywall Litigation Involving Priority Claimants*

| | | | Bate Stamp *(if applicable)* | |
|---|---|---|---|---|
| No. | Claimant | General Description | First Page | Last Page |
| 213 | Marin | Deposition Exhibit 5 - Chinese Drywall Screening Report dated 6/18/2012 | | |
| 214 | Marin | Deposition Exhibit 6 - Addendum Re: 3865 SW Wycoff Street, Port St. Lucie, FL 34953, signed by Cassandra Marin, and Undated Addendum signed by John O. Jones and Linda S. Pauley | | |
| 215 | Marin | Deposition Exhibit 7 - Domestic Air Conditioning, Inc., Invoice Nos. 8100, 8155, ProMag Energy Group, Inc., Invoice No. 012564 | | |
| 216 | Marin | Deposition Exhibit 8 - Copies of checks from Chinese Drywall Settlement Program | | |
| 217 | Marin | Deposition Exhibit 9 - Addendum No. 1 to the contract dated 8/20/2009 | | |
| 218 | Marin | Deposition Exhibit 10 - "As Is" Residential Contract for Sale and Purchase dated January 16, 2012 | | |
| 219 | Marin | Deposition Exhibit 11 - Plaintiff Cassandra Marin's Response to Defendants' Second Set of Interrogatories | | |
| 220 | Marin | Deposition Exhibit 12 - Verification Page dated 12/4/2018 | | |
| 221 | Martinez | Deposition Transcript of Dailyn Martinez, dated December 14, 2018 | | |
| 222 | Martinez | Acknowledgment of Deponent Dailny Martinez, dated January 15, 2019 | | |
| 223 | Martinez | Errata Sheet Dailny Martinez, dated January 15, 2019 | | |
| 224 | Martinez | Deposition Exhibit 01 - Lee County Property Appraiser - Online Parcel Inquiry - Property Data | | |
| 225 | Martinez | Deposition Exhibit 02 - Plaintiff Profile Form - Residential Properties | MartinezD00001 | MartinezD00013 |
| 226 | Martinez | Deposition Exhibit 03 - Ericksons's Drying Systems - Chinese Drywall Inspection | | |
| 227 | Martinez | Deposition Exhibit 04 - Chinese Drywall Screening, LLC Report | | |
| 228 | Martinez | Deposition Exhibit 05 - Priority Claimant Dailyn Martinez's First Amended Answers to Interrogatories | | |
| 229 | Martinez | Deposition Exhibit 06 - Kawasaki Security Agreement, Buyers Order, and Photographs | | |
| 230 | Martinez | Deposition Exhibit 07 - AG Mechanical, Inc. HVAC Service Order Invoice and Receipt | | |
| 231 | Martinez | Deposition Exhibit 08 - Water Medic of Cape Coral, Inc. Invoices | | |
| 232 | Martinez | Deposition Exhibit 09 - Miscellaneous Claim Form Worksheet and Receipts | | |
| 233 | Martinez | Deposition Exhibit 10 - Chinese Drywall Settlement Program Check Copies | | |
| 234 | Martinez | Deposition Exhibit 11 - D.E. Foeller Sales, Inc. Invoice - RV | | |
| 235 | Martinez | Deposition Exhibit 12 - 2011 Northeast 17th Place Rental Receipts | | |
| 236 | Martinez | Deposition Exhibit 13 - First Amended Supplemental Plaintiff Profile Form | | |
| 237 | Martinez | Deposition Exhibit 14 - Chinese Drywall Experts, LLC Contract Quote | | |
| 238 | Martinez | Deposition Exhibit 15 - Gabisa Construction, Inc. Estimates | | |
| 239 | Miranda | Deposition Transcript of Adela Miranda, dated December 22, 2018 | | |
| 240 | Miranda | Deposition Transcript of Jose Miranda, dated December 22, 2018 | | |
| 241 | Miranda | Deposition Exhibit 01 - Plaintiff Jose Miranda's First Amended Response to Defendants' Second Set of Interrogatories | | |
| 242 | Miranda | Deposition Exhibit 02 - Property Search Miami-Dade County Office of the Property Appraiser Summary Report | | |
| 243 | Miranda | Deposition Exhibit 03 - Third Amended Supplemental Plaintiff Profile Form | | |
| 244 | Miranda | Deposition Exhibit 04 - Certificate of Title | | |
| 245 | Miranda | Deposition Exhibit 01 - U.S. Department of Housing and Urban Development - Settlement Statement | | |

Attachment A
Documents and Other Information Considered - All Claimants

*Chinese Drywall Litigation Involving Priority Claimants*

*Bate Stamp (if applicable)*

| No. | Claimant | General Description | First Page | Last Page |
|-----|----------|---------------------|------------|-----------|
| 246 | Miranda | Deposition Exhibit 02 - Trial Loan Document Scan Sheet | | |
| 247 | Miranda | Deposition Exhibit 03 - Declaration of Correctness of Square Footage on Chinese Drywall Client(s) Property for Remediation Damages | | |
| 248 | Miranda | Deposition Exhibit 04 - Property Search Application - Miami-Dade County Property Information | | |
| 249 | Miranda | Deposition Exhibit 05 - Third Amended Supplemental Plaintiff Profile Form | | |
| 250 | Miranda | Deposition Exhibit 06 - Photographs | | |
| 251 | Miranda | Deposition Exhibit 07 - January 15, 2010 Chinese Drywall Screening, LLC Inspection Reports | | |
| 252 | Miranda | Deposition Exhibit 08 - Chinese Drywall Settlement Program Check Copies | | |
| 253 | Miranda | Deposition Exhibit 09 - June 5, 2010 Letter from Wells Fargo Home Mortgage | | |
| 254 | Miranda | Deposition Exhibit 10 - Consent Final Judgment of Foreclosure | | |
| 255 | Miranda | Deposition Exhibit 11 - Attorney Engagement Agreement and Retainer Agreement | | |
| 256 | Miranda | Deposition Exhibit 12 - Plaintiff Jose Miranda's First Amended Response to Defendants' Second Set of Interrogatories | | |
| 257 | Miranda | Deposition Exhibit 13 - Plaintiff Jose Miranda's Response to Defendants' Interrogatories | | |
| 258 | Miranda | Deposition Exhibit 14 - Verification | | |
| 259 | Nguyen | Deposition Transcript of Tracy Nguyen, dated December 6, 2018 | | |
| 260 | Nguyen | Deposition Transcript of Mai Tuyen, dated January 8, 2019 | | |
| 261 | Nguyen | Acknowledgment of Deponent Tracy Nguyen, dated January 8, 2019 | | |
| 262 | Nguyen | Deposition Exhibit 01 - Unlimited Power of Attorney | | |
| 263 | Nguyen | Deposition Exhibit 02 - General Warranty Deed | MaiDepo000026 | MaiDepo000026 |
| 264 | Nguyen | Deposition Exhibit 03 - 2018 Real Estate Informational Notice of Ad Valorem Taxes and Non-Ad Valorem Assessments for Lee County, Florida | MaiDepo000120 | MaiDepo000145 |
| 265 | Nguyen | Deposition Exhibit 04 - Estimate and Payments - Re: Chinese Drywall Remediation | MaiDepo000304 | MaiDepo000332 |
| 266 | Nguyen | Deposition Exhibit 05 - August 23, 2007 Central Aire Conditioning Inc. Invoice | MaiDepo000011 | MaiDepo000011 |
| 267 | Nguyen | Deposition Exhibit 06 - Handwritten Rent Agreement | MaiDepo000013 | MaiDepo000013 |
| 268 | Nguyen | Deposition Exhibit 07 - Two Handwritten Receipts for Rent | MaiDepo000014 | MaiDepo000014 |
| 269 | Nguyen | Deposition Exhibit 08 - Special Warranty Deed | MaiDepo000333 | MaiDepo000335 |
| 270 | Nguyen | Deposition Exhibit 09 - Settlement Statement (HUD-1) | MaiDepo000336 | MaiDepo000344 |
| 271 | Nguyen | Deposition Exhibit 10 - Plaintiff Profile Form - Residential Properties | NguyenT00001 | NguyenT00039 |
| 272 | Nguyen | Deposition Exhibit 11 - Supplemental Plaintiff Profile Form | MaiDepo000022 | MaiDepo000029 |
| 273 | Nguyen | Deposition Exhibit 12 - First Amended Supplemental Plaintiff Profile Form | MaiDepo000030 | MaiDepo000036 |
| 274 | Nguyen | Deposition Exhibit 13 - Quitclaim Deed | | |
| 275 | Nguyen | Deposition Exhibit 01 - General Warranty Deed | NguyenT00039 | NguyenT00039 |
| 276 | Nguyen | Deposition Exhibit 02 - Legend Custom Builders, Inc. Change Order | | |
| 277 | Nguyen | Deposition Exhibit 03 - Mortgage | | |
| 278 | Nguyen | Deposition Exhibit 04 - 2018 Real Estate Informational Notice of Ad Valorem Taxes and Non-Ad Valorem Assessments for Lee County, Florida | | |

Attachment A
Documents and Other Information Considered - All Claimants

*Chinese Drywall Litigation Involving Priority Claimants*

*Bate Stamp (if applicable)*

| No. | Claimant | General Description | First Page | Last Page |
|-----|----------|---------------------|------------|-----------|
| 279 | Nguyen | Deposition Exhibit 05 - Handwritten Rent Agreement | | |
| 280 | Nguyen | Deposition Exhibit 06 - Rent Receipts | | |
| 281 | Nguyen | Deposition Exhibit 07 - Settlement Statement (HUD-1) | | |
| 282 | Nguyen | Deposition Exhibit 08 - Central Aire Conditioning Inc. Invoice | | |
| 283 | Nguyen | Deposition Exhibit 09 - The Tayler Model Floor Plan | | |
| 284 | Nguyen | Deposition Exhibit 10 - Allied Home Inspections Report | | |
| 285 | Nguyen | Deposition Exhibit 11 - Estimate - J & A Stucco Drywall Inc. | | |
| 286 | Nguyen | Deposition Exhibit 12 - Exhibit B - Environmental Certificate | | |
| 287 | Nguyen | Deposition Exhibit 13 - Drywall Installation Certification | | |
| 288 | Nguyen | Deposition Exhibit 14 - Contractor Certification | | |
| 289 | Nguyen | Deposition Exhibit 15 - Plaintiff Profile Form - Residential Properties | NguyenT00001 | NguyenT00039 |
| 290 | Nguyen | Deposition Exhibit 16 - Supplemental Plaintiff Profile Form | | |
| 291 | Nguyen | Deposition Exhibit 17 - Check Copies - Chinese Drywall Settlement Program | | |
| 292 | Nguyen | Deposition Exhibit 18 - Check Copies - Chinese Drywall Settlement Program | | |
| 293 | Nunez | Deposition Transcript of Jeovany Nunez, dated December 19, 2018 | | |
| 294 | Nunez | Deposition Transcript of Monica Nunez, dated December 19, 2018 | | |
| 295 | Nunez | Errata Sheet Jeovany Nunez, dated December 19, 2018 | | |
| 296 | Nunez | Acknowledgment of Deponent Jeovany Nunez, dated January 11, 2019 | | |
| 297 | Nunez | Deposition Exhibit 01 - Purchase Agreement for Shoma Homes Splendido, a Condominium | | |
| 298 | Nunez | Deposition Exhibit 02 - Warranty Deed | | |
| 299 | Nunez | Deposition Exhibit03 - Declaration of Correctness of Square Footage on Chinese Drywall Client(s) Property for Remediation Damages | | |
| 300 | Nunez | Deposition Exhibit 04 - Miami-Dade County Property Information Report | | |
| 301 | Nunez | Deposition Exhibit 05 - Subcontract Agreement | | |
| 302 | Nunez | Deposition Exhibit 06 - Oscar Air Conditioning, Inc. Invoices | | |
| 303 | Nunez | Deposition Exhibit 07 - Photographs - Air-Conditioning Unit | | |
| 304 | Nunez | Deposition Exhibit 08 - Photographs - Bathroom Faucet Piping | | |
| 305 | Nunez | Deposition Exhibit 09 - Chinese Drywall Screening, LLC March 26, 2010 Report | | |
| 306 | Nunez | Deposition Exhibit 10 - December 22, 2011 Letter from Baron & Budd, P.C. to JP Morgan Chase and Fannie Mae | | |
| 307 | Nunez | Deposition Exhibit 11 - 2012 to 2013 Residential Lease | | |
| 308 | Nunez | Deposition Exhibit 12 - 2014 to 2015 Residential Lease | | |
| 309 | Nunez | Deposition Exhibit 13 - 2016 to 2017 Residential Lease | | |
| 310 | Nunez | Deposition Exhibit 14 - Bank of America Bank Statements | | |
| 311 | Nunez | Deposition Exhibit 15 - Chase Mortgage Loan Payment History | | |
| 312 | Nunez | Deposition Exhibit 16 - First Mortgage | | |
| 313 | Nunez | Deposition Exhibit 17 - Second Mortgage | | |

Attachment A
Documents and Other Information Considered - All Claimants

*Chinese Drywall Litigation Involving Priority Claimants*

|  |  |  | Bate Stamp (if applicable) | |
|---|---|---|---|---|
| No. | Claimant | General Description | First Page | Last Page |
| 314 | Nunez | Deposition Exhibit 18 - June 14, 2010 E-mail from Jeovany Nunez to Steve Bronzy - Subject: Acct: 5304359424 | | |
| 315 | Nunez | Deposition Exhibit 19 - January 5, 2010 E-mail from PNMAC - Subject: Online Draft | | |
| 316 | Nunez | Deposition Exhibit 20 - February 2, 2014 E-mail from PNMAC - Subject: Online Draft | | |
| 317 | Nunez | Deposition Exhibit 21 - In Rem Final Judgment of Foreclosure | | |
| 318 | Nunez | Deposition Exhibit 22 - Certificate of Sale | | |
| 319 | Nunez | Deposition Exhibit 23 - First Amended Supplemental Plaintiff Profile Form | | |
| 320 | Nunez | Deposition Exhibit 24 - Move For Less Quote | | |
| 321 | Nunez | Deposition Exhibit 25 - Plaintiff Jeovany Nunez's Response to Defendants' Interrogatories | | |
| 322 | Nunez | Deposition Exhibit 09 - Chinese Drywall Screening, LLC March 26, 2010 Report | | |
| 323 | Nunez | Deposition Exhibit 08 - First Amended Supplemental Plaintiff Profile Form | | |
| 324 | O'Brien | Deposition Transcript of Lori O'Brien, dated December 17, 2018 | | |
| 325 | O'Brien | Deposition Transcript of Kelly O'Brien, dated December 17, 2018 | | |
| 326 | O'Brien | O'Brien 01 - Plaintiff Profile Form - Residential Properties | OBrienK00001 | OBrienK00021 |
| 327 | O'Brien | O'Brien 02 - Purchase Documents | OBrienDepo000049 | OBrienDepo000071 |
| 328 | O'Brien | O'Brien 03 - Final Statement From Steve R. Carter, Inc., Dated 3/23/2007 | OBrienDepo000319 | OBrienDepo000319 |
| 329 | O'Brien | O'Brien 04 - Mortgage | OBrienDepo000080 | OBrienDepo000087 |
| 330 | O'Brien | O'Brien 05 - Allied Home Inspections Report Dated 2/20/2010 | OBrienDepo000029 | OBrienDepo000035 |
| 331 | O'Brien | O'Brien 06 - Spreadsheet Of Air Conditioning Problems, Invoices | OBrienDepo000036 | OBrienDepo000047 |
| 332 | O'Brien | O'Brien 07 - Photographs | OBrienDepo000167 | OBrienDepo000183 |
| 333 | O'Brien | O'Brien 08 - Affidavit Of Donald Mcdermott Support Claim Of Kelly O'Brien | OBrienDepo000121 | OBrienDepo000121 |
| 334 | O'Brien | O'Brien 09 - Chinese Drywall Remediation And Reconstruction Proposal Prepared By Eric Stockland Dated 9/1/2011 | | |
| 335 | O'Brien | O'Brien 10 - Priority Claimant Lori O'Brien'S Answers To Interrogatories | OBrienDepo000373 | OBrienDepo000378 |
| 336 | O'Brien | O'Brien 11 - Note Dated 11/3/2010 And Bank Statement Dated 2/14/2011 | OBrienDepo000076 | OBrienDepo000079 |
| 337 | O'Brien | O'Brien 12 - Bank Statement Dated 2/14/2011; Note Dated 11/3/2010; 3 Guys Moving Receipt Dated 1/8/2011 | OBrienDepo000148 | OBrienDepo000153 |
| 338 | O'Brien | O'Brien 13 - Uniform Residential Appraisal Report And Invoice No. 06-9433 Dated 1/26/2006 | OBrienDepo000154 | OBrienDepo000166 |
| 339 | O'Brien | O'Brien 14 - 2007 Notice Of Ad Valorem Taxes And Non-Ad Valorem Assessment | OBrienDepo000198 | OBrienDepo000002 |
| 340 | O'Brien | O'Brien 15 - My Florida Regional Mls/ Broker Synopsis Report | OBrienDepo000113 | OBrienDepo000113 |
| 341 | O'Brien | O'Brien 16 - Chinese Drywall Settlement Program Foreclosure And Short Sale Claim Form | OBrienDepo000004 | OBrienDepo000008 |
| 342 | O'Brien | O'Brien 17 - Affidavit Of Lori D. O'Brien Dated 10/24/2013 | OBrienDepo000048 | OBrienDepo000048 |
| 343 | O'Brien | O'Brien 18 - Us Department Of Housing And Urban Development Settlement Statement Dated 2/17/2012 | OBrienDepo000072 | OBrienDepo000075 |
| 344 | O'Brien | O'Brien 19 - Spreadsheet | OBrienDepo000320 | OBrienDepo000331 |
| 345 | O'Brien | O'Brien 20 - Spreadsheet | OBrienDepo000332 | OBrienDepo000343 |
| 346 | O'Brien | O'Brien 21 - Supplemental Plaintiff Profile Form | OBrienDepo000188 | OBrienDepo000195 |
| 347 | O'Brien | O'Brien 22 - First Amended Supplemental Plaintiff Profile Form | OBrienDepo000407 | OBrienDepo000413 |

Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 49 of 802
Case 1:11-cv-22408-MGC Document 272-1 Entered on FLSD Docket 08/18/2014 Page 28 of
262

Attachment A
Documents and Other Information Considered - All Claimants

*Chinese Drywall Litigation Involving Priority Claimants*

| | | | Bate Stamp (if applicable) | |
|---|---|---|---|---|
| No. | Claimant | General Description | First Page | Last Page |
| 348 | O'Brien | O'Brien 23 - Addendum To Sales Agreement Dated 12/28/2013 | OBrienDepo000147 | OBrienDepo000147 |
| 349 | O'Brien | O'Brien 24 - Priority Claimant Kelly O'Brien'S Answers to Interrogatories | OBrienDepo000364 | OBrienDepo000368 |
| 350 | Rosen-MR | Deposition Transcript of Michael Rosen, dated January 9, 2019 | | |
| 351 | Rosen-MR | Deposition Transcript of Robyn Rosen, dated January 9, 2019 | | |
| 352 | Rosen-MR | Deposition Exhibit 01 - Special Warranty Deed Book 21066/Page 1743, Palm Beach County Property Appraiser Record, and Warranty Deed Book 23588/Page 101 through 102 | | |
| 353 | Rosen-MR | Deposition Exhibit 02 - US Department of Housing & Urban Development Settlement Statement dated 11/6/2006 | MROSEN - 000001 | MROSEN - 000032 |
| 354 | Rosen-MR | Deposition Exhibit 03 - Chase Detailed Transaction History dated 9/5/2013 | MROSEN - 000041 | MROSEN - 000046 |
| 355 | Rosen-MR | Deposition Exhibit 04 - Palm Beach County Property Appraiser Public Records | | |
| 356 | Rosen-MR | Deposition Exhibit 05 - Plaintiff Profile Form - Residential Properties | ROSEN M 000001 | ROSEN M 000010 |
| 357 | Rosen-MR | Deposition Exhibit 06 - Supplemental Plaintiff Profile Form | | |
| 358 | Rosen-MR | Deposition Exhibit 07 - Chinese Drywall Settlement Program Foreclosure or Short Sale Affidavit | | |
| 359 | Rosen-MR | Deposition Exhibit 08 - Michael Rosen Photos of Inspection 08/30/09 and Inspection Report 08/30/2009 | ROSEN,M 0001 | ROSEN,M 0079 |
| 360 | Rosen-MR | Deposition Exhibit 09 - Collection of Evidence Michael Rosen 12/03/2009 | MROSEN - 000235 | MROSEN - 000235 |
| 361 | Rosen-MR | Deposition Exhibit 10 - Claimants Michael and Robyn Rosen's Answers to Defendants Interrogatories | | |
| 362 | Rosen-MR | Deposition Exhibit 11 - Michael and Robin [sic] Rosen's Chinese Drywall Damages Chart | | |
| 363 | Rosen-MR | Deposition Exhibit 12 - Receipts and Invoices | ROSEN, M (OLF) - 000050 | ROSEN, M (OLF) - 000191 |
| 364 | Rosen-MR | Deposition Exhibit 13 - Copies of checks | ROSEN, M (OLF) - 000035 | ROSEN, M (OLF) - 000040 |
| 365 | Rosen-MR | Deposition Exhibit 14 - Residential Sale and Purchase Contract | MROSEN - 000192 | MROSEN - 000202 |
| 366 | Rosen-MR | Deposition Exhibit 15 - Mutual Release dated 12/4/2009 | MROSEN - 000213 | MROSEN - 000221 |
| 367 | Rosen-KS | Deposition Transcript of Kevin Rosen, dated December 19, 2018 | | |
| 368 | Rosen-KS | Deposition Transcript of Stacy Rosen, dated December 19, 2018 | | |
| 369 | Rosen-KS | Deposition Exhibit 01 - Mortgage | KROSEN - 000061 | KROSEN - 000134 |
| 370 | Rosen-KS | Deposition Exhibit 02 - The Oaks at Boca Raton Agreement for Purchase and Sale | KROSEN - 000005 | KROSEN - 000054 |
| 371 | Rosen-KS | Deposition Exhibit 03 - Claimant Kevin Rosen's Answers to Defendants Interrogatories | | |
| 372 | Rosen-KS | Deposition Exhibit 04 - Uniform Residential Appraisal Report | | |
| 373 | Rosen-KS | Deposition Exhibit 05 - Residential Full Report | KROSEN - 000055 | KROSEN - 000058 |
| 374 | Rosen-KS | Deposition Exhibit 06 - Declaration of Correctness of Square Footage on Chinese Drywall Client(s) Property for Remediation Damages | | |
| 375 | Rosen-KS | Deposition Exhibit 07 - Inspection Report - Product ID 09/15/2009 | KROSEN - 000566 | KROSEN - 000568 |
| 376 | Rosen-KS | Deposition Exhibit 08 - Supplemental Plaintiff Profile Form | | |
| 377 | Rosen-KS | Deposition Exhibit 09 - June 24, 2009 Letter from Vincent Altino and Lease Agreement | KROSEN - 000135 | KROSEN - 000144 |
| 378 | Rosen-KS | Deposition Exhibit 10 - Out-of-Pocket Expenses | KROSEN - 000145 | KROSEN - 000393 |
| 379 | Rosen-KS | Deposition Exhibit 11 - Claimant Affidavit of Chinese Drywall Economic Damages | | |
| 380 | Rosen-KS | Deposition Exhibit 12 - (Inadvertently not marked - no exhibit) | | |
| 381 | Rosen-KS | Deposition Exhibit 13 - August 15, 2018 Chinese Drywall Settlement Program Check Copy | | |

Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 50 of 802
Case 1:11-cv-22408-MGC Document 272-1 Entered on FLSD Docket 09/15/2015 Page 29 of
262

Attachment A
Documents and Other Information Considered - All Claimants

*Chinese Drywall Litigation Involving Priority Claimants*

| | | | Bate Stamp (if applicable) | |
|---|---|---|---|---|
| No. | Claimant | General Description | First Page | Last Page |
| 382 | Rosen-KS | Deposition Exhibit 14 - US Individual Income Tax Return 2009 | KROSEN - 000500 | KROSEN - 000565 |
| 383 | Rosen-KS | Deposition Exhibit 15 - Warranty Deed | KROSEN - 000001 | KROSEN - 000004 |
| 384 | Rosen-KS | Deposition Exhibit 16 - December 23, 2009 Agreement Between Florida Campbell Real Estate Holdings, Inc., and Kevin and Stacey Rosen | KROSEN - 0000978 | KROSEN - 0000978 |
| 385 | Rosen-KS | Deposition Exhibit 17 - August 2, 2016 Chinese Drywall Settlement Program Check Copy | | |
| 386 | Walls | Deposition Transcript of Larry Walls, dated December 11, 2018 | | |
| 387 | Walls | Deposition Transcript of Rosalee Walls, dated December 11, 2018 | | |
| 388 | Walls | Deposition Exhibit 01 - Lee County Appraiser - Online Parcel Inquiry - Property Data | | |
| 389 | Walls | Deposition Exhibit 02 - Warranty Deed | | |
| 390 | Walls | Deposition Exhibit 03 - Aranda Homes, Inc. - Floor Plan | | |
| 391 | Walls | Deposition Exhibit 04 - Plaintiff Profile Form - Residential Properties | Walls,L00001 | Walls,L00030 |
| 392 | Walls | Deposition Exhibit 05 - Supplemental Plaintiff Profile Form - Residential and Commercial Properties (Non-Knauf) | | |
| 393 | Walls | Deposition Exhibit 06 - Liberty Mutual Fire Insurance Company - Residence Damage Evaluation | | |
| 394 | Walls | Deposition Exhibit 07 - AirQuest Environmental, Inc. Report | ARI 01170 | ARI 01197 |
| 395 | Walls | Deposition Exhibit 08 - Benchmark Remediation Group - Report | | |
| 396 | Walls | Deposition Exhibit 09 - Priority Claimant Larry Walls' First Amended Answers to Interrogatories | | |
| 397 | Walls | Deposition Exhibit 10 - Chinese Drywall Settlement Program Miscellaneous Claim Form | | |
| 398 | Walls | Deposition Exhibit 11 - Receipts and Photographs of Miscellaneous Items | | |
| 399 | Walls | Deposition Exhibit 12 - Alternative Living Expenses | | |
| 400 | Walls | Deposition Exhibit 13 - American Home Mortgage Servicing D.I.P. - Monthly Billing Statement and Check Copies | | |
| 401 | Walls | Deposition Exhibit 14 - September 29, 2010 Letter from Morgan & Morgan to American Home Mortgage Servicing, Inc. | | |
| 402 | Walls | Deposition Exhibit 15 - October 18, 2010 Letter from Moss Codilis, LLP to Larry and Rosalee Walls and Notice of Proposed Property Taxes | | |
| 403 | Walls | Deposition Exhibit 16 - Final Judgment in Mortgage Foreclosure | | |
| 404 | Wites | Deposition Transcript of Marc Wites, dated January 10, 2019 | | |
| 405 | Wites | Deposition Transcript of Jennifer Wites, dated January 10, 2019 | | |
| 406 | Wites | Deposition Exhibit 01 - Warranty Deed Book 21844/Page 1881 through 1882 | | |
| 407 | Wites | Deposition Exhibit 02 - Palm Beach County Property Appraiser Public Records | | |
| 408 | Wites | Deposition Exhibit 03 - Plaintiff Profile Form - Residential Properties | WITES, M 000001 | WITES, M 000008 |
| 409 | Wites | Deposition Exhibit 04 - Inspection Report 8/30/2009 | MWITES - 000082 | MWITES - 000082 |
| 410 | Wites | Deposition Exhibit 05 - Supplemental Plaintiff Profile Form | | |
| 411 | Wites | Deposition Exhibit 06 - Marc and Jennifer Wites Damages Summary | | |
| 412 | Wites | Deposition Exhibit 07 - A1A Document A105 - 2007 Standard Form of Agreement Between Owner and Contractor | | |

Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/03/19 Page 51 of 802
Case 1:11-cv-22408-MGC Document 272-1 Entered on FLSD Docket 09/15/2015 Page 30 of
262

Attachment A
Documents and Other Information Considered - All Claimants

*Chinese Drywall Litigation Involving Priority Claimants*

|  |  |  | *Bate Stamp (if applicable)* | |
| No. | Claimant | General Description | First Page | Last Page |
| --- | --- | --- | --- | --- |
| 413 | Wites | Deposition Exhibit 08 - Chart of Expenses Deductible Pursuant to IRS Bulletin on Chinese Drywall | MWITES - 000001 | MWITES - 000103 |
| 414 | Wites | Deposition Exhibit 09 - Photographs | WITES, M 000208 | WITES, M 000269 |
| 415 | Wites | Deposition Exhibit 10 - Photographs | Taishan-Wites000001 | Taishan-Wites000062 |
| 416 | Wites | Deposition Exhibit 11 - Remediation Estimates | | |
| 417 | Wites | Deposition Exhibit 12 - Documents Regarding Chapter 558 Construction Defect Notice | | |
| 418 | Wites | Deposition Exhibit 13 - Documents Regarding Credit Inquiries | | |
| 419 | Wites | Deposition Exhibit 14 - Documents Regarding Palm Beach County Property Taxes | | |
| 420 | Wites | Deposition Exhibit 15 - Documents Regarding Building Permits | | |

Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/03/19 Page 52 of 802
Case 1:11-cv-22408-MGC Document 272-1 Entered on FLSD Docket 08/18/2015 Page 31 of
262

Attachment A
Documents and Other Information Considered - All Claimants

*Chinese Drywall Litigation Involving Priority Claimants*

| | | | Bate Stamp (if applicable) | |
|---|---|---|---|---|
| No. | Claimant | General Description | First Page | Last Page |

**C. Supporting Documentation**

| No. | Claimant | General Description | First Page | Last Page |
|---|---|---|---|---|
| 1 | All | Florida Claimants Remediation List Provided by Counsel | | |
| 1 | Avery | Doc ID. 178127 - Affected Property Closing Statement, dated November 30, 2007 | | |
| 2 | Avery | Doc ID. 361251 - Avery HVAC Repairs by J&D Heating | | |
| 3 | Avery | Doc ID. 365706 - Avery Lease Agreement for Alternate Living Expenses | | |
| 4 | Avery | Doc ID. 365705 - Fifth Third Bank Mortgage Statement | | |
| 5 | Avery | Janet Avery Out of Pocket Damage Summary Provided by Counsel | | |
| 6 | Chatmon | Lillian Chatmon Out of Pocket Damages Summary Provided by Counsel | | |
| 7 | Chatmon | Doc ID. 113601 - Chatmon - Egg Systems AC Receipt | | |
| 8 | Chatmon | Supplemental Note] | | |
| 9 | Chatmon | Doc ID. 113580 - US Bank Home Mortgage Account Statement [US Bank Statement February 2011] | | |
| 10 | Chatmon | Doc ID. 349885 - Alternative Living Expenses Documentation [Claimant Notes on Alternative Living Expenses] | | |
| 11 | Chatmon | with Support] | | |
| 12 | Chatmon | Doc ID. 365734 - Sabal Pointe Townhomes POA Transaction History | | |
| 13 | Chatmon | Doc ID. 365735 - US Bank Home Mortgage Account Statement [US Bank Statements 2014 - 2018] | | |
| 14 | Chatmon | Doc ID. 365960 - JJ Staten Homes LLC, Corrosive Drywall Remediation Contract dated 10/2/2018 | | |
| 15 | Deeg/Hooker | Deeg-Hooker Damages Summary Provided by Counsel | | |
| 16 | Deeg/Hooker | Personal Property Loss | DEEG000058 | DEEG000144 |
| 17 | Deeg/Hooker | Jan 2011 Mortgage Statement | DEEG000246 | DEEG000249 |
| 18 | Deeg/Hooker | HUD for Sale of Property | DEEG000055 | DEEG000056 |
| 19 | Etter | Etter Damages Summary Provided by Counsel | | |
| 20 | Etter | Supplement to S Etter 16 - Invoices | ETTER000101 | ETTER000153 |
| 21 | Etter | Doc ID. 165490 - Etter Relocation Receipts | | |
| 22 | Etter | Doc ID. 165478 - Etter - Etter Relocation Lease | | |
| 23 | Etter | Doc ID. 165483 - Etter Relocation Receipts 2 (Utilities) | | |
| 24 | Etter | HUD for Sale of Property | ETTER000017 | ETTER000020 |
| 25 | Feldkamp | Andrew and Dawn Feldkamp Out of Pocket Damages Summary Provided by Counsel | | |
| 26 | Feldkamp | Doc ID. 365795 - Feldkamp proof of payments for ALE | | |
| 27 | Feldkamp | Doc ID. 366298 - Feldkamp AS IS Contract for Sale and Purchase | | |
| 28 | Feldkamp | Doc ID. 366301 - Feldkamp Mortgage Statement from Fifth Third Bank | | |
| 29 | Feldkamp | Doc ID. 366315 - Feldkamp Lease Agreement for ALE | | |
| 30 | Feldkamp | Doc ID. 366316 - Feldkamp HVAC repairs by Penguin Air and Larry's Air | | |
| 31 | Feldkamp | Doc ID. 365789 - Mortgage Payment History - 5th 3rd Bank - Feldkamp | | |
| 32 | Feldkamp | Doc ID. 265945 - Feldkamp - gbi settlement check | | |

Attachment A
Documents and Other Information Considered - All Claimants

*Chinese Drywall Litigation Involving Priority Claimants*

*Bate Stamp (if applicable)*

| No. | Claimant | General Description | First Page | Last Page |
|-----|----------|---------------------|------------|-----------|
| 33 | Feldkamp | Doc ID. 366063 - Feldkamp - gbi holdback settlement check | | |
| 34 | Feldkamp | Doc ID. 365946 - Feldkamp - gbi settlement check | | |
| 35 | Feldkamp | Doc ID. 366315 - Feldkamp - lease agreement 2012 and extensions for 2013, 2014 and 2015 | | |
| 36 | Feldkamp | Doc ID. 366299 - Feldkamp - letter to 53 bank | | |
| 37 | Feldkamp | Doc ID. 366340 - Feldkamp - mortgage | | |
| 38 | Foster | William and Vicki Foster Out of Pocket Damages Summary Provided by Counsel | | |
| 39 | Foster | Doc ID. 365719 - Polkow Construction remediation proposal | | |
| 40 | Foster | Doc ID. 365749 - Foster remediation contract with Polkow Construction, receipts, invoices and proof of payment | | |
| 41 | Foster | Doc ID. 366605 - Foster Proof of payment for remediation damages | | |
| 42 | Foster | Doc ID. 367444 - (Backup) Foster Proof of Payment for Raymond Building Supply Items | | |
| 43 | Foster | Doc ID. 125033 - V Foster Lease Agreements for ALE | | |
| 44 | Foster | Doc ID. 125036 - V Foster Alternative Living Expenses Support | | |
| 45 | Foster | Doc ID. 366603 - Condo moving expense invoices and receipts for ALE | | |
| 46 | Foster | Doc ID. 367445 - (Backup) Foster Proof of Payment for Florida ALE Comcast | | |
| 47 | Foster | | | |
| 48 | Foster | Doc ID. 124967 - Receipts for damaged items repaired or replaced | | |
| 49 | Foster | Doc ID. 365713 - Foster List of damaged items and receipts (repaired or replaced) | | |
| 50 | Foster | Doc ID. 367443 - (Backup) Foster Proof of Cost for Items that Need to be Replaced | | |
| 51 | Foster | Doc ID. 329374 - Foster receipts and invoices for damaged items (replaced) | | |
| 52 | Foster | Doc ID. 124973 - Foster photos of damaged items (discarded or not replaced) | | |
| 53 | Foster | Doc ID. 366742 - Foster Photos of damaged items (discarded or not replaced) | | |
| 54 | Foster | Doc ID. 366743 - Foster Photos of damaged items (discarded or not replaced) | | |
| 55 | Foster | Doc ID. 366744 - Foster Photos of damaged items (discarded or not replaced) | | |
| 56 | Foster | Doc ID. 366745 - Foster Photos of damaged items (discarded or not replaced) | | |
| 57 | Foster | Doc ID. 366746 - Foster Photos of damaged items (discarded or not replaced) | | |
| 58 | Foster | Doc ID. 366782 - Personal Property Damage - Damaged Items Discarded and Not Replaced | | |
| 59 | Foster | Doc ID. 366783 - Personal Property Damage - Damaged Items Still Owned and Not Yet Replaced | | |
| 60 | Foster | Budget Blinds 10.29.2012 - $5,084.00 - better copy | | |
| 61 | Foster | Doc ID. 365712 - W Foster Return to Work Related Expenses | | |
| 62 | Foster | Doc ID. 366606 - W Foster Receipts and Invoices ALE | | |
| 63 | Foster | Doc ID. 367575 - Updated William Fosters ALE Expenses 2008-2009 | | |
| 64 | Foster | Clearer Copies of W Foster Exhibit 2 - Bates Numbered F000801 to F000904 | F000801 | F000904 |
| 65 | Foster | 365714 - Foster CDW Settlement Program Checks | | |
| 66 | Foster | 365715 - Foster GBI Holdback Payment | | |
| 67 | Foster | 365716 - Foster WCI Settlement Check | | |

Attachment A
Documents and Other Information Considered - All Claimants

*Chinese Drywall Litigation Involving Priority Claimants*

| No. | Claimant | General Description | First Page | Last Page |
|-----|----------|---------------------|------------|-----------|
| | | | | *Bate Stamp (if applicable)* |
| 68 | Gody | Anthony and Candace Out of Pocket Damages Summary Provided by Counsel | | |
| 69 | Gody | Doc ID. 120231 - Gody Mortgage, Utilities and General Expenses for ALE | | |
| 70 | Gody | Doc ID. 120244 - Gody Receipts for personal items and inspections reports | | |
| 71 | Gody | Doc ID. 350983 - Gody List of payments for remediation | | |
| 72 | Gody | Doc ID. 365696 - Gody HVAC repairs by Weigold & Sons and Certified Heating & Cooling | | |
| 73 | Gody | Doc ID. 365702 - Gody Wells Fargo loss of interest statements | | |
| 74 | Gody | Doc ID. 365760 - Gody Wells Fargo statements confirming funds for remediation | | |
| 75 | Gody | Doc ID. 366110 - Gody Intuitive Environmental Solutions Invoice | | |
| 76 | Gody | Doc ID. 366111 - Gody Tax Preparation cost due to remediation repairs | | |
| 77 | Gody | Doc ID. 366155 - Gody Polkow Construction remediation proposal | | |
| 78 | Gody | Doc ID. 366156 - Gody payments made to Polkow Construction and receipts for mediation | | |
| 79 | Gody | Doc ID. 366157 - Gody Letter of remediation completion from City of Ft. Myers | | |
| 80 | Gody | Doc ID. 367571 - HUD Settlement Statement for Purchase of PA land | | |
| 81 | Gody | Doc ID. 367572 - HUD Settlement Statement for Sale of PA property | | |
| 82 | Gody | Doc ID. 367573 - Wells Fargo Investment fund balances prior to remediation | | |
| 83 | Gody | Doc ID. 367574 - Wells Fargo Investment fund balances post remediation | | |
| 84 | Griffin | Doc ID. 41972 - Griffin Mortgage Documents | | |
| 85 | Hernandez | Doc ID. 365781 - AC Invoices Affected Property | | |
| 86 | Hernandez | Doc ID. 366484 - Application Fee for Rent | | |
| 87 | Hernandez | Doc ID. 366485 - Borter Glass Co. Invoices and Proof of Payment | | |
| 88 | Hernandez | Doc ID. 366486 - California Closets Invoices and Proof of Payment | | |
| 89 | Hernandez | Doc ID. 366488 - Custom Distributors Invoices and Proof of Payment | | |
| 90 | Hernandez | Doc ID. 366492 - Proof of AC and Moving Payments | | |
| 91 | Hernandez | Doc ID. 366495 - Proof of Loss of Deposit | | |
| 92 | Hernandez | Doc ID. 366496 - Proof of Moving Payments | | |
| 93 | Hernandez | Doc ID. 366497 - Proof of Payment | | |
| 94 | Hernandez | Doc ID. 366499 - Rent- Proof of Payment | | |
| 95 | Hernandez | Doc ID. 366500 - Rent- Proof of Payment 2 | | |
| 96 | Hernandez | Doc ID. 366501 - Sierra Construction Proof Of Payment | | |
| 97 | Hernandez | Doc ID. 364311 - Rental Property Documentation | | |
| 98 | Hernandez | Doc ID. 364313 - Sierra Construction Proof of Payment | | |
| 99 | Hernandez | Doc ID. 366502 - Tampa Tile Invoices and Proof of Payment | | |
| 100 | Hernandez | Doc ID. 364312 - Water and Electric Bills- Rental Property | | |

Attachment A
Documents and Other Information Considered - All Claimants

*Chinese Drywall Litigation Involving Priority Claimants*

|  |  |  | *Bate Stamp (if applicable)* | |
| No. | Claimant | General Description | First Page | Last Page |
|---|---|---|---|---|
| 101 | Hernandez | Doc ID. 364316 - Suncoast Mortgage Payments | | |
| 102 | Hernandez | Doc ID. 366491 - Moving Invoice | | |
| 103 | Hernandez | Doc ID. 366533 - Hernandez - HUD Statement For Remediation Loan | | |
| 104 | Hernandez | Doc ID. 365961 - Hernandez- Global Check 1 | | |
| 105 | Hernandez | Doc ID. 365962 - Hernandez- Global Check 2 | | |
| 106 | Hernandez | Hernandez Out of Pocket Damages Summary Provided by Counsel | | |
| 107 | Lalwani | Lalwani Damages Summary Provided by Counsel | | |
| 108 | Lalwani | Doc ID. 366657 - GHO Homes Additional Building Options | | |
| 109 | Lalwani | Doc ID. 365780 - New Home Construction Agreement | | |
| 110 | Lalwani | Doc ID. 147835 - HUD Settlement Statement from Sale of Home | | |
| 111 | Marin | Marin Damages Summary Provided by Counsel (Partially Redacted) | | |
| 112 | Marin | 10-5-06 Purchase Agreement PBC 1.29.19 (Buyer to Pay Cash) | | |
| 113 | Marin | 1.16.12 Sale Contract - PBC 1.29.19 | | |
| 114 | Marin | 2-17-12 HUD Statement - Sale of Property - PBC 1.29.19 | | |
| 115 | Marin | 2-8-07 HUD Statement - Purchase of Property - PBC 1.29.2019 | | |
| 116 | Marin | Doc ID. 366714 - Air Conditioning Invoices | | |
| 117 | Martinez | Dailyn Martinez Out of Pocket Damages Summary Provided by Counsel | | |
| 118 | Martinez | Doc ID. 150392 - Martinez Kawasaki Motorcycle damage (photos) | | |
| 119 | Martinez | Doc ID. 150393 - Martinez Miscellaneous Claim for property damage | | |
| 120 | Martinez | Doc ID. 150421 - Martinez RV Sales Contract for ALE | | |
| 121 | Martinez | Doc ID. 150426 - Martinez Rent Receipts for ALE | | |
| 122 | Martinez | Doc ID. 316599 - Martinez Receipts for personal property damaged (replaced) | | |
| 123 | Martinez | Doc ID. 365817 - Martinez receipts for damaged appliances (replaced) | | |
| 124 | Martinez | Doc ID. 365944 - Martinez HVAC repair by AG Mechanical, Inc. | | |
| 125 | Martinez | Doc ID. 366311 - Martinez HSBC Mortgage statement | | |
| 126 | Martinez | Doc ID. 366393 - Martinez Lease Agreement for ALE (1718 SW 12 Terr, Cape Coral, FL) | | |
| 127 | Martinez | Doc ID. 366394 - Martinez Lease Agreement for ALE (2011 NE 18 PL, Cape Coral, FL) | | |
| 128 | Nguyen | Tracy Nguyen Out of Pocket Damages Summary Provided by Counsel | | |
| 129 | Nguyen | 132940 - Nguyen HVAC repairs by Central Aire Conditioning | | |
| 130 | Nguyen | 133154 - Nguyen Letter from Tuyen Thanh Mai re Lease Agreement | | |
| 131 | Nguyen | 136388 - Nguyen Receipts for rent from Tuyen Thanh Mai | | |
| 132 | Nguyen | 365782 - Nguyen Remediation repairs done by J&A Stucco and Alex Fite | | |
| 133 | Nguyen | 365784 - Nguyen HUD Settlement Statement for ALE | | |

Attachment A
Documents and Other Information Considered - All Claimants

*Chinese Drywall Litigation Involving Priority Claimants*

*Bate Stamp (if applicable)*

| No. | Claimant | General Description | First Page | Last Page |
|---|---|---|---|---|
| 134 | Nunez | Nunez Damages Summary Provided by Counsel - Partially Redacted | | |
| 135 | Nunez | Doc ID. - 364594 2012-2013 Lease | | |
| 136 | Nunez | Doc ID. - 364595 2014-2015 Lease | | |
| 137 | Nunez | Doc ID. - 364596 2016-2017 Lease | | |
| 138 | Nunez | Doc ID. - 364593 - Moving Invoice | | |
| 139 | Nunez | Doc ID. - 364563 - AC Invoices | | |
| 140 | Nunez | Doc ID. 366577 - Nunez AC Invoices #1-6 | | |
| 141 | Nunez | Doc ID. - 365754 - Statement Settlements | | |
| 142 | Nunez | Mortgage Payment History - PBC 02.01.2019 | | |
| 143 | Nunez | Loan Documents PBC - 2.1.2019 | | |
| 144 | Nunez | Foreclosure Judgment 07.19.2017 - PBC 2.1.2019 | | |
| 145 | Nunez | Closing Documents 1.12.2007 - PBC 2.1.2019 | | |
| 146 | Nunez | Chase Statement - PBC 01.31.2019 | | |
| 147 | Nunez | Closing Documents - 2nd Mortgage 1.12.07 - PBC 1.31.2019 | | |
| 148 | Nunez | Purchase Agreement 04.26.2005 - PBC 01.31.2019 | | |
| 149 | O'Brien | Kelly Lori O'Brien Out of Pocket Damages Summary Provided by Counsel | | |
| 150 | O'Brien | Doc ID. 361428 - O'Brien 3 Guys Moving Bill of Lading for ALE | | |
| 151 | O'Brien | Doc ID. 222904 - O'Brien Proof of mortgage payments for ALE | | |
| 152 | O'Brien | Doc ID. 365812 - O'Brien Proof of mortgage payments for ALE | | |
| 153 | O'Brien | Doc ID. 222899 - O'Brien Air Conditioning repairs with receipts | | |
| 154 | O'Brien | Doc ID. 222901 - O'Brien HUD Statement for vacant lot (lost equity) | | |
| 155 | O'Brien | Doc ID. 222905 - O'Brien Loan Modification for Construction (lost equity) | | |
| 156 | O'Brien | Doc ID. 361429 - O'Brien Appraisal Report dated 11.30.06 | | |
| 157 | O'Brien | Doc ID. 361431 - O'Brien HUD Settlement Statement (lost equity) | | |
| 158 | O'Brien | Doc ID. 366624 - O'Brien McElroy Residence Related Documents | | |
| 159 | O'Brien | Doc ID. 365809 - O'Brien Final Statement from Steven R. Carter | | |
| 160 | O'Brien | Doc ID. 365808 - O'Brien Wallcraft Mortgage 2010 - 2012 | | |
| 161 | Rosen-MR | Rosen Damages Summary Provided by Counsel | | |
| 162 | Rosen-MR | MROSEN - 000035-000040) - Lease Payments | MROSEN - 000035 | MROSEN - 000040 |
| 163 | Rosen-MR | MROSEN - 000050-000191) - Upgrades Expenses | MROSEN - 000050 | MROSEN - 000191 |
| 164 | Rosen-MR | MROSEN - 000192-000202) - Rosen Contract | MROSEN - 000192 | MROSEN - 000202 |
| 165 | Rosen-MR | MROSEN - 000203-000208) - Loan Payments | MROSEN - 000203 | MROSEN - 000208 |
| 166 | Rosen-MR | 2922231 - Rosen MR - 2006 Purchase (Better Copy) | | |
| 167 | Rosen-MR | 2922333 - Rosen MR - Rosen HUD | | |

Attachment A
Documents and Other Information Considered - All Claimants

*Chinese Drywall Litigation Involving Priority Claimants*

| | | | Bate Stamp (if applicable) | |
|---|---|---|---|---|
| No. | Claimant | General Description | First Page | Last Page |
| 168 | Rosen-MR | ROSEN, M (OLF) - 000047 - 000049) - Sale of House in 2009 | ROSEN, M (OLF) - 000047 | ROSEN, M (OLF) - 000049 |
| 169 | Rosen-KS | Rosen Out of Pocket Damages Summary Provided by Counsel | | |
| 170 | Rosen-KS | KROSEN - (002239-2524) - House Re-Model 2008 | KROSEN - 002239 | KROSEN - 002524 |
| 171 | Rosen-KS | KROSEN - (002237-2238) - Chinese Drywall Upgrades Change Order List - 12-19-18 | KROSEN - 002237 | KROSEN - 002238 |
| 172 | Rosen-KS | KROSEN - (001714-002236) - Upgrades and Work Orders | KROSEN - 001714 | KROSEN - 002236 |
| 173 | Rosen-KS | KROSEN - (000500-000565) - 1049 Income Tax Documentation (Redacted) | KROSEN - 000500 | KROSEN - 000565 |
| 174 | Rosen-KS | KROSEN - (000417-000421) - Client Affidavit | KROSEN - 000417 | KROSEN - 000421 |
| 175 | Rosen-KS | KROSEN - (000145-000393) - Payments, Expenses | KROSEN - 000145 | KROSEN - 000393 |
| 176 | Rosen-KS | KROSEN - (000135-000144) - Townhouse Rental Lease - Rosen | KROSEN - 000135 | KROSEN - 000144 |
| 177 | Rosen-KS | KROSEN - (000061-000134) - Purchase of Home & Mortgage Docs | KROSEN - 000061 | KROSEN - 000134 |
| 178 | Rosen-KS | KROSEN - (000059-000060) - Tax Docs | KROSEN - 000059 | KROSEN - 000060 |
| 179 | Rosen-KS | KROSEN - (000055-000058) - Appraisal Report | KROSEN - 000055 | KROSEN - 000058 |
| 180 | Rosen-KS | KROSEN - (000005-000054) - Purchase Documents 2004 | KROSEN - 000005 | KROSEN - 000054 |
| 181 | Rosen-KS | KROSEN - (000001-000004) - Sale of Home in 2009 Documents | KROSEN - 000001 | KROSEN - 000004 |
| 182 | Rosen-KS | Doc ID. 366865 - Rosen-KS - Capital Improvements List | | |
| 183 | Walls | Larry and Rosalee Walls Out of Pocket Damages Summary Provided by Counsel | | |
| 184 | Walls | Doc ID. 150324 - Breakdown of expenses to maintain affected property | | |
| 185 | Walls | Doc ID. 150329 - Lease Agreement for Rental Property, $1,300.00 per month for 39 months | | |
| 186 | Walls | Doc ID. 150341 - Damaged furniture, clothing...etc. | | |
| 187 | Walls | Doc ID. 150347 - Damaged furniture, clothing...etc. | | |
| 188 | Walls | Doc ID. 256780 - Lee County Tax Collector's Office | | |
| 189 | Walls | Doc ID. 256781 - LCEC Bill | | |
| 190 | Walls | Doc ID. 257047 - City of Cape Coral Fire Assessment | | |
| 191 | Walls | Doc ID. 344520 - Cash Payment for land 3/11/002 | | |
| 192 | Walls | Doc ID. 366086 - Damaged furniture, clothing...etc. | | |
| 193 | Walls | Doc ID. 366087 - Deposit for construction of home | | |
| 194 | Walls | Doc ID. 361729 - Walls Foreclosure Document - Judgment | | |
| 195 | Walls | Doc ID. 365798 - Walls Mortgage Van Buren Pkwy | | |
| 196 | Walls | Doc ID. 365797 - Walls Proof of Payment for Mortgage on Van Buren | | |
| 197 | Wites | Marc and Jennifer Wites Damages Summary (prepared by Counsel), dated January 23, 2019 | | |
| 198 | Wites | MWITES - (000701-000706) Utility Bills 2 | MWITES - 000701 | MWITES - 000706 |
| 199 | Wites | MWITES - (000698-000700) FPL Bill | MWITES - 000698 | MWITES - 000700 |
| 200 | Wites | MWITES - (000690-000697) Utility Bills 1 | MWITES - 000690 | MWITES - 000697 |

Attachment A
Documents and Other Information Considered - All Claimants

*Chinese Drywall Litigation Involving Priority Claimants*

| | | | Bate Stamp (if applicable) | |
|---|---|---|---|---|
| No. | Claimant | General Description | First Page | Last Page |
| 201 | Wites | MWITES - (000341-000376) - Wites Income Tax 2010 | MWITES - 000341 | MWITES - 000376 |
| 202 | Wites | MWITES - (000199) - Work Order from San Mar Service Corp | MWITES - 000199 | MWITES - 000199 |
| 203 | Wites | MWITES - (000197) - Check to Mizner Country Club | MWITES - 000197 | MWITES - 000197 |
| 204 | Wites | MWITES - (000191-000196) - Residential Lease Agreement | MWITES - 000191 | MWITES - 000196 |
| 205 | Wites | MWITES - (000092-000093) - Wachovia Report (Rental House Pool Payments) | MWITES - 000092 | MWITES - 000093 |
| 206 | Wites | MWITES - (000091) - Oppenheimer All Activity Report Xpert Carpet Care (Rental House) | MWITES - 000091 | MWITES - 000091 |
| 207 | Wites | MWITES - (000088-000089) - Oppenheimer All Activity Report Elke Gallichio | MWITES - 000088 | MWITES - 000089 |
| 208 | Wites | MWITES - (000086-000087) - Universal Property and Casualty Insurance Tenant Policy | MWITES - 000086 | MWITES - 000087 |
| 209 | Wites | MWITES - (000085) - Fax from Elite Relocation Inc | MWITES - 000085 | MWITES - 000085 |
| 210 | Wites | MWITES - (000084) - Check to Elite Relocation Inc | MWITES - 000084 | MWITES - 000084 |
| 211 | Wites | MWITES - (000083) - Bill from Elite Relocation Inc | MWITES - 000083 | MWITES - 000083 |
| 212 | Wites | MWITES - (000082) - Inspection Report 8-30-09 | MWITES - 000082 | MWITES - 000082 |
| 213 | Wites | MWITES - (000081) - Check to Kirk Bauer | MWITES - 000081 | MWITES - 000081 |
| 214 | Wites | MWITES - (000080) - Invoice for Printing and Blueprints | MWITES - 000080 | MWITES - 000080 |
| 215 | Wites | MWITES - (000077-000079) - Merchant Summary from American Express | MWITES - 000077 | MWITES - 000079 |
| 216 | Wites | MWITES - (000076) - Statement from Hawkeye Home Inspection | MWITES - 000076 | MWITES - 000076 |
| 217 | Wites | MWITES - (000075) - Oppenheimer All Activity Report Elite Relocation Inc | MWITES - 000075 | MWITES - 000075 |
| 218 | Wites | MWITES - (000074) - Oppenheimer All Activity Report Hawkeye Inspection | MWITES - 000074 | MWITES - 000074 |
| 219 | Wites | MWITES - (000073) - Oppenheimer All Activity Report E-Z Permits | MWITES - 000073 | MWITES - 000073 |
| 220 | Wites | MWITES - (000068-000072) - Checks for B4 and After | MWITES - 000068 | MWITES - 000072 |
| 221 | Wites | MWITES - (000067) - Oppenheimer All Activity Report B4 & After | MWITES - 000067 | MWITES - 000067 |
| 222 | Wites | MWITES - (000066) - Oppenheimer All Activity Report Entry Portfolio for Construction | MWITES - 000066 | MWITES - 000066 |
| 223 | Wites | MWITES - (000065) - Checks to B4 & After General Contractors | MWITES - 000065 | MWITES - 000065 |
| 224 | Wites | MWITES - (000059-000064) - B4 & After Quote and Scope of Work | MWITES - 000059 | MWITES - 000064 |
| 225 | Wites | MWITES - (000048-000058) - AIA Document A100 - 2007 | MWITES - 000048 | MWITES - 000058 |
| 226 | Wites | MWITES - (000045-000047) - B4 & After Contractors Quote | MWITES - 000045 | MWITES - 000047 |
| 227 | Wites | MWITES - (000037-000043) - Elite Relocation Invoices and Checks | MWITES - 000037 | MWITES - 000043 |
| 228 | Wites | MWITES - (000034-000035) - Hawkeye Home Inspection Receipts | MWITES - 000034 | MWITES - 000035 |
| 229 | Wites | MWITES - (000031-000032) - Letter and Invoice Re AC at Rental Property | MWITES - 000031 | MWITES - 000032 |
| 230 | Wites | MWITES - (000030) - Rental Check August 2010 | MWITES - 000030 | MWITES - 000030 |
| 231 | Wites | MWITES - (000029) - Letter to Elkie Gallichio Re August 2010 Rent | MWITES - 000029 | MWITES - 000029 |
| 232 | Wites | MWITES - (000028) - Letter to Elkie Gallichio Re Lease | MWITES - 000028 | MWITES - 000028 |
| 233 | Wites | MWITES - (000004-000005) - EE&G Industrial Hygiene Services | MWITES - 000004 | MWITES - 000005 |

Attachment A
Documents and Other Information Considered - All Claimants

*Chinese Drywall Litigation Involving Priority Claimants*

|  |  |  | Bate Stamp (if applicable) | |
| No. | Claimant | General Description | First Page | Last Page |
|---|---|---|---|---|
| 234 | Wites | MWITES - (000094) Water (July-November 2010) | MWITES - 000094 | MWITES - 000094 |
| 235 | Wites | MWITES - (000097) FPL (July-December 2010) | MWITES - 000097 | MWITES - 000097 |
| 236 | Wites | MWITES - (000100) Dec 2010 and Jan 2011 Rent Checks | MWITES - 000100 | MWITES - 000100 |
| 237 | Wites | MWITES - (000104) 2010 May Rent Checks | MWITES - 000104 | MWITES - 000104 |

D. Research and Other Sources:

| | | |
|---|---|---|
| 1 | All | 706 F. Supp.2d 655 - In re Chinese Manufactured Drywall Products Liability Litigation (https://www.leagle.com/decision/infdco20101116590) |
| 2 | All | Judge Fallon's Findings of Fact & Conclusions of Law Related to the June 9, 2015 Damages Hearing, dated April 21, 2017 |
| 3 | All | Complete Remediation Checklist for Affected Properties (Per Germano) |
| 4 | All | Florida Judgment Interest Rates located at https://www.myfloridacfo.com/Division/AA/Vendors/ |
| 5 | All | Historical Florida Judgment Interest Rates located at http://www.myfloridacfo.com/Division/AA/Vendors/JudgmentInterestRates.htm |
| 6 | All | Various IRS Publications and Guidance |
| 7 | Deeg/Hooker | Mortgage 10.10.2007 - KR Doc (from Public Records) |
| 8 | Deeg/Hooker | Second Mortgage 10.11.2007 - KR Doc (from Public Records) |
| 9 | Deeg/Hooker | Deeg Satisfaction of Mortgaqge - KR Docs (from Public Records) |
| 10 | Deeg/Hooker | Refinanced Mortgage - 332,000 - KR Docs (from Public Records) |
| 11 | Etter | Martin County Public Records - Initial Purchase Price, dated December 13, 2004 |
| 12 | Etter | Martin County Public Records - Mortgage ($1,172,000), dated December 8, 2004 |
| 13 | Foster | Telephone Conversation with Counsel and Vicki and William Foster |
| 14 | Lalwani | November 22, 2004 Mortgage from Public Records |
| 15 | Rosen-MR | Rosen $600,000 Mortgage - KR Doc (from Public Records) |
| 16 | Rosen-KS | Telephone Conversation with Counsel and Kevin Rosen |

Attachment B

# Michael P. Elkin, CPA/CFF/ABV, CFE

## Principal, Kaufman Rossin
305.857.6728 | melkin@kaufmanrossin.com

305.857.6728 | melkin@kaufmanrossin.com

## PROFESSIONAL QUALIFICATIONS

Certified Public Accountant (CPA), State of Florida, License No. 15017

Certified in Financial Forensics (CFF), AICPA

American Institute of Certified Public Accountants (AICPA), Member

AICPA Forensic and Valuation Services Section, Member

Accredited in Business Valuations (ABV), AICPA

Florida Institute of Certified Public Accountants (FICPA), Member

FICPA Valuation, Forensic Accounting and Litigation Services Section, Current Member and Past Resource Council, Steering Committee and Economic Damages Task Force Chair

FICPA Committee on Valuation & Litigation Services, Member 1992 to 2000

FICPA Committee on Valuation & Litigation Services, Chairman 1998/1999

Certified Fraud Examiner (CFE), Association of Certified Fraud Examiners

Association of Certified Fraud Examiners, Member

## PROFESSIONAL EXPERIENCE

### Kaufman Rossin | 2002 to present
Forensic, Advisory and Valuation Services Practice Leader

- Business consulting services relating to acquisition assistance, business planning and other engagements designed to assist businesses with critical management decisions.
- Certified in financial forensics and a credentialed fraud examiner with extensive experience providing forensic accounting and investigation, litigation consulting and expert witness testimony in the areas of fraud, economic damages, lost profits, business interruption claims, business valuation, intellectual property infringement, breach of contract, real estate development and construction, family law, eminent domain, professional liability, and complex accounting, finance and business matters.
- Credentialed business valuation professional with experience providing valuations for litigation, M&A, stock transfer and tax matters.
- Experience serving as a court appointed receiver, custodian, liquidating receiver, special magistrate, and valuation expert in order to resolve disputes, manage ongoing business activity and/or carry out the winding down of business affairs.
- Experience providing traditional audit, accounting and tax services to large and small, closely-held entities and public companies.

### Rachlin Cohen & Holtz | 1983 to 2002
Progressed from staff in 1983 to partner in 1993 providing traditional audit, tax and accounting services in conjunction with litigation consulting, forensic accounting and advisory services. Served as the head of the firm's Consulting Division, the Litigation Consulting department head and the Business Valuation Quality Control Director.

## PROVIDED TESTIMONY AS EXPERT

- United States District Court, Southern and Middle Districts of Florida, District of Arizona and Northern District of Texas
- United States Bankruptcy Court, Southern District of Florida
- Circuit Courts in Miami-Dade, Broward, Palm Beach, Monroe, Polk, Orange, Duval and Collier Counties
- Superior Court in New Jersey and Georgia
- District Court of the Virgin Islands
- American Arbitration Association in several states

## AUTHOR

- "Communicating in Litigation Services," Florida CPA Today, July, 1998 Edition
- "Understanding the Client's Rights and the CPA's Obligations," Florida CPA Today, July 1994 Edition

## EDUCATION

### University of Florida, B.S. in Accounting

**Continued education** (and instruction) in the areas of economic damages, litigation consulting, business valuation, forensic accounting, accounting and auditing.



Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/03/19 Page 61 of 802
Case 1:11-cv-22408-MGC Document 121-1 Entered on FLSD Docket 08/18/2014 Page 40 of
262

# Record of Expert Testimony for
# Michael P. Elkin

### Attachment C

>= 2/16/2014          <= 2/15/2019

| Date | Case Style/Case No. Judge/Court | Attorney/Firm | Type of Testimony | Subject Matter |
|------|-------------------------------|---------------|-------------------|----------------|
| 11/16/2018 | Florida Beach Investment, Corp., et al v Fortune Ocean, LLLP, et al<br>12-42957 CA 44<br>William L. Thomas<br>Circuit Court of the Eleventh Judicial Circuit<br>Miami-Dade County<br>Complex Business Litigation Section | Susan E. Raffanello<br>Coffey Burlington PL<br><br>Counsel for Defendants | Deposition | Economic damages in a matter involving claims by investors and lenders into a real estate development project. |
| 5/29/2018 | Harout Samra v Vicken Bedoyan, et al<br>14-22854 CA 44<br>William C. Thomas<br>Circuit Court of the Eleventh Judicial Circuit<br>Miami-Dade County<br>Complex Business Litigation Section | Jose M. Ferrer<br>Bilzin Sumberg Baena Price & Axelrod, LLP<br><br>Counsel for Plaintiff | Deposition | Damages and business valuation in a matter involving the dissociation of a partner |
| 1/29/2018 | Williams Island Property Owner's Assoc. v Two Islands Development et al<br>13-015004 (CA 44)<br>William C. Thomas<br>Circuit Court of the Eleventh Judicial Circuit<br>Miami-Dade County<br>Complex Business Litigation Section | Richard H Critchlow<br>Kenny Nachwalter, P.A.<br><br>Counsel for Counter Defendant | Trial | Lost profit and other damages in a matter involving breach of contract and other claims relating to a condominium development project. |
| 12/28/2017 | Williams Island Property Owner's Assoc. v Two Islands Development et al<br>13-015004 (CA 44)<br>William C. Thomas<br>Circuit Court of the Eleventh Judicial Circuit<br>Miami-Dade County<br>Complex Business Litigation Section | Richard H Critchlow<br>Kenny Nachwalter, P.A.<br><br>Counsel for Plaintiff / Counter Defendant | Deposition | Lost profit and other damages in a matter involving breach of contract and other claims relating to a condominium development project. |
| 12/08/2017 | Elka Holdings, LLC et al v Project Development Enterprise, LLC<br>13-2015-CA-029334-01<br>Samantha Ruiz-Cohen<br>11th Judicial Circuit of Florida<br>Miami-Dade County | Alvin Davis<br>Squire Patton Boggs (US) LLP<br><br>Counsel for Defendants | Trial | Damages and related analysis in connection with a dispute among partnership members. |
| 10/06/2017 | Elka Holdings, LLC et al v Project Development Enterprise, LLC<br>13-2015-CA-029334-01<br>Samantha Ruiz-Cohen<br>11th Judicial Circuit of Florida<br>Miami-Dade County | Alvin Davis<br>Squire Patton Boggs (US) LLP<br><br>Counsel for Defendants | Deposition | Damages and related analysis in connection with a dispute among partnership members. |

Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/03/19 Page 62 of 802
Case 1:11-cv-22408-MGC    Document 54-3 Entered on FLSD Docket 09/18/2012 Page 41 of
262

# Record of Expert Testimony for
# Michael P. Elkin

>= 2/16/2014          <= 2/15/2019

| Date | Case Style/Case No. Judge/Court | Attorney/Firm | Type of Testimony | Subject Matter |
|------|----------------------------------|---------------|-------------------|----------------|
| 5/04/2017 | Compass iTech, LLC v. eVestment Alliance, LLC 9:14-cv-81241-KAM Kenneth A. Marra United States District Court Southern District of Florida West Palm Beach Division | Andrew Gold Akerman, LLP  Counsel for Defendant / Counterclaim Plainitff | Trial | Damages relating to lost profits, unjust enrichment (disgorgement) and extra expenses. |
| 4/07/2017 | Compass iTech, LLC v. eVestment Alliance, LLC 9:14-cv-81241-KAM Kenneth A. Marra United States District Court Southern District of Florida West Palm Beach Division | Andrew Gold Akerman, LLP  Counsel for Defendant / Counterclaim Plainitff | Deposition | Updated damages in the form of disgorgement and lost profits. |
| 11/30/2016 | ADWEISS LLLP v. John A. Daum, et al  13-027747 CA 05 John Schlesinger Circuit Court of the Eleventh Judicial Circuit Miami-Dade County Civil Division | Loren S Granoff Loren S. Granoff, P. A.  Counsel for Defendant | Trial | Investment portfolio performance; damages |
| 11/01/2016 | LaDove, Inc. v Carolyn Plummer et al  2015-011239 CA (40) John W. Thornton Circuit Court of the Eleventh Judicial Circuit Miami-Dade County Complex Business Litigation Section | Allen P. Pegg Hogan Lovells US LLP  Counsel for Defendant | Deposition | Lost profits in a matter involving claims of tortious interference, fraud, conversion and civil theft. |
| 7/21/2016 | Infinity Sales Group, LLC v. Valassis Communications, Inc. et al 9:15-cv-80463 Robin L. Rosenberg United States District Court Southern District of Florida West Palm Beach Division | William Roppolo Baker & McKenzie LLP  Counsel for Plaintiff | Deposition | Damages in a case involving breach of contract and other claims |
| 3/28/2016 | ADWEISS LLLP v. John A. Daum, et al  13-027747 CA 05 John Schlesinger Circuit Court of the Eleventh Judicial Circuit Miami-Dade County Civil Division | Loren S Granoff Loren S. Granoff, P. A.  Counsel for Defendant / Counter-claimant | Deposition | Economic damages relating to breach of contract claims |

Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/03/19 Page 63 of 802
Case 1:11-cv-22408-MGC Document 144-3 Entered on FLSD Docket 08/15/2013 Page 42 of
262

# Record of Expert Testimony for
# Michael P. Elkin

>= 2/16/2014        <= 2/15/2019

| Date | Case Style/Case No. Judge/Court | Attorney/Firm | Type of Testimony | Subject Matter |
|------|-------------------------------|---------------|-------------------|----------------|
| 3/22/2016 | Tien v Tien and American University of the Caribbean 06-32010 FC 33 Leon M. Firtel Circuit Court Miami-Dade County Family Division | Kalil, Craig Aballi Milne Kalil , P.A. <br><br> Counsel for Respondents | Hearing | Damages to corporate entities in connection with enjoined funds |
| 2/24/2016 | Compass iTech, LLC v. eVestment Alliance, LLC 9:14-cv-81241-KAM Kenneth A. Marra United States District Court Southern District of Florida West Palm Beach Division | Andrew Gold Akerman, LLP <br><br> Counsel for Defendant | Deposition | Damages in the form of disgorgement, lost profits and lost business value and other related topics |
| 8/18/2014 | Fox-Lake Worth, Inc. v Anderson & Carr, Inc. 502012CA 018092XXXXMB AD Gregory Keyser Circuit Court of the Fifteenth Judicial Circuit Palm Beach County Civil Division | Gregory Cook Gregory D. Cook, P.A. <br><br> Counsel for Plaintiff | Deposition | Lost profits damages |
| 5/22/2015 | Vicente Guerra v Variety Children's Hospital 1:14-CV-23154-KMW United States District Court Southern District of Florida Miami Division | Bayardo E. Aleman Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A. <br><br> Counsel for Defendant | Deposition | Damages in an employment law matter |
| 2/03/2015 | American University of the Caribbean v. Henry Tien and Ming Tien 04-20834-CIV-Dimitrouleas/Valle William P. Dimitrouleas United States District Court Southern District of Florida Miami Division | Craig Kalil Aballi Milne Kalil , P.A. <br><br> Counsel for Plaintiff | Trial | Damages in a civil theft matter |
| 11/11/2014 | Roof & Rack Products, Inc. v GYB Investors, LLC, et al 13-80575-CIV Daniel T.K. Hurley United States District Court Southern District of Florida | Jon Polenberg Polenberg, Cooper, Saunders & Riesberg, PL <br><br> Counsel for Plaintiff | Deposition | Damages in a matter involving copyright infringement and breach of contract claims relating to a construction project. |

# Record of Expert Testimony for
# Michael P. Elkin

>= 2/16/2014          <= 2/15/2019

| Date | Case Style/Case No. Judge/Court | Attorney/Firm | Type of Testimony | Subject Matter |
|------|----------------------------------|---------------|-------------------|----------------|
| 8/07/2014 | Denarii Systems, LLC v Omar Arab, et al<br><br>12-24239-CIV-O'Sullivan<br>John J. O'Sullivan<br>United States District Court<br>Southern District of Florida<br>Miami Division | Adam Hall<br>Hall, Lamb and Hall, P.A.<br><br><br>Counsel for Plaintiff | Trial | Investigation results and damages related to various fraud schemes. |
| 6/10/2014 | Epic Hotel, LLC v. DP Property Holdings, LLC, et. al.<br>11-08742 CA-40<br>Jennifer D. Bailey<br>11th Judicial Circuit of Florida<br>Miami-Dade County<br>Complex Business Litigation Section | Stearns, Eugene E.<br>Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A.<br><br>Counsel for Plaintiff | Deposition | Lost profits and other damages due to business interruption. |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-22408-Civ-COOKE

EDUARDO AND CARMEN AMORIN, *et al.*,
individually and on behalf of others similarly
situated,

       Plaintiffs,

vs.

TAISHAN GYPSUM CO., LTD., f/k/a
SHANDONG TIASHE DONGXIN CO. LTD.,
*et al.*,

       Defendants.

_____

# Exhibit 1

**Calculations of Damages for Priority Claimant**

# Janet Avery

EXHIBIT TO THE EXPERT WITNESS REPORT OF:
MICHAEL P. ELKIN, CPA/CFF/ABV, CFE
IN THE PRIORITY CLAIMANT TRIAL

February 19, 2019



Exhibit 1
Data and Damage Summary - Janet Avery

*Chinese Drywall Litigation Involving Priority Claimants*

| Data: | | Reference / Notes |
|---|---|---|
| Address of Affected property | 10671 Camarelle Circle | *SPPF* |
| | Fort Myers, FL 33913 | *SPPF* |
| Date Affected property acquired | November 30, 2007 | *SPPF* |
| Date Chinese drywall installed | 2007 | *SPPF* |
| Date moved into Affected property | November 30, 2007 | *SPPF* |
| Date first aware of Chinese drywall | October-09 | *SPPF* |
| | | |
| Move out date to alternate living | March 8, 2010 | *ROG 1, #2* |
| Date returned to Affected property | N/A | *ROG 1, #2* |
| End date for alternate living expenses | July 21, 2011 | *ROG 1, #2* |
| | | |
| Still own property? | N | *SPPF* |
| Bankruptcy caused by damage? | N | *SPPF* |
| Foreclosure or short sale? | Y | *SPPF* |
| Affected property sold? | Y | *SPPF* |
| Sale date | July 21, 2011 | *SPPF* |
| Type of sale | Short Sale | *SPPF* |
| | | |
| Remediation status | None | *SPPF* |
| Remediation period | N/A | *SPPF* |

| Damage Summary: | | |
|---|---|---|
| | | |
| Full or Partial Out-of-Pocket Remediation Expenses | $                    - | |
| | | |
| Other Damages | | |
| Alternate Living Expenses | $          14,822 | *Exh. 1.1* |
| Personal Property Damage Expense | 284 | *Exh. 1.1* |
| Additional Damages | - | |
| | $          15,106 | |
| | | |
| Lost Equity | $         115,365 | *Exh 1.2* |
| | | |
| Diminution in Value | TBD | |
| | | |
| Loss of Use and Enjoyment | TBD | |
| | | |
| Punitive Damages | TBD | |

Exhibit 1.1
Damage Claims Detail - Janet Avery

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | $ 522 | 3/8/2010 | X | Lease Agreement | N/A | Doc ID: 365706 | 1 |
| Alternate Living Expenses | Moving Expenses | Moving Expenses | 3,500 | 3/8/2010 | X | SPPF | N/A | Exhibit 13 | 5 |
| Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | 675 | 4/1/2010 | X | Lease Agreement | N/A | Doc ID: 365706 | 1 |
| Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | 675 | 5/1/2010 | X | Lease Agreement | N/A | Doc ID: 365706 | 1 |
| Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | 675 | 6/1/2010 | X | Lease Agreement | N/A | Doc ID: 365706 | 1 |
| Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | 675 | 7/1/2010 | X | Lease Agreement | N/A | Doc ID: 365706 | 1 |
| Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | 675 | 8/1/2010 | X | Lease Agreement | N/A | Doc ID: 365706 | 1 |
| Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | 675 | 9/1/2010 | X | Lease Agreement | N/A | Doc ID: 365706 | 1 |
| Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | 675 | 10/1/2010 | X | Lease Agreement | N/A | Doc ID: 365706 | 1 |
| Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | 675 | 11/1/2010 | X | Lease Agreement | N/A | Doc ID: 365706 | 1 |
| Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | 675 | 12/1/2010 | X | Lease Agreement | N/A | Doc ID: 365706 | 1 |
| Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | 675 | 1/1/2011 | X | Lease Agreement | N/A | Doc ID: 365706 | 1 |
| Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | 675 | 1/29/2011 | | Check | N/A | Doc ID: 365706 | 8 |
| Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | 675 | 3/1/2011 | X | Lease Agreement | N/A | Doc ID: 365706 | 1 |
| Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | 675 | 4/1/2011 | X | Lease Agreement | N/A | Doc ID: 365706 | 1 |
| Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | 675 | 5/1/2011 | X | Lease Agreement | N/A | Doc ID: 365706 | 1 |
| Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | 675 | 6/1/2011 | X | Lease Agreement | N/A | Doc ID: 365706 | 1 |
| Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | 675 | 7/1/2011 | X | Lease Agreement | N/A | Doc ID: 365706 | 1 |
| **Alternate Living Expenses Total** | | | **$ 14,822** | | | | | | |
| Personal Property Damage Expense | J & D Heating and Air Conditioning, Inc. | HVAC Repairs | $ 100 | 4/22/2009 | | Invoice | N/A | Doc ID: 361251 | 1 |
| Personal Property Damage Expense | J & D Heating and Air Conditioning, Inc. | HVAC Repairs | 184 | 8/28/2009 | | Invoice | N/A | Doc ID: 361251 | 1 |
| **Personal Property Damage Expense Total** | | | **$ 284** | | | | | | |

Exhibit 1.2
Lost Equity - Janet Avery

*Chinese Drywall Litigation Involving Priority Claimants*

|  |  |  | Source Document |
|---|---|---:|---|
| Initial Acquisition |  |  |  |
| Purchase Price |  | $ 195,000 | Doc ID. 178127 - HUD Statement dated 11/30/2007 |
| Settlement Charges |  | 7,859 | Doc ID. 178127 - HUD Statement dated 11/30/2007 |
| Total Gross Amount Due from Claimant |  | $ 202,859 |  |
|  |  |  |  |
| Less |  |  |  |
| Deposit Made by Claimant |  | $ (19,500) | Doc ID. 178127 - HUD Statement dated 11/30/2007 |
| Borrowings by Claimant |  | (90,000) | Doc ID. 178127 - HUD Statement dated 11/30/2007 |
| Credits |  | (100) | Doc ID. 178127 - HUD Statement dated 11/30/2007 |
| Amount Due from Claimant at Close |  | $ 93,259 |  |
|  |  |  |  |
| Funds Paid by Claimant |  |  |  |
| Deposit Paid with Contract |  | $ 19,500 | Doc ID. 178127 - HUD Statement dated 11/30/2007 |
| Cash Paid at Closing |  | 93,259 | Doc ID. 178127 - HUD Statement dated 11/30/2007 |
| Total Payments for Initial Purchase | a | $ 112,759 |  |
|  |  |  |  |
| Mortgage |  |  |  |
| Mortgage Beginning Balance |  | $ 90,000 | Exhibit 8 - Fifth Third Statements and printouts |
| Mortgage Balance at Payoff |  | 87,394 | Exhibit 8 - Fifth Third Statements and printouts |
| Principal Payments Made | b | $ 2,606 |  |
|  |  |  |  |
| Loan for Capital Improvements |  |  |  |
| Loan for Capital Improvements Beginning Balance |  | $ 25,000 | 1st Amended Answers to Defendant's 2nd Set of Rogs |
| Loan for Capital Improvements Balance at Payoff [1] |  | 25,000 |  |
| Principal Payments Made | c | $ - |  |
|  |  |  |  |
| Total Lost Equity | = a + b + c | $ 115,365 |  |

Notes:
[1] Per the 1st Amended Answers to Defendant's Second Set of Rogs there was a loan taken out
in the amount of $25,000 for capital improvements. To date no information has been provided to verify
the principal payments on this loan. Should that information be provided this Lost Equity is subject
to change.

Exhibit 1.3
Calculation of Prejudgment Interest Summary - Janet Avery

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Vendor | Description | Amount | Total Interest Through 7/22/2019 |
|---|---|---|---|---|---|---|
| 3/8/2010 | 4/7/2010 | Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | $ 522 | $ 253 |
| 3/8/2010 | 4/7/2010 | Alternate Living Expenses | Moving Expenses | Moving Expenses | 3,500 | 1,694 |
| 4/1/2010 | 5/1/2010 | Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | 675 | 324 |
| 5/1/2010 | 5/31/2010 | Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | 675 | 321 |
| 6/1/2010 | 7/1/2010 | Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | 675 | 317 |
| 7/1/2010 | 7/31/2010 | Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | 675 | 314 |
| 8/1/2010 | 8/31/2010 | Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | 675 | 310 |
| 9/1/2010 | 10/1/2010 | Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | 675 | 307 |
| 10/1/2010 | 10/31/2010 | Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | 675 | 304 |
| 11/1/2010 | 12/1/2010 | Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | 675 | 300 |
| 12/1/2010 | 12/31/2010 | Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | 675 | 297 |
| 1/1/2011 | 1/31/2011 | Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | 675 | 294 |
| 1/29/2011 | 2/28/2011 | Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | 675 | 290 |
| 3/1/2011 | 3/31/2011 | Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | 675 | 287 |
| 4/1/2011 | 5/1/2011 | Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | 675 | 284 |
| 5/1/2011 | 5/31/2011 | Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | 675 | 280 |
| 6/1/2011 | 7/1/2011 | Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | 675 | 277 |
| 7/1/2011 | 7/31/2011 | Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | 675 | 273 |
| | | Alternate Living Expenses Total | | | $ 14,822 | $ 6,726 |
| 4/22/2009 | 5/22/2009 | Personal Property Damage Expense | J & D Heating and Air Conditioning, Inc. | HVAC Repairs | $ 100 | $ 55 |
| 8/28/2009 | 9/27/2009 | Personal Property Damage Expense | J & D Heating and Air Conditioning, Inc. | HVAC Repairs | 184 | 96 |
| | | Personal Property Damage Expense Total | | | $ 284 | $ 151 |

Exhibit 1.3A
Calculation of Prejudgment Interest Detail - Janet Avery

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Amount | 12/31/2009 | 12/31/2010 | 9/30/2011 | 12/31/2011 | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 3/31/2016 | 6/30/2016 | 9/30/2016 | 12/31/2016 | 3/31/2017 | 6/30/2017 | 9/30/2017 | 12/31/2017 | 3/31/2018 | 6/30/2018 | 9/30/2018 | 12/31/2018 | 7/22/2019 | Total Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/8/2010 | 4/7/2010 | Alternate Living Expenses | $ 522 $ | - $ | 23 $ | 23 $ | 6 $ | 25 $ | 25 $ | 25 $ | 25 $ | 6 $ | 6 $ | 6 $ | 6 $ | 6 $ | 7 $ | 7 $ | 7 $ | 7 $ | 8 $ | 8 $ | 18 $ | 253 |
| 3/8/2010 | 4/7/2010 | Alternate Living Expenses | 3,500 | - | 154 | 157 | 42 | 166 | 166 | 166 | 166 | 41 | 42 | 43 | 43 | 44 | 46 | 47 | 48 | 50 | 53 | 54 | 123 | 1,694 |
| 4/1/2010 | 5/1/2010 | Alternate Living Expenses | 675 | - | 27 | 30 | 8 | 32 | 32 | 32 | 32 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 10 | 24 | 324 |
| 5/1/2010 | 5/31/2010 | Alternate Living Expenses | 675 | - | 24 | 30 | 8 | 32 | 32 | 32 | 32 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 10 | 24 | 321 |
| 6/1/2010 | 7/1/2010 | Alternate Living Expenses | 675 | - | 20 | 30 | 8 | 32 | 32 | 32 | 32 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 10 | 24 | 317 |
| 7/1/2010 | 7/31/2010 | Alternate Living Expenses | 675 | - | 17 | 30 | 8 | 32 | 32 | 32 | 32 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 10 | 24 | 314 |
| 8/1/2010 | 8/31/2010 | Alternate Living Expenses | 675 | - | 14 | 30 | 8 | 32 | 32 | 32 | 32 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 10 | 24 | 310 |
| 9/1/2010 | 10/1/2010 | Alternate Living Expenses | 675 | - | 10 | 30 | 8 | 32 | 32 | 32 | 32 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 10 | 24 | 307 |
| 10/1/2010 | 10/31/2010 | Alternate Living Expenses | 675 | - | 7 | 30 | 8 | 32 | 32 | 32 | 32 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 10 | 24 | 304 |
| 11/1/2010 | 12/1/2010 | Alternate Living Expenses | 675 | - | 3 | 30 | 8 | 32 | 32 | 32 | 32 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 10 | 24 | 300 |
| 12/1/2010 | 12/31/2010 | Alternate Living Expenses | 675 | - | | 30 | 8 | 32 | 32 | 32 | 32 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 10 | 24 | 297 |
| 1/1/2011 | 1/31/2011 | Alternate Living Expenses | 675 | - | | 27 | 8 | 32 | 32 | 32 | 32 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 10 | 24 | 294 |
| 1/29/2011 | 2/28/2011 | Alternate Living Expenses | 675 | - | | 24 | 8 | 32 | 32 | 32 | 32 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 10 | 24 | 290 |
| 3/1/2011 | 3/31/2011 | Alternate Living Expenses | 675 | - | | 20 | 8 | 32 | 32 | 32 | 32 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 10 | 24 | 287 |
| 4/1/2011 | 5/1/2011 | Alternate Living Expenses | 675 | - | | 17 | 8 | 32 | 32 | 32 | 32 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 10 | 24 | 284 |
| 5/1/2011 | 5/31/2011 | Alternate Living Expenses | 675 | - | | 14 | 8 | 32 | 32 | 32 | 32 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 10 | 24 | 280 |
| 6/1/2011 | 7/1/2011 | Alternate Living Expenses | 675 | - | | 10 | 8 | 32 | 32 | 32 | 32 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 10 | 24 | 277 |
| 7/1/2011 | 7/31/2011 | Alternate Living Expenses | 675 | - | | 7 | 8 | 32 | 32 | 32 | 32 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 10 | 24 | 273 |
| | | **Alternate Living Expenses Total** | $ 14,822 $ | - $ | 299 $ | 571 $ | 177 $ | 704 $ | 704 $ | 704 $ | 704 $ | 175 $ | 176 $ | 180 $ | 183 $ | 182 $ | 187 $ | 193 $ | 200 $ | 202 $ | 211 $ | 223 $ | 228 $ | 522 $ | 6,726 |
| 4/22/2009 | 5/22/2009 | Personal Property Damage Expense | $ 100 $ | 5 $ | 6 $ | 4 $ | 1 $ | 5 $ | 5 $ | 5 $ | 5 $ | 1 $ | 1 $ | 1 $ | 1 $ | 1 $ | 1 $ | 1 $ | 1 $ | 1 $ | 1 $ | 2 $ | 2 $ | 4 $ | 55 |
| 8/28/2009 | 9/27/2009 | Personal Property Damage Expense | 184 | 4 | 11 | 8 | 2 | 9 | 9 | 9 | 9 | 2 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 6 | 96 |
| | | **Personal Property Damage Expense Total** | $ 284 $ | 9 $ | 17 $ | 13 $ | 3 $ | 13 $ | 13 $ | 13 $ | 13 $ | 3 $ | 3 $ | 3 $ | 3 $ | 4 $ | 4 $ | 4 $ | 4 $ | 4 $ | 4 $ | 4 $ | 10 $ | 151 |

*Assumptions:*

| | 12/31/2009 | 12/31/2010 | 9/30/2011 | 12/31/2011 | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 3/31/2016 | 6/30/2016 | 9/30/2016 | 12/31/2016 | 3/31/2017 | 6/30/2017 | 9/30/2017 | 12/31/2017 | 3/31/2018 | 6/30/2018 | 9/30/2018 | 12/31/2018 | 7/22/2019 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Florida Statutory Interest Rates | | | | | | | | | | | | | | |
| Annual | 8.00% | 6.00% | 6.00% | 4.75% | 4.75% | 4.75% | 4.75% | 4.75% | 4.75% | 4.78% | 4.84% | 4.91% | 4.97% | 5.05% | 5.17% | 5.35% | 5.53% | 5.72% | 5.97% | 6.09% | 6.33% |
| Per Diem | 0.0219200% | 0.0164400% | 0.0164400% | 0.0130137% | 0.0129781% | 0.0130137% | 0.0130137% | 0.0130137% | 0.0129781% | 0.0130601% | 0.0132404% | 0.0134153% | 0.0134153% | 0.0136164% | 0.0136164% | 0.0138356% | 0.0141643% | 0.0146575% | 0.0151507% | 0.0156712% | 0.0163362% | 0.0166849% | 0.0173425% |

1.A
Documents and Other Information Considered - Janet Avery

*Chinese Drywall Litigation Involving Priority Claimants*

*Bate Stamp (if applicable)*

| No. | Claimant | General Description | First Page | Last Page |
|---|---|---|---|---|
| **A. Pleadings and Other Legal Documents:** | | | | |
| 1 | All | Judge Cooke's Order, dated November 16, 2018 | | |
| 2 | Avery | Priority Claimant Janet Avery Answers to Interrogatories, dated November 30, 2018 | | |
| 3 | Avery | Priority Claimant Janet Avery Answers to Defendant's Second Set of Interrogatories, dated November 30, 2018 | | |
| 4 | Avery | Priority Claimant Janet Avery First Amended Answers to Defendants' Second Set of Interrogatories, dated December 4, 2018 | | |
| 5 | Avery | Janet Avery Second Amended Supplemental Profile Plaintiff Profile Form, dated November 30, 2018 | | |
| **B. Depositions & Corresponding Exhibits:** | | | | |
| 1 | Avery | Deposition Transcript of Janet Avery, dated December 7, 2018 | | |
| 2 | Avery | Deposition Exhibit 01 - Lee County Property Appraiser - Online Parcel Inquiry - Property Data | | |
| 3 | Avery | Deposition Exhibit 02 - Priority Claimant Janet Avery's Answers to Defendants' Second Set of Interrogatories | | |
| 4 | Avery | Deposition Exhibit 03 - Priority Claimant Janet Avery's Answers to Interrogatories | | |
| 5 | Avery | Deposition Exhibit 04 - Floor Plan | | |
| 6 | Avery | Deposition Exhibit 05 - Drywall Inspection Report - Kross Inspectors | | |
| 7 | Avery | Deposition Exhibit 06 - Ericksons's Drying Systems - Chinese Drywall Inspection | | |
| 8 | Avery | Deposition Exhibit 07 - Mortgage | | |
| 9 | Avery | Deposition Exhibit 08 - ACE - Fifth Third Bank | | |
| 10 | Avery | Deposition Exhibit 09 - Claim of Lien | | |
| 11 | Avery | Deposition Exhibit 10 - Notice of Lis Pendens | | |
| 12 | Avery | Deposition Exhibit 11 - U.S. Department of Housing and Urban Development - Settlement Statement | | |
| 13 | Avery | Deposition Exhibit 12 - Release of Mortgage | | |
| 14 | Avery | Deposition Exhibit 13 - Second Amended Supplemental Plaintiff Profile Form | | |
| 15 | Avery | Deposition Exhibit 14 - Chinese Drywall Settlement Program - Copies of Checks | | |
| 16 | Avery | Deposition Exhibit 15 - Note - 10671 Camarelle Circle | | |
| 17 | Avery | Deposition Exhibit 16 - Affidavit of Madeline Davis | | |
| **C. Supporting Documentation** | | | | |
| 1 | Avery | Doc ID. 178127 - Affected Property Closing Statement, dated November 30, 2007 | | |
| 2 | Avery | Doc ID. 361251 - Avery HVAC Repairs by J&D Heating | | |
| 3 | Avery | Doc ID. 365706 - Avery Lease Agreement for Alternate Living Expenses | | |
| 4 | Avery | Doc ID. 365705 - Fifth Third Bank Mortgage Statement | | |
| 5 | Avery | Janet Avery Out of Pocket Damage Summary Provided by Counsel | | |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-22408-Civ-COOKE

EDUARDO AND CARMEN AMORIN, *et al.*,
individually and on behalf of others similarly
situated,

       Plaintiffs,

vs.

TAISHAN GYPSUM CO., LTD., f/k/a
SHANDONG TIASHE DONGXIN CO. LTD.,
*et al.*,

       Defendants.

_____

# Exhibit 2

**Calculations of Damages for Priority Claimant**

# Lillian Chatmon

EXHIBIT TO THE EXPERT WITNESS REPORT OF:
MICHAEL P. ELKIN, CPA/CFF/ABV, CFE
IN THE PRIORITY CLAIMANT TRIAL

February 19, 2019



Exhibit 2
Data and Damage Summary - Lillian Chatmon

*Chinese Drywall Litigation Involving Priority Claimants*

| Data: | | Reference / Notes |
|---|---|---|
| Address of Affected property | 4151 Bismarck Palm Drive | *SPPF* |
| | Tampa, FL 33610 | *SPPF* |
| Date Affected property acquired | March 30, 2007 | *SPPF* |
| Date Chinese drywall installed | 2006 | *SPPF* |
| Date moved into Affected property | March 30, 2007 | *SPPF* |
| Date first aware of Chinese drywall | October-09 | *SPPF* |
| | | |
| Move out date to alternate living | April-10 | *ROG 1, #2* |
| Date returned to Affected property | Not Yet | *ROG 1, #2* |
| End date for alternate living expenses | Not Yet | *ROG 1, #2* |
| | | |
| Still own property? | Y | *SPPF* |
| Bankruptcy caused by damage? | N | *SPPF* |
| Foreclosure or short sale? | N | *SPPF* |
| Affected property sold? | N | *SPPF* |
| Sale date | N/A | *SPPF* |
| Type of sale | N/A | *SPPF* |
| | | |
| Remediation status | Partial | *Exh. 8* |
| Remediation period | After 12/4/2018 - Present | *Exh. 8* |

| Damage Summary: | | |
|---|---|---|
| Full or Partial Out-of-Pocket Remediation Expenses | $ - | |
| | | |
| Other Damages | | |
| Alternate Living Expenses | $ 23,940 | *Exh. 2.1* |
| Personal Property Damage Expense | 943 | *Exh. 2.1* |
| Additional Damages | - | |
| | $ 24,883 | |
| | | |
| Lost Equity | TBD | |
| | | |
| Diminution in Value | TBD | |
| | | |
| Loss of Use and Enjoyment | TBD | |
| | | |
| Punitive Damages | TBD | |

Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/03/19 Page 74 of 802
Case 1:11-cv-22408-MGC Document 272-1 Entered on FLSD Docket 09/18/2013 Page 53 of
262

Exhibit 2.1
Damage Claims Detail - Lillian Chatmon

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | $ 150 | 4/1/2010 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 5/1/2010 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 6/1/2010 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 7/1/2010 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 8/1/2010 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 9/1/2010 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 10/1/2010 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 11/1/2010 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 12/1/2010 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 1/1/2011 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 2/1/2011 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 3/1/2011 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 4/1/2011 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 5/1/2011 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 6/1/2011 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 7/1/2011 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 8/1/2011 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 9/1/2011 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 10/1/2011 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 11/1/2011 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 12/1/2011 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 1/1/2012 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 2/1/2012 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 3/1/2012 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 4/1/2012 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 5/1/2012 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 6/1/2012 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 7/1/2012 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 8/1/2012 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 9/1/2012 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 10/1/2012 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 11/1/2012 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 12/1/2012 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 1/1/2013 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 2/1/2013 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |

Exhibit 2.1
Damage Claims Detail - Lillian Chatmon

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 3/1/2013 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 4/1/2013 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 5/1/2013 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 6/1/2013 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 7/1/2013 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 8/1/2013 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 9/1/2013 | X | Claimant | Chatmon_000121 | Exhibit 09 | 2 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 10/1/2013 | X | Claimant | Chatmon_000121 | Exhibit 09 | 2 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 11/1/2013 | X | Claimant | Chatmon_000121 | Exhibit 09 | 2 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 12/1/2013 | X | Claimant | Chatmon_000121 | Exhibit 09 | 2 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 1/1/2014 | X | Claimant | Chatmon_000121 | Exhibit 09 | 2 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 2/1/2014 | X | Claimant | Chatmon_000121 | Exhibit 09 | 2 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 3/1/2014 | X | Claimant | Chatmon_000121 | Exhibit 09 | 2 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 4/1/2014 | X | Claimant | Chatmon_000121 | Exhibit 09 | 2 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 5/1/2014 | X | Claimant | Chatmon_000121 | Exhibit 09 | 2 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 6/1/2014 | X | Claimant | Chatmon_000121 | Exhibit 09 | 2 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 700 | 7/1/2014 | | Check | Chatmon_000137 | Exhibit 09 | 18 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 800 | 12/5/2014 | | Check | Chatmon_000138 | Exhibit 09 | 19 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 1/7/2015 | | Check | Chatmon_000139 | Exhibit 09 | 20 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 2/3/2015 | | Check | Chatmon_000140 | Exhibit 09 | 21 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 3/1/2015 | | Check | Chatmon_000141 | Exhibit 09 | 22 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 4/3/2015 | | Check | Chatmon_000142 | Exhibit 09 | 23 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 5/2/2015 | | Check | Chatmon_000143 | Exhibit 09 | 24 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 6/2/2015 | | Check | Chatmon_000144 | Exhibit 09 | 25 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 7/2/2015 | | Check | Chatmon_000145 | Exhibit 09 | 26 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 8/2/2015 | | Check | Chatmon_000146 | Exhibit 09 | 27 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 9/3/2015 | | Check | Chatmon_000147 | Exhibit 09 | 28 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 10/1/2015 | | Check | Chatmon_000148 | Exhibit 09 | 29 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 11/2/2015 | | Check | Chatmon_000149 | Exhibit 09 | 30 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 150 | 12/2/2015 | | Check | Chatmon_000150 | Exhibit 09 | 31 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 1/3/2016 | | Check | Chatmon_000151 | Exhibit 09 | 32 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 2/1/2016 | | Check | Chatmon_000152 | Exhibit 09 | 33 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 3/1/2016 | X | Claimant | Chatmon_000124 | Exhibit 09 | 5 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 4/2/2016 | | Check | Chatmon_000153 | Exhibit 09 | 34 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 150 | 5/1/2016 | | Check | Chatmon_000154 | Exhibit 09 | 35 |

Exhibit 2.1
Damage Claims Detail - Lillian Chatmon

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 1,300 | 7/26/2016 | | Check | Chatmon_000155 | Exhibit 09 | 36 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 12/1/2016 | X | Claimant | Chatmon_000124 | Exhibit 09 | 5 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 250 | 1/1/2017 | X | Claimant | Chatmon_000124 | Exhibit 09 | 5 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 250 | 2/1/2017 | X | Claimant | Chatmon_000124 | Exhibit 09 | 5 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 250 | 3/1/2017 | X | Claimant | Chatmon_000124 | Exhibit 09 | 5 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 250 | 4/1/2017 | X | Claimant | Chatmon_000124 | Exhibit 09 | 5 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 250 | 5/1/2017 | X | Claimant | Chatmon_000124 | Exhibit 09 | 5 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 250 | 6/1/2017 | X | Claimant | Chatmon_000124 | Exhibit 09 | 5 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 250 | 7/9/2017 | | Check | Chatmon_000160 | Exhibit 09 | 41 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 200 | 9/14/2017 | | Check | Chatmon_000159 | Exhibit 09 | 40 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 200 | 10/2/2017 | | Check | Chatmon_000158 | Exhibit 09 | 39 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 250 | 11/2/2017 | | Check | Chatmon_000157 | Exhibit 09 | 38 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 250 | 12/2/2017 | | Check | Chatmon_000156 | Exhibit 09 | 37 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 1/2/2018 | | Check | Chatmon_000136 | Exhibit 09 | 17 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 2/4/2018 | | Check | Chatmon_000135 | Exhibit 09 | 16 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 3/4/2018 | | Check | Chatmon_000134 | Exhibit 09 | 15 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 4/2/2018 | | Check | Chatmon_000133 | Exhibit 09 | 14 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 5/4/2018 | | Check | Chatmon_000132 | Exhibit 09 | 13 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 450 | 6/1/2018 | | Check | Chatmon_000131 | Exhibit 09 | 12 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 450 | 7/1/2018 | | Check | Chatmon_000130 | Exhibit 09 | 11 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 450 | 8/2/2018 | | Check | Chatmon_000129 | Exhibit 09 | 10 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 450 | 9/2/2018 | | Check | Chatmon_000128 | Exhibit 09 | 9 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 470 | 10/1/2018 | | Check | Chatmon_000127 | Exhibit 09 | 8 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 470 | 11/11/2018 | | Check | Chatmon_000126 | Exhibit 09 | 7 |
| **Alternate Living Expenses Total** | | | **$ 23,940** | | | | | | |
| Personal Property Damage Expense | Egg Systems Inc. | HVAC Repairs | $ 220 | 9/8/2008 | | Invoice | N/A | 113601 | 1 |
| Personal Property Damage Expense | Egg Systems Inc. | HVAC Repairs | 363 | 11/15/2008 | | Invoice | N/A | 113601 | 2 |
| Personal Property Damage Expense | Egg Systems Inc. | HVAC Repairs | 360 | 7/8/2009 | | Invoice | N/A | 113601 | 3 |
| **Personal Property Damage Expense Total** | | | **$ 943** | | | | | | |

Exhibit 2.3
Calculation of Prejudgment Interest Summary - Lillian Chatmon

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Vendor | Description | Amount | Total Interest Through 7/22/2019 |
|---|---|---|---|---|---|---|
| 4/1/2010 | 5/1/2010 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | $ 150 | $ 72 |
| 5/1/2010 | 5/31/2010 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 71 |
| 6/1/2010 | 7/1/2010 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 71 |
| 7/1/2010 | 7/31/2010 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 70 |
| 8/1/2010 | 8/31/2010 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 69 |
| 9/1/2010 | 10/1/2010 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 68 |
| 10/1/2010 | 10/31/2010 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 67 |
| 11/1/2010 | 12/1/2010 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 67 |
| 12/1/2010 | 12/31/2010 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 66 |
| 1/1/2011 | 1/31/2011 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 65 |
| 2/1/2011 | 3/3/2011 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 64 |
| 3/1/2011 | 3/31/2011 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 64 |
| 4/1/2011 | 5/1/2011 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 63 |
| 5/1/2011 | 5/31/2011 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 62 |
| 6/1/2011 | 7/1/2011 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 61 |
| 7/1/2011 | 7/31/2011 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 61 |
| 8/1/2011 | 8/31/2011 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 60 |
| 9/1/2011 | 10/1/2011 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 59 |
| 10/1/2011 | 10/31/2011 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 59 |
| 11/1/2011 | 12/1/2011 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 58 |
| 12/1/2011 | 12/31/2011 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 57 |
| 1/1/2012 | 1/31/2012 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 76 |
| 2/1/2012 | 3/2/2012 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 75 |
| 3/1/2012 | 3/31/2012 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 74 |
| 4/1/2012 | 5/1/2012 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 73 |
| 5/1/2012 | 5/31/2012 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 73 |
| 6/1/2012 | 7/1/2012 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 72 |
| 7/1/2012 | 7/31/2012 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 71 |
| 8/1/2012 | 8/31/2012 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 70 |
| 9/1/2012 | 10/1/2012 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 69 |
| 10/1/2012 | 10/31/2012 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 69 |
| 11/1/2012 | 12/1/2012 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 68 |
| 12/1/2012 | 12/31/2012 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 67 |
| 1/1/2013 | 1/31/2013 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 66 |
| 2/1/2013 | 3/3/2013 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 65 |
| 3/1/2013 | 3/31/2013 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 65 |
| 4/1/2013 | 5/1/2013 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 64 |
| 5/1/2013 | 5/31/2013 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 63 |
| 6/1/2013 | 7/1/2013 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 62 |
| 7/1/2013 | 7/31/2013 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 62 |
| 8/1/2013 | 8/31/2013 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 61 |
| 9/1/2013 | 10/1/2013 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 60 |
| 10/1/2013 | 10/31/2013 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 59 |
| 11/1/2013 | 12/1/2013 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 58 |
| 12/1/2013 | 12/31/2013 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 58 |
| 1/1/2014 | 1/31/2014 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 57 |
| 2/1/2014 | 3/3/2014 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 56 |
| 3/1/2014 | 3/31/2014 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 55 |
| 4/1/2014 | 5/1/2014 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 54 |
| 5/1/2014 | 5/31/2014 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 54 |
| 6/1/2014 | 7/1/2014 | Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 53 |

Exhibit 2.3
Calculation of Prejudgment Interest Summary - Lillian Chatmon

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Vendor | Description | Amount | Total Interest Through 7/22/2019 |
|---|---|---|---|---|---|---|
| 7/1/2014 | 7/31/2014 | Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 700 | 182 |
| 12/5/2014 | 1/4/2015 | Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 800 | 192 |
| 1/7/2015 | 2/6/2015 | Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 71 |
| 2/3/2015 | 3/5/2015 | Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 70 |
| 3/1/2015 | 3/31/2015 | Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 69 |
| 4/3/2015 | 5/3/2015 | Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 67 |
| 5/2/2015 | 6/1/2015 | Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 66 |
| 6/2/2015 | 7/2/2015 | Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 65 |
| 7/2/2015 | 8/1/2015 | Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 64 |
| 8/2/2015 | 9/1/2015 | Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 63 |
| 9/3/2015 | 10/3/2015 | Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 61 |
| 10/1/2015 | 10/31/2015 | Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 60 |
| 11/2/2015 | 12/2/2015 | Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 59 |
| 12/2/2015 | 1/1/2016 | Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 150 | 29 |
| 1/3/2016 | 2/2/2016 | Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 57 |
| 2/1/2016 | 3/2/2016 | Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 56 |
| 3/1/2016 | 3/31/2016 | Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 54 |
| 4/2/2016 | 5/2/2016 | Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 53 |
| 5/1/2016 | 5/31/2016 | Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 150 | 26 |
| 7/26/2016 | 8/25/2016 | Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 1,300 | 211 |
| 12/1/2016 | 12/31/2016 | Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 43 |
| 1/1/2017 | 1/31/2017 | Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 250 | 35 |
| 2/1/2017 | 3/3/2017 | Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 250 | 34 |
| 3/1/2017 | 3/31/2017 | Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 250 | 33 |
| 4/1/2017 | 5/1/2017 | Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 250 | 32 |
| 5/1/2017 | 5/31/2017 | Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 250 | 31 |
| 6/1/2017 | 7/1/2017 | Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 250 | 30 |
| 7/9/2017 | 8/8/2017 | Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 250 | 29 |
| 9/14/2017 | 10/14/2017 | Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 200 | 21 |
| 10/2/2017 | 11/1/2017 | Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 200 | 20 |
| 11/2/2017 | 12/2/2017 | Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 250 | 24 |
| 12/2/2017 | 1/1/2018 | Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 250 | 23 |
| 1/2/2018 | 2/1/2018 | Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 27 |
| 2/4/2018 | 3/6/2018 | Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 25 |
| 3/4/2018 | 4/3/2018 | Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 24 |
| 4/2/2018 | 5/2/2018 | Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 22 |
| 5/4/2018 | 6/3/2018 | Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 21 |
| 6/1/2018 | 7/1/2018 | Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 450 | 29 |
| 7/1/2018 | 7/31/2018 | Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 450 | 27 |
| 8/2/2018 | 9/1/2018 | Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 450 | 25 |
| 9/2/2018 | 10/2/2018 | Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 450 | 23 |
| 10/1/2018 | 10/31/2018 | Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 470 | 21 |
| 11/11/2018 | 12/11/2018 | Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 470 | 18 |
| | | **Alternate Living Expenses Total** | | | **$ 23,940** | **$ 5,479** |
| 9/8/2008 | 10/8/2008 | Personal Property Damage Expense | Egg Systems Inc. | HVAC Repairs | $ 220 | $ 133 |
| 11/15/2008 | 12/15/2008 | Personal Property Damage Expense | Egg Systems Inc. | HVAC Repairs | 363 | 212 |
| 7/8/2009 | 8/7/2009 | Personal Property Damage Expense | Egg Systems Inc. | HVAC Repairs | 360 | 191 |
| | | **Personal Property Damage Expense Total** | | | **$ 943** | **$ 537** |

Exhibit 2.3A
Calculation of Prejudgment Interest Detail - Lillian Chatmon

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Amount | 12/31/2006 | 12/31/2007 | 12/31/2008 | 12/31/2009 | 12/31/2010 | 9/30/2011 | 12/31/2011 | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 3/31/2016 | 6/30/2016 | 9/30/2016 | 12/31/2016 | 3/31/2017 | 6/30/2017 | 9/30/2017 | 12/31/2017 | 3/31/2018 | 6/30/2018 | 9/30/2018 | 12/31/2018 | 7/22/2019 | Total Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/1/2010 | 5/1/2010 | Alternate Living Expenses | $ 150 | $ - | $ - | $ - | $ - | $ 6 | $ 7 | $ 2 | $ 7 | $ 7 | $ 7 | $ 7 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 5 | $ 72 |
| 5/1/2010 | 5/31/2010 | Alternate Living Expenses | 150 | - | - | - | - | 5 | 7 | 2 | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 71 |
| 6/1/2010 | 7/1/2010 | Alternate Living Expenses | 150 | - | - | - | - | 5 | 7 | 2 | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 71 |
| 7/1/2010 | 7/31/2010 | Alternate Living Expenses | 150 | - | - | - | - | 4 | 7 | 2 | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 70 |
| 8/1/2010 | 8/31/2010 | Alternate Living Expenses | 150 | - | - | - | - | 3 | 7 | 2 | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 69 |
| 9/1/2010 | 10/1/2010 | Alternate Living Expenses | 150 | - | - | - | - | 2 | 7 | 2 | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 68 |
| 10/1/2010 | 10/31/2010 | Alternate Living Expenses | 150 | - | - | - | - | 2 | 7 | 2 | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 67 |
| 11/1/2010 | 12/1/2010 | Alternate Living Expenses | 150 | - | - | - | - | 1 | 7 | 2 | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 67 |
| 12/1/2010 | 12/31/2010 | Alternate Living Expenses | 150 | - | - | - | - | - | 7 | 2 | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 66 |
| 1/1/2011 | 1/31/2011 | Alternate Living Expenses | 150 | - | - | - | - | - | 6 | 2 | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 65 |
| 2/1/2011 | 3/3/2011 | Alternate Living Expenses | 150 | - | - | - | - | - | 5 | 2 | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 64 |
| 3/1/2011 | 3/31/2011 | Alternate Living Expenses | 150 | - | - | - | - | - | 5 | 2 | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 64 |
| 4/1/2011 | 5/1/2011 | Alternate Living Expenses | 150 | - | - | - | - | - | 4 | 2 | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 63 |
| 5/1/2011 | 5/31/2011 | Alternate Living Expenses | 150 | - | - | - | - | - | 3 | 2 | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 62 |
| 6/1/2011 | 7/1/2011 | Alternate Living Expenses | 150 | - | - | - | - | - | 2 | 2 | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 61 |
| 7/1/2011 | 7/31/2011 | Alternate Living Expenses | 150 | - | - | - | - | - | 2 | 2 | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 61 |
| 8/1/2011 | 8/31/2011 | Alternate Living Expenses | 150 | - | - | - | - | - | 1 | 2 | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 60 |
| 9/1/2011 | 10/1/2011 | Alternate Living Expenses | 150 | - | - | - | - | - | - | 2 | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 59 |
| 10/1/2011 | 10/31/2011 | Alternate Living Expenses | 150 | - | - | - | - | - | - | 1 | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 59 |
| 11/1/2011 | 12/1/2011 | Alternate Living Expenses | 150 | - | - | - | - | - | - | 1 | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 58 |
| 12/1/2011 | 12/31/2011 | Alternate Living Expenses | 150 | - | - | - | - | - | - | - | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 57 |
| 1/1/2012 | 1/31/2012 | Alternate Living Expenses | 200 | - | - | - | - | - | - | - | 9 | 10 | 10 | 10 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 76 |
| 2/1/2012 | 3/2/2012 | Alternate Living Expenses | 200 | - | - | - | - | - | - | - | 8 | 10 | 10 | 10 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 75 |
| 3/1/2012 | 3/31/2012 | Alternate Living Expenses | 200 | - | - | - | - | - | - | - | 7 | 10 | 10 | 10 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 74 |
| 4/1/2012 | 5/1/2012 | Alternate Living Expenses | 200 | - | - | - | - | - | - | - | 6 | 10 | 10 | 10 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 73 |
| 5/1/2012 | 5/31/2012 | Alternate Living Expenses | 200 | - | - | - | - | - | - | - | 6 | 10 | 10 | 10 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 73 |
| 6/1/2012 | 7/1/2012 | Alternate Living Expenses | 200 | - | - | - | - | - | - | - | 5 | 10 | 10 | 10 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 72 |
| 7/1/2012 | 7/31/2012 | Alternate Living Expenses | 200 | - | - | - | - | - | - | - | 4 | 10 | 10 | 10 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 71 |
| 8/1/2012 | 8/31/2012 | Alternate Living Expenses | 200 | - | - | - | - | - | - | - | 3 | 10 | 10 | 10 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 70 |
| 9/1/2012 | 10/1/2012 | Alternate Living Expenses | 200 | - | - | - | - | - | - | - | 2 | 10 | 10 | 10 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 69 |
| 10/1/2012 | 10/31/2012 | Alternate Living Expenses | 200 | - | - | - | - | - | - | - | 2 | 10 | 10 | 10 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 69 |
| 11/1/2012 | 12/1/2012 | Alternate Living Expenses | 200 | - | - | - | - | - | - | - | 1 | 10 | 10 | 10 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 68 |
| 12/1/2012 | 12/31/2012 | Alternate Living Expenses | 200 | - | - | - | - | - | - | - | - | 10 | 10 | 10 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 67 |
| 1/1/2013 | 1/31/2013 | Alternate Living Expenses | 200 | - | - | - | - | - | - | - | - | 9 | 10 | 10 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 66 |
| 2/1/2013 | 3/3/2013 | Alternate Living Expenses | 200 | - | - | - | - | - | - | - | - | 8 | 10 | 10 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 65 |
| 3/1/2013 | 3/31/2013 | Alternate Living Expenses | 200 | - | - | - | - | - | - | - | - | 7 | 10 | 10 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 65 |
| 4/1/2013 | 5/1/2013 | Alternate Living Expenses | 200 | - | - | - | - | - | - | - | - | 6 | 10 | 10 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 64 |
| 5/1/2013 | 5/31/2013 | Alternate Living Expenses | 200 | - | - | - | - | - | - | - | - | 6 | 10 | 10 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 63 |
| 6/1/2013 | 7/1/2013 | Alternate Living Expenses | 200 | - | - | - | - | - | - | - | - | 5 | 10 | 10 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 62 |
| 7/1/2013 | 7/31/2013 | Alternate Living Expenses | 200 | - | - | - | - | - | - | - | - | 4 | 10 | 10 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 62 |
| 8/1/2013 | 8/31/2013 | Alternate Living Expenses | 200 | - | - | - | - | - | - | - | - | 3 | 10 | 10 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 61 |
| 9/1/2013 | 10/1/2013 | Alternate Living Expenses | 200 | - | - | - | - | - | - | - | - | 2 | 10 | 10 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 60 |
| 10/1/2013 | 10/31/2013 | Alternate Living Expenses | 200 | - | - | - | - | - | - | - | - | 2 | 10 | 10 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 59 |
| 11/1/2013 | 12/1/2013 | Alternate Living Expenses | 200 | - | - | - | - | - | - | - | - | 1 | 10 | 10 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 58 |
| 12/1/2013 | 12/31/2013 | Alternate Living Expenses | 200 | - | - | - | - | - | - | - | - | - | 10 | 10 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 58 |
| 1/1/2014 | 1/31/2014 | Alternate Living Expenses | 200 | - | - | - | - | - | - | - | - | - | 9 | 10 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 57 |
| 2/1/2014 | 3/3/2014 | Alternate Living Expenses | 200 | - | - | - | - | - | - | - | - | - | 8 | 10 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 56 |
| 3/1/2014 | 3/31/2014 | Alternate Living Expenses | 200 | - | - | - | - | - | - | - | - | - | 7 | 10 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 55 |
| 4/1/2014 | 5/1/2014 | Alternate Living Expenses | 200 | - | - | - | - | - | - | - | - | - | 6 | 10 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 54 |
| 5/1/2014 | 5/31/2014 | Alternate Living Expenses | 200 | - | - | - | - | - | - | - | - | - | 6 | 10 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 54 |
| 6/1/2014 | 7/1/2014 | Alternate Living Expenses | 200 | - | - | - | - | - | - | - | - | - | 5 | 10 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 53 |
| 7/1/2014 | 7/31/2014 | Alternate Living Expenses | 700 | - | - | - | - | - | - | - | - | - | 14 | 33 | 8 | 8 | 9 | 9 | 9 | 9 | 9 | 9 | 10 | 10 | 11 | 11 | 25 | 182 |
| 12/5/2014 | 1/4/2015 | Alternate Living Expenses | 800 | - | - | - | - | - | - | - | - | - | - | 38 | 9 | 10 | 10 | 10 | 10 | 10 | 10 | 11 | 11 | 11 | 12 | 12 | 28 | 192 |
| 1/7/2015 | 2/6/2015 | Alternate Living Expenses | 300 | - | - | - | - | - | - | - | - | - | - | 13 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 11 | 71 |
| 2/3/2015 | 3/5/2015 | Alternate Living Expenses | 300 | - | - | - | - | - | - | - | - | - | - | 12 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 11 | 70 |
| 3/1/2015 | 3/31/2015 | Alternate Living Expenses | 300 | - | - | - | - | - | - | - | - | - | - | 11 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 11 | 69 |
| 4/3/2015 | 5/3/2015 | Alternate Living Expenses | 300 | - | - | - | - | - | - | - | - | - | - | 9 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 11 | 67 |
| 5/2/2015 | 6/1/2015 | Alternate Living Expenses | 300 | - | - | - | - | - | - | - | - | - | - | 8 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 11 | 66 |
| 6/2/2015 | 7/2/2015 | Alternate Living Expenses | 300 | - | - | - | - | - | - | - | - | - | - | 7 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 11 | 65 |
| 7/2/2015 | 8/1/2015 | Alternate Living Expenses | 300 | - | - | - | - | - | - | - | - | - | - | 6 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 11 | 64 |
| 8/2/2015 | 9/1/2015 | Alternate Living Expenses | 300 | - | - | - | - | - | - | - | - | - | - | 5 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 11 | 63 |
| 9/3/2015 | 10/3/2015 | Alternate Living Expenses | 300 | - | - | - | - | - | - | - | - | - | - | 3 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 11 | 61 |
| 10/1/2015 | 10/31/2015 | Alternate Living Expenses | 300 | - | - | - | - | - | - | - | - | - | - | 2 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 11 | 60 |
| 11/2/2015 | 12/2/2015 | Alternate Living Expenses | 300 | - | - | - | - | - | - | - | - | - | - | 1 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 11 | 59 |
| 12/2/2015 | 1/1/2016 | Alternate Living Expenses | 150 | - | - | - | - | - | - | - | - | - | - | - | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 29 |
| 1/3/2016 | 2/2/2016 | Alternate Living Expenses | 300 | - | - | - | - | - | - | - | - | - | - | - | 2 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 11 | 57 |
| 2/1/2016 | 3/2/2016 | Alternate Living Expenses | 300 | - | - | - | - | - | - | - | - | - | - | - | 1 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 11 | 56 |
| 3/1/2016 | 3/31/2016 | Alternate Living Expenses | 300 | - | - | - | - | - | - | - | - | - | - | - | - | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 11 | 54 |
| 4/2/2016 | 5/2/2016 | Alternate Living Expenses | 300 | - | - | - | - | - | - | - | - | - | - | - | - | 2 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 11 | 53 |
| 5/1/2016 | 5/31/2016 | Alternate Living Expenses | 150 | - | - | - | - | - | - | - | - | - | - | - | - | 1 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 26 |
| 7/26/2016 | 8/25/2016 | Alternate Living Expenses | 1,300 | - | - | - | - | - | - | - | - | - | - | - | - | - | 6 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 211 |
| 12/1/2016 | 12/31/2016 | Alternate Living Expenses | 300 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 4 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 11 | 43 |
| 1/1/2017 | 1/31/2017 | Alternate Living Expenses | 250 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 2 | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 9 | 35 |
| 2/1/2017 | 3/3/2017 | Alternate Living Expenses | 250 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 1 | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 9 | 34 |
| 3/1/2017 | 3/31/2017 | Alternate Living Expenses | 250 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 9 | 33 |
| 4/1/2017 | 5/1/2017 | Alternate Living Expenses | 250 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 2 | 3 | 3 | 3 | 4 | 4 | 4 | 9 | 32 |
| 5/1/2017 | 5/31/2017 | Alternate Living Expenses | 250 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 1 | 3 | 3 | 3 | 4 | 4 | 4 | 9 | 31 |
| 6/1/2017 | 7/1/2017 | Alternate Living Expenses | 250 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 3 | 3 | 3 | 4 | 4 | 4 | 9 | 30 |
| 7/9/2017 | 8/8/2017 | Alternate Living Expenses | 250 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 2 | 3 | 3 | 4 | 4 | 4 | 9 | 29 |
| 9/14/2017 | 10/14/2017 | Alternate Living Expenses | 200 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 2 | 3 | 3 | 3 | 3 | 7 | 21 |
| 10/2/2017 | 11/1/2017 | Alternate Living Expenses | 200 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 2 | 3 | 3 | 3 | 3 | 7 | 20 |
| 11/2/2017 | 12/2/2017 | Alternate Living Expenses | 250 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 1 | 3 | 4 | 4 | 4 | 9 | 24 |
| 12/2/2017 | 1/1/2018 | Alternate Living Expenses | 250 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 3 | 4 | 4 | 4 | 9 | 23 |
| 1/2/2018 | 2/1/2018 | Alternate Living Expenses | 300 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 3 | 4 | 5 | 5 | 11 | 27 |
| 2/4/2018 | 3/6/2018 | Alternate Living Expenses | 300 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 1 | 4 | 5 | 5 | 11 | 25 |
| 3/4/2018 | 4/3/2018 | Alternate Living Expenses | 300 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 4 | 5 | 5 | 11 | 24 |
| 4/2/2018 | 5/2/2018 | Alternate Living Expenses | 300 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 3 | 5 | 5 | 11 | 22 |
| 5/4/2018 | 6/3/2018 | Alternate Living Expenses | 300 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 1 | 5 | 5 | 11 | 21 |
| 6/1/2018 | 7/1/2018 | Alternate Living Expenses | 450 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 7 | 7 | 16 | 29 |
| 7/1/2018 | 7/31/2018 | Alternate Living Expenses | 450 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 4 | 7 | 16 | 27 |
| 8/2/2018 | 9/1/2018 | Alternate Living Expenses | 450 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 2 | 7 | 16 | 25 |
| 9/2/2018 | 10/2/2018 | Alternate Living Expenses | 450 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 7 | 16 | 23 |
| 10/1/2018 | 10/31/2018 | Alternate Living Expenses | 470 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 5 | 17 | 21 |
| 11/11/2018 | 12/11/2018 | Alternate Living Expenses | 470 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 2 | 17 | 18 |
| | | Alternate Living Expenses Total | $ 23,940 | $ - | $ - | $ - | $ - | $ 27 | $ 88 | $ 34 | $ 202 | $ 316 | $ 432 | $ 583 | $ 170 | $ 181 | $ 194 | $ 207 | $ 212 | $ 227 | $ 244 | $ 259 | $ 272 | $ 298 | $ 332 | $ 359 | $ 843 | $ 5,479 |
| 9/8/2008 | 10/8/2008 | Personal Property Damage Expense | $ 220 | $ - | $ - | $ 6 | $ 18 | $ 13 | $ 10 | $ 3 | $ 10 | $ 10 | $ 10 | $ 10 | $ 3 | $ 3 | $ 3 | $ 3 | $ 3 | $ 3 | $ 3 | $ 3 | $ 3 | $ 3 | $ 3 | $ 3 | $ 8 | $ 133 |
| 11/15/2008 | 12/15/2008 | Personal Property Damage Expense | 363 | - | - | 2 | 29 | 22 | 16 | 4 | 17 | 17 | 17 | 17 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 5 | 5 | 5 | 5 | 6 | 13 | 212 |
| 7/8/2009 | 8/7/2009 | Personal Property Damage Expense | 360 | - | - | - | 12 | 22 | 16 | 4 | 17 | 17 | 17 | 17 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 5 | 5 | 5 | 5 | 6 | 13 | 191 |
| | | Personal Property Damage Expense Total | $ 943 | $ - | $ - | $ 7 | $ 58 | $ 57 | $ 42 | $ 11 | $ 45 | $ 45 | $ 45 | $ 45 | $ 11 | $ 11 | $ 11 | $ 12 | $ 12 | $ 12 | $ 12 | $ 13 | $ 13 | $ 13 | $ 14 | $ 14 | $ 33 | $ 537 |

*Assumptions:*

Florida Statutory Interest Rates

| | 12/31/2006 | 12/31/2007 | 12/31/2008 | 12/31/2009 | 12/31/2010 | 9/30/2011 | 12/31/2011 | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 3/31/2016 | 6/30/2016 | 9/30/2016 | 12/31/2016 | 3/31/2017 | 6/30/2017 | 9/30/2017 | 12/31/2017 | 3/31/2018 | 6/30/2018 | 9/30/2018 | 12/31/2018 | 7/22/2019 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Annual | 9.00% | 11.00% | 11.00% | 8.00% | 6.00% | 6.00% | 4.75% | 4.75% | 4.75% | 4.75% | 4.75% | 4.75% | 4.78% | 4.84% | 4.91% | 4.97% | 5.05% | 5.17% | 5.35% | 5.53% | 5.72% | 5.97% | 6.09% | 6.33% |
| Per Diem | 0.0246600% | 0.0301400% | 0.0301400% | 0.0219200% | 0.0164400% | 0.0164400% | 0.0130137% | 0.0129781% | 0.0130137% | 0.0130137% | 0.0130137% | 0.0129781% | 0.01306011% | 0.01322404% | 0.01341530% | 0.01361644% | 0.01383562% | 0.01416438% | 0.0146575% | 0.0151507% | 0.0156712% | 0.0163562% | 0.0166849% | 0.0173425% |

2.A
Documents and Other Information Considered - Lillian Chatmon

---

*Chinese Drywall Litigation Involving Priority Claimants*

*Bate Stamp (if applicable)*

| No. | Claimant | General Description | First Page | Last Page |
|---|---|---|---|---|
| **A. Pleadings and Other Legal Documents:** | | | | |
| 1 | All | Trial Plan for Property Damage Claims and Scheduling Order dated November 16, 2018 | | |
| 2 | Chatmon | Priority Claimant Lillian Chatmon Answers to Interrogatories, dated November 30, 2018 | | |
| 3 | Chatmon | Priority Claimant Lillian Chatmon Answers to Defendant's Second Set of Interrogatories, dated December 4, 2018 | | |
| 4 | Chatmon | Lillian Chatmon Second Amended Supplemental Profile Plaintiff Profile Form, dated November 30, 2018 | | |
| | | | | |
| **B. Depositions & Corresponding Exhibits:** | | | | |
| 1 | Chatmon | Deposition Transcript of Lillian Chatmon, dated January 14, 2019 | | |
| 2 | Chatmon | Deposition Exhibit 01 - Corporate Warranty Deed | Chatmon_000051 | Chatmon_000051 |
| 3 | Chatmon | Deposition Exhibit 02 - US Bank Home Mortgage Account Statement | Chatmon_000092 | Chatmon_000093 |
| 4 | Chatmon | Deposition Exhibit 03 - US Bank Home Mortgage Account Statement | Chatmon_000058 | Chatmon_000091 |
| 5 | Chatmon | Deposition Exhibit 04 - Hillsborough County Property Appraiser Property Records | Chatmon_000052 | Chatmon_000054 |
| 6 | Chatmon | Deposition Exhibit 05 - Koss Inspectors Inspection Report Dated 1/27/2010 | Chatmon_000094 | Chatmon_000102 |
| 7 | Chatmon | Deposition Exhibit 06 - Plaintiff Profile Form - Residential Properties | Chatmon_000037 | Chatmon_000050 |
| 8 | Chatmon | Deposition Exhibit 07 - Builder Defendant Profile Form | Chatmon_000171 | Chatmon_000223 |
| 9 | Chatmon | Deposition Exhibit 08 - JJ Staten Homes LLC, Corrosive Drywall Remediation Contract dated 10/2/2018 | Chatmon_000161 | Chatmon_000170 |
| 10 | Chatmon | Deposition Exhibit 09 - Alternative Living Expenses Documentation | Chatmon_000120 | Chatmon_000160 |
| 11 | Chatmon | Deposition Exhibit 10 - Chinese Drywall Settlement Program MDL 2047 Other Loss Eligibility Notice Dated 1/19/2015 | | |
| 12 | Chatmon | Deposition Exhibit 11 - Chinese Drywall Settlement Program Check Copies | Chatmon_000224 | Chatmon_000229 |
| 13 | Chatmon | Deposition Exhibit 12 - Priority Claimant Lillian Chatmon's Answers to Interrogatories | Chatmon_000027 | Chatmon_000031 |
| 14 | Chatmon | Deposition Exhibit 13 - Loss of Use/Loss of Enjoyment | Chatmon_000103 | Chatmon_000111 |
| 15 | Chatmon | Deposition Exhibit 14 - Second Amended Plaintiff Profile Form | Chatmon_000016 | Chatmon_000022 |
| 16 | Chatmon | Deposition Exhibit 15 - Sabal Pointe Townhomes POA Transaction History | Chatmon_000115 | Chatmon_000119 |
| 17 | Chatmon | Deposition Exhibit 16 - Florida Building Engineering & Inspections Chinese Drywall Inspection Report dated 12/2/2009 | | |
| | | | | |
| **C. Supporting Documentation** | | | | |
| 1 | Chatmon | Lillian Chatmon Out of Pocket Damages Summary Provided by Counsel | | |
| 4 | Chatmon | Doc ID. 113601 - Chatmon - Egg Systems AC Receipt | | |
| 2 | Chatmon | Doc ID. 113577 - Alternative Living Expenses Documentation [Claimant Notes on Alternative Living Expenses - Supplemental Note] | | |
| 3 | Chatmon | Doc ID. 113580 - US Bank Home Mortgage Account Statement [US Bank Statement February 2011] | | |
| 5 | Chatmon | Doc ID. 349885 - Alternative Living Expenses Documentation [Claimant Notes on Alternative Living Expenses] | | |
| 6 | Chatmon | Doc ID. 365733 - Alternative Living Expenses Documentation [Claimant Notes on Alternative Living Expenses - with Support] | | |
| 7 | Chatmon | Doc ID. 365734 - Sabal Pointe Townhomes POA Transaction History | | |
| 8 | Chatmon | Doc ID. 365735 - US Bank Home Mortgage Account Statement [US Bank Statements 2014 - 2018] | | |
| 9 | Chatmon | Doc ID. 365960 - JJ Staten Homes LLC, Corrosive Drywall Remediation Contract dated 10/2/2018 | | |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-22408-Civ-COOKE

EDUARDO AND CARMEN AMORIN, *et al.*,
individually and on behalf of others similarly
situated,

      Plaintiffs,

vs.

TAISHAN GYPSUM CO., LTD., f/k/a
SHANDONG TIASHE DONGXIN CO. LTD.,
*et al.*,

      Defendants.

_____

# Exhibit 3

**Calculations of Damages for Priority Claimants**

# David Deeg & Deborah Hooker

EXHIBIT TO THE EXPERT WITNESS REPORT OF:
MICHAEL P. ELKIN, CPA/CFF/ABV, CFE
IN THE PRIORITY CLAIMANT TRIAL

February 19, 2019



Exhibit 3
Data and Damage Summary - David Deeg & Deborah Hooker

*Chinese Drywall Litigation Involving Priority Claimants*

| Data: | | *Reference / Notes* |
|---|---|---|
| Address of Affected property | 516 SW Akron Avenue | *SPPF* |
| | Stuart, FL 34994 | *SPPF* |
| Date Affected property acquired | October 10, 2007 | *SPPF* |
| Date Chinese drywall installed | 2006 | *SPPF* |
| Date moved into Affected property | October 10, 2007 | *SPPF* |
| Date first aware of Chinese drywall | June-09 | *SPPF* |
| | | |
| Move out date to alternate living | N/A | *ROG 1, #2* |
| Date returned to Affected property | N/A | *ROG 1, #2* |
| End date for alternate living expenses | N/A | *ROG 1, #2* |
| | | |
| Still own property? | N | *SPPF* |
| Bankruptcy caused by damage? | N | *SPPF* |
| Foreclosure or short sale? | N | *SPPF* |
| Affected property sold? | Y | *SPPF* |
| Sale date | May 2, 2016 | *SPPF* |
| Type of sale | Sale in Mitigation | *SPPF* |
| | | |
| Remediation status | None | *SPPF* |
| Remediation period | N/A | *SPPF* |

| Damage Summary: | | |
|---|---|---|
| Full or Partial Out-of-Pocket Remediation Expenses | $                  - | |
| | | |
| Other Damages | | |
| Alternate Living Expenses | $                  - | |
| Personal Property Damage Expense | 38,261 | *Exh. 3.1* |
| Additional Damages | - | |
| | $          38,261 | |
| | | |
| Lost Equity | $          93,918 | *Exh. 3.2* |
| | | |
| Diminution in Value | TBD | |
| | | |
| Loss of Use and Enjoyment | TBD | |
| | | |
| Punitive Damages | TBD | |

Exhibit 3.1
Damage Claims Detail - David Deeg & Deborah Hooker

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Nightstand | $ 100 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000071 | Exhibit 8 | 2 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Bed frame - King | 55 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000071 | Exhibit 8 | 2 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Mattress / Boxspring set - King | 1,475 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000071 | Exhibit 8 | 2 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Chair | 220 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000071 | Exhibit 8 | 2 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Dresser / Drawer | 230 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000071 | Exhibit 8 | 2 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Chest | 250 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000071 | Exhibit 8 | 2 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Table - End | 135 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000071 | Exhibit 8 | 2 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Table lamp - High grade | 262 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000071 | Exhibit 8 | 2 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Alarm clock / Clock radio | 30 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000071 | Exhibit 8 | 2 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | AT&T Trimline 210 Telephone (White), 59234 | 13 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000071 | Exhibit 8 | 2 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Vizio 32" Class HD 1080p 60Hz LCD | 448 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000071 | Exhibit 8 | 2 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Cable Receiver Box, Comcast, Cisco | - | 3/9/2010 | X | Duraclean Inspection Report | DEEG000071 | Exhibit 8 | 2 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | RCA 1080p HDMI DVD Player with | 40 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000071 | Exhibit 8 | 2 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | JVC UX-G200 CD Micro Component | 95 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000071 | Exhibit 8 | 2 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Digital video recorder - Standard grade | 150 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000071 | Exhibit 8 | 2 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Geek Squad 1500VA UPS Battery | 60 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000072 | Exhibit 8 | 3 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Picture frame | 24 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000072 | Exhibit 8 | 3 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Table lamp - High grade | 131 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000072 | Exhibit 8 | 3 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Remote control | 125 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000072 | Exhibit 8 | 3 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | CD - New release | 45 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000072 | Exhibit 8 | 3 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | DVD - Box set | 480 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000072 | Exhibit 8 | 3 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Hair dryer | 50 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000072 | Exhibit 8 | 3 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | CHI 67869 1" Turbo Hair Straightener, | 140 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000072 | Exhibit 8 | 3 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | iHome Gun Metal Travel Alarm Clock for | 47 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000072 | Exhibit 8 | 3 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Weight Watchers Chrome and Glass Scale, | 40 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000072 | Exhibit 8 | 3 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Blood Pressure Monitor, Omron BP710 | 50 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000072 | Exhibit 8 | 3 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Picture frame | 24 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000072 | Exhibit 8 | 3 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Luggage - Carry on / Pilot case / 22 in. or | 51 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000073 | Exhibit 8 | 4 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Luggage - Duffle / Gym / Sports / Travel | 64 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000073 | Exhibit 8 | 4 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | 5 lb. ABC fre extinguisher | 46 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000073 | Exhibit 8 | 4 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Case - Briefcase | 162 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000073 | Exhibit 8 | 4 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Honeywell Key metal Box | 20 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000073 | Exhibit 8 | 4 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Midland LXT480VP3 2-Way Radio, | 49 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000073 | Exhibit 8 | 4 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Sony MDR-XB500 Extra Bass Headphones - | 49 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000073 | Exhibit 8 | 4 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | GE Profile 41 Cu Ft 11-Cycle Colossal- | 550 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000073 | Exhibit 8 | 4 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | GE Profile 7.0 cu. ft. Super Capacity | 561 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000074 | Exhibit 8 | 5 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Rowenta IS9100 Commercial Garment | 149 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000074 | Exhibit 8 | 5 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Ironing board - Standard grade | 14 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000074 | Exhibit 8 | 5 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Iron - Clothing / Clothes | 46 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000074 | Exhibit 8 | 5 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Complete bed - Twin / Twin XL - High | 480 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000074 | Exhibit 8 | 5 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Mattress / Boxspring set - Twin/Twin XL | 675 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000074 | Exhibit 8 | 5 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Nightstand | 100 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000074 | Exhibit 8 | 5 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Dresser / Drawer | 230 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000074 | Exhibit 8 | 5 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Children's chair | 80 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000074 | Exhibit 8 | 5 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Table lamp - Standard grade | 56 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000074 | Exhibit 8 | 5 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | JVC TV-20F243 20" Real Flat TV/VCR | 290 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000074 | Exhibit 8 | 5 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Credenza - Standard grade | 300 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000074 | Exhibit 8 | 5 |

Exhibit 3.1
Damage Claims Detail - David Deeg & Deborah Hooker

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|------|--------|-------------|--------|------|--------------|----------------|-------|------------------|--------------|
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Cable Box, Comcast | - | 3/9/2010 | X | Duraclean Inspection Report | DEEG000075 | Exhibit 8 | 6 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Picture frame | 24 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000075 | Exhibit 8 | 6 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Wall clock | 40 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000075 | Exhibit 8 | 6 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Electric Air Pump, Ozark Trail | 19 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000075 | Exhibit 8 | 6 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Conair Shiatsu Neck Massager, NMIO | 38 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000075 | Exhibit 8 | 6 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Games - Board game - Standard grade | 26 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000075 | Exhibit 8 | 6 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Luggage - Carry on / Pilot case /22 in. or | 51 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000075 | Exhibit 8 | 6 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Plate set - 4pc. - Casual dinnerware - | 168 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000075 | Exhibit 8 | 6 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Plate set - 4pc. - Casual dinnerware - | 56 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000075 | Exhibit 8 | 6 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Plate set - 4pc. - Casual dinnerware - | 84 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000075 | Exhibit 8 | 6 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Plate set - 4pc. - Casual dinnerware - | 112 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000075 | Exhibit 8 | 6 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Plate set - 4pc. - Casual dinnerware - | 112 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000075 | Exhibit 8 | 6 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Bowl - Sugar - Casual dinnerware - Standard | 20 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000076 | Exhibit 8 | 7 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Plate set - 4pc. - Casual dinnerware - | 56 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000076 | Exhibit 8 | 7 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Glasses & cups - Individual - Standard grade | 69 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000076 | Exhibit 8 | 7 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Glasses & cups - Individual | 225 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000076 | Exhibit 8 | 7 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Glasses & cups - Individual | 90 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000076 | Exhibit 8 | 7 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Pitcher - Standard grade | 17 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000076 | Exhibit 8 | 7 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Coffee pot / server - Casual dinnerware | 20 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000076 | Exhibit 8 | 7 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Plastic Containers, Glad ware set of 12 | 100 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000076 | Exhibit 8 | 7 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Colander / strainer | 34 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000076 | Exhibit 8 | 7 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Oster 10-Speed Blender - White, | 33 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000076 | Exhibit 8 | 7 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Toaster - Oven / Broiler - Standard grade | 32 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000076 | Exhibit 8 | 7 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Santa Fe Quesadilla Maker - QM2R, QM2R | 27 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000076 | Exhibit 8 | 7 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | George Foreman Grill, GR2OB | 36 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000076 | Exhibit 8 | 7 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Toaster - Conventional - Standard grade | 25 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000076 | Exhibit 8 | 7 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Cuisinart CFO-3SS Fondue Set, Electric, | 60 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000076 | Exhibit 8 | 7 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Black & Decker HJ30 Handy Citrus Juicer, | 15 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000077 | Exhibit 8 | 8 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Back to Basics SJR1X Smoothie Blast | 23 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000077 | Exhibit 8 | 8 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Bowl - Salad / Serving - Casual dinnerware - | 56 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000077 | Exhibit 8 | 8 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Fry pan/ saute pan / skillet - Standard grade | 119 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000077 | Exhibit 8 | 8 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Cooking pot - Standard grade | 119 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000077 | Exhibit 8 | 8 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Mixing bowl - Single - Standard grade | 13 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000077 | Exhibit 8 | 8 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Serving tray - Standard grade | 45 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000077 | Exhibit 8 | 8 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Salad spinner - Standard grade | 30 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000077 | Exhibit 8 | 8 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Coffee - Brewer / Maker - Standard grade | 21 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000077 | Exhibit 8 | 8 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Hamilton Beach Hand Mixer, 62695V | 27 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000077 | Exhibit 8 | 8 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Hand mixer - Standard grade | 23 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000077 | Exhibit 8 | 8 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Breville Juice Fountain Plus Electric Juicer - | 150 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000077 | Exhibit 8 | 8 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Kitchen scale - Standard grade | 20 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000077 | Exhibit 8 | 8 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Slow cooker / Crock pot - Standard grade | 25 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000077 | Exhibit 8 | 8 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Trivet! spoon rest - Standard grade | 14 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000077 | Exhibit 8 | 8 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Basic Essentials 15-pc. Kitchen Utensil Set, | 35 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000078 | Exhibit 8 | 9 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | TableCraft Oil and Vinegar Set, | 10 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000078 | Exhibit 8 | 9 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Candle holder / candlestick - Standard grade | 16 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000078 | Exhibit 8 | 9 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Paper towel holder - Standard grade | 11 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000078 | Exhibit 8 | 9 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Dish rack / draining rack - Standard grade | 9 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000078 | Exhibit 8 | 9 |

Exhibit 3.1
Damage Claims Detail - David Deeg & Deborah Hooker

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|------|--------|-------------|--------|------|--------------|----------------|-------|------------------|--------------|
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Cutlery & utility - Cutting boards - Standard | 42 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000078 | Exhibit 8 | 9 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Glasses and cups set - 4pc. - Standard grade | 50 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000078 | Exhibit 8 | 9 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Glasses and cups set - 4pc. - Standard grade | 25 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000078 | Exhibit 8 | 9 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | GE Profle 25.5 Cu. ft. French-Door Bottom- | 2,205 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000078 | Exhibit 8 | 9 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | JVM3670SK GE Profle 36" Spacemalcer® | 659 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000078 | Exhibit 8 | 9 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | GE PDWF788PSS 6 LEVEL 12 | 830 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000078 | Exhibit 8 | 9 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | GE Profle 30" Self-Cleaning Freestanding | 1,400 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000078 | Exhibit 8 | 9 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Table - Dining / Kitchen | 300 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000079 | Exhibit 8 | 10 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Chair - Dining room / Kitchen - Standard | 472 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000079 | Exhibit 8 | 10 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Curio | 300 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000079 | Exhibit 8 | 10 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Artificial plant / fowers | 39 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000079 | Exhibit 8 | 10 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Artifcial plant / flowers | 39 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000079 | Exhibit 8 | 10 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Vase | 80 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000079 | Exhibit 8 | 10 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Shark Bagless Cordless Hand Vac - | 60 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000079 | Exhibit 8 | 10 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Decorative fgurine - Standard grade | 340 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000079 | Exhibit 8 | 10 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Jewelry box / storage - Standard grade | 105 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000079 | Exhibit 8 | 10 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Vase - Standard grade | 120 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000079 | Exhibit 8 | 10 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Crytal bowl decorative | 70 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000079 | Exhibit 8 | 10 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Serving tray - Standard grade | 45 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000079 | Exhibit 8 | 10 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Decorative Plates w/ Holder | 100 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000079 | Exhibit 8 | 10 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Glasses & cups - Individual - Standard grade | 12 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000079 | Exhibit 8 | 10 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Glasses & cups - Individual | 18 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000079 | Exhibit 8 | 10 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Remove 2.6 lb.Pro Line Fire Extinguisher | 3 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000080 | Exhibit 8 | 11 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | 2.6 lb.Pro Line Fire Extinguisher | 35 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000080 | Exhibit 8 | 11 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Set of 4 TV Trays | 40 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000080 | Exhibit 8 | 11 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Flashlight - Standard grade | 10 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000080 | Exhibit 8 | 11 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Step stool - Standard grade | 25 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000080 | Exhibit 8 | 11 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Vacuum - Upright - Standard grade | 56 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000080 | Exhibit 8 | 11 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Sofa - Couch - Standard grade | 450 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000080 | Exhibit 8 | 11 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Chair - Standard grade | 80 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000080 | Exhibit 8 | 11 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Table - End - Standard grade | 65 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000080 | Exhibit 8 | 11 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Table - Occasional / Cofee - Standard grade | 90 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000080 | Exhibit 8 | 11 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Sofa - Couch - Standard grade | 450 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000080 | Exhibit 8 | 11 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Table - Sofa - Standard grade | 155 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000080 | Exhibit 8 | 11 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | TV / VCR stand & cabinet | 125 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000080 | Exhibit 8 | 11 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Zenith Z5OPX2D | 1,773 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000080 | Exhibit 8 | 11 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Philips Home Theater Audio System with | 177 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000081 | Exhibit 8 | 12 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Cable Box Receiver, Comcast, Explorer | - | 3/9/2010 | X | Duraclean Inspection Report | DEEG000081 | Exhibit 8 | 12 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Teac CD-X10i Ultra-Thin HiFi System for | 150 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000081 | Exhibit 8 | 12 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Table lamp - Standard grade | 28 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000081 | Exhibit 8 | 12 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Floor lamp / torchiere - Standard grade | 58 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000081 | Exhibit 8 | 12 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Bookcase / shelves - Standard grade | 65 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000081 | Exhibit 8 | 12 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Wall clock - Standard grade | 22 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000081 | Exhibit 8 | 12 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Decorative Boxes | 200 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000081 | Exhibit 8 | 12 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | CD - Old release | 5,920 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000081 | Exhibit 8 | 12 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Table - End - High grade | 210 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000081 | Exhibit 8 | 12 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Picture frame - Standard grade | 40 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000081 | Exhibit 8 | 12 |

Exhibit 3.1
Damage Claims Detail - David Deeg & Deborah Hooker

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Table - End - Standard grade | 65 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000081 | Exhibit 8 | 12 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Table lamp - Standard grade | 28 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000081 | Exhibit 8 | 12 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Vase | 40 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000081 | Exhibit 8 | 12 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Picture frame | 72 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000081 | Exhibit 8 | 12 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Desk - Standard grade | 65 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000082 | Exhibit 8 | 13 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Loveseat - Standard grade | 400 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000082 | Exhibit 8 | 13 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Table - End - Standard grade | 65 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000082 | Exhibit 8 | 13 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Chair - Standard grade | 80 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000082 | Exhibit 8 | 13 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Bookcase / shelves - Standard grade | 65 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000082 | Exhibit 8 | 13 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | DVD Rack | - | 3/9/2010 | X | Duraclean Inspection Report | DEEG000082 | Exhibit 8 | 13 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | TV / VCR stand & cabinet - Standard grade | 45 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000082 | Exhibit 8 | 13 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Coby Electronics TF-DVD7107 7-Inch | 80 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000082 | Exhibit 8 | 13 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Dynex 27" 48t Standard-Defnition Digital | 140 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000082 | Exhibit 8 | 13 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Comcast Receiver, Cisco RG100 | - | 3/9/2010 | X | Duraclean Inspection Report | DEEG000082 | Exhibit 8 | 13 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Panasonic DMR-EZ48VK DVD/VCR | 245 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000082 | Exhibit 8 | 13 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Philips Portable CD Boombox With iPod | 60 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000082 | Exhibit 8 | 13 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Inkjet / Deskjet / Offcejet printer - Standard | 50 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000083 | Exhibit 8 | 14 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Shredder with wastebasket - Standard grade | 30 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000083 | Exhibit 8 | 14 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Home / Desktop computer - Standard grade | 400 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000083 | Exhibit 8 | 14 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Linksys WRT310N Wireless-N Gigabit | 109 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000083 | Exhibit 8 | 14 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Motorola Netopia High-Speed ADSL2+ | 70 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000083 | Exhibit 8 | 14 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | NEW HP/Compaq 5185-0478 USB | 25 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000083 | Exhibit 8 | 14 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Mouse - Standard grade | 12 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000083 | Exhibit 8 | 14 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Camera / Camcorder - Flash- High grade | 235 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000083 | Exhibit 8 | 14 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Canon PowerShot SDI200-IS Blue 10.0MP | 149 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000083 | Exhibit 8 | 14 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | MP3 & video player - Video iPod - Nano 8 | 149 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000083 | Exhibit 8 | 14 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Apple iPod classic 160GB, Black, 7th | 229 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000083 | Exhibit 8 | 14 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Hard drive - External - Computer - Standard | 70 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000083 | Exhibit 8 | 14 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Cell phone - Standard grade | 50 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000083 | Exhibit 8 | 14 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Cell phone - Standard grade | 50 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000083 | Exhibit 8 | 14 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | LCD monitor - 17 inch - Standard grade | 85 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000084 | Exhibit 8 | 15 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Battery Backup APC UPSXF1000 | 130 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000084 | Exhibit 8 | 15 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Printer, scanner, fax, & copier combo | 100 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000084 | Exhibit 8 | 15 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | PlayStation 2 Console Slim - Black | 100 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000084 | Exhibit 8 | 15 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Video game - Playstation 2/ PS2 - Standard | 75 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000084 | Exhibit 8 | 15 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Decorative basket / Wicker basket - | 10 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000084 | Exhibit 8 | 15 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Artifcial plant / flowers - Standard grade | 17 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000084 | Exhibit 8 | 15 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Table lamp - Standard grade | 28 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000084 | Exhibit 8 | 15 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Decorative figurine - Standard grade | 120 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000084 | Exhibit 8 | 15 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Paperback books (old release) | 455 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000084 | Exhibit 8 | 15 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | DVD - Old release | 2,145 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000084 | Exhibit 8 | 15 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | DVD - Old release - Standard grade | 250 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000084 | Exhibit 8 | 15 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Pillow - Standard grade | 210 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000084 | Exhibit 8 | 15 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | CD - Old release | 250 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000084 | Exhibit 8 | 15 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Table - Sofa - Standard grade | 155 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000085 | Exhibit 8 | 16 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Ottoman - Standard grade | 52 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000085 | Exhibit 8 | 16 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Decorative basket / Wicker basket - | 10 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000085 | Exhibit 8 | 16 |

Exhibit 3.1
Damage Claims Detail - David Deeg & Deborah Hooker

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Vase - Standard grade | 48 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000085 | Exhibit 8 | 16 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Candle holder / candlestick - Standard grade | 16 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000085 | Exhibit 8 | 16 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Decorative Plate, Square | 25 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000085 | Exhibit 8 | 16 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Pillow - Standard grade | 15 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000085 | Exhibit 8 | 16 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Bookcase / shelves - Standard grade | 65 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000085 | Exhibit 8 | 16 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Table - Folding - Standard grade | 40 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000085 | Exhibit 8 | 16 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Camp folding chair | 96 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000085 | Exhibit 8 | 16 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Luggage - Garment bags - Standard grade | 36 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000085 | Exhibit 8 | 16 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Artificial tree - Standard grade | 37 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000085 | Exhibit 8 | 16 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Table lamp - Standard grade | 28 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000085 | Exhibit 8 | 16 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Paper towel holder - Standard grade | 11 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000086 | Exhibit 8 | 17 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Drink / Food cooler | 70 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000086 | Exhibit 8 | 17 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Corded phone - Standard grade | 15 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000086 | Exhibit 8 | 17 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Tool cart - Standard grade | 68 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000086 | Exhibit 8 | 17 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Mainstays 4-Tier Shoe Rack, 14590468 | 45 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000086 | Exhibit 8 | 17 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Drink / Food cooler | 70 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000086 | Exhibit 8 | 17 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Elliptical machine - Standard grade | 230 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000086 | Exhibit 8 | 17 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Exercise trampoline - Standard grade | 45 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000086 | Exhibit 8 | 17 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Garden hose - Standard grade | 10 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000086 | Exhibit 8 | 17 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Garden hose holder - Standard grade | 25 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000086 | Exhibit 8 | 17 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Pressure washer - Electric - Standard grade | 145 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000086 | Exhibit 8 | 17 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Room divider / decorative screen - Standard | 89 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000086 | Exhibit 8 | 17 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Ab toner trainer Machine | 80 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000086 | Exhibit 8 | 17 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Golf bag - Standard grade | 144 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000086 | Exhibit 8 | 17 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Golf club - Hybrid - Standard grade | 675 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000087 | Exhibit 8 | 18 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Fishing rod - Spinning - Standard grade | 25 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000087 | Exhibit 8 | 18 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Table - End - Standard grade | 65 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000087 | Exhibit 8 | 18 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Pruner / Shear - Standard grade | 14 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000087 | Exhibit 8 | 18 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Pruner / Shear | 25 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000087 | Exhibit 8 | 18 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Large storage bin / container / tote | 34 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000087 | Exhibit 8 | 18 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Hardware Installer | 116 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000087 | Exhibit 8 | 18 |
| Personal Property Damage Expense Total | | | $ 38,261 | | | | | | |

**Exhibit 3.2**
Lost Equity - David Deeg & Deborah Hooker

*Chinese Drywall Litigation Involving Priority Claimants*

| | | | Source Document |
|---|---|---:|---|
| Initial Acquisition | | | |
| Purchase Price | $ | 400,500 | Exhibit 2 Schedule A Deeg-Hooker000030 |
| Settlement Charges | | N/A | |
| Total Gross Amount Due from Claimant | $ | 400,500 | |
| | | | |
| Less | | | |
| Deposit Made by Claimant | $ | (40,050) | Exhibit 2 Schedule A Deeg-Hooker000030 |
| Borrowings by Claimant | | (360,450) | First and Second Mortgage Docs (from Public Rec |
| Credits | | N/A | |
| Amount Due from Claimant at Close | $ | - | |
| | | | |
| Funds Paid by Claimant | | | |
| Deposit Paid with Contract | $ | 40,050 ` | Exhibit 2 Schedule A Deeg-Hooker000030 |
| Cash Paid at Closing | | N/A | |
| Total Payments for Initial Purchase | a | $ | 40,050 | |
| | | | |
| 1st & 2nd Mortgage | | | |
| 1st Mortgage Beginning Balance | $ | 320,400 | Mortgage 10.10.2007 - KR Doc (Public Records), F |
| 2nd Mortgage Beginning Balance | | 40,050 | Second Mortgage 10.11.2007 - KR Doc (from Publ |
| Mortgage Balance at time of Refinance | | 332,000 | Refinanced Mortgage - 332,000 - KR Docs (from P |
| Principal Payments Made | b | $ | 28,450 | |
| | | | |
| Refinanced Mortgage | | | |
| Mortgage Beginning Balance | $ | 332,000 | Refinanced Mortgage - 332,000 - KR Docs (from P |
| Mortgage Balance at Payoff | | 290,612 | HUD Statement dated 4/27/16 DEEG000246 |
| Principal Payments Made | c | $ | 41,388 | |
| | | | |
| Total Principal Payments | = b + c | $ | 69,838 | |
| | | | |
| Less: Cash Paid to Claimants upon Sale of Home | d | $ | (15,970) | HUD Statement dated 4/27/16 DEEG000246 |
| | | | |
| Total Lost Equity | = a + b + c + d | $ | 93,918 | |

Exhibit 3.3
Calculation of Prejudgment Interest Summary - David Deeg & Deborah Hooker

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Vendor | Description | Amount | Total Interest Through 7/22/2019 |
|---|---|---|---|---|---|---|
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Nightstand | $ 100 | $ 48 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Bed frame - King | 55 | 27 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Mattress / Boxspring set - King | 1,475 | 714 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Chair | 220 | 106 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Dresser / Drawer | 230 | 111 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Chest | 250 | 121 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Table - End | 135 | 65 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Table lamp - High grade | 262 | 127 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Alarm clock / Clock radio | 30 | 15 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | AT&T Trimline 210 Telephone (White), 59234 | 13 | 6 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Vizio 32" Class HD 1080p 60Hz LCD | 448 | 217 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Cable Receiver Box, Comcast, Cisco | - | - |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | RCA 1080p HDMI DVD Player with | 40 | 19 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | JVC UX-G200 CD Micro Component | 95 | 46 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Digital video recorder - Standard grade | 150 | 73 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Geek Squad 1500VA UPS Battery | 60 | 29 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Picture frame | 24 | 12 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Table lamp - High grade | 131 | 63 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Remote control | 125 | 60 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | CD - New release | 45 | 22 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | DVD - Box set | 480 | 232 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Hair dryer | 50 | 24 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | CHI 67869 1" Turbo Hair Straightener, | 140 | 68 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | iHome Gun Metal Travel Alarm Clock for | 47 | 23 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Weight Watchers Chrome and Glass Scale, | 40 | 19 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Blood Pressure Monitor, Omron BP710 | 50 | 24 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Picture frame | 24 | 12 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Luggage - Carry on / Pilot case / 22 in. or | 51 | 25 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Luggage - Duffle / Gym / Sports / Trave | 64 | 31 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | 5 lb. ABC fre extinguisher | 46 | 22 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Case - Briefcase | 162 | 78 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Honeywell Key metal Box | 20 | 10 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Midland LXT480VP3 2-Way Radio, | 49 | 24 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Sony MDR-XB500 Extra Bass Headphones - | 49 | 24 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | GE Profile 41 Cu Ft 11-Cycle Colossal- | 550 | 266 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | GE Profle 7.0 cu. ft. Super Capacity | 561 | 271 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Rowenta IS9100 Commercial Garment | 149 | 72 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Ironing board - Standard grade | 14 | 7 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Iron - Clothing / Clothes | 46 | 22 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Complete bed - Twin / Twin XL - High | 480 | 232 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Mattress / Boxspring set - Twin/Twin XL | 675 | 327 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Nightstand | 100 | 48 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Dresser / Drawer | 230 | 111 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Children's chair | 80 | 39 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Table lamp - Standard grade | 56 | 27 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | JVC TV-20F243 20" Real Flat TV/VCR | 290 | 140 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Credenza - Standard grade | 300 | 145 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Cable Box, Comcast | - | - |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Picture frame | 24 | 12 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Wall clock | 40 | 19 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Electric Air Pump, Ozark Trail | 19 | 9 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Conair Shiatsu Neck Massager, NMIO | 38 | 18 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Games - Board game - Standard grade | 26 | 13 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Luggage - Carry on / Pilot case /22 in. or | 51 | 25 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Plate set - 4pc. - Casual dinnerware - | 168 | 81 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Plate set - 4pc. - Casual dinnerware - | 56 | 27 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Plate set - 4pc. - Casual dinnerware - | 84 | 41 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Plate set - 4pc. - Casual dinnerware - | 112 | 54 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Plate set - 4pc. - Casual dinnerware - | 112 | 54 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Bowl - Sugar - Casual dinnerware - Standard | 20 | 10 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Plate set - 4pc. - Casual dinnerware - | 56 | 27 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Glasses & cups - Individual - Standard grade | 69 | 33 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Glasses & cups - Individual | 225 | 109 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Glasses & cups - Individual | 90 | 44 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Pitcher - Standard grade | 17 | 8 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Coffee pot / server - Casual dinnerware | 20 | 10 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Plastic Containers, Glad ware set of 12 | 100 | 48 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Colander / strainer | 34 | 16 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Oster 10-Speed Blender - White, | 33 | 16 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Toaster - Oven / Broiler - Standard grade | 32 | 15 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Santa Fe Quesadilla Maker - QM2R, QM2R | 27 | 13 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | George Foreman Grill, GR2OB | 36 | 17 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Toaster - Conventional - Standard grade | 25 | 12 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Cuisinart CFO-3SS Fondue Set, Electric, | 60 | 29 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Black & Decker HJ30 Handy Citrus Juicer, | 15 | 7 |

Exhibit 3.3
Calculation of Prejudgment Interest Summary - David Deeg & Deborah Hooker

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Vendor | Description | Amount | Total Interest Through 7/22/2019 |
|---|---|---|---|---|---|---|
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Back to Basics SJR1X Smoothie Blast | 23 | 11 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Bowl - Salad / Serving - Casual dinnerware - | 56 | 27 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Fry pan/ saute pan / skillet - Standard grade | 119 | 58 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Cooking pot - Standard grade | 119 | 58 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Mixing bowl - Single - Standard grade | 13 | 6 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Serving tray - Standard grade | 45 | 22 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Salad spinner - Standard grade | 30 | 15 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Coffee - Brewer / Maker - Standard grade | 21 | 10 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Hamilton Beach Hand Mixer, 62695V | 27 | 13 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Hand mixer - Standard grade | 23 | 11 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Breville Juice Fountain Plus Electric Juicer - | 150 | 73 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Kitchen scale - Standard grade | 20 | 10 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Slow cooker / Crock pot - Standard grade | 25 | 12 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Trivet! spoon rest - Standard grade | 14 | 7 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Basic Essentials 15-pc. Kitchen Utensil Set, | 35 | 17 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | TableCraft Oil and Vinegar Set, | 10 | 5 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Candle holder / candlestick - Standard grade | 16 | 8 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Paper towel holder - Standard grade | 11 | 5 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Dish rack / draining rack - Standard grade | 9 | 4 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Cutlery & utility - Cutting boards - Standard | 42 | 20 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Glasses and cups set - 4pc. - Standard grade | 50 | 24 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Glasses and cups set - 4pc. - Standard grade | 25 | 12 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | GE Profile 25.5 Cu. ft. French-Door Bottom- | 2,205 | 1,067 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | JVM3670SK GE Profle 36" Spacemalcer® | 659 | 319 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | GE PDWF788PSS 6 LEVEL 12 | 830 | 402 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | GE Profle 30" Self-Cleaning Freestanding | 1,400 | 677 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Table - Dining / Kitchen | 300 | 145 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Chair - Dining room / Kitchen - Standard | 472 | 228 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Curio | 300 | 145 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Artificial plant / fowers | 39 | 19 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Artificial plant / flowers | 39 | 19 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Vase | 80 | 39 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Shark Bagless Cordless Hand Vac - | 60 | 29 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Decorative fgurine - Standard grade | 340 | 164 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Jewelry box / storage - Standard grade | 105 | 51 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Vase - Standard grade | 120 | 58 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Crytal bowl decorative | 70 | 34 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Serving tray - Standard grade | 45 | 22 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Decorative Plates w/ Holder | 100 | 48 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Glasses & cups - Individual - Standard grade | 12 | 6 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Glasses & cups - Individual | 18 | 9 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Remove 2.6 lb.Pro Line Fire Extinguisher | 3 | 1 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | 2.6 lb.Pro Line Fire Extinguisher | 35 | 17 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Set of 4 TV Trays | 40 | 19 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Flashlight - Standard grade | 10 | 5 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Step stool - Standard grade | 25 | 12 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Vacuum - Upright - Standard grade | 56 | 27 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Sofa - Couch - Standard grade | 450 | 218 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Chair - Standard grade | 80 | 39 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Table - End - Standard grade | 65 | 31 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Table - Occasional / Cofee - Standard grade | 90 | 44 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Sofa - Couch - Standard grade | 450 | 218 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Table - Sofa - Standard grade | 155 | 75 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | TV / VCR stand & cabinet | 125 | 60 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Zenith Z5OPX2D | 1,773 | 858 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Philips Home Theater Audio System with | 177 | 86 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Cable Box Receiver, Comcast, Explorer | - | - |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Teac CD-X10i Ultra-Thin HiFi System for | 150 | 73 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Table lamp - Standard grade | 28 | 14 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Floor lamp / torchiere - Standard grade | 58 | 28 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Bookcase / shelves - Standard grade | 65 | 31 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Wall clock - Standard grade | 22 | 11 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Decorative Boxes | 200 | 97 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | CD - Old release | 5,920 | 2,864 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Table - End - High grade | 210 | 102 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Picture frame - Standard grade | 40 | 19 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Table - End - Standard grade | 65 | 31 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Table lamp - Standard grade | 28 | 14 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Vase | 40 | 19 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Picture frame | 72 | 35 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Desk - Standard grade | 65 | 31 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Loveseat - Standard grade | 400 | 194 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Table - End - Standard grade | 65 | 31 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Chair - Standard grade | 80 | 39 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Bookcase / shelves - Standard grade | 65 | 31 |

Exhibit 3.3
Calculation of Prejudgment Interest Summary - David Deeg & Deborah Hooker

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Vendor | Description | Amount | Total Interest Through 7/22/2019 |
|---|---|---|---|---|---|---|
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | DVD Rack | - | - |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | TV / VCR stand & cabinet - Standard grade | 45 | 22 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Coby Electronics TF-DVD7107 7-Inch | 80 | 39 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Dynex 27" 48t Standard-Definition Digital | 140 | 68 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Comcast Receiver, Cisco RG100 | - | - |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Panasonic DMR-EZ48VK DVD/VCR | 245 | 119 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Philips Portable CD Boombox With iPod | 60 | 29 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Inkjet / Deskjet / Offcejet printer - Standard | 50 | 24 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Shredder with wastebasket - Standard grade | 30 | 15 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Home / Desktop computer - Standard grade | 400 | 194 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Linksys WRT310N Wireless-N Gigabit | 109 | 53 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Motorola Netopia High-Speed ADSL2+ | 70 | 34 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | NEW HP/Compaq 5185-0478 USB | 25 | 12 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Mouse - Standard grade | 12 | 6 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Camera / Camcorder - Flash- High grade | 235 | 114 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Canon PowerShot SDI200-IS Blue 10.0MP | 149 | 72 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | MP3 & video player - Video iPod - Nano 8 | 149 | 72 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Apple iPod classic 160GB, Black, 7th | 229 | 111 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Hard drive - External - Computer - Standard | 70 | 34 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Cell phone - Standard grade | 50 | 24 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Cell phone - Standard grade | 50 | 24 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | LCD monitor - 17 inch - Standard grade | 85 | 41 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Battery Backup APC UPSXF1000 | 130 | 63 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Printer, scanner, fax, & copier combc | 100 | 48 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | PlayStation 2 Console Slim - Black | 100 | 48 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Video game - Playstation 2/ PS2 - Standard | 75 | 36 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Decorative basket / Wicker basket - | 10 | 5 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Artificial plant / flowers - Standard grade | 17 | 8 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Table lamp - Standard grade | 28 | 14 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Decorative figurine - Standard grade | 120 | 58 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Paperback books (old release) | 455 | 220 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | DVD - Old release | 2,145 | 1,038 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | DVD - Old release - Standard grade | 250 | 121 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Pillow - Standard grade | 210 | 102 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | CD - Old release | 250 | 121 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Table - Sofa - Standard grade | 155 | 75 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Ottoman - Standard grade | 52 | 25 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Decorative basket / Wicker basket - | 10 | 5 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Vase - Standard grade | 48 | 23 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Candle holder / candlestick - Standard grade | 16 | 8 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Decorative Plate, Square | 25 | 12 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Pillow - Standard grade | 15 | 7 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Bookcase / shelves - Standard grade | 65 | 31 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Table - Folding - Standard grade | 40 | 19 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Camp folding chair | 96 | 46 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Luggage - Garment bags - Standard grade | 36 | 17 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Artificial tree - Standard grade | 37 | 18 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Table lamp - Standard grade | 28 | 14 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Paper towel holder - Standard grade | 11 | 5 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Drink / Food cooler | 70 | 34 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Corded phone - Standard grade | 15 | 7 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Tool cart - Standard grade | 68 | 33 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Mainstays 4-Tier Shoe Rack, 14590468 | 45 | 22 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Drink / Food cooler | 70 | 34 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Elliptical machine - Standard grade | 230 | 111 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Exercise trampoline - Standard grade | 45 | 22 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Garden hose - Standard grade | 10 | 5 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Garden hose holder - Standard grade | 25 | 12 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Pressure washer - Electric - Standard grade | 145 | 70 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Room divider / decorative screen - Standard | 89 | 43 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Ab toner trainer Machine | 80 | 39 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Golf bag - Standard grade | 144 | 70 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Golf club - Hybrid - Standard grade | 675 | 327 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Fishing rod - Spinning - Standard grade | 25 | 12 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Table - End - Standard grade | 65 | 31 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Pruner / Shear - Standard grade | 14 | 7 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Pruner / Shear | 25 | 12 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Large storage bin / container / tote | 34 | 16 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | Duraclean Restoration & Remediation | Hardware Installer | 116 | 56 |
| | | **Personal Property Damage Expense Total** | | | $ 38,261 | $ 18,511 |

Exhibit 3.3A
Calculation of Prejudgment Interest Detail - David Deeg & Deborah Hooker

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement | Damage Component | Amount | 12/31/2010 | 9/30/2011 | 12/31/2011 | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 3/31/2016 | 6/30/2016 | 9/30/2016 | 12/31/2016 | 3/31/2017 | 6/30/2017 | 9/30/2017 | 12/31/2017 | 3/31/2018 | 6/30/2018 | 9/30/2018 | 12/31/2018 | 7/22/2019 | Total Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | $ 100 | $ 4 | $ 4 | $ 5 | $ 5 | $ 5 | $ 5 | $ 5 | $ 1 | $ 1 | $ 1 | $ 1 | $ 1 | $ 1 | $ 1 | $ 1 | $ 1 | $ 1 | $ 1 | $ 2 | $ 4 | $ 48 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 55 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 1 | 1 | | 1 | | | 1 | | 1 | | 1 | 1 | 2 | 27 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 1,475 | 65 | 66 | 18 | 70 | 70 | 70 | 70 | 17 | 18 | 18 | 18 | 18 | 19 | 19 | 20 | 20 | 21 | 22 | 23 | 52 | 714 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 220 | 10 | 10 | 3 | 10 | 10 | 10 | 10 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 8 | 106 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 230 | 10 | 10 | 3 | 11 | 11 | 11 | 11 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 8 | 111 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 250 | 11 | 11 | 3 | 12 | 12 | 12 | 12 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 9 | 121 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 135 | 6 | 6 | 2 | 6 | 6 | 6 | 6 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 65 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 262 | 12 | 12 | 3 | 12 | 12 | 12 | 12 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 9 | 127 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 30 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 15 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 13 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 6 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 448 | 20 | 20 | 5 | 21 | 21 | 21 | 21 | 5 | 5 | 5 | 6 | 5 | 6 | 6 | 6 | 6 | 7 | 7 | 16 | 217 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 40 | 2 | 2 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | | 19 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 95 | 4 | 4 | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 46 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 150 | 7 | 7 | 2 | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 73 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 60 | 3 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 29 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 24 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 12 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 131 | 6 | 6 | 2 | 6 | 6 | 6 | 6 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 63 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 125 | 5 | 6 | 1 | 6 | 6 | 6 | 6 | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 4 | 60 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 45 | 2 | 2 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 22 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 480 | 21 | 22 | 6 | 23 | 23 | 23 | 23 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 7 | 17 | | 232 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 50 | 2 | 2 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 24 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 140 | 6 | 6 | 2 | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 68 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 47 | 2 | 2 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 23 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 40 | 2 | 2 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 19 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 50 | 2 | 2 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 24 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 24 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 12 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 51 | 2 | 2 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 25 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 64 | 3 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 31 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 46 | 2 | 2 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 22 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 162 | 7 | 7 | 2 | 8 | 8 | 8 | 8 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 6 | | 78 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 20 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 10 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 49 | 2 | 2 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 24 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 49 | 2 | 2 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 24 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 550 | 24 | 25 | 7 | 26 | 26 | 26 | 26 | 6 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 8 | 8 | 8 | 8 | 19 | 266 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 561 | 25 | 25 | 7 | 27 | 27 | 27 | 27 | 7 | 7 | 7 | 7 | 7 | 7 | 8 | 8 | 8 | 8 | 9 | 20 | | 271 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 149 | 7 | 7 | 2 | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | | 72 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 14 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | 7 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 46 | 2 | 2 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 22 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 480 | 21 | 22 | 6 | 23 | 23 | 23 | 23 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 7 | 17 | | 232 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 675 | 30 | 30 | 8 | 32 | 32 | 32 | 32 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 10 | 24 | | 327 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 100 | 4 | 4 | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 4 | 48 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 230 | 10 | 10 | 3 | 11 | 11 | 11 | 11 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 8 | 111 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 80 | 4 | 4 | 1 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | | 39 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 56 | 2 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | | 27 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 290 | 13 | 13 | 3 | 14 | 14 | 14 | 14 | 3 | 3 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 10 | | 140 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 300 | 13 | 13 | 4 | 14 | 14 | 14 | 14 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 11 | 145 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 24 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 12 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 40 | 2 | 2 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 19 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 19 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 9 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 38 | 2 | 2 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 18 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 26 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 13 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 51 | 2 | 2 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 25 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 168 | 7 | 8 | 2 | 8 | 8 | 8 | 8 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 6 | | 81 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 56 | 2 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | | 27 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 84 | 4 | 4 | 1 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | | 41 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 112 | 5 | 5 | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 4 | | 54 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 112 | 5 | 5 | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 4 | | 54 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 20 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 10 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 56 | 2 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | | 27 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 69 | 3 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | | 33 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 225 | 10 | 10 | 3 | 11 | 11 | 11 | 11 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 8 | | 109 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 90 | 4 | 4 | 1 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | | 44 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 17 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 8 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 20 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 10 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 100 | 4 | 4 | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 4 | 48 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 34 | 1 | 2 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | | 16 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 33 | 1 | 1 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | | 16 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 32 | 1 | 1 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | | 15 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 27 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | | 13 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 36 | 2 | 2 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | | 17 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 25 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | | 12 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 60 | 3 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | | 29 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 15 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 7 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 23 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | | 11 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 56 | 2 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | | 27 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 119 | 5 | 5 | 1 | 6 | 6 | 6 | 6 | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 4 | | 57 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 119 | 5 | 5 | 1 | 6 | 6 | 6 | 6 | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 4 | | 57 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 13 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | 6 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 45 | 2 | 2 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 22 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 30 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | | 15 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 21 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | | 10 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 23 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | | 11 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 150 | 7 | 7 | 2 | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | | 73 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 20 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | | 10 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 25 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | | 12 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 14 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | 6 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 35 | 2 | 2 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | | 17 |

Exhibit 3.3A
Calculation of Prejudgment Interest Detail - David Deeg & Deborah Hooker

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Amount | 12/31/2010 | 9/30/2011 | 12/31/2011 | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 3/31/2016 | 6/30/2016 | 9/30/2016 | 12/31/2016 | 3/31/2017 | 6/30/2017 | 9/30/2017 | 12/31/2017 | 3/31/2018 | 6/30/2018 | 9/30/2018 | 12/31/2018 | 7/22/2019 | Total Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 10 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 5 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 16 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 8 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 11 | 0 | 0 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 5 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 9 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 4 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 42 | 2 | 2 | 1 | 2 | 2 | 2 | 2 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 20 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 50 | 2 | 2 | 1 | 2 | 2 | 2 | 2 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 20 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 25 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 12 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 2,205 | 97 | 99 | 26 | 105 | 105 | 105 | 105 | 26 | 26 | 27 | 27 | 27 | 28 | 29 | 30 | 30 | 31 | 33 | 34 | 78 | 1,067 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 659 | 29 | 30 | 8 | 31 | 31 | 31 | 31 | 8 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 9 | 10 | 10 | 23 | 319 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 830 | 36 | 37 | 10 | 39 | 39 | 39 | 39 | 10 | 10 | 10 | 10 | 10 | 11 | 11 | 11 | 11 | 12 | 12 | 13 | 29 | 402 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 1,400 | 61 | 63 | 17 | 66 | 66 | 66 | 66 | 17 | 17 | 17 | 17 | 17 | 18 | 18 | 19 | 19 | 20 | 21 | 21 | 49 | 677 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 300 | 13 | 13 | 4 | 14 | 14 | 14 | 14 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 11 | 145 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 472 | 21 | 21 | 6 | 22 | 22 | 22 | 22 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 7 | 17 | 228 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 300 | 13 | 13 | 4 | 14 | 14 | 14 | 14 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 11 | 145 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 39 | 2 | 2 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 19 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 39 | 2 | 2 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 19 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 80 | 4 | 4 | 1 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 39 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 60 | 3 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 29 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 340 | 15 | 15 | 4 | 16 | 16 | 16 | 16 | 4 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 5 | 5 | 5 | 5 | 12 | 164 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 105 | 5 | 5 | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 4 | 51 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 120 | 5 | 5 | 1 | 6 | 6 | 6 | 6 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 4 | 58 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 70 | 3 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 34 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 45 | 2 | 2 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 22 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 100 | 4 | 4 | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 4 | 48 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 12 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 6 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 18 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 9 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 3 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 35 | 2 | 2 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 17 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 40 | 2 | 2 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 19 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 10 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 5 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 25 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 12 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 56 | 2 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 27 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 450 | 20 | 20 | 5 | 21 | 21 | 21 | 21 | 5 | 5 | 5 | 6 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 16 | 218 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 80 | 4 | 4 | 1 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 39 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 65 | 3 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 31 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 90 | 4 | 4 | 1 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 44 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 450 | 20 | 20 | 5 | 21 | 21 | 21 | 21 | 5 | 5 | 5 | 6 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 16 | 218 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 155 | 7 | 7 | 2 | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 75 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 125 | 5 | 6 | 1 | 6 | 6 | 6 | 6 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 4 | 60 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 1,773 | 78 | 80 | 21 | 84 | 84 | 84 | 84 | 21 | 21 | 22 | 22 | 22 | 22 | 23 | 24 | 24 | 25 | 27 | 27 | 62 | 858 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 177 | 8 | 8 | 2 | 8 | 8 | 8 | 8 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 6 | 86 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 150 | 7 | 7 | 2 | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 73 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 28 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 14 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 58 | 3 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 28 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 65 | 3 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 31 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 22 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 11 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 200 | 9 | 9 | 2 | 9 | 10 | 10 | 10 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 97 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 5,920 | 260 | 266 | 71 | 281 | 281 | 281 | 281 | 70 | 70 | 72 | 73 | 73 | 75 | 77 | 80 | 81 | 84 | 89 | 91 | 208 | 2,864 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 210 | 9 | 9 | 3 | 10 | 10 | 10 | 10 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 102 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 40 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 19 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 65 | 3 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 31 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 28 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 14 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 40 | 2 | 2 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 19 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 72 | 3 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 35 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 65 | 3 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 31 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 400 | 18 | 18 | 5 | 19 | 19 | 19 | 19 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 6 | 6 | 6 | 14 | 194 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 65 | 3 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 31 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 80 | 4 | 4 | 1 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 39 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 65 | 3 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 31 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 45 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 22 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 80 | 4 | 4 | 1 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 39 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 140 | 6 | 6 | 2 | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 68 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 245 | 11 | 11 | 3 | 12 | 12 | 12 | 12 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 9 | 119 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 60 | 3 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 29 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 50 | 2 | 2 | 1 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 24 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 30 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 15 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 400 | 18 | 18 | 5 | 19 | 19 | 19 | 19 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 6 | 6 | 6 | 14 | 194 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 109 | 5 | 5 | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 4 | 53 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 70 | 3 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 34 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 25 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 12 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 12 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 6 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 235 | 10 | 11 | 3 | 11 | 11 | 11 | 11 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 8 | 114 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 149 | 7 | 7 | 2 | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 72 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 229 | 10 | 10 | 3 | 11 | 11 | 11 | 11 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 8 | 111 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 70 | 3 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 34 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 50 | 2 | 2 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 24 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 50 | 2 | 2 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 24 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 85 | 4 | 4 | 1 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 41 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 130 | 6 | 6 | 2 | 6 | 6 | 6 | 6 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 63 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 100 | 4 | 4 | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 4 | 48 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 100 | 4 | 4 | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 4 | 48 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 75 | 3 | 3 | 1 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 36 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 10 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 5 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 17 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 8 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 28 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 14 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 120 | 5 | 5 | 1 | 6 | 6 | 6 | 6 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 4 | 58 |

Exhibit 3.3A
Calculation of Prejudgment Interest Detail - David Deeg & Deborah Hooker

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Amount | 12/31/2010 | 9/30/2011 | 12/31/2011 | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 3/31/2016 | 6/30/2016 | 9/30/2016 | 12/31/2016 | 3/31/2017 | 6/30/2017 | 9/30/2017 | 12/31/2017 | 3/31/2018 | 6/30/2018 | 9/30/2018 | 12/31/2018 | 7/22/2019 | Total Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 455 | 20 | 20 | 5 | 22 | 22 | 22 | 22 | 5 | 5 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 16 | 220 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 2,145 | 94 | 96 | 26 | 102 | 102 | 102 | 102 | 25 | 25 | 26 | 26 | 26 | 27 | 28 | 29 | 29 | 31 | 32 | 33 | 76 | 1,038 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 250 | 11 | 11 | 3 | 12 | 12 | 12 | 12 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 9 | 121 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 210 | 9 | 9 | 3 | 10 | 10 | 10 | 10 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 102 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 250 | 11 | 11 | 3 | 12 | 12 | 12 | 12 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 9 | 121 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 155 | 7 | 7 | 2 | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 75 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 52 | 2 | 2 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 25 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 10 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 5 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 48 | 2 | 2 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 23 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 16 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 8 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 25 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 12 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 15 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 7 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 65 | 3 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 31 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 40 | 2 | 2 | 1 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 19 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 96 | 4 | 4 | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 46 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 36 | 2 | 2 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 17 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 37 | 2 | 2 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 18 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 28 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 14 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 11 | 0 | 0 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 5 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 70 | 3 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 34 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 15 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 7 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 68 | 3 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 33 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 45 | 2 | 2 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 22 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 70 | 3 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 34 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 230 | 10 | 10 | 3 | 11 | 11 | 11 | 11 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 8 | 111 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 45 | 2 | 2 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 22 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 10 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 5 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 25 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 12 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 145 | 6 | 7 | 2 | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 70 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 89 | 4 | 4 | 1 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 43 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 80 | 4 | 4 | 1 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 39 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 144 | 6 | 6 | 2 | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 70 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 675 | 30 | 30 | 8 | 32 | 32 | 32 | 32 | 8 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 10 | 24 | 327 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 25 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 1 | 12 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 65 | 3 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 31 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 14 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 7 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 25 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 12 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 34 | 1 | 2 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 1 | 16 |
| 3/9/2010 | 4/8/2010 | Personal Property Damage Expense | 116 | 5 | 5 | 1 | 6 | 6 | 6 | 6 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 4 | 56 |
| | | Personal Property Damage Expense Total | $ 38,261 | $ 1,679 | $ 1,717 | $ 458 | $ 1,817 | $ 1,817 | $ 1,817 | $ 1,817 | $ 452 | $ 455 | $ 465 | $ 472 | $ 469 | $ 482 | $ 499 | $ 516 | $ 522 | $ 546 | $ 576 | $ 587 | $ 1,347 | $ 18,511 |

*Assumptions:*

**Florida Statutory Interest Rates**

| | 12/31/2010 | 9/30/2011 | 12/31/2011 | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 3/31/2016 | 6/30/2016 | 9/30/2016 | 12/31/2016 | 3/31/2017 | 6/30/2017 | 9/30/2017 | 12/31/2017 | 3/31/2018 | 6/30/2018 | 9/30/2018 | 12/31/2018 | 7/22/2019 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Annual | 6.00% | 6.00% | 4.75% | 4.75% | 4.75% | 4.75% | 4.75% | 4.75% | 4.78% | 4.84% | 4.91% | 4.97% | 5.05% | 5.17% | 5.35% | 5.53% | 5.72% | 5.97% | 6.09% | 6.33% |
| Per Diem | 0.0164400% | 0.0164400% | 0.0130137% | 0.0129781% | 0.0130137% | 0.0130137% | 0.0130137% | 0.0129781% | 0.0130601% | 0.0132240% | 0.0134153% | 0.0136164% | 0.0138362% | 0.0141643% | 0.0146575% | 0.0151507% | 0.0156712% | 0.0163562% | 0.0166849% | 0.0173425% |

3.A
Documents and Other Information Considered - David Deeg & Deborah Hooker

*Chinese Drywall Litigation Involving Priority Claimants*

*Bate Stamp (if applicable)*

| No. | Claimant | General Description | First Page | Last Page |
|-----|----------|---------------------|-----------|-----------|
| **A. Pleadings and Other Legal Documents:** | | | | |
| 1 | All | Trial Plan for Property Damage Claims and Scheduling Order dated November 16, 2018 | | |
| 2 | Deeg/Hooker | Claimant Deborah Hooker's Unverified Answers to Defendants' Interrogatories, dated January 2, 2019 (Deposition Exhibit 11) | | |
| 3 | Deeg/Hooker | Claimant Deborah Hooker's Unverified Answers to Defendants' Second Set of Interrogatories, dated January 2, 2019 (Doc ID. 366723) | | |
| 4 | Deeg/Hooker | David Deeg & Deborah Hooker Supplemental Profile Plaintiff Profile Form, dated February 21, 2018 (Doc ID. 351799) | | |
| **B. Depositions & Corresponding Exhibits:** | | | | |
| 1 | Deeg/Hooker | Deposition Transcript of David Deeg, dated January 3, 2019 | | |
| 2 | Deeg/Hooker | Deposition Transcript of Deborah Hooker, dated January 3, 2019 | | |
| 3 | Deeg/Hooker | Deposition Exhibit 01 - Special Warranty Deed | DEEG000027 | DEEG000028 |
| 4 | Deeg/Hooker | Deposition Exhibit 02 - Contract for Purchase and Sale | DEEG000029 | DEEG000054 |
| 5 | Deeg/Hooker | Deposition Exhibit 03 - National Property Inspections Square Footage Affidavit | DEEG000005 | DEEG000024 |
| 6 | Deeg/Hooker | Deposition Exhibit 04 - Plaintiff Profile Form - Residential Properties | Deeg-Hooker000001 | Deeg-Hooker000096 |
| 7 | Deeg/Hooker | Deposition Exhibit 05 - Supplemental Plaintiff Profile Form | | |
| 8 | Deeg/Hooker | Deposition Exhibit 06 - Chinese Drywall Screening Report dated 11/9/2010 | DEEG000145 | DEEG000178 |
| 9 | Deeg/Hooker | Deposition Exhibit 07 - Personal Property Loss | DEEG000058 | DEEG000069 |
| 10 | Deeg/Hooker | Deposition Exhibit 08 - Duraclean Restoration & Remediation Estimate dated 3/9/2010 | DEEG000070 | DEEG000144 |
| 11 | Deeg/Hooker | Deposition Exhibit 09 - Copies of Checks | DEEG000222 | DEEG000225 |
| 12 | Deeg/Hooker | Deposition Exhibit 10 - Letter Titled History of Property | | |
| 13 | Deeg/Hooker | Deposition Exhibit 11 - Claimant, Deborah Hooker's Unverified Answers to Defendants' Interrogatories | | |
| 14 | Deeg/Hooker | Deposition Exhibit 12 - Page from Martin County Property Appraiser Website pertaining to 516 SW Akron Avenue, Stuart, Florida | | |
| 15 | Deeg/Hooker | Deposition Exhibit 13 - Page from Martin County Property Appraiser Website pertaining to 516 SW Akron Avenue, Stuart, Florida | | |
| **C. Supporting Documentation:** | | | | |
| 1 | Deeg/Hooker | Deeg-Hooker Damages Summary Provided by Counsel | | |
| 2 | Deeg/Hooker | Personal Property Loss | DEEG000058 | DEEG000144 |
| 3 | Deeg/Hooker | Jan 2011 Mortgage Statement | DEEG000246 | DEEG000249 |
| 4 | Deeg/Hooker | HUD for Sale of Property | DEEG000055 | DEEG000056 |
| **D. Research and Other Sources:** | | | | |
| 1 | Deeg/Hooker | Mortgage 10.10.2007 - KR Doc (from Public Records) | | |
| 2 | Deeg/Hooker | Second Mortgage 10.11.2007 - KR Doc (from Public Records) | | |
| 3 | Deeg/Hooker | Deeg Satisfaction of Mortgaqge - KR Docs (from Public Records) | | |
| 4 | Deeg/Hooker | Refinanced Mortgage - 332,000 - KR Docs (from Public Records) | | |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-22408-Civ-COOKE

EDUARDO AND CARMEN AMORIN, *et al.*,
individually and on behalf of others similarly
situated,

       Plaintiffs,

vs.

TAISHAN GYPSUM CO., LTD., f/k/a
SHANDONG TIASHE DONGXIN CO. LTD.,
*et al.*,

       Defendants.

_____

# Exhibit 4

**Calculations of Damages for Priority Claimants**

# Steven & Cathy Etter

EXHIBIT TO THE EXPERT WITNESS REPORT OF:
MICHAEL P. ELKIN, CPA/CFF/ABV, CFE
IN THE PRIORITY CLAIMANT TRIAL

February 19, 2019



Exhibit 4
Data and Damage Summary - Steven & Cathy Etter

*Chinese Drywall Litigation Involving Priority Claimants*

| Data: | | Reference / Notes |
|---|---|---|
| Address of Affected property | 11894 SE Jupiter Inlet Way | *SPPF* |
| | Tequesta, FL 33469 | *SPPF* |
| Date Affected property acquired | December 8, 2004 | *SPPF* |
| Date Chinese drywall installed | February-06 | *SPPF* |
| Date moved into Affected property | November 7, 2006 | *SPPF* |
| Date first aware of Chinese drywall | March-09 | *SPPF* |
| | | |
| Move out date to alternate living | November 15, 2012 | *ROG 1, #2* |
| Date returned to Affected property | August 16, 2013 | *ROG 1, #2* |
| End date for alternate living expenses | August 15, 2013 | *ROG 1, #2* |
| | | |
| Still own property? | N | *SPPF* |
| Bankruptcy caused by damage? | N | *SPPF* |
| Foreclosure or short sale? | N | *SPPF* |
| Affected property sold? | Y | *SPPF* |
| Sale date | September 28, 2016 | *SPPF* |
| Type of sale | Sale in Mitigation | *SPPF* |
| | | |
| Remediation status | Completed | *SPPF* |
| Remediation period | January 2013 - October 2013 | *SPPF* |

| Damage Summary: | | |
|---|---|---|
| Full or Partial Out-of-Pocket Remediation Expenses | $ 966,570 | |
| | | |
| Other Damages | | |
| Alternate Living Expenses | $ 46,242 | *Exh. 4.1* |
| Personal Property Damage Expense | 46,687 | *Exh. 4.1* |
| Additional Damages | - | |
| | $ 92,929 | |
| | | |
| Lost Equity | $ 313,441 | *Exh. 4.2* |
| | | |
| Diminution in Value | TBD | |
| | | |
| Loss of Use and Enjoyment | TBD | |
| | | |
| Punitive Damages | TBD | |

Exhibit 4.1
Damage Claims Detail - Steven & Cathy Etter

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Remediation | Christian Thomas Construction | Deposit + Expert Testimony | $ 52,384 | 12/1/2012 | | Bank Statement | ETTER000104 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 4 |
| Remediation | Christian Thomas Construction | Draw Request - Includes Warehouse | 74,608 | 1/4/2013 | | Bank Statement | ETTER000105 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 5 |
| Remediation | Christian Thomas Construction | LEEDS Deposit | 50,880 | 1/28/2013 | | Bank Statement | ETTER000146 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 46 |
| Remediation | Christian Thomas Construction | Draw Request | 105,083 | 2/8/2013 | | Bank Statement | ETTER000106 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 6 |
| Remediation | Christian Thomas Construction | Draw Request | 100,945 | 2/28/2013 | | Bank Statement | ETTER000106 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 6 |
| Remediation | Christian Thomas Construction | Draw Request - Includes Warehouse | 72,171 | 4/2/2013 | | Bank Statement | ETTER000107 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 7 |
| Remediation | Christian Thomas Construction | Draw Request - Includes Warehouse | 58,263 | 4/30/2013 | | Bank Statement | ETTER000108 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 8 |
| Remediation | Christian Thomas Construction | Draw Request - Includes Warehouse | 131,117 | 5/30/2013 | | Bank Statement | ETTER000108 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 8 |
| Remediation | Christian Thomas Construction | Draw Request - Includes Warehouse | 88,744 | 6/30/2013 | | Bank Statement | ETTER000109 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 9 |
| Remediation | Christian Thomas Construction | Draw Request - Includes Warehouse | 143,716 | 7/1/2013 | | Bank Statement | ETTER000110 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 10 |
| Remediation | Steam-A-Way | Clean Carpets | 828 | 8/14/2013 | | Bank Statement | ETTER000127 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 27 |
| Remediation | Christian Thomas Construction | Draw Request | 65,903 | 8/27/2013 | | Bank Statement | ETTER000111 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 11 |
| Remediation | Christian Thomas Construction | Draw Request | 21,929 | 10/7/2013 | | Bank Statement | ETTER000112 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 12 |
| **Remediation Total** | | | **$ 966,570** | | | | | | |
| Alternate Living Expenses | Prop Owners Fee | Lease | $ 100 | 10/24/2012 | | Bank Statement | ETTER000128 | Supp. to S Etter 16 ETTER101-153 | 28 |
| Alternate Living Expenses | U & Me Moving | Moving Expenses | 181 | 11/21/2012 | | Bank Statement | ETTER000124 | Supp. to S Etter 16 ETTER101-153 | 24 |
| Alternate Living Expenses | U & Me Moving | Moving Expenses | 3,481 | 11/28/2012 | | Bank Statement | ETTER000124 | Supp. to S Etter 16 ETTER101-153 | 24 |
| Alternate Living Expenses | U & Me Moving | Moving Expenses | 1,584 | 11/29/2012 | | Bank Statement | ETTER000124 | Supp. to S Etter 16 ETTER101-153 | 24 |
| Alternate Living Expenses | ADT | Utilities & Services | 114 | 12/4/2012 | | ADT Letter | N/A | Doc ID 165483 | 5 |
| Alternate Living Expenses | FPL | Utilities & Services | 33 | 12/12/2012 | | FPL Pay History | N/A | Doc ID 165483 | 27 |
| Alternate Living Expenses | Via Veracruz | Lease | 3,650 | 12/15/2012 | | Bank Statement | ETTER000124 | Supp. to S Etter 16 ETTER101-153 | 24 |
| Alternate Living Expenses | Town of Jupiter | Utilities & Services | 20 | 12/17/2012 | | Vendor Statement | N/A | Doc ID 165483 | 14 |
| Alternate Living Expenses | Comcast | Utilities & Services | 164 | 12/24/2012 | | Vendor Statement | N/A | Doc ID 165483 | 17 |
| Alternate Living Expenses | Town of Jupiter | Utilities & Services | 60 | 1/6/2013 | | Claimant | N/A | Exhibit 16 | 3 |
| Alternate Living Expenses | FPL | Utilities & Services | 162 | 1/8/2013 | | FPL Pay History | N/A | Doc ID 165483 | 27 |
| Alternate Living Expenses | Via Veracruz | Lease | 3,650 | 1/14/2013 | | Bank Statement | ETTER000150 | Supp. to S Etter 16 ETTER101-153 | 50 |
| Alternate Living Expenses | Via Veracruz | Lease | 3,650 | 2/13/2013 | | Bank Statement | ETTER000150 | Supp. to S Etter 16 ETTER101-153 | 50 |
| Alternate Living Expenses | FPL | Utilities & Services | 125 | 2/15/2013 | | FPL Pay History | N/A | Doc ID 165483 | 27 |
| Alternate Living Expenses | Comcast | Utilities & Services | 218 | 2/24/2013 | | Vendor Statement | N/A | Doc ID 165483 | 18 |
| Alternate Living Expenses | ADT | Utilities & Services | 76 | 3/4/2013 | | Bank Statement | ETTER000134 | Supp. to S Etter 16 ETTER101-153 | 34 |
| Alternate Living Expenses | Town of Jupiter | Utilities & Services | 139 | 3/4/2013 | | Vendor Statement | N/A | Doc ID 165483 | 21 |
| Alternate Living Expenses | Comcast | Utilities & Services | 54 | 3/6/2013 | | Vendor Statement | N/A | Doc ID 165483 | 17 |
| Alternate Living Expenses | FPL | Utilities & Services | 77 | 3/14/2013 | | FPL Pay History | N/A | Doc ID 165483 | 27 |
| Alternate Living Expenses | Via Veracruz | Lease | 3,650 | 3/15/2013 | | Bank Statement | ETTER000151 | Supp. to S Etter 16 ETTER101-153 | 51 |
| Alternate Living Expenses | Via Veracruz | Lease | 3,650 | 4/2/2013 | | Bank Statement | ETTER000137 | Supp. to S Etter 16 ETTER101-153 | 37 |
| Alternate Living Expenses | Town of Jupiter | Utilities & Services | 68 | 4/2/2013 | | Vendor Statement | N/A | Doc ID 165483 | 22 |
| Alternate Living Expenses | FPL | Utilities & Services | 117 | 4/3/2013 | | FPL Pay History | N/A | Doc ID 165483 | 27 |
| Alternate Living Expenses | Town of Jupiter | Utilities & Services | 66 | 4/26/2013 | | Vendor Statement | N/A | Doc ID 165483 | 23 |
| Alternate Living Expenses | Via Veracruz | Lease | 3,650 | 5/10/2013 | | Bank Statement | ETTER000108 | Supp. to S Etter 16 ETTER101-153 | 8 |
| Alternate Living Expenses | FPL | Utilities & Services | 156 | 5/14/2013 | | FPL Pay History | N/A | Doc ID 165483 | 27 |
| Alternate Living Expenses | Town of Jupiter | Utilities & Services | 75 | 5/30/2013 | | Vendor Statement | N/A | Doc ID 165483 | 26 |
| Alternate Living Expenses | ADT | Utilities & Services | 95 | 5/30/2013 | | Bank Statement | ETTER000139 | Supp. to S Etter 16 ETTER101-153 | 39 |

Exhibit 4.1
Damage Claims Detail - Steven & Cathy Etter

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Alternate Living Expenses | Via Veracruz | Lease | 3,650 | 6/10/2013 | | Bank Statement | ETTER000109 | Supp. to S Etter 16 ETTER101-153 | 9 |
| Alternate Living Expenses | FPL | Utilities & Services | 203 | 6/13/2013 | | FPL Pay History | N/A | Doc ID 165483 | 27 |
| Alternate Living Expenses | Comcast | Utilities & Services | 83 | 6/23/2013 | | Bank Statement | ETTER000109 | Supp. to S Etter 16 ETTER101-153 | 9 |
| Alternate Living Expenses | Town of Jupiter | Utilities & Services | 87 | 7/6/2013 | | Bank Statement | ETTER000142 | Supp. to S Etter 16 ETTER101-153 | 42 |
| Alternate Living Expenses | Via Veracruz | Lease | 3,650 | 7/10/2013 | x | Lease Agreement | N/A | Doc ID 165478 | 3 |
| Alternate Living Expenses | FPL | Utilities & Services | 279 | 7/12/2013 | | FPL Pay History | N/A | Doc ID 165483 | 27 |
| Alternate Living Expenses | Comcast | Utilities & Services | 77 | 7/31/2013 | | Bank Statement | ETTER000142 | Supp. to S Etter 16 ETTER101-153 | 42 |
| Alternate Living Expenses | Via Veracruz | Lease | 3,650 | 8/9/2013 | x | Lease Agreement | N/A | Doc ID 165478 | 3 |
| Alternate Living Expenses | FPL | Utilities & Services | 270 | 8/13/2013 | | FPL Pay History | N/A | Doc ID 165483 | 27 |
| Alternate Living Expenses | U & Me Moving | Moving Expenses | 5,000 | 8/15/2013 | | Bank Statement | ETTER000123 | Supp. to S Etter 16 ETTER101-153 | 23 |
| Alternate Living Expenses | FPL | Utilities & Services | 230 | 9/6/2013 | | FPL Pay History | N/A | Doc ID 165483 | 27 |
| **Alternate Living Expenses Total** | | | **$ 46,242** | | | | | | |
| Personal Property Damage Expense | Related Expenses | Replace Refrigerator Motor | $ 158 | 3/10/2009 | | Claimant | ETTER000040 | Exhibit 17 | 20 |
| Personal Property Damage Expense | Related Expenses | Repaired Microwave Panel | 163 | 11/3/2009 | | Claimant | ETTER000040 | Exhibit 17 | 20 |
| Personal Property Damage Expense | Related Expenses | Ice Maker Broken | 1,500 | 11/3/2009 | | Claimant | ETTER000040 | Exhibit 17 | 20 |
| Personal Property Damage Expense | Related Expenses | Shower door hinges replaced | 551 | 12/8/2010 | | Claimant | ETTER000040 | Exhibit 17 | 20 |
| Personal Property Damage Expense | Related Expenses | repaired samsung tv | 281 | 6/12/2011 | | Claimant | ETTER000040 | Exhibit 17 | 20 |
| Personal Property Damage Expense | Chinese Drywall Screening | N/A | 3,100 | 12/15/2012 | | Bank Statement | ETTER000125 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 25 |
| Personal Property Damage Expense | Chinese Drywall Screening | N/A | 1,900 | 1/23/2013 | | Bank Statement | ETTER000126 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 25 |
| Personal Property Damage Expense | Lowe's | Vanity Sink | 157 | 4/2/2013 | | Bank Statement | ETTER000113 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 13 |
| Personal Property Damage Expense | Home Depot | Microwave | 369 | 4/9/2013 | | Claimant | ETTER000041-42 | Exhibit 16 | 2 |
| Personal Property Damage Expense | Accurate Tile & Marble | Floor | 3,225 | 4/26/2013 | | Bank Statement | ETTER000108 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 8 |
| Personal Property Damage Expense | Leeds Custom Cabinets | Cabinets | 6,900 | 4/29/2013 | | Bank Statement | ETTER000107 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 7 |
| Personal Property Damage Expense | HomeGoods | Mirror Bath #3 | 57 | 5/27/2013 | | Bank Statement | ETTER000113 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 13 |
| Personal Property Damage Expense | Home Depot | Laundry Countertops | 41 | 5/31/2013 | | Receipt | ETTER000117 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 17 |
| Personal Property Damage Expense | Home Depot | Laundry Countertops | 221 | 5/31/2013 | | Receipt | ETTER000117 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 17 |
| Personal Property Damage Expense | We'll Floor U | Floor | 1,040 | 5/31/2013 | | Bank Statement | ETTER000114 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 14 |
| Personal Property Damage Expense | Jetson Ice Maker | Ice Machine | 2,061 | 5/31/2013 | | Bank Statement | ETTER000115-116 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 15-16 |
| Personal Property Damage Expense | Capitol Lighting | Lights | 259 | 6/6/2013 | | Receipt | ETTER000118 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 18 |
| Personal Property Damage Expense | Related Expenses | Replace 6 Rheostats | 675 | 7/1/2013 | | Claimant | ETTER000040 | Exhibit 17 | 20 |
| Personal Property Damage Expense | Related Expenses | A/C Coil Replacement | 7,575 | 7/1/2013 | | Claimant | ETTER000040 | Exhibit 17 | 20 |
| Personal Property Damage Expense | Millers | Cabinet Hardware | 275 | 7/9/2013 | | Receipt | ETTER000119 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 19 |
| Personal Property Damage Expense | Broadell's | Kitchen Sink | 624 | 7/15/2013 | | Bank Statement | ETTER000120 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 20 |
| Personal Property Damage Expense | Accurate Tile & Marble | Floor | 3,412 | 7/16/2013 | | Bank Statement | ETTER000116 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 16 |
| Personal Property Damage Expense | Accurate Tile & Marble | Floor | 4,080 | 7/17/2013 | | Bank Statement | ETTER000121 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 21 |
| Personal Property Damage Expense | Millers | Cabinet Hardware | 318 | 8/6/2013 | | Receipt | ETTER000119 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 19 |
| Personal Property Damage Expense | We'll Floor U | Closets | 1,444 | 8/7/2013 | | Bank Statement | ETTER000122 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 22 |
| Personal Property Damage Expense | Surreal Sound | N/A | 50 | 8/21/2013 | | Bank Statement | ETTER000111 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 9 |
| Personal Property Damage Expense | Residential Elevators | N/A | 375 | 8/22/2013 | | Bank Statement | ETTER000110 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 10 |
| Personal Property Damage Expense | Decorative Products, Inc. | N/A | 455 | 8/26/2013 | | Bank Statement | ETTER000110 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 10 |
| Personal Property Damage Expense | Microwave Electric | Appliance Repair | 491 | 8/27/2013 | | Bank Statement | ETTER000110 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 10 |
| Personal Property Damage Expense | Surreal Sound | N/A | 1,922 | 9/4/2013 | | Bank Statement | ETTER000110 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 10 |

Exhibit 4.1
Damage Claims Detail - Steven & Cathy Etter

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|------|--------|-------------|--------|------|--------------|----------------|-------|------------------|--------------|
| Personal Property Damage Expense | Microwave Electric | Appliance Repair | 169 | 9/5/2013 | | Bank Statement | ETTER000111 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 11 |
| Personal Property Damage Expense | ADT | Home Security | 2,589 | 9/9/2013 | | Bank Statement | ETTER000111 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 11 |
| Personal Property Damage Expense | Chinese Drywall Screening | Evidence Storage | 250 | 4/9/2015 | | Invoice | ETTER000039 | Exhibit 17 | 19 |
| Personal Property Damage Expense Total | | | $  46,687 | | | | | | |

Exhibit 4.2
Lost Equity - Steven & Cathy Etter

*Chinese Drywall Litigation Involving Priority Claimants*

| | | | | Source Document |
|---|---|---|---:|---|
| Initial Acquisition | | | | |
| Purchase Price | | $ | 600,000 | Martin County Property Search - KR Doc |
| Settlement Charges | | | N/A | |
| Total Gross Amount Due from Claimant | | $ | 600,000 | |
| | | | | |
| Less | | | | |
| Deposit Made by Claimant | | $ | - | |
| Borrowings by Claimant | | | N/A | |
| Credits | | | N/A | |
| Amount Due from Claimant at Close | | $ | 600,000 | |
| | | | | |
| Funds Paid by Claimant | | | | |
| Deposit Paid with Contract | | | N/A | |
| Cash Paid at Closing | | | N/A | |
| Total Payments for Initial Purchase | a | $ | 600,000 | |
| | | | | |
| Mortgage | | | | |
| Mortgage Beginning Balance | | $ | 1,172,000 | Mortgage - KR Doc (Public Records) |
| Mortgage Balance at Payoff | | | - | HUD Statement dated 9/28/16 ETTER000017 |
| Principal Payments Made | b | $ | 1,172,000 | |
| | | | | |
| Less: Cash Paid to Claimants upon Sale of Home | c | $ | (1,458,559) | HUD Statement dated 9/28/16 ETTER000017 |
| | | | | |
| Total Lost Equity | = a + b + c | $ | 313,441 | |

Exhibit 4.3
Calculation of Prejudgment Interest Summary - Steven & Cathy Etter

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Vendor | Description | Amount | Total Interest Through 7/22/2019 |
|---|---|---|---|---|---|---|
| 12/1/2012 | 12/31/2012 | Remediation | Christian Thomas Construction | Deposit + Expert Testimony | $ 52,384 | $ 17,578 |
| 1/4/2013 | 2/3/2013 | Remediation | Christian Thomas Construction | Draw Request - Includes Warehouse | 74,608 | 24,705 |
| 1/28/2013 | 2/27/2013 | Remediation | Christian Thomas Construction | LEEDS Deposit | 50,880 | 16,689 |
| 2/8/2013 | 3/10/2013 | Remediation | Christian Thomas Construction | Draw Request | 105,083 | 34,318 |
| 2/28/2013 | 3/30/2013 | Remediation | Christian Thomas Construction | Draw Request | 100,945 | 32,704 |
| 4/2/2013 | 5/2/2013 | Remediation | Christian Thomas Construction | Draw Request - Includes Warehouse | 72,171 | 23,072 |
| 4/30/2013 | 5/30/2013 | Remediation | Christian Thomas Construction | Draw Request - Includes Warehouse | 58,263 | 18,414 |
| 5/30/2013 | 6/29/2013 | Remediation | Christian Thomas Construction | Draw Request - Includes Warehouse | 131,117 | 40,927 |
| 6/30/2013 | 7/30/2013 | Remediation | Christian Thomas Construction | Draw Request - Includes Warehouse | 88,744 | 27,342 |
| 7/1/2013 | 7/31/2013 | Remediation | Christian Thomas Construction | Draw Request - Includes Warehouse | 143,716 | 44,261 |
| 8/14/2013 | 9/13/2013 | Remediation | Steam-A-Way | Clean Carpets | 828 | 250 |
| 8/27/2013 | 9/26/2013 | Remediation | Christian Thomas Construction | Draw Request | 65,903 | 19,808 |
| 10/7/2013 | 11/6/2013 | Remediation | Christian Thomas Construction | Draw Request | 21,929 | 6,474 |
| | | **Remediation Total** | | | **$ 966,570** | **$ 306,543** |
| 10/24/2012 | 11/23/2012 | Alternate Living Expenses | Prop Owners Fee | Lease | $ 100 | $ 34 |
| 11/21/2012 | 12/21/2012 | Alternate Living Expenses | U & Me Moving | Moving Expenses | 181 | 61 |
| 11/28/2012 | 12/28/2012 | Alternate Living Expenses | U & Me Moving | Moving Expenses | 3,481 | 1,169 |
| 11/29/2012 | 12/29/2012 | Alternate Living Expenses | U & Me Moving | Moving Expenses | 1,584 | 532 |
| 12/4/2012 | 1/3/2013 | Alternate Living Expenses | ADT | Utilities & Services | 114 | 38 |
| 12/12/2012 | 1/11/2013 | Alternate Living Expenses | FPL | Utilities & Services | 33 | 11 |
| 12/15/2012 | 1/14/2013 | Alternate Living Expenses | Via Veracruz | Lease | 3,650 | 1,218 |
| 12/17/2012 | 1/16/2013 | Alternate Living Expenses | Town of Jupiter | Utilities & Services | 20 | 7 |
| 12/24/2012 | 1/23/2013 | Alternate Living Expenses | Comcast | Utilities & Services | 164 | 55 |
| 1/6/2013 | 2/5/2013 | Alternate Living Expenses | Town of Jupiter | Utilities & Services | 60 | 20 |
| 1/8/2013 | 2/7/2013 | Alternate Living Expenses | FPL | Utilities & Services | 162 | 53 |
| 1/14/2013 | 2/13/2013 | Alternate Living Expenses | Via Veracruz | Lease | 3,650 | 1,204 |
| 2/13/2013 | 3/15/2013 | Alternate Living Expenses | Via Veracruz | Lease | 3,650 | 1,190 |
| 2/15/2013 | 3/17/2013 | Alternate Living Expenses | FPL | Utilities & Services | 125 | 41 |
| 2/24/2013 | 3/26/2013 | Alternate Living Expenses | Comcast | Utilities & Services | 218 | 71 |
| 3/4/2013 | 4/3/2013 | Alternate Living Expenses | ADT | Utilities & Services | 76 | 25 |
| 3/4/2013 | 4/3/2013 | Alternate Living Expenses | Town of Jupiter | Utilities & Services | 139 | 45 |
| 3/6/2013 | 4/5/2013 | Alternate Living Expenses | Comcast | Utilities & Services | 54 | 17 |
| 3/14/2013 | 4/13/2013 | Alternate Living Expenses | FPL | Utilities & Services | 77 | 25 |
| 3/15/2013 | 4/14/2013 | Alternate Living Expenses | Via Veracruz | Lease | 3,650 | 1,175 |
| 4/2/2013 | 5/2/2013 | Alternate Living Expenses | Via Veracruz | Lease | 3,650 | 1,167 |
| 4/2/2013 | 5/2/2013 | Alternate Living Expenses | Town of Jupiter | Utilities & Services | 68 | 22 |
| 4/3/2013 | 5/3/2013 | Alternate Living Expenses | FPL | Utilities & Services | 117 | 37 |
| 4/26/2013 | 5/26/2013 | Alternate Living Expenses | Town of Jupiter | Utilities & Services | 66 | 21 |
| 5/10/2013 | 6/9/2013 | Alternate Living Expenses | Via Veracruz | Lease | 3,650 | 1,149 |
| 5/14/2013 | 6/13/2013 | Alternate Living Expenses | FPL | Utilities & Services | 156 | 49 |
| 5/30/2013 | 6/29/2013 | Alternate Living Expenses | Town of Jupiter | Utilities & Services | 75 | 23 |
| 5/30/2013 | 6/29/2013 | Alternate Living Expenses | ADT | Utilities & Services | 95 | 30 |
| 6/10/2013 | 7/10/2013 | Alternate Living Expenses | Via Veracruz | Lease | 3,650 | 1,134 |
| 6/13/2013 | 7/13/2013 | Alternate Living Expenses | FPL | Utilities & Services | 203 | 63 |
| 6/23/2013 | 7/23/2013 | Alternate Living Expenses | Comcast | Utilities & Services | 83 | 26 |
| 7/6/2013 | 8/5/2013 | Alternate Living Expenses | Town of Jupiter | Utilities & Services | 87 | 27 |
| 7/10/2013 | 8/9/2013 | Alternate Living Expenses | Via Veracruz | Lease | 3,650 | 1,120 |
| 7/12/2013 | 8/11/2013 | Alternate Living Expenses | FPL | Utilities & Services | 279 | 85 |
| 7/31/2013 | 8/30/2013 | Alternate Living Expenses | Comcast | Utilities & Services | 77 | 23 |
| 8/9/2013 | 9/8/2013 | Alternate Living Expenses | Via Veracruz | Lease | 3,650 | 1,106 |
| 8/13/2013 | 9/12/2013 | Alternate Living Expenses | FPL | Utilities & Services | 270 | 82 |
| 8/15/2013 | 9/14/2013 | Alternate Living Expenses | U & Me Moving | Moving Expenses | 5,000 | 1,511 |
| 9/6/2013 | 10/6/2013 | Alternate Living Expenses | FPL | Utilities & Services | 230 | 69 |
| | | **Alternate Living Expenses Total** | | | **$ 46,242** | **$ 14,733** |
| 3/10/2009 | 4/9/2009 | Personal Property Damage Expense | Related Expenses | Replace Refrigerator Motor | 158 | 88 |
| 11/3/2009 | 12/3/2009 | Personal Property Damage Expense | Related Expenses | Repaired Microwave Panel | 163 | 82 |
| 11/3/2009 | 12/3/2009 | Personal Property Damage Expense | Related Expenses | Ice Maker Broken | 1,500 | 759 |
| 12/8/2010 | 1/7/2011 | Personal Property Damage Expense | Related Expenses | Shower door hinges replaced | 551 | 242 |
| 6/12/2011 | 7/12/2011 | Personal Property Damage Expense | Related Expenses | repaired samsung tv | 281 | 115 |
| 12/15/2012 | 1/14/2013 | Personal Property Damage Expense | Chinese Drywall Screening | N/A | 3,100 | 1,035 |
| 1/23/2013 | 2/22/2013 | Personal Property Damage Expense | Chinese Drywall Screening | N/A | 1,900 | 624 |
| 4/2/2013 | 5/2/2013 | Personal Property Damage Expense | Lowe's | Vanity Sink | 157 | 50 |
| 4/9/2013 | 5/9/2013 | Personal Property Damage Expense | Home Depot | Microwave | 369 | 118 |
| 4/26/2013 | 5/26/2013 | Personal Property Damage Expense | Accurate Tile & Marble | Floor | 3,225 | 1,021 |
| 4/29/2013 | 5/29/2013 | Personal Property Damage Expense | Leeds Custom Cabinets | Cabinets | 6,900 | 2,182 |
| 5/27/2013 | 6/26/2013 | Personal Property Damage Expense | HomeGoods | Mirror Bath #3 | 57 | 18 |
| 5/31/2013 | 6/30/2013 | Personal Property Damage Expense | Home Depot | Laundry Countertops | 41 | 13 |

Exhibit 4.3
Calculation of Prejudgment Interest Summary - Steven & Cathy Etter

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Vendor | Description | Amount | Total Interest Through 7/22/2019 |
|---|---|---|---|---|---|---|
| 5/31/2013 | 6/30/2013 | Personal Property Damage Expense | Home Depot | Laundry Countertops | 221 | 69 |
| 5/31/2013 | 6/30/2013 | Personal Property Damage Expense | We'll Floor U | Floor | 1,040 | 324 |
| 5/31/2013 | 6/30/2013 | Personal Property Damage Expense | Jetson Ice Maker | Ice Machine | 2,061 | 643 |
| 6/6/2013 | 7/6/2013 | Personal Property Damage Expense | Capitol Lighting | Lights | 259 | 81 |
| 7/1/2013 | 7/31/2013 | Personal Property Damage Expense | Related Expenses | Replace 6 Rheostats | 675 | 208 |
| 7/1/2013 | 7/31/2013 | Personal Property Damage Expense | Related Expenses | A/C Coil Replacement | 7,575 | 2,333 |
| 7/9/2013 | 8/8/2013 | Personal Property Damage Expense | Millers | Cabinet Hardware | 275 | 84 |
| 7/15/2013 | 8/14/2013 | Personal Property Damage Expense | Broadell's | Kitchen Sink | 624 | 191 |
| 7/16/2013 | 8/15/2013 | Personal Property Damage Expense | Accurate Tile & Marble | Floor | 3,412 | 1,044 |
| 7/17/2013 | 8/16/2013 | Personal Property Damage Expense | Accurate Tile & Marble | Floor | 4,080 | 1,248 |
| 8/6/2013 | 9/5/2013 | Personal Property Damage Expense | Millers | Cabinet Hardware | 318 | 96 |
| 8/7/2013 | 9/6/2013 | Personal Property Damage Expense | We'll Floor U | Closets | 1,444 | 438 |
| 8/21/2013 | 9/20/2013 | Personal Property Damage Expense | Surreal Sound | N/A | 50 | 15 |
| 8/22/2013 | 9/21/2013 | Personal Property Damage Expense | Residential Elevators | N/A | 375 | 113 |
| 8/26/2013 | 9/25/2013 | Personal Property Damage Expense | Decorative Products, Inc. | N/A | 455 | 137 |
| 8/27/2013 | 9/26/2013 | Personal Property Damage Expense | Microwave Electric | Appliance Repair | 491 | 148 |
| 9/4/2013 | 10/4/2013 | Personal Property Damage Expense | Surreal Sound | N/A | 1,922 | 576 |
| 9/5/2013 | 10/5/2013 | Personal Property Damage Expense | Microwave Electric | Appliance Repair | 169 | 51 |
| 9/9/2013 | 10/9/2013 | Personal Property Damage Expense | ADT | Home Security | 2,589 | 774 |
| 4/9/2015 | 5/9/2015 | Personal Property Damage Expense | Chinese Drywall Screening | Evidence Storage | 250 | 56 |
| | | Personal Property Damage Expense Total | | | $  46,687 | $  14,974 |

Exhibit 4.3A
Calculation of Prejudgment Interest Detail - Steven & Cathy Etter

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Amount | 12/31/2009 | 12/31/2010 | 9/30/2011 | 12/31/2011 | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 3/31/2016 | 6/30/2016 | 9/30/2016 | 12/31/2016 | 3/31/2017 | 6/30/2017 | 9/30/2017 | 12/31/2017 | 3/31/2018 | 6/30/2018 | 9/30/2018 | 12/31/2018 | 7/22/2019 | Total Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/1/2012 | 12/31/2012 | Remediation | $ 52,384 | $ - | $ - | $ - | $ - | $ - | $ 2,488 | $ 2,488 | $ 2,488 | $ 619 | $ 623 | $ 637 | $ 647 | $ 642 | $ 660 | $ 683 | $ 706 | $ 714 | $ 747 | $ 788 | $ 804 | $ 1,844 | $ 17,578 |
| 1/4/2013 | 2/3/2013 | Remediation | 74,608 | - | - | - | - | - | 3,214 | 3,544 | 3,544 | 881 | 887 | 908 | 921 | 914 | 939 | 972 | 1,006 | 1,017 | 1,064 | 1,123 | 1,145 | 2,627 | 24,705 |
| 1/28/2013 | 2/27/2013 | Remediation | 50,880 | - | - | - | - | - | 2,033 | 2,417 | 2,417 | 601 | 605 | 619 | 628 | 624 | 641 | 663 | 686 | 694 | 726 | 766 | 781 | 1,791 | 16,689 |
| 2/8/2013 | 3/10/2013 | Remediation | 105,083 | - | - | - | - | - | 4,048 | 4,991 | 4,991 | 1,241 | 1,249 | 1,278 | 1,297 | 1,288 | 1,323 | 1,369 | 1,417 | 1,433 | 1,499 | 1,581 | 1,613 | 3,699 | 34,318 |
| 2/28/2013 | 3/30/2013 | Remediation | 100,945 | - | - | - | - | - | 3,626 | 4,795 | 4,795 | 1,192 | 1,200 | 1,228 | 1,246 | 1,237 | 1,271 | 1,315 | 1,361 | 1,376 | 1,440 | 1,519 | 1,550 | 3,554 | 32,704 |
| 4/2/2013 | 5/2/2013 | Remediation | 72,171 | - | - | - | - | - | 2,282 | 3,428 | 3,428 | 852 | 858 | 878 | 891 | 884 | 909 | 940 | 973 | 984 | 1,029 | 1,086 | 1,108 | 2,541 | 23,072 |
| 4/30/2013 | 5/30/2013 | Remediation | 58,263 | - | - | - | - | - | 1,630 | 2,767 | 2,767 | 688 | 692 | 709 | 719 | 714 | 734 | 759 | 786 | 794 | 831 | 877 | 894 | 2,051 | 18,414 |
| 5/30/2013 | 6/29/2013 | Remediation | 131,117 | - | - | - | - | - | 3,157 | 6,228 | 6,228 | 1,548 | 1,558 | 1,595 | 1,618 | 1,607 | 1,651 | 1,709 | 1,768 | 1,788 | 1,870 | 1,973 | 2,013 | 4,616 | 40,927 |
| 6/30/2013 | 7/30/2013 | Remediation | 88,744 | - | - | - | - | - | 1,779 | 4,215 | 4,215 | 1,048 | 1,055 | 1,080 | 1,095 | 1,088 | 1,117 | 1,156 | 1,197 | 1,210 | 1,266 | 1,335 | 1,362 | 3,124 | 27,342 |
| 7/1/2013 | 7/31/2013 | Remediation | 143,716 | - | - | - | - | - | 2,862 | 6,827 | 6,827 | 1,697 | 1,708 | 1,748 | 1,774 | 1,761 | 1,809 | 1,873 | 1,938 | 1,960 | 2,050 | 2,163 | 2,206 | 5,060 | 44,261 |
| 8/14/2013 | 9/13/2013 | Remediation | 828 | - | - | - | - | - | 12 | 39 | 39 | 10 | 10 | 10 | 10 | 10 | 10 | 11 | 11 | 11 | 12 | 12 | 13 | 29 | 250 |
| 8/27/2013 | 9/26/2013 | Remediation | 65,903 | - | - | - | - | - | 823 | 3,130 | 3,130 | 778 | 783 | 802 | 813 | 808 | 830 | 859 | 889 | 899 | 940 | 992 | 1,012 | 2,320 | 19,808 |
| 10/7/2013 | 11/6/2013 | Remediation | 21,929 | - | - | - | - | - | 157 | 1,042 | 1,042 | 259 | 261 | 267 | 271 | 269 | 276 | 286 | 296 | 299 | 313 | 330 | 337 | 772 | 6,474 |
| | | Remediation Total | $ 966,570 | $ - | $ - | $ - | $ - | $ - | $ 28,110 | $ 45,912 | $ 45,912 | $ 11,415 | $ 11,487 | $ 11,759 | $ 11,929 | $ 11,845 | $ 12,170 | $ 12,596 | $ 13,034 | $ 13,180 | $ 13,784 | $ 14,545 | $ 14,837 | $ 34,028 | $ 306,543 |
| 10/24/2012 | 11/23/2012 | Alternate Living Expenses | $ 100 | $ - | $ - | $ - | $ - | $ 0 | $ 5 | $ 5 | $ 5 | $ 1 | $ 1 | $ 1 | $ 1 | $ 1 | $ 1 | $ 1 | $ 1 | $ 1 | $ 1 | $ 2 | $ 2 | $ 4 | $ 34 |
| 11/21/2012 | 12/21/2012 | Alternate Living Expenses | 181 | - | - | - | - | 0 | 9 | 9 | 9 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 6 | 61 |
| 11/28/2012 | 12/28/2012 | Alternate Living Expenses | 3,481 | - | - | - | - | 1 | 165 | 165 | 165 | 41 | 41 | 42 | 43 | 43 | 44 | 45 | 47 | 47 | 50 | 52 | 53 | 123 | 1,169 |
| 11/29/2012 | 12/29/2012 | Alternate Living Expenses | 1,584 | - | - | - | - | 0 | 75 | 75 | 75 | 19 | 19 | 19 | 20 | 19 | 20 | 21 | 21 | 22 | 23 | 24 | 24 | 56 | 532 |
| 12/4/2012 | 1/3/2013 | Alternate Living Expenses | 114 | - | - | - | - | - | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 4 | 38 |
| 12/12/2012 | 1/11/2013 | Alternate Living Expenses | 33 | - | - | - | - | - | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 11 |
| 12/15/2012 | 1/14/2013 | Alternate Living Expenses | 3,650 | - | - | - | - | - | 167 | 173 | 173 | 43 | 43 | 44 | 45 | 45 | 46 | 48 | 49 | 50 | 52 | 55 | 56 | 128 | 1,218 |
| 12/17/2012 | 1/16/2013 | Alternate Living Expenses | 20 | - | - | - | - | - | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 7 |
| 12/24/2012 | 1/23/2013 | Alternate Living Expenses | 164 | - | - | - | - | - | 7 | 8 | 8 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 3 | 6 | 55 |
| 1/6/2013 | 2/5/2013 | Alternate Living Expenses | 60 | - | - | - | - | - | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 20 |
| 1/8/2013 | 2/7/2013 | Alternate Living Expenses | 162 | - | - | - | - | - | 7 | 8 | 8 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 6 | 53 |
| 1/14/2013 | 2/13/2013 | Alternate Living Expenses | 3,650 | - | - | - | - | - | 152 | 173 | 173 | 43 | 43 | 44 | 45 | 45 | 46 | 48 | 49 | 50 | 52 | 55 | 56 | 128 | 1,204 |
| 2/13/2013 | 3/15/2013 | Alternate Living Expenses | 3,650 | - | - | - | - | - | 138 | 173 | 173 | 43 | 43 | 44 | 45 | 45 | 46 | 48 | 49 | 50 | 52 | 55 | 56 | 128 | 1,190 |
| 2/15/2013 | 3/17/2013 | Alternate Living Expenses | 125 | - | - | - | - | - | 5 | 6 | 6 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 4 | 41 |
| 2/24/2013 | 3/26/2013 | Alternate Living Expenses | 218 | - | - | - | - | - | 8 | 10 | 10 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 8 | 71 |
| 3/4/2013 | 4/3/2013 | Alternate Living Expenses | 76 | - | - | - | - | - | 3 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 25 |
| 3/4/2013 | 4/3/2013 | Alternate Living Expenses | 139 | - | - | - | - | - | 5 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 45 |
| 3/6/2013 | 4/5/2013 | Alternate Living Expenses | 54 | - | - | - | - | - | 2 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 17 |
| 3/14/2013 | 4/13/2013 | Alternate Living Expenses | 77 | - | - | - | - | - | 3 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 25 |
| 3/15/2013 | 4/14/2013 | Alternate Living Expenses | 3,650 | - | - | - | - | - | 124 | 173 | 173 | 43 | 43 | 44 | 45 | 45 | 46 | 48 | 49 | 50 | 52 | 55 | 56 | 128 | 1,175 |
| 4/2/2013 | 5/2/2013 | Alternate Living Expenses | 3,650 | - | - | - | - | - | 115 | 173 | 173 | 43 | 43 | 44 | 45 | 45 | 46 | 48 | 49 | 50 | 52 | 55 | 56 | 128 | 1,167 |
| 4/2/2013 | 5/2/2013 | Alternate Living Expenses | 68 | - | - | - | - | - | 2 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 22 |
| 4/3/2013 | 5/3/2013 | Alternate Living Expenses | 117 | - | - | - | - | - | 4 | 6 | 6 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 2 | 4 | 37 |
| 4/26/2013 | 5/26/2013 | Alternate Living Expenses | 66 | - | - | - | - | - | 2 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 21 |
| 5/10/2013 | 6/9/2013 | Alternate Living Expenses | 3,650 | - | - | - | - | - | 97 | 173 | 173 | 43 | 43 | 44 | 45 | 45 | 46 | 48 | 49 | 50 | 52 | 55 | 56 | 128 | 1,149 |
| 5/14/2013 | 6/13/2013 | Alternate Living Expenses | 156 | - | - | - | - | - | 4 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 49 |
| 5/30/2013 | 6/29/2013 | Alternate Living Expenses | 75 | - | - | - | - | - | 2 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 23 |
| 5/30/2013 | 6/29/2013 | Alternate Living Expenses | 95 | - | - | - | - | - | 2 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 30 |
| 6/10/2013 | 7/10/2013 | Alternate Living Expenses | 3,650 | - | - | - | - | - | 83 | 173 | 173 | 43 | 43 | 44 | 45 | 45 | 46 | 48 | 49 | 50 | 52 | 55 | 56 | 128 | 1,134 |
| 6/13/2013 | 7/13/2013 | Alternate Living Expenses | 203 | - | - | - | - | - | 5 | 10 | 10 | 2 | 2 | 2 | 3 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 63 |
| 6/23/2013 | 7/23/2013 | Alternate Living Expenses | 83 | - | - | - | - | - | 2 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 26 |
| 7/6/2013 | 8/5/2013 | Alternate Living Expenses | 87 | - | - | - | - | - | 2 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 27 |
| 7/10/2013 | 8/9/2013 | Alternate Living Expenses | 3,650 | - | - | - | - | - | 68 | 173 | 173 | 43 | 43 | 44 | 45 | 45 | 46 | 48 | 49 | 50 | 52 | 55 | 56 | 128 | 1,120 |
| 7/12/2013 | 8/11/2013 | Alternate Living Expenses | 279 | - | - | - | - | - | 5 | 13 | 13 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 10 | 85 |
| 7/31/2013 | 8/30/2013 | Alternate Living Expenses | 77 | - | - | - | - | - | 1 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 23 |
| 8/9/2013 | 9/8/2013 | Alternate Living Expenses | 3,650 | - | - | - | - | - | 54 | 173 | 173 | 43 | 43 | 44 | 45 | 45 | 46 | 48 | 49 | 50 | 52 | 55 | 56 | 128 | 1,106 |
| 8/13/2013 | 9/12/2013 | Alternate Living Expenses | 270 | - | - | - | - | - | 4 | 13 | 13 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 4 | 4 | 4 | 10 | 82 |
| 8/15/2013 | 9/14/2013 | Alternate Living Expenses | 5,000 | - | - | - | - | - | 70 | 238 | 238 | 59 | 59 | 61 | 62 | 61 | 63 | 65 | 67 | 68 | 71 | 75 | 77 | 176 | 1,511 |
| 9/6/2013 | 10/6/2013 | Alternate Living Expenses | 230 | - | - | - | - | - | 3 | 11 | 11 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 8 | 69 |
| | | Alternate Living Expenses Total | $ 46,242 | $ - | $ - | $ - | $ - | $ 2 | $ 1,410 | $ 2,197 | $ 2,197 | $ 546 | $ 550 | $ 563 | $ 571 | $ 567 | $ 582 | $ 603 | $ 624 | $ 631 | $ 659 | $ 696 | $ 710 | $ 1,628 | $ 14,733 |
| 3/10/2009 | 4/9/2009 | Personal Property Damage Expense | $ 158 | $ 9 | $ 9 | $ 7 | $ 2 | $ 7 | $ 7 | $ 7 | $ 7 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 6 | $ 88 |
| 11/3/2009 | 12/3/2009 | Personal Property Damage Expense | 163 | 1 | 10 | 7 | 2 | 8 | 8 | 8 | 8 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 3 | 6 | 82 |
| 11/3/2009 | 12/3/2009 | Personal Property Damage Expense | 1,500 | 9 | 90 | 67 | 18 | 71 | 71 | 71 | 71 | 18 | 18 | 18 | 19 | 18 | 19 | 20 | 20 | 20 | 21 | 23 | 23 | 53 | 759 |
| 12/8/2010 | 1/7/2011 | Personal Property Damage Expense | 551 | - | - | 24 | 7 | 26 | 26 | 26 | 26 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 8 | 8 | 8 | 8 | 19 | 242 |
| 6/12/2011 | 7/12/2011 | Personal Property Damage Expense | 281 | - | - | 4 | 3 | 13 | 13 | 13 | 13 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 10 | 115 |
| 12/15/2012 | 1/14/2013 | Personal Property Damage Expense | 3,100 | - | - | - | - | - | 142 | 147 | 147 | 37 | 37 | 38 | 38 | 38 | 39 | 40 | 42 | 42 | 44 | 47 | 48 | 109 | 1,035 |
| 1/23/2013 | 2/22/2013 | Personal Property Damage Expense | 1,900 | - | - | - | - | - | 77 | 90 | 90 | 22 | 23 | 23 | 23 | 23 | 24 | 25 | 26 | 26 | 27 | 29 | 29 | 67 | 624 |
| 4/2/2013 | 5/2/2013 | Personal Property Damage Expense | 157 | - | - | - | - | - | 5 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 6 | 50 |
| 4/9/2013 | 5/9/2013 | Personal Property Damage Expense | 369 | - | - | - | - | - | 11 | 18 | 18 | 4 | 4 | 4 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 6 | 6 | 13 | 118 |
| 4/26/2013 | 5/26/2013 | Personal Property Damage Expense | 3,225 | - | - | - | - | - | 92 | 153 | 153 | 38 | 38 | 39 | 40 | 40 | 41 | 42 | 43 | 44 | 46 | 49 | 50 | 114 | 1,021 |
| 4/29/2013 | 5/29/2013 | Personal Property Damage Expense | 6,900 | - | - | - | - | - | 194 | 328 | 328 | 81 | 82 | 84 | 85 | 85 | 87 | 90 | 93 | 94 | 98 | 104 | 106 | 243 | 2,182 |
| 5/27/2013 | 6/26/2013 | Personal Property Damage Expense | 57 | - | - | - | - | - | 1 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 18 |
| 5/31/2013 | 6/30/2013 | Personal Property Damage Expense | 41 | - | - | - | - | - | 1 | 2 | 2 | 0 | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 13 |
| 5/31/2013 | 6/30/2013 | Personal Property Damage Expense | 221 | - | - | - | - | - | 5 | 11 | 11 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 8 | 69 |
| 5/31/2013 | 6/30/2013 | Personal Property Damage Expense | 1,040 | - | - | - | - | - | 25 | 49 | 49 | 12 | 12 | 13 | 13 | 13 | 13 | 14 | 14 | 14 | 15 | 16 | 16 | 37 | 324 |
| 5/31/2013 | 6/30/2013 | Personal Property Damage Expense | 2,061 | - | - | - | - | - | 49 | 98 | 98 | 24 | 24 | 25 | 25 | 25 | 26 | 27 | 28 | 28 | 29 | 31 | 32 | 73 | 643 |
| 6/6/2013 | 7/6/2013 | Personal Property Damage Expense | 259 | - | - | - | - | - | 6 | 12 | 12 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 4 | 9 | 81 |
| 7/1/2013 | 7/31/2013 | Personal Property Damage Expense | 675 | - | - | - | - | - | 13 | 32 | 32 | 8 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 10 | 24 | 208 |
| 7/1/2013 | 7/31/2013 | Personal Property Damage Expense | 7,575 | - | - | - | - | - | 151 | 360 | 360 | 89 | 90 | 92 | 93 | 93 | 95 | 99 | 102 | 103 | 108 | 114 | 116 | 267 | 2,333 |
| 7/9/2013 | 8/8/2013 | Personal Property Damage Expense | 275 | - | - | - | - | - | 5 | 13 | 13 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 4 | 4 | 4 | 10 | 84 |
| 7/15/2013 | 8/14/2013 | Personal Property Damage Expense | 624 | - | - | - | - | - | 11 | 30 | 30 | 7 | 7 | 8 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 22 | 191 |
| 7/16/2013 | 8/15/2013 | Personal Property Damage Expense | 3,412 | - | - | - | - | - | 61 | 162 | 162 | 40 | 41 | 42 | 42 | 42 | 43 | 44 | 46 | 47 | 49 | 51 | 52 | 120 | 1,044 |
| 7/17/2013 | 8/16/2013 | Personal Property Damage Expense | 4,080 | - | - | - | - | - | 73 | 194 | 194 | 48 | 48 | 50 | 50 | 50 | 51 | 53 | 55 | 56 | 58 | 61 | 63 | 144 | 1,248 |
| 8/6/2013 | 9/5/2013 | Personal Property Damage Expense | 318 | - | - | - | - | - | 5 | 15 | 15 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 5 | 11 | 96 |
| 8/7/2013 | 9/6/2013 | Personal Property Damage Expense | 1,444 | - | - | - | - | - | 22 | 69 | 69 | 17 | 17 | 18 | 18 | 18 | 18 | 19 | 19 | 20 | 21 | 22 | 22 | 51 | 438 |
| 8/21/2013 | 9/20/2013 | Personal Property Damage Expense | 50 | - | - | - | - | - | 1 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 15 |
| 8/22/2013 | 9/21/2013 | Personal Property Damage Expense | 375 | - | - | - | - | - | 5 | 18 | 18 | 4 | 4 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 6 | 6 | 13 | 113 |
| 8/26/2013 | 9/25/2013 | Personal Property Damage Expense | 455 | - | - | - | - | - | 6 | 22 | 22 | 5 | 5 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 16 | 137 |
| 8/27/2013 | 9/26/2013 | Personal Property Damage Expense | 491 | - | - | - | - | - | 6 | 23 | 23 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 7 | 8 | 17 | 148 |
| 9/4/2013 | 10/4/2013 | Personal Property Damage Expense | 1,922 | - | - | - | - | - | 22 | 91 | 91 | 23 | 23 | 23 | 24 | 24 | 24 | 25 | 26 | 26 | 27 | 29 | 30 | 68 | 576 |
| 9/5/2013 | 10/5/2013 | Personal Property Damage Expense | 169 | - | - | - | - | - | 2 | 8 | 8 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 6 | 51 |
| 9/9/2013 | 10/9/2013 | Personal Property Damage Expense | 2,589 | - | - | - | - | - | 28 | 123 | 123 | 31 | 31 | 31 | 32 | 32 | 33 | 34 | 35 | 35 | 37 | 39 | 40 | 91 | 774 |
| 4/9/2015 | 5/9/2015 | Personal Property Damage Expense | 250 | - | - | - | - | - | - | - | 8 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 9 | 56 |
| | | Personal Property Damage Expense Total | $ 46,687 | $ 19 | $ 109 | $ 109 | $ 32 | $ 126 | $ 1,146 | $ 2,206 | $ 2,213 | $ 551 | $ 555 | $ 568 | $ 576 | $ 572 | $ 588 | $ 608 | $ 630 | $ 637 | $ 666 | $ 703 | $ 717 | $ 1,644 | $ 14,974 |

*Assumptions:*

Florida Statutory Interest Rates

| | 12/31/2009 | 12/31/2010 | 9/30/2011 | 12/31/2011 | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 3/31/2016 | 6/30/2016 | 9/30/2016 | 12/31/2016 | 3/31/2017 | 6/30/2017 | 9/30/2017 | 12/31/2017 | 3/31/2018 | 6/30/2018 | 9/30/2018 | 12/31/2018 | 7/22/2019 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Annual | 8.00% | 6.00% | 6.00% | 4.75% | 4.75% | 4.75% | 4.75% | 4.75% | 4.75% | 4.78% | 4.84% | 4.91% | 4.97% | 5.05% | 5.17% | 5.35% | 5.53% | 5.72% | 5.97% | 6.09% | 6.33% |
| Per Diem | 0.0219200% | 0.0164400% | 0.0164400% | 0.0130137% | 0.0129781% | 0.0130137% | 0.0130137% | 0.0130137% | 0.0129781% | 0.01306011% | 0.01322404% | 0.01341530% | 0.01361644% | 0.01383562% | 0.01416438% | 0.0146575% | 0.0151507% | 0.0156712% | 0.0163562% | 0.0166849% | 0.0173425% |

4.A
Documents and Other Information Considered - Steven & Cathy Etter

*Chinese Drywall Litigation Involving Priority Claimants*

*Bate Stamp (if applicable)*

| No. | Claimant | General Description | First Page | Last Page |
|---|---|---|---|---|
| **A. Pleadings and Other Legal Documents:** | | | | |
| 1 | All | Trial Plan for Property Damage Claims and Scheduling Order dated November 16, 2018 | | |
| 2 | Etter | Claimant Cathy Etter Answers to Interrogatories, dated November 30, 2018 | | |
| 3 | Etter | Priority Claimant Steven Etter Answers to Interrogatories, dated November 30, 2018 | | |
| 4 | Etter | Claimant Cathy Etter Answers to Defendant's Second Set of Interrogatories, dated December 4, 2018 | | |
| 5 | Etter | Priority Claimant Steven Etter Answers to Defendant's Second Set of Interrogatories, dated December 4, 2018 | | |
| 6 | Etter | Priority Claimant Steven Etter Supplemental Plaintiff Profile Form, dated December 13, 2018 (Doc ID. 366581) | | |
| **B. Depositions & Corresponding Exhibits:** | | | | |
| 1 | Etter | Deposition Transcript of Cathy Etter, dated January 11, 2019 | | |
| 2 | Etter | Deposition Transcript of Steven Etter, dated January 11, 2019 | | |
| 3 | Etter | Deposition Exhibit 01 - Special Warranty Deed | | |
| 4 | Etter | Deposition Exhibit 02 - AIA Document A101-1997 Standard Form of Agreement | ETTER000018 | ETTER000027 |
| 5 | Etter | Deposition Exhibit 03 - Seacoast National Bank Loan Statement | | |
| 6 | Etter | Deposition Exhibit 04 - Matin County, Florida - Laurel Kelly, C.F.A - Summary | | |
| 7 | Etter | Deposition Exhibit 05 - IMR Test Labs - Analysis of Drywall Sample | CDWIND01-006020 | CDWIND01-006023 |
| 8 | Etter | Deposition Exhibit 06 - Declaration of Correctness of Square Footage on Chinese Drywall Clients Property for Remediation Damages | | |
| 9 | Etter | Deposition Exhibit 07 - Floor Plan and Site Plan - Lot 4 Emerald Harbour, Martin County, Florida | | |
| 10 | Etter | Deposition Exhibit 08 - Plaintiff Profile Form - Residential Properties | ETTER000001 | ETTER000035 |
| 11 | Etter | Deposition Exhibit 09 - January 4, 2019 Letter and September 18, 2012 Settlement Agreement and Release Between the Etters and USAA | | |
| 12 | Etter | Deposition Exhibit 10 - May 8, 2013 Letter, Check, and Confidential Settlement and General Release Agreement (Etters and J. Helm Construction) | ETTER000082 | ETTER000093 |
| 13 | Etter | Deposition Exhibit 11 - Photographs | Taishan000026 | Taishan000029 |
| 14 | Etter | Deposition Exhibit 12 - November 5, 2010 Chinese Drywall Screening, LLC Report Summary | | |
| 15 | Etter | Deposition Exhibit 13 - Chinese Drywall Screening, LLC Evidence Preservation Report | | |
| 16 | Etter | Deposition Exhibit 14 - Supplemental Plaintiff Profile Form - Residential and Commercial Properties (Non-Knauf) | | |
| 17 | Etter | Deposition Exhibit 15 - Christian Thomas Construction, Inc. Remediation Cost of Repairs | | |
| 18 | Etter | Deposition Exhibit 16 - Spreadsheets - Total Costs Directly Related to Chinese Drywall Remediation of the Etter Property | | |
| 19 | Etter | Deposition Exhibit 17 - Invoices | ETTER000021 | ETTER000081 |
| 20 | Etter | Deposition Exhibit 18 - Priority Claimant, Steven Etter's Answers to Defendants' Interrogatories | | |
| **C. Supporting Documentation** | | | | |
| 6 | Etter | Etter Damages Summary Provided by Counsel | | |
| 4 | Etter | Supplement to S Etter 16 - Invoices | ETTER000101 | ETTER000153 |
| 1 | Etter | Doc ID. 165490 - Etter Relocation Receipts | | |
| 2 | Etter | Doc ID. 165478 - Etter - Etter Relocation Lease | | |
| 3 | Etter | Doc ID. 165483 - Etter Relocation Receipts 2 (Utilities) | | |
| 5 | Etter | HUD for Sale of Property | ETTER000017 | ETTER000020 |

4.A
Documents and Other Information Considered - Steven & Cathy Etter

*Chinese Drywall Litigation Involving Priority Claimants*

| | | | | Bate Stamp (if applicable) | |
|---|---|---|---|---|---|
| No. | Claimant | General Description | | First Page | Last Page |

D. Research and Other Sources:

| | | |
|---|---|---|
| 1 | Etter | Martin County Public Records - Initial Purchase Price, dated December 13, 2004 |
| 2 | Etter | Martin County Public Records - Mortgage ($1,172,000), dated December 8, 2004 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-22408-Civ-COOKE

EDUARDO AND CARMEN AMORIN, *et al.*,
individually and on behalf of others similarly
situated,

      Plaintiffs,

vs.

TAISHAN GYPSUM CO., LTD., f/k/a
SHANDONG TIASHE DONGXIN CO. LTD.,
*et al.*,

      Defendants.

_____

# Exhibit 5

**Calculations of Damages for Priority Claimants**

# Andrew & Dawn Feldkamp

EXHIBIT TO THE EXPERT WITNESS REPORT OF:
MICHAEL P. ELKIN, CPA/CFF/ABV, CFE
IN THE PRIORITY CLAIMANT TRIAL

February 19, 2019



Exhibit 5
Data and Damage Summary - Andrew & Dawn Feldkamp

*Chinese Drywall Litigation Involving Priority Claimants*

| Data: | | *Reference / Notes* |
|---|---|---|
| Address of Affected property | 5237 Butte Street | *SPPF* |
| | Lehigh Acres, FL 33971 | *SPPF* |
| Date Affected property acquired | August 4, 2008 | *SPPF* |
| Date Chinese drywall installed | 2006 | *SPPF* |
| Date moved into Affected property | August 4, 2008 | *SPPF* |
| Date first aware of Chinese drywall | March-12 | *SPPF* |
| | | |
| Move out date to alternate living | April-12 | *ROG 1, #2* |
| Date returned to Affected property | Never | *ROG 1, #2* |
| End date for alternate living expenses | September 24, 2015 | *ROG 1, #2* |
| | | |
| Still own property? | N | *SPPF* |
| Bankruptcy caused by damage? | Y | *SPPF* |
| Foreclosure or short sale? | Y | *SPPF* |
| Affected property sold? | Y | *SPPF* |
| Sale date | September 24, 2015 | *SPPF* |
| Type of sale | Foreclosure | *SPPF* |
| | | |
| Remediation status | None | *SPPF* |
| Remediation period | N/A | *SPPF* |

| Damage Summary: | | |
|---|---|---|
| Full or Partial Out-of-Pocket Remediation Expenses | $                -    | |
| | | |
| Other Damages | | |
|    Alternate Living Expenses | $          37,989 | *Exh. 5.1* |
|    Personal Property Damage Expense | 970 | *Exh. 5.1* |
|    Additional Damages | - | |
| | $          38,959 | |
| | | |
| Lost Equity | $           9,064 | *Exh. 5.2* |
| | | |
| Diminution in Value / Lost Equity | TBD | |
| | | |
| Loss of Use and Enjoyment | TBD | |
| | | |
| Punitive Damages | TBD | |

Exhibit 5.1
Damage Claims Detail - Andrew & Dawn Feldkamp

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Alternate Living Expenses | Premier Realty Solutions | App Fee + Deposit | $ 375 | 4/13/2012 | | Check | N/A | Exhibit 9 | 58 |
| Alternate Living Expenses | Linda Bays | Deposit | 450 | 4/26/2012 | | Check | N/A | Exhibit 9 | 56 |
| Alternate Living Expenses | Premier Realty Solutions | First/Last | 1,500 | 4/26/2012 | | Check | N/A | Exhibit 9 | 57 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 564 | 5/23/2012 | | Check | N/A | Exhibit 9 | 55 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 6/25/2012 | | Check | N/A | Exhibit 9 | 54 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 7/25/2012 | | Check | N/A | Exhibit 9 | 53 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 8/27/2012 | | Check | N/A | Exhibit 9 | 52 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 9/26/2012 | | Check | N/A | Exhibit 9 | 51 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 10/26/2012 | | Check | N/A | Exhibit 9 | 50 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 11/26/2012 | | Check | N/A | Exhibit 9 | 49 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 12/26/2012 | | Check | N/A | Exhibit 9 | 48 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 1/27/2013 | | Check | N/A | Exhibit 9 | 46 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 2/25/2013 | | Check | N/A | Exhibit 9 | 45 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 3/26/2013 | | Check | N/A | Exhibit 9 | 44 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 4/25/2013 | | Check | N/A | Exhibit 9 | 43 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 5/25/2013 | | Check | N/A | Exhibit 9 | 42 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 6/28/2013 | | Check | N/A | Exhibit 9 | 41 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 7/26/2013 | | Check | N/A | Exhibit 9 | 40 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 8/26/2013 | | Check | N/A | Exhibit 9 | 39 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 9/25/2013 | | Check | N/A | Exhibit 9 | 38 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 10/31/2013 | | Check | N/A | Exhibit 9 | 37 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 11/29/2013 | | Check | N/A | Exhibit 9 | 36 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 12/27/2013 | | Check | N/A | Exhibit 9 | 35 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 1/26/2014 | | Check | N/A | Exhibit 9 | 34 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 2/25/2014 | | Check | N/A | Exhibit 9 | 33 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 3/25/2014 | | Check | N/A | Exhibit 9 | 32 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 4/26/2014 | | Check | N/A | Exhibit 9 | 31 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 5/27/2014 | | Check | N/A | Exhibit 9 | 30 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 6/26/2014 | | Check | N/A | Exhibit 9 | 29 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 7/28/2014 | | Check | N/A | Exhibit 9 | 28 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 8/26/2014 | | Check | N/A | Exhibit 9 | 27 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 9/28/2014 | | Check | N/A | Exhibit 9 | 26 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 10/26/2014 | | Check | N/A | Exhibit 9 | 25 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 11/26/2014 | | Check | N/A | Exhibit 9 | 24 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 12/28/2014 | | Check | N/A | Exhibit 9 | 23 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 1/25/2015 | | Check | N/A | Exhibit 9 | 22 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 2/24/2015 | | Check | N/A | Exhibit 9 | 21 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 3/27/2015 | | Check | N/A | Exhibit 9 | 20 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 4/29/2015 | | Check | N/A | Exhibit 9 | 19 |

Exhibit 5.1
Damage Claims Detail - Andrew & Dawn Feldkamp

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 5/29/2015 | | Check | N/A | Exhibit 9 | 18 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 6/26/2015 | | Check | N/A | Exhibit 9 | 17 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 7/27/2015 | | Check | N/A | Exhibit 9 | 15 |
| Alternate Living Expenses | Gulf Coast Realty | Rent Payment | 900 | 8/27/2015 | | Check | N/A | Exhibit 9 | 14 |
| **Alternate Living Expenses Total** | | | $ 37,989 | | | | | | |
| Personal Property Damage Expense | Penguin Heating & Air Conditioning | Invoice for Diagnostic of A/C Issues | $ 190 | 8/9/2008 | | Invoice | N/A | Exhibit 7 | 1 |
| Personal Property Damage Expense | Larry's Air Conditioning & Heating, Inc. | A/C Repair | 105 | 4/13/2009 | | Invoice | N/A | Exhibit 7 | 2 |
| Personal Property Damage Expense | Larry's Air Conditioning & Heating, Inc. | A/C Repair | 475 | 8/27/2009 | | Invoice | N/A | Exhibit 7 | 3 |
| Personal Property Damage Expense | Larry's Air Conditioning & Heating, Inc. | A/C Repair | 100 | 4/8/2011 | | Invoice | N/A | Exhibit 7 | 5 |
| Personal Property Damage Expense | Larry's Air Conditioning & Heating, Inc. | A/C Repair | 100 | 8/25/2011 | | Invoice | N/A | Exhibit 7 | 4 |
| **Personal Property Damage Expense Total** | | | $ 970 | | | | | | |

Exhibit 5.2
Lost Equity - Andrew & Dawn Feldkamp

*Chinese Drywall Litigation Involving Priority Claimants*

| | | | Source Document |
|---|---|---|---|
| Initial Acquisition | | | |
| Purchase Price | $ | 125,000 | Contract for Purchase Doc ID 366298 |
| Settlement Charges | | N/A | |
| Total Gross Amount Due from Claimant | $ | 125,000 | |
| | | | |
| Less | | | |
| Deposit Made by Claimant | $ | (3,750) | Contract for Purchase Doc ID 366298 |
| Borrowings by Claimant | | N/A | |
| Credits | | N/A | |
| Amount Due from Claimant at Close | $ | 121,250 | |
| | | | |
| Funds Paid by Claimant | | | |
| Deposit Paid with Contract | $ | 2,500 | Contract for Purchase Doc ID 366298 |
| Cash Paid at Closing | | 1,250 | Contract for Purchase Doc ID 366298 |
| Total Payments for Initial Purchase a | $ | 3,750 | |
| | | | |
| Mortgage | | | |
| Mortgage Beginning Balance | $ | 124,019 | Mortgage Doc ID. 366340 |
| Mortgage Balance at Payoff | | 118,705 | Exhibit 12 Final Judgment of Foreclosure |
| Principal Payments Made b | $ | 5,314 | Form 1098 Mortgage Interest Statement |
| | | | |
| Total Lost Equity = a + b | $ | 9,064 | |

Exhibit 5.3
Calculation of Prejudgment Interest Summary - Andrew & Dawn Feldkamp

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Vendor | Description | Amount | Total Interest Through 7/22/2019 |
|---|---|---|---|---|---|---|
| 4/13/2012 | 5/13/2012 | Alternate Living Expenses | Premier Realty Solutions | App Fee + Deposit | $ 375 | $ 137 |
| 4/26/2012 | 5/26/2012 | Alternate Living Expenses | Linda Bays | Deposit | 450 | 164 |
| 4/26/2012 | 5/26/2012 | Alternate Living Expenses | Premier Realty Solutions | First/Last | 1,500 | 546 |
| 5/23/2012 | 6/22/2012 | Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 564 | 203 |
| 6/25/2012 | 7/25/2012 | Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 321 |
| 7/25/2012 | 8/24/2012 | Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 317 |
| 8/27/2012 | 9/26/2012 | Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 313 |
| 9/26/2012 | 10/26/2012 | Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 310 |
| 10/26/2012 | 11/26/2012 | Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 306 |
| 11/26/2012 | 12/26/2012 | Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 303 |
| 12/26/2012 | 1/25/2013 | Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 299 |
| 1/27/2013 | 2/26/2013 | Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 295 |
| 2/25/2013 | 3/27/2013 | Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 292 |
| 3/26/2013 | 4/25/2013 | Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 289 |
| 4/25/2013 | 5/25/2013 | Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 285 |
| 5/25/2013 | 6/24/2013 | Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 282 |
| 6/28/2013 | 7/28/2013 | Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 278 |
| 7/26/2013 | 8/25/2013 | Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 274 |
| 8/26/2013 | 9/25/2013 | Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 271 |
| 9/25/2013 | 10/25/2013 | Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 267 |
| 10/31/2013 | 11/30/2013 | Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 263 |
| 11/29/2013 | 12/29/2013 | Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 259 |
| 12/27/2013 | 1/26/2014 | Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 256 |
| 1/26/2014 | 2/25/2014 | Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 253 |
| 2/25/2014 | 3/27/2014 | Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 249 |
| 3/25/2014 | 4/24/2014 | Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 246 |
| 4/26/2014 | 5/26/2014 | Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 242 |
| 5/27/2014 | 6/26/2014 | Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 239 |
| 6/26/2014 | 7/26/2014 | Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 235 |
| 7/28/2014 | 8/27/2014 | Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 231 |
| 8/26/2014 | 9/25/2014 | Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 228 |
| 9/28/2014 | 10/28/2014 | Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 224 |
| 10/26/2014 | 11/25/2014 | Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 221 |
| 11/26/2014 | 12/26/2014 | Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 217 |
| 12/28/2014 | 1/27/2015 | Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 213 |
| 1/25/2015 | 2/24/2015 | Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 210 |
| 2/24/2015 | 3/26/2015 | Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 207 |
| 3/27/2015 | 4/26/2015 | Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 203 |
| 4/29/2015 | 5/29/2015 | Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 199 |
| 5/29/2015 | 6/28/2015 | Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 196 |
| 6/26/2015 | 7/26/2015 | Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 192 |
| 7/27/2015 | 8/26/2015 | Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 189 |
| 8/27/2015 | 9/26/2015 | Alternate Living Expenses | Gulf Coast Realty | Rent Payment | 900 | 185 |
| | | **Alternate Living Expenses Total** | | | **$ 37,989** | **$ 10,907** |
| 8/9/2008 | 9/8/2008 | Personal Property Damage Expense | Penguin Heating & Air Conditioning | Invoice for Diagnostic of A/C Issues | $ 190 | $ 117 |
| 4/13/2009 | 5/13/2009 | Personal Property Damage Expense | Larry's Air Conditioning & Heating, Inc. | A/C Repair | 105 | 58 |
| 8/27/2009 | 9/26/2009 | Personal Property Damage Expense | Larry's Air Conditioning & Heating, Inc. | A/C Repair | 475 | 247 |
| 4/8/2011 | 5/8/2011 | Personal Property Damage Expense | Larry's Air Conditioning & Heating, Inc. | A/C Repair | 100 | 42 |
| 8/25/2011 | 9/24/2011 | Personal Property Damage Expense | Larry's Air Conditioning & Heating, Inc. | A/C Repair | 100 | 40 |
| | | **Personal Property Damage Expense Total** | | | **$ 970** | **$ 503** |

Exhibit 5.3A
Calculation of Prejudgment Interest Detail - Andrew & Dawn Feldkamp

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Amount | 12/31/2008 | 12/31/2009 | 12/31/2010 | 9/30/2011 | 12/31/2011 | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 3/31/2016 | 6/30/2016 | 9/30/2016 | 12/31/2016 | 3/31/2017 | 6/30/2017 | 9/30/2017 | 12/31/2017 | 3/31/2018 | 6/30/2018 | 9/30/2018 | 12/31/2018 | 7/22/2019 | Total Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/13/2012 | 5/13/2012 | Alternate Living Expenses | $ 375 | $ - | $ - | $ - | $ - | $ 11 | $ 18 | $ 18 | $ 18 | $ 4 | $ 4 | $ 5 | $ 5 | $ 5 | $ 5 | $ 5 | $ 5 | $ 5 | $ 5 | $ 5 | $ 6 | $ 6 | $ 13 | 137 |
| 4/26/2012 | 5/26/2012 | Alternate Living Expenses | 450 | - | - | - | - | 13 | 21 | 21 | 21 | 5 | 5 | 5 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 16 | 164 |
| 4/26/2012 | 5/26/2012 | Alternate Living Expenses | 1,500 | - | - | - | - | 43 | 71 | 71 | 71 | 18 | 18 | 18 | 19 | 18 | 19 | 20 | 20 | 20 | 21 | 23 | 23 | 63 | 546 |
| 5/23/2012 | 6/22/2012 | Alternate Living Expenses | 564 | - | - | - | - | 14 | 27 | 27 | 27 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 8 | 8 | 8 | 8 | 9 | 20 | 203 |
| 6/25/2012 | 7/25/2012 | Alternate Living Expenses | 900 | - | - | - | - | 19 | 43 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 321 |
| 7/25/2012 | 8/24/2012 | Alternate Living Expenses | 900 | - | - | - | - | 15 | 43 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 317 |
| 8/27/2012 | 9/26/2012 | Alternate Living Expenses | 900 | - | - | - | - | 11 | 43 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 313 |
| 9/26/2012 | 10/26/2012 | Alternate Living Expenses | 900 | - | - | - | - | 8 | 43 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 310 |
| 10/26/2012 | 11/25/2012 | Alternate Living Expenses | 900 | - | - | - | - | 4 | 43 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 306 |
| 11/26/2012 | 12/26/2012 | Alternate Living Expenses | 900 | - | - | - | - | 1 | 43 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 303 |
| 12/26/2012 | 1/25/2013 | Alternate Living Expenses | 900 | - | - | - | - | - | 40 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 299 |
| 1/27/2013 | 2/26/2013 | Alternate Living Expenses | 900 | - | - | - | - | - | 36 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 295 |
| 2/25/2013 | 3/27/2013 | Alternate Living Expenses | 900 | - | - | - | - | - | 33 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 292 |
| 3/26/2013 | 4/25/2013 | Alternate Living Expenses | 900 | - | - | - | - | - | 29 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 289 |
| 4/25/2013 | 5/25/2013 | Alternate Living Expenses | 900 | - | - | - | - | - | 26 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 285 |
| 5/25/2013 | 6/24/2013 | Alternate Living Expenses | 900 | - | - | - | - | - | 22 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 282 |
| 6/28/2013 | 7/28/2013 | Alternate Living Expenses | 900 | - | - | - | - | - | 18 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 278 |
| 7/26/2013 | 8/25/2013 | Alternate Living Expenses | 900 | - | - | - | - | - | 15 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 274 |
| 8/26/2013 | 9/25/2013 | Alternate Living Expenses | 900 | - | - | - | - | - | 11 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 271 |
| 9/25/2013 | 10/25/2013 | Alternate Living Expenses | 900 | - | - | - | - | - | 8 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 267 |
| 10/31/2013 | 11/30/2013 | Alternate Living Expenses | 900 | - | - | - | - | - | 4 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 263 |
| 11/29/2013 | 12/29/2013 | Alternate Living Expenses | 900 | - | - | - | - | - | 0 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 259 |
| 12/27/2013 | 1/26/2014 | Alternate Living Expenses | 900 | - | - | - | - | - | - | 40 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 256 |
| 1/26/2014 | 2/25/2014 | Alternate Living Expenses | 900 | - | - | - | - | - | - | 36 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 253 |
| 2/25/2014 | 3/27/2014 | Alternate Living Expenses | 900 | - | - | - | - | - | - | 33 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 249 |
| 3/25/2014 | 4/24/2014 | Alternate Living Expenses | 900 | - | - | - | - | - | - | 29 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 246 |
| 4/26/2014 | 5/26/2014 | Alternate Living Expenses | 900 | - | - | - | - | - | - | 26 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 242 |
| 5/27/2014 | 6/26/2014 | Alternate Living Expenses | 900 | - | - | - | - | - | - | 22 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 239 |
| 6/26/2014 | 7/26/2014 | Alternate Living Expenses | 900 | - | - | - | - | - | - | 19 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 235 |
| 7/28/2014 | 8/27/2014 | Alternate Living Expenses | 900 | - | - | - | - | - | - | 15 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 231 |
| 8/26/2014 | 9/25/2014 | Alternate Living Expenses | 900 | - | - | - | - | - | - | 11 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 228 |
| 9/28/2014 | 10/28/2014 | Alternate Living Expenses | 900 | - | - | - | - | - | - | 7 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 224 |
| 10/26/2014 | 11/25/2014 | Alternate Living Expenses | 900 | - | - | - | - | - | - | 4 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 221 |
| 11/26/2014 | 12/26/2014 | Alternate Living Expenses | 900 | - | - | - | - | - | - | 1 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 217 |
| 12/28/2014 | 1/27/2015 | Alternate Living Expenses | 900 | - | - | - | - | - | - | - | 40 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 213 |
| 1/25/2015 | 2/24/2015 | Alternate Living Expenses | 900 | - | - | - | - | - | - | - | 36 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 210 |
| 2/24/2015 | 3/26/2015 | Alternate Living Expenses | 900 | - | - | - | - | - | - | - | 33 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 207 |
| 3/27/2015 | 4/26/2015 | Alternate Living Expenses | 900 | - | - | - | - | - | - | - | 29 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 203 |
| 4/29/2015 | 5/29/2015 | Alternate Living Expenses | 900 | - | - | - | - | - | - | - | 25 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 199 |
| 5/29/2015 | 6/28/2015 | Alternate Living Expenses | 900 | - | - | - | - | - | - | - | 22 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 196 |
| 6/26/2015 | 7/26/2015 | Alternate Living Expenses | 900 | - | - | - | - | - | - | - | 19 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 192 |
| 7/27/2015 | 8/26/2015 | Alternate Living Expenses | 900 | - | - | - | - | - | - | - | 15 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 189 |
| 8/27/2015 | 9/26/2015 | Alternate Living Expenses | 900 | - | - | - | - | - | - | - | 11 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 185 |
| | | Alternate Living Expenses Total | $ 37,989 | $ - | $ - | $ - | $ - | $ 138 | $ 636 | $ 1,149 | $ 1,649 | $ 451 | $ 462 | $ 469 | $ 466 | $ 478 | $ 495 | $ 512 | $ 518 | $ 542 | $ 572 | $ 583 | $ 1,337 | 10,907 |
| 8/9/2008 | 9/8/2008 | Personal Property Damage Expense | $ 190 | $ 7 | $ 15 | $ 11 | $ 9 | $ 9 | $ 9 | $ 9 | $ 9 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 3 | $ 3 | $ 3 | $ 3 | $ 7 | 117 |
| 4/13/2009 | 5/13/2009 | Personal Property Damage Expense | 105 | | 5 | 6 | 5 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 4 | 58 |
| 8/27/2009 | 9/26/2009 | Personal Property Damage Expense | 475 | 10 | 29 | 21 | 6 | 23 | 23 | 23 | 6 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 17 | 247 |
| 4/8/2011 | 5/8/2011 | Personal Property Damage Expense | 100 | | | 2 | 1 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 4 | 42 |
| 8/25/2011 | 9/24/2011 | Personal Property Damage Expense | 100 | | | 0 | 1 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 4 | 40 |
| | | Personal Property Damage Expense Total | $ 970 | $ 7 | $ 31 | $ 46 | $ 37 | $ 12 | $ 46 | $ 46 | $ 46 | $ 11 | $ 12 | $ 12 | $ 12 | $ 12 | $ 13 | $ 13 | $ 13 | $ 14 | $ 15 | $ 15 | $ 34 | 503 |

**Assumptions:**

| | | Florida Statutory Interest Rates | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 12/31/2008 | 12/31/2009 | 12/31/2010 | 9/30/2011 | 12/31/2011 | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 3/31/2016 | 6/30/2016 | 9/30/2016 | 12/31/2016 | 3/31/2017 | 6/30/2017 | 9/30/2017 | 12/31/2017 | 3/31/2018 | 6/30/2018 | 9/30/2018 | 12/31/2018 | 7/22/2019 |
| Annual | 11.00% | 8.00% | 6.00% | 6.00% | 4.75% | 4.75% | 4.75% | 4.75% | 4.75% | 4.75% | 4.78% | 4.84% | 4.91% | 4.97% | 5.05% | 5.17% | 5.35% | 5.53% | 5.72% | 5.97% | 6.09% | 6.33% |
| Per Diem | 0.0301400% | 0.0219200% | 0.0164400% | 0.0164400% | 0.0130137% | 0.0129781% | 0.0130137% | 0.0130137% | 0.0130137% | 0.0129781% | 0.0130601% | 0.0132240% | 0.0134153% | 0.0136164% | 0.0138356% | 0.0141643% | 0.0146575% | 0.0151507% | 0.0156712% | 0.0163562% | 0.0166849% | 0.0173425% |

5.A
Documents and Other Information Considered - Andrew & Dawn Feldkamp

_Chinese Drywall Litigation Involving Priority Claimants_

_Bate Stamp (if applicable)_

| No. | Claimant | General Description | First Page | Last Page |
|---|---|---|---|---|
| **A. Pleadings and Other Legal Documents:** | | | | |
| 1 | All | Trial Plan for Property Damage Claims and Scheduling Order dated November 16, 2018 | | |
| 2 | Feldkamp | Priority Claimant Andrew Feldkamp Answers to Interrogatories, dated November 30, 2018 | | |
| 3 | Feldkamp | Priority Claimant Andrew Feldkamp Answers to Defendant's Second Set of Interrogatories, dated December 4, 2018 | | |
| 4 | Feldkamp | Priority Claimant Dawn Feldkamp Answers to Interrogatories, dated November 30, 2018 | | |
| 5 | Feldkamp | Priority Claimant Dawn Feldkamp Answers to Defendant's Second Set of Interrogatories, dated December 4, 2018 | | |
| 6 | Feldkamp | Priority Claimant Andrew Feldkamp First Amended Answers to Interrogatories, dated December 12, 2018 | | |
| 7 | Feldkamp | Priority Claimant Dawn Feldkamp First Amended Answers to Interrogatories, dated December 12, 2018 | | |
| 8 | Feldkamp | Andrew Feldkamp First Amended Supplemental Plaintiff Profile Form, dated December 5, 2018 | | |
| | | | | |
| **B. Depositions & Corresponding Exhibits:** | | | | |
| 1 | Feldkamp | Deposition Transcript of Andrew Feldkamp, dated December 13, 2018 | | |
| 2 | Feldkamp | Deposition Transcript of Dawn Feldkamp, dated December 13, 2018 | | |
| 3 | Feldkamp | Deposition Exhibit 01 - "As Is" Contract for Sale and Purchase | | |
| 4 | Feldkamp | Deposition Exhibit 02 - Lee County Property Appraiser - Online Parcel Inquiry - Property Data | | |
| 5 | Feldkamp | Deposition Exhibit 03 - Plaintiff Profile Form - Residential Properties | Feldkamp,D0001 | Feldkamp,D0023 |
| 6 | Feldkamp | Deposition Exhibit 04 - Comprehensive Building Consultants Confidential Chinese Drywall Inspection Report | | |
| 7 | Feldkamp | Deposition Exhibit 05 - Important Taishan Notice - Supplemental Submission of Evidence for the Taishan Trial Scheduled on April 28, 2015 | | |
| 8 | Feldkamp | Deposition Exhibit 06 - Priority Claimant Andrew Feldkamp's First Amended Answers to Interrogatories | | |
| 9 | Feldkamp | Deposition Exhibit 07 - Air-Conditioning Invoices | | |
| 10 | Feldkamp | Deposition Exhibit 08 - First Amended Supplemental Plaintiff Profile Form | | |
| 11 | Feldkamp | Deposition Exhibit 09 - Suncoast Credit Union September 21, 2018 Letter and Check Copies | | |
| 12 | Feldkamp | Deposition Exhibit 10 - Uniform Borrower Assistance | | |
| 13 | Feldkamp | Deposition Exhibit 11 - Notice of Lis Pendens | | |
| 14 | Feldkamp | Deposition Exhibit 12 - Final Judgment of Foreclosure | | |
| 15 | Feldkamp | Deposition Exhibit 13 - United States Bankruptcy Court Middle District of Florida Voluntary Petition | | |
| 16 | Feldkamp | Deposition Exhibit 14 - Chapter 13 Standing Trustee's Final Report and Account | | |
| 17 | Feldkamp | Deposition Exhibit 04 - Comprehensive Building Consultants Confidential Chinese Drywall Inspection Report | | |
| 18 | Feldkamp | Deposition Exhibit 07 - Air-Conditioning Invoices | | |

Case 1:11-cv-22408-MGC Document 272-1 Entered on FLSD Docket 05/13/2019 Page 34 of 262

5.A
Documents and Other Information Considered - Andrew & Dawn Feldkamp

*Chinese Drywall Litigation Involving Priority Claimants*

| No. | Claimant | General Description | *Bate Stamp (if applicable)* First Page | Last Page |
|---|---|---|---|---|
| **C. Supporting Documentation** | | | | |
| 1 | Feldkamp | Andrew and Dawn Feldkamp Out of Pocket Damages Summary Provided by Counsel | | |
| 2 | Feldkamp | Doc ID. 365795 - Feldkamp proof of payments for ALE | | |
| 3 | Feldkamp | Doc ID. 366298 - Feldkamp AS IS Contract for Sale and Purchase | | |
| 4 | Feldkamp | Doc ID. 366301 - Feldkamp Mortgage Statement from Fifth Third Bank | | |
| 5 | Feldkamp | Doc ID. 366315 - Feldkamp Lease Agreement for ALE | | |
| 6 | Feldkamp | Doc ID. 366316 - Feldkamp HVAC repairs by Penguin Air and Larry's Air | | |
| 7 | Feldkamp | Doc ID. 365789 - Mortgage Payment History - 5th 3rd Bank - Feldkamp | | |
| 8 | Feldkamp | Doc ID. 265945 - Feldkamp - gbi settlement check | | |
| 9 | Feldkamp | Doc ID. 366063 - Feldkamp - gbi holdback settlement check | | |
| 10 | Feldkamp | Doc ID. 365946 - Feldkamp - gbi settlement check | | |
| 11 | Feldkamp | Doc ID. 366315 - Feldkamp - lease agreement 2012 and extensions for 2013, 2014 and 2015 | | |
| 12 | Feldkamp | Doc ID. 366299 - Feldkamp - letter to 53 bank | | |
| 13 | Feldkamp | Doc ID. 366340 - Feldkamp - mortgage | | |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-22408-Civ-COOKE

EDUARDO AND CARMEN AMORIN, *et al.*,
individually and on behalf of others similarly
situated,

       Plaintiffs,

vs.

TAISHAN GYPSUM CO., LTD., f/k/a
SHANDONG TIASHE DONGXIN CO. LTD.,
*et al.*,

       Defendants.

_____

# Exhibit 6

**Calculations of Damages for Priority Claimants**

# William & Vicki Foster

EXHIBIT TO THE EXPERT WITNESS REPORT OF:
MICHAEL P. ELKIN, CPA/CFF/ABV, CFE
IN THE PRIORITY CLAIMANT TRIAL

February 19, 2019



Exhibit 6
Data and Damage Summary - William and Vicki Foster

*Chinese Drywall Litigation Involving Priority Claimants*

| Data: | | Reference / Notes |
|---|---|---|
| Address of Affected property | 10814 Fortina Drive | *SPPF* |
| | Fort Myers, FL 33913 | *SPPF* |
| Date Affected property acquired | March 2, 2007 | *SPPF* |
| Date Chinese drywall installed | 2006 | *SPPF* |
| Date moved into Affected property | March 2, 2007 | *SPPF* |
| Date first aware of Chinese drywall | February-09 | *SPPF* |
| | | |
| Move out date to alternate living | October 3, 2009 | *ROG 1, #2* |
| Date returned to Affected property | November 17, 2012 | *ROG 1, #2* |
| End date for alternate living expenses | November 17, 2012 | *ROG 1, #2* |
| | | |
| Still own property? | Y | *SPPF* |
| Bankruptcy caused by damage? | N | *SPPF* |
| Foreclosure or short sale? | N | *SPPF* |
| Affected property sold? | N | *SPPF* |
| Sale date | N/A | *SPPF* |
| Type of sale | N/A | *SPPF* |
| | | |
| Remediation status | Partial | *SPPF* |
| Remediation period | April 22, 2012 - June 13, 2013 | *SPPF* |

| Damage Summary: | | |
|---|---|---|
| Full or Partial Out-of-Pocket Remediation Expenses | $ 144,466 | *Exh 6.1* |
| | | |
| Other Damages | | |
| Alternate Living Expenses | $ 44,531 | *Exh 6.1* |
| Personal Property Damage Expense | 99,051 | *Exh 6.1* |
| Additional Damages | 94,728 | *Exh 6.1* |
| | $ 238,310 | |
| | | |
| Lost Equity | TBD | |
| | | |
| Diminution in Value | TBD | |
| | | |
| Loss of Use and Enjoyment | TBD | |
| | | |
| Punitive Damages | TBD | |

Exhibit 6.1
Damage Claims Detail - William and Vicki Foster

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Remediation | Staples | Copies made for attorney | $ 24 | 3/7/2012 | | Credit Card Statement | N/A | 365749 | 83 |
| Remediation | Steven E. Leftwich | Work Write-up Fee for repairs over $100,000 | 1,000 | 3/29/2012 | | Invoice | N/A | 365749 | 51 |
| Remediation | Kevin Polkow | Polkow Construction - Remediation | 3,000 | 4/26/2012 | | Bank Statement | N/A | 365749 | 100 |
| Remediation | Kevin Polkow | Polkow Construction - Remediation | 4,000 | 5/25/2012 | | Bank Statement | N/A | 365749 | 104 |
| Remediation | Intuitive Environmental Solutions LLC | CDW Evidence Sampling Preservation Investigation and Report | 1,300 | 6/4/2012 | | Bank Statement | N/A | 365749 | 104 |
| Remediation | Kevin Polkow | Polkow Construction - Remediation | 5,000 | 6/27/2012 | | Bank Statement | N/A | 365749 | 107 |
| Remediation | The Kiefer Companies | Brass Hooks for Chandelier | 34 | 7/3/2012 | | Credit Card Statement | N/A | 365749 | 94 |
| Remediation | Kevin Polkow | Polkow Construction - Remediation | 9,000 | 7/31/2012 | | Bank Statement | N/A | 365749 | 111 |
| Remediation | Lowes | Miscellaneous | 363 | 8/2/2012 | | Receipt | N/A | 365749 | 63 |
| Remediation | Intuitive Environmental Solutions LLC | CDW Evidence Sampling Preservation Investigation and Report | 700 | 8/28/2012 | | Bank Statement | N/A | 365749 | 111 |
| Remediation | Kevin Polkow | Polkow Construction - Remediation | 10,000 | 8/28/2012 | | Bank Statement | N/A | 365749 | 116 |
| Remediation | Build.com | Various Items for Sink and Shower | 2,092 | 8/29/2012 | | Credit Card Statement | N/A | 365749 | 94 |
| Remediation | Hadinger Flooring | Various Items for Flooring | 3,131 | 8/31/2012 | | Credit Card Statement | N/A | 365749 | 94 |
| Remediation | Best Buy | Miscellaneous | 43 | 9/5/2012 | | Credit Card Statement | N/A | 365749 | 94 |
| Remediation | Kevin Polkow | Polkow Construction - Remediation | 8,000 | 9/11/2012 | | Bank Statement | N/A | 365749 | 116 |
| Remediation | Kevin Polkow | Polkow Construction - Remediation | 20,438 | 9/12/2012 | | Bank Statement | N/A | 365749 | 116 |
| Remediation | Kevin Polkow | Polkow Construction - Remediation | 2,500 | 9/12/2012 | | Bank Statement | N/A | 365749 | 116 |
| Remediation | Overstock | Aquasuite Filter FCT - Laundry Room Faucet | 489 | 9/14/2012 | | Credit Card Statement | N/A | 365749 | 94 |
| Remediation | The Home Depot | Miscellaneous | 46 | 9/17/2012 | | Credit Card Statement | N/A | 365749 | 94 |
| Remediation | The Home Depot | Miscellaneous | 35 | 9/17/2012 | | Credit Card Statement | N/A | 365749 | 94 |
| Remediation | The Home Depot | Miscellaneous | 48 | 9/21/2012 | | Credit Card Statement | N/A | 365749 | 95 |
| Remediation | The Home Depot | Miscellaneous | 48 | 9/21/2012 | | Credit Card Statement | N/A | 365749 | 95 |
| Remediation | The Home Depot | Miscellaneous | 63 | 9/22/2012 | | Credit Card Statement | N/A | 365749 | 95 |
| Remediation | The Home Depot | Miscellaneous | 48 | 9/22/2012 | | Credit Card Statement | N/A | 365749 | 95 |
| Remediation | The Home Depot | Miscellaneous | 50 | 9/24/2012 | | Credit Card Statement | N/A | 365749 | 95 |
| Remediation | PMC | Subcontractor | 8,000 | 9/26/2012 | | Bank Statement | N/A | 365749 | 119 |
| Remediation | Macco-Hadinger LLC | Miscellaneous | 1,352 | 10/8/2012 | | Credit Card Statement | N/A | 365749 | 95 |
| Remediation | Build.com | Rinse Basket and Knobs | 165 | 10/10/2012 | | Credit Card Statement | N/A | 365749 | 6 & 96 |
| Remediation | The Home Depot | Miscellaneous | 20 | 10/12/2012 | | Credit Card Statement | N/A | 365749 | Apr-00 |
| Remediation | The Home Depot | Miscellaneous | 8 | 10/14/2012 | | Credit Card Statement | N/A | 365749 | 96 |
| Remediation | Kevin Polkow | Polkow Construction - Remediation | 9,000 | 10/17/2012 | | Bank Statement | N/A | 365749 | 124 |
| Remediation | Costco | 2 Cantilever Wall Mounts | 106 | 10/23/2012 | | Credit Card Statement | N/A | 365749 | 98 |
| Remediation | Kevin Polkow | Polkow Construction - Remediation | 9,000 | 10/25/2012 | | Bank Statement | N/A | 365749 | 124 |
| Remediation | Two Men and a Truck | Moving Expense | 200 | 10/26/2012 | | Credit Card Statement | N/A | 365749 | 98 |
| Remediation | Build.com | Medina Style Handleset | 158 | 10/28/2012 | | Credit Card Statement | N/A | 365749 | 98 |
| Remediation | Raymond Building Supply | Replacement of all appliances | 18,928 | 10/29/2012 | | Invoice | N/A | 367444 | 3 |
| Remediation | The Home Depot | Miscellaneous | 8 | 10/30/2012 | | Credit Card Statement | N/A | 365749 | 98 |
| Remediation | Gulf Stone Construction | Gulf Stone Construction | 5,200 | 10/31/2012 | | Bank Statement | N/A | 365749 | 124 |
| Remediation | Macco-Hadinger LLC | Various Items | 715 | 11/7/2012 | | Credit Card Statement | N/A | 365749 | 97 |
| Remediation | The Home Depot | Miscellaneous | 549 | 11/7/2012 | | Credit Card Statement | N/A | 365749 | 98 |
| Remediation | Kevin Polkow | Polkow Construction - Remediation | 2,500 | 11/9/2012 | | Bank Statement | N/A | 365749 | 124 |
| Remediation | Sherwin Williams | Paint | 15 | 11/10/2012 | | Credit Card Statement | N/A | 365749 | 98 |
| Remediation | Wayfair | Miscellaneous | 307 | 11/12/2012 | | Credit Card Statement | N/A | 365749 | 98 |
| Remediation | Ray Allen Electric | Ray Allen Electric | 2,500 | 11/13/2012 | | Bank Statement | N/A | 365749 | 124 |
| Remediation | Kevin Polkow | Polkow Construction - Remediation | 3,000 | 11/13/2012 | | Bank Statement | N/A | 365749 | 124 |
| Remediation | Todd | Tiles | 400 | 11/14/2012 | | Bank Statement | N/A | 365749 | 124 |
| Remediation | Tile Outlets of America | Medallion Polished | 158 | 11/14/2012 | | Credit Card Statement | N/A | 365749 | 98 |
| Remediation | Raymond Building Supply | Replacement of all appliances | 1,107 | 11/15/2012 | | Invoice | N/A | 367444 | 4 |
| Remediation | Masters Touch | Remediation Work | 570 | 11/19/2012 | | Bank Statement | N/A | 365749 | 127 |
| Remediation | Two Men and a Truck | Moving Expense | 600 | 11/19/2012 | | Credit Card Statement | N/A | 365749 | 98 |
| Remediation | Ray Allen Electric | Ray Allen Electric | 75 | 11/26/2012 | | Bank Statement | N/A | 365749 | 127 |
| Remediation | Bed Bath & Beyond | Miscellaneous | 25 | 12/10/2012 | | Receipt | N/A | 365749 | 64 |
| Remediation | The Home Depot | Miscellaneous | 11 | 12/10/2012 | | Receipt | N/A | 365749 | 28 |
| Remediation | Ray Allen Electric | Ray Allen Electric | 262 | 12/18/2012 | | Bank Statement | N/A | 365749 | 132 |
| Remediation | PCC Tile | CornerCaddy Shelf Crema Sahara | 95 | 1/18/2013 | | Invoice & Receipt | N/A | 365749 | 62 |

Exhibit 6.1
Damage Claims Detail - William and Vicki Foster

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Remediation | The Home Depot | Miscellaneous | 75 | 1/26/2013 | | Receipt | N/A | 365749 | 64 |
| Remediation | Bonita Tile Market | Various Items | 634 | 2/11/2013 | | Receipt | N/A | 365749 | 79 |
| Remediation | My Tile Backsplash | Bella Glass Tiles Opulence 1 x 1 Mosaic Series | 902 | 3/4/2013 | | Invoice | N/A | 365749 | 18 |
| Remediation | Landmark Metalcoat | Tumbled Large Bar Liner | 120 | 4/1/2013 | | Credit Card Statement | N/A | 365749 | 169 |
| Remediation | Kevin Polkow | Polkow Construction - Remediation | 699 | 4/5/2013 | | Bank Statement | N/A | 365749 | 135 |
| Remediation | Lowes | Brown Slide Dimmer & Decorator Rocker Nylon Wall | 24 | 4/24/2013 | | Receipt | N/A | 365749 | 65 |
| Remediation | Dennis Reynolds | Outlets - Kitchen Changed | 81 | 5/17/2013 | | Bank Statement | N/A | 365749 | 139 |
| Remediation | Gulf Stone Construction | Kitchen Backsplash Installation | 1,100 | 6/13/2013 | | Bank Statement | N/A | 365749 | 139 |
| Remediation | Gulf Stone Construction | Repair Work | 650 | 6/18/2013 | | Bank Statement | N/A | 365749 | 144 |
| Remediation | Kevin Polkow | Polkow Construction - Remediation | 600 | 8/6/2013 | | Bank Statement | N/A | 365749 | 148 |
| Remediation | Kevin Polkow | Polkow Construction - Remediation | 600 | 8/8/2013 | | Bank Statement | N/A | 365749 | 148 |
| Remediation | Kevin Polkow | Polkow Construction - Remediation | 1,000 | 8/14/2013 | | Bank Statement | N/A | 365749 | 148 |
| Remediation | Ray Allen Electric | Ray Allen Electric | 900 | 8/27/2013 | | Bank Statement | N/A | 365749 | 152 |
| Remediation | Amazon | Moen Kingsley 24-Inch Towel Bar | 46 | 5/2/2014 | | Invoice | N/A | 365749 | 29 |
| Remediation | Tom Collins | Old Fixtures Repaired | 240 | 8/2/2017 | | Bank Statement | N/A | 365749 | 155 |
| Remediation | Tom Collins | Old Fixtures Repaired | 130 | 8/2/2017 | | Bank Statement | N/A | 365749 | 155 |
| Remediation | Time Shop | Grandfather Clock Repair | 180 | 8/17/2017 | | Bank Statement | N/A | 365749 | 157 |
| **Remediation Total** | | | **$ 144,466** | | | | | | |
| Alternate Living Expenses | Robert Rorebeck | Bill of Sale - Furniture - Colonial Condo | $ 2,500 | 9/30/2009 | | Bill of Sale | N/A | 365749 | 82 |
| Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condc | 850 | 10/1/2009 | | Lease Agreement | N/A | 125033 | 1 |
| Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 99 | 10/1/2009 | | Claimant | N/A | 125036 | |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 30 | 10/26/2009 | | FPL Statement | N/A | 125036 | 27 |
| Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condc | 850 | 11/1/2009 | | Lease Agreement | N/A | 125033 | |
| Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 50 | 11/1/2009 | | Claimant | N/A | 125036 | |
| Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 56 | 11/1/2009 | | Claimant | N/A | 125036 | |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 50 | 11/23/2009 | | FPL Statement | N/A | 125036 | 27 |
| Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condc | 850 | 12/1/2009 | | Lease Agreement | N/A | 125033 | |
| Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 152 | 12/1/2009 | | Invoice | N/A | 367445 | 30 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 51 | 12/28/2009 | | FPL Statement | N/A | 125036 | 27 |
| Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condc | 850 | 1/1/2010 | | Lease Agreement | N/A | 125033 | |
| Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 104 | 1/1/2010 | | Invoice | N/A | 367445 | 30 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 50 | 1/27/2010 | | FPL Statement | N/A | 125036 | 27 |
| Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condc | 850 | 2/1/2010 | | Lease Agreement | N/A | 125033 | |
| Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 104 | 2/1/2010 | | Invoice | N/A | 367445 | 32 |
| Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condc | 850 | 3/1/2010 | | Lease Agreement | N/A | 125033 | |
| Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 104 | 3/1/2010 | | Invoice | N/A | 367445 | 34 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 46 | 3/1/2010 | | FPL Statement | N/A | 125036 | 27 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 41 | 3/29/2010 | | FPL Statement | N/A | 125036 | 27 |
| Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condc | 850 | 4/1/2010 | | Lease Agreement | N/A | 125033 | |
| Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 104 | 4/1/2010 | | Invoice | N/A | 367445 | 36 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 39 | 4/26/2010 | | FPL Statement | N/A | 125036 | 27 |
| Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condc | 850 | 5/1/2010 | | Lease Agreement | N/A | 125033 | |
| Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 104 | 5/1/2010 | | Claimant | N/A | 125036 | |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 51 | 5/28/2010 | | FPL Statement | N/A | 125036 | 27 |
| Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condc | 850 | 6/1/2010 | | Lease Agreement | N/A | 125033 | |
| Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 136 | 6/1/2010 | | Claimant | N/A | 125036 | |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 67 | 6/25/2010 | | FPL Statement | N/A | 125036 | 27 |
| Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condc | 850 | 7/1/2010 | | Lease Agreement | N/A | 125033 | |
| Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 136 | 7/1/2010 | | Claimant | N/A | 125036 | |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 49 | 7/27/2010 | | FPL Statement | N/A | 125036 | 27 |
| Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condc | 850 | 8/1/2010 | | Lease Agreement | N/A | 125033 | |
| Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 136 | 8/1/2010 | | Claimant | N/A | 125036 | |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 74 | 8/25/2010 | | FPL Statement | N/A | 125036 | 27 |
| Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condc | 850 | 9/1/2010 | | Lease Agreement | N/A | 125033 | |
| Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 136 | 9/1/2010 | | Claimant | N/A | 125036 | |

Exhibit 6.1
Damage Claims Detail - William and Vicki Foster

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 76 | 9/24/2010 | | FPL Statement | N/A | 125036 | 28 |
| Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condc | 850 | 10/1/2010 | | Lease Agreement | N/A | 125033 | |
| Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 86 | 10/1/2010 | | Claimant | N/A | 125036 | |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 74 | 10/25/2010 | | FPL Statement | N/A | 125036 | 28 |
| Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condc | 850 | 11/1/2010 | | Lease Agreement | N/A | 125033 | |
| Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 95 | 11/1/2010 | | Claimant | N/A | 125036 | |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 36 | 11/29/2010 | | FPL Statement | N/A | 125036 | 28 |
| Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condc | 850 | 12/1/2010 | | Lease Agreement | N/A | 125033 | |
| Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 95 | 12/15/2010 | | Bank Statement | N/A | 367445 | 4 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 43 | 12/27/2010 | | FPL Statement | N/A | 125036 | 28 |
| Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condc | 850 | 1/1/2011 | | Lease Agreement | N/A | 125033 | |
| Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 95 | 1/14/2011 | | Bank Statement | N/A | 367445 | 8 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 42 | 1/26/2011 | | FPL Statement | N/A | 125036 | 28 |
| Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condc | 850 | 2/1/2011 | | Lease Agreement | N/A | 125033 | |
| Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 95 | 2/15/2011 | | Bank Statement | N/A | 367445 | 11 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 58 | 2/25/2011 | | FPL Statement | N/A | 125036 | 28 |
| Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condc | 850 | 3/1/2011 | | Lease Agreement | N/A | 125033 | |
| Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 95 | 3/15/2011 | | Bank Statement | N/A | 367445 | 15 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 38 | 3/25/2011 | | FPL Statement | N/A | 125036 | 28 |
| Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condc | 850 | 4/1/2011 | | Lease Agreement | N/A | 125033 | |
| Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 95 | 4/13/2011 | | Bank Statement | N/A | 367445 | 19 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 62 | 4/26/2011 | | FPL Statement | N/A | 125036 | 28 |
| Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condc | 850 | 5/1/2011 | | Lease Agreement | N/A | 125033 | |
| Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 100 | 5/16/2011 | | Bank Statement | N/A | 367445 | 23 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 59 | 5/25/2011 | | FPL Statement | N/A | 125036 | 28 |
| Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condc | 850 | 6/1/2011 | | Lease Agreement | N/A | 125033 | |
| Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 90 | 6/1/2011 | | Claimant | N/A | 125036 | |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 75 | 6/23/2011 | | FPL Statement | N/A | 125036 | 28 |
| Alternate Living Expenses | Jack Walsh | Rent/Deposit | 2,358 | 7/7/2011 | | Check | N/A | 125036 | 33 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 99 | 7/8/2011 | | FPL Statement | N/A | 125036 | 28 |
| Alternate Living Expenses | Sherwin Williams | Paint | 59 | 7/9/2011 | | Credit Card Statement | N/A | 365749 | 83 |
| Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 94 | 7/11/2011 | | Bank Statement | N/A | 367445 | 27 |
| Alternate Living Expenses | U-Haul Moving & Storage | Moving Expense | 26 | 7/12/2011 | | Credit Card Statement | N/A | 365749 | 83 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 16 | 7/13/2011 | | FPL Statement | N/A | 125036 | 28 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 99 | 7/28/2011 | | FPL Statement | N/A | 125036 | 51 |
| Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 94 | 8/1/2011 | | Claimant | N/A | 125036 | |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 34 | 8/22/2011 | | FPL Statement | N/A | 125036 | 51 |
| Alternate Living Expenses | Jack Walsh | Rent | 905 | 8/25/2011 | | Check | N/A | 125036 | 34 |
| Alternate Living Expenses | Jack Walsh | Water bill | 63 | 8/29/2011 | | Check | N/A | 125036 | 35 |
| Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 114 | 9/1/2011 | | Claimant | N/A | 125036 | |
| Alternate Living Expenses | Jack Walsh | Rent & Water | 968 | 9/23/2011 | | Check | N/A | 125036 | 36 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 150 | 9/23/2011 | | FPL Statement | N/A | 125036 | 51 |
| Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 218 | 10/12/2011 | | Bank Statement | N/A | 125036 | 6 |
| Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 95 | 10/17/2011 | | Bank Statement | N/A | 125036 | 6 |
| Alternate Living Expenses | Jack Walsh | Rent & Water | 985 | 10/21/2011 | | Check | N/A | 125036 | 37 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 128 | 10/24/2011 | | FPL Statement | N/A | 125036 | 51 |
| Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 87 | 11/22/2011 | | Bank Statement | N/A | 125036 | 6 |
| Alternate Living Expenses | Jack Walsh | Rent & Water | 970 | 11/23/2011 | | Check | N/A | 125036 | 38 |
| Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 87 | 11/25/2011 | | Credit Card Statement | N/A | 125036 | 3 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 57 | 11/26/2011 | | FPL Statement | N/A | 125036 | 51 |
| Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 95 | 12/1/2011 | | Claimant | N/A | 125036 | |
| Alternate Living Expenses | Jack Walsh | Rent & Water | 967 | 12/22/2011 | | Check | N/A | 125036 | 39 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 71 | 12/27/2011 | | FPL Statement | N/A | 125036 | 51 |
| Alternate Living Expenses | Jack Walsh | Rent & Water | 965 | 1/25/2012 | | Check | N/A | 125036 | 40 |
| Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 87 | 1/25/2012 | | Credit Card Statement | N/A | 125036 | 3 |

Exhibit 6.1
Damage Claims Detail - William and Vicki Foster

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 64 | 1/27/2012 | | FPL Statement | N/A | 125036 | 51 |
| Alternate Living Expenses | Jack Walsh | Rent & Water | 977 | 2/23/2012 | | Check | N/A | 125036 | 41 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 63 | 2/27/2012 | | FPL Statement | N/A | 125036 | 51 |
| Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 87 | 2/27/2012 | | Credit Card Statement | N/A | 125036 | 3 |
| Alternate Living Expenses | Jack Walsh | Rent & Water | 977 | 3/23/2012 | | Check | N/A | 125036 | 42 |
| Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 88 | 3/26/2012 | | Credit Card Statement | N/A | 125036 | 3 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 80 | 3/27/2012 | | FPL Statement | N/A | 125036 | 51 |
| Alternate Living Expenses | Jack Walsh | Rent & Water | 1,003 | 4/23/2012 | | Check | N/A | 125036 | 43 |
| Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 88 | 4/25/2012 | | Credit Card Statement | N/A | 125036 | 3 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 112 | 4/26/2012 | | FPL Statement | N/A | 125036 | 51 |
| Alternate Living Expenses | Jack Walsh | Rent & Water | 1,024 | 5/24/2012 | | Check | N/A | 125036 | 44 |
| Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 90 | 5/25/2012 | | Credit Card Statement | N/A | 125036 | 3 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 151 | 5/31/2012 | | FPL Statement | N/A | 125036 | 51 |
| Alternate Living Expenses | Jack Walsh | Rent & Water | 1,018 | 6/22/2012 | | Check | N/A | 125036 | 45 |
| Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 88 | 6/25/2012 | | Credit Card Statement | N/A | 125036 | 3 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 181 | 6/27/2012 | | FPL Statement | N/A | 125036 | 51 |
| Alternate Living Expenses | Jack Walsh | Rent & Water | 1,032 | 7/25/2012 | | Check | N/A | 125036 | 46 |
| Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 109 | 7/25/2012 | | Credit Card Statement | N/A | 125036 | 3 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 140 | 7/27/2012 | | FPL Statement | N/A | 125036 | 50 |
| Alternate Living Expenses | Jack Walsh | Rent & Water | 1,017 | 8/27/2012 | | Check | N/A | 125036 | 47 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 143 | 8/27/2012 | | FPL Statement | N/A | 125036 | 50 |
| Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 109 | 8/27/2012 | | Credit Card Statement | N/A | 125036 | 3 |
| Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 109 | 9/25/2012 | | Credit Card Statement | N/A | 125036 | 3 |
| Alternate Living Expenses | Jack Walsh | Rent & Water | 1,030 | 9/26/2012 | | Check | N/A | 125036 | 48 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 169 | 9/28/2012 | | FPL Statement | N/A | 125036 | 50 |
| Alternate Living Expenses | Jack Walsh | Water bill | 58 | 10/12/2012 | | Claimant | N/A | 125036 | 32 |
| Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 109 | 10/25/2012 | | Credit Card Statement | N/A | 125036 | 5 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 140 | 10/26/2012 | | FPL Statement | N/A | 125036 | 50 |
| Alternate Living Expenses | Jack Walsh | Rent | 545 | 11/17/2012 | | Claimant | N/A | 125036 | 32 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 89 | 11/26/2012 | | FPL Statement | N/A | 125036 | 50 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 22 | 12/7/2012 | | FPL Statement | N/A | 125036 | 50 |
| **Alternate Living Expenses Total** | | | **$ 44,531** | | | | | | |
| Personal Property Damage Expense | Sally Beauty Supply | Hair Cutting Shaver Replaced - Andis T-Light | $ 38 | 5/13/2009 | | Receipt | F000352 | V Foster Exhibit 04 | 48 |
| Personal Property Damage Expense | Walmart | iPod Nano | 135 | 5/22/2009 | | Claimant | F000381 | V Foster Exhibit 04 | 77 |
| Personal Property Damage Expense | Costco | Chair - Sling Chaise | 136 | 6/9/2009 | | Receipt | F000322 | V Foster Exhibit 04 | 18 |
| Personal Property Damage Expense | QVC | Nextar GPS Navigation system | 146 | 6/24/2009 | | Receipt | F000395 | V Foster Exhibit 04 | 91 |
| Personal Property Damage Expense | Costco | iPod 8G Silver | 134 | 7/1/2009 | | Receipt | F000353 | V Foster Exhibit 04 | 49 |
| Personal Property Damage Expense | Overstock | Bedspread Replacement | 535 | 7/7/2009 | | Receipt | F000779 | V Foster Exhibit 06 | 3 |
| Personal Property Damage Expense | QVC | Surge Protector | 62 | 8/6/2009 | | Invoice | F000309 | V Foster Exhibit 04 | 5 |
| Personal Property Damage Expense | Hard drive remover | Hard drive remover | 20 | 9/1/2009 | | Claimant | N/A | V Foster Exhibit 02 | |
| Personal Property Damage Expense | QVC | Clairisonic Skin | 127 | 9/4/2009 | | Invoice | F000309 | V Foster Exhibit 04 | 5 |
| Personal Property Damage Expense | Exchange Catalog & Online Store | Toaster Oven | 180 | 9/20/2009 | | Invoice | F000325 | V Foster Exhibit 04 | 21 |
| Personal Property Damage Expense | TJMaxx | Household Items | 16 | 9/28/2009 | | Receipt | F000327 | V Foster Exhibit 04 | 23 |
| Personal Property Damage Expense | Costco | Hoover Steam Vac | 159 | 9/28/2009 | | Invoice | F000393 | V Foster Exhibit 04 | 89 |
| Personal Property Damage Expense | The Stainless Steel Store | Various Kitchen Items | 44 | 9/29/2009 | | Invoice | F000312 | V Foster Exhibit 04 | 8 |
| Personal Property Damage Expense | StormTech Shutters, Inc. | Storm Shutters | 8,030 | 10/1/2009 | X | Estimate/Contract | N/A | 367443 | 8 |
| Personal Property Damage Expense | Thomasville Ernest Hemingway Furniture | Bedroom Furniture - King Thompson Falls Poster Bed | 2,124 | 10/1/2009 | X | Quote | N/A | 367443 | 2 |
| Personal Property Damage Expense | Thomasville Ernest Hemingway Furniture | Bedroom Furniture - Malawi Dresser with Marble Top | 1,869 | 10/1/2009 | X | Quote | N/A | 367443 | 2 |
| Personal Property Damage Expense | Thomasville Ernest Hemingway Furniture | Bedroom Furniture - Tanganyika Drawer Chest | 1,529 | 10/1/2009 | X | Quote | N/A | 367443 | 2 |
| Personal Property Damage Expense | Thomasville Ernest Hemingway Furniture | Bedroom Furniture - Manyara Media Base | 1,444 | 10/1/2009 | X | Quote | N/A | 367443 | 2 |
| Personal Property Damage Expense | Thomasville Ernest Hemingway Furniture | Bedroom Furniture - Manyara Media Hutch | 1,444 | 10/1/2009 | X | Quote | N/A | 367443 | 2 |
| Personal Property Damage Expense | Thomasville Ernest Hemingway Furniture | Bedroom Furniture - Nairobi Night Stand with Marble Top | 807 | 10/1/2009 | X | Quote | N/A | 367443 | 2 |
| Personal Property Damage Expense | Thomasville Ernest Hemingway Furniture | Bedroom Furniture - Steppe Octagonal Mirror | 509 | 10/1/2009 | X | Quote | N/A | 367443 | 2 |
| Personal Property Damage Expense | Havertys Furniture | Office Furniture - Westbury Desk with Hutch | 1,900 | 10/1/2009 | X | Quote | N/A | 367443 | 4-7 |
| Personal Property Damage Expense | Havertys Furniture | Office Furniture - Westbury L-Shaped Desk | 1,600 | 10/1/2009 | X | Quote | N/A | 367443 | 4-7 |

Exhibit 6.1
Damage Claims Detail - William and Vicki Foster

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Personal Property Damage Expense | Havertys Furniture | Office Furniture - Martin's Landing File Cabinet | 500 | 10/1/2009 | X | Quote | N/A | 367443 | 4-7 |
| Personal Property Damage Expense | Havertys Furniture | Office Furniture - Martin's Landing Office Chair | 400 | 10/1/2009 | X | Quote | N/A | 367443 | 4-7 |
| Personal Property Damage Expense | Golden Lighting | Replace 6 Lighting Fixtures from Golden Lighting | 3,942 | 10/1/2009 | X | Quote | N/A | 367443 | 12 |
| Personal Property Damage Expense | Amazon | Langston Grandfather Clock | 2,876 | 10/1/2009 | X | Quote | N/A | 367443 | 9 |
| Personal Property Damage Expense | Hayneedle | Replacement - Round Gold Mirror | 305 | 10/1/2009 | X | Quote | N/A | 367443 | 13 |
| Personal Property Damage Expense | Chairish | Replacement - Italian Mirror Pitted | 695 | 10/1/2009 | X | Quote | N/A | 367443 | 11 |
| Personal Property Damage Expense | Overstock | Bar Stools | 211 | 10/2/2009 | | Invoice | F000315 | V Foster Exhibit 04 | 11 |
| Personal Property Damage Expense | QVC | Leather Carrier | 238 | 10/4/2009 | | Invoice | F000309 | V Foster Exhibit 04 | 5 |
| Personal Property Damage Expense | Best Buy | Television, Home Theater | 1,071 | 10/4/2009 | | Receipt | F000311 | V Foster Exhibit 04 | 14 |
| Personal Property Damage Expense | Costco | Water Pik Jet | 73 | 10/4/2009 | | Receipt | F000331 | V Foster Exhibit 04 | 27 |
| Personal Property Damage Expense | Sears | Alarm Clock | 31 | 10/7/2009 | | Receipt | F000332 | V Foster Exhibit 04 | 28 |
| Personal Property Damage Expense | Walgreens | Ace Bandage & Batteries | 13 | 10/7/2009 | | Receipt | F000333 | V Foster Exhibit 04 | 29 |
| Personal Property Damage Expense | Homegoods | Household Items | 42 | 10/7/2009 | | Receipt | F000334 | V Foster Exhibit 04 | 30 |
| Personal Property Damage Expense | Overstock | Rug, Comforter, Lamp | 431 | 10/8/2009 | | Invoice | F000314 | V Foster Exhibit 04 | 10 |
| Personal Property Damage Expense | Overstock | Tables | 106 | 10/9/2009 | | Invoice | F000313 | V Foster Exhibit 04 | 9 |
| Personal Property Damage Expense | QVC | Rubberized WireDrain Tools | 21 | 10/10/2009 | | Invoice | F000309 | V Foster Exhibit 04 | 5 |
| Personal Property Damage Expense | Tools | Tools | 31 | 10/10/2009 | | Claimant | N/A | V Foster Exhibit 02 | |
| Personal Property Damage Expense | Home Goods | Household Items | 138 | 10/12/2009 | | Receipt | F000331 | V Foster Exhibit 04 | 27 |
| Personal Property Damage Expense | TJMaxx | Household Items | 29 | 10/12/2009 | | Receipt | F000332 | V Foster Exhibit 04 | 28 |
| Personal Property Damage Expense | Bed Bath & Beyond | Various Household Items | 15 | 10/13/2009 | | Receipt | F000333 | V Foster Exhibit 04 | 29 |
| Personal Property Damage Expense | Diffuser | Diffuser | 35 | 10/13/2009 | | Claimant | N/A | V Foster Exhibit 02 | |
| Personal Property Damage Expense | QVC | InStyler | 95 | 10/14/2009 | | Invoice | F000339 | V Foster Exhibit 04 | 35 |
| Personal Property Damage Expense | duster | duster | 12 | 10/15/2009 | | Claimant | N/A | V Foster Exhibit 02 | |
| Personal Property Damage Expense | Costco | Nutrafoam Queen & Pillows | 165 | 10/16/2009 | X | Receipt | F000336 | V Foster Exhibit 04 | 32 |
| Personal Property Damage Expense | Best Buy | Disc Player | 180 | 10/27/2009 | | Receipt | F000327 | V Foster Exhibit 04 | 23 |
| Personal Property Damage Expense | Bed Bath & Beyond | Kitchen Items Replaced | 24 | 10/27/2009 | | Receipt | F000360 | V Foster Exhibit 04 | 56 |
| Personal Property Damage Expense | QVC | Flashlight | 20 | 10/28/2009 | | Receipt | F000329 | V Foster Exhibit 04 | 25 |
| Personal Property Damage Expense | QVC | Sterling Silver Earrings | 49 | 11/2/2009 | | Receipt | F000323 | V Foster Exhibit 04 | 19 |
| Personal Property Damage Expense | QVC | Earrings | 36 | 11/4/2009 | | Invoice | F000339 | V Foster Exhibit 04 | 35 |
| Personal Property Damage Expense | HSN | Diffusers | 102 | 11/9/2009 | | Receipt | F000330 | V Foster Exhibit 04 | 26 |
| Personal Property Damage Expense | Home Goods | Household Items | 130 | 11/9/2009 | | Receipt | F000331 | V Foster Exhibit 04 | 27 |
| Personal Property Damage Expense | TJMaxx | Household Items | 60 | 11/11/2009 | | Receipt | F000326 | V Foster Exhibit 04 | 22 |
| Personal Property Damage Expense | Home Goods | Household Items | 56 | 11/11/2009 | | Receipt | F000326 | V Foster Exhibit 04 | 22 |
| Personal Property Damage Expense | Calendar | Calendar | 32 | 11/13/2009 | | Claimant | N/A | V Foster Exhibit 02 | |
| Personal Property Damage Expense | Best Buy | Computer, Router, etc. | 2,745 | 11/15/2009 | | Receipt | F000324 | V Foster Exhibit 04 | 20 |
| Personal Property Damage Expense | Best Buy | Phones | 117 | 11/16/2009 | | Invoice | F000322 | V Foster Exhibit 04 | 18 |
| Personal Property Damage Expense | kitchen | kitchen, clothes, giftware | 94 | 11/16/2009 | | Claimant | N/A | V Foster Exhibit 02 | |
| Personal Property Damage Expense | Bed Bath & Beyond | Axis OTC Basket | 13 | 11/20/2009 | | Receipt | F000326 | V Foster Exhibit 04 | 22 |
| Personal Property Damage Expense | Bulbs | Bulbs | 12 | 11/23/2009 | | Claimant | N/A | V Foster Exhibit 02 | |
| Personal Property Damage Expense | Lowes | Christmas tree, ornaments, outlet | 91 | 11/27/2009 | | Receipt | F000335 | V Foster Exhibit 04 | 31 |
| Personal Property Damage Expense | American Signature | American Signature | 105 | 11/28/2009 | | Claimant | N/A | V Foster Exhibit 02 | |
| Personal Property Damage Expense | Ulta | Curling Iron | 49 | 11/30/2009 | X | Receipt | F000333 | V Foster Exhibit 04 | 29 |
| Personal Property Damage Expense | QVC | Skillet | 18 | 12/15/2009 | | Invoice | F000338 | V Foster Exhibit 04 | 34 |
| Personal Property Damage Expense | Florida Plumbers and Backflow | Florida Plumbers and Backflow | 174 | 12/15/2009 | | Claimant | N/A | V Foster Exhibit 02 | |
| Personal Property Damage Expense | shoes | shoes | 71 | 12/15/2009 | | Claimant | N/A | V Foster Exhibit 02 | |
| Personal Property Damage Expense | Sally Beauty Supply | Sally beauty Supply, curlers | 26 | 12/16/2009 | | Invoice | F000322 | V Foster Exhibit 04 | 18 |
| Personal Property Damage Expense | QVC | Leather Crossbody Bag | 126 | 12/21/2009 | | Receipt | F000330 | V Foster Exhibit 04 | 26 |
| Personal Property Damage Expense | Walmart | Household Items | 73 | 12/28/2009 | | Receipt | F000333 | V Foster Exhibit 04 | 29 |
| Personal Property Damage Expense | Laserlink | Laserlink | 159 | 12/31/2009 | | Receipt | F000409 - 000411 | V Foster Exhibit 04 | 107 |
| Personal Property Damage Expense | storage containers | storage containers | 30 | 1/4/2010 | | Claimant | N/A | V Foster Exhibit 02 | |
| Personal Property Damage Expense | TJMaxx | Kitchen Items | 11 | 1/11/2010 | | Receipt | F000336 | V Foster Exhibit 04 | 32 |
| Personal Property Damage Expense | clothing and kitchen | clothing and kitchen | 30 | 1/11/2010 | | Claimant | N/A | V Foster Exhibit 02 | |
| Personal Property Damage Expense | Drycleaning | Jacket, Dress, & Pants | 36 | 1/12/2010 | | Credit Card Statement | F000325 | V Foster Exhibit 04 | 21 |
| Personal Property Damage Expense | household goods | household goods | 25 | 1/12/2010 | | Claimant | N/A | V Foster Exhibit 02 | |
| Personal Property Damage Expense | Bed Bath & Beyond | Towels | 42 | 1/13/2010 | | Credit Card Statement | F000325 | V Foster Exhibit 04 | 21 |

Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 123 of 802
Case 1:11-cv-22408-MGC Document 2 Entered on FLSD Docket 09/15/2011 Page 202 of
262

Exhibit 6.1
Damage Claims Detail - William and Vicki Foster

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Personal Property Damage Expense | Marshalls | Marshalls | 37 | 1/13/2010 | | Claimant | N/A | V Foster Exhibit 02 | |
| Personal Property Damage Expense | QVC | Bakeware | 20 | 1/14/2010 | | Invoice | F000337 | V Foster Exhibit 04 | 33 |
| Personal Property Damage Expense | Lamps Plus | Two Lamps | 210 | 1/15/2010 | | Credit Card Statement | F000325 | V Foster Exhibit 04 | 21 |
| Personal Property Damage Expense | shoes | shoes | 40 | 2/5/2010 | | Claimant | N/A | V Foster Exhibit 02 | |
| Personal Property Damage Expense | tiebacks | tiebacks, stacking totes, candle, caddy | 59 | 2/21/2010 | | Claimant | N/A | V Foster Exhibit 02 | |
| Personal Property Damage Expense | Costco | Lounge Chair | 46 | 3/10/2010 | | Receipt | F000335 | V Foster Exhibit 04 | 31 |
| Personal Property Damage Expense | Trunk set | Trunk set | 120 | 3/23/2010 | | Claimant | N/A | V Foster Exhibit 02 | |
| Personal Property Damage Expense | glasses | glasses | 63 | 3/26/2010 | | Claimant | N/A | V Foster Exhibit 02 | |
| Personal Property Damage Expense | kitchen & accessories | kitchen & accessories, | 61 | 3/31/2010 | | Claimant | N/A | V Foster Exhibit 02 | |
| Personal Property Damage Expense | QVC | Tarnish Remover Kit | 23 | 4/4/2010 | | Invoice | F000321 | V Foster Exhibit 04 | 17 |
| Personal Property Damage Expense | QVC | Bakeware | 53 | 4/18/2010 | | Invoice | F000321 | V Foster Exhibit 04 | 17 |
| Personal Property Damage Expense | HSN | Therapeutic Massager | 138 | 4/23/2010 | | Receipt | F000329 | V Foster Exhibit 04 | 25 |
| Personal Property Damage Expense | TJ Maxx | Ladies Shoes | 42 | 4/26/2010 | | Receipt | F000352 | V Foster Exhibit 04 | 48 |
| Personal Property Damage Expense | Marshalls | Clothing | 123 | 4/26/2010 | | Receipt | F000353 | V Foster Exhibit 04 | 49 |
| Personal Property Damage Expense | HSN | Closet Set | 42 | 4/27/2010 | | Receipt | F000782 | V Foster Exhibit 06 | 6 |
| Personal Property Damage Expense | Marshalls | Houseware & Shoes | 107 | 4/28/2010 | | Receipt | F000332 | V Foster Exhibit 04 | 28 |
| Personal Property Damage Expense | QVC | Bose music system | 742 | 5/9/2010 | | Invoice | F000320 | V Foster Exhibit 04 | 16 |
| Personal Property Damage Expense | QVC | Earrings | 27 | 5/16/2010 | | Invoice | F000320 | V Foster Exhibit 04 | 16 |
| Personal Property Damage Expense | Marshalls | Houseware and Shoes | 55 | 5/16/2010 | | Receipt | F000335 | V Foster Exhibit 04 | 31 |
| Personal Property Damage Expense | QVC | Earrings | 36 | 5/17/2010 | | Invoice | F000320 | V Foster Exhibit 04 | 16 |
| Personal Property Damage Expense | Adams Cleaners | Drycleaning | 17 | 5/18/2010 | X | Receipt | F000323 | V Foster Exhibit 04 | 19 |
| Personal Property Damage Expense | QVC | QVC, shoe organizer | 29 | 5/19/2010 | | Invoice | F000320 | V Foster Exhibit 04 | 16 |
| Personal Property Damage Expense | clothes | clothes, luggage | 98 | 5/24/2010 | | Claimant | N/A | V Foster Exhibit 02 | |
| Personal Property Damage Expense | QVC | Storage Totes | 76 | 6/2/2010 | | Invoice | F000320 | V Foster Exhibit 04 | 16 |
| Personal Property Damage Expense | TJMaxx | Household Items | 20 | 6/2/2010 | | Receipt | F000331 | V Foster Exhibit 04 | 27 |
| Personal Property Damage Expense | QVC | Steam & Sweep Floor Sanitizer | 123 | 6/2/2010 | | Receipt | F000345 | V Foster Exhibit 04 | 41 |
| Personal Property Damage Expense | Keurig Carousel | Keurig Carousel | 29 | 7/18/2010 | | Claimant | N/A | V Foster Exhibit 02 | |
| Personal Property Damage Expense | Multi purpose knife tool | Multi purpose knife tool | 23 | 7/18/2010 | | Claimant | N/A | V Foster Exhibit 02 | |
| Personal Property Damage Expense | shoes and clothes | shoes and clothes | 99 | 7/19/2010 | | Claimant | N/A | V Foster Exhibit 02 | |
| Personal Property Damage Expense | Frontgate | Greek Key Rug | 144 | 7/20/2010 | | Invoice | F000316 | V Foster Exhibit 04 | 12 |
| Personal Property Damage Expense | HSN | Shoe Stretchers | 25 | 7/23/2010 | | Receipt | F000329 | V Foster Exhibit 04 | 25 |
| Personal Property Damage Expense | Comcast | Installation - Colonial Country Club | 55 | 8/11/2010 | | Claimant | N/A | V Foster Exhibit 02 | |
| Personal Property Damage Expense | The Ft. Meyers Store | Tervis Tumbler Cups | 43 | 9/3/2010 | | Receipt | F000334 | V Foster Exhibit 04 | 30 |
| Personal Property Damage Expense | Costco | Vita-Mix Blender | 689 | 9/7/2010 | | Invoice | F000392 | V Foster Exhibit 04 | 88 |
| Personal Property Damage Expense | Touch of Class | Serenity Wall Sculpture | 265 | 11/12/2010 | | Receipt | F000357 | V Foster Exhibit 04 | 53 |
| Personal Property Damage Expense | Touch of Class | Wall Sculpture | 261 | 11/15/2010 | | Invoice | F000404 | V Foster Exhibit 04 | 100 |
| Personal Property Damage Expense | Amazon | Steamer | 32 | 11/27/2010 | | Receipt | F000324 | V Foster Exhibit 04 | 20 |
| Personal Property Damage Expense | Home Goods | Housewares & Christmas Items | 42 | 12/16/2010 | | Receipt | F000336 | V Foster Exhibit 04 | 32 |
| Personal Property Damage Expense | Tools For Wellness | Necklace | 210 | 12/17/2010 | | Receipt | F000418 | V Foster Exhibit 04 | 114 |
| Personal Property Damage Expense | Overstock | Jewelry | 223 | 1/13/2011 | | Receipt | F000416 | V Foster Exhibit 04 | 112 |
| Personal Property Damage Expense | Inversion Table | Inversion Table | 233 | 1/15/2011 | | Claimant | N/A | V Foster Exhibit 02 | |
| Personal Property Damage Expense | QVC | Christmas lights | 53 | 1/20/2011 | | Invoice | F000319 | V Foster Exhibit 04 | 15 |
| Personal Property Damage Expense | walgreens photos | walgreens photos | 23 | 1/24/2011 | | Claimant | N/A | V Foster Exhibit 02 | |
| Personal Property Damage Expense | TRUE | Mens Shoes | 106 | 1/31/2011 | | Receipt | F000342 | V Foster Exhibit 04 | 38 |
| Personal Property Damage Expense | QVC | Ezhanger | 27 | 2/1/2011 | | Invoice | F000319 | V Foster Exhibit 04 | 15 |
| Personal Property Damage Expense | HSN | Nextbook Tablet Case | 42 | 2/5/2011 | | Receipt | F000347 | V Foster Exhibit 04 | 43 |
| Personal Property Damage Expense | Nextbook touchscreen | Nextbook Touchscreen | 201 | 2/5/2011 | | Receipt | F000348 | V Foster Exhibit 04 | 44 |
| Personal Property Damage Expense | QVC | Adhesive strips kit | 24 | 2/24/2011 | | Invoice | F000319 | V Foster Exhibit 04 | 15 |
| Personal Property Damage Expense | Footsmart | Various Sandals | 125 | 3/17/2011 | | Invoice | F000317 | V Foster Exhibit 04 | 13 |
| Personal Property Damage Expense | Select Comfort | Bedding Replacement | 7,256 | 4/15/2011 | | Receipt | F000387 | V Foster Exhibit 04 | 83 |
| Personal Property Damage Expense | Target | Men's Jewelry | 61 | 4/21/2011 | | Receipt | F000371 | V Foster Exhibit 04 | 67 |
| Personal Property Damage Expense | Bealls | Mens Shoes | 74 | 6/14/2011 | | Receipt | F000413 | V Foster Exhibit 04 | 109 |
| Personal Property Damage Expense | HSN | Digital Slim Stick Vacuum | 333 | 7/5/2011 | | Receipt | F000397 | V Foster Exhibit 04 | 93 |
| Personal Property Damage Expense | Frontgate | Towel stand | 199 | 9/4/2011 | | Receipt | F000396 | V Foster Exhibit 04 | 92 |
| Personal Property Damage Expense | Frontgate | Volterra Two Sided Clock | 199 | 9/21/2011 | | Invoice | F000362 | V Foster Exhibit 04 | 58 |

Exhibit 6.1
Damage Claims Detail - William and Vicki Foster

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Personal Property Damage Expense | Amazon | Magnetic Ball Marker Necklaces | 79 | 12/3/2011 | | Invoice | F000340 | V Foster Exhibit 04 | 36 |
| Personal Property Damage Expense | Amazon | Bella Crystal Ball Markers | 27 | 12/3/2011 | | Invoice | F000340 | V Foster Exhibit 04 | 36 |
| Personal Property Damage Expense | Swarovski | Circle Pierced Earrings | 239 | 12/19/2011 | | Receipt | F000419 | V Foster Exhibit 04 | 115 |
| Personal Property Damage Expense | Costco | Garage Door Opener | 265 | 3/8/2012 | | Invoice | F000365 | V Foster Exhibit 04 | 61 |
| Personal Property Damage Expense | Build.com | Outdoor Lighting Fixtures | 292 | 6/17/2012 | | Invoice | F000378 | V Foster Exhibit 04 | 74 |
| Personal Property Damage Expense | Lighting New York | Golden Lighting Rockefeller Minio Pendant | 185 | 6/28/2012 | | Receipt | F000343 | V Foster Exhibit 04 | 39 |
| Personal Property Damage Expense | Lighting New York | Lighting Fixtures | 243 | 7/2/2012 | | Receipt | F000421 | V Foster Exhibit 04 | 117 |
| Personal Property Damage Expense | Overstock | Silver Black Onyx Earrings | 68 | 7/11/2012 | | Receipt | F000420 | V Foster Exhibit 04 | 116 |
| Personal Property Damage Expense | Kiefers.com | 25 Chrome Bowties | 26 | 7/19/2012 | | Receipt | F000402 | V Foster Exhibit 04 | 98 |
| Personal Property Damage Expense | Lighting New York | Various Fans - Family Room | 491 | 8/5/2012 | | Credit Card Statement | N/A | 365749 | 92 |
| Personal Property Damage Expense | Lighting New York | Various Fans - Family Room | 471 | 8/5/2012 | | Credit Card Statement | N/A | 365749 | 92 |
| Personal Property Damage Expense | Build.com | Single Light Small Outdoor Fixture | 108 | 8/5/2012 | | Invoice | F000400 | V Foster Exhibit 04 | 96 |
| Personal Property Damage Expense | Amazon | Moen Kitchen Faucet | 100 | 8/20/2012 | | Invoice | F000399 | V Foster Exhibit 04 | 95 |
| Personal Property Damage Expense | Amazon | Pizza Peel & Stoneware | 80 | 8/27/2012 | | Receipt | F000407 | V Foster Exhibit 04 | 103 |
| Personal Property Damage Expense | Groupon | Blood Pressure Monitor | 24 | 9/27/2012 | | Receipt | F000406 | V Foster Exhibit 04 | 102 |
| Personal Property Damage Expense | Build.com | Handleset Interior Lever | 158 | 10/27/2012 | | Invoice | F000405 | V Foster Exhibit 04 | 101 |
| Personal Property Damage Expense | Budget Blinds | Budget Blinds | 5,084 | 10/29/2012 | | Invoice | F000376 | V Foster Exhibit 04 | 72 |
| Personal Property Damage Expense | Hayneedle | Howard Elliottt Chateau Wall Mirror | 431 | 10/31/2012 | | Credit Card Statement | N/A | 365749 | 97 |
| Personal Property Damage Expense | Budget Blinds | Budget blinds | 2,450 | 11/2/2012 | | Credit Card Statement | N/A | 365749 | 97 |
| Personal Property Damage Expense | Best Buy | Canon Battery Travel Charger | 45 | 11/30/2012 | | Receipt | F000359 | V Foster Exhibit 04 | 55 |
| Personal Property Damage Expense | Hayneedle | Howard Elliott Chateau Wall Mirror | 227 | 12/5/2012 | | Invoice | F000366 | V Foster Exhibit 04 | 62 |
| Personal Property Damage Expense | Costco | Aerobed, Bed in A Minute, Queen | 74 | 12/19/2012 | | Receipt | F000351 | V Foster Exhibit 04 | 47 |
| Personal Property Damage Expense | Shooz | Shoes | 102 | 1/23/2013 | | Receipt | F000352 | V Foster Exhibit 04 | 48 |
| Personal Property Damage Expense | Marshall Rousso | Earrings | 32 | 1/27/2013 | | Receipt | F000324 | V Foster Exhibit 04 | 20 |
| Personal Property Damage Expense | Amazon | Stackable Expandable Shoe Rack | 50 | 2/28/2013 | | Invoice | F000349 | V Foster Exhibit 04 | 45 |
| Personal Property Damage Expense | Lowes | Moen Kingsley Chrome Robe Hook | 23 | 3/1/2013 | | Receipt | F000375 | V Foster Exhibit 04 | 71 |
| Personal Property Damage Expense | JCPenney | Curtains | 84 | 3/28/2013 | | Invoice | F000361 | V Foster Exhibit 04 | 57 |
| Personal Property Damage Expense | Lamps Plus | Lamp Shade replacements | 80 | 3/29/2013 | | Credit Card Statement | F000344 | V Foster Exhibit 04 | 40 |
| Personal Property Damage Expense | JCPenney | Curtains | 79 | 3/29/2013 | | Credit Card Statement | F000344 | V Foster Exhibit 04 | 40 |
| Personal Property Damage Expense | Costco | Barstools | 541 | 4/4/2013 | | Receipt | F000358 | V Foster Exhibit 04 | 54 |
| Personal Property Damage Expense | Costco | AcuRite - NOAA Weather Radio | 37 | 4/4/2013 | | Receipt | F000358 | V Foster Exhibit 04 | 54 |
| Personal Property Damage Expense | Best Buy | Surround Sound Speakers | 252 | 4/5/2013 | | Receipt | F000344 | V Foster Exhibit 04 | 40 |
| Personal Property Damage Expense | Best Buy | DVD/VCR Replacement | 167 | 4/12/2013 | | Credit Card Statement | F000344 | V Foster Exhibit 04 | 40 |
| Personal Property Damage Expense | Lenoir Empire Furniture | Round Dining Room Table | 1,165 | 4/23/2013 | | Invoice | F000425 | V Foster Exhibit 04 | 121 |
| Personal Property Damage Expense | Lowes | Garage cabinets | 753 | 4/25/2013 | | Receipt | F000403 | V Foster Exhibit 04 | 99 |
| Personal Property Damage Expense | JCPenney | Curtains | 64 | 5/7/2013 | | Receipt | F000359 | V Foster Exhibit 04 | 55 |
| Personal Property Damage Expense | JCPenney | Curtains | 138 | 5/9/2013 | | Receipt | F000412 | V Foster Exhibit 04 | 108 |
| Personal Property Damage Expense | JCPenney | Curtains | 59 | 5/15/2013 | | Invoice | F000361 | V Foster Exhibit 04 | 57 |
| Personal Property Damage Expense | Dennis Reynolds | Wiring Surround Sound | 81 | 5/17/2013 | | Check | F000385 | V Foster Exhibit 04 | 81 |
| Personal Property Damage Expense | Completely Connected | Program Remote Control | 120 | 6/1/2013 | | Invoice | F000388 | V Foster Exhibit 04 | 84 |
| Personal Property Damage Expense | Apple | iPad Mini Wi-Fi 32GB Black | 601 | 6/13/2013 | | Receipt | F000810 | W Foster Exhibit 02 | 10 |
| Personal Property Damage Expense | Neat | Scanner Replacement | 332 | 6/16/2013 | | Receipt | F000386 | V Foster Exhibit 04 | 82 |
| Personal Property Damage Expense | Art Etc. | Wall Mirror | 190 | 6/30/2013 | X | Receipt | N/A | 365749 | 64 |
| Personal Property Damage Expense | Fitbit.com | Fitbit Flex Band | 106 | 7/21/2013 | | Receipt | F000382 | V Foster Exhibit 04 | 78 |
| Personal Property Damage Expense | JCPenney | Curtains | 25 | 8/1/2013 | | Receipt | F000360 | V Foster Exhibit 04 | 56 |
| Personal Property Damage Expense | TJ Maxx | Clothng | 221 | 8/2/2013 | | Receipt | F000353 | V Foster Exhibit 04 | 49 |
| Personal Property Damage Expense | TJ Maxx | Athletic Footwear | 41 | 8/2/2013 | | Receipt | F000354 | V Foster Exhibit 04 | 50 |
| Personal Property Damage Expense | Best Buy | Small Television | 191 | 8/2/2013 | | Receipt | F000390 | V Foster Exhibit 04 | 86 |
| Personal Property Damage Expense | Sandbaggers Gold Shoes | Golf Shoes | 99 | 8/7/2013 | | Receipt | F000350 | V Foster Exhibit 04 | 46 |
| Personal Property Damage Expense | Marshalls | Ladies Footwear | 32 | 8/9/2013 | | Receipt | F000352 | V Foster Exhibit 04 | 48 |
| Personal Property Damage Expense | Ross | Shoes | 51 | 8/10/2013 | | Receipt | F000328 | V Foster Exhibit 04 | 24 |
| Personal Property Damage Expense | The Home Depot | Garden Sprayer | 16 | 8/10/2013 | | Receipt | F000370 | V Foster Exhibit 04 | 66 |
| Personal Property Damage Expense | JCPenney | Curtains | 26 | 8/12/2013 | | Receipt | F000414 | V Foster Exhibit 04 | 110 |
| Personal Property Damage Expense | Amazon | Towel Rack | 98 | 8/15/2013 | | Invoice | F000318 | V Foster Exhibit 04 | 14 |
| Personal Property Damage Expense | Frontgate | Medallion Outdoor Rug | 85 | 8/15/2013 | | Invoice | F000380 | V Foster Exhibit 04 | 76 |

Exhibit 6.1
Damage Claims Detail - William and Vicki Foster

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Personal Property Damage Expense | Marshalls | Ladies Footwear | 39 | 8/17/2013 | | Receipt | F000354 | V Foster Exhibit 04 | 50 |
| Personal Property Damage Expense | Danby | Dehumdifier | 237 | 8/25/2013 | | Receipt | F000394 | V Foster Exhibit 04 | 90 |
| Personal Property Damage Expense | Amazon | Seiko Musical Clock | 389 | 9/5/2013 | | Invoice | F000310 | V Foster Exhibit 04 | 6 |
| Personal Property Damage Expense | Costco | HP printer All in one | 318 | 9/6/2013 | | Invoice | F000307 | V Foster Exhibit 04 | 3 |
| Personal Property Damage Expense | Sears | Dyson Vacuum Cleaner | 689 | 9/6/2013 | | Receipt | F000308 | V Foster Exhibit 04 | 4 |
| Personal Property Damage Expense | Sears | Power Washer Electric | 180 | 9/6/2013 | | Receipt | F000308 | V Foster Exhibit 04 | 4 |
| Personal Property Damage Expense | Affordable Golf Carts | Golf Cart | 8,651 | 11/5/2013 | | Invoice | F000777 | V Foster Exhibit 06 | 1 |
| Personal Property Damage Expense | QVC | Surge Protectors | 58 | 12/1/2013 | | Receipt | F000781 | V Foster Exhibit 06 | 5 |
| Personal Property Damage Expense | Florida Leather Gallery | Furniture | 5,447 | 7/6/2014 | | Invoice | F000778 | V Foster Exhibit 06 | 2 |
| Personal Property Damage Expense | Sandbaggers Golf Shoes | Golf Shoes | 338 | 10/6/2014 | | Receipt | F000780 | V Foster Exhibit 06 | 4 |
| Personal Property Damage Expense | Samsung | 55 Inch Television | 2,120 | 9/30/2016 | | Invoice | N/A | 365749 | 71 |
| Personal Property Damage Expense | Havertys Furniture | Entertainment Center | 3,203 | 11/9/2016 | | Invoice | F000912 | V Foster Exhibit 05 | 8 |
| Personal Property Damage Expense | Lenoir Empire Furniture | Tall Waisted Shaped & Chairside Chest | 1,240 | 11/28/2016 | | Invoice | F000907 | V Foster Exhibit 05 | 3 |
| Personal Property Damage Expense | Lenoir Empire Furniture | Delivery of Tall Door Chest & Chairside Chest | 251 | 12/20/2016 | | Invoice | F000908 | V Foster Exhibit 05 | 4 |
| Personal Property Damage Expense | Lenoir Empire Furniture | End  table | 410 | 5/22/2017 | | Claimant | F000905 | V Foster Exhibit 05 | 1 |
| Personal Property Damage Expense | Costco | Sewing machine | 230 | 7/22/2017 | | Invoice | F000909 | V Foster Exhibit 05 | 5 |
| Personal Property Damage Expense | Lenoir Empire Furniture | Various Items & Shipping | 4,049 | 7/24/2017 | | Invoice | N/A | 365749 | 82 |
| Personal Property Damage Expense | Lenoir Empire Furniture | Jewelry Armoire | 1,240 | 2/13/2018 | | Invoice | F000910 | V Foster Exhibit 05 | 6 |
| Personal Property Damage Expense | Lenoir Empire Furniture | Delivery of Jewelry Armoire | 154 | 7/12/2018 | | Invoice | F000911 | V Foster Exhibit 05 | 7 |
| **Personal Property Damage Expense Total** | | | **$ 99,051** | | | | | | |
| Additional Damages - W Foster Living | Comcast - Louisville | Cable | $ 20 | 2/27/2008 | | Check Carbon Copy | N/A | 367575 | 19 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 96 | 2/26/2008 | | Check Carbon Copy | N/A | 367575 | 10 |
| Additional Damages - W Foster Living | Wells Fargo Home MTG | Mortgage - In Lieu of Rent | 3,318 | 2/28/2008 | | Check Carbon Copy | N/A | 367575 | 4 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 140 | 3/21/2008 | | Check Carbon Copy | N/A | 367575 | 10 |
| Additional Damages - W Foster Living | Comcast - Louisville | Cable | 20 | 3/24/2008 | | Check Carbon Copy | N/A | 367575 | 19 |
| Additional Damages - W Foster Living | Wells Fargo Home MTG | Mortgage - In Lieu of Rent | 3,526 | 3/31/2008 | | Check Carbon Copy | N/A | 367575 | 4 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 92 | 4/20/2008 | | Check Carbon Copy | N/A | 367575 | 10 |
| Additional Damages - W Foster Living | Louisville Water Co. | Water | 72 | 4/21/2008 | | Check Carbon Copy | N/A | 367575 | 16 |
| Additional Damages - W Foster Living | Wells Fargo Home MTG | Mortgage - In Lieu of Rent | 3,526 | 4/28/2008 | | Check Carbon Copy | N/A | 367575 | 4 |
| Additional Damages - W Foster Living | Comcast - Louisville | Cable | 30 | 5/27/2008 | | Check Carbon Copy | N/A | 367575 | 19 |
| Additional Damages - W Foster Living | Wells Fargo Home MTG | Mortgage - In Lieu of Rent | 3,600 | 5/27/2008 | | Check Carbon Copy | N/A | 367575 | 5 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 139 | 5/27/2008 | | Check Carbon Copy | N/A | 367575 | 11 |
| Additional Damages - W Foster Living | Louisville Water Co. | Water | 41 | 6/17/2008 | | Check Carbon Copy | N/A | 367575 | 16 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 95 | 6/20/2008 | | Check Carbon Copy | N/A | 367575 | 11 |
| Additional Damages - W Foster Living | Comcast - Louisville | Cable | 32 | 6/20/2008 | | Check Carbon Copy | N/A | 367575 | 20 |
| Additional Damages - W Foster Living | Wells Fargo Home MTG | Mortgage - In Lieu of Rent | 3,526 | 6/28/2008 | | Check Carbon Copy | N/A | 367575 | 5 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 127 | 7/22/2008 | | Check Carbon Copy | N/A | 367575 | 11 |
| Additional Damages - W Foster Living | Comcast - Louisville | Cable | 32 | 7/28/2008 | | Check Carbon Copy | N/A | 367575 | 20 |
| Additional Damages - W Foster Living | Wells Fargo Home MTG | Mortgage - In Lieu of Rent | 3,526 | 8/8/2008 | | Check Carbon Copy | N/A | 367575 | 5 |
| Additional Damages - W Foster Living | Louisville Water Co. | Water | 41 | 8/15/2008 | | Check Carbon Copy | N/A | 367575 | 16 |
| Additional Damages - W Foster Living | Comcast - Louisville | Cable | 32 | 8/20/2008 | | Check Carbon Copy | N/A | 367575 | 20 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 139 | 8/20/2008 | | Check Carbon Copy | N/A | 367575 | 12 |
| Additional Damages - W Foster Living | Wells Fargo Home MTG | Mortgage - In Lieu of Rent | 3,526 | 8/27/2008 | | Check Carbon Copy | N/A | 367575 | 6 |
| Additional Damages - W Foster Living | Comcast - Louisville | Cable | 32 | 9/22/2008 | | Check Carbon Copy | N/A | 367575 | 21 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 134 | 9/22/2008 | | Check Carbon Copy | N/A | 367575 | 12 |
| Additional Damages - W Foster Living | Wells Fargo Home MTG | Mortgage - In Lieu of Rent | 3,526 | 9/28/2008 | | Check Carbon Copy | N/A | 367575 | 6 |
| Additional Damages - W Foster Living | Louisville Water Co. | Water | 42 | 10/17/2008 | | Check Carbon Copy | N/A | 367575 | 17 |
| Additional Damages - W Foster Living | Comcast - Louisville | Cable | 32 | 10/24/2008 | | Check Carbon Copy | N/A | 367575 | 21 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 84 | 10/24/2008 | | Check Carbon Copy | N/A | 367575 | 12 |
| Additional Damages - W Foster Living | Wells Fargo Home MTG | Mortgage - In Lieu of Rent | 3,526 | 10/29/2008 | | Check Carbon Copy | N/A | 367575 | 6 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 115 | 11/18/2008 | | Check Carbon Copy | N/A | 367575 | 13 |
| Additional Damages - W Foster Living | Comcast - Louisville | Cable | 32 | 11/28/2008 | | Check Carbon Copy | N/A | 367575 | 21 |
| Additional Damages - W Foster Living | Wells Fargo Home MTG | Mortgage - In Lieu of Rent | 3,108 | 11/28/2008 | | Check Carbon Copy | N/A | 367575 | 7 |
| Additional Damages - W Foster Living | Comcast - Louisville | Cable | 30 | 12/12/2008 | | Check Carbon Copy | N/A | 367575 | 22 |
| Additional Damages - W Foster Living | Louisville Water Co. | Water | 40 | 12/17/2008 | | Check Carbon Copy | N/A | 367575 | 17 |

Exhibit 6.1
Damage Claims Detail - William and Vicki Foster

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Additional Damages - W Foster Living | Comcast - Louisville | Cable | 147 | 12/20/2008 | | Check Carbon Copy | N/A | 367575 | 22 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 271 | 12/22/2008 | | Check Carbon Copy | N/A | 367575 | 13 |
| Additional Damages - W Foster Living | Wells Fargo Home MTG | Mortgage - In Lieu of Rent | 3,108 | 12/30/2008 | | Check Carbon Copy | N/A | 367575 | 7 |
| Additional Damages - W Foster Living | Comcast - Louisville | Cable | 99 | 1/22/2009 | | Check Carbon Copy | N/A | 367575 | 22 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 274 | 1/22/2009 | | Check Carbon Copy | N/A | 367575 | 13 |
| Additional Damages - W Foster Living | Wells Fargo Home MTG | Mortgage - In Lieu of Rent | 3,110 | 1/29/2009 | | Check Carbon Copy | N/A | 367575 | 7 |
| Additional Damages - W Foster Living | Louisville Water Co. | Water | 104 | 2/19/2009 | | Check Carbon Copy | N/A | 367575 | 17 |
| Additional Damages - W Foster Living | Wells Fargo Home MTG | Mortgage - In Lieu of Rent | 3,108 | 2/19/2009 | | Check Carbon Copy | N/A | 367575 | 8 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 352 | 2/19/2009 | | Check Carbon Copy | N/A | 367575 | 14 |
| Additional Damages - W Foster Living | Comcast - Louisville | Cable | 205 | 3/1/2009 | | Check Carbon Copy | N/A | 367575 | 23 |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 325 | 6/1/2013 | X | Claimant | F000783 | W Foster Exhibit 01 | 1 |
| Additional Damages - W Foster Living | ExtendedStay | Hotel | 460 | 6/15/2013 | | Credit Card Statement | F000803 | W Foster Exhibit 02 | 3 |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 650 | 7/1/2013 | X | Claimant | F000783 | W Foster Exhibit 01 | 1 |
| Additional Damages - W Foster Living | Howard Johnson | Hotel | 425 | 7/4/2013 | | Credit Card Statement | F000802 | W Foster Exhibit 02 | 2 |
| Additional Damages - W Foster Living | Best Buy | TV | 191 | 8/2/2013 | | Receipt | F000811 | W Foster Exhibit 02 | 11 |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 650 | 8/30/2013 | | Bank Statement | F000804 | W Foster Exhibit 02 | 4 |
| Additional Damages - W Foster Living | IKEA | Bed & Frame | 349 | 9/27/2013 | | Credit Card Statement | F000801 | W Foster Exhibit 02 | 1 |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 650 | 9/27/2013 | | Bank Statement | F000805 | W Foster Exhibit 02 | 5 |
| Additional Damages - W Foster Living | Southwest Airlines | Airfare | 638 | 10/22/2013 | | Confirmation Statement | F000809 | W Foster Exhibit 02 | 9 |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 650 | 10/30/2013 | | Bank Statement | F000806 | W Foster Exhibit 02 | 6 |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 650 | 11/25/2013 | | Bank Statement | F000807 | W Foster Exhibit 02 | 7 |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 650 | 12/1/2013 | X | Claimant | F000783 | W Foster Exhibit 01 | 1 |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 675 | 1/30/2014 | | Bank Statement | F000812 | W Foster Exhibit 02 | 12 |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 675 | 2/27/2014 | | Bank Statement | F000813 | W Foster Exhibit 02 | 13 |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 675 | 3/26/2014 | | Bank Statement | F000814 | W Foster Exhibit 02 | 14 |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 675 | 4/28/2014 | | Bank Statement | F000815 | W Foster Exhibit 02 | 15 |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 675 | 5/29/2014 | | Bank Statement | F000816 | W Foster Exhibit 02 | 16 |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 675 | 7/2/2014 | | Check Carbon Copy | F000817 | W Foster Exhibit 02 | 17 |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 675 | 7/31/2014 | | Bank Statement | F000818 | W Foster Exhibit 02 | 18 |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 675 | 9/2/2014 | | Bank Statement | F000819 | W Foster Exhibit 02 | 19 |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 675 | 9/30/2014 | | Bank Statement | F000820 | W Foster Exhibit 02 | 20 |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 675 | 10/29/2014 | | Bank Statement | F000821 | W Foster Exhibit 02 | 21 |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 675 | 11/28/2014 | | Bank Statement | F000822 | W Foster Exhibit 02 | 22 |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 675 | 12/31/2014 | X | Claimant | F000788 | W Foster Exhibit 01 | 6 |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent | 675 | 1/30/2015 | | Bank Statement | F000823 | W Foster Exhibit 02 | 23 |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent | 675 | 2/26/2015 | | Bank Statement | F000824 | W Foster Exhibit 02 | 24 |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent | 675 | 3/27/2015 | | Bank Statement | F000825 | W Foster Exhibit 02 | 25 |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent | 675 | 4/30/2015 | | Bank Statement | F000826 | W Foster Exhibit 02 | 26 |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent | 675 | 5/1/2015 | | Claimant | F000789 | W Foster Exhibit 01 | |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent - June | 770 | 5/25/2015 | X | Check Carbon Copy | F000828 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Utilities | 200 | 6/1/2015 | | Claimant | F000789 | W Foster Exhibit 01 | |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent - July | 770 | 6/25/2015 | | Check Carbon Copy | F000828 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Utilities | 200 | 7/1/2015 | | Claimant | F000789 | W Foster Exhibit 01 | |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent - August | 770 | 7/25/2015 | X | Check Carbon Copy | F000828 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Utilities - August | 400 | 8/15/2015 | | Check Carbon Copy | F000829 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent - September | 770 | 8/27/2015 | | Check Carbon Copy | F000829 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Utilities - September | 250 | 9/26/2015 | | Check Carbon Copy | F000831 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Village Green Apartments | Rent - October | 930 | 9/27/2015 | | Check Carbon Copy | F000829 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Village Green Apartments | Utilities | 87 | 9/27/2015 | | Check Carbon Copy | F000830 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Village Green Apartments | Rent - November | 930 | 10/30/2015 | | Check Carbon Copy | F000830 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Heathmore Apartments | Fees for New Rental | 65 | 11/18/2015 | | Check Carbon Copy | F000868 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Heathmore Apartments | Hold Deposit for 2016 Apartment | 200 | 11/23/2015 | | Check Carbon Copy | F000868 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Village Green Apartments | Half Month Rent & AUM | 501 | 12/1/2015 | | Check Carbon Copy | F000830 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent - December | 400 | 12/9/2015 | | Check Carbon Copy | F000831 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Priceline | Hotel Room | 145 | 12/10/2015 | | Credit Card Statement | F000827 | W Foster Exhibit 02 | 27 |

Exhibit 6.1
Damage Claims Detail - William and Vicki Foster

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Additional Damages - W Foster Living | Sprint | Cell Phone | 212 | 12/31/2015 | X | Claimant | F000788 | W Foster Exhibit 01 | 6 |
| Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 58 | 1/5/2016 | | Credit Card Statement | F000841 | W Foster Exhibit 02 | 41 |
| Additional Damages - W Foster Living | Apartment in Louisville, Kentucky | Rent | 513 | 1/8/2016 | | Bank Statement | F000867 | W Foster Exhibit 02 | 67 |
| Additional Damages - W Foster Living | Wal-Mart | Microwave | 47 | 1/9/2016 | | Credit Card Statement | F000841 | W Foster Exhibit 02 | 41 |
| Additional Damages - W Foster Living | Sprint | Cell Phone | 194 | 1/18/2016 | | Credit Card Statement | F000842 | W Foster Exhibit 02 | 42 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 51 | 1/28/2016 | | Bank Statement | F000832 | W Foster Exhibit 02 | 32 |
| Additional Damages - W Foster Living | Heathmore Apartments | Rent - February | 630 | 1/28/2016 | | Check Carbon Copy | F000868 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 57 | 2/1/2016 | X | Claimant | F000790 | W Foster Exhibit 01 | 8 |
| Additional Damages - W Foster Living | Sprint | Cell Phone | 194 | 2/17/2016 | | Credit Card Statement | F000843 | W Foster Exhibit 02 | 43 |
| Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 58 | 2/21/2016 | | Credit Card Statement | F000844 | W Foster Exhibit 02 | 44 |
| Additional Damages - W Foster Living | Heathmore Apartments | Rent - March | 630 | 2/25/2016 | | Check Carbon Copy | F000869 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 130 | 3/11/2016 | | Bank Statement | F000833 | W Foster Exhibit 02 | 33 |
| Additional Damages - W Foster Living | Sprint | Cell Phone | 194 | 3/19/2016 | | Credit Card Statement | F000845 | W Foster Exhibit 02 | 45 |
| Additional Damages - W Foster Living | Heathmore Apartments | Rent - April | 631 | 3/22/2016 | | Check Carbon Copy | F000869 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Amazon | Amazon Mattress | 139 | 3/28/2016 | | Invoice | F000866 | W Foster Exhibit 02 | 66 |
| Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 58 | 3/29/2016 | | Credit Card Statement | F000846 | W Foster Exhibit 02 | 46 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 64 | 4/11/2016 | | Bank Statement | F000834 | W Foster Exhibit 02 | 34 |
| Additional Damages - W Foster Living | Sprint | Cell Phone | 195 | 4/17/2016 | | Credit Card Statement | F000847 | W Foster Exhibit 02 | 47 |
| Additional Damages - W Foster Living | Heathmore Apartments | Rent - May | 631 | 4/28/2016 | | Check Carbon Copy | F000869 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 57 | 4/30/2016 | | Credit Card Statement | F000848 | W Foster Exhibit 02 | 48 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 52 | 5/10/2016 | | Bank Statement | F000835 | W Foster Exhibit 02 | 35 |
| Additional Damages - W Foster Living | Home Goods | Home Goods | 53 | 5/16/2016 | | Credit Card Statement | F000848 | W Foster Exhibit 02 | 48 |
| Additional Damages - W Foster Living | Sprint | Cell Phone | 194 | 5/18/2016 | | Credit Card Statement | F000849 | W Foster Exhibit 02 | 49 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 33 | 5/26/2016 | | Bank Statement | F000835 | W Foster Exhibit 02 | 35 |
| Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 57 | 5/30/2016 | | Credit Card Statement | F000850 | W Foster Exhibit 02 | 50 |
| Additional Damages - W Foster Living | Heathmore Apartments | Rent - June | 631 | 5/31/2016 | | Check Carbon Copy | F000870 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Sprint | Cell Phone | 194 | 6/17/2016 | | Credit Card Statement | F000851 | W Foster Exhibit 02 | 51 |
| Additional Damages - W Foster Living | Heathmore Apartments | Rent - July | 631 | 6/17/2016 | | Check Carbon Copy | F000870 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 33 | 6/28/2016 | | Bank Statement | F000836 | W Foster Exhibit 02 | 36 |
| Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 57 | 6/30/2016 | | Credit Card Statement | F000852 | W Foster Exhibit 02 | 52 |
| Additional Damages - W Foster Living | Sprint | Cell Phone | 194 | 7/18/2016 | | Credit Card Statement | F000853 | W Foster Exhibit 02 | 53 |
| Additional Damages - W Foster Living | Heathmore Apartments | Rent - September (August on Check) | 631 | 7/24/2016 | | Check Carbon Copy | F000871 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Heathmore Apartments | Rent - August | 631 | 7/27/2016 | | Check Carbon Copy | F000870 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 57 | 7/30/2016 | | Credit Card Statement | F000854 | W Foster Exhibit 02 | 54 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 31 | 8/9/2016 | | Bank Statement | F000837 | W Foster Exhibit 02 | 37 |
| Additional Damages - W Foster Living | Sprint | Cell Phone | 194 | 8/17/2016 | | Credit Card Statement | F000855 | W Foster Exhibit 02 | 55 |
| Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 57 | 8/30/2016 | | Credit Card Statement | F000856 | W Foster Exhibit 02 | 56 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 42 | 9/9/2016 | | Bank Statement | F000838 | W Foster Exhibit 02 | 38 |
| Additional Damages - W Foster Living | Sprint | Cell Phone | 194 | 9/17/2016 | | Credit Card Statement | F000857 | W Foster Exhibit 02 | 57 |
| Additional Damages - W Foster Living | Heathmore Apartments | Rent - October | 631 | 9/28/2016 | | Check Carbon Copy | F000871 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 57 | 9/30/2016 | | Credit Card Statement | F000858 | W Foster Exhibit 02 | 58 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 40 | 10/12/2016 | | Bank Statement | F000839 | W Foster Exhibit 02 | 39 |
| Additional Damages - W Foster Living | Sprint | Cell Phone | 168 | 10/18/2016 | | Credit Card Statement | F000859 | W Foster Exhibit 02 | 59 |
| Additional Damages - W Foster Living | Heathmore Apartments | Rent - November | 631 | 10/27/2016 | | Check Carbon Copy | F000871 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 57 | 10/30/2016 | | Credit Card Statement | F000860 | W Foster Exhibit 02 | 60 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 29 | 11/3/2016 | | Bank Statement | F000839 | W Foster Exhibit 02 | 39 |
| Additional Damages - W Foster Living | Sprint | Cell Phone | 168 | 11/17/2016 | | Credit Card Statement | F000861 | W Foster Exhibit 02 | 61 |
| Additional Damages - W Foster Living | Heathmore Apartments | Rent - December | 631 | 11/28/2016 | | Check Carbon Copy | F000872 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 57 | 11/30/2016 | | Credit Card Statement | F000864 | W Foster Exhibit 02 | 64 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 48 | 12/9/2016 | | Bank Statement | F000885 | W Foster Exhibit 02 | 85 |
| Additional Damages - W Foster Living | Sprint | Cell Phone | 112 | 12/18/2016 | | Credit Card Statement | F000865 | W Foster Exhibit 02 | 65 |
| Additional Damages - W Foster Living | Heathmore Apartments | Rent - January | 647 | 12/25/2016 | | Check Carbon Copy | F000900 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 57 | 1/1/2017 | X | Claimant | F000791 | W Foster Exhibit 01 | 9 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 109 | 1/12/2017 | | Bank Statement | F000873 | W Foster Exhibit 02 | 73 |
| Additional Damages - W Foster Living | Sprint | Cell Phone | 187 | 1/17/2017 | | Credit Card Statement | F000884 | W Foster Exhibit 02 | 84 |

Exhibit 6.1
Damage Claims Detail - William and Vicki Foster

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|------|--------|-------------|--------|------|--------------|----------------|-------|------------------|--------------|
| Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 62 | 1/30/2017 | | Credit Card Statement | F000885 | W Foster Exhibit 02 | 85 |
| Additional Damages - W Foster Living | Heathmore Apartments | Rent - February | 652 | 1/30/2017 | | Check Carbon Copy | F000902 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 96 | 2/10/2017 | | Bank Statement | F000874 | W Foster Exhibit 02 | 74 |
| Additional Damages - W Foster Living | Sprint | Cell Phone | 187 | 2/17/2017 | | Credit Card Statement | F000886 | W Foster Exhibit 02 | 86 |
| Additional Damages - W Foster Living | Heathmore Apartments | Rent - March | 652 | 2/27/2017 | | Check Carbon Copy | F000902 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 65 | 3/2/2017 | | Credit Card Statement | F000887 | W Foster Exhibit 02 | 87 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 90 | 3/13/2017 | | Bank Statement | F000875 | W Foster Exhibit 02 | 75 |
| Additional Damages - W Foster Living | Sprint | Cell Phone | 187 | 3/21/2017 | | Credit Card Statement | F000889 | W Foster Exhibit 02 | 89 |
| Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 65 | 3/30/2017 | | Credit Card Statement | F000888 | W Foster Exhibit 02 | 88 |
| Additional Damages - W Foster Living | Heathmore Apartments | Rent - April | 652 | 3/31/2017 | | Check Carbon Copy | F000900 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 86 | 4/10/2017 | | Bank Statement | F000876 | W Foster Exhibit 02 | 76 |
| Additional Damages - W Foster Living | Sprint | Cell Phone | 187 | 4/17/2017 | | Credit Card Statement | F000889 | W Foster Exhibit 02 | 89 |
| Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 65 | 4/30/2017 | | Credit Card Statement | F000890 | W Foster Exhibit 02 | 90 |
| Additional Damages - W Foster Living | Heathmore Apartments | Rent - May | 653 | 4/30/2017 | | Check Carbon Copy | F000900 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 57 | 5/10/2017 | | Bank Statement | F000877 | W Foster Exhibit 02 | 77 |
| Additional Damages - W Foster Living | Sprint | Cell Phone | 187 | 5/18/2017 | | Credit Card Statement | F000890 | W Foster Exhibit 02 | 90 |
| Additional Damages - W Foster Living | Heathmore Apartments | Rent - July (June) | 653 | 5/30/2017 | | Check Carbon Copy | F000901 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 65 | 5/31/2017 | | Credit Card Statement | F000891 | W Foster Exhibit 02 | 91 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 34 | 6/13/2017 | | Bank Statement | F000878 | W Foster Exhibit 02 | 78 |
| Additional Damages - W Foster Living | Sprint | Cell Phone | 187 | 6/17/2017 | | Credit Card Statement | F000891 | W Foster Exhibit 02 | 91 |
| Additional Damages - W Foster Living | Heathmore Apartments | Rent - July | 653 | 6/28/2017 | | Check Carbon Copy | F000901 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 65 | 6/30/2017 | | Credit Card Statement | F000892 | W Foster Exhibit 02 | 92 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 39 | 7/12/2017 | | Bank Statement | F000879 | W Foster Exhibit 02 | 79 |
| Additional Damages - W Foster Living | Sprint | Cell Phone | 183 | 7/18/2017 | | Credit Card Statement | F000892 | W Foster Exhibit 02 | 92 |
| Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 65 | 7/30/2017 | | Credit Card Statement | F000893 | W Foster Exhibit 02 | 93 |
| Additional Damages - W Foster Living | Heathmore Apartments | Rent - August | 653 | 7/31/2017 | X | Check Carbon Copy | F000901 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 34 | 8/11/2017 | | Bank Statement | F000880 | W Foster Exhibit 02 | 80 |
| Additional Damages - W Foster Living | Sprint | Cell Phone | 183 | 8/17/2017 | | Credit Card Statement | F000893 | W Foster Exhibit 02 | 93 |
| Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 65 | 8/30/2017 | | Credit Card Statement | F000894 | W Foster Exhibit 02 | 94 |
| Additional Damages - W Foster Living | Heathmore Apartments | Rent - September | 653 | 8/31/2017 | X | Check Carbon Copy | F000903 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 38 | 9/11/2017 | | Bank Statement | F000881 | W Foster Exhibit 02 | 81 |
| Additional Damages - W Foster Living | Sprint | Cell Phone | 183 | 9/17/2017 | | Credit Card Statement | F000894 | W Foster Exhibit 02 | 94 |
| Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 67 | 9/30/2017 | | Credit Card Statement | F000895 | W Foster Exhibit 02 | 95 |
| Additional Damages - W Foster Living | Heathmore Apartments | Rent - October | 653 | 9/30/2017 | X | Check Carbon Copy | F000903 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 36 | 10/4/2017 | | Bank Statement | F000882 | W Foster Exhibit 02 | 82 |
| Additional Damages - W Foster Living | Sprint | Cell Phone | 183 | 10/18/2017 | | Credit Card Statement | F000895 | W Foster Exhibit 02 | 95 |
| Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 67 | 10/30/2017 | | Credit Card Statement | F000896 | W Foster Exhibit 02 | 96 |
| Additional Damages - W Foster Living | Heathmore Apartments | Rent - November | 653 | 10/31/2017 | X | Check Carbon Copy | F000903 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 32 | 11/9/2017 | | Bank Statement | F000882 | W Foster Exhibit 02 | 82 |
| Additional Damages - W Foster Living | Sprint | Cell Phone | 183 | 11/17/2017 | | Credit Card Statement | F000897 | W Foster Exhibit 02 | 97 |
| Additional Damages - W Foster Living | Heathmore Apartments | Rent - December | 183 | 11/30/2017 | X | Check Carbon Copy | F000904 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 63 | 12/8/2017 | | Credit Card Statement | F000898 | W Foster Exhibit 02 | 98 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 65 | 12/11/2017 | | Bank Statement | F000883 | W Foster Exhibit 02 | 83 |
| Additional Damages - W Foster Living | Sprint | Cell Phone | 183 | 12/18/2017 | | Credit Card Statement | F000898 | W Foster Exhibit 02 | 98 |
| **Additional Damages - W Foster Living Total** | | | $ 94,728 | | | | | | |

Exhibit 6.3
Calculation of Prejudgment Interest Summary - William and Vicki Foster

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Vendor | Description | Amount | Total Interest Through 7/22/2019 |
|---|---|---|---|---|---|---|
| 3/7/2012 | 4/6/2012 | Remediation | Staples | Copies made for attorney | $ 24 | $ 9 |
| 3/29/2012 | 4/28/2012 | Remediation | Steven E. Leftwich | Work Write-up Fee for repairs over $100,000 | 1,000 | 368 |
| 4/26/2012 | 5/26/2012 | Remediation | Kevin Polkow | Polkow Construction - Remediation | 3,000 | 1,092 |
| 5/25/2012 | 6/24/2012 | Remediation | Kevin Polkow | Polkow Construction - Remediation | 4,000 | 1,441 |
| 6/4/2012 | 7/4/2012 | Remediation | Intuitive Environmental Solutions LLC | CDW Evidence Sampling Preservation Investigation and Report | 1,300 | 467 |
| 6/27/2012 | 7/27/2012 | Remediation | Kevin Polkow | Polkow Construction - Remediation | 5,000 | 1,780 |
| 7/3/2012 | 8/2/2012 | Remediation | The Kiefer Companies | Brass Hooks for Chandelier | 34 | 12 |
| 7/31/2012 | 8/30/2012 | Remediation | Kevin Polkow | Polkow Construction - Remediation | 9,000 | 3,164 |
| 8/2/2012 | 9/1/2012 | Remediation | Lowes | Miscellaneous | 363 | 128 |
| 8/8/2012 | 9/7/2012 | Remediation | Intuitive Environmental Solutions LLC | CDW Evidence Sampling Preservation Investigation and Report | 700 | 245 |
| 8/28/2012 | 9/27/2012 | Remediation | Kevin Polkow | Polkow Construction - Remediation | 10,000 | 3,479 |
| 8/29/2012 | 9/28/2012 | Remediation | Build.com | Various Items for Sink and Shower | 2,092 | 727 |
| 8/31/2012 | 9/30/2012 | Remediation | Hadinger Flooring | Various Items for Flooring | 3,131 | 1,088 |
| 9/5/2012 | 10/5/2012 | Remediation | Best Buy | Miscellaneous | 43 | 15 |
| 9/11/2012 | 10/11/2012 | Remediation | Kevin Polkow | Polkow Construction - Remediation | 8,000 | 2,769 |
| 9/12/2012 | 10/12/2012 | Remediation | Kevin Polkow | Polkow Construction - Remediation | 20,438 | 7,070 |
| 9/12/2012 | 10/12/2012 | Remediation | Kevin Polkow | Polkow Construction - Remediation | 2,500 | 865 |
| 9/14/2012 | 10/14/2012 | Remediation | Overstock | Aquasuite Filter FCT - Laundry Room Faucet | 489 | 169 |
| 9/17/2012 | 10/17/2012 | Remediation | The Home Depot | Miscellaneous | 46 | 16 |
| 9/17/2012 | 10/17/2012 | Remediation | The Home Depot | Miscellaneous | 35 | 12 |
| 9/21/2012 | 10/21/2012 | Remediation | The Home Depot | Miscellaneous | 48 | 17 |
| 9/21/2012 | 10/21/2012 | Remediation | The Home Depot | Miscellaneous | 48 | 17 |
| 9/22/2012 | 10/22/2012 | Remediation | The Home Depot | Miscellaneous | 63 | 22 |
| 9/22/2012 | 10/22/2012 | Remediation | The Home Depot | Miscellaneous | 48 | 16 |
| 9/24/2012 | 10/24/2012 | Remediation | The Home Depot | Miscellaneous | 50 | 17 |
| 9/26/2012 | 10/26/2012 | Remediation | PMC | Subcontractor | 8,000 | 2,753 |
| 10/8/2012 | 11/7/2012 | Remediation | Macco-Hadinger LLC | Miscellaneous | 1,352 | 463 |
| 10/10/2012 | 11/9/2012 | Remediation | Build.com | Rinse Basket and Knobs | 165 | 57 |
| 10/12/2012 | 11/11/2012 | Remediation | The Home Depot | Miscellaneous | 20 | 7 |
| 10/14/2012 | 11/13/2012 | Remediation | The Home Depot | Miscellaneous | 8 | 3 |
| 10/17/2012 | 11/16/2012 | Remediation | Kevin Polkow | Polkow Construction - Remediation | 9,000 | 3,073 |
| 10/23/2012 | 11/22/2012 | Remediation | Costco | 2 Cantilever Wall Mounts | 106 | 36 |
| 10/25/2012 | 11/24/2012 | Remediation | Kevin Polkow | Polkow Construction - Remediation | 9,000 | 3,063 |
| 10/26/2012 | 11/25/2012 | Remediation | Two Men and a Truck | Moving Expense | 200 | 68 |
| 10/28/2012 | 11/27/2012 | Remediation | Build.com | Medina Style Handleset | 158 | 54 |
| 10/29/2012 | 11/28/2012 | Remediation | Raymond Building Supply | Replacement of all appliances | 18,928 | 6,433 |
| 10/30/2012 | 11/29/2012 | Remediation | The Home Depot | Miscellaneous | 8 | 3 |
| 10/31/2012 | 11/30/2012 | Remediation | Gulf Stone Construction | Gulf Stone Construction | 5,200 | 1,766 |
| 11/7/2012 | 12/7/2012 | Remediation | Macco-Hadinger LLC | Various Items | 715 | 242 |
| 11/7/2012 | 12/7/2012 | Remediation | The Home Depot | Miscellaneous | 549 | 186 |
| 11/9/2012 | 12/9/2012 | Remediation | Kevin Polkow | Polkow Construction - Remediation | 2,500 | 846 |
| 11/10/2012 | 12/10/2012 | Remediation | Sherwin Williams | Paint | 15 | 5 |
| 11/12/2012 | 12/12/2012 | Remediation | Wayfair | Miscellaneous | 307 | 104 |
| 11/13/2012 | 12/13/2012 | Remediation | Ray Allen Electric | Ray Allen Electric | 2,500 | 845 |
| 11/13/2012 | 12/13/2012 | Remediation | Kevin Polkow | Polkow Construction - Remediation | 3,000 | 1,014 |
| 11/14/2012 | 12/14/2012 | Remediation | Todd | Tiles | 400 | 135 |
| 11/14/2012 | 12/14/2012 | Remediation | Tile Outlets of America | Medallion Polished | 158 | 53 |
| 11/15/2012 | 12/15/2012 | Remediation | Raymond Building Supply | Replacement of all appliances | 1,107 | 374 |
| 11/19/2012 | 12/19/2012 | Remediation | Masters Touch | Remediation Work | 570 | 192 |
| 11/19/2012 | 12/19/2012 | Remediation | Two Men and a Truck | Moving Expense | 600 | 202 |
| 11/26/2012 | 12/26/2012 | Remediation | Ray Allen Electric | Ray Allen Electric | 75 | 25 |
| 12/10/2012 | 1/9/2013 | Remediation | Bed Bath & Beyond | Miscellaneous | 25 | 9 |
| 12/10/2012 | 1/9/2013 | Remediation | The Home Depot | Miscellaneous | 11 | 4 |
| 12/18/2012 | 1/17/2013 | Remediation | Ray Allen Electric | Ray Allen Electric | 262 | 87 |
| 1/18/2013 | 2/17/2013 | Remediation | PCC Tile | CornerCaddy Shelf Crema Sahara | 95 | 31 |
| 1/26/2013 | 2/25/2013 | Remediation | The Home Depot | Miscellaneous | 75 | 25 |
| 2/11/2013 | 3/13/2013 | Remediation | Bonita Tile Market | Various Items | 634 | 207 |
| 3/4/2013 | 4/3/2013 | Remediation | My Tile Backsplash | Bella Glass Tiles Opulence 1 x 1 Mosaic Series | 902 | 292 |
| 4/1/2013 | 5/1/2013 | Remediation | Landmark Metalcoat | Tumbled Large Bar Liner | 120 | 39 |
| 4/5/2013 | 5/5/2013 | Remediation | Kevin Polkow | Polkow Construction - Remediation | 699 | 223 |
| 4/24/2013 | 5/24/2013 | Remediation | Lowes | Brown Slide Dimmer & Decorator Rocker Nylon Wall | 24 | 8 |
| 5/17/2013 | 6/16/2013 | Remediation | Dennis Reynolds | Outlets - Kitchen Changed | 81 | 26 |
| 6/13/2013 | 7/13/2013 | Remediation | Gulf Stone Construction | Kitchen Backsplash Installation | 1,100 | 341 |
| 6/18/2013 | 7/18/2013 | Remediation | Gulf Stone Construction | Repair Work | 650 | 201 |
| 8/6/2013 | 9/5/2013 | Remediation | Kevin Polkow | Polkow Construction - Remediation | 600 | 182 |
| 8/8/2013 | 9/7/2013 | Remediation | Kevin Polkow | Polkow Construction - Remediation | 600 | 182 |
| 8/14/2013 | 9/13/2013 | Remediation | Kevin Polkow | Polkow Construction - Remediation | 1,000 | 302 |
| 8/27/2013 | 9/26/2013 | Remediation | Ray Allen Electric | Ray Allen Electric | 900 | 271 |
| 5/2/2014 | 6/1/2014 | Remediation | Amazon | Moen Kingsley 24-Inch Towel Bar | 46 | 12 |
| 8/2/2017 | 9/1/2017 | Remediation | Tom Collins | Old Fixtures Repaired | 240 | 27 |
| 8/2/2017 | 9/1/2017 | Remediation | Tom Collins | Old Fixtures Repaired | 130 | 14 |
| 8/17/2017 | 9/16/2017 | Remediation | Time Shop | Grandfather Clock Repair | 180 | 20 |
| | | **Total Remediation** | | | $ 144,466 | $ 49,504 |
| 9/30/2009 | 10/30/2009 | Alternate Living Expenses | Robert Rorebeck | Bill of Sale - Furniture - Colonial Condo | $ 2,500 | $ - |
| 10/1/2009 | 10/31/2009 | Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condo | 850 | 436 |
| 10/1/2009 | 10/31/2009 | Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 99 | 51 |
| 10/26/2009 | 11/25/2009 | Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 30 | 15 |
| 11/1/2009 | 12/1/2009 | Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condo | 850 | 432 |
| 11/1/2009 | 12/1/2009 | Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 50 | 25 |
| 11/1/2009 | 12/1/2009 | Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 56 | 28 |
| 11/23/2009 | 12/23/2009 | Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 50 | 26 |
| 12/1/2009 | 12/31/2009 | Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condo | 850 | 426 |
| 12/1/2009 | 12/31/2009 | Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 152 | 76 |
| 12/28/2009 | 1/27/2010 | Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 51 | 25 |
| 1/1/2010 | 1/31/2010 | Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condo | 850 | 421 |
| 1/1/2010 | 1/31/2010 | Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 104 | 51 |
| 1/27/2010 | 2/26/2010 | Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 50 | 25 |
| 2/1/2010 | 3/3/2010 | Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condo | 850 | 417 |
| 2/1/2010 | 3/3/2010 | Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 104 | 51 |
| 3/1/2010 | 3/31/2010 | Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condo | 850 | 416 |
| 3/1/2010 | 3/31/2010 | Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 104 | 50 |
| 3/1/2010 | 3/31/2010 | Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 46 | 22 |
| 3/29/2010 | 4/28/2010 | Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 41 | 20 |
| 4/1/2010 | 5/1/2010 | Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condo | 850 | 408 |
| 4/1/2010 | 5/1/2010 | Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 104 | 50 |
| 4/26/2010 | 5/26/2010 | Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 39 | 19 |

Case 1:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 130 of 209 of
262
Case 1:11-cv-22408-MGC Document 202-1 Entered on FLSD Docket 08/15/2013 Page 130 of 262

Exhibit 6.3
Calculation of Prejudgment Interest Summary - William and Vicki Foster

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Vendor | Description | Amount | Total Interest Through 7/22/2019 |
|---|---|---|---|---|---|---|
| 5/1/2010 | 5/31/2010 | Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condo | 850 | 405 |
| 5/1/2010 | 5/31/2010 | Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 104 | 49 |
| 5/28/2010 | 6/27/2010 | Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 51 | 24 |
| 6/1/2010 | 7/1/2010 | Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condo | 850 | 400 |
| 6/1/2010 | 7/1/2010 | Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 136 | 64 |
| 6/25/2010 | 7/25/2010 | Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 67 | 32 |
| 7/1/2010 | 7/31/2010 | Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condo | 850 | 396 |
| 7/1/2010 | 7/31/2010 | Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 136 | 63 |
| 7/27/2010 | 8/26/2010 | Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 49 | 23 |
| 8/1/2010 | 8/31/2010 | Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condo | 850 | 392 |
| 8/1/2010 | 8/31/2010 | Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 136 | 63 |
| 8/25/2010 | 9/24/2010 | Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 74 | 34 |
| 9/1/2010 | 10/1/2010 | Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condo | 850 | 388 |
| 9/1/2010 | 10/1/2010 | Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 136 | 62 |
| 9/24/2010 | 10/24/2010 | Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 76 | 34 |
| 10/1/2010 | 10/31/2010 | Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condo | 850 | 383 |
| 10/1/2010 | 10/31/2010 | Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 86 | 38 |
| 10/25/2010 | 11/24/2010 | Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 74 | 33 |
| 11/1/2010 | 12/1/2010 | Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condo | 850 | 379 |
| 11/1/2010 | 12/1/2010 | Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 95 | 42 |
| 11/29/2010 | 12/29/2010 | Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 36 | 16 |
| 12/1/2010 | 12/31/2010 | Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condo | 850 | 374 |
| 12/15/2010 | 1/14/2011 | Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 95 | 42 |
| 12/27/2010 | 1/26/2011 | Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 43 | 19 |
| 1/1/2011 | 1/31/2011 | Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condo | 850 | 370 |
| 1/14/2011 | 2/13/2011 | Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 95 | 41 |
| 1/26/2011 | 2/25/2011 | Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 42 | 18 |
| 2/1/2011 | 3/3/2011 | Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condo | 850 | 366 |
| 2/15/2011 | 3/17/2011 | Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 95 | 41 |
| 2/25/2011 | 3/27/2011 | Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 58 | 25 |
| 3/1/2011 | 3/31/2011 | Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condo | 850 | 362 |
| 3/15/2011 | 4/14/2011 | Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 95 | 40 |
| 3/25/2011 | 4/24/2011 | Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 38 | 16 |
| 4/1/2011 | 5/1/2011 | Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condo | 850 | 358 |
| 4/13/2011 | 5/13/2011 | Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 95 | 40 |
| 4/26/2011 | 5/26/2011 | Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 62 | 26 |
| 5/1/2011 | 5/31/2011 | Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condo | 850 | 354 |
| 5/16/2011 | 6/15/2011 | Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 100 | 41 |
| 5/25/2011 | 6/24/2011 | Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 59 | 24 |
| 6/1/2011 | 7/1/2011 | Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condo | 850 | 349 |
| 6/1/2011 | 7/1/2011 | Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 90 | 37 |
| 6/23/2011 | 7/23/2011 | Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 75 | 31 |
| 7/7/2011 | 8/6/2011 | Alternate Living Expenses | Jack Walsh | Rent/Deposit | 2,358 | 958 |
| 7/8/2011 | 8/7/2011 | Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 99 | 40 |
| 7/9/2011 | 8/8/2011 | Alternate Living Expenses | Sherwin Williams | Paint | 59 | 24 |
| 7/11/2011 | 8/10/2011 | Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 94 | 38 |
| 7/12/2011 | 8/11/2011 | Alternate Living Expenses | U-Haul Moving & Storage | Moving Expense | 26 | 10 |
| 7/13/2011 | 8/12/2011 | Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 16 | 6 |
| 7/28/2011 | 8/27/2011 | Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 99 | 40 |
| 8/1/2011 | 8/31/2011 | Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 94 | 38 |
| 8/22/2011 | 9/21/2011 | Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 34 | 14 |
| 8/25/2011 | 9/24/2011 | Alternate Living Expenses | Jack Walsh | Rent | 905 | 359 |
| 8/29/2011 | 9/28/2011 | Alternate Living Expenses | Jack Walsh | Water bill | 63 | 25 |
| 9/1/2011 | 10/1/2011 | Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 114 | 45 |
| 9/23/2011 | 10/23/2011 | Alternate Living Expenses | Jack Walsh | Rent & Water | 968 | 382 |
| 9/23/2011 | 10/23/2011 | Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 150 | 59 |
| 10/12/2011 | 11/11/2011 | Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 218 | 86 |
| 10/17/2011 | 11/16/2011 | Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 95 | 37 |
| 10/21/2011 | 11/20/2011 | Alternate Living Expenses | Jack Walsh | Rent & Water | 985 | 383 |
| 10/24/2011 | 11/23/2011 | Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 128 | 50 |
| 11/22/2011 | 12/22/2011 | Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 87 | 34 |
| 11/23/2011 | 12/23/2011 | Alternate Living Expenses | Jack Walsh | Rent & Water | 970 | 373 |
| 11/25/2011 | 12/25/2011 | Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 87 | 33 |
| 11/26/2011 | 12/26/2011 | Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 57 | 22 |
| 12/1/2011 | 12/31/2011 | Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 95 | 36 |
| 12/22/2011 | 1/21/2012 | Alternate Living Expenses | Jack Walsh | Rent & Water | 967 | 371 |
| 12/27/2011 | 1/26/2012 | Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 71 | 27 |
| 1/25/2012 | 2/24/2012 | Alternate Living Expenses | Jack Walsh | Rent & Water | 965 | 366 |
| 1/25/2012 | 2/24/2012 | Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 87 | 33 |
| 1/27/2012 | 2/26/2012 | Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 64 | 24 |
| 2/23/2012 | 3/24/2012 | Alternate Living Expenses | Jack Walsh | Rent & Water | 977 | 367 |
| 2/27/2012 | 3/28/2012 | Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 63 | 23 |
| 2/27/2012 | 3/28/2012 | Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 87 | 32 |
| 3/23/2012 | 4/22/2012 | Alternate Living Expenses | Jack Walsh | Rent & Water | 977 | 363 |
| 3/26/2012 | 4/25/2012 | Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 88 | 32 |
| 3/27/2012 | 4/26/2012 | Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 80 | 30 |
| 4/23/2012 | 5/23/2012 | Alternate Living Expenses | Jack Walsh | Rent & Water | 1,003 | 369 |
| 4/25/2012 | 5/25/2012 | Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 88 | 32 |
| 4/26/2012 | 5/26/2012 | Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 112 | 41 |
| 5/24/2012 | 6/23/2012 | Alternate Living Expenses | Jack Walsh | Rent & Water | 1,024 | 373 |
| 5/25/2012 | 6/24/2012 | Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 90 | 32 |
| 5/31/2012 | 6/30/2012 | Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 151 | 54 |
| 6/22/2012 | 7/22/2012 | Alternate Living Expenses | Jack Walsh | Rent & Water | 1,018 | 366 |
| 6/25/2012 | 7/25/2012 | Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 88 | 31 |
| 6/27/2012 | 7/27/2012 | Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 181 | 64 |
| 7/25/2012 | 8/24/2012 | Alternate Living Expenses | Jack Walsh | Rent & Water | 1,032 | 367 |
| 7/25/2012 | 8/24/2012 | Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 109 | 38 |
| 7/27/2012 | 8/26/2012 | Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 140 | 49 |
| 8/27/2012 | 9/26/2012 | Alternate Living Expenses | Jack Walsh | Rent & Water | 1,017 | 358 |
| 8/27/2012 | 9/26/2012 | Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 143 | 50 |
| 8/27/2012 | 9/26/2012 | Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 109 | 38 |
| 9/25/2012 | 10/25/2012 | Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 109 | 38 |
| 9/26/2012 | 10/26/2012 | Alternate Living Expenses | Jack Walsh | Rent & Water | 1,030 | 355 |
| 9/28/2012 | 10/28/2012 | Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 169 | 58 |
| 10/12/2012 | 11/11/2012 | Alternate Living Expenses | Jack Walsh | Water bill | 58 | 20 |
| 10/25/2012 | 11/24/2012 | Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 109 | 37 |

Exhibit 6.3
Calculation of Prejudgment Interest Summary - William and Vicki Foster

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Vendor | Description | Amount | Total Interest Through 7/22/2019 |
|---|---|---|---|---|---|---|
| 10/26/2012 | 11/25/2012 | Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 140 | 48 |
| 11/17/2012 | 12/17/2012 | Alternate Living Expenses | Jack Walsh | Rent | 545 | 185 |
| 11/26/2012 | 12/26/2012 | Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 89 | 30 |
| 12/7/2012 | 1/6/2013 | Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 22 | 7 |
| | | **Alternate Living Expenses Total** | | | $ 44,531 | $ 17,591 |
| 5/13/2009 | 6/12/2009 | Personal Property Damage Expense | Sally Beauty Supply | Hair Cutting Shaver Replaced - Andis T-Light | $ 38 | $ 21 |
| 5/22/2009 | 6/21/2009 | Personal Property Damage Expense | Walmart | iPod Nano | 135 | 73 |
| 6/9/2009 | 7/9/2009 | Personal Property Damage Expense | Costco | Chair - Sling Chaise | 136 | 73 |
| 6/24/2009 | 7/24/2009 | Personal Property Damage Expense | QVC | Nextar GPS Navigation system | 146 | 78 |
| 7/1/2009 | 7/31/2009 | Personal Property Damage Expense | Costco | iPod 8G Silver | 134 | 71 |
| 7/7/2009 | 8/6/2009 | Personal Property Damage Expense | Overstock | Bedspread Replacement | 535 | 285 |
| 8/6/2009 | 9/5/2009 | Personal Property Damage Expense | QVC | Surge Protector | 62 | 33 |
| 9/1/2009 | 10/1/2009 | Personal Property Damage Expense | Hard drive remover | Hard drive remover | 20 | 10 |
| 9/4/2009 | 10/4/2009 | Personal Property Damage Expense | QVC | Clairisonic Skin | 127 | 66 |
| 9/20/2009 | 10/20/2009 | Personal Property Damage Expense | Exchange Catalog & Online Store | Toaster Oven | 180 | 93 |
| 9/28/2009 | 10/28/2009 | Personal Property Damage Expense | TJMaxx | Household Items | 16 | 8 |
| 9/28/2009 | 10/28/2009 | Personal Property Damage Expense | Costco | Hoover Steam Vac | 159 | 82 |
| 9/29/2009 | 10/29/2009 | Personal Property Damage Expense | The Stainless Steel Store | Various Kitchen Items | 44 | 23 |
| 10/1/2009 | 10/31/2009 | Personal Property Damage Expense | StormTech Shutters, Inc. | Storm Shutters | 8,030 | 4,122 |
| 10/1/2009 | 10/31/2009 | Personal Property Damage Expense | Thomasville Ernest Hemingway Furniture | Bedroom Furniture - King Thompson Falls Poster Bed | 2,124 | 1,090 |
| 10/1/2009 | 10/31/2009 | Personal Property Damage Expense | Thomasville Ernest Hemingway Furniture | Bedroom Furniture - Malawi Dresser with Marble Top | 1,869 | 959 |
| 10/1/2009 | 10/31/2009 | Personal Property Damage Expense | Thomasville Ernest Hemingway Furniture | Bedroom Furniture - Tanganyika Drawer Chest | 1,529 | 785 |
| 10/1/2009 | 10/31/2009 | Personal Property Damage Expense | Thomasville Ernest Hemingway Furniture | Bedroom Furniture - Manyara Media Base | 1,444 | 741 |
| 10/1/2009 | 10/31/2009 | Personal Property Damage Expense | Thomasville Ernest Hemingway Furniture | Bedroom Furniture - Manyara Media Hutch | 1,444 | 741 |
| 10/1/2009 | 10/31/2009 | Personal Property Damage Expense | Thomasville Ernest Hemingway Furniture | Bedroom Furniture - Nairobi Night Stand with Marble Top | 807 | 414 |
| 10/1/2009 | 10/31/2009 | Personal Property Damage Expense | Thomasville Ernest Hemingway Furniture | Bedroom Furniture - Steppe Octagonal Mirror | 509 | 261 |
| 10/1/2009 | 10/31/2009 | Personal Property Damage Expense | Havertys Furniture | Office Furniture - Westbury Desk with Hutch | 1,900 | 975 |
| 10/1/2009 | 10/31/2009 | Personal Property Damage Expense | Havertys Furniture | Office Furniture - Westbury L-Shaped Desk | 1,600 | 821 |
| 10/1/2009 | 10/31/2009 | Personal Property Damage Expense | Havertys Furniture | Office Furniture - Martin's Landing File Cabinet | 500 | 257 |
| 10/1/2009 | 10/31/2009 | Personal Property Damage Expense | Havertys Furniture | Office Furniture - Martin's Landing Office Chair | 400 | 205 |
| 10/1/2009 | 10/31/2009 | Personal Property Damage Expense | Golden Lighting | Replace & Lighting Fixtures from Golden Lighting | 3,942 | 2,023 |
| 10/1/2009 | 10/31/2009 | Personal Property Damage Expense | Amazon | Langston Grandfather Clock | 2,876 | 1,476 |
| 10/1/2009 | 10/31/2009 | Personal Property Damage Expense | Hayneedle | Replacement - Round Gold Mirror | 305 | 157 |
| 10/1/2009 | 10/31/2009 | Personal Property Damage Expense | Chairish | Replacement - Italian Mirror Pitted | 695 | 357 |
| 10/2/2009 | 11/1/2009 | Personal Property Damage Expense | Overstock | Bar Stools | 211 | 108 |
| 10/4/2009 | 11/3/2009 | Personal Property Damage Expense | QVC | Leather Carrier | 238 | 122 |
| 10/4/2009 | 11/3/2009 | Personal Property Damage Expense | Best Buy | Television, Home Theater | 1,071 | 549 |
| 10/4/2009 | 11/3/2009 | Personal Property Damage Expense | Costco | Water Pik Jet | 73 | 37 |
| 10/7/2009 | 11/6/2009 | Personal Property Damage Expense | Sears | Alarm Clock | 31 | 16 |
| 10/7/2009 | 11/6/2009 | Personal Property Damage Expense | Walgreens | Ace Bandage & Batteries | 13 | 7 |
| 10/7/2009 | 11/6/2009 | Personal Property Damage Expense | Homegoods | Household Items | 42 | 22 |
| 10/8/2009 | 11/7/2009 | Personal Property Damage Expense | Overstock | Rug, Comforter, Lamp | 431 | 221 |
| 10/9/2009 | 11/8/2009 | Personal Property Damage Expense | Overstock | Tables | 106 | 54 |
| 10/10/2009 | 11/9/2009 | Personal Property Damage Expense | QVC | Rubberized WireDrain Tools | 21 | 11 |
| 10/10/2009 | 11/9/2009 | Personal Property Damage Expense | Tools | Tools | 31 | 16 |
| 10/12/2009 | 11/11/2009 | Personal Property Damage Expense | Home Goods | Household Items | 138 | 71 |
| 10/12/2009 | 11/11/2009 | Personal Property Damage Expense | TJMaxx | Household Items | 29 | 15 |
| 10/13/2009 | 11/12/2009 | Personal Property Damage Expense | Bed Bath & Beyond | Various Household Items | 15 | 8 |
| 10/13/2009 | 11/12/2009 | Personal Property Damage Expense | Diffuser | Diffuser | 35 | 18 |
| 10/14/2009 | 11/13/2009 | Personal Property Damage Expense | QVC | InStyler | 95 | 49 |
| 10/15/2009 | 11/14/2009 | Personal Property Damage Expense | duster | duster | 12 | 6 |
| 10/16/2009 | 11/15/2009 | Personal Property Damage Expense | Costco | Nutrafoam Queen & Pillows | 165 | 84 |
| 10/27/2009 | 11/26/2009 | Personal Property Damage Expense | Best Buy | Disc Player | 180 | 91 |
| 10/27/2009 | 11/26/2009 | Personal Property Damage Expense | Bed Bath & Beyond | Kitchen Items Replaced | 24 | 12 |
| 10/28/2009 | 11/27/2009 | Personal Property Damage Expense | QVC | Flashlight | 20 | 10 |
| 11/2/2009 | 12/2/2009 | Personal Property Damage Expense | QVC | Sterling Silver Earrings | 49 | 25 |
| 11/4/2009 | 12/4/2009 | Personal Property Damage Expense | QVC | Earrings | 36 | 18 |
| 11/9/2009 | 12/9/2009 | Personal Property Damage Expense | HSN | Diffusers | 102 | 51 |
| 11/9/2009 | 12/9/2009 | Personal Property Damage Expense | Home Goods | Household Items | 130 | 66 |
| 11/11/2009 | 12/11/2009 | Personal Property Damage Expense | TJMaxx | Household Items | 60 | 30 |
| 11/11/2009 | 12/11/2009 | Personal Property Damage Expense | Home Goods | Household Items | 56 | 28 |
| 11/13/2009 | 12/13/2009 | Personal Property Damage Expense | Calendar | Calendar | 32 | 16 |
| 11/15/2009 | 12/15/2009 | Personal Property Damage Expense | Best Buy | Computer, Router, etc. | 2,745 | 1,382 |
| 11/16/2009 | 12/16/2009 | Personal Property Damage Expense | Best Buy | Phones | 117 | 59 |
| 11/16/2009 | 12/16/2009 | Personal Property Damage Expense | kitchen | kitchen, clothes, giftware | 94 | 47 |
| 11/20/2009 | 12/20/2009 | Personal Property Damage Expense | Bed Bath & Beyond | Axis OTC Basket | 13 | 6 |
| 11/23/2009 | 12/23/2009 | Personal Property Damage Expense | Bulbs | Bulbs | 12 | 6 |
| 11/27/2009 | 12/27/2009 | Personal Property Damage Expense | Lowes | Christmas tree, ornaments, outlet | 91 | 45 |
| 11/28/2009 | 12/28/2009 | Personal Property Damage Expense | American Signature | American Signature | 105 | 53 |
| 11/30/2009 | 12/30/2009 | Personal Property Damage Expense | Ulta | Curling Iron | 49 | 25 |
| 12/15/2009 | 1/14/2010 | Personal Property Damage Expense | QVC | Skillet | 18 | 9 |
| 12/15/2009 | 1/14/2010 | Personal Property Damage Expense | Florida Plumbers and Backflow | Florida Plumbers and Backflow | 174 | 87 |
| 12/15/2009 | 1/14/2010 | Personal Property Damage Expense | shoes | shoes | 71 | 35 |
| 12/16/2009 | 1/15/2010 | Personal Property Damage Expense | Sally Beauty Supply | Sally beauty supply, curlers | 26 | 13 |
| 12/21/2009 | 1/20/2010 | Personal Property Damage Expense | QVC | Leather Crossbody Bag | 126 | 62 |
| 12/28/2009 | 1/27/2010 | Personal Property Damage Expense | Walmart | Household Items | 73 | 36 |
| 12/31/2009 | 1/30/2010 | Personal Property Damage Expense | Laserlink | Laserlink | 159 | 79 |
| 1/4/2010 | 2/3/2010 | Personal Property Damage Expense | storage containers | storage containers | 30 | 15 |
| 1/11/2010 | 2/10/2010 | Personal Property Damage Expense | TJMaxx | Kitchen Items | 11 | 5 |
| 1/11/2010 | 2/10/2010 | Personal Property Damage Expense | clothing and kitchen | clothing and kitchen | 30 | 15 |
| 1/12/2010 | 2/11/2010 | Personal Property Damage Expense | Drycleaning | Jacket, Dress, & Pants | 36 | 18 |
| 1/12/2010 | 2/11/2010 | Personal Property Damage Expense | household goods | household goods | 25 | 12 |
| 1/13/2010 | 2/12/2010 | Personal Property Damage Expense | Bed Bath & Beyond | Towels | 42 | 21 |
| 1/13/2010 | 2/12/2010 | Personal Property Damage Expense | Marshalls | Marshalls | 37 | 18 |
| 1/14/2010 | 2/13/2010 | Personal Property Damage Expense | QVC | Bakeware | 20 | 10 |
| 1/15/2010 | 2/14/2010 | Personal Property Damage Expense | Lamps Plus | Two Lamps | 210 | 103 |
| 2/5/2010 | 3/7/2010 | Personal Property Damage Expense | shoes | shoes | 40 | 19 |
| 2/21/2010 | 3/23/2010 | Personal Property Damage Expense | tiebacks | tiebacks, stacking totes, candle, caddy | 59 | 29 |
| 3/10/2010 | 4/9/2010 | Personal Property Damage Expense | Costco | Lounge Chair | 46 | 22 |
| 3/23/2010 | 4/22/2010 | Personal Property Damage Expense | Trunk set | Trunk set | 120 | 58 |
| 3/26/2010 | 4/25/2010 | Personal Property Damage Expense | glasses | glasses | 63 | 30 |
| 3/31/2010 | 4/30/2010 | Personal Property Damage Expense | kitchen & accessories | kitchen & accessories, | 61 | 29 |
| 4/4/2010 | 5/4/2010 | Personal Property Damage Expense | QVC | Tarnish Remover Kit | 23 | 11 |
| 4/18/2010 | 5/18/2010 | Personal Property Damage Expense | QVC | Bakeware | 53 | 25 |
| 4/23/2010 | 5/23/2010 | Personal Property Damage Expense | HSN | Therapeutic Massager | 138 | 66 |
| 4/26/2010 | 5/26/2010 | Personal Property Damage Expense | TJ Maxx | Ladies Shoes | 42 | 20 |

Exhibit 6.3
Calculation of Prejudgment Interest Summary - William and Vicki Foster

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Vendor | Description | Amount | Total Interest Through 7/22/2019 |
|---|---|---|---|---|---|---|
| 4/26/2010 | 5/26/2010 | Personal Property Damage Expense | Marshalls | Clothing | 123 | 58 |
| 4/27/2010 | 5/27/2010 | Personal Property Damage Expense | HSN | Closet Set | 42 | 20 |
| 4/28/2010 | 5/28/2010 | Personal Property Damage Expense | Marshalls | Houseware & Shoes | 107 | 51 |
| 5/9/2010 | 6/8/2010 | Personal Property Damage Expense | QVC | Bose music system | 742 | 351 |
| 5/16/2010 | 6/15/2010 | Personal Property Damage Expense | QVC | Earrings | 27 | 13 |
| 5/16/2010 | 6/15/2010 | Personal Property Damage Expense | Marshalls | Houseware and Shoes | 55 | 26 |
| 5/17/2010 | 6/16/2010 | Personal Property Damage Expense | QVC | Earrings | 36 | 17 |
| 5/18/2010 | 6/17/2010 | Personal Property Damage Expense | Adams Cleaners | Drycleaning | 17 | 8 |
| 5/19/2010 | 6/18/2010 | Personal Property Damage Expense | QVC | QVC, shoe organizer | 29 | 14 |
| 5/24/2010 | 6/23/2010 | Personal Property Damage Expense | clothes | clothes, luggage | 98 | 46 |
| 6/2/2010 | 7/2/2010 | Personal Property Damage Expense | QVC | Storage Totes | 76 | 36 |
| 6/2/2010 | 7/2/2010 | Personal Property Damage Expense | TJMaxx | Household Items | 20 | 9 |
| 6/2/2010 | 7/2/2010 | Personal Property Damage Expense | QVC | Steam & Sweep Floor Sanitizer | 123 | 58 |
| 7/18/2010 | 8/17/2010 | Personal Property Damage Expense | Keurig Carousel | Keurig Carousel | 29 | 13 |
| 7/18/2010 | 8/17/2010 | Personal Property Damage Expense | Multi purpose knife tool | Multi purpose knife tool | 23 | 10 |
| 7/19/2010 | 8/18/2010 | Personal Property Damage Expense | shoes and clothes | shoes and clothes | 99 | 46 |
| 7/20/2010 | 8/19/2010 | Personal Property Damage Expense | Frontgate | Greek Key Rug | 144 | 66 |
| 7/23/2010 | 8/22/2010 | Personal Property Damage Expense | HSN | Shoe Stretchers | 25 | 11 |
| 8/11/2010 | 9/10/2010 | Personal Property Damage Expense | Comcast | Installation - Colonial Country Club | 55 | 25 |
| 9/3/2010 | 10/3/2010 | Personal Property Damage Expense | The Ft. Meyers Store | Tervis Tumbler Cups | 43 | 20 |
| 9/7/2010 | 10/7/2010 | Personal Property Damage Expense | Costco | Vita-Mix Blender | 689 | 313 |
| 11/12/2010 | 12/12/2010 | Personal Property Damage Expense | Touch of Class | Serenity Wall Sculpture | 265 | 117 |
| 11/15/2010 | 12/15/2010 | Personal Property Damage Expense | Touch of Class | Wall Sculpture | 261 | 115 |
| 11/27/2010 | 12/27/2010 | Personal Property Damage Expense | Amazon | Steamer | 32 | 14 |
| 12/16/2010 | 1/15/2011 | Personal Property Damage Expense | Home Goods | Housewares & Christmas Items | 42 | 19 |
| 12/17/2010 | 1/16/2011 | Personal Property Damage Expense | Tools For Wellness | Necklace | 210 | 92 |
| 1/13/2011 | 2/12/2011 | Personal Property Damage Expense | Overstock | Jewelry | 223 | 97 |
| 1/15/2011 | 2/14/2011 | Personal Property Damage Expense | Inversion Table | Inversion Table | 233 | 101 |
| 1/20/2011 | 2/19/2011 | Personal Property Damage Expense | QVC | Christmas lights | 53 | 23 |
| 1/24/2011 | 2/23/2011 | Personal Property Damage Expense | walgreens photos | walgreens photos | 23 | 10 |
| 1/31/2011 | 3/2/2011 | Personal Property Damage Expense | TRUE | Mens Shoes | 106 | 46 |
| 2/1/2011 | 3/3/2011 | Personal Property Damage Expense | QVC | Ezhanger | 27 | 11 |
| 2/5/2011 | 3/7/2011 | Personal Property Damage Expense | HSN | Nextbook Tablet Case | 42 | 18 |
| 2/5/2011 | 3/7/2011 | Personal Property Damage Expense | Nextbook touchscreen | Nextbook Touchscreen | 201 | 86 |
| 2/24/2011 | 3/26/2011 | Personal Property Damage Expense | QVC | Adhesive strips kit | 24 | 10 |
| 3/17/2011 | 4/16/2011 | Personal Property Damage Expense | Footsmart | Various Sandals | 125 | 53 |
| 4/15/2011 | 5/15/2011 | Personal Property Damage Expense | Select Comfort | Bedding Replacement | 7,256 | 3,031 |
| 4/21/2011 | 5/21/2011 | Personal Property Damage Expense | Target | Men's Jewelry | 61 | 26 |
| 6/14/2011 | 7/14/2011 | Personal Property Damage Expense | Bealls | Mens Shoes | 74 | 30 |
| 7/5/2011 | 8/4/2011 | Personal Property Damage Expense | HSN | Digital Slim Stick Vacuum | 333 | 135 |
| 9/4/2011 | 10/4/2011 | Personal Property Damage Expense | Frontgate | Towel stand | 199 | 79 |
| 9/21/2011 | 10/21/2011 | Personal Property Damage Expense | Frontgate | Volterra Two Sided Clock | 199 | 78 |
| 12/3/2011 | 1/2/2012 | Personal Property Damage Expense | Amazon | Magnetic Ball Marker Necklaces | 79 | 30 |
| 12/3/2011 | 1/2/2012 | Personal Property Damage Expense | Amazon | Bella Crystal Ball Markers | 27 | 10 |
| 12/19/2011 | 1/18/2012 | Personal Property Damage Expense | Swarovski | Circle Pierced Earrings | 239 | 91 |
| 3/8/2012 | 4/7/2012 | Personal Property Damage Expense | Costco | Garage Door Opener | 265 | 98 |
| 6/17/2012 | 7/17/2012 | Personal Property Damage Expense | Build.com | Outdoor Lighting Fixtures | 292 | 104 |
| 6/28/2012 | 7/28/2012 | Personal Property Damage Expense | Lighting New York | Golden Lighting Rockefeller Minio Pendant | 185 | 66 |
| 7/2/2012 | 8/1/2012 | Personal Property Damage Expense | Lighting New York | Lighting Fixtures | 243 | 86 |
| 6/11/2012 | 8/10/2012 | Personal Property Damage Expense | Overstock | Silver Black Onyx Earrings | 68 | 24 |
| 7/19/2012 | 8/18/2012 | Personal Property Damage Expense | Kiefers.com | 25 Chrome Bowties | 26 | 9 |
| 8/5/2012 | 9/4/2012 | Personal Property Damage Expense | Lighting New York | Various Fans - Family Room | 491 | 172 |
| 8/5/2012 | 9/4/2012 | Personal Property Damage Expense | Lighting New York | Various Fans - Family Room | 471 | 165 |
| 8/5/2012 | 9/4/2012 | Personal Property Damage Expense | Build.com | Single Light Small Outdoor Fixture | 108 | 38 |
| 8/20/2012 | 9/19/2012 | Personal Property Damage Expense | Amazon | Moen Kitchen Faucet | 100 | 35 |
| 8/27/2012 | 9/26/2012 | Personal Property Damage Expense | Amazon | Pizza Peel & Stoneware | 80 | 28 |
| 9/27/2012 | 10/27/2012 | Personal Property Damage Expense | Groupon | Blood Pressure Monitor | 24 | 8 |
| 10/27/2012 | 11/26/2012 | Personal Property Damage Expense | Build.com | Handleset Interior Lever | 158 | 54 |
| 10/29/2012 | 11/28/2012 | Personal Property Damage Expense | Budget Blinds | Budget Blinds | 5,084 | 1,728 |
| 10/31/2012 | 11/30/2012 | Personal Property Damage Expense | Hayneedle | Howard Elliott Chateau Wall Mirror | 431 | 146 |
| 11/2/2012 | 12/2/2012 | Personal Property Damage Expense | Budget Blinds | Budget blinds | 2,450 | 831 |
| 11/30/2012 | 12/30/2012 | Personal Property Damage Expense | Best Buy | Canon Battery Travel Charger | 45 | 15 |
| 12/5/2012 | 1/4/2013 | Personal Property Damage Expense | Hayneedle | Howard Elliott Chateau Wall Mirror | 227 | 76 |
| 12/19/2012 | 1/18/2013 | Personal Property Damage Expense | Costco | Aerobed, Bed in A Minute, Queen | 74 | 25 |
| 1/23/2013 | 2/22/2013 | Personal Property Damage Expense | Shooz | Shoes | 102 | 33 |
| 1/27/2013 | 2/26/2013 | Personal Property Damage Expense | Marshall Rousso | Earrings | 32 | 11 |
| 2/28/2013 | 3/30/2013 | Personal Property Damage Expense | Amazon | Stackable Expandable Shoe Rack | 50 | 16 |
| 3/1/2013 | 3/31/2013 | Personal Property Damage Expense | Lowes | Moen Kingsley Chrome Robe Hook | 23 | 8 |
| 3/28/2013 | 4/27/2013 | Personal Property Damage Expense | JCPenney | Curtains | 84 | 27 |
| 3/29/2013 | 4/28/2013 | Personal Property Damage Expense | Lamps Plus | Lamp Shade replacements | 80 | 26 |
| 3/29/2013 | 4/28/2013 | Personal Property Damage Expense | JCPenney | Curtains | 79 | 25 |
| 4/4/2013 | 5/4/2013 | Personal Property Damage Expense | Costco | Barstools | 541 | 173 |
| 4/4/2013 | 5/4/2013 | Personal Property Damage Expense | Costco | AcuRite - NOAA Weather Radio | 37 | 12 |
| 4/5/2013 | 5/5/2013 | Personal Property Damage Expense | Best Buy | Surround Sound Speakers | 252 | 81 |
| 4/12/2013 | 5/12/2013 | Personal Property Damage Expense | Best Buy | DVD/VCR Replacement | 167 | 53 |
| 4/23/2013 | 5/23/2013 | Personal Property Damage Expense | Lenoir Empire Furniture | Round Dining Room Table | 1,165 | 369 |
| 4/25/2013 | 5/25/2013 | Personal Property Damage Expense | Lowes | Garage cabinets | 753 | 238 |
| 5/7/2013 | 6/6/2013 | Personal Property Damage Expense | JCPenney | Curtains | 64 | 20 |
| 5/9/2013 | 6/8/2013 | Personal Property Damage Expense | JCPenney | Curtains | 138 | 43 |
| 5/15/2013 | 6/14/2013 | Personal Property Damage Expense | JCPenney | Curtains | 59 | 19 |
| 5/17/2013 | 6/16/2013 | Personal Property Damage Expense | Dennis Reynolds | Wiring Surround Sound | 81 | 26 |
| 6/1/2013 | 7/1/2013 | Personal Property Damage Expense | Completely Connected | Program Remote Control | 120 | 37 |
| 6/13/2013 | 7/13/2013 | Personal Property Damage Expense | Apple | iPad Mini Wi-Fi 32GB Black | 601 | 187 |
| 6/16/2013 | 7/16/2013 | Personal Property Damage Expense | Neat | Scanner Replacement | 332 | 103 |
| 6/30/2013 | 7/30/2013 | Personal Property Damage Expense | Art Etc. | Wall Mirror | 190 | 58 |
| 7/21/2013 | 8/20/2013 | Personal Property Damage Expense | Fitbit.com | Fitbit Flex Band | 106 | 32 |
| 8/1/2013 | 8/31/2013 | Personal Property Damage Expense | JCPenney | Curtains | 25 | 7 |
| 8/2/2013 | 9/1/2013 | Personal Property Damage Expense | TJ Maxx | Clothng | 221 | 67 |
| 8/2/2013 | 9/1/2013 | Personal Property Damage Expense | TJ Maxx | Athletic Footwear | 41 | 13 |
| 8/2/2013 | 9/1/2013 | Personal Property Damage Expense | Best Buy | Small Television | 191 | 58 |
| 8/7/2013 | 9/6/2013 | Personal Property Damage Expense | Sandbaggers Gold Shoes | Golf Shoes | 99 | 30 |
| 8/9/2013 | 9/8/2013 | Personal Property Damage Expense | Marshalls | Ladies Footwear | 32 | 10 |
| 8/10/2013 | 9/9/2013 | Personal Property Damage Expense | Ross | Shoes | 51 | 15 |
| 8/10/2013 | 9/9/2013 | Personal Property Damage Expense | The Home Depot | Garden Sprayer | 16 | 5 |
| 8/12/2013 | 9/11/2013 | Personal Property Damage Expense | JCPenney | Curtains | 26 | 8 |
| 8/15/2013 | 9/14/2013 | Personal Property Damage Expense | Amazon | Towel Rack | 98 | 30 |

Exhibit 6.3
Calculation of Prejudgment Interest Summary - William and Vicki Foster

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Vendor | Description | Amount | Total Interest Through 7/22/2019 |
|---|---|---|---|---|---|---|
| 8/15/2013 | 9/14/2013 | Personal Property Damage Expense | Frontgate | Medallion Outdoor Rug | 85 | 26 |
| 8/17/2013 | 9/16/2013 | Personal Property Damage Expense | Marshalls | Ladies Footwear | 39 | 12 |
| 8/25/2013 | 9/24/2013 | Personal Property Damage Expense | Danby | Dehumidifier | 237 | 71 |
| 9/5/2013 | 10/5/2013 | Personal Property Damage Expense | Amazon | Seiko Musical Clock | 389 | 117 |
| 9/6/2013 | 10/6/2013 | Personal Property Damage Expense | Costco | HP printer All in one | 318 | 95 |
| 9/6/2013 | 10/6/2013 | Personal Property Damage Expense | Sears | Dyson Vacuum Cleaner | 689 | 206 |
| 9/6/2013 | 10/6/2013 | Personal Property Damage Expense | Sears | Power Washer Electric | 180 | 54 |
| 11/5/2013 | 12/5/2013 | Personal Property Damage Expense | Affordable Golf Carts | Golf Cart | 8,651 | 2,521 |
| 12/1/2013 | 12/31/2013 | Personal Property Damage Expense | QVC | Surge Protectors | 58 | 17 |
| 7/6/2014 | 8/5/2014 | Personal Property Damage Expense | Florida Leather Gallery | Furniture | 5,447 | 1,415 |
| 10/6/2014 | 11/5/2014 | Personal Property Damage Expense | Sandbaggers Golf Shoes | Golf Shoes | 338 | 84 |
| 9/30/2016 | 10/30/2016 | Personal Property Damage Expense | Samsung | 55 Inch Television | 2,120 | 325 |
| 11/9/2016 | 12/9/2016 | Personal Property Damage Expense | Havertys Furniture | Entertainment Center | 3,203 | 473 |
| 11/28/2016 | 12/28/2016 | Personal Property Damage Expense | Lenoir Empire Furniture | Tall Waisted Shaped & Chairside Chest | 1,240 | 180 |
| 12/20/2016 | 1/19/2017 | Personal Property Damage Expense | Lenoir Empire Furniture | Delivery of Tall Door Chest & Chairside Chest | 251 | 36 |
| 5/22/2017 | 6/21/2017 | Personal Property Damage Expense | Lenoir Empire Furniture | End table | 410 | 50 |
| 7/22/2017 | 8/21/2017 | Personal Property Damage Expense | Costco | Sewing machine | 230 | 26 |
| 7/24/2017 | 8/23/2017 | Personal Property Damage Expense | Lenoir Empire Furniture | Various Items & Shipping | 4,049 | 455 |
| 2/13/2018 | 3/15/2018 | Personal Property Damage Expense | Lenoir Empire Furniture | Jewelry Armoire | 1,240 | 102 |
| 7/12/2018 | 8/11/2018 | Personal Property Damage Expense | Lenoir Empire Furniture | Delivery of Jewelry Armoire | 154 | 9 |
| | | **Personal Property Damage Expense Total** | | | **$ 99,051** | **$ 37,889** |
| 2/27/2008 | 3/28/2008 | Additional Damages - W Foster Living | Comcast - Louisville | Cable | $ 20 | $ 13 |
| 2/26/2008 | 3/27/2008 | Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 96 | 64 |
| 2/28/2008 | 3/29/2008 | Additional Damages - W Foster Living | Wells Fargo Home MTG | Mortgage - In Lieu of Rent | 3,318 | 2,201 |
| 3/21/2008 | 4/20/2008 | Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 140 | 92 |
| 3/24/2008 | 4/23/2008 | Additional Damages - W Foster Living | Comcast - Louisville | Cable | 20 | 13 |
| 3/31/2008 | 4/30/2008 | Additional Damages - W Foster Living | Wells Fargo Home MTG | Mortgage - In Lieu of Rent | 3,526 | 2,305 |
| 4/20/2008 | 5/20/2008 | Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 92 | 60 |
| 4/21/2008 | 5/21/2008 | Additional Damages - W Foster Living | Louisville Water Co. | Water | 72 | 47 |
| 4/28/2008 | 5/28/2008 | Additional Damages - W Foster Living | Wells Fargo Home MTG | Mortgage - In Lieu of Rent | 3,526 | 2,276 |
| 5/27/2008 | 6/26/2008 | Additional Damages - W Foster Living | Comcast - Louisville | Cable | 30 | 19 |
| 5/27/2008 | 6/26/2008 | Additional Damages - W Foster Living | Wells Fargo Home MTG | Mortgage - In Lieu of Rent | 3,600 | 2,292 |
| 5/27/2008 | 6/26/2008 | Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 139 | 88 |
| 6/17/2008 | 7/17/2008 | Additional Damages - W Foster Living | Louisville Water Co. | Water | 41 | 26 |
| 6/20/2008 | 7/20/2008 | Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 95 | 60 |
| 6/20/2008 | 7/20/2008 | Additional Damages - W Foster Living | Comcast - Louisville | Cable | 32 | 20 |
| 6/28/2008 | 7/28/2008 | Additional Damages - W Foster Living | Wells Fargo Home MTG | Mortgage - In Lieu of Rent | 3,526 | 2,211 |
| 7/22/2008 | 8/21/2008 | Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 127 | 79 |
| 7/28/2008 | 8/27/2008 | Additional Damages - W Foster Living | Comcast - Louisville | Cable | 32 | 20 |
| 8/8/2008 | 9/7/2008 | Additional Damages - W Foster Living | Wells Fargo Home MTG | Mortgage - In Lieu of Rent | 3,526 | 2,167 |
| 8/15/2008 | 9/14/2008 | Additional Damages - W Foster Living | Louisville Water Co. | Water | 41 | 25 |
| 8/20/2008 | 9/19/2008 | Additional Damages - W Foster Living | Comcast - Louisville | Cable | 32 | 20 |
| 8/20/2008 | 9/19/2008 | Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 139 | 85 |
| 8/27/2008 | 9/26/2008 | Additional Damages - W Foster Living | Wells Fargo Home MTG | Mortgage - In Lieu of Rent | 3,526 | 2,147 |
| 9/22/2008 | 10/22/2008 | Additional Damages - W Foster Living | Comcast - Louisville | Cable | 32 | 19 |
| 9/22/2008 | 10/22/2008 | Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 134 | 80 |
| 9/28/2008 | 10/28/2008 | Additional Damages - W Foster Living | Wells Fargo Home MTG | Mortgage - In Lieu of Rent | 3,526 | 2,113 |
| 10/17/2008 | 11/16/2008 | Additional Damages - W Foster Living | Louisville Water Co. | Water | 42 | 25 |
| 10/24/2008 | 11/23/2008 | Additional Damages - W Foster Living | Comcast - Louisville | Cable | 32 | 19 |
| 10/24/2008 | 11/23/2008 | Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 84 | 50 |
| 10/29/2008 | 11/28/2008 | Additional Damages - W Foster Living | Wells Fargo Home MTG | Mortgage - In Lieu of Rent | 3,526 | 2,080 |
| 11/18/2008 | 12/18/2008 | Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 115 | 67 |
| 11/28/2008 | 12/28/2008 | Additional Damages - W Foster Living | Comcast - Louisville | Cable | 32 | 19 |
| 11/28/2008 | 12/28/2008 | Additional Damages - W Foster Living | Wells Fargo Home MTG | Mortgage - In Lieu of Rent | 3,108 | 1,805 |
| 12/12/2008 | 1/11/2009 | Additional Damages - W Foster Living | Louisville Water Co. | Water | 30 | 17 |
| 12/17/2008 | 1/16/2009 | Additional Damages - W Foster Living | Louisville Water Co. | Water | 40 | 23 |
| 12/20/2008 | 1/19/2009 | Additional Damages - W Foster Living | Comcast - Louisville | Cable | 147 | 85 |
| 12/22/2008 | 1/21/2009 | Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 271 | 156 |
| 12/30/2008 | 1/29/2009 | Additional Damages - W Foster Living | Wells Fargo Home MTG | Mortgage - In Lieu of Rent | 3,108 | 1,783 |
| 1/22/2009 | 2/21/2009 | Additional Damages - W Foster Living | Comcast - Louisville | Cable | 99 | 56 |
| 1/22/2009 | 2/21/2009 | Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 274 | 156 |
| 1/29/2009 | 2/28/2009 | Additional Damages - W Foster Living | Wells Fargo Home MTG | Mortgage - In Lieu of Rent | 3,110 | 1,763 |
| 2/19/2009 | 3/21/2009 | Additional Damages - W Foster Living | Louisville Water Co. | Water | 104 | 59 |
| 2/19/2009 | 3/21/2009 | Additional Damages - W Foster Living | Wells Fargo Home MTG | Mortgage - In Lieu of Rent | 3,108 | 1,748 |
| 2/19/2009 | 3/21/2009 | Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 352 | 198 |
| 3/1/2009 | 3/31/2009 | Additional Damages - W Foster Living | Comcast - Louisville | Cable | 205 | 115 |
| 6/1/2013 | 7/1/2013 | Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 325 | 101 |
| 6/15/2013 | 7/15/2013 | Additional Damages - W Foster Living | ExtendedStay | Hotel | 460 | 143 |
| 7/1/2013 | 7/31/2013 | Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 650 | 200 |
| 7/4/2013 | 8/3/2013 | Additional Damages - W Foster Living | Howard Johnson | Hotel | 425 | 131 |
| 8/2/2013 | 9/1/2013 | Additional Damages - W Foster Living | Best Buy | TV | 191 | 58 |
| 8/30/2013 | 9/29/2013 | Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 650 | 195 |
| 9/27/2013 | 10/27/2013 | Additional Damages - W Foster Living | IKEA | Bed & Frame | 349 | 103 |
| 9/27/2013 | 10/27/2013 | Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 650 | 193 |
| 10/22/2013 | 11/21/2013 | Additional Damages - W Foster Living | Southwest Airlines | Airfare | 638 | 187 |
| 10/30/2013 | 11/29/2013 | Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 650 | 190 |
| 11/25/2013 | 12/25/2013 | Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 650 | 188 |
| 12/1/2013 | 12/31/2013 | Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 650 | 187 |
| 1/30/2014 | 3/1/2014 | Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 675 | 189 |
| 2/27/2014 | 3/29/2014 | Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 675 | 187 |
| 3/26/2014 | 4/25/2014 | Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 675 | 184 |
| 4/28/2014 | 5/28/2014 | Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 675 | 181 |
| 5/29/2014 | 6/28/2014 | Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 675 | 179 |
| 7/2/2014 | 8/1/2014 | Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 675 | 176 |
| 7/31/2014 | 8/30/2014 | Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 675 | 173 |
| 9/2/2014 | 10/2/2014 | Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 675 | 170 |
| 9/30/2014 | 10/30/2014 | Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 675 | 168 |
| 10/29/2014 | 11/28/2014 | Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 675 | 165 |
| 11/28/2014 | 12/28/2014 | Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 675 | 163 |
| 12/31/2014 | 1/30/2015 | Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 675 | 160 |
| 1/30/2015 | 3/1/2015 | Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent | 675 | 157 |
| 2/26/2015 | 3/28/2015 | Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent | 675 | 155 |
| 3/27/2015 | 4/26/2015 | Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent | 675 | 152 |
| 4/30/2015 | 5/30/2015 | Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent | 675 | 149 |
| 5/1/2015 | 5/31/2015 | Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent | 675 | 149 |
| 5/25/2015 | 6/24/2015 | Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent - June | 770 | 168 |

Exhibit 6.3
Calculation of Prejudgment Interest Summary - William and Vicki Foster

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Vendor | Description | Amount | Total Interest Through 7/22/2019 |
|---|---|---|---|---|---|---|
| 6/1/2015 | 7/1/2015 | Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Utilities | 200 | 43 |
| 6/25/2015 | 7/25/2015 | Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent - July | 770 | 165 |
| 7/1/2015 | 7/31/2015 | Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Utilities | 200 | 43 |
| 7/25/2015 | 8/24/2015 | Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent - August | 770 | 162 |
| 8/15/2015 | 9/14/2015 | Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Utilities - August | 400 | 83 |
| 8/27/2015 | 9/26/2015 | Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent - September | 770 | 158 |
| 9/26/2015 | 10/26/2015 | Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Utilities - September | 250 | 50 |
| 9/27/2015 | 10/27/2015 | Additional Damages - W Foster Living | Village Green Apartments | Rent - October | 930 | 187 |
| 9/27/2015 | 10/27/2015 | Additional Damages - W Foster Living | Village Green Apartments | Utilities | 87 | 17 |
| 10/30/2015 | 11/29/2015 | Additional Damages - W Foster Living | Village Green Apartments | Rent - November | 930 | 183 |
| 11/18/2015 | 12/18/2015 | Additional Damages - W Foster Living | Heathmore Apartments | Fees for New Rental | 65 | 13 |
| 11/23/2015 | 12/23/2015 | Additional Damages - W Foster Living | Heathmore Apartments | Hold Deposit for 2016 Apartment | 200 | 39 |
| 12/1/2015 | 12/31/2015 | Additional Damages - W Foster Living | Heathmore Apartments | Half Month Rent & AUM | 501 | 97 |
| 12/9/2015 | 1/8/2016 | Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent - December | 400 | 77 |
| 12/10/2015 | 1/9/2016 | Additional Damages - W Foster Living | Priceline | Hotel Room | 145 | 28 |
| 12/31/2015 | 1/30/2016 | Additional Damages - W Foster Living | Sprint | Cell Phone | 212 | 40 |
| 1/5/2016 | 2/4/2016 | Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 58 | 11 |
| 1/8/2016 | 2/7/2016 | Additional Damages - W Foster Living | Apartment in Louisville, Kentucky | Rent | 513 | 97 |
| 1/9/2016 | 2/8/2016 | Additional Damages - W Foster Living | Wal-Mart | Microwave | 47 | 9 |
| 1/18/2016 | 2/17/2016 | Additional Damages - W Foster Living | Sprint | Cell Phone | 194 | 36 |
| 1/28/2016 | 2/27/2016 | Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 51 | 10 |
| 1/28/2016 | 2/27/2016 | Additional Damages - W Foster Living | Heathmore Apartments | Rent - February | 630 | 117 |
| 2/1/2016 | 3/2/2016 | Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 57 | 10 |
| 2/17/2016 | 3/18/2016 | Additional Damages - W Foster Living | Sprint | Cell Phone | 194 | 35 |
| 2/21/2016 | 3/22/2016 | Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 58 | 10 |
| 2/25/2016 | 3/26/2016 | Additional Damages - W Foster Living | Heathmore Apartments | Rent - March | 630 | 115 |
| 3/11/2016 | 4/10/2016 | Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 130 | 23 |
| 3/19/2016 | 4/18/2016 | Additional Damages - W Foster Living | Sprint | Cell Phone | 194 | 35 |
| 3/22/2016 | 4/21/2016 | Additional Damages - W Foster Living | Heathmore Apartments | Rent - April | 631 | 113 |
| 3/28/2016 | 4/27/2016 | Additional Damages - W Foster Living | Amazon | Amazon Mattress | 139 | 25 |
| 3/29/2016 | 4/28/2016 | Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 58 | 10 |
| 4/11/2016 | 5/11/2016 | Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 64 | 11 |
| 4/17/2016 | 5/17/2016 | Additional Damages - W Foster Living | Sprint | Cell Phone | 195 | 34 |
| 4/28/2016 | 5/28/2016 | Additional Damages - W Foster Living | Heathmore Apartments | Rent - May | 631 | 110 |
| 4/30/2016 | 5/30/2016 | Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 57 | 10 |
| 5/10/2016 | 6/9/2016 | Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 52 | 9 |
| 5/16/2016 | 6/15/2016 | Additional Damages - W Foster Living | Home Goods | Home Goods | 53 | 9 |
| 5/18/2016 | 6/17/2016 | Additional Damages - W Foster Living | Sprint | Cell Phone | 194 | 33 |
| 5/26/2016 | 6/25/2016 | Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 33 | 6 |
| 5/30/2016 | 6/29/2016 | Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 57 | 10 |
| 5/31/2016 | 6/30/2016 | Additional Damages - W Foster Living | Heathmore Apartments | Rent - June | 631 | 107 |
| 6/17/2016 | 7/17/2016 | Additional Damages - W Foster Living | Sprint | Cell Phone | 194 | 32 |
| 6/17/2016 | 7/17/2016 | Additional Damages - W Foster Living | Heathmore Apartments | Rent - July | 631 | 105 |
| 6/28/2016 | 7/28/2016 | Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 33 | 6 |
| 6/30/2016 | 7/30/2016 | Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 57 | 9 |
| 7/18/2016 | 8/17/2016 | Additional Damages - W Foster Living | Sprint | Cell Phone | 194 | 32 |
| 7/24/2016 | 8/23/2016 | Additional Damages - W Foster Living | Heathmore Apartments | Rent - September (August on Check) | 631 | 102 |
| 7/27/2016 | 8/26/2016 | Additional Damages - W Foster Living | Heathmore Apartments | Rent - August | 631 | 102 |
| 7/30/2016 | 8/29/2016 | Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 57 | 9 |
| 8/9/2016 | 9/8/2016 | Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 31 | 5 |
| 8/17/2016 | 9/16/2016 | Additional Damages - W Foster Living | Sprint | Cell Phone | 194 | 31 |
| 8/30/2016 | 9/29/2016 | Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 57 | 9 |
| 9/9/2016 | 10/9/2016 | Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 42 | 7 |
| 9/17/2016 | 10/17/2016 | Additional Damages - W Foster Living | Sprint | Cell Phone | 194 | 30 |
| 9/28/2016 | 10/28/2016 | Additional Damages - W Foster Living | Heathmore Apartments | Rent - October | 631 | 97 |
| 9/30/2016 | 10/30/2016 | Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 57 | 9 |
| 10/12/2016 | 11/11/2016 | Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 40 | 6 |
| 10/18/2016 | 11/17/2016 | Additional Damages - W Foster Living | Sprint | Cell Phone | 168 | 25 |
| 10/27/2016 | 11/26/2016 | Additional Damages - W Foster Living | Heathmore Apartments | Rent - November | 631 | 94 |
| 10/30/2016 | 11/29/2016 | Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 57 | 8 |
| 11/3/2016 | 12/3/2016 | Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 29 | 4 |
| 11/17/2016 | 12/17/2016 | Additional Damages - W Foster Living | Sprint | Cell Phone | 168 | 25 |
| 11/28/2016 | 12/28/2016 | Additional Damages - W Foster Living | Heathmore Apartments | Rent - December | 631 | 92 |
| 11/30/2016 | 12/30/2016 | Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 57 | 8 |
| 12/9/2016 | 1/8/2017 | Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 48 | 7 |
| 12/18/2016 | 1/17/2017 | Additional Damages - W Foster Living | Sprint | Cell Phone | 112 | 16 |
| 12/25/2016 | 1/24/2017 | Additional Damages - W Foster Living | Heathmore Apartments | Rent - January | 647 | 92 |
| 1/1/2017 | 1/31/2017 | Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 57 | 8 |
| 1/12/2017 | 2/11/2017 | Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 109 | 15 |
| 1/17/2017 | 2/16/2017 | Additional Damages - W Foster Living | Sprint | Cell Phone | 187 | 26 |
| 1/30/2017 | 3/1/2017 | Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 62 | 8 |
| 1/30/2017 | 3/1/2017 | Additional Damages - W Foster Living | Heathmore Apartments | Rent - February | 652 | 89 |
| 2/10/2017 | 3/12/2017 | Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 96 | 13 |
| 2/17/2017 | 3/19/2017 | Additional Damages - W Foster Living | Sprint | Cell Phone | 187 | 25 |
| 2/27/2017 | 3/29/2017 | Additional Damages - W Foster Living | Heathmore Apartments | Rent - March | 652 | 87 |
| 3/2/2017 | 4/1/2017 | Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 65 | 9 |
| 3/13/2017 | 4/12/2017 | Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 90 | 12 |
| 3/21/2017 | 4/20/2017 | Additional Damages - W Foster Living | Sprint | Cell Phone | 187 | 24 |
| 3/30/2017 | 4/29/2017 | Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 65 | 8 |
| 3/31/2017 | 4/30/2017 | Additional Damages - W Foster Living | Heathmore Apartments | Rent - April | 652 | 84 |
| 4/10/2017 | 5/10/2017 | Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 86 | 11 |
| 4/17/2017 | 5/17/2017 | Additional Damages - W Foster Living | Sprint | Cell Phone | 187 | 24 |
| 4/30/2017 | 5/30/2017 | Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 65 | 8 |
| 4/30/2017 | 5/30/2017 | Additional Damages - W Foster Living | Heathmore Apartments | Rent - May | 653 | 81 |
| 5/10/2017 | 6/9/2017 | Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 57 | 7 |
| 5/18/2017 | 6/17/2017 | Additional Damages - W Foster Living | Sprint | Cell Phone | 187 | 23 |
| 5/30/2017 | 6/29/2017 | Additional Damages - W Foster Living | Heathmore Apartments | Rent - July (June) | 653 | 78 |
| 5/31/2017 | 6/30/2017 | Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 65 | 8 |
| 6/13/2017 | 7/13/2017 | Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 34 | 4 |
| 6/17/2017 | 7/17/2017 | Additional Damages - W Foster Living | Sprint | Cell Phone | 187 | 22 |
| 6/28/2017 | 7/28/2017 | Additional Damages - W Foster Living | Heathmore Apartments | Rent - July | 653 | 76 |
| 6/30/2017 | 7/30/2017 | Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 65 | 8 |
| 7/12/2017 | 8/11/2017 | Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 39 | 4 |
| 7/18/2017 | 8/17/2017 | Additional Damages - W Foster Living | Sprint | Cell Phone | 183 | 21 |
| 7/30/2017 | 8/29/2017 | Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 65 | 7 |
| 7/31/2017 | 8/30/2017 | Additional Damages - W Foster Living | Heathmore Apartments | Rent - August | 653 | 73 |

Exhibit 6.3
Calculation of Prejudgment Interest Summary - William and Vicki Foster

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Vendor | Description | Amount | Total Interest Through 7/22/2019 |
|---|---|---|---|---|---|---|
| 8/11/2017 | 9/10/2017 | Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 34 | 4 |
| 8/17/2017 | 9/16/2017 | Additional Damages - W Foster Living | Sprint | Cell Phone | 183 | 20 |
| 8/30/2017 | 9/29/2017 | Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 65 | 7 |
| 8/31/2017 | 9/30/2017 | Additional Damages - W Foster Living | Heathmore Apartments | Rent - September | 653 | 70 |
| 9/11/2017 | 10/11/2017 | Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 38 | 4 |
| 9/17/2017 | 10/17/2017 | Additional Damages - W Foster Living | Sprint | Cell Phone | 183 | 19 |
| 9/30/2017 | 10/30/2017 | Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 67 | 7 |
| 9/30/2017 | 10/30/2017 | Additional Damages - W Foster Living | Heathmore Apartments | Rent - October | 653 | 67 |
| 10/4/2017 | 11/3/2017 | Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 36 | 4 |
| 10/18/2017 | 11/17/2017 | Additional Damages - W Foster Living | Sprint | Cell Phone | 183 | 18 |
| 10/30/2017 | 11/29/2017 | Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 67 | 7 |
| 10/31/2017 | 11/30/2017 | Additional Damages - W Foster Living | Heathmore Apartments | Rent - November | 653 | 64 |
| 11/9/2017 | 12/9/2017 | Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 32 | 3 |
| 11/17/2017 | 12/17/2017 | Additional Damages - W Foster Living | Sprint | Cell Phone | 183 | 17 |
| 11/30/2017 | 12/30/2017 | Additional Damages - W Foster Living | Heathmore Apartments | Rent - December | 183 | 17 |
| 12/8/2017 | 1/7/2018 | Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 63 | 6 |
| 12/11/2017 | 1/10/2018 | Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 65 | 6 |
| 12/18/2017 | 1/17/2018 | Additional Damages - W Foster Living | Sprint | Cell Phone | 183 | 17 |
| | | Total Additional Damages - W Foster Living | | | $ 94,728 | $ 38,226 |

Exhibit 6.3A
Calculation of Prejudgment Interest Detail - William and Vicki Foster

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Amount | 12/31/2008 | 12/31/2009 | 12/31/2010 | 9/30/2011 | 12/31/2011 | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 3/31/2016 | 6/30/2016 | 9/30/2016 | 12/31/2016 | 3/31/2017 | 6/30/2017 | 9/30/2017 | 12/31/2017 | 3/31/2018 | 6/30/2018 | 9/30/2018 | 12/31/2018 | 7/22/2019 | Total Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/7/2012 | 4/6/2012 | Remediation | $ 24 | $ - | $ - | $ - | $ - | $ - | $ 1 | $ 1 | $ 1 | $ 1 | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 | $ 1 | $ 9 |
| 3/29/2012 | 4/28/2012 | Remediation | 1,000 | - | - | - | - | - | 32 | 48 | 48 | 48 | 12 | 12 | 12 | 12 | 12 | 13 | 13 | 13 | 14 | 14 | 15 | 15 | 35 | 368 |
| 4/26/2012 | 5/26/2012 | Remediation | 3,000 | - | - | - | - | - | 85 | 143 | 143 | 143 | 35 | 36 | 36 | 37 | 37 | 38 | 39 | 40 | 41 | 43 | 45 | 46 | 106 | 1,092 |
| 5/25/2012 | 6/24/2012 | Remediation | 4,000 | - | - | - | - | - | 99 | 190 | 190 | 190 | 47 | 48 | 49 | 49 | 49 | 50 | 52 | 54 | 55 | 57 | 60 | 61 | 141 | 1,441 |
| 6/4/2012 | 7/4/2012 | Remediation | 1,300 | - | - | - | - | - | 30 | 62 | 62 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 467 |
| 6/27/2012 | 7/27/2012 | Remediation | 5,000 | - | - | - | - | - | 102 | 238 | 238 | 238 | 59 | 59 | 61 | 62 | 61 | 63 | 65 | 67 | 68 | 71 | 75 | 77 | 176 | 1,780 |
| 7/3/2012 | 8/2/2012 | Remediation | 34 | - | - | - | - | - | 1 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 12 |
| 7/31/2012 | 8/30/2012 | Remediation | 9,000 | - | - | - | - | - | 144 | 428 | 428 | 428 | 106 | 107 | 109 | 111 | 110 | 113 | 117 | 121 | 123 | 128 | 135 | 138 | 317 | 3,164 |
| 8/2/2012 | 9/1/2012 | Remediation | 363 | - | - | - | - | - | 6 | 17 | 17 | 17 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 5 | 5 | 5 | 5 | 6 | 13 | 128 |
| 8/8/2012 | 9/7/2012 | Remediation | 700 | - | - | - | - | - | 10 | 33 | 33 | 33 | 8 | 8 | 9 | 9 | 9 | 9 | 9 | 9 | 10 | 10 | 11 | 11 | 25 | 245 |
| 8/28/2012 | 9/27/2012 | Remediation | 10,000 | - | - | - | - | - | 123 | 475 | 475 | 475 | 118 | 119 | 122 | 123 | 123 | 126 | 130 | 135 | 136 | 143 | 150 | 154 | 352 | 3,479 |
| 8/29/2012 | 9/28/2012 | Remediation | 2,092 | - | - | - | - | - | 26 | 99 | 99 | 99 | 25 | 25 | 25 | 26 | 26 | 26 | 27 | 28 | 29 | 30 | 31 | 32 | 74 | 727 |
| 8/31/2012 | 9/30/2012 | Remediation | 3,131 | - | - | - | - | - | 37 | 149 | 149 | 149 | 37 | 37 | 38 | 39 | 38 | 39 | 41 | 42 | 43 | 45 | 47 | 48 | 110 | 1,088 |
| 9/5/2012 | 10/5/2012 | Remediation | 43 | - | - | - | - | - | 0 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 15 |
| 9/11/2012 | 10/11/2012 | Remediation | 8,000 | - | - | - | - | - | 84 | 380 | 380 | 380 | 94 | 95 | 97 | 99 | 98 | 101 | 104 | 108 | 109 | 114 | 120 | 123 | 282 | 2,769 |
| 9/12/2012 | 10/12/2012 | Remediation | 20,438 | - | - | - | - | - | 212 | 971 | 971 | 971 | 241 | 243 | 249 | 252 | 250 | 257 | 266 | 276 | 279 | 291 | 308 | 314 | 720 | 7,070 |
| 9/12/2012 | 10/12/2012 | Remediation | 2,500 | - | - | - | - | - | 26 | 119 | 119 | 119 | 30 | 30 | 30 | 31 | 31 | 31 | 33 | 34 | 34 | 36 | 38 | 38 | 88 | 865 |
| 9/14/2012 | 10/14/2012 | Remediation | 489 | - | - | - | - | - | 5 | 23 | 23 | 23 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 7 | 8 | 17 | 169 |
| 9/17/2012 | 10/17/2012 | Remediation | 46 | - | - | - | - | - | 0 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 16 |
| 9/17/2012 | 10/17/2012 | Remediation | 35 | - | - | - | - | - | 0 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 12 |
| 9/21/2012 | 10/21/2012 | Remediation | 48 | - | - | - | - | - | 0 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 17 |
| 9/21/2012 | 10/21/2012 | Remediation | 48 | - | - | - | - | - | 0 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 17 |
| 9/22/2012 | 10/22/2012 | Remediation | 63 | - | - | - | - | - | 1 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 22 |
| 9/22/2012 | 10/22/2012 | Remediation | 48 | - | - | - | - | - | 0 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 16 |
| 9/24/2012 | 10/24/2012 | Remediation | 50 | - | - | - | - | - | 0 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 17 |
| 9/26/2012 | 10/26/2012 | Remediation | 8,000 | - | - | - | - | - | 69 | 380 | 380 | 380 | 94 | 95 | 97 | 99 | 98 | 101 | 104 | 108 | 109 | 114 | 120 | 123 | 282 | 2,753 |
| 10/8/2012 | 11/7/2012 | Remediation | 1,352 | - | - | - | - | - | 9 | 64 | 64 | 64 | 16 | 16 | 16 | 17 | 17 | 17 | 18 | 18 | 18 | 19 | 20 | 21 | 48 | 463 |
| 10/10/2012 | 11/9/2012 | Remediation | 165 | - | - | - | - | - | 1 | 8 | 8 | 8 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 3 | 6 | 57 |
| 10/12/2012 | 11/11/2012 | Remediation | 20 | - | - | - | - | - | 0 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 7 |
| 10/14/2012 | 11/13/2012 | Remediation | 8 | - | - | - | - | - | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3 |
| 10/17/2012 | 11/16/2012 | Remediation | 9,000 | - | - | - | - | - | 53 | 428 | 428 | 428 | 106 | 107 | 109 | 111 | 110 | 113 | 117 | 121 | 123 | 128 | 135 | 138 | 317 | 3,073 |
| 10/23/2012 | 11/22/2012 | Remediation | 106 | - | - | - | - | - | 1 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 4 | 36 |
| 10/25/2012 | 11/24/2012 | Remediation | 9,000 | - | - | - | - | - | 43 | 428 | 428 | 428 | 106 | 107 | 109 | 111 | 110 | 113 | 117 | 121 | 123 | 128 | 135 | 138 | 317 | 3,063 |
| 10/26/2012 | 11/25/2012 | Remediation | 200 | - | - | - | - | - | 1 | 10 | 10 | 10 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 68 |
| 10/28/2012 | 11/27/2012 | Remediation | 158 | - | - | - | - | - | 1 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 6 | 54 |
| 10/29/2012 | 11/28/2012 | Remediation | 18,928 | - | - | - | - | - | 81 | 899 | 899 | 899 | 224 | 225 | 230 | 234 | 232 | 238 | 247 | 255 | 258 | 270 | 285 | 291 | 666 | 6,433 |
| 10/30/2012 | 11/29/2012 | Remediation | 8 | - | - | - | - | - | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3 |
| 10/31/2012 | 11/30/2012 | Remediation | 5,200 | - | - | - | - | - | 21 | 247 | 247 | 247 | 61 | 62 | 63 | 64 | 64 | 65 | 68 | 70 | 71 | 74 | 78 | 80 | 183 | 1,766 |
| 11/7/2012 | 12/7/2012 | Remediation | 715 | - | - | - | - | - | 2 | 34 | 34 | 34 | 8 | 8 | 9 | 9 | 9 | 9 | 9 | 10 | 10 | 10 | 11 | 11 | 25 | 242 |
| 11/7/2012 | 12/7/2012 | Remediation | 549 | - | - | - | - | - | 2 | 26 | 26 | 26 | 6 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 8 | 8 | 8 | 19 | 186 |
| 11/9/2012 | 12/9/2012 | Remediation | 2,500 | - | - | - | - | - | 7 | 119 | 119 | 119 | 30 | 30 | 30 | 31 | 31 | 31 | 33 | 34 | 34 | 36 | 38 | 38 | 88 | 846 |
| 11/10/2012 | 12/10/2012 | Remediation | 15 | - | - | - | - | - | 0 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 5 |
| 11/12/2012 | 12/12/2012 | Remediation | 307 | - | - | - | - | - | 1 | 15 | 15 | 15 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 11 | 104 |
| 11/13/2012 | 12/13/2012 | Remediation | 2,500 | - | - | - | - | - | 6 | 119 | 119 | 119 | 30 | 30 | 30 | 31 | 31 | 31 | 33 | 34 | 34 | 36 | 38 | 38 | 88 | 845 |
| 11/13/2012 | 12/13/2012 | Remediation | 3,000 | - | - | - | - | - | 7 | 143 | 143 | 143 | 35 | 36 | 36 | 37 | 37 | 38 | 39 | 40 | 41 | 43 | 45 | 46 | 106 | 1,014 |
| 11/14/2012 | 12/14/2012 | Remediation | 400 | - | - | - | - | - | 1 | 19 | 19 | 19 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 6 | 6 | 6 | 14 | 135 |
| 11/14/2012 | 12/14/2012 | Remediation | 158 | - | - | - | - | - | 0 | 8 | 8 | 8 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 6 | 53 |
| 11/15/2012 | 12/15/2012 | Remediation | 1,107 | - | - | - | - | - | 2 | 53 | 53 | 53 | 13 | 13 | 13 | 14 | 14 | 14 | 14 | 15 | 15 | 16 | 17 | 17 | 39 | 374 |
| 11/19/2012 | 12/19/2012 | Remediation | 570 | - | - | - | - | - | 1 | 27 | 27 | 27 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 8 | 8 | 8 | 9 | 9 | 20 | 192 |
| 11/19/2012 | 12/19/2012 | Remediation | 600 | - | - | - | - | - | 1 | 29 | 29 | 29 | 7 | 7 | 7 | 7 | 7 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 21 | 202 |
| 11/26/2012 | 12/26/2012 | Remediation | 75 | - | - | - | - | - | 0 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 25 |
| 12/10/2012 | 1/9/2013 | Remediation | 25 | - | - | - | - | - | - | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 9 |
| 12/10/2012 | 1/9/2013 | Remediation | 11 | - | - | - | - | - | - | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 4 |
| 12/18/2012 | 1/17/2013 | Remediation | 262 | - | - | - | - | - | - | 12 | 12 | 12 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 4 | 4 | 9 | 87 |
| 1/18/2013 | 2/17/2013 | Remediation | 95 | - | - | - | - | - | - | 4 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 31 |
| 1/26/2013 | 2/25/2013 | Remediation | 75 | - | - | - | - | - | - | 3 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 25 |
| 2/11/2013 | 3/13/2013 | Remediation | 634 | - | - | - | - | - | - | 24 | 30 | 30 | 7 | 8 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 22 | 207 |
| 3/4/2013 | 4/3/2013 | Remediation | 902 | - | - | - | - | - | - | 32 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 292 |
| 4/1/2013 | 5/1/2013 | Remediation | 120 | - | - | - | - | - | - | 4 | 6 | 6 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 4 | 39 |
| 4/5/2013 | 5/5/2013 | Remediation | 699 | - | - | - | - | - | - | 22 | 33 | 33 | 8 | 8 | 9 | 9 | 9 | 9 | 9 | 9 | 10 | 10 | 11 | 11 | 25 | 223 |
| 4/24/2013 | 5/24/2013 | Remediation | 24 | - | - | - | - | - | - | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 8 |
| 5/17/2013 | 6/16/2013 | Remediation | 81 | - | - | - | - | - | - | 2 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 26 |
| 6/13/2013 | 7/13/2013 | Remediation | 1,100 | - | - | - | - | - | - | 24 | 52 | 52 | 13 | 13 | 13 | 14 | 13 | 14 | 14 | 15 | 15 | 16 | 17 | 17 | 39 | 341 |
| 6/18/2013 | 7/18/2013 | Remediation | 650 | - | - | - | - | - | - | 14 | 31 | 31 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 23 | 201 |
| 8/6/2013 | 9/5/2013 | Remediation | 600 | - | - | - | - | - | - | 9 | 29 | 29 | 7 | 7 | 7 | 7 | 7 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 21 | 182 |
| 8/8/2013 | 9/7/2013 | Remediation | 600 | - | - | - | - | - | - | 9 | 29 | 29 | 7 | 7 | 7 | 7 | 7 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 21 | 182 |
| 8/14/2013 | 9/13/2013 | Remediation | 1,000 | - | - | - | - | - | - | 14 | 48 | 48 | 12 | 12 | 12 | 12 | 12 | 13 | 13 | 13 | 14 | 14 | 15 | 15 | 35 | 302 |
| 8/27/2013 | 9/26/2013 | Remediation | 900 | - | - | - | - | - | - | 11 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 271 |
| 5/2/2014 | 6/1/2014 | Remediation | 46 | - | - | - | - | - | - | - | 1 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 12 |
| 8/2/2017 | 9/1/2017 | Remediation | 240 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 1 | 3 | 3 | 3 | 4 | 4 | 8 | 27 |
| 8/2/2017 | 9/1/2017 | Remediation | 130 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 1 | 2 | 2 | 2 | 2 | 2 | 5 | 14 |
| 8/17/2017 | 9/16/2017 | Remediation | 180 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0 | 2 | 2 | 3 | 3 | 3 | 6 | 20 |
| | | Total Remediation | $ 144,466 | $ - | $ - | $ - | $ - | $ - | $ 1,336 | $ 6,651 | $ 6,835 | $ 6,836 | $ 1,700 | $ 1,710 | $ 1,751 | $ 1,776 | $ 1,764 | $ 1,812 | $ 1,877 | $ 1,948 | $ 1,970 | $ 2,060 | $ 2,174 | $ 2,218 | $ 5,086 | $ 49,504 |
| 9/30/2009 | 10/30/2009 | Alternate Living Expenses | $ 2,500 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| 10/1/2009 | 10/31/2009 | Alternate Living Expenses | 850 | - | 12 | 51 | 38 | 10 | 40 | 40 | 40 | 40 | 10 | 10 | 10 | 10 | 10 | 11 | 11 | 11 | 12 | 12 | 13 | 13 | 30 | 436 |
| 10/1/2009 | 10/31/2009 | Alternate Living Expenses | 99 | - | 1 | 6 | 4 | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 3 | 51 |
| 10/26/2009 | 11/25/2009 | Alternate Living Expenses | 30 | - | 0 | 2 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 15 |
| 11/1/2009 | 12/1/2009 | Alternate Living Expenses | 850 | - | 7 | 51 | 38 | 10 | 40 | 40 | 40 | 40 | 10 | 10 | 10 | 10 | 10 | 11 | 11 | 11 | 12 | 12 | 13 | 13 | 30 | 432 |
| 11/1/2009 | 12/1/2009 | Alternate Living Expenses | 50 | - | 0 | 3 | 2 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 25 |
| 11/1/2009 | 12/1/2009 | Alternate Living Expenses | 56 | - | 0 | 3 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 28 |
| 11/23/2009 | 12/23/2009 | Alternate Living Expenses | 50 | - | 0 | 3 | 2 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 26 |
| 12/1/2009 | 12/31/2009 | Alternate Living Expenses | 850 | - | 1 | 51 | 38 | 10 | 40 | 40 | 40 | 40 | 10 | 10 | 10 | 10 | 10 | 11 | 11 | 11 | 12 | 12 | 13 | 13 | 30 | 426 |
| 12/1/2009 | 12/31/2009 | Alternate Living Expenses | 152 | - | - | 9 | 7 | 2 | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 76 |
| 12/28/2009 | 1/27/2010 | Alternate Living Expenses | 51 | - | - | 3 | 2 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 25 |
| 1/1/2010 | 1/31/2010 | Alternate Living Expenses | 850 | - | - | 47 | 38 | 10 | 40 | 40 | 40 | 40 | 10 | 10 | 10 | 10 | 10 | 11 | 11 | 11 | 12 | 12 | 13 | 13 | 30 | 421 |
| 1/1/2010 | 1/31/2010 | Alternate Living Expenses | 104 | - | - | 6 | 5 | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 4 | 51 |
| 1/27/2010 | 2/26/2010 | Alternate Living Expenses | 50 | - | - | 3 | 2 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 25 |
| 2/1/2010 | 3/3/2010 | Alternate Living Expenses | 850 | - | - | 43 | 38 | 10 | 40 | 40 | 40 | 40 | 10 | 10 | 10 | 10 | 10 | 11 | 11 | 11 | 12 | 12 | 13 | 13 | 30 | 417 |
| 2/1/2010 | 3/3/2010 | Alternate Living Expenses | 104 | - | - | 5 | 5 | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 4 | 51 |
| 3/1/2010 | 3/31/2010 | Alternate Living Expenses | 850 | - | - | 42 | 38 | 10 | 40 | 40 | 40 | 40 | 10 | 10 | 10 | 10 | 10 | 11 | 11 | 11 | 12 | 12 | 13 | 13 | 30 | 416 |
| 3/1/2010 | 3/31/2010 | Alternate Living Expenses | 104 | - | - | 5 | 5 | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 4 | 50 |
| 3/1/2010 | 3/31/2010 | Alternate Living Expenses | 46 | - | - | 2 | 2 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 22 |
| 3/29/2010 | 4/28/2010 | Alternate Living Expenses | 41 | - | - | 2 | 2 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 20 |
| 4/1/2010 | 5/1/2010 | Alternate Living Expenses | 850 | - | - | 35 | 38 | 10 | 40 | 40 | 40 | 40 | 10 | 10 | 10 | 10 | 10 | 11 | 11 | 11 | 12 | 12 | 13 | 13 | 30 | 408 |
| 4/1/2010 | 5/1/2010 | Alternate Living Expenses | 104 | - | - | 4 | 5 | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 4 | 50 |
| 4/26/2010 | 5/26/2010 | Alternate Living Expenses | 39 | - | - | 2 | 2 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 19 |
| 5/1/2010 | 5/31/2010 | Alternate Living Expenses | 850 | - | - | 31 | 38 | 10 | 40 | 40 | 40 | 40 | 10 | 10 | 10 | 10 | 10 | 11 | 11 | 11 | 12 | 12 | 13 | 13 | 30 | 405 |
| 5/1/2010 | 5/31/2010 | Alternate Living Expenses | 104 | - | - | 4 | 5 | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 4 | 49 |
| 5/28/2010 | 6/27/2010 | Alternate Living Expenses | 51 | - | - | 2 | 2 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 24 |
| 6/1/2010 | 7/1/2010 | Alternate Living Expenses | 850 | - | - | 26 | 38 | 10 | 40 | 40 | 40 | 40 | 10 | 10 | 10 | 10 | 10 | 11 | 11 | 11 | 12 | 12 | 13 | 13 | 30 | 400 |
| 6/1/2010 | 7/1/2010 | Alternate Living Expenses | 136 | - | - | 4 | 6 | 2 | 6 | 6 | 6 | 6 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 64 |
| 6/25/2010 | 7/25/2010 | Alternate Living Expenses | 67 | - | - | 2 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 32 |
| 7/1/2010 | 7/31/2010 | Alternate Living Expenses | 850 | - | - | 22 | 38 | 10 | 40 | 40 | 40 | 40 | 10 | 10 | 10 | 10 | 10 | 11 | 11 | 11 | 12 | 12 | 13 | 13 | 30 | 396 |
| 7/1/2010 | 7/31/2010 | Alternate Living Expenses | 136 | - | - | 3 | 6 | 2 | 6 | 6 | 6 | 6 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 63 |
| 7/27/2010 | 8/26/2010 | Alternate Living Expenses | 49 | - | - | 1 | 2 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 23 |

Exhibit 6.3A
Calculation of Prejudgment Interest Detail - William and Vicki Foster

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Amount | 12/31/2008 | 12/31/2009 | 12/31/2010 | 9/30/2011 | 12/31/2011 | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 3/31/2016 | 6/30/2016 | 9/30/2016 | 12/31/2016 | 3/31/2017 | 6/30/2017 | 9/30/2017 | 12/31/2017 | 3/31/2018 | 6/30/2018 | 9/30/2018 | 12/31/2018 | 7/22/2019 | Total Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8/1/2010 | 8/31/2010 | Alternate Living Expenses | 850 | - | - | 18 | 38 | 10 | 40 | 40 | 40 | 40 | 10 | 10 | 10 | 10 | 10 | 11 | 11 | 11 | 12 | 12 | 13 | 13 | 30 | 392 |
| 8/1/2010 | 8/31/2010 | Alternate Living Expenses | 136 | - | - | 3 | 6 | 2 | 6 | 6 | 6 | 6 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 63 |
| 8/25/2010 | 9/24/2010 | Alternate Living Expenses | 74 | - | - | 1 | 3 | 1 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 34 |
| 9/1/2010 | 10/1/2010 | Alternate Living Expenses | 850 | - | - | 14 | 38 | 10 | 40 | 40 | 40 | 40 | 10 | 10 | 10 | 10 | 10 | 11 | 11 | 11 | 12 | 12 | 13 | 13 | 30 | 388 |
| 9/1/2010 | 10/1/2010 | Alternate Living Expenses | 136 | - | - | 2 | 6 | 2 | 6 | 6 | 6 | 6 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 62 |
| 9/24/2010 | 10/24/2010 | Alternate Living Expenses | 76 | - | - | 1 | 3 | 1 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 34 |
| 10/1/2010 | 10/31/2010 | Alternate Living Expenses | 850 | - | - | 10 | 38 | 10 | 40 | 40 | 40 | 40 | 10 | 10 | 10 | 10 | 10 | 11 | 11 | 11 | 12 | 12 | 13 | 13 | 30 | 383 |
| 10/1/2010 | 10/31/2010 | Alternate Living Expenses | 86 | - | - | 1 | 4 | 1 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 38 |
| 10/25/2010 | 11/24/2010 | Alternate Living Expenses | 74 | - | - | 1 | 3 | 1 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 33 |
| 11/1/2010 | 12/1/2010 | Alternate Living Expenses | 850 | - | - | 5 | 38 | 10 | 40 | 40 | 40 | 40 | 10 | 10 | 10 | 10 | 10 | 11 | 11 | 11 | 12 | 12 | 13 | 13 | 30 | 379 |
| 11/1/2010 | 12/1/2010 | Alternate Living Expenses | 95 | - | - | 0 | 4 | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 42 |
| 11/29/2010 | 12/29/2010 | Alternate Living Expenses | 36 | - | - | 0 | 2 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 1 | 16 |
| 12/1/2010 | 12/31/2010 | Alternate Living Expenses | 850 | - | - | 0 | 38 | 10 | 40 | 40 | 40 | 40 | 10 | 10 | 10 | 10 | 10 | 11 | 11 | 11 | 12 | 12 | 13 | 13 | 30 | 374 |
| 12/15/2010 | 1/14/2011 | Alternate Living Expenses | 95 | - | - | - | 4 | 1 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 42 |
| 12/27/2010 | 1/26/2011 | Alternate Living Expenses | 43 | - | - | - | 2 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 19 |
| 1/1/2011 | 1/31/2011 | Alternate Living Expenses | 850 | - | - | - | 35 | 10 | 40 | 40 | 40 | 40 | 10 | 10 | 10 | 10 | 10 | 11 | 11 | 11 | 12 | 12 | 13 | 13 | 30 | 370 |
| 1/14/2011 | 2/13/2011 | Alternate Living Expenses | 95 | - | - | - | 4 | 1 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 41 |
| 1/26/2011 | 2/25/2011 | Alternate Living Expenses | 42 | - | - | - | 2 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 18 |
| 2/1/2011 | 3/3/2011 | Alternate Living Expenses | 850 | - | - | - | 30 | 10 | 40 | 40 | 40 | 40 | 10 | 10 | 10 | 10 | 10 | 11 | 11 | 11 | 12 | 12 | 13 | 13 | 30 | 366 |
| 2/15/2011 | 3/17/2011 | Alternate Living Expenses | 95 | - | - | - | 3 | 1 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 41 |
| 2/25/2011 | 3/27/2011 | Alternate Living Expenses | 58 | - | - | - | 2 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 25 |
| 3/1/2011 | 3/31/2011 | Alternate Living Expenses | 850 | - | - | - | 26 | 10 | 40 | 40 | 40 | 40 | 10 | 10 | 10 | 10 | 10 | 11 | 11 | 11 | 12 | 12 | 13 | 13 | 30 | 362 |
| 3/15/2011 | 4/14/2011 | Alternate Living Expenses | 95 | - | - | - | 3 | 1 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 40 |
| 3/25/2011 | 4/24/2011 | Alternate Living Expenses | 38 | - | - | - | 1 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 16 |
| 4/1/2011 | 5/1/2011 | Alternate Living Expenses | 850 | - | - | - | 22 | 10 | 40 | 40 | 40 | 40 | 10 | 10 | 10 | 10 | 10 | 11 | 11 | 11 | 12 | 12 | 13 | 13 | 30 | 358 |
| 4/13/2011 | 5/13/2011 | Alternate Living Expenses | 95 | - | - | - | 2 | 1 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 40 |
| 4/26/2011 | 5/26/2011 | Alternate Living Expenses | 62 | - | - | - | 1 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 26 |
| 5/1/2011 | 5/31/2011 | Alternate Living Expenses | 850 | - | - | - | 18 | 10 | 40 | 40 | 40 | 40 | 10 | 10 | 10 | 10 | 10 | 11 | 11 | 11 | 12 | 12 | 13 | 13 | 30 | 354 |
| 5/16/2011 | 6/15/2011 | Alternate Living Expenses | 100 | - | - | - | 2 | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 4 | 41 |
| 5/25/2011 | 6/24/2011 | Alternate Living Expenses | 59 | - | - | - | 1 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 24 |
| 6/1/2011 | 7/1/2011 | Alternate Living Expenses | 850 | - | - | - | 14 | 10 | 40 | 40 | 40 | 40 | 10 | 10 | 10 | 10 | 10 | 11 | 11 | 11 | 12 | 12 | 13 | 13 | 30 | 349 |
| 6/1/2011 | 7/1/2011 | Alternate Living Expenses | 90 | - | - | - | 1 | 1 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 37 |
| 6/23/2011 | 7/23/2011 | Alternate Living Expenses | 75 | - | - | - | 1 | 1 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 31 |
| 7/7/2011 | 8/6/2011 | Alternate Living Expenses | 2,358 | - | - | - | 27 | 28 | 112 | 112 | 112 | 112 | 28 | 28 | 29 | 29 | 29 | 30 | 31 | 32 | 32 | 34 | 35 | 36 | 83 | 958 |
| 7/8/2011 | 8/7/2011 | Alternate Living Expenses | 99 | - | - | - | 1 | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 3 | 40 |
| 7/9/2011 | 8/8/2011 | Alternate Living Expenses | 59 | - | - | - | 1 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 24 |
| 7/11/2011 | 8/10/2011 | Alternate Living Expenses | 94 | - | - | - | 1 | 1 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 38 |
| 7/12/2011 | 8/11/2011 | Alternate Living Expenses | 26 | - | - | - | 0 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 10 |
| 7/13/2011 | 8/12/2011 | Alternate Living Expenses | 16 | - | - | - | 0 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 6 |
| 7/28/2011 | 8/27/2011 | Alternate Living Expenses | 99 | - | - | - | 1 | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 3 | 40 |
| 8/1/2011 | 8/31/2011 | Alternate Living Expenses | 94 | - | - | - | 1 | 1 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 38 |
| 8/22/2011 | 9/21/2011 | Alternate Living Expenses | 34 | - | - | - | 0 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 14 |
| 8/25/2011 | 9/24/2011 | Alternate Living Expenses | 905 | - | - | - | 1 | 11 | 43 | 43 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 359 |
| 8/29/2011 | 9/28/2011 | Alternate Living Expenses | 63 | - | - | - | 0 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 25 |
| 9/1/2011 | 10/1/2011 | Alternate Living Expenses | 114 | - | - | - | 0 | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 4 | 45 |
| 9/23/2011 | 10/23/2011 | Alternate Living Expenses | 968 | - | - | - | - | 11 | 46 | 46 | 46 | 46 | 11 | 12 | 12 | 12 | 12 | 12 | 13 | 13 | 13 | 14 | 15 | 15 | 34 | 382 |
| 9/23/2011 | 10/23/2011 | Alternate Living Expenses | 150 | - | - | - | - | 1 | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 59 |
| 10/12/2011 | 11/11/2011 | Alternate Living Expenses | 218 | - | - | - | - | 2 | 10 | 10 | 10 | 10 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 8 | 86 |
| 10/17/2011 | 11/16/2011 | Alternate Living Expenses | 95 | - | - | - | - | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 37 |
| 10/21/2011 | 11/20/2011 | Alternate Living Expenses | 985 | - | - | - | - | 6 | 47 | 47 | 47 | 47 | 12 | 12 | 12 | 12 | 12 | 12 | 13 | 13 | 13 | 14 | 15 | 15 | 35 | 383 |
| 10/24/2011 | 11/23/2011 | Alternate Living Expenses | 128 | - | - | - | - | 1 | 6 | 6 | 6 | 6 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 50 |
| 11/22/2011 | 12/22/2011 | Alternate Living Expenses | 87 | - | - | - | - | 0 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 34 |
| 11/23/2011 | 12/23/2011 | Alternate Living Expenses | 970 | - | - | - | - | 1 | 46 | 46 | 46 | 46 | 11 | 12 | 12 | 12 | 12 | 12 | 13 | 13 | 13 | 14 | 15 | 15 | 34 | 373 |
| 11/25/2011 | 12/25/2011 | Alternate Living Expenses | 87 | - | - | - | - | 0 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 33 |
| 11/26/2011 | 12/26/2011 | Alternate Living Expenses | 57 | - | - | - | - | 0 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 22 |
| 12/1/2011 | 12/31/2011 | Alternate Living Expenses | 95 | - | - | - | - | 0 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 36 |
| 12/22/2011 | 1/21/2012 | Alternate Living Expenses | 967 | - | - | - | - | - | 46 | 46 | 46 | 46 | 11 | 11 | 12 | 12 | 12 | 12 | 13 | 13 | 13 | 14 | 15 | 15 | 34 | 371 |
| 12/27/2011 | 1/26/2012 | Alternate Living Expenses | 71 | - | - | - | - | - | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 27 |
| 1/25/2012 | 2/24/2012 | Alternate Living Expenses | 965 | - | - | - | - | - | 43 | 46 | 46 | 46 | 11 | 11 | 12 | 12 | 12 | 12 | 13 | 13 | 13 | 14 | 15 | 15 | 34 | 366 |
| 1/25/2012 | 2/24/2012 | Alternate Living Expenses | 87 | - | - | - | - | - | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 33 |
| 1/27/2012 | 2/26/2012 | Alternate Living Expenses | 64 | - | - | - | - | - | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 24 |
| 2/23/2012 | 3/24/2012 | Alternate Living Expenses | 977 | - | - | - | - | - | 39 | 46 | 46 | 46 | 12 | 12 | 12 | 12 | 12 | 12 | 13 | 13 | 13 | 14 | 15 | 15 | 34 | 367 |
| 2/27/2012 | 3/28/2012 | Alternate Living Expenses | 63 | - | - | - | - | - | 2 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 23 |
| 2/27/2012 | 3/28/2012 | Alternate Living Expenses | 87 | - | - | - | - | - | 3 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 32 |
| 3/23/2012 | 4/22/2012 | Alternate Living Expenses | 977 | - | - | - | - | - | 35 | 46 | 46 | 46 | 12 | 12 | 12 | 12 | 12 | 12 | 13 | 13 | 13 | 14 | 15 | 15 | 34 | 363 |
| 3/26/2012 | 4/25/2012 | Alternate Living Expenses | 88 | - | - | - | - | - | 3 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 32 |
| 3/27/2012 | 4/26/2012 | Alternate Living Expenses | 80 | - | - | - | - | - | 3 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 30 |
| 4/23/2012 | 5/23/2012 | Alternate Living Expenses | 1,003 | - | - | - | - | - | 32 | 48 | 48 | 48 | 12 | 12 | 12 | 12 | 12 | 13 | 13 | 14 | 14 | 14 | 15 | 15 | 35 | 369 |
| 4/25/2012 | 5/25/2012 | Alternate Living Expenses | 88 | - | - | - | - | - | 3 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 32 |
| 4/26/2012 | 5/26/2012 | Alternate Living Expenses | 112 | - | - | - | - | - | 3 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 4 | 41 |
| 5/24/2012 | 6/23/2012 | Alternate Living Expenses | 1,024 | - | - | - | - | - | 29 | 49 | 49 | 49 | 12 | 12 | 12 | 13 | 13 | 13 | 13 | 14 | 14 | 15 | 15 | 16 | 36 | 373 |
| 5/25/2012 | 6/24/2012 | Alternate Living Expenses | 90 | - | - | - | - | - | 2 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 32 |
| 5/31/2012 | 6/30/2012 | Alternate Living Expenses | 151 | - | - | - | - | - | 4 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 54 |
| 6/22/2012 | 7/22/2012 | Alternate Living Expenses | 1,018 | - | - | - | - | - | 24 | 48 | 48 | 48 | 12 | 12 | 12 | 13 | 12 | 13 | 13 | 14 | 14 | 15 | 15 | 16 | 36 | 366 |
| 6/25/2012 | 7/25/2012 | Alternate Living Expenses | 88 | - | - | - | - | - | 2 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 31 |
| 6/27/2012 | 7/27/2012 | Alternate Living Expenses | 181 | - | - | - | - | - | 4 | 9 | 9 | 9 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 6 | 64 |
| 7/25/2012 | 8/24/2012 | Alternate Living Expenses | 1,032 | - | - | - | - | - | 21 | 49 | 49 | 49 | 12 | 12 | 13 | 13 | 13 | 13 | 13 | 14 | 14 | 15 | 16 | 16 | 36 | 367 |
| 7/25/2012 | 8/24/2012 | Alternate Living Expenses | 109 | - | - | - | - | - | 2 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 4 | 38 |
| 7/27/2012 | 8/26/2012 | Alternate Living Expenses | 140 | - | - | - | - | - | 2 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 49 |
| 8/27/2012 | 9/26/2012 | Alternate Living Expenses | 1,017 | - | - | - | - | - | 17 | 48 | 48 | 48 | 12 | 12 | 12 | 13 | 12 | 13 | 13 | 14 | 14 | 15 | 15 | 16 | 36 | 358 |
| 8/27/2012 | 9/26/2012 | Alternate Living Expenses | 143 | - | - | - | - | - | 2 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 50 |
| 8/27/2012 | 9/26/2012 | Alternate Living Expenses | 109 | - | - | - | - | - | 1 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 4 | 38 |
| 9/25/2012 | 10/25/2012 | Alternate Living Expenses | 109 | - | - | - | - | - | 1 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 4 | 38 |
| 9/26/2012 | 10/26/2012 | Alternate Living Expenses | 1,030 | - | - | - | - | - | 9 | 49 | 49 | 49 | 12 | 12 | 13 | 13 | 13 | 13 | 13 | 14 | 14 | 15 | 15 | 16 | 36 | 355 |
| 9/28/2012 | 10/28/2012 | Alternate Living Expenses | 169 | - | - | - | - | - | 1 | 8 | 8 | 8 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 6 | 58 |
| 10/12/2012 | 11/11/2012 | Alternate Living Expenses | 58 | - | - | - | - | - | 0 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 20 |
| 10/25/2012 | 11/24/2012 | Alternate Living Expenses | 109 | - | - | - | - | - | 1 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 4 | 37 |
| 10/26/2012 | 11/25/2012 | Alternate Living Expenses | 140 | - | - | - | - | - | 1 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 48 |
| 11/17/2012 | 12/17/2012 | Alternate Living Expenses | 545 | - | - | - | - | - | 3 | 26 | 26 | 26 | 6 | 6 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 8 | 8 | 8 | 19 | 185 |
| 11/26/2012 | 12/26/2012 | Alternate Living Expenses | 89 | - | - | - | - | - | 0 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 30 |
| 12/7/2012 | 1/6/2013 | Alternate Living Expenses | 22 | - | - | - | - | - | 0 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 7 |
| | | Alternate Living Expenses Total | $ 44,531 | $ - | $ 22 | $ 529 | $ 884 | $ 325 | $ 1,727 | $ 1,996 | $ 1,996 | $ 1,996 | $ 496 | $ 500 | $ 511 | $ 519 | $ 515 | $ 529 | $ 548 | $ 567 | $ 573 | $ 599 | $ 632 | $ 645 | $ 1,480 | $ 17,591 |
| 5/13/2009 | 6/12/2009 | Personal Property Damage Expense | $ 38 | $ - | $ 2 | $ 2 | $ 2 | $ 0 | $ 2 | $ 2 | $ 2 | $ 2 | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 | $ 1 | $ 1 | $ 1 | $ 1 | $ 1 | $ 1 | $ 21 |
| 5/22/2009 | 6/21/2009 | Personal Property Damage Expense | 135 | - | 6 | 8 | 6 | 2 | 6 | 6 | 6 | 6 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 73 |
| 6/9/2009 | 7/9/2009 | Personal Property Damage Expense | 136 | - | 5 | 8 | 6 | 2 | 6 | 6 | 6 | 6 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 73 |
| 6/24/2009 | 7/24/2009 | Personal Property Damage Expense | 146 | - | 5 | 9 | 7 | 2 | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 78 |
| 7/1/2009 | 7/31/2009 | Personal Property Damage Expense | 134 | - | 4 | 8 | 6 | 2 | 6 | 6 | 6 | 6 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 71 |
| 7/7/2009 | 8/6/2009 | Personal Property Damage Expense | 535 | - | 17 | 32 | 24 | 6 | 25 | 25 | 25 | 25 | 6 | 6 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 8 | 8 | 8 | 19 | 285 |
| 8/6/2009 | 9/5/2009 | Personal Property Damage Expense | 62 | - | 2 | 4 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 33 |
| 9/1/2009 | 10/1/2009 | Personal Property Damage Expense | 20 | - | 0 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 10 |
| 9/4/2009 | 10/4/2009 | Personal Property Damage Expense | 127 | - | 2 | 8 | 6 | 2 | 6 | 6 | 6 | 6 | 1 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 4 | 66 |
| 9/20/2009 | 10/20/2009 | Personal Property Damage Expense | 180 | - | 3 | 11 | 8 | 2 | 9 | 9 | 9 | 9 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 6 | 93 |
| 9/28/2009 | 10/28/2009 | Personal Property Damage Expense | 16 | - | 0 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 8 |
| 9/28/2009 | 10/28/2009 | Personal Property Damage Expense | 159 | - | 2 | 10 | 7 | 2 | 8 | 8 | 8 | 8 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 6 | 82 |
| 9/29/2009 | 10/29/2009 | Personal Property Damage Expense | 44 | - | 1 | 3 | 2 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 23 |

Exhibit 6.3A
Calculation of Prejudgment Interest Detail - William and Vicki Foster

Chinese Drywall Litigation Involving Priority Claimants

| Damage Date | Measurement Date | Damage Component | Amount | 12/31/2008 | 12/31/2009 | 12/31/2010 | 9/30/2011 | 12/31/2011 | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 3/31/2016 | 6/30/2016 | 9/30/2016 | 12/31/2016 | 3/31/2017 | 6/30/2017 | 9/30/2017 | 12/31/2017 | 3/31/2018 | 6/30/2018 | 9/30/2018 | 12/31/2018 | 7/22/2019 | Total Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/1/2009 | 10/31/2009 | Personal Property Damage Expense | 8,030 | - | 107 | 482 | 360 | 96 | 381 | 381 | 381 | 381 | 95 | 95 | 96 | 99 | 98 | 101 | 106 | 108 | 109 | 115 | 121 | 123 | 283 | 4,122 |
| 10/1/2009 | 10/31/2009 | Personal Property Damage Expense | 2,134 | - | 28 | 127 | 95 | 25 | 101 | 101 | 101 | 101 | 25 | 25 | 26 | 26 | 26 | 27 | 28 | 29 | 29 | 30 | 32 | 33 | 75 | 1,090 |
| 10/1/2009 | 10/31/2009 | Personal Property Damage Expense | 1,869 | - | 25 | 112 | 84 | 22 | 89 | 89 | 89 | 89 | 22 | 22 | 23 | 23 | 23 | 24 | 24 | 25 | 25 | 27 | 28 | 29 | 66 | 959 |
| 10/1/2009 | 10/31/2009 | Personal Property Damage Expense | 1,529 | - | 20 | 92 | 69 | 18 | 73 | 73 | 73 | 73 | 18 | 18 | 19 | 19 | 19 | 19 | 20 | 21 | 21 | 22 | 23 | 23 | 54 | 785 |
| 10/1/2009 | 10/31/2009 | Personal Property Damage Expense | 1,444 | - | 19 | 87 | 65 | 17 | 69 | 69 | 69 | 69 | 17 | 17 | 18 | 18 | 18 | 18 | 19 | 19 | 20 | 21 | 22 | 22 | 51 | 741 |
| 10/1/2009 | 10/31/2009 | Personal Property Damage Expense | 1,444 | - | 19 | 87 | 65 | 17 | 69 | 69 | 69 | 69 | 17 | 17 | 18 | 18 | 18 | 18 | 19 | 19 | 20 | 21 | 22 | 22 | 51 | 741 |
| 10/1/2009 | 10/31/2009 | Personal Property Damage Expense | 807 | - | 11 | 48 | 36 | 10 | 38 | 38 | 38 | 38 | 10 | 10 | 10 | 10 | 10 | 10 | 11 | 11 | 11 | 12 | 12 | 12 | 28 | 414 |
| 10/1/2009 | 10/31/2009 | Personal Property Damage Expense | 509 | - | 7 | 31 | 23 | 6 | 24 | 24 | 24 | 24 | 6 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 7 | 8 | 8 | 18 | 261 |
| 10/1/2009 | 10/31/2009 | Personal Property Damage Expense | 1,900 | - | 25 | 114 | 85 | 23 | 90 | 90 | 90 | 90 | 22 | 23 | 23 | 23 | 23 | 24 | 25 | 26 | 26 | 27 | 29 | 29 | 67 | 975 |
| 10/1/2009 | 10/31/2009 | Personal Property Damage Expense | 1,600 | - | 21 | 96 | 72 | 19 | 76 | 76 | 76 | 76 | 19 | 19 | 19 | 20 | 20 | 20 | 21 | 22 | 22 | 23 | 24 | 25 | 56 | 821 |
| 10/1/2009 | 10/31/2009 | Personal Property Damage Expense | 500 | - | 7 | 30 | 22 | 6 | 24 | 24 | 24 | 24 | 6 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 7 | 8 | 8 | 18 | 257 |
| 10/1/2009 | 10/31/2009 | Personal Property Damage Expense | 402 | - | 5 | 24 | 18 | 5 | 19 | 19 | 19 | 19 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 6 | 6 | 6 | 14 | 205 |
| 10/1/2009 | 10/31/2009 | Personal Property Damage Expense | 3,942 | - | 53 | 237 | 177 | 47 | 187 | 187 | 187 | 187 | 47 | 47 | 48 | 49 | 48 | 50 | 51 | 53 | 54 | 56 | 59 | 61 | 139 | 2,023 |
| 10/1/2009 | 10/31/2009 | Personal Property Damage Expense | 2,876 | - | 38 | 173 | 129 | 34 | 137 | 137 | 137 | 137 | 34 | 34 | 35 | 35 | 35 | 36 | 37 | 39 | 39 | 41 | 43 | 44 | 101 | 1,476 |
| 10/1/2009 | 10/31/2009 | Personal Property Damage Expense | 305 | - | 4 | 18 | 14 | 4 | 14 | 14 | 14 | 14 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 11 | 157 |
| 10/1/2009 | 10/31/2009 | Personal Property Damage Expense | 695 | - | 9 | 42 | 31 | 8 | 33 | 33 | 33 | 33 | 8 | 8 | 8 | 9 | 9 | 9 | 9 | 9 | 9 | 10 | 10 | 11 | 24 | 357 |
| 10/2/2009 | 11/1/2009 | Personal Property Damage Expense | 211 | - | 3 | 13 | 9 | 3 | 10 | 10 | 10 | 10 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 108 |
| 10/4/2009 | 11/3/2009 | Personal Property Damage Expense | 238 | - | 3 | 14 | 11 | 3 | 11 | 11 | 11 | 11 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 8 | 122 |
| 10/4/2009 | 11/3/2009 | Personal Property Damage Expense | 1,071 | - | 14 | 64 | 48 | 13 | 51 | 51 | 51 | 51 | 13 | 13 | 13 | 13 | 13 | 14 | 14 | 14 | 15 | 15 | 16 | 16 | 38 | 549 |
| 10/4/2009 | 11/3/2009 | Personal Property Damage Expense | 73 | - | 1 | 4 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 37 |
| 10/7/2009 | 11/6/2009 | Personal Property Damage Expense | 31 | - | 0 | 2 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 16 |
| 10/7/2009 | 11/6/2009 | Personal Property Damage Expense | 13 | - | 0 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 7 |
| 10/7/2009 | 11/6/2009 | Personal Property Damage Expense | 42 | - | 1 | 3 | 2 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 22 |
| 10/8/2009 | 11/7/2009 | Personal Property Damage Expense | 431 | - | 5 | 26 | 19 | 5 | 20 | 20 | 20 | 20 | 5 | 5 | 5 | 5 | 5 | 6 | 6 | 6 | 6 | 6 | 6 | 7 | 15 | 221 |
| 10/9/2009 | 11/8/2009 | Personal Property Damage Expense | 106 | - | 1 | 6 | 5 | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 4 | 54 |
| 10/10/2009 | 11/9/2009 | Personal Property Damage Expense | 21 | - | 0 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 11 |
| 10/10/2009 | 11/9/2009 | Personal Property Damage Expense | 31 | - | 0 | 2 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 16 |
| 10/12/2009 | 11/11/2009 | Personal Property Damage Expense | 138 | - | 2 | 8 | 6 | 2 | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 71 |
| 10/12/2009 | 11/11/2009 | Personal Property Damage Expense | 29 | - | 0 | 2 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 15 |
| 10/13/2009 | 11/12/2009 | Personal Property Damage Expense | 15 | - | 0 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 8 |
| 10/13/2009 | 11/12/2009 | Personal Property Damage Expense | 35 | - | 0 | 2 | 2 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 18 |
| 10/14/2009 | 11/13/2009 | Personal Property Damage Expense | 95 | - | 1 | 6 | 4 | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 49 |
| 10/15/2009 | 11/14/2009 | Personal Property Damage Expense | 12 | - | 0 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 6 |
| 10/16/2009 | 11/15/2009 | Personal Property Damage Expense | 165 | - | 2 | 10 | 7 | 2 | 8 | 8 | 8 | 8 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 3 | 6 | 84 |
| 10/27/2009 | 11/26/2009 | Personal Property Damage Expense | 180 | - | 1 | 11 | 8 | 2 | 9 | 9 | 9 | 9 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 6 | 91 |
| 10/27/2009 | 11/26/2009 | Personal Property Damage Expense | 24 | - | 0 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 12 |
| 10/28/2009 | 11/27/2009 | Personal Property Damage Expense | 20 | - | 0 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 10 |
| 11/2/2009 | 12/2/2009 | Personal Property Damage Expense | 49 | - | 0 | 3 | 2 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 25 |
| 11/4/2009 | 12/4/2009 | Personal Property Damage Expense | 36 | - | 0 | 2 | 2 | 0 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 18 |
| 11/9/2009 | 12/9/2009 | Personal Property Damage Expense | 102 | - | 0 | 6 | 5 | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 4 | 51 |
| 11/9/2009 | 12/9/2009 | Personal Property Damage Expense | 130 | - | 1 | 8 | 6 | 2 | 6 | 6 | 6 | 6 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 66 |
| 11/11/2009 | 12/11/2009 | Personal Property Damage Expense | 60 | - | 0 | 4 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 30 |
| 11/11/2009 | 12/11/2009 | Personal Property Damage Expense | 56 | - | 0 | 3 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 28 |
| 11/13/2009 | 12/13/2009 | Personal Property Damage Expense | 32 | - | 0 | 2 | 1 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 16 |
| 11/15/2009 | 12/15/2009 | Personal Property Damage Expense | 2,745 | - | 10 | 165 | 123 | 33 | 130 | 130 | 130 | 130 | 32 | 33 | 33 | 34 | 34 | 35 | 36 | 37 | 37 | 39 | 41 | 42 | 97 | 1,382 |
| 11/16/2009 | 12/16/2009 | Personal Property Damage Expense | 117 | - | 0 | 7 | 5 | 1 | 6 | 6 | 6 | 6 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 2 | 4 | 59 |
| 11/16/2009 | 12/16/2009 | Personal Property Damage Expense | 94 | - | 0 | 6 | 4 | 1 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 47 |
| 11/29/2009 | 12/20/2009 | Personal Property Damage Expense | 13 | - | 0 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 6 |
| 11/23/2009 | 12/23/2009 | Personal Property Damage Expense | 12 | - | 0 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 6 |
| 11/27/2009 | 12/27/2009 | Personal Property Damage Expense | 91 | - | 0 | 5 | 4 | 1 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 45 |
| 11/28/2009 | 12/28/2009 | Personal Property Damage Expense | 105 | - | 0 | 6 | 5 | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 4 | 53 |
| 11/30/2009 | 12/30/2009 | Personal Property Damage Expense | 49 | - | 0 | 3 | 2 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 25 |
| 12/15/2009 | 1/14/2010 | Personal Property Damage Expense | 18 | - | | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 9 |
| 12/15/2009 | 1/14/2010 | Personal Property Damage Expense | 174 | - | | 10 | 8 | 2 | 8 | 8 | 8 | 8 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 6 | 87 |
| 12/15/2009 | 1/14/2010 | Personal Property Damage Expense | 71 | - | | 4 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 35 |
| 12/16/2009 | 1/15/2010 | Personal Property Damage Expense | 26 | - | | 2 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 13 |
| 12/21/2009 | 1/20/2010 | Personal Property Damage Expense | 126 | - | | 7 | 6 | 2 | 6 | 6 | 6 | 6 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 4 | 62 |
| 12/28/2009 | 1/27/2010 | Personal Property Damage Expense | 73 | - | | 4 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 36 |
| 12/31/2009 | 1/30/2010 | Personal Property Damage Expense | 159 | - | | 9 | 7 | 2 | 8 | 8 | 8 | 8 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 6 | 79 |
| 1/4/2010 | 2/3/2010 | Personal Property Damage Expense | 30 | - | | 2 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 15 |
| 1/11/2010 | 2/10/2010 | Personal Property Damage Expense | 11 | - | | 1 | 0 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 5 |
| 1/11/2010 | 2/10/2010 | Personal Property Damage Expense | 30 | - | | 2 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 15 |
| 1/12/2010 | 2/11/2010 | Personal Property Damage Expense | 36 | - | | 2 | 2 | 0 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 18 |
| 1/12/2010 | 2/11/2010 | Personal Property Damage Expense | 25 | - | | 2 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 12 |
| 1/12/2010 | 2/11/2010 | Personal Property Damage Expense | 42 | - | | 2 | 2 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 21 |
| 1/13/2010 | 2/12/2010 | Personal Property Damage Expense | 37 | - | | 2 | 2 | 0 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 18 |
| 1/14/2010 | 2/13/2010 | Personal Property Damage Expense | 20 | - | | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 10 |
| 1/15/2010 | 2/14/2010 | Personal Property Damage Expense | 210 | - | | 11 | 9 | 3 | 10 | 10 | 10 | 10 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 103 |
| 2/5/2010 | 3/7/2010 | Personal Property Damage Expense | 40 | - | | 2 | 2 | 0 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 19 |
| 2/21/2010 | 3/23/2010 | Personal Property Damage Expense | 59 | - | | 3 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 28 |
| 3/10/2010 | 4/9/2010 | Personal Property Damage Expense | 46 | - | | 2 | 2 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 22 |
| 3/26/2010 | 4/25/2010 | Personal Property Damage Expense | 120 | - | | 6 | 5 | 2 | 6 | 6 | 6 | 6 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 4 | 58 |
| 3/26/2010 | 4/25/2010 | Personal Property Damage Expense | 63 | - | | 3 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 30 |
| 3/31/2010 | 4/30/2010 | Personal Property Damage Expense | 61 | - | | 3 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 29 |
| 4/4/2010 | 5/4/2010 | Personal Property Damage Expense | 24 | - | | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 11 |
| 4/18/2010 | 5/18/2010 | Personal Property Damage Expense | 138 | - | | 7 | 6 | 2 | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 66 |
| 4/23/2010 | 5/23/2010 | Personal Property Damage Expense | 128 | - | | 7 | 6 | 2 | 6 | 6 | 6 | 6 | 1 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 4 | 61 |
| 4/26/2010 | 5/26/2010 | Personal Property Damage Expense | 42 | - | | 2 | 2 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 20 |
| 4/26/2010 | 5/26/2010 | Personal Property Damage Expense | 126 | - | | 6 | 5 | 2 | 6 | 6 | 6 | 6 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 4 | 58 |
| 4/27/2010 | 5/27/2010 | Personal Property Damage Expense | 42 | - | | 2 | 2 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 20 |
| 4/28/2010 | 5/28/2010 | Personal Property Damage Expense | 107 | - | | 5 | 5 | 2 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 4 | 51 |
| 5/9/2010 | 6/8/2010 | Personal Property Damage Expense | 742 | - | | 25 | 33 | 9 | 35 | 35 | 35 | 35 | 9 | 9 | 9 | 10 | 10 | 10 | 10 | 11 | 11 | 11 | 11 | 11 | 26 | 351 |
| 5/16/2010 | 6/15/2010 | Personal Property Damage Expense | 101 | - | | 1 | 5 | 2 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 3 | 48 |
| 5/16/2010 | 6/15/2010 | Personal Property Damage Expense | 55 | - | | 1 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 26 |
| 5/18/2010 | 6/17/2010 | Personal Property Damage Expense | 17 | - | | | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 8 |
| 5/19/2010 | 6/18/2010 | Personal Property Damage Expense | 59 | - | | | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 28 |
| 5/24/2010 | 6/23/2010 | Personal Property Damage Expense | 76 | - | | | 4 | 1 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 36 |
| 6/2/2010 | 7/2/2010 | Personal Property Damage Expense | 20 | - | | | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 9 |
| 6/2/2010 | 7/2/2010 | Personal Property Damage Expense | 123 | - | | | 6 | 2 | 6 | 6 | 6 | 6 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 4 | 56 |
| 7/21/2010 | 8/20/2010 | Personal Property Damage Expense | 29 | - | | | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 12 |
| 7/18/2010 | 8/17/2010 | Personal Property Damage Expense | 23 | - | | | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 10 |
| 7/19/2010 | 8/18/2010 | Personal Property Damage Expense | 99 | - | | | 2 | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 3 | 44 |
| 7/23/2010 | 8/22/2010 | Personal Property Damage Expense | 244 | - | | | 5 | 3 | 12 | 12 | 12 | 12 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 4 | 4 | 4 | 9 | 109 |
| 8/15/2010 | 9/14/2010 | Personal Property Damage Expense | 55 | - | | | 1 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 23 |
| 9/3/2010 | 10/3/2010 | Personal Property Damage Expense | 689 | - | | | 10 | 31 | 33 | 33 | 33 | 33 | 8 | 8 | 9 | 9 | 9 | 9 | 9 | 10 | 10 | 10 | 11 | 11 | 25 | 290 |
| 11/5/2010 | 12/5/2010 | Personal Property Damage Expense | 265 | - | | | 1 | 6 | 13 | 13 | 13 | 13 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 10 | 108 |
| 11/15/2010 | 12/15/2010 | Personal Property Damage Expense | 261 | - | | | 1 | 12 | 3 | 12 | 12 | 12 | 12 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 4 | 4 | 4 | 9 | 110 |
| 12/21/2010 | 1/20/2011 | Personal Property Damage Expense | 33 | - | | | | 2 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 1 | 12 |
| 12/16/2010 | 1/15/2011 | Personal Property Damage Expense | 42 | - | | | | 2 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 19 |
| 12/17/2010 | 1/16/2011 | Personal Property Damage Expense | 210 | - | | | | 10 | 10 | 10 | 10 | 10 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 92 |
| 1/13/2011 | 2/12/2011 | Personal Property Damage Expense | 223 | - | | | | 10 | 11 | 11 | 11 | 11 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 8 | 97 |

Exhibit 6.3A
Calculation of Prejudgment Interest Detail - William and Vicki Foster

Chinese Drywall Litigation Involving Priority Claimants

| Damage Date | Measurement Date | Damage Component | Amount | 12/31/2008 | 12/31/2009 | 12/31/2010 | 9/30/2011 | 12/31/2011 | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 3/31/2016 | 6/30/2016 | 9/30/2016 | 12/31/2016 | 3/31/2017 | 6/30/2017 | 9/30/2017 | 12/31/2017 | 3/31/2018 | 6/30/2018 | 9/30/2018 | 12/31/2018 | 7/22/2019 | Total Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/15/2011 | 2/14/2011 | Personal Property Damage Expense | 233 | | | | 9 | 3 | 11 | 11 | 11 | 11 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 8 | 101 |
| 1/20/2011 | 2/19/2011 | Personal Property Damage Expense | 53 | | | | 2 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 23 |
| 1/24/2011 | 2/23/2011 | Personal Property Damage Expense | 23 | | | | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 10 |
| 1/31/2011 | 3/2/2011 | Personal Property Damage Expense | 106 | | | | 4 | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 4 | 46 |
| 2/1/2011 | 3/3/2011 | Personal Property Damage Expense | 27 | | | | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 11 |
| 2/5/2011 | 3/7/2011 | Personal Property Damage Expense | 42 | | | | 1 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 18 |
| 2/5/2011 | 3/7/2011 | Personal Property Damage Expense | 201 | | | | 7 | 2 | 10 | 10 | 10 | 10 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 86 |
| 2/24/2011 | 3/26/2011 | Personal Property Damage Expense | 24 | | | | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 10 |
| 3/17/2011 | 4/16/2011 | Personal Property Damage Expense | 125 | | | | 3 | 1 | 6 | 6 | 6 | 6 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 4 | 53 |
| 4/15/2011 | 5/15/2011 | Personal Property Damage Expense | 7,256 | | | | 185 | 87 | 345 | 345 | 345 | 345 | 86 | 86 | 88 | 90 | 89 | 91 | 95 | 98 | 99 | 103 | 109 | 111 | 255 | 3,031 |
| 4/21/2011 | 5/21/2011 | Personal Property Damage Expense | 61 | | | | 1 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 26 |
| 6/14/2011 | 7/14/2011 | Personal Property Damage Expense | 74 | | | | 1 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 30 | |
| 7/5/2011 | 8/4/2011 | Personal Property Damage Expense | 333 | | | | 3 | 4 | 16 | 16 | 16 | 16 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 5 | 5 | 12 | 135 |
| 9/4/2011 | 10/4/2011 | Personal Property Damage Expense | 199 | | | | 2 | 9 | 9 | 9 | 9 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 79 | |
| 9/21/2011 | 10/21/2011 | Personal Property Damage Expense | 199 | | | | | 9 | 9 | 9 | 9 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 78 | |
| 12/3/2011 | 1/2/2012 | Personal Property Damage Expense | 79 | | | | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 30 | | |
| 12/3/2011 | 1/2/2012 | Personal Property Damage Expense | 27 | | | | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 10 | | |
| 12/19/2011 | 1/18/2012 | Personal Property Damage Expense | 239 | | | | 11 | 11 | 11 | 11 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 8 | 91 | | |
| 3/8/2012 | 4/7/2012 | Personal Property Damage Expense | 265 | | | | 9 | 13 | 13 | 13 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 4 | 4 | 4 | 9 | 98 | | |
| 6/17/2012 | 7/17/2012 | Personal Property Damage Expense | 292 | | | | 6 | 14 | 14 | 14 | 3 | 3 | 3 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 10 | 104 | | |
| 6/28/2012 | 7/28/2012 | Personal Property Damage Expense | 185 | | | | 4 | 9 | 9 | 9 | 2 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 6 | 66 | | |
| 7/2/2012 | 8/1/2012 | Personal Property Damage Expense | 243 | | | | 5 | 12 | 12 | 12 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 8 | 86 | | |
| 7/11/2012 | 8/10/2012 | Personal Property Damage Expense | 68 | | | | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 24 | | |
| 7/19/2012 | 8/18/2012 | Personal Property Damage Expense | 26 | | | | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 9 | | | |
| 8/5/2012 | 9/4/2012 | Personal Property Damage Expense | 491 | | | | 8 | 23 | 23 | 6 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 7 | 7 | 8 | 17 | 172 | | |
| 8/5/2012 | 9/4/2012 | Personal Property Damage Expense | 471 | | | | 7 | 22 | 22 | 22 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 17 | 165 | | |
| 8/5/2012 | 9/4/2012 | Personal Property Damage Expense | 108 | | | | 2 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 4 | 38 | | |
| 8/20/2012 | 9/19/2012 | Personal Property Damage Expense | 100 | | | | 1 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 4 | 35 | | |
| 8/27/2012 | 9/26/2012 | Personal Property Damage Expense | 24 | | | | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 28 | | | |
| 9/27/2012 | 10/27/2012 | Personal Property Damage Expense | 24 | | | | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 8 | | | | |
| 10/27/2012 | 11/26/2012 | Personal Property Damage Expense | 158 | | | | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 6 | 54 | | | | |
| 10/29/2012 | 11/28/2012 | Personal Property Damage Expense | 5,084 | | | | 22 | 241 | 241 | 241 | 60 | 60 | 62 | 63 | 62 | 64 | 66 | 69 | 69 | 73 | 77 | 78 | 179 | 1,728 | |
| 10/31/2012 | 11/30/2012 | Personal Property Damage Expense | 431 | | | | 2 | 20 | 20 | 20 | 5 | 5 | 5 | 5 | 5 | 5 | 6 | 6 | 6 | 6 | 7 | 15 | 146 | | |
| 11/2/2012 | 12/2/2012 | Personal Property Damage Expense | 2,450 | | | | 9 | 116 | 116 | 116 | 29 | 29 | 30 | 30 | 30 | 31 | 32 | 33 | 33 | 35 | 37 | 38 | 86 | 831 | |
| 11/30/2012 | 12/30/2012 | Personal Property Damage Expense | 45 | | | | 0 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 15 | | | | |
| 12/5/2012 | 1/4/2013 | Personal Property Damage Expense | 227 | | | | 11 | 11 | 11 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 8 | 76 | | | | |
| 12/19/2012 | 1/18/2013 | Personal Property Damage Expense | 74 | | | | 3 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 25 | | | | |
| 1/23/2013 | 2/22/2013 | Personal Property Damage Expense | 102 | | | | 4 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 4 | 33 | | | |
| 1/27/2013 | 2/26/2013 | Personal Property Damage Expense | 32 | | | | 2 | 2 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 11 | | | | |
| 2/26/2013 | 3/30/2013 | Personal Property Damage Expense | 50 | | | | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 16 | | | | |
| 3/1/2013 | 3/31/2013 | Personal Property Damage Expense | 23 | | | | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 8 | | | | |
| 3/28/2013 | 4/27/2013 | Personal Property Damage Expense | 84 | | | | 3 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 27 | | | | |
| 3/29/2013 | 4/28/2013 | Personal Property Damage Expense | 80 | | | | 3 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 26 | | | | |
| 3/29/2013 | 4/28/2013 | Personal Property Damage Expense | 79 | | | | 3 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 26 | | | | |
| 4/4/2013 | 5/4/2013 | Personal Property Damage Expense | 541 | | | | 17 | 26 | 26 | 6 | 6 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 8 | 8 | 8 | 19 | 173 | | |
| 4/4/2013 | 5/4/2013 | Personal Property Damage Expense | 37 | | | | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 12 | | | |
| 4/5/2013 | 5/5/2013 | Personal Property Damage Expense | 252 | | | | 8 | 12 | 12 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 9 | 81 | | |
| 4/12/2013 | 5/12/2013 | Personal Property Damage Expense | 167 | | | | 5 | 8 | 8 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 6 | 53 | | |
| 4/23/2013 | 5/23/2013 | Personal Property Damage Expense | 1,165 | | | | 34 | 55 | 55 | 14 | 14 | 14 | 14 | 14 | 15 | 15 | 16 | 16 | 17 | 18 | 18 | 41 | 369 | | |
| 4/25/2013 | 5/25/2013 | Personal Property Damage Expense | 753 | | | | 22 | 36 | 36 | 9 | 9 | 9 | 9 | 9 | 9 | 10 | 10 | 10 | 11 | 11 | 12 | 26 | 238 | | |
| 5/7/2013 | 6/6/2013 | Personal Property Damage Expense | 64 | | | | 2 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 20 | | | |
| 5/9/2013 | 6/8/2013 | Personal Property Damage Expense | 138 | | | | 4 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 43 | | | |
| 5/13/2013 | 6/14/2013 | Personal Property Damage Expense | 59 | | | | 2 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 19 | | | |
| 5/17/2013 | 6/16/2013 | Personal Property Damage Expense | 81 | | | | 2 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 26 | | | |
| 6/1/2013 | 7/1/2013 | Personal Property Damage Expense | 120 | | | | 3 | 6 | 6 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 2 | 4 | 37 | | | |
| 6/13/2013 | 7/13/2013 | Personal Property Damage Expense | 601 | | | | 13 | 29 | 29 | 7 | 7 | 7 | 7 | 7 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 21 | 187 | | |
| 6/15/2013 | 7/16/2013 | Personal Property Damage Expense | 332 | | | | 7 | 16 | 16 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 5 | 5 | 12 | 103 | | |
| 6/30/2013 | 7/30/2013 | Personal Property Damage Expense | 190 | | | | 4 | 9 | 9 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 7 | 58 | | |
| 7/21/2013 | 8/20/2013 | Personal Property Damage Expense | 106 | | | | 2 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 4 | 32 | | |
| 8/1/2013 | 8/31/2013 | Personal Property Damage Expense | 25 | | | | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 7 | | | |
| 8/2/2013 | 9/1/2013 | Personal Property Damage Expense | 221 | | | | 3 | 11 | 11 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 8 | 67 | | | |
| 8/2/2013 | 9/1/2013 | Personal Property Damage Expense | 41 | | | | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 13 | | | |
| 8/2/2013 | 9/1/2013 | Personal Property Damage Expense | 191 | | | | 3 | 9 | 9 | 2 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 7 | 58 | | | |
| 8/7/2013 | 9/6/2013 | Personal Property Damage Expense | 99 | | | | 1 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 30 | | | |
| 8/9/2013 | 9/8/2013 | Personal Property Damage Expense | 32 | | | | 0 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 10 | | | |
| 8/10/2013 | 9/9/2013 | Personal Property Damage Expense | 51 | | | | 0 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 15 | | | |
| 8/10/2013 | 9/9/2013 | Personal Property Damage Expense | 16 | | | | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 5 | | | |
| 8/12/2013 | 9/11/2013 | Personal Property Damage Expense | 26 | | | | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 8 | | | |
| 8/13/2013 | 9/14/2013 | Personal Property Damage Expense | 98 | | | | 4 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 30 | | | | |
| 8/15/2013 | 9/14/2013 | Personal Property Damage Expense | 86 | | | | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 26 | | | | |
| 8/17/2013 | 9/16/2013 | Personal Property Damage Expense | 39 | | | | 1 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 12 | | | | |
| 8/25/2013 | 9/24/2013 | Personal Property Damage Expense | 237 | | | | 3 | 11 | 11 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 8 | 71 | | | | |
| 9/5/2013 | 10/5/2013 | Personal Property Damage Expense | 389 | | | | 4 | 18 | 18 | 5 | 4 | 4 | 4 | 4 | 5 | 5 | 5 | 5 | 6 | 6 | 14 | 117 | | | |
| 9/6/2013 | 10/6/2013 | Personal Property Damage Expense | 318 | | | | 4 | 15 | 15 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 5 | 12 | 95 | | | |
| 9/6/2013 | 10/6/2013 | Personal Property Damage Expense | 689 | | | | 8 | 33 | 33 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 9 | 10 | 10 | 11 | 24 | 206 | | | |
| 9/6/2013 | 10/6/2013 | Personal Property Damage Expense | 180 | | | | 2 | 9 | 9 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 6 | 54 | | | |
| 11/5/2013 | 12/5/2013 | Personal Property Damage Expense | 8,651 | | | | 29 | 411 | 411 | 102 | 103 | 105 | 107 | 106 | 109 | 113 | 117 | 118 | 123 | 130 | 133 | 305 | 2,521 | | |
| 12/1/2013 | 12/31/2013 | Personal Property Damage Expense | 58 | | | | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 17 | | | | |
| 7/6/2014 | 8/5/2014 | Personal Property Damage Expense | 5,447 | | | | 105 | 263 | 64 | 65 | 66 | 67 | 67 | 68 | 71 | 73 | 74 | 78 | 82 | 84 | 192 | 1,415 | | | |
| 10/6/2014 | 11/5/2014 | Personal Property Damage Expense | 338 | | | | 2 | 15 | 4 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 5 | 5 | 12 | 85 | | | | |
| 9/30/2016 | 10/30/2016 | Personal Property Damage Expense | 1,000 | | | | | | | | | 18 | 26 | 27 | 28 | 29 | 29 | 31 | 33 | 33 | 76 | 327 | | | |
| 11/9/2016 | 12/9/2016 | Personal Property Damage Expense | 5,203 | | | | | | | | | | 9 | 39 | 40 | 42 | 44 | 46 | 48 | 50 | 114 | 473 | | | |
| 11/9/2016 | 12/9/2016 | Personal Property Damage Expense | 3,240 | | | | | | | | | | 5 | 24 | 25 | 26 | 27 | 29 | 30 | 31 | 71 | 294 | | | |
| 12/20/2016 | 1/19/2017 | Personal Property Damage Expense | 4,090 | | | | | | | | | | | 2 | 33 | 34 | 36 | 37 | 39 | 41 | 93 | 313 | | | |
| 5/22/2017 | 6/21/2017 | Personal Property Damage Expense | 410 | | | | | | | | | | | | 3 | 6 | 6 | 6 | 6 | 15 | 48 | | | | |
| 7/21/2017 | 8/21/2017 | Personal Property Damage Expense | 230 | | | | | | | | | | | | | 2 | 3 | 3 | 4 | 8 | 22 | | | | |
| 7/24/2017 | 8/23/2017 | Personal Property Damage Expense | 4,049 | | | | | | | | | | | | | 33 | 58 | 60 | 62 | 143 | 453 | | | | |
| 7/25/2018 | 8/24/2018 | Personal Property Damage Expense | 1,240 | | | | | | | | | | | | | | | | 3 | 14 | 33 | 50 | | | |
| 7/12/2018 | 8/11/2018 | Personal Property Damage Expense | 1,240 | | | | | | | | | | | | | | | | 3 | 16 | 19 | 44 | | | 102 |
| | | **Personal Property Damage Expense Total** | $ 99,051 | $ - | $ - | $ - | $ 499 | $ 2,459 | $ 2,560 | $ 630 | $ 2,597 | $ 3,238 | $ 3,925 | $ 4,092 | $ 1,017 | $ 1,024 | $ 1,048 | $ 1,091 | $ 1,139 | $ 1,171 | $ 1,240 | $ 1,317 | $ 1,335 | $ 1,410 | $ 1,485 | $ 1,520 | $ 3,487 | $ 37,889 |
| 2/27/2008 | 3/28/2008 | Additional Damages - W Foster Living | 2 | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| 2/27/2008 | 3/27/2008 | Additional Damages - W Foster Living | 96 | 12 | 6 | 6 | 1 | 4 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 3 | 64 |
| 2/28/2008 | 3/29/2008 | Additional Damages - W Foster Living | 3,316 | 277 | 255 | 199 | 149 | 49 | 158 | 158 | 158 | 158 | 39 | 39 | 40 | 41 | 41 | 41 | 43 | 45 | 45 | 47 | 50 | 51 | 117 | 2,300 |
| 3/24/2008 | 4/23/2008 | Additional Damages - W Foster Living | 140 | 11 | 11 | 8 | 6 | 2 | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 97 |
| 3/24/2008 | 4/23/2008 | Additional Damages - W Foster Living | 3,526 | 280 | 280 | 212 | 158 | 49 | 167 | 167 | 167 | 167 | 41 | 41 | 42 | 44 | 44 | 46 | 47 | 48 | 48 | 50 | 53 | 54 | 124 | 2,447 |
| 4/22/2008 | 5/22/2008 | Additional Damages - W Foster Living | 92 | 7 | 7 | 6 | 4 | 1 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 60 |
| 4/21/2008 | 5/21/2008 | Additional Damages - W Foster Living | 72 | 6 | 6 | 4 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 47 |
| 4/22/2008 | 5/22/2008 | Additional Damages - W Foster Living | 3,526 | 231 | 282 | 212 | 158 | 49 | 167 | 167 | 167 | 167 | 41 | 41 | 42 | 44 | 44 | 46 | 47 | 48 | 48 | 50 | 53 | 54 | 124 | 2,276 |
| 5/27/2008 | 6/26/2008 | Additional Damages - W Foster Living | 30 | 2 | 2 | 2 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 18 |
| 5/27/2008 | 6/26/2008 | Additional Damages - W Foster Living | 3,600 | 204 | 288 | 216 | 162 | 50 | 171 | 171 | 171 | 171 | 42 | 42 | 43 | 45 | 45 | 47 | 48 | 49 | 49 | 51 | 54 | 55 | 127 | 2,300 |
| 5/27/2008 | 6/26/2008 | Additional Damages - W Foster Living | 338 | 18 | 27 | 20 | 15 | 5 | 16 | 16 | 16 | 16 | 4 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 5 | 5 | 5 | 5 | 12 | 216 |
| 6/17/2008 | 7/17/2008 | Additional Damages - W Foster Living | 410 | 21 | 33 | 25 | 18 | 6 | 20 | 20 | 20 | 20 | 5 | 5 | 5 | 5 | 5 | 5 | 6 | 6 | 6 | 6 | 6 | 6 | 15 | 268 |
| 6/20/2008 | 7/20/2008 | Additional Damages - W Foster Living | 95 | 5 | 8 | 6 | 4 | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 63 |
| 6/20/2008 | 7/20/2008 | Additional Damages - W Foster Living | 32 | 2 | 3 | 2 | 1 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 21 |

Exhibit 6.3A
Calculation of Prejudgment Interest Detail - William and Vicki Foster

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Amount | 12/31/2008 | 12/31/2009 | 12/31/2010 | 9/30/2011 | 12/31/2011 | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 3/31/2016 | 6/30/2016 | 9/30/2016 | 12/31/2016 | 3/31/2017 | 6/30/2017 | 9/30/2017 | 12/31/2017 | 3/31/2018 | 6/30/2018 | 9/30/2018 | 12/31/2018 | 7/22/2019 | Total Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/28/2008 | 7/28/2008 | Additional Damages - W Foster Living | 3,526 | 166 | 282 | 212 | 158 | 42 | 167 | 167 | 167 | 167 | 42 | 42 | 43 | 44 | 43 | 44 | 46 | 48 | 48 | 50 | 53 | 54 | 124 | 2,211 |
| 7/22/2008 | 8/21/2008 | Additional Damages - W Foster Living | 127 | 5 | 10 | 8 | 6 | 2 | 6 | 6 | 6 | 6 | 1 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 4 | 79 |
| 7/28/2008 | 8/27/2008 | Additional Damages - W Foster Living | 32 | 1 | 3 | 2 | 1 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 20 |
| 8/8/2008 | 9/7/2008 | Additional Damages - W Foster Living | 3,526 | 122 | 282 | 212 | 158 | 42 | 167 | 167 | 167 | 167 | 42 | 42 | 43 | 44 | 43 | 44 | 46 | 48 | 48 | 50 | 53 | 54 | 124 | 2,167 |
| 8/15/2008 | 9/14/2008 | Additional Damages - W Foster Living | 41 | 1 | 3 | 2 | 2 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 25 |
| 8/20/2008 | 9/19/2008 | Additional Damages - W Foster Living | 32 | 1 | 3 | 2 | 1 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 20 |
| 8/20/2008 | 9/19/2008 | Additional Damages - W Foster Living | 139 | 4 | 11 | 8 | 6 | 2 | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 85 |
| 8/27/2008 | 9/26/2008 | Additional Damages - W Foster Living | 3,526 | 102 | 282 | 212 | 158 | 42 | 167 | 167 | 167 | 167 | 42 | 42 | 43 | 44 | 43 | 44 | 46 | 48 | 48 | 50 | 53 | 54 | 124 | 2,147 |
| 9/22/2008 | 10/22/2008 | Additional Damages - W Foster Living | 32 | 1 | 3 | 2 | 1 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 19 |
| 9/22/2008 | 10/22/2008 | Additional Damages - W Foster Living | 134 | 3 | 11 | 8 | 6 | 2 | 6 | 6 | 6 | 6 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 80 |
| 9/28/2008 | 10/28/2008 | Additional Damages - W Foster Living | 3,526 | 68 | 282 | 212 | 158 | 42 | 167 | 167 | 167 | 167 | 42 | 42 | 43 | 44 | 43 | 44 | 46 | 48 | 48 | 50 | 53 | 54 | 124 | 2,113 |
| 10/17/2008 | 11/16/2008 | Additional Damages - W Foster Living | 42 | 1 | 3 | 3 | 2 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 25 |
| 10/24/2008 | 11/23/2008 | Additional Damages - W Foster Living | 32 | 0 | 3 | 2 | 1 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 19 |
| 10/24/2008 | 11/23/2008 | Additional Damages - W Foster Living | 84 | 1 | 7 | 5 | 4 | 1 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 50 |
| 10/29/2008 | 11/28/2008 | Additional Damages - W Foster Living | 3,526 | 35 | 282 | 212 | 158 | 42 | 167 | 167 | 167 | 167 | 42 | 42 | 43 | 44 | 43 | 44 | 46 | 48 | 48 | 50 | 53 | 54 | 124 | 2,080 |
| 11/18/2008 | 12/18/2008 | Additional Damages - W Foster Living | 115 | 0 | 9 | 7 | 5 | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 4 | 67 |
| 11/28/2008 | 12/28/2008 | Additional Damages - W Foster Living | 32 | 0 | 3 | 2 | 1 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 19 |
| 11/28/2008 | 12/28/2008 | Additional Damages - W Foster Living | 3,108 | 3 | 249 | 186 | 139 | 37 | 148 | 148 | 148 | 148 | 37 | 37 | 38 | 38 | 38 | 39 | 40 | 42 | 42 | 44 | 47 | 48 | 109 | 1,805 |
| 12/12/2008 | 1/11/2009 | Additional Damages - W Foster Living | 30 | - | 2 | 2 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 17 |
| 12/17/2008 | 1/16/2009 | Additional Damages - W Foster Living | 40 | - | 3 | 2 | 2 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 23 |
| 12/20/2008 | 1/19/2009 | Additional Damages - W Foster Living | 147 | - | 11 | 9 | 7 | 2 | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 85 |
| 12/22/2008 | 1/21/2009 | Additional Damages - W Foster Living | 271 | - | 20 | 16 | 12 | 3 | 13 | 13 | 13 | 13 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 4 | 4 | 4 | 10 | 156 |
| 12/30/2008 | 1/29/2009 | Additional Damages - W Foster Living | 3,108 | - | 229 | 186 | 139 | 37 | 148 | 148 | 148 | 148 | 37 | 37 | 38 | 38 | 38 | 39 | 40 | 42 | 42 | 44 | 47 | 48 | 109 | 1,783 |
| 1/22/2009 | 2/21/2009 | Additional Damages - W Foster Living | 99 | - | 7 | 6 | 4 | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 3 | 56 |
| 1/22/2009 | 2/21/2009 | Additional Damages - W Foster Living | 274 | - | 19 | 16 | 12 | 3 | 13 | 13 | 13 | 13 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 4 | 4 | 4 | 10 | 156 |
| 1/29/2009 | 2/28/2009 | Additional Damages - W Foster Living | 3,110 | - | 209 | 187 | 140 | 37 | 148 | 148 | 148 | 148 | 37 | 37 | 38 | 38 | 38 | 39 | 41 | 42 | 42 | 44 | 47 | 48 | 109 | 1,763 |
| 2/19/2009 | 3/21/2009 | Additional Damages - W Foster Living | 104 | - | 7 | 6 | 5 | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 4 | 59 |
| 2/19/2009 | 3/21/2009 | Additional Damages - W Foster Living | 3,108 | - | 194 | 186 | 139 | 37 | 148 | 148 | 148 | 148 | 37 | 37 | 38 | 38 | 38 | 39 | 40 | 42 | 42 | 44 | 47 | 48 | 109 | 1,748 |
| 2/19/2009 | 3/21/2009 | Additional Damages - W Foster Living | 352 | - | 22 | 21 | 16 | 4 | 17 | 17 | 17 | 17 | 4 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 5 | 5 | 5 | 5 | 12 | 198 |
| 3/1/2009 | 3/31/2009 | Additional Damages - W Foster Living | 205 | - | 12 | 12 | 9 | 2 | 10 | 10 | 10 | 10 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 115 |
| 6/1/2013 | 7/1/2013 | Additional Damages - W Foster Living | 325 | - | - | - | - | - | - | 8 | 15 | 15 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 5 | 11 | 101 |
| 6/15/2013 | 7/15/2013 | Additional Damages - W Foster Living | 460 | - | - | - | - | - | - | 10 | 22 | 22 | 5 | 5 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 16 | 143 |
| 7/1/2013 | 7/31/2013 | Additional Damages - W Foster Living | 650 | - | - | - | - | - | - | 13 | 31 | 31 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 23 | 200 |
| 7/4/2013 | 8/3/2013 | Additional Damages - W Foster Living | 425 | - | - | - | - | - | - | 8 | 20 | 20 | 5 | 5 | 5 | 5 | 5 | 5 | 6 | 6 | 6 | 6 | 6 | 7 | 15 | 131 |
| 8/2/2013 | 9/1/2013 | Additional Damages - W Foster Living | 191 | - | - | - | - | - | - | 3 | 9 | 9 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 7 | 58 |
| 8/30/2013 | 9/29/2013 | Additional Damages - W Foster Living | 650 | - | - | - | - | - | - | 8 | 31 | 31 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 23 | 195 |
| 9/27/2013 | 10/27/2013 | Additional Damages - W Foster Living | 349 | - | - | - | - | - | - | 3 | 17 | 17 | 4 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 5 | 5 | 5 | 5 | 12 | 103 |
| 9/27/2013 | 10/27/2013 | Additional Damages - W Foster Living | 650 | - | - | - | - | - | - | 5 | 31 | 31 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 23 | 193 |
| 10/22/2013 | 11/21/2013 | Additional Damages - W Foster Living | 638 | - | - | - | - | - | - | 3 | 30 | 30 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 22 | 187 |
| 10/30/2013 | 11/29/2013 | Additional Damages - W Foster Living | 650 | - | - | - | - | - | - | 3 | 31 | 31 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 23 | 190 |
| 11/25/2013 | 12/25/2013 | Additional Damages - W Foster Living | 650 | - | - | - | - | - | - | 1 | 31 | 31 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 23 | 188 |
| 12/1/2013 | 12/31/2013 | Additional Damages - W Foster Living | 650 | - | - | - | - | - | - | - | 31 | 31 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 23 | 187 |
| 1/30/2014 | 3/1/2014 | Additional Damages - W Foster Living | 675 | - | - | - | - | - | - | - | 27 | 32 | 8 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 10 | 24 | 189 |
| 2/27/2014 | 3/29/2014 | Additional Damages - W Foster Living | 675 | - | - | - | - | - | - | - | 24 | 32 | 8 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 10 | 24 | 187 |
| 3/26/2014 | 4/25/2014 | Additional Damages - W Foster Living | 675 | - | - | - | - | - | - | - | 22 | 32 | 8 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 10 | 24 | 184 |
| 4/28/2014 | 5/28/2014 | Additional Damages - W Foster Living | 675 | - | - | - | - | - | - | - | 19 | 32 | 8 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 10 | 24 | 181 |
| 5/29/2014 | 6/28/2014 | Additional Damages - W Foster Living | 675 | - | - | - | - | - | - | - | 16 | 32 | 8 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 10 | 24 | 179 |
| 7/2/2014 | 8/1/2014 | Additional Damages - W Foster Living | 675 | - | - | - | - | - | - | - | 13 | 32 | 8 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 10 | 24 | 176 |
| 7/31/2014 | 8/30/2014 | Additional Damages - W Foster Living | 675 | - | - | - | - | - | - | - | 11 | 32 | 8 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 10 | 24 | 173 |
| 9/2/2014 | 10/2/2014 | Additional Damages - W Foster Living | 675 | - | - | - | - | - | - | - | 8 | 32 | 8 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 10 | 24 | 170 |
| 9/30/2014 | 10/30/2014 | Additional Damages - W Foster Living | 675 | - | - | - | - | - | - | - | 5 | 32 | 8 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 10 | 24 | 168 |
| 10/29/2014 | 11/28/2014 | Additional Damages - W Foster Living | 675 | - | - | - | - | - | - | - | 3 | 32 | 8 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 10 | 24 | 165 |
| 11/28/2014 | 12/28/2014 | Additional Damages - W Foster Living | 675 | - | - | - | - | - | - | - | 0 | 32 | 8 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 10 | 24 | 163 |
| 12/31/2014 | 1/30/2015 | Additional Damages - W Foster Living | 675 | - | - | - | - | - | - | - | - | 29 | 8 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 10 | 24 | 160 |
| 1/30/2015 | 3/1/2015 | Additional Damages - W Foster Living | 675 | - | - | - | - | - | - | - | - | 27 | 8 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 10 | 24 | 157 |
| 2/26/2015 | 3/28/2015 | Additional Damages - W Foster Living | 675 | - | - | - | - | - | - | - | - | 24 | 8 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 10 | 24 | 155 |
| 3/27/2015 | 4/26/2015 | Additional Damages - W Foster Living | 675 | - | - | - | - | - | - | - | - | 22 | 8 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 10 | 24 | 152 |
| 4/30/2015 | 5/30/2015 | Additional Damages - W Foster Living | 675 | - | - | - | - | - | - | - | - | 19 | 8 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 10 | 24 | 149 |
| 5/1/2015 | 5/31/2015 | Additional Damages - W Foster Living | 675 | - | - | - | - | - | - | - | - | 19 | 8 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 10 | 24 | 149 |
| 5/25/2015 | 6/24/2015 | Additional Damages - W Foster Living | 770 | - | - | - | - | - | - | - | - | 19 | 9 | 9 | 9 | 10 | 9 | 10 | 10 | 10 | 10 | 11 | 12 | 12 | 27 | 168 |
| 6/1/2015 | 7/1/2015 | Additional Damages - W Foster Living | 200 | - | - | - | - | - | - | - | - | 5 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 43 |
| 6/25/2015 | 7/25/2015 | Additional Damages - W Foster Living | 770 | - | - | - | - | - | - | - | - | 16 | 9 | 9 | 9 | 10 | 9 | 10 | 10 | 10 | 10 | 11 | 12 | 12 | 27 | 165 |
| 7/1/2015 | 7/31/2015 | Additional Damages - W Foster Living | 200 | - | - | - | - | - | - | - | - | 4 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 43 |
| 7/25/2015 | 8/24/2015 | Additional Damages - W Foster Living | 770 | - | - | - | - | - | - | - | - | 13 | 9 | 9 | 9 | 10 | 9 | 10 | 10 | 10 | 10 | 11 | 12 | 12 | 27 | 162 |
| 8/15/2015 | 9/14/2015 | Additional Damages - W Foster Living | 400 | - | - | - | - | - | - | - | - | 6 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 6 | 6 | 6 | 14 | 83 |
| 8/27/2015 | 9/26/2015 | Additional Damages - W Foster Living | 770 | - | - | - | - | - | - | - | - | 10 | 9 | 9 | 9 | 10 | 9 | 10 | 10 | 10 | 10 | 11 | 12 | 12 | 27 | 158 |
| 9/26/2015 | 10/26/2015 | Additional Damages - W Foster Living | 250 | - | - | - | - | - | - | - | - | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 9 | 50 |
| 9/27/2015 | 10/27/2015 | Additional Damages - W Foster Living | 930 | - | - | - | - | - | - | - | - | 8 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 13 | 13 | 13 | 14 | 14 | 33 | 187 |
| 9/27/2015 | 10/27/2015 | Additional Damages - W Foster Living | 87 | - | - | - | - | - | - | - | - | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 17 |
| 10/30/2015 | 11/29/2015 | Additional Damages - W Foster Living | 930 | - | - | - | - | - | - | - | - | 4 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 13 | 13 | 13 | 14 | 14 | 33 | 183 |
| 11/18/2015 | 12/18/2015 | Additional Damages - W Foster Living | 65 | - | - | - | - | - | - | - | - | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 13 |
| 11/23/2015 | 12/23/2015 | Additional Damages - W Foster Living | 200 | - | - | - | - | - | - | - | - | 0 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 39 |
| 12/1/2015 | 12/31/2015 | Additional Damages - W Foster Living | 501 | - | - | - | - | - | - | - | - | - | 6 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 7 | 8 | 8 | 18 | 97 |
| 12/9/2015 | 1/8/2016 | Additional Damages - W Foster Living | 400 | - | - | - | - | - | - | - | - | - | 4 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 6 | 6 | 6 | 14 | 77 |
| 12/10/2015 | 1/9/2016 | Additional Damages - W Foster Living | 145 | - | - | - | - | - | - | - | - | - | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 28 |
| 12/31/2015 | 1/30/2016 | Additional Damages - W Foster Living | 212 | - | - | - | - | - | - | - | - | - | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 40 |
| 1/5/2016 | 2/4/2016 | Additional Damages - W Foster Living | 58 | - | - | - | - | - | - | - | - | - | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 11 |
| 1/8/2016 | 2/7/2016 | Additional Damages - W Foster Living | 513 | - | - | - | - | - | - | - | - | - | 4 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 7 | 8 | 8 | 18 | 97 |
| 1/9/2016 | 2/8/2016 | Additional Damages - W Foster Living | 47 | - | - | - | - | - | - | - | - | - | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 9 |
| 1/18/2016 | 2/17/2016 | Additional Damages - W Foster Living | 194 | - | - | - | - | - | - | - | - | - | 1 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 36 |
| 1/28/2016 | 2/27/2016 | Additional Damages - W Foster Living | 51 | - | - | - | - | - | - | - | - | - | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 10 |
| 1/28/2016 | 2/27/2016 | Additional Damages - W Foster Living | 630 | - | - | - | - | - | - | - | - | - | 3 | 7 | 8 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 22 | 117 |
| 2/1/2016 | 3/2/2016 | Additional Damages - W Foster Living | 57 | - | - | - | - | - | - | - | - | - | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 10 |
| 2/17/2016 | 3/18/2016 | Additional Damages - W Foster Living | 194 | - | - | - | - | - | - | - | - | - | 0 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 35 |
| 2/21/2016 | 3/22/2016 | Additional Damages - W Foster Living | 58 | - | - | - | - | - | - | - | - | - | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 10 |
| 2/25/2016 | 3/26/2016 | Additional Damages - W Foster Living | 630 | - | - | - | - | - | - | - | - | - | 0 | 7 | 8 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 22 | 115 |
| 3/11/2016 | 4/10/2016 | Additional Damages - W Foster Living | 130 | - | - | - | - | - | - | - | - | - | - | 1 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 23 |
| 3/19/2016 | 4/18/2016 | Additional Damages - W Foster Living | 194 | - | - | - | - | - | - | - | - | - | - | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 35 |
| 3/22/2016 | 4/21/2016 | Additional Damages - W Foster Living | 631 | - | - | - | - | - | - | - | - | - | - | 6 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 9 | 10 | 22 | 113 |
| 3/28/2016 | 4/27/2016 | Additional Damages - W Foster Living | 139 | - | - | - | - | - | - | - | - | - | - | 1 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 25 |
| 3/29/2016 | 4/28/2016 | Additional Damages - W Foster Living | 58 | - | - | - | - | - | - | - | - | - | - | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 10 |
| 4/11/2016 | 5/11/2016 | Additional Damages - W Foster Living | 64 | - | - | - | - | - | - | - | - | - | - | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 11 |
| 4/17/2016 | 5/17/2016 | Additional Damages - W Foster Living | 195 | - | - | - | - | - | - | - | - | - | - | 1 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 34 |
| 4/28/2016 | 5/28/2016 | Additional Damages - W Foster Living | 631 | - | - | - | - | - | - | - | - | - | - | 3 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 9 | 10 | 22 | 110 |
| 4/30/2016 | 5/30/2016 | Additional Damages - W Foster Living | 57 | - | - | - | - | - | - | - | - | - | - | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 10 |
| 5/10/2016 | 6/9/2016 | Additional Damages - W Foster Living | 52 | - | - | - | - | - | - | - | - | - | - | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 9 |
| 5/16/2016 | 6/15/2016 | Additional Damages - W Foster Living | 53 | - | - | - | - | - | - | - | - | - | - | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 9 |
| 5/18/2016 | 6/17/2016 | Additional Damages - W Foster Living | 194 | - | - | - | - | - | - | - | - | - | - | 0 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 33 |
| 5/26/2016 | 6/25/2016 | Additional Damages - W Foster Living | 33 | - | - | - | - | - | - | - | - | - | - | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 6 |
| 5/30/2016 | 6/29/2016 | Additional Damages - W Foster Living | 57 | - | - | - | - | - | - | - | - | - | - | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 10 |
| 5/31/2016 | 6/30/2016 | Additional Damages - W Foster Living | 631 | - | - | - | - | - | - | - | - | - | - | - | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 9 | 10 | 22 | 107 |
| 6/17/2016 | 7/17/2016 | Additional Damages - W Foster Living | 194 | - | - | - | - | - | - | - | - | - | - | - | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 32 |
| 6/17/2016 | 7/17/2016 | Additional Damages - W Foster Living | 631 | - | - | - | - | - | - | - | - | - | - | - | 6 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 9 | 10 | 22 | 105 |
| 6/28/2016 | 7/28/2016 | Additional Damages - W Foster Living | 33 | - | - | - | - | - | - | - | - | - | - | - | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 6 |
| 6/30/2016 | 7/30/2016 | Additional Damages - W Foster Living | 57 | - | - | - | - | - | - | - | - | - | - | - | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 9 |

Exhibit 6.3A
Calculation of Prejudgment Interest Detail - William and Vicki Foster

Chinese Drywall Litigation Involving Priority Claimants

| Damage Date | Measurement Date | Damage Component | Amount | 12/31/2008 | 12/31/2009 | 12/31/2010 | 9/30/2011 | 12/31/2011 | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 3/31/2016 | 6/30/2016 | 9/30/2016 | 12/31/2016 | 3/31/2017 | 6/30/2017 | 9/30/2017 | 12/31/2017 | 3/31/2018 | 6/30/2018 | 9/30/2018 | 12/31/2018 | 7/22/2019 | Total Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7/18/2016 | 8/17/2016 | Additional Damages - W Foster Living | 194 | - | - | - | - | - | - | - | - | - | - | - | 1 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 7 | 32 |
| 7/24/2016 | 8/23/2016 | Additional Damages - W Foster Living | 631 | - | - | - | - | - | - | - | - | - | - | - | 3 | 8 | 8 | 8 | 9 | 9 | 9 | 9 | 10 | 22 | 102 |
| 7/27/2016 | 8/26/2016 | Additional Damages - W Foster Living | 631 | - | - | - | - | - | - | - | - | - | - | - | 3 | 8 | 8 | 8 | 9 | 9 | 9 | 9 | 10 | 22 | 102 |
| 7/30/2016 | 8/29/2016 | Additional Damages - W Foster Living | 57 | - | - | - | - | - | - | - | - | - | - | - | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 9 |
| 8/9/2016 | 9/8/2016 | Additional Damages - W Foster Living | 31 | - | - | - | - | - | - | - | - | - | - | - | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 5 |
| 8/17/2016 | 9/16/2016 | Additional Damages - W Foster Living | 194 | - | - | - | - | - | - | - | - | - | - | - | 0 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 7 | 31 |
| 8/30/2016 | 9/29/2016 | Additional Damages - W Foster Living | 57 | - | - | - | - | - | - | - | - | - | - | - | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 9 |
| 9/9/2016 | 10/9/2016 | Additional Damages - W Foster Living | 42 | - | - | - | - | - | - | - | - | - | - | - | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 7 |
| 9/17/2016 | 10/17/2016 | Additional Damages - W Foster Living | 194 | - | - | - | - | - | - | - | - | - | - | - | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 30 |
| 9/26/2016 | 10/26/2016 | Additional Damages - W Foster Living | 631 | - | - | - | - | - | - | - | - | - | - | - | 5 | 8 | 8 | 8 | 9 | 9 | 9 | 9 | 10 | 22 | 97 |
| 9/30/2016 | 10/30/2016 | Additional Damages - W Foster Living | 57 | - | - | - | - | - | - | - | - | - | - | - | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 9 |
| 10/12/2016 | 11/11/2016 | Additional Damages - W Foster Living | 40 | - | - | - | - | - | - | - | - | - | - | - | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 6 |
| 10/18/2016 | 11/17/2016 | Additional Damages - W Foster Living | 168 | - | - | - | - | - | - | - | - | - | - | - | 1 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 6 | 25 |
| 10/27/2016 | 11/26/2016 | Additional Damages - W Foster Living | 631 | - | - | - | - | - | - | - | - | - | - | - | 3 | 8 | 8 | 8 | 9 | 9 | 9 | 9 | 10 | 22 | 94 |
| 10/30/2016 | 11/29/2016 | Additional Damages - W Foster Living | 57 | - | - | - | - | - | - | - | - | - | - | - | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 8 |
| 11/3/2016 | 12/3/2016 | Additional Damages - W Foster Living | 29 | - | - | - | - | - | - | - | - | - | - | - | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 4 |
| 11/17/2016 | 12/17/2016 | Additional Damages - W Foster Living | 168 | - | - | - | - | - | - | - | - | - | - | - | 0 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 6 | 25 |
| 11/28/2016 | 12/28/2016 | Additional Damages - W Foster Living | 631 | - | - | - | - | - | - | - | - | - | - | - | 0 | 8 | 8 | 8 | 9 | 9 | 9 | 9 | 10 | 22 | 92 |
| 11/30/2016 | 12/30/2016 | Additional Damages - W Foster Living | 57 | - | - | - | - | - | - | - | - | - | - | - | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 8 |
| 12/9/2016 | 1/8/2017 | Additional Damages - W Foster Living | 48 | - | - | - | - | - | - | - | - | - | - | - | - | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 7 |
| 12/18/2016 | 1/17/2017 | Additional Damages - W Foster Living | 112 | - | - | - | - | - | - | - | - | - | - | - | - | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 4 | 16 |
| 12/25/2016 | 1/24/2017 | Additional Damages - W Foster Living | 647 | - | - | - | - | - | - | - | - | - | - | - | - | 6 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 23 | 92 |
| 1/1/2017 | 1/31/2017 | Additional Damages - W Foster Living | 57 | - | - | - | - | - | - | - | - | - | - | - | - | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 8 |
| 1/12/2017 | 2/11/2017 | Additional Damages - W Foster Living | 109 | - | - | - | - | - | - | - | - | - | - | - | - | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 4 | 15 |
| 1/17/2017 | 2/16/2017 | Additional Damages - W Foster Living | 187 | - | - | - | - | - | - | - | - | - | - | - | - | 1 | 2 | 2 | 3 | 3 | 3 | 3 | 7 | 26 |
| 1/30/2017 | 3/1/2017 | Additional Damages - W Foster Living | 62 | - | - | - | - | - | - | - | - | - | - | - | - | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 8 |
| 1/30/2017 | 3/1/2017 | Additional Damages - W Foster Living | 652 | - | - | - | - | - | - | - | - | - | - | - | - | 3 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 23 | 89 |
| 2/10/2017 | 3/12/2017 | Additional Damages - W Foster Living | 96 | - | - | - | - | - | - | - | - | - | - | - | - | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 13 |
| 2/17/2017 | 3/19/2017 | Additional Damages - W Foster Living | 187 | - | - | - | - | - | - | - | - | - | - | - | - | 0 | 2 | 2 | 3 | 3 | 3 | 3 | 7 | 25 |
| 2/27/2017 | 3/29/2017 | Additional Damages - W Foster Living | 652 | - | - | - | - | - | - | - | - | - | - | - | - | 0 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 23 | 87 |
| 3/2/2017 | 4/1/2017 | Additional Damages - W Foster Living | 65 | - | - | - | - | - | - | - | - | - | - | - | - | - | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 9 |
| 3/13/2017 | 4/12/2017 | Additional Damages - W Foster Living | 90 | - | - | - | - | - | - | - | - | - | - | - | - | - | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 12 |
| 3/21/2017 | 4/20/2017 | Additional Damages - W Foster Living | 187 | - | - | - | - | - | - | - | - | - | - | - | - | - | 2 | 2 | 3 | 3 | 3 | 3 | 7 | 24 |
| 3/30/2017 | 4/29/2017 | Additional Damages - W Foster Living | 65 | - | - | - | - | - | - | - | - | - | - | - | - | - | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 8 |
| 3/31/2017 | 4/30/2017 | Additional Damages - W Foster Living | 652 | - | - | - | - | - | - | - | - | - | - | - | - | - | 6 | 8 | 9 | 9 | 9 | 10 | 10 | 23 | 84 |
| 4/10/2017 | 5/10/2017 | Additional Damages - W Foster Living | 86 | - | - | - | - | - | - | - | - | - | - | - | - | - | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 11 |
| 4/17/2017 | 5/17/2017 | Additional Damages - W Foster Living | 187 | - | - | - | - | - | - | - | - | - | - | - | - | - | 1 | 2 | 3 | 3 | 3 | 3 | 7 | 24 |
| 4/30/2017 | 5/30/2017 | Additional Damages - W Foster Living | 65 | - | - | - | - | - | - | - | - | - | - | - | - | - | 0 | 1 | 1 | 1 | 1 | 1 | 2 | 8 |
| 4/30/2017 | 5/30/2017 | Additional Damages - W Foster Living | 653 | - | - | - | - | - | - | - | - | - | - | - | - | - | 0 | 8 | 9 | 9 | 9 | 10 | 10 | 23 | 81 |
| 5/10/2017 | 6/9/2017 | Additional Damages - W Foster Living | 57 | - | - | - | - | - | - | - | - | - | - | - | - | - | 0 | 1 | 1 | 1 | 1 | 1 | 2 | 7 |
| 5/18/2017 | 6/17/2017 | Additional Damages - W Foster Living | 187 | - | - | - | - | - | - | - | - | - | - | - | - | - | 0 | 2 | 3 | 3 | 3 | 3 | 7 | 23 |
| 5/30/2017 | 6/29/2017 | Additional Damages - W Foster Living | 653 | - | - | - | - | - | - | - | - | - | - | - | - | - | 0 | 9 | 9 | 9 | 9 | 10 | 10 | 23 | 78 |
| 5/31/2017 | 6/30/2017 | Additional Damages - W Foster Living | 65 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 1 | 1 | 1 | 1 | 1 | 2 | 8 |
| 6/13/2017 | 7/13/2017 | Additional Damages - W Foster Living | 34 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0 | 0 | 0 | 1 | 1 | 1 | 4 |
| 6/17/2017 | 7/17/2017 | Additional Damages - W Foster Living | 187 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 2 | 3 | 3 | 3 | 3 | 7 | 22 |
| 6/28/2017 | 7/28/2017 | Additional Damages - W Foster Living | 653 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 6 | 9 | 9 | 9 | 10 | 10 | 23 | 76 |
| 6/30/2017 | 7/30/2017 | Additional Damages - W Foster Living | 65 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0 | 1 | 1 | 1 | 1 | 2 | 8 |
| 7/12/2017 | 8/11/2017 | Additional Damages - W Foster Living | 39 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0 | 1 | 1 | 1 | 1 | 1 | 4 |
| 7/18/2017 | 8/17/2017 | Additional Damages - W Foster Living | 183 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 1 | 2 | 2 | 3 | 3 | 6 | 21 |
| 7/30/2017 | 8/29/2017 | Additional Damages - W Foster Living | 65 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0 | 1 | 1 | 1 | 1 | 2 | 7 |
| 7/31/2017 | 8/30/2017 | Additional Damages - W Foster Living | 653 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 3 | 9 | 9 | 9 | 10 | 10 | 23 | 73 |
| 8/11/2017 | 9/10/2017 | Additional Damages - W Foster Living | 34 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0 | 0 | 0 | 0 | 1 | 1 | 4 |
| 8/17/2017 | 9/16/2017 | Additional Damages - W Foster Living | 183 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0 | 2 | 2 | 3 | 3 | 3 | 6 | 20 |
| 8/30/2017 | 9/29/2017 | Additional Damages - W Foster Living | 65 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0 | 1 | 1 | 1 | 1 | 2 | 7 |
| 8/31/2017 | 9/30/2017 | Additional Damages - W Foster Living | 653 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 9 | 9 | 9 | 10 | 10 | 23 | 70 |
| 9/11/2017 | 10/11/2017 | Additional Damages - W Foster Living | 38 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0 | 1 | 1 | 1 | 1 | 1 | 4 |
| 9/17/2017 | 10/17/2017 | Additional Damages - W Foster Living | 183 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 2 | 2 | 3 | 3 | 3 | 6 | 19 |
| 9/30/2017 | 10/30/2017 | Additional Damages - W Foster Living | 67 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 1 | 1 | 1 | 1 | 1 | 2 | 7 |
| 9/30/2017 | 10/30/2017 | Additional Damages - W Foster Living | 653 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 6 | 9 | 9 | 10 | 10 | 23 | 67 |
| 10/4/2017 | 11/3/2017 | Additional Damages - W Foster Living | 36 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0 | 0 | 1 | 1 | 1 | 1 | 4 |
| 10/18/2017 | 11/17/2017 | Additional Damages - W Foster Living | 183 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 1 | 2 | 3 | 3 | 3 | 6 | 18 |
| 10/30/2017 | 11/29/2017 | Additional Damages - W Foster Living | 67 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0 | 1 | 1 | 1 | 1 | 2 | 7 |
| 10/31/2017 | 11/30/2017 | Additional Damages - W Foster Living | 653 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 3 | 9 | 9 | 10 | 10 | 23 | 64 |
| 11/9/2017 | 12/9/2017 | Additional Damages - W Foster Living | 32 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0 | 0 | 0 | 0 | 1 | 3 |
| 11/17/2017 | 12/17/2017 | Additional Damages - W Foster Living | 183 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0 | 2 | 3 | 3 | 3 | 6 | 17 |
| 11/30/2017 | 12/30/2017 | Additional Damages - W Foster Living | 183 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 0 | 2 | 3 | 3 | 3 | 6 | 17 |
| 12/8/2017 | 1/7/2018 | Additional Damages - W Foster Living | 63 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 1 | 1 | 1 | 1 | 2 | 6 |
| 12/11/2017 | 1/10/2018 | Additional Damages - W Foster Living | 65 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 1 | 1 | 1 | 1 | 2 | 6 |
| 12/18/2017 | 1/17/2018 | Additional Damages - W Foster Living | 183 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 2 | 3 | 3 | 3 | 6 | 17 |
| | | **Total Additional Damages - W Foster Living** | $ 94,728 | $ 1,538 | $ 3,642 | $ 2,831 | $ 2,117 | $ 565 | $ 2,241 | $ 2,306 | $ 2,689 | $ 3,119 | $ 865 | $ 907 | $ 967 | $ 1,011 | $ 1,037 | $ 1,102 | $ 1,178 | $ 1,257 | $ 1,291 | $ 1,353 | $ 1,425 | $ 1,454 | $ 3,335 | $ 38,226 |

Assumptions:

| | | | | | | | | | | Florida Statutory Interest Rates | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 12/31/2008 | 12/31/2009 | 12/31/2010 | 9/30/2011 | 12/31/2011 | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 3/31/2016 | 6/30/2016 | 9/30/2016 | 12/31/2016 | 3/31/2017 | 6/30/2017 | 9/30/2017 | 12/31/2017 | 3/31/2018 | 6/30/2018 | 9/30/2018 | 12/31/2018 | 7/22/2019 |
| Annual | 11.00% | 8.00% | 6.00% | 6.00% | 4.75% | 4.75% | 4.75% | 4.75% | 4.75% | 4.75% | 4.78% | 4.84% | 4.91% | 4.97% | 5.05% | 5.17% | 5.35% | 5.53% | 5.72% | 5.97% | 6.09% | 6.33% |
| Per Diem | 0.0301400% | 0.0219200% | 0.0164400% | 0.0164400% | 0.0130137% | 0.0129781% | 0.0130137% | 0.0130137% | 0.0130137% | 0.0129781% | 0.0130601% | 0.0132404% | 0.0134153% | 0.0136164% | 0.0138362% | 0.0141643% | 0.0146575% | 0.0151507% | 0.0156712% | 0.0163562% | 0.0166849% | 0.0173425% |

6.A
Documents and Other Information Considered - William & Vicki Foster

*Chinese Drywall Litigation Involving Priority Claimants*

*Bate Stamp (if applicable)*

| No. | Claimant | General Description | First Page | Last Page |
|---|---|---|---|---|
| | | **A. Pleadings and Other Legal Documents:** | | |
| 1 | All | Trial Plan for Property Damage Claims and Scheduling Order dated November 16, 2018 | | |
| 2 | Foster | Priority Claimant Vicki Foster First Amended Answers to Interrogatories, dated January 10, 2019 | | |
| 3 | Foster | Priority Claimant William Foster First Amended Answers to Interrogatories, dated January 10, 2019 | | |
| 4 | Foster | Priority Claimant Vicki Foster First Amended Answers to Defendants' Second Set of Interrogatories, dated December 4, 2018 | | |
| 5 | Foster | Priority Claimant William Foster First Amended Answers to Defendants' Second Set of Interrogatories, dated December 4, 2018 | | |
| 6 | Foster | William Foster Fourth Amended Supplemental Profile Plaintiff Profile Form, dated December 6, 2018 | | |
| 7 | Foster | Priority Claimant William Foster Answers to Interrogatories, dated November 30, 2018 | | |
| 8 | Foster | Priority Claimant William Foster Answers to Defendant's Second Set of Interrogatories, dated November 30, 2018 | | |
| 9 | Foster | Priority Claimant Vicki Foster Answers to Interrogatories, dated November 30, 2018 | | |
| 10 | Foster | Priority Claimant Vicki Foster Answers to Defendant's Second Set of Interrogatories, dated November 30, 2018 | | |
| | | **B. Depositions & Corresponding Exhibits:** | | |
| 1 | Foster | Deposition Transcript of William Foster, dated January 8, 2019 | | |
| 2 | Foster | Deposition Transcript of Vicki Foster, dated December 7, 2018 | | |
| 3 | Foster | Deposition Transcript of Vicki Foster, dated January 8, 2019 | | |
| 4 | Foster | Deposition Exhibit 01 - Priority Claimant Vicki Foster's Answers to Interrogatories | | |
| 5 | Foster | Deposition Exhibit 02 - Foster, Vicki and William Damages Spreadsheet - Personal Property Damages | | |
| 6 | Foster | Deposition Exhibit 03 - Miscellaneous Claim Form Worksheet Bates Numbered 000076 to 000089 | F000076 | F000089 |
| 7 | Foster | Deposition Exhibit 04 - Receipts - Bates Numbered 00305 to 000425 | F000305 | F000425 |
| 8 | Foster | Deposition Exhibit 05 - Receipts - Additional Items Replaced When Cost-Effective - Bates Numbered F000905 to F000915 | F000905 | F000915 |
| 9 | Foster | Deposition Exhibit 06 - Receipts - Golf-Related Items - Bates Numbered F000777 to F000782 | F000777 | F000782 |
| 10 | Foster | Deposition Exhibit 07 - Foster, Vicki and William Damages Spreadsheet - Discarded but Not Replaced | | |
| 11 | Foster | Deposition Exhibit 08 - Foster, Vicki and William Damages Spreadsheet - Items Wanting to be Replaced | | |
| 12 | Foster | Deposition Exhibit 09 - October 19, 2011 Polkow Construction Chinese Drywall Remediation Proposal - Bates Numbered 000090 to 000094 | F000090 | F000094 |
| 13 | Foster | Deposition Exhibit 01 - Housing and Utilities Accumulated Due to Having to Return to Work | F000783 | F000791 |
| 14 | Foster | Deposition Exhibit 02 - Receipts/Invoices - Re: Alternative Living Expenses - Bates Numbered F000801 to F000904 | F000801 | F000904 |
| 15 | Foster | 1st Deposition Exhibit 01 - Warranty Deed | | |
| 16 | Foster | 1st Deposition Exhibit 02 - Floor Plan | | |
| 17 | Foster | 1st Deposition Exhibit 03 - Property Listing - Banner Supply | | |
| 18 | Foster | 1st Deposition Exhibit 04 - Allied Home Inspections Report | | |
| 19 | Foster | 1st Deposition Exhibit 05 - Intuitive Environmental Solutions Report | | |
| 20 | Foster | 1st Deposition Exhibit 06 - Polkow Construction Proposal | | |
| 21 | Foster | 1st Deposition Exhibit 07 - Check Copies | | |
| 22 | Foster | 1st Deposition Exhibit 08 - Lease Agreement | | |
| 23 | Foster | 1st Deposition Exhibit 09 - Receipts and Supporting Documents for Replacement Items | | |

Case 1:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 143 of 802
Case 2:11-cv-22408-MGC Document 272 entered on FLSD Docket 08/15/2013 Page 22 of
262

6.A
Documents and Other Information Considered - William & Vicki Foster

*Chinese Drywall Litigation Involving Priority Claimants*

*Bate Stamp (if applicable)*

| No. | Claimant | General Description | First Page | Last Page |
|-----|----------|---------------------|------------|-----------|
| 24 | Foster | 1st Deposition Exhibit 10 - Remediation Checklist | | |
| 25 | Foster | 1st Deposition Exhibit 11 - Additional Receipts and Supporting Documents for Replacement Items | | |
| 26 | Foster | 1st Deposition Exhibit 12 - Lee County Property Appraiser Report | | |
| 27 | Foster | 1st Deposition Exhibit 13 - Plaintiff Profile Form | | |
| 28 | Foster | 1st Deposition Exhibit 14 - Plaintiff Profile Form | | |
| 29 | Foster | 1st Deposition Exhibit 15 - Supplemental Plaintiff Profile Form | | |
| 30 | Foster | 1st Deposition Exhibit 16 - First Amended Supplemental Plaintiff Profile Form | | |
| 31 | Foster | 1st Deposition Exhibit 17 - Second Amended Supplemental Plaintiff Profile Form | | |
| 32 | Foster | 1st Deposition Exhibit 18 - Third Amended Supplemental Plaintiff Profile Form | | |
| 33 | Foster | 1st Deposition Exhibit 19 - Fourth Amended Supplemental Plaintiff Profile Form | | |
| 34 | Foster | 1st Deposition Exhibit 20 - Miscellaneous Claim Form Worksheets | | |

C. Supporting Documentation

| No. | Claimant | General Description | First Page | Last Page |
|-----|----------|---------------------|------------|-----------|
| 1 | Foster | William and Vicki Foster Out of Pocket Damages Summary Provided by Counsel | | |
| 2 | Foster | Doc ID. 365719 - Polkow Construction remediation proposal | | |
| 3 | Foster | Doc ID. 365749 - Foster remediation contract with Polkow Construction, receipts, invoices and proof of payment | | |
| 4 | Foster | Doc ID. 366605 - Foster Proof of payment for remediation damages | | |
| 5 | Foster | Doc ID. 367444 - (Backup) Foster Proof of Payment for Raymond Building Supply Items | | |
| 6 | Foster | Doc ID. 125033 - V Foster Lease Agreements for ALE | | |
| 7 | Foster | Doc ID. 125036 - V Foster Alternative Living Expenses Support | | |
| 8 | Foster | Doc ID. 366603 - Condo moving expense invoices and receipts for ALE | | |
| 9 | Foster | Doc ID. 367445 - (Backup) Foster Proof of Payment for Florida ALE Comcast | | |
| 10 | Foster | Doc ID. 366781 - Personal Property Damage - Damaged Items That Have Been Replaced | | |
| 11 | Foster | Doc ID. 124967 - Receipts for damaged items repaired or replaced | | |
| 12 | Foster | Doc ID. 365713 - Foster List of damaged items and receipts (repaired or replaced) | | |
| 13 | Foster | Doc ID. 367443 - (Backup) Foster Proof of Cost for Items that Need to be Replaced | | |
| 14 | Foster | Doc ID. 329374 - Foster receipts and invoices for damaged items (replaced) | | |
| 15 | Foster | Doc ID. 124973 - Foster photos of damaged items (discarded or not replaced) | | |
| 16 | Foster | Doc ID. 366742 - Foster Photos of damaged items (discarded or not replaced) | | |
| 17 | Foster | Doc ID. 366743 - Foster Photos of damaged items (discarded or not replaced) | | |
| 18 | Foster | Doc ID. 366744 - Foster Photos of damaged items (discarded or not replaced) | | |
| 19 | Foster | Doc ID. 366745 - Foster Photos of damaged items (discarded or not replaced) | | |
| 20 | Foster | Doc ID. 366746 - Foster Photos of damaged items (discarded or not replaced) | | |
| 21 | Foster | Doc ID. 366782 - Personal Property Damage - Damaged Items Discarded and Not Replaced | | |
| 22 | Foster | Doc ID. 366783 - Personal Property Damage - Damaged Items Still Owned and Not Yet Replaced | | |

6.A
Documents and Other Information Considered - William & Vicki Foster

*Chinese Drywall Litigation Involving Priority Claimants*

<div align="right">*Bate Stamp (if applicable)*</div>

| No. | Claimant | General Description | First Page | Last Page |
|---|---|---|---|---|
| 23 | Foster | Budget Blinds 10.29.2012 - $5,084.00 - better copy | | |
| 24 | Foster | Doc ID. 365712 - W Foster Return to Work Related Expenses | | |
| 25 | Foster | Doc ID. 366606 - W Foster Receipts and Invoices ALE | | |
| 26 | Foster | Doc ID. 367575 - Updated William Fosters ALE Expenses 2008-2009 | | |
| 27 | Foster | Clearer Copies of W Foster Exhibit 2 - Bates Numbered F000801 to F000904 | F000801 | F000904 |
| 28 | Foster | 365714 - Foster CDW Settlement Program Checks | | |
| 29 | Foster | 365715 - Foster GBI Holdback Payment | | |
| 30 | Foster | 365716 - Foster WCI Settlement Check | | |

D. Research and Other Sources:

| 1 | Foster | Telephone Conversation with Counsel and Vicki and William Foster |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-22408-Civ-COOKE

EDUARDO AND CARMEN AMORIN, *et al.*,
individually and on behalf of others similarly
situated,

       Plaintiffs,

vs.

TAISHAN GYPSUM CO., LTD., f/k/a
SHANDONG TIASHE DONGXIN CO. LTD.,
*et al.*,

       Defendants.

_____

# Exhibit 7

**Calculations of Damages for Priority Claimants**

# Anthony & Candace Gody

EXHIBIT TO THE EXPERT WITNESS REPORT OF:
MICHAEL P. ELKIN, CPA/CFF/ABV, CFE
IN THE PRIORITY CLAIMANT TRIAL

February 19, 2019



Exhibit 7
Data and Damage Summary - Anthony & Candace Gody

*Chinese Drywall Litigation Involving Priority Claimants*

| Data: | | Reference / Notes |
|---|---|---|
| Address of Affected property | 10842 Tiberio Drive | *SPPF* |
| | Fort Myer, FL 33913 | *SPPF* |
| Date Affected property acquired | April 10, 2007 | *SPPF* |
| Date Chinese drywall installed | August-06 | *SPPF* |
| Date moved into Affected property | April 10, 2007 | *SPPF* |
| Date first aware of Chinese drywall | June-09 | *SPPF* |
| | | |
| Move out date to alternate living | June 8, 2010 | *ROG 1, #2* |
| Date returned to Affected property | September-12 | *ROG 1, #2* |
| End date for alternate living expenses | September-12 | *ROG 1, #2* |
| | | |
| Still own property? | Y | *SPPF* |
| Bankruptcy caused by damage? | N | *SPPF* |
| Foreclosure or short sale? | N | *SPPF* |
| Affected property sold? | N | *SPPF* |
| Sale date | N/A | *SPPF* |
| Type of sale | N/A | *SPPF* |
| | | |
| Remediation status | Partial | *SPPF* |
| Remediation period | 6/29/2011 - 8/31/2012 | *SPPF* |

| Damage Summary: | | |
|---|---|---|
| Full or Partial Out-of-Pocket Remediation Expenses | $ 153,262 | *Exh. 7.1* |
| | | |
| Other Damages | | |
| Alternate Living Expenses | $ 60,522 | *Exh. 7.1* |
| Personal Property Damage Expense | 17,852 | *Exh. 7.1* |
| Additional Damages | - | |
| | $ 78,374 | |
| | | |
| Lost Equity | TBD | |
| | | |
| Diminution in Value | TBD | |
| | | |
| Loss of Use and Enjoyment | TBD | |
| | | |
| Punitive Damages | TBD | |

Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 147 of 802
Case 1:11-cv-22408-MGC Document 272 Entered on FLSD Docket 09/15/2014 Page 26 of
262

Exhibit 7.1
Damage Claims Detail - Candace Gody

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|------|--------|-------------|--------|------|--------------|----------------|-------|------------------|--------------|
| Remediation | Polkow Construction | Remediation - Construction | $ 8,000 | 6/28/2011 | | Bank Statement | N/A | Exhibit 12 | 87 |
| Remediation | Intuitive Environmental Solutions LLC | Remediation - Inspection | 1,300 | 7/11/2011 | | Bank Statement | N/A | Exhibit 12 | 93 |
| Remediation | Polkow Construction | Remediation - Construction | 11,675 | 8/5/2011 | | Bank Statement | N/A | Exhibit 12 | 95 |
| Remediation | Intuitive Environmental Solutions LLC | Remediation - Inspection | 650 | 9/13/2011 | | Bank Statement | N/A | Exhibit 12 | 102 |
| Remediation | Polkow Construction | Remediation - Construction | 7,000 | 1/13/2012 | | Check | N/A | Exhibit 12 | 1 |
| Remediation | Kevin Polkow | Remediation - Other | 6,981 | 2/8/2012 | | Check | N/A | Exhibit 12 | 2 |
| Remediation | Costco | Reverse Osmosis System | 150 | 2/23/2012 | | Claimant | N/A | Exhibit 15 | 1 |
| Remediation | Raymond Building Supply | Remediation - Other | 19,826 | 3/2/2012 | | Invoices | N/A | Exhibit 14 | 6-7 |
| Remediation | Signature Hardware | Remediation - Other | 1,635 | 3/6/2012 | | Receipt | N/A | Exhibit 14 | 22 |
| Remediation | Emilio Martinez | Remediation - Construction | 10,000 | 3/8/2012 | | Check | N/A | Exhibit 12 | 3 |
| Remediation | Costco | Garage Door Opener | 250 | 3/8/2012 | | Claimant | N/A | Exhibit 15 | 1 |
| Remediation | M & G Best Service (Emilio Martinez) | Remediation - Other | 10,000 | 3/8/2012 | | Invoice | N/A | Exhibit 14 | 8 |
| Remediation | Budget Blinds | Remediation - Other | 3,829 | 3/20/2012 | | Invoice | N/A | Exhibit 14 | 28 |
| Remediation | Polkow Construction | Remediation - Construction | 8,615 | 3/23/2012 | | Check | N/A | Exhibit 12 | 4 |
| Remediation | Faucet Direct.com | Remediation - Other | 1,728 | 3/29/2012 | | Order Statement | N/A | Exhibit 14 | 13 |
| Remediation | Kevin Polkow | Remediation - Other | 10,000 | 3/30/2012 | | Check | N/A | Exhibit 12 | 5 |
| Remediation | Lamps Plus | Remediation - Other | 370 | 4/1/2012 | | Order Statement | N/A | Exhibit 14 | 16 |
| Remediation | Lamps Plus | Remediation - Other | 387 | 4/2/2012 | | Order Statement | N/A | Exhibit 14 | 10 |
| Remediation | Amazon | Garbage Disposal | 152 | 4/2/2012 | | Claimant | N/A | Exhibit 15 | 1 |
| Remediation | Amazon | Air Switch | 50 | 4/2/2012 | | Claimant | N/A | Exhibit 15 | 1 |
| Remediation | Lighting First | Remediation - Other | 1,436 | 4/5/2012 | | Receipt | N/A | Exhibit 14 | 20 |
| Remediation | Tile Outlets of America | Remediation - Other | 24 | 4/6/2012 | | Receipt | N/A | Exhibit 14 | 21 |
| Remediation | Overstock.com | Remediation - Other | 276 | 4/6/2012 | | Claimant | N/A | Exhibit 15 | 1 |
| Remediation | Maurizio D'Alessandro | Remediation - Construction | 3,300 | 4/7/2012 | | Check | N/A | Exhibit 12 | 6 |
| Remediation | Tile Outlets of America | Remediation - Other | 57 | 4/9/2012 | | Receipt | N/A | Exhibit 14 | 21 |
| Remediation | Your Home Supply | Remediation - Other | 170 | 4/9/2012 | | Receipt | N/A | Exhibit 14 | 24 |
| Remediation | Tile Outlets of America | Remediation - Other | 100 | 4/9/2012 | | Receipt | N/A | Exhibit 14 | 21 |
| Remediation | Lamps Plus | Remediation - Other | 522 | 4/16/2012 | | Claimant | N/A | Exhibit 15 | 1 |
| Remediation | Lighting First | Remediation - Other | 216 | 4/18/2012 | | Receipt | N/A | Exhibit 14 | 26 |
| Remediation | Polkow Construction | Phase III | 10,000 | 4/18/2012 | | Check | N/A | Exhibit 12 | 7 |
| Remediation | Hayneedle | Remediation - Other | 40 | 4/26/2012 | | Receipt | N/A | Exhibit 14 | 40 |
| Remediation | Signature Hardware | Front Door | 322 | 4/28/2012 | | Claimant | N/A | Exhibit 15 | 1 |
| Remediation | Gulf Stone Construction | Phase III | 6,301 | 5/1/2012 | | Check | N/A | Exhibit 12 | 8 |
| Remediation | Polkow Construction | Phase III | 10,000 | 5/1/2012 | | Check | N/A | Exhibit 12 | 9 |
| Remediation | No Vendor Name - Cushion | Upholster Bench Cushion | 237 | 5/1/2012 | | Claimant | N/A | Exhibit 15 | 1 |
| Remediation | M & G Best Service (Emilio Martinez) | Remediation - Construction | 7,450 | 5/5/2012 | | Check | N/A | Exhibit 12 | 10 |
| Remediation | Grandinroad | Remediation - Other | 111 | 5/8/2012 | | Receipt | N/A | Exhibit 14 | 42 |
| Remediation | ColorWheel Paint | Remediation - Other | 32 | 5/18/2012 | | Receipt | N/A | Exhibit 14 | 43 |
| Remediation | ColorWheel Paint | Remediation - Other | 58 | 5/19/2012 | | Receipt | N/A | Exhibit 14 | 44 |
| Remediation | Home Depot | Remediation - Other | 87 | 5/24/2012 | | Claimant | N/A | Exhibit 15 | 1 |
| Remediation | Comcast | Remediation - Other | 80 | 5/25/2012 | | Statement | N/A | Exhibit 14 | 35 |

Exhibit 7.1
Damage Claims Detail - Candace Gody

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|------|--------|-------------|--------|------|--------------|----------------|-------|------------------|--------------|
| Remediation | Comcast | Remediation - Other | 57 | 5/25/2012 | | Claimant | N/A | Exhibit 15 | 1 |
| Remediation | Gulf Stone Construction | Remediation - Construction | 7,288 | 5/29/2012 | | Invoice | N/A | Exhibit 14 | 27 |
| Remediation | Core Cleaning | Remediation - Other | 250 | 6/19/2012 | | Claimant | N/A | Exhibit 15 | 1 |
| Remediation | Build.com | Remediation - Other | 280 | 6/20/2012 | | Claimant | N/A | Exhibit 15 | 1 |
| Remediation | Lighting First | Remediation - Other | 355 | 7/10/2012 | | Invoice | N/A | Exhibit 14 | 32 |
| Remediation | Action Automatic Door & Gate | Remediation - Other | 165 | 7/11/2012 | | Invoice | N/A | Exhibit 14 | 41 |
| Remediation | Ray Allen | Remediation - Other | 50 | 7/16/2012 | | Claimant | N/A | Exhibit 15 | 1 |
| Remediation | Hadinger Flooring | Remediation - Construction | 1,125 | 9/13/2012 | | Invoice | N/A | Exhibit 14 | 29 |
| Remediation | Hadinger Flooring | Remediation - Other | 275 | 10/3/2012 | | Invoice | N/A | Exhibit 14 | 31 |
| **Remediation Total** | | | $ 153,262 | | | | | | |
| Alternate Living Expense | IGA | Groceries in Lieu of Rent | $ 25 | 6/22/2010 | | Receipt | N/A | Exhibit 8 | 3 |
| Alternate Living Expense | Stop & Shop | Groceries in Lieu of Rent | 53 | 6/22/2010 | | Receipt | N/A | Exhibit 8 | 3 |
| Alternate Living Expense | Marshalls | Alt Home - Miscellaneous | - | 6/22/2010 | | Receipt | N/A | Exhibit 8 | 42 |
| Alternate Living Expense | CVS | Groceries in Lieu of Rent | 21 | 6/23/2010 | | Receipt | N/A | Exhibit 8 | 2 |
| Alternate Living Expense | Giutna's Meat Farms | Groceries in Lieu of Rent | 57 | 6/24/2010 | | Receipt | N/A | Exhibit 8 | 2 |
| Alternate Living Expense | IGA | Groceries in Lieu of Rent | 13 | 6/25/2010 | | Receipt | N/A | Exhibit 8 | 3 |
| Alternate Living Expense | Marshalls | Alt Home - Miscellaneous | 37 | 6/26/2010 | | Receipt | N/A | Exhibit 8 | 42 |
| Alternate Living Expense | Costco | Alt Home - TV | 185 | 6/27/2010 | | Receipt | N/A | Exhibit 8 | 27 |
| Alternate Living Expense | IGA | Groceries in Lieu of Rent | 16 | 6/28/2010 | | Receipt | N/A | Exhibit 8 | 5 |
| Alternate Living Expense | IGA | Groceries in Lieu of Rent | 54 | 6/28/2010 | | Receipt | N/A | Exhibit 8 | 8 |
| Alternate Living Expense | IGA | Groceries in Lieu of Rent | 9 | 6/29/2010 | | Receipt | N/A | Exhibit 8 | 7 |
| Alternate Living Expense | Uncle Giuseppe's | Groceries in Lieu of Rent | 214 | 7/1/2010 | | Receipt | N/A | Exhibit 8 | 8 |
| Alternate Living Expense | HomeGoods | Alt Home - Miscellaneous | 127 | 7/6/2010 | | Receipt | N/A | Exhibit 8 | 46 |
| Alternate Living Expense | Kitchen Collection | Alt Home - Miscellaneous | 22 | 7/8/2010 | | Receipt | N/A | Exhibit 8 | 45 |
| Alternate Living Expense | Kitchen Collection | Alt Home - Miscellaneous | 27 | 7/8/2010 | | Receipt | N/A | Exhibit 8 | 45 |
| Alternate Living Expense | IGA | Groceries in Lieu of Rent | 31 | 7/10/2010 | | Receipt | N/A | Exhibit 8 | 6 |
| Alternate Living Expense | Waldbaums | Groceries in Lieu of Rent | 35 | 7/10/2010 | | Receipt | N/A | Exhibit 8 | 6 |
| Alternate Living Expense | Bed Bath & Beyond | Alt Home - Miscellaneous | 72 | 7/10/2010 | | Receipt | N/A | Exhibit 8 | 45 |
| Alternate Living Expense | Pathmark | Groceries in Lieu of Rent | 11 | 7/14/2010 | X | Receipt | N/A | Exhibit 8 | 3 |
| Alternate Living Expense | King Kullen | Groceries in Lieu of Rent | 45 | 7/14/2010 | X | Receipt | N/A | Exhibit 8 | 6 |
| Alternate Living Expense | Voss TV & Appliances | Alt Home - Voss Bedding | 1,931 | 7/14/2010 | | Invoice | N/A | Exhibit 8 | 19 |
| Alternate Living Expense | Marshalls | Alt Home - Miscellaneous | 29 | 7/14/2010 | X | Receipt | N/A | Exhibit 8 | 44 |
| Alternate Living Expense | Costco | Alt Home - Miscellaneous | 222 | 7/15/2010 | X | Receipt | N/A | Exhibit 8 | 32 |
| Alternate Living Expense | Home Depot | Alt Home - Miscellaneous | 325 | 7/15/2010 | | Receipt | N/A | Exhibit 8 | 33 |
| Alternate Living Expense | Best Buy | Alt Home - TV | 642 | 7/16/2010 | | Receipt | N/A | Exhibit 8 | 27 |
| Alternate Living Expense | Bed Bath & Beyond | Alt Home - Miscellaneous | 368 | 7/16/2010 | | Receipt | N/A | Exhibit 8 | 46 |
| Alternate Living Expense | Marshalls | Alt Home - Miscellaneous | - | 7/16/2010 | | Receipt | N/A | Exhibit 8 | 46 |
| Alternate Living Expense | Bed Bath & Beyond | Alt Home - Miscellaneous | 146 | 7/16/2010 | | Receipt | N/A | Exhibit 8 | 47 |
| Alternate Living Expense | Home Depot | Alt Home - Miscellaneous | 181 | 7/19/2010 | | Receipt | N/A | Exhibit 8 | 33 |
| Alternate Living Expense | Macy's | Alt Home - Miscellaneous | 496 | 7/21/2010 | | Receipt | N/A | Exhibit 8 | 44 |
| Alternate Living Expense | Home Depot | Alt Home - Miscellaneous | 1 | 7/22/2010 | | Receipt | N/A | Exhibit 8 | 33 |

Exhibit 7.1
Damage Claims Detail - Candace Gody

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Alternate Living Expense | Bed Bath & Beyond | Alt Home - Miscellaneous | 27 | 7/22/2010 | | Receipt | N/A | Exhibit 8 | 47 |
| Alternate Living Expense | Pool City | Alt Home - Miscellaneous | 526 | 7/23/2010 | | Invoice | N/A | Exhibit 8 | 34 |
| Alternate Living Expense | Big Lots | Alt Home - Miscellaneous | 26 | 7/23/2010 | | Receipt | N/A | Exhibit 8 | 47 |
| Alternate Living Expense | Home Depot | Alt Home - Miscellaneous | - | 7/26/2010 | | Receipt | N/A | Exhibit 8 | 31 |
| Alternate Living Expense | Tuesday Morning | Alt Home - Miscellaneous | 32 | 7/26/2010 | | Receipt | N/A | Exhibit 8 | 42 |
| Alternate Living Expense | Kohl's | Alt Home - Miscellaneous | 144 | 7/26/2010 | | Receipt | N/A | Exhibit 8 | 48 |
| Alternate Living Expense | Best Buy | Alt Home - Other Electronics | 203 | 7/29/2010 | | Receipt | N/A | Exhibit 8 | 27 |
| Alternate Living Expense | Dick's Sporting Goods | Alt Home - Miscellaneous | 152 | 7/31/2010 | | Receipt | N/A | Exhibit 8 | 16 |
| Alternate Living Expense | Macy's | Alt Home - Miscellaneous | 135 | 8/3/2010 | | Receipt | N/A | Exhibit 8 | 48 |
| Alternate Living Expense | Best Buy | Alt Home - Computer | 762 | 8/10/2010 | | Receipt | N/A | Exhibit 8 | 36 |
| Alternate Living Expense | Voss TV & Appliances | Alt Home - Voss Unknown | 591 | 8/16/2010 | | Invoice | N/A | Exhibit 8 | 16 |
| Alternate Living Expense | Lowe's | Alt Home - Miscellaneous | 108 | 8/19/2010 | | Receipt | N/A | Exhibit 8 | 31 |
| Alternate Living Expense | Bed Bath & Beyond | Alt Home - Miscellaneous | 61 | 8/21/2010 | | Receipt | N/A | Exhibit 8 | 43 |
| Alternate Living Expense | Marshalls | Alt Home - Miscellaneous | 93 | 8/21/2010 | | Receipt | N/A | Exhibit 8 | 44 |
| Alternate Living Expense | Kohl's | Alt Home - Miscellaneous | 19 | 8/24/2010 | | Receipt | N/A | Exhibit 8 | 43 |
| Alternate Living Expense | Belsky LTD | Alt Home - Gas Line | 300 | 8/25/2010 | | Invoice | N/A | Exhibit 8 | 24 |
| Alternate Living Expense | Bed Bath & Beyond | Alt Home - Miscellaneous | 57 | 8/29/2010 | | Receipt | N/A | Exhibit 8 | 43 |
| Alternate Living Expense | Home Depot | Alt Home - Miscellaneous | 39 | 8/31/2010 | | Receipt | N/A | Exhibit 8 | 31 |
| Alternate Living Expense | Best Buy | Alt Home - Miscellaneous | 19 | 9/3/2010 | | Receipt | N/A | Exhibit 8 | 32 |
| Alternate Living Expense | Home Depot | Alt Home - Miscellaneous | 49 | 9/3/2010 | | Receipt | N/A | Exhibit 8 | 33 |
| Alternate Living Expense | Dollar General | Alt Home - Miscellaneous | 12 | 9/4/2010 | | Receipt | N/A | Exhibit 8 | 42 |
| Alternate Living Expense | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,141 | 9/10/2010 | | Bank Statement | N/A | Exhibit 8 | 84 |
| Alternate Living Expense | Brentwood Bank | Mortgage Modification Fee | 1,500 | 9/26/2010 | | Statement | N/A | Exhibit 8 | 73 |
| Alternate Living Expense | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 10/12/2010 | | Bank Statement | N/A | Exhibit 8 | 84 |
| Alternate Living Expense | Home Depot | Alt Home - Miscellaneous | 29 | 10/20/2010 | | Receipt | N/A | Exhibit 8 | 31 |
| Alternate Living Expense | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 11/10/2010 | | Bank Statement | N/A | Exhibit 8 | 84 |
| Alternate Living Expense | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 12/10/2010 | | Bank Statement | N/A | Exhibit 8 | 84 |
| Alternate Living Expense | Remnant World | Alt Home - Miscellaneous | 149 | 12/14/2010 | | Receipt | N/A | Exhibit 8 | 22 |
| Alternate Living Expense | PA - Sewage | Alt Home - Utilities and Other | 64 | 12/14/2010 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expense | Guardian Home | Alt Home - Utilities and Other | 45 | 12/16/2010 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expense | PA - Electric | Alt Home - Utilities and Other | 41 | 12/20/2010 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expense | PA - Gas | Alt Home - Utilities and Other | 61 | 12/27/2010 | | Bank Statement | N/A | Exhibit 8 | 91 |
| Alternate Living Expense | Comcast | Alt Home - Utilities and Other | 109 | 12/29/2010 | | Bank Statement | N/A | Exhibit 8 | 86 |
| Alternate Living Expense | PA - Water | Alt Home - Utilities and Other | 42 | 1/7/2011 | | Bank Statement | N/A | Exhibit 8 | 91 |
| Alternate Living Expense | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 1/10/2011 | | Bank Statement | N/A | Exhibit 8 | 82 |
| Alternate Living Expense | PA - Sewage | Alt Home - Utilities and Other | 39 | 1/12/2011 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expense | PA - Electric | Alt Home - Utilities and Other | 50 | 1/14/2011 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expense | Guardian Home | Alt Home - Utilities and Other | 45 | 1/18/2011 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expense | Comcast | Alt Home - Utilities and Other | 113 | 1/27/2011 | | Bank Statement | N/A | Exhibit 8 | 86 |
| Alternate Living Expense | PA - Gas | Alt Home - Utilities and Other | 133 | 1/31/2011 | | Bank Statement | N/A | Exhibit 8 | 91 |
| Alternate Living Expense | PA - Water | Alt Home - Utilities and Other | 41 | 2/7/2011 | | Bank Statement | N/A | Exhibit 8 | 91 |

Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 150 of 802
Case 1:11-cv-22408-MGC Document 272 Entered on FLSD Docket 09/13/2013 Page 229 of
262

Exhibit 7.1
Damage Claims Detail - Candace Gody

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Alternate Living Expense | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 2/10/2011 | | Bank Statement | N/A | Exhibit 8 | 82 |
| Alternate Living Expense | PA - Sewage | Alt Home - Utilities and Other | 34 | 2/10/2011 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expense | Guardian Home | Alt Home - Utilities and Other | 45 | 2/16/2011 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expense | PA - Electric | Alt Home - Utilities and Other | 56 | 2/16/2011 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expense | PA - Trash | Alt Home - Utilities and Other | 30 | 2/22/2011 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expense | PA - Gas | Alt Home - Utilities and Other | 119 | 2/28/2011 | | Bank Statement | N/A | Exhibit 8 | 91 |
| Alternate Living Expense | Comcast | Alt Home - Utilities and Other | 113 | 3/1/2011 | | Bank Statement | N/A | Exhibit 8 | 86 |
| Alternate Living Expense | PA - Water | Alt Home - Utilities and Other | 45 | 3/8/2011 | | Bank Statement | N/A | Exhibit 8 | 91 |
| Alternate Living Expense | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 3/10/2011 | | Bank Statement | N/A | Exhibit 8 | 82 |
| Alternate Living Expense | PA - Sewage | Alt Home - Utilities and Other | 35 | 3/14/2011 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expense | Guardian Home | Alt Home - Utilities and Other | 45 | 3/16/2011 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expense | PA - Electric | Alt Home - Utilities and Other | 59 | 3/18/2011 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expense | Comcast | Alt Home - Utilities and Other | 107 | 3/29/2011 | | Bank Statement | N/A | Exhibit 8 | 86 |
| Alternate Living Expense | PA - Gas | Alt Home - Utilities and Other | 100 | 3/31/2011 | | Bank Statement | N/A | Exhibit 8 | 91 |
| Alternate Living Expense | PA - Water | Alt Home - Utilities and Other | 50 | 4/7/2011 | | Bank Statement | N/A | Exhibit 8 | 91 |
| Alternate Living Expense | PA - Sewage | Alt Home - Utilities and Other | 35 | 4/8/2011 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expense | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 4/11/2011 | | Bank Statement | N/A | Exhibit 8 | 82 |
| Alternate Living Expense | Guardian Home | Alt Home - Utilities and Other | 45 | 4/14/2011 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expense | PA - Electric | Alt Home - Utilities and Other | 40 | 4/18/2011 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expense | Custom Turf | Alt Home - Utilities and Other | 102 | 4/22/2011 | | Bank Statement | N/A | Exhibit 8 | 87 |
| Alternate Living Expense | PA - Trash | Alt Home - Utilities and Other | 120 | 4/22/2011 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expense | PA - Sewage | Alt Home - Utilities and Other | 56 | 4/22/2011 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expense | PA - Gas | Alt Home - Utilities and Other | 85 | 4/22/2011 | | Bank Statement | N/A | Exhibit 8 | 91 |
| Alternate Living Expense | PA - Water | Alt Home - Utilities and Other | 15 | 4/25/2011 | | Bank Statement | N/A | Exhibit 8 | 91 |
| Alternate Living Expense | Comcast | Alt Home - Utilities and Other | 111 | 4/28/2011 | | Bank Statement | N/A | Exhibit 8 | 86 |
| Alternate Living Expense | PA - Sewage | Alt Home - Utilities and Other | 14 | 5/2/2011 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expense | Naturescape, Inc | Alt Home - Utilities and Other | 90 | 5/9/2011 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expense | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 5/10/2011 | | Bank Statement | N/A | Exhibit 8 | 82 |
| Alternate Living Expense | PA - Electric | Alt Home - Utilities and Other | 60 | 5/16/2011 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expense | Guardian Home | Alt Home - Utilities and Other | 45 | 5/18/2011 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expense | Custom Turf | Alt Home - Utilities and Other | 90 | 5/19/2011 | | Bank Statement | N/A | Exhibit 8 | 87 |
| Alternate Living Expense | PA - Gas | Alt Home - Utilities and Other | 42 | 5/25/2011 | | Bank Statement | N/A | Exhibit 8 | 91 |
| Alternate Living Expense | Comcast | Alt Home - Utilities and Other | 117 | 5/26/2011 | | Bank Statement | N/A | Exhibit 8 | 86 |
| Alternate Living Expense | PA - Sewage | Alt Home - Utilities and Other | 55 | 6/4/2011 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expense | Custom Turf | Alt Home - Utilities and Other | 69 | 6/7/2011 | | Bank Statement | N/A | Exhibit 8 | 87 |
| Alternate Living Expense | PA - Sewage | Alt Home - Utilities and Other | 34 | 6/9/2011 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expense | PA - Water | Alt Home - Utilities and Other | 89 | 6/9/2011 | | Bank Statement | N/A | Exhibit 8 | 91 |
| Alternate Living Expense | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 6/10/2011 | | Bank Statement | N/A | Exhibit 8 | 82 |
| Alternate Living Expense | Naturescape, Inc | Alt Home - Utilities and Other | 180 | 6/10/2011 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expense | Guardian Home | Alt Home - Utilities and Other | 45 | 6/15/2011 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expense | PA - Electric | Alt Home - Utilities and Other | 28 | 6/15/2011 | | Bank Statement | N/A | Exhibit 8 | 89 |

Case 1:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 151 of 802
Case 1:11-cv-22408-MGC Document 272 entered on FLSD Docket 08/15/2013 Page 230 of
262

Exhibit 7.1
Damage Claims Detail - Candace Gody

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Alternate Living Expense | PA - Electric | Alt Home - Utilities and Other | 28 | 6/16/2011 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expense | Naturescape, Inc | Alt Home - Utilities and Other | 1,256 | 6/17/2011 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expense | Shell | Travel - Gas | 46 | 6/20/2011 | | Receipt | N/A | Exhibit 8 | 52 |
| Alternate Living Expense | Pilot | Travel - Gas | 35 | 6/21/2011 | | Receipt | N/A | Exhibit 8 | 52 |
| Alternate Living Expense | Sleep Inn | Travel - Lodging | 80 | 6/21/2011 | | Receipt | N/A | Exhibit 8 | 55 |
| Alternate Living Expense | Villa Rental - John Miller | Travel - Lodging | 1,100 | 6/22/2011 | | Check | N/A | Exhibit 8 | 56 |
| Alternate Living Expense | Qwik Pack and Ship | Travel - Packing Supplies | 28 | 6/22/2011 | | Receipt | N/A | Exhibit 8 | 58 |
| Alternate Living Expense | PA - Gas | Alt Home - Utilities and Other | 23 | 6/22/2011 | | Bank Statement | N/A | Exhibit 8 | 91 |
| Alternate Living Expense | Comcast | Alt Home - Utilities and Other | 111 | 6/28/2011 | | Bank Statement | N/A | Exhibit 8 | 86 |
| Alternate Living Expense | Bed Bath & Beyond | Travel - Lodging | 56 | 6/29/2011 | | Receipt | N/A | Exhibit 8 | 58 |
| Alternate Living Expense | Mario's Italian Meat Market | Travel - Meals/Groceries | 50 | 7/2/2011 | | Receipt | N/A | Exhibit 8 | 60 |
| Alternate Living Expense | Famous Dave's | Travel - Meals/Groceries | 21 | 7/2/2011 | | Receipt | N/A | Exhibit 8 | 61 |
| Alternate Living Expense | Bratta's Piano Bar | Travel - Meals/Groceries | 56 | 7/2/2011 | | Receipt | N/A | Exhibit 8 | 62 |
| Alternate Living Expense | PA - Electric | Alt Home - Utilities and Other | 10 | 7/5/2011 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expense | Carrabba's Italian Grill | Travel - Meals/Groceries | 46 | 7/9/2011 | | Receipt | N/A | Exhibit 8 | 62 |
| Alternate Living Expense | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 7/11/2011 | | Bank Statement | N/A | Exhibit 8 | 82 |
| Alternate Living Expense | PA - Sewage | Alt Home - Utilities and Other | 50 | 7/11/2011 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expense | Costco | Travel - Gas | 50 | 7/12/2011 | | Receipt | N/A | Exhibit 8 | 53 |
| Alternate Living Expense | Guardian Home | Alt Home - Utilities and Other | 45 | 7/12/2011 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expense | PA - Water | Alt Home - Utilities and Other | 100 | 7/12/2011 | | Bank Statement | N/A | Exhibit 8 | 91 |
| Alternate Living Expense | Naturescape, Inc | Alt Home - Utilities and Other | 225 | 7/13/2011 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expense | PA - Gas | Alt Home - Utilities and Other | 40 | 7/15/2011 | | Bank Statement | N/A | Exhibit 8 | 91 |
| Alternate Living Expense | Mimi's Café | Travel - Meals/Groceries | 12 | 7/16/2011 | | Receipt | N/A | Exhibit 8 | 61 |
| Alternate Living Expense | Outback Steakhouse | Travel - Meals/Groceries | 41 | 7/18/2011 | | Receipt | N/A | Exhibit 8 | 62 |
| Alternate Living Expense | Two Meatballs | Travel - Meals/Groceries | 13 | 7/18/2011 | X | Receipt | N/A | Exhibit 8 | 62 |
| Alternate Living Expense | City Mattress | Travel - Bedding | 1,458 | 7/18/2011 | | Receipt | N/A | Exhibit 8 | 64 |
| Alternate Living Expense | Villa Rental - John Miller | Travel - Lodging | 83 | 7/20/2011 | | Check | N/A | Exhibit 8 | 57 |
| Alternate Living Expense | Costco | Travel - Gas | 45 | 7/21/2011 | | Receipt | N/A | Exhibit 8 | 52 |
| Alternate Living Expense | Rodes Fresh and Fancy | Travel - Meals/Groceries | 30 | 7/21/2011 | | Receipt | N/A | Exhibit 8 | 60 |
| Alternate Living Expense | Rodes Fresh and Fancy | Travel - Meals/Groceries | 24 | 7/21/2011 | | Receipt | N/A | Exhibit 8 | 60 |
| Alternate Living Expense | Costco | Travel - Meals/Groceries | 60 | 7/21/2011 | | Receipt | N/A | Exhibit 8 | 60 |
| Alternate Living Expense | Publix | Travel - Meals/Groceries | 38 | 7/24/2011 | | Receipt | N/A | Exhibit 8 | 59 |
| Alternate Living Expense | Pincher's Crab Shack | Travel - Meals/Groceries | 15 | 7/25/2011 | | Receipt | N/A | Exhibit 8 | 61 |
| Alternate Living Expense | Shell | Travel - Gas | 44 | 7/26/2011 | | Receipt | N/A | Exhibit 8 | 53 |
| Alternate Living Expense | KangarooExpress | Travel - Gas | 42 | 7/26/2011 | | Receipt | N/A | Exhibit 8 | 53 |
| Alternate Living Expense | Costco | Travel - Gas | - | 7/26/2011 | X | Receipt | N/A | Exhibit 8 | 53 |
| Alternate Living Expense | Fresh Market | Travel - Meals/Groceries | 110 | 7/26/2011 | X | Receipt | N/A | Exhibit 8 | 59 |
| Alternate Living Expense | McDonald's | Travel - Meals/Groceries | 5 | 7/26/2011 | | Receipt | N/A | Exhibit 8 | 61 |
| Alternate Living Expense | Holiday Inn Express & Suites | Travel - Lodging | 121 | 7/27/2011 | | Receipt | N/A | Exhibit 8 | 54 |
| Alternate Living Expense | Guardian Home | Alt Home - Utilities and Other | 45 | 7/28/2011 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expense | PA - Gas | Alt Home - Utilities and Other | 30 | 7/29/2011 | | Bank Statement | N/A | Exhibit 8 | 91 |

Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 152 of 802
Case 1:11-cv-22408-MGC Document 272 entered on FLSD Docket 08/15/2013 Page 231 of
262

Exhibit 7.1
Damage Claims Detail - Candace Gody

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Alternate Living Expense | PA - Water | Alt Home - Utilities and Other | 143 | 8/4/2011 | | Bank Statement | N/A | Exhibit 8 | 91 |
| Alternate Living Expense | Naturescape, Inc | Alt Home - Utilities and Other | 180 | 8/8/2011 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expense | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 8/10/2011 | | Bank Statement | N/A | Exhibit 8 | 82 |
| Alternate Living Expense | Comcast | Alt Home - Utilities and Other | 258 | 8/16/2011 | | Bank Statement | N/A | Exhibit 8 | 86 |
| Alternate Living Expense | PA - Electric | Alt Home - Utilities and Other | 60 | 8/16/2011 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expense | Custom Turf | Alt Home - Utilities and Other | 99 | 8/22/2011 | | Bank Statement | N/A | Exhibit 8 | 87 |
| Alternate Living Expense | Cannonsburg General | Alt Home - Utilities and Other | 385 | 8/24/2011 | | Bank Statement | N/A | Exhibit 8 | 86 |
| Alternate Living Expense | Naturescape, Inc | Alt Home - Utilities and Other | 942 | 8/24/2011 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expense | Guardian Home | Alt Home - Utilities and Other | 45 | 8/26/2011 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expense | PA - Sewage | Alt Home - Utilities and Other | 34 | 8/31/2011 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expense | PA - Water | Alt Home - Utilities and Other | 68 | 9/8/2011 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expense | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 9/12/2011 | | Bank Statement | N/A | Exhibit 8 | 82 |
| Alternate Living Expense | PA - Electric | Alt Home - Utilities and Other | 71 | 9/13/2011 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expense | Naturescape, Inc | Alt Home - Utilities and Other | 135 | 9/15/2011 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expense | Guardian Home | Alt Home - Utilities and Other | 45 | 9/21/2011 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expense | PA - Sewage | Alt Home - Utilities and Other | 34 | 10/6/2011 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expense | PA - Water | Alt Home - Utilities and Other | 375 | 10/7/2011 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expense | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 10/11/2011 | | Bank Statement | N/A | Exhibit 8 | 82 |
| Alternate Living Expense | Guardian Home | Alt Home - Utilities and Other | 45 | 10/17/2011 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expense | PA - Electric | Alt Home - Utilities and Other | 80 | 10/17/2011 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expense | PA - Gas | Alt Home - Utilities and Other | 9 | 10/17/2011 | | Bank Statement | N/A | Exhibit 8 | 91 |
| Alternate Living Expense | Naturescape, Inc | Alt Home - Utilities and Other | 90 | 10/18/2011 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expense | Comcast | Alt Home - Utilities and Other | 320 | 10/20/2011 | | Bank Statement | N/A | Exhibit 8 | 86 |
| Alternate Living Expense | Custom Turf | Alt Home - Utilities and Other | 99 | 10/24/2011 | | Bank Statement | N/A | Exhibit 8 | 87 |
| Alternate Living Expense | PA - Sewage | Alt Home - Utilities and Other | 245 | 11/7/2011 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expense | PA - Water | Alt Home - Utilities and Other | 83 | 11/8/2011 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expense | Custom Turf | Alt Home - Utilities and Other | 90 | 11/9/2011 | | Bank Statement | N/A | Exhibit 8 | 87 |
| Alternate Living Expense | PA - Electric | Alt Home - Utilities and Other | 57 | 11/9/2011 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expense | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 11/10/2011 | | Bank Statement | N/A | Exhibit 8 | 82 |
| Alternate Living Expense | Guardian Home | Alt Home - Utilities and Other | 45 | 11/14/2011 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expense | Naturescape, Inc | Alt Home - Utilities and Other | 253 | 11/15/2011 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expense | PA - Gas | Alt Home - Utilities and Other | 52 | 11/16/2011 | | Bank Statement | N/A | Exhibit 8 | 91 |
| Alternate Living Expense | Comcast | Alt Home - Utilities and Other | 168 | 12/2/2011 | | Bank Statement | N/A | Exhibit 8 | 86 |
| Alternate Living Expense | PA - Sewage | Alt Home - Utilities and Other | 61 | 12/8/2011 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expense | PA - Water | Alt Home - Utilities and Other | 50 | 12/8/2011 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expense | Naturescape, Inc | Alt Home - Utilities and Other | 45 | 12/9/2011 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expense | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 12/12/2011 | | Bank Statement | N/A | Exhibit 8 | 82 |
| Alternate Living Expense | Guardian Home | Alt Home - Utilities and Other | 45 | 12/14/2011 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expense | Custom Turf | Alt Home - Utilities and Other | 50 | 12/16/2011 | | Bank Statement | N/A | Exhibit 8 | 87 |
| Alternate Living Expense | PA - Gas | Alt Home - Utilities and Other | 62 | 12/19/2011 | | Bank Statement | N/A | Exhibit 8 | 91 |
| Alternate Living Expense | Comcast | Alt Home - Utilities and Other | 167 | 12/27/2011 | | Bank Statement | N/A | Exhibit 8 | 86 |

Exhibit 7.1
Damage Claims Detail - Candace Gody

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Alternate Living Expense | PA - Electric | Alt Home - Utilities and Other | 65 | 12/28/2011 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expense | PA - Sewage | Alt Home - Utilities and Other | 39 | 1/6/2012 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expense | PA - Water | Alt Home - Utilities and Other | 61 | 1/9/2012 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expense | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 1/10/2012 | | Bank Statement | N/A | Exhibit 8 | 80 |
| Alternate Living Expense | PA - Electric | Alt Home - Utilities and Other | 116 | 1/10/2012 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expense | PA - Gas | Alt Home - Utilities and Other | 101 | 1/16/2012 | | Bank Statement | N/A | Exhibit 8 | 91 |
| Alternate Living Expense | Guardian Home | Alt Home - Utilities and Other | 45 | 1/17/2012 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expense | PA - Water | Alt Home - Utilities and Other | 24 | 1/17/2012 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expense | Comcast | Alt Home - Utilities and Other | 92 | 1/25/2012 | | Bank Statement | N/A | Exhibit 8 | 86 |
| Alternate Living Expense | PA - Water | Alt Home - Utilities and Other | 57 | 2/6/2012 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expense | PA - Sewage | Alt Home - Utilities and Other | 60 | 2/7/2012 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expense | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 2/10/2012 | | Bank Statement | N/A | Exhibit 8 | 80 |
| Alternate Living Expense | Guardian Home | Alt Home - Utilities and Other | 45 | 2/14/2012 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expense | PA - Gas | Alt Home - Utilities and Other | 123 | 2/14/2012 | | Bank Statement | N/A | Exhibit 8 | 91 |
| Alternate Living Expense | PA - Electric | Alt Home - Utilities and Other | 20 | 2/15/2012 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expense | Comcast | Alt Home - Utilities and Other | 147 | 2/27/2012 | | Bank Statement | N/A | Exhibit 8 | 86 |
| Alternate Living Expense | PA - Electric | Alt Home - Utilities and Other | 18 | 3/2/2012 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expense | PA - Sewage | Alt Home - Utilities and Other | 51 | 3/7/2012 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expense | PA - Water | Alt Home - Utilities and Other | 57 | 3/8/2012 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expense | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 3/12/2012 | | Bank Statement | N/A | Exhibit 8 | 80 |
| Alternate Living Expense | Guardian Home | Alt Home - Utilities and Other | 45 | 3/14/2012 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expense | PA - Gas | Alt Home - Utilities and Other | 111 | 3/16/2012 | | Bank Statement | N/A | Exhibit 8 | 91 |
| Alternate Living Expense | PA - Electric | Alt Home - Utilities and Other | 33 | 3/22/2012 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expense | PA - Sewage | Alt Home - Utilities and Other | 51 | 4/6/2012 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expense | PA - Water | Alt Home - Utilities and Other | 24 | 4/9/2012 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expense | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 4/10/2012 | | Bank Statement | N/A | Exhibit 8 | 80 |
| Alternate Living Expense | PA - Gas | Alt Home - Utilities and Other | 41 | 4/13/2012 | | Bank Statement | N/A | Exhibit 8 | 91 |
| Alternate Living Expense | Guardian Home | Alt Home - Utilities and Other | 45 | 4/16/2012 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expense | Custom Turf | Alt Home - Utilities and Other | 50 | 4/20/2012 | | Bank Statement | N/A | Exhibit 8 | 87 |
| Alternate Living Expense | Naturescape, Inc | Alt Home - Utilities and Other | 144 | 4/23/2012 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expense | PA - Electric | Alt Home - Utilities and Other | 25 | 5/4/2012 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expense | PA - Sewage | Alt Home - Utilities and Other | 42 | 5/7/2012 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expense | Custom Turf | Alt Home - Utilities and Other | 99 | 5/9/2012 | | Bank Statement | N/A | Exhibit 8 | 87 |
| Alternate Living Expense | PA - Water | Alt Home - Utilities and Other | 28 | 5/9/2012 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expense | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 5/10/2012 | | Bank Statement | N/A | Exhibit 8 | 80 |
| Alternate Living Expense | Guardian Home | Alt Home - Utilities and Other | 45 | 5/14/2012 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expense | PA - Trash | Alt Home - Utilities and Other | 123 | 5/15/2012 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expense | PA - Gas | Alt Home - Utilities and Other | 59 | 5/16/2012 | | Bank Statement | N/A | Exhibit 8 | 91 |
| Alternate Living Expense | ERNS Cutting Edg | Alt Home - Utilities and Other | 225 | 5/18/2012 | | Bank Statement | N/A | Exhibit 8 | 87 |
| Alternate Living Expense | Custom Turf | Alt Home - Utilities and Other | 90 | 5/22/2012 | | Bank Statement | N/A | Exhibit 8 | 87 |
| Alternate Living Expense | PA - Sewage | Alt Home - Utilities and Other | 42 | 6/6/2012 | | Bank Statement | N/A | Exhibit 8 | 90 |

Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 154 of 802
Case 2:11-cv-22408-MCE Document 272 Entered on FLSD Docket 08/15/2014 Page 233 of
262

Exhibit 7.1
Damage Claims Detail - Candace Gody

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Alternate Living Expense | PA - Water | Alt Home - Utilities and Other | 48 | 6/7/2012 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expense | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 6/11/2012 | | Bank Statement | N/A | Exhibit 8 | 80 |
| Alternate Living Expense | Comcast | Alt Home - Utilities and Other | 33 | 6/13/2012 | | Bank Statement | N/A | Exhibit 8 | 86 |
| Alternate Living Expense | Guardian Home | Alt Home - Utilities and Other | 45 | 6/14/2012 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expense | PA - Electric | Alt Home - Utilities and Other | 17 | 6/14/2012 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expense | Custom Turf | Alt Home - Utilities and Other | 159 | 6/22/2012 | | Bank Statement | N/A | Exhibit 8 | 87 |
| Alternate Living Expense | ERNS Cutting Edg | Alt Home - Utilities and Other | 180 | 6/22/2012 | | Bank Statement | N/A | Exhibit 8 | 87 |
| Alternate Living Expense | PA - Electric | Alt Home - Utilities and Other | 23 | 6/25/2012 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expense | PA - Sewage | Alt Home - Utilities and Other | 42 | 7/6/2012 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expense | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 7/10/2012 | | Bank Statement | N/A | Exhibit 8 | 80 |
| Alternate Living Expense | Comcast | Alt Home - Utilities and Other | 274 | 7/10/2012 | | Bank Statement | N/A | Exhibit 8 | 86 |
| Alternate Living Expense | ERNS Cutting Edg | Alt Home - Utilities and Other | 135 | 7/10/2012 | | Bank Statement | N/A | Exhibit 8 | 87 |
| Alternate Living Expense | PA - Water | Alt Home - Utilities and Other | 284 | 7/12/2012 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expense | Guardian Home | Alt Home - Utilities and Other | 45 | 7/16/2012 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expense | Custom Turf | Alt Home - Utilities and Other | 90 | 7/25/2012 | | Bank Statement | N/A | Exhibit 8 | 87 |
| Alternate Living Expense | PA - Sewage | Alt Home - Utilities and Other | 256 | 8/6/2012 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expense | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 8/10/2012 | | Bank Statement | N/A | Exhibit 8 | 80 |
| Alternate Living Expense | ERNS Cutting Edg | Alt Home - Utilities and Other | 180 | 8/10/2012 | | Bank Statement | N/A | Exhibit 8 | 87 |
| Alternate Living Expense | Guardian Home | Alt Home - Utilities and Other | 45 | 8/14/2012 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expense | Custom Turf | Alt Home - Utilities and Other | 99 | 8/17/2012 | | Bank Statement | N/A | Exhibit 8 | 87 |
| Alternate Living Expense | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 9/10/2012 | | Bank Statement | N/A | Exhibit 8 | 80 |
| Alternate Living Expense | ERNS Cutting Edg | Alt Home - Utilities and Other | 180 | 9/10/2012 | | Bank Statement | N/A | Exhibit 8 | 87 |
| Alternate Living Expense | Guardian Home | Alt Home - Utilities and Other | 45 | 9/14/2012 | | Bank Statement | N/A | Exhibit 8 | 88 |
| **Alternate Living Expense Total** | | | **$ 60,522** | | | | | | |
| Personal Property Damage Expense | Wiegold & Sons, Inc. | A/C Repair | $ 209 | 7/27/2007 | | Invoice | N/A | Exhibit 6 | 1 |
| Personal Property Damage Expense | Best Buy | Wine Cooler | 469 | 8/4/2008 | | Receipt | N/A | Exhibit 6 | 50 |
| Personal Property Damage Expense | Wiegold & Sons, Inc. | A/C Repair | 169 | 8/5/2008 | | Invoice | N/A | Exhibit 6 | 3 |
| Personal Property Damage Expense | Wiegold & Sons, Inc. | A/C Repair | 107 | 12/18/2008 | | Invoice | N/A | Exhibit 6 | 2 |
| Personal Property Damage Expense | Wiegold & Sons, Inc. | A/C Repair | 268 | 5/26/2009 | | Invoice | N/A | Exhibit 6 | 4 |
| Personal Property Damage Expense | Staples | Copies of Inspection Reports | 33 | 8/15/2009 | | Receipt | N/A | Exhibit 5 | 2 |
| Personal Property Damage Expense | Lowe's | Idylis Air Purifier | 246 | 10/3/2009 | | Receipt | N/A | Exhibit 5 | 2 |
| Personal Property Damage Expense | Home Depot | Retractable Screen Doors | 129 | 10/26/2009 | | Receipt | N/A | Exhibit 5 | 2 |
| Personal Property Damage Expense | Certified Heating & Cooling | HVAC Service Order | 375 | 3/17/2010 | | Invoice | N/A | Exhibit 6 | 7/8 |
| Personal Property Damage Expense | Walgreen's | Personal Grooming Items | 21 | 6/5/2010 | | Receipt | N/A | Exhibit 5 | 3 |
| Personal Property Damage Expense | Walgreen's | Hair Dryer Replacement | 15 | 7/14/2010 | X | Receipt | N/A | Exhibit 5 | 3 |
| Personal Property Damage Expense | Levin Furniture | Alt Home - Furniture | 626 | 7/16/2010 | | Invoice | N/A | Exhibit 8 | 39 |
| Personal Property Damage Expense | Levin Furniture | Alt Home - Furniture | 5,708 | 7/16/2010 | | Invoice | N/A | Exhibit 8 | 40 |
| Personal Property Damage Expense | Old Allegheny Shoppe | Alt Home - Furniture | 3,818 | 7/17/2010 | | Invoice | N/A | Exhibit 8 | 35 |
| Personal Property Damage Expense | Levin Furniture | Alt Home - Furniture | 180 | 8/3/2010 | | Invoice | N/A | Exhibit 8 | 38 |
| Personal Property Damage Expense | Carolina Accents | Alt Home - Furniture | 507 | 8/12/2010 | | Invoice | N/A | Exhibit 8 | 37 |
| Personal Property Damage Expense | Certified Heating & Cooling | HVAC Service Order | 92 | 3/8/2011 | | Invoice | N/A | Exhibit 6 | 5 |

Exhibit 7.1
Damage Claims Detail - Candace Gody

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|------|--------|-------------|--------|------|--------------|----------------|-------|------------------|--------------|
| Personal Property Damage Expense | Certified Heating & Cooling | HVAC Service Order | 375 | 3/16/2011 | | Invoice | N/A | Exhibit 6 | 6/11 |
| Personal Property Damage Expense | Macy's | Pillow Cases? | 45 | 5/12/2012 | | Receipt | N/A | Exhibit 14 | 45 |
| Personal Property Damage Expense | Baer's Furniture | Remediation - Other | 2,872 | 5/24/2012 | | Invoice | N/A | Exhibit 14 | 38/39 |
| Personal Property Damage Expense | City Mattress | Mattress Purchase | 840 | 5/29/2012 | | Invoice | N/A | Exhibit 14 | 48 |
| Personal Property Damage Expense | City Mattress | Bedframe Purchase | 243 | 6/20/2012 | | Invoice | N/A | Exhibit 14 | 46 |
| Personal Property Damage Expense | Baer's Furniture | Remediation - Other | 507 | 9/30/2012 | X | Invoice | N/A | Exhibit 14 | 36/37 |
| Personal Property Damage Expense Total | | | $ 17,852 | | | | | | |

Exhibit 7.3

Calculation of Prejudgment Interest Summary - Anthony & Candace Gody

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Vendor | Description | Amount | Total Interest Through 7/22/2019 |
|---|---|---|---|---|---|---|
| 6/28/2011 | 7/28/2011 | Remediation | Polkow Construction | Remediation - Construction | $ 8,000 | $ 3,244 |
| 7/11/2011 | 8/10/2011 | Remediation | Intuitive Environmental Solutions LLC | Remediation - Inspection | 1,300 | 524 |
| 8/5/2011 | 9/4/2011 | Remediation | Polkow Construction | Remediation - Construction | 11,675 | 4,662 |
| 9/13/2011 | 10/13/2011 | Remediation | Intuitive Environmental Solutions LLC | Remediation - Inspection | 650 | 256 |
| 1/13/2012 | 2/12/2012 | Remediation | Polkow Construction | Remediation - Construction | 7,000 | 2,642 |
| 2/8/2012 | 3/9/2012 | Remediation | Kevin Polkow | Remediation - Other | 6,981 | 2,612 |
| 2/23/2012 | 3/24/2012 | Remediation | Costco | Reverse Osmosis System | 150 | 56 |
| 3/2/2012 | 4/1/2012 | Remediation | Raymond Building Supply | Remediation - Other | 19,826 | 7,358 |
| 3/6/2012 | 4/5/2012 | Remediation | Signature Hardware | Remediation - Other | 1,635 | 606 |
| 3/8/2012 | 4/7/2012 | Remediation | Emilio Martinez | Remediation - Construction | 10,000 | 3,703 |
| 3/8/2012 | 4/7/2012 | Remediation | Costco | Garage Door Opener | 250 | 93 |
| 3/8/2012 | 4/7/2012 | Remediation | M & G Best Service (Emilio Martinez) | Remediation - Construction | 10,000 | 3,703 |
| 3/20/2012 | 4/19/2012 | Remediation | Budget Blinds | Remediation - Other | 3,829 | 1,412 |
| 3/23/2012 | 4/22/2012 | Remediation | Polkow Construction | Remediation - Construction | 8,615 | 3,174 |
| 3/29/2012 | 4/28/2012 | Remediation | Faucet Direct.com | Remediation - Other | 1,728 | 635 |
| 3/30/2012 | 4/29/2012 | Remediation | Kevin Polkow | Remediation - Other | 10,000 | 3,675 |
| 4/1/2012 | 5/1/2012 | Remediation | Lamps Plus | Remediation - Other | 370 | 136 |
| 4/2/2012 | 5/2/2012 | Remediation | Lamps Plus | Remediation - Other | 387 | 142 |
| 4/2/2012 | 5/2/2012 | Remediation | Amazon | Garbage Disposal | 152 | 56 |
| 4/2/2012 | 5/2/2012 | Remediation | Amazon | Air Switch | 50 | 18 |
| 4/5/2012 | 5/5/2012 | Remediation | Lighting First | Remediation - Other | 1,436 | 526 |
| 4/6/2012 | 5/6/2012 | Remediation | Tile Outlets of America | Remediation - Other | 24 | 9 |
| 4/6/2012 | 5/6/2012 | Remediation | Overstock.com | Remediation - Other | 276 | 101 |
| 4/7/2012 | 5/7/2012 | Remediation | Maurizio D'Alessandro | Remediation - Construction | 3,300 | 1,209 |
| 4/9/2012 | 5/9/2012 | Remediation | Tile Outlets of America | Remediation - Other | 57 | 21 |
| 4/9/2012 | 5/9/2012 | Remediation | Your Home Supply | Remediation - Other | 170 | 62 |
| 4/9/2012 | 5/9/2012 | Remediation | Tile Outlets of America | Remediation - Other | 100 | 37 |
| 4/16/2012 | 5/16/2012 | Remediation | Lamps Plus | Remediation - Other | 522 | 191 |
| 4/18/2012 | 5/18/2012 | Remediation | Lighting First | Remediation - Other | 216 | 79 |
| 4/18/2012 | 5/18/2012 | Remediation | Polkow Construction | Phase III | 10,000 | 3,650 |
| 4/26/2012 | 5/26/2012 | Remediation | Hayneedle | Remediation - Other | 40 | 15 |
| 4/28/2012 | 5/28/2012 | Remediation | Signature Hardware | Front Door | 322 | 117 |
| 5/1/2012 | 5/31/2012 | Remediation | Gulf Stone Construction | Phase III | 6,301 | 2,289 |
| 5/1/2012 | 5/31/2012 | Remediation | Polkow Construction | Phase III | 10,000 | 3,633 |
| 5/1/2012 | 5/31/2012 | Remediation | No Vendor Name - Cushion | Upholster Bench Cushion | 237 | 86 |
| 5/5/2012 | 6/4/2012 | Remediation | M & G Best Service (Emilio Martinez) | Remediation - Construction | 7,450 | 2,703 |
| 5/8/2012 | 6/7/2012 | Remediation | Grandinroad | Remediation - Other | 111 | 40 |
| 5/18/2012 | 6/17/2012 | Remediation | ColorWheel Paint | Remediation - Other | 32 | 12 |
| 5/19/2012 | 6/18/2012 | Remediation | ColorWheel Paint | Remediation - Other | 58 | 21 |
| 5/24/2012 | 6/23/2012 | Remediation | Home Depot | Remediation - Other | 87 | 31 |
| 5/25/2012 | 6/24/2012 | Remediation | Comcast | Remediation - Other | 80 | 29 |
| 5/25/2012 | 6/24/2012 | Remediation | Comcast | Remediation - Other | 57 | 21 |
| 5/29/2012 | 6/28/2012 | Remediation | Gulf Stone Construction | Remediation - Construction | 7,288 | 2,621 |
| 6/19/2012 | 7/19/2012 | Remediation | Core Cleaning | Remediation - Other | 250 | 89 |
| 6/20/2012 | 7/20/2012 | Remediation | Build.com | Remediation - Other | 280 | 100 |
| 7/10/2012 | 8/9/2012 | Remediation | Lighting First | Remediation - Other | 355 | 126 |
| 7/11/2012 | 8/10/2012 | Remediation | Action Automatic Door & Gate | Remediation - Other | 165 | 58 |
| 7/16/2012 | 8/15/2012 | Remediation | Ray Allen | Remediation - Other | 50 | 18 |
| 9/13/2012 | 10/13/2012 | Remediation | Hadinger Flooring | Remediation - Construction | 1,125 | 389 |
| 10/3/2012 | 11/2/2012 | Remediation | Hadinger Flooring | Remediation - Other | 275 | 94 |
| | | Remediation Total | | | $ 153,262 | $ 57,086 |
| 6/22/2010 | 7/22/2010 | Alternate Living Expense | IGA | Groceries in Lieu of Rent | $ 25 | $ 12 |
| 6/22/2010 | 7/22/2010 | Alternate Living Expense | Stop & Shop | Groceries in Lieu of Rent | 53 | 25 |
| 6/22/2010 | 7/22/2010 | Alternate Living Expense | Marshalls | Alt Home - Miscellaneous | - | - |
| 6/23/2010 | 7/23/2010 | Alternate Living Expense | CVS | Groceries in Lieu of Rent | 21 | 10 |
| 6/24/2010 | 7/24/2010 | Alternate Living Expense | Giutna's Meat Farms | Groceries in Lieu of Rent | 57 | 27 |
| 6/25/2010 | 7/25/2010 | Alternate Living Expense | IGA | Groceries in Lieu of Rent | 13 | 6 |
| 6/26/2010 | 7/26/2010 | Alternate Living Expense | Marshalls | Alt Home - Miscellaneous | 37 | 17 |
| 6/27/2010 | 7/27/2010 | Alternate Living Expense | Costco | Alt Home - TV | 185 | 86 |
| 6/28/2010 | 7/28/2010 | Alternate Living Expense | IGA | Groceries in Lieu of Rent | 16 | 7 |
| 6/28/2010 | 7/28/2010 | Alternate Living Expense | IGA | Groceries in Lieu of Rent | 54 | 25 |
| 6/29/2010 | 7/29/2010 | Alternate Living Expense | IGA | Groceries in Lieu of Rent | 9 | 4 |
| 7/1/2010 | 7/31/2010 | Alternate Living Expense | Uncle Giuseppe's | Groceries in Lieu of Rent | 214 | 99 |
| 7/6/2010 | 8/5/2010 | Alternate Living Expense | HomeGoods | Alt Home - Miscellaneous | 127 | 59 |
| 7/8/2010 | 8/7/2010 | Alternate Living Expense | Kitchen Collection | Alt Home - Miscellaneous | 22 | 10 |
| 7/8/2010 | 8/7/2010 | Alternate Living Expense | Kitchen Collection | Alt Home - Miscellaneous | 27 | 13 |
| 7/10/2010 | 8/9/2010 | Alternate Living Expense | IGA | Groceries in Lieu of Rent | 31 | 15 |
| 7/10/2010 | 8/9/2010 | Alternate Living Expense | Waldbaums | Groceries in Lieu of Rent | 35 | 16 |
| 7/10/2010 | 8/9/2010 | Alternate Living Expense | Bed Bath & Beyond | Alt Home - Miscellaneous | 72 | 33 |
| 7/14/2010 | 8/13/2010 | Alternate Living Expense | Pathmark | Groceries in Lieu of Rent | 11 | 5 |
| 7/14/2010 | 8/13/2010 | Alternate Living Expense | King Kullen | Groceries in Lieu of Rent | 45 | 21 |
| 7/14/2010 | 8/13/2010 | Alternate Living Expense | Voss TV & Appliances | Alt Home - Voss Bedding | 1,931 | 894 |

Exhibit 7.3

Calculation of Prejudgment Interest Summary - Anthony & Candace Gody

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Vendor | Description | Amount | Total Interest Through 7/22/2019 |
|---|---|---|---|---|---|---|
| 7/14/2010 | 8/13/2010 | Alternate Living Expense | Marshalls | Alt Home - Miscellaneous | 29 | 13 |
| 7/15/2010 | 8/14/2010 | Alternate Living Expense | Costco | Alt Home - Miscellaneous | 222 | 103 |
| 7/15/2010 | 8/14/2010 | Alternate Living Expense | Home Depot | Alt Home - Miscellaneous | 325 | 151 |
| 7/16/2010 | 8/15/2010 | Alternate Living Expense | Best Buy | Alt Home - TV | 642 | 297 |
| 7/16/2010 | 8/15/2010 | Alternate Living Expense | Bed Bath & Beyond | Alt Home - Miscellaneous | 368 | 170 |
| 7/16/2010 | 8/15/2010 | Alternate Living Expense | Marshalls | Alt Home - Miscellaneous | - | - |
| 7/16/2010 | 8/15/2010 | Alternate Living Expense | Bed Bath & Beyond | Alt Home - Miscellaneous | 146 | 68 |
| 7/19/2010 | 8/18/2010 | Alternate Living Expense | Home Depot | Alt Home - Miscellaneous | 181 | 84 |
| 7/21/2010 | 8/20/2010 | Alternate Living Expense | Macy's | Alt Home - Miscellaneous | 496 | 229 |
| 7/22/2010 | 8/21/2010 | Alternate Living Expense | Home Depot | Alt Home - Miscellaneous | 1 | 1 |
| 7/22/2010 | 8/21/2010 | Alternate Living Expense | Bed Bath & Beyond | Alt Home - Miscellaneous | 27 | 12 |
| 7/23/2010 | 8/22/2010 | Alternate Living Expense | Pool City | Alt Home - Miscellaneous | 526 | 243 |
| 7/23/2010 | 8/22/2010 | Alternate Living Expense | Big Lots | Alt Home - Miscellaneous | 26 | 12 |
| 7/26/2010 | 8/25/2010 | Alternate Living Expense | Home Depot | Alt Home - Miscellaneous | - | - |
| 7/26/2010 | 8/25/2010 | Alternate Living Expense | Tuesday Morning | Alt Home - Miscellaneous | 32 | 15 |
| 7/26/2010 | 8/25/2010 | Alternate Living Expense | Kohl's | Alt Home - Miscellaneous | 144 | 67 |
| 7/29/2010 | 8/28/2010 | Alternate Living Expense | Best Buy | Alt Home - Other Electronics | 203 | 94 |
| 7/31/2010 | 8/30/2010 | Alternate Living Expense | Dick's Sporting Goods | Alt Home - Miscellaneous | 152 | 70 |
| 8/3/2010 | 9/2/2010 | Alternate Living Expense | Macy's | Alt Home - Miscellaneous | 135 | 62 |
| 8/10/2010 | 9/9/2010 | Alternate Living Expense | Best Buy | Alt Home - Computer | 762 | 349 |
| 8/16/2010 | 9/15/2010 | Alternate Living Expense | Voss TV & Appliances | Alt Home - Voss Unknown | 591 | 270 |
| 8/19/2010 | 9/18/2010 | Alternate Living Expense | Lowe's | Alt Home - Miscellaneous | 108 | 49 |
| 8/21/2010 | 9/20/2010 | Alternate Living Expense | Bed Bath & Beyond | Alt Home - Miscellaneous | 61 | 28 |
| 8/21/2010 | 9/20/2010 | Alternate Living Expense | Marshalls | Alt Home - Miscellaneous | 93 | 43 |
| 8/24/2010 | 9/23/2010 | Alternate Living Expense | Kohl's | Alt Home - Miscellaneous | 19 | 9 |
| 8/25/2010 | 9/24/2010 | Alternate Living Expense | Belsky LTD | Alt Home - Gas Line | 300 | 137 |
| 8/29/2010 | 9/28/2010 | Alternate Living Expense | Bed Bath & Beyond | Alt Home - Miscellaneous | 57 | 26 |
| 8/31/2010 | 9/30/2010 | Alternate Living Expense | Home Depot | Alt Home - Miscellaneous | 39 | 18 |
| 9/3/2010 | 10/3/2010 | Alternate Living Expense | Best Buy | Alt Home - Miscellaneous | 19 | 9 |
| 9/3/2010 | 10/3/2010 | Alternate Living Expense | Home Depot | Alt Home - Miscellaneous | 49 | 22 |
| 9/4/2010 | 10/4/2010 | Alternate Living Expense | Dollar General | Alt Home - Miscellaneous | 12 | 5 |
| 9/10/2010 | 10/10/2010 | Alternate Living Expense | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,141 | 517 |
| 9/26/2010 | 10/26/2010 | Alternate Living Expense | Brentwood Bank | Mortgage Modification Fee | 1,500 | 676 |
| 10/12/2010 | 11/11/2010 | Alternate Living Expense | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 569 |
| 10/20/2010 | 11/19/2010 | Alternate Living Expense | Home Depot | Alt Home - Miscellaneous | 29 | 13 |
| 11/10/2010 | 12/10/2010 | Alternate Living Expense | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 563 |
| 12/10/2010 | 1/9/2011 | Alternate Living Expense | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 557 |
| 12/14/2010 | 1/13/2011 | Alternate Living Expense | Remnant World | Alt Home - Miscellaneous | 149 | 65 |
| 12/14/2010 | 1/13/2011 | Alternate Living Expense | PA - Sewage | Alt Home - Utilities and Other | 64 | 28 |
| 12/16/2010 | 1/15/2011 | Alternate Living Expense | Guardian Home | Alt Home - Utilities and Other | 45 | 20 |
| 12/20/2010 | 1/19/2011 | Alternate Living Expense | PA - Electric | Alt Home - Utilities and Other | 41 | 18 |
| 12/27/2010 | 1/26/2011 | Alternate Living Expense | PA - Gas | Alt Home - Utilities and Other | 61 | 27 |
| 12/29/2010 | 1/28/2011 | Alternate Living Expense | Comcast | Alt Home - Utilities and Other | 109 | 47 |
| 1/7/2011 | 2/6/2011 | Alternate Living Expense | PA - Water | Alt Home - Utilities and Other | 42 | 18 |
| 1/10/2011 | 2/9/2011 | Alternate Living Expense | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 550 |
| 1/12/2011 | 2/11/2011 | Alternate Living Expense | PA - Sewage | Alt Home - Utilities and Other | 39 | 17 |
| 1/14/2011 | 2/13/2011 | Alternate Living Expense | PA - Electric | Alt Home - Utilities and Other | 50 | 22 |
| 1/18/2011 | 2/17/2011 | Alternate Living Expense | Guardian Home | Alt Home - Utilities and Other | 45 | 19 |
| 1/27/2011 | 2/26/2011 | Alternate Living Expense | Comcast | Alt Home - Utilities and Other | 113 | 48 |
| 1/31/2011 | 3/2/2011 | Alternate Living Expense | PA - Gas | Alt Home - Utilities and Other | 133 | 57 |
| 2/7/2011 | 3/9/2011 | Alternate Living Expense | PA - Water | Alt Home - Utilities and Other | 41 | 18 |
| 2/10/2011 | 3/12/2011 | Alternate Living Expense | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 544 |
| 2/10/2011 | 3/12/2011 | Alternate Living Expense | PA - Sewage | Alt Home - Utilities and Other | 34 | 14 |
| 2/16/2011 | 3/18/2011 | Alternate Living Expense | Guardian Home | Alt Home - Utilities and Other | 45 | 19 |
| 2/18/2011 | 3/20/2011 | Alternate Living Expense | PA - Electric | Alt Home - Utilities and Other | 56 | 24 |
| 2/22/2011 | 3/24/2011 | Alternate Living Expense | PA - Trash | Alt Home - Utilities and Other | 30 | 13 |
| 2/28/2011 | 3/30/2011 | Alternate Living Expense | PA - Gas | Alt Home - Utilities and Other | 119 | 51 |
| 3/1/2011 | 3/31/2011 | Alternate Living Expense | Comcast | Alt Home - Utilities and Other | 113 | 48 |
| 3/8/2011 | 4/7/2011 | Alternate Living Expense | PA - Water | Alt Home - Utilities and Other | 45 | 19 |
| 3/10/2011 | 4/9/2011 | Alternate Living Expense | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 538 |
| 3/14/2011 | 4/13/2011 | Alternate Living Expense | PA - Sewage | Alt Home - Utilities and Other | 35 | 15 |
| 3/16/2011 | 4/15/2011 | Alternate Living Expense | Guardian Home | Alt Home - Utilities and Other | 45 | 19 |
| 3/18/2011 | 4/17/2011 | Alternate Living Expense | PA - Electric | Alt Home - Utilities and Other | 59 | 25 |
| 3/29/2011 | 4/28/2011 | Alternate Living Expense | Comcast | Alt Home - Utilities and Other | 107 | 45 |
| 3/31/2011 | 4/30/2011 | Alternate Living Expense | PA - Gas | Alt Home - Utilities and Other | 100 | 42 |
| 4/7/2011 | 5/7/2011 | Alternate Living Expense | PA - Water | Alt Home - Utilities and Other | 50 | 21 |
| 4/8/2011 | 5/8/2011 | Alternate Living Expense | PA - Sewage | Alt Home - Utilities and Other | 35 | 15 |
| 4/11/2011 | 5/11/2011 | Alternate Living Expense | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 531 |
| 4/14/2011 | 5/14/2011 | Alternate Living Expense | Guardian Home | Alt Home - Utilities and Other | 45 | 19 |
| 4/18/2011 | 5/18/2011 | Alternate Living Expense | PA - Electric | Alt Home - Utilities and Other | 40 | 17 |
| 4/22/2011 | 5/22/2011 | Alternate Living Expense | Custom Turf | Alt Home - Utilities and Other | 102 | 42 |
| 4/22/2011 | 5/22/2011 | Alternate Living Expense | PA - Trash | Alt Home - Utilities and Other | 120 | 50 |

Exhibit 7.3

Calculation of Prejudgment Interest Summary - Anthony & Candace Gody

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Vendor | Description | Amount | Total Interest Through 7/22/2019 |
|---|---|---|---|---|---|---|
| 4/22/2011 | 5/22/2011 | Alternate Living Expense | PA - Sewage | Alt Home - Utilities and Other | 56 | 23 |
| 4/22/2011 | 5/22/2011 | Alternate Living Expense | PA - Gas | Alt Home - Utilities and Other | 85 | 35 |
| 4/25/2011 | 5/25/2011 | Alternate Living Expense | PA - Water | Alt Home - Utilities and Other | 15 | 6 |
| 4/28/2011 | 5/28/2011 | Alternate Living Expense | Comcast | Alt Home - Utilities and Other | 111 | 46 |
| 5/2/2011 | 6/1/2011 | Alternate Living Expense | PA - Sewage | Alt Home - Utilities and Other | 14 | 6 |
| 5/9/2011 | 6/8/2011 | Alternate Living Expense | Naturescape, Inc | Alt Home - Utilities and Other | 90 | 37 |
| 5/10/2011 | 6/9/2011 | Alternate Living Expense | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 525 |
| 5/16/2011 | 6/15/2011 | Alternate Living Expense | PA - Electric | Alt Home - Utilities and Other | 60 | 25 |
| 5/18/2011 | 6/17/2011 | Alternate Living Expense | Guardian Home | Alt Home - Utilities and Other | 45 | 19 |
| 5/19/2011 | 6/18/2011 | Alternate Living Expense | Custom Turf | Alt Home - Utilities and Other | 90 | 37 |
| 5/25/2011 | 6/24/2011 | Alternate Living Expense | PA - Gas | Alt Home - Utilities and Other | 42 | 17 |
| 5/26/2011 | 6/25/2011 | Alternate Living Expense | Comcast | Alt Home - Utilities and Other | 117 | 48 |
| 6/4/2011 | 7/4/2011 | Alternate Living Expense | PA - Sewage | Alt Home - Utilities and Other | 55 | 23 |
| 6/7/2011 | 7/7/2011 | Alternate Living Expense | Custom Turf | Alt Home - Utilities and Other | 69 | 28 |
| 6/9/2011 | 7/9/2011 | Alternate Living Expense | PA - Sewage | Alt Home - Utilities and Other | 34 | 14 |
| 6/9/2011 | 7/9/2011 | Alternate Living Expense | PA - Water | Alt Home - Utilities and Other | 89 | 36 |
| 6/10/2011 | 7/10/2011 | Alternate Living Expense | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 519 |
| 6/10/2011 | 7/10/2011 | Alternate Living Expense | Naturescape, Inc | Alt Home - Utilities and Other | 180 | 73 |
| 6/15/2011 | 7/15/2011 | Alternate Living Expense | Guardian Home | Alt Home - Utilities and Other | 45 | 18 |
| 6/15/2011 | 7/15/2011 | Alternate Living Expense | PA - Electric | Alt Home - Utilities and Other | 28 | 11 |
| 6/16/2011 | 7/16/2011 | Alternate Living Expense | PA - Electric | Alt Home - Utilities and Other | 28 | 11 |
| 6/17/2011 | 7/17/2011 | Alternate Living Expense | Naturescape, Inc | Alt Home - Utilities and Other | 1,256 | 512 |
| 6/20/2011 | 7/20/2011 | Alternate Living Expense | Shell | Travel - Gas | 46 | 19 |
| 6/21/2011 | 7/21/2011 | Alternate Living Expense | Pilot | Travel - Gas | 35 | 14 |
| 6/21/2011 | 7/21/2011 | Alternate Living Expense | Sleep Inn | Travel - Lodging | 80 | 33 |
| 6/22/2011 | 7/22/2011 | Alternate Living Expense | Villa Rental - John Miller | Travel - Lodging | 1,100 | 447 |
| 6/22/2011 | 7/22/2011 | Alternate Living Expense | Qwik Pack and Ship | Travel - Packing Supplies | 28 | 11 |
| 6/22/2011 | 7/22/2011 | Alternate Living Expense | PA - Gas | Alt Home - Utilities and Other | 23 | 9 |
| 6/28/2011 | 7/28/2011 | Alternate Living Expense | Comcast | Alt Home - Utilities and Other | 111 | 45 |
| 6/29/2011 | 7/29/2011 | Alternate Living Expense | Bed Bath & Beyond | Travel - Lodging | 56 | 23 |
| 7/2/2011 | 8/1/2011 | Alternate Living Expense | Mario's Italian Meat Market | Travel - Meals/Groceries | 50 | 20 |
| 7/2/2011 | 8/1/2011 | Alternate Living Expense | Famous Dave's | Travel - Meals/Groceries | 21 | 9 |
| 7/2/2011 | 8/1/2011 | Alternate Living Expense | Bratta's Piano Bar | Travel - Meals/Groceries | 56 | 23 |
| 7/5/2011 | 8/4/2011 | Alternate Living Expense | PA - Electric | Alt Home - Utilities and Other | 10 | 4 |
| 7/9/2011 | 8/8/2011 | Alternate Living Expense | Carrabba's Italian Grill | Travel - Meals/Groceries | 46 | 19 |
| 7/11/2011 | 8/10/2011 | Alternate Living Expense | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 512 |
| 7/11/2011 | 8/10/2011 | Alternate Living Expense | PA - Sewage | Alt Home - Utilities and Other | 50 | 20 |
| 7/12/2011 | 8/11/2011 | Alternate Living Expense | Costco | Travel - Gas | 50 | 20 |
| 7/12/2011 | 8/11/2011 | Alternate Living Expense | Guardian Home | Alt Home - Utilities and Other | 45 | 18 |
| 7/12/2011 | 8/11/2011 | Alternate Living Expense | PA - Water | Alt Home - Utilities and Other | 100 | 40 |
| 7/13/2011 | 8/12/2011 | Alternate Living Expense | Naturescape, Inc | Alt Home - Utilities and Other | 225 | 91 |
| 7/15/2011 | 8/14/2011 | Alternate Living Expense | PA - Gas | Alt Home - Utilities and Other | 40 | 16 |
| 7/16/2011 | 8/15/2011 | Alternate Living Expense | Mimi's Café | Travel - Meals/Groceries | 12 | 5 |
| 7/18/2011 | 8/17/2011 | Alternate Living Expense | Outback Steakhouse | Travel - Meals/Groceries | 41 | 17 |
| 7/18/2011 | 8/17/2011 | Alternate Living Expense | Two Meatballs | Travel - Meals/Groceries | 13 | 5 |
| 7/18/2011 | 8/17/2011 | Alternate Living Expense | City Mattress | Travel - Bedding | 1,458 | 586 |
| 7/20/2011 | 8/19/2011 | Alternate Living Expense | Villa Rental - John Miller | Travel - Lodging | 83 | 34 |
| 7/21/2011 | 8/20/2011 | Alternate Living Expense | Costco | Travel - Gas | 45 | 18 |
| 7/21/2011 | 8/20/2011 | Alternate Living Expense | Rodes Fresh and Fancy | Travel - Meals/Groceries | 30 | 12 |
| 7/21/2011 | 8/20/2011 | Alternate Living Expense | Rodes Fresh and Fancy | Travel - Meals/Groceries | 24 | 10 |
| 7/21/2011 | 8/20/2011 | Alternate Living Expense | Costco | Travel - Meals/Groceries | 60 | 24 |
| 7/24/2011 | 8/23/2011 | Alternate Living Expense | Publix | Travel - Meals/Groceries | 38 | 15 |
| 7/25/2011 | 8/24/2011 | Alternate Living Expense | Pincher's Crab Shack | Travel - Meals/Groceries | 15 | 6 |
| 7/26/2011 | 8/25/2011 | Alternate Living Expense | Shell | Travel - Gas | 44 | 17 |
| 7/26/2011 | 8/25/2011 | Alternate Living Expense | KangarooExpress | Travel - Gas | 42 | 17 |
| 7/26/2011 | 8/25/2011 | Alternate Living Expense | Costco | Travel - Gas | - | - |
| 7/26/2011 | 8/25/2011 | Alternate Living Expense | Fresh Market | Travel - Meals/Groceries | 110 | 44 |
| 7/26/2011 | 8/25/2011 | Alternate Living Expense | McDonald's | Travel - Meals/Groceries | 5 | 2 |
| 7/27/2011 | 8/26/2011 | Alternate Living Expense | Holiday Inn Express & Suites | Travel - Lodging | 121 | 49 |
| 7/28/2011 | 8/27/2011 | Alternate Living Expense | Guardian Home | Alt Home - Utilities and Other | 45 | 18 |
| 7/29/2011 | 8/28/2011 | Alternate Living Expense | PA - Gas | Alt Home - Utilities and Other | 30 | 12 |
| 8/4/2011 | 9/3/2011 | Alternate Living Expense | PA - Water | Alt Home - Utilities and Other | 143 | 57 |
| 8/8/2011 | 9/7/2011 | Alternate Living Expense | Naturescape, Inc | Alt Home - Utilities and Other | 180 | 72 |
| 8/10/2011 | 9/9/2011 | Alternate Living Expense | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 506 |
| 8/16/2011 | 9/15/2011 | Alternate Living Expense | Comcast | Alt Home - Utilities and Other | 258 | 103 |
| 8/16/2011 | 9/15/2011 | Alternate Living Expense | PA - Electric | Alt Home - Utilities and Other | 60 | 24 |
| 8/22/2011 | 9/21/2011 | Alternate Living Expense | Custom Turf | Alt Home - Utilities and Other | 99 | 39 |
| 8/24/2011 | 9/23/2011 | Alternate Living Expense | Cannonsburg General | Alt Home - Utilities and Other | 385 | 153 |
| 8/24/2011 | 9/23/2011 | Alternate Living Expense | Naturescape, Inc | Alt Home - Utilities and Other | 942 | 373 |
| 8/26/2011 | 9/25/2011 | Alternate Living Expense | Guardian Home | Alt Home - Utilities and Other | 45 | 18 |
| 8/31/2011 | 9/30/2011 | Alternate Living Expense | PA - Sewage | Alt Home - Utilities and Other | 34 | 13 |
| 9/8/2011 | 10/8/2011 | Alternate Living Expense | PA - Water | Alt Home - Utilities and Other | 68 | 27 |

Exhibit 7.3

Calculation of Prejudgment Interest Summary - Anthony & Candace Gody

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Vendor | Description | Amount | Total Interest Through 7/22/2019 |
|---|---|---|---|---|---|---|
| 9/12/2011 | 10/12/2011 | Alternate Living Expense | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 500 |
| 9/13/2011 | 10/13/2011 | Alternate Living Expense | PA - Electric | Alt Home - Utilities and Other | 71 | 28 |
| 9/15/2011 | 10/15/2011 | Alternate Living Expense | Naturescape, Inc | Alt Home - Utilities and Other | 135 | 53 |
| 9/21/2011 | 10/21/2011 | Alternate Living Expense | Guardian Home | Alt Home - Utilities and Other | 45 | 18 |
| 10/6/2011 | 11/5/2011 | Alternate Living Expense | PA - Sewage | Alt Home - Utilities and Other | 34 | 13 |
| 10/7/2011 | 11/6/2011 | Alternate Living Expense | PA - Water | Alt Home - Utilities and Other | 375 | 146 |
| 10/11/2011 | 11/10/2011 | Alternate Living Expense | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 495 |
| 10/17/2011 | 11/16/2011 | Alternate Living Expense | Guardian Home | Alt Home - Utilities and Other | 45 | 17 |
| 10/17/2011 | 11/16/2011 | Alternate Living Expense | PA - Electric | Alt Home - Utilities and Other | 80 | 31 |
| 10/17/2011 | 11/16/2011 | Alternate Living Expense | PA - Gas | Alt Home - Utilities and Other | 9 | 3 |
| 10/18/2011 | 11/17/2011 | Alternate Living Expense | Naturescape, Inc | Alt Home - Utilities and Other | 90 | 35 |
| 10/20/2011 | 11/19/2011 | Alternate Living Expense | Comcast | Alt Home - Utilities and Other | 320 | 124 |
| 10/24/2011 | 11/23/2011 | Alternate Living Expense | Custom Turf | Alt Home - Utilities and Other | 99 | 38 |
| 11/7/2011 | 12/7/2011 | Alternate Living Expense | PA - Sewage | Alt Home - Utilities and Other | 245 | 95 |
| 11/8/2011 | 12/8/2011 | Alternate Living Expense | PA - Water | Alt Home - Utilities and Other | 83 | 32 |
| 11/9/2011 | 12/9/2011 | Alternate Living Expense | Custom Turf | Alt Home - Utilities and Other | 90 | 35 |
| 11/9/2011 | 12/9/2011 | Alternate Living Expense | PA - Electric | Alt Home - Utilities and Other | 57 | 22 |
| 11/10/2011 | 12/10/2011 | Alternate Living Expense | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 490 |
| 11/14/2011 | 12/14/2011 | Alternate Living Expense | Guardian Home | Alt Home - Utilities and Other | 45 | 17 |
| 11/15/2011 | 12/15/2011 | Alternate Living Expense | Naturescape, Inc | Alt Home - Utilities and Other | 253 | 97 |
| 11/16/2011 | 12/16/2011 | Alternate Living Expense | PA - Gas | Alt Home - Utilities and Other | 52 | 20 |
| 12/2/2011 | 1/1/2012 | Alternate Living Expense | Comcast | Alt Home - Utilities and Other | 168 | 64 |
| 12/8/2011 | 1/7/2012 | Alternate Living Expense | PA - Sewage | Alt Home - Utilities and Other | 61 | 23 |
| 12/8/2011 | 1/7/2012 | Alternate Living Expense | PA - Water | Alt Home - Utilities and Other | 50 | 19 |
| 12/9/2011 | 1/8/2012 | Alternate Living Expense | Naturescape, Inc | Alt Home - Utilities and Other | 45 | 17 |
| 12/12/2011 | 1/11/2012 | Alternate Living Expense | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 485 |
| 12/14/2011 | 1/13/2012 | Alternate Living Expense | Guardian Home | Alt Home - Utilities and Other | 45 | 17 |
| 12/16/2011 | 1/15/2012 | Alternate Living Expense | Custom Turf | Alt Home - Utilities and Other | 50 | 19 |
| 12/19/2011 | 1/18/2012 | Alternate Living Expense | PA - Gas | Alt Home - Utilities and Other | 62 | 24 |
| 12/27/2011 | 1/26/2012 | Alternate Living Expense | Comcast | Alt Home - Utilities and Other | 167 | 63 |
| 12/28/2011 | 1/27/2012 | Alternate Living Expense | PA - Electric | Alt Home - Utilities and Other | 65 | 25 |
| 1/6/2012 | 2/5/2012 | Alternate Living Expense | PA - Sewage | Alt Home - Utilities and Other | 39 | 15 |
| 1/9/2012 | 2/8/2012 | Alternate Living Expense | PA - Water | Alt Home - Utilities and Other | 61 | 23 |
| 1/10/2012 | 2/9/2012 | Alternate Living Expense | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 480 |
| 1/10/2012 | 2/9/2012 | Alternate Living Expense | PA - Electric | Alt Home - Utilities and Other | 116 | 44 |
| 1/16/2012 | 2/15/2012 | Alternate Living Expense | PA - Gas | Alt Home - Utilities and Other | 101 | 38 |
| 1/17/2012 | 2/16/2012 | Alternate Living Expense | Guardian Home | Alt Home - Utilities and Other | 45 | 17 |
| 1/17/2012 | 2/16/2012 | Alternate Living Expense | PA - Water | Alt Home - Utilities and Other | 24 | 9 |
| 1/25/2012 | 2/24/2012 | Alternate Living Expense | Comcast | Alt Home - Utilities and Other | 92 | 35 |
| 2/6/2012 | 3/7/2012 | Alternate Living Expense | PA - Water | Alt Home - Utilities and Other | 57 | 21 |
| 2/7/2012 | 3/8/2012 | Alternate Living Expense | PA - Sewage | Alt Home - Utilities and Other | 60 | 23 |
| 2/10/2012 | 3/11/2012 | Alternate Living Expense | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 475 |
| 2/14/2012 | 3/15/2012 | Alternate Living Expense | Guardian Home | Alt Home - Utilities and Other | 45 | 17 |
| 2/14/2012 | 3/15/2012 | Alternate Living Expense | PA - Gas | Alt Home - Utilities and Other | 123 | 46 |
| 2/15/2012 | 3/16/2012 | Alternate Living Expense | PA - Electric | Alt Home - Utilities and Other | 20 | 7 |
| 2/27/2012 | 3/28/2012 | Alternate Living Expense | Comcast | Alt Home - Utilities and Other | 147 | 55 |
| 3/2/2012 | 4/1/2012 | Alternate Living Expense | PA - Electric | Alt Home - Utilities and Other | 18 | 7 |
| 3/7/2012 | 4/6/2012 | Alternate Living Expense | PA - Sewage | Alt Home - Utilities and Other | 51 | 19 |
| 3/8/2012 | 4/7/2012 | Alternate Living Expense | PA - Water | Alt Home - Utilities and Other | 57 | 21 |
| 3/12/2012 | 4/11/2012 | Alternate Living Expense | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 470 |
| 3/14/2012 | 4/13/2012 | Alternate Living Expense | Guardian Home | Alt Home - Utilities and Other | 45 | 17 |
| 3/16/2012 | 4/15/2012 | Alternate Living Expense | PA - Gas | Alt Home - Utilities and Other | 111 | 41 |
| 3/22/2012 | 4/21/2012 | Alternate Living Expense | PA - Electric | Alt Home - Utilities and Other | 33 | 12 |
| 4/6/2012 | 5/6/2012 | Alternate Living Expense | PA - Sewage | Alt Home - Utilities and Other | 51 | 19 |
| 4/9/2012 | 5/9/2012 | Alternate Living Expense | PA - Water | Alt Home - Utilities and Other | 24 | 9 |
| 4/10/2012 | 5/10/2012 | Alternate Living Expense | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 465 |
| 4/13/2012 | 5/13/2012 | Alternate Living Expense | PA - Gas | Alt Home - Utilities and Other | 41 | 15 |
| 4/16/2012 | 5/16/2012 | Alternate Living Expense | Guardian Home | Alt Home - Utilities and Other | 45 | 16 |
| 4/20/2012 | 5/20/2012 | Alternate Living Expense | Custom Turf | Alt Home - Utilities and Other | 50 | 18 |
| 4/23/2012 | 5/23/2012 | Alternate Living Expense | Naturescape, Inc | Alt Home - Utilities and Other | 144 | 53 |
| 5/4/2012 | 6/3/2012 | Alternate Living Expense | PA - Electric | Alt Home - Utilities and Other | 25 | 9 |
| 5/7/2012 | 6/6/2012 | Alternate Living Expense | PA - Sewage | Alt Home - Utilities and Other | 42 | 15 |
| 5/9/2012 | 6/8/2012 | Alternate Living Expense | Custom Turf | Alt Home - Utilities and Other | 99 | 36 |
| 5/9/2012 | 6/8/2012 | Alternate Living Expense | PA - Water | Alt Home - Utilities and Other | 28 | 10 |
| 5/10/2012 | 6/9/2012 | Alternate Living Expense | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 460 |
| 5/14/2012 | 6/13/2012 | Alternate Living Expense | Guardian Home | Alt Home - Utilities and Other | 45 | 16 |
| 5/15/2012 | 6/14/2012 | Alternate Living Expense | PA - Trash | Alt Home - Utilities and Other | 123 | 45 |
| 5/16/2012 | 6/15/2012 | Alternate Living Expense | PA - Gas | Alt Home - Utilities and Other | 59 | 21 |
| 5/18/2012 | 6/17/2012 | Alternate Living Expense | ERNS Cutting Edg | Alt Home - Utilities and Other | 225 | 81 |
| 5/22/2012 | 6/21/2012 | Alternate Living Expense | Custom Turf | Alt Home - Utilities and Other | 90 | 32 |
| 6/6/2012 | 7/6/2012 | Alternate Living Expense | PA - Sewage | Alt Home - Utilities and Other | 42 | 15 |
| 6/7/2012 | 7/7/2012 | Alternate Living Expense | PA - Water | Alt Home - Utilities and Other | 48 | 17 |

Exhibit 7.3
Calculation of Prejudgment Interest Summary - Anthony & Candace Gody

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Vendor | Description | Amount | Total Interest Through 7/22/2019 |
|---|---|---|---|---|---|---|
| 6/11/2012 | 7/11/2012 | Alternate Living Expense | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 455 |
| 6/13/2012 | 7/13/2012 | Alternate Living Expense | Comcast | Alt Home - Utilities and Other | 33 | 12 |
| 6/14/2012 | 7/14/2012 | Alternate Living Expense | Guardian Home | Alt Home - Utilities and Other | 45 | 16 |
| 6/14/2012 | 7/14/2012 | Alternate Living Expense | PA - Electric | Alt Home - Utilities and Other | 17 | 6 |
| 6/22/2012 | 7/22/2012 | Alternate Living Expense | Custom Turf | Alt Home - Utilities and Other | 159 | 57 |
| 6/22/2012 | 7/22/2012 | Alternate Living Expense | ERNS Cutting Edg | Alt Home - Utilities and Other | 180 | 64 |
| 6/25/2012 | 7/25/2012 | Alternate Living Expense | PA - Electric | Alt Home - Utilities and Other | 23 | 8 |
| 7/6/2012 | 8/5/2012 | Alternate Living Expense | PA - Sewage | Alt Home - Utilities and Other | 42 | 15 |
| 7/10/2012 | 8/9/2012 | Alternate Living Expense | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 450 |
| 7/10/2012 | 8/9/2012 | Alternate Living Expense | Comcast | Alt Home - Utilities and Other | 274 | 97 |
| 7/10/2012 | 8/9/2012 | Alternate Living Expense | ERNS Cutting Edg | Alt Home - Utilities and Other | 135 | 48 |
| 7/12/2012 | 8/11/2012 | Alternate Living Expense | PA - Water | Alt Home - Utilities and Other | 284 | 100 |
| 7/16/2012 | 8/15/2012 | Alternate Living Expense | Guardian Home | Alt Home - Utilities and Other | 45 | 16 |
| 7/25/2012 | 8/24/2012 | Alternate Living Expense | Custom Turf | Alt Home - Utilities and Other | 90 | 32 |
| 8/6/2012 | 9/5/2012 | Alternate Living Expense | PA - Sewage | Alt Home - Utilities and Other | 256 | 90 |
| 8/10/2012 | 9/9/2012 | Alternate Living Expense | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 445 |
| 8/10/2012 | 9/9/2012 | Alternate Living Expense | ERNS Cutting Edg | Alt Home - Utilities and Other | 180 | 63 |
| 8/14/2012 | 9/13/2012 | Alternate Living Expense | Guardian Home | Alt Home - Utilities and Other | 45 | 16 |
| 8/17/2012 | 9/16/2012 | Alternate Living Expense | Custom Turf | Alt Home - Utilities and Other | 99 | 35 |
| 9/10/2012 | 10/10/2012 | Alternate Living Expense | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 440 |
| 9/10/2012 | 10/10/2012 | Alternate Living Expense | ERNS Cutting Edg | Alt Home - Utilities and Other | 180 | 62 |
| 9/14/2012 | 10/14/2012 | Alternate Living Expense | Guardian Home | Alt Home - Utilities and Other | 45 | 16 |
| | | **Alternate Living Expense Total** | | | $ 60,522 | $ 24,589 |
| 7/27/2007 | 8/26/2007 | Personal Property Damage Expense | Wiegold & Sons, Inc. | A/C Repair | $ 209 | $ 152 |
| 8/4/2008 | 9/3/2008 | Personal Property Damage Expense | Best Buy | Wine Cooler | 469 | 289 |
| 8/5/2008 | 9/4/2008 | Personal Property Damage Expense | Wiegold & Sons, Inc. | A/C Repair | 169 | 104 |
| 12/18/2008 | 1/17/2009 | Personal Property Damage Expense | Wiegold & Sons, Inc. | A/C Repair | 107 | 62 |
| 5/26/2009 | 6/25/2009 | Personal Property Damage Expense | Wiegold & Sons, Inc. | A/C Repair | 268 | 145 |
| 8/15/2009 | 9/14/2009 | Personal Property Damage Expense | Staples | Copies of Inspection Reports | 33 | 17 |
| 10/3/2009 | 11/2/2009 | Personal Property Damage Expense | Lowe's | Idylis Air Purifier | 246 | 126 |
| 10/26/2009 | 11/25/2009 | Personal Property Damage Expense | Home Depot | Retractable Screen Doors | 129 | 66 |
| 3/17/2010 | 4/16/2010 | Personal Property Damage Expense | Certified Heating & Cooling | HVAC Service Order | 375 | 181 |
| 6/5/2010 | 7/5/2010 | Personal Property Damage Expense | Walgreen's | Personal Grooming Items | 21 | 10 |
| 7/14/2010 | 8/13/2010 | Personal Property Damage Expense | Walgreen's | Hair Dryer Replacement | 15 | 7 |
| 7/16/2010 | 8/15/2010 | Personal Property Damage Expense | Levin Furniture | Alt Home - Furniture | 626 | 289 |
| 7/16/2010 | 8/15/2010 | Personal Property Damage Expense | Levin Furniture | Alt Home - Furniture | 5,708 | 2,641 |
| 7/17/2010 | 8/16/2010 | Personal Property Damage Expense | Old Allegheny Shoppe | Alt Home - Furniture | 3,818 | 1,765 |
| 8/3/2010 | 9/2/2010 | Personal Property Damage Expense | Levin Furniture | Alt Home - Furniture | 180 | 83 |
| 8/12/2010 | 9/11/2010 | Personal Property Damage Expense | Carolina Accents | Alt Home - Furniture | 507 | 232 |
| 3/8/2011 | 4/7/2011 | Personal Property Damage Expense | Certified Heating & Cooling | HVAC Service Order | 92 | 39 |
| 3/16/2011 | 4/15/2011 | Personal Property Damage Expense | Certified Heating & Cooling | HVAC Service Order | 375 | 158 |
| 5/12/2012 | 6/11/2012 | Personal Property Damage Expense | Macy's | Pillow Cases? | 45 | 16 |
| 5/24/2012 | 6/23/2012 | Personal Property Damage Expense | Baer's Furniture | Remediation - Other | 2,872 | 1,035 |
| 5/29/2012 | 6/28/2012 | Personal Property Damage Expense | City Mattress | Mattress Purchase | 840 | 302 |
| 6/20/2012 | 7/20/2012 | Personal Property Damage Expense | City Mattress | Bedframe Purchase | 243 | 87 |
| 9/30/2012 | 10/30/2012 | Personal Property Damage Expense | Baer's Furniture | Remediation - Other | 507 | 174 |
| | | **Personal Property Damage Expense Total** | | | $ 17,852 | $ 7,980 |

Exhibit 7.3A
Calculation of Prejudgment Interest Detail - Anthony & Candace Gody

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Amount | 12/31/2007 | 12/31/2008 | 12/31/2009 | 12/31/2010 | 9/30/2011 | 12/31/2011 | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 3/31/2016 | 6/30/2016 | 9/30/2016 | 12/31/2016 | 3/31/2017 | 6/30/2017 | 9/30/2017 | 12/31/2017 | 3/31/2018 | 6/30/2018 | 9/30/2018 | 12/31/2018 | 7/22/2019 | Total Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/28/2011 | 7/28/2011 | Remediation | $ 8,000 | $ - | $ - | $ - | $ - | $ 84 | $ 96 | $ 380 | $ 380 | $ 380 | $ 380 | $ 94 | $ 95 | $ 97 | $ 99 | $ 98 | $ 101 | $ 104 | $ 108 | $ 109 | $ 114 | $ 120 | $ 123 | $ 282 | $ 3,244 |
| 7/11/2011 | 8/10/2011 | Remediation | 1,300 | - | - | - | - | 11 | 16 | 62 | 62 | 62 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 524 |
| 8/5/2011 | 9/4/2011 | Remediation | 11,675 | - | - | - | - | 50 | 140 | 555 | 555 | 555 | 555 | 138 | 139 | 142 | 144 | 143 | 147 | 152 | 157 | 159 | 166 | 176 | 179 | 411 | 4,662 |
| 9/13/2011 | 10/13/2011 | Remediation | 650 | - | - | - | - | - | 7 | 31 | 31 | 31 | 31 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 23 | 256 |
| 1/13/2012 | 2/12/2012 | Remediation | 7,000 | - | - | - | - | - | - | 293 | 333 | 333 | 333 | 83 | 83 | 85 | 86 | 86 | 88 | 91 | 94 | 95 | 100 | 105 | 107 | 246 | 2,642 |
| 2/8/2012 | 3/9/2012 | Remediation | 6,981 | - | - | - | - | - | - | 269 | 332 | 332 | 332 | 82 | 83 | 85 | 86 | 86 | 88 | 91 | 94 | 95 | 100 | 105 | 107 | 246 | 2,612 |
| 2/23/2012 | 3/24/2012 | Remediation | 150 | - | - | - | - | - | - | 5 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 56 |
| 3/2/2012 | 4/1/2012 | Remediation | 19,826 | - | - | - | - | - | - | 705 | 942 | 942 | 942 | 234 | 236 | 241 | 245 | 243 | 250 | 258 | 267 | 270 | 283 | 298 | 304 | 698 | 7,358 |
| 3/6/2012 | 4/5/2012 | Remediation | 1,635 | - | - | - | - | - | - | 57 | 78 | 78 | 78 | 19 | 19 | 20 | 20 | 20 | 21 | 21 | 22 | 22 | 23 | 25 | 25 | 58 | 606 |
| 3/8/2012 | 4/7/2012 | Remediation | 10,000 | - | - | - | - | - | - | 348 | 475 | 475 | 475 | 118 | 119 | 122 | 123 | 123 | 126 | 130 | 135 | 136 | 143 | 150 | 154 | 352 | 3,703 |
| 3/8/2012 | 4/7/2012 | Remediation | 250 | - | - | - | - | - | - | 9 | 12 | 12 | 12 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 9 | 93 |
| 3/8/2012 | 4/7/2012 | Remediation | 10,000 | - | - | - | - | - | - | 348 | 475 | 475 | 475 | 118 | 119 | 122 | 123 | 123 | 126 | 130 | 135 | 136 | 143 | 150 | 154 | 352 | 3,703 |
| 3/20/2012 | 4/19/2012 | Remediation | 3,829 | - | - | - | - | - | - | 127 | 182 | 182 | 182 | 45 | 46 | 47 | 47 | 47 | 48 | 50 | 52 | 52 | 55 | 58 | 59 | 135 | 1,412 |
| 3/23/2012 | 4/22/2012 | Remediation | 8,615 | - | - | - | - | - | - | 283 | 409 | 409 | 409 | 102 | 102 | 105 | 106 | 106 | 108 | 112 | 116 | 117 | 123 | 130 | 132 | 303 | 3,174 |
| 3/29/2012 | 4/28/2012 | Remediation | 1,728 | - | - | - | - | - | - | 55 | 82 | 82 | 82 | 20 | 21 | 21 | 21 | 21 | 22 | 23 | 23 | 24 | 25 | 26 | 27 | 61 | 635 |
| 3/30/2012 | 4/29/2012 | Remediation | 10,000 | - | - | - | - | - | - | 319 | 475 | 475 | 475 | 118 | 119 | 122 | 123 | 123 | 126 | 130 | 135 | 136 | 143 | 150 | 154 | 352 | 3,675 |
| 4/1/2012 | 5/1/2012 | Remediation | 370 | - | - | - | - | - | - | 12 | 18 | 18 | 18 | 4 | 4 | 4 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 6 | 6 | 13 | 136 |
| 4/2/2012 | 5/2/2012 | Remediation | 387 | - | - | - | - | - | - | 12 | 18 | 18 | 18 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 6 | 6 | 6 | 14 | 142 |
| 4/2/2012 | 5/2/2012 | Remediation | 152 | - | - | - | - | - | - | 5 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 56 |
| 4/2/2012 | 5/2/2012 | Remediation | 50 | - | - | - | - | - | - | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 18 |
| 4/5/2012 | 5/5/2012 | Remediation | 1,436 | - | - | - | - | - | - | 45 | 68 | 68 | 68 | 17 | 17 | 17 | 18 | 18 | 18 | 19 | 19 | 20 | 20 | 22 | 22 | 51 | 526 |
| 4/6/2012 | 5/6/2012 | Remediation | 24 | - | - | - | - | - | - | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 9 |
| 4/6/2012 | 5/6/2012 | Remediation | 276 | - | - | - | - | - | - | 9 | 13 | 13 | 13 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 4 | 4 | 4 | 10 | 101 |
| 4/7/2012 | 5/7/2012 | Remediation | 3,300 | - | - | - | - | - | - | 102 | 157 | 157 | 157 | 39 | 39 | 40 | 41 | 40 | 42 | 43 | 45 | 45 | 47 | 50 | 51 | 116 | 1,209 |
| 4/9/2012 | 5/9/2012 | Remediation | 57 | - | - | - | - | - | - | 2 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 21 |
| 4/9/2012 | 5/9/2012 | Remediation | 170 | - | - | - | - | - | - | 5 | 8 | 8 | 8 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 6 | 62 |
| 4/9/2012 | 5/9/2012 | Remediation | 100 | - | - | - | - | - | - | 3 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 4 | 37 |
| 4/16/2012 | 5/16/2012 | Remediation | 522 | - | - | - | - | - | - | 16 | 25 | 25 | 25 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 7 | 7 | 8 | 8 | 18 | 191 |
| 4/18/2012 | 5/18/2012 | Remediation | 216 | - | - | - | - | - | - | 6 | 10 | 10 | 10 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 8 | 79 |
| 4/18/2012 | 5/18/2012 | Remediation | 10,000 | - | - | - | - | - | - | 295 | 475 | 475 | 475 | 118 | 119 | 122 | 123 | 123 | 126 | 130 | 135 | 136 | 143 | 150 | 154 | 352 | 3,650 |
| 4/26/2012 | 5/26/2012 | Remediation | 40 | - | - | - | - | - | - | 1 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 15 |
| 4/28/2012 | 5/28/2012 | Remediation | 322 | - | - | - | - | - | - | 9 | 15 | 15 | 15 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 5 | 11 | 117 |
| 5/1/2012 | 5/31/2012 | Remediation | 6,301 | - | - | - | - | - | - | 175 | 299 | 299 | 299 | 74 | 75 | 77 | 78 | 77 | 79 | 82 | 85 | 86 | 90 | 95 | 97 | 222 | 2,289 |
| 5/1/2012 | 5/31/2012 | Remediation | 10,000 | - | - | - | - | - | - | 278 | 475 | 475 | 475 | 118 | 119 | 122 | 123 | 123 | 126 | 130 | 135 | 136 | 143 | 150 | 154 | 352 | 3,633 |
| 5/1/2012 | 5/31/2012 | Remediation | 237 | - | - | - | - | - | - | 7 | 11 | 11 | 11 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 8 | 86 |
| 5/5/2012 | 6/4/2012 | Remediation | 7,450 | - | - | - | - | - | - | 203 | 354 | 354 | 354 | 88 | 89 | 91 | 92 | 91 | 94 | 97 | 100 | 102 | 106 | 112 | 114 | 262 | 2,703 |
| 5/8/2012 | 6/7/2012 | Remediation | 111 | - | - | - | - | - | - | 3 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 4 | 40 |
| 5/18/2012 | 6/17/2012 | Remediation | 32 | - | - | - | - | - | - | 1 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 12 |
| 5/19/2012 | 6/18/2012 | Remediation | 58 | - | - | - | - | - | - | 1 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 21 |
| 5/24/2012 | 6/23/2012 | Remediation | 87 | - | - | - | - | - | - | 2 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 31 |
| 5/25/2012 | 6/24/2012 | Remediation | 80 | - | - | - | - | - | - | 2 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 29 |
| 5/25/2012 | 6/24/2012 | Remediation | 57 | - | - | - | - | - | - | 1 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 21 |
| 5/29/2012 | 6/28/2012 | Remediation | 7,288 | - | - | - | - | - | - | 176 | 346 | 346 | 346 | 86 | 87 | 89 | 90 | 89 | 92 | 95 | 98 | 99 | 104 | 110 | 112 | 257 | 2,621 |
| 6/19/2012 | 7/19/2012 | Remediation | 250 | - | - | - | - | - | - | 5 | 12 | 12 | 12 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 9 | 89 |
| 6/20/2012 | 7/20/2012 | Remediation | 280 | - | - | - | - | - | - | 6 | 13 | 13 | 13 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 10 | 100 |
| 7/10/2012 | 8/9/2012 | Remediation | 355 | - | - | - | - | - | - | 7 | 17 | 17 | 17 | 4 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 5 | 5 | 5 | 5 | 12 | 126 |
| 7/11/2012 | 8/10/2012 | Remediation | 165 | - | - | - | - | - | - | 3 | 8 | 8 | 8 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 3 | 6 | 58 |
| 7/16/2012 | 8/15/2012 | Remediation | 50 | - | - | - | - | - | - | 1 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 18 |
| 9/13/2012 | 10/13/2012 | Remediation | 1,125 | - | - | - | - | - | - | 12 | 53 | 53 | 53 | 13 | 13 | 14 | 14 | 14 | 14 | 15 | 15 | 15 | 16 | 17 | 17 | 40 | 389 |
| 10/3/2012 | 11/2/2012 | Remediation | 275 | - | - | - | - | - | - | 2 | 13 | 13 | 13 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 4 | 4 | 4 | 10 | 94 |
| | | Remediation Total | $ 153,262 | $ - | $ - | $ - | $ - | $ 145 | $ 258 | $ 5,254 | $ 7,280 | $ 7,280 | $ 7,280 | $ 1,810 | $ 1,821 | $ 1,865 | $ 1,892 | $ 1,878 | $ 1,930 | $ 1,997 | $ 2,067 | $ 2,090 | $ 2,186 | $ 2,306 | $ 2,353 | $ 5,396 | $ 57,086 |
| 6/22/2010 | 7/22/2010 | Alternate Living Expense | $ 25 | $ - | $ - | $ - | $ 1 | $ 1 | $ 0 | $ 1 | $ 1 | $ 1 | $ 1 | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 | $ 1 | $ 12 |
| 6/22/2010 | 7/22/2010 | Alternate Living Expense | 53 | - | - | - | 1 | 2 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 25 |
| 6/22/2010 | 7/22/2010 | Alternate Living Expense | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 6/23/2010 | 7/23/2010 | Alternate Living Expense | 21 | - | - | - | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 10 |
| 6/24/2010 | 7/24/2010 | Alternate Living Expense | 57 | - | - | - | 2 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 27 |
| 6/25/2010 | 7/25/2010 | Alternate Living Expense | 13 | - | - | - | 0 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 6 |
| 6/26/2010 | 7/26/2010 | Alternate Living Expense | 37 | - | - | - | 1 | 2 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 17 |
| 6/27/2010 | 7/27/2010 | Alternate Living Expense | 185 | - | - | - | 5 | 8 | 2 | 9 | 9 | 9 | 9 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 6 | 86 |
| 6/28/2010 | 7/28/2010 | Alternate Living Expense | 16 | - | - | - | 0 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 7 |
| 6/28/2010 | 7/28/2010 | Alternate Living Expense | 54 | - | - | - | 1 | 2 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 25 |
| 6/29/2010 | 7/29/2010 | Alternate Living Expense | 9 | - | - | - | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 4 |
| 7/1/2010 | 7/31/2010 | Alternate Living Expense | 214 | - | - | - | 5 | 10 | 3 | 10 | 10 | 10 | 10 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 8 | 99 |
| 7/6/2010 | 8/5/2010 | Alternate Living Expense | 127 | - | - | - | 3 | 6 | 2 | 6 | 6 | 6 | 6 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 4 | 59 |
| 7/8/2010 | 8/7/2010 | Alternate Living Expense | 22 | - | - | - | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 10 |
| 7/8/2010 | 8/7/2010 | Alternate Living Expense | 27 | - | - | - | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 13 |
| 7/10/2010 | 8/9/2010 | Alternate Living Expense | 31 | - | - | - | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 15 |
| 7/10/2010 | 8/9/2010 | Alternate Living Expense | 35 | - | - | - | 1 | 2 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 1 | 16 |
| 7/10/2010 | 8/9/2010 | Alternate Living Expense | 72 | - | - | - | 2 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 33 |
| 7/14/2010 | 8/13/2010 | Alternate Living Expense | 11 | - | - | - | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 5 |
| 7/14/2010 | 8/13/2010 | Alternate Living Expense | 45 | - | - | - | 1 | 2 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 21 |
| 7/14/2010 | 8/13/2010 | Alternate Living Expense | 1,931 | - | - | - | 44 | 87 | 23 | 92 | 92 | 92 | 92 | 23 | 23 | 23 | 24 | 24 | 24 | 25 | 26 | 26 | 28 | 29 | 30 | 68 | 894 |
| 7/14/2010 | 8/13/2010 | Alternate Living Expense | 29 | - | - | - | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 13 |
| 7/15/2010 | 8/14/2010 | Alternate Living Expense | 222 | - | - | - | 5 | 10 | 3 | 11 | 11 | 11 | 11 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 8 | 103 |
| 7/15/2010 | 8/14/2010 | Alternate Living Expense | 325 | - | - | - | 7 | 15 | 4 | 15 | 15 | 15 | 15 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 5 | 11 | 151 |
| 7/16/2010 | 8/15/2010 | Alternate Living Expense | 642 | - | - | - | 15 | 29 | 8 | 30 | 30 | 30 | 30 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 23 | 297 |
| 7/16/2010 | 8/15/2010 | Alternate Living Expense | 368 | - | - | - | 8 | 17 | 4 | 17 | 17 | 17 | 17 | 4 | 4 | 4 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 6 | 6 | 13 | 170 |
| 7/16/2010 | 8/15/2010 | Alternate Living Expense | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 7/16/2010 | 8/15/2010 | Alternate Living Expense | 146 | - | - | - | 3 | 7 | 2 | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 68 |
| 7/19/2010 | 8/18/2010 | Alternate Living Expense | 181 | - | - | - | 4 | 8 | 2 | 9 | 9 | 9 | 9 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 6 | 84 |
| 7/21/2010 | 8/20/2010 | Alternate Living Expense | 496 | - | - | - | 11 | 22 | 6 | 24 | 24 | 24 | 24 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 7 | 8 | 17 | 229 |
| 7/22/2010 | 8/21/2010 | Alternate Living Expense | 1 | - | - | - | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 |
| 7/22/2010 | 8/21/2010 | Alternate Living Expense | 27 | - | - | - | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 12 |
| 7/23/2010 | 8/22/2010 | Alternate Living Expense | 526 | - | - | - | 11 | 24 | 6 | 25 | 25 | 25 | 25 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 7 | 8 | 8 | 8 | 19 | 243 |
| 7/23/2010 | 8/22/2010 | Alternate Living Expense | 26 | - | - | - | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 12 |
| 7/26/2010 | 8/25/2010 | Alternate Living Expense | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 7/26/2010 | 8/25/2010 | Alternate Living Expense | 32 | - | - | - | 1 | 1 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 15 |
| 7/26/2010 | 8/25/2010 | Alternate Living Expense | 144 | - | - | - | 3 | 6 | 2 | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 67 |
| 7/29/2010 | 8/28/2010 | Alternate Living Expense | 203 | - | - | - | 4 | 9 | 2 | 10 | 10 | 10 | 10 | 2 | 2 | 2 | 3 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 94 |
| 7/31/2010 | 8/30/2010 | Alternate Living Expense | 152 | - | - | - | 3 | 7 | 2 | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 70 |
| 8/3/2010 | 9/2/2010 | Alternate Living Expense | 135 | - | - | - | 3 | 6 | 2 | 6 | 6 | 6 | 6 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 62 |
| 8/10/2010 | 9/9/2010 | Alternate Living Expense | 762 | - | - | - | 14 | 34 | 9 | 36 | 36 | 36 | 36 | 9 | 9 | 9 | 9 | 9 | 10 | 10 | 10 | 10 | 11 | 11 | 12 | 27 | 349 |
| 8/16/2010 | 9/15/2010 | Alternate Living Expense | 591 | - | - | - | 10 | 27 | 7 | 28 | 28 | 28 | 28 | 7 | 7 | 7 | 7 | 7 | 7 | 8 | 8 | 8 | 8 | 9 | 9 | 21 | 270 |
| 8/19/2010 | 9/18/2010 | Alternate Living Expense | 108 | - | - | - | 2 | 5 | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 4 | 49 |
| 8/21/2010 | 9/20/2010 | Alternate Living Expense | 61 | - | - | - | 1 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 28 |
| 8/21/2010 | 9/20/2010 | Alternate Living Expense | 93 | - | - | - | 2 | 4 | 1 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 43 |
| 8/24/2010 | 9/23/2010 | Alternate Living Expense | 19 | - | - | - | 0 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 9 |
| 8/25/2010 | 9/24/2010 | Alternate Living Expense | 300 | - | - | - | 5 | 13 | 4 | 14 | 14 | 14 | 14 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 11 | 137 |
| 8/29/2010 | 9/28/2010 | Alternate Living Expense | 57 | - | - | - | 1 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 26 |
| 8/31/2010 | 9/30/2010 | Alternate Living Expense | 39 | - | - | - | 1 | 2 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 18 |
| 9/3/2010 | 10/3/2010 | Alternate Living Expense | 19 | - | - | - | 0 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 9 |
| 9/3/2010 | 10/3/2010 | Alternate Living Expense | 49 | - | - | - | 1 | 2 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 22 |

Exhibit 7.3A
Calculation of Prejudgment Interest Detail - Anthony & Candace Gody

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Amount | 12/31/2007 | 12/31/2008 | 12/31/2009 | 12/31/2010 | 9/30/2011 | 12/31/2011 | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 3/31/2016 | 6/30/2016 | 9/30/2016 | 12/31/2016 | 3/31/2017 | 6/30/2017 | 9/30/2017 | 12/31/2017 | 3/31/2018 | 6/30/2018 | 9/30/2018 | 12/31/2018 | 7/22/2019 | Total Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/4/2010 | 10/4/2010 | Alternate Living Expense | 12 | - | - | - | 0 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 5 |
| 9/10/2010 | 10/10/2010 | Alternate Living Expense | 1,141 | - | - | - | 15 | 51 | 14 | 54 | 54 | 54 | 54 | 13 | 14 | 14 | 14 | 14 | 14 | 15 | 15 | 16 | 16 | 17 | 18 | 40 | 517 |
| 9/26/2010 | 10/26/2010 | Alternate Living Expense | 1,500 | - | - | - | 16 | 67 | 18 | 71 | 71 | 71 | 71 | 18 | 18 | 18 | 19 | 18 | 19 | 20 | 20 | 20 | 21 | 23 | 23 | 53 | 676 |
| 10/12/2010 | 11/11/2010 | Alternate Living Expense | 1,270 | - | - | - | 10 | 57 | 15 | 60 | 60 | 60 | 60 | 15 | 15 | 15 | 16 | 16 | 16 | 17 | 17 | 17 | 18 | 19 | 19 | 45 | 569 |
| 10/20/2010 | 11/19/2010 | Alternate Living Expense | 29 | - | - | - | 0 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 13 |
| 11/10/2010 | 12/10/2010 | Alternate Living Expense | 1,270 | - | - | - | 4 | 57 | 15 | 60 | 60 | 60 | 60 | 15 | 15 | 15 | 16 | 16 | 16 | 17 | 17 | 17 | 18 | 19 | 19 | 45 | 563 |
| 12/10/2010 | 1/9/2011 | Alternate Living Expense | 1,270 | - | - | - | - | 55 | 15 | 60 | 60 | 60 | 60 | 15 | 15 | 15 | 16 | 16 | 16 | 17 | 17 | 17 | 18 | 19 | 19 | 45 | 557 |
| 12/14/2010 | 1/13/2011 | Alternate Living Expense | 149 | - | - | - | - | 6 | 2 | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 65 |
| 12/14/2010 | 1/13/2011 | Alternate Living Expense | 64 | - | - | - | - | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 28 |
| 12/16/2010 | 1/15/2011 | Alternate Living Expense | 45 | - | - | - | - | 2 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 20 |
| 12/20/2010 | 1/19/2011 | Alternate Living Expense | 41 | - | - | - | - | 2 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 1 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 18 |
| 12/27/2010 | 1/26/2011 | Alternate Living Expense | 61 | - | - | - | - | 2 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 27 |
| 12/29/2010 | 1/28/2011 | Alternate Living Expense | 109 | - | - | - | - | 4 | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 4 | 47 |
| 1/7/2011 | 2/6/2011 | Alternate Living Expense | 42 | - | - | - | - | 2 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 18 |
| 1/10/2011 | 2/9/2011 | Alternate Living Expense | 1,270 | - | - | - | - | 49 | 15 | 60 | 60 | 60 | 60 | 15 | 15 | 15 | 16 | 16 | 16 | 17 | 17 | 17 | 18 | 19 | 19 | 45 | 550 |
| 1/12/2011 | 2/11/2011 | Alternate Living Expense | 39 | - | - | - | - | 1 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 17 |
| 1/14/2011 | 2/13/2011 | Alternate Living Expense | 50 | - | - | - | - | 2 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 22 |
| 1/18/2011 | 2/17/2011 | Alternate Living Expense | 45 | - | - | - | - | 2 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 19 |
| 1/27/2011 | 2/26/2011 | Alternate Living Expense | 113 | - | - | - | - | 4 | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 4 | 48 |
| 1/31/2011 | 3/2/2011 | Alternate Living Expense | 133 | - | - | - | - | 5 | 2 | 6 | 6 | 6 | 6 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 57 |
| 2/7/2011 | 3/9/2011 | Alternate Living Expense | 41 | - | - | - | - | 1 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 18 |
| 2/10/2011 | 3/12/2011 | Alternate Living Expense | 1,270 | - | - | - | - | 42 | 15 | 60 | 60 | 60 | 60 | 15 | 15 | 15 | 16 | 16 | 16 | 17 | 17 | 17 | 18 | 19 | 19 | 45 | 544 |
| 2/10/2011 | 3/12/2011 | Alternate Living Expense | 34 | - | - | - | - | 1 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 14 |
| 2/16/2011 | 3/18/2011 | Alternate Living Expense | 45 | - | - | - | - | 1 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 19 |
| 2/18/2011 | 3/20/2011 | Alternate Living Expense | 56 | - | - | - | - | 2 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 24 |
| 2/22/2011 | 3/24/2011 | Alternate Living Expense | 30 | - | - | - | - | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 13 |
| 2/28/2011 | 3/30/2011 | Alternate Living Expense | 119 | - | - | - | - | 4 | 1 | 6 | 6 | 6 | 6 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 2 | 4 | 51 |
| 3/1/2011 | 3/31/2011 | Alternate Living Expense | 113 | - | - | - | - | 3 | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 4 | 48 |
| 3/8/2011 | 4/7/2011 | Alternate Living Expense | 45 | - | - | - | - | 1 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 19 |
| 3/10/2011 | 4/9/2011 | Alternate Living Expense | 1,270 | - | - | - | - | 36 | 15 | 60 | 60 | 60 | 60 | 15 | 15 | 15 | 16 | 16 | 16 | 17 | 17 | 17 | 18 | 19 | 19 | 45 | 538 |
| 3/14/2011 | 4/13/2011 | Alternate Living Expense | 35 | - | - | - | - | 1 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 15 |
| 3/16/2011 | 4/15/2011 | Alternate Living Expense | 45 | - | - | - | - | 1 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 19 |
| 3/18/2011 | 4/17/2011 | Alternate Living Expense | 59 | - | - | - | - | 2 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 25 |
| 3/29/2011 | 4/28/2011 | Alternate Living Expense | 107 | - | - | - | - | 3 | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 4 | 45 |
| 3/31/2011 | 4/30/2011 | Alternate Living Expense | 100 | - | - | - | - | 3 | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 4 | 42 |
| 4/7/2011 | 5/7/2011 | Alternate Living Expense | 50 | - | - | - | - | 1 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 21 |
| 4/8/2011 | 5/8/2011 | Alternate Living Expense | 35 | - | - | - | - | 1 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 15 |
| 4/11/2011 | 5/11/2011 | Alternate Living Expense | 1,270 | - | - | - | - | 30 | 15 | 60 | 60 | 60 | 60 | 15 | 15 | 15 | 16 | 16 | 16 | 17 | 17 | 17 | 18 | 19 | 19 | 45 | 531 |
| 4/14/2011 | 5/14/2011 | Alternate Living Expense | 45 | - | - | - | - | 1 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 19 |
| 4/18/2011 | 5/18/2011 | Alternate Living Expense | 40 | - | - | - | - | 1 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 17 |
| 4/22/2011 | 5/22/2011 | Alternate Living Expense | 102 | - | - | - | - | 2 | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 4 | 42 |
| 4/22/2011 | 5/22/2011 | Alternate Living Expense | 120 | - | - | - | - | 3 | 1 | 6 | 6 | 6 | 6 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 4 | 50 |
| 4/22/2011 | 5/22/2011 | Alternate Living Expense | 56 | - | - | - | - | 1 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 23 |
| 4/22/2011 | 5/22/2011 | Alternate Living Expense | 85 | - | - | - | - | 2 | 1 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 35 |
| 4/25/2011 | 5/25/2011 | Alternate Living Expense | 15 | - | - | - | - | 0 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 6 |
| 4/28/2011 | 5/28/2011 | Alternate Living Expense | 111 | - | - | - | - | 2 | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 4 | 46 |
| 5/2/2011 | 6/1/2011 | Alternate Living Expense | 14 | - | - | - | - | 0 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 6 |
| 5/9/2011 | 6/8/2011 | Alternate Living Expense | 90 | - | - | - | - | 2 | 1 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 37 |
| 5/10/2011 | 6/9/2011 | Alternate Living Expense | 1,270 | - | - | - | - | 24 | 15 | 60 | 60 | 60 | 60 | 15 | 15 | 15 | 16 | 16 | 16 | 17 | 17 | 17 | 18 | 19 | 19 | 45 | 525 |
| 5/16/2011 | 6/15/2011 | Alternate Living Expense | 60 | - | - | - | - | 1 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 25 |
| 5/18/2011 | 6/17/2011 | Alternate Living Expense | 45 | - | - | - | - | 1 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 19 |
| 5/19/2011 | 6/18/2011 | Alternate Living Expense | 90 | - | - | - | - | 2 | 1 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 37 |
| 5/25/2011 | 6/24/2011 | Alternate Living Expense | 42 | - | - | - | - | 1 | 1 | 2 | 2 | 2 | 2 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 17 |
| 5/26/2011 | 6/25/2011 | Alternate Living Expense | 117 | - | - | - | - | 2 | 1 | 6 | 6 | 6 | 6 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 2 | 4 | 48 |
| 6/4/2011 | 7/4/2011 | Alternate Living Expense | 55 | - | - | - | - | 1 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 23 |
| 6/7/2011 | 7/7/2011 | Alternate Living Expense | 69 | - | - | - | - | 1 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 28 |
| 6/9/2011 | 7/9/2011 | Alternate Living Expense | 34 | - | - | - | - | 0 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 14 |
| 6/9/2011 | 7/9/2011 | Alternate Living Expense | 89 | - | - | - | - | 1 | 1 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 36 |
| 6/10/2011 | 7/10/2011 | Alternate Living Expense | 1,270 | - | - | - | - | 17 | 15 | 60 | 60 | 60 | 60 | 15 | 15 | 15 | 16 | 16 | 16 | 17 | 17 | 17 | 18 | 19 | 19 | 45 | 519 |
| 6/10/2011 | 7/10/2011 | Alternate Living Expense | 180 | - | - | - | - | 2 | 2 | 9 | 9 | 9 | 9 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 6 | 73 |
| 6/15/2011 | 7/15/2011 | Alternate Living Expense | 45 | - | - | - | - | 1 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 18 |
| 6/15/2011 | 7/15/2011 | Alternate Living Expense | 28 | - | - | - | - | 0 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 11 |
| 6/16/2011 | 7/16/2011 | Alternate Living Expense | 28 | - | - | - | - | 0 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 11 |
| 6/17/2011 | 7/17/2011 | Alternate Living Expense | 1,256 | - | - | - | - | 15 | 15 | 60 | 60 | 60 | 60 | 15 | 15 | 15 | 16 | 15 | 16 | 16 | 17 | 17 | 18 | 19 | 19 | 44 | 512 |
| 6/20/2011 | 7/20/2011 | Alternate Living Expense | 46 | - | - | - | - | 1 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 19 |
| 6/21/2011 | 7/21/2011 | Alternate Living Expense | 35 | - | - | - | - | 0 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 1 | 14 |
| 6/21/2011 | 7/21/2011 | Alternate Living Expense | 80 | - | - | - | - | 1 | 1 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 33 |
| 6/22/2011 | 7/22/2011 | Alternate Living Expense | 1,100 | - | - | - | - | 13 | 13 | 52 | 52 | 52 | 52 | 13 | 13 | 13 | 14 | 13 | 14 | 14 | 15 | 15 | 16 | 17 | 17 | 39 | 447 |
| 6/22/2011 | 7/22/2011 | Alternate Living Expense | 28 | - | - | - | - | 0 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 11 |
| 6/22/2011 | 7/22/2011 | Alternate Living Expense | 23 | - | - | - | - | 0 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 9 |
| 6/28/2011 | 7/28/2011 | Alternate Living Expense | 111 | - | - | - | - | 1 | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 4 | 45 |
| 6/29/2011 | 7/29/2011 | Alternate Living Expense | 56 | - | - | - | - | 1 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 23 |
| 7/2/2011 | 8/1/2011 | Alternate Living Expense | 50 | - | - | - | - | 0 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 20 |
| 7/2/2011 | 8/1/2011 | Alternate Living Expense | 21 | - | - | - | - | 0 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 9 |
| 7/2/2011 | 8/1/2011 | Alternate Living Expense | 56 | - | - | - | - | 1 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 23 |
| 7/5/2011 | 8/4/2011 | Alternate Living Expense | 10 | - | - | - | - | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 4 |
| 7/9/2011 | 8/8/2011 | Alternate Living Expense | 46 | - | - | - | - | 0 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 19 |
| 7/11/2011 | 8/10/2011 | Alternate Living Expense | 1,270 | - | - | - | - | 11 | 15 | 60 | 60 | 60 | 60 | 15 | 15 | 15 | 16 | 16 | 16 | 17 | 17 | 17 | 18 | 19 | 19 | 45 | 512 |
| 7/11/2011 | 8/10/2011 | Alternate Living Expense | 50 | - | - | - | - | 0 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 20 |
| 7/12/2011 | 8/11/2011 | Alternate Living Expense | 50 | - | - | - | - | 0 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 20 |
| 7/12/2011 | 8/11/2011 | Alternate Living Expense | 45 | - | - | - | - | 0 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 18 |
| 7/12/2011 | 8/11/2011 | Alternate Living Expense | 100 | - | - | - | - | 1 | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 4 | 40 |
| 7/13/2011 | 8/12/2011 | Alternate Living Expense | 225 | - | - | - | - | 2 | 3 | 11 | 11 | 11 | 11 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 8 | 91 |
| 7/15/2011 | 8/14/2011 | Alternate Living Expense | 40 | - | - | - | - | 0 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 16 |
| 7/16/2011 | 8/15/2011 | Alternate Living Expense | 12 | - | - | - | - | 0 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 5 |
| 7/18/2011 | 8/17/2011 | Alternate Living Expense | 41 | - | - | - | - | 0 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 17 |
| 7/18/2011 | 8/17/2011 | Alternate Living Expense | 13 | - | - | - | - | 0 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 5 |
| 7/18/2011 | 8/17/2011 | Alternate Living Expense | 1,458 | - | - | - | - | 11 | 17 | 69 | 69 | 69 | 69 | 17 | 17 | 18 | 18 | 18 | 18 | 19 | 20 | 20 | 21 | 22 | 22 | 51 | 586 |
| 7/20/2011 | 8/19/2011 | Alternate Living Expense | 83 | - | - | - | - | 1 | 1 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 34 |
| 7/21/2011 | 8/20/2011 | Alternate Living Expense | 45 | - | - | - | - | 0 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 18 |
| 7/21/2011 | 8/20/2011 | Alternate Living Expense | 30 | - | - | - | - | 0 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 12 |
| 7/21/2011 | 8/20/2011 | Alternate Living Expense | 24 | - | - | - | - | 0 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 10 |
| 7/21/2011 | 8/20/2011 | Alternate Living Expense | 60 | - | - | - | - | 0 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 24 |
| 7/24/2011 | 8/23/2011 | Alternate Living Expense | 38 | - | - | - | - | 0 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 15 |
| 7/25/2011 | 8/24/2011 | Alternate Living Expense | 15 | - | - | - | - | 0 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 6 |
| 7/26/2011 | 8/25/2011 | Alternate Living Expense | 44 | - | - | - | - | 0 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 17 |
| 7/26/2011 | 8/25/2011 | Alternate Living Expense | 42 | - | - | - | - | 0 | 1 | 2 | 2 | 2 | 2 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 17 |
| 7/26/2011 | 8/25/2011 | Alternate Living Expense | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| 7/26/2011 | 8/25/2011 | Alternate Living Expense | 110 | - | - | - | - | 1 | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 4 | 44 |
| 7/26/2011 | 8/25/2011 | Alternate Living Expense | 5 | - | - | - | - | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 |
| 7/27/2011 | 8/26/2011 | Alternate Living Expense | 121 | - | - | - | - | 1 | 1 | 6 | 6 | 6 | 6 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 4 | 49 |
| 7/28/2011 | 8/27/2011 | Alternate Living Expense | 45 | - | - | - | - | 0 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 18 |

Exhibit 7.3A
Calculation of Prejudgment Interest Detail - Anthony & Candace Gody

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Amount | 12/31/2007 | 12/31/2008 | 12/31/2009 | 12/31/2010 | 9/30/2011 | 12/31/2011 | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 3/31/2016 | 6/30/2016 | 9/30/2016 | 12/31/2016 | 3/31/2017 | 6/30/2017 | 9/30/2017 | 12/31/2017 | 3/31/2018 | 6/30/2018 | 9/30/2018 | 12/31/2018 | 7/22/2019 | Total Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7/29/2011 | 8/28/2011 | Alternate Living Expense | 30 | - | - | - | - | 0 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 12 |
| 8/4/2011 | 9/3/2011 | Alternate Living Expense | 143 | - | - | - | - | 1 | 2 | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 57 |
| 8/8/2011 | 9/7/2011 | Alternate Living Expense | 180 | - | - | - | - | 1 | 2 | 9 | 9 | 9 | 9 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 6 | 72 |
| 8/10/2011 | 9/9/2011 | Alternate Living Expense | 1,270 | - | - | - | - | 4 | 15 | 60 | 60 | 60 | 60 | 15 | 15 | 15 | 16 | 16 | 16 | 17 | 17 | 17 | 18 | 19 | 19 | 45 | 506 |
| 8/16/2011 | 9/15/2011 | Alternate Living Expense | 258 | - | - | - | - | 1 | 3 | 12 | 12 | 12 | 12 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 4 | 9 | 103 |
| 8/16/2011 | 9/15/2011 | Alternate Living Expense | 60 | - | - | - | - | 0 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 24 |
| 8/22/2011 | 9/21/2011 | Alternate Living Expense | 99 | - | - | - | - | 0 | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 3 | 39 |
| 8/24/2011 | 9/23/2011 | Alternate Living Expense | 385 | - | - | - | - | 0 | 5 | 18 | 18 | 18 | 18 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 6 | 6 | 14 | 153 |
| 8/24/2011 | 9/23/2011 | Alternate Living Expense | 942 | - | - | - | - | 1 | 11 | 45 | 45 | 45 | 45 | 11 | 11 | 11 | 12 | 12 | 12 | 12 | 13 | 13 | 13 | 14 | 14 | 33 | 373 |
| 8/26/2011 | 9/25/2011 | Alternate Living Expense | 45 | - | - | - | - | 0 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 18 |
| 8/31/2011 | 9/30/2011 | Alternate Living Expense | 34 | - | - | - | - | - | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 13 |
| 9/8/2011 | 10/8/2011 | Alternate Living Expense | 68 | - | - | - | - | - | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 27 |
| 9/12/2011 | 10/12/2011 | Alternate Living Expense | 1,270 | - | - | - | - | - | 13 | 60 | 60 | 60 | 60 | 15 | 15 | 15 | 16 | 16 | 16 | 17 | 17 | 17 | 18 | 19 | 19 | 45 | 500 |
| 9/13/2011 | 10/13/2011 | Alternate Living Expense | 71 | - | - | - | - | - | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 28 |
| 9/15/2011 | 10/15/2011 | Alternate Living Expense | 135 | - | - | - | - | - | 1 | 6 | 6 | 6 | 6 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 53 |
| 9/21/2011 | 10/21/2011 | Alternate Living Expense | 45 | - | - | - | - | - | 0 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 18 |
| 10/6/2011 | 11/5/2011 | Alternate Living Expense | 34 | - | - | - | - | - | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 13 |
| 10/7/2011 | 11/6/2011 | Alternate Living Expense | 375 | - | - | - | - | - | 3 | 18 | 18 | 18 | 18 | 4 | 4 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 6 | 6 | 13 | 146 |
| 10/11/2011 | 11/10/2011 | Alternate Living Expense | 1,270 | - | - | - | - | - | 8 | 60 | 60 | 60 | 60 | 15 | 15 | 15 | 16 | 16 | 16 | 17 | 17 | 17 | 18 | 19 | 19 | 45 | 495 |
| 10/17/2011 | 11/16/2011 | Alternate Living Expense | 45 | - | - | - | - | - | 0 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 17 |
| 10/17/2011 | 11/16/2011 | Alternate Living Expense | 80 | - | - | - | - | - | 0 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 31 |
| 10/17/2011 | 11/16/2011 | Alternate Living Expense | 9 | - | - | - | - | - | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3 |
| 10/18/2011 | 11/17/2011 | Alternate Living Expense | 90 | - | - | - | - | - | 1 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 35 |
| 10/20/2011 | 11/19/2011 | Alternate Living Expense | 320 | - | - | - | - | - | 2 | 15 | 15 | 15 | 15 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 5 | 11 | 124 |
| 10/24/2011 | 11/23/2011 | Alternate Living Expense | 99 | - | - | - | - | - | 0 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 3 | 38 |
| 11/7/2011 | 12/7/2011 | Alternate Living Expense | 245 | - | - | - | - | - | 1 | 12 | 12 | 12 | 12 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 9 | 95 |
| 11/8/2011 | 12/8/2011 | Alternate Living Expense | 83 | - | - | - | - | - | 0 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 32 |
| 11/9/2011 | 12/9/2011 | Alternate Living Expense | 90 | - | - | - | - | - | 0 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 35 |
| 11/9/2011 | 12/9/2011 | Alternate Living Expense | 57 | - | - | - | - | - | 0 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 22 |
| 11/10/2011 | 12/10/2011 | Alternate Living Expense | 1,270 | - | - | - | - | - | 3 | 60 | 60 | 60 | 60 | 15 | 15 | 15 | 16 | 16 | 16 | 17 | 17 | 17 | 18 | 19 | 19 | 45 | 490 |
| 11/14/2011 | 12/14/2011 | Alternate Living Expense | 45 | - | - | - | - | - | 0 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 17 |
| 11/15/2011 | 12/15/2011 | Alternate Living Expense | 253 | - | - | - | - | - | 1 | 12 | 12 | 12 | 12 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 9 | 97 |
| 11/16/2011 | 12/16/2011 | Alternate Living Expense | 52 | - | - | - | - | - | 0 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 20 |
| 12/2/2011 | 1/1/2012 | Alternate Living Expense | 168 | - | - | - | - | - | - | 8 | 8 | 8 | 8 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 6 | 64 |
| 12/8/2011 | 1/7/2012 | Alternate Living Expense | 61 | - | - | - | - | - | - | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 23 |
| 12/8/2011 | 1/7/2012 | Alternate Living Expense | 50 | - | - | - | - | - | - | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 19 |
| 12/9/2011 | 1/8/2012 | Alternate Living Expense | 45 | - | - | - | - | - | - | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 17 |
| 12/12/2011 | 1/11/2012 | Alternate Living Expense | 1,270 | - | - | - | - | - | - | 59 | 60 | 60 | 60 | 15 | 15 | 15 | 16 | 16 | 16 | 17 | 17 | 17 | 18 | 19 | 19 | 45 | 485 |
| 12/14/2011 | 1/13/2012 | Alternate Living Expense | 45 | - | - | - | - | - | - | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 17 |
| 12/16/2011 | 1/15/2012 | Alternate Living Expense | 50 | - | - | - | - | - | - | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 19 |
| 12/19/2011 | 1/18/2012 | Alternate Living Expense | 62 | - | - | - | - | - | - | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 24 |
| 12/27/2011 | 1/26/2012 | Alternate Living Expense | 167 | - | - | - | - | - | - | 7 | 8 | 8 | 8 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 6 | 63 |
| 12/28/2011 | 1/27/2012 | Alternate Living Expense | 65 | - | - | - | - | - | - | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 25 |
| 1/6/2012 | 2/5/2012 | Alternate Living Expense | 39 | - | - | - | - | - | - | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 15 |
| 1/9/2012 | 2/8/2012 | Alternate Living Expense | 61 | - | - | - | - | - | - | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 23 |
| 1/10/2012 | 2/9/2012 | Alternate Living Expense | 1,270 | - | - | - | - | - | - | 54 | 60 | 60 | 60 | 15 | 15 | 15 | 16 | 16 | 16 | 17 | 17 | 17 | 18 | 19 | 19 | 45 | 480 |
| 1/10/2012 | 2/9/2012 | Alternate Living Expense | 116 | - | - | - | - | - | - | 5 | 6 | 6 | 6 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 2 | 4 | 44 |
| 1/16/2012 | 2/15/2012 | Alternate Living Expense | 101 | - | - | - | - | - | - | 4 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 4 | 38 |
| 1/17/2012 | 2/16/2012 | Alternate Living Expense | 45 | - | - | - | - | - | - | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 17 |
| 1/17/2012 | 2/16/2012 | Alternate Living Expense | 24 | - | - | - | - | - | - | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 9 |
| 1/25/2012 | 2/24/2012 | Alternate Living Expense | 92 | - | - | - | - | - | - | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 35 |
| 2/6/2012 | 3/7/2012 | Alternate Living Expense | 57 | - | - | - | - | - | - | 2 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 21 |
| 2/7/2012 | 3/8/2012 | Alternate Living Expense | 60 | - | - | - | - | - | - | 2 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 23 |
| 2/10/2012 | 3/11/2012 | Alternate Living Expense | 1,270 | - | - | - | - | - | - | 49 | 60 | 60 | 60 | 15 | 15 | 15 | 16 | 16 | 16 | 17 | 17 | 17 | 18 | 19 | 19 | 45 | 475 |
| 2/14/2012 | 3/15/2012 | Alternate Living Expense | 45 | - | - | - | - | - | - | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 17 |
| 2/14/2012 | 3/15/2012 | Alternate Living Expense | 123 | - | - | - | - | - | - | 5 | 6 | 6 | 6 | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 4 | 46 |
| 2/15/2012 | 3/16/2012 | Alternate Living Expense | 20 | - | - | - | - | - | - | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 7 |
| 2/27/2012 | 3/28/2012 | Alternate Living Expense | 147 | - | - | - | - | - | - | 5 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 55 |
| 3/2/2012 | 4/1/2012 | Alternate Living Expense | 18 | - | - | - | - | - | - | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 7 |
| 3/7/2012 | 4/6/2012 | Alternate Living Expense | 51 | - | - | - | - | - | - | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 19 |
| 3/8/2012 | 4/7/2012 | Alternate Living Expense | 57 | - | - | - | - | - | - | 2 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 21 |
| 3/12/2012 | 4/11/2012 | Alternate Living Expense | 1,270 | - | - | - | - | - | - | 44 | 60 | 60 | 60 | 15 | 15 | 15 | 16 | 16 | 16 | 17 | 17 | 17 | 18 | 19 | 19 | 45 | 470 |
| 3/14/2012 | 4/13/2012 | Alternate Living Expense | 45 | - | - | - | - | - | - | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 17 |
| 3/16/2012 | 4/15/2012 | Alternate Living Expense | 111 | - | - | - | - | - | - | 4 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 4 | 41 |
| 3/22/2012 | 4/21/2012 | Alternate Living Expense | 33 | - | - | - | - | - | - | 1 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 12 |
| 4/6/2012 | 5/6/2012 | Alternate Living Expense | 51 | - | - | - | - | - | - | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 19 |
| 4/9/2012 | 5/9/2012 | Alternate Living Expense | 24 | - | - | - | - | - | - | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 9 |
| 4/10/2012 | 5/10/2012 | Alternate Living Expense | 1,270 | - | - | - | - | - | - | 39 | 60 | 60 | 60 | 15 | 15 | 15 | 16 | 16 | 16 | 17 | 17 | 17 | 18 | 19 | 19 | 45 | 465 |
| 4/13/2012 | 5/13/2012 | Alternate Living Expense | 41 | - | - | - | - | - | - | 1 | 2 | 2 | 2 | 0 | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 15 |
| 4/16/2012 | 5/16/2012 | Alternate Living Expense | 45 | - | - | - | - | - | - | 1 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 16 |
| 4/20/2012 | 5/20/2012 | Alternate Living Expense | 50 | - | - | - | - | - | - | 1 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 18 |
| 4/23/2012 | 5/23/2012 | Alternate Living Expense | 144 | - | - | - | - | - | - | 4 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 53 |
| 5/4/2012 | 6/3/2012 | Alternate Living Expense | 25 | - | - | - | - | - | - | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 9 |
| 5/7/2012 | 6/6/2012 | Alternate Living Expense | 42 | - | - | - | - | - | - | 1 | 2 | 2 | 2 | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 15 |
| 5/9/2012 | 6/8/2012 | Alternate Living Expense | 99 | - | - | - | - | - | - | 3 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 3 | 36 |
| 5/9/2012 | 6/8/2012 | Alternate Living Expense | 28 | - | - | - | - | - | - | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 10 |
| 5/10/2012 | 6/9/2012 | Alternate Living Expense | 1,270 | - | - | - | - | - | - | 34 | 60 | 60 | 60 | 15 | 15 | 15 | 16 | 16 | 16 | 17 | 17 | 17 | 18 | 19 | 19 | 45 | 460 |
| 5/14/2012 | 6/13/2012 | Alternate Living Expense | 45 | - | - | - | - | - | - | 1 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 16 |
| 5/15/2012 | 6/14/2012 | Alternate Living Expense | 123 | - | - | - | - | - | - | 3 | 6 | 6 | 6 | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 4 | 45 |
| 5/16/2012 | 6/15/2012 | Alternate Living Expense | 59 | - | - | - | - | - | - | 2 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 21 |
| 5/18/2012 | 6/17/2012 | Alternate Living Expense | 225 | - | - | - | - | - | - | 6 | 11 | 11 | 11 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 8 | 81 |
| 5/22/2012 | 6/21/2012 | Alternate Living Expense | 90 | - | - | - | - | - | - | 2 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 32 |
| 6/6/2012 | 7/6/2012 | Alternate Living Expense | 42 | - | - | - | - | - | - | 1 | 2 | 2 | 2 | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 15 |
| 6/7/2012 | 7/7/2012 | Alternate Living Expense | 48 | - | - | - | - | - | - | 1 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 17 |
| 6/11/2012 | 7/11/2012 | Alternate Living Expense | 1,270 | - | - | - | - | - | - | 29 | 60 | 60 | 60 | 15 | 15 | 15 | 16 | 16 | 16 | 17 | 17 | 17 | 18 | 19 | 19 | 45 | 455 |
| 6/13/2012 | 7/13/2012 | Alternate Living Expense | 33 | - | - | - | - | - | - | 1 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 12 |
| 6/14/2012 | 7/14/2012 | Alternate Living Expense | 45 | - | - | - | - | - | - | 1 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 16 |
| 6/14/2012 | 7/14/2012 | Alternate Living Expense | 17 | - | - | - | - | - | - | 0 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 6 |
| 6/22/2012 | 7/22/2012 | Alternate Living Expense | 159 | - | - | - | - | - | - | 3 | 8 | 8 | 8 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 6 | 57 |
| 6/22/2012 | 7/22/2012 | Alternate Living Expense | 180 | - | - | - | - | - | - | 4 | 9 | 9 | 9 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 6 | 64 |
| 6/25/2012 | 7/25/2012 | Alternate Living Expense | 23 | - | - | - | - | - | - | 0 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 8 |
| 7/6/2012 | 8/5/2012 | Alternate Living Expense | 42 | - | - | - | - | - | - | 1 | 2 | 2 | 2 | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 15 |
| 7/10/2012 | 8/9/2012 | Alternate Living Expense | 1,270 | - | - | - | - | - | - | 24 | 60 | 60 | 60 | 15 | 15 | 15 | 16 | 16 | 16 | 17 | 17 | 17 | 18 | 19 | 19 | 45 | 450 |
| 7/10/2012 | 8/9/2012 | Alternate Living Expense | 274 | - | - | - | - | - | - | 5 | 13 | 13 | 13 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 4 | 4 | 4 | 10 | 97 |
| 7/10/2012 | 8/9/2012 | Alternate Living Expense | 135 | - | - | - | - | - | - | 3 | 6 | 6 | 6 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 48 |
| 7/12/2012 | 8/11/2012 | Alternate Living Expense | 284 | - | - | - | - | - | - | 5 | 13 | 13 | 13 | 3 | 3 | 3 | 4 | 3 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 10 | 100 |
| 7/16/2012 | 8/15/2012 | Alternate Living Expense | 45 | - | - | - | - | - | - | 1 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 16 |
| 7/25/2012 | 8/24/2012 | Alternate Living Expense | 90 | - | - | - | - | - | - | 2 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 32 |
| 8/6/2012 | 9/5/2012 | Alternate Living Expense | 256 | - | - | - | - | - | - | 4 | 12 | 12 | 12 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 9 | 90 |
| 8/10/2012 | 9/9/2012 | Alternate Living Expense | 1,270 | - | - | - | - | - | - | 19 | 60 | 60 | 60 | 15 | 15 | 15 | 16 | 16 | 16 | 17 | 17 | 17 | 18 | 19 | 19 | 45 | 445 |
| 8/10/2012 | 9/9/2012 | Alternate Living Expense | 180 | - | - | - | - | - | - | 3 | 9 | 9 | 9 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 6 | 63 |
| 8/14/2012 | 9/13/2012 | Alternate Living Expense | 45 | - | - | - | - | - | - | 1 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 16 |

Exhibit 7.3A
Calculation of Prejudgment Interest Detail - Anthony & Candace Gody

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Amount | 12/31/2007 | 12/31/2008 | 12/31/2009 | 12/31/2010 | 9/30/2011 | 12/31/2011 | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 3/31/2016 | 6/30/2016 | 9/30/2016 | 12/31/2016 | 3/31/2017 | 6/30/2017 | 9/30/2017 | 12/31/2017 | 3/31/2018 | 6/30/2018 | 9/30/2018 | 12/31/2018 | 7/22/2019 | Total Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8/17/2012 | 9/16/2012 | Alternate Living Expense | 99 | - | - | - | - | - | - | 1 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 3 | 35 |
| 9/10/2012 | 10/10/2012 | Alternate Living Expense | 1,270 | - | - | - | - | - | - | 14 | 60 | 60 | 60 | 15 | 15 | 15 | 16 | 16 | 16 | 17 | 17 | 17 | 18 | 19 | 19 | 45 | 440 |
| 9/10/2012 | 10/10/2012 | Alternate Living Expense | 180 | - | - | - | - | - | - | 2 | 9 | 9 | 9 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 6 | 62 |
| 9/14/2012 | 10/14/2012 | Alternate Living Expense | 45 | - | - | - | - | - | - | - | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 16 |
| | | Alternate Living Expense Total | 60,522 | - | - | - | - | 235 | 1,040 | 475 | 2,531 | 2,875 | 2,875 | 2,875 | 715 | 719 | 736 | 747 | 762 | 789 | 816 | 825 | 863 | 911 | 929 | 2,131 | 24,589 |
| 7/27/2007 | 8/26/2007 | Personal Property Damage Expense | 209 | 8 | 23 | 17 | 13 | 9 | 3 | 10 | 10 | 10 | 10 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 152 |
| 8/4/2008 | 9/3/2008 | Personal Property Damage Expense | 469 | | 17 | 38 | 28 | 21 | 6 | 22 | 22 | 22 | 22 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 7 | 17 | 289 |
| 8/5/2008 | 9/4/2008 | Personal Property Damage Expense | 169 | | 6 | 14 | 10 | 8 | 2 | 8 | 8 | 8 | 8 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 6 | 104 |
| 12/18/2008 | 1/17/2009 | Personal Property Damage Expense | 107 | | | 8 | 6 | 5 | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 4 | 62 |
| 5/26/2009 | 6/25/2009 | Personal Property Damage Expense | 268 | | | 11 | 16 | 12 | 3 | 13 | 13 | 13 | 13 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 4 | 4 | 9 | 145 |
| 8/15/2009 | 9/14/2009 | Personal Property Damage Expense | 33 | | | 1 | 2 | 1 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 17 |
| 10/3/2009 | 11/2/2009 | Personal Property Damage Expense | 246 | | | 3 | 15 | 11 | 3 | 12 | 12 | 12 | 12 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 9 | 126 |
| 10/26/2009 | 11/25/2009 | Personal Property Damage Expense | 129 | | | 1 | 8 | 6 | 2 | 6 | 6 | 6 | 6 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 66 |
| 3/17/2010 | 4/16/2010 | Personal Property Damage Expense | 375 | | | | 16 | 17 | 4 | 18 | 18 | 18 | 18 | 4 | 4 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 6 | 13 | 181 |
| 6/5/2010 | 7/5/2010 | Personal Property Damage Expense | 21 | | | | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 10 |
| 7/14/2010 | 8/13/2010 | Personal Property Damage Expense | 15 | | | | 0 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 7 |
| 7/16/2010 | 8/15/2010 | Personal Property Damage Expense | 626 | | | | 14 | 28 | 7 | 30 | 30 | 30 | 30 | 7 | 7 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 22 | 289 |
| 7/16/2010 | 8/15/2010 | Personal Property Damage Expense | 5,708 | | | | 130 | 256 | 68 | 271 | 271 | 271 | 271 | 67 | 68 | 69 | 70 | 70 | 72 | 74 | 77 | 78 | 81 | 86 | 88 | 201 | 2,641 |
| 7/17/2010 | 8/16/2010 | Personal Property Damage Expense | 3,818 | | | | 86 | 171 | 46 | 181 | 181 | 181 | 181 | 45 | 45 | 46 | 47 | 47 | 48 | 50 | 51 | 52 | 54 | 57 | 59 | 134 | 1,765 |
| 8/3/2010 | 9/2/2010 | Personal Property Damage Expense | 180 | | | | 4 | 8 | 2 | 9 | 9 | 9 | 9 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 6 | 83 |
| 8/12/2010 | 9/11/2010 | Personal Property Damage Expense | 507 | | | | 9 | 23 | 6 | 24 | 24 | 24 | 24 | 6 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 7 | 8 | 8 | 18 | 232 |
| 3/8/2011 | 4/7/2011 | Personal Property Damage Expense | 92 | | | | | 3 | 1 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 39 |
| 3/16/2011 | 4/15/2011 | Personal Property Damage Expense | 375 | | | | | 10 | 4 | 18 | 18 | 18 | 18 | 4 | 4 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 6 | 6 | 13 | 158 |
| 5/12/2012 | 6/11/2012 | Personal Property Damage Expense | 45 | | | | | | | 1 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 16 |
| 5/24/2012 | 6/23/2012 | Personal Property Damage Expense | 2,872 | | | | | | | 71 | 136 | 136 | 136 | 34 | 34 | 35 | 35 | 36 | 37 | 39 | 39 | 41 | 43 | 44 | 101 | 1,035 |
| 5/29/2012 | 6/28/2012 | Personal Property Damage Expense | 840 | | | | | | | 20 | 40 | 40 | 40 | 10 | 10 | 10 | 10 | 11 | 11 | 11 | 12 | 13 | 13 | 30 | 302 |
| 6/20/2012 | 7/20/2012 | Personal Property Damage Expense | 243 | | | | | | | 5 | 12 | 12 | 12 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 9 | 87 |
| 9/30/2012 | 10/30/2012 | Personal Property Damage Expense | 507 | | | | | | | 4 | 24 | 24 | 24 | 6 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 7 | 8 | 18 | 174 |
| | | Personal Property Damage Expense Total | 17,852 | 8 | 46 | 92 | 357 | 591 | 160 | 736 | 848 | 848 | 848 | 211 | 212 | 217 | 220 | 225 | 233 | 241 | 243 | 255 | 269 | 274 | 628 | 7,980 |

**Assumptions:**

| | 12/31/2007 | 12/31/2008 | 12/31/2009 | 12/31/2010 | 9/30/2011 | 12/31/2011 | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 3/31/2016 | 6/30/2016 | 9/30/2016 | 12/31/2016 | 3/31/2017 | 6/30/2017 | 9/30/2017 | 12/31/2017 | 3/31/2018 | 6/30/2018 | 9/30/2018 | 12/31/2018 | 7/22/2019 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | Florida Statutory Interest Rates | | | | | | | | | | | | | | |
| Annual | 11.00% | 11.00% | 8.00% | 6.00% | 6.00% | 4.75% | 4.75% | 4.75% | 4.75% | 4.75% | 4.75% | 4.78% | 4.84% | 4.91% | 4.97% | 5.05% | 5.17% | 5.35% | 5.53% | 5.72% | 5.97% | 6.09% | 6.33% |
| Per Diem | 0.0301400% | 0.0301400% | 0.0219200% | 0.0164400% | 0.0164400% | 0.0130137% | 0.0129781% | 0.0130137% | 0.0130137% | 0.0130137% | 0.0129781% | 0.0130601% | 0.0132240% | 0.0134530% | 0.0136164% | 0.0138336% | 0.0141643% | 0.0146575% | 0.0151507% | 0.0156712% | 0.0163562% | 0.0166849% | 0.0173425% |

7.A
Documents and Other Information Considered - Anthony & Candace Gody

*Chinese Drywall Litigation Involving Priority Claimants*

Bate Stamp (if applicable)

| No. | Claimant | General Description | First Page | Last Page |
|---|---|---|---|---|
| **A. Pleadings and Other Legal Documents:** | | | | |
| 1 | All | Trial Plan for Property Damage Claims and Scheduling Order dated November 16, 2018 | | |
| 2 | Gody | Priority Claimant Candace Gody Answers to Interrogatories, dated November 30, 2018 | | |
| 3 | Gody | Priority Claimant Candace Gody Answers to Defendant's Second Set of Interrogatories, dated November 30, 2018 | | |
| 4 | Gody | Candace Gody Fourth Amended Supplemental Profile Plaintiff Profile Form, dated December 11, 2018 | | |
| 5 | Gody | Priority Claimant Candace Gody Second Amended Answers to Defendants' Second Set of Interrogatories, dated December 11, 2018 | | |
| **B. Depositions & Corresponding Exhibits:** | | | | |
| 1 | Gody | Deposition Transcript of Candace Gody, dated December 12, 2018 | | |
| 2 | Gody | Acknowledgment of Deponent Candace Gody, dated January 3, 2019 | | |
| 3 | Gody | Errata Sheet Candace Gody, dated January 3, 2019 | | |
| 4 | Gody | Deposition Exhibit 01 - Lee County Property Appraiser - Property Data | | |
| 5 | Gody | Deposition Exhibit 02 - Plaintiff Profile Form - Residential Properties | GodyA00001 | GodyA00026 |
| 6 | Gody | Deposition Exhibit 03 - Kross Inspectors - Inspection Report | | |
| 7 | Gody | Deposition Exhibit 04 - Priority Claimant Candace Gody's Answers to Interrogatories | | |
| 8 | Gody | Deposition Exhibit 05 - Receipts of Section III - Personal Property | | |
| 9 | Gody | Deposition Exhibit 06 - Invoices - Wiegold & Sons, Inc. and Certified Heating and Cooling | | |
| 10 | Gody | Deposition Exhibit 07 - Fourth Amended Supplemental Plaintiff Profile Form | | |
| 11 | Gody | Deposition Exhibit 08 - Receipts for Alternative Living - Section IV | | |
| 12 | Gody | Deposition Exhibit 09 - Photographs | | |
| 13 | Gody | Deposition Exhibit 10 - April 5, 2011 Polkow Construction, Inc. Chinese Drywall Remediation Proposal | | |
| 14 | Gody | Deposition Exhibit 11 - June 28, 2011 Polkow Construction, Inc. Chinese Drywall Remediation Proposal | | |
| 15 | Gody | Deposition Exhibit 12 - Wells Fargo Checks and Statements | | |
| 16 | Gody | Deposition Exhibit 13 - City of Fort Myers - Letter of Completion | | |
| 17 | Gody | Deposition Exhibit 14 - Payments Made for Remediation at 10842 Tiberio Drive, Fort Myers, Florida 33913 | | |
| 18 | Gody | Deposition Exhibit 15 - Excel Spreadsheet - Expenses | | |
| 19 | Gody | Deposition Exhibit 16 - Intuitive Environmental Solutions, LLC Invoice | | |
| 20 | Gody | Deposition Exhibit 17 - July 8, 2011 Intuitive Environmental Solutions, LLC Report | | |
| 21 | Gody | Deposition Exhibit 18 - August 31, 2011 Intuitive Environmental Solutions, LLC Report | | |
| 22 | Gody | Deposition Exhibit 19 - Supplemental Plaintiff Profile Form | | |
| 23 | Gody | Deposition Exhibit 20 - First Amended Supplemental Plaintiff Profile Form | | |
| **C. Supporting Documentation** | | | | |
| 1 | Gody | Anthony and Candace Out of Pocket Damages Summary Provided by Counsel | | |
| 2 | Gody | Doc ID. 120231 - Gody Mortgage, Utilities and General Expenses for ALE | | |
| 3 | Gody | Doc ID. 120244 - Gody Receipts for personal items and inspections reports | | |

7.A
Documents and Other Information Considered - Anthony & Candace Gody

*Chinese Drywall Litigation Involving Priority Claimants*

*Bate Stamp (if applicable)*

| No. | Claimant | General Description | First Page | Last Page |
|---|---|---|---|---|
| 4 | Gody | Doc ID. 350983 - Gody List of payments for remediation | | |
| 5 | Gody | Doc ID. 365696 - Gody HVAC repairs by Weigold & Sons and Certified Heating & Cooling | | |
| 6 | Gody | Doc ID. 365702 - Gody Wells Fargo loss of interest statements | | |
| 7 | Gody | Doc ID. 365760 - Gody Wells Fargo statements confirming funds for remediation | | |
| 8 | Gody | Doc ID. 366110 - Gody Intuitive Environmental Solutions Invoice | | |
| 9 | Gody | Doc ID. 366111 - Gody Tax Preparation cost due to remediation repairs | | |
| 10 | Gody | Doc ID. 366155 - Gody Polkow Construction remediation proposal | | |
| 11 | Gody | Doc ID. 366156 - Gody payments made to Polkow Construction and receipts for mediation | | |
| 12 | Gody | Doc ID. 366157 - Gody Letter of remediation completion from City of Ft. Myers | | |
| 13 | Gody | Doc ID. 367571 - HUD Settlement Statement for Purchase of PA land | | |
| 14 | Gody | Doc ID. 367572 - HUD Settlement Statement for Sale of PA property | | |
| 15 | Gody | Doc ID. 367573 - Wells Fargo Investment fund balances prior to remediation | | |
| 16 | Gody | Doc ID. 367574 - Wells Fargo Investment fund balances post remediation | | |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-22408-Civ-COOKE

EDUARDO AND CARMEN AMORIN, *et al.*,
individually and on behalf of others similarly
situated,

       Plaintiffs,

vs.

TAISHAN GYPSUM CO., LTD., f/k/a
SHANDONG TIASHE DONGXIN CO. LTD.,
*et al.*,

       Defendants.

_____

# Exhibit 8

## Calculations of Damages for Priority Claimants

# David & Diane Griffin

EXHIBIT TO THE EXPERT WITNESS REPORT OF:
MICHAEL P. ELKIN, CPA/CFF/ABV, CFE
IN THE PRIORITY CLAIMANT TRIAL

February 19, 2019



Exhibit 8
Data and Damage Summary - David & Diane Griffin

*Chinese Drywall Litigation Involving Priority Claimants*

| Data: | | *Reference / Notes* |
|---|---|---|
| Address of Affected property | 9801 Cobblestone Lakes Court | *SPPF* |
| | Boynton Beach, FL 33472 | *SPPF* |
| Date Affected property acquired | October 5, 2006 | *SPPF* |
| Date Chinese drywall installed | N/A | *SPPF* |
| Date moved into Affected property | October 5, 2006 | *SPPF* |
| Date first aware of Chinese drywall | May-10 | *SPPF* |
| | | |
| Move out date to alternate living | June 8, 2010 | *ROG 1, #2* |
| Date returned to Affected property | N/A | *ROG 1, #2* |
| End date for alternate living expenses | July 27, 2010 | *ROG 1, #2* |
| | | |
| Still own property? | N | *SPPF* |
| Bankruptcy caused by damage? | N | *SPPF* |
| Foreclosure or short sale? | Y | *SPPF* |
| Affected property sold? | Y | *SPPF* |
| Sale date | July 27, 2010 | *SPPF* |
| Type of sale | Short Sale | *SPPF* |
| | | |
| Remediation status | None | *SPPF* |
| Remediation period | N/A | *SPPF* |

| Damage Summary: | | |
|---|---|---|
| | | |
| Full or Partial Out-of-Pocket Remediation Expenses | $ - | |
| | | |
| Other Damages | | |
| Alternate Living Expenses | $ - | |
| Personal Property Damage Expense | - | |
| Additional Damages | 38,500 | *Exh. 8.1* |
| | $ 38,500 | |
| | | |
| Lost Equity | $ 113,034 | *Exh. 8.2* |
| | | |
| Diminution in Value | TBD | |
| | | |
| Loss of Use and Enjoyment | TBD | |
| | | |
| Punitive Damages | TBD | |

Exhibit 8.1
Damage Claims Detail - David & Diane Griffin

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|------|--------|-------------|--------|------|--------------|----------------|-------|------------------|--------------|
| Additional Damages - Lost Rent | N/A | Lost Rental Income at Affected Property | $ 5,500 | 1/1/2010 | X | Claimant | GRIFFIN, D (OLF) - 000001-62 | 41972 | 1 & 62 |
| Additional Damages - Lost Rent | N/A | Lost Rental Income at Affected Property | 5,500 | 2/1/2010 | X | Claimant | GRIFFIN, D (OLF) - 000001-62 | 41972 | 1 & 62 |
| Additional Damages - Lost Rent | N/A | Lost Rental Income at Affected Property | 5,500 | 3/1/2010 | X | Claimant | GRIFFIN, D (OLF) - 000001-62 | 41972 | 1 & 62 |
| Additional Damages - Lost Rent | N/A | Lost Rental Income at Affected Property | 5,500 | 4/1/2010 | X | Claimant | GRIFFIN, D (OLF) - 000001-62 | 41972 | 1 & 62 |
| Additional Damages - Lost Rent | N/A | Lost Rental Income at Affected Property | 5,500 | 5/1/2010 | X | Claimant | GRIFFIN, D (OLF) - 000001-62 | 41972 | 1 & 62 |
| Additional Damages - Lost Rent | N/A | Lost Rental Income at Affected Property | 5,500 | 6/1/2010 | X | Claimant | GRIFFIN, D (OLF) - 000001-62 | 41972 | 1 & 62 |
| Additional Damages - Lost Rent | N/A | Lost Rental Income at Affected Property | 5,500 | 7/1/2010 | X | Claimant | GRIFFIN, D (OLF) - 000001-62 | 41972 | 1 & 62 |
| Additional Damages - Lost Rent Total | | | $ 38,500 | | | | | | |

Exhibit 8.2
Lost Equity - David & Diane Griffin

*Chinese Drywall Litigation Involving Priority Claimants*

|  |  |  | Source Document |
|---|---|---:|---|
| Initial Acquisition |  |  |  |
| Purchase Price | $ | 731,544 | HUD Statement dated 10/5/06 DGRIFFIN - 000167 - Exh. 1, Pg. 47 |
| Settlement Charges |  | 29,109 | HUD Statement dated 10/5/06 DGRIFFIN - 000167 - Exh. 1, Pg. 47 |
| Total Gross Amount Due from Claimant | $ | 760,653 |  |
|  |  |  |  |
| Less |  |  |  |
| Deposit Made by Claimant | $ | (58,840) | HUD Statement dated 10/5/06 DGRIFFIN - 000167 - Exh. 1, Pg. 47 |
| Options Deposit |  | (25,738) | HUD Statement dated 10/5/06 DGRIFFIN - 000167 - Exh. 1, Pg. 47 |
| Borrowings by Claimant |  | (655,617) | HUD Statement dated 10/5/06 DGRIFFIN - 000167 - Exh. 1, Pg. 47 |
| Credits |  | (1,123) | HUD Statement dated 10/5/06 DGRIFFIN - 000167 - Exh. 1, Pg. 47 |
| Amount Due from Claimant at Close | $ | 19,335 |  |
|  |  |  |  |
| Funds Paid by Claimant |  |  |  |
| Deposit Paid with Contract | $ | 58,840 | HUD Statement dated 10/5/06 DGRIFFIN - 000167 - Exh. 1, Pg. 47 |
| Options Deposit |  | 25,738 | HUD Statement dated 10/5/06 DGRIFFIN - 000167 - Exh. 1, Pg. 47 |
| Cash Paid at Closing |  | 19,335 | HUD Statement dated 10/5/06 DGRIFFIN - 000167 - Exh. 1, Pg. 47 |
| Total Payments for Initial Purchase | a | $ | 103,913 |

1st Mortgage

|  |  |  |  |
|---|---|---:|---|
| Mortgage Beginning Balance | $ | 585,235 | HUD Statement dated 10/5/06 DGRIFFIN - 000167 - Exh. 1, Pg. 47 |
| Mortgage Balance at Payoff[1] |  | 585,235 |  |
| Principal Payments Made | b | $ | - |

2nd Mortgage

|  |  |  |  |
|---|---|---:|---|
| Mortgage Beginning Balance | $ | 70,382 | HUD Statement dated 10/5/06 DGRIFFIN - 000167 - Exh. 1, Pg. 47 |
| Mortgage Balance at Payoff[1] |  | 70,382 |  |
| Principal Payments Made | c | $ | - |

|  |  |  |  |
|---|---|---:|---|
| Seller Paid Closing Costs on Short Sale [2] | d | $ 9,122 | Aurora Loan Services DGRIFFIN - 000183 - Exh. 13 |
| Total Lost Equity | = a + b + c + d | $ 113,034 |  |

Notes:

[1] This was a short sale. The HUD (Exh. 13) includes loan payoff amounts totaling $234,986.46 ($212,586.46, $3,892 and $18,508)
However, KR was not able to verify the Principal Balance at the time of Payoff for both the 1st and 2nd Mortgages.
Therefore, KR has not included any principal payments on the loan. Should information that supports any principal payments
be provided, the Lost Equity is subject to change.

[2] The HUD (Exh. 13) indicates the amount due from the Claimant was $19,239. However, the
Closing Agent Letter dated July 13, 2010 states "seller paid closing costs not to exceed $9,121.54".

Exhibit 8.3
Calculation of Prejudgment Interest Summary - David & Diane Griffin

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Vendor | Description | Amount | Total Interest Through 7/22/2019 |
|---|---|---|---|---|---|---|
| 1/1/2010 | 1/31/2010 | Additional Damages - Lost Rent | N/A | Lost Rental Income at Affected Property | $ 5,500 | $ 2,722 |
| 2/1/2010 | 3/3/2010 | Additional Damages - Lost Rent | N/A | Lost Rental Income at Affected Property | 5,500 | 2,694 |
| 3/1/2010 | 3/31/2010 | Additional Damages - Lost Rent | N/A | Lost Rental Income at Affected Property | 5,500 | 2,668 |
| 4/1/2010 | 5/1/2010 | Additional Damages - Lost Rent | N/A | Lost Rental Income at Affected Property | 5,500 | 2,640 |
| 5/1/2010 | 5/31/2010 | Additional Damages - Lost Rent | N/A | Lost Rental Income at Affected Property | 5,500 | 2,613 |
| 6/1/2010 | 7/1/2010 | Additional Damages - Lost Rent | N/A | Lost Rental Income at Affected Property | 5,500 | 2,585 |
| 7/1/2010 | 7/31/2010 | Additional Damages - Lost Rent | N/A | Lost Rental Income at Affected Property | 5,500 | 2,558 |
| | | **Additional Damages - Lost Rent Total** | | | $ 38,500 | $ 18,479 |

Exhibit 8.3A
Calculation of Prejudgment Interest Detail - David & Diane Griffin

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Amount | 12/31/2006 | 12/31/2007 | 12/31/2008 | 12/31/2009 | 12/31/2010 | 9/30/2011 | 12/31/2011 | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 3/31/2016 | 6/30/2016 | 9/30/2016 | 12/31/2016 | 3/31/2017 | 6/30/2017 | 9/30/2017 | 12/31/2017 | 3/31/2018 | 6/30/2018 | 9/30/2018 | 12/31/2018 | 7/22/2019 | Total Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/1/2010 | 1/31/2010 | Additional Damages - Lost Rent | 5,500 | - | - | - | - | 302 | 247 | 66 | 261 | 261 | 261 | 261 | 65 | 65 | 67 | 68 | 67 | 69 | 72 | 74 | 75 | 78 | 83 | 84 | 194 | 2,722 |
| 2/1/2010 | 3/3/2010 | Additional Damages - Lost Rent | 5,500 | - | - | - | - | 274 | 247 | 66 | 261 | 261 | 261 | 261 | 65 | 65 | 67 | 68 | 67 | 69 | 72 | 74 | 75 | 78 | 83 | 84 | 194 | 2,694 |
| 3/1/2010 | 3/31/2010 | Additional Damages - Lost Rent | 5,500 | - | - | - | - | 249 | 247 | 66 | 261 | 261 | 261 | 261 | 65 | 65 | 67 | 68 | 67 | 69 | 72 | 74 | 75 | 78 | 83 | 84 | 194 | 2,668 |
| 4/1/2010 | 5/1/2010 | Additional Damages - Lost Rent | 5,500 | - | - | - | - | 221 | 247 | 66 | 261 | 261 | 261 | 261 | 65 | 65 | 67 | 68 | 67 | 69 | 72 | 74 | 75 | 78 | 83 | 84 | 194 | 2,640 |
| 5/1/2010 | 5/31/2010 | Additional Damages - Lost Rent | 5,500 | - | - | - | - | 193 | 247 | 66 | 261 | 261 | 261 | 261 | 65 | 65 | 67 | 68 | 67 | 69 | 72 | 74 | 75 | 78 | 83 | 84 | 194 | 2,613 |
| 6/1/2010 | 7/1/2010 | Additional Damages - Lost Rent | 5,500 | - | - | - | - | 165 | 247 | 66 | 261 | 261 | 261 | 261 | 65 | 65 | 67 | 68 | 67 | 69 | 72 | 74 | 75 | 78 | 83 | 84 | 194 | 2,585 |
| 7/1/2010 | 7/31/2010 | Additional Damages - Lost Rent | 5,500 | - | - | - | - | 138 | 247 | 66 | 261 | 261 | 261 | 261 | 65 | 65 | 67 | 68 | 67 | 69 | 72 | 74 | 75 | 78 | 83 | 84 | 194 | 2,558 |
| | | Additional Damages - Lost Rent Total | 38,500 | - | - | - | - | 1,543 | 1,728 | 461 | 1,829 | 1,829 | 1,829 | 1,829 | 455 | 458 | 468 | 475 | 472 | 485 | 502 | 519 | 525 | 549 | 579 | 591 | 1,355 | 18,479 |

**Assumptions:**

| | 12/31/2006 | 12/31/2007 | 12/31/2008 | 12/31/2009 | 12/31/2010 | 9/30/2011 | 12/31/2011 | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 3/31/2016 | 6/30/2016 | 9/30/2016 | 12/31/2016 | 3/31/2017 | 6/30/2017 | 9/30/2017 | 12/31/2017 | 3/31/2018 | 6/30/2018 | 9/30/2018 | 12/31/2018 | 7/22/2019 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | Florida Statutory Interest Rates | | | | | | | | | | | | | |
| Annual | 9.00% | 11.00% | 11.00% | 8.00% | 6.00% | 6.00% | 4.75% | 4.75% | 4.75% | 4.75% | 4.75% | 4.75% | 4.78% | 4.84% | 4.91% | 4.97% | 5.05% | 5.17% | 5.35% | 5.53% | 5.72% | 5.97% | 6.09% | 6.33% |
| Per Diem | 0.024660% | 0.030140% | 0.030140% | 0.021920% | 0.016440% | 0.016440% | 0.013013% | 0.012978% | 0.013013% | 0.013013% | 0.013013% | 0.012978% | 0.013060% | 0.013240% | 0.013415% | 0.013618% | 0.013835% | 0.014164% | 0.014657% | 0.015150% | 0.015671% | 0.016356% | 0.016684% | 0.017342% |

Case 1:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 173 of 802
Case 1:11-cv-22408-MGC Document 272 Entered on FLSD Docket 08/15/2013 Page 252 of
262

8.A
Documents and Other Information Considered - David & Diane Griffin

*Chinese Drywall Litigation Involving Priority Claimants*

| | | | *Bate Stamp (if applicable)* | |
|---|---|---|---|---|
| No. | Claimant | General Description | First Page | Last Page |

**A. Pleadings and Other Legal Documents:**

| 1 | All | Trial Plan for Property Damage Claims and Scheduling Order dated November 16, 2018 | | |
| 2 | Griffin | Claimant David Griffin Answers to Interrogatories - Amended, dated December 4, 2018 | | |
| 3 | Griffin | Claimant Diane Griffin Answers to Defendant's Second Set of Interrogatories, dated December 4, 2018 | | |
| 4 | Griffin | Claimant Diane Griffin Supplemental Plaintiff Profile Form | | |

**B. Depositions & Corresponding Exhibits:**

| 1 | Griffin | Deposition Transcript of David Griffin, dated January 8, 2019 | | |
| 2 | Griffin | Deposition Transcript of Diane Griffin, dated January 8, 2019 | | |
| 3 | Griffin | Deposition Exhibit 01 - Letter dated 2/3/2005, Purchase and Sale Agreement | DGRIFFIN000121 | DGRIFFIN000176 |
| 4 | Griffin | Deposition Exhibit 02 - Mortgage | DGRIFFIN000602 | DGRIFFIN000632 |
| 5 | Griffin | Deposition Exhibit 03 - Mortgage | DGRIFFIN000633 | DGRIFFIN000646 |
| 6 | Griffin | Deposition Exhibit 04 - Special Warranty Deed - Book 209481/Page 1426 through Page 1431 | | |
| 7 | Griffin | Deposition Exhibit 05 - Aurora Loan Services Account Statement | DGRIFFIN000119 | DGRIFFIN000120 |
| 8 | Griffin | Deposition Exhibit 06 - Plaintiff Profile Form - Residential Properties | DGRIFFIN000001 | DGRIFFIN000003 |
| 9 | Griffin | Deposition Exhibit 07 - Inspection Report dated 5/11/2010 | DGRIFFIN000199 | DGRIFFIN000200 |
| 10 | Griffin | Deposition Exhibit 08 - Photographs | DGRIFFIN000201 | DGRIFFIN000601 |
| 11 | Griffin | Deposition Exhibit 09 - Palm Beach County Property Appraiser Online Search Information | | |
| 12 | Griffin | Deposition Exhibit 10 - Claimants David and Diane Griffin's Amended Answers to Defendants Interrogatories | | |
| 13 | Griffin | Deposition Exhibit 11 - Supplemental Plaintiff Profile Form - 113 Residential and Commercial Properties (Non-Knauf) | | |
| 14 | Griffin | Deposition Exhibit 12 - Warranty Deed Book 23976/Page 1784 through 1786 | | |
| 15 | Griffin | Deposition Exhibit 13 - Settlement Statement DGRIFFIN - 000179 through 000197 | DGRIFFIN000179 | DGRIFFIN000197 |
| 16 | Griffin | Deposition Exhibit 14 -  Chinese Drywall Settlement Program - Foreclosure and Short Sale Claim Form | | |
| 17 | Griffin | Deposition Exhibit 15 - Plaintiff Profile Form | Griffin, D 0001 | Griffin, D 0006 |

**C. Supporting Documentation**

| 1 | Griffin | Doc ID. 41972 - Griffin Mortgage Documents | | |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-22408-Civ-COOKE

EDUARDO AND CARMEN AMORIN, *et al.*,
individually and on behalf of others similarly
situated,

       Plaintiffs,

vs.

TAISHAN GYPSUM CO., LTD., f/k/a
SHANDONG TIASHE DONGXIN CO. LTD.,
*et al.*,

       Defendants.

_____

# Exhibit 9

**Calculations of Damages for Priority Claimants**

# John & Bertha Hernandez

EXHIBIT TO THE EXPERT WITNESS REPORT OF:
MICHAEL P. ELKIN, CPA/CFF/ABV, CFE
IN THE PRIORITY CLAIMANT TRIAL

February 19, 2019



Exhibit 9
Data and Damage Summary - John & Bertha Hernandez

*Chinese Drywall Litigation Involving Priority Claimants*

| Data: | | *Reference / Notes* |
|---|---|---|
| Address of Affected property | 3516 N. Perry Avenue | *SPPF* |
| | Tampa, FL 33603 | *SPPF* |
| Date Affected property acquired | October 1, 2007 | *SPPF* |
| Date Chinese drywall installed | March-07 | *SPPF* |
| Date moved into Affected property | October 1, 2007 | *SPPF* |
| Date first aware of Chinese drywall | January-10 | *SPPF* |
| | | |
| Move out date to alternate living | July 1, 2013 | *ROG 1, #2* |
| Date returned to Affected property | May 16, 2015 | *ROG 1, #2* |
| End date for alternate living expenses | May 16, 2015 | *ROG 1, #2* |
| | | |
| Still own property? | Y | *SPPF* |
| Bankruptcy caused by damage? | N | *SPPF* |
| Foreclosure or short sale? | N | *SPPF* |
| Affected property sold? | N | *SPPF* |
| Sale date | N/A | *SPPF* |
| Type of sale | N/A | *SPPF* |
| | | |
| Remediation status | Completed | *SPPF* |
| Remediation period | June 2013 - July 2015 | *Payments* |

| Damage Summary: | | |
|---|---|---|
| Full or Partial Out-of-Pocket Remediation Expenses | $ 381,784 | *Exh. 9.1* |
| | | |
| Other Damages | | |
| Alternate Living Expenses | $ 41,802 | *Exh. 9.1* |
| Personal Property Damage Expense | 3,454 | *Exh. 9.1* |
| Additional Damages | - | |
| | $ 45,256 | |
| | | |
| Lost Equity | TBD | |
| | | |
| Diminution in Value | TBD | |
| | | |
| Loss of Use and Enjoyment | TBD | |
| | | |
| Punitive Damages | TBD | |

Exhibit 9.1
Damage Claims Detail - John & Bertha Hernandez

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|------|--------|-------------|--------|------|--------------|----------------|-------|------------------|--------------|
| Remediation | Sierra Construction & Restoration, Inc. | Plumbing, HVAC, Electrical Rough Inspections, Cabinets | $ 80,000 | 6/19/2013 | | Invoice & Check | N/A | 366501 | 1 |
| Remediation | Sierra Construction & Restoration, Inc. | Plumbing, HVAC, Electrical Rough Inspections, Cabinets | 80,000 | 12/20/2013 | | Invoice & Check | N/A | 366501 | 2 |
| Remediation | Sierra Construction & Restoration, Inc. | Plumbing, HVAC, Electrical Rough Inspections, Cabinets | 53,101 | 7/2/2014 | | Invoice & Check | N/A | 366501 | 3 |
| Remediation | Custom Distributors | Purchase Appliances | 11,543 | 8/27/2014 | | Invoice | N/A | 366488 | All |
| Remediation | California Closets | Pantry | 4,660 | 11/4/2014 | | Invoice & CC Stmt | N/A | 366486 | 2 |
| Remediation | Ferguson Faucets | Bathroom Fixtures replaced in remediation | 584 | 12/5/2014 | | Credit Card Statement | N/A | 366497 | 1 |
| Remediation | California Closets | Pantry | 4,660 | 12/16/2014 | | Invoice & CC Stmt | N/A | 366486 | 3 |
| Remediation | Sierra Construction & Restoration, Inc. | Plumbing, HVAC, Electrical Rough Inspections, Cabinets | 90,705 | 12/30/2014 | | Invoice & Check | N/A | 366501 | 4 |
| Remediation | California Closets | Pantry | 1,860 | 1/29/2015 | | Invoice & CC Stmt | N/A | 366486 | 5 |
| Remediation | Tampa Tile | Kitchen Tile | 514 | 2/9/2015 | | Credit Card Statement | N/A | 366502 | 3 |
| Remediation | Tampa Tile | Kitchen Tile | 274 | 2/20/2015 | | Credit Card Statement | N/A | 366502 | 3 |
| Remediation | California Closets | Pantry | 1,280 | 3/17/2015 | | Invoice & CC Stmt | N/A | 366486 | 5 |
| Remediation | Capri Pro Painters | Repaint Interior | 4,757 | 5/14/2015 | | Invoice | Hernandez Dep.0000149 | Exhibit 10 | 4 |
| Remediation | Borter Glass Co., Inc | Furnished and Installed Master Bath Vanity Wall | 714 | 6/20/2015 | | Invoice & Check | Hernandez Dep.0000150 | Exhibit 10 | 5 |
| Remediation | Borter Glass Co., Inc | Furnish Shelves for Kitchen Cabinets | 725 | 6/20/2015 | | Invoice | Hernandez Dep.0000151 | Exhibit 10 | 6 |
| Remediation | Borter Glass Co., Inc | Furnished and Installed Powder Bath Vanity Wall | 214 | 6/20/2015 | | Invoice | Hernandez Dep.0000152 | Exhibit 10 | 7 |
| Remediation | Sierra Construction & Restoration, Inc. | Plumbing, HVAC, Electrical Rough Inspections, Cabinets | 30,000 | 7/29/2015 | X | Invoice | N/A | 366501 | 6 |
| Remediation | Sierra Construction & Restoration, Inc. | Plumbing, HVAC, Electrical Rough Inspections, Cabinets | 16,194 | 7/31/2015 | | Invoice & Check | N/A | 366501 | 5 |
| **Remediation Total** | | | **$ 381,784** | | | | | | |
| Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | $ 552 | 6/1/2013 | | Lease Agreement | Hernandez Dep.0000240 | Exhibit 14 | 1 |
| Alternate Living Expenses | Florida Executive Property Services | Application Fee | 150 | 6/13/2013 | | Receipt | 000336 | Exhibit 16 | 4 |
| Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,400 | 7/2/2013 | | Check | N/A | 366500 | 1 |
| Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,400 | 7/30/2013 | | Check | N/A | 366500 | 2 |
| Alternate Living Expenses | Pro Carpet | Clean Carpet in Rental | 95 | 8/13/2013 | | Invoice | Hernandez Dep.0000246 | Exhibit 14 | 7 |
| Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 260 | 8/28/2013 | | Invoice | Hernandez Dep.0000239 | Exhibit 15 | 42 |
| Alternate Living Expenses | Coleman World Group | Moving Expenses - To Rental House | 1,190 | 8/28/2013 | | Invoice | 000341 | Exhibit 16 | 9 |
| Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,400 | 8/30/2013 | | Check | N/A | 366500 | 3 |
| Alternate Living Expenses | City of Tampa | Water Bill | 144 | 9/16/2013 | | Invoice | Hernandez Dep.0000219 | Exhibit 15 | 22 |
| Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 242 | 9/27/2013 | | Invoice | Hernandez Dep.0000238 | Exhibit 15 | 41 |
| Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,400 | 9/30/2013 | | Check | N/A | 366500 | 4 |
| Alternate Living Expenses | City of Tampa | Water Bill | 59 | 10/16/2013 | | Invoice | Hernandez Dep.0000218 | Exhibit 15 | 21 |
| Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 191 | 10/29/2013 | | Invoice | Hernandez Dep.0000237 | Exhibit 15 | 40 |
| Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,400 | 10/30/2013 | | Check | N/A | 366500 | 5 |
| Alternate Living Expenses | City of Tampa | Water Bill | 59 | 11/14/2013 | | Invoice | Hernandez Dep.0000217 | Exhibit 15 | 20 |
| Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 134 | 11/27/2013 | | Invoice | Hernandez Dep.0000236 | Exhibit 15 | 39 |
| Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,400 | 11/30/2013 | | Check | N/A | 366500 | 6 |
| Alternate Living Expenses | City of Tampa | Water Bill | 56 | 12/13/2013 | | Invoice | Hernandez Dep.0000216 | Exhibit 15 | 19 |
| Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,400 | 12/30/2013 | | Check | N/A | 366500 | 7 |
| Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 160 | 12/30/2013 | | Invoice | Hernandez Dep.0000235 | Exhibit 15 | 38 |
| Alternate Living Expenses | City of Tampa | Water Bill | 56 | 1/16/2014 | | Invoice | Hernandez Dep.0000214 | Exhibit 15 | 17 |
| Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 192 | 1/29/2014 | | Invoice | Hernandez Dep.0000234 | Exhibit 15 | 37 |
| Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,400 | 1/30/2014 | | Check | N/A | 366500 | 8 |
| Alternate Living Expenses | City of Tampa | Water Bill | 56 | 2/14/2014 | | Invoice | Hernandez Dep.0000215 | Exhibit 15 | 18 |
| Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,400 | 2/26/2014 | | Check | N/A | 366500 | 9 |
| Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 148 | 2/27/2014 | | Invoice | Hernandez Dep.0000233 | Exhibit 15 | 36 |
| Alternate Living Expenses | City of Tampa | Water Bill | 56 | 3/14/2014 | | Invoice | Hernandez Dep.0000213 | Exhibit 15 | 16 |
| Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 162 | 3/28/2014 | | Invoice | Hernandez Dep.0000232 | Exhibit 15 | 35 |
| Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,400 | 3/31/2014 | | Check | N/A | 366500 | 10 |
| Alternate Living Expenses | City of Tampa | Water Bill | 56 | 4/15/2014 | | Invoice | Hernandez Dep.0000212 | Exhibit 15 | 15 |
| Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,400 | 4/29/2014 | | Check | N/A | 366500 | 11 |
| Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 139 | 4/29/2014 | | Invoice | Hernandez Dep.0000231 | Exhibit 15 | 34 |

Exhibit 9.1
Damage Claims Detail - John & Bertha Hernandez

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Alternate Living Expenses | City of Tampa | Water Bill | 64 | 5/15/2014 | | Invoice | Hernandez Dep.0000211 | Exhibit 15 | 14 |
| Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 197 | 5/29/2014 | | Invoice | Hernandez Dep.0000230 | Exhibit 15 | 33 |
| Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,400 | 6/2/2014 | | Check | N/A | 366500 | 12 |
| Alternate Living Expenses | City of Tampa | Water Bill | 58 | 6/16/2014 | | Invoice | Hernandez Dep.0000210 | Exhibit 15 | 13 |
| Alternate Living Expenses | Florida Executive Property Services | Rent | 1,475 | 6/30/2014 | | Check | 000333 | Exhibit 16 | 1 |
| Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 268 | 6/30/2014 | | Invoice | Hernandez Dep.0000229 | Exhibit 15 | 32 |
| Alternate Living Expenses | City of Tampa | Water Bill | 59 | 7/16/2014 | | Invoice | Hernandez Dep.0000209 | Exhibit 15 | 12 |
| Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 282 | 7/30/2014 | | Invoice | Hernandez Dep.0000228 | Exhibit 15 | 31 |
| Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,475 | 7/31/2014 | | Check | N/A | 366500 | 14 |
| Alternate Living Expenses | City of Tampa | Water Bill | 60 | 8/15/2014 | | Invoice | Hernandez Dep.0000208 | Exhibit 15 | 11 |
| Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 226 | 8/28/2014 | | Invoice | Hernandez Dep.0000227 | Exhibit 15 | 30 |
| Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,475 | 8/29/2014 | | Check | N/A | 366500 | 15 |
| Alternate Living Expenses | City of Tampa | Water Bill | 56 | 9/16/2014 | | Invoice | Hernandez Dep.0000207 | Exhibit 15 | 10 |
| Alternate Living Expenses | Florida Executive Property Services | Rent | 1,247 | 9/29/2014 | | Check | 000334 | Exhibit 16 | 2 |
| Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 224 | 9/29/2014 | x | N/A | Hernandez Dep.0000226 | Exhibit 15 | 29 |
| Alternate Living Expenses | City of Tampa | Water Bill | 57 | 10/15/2014 | | Invoice | Hernandez Dep.0000206 | Exhibit 15 | 9 |
| Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 190 | 10/29/2014 | | Invoice | Hernandez Dep.0000226 | Exhibit 15 | 29 |
| Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,475 | 10/31/2014 | | Check | N/A | 366499 | 1 |
| Alternate Living Expenses | City of Tampa | Water Bill | 60 | 11/14/2014 | | Invoice | Hernandez Dep.0000205 | Exhibit 15 | 8 |
| Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,475 | 11/26/2014 | | Check | N/A | 366499 | 2 |
| Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 157 | 11/28/2014 | | Invoice | Hernandez Dep.0000225 | Exhibit 15 | 28 |
| Alternate Living Expenses | City of Tampa | Water Bill | 60 | 12/15/2014 | | Invoice | Hernandez Dep.0000204 | Exhibit 15 | 7 |
| Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 175 | 12/30/2014 | | Invoice | Hernandez Dep.0000224 | Exhibit 15 | 27 |
| Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,475 | 12/31/2014 | | Check | N/A | 366499 | 3 |
| Alternate Living Expenses | City of Tampa | Water Bill | 65 | 1/16/2015 | | Invoice | Hernandez Dep.0000203 | Exhibit 15 | 6 |
| Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 166 | 1/29/2015 | | Invoice | Hernandez Dep.0000223 | Exhibit 15 | 26 |
| Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,475 | 2/7/2015 | | Check | N/A | 366499 | 4 |
| Alternate Living Expenses | City of Tampa | Water Bill | 57 | 2/13/2015 | | Invoice | Hernandez Dep.0000202 | Exhibit 15 | 5 |
| Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 164 | 2/27/2015 | | Invoice | Hernandez Dep.0000222 | Exhibit 15 | 25 |
| Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,475 | 3/7/2015 | | Check | N/A | 366499 | 5 |
| Alternate Living Expenses | City of Tampa | Water Bill | 60 | 3/16/2015 | | Invoice | Hernandez Dep.0000201 | Exhibit 15 | 4 |
| Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 160 | 3/30/2015 | | Invoice | Hernandez Dep.0000221 | Exhibit 15 | 24 |
| Alternate Living Expenses | Florida Executive Property Services | Rent | 1,475 | 4/6/2015 | | Check | 000335 | Exhibit 16 | 3 |
| Alternate Living Expenses | City of Tampa | Water Bill | 57 | 4/15/2015 | | Invoice | Hernandez Dep.0000200 | Exhibit 15 | 3 |
| Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 722 | 5/1/2015 | | Note to Landlord/Depo | Hernandez Dep.0000241 | Exhibit 14 | 113 |
| Alternate Living Expenses | City of Tampa | Water Bill | 57 | 5/15/2015 | | Invoice | Hernandez Dep.0000199 | Exhibit 15 | 2 |
| Alternate Living Expenses | City of Tampa | Water Bill | 35 | 5/19/2015 | | Invoice | Hernandez Dep.0000198 | Exhibit 15 | 1 |
| Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 384 | 5/19/2015 | | Invoice | Hernandez Dep.0000220 | Exhibit 15 | 23 |
| Alternate Living Expenses | Coleman World Group | Moving Expenses - From Rental House | 1,798 | 5/21/2015 | | Invoice | 000338 | Exhibit 16 | 6 |
| Alternate Living Expenses | Florida Executive Property Services | Security Deposit deduction | 405 | 6/9/2015 | | Receipt | Hernandez Dep.0000245 | Exhibit 14 | 6 |
| **Alternate Living Expenses Total** | | | **$ 41,802** | | | | | | |
| Personal Property Damage Expense | Triple H Air Conditioning Inc | Fix A/C | 58 | 4/14/2008 | | Invoice | N/A | 365781 | 9 |
| Personal Property Damage Expense | Triple H Air Conditioning Inc | Fix A/C | 1,200 | 7/15/2008 | | Invoice | N/A | 365781 | 8 |
| Personal Property Damage Expense | Triple H Air Conditioning Inc | Fix A/C | 500 | 12/4/2008 | | Invoice | N/A | 365781 | 7 |
| Personal Property Damage Expense | Florida AC Inc | Fix A/C | 90 | 5/27/2009 | | Invoice | N/A | 365781 | 6 |
| Personal Property Damage Expense | Florida AC Inc | Fix A/C | 300 | 8/18/2009 | | Invoice | N/A | 365781 | 4 |
| Personal Property Damage Expense | Triple H Air Conditioning Inc | Fix A/C | 80 | 1/12/2010 | | Invoice | N/A | 365781 | 2 |
| Personal Property Damage Expense | Kenny's A/C | Fix A/C | 743 | 1/18/2010 | | Invoice | N/A | 365781 | 1 |
| Personal Property Damage Expense | Triple H Air Conditioning Inc | Fix A/C | 227 | 9/26/2011 | | Invoice | N/A | 365781 | 3 |
| Personal Property Damage Expense | Aircare Solutions | Repairs to Air Conditioning | 256 | 8/26/2013 | | Invoice | 000341 | Exhibit 16 | 9 |
| **Personal Property Damages Expense Total** | | | **$ 3,454** | | | | | | |

Exhibit 9.3

Calculation of Prejudgment Interest Summary - John & Bertha Hernandez

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Vendor | Description | Amount | Total Interest Through 7/22/2019 |
|---|---|---|---|---|---|---|
| 6/19/2013 | 7/19/2013 | Remediation | Sierra Construction & Restoration, Inc. | Plumbing, HVAC, Electrical Rough Inspections, Cabinets | $ 80,000 | $ 24,763 |
| 12/20/2013 | 1/19/2014 | Remediation | Sierra Construction & Restoration, Inc. | Plumbing, HVAC, Electrical Rough Inspections, Cabinets | 80,000 | 22,847 |
| 7/2/2014 | 8/1/2014 | Remediation | Sierra Construction & Restoration, Inc. | Plumbing, HVAC, Electrical Rough Inspections, Cabinets | 53,101 | 13,825 |
| 8/27/2014 | 9/26/2014 | Remediation | Custom Distributors | Purchase Appliances | 11,543 | 2,921 |
| 11/4/2014 | 12/4/2014 | Remediation | California Closets | Pantry | 4,660 | 1,137 |
| 12/5/2014 | 1/4/2015 | Remediation | Ferguson Faucets | Bathroom Fixtures replaced in remediation | 584 | 140 |
| 12/16/2014 | 1/15/2015 | Remediation | California Closets | Pantry | 4,660 | 1,112 |
| 12/30/2014 | 1/29/2015 | Remediation | Sierra Construction & Restoration, Inc. | Plumbing, HVAC, Electrical Rough Inspections, Cabinets | 90,705 | 21,478 |
| 1/29/2015 | 2/28/2015 | Remediation | California Closets | Pantry | 1,860 | 433 |
| 2/9/2015 | 3/11/2015 | Remediation | Tampa Tile | Kitchen Tile | 514 | 119 |
| 2/20/2015 | 3/22/2015 | Remediation | Tampa Tile | Kitchen Tile | 274 | 63 |
| 3/17/2015 | 4/16/2015 | Remediation | California Closets | Pantry | 1,280 | 290 |
| 5/14/2015 | 6/13/2015 | Remediation | Capri Pro Painters | Repaint Interior | 4,757 | 1,043 |
| 6/20/2015 | 7/20/2015 | Remediation | Borter Glass Co., Inc | Furnished and Installed Master Bath Vanity Wall | 714 | 153 |
| 6/20/2015 | 7/20/2015 | Remediation | Borter Glass Co., Inc | Furnish Shelves for Kitchen Cabinets | 725 | 155 |
| 6/20/2015 | 7/20/2015 | Remediation | Borter Glass Co., Inc | Furnished and Installed Powder Bath Vanity Wall | 214 | 46 |
| 7/29/2015 | 8/28/2015 | Remediation | Sierra Construction & Restoration, Inc. | Plumbing, HVAC, Electrical Rough Inspections, Cabinets | 30,000 | 6,280 |
| 7/31/2015 | 8/30/2015 | Remediation | Sierra Construction & Restoration, Inc. | Plumbing, HVAC, Electrical Rough Inspections, Cabinets | 16,194 | 3,386 |
| | | **Remediation Total** | | | $ 381,784 | $ 100,191 |
| 6/1/2013 | 7/1/2013 | Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | $ 552 | $ 172 |
| 6/13/2013 | 7/13/2013 | Alternate Living Expenses | Florida Executive Property Services | Application Fee | 150 | 47 |
| 7/2/2013 | 8/1/2013 | Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,400 | 431 |
| 7/30/2013 | 8/29/2013 | Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,400 | 426 |
| 8/13/2013 | 9/12/2013 | Alternate Living Expenses | Pro Carpet | Clean Carpet in Rental | 95 | 29 |
| 8/28/2013 | 9/27/2013 | Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 260 | 78 |
| 8/28/2013 | 9/27/2013 | Alternate Living Expenses | Coleman World Group | Moving Expenses - To Rental House | 1,190 | 357 |
| 8/30/2013 | 9/29/2013 | Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,400 | 420 |
| 9/16/2013 | 10/16/2013 | Alternate Living Expenses | City of Tampa | Water Bill | 144 | 43 |
| 9/27/2013 | 10/27/2013 | Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 242 | 72 |
| 9/30/2013 | 10/30/2013 | Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,400 | 415 |
| 10/16/2013 | 11/15/2013 | Alternate Living Expenses | City of Tampa | Water Bill | 59 | 17 |
| 10/29/2013 | 11/28/2013 | Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 191 | 56 |
| 10/30/2013 | 11/29/2013 | Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,400 | 409 |
| 11/14/2013 | 12/14/2013 | Alternate Living Expenses | City of Tampa | Water Bill | 59 | 17 |
| 11/27/2013 | 12/27/2013 | Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 134 | 39 |
| 11/30/2013 | 12/30/2013 | Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,400 | 403 |
| 12/13/2013 | 1/12/2014 | Alternate Living Expenses | City of Tampa | Water Bill | 56 | 16 |
| 12/30/2013 | 1/29/2014 | Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,400 | 398 |
| 12/30/2013 | 1/29/2014 | Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 160 | 45 |
| 1/16/2014 | 2/15/2014 | Alternate Living Expenses | City of Tampa | Water Bill | 56 | 16 |
| 1/29/2014 | 2/28/2014 | Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 192 | 54 |
| 1/30/2014 | 3/1/2014 | Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,400 | 392 |
| 2/14/2014 | 3/16/2014 | Alternate Living Expenses | City of Tampa | Water Bill | 56 | 16 |
| 2/26/2014 | 3/28/2014 | Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,400 | 387 |
| 2/27/2014 | 3/29/2014 | Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 148 | 41 |
| 3/14/2014 | 4/13/2014 | Alternate Living Expenses | City of Tampa | Water Bill | 56 | 15 |
| 3/28/2014 | 4/27/2014 | Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 162 | 44 |
| 3/31/2014 | 4/30/2014 | Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,400 | 381 |
| 4/15/2014 | 5/15/2014 | Alternate Living Expenses | City of Tampa | Water Bill | 56 | 15 |
| 4/29/2014 | 5/29/2014 | Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,400 | 376 |
| 4/29/2014 | 5/29/2014 | Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 139 | 37 |
| 5/15/2014 | 6/14/2014 | Alternate Living Expenses | City of Tampa | Water Bill | 64 | 17 |
| 5/29/2014 | 6/28/2014 | Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 197 | 52 |
| 6/2/2014 | 7/2/2014 | Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,400 | 370 |
| 6/16/2014 | 7/16/2014 | Alternate Living Expenses | City of Tampa | Water Bill | 58 | 15 |
| 6/30/2014 | 7/30/2014 | Alternate Living Expenses | Florida Executive Property Services | Rent | 1,475 | 384 |
| 6/30/2014 | 7/30/2014 | Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 268 | 70 |
| 7/16/2014 | 8/15/2014 | Alternate Living Expenses | City of Tampa | Water Bill | 59 | 15 |
| 7/30/2014 | 8/29/2014 | Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 282 | 72 |
| 7/31/2014 | 8/30/2014 | Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,475 | 378 |
| 8/15/2014 | 9/14/2014 | Alternate Living Expenses | City of Tampa | Water Bill | 60 | 15 |
| 8/28/2014 | 9/27/2014 | Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 226 | 57 |
| 8/29/2014 | 9/28/2014 | Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,475 | 373 |
| 9/16/2014 | 10/16/2014 | Alternate Living Expenses | City of Tampa | Water Bill | 56 | 14 |
| 9/29/2014 | 10/29/2014 | Alternate Living Expenses | Florida Executive Property Services | Rent | 1,247 | 310 |
| 9/29/2014 | 10/29/2014 | Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 224 | 56 |
| 10/15/2014 | 11/14/2014 | Alternate Living Expenses | City of Tampa | Water Bill | 57 | 14 |
| 10/29/2014 | 11/28/2014 | Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 190 | 47 |
| 10/31/2014 | 11/30/2014 | Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,475 | 361 |
| 11/14/2014 | 12/14/2014 | Alternate Living Expenses | City of Tampa | Water Bill | 60 | 14 |
| 11/26/2014 | 12/26/2014 | Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,475 | 356 |
| 11/28/2014 | 12/28/2014 | Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 157 | 38 |
| 12/15/2014 | 1/14/2015 | Alternate Living Expenses | City of Tampa | Water Bill | 60 | 14 |
| 12/30/2014 | 1/29/2015 | Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 175 | 41 |
| 12/31/2014 | 1/30/2015 | Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,475 | 349 |
| 1/16/2015 | 2/15/2015 | Alternate Living Expenses | City of Tampa | Water Bill | 65 | 15 |
| 1/29/2015 | 2/28/2015 | Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 166 | 39 |
| 2/7/2015 | 3/9/2015 | Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,475 | 342 |
| 2/13/2015 | 3/15/2015 | Alternate Living Expenses | City of Tampa | Water Bill | 57 | 13 |

Exhibit 9.3
Calculation of Prejudgment Interest Summary - John & Bertha Hernandez

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Vendor | Description | Amount | Total Interest Through 7/22/2019 |
|---|---|---|---|---|---|---|
| 2/27/2015 | 3/29/2015 | Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 164 | 38 |
| 3/7/2015 | 4/6/2015 | Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,475 | 336 |
| 3/16/2015 | 4/15/2015 | Alternate Living Expenses | City of Tampa | Water Bill | 60 | 14 |
| 3/30/2015 | 4/29/2015 | Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 160 | 36 |
| 4/6/2015 | 5/6/2015 | Alternate Living Expenses | Florida Executive Property Services | Rent | 1,475 | 331 |
| 4/15/2015 | 5/15/2015 | Alternate Living Expenses | City of Tampa | Water Bill | 57 | 13 |
| 5/1/2015 | 5/31/2015 | Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 722 | 159 |
| 5/15/2015 | 6/14/2015 | Alternate Living Expenses | City of Tampa | Water Bill | 57 | 13 |
| 5/19/2015 | 6/18/2015 | Alternate Living Expenses | City of Tampa | Water Bill | 35 | 8 |
| 5/19/2015 | 6/18/2015 | Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 384 | 84 |
| 5/21/2015 | 6/20/2015 | Alternate Living Expenses | Coleman World Group | Moving Expenses - From Rental House | 1,798 | 393 |
| 6/9/2015 | 7/9/2015 | Alternate Living Expenses | Florida Executive Property Services | Security Deposit deduction | 405 | 87 |
| | | **Alternate Living Expenses Total** | | | $ 41,802 | $ 11,020 |
| 4/14/2008 | 5/14/2008 | Personal Property Damage Expense | Triple H Air Conditioning Inc | Fix A/C | $ 58 | $ 38 |
| 7/15/2008 | 8/14/2008 | Personal Property Damage Expense | Triple H Air Conditioning Inc | Fix A/C | 1,200 | 746 |
| 12/4/2008 | 1/3/2009 | Personal Property Damage Expense | Triple H Air Conditioning Inc | Fix A/C | 500 | 290 |
| 5/27/2009 | 6/26/2009 | Personal Property Damage Expense | Florida AC Inc | Fix A/C | 90 | 49 |
| 8/18/2009 | 9/17/2009 | Personal Property Damage Expense | Florida AC Inc | Fix A/C | 300 | 157 |
| 1/12/2010 | 2/11/2010 | Personal Property Damage Expense | Triple H Air Conditioning Inc | Fix A/C | 80 | 39 |
| 1/18/2010 | 2/17/2010 | Personal Property Damage Expense | Kenny's A/C | Fix A/C | 743 | 365 |
| 9/26/2011 | 10/26/2011 | Personal Property Damage Expense | Triple H Air Conditioning Inc | Fix A/C | 227 | 89 |
| 8/26/2013 | 9/25/2013 | Personal Property Damage Expense | Aircare Solutions | Repairs to Air Conditioning | 256 | 77 |
| | | **Personal Property Damages Expense Total** | | | $ 3,454 | $ 1,850 |

Exhibit 9.3A
Calculation of Prejudgment Interest Detail - John & Bertha Hernandez

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Amount | 12/31/2008 | 12/31/2009 | 12/31/2010 | 9/30/2011 | 12/31/2011 | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 3/31/2016 | 6/30/2016 | 9/30/2016 | 12/31/2016 | 3/31/2017 | 6/30/2017 | 9/30/2017 | 12/31/2017 | 3/31/2018 | 6/30/2018 | 9/30/2018 | 12/31/2018 | 7/22/2019 | Total Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/19/2013 | 7/19/2013 | Remediation | $ 80,000 | $ - | $ - | $ - | $ - | $ - | $ - | $ 1,718 | $ 3,800 | $ 3,800 | $ 945 | $ 951 | $ 973 | $ 987 | $ 980 | $ 1,007 | $ 1,042 | $ 1,079 | $ 1,091 | $ 1,141 | $ 1,204 | $ 1,228 | $ 2,816 | 24,763 |
| 12/20/2013 | 1/19/2014 | Remediation | 80,000 | - | - | - | - | - | - | - | 3,602 | 3,800 | 945 | 951 | 973 | 987 | 980 | 1,007 | 1,042 | 1,079 | 1,091 | 1,141 | 1,204 | 1,228 | 2,816 | 22,847 |
| 7/2/2014 | 8/1/2014 | Remediation | 53,101 | - | - | - | - | - | - | - | 1,050 | 2,522 | 627 | 631 | 646 | 655 | 651 | 669 | 692 | 716 | 724 | 757 | 799 | 815 | 1,869 | 13,825 |
| 8/27/2014 | 9/26/2014 | Remediation | 11,543 | - | - | - | - | - | - | - | 144 | 548 | 136 | 137 | 140 | 142 | 141 | 145 | 150 | 156 | 157 | 165 | 174 | 177 | 406 | 2,921 |
| 11/4/2014 | 12/4/2014 | Remediation | 4,660 | - | - | - | - | - | - | - | 16 | 221 | 55 | 55 | 57 | 58 | 57 | 59 | 61 | 63 | 64 | 66 | 70 | 72 | 164 | 1,137 |
| 12/5/2014 | 1/4/2015 | Remediation | 584 | - | - | - | - | - | - | - | - | 27 | 7 | 7 | 7 | 7 | 7 | 7 | 8 | 8 | 8 | 8 | 9 | 9 | 21 | 140 |
| 12/16/2014 | 1/15/2015 | Remediation | 4,660 | - | - | - | - | - | - | - | - | 212 | 55 | 55 | 57 | 58 | 57 | 59 | 61 | 63 | 64 | 66 | 70 | 72 | 164 | 1,112 |
| 12/30/2014 | 1/29/2015 | Remediation | 90,705 | - | - | - | - | - | - | - | - | 3,966 | 1,071 | 1,078 | 1,104 | 1,119 | 1,112 | 1,142 | 1,182 | 1,223 | 1,237 | 1,294 | 1,365 | 1,392 | 3,193 | 21,478 |
| 1/29/2015 | 2/28/2015 | Remediation | 1,860 | - | - | - | - | - | - | - | - | 74 | 22 | 22 | 23 | 23 | 23 | 24 | 25 | 25 | 27 | 28 | 29 | 65 | 433 |
| 2/9/2015 | 3/11/2015 | Remediation | 514 | - | - | - | - | - | - | - | - | 20 | 6 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 7 | 8 | 8 | 18 | 119 |
| 2/20/2015 | 3/22/2015 | Remediation | 274 | - | - | - | - | - | - | - | - | 10 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 4 | 4 | 10 | 63 |
| 3/17/2015 | 4/16/2015 | Remediation | 1,280 | - | - | - | - | - | - | - | - | 43 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 17 | 17 | 18 | 19 | 20 | 45 | 290 |
| 5/14/2015 | 6/13/2015 | Remediation | 4,757 | - | - | - | - | - | - | - | - | 124 | 56 | 57 | 58 | 59 | 58 | 60 | 62 | 64 | 65 | 68 | 72 | 73 | 167 | 1,043 |
| 6/20/2015 | 7/20/2015 | Remediation | 714 | - | - | - | - | - | - | - | - | 15 | 8 | 8 | 9 | 9 | 9 | 9 | 9 | 10 | 10 | 10 | 11 | 11 | 25 | 153 |
| 6/20/2015 | 7/20/2015 | Remediation | 725 | - | - | - | - | - | - | - | - | 15 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 10 | 10 | 10 | 11 | 11 | 26 | 155 |
| 6/20/2015 | 7/20/2015 | Remediation | 214 | - | - | - | - | - | - | - | - | 5 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 8 | 46 |
| 7/29/2015 | 8/28/2015 | Remediation | 30,000 | - | - | - | - | - | - | - | - | 488 | 354 | 357 | 365 | 370 | 368 | 378 | 391 | 405 | 409 | 428 | 451 | 461 | 1,056 | 6,280 |
| 7/31/2015 | 8/30/2015 | Remediation | 16,194 | - | - | - | - | - | - | - | - | 259 | 191 | 192 | 197 | 200 | 198 | 204 | 211 | 218 | 221 | 231 | 244 | 249 | 570 | 3,386 |
| | | **Remediation Total** | $ 381,784 | $ - | $ - | $ - | $ - | $ - | $ - | $ 1,718 | $ 8,613 | $ 16,152 | $ 4,509 | $ 4,537 | $ 4,645 | $ 4,712 | $ 4,679 | $ 4,807 | $ 4,975 | $ 5,148 | $ 5,206 | $ 5,445 | $ 5,745 | $ 5,860 | $ 13,441 | 100,191 |
| 6/1/2013 | 7/1/2013 | Alternate Living Expenses | $ 552 | $ - | $ - | $ - | $ - | $ - | $ - | $ 13 | $ 26 | $ 7 | $ 7 | $ 7 | $ 7 | $ 7 | $ 7 | $ 7 | $ 7 | $ 7 | $ 7 | $ 8 | $ 8 | $ 8 | $ 19 | 172 |
| 6/13/2013 | 7/13/2013 | Alternate Living Expenses | 150 | - | - | - | - | - | - | 3 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 47 |
| 7/2/2013 | 8/1/2013 | Alternate Living Expenses | 1,400 | - | - | - | - | - | - | 28 | 67 | 67 | 17 | 17 | 17 | 17 | 17 | 18 | 18 | 19 | 19 | 20 | 21 | 21 | 49 | 431 |
| 7/30/2013 | 8/29/2013 | Alternate Living Expenses | 1,400 | - | - | - | - | - | - | 23 | 67 | 67 | 17 | 17 | 17 | 17 | 17 | 18 | 18 | 19 | 19 | 20 | 21 | 21 | 49 | 426 |
| 8/13/2013 | 9/12/2013 | Alternate Living Expenses | 95 | - | - | - | - | - | - | 1 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 29 |
| 8/28/2013 | 9/27/2013 | Alternate Living Expenses | 260 | - | - | - | - | - | - | 3 | 12 | 12 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 4 | 9 | 78 |
| 8/28/2013 | 9/27/2013 | Alternate Living Expenses | 1,190 | - | - | - | - | - | - | 15 | 57 | 57 | 14 | 14 | 14 | 14 | 15 | 15 | 15 | 16 | 16 | 16 | 17 | 18 | 18 | 42 | 357 |
| 8/30/2013 | 9/29/2013 | Alternate Living Expenses | 1,400 | - | - | - | - | - | - | 17 | 67 | 67 | 17 | 17 | 17 | 17 | 17 | 18 | 18 | 19 | 19 | 20 | 21 | 21 | 49 | 420 |
| 9/16/2013 | 10/16/2013 | Alternate Living Expenses | 144 | - | - | - | - | - | - | 1 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 43 |
| 9/27/2013 | 10/27/2013 | Alternate Living Expenses | 242 | - | - | - | - | - | - | 2 | 12 | 12 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 9 | 72 |
| 9/30/2013 | 10/30/2013 | Alternate Living Expenses | 1,400 | - | - | - | - | - | - | 11 | 67 | 67 | 17 | 17 | 17 | 17 | 17 | 18 | 18 | 19 | 19 | 20 | 21 | 21 | 49 | 415 |
| 10/16/2013 | 11/15/2013 | Alternate Living Expenses | 59 | - | - | - | - | - | - | 0 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 17 |
| 10/29/2013 | 11/28/2013 | Alternate Living Expenses | 191 | - | - | - | - | - | - | 1 | 9 | 9 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 7 | 56 |
| 10/30/2013 | 11/29/2013 | Alternate Living Expenses | 1,400 | - | - | - | - | - | - | 6 | 67 | 67 | 17 | 17 | 17 | 17 | 17 | 18 | 18 | 19 | 19 | 20 | 21 | 21 | 49 | 409 |
| 11/14/2013 | 12/14/2013 | Alternate Living Expenses | 59 | - | - | - | - | - | - | 0 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 17 |
| 11/27/2013 | 12/27/2013 | Alternate Living Expenses | 134 | - | - | - | - | - | - | 0 | 6 | 6 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 39 |
| 11/30/2013 | 12/30/2013 | Alternate Living Expenses | 1,400 | - | - | - | - | - | - | 0 | 67 | 67 | 17 | 17 | 17 | 17 | 17 | 18 | 18 | 19 | 19 | 20 | 21 | 21 | 49 | 403 |
| 12/13/2013 | 1/12/2014 | Alternate Living Expenses | 56 | - | - | - | - | - | - | - | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 16 |
| 12/30/2013 | 1/29/2014 | Alternate Living Expenses | 1,400 | - | - | - | - | - | - | - | 61 | 67 | 17 | 17 | 17 | 17 | 17 | 18 | 18 | 19 | 19 | 20 | 21 | 21 | 49 | 398 |
| 12/30/2013 | 1/29/2014 | Alternate Living Expenses | 160 | - | - | - | - | - | - | - | 7 | 8 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 6 | 45 |
| 1/16/2014 | 2/15/2014 | Alternate Living Expenses | 56 | - | - | - | - | - | - | - | 2 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 16 |
| 1/29/2014 | 2/28/2014 | Alternate Living Expenses | 192 | - | - | - | - | - | - | - | 8 | 9 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 7 | 54 |
| 1/30/2014 | 3/1/2014 | Alternate Living Expenses | 1,400 | - | - | - | - | - | - | - | 56 | 67 | 17 | 17 | 17 | 17 | 17 | 18 | 18 | 19 | 19 | 20 | 21 | 21 | 49 | 392 |
| 2/14/2014 | 3/16/2014 | Alternate Living Expenses | 56 | - | - | - | - | - | - | - | 2 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 16 |
| 2/26/2014 | 3/28/2014 | Alternate Living Expenses | 1,400 | - | - | - | - | - | - | - | 51 | 67 | 17 | 17 | 17 | 17 | 17 | 18 | 18 | 19 | 19 | 20 | 21 | 21 | 49 | 387 |
| 2/27/2014 | 3/29/2014 | Alternate Living Expenses | 148 | - | - | - | - | - | - | - | 5 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 41 |
| 3/14/2014 | 4/13/2014 | Alternate Living Expenses | 56 | - | - | - | - | - | - | - | 2 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 15 |
| 3/28/2014 | 4/27/2014 | Alternate Living Expenses | 162 | - | - | - | - | - | - | - | 5 | 8 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 3 | 6 | 44 |
| 3/31/2014 | 4/30/2014 | Alternate Living Expenses | 1,400 | - | - | - | - | - | - | - | 45 | 67 | 17 | 17 | 17 | 17 | 17 | 18 | 18 | 19 | 19 | 20 | 21 | 21 | 49 | 381 |
| 4/15/2014 | 5/15/2014 | Alternate Living Expenses | 56 | - | - | - | - | - | - | - | 2 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 14 |
| 4/29/2014 | 5/29/2014 | Alternate Living Expenses | 1,400 | - | - | - | - | - | - | - | 39 | 67 | 17 | 17 | 17 | 17 | 17 | 18 | 18 | 19 | 19 | 20 | 21 | 21 | 49 | 376 |
| 4/29/2014 | 5/29/2014 | Alternate Living Expenses | 139 | - | - | - | - | - | - | - | 4 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 37 |
| 5/15/2014 | 6/14/2014 | Alternate Living Expenses | 64 | - | - | - | - | - | - | - | 2 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 17 |
| 5/29/2014 | 6/28/2014 | Alternate Living Expenses | 197 | - | - | - | - | - | - | - | 5 | 9 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 7 | 52 |
| 6/2/2014 | 7/2/2014 | Alternate Living Expenses | 1,400 | - | - | - | - | - | - | - | 33 | 67 | 17 | 17 | 17 | 17 | 17 | 18 | 18 | 19 | 19 | 20 | 21 | 21 | 49 | 370 |
| 6/16/2014 | 7/16/2014 | Alternate Living Expenses | 58 | - | - | - | - | - | - | - | 1 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 15 |
| 6/30/2014 | 7/30/2014 | Alternate Living Expenses | 1,475 | - | - | - | - | - | - | - | 30 | 70 | 17 | 18 | 18 | 18 | 18 | 19 | 19 | 20 | 20 | 21 | 22 | 23 | 52 | 384 |
| 6/30/2014 | 7/30/2014 | Alternate Living Expenses | 268 | - | - | - | - | - | - | - | 5 | 13 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 4 | 4 | 4 | 9 | 70 |
| 7/16/2014 | 8/15/2014 | Alternate Living Expenses | 59 | - | - | - | - | - | - | - | 1 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 15 |
| 7/30/2014 | 8/29/2014 | Alternate Living Expenses | 282 | - | - | - | - | - | - | - | 5 | 13 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 10 | 72 |
| 7/31/2014 | 8/30/2014 | Alternate Living Expenses | 1,475 | - | - | - | - | - | - | - | 24 | 70 | 17 | 18 | 18 | 18 | 18 | 19 | 19 | 20 | 20 | 21 | 22 | 23 | 52 | 378 |
| 8/15/2014 | 9/14/2014 | Alternate Living Expenses | 60 | - | - | - | - | - | - | - | - | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 15 |
| 8/28/2014 | 9/27/2014 | Alternate Living Expenses | 226 | - | - | - | - | - | - | - | 3 | 11 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 8 | 57 |
| 8/29/2014 | 9/28/2014 | Alternate Living Expenses | 1,475 | - | - | - | - | - | - | - | 18 | 70 | 17 | 18 | 18 | 18 | 18 | 19 | 19 | 20 | 20 | 21 | 22 | 23 | 52 | 373 |
| 9/16/2014 | 10/16/2014 | Alternate Living Expenses | 56 | - | - | - | - | - | - | - | - | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 14 |
| 9/29/2014 | 10/29/2014 | Alternate Living Expenses | 1,247 | - | - | - | - | - | - | - | 10 | 59 | 15 | 15 | 15 | 15 | 15 | 16 | 16 | 17 | 17 | 18 | 19 | 19 | 44 | 310 |
| 9/29/2014 | 10/29/2014 | Alternate Living Expenses | 224 | - | - | - | - | - | - | - | 2 | 11 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 8 | 56 |
| 10/15/2014 | 11/14/2014 | Alternate Living Expenses | 57 | - | - | - | - | - | - | - | 0 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 14 |
| 10/31/2014 | 11/30/2014 | Alternate Living Expenses | 1,475 | - | - | - | - | - | - | - | 6 | 70 | 17 | 18 | 18 | 18 | 18 | 19 | 19 | 20 | 20 | 21 | 22 | 23 | 52 | 361 |
| 11/14/2014 | 12/14/2014 | Alternate Living Expenses | 60 | - | - | - | - | - | - | - | 0 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 14 |
| 11/26/2014 | 12/26/2014 | Alternate Living Expenses | 1,475 | - | - | - | - | - | - | - | 1 | 70 | 17 | 18 | 18 | 18 | 18 | 19 | 19 | 20 | 20 | 21 | 22 | 23 | 52 | 356 |
| 11/28/2014 | 12/28/2014 | Alternate Living Expenses | 157 | - | - | - | - | - | - | - | 0 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 6 | 38 |
| 12/15/2014 | 1/14/2015 | Alternate Living Expenses | 57 | - | - | - | - | - | - | - | - | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 14 |
| 12/30/2014 | 1/29/2015 | Alternate Living Expenses | 1,475 | - | - | - | - | - | - | - | - | 64 | 17 | 18 | 18 | 18 | 18 | 19 | 19 | 20 | 20 | 21 | 22 | 23 | 52 | 349 |
| 12/31/2014 | 1/30/2015 | Alternate Living Expenses | 1,475 | - | - | - | - | - | - | - | - | 64 | 17 | 18 | 18 | 18 | 18 | 19 | 19 | 20 | 20 | 21 | 22 | 23 | 52 | 349 |
| 1/16/2015 | 2/15/2015 | Alternate Living Expenses | 65 | - | - | - | - | - | - | - | - | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 14 |
| 1/29/2015 | 2/28/2015 | Alternate Living Expenses | 1,475 | - | - | - | - | - | - | - | - | 57 | 17 | 18 | 18 | 18 | 18 | 19 | 19 | 20 | 20 | 21 | 22 | 23 | 52 | 342 |
| 2/7/2015 | 3/9/2015 | Alternate Living Expenses | 1,475 | - | - | - | - | - | - | - | - | 54 | 17 | 18 | 18 | 18 | 18 | 19 | 19 | 20 | 20 | 21 | 22 | 23 | 52 | 339 |
| 2/15/2015 | 3/17/2015 | Alternate Living Expenses | 57 | - | - | - | - | - | - | - | - | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 13 |
| 2/23/2015 | 3/25/2015 | Alternate Living Expenses | 164 | - | - | - | - | - | - | - | - | 5 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 6 | 37 |
| 3/7/2015 | 4/6/2015 | Alternate Living Expenses | 1,475 | - | - | - | - | - | - | - | - | 49 | 17 | 18 | 18 | 18 | 18 | 19 | 19 | 20 | 20 | 21 | 22 | 23 | 52 | 334 |
| 3/14/2015 | 4/13/2015 | Alternate Living Expenses | 60 | - | - | - | - | - | - | - | - | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 14 |
| 3/30/2015 | 4/29/2015 | Alternate Living Expenses | 160 | - | - | - | - | - | - | - | - | 4 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 6 | 36 |
| 4/6/2015 | 5/6/2015 | Alternate Living Expenses | 1,475 | - | - | - | - | - | - | - | - | 35 | 17 | 18 | 18 | 18 | 18 | 19 | 19 | 20 | 20 | 21 | 22 | 23 | 52 | 331 |
| 4/15/2015 | 5/15/2015 | Alternate Living Expenses | 57 | - | - | - | - | - | - | - | - | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 14 |
| 5/1/2015 | 5/31/2015 | Alternate Living Expenses | 722 | - | - | - | - | - | - | - | - | 10 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 10 | 10 | 10 | 11 | 11 | 26 | 162 |
| 5/6/2015 | 6/5/2015 | Alternate Living Expenses | 1,475 | - | - | - | - | - | - | - | - | 25 | 17 | 18 | 18 | 18 | 18 | 19 | 19 | 20 | 20 | 21 | 22 | 23 | 52 | 321 |
| 5/14/2015 | 6/13/2015 | Alternate Living Expenses | 57 | - | - | - | - | - | - | - | - | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 13 |
| 5/19/2015 | 6/18/2015 | Alternate Living Expenses | 35 | - | - | - | - | - | - | - | - | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 8 |
| 5/19/2015 | 6/18/2015 | Alternate Living Expenses | 384 | - | - | - | - | - | - | - | - | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 6 | 6 | 14 | 89 |
| 5/21/2015 | 6/20/2015 | Alternate Living Expenses | 730 | - | - | - | - | - | - | - | - | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 10 | 10 | 10 | 11 | 11 | 11 | 26 | 169 |
| 6/2/2015 | 7/2/2015 | Alternate Living Expenses | 405 | - | - | - | - | - | - | - | - | 4 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 6 | 6 | 6 | 14 | 93 |
| 6/21/2015 | 7/21/2015 | Alternate Living Expenses | 401 | - | - | - | - | - | - | - | - | 3 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 6 | 6 | 6 | 14 | 90 |
| | | **Alternate Living Expenses Total** | $ 41,802 | $ - | $ - | $ - | $ - | $ - | $ - | $ 125 | $ 984 | $ 1,840 | $ 494 | $ 497 | $ 509 | $ 516 | $ 512 | $ 526 | $ 545 | $ 564 | $ 570 | $ 596 | $ 629 | $ 642 | $ 1,472 | 11,020 |

Exhibit 9.3A
Calculation of Prejudgment Interest Detail - John & Bertha Hernandez

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Amount | 12/31/2008 | 12/31/2009 | 12/31/2010 | 9/30/2011 | 12/31/2011 | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 3/31/2016 | 6/30/2016 | 9/30/2016 | 12/31/2016 | 3/31/2017 | 6/30/2017 | 9/30/2017 | 12/31/2017 | 3/31/2018 | 6/30/2018 | 9/30/2018 | 12/31/2018 | 7/22/2019 | Total Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/14/2008 | 5/14/2008 | Personal Property Damage Expense | 58 | 4 | 5 | 3 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 38 |
| 7/15/2008 | 8/14/2008 | Personal Property Damage Expense | 1,200 | 50 | 96 | 72 | 54 | 14 | 57 | 57 | 57 | 57 | 14 | 14 | 15 | 15 | 15 | 15 | 16 | 16 | 16 | 17 | 18 | 18 | 42 | 746 |
| 12/4/2008 | 1/3/2009 | Personal Property Damage Expense | 500 | - | 40 | 30 | 22 | 6 | 24 | 24 | 24 | 24 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 7 | 7 | 8 | 8 | 18 | 290 |
| 5/27/2009 | 6/26/2009 | Personal Property Damage Expense | 90 | - | 4 | 5 | 4 | 1 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 49 |
| 8/18/2009 | 9/17/2009 | Personal Property Damage Expense | 300 | - | 7 | 18 | 13 | 4 | 14 | 14 | 14 | 14 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 11 | 157 |
| 1/12/2010 | 2/11/2010 | Personal Property Damage Expense | 80 | - | - | 4 | 4 | 1 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 39 |
| 1/18/2010 | 2/17/2010 | Personal Property Damage Expense | 743 | - | - | 39 | 33 | 9 | 35 | 35 | 35 | 35 | 9 | 9 | 9 | 9 | 9 | 9 | 10 | 10 | 10 | 11 | 11 | 11 | 26 | 365 |
| 9/26/2011 | 10/26/2011 | Personal Property Damage Expense | 227 | - | - | - | - | 2 | 11 | 11 | 11 | 11 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 8 | 89 |
| 8/26/2013 | 9/25/2013 | Personal Property Damage Expense | 256 | - | - | - | - | - | - | 3 | 12 | 12 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 4 | 9 | 77 |
| | | Personal Property Damages Expense $ | 3,454 | $ 54 | $ 151 | $ 172 | $ 133 | $ 38 | $ 152 | $ 155 | $ 164 | $ 164 | $ 41 | $ 41 | $ 42 | $ 43 | $ 42 | $ 43 | $ 45 | $ 47 | $ 47 | $ 49 | $ 52 | $ 53 | $ 122 | 1,850 |

*Assumptions:*

| | 12/31/2008 | 12/31/2009 | 12/31/2010 | 9/30/2011 | 12/31/2011 | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 3/31/2016 | 6/30/2016 | 9/30/2016 | 12/31/2016 | 3/31/2017 | 6/30/2017 | 9/30/2017 | 12/31/2017 | 3/31/2018 | 6/30/2018 | 9/30/2018 | 12/31/2018 | 7/22/2019 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | Florida Statutory Interest Rates | | | | | | | | | | | | | |
| Annual | 11.00% | 8.00% | 6.00% | 6.00% | 4.75% | 4.75% | 4.75% | 4.75% | 4.75% | 4.75% | 4.78% | 4.84% | 4.91% | 4.97% | 5.05% | 5.17% | 5.35% | 5.53% | 5.72% | 5.97% | 6.09% | 6.33% |
| Per Diem | 0.0301400% | 0.0219200% | 0.0164400% | 0.0164400% | 0.0130137% | 0.0129781% | 0.0130137% | 0.0130137% | 0.0130137% | 0.0129781% | 0.0130601% | 0.0132204% | 0.0134153% | 0.0136164% | 0.0138356% | 0.0141643% | 0.0146575% | 0.0151507% | 0.0156712% | 0.0163562% | 0.0166849% | 0.0173429% |

Case 1:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 182 of 802
Case 1:11-cv-22408-MGC Document 272 Entered on FLSD Docket 09/13/2019 Page 181 of
262

9.A
Documents and Other Information Considered - John & Bertha Hernandez

---

*Chinese Drywall Litigation Involving Priority Claimants*

| | | | Bate Stamp (if applicable) | |
|---|---|---|---|---|
| No. | Claimant | General Description | First Page | Last Page |

**A. Pleadings and Other Legal Documents:**

| | | | | |
|---|---|---|---|---|
| 1 | All | Judge Cooke's Order, dated November 16, 2018 | | |
| 2 | Hernandez | Plaintiff John Hernandez Answers to Interrogatories, dated November 30, 2018 | | |
| 3 | Hernandez | Plaintiff Bertha Hernandez Answers to Interrogatories, dated November 30, 2018 | | |
| 4 | Hernandez | Plaintiff John Hernandez Supplemental Plaintiff Profile Form - Amended | | |
| 5 | Hernandez | Bertha Hernandez Answers to Interrogatories, dated November 30, 2018 | | |
| 6 | Hernandez | Bertha Hernandez Answers to Defendant's Second Set of Interrogatories, dated December 4, 2018 | | |
| 7 | Hernandez | Bertha Hernandez Answers to Defendant's 1st Request for Production - Amended, dated January 14, 2019 | | |
| 8 | Hernandez | Bertha Hernandez Answers to Defendant's 2nd Request for Production - Amended, dated January 14, 2019 | | |
| 9 | Hernandez | John Hernandez Answers to Defendant's Second Set of Interrogatories, dated December 4, 2018 | | |
| 10 | Hernandez | John Hernandez Answers to Defendant's 1st Request for Production - Amended, dated January 14, 2019 | | |
| 11 | Hernandez | John Hernandez Answers to Interrogatories, dated November 30, 2018 | | |
| 12 | Hernandez | John Hernandez Answers to Defendant's 2nd Request for Production - Amended, dated January 14, 2019 | | |

**B. Depositions & Corresponding Exhibits:**

| | | | | |
|---|---|---|---|---|
| 1 | Hernandez | Deposition Transcript of John Hernandez, dated December 18, 2018 | | |
| 2 | Hernandez | Deposition Transcript of Bertha Hernandez, dated December 18, 2018 | | |
| 3 | Hernandez | Deposition Exhibit 01 - Warranty Deed | | |
| 4 | Hernandez | Deposition Exhibit 02 - US Department of Housing & Urban Development Settlement Statement Dated 4/1/2008 | | |
| 5 | Hernandez | Deposition Exhibit 03 - Annual Escrow Account Disclosure Statement Projections for Coming Year; Bank Statement Dated 12/12/2009 | Hernandez Dep.0000480 | Hernandez Dep.0000486 |
| 6 | Hernandez | Deposition Exhibit 04 - Warranty Deed Dated 1/11/2017 | | |
| 7 | Hernandez | Deposition Exhibit 05 - Hillsborough County Property Appraiser Property Record Card | | |
| 8 | Hernandez | Deposition Exhibit 06 - Floor Plan | Hernandez.J00007 | Hernandez.J00008 |
| 9 | Hernandez | Deposition Exhibit 07 - Chinese Drywall Screening LLC Drywall Investigation Report dated 1/25/2010 | Hernandez Dep.0000008 | Hernandez Dep.0000021 |
| 10 | Hernandez | Deposition Exhibit 08 - Chinese Drywall Screening LLC Evidence Preservation Report dated 10/31/2013 | Hernandez Dep.0000022 | Hernandez Dep.0000061 |
| 11 | Hernandez | Deposition Exhibit 09 - Environmental Certificate Dated 12/10/2013 | | |
| 12 | Hernandez | Deposition Exhibit 10 - Various Remediation Invoices | Hernandez Dep.0000146 | Hernandez Dep.0000157 |
| 13 | Hernandez | Deposition Exhibit 11 - Check Stubs, Bank Statements and Invoices | 000342 | 000355 |
| 14 | Hernandez | Deposition Exhibit 12 - PLAINTIFF BERTHA HERNANDEZ'S FIRST AMENDED RESPONSE TO DEFENDANTS' INTERROGATORIES | | |
| 15 | Hernandez | Deposition Exhibit 13 - SUPPLEMENTAL PLAINTIFF PROFILE FORM | | |
| 16 | Hernandez | Deposition Exhibit 14 - Residential Lease, Handwritten Notes and Invoices | Hernandez Dep.0000240 | Hernandez Dep.0000246 |
| 17 | Hernandez | Deposition Exhibit 15 - WATER BILLS FROM 9/16/2013 TO 05/19/2015; TECO ELECTRIC BILLS FROM 8/28/2013 TO 5/19/2015 | Hernandez Dep.0000198 | Hernandez Dep.0000239 |
| 18 | Hernandez | Deposition Exhibit 16 - Copies of Checks, Receipts and Bank Statements | 000333 | 000341 |
| 19 | Hernandez | Deposition Exhibit 17 - PLAINTIFF BERTHA HERNANDEZ'S RESPONSE TO DEFENDANTS' REQUEST FOR PRODUCTION OF DOCUMENTS | | |

**C. Supporting Documentation**

| | | | | |
|---|---|---|---|---|
| 1 | Hernandez | Doc ID. 365781 - AC Invoices Affected Property | | |
| 2 | Hernandez | Doc ID. 366484 - Application Fee for Rent | | |
| 3 | Hernandez | Doc ID. 366485 - Borter Glass Co. Invoices and Proof of Payment | | |
| 4 | Hernandez | Doc ID. 366486 - California Closets Invoices and Proof of Payment | | |
| 5 | Hernandez | Doc ID. 366488 - Custom Distributors Invoices and Proof of Payment | | |

9.A
Documents and Other Information Considered - John & Bertha Hernandez

*Chinese Drywall Litigation Involving Priority Claimants*

*Bate Stamp (if applicable)*

| No. | Claimant | General Description | First Page | Last Page |
|---|---|---|---|---|
| 6 | Hernandez | Doc ID. 366492 - Proof of AC and Moving Payments | | |
| 7 | Hernandez | Doc ID. 366495 - Proof of Loss of Deposit | | |
| 8 | Hernandez | Doc ID. 366496 - Proof of Moving Payments | | |
| 9 | Hernandez | Doc ID. 366497 - Proof of Payment | | |
| 10 | Hernandez | Doc ID. 366499 - Rent- Proof of Payment | | |
| 11 | Hernandez | Doc ID. 366500 - Rent- Proof of Payment 2 | | |
| 12 | Hernandez | Doc ID. 366501 - Sierra Construction Proof Of Payment | | |
| 13 | Hernandez | Doc ID. 364311 - Rental Property Documentation | | |
| 14 | Hernandez | Doc ID. 364313 - Sierra Construction Proof of Payment | | |
| 15 | Hernandez | Doc ID. 366502 - Tampa Tile Invoices and Proof of Payment | | |
| 16 | Hernandez | Doc ID. 364312 - Water and Electric Bills- Rental Property | | |
| 17 | Hernandez | Doc ID. 364316 - Suncoast Mortgage Payments | | |
| 17 | Hernandez | Doc ID. 366491 - Moving Invoice | | |
| 18 | Hernandez | Doc ID. 366533 - Hernandez - HUD Statement For Remediation Loan | | |
| 19 | Hernandez | Doc ID. 365961 - Hernandez- Global Check 1 | | |
| 20 | Hernandez | Doc ID. 365962 - Hernandez- Global Check 2 | | |
| 21 | Hernandez | Hernandez Out of Pocket Damages Summary Provided by Counsel | | |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-22408-Civ-COOKE

EDUARDO AND CARMEN AMORIN, *et al.*,
individually and on behalf of others similarly
situated,

      Plaintiffs,

vs.

TAISHAN GYPSUM CO., LTD., f/k/a
SHANDONG TIASHE DONGXIN CO. LTD.,
*et al.*,

      Defendants.

_____

# Exhibit 10

**Calculations of Damages for Priority Claimants**

# Gul & Deborah Lalwani

EXHIBIT TO THE EXPERT WITNESS REPORT OF:
MICHAEL P. ELKIN, CPA/CFF/ABV, CFE
IN THE PRIORITY CLAIMANT TRIAL

February 19, 2019



Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 185 of 802
Case 1:11-cv-22408-MGC Document 272 Entered on FLSD Docket 08/15/2013 Page 264 of
262

Exhibit 10
Data and Damage Summary - Gul & Deborah Lalwani

*Chinese Drywall Litigation Involving Priority Claimants*

| Data: | | Reference / Notes |
|---|---|---|
| Address of Affected property | 4590 Kodiak Drive | *SPPF* |
| | Vero Beach, FL 32960 | *SPPF* |
| Date Affected property acquired | October 21, 2006 | *SPPF* |
| Date Chinese drywall installed | ?? | *SPPF* |
| Date moved into Affected property | October 21, 2006 | *SPPF* |
| Date first aware of Chinese drywall | March-09 | *SPPF* |
| | | |
| Move out date to alternate living | April 1, 2009 | *ROG 1, #2* |
| Date returned to Affected property | Never | *ROG 1, #2* |
| End date for alternate living expenses | No - Returned to Primary Residence in NJ | *ROG 1, #2* |
| | | |
| Still own property? | N | *SPPF* |
| Bankruptcy caused by damage? | N | *SPPF* |
| Foreclosure or short sale? | N | *SPPF* |
| Affected property sold? | Y | *SPPF* |
| Sale date | March 11, 2011 | *SPPF* |
| Type of sale | Sale in Mitigation | *SPPF* |
| | | |
| Remediation status | None | *SPPF* |
| Remediation period | N/A | *SPPF* |

| Damage Summary: | | |
|---|---|---|
| Full or Partial Out-of-Pocket Remediation Expenses | $ - | |
| | | |
| Other Damages | | |
| Alternate Living Expenses | $ - | |
| Personal Property Damage Expense | - | |
| Additional Damages | - | |
| | $ - | |
| | | |
| Lost Equity | $ 381,320 | *Exh 10.2* |
| | | |
| Diminution in Value | TBD | |
| | | |
| Loss of Use and Enjoyment | TBD | |
| | | |
| Punitive Damages | TBD | |

Exhibit 10.2
Lost Equity - Gul & Deborah Lalwani

*Chinese Drywall Litigation Involving Priority Claimants*

| | | | | Source Document |
|---|---|---|---|---|
| Initial Acquisition | | | | |
| Purchase Price | | $ | 546,151 | GHO Homes - Additional Building Options Doc ID 366657, Pg. 4 |
| Settlement Charges | | | N/A | |
| Total Gross Amount Due from Claimant | | $ | 546,151 | |
| | | | | |
| Less | | | | |
| Deposit Made by Claimant | | $ | (20,000) | New Home Purchase & Construction Agreement Doc ID 365780, Pg. 1 |
| Borrowings by Claimant | | | (436,900) | Mortgage - KR Doc (Public Records) |
| Credits | | | N/A | |
| Amount Due from Claimant at Close | | $ | 89,251 | |
| | | | | |
| Funds Paid by Claimant | | | | |
| Deposit Paid with Contract | | $ | 20,000 | New Home Purchase & Construction Agreement Doc ID 365780, Pg. 1 |
| Cash Paid at Closing | | | 89,251 | |
| Total Payments for Initial Purchase | a | $ | 109,251 | |
| | | | | |
| Mortgage | | | | |
| Mortgage Beginning Balance | | $ | 436,900 | November 22, 2004 Mortgage from Public Records |
| Mortgage Balance at Payoff | | | - | Response to Defendants' Rogs. |
| Principal Payments Made | b | $ | 436,900 | |
| | | | | |
| Less: Cash Paid to Claimants upon Sale of Home | c | $ | (164,831) | HUD Closing Statement dated 3/11/11 Doc ID 147835 |
| | | | | |
| Total Lost Equity | = a + b + c | $ | 381,320 | |

10.A
Documents and Other Information Considered - Gul & Deborah Lalwani

*Chinese Drywall Litigation Involving Priority Claimants*

| | | | Bate Stamp *(if applicable)* | |
|---|---|---|---|---|
| No. | Claimant | General Description | First Page | Last Page |

**A. Pleadings and Other Legal Documents:**

| | | |
|---|---|---|
| 1 | All | Trial Plan for Property Damage Claims and Scheduling Order dated November 16, 2018 |
| 2 | Lalwani | Plaintiff Deborah Lalwani Answers to Interrogatories, dated November 30, 2018 |
| 3 | Lalwani | Plaintiff Gul Lalwani Answers to Interrogatories, dated November 30, 2018 |
| 4 | Lalwani | Plaintiff Gul Lalwani Supplemental Plaintiff Profile Form - Amended |
| 5 | Lalwani | Plaintiff Deborah Lalwani First Amended Response to Defendants' Request for Production of Documents, dated January 14, 2019 |
| 6 | Lalwani | Plaintiff Deborah Lalwani First Amended Response to Defendants' Second Request for Production of Documents, dated January 14, 2019 |
| 7 | Lalwani | Plaintiff Gul Lalwani First Amended Response to Defendants' Request for Production of Documents, dated January 14, 2019 |
| 8 | Lalwani | Plaintiff Gul Lalwani First Amended Response to Defendants' Second Request for Production of Documents, dated January 14, 2019 |
| 9 | Lalwani | Deborah Lalwani Response to Defendants' Second Set of Interrogatories, dated December 4, 2018 |
| 10 | Lalwani | Deborah Lalwani Response to Defendants' Interrogatories, dated November 30, 2018 |
| 11 | Lalwani | Gul Lalwani Response to Defendants' Interrogatories, dated November 30, 2018 |
| 12 | Lalwani | Gul Lalwani Response to Defendants' Second Set of Interrogatories, dated December 4, 2018 |

**B. Depositions & Corresponding Exhibits:**

| | | |
|---|---|---|
| 1 | Lalwani | Deposition Transcript of Gul Lalwani, dated January 4, 2019 |
| 2 | Lalwani | Deposition Transcript of Deborah Lalwani, dated January 4, 2019 |
| 3 | Lalwani | Deposition Transcript of Vance Brinkerhoff, dated January 14, 2019 |
| 4 | Lalwani | Deposition Exhibit 01 - New Home Purchase & Construction Agreement |
| 5 | Lalwani | Deposition Exhibit 02 - Letter from GHO Homes dated 9/17/2004 |
| 6 | Lalwani | Deposition Exhibit 03 - Letter dated 7/16/2005 |
| 7 | Lalwani | Deposition Exhibit 04 - Letter dated 7/19/2005 |
| 8 | Lalwani | Deposition Exhibit 05 - Memo from John E. Fuchs of GHO Homes |
| 9 | Lalwani | Deposition Exhibit 06 - Chinese Drywall Settlement Program Global, Banner, Inex Repair and relocation expenses claim form, dated 9/30/13 |
| 10 | Lalwani | Deposition Exhibit 07 - Letter dated 4/1/2009, with attached Chinese Drywall Screening Property Screen Report dated 3/30/2009 |
| 11 | Lalwani | Deposition Exhibit 08 - Chinese Drywall Screening Drywall Investigation Report, dated 11/17/2009 |
| 12 | Lalwani | Deposition Exhibit 09 - First Amended Supplemental Plaintiff Profile Form |
| 13 | Lalwani | Deposition Exhibit 10 - Supplemental Plaintiff Profile Form |
| 14 | Lalwani | Deposition Exhibit 11 - Letter dated 2/21/2012, with attached copies of checks |
| 15 | Lalwani | Deposition Exhibit 12 - HUD-1 Settlement Statement, dated 3/11/2011 |
| 16 | Lalwani | Deposition Exhibit 13 - Forwarded e-mails dated 8/12/2009 and 8/10/2009 |
| 17 | Lalwani | Deposition Exhibit 14 - Information on property at 4590 Kodiak Drive, Vero Beach, Florida 32967 |
| 18 | Lalwani | Deposition Exhibit 15 - E-mail string dated 6/15/2010 |
| 19 | Lalwani | Deposition Exhibit 16 - E-mail string dated 4/18/2010, with attachments - Proposed Findings of Fact and Conclusions of Law |
| 20 | Lalwani | Deposition Exhibit 01 - MLS #117881 for 4590 Kodiak Dr., Vero Beach, 32967 for $550,000 |
| 21 | Lalwani | Deposition Exhibit 02 - Status Report - Coldwell Banker Ed Schlitt LC for Indian River MLS#154259 |
| 22 | Lalwani | Deposition Exhibit 03 - Status Report - Coldwell Banker Ed Schlitt LC for Property address 4590 Kodiak Drive, Vero Beach, FL 32967 |
| 23 | Lalwani | Deposition Exhibit 04 - Status Report - Coldwell Banker Ed Schlitt LC property address 4590 Kodiak Drive, Vero Beach, FL 32967 |
| 24 | Lalwani | Deposition Exhibit 05 - Email string ending with 12/29/2018 email from: Deborah Lalwani to: Holly Werkema, subject: Fw: FW:, attachment: Estimate.pdf |
| 25 | Lalwani | Deposition Exhibit 06 - Email string ending with 12/29/2018 email from: Deborah Lalwani to: Holly Werkema, subject: Fw: Chinese Drywall |
| 26 | Lalwani | Deposition Exhibit 07 - Document titled Findings of Fact & Conclusions of Law In re: Chinese Manufactured Drywall Products Liability Litigation, MDL No. 2047, Section: L, Judge Fallon |

**C. Supporting Documentation**

| | | |
|---|---|---|
| 1 | Lalwani | Lalwani Damages Summary Provided by Counsel |
| 2 | Lalwani | Doc ID. 366657 - GHO Homes Additional Building Options |
| 3 | Lalwani | Doc ID. 365780 - New Home Construction Agreement |

10.A
Documents and Other Information Considered - Gul & Deborah Lalwani

*Chinese Drywall Litigation Involving Priority Claimants*

<div style="text-align: right">*Bate Stamp (if applicable)*</div>

| No. | Claimant | General Description | First Page | Last Page |
|-----|----------|---------------------|------------|-----------|
| 4 | Lalwani | Doc ID. 147835 - HUD Settlement Statement from Sale of Home | | |

D. Research and Other Sources:

| | | | | |
|-----|----------|---------------------|------------|-----------|
| 1 | Lalwani | November 22, 2004 Mortgage from Public Records | | |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-22408-Civ-COOKE

EDUARDO AND CARMEN AMORIN, *et al.*,
individually and on behalf of others similarly
situated,

      Plaintiffs,

vs.

TAISHAN GYPSUM CO., LTD., f/k/a
SHANDONG TIASHE DONGXIN CO. LTD.,
*et al.*,

      Defendants.

_____

# **Exhibit 11**

**Calculations of Damages for Priority Claimant**

# **Cassandra Marin**

EXHIBIT TO THE EXPERT WITNESS REPORT OF:
MICHAEL P. ELKIN, CPA/CFF/ABV, CFE
IN THE PRIORITY CLAIMANT TRIAL

February 19, 2019



Exhibit 11
Data and Damage Summary - Cassandra Marin

*Chinese Drywall Litigation Involving Priority Claimants*

| Data: | | Reference / Notes |
|---|---|---|
| Address of Affected property | 3865 SW Wycoff Street | *SPPF* |
| | Port St. Lucie, FL 34953 | *SPPF* |
| Date Affected property acquired | February 8, 2007 | *SPPF* |
| Date Chinese drywall installed | 2007 | *SPPF* |
| Date moved into Affected property | February 8, 2007 | *SPPF* |
| Date first aware of Chinese drywall | October-09 | *SPPF* |
| | | |
| Move out date to alternate living | February 1, 2012 | *ROG 1, #2* |
| Date returned to Affected property | N/A | *ROG 1, #2* |
| End date for alternate living expenses | N/A | *ROG 1, #2* |
| | | |
| Still own property? | N | *ROG 1, #2* |
| Bankruptcy caused by damage? | N | *SPPF* |
| Foreclosure or short sale? | N | *SPPF* |
| Affected property sold? | Y | *SPPF* |
| Sale date | February 17, 2012 | *SPPF* |
| Type of sale | Sale in Mitigation | *SPPF* |
| | | |
| Remediation status | None | *ROG 1, #1* |
| Remediation period | N/A | *ROG 1, #1* |

| Damage Summary: | | |
|---|---|---|
| Full or Partial Out-of-Pocket Remediation Expenses | $ - | |
| Other Damages | | |
| Alternate Living Expenses | $ - | |
| Personal Property Damage Expense | 575 | *Exh. 11.1* |
| Additional Damages | - | |
| | $ 575 | |
| Lost Equity | $ 198,451 | *Exh. 11.2* |
| Diminution in Value | TBD | |
| Loss of Use and Enjoyment | TBD | |
| Punitive Damages | TBD | |

Exhibit 11.1
Damage Claims Detail - Cassandra Marin

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|------|--------|-------------|--------|---|------|--------------|----------------|-------|------------------|--------------|
| Personal Property Damage Expense | Domestic Air Conditioning Inc. | AC System Repairs | $ | 175 | 6/3/2009 | | Invoice | N/A | 366714 | 1 |
| Personal Property Damage Expense | Domestic Air Conditioning Inc. | AC System Repairs | | 400 | 10/2/2009 | | Invoice | N/A | 366714 | 2 |
| Personal Property Damage Expense Total | | | $ | 575 | | | | | | |

Exhibit 11.2
Lost Equity - Cassandra Marin

*Chinese Drywall Litigation Involving Priority Claimants*

| | | | | Source Document |
|---|---|---|---:|---|
| Initial Acquisition | | | | |
| Purchase Price | | $ | 270,000 | 2-8-07 HUD Statement - Purchase of Property |
| Settlement Charges | | | 727 | 2-8-07 HUD Statement - Purchase of Property |
| Total Gross Amount Due from Claimant | | $ | 270,727 | |
| | | | | |
| Less | | | | |
| Deposit Made by Claimant | | $ | (5,000) | 2-8-07 HUD Statement - Purchase of Property |
| Borrowings by Claimant | | | - | 10-5-06 Purchase Agreement  (Buyer to Pay Cash) |
| Credits | | | - | |
| Amount Due from Claimant at Close | | $ | 265,727 | |
| | | | | |
| Funds Paid by Claimant | | | | |
| Deposit Paid with Contract | | $ | 5,000 | 2-8-07 HUD Statement - Purchase of Property |
| Closing Cash Payments | | | 265,727 | 10-5-06 Purchase Agreement  (Buyer to Pay Cash) |
| Total Payments for Initial Purchase | a | $ | 270,727 | |
| | | | | |
| Mortgage | | | | |
| Mortgage Beginning Balance | | $ | - | |
| Mortgage Balance at Payoff | | | - | |
| Principal Payments Made | b | $ | - | |
| | | | | |
| Less: Cash Paid to Claimants upon Sale of Home | c | $ | (72,276) | 2-17-12 HUD Statement - Sale of Property |
| | | | | |
| Total Lost Equity | = a + b + c | $ | 198,451 | |

Exhibit 11.3
Calculation of Prejudgment Interest Summary - Cassandra Marin

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Vendor | Description | Amount | Total Interest Through 7/22/2019 |
|---|---|---|---|---|---|---|
| 6/3/2009 | 7/3/2009 | Personal Property Damage Expense | Domestic Air Conditioning Inc. | AC System Repairs | $ 175 | $ 94 |
| 10/2/2009 | 11/1/2009 | Personal Property Damage Expense | Domestic Air Conditioning Inc. | AC System Repairs | 400 | 205 |
| | | Personal Property Damage Expense Total | | | $ 575 | $ 300 |

Exhibit 11.3A
Calculation of Prejudgment Interest Detail - Cassandra Marin

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Amount | 12/31/2009 | 12/31/2010 | 9/30/2011 | 12/31/2011 | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 3/31/2016 | 6/30/2016 | 9/30/2016 | 12/31/2016 | 3/31/2017 | 6/30/2017 | 9/30/2017 | 12/31/2017 | 3/31/2018 | 6/30/2018 | 9/30/2018 | 12/31/2018 | 7/22/2019 | Total Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/3/2009 | 7/3/2009 | Personal Property Damage Expense | $ 175 | $ 7 | $ 11 | $ 8 | $ 2 | $ 8 | $ 8 | $ 8 | $ 8 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 3 | $ 3 | $ 6 | 94 |
| 10/2/2009 | 11/1/2009 | Personal Property Damage Expense | 400 | 5 | 24 | 18 | 5 | 19 | 19 | 19 | 19 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 6 | 6 | 6 | 14 | 205 |
| | | Personal Property Damage Expense Total | $ 575 | $ 12 | $ 35 | $ 26 | $ 7 | $ 27 | $ 27 | $ 27 | $ 27 | $ 7 | $ 7 | $ 7 | $ 7 | $ 7 | $ 7 | $ 7 | $ 8 | $ 8 | $ 9 | $ 9 | $ 20 | 300 |

*Assumptions:*

| | | | | | | | | | | | Florida Statutory Interest Rates | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 12/31/2009 | 12/31/2010 | 9/30/2011 | 12/31/2011 | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 3/31/2016 | 6/30/2016 | 9/30/2016 | 12/31/2016 | 3/31/2017 | 6/30/2017 | 9/30/2017 | 12/31/2017 | 3/31/2018 | 6/30/2018 | 9/30/2018 | 12/31/2018 | 7/22/2019 |
| Annual | 8.00% | 6.00% | 6.00% | 4.75% | 4.75% | 4.75% | 4.75% | 4.75% | 4.75% | 4.78% | 4.84% | 4.91% | 4.97% | 5.05% | 5.17% | 5.35% | 5.53% | 5.72% | 5.97% | 6.09% | 6.33% |
| Per Diem | 0.0219200% | 0.0164400% | 0.0164400% | 0.0130137% | 0.0129781% | 0.0130137% | 0.0130137% | 0.0130137% | 0.0129781% | 0.0130601% | 0.0132240% | 0.0134153% | 0.0136164% | 0.0138356% | 0.0141643% | 0.0146575% | 0.0151507% | 0.0156712% | 0.0163562% | 0.0166849% | 0.0173425% |

11.A
Documents and Other Information Considered - Cassandra Marin

*Chinese Drywall Litigation Involving Priority Claimants*

Bate Stamp (if applicable)

| No. | Claimant | General Description | First Page | Last Page |
|---|---|---|---|---|
| <u>A. Pleadings and Other Legal Documents:</u> | | | | |
| 1 | All | Trial Plan for Property Damage Claims and Scheduling Order dated November 16, 2018 | | |
| 2 | Marin | Plaintiff Cassandra Marin Answers to Interrogatories, dated November 30, 2018 | | |
| 3 | Marin | Plaintiff Cassandra Marin Supplemental Plaintiff Profile Form, dated | | |
| 4 | Marin | Plaintiff Cassandra Marin First Amended Response to Defendants' Request for Production of Documents, dated January 14, 2019 | | |
| 5 | Marin | Plaintiff Cassandra Marin First Amended Response to Defendants' Second Request for Production of Documents, dated January 14, 2019 | | |
| 6 | Marin | Cassandra Marin Response to Defendants' Interrogatories, dated November 30, 2018 | | |
| 7 | Marin | Cassandra Marin Response to Defendants' Second Request For Production of Documents, dated December 4, 2018 | | |
| 8 | Marin | Cassandra Marin Response to Defendants' Request For Production of Documents, dated November 30, 2018 | | |
| 9 | Marin | Cassandra Marin Response to Defendants' Second Set of Interrogatories, dated December 4, 2018 | | |
| <u>B. Depositions & Corresponding Exhibits:</u> | | | | |
| 1 | Marin | Deposition Transcript of Cassandra Marin, dated January 7, 2019 | | |
| 2 | Marin | Deposition Transcript of Yvette Marin, dated January 10, 2019 | | |
| 3 | Marin | Deposition Exhibit 1 - Purchase Agreement | | |
| 4 | Marin | Deposition Exhibit 2 - Declaration of Correctness of Square Footage on Chinese Drywall Client(s) Property for Remediation Damages dated 5/19/2017 | | |
| 5 | Marin | Deposition Exhibit 3 - First Amended Supplemental Plaintiff Profile Form | | |
| 6 | Marin | Deposition Exhibit 4 - Property Screening Report dated 10/28/2009 | | |
| 7 | Marin | Deposition Exhibit 5 - Chinese Drywall Screening Report dated 6/18/2012 | | |
| 8 | Marin | Deposition Exhibit 6 - Addendum Re: 3865 SW Wycoff Street, Port St. Lucie, FL 34953, signed by Cassandra Marin, and Undated Addendum signed by John O. Jones and Linda S. Pauley | | |
| 9 | Marin | Deposition Exhibit 7 - Domestic Air Conditioning, Inc., Invoice Nos. 8100, 8155, ProMag Energy Group, Inc., Invoice No. 012564 | | |
| 10 | Marin | Deposition Exhibit 8 - Copies of checks from Chinese Drywall Settlement Program | | |
| 11 | Marin | Deposition Exhibit 9 - Addendum No. 1 to the contract dated 8/20/2009 | | |
| 12 | Marin | Deposition Exhibit 10 - "As Is" Residential Contract for Sale and Purchase dated January 16, 2012 | | |
| 13 | Marin | Deposition Exhibit 11 - Plaintiff Cassandra Marin's Response to Defendants' Second Set of Interrogatories | | |
| 14 | Marin | Deposition Exhibit 12 - Verification Page dated 12/4/2018 | | |
| <u>C. Supporting Documentation</u> | | | | |
| 1 | Marin | Marin Damages Summary Provided by Counsel (Partially Redacted) | | |
| 2 | Marin | 10-5-06 Purchase Agreement PBC 1.29.19 (Buyer to Pay Cash) | | |
| 3 | Marin | 1.16.12 Sale Contract - PBC 1.29.19 | | |
| 4 | Marin | 2-17-12 HUD Statement - Sale of Property - PBC 1.29.19 | | |
| 5 | Marin | 2-8-07 HUD Statement - Purchase of Property - PBC 1.29.2019 | | |
| 6 | Marin | Doc ID. 366714 - Air Conditioning Invoices | | |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-22408-Civ-COOKE

EDUARDO AND CARMEN AMORIN, *et al.*,
individually and on behalf of others similarly
situated,

        Plaintiffs,

vs.

TAISHAN GYPSUM CO., LTD., f/k/a
SHANDONG TIASHE DONGXIN CO. LTD.,
*et al.*,

        Defendants.

_____

# Exhibit 12

## Calculations of Damages for Priority Claimant

# Dailyn Martinez

EXHIBIT TO THE EXPERT WITNESS REPORT OF:
MICHAEL P. ELKIN, CPA/CFF/ABV, CFE
IN THE PRIORITY CLAIMANT TRIAL

February 19, 2019



Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 197 of 802
Case 1:11-cv-22408-MGC Document 272 Entered on FLSD Docket 08/15/2013 Page 276 of
262

Exhibit 12
Data and Damage Summary - Dailyn Martinez

*Chinese Drywall Litigation Involving Priority Claimants*

| Data: | | Reference / Notes |
|---|---|---|
| Address of Affected property | 1624 NW 37th Avenue | *SPPF* |
| | Cape Coral, FL 33993 | *SPPF* |
| Date Affected property acquired | September 16, 2008 | *SPPF* |
| Date Chinese drywall installed | 2006 | *SPPF* |
| Date moved into Affected property | September 16, 2008 | *SPPF* |
| Date first aware of Chinese drywall | October-09 | *SPPF* |
| | | |
| Move out date to alternate living | November 2010 - RV & June 2012 - Rental | *SPPF* |
| Date returned to Affected property | June 1, 2013 | *ROG 1, #2* |
| End date for alternate living expenses | June 1, 2013 | *ROG 1, #2* |
| | | |
| Still own property? | Y | *SPPF* |
| Bankruptcy caused by damage? | N | *SPPF* |
| Foreclosure or short sale? | N | *SPPF* |
| Affected property sold? | N | *ROG 1, #2* |
| Sale date | N/A | *SPPF* |
| Type of sale | N/A | *SPPF* |
| | | |
| Remediation status | None | *SPPF* |
| Remediation period | N/A | *SPPF* |

| Damage Summary: | | |
|---|---|---|
| Full or Partial Out-of-Pocket Remediation Expenses | $                              - | |
| | | |
| Other Damages | | |
| Alternate Living Expenses | $                       12,199 | *Exh. 12.1* |
| Personal Property Damage Expense | 47,938 | *Exh. 12.1* |
| Additional Damages | - | |
| | $                       60,137 | |
| | | |
| Lost Equity | TBD | |
| | | |
| Diminution in Value | TBD | |
| | | |
| Loss of Use and Enjoyment | TBD | |
| | | |
| Punitive Damages | TBD | |

Exhibit 12.1
Damage Claims Detail - Dailyn Martinez

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|------|--------|-------------|--------|------|--------------|----------------|-------|------------------|--------------|
| Alternate Living Expenses | D.E. Foeller Sales, Inc | RV Purchase | $ 4,399 | 11/16/2010 | | Invoice | N/A | Exhibit 11 | 1 |
| Alternate Living Expenses | 2011 Northeast 17th Place, Cape Coral | Rent | 600 | 6/1/2012 | | Receipt | N/A | Exhibit 12 | 3 |
| Alternate Living Expenses | 2011 Northeast 17th Place, Cape Coral | Rent | 600 | 7/1/2012 | | Receipt | N/A | Exhibit 12 | 3 |
| Alternate Living Expenses | 2011 Northeast 17th Place, Cape Coral | Rent | 600 | 8/1/2012 | | Receipt | N/A | Exhibit 12 | 3 |
| Alternate Living Expenses | 2011 Northeast 17th Place, Cape Coral | Rent | 600 | 9/1/2012 | | Receipt | N/A | Exhibit 12 | 4 |
| Alternate Living Expenses | 2011 Northeast 17th Place, Cape Coral | Rent | 600 | 10/1/2012 | | Receipt | N/A | Exhibit 12 | 4 |
| Alternate Living Expenses | 2011 Northeast 17th Place, Cape Coral | Rent | 600 | 11/1/2012 | | Receipt | N/A | Exhibit 12 | 4 |
| Alternate Living Expenses | 2011 Northeast 17th Place, Cape Coral | Rent | 600 | 12/1/2012 | | Receipt | N/A | Exhibit 12 | 5 |
| Alternate Living Expenses | 2011 Northeast 17th Place, Cape Coral | Rent | 600 | 1/1/2013 | | Receipt | N/A | Exhibit 12 | 1 |
| Alternate Living Expenses | 2011 Northeast 17th Place, Cape Coral | Rent | 600 | 2/1/2013 | | Receipt | N/A | Exhibit 12 | 1 |
| Alternate Living Expenses | 2011 Northeast 17th Place, Cape Coral | Rent | 600 | 3/1/2013 | | Receipt | N/A | Exhibit 12 | 1 |
| Alternate Living Expenses | 2011 Northeast 17th Place, Cape Coral | Rent | 600 | 4/1/2013 | | Receipt | N/A | Exhibit 12 | 2 |
| Alternate Living Expenses | 2011 Northeast 17th Place, Cape Coral | Rent | 600 | 5/1/2013 | | Receipt | N/A | Exhibit 12 | 2 |
| Alternate Living Expenses | 2011 Northeast 17th Place, Cape Coral | Rent | 600 | 6/1/2013 | | Receipt | N/A | Exhibit 12 | 2 |
| **Alternate Living Expenses Total** | | | **$ 12,199** | | | | | | |
| Personal Property Damage Expense | Lowes | Fridge | $ 1,906 | 4/1/2007 | | Receipt | N/A | Exhibit 9 | 45 |
| Personal Property Damage Expense | Home Depot | Miscellaneous | 321 | 6/30/2007 | | Receipt | N/A | Exhibit 9 | 46 |
| Personal Property Damage Expense | Home Depot | Miscellaneous | 2,331 | 7/16/2007 | | Receipt | N/A | Exhibit 9 | 24 |
| Personal Property Damage Expense | Samsung | Fridge | 1,774 | 8/20/2007 | | Receipt | N/A | Exhibit 9 | 31 |
| Personal Property Damage Expense | Lowes | Miscellaneous | 1,544 | 8/22/2007 | | Receipt | N/A | Exhibit 9 | 45 |
| Personal Property Damage Expense | Sears | Miscellaneous | 276 | 3/13/2008 | | Receipt | N/A | Exhibit 9 | 53 |
| Personal Property Damage Expense | Sears | Miscellaneous | 42 | 3/13/2008 | | Receipt | N/A | Exhibit 9 | 53 |
| Personal Property Damage Expense | Circuit City | Printer (HP Deskjet) | 64 | 6/16/2008 | | Receipt | N/A | Exhibit 9 | 25 |
| Personal Property Damage Expense | Lowes | Miscellaneous | 115 | 7/17/2008 | | Receipt | N/A | Exhibit 9 | 44 |
| Personal Property Damage Expense | Budget Blinds | Blinds | 2,945 | 9/25/2008 | | Invoice | N/A | Exhibit 9 | 32 |
| Personal Property Damage Expense | Best Buy | Ipod | 246 | 6/6/2009 | | Receipt | N/A | Exhibit 9 | 28 |
| Personal Property Damage Expense | Lowes | Miscellaneous | 159 | 7/17/2009 | | Receipt | N/A | Exhibit 9 | 46 |
| Personal Property Damage Expense | Belk | Mattress Pads | 125 | 7/19/2009 | X | Receipt | N/A | Exhibit 9 | 42 |
| Personal Property Damage Expense | Walmart | WII | 234 | 11/26/2009 | | Receipt | N/A | Exhibit 9 | 44 |
| Personal Property Damage Expense | Touch of Class | Biltmore Library Tapestry | 119 | 1/12/2010 | X | Invoice | N/A | Exhibit 9 | 33 |
| Personal Property Damage Expense | Home Depot | Miscellaneous | 181 | 9/23/2010 | | Receipt | N/A | Exhibit 9 | 25 |
| Personal Property Damage Expense | Walmart | Miscellaneous | 25 | 10/26/2010 | | Receipt | N/A | Exhibit 9 | 22 |
| Personal Property Damage Expense | Caribbean Distributing Co., Inc. | Miscellaneous | 146 | 11/5/2010 | | Invoice | N/A | Exhibit 9 | 34 |
| Personal Property Damage Expense | JCPenney | Miscellaneous | 53 | 12/9/2010 | | Receipt | N/A | Exhibit 9 | 26 |

Exhibit 12.1
Damage Claims Detail - Dailyn Martinez

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|------|--------|-------------|--------|------|--------------|----------------|-------|------------------|--------------|
| Personal Property Damage Expense | JCPenney | Miscellaneous | 370 | 12/26/2010 | | Receipt | N/A | Exhibit 9 | 26 |
| Personal Property Damage Expense | JCPenney | Miscellaneous | 32 | 12/26/2010 | | Receipt | N/A | Exhibit 9 | 29 |
| Personal Property Damage Expense | BJ's | Miscellaneous | 138 | 2/8/2011 | | Receipt | N/A | Exhibit 9 | 27 |
| Personal Property Damage Expense | Paypal | Office Printer | 180 | 3/9/2011 | | Receipt | N/A | Exhibit 9 | 19 |
| Personal Property Damage Expense | Staples | Miscellaneous | 22 | 3/23/2011 | | Receipt | N/A | Exhibit 9 | 27 |
| Personal Property Damage Expense | Walmart | Miscellaneous | 29 | 6/6/2011 | | Receipt | N/A | Exhibit 9 | 24 |
| Personal Property Damage Expense | Walmart | Groceries | 174 | 8/4/2011 | | Receipt | N/A | Exhibit 9 | 23 |
| Personal Property Damage Expense | Belk | Miscellaneous | 85 | 10/16/2011 | | Receipt | N/A | Exhibit 9 | 36 |
| Personal Property Damage Expense | Lowes | Miscellaneous | 296 | 11/15/2011 | | Receipt | N/A | Exhibit 9 | 39 |
| Personal Property Damage Expense | Belk | Miscellaneous | 158 | 11/25/2011 | | Receipt | N/A | Exhibit 9 | 35 |
| Personal Property Damage Expense | Enrico & AG Mechanics, Inc | Change out A/C unit | 1,700 | 1/5/2012 | | Receipt | N/A | Exhibit 7 | 1 |
| Personal Property Damage Expense | Belk | Miscellaneous | 86 | 5/25/2012 | | Receipt | N/A | Exhibit 9 | 37 |
| Personal Property Damage Expense | Home Depot | Miscellaneous | 2,522 | 5/31/2012 | | Receipt | N/A | Exhibit 9 | 29 |
| Personal Property Damage Expense | Kohls | Miscellaneous | 382 | 6/7/2012 | | Receipt | N/A | Exhibit 9 | 30 |
| Personal Property Damage Expense | Walmart | Miscellaneous | 483 | 6/8/2012 | | Receipt | N/A | Exhibit 9 | 36 |
| Personal Property Damage Expense | Kohls | Miscellaneous | 178 | 6/11/2012 | | Receipt | N/A | Exhibit 9 | 30 |
| Personal Property Damage Expense | Kohls | Miscellaneous | 54 | 8/18/2012 | | Receipt | N/A | Exhibit 9 | 10 |
| Personal Property Damage Expense | Kohls | Miscellaneous | 187 | 8/23/2012 | | Receipt | N/A | Exhibit 9 | 7 |
| Personal Property Damage Expense | Costco | Miscellaneous | 21 | 9/20/2012 | | Receipt | N/A | Exhibit 9 | 10 |
| Personal Property Damage Expense | Bed Bath & Beyond | Miscellaneous | 100 | 11/4/2012 | | Receipt | N/A | Exhibit 9 | 13 |
| Personal Property Damage Expense | Office Depot | Miscellaneous | 318 | 11/20/2012 | | Receipt | N/A | Exhibit 9 | 12 |
| Personal Property Damage Expense | Enrico & AG Mechanics, Inc | Change out A/C unit | 4,100 | 12/31/2012 | X | Invoice | N/A | Exhibit 7 | 2 |
| Personal Property Damage Expense | Best Buy | Electronics | 1,134 | 12/31/2012 | | Receipt | N/A | Exhibit 9 | 40 |
| Personal Property Damage Expense | Staples | Miscellaneous | 212 | 3/16/2013 | | Receipt | N/A | Exhibit 9 | 20 |
| Personal Property Damage Expense | Kay Jewelers | Watches | 636 | 3/23/2013 | | Receipt | N/A | Exhibit 9 | 9 |
| Personal Property Damage Expense | Bed Bath & Beyond | Miscellaneous | 275 | 4/4/2013 | | Receipt | N/A | Exhibit 9 | 12 |
| Personal Property Damage Expense | Bed Bath & Beyond | Miscellaneous | 127 | 4/4/2013 | | Receipt | N/A | Exhibit 9 | 13 |
| Personal Property Damage Expense | Bed Bath & Beyond | Miscellaneous | 309 | 4/14/2013 | X | Receipt | N/A | Exhibit 9 | 11 |
| Personal Property Damage Expense | Lowes | Miscellaneous | 19 | 5/15/2013 | | Receipt | N/A | Exhibit 9 | 14 |
| Personal Property Damage Expense | Lowes | Miscellaneous | 333 | 5/23/2013 | | Receipt | N/A | Exhibit 9 | 21 |
| Personal Property Damage Expense | Lowes | Miscellaneous | 25 | 5/24/2013 | | Receipt | N/A | Exhibit 9 | 6 |
| Personal Property Damage Expense | Bed Bath & Beyond | Miscellaneous | 134 | 5/31/2013 | | Receipt | N/A | Exhibit 9 | 11 |
| Personal Property Damage Expense | Lowes | Miscellaneous | 1,272 | 6/9/2013 | | Receipt | N/A | Exhibit 9 | 8 |
| Personal Property Damage Expense | Gulf Coast Cell Phones | Cell Phone | 543 | 6/10/2013 | | Receipt | N/A | Exhibit 9 | 7 |
| Personal Property Damage Expense | Macy's | Miscellaneous | 25 | 6/14/2013 | | Receipt | N/A | Exhibit 9 | 6 |

Exhibit 12.1
Damage Claims Detail - Dailyn Martinez

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|------|--------|-------------|--------|------|-------------|---------------|-------|-----------------|-------------|
| Personal Property Damage Expense | Belk | Miscellaneous | 117 | 7/7/2013 | | Receipt | N/A | Exhibit 9 | 42 |
| Personal Property Damage Expense | Best Buy | Electronics | 742 | 7/21/2013 | | Receipt | N/A | Exhibit 9 | 22 |
| Personal Property Damage Expense | BJ's | Miscellaneous | 281 | 7/26/2013 | | Receipt | N/A | Exhibit 9 | 16 |
| Personal Property Damage Expense | BJ's | Miscellaneous | 133 | 7/29/2013 | | Receipt | N/A | Exhibit 9 | 15 |
| Personal Property Damage Expense | T - Mobile | Cell Phone | 384 | 7/30/2013 | | Receipt | N/A | Exhibit 9 | 41 |
| Personal Property Damage Expense | BJ's | Miscellaneous | 52 | 8/17/2013 | | Receipt | N/A | Exhibit 9 | 15 |
| Personal Property Damage Expense | Target | Miscellaneous | 42 | 8/18/2013 | | Receipt | N/A | Exhibit 9 | 16 |
| Personal Property Damage Expense | Lowes | Miscellaneous | 4,034 | 8/19/2013 | | Receipt | N/A | Exhibit 9 | 43 |
| Personal Property Damage Expense | Walmart | Miscellaneous | 742 | 8/28/2013 | | Receipt | N/A | Exhibit 9 | 5 |
| Personal Property Damage Expense | Walmart | Miscellaneous | 46 | 8/29/2013 | | Receipt | N/A | Exhibit 9 | 17 |
| Personal Property Damage Expense | Home Depot | Miscellaneous | 26 | 8/31/2013 | | Receipt | N/A | Exhibit 9 | 14 |
| Personal Property Damage Expense | Lowes | Miscellaneous | 364 | 9/2/2013 | | Receipt | N/A | Exhibit 9 | 21 |
| Personal Property Damage Expense | Bed Bath & Beyond | Miscellaneous | 21 | 9/4/2013 | | Receipt | N/A | Exhibit 9 | 38 |
| Personal Property Damage Expense | Kohls | Jewelry | 8 | 9/4/2013 | | Receipt | N/A | Exhibit 9 | 38 |
| Personal Property Damage Expense | The Style of Your Life | Miscellaneous | 154 | 9/7/2013 | | Receipt | N/A | Exhibit 9 | 18 |
| Personal Property Damage Expense | The Style of Your Life | Miscellaneous | 128 | 9/7/2013 | | Receipt | N/A | Exhibit 9 | 18 |
| Personal Property Damage Expense | TJ Maxx | Miscellaneous | 18 | 9/9/2013 | | Receipt | N/A | Exhibit 9 | 39 |
| Personal Property Damage Expense | Apple Inc. | Iphone | 1,540 | 10/31/2014 | | Receipt | N/A | Exhibit 9 | 51 |
| Personal Property Damage Expense | Apple Inc. | Iphone | 1,006 | 10/31/2014 | | Receipt | N/A | Exhibit 9 | 50 |
| Personal Property Damage Expense | Walmart | Miscellaneous | 952 | 12/21/2014 | | Receipt | N/A | Exhibit 9 | 59 |
| Personal Property Damage Expense | BJ's | iPad | 403 | 12/21/2014 | | Receipt | N/A | Exhibit 9 | 51 |
| Personal Property Damage Expense | Best Buy | Electronics | 901 | 12/27/2014 | | Receipt | N/A | Exhibit 9 | 48 |
| Personal Property Damage Expense | Best Buy | Electronics | 74 | 12/27/2014 | | Receipt | N/A | Exhibit 9 | 47-48 |
| Personal Property Damage Expense | Lowes | Miscellaneous | 1,710 | 1/7/2015 | | Receipt | N/A | Exhibit 9 | 47 |
| Personal Property Damage Expense | Sears | Miscellaneous | 2,332 | 6/27/2017 | | Receipt | N/A | Exhibit 9 | 55 |
| Personal Property Damage Expense | Lowes | Miscellaneous | 558 | 2/6/2018 | | Receipt | N/A | Exhibit 9 | 56 |
| Personal Property Damage Expense | Sears | Miscellaneous | 558 | 3/13/2018 | | Receipt | N/A | Exhibit 9 | 54 |
| Personal Property Damage Expense | Water Medic of Cape Coral Inc. | Change Water membrane | 260 | 6/5/2018 | | Invoice | N/A | Exhibit 8 | 1 |
| Personal Property Damage Expense | Water Medic of Cape Coral Inc. | Change Water membrane | 660 | 9/10/2018 | | Invoice | N/A | Exhibit 8 | 1 |
| Personal Property Damage Expense | Kohls | Miscellaneous | 424 | 11/22/2018 | | Receipt | N/A | Exhibit 9 | 52 |
| **Personal Property Damages Expense Total** | | | **$ 47,938** | | | | | | |

Exhibit 12.3
Calculation of Prejudgment Interest Summary - Dailyn Martinez

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Vendor | Description | Amount | Total Interest Through 7/22/2019 |
|---|---|---|---|---|---|---|
| 11/16/2010 | 12/16/2010 | Alternate Living Expenses | D.E. Foeller Sales, Inc | RV Purchase | $ 4,399 | $ 1,946 |
| 6/1/2012 | 7/1/2012 | Alternate Living Expenses | 2011 Northeast 17th Place, Cape Coral | Rent | 600 | 216 |
| 7/1/2012 | 7/31/2012 | Alternate Living Expenses | 2011 Northeast 17th Place, Cape Coral | Rent | 600 | 213 |
| 8/1/2012 | 8/31/2012 | Alternate Living Expenses | 2011 Northeast 17th Place, Cape Coral | Rent | 600 | 211 |
| 9/1/2012 | 10/1/2012 | Alternate Living Expenses | 2011 Northeast 17th Place, Cape Coral | Rent | 600 | 208 |
| 10/1/2012 | 10/31/2012 | Alternate Living Expenses | 2011 Northeast 17th Place, Cape Coral | Rent | 600 | 206 |
| 11/1/2012 | 12/1/2012 | Alternate Living Expenses | 2011 Northeast 17th Place, Cape Coral | Rent | 600 | 204 |
| 12/1/2012 | 12/31/2012 | Alternate Living Expenses | 2011 Northeast 17th Place, Cape Coral | Rent | 600 | 201 |
| 1/1/2013 | 1/31/2013 | Alternate Living Expenses | 2011 Northeast 17th Place, Cape Coral | Rent | 600 | 199 |
| 2/1/2013 | 3/3/2013 | Alternate Living Expenses | 2011 Northeast 17th Place, Cape Coral | Rent | 600 | 196 |
| 3/1/2013 | 3/31/2013 | Alternate Living Expenses | 2011 Northeast 17th Place, Cape Coral | Rent | 600 | 194 |
| 4/1/2013 | 5/1/2013 | Alternate Living Expenses | 2011 Northeast 17th Place, Cape Coral | Rent | 600 | 192 |
| 5/1/2013 | 5/31/2013 | Alternate Living Expenses | 2011 Northeast 17th Place, Cape Coral | Rent | 600 | 190 |
| 6/1/2013 | 7/1/2013 | Alternate Living Expenses | 2011 Northeast 17th Place, Cape Coral | Rent | 600 | 187 |
| | | Alternate Living Expenses Total | | | $ 12,199 | $ 4,564 |
| 4/1/2007 | 5/1/2007 | Personal Property Damage Expense | Lowes | Fridge | $ 1,906 | $ 1,456 |
| 6/30/2007 | 7/30/2007 | Personal Property Damage Expense | Home Depot | Miscellaneous | 321 | 237 |
| 7/16/2007 | 8/15/2007 | Personal Property Damage Expense | Home Depot | Miscellaneous | 2,331 | 1,706 |
| 8/20/2007 | 9/19/2007 | Personal Property Damage Expense | Samsung | Fridge | 1,774 | 1,280 |
| 8/22/2007 | 9/21/2007 | Personal Property Damage Expense | Lowes | Miscellaneous | 1,544 | 1,113 |
| 3/13/2008 | 4/12/2008 | Personal Property Damage Expense | Sears | Miscellaneous | 276 | 182 |
| 3/13/2008 | 4/12/2008 | Personal Property Damage Expense | Sears | Miscellaneous | 42 | 28 |
| 6/16/2008 | 7/16/2008 | Personal Property Damage Expense | Circuit City | Printer (HP Deskjet) | 64 | 40 |
| 7/17/2008 | 8/16/2008 | Personal Property Damage Expense | Lowes | Miscellaneous | 115 | 72 |
| 9/25/2008 | 10/25/2008 | Personal Property Damage Expense | Budget Blinds | Blinds | 2,945 | 1,767 |
| 6/6/2009 | 7/6/2009 | Personal Property Damage Expense | Best Buy | Ipod | 246 | 133 |
| 7/17/2009 | 8/16/2009 | Personal Property Damage Expense | Lowes | Miscellaneous | 159 | 84 |
| 7/19/2009 | 8/18/2009 | Personal Property Damage Expense | Belk | Mattress Pads | 125 | 66 |
| 11/26/2009 | 12/26/2009 | Personal Property Damage Expense | Walmart | WII | 234 | 117 |
| 1/12/2010 | 2/11/2010 | Personal Property Damage Expense | Touch of Class | Biltmore Library Tapestry | 119 | 59 |
| 9/23/2010 | 10/23/2010 | Personal Property Damage Expense | Home Depot | Miscellaneous | 181 | 82 |
| 10/26/2010 | 11/25/2010 | Personal Property Damage Expense | Walmart | Miscellaneous | 25 | 11 |
| 11/5/2010 | 12/5/2010 | Personal Property Damage Expense | Caribbean Distributing Co., Inc. | Miscellaneous | 146 | 65 |
| 12/9/2010 | 1/8/2011 | Personal Property Damage Expense | JCPenney | Miscellaneous | 53 | 23 |
| 12/26/2010 | 1/25/2011 | Personal Property Damage Expense | JCPenney | Miscellaneous | 370 | 161 |
| 12/26/2010 | 1/25/2011 | Personal Property Damage Expense | JCPenney | Miscellaneous | 32 | 14 |
| 2/8/2011 | 3/10/2011 | Personal Property Damage Expense | BJ's | Miscellaneous | 138 | 59 |
| 3/9/2011 | 4/8/2011 | Personal Property Damage Expense | Paypal | Office Printer | 180 | 76 |
| 3/23/2011 | 4/22/2011 | Personal Property Damage Expense | Staples | Miscellaneous | 22 | 9 |
| 6/6/2011 | 7/6/2011 | Personal Property Damage Expense | Walmart | Miscellaneous | 29 | 12 |
| 8/4/2011 | 9/3/2011 | Personal Property Damage Expense | Walmart | Groceries | 174 | 70 |
| 10/16/2011 | 11/15/2011 | Personal Property Damage Expense | Belk | Miscellaneous | 85 | 33 |
| 11/15/2011 | 12/15/2011 | Personal Property Damage Expense | Lowes | Miscellaneous | 296 | 114 |
| 11/25/2011 | 12/25/2011 | Personal Property Damage Expense | Belk | Miscellaneous | 158 | 61 |
| 1/5/2012 | 2/4/2012 | Personal Property Damage Expense | Enrico & AG Mechanics, Inc | Change out A/C unit | 1,700 | 643 |
| 5/25/2012 | 6/24/2012 | Personal Property Damage Expense | Belk | Miscellaneous | 86 | 31 |
| 5/31/2012 | 6/30/2012 | Personal Property Damage Expense | Home Depot | Miscellaneous | 2,522 | 907 |
| 6/7/2012 | 7/7/2012 | Personal Property Damage Expense | Kohls | Miscellaneous | 382 | 137 |
| 6/8/2012 | 7/8/2012 | Personal Property Damage Expense | Walmart | Miscellaneous | 483 | 173 |
| 6/11/2012 | 7/11/2012 | Personal Property Damage Expense | Kohls | Miscellaneous | 178 | 64 |
| 8/18/2012 | 9/17/2012 | Personal Property Damage Expense | Kohls | Miscellaneous | 54 | 19 |
| 8/23/2012 | 9/22/2012 | Personal Property Damage Expense | Kohls | Miscellaneous | 187 | 65 |
| 9/20/2012 | 10/20/2012 | Personal Property Damage Expense | Costco | Miscellaneous | 21 | 7 |
| 11/4/2012 | 12/4/2012 | Personal Property Damage Expense | Bed Bath & Beyond | Miscellaneous | 100 | 34 |
| 11/20/2012 | 12/20/2012 | Personal Property Damage Expense | Office Depot | Miscellaneous | 318 | 107 |
| 12/31/2012 | 1/30/2013 | Personal Property Damage Expense | Enrico & AG Mechanics, Inc | Change out A/C unit | 4,100 | 1,360 |
| 12/31/2012 | 1/30/2013 | Personal Property Damage Expense | Best Buy | Electronics | 1,134 | 376 |
| 3/16/2013 | 4/15/2013 | Personal Property Damage Expense | Staples | Miscellaneous | 212 | 68 |
| 3/23/2013 | 4/22/2013 | Personal Property Damage Expense | Kay Jewelers | Watches | 636 | 204 |
| 4/4/2013 | 5/4/2013 | Personal Property Damage Expense | Bed Bath & Beyond | Miscellaneous | 275 | 88 |
| 4/4/2013 | 5/4/2013 | Personal Property Damage Expense | Bed Bath & Beyond | Miscellaneous | 127 | 41 |
| 4/14/2013 | 5/14/2013 | Personal Property Damage Expense | Bed Bath & Beyond | Miscellaneous | 309 | 98 |
| 5/15/2013 | 6/14/2013 | Personal Property Damage Expense | Lowes | Miscellaneous | 19 | 6 |
| 5/23/2013 | 6/22/2013 | Personal Property Damage Expense | Lowes | Miscellaneous | 333 | 104 |
| 5/24/2013 | 6/23/2013 | Personal Property Damage Expense | Lowes | Miscellaneous | 25 | 8 |
| 5/31/2013 | 6/30/2013 | Personal Property Damage Expense | Bed Bath & Beyond | Miscellaneous | 134 | 42 |
| 6/9/2013 | 7/9/2013 | Personal Property Damage Expense | Lowes | Miscellaneous | 1,272 | 395 |

Exhibit 12.3
Calculation of Prejudgment Interest Summary - Dailyn Martinez

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Vendor | Description | Amount | Total Interest Through 7/22/2019 |
|---|---|---|---|---|---|---|
| 6/10/2013 | 7/10/2013 | Personal Property Damage Expense | Gulf Coast Cell Phones | Cell Phone | 543 | 169 |
| 6/14/2013 | 7/14/2013 | Personal Property Damage Expense | Macy's | Miscellaneous | 25 | 8 |
| 7/7/2013 | 8/6/2013 | Personal Property Damage Expense | Belk | Miscellaneous | 117 | 36 |
| 7/21/2013 | 8/20/2013 | Personal Property Damage Expense | Best Buy | Electronics | 742 | 227 |
| 7/26/2013 | 8/25/2013 | Personal Property Damage Expense | BJ's | Miscellaneous | 281 | 86 |
| 7/29/2013 | 8/28/2013 | Personal Property Damage Expense | BJ's | Miscellaneous | 133 | 40 |
| 7/30/2013 | 8/29/2013 | Personal Property Damage Expense | T - Mobile | Cell Phone | 384 | 117 |
| 8/17/2013 | 9/16/2013 | Personal Property Damage Expense | BJ's | Miscellaneous | 52 | 16 |
| 8/18/2013 | 9/17/2013 | Personal Property Damage Expense | Target | Miscellaneous | 42 | 13 |
| 8/19/2013 | 9/18/2013 | Personal Property Damage Expense | Lowes | Miscellaneous | 4,034 | 1,216 |
| 8/28/2013 | 9/27/2013 | Personal Property Damage Expense | Walmart | Miscellaneous | 742 | 223 |
| 8/29/2013 | 9/28/2013 | Personal Property Damage Expense | Walmart | Miscellaneous | 46 | 14 |
| 8/31/2013 | 9/30/2013 | Personal Property Damage Expense | Home Depot | Miscellaneous | 26 | 8 |
| 9/2/2013 | 10/2/2013 | Personal Property Damage Expense | Lowes | Miscellaneous | 364 | 109 |
| 9/4/2013 | 10/4/2013 | Personal Property Damage Expense | Bed Bath & Beyond | Miscellaneous | 21 | 6 |
| 9/4/2013 | 10/4/2013 | Personal Property Damage Expense | Kohls | Jewelry | 8 | 3 |
| 9/7/2013 | 10/7/2013 | Personal Property Damage Expense | The Style of Your Life | Miscellaneous | 154 | 46 |
| 9/7/2013 | 10/7/2013 | Personal Property Damage Expense | The Style of Your Life | Miscellaneous | 128 | 38 |
| 9/9/2013 | 10/9/2013 | Personal Property Damage Expense | TJ Maxx | Miscellaneous | 18 | 5 |
| 10/31/2014 | 11/30/2014 | Personal Property Damage Expense | Apple Inc. | Iphone | 1,540 | 377 |
| 10/31/2014 | 11/30/2014 | Personal Property Damage Expense | Apple Inc. | Iphone | 1,006 | 246 |
| 12/21/2014 | 1/20/2015 | Personal Property Damage Expense | Walmart | Miscellaneous | 952 | 227 |
| 12/21/2014 | 1/20/2015 | Personal Property Damage Expense | BJ's | iPad | 403 | 96 |
| 12/27/2014 | 1/26/2015 | Personal Property Damage Expense | Best Buy | Electronics | 901 | 214 |
| 12/27/2014 | 1/26/2015 | Personal Property Damage Expense | Best Buy | Electronics | 74 | 18 |
| 1/7/2015 | 2/6/2015 | Personal Property Damage Expense | Lowes | Miscellaneous | 1,710 | 403 |
| 6/27/2017 | 7/27/2017 | Personal Property Damage Expense | Sears | Miscellaneous | 2,332 | 271 |
| 2/6/2018 | 3/8/2018 | Personal Property Damage Expense | Lowes | Miscellaneous | 558 | 47 |
| 3/13/2018 | 4/12/2018 | Personal Property Damage Expense | Sears | Miscellaneous | 558 | 44 |
| 6/5/2018 | 7/5/2018 | Personal Property Damage Expense | Water Medic of Cape Coral Inc. | Change Water membrane | 260 | 17 |
| 9/10/2018 | 10/10/2018 | Personal Property Damage Expense | Water Medic of Cape Coral Inc. | Change Water membrane | 660 | 32 |
| 11/22/2018 | 12/22/2018 | Personal Property Damage Expense | Kohls | Miscellaneous | 424 | 16 |
| | | Personal Property Damages Expense Total | | | $ 47,938 | $ 18,491 |

Exhibit 12.3A
Calculation of Prejudgment Interest Detail - Dailyn Martinez

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Amount | 12/31/2007 | 12/31/2008 | 12/31/2009 | 12/31/2010 | 9/30/2011 | 12/31/2011 | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 3/31/2016 | 6/30/2016 | 9/30/2016 | 12/31/2016 | 3/31/2017 | 6/30/2017 | 9/30/2017 | 12/31/2017 | 3/31/2018 | 6/30/2018 | 9/30/2018 | 12/31/2018 | 7/22/2019 | Total Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/16/2010 | 12/16/2010 | Alternate Living Expenses | 4,399 | - | - | - | 11 | 197 | 53 | 209 | 209 | 209 | 209 | 52 | 52 | 54 | 54 | 54 | 55 | 57 | 59 | 60 | 63 | 66 | 68 | 155 | 1,946 |
| 6/1/2012 | 7/1/2012 | Alternate Living Expenses | 600 | - | - | - | - | - | - | 14 | 29 | 29 | 29 | 7 | 7 | 7 | 7 | 7 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 21 | 216 |
| 7/1/2012 | 7/31/2012 | Alternate Living Expenses | 600 | - | - | - | - | - | - | 12 | 29 | 29 | 29 | 7 | 7 | 7 | 7 | 7 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 21 | 213 |
| 8/1/2012 | 8/31/2012 | Alternate Living Expenses | 600 | - | - | - | - | - | - | 9 | 29 | 29 | 29 | 7 | 7 | 7 | 7 | 7 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 21 | 211 |
| 9/1/2012 | 10/1/2012 | Alternate Living Expenses | 600 | - | - | - | - | - | - | 7 | 29 | 29 | 29 | 7 | 7 | 7 | 7 | 7 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 21 | 208 |
| 10/1/2012 | 10/31/2012 | Alternate Living Expenses | 600 | - | - | - | - | - | - | 5 | 29 | 29 | 29 | 7 | 7 | 7 | 7 | 7 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 21 | 206 |
| 11/1/2012 | 12/1/2012 | Alternate Living Expenses | 600 | - | - | - | - | - | - | 2 | 29 | 29 | 29 | 7 | 7 | 7 | 7 | 7 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 21 | 204 |
| 12/1/2012 | 12/31/2012 | Alternate Living Expenses | 600 | - | - | - | - | - | - | - | 29 | 29 | 29 | 7 | 7 | 7 | 7 | 7 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 21 | 201 |
| 1/1/2013 | 1/31/2013 | Alternate Living Expenses | 600 | - | - | - | - | - | - | - | 26 | 29 | 29 | 7 | 7 | 7 | 7 | 7 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 21 | 199 |
| 2/1/2013 | 3/3/2013 | Alternate Living Expenses | 600 | - | - | - | - | - | - | - | 24 | 29 | 29 | 7 | 7 | 7 | 7 | 7 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 21 | 196 |
| 3/1/2013 | 3/31/2013 | Alternate Living Expenses | 600 | - | - | - | - | - | - | - | 21 | 29 | 29 | 7 | 7 | 7 | 7 | 7 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 21 | 194 |
| 4/1/2013 | 5/1/2013 | Alternate Living Expenses | 600 | - | - | - | - | - | - | - | 19 | 29 | 29 | 7 | 7 | 7 | 7 | 7 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 21 | 192 |
| 5/1/2013 | 5/31/2013 | Alternate Living Expenses | 600 | - | - | - | - | - | - | - | 17 | 29 | 29 | 7 | 7 | 7 | 7 | 7 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 21 | 190 |
| 6/1/2013 | 7/1/2013 | Alternate Living Expenses | 600 | - | - | - | - | - | - | - | 14 | 29 | 29 | 7 | 7 | 7 | 7 | 7 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 21 | 187 |
| | | Alternate Living Expenses Total | 12,199 | - | - | - | 11 | 197 | 53 | 259 | 530 | 579 | 579 | 144 | 145 | 148 | 151 | 149 | 154 | 159 | 165 | 166 | 174 | 184 | 187 | 429 | 4,564 |
| 4/1/2007 | 5/1/2007 | Personal Property Damage Expense | 1,906 | 140 | 210 | 152 | 114 | 86 | 23 | 91 | 91 | 91 | 91 | 23 | 23 | 23 | 24 | 23 | 24 | 25 | 26 | 26 | 27 | 29 | 29 | 67 | 1,456 |
| 6/30/2007 | 7/30/2007 | Personal Property Damage Expense | 321 | 15 | 35 | 26 | 19 | 14 | 4 | 15 | 15 | 15 | 15 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 5 | 11 | 237 |
| 7/16/2007 | 8/15/2007 | Personal Property Damage Expense | 2,331 | 97 | 257 | 186 | 140 | 105 | 28 | 111 | 111 | 111 | 111 | 28 | 28 | 28 | 29 | 29 | 29 | 30 | 31 | 32 | 33 | 35 | 36 | 82 | 1,706 |
| 8/20/2007 | 9/19/2007 | Personal Property Damage Expense | 1,774 | 55 | 196 | 142 | 106 | 80 | 21 | 84 | 84 | 84 | 84 | 21 | 21 | 22 | 22 | 22 | 22 | 23 | 24 | 24 | 25 | 27 | 27 | 62 | 1,280 |
| 8/22/2007 | 9/21/2007 | Personal Property Damage Expense | 1,544 | 47 | 170 | 124 | 93 | 69 | 18 | 73 | 73 | 73 | 73 | 18 | 18 | 19 | 19 | 19 | 19 | 20 | 21 | 21 | 22 | 23 | 24 | 54 | 1,113 |
| 3/13/2008 | 4/12/2008 | Personal Property Damage Expense | 276 | - | 22 | 22 | 17 | 12 | 3 | 13 | 13 | 13 | 13 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 4 | 4 | 4 | 10 | 182 |
| 3/13/2008 | 4/12/2008 | Personal Property Damage Expense | 42 | - | 3 | 3 | 3 | 2 | 1 | 2 | 2 | 2 | 2 | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 28 |
| 6/16/2008 | 7/16/2008 | Personal Property Damage Expense | 64 | - | 3 | 5 | 4 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 40 |
| 7/17/2008 | 8/16/2008 | Personal Property Damage Expense | 115 | - | 5 | 9 | 7 | 5 | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 2 | 4 | 72 |
| 9/25/2008 | 10/25/2008 | Personal Property Damage Expense | 2,945 | - | 59 | 236 | 177 | 132 | 35 | 140 | 140 | 140 | 140 | 35 | 35 | 36 | 36 | 36 | 37 | 38 | 40 | 40 | 42 | 44 | 45 | 104 | 1,767 |
| 6/6/2009 | 7/6/2009 | Personal Property Damage Expense | 246 | - | - | 10 | 15 | 11 | 3 | 12 | 12 | 12 | 12 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 9 | 133 |
| 7/17/2009 | 8/16/2009 | Personal Property Damage Expense | 159 | - | - | 5 | 10 | 7 | 2 | 8 | 8 | 8 | 8 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 6 | 84 |
| 7/19/2009 | 8/18/2009 | Personal Property Damage Expense | 125 | - | - | 4 | 8 | 6 | 1 | 6 | 6 | 6 | 6 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 4 | 66 |
| 11/26/2009 | 12/26/2009 | Personal Property Damage Expense | 234 | - | - | 0 | 14 | 11 | 3 | 11 | 11 | 11 | 11 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 8 | 117 |
| 1/12/2010 | 2/11/2010 | Personal Property Damage Expense | 119 | - | - | - | 6 | 5 | 1 | 6 | 6 | 6 | 6 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 2 | 4 | 59 |
| 9/23/2010 | 10/23/2010 | Personal Property Damage Expense | 181 | - | - | - | 2 | 8 | 2 | 9 | 9 | 9 | 9 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 6 | 82 |
| 10/26/2010 | 11/25/2010 | Personal Property Damage Expense | 25 | - | - | - | 0 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 11 |
| 11/5/2010 | 12/5/2010 | Personal Property Damage Expense | 146 | - | - | - | 1 | 7 | 2 | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 65 |
| 12/9/2010 | 1/8/2011 | Personal Property Damage Expense | 53 | - | - | - | - | 2 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 23 |
| 12/26/2010 | 1/25/2011 | Personal Property Damage Expense | 370 | - | - | - | - | 15 | 4 | 18 | 18 | 18 | 18 | 4 | 4 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 6 | 6 | 13 | 161 |
| 12/26/2010 | 1/25/2011 | Personal Property Damage Expense | 32 | - | - | - | - | 1 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 14 |
| 2/8/2011 | 3/10/2011 | Personal Property Damage Expense | 138 | - | - | - | - | 5 | 2 | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 59 |
| 3/9/2011 | 4/8/2011 | Personal Property Damage Expense | 180 | - | - | - | - | 5 | 2 | 9 | 9 | 9 | 9 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 6 | 76 |
| 3/23/2011 | 4/22/2011 | Personal Property Damage Expense | 22 | - | - | - | - | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 9 |
| 6/6/2011 | 7/6/2011 | Personal Property Damage Expense | 29 | - | - | - | - | 0 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 12 |
| 8/4/2011 | 9/3/2011 | Personal Property Damage Expense | 174 | - | - | - | - | 1 | 2 | 8 | 8 | 8 | 8 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 6 | 70 |
| 10/16/2011 | 11/15/2011 | Personal Property Damage Expense | 85 | - | - | - | - | - | 1 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 33 |
| 11/15/2011 | 12/15/2011 | Personal Property Damage Expense | 296 | - | - | - | - | - | 1 | 14 | 14 | 14 | 14 | 3 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 5 | 10 | 114 |
| 11/25/2011 | 12/25/2011 | Personal Property Damage Expense | 158 | - | - | - | - | - | 0 | 8 | 8 | 8 | 8 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 6 | 61 |
| 1/5/2012 | 2/4/2012 | Personal Property Damage Expense | 1,700 | - | - | - | - | - | - | 73 | 81 | 81 | 81 | 20 | 20 | 21 | 21 | 21 | 21 | 22 | 23 | 23 | 24 | 26 | 26 | 60 | 643 |
| 5/25/2012 | 6/24/2012 | Personal Property Damage Expense | 86 | - | - | - | - | - | - | 2 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 31 |
| 5/31/2012 | 6/30/2012 | Personal Property Damage Expense | 2,522 | - | - | - | - | - | - | 60 | 120 | 120 | 120 | 30 | 30 | 31 | 31 | 31 | 32 | 33 | 34 | 34 | 36 | 38 | 39 | 89 | 907 |
| 6/7/2012 | 7/7/2012 | Personal Property Damage Expense | 382 | - | - | - | - | - | - | 9 | 18 | 18 | 18 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 6 | 6 | 13 | 137 |
| 6/8/2012 | 7/8/2012 | Personal Property Damage Expense | 483 | - | - | - | - | - | - | 11 | 23 | 23 | 23 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 7 | 7 | 17 | 173 |
| 6/11/2012 | 7/11/2012 | Personal Property Damage Expense | 178 | - | - | - | - | - | - | 4 | 8 | 8 | 8 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 6 | 64 |
| 8/18/2012 | 9/17/2012 | Personal Property Damage Expense | 54 | - | - | - | - | - | - | 1 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 19 |
| 8/23/2012 | 9/22/2012 | Personal Property Damage Expense | 187 | - | - | - | - | - | - | 2 | 9 | 9 | 9 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 7 | 65 |
| 9/20/2012 | 10/20/2012 | Personal Property Damage Expense | 21 | - | - | - | - | - | - | 0 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 7 |
| 11/4/2012 | 12/4/2012 | Personal Property Damage Expense | 100 | - | - | - | - | - | - | 0 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 4 | 34 |
| 11/20/2012 | 12/20/2012 | Personal Property Damage Expense | 318 | - | - | - | - | - | - | 0 | 15 | 15 | 15 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 5 | 11 | 107 |
| 12/31/2012 | 1/30/2013 | Personal Property Damage Expense | 4,100 | - | - | - | - | - | - | - | 179 | 195 | 195 | 48 | 49 | 50 | 51 | 50 | 52 | 53 | 55 | 56 | 58 | 62 | 63 | 144 | 1,360 |
| 12/31/2012 | 1/30/2013 | Personal Property Damage Expense | 1,134 | - | - | - | - | - | - | - | 49 | 54 | 54 | 13 | 13 | 14 | 14 | 14 | 14 | 15 | 15 | 15 | 16 | 17 | 17 | 40 | 376 |
| 3/16/2013 | 4/15/2013 | Personal Property Damage Expense | 212 | - | - | - | - | - | - | - | 7 | 10 | 10 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 68 |
| 3/23/2013 | 4/22/2013 | Personal Property Damage Expense | 636 | - | - | - | - | - | - | - | 21 | 30 | 30 | 8 | 8 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 22 | 204 |
| 4/4/2013 | 5/4/2013 | Personal Property Damage Expense | 275 | - | - | - | - | - | - | - | 9 | 13 | 13 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 4 | 4 | 4 | 10 | 88 |
| 4/4/2013 | 5/4/2013 | Personal Property Damage Expense | 127 | - | - | - | - | - | - | - | 4 | 6 | 6 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 4 | 41 |
| 4/14/2013 | 5/14/2013 | Personal Property Damage Expense | 309 | - | - | - | - | - | - | - | 9 | 15 | 15 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 11 | 98 |
| 5/15/2013 | 6/14/2013 | Personal Property Damage Expense | 19 | - | - | - | - | - | - | - | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 6 |
| 5/23/2013 | 6/22/2013 | Personal Property Damage Expense | 333 | - | - | - | - | - | - | - | 8 | 16 | 16 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 5 | 5 | 12 | 104 |
| 5/24/2013 | 6/23/2013 | Personal Property Damage Expense | 25 | - | - | - | - | - | - | - | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 8 |
| 5/31/2013 | 6/30/2013 | Personal Property Damage Expense | 134 | - | - | - | - | - | - | - | 3 | 6 | 6 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 42 |
| 6/9/2013 | 7/9/2013 | Personal Property Damage Expense | 1,272 | - | - | - | - | - | - | - | 29 | 60 | 60 | 15 | 15 | 15 | 16 | 16 | 16 | 17 | 17 | 17 | 18 | 19 | 20 | 45 | 395 |
| 6/10/2013 | 7/10/2013 | Personal Property Damage Expense | 543 | - | - | - | - | - | - | - | 12 | 26 | 26 | 6 | 6 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 8 | 8 | 8 | 19 | 169 |
| 6/14/2013 | 7/14/2013 | Personal Property Damage Expense | 25 | - | - | - | - | - | - | - | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 8 |
| 7/7/2013 | 8/6/2013 | Personal Property Damage Expense | 117 | - | - | - | - | - | - | - | 2 | 6 | 6 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 2 | 4 | 36 |
| 7/21/2013 | 8/20/2013 | Personal Property Damage Expense | 742 | - | - | - | - | - | - | - | 13 | 35 | 35 | 9 | 9 | 9 | 9 | 9 | 9 | 10 | 10 | 10 | 11 | 11 | 11 | 26 | 227 |
| 7/26/2013 | 8/25/2013 | Personal Property Damage Expense | 281 | - | - | - | - | - | - | - | 5 | 13 | 13 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 10 | 86 |
| 7/29/2013 | 8/28/2013 | Personal Property Damage Expense | 133 | - | - | - | - | - | - | - | 2 | 6 | 6 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 40 |
| 7/30/2013 | 8/29/2013 | Personal Property Damage Expense | 384 | - | - | - | - | - | - | - | 6 | 18 | 18 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 6 | 6 | 14 | 117 |
| 8/17/2013 | 9/16/2013 | Personal Property Damage Expense | 52 | - | - | - | - | - | - | - | 1 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 16 |
| 8/18/2013 | 9/17/2013 | Personal Property Damage Expense | 42 | - | - | - | - | - | - | - | 1 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 13 |
| 8/19/2013 | 9/18/2013 | Personal Property Damage Expense | 4,034 | - | - | - | - | - | - | - | 55 | 192 | 192 | 48 | 48 | 49 | 50 | 49 | 51 | 53 | 54 | 55 | 58 | 61 | 62 | 142 | 1,216 |
| 8/28/2013 | 9/27/2013 | Personal Property Damage Expense | 742 | - | - | - | - | - | - | - | 9 | 35 | 35 | 9 | 9 | 9 | 9 | 9 | 9 | 10 | 10 | 10 | 11 | 11 | 11 | 26 | 223 |
| 8/29/2013 | 9/28/2013 | Personal Property Damage Expense | 46 | - | - | - | - | - | - | - | 1 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 14 |
| 8/31/2013 | 9/30/2013 | Personal Property Damage Expense | 26 | - | - | - | - | - | - | - | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 8 |
| 9/2/2013 | 10/2/2013 | Personal Property Damage Expense | 364 | - | - | - | - | - | - | - | 4 | 17 | 17 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 5 | 5 | 5 | 5 | 6 | 13 | 109 |
| 9/4/2013 | 10/4/2013 | Personal Property Damage Expense | 21 | - | - | - | - | - | - | - | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 6 |
| 9/4/2013 | 10/4/2013 | Personal Property Damage Expense | 8 | - | - | - | - | - | - | - | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 3 |
| 9/7/2013 | 10/7/2013 | Personal Property Damage Expense | 154 | - | - | - | - | - | - | - | 2 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 46 |
| 9/7/2013 | 10/7/2013 | Personal Property Damage Expense | 128 | - | - | - | - | - | - | - | 1 | 6 | 6 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 38 |
| 9/9/2013 | 10/9/2013 | Personal Property Damage Expense | 18 | - | - | - | - | - | - | - | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 5 |
| 10/31/2014 | 11/30/2014 | Personal Property Damage Expense | 1,540 | - | - | - | - | - | - | - | - | 6 | 73 | 18 | 18 | 19 | 19 | 19 | 19 | 20 | 21 | 21 | 22 | 23 | 24 | 54 | 377 |
| 10/31/2014 | 11/30/2014 | Personal Property Damage Expense | 1,006 | - | - | - | - | - | - | - | - | 4 | 48 | 12 | 12 | 12 | 12 | 12 | 13 | 13 | 14 | 14 | 14 | 15 | 15 | 35 | 246 |
| 12/21/2014 | 1/20/2015 | Personal Property Damage Expense | 952 | - | - | - | - | - | - | - | - | - | 43 | 11 | 11 | 12 | 12 | 12 | 12 | 12 | 13 | 13 | 14 | 14 | 15 | 34 | 227 |
| 12/21/2014 | 1/20/2015 | Personal Property Damage Expense | 403 | - | - | - | - | - | - | - | - | - | 18 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 6 | 6 | 6 | 6 | 14 | 96 |
| 12/27/2014 | 1/26/2015 | Personal Property Damage Expense | 901 | - | - | - | - | - | - | - | - | - | 40 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 214 |
| 12/27/2014 | 1/26/2015 | Personal Property Damage Expense | 74 | - | - | - | - | - | - | - | - | - | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 18 |
| 1/7/2015 | 2/6/2015 | Personal Property Damage Expense | 1,710 | - | - | - | - | - | - | - | - | - | 73 | 20 | 20 | 21 | 21 | 21 | 22 | 22 | 23 | 23 | 24 | 26 | 26 | 60 | 403 |
| 6/27/2017 | 7/27/2017 | Personal Property Damage Expense | 2,332 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 21 | 31 | 32 | 33 | 35 | 36 | 82 | 271 |
| 2/6/2018 | 3/8/2018 | Personal Property Damage Expense | 558 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 2 | 8 | 8 | 9 | 20 | 47 |
| 3/13/2018 | 4/12/2018 | Personal Property Damage Expense | 558 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 7 | 8 | 9 | 20 | 44 |
| 6/5/2018 | 7/5/2018 | Personal Property Damage Expense | 260 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 4 | 4 | 9 | 17 |
| 9/10/2018 | 10/10/2018 | Personal Property Damage Expense | 660 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 9 | 23 | 32 |
| 11/22/2018 | 12/22/2018 | Personal Property Damage Expense | 424 | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 1 | 15 | 16 |
| | | Personal Property Damages Expense Total | 47,938 | 354 | 961 | 924 | 734 | 594 | 164 | 833 | 1,390 | 1,747 | 2,034 | 510 | 513 | 525 | 533 | 529 | 543 | 584 | 613 | 622 | 663 | 705 | 729 | 1,688 | 18,491 |

*Assumptions:*

Florida Statutory Interest Rates

| | 12/31/2007 | 12/31/2008 | 12/31/2009 | 12/31/2010 | 9/30/2011 | 12/31/2011 | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 3/31/2016 | 6/30/2016 | 9/30/2016 | 12/31/2016 | 3/31/2017 | 6/30/2017 | 9/30/2017 | 12/31/2017 | 3/31/2018 | 6/30/2018 | 9/30/2018 | 12/31/2018 | 7/22/2019 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Annual | 11.00% | 11.00% | 8.00% | 6.00% | 6.00% | 4.75% | 4.75% | 4.75% | 4.75% | 4.75% | 4.75% | 4.78% | 4.84% | 4.91% | 4.97% | 5.05% | 5.17% | 5.35% | 5.53% | 5.72% | 5.97% | 6.09% | 6.33% |
| Per Diem | 0.0301400% | 0.0301400% | 0.0219200% | 0.0164400% | 0.0164400% | 0.0130137% | 0.0129781% | 0.0130137% | 0.0130137% | 0.0130137% | 0.0129781% | 0.01306011% | 0.01322404% | 0.01341530% | 0.01361644% | 0.01383562% | 0.01416438% | 0.0146575% | 0.0151507% | 0.0156712% | 0.0163562% | 0.0166849% | 0.0173425% |

12.A
Documents and Other Information Considered - Dailyn Martinez

*Chinese Drywall Litigation Involving Priority Claimants*

| | | | Bate Stamp *(if applicable)* | |
|---|---|---|---|---|
| No. | Claimant | General Description | First Page | Last Page |

**A. Pleadings and Other Legal Documents:**

| 1 | All | Trial Plan for Property Damage Claims and Scheduling Order dated November 16, 2018 | | |
| 2 | Martinez | Priority Claimant Dailyn Martinez Answers to Interrogatories, dated November 30, 2018 | | |
| 3 | Martinez | Priority Claimant Dailyn Martinez Answers to Defendant's Second Set of Interrogatories, dated December 4, 2018 | | |
| 4 | Martinez | Priority Claimant Dailyn Martinez First Amended Answers to Interrogatories, dated December 13, 2018 | | |
| 5 | Martinez | Dailyn Martinez First Amended Supplemental Plaintiff Profile Form, dated December 4, 2018 | | |

**B. Depositions & Corresponding Exhibits:**

| 1 | Martinez | Deposition Transcript of Dailyn Martinez, dated December 14, 2018 | | |
| 2 | Martinez | Acknowledgment of Deponent Dailyn Martinez, dated January 15, 2019 | | |
| 3 | Martinez | Errata Sheet Dailyn Martinez, dated January 15, 2019 | | |
| 4 | Martinez | Deposition Exhibit 01 - Lee County Property Appraiser - Online Parcel Inquiry - Property Data | | |
| 5 | Martinez | Deposition Exhibit 02 - Plaintiff Profile Form - Residential Properties | MartinezD00001 | MartinezD00013 |
| 6 | Martinez | Deposition Exhibit 03 - Ericksons's Drying Systems - Chinese Drywall Inspection | | |
| 7 | Martinez | Deposition Exhibit 04 - Chinese Drywall Screening, LLC Report | | |
| 8 | Martinez | Deposition Exhibit 05 - Priority Claimant Dailyn Martinez's First Amended Answers to Interrogatories | | |
| 9 | Martinez | Deposition Exhibit 06 - Kawasaki Security Agreement, Buyers Order, and Photographs | | |
| 10 | Martinez | Deposition Exhibit 07 - AG Mechanical, Inc. HVAC Service Order Invoice and Receipt | | |
| 11 | Martinez | Deposition Exhibit 08 - Water Medic of Cape Coral, Inc. Invoices | | |
| 12 | Martinez | Deposition Exhibit 09 - Miscellaneous Claim Form Worksheet and Receipts | | |
| 13 | Martinez | Deposition Exhibit 10 - Chinese Drywall Settlement Program Check Copies | | |
| 14 | Martinez | Deposition Exhibit 11 - D.E. Foeller Sales, Inc. Invoice - RV | | |
| 15 | Martinez | Deposition Exhibit 12 - 2011 Northeast 17th Place Rental Receipts | | |
| 16 | Martinez | Deposition Exhibit 13 - First Amended Supplemental Plaintiff Profile Form | | |
| 17 | Martinez | Deposition Exhibit 14 - Chinese Drywall Experts, LLC Contract Quote | | |
| 18 | Martinez | Deposition Exhibit 15 - Gabisa Construction, Inc. Estimates | | |

**C. Supporting Documentation**

| 1 | Martinez | Dailyn Martinez Out of Pocket Damages Summary Provided by Counsel | | |
| 2 | Martinez | Doc ID. 150392 - Martinez Kawasaki Motorcycle damage (photos) | | |
| 3 | Martinez | Doc ID. 150393 - Martinez Miscellaneous Claim for property damage | | |
| 4 | Martinez | Doc ID. 150421 - Martinez RV Sales Contract for ALE | | |
| 5 | Martinez | Doc ID. 150426 - Martinez Rent Receipts for ALE | | |
| 6 | Martinez | Doc ID. 316599 - Martinez Receipts for personal property damaged (replaced) | | |
| 7 | Martinez | Doc ID. 365817 - Martinez receipts for damaged appliances (replaced) | | |
| 8 | Martinez | Doc ID. 365944 - Martinez HVAC repair by AG Mechanical, Inc. | | |

12.A
Documents and Other Information Considered - Dailyn Martinez

*Chinese Drywall Litigation Involving Priority Claimants*

*Bate Stamp (if applicable)*

| No. | Claimant | General Description | First Page | Last Page |
|-----|----------|--------------------|------------|-----------|
| 9 | Martinez | Doc ID. 366311 - Martinez HSBC Mortgage statement | | |
| 10 | Martinez | Doc ID. 366393 - Martinez Lease Agreement for ALE (1718 SW 12 Terr, Cape Coral, FL) | | |
| 11 | Martinez | Doc ID. 366394 - Martinez Lease Agreement for ALE (2011 NE 18 PL, Cape Coral, FL) | | |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-22408-Civ-COOKE

EDUARDO AND CARMEN AMORIN, *et al.*,
individually and on behalf of others similarly
situated,

       Plaintiffs,

vs.

TAISHAN GYPSUM CO., LTD., f/k/a
SHANDONG TIASHE DONGXIN CO. LTD.,
*et al.*,

       Defendants.

_____

# Exhibit 13

**Calculations of Damages for Priority Claimants**

# Jose & Adela Miranda

EXHIBIT TO THE EXPERT WITNESS REPORT OF:
MICHAEL P. ELKIN, CPA/CFF/ABV, CFE
IN THE PRIORITY CLAIMANT TRIAL

February 19, 2019



Exhibit 13
Data and Damage Summary - Jose & Adela Miranda

*Chinese Drywall Litigation Involving Priority Claimants*

| Data: | | *Reference / Notes* |
|---|---|---|
| Address of Affected property | 8890 SW 229 Street | *SPPF* |
| | Miami, FL 33190 | *SPPF* |
| Date Affected property acquired | January 22, 2007 | *SPPF* |
| Date Chinese drywall installed | 2006 | *SPPF* |
| Date moved into Affected property | January 22, 2007 | *SPPF* |
| Date first aware of Chinese drywall | Jan-10 | *SPPF* |
| | | |
| Move out date to alternate living | N/A | *SPPF* |
| Date returned to Affected property | Never | *ROG 1, #2* |
| End date for alternate living expenses | Never | *ROG 1, #2* |
| | | |
| Still own property? | N | *SPPF* |
| Bankruptcy caused by damage? | N | *SPPF* |
| Foreclosure or short sale? | Y | *SPPF* |
| Affected property sold? | Y | *ROG 1, #2* |
| Sale date | November 2, 2017 | *SPPF* |
| Type of sale | Foreclosure | *SPPF* |
| | | |
| Remediation status | None | *SPPF* |
| Remediation period | N/A | *SPPF* |

| Damage Summary: | | |
|---|---|---|
| Full or Partial Out-of-Pocket Remediation Expenses | $                - | |
| | | |
| Other Damages | | |
| Alternate Living Expenses | $                - | |
| Personal Property Damage Expense | - | |
| Additional Damages | 5,500 | *Exh. 13.1* |
| | $            5,500 | |
| | | |
| Lost Equity | $          41,756 | *Exh. 13.2* |
| | | |
| Diminution in Value / Lost Equity | TBD | |
| | | |
| Loss of Use and Enjoyment | TBD | |
| | | |
| Punitive Damages | TBD | |

Exhibit 13.1
Damage Claims Detail - Jose & Adela Miranda

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/Doc. ID | PDF Page No. |
|------|--------|-------------|--------|------|--------------|----------------|-------|-----------------|--------------|
| Additional Damages | Pila Law Group | Attorney Fees | $ 1,000 | 6/5/2012 | | Engagement Agreement | N/A | Exhibit 11 | 1 |
| Additional Damages | Pila Law Group | Attorney Fees | 500 | 7/1/2012 | | Engagement Agreement | N/A | Exhibit 11 | 1 |
| Additional Damages | Pila Law Group | Attorney Fees | 500 | 8/1/2012 | | Engagement Agreement | N/A | Exhibit 11 | 1 |
| Additional Damages | Pila Law Group | Attorney Fees | 500 | 9/1/2012 | | Engagement Agreement | N/A | Exhibit 11 | 1 |
| Additional Damages | Pila Law Group | Attorney Fees | 500 | 10/1/2012 | | Engagement Agreement | N/A | Exhibit 11 | 1 |
| Additional Damages | J.P. Law Firm | Attorney Fees | 1,000 | 11/14/2016 | | Engagement Agreement | N/A | Exhibit 11 | 4 |
| Additional Damages | J.P. Law Firm | Attorney Fees | 500 | 1/1/2017 | | Engagement Agreement | N/A | Exhibit 11 | 4 |
| Additional Damages | J.P. Law Firm | Attorney Fees | 500 | 2/1/2017 | | Engagement Agreement | N/A | Exhibit 11 | 4 |
| Additional Damages | J.P. Law Firm | Attorney Fees | 500 | 3/1/2017 | | Engagement Agreement | N/A | Exhibit 11 | 4 |
| **Additional Damages Total** | | | $ 5,500 | | | | | | |

Exhibit 13.2
Lost Equity - Jose & Adela Miranda

*Chinese Drywall Litigation Involving Priority Claimants*

| | | | | Source Document |
|---|---|---|---|---|
| **Initial Acquisition** | | | | |
| Purchase Price | | $ | 302,790 | Exhibit 1 - J Miranda - HUD Statement dated 1/22/07 |
| Settlement Charges | | | 16,551 | Exhibit 1 - J Miranda - HUD Statement dated 1/22/07 |
| Total Gross Amount Due from Claimant | | $ | 319,341 | |
| | | | | |
| **Less** | | | | |
| Deposit Made by Claimant | | $ | (30,200) | Exhibit 1 - J Miranda - HUD Statement dated 1/22/07 |
| Borrowings by Claimant | | | (272,511) | Exhibit 1 - J Miranda - HUD Statement dated 1/22/07 |
| Credits | | | (5,074) | Exhibit 1 - J Miranda - HUD Statement dated 1/22/07 |
| Amount Due from Claimant at Close | | $ | 11,556 | |
| | | | | |
| **Funds Paid by Claimant** | | | | |
| Deposit Paid with Contract | | $ | 30,200 | Exhibit 1 - J Miranda - HUD Statement dated 1/22/07 |
| Closing Cash Payments | | | 11,556 | Exhibit 1 - J Miranda - HUD Statement dated 1/22/07 |
| Total Payments for Initial Purchase | a | $ | 41,756 | |
| | | | | |
| **Mortgage** | | | | |
| Mortgage Beginning Balance | | $ | 272,511 | Exhibit 1 - J Miranda - HUD Statement dated 1/22/07 |
| Mortgage Balance at Payoff | | | 272,511 | Exhibit 10 - Consent Final Judgment of Foreclosure |
| Principal Payments Made | b | $ | - | |
| | | | | |
| **Total Lost Equity** | = a + b | $ | 41,756 | |

.

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Vendor | Description | Amount | Total Interest Through 7/22/2019 |
|---|---|---|---|---|---|---|
| 6/5/2012 | 7/5/2012 | Additional Damages | Pila Law Group | Attorney Fees | $ 1,000 | $ 359 |
| 7/1/2012 | 7/31/2012 | Additional Damages | Pila Law Group | Attorney Fees | 500 | 178 |
| 8/1/2012 | 8/31/2012 | Additional Damages | Pila Law Group | Attorney Fees | 500 | 176 |
| 9/1/2012 | 10/1/2012 | Additional Damages | Pila Law Group | Attorney Fees | 500 | 174 |
| 10/1/2012 | 10/31/2012 | Additional Damages | Pila Law Group | Attorney Fees | 500 | 172 |
| 11/14/2016 | 12/14/2016 | Additional Damages | J.P. Law Firm | Attorney Fees | 1,000 | 147 |
| 1/1/2017 | 1/31/2017 | Additional Damages | J.P. Law Firm | Attorney Fees | 500 | 70 |
| 2/1/2017 | 3/3/2017 | Additional Damages | J.P. Law Firm | Attorney Fees | 500 | 68 |
| 3/1/2017 | 3/31/2017 | Additional Damages | J.P. Law Firm | Attorney Fees | 500 | 66 |
| | | **Additional Damages Total** | | | $ 5,500 | $ 1,410 |

Exhibit 13.3A
Calculation of Prejudgment Interest Detail - Jose & Adela Miranda

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Amount | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 3/31/2016 | 6/30/2016 | 9/30/2016 | 12/31/2016 | 3/31/2017 | 6/30/2017 | 9/30/2017 | 12/31/2017 | 3/31/2018 | 6/30/2018 | 9/30/2018 | 12/31/2018 | 7/22/2019 | Total Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/5/2012 | 7/5/2012 | Additional Damages | $ 1,000 | 23 | 48 | 48 | 48 | 12 | 12 | 12 | 12 | 12 | 13 | 13 | 13 | 14 | 14 | 15 | 15 | 35 | 359 |
| 7/1/2012 | 7/31/2012 | Additional Damages | 500 | 10 | 24 | 24 | 24 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 7 | 7 | 8 | 8 | 18 | 178 |
| 8/1/2012 | 8/31/2012 | Additional Damages | 500 | 8 | 24 | 24 | 24 | 6 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 7 | 8 | 8 | 18 | 176 |
| 9/1/2012 | 10/1/2012 | Additional Damages | 500 | 6 | 24 | 24 | 24 | 6 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 7 | 8 | 8 | 18 | 174 |
| 10/1/2012 | 10/31/2012 | Additional Damages | 500 | 4 | 24 | 24 | 24 | 6 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 7 | 8 | 8 | 18 | 172 |
| 11/14/2016 | 12/14/2016 | Additional Damages | 1,000 | - | - | - | - | - | - | - | 2 | 12 | 13 | 13 | 13 | 14 | 14 | 15 | 15 | 35 | 147 |
| 1/1/2017 | 1/31/2017 | Additional Damages | 500 | - | - | - | - | - | - | - | - | 4 | 6 | 7 | 7 | 7 | 7 | 8 | 8 | 18 | 70 |
| 2/1/2017 | 3/3/2017 | Additional Damages | 500 | - | - | - | - | - | - | - | - | 2 | 6 | 7 | 7 | 7 | 7 | 8 | 8 | 18 | 68 |
| 3/1/2017 | 3/31/2017 | Additional Damages | 500 | - | - | - | - | - | - | - | - | - | 6 | 7 | 7 | 7 | 7 | 8 | 8 | 18 | 66 |
| | | **Total Additional Damages** | $ 5,500 | 51 | 143 | 143 | 143 | 35 | 36 | 36 | 39 | 55 | 69 | 72 | 74 | 75 | 78 | 83 | 84 | 194 | 1,410 |

*Assumptions:*

| | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 3/31/2016 | 6/30/2016 | 9/30/2016 | 12/31/2016 | 3/31/2017 | 6/30/2017 | 9/30/2017 | 12/31/2017 | 3/31/2018 | 6/30/2018 | 9/30/2018 | 12/31/2018 | 7/22/2019 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Florida Statutory Interest Rates | | | | | | | | | | |
| Annual | 4.75% | 4.75% | 4.75% | 4.75% | 4.75% | 4.78% | 4.84% | 4.91% | 4.97% | 5.05% | 5.17% | 5.35% | 5.53% | 5.72% | 5.97% | 6.09% | 6.33% |
| Per Diem | 0.0129781% | 0.0130137% | 0.0130137% | 0.0130137% | 0.0129781% | 0.01306011% | 0.01322404% | 0.01341530% | 0.01361644% | 0.01383562% | 0.01416438% | 0.0146575% | 0.0151507% | 0.0156712% | 0.0163562% | 0.0166849% | 0.0173425% |

13.A
Documents and Other Information Considered - Jose & Adela Miranda

*Chinese Drywall Litigation Involving Priority Claimants*

*Bate Stamp (if applicable)*

| No. | Claimant | General Description | First Page | Last Page |
|---|---|---|---|---|
| **A. Pleadings and Other Legal Documents:** | | | | |
| 1 | All | Trial Plan for Property Damage Claims and Scheduling Order dated November 16, 2018 | | |
| 2 | Miranda | Plaintiff Jose Miranda Answers to Interrogatories, dated November 30, 2018 | | |
| 3 | Miranda | Plaintiff Jose Miranda Supplemental Plaintiff Profile Form - Amended, dated | | |
| 4 | Miranda | Plaintiff Adela Miranda Answers to Interrogatories, dated November 30, 2018 | | |
| **B. Depositions & Corresponding Exhibits:** | | | | |
| 1 | Miranda | Deposition Transcript of Adela Miranda, dated December 22, 2018 | | |
| 2 | Miranda | Deposition Transcript of Jose Miranda, dated December 22, 2018 | | |
| 3 | Miranda | Deposition Exhibit 01 - Plaintiff Jose Miranda's First Amended Response to Defendants' Second Set of Interrogatories | | |
| 4 | Miranda | Deposition Exhibit 02 - Property Search Miami-Dade County Office of the Property Appraiser Summary Report | | |
| 5 | Miranda | Deposition Exhibit 03 - Third Amended Supplemental Plaintiff Profile Form | | |
| 6 | Miranda | Deposition Exhibit 04 - Certificate of Title | | |
| 7 | Miranda | Deposition Exhibit 01 - U.S. Department of Housing and Urban Development - Settlement Statement | | |
| 8 | Miranda | Deposition Exhibit 02 - Trial Loan Document Scan Sheet | | |
| 9 | Miranda | Deposition Exhibit 03 - Declaration of Correctness of Square Footage on Chinese Drywall Client(s) Property for Remediation Damages | | |
| 10 | Miranda | Deposition Exhibit 04 - Property Search Application - Miami-Dade County Property Information | | |
| 11 | Miranda | Deposition Exhibit 05 - Third Amended Supplemental Plaintiff Profile Form | | |
| 12 | Miranda | Deposition Exhibit 06 - Photographs | | |
| 13 | Miranda | Deposition Exhibit 07 - January 15, 2010 Chinese Drywall Screening, LLC Inspection Reports | | |
| 14 | Miranda | Deposition Exhibit 08 - Chinese Drywall Settlement Program Check Copies | | |
| 15 | Miranda | Deposition Exhibit 09 - June 5, 2010 Letter from Wells Fargo Home Mortgage | | |
| 16 | Miranda | Deposition Exhibit 10 - Consent Final Judgment of Foreclosure | | |
| 17 | Miranda | Deposition Exhibit 11 - Attorney Engagement Agreement and Retainer Agreement | | |
| 18 | Miranda | Deposition Exhibit 12 - Plaintiff Jose Miranda's First Amended Response to Defendants' Second Set of Interrogatories | | |
| 19 | Miranda | Deposition Exhibit 13 - Plaintiff Jose Miranda's Response to Defendants' Interrogatories | | |
| 20 | Miranda | Deposition Exhibit 14 - Verification | | |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-22408-Civ-COOKE

EDUARDO AND CARMEN AMORIN, *et al.*,
individually and on behalf of others similarly
situated,

       Plaintiffs,

vs.

TAISHAN GYPSUM CO., LTD., f/k/a
SHANDONG TIASHE DONGXIN CO. LTD.,
*et al.*,

       Defendants.

_____

# Exhibit 14

**Calculations of Damages for Priority Claimants**

# Tracy Nguyen & Mai Tuyen

EXHIBIT TO THE EXPERT WITNESS REPORT OF:
MICHAEL P. ELKIN, CPA/CFF/ABV, CFE
IN THE PRIORITY CLAIMANT TRIAL

February 19, 2019



Exhibit 14
Data and Damage Summary - Tracy Nguyen & Mai Tuyen

*Chinese Drywall Litigation Involving Priority Claimants*

| Data: | | Reference / Notes |
|---|---|---|
| Address of Affected property | 103 SE 16th Place | *SPPF* |
| | Cape Coral, FL 33990 | *SPPF* |
| Date Affected property acquired | June 4, 2004 | *SPPF* |
| Date Chinese drywall installed | 2006 | *SPPF* |
| Date moved into Affected property | Began Construction in 2005 | *SPPF* |
| Date first aware of Chinese drywall | 2010 | *SPPF* |
| | | |
| Move out date to alternate living | May 21, 2010 | *SPPF* |
| Date returned to Affected property | May 5, 2015 | *ROG 1, #2* |
| End date for alternate living expenses | May 5, 2015 | *ROG 1, #2* |
| | | |
| Still own property? | Y | *ROG 1, #2* |
| Bankruptcy caused by damage? | N | *SPPF* |
| Foreclosure or short sale? | N | *SPPF* |
| Affected property sold? | N | *ROG 1, #2* |
| Sale date | N/A | *SPPF* |
| Type of sale | N/A | *SPPF* |
| | | |
| Remediation status | Partial | *SPPF* |
| Remediation period | February 2015 - May 2015 | *SPPF* |

| Damage Summary: | | |
|---|---|---|
| Full or Partial Out-of-Pocket Remediation Expenses | $ 68,095 | |
| | | |
| Other Damages | | |
| Alternate Living Expenses | $ 54,000 | *Exh. 14.1* |
| Personal Property Damage Expense | 463 | *Exh. 14.1* |
| Additional Damages | - | |
| | $ 54,463 | |
| | | |
| Lost Equity | TBD | |
| | | |
| Diminution in Value | TBD | |
| | | |
| Loss of Use and Enjoyment | TBD | |
| | | |
| Punitive Damages | TBD | |

Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 215 of 802
Case 2:11-cv-22408-MCE Document 272 Entered on FLSD Docket 08/15/2013 Page 294 of
262

Exhibit 14.1
Damage Claims Detail - Tracy Nguyen & Mai Tuyen

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/Doc. ID | PDF Page No. |
|------|--------|-------------|--------|------|--------------|----------------|-------|-----------------|--------------|
| Remediation | Alex Fite, State Certified Air Cond., | Fix A/C | $ 3,957 | 2/23/2013 | | Invoice & Check | N/A | Exhibit 11 | 16&17 |
| Remediation | J & A Stucco Drywall | Drywall - Permit | 5,000 | 1/14/2015 | | Check | N/A | Exhibit 11 | 3 |
| Remediation | J & A Stucco Drywall | Drywall - Removed | 12,000 | 2/28/2015 | X | Contract | N/A | Exhibit 11 | 1 to 2 |
| Remediation | J & A Stucco Drywall | Drywall, Base Board,Trim | 15,000 | 3/18/2015 | | Check | N/A | Exhibit 11 | 3 |
| Remediation | J & A Stucco Drywall | Drywall - Ready for Inspection | 5,000 | 4/5/2015 | X | Contract | N/A | Exhibit 11 | 1 to 2 |
| Remediation | J & A Stucco Drywall | Drywall - CO | 6,000 | 4/5/2015 | X | Contract | N/A | Exhibit 11 | 1 to 2 |
| Remediation | Alberto Perez (J & A Stucco) | Electricity | 4,500 | 2/15/2015 | | Check & Bank Statement | N/A | Exhibit 11 | 5 to 8 |
| Remediation | Alberto Perez (J & A Stucco) | Electricity | 2,500 | 3/5/2015 | | Check & Bank Statement | N/A | Exhibit 11 | 9 to 11 |
| Remediation | J & A Stucco Drywall | Electricity | 2,000 | 4/1/2015 | X | Contract | N/A | Exhibit 11 | 1 to 2 |
| Remediation | J & A Stucco Drywall | Tile | 3,000 | 4/1/2015 | X | Contract | N/A | Exhibit 11 | 1 to 2 |
| Remediation | J & A Stucco Drywall | Tile | 3,000 | 4/1/2015 | X | Contract | N/A | Exhibit 11 | 1 to 2 |
| Remediation | J & A Stucco Drywall | Plumbing | 3,500 | 4/1/2015 | X | Contract | N/A | Exhibit 11 | 1 to 2 |
| Remediation | Alex Fite, State Certified Air Cond., | Fix A/C | 1,500 | 4/3/2015 | | Invoice & Check | N/A | Exhibit 11 | 18 to 21 |
| Remediation | Alex Fite, State Certified Air Cond., | Fix A/C | 1,138 | 4/3/2015 | X | Invoice & Check | N/A | Exhibit 11 | 18 to 21 |
| **Remediation Total** | | | 68,095 | | | | | | |
| Alternate Living Expenses | Tuyen Mai | Rent | $ 900 | 5/1/2010 | x | Depo/Letter | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 6/1/2010 | x | Depo/Letter | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 7/1/2010 | x | Depo/Letter | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 8/1/2010 | x | Depo/Letter | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 9/1/2010 | x | Depo/Letter | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 10/1/2010 | x | Depo/Letter | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 11/1/2010 | x | Depo/Letter | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 12/1/2010 | x | Depo/Letter | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 1/1/2011 | x | Depo/Letter | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 2/1/2011 | x | Depo/Letter | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 3/1/2011 | x | Depo/Letter | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 4/1/2011 | x | Depo/Letter | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 5/1/2011 | x | Depo/Letter | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 6/1/2011 | x | Depo/Letter | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 7/1/2011 | x | Closing Statement/Depo | N/A | 365784 | 1 |
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 8/1/2011 | x | Closing Statement/Depo | N/A | 365784 | 1 |
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 9/1/2011 | x | Closing Statement/Depo | N/A | 365784 | 1 |
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 10/1/2011 | x | Closing Statement/Depo | N/A | 365784 | 1 |
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 11/1/2011 | x | Closing Statement/Depo | N/A | 365784 | 1 |
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 12/1/2011 | x | Closing Statement/Depo | N/A | 365784 | 1 |
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 1/1/2012 | x | Closing Statement/Depo | N/A | 365784 | 1 |
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 2/1/2012 | x | Closing Statement/Depo | N/A | 365784 | 1 |

Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 216 of 802
Case 2:11-cv-22408-MCE-FEF Document 272 entered on FLSD Docket 08/15/2013 Page 295 of
262

Exhibit 14.1
Damage Claims Detail - Tracy Nguyen & Mai Tuyen

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 3/1/2012 | x | Closing Statement/Depo | N/A | 365784 | 1 |
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 4/1/2012 | x | Closing Statement/Depo | N/A | 365784 | 1 |
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 5/1/2012 | x | Closing Statement/Depo | N/A | 365784 | 1 |
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 6/1/2012 | x | Closing Statement/Depo | N/A | 365784 | 1 |
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 7/1/2012 | x | Closing Statement/Depo | N/A | 365784 | 1 |
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 8/1/2012 | x | Closing Statement/Depo | N/A | 365784 | 1 |
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 9/1/2012 | x | Closing Statement/Depo | N/A | 365784 | 1 |
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 10/1/2012 | x | Closing Statement/Depo | N/A | 365784 | 1 |
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 11/1/2012 | x | Closing Statement/Depo | N/A | 365784 | 1 |
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 12/1/2012 | x | Closing Statement/Depo | N/A | 365784 | 1 |
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 1/1/2013 | x | Closing Statement/Depo | N/A | 365784 | 1 |
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 2/1/2013 | x | Closing Statement/Depo | N/A | 365784 | 1 |
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 3/1/2013 | x | Closing Statement/Depo | N/A | 365784 | 1 |
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 4/1/2013 | x | Closing Statement/Depo | N/A | 365784 | 1 |
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 5/1/2013 | x | Closing Statement/Depo | N/A | 365784 | 1 |
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 6/1/2013 | x | Closing Statement/Depo | N/A | 365784 | 1 |
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 7/1/2013 | x | Closing Statement/Depo | N/A | 365784 | 1 |
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 8/1/2013 | x | Closing Statement/Depo | N/A | 365784 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 9/1/2013 | | Receipt | N/A | 136388 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 10/1/2013 | | Receipt | N/A | 136388 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 11/1/2013 | x | Depo | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 12/1/2013 | x | Depo | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 1/1/2014 | x | Depo | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 2/1/2014 | x | Depo | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 3/1/2014 | x | Depo | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 4/1/2014 | x | Depo | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 5/1/2014 | x | Depo | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 6/1/2014 | x | Depo | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 7/1/2014 | x | Depo | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 8/1/2014 | x | Depo | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 9/1/2014 | x | Depo | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 10/1/2014 | x | Depo | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 11/1/2014 | x | Depo | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 12/1/2014 | x | Depo | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 1/1/2015 | x | Depo | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 2/1/2015 | x | Depo | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 3/1/2015 | x | Depo | N/A | 133154 | 1 |

Exhibit 14.1
Damage Claims Detail - Tracy Nguyen & Mai Tuyen

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/Doc. ID | PDF Page No. |
|------|--------|-------------|--------|------|--------------|----------------|-------|-----------------|--------------|
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 4/1/2015 | x | Depo | N/A | 133154 | 1 |
| **Alternate Living Expenses Total** | | | $ 54,000 | | | | | | |
| Personal Property Damage Expense | Central Air Conditioning Inc. | Fix A/C | $ 169 | 8/23/2007 | | Invoice | N/A | Exhibit 8 | 5&6 |
| Personal Property Damage Expense | Central Air Conditioning Inc. | Fix A/C | 152 | 8/21/2008 | | Invoice | N/A | Exhibit 8 | 3&4 |
| Personal Property Damage Expense | Central Air Conditioning Inc. | Fix A/C | 142 | 5/28/2010 | | Invoice | N/A | Exhibit 8 | 1&2 |
| **Personal Property Damages Expense Total** | | | $ 463 | | | | | | |

Exhibit 14.3
Calculation of Prejudgment Interest Summary - Tracy Nguyen & Mai Tuyen

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Vendor | Description | Amount | Total Interest Through 7/22/2019 |
|---|---|---|---|---|---|---|
| 2/23/2013 | 2/23/2013 | Remediation | Alex Fite, State Certified Air Cond., | Fix A/C | $ 3,957 | $ 1,300 |
| 1/14/2015 | 1/14/2015 | Remediation | J & A Stucco Drywall | Drywall - Permit | 5,000 | 1,194 |
| 2/28/2015 | 2/28/2015 | Remediation | J & A Stucco Drywall | Drywall - Removed | 12,000 | 2,795 |
| 3/18/2015 | 3/18/2015 | Remediation | J & A Stucco Drywall | Drywall, Base Board,Trim | 15,000 | 3,458 |
| 4/5/2015 | 4/5/2015 | Remediation | J & A Stucco Drywall | Drywall - Ready for Inspection | 5,000 | 1,141 |
| 4/5/2015 | 4/5/2015 | Remediation | J & A Stucco Drywall | Drywall - CO | 6,000 | 1,369 |
| 2/15/2015 | 2/15/2015 | Remediation | Alberto Perez (J & A Stucco) | Electricity | 4,500 | 1,056 |
| 3/5/2015 | 3/5/2015 | Remediation | Alberto Perez (J & A Stucco) | Electricity | 2,500 | 581 |
| 4/1/2015 | 4/1/2015 | Remediation | J & A Stucco Drywall | Electricity | 2,000 | 457 |
| 4/1/2015 | 4/1/2015 | Remediation | J & A Stucco Drywall | Tile | 3,000 | 686 |
| 4/1/2015 | 4/1/2015 | Remediation | J & A Stucco Drywall | Tile | 3,000 | 686 |
| 4/1/2015 | 4/1/2015 | Remediation | J & A Stucco Drywall | Plumbing | 3,500 | 801 |
| 4/3/2015 | 4/3/2015 | Remediation | Alex Fite, State Certified Air Cond., | Fix A/C | 1,500 | 343 |
| 4/3/2015 | 4/3/2015 | Remediation | Alex Fite, State Certified Air Cond., | Fix A/C | 1,138 | 260 |
| | | **Remediation Total** | | | $ 68,095 | $ 16,126 |
| 5/1/2010 | 5/31/2010 | Alternate Living Expenses | Tuyen Mai | Rent | $ 900 | $ 428 |
| 6/1/2010 | 7/1/2010 | Alternate Living Expenses | Tuyen Mai | Rent | 900 | 423 |
| 7/1/2010 | 7/31/2010 | Alternate Living Expenses | Tuyen Mai | Rent | 900 | 419 |
| 8/1/2010 | 8/31/2010 | Alternate Living Expenses | Tuyen Mai | Rent | 900 | 414 |
| 9/1/2010 | 10/1/2010 | Alternate Living Expenses | Tuyen Mai | Rent | 900 | 409 |
| 10/1/2010 | 10/31/2010 | Alternate Living Expenses | Tuyen Mai | Rent | 900 | 405 |
| 11/1/2010 | 12/1/2010 | Alternate Living Expenses | Tuyen Mai | Rent | 900 | 400 |
| 12/1/2010 | 12/31/2010 | Alternate Living Expenses | Tuyen Mai | Rent | 900 | 396 |
| 1/1/2011 | 1/31/2011 | Alternate Living Expenses | Tuyen Mai | Rent | 900 | 391 |
| 2/1/2011 | 3/3/2011 | Alternate Living Expenses | Tuyen Mai | Rent | 900 | 387 |
| 3/1/2011 | 3/31/2011 | Alternate Living Expenses | Tuyen Mai | Rent | 900 | 383 |
| 4/1/2011 | 5/1/2011 | Alternate Living Expenses | Tuyen Mai | Rent | 900 | 378 |
| 5/1/2011 | 5/31/2011 | Alternate Living Expenses | Tuyen Mai | Rent | 900 | 374 |
| 6/1/2011 | 7/1/2011 | Alternate Living Expenses | Tuyen Mai | Rent | 900 | 369 |
| 7/1/2011 | 7/31/2011 | Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 365 |
| 8/1/2011 | 8/31/2011 | Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 360 |
| 9/1/2011 | 10/1/2011 | Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 355 |
| 10/1/2011 | 10/31/2011 | Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 352 |
| 11/1/2011 | 12/1/2011 | Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 348 |
| 12/1/2011 | 12/31/2011 | Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 345 |
| 1/1/2012 | 1/31/2012 | Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 341 |
| 2/1/2012 | 3/2/2012 | Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 338 |
| 3/1/2012 | 3/31/2012 | Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 334 |
| 4/1/2012 | 5/1/2012 | Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 331 |
| 5/1/2012 | 5/31/2012 | Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 327 |
| 6/1/2012 | 7/1/2012 | Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 323 |
| 7/1/2012 | 7/31/2012 | Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 320 |
| 8/1/2012 | 8/31/2012 | Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 316 |
| 9/1/2012 | 10/1/2012 | Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 313 |
| 10/1/2012 | 10/31/2012 | Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 309 |
| 11/1/2012 | 12/1/2012 | Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 306 |
| 12/1/2012 | 12/31/2012 | Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 302 |
| 1/1/2013 | 1/31/2013 | Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 298 |
| 2/1/2013 | 3/3/2013 | Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 295 |
| 3/1/2013 | 3/31/2013 | Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 291 |
| 4/1/2013 | 5/1/2013 | Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 288 |
| 5/1/2013 | 5/31/2013 | Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 284 |
| 6/1/2013 | 7/1/2013 | Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 281 |
| 7/1/2013 | 7/31/2013 | Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 277 |
| 8/1/2013 | 8/31/2013 | Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 274 |
| 9/1/2013 | 10/1/2013 | Alternate Living Expenses | Tuyen Mai | Rent | 900 | 270 |
| 10/1/2013 | 10/31/2013 | Alternate Living Expenses | Tuyen Mai | Rent | 900 | 266 |
| 11/1/2013 | 12/1/2013 | Alternate Living Expenses | Tuyen Mai | Rent | 900 | 263 |
| 12/1/2013 | 12/31/2013 | Alternate Living Expenses | Tuyen Mai | Rent | 900 | 259 |
| 1/1/2014 | 1/31/2014 | Alternate Living Expenses | Tuyen Mai | Rent | 900 | 256 |
| 2/1/2014 | 3/3/2014 | Alternate Living Expenses | Tuyen Mai | Rent | 900 | 252 |
| 3/1/2014 | 3/31/2014 | Alternate Living Expenses | Tuyen Mai | Rent | 900 | 249 |
| 4/1/2014 | 5/1/2014 | Alternate Living Expenses | Tuyen Mai | Rent | 900 | 245 |
| 5/1/2014 | 5/31/2014 | Alternate Living Expenses | Tuyen Mai | Rent | 900 | 242 |

Exhibit 14.3
Calculation of Prejudgment Interest Summary - Tracy Nguyen & Mai Tuyen

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Vendor | Description | Amount | Total Interest Through 7/22/2019 |
|---|---|---|---|---|---|---|
| 6/1/2014 | 7/1/2014 | Alternate Living Expenses | Tuyen Mai | Rent | 900 | 238 |
| 7/1/2014 | 7/31/2014 | Alternate Living Expenses | Tuyen Mai | Rent | 900 | 234 |
| 8/1/2014 | 8/31/2014 | Alternate Living Expenses | Tuyen Mai | Rent | 900 | 231 |
| 9/1/2014 | 10/1/2014 | Alternate Living Expenses | Tuyen Mai | Rent | 900 | 227 |
| 10/1/2014 | 10/31/2014 | Alternate Living Expenses | Tuyen Mai | Rent | 900 | 224 |
| 11/1/2014 | 12/1/2014 | Alternate Living Expenses | Tuyen Mai | Rent | 900 | 220 |
| 12/1/2014 | 12/31/2014 | Alternate Living Expenses | Tuyen Mai | Rent | 900 | 217 |
| 1/1/2015 | 1/31/2015 | Alternate Living Expenses | Tuyen Mai | Rent | 900 | 213 |
| 2/1/2015 | 3/3/2015 | Alternate Living Expenses | Tuyen Mai | Rent | 900 | 209 |
| 3/1/2015 | 3/31/2015 | Alternate Living Expenses | Tuyen Mai | Rent | 900 | 206 |
| 4/1/2015 | 5/1/2015 | Alternate Living Expenses | Tuyen Mai | Rent | 900 | 202 |
| | | Alternate Living Expenses Total | | | $ 54,000 | $ 18,569 |
| 8/23/2007 | 9/22/2007 | Personal Property Damage Expense | Central Air Conditioning Inc. | Fix A/C | $ 169 | $ 122 |
| 8/21/2008 | 9/20/2008 | Personal Property Damage Expense | Central Air Conditioning Inc. | Fix A/C | 152 | 93 |
| 5/28/2010 | 6/27/2010 | Personal Property Damage Expense | Central Air Conditioning Inc. | Fix A/C | 142 | 67 |
| | | Personal Property Damages Expense Total | | | $ 463 | $ 281 |

Exhibit 14.3A
Calculation of Prejudgment Interest Detail - Tracy Nguyen & Mai Tuyen

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Amount | 12/31/2007 | 12/31/2008 | 12/31/2009 | 12/31/2010 | 9/30/2011 | 12/31/2011 | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 3/31/2016 | 6/30/2016 | 9/30/2016 | 12/31/2016 | 3/31/2017 | 6/30/2017 | 9/30/2017 | 12/31/2017 | 3/31/2018 | 6/30/2018 | 9/30/2018 | 12/31/2018 | 7/22/2019 | Total Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2/23/2013 | 2/23/2013 | Remediation | $ 3,957 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 160 | $ 188 | $ 188 | $ 47 | $ 47 | $ 48 | $ 49 | $ 48 | $ 50 | $ 52 | $ 53 | $ 54 | $ 56 | $ 60 | $ 61 | $ 139 | $ 1,300 |
| 1/14/2015 | 1/14/2015 | Remediation | 5,000 | - | - | - | - | - | - | - | - | - | 228 | 59 | 59 | 61 | 62 | 61 | 63 | 65 | 67 | 68 | 71 | 75 | 77 | 176 | 1,194 |
| 2/28/2015 | 2/28/2015 | Remediation | 12,000 | - | - | - | - | - | - | - | - | - | 478 | 142 | 143 | 146 | 148 | 147 | 151 | 156 | 162 | 164 | 171 | 181 | 184 | 422 | 2,795 |
| 3/18/2015 | 3/18/2015 | Remediation | 15,000 | - | - | - | - | - | - | - | - | - | 562 | 177 | 178 | 182 | 185 | 184 | 189 | 195 | 202 | 205 | 214 | 226 | 230 | 528 | 3,458 |
| 4/5/2015 | 4/5/2015 | Remediation | 5,000 | - | - | - | - | - | - | - | - | - | 176 | 59 | 59 | 61 | 62 | 61 | 63 | 65 | 67 | 68 | 71 | 75 | 77 | 176 | 1,141 |
| 4/5/2015 | 4/5/2015 | Remediation | 6,000 | - | - | - | - | - | - | - | - | - | 211 | 71 | 71 | 73 | 74 | 74 | 76 | 78 | 81 | 82 | 86 | 90 | 92 | 211 | 1,369 |
| 2/15/2015 | 2/15/2015 | Remediation | 4,500 | - | - | - | - | - | - | - | - | - | 187 | 53 | 53 | 55 | 56 | 55 | 57 | 59 | 61 | 61 | 64 | 68 | 69 | 158 | 1,056 |
| 3/5/2015 | 3/5/2015 | Remediation | 2,500 | - | - | - | - | - | - | - | - | - | 98 | 30 | 30 | 30 | 31 | 31 | 31 | 33 | 34 | 34 | 36 | 38 | 38 | 88 | 581 |
| 4/1/2015 | 4/1/2015 | Remediation | 2,000 | - | - | - | - | - | - | - | - | - | 71 | 24 | 24 | 24 | 25 | 25 | 25 | 26 | 27 | 27 | 29 | 30 | 31 | 70 | 457 |
| 4/1/2015 | 4/1/2015 | Remediation | 3,000 | - | - | - | - | - | - | - | - | - | 107 | 35 | 36 | 36 | 37 | 37 | 38 | 39 | 40 | 41 | 43 | 45 | 46 | 106 | 686 |
| 4/1/2015 | 4/1/2015 | Remediation | 3,000 | - | - | - | - | - | - | - | - | - | 107 | 35 | 36 | 36 | 37 | 37 | 38 | 39 | 40 | 41 | 43 | 45 | 46 | 106 | 686 |
| 4/1/2015 | 4/1/2015 | Remediation | 3,500 | - | - | - | - | - | - | - | - | - | 125 | 41 | 42 | 43 | 43 | 43 | 44 | 46 | 47 | 48 | 50 | 53 | 54 | 123 | 801 |
| 4/3/2015 | 4/3/2015 | Remediation | 1,500 | - | - | - | - | - | - | - | - | - | 53 | 18 | 18 | 18 | 19 | 18 | 19 | 20 | 20 | 20 | 21 | 23 | 23 | 53 | 343 |
| 4/3/2015 | 4/3/2015 | Remediation | 1,138 | - | - | - | - | - | - | - | - | - | 40 | 13 | 14 | 14 | 14 | 14 | 14 | 15 | 15 | 16 | 16 | 17 | 17 | 40 | 260 |
| | | Remediation Total | $ 68,095 | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 160 | $ 188 | $ 2,631 | $ 804 | $ 809 | $ 828 | $ 840 | $ 834 | $ 857 | $ 887 | $ 918 | $ 929 | $ 971 | $ 1,025 | $ 1,045 | $ 2,397 | $ 16,126 |
| 5/1/2010 | 5/31/2010 | Alternate Living Expenses | $ 900 | $ - | $ - | $ - | $ 32 | $ 40 | $ 11 | $ 43 | $ 43 | $ 43 | $ 43 | $ 11 | $ 11 | $ 11 | $ 11 | $ 11 | $ 11 | $ 12 | $ 12 | $ 12 | $ 13 | $ 14 | $ 14 | $ 32 | $ 428 |
| 6/1/2010 | 7/1/2010 | Alternate Living Expenses | 900 | - | - | - | 27 | 40 | 11 | 43 | 43 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 423 |
| 7/1/2010 | 7/31/2010 | Alternate Living Expenses | 900 | - | - | - | 23 | 40 | 11 | 43 | 43 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 419 |
| 8/1/2010 | 8/31/2010 | Alternate Living Expenses | 900 | - | - | - | 18 | 40 | 11 | 43 | 43 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 414 |
| 9/1/2010 | 10/1/2010 | Alternate Living Expenses | 900 | - | - | - | 13 | 40 | 11 | 43 | 43 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 409 |
| 10/1/2010 | 10/31/2010 | Alternate Living Expenses | 900 | - | - | - | 9 | 40 | 11 | 43 | 43 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 405 |
| 11/1/2010 | 12/1/2010 | Alternate Living Expenses | 900 | - | - | - | 4 | 40 | 11 | 43 | 43 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 400 |
| 12/1/2010 | 12/31/2010 | Alternate Living Expenses | 900 | - | - | - | - | 40 | 11 | 43 | 43 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 396 |
| 1/1/2011 | 1/31/2011 | Alternate Living Expenses | 900 | - | - | - | - | 36 | 11 | 43 | 43 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 391 |
| 2/1/2011 | 3/3/2011 | Alternate Living Expenses | 900 | - | - | - | - | 31 | 11 | 43 | 43 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 387 |
| 3/1/2011 | 3/31/2011 | Alternate Living Expenses | 900 | - | - | - | - | 27 | 11 | 43 | 43 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 383 |
| 4/1/2011 | 5/1/2011 | Alternate Living Expenses | 900 | - | - | - | - | 22 | 11 | 43 | 43 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 378 |
| 5/1/2011 | 5/31/2011 | Alternate Living Expenses | 900 | - | - | - | - | 18 | 11 | 43 | 43 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 374 |
| 6/1/2011 | 7/1/2011 | Alternate Living Expenses | 900 | - | - | - | - | 13 | 11 | 43 | 43 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 369 |
| 7/1/2011 | 7/31/2011 | Alternate Living Expenses | 900 | - | - | - | - | 9 | 11 | 43 | 43 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 365 |
| 8/1/2011 | 8/31/2011 | Alternate Living Expenses | 900 | - | - | - | - | 4 | 11 | 43 | 43 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 360 |
| 9/1/2011 | 10/1/2011 | Alternate Living Expenses | 900 | - | - | - | - | - | 11 | 43 | 43 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 355 |
| 10/1/2011 | 10/31/2011 | Alternate Living Expenses | 900 | - | - | - | - | - | 7 | 43 | 43 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 352 |
| 11/1/2011 | 12/1/2011 | Alternate Living Expenses | 900 | - | - | - | - | - | 4 | 43 | 43 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 348 |
| 12/1/2011 | 12/31/2011 | Alternate Living Expenses | 900 | - | - | - | - | - | - | 43 | 43 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 345 |
| 1/1/2012 | 1/31/2012 | Alternate Living Expenses | 900 | - | - | - | - | - | - | 39 | 43 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 341 |
| 2/1/2012 | 3/2/2012 | Alternate Living Expenses | 900 | - | - | - | - | - | - | 36 | 43 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 338 |
| 3/1/2012 | 3/31/2012 | Alternate Living Expenses | 900 | - | - | - | - | - | - | 32 | 43 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 334 |
| 4/1/2012 | 5/1/2012 | Alternate Living Expenses | 900 | - | - | - | - | - | - | 28 | 43 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 331 |
| 5/1/2012 | 5/31/2012 | Alternate Living Expenses | 900 | - | - | - | - | - | - | 25 | 43 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 327 |
| 6/1/2012 | 7/1/2012 | Alternate Living Expenses | 900 | - | - | - | - | - | - | 21 | 43 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 323 |
| 7/1/2012 | 7/31/2012 | Alternate Living Expenses | 900 | - | - | - | - | - | - | 18 | 43 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 320 |
| 8/1/2012 | 8/31/2012 | Alternate Living Expenses | 900 | - | - | - | - | - | - | 14 | 43 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 316 |
| 9/1/2012 | 10/1/2012 | Alternate Living Expenses | 900 | - | - | - | - | - | - | 11 | 43 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 313 |
| 10/1/2012 | 10/31/2012 | Alternate Living Expenses | 900 | - | - | - | - | - | - | 7 | 43 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 309 |
| 11/1/2012 | 12/1/2012 | Alternate Living Expenses | 900 | - | - | - | - | - | - | 4 | 43 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 306 |
| 12/1/2012 | 12/31/2012 | Alternate Living Expenses | 900 | - | - | - | - | - | - | - | 43 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 302 |
| 1/1/2013 | 1/31/2013 | Alternate Living Expenses | 900 | - | - | - | - | - | - | - | 39 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 298 |
| 2/1/2013 | 3/3/2013 | Alternate Living Expenses | 900 | - | - | - | - | - | - | - | 35 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 295 |
| 3/1/2013 | 3/31/2013 | Alternate Living Expenses | 900 | - | - | - | - | - | - | - | 32 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 291 |
| 4/1/2013 | 5/1/2013 | Alternate Living Expenses | 900 | - | - | - | - | - | - | - | 29 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 288 |
| 5/1/2013 | 5/31/2013 | Alternate Living Expenses | 900 | - | - | - | - | - | - | - | 25 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 284 |
| 6/1/2013 | 7/1/2013 | Alternate Living Expenses | 900 | - | - | - | - | - | - | - | 21 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 281 |
| 7/1/2013 | 7/31/2013 | Alternate Living Expenses | 900 | - | - | - | - | - | - | - | 18 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 277 |
| 8/1/2013 | 8/31/2013 | Alternate Living Expenses | 900 | - | - | - | - | - | - | - | 14 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 274 |
| 9/1/2013 | 10/1/2013 | Alternate Living Expenses | 900 | - | - | - | - | - | - | - | 11 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 270 |
| 10/1/2013 | 10/31/2013 | Alternate Living Expenses | 900 | - | - | - | - | - | - | - | 7 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 266 |
| 11/1/2013 | 12/1/2013 | Alternate Living Expenses | 900 | - | - | - | - | - | - | - | 4 | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 263 |
| 12/1/2013 | 12/31/2013 | Alternate Living Expenses | 900 | - | - | - | - | - | - | - | - | 43 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 259 |
| 1/1/2014 | 1/31/2014 | Alternate Living Expenses | 900 | - | - | - | - | - | - | - | - | 39 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 256 |
| 2/1/2014 | 3/3/2014 | Alternate Living Expenses | 900 | - | - | - | - | - | - | - | - | 35 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 252 |
| 3/1/2014 | 3/31/2014 | Alternate Living Expenses | 900 | - | - | - | - | - | - | - | - | 32 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 249 |
| 4/1/2014 | 5/1/2014 | Alternate Living Expenses | 900 | - | - | - | - | - | - | - | - | 29 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 245 |
| 5/1/2014 | 5/31/2014 | Alternate Living Expenses | 900 | - | - | - | - | - | - | - | - | 25 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 242 |
| 6/1/2014 | 7/1/2014 | Alternate Living Expenses | 900 | - | - | - | - | - | - | - | - | 21 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 238 |
| 7/1/2014 | 7/31/2014 | Alternate Living Expenses | 900 | - | - | - | - | - | - | - | - | 18 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 234 |
| 8/1/2014 | 8/31/2014 | Alternate Living Expenses | 900 | - | - | - | - | - | - | - | - | 14 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 231 |
| 9/1/2014 | 10/1/2014 | Alternate Living Expenses | 900 | - | - | - | - | - | - | - | - | 11 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 227 |
| 10/1/2014 | 10/31/2014 | Alternate Living Expenses | 900 | - | - | - | - | - | - | - | - | 7 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 224 |
| 11/1/2014 | 12/1/2014 | Alternate Living Expenses | 900 | - | - | - | - | - | - | - | - | 4 | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 220 |
| 12/1/2014 | 12/31/2014 | Alternate Living Expenses | 900 | - | - | - | - | - | - | - | - | - | 43 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 217 |
| 1/1/2015 | 1/31/2015 | Alternate Living Expenses | 900 | - | - | - | - | - | - | - | - | - | 39 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 213 |
| 2/1/2015 | 3/3/2015 | Alternate Living Expenses | 900 | - | - | - | - | - | - | - | - | - | 35 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 209 |
| 3/1/2015 | 3/31/2015 | Alternate Living Expenses | 900 | - | - | - | - | - | - | - | - | - | 32 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 206 |
| 4/1/2015 | 5/1/2015 | Alternate Living Expenses | 900 | - | - | - | - | - | - | - | - | - | 29 | 11 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 12 | 13 | 14 | 14 | 32 | 202 |
| | | Alternate Living Expenses Total | $ 54,000 | $ - | $ - | $ - | $ 126 | $ 485 | $ 194 | $ 1,090 | $ 1,603 | $ 2,116 | $ 2,529 | $ 638 | $ 642 | $ 657 | $ 666 | $ 662 | $ 680 | $ 704 | $ 728 | $ 736 | $ 770 | $ 813 | $ 829 | $ 1,901 | $ 18,569 |
| 8/23/2007 | 9/22/2007 | Personal Property Damage Expense | $ 169 | $ 5 | $ 19 | $ 14 | $ 10 | $ 8 | $ 2 | $ 8 | $ 8 | $ 8 | $ 8 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 3 | $ 3 | $ 6 | $ 122 |
| 8/21/2008 | 9/20/2008 | Personal Property Damage Expense | 152 | - | 5 | 12 | 9 | 7 | 2 | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 93 |
| 5/28/2010 | 6/27/2010 | Personal Property Damage Expense | 142 | - | - | - | 4 | 6 | 2 | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 67 |
| | | Personal Property Damages Expense Total | $ 463 | $ 5 | $ 23 | $ 26 | $ 24 | $ 21 | $ 6 | $ 22 | $ 22 | $ 22 | $ 22 | $ 5 | $ 6 | $ 6 | $ 6 | $ 6 | $ 6 | $ 6 | $ 6 | $ 6 | $ 7 | $ 7 | $ 7 | $ 16 | $ 281 |

*Assumptions:*

Florida Statutory Interest Rates

| | 12/31/2007 | 12/31/2008 | 12/31/2009 | 12/31/2010 | 9/30/2011 | 12/31/2011 | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 3/31/2016 | 6/30/2016 | 9/30/2016 | 12/31/2016 | 3/31/2017 | 6/30/2017 | 9/30/2017 | 12/31/2017 | 3/31/2018 | 6/30/2018 | 9/30/2018 | 12/31/2018 | 7/22/2019 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Annual | 11.00% | 11.00% | 8.00% | 6.00% | 6.00% | 4.75% | 4.75% | 4.75% | 4.75% | 4.75% | 4.75% | 4.78% | 4.84% | 4.91% | 4.97% | 5.05% | 5.17% | 5.35% | 5.53% | 5.72% | 5.97% | 6.09% | 6.33% |
| Per Diem | 0.0301400% | 0.0301400% | 0.0219200% | 0.0164400% | 0.0164400% | 0.0130137% | 0.0129781% | 0.0130137% | 0.0130137% | 0.0130137% | 0.0129781% | 0.01306011% | 0.01322404% | 0.01341530% | 0.01361644% | 0.01383562% | 0.01416438% | 0.0146575% | 0.0151507% | 0.0156712% | 0.0163562% | 0.0166849% | 0.0173425% |

14.A
Documents and Other Information Considered - Tracy Nguyen & Mai Tuyen

---

*Chinese Drywall Litigation Involving Priority Claimants*

*Bate Stamp (if applicable)*

| No. | Claimant | General Description | First Page | Last Page |
|---|---|---|---|---|
| **A. Pleadings and Other Legal Documents:** | | | | |
| 1 | All | Trial Plan for Property Damage Claims and Scheduling Order dated November 16, 2018 | | |
| 2 | Nguyen | Priority Claimant Tracy Nguyen Answers to Interrogatories, dated November 30, 2018 | | |
| 3 | Nguyen | Priority Claimant Tracy Nguyen Answers to Interrogatories - 2nd Amended, dated | | |
| 4 | Nguyen | Priority Claimant Tracy Nguyen Answers to Defendant's Second Set of Interrogatories, dated | | |
| 5 | Nguyen | Priority Claimant Tracy Nguyen First Amended Answers to Defendants' Second Set of Interrogatories, dated November 30, 2018 | | |
| 6 | Nguyen | Tracy Nguyen Third Amended Supplemental Profile Plaintiff Profile Form, dated January 8, 2019 | | |
| **B. Depositions & Corresponding Exhibits:** | | | | |
| 1 | Nguyen | Deposition Transcript of Tracy Nguyen, dated December 6, 2018 | | |
| 2 | Nguyen | Deposition Transcript of Mai Tuyen, dated January 8, 2019 | | |
| 3 | Nguyen | Acknowledgment of Deponent Tracy Nguyen, dated January 8, 2019 | | |
| 4 | Nguyen | Deposition Exhibit 01 - Unlimited Power of Attorney | | |
| 5 | Nguyen | Deposition Exhibit 02 - General Warranty Deed | MaiDepo000026 | MaiDepo000026 |
| 6 | Nguyen | Deposition Exhibit 03 - 2018 Real Estate Informational Notice of Ad Valorem Taxes and Non-Ad Valorem Assessments for Lee County, Florida | MaiDepo000120 | MaiDepo000145 |
| 7 | Nguyen | Deposition Exhibit 04 - Estimate and Payments - Re: Chinese Drywall Remediation | MaiDepo000304 | MaiDepo000332 |
| 8 | Nguyen | Deposition Exhibit 05 - August 23, 2007 Central Aire Conditioning Inc. Invoice | MaiDepo000011 | MaiDepo000011 |
| 9 | Nguyen | Deposition Exhibit 06 - Handwritten Rent Agreement | MaiDepo000013 | MaiDepo000013 |
| 10 | Nguyen | Deposition Exhibit 07 - Two Handwritten Receipts for Rent | MaiDepo000014 | MaiDepo000014 |
| 11 | Nguyen | Deposition Exhibit 08 - Special Warranty Deed | MaiDepo000333 | MaiDepo000335 |
| 12 | Nguyen | Deposition Exhibit 09 - Settlement Statement (HUD-1) | MaiDepo000336 | MaiDepo000344 |
| 13 | Nguyen | Deposition Exhibit 10 - Plaintiff Profile Form - Residential Properties | NguyenT00001 | NguyenT00009 |
| 14 | Nguyen | Deposition Exhibit 11 - Supplemental Plaintiff Profile Form | MaiDepo000022 | MaiDepo000029 |
| 15 | Nguyen | Deposition Exhibit 12 - First Amended Supplemental Plaintiff Profile Form | MaiDepo000030 | MaiDepo000036 |
| 16 | Nguyen | Deposition Exhibit 13 - Quitclaim Deed | | |
| 17 | Nguyen | Deposition Exhibit 01 - General Warranty Deed | NguyenT00039 | NguyenT00039 |
| 18 | Nguyen | Deposition Exhibit 02 - Legend Custom Builders, Inc. Change Order | | |
| 19 | Nguyen | Deposition Exhibit 03 - Mortgage | | |
| 20 | Nguyen | Deposition Exhibit 04 - 2018 Real Estate Informational Notice of Ad Valorem Taxes and Non-Ad Valorem Assessments for Lee County, Florida | | |
| 21 | Nguyen | Deposition Exhibit 05 - Handwritten Rent Agreement | | |
| 22 | Nguyen | Deposition Exhibit 06 - Rent Receipts | | |
| 23 | Nguyen | Deposition Exhibit 07 - Settlement Statement (HUD-1) | | |
| 24 | Nguyen | Deposition Exhibit 08 - Central Aire Conditioning Inc. Invoice | | |
| 25 | Nguyen | Deposition Exhibit 09 - The Tayler Model Floor Plan | | |
| 26 | Nguyen | Deposition Exhibit 10 - Allied Home Inspections Report | | |
| 27 | Nguyen | Deposition Exhibit 11 - Estimate - J & A Stucco Drywall Inc. | | |
| 28 | Nguyen | Deposition Exhibit 12 - Exhibit B - Environmental Certificate | | |
| 29 | Nguyen | Deposition Exhibit 13 - Drywall Installation Certification | | |
| 30 | Nguyen | Deposition Exhibit 14 - Contractor Certification | | |

14.A
Documents and Other Information Considered - Tracy Nguyen & Mai Tuyen

_Chinese Drywall Litigation Involving Priority Claimants_

|  |  |  | Bate Stamp (if applicable) | |
| No. | Claimant | General Description | First Page | Last Page |
| --- | --- | --- | --- | --- |
| 31 | Nguyen | Deposition Exhibit 15 - Plaintiff Profile Form - Residential Properties | NguyenT00001 | NguyenT00039 |
| 32 | Nguyen | Deposition Exhibit 16 - Supplemental Plaintiff Profile Form |  |  |
| 33 | Nguyen | Deposition Exhibit 17 - Check Copies - Chinese Drywall Settlement Program |  |  |
| 34 | Nguyen | Deposition Exhibit 18 - Check Copies - Chinese Drywall Settlement Program |  |  |

C. Supporting Documentation

| | | | | |
| --- | --- | --- | --- | --- |
| 1 | Nguyen | Tracy Nguyen Out of Pocket Damages Summary Provided by Counsel | | |
| 2 | Nguyen | 132940 - Nguyen HVAC repairs by Central Aire Conditioning | | |
| 3 | Nguyen | 133154 - Nguyen Letter from Tuyen Thanh Mai re Lease Agreement | | |
| 4 | Nguyen | 136388 - Nguyen Receipts for rent from Tuyen Thanh Mai | | |
| 5 | Nguyen | 365782 - Nguyen Remediation repairs done by J&A Stucco and Alex Fite | | |
| 6 | Nguyen | 365784 - Nguyen HUD Settlement Statement for ALE | | |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-22408-Civ-COOKE

EDUARDO AND CARMEN AMORIN, *et al.*,
individually and on behalf of others similarly
situated,

       Plaintiffs,

vs.

TAISHAN GYPSUM CO., LTD., f/k/a
SHANDONG TIASHE DONGXIN CO. LTD.,
*et al.*,

       Defendants.

_____

# **Exhibit 15**

**Calculations of Damages for Priority Claimants**

# **Jeovany & Monica Nunez**

EXHIBIT TO THE EXPERT WITNESS REPORT OF:
MICHAEL P. ELKIN, CPA/CFF/ABV, CFE
IN THE PRIORITY CLAIMANT TRIAL

February 19, 2019



Exhibit 15
Data and Damage Summary - Jeovany & Monica Nunez

*Chinese Drywall Litigation Involving Priority Claimants*

| Data: | | *Reference / Notes* |
|---|---|---|
| Address of Affected property | 8049 West 36th Avenue | *SPPF* |
| | Hialeah FL 33018 | *SPPF* |
| Date Affected property acquired | January 10, 2007 | *SPPF* |
| Date Chinese drywall installed | October-06 | *SPPF* |
| Date moved into Affected property | January 10, 2007 | *SPPF* |
| Date first aware of Chinese drywall | March-10 | *SPPF* |
| | | |
| Move out date to alternate living | January 1, 2012 | *SPPF* |
| Date returned to Affected property | Never | *ROG 1, #2* |
| End date for alternate living expenses | Never | *ROG 1, #2* |
| | | |
| Still own property? | N | *SPPF* |
| Bankruptcy caused by damage? | N | *SPPF* |
| Foreclosure or short sale? | Y | *SPPF* |
| Affected property sold? | Y | *ROG 1, #2* |
| Sale date | August 22, 2017 | *SPPF* |
| Type of sale | Foreclosure | *SPPF* |
| | | |
| Remediation status | None | *SPPF* |
| Remediation period | N/A | *SPPF* |

| Damage Summary: | | |
|---|---|---|
| Full or Partial Out-of-Pocket Remediation Expenses | $ - | |
| | | |
| Other Damages | | |
| Alternate Living Expenses | $ 105,733 | *Exh. 15.1* |
| Personal Property Damage Expense | - | |
| Additional Damages | - | |
| | $ 105,733 | |
| | | |
| Lost Equity | $ 42,842 | *Exh. 15.2* |
| | | |
| Diminution in Value | TBD | |
| | | |
| Loss of Use and Enjoyment | TBD | |
| | | |
| Punitive Damages | TBD | |

Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 225 of 802
Case 1:11-cv-22408-MGC Document 272 Entered on FLSD Docket 08/15/2013 Page 204 of
262

Exhibit 15.1
Damage Claims Detail - Jeovany & Monica Nunez

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Alternate Living Expenses | Move For Less | Moving | $ 375 | 12/26/2011 | X | Moving Quote | N/A | Exhibit 24 | 1 |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 1/1/2012 | X | Lease Agreement | N/A | Exhibit 11 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 2/1/2012 | X | Lease Agreement | N/A | Exhibit 11 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 3/1/2012 | X | Lease Agreement | N/A | Exhibit 11 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 4/1/2012 | X | Lease Agreement | N/A | Exhibit 11 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 5/1/2012 | X | Lease Agreement | N/A | Exhibit 11 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 6/1/2012 | X | Lease Agreement | N/A | Exhibit 11 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 7/1/2012 | X | Lease Agreement | N/A | Exhibit 11 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 8/1/2012 | X | Lease Agreement | N/A | Exhibit 11 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 9/1/2012 | X | Lease Agreement | N/A | Exhibit 11 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 10/1/2012 | X | Lease Agreement | N/A | Exhibit 11 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 11/1/2012 | X | Lease Agreement | N/A | Exhibit 11 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 12/1/2012 | X | Lease Agreement | N/A | Exhibit 11 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 1/1/2013 | X | Lease Agreement | N/A | Exhibit 11 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 2/1/2013 | X | Lease Agreement | N/A | Exhibit 11 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 3/1/2013 | X | Lease Agreement | N/A | Exhibit 11 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 4/1/2013 | X | Lease Agreement | N/A | Exhibit 11 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 5/1/2013 | X | Lease Agreement | N/A | Exhibit 11 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 6/1/2013 | X | Lease Agreement | N/A | Exhibit 11 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 7/1/2013 | X | Lease Agreement | N/A | Exhibit 11 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 8/1/2013 | X | Lease Agreement | N/A | Exhibit 11 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 9/1/2013 | X | Lease Agreement | N/A | Exhibit 11 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 10/1/2013 | X | Lease Agreement | N/A | Exhibit 11 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 11/1/2013 | X | Lease Agreement | N/A | Exhibit 11 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 12/1/2013 | X | Lease Agreement | N/A | Exhibit 11 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 1/1/2014 | X | Lease Agreement | N/A | Exhibit 12 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 2/1/2014 | X | Lease Agreement | N/A | Exhibit 12 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 3/1/2014 | X | Lease Agreement | N/A | Exhibit 12 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 4/1/2014 | X | Lease Agreement | N/A | Exhibit 12 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 5/1/2014 | X | Lease Agreement | N/A | Exhibit 12 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 6/1/2014 | X | Lease Agreement | N/A | Exhibit 12 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 7/1/2014 | X | Lease Agreement | N/A | Exhibit 12 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 8/1/2014 | X | Lease Agreement | N/A | Exhibit 12 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 9/1/2014 | X | Lease Agreement | N/A | Exhibit 12 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 10/1/2014 | X | Lease Agreement | N/A | Exhibit 12 | |

Exhibit 15.1
Damage Claims Detail - Jeovany & Monica Nunez

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 11/1/2014 | X | Lease Agreement | N/A | Exhibit 12 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 12/1/2014 | X | Lease Agreement | N/A | Exhibit 12 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 1/1/2015 | X | Lease Agreement | N/A | Exhibit 12 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 2/1/2015 | X | Lease Agreement | N/A | Exhibit 12 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 3/1/2015 | X | Lease Agreement | N/A | Exhibit 12 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 4/1/2015 | X | Lease Agreement | N/A | Exhibit 12 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 5/1/2015 | X | Lease Agreement | N/A | Exhibit 12 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 6/1/2015 | X | Lease Agreement | N/A | Exhibit 12 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 7/1/2015 | X | Lease Agreement | N/A | Exhibit 12 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 8/1/2015 | X | Lease Agreement | N/A | Exhibit 12 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 9/1/2015 | X | Lease Agreement | N/A | Exhibit 12 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 10/1/2015 | X | Lease Agreement | N/A | Exhibit 12 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 11/2/2015 | | Check | N/A | Exhibit 14 | 5 to 7 |
| Alternate Living Expenses | FPL | Rental - Electric | 118 | 11/16/2015 | | Bank Statement | N/A | Exhibit 14 | 5 |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 11/30/2015 | | Check | N/A | Exhibit 14 | 14 to 15 |
| Alternate Living Expenses | FPL | Rental - Electric | 143 | 12/14/2015 | | Bank Statement | N/A | Exhibit 14 | 13 |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 12/29/2015 | | Check | N/A | Exhibit 14 | 21 to 23 |
| Alternate Living Expenses | FPL | Rental - Electric | 136 | 1/11/2016 | | Bank Statement | N/A | Exhibit 14 | 20 |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 2/1/2016 | | Check | N/A | Exhibit 14 | 31 to 33 |
| Alternate Living Expenses | FPL | Rental - Electric | 99 | 2/8/2016 | | Bank Statement | N/A | Exhibit 14 | 30 |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 2/29/2016 | | Check | N/A | Exhibit 14 | 40 to 41 |
| Alternate Living Expenses | FPL | Rental - Electric | 98 | 3/7/2016 | | Bank Statement | N/A | Exhibit 14 | 39 |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 3/31/2016 | | Check | N/A | Exhibit 14 | 49 to 51 |
| Alternate Living Expenses | FPL | Rental - Electric | 105 | 4/18/2016 | | Bank Statement | N/A | Exhibit 14 | 49 |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 5/2/2016 | | Check | N/A | Exhibit 14 | 57 to 59 |
| Alternate Living Expenses | FPL | Rental - Electric | 99 | 5/16/2016 | | Bank Statement | N/A | Exhibit 14 | 56 |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 6/1/2016 | | Check | N/A | Exhibit 14 | 65 to 67 |
| Alternate Living Expenses | FPL | Rental - Electric | 116 | 6/13/2016 | | Bank Statement | N/A | Exhibit 14 | 65 |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 6/30/2016 | | Check | N/A | Exhibit 14 | 73 to 75 |
| Alternate Living Expenses | FPL | Rental - Electric | 94 | 7/8/2016 | | Bank Statement | N/A | Exhibit 14 | 72 |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 8/1/2016 | | Check | N/A | Exhibit 14 | 82 to 83 |
| Alternate Living Expenses | FPL | Rental - Electric | 109 | 8/8/2016 | | Bank Statement | N/A | Exhibit 14 | 81 |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 8/30/2016 | | Check | N/A | Exhibit 14 | 89 to 91 |
| Alternate Living Expenses | FPL | Rental - Electric | 133 | 9/6/2016 | | Bank Statement | N/A | Exhibit 14 | 88 |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 10/3/2016 | | Check | N/A | Exhibit 14 | 98 to 99 |

Exhibit 15.1
Damage Claims Detail - Jeovany & Monica Nunez

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|------|--------|-------------|--------|------|--------------|----------------|-------|------------------|--------------|
| Alternate Living Expenses | FPL | Rental - Electric | 127 | 10/19/2016 | | Bank Statement | N/A | Exhibit 14 | 98 |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 11/1/2016 | | Check | N/A | Exhibit 14 | 106 to 107 |
| Alternate Living Expenses | FPL | Rental - Electric | 116 | 11/14/2016 | | Bank Statement | N/A | Exhibit 14 | 105 |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 11/29/2016 | | Check | N/A | Exhibit 14 | 114 to 115 |
| Alternate Living Expenses | FPL | Rental - Electric | 116 | 12/12/2016 | | Bank Statement | N/A | Exhibit 14 | 113 |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 12/28/2016 | | Check | N/A | Exhibit 14 | 124 to 125 |
| Alternate Living Expenses | FPL | Rental - Electric | 115 | 1/9/2017 | | Bank Statement | N/A | Exhibit 14 | 123 |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 2/1/2017 | | Check | N/A | Exhibit 14 | 131 to 133 |
| Alternate Living Expenses | FPL | Rental - Electric | 117 | 2/6/2017 | | Bank Statement | N/A | Exhibit 14 | 130 |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 2/28/2017 | | Check | N/A | Exhibit 14 | 140 to 141 |
| Alternate Living Expenses | FPL | Rental - Electric | 119 | 3/6/2017 | | Bank Statement | N/A | Exhibit 14 | 139 |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 4/3/2017 | | Check | N/A | Exhibit 14 | 147 to 149 |
| Alternate Living Expenses | FPL | Rental - Electric | 119 | 4/7/2017 | | Bank Statement | N/A | Exhibit 14 | 147 |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 5/1/2017 | | Check | N/A | Exhibit 14 | 156 to 159 |
| Alternate Living Expenses | FPL | Rental - Electric | 118 | 5/15/2017 | | Bank Statement | N/A | Exhibit 14 | 156 |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 5/30/2017 | | Check | N/A | Exhibit 14 | 165 to 167 |
| Alternate Living Expenses | FPL | Rental - Electric | 118 | 6/19/2017 | | Bank Statement | N/A | Exhibit 14 | 165 |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 7/3/2017 | | Check | N/A | Exhibit 14 | 174 to 175 |
| Alternate Living Expenses | FPL | Rental - Electric | 121 | 7/10/2017 | | Bank Statement | N/A | Exhibit 14 | 173 |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 8/2/2017 | | Check | N/A | Exhibit 14 | 182 to 183 |
| Alternate Living Expenses | FPL | Rental - Electric | 122 | 8/7/2017 | | Bank Statement | N/A | Exhibit 14 | 181 |
| Alternate Living Expenses Total | | | $ 105,733 | | | | | | |

Case 1:09-md-02047-EEF-MBN Document 22380-26 Filed 12/03/19 Page 228 of 802
Case 2:09-md-02047-EEF-MBN Document 2712 Entered on FLSD Docket 08/15/2013 Page 207 of
262

Exhibit 15.2
Lost Equity - Jeovany & Monica Nunez

*Chinese Drywall Litigation Involving Priority Claimants*

|  |  |  | Source Document |
|---|---|---|---|
| **Initial Acquisition** |  |  |  |
| Purchase Price | $ | 269,990 | Purchase Agreement |
| Settlement Charges |  | 11,605 | Doc ID. - 365754 HUD Statement 01/12/07 |
| Total Gross Amount Due from Claimant | $ | 281,595 |  |
|  |  |  |  |
| **Less** |  |  |  |
| Deposit Made by Claimant | $ | (27,000) | Doc ID. - 365754 HUD Statement 01/12/07 |
| Borrowings by Claimant |  | (241,339) | Doc ID. - 365754 HUD Statement 01/12/07 |
| Credits |  | (4,035) | Doc ID. - 365754 HUD Statement 01/12/07 |
| Amount Due from Claimant at Close | $ | 9,221 |  |
|  |  |  |  |
| **Funds Paid by Claimant** |  |  |  |
| Deposit Paid with Contract | $ | 27,000 | Purchase Agreement |
| Closing Cash payments |  | 9,221 | Doc ID. - 365754 HUD Statement 01/12/07 |
| Total Payments for Initial Purchase **a** | $ | 36,221 |  |
|  |  |  |  |
| **1st Mortgage** |  |  |  |
| Mortgage Beginning Balance | $ | 215,992 | Doc ID. - 365754 HUD Statement 01/12/07 |
| Mortgage Balance at Payoff |  | 209,372 | Final Judgment of Foreclosure |
| Principal Payments Made **b** | $ | 6,620 |  |
|  |  |  |  |
| **2nd Mortgage** |  |  |  |
| Mortgage Beginning Balance | $ | 26,999 | Doc ID. - 365754 HUD Statement 01/12/07 |
| Mortgage Balance at Payoff[1] |  | 26,999 |  |
| Principal Payments Made **c** | $ | - |  |
|  |  |  |  |
| Total Lost Equity **= a + b + c** | $ | 42,842 |  |

Notes:

[1] Per the HUD Statement there was a 2nd mortgage taken out taken out
in the amount of $26,999. To date no information has been provided to verify the principal payments
on this loan. Should that information be provided this Lost Equity is subject to change.

Case 1:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 229 of 802
Case 2:09-md-02047-MCE Document 212 entered on FLSD Docket 08/15/2013 Page 208 of
262

Exhibit 15.3

Calculation of Prejudgment Interest Summary - Jeovany & Monica Nunez

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Vendor | Description | Amount | Total Interest Through 7/22/2019 |
|---|---|---|---|---|---|---|
| 12/26/2011 | 1/25/2012 | Alternate Living Expenses | Move For Less | Moving | $ 375 | $ 142 |
| 1/1/2012 | 1/31/2012 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 550 |
| 2/1/2012 | 3/2/2012 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 544 |
| 3/1/2012 | 3/31/2012 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 538 |
| 4/1/2012 | 5/1/2012 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 532 |
| 5/1/2012 | 5/31/2012 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 527 |
| 6/1/2012 | 7/1/2012 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 521 |
| 7/1/2012 | 7/31/2012 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 515 |
| 8/1/2012 | 8/31/2012 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 510 |
| 9/1/2012 | 10/1/2012 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 504 |
| 10/1/2012 | 10/31/2012 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 498 |
| 11/1/2012 | 12/1/2012 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 492 |
| 12/1/2012 | 12/31/2012 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 487 |
| 1/1/2013 | 1/31/2013 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 481 |
| 2/1/2013 | 3/3/2013 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 475 |
| 3/1/2013 | 3/31/2013 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 470 |
| 4/1/2013 | 5/1/2013 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 464 |
| 5/1/2013 | 5/31/2013 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 458 |
| 6/1/2013 | 7/1/2013 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 452 |
| 7/1/2013 | 7/31/2013 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 447 |
| 8/1/2013 | 8/31/2013 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 441 |
| 9/1/2013 | 10/1/2013 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 435 |
| 10/1/2013 | 10/31/2013 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 429 |
| 11/1/2013 | 12/1/2013 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 423 |
| 12/1/2013 | 12/31/2013 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 418 |
| 1/1/2014 | 1/31/2014 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 426 |
| 2/1/2014 | 3/3/2014 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 420 |
| 3/1/2014 | 3/31/2014 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 415 |
| 4/1/2014 | 5/1/2014 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 408 |
| 5/1/2014 | 5/31/2014 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 403 |
| 6/1/2014 | 7/1/2014 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 397 |
| 7/1/2014 | 7/31/2014 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 391 |
| 8/1/2014 | 8/31/2014 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 385 |
| 9/1/2014 | 10/1/2014 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 379 |
| 10/1/2014 | 10/31/2014 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 373 |
| 11/1/2014 | 12/1/2014 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 367 |
| 12/1/2014 | 12/31/2014 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 361 |
| 1/1/2015 | 1/31/2015 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 355 |
| 2/1/2015 | 3/3/2015 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 349 |
| 3/1/2015 | 3/31/2015 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 343 |
| 4/1/2015 | 5/1/2015 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 337 |
| 5/1/2015 | 5/31/2015 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 331 |
| 6/1/2015 | 7/1/2015 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 325 |
| 7/1/2015 | 7/31/2015 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 319 |
| 8/1/2015 | 8/31/2015 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 313 |
| 9/1/2015 | 10/1/2015 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 307 |
| 10/1/2015 | 10/31/2015 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 302 |
| 11/2/2015 | 12/2/2015 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 295 |
| 11/16/2015 | 12/16/2015 | Alternate Living Expenses | FPL | Rental - Electric | 118 | 23 |
| 11/30/2015 | 12/30/2015 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 290 |

Exhibit 15.3
Calculation of Prejudgment Interest Summary - Jeovany & Monica Nunez

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Vendor | Description | Amount | Total Interest Through 7/22/2019 |
|---|---|---|---|---|---|---|
| 12/14/2015 | 1/13/2016 | Alternate Living Expenses | FPL | Rental - Electric | 143 | 27 |
| 12/29/2015 | 1/28/2016 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 303 |
| 1/11/2016 | 2/10/2016 | Alternate Living Expenses | FPL | Rental - Electric | 136 | 25 |
| 2/1/2016 | 3/2/2016 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 296 |
| 2/8/2016 | 3/9/2016 | Alternate Living Expenses | FPL | Rental - Electric | 99 | 18 |
| 2/29/2016 | 3/30/2016 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 290 |
| 3/7/2016 | 4/6/2016 | Alternate Living Expenses | FPL | Rental - Electric | 98 | 18 |
| 3/31/2016 | 4/30/2016 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 284 |
| 4/18/2016 | 5/18/2016 | Alternate Living Expenses | FPL | Rental - Electric | 105 | 18 |
| 5/2/2016 | 6/1/2016 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 277 |
| 5/16/2016 | 6/15/2016 | Alternate Living Expenses | FPL | Rental - Electric | 99 | 17 |
| 6/1/2016 | 7/1/2016 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 271 |
| 6/13/2016 | 7/13/2016 | Alternate Living Expenses | FPL | Rental - Electric | 116 | 19 |
| 6/30/2016 | 7/30/2016 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 265 |
| 7/8/2016 | 8/7/2016 | Alternate Living Expenses | FPL | Rental - Electric | 94 | 15 |
| 8/1/2016 | 8/31/2016 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 258 |
| 8/8/2016 | 9/7/2016 | Alternate Living Expenses | FPL | Rental - Electric | 109 | 18 |
| 8/30/2016 | 9/29/2016 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 252 |
| 9/6/2016 | 10/6/2016 | Alternate Living Expenses | FPL | Rental - Electric | 133 | 21 |
| 10/3/2016 | 11/2/2016 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 244 |
| 10/19/2016 | 11/18/2016 | Alternate Living Expenses | FPL | Rental - Electric | 127 | 19 |
| 11/1/2016 | 12/1/2016 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 238 |
| 11/14/2016 | 12/14/2016 | Alternate Living Expenses | FPL | Rental - Electric | 116 | 17 |
| 11/29/2016 | 12/29/2016 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 232 |
| 12/12/2016 | 1/11/2017 | Alternate Living Expenses | FPL | Rental - Electric | 116 | 17 |
| 12/28/2016 | 1/27/2017 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 226 |
| 1/9/2017 | 2/8/2017 | Alternate Living Expenses | FPL | Rental - Electric | 115 | 16 |
| 2/1/2017 | 3/3/2017 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 218 |
| 2/6/2017 | 3/8/2017 | Alternate Living Expenses | FPL | Rental - Electric | 117 | 16 |
| 2/28/2017 | 3/30/2017 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 212 |
| 3/6/2017 | 4/5/2017 | Alternate Living Expenses | FPL | Rental - Electric | 119 | 16 |
| 4/3/2017 | 5/3/2017 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 205 |
| 4/7/2017 | 5/7/2017 | Alternate Living Expenses | FPL | Rental - Electric | 119 | 15 |
| 5/1/2017 | 5/31/2017 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 199 |
| 5/15/2017 | 6/14/2017 | Alternate Living Expenses | FPL | Rental - Electric | 118 | 14 |
| 5/30/2017 | 6/29/2017 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 192 |
| 6/19/2017 | 7/19/2017 | Alternate Living Expenses | FPL | Rental - Electric | 118 | 14 |
| 7/3/2017 | 8/2/2017 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 185 |
| 7/10/2017 | 8/9/2017 | Alternate Living Expenses | FPL | Rental - Electric | 121 | 14 |
| 8/2/2017 | 9/1/2017 | Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 178 |
| 8/7/2017 | 9/6/2017 | Alternate Living Expenses | FPL | Rental - Electric | 122 | 13 |
| | | Alternate Living Expenses Total | | | $ 105,733 | $ 25,558 |

Exhibit 15.3A
Calculation of Prejudgment Interest Detail - Jeovany & Monica Nunez

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Amount | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 3/31/2016 | 6/30/2016 | 9/30/2016 | 12/31/2016 | 3/31/2017 | 6/30/2017 | 9/30/2017 | 12/31/2017 | 3/31/2018 | 6/30/2018 | 9/30/2018 | 12/31/2018 | 7/22/2019 | Total Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/26/2011 | 1/25/2012 | Alternate Living Expenses | 375 | 17 | 18 | 18 | 18 | 4 | 4 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 6 | 6 | 13 | 142 |
| 1/1/2012 | 1/31/2012 | Alternate Living Expenses | 1,450 | 63 | 69 | 69 | 69 | 17 | 17 | 18 | 18 | 18 | 18 | 19 | 20 | 20 | 21 | 22 | 22 | 51 | 550 |
| 2/1/2012 | 3/2/2012 | Alternate Living Expenses | 1,450 | 57 | 69 | 69 | 69 | 17 | 17 | 18 | 18 | 18 | 18 | 19 | 20 | 20 | 21 | 22 | 22 | 51 | 544 |
| 3/1/2012 | 3/31/2012 | Alternate Living Expenses | 1,450 | 52 | 69 | 69 | 69 | 17 | 17 | 18 | 18 | 18 | 18 | 19 | 20 | 20 | 21 | 22 | 22 | 51 | 538 |
| 4/1/2012 | 5/1/2012 | Alternate Living Expenses | 1,450 | 46 | 69 | 69 | 69 | 17 | 17 | 18 | 18 | 18 | 18 | 19 | 20 | 20 | 21 | 22 | 22 | 51 | 532 |
| 5/1/2012 | 5/31/2012 | Alternate Living Expenses | 1,450 | 40 | 69 | 69 | 69 | 17 | 17 | 18 | 18 | 18 | 18 | 19 | 20 | 20 | 21 | 22 | 22 | 51 | 527 |
| 6/1/2012 | 7/1/2012 | Alternate Living Expenses | 1,450 | 34 | 69 | 69 | 69 | 17 | 17 | 18 | 18 | 18 | 18 | 19 | 20 | 20 | 21 | 22 | 22 | 51 | 521 |
| 7/1/2012 | 7/31/2012 | Alternate Living Expenses | 1,450 | 29 | 69 | 69 | 69 | 17 | 17 | 18 | 18 | 18 | 18 | 19 | 20 | 20 | 21 | 22 | 22 | 51 | 515 |
| 8/1/2012 | 8/31/2012 | Alternate Living Expenses | 1,450 | 23 | 69 | 69 | 69 | 17 | 17 | 18 | 18 | 18 | 18 | 19 | 20 | 20 | 21 | 22 | 22 | 51 | 510 |
| 9/1/2012 | 10/1/2012 | Alternate Living Expenses | 1,450 | 17 | 69 | 69 | 69 | 17 | 17 | 18 | 18 | 18 | 18 | 19 | 20 | 20 | 21 | 22 | 22 | 51 | 504 |
| 10/1/2012 | 10/31/2012 | Alternate Living Expenses | 1,450 | 11 | 69 | 69 | 69 | 17 | 17 | 18 | 18 | 18 | 18 | 19 | 20 | 20 | 21 | 22 | 22 | 51 | 498 |
| 11/1/2012 | 12/1/2012 | Alternate Living Expenses | 1,450 | 6 | 69 | 69 | 69 | 17 | 17 | 18 | 18 | 18 | 18 | 19 | 20 | 20 | 21 | 22 | 22 | 51 | 492 |
| 12/1/2012 | 12/31/2012 | Alternate Living Expenses | 1,450 | - | 69 | 69 | 69 | 17 | 17 | 18 | 18 | 18 | 18 | 19 | 20 | 20 | 21 | 22 | 22 | 51 | 487 |
| 1/1/2013 | 1/31/2013 | Alternate Living Expenses | 1,450 | - | 63 | 69 | 69 | 17 | 17 | 18 | 18 | 18 | 18 | 19 | 20 | 20 | 21 | 22 | 22 | 51 | 481 |
| 2/1/2013 | 3/3/2013 | Alternate Living Expenses | 1,450 | - | 57 | 69 | 69 | 17 | 17 | 18 | 18 | 18 | 18 | 19 | 20 | 20 | 21 | 22 | 22 | 51 | 475 |
| 3/1/2013 | 3/31/2013 | Alternate Living Expenses | 1,450 | - | 52 | 69 | 69 | 17 | 17 | 18 | 18 | 18 | 18 | 19 | 20 | 20 | 21 | 22 | 22 | 51 | 470 |
| 4/1/2013 | 5/1/2013 | Alternate Living Expenses | 1,450 | - | 46 | 69 | 69 | 17 | 17 | 18 | 18 | 18 | 18 | 19 | 20 | 20 | 21 | 22 | 22 | 51 | 464 |
| 5/1/2013 | 5/31/2013 | Alternate Living Expenses | 1,450 | - | 40 | 69 | 69 | 17 | 17 | 18 | 18 | 18 | 18 | 19 | 20 | 20 | 21 | 22 | 22 | 51 | 458 |
| 6/1/2013 | 7/1/2013 | Alternate Living Expenses | 1,450 | - | 35 | 69 | 69 | 17 | 17 | 18 | 18 | 18 | 18 | 19 | 20 | 20 | 21 | 22 | 22 | 51 | 452 |
| 7/1/2013 | 7/31/2013 | Alternate Living Expenses | 1,450 | - | 29 | 69 | 69 | 17 | 17 | 18 | 18 | 18 | 18 | 19 | 20 | 20 | 21 | 22 | 22 | 51 | 447 |
| 8/1/2013 | 8/31/2013 | Alternate Living Expenses | 1,450 | - | 23 | 69 | 69 | 17 | 17 | 18 | 18 | 18 | 18 | 19 | 20 | 20 | 21 | 22 | 22 | 51 | 441 |
| 9/1/2013 | 10/1/2013 | Alternate Living Expenses | 1,450 | - | 17 | 69 | 69 | 17 | 17 | 18 | 18 | 18 | 18 | 19 | 20 | 20 | 21 | 22 | 22 | 51 | 435 |
| 10/1/2013 | 10/31/2013 | Alternate Living Expenses | 1,450 | - | 12 | 69 | 69 | 17 | 17 | 18 | 18 | 18 | 18 | 19 | 20 | 20 | 21 | 22 | 22 | 51 | 429 |
| 11/1/2013 | 12/1/2013 | Alternate Living Expenses | 1,450 | - | 6 | 69 | 69 | 17 | 17 | 18 | 18 | 18 | 18 | 19 | 20 | 20 | 21 | 22 | 22 | 51 | 423 |
| 12/1/2013 | 12/31/2013 | Alternate Living Expenses | 1,450 | - | - | 69 | 69 | 17 | 17 | 18 | 18 | 18 | 18 | 19 | 20 | 20 | 21 | 22 | 22 | 51 | 418 |
| 1/1/2014 | 1/31/2014 | Alternate Living Expenses | 1,500 | - | - | 65 | 71 | 18 | 18 | 18 | 19 | 18 | 19 | 20 | 20 | 21 | 23 | 23 | 53 | 426 |
| 2/1/2014 | 3/3/2014 | Alternate Living Expenses | 1,500 | - | - | 59 | 71 | 18 | 18 | 18 | 19 | 18 | 19 | 20 | 20 | 21 | 23 | 23 | 53 | 420 |
| 3/1/2014 | 3/31/2014 | Alternate Living Expenses | 1,500 | - | - | 54 | 71 | 18 | 18 | 18 | 19 | 18 | 19 | 20 | 20 | 21 | 23 | 23 | 53 | 415 |
| 4/1/2014 | 5/1/2014 | Alternate Living Expenses | 1,500 | - | - | 48 | 71 | 18 | 18 | 18 | 19 | 18 | 19 | 20 | 20 | 21 | 23 | 23 | 53 | 408 |
| 5/1/2014 | 5/31/2014 | Alternate Living Expenses | 1,500 | - | - | 42 | 71 | 18 | 18 | 18 | 19 | 18 | 19 | 20 | 20 | 21 | 23 | 23 | 53 | 403 |
| 6/1/2014 | 7/1/2014 | Alternate Living Expenses | 1,500 | - | - | 36 | 71 | 18 | 18 | 18 | 19 | 18 | 19 | 20 | 20 | 21 | 23 | 23 | 53 | 397 |
| 7/1/2014 | 7/31/2014 | Alternate Living Expenses | 1,500 | - | - | 30 | 71 | 18 | 18 | 18 | 19 | 18 | 19 | 20 | 20 | 21 | 23 | 23 | 53 | 391 |
| 8/1/2014 | 8/31/2014 | Alternate Living Expenses | 1,500 | - | - | 24 | 71 | 18 | 18 | 18 | 19 | 18 | 19 | 20 | 20 | 21 | 23 | 23 | 53 | 385 |
| 9/1/2014 | 10/1/2014 | Alternate Living Expenses | 1,500 | - | - | 18 | 71 | 18 | 18 | 18 | 19 | 18 | 19 | 20 | 20 | 21 | 23 | 23 | 53 | 379 |
| 10/1/2014 | 10/31/2014 | Alternate Living Expenses | 1,500 | - | - | 12 | 71 | 18 | 18 | 18 | 19 | 18 | 19 | 20 | 20 | 21 | 23 | 23 | 53 | 373 |
| 11/1/2014 | 12/1/2014 | Alternate Living Expenses | 1,500 | - | - | 6 | 71 | 18 | 18 | 18 | 19 | 18 | 19 | 20 | 20 | 21 | 23 | 23 | 53 | 367 |
| 12/1/2014 | 12/31/2014 | Alternate Living Expenses | 1,500 | - | - | - | 71 | 18 | 18 | 18 | 19 | 18 | 19 | 20 | 20 | 21 | 23 | 23 | 53 | 361 |
| 1/1/2015 | 1/31/2015 | Alternate Living Expenses | 1,500 | - | - | - | 65 | 18 | 18 | 18 | 19 | 18 | 19 | 20 | 20 | 21 | 23 | 23 | 53 | 355 |
| 2/1/2015 | 3/3/2015 | Alternate Living Expenses | 1,500 | - | - | - | 59 | 18 | 18 | 18 | 19 | 18 | 19 | 20 | 20 | 21 | 23 | 23 | 53 | 349 |
| 3/1/2015 | 3/31/2015 | Alternate Living Expenses | 1,500 | - | - | - | 54 | 18 | 18 | 18 | 19 | 18 | 19 | 20 | 20 | 21 | 23 | 23 | 53 | 343 |
| 4/1/2015 | 5/1/2015 | Alternate Living Expenses | 1,500 | - | - | - | 48 | 18 | 18 | 18 | 19 | 18 | 19 | 20 | 20 | 21 | 23 | 23 | 53 | 337 |
| 5/1/2015 | 5/31/2015 | Alternate Living Expenses | 1,500 | - | - | - | 42 | 18 | 18 | 18 | 19 | 18 | 19 | 20 | 20 | 21 | 23 | 23 | 53 | 331 |
| 6/1/2015 | 7/1/2015 | Alternate Living Expenses | 1,500 | - | - | - | 36 | 18 | 18 | 18 | 19 | 18 | 19 | 20 | 20 | 21 | 23 | 23 | 53 | 325 |
| 7/1/2015 | 7/31/2015 | Alternate Living Expenses | 1,500 | - | - | - | 30 | 18 | 18 | 18 | 19 | 18 | 19 | 20 | 20 | 21 | 23 | 23 | 53 | 319 |
| 8/1/2015 | 8/31/2015 | Alternate Living Expenses | 1,500 | - | - | - | 24 | 18 | 18 | 18 | 19 | 18 | 19 | 20 | 20 | 21 | 23 | 23 | 53 | 313 |
| 9/1/2015 | 10/1/2015 | Alternate Living Expenses | 1,500 | - | - | - | 18 | 18 | 18 | 18 | 19 | 18 | 19 | 20 | 20 | 21 | 23 | 23 | 53 | 307 |
| 10/1/2015 | 10/31/2015 | Alternate Living Expenses | 1,500 | - | - | - | 12 | 18 | 18 | 18 | 19 | 18 | 19 | 20 | 20 | 21 | 23 | 23 | 53 | 302 |
| 11/2/2015 | 12/2/2015 | Alternate Living Expenses | 1,500 | - | - | - | 6 | 18 | 18 | 18 | 19 | 18 | 19 | 20 | 20 | 21 | 23 | 23 | 53 | 295 |
| 11/16/2015 | 12/16/2015 | Alternate Living Expenses | 118 | - | - | - | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 4 | 23 |
| 11/30/2015 | 12/30/2015 | Alternate Living Expenses | 1,500 | - | - | - | 0 | 18 | 18 | 18 | 19 | 18 | 19 | 20 | 20 | 21 | 23 | 23 | 53 | 290 |
| 12/14/2015 | 1/13/2016 | Alternate Living Expenses | 143 | - | - | - | - | 1 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 27 |
| 12/29/2015 | 1/28/2016 | Alternate Living Expenses | 1,600 | - | - | - | - | 13 | 19 | 19 | 20 | 20 | 20 | 21 | 22 | 22 | 24 | 24 | 56 | 303 |
| 1/11/2016 | 2/10/2016 | Alternate Living Expenses | 136 | - | - | - | - | - | 1 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 25 |
| 2/1/2016 | 3/2/2016 | Alternate Living Expenses | 1,600 | - | - | - | - | 6 | 19 | 19 | 20 | 20 | 20 | 21 | 22 | 22 | 23 | 24 | 25 | 56 | 296 |
| 2/8/2016 | 3/9/2016 | Alternate Living Expenses | 99 | - | - | - | - | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 3 | 18 |
| 2/29/2016 | 3/30/2016 | Alternate Living Expenses | 1,600 | - | - | - | - | 0 | 19 | 19 | 20 | 20 | 20 | 21 | 22 | 22 | 23 | 24 | 25 | 56 | 290 |
| 3/7/2016 | 4/6/2016 | Alternate Living Expenses | 98 | - | - | - | - | - | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 3 | 18 |
| 3/31/2016 | 4/30/2016 | Alternate Living Expenses | 1,600 | - | - | - | - | - | 13 | 19 | 20 | 20 | 20 | 21 | 22 | 22 | 23 | 24 | 25 | 56 | 284 |
| 4/18/2016 | 5/18/2016 | Alternate Living Expenses | 105 | - | - | - | - | - | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 4 | 18 |
| 5/2/2016 | 6/1/2016 | Alternate Living Expenses | 1,600 | - | - | - | - | - | 6 | 19 | 20 | 20 | 20 | 21 | 22 | 22 | 23 | 24 | 25 | 56 | 277 |
| 5/16/2016 | 6/15/2016 | Alternate Living Expenses | 99 | - | - | - | - | - | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 3 | 17 |
| 6/1/2016 | 7/1/2016 | Alternate Living Expenses | 1,600 | - | - | - | - | - | 19 | 20 | 20 | 20 | 21 | 22 | 22 | 23 | 24 | 25 | 56 | 271 |
| 6/13/2016 | 7/13/2016 | Alternate Living Expenses | 116 | - | - | - | - | - | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 4 | 19 |
| 6/30/2016 | 7/30/2016 | Alternate Living Expenses | 1,600 | - | - | - | - | - | 13 | 20 | 20 | 20 | 21 | 22 | 22 | 23 | 24 | 25 | 56 | 265 |
| 7/8/2016 | 8/7/2016 | Alternate Living Expenses | 94 | - | - | - | - | - | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 15 |
| 8/1/2016 | 8/31/2016 | Alternate Living Expenses | 1,600 | - | - | - | - | - | 6 | 20 | 20 | 20 | 21 | 22 | 22 | 23 | 24 | 25 | 56 | 258 |
| 8/8/2016 | 9/7/2016 | Alternate Living Expenses | 109 | - | - | - | - | - | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 4 | 18 |
| 8/30/2016 | 9/29/2016 | Alternate Living Expenses | 1,600 | - | - | - | - | - | 0 | 20 | 20 | 20 | 21 | 22 | 22 | 23 | 24 | 25 | 56 | 252 |
| 9/6/2016 | 10/6/2016 | Alternate Living Expenses | 133 | - | - | - | - | - | - | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 21 |
| 10/3/2016 | 11/2/2016 | Alternate Living Expenses | 1,600 | - | - | - | - | - | - | 13 | 20 | 20 | 21 | 22 | 22 | 23 | 24 | 25 | 56 | 244 |
| 10/19/2016 | 11/18/2016 | Alternate Living Expenses | 127 | - | - | - | - | - | - | 1 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 4 | 19 |
| 11/1/2016 | 12/1/2016 | Alternate Living Expenses | 1,600 | - | - | - | - | - | - | 6 | 20 | 20 | 21 | 22 | 22 | 23 | 24 | 25 | 56 | 238 |
| 11/14/2016 | 12/14/2016 | Alternate Living Expenses | 116 | - | - | - | - | - | - | 0 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 2 | 4 | 17 |
| 11/29/2016 | 12/29/2016 | Alternate Living Expenses | 1,600 | - | - | - | - | - | - | 0 | 20 | 20 | 21 | 22 | 22 | 23 | 24 | 25 | 56 | 232 |
| 12/12/2016 | 1/11/2017 | Alternate Living Expenses | 116 | - | - | - | - | - | - | - | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 2 | 4 | 17 |
| 12/28/2016 | 1/27/2017 | Alternate Living Expenses | 1,600 | - | - | - | - | - | - | - | 14 | 20 | 21 | 22 | 22 | 23 | 24 | 25 | 56 | 226 |
| 1/9/2017 | 2/8/2017 | Alternate Living Expenses | 115 | - | - | - | - | - | - | - | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 4 | 16 |
| 2/1/2017 | 3/3/2017 | Alternate Living Expenses | 1,600 | - | - | - | - | - | - | - | 6 | 20 | 21 | 22 | 22 | 23 | 24 | 25 | 56 | 218 |
| 2/6/2017 | 3/8/2017 | Alternate Living Expenses | 117 | - | - | - | - | - | - | - | 0 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 4 | 16 |
| 2/28/2017 | 3/30/2017 | Alternate Living Expenses | 1,600 | - | - | - | - | - | - | - | 0 | 20 | 21 | 22 | 22 | 23 | 24 | 25 | 56 | 212 |

Exhibit 15.3A
Calculation of Prejudgment Interest Detail - Jeovany & Monica Nunez

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Amount | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 3/31/2016 | 6/30/2016 | 9/30/2016 | 12/31/2016 | 3/31/2017 | 6/30/2017 | 9/30/2017 | 12/31/2017 | 3/31/2018 | 6/30/2018 | 9/30/2018 | 12/31/2018 | 7/22/2019 | Total Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/6/2017 | 4/5/2017 | Alternate Living Expenses | 119 | - | - | - | - | - | - | - | - | - | 1 | 2 | 2 | 2 | 2 | 2 | 2 | 4 | 16 |
| 4/3/2017 | 5/3/2017 | Alternate Living Expenses | 1,600 | - | - | - | - | - | - | - | - | - | 13 | 21 | 22 | 22 | 23 | 24 | 25 | 56 | 205 |
| 4/7/2017 | 5/7/2017 | Alternate Living Expenses | 119 | - | - | - | - | - | - | - | - | - | 1 | 2 | 2 | 2 | 2 | 2 | 2 | 4 | 15 |
| 5/1/2017 | 5/31/2017 | Alternate Living Expenses | 1,600 | - | - | - | - | - | - | - | - | - | 7 | 21 | 22 | 22 | 23 | 24 | 25 | 56 | 199 |
| 5/15/2017 | 6/14/2017 | Alternate Living Expenses | 118 | - | - | - | - | - | - | - | - | - | 0 | 2 | 2 | 2 | 2 | 2 | 2 | 4 | 14 |
| 5/30/2017 | 6/29/2017 | Alternate Living Expenses | 1,600 | - | - | - | - | - | - | - | - | - | 0 | 21 | 22 | 22 | 23 | 24 | 25 | 56 | 192 |
| 6/19/2017 | 7/19/2017 | Alternate Living Expenses | 118 | - | - | - | - | - | - | - | - | - | - | 1 | 2 | 2 | 2 | 2 | 2 | 4 | 14 |
| 7/3/2017 | 8/2/2017 | Alternate Living Expenses | 1,600 | - | - | - | - | - | - | - | - | - | - | 13 | 22 | 22 | 23 | 24 | 25 | 56 | 185 |
| 7/10/2017 | 8/9/2017 | Alternate Living Expenses | 121 | - | - | - | - | - | - | - | - | - | - | 1 | 2 | 2 | 2 | 2 | 2 | 4 | 14 |
| 8/2/2017 | 9/1/2017 | Alternate Living Expenses | 1,600 | - | - | - | - | - | - | - | - | - | - | 7 | 22 | 22 | 23 | 24 | 25 | 56 | 178 |
| 8/7/2017 | 9/6/2017 | Alternate Living Expenses | 122 | - | - | - | - | - | - | - | - | - | - | 0 | 2 | 2 | 2 | 2 | 2 | 4 | 13 |
| | | Alternate Living Expenses Total | $ 105,733 | $ 395 | $ 1,224 | $ 2,063 | $ 2,918 | $ 864 | $ 930 | $ 1,014 | $ 1,092 | $ 1,148 | $ 1,244 | $ 1,354 | $ 1,426 | $ 1,442 | $ 1,508 | $ 1,591 | $ 1,623 | $ 3,722 | 25,558 |

*Assumptions:*

| | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 3/31/2016 | 6/30/2016 | 9/30/2016 | 12/31/2016 | 3/31/2017 | 6/30/2017 | 9/30/2017 | 12/31/2017 | 3/31/2018 | 6/30/2018 | 9/30/2018 | 12/31/2018 | 7/22/2019 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | Florida Statutory Interest Rates | | | | | | | | |
| Annual | 4.75% | 4.75% | 4.75% | 4.75% | 4.75% | 4.78% | 4.84% | 4.91% | 4.97% | 5.05% | 5.17% | 5.35% | 5.53% | 5.72% | 5.97% | 6.09% | 6.33% |
| Per Diem | 0.0129781% | 0.0130137% | 0.0130137% | 0.0130137% | 0.0129781% | 0.01306011% | 0.01322404% | 0.01341530% | 0.01361644% | 0.01383562% | 0.014164438% | 0.0146575% | 0.0151507% | 0.0156712% | 0.0163562% | 0.0166849% | 0.0173425% |

15.A
Documents and Other Information Considered - Jeovany & Monica Nunez
_____

*Chinese Drywall Litigation Involving Priority Claimants*

*Bate Stamp (if applicable)*

| No. | Claimant | General Description | First Page | Last Page |
|---|---|---|---|---|
| **A. Pleadings and Other Legal Documents:** | | | | |
| 1 | All | Trial Plan for Property Damage Claims and Scheduling Order dated November 16, 2018 | | |
| 2 | Nunez | Plaintiff Jeovany Nunez Answers to Interrogatories, dated November 30, 2018 | | |
| 3 | Nunez | Plaintiff Jeovany Nunez Answers to Interrogatories, dated November 30, 2018 | | |
| 4 | Nunez | Plaintiff Jeovany Nunez Supplemental Plaintiff Profile Form - Amended, dated | | |
| 5 | Nunez | Plaintiff Jeovany Nunez First Amended Response to Defendants' Request for Production of Documents, dated January 14, 2019 | | |
| 6 | Nunez | Plaintiff Jeovany Nunez First Amended Response to Defendants' Second Request for Production of Documents, dated January 14, 2019 | | |
| 7 | Nunez | Plaintiff Monica Nunez First Amended Response to Defendants' Request for Production of Documents, dated January 14, 2019 | | |
| 8 | Nunez | Plaintiff Monica Nunez First Amended Response to Defendants' Second Request for Production of Documents, dated January 14, 2019 | | |
| 9 | Nunez | Jeovany Nunez Response to Defendants' Second Set of Interrogatories, dated December 4, 2018 | | |
| 10 | Nunez | Monica Nunez Response to Defendants' Second Set of Interrogatories, dated December 4, 2018 | | |
| **B. Depositions & Corresponding Exhibits:** | | | | |
| 1 | Nunez | Deposition Transcript of Jeovany Nunez, dated December 19, 2018 | | |
| 2 | Nunez | Deposition Transcript of Monica Nunez, dated December 19, 2018 | | |
| 3 | Nunez | Errata Sheet Jeovany Nunez, dated December 19, 2018 | | |
| 4 | Nunez | Acknowledgment of Deponent Jeovany Nunez, dated January 11, 2019 | | |
| 5 | Nunez | Deposition Exhibit 01 - Purchase Agreement for Shoma Homes Splendido, a Condominium | | |
| 6 | Nunez | Deposition Exhibit 02 - Warranty Deed | | |
| 7 | Nunez | Deposition Exhibit03 - Declaration of Correctness of Square Footage on Chinese Drywall Client(s) Property for Remediation Damages | | |
| 8 | Nunez | Deposition Exhibit 04 - Miami-Dade County Property Information Report | | |
| 9 | Nunez | Deposition Exhibit 05 - Subcontract Agreement | | |
| 10 | Nunez | Deposition Exhibit 06 - Oscar Air Conditioning, Inc. Invoices | | |
| 11 | Nunez | Deposition Exhibit 07 - Photographs - Air-Conditioning Unit | | |
| 12 | Nunez | Deposition Exhibit 08 - Photographs - Bathroom Faucet Piping | | |
| 13 | Nunez | Deposition Exhibit 09 - Chinese Drywall Screening, LLC March 26, 2010 Report | | |
| 14 | Nunez | Deposition Exhibit 10 - December 22, 2011 Letter from Baron & Budd, P.C. to JP Morgan Chase and Fannie Mae | | |
| 15 | Nunez | Deposition Exhibit 11 - 2012 to 2013 Residential Lease | | |
| 16 | Nunez | Deposition Exhibit 12 - 2014 to 2015 Residential Lease | | |
| 17 | Nunez | Deposition Exhibit 13 - 2016 to 2017 Residential Lease | | |
| 18 | Nunez | Deposition Exhibit 14 - Bank of America Bank Statements | | |
| 19 | Nunez | Deposition Exhibit 15 - Chase Mortgage Loan Payment History | | |
| 20 | Nunez | Deposition Exhibit 16 - First Mortgage | | |
| 21 | Nunez | Deposition Exhibit 17 - Second Mortgage | | |
| 22 | Nunez | Deposition Exhibit 18 - June 14, 2010 E-mail from Jeovany Nunez to Steve Bronzy - Subject: Acct: 5304359424 | | |
| 23 | Nunez | Deposition Exhibit 19 - January 5, 2010 E-mail from PNMAC - Subject: Online Draft | | |
| 24 | Nunez | Deposition Exhibit 20 - February 2, 2014 E-mail from PNMAC - Subject: Online Draft | | |

15.A
Documents and Other Information Considered - Jeovany & Monica Nunez

*Chinese Drywall Litigation Involving Priority Claimants*

| | | | Bate Stamp *(if applicable)* | |
|---|---|---|---|---|
| No. | Claimant | General Description | First Page | Last Page |
| 25 | Nunez | Deposition Exhibit 21 - In Rem Final Judgment of Foreclosure | | |
| 26 | Nunez | Deposition Exhibit 22 - Certificate of Sale | | |
| 27 | Nunez | Deposition Exhibit 23 - First Amended Supplemental Plaintiff Profile Form | | |
| 28 | Nunez | Deposition Exhibit 24 - Move For Less Quote | | |
| 29 | Nunez | Deposition Exhibit 25 - Plaintiff Jeovany Nunez's Response to Defendants' Interrogatories | | |
| 30 | Nunez | Deposition Exhibit 09 - Chinese Drywall Screening, LLC March 26, 2010 Report | | |
| 31 | Nunez | Deposition Exhibit 23 - First Amended Supplemental Plaintiff Profile Form | | |

C. Supporting Documentation

| | | | | |
|---|---|---|---|---|
| 1 | Nunez | Nunez Damages Summary Provided by Counsel - Partially Redacted | | |
| 2 | Nunez | Doc ID. - 364594 2012-2013 Lease | | |
| 3 | Nunez | Doc ID. - 364595 2014-2015 Lease | | |
| 4 | Nunez | Doc ID. - 364596 2016-2017 Lease | | |
| 5 | Nunez | Doc ID. - 364593 - Moving Invoice | | |
| 6 | Nunez | Doc ID. - 364563 - AC Invoices | | |
| 7 | Nunez | Doc ID. 366577 - Nunez AC Invoices #1-6 | | |
| 8 | Nunez | Doc ID. - 365754 - Statement Settlements | | |
| 9 | Nunez | Mortgage Payment History - PBC 02.01.2019 | | |
| 10 | Nunez | Loan Documents PBC - 2.1.2019 | | |
| 11 | Nunez | Foreclosure Judgment 07.19.2017 - PBC 2.1.2019 | | |
| 12 | Nunez | Closing Documents 1.12.2007 - PBC 2.1.2019 | | |
| 13 | Nunez | Chase Statement - PBC 01.31.2019 | | |
| 14 | Nunez | Closing Documents - 2nd Mortgage 1.12.07 - PBC 1.31.2019 | | |
| 15 | Nunez | Purchase Agreement 04.26.2005 - PBC 01.31.2019 | | |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-22408-Civ-COOKE

EDUARDO AND CARMEN AMORIN, *et al.*,
individually and on behalf of others similarly
situated,

      Plaintiffs,

vs.

TAISHAN GYPSUM CO., LTD., f/k/a
SHANDONG TIASHE DONGXIN CO. LTD.,
*et al.*,

      Defendants.

_____

# Exhibit 16

### Calculations of Damages for Priority Claimants

# Kelly & Lori O'Brien

EXHIBIT TO THE EXPERT WITNESS REPORT OF:
MICHAEL P. ELKIN, CPA/CFF/ABV, CFE
IN THE PRIORITY CLAIMANT TRIAL

February 19, 2019



Exhibit 16
Data and Damage Summary - Kelly & Lori O'Brien

*Chinese Drywall Litigation Involving Priority Claimants*

| Data: | | Reference / Notes |
|---|---|---|
| Address of Affected property | 3120 W. Wallcraft Avenue | *SPPF* |
| | Tampa, FL 33611 | *SPPF* |
| Date Affected property acquired | June 9, 2004 | *SPPF* |
| Date Chinese drywall installed | 2007 | *SPPF* |
| Date moved into Affected property | Began Construction in 2007 | *SPPF* |
| Date first aware of Chinese drywall | November-09 | *SPPF* |
| | | |
| Move out date to alternate living | November-10 | *ROG 1, #2* |
| Date returned to Affected property | Never | *ROG 1, #2* |
| End date for alternate living expenses | February 17, 2012 | *ROG 1, #2* |
| | | |
| Still own property? | N | *SPPF* |
| Bankruptcy caused by damage? | N | *SPPF* |
| Foreclosure or short sale? | N | *SPPF* |
| Affected property sold? | Y | *ROG 1, #2* |
| Sale date | February 17, 2012 | *SPPF* |
| Type of sale | Sale in Mitigation | *SPPF* |
| | | |
| Remediation status | None | *SPPF* |
| Remediation period | N/A | *SPPF* |

| Damage Summary: | | |
|---|---|---|
| Full or Partial Out-of-Pocket Remediation Expenses | $ - | |
| | | |
| Other Damages | | |
| Alternate Living Expenses | $ 10,962 | *Exh. 16.1* |
| Personal Property Damage Expense | 9,602 | *Exh. 16.1* |
| Additional Damages | - | |
| | $ 20,564 | |
| | | |
| Lost Equity | $ 233,797 | *Exh. 16.2* |
| | | |
| Diminution in Value | TBD | |
| | | |
| Loss of Use and Enjoyment | TBD | |
| | | |
| Punitive Damages | TBD | |

Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 237 of 802
Case 1:11-cv-22408-MGC Document 272 entered on FLSD Docket 08/15/2013 Page 216 of
262

Exhibit 16.1
Damage Claims Detail - Kelly & Lori O'Brien

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Alternate Living Expenses | Suntrust | Mortgage Payment | $ 468 | 11/1/2010 | | Bank Account | OBrienDepo000079 | Exhibit 11 | 4 |
| Alternate Living Expenses | Citizens Property Insurance | Property Insurance | 1,599 | 11/17/2010 | | Invoice | N/A | 366624 | 2 |
| Alternate Living Expenses | Suntrust | Mortgage Payment | 468 | 12/1/2010 | | Bank Account | OBrienDepo000079 | Exhibit 11 | 4 |
| Alternate Living Expenses | Suntrust | Mortgage Payment | 468 | 1/1/2011 | | Bank Account | OBrienDepo000079 | Exhibit 11 | 4 |
| Alternate Living Expenses | 3 Guys Moving | Moving Invoice | 460 | 1/8/2011 | | Invoice | OBrienDepo000153 | Exhibit 12 | 6 |
| Alternate Living Expenses | Suntrust | Mortgage Payment | 468 | 2/1/2011 | | Bank Account | OBrienDepo000079 | Exhibit 11 | 4 |
| Alternate Living Expenses | Suntrust | Mortgage Payment | 468 | 3/1/2011 | | Bank Account | OBrienDepo000079 | Exhibit 11 | 4 |
| Alternate Living Expenses | Suntrust | Mortgage Payment | 468 | 4/1/2011 | | Bank Account | OBrienDepo000079 | Exhibit 11 | 4 |
| Alternate Living Expenses | Suntrust | Mortgage Payment | 468 | 5/1/2011 | | Bank Account | OBrienDepo000079 | Exhibit 11 | 4 |
| Alternate Living Expenses | Suntrust | Mortgage Payment | 468 | 6/1/2011 | | Bank Account | OBrienDepo000079 | Exhibit 11 | 4 |
| Alternate Living Expenses | Suntrust | Mortgage Payment | 468 | 7/1/2011 | | Bank Account | OBrienDepo000079 | Exhibit 11 | 4 |
| Alternate Living Expenses | Suntrust | Mortgage Payment | 468 | 8/1/2011 | | Bank Account | OBrienDepo000079 | Exhibit 11 | 4 |
| Alternate Living Expenses | Suntrust | Mortgage Payment | 468 | 9/1/2011 | | Bank Account | OBrienDepo000079 | Exhibit 11 | 4 |
| Alternate Living Expenses | Suntrust | Mortgage Payment | 468 | 10/1/2011 | | Bank Account | OBrienDepo000079 | Exhibit 11 | 4 |
| Alternate Living Expenses | Suntrust | Mortgage Payment | 468 | 11/1/2011 | | Bank Account | OBrienDepo000079 | Exhibit 11 | 4 |
| Alternate Living Expenses | Hillsborough County Tax Collector | Property Taxes | 1,421 | 11/21/2011 | | Receipt | N/A | 366624 | 1 |
| Alternate Living Expenses | Suntrust | Mortgage Payment | 468 | 12/1/2011 | | Bank Account | OBrienDepo000079 | Exhibit 11 | 4 |
| Alternate Living Expenses | Suntrust | Mortgage Payment | 468 | 1/1/2012 | | Bank Account | OBrienDepo000079 | Exhibit 11 | 4 |
| Alternate Living Expenses | Suntrust | Mortgage Payment | 468 | 2/1/2012 | | Bank Account | OBrienDepo000079 | Exhibit 11 | 4 |
| **Alternate Living Expenses Total** | | | **$ 10,962** | | | | | | |
| Personal Property Damage Expense | Morris Air Conditioning and Heating, Inc. | Repairs to Air Conditioning | $ 238 | 3/13/2008 | | Invoice | OBrienDepo000037 | Exhibit 6 | 2 |
| Personal Property Damage Expense | Morris Air Conditioning and Heating, Inc. | Repairs to Air Conditioning | 945 | 7/14/2008 | | Invoice | OBrienDepo000038 | Exhibit 6 | 3 |
| Personal Property Damage Expense | Morris Air Conditioning and Heating, Inc. | Repairs to Air Conditioning | 527 | 9/29/2008 | | Invoice | OBrienDepo000039 | Exhibit 6 | 4 |
| Personal Property Damage Expense | Morris Air Conditioning and Heating, Inc. | Repairs to Air Conditioning | 1,465 | 12/10/2008 | | Invoice | OBrienDepo000040 | Exhibit 6 | 5 |
| Personal Property Damage Expense | Morris Air Conditioning and Heating, Inc. | Repairs to Air Conditioning | 129 | 5/27/2009 | | Invoice | OBrienDepo000041 | Exhibit 6 | 6 |
| Personal Property Damage Expense | Morris Air Conditioning and Heating, Inc. | Repairs to Air Conditioning | 107 | 6/19/2009 | | Invoice | OBrienDepo000042 | Exhibit 6 | 7 |
| Personal Property Damage Expense | Morris Air Conditioning and Heating, Inc. | Repairs to Air Conditioning | 1,000 | 8/10/2009 | | Invoice | OBrienDepo000043 | Exhibit 6 | 8 |
| Personal Property Damage Expense | Sunstate Mechanical Contractors, Inc. | Replace Coils in Air Conditioning | 850 | 6/7/2010 | | Invoice | OBrienDepo000045 | Exhibit 6 | 10 |
| Personal Property Damage Expense | Sunstate Mechanical Contractors, Inc. | Replace Coils in Air Conditioning | 850 | 6/30/2010 | X | Invoice | OBrienDepo000046 | Exhibit 6 | 11 |
| Personal Property Damage Expense | Famous Tate Appliance & Bedding Centers | Mattress Replacement | 3,492 | 1/13/2011 | | Invoice | OBrienDepo000047 | Exhibit 6 | 12 |
| **Personal Property Damages Expense Total** | | | **$ 9,602** | | | | | | |

Exhibit 16.2
Lost Equity - Kelly & Lori O'Brien

*Chinese Drywall Litigation Involving Priority Claimants*

| | | | | Source Document |
|---|---|---|---|---|
| Initial Acquisition | | | | |
| Purchase Price | | $ | 185,000 | HUD Statement dated 6/9/04 Doc ID 222901 |
| Settlement Charges | | | 519 | HUD Statement dated 6/9/04 Doc ID 222901 |
| Total Gross Amount Due from Claimant | | $ | 185,519 | |
| | | | | |
| Less | | | | |
| Deposit Made by Claimant | | $ | (2,000) | HUD Statement dated 6/9/04 Doc ID 222901 |
| Borrowings by Claimant | | | - | HUD Statement dated 6/9/04 Doc ID 222901 |
| Credits | | | (794) | HUD Statement dated 6/9/04 Doc ID 222901 |
| Amount Due from Claimant at Close | | $ | 182,724 | |
| | | | | |
| Funds Paid by Claimant | | | | |
| Deposit paid with Contract | | $ | 2,000 | HUD Statement dated 6/9/04 Doc ID 222901 |
| Closing cash payments | | | 182,724 | HUD Statement dated 6/9/04 Doc ID 222901 |
| Total Payments for Initial Purchase | a | $ | 184,724 | |
| | | | | |
| Deposit with Contractor | b | $ | 10,000 | Construction Contract dated 1/10/06 Doc ID. 222901, Pg. 12-13 |
| | | | | |
| Mortgage | | | | |
| Construction Loan From Bank | | $ | 359,000 | Mortgage dated 2/20/06 Doc ID. 222905, Pg. 3 |
| Principal Payments on Construction Loan | c | | 184,945 | Agreement for Modification or Extension of Mortgage Doc ID 222905, Pg. |
| Balance of Mortgage upon conversion of Construction Loan | | | 174,055 | Agreement for Modification or Extension of Mortgage Doc ID 222905, Pg. |
| Mortgage Balance at Payoff | | | 143,275 | Doc ID. 365808 - O'Brien Wallcraft Mortgage 2010 - 2012, Pg. 41 |
| Principal Payments Made | d | | 30,780 | |
| | | | | |
| Total Principal Payments Made | | $ | 215,725 | |
| | | | | |
| Less: Cash Paid to Claimants upon Sale of Home | e | $ | (176,652) | HUD Statement dated 2/17/12 Doc ID 361431, Pg. 1 |
| | | | | |
| Total Lost Equity | = a + b + c + d + e | $ | 233,797 | |

Exhibit 16.3
Calculation of Prejudgment Interest Summary - Kelly & Lori O'Brien

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Vendor | Description | Amount | Total Interest Through 7/22/2019 |
|---|---|---|---|---|---|---|
| 11/1/2010 | 12/1/2010 | Alternate Living Expenses | Suntrust | Mortgage Payment | $       468 | $       208 |
| 11/17/2010 | 12/17/2010 | Alternate Living Expenses | Citizens Property Insurance | Property Insurance | 1,599 | 707 |
| 12/1/2010 | 12/31/2010 | Alternate Living Expenses | Suntrust | Mortgage Payment | 468 | 206 |
| 1/1/2011 | 1/31/2011 | Alternate Living Expenses | Suntrust | Mortgage Payment | 468 | 203 |
| 1/8/2011 | 2/7/2011 | Alternate Living Expenses | 3 Guys Moving | Moving Invoice | 460 | 199 |
| 2/1/2011 | 3/3/2011 | Alternate Living Expenses | Suntrust | Mortgage Payment | 468 | 201 |
| 3/1/2011 | 3/31/2011 | Alternate Living Expenses | Suntrust | Mortgage Payment | 468 | 199 |
| 4/1/2011 | 5/1/2011 | Alternate Living Expenses | Suntrust | Mortgage Payment | 468 | 196 |
| 5/1/2011 | 5/31/2011 | Alternate Living Expenses | Suntrust | Mortgage Payment | 468 | 194 |
| 6/1/2011 | 7/1/2011 | Alternate Living Expenses | Suntrust | Mortgage Payment | 468 | 192 |
| 7/1/2011 | 7/31/2011 | Alternate Living Expenses | Suntrust | Mortgage Payment | 468 | 189 |
| 8/1/2011 | 8/31/2011 | Alternate Living Expenses | Suntrust | Mortgage Payment | 468 | 187 |
| 9/1/2011 | 10/1/2011 | Alternate Living Expenses | Suntrust | Mortgage Payment | 468 | 185 |
| 10/1/2011 | 10/31/2011 | Alternate Living Expenses | Suntrust | Mortgage Payment | 468 | 183 |
| 11/1/2011 | 12/1/2011 | Alternate Living Expenses | Suntrust | Mortgage Payment | 468 | 181 |
| 11/21/2011 | 12/21/2011 | Alternate Living Expenses | Hillsborough County Tax Collector | Property Taxes | 1,421 | 546 |
| 12/1/2011 | 12/31/2011 | Alternate Living Expenses | Suntrust | Mortgage Payment | 468 | 179 |
| 1/1/2012 | 1/31/2012 | Alternate Living Expenses | Suntrust | Mortgage Payment | 468 | 177 |
| 2/1/2012 | 3/2/2012 | Alternate Living Expenses | Suntrust | Mortgage Payment | 468 | 175 |
|  |  | **Alternate Living Expenses Total** |  |  | $  10,962 | $   4,508 |
| 3/13/2008 | 4/12/2008 | Personal Property Damage Expense | Morris Air Conditioning and Heating, Inc. | Repairs to Air Conditioning | $       238 | $       157 |
| 7/14/2008 | 8/13/2008 | Personal Property Damage Expense | Morris Air Conditioning and Heating, Inc. | Repairs to Air Conditioning | 945 | 588 |
| 9/29/2008 | 10/29/2008 | Personal Property Damage Expense | Morris Air Conditioning and Heating, Inc. | Repairs to Air Conditioning | 527 | 315 |
| 12/10/2008 | 1/9/2009 | Personal Property Damage Expense | Morris Air Conditioning and Heating, Inc. | Repairs to Air Conditioning | 1,465 | 847 |
| 5/27/2009 | 6/26/2009 | Personal Property Damage Expense | Morris Air Conditioning and Heating, Inc. | Repairs to Air Conditioning | 129 | 70 |
| 6/19/2009 | 7/19/2009 | Personal Property Damage Expense | Morris Air Conditioning and Heating, Inc. | Repairs to Air Conditioning | 107 | 57 |
| 8/10/2009 | 9/9/2009 | Personal Property Damage Expense | Morris Air Conditioning and Heating, Inc. | Repairs to Air Conditioning | 1,000 | 525 |
| 6/7/2010 | 7/7/2010 | Personal Property Damage Expense | Sunstate Mechanical Contractors, Inc. | Replace Coils in Air Conditioning | 850 | 399 |
| 6/30/2010 | 7/30/2010 | Personal Property Damage Expense | Sunstate Mechanical Contractors, Inc. | Replace Coils in Air Conditioning | 850 | 395 |
| 1/13/2011 | 2/12/2011 | Personal Property Damage Expense | Famous Tate Appliance & Bedding Centers | Mattress Replacement | 3,492 | 1,512 |
|  |  | **Personal Property Damages Expense Total** |  |  | $   9,602 | $   4,864 |

Page 1 of 1

Exhibit 16.3A
Calculation of Prejudgment Interest Detail - Kelly & Lori O'Brien

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Amount | 12/31/2008 | 12/31/2009 | 12/31/2010 | 9/30/2011 | 12/31/2011 | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 3/31/2016 | 6/30/2016 | 9/30/2016 | 12/31/2016 | 3/31/2017 | 6/30/2017 | 9/30/2017 | 12/31/2017 | 3/31/2018 | 6/30/2018 | 9/30/2018 | 12/31/2018 | 7/22/2019 | Total Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/1/2010 | 12/1/2010 | Alternate Living Expenses | $ 468 | $ - | $ - | $ 2 | $ 21 | $ 6 | $ 22 | $ 22 | $ 22 | $ 22 | $ 6 | $ 6 | $ 6 | $ 6 | $ 6 | $ 6 | $ 6 | $ 6 | $ 7 | $ 7 | $ 7 | $ 16 | $ 208 |
| 11/17/2010 | 12/17/2010 | Alternate Living Expenses | 1,599 | - | - | 4 | 72 | 19 | 76 | 76 | 76 | 76 | 19 | 19 | 19 | 20 | 20 | 20 | 21 | 22 | 22 | 23 | 24 | 25 | 56 | 707 |
| 12/1/2010 | 12/31/2010 | Alternate Living Expenses | 468 | - | - | - | 21 | 6 | 22 | 22 | 22 | 22 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 16 | 206 |
| 1/1/2011 | 1/31/2011 | Alternate Living Expenses | 468 | - | - | - | 19 | 6 | 22 | 22 | 22 | 22 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 16 | 203 |
| 1/8/2011 | 2/7/2011 | Alternate Living Expenses | 460 | - | - | - | 18 | 6 | 22 | 22 | 22 | 22 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 16 | 199 |
| 2/1/2011 | 3/3/2011 | Alternate Living Expenses | 468 | - | - | - | 16 | 6 | 22 | 22 | 22 | 22 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 16 | 201 |
| 3/1/2011 | 3/31/2011 | Alternate Living Expenses | 468 | - | - | - | 14 | 6 | 22 | 22 | 22 | 22 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 16 | 199 |
| 4/1/2011 | 5/1/2011 | Alternate Living Expenses | 468 | - | - | - | 12 | 6 | 22 | 22 | 22 | 22 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 16 | 196 |
| 5/1/2011 | 5/31/2011 | Alternate Living Expenses | 468 | - | - | - | 9 | 6 | 22 | 22 | 22 | 22 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 16 | 194 |
| 6/1/2011 | 7/1/2011 | Alternate Living Expenses | 468 | - | - | - | 7 | 6 | 22 | 22 | 22 | 22 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 16 | 192 |
| 7/1/2011 | 7/31/2011 | Alternate Living Expenses | 468 | - | - | - | 5 | 6 | 22 | 22 | 22 | 22 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 16 | 189 |
| 8/1/2011 | 8/31/2011 | Alternate Living Expenses | 468 | - | - | - | 2 | 6 | 22 | 22 | 22 | 22 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 16 | 187 |
| 9/1/2011 | 10/1/2011 | Alternate Living Expenses | 468 | - | - | - | - | 6 | 22 | 22 | 22 | 22 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 16 | 185 |
| 10/1/2011 | 10/31/2011 | Alternate Living Expenses | 468 | - | - | - | - | 4 | 22 | 22 | 22 | 22 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 16 | 183 |
| 11/1/2011 | 12/1/2011 | Alternate Living Expenses | 468 | - | - | - | - | 2 | 22 | 22 | 22 | 22 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 16 | 181 |
| 11/21/2011 | 12/21/2011 | Alternate Living Expenses | 1,421 | - | - | - | - | 2 | 68 | 68 | 68 | 68 | 17 | 17 | 17 | 18 | 17 | 18 | 19 | 19 | 20 | 21 | 22 | 50 | 546 |
| 12/1/2011 | 12/31/2011 | Alternate Living Expenses | 468 | - | - | - | - | - | 22 | 22 | 22 | 22 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 16 | 179 |
| 1/1/2012 | 1/31/2012 | Alternate Living Expenses | 468 | - | - | - | - | - | 20 | 22 | 22 | 22 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 16 | 177 |
| 2/1/2012 | 3/2/2012 | Alternate Living Expenses | 468 | - | - | - | - | - | 18 | 22 | 22 | 22 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 16 | 175 |
| | | **Alternate Living Expenses Total** | $ 10,962 | $ - | $ - | $ 6 | $ 215 | $ 94 | $ 515 | $ 521 | $ 521 | $ 521 | $ 129 | $ 130 | $ 133 | $ 135 | $ 134 | $ 138 | $ 143 | $ 149 | $ 156 | $ 165 | $ 386 | $ 4,508 |
| 3/13/2008 | 4/12/2008 | Personal Property Damage Expense | $ 238 | $ 19 | $ 19 | $ 14 | $ 11 | $ 3 | $ 11 | $ 11 | $ 11 | $ 11 | $ 3 | $ 3 | $ 3 | $ 3 | $ 3 | $ 3 | $ 3 | $ 3 | $ 3 | $ 4 | $ 8 | $ 157 |
| 7/14/2008 | 8/13/2008 | Personal Property Damage Expense | 945 | 40 | 76 | 57 | 42 | 11 | 45 | 45 | 45 | 45 | 11 | 11 | 11 | 12 | 12 | 12 | 12 | 13 | 13 | 14 | 15 | 33 | 588 |
| 9/29/2008 | 10/29/2008 | Personal Property Damage Expense | 527 | 10 | 42 | 32 | 24 | 6 | 25 | 25 | 25 | 25 | 6 | 6 | 6 | 7 | 7 | 7 | 7 | 7 | 7 | 8 | 8 | 19 | 315 |
| 12/10/2008 | 1/9/2009 | Personal Property Damage Expense | 1,465 | - | 114 | 88 | 66 | 18 | 70 | 70 | 70 | 70 | 17 | 17 | 18 | 18 | 18 | 18 | 19 | 20 | 20 | 21 | 22 | 52 | 847 |
| 5/27/2009 | 6/26/2009 | Personal Property Damage Expense | 129 | - | 5 | 8 | 6 | 2 | 6 | 6 | 6 | 6 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 70 |
| 6/19/2009 | 7/19/2009 | Personal Property Damage Expense | 107 | - | 4 | 6 | 5 | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 4 | 57 |
| 8/10/2009 | 9/9/2009 | Personal Property Damage Expense | 1,000 | - | 25 | 60 | 45 | 12 | 47 | 48 | 48 | 48 | 12 | 12 | 12 | 12 | 13 | 13 | 13 | 14 | 14 | 15 | 15 | 35 | 525 |
| 6/7/2010 | 7/7/2010 | Personal Property Damage Expense | 850 | - | - | 25 | 38 | 10 | 40 | 40 | 40 | 40 | 10 | 10 | 10 | 10 | 11 | 11 | 11 | 11 | 12 | 12 | 13 | 30 | 399 |
| 6/30/2010 | 7/30/2010 | Personal Property Damage Expense | 850 | - | - | 22 | 38 | 10 | 40 | 40 | 40 | 40 | 10 | 10 | 10 | 10 | 11 | 11 | 11 | 11 | 12 | 12 | 13 | 30 | 395 |
| 1/13/2011 | 2/12/2011 | Personal Property Damage Expense | 3,492 | - | - | - | 132 | 42 | 166 | 166 | 166 | 166 | 41 | 42 | 42 | 43 | 43 | 44 | 46 | 47 | 48 | 50 | 53 | 54 | 123 | 1,512 |
| | | **Personal Property Damages Expense Total** | $ 9,602 | $ 69 | $ 285 | $ 311 | $ 406 | $ 115 | $ 456 | $ 456 | $ 456 | $ 456 | $ 113 | $ 114 | $ 117 | $ 119 | $ 118 | $ 121 | $ 125 | $ 129 | $ 131 | $ 137 | $ 144 | $ 147 | $ 338 | $ 4,864 |

**Assumptions:**

| | | 12/31/2008 | 12/31/2009 | 12/31/2010 | 9/30/2011 | 12/31/2011 | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 3/31/2016 | 6/30/2016 | 9/30/2016 | 12/31/2016 | 3/31/2017 | 6/30/2017 | 9/30/2017 | 12/31/2017 | 3/31/2018 | 6/30/2018 | 9/30/2018 | 12/31/2018 | 7/22/2019 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | Florida Statutory Interest Rates | | | | | | | | | |
| Annual | | 11.00% | 8.00% | 6.00% | 6.00% | 4.75% | 4.75% | 4.75% | 4.75% | 4.75% | 4.75% | 4.78% | 4.84% | 4.91% | 4.97% | 5.05% | 5.17% | 5.35% | 5.53% | 5.72% | 5.97% | 6.09% | 6.33% |
| Per Diem | | 0.030140% | 0.021920% | 0.016440% | 0.016440% | 0.013013% | 0.012978% | 0.013013% | 0.013013% | 0.013013% | 0.012978% | 0.013061% | 0.013224% | 0.013415% | 0.013616% | 0.013835% | 0.014164% | 0.014656% | 0.015150% | 0.015671% | 0.016356% | 0.016684% | 0.017342% |

16.A
Documents and Other Information Considered - Kelly & Lori O'Brien

---

*Chinese Drywall Litigation Involving Priority Claimants*

| No. | Claimant | General Description | First Page | Last Page |
|-----|----------|---------------------|------------|-----------|
| **A. Pleadings and Other Legal Documents:** | | | | |
| 1 | All | Judge Cooke's Order, dated November 16, 2018 | | |
| 2 | O'Brien | Priority Claimant Kelly O'Brien Answers to Interrogatories, dated | | |
| 3 | O'Brien | Priority Claimant Kelly O'Brien Answers to Defendant's Second Set of Interrogatories, dated | | |
| 4 | O'Brien | Priority Claimant Lori O'Brien Answers to Interrogatories, dated | | |
| 5 | O'Brien | Priority Claimant Lori O'Brien Answers to Defendant's Second Set of Interrogatories, dated | | |
| 6 | O'Brien | Kelly O'Brien First Amended Supplemental Plaintiff Profile Form, dated December 5, 2018 | | |
| **B. Depositions & Corresponding Exhibits:** | | | | |
| 1 | O'Brien | Deposition Transcript of Lori O'Brien, dated December 17, 2018 | | |
| 2 | O'Brien | Deposition Transcript of Kelly O'Brien, dated December 17, 2018 | | |
| 3 | O'Brien | O'Brien 01 - Plaintiff Profile Form - Residential Properties | OBrienK00001 | OBrienK00021 |
| 4 | O'Brien | O'Brien 02 - Purchase Documents | OBrienDepo000049 | OBrienDepo000071 |
| 5 | O'Brien | O'Brien 03 - Final Statement From Steve R. Carter, Inc., Dated 3/23/2007 | OBrienDepo000319 | OBrienDepo000319 |
| 6 | O'Brien | O'Brien 04 - Mortgage | OBrienDepo000080 | OBrienDepo000087 |
| 7 | O'Brien | O'Brien 05 - Allied Home Inspections Report Dated 2/20/2010 | OBrienDepo000029 | OBrienDepo000035 |
| 8 | O'Brien | O'Brien 06 - Spreadsheet Of Air Conditioning Problems, Invoices | OBrienDepo000036 | OBrienDepo000047 |
| 9 | O'Brien | O'Brien 07 - Photographs | OBrienDepo000167 | OBrienDepo000183 |
| 10 | O'Brien | O'Brien 08 - Affidavit Of Donald Mcdermott Support Claim Of Kelly O'Brien | OBrienDepo000121 | OBrienDepo000121 |
| 11 | O'Brien | O'Brien 09 - Chinese Drywall Remediation And Reconstruction Proposal Prepared By Eric Stockland Dated 9/1/2011 | | |
| 12 | O'Brien | O'Brien 10 - Priority Claimant Lori O'Brien'S Answers To Interrogatories | OBrienDepo000373 | OBrienDepo000378 |
| 13 | O'Brien | O'Brien 11 - Note Dated 11/3/2010 And Bank Statement Dated 2/14/2011 | OBrienDepo000076 | OBrienDepo000079 |
| 14 | O'Brien | O'Brien 12 - Bank Statement Dated 2/14/2011; Note Dated 11/3/2010; 3 Guys Moving Receipt Dated 1/8/2011 | OBrienDepo000148 | OBrienDepo000153 |
| 15 | O'Brien | O'Brien 13 - Uniform Residential Appraisal Report And Invoice No. 06-9433 Dated 1/26/2006 | OBrienDepo000154 | OBrienDepo000166 |
| 16 | O'Brien | O'Brien 14 - 2007 Notice Of Ad Valorem Taxes And Non-Ad Valorem Assessment | OBrienDepo000198 | OBrienDepo000202 |
| 17 | O'Brien | O'Brien 15 - My Florida Regional Mls/ Broker Synopsis Report | OBrienDepo000113 | OBrienDepo000113 |
| 18 | O'Brien | O'Brien 16 - Chinese Drywall Settlement Program Foreclosure And Short Sale Claim Form | OBrienDepo000004 | OBrienDepo000008 |
| 19 | O'Brien | O'Brien 17 - Affidavit Of Lori D. O'Brien Dated 10/24/2013 | OBrienDepo000048 | OBrienDepo000048 |
| 20 | O'Brien | O'Brien 18 - Us Department Of Housing And Urban Development Settlement Statement Dated 2/17/2012 | OBrienDepo000072 | OBrienDepo000075 |
| 21 | O'Brien | O'Brien 19 - Spreadsheet | OBrienDepo000320 | OBrienDepo000331 |
| 22 | O'Brien | O'Brien 20 - Spreadsheet | OBrienDepo000332 | OBrienDepo000343 |
| 23 | O'Brien | O'Brien 21 - Supplemental Plaintiff Profile Form | OBrienDepo000188 | OBrienDepo000195 |
| 24 | O'Brien | O'Brien 22 - First Amended Supplemental Plaintiff Profile Form | OBrienDepo000407 | OBrienDepo000413 |
| 25 | O'Brien | O'Brien 23 - Addendum To Sales Agreement Dated 12/28/2013 | OBrienDepo000147 | OBrienDepo000147 |
| 26 | O'Brien | O'Brien 24 - Priority Claimant Kelly O'Brien'S Answers To Interrogatories | OBrienDepo000364 | OBrienDepo000368 |
| **C. Supporting Documentation** | | | | |
| 1 | O'Brien | Kelly Lori O'Brien Out of Pocket Damages Summary Provided by Counsel | | |
| 2 | O'Brien | Doc ID. 361428 - O'Brien 3 Guys Moving Bill of Lading for ALE | | |

16.A
Documents and Other Information Considered - Kelly & Lori O'Brien

*Chinese Drywall Litigation Involving Priority Claimants*

| | | | *Bate Stamp (if applicable)* | |
| No. | Claimant | General Description | First Page | Last Page |
|---|---|---|---|---|
| 3 | O'Brien | Doc ID. 222904 - O'Brien Proof of mortgage payments for ALE | | |
| 4 | O'Brien | Doc ID. 365812 - O'Brien Proof of mortgage payments for ALE | | |
| 5 | O'Brien | Doc ID. 222899 - O'Brien Air Conditioning repairs with receipts | | |
| 6 | O'Brien | Doc ID. 222901 - O'Brien HUD Statement for vacant lot (lost equity) | | |
| 7 | O'Brien | Doc ID. 222905 - O'Brien Loan Modification for Construction (lost equity) | | |
| 8 | O'Brien | Doc ID. 361429 - O'Brien Appraisal Report dated 11.30.06 | | |
| 9 | O'Brien | Doc ID. 361431 - O'Brien HUD Settlement Statement (lost equity) | | |
| 10 | O'Brien | Doc ID. 366624 - O'Brien McElroy Residence Related Documents | | |
| 11 | O'Brien | Doc ID. 365809 - O'Brien Final Statement from Steven R. Carter | | |
| 12 | O'Brien | Doc ID. 365808 - O'Brien Wallcraft Mortgage 2010 - 2012 | | |

Case 1:11-cv-22408-MGC Document 272-1 Entered on FLSD Docket 09/13/2013 Page 222 of 262

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-22408-Civ-COOKE

EDUARDO AND CARMEN AMORIN, *et al.*,
individually and on behalf of others similarly
situated,

        Plaintiffs,

vs.

TAISHAN GYPSUM CO., LTD., f/k/a
SHANDONG TIASHE DONGXIN CO. LTD.,
*et al.*,

        Defendants.

_____

# Exhibit 17

**Calculations of Damages for Priority Claimants**

# Michael & Robyn Rosen

EXHIBIT TO THE EXPERT WITNESS REPORT OF:
MICHAEL P. ELKIN, CPA/CFF/ABV, CFE
IN THE PRIORITY CLAIMANT TRIAL

February 19, 2019



Exhibit 17
Data and Damage Summary - Michael & Robyn Rosen

*Chinese Drywall Litigation Involving Priority Claimants*

| Data: | | Reference / Notes |
|---|---|---|
| Address of Affected property | 17538 Middlebrook Way | *SPPF* |
| | Boca Raton, FL 33496 | *SPPF* |
| Date Affected property acquired | November 6, 2006 | *SPPF* |
| Date Chinese drywall installed | Unknown | *SPPF* |
| Date moved into Affected property | November 6, 2006 | *SPPF* |
| Date first aware of Chinese drywall | August-09 | *SPPF* |
| | | |
| Move out date to alternate living | August-09 | *ROG 1, #2* |
| Date returned to Affected property | Never | *ROG 1, #2* |
| End date for alternate living expenses | December-09 | *ROG 1, #2* |
| | | |
| Still own property? | N | *SPPF* |
| Bankruptcy caused by damage? | N | *SPPF* |
| Foreclosure or short sale? | N | *SPPF* |
| Affected property sold? | Y | *SPPF* |
| Sale date | December 4, 2009 | *SPPF* |
| Type of sale | Sale in Mitigation | *SPPF* |
| | | |
| Remediation status | None | *SPPF* |
| Remediation period | N/A | *SPPF* |

| Damage Summary: | | |
|---|---|---|
| Full or Partial Out-of-Pocket Remediation Expenses | $ - | |
| Other Damages: | | |
| Alternate Living Expenses | $ 29,167 | *Exh.17.1* |
| Personal Property Damage Expense | 101,618 | *Exh.17.1* |
| Additional Damages | - | |
| | $ 130,785 | |
| Lost Equity | $ 1,490,699 | *Exh. 17.2* |
| Diminution in Value | TBD | |
| Loss of Use and Enjoyment | TBD | |
| Punitive Damages | TBD | |

Exhibit 17.1
Damage Claims Detail - Michael & Robyn Rosen

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Alternate Living Expenses | Joe Bonnie & Sons | Moving - Deposit | $ 2,929 | 7/23/2009 | | Invoice | ROSENM (OLF) - 000058 | Exhibit 12 | 9 |
| Alternate Living Expenses | Rance Masheck | Lease Payments - August | 5,200 | 8/1/2009 | X | Check | ROSENM (OLF) - 000040 | Exhibit 13 | 6 |
| Alternate Living Expenses | Salty's Plumbing | Plumbing | 441 | 8/7/2009 | X | Receipt | ROSENM (OLF) - 000050 | Exhibit 12 | 1 |
| Alternate Living Expenses | Thanks-A-Lock | Moving | 148 | 8/12/2009 | | Invoice | ROSENM (OLF) - 000051 | Exhibit 12 | 2 |
| Alternate Living Expenses | X-Pert Carpet Care | Cleaning/Carpets | 1,425 | 8/12/2009 | | Invoice | ROSENM (OLF) - 000054 | Exhibit 12 | 5 |
| Alternate Living Expenses | Joe Bonnie & Sons | Moving - At Delivery | 3,416 | 8/13/2009 | | Invoice | ROSENM (OLF) - 000052 | Exhibit 12 | 3 |
| Alternate Living Expenses | Home Depot | Box Cutter | 8 | 8/15/2009 | | Receipt | ROSENM (OLF) - 000050 | Exhibit 12 | 1 |
| Alternate Living Expenses | Rance Masheck | Lease Payments - September | 5,200 | 9/9/2009 | | Check | ROSENM (OLF) - 000036 | Exhibit 13 | 2 |
| Alternate Living Expenses | Rance Masheck | Lease Payments - October | 5,200 | 9/15/2009 | | Check | ROSENM (OLF) - 000037 | Exhibit 13 | 3 |
| Alternate Living Expenses | Rance Masheck | Lease Payments - November | 5,200 | 11/20/2009 | | Check | ROSENM (OLF) - 000038 | Exhibit 13 | 4 |
| **Alternate Living Expenses Total** | | | **$ 29,167** | | | | | | |
| Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Family Room Sofas | $ 367 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000093 | Exhibit 12 | 44 |
| Personal Property Damage Expense | Turkell & Gervis Design | Sofas - Family Room | 6,700 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000093 | Exhibit 12 | 44 |
| Personal Property Damage Expense | Turkell & Gervis Design | Pillows - Family Room | 518 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000094 | Exhibit 12 | 45 |
| Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Family Room Sofa Pillows | 357 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000094 | Exhibit 12 | 45 |
| Personal Property Damage Expense | Turkell & Gervis Design | Pillows - Family Room Sofas | 546 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000095 | Exhibit 12 | 46 |
| Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Family Room Sofa Pillows | 97 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000095 | Exhibit 12 | 46 |
| Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Family Room Sofas | 62 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000095 | Exhibit 12 | 46 |
| Personal Property Damage Expense | Turkell & Gervis Design | Upholster - Family Room Arm Chairs | 2,523 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000097 | Exhibit 12 | 48 |
| Personal Property Damage Expense | Turkell & Gervis Design | Pillows - Family Room Arm Chair Pillows | 273 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000098 | Exhibit 12 | 49 |
| Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Family Room Arm Chair Pillows | 196 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000098 | Exhibit 12 | 49 |
| Personal Property Damage Expense | Turkell & Gervis Design | Coffee Tables - Family Room | 1,384 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000099 | Exhibit 12 | 50 |
| Personal Property Damage Expense | Turkell & Gervis Design | Bar Stools - Family Room Kitchen Counter | 1,587 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000100 | Exhibit 12 | 51 |
| Personal Property Damage Expense | Turkell & Gervis Design | Rug - Family Room | 4,525 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000104 | Exhibit 12 | 55 |
| Personal Property Damage Expense | Turkell & Gervis Design | Dining Table - Breakfast Nook | 2,019 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000108 | Exhibit 12 | 59 |
| Personal Property Damage Expense | Turkell & Gervis Design | Arm Chairs - Breakfast Nook | 1,674 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000109 | Exhibit 12 | 60 |
| Personal Property Damage Expense | Turkell & Gervis Design | Pillow Pads - Breakfast Room Chairs | 820 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000110 | Exhibit 12 | 61 |
| Personal Property Damage Expense | Turkell & Gervis Design | Vanity Chest - Powder Room | 1,104 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000115 | Exhibit 12 | 66 |
| Personal Property Damage Expense | Turkell & Gervis Design | Rug - Guest Bedroom 1 | 1,462 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000123 | Exhibit 12 | 74 |
| Personal Property Damage Expense | Turkell & Gervis Design | Writing Desk - Guest Room | 359 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000129 | Exhibit 12 | 80 |
| Personal Property Damage Expense | Turkell & Gervis Design | Refinish - Guest Bedroom Chair | 129 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000129 | Exhibit 12 | 80 |
| Personal Property Damage Expense | Turkell & Gervis Design | Bedside Lamp - Master Bedroom | 285 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000132 | Exhibit 12 | 83 |
| Personal Property Damage Expense | Turkell & Gervis Design | Pillows - Master Bedroom | 259 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000133 | Exhibit 12 | 84 |
| Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Master Bedroom Pillows | 417 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000133 | Exhibit 12 | 84 |
| Personal Property Damage Expense | Turkell & Gervis Design | Vanity Jars - Throughout Home | 173 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000134 | Exhibit 12 | 85 |

Exhibit 17.1
Damage Claims Detail - Michael & Robyn Rosen

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|------|--------|-------------|--------|------|--------------|----------------|-------|------------------|--------------|
| Personal Property Damage Expense | Turkell & Gervis Design | Computer Desk - Loft Area | 992 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000153 | Exhibit 12 | 104 |
| Personal Property Damage Expense | Turkell & Gervis Design | Chair - Sam's Bedroom | 835 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000157 | Exhibit 12 | 108 |
| Personal Property Damage Expense | Turkell & Gervis Design | Buffet - Playroom | 1,478 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000165 | Exhibit 12 | 116 |
| Personal Property Damage Expense | Turkell & Gervis Design | Artwork - Playroom | 285 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000167 | Exhibit 12 | 118 |
| Personal Property Damage Expense | Turkell & Gervis Design | Bean Bag Chair - Playroom | 183 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000171 | Exhibit 12 | 122 |
| Personal Property Damage Expense | Turkell & Gervis Design | Bean Bag Ottoman - Playroom | 71 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000171 | Exhibit 12 | 122 |
| Personal Property Damage Expense | Turkell & Gervis Design | Loveseat - Master Bedroom | 1,856 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000174 | Exhibit 12 | 125 |
| Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Master Bedroom Loveseat | 367 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000174 | Exhibit 12 | 125 |
| Personal Property Damage Expense | Turkell & Gervis Design | Arm Chair - Master Bedroom | 719 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000175 | Exhibit 12 | 126 |
| Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Master Bedroom Arm Chair | 585 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000175 | Exhibit 12 | 126 |
| Personal Property Damage Expense | Turkell & Gervis Design | Sofa - Playroom | 3,411 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000176 | Exhibit 12 | 127 |
| Personal Property Damage Expense | Turkell & Gervis Design | Sofa - Living Room | 2,431 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000177 | Exhibit 12 | 128 |
| Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Living Room Sofa | 879 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000177 | Exhibit 12 | 128 |
| Personal Property Damage Expense | Turkell & Gervis Design | Pillows - Living Room Sofa | 293 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000177 | Exhibit 12 | 128 |
| Personal Property Damage Expense | Turkell & Gervis Design | Lounge Chairs - Living Room | 6,099 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000178 | Exhibit 12 | 129 |
| Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Living Room Lounge Chairs | 2,254 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000178 | Exhibit 12 | 129 |
| Personal Property Damage Expense | Turkell & Gervis Design | Table - Living Room | 759 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000179 | Exhibit 12 | 130 |
| Personal Property Damage Expense | Turkell & Gervis Design | Arm Chairs - Living Room | 3,166 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000180 | Exhibit 12 | 131 |
| Personal Property Damage Expense | Turkell & Gervis Design | Tables - Living Room | 3,867 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000181 | Exhibit 12 | 132 |
| Personal Property Damage Expense | Turkell & Gervis Design | Coffee Table Ottoman - Living Room | 2,653 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000182 | Exhibit 12 | 133 |
| Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Coffee Table Ottoman | 179 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000182 | Exhibit 12 | 133 |
| Personal Property Damage Expense | Turkell & Gervis Design | Chest - Foyer | 2,130 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000184 | Exhibit 12 | 135 |
| Personal Property Damage Expense | Turkell & Gervis Design | Candle Holders - Throughout | 203 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000186 | Exhibit 12 | 137 |
| Personal Property Damage Expense | Turkell & Gervis Design | Bed - Guest Bedroom 1 | 1,305 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000187 | Exhibit 12 | 138 |
| Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Guest Bedroom 1 Bedding | 391 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000187 | Exhibit 12 | 138 |
| Personal Property Damage Expense | Turkell & Gervis Design | Sofa - Office | 1,877 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000188 | Exhibit 12 | 139 |
| Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Office Sofa | 1,149 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000188 | Exhibit 12 | 139 |
| Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Office Sofa Pillows | 863 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000188 | Exhibit 12 | 139 |
| Personal Property Damage Expense | Turkell & Gervis Design | Bed (Upholstered) - Master Bedroom | 2,610 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000189 | Exhibit 12 | 140 |
| Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Master Bedroom Bed (Upholstered) | 1,686 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000189 | Exhibit 12 | 140 |
| Personal Property Damage Expense | Turkell & Gervis Design | Pillows - Master Bedroom | 345 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000190 | Exhibit 12 | 141 |
| Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Master Bedroom Pillows | 446 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000190 | Exhibit 12 | 141 |
| Personal Property Damage Expense | Turkell & Gervis Design | Armoire - Master Bedroom | 5,112 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000191 | Exhibit 12 | 142 |
| Personal Property Damage Expense | Turkell & Gervis Design | Placemats - Breakfast Nook | 362 | 1/22/2007 | | Proposal | ROSENM (OLF) - 000107 | Exhibit 12 | 58 |
| Personal Property Damage Expense | Turkell & Gervis Design | Entertainment Cabinet - Sam's Bedroom | 1,470 | 6/26/2007 | | Proposal | ROSENM (OLF) - 000154 | Exhibit 12 | 105 |

Exhibit 17.1
Damage Claims Detail - Michael & Robyn Rosen

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Personal Property Damage Expense | Turkell & Gervis Design | Bed - Sam's Bedroom | 2,012 | 6/26/2007 | | Proposal | ROSENM (OLF) - 000154 | Exhibit 12 | 105 |
| Personal Property Damage Expense | Turkell & Gervis Design | Chest - Sam's Bedroom | 1,453 | 6/26/2007 | | Proposal | ROSENM (OLF) - 000154 | Exhibit 12 | 105 |
| Personal Property Damage Expense | Turkell & Gervis Design | Chaise - Master Bedroom | 1,375 | 7/20/2007 | | Proposal | ROSENM (OLF) - 000144 | Exhibit 12 | 95 |
| Personal Property Damage Expense | Turkell & Gervis Design | Chaise - Master Bedroom | 1,375 | 7/20/2007 | | Proposal | ROSENM (OLF) - 000144 | Exhibit 12 | 95 |
| Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Master Bedroom Chaises | 2,070 | 7/20/2007 | | Proposal | ROSENM (OLF) - 000144 | Exhibit 12 | 95 |
| Personal Property Damage Expense | Turkell & Gervis Design | Reupholstery - Family Room Chairs | 850 | 8/2/2007 | | Proposal | ROSENM (OLF) - 000096 | Exhibit 12 | 47 |
| Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Family Room Chairs | 943 | 8/2/2007 | | Proposal | ROSENM (OLF) - 000096 | Exhibit 12 | 47 |
| Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Family Room Chair Pillows | 273 | 8/2/2007 | | Proposal | ROSENM (OLF) - 000096 | Exhibit 12 | 47 |
| Personal Property Damage Expense | Turkell & Gervis Design | Garden Stool - Patio | 147 | 9/28/2007 | | Proposal | ROSENM (OLF) - 000148 | Exhibit 12 | 99 |
| Personal Property Damage Expense | Turkell & Gervis Design | Chairs - Loft Area | 537 | 1/15/2008 | | Proposal | ROSENM (OLF) - 000146 | Exhibit 12 | 97 |
| Personal Property Damage Expense | Turkell & Gervis Design | Table - Loft Area | 394 | 1/15/2008 | | Proposal | ROSENM (OLF) - 000146 | Exhibit 12 | 97 |
| Personal Property Damage Expense | Turkell & Gervis Design | Stools - Loft Area | 1,227 | 1/15/2008 | | Proposal | ROSENM (OLF) - 000147 | Exhibit 12 | 98 |
| Personal Property Damage Expense | Turkell & Gervis Design | Chair - Loft Area | 676 | 1/15/2008 | | Proposal | ROSENM (OLF) - 000149 | Exhibit 12 | 100 |
| Personal Property Damage Expense | Turkell & Gervis Design | Slipcover - Loft Area Chair | 326 | 1/15/2008 | | Proposal | ROSENM (OLF) - 000149 | Exhibit 12 | 100 |
| Personal Property Damage Expense | Turkell & Gervis Design | Bedding - Sam's Bedroom | 1,006 | 1/17/2008 | | Proposal | ROSENM (OLF) - 000155 | Exhibit 12 | 106 |
| Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Sam's Bedding | 506 | 1/17/2008 | | Proposal | ROSENM (OLF) - 000155 | Exhibit 12 | 106 |
| Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Sam's Bed Pillows | 121 | 1/17/2008 | | Proposal | ROSENM (OLF) - 000155 | Exhibit 12 | 106 |
| Personal Property Damage Expense | Tech Air of Westgate | A/C Maintenance and Repair | 435 | 6/19/2009 | | Invoice | ROSENM (OLF) - 000060 | Exhibit 12 | 11 |
| Personal Property Damage Expense | Posh French Cleaners | Dry Cleaning | 739 | 12/31/2009 | | Receipt | ROSENM (OLF) - 000066 | Exhibit 12 | 17 |
| Personal Property Damage Expense | Gervis Design | Repair/Replace | 199 | 2/16/2010 | | Invoice | ROSENM (OLF) - 000062 | Exhibit 12 | 13 |
| Personal Property Damage Expense | Best Buy | TV Replacement 1 | 1,908 | 2/18/2010 | | Receipt | ROSENM (OLF) - 000069 | Exhibit 12 | 20 |
| Personal Property Damage Expense | Best Buy | TV Replacement 2 | 1,899 | 2/18/2010 | | Receipt | ROSENM (OLF) - 000070 | Exhibit 12 | 21 |
| **Personal Property Damage Expense Total** | | | **$ 101,618** | | | | | | |

Exhibit 17.2
Lost Equity - Michael & Robyn Rosen

*Chinese Drywall Litigation Involving Priority Claimants*

| | | | | Source Document |
|---|---|---|---|---|
| **Initial Acquisition** | | | | |
| Purchase Price | | $ | 1,600,000 | HUD Statement dated 11/6/06 - Exh. 2 |
| Work Orders | | $ | 225,000 | HUD Statement dated 11/6/06 - Exh. 2 |
| Settlement Charges | | | 39,877 | HUD Statement dated 11/6/06 - Exh. 2 |
| Total Gross Amount Due from Claimant | | $ | 1,864,877 | |
| | | | | |
| **Less** | | | | |
| Deposit Made by Claimant | | $ | (182,500) | HUD Statement dated 11/6/06 - Exh. 2 |
| Borrowings by Claimant | | | (600,000) | HUD Statement dated 11/6/06 - Exh. 2 |
| Credits | | | (20,000) | HUD Statement dated 11/6/06 - Exh. 2 |
| Amount Due from Claimant at Close | | $ | 1,062,377 | |
| | | | | |
| **Funds Paid by Claimant** | | | | |
| Deposit Paid with Contract | | $ | 182,500 | HUD Statement dated 11/6/06 - Exh. 2 |
| Closing Cash payments | | | 1,062,377 | HUD Statement dated 11/6/06 - Exh. 2 |
| Total Payments for Initial Purchase | a | $ | 1,244,877 | |
| | | | | |
| **1st Mortgage** | | | | |
| Mortgage Beginning Balance | | $ | 600,000 | Rosen $600,000 Mortgage - KR Doc (from Public Records) |
| Mortgage Balance at Payoff | | | 577,864 | Chase Transaction History - MROSEN - 000203-000208) |
| Principal Payments Made | b | $ | 22,136 | |
| | | | | |
| **2nd Mortgage** | | | | |
| Mortgage Beginning Balance [(1)] | | $ | 298,115 | |
| Mortgage Balance at Payoff | | | 298,115 | HUD Statement dated 12/4/09 - ROSEN, M (OLF) - 000047 - 000049) |
| Principal Payments Made | c | $ | - | |
| | | | | |
| Capital Improvements | d | $ | 150,219 | Exhibit 17.2A |
| | | | | |
| Plus: Seller Paid Closing Costs on Sale in Mitigation | e | $ | 73,466 | HUD Statement dated 12/4/09 - ROSEN, M (OLF) - 000047 - 000049) |
| | | | | |
| Total Lost Equity | = a + b +c + d + e | $ | 1,490,698 | |

Notes:
[(1)] Per the HUD Statement on the sale of the property in 2009 there was a 2nd mortgage paid off in the amount of $98,114.78.
Per the Claimants' answer to ROGS, initial mortgage was for $802,500. However, the Mortgage and HUD Statement
dated 11/6/06 is in the amount of $600,000 a difference of $202,500. As if this time KR has not been provided
further support for the second mortgage and any potential principal payments. Should that information be provided this Lost
Equity is subject to change.

Exhibit 17.2A
Lost Equity - Michael & Robyn Rosen

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/Doc. ID | PDF Page No. |
|------|--------|-------------|--------|------|--------------|----------------|-------|-----------------|--------------|
| Capital Improvements | Potomac Garage Solutions | Capital Improvements | 12,465 | 7/29/2008 | | Invoice | ROSENMOLF-000072 | Exhibit 12 | 23 |
| Capital Improvements | Closet Systems | Capital Improvements | 10,385 | 8/7/2006 | X | Invoice | ROSENMOLF-000076 | Exhibit 12 | 27 |
| Capital Improvements | Turkell & Gervis Design | Mosaic Tile - Master Bathroom | 402.57 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000136 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Chandelier - Breakfast Nook | 2,846.75 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000106 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Wallpaper - Living Room | 1,358.67 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000086 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Wallpaper - Living Room Installation | 474.46 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000086 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Ceiling Light - Game Room | 814.73 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000113 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Sconces - Downstairs Guest Bathroom | 421.55 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000125 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Sconces - Master Bedroom | 510.88 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000135 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Sideboard - Living Room | 3,664.67 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000183 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Wallpaper - Powder Room | 352.25 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000117 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Wallpaper - Powder Room Installation | 359.44 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000117 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Shelves - Loft Area | 1,452.23 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000151 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Cabinet - Loft Area | 2,490.50 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000152 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Chandelier - Dining Room | 3,961.00 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000185 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Fabric - Master Bedroom Bed Cover | 250.91 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000138 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Carpet - Office | 1,798.44 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000119 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Carpet - Playroom | 2,668.68 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000127 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Carpet - Master Bedroom | 3,976.73 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000137 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Carpet - Sam's & Jesse's Bedrooms | 2,788.17 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000160 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Sink - Powder Room | 728.46 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000114 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Faucet - Powder Room | 742.84 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000114 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Strainer - Powder Room | 94.12 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000114 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Draperies - Guest Bedroom 1 | 4,572.05 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000126 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Fabric - Guest Bedroom 1 Drapes | 467.27 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000126 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Fabric - Guest Bedroom 1 Drapes | 130.84 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000126 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Window Treatment - Powder Room | 1,473.69 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000118 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Window Treatment - Powder Room | 586.60 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000118 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Draperies - Master Bedroom | 4,988.99 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000140 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Fabric - Master Bedroom Drapes | 1,633.28 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000140 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Fabric - Master Bedroom Window Treatment | 1,248.27 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000140 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Ceiling Fan - Master Bedroom | 575.68 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000141 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Window Treatment - Laundry Room | 194.10 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000158 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Window Treatment - Cabana Bathroom | 379.57 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000158 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Window Treatment - Master Bedroom | 1,222.09 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000158 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Side Panels - Living Room | 3,306.83 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000087 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Fabric - Window Treatments | 1,994.45 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000087 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Fabric - Drapes Living Room | 1,705.36 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000087 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Draperies- Office | 4,895.54 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000121 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Window Treatment - Office | 2,156.63 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000121 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Window Treatment - Master Bedroom/Study | 517.59 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 00139 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Fabric - Window Treatments Family Room | 1,204.39 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000101 | Exhibit 12 | |

Exhibit 17.2A
Lost Equity - Michael & Robyn Rosen

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Capital Improvements | Turkell & Gervis Design | Side Panels - Breakfast Room and Family Room | 7,924.88 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000102 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Draperies - Sam's Bedroom | 1,882.01 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000156 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Fabric - Sam's Bedroom Draperies | 213.36 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000156 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Window Treatment - Sam's Bedroom | 200.13 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000156 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Window Treatment - Sam's Bedroom | 435.64 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000159 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Window Treatment - Jesse's Bedroom | 3,824.42 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000163 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Fabric - Jesse's Bedroom Window Treatment | 862.65 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000163 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Window Treatment - Guest Bedroom 2 | 948.92 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000170 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Chandelier for Foyer | 3,173.70 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000085 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Window Treatment - Office | 269.45 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000120 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Window Treatment - Office | 316.31 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000120 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Wallpaper - Cabana Bathroom | 402.57 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000128 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Wallpaper - Cabana Bathroom Installation | 230.04 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000128 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Wallpaper - Master Bathroom | 840.60 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000142 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Wallpaper -Master Bathroom Installation | 517.59 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000142 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Wallpaper - Sam's Bathroom | 293.34 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000161 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Wallpaper - Sam's Bathroom Installation | 230.04 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000161 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Wallpaper - Jesse's Bathroom | 366.68 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000163 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Wallpaper - Jesse's Bathroom Installation | 287.55 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000163 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Ceiling Fan - Family Room | 635.49 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000103 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Sconces - Playroom | 220.46 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000166 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Mirror - Powder Room | 1,453.73 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000116 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Window Treatment - Playroom | 1,114.26 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000169 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Fabric - Playroom Window Treatment | 94.89 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000169 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Fabric - Playroom Window Treatment | 54.63 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000169 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Ceiling Fixture - Kitchen | 838.69 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000111 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Ceiling Fans - Patio | 1,228.41 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000172 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Wallpaper - Playroom | 293.34 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000168 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Wallpaper - Playroom Installation | 230.04 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000168 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Wallpaper - Dining Room | 931.66 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000091 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Wallpaper - Dining Room Installation | 517.59 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000091 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Wood molding with chair rail - Dining Room | 2,264.46 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000092 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Draperies - Cabana Bathroom | 337.87 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000130 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Draperies - Cabana Bath Door | 258.35 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000130 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Window Treatment - Master Bathroom | 1,258.03 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000143 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Fabric - Master Bathroom Window | 470.99 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000143 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Wallpaper - Jesse's Bedroom | 366.68 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000162 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Wallpaper - Jesse's Bedroom Installation | 287.55 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000162 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Wallpaper - Laundry Room | 543.47 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000131 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Wallpaper - Laundry Room Installation | 287.55 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000131 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Fabric - Office Window | 539.16 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000122 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Lights - Kitchen | 776.39 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000105 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Canopy for Lights - Kitchen | 258.80 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000105 | Exhibit 12 | |

Exhibit 17.2A
Lost Equity - Michael & Robyn Rosen

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/Doc. ID | PDF Page No. |
|------|--------|-------------|--------|------|--------------|----------------|-------|-----------------|--------------|
| Capital Improvements | Turkell & Gervis Design | Ceiling Canopy - Kitchen (connections for lights) | 258.80 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000112 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Pendant Fixture (location not specified) | 348.26 | 6/13/2007 | | Proposal | ROSENM (OLF) - 000173 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Fabric - Master Bedroom/Gym Window Treatment | 611.04 | 9/28/2007 | | Proposal | ROSENM (OLF) - 000145 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Fabric - Master Bedroom/Gym Window Treatment | 408.32 | 9/28/2007 | | Proposal | ROSENM (OLF) - 000145 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Cabinetry - Loft Area | 20,703.60 | 1/25/2008 | | Proposal | ROSENM (OLF) - 000150 | Exhibit 12 | |
| Capital Improvements | Kinderguard Pool Fence | Capital Improvements | 1,145 | 10/6/2006 | | Invoice | ROSENMOLF-000063 | Exhibit 12 | 14 |
| Capital Improvements Total | | | $ 150,219 | | | | | | |

Exhibit 17.3

Calculation of Prejudgment Interest Summary - Michael & Robyn Rosen

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Vendor | Description | Amount | Total Interest Through 7/22/2019 |
|---|---|---|---|---|---|---|
| 7/23/2009 | 8/22/2009 | Alternate Living Expenses | Joe Bonnie & Sons | Moving - Deposit | $ 2,929 | $ 1,548 |
| 8/1/2009 | 8/31/2009 | Alternate Living Expenses | Rance Masheck | Lease Payments - August | 5,200 | 2,739 |
| 8/7/2009 | 9/6/2009 | Alternate Living Expenses | Salty's Plumbing | Plumbing | 441 | 232 |
| 8/12/2009 | 9/11/2009 | Alternate Living Expenses | Thanks-A-Lock | Moving | 148 | 78 |
| 8/12/2009 | 9/11/2009 | Alternate Living Expenses | X-Pert Carpet Care | Cleaning/Carpets | 1,425 | 747 |
| 8/13/2009 | 9/12/2009 | Alternate Living Expenses | Joe Bonnie & Sons | Moving - At Delivery | 3,416 | 1,790 |
| 8/15/2009 | 9/14/2009 | Alternate Living Expenses | Home Depot | Box Cutter | 8 | 4 |
| 9/9/2009 | 10/9/2009 | Alternate Living Expenses | Rance Masheck | Lease Payments - September | 5,200 | 2,694 |
| 9/15/2009 | 10/15/2009 | Alternate Living Expenses | Rance Masheck | Lease Payments - October | 5,200 | 2,687 |
| 11/20/2009 | 12/20/2009 | Alternate Living Expenses | Rance Masheck | Lease Payments - November | 5,200 | 2,612 |
| | | **Alternate Living Expenses Total** | | | $ 29,167 | $ 15,131 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Family Room Sofas | $ 367 | $ 291 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Sofas - Family Room | 6,700 | 5,301 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Pillows - Family Room | 518 | 410 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Family Room Sofa Pillows | 357 | 282 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Pillows - Family Room Sofas | 546 | 432 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Family Room Sofa Pillows | 97 | 77 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Family Room Sofas | 62 | 49 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Upholster - Family Room Arm Chairs | 2,523 | 1,996 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Pillows - Family Room Arm Chair Pillows | 273 | 216 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Family Room Arm Chair Pillows | 196 | 155 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Coffee Tables - Family Room | 1,384 | 1,095 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Bar Stools - Family Room Kitchen Counter | 1,587 | 1,256 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Rug - Family Room | 4,525 | 3,580 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Dining Table - Breakfast Nook | 2,019 | 1,597 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Arm Chairs - Breakfast Nook | 1,674 | 1,324 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Pillow Pads - Breakfast Room Chairs | 820 | 648 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Vanity Chest - Powder Room | 1,104 | 874 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Rug - Guest Bedroom 1 | 1,462 | 1,157 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Writing Desk - Guest Room | 359 | 284 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Refinish - Guest Bedroom Chair | 129 | 102 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Bedside Lamp - Master Bedroom | 285 | 225 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Pillows - Master Bedroom | 259 | 205 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Master Bedroom Pillows | 417 | 330 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Vanity Jars - Throughout Home | 173 | 137 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Computer Desk - Loft Area | 992 | 785 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Chair - Sam's Bedroom | 835 | 660 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Buffet - Playroom | 1,478 | 1,169 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Artwork - Playroom | 285 | 225 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Bean Bag Chair - Playroom | 183 | 145 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Bean Bag Ottoman - Playroom | 71 | 56 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Loveseat - Master Bedroom | 1,856 | 1,469 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Master Bedroom Loveseat | 367 | 290 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Arm Chair - Master Bedroom | 719 | 569 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Master Bedroom Arm Chair | 585 | 463 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Sofa - Playroom | 3,411 | 2,699 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Sofa - Living Room | 2,431 | 1,924 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Living Room Sofa | 879 | 695 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Pillows - Living Room Sofa | 293 | 232 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Lounge Chairs - Living Room | 6,099 | 4,826 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Living Room Lounge Chairs | 2,254 | 1,784 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Table - Living Room | 759 | 600 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Arm Chairs - Living Room | 3,166 | 2,505 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Tables - Living Room | 3,867 | 3,060 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Coffee Table Ottoman - Living Room | 2,653 | 2,099 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Coffee Table Ottoman | 179 | 142 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Chest - Foyer | 2,130 | 1,685 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Candle Holders - Throughout | 203 | 161 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Bed - Guest Bedroom 1 | 1,305 | 1,033 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Guest Bedroom 1 Bedding | 391 | 309 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Sofa - Office | 1,877 | 1,485 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Office Sofa | 1,149 | 909 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Office Sofa Pillows | 863 | 683 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Bed (Upholstered) - Master Bedroom | 2,610 | 2,065 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Master Bedroom Bed (Upholstered) | 1,686 | 1,334 |

Exhibit 17.3
Calculation of Prejudgment Interest Summary - Michael & Robyn Rosen

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Vendor | Description | Amount | Total Interest Through 7/22/2019 |
|---|---|---|---|---|---|---|
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Pillows - Master Bedroom | 345 | 273 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Master Bedroom Pillows | 446 | 353 |
| 12/31/2006 | 1/30/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Armoire - Master Bedroom | 5,112 | 4,045 |
| 1/22/2007 | 2/21/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Placemats - Breakfast Nook | 362 | 284 |
| 6/26/2007 | 7/26/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Entertainment Cabinet - Sam's Bedroom | 1,470 | 1,084 |
| 6/26/2007 | 7/26/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Bed - Sam's Bedroom | 2,012 | 1,485 |
| 6/26/2007 | 7/26/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Chest - Sam's Bedroom | 1,453 | 1,072 |
| 7/20/2007 | 8/19/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Chaise - Master Bedroom | 1,375 | 1,005 |
| 7/20/2007 | 8/19/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Chaise - Master Bedroom | 1,375 | 1,005 |
| 7/20/2007 | 8/19/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Master Bedroom Chaises | 2,070 | 1,513 |
| 8/2/2007 | 9/1/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Reupholstery - Family Room Chairs | 850 | 618 |
| 8/2/2007 | 9/1/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Family Room Chairs | 943 | 685 |
| 8/2/2007 | 9/1/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Family Room Chair Pillows | 273 | 199 |
| 9/28/2007 | 10/28/2007 | Personal Property Damage Expense | Turkell & Gervis Design | Garden Stool - Patio | 147 | 104 |
| 1/15/2008 | 2/14/2008 | Personal Property Damage Expense | Turkell & Gervis Design | Chairs - Loft Area | 537 | 363 |
| 1/15/2008 | 2/14/2008 | Personal Property Damage Expense | Turkell & Gervis Design | Table - Loft Area | 394 | 267 |
| 1/15/2008 | 2/14/2008 | Personal Property Damage Expense | Turkell & Gervis Design | Stools - Loft Area | 1,227 | 830 |
| 1/15/2008 | 2/14/2008 | Personal Property Damage Expense | Turkell & Gervis Design | Chair - Loft Area | 676 | 457 |
| 1/15/2008 | 2/14/2008 | Personal Property Damage Expense | Turkell & Gervis Design | Slipcover - Loft Area Chair | 326 | 221 |
| 1/17/2008 | 2/16/2008 | Personal Property Damage Expense | Turkell & Gervis Design | Bedding - Sam's Bedroom | 1,006 | 680 |
| 1/17/2008 | 2/16/2008 | Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Sam's Bedding | 506 | 342 |
| 1/17/2008 | 2/16/2008 | Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Sam's Bed Pillows | 121 | 82 |
| 6/19/2009 | 7/19/2009 | Personal Property Damage Expense | Tech Air of Westgate | A/C Maintenance and Repair | 435 | 233 |
| 12/31/2009 | 1/30/2010 | Personal Property Damage Expense | Posh French Cleaners | Dry Cleaning | 739 | 366 |
| 2/16/2010 | 3/18/2010 | Personal Property Damage Expense | Gervis Design | Repair/Replace | 199 | 97 |
| 2/18/2010 | 3/20/2010 | Personal Property Damage Expense | Best Buy | TV Replacement 1 | 1,908 | 929 |
| 2/18/2010 | 3/20/2010 | Personal Property Damage Expense | Best Buy | TV Replacement 2 | 1,899 | 925 |
| | | Personal Property Damage Expense Total | | | $ 101,618 | $ 77,600 |

Exhibit 17.3A
Calculation of Prejudgment Interest Detail - Michael & Robyn Rosen

Chinese Drywall Litigation Involving Priority Claimants

| Damage Date | Measurement Date | Damage Component | Amount | 12/31/2007 | 12/31/2008 | 12/31/2009 | 12/31/2010 | 9/30/2011 | 12/31/2011 | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 3/31/2016 | 6/30/2016 | 9/30/2016 | 12/31/2016 | 3/31/2017 | 6/30/2017 | 9/30/2017 | 12/31/2017 | 3/31/2018 | 6/30/2018 | 9/30/2018 | 12/31/2018 | 7/22/2019 | Total Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7/23/2009 | 8/22/2009 | Alternate Living Expenses | $ 2,929 | $ – | $ – | $ – | 84 | 176 | 131 | 35 | 139 | 139 | 139 | 35 | 35 | 36 | 36 | 36 | 37 | 38 | 39 | 40 | 42 | 44 | 45 | 103 | $ 1,548 |
| 8/1/2009 | 8/31/2009 | Alternate Living Expenses | 5,200 | | | 139 | 312 | 233 | 62 | 247 | 247 | 247 | 61 | 62 | 63 | 64 | 64 | 65 | 68 | 70 | 71 | 74 | 78 | 80 | 183 | 2,739 |
| 8/7/2009 | 9/6/2009 | Alternate Living Expenses | 441 | | | 11 | 26 | 20 | 5 | 21 | 21 | 21 | 5 | 5 | 5 | 5 | 5 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 16 | 232 |
| 8/12/2009 | 9/11/2009 | Alternate Living Expenses | 148 | | | 4 | 9 | 7 | 2 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 78 |
| 8/12/2009 | 9/11/2009 | Alternate Living Expenses | 1,425 | | | 35 | 86 | 64 | 17 | 68 | 68 | 68 | 17 | 17 | 17 | 18 | 17 | 18 | 19 | 19 | 19 | 20 | 21 | 22 | 50 | 747 |
| 8/13/2009 | 9/12/2009 | Alternate Living Expenses | 3,416 | | | 82 | 205 | 153 | 41 | 162 | 162 | 162 | 40 | 41 | 42 | 42 | 42 | 43 | 45 | 46 | 47 | 49 | 51 | 52 | 120 | 1,790 |
| 8/15/2009 | 9/14/2009 | Alternate Living Expenses | 8 | | | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 4 |
| 9/9/2009 | 10/9/2009 | Alternate Living Expenses | 5,200 | | | 95 | 312 | 233 | 62 | 247 | 247 | 247 | 61 | 62 | 63 | 64 | 64 | 65 | 68 | 70 | 71 | 74 | 78 | 80 | 183 | 2,694 |
| 9/15/2009 | 10/15/2009 | Alternate Living Expenses | 5,200 | | | 88 | 312 | 233 | 62 | 247 | 247 | 247 | 61 | 62 | 63 | 64 | 64 | 65 | 68 | 70 | 71 | 74 | 78 | 80 | 183 | 2,687 |
| 11/20/2009 | 12/20/2009 | Alternate Living Expenses | 5,200 | | | 13 | 312 | 233 | 62 | 247 | 247 | 247 | 61 | 62 | 63 | 64 | 64 | 65 | 68 | 70 | 71 | 74 | 78 | 80 | 183 | 2,612 |
| | | **Total Alternate Living Expenses** | $ 29,167 | $ – | $ – | $ 550 | $ 1,750 | $ 1,309 | $ 349 | $ 1,385 | $ 1,385 | $ 1,385 | $ 344 | $ 347 | $ 355 | $ 360 | $ 357 | $ 367 | $ 380 | $ 393 | $ 398 | $ 414 | $ 439 | $ 448 | $ 1,027 | $ 15,131 |

Case 1:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 255 of 802
Case 1:11-cv-22408-MGC Document 272 Entered on FLSD Docket 09/15/2015 Page 234 of
262

17.A
Documents and Other Information Considered - Michael & Robyn Rosen

*Chinese Drywall Litigation Involving Priority Claimants*

| | | | Bate Stamp *(if applicable)* | |
|---|---|---|---|---|
| No. | Claimant | General Description | First Page | Last Page |

**A. Pleadings and Other Legal Documents:**

| | | | | |
|---|---|---|---|---|
| 1 | All | Judge Cooke's Order, dated November 16, 2018 | | |
| 2 | Rosen-MR | Claimant Michael & Robyn Rosen Answers to Interrogatories - Amended | | |
| 3 | Rosen-MR | Claimant Michael & Robyn Rosen Answers to Defendant's Second Set of Interrogatories, dated December 4, 2018 | | |
| 4 | Rosen-MR | Claimant Michael & Robyn Rosen Supplemental Plaintiff Profile Form | | |

**B. Depositions & Corresponding Exhibits:**

| | | | | |
|---|---|---|---|---|
| 1 | Rosen-MR | Deposition Transcript of Michael Rosen, dated January 9, 2019 | | |
| 2 | Rosen-MR | Deposition Transcript of Robyn Rosen, dated January 9, 2019 | | |
| 3 | Rosen-MR | Deposition Exhibit 01 - Special Warranty Deed Book 21066/Page 1743, Palm Beach County Property Appraiser Record, and Warranty Deed Book 23588/Page 101 through 102 | | |
| 4 | Rosen-MR | Deposition Exhibit 02 - US Department of Housing & Urban Development Settlement Statement dated 11/6/2006 | MROSEN - 000001 | MROSEN - 000032 |
| 5 | Rosen-MR | Deposition Exhibit 03 - Chase Detailed Transaction History dated 9/5/2013 | MROSEN - 000041 | MROSEN - 000046 |
| 6 | Rosen-MR | Deposition Exhibit 04 - Palm Beach County Property Appraiser Public Records | | |
| 7 | Rosen-MR | Deposition Exhibit 05 - Plaintiff Profile Form - Residential Properties | ROSEN M 000001 | ROSEN M 000010 |
| 8 | Rosen-MR | Deposition Exhibit 06 - Supplemental Plaintiff Profile Form | | |
| 9 | Rosen-MR | Deposition Exhibit 07 - Chinese Drywall Settlement Program Foreclosure or Short Sale Affidavit | | |
| 10 | Rosen-MR | Deposition Exhibit 08 - Michael Rosen Photos of Inspection 08/30/09 and Inspection Report 08/30/2009 | ROSEN,M 0001 | ROSEN,M 0079 |
| 11 | Rosen-MR | Deposition Exhibit 09 - Collection of Evidence Michael Rosen 12/03/2009 | MROSEN - 000235 | MROSEN - 000235 |
| 12 | Rosen-MR | Deposition Exhibit 10 - Claimants Michael and Robyn Rosen's Answers to Defendants Interrogatories | | |
| 13 | Rosen-MR | Deposition Exhibit 11 - Michael and Robin [sic] Rosen's Chinese Drywall Damages Chart | | |
| 14 | Rosen-MR | Deposition Exhibit 12 - Receipts and Invoices | ROSEN, M (OLF) - 000050 | ROSEN, M (OLF) - 000191 |
| 15 | Rosen-MR | Deposition Exhibit 13 - Copies of checks | ROSEN, M (OLF) - 000035 | ROSEN, M (OLF) - 000040 |
| 16 | Rosen-MR | Deposition Exhibit 14 - Residential Sale and Purchase Contract | MROSEN - 000192 | MROSEN - 000202 |
| 17 | Rosen-MR | Deposition Exhibit 15 - Mutual Release dated 12/4/2009 | MROSEN - 000213 | MROSEN - 000221 |

**C. Supporting Documentation**

| | | | | |
|---|---|---|---|---|
| 1 | Rosen-MR | Rosen Damages Summary Provided by Counsel | | |
| 2 | Rosen-MR | MROSEN - 000035-000040) - Lease Payments | MROSEN - 000035 | MROSEN - 000040 |
| 3 | Rosen-MR | MROSEN - 000050-000191) - Upgrades Expenses | MROSEN - 000050 | MROSEN - 000191 |
| 4 | Rosen-MR | MROSEN - 000192-000202) - Rosen Contract | MROSEN - 000192 | MROSEN - 000202 |
| 5 | Rosen-MR | MROSEN - 000203-000208) - Loan Payments | MROSEN - 000203 | MROSEN - 000208 |
| 6 | Rosen-MR | 2922231 - Rosen MR - 2006 Purchase (Better Copy) | | |
| 7 | Rosen-MR | 2922333 - Rosen MR - Rosen HUD | | |
| 8 | Rosen-MR | ROSEN, M (OLF) - 000047 - 000049) - Sale of House in 2009 | ROSEN, M (OLF) - 000047 | ROSEN, M (OLF) - 000049 |

**D. Research and Other Sources:**

| | | | | |
|---|---|---|---|---|
| 1 | Rosen-MR | Rosen $600,000 Mortgage - KR Doc (from Public Records) | | |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-22408-Civ-COOKE

EDUARDO AND CARMEN AMORIN, *et al.*,
individually and on behalf of others similarly
situated,

       Plaintiffs,

vs.

TAISHAN GYPSUM CO., LTD., f/k/a
SHANDONG TIASHE DONGXIN CO. LTD.,
*et al.*,

       Defendants.

_____

# Exhibit 18

**Calculations of Damages for Priority Claimants**

# Kevin & Stacey Rosen

EXHIBIT TO THE EXPERT WITNESS REPORT OF:
MICHAEL P. ELKIN, CPA/CFF/ABV, CFE
IN THE PRIORITY CLAIMANT TRIAL

February 19, 2019



Exhibit 18
Data and Damage Summary - Kevin & Stacey Rosen

*Chinese Drywall Litigation Involving Priority Claimants*

| Data: | | *Reference / Notes* |
|---|---|---|
| Address of Affected property | 17830 Monte Vista Drive | *SPPF* |
| | Boca Raton, FL 33496 | *SPPF* |
| Date Affected property acquired | August 7, 2006 | *SPPF* |
| Date Chinese drywall installed | Unknown | *SPPF* |
| Date moved into Affected property | August 7, 2006 | *SPPF* |
| Date first aware of Chinese drywall | September-09 | *SPPF* |
| | | |
| Move out date to alternate living | July 27, 2009 | *ROG 1, #2* |
| Date returned to Affected property | Never | *ROG 1, #2* |
| End date for alternate living expenses | December 23, 2009 | *ROG 1, #2* |
| | | |
| Still own property? | N | *SPPF* |
| Bankruptcy caused by damage? | N | *SPPF* |
| Foreclosure or short sale? | N | *SPPF* |
| Affected property sold? | Y | *SPPF* |
| Sale date | December 23, 2009 | *SPPF* |
| Type of sale | Sale in Mitigation | *ROG 1, #2* |
| | | |
| Remediation status | None | *SPPF* |
| Remediation period | N/A | *SPPF* |

| Damage Summary: | | |
|---|---|---|
| Full or Partial Out-of-Pocket Remediation Expenses | $          - | |
| | | |
| Other Damages | | |
| Alternate Living Expenses | $          31,786 | *Exh. 18.1* |
| Personal Property Damage Expense | 22,482 | *Exh. 18.1* |
| Additional Damages | 97 | *Exh. 18.1* |
| | $          54,364 | |
| | | |
| Lost Equity | $          782,563 | *Exh. 18.2* |
| | | |
| Diminution in Value | TBD | |
| | | |
| Loss of Use and Enjoyment | TBD | |
| | | |
| Punitive Damages | TBD | |

Exhibit 18.1
Damage Claims Detail - Kevin & Stacey Rosen

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|------|--------|-------------|--------|------|--------------|----------------|-------|------------------|--------------|
| Alternate Living Expenses | Target | Relocation Baby Clothes | $ 115 | 7/27/2009 | | Claimant | KROSEN - 000222 | Exhibit 10 | 78 |
| Alternate Living Expenses | Publix | Relocation Laundry Hampers | 41 | 7/28/2009 | | Claimant | N/A | Exhibit 10 | |
| Alternate Living Expenses | HOA Application | Townhouse | 200 | 7/28/2009 | | Check | KROSEN - 000314 | Exhibit 10 | 170 |
| Alternate Living Expenses | Baby Love | Infant Mattress | 170 | 7/29/2009 | | Receipt & Invoice | KROSEN - 000324 to 000327 | Exhibit 10 | 180 - 183 |
| Alternate Living Expenses | City Mattress | Adult and Child Bedding | 1,215 | 7/29/2009 | | Receipt & Invoice | KROSEN - 000322 to 000323 | Exhibit 10 | 178 - 179 |
| Alternate Living Expenses | Edward & Jacqueline Diyanni | August 2009 Rent | 3,300 | 7/30/2009 | | Check | KROSEN - 000317 | Exhibit 10 | 173 |
| Alternate Living Expenses | FPU | Deposit & Transfer | 68 | 7/30/2009 | | Claimant | N/A | Exhibit 10 | |
| Alternate Living Expenses | AT&T | Phone Service Townhouse | 68 | 7/30/2009 | | BOA Transaction Detail | KROSEN - 000345 | Exhibit 10 | 201 |
| Alternate Living Expenses | Fed Ex | Rent and Security to Landlord | 13 | 7/31/2009 | | Receipt | KROSEN - 000315 to 000316 | Exhibit 10 | 171 - 172 |
| Alternate Living Expenses | Home Depot | Townhouse Toilet Parts | 36 | 7/31/2009 | | Claimant | N/A | Exhibit 10 | |
| Alternate Living Expenses | Walmart | Cleaning Supplies | 19 | 8/1/2009 | | Claimant | N/A | Exhibit 10 | |
| Alternate Living Expenses | Gas | Cargo Van | 48 | 8/1/2009 | | Claimant | KROSEN - 000215 | Exhibit 10 | 71 |
| Alternate Living Expenses | City Mattress | Box Springs and Frame | 320 | 8/1/2009 | | Receipt | KROSEN - 000312 to 000313 | Exhibit 10 | 168 - 169 |
| Alternate Living Expenses | Two Men & Truck | Moving Company | 1,129 | 8/1/2009 | | Claimant | KROSEN - 000270 to 000273 | Exhibit 10 | 126 - 129, 185 - 188 |
| Alternate Living Expenses | Home Depot | Townhouse Water Filter | 43 | 8/4/2009 | | Claimant | KROSEN - 000220 | Exhibit 10 | 76 |
| Alternate Living Expenses | Homedepot | Air Filters Townhouse | 44 | 8/6/2009 | | Receipt | KROSEN - 000269 | Exhibit 10 | 125 |
| Alternate Living Expenses | Target | Cleaning Supplies | 44 | 8/6/2009 | | Receipt | KROSEN - 000262 | Exhibit 10 | 118 |
| Alternate Living Expenses | Thanks a Lock Locksmith | Townhouse | 11 | 8/8/2009 | | Receipt | KROSEN - 000265 | Exhibit 10 | 121 |
| Alternate Living Expenses | U Gas | Cargo Van | 15 | 8/9/2009 | | Receipt | KROSEN - 000261 | Exhibit 10 | 117 |
| Alternate Living Expenses | Other Perils Insurance | Townhouse Home Insurance | 1,128 | 8/10/2009 | | Invoice & Check | KROSEN - 000373 to 000374 | Exhibit 10 | 229 - 230 |
| Alternate Living Expenses | Flood Insurance Policy | Townhouse | 189 | 8/11/2009 | | Application & Check | KROSEN - 000307; 000308; 000 | Exhibit 10 | 163 - 164 |
| Alternate Living Expenses | Windstorm Insurance | Townhouse | 598 | 8/11/2009 | | Application & Check | KROSEN - 000309 to 000311 | Exhibit 10 | 165 - 167 |
| Alternate Living Expenses | Thompson Pest Control | Townhouse | 45 | 8/21/2009 | | Invoice & Check | KROSEN - 000306 | Exhibit 10 | 162 |
| Alternate Living Expenses | FPL | Townhouse Electricity | 52 | 8/21/2009 | | Invoice & Check | KROSEN - 000304 to 000305 | Exhibit 10 | 160 - 161 |
| Alternate Living Expenses | Comcast | Townhouse Cable & Internet | 117 | 8/21/2009 | | Invoice & Check | KROSEN - 000300 to 000301 | Exhibit 10 | 156 - 157 |
| Alternate Living Expenses | City of Boca Raton Water | Townhouse | 250 | 8/21/2009 | | Invoice & Check | KROSEN - 000302 to 000303 | Exhibit 10 | 158 - 159 |
| Alternate Living Expenses | Edward & Jacqueline Diyanni | September 2009 Rent (Less Offsets) | 2,836 | 8/21/2009 | | Check | KROSEN - 000296 | Exhibit 10 | 152 |
| Alternate Living Expenses | Home Fitness | Relocated Eliptical | 125 | 8/25/2009 | | Receipt | KROSEN - 000283 | Exhibit 10 | 139 |
| Alternate Living Expenses | FPU | Natural Gas Townhouse | 11 | 8/31/2009 | | Invoice & Check | KROSEN - 000292 to 000293 | Exhibit 10 | 148 - 149 |
| Alternate Living Expenses | Comcast | Townhouse Cable & Internet | 126 | 8/31/2009 | | Invoice & Check | KROSEN - 000289 to 000291 | Exhibit 10 | 145 - 147 |
| Alternate Living Expenses | Homedepot - Padlock Storage | Storage | 12 | 9/4/2009 | | Receipt | KROSEN - 000266 | Exhibit 10 | 122 |
| Alternate Living Expenses | Mission Bay-Truck Rental | Moving | 75 | 9/4/2009 | | Receipt | KROSEN - 000274 | Exhibit 10 | 130 |
| Alternate Living Expenses | Mission Bay - Storage Rental | Storage | 466 | 9/4/2009 | | Receipt | KROSEN - 000276 | Exhibit 10 | 132 |
| Alternate Living Expenses | Mission Bay - Storage Rental | Storage | 2,252 | 9/4/2009 | | Receipt | KROSEN - 000275 | Exhibit 10 | 131 |
| Alternate Living Expenses | Two Men & Truck | Moving | 578 | 9/5/2009 | | Claimant | N/A | Exhibit 10 | |
| Alternate Living Expenses | Thompson Pest Control | Townhouse | 27 | 9/9/2009 | | Invoice & Check | KROSEN - 000286 | Exhibit 10 | 142 |
| Alternate Living Expenses | AT&T | Townhouse | 114 | 9/9/2009 | | Invoice & Check | KROSEN - 000287 to 000288 | Exhibit 10 | 143 - 144 |
| Alternate Living Expenses | FPL | Townhouse Electricity | 221 | 9/9/2009 | | Invoice & Check | KROSEN - 000295 to 000296 | Exhibit 10 | 150 - 151 |
| Alternate Living Expenses | Comcast | Townhouse Cable & Internet | 93 | 9/10/2009 | | Invoice | KROSEN - 000285 | Exhibit 10 | 141 |
| Alternate Living Expenses | Homedepot - Padlock Storage | Storage | 12 | 9/19/2009 | | Receipt | KROSEN - 000268 | Exhibit 10 | 124 |
| Alternate Living Expenses | Store-All Rental | Storage | 20 | 9/19/2009 | | Receipt | KROSEN - 000279 | Exhibit 10 | 135 |
| Alternate Living Expenses | Parker Crystals - Chandelier & Sconces | Boxing and Packing Materials | 1,940 | 9/19/2009 | | Invoice | KROSEN - 000277 | Exhibit 10 | 133 |
| Alternate Living Expenses | Plumbing Repair | Townhouse | 120 | 9/22/2009 | | Check | KROSEN - 000280 | Exhibit 10 | 136 |
| Alternate Living Expenses | Comcast | Townhouse Cable & Internet | 93 | 9/26/2009 | | Invoice & Check | KROSEN - 000351 to 000352 | Exhibit 10 | 207 - 208 |
| Alternate Living Expenses | Two Men & Truck | Chandelier Move | 200 | 9/26/2009 | | Claimant | N/A | Exhibit 10 | |
| Alternate Living Expenses | Edward & Jacqueline DiYana | October 2009 Rent | 3,300 | 9/26/2009 | | Check | KROSEN - 000282 | Exhibit 10 | 138 |
| Alternate Living Expenses | Thompson Pest Control | Townhouse | 27 | 10/2/2009 | | Invoice & Check | KROSEN - 000379 | Exhibit 10 | 235 |
| Alternate Living Expenses | FPU | Natural Gas Townhouse | 28 | 10/18/2009 | | Invoice & Check | KROSEN - 000348 to 000349 | Exhibit 10 | 204 - 205 |
| Alternate Living Expenses | AT&T | Townhouse | 61 | 10/18/2009 | | Invoice | KROSEN - 000359 | Exhibit 10 | 215 |
| Alternate Living Expenses | FPL | Townhouse Electricity | 219 | 10/18/2009 | | Invoice & BOA transaction detail | KROSEN - 000365 to 000366 | Exhibit 10 | 221 - 222 |

Exhibit 18.1
Damage Claims Detail - Kevin & Stacey Rosen

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Alternate Living Expenses | FPU | Natural Gas Townhouse | 28 | 10/26/2009 | | Invoice & Check | KROSEN - 000363 to 000364 | Exhibit 10 | 219 - 220 |
| Alternate Living Expenses | Comcast | Townhouse Cable & Internet | 114 | 10/26/2009 | | Invoice & Check | KROSEN - 000353 to 000354 | Exhibit 10 | 209 - 210 |
| Alternate Living Expenses | City of Boca Raton Water | Townhouse | 145 | 10/26/2009 | | Invoice & Check | KROSEN - 000357 to 000358 | Exhibit 10 | 213 - 214 |
| Alternate Living Expenses | Boca Raton Stor-All | Storage | 234 | 10/26/2009 | | Invoice & Check | KROSEN - 000342 to 000343 | Exhibit 10 | 198 - 199 |
| Alternate Living Expenses | Edward & Jacqueline DiYana | November 2009 Rent | 3,300 | 10/26/2009 | | Check | KROSEN - 000381 | Exhibit 10 | 237 |
| Alternate Living Expenses | FPL | Townhouse Electricity | 197 | 11/9/2009 | | Invoice & Check | KROSEN - 000371 to 000372 | Exhibit 10 | 227 - 228 |
| Alternate Living Expenses | FPU | Natural Gas Townhouse | 30 | 11/23/2009 | | Invoice & Check | KROSEN - 000361 to 000362 | Exhibit 10 | 217 - 218 |
| Alternate Living Expenses | Boca Raton Stor-All | Storage | 234 | 11/23/2009 | | Invoice & Check | KROSEN - 000339 to 000340 | Exhibit 10 | 195 - 196 |
| Alternate Living Expenses | Edward & Jacqueline Diyanni | December 2009 Rent | 3,300 | 11/23/2009 | | Check | KROSEN - 000376 | Exhibit 10 | 232 |
| Alternate Living Expenses | Comcast | Townhouse Cable & Internet | 50 | 12/12/2009 | | Invoice & Check | KROSEN - 000355 to 000356 | Exhibit 10 | 211 - 212 |
| Alternate Living Expenses | FPL | Townhouse Electricity | 150 | 12/12/2009 | | Invoice & BOA transaction detail | KROSEN - 000367 to 000368 | Exhibit 10 | 223 - 224 |
| Alternate Living Expenses | Boynton Billiards | Moving Pool Table | 325 | 12/17/2009 | | Invoice & Check | KROSEN - 000377 to 000378 | Exhibit 10 | 233 - 234 |
| Alternate Living Expenses | City of Boca Raton Water | Townhouse | 118 | 12/31/2009 | | Invoice | KROSEN 000333 | Exhibit 10 | 189 |
| Alternate Living Expenses | Comcast | Townhouse Cable & Internet | 158 | 12/31/2009 | | Invoice | KROSEN - 000334 | Exhibit 10 | 190 |
| Alternate Living Expenses | Boca Raton Stor-All | Storage | 703 | 12/31/2009 | | Receipt & Check | KROSEN - 000346 to 000347 | Exhibit 10 | 202 - 203 |
| Alternate Living Expenses | Boca Raton Stor-All | Storage | 469 | 3/29/2010 | | Receipt | KROSEN - 000383 | Exhibit 10 | 239 |
| **Alternate Living Expenses Total** | | | **$ 31,786** | | | | | | |
| Personal Property Damage Expense | Mattress | Damaged and Discarded | $ 5,255 | 8/11/2006 | | Claimant | N/A | Exhibit 10 | |
| Personal Property Damage Expense | AZ Plumbing | Plumbing | 75 | 9/12/2008 | | Invoice | KROSEN - 000387 | Exhibit 10 | 243 |
| Personal Property Damage Expense | Central Vacuum Connection | Service Call | 70 | 10/23/2008 | | Invoice | KROSEN - 000386 | Exhibit 10 | 242 |
| Personal Property Damage Expense | First Class AC & Appliance | AC Repair | 79 | 12/4/2008 | | Invoice | KROSEN - 000298 & 000385 | Exhibit 10 | 154 & 241 |
| Personal Property Damage Expense | Florida Public Utilities | Installed left rear burner valve | 130 | 3/4/2009 | | Invoice | KROSEN - 000384 | Exhibit 10 | 240 |
| Personal Property Damage Expense | Sunstate A/C | A/C Repair | 550 | 4/13/2009 | | Invoice | KROSEN - 000388 | Exhibit 10 | 244 |
| Personal Property Damage Expense | Baby Mattress and Pillows | Damaged | 500 | 8/1/2009 | | Claimant | N/A | Exhibit 10 | |
| Personal Property Damage Expense | Silk House Trees and Plants | Damaged | 1,000 | 8/1/2009 | | Claimant | N/A | Exhibit 10 | |
| Personal Property Damage Expense | 8 Foot Rectangular Area Rug for Pool Table | Damaged | 1,000 | 8/1/2009 | | Claimant | N/A | Exhibit 10 | |
| Personal Property Damage Expense | FAO Schwartz Collectible & Other Stuffed Animals | Damaged | 2,500 | 8/1/2009 | | Claimant | N/A | Exhibit 10 | |
| Personal Property Damage Expense | Two 50" Samsung DLP Projection | TVs Damaged | 3,500 | 8/1/2009 | | Claimant | N/A | Exhibit 10 | |
| Personal Property Damage Expense | Italian Imported Custom Carved Wall Unit Abandoned | Movers Unable to Place In Storage | 5,000 | 8/1/2009 | | Claimant | N/A | Exhibit 10 | |
| Personal Property Damage Expense | Laundromat | Cleaning | 97 | 8/8/2009 | | Receipt | KROSEN - 000256 | Exhibit 10 | 112 |
| Personal Property Damage Expense | Posh French Cleaners | Dry Cleaning | 139 | 8/8/2009 | | Receipt | KROSEN - 000223 | Exhibit 10 | 79 |
| Personal Property Damage Expense | Laundromat | Cleaning | 20 | 8/12/2009 | | Receipt | KROSEN - 000258 | Exhibit 10 | 114 |
| Personal Property Damage Expense | Posh French Cleaners | Dry Cleaning | 1,167 | 8/15/2009 | | Receipt | KROSEN - 000149 | Exhibit 10 | 5 |
| Personal Property Damage Expense | Laundromat | Cleaning | 22 | 8/16/2009 | | Receipt | KROSEN - 000257 | Exhibit 10 | 113 |
| Personal Property Damage Expense | Laundromat | Cleaning | 91 | 8/16/2009 | | Receipt | KROSEN - 000259 | Exhibit 10 | 115 |
| Personal Property Damage Expense | Stain Away Rug Cleaning | Area Rugs | 338 | 8/17/2009 | | Check | KROSEN - 000344 | Exhibit 10 | 200 |
| Personal Property Damage Expense | Posh French Cleaners | Dry Cleaning | 545 | 8/21/2009 | | Receipt | KROSEN - 000192 | Exhibit 10 | 48 |
| Personal Property Damage Expense | Posh French Cleaners | Dry Cleaning | 56 | 8/29/2009 | | Receipt | KROSEN - 000251 | Exhibit 10 | 107 |
| Personal Property Damage Expense | Laundromat | Cleaning | 12 | 8/30/2009 | | Receipt | KROSEN - 000260 | Exhibit 10 | 116 |
| Personal Property Damage Expense | Posh French Cleaners | Dry Cleaning | 56 | 9/4/2009 | | Receipt | KROSEN - 000251 | Exhibit 10 | 110 |
| Personal Property Damage Expense | Posh French Cleaners | Dry Cleaning | 280 | 9/23/2009 | | Receipt | KROSEN - 000250 | Exhibit 10 | 106 |
| **Personal Property Damage Expense Total** | | | **$ 22,482** | | | | | | |
| Additional Damages | FedEx to Colson Hicks | Delivery Fees | $ 5 | 8/11/2009 | | Receipt | KROSEN - 000263 | Exhibit 10 | 119 |
| Additional Damages | FedEx to Colson Hicks | Delivery Fees | 91 | 8/11/2009 | | Receipt | KROSEN - 000264 | Exhibit 10 | 120 |
| **Additional Damages Total** | | | **$ 97** | | | | | | |

Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 260 of 802 of
Case 1:11-cv-22408-MGC Document 272 Entered on FLSD Docket 08/15/2013 Page 239 of
262

Exhibit 18.2
Lost Equity - Kevin & Stacey Rosen

*Chinese Drywall Litigation Involving Priority Claimants*

| | | | Source Document |
|---|---|---|---|
| Initial Acquisition | | | |
| Purchase Price | $ | 1,050,000 | HUD Statement dated 8/7/06 KROSEN - 000106 |
| Settlement Charges | | 70,854 | HUD Statement dated 8/7/06 KROSEN - 000106 |
| Total Gross Amount Due from Claimant | $ | 1,120,854 | |
| | | | |
| Less | | | |
| Deposit Made by Claimant | $ | (210,000) | HUD Statement dated 8/7/06 KROSEN - 000106 |
| Borrowings by Claimant | | (175,000) | HUD Statement dated 8/7/06 KROSEN - 000106 |
| Credits | | (37,500) | HUD Statement dated 8/7/06 KROSEN - 000106 |
| Amount Due from Claimant at Close | $ | 698,354 | |
| | | | |
| Funds Paid by Claimant | | | |
| Deposit Paid with Contract | $ | 210,000 | HUD Statement dated 8/7/06 KROSEN - 000106 |
| Closing Cash payments | | 698,354 | HUD Statement dated 8/7/06 KROSEN - 000106 |
| Total Payments for Initial Purchase | a | $ | 908,354 | |
| | | | |
| 1st Mortgage | | | |
| Mortgage at Acquisition Date | $ | 175,000 | HUD Statement dated 8/7/06 KROSEN - 000106 |
| Mortgage Balance at Refinancing | | 172,415 | Settlement Statement dated 4/10/08 KROSEN - 000121 |
| Principal Payments Made | b | $ | 2,585 | |
| | | | |
| Less: Funds received from Refinance | c | $ | (11,512) | Settlement Statement dated 4/10/08 KROSEN - 000121 |
| | | | |
| Refinance of Mortgage | | | |
| Mortgage Beginning Balance | $ | 200,000 | Settlement Statement dated 4/10/08 KROSEN - 000121 |
| Mortgage Balance at Payoff | | 174,949 | HUD Statement dated 12/23/09 KROSEN - 000002 |
| Principal Payments Made | d | $ | 25,051 | |
| | | | |
| Capital Improvements | e | $ | 142,129 | Exhibit 18.2A & KROSEN - 002237-2238, Exhibit 11 |
| | | | |
| Less: Cash Paid to Claimants upon Sale of Home | f | $ | (284,042) | HUD Statement dated 12/23/09 KROSEN - 000002 |
| | | | |
| Total Lost Equity | = a + b + c + d + e + f | $ | 782,563 | |

Exhibit 18.2A
Lost Equity - Kevin & Stacey Rosen

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Capital Improvements | Albanese Construction Upgrades | Work Order #1 - Impact Glass | $ 29,410 | 3/14/2005 | | Work Order/Check | KROSEN - 001775/001761 | N/A | 62/48 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #2 - Staircase | 19,283 | 3/14/2005 | | Work Order/Check | KROSEN - 001776/001761 | N/A | 63/48 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #3 - In Wall Pest Control | 659 | 3/14/2005 | | Work Order/Check | KROSEN - 001792/001761 | N/A | 79/48 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #4 - Gas Line for Barbeque | 553 | 3/14/2005 | | Work Order/Check | KROSEN - 001793/001762 | N/A | 80/49 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #5 - Dining Room Columns | 388 | 3/14/2005 | | Work Order/Check | KROSEN - 001794/001762 | N/A | 81/49 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #6 - Speaker System | 2,975 | 8/1/2005 | | Work Order/Check | KROSEN - 001755/001949 | N/A | 42/236 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #7 - DECLINED - Radio Back-Up Alarm System | - | N/A | | Work Order | KROSEN - 001754 | N/A | 41 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #8 - Structured Cabling | 999 | 6/16/2005 | | Work Order/Check | KROSEN - 001870/001872 | N/A | 157/159 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #9 - TV Outlet | 72 | 8/1/2005 | | Work Order/Check | KROSEN - 001909/001949 | N/A | 196/236 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #10 - Angled Archway Living Room | 584 | 3/14/2005 | | Work Order/Check | KROSEN - 001795/001762 | N/A | 82/49 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #11 - Plumbing Fixtures | 1,386 | 8/1/2005 | | Work Order/Check | KROSEN - 001949/001952 | N/A | 236/239 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #12 - Additional Pavers | 2,705 | 9/22/2005 | | Work Order/Check | KROSEN - 002177/002181 | N/A | 464/468 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #13 - Additional Fence | 1,692 | 9/22/2005 | | Work Order/Check | KROSEN - 002178/002181 | N/A | 465/468 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #14 - Upgrade Granite Kitchen/Powder | 3,794 | 8/1/2005 | | Work Order/Check | KROSEN - 001907/001949 | N/A | 194/236 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #15 - Electrical Revisions | 446 | 8/8/2005 | | Work Order | KROSEN - 001927 | N/A | 214 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #16 - Marble Flooring | 2,682 | 6/27/2005 | | Work Order/Check | KROSEN - 001839/001840 | N/A | 126/127 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #17 - Powder Room Mirror (Credit) | (210) | 8/15/2005 | | Work Order | KROSEN - 002062 | N/A | 349 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #18 - Master Shower Enclosure | 102 | 9/12/2005 | | Work Order/Check | KROSEN - 002199/002200 | N/A | 486/487 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #19 - Pool | 5,335 | 9/22/2005 | | Work Order/Check | KROSEN - 002179/002181 | N/A | 466/468 |
| Capital Improvements | Albanese Construction Upgrades | C.K. Security - Pre-Wire Camera Security | 671 | 9/24/2005 | | Work Order | KROSEN - 002173 | N/A | 460 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #20 - Pool Tile Upgrade | 432 | 10/9/2005 | | Work Order/Check | KROSEN - 002158/002159 | N/A | 445/446 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #21 - Cabinets | 9,949 | 11/14/2005 | | Work Order/Check | KROSEN - 002132/002137 | N/A | 419/424 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #22 - Appliances | 838 | 11/14/2005 | | Work Order/Check | KROSEN - 002134/002137 | N/A | 421/424 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #23 - Kitchen Counter Top | 255 | 11/14/2005 | | Work Order/Check | KROSEN - 002136/002137 | N/A | 423/424 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #24 - Kitchen Backsplash | 213 | 5/8/2006 | | Work Order/Check | KROSEN - 002005/002006 | N/A | 292/293 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #25 - Exterior Columns | 2,270 | 11/26/2005 | | Work Order/Check | KROSEN - 002125/002126 | N/A | 412/413 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #26 - Carpet (Credit) | (116) | 11/24/2005 | | Work Order | KROSEN - 002063 | N/A | 350 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #27 - Bath Shower to Tub | 1,629 | 1/3/2006 | | Work Order/Check | KROSEN - 002098/002099 | N/A | 385/386 |
| Capital Improvements | Albanese Construction Upgrades | C.K. Security - Pre-Wire Camera Security | 767 | 1/9/2006 | | N/A | KROSEN - (001714 - 002236) | N/A | |
| Capital Improvements | Albanese Construction Upgrades | Work Order #28 - Electrical / High Hats | 417 | 1/25/2006 | | Work Order/Check | KROSEN - 002079/002093 | N/A | 366/380 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #29 - Transom Window (Credit) | (605) | 2/27/2006 | | Work Order | KROSEN - 002061 | N/A | 348 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #30 - Stainless Steel Appliance | 1,605 | 2/27/2006 | | Work Order/Check | KROSEN - 002057/002060 | N/A | 344/347 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #31 - Wood Flooring | 4,502 | 5/7/2006 | | Work Order/Check | KROSEN - 002018/002023 | N/A | 305/310 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #32 - Bath #4 Counter Top | 1,116 | 6/9/2006 | | Work Order/Check | KROSEN - 001990/001993 | N/A | 277/280 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #33 - Re-Paint Ceilings | 4,734 | 6/9/2006 | | Work Order/Check | KROSEN - 001991/001993 | N/A | 278/280 |
| Capital Improvements | Albanese Construction Upgrades | Landscape | 13,300 | 6/19/2006 | | Work Order/Check | KROSEN - 001982 - 001985 | N/A | 269-272 |
| Capital Improvements | Personalized Power Systems | Full Home Generator - Deposit | 10,000 | 1/10/2008 | | Receipt | | Exhibit 11 | 6 |
| Capital Improvements | Personalized Power Systems | Full Home Generator - Delivery Fee | 15,800 | 2/18/2008 | | Receipt | | Exhibit 11 | 7 |
| Capital Improvements | Personalized Power Systems | Full Home Generator - At Startup | 1,000 | 3/10/2008 | | Receipt | | Exhibit 11 | 8 |
| Capital Improvements | Personalized Power Systems | Full Home Generator - Final Inspection | 500 | 3/19/2008 | | Receipt | | Exhibit 11 | 9 |
| Capital Improvements Total | | | $ 142,129 | | | | | | |

Exhibit 18.3

Calculation of Prejudgment Interest Summary - Kevin & Stacey Rosen

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Vendor | Description | Amount | Total Interest |
|---|---|---|---|---|---|---|
| 7/27/2009 | 8/26/2009 | Alternate Living Expenses | Target | Relocation Baby Clothes | $ 115 | $ 61 |
| 7/28/2009 | 8/27/2009 | Alternate Living Expenses | Publix | Relocation Laundry Hampers | 41 | 21 |
| 7/28/2009 | 8/27/2009 | Alternate Living Expenses | HOA Application | Townhouse | 200 | 106 |
| 7/29/2009 | 8/28/2009 | Alternate Living Expenses | Baby Love | Infant Mattress | 170 | 89 |
| 7/29/2009 | 8/28/2009 | Alternate Living Expenses | City Mattress | Adult and Child Bedding | 1,215 | 641 |
| 7/30/2009 | 8/29/2009 | Alternate Living Expenses | Edward & Jacqueline Diyanni | August 2009 Rent | 3,300 | 1,739 |
| 7/30/2009 | 8/29/2009 | Alternate Living Expenses | FPU | Deposit & Transfer | 68 | 36 |
| 7/30/2009 | 8/29/2009 | Alternate Living Expenses | AT&T | Phone Service Townhouse | 68 | 36 |
| 7/31/2009 | 8/30/2009 | Alternate Living Expenses | Fed Ex | Rent and Security to Landlord | 13 | 7 |
| 7/31/2009 | 8/30/2009 | Alternate Living Expenses | Home Depot | Townhouse Toilet Parts | 36 | 19 |
| 8/1/2009 | 8/31/2009 | Alternate Living Expenses | Walmart | Cleaning Supplies | 19 | 10 |
| 8/1/2009 | 8/31/2009 | Alternate Living Expenses | Gas | Cargo Van | 48 | 25 |
| 8/1/2009 | 8/31/2009 | Alternate Living Expenses | City Mattress | Box Springs and Frame | 320 | 168 |
| 8/1/2009 | 8/31/2009 | Alternate Living Expenses | Two Men & Truck | Moving Company | 1,129 | 594 |
| 8/4/2009 | 9/3/2009 | Alternate Living Expenses | Home Depot | Townhouse Water Filter | 43 | 22 |
| 8/6/2009 | 9/5/2009 | Alternate Living Expenses | Homedepot | Air Filters Townhouse | 44 | 23 |
| 8/6/2009 | 9/5/2009 | Alternate Living Expenses | Target | Cleaning Supplies | 44 | 23 |
| 8/8/2009 | 9/7/2009 | Alternate Living Expenses | Thanks a Lock Locksmith | Townhouse | 11 | 6 |
| 8/9/2009 | 9/8/2009 | Alternate Living Expenses | U Gas | Cargo Van | 15 | 8 |
| 8/10/2009 | 9/9/2009 | Alternate Living Expenses | Other Perils Insurance | Townhouse Home Insurance | 1,128 | 592 |
| 8/11/2009 | 9/10/2009 | Alternate Living Expenses | Flood Insurance Policy | Townhouse | 189 | 99 |
| 8/11/2009 | 9/10/2009 | Alternate Living Expenses | Windstorm Insurance | Townhouse | 598 | 314 |
| 8/21/2009 | 9/20/2009 | Alternate Living Expenses | Thompson Pest Control | Townhouse | 45 | 24 |
| 8/21/2009 | 9/20/2009 | Alternate Living Expenses | FPL | Townhouse Electricity | 52 | 27 |
| 8/21/2009 | 9/20/2009 | Alternate Living Expenses | Comcast | Townhouse Cable & Internet | 117 | 61 |
| 8/21/2009 | 9/20/2009 | Alternate Living Expenses | City of Boca Raton Water | Townhouse | 250 | 131 |
| 8/21/2009 | 9/20/2009 | Alternate Living Expenses | Edward & Jacqueline Diyanni | September 2009 Rent (Less Offsets) | 2,836 | 1,481 |
| 8/25/2009 | 9/24/2009 | Alternate Living Expenses | Home Fitness | Relocated Eliptical | 125 | 65 |
| 8/31/2009 | 9/30/2009 | Alternate Living Expenses | FPU | Natural Gas Townhouse | 11 | 6 |
| 8/31/2009 | 9/30/2009 | Alternate Living Expenses | Comcast | Townhouse Cable & Internet | 126 | 65 |
| 9/4/2009 | 10/4/2009 | Alternate Living Expenses | Homedepot - Padlock Storage | Storage | 12 | 6 |
| 9/4/2009 | 10/4/2009 | Alternate Living Expenses | Mission Bay-Truck Rental | Moving | 75 | 39 |
| 9/4/2009 | 10/4/2009 | Alternate Living Expenses | Mission Bay - Storage Rental | Storage | 466 | 242 |
| 9/4/2009 | 10/4/2009 | Alternate Living Expenses | Mission Bay - Storage Rental | Storage | 2,252 | 1,170 |
| 9/5/2009 | 10/5/2009 | Alternate Living Expenses | Two Men & Truck | Moving | 578 | 300 |
| 9/9/2009 | 10/9/2009 | Alternate Living Expenses | Thompson Pest Control | Townhouse | 27 | 14 |
| 9/9/2009 | 10/9/2009 | Alternate Living Expenses | AT&T | Townhouse | 114 | 59 |
| 9/9/2009 | 10/9/2009 | Alternate Living Expenses | FPL | Townhouse Electricity | 221 | 114 |
| 9/10/2009 | 10/10/2009 | Alternate Living Expenses | Comcast | Townhouse Cable & Internet | 93 | 48 |
| 9/19/2009 | 10/19/2009 | Alternate Living Expenses | Homedepot - Padlock Storage | Storage | 12 | 6 |
| 9/19/2009 | 10/19/2009 | Alternate Living Expenses | Store-All Rental | Storage | 20 | 10 |
| 9/19/2009 | 10/19/2009 | Alternate Living Expenses | Parker Crystals - Chandelier & Sconces | Boxing and Packing Materials | 1,940 | 1,001 |
| 9/22/2009 | 10/22/2009 | Alternate Living Expenses | Plumbing Repair | Townhouse | 120 | 62 |
| 9/26/2009 | 10/26/2009 | Alternate Living Expenses | Comcast | Townhouse Cable & Internet | 93 | 48 |
| 9/26/2009 | 10/26/2009 | Alternate Living Expenses | Two Men & Truck | Chandelier Move | 200 | 103 |
| 9/26/2009 | 10/26/2009 | Alternate Living Expenses | Edward & Jacqueline DiYana | October 2009 Rent | 3,300 | 1,697 |
| 10/2/2009 | 11/1/2009 | Alternate Living Expenses | Thompson Pest Control | Townhouse | 27 | 14 |
| 10/8/2009 | 11/7/2009 | Alternate Living Expenses | FPU | Natural Gas Townhouse | 28 | 14 |
| 10/18/2009 | 11/17/2009 | Alternate Living Expenses | AT&T | Townhouse | 61 | 31 |
| 10/18/2009 | 11/17/2009 | Alternate Living Expenses | FPL | Townhouse Electricity | 219 | 112 |
| 10/26/2009 | 11/25/2009 | Alternate Living Expenses | FPU | Natural Gas Townhouse | 28 | 14 |
| 10/26/2009 | 11/25/2009 | Alternate Living Expenses | Comcast | Townhouse Cable & Internet | 114 | 58 |
| 10/26/2009 | 11/25/2009 | Alternate Living Expenses | City of Boca Raton Water | Townhouse | 145 | 74 |
| 10/26/2009 | 11/25/2009 | Alternate Living Expenses | Boca Raton Stor-All | Storage | 234 | 119 |
| 10/26/2009 | 11/25/2009 | Alternate Living Expenses | Edward & Jacqueline DiYana | November 2009 Rent | 3,300 | 1,676 |
| 11/9/2009 | 12/9/2009 | Alternate Living Expenses | FPL | Townhouse Electricity | 197 | 99 |
| 11/23/2009 | 12/23/2009 | Alternate Living Expenses | FPU | Natural Gas Townhouse | 30 | 15 |
| 11/23/2009 | 12/23/2009 | Alternate Living Expenses | Boca Raton Stor-All | Storage | 234 | 118 |
| 11/23/2009 | 12/23/2009 | Alternate Living Expenses | Edward & Jacqueline Diyanni | December 2009 Rent | 3,300 | 1,656 |
| 12/12/2009 | 1/11/2010 | Alternate Living Expenses | Comcast | Townhouse Cable & Internet | 50 | 25 |
| 12/12/2009 | 1/11/2010 | Alternate Living Expenses | FPL | Townhouse Electricity | 150 | 75 |
| 12/17/2009 | 1/16/2010 | Alternate Living Expenses | Boynton Billiards | Moving Pool Table | 325 | 162 |
| 12/31/2009 | 1/30/2010 | Alternate Living Expenses | City of Boca Raton Water | Townhouse | 118 | 58 |
| 12/31/2009 | 1/30/2010 | Alternate Living Expenses | Comcast | Townhouse Cable & Internet | 158 | 78 |
| 12/31/2009 | 1/30/2010 | Alternate Living Expenses | Boca Raton Stor-All | Storage | 703 | 348 |
| 3/29/2010 | 4/28/2010 | Alternate Living Expenses | Boca Raton Stor-All | Storage | 469 | 225 |
| | | **Alternate Living Expenses Total** | | | $ 31,786 | $ 16,388 |
| 8/11/2006 | 9/10/2006 | Personal Property Damage Expense | Mattress | Damaged and Discarded | $ 5,255 | $ 4,350 |
| 9/12/2008 | 10/13/2008 | Personal Property Damage Expense | AZ Plumbing | Plumbing | 75 | 45 |
| 10/23/2008 | 11/24/2008 | Personal Property Damage Expense | Central Vacuum Connection | Service Call | 70 | 41 |
| 12/4/2008 | 1/6/2009 | Personal Property Damage Expense | First Class AC & Appliance | AC Repair | 79 | 46 |
| 3/4/2009 | 4/7/2009 | Personal Property Damage Expense | Florida Public Utilities | Installed left rear burner valve | 130 | 73 |
| 4/13/2009 | 5/18/2009 | Personal Property Damage Expense | Sunstate A/C | A/C Repair | 550 | 302 |

Exhibit 18.3
Calculation of Prejudgment Interest Summary - Kevin & Stacey Rosen

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Vendor | Description | Amount | Total Interest |
|---|---|---|---|---|---|---|
| 8/1/2009 | 9/6/2009 | Personal Property Damage Expense | Baby Mattress and Pillows | Damaged | 500 | 263 |
| 8/1/2009 | 9/7/2009 | Personal Property Damage Expense | Silk House Trees and Plants | Damaged | 1,000 | 525 |
| 8/1/2009 | 9/8/2009 | Personal Property Damage Expense | 8 Foot Rectangular Area Rug for Pool Table | Damaged | 1,000 | 525 |
| 8/1/2009 | 9/9/2009 | Personal Property Damage Expense | FAO Schwartz Collectible & Other Stuffed Animals | Damaged | 2,500 | 1,312 |
| 8/1/2009 | 9/10/2009 | Personal Property Damage Expense | Two 50" Samsung DLP Projection | TVs Damaged | 3,500 | 1,836 |
| 8/1/2009 | 9/11/2009 | Personal Property Damage Expense | Italian Imported Custom Carved Wall Unit Abandoned | Movers Unable to Place In Storage | 5,000 | 2,621 |
| 8/8/2009 | 9/19/2009 | Personal Property Damage Expense | Laundromat | Cleaning | 97 | 50 |
| 8/8/2009 | 9/20/2009 | Personal Property Damage Expense | Posh French Cleaners | Dry Cleaning | 139 | 73 |
| 8/12/2009 | 9/25/2009 | Personal Property Damage Expense | Laundromat | Cleaning | 20 | 10 |
| 8/15/2009 | 9/29/2009 | Personal Property Damage Expense | Posh French Cleaners | Dry Cleaning | 1,167 | 607 |
| 8/16/2009 | 10/1/2009 | Personal Property Damage Expense | Laundromat | Cleaning | 22 | 12 |
| 8/16/2009 | 10/2/2009 | Personal Property Damage Expense | Laundromat | Cleaning | 91 | 47 |
| 8/17/2009 | 10/4/2009 | Personal Property Damage Expense | Stain Away Rug Cleaning | Area Rugs | 338 | 175 |
| 8/21/2009 | 10/9/2009 | Personal Property Damage Expense | Posh French Cleaners | Dry Cleaning | 545 | 282 |
| 8/29/2009 | 10/18/2009 | Personal Property Damage Expense | Posh French Cleaners | Dry Cleaning | 56 | 29 |
| 8/30/2009 | 10/20/2009 | Personal Property Damage Expense | Laundromat | Cleaning | 12 | 6 |
| 9/4/2009 | 10/26/2009 | Personal Property Damage Expense | Posh French Cleaners | Dry Cleaning | 56 | 29 |
| 9/23/2009 | 11/15/2009 | Personal Property Damage Expense | Posh French Cleaners | Dry Cleaning | 280 | 143 |
| | | **Personal Property Damage Expense Total** | | | $ 22,482 | $ 13,403 |
| 8/11/2009 | 9/10/2009 | Additional Damages | FedEx to Colson Hicks | Delivery Fees | $ 5 | $ 3 |
| 8/11/2009 | 9/10/2009 | Additional Damages | FedEx to Colson Hicks | Delivery Fees | 91 | 48 |
| | | **Additional Damages Total** | | | $ 97 | $ 51 |

Exhibit 18.3A
Calculation of Prejudgment Interest Detail - Kevin & Stacey Rosen

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Amount | 12/31/2006 | 12/31/2007 | 12/31/2008 | 12/31/2009 | 12/31/2010 | 9/30/2011 | 12/31/2011 | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 3/31/2016 | 6/30/2016 | 9/30/2016 | 12/31/2016 | 3/31/2017 | 6/30/2017 | 9/30/2017 | 12/31/2017 | 3/31/2018 | 6/30/2018 | 9/30/2018 | 12/31/2018 | 7/22/2019 | Total Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7/27/2009 | 8/26/2009 | Alternate Living Expenses | $ 115 | $ - | $ - | $ - | $ 3 | $ 7 | $ 5 | $ 1 | $ 5 | $ 5 | $ 5 | $ 5 | $ 1 | $ 1 | $ 1 | $ 1 | $ 1 | $ 1 | $ 1 | $ 2 | $ 2 | $ 2 | $ 2 | $ 2 | $ 4 | $ 61 |
| 7/28/2009 | 8/27/2009 | Alternate Living Expenses | 41 | - | - | - | 1 | 2 | 2 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 1 | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 21 |
| 7/28/2009 | 8/27/2009 | Alternate Living Expenses | 200 | - | - | - | 6 | 12 | 9 | 2 | 9 | 10 | 10 | 10 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 106 |
| 7/29/2009 | 8/28/2009 | Alternate Living Expenses | 170 | - | - | - | 5 | 10 | 8 | 2 | 8 | 8 | 8 | 8 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 6 | 89 |
| 7/29/2009 | 8/28/2009 | Alternate Living Expenses | 1,215 | - | - | - | 33 | 73 | 55 | 15 | 58 | 58 | 58 | 58 | 14 | 14 | 15 | 15 | 15 | 15 | 16 | 16 | 17 | 17 | 18 | 19 | 43 | 641 |
| 7/30/2009 | 8/29/2009 | Alternate Living Expenses | 3,300 | - | - | - | 90 | 198 | 148 | 40 | 157 | 157 | 157 | 157 | 39 | 39 | 40 | 41 | 40 | 42 | 43 | 45 | 45 | 47 | 50 | 51 | 116 | 1,739 |
| 7/30/2009 | 8/29/2009 | Alternate Living Expenses | 68 | - | - | - | 2 | 4 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 36 |
| 7/30/2009 | 8/29/2009 | Alternate Living Expenses | 68 | - | - | - | 2 | 4 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 36 |
| 7/31/2009 | 8/30/2009 | Alternate Living Expenses | 13 | - | - | - | 0 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 7 |
| 7/31/2009 | 8/30/2009 | Alternate Living Expenses | 36 | - | - | - | 1 | 2 | 2 | 0 | 2 | 2 | 2 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 1 | 19 |
| 8/1/2009 | 8/31/2009 | Alternate Living Expenses | 19 | - | - | - | 1 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 10 |
| 8/1/2009 | 8/31/2009 | Alternate Living Expenses | 48 | - | - | - | 1 | 3 | 2 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 25 |
| 8/1/2009 | 8/31/2009 | Alternate Living Expenses | 320 | - | - | - | 9 | 19 | 14 | 4 | 15 | 15 | 15 | 15 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 5 | 11 | 168 |
| 8/1/2009 | 8/31/2009 | Alternate Living Expenses | 1,129 | - | - | - | 30 | 68 | 51 | 14 | 54 | 54 | 54 | 54 | 13 | 13 | 14 | 14 | 14 | 14 | 15 | 15 | 15 | 16 | 17 | 17 | 40 | 594 |
| 8/4/2009 | 9/3/2009 | Alternate Living Expenses | 43 | - | - | - | 1 | 3 | 2 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 22 |
| 8/6/2009 | 9/5/2009 | Alternate Living Expenses | 44 | - | - | - | 1 | 3 | 2 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 23 |
| 8/6/2009 | 9/5/2009 | Alternate Living Expenses | 44 | - | - | - | 1 | 3 | 2 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 23 |
| 8/8/2009 | 9/7/2009 | Alternate Living Expenses | 11 | - | - | - | 0 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 6 |
| 8/9/2009 | 9/8/2009 | Alternate Living Expenses | 15 | - | - | - | 0 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 8 |
| 8/10/2009 | 9/9/2009 | Alternate Living Expenses | 1,128 | - | - | - | 28 | 68 | 51 | 13 | 54 | 54 | 54 | 54 | 13 | 13 | 14 | 14 | 14 | 14 | 15 | 15 | 15 | 16 | 17 | 17 | 40 | 592 |
| 8/11/2009 | 9/10/2009 | Alternate Living Expenses | 189 | - | - | - | 5 | 11 | 8 | 2 | 9 | 9 | 9 | 9 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 7 | 99 |
| 8/11/2009 | 9/10/2009 | Alternate Living Expenses | 598 | - | - | - | 15 | 36 | 27 | 7 | 28 | 28 | 28 | 28 | 7 | 7 | 7 | 7 | 7 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 21 | 314 |
| 8/21/2009 | 9/20/2009 | Alternate Living Expenses | 45 | - | - | - | 1 | 3 | 2 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 24 |
| 8/21/2009 | 9/20/2009 | Alternate Living Expenses | 52 | - | - | - | 1 | 3 | 2 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 27 |
| 8/21/2009 | 9/20/2009 | Alternate Living Expenses | 117 | - | - | - | 3 | 7 | 5 | 1 | 6 | 6 | 6 | 6 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 2 | 4 | 61 |
| 8/21/2009 | 9/20/2009 | Alternate Living Expenses | 250 | - | - | - | 6 | 15 | 11 | 3 | 12 | 12 | 12 | 12 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 9 | 131 |
| 8/21/2009 | 9/20/2009 | Alternate Living Expenses | 2,836 | - | - | - | 63 | 170 | 127 | 34 | 135 | 135 | 135 | 135 | 33 | 34 | 35 | 35 | 35 | 36 | 37 | 38 | 39 | 40 | 43 | 44 | 100 | 1,481 |
| 8/25/2009 | 9/24/2009 | Alternate Living Expenses | 125 | - | - | - | 3 | 8 | 6 | 1 | 6 | 6 | 6 | 6 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 4 | 65 |
| 8/31/2009 | 9/30/2009 | Alternate Living Expenses | 11 | - | - | - | 0 | 1 | 0 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 6 |
| 8/31/2009 | 9/30/2009 | Alternate Living Expenses | 126 | - | - | - | 3 | 8 | 6 | 2 | 6 | 6 | 6 | 6 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 4 | 65 |
| 9/4/2009 | 10/4/2009 | Alternate Living Expenses | 12 | - | - | - | 0 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 6 |
| 9/4/2009 | 10/4/2009 | Alternate Living Expenses | 75 | - | - | - | 1 | 4 | 3 | 1 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 39 |
| 9/4/2009 | 10/4/2009 | Alternate Living Expenses | 466 | - | - | - | 9 | 28 | 21 | 6 | 22 | 22 | 22 | 22 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 16 | 242 |
| 9/4/2009 | 10/4/2009 | Alternate Living Expenses | 2,252 | - | - | - | 43 | 135 | 101 | 27 | 107 | 107 | 107 | 107 | 27 | 27 | 27 | 28 | 28 | 28 | 29 | 30 | 31 | 32 | 34 | 35 | 79 | 1,170 |
| 9/5/2009 | 10/5/2009 | Alternate Living Expenses | 578 | - | - | - | 11 | 35 | 26 | 7 | 27 | 27 | 27 | 27 | 7 | 7 | 7 | 7 | 7 | 7 | 8 | 8 | 8 | 8 | 9 | 9 | 20 | 300 |
| 9/9/2009 | 10/9/2009 | Alternate Living Expenses | 27 | - | - | - | 0 | 2 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 14 |
| 9/9/2009 | 10/9/2009 | Alternate Living Expenses | 114 | - | - | - | 2 | 7 | 5 | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 4 | 59 |
| 9/9/2009 | 10/9/2009 | Alternate Living Expenses | 221 | - | - | - | 4 | 13 | 10 | 3 | 10 | 10 | 10 | 10 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 8 | 114 |
| 9/10/2009 | 10/10/2009 | Alternate Living Expenses | 93 | - | - | - | 2 | 6 | 4 | 1 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 48 |
| 9/19/2009 | 10/19/2009 | Alternate Living Expenses | 12 | - | - | - | 0 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 6 |
| 9/19/2009 | 10/19/2009 | Alternate Living Expenses | 20 | - | - | - | 0 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 10 |
| 9/19/2009 | 10/19/2009 | Alternate Living Expenses | 1,940 | - | - | - | 31 | 116 | 87 | 23 | 92 | 92 | 92 | 92 | 23 | 23 | 24 | 24 | 24 | 24 | 25 | 26 | 26 | 28 | 29 | 30 | 68 | 1,001 |
| 9/22/2009 | 10/22/2009 | Alternate Living Expenses | 120 | - | - | - | 2 | 7 | 5 | 1 | 6 | 6 | 6 | 6 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 4 | 62 |
| 9/26/2009 | 10/26/2009 | Alternate Living Expenses | 93 | - | - | - | 1 | 6 | 4 | 1 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 48 |
| 9/26/2009 | 10/26/2009 | Alternate Living Expenses | 200 | - | - | - | 3 | 12 | 9 | 2 | 9 | 10 | 10 | 10 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 103 |
| 9/26/2009 | 10/26/2009 | Alternate Living Expenses | 3,300 | - | - | - | 48 | 198 | 148 | 40 | 157 | 157 | 157 | 157 | 39 | 39 | 40 | 41 | 40 | 42 | 43 | 45 | 45 | 47 | 50 | 51 | 116 | 1,697 |
| 10/2/2009 | 11/1/2009 | Alternate Living Expenses | 27 | - | - | - | 0 | 2 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 14 |
| 10/8/2009 | 11/7/2009 | Alternate Living Expenses | 28 | - | - | - | 0 | 2 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 14 |
| 10/18/2009 | 11/17/2009 | Alternate Living Expenses | 61 | - | - | - | 1 | 4 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 31 |
| 10/18/2009 | 11/17/2009 | Alternate Living Expenses | 219 | - | - | - | 2 | 13 | 10 | 3 | 10 | 10 | 10 | 10 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 8 | 112 |
| 10/26/2009 | 11/25/2009 | Alternate Living Expenses | 28 | - | - | - | 0 | 2 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 14 |
| 10/26/2009 | 11/25/2009 | Alternate Living Expenses | 114 | - | - | - | 1 | 7 | 5 | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 4 | 58 |
| 10/26/2009 | 11/25/2009 | Alternate Living Expenses | 145 | - | - | - | 1 | 9 | 7 | 2 | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 74 |
| 10/26/2009 | 11/25/2009 | Alternate Living Expenses | 234 | - | - | - | 2 | 14 | 11 | 3 | 11 | 11 | 11 | 11 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 8 | 119 |
| 10/26/2009 | 11/25/2009 | Alternate Living Expenses | 3,300 | - | - | - | 26 | 198 | 148 | 40 | 157 | 157 | 157 | 157 | 39 | 39 | 40 | 41 | 40 | 42 | 43 | 45 | 45 | 47 | 50 | 51 | 116 | 1,676 |
| 11/9/2009 | 12/9/2009 | Alternate Living Expenses | 197 | - | - | - | 1 | 12 | 9 | 2 | 9 | 9 | 9 | 9 | 2 | 2 | 2 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 99 |
| 11/23/2009 | 12/23/2009 | Alternate Living Expenses | 30 | - | - | - | 0 | 2 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 15 |
| 11/23/2009 | 12/23/2009 | Alternate Living Expenses | 234 | - | - | - | 0 | 14 | 11 | 3 | 11 | 11 | 11 | 11 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 8 | 118 |
| 11/23/2009 | 12/23/2009 | Alternate Living Expenses | 3,300 | - | - | - | 6 | 198 | 148 | 40 | 157 | 157 | 157 | 157 | 39 | 39 | 40 | 41 | 40 | 42 | 43 | 45 | 45 | 47 | 50 | 51 | 116 | 1,656 |
| 12/12/2009 | 1/11/2010 | Alternate Living Expenses | 50 | - | - | - | - | 3 | 2 | 1 | 2 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 25 |
| 12/12/2009 | 1/11/2010 | Alternate Living Expenses | 150 | - | - | - | - | 9 | 7 | 2 | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 75 |
| 12/17/2009 | 1/16/2010 | Alternate Living Expenses | 325 | - | - | - | - | 19 | 15 | 4 | 15 | 15 | 15 | 15 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 5 | 11 | 162 |
| 12/31/2009 | 1/30/2010 | Alternate Living Expenses | 118 | - | - | - | - | 6 | 5 | 1 | 6 | 6 | 6 | 6 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 2 | 4 | 58 |
| 12/31/2009 | 1/30/2010 | Alternate Living Expenses | 158 | - | - | - | - | 9 | 7 | 2 | 8 | 8 | 8 | 8 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 6 | 78 |
| 12/31/2009 | 1/30/2010 | Alternate Living Expenses | 703 | - | - | - | - | 39 | 32 | 8 | 33 | 33 | 33 | 33 | 8 | 8 | 9 | 9 | 9 | 9 | 9 | 9 | 10 | 10 | 11 | 11 | 25 | 348 |
| 3/29/2010 | 4/28/2010 | Alternate Living Expenses | 469 | - | - | - | - | 19 | 21 | 6 | 22 | 22 | 22 | 22 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 16 | 225 |
| | | Alternate Living Expenses Total | $ 31,786 | $ - | $ - | $ - | $ 513 | $ 1,892 | $ 1,427 | $ 381 | $ 1,510 | $ 1,510 | $ 1,510 | $ 1,510 | $ 375 | $ 378 | $ 387 | $ 392 | $ 390 | $ 400 | $ 414 | $ 429 | $ 433 | $ 453 | $ 478 | $ 488 | $ 1,119 | $ 16,388 |
| 8/11/2006 | 9/10/2006 | Personal Property Damage Expense | $ 5,255 | $ 145 | $ 578 | $ 580 | $ 420 | $ 315 | $ 236 | $ 63 | $ 250 | $ 250 | $ 250 | $ 250 | $ 62 | $ 62 | $ 64 | $ 65 | $ 64 | $ 66 | $ 68 | $ 71 | $ 72 | $ 75 | $ 79 | $ 81 | $ 185 | $ 4,350 |
| 9/12/2008 | 10/13/2008 | Personal Property Damage Expense | 75 | - | - | 2 | 6 | 5 | 3 | 1 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 45 |
| 10/23/2008 | 11/24/2008 | Personal Property Damage Expense | 70 | - | - | 1 | 6 | 4 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 41 |
| 12/4/2008 | 1/6/2009 | Personal Property Damage Expense | 79 | - | - | - | 6 | 5 | 4 | 1 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 46 |
| 3/4/2009 | 4/7/2009 | Personal Property Damage Expense | 130 | - | - | - | 8 | 8 | 6 | 2 | 6 | 6 | 6 | 6 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 73 |
| 4/13/2009 | 5/18/2009 | Personal Property Damage Expense | 550 | - | - | - | 27 | 33 | 25 | 7 | 26 | 26 | 26 | 26 | 6 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 8 | 8 | 8 | 19 | 302 |
| 8/1/2009 | 9/6/2009 | Personal Property Damage Expense | 500 | - | - | - | 13 | 30 | 22 | 6 | 24 | 24 | 24 | 24 | 6 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 7 | 8 | 8 | 18 | 263 |
| 8/1/2009 | 9/7/2009 | Personal Property Damage Expense | 1,000 | - | - | - | 25 | 60 | 45 | 12 | 47 | 48 | 48 | 48 | 12 | 12 | 12 | 12 | 12 | 13 | 13 | 13 | 14 | 14 | 15 | 15 | 35 | 525 |
| 8/1/2009 | 9/8/2009 | Personal Property Damage Expense | 1,000 | - | - | - | 25 | 60 | 45 | 12 | 47 | 48 | 48 | 48 | 12 | 12 | 12 | 12 | 12 | 13 | 13 | 13 | 14 | 14 | 15 | 15 | 35 | 525 |
| 8/1/2009 | 9/9/2009 | Personal Property Damage Expense | 2,500 | - | - | - | 62 | 150 | 112 | 30 | 119 | 119 | 119 | 119 | 30 | 30 | 30 | 31 | 31 | 31 | 33 | 34 | 34 | 36 | 38 | 38 | 88 | 1,312 |
| 8/1/2009 | 9/10/2009 | Personal Property Damage Expense | 3,500 | - | - | - | 86 | 210 | 157 | 42 | 166 | 166 | 166 | 166 | 41 | 42 | 43 | 43 | 43 | 44 | 46 | 47 | 48 | 50 | 53 | 54 | 123 | 1,836 |
| 8/1/2009 | 9/11/2009 | Personal Property Damage Expense | 5,000 | - | - | - | 122 | 300 | 224 | 60 | 237 | 238 | 238 | 238 | 59 | 59 | 61 | 62 | 61 | 63 | 65 | 67 | 68 | 71 | 75 | 77 | 176 | 2,621 |
| 8/8/2009 | 9/19/2009 | Personal Property Damage Expense | 97 | - | - | - | 2 | 6 | 4 | 1 | 5 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 50 |
| 8/8/2009 | 9/20/2009 | Personal Property Damage Expense | 139 | - | - | - | 3 | 8 | 6 | 2 | 7 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 73 |
| 8/12/2009 | 9/25/2009 | Personal Property Damage Expense | 20 | - | - | - | 0 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 10 |
| 8/15/2009 | 9/29/2009 | Personal Property Damage Expense | 1,167 | - | - | - | 24 | 70 | 52 | 14 | 55 | 55 | 55 | 55 | 14 | 14 | 14 | 14 | 14 | 15 | 15 | 16 | 16 | 17 | 18 | 18 | 41 | 607 |
| 8/16/2009 | 10/1/2009 | Personal Property Damage Expense | 22 | - | - | - | 0 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 12 |
| 8/16/2009 | 10/2/2009 | Personal Property Damage Expense | 91 | - | - | - | 2 | 5 | 4 | 1 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 47 |
| 8/17/2009 | 10/4/2009 | Personal Property Damage Expense | 338 | - | - | - | 7 | 20 | 15 | 4 | 16 | 16 | 16 | 16 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 5 | 5 | 5 | 12 | 175 |
| 8/21/2009 | 10/9/2009 | Personal Property Damage Expense | 545 | - | - | - | 10 | 33 | 24 | 7 | 26 | 26 | 26 | 26 | 6 | 6 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 8 | 8 | 8 | 19 | 282 |
| 8/29/2009 | 10/18/2009 | Personal Property Damage Expense | 56 | - | - | - | 1 | 3 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 29 |
| 8/30/2009 | 10/20/2009 | Personal Property Damage Expense | 12 | - | - | - | 0 | 1 | 1 | 0 | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 6 |
| 9/4/2009 | 10/26/2009 | Personal Property Damage Expense | 56 | - | - | - | 1 | 3 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 29 |
| 9/23/2009 | 11/15/2009 | Personal Property Damage Expense | 280 | - | - | - | 3 | 17 | 13 | 3 | 13 | 13 | 13 | 13 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 10 | 143 |
| | | Personal Property Damage Expense Total | $ 22,482 | $ 145 | $ 578 | $ 582 | $ 859 | $ 1,349 | $ 1,009 | $ 269 | $ 1,068 | $ 1,068 | $ 1,068 | $ 1,068 | $ 266 | $ 267 | $ 274 | $ 277 | $ 276 | $ 283 | $ 293 | $ 303 | $ 307 | $ 321 | $ 338 | $ 345 | $ 791 | $ 13,403 |
| 8/11/2009 | 9/10/2009 | Additional Damages | $ 5 | $ - | $ - | $ - | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 | $ 0 | $ 3 |
| 8/11/2009 | 9/10/2009 | Additional Damages | 91 | - | - | - | 2 | 5 | 4 | 1 | 4 | 4 | 4 | 4 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 3 | 48 |
| | | Additional Damages Total | $ 97 | $ - | $ - | $ - | $ 2 | $ 6 | $ 4 | $ 1 | $ 5 | $ 5 | $ 5 | $ 5 | $ 1 | $ 1 | $ 1 | $ 1 | $ 1 | $ 1 | $ 1 | $ 1 | $ 1 | $ 1 | $ 1 | $ 1 | $ 3 | $ 51 |

*Assumptions:*

Florida Statutory Interest Rates

| | 12/31/2006 | 12/31/2007 | 12/31/2008 | 12/31/2009 | 12/31/2010 | 9/30/2011 | 12/31/2011 | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 3/31/2016 | 6/30/2016 | 9/30/2016 | 12/31/2016 | 3/31/2017 | 6/30/2017 | 9/30/2017 | 12/31/2017 | 3/31/2018 | 6/30/2018 | 9/30/2018 | 12/31/2018 | 7/22/2019 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Annual | 9.00% | 11.00% | 11.00% | 8.00% | 6.00% | 6.00% | 4.75% | 4.75% | 4.75% | 4.75% | 4.75% | 4.75% | 4.78% | 4.84% | 4.91% | 4.97% | 5.05% | 5.17% | 5.35% | 5.53% | 5.72% | 5.97% | 6.09% | 6.33% |
| Per Diem | 0.0246600% | 0.0301400% | 0.0301400% | 0.0219200% | 0.0164400% | 0.0164400% | 0.0130137% | 0.0129781% | 0.0130137% | 0.0130137% | 0.0130137% | 0.0129781% | 0.01306011% | 0.01322404% | 0.01341530% | 0.01361644% | 0.01383562% | 0.01416438% | 0.0146575% | 0.0151507% | 0.0156712% | 0.0163562% | 0.0166849% | 0.0173425% |

18.A
Documents and Other Information Considered - Kevin & Stacey Rosen

*Chinese Drywall Litigation Involving Priority Claimants*

*Bate Stamp (if applicable)*

| No. | Claimant | General Description | First Page | Last Page |
|---|---|---|---|---|
| **A. Pleadings and Other Legal Documents:** | | | | |
| 1 | All | Judge Cooke's Order, dated November 16, 2018 | | |
| 2 | Rosen-KS | Claimant Kevin & Stacey Rosen Answers to Interrogatories - Amended | | |
| 3 | Rosen-KS | Claimant Kevin & Stacey Rosen Answers to Defendant's Second Set of Interrogatories, dated December 4, 2018 | | |
| 4 | Rosen-KS | Claimant Kevin & Stacey Rosen Supplemental Plaintiff Profile Form | | |
| **B. Depositions & Corresponding Exhibits:** | | | | |
| 1 | Rosen-KS | Deposition Transcript of Kevin Rosen, dated December 19, 2018 | | |
| 2 | Rosen-KS | Deposition Transcript of Stacy Rosen, dated December 19, 2018 | | |
| 3 | Rosen-KS | Deposition Exhibit 01 - Mortgage | KROSEN - 000061 | KROSEN - 000134 |
| 4 | Rosen-KS | Deposition Exhibit 02 - The Oaks at Boca Raton Agreement for Purchase and Sale | KROSEN - 000005 | KROSEN - 000054 |
| 5 | Rosen-KS | Deposition Exhibit 03 - Claimant Kevin Rosen's Answers to Defendants Interrogatories | | |
| 6 | Rosen-KS | Deposition Exhibit 04 - Uniform Residential Appraisal Report | | |
| 7 | Rosen-KS | Deposition Exhibit 05 - Residential Full Report | KROSEN - 000055 | KROSEN - 000058 |
| 8 | Rosen-KS | Deposition Exhibit 06 - Declaration of Correctness of Square Footage on Chinese Drywall Client(s) Property for Remediation Damages | | |
| 9 | Rosen-KS | Deposition Exhibit 07 - Inspection Report - Product ID 09/15/2009 | KROSEN - 000566 | KROSEN - 000568 |
| 10 | Rosen-KS | Deposition Exhibit 08 - Supplemental Plaintiff Profile Form | | |
| 11 | Rosen-KS | Deposition Exhibit 09 - June 24, 2009 Letter from Vincent Altino and Lease Agreement | KROSEN - 000135 | KROSEN - 000144 |
| 12 | Rosen-KS | Deposition Exhibit 10 - Out-of-Pocket Expenses | KROSEN - 000145 | KROSEN - 000393 |
| 13 | Rosen-KS | Deposition Exhibit 11 - Claimant Affidavit of Chinese Drywall Economic Damages | | |
| 14 | Rosen-KS | Deposition Exhibit 12 - (Inadvertently not marked - no exhibit) | | |
| 15 | Rosen-KS | Deposition Exhibit 13 - August 15, 2018 Chinese Drywall Settlement Program Check Copy | | |
| 16 | Rosen-KS | Deposition Exhibit 14 - US Individual Income Tax Return 2009 | KROSEN - 000500 | KROSEN - 000565 |
| 17 | Rosen-KS | Deposition Exhibit 15 - Warranty Deed | KROSEN - 000001 | KROSEN - 000004 |
| 18 | Rosen-KS | Deposition Exhibit 16 - December 23, 2009 Agreement Between Florida Campbell Real Estate Holdings, Inc., and Kevin and Stacey Rosen | KROSEN - 0000978 | KROSEN - 0000978 |
| 19 | Rosen-KS | Deposition Exhibit 17 - August 2, 2016 Chinese Drywall Settlement Program Check Copy | | |
| **C. Supporting Documentation** | | | | |
| 1 | Rosen-KS | Rosen Out of Pocket Damages Summary Provided by Counsel | | |
| 2 | Rosen-KS | KROSEN - (002239-2524) - House Re-Model 2008 | KROSEN - 002239 | KROSEN - 002524 |
| 3 | Rosen-KS | KROSEN - (002237-2238) - Chinese Drywall Upgrades Change Order List - 12-19-18 | KROSEN - 002237 | KROSEN - 002238 |
| 4 | Rosen-KS | KROSEN - (001714-002236) - Upgrades and Work Orders | KROSEN - 001714 | KROSEN - 002236 |
| 5 | Rosen-KS | KROSEN - (000500-000565) - 1049 Income Tax Documentation (Redacted) | KROSEN - 000500 | KROSEN - 000565 |
| 6 | Rosen-KS | KROSEN - (000417-000421) - Client Affidavit | KROSEN - 000417 | KROSEN - 000421 |
| 7 | Rosen-KS | KROSEN - (000145-000393) - Payments, Expenses | KROSEN - 000145 | KROSEN - 000393 |
| 8 | Rosen-KS | KROSEN - (000135-000144) - Townhouse Rental Lease - Rosen | KROSEN - 000135 | KROSEN - 000144 |
| 9 | Rosen-KS | KROSEN - (000061-000134) - Purchase of Home & Mortgage Docs | KROSEN - 000061 | KROSEN - 000134 |

18.A
Documents and Other Information Considered - Kevin & Stacey Rosen

---

*Chinese Drywall Litigation Involving Priority Claimants*

*Bate Stamp (if applicable)*

| No. | Claimant | General Description | First Page | Last Page |
|-----|----------|---------------------|------------|-----------|
| 10 | Rosen-KS | KROSEN - (000059-000060) - Tax Docs | KROSEN - 000059 | KROSEN - 000060 |
| 11 | Rosen-KS | KROSEN - (000055-000058) - Appraisal Report | KROSEN - 000055 | KROSEN - 000058 |
| 12 | Rosen-KS | KROSEN - (000005-000054) - Purchase Documents 2004 | KROSEN - 000005 | KROSEN - 000054 |
| 13 | Rosen-KS | KROSEN - (000001-000004) - Sale of Home in 2009 Documents | KROSEN - 000001 | KROSEN - 000004 |
| 14 | Rosen-KS | Doc ID. 366865 - Rosen-KS - Capital Improvements List | | |

D. Research and Other Sources:

| 1 | Rosen-KS | Telephone Conversation with Counsel and Kevin Rosen | | |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-22408-Civ-COOKE

EDUARDO AND CARMEN AMORIN, *et al.*,
individually and on behalf of others similarly
situated,

       Plaintiffs,

vs.

TAISHAN GYPSUM CO., LTD., f/k/a
SHANDONG TIASHE DONGXIN CO. LTD.,
*et al.*,

       Defendants.

_____

# **Exhibit 19**

**Calculations of Damages for Priority Claimants**

# **Larry & Rosalee Walls**

EXHIBIT TO THE EXPERT WITNESS REPORT OF:
MICHAEL P. ELKIN, CPA/CFF/ABV, CFE
IN THE PRIORITY CLAIMANT TRIAL

February 19, 2019



Exhibit 19
Data and Damage Summary - Larry & Rosalee Walls

*Chinese Drywall Litigation Involving Priority Claimants*

| Data: | | *Reference / Notes* |
|---|---|---|
| Address of Affected property | 2510 Van Buren Pkwy. | *SPPF* |
| | Cape Coral, FL 33993 | *SPPF* |
| Date Affected property acquired | September 1, 2006 | *SPPF* |
| Date Chinese drywall installed | 2006 | *SPPF* |
| Date moved into Affected property | September 1, 2006 | *SPPF* |
| Date first aware of Chinese drywall | August-09 | *SPPF* |
| | | |
| Move out date to alternate living | June-10 | *ROG 1, #2* |
| Date returned to Affected property | Never | *ROG 1, #2* |
| End date for alternate living expenses | Never | *ROG 1, #2* |
| | | |
| Still own property? | N | *SPPF* |
| Bankruptcy caused by damage? | N | *SPPF* |
| Foreclosure or short sale? | Y | *SPPF* |
| Affected property sold? | Y | *SPPF* |
| Sale date | July 18, 2014 | *SPPF* |
| Type of sale | Foreclosure | *ROG 1, #2* |
| | | |
| Remediation status | None | *SPPF* |
| Remediation period | N/A | *SPPF* |

| Damage Summary: | | |
|---|---|---|
| Full or Partial Out-of-Pocket Remediation Expenses | $                      - | |
| | | |
| Other Damages | | |
| Alternate Living Expenses | $              65,000 | *Exh. 19.1* |
| Personal Property Damage Expense | 30,932 | *Exh. 19.1* |
| Additional Damages | - | |
| | $              95,932 | |
| | | |
| Lost Equity | $              49,880 | *Exh. 19.2* |
| | | |
| Diminution in Value | TBD | |
| | | |
| Loss of Use and Enjoyment | TBD | |
| | | |
| Punitive Damages | TBD | |

Exhibit 19.1
Damage Claims Detail - Larry & Rosalee Walls

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|------|--------|-------------|--------|------|--------------|----------------|-------|------------------|--------------|
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | $ 1,300 | 6/1/2010 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 7/1/2010 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 8/1/2010 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 9/1/2010 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 10/1/2010 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 11/1/2010 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 12/1/2010 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 1/1/2011 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 2/1/2011 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 3/1/2011 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 4/1/2011 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 5/1/2011 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 6/1/2011 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 7/1/2011 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 8/1/2011 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 9/1/2011 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 10/1/2011 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 11/1/2011 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 12/1/2011 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 1/1/2012 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 2/1/2012 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 3/1/2012 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 4/1/2012 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 5/1/2012 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 6/1/2012 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 7/1/2012 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 8/1/2012 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 9/1/2012 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 10/1/2012 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 11/1/2012 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 12/1/2012 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 1/1/2013 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 2/1/2013 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 3/1/2013 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 4/1/2013 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 5/1/2013 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 6/1/2013 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 7/1/2013 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 8/1/2013 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 9/1/2013 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 10/1/2013 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 11/1/2013 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 12/1/2013 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 1/1/2014 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 2/1/2014 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 3/1/2014 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 4/1/2014 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 5/1/2014 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |

Exhibit 19.1
Damage Claims Detail - Larry & Rosalee Walls

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 6/1/2014 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 7/1/2014 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| **Alternate Living Expenses Total** | | | **$ 65,000** | | | | | | |
| Personal Property Damage Expense | National Home Furnishing Center | Paradisio Dining Room and Bar Stools | $ 4,802 | 10/2/2006 | | Invoice | N/A | Exhibit 11 | 3 |
| Personal Property Damage Expense | Spectrum Home Furnishing | Wall Unit and Sofa | 3,478 | 10/22/2006 | | Invoice | N/A | Exhibit 11 | 9 |
| Personal Property Damage Expense | Norris Furniture | Royal Palm Tree Silk | 590 | 11/5/2006 | | Invoice | N/A | Exhibit 11 | 2 |
| Personal Property Damage Expense | Special Delivery Services | Bedroom Furniture | 3,377 | 11/18/2006 | | Invoice | N/A | Exhibit 11 | 11 |
| Personal Property Damage Expense | Spectrum Home Furnishing | Euro Bar Cabinet | 742 | 12/3/2006 | | Receipt | N/A | Exhibit 11 | 8 |
| Personal Property Damage Expense | Spectrum Home Furnishing | Bombay Chest | 878 | 12/14/2006 | | Invoice | N/A | Exhibit 11 | 7 |
| Personal Property Damage Expense | Home Depot | Refrigerator | 504 | 1/8/2007 | | Receipt | N/A | Exhibit 11 | 13 |
| Personal Property Damage Expense | Lowe's | Ceiling Fans, etc. | 671 | 5/22/2007 | | Statement | N/A | Exhibit 11 | 14 |
| Personal Property Damage Expense | Vertical Factory | Blinds | 68 | 7/23/2007 | | Receipt | N/A | Exhibit 11 | 6 |
| Personal Property Damage Expense | Moores Furniture | Two White Sofas | 2,232 | 11/29/2008 | | Claimant | N/A | Exhibit 11 | 19 |
| Personal Property Damage Expense | Sears | Two Televisions | 3,922 | 1/5/2009 | | Claimant/Credit Card Statement | N/A | Exhibit 10 | 1 |
| Personal Property Damage Expense | Rugs of Merit | Rugs | 1,060 | 6/30/2010 | | Claimant | N/A | Exhibit 10 | 1 |
| Personal Property Damage Expense | Vailennzierge | 10x8 Rug - Dining Room | 1,254 | 6/30/2010 | | Claimant | N/A | Exhibit 10 | 1 |
| Personal Property Damage Expense | Vailennzierge | 8x8 Rug - Dining Room | 1,254 | 6/30/2010 | | Claimant | N/A | Exhibit 10 | 1 |
| Personal Property Damage Expense | Vailennzierge | 4x5 Rug - Dining Room | 362 | 6/30/2010 | | Claimant | N/A | Exhibit 10 | 1 |
| Personal Property Damage Expense | Leisure World - Window Treatments | Personal Property Claim | 5,738 | 6/30/2010 | | Claimant | N/A | Exhibit 10 | 1 |
| **Personal Property Damage Expense Total** | | | **$ 30,932** | | | | | | |

Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 371 of 802
Case 1:11-cv-22408-MGC Document 272 Entered on FLSD Docket 08/15/2013 Page 250 of
262

Exhibit 19.2
Lost Equity - Larry & Rosalee Walls

*Chinese Drywall Litigation Involving Priority Claimants*

| | | | | Source Document |
|---|---|---|---|---|
| Initial Acquisition | | | | |
| Purchase Price | | $ | 25,000 | Lee County Property Appraiser Doc ID. 344520 |
| Settlement Charges | | | N/A | |
| Total Gross Amount Due from Claimant | | $ | 25,000 | |
| | | | | |
| Less | | | | |
| Deposit Made by Claimant | | | N/A | |
| Borrowings by Claimant | | | N/A | |
| Credits | | | N/A | |
| Amount Due from Claimant at Close | | $ | 25,000 | |
| | | | | |
| Funds Paid by Claimant | | | | |
| Deposit paid with Contract | | $ | 25,000 | |
| Closing cash payments | | | N/A | |
| Total Payments for Initial Purchase | a | $ | 25,000 | |
| | | | | |
| Deposit with Contractor | b | $ | 24,880 | Construction Contract Doc ID. 366087, PDF Pg. 2 |
| | | | | |
| Mortgage | | | | |
| Mortgage Beginning Balance | | $ | 302,000 | Mortgage Doc ID. 365798 |
| Mortgage Balance at Payoff[1] | | | 335,085 | Final Judgment in Mortgage Foreclosure  DOC ID. 361729 |
| Principal Payments Made | c | $ | - | |
| | | | | |
| Total Lost Equity | = a + b + c | $ | 49,880 | |
| | | | . | |

Notes:
[1] Per the Final Judgment in Mortgage Foreclosure, the principal balance is $335,084.73.
The Mortgage filed on 11/27/06 was in the amount of $302,000.  As we do not have any information
as to Principal Payments made, we have excluded this from the calculation of Lost Equity.
Should that information be provided this Lost Equity is subject to change.

Exhibit 19.3
Calculation of Prejudgment Interest Summary - Larry & Rosalee Walls

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Vendor | Description | Amount | Total Interest Through 7/22/2019 |
|---|---|---|---|---|---|---|
| 6/1/2010 | 7/1/2010 | Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | $ 1,300 | $ 611 |
| 7/1/2010 | 7/31/2010 | Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 605 |
| 8/1/2010 | 8/31/2010 | Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 598 |
| 9/1/2010 | 10/1/2010 | Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 591 |
| 10/1/2010 | 10/31/2010 | Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 585 |
| 11/1/2010 | 12/1/2010 | Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 578 |
| 12/1/2010 | 12/31/2010 | Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 572 |
| 1/1/2011 | 1/31/2011 | Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 565 |
| 2/1/2011 | 3/3/2011 | Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 559 |
| 3/1/2011 | 3/31/2011 | Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 553 |
| 4/1/2011 | 5/1/2011 | Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 546 |
| 5/1/2011 | 5/31/2011 | Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 540 |
| 6/1/2011 | 7/1/2011 | Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 533 |
| 7/1/2011 | 7/31/2011 | Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 527 |
| 8/1/2011 | 8/31/2011 | Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 520 |
| 9/1/2011 | 10/1/2011 | Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 513 |
| 10/1/2011 | 10/31/2011 | Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 508 |
| 11/1/2011 | 12/1/2011 | Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 503 |
| 12/1/2011 | 12/31/2011 | Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 498 |
| 1/1/2012 | 1/31/2012 | Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 493 |
| 2/1/2012 | 3/2/2012 | Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 488 |
| 3/1/2012 | 3/31/2012 | Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 483 |
| 4/1/2012 | 5/1/2012 | Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 477 |
| 5/1/2012 | 5/31/2012 | Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 472 |
| 6/1/2012 | 7/1/2012 | Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 467 |
| 7/1/2012 | 7/31/2012 | Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 462 |
| 8/1/2012 | 8/31/2012 | Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 457 |
| 9/1/2012 | 10/1/2012 | Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 452 |
| 10/1/2012 | 10/31/2012 | Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 447 |
| 11/1/2012 | 12/1/2012 | Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 441 |
| 12/1/2012 | 12/31/2012 | Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 436 |
| 1/1/2013 | 1/31/2013 | Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 431 |
| 2/1/2013 | 3/3/2013 | Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 426 |
| 3/1/2013 | 3/31/2013 | Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 421 |
| 4/1/2013 | 5/1/2013 | Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 416 |
| 5/1/2013 | 5/31/2013 | Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 411 |
| 6/1/2013 | 7/1/2013 | Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 405 |
| 7/1/2013 | 7/31/2013 | Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 400 |
| 8/1/2013 | 8/31/2013 | Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 395 |
| 9/1/2013 | 10/1/2013 | Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 390 |
| 10/1/2013 | 10/31/2013 | Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 385 |
| 11/1/2013 | 12/1/2013 | Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 380 |
| 12/1/2013 | 12/31/2013 | Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 374 |
| 1/1/2014 | 1/31/2014 | Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 369 |
| 2/1/2014 | 3/3/2014 | Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 364 |
| 3/1/2014 | 3/31/2014 | Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 359 |
| 4/1/2014 | 5/1/2014 | Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 354 |
| 5/1/2014 | 5/31/2014 | Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 349 |
| 6/1/2014 | 7/1/2014 | Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 344 |
| 7/1/2014 | 7/31/2014 | Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 339 |
| | | **Alternate Living Expenses Total** | | | $ 65,000 | $ 23,390 |
| 10/2/2006 | 11/1/2006 | Personal Property Damage Expense | National Home Furnishing Center | Paradisio Dining Room and Bar Stools | $ 4,802 | $ 3,914 |
| 10/22/2006 | 11/21/2006 | Personal Property Damage Expense | Spectrum Home Furnishing | Wall Unit and Sofa | 3,478 | 2,817 |
| 11/5/2006 | 12/5/2006 | Personal Property Damage Expense | Norris Furniture | Royal Palm Tree Silk | 590 | 476 |
| 11/18/2006 | 12/18/2006 | Personal Property Damage Expense | Special Delivery Services | Bedroom Furniture | 3,377 | 2,713 |
| 12/3/2006 | 1/2/2007 | Personal Property Damage Expense | Spectrum Home Furnishing | Euro Bar Cabinet | 742 | 593 |
| 12/14/2006 | 1/13/2007 | Personal Property Damage Expense | Spectrum Home Furnishing | Bombay Chest | 878 | 699 |
| 1/8/2007 | 2/7/2007 | Personal Property Damage Expense | Home Depot | Refrigerator | 504 | 398 |
| 5/22/2007 | 6/21/2007 | Personal Property Damage Expense | Lowe's | Ceiling Fans, etc. | 671 | 503 |
| 7/23/2007 | 8/22/2007 | Personal Property Damage Expense | Vertical Factory | Blinds | 68 | 49 |
| 11/29/2008 | 12/29/2008 | Personal Property Damage Expense | Moores Furniture | Two White Sofas | 2,232 | 1,296 |
| 1/5/2009 | 2/4/2009 | Personal Property Damage Expense | Sears | Two Televisions | 3,922 | 2,244 |
| 6/30/2010 | 7/30/2010 | Personal Property Damage Expense | Rugs of Merit | Rugs | 1,060 | 493 |
| 6/30/2010 | 7/30/2010 | Personal Property Damage Expense | Vailennzierge | 10x8 Rug - Dining Room | 1,254 | 583 |
| 6/30/2010 | 7/30/2010 | Personal Property Damage Expense | Vailennzierge | 8x8 Rug - Dining Room | 1,254 | 583 |
| 6/30/2010 | 7/30/2010 | Personal Property Damage Expense | Vailennzierge | 4x5 Rug - Dining Room | 362 | 168 |
| 6/30/2010 | 7/30/2010 | Personal Property Damage Expense | Leisure World - Window Treatments | Personal Property Claim | 5,738 | 2,670 |
| | | **Personal Property Damage Expense Total** | | | $ 30,932 | $ 20,200 |

Exhibit 19.3A
Calculation of Prejudgment Interest Detail - Larry & Rosalee Walls

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Amount | 12/31/2006 | 12/31/2007 | 12/31/2008 | 12/31/2009 | 12/31/2010 | 9/30/2011 | 12/31/2011 | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 3/31/2016 | 6/30/2016 | 9/30/2016 | 12/31/2016 | 3/31/2017 | 6/30/2017 | 9/30/2017 | 12/31/2017 | 3/31/2018 | 6/30/2018 | 9/30/2018 | 12/31/2018 | 7/22/2019 | Total Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/1/2010 | 7/1/2010 | Alternate Living Expenses | $ 1,300 | $ - | $ - | $ - | $ - | $ 39 | $ 58 | $ 16 | $ 62 | $ 62 | $ 62 | $ 62 | $ 15 | $ 15 | $ 16 | $ 16 | $ 16 | $ 16 | $ 17 | $ 18 | $ 18 | $ 19 | $ 20 | $ 20 | $ 46 | $ 611 |
| 7/1/2010 | 7/31/2010 | Alternate Living Expenses | 1,300 | - | - | - | - | 33 | 58 | 16 | 62 | 62 | 62 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 605 |
| 8/1/2010 | 8/31/2010 | Alternate Living Expenses | 1,300 | - | - | - | - | 26 | 58 | 16 | 62 | 62 | 62 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 598 |
| 9/1/2010 | 10/1/2010 | Alternate Living Expenses | 1,300 | - | - | - | - | 19 | 58 | 16 | 62 | 62 | 62 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 591 |
| 10/1/2010 | 10/31/2010 | Alternate Living Expenses | 1,300 | - | - | - | - | 13 | 58 | 16 | 62 | 62 | 62 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 585 |
| 11/1/2010 | 12/1/2010 | Alternate Living Expenses | 1,300 | - | - | - | - | 6 | 58 | 16 | 62 | 62 | 62 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 578 |
| 12/1/2010 | 12/31/2010 | Alternate Living Expenses | 1,300 | - | - | - | - | - | 58 | 16 | 62 | 62 | 62 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 572 |
| 1/1/2011 | 1/31/2011 | Alternate Living Expenses | 1,300 | - | - | - | - | - | 52 | 16 | 62 | 62 | 62 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 565 |
| 2/1/2011 | 3/3/2011 | Alternate Living Expenses | 1,300 | - | - | - | - | - | 45 | 16 | 62 | 62 | 62 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 559 |
| 3/1/2011 | 3/31/2011 | Alternate Living Expenses | 1,300 | - | - | - | - | - | 39 | 16 | 62 | 62 | 62 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 553 |
| 4/1/2011 | 5/1/2011 | Alternate Living Expenses | 1,300 | - | - | - | - | - | 32 | 16 | 62 | 62 | 62 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 546 |
| 5/1/2011 | 5/31/2011 | Alternate Living Expenses | 1,300 | - | - | - | - | - | 26 | 16 | 62 | 62 | 62 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 540 |
| 6/1/2011 | 7/1/2011 | Alternate Living Expenses | 1,300 | - | - | - | - | - | 19 | 16 | 62 | 62 | 62 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 533 |
| 7/1/2011 | 7/31/2011 | Alternate Living Expenses | 1,300 | - | - | - | - | - | 13 | 16 | 62 | 62 | 62 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 527 |
| 8/1/2011 | 8/31/2011 | Alternate Living Expenses | 1,300 | - | - | - | - | - | 6 | 16 | 62 | 62 | 62 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 520 |
| 9/1/2011 | 10/1/2011 | Alternate Living Expenses | 1,300 | - | - | - | - | - | - | 15 | 62 | 62 | 62 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 513 |
| 10/1/2011 | 10/31/2011 | Alternate Living Expenses | 1,300 | - | - | - | - | - | - | 10 | 62 | 62 | 62 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 508 |
| 11/1/2011 | 12/1/2011 | Alternate Living Expenses | 1,300 | - | - | - | - | - | - | 5 | 62 | 62 | 62 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 503 |
| 12/1/2011 | 12/31/2011 | Alternate Living Expenses | 1,300 | - | - | - | - | - | - | - | 62 | 62 | 62 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 498 |
| 1/1/2012 | 1/31/2012 | Alternate Living Expenses | 1,300 | - | - | - | - | - | - | - | 57 | 62 | 62 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 493 |
| 2/1/2012 | 3/2/2012 | Alternate Living Expenses | 1,300 | - | - | - | - | - | - | - | 51 | 62 | 62 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 488 |
| 3/1/2012 | 3/31/2012 | Alternate Living Expenses | 1,300 | - | - | - | - | - | - | - | 46 | 62 | 62 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 483 |
| 4/1/2012 | 5/1/2012 | Alternate Living Expenses | 1,300 | - | - | - | - | - | - | - | 41 | 62 | 62 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 477 |
| 5/1/2012 | 5/31/2012 | Alternate Living Expenses | 1,300 | - | - | - | - | - | - | - | 36 | 62 | 62 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 472 |
| 6/1/2012 | 7/1/2012 | Alternate Living Expenses | 1,300 | - | - | - | - | - | - | - | 31 | 62 | 62 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 467 |
| 7/1/2012 | 7/31/2012 | Alternate Living Expenses | 1,300 | - | - | - | - | - | - | - | 26 | 62 | 62 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 462 |
| 8/1/2012 | 8/31/2012 | Alternate Living Expenses | 1,300 | - | - | - | - | - | - | - | 21 | 62 | 62 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 457 |
| 9/1/2012 | 10/1/2012 | Alternate Living Expenses | 1,300 | - | - | - | - | - | - | - | 15 | 62 | 62 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 452 |
| 10/1/2012 | 10/31/2012 | Alternate Living Expenses | 1,300 | - | - | - | - | - | - | - | 10 | 62 | 62 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 447 |
| 11/1/2012 | 12/1/2012 | Alternate Living Expenses | 1,300 | - | - | - | - | - | - | - | 5 | 62 | 62 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 441 |
| 12/1/2012 | 12/31/2012 | Alternate Living Expenses | 1,300 | - | - | - | - | - | - | - | - | 62 | 62 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 436 |
| 1/1/2013 | 1/31/2013 | Alternate Living Expenses | 1,300 | - | - | - | - | - | - | - | - | 57 | 62 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 431 |
| 2/1/2013 | 3/3/2013 | Alternate Living Expenses | 1,300 | - | - | - | - | - | - | - | - | 51 | 62 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 426 |
| 3/1/2013 | 3/31/2013 | Alternate Living Expenses | 1,300 | - | - | - | - | - | - | - | - | 47 | 62 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 421 |
| 4/1/2013 | 5/1/2013 | Alternate Living Expenses | 1,300 | - | - | - | - | - | - | - | - | 41 | 62 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 416 |
| 5/1/2013 | 5/31/2013 | Alternate Living Expenses | 1,300 | - | - | - | - | - | - | - | - | 36 | 62 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 411 |
| 6/1/2013 | 7/1/2013 | Alternate Living Expenses | 1,300 | - | - | - | - | - | - | - | - | 31 | 62 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 405 |
| 7/1/2013 | 7/31/2013 | Alternate Living Expenses | 1,300 | - | - | - | - | - | - | - | - | 26 | 62 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 400 |
| 8/1/2013 | 8/31/2013 | Alternate Living Expenses | 1,300 | - | - | - | - | - | - | - | - | 21 | 62 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 395 |
| 9/1/2013 | 10/1/2013 | Alternate Living Expenses | 1,300 | - | - | - | - | - | - | - | - | 15 | 62 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 390 |
| 10/1/2013 | 10/31/2013 | Alternate Living Expenses | 1,300 | - | - | - | - | - | - | - | - | 10 | 62 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 385 |
| 11/1/2013 | 12/1/2013 | Alternate Living Expenses | 1,300 | - | - | - | - | - | - | - | - | 5 | 62 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 380 |
| 12/1/2013 | 12/31/2013 | Alternate Living Expenses | 1,300 | - | - | - | - | - | - | - | - | - | 62 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 374 |
| 1/1/2014 | 1/31/2014 | Alternate Living Expenses | 1,300 | - | - | - | - | - | - | - | - | - | 57 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 369 |
| 2/1/2014 | 3/3/2014 | Alternate Living Expenses | 1,300 | - | - | - | - | - | - | - | - | - | 51 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 364 |
| 3/1/2014 | 3/31/2014 | Alternate Living Expenses | 1,300 | - | - | - | - | - | - | - | - | - | 47 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 359 |
| 4/1/2014 | 5/1/2014 | Alternate Living Expenses | 1,300 | - | - | - | - | - | - | - | - | - | 41 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 354 |
| 5/1/2014 | 5/31/2014 | Alternate Living Expenses | 1,300 | - | - | - | - | - | - | - | - | - | 36 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 349 |
| 6/1/2014 | 7/1/2014 | Alternate Living Expenses | 1,300 | - | - | - | - | - | - | - | - | - | 31 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 344 |
| 7/1/2014 | 7/31/2014 | Alternate Living Expenses | 1,300 | - | - | - | - | - | - | - | - | - | 26 | 62 | 15 | 15 | 16 | 16 | 16 | 16 | 17 | 18 | 18 | 19 | 20 | 20 | 46 | 339 |
| | | Alternate Living Expenses Total | $ 65,000 | $ - | $ - | $ - | $ - | $ 137 | $ 642 | $ 264 | $ 1,513 | $ 2,254 | $ 2,944 | $ 3,088 | $ 768 | $ 773 | $ 791 | $ 802 | $ 797 | $ 818 | $ 847 | $ 877 | $ 886 | $ 927 | $ 978 | $ 998 | $ 2,288 | $ 23,390 |
| 10/2/2006 | 11/1/2006 | Personal Property Damage Expense | $ 4,802 | $ 71 | $ 528 | $ 530 | $ 384 | $ 288 | $ 216 | $ 57 | $ 228 | $ 228 | $ 228 | $ 228 | $ 57 | $ 57 | $ 58 | $ 59 | $ 59 | $ 60 | $ 63 | $ 65 | $ 65 | $ 68 | $ 72 | $ 74 | $ 169 | $ 3,914 |
| 10/22/2006 | 11/21/2006 | Personal Property Damage Expense | 3,477.5 | 34 | 383 | 384 | 278 | 209 | 156 | 42 | 165 | 165 | 165 | 165 | 41 | 41 | 42 | 43 | 43 | 44 | 45 | 47 | 47 | 50 | 52 | 53 | 122 | 2,817 |
| 11/5/2006 | 12/5/2006 | Personal Property Damage Expense | 590.4 | 4 | 65 | 65 | 47 | 35 | 26 | 7 | 28 | 28 | 28 | 28 | 7 | 7 | 7 | 7 | 7 | 7 | 8 | 8 | 8 | 8 | 9 | 9 | 21 | 476 |
| 11/18/2006 | 12/18/2006 | Personal Property Damage Expense | 3,377.2 | 11 | 372 | 373 | 270 | 203 | 152 | 40 | 160 | 160 | 160 | 160 | 40 | 40 | 41 | 42 | 41 | 43 | 44 | 46 | 46 | 48 | 51 | 52 | 119 | 2,713 |
| 12/3/2006 | 1/2/2007 | Personal Property Damage Expense | 742.0 | - | 81 | 82 | 59 | 45 | 33 | 9 | 35 | 35 | 35 | 35 | 9 | 9 | 9 | 9 | 9 | 9 | 10 | 10 | 10 | 11 | 11 | 11 | 26 | 593 |
| 12/14/2006 | 1/13/2007 | Personal Property Damage Expense | 877.7 | - | 93 | 97 | 70 | 53 | 39 | 11 | 42 | 42 | 42 | 42 | 10 | 10 | 11 | 11 | 11 | 11 | 11 | 12 | 12 | 13 | 13 | 13 | 31 | 699 |
| 1/8/2007 | 2/7/2007 | Personal Property Damage Expense | 504.0 | - | 50 | 56 | 40 | 30 | 23 | 6 | 24 | 24 | 24 | 24 | 6 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 7 | 8 | 8 | 18 | 398 |
| 5/22/2007 | 6/21/2007 | Personal Property Damage Expense | 671.5 | - | 39 | 74 | 54 | 40 | 30 | 8 | 32 | 32 | 32 | 32 | 8 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 9 | 10 | 10 | 10 | 24 | 503 |
| 7/23/2007 | 8/22/2007 | Personal Property Damage Expense | 67.5 | - | 3 | 7 | 5 | 4 | 3 | 1 | 3 | 3 | 3 | 3 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 49 |
| 11/29/2008 | 12/29/2008 | Personal Property Damage Expense | 2,232.0 | - | - | 1 | 179 | 134 | 100 | 27 | 106 | 106 | 106 | 106 | 26 | 27 | 27 | 28 | 27 | 28 | 29 | 30 | 30 | 32 | 34 | 34 | 79 | 1,296 |
| 1/5/2009 | 2/4/2009 | Personal Property Damage Expense | 3,922.0 | - | - | - | 284 | 235 | 176 | 47 | 186 | 186 | 186 | 186 | 46 | 47 | 48 | 48 | 48 | 49 | 51 | 53 | 53 | 56 | 59 | 60 | 138 | 2,244 |
| 6/30/2010 | 7/30/2010 | Personal Property Damage Expense | 1,060.0 | - | - | - | - | 27 | 48 | 13 | 50 | 50 | 50 | 50 | 13 | 13 | 13 | 13 | 13 | 13 | 14 | 14 | 14 | 15 | 16 | 16 | 37 | 493 |
| 6/30/2010 | 7/30/2010 | Personal Property Damage Expense | 1,254.0 | - | - | - | - | 32 | 56 | 15 | 60 | 60 | 60 | 60 | 15 | 15 | 15 | 15 | 15 | 16 | 16 | 17 | 17 | 18 | 19 | 19 | 44 | 583 |
| 6/30/2010 | 7/30/2010 | Personal Property Damage Expense | 1,254.0 | - | - | - | - | 32 | 56 | 15 | 60 | 60 | 60 | 60 | 15 | 15 | 15 | 15 | 15 | 16 | 16 | 17 | 17 | 18 | 19 | 19 | 44 | 583 |
| 6/30/2010 | 7/30/2010 | Personal Property Damage Expense | 362.0 | - | - | - | - | 9 | 16 | 4 | 17 | 17 | 17 | 17 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 5 | 5 | 5 | 5 | 6 | 13 | 168 |
| 6/30/2010 | 7/30/2010 | Personal Property Damage Expense | 5,738.0 | - | - | - | - | 145 | 258 | 69 | 273 | 273 | 273 | 273 | 68 | 68 | 70 | 71 | 70 | 72 | 75 | 77 | 78 | 82 | 86 | 88 | 202 | 2,670 |
| | | Personal Property Damage Expense Total | $ 30,932 | $ 120 | $ 1,613 | $ 1,668 | $ 1,671 | $ 1,521 | $ 1,388 | $ 370 | $ 1,469 | $ 1,469 | $ 1,469 | $ 1,469 | $ 365 | $ 368 | $ 376 | $ 382 | $ 379 | $ 389 | $ 403 | $ 417 | $ 422 | $ 441 | $ 465 | $ 475 | $ 1,089 | $ 20,200 |

*Assumptions:*

Florida Statutory Interest Rates

| | 12/31/2006 | 12/31/2007 | 12/31/2008 | 12/31/2009 | 12/31/2010 | 9/30/2011 | 12/31/2011 | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 3/31/2016 | 6/30/2016 | 9/30/2016 | 12/31/2016 | 3/31/2017 | 6/30/2017 | 9/30/2017 | 12/31/2017 | 3/31/2018 | 6/30/2018 | 9/30/2018 | 12/31/2018 | 7/22/2019 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Annual | 9.00% | 11.00% | 11.00% | 8.00% | 6.00% | 6.00% | 4.75% | 4.75% | 4.75% | 4.75% | 4.75% | 4.75% | 4.78% | 4.84% | 4.91% | 4.97% | 5.05% | 5.17% | 5.35% | 5.53% | 5.72% | 5.97% | 6.09% | 6.33% |
| Per Diem | 0.0246600% | 0.0301400% | 0.0301400% | 0.0219200% | 0.0164400% | 0.0164400% | 0.0130137% | 0.0129781% | 0.0130137% | 0.0130137% | 0.0130137% | 0.0129781% | 0.01306011% | 0.01322404% | 0.01341530% | 0.01361644% | 0.01383562% | 0.01416438% | 0.0146575% | 0.0151507% | 0.0156712% | 0.0163562% | 0.0166849% | 0.0173425% |

19.A
Documents and Other Information Considered - Larry & Rosalee Walls

*Chinese Drywall Litigation Involving Priority Claimants*

<div style="text-align: right"><em>Bate Stamp (if applicable)</em></div>

| No. | Claimant | General Description | First Page | Last Page |
|---|---|---|---|---|
| **A. Pleadings and Other Legal Documents:** | | | | |
| 1 | All | Judge Cooke's Order, dated November 16, 2018 | | |
| 2 | Walls | Priority Claimant Rosalee Walls Answers to Interrogatories, dated | | |
| 3 | Walls | Priority Claimant Rosalee Walls Answers to Defendant's Second Set of Interrogatories, dated | | |
| 4 | Walls | Priority Claimant Larry Walls Answers to Interrogatories, dated | | |
| 5 | Walls | Priority Claimant Larry Walls Answers to Defendant's Second Set of Interrogatories, dated | | |
| 6 | Walls | Larry Walls Third Amended Supplemental Profile Plaintiff Profile Form, dated December 10, 2018 | | |
| 7 | Walls | Priority Claimant Larry Walls First Amended Answers to Interrogatories, dated December 10, 2018 | | |
| 8 | Walls | Priority Claimant Rosalee Walls First Amended Answers to Interrogatories, dated December 10, 2018 | | |
| **B. Depositions & Corresponding Exhibits:** | | | | |
| 1 | Walls | Deposition Transcript of Larry Walls, dated December 11, 2018 | | |
| 2 | Walls | Deposition Transcript of Rosalee Walls, dated December 11, 2018 | | |
| 3 | Walls | Deposition Exhibit 01 - Lee County Appraiser - Online Parcel Inquiry - Property Data | | |
| 4 | Walls | Deposition Exhibit 02 - Warranty Deed | | |
| 5 | Walls | Deposition Exhibit 03 - Aranda Homes, Inc. - Floor Plan | | |
| 6 | Walls | Deposition Exhibit 04 - Plaintiff Profile Form - Residential Properties | Walls,L00001 | Walls,L00030 |
| 7 | Walls | Deposition Exhibit 05 - Supplemental Plaintiff Profile Form - Residential and Commercial Properties (Non-Knauf) | | |
| 8 | Walls | Deposition Exhibit 06 - Liberty Mutual Fire Insurance Company - Residence Damage Evaluation | | |
| 9 | Walls | Deposition Exhibit 07 - AirQuest Environmental, Inc. Report | ARI 01170 | ARI 01197 |
| 10 | Walls | Deposition Exhibit 08 - Benchmark Remediation Group - Report | | |
| 11 | Walls | Deposition Exhibit 09 - Priority Claimant Larry Walls' First Amended Answers to Interrogatories | | |
| 12 | Walls | Deposition Exhibit 10 - Chinese Drywall Settlement Program Miscellaneous Claim Form | | |
| 13 | Walls | Deposition Exhibit 11 - Receipts and Photographs of Miscellaneous Items | | |
| 14 | Walls | Deposition Exhibit 12 - Alternative Living Expenses | | |
| 15 | Walls | Deposition Exhibit 13 - American Home Mortgage Servicing D.I.P. - Monthly Billing Statement and Check Copies | | |
| 16 | Walls | Deposition Exhibit 14 - September 29, 2010 Letter from Morgan & Morgan to American Home Mortgage Servicing, Inc | | |
| 17 | Walls | Deposition Exhibit 15 - October 18, 2010 Letter from Moss Codilis, LLP to Larry and Rosalee Walls and Notice of Proposed Property Taxes | | |
| 18 | Walls | Deposition Exhibit 16 - Final Judgment in Mortgage Foreclosure | | |
| **C. Supporting Documentation** | | | | |
| 1 | Walls | Larry and Rosalee Walls Out of Pocket Damages Summary Provided by Counsel | | |
| 2 | Walls | Doc ID. 150324 - Breakdown of expenses to maintain affected property | | |
| 3 | Walls | Doc ID. 150329 - Lease Agreement for Rental Property, $1,300.00 per month for 39 months | | |
| 4 | Walls | Doc ID. 150341 - Damaged furniture, clothing...etc. | | |
| 5 | Walls | Doc ID. 150347 - Damaged furniture, clothing...etc. | | |
| 6 | Walls | Doc ID. 256780 - Lee County Tax Collector's Office | | |

19.A
Documents and Other Information Considered - Larry & Rosalee Walls

*Chinese Drywall Litigation Involving Priority Claimants*

*Bate Stamp (if applicable)*

| No. | Claimant | General Description | First Page | Last Page |
|-----|----------|--------------------|-----------|-----------|
| 7 | Walls | Doc ID. 256781 - LCEC Bill | | |
| 8 | Walls | Doc ID. 257047 - City of Cape Coral Fire Assessment | | |
| 9 | Walls | Doc ID. 344520 - Cash Payment for land 3/11/002 | | |
| 10 | Walls | Doc ID. 366086 - Damaged furniture, clothing...etc. | | |
| 11 | Walls | Doc ID. 366087 - Deposit for construction of home | | |
| 12 | Walls | Doc ID. 361729 - Walls Foreclosure Document - Judgment | | |
| 13 | Walls | Doc ID. 365798 - Walls Mortgage Van Buren Pkwy | | |
| 14 | Walls | Doc ID. 365797 - Walls Proof of Payment for Mortgage on Van Buren | | |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-22408-Civ-COOKE

EDUARDO AND CARMEN AMORIN, *et al.*,
individually and on behalf of others similarly
situated,

      Plaintiffs,

vs.

TAISHAN GYPSUM CO., LTD., f/k/a
SHANDONG TIASHE DONGXIN CO. LTD.,
*et al.*,

      Defendants.

_____

# **Exhibit 20**

**Calculations of Damages for Priority Claimants**

# **Marc & Jennifer Wites**

EXHIBIT TO THE EXPERT WITNESS REPORT OF:
MICHAEL P. ELKIN, CPA/CFF/ABV, CFE
IN THE PRIORITY CLAIMANT TRIAL

February 19, 2019



Exhibit 20
Data and Damage Summary - Jennifer & Marc Wites

*Chinese Drywall Litigation Involving Priority Claimants*

| Data: | | Reference / Notes |
|---|---|---|
| Address of Affected property | 17625 Middlebrook Way | *SPPF* |
| | Boca Raton, FL 33496 | *SPPF* |
| Date Affected property acquired | June-07 | *SPPF* |
| Date Chinese drywall installed | Unknown | *SPPF* |
| Date moved into Affected property | June-07 | *SPPF* |
| Date first aware of Chinese drywall | July-09 | *SPPF* |
| | | |
| Move out date to alternate living | June 11, 2010 | *ROG 1, #2* |
| Date returned to Affected property | February 12, 2011 | *ROG 1, #2* |
| End date for alternate living expenses | February 12, 2011 | *ROG 1, #2* |
| | | |
| Still own property? | Y | *SPPF* |
| Bankruptcy caused by damage? | N | *SPPF* |
| Foreclosure or short sale? | N | *SPPF* |
| Affected property sold? | N | *SPPF* |
| Sale date | N/A | *SPPF* |
| Type of sale | N/A | *SPPF* |
| | | |
| Remediation status | Completed | *SPPF* |
| Remediation period | June 11, 2010 - February 11, 2011 | *SPPF* |

| Damage Summary: | | |
|---|---|---|
| Full or Partial Out-of-Pocket Remediation Expenses | $ 261,102 | *Exh. 20.1* |
| Other Damages | | |
| Alternate Living Expenses | $ 37,795 | *Exh. 20.1* |
| Personal Property Damage Expense | 966 | *Exh. 20.1* |
| Additional Damages | - | |
| | $ 38,761 | |
| Lost Equity | TBD | |
| Diminution in Value / Lost Equity | TBD | |
| Punitive Damages | TBD | |

Exhibit 20.1
Damage Claims Detail - Jennifer & Marc Wites

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Remediation | B4 & After General Contractors - GC Contract | Contract for Chinese Drywall Remediation Project - Payment #1 (10%) | $ 24,105 | 6/2/2010 | | Check | MWITES-000068 | Exhibit 8 | 68 |
| Remediation | B4 & After General Contractors - Additional | Balance of permit fees | 1,475 | 6/2/2010 | | Check | MWITES-000065 | Exhibit 8 | 68 |
| Remediation | B4 & After General Contractors - GC Contract | Contract for Chinese Drywall Remediation Project - Payment #2 (10% - Environmental) | 24,105 | 9/28/2010 | | Check | MWITES-000069 | Exhibit 8 | 69 |
| Remediation | B4 & After General Contractors - GC Contract | Contract for Chinese Drywall Remediation Project - Payment #3 (20%) | 48,210 | 10/15/2010 | | Check | MWITES-000070 | Exhibit 8 | 70 |
| Remediation | B4 & After General Contractors - GC Contract | Contract for Chinese Drywall Remediation Project - Payment #4 (20%) | 48,210 | 11/3/2010 | | Check | MWITES-000071 | Exhibit 8 | 71 |
| Remediation | B4 & After General Contractors - GC Contract | Contract for Chinese Drywall Remediation Project - Payment #5 (30%) | 72,315 | 2/9/2011 | | Check | MWITES-000067 | Exhibit 8 | 67 |
| Remediation | B4 & After General Contractors - GC Contract | Contract for Chinese Drywall Remediation Project - Payment #6 (10%) | 24,105 | 3/8/2011 | | Check | MWITES-000064 | Exhibit 8 | 64 |
| Remediation | ADT | Payment for new alarm system (old system removed from home per new protocol)(See Am Ex) | 1,868 | 2/12/2011 | X | Amex? And Damage Sum | MWITES-000077 – 000078; MWITES-000079 | Exhibit 8 | 77-79 |
| Remediation | Kirk Bever | Cleaning of home fixtures that smelled like Chinese drywall (see check) | 250 | 2/12/2011 | X | Check | MWITES-000081 | Exhibit 8 | 81 |
| Remediation | Lightbulbs Unlimited | Replacement of Lighting Damaged by Chinese Drywall (Am Ex Statement) | 1,518 | 2/12/2011 | X | Amex? And Damage Sum | MWITES-000077 – 000078 | Exhibit 8 | 77-78 |
| Remediation | Build.com | Replace faucets damaged by Chinese Drywall (Am Ex Statement) | 486 | 2/12/2011 | X | Amex? And Damage Sum | MWITES-000077 – 000078 | Exhibit 8 | 77-78 |
| Remediation | Allied Trade Group | Replacement of Lighting Damaged by Chinese Drywall (Am Ex Statement) | 462 | 2/12/2011 | X | Amex? And Damage Sum | MWITES-000077 – 000078 | Exhibit 8 | 77-78 |
| Remediation | 1stoplighting.com | Replacement of Lighting Damaged by Chinese Drywall (Am Ex Statement) | 289 | 2/12/2011 | X | Amex? And Damage Sum | MWITES-000077 – 000078 | Exhibit 8 | 77-78 |
| Remediation | FEI 121 | Replacement of Plumbing Damaged by Chinese Drywall (Am Ex Statement) | 1,472 | 2/12/2011 | X | Amex? And Damage Sum | MWITES-000077 – 000078 | Exhibit 8 | 77-78 |
| Remediation | Plumber Supply | Replacement of Plumbing Damaged by Chinese Drywall (Am Ex Statement) | 581 | 2/12/2011 | X | Amex? And Damage Sum | MWITES-000077 – 000078 | Exhibit 8 | 77-78 |
| Remediation | B4 & After General Contractors - Additional | Plumbing fixtures | 812 | 2/12/2011 | X | Quote and Damage Sum | MWITES-000045 | Exhibit 8 | 45 |
| Remediation | B4 & After General Contractors - Additional | Demo showers (demo, durock & install) | 6,000 | 2/12/2011 | X | Quote and Damage Sum | MWITES-000045 | Exhibit 8 | 45 |
| Remediation | B4 & After General Contractors - Additional | Tiles for bathrooms | 3,367 | 2/12/2011 | X | Quote and Damage Sum | MWITES-000045 | Exhibit 8 | 45 |
| Remediation | B4 & After General Contractors - Additional | Remove and replace 3 curbs | 600 | 2/12/2011 | X | Quote and Damage Sum | MWITES-000045 | Exhibit 8 | 45 |
| Remediation | Brenner Architecture | Copy of Original Plans required for repair and remediation (see invoice) | 130 | 2/12/2011 | X | Invoice | MWITES-000080 | Exhibit 8 | 80 |
| Remediation | Permit Fees to EZ Permits | Paid with OPP Check No. 250; not included in GC contract (see copy of check) | 140 | 2/12/2011 | X | Activity Report | MWITES-000073 | Exhibit 8 | 73 |
| Remediation | Hawkeye Home Inspection | Inspection of GC Work (see check and invoice) | 495 | 2/12/2011 | X | Activity Report | MWITES-000034 – 000035; MWITES-000074 | Exhibit 8 | 34-35, 74 |
| Remediation | Boca Raton Decorating Center | Paint Required for repair and remediation (Am Ex Statement) | 106 | 2/12/2011 | X | Amex? And Damage Sum | MWITES-000077 – 000078 | Exhibit 8 | 77-78 |
| **Remediation Total** | | | **$ 261,102** | | | | | | |
| Alternate Living Expenses | Elkie Gallechio | Rent | $ 4,480 | 5/27/2010 | | Check | MWITES - 000104 | Exhibit 8 | 104 |
| Alternate Living Expenses | FPL | Rental House - Electric | 110 | 7/6/2010 | | Wachovia Bill Activity | MWITES - 000097 | Exhibit 8 | 97 |
| Alternate Living Expenses | Palm Beach County Water | Rental House - Water | 51 | 7/12/2010 | | Wachovia Bill Activity | MWITES - 000094 | Exhibit 8 | 94 |
| Alternate Living Expenses | Coldwell Banker | Rent | 1,920 | 5/27/2010 | | Check | MWITES - 000104 | Exhibit 8 | 104 |
| Alternate Living Expenses | Elkie Gallechio | Rent | 3,200 | 8/11/2010 | | Check | MWITES - 000030, MWITES - 000088 | Exhibit 8 | 30 & 88 |
| Alternate Living Expenses | Elkie Gallechio | Rent | 9,600 | 9/17/2010 | | Check | MWITES - 000088 | Exhibit 8 | 88 |
| Alternate Living Expenses | Elkie Gallechio | Rent | 3,200 | 12/9/2010 | | Check | MWITES-000100 | Exhibit 8 | 100 |
| Alternate Living Expenses | Elkie Gallechio | Rent | 3,200 | 12/14/2010 | | Check | MWITES - 000088, MWITES-000100 | Exhibit 8 | 88 & 100 |
| Alternate Living Expenses | Mizner Country Club | Fees for Rental | 118 | 11/22/2010 | | Check | MWITES-000090 | Exhibit 8 | 90 |
| Alternate Living Expenses | Mizner Country Club | Fees for Rental | 150 | 6/15/2010 | | Check | MWITES - 000090 | Exhibit 8 | 90 |
| Alternate Living Expenses | Mizner Country Club | Fees for Rental | 439 | 6/15/2010 | | Check | MWITES - 000090 | Exhibit 8 | 90 |
| Alternate Living Expenses | Palm Beach County Water | Rental House - Water | 118 | 8/11/2010 | | Wachovia Bill Activity | MWITES - 000094 | Exhibit 8 | 94 |
| Alternate Living Expenses | FPL | Rental House - Electric | 335 | 8/11/2010 | | Wachovia Bill Activity | MWITES - 000097 | Exhibit 8 | 97 |
| Alternate Living Expenses | FPL | Rental House - Electric | 319 | 8/24/2010 | | Wachovia Bill Activity | MWITES - 000097 | Exhibit 8 | 97 |
| Alternate Living Expenses | Palm Beach County Water | Rental House - Water | 100 | 8/27/2010 | | Wachovia Bill Activity | MWITES - 000094 | Exhibit 8 | 94 |
| Alternate Living Expenses | Palm Beach County Water | Rental House - Water | 147 | 9/28/2010 | | Wachovia Bill Activity | MWITES - 000094 | Exhibit 8 | 94 |
| Alternate Living Expenses | FPL | Rental House - Electric | 381 | 9/28/2010 | | Wachovia Bill Activity | MWITES - 000097 | Exhibit 8 | 97 |
| Alternate Living Expenses | Palm Beach County Water | Rental House - Water | 141 | 11/1/2010 | | Wachovia Bill Activity | MWITES - 000094 | Exhibit 8 | 94 |
| Alternate Living Expenses | FPL | Rental House - Electric | 293 | 11/1/2010 | | Wachovia Bill Activity | MWITES - 000097 | Exhibit 8 | 97 |
| Alternate Living Expenses | Palm Beach County Water | Rental House - Water | 125 | 11/30/2010 | | Wachovia Bill Activity | MWITES - 000094 | Exhibit 8 | 94 |
| Alternate Living Expenses | FPL | Rental House - Electric | 242 | 12/3/2010 | | Wachovia Bill Activity | MWITES - 000097 | Exhibit 8 | 97 |
| Alternate Living Expenses | FPL | Rental House - Electric | 324 | 12/27/2010 | | Wachovia Bill Activity | MWITES - 000097 | Exhibit 8 | 97 |
| Alternate Living Expenses | Expert Carpet Cleaner | Rental House | 155 | 1/14/2011 | | Check | MWITES - 000091 | Exhibit 9 | 91 |
| Alternate Living Expenses | Universal Property & Casualty | Rental Insurance | 717 | 7/8/2010 | | Declaration | MWITES-000086 – 000087; MWITES-000138 – 000189 | Exhibit 8 | 86-87 |
| Alternate Living Expenses | Elite Relocation Moving and Storage | Load at Storage | 700 | 3/1/2011 | | Bank Statement | MWITES-000043/MWITES-000075 | Exhibit 8 | 43 |
| Alternate Living Expenses | Elite Relocation Moving and Storage | Load & Move | 1,353 | 2/8/2011 | | Bank Statement | MWITES-000038/MWITES-000075 | Exhibit 8 | 38 |
| Alternate Living Expenses | Elite Relocation Moving and Storage | Pack, Load & Move | 5,875 | 11/23/2010 | | Bank Statement | MWITES-000075/MWITES-000084 | Exhibit 8 | 83 |
| **Alternate Living Expenses Total** | | | **$ 37,795** | | | | | | |
| Personal Property Damage Expense | SanMar Service Corp. | A/C Repair | $ 966 | 11/20/2009 | | Check | N/A | Exhibit 14 | 52 |
| **Personal Property Damages Expense Total** | | | **$ 966** | | | | | | |

Exhibit 20.3
Calculation of Prejudgment Interest Summary - Jennifer & Marc Wites

*Chinese Drywall Litigation Involving Priority Claimants*

| Damage Date | Measurement Date | Damage Component | Vendor | Description | Amount | Total Interest |
|---|---|---|---|---|---|---|
| 6/2/2010 | 7/2/2010 | Remediation | B4 & After General Contractors - GC Contract | Contract for Chinese Drywall Remediation Project - Payment #1 (10%) | $ 24,105 | $ 11,325 |
| 6/2/2010 | 7/2/2010 | Remediation | B4 & After General Contractors - Additional | Balance of permit fees | 1,475 | 693 |
| 9/28/2010 | 10/28/2010 | Remediation | B4 & After General Contractors - GC Contract | Contract for Chinese Drywall Remediation Project - Payment #2 (10% - Environmental) | 24,105 | 10,858 |
| 10/15/2010 | 11/14/2010 | Remediation | B4 & After General Contractors - GC Contract | Contract for Chinese Drywall Remediation Project - Payment #3 (20%) | 48,210 | 21,581 |
| 11/3/2010 | 12/3/2010 | Remediation | B4 & After General Contractors - GC Contract | Contract for Chinese Drywall Remediation Project - Payment #4 (20%) | 48,210 | 21,430 |
| 2/9/2011 | 3/11/2011 | Remediation | B4 & After General Contractors - GC Contract | Contract for Chinese Drywall Remediation Project - Payment #5 (30%) | 72,315 | 30,980 |
| 3/8/2011 | 4/7/2011 | Remediation | B4 & After General Contractors - GC Contract | Contract for Chinese Drywall Remediation Project - Payment #6 (10%) | 24,105 | 10,220 |
| 2/12/2011 | 3/14/2011 | Remediation | ADT | Payment for new alarm system (old system removed from home per new protocol)(See Am Ex) | 1,868 | 799 |
| 2/12/2011 | 3/14/2011 | Remediation | Kirk Bever | Cleaning of home fixtures that smelled like Chinese drywall (see check) | 250 | 107 |
| 2/12/2011 | 3/14/2011 | Remediation | Lightbulbs Unlimited | Replacement of Lighting Damaged by Chinese Drywall (Am Ex Statement) | 1,518 | 650 |
| 2/12/2011 | 3/14/2011 | Remediation | Build.com | Replace faucets damaged by Chinese Drywall (Am Ex Statement) | 486 | 208 |
| 2/12/2011 | 3/14/2011 | Remediation | Allied Trade Group | Replacement of Lighting Damaged by Chinese Drywall (Am Ex Statement) | 462 | 198 |
| 2/12/2011 | 3/14/2011 | Remediation | 1stloplighting.com | Replacement of Lighting Damaged by Chinese Drywall (Am Ex Statement) | 289 | 124 |
| 2/12/2011 | 3/14/2011 | Remediation | FEI 121 | Replacement of Plumbing Damaged by Chinese Drywall (Am Ex Statement) | 1,472 | 630 |
| 2/12/2011 | 3/14/2011 | Remediation | Plumber Supply | Replacement of Plumbing Damaged by Chinese Drywall (Am Ex Statement) | 581 | 249 |
| 2/12/2011 | 3/14/2011 | Remediation | B4 & After General Contractors - Additional | Plumbing fixtures | 812 | 348 |
| 2/12/2011 | 3/14/2011 | Remediation | B4 & After General Contractors - Additional | Demo showers (demo, durock & install) | 6,000 | 2,567 |
| 2/12/2011 | 3/14/2011 | Remediation | B4 & After General Contractors - Additional | Tiles for bathrooms | 3,367 | 1,441 |
| 2/12/2011 | 3/14/2011 | Remediation | B4 & After General Contractors - Additional | Remove and replace 3 curbs | 600 | 257 |
| 2/12/2011 | 3/14/2011 | Remediation | Brenner Architecture | Copy of Original Plans required for repair and remediation (see invoice) | 130 | 56 |
| 2/12/2011 | 3/14/2011 | Remediation | Permit Fees to EZ Permits | Paid with OPP Check No. 250; not included in GC contract (see copy of check) | 140 | 60 |
| 2/12/2011 | 3/14/2011 | Remediation | Hawkeye Home Inspection | Inspection of GC Work (see check and invoice) | 495 | 212 |
| 2/12/2011 | 3/14/2011 | Remediation | Boca Raton Decorating Center | Paint Required for repair and remediation (Am Ex Statement) | 106 | 45 |
| | | **Remediation Total** | | | $ 261,102 | $ 115,037 |
| 5/27/2010 | 6/26/2010 | Alternate Living Expenses | Elkie Gallechio | Rent | $ 4,480 | $ 2,109 |
| 7/6/2010 | 8/5/2010 | Alternate Living Expenses | FPL | Rental House - Electric | 110 | 51 |
| 7/12/2010 | 8/11/2010 | Alternate Living Expenses | Palm Beach County Water | Rental House - Water | 51 | 24 |
| 5/27/2010 | 6/26/2010 | Alternate Living Expenses | Coldwell Banker | Rent | 1,920 | 904 |
| 8/11/2010 | 9/10/2010 | Alternate Living Expenses | Elkie Gallechio | Rent | 3,200 | 1,467 |
| 9/17/2010 | 10/17/2010 | Alternate Living Expenses | Elkie Gallechio | Rent | 9,600 | 4,342 |
| 12/9/2010 | 1/8/2011 | Alternate Living Expenses | Elkie Gallechio | Rent | 3,200 | 1,404 |
| 12/14/2010 | 1/13/2011 | Alternate Living Expenses | Elkie Gallechio | Rent | 3,200 | 1,401 |
| 11/22/2010 | 12/22/2010 | Alternate Living Expenses | Mizner Country Club | Fees for Rental | 118 | 52 |
| 6/15/2010 | 7/15/2010 | Alternate Living Expenses | Mizner Country Club | Fees for Rental | 150 | 70 |
| 6/15/2010 | 7/15/2010 | Alternate Living Expenses | Mizner Country Club | Fees for Rental | 439 | 205 |
| 8/11/2010 | 9/10/2010 | Alternate Living Expenses | Palm Beach County Water | Rental House - Water | 118 | 54 |
| 8/11/2010 | 9/10/2010 | Alternate Living Expenses | FPL | Rental House - Electric | 335 | 154 |
| 8/24/2010 | 9/23/2010 | Alternate Living Expenses | FPL | Rental House - Electric | 319 | 146 |
| 8/27/2010 | 9/26/2010 | Alternate Living Expenses | Palm Beach County Water | Rental House - Water | 100 | 46 |
| 9/28/2010 | 10/28/2010 | Alternate Living Expenses | Palm Beach County Water | Rental House - Water | 147 | 66 |
| 9/28/2010 | 10/28/2010 | Alternate Living Expenses | FPL | Rental House - Electric | 381 | 172 |
| 11/1/2010 | 12/1/2010 | Alternate Living Expenses | Palm Beach County Water | Rental House - Water | 141 | 63 |
| 11/1/2010 | 12/1/2010 | Alternate Living Expenses | FPL | Rental House - Electric | 293 | 130 |
| 11/30/2010 | 12/30/2010 | Alternate Living Expenses | Palm Beach County Water | Rental House - Water | 125 | 55 |
| 12/3/2010 | 1/2/2011 | Alternate Living Expenses | FPL | Rental House - Electric | 242 | 107 |
| 12/27/2010 | 1/26/2011 | Alternate Living Expenses | FPL | Rental House - Electric | 324 | 141 |
| 1/14/2011 | 2/13/2011 | Alternate Living Expenses | Expert Carpet Cleaner | Rental House | 155 | 67 |
| 7/8/2010 | 8/7/2010 | Alternate Living Expenses | Universal Property & Casualty | Rental Insurance | 717 | 333 |
| 3/1/2011 | 3/31/2011 | Alternate Living Expenses | Elite Relocation Moving and Storage | Load at Storage | 700 | 298 |
| 2/8/2011 | 3/10/2011 | Alternate Living Expenses | Elite Relocation Moving and Storage | Load & Move | 1,353 | 580 |
| 11/23/2010 | 12/23/2010 | Alternate Living Expenses | Elite Relocation Moving and Storage | Pack, Load & Move | 5,875 | 2,592 |
| | | **Alternate Living Expenses Total** | | | $ 37,795 | $ 17,030 |
| 11/20/2009 | 12/20/2009 | Personal Property Damage Expense | SanMar Service Corp. | A/C Repair | $ 966 | $ 485 |
| | | **Personal Property Damages Expense Total** | | | $ 966 | $ 485 |

Exhibit 20.3A
Calculation of Prejudgment Interest Detail - Jennifer & Marc Wites

Chinese Drywall Litigation Involving Priority Claimants

| Damage Date | Measurement Date | Damage Component | Amount | 12/31/2009 | 12/31/2010 | 9/30/2011 | 12/31/2011 | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 3/31/2016 | 6/30/2016 | 9/30/2016 | 12/31/2016 | 3/31/2017 | 6/30/2017 | 9/30/2017 | 12/31/2017 | 3/31/2018 | 6/30/2018 | 9/30/2018 | 12/31/2018 | 7/22/2019 | Total Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/2/2010 | 7/2/2010 | Remediation | $ 24,105 | $ - | $ 721 | $ 1,082 | $ 289 | $ 1,145 | $ 1,145 | $ 1,145 | 285 | $ 286 | $ 293 | $ 298 | $ 295 | $ 303 | $ 314 | $ 325 | $ 329 | $ 344 | $ 363 | $ 370 | $ 849 | $ 11,325 |
| 6/2/2010 | 7/2/2010 | Remediation | 1,475 | - | 44 | 66 | 18 | 70 | 70 | 70 | 17 | 18 | 18 | 18 | 19 | 19 | 20 | 20 | 21 | 22 | 23 | 52 | 693 |
| 9/28/2010 | 10/28/2010 | Remediation | 24,105 | - | 254 | 1,082 | 289 | 1,145 | 1,145 | 1,145 | 285 | 286 | 293 | 298 | 295 | 303 | 314 | 325 | 329 | 344 | 363 | 370 | 849 | 10,858 |
| 10/15/2010 | 11/14/2010 | Remediation | 48,210 | - | 373 | 2,164 | 577 | 2,290 | 2,290 | 2,290 | 569 | 573 | 587 | 595 | 591 | 607 | 628 | 650 | 657 | 688 | 725 | 740 | 1,697 | 21,581 |
| 11/3/2010 | 12/3/2010 | Remediation | 48,210 | - | 222 | 2,164 | 577 | 2,290 | 2,290 | 2,290 | 569 | 573 | 587 | 595 | 591 | 607 | 628 | 650 | 657 | 688 | 725 | 740 | 1,697 | 21,430 |
| 2/9/2011 | 3/11/2011 | Remediation | 72,315 | - | 2,413 | 866 | 3,435 | 3,435 | 3,435 | 854 | 859 | 880 | 893 | 886 | 910 | 942 | 975 | 986 | 1,031 | 1,088 | 1,110 | 2,546 | 30,980 |
| 3/8/2011 | 4/7/2011 | Remediation | 24,105 | - | 697 | 289 | 1,145 | 1,145 | 1,145 | 285 | 286 | 293 | 298 | 295 | 303 | 314 | 325 | 329 | 344 | 363 | 370 | 849 | 10,220 |
| 2/12/2011 | 3/14/2011 | Remediation | 1,868 | - | 61 | 22 | 89 | 89 | 89 | 22 | 22 | 23 | 23 | 23 | 24 | 24 | 25 | 25 | 27 | 28 | 29 | 66 | 799 |
| 2/12/2011 | 3/14/2011 | Remediation | 250 | - | 8 | 3 | 12 | 12 | 12 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 4 | 9 | 107 |
| 2/12/2011 | 3/14/2011 | Remediation | 1,518 | - | 50 | 18 | 72 | 72 | 72 | 18 | 18 | 18 | 19 | 19 | 19 | 20 | 20 | 21 | 22 | 23 | 23 | 53 | 650 |
| 2/12/2011 | 3/14/2011 | Remediation | 486 | - | 16 | 6 | 23 | 23 | 23 | 6 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 7 | 7 | 7 | 17 | 208 |
| 2/12/2011 | 3/14/2011 | Remediation | 462 | - | 15 | 6 | 22 | 22 | 22 | 5 | 5 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 16 | 198 |
| 2/12/2011 | 3/14/2011 | Remediation | 289 | - | 10 | 3 | 14 | 14 | 14 | 3 | 3 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 10 | 124 |
| 2/12/2011 | 3/14/2011 | Remediation | 1,472 | - | 48 | 18 | 70 | 70 | 70 | 17 | 17 | 18 | 18 | 18 | 19 | 19 | 20 | 20 | 21 | 22 | 23 | 52 | 630 |
| 2/12/2011 | 3/14/2011 | Remediation | 581 | - | 19 | 7 | 28 | 28 | 28 | 7 | 7 | 7 | 7 | 7 | 8 | 8 | 8 | 8 | 8 | 9 | 9 | 20 | 249 |
| 2/12/2011 | 3/14/2011 | Remediation | 812 | - | 27 | 10 | 39 | 39 | 39 | 10 | 10 | 10 | 10 | 10 | 10 | 11 | 11 | 11 | 12 | 12 | 12 | 29 | 348 |
| 2/12/2011 | 3/14/2011 | Remediation | 6,000 | - | 197 | 72 | 285 | 285 | 285 | 71 | 71 | 73 | 74 | 74 | 76 | 78 | 81 | 82 | 86 | 90 | 92 | 211 | 2,567 |
| 2/12/2011 | 3/14/2011 | Remediation | 3,367 | - | 111 | 40 | 160 | 160 | 160 | 40 | 40 | 41 | 42 | 41 | 42 | 44 | 45 | 46 | 48 | 51 | 52 | 119 | 1,441 |
| 2/12/2011 | 3/14/2011 | Remediation | 600 | - | 20 | 7 | 28 | 29 | 29 | 29 | 7 | 7 | 7 | 7 | 7 | 8 | 8 | 8 | 8 | 9 | 9 | 21 | 257 |
| 2/12/2011 | 3/14/2011 | Remediation | 130 | - | 4 | 2 | 6 | 6 | 6 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 56 |
| 2/12/2011 | 3/14/2011 | Remediation | 140 | - | 5 | 2 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 60 |
| 2/12/2011 | 3/14/2011 | Remediation | 495 | - | 16 | 6 | 24 | 24 | 24 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 7 | 7 | 8 | 17 | 212 |
| 2/12/2011 | 3/14/2011 | Remediation | 106 | - | 3 | 1 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 4 | 45 |
| | | Remediation Total | $ 261,102 | $ - | $ 1,613 | $ 10,279 | $ 3,126 | $ 12,402 | $ 12,402 | $ 12,402 | 3,084 | $ 3,103 | $ 3,177 | $ 3,223 | $ 3,200 | $ 3,287 | $ 3,402 | $ 3,521 | $ 3,560 | $ 3,724 | $ 3,929 | $ 4,008 | $ 9,192 | $ 115,037 |
| 5/27/2010 | 6/26/2010 | Alternate Living Expenses | $ 4,480 | $ - | $ 138 | $ 201 | $ 54 | $ 213 | $ 213 | $ 213 | 53 | $ 53 | $ 55 | $ 55 | $ 55 | $ 56 | $ 58 | $ 60 | $ 61 | $ 64 | $ 67 | $ 69 | $ 158 | $ 2,109 |
| 7/6/2010 | 8/5/2010 | Alternate Living Expenses | 110 | - | 3 | 5 | 1 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 4 | 51 |
| 7/12/2010 | 8/11/2010 | Alternate Living Expenses | 51 | - | 1 | 2 | 1 | 2 | 2 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 24 |
| 5/27/2010 | 6/26/2010 | Alternate Living Expenses | 1,900 | - | 59 | 86 | 23 | 91 | 91 | 91 | 23 | 23 | 23 | 24 | 24 | 24 | 25 | 26 | 26 | 27 | 29 | 29 | 68 | 904 |
| 8/11/2010 | 9/10/2010 | Alternate Living Expenses | 3,200 | - | 59 | 144 | 38 | 152 | 152 | 152 | 38 | 38 | 39 | 39 | 39 | 40 | 42 | 43 | 44 | 46 | 48 | 49 | 113 | 1,467 |
| 9/17/2010 | 10/17/2010 | Alternate Living Expenses | 9,600 | - | 118 | 431 | 115 | 456 | 456 | 456 | 113 | 114 | 117 | 118 | 118 | 121 | 125 | 129 | 131 | 137 | 144 | 147 | 338 | 4,342 |
| 12/9/2010 | 1/8/2011 | Alternate Living Expenses | 3,200 | - | 139 | 38 | 152 | 152 | 152 | 38 | 38 | 39 | 39 | 39 | 40 | 42 | 43 | 44 | 46 | 48 | 49 | 113 | 1,404 |
| 12/14/2010 | 1/13/2011 | Alternate Living Expenses | 3,200 | - | 137 | 38 | 152 | 152 | 152 | 38 | 38 | 39 | 39 | 39 | 40 | 42 | 43 | 44 | 46 | 48 | 49 | 113 | 1,401 |
| 11/22/2010 | 12/22/2010 | Alternate Living Expenses | 118 | - | 0 | 5 | 1 | 6 | 6 | 6 | 6 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 4 | 52 |
| 6/15/2010 | 7/15/2010 | Alternate Living Expenses | 150 | - | 4 | 7 | 2 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 70 |
| 6/15/2010 | 7/15/2010 | Alternate Living Expenses | 439 | - | 12 | 20 | 5 | 21 | 21 | 21 | 5 | 5 | 5 | 5 | 5 | 6 | 6 | 6 | 6 | 6 | 7 | 7 | 15 | 205 |
| 8/11/2010 | 9/10/2010 | Alternate Living Expenses | 118 | - | 2 | 5 | 1 | 6 | 6 | 6 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 4 | 54 |
| 8/11/2010 | 9/10/2010 | Alternate Living Expenses | 335 | - | 6 | 15 | 4 | 16 | 16 | 16 | 16 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 12 | 154 |
| 8/24/2010 | 9/23/2010 | Alternate Living Expenses | 319 | - | 5 | 14 | 4 | 15 | 15 | 15 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 11 | 146 |
| 8/27/2010 | 9/26/2010 | Alternate Living Expenses | 100 | - | 2 | 5 | 1 | 5 | 5 | 5 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 2 | 2 | 4 | 46 |
| 9/28/2010 | 10/28/2010 | Alternate Living Expenses | 147 | - | 2 | 7 | 2 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 66 |
| 9/28/2010 | 10/28/2010 | Alternate Living Expenses | 381 | - | 4 | 17 | 5 | 18 | 18 | 18 | 18 | 4 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 6 | 6 | 13 | 172 |
| 11/21/2010 | 12/1/2010 | Alternate Living Expenses | 141 | - | 1 | 6 | 2 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 63 |
| 11/1/2010 | 12/1/2010 | Alternate Living Expenses | 293 | - | 1 | 13 | 4 | 14 | 14 | 14 | 14 | 3 | 3 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 10 | 130 |
| 11/30/2010 | 12/30/2010 | Alternate Living Expenses | 125 | - | 0 | 6 | 1 | 6 | 6 | 6 | 1 | 1 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 4 | 55 |
| 11/23/2010 | 12/1/2010 | Alternate Living Expenses | 242 | - | 11 | 3 | 12 | 12 | 12 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 4 | 4 | 9 | 107 |
| 12/27/2010 | 1/26/2011 | Alternate Living Expenses | 324 | - | 13 | 4 | 15 | 15 | 15 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 11 | 141 |
| 1/14/2011 | 2/13/2011 | Alternate Living Expenses | 155 | - | 6 | 2 | 7 | 7 | 7 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 5 | 67 |
| 7/8/2010 | 8/7/2010 | Alternate Living Expenses | 717 | - | 17 | 32 | 9 | 34 | 34 | 34 | 8 | 9 | 9 | 9 | 9 | 9 | 10 | 10 | 10 | 11 | 11 | 25 | 333 |
| 3/1/2011 | 3/31/2011 | Alternate Living Expenses | 700 | - | 21 | 8 | 33 | 33 | 33 | 8 | 8 | 8 | 9 | 9 | 10 | 10 | 11 | 11 | 11 | 12 | 12 | 25 | 298 |
| 2/8/2011 | 3/10/2011 | Alternate Living Expenses | 1,353 | - | 45 | 16 | 64 | 64 | 64 | 16 | 16 | 16 | 17 | 17 | 17 | 18 | 18 | 18 | 19 | 20 | 21 | 48 | 580 |
| 11/23/2010 | 12/23/2010 | Alternate Living Expenses | 5,875 | - | 8 | 264 | 70 | 279 | 279 | 279 | 69 | 70 | 71 | 73 | 72 | 74 | 77 | 79 | 80 | 84 | 88 | 90 | 207 | 2,592 |
| | | Alternate Living Expenses Total | $ 37,795 | $ - | $ 443 | $ 1,657 | $ 452 | $ 1,795 | $ 1,795 | $ 1,795 | 446 | $ 449 | $ 460 | $ 466 | $ 463 | $ 476 | $ 493 | $ 510 | $ 515 | $ 539 | $ 567 | $ 580 | $ 1,331 | $ 17,030 |
| 11/20/2009 | 12/20/2009 | Personal Property Damage Expense | $ 966 | $ 2 | $ 58 | $ 43 | $ 12 | $ 46 | $ 46 | $ 46 | 11 | $ 11 | $ 12 | $ 12 | $ 12 | $ 12 | $ 13 | $ 13 | $ 13 | $ 14 | $ 14 | $ 15 | $ 34 | $ 485 |
| | | Personal Property Damages Expense Total | $ 966 | $ 2 | $ 58 | $ 43 | $ 12 | $ 46 | $ 46 | $ 46 | 11 | $ 11 | $ 12 | $ 12 | $ 12 | $ 12 | $ 13 | $ 13 | $ 13 | $ 14 | $ 14 | $ 15 | $ 34 | $ 485 |

Assumptions:

| | 12/31/2009 | 12/31/2010 | 12/31/2011 | 12/31/2012 | 12/31/2013 | 12/31/2014 | 12/31/2015 | 3/31/2016 | 6/30/2016 | 9/30/2016 | 12/31/2016 | 3/31/2017 | 6/30/2017 | 9/30/2017 | 12/31/2017 | 3/31/2018 | 6/30/2018 | 9/30/2018 | 12/31/2018 | 7/22/2019 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Florida Statutory Interest Rates** | | | | | | | | | | | | | | | | | | | | |
| Annual | 8.00% | 6.00% | 6.00% | 4.75% | 4.75% | 4.75% | 4.75% | 4.75% | 4.75% | 4.78% | 4.84% | 4.91% | 4.97% | 5.05% | 5.17% | 5.35% | 5.53% | 5.72% | 5.97% | 6.09% | 6.33% |
| Per Diem | 0.0219200% | 0.0164400% | 0.0164400% | 0.0130137% | 0.0129781% | 0.0130137% | 0.0130137% | 0.0130137% | 0.0129781% | 0.0130601% | 0.0132240% | 0.0134153% | 0.0136164% | 0.0138356% | 0.0141643% | 0.0146575% | 0.0151507% | 0.0156712% | 0.0163562% | 0.0166849% | 0.0173425% |

Page 1 of 1

20.A
Documents and Other Information Considered - Marc & Jennifer Wites

*Chinese Drywall Litigation Involving Priority Claimants*

| | | | Bate Stamp (if applicable) | |
|---|---|---|---|---|
| No. | Claimant | General Description | First Page | Last Page |

**A. Pleadings and Other Legal Documents:**

| | | | | |
|---|---|---|---|---|
| 1 | All | Judge Cooke's Order, dated November 16, 2018 | | |
| 2 | Wites | Claimant Jennifer Wites Answers to Defendant's Second Set of Interrogatories, dated December 4, 2018 | | |
| 3 | Wites | Claimant Marc Wites Answers to Defendant's Second Set of Interrogatories, dated December 4, 2018 | | |
| 4 | Wites | Claimant Jennifer Wites Answers to Defendant's Interrogatories, dated November 30, 2018 | | |
| 5 | Wites | Claimant Marc Wites Answers to Defendant's Interrogatories, dated November 30, 2018 | | |
| 6 | Wites | Claimant Marc Wites Supplemental Plaintiff Profile Form | | |

**B. Depositions & Corresponding Exhibits:**

| | | | | |
|---|---|---|---|---|
| 1 | Wites | Deposition Transcript of Marc Wites, dated January 10, 2019 | | |
| 2 | Wites | Deposition Transcript of Jennifer Wites, dated January 10, 2019 | | |
| 3 | Wites | Deposition Exhibit 01 - Warranty Deed Book 21844/Page 1881 through 1882 | | |
| 4 | Wites | Deposition Exhibit 02 - Palm Beach County Property Appraiser Public Records | | |
| 5 | Wites | Deposition Exhibit 03 - Plaintiff Profile Form - Residential Properties | WITES, M 000001 | WITES, M 000008 |
| 6 | Wites | Deposition Exhibit 04 - Inspection Report 8/30/2009 | MWITES - 000082 | MWITES - 000082 |
| 7 | Wites | Deposition Exhibit 05 - Supplemental Plaintiff Profile Form | | |
| 8 | Wites | Deposition Exhibit 06 - Marc and Jennifer Wites Damages Summary | | |
| 9 | Wites | Deposition Exhibit 07 - A1A Document A105 - 2007 Standard Form of Agreement Between Owner and Contractor | | |
| 10 | Wites | Deposition Exhibit 08 - Chart of Expenses Deductible Pursuant to IRS Bulletin on Chinese Drywall | MWITES - 000001 | MWITES - 000103 |
| 11 | Wites | Deposition Exhibit 09 - Photographs | WITES, M 000208 | WITES, M 000269 |
| 12 | Wites | Deposition Exhibit 10 - Photographs | Taishan-Wites000001 | Taishan-Wites000062 |
| 13 | Wites | Deposition Exhibit 11 - Remediation Estimates | | |
| 14 | Wites | Deposition Exhibit 12 - Documents Regarding Chapter 558 Construction Defect Notice | | |
| 15 | Wites | Deposition Exhibit 13 - Documents Regarding Credit Inquiries | | |
| 16 | Wites | Deposition Exhibit 14 - Documents Regarding Palm Beach County Property Taxes | | |
| 17 | Wites | Deposition Exhibit 15 - Documents Regarding Building Permits | | |

**C. Supporting Documentation**

| | | | | |
|---|---|---|---|---|
| 1 | Wites | Marc and Jennifer Wites Damages Summary (prepared by Counsel), dated January 23, 2019 | | |
| 2 | Wites | MWITES - (000701-000706) Utility Bills 2 | MWITES - 000701 | MWITES - 000706 |
| 3 | Wites | MWITES - (000698-000700) FPL Bill | MWITES - 000698 | MWITES - 000700 |
| 4 | Wites | MWITES - (000690-000697) Utility Bills 1 | MWITES - 000690 | MWITES - 000697 |
| 5 | Wites | MWITES - (000341-000376) - Wites Income Tax 2010 | MWITES - 000341 | MWITES - 000376 |
| 6 | Wites | MWITES - (000199) - Work Order from San Mar Service Corp | MWITES - 000199 | MWITES - 000199 |
| 7 | Wites | MWITES - (000197) - Check to Mizner Country Club | MWITES - 000197 | MWITES - 000197 |

20.A
Documents and Other Information Considered - Marc & Jennifer Wites

*Chinese Drywall Litigation Involving Priority Claimants*

*Bate Stamp (if applicable)*

| No. | Claimant | General Description | First Page | Last Page |
|-----|----------|---------------------|------------|-----------|
| 8 | Wites | MWITES - (000191-000196) - Residential Lease Agreement | MWITES - 000191 | MWITES - 000196 |
| 9 | Wites | MWITES - (000092-000093) - Wachovia Report (Rental House Pool Payments) | MWITES - 000092 | MWITES - 000093 |
| 10 | Wites | MWITES - (000091) - Oppenheimer All Activity Report Xpert Carpet Care (Rental House) | MWITES - 000091 | MWITES - 000091 |
| 11 | Wites | MWITES - (000088-000089) - Oppenheimer All Activity Report Elke Gallichio | MWITES - 000088 | MWITES - 000089 |
| 12 | Wites | MWITES - (000086-000087) - Universal Property and Casualty Insurance Tenant Policy | MWITES - 000086 | MWITES - 000087 |
| 13 | Wites | MWITES - (000085) - Fax from Elite Relocation Inc | MWITES - 000085 | MWITES - 000085 |
| 14 | Wites | MWITES - (000084) - Check to Elite Relocation Inc | MWITES - 000084 | MWITES - 000084 |
| 15 | Wites | MWITES - (000083) - Bill from Elite Relocation Inc | MWITES - 000083 | MWITES - 000083 |
| 16 | Wites | MWITES - (000082) - Inspection Report 8-30-09 | MWITES - 000082 | MWITES - 000082 |
| 17 | Wites | MWITES - (000081) - Check to Kirk Bauer | MWITES - 000081 | MWITES - 000081 |
| 18 | Wites | MWITES - (000080) - Invoice for Printing and Blueprints | MWITES - 000080 | MWITES - 000080 |
| 19 | Wites | MWITES - (000077-000079) - Merchant Summary from American Express | MWITES - 000077 | MWITES - 000079 |
| 20 | Wites | MWITES - (000076) - Statement from Hawkeye Home Inspection | MWITES - 000076 | MWITES - 000076 |
| 21 | Wites | MWITES - (000075) - Oppenheimer All Activity Report Elite Relocation Inc | MWITES - 000075 | MWITES - 000075 |
| 22 | Wites | MWITES - (000074) - Oppenheimer All Activity Report Hawkeye Inspection | MWITES - 000074 | MWITES - 000074 |
| 23 | Wites | MWITES - (000073) - Oppenheimer All Activity Report E-Z Permits | MWITES - 000073 | MWITES - 000073 |
| 24 | Wites | MWITES - (000068-000072) - Checks for B4 and After | MWITES - 000068 | MWITES - 000072 |
| 25 | Wites | MWITES - (000067) - Oppenheimer All Activity Report B4 & After | MWITES - 000067 | MWITES - 000067 |
| 26 | Wites | MWITES - (000066) - Oppenheimer All Activity Report Entry Portfolio for Construction | MWITES - 000066 | MWITES - 000066 |
| 27 | Wites | MWITES - (000065) - Checks to B4 & After General Contractors | MWITES - 000065 | MWITES - 000065 |
| 28 | Wites | MWITES - (000059-000064) - B4 & After Quote and Scope of Work | MWITES - 000059 | MWITES - 000064 |
| 29 | Wites | MWITES - (000048-000058) - AIA Document A100 - 2007 | MWITES - 000048 | MWITES - 000058 |
| 30 | Wites | MWITES - (000045-000047) - B4 & After Contractors Quote | MWITES - 000045 | MWITES - 000047 |
| 31 | Wites | MWITES - (000037-000043) - Elite Relocation Invoices and Checks | MWITES - 000037 | MWITES - 000043 |
| 32 | Wites | MWITES - (000034-000035) - Hawkeye Home Inspection Receipts | MWITES - 000034 | MWITES - 000035 |
| 33 | Wites | MWITES - (000031-000032) - Letter and Invoice Re AC at Rental Property | MWITES - 000031 | MWITES - 000032 |
| 34 | Wites | MWITES - (000030) - Rental Check August 2010 | MWITES - 000030 | MWITES - 000030 |
| 35 | Wites | MWITES - (000029) - Letter to Elkie Gallichio Re August 2010 Rent | MWITES - 000029 | MWITES - 000029 |
| 36 | Wites | MWITES - (000028) - Letter to Elkie Gallichio Re Lease | MWITES - 000028 | MWITES - 000028 |
| 37 | Wites | MWITES - (000004-000005) - EE&G Industrial Hygiene Services | MWITES - 000004 | MWITES - 000005 |
| 38 | Wites | MWITES - (000094) Water (July-November 2010) | MWITES - 000094 | MWITES - 000094 |
| 39 | Wites | MWITES - (000097) FPL (July-December 2010) | MWITES - 000097 | MWITES - 000097 |
| 40 | Wites | MWITES - (000100) Dec 2010 and Jan 2011 Rent Checks | MWITES - 000100 | MWITES - 000100 |

Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 383 of 802
Case 1:11-cv-22408-MGC Document 272-1 Entered on FLSD Docket 09/15/2013 Page 262 of
262

20.A
Documents and Other Information Considered - Marc & Jennifer Wites

*Chinese Drywall Litigation Involving Priority Claimants*

*Bate Stamp (if applicable)*

| No. | Claimant | General Description | First Page | Last Page |
|-----|----------|---------------------|------------|-----------|
| 41 | Wites | MWITES - (000104) 2010 May Rent Checks | MWITES - 000104 | MWITES - 000104 |

# EXHIBIT B

Explanation of Revisions on Exhibits 1 - 20 (Revised)
Priority Claimants
April 26, 2019

---

*Chinese Drywall Litigation Involving Priority Claimants*

The exhibits to the Report of Michael P. Elkin dated February 19, 2019 have been revised based on further consideration of items identified during the March 11 and March 12, 2019 deposition of Michael Elkin; corresponding extended review of documents and claimant testimony; consideration of adjustments and commentary in the March 25, 2019 report and April 15, 2019 deposition testimony of Marcie Bour; and additional communication with Claimant's Counsel. The revisions have not been based on any additional documentation.

The adjustments for each Priority Claimant are described on the following pages and the aggregate amounts changed are summarized in the table below:

|  | Before Revisions | After Revisions | Change |
|---|---|---|---|
| **Damage Summary:** |  |  |  |
| Full or Partial Out-of-Pocket Remediation Expenses | $ 1,975,279 | $ 2,023,263 | $ 47,985 |
| Other Damages |  |  |  |
| Alternate Living Expenses | $ 616,488 | $ 600,803 | $ (15,685) |
| Personal Property Damage Expense | 429,441 | 345,524 | (83,917) |
| Additional Damages | 138,825 | 138,625 | (200) |
|  | $ 1,184,754 | $ 1,084,952 | $ (99,802) |
| Lost Equity | $ 3,320,857 | $ 3,225,076 | $ (95,780) |

For each Priority Claimant the exhibits relating to calculations of prejudgment interest have been removed. As referenced in his deposition and in his report, Elkin will not be offering expert opinions on prejudgment interest. Rather, prejudgment interest exhibits had been prepared to offer the framework through which prejudgment interest would be calculated. Elkin testified that he expects that "the court will determine which elements of damage, if any, are subject to prejudgment interest, and will determine the relevant measurement dates." Elkin also expects that the court will determine which offsets, if any, should be considered in determining prejudgment interest.

Explanation of Revisions on Exhibit 1 (Revised)
Janet Avery
April 26, 2019

*Chinese Drywall Litigation Involving Priority Claimants*

The accompanying exhibits have been revised based on further consideration of items identified during the March 11 and March 12, 2019 deposition of Michael Elkin; corresponding extended review of documents and claimant testimony; consideration of adjustments and commentary in the March 25, 2019 report and April 15, 2019 deposition testimony of Marcie Bour; and additional communication with Claimant's Counsel.  The revisions have not been based on any additional documentation.

The adjustments are described below and are denoted with asterisks on the corresponding exhibits and the amounts changed are summarized in the following table:

| | Before Revisions | After Revisions | Change |
|---|---|---|---|
| **Damage Summary:** | | | |
| Full or Partial Out-of-Pocket Remediation Expenses | $          - | $          - | $          - |
| Other Damages | | | |
| Alternate Living Expenses | $     14,822 | $     11,322 | $     (3,500) |
| Personal Property Damage Expense | 284 | 284 | - |
| Additional Damages | - | - | - |
| | $     15,106 | $     11,606 | $     (3,500) |
| Lost Equity | $   115,365 | $   112,989 | $     (2,376) |

Exhibit 1 (Revised) – Data and Damage Summary
- Alternate Living Expenses have been revised from $14,822 to $11,322 to reflect the adjustments on Exhibit 1.1 (Revised) and described below.
- Lost Equity has been revised from $115,365 to $112,989 to reflect the adjustments on Exhibit 1.2 (Revised) and described below.

Exhibit 1.1 (Revised) – Damage Claims Detail
   Alternate Living Expenses
- 3/8/2010 – Moving expense of $3,500 was removed based on further consideration by Claimant's Counsel

Exhibit 1.2 (Revised) – Lost Equity
- Made adjustments to reduce Lost Equity by $2,376 from $115,365 to $112,989 to reflect adjustments from closing statement at purchase.

Removed exhibits relating to calculation of Prejudgment Interest.

Explanation of Revisions on Exhibit 2 (Revised)
Lillian Chatmon
April 26, 2019

*Chinese Drywall Litigation Involving Priority Claimants*

| | Before Revisions | After Revisions | *Change* |
|---|---|---|---|
| **Damage Summary:** | | | |
| Full or Partial Out-of-Pocket Remediation Expenses | $ - | $ - | *$* - |
| Other Damages | | | |
| Alternate Living Expenses | $ 23,940 | $ 23,940 | *$* - |
| Personal Property Damage Expense | 943 | 943 | - |
| Additional Damages | - | - | - |
| | $ 24,883 | $ 24,883 | *$* - |

Removed exhibits relating to calculation of Prejudgment Interest.

Explanation of Revisions on Exhibit 3 (Revised)
David Deeg & Deborah Hooker
April 26, 2019

*Chinese Drywall Litigation Involving Priority Claimants*

The accompanying exhibits have been revised based on further consideration of items identified during the March 11 and March 12, 2019 deposition of Michael Elkin; corresponding extended review of documents and claimant testimony; consideration of adjustments and commentary in the March 25, 2019 report and April 15, 2019 deposition testimony of Marcie Bour; and additional communication with Claimant's Counsel.  The revisions have not been based on any additional documentation.

The adjustments are described below and are denoted with asterisks on the corresponding exhibits and the amounts changed are summarized in the following table:

| | Before Revisions | After Revisions | Change |
|---|---|---|---|
| Damage Summary: | | | |
| Full or Partial Out-of-Pocket Remediation Expenses | $ - | $ - | $ - |
| Other Damages | | | |
| Alternate Living Expenses | $ - | $ - | $ - |
| Personal Property Damage Expense | 38,261 | 38,261 | - |
| Additional Damages | - | - | - |
| | $ 38,261 | $ 38,261 | $ - |
| Lost Equity | $ 93,918 | $ 93,022 | $ (896) |

Exhibit 3 (Revised) – Data and Damage Summary
• Lost Equity has been revised from $93,918 to $93,022 to reflect the adjustments on Exhibit 3.2 (Revised) and described below.

Exhibit 3.2 (Revised) – Lost Equity
• Made adjustments to reduce Lost Equity by $896 from $93,918 to $93,022 to reflect adjustments from closing statement at sale.

Removed exhibits relating to calculation of Prejudgment Interest.

1

Explanation of Revisions on Exhibit 4 (Revised)
Steven & Cathy Etter
April 26, 2019

*Chinese Drywall Litigation Involving Priority Claimants*

The accompanying exhibits have been revised based on further consideration of items identified during the March 11 and March 12, 2019 deposition of Michael Elkin; corresponding extended review of documents and claimant testimony; consideration of adjustments and commentary in the March 25, 2019 report and April 15, 2019 deposition testimony of Marcie Bour; and additional communication with Claimant's Counsel.  The revisions have not been based on any additional documentation.

The adjustments are described below and are denoted with asterisks on the corresponding exhibits and the amounts changed are summarized in the following table:

|  | Before Revisions | After Revisions | Change |
|---|---|---|---|
| **Damage Summary:** |  |  |  |
| Full or Partial Out-of-Pocket Remediation Expenses | $ 966,570 | $ 1,005,015 | $ 38,446 |
| Other Damages |  |  |  |
| Alternate Living Expenses | $ 46,242 | $ 46,037 | $ (205) |
| Personal Property Damage Expense | 46,687 | 8,241 | (38,446) |
| Additional Damages | - | - | - |
|  | $ 92,929 | $ 54,279 | $ (38,651) |
| Lost Equity | $ 66,284 | $ 57,831 | $ (8,453) |

Exhibit 4 (Revised) – Data and Damage Summary
- Full or Partial Out-of-Pocket Remediation Expenses has been revised from $966,570 to $1,005,015 to reflect the reclassification adjustments on Exhibit 4.1 (Revised) and described below.
- Alternate Living Expenses have been revised from $46,242 to $46,037 to reflect the adjustments on Exhibit 4.1 (Revised) and described below.
- Personal Property Damage Expense has been revised from $46,687 to $8,241 to reflect the reclassification adjustments on Exhibit 4.1 (Revised) and described below.
- Lost Equity has been revised from $66,284 to $57,831 to reflect the adjustments on Exhibit 4.2 (Revised) and described below.

Exhibit 4.1 (Revised) – Damage Claims Detail
Full or Partial Out-of-Pocket Remediation Expenses
- Reclassified following items totaling $38,446 to Full or Partial Out-of-Pocket Remediation from Personal Property Damage Expense:
  - 12/15/2012 Chinese Drywall Screening - $3,100
  - 1/23/2013 Chinese Drywall Screening - $1,900
  - 4/2/2013  Lowe's – Vanity Sink - $157
  - 4/26/2013 Accurate Tile & Marble – Floor - $3,225
  - 4/29/2013 Leeds Custom Cabinets – Cabinets - $6,900
  - 5/27/2013 HomeGoods – Mirror Bath #3 - $57

1

Explanation of Revisions on Exhibit 4 (Revised)
Steven & Cathy Etter
April 26, 2019

*Chinese Drywall Litigation Involving Priority Claimants*

                o   5/31/2013 Home Depot – Laundry Countertops - $41
                o   5/31/2013 Home Depot – Laundry Countertops - $221
                o   5/31/2013 We'll Floor U – Floor - $1,040
                o   5/31/2013 Jetson Ice Maker – Ice Machine - $2,061
                o   6/6/2013 Capitol Lighting – Lights - $259
                o   7/9/2013 Millers – Cabinet Hardware - $275
                o   7/15/2013 Broadell's – Kitchen Sink - $624
                o   7/16/2013 Accurate Tile & Marble – Floor - $3,412
                o   7/17/2013 Accurate Tile & Marble – Floor - $4,080
                o   7/31/2013 Related Expenses – Replace 6 Rheostats - $675
                o   7/31/2013 Related Expenses – A/C Coil Replacement - $7,575
                o   8/6/2013 Millers – Cabinet Hardware - $318
                o   8/7/2013 We'll Floor U – Closets - $1,444
                o   8/22/2013 Residential Elevators - $375
                o   8/26/2013 Decorative Products, Inc.- $455
                o   4/9/2015 Chinese Drywall Screening – Evidence Storage - $250

Alternate Living Expenses
- 12/4/2012 ADT - $74 was adjusted from $114 based on a handwritten note about a $41 credit applied.
- 1/7/2013 Comcast - $164 - Changed the date from 12/24/2012 to 1/7/2013 to reflect the date of payment
- 1/23/2013 Comcast - $54 was adjusted from $218 and the date was changed from 2/24/2013 to 1/23/2013.
- 2/24/2013 Comcast – Changed the date from 3/6/2013 to 2/24/2013.

Personal Property Damage Expense
- Reclassified items detailed above totaling $38,446 from Personal Property Damage Expense to Full or Partial Out-of-Pocket Remediation.

Exhibit 4.2 (Revised) – Lost Equity
- Made adjustments to reduce Lost Equity by $8,453 from $66,284 to $57,831 to reflect adjustments from closing statement at sale.

Removed exhibits relating to calculation of Prejudgment Interest.

Explanation of Revisions on Exhibit 5 (Revised)
Andrew & Dawn Feldkamp
April 26, 2019

---

*Chinese Drywall Litigation Involving Priority Claimants*

The accompanying exhibits have been revised based on further consideration of items identified during the March 11 and March 12, 2019 deposition of Michael Elkin; corresponding extended review of documents and claimant testimony; consideration of adjustments and commentary in the March 25, 2019 report and April 15, 2019 deposition testimony of Marcie Bour; and additional communication with Claimant's Counsel.  The revisions have not been based on any additional documentation.

The adjustments are described below and are denoted with asterisks on the corresponding exhibits and the amounts changed are summarized in the following table:

| | Before Revisions | After Revisions | Change |
|---|---|---|---|
| **Damage Summary:** | | | |
| Full or Partial Out-of-Pocket Remediation Expenses | $ - | $ - | $ - |
| Other Damages | | | |
|     Alternate Living Expenses | $ 37,989 | $ 36,639 | $ (1,350) |
|     Personal Property Damage Expense | 970 | 970 | - |
|     Additional Damages | - | - | - |
| | $ 38,959 | $ 37,609 | $ (1,350) |
| Lost Equity | $ 9,064 | $ 9,064 | $ - |

Exhibit 5 (Revised) – Data and Damage Summary
- Alternate Living Expenses have been revised from $37,989 to $36,639 to reflect the adjustments on Exhibit 5.1 (Revised) and described below.

Exhibit 5.1 (Revised) – Damage Claims Detail
    Alternate Living Expenses
- 4/13/2012 Premier Realty Solutions – App Fee + Deposit - $75 was adjusted from $375 to remove deposit portion
- 4/26/2012 Linda Bays – Deposit - $0 was adjusted from $450 to remove deposit.
- 4/26/2012 Premier Realty Solutions - $900 was adjusted from $1,500 to remove portion for last month's rent

Removed exhibits relating to calculation of Prejudgment Interest.

1

Explanation of Revisions on Exhibit 6 (Revised)
William & Vicki Foster
April 26, 2019

*Chinese Drywall Litigation Involving Priority Claimants*

The accompanying exhibits have been revised based on further consideration of items identified during the March 11 and March 12, 2019 deposition of Michael Elkin; corresponding extended review of documents and claimant testimony; consideration of adjustments and commentary in the March 25, 2019 report and April 15, 2019 deposition testimony of Marcie Bour; and additional communication with Claimant's Counsel.  The revisions have not been based on any additional documentation.

The adjustments are described below and are denoted with asterisks on the corresponding exhibits and the amounts changed are summarized in the following table:

|  | Before Revisions | After Revisions | Change |
|---|---|---|---|
| **Damage Summary:** |  |  |  |
| Full or Partial Out-of-Pocket Remediation Expenses | $  144,466 | $  154,063 | $  9,596 |
| Other Damages |  |  |  |
| Alternate Living Expenses | $  44,531 | $  43,510 | $  (1,021) |
| Personal Property Damage Expense | 99,051 | 71,423 | (27,628) |
| Additional Damages | 94,728 | 94,528 | (200) |
|  | $  238,310 | $  209,461 | $  (28,849) |

Exhibit 6 (Revised) – Data and Damage Summary
- Full or Partial Out-of-Pocket Remediation Expenses has been revised from $144,466 to $154,063 to reflect the reclassification and other adjustments on Exhibit 6.1 (Revised) and described below.
- Alternate Living Expenses have been revised from $44,531 to $43,510 to reflect the adjustments on Exhibit 6.1 (Revised) and described below.
- Personal Property Damage Expense has been revised from $99,051 to $71,423 to reflect the adjustments on Exhibit 6.1 (Revised) and described below.
- Additional Damages has been revised from $94,728 to $94,528 to reflect the adjustments on Exhibit 6.1 (Revised) and described below

Exhibit 6.1 (Revised) – Damage Claims Detail
Full or Partial Out-of-Pocket Remediation Expenses
- 6/17/2012 – Build.com – Outdoor Lighting Fixtures - $0 - Reclassified from Personal Property Damages and adjusted from prior amount of $292
- 6/28/2012 – Lighting New York – Golden Lighting Rockefeller Minio Pendant - $185 - Reclassified from Personal Property Damages
- 7/2/2012 – Lighting New York – Lighting Fixtures - $243 - Reclassified from Personal Property Damages
- 7/3/2012 – The Kiefer Companies – Brass Hooks for Chandelier - $34 – Revised source information
- 8/2/2012 – Lowes – Ceiling Fan - $363 –Changed description
- 8/5/2012 – Lighting New York – Various Fans – Family Room - $491 - Reclassified from Personal Property Damages
- 8/5/2012 – Lighting New York – Various Fans – Family Room - $471 - Reclassified from Personal Property Damages

Explanation of Revisions on Exhibit 6 (Revised)
William & Vicki Foster
April 26, 2019

*Chinese Drywall Litigation Involving Priority Claimants*

- 8/5/2012 – Build.com – Single Light Small Outdoor Fixture - $0 - Reclassified from Personal Property Damages and adjusted from prior amount of $108
- 8/20/2012 – Amazon – Moen Kitchen Faucet - $100 – Reclassified from Personal Property Damages
- 10/8/2012 – Macco-Hadinger LLC – Flooring - $1,352 – Changed description
- 10/27/2012 – Build.com – Handset Interior Lever - $0 - Reclassified from Personal Property Damages and adjusted from prior amount $158
- 10/29/2012 – Budget Blinds - $5,084 - Reclassified from Personal Property Damages
- 11/2/2012 – Budget Blinds - $2,450 - Reclassified from Personal Property Damages
- 11/7/2012 - Macco-Hadinger LLC – Flooring - $715 – Changed description
- 11/7/2012 – The Home Depot – Toilets - $549 – Changed description
- 4/25/2013 – Lowes – Garage Cabinets - $753 – Reclassified from Personal Property Damages
- See Personal Property Expense section for detail of items reclassified from remediation expenses.

Alternate Living Expenses
- 1/27/2010 – FPL – Electric Bills Paid – Colonial Country - $29 – Adjusted from $50 to reflect a $21 credit
- 7/7/2011 – Jack Walsh – Rent/Deposit Removed - $1,358 – Adjusted from $2,358 to reflect the $1,000 portion of the payment that was a deposit
- 7/9/2011 – Sherwin Williams - $26 and 7/12/2011 – U-Haul Moving & Storage – Moving Expenses - $59 - Adjusted to correct transposition error.

Personal Property Damage Expense
- 10/1/2009 – StormTech Shutters, Inc. – Storm Shutters - $0 – The previous amount of $8,030 has been removed per discussion with Claimant's counsel.
- 11/15/2009 – Best Buy – Computer, Router, etc. – Original amount of $2,745 was broken out to reflect the cost of the Computer, Router, etc. ($2,321) and the cost of the warranty ($424) separately.  The warranty portion was removed.
- 11/12/2010 – Touch of Class – Serenity Wall Sculpture - $0 – This item was reduced to $0 from $265 as it is a duplicate of the wall sculpture listed for 11/15/2010
- 6/13/2013 Apple – iPad Mini Wi-Fi 32GB Black – Original amount of $601 was broken out to reflect the cost of the iPad ($496) and the cost of the warranty ($105) separately.  The warranty portion was removed.
- 11/5/2013 – Affordable Golf Carts – Golf Cart - $0 - The previous amount of $8,651 has been removed per discussion with Claimant's counsel.
- 8/17/2017 – Time Shop – Grandfather Clock Repair – $180 – This was reclassified from remediation expenses.
- See remediation expense section for detail of items reclassified from personal property to remediation.

Additional Damages
- 11/23/2015 – Heathmore Apartments – Hold Deposit for 2016 Apartment - $0 from $200– This is a deposit and was removed from damages.

Removed exhibits relating to calculation of Prejudgment Interest.

Explanation of Revisions on Exhibit 7 (Revised)
Anthony & Candace Gody
April 26, 2019

*Chinese Drywall Litigation Involving Priority Claimants*

The accompanying exhibits have been revised based on further consideration of items identified during the March 11 and March 12, 2019 deposition of Michael Elkin; corresponding extended review of documents and claimant testimony; consideration of adjustments and commentary in the March 25, 2019 report and April 15, 2019 deposition testimony of Marcie Bour; and additional communication with Claimant's Counsel.  The revisions have not been based on any additional documentation.

The adjustments are described below and are denoted with asterisks on the corresponding exhibits and the amounts changed are summarized in the following table:

| | Before Revisions | After Revisions | Change |
|---|---|---|---|
| Damage Summary: | | | |
| Full or Partial Out-of-Pocket Remediation Expenses | $ 153,262 | $ 153,205 | $ (57) |
| Other Damages | | | |
| Alternate Living Expenses | $ 60,522 | $ 55,180 | $ (5,342) |
| Personal Property Damage Expense | 17,852 | 17,799 | (53) |
| Additional Damages | - | - | - |
| | $ 78,374 | $ 72,979 | $ (5,395) |

Exhibit 7 (Revised) – Data and Damage Summary
- Remediation status was changed from Partial to Complete
- Full or Partial Out-of-Pocket Remediation Expenses has been revised from $153,262 to $153,205 to reflect the reclassification and other adjustments on Exhibit 7.1 (Revised) and described below
- Alternate Living Expenses have been revised from $60,522 to $55,180 to reflect the adjustments on Exhibit 7.1 (Revised) and described below.
- Personal Property Damage Expense has been revised from $17,852 to $17,799 to reflect the adjustments on Exhibit 7.1 (Revised) and described below.

Exhibit 7.1 (Revised) – Damage Claims Detail
Full or Partial Out-of-Pocket Remediation Expenses
- 5/25/2012 – Comcast - $0 – Adjusted from $57 as this amount appears to be subsumed in another Comcast entry on the same date.

Alternate Living Expenses
- Descriptions have been changed for all items on Exhibit 7.1 (Revised) where the Description is presented in parenthesis.
- 6/22/2010 to 7/14/2010 - Entries for Groceries in Lieu of Rent – totaling $292 – The previous amount totaling $584 was reduced by 50% per discussion with Claimant's counsel.
- 7/6/2010 – HomeGoods – (Dinnerware, Cookware, and Bakeware) - $114 – Removed $13 of gourmet food items that was combined with household goods on this receipt which totaled $127.
- 7/14/2010 – Marshalls – (Gourmet Food, Toddler Items, and Giftware) - $0 – Removed this $29 item per discussion with Claimant's counsel.

1

Explanation of Revisions on Exhibit 7 (Revised)
Anthony & Candace Gody
April 26, 2019

*Chinese Drywall Litigation Involving Priority Claimants*

- 7/15/2010 – Costco – (Cleaning Supplies, Napkins, Kleenex, Shoe Rack, Paper Towels, Shelves, Baskets, and etc.) - $211 – Removed $11 of food items that was combined with household goods on this receipt which totaled $222.
- 7/31/2010 – Dick's Sporting Goods – (Golf Equipment) – $0 - Removed per discussion with Claimant's counsel.
- 8/16/2010 – Voss TV & Appliances – Alt Home – Voss Unknown – $0 – Removed this $591 gas grill per discussion with Claimant's counsel.
- 8/19/2010 – Lowe's - (Step Stool, Storage Basket, Polishing Cloth, Grill Accessories and etc.) - $75 – Removed $33 of items related to grill accessories that was combined with other items totaled $108.
- 8/21/2010 – Marshalls – (Toddler Items and Giftware) - $0 – Removed this $93 item per discussion with Claimant's Counsel.
- 8/25/2010 – Belsky LTD – Alt Home – Gas Line - $0 – Removed this $300 item for the installation of a gas line per discussion with Claimant's counsel.
- 9/26/2010 – Mortgage Modification Fee - $0 – Removed this $1,500 item.
- 12/14/2010 – Remnant World - (Times Squares Rocking Horse) - $0 – Removed this $149 item.
- 6/22/2011 – Villa Rental – John Miller – $900 – Removed a $200 deposit from the $1,100 rental payment.
- 7/2/2011 – 7/26/2011 – Travel - Meals/Groceries - $0 – Removed 14 items totaling $522.
- 7/18/2011 - City Mattress – Travel – Bedding - $0 – Removed the cost of this mattress purchased to use at the Villa rental from damages per discussion with Claimant's counsel.

Personal Property Damage Expense
- 8/4/2008 – Best Buy – Wine Cooler. – Original amount of $469 was broken out to reflect the cost of the Wine Cooler ($416) and the cost of the warranty ($53) separately.  The warranty portion was removed.

Removed exhibits relating to calculation of Prejudgment Interest.

Explanation of Revisions on Exhibit 8 (Revised)
David & Diane Griffin
April 26, 2019

*Chinese Drywall Litigation Involving Priority Claimants*

The accompanying exhibits have been revised based on further consideration of items identified during the March 11 and March 12, 2019 deposition of Michael Elkin; corresponding extended review of documents and claimant testimony; consideration of adjustments and commentary in the March 25, 2019 report and April 15, 2019 deposition testimony of Marcie Bour; and additional communication with Claimant's Counsel.  The revisions have not been based on any additional documentation.

The adjustments are described below and are denoted with asterisks on the corresponding exhibits and the amounts changed are summarized in the following table:

|  | Before Revisions | After Revisions | Change |
|---|---|---|---|
| Damage Summary: |  |  |  |
| Full or Partial Out-of-Pocket Remediation Expenses | $ - | $ - | $ - |
| Other Damages |  |  |  |
| Alternate Living Expenses | $ - | $ - | $ - |
| Personal Property Damage Expense | - | - | - |
| Additional Damages | 38,500 | 38,500 | - |
|  | $ 38,500 | $ 38,500 | $ - |
| Lost Equity | $ 113,034 | $ 104,298 | $ (8,736) |

**Exhibit 8 (Revised) – Data and Damage Summary**
- Lost Equity has been revised from $113,034 to $104,298 to reflect the adjustments on Exhibit 8.2 (Revised) and described below.

**Exhibit 8.2 (Revised) – Lost Equity**
- Made adjustments to reduce Lost Equity by $8,736 from $113,034 to $104,298 to reflect adjustments from closing statement at purchase.
- Did not make adjustments from the closing statement at sale as Closing Agent Letter states "seller paid closing costs not to exceed $9,121.54 and potential adjustments would not have changed the closing costs required to be paid by seller at close.

Removed exhibits relating to calculation of Prejudgment Interest.

Explanation of Revisions on Exhibit 9 (Revised)
John & Bertha Hernandez
April 26, 2019

*Chinese Drywall Litigation Involving Priority Claimants*

| | Before Revisions | After Revisions | Change |
|---|---|---|---|
| **Damage Summary:** | | | |
| Full or Partial Out-of-Pocket Remediation Expenses | $ 381,784 | $ 381,784 | $ - |
| | | | |
| Other Damages | | | |
| Alternate Living Expenses | $ 41,802 | $ 41,802 | $ - |
| Personal Property Damage Expense | 3,454 | 3,454 | - |
| Additional Damages | - | - | - |
| | $ 45,256 | $ 45,256 | $ - |

Removed exhibits relating to calculation of Prejudgment Interest.

Explanation of Revisions on Exhibit 10 (Revised)
Gus & Deborah Lalwani
April 26, 2019

*Chinese Drywall Litigation Involving Priority Claimants*

The accompanying exhibits have been revised based on further consideration of items identified during the March 11 and March 12, 2019 deposition of Michael Elkin; corresponding extended review of documents and claimant testimony; consideration of adjustments and commentary in the March 25, 2019 report and April 15, 2019 deposition testimony of Marcie Bour; and additional communication with Claimant's Counsel.  The revisions have not been based on any additional documentation.

The adjustments are described below and are denoted with asterisks on the corresponding exhibits and the amounts changed are summarized in the following table:

|  | Before Revisions | After Revisions | Change |
|---|---|---|---|
| **Damage Summary:** |  |  |  |
| Full or Partial Out-of-Pocket Remediation Expenses | $ - | $ - | $ - |
| Other Damages |  |  |  |
| Alternate Living Expenses | $ - | $ - | $ - |
| Personal Property Damage Expense | - | - | - |
| Additional Damages | - | - | - |
|  | $ - | $ - | $ - |
| Lost Equity | $ 381,320 | $ 380,614 | $ (706) |

Exhibit 10 (Revised) – Data and Damage Summary
- Lost Equity has been revised from $381,320 to $380,614 to reflect the adjustments on Exhibit 10.2 (Revised) and described below.

Exhibit 10.2 (Revised) – Lost Equity
- Made adjustments to reduce Lost Equity by $706 from $381,320 to $380,614 to reflect adjustments from closing statement at sale.

Removed exhibits relating to calculation of Prejudgment Interest.

Explanation of Revisions on Exhibit 11 (Revised)
Cassandra Marin
April 26, 2019

*Chinese Drywall Litigation Involving Priority Claimants*

The accompanying exhibits have been revised based on further consideration of items identified during the March 11 and March 12, 2019 deposition of Michael Elkin; corresponding extended review of documents and claimant testimony; consideration of adjustments and commentary in the March 25, 2019 report and April 15, 2019 deposition testimony of Marcie Bour; and additional communication with Claimant's Counsel.  The revisions have not been based on any additional documentation.

The adjustments are described below and are denoted with asterisks on the corresponding exhibits and the amounts changed are summarized in the following table:

| | Before Revisions | After Revisions | Change |
|---|---|---|---|
| **Damage Summary:** | | | |
| Full or Partial Out-of-Pocket Remediation Expenses | $ - | $ - | $ - |
| Other Damages | | | |
|    Alternate Living Expenses | $ - | $ - | $ - |
|    Personal Property Damage Expense | 575 | 575 | - |
|    Additional Damages | - | - | - |
| | $ 575 | $ 575 | $ - |
| Lost Equity | $ 198,451 | $ 196,017 | $ (2,434) |

Exhibit 11 (Revised) – Data and Damage Summary
- Lost Equity has been revised from $198,451 to $196,017 to reflect the adjustments on Exhibit 11.2 (Revised) and described below.

Exhibit 11.2 (Revised) – Lost Equity
- Made adjustments to reduce Lost Equity by $2,434 from $198,451 to $196,017 to reflect adjustments from closing statement at sale.
- Did not make adjustments for $156 for Line 211. County Taxes reflected on closing statement at purchase as this amount was not included in the initial calculation of settlement charges.

Removed exhibits relating to calculation of Prejudgment Interest.

Explanation of Revisions on Exhibit 12 (Revised)
Dailyn Martinez
April 26, 2019

*Chinese Drywall Litigation Involving Priority Claimants*

The accompanying exhibits have been revised based on further consideration of items identified during the March 11 and March 12, 2019 deposition of Michael Elkin; corresponding extended review of documents and claimant testimony; consideration of adjustments and commentary in the March 25, 2019 report and April 15, 2019 deposition testimony of Marcie Bour; and additional communication with Claimant's Counsel.  The revisions have not been based on any additional documentation.

The adjustments are described below and are denoted with asterisks on the corresponding exhibits and the amounts changed are summarized in the following table:

|  | Before Revisions | After Revisions | Change |
|---|---|---|---|
| **Damage Summary:** |  |  |  |
| Full or Partial Out-of-Pocket Remediation Expenses | $        - | $        - | $        - |
| Other Damages |  |  |  |
| Alternate Living Expenses | $   12,199 | $   8,399 | $   (3,800) |
| Personal Property Damage Expense | 55,302 | 41,761 | (13,541) |
| Additional Damages | - | - | - |
|  | $   67,501 | $   50,160 | $   (17,341) |

**Exhibit 12 (Revised) – Data and Damage Summary**
- Alternate Living Expenses have been revised from $12,199 to $8,399 to reflect the adjustments on Exhibit 12.1 (Revised) and described below.
- Personal Property Damage Expense has been revised from $55,302 to $41,761 to reflect the adjustments on Exhibit 12.1 (Revised) and described below.

**Exhibit 12.1 (Revised) – Damage Claims Detail**
Alternate Living Expenses
- 11/16/2010 – D.E. Foeller Sales, Inc. – RV Purchase - $2,399 – Reduced from $4,399 to reflect Claimant's estimate of the amount the RV was ultimately sold for.
- 1/1/2013 – 6/1/2013 - 2011 Northeast 17th Place, Cape Coral – Rent - $1,800 – Reduced from $3,600 based on the lease agreement.

Personal Property Damage Expense
- Descriptions have been changed for all items on Exhibit 12.1 (Revised) where the Description is presented in parenthesis.
- Damage amounts have been either removed or adjusted for the following items:
  - These items totaling $8,214 have been reduced to $0 because they were purchased before the Claimants moved into the affected home.  If the item was damaged and replaced, the cost of the replacement is already included in the analysis and including these items would be inappropriate.
    - 4/1/2007 – Lowes – Refrigerator - was $1,905
    - 6/30/2007 – Home Depot – Wine Cooler – was $321
    - 7/16/2007 – Home Depot – Tractor – was $2331
    - 8/20/2007 – Samsung – Refrigerator – was $1,774
    - 8/22/2007 – Lowes – Refrigerator – was $1,544

1

Case 2:09-md-02047-EEF-MBN   Document 22380-36   Filed 12/02/19   Page 301 of 802
Case 1:09-cv-02402-MGC   Document 272-1   Entered on FLSD Docket 05/13/2019   Page 18 of
172

Explanation of Revisions on Exhibit 12 (Revised)
Dailyn Martinez
April 26, 2019

*Chinese Drywall Litigation Involving Priority Claimants*

- 6/16/2008 – Circuit City – Printer (HP Deskjet) – was $64
- 7/17/2008 – Lowes – Miscellaneous – was $115
- 7/17/2008 – Lowes - (Extended Protection Plan 4 years - Warranty) – was $159

o  Based on more detailed information available in existing discovery the following line items were adjusted to only include certain items from the total receipts or to correct the amount.  In many cases the descriptions were also refined.

- 11/26/2009 – Walmart – Wii and Wii -Warranty - Original amount of $234 was broken out to reflect the cost of the Wii ($214) and the cost of the warranty ($20) separately. The warranty portion was removed.
- 9/23/2010 – Home Depot - (EC Blower) – $159 – was $181
- 2/8/2011 – BJ's – (Blender) - $30 – was $138
- 3/23/2011 – Staples – (Miscellaneous (Printer Ink)) - $0 – was $22
- 6/6/2011 – Walmart – (Fan) - $20 – was 29
- 8/4/2011 - Walmart – (Fan) - $39 – was $174
- 10/16/2011 – Belk – (Sport Coats) - $0 – was $85
- 11/25/2011 – Belk – (Jewelry and Music System) - $82 – was $158
- 5/25/2012 – Belk (Earrings, necklaces and bracelets) - $38 – was $86
- 12/31/2012 – Best Buy - (Television) and (Television – Warranty) – Original amount of $1,134 was broken out to reflect the cost of the Television ($954) and the cost of the warranty ($180) separately.  The warranty portion was removed.
- 4/4/2013 – Bed Bath & Beyond – (Kitchen Pans - Calphalon 10-piece set) - $0 – was $127
- 5/23/2013 – Lowes – (Trimmer and Blower) - $260 – was $333
- 6/10/2013 – Gulf Coast Cell Phones - $468 – was $543 to remove the Metro Bill (and tax) portion of the receipt.
- 7/26/2013 – BJ's – (Desktop Computer) - $226 – was $281
- 8/17/2013 – BJ's – (Blender) - $40 – was $52
- 8/18/2013 – Target - (Epson Color - Printer Ink) - $0 – was $42
- 8/19/2013 - Lowes - (Washer, Dryer) and (Washer, Dryer – Warranty) – Original amount of $4,034 was reduced to only reflect the Washer, Dryer and the item was broken out to reflect the cost of the Washer, Dryer ($2,230) and the cost of the warranty ($191) separately.  The warranty portion was removed.
- 8/28/2013 – Walmart – (Styling Iron & Kitchen Set) - $157 – was $742
- 1/23/2014 – Leyna Enterprises of Florida – Pozo 100Ft (Water Well) - $0 – was $900
- 1/7/2015 - Lowes - (Washer and Dryer) and (Washer and Dryer – Warranty) – Original amount of $1,710 was broken out to reflect the cost of the Washer and Dryer ($1,589) and the cost of the warranty ($121) separately.  The warranty portion was removed.
- 2/4/2015 – Florida Appliance Service AF– Repair Refrigerator - $0 – was $588
- 4/8/2015 – Florida Appliance Service AF – Replace Rear Rollers Dryer - $0 – was $197
- 3/13/2018 – Sears – (Filters for Refrigerator) – $0 – was $42 -  corrected date from 3/13/2008
- 3/13/2018 – Sears – (Microwave) -  amount unchanged but corrected date from 3/13/2008

Removed exhibits relating to calculation of Prejudgment Interest.

2

Explanation of Revisions on Exhibit 13 (Revised)
Jose & Adela Miranda
April 26, 2019

*Chinese Drywall Litigation Involving Priority Claimants*

The accompanying exhibits have been revised based on further consideration of items identified during the March 11 and March 12, 2019 deposition of Michael Elkin; corresponding extended review of documents and claimant testimony; consideration of adjustments and commentary in the March 25, 2019 report and April 15, 2019 deposition testimony of Marcie Bour; and additional communication with Claimant's Counsel.  The revisions have not been based on any additional documentation.

The adjustments are described below and are denoted with asterisks on the corresponding exhibits and the amounts changed are summarized in the following table:

| | Before Revisions | After Revisions | Change |
|---|---|---|---|
| **Damage Summary:** | | | |
| Full or Partial Out-of-Pocket Remediation Expenses | $          - | $          - | $          - |
| Other Damages | | | |
| Alternate Living Expenses | $          - | $          - | $          - |
| Personal Property Damage Expense | - | - | - |
| Additional Damages | 5,500 | 5,500 | - |
| | $     5,500 | $     5,500 | $          - |
| Lost Equity | $   41,756 | $   35,792 | $   (5,964) |

**Exhibit 13 (Revised) – Data and Damage Summary**
- Lost Equity has been revised from $41,756 to $35,792 to reflect the adjustments on Exhibit 13.2 (Revised) and described below.

**Exhibit 13.2 (Revised) – Lost Equity**
- Made adjustments to reduce Lost Equity by $5,964 from $41,756 to $35,792 to reflect adjustments from closing statement at purchase.

Removed exhibits relating to calculation of Prejudgment Interest.

Explanation of Revisions on Exhibit 14 (Revised)
Tracy Nguyen & Mai Tuyen
April 26, 2019

*Chinese Drywall Litigation Involving Priority Claimants*

| | Before Revisions | After Revisions | Change |
|---|---|---|---|
| **Damage Summary:** | | | |
| Full or Partial Out-of-Pocket Remediation Expenses | $ 68,095 | $ 68,095 | $ - |
| Other Damages | | | |
| Alternate Living Expenses | $ 54,000 | $ 54,000 | $ - |
| Personal Property Damage Expense | 463 | 463 | - |
| Additional Damages | - | - | - |
| | $ 54,463 | $ 54,463 | $ - |

Removed exhibits relating to calculation of Prejudgment Interest.

Explanation of Revisions on Exhibit 15 (Revised)
Jeovany & Monica Nunez
April 26, 2019

*Chinese Drywall Litigation Involving Priority Claimants*

The accompanying exhibits have been revised based on further consideration of items identified during the March 11 and March 12, 2019 deposition of Michael Elkin; corresponding extended review of documents and claimant testimony; consideration of adjustments and commentary in the March 25, 2019 report and April 15, 2019 deposition testimony of Marcie Bour; and additional communication with Claimant's Counsel. The revisions have not been based on any additional documentation.

The adjustments are described below and are denoted with asterisks on the corresponding exhibits and the amounts changed are summarized in the following table:

| | Before Revisions | After Revisions | Change |
|---|---|---|---|
| **Damage Summary:** | | | |
| Full or Partial Out-of-Pocket Remediation Expenses | $ - | $ - | $ - |
| Other Damages | | | |
| Alternate Living Expenses | $ 105,733 | $ 105,733 | $ - |
| Personal Property Damage Expense | - | - | - |
| Additional Damages | - | - | - |
| | $ 105,733 | $ 105,733 | $ - |
| Lost Equity | $ 42,842 | $ 41,653 | $ (1,189) |

Exhibit 15 (Revised) – Data and Damage Summary
- Lost Equity has been revised from $42,842 to $41,653 to reflect the adjustments on Exhibit 11.2 (Revised) and described below.

Exhibit 15.2 (Revised) – Lost Equity
- Made adjustments to reduce Lost Equity by $1,189 from $42,842 to $41,653 to reflect adjustments from closing statement at purchase.

Removed exhibits relating to calculation of Prejudgment Interest.

Explanation of Revisions on Exhibit 16 (Revised)
Kelly & Lori O'Brien
April 26, 2019

*Chinese Drywall Litigation Involving Priority Claimants*
The accompanying exhibits have been revised based on further consideration of items identified during the March 11 and March 12, 2019 deposition of Michael Elkin; corresponding extended review of documents and claimant testimony; consideration of adjustments and commentary in the March 25, 2019 report and April 15, 2019 deposition testimony of Marcie Bour; and additional communication with Claimant's Counsel. The revisions have not been based on any additional documentation.

The adjustments are described below and are denoted with asterisks on the corresponding exhibits and the amounts changed are summarized in the following table:

|  | Before Revisions | After Revisions | Change |
|---|---|---|---|
| **Damage Summary:** |  |  |  |
|  |  |  |  |
| Full or Partial Out-of-Pocket Remediation Expenses | $ - | $ - | $ - |
|  |  |  |  |
| Other Damages |  |  |  |
| Alternate Living Expenses | $ 10,962 | $ 10,494 | $ (468) |
| Personal Property Damage Expense | 9,602 | 9,230 | (372) |
| Additional Damages | - | - | - |
|  | $ 20,564 | $ 19,724 | $ (840) |
|  |  |  |  |
| Lost Equity | $ 233,797 | $ 234,440 | $ 643 |

**Exhibit 16 (Revised) – Data and Damage Summary**
- Alternate Living Expenses have been revised from $10,962 to $10,494 to reflect the adjustments on Exhibit 16.1 (Revised) and described below.
- Personal Property Damage Expense has been revised from $9,602 to $9,230 to reflect the adjustments on Exhibit 16.1 (Revised) and described below.
- Lost Equity has been revised from $233,797 to $234,440 to reflect the adjustments on Exhibit 16.2 (Revised) and described below.

**Exhibit 16.1 (Revised) – Damage Claims Detail**
Alternate Living Expenses
- 11/1/2010 Suntrust – Mortgage Payment of $468 has been removed

Personal Property Damage Expense
- 1/13/2011 Famous Tate Appliance & Bedding Centers – Mattress Replacement – Original amount of $3,492 was broken out to reflect the cost of the Mattress ($3,120) and the cost of the warranty ($372) separately. The warranty portion was removed.

**Exhibit 16.2 (Revised) – Lost Equity**
- Made adjustments to increase Lost Equity by $643 from $233,797 to $234,440 to reflect:
  - an increase from adjustments from the closing statement at purchase of $794, and
  - a decrease from the adjustments from the closing statement at sale of $151.

Removed exhibits relating to calculation of Prejudgment Interest.

Explanation of Revisions on Exhibit 17 (Revised)
Michael & Robyn Rosen
April 26, 2019

*Chinese Drywall Litigation Involving Priority Claimants*

The accompanying exhibits have been revised based on further consideration of items identified during the March 11 and March 12, 2019 deposition of Michael Elkin; corresponding extended review of documents and claimant testimony; consideration of adjustments and commentary in the March 25, 2019 report and April 15, 2019 deposition testimony of Marcie Bour; and additional communication with Claimant's Counsel.  The revisions have not been based on any additional documentation.

The adjustments are described below and are denoted with asterisks on the corresponding exhibits and the amounts changed are summarized in the following table:

|  | Before Revisions | After Revisions | Change |
|---|---|---|---|
| **Damage Summary:** |  |  |  |
| Full or Partial Out-of-Pocket Remediation Expenses | $ - | $ - | $ - |
| Other Damages |  |  |  |
| Alternate Living Expenses | $ 29,167 | $ 29,167 | $ - |
| Personal Property Damage Expense | 101,618 | 97,741 | (3,877) |
| Additional Damages | - | - | - |
|  | $ 130,785 | $ 126,908 | $ (3,877) |
| Lost Equity | $ 1,192,583 | $ 1,165,541 | $ (27,042) |

**Exhibit 17 (Revised) – Data and Damage Summary**
- Personal Property Damage Expense has been revised from $101,618 to $97,741 to reflect the adjustments on Exhibit 17.1 (Revised) and described below.
- Lost Equity has been revised from $1,192,583 to $1,165,541 to reflect the adjustments on Exhibit 17.2 (Revised) and described below.

**Exhibit 17.1 (Revised) – Damage Claims Detail**
Personal Property Damage Expense
- 12/31/2006 – Turkell & Gervis Design – Tables – Living Room was adjusted from $3,867 to $353 to correct for an input error- $3,631.20 + tax ($3,867) should have been $331.20 + tax (352.73)
- 1/22/2007 – Turkell & Gervis Design – Placemats – Breakfast Nook of $362 has been removed.

**Exhibit 17.2 (Revised) – Lost Equity**
- Made adjustments to reduce Lost Equity by $27,042 from $1,192,583 to $1,165,541 to reflect:
  - a decrease from adjustments from the closing statement at purchase of $7,094, and
  - a decrease from adjustments from the closing statement at sale of $19,948.

Removed exhibits relating to calculation of Prejudgment Interest.

Explanation of Revisions on Exhibit 18 (Revised)
Kevin & Stacey Rosen
April 26, 2019

*Chinese Drywall Litigation Involving Priority Claimants*

The accompanying exhibits have been revised based on further consideration of items identified during the March 11 and March 12, 2019 deposition of Michael Elkin; corresponding extended review of documents and claimant testimony; consideration of adjustments and commentary in the March 25, 2019 report and April 15, 2019 deposition testimony of Marcie Bour; and additional communication with Claimant's Counsel.  The revisions have not been based on any additional documentation.

The adjustments are described below and are denoted with asterisks on the corresponding exhibits and the amounts changed are summarized in the following table:

| | Before Revisions | After Revisions | Change |
|---|---|---|---|
| **Damage Summary:** | | | |
| Full or Partial Out-of-Pocket Remediation Expenses | $        - | $        - | $        - |
| Other Damages | | | |
| Alternate Living Expenses | $   31,786 | $   31,786 | $        - |
| Personal Property Damage Expense | 22,482 | 22,482 | - |
| Additional Damages | 97 | 97 | - |
| | $   54,364 | $   54,364 | $        - |
| Lost Equity | $  782,563 | $  743,935 | $  (38,628) |

**Exhibit 18 (Revised) – Data and Damage Summary**
- Lost Equity has been revised from $782,563 to $743,935 to reflect the adjustments on Exhibit 18.2 (Revised) and described below.

**Exhibit 18.1 (Revised) – Damage Claims Detail**
Personal Property Damage Expense
- 8/11/2006 – City Mattress of Florida – Plush Mattress Pad and Pillows - $5,255 – The description, source information and related data were revised for information from supporting documentation in discovery.  No change to the amount.

**Exhibit 18.2 (Revised) – Lost Equity**
- Made adjustments to reduce Lost Equity by $38,628 from $782,563 to $743,935 to reflect:
  - a decrease from adjustments from the closing statement at purchase of $22,967,
  - a decrease from adjustments from the closing statement for refinancing of $16,073, and
  - an increase from an adjustment from the closing statement at sale of $412.

Removed exhibits relating to calculation of Prejudgment Interest.

Explanation of Revisions on Exhibit 19 (Revised)
Larry & Rosalee Walls
April 26, 2019

*Chinese Drywall Litigation Involving Priority Claimants*

|  | Before Revisions | After Revisions | Change |
|---|---|---|---|
| **Damage Summary:** |  |  |  |
| Full or Partial Out-of-Pocket Remediation Expenses | $         - | $         - | $         - |
| Other Damages |  |  |  |
| Alternate Living Expenses | $   65,000 | $   65,000 | $         - |
| Personal Property Damage Expense | 30,932 | 30,932 | - |
| Additional Damages | - | - | - |
|  | $   95,932 | $   95,932 | $         - |
| Lost Equity | $   49,880 | $   49,880 | $         - |

Removed exhibits relating to calculation of Prejudgment Interest.

Explanation of Revisions on Exhibit 20 (Revised)
Marc & Jennifer Wites
April 26, 2019

*Chinese Drywall Litigation Involving Priority Claimants*

|  | Before Revisions | After Revisions | Change |
|---|---|---|---|
| **Damage Summary:** |  |  |  |
| Full or Partial Out-of-Pocket Remediation Expenses | $ 261,102 | $ 261,102 | $ - |
| Other Damages |  |  |  |
| Alternate Living Expenses | $ 37,795 | $ 37,795 | $ - |
| Personal Property Damage Expense | 966 | 966 | - |
| Additional Damages | - | - | - |
|  | $ 38,761 | $ 38,761 | $ - |

Removed exhibits relating to calculation of Prejudgment Interest.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-22408-Civ-COOKE

EDUARDO AND CARMEN AMORIN, *et al.*,
individually and on behalf of others similarly
situated,

       Plaintiffs,

vs.

TAISHAN GYPSUM CO., LTD., f/k/a
SHANDONG TIASHE DONGXIN CO. LTD.,
*et al.*,

       Defendants.

_____

# Exhibit 1 (Revised)

**Calculations of Damages for Priority Claimant**

# Janet Avery

EXHIBIT TO THE EXPERT WITNESS REPORT OF:
MICHAEL P. ELKIN, CPA/CFF/ABV, CFE
IN THE PRIORITY CLAIMANT TRIAL

April 26, 2019



Exhibit 1 (Revised)
Data and Damage Summary - Janet Avery

*Chinese Drywall Litigation Involving Priority Claimants*

| Data: | | Reference / Notes |
|---|---|---|
| Address of Affected property | 10671 Camarelle Circle | *SPPF* |
| | Fort Myers, FL 33913 | *SPPF* |
| Date Affected property acquired | November 30, 2007 | *SPPF* |
| Date Chinese drywall installed | 2007 | *SPPF* |
| Date moved into Affected property | November 30, 2007 | *SPPF* |
| Date first aware of Chinese drywall | October-09 | *SPPF* |
| | | |
| Move out date to alternate living | March 8, 2010 | *ROG 1, #2* |
| Date returned to Affected property | N/A | *ROG 1, #2* |
| End date for alternate living expenses | July 21, 2011 | *ROG 1, #2* |
| | | |
| Still own property? | N | *SPPF* |
| Bankruptcy caused by damage? | N | *SPPF* |
| Foreclosure or short sale? | Y | *SPPF* |
| Affected property sold? | Y | *SPPF* |
| Sale date | July 21, 2011 | *SPPF* |
| Type of sale | Short Sale | *SPPF* |
| | | |
| Remediation status | None | *SPPF* |
| Remediation period | N/A | *SPPF* |

| Damage Summary: | | |
|---|---|---|
| Full or Partial Out-of-Pocket Remediation Expenses | $ - | |
| | | |
| Other Damages | | |
| Alternate Living Expenses | $ 11,322 | *Exh. 1.1 (Revised)* |
| Personal Property Damage Expense | 284 | *Exh. 1.1 (Revised)* |
| Additional Damages | - | |
| | $ 11,606 | |
| | | |
| Lost Equity | $ 112,989 | *Exh 1.2 (Revised)* |
| | | |
| Diminution in Value | TBD | |
| | | |
| Loss of Use and Enjoyment | TBD | |
| | | |
| Punitive Damages | TBD | |

Exhibit 1.1 (Revised)
Damage Claims Detail - Janet Avery

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|------|--------|-------------|--------|---|------|--------------|----------------|-------|------------------|--------------|
| Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | $ | 522 | 3/8/2010 | X | Lease Agreement | N/A | Doc ID: 365706 | 1 |
| Alternate Living Expenses | Moving Expenses | Moving Expenses | - | * | 3/8/2010 | X | SPPF | N/A | Exhibit 13 | 5 |
| Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | | 675 | 4/1/2010 | X | Lease Agreement | N/A | Doc ID: 365706 | 1 |
| Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | | 675 | 5/1/2010 | X | Lease Agreement | N/A | Doc ID: 365706 | 1 |
| Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | | 675 | 6/1/2010 | X | Lease Agreement | N/A | Doc ID: 365706 | 1 |
| Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | | 675 | 7/1/2010 | X | Lease Agreement | N/A | Doc ID: 365706 | 1 |
| Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | | 675 | 8/1/2010 | X | Lease Agreement | N/A | Doc ID: 365706 | 1 |
| Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | | 675 | 9/1/2010 | X | Lease Agreement | N/A | Doc ID: 365706 | 1 |
| Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | | 675 | 10/1/2010 | X | Lease Agreement | N/A | Doc ID: 365706 | 1 |
| Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | | 675 | 11/1/2010 | X | Lease Agreement | N/A | Doc ID: 365706 | 1 |
| Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | | 675 | 12/1/2010 | X | Lease Agreement | N/A | Doc ID: 365706 | 1 |
| Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | | 675 | 1/1/2011 | X | Lease Agreement | N/A | Doc ID: 365706 | 1 |
| Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | | 675 | 1/29/2011 | | Check | N/A | Doc ID: 365706 | 8 |
| Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | | 675 | 3/1/2011 | X | Lease Agreement | N/A | Doc ID: 365706 | 1 |
| Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | | 675 | 4/1/2011 | X | Lease Agreement | N/A | Doc ID: 365706 | 1 |
| Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | | 675 | 5/1/2011 | X | Lease Agreement | N/A | Doc ID: 365706 | 1 |
| Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | | 675 | 6/1/2011 | X | Lease Agreement | N/A | Doc ID: 365706 | 1 |
| Alternate Living Expenses | Ann Thompson (Landlord) | Monthly Lease Payments | | 675 | 7/1/2011 | X | Lease Agreement | N/A | Doc ID: 365706 | 1 |
| **Alternate Living Expenses Total** | | | $ | 11,322 | | | | | | |
| Personal Property Damage Expense | J & D Heating and Air Conditioning, Inc. | HVAC Repairs | $ | 100 | 4/22/2009 | | Invoice | N/A | Doc ID: 361251 | 1 |
| Personal Property Damage Expense | J & D Heating and Air Conditioning, Inc. | HVAC Repairs | | 184 | 8/28/2009 | | Invoice | N/A | Doc ID: 361251 | 1 |
| **Personal Property Damage Expense Total** | | | $ | 284 | | | | | | |

Exhibit 1.2 (Revised)
Lost Equity - Janet Avery

*Chinese Drywall Litigation Involving Priority Claimants*

| | | | | | Source Document |
|---|---|---|---|---|---|
| Initial Acquisition | | | | | |
| Purchase Price | | $ | 195,000 | | Doc ID. 178127 - HUD Statement dated 11/30/2007 |
| Settlement Charges | | | 7,859 | | Doc ID. 178127 - HUD Statement dated 11/30/2007 |
| Total Gross Amount Due from Claimant | | $ | 202,859 | | |
| | | | | | |
| Less | | | | | |
| Deposit Made by Claimant | | $ | (19,500) | | Doc ID. 178127 - HUD Statement dated 11/30/2007 |
| Borrowings by Claimant | | | (90,000) | | Doc ID. 178127 - HUD Statement dated 11/30/2007 |
| Credits | | | (100) | | Doc ID. 178127 - HUD Statement dated 11/30/2007 |
| Amount Due from Claimant at Close | | $ | 93,259 | | |
| | | | | | |
| Funds Paid by Claimant | | | | | |
| Deposit Paid with Contract | | $ | 19,500 | | Doc ID. 178127 - HUD Statement dated 11/30/2007 |
| Cash Paid at Closing | | | 93,259 | | Doc ID. 178127 - HUD Statement dated 11/30/2007 |
| Adjustments from Closing Statement at Purchase: | | | | | |
| Line 107.  County Taxes | | | (286) | * | Doc ID. 178127 - HUD Statement dated 11/30/2007 |
| Line 109.  Non Ad Valorem Taxes | | | (448) | * | Doc ID. 178127 - HUD Statement dated 11/30/2007 |
| Line 901.  Interest Charge | | | (16) | * | Doc ID. 178127 - HUD Statement dated 11/30/2007 |
| Line 903. Hazard Insurance Deposited | | | (536) | * | Doc ID. 178127 - HUD Statement dated 11/30/2007 |
| Line 1307.  Community Association Dues | | | (245) | * | Doc ID. 178127 - HUD Statement dated 11/30/2007 |
| Line 1308.  Community Association Dues | | | (195) | * | Doc ID. 178127 - HUD Statement dated 11/30/2007 |
| Line 1309.  Community Association Dues | | | (250) | * | Doc ID. 178127 - HUD Statement dated 11/30/2007 |
| Line 1310.  Community Association Dues | | | (401) | * | Doc ID. 178127 - HUD Statement dated 11/30/2007 |
| | | | | | |
| Adjusted Payments for Initial Purchase | a | $ | 110,383 | | |
| | | | | | |
| Mortgage | | | | | |
| Mortgage Beginning Balance | | $ | 90,000 | | Exhibit 8 - Fifth Third Statements and printouts |
| Mortgage Balance at Payoff | | | 87,394 | | Exhibit 8 - Fifth Third Statements and printouts |
| Principal Payments Made | b | $ | 2,606 | | |
| | | | | | |
| Loan for Capital Improvements | | | | | |
| Loan for Capital Improvements Beginning Balance | | $ | 25,000 | | 1st Amended Answers to Defendant's 2nd Set of Rogs |
| Loan for Capital Improvements Balance at Payoff [1] | | | 25,000 | | |
| Principal Payments Made | c | $ | - | | |
| | | | | | |
| Total Lost Equity | = a + b + c | $ | 112,989 | | |

Notes:
[1] Per the 1st Amended Answers to Defendant's Second Set of Rogs there was a loan taken out
in the amount of $25,000 for capital improvements.  To date no information has been provided to verify
the principal payments on this loan.  Should that information be provided this Lost Equity is subject
to change.

1.A
Documents and Other Information Considered - Janet Avery

*Chinese Drywall Litigation Involving Priority Claimants*

*Bate Stamp (if applicable)*

| No. | Claimant | General Description | First Page | Last Page |
|---|---|---|---|---|
| **A. Pleadings and Other Legal Documents:** | | | | |
| 1 | All | Judge Cooke's Order, dated November 16, 2018 | | |
| 2 | Avery | Priority Claimant Janet Avery Answers to Interrogatories, dated November 30, 2018 | | |
| 3 | Avery | Priority Claimant Janet Avery Answers to Defendant's Second Set of Interrogatories, dated November 30, 2018 | | |
| 4 | Avery | Priority Claimant Janet Avery First Amended Answers to Defendants' Second Set of Interrogatories, dated December 4, 2018 | | |
| 5 | Avery | Janet Avery Second Amended Supplemental Profile Plaintiff Profile Form, dated November 30, 2018 | | |
| **B. Depositions & Corresponding Exhibits:** | | | | |
| 1 | Avery | Deposition Transcript of Janet Avery, dated December 7, 2018 | | |
| 2 | Avery | Deposition Exhibit 01 - Lee County Property Appraiser - Online Parcel Inquiry - Property Data | | |
| 3 | Avery | Deposition Exhibit 02 - Priority Claimant Janet Avery's Answers to Defendants' Second Set of Interrogatories | | |
| 4 | Avery | Deposition Exhibit 03 - Priority Claimant Janet Avery's Answers to Interrogatories | | |
| 5 | Avery | Deposition Exhibit 04 - Floor Plan | | |
| 6 | Avery | Deposition Exhibit 05 - Drywall Inspection Report - Kross Inspectors | | |
| 7 | Avery | Deposition Exhibit 06 - Ericksons's Drying Systems - Chinese Drywall Inspection | | |
| 8 | Avery | Deposition Exhibit 07 - Mortgage | | |
| 9 | Avery | Deposition Exhibit 08 - ACE - Fifth Third Bank | | |
| 10 | Avery | Deposition Exhibit 09 - Claim of Lien | | |
| 11 | Avery | Deposition Exhibit 10 - Notice of Lis Pendens | | |
| 12 | Avery | Deposition Exhibit 11 - U.S. Department of Housing and Urban Development - Settlement Statement | | |
| 13 | Avery | Deposition Exhibit 12 - Release of Mortgage | | |
| 14 | Avery | Deposition Exhibit 13 - Second Amended Supplemental Plaintiff Profile Form | | |
| 15 | Avery | Deposition Exhibit 14 - Chinese Drywall Settlement Program - Copies of Checks | | |
| 16 | Avery | Deposition Exhibit 15 - Note - 10671 Camarelle Circle | | |
| 17 | Avery | Deposition Exhibit 16 - Affidavit of Madeline Davis | | |
| **C. Supporting Documentation** | | | | |
| 1 | Avery | Doc ID. 178127 - Affected Property Closing Statement, dated November 30, 2007 | | |
| 2 | Avery | Doc ID. 361251 - Avery HVAC Repairs by J&D Heating | | |
| 3 | Avery | Doc ID. 365706 - Avery Lease Agreement for Alternate Living Expenses | | |
| 4 | Avery | Doc ID. 365705 - Fifth Third Bank Mortgage Statement | | |
| 5 | Avery | Janet Avery Out of Pocket Damage Summary Provided by Counsel | | |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-22408-Civ-COOKE

EDUARDO AND CARMEN AMORIN, *et al.*,
individually and on behalf of others similarly
situated,

       Plaintiffs,

vs.

TAISHAN GYPSUM CO., LTD., f/k/a
SHANDONG TIASHE DONGXIN CO. LTD.,
*et al.*,

       Defendants.

_____

# Exhibit 2 (Revised)

### Calculations of Damages for Priority Claimant

# Lillian Chatmon

EXHIBIT TO THE EXPERT WITNESS REPORT OF:
MICHAEL P. ELKIN, CPA/CFF/ABV, CFE
IN THE PRIORITY CLAIMANT TRIAL

April 26, 2019



Exhibit 2
Data and Damage Summary - Lillian Chatmon

*Chinese Drywall Litigation Involving Priority Claimants*

| Data: | | Reference / Notes |
|---|---|---|
| Address of Affected property | 4151 Bismarck Palm Drive | *SPPF* |
| | Tampa, FL 33610 | *SPPF* |
| Date Affected property acquired | March 30, 2007 | *SPPF* |
| Date Chinese drywall installed | 2006 | *SPPF* |
| Date moved into Affected property | March 30, 2007 | *SPPF* |
| Date first aware of Chinese drywall | October-09 | *SPPF* |
| | | |
| Move out date to alternate living | April-10 | *ROG 1, #2* |
| Date returned to Affected property | Not Yet | *ROG 1, #2* |
| End date for alternate living expenses | Not Yet | *ROG 1, #2* |
| | | |
| Still own property? | Y | *SPPF* |
| Bankruptcy caused by damage? | N | *SPPF* |
| Foreclosure or short sale? | N | *SPPF* |
| Affected property sold? | N | *SPPF* |
| Sale date | N/A | *SPPF* |
| Type of sale | N/A | *SPPF* |
| | | |
| Remediation status | Partial | *Exh. 8* |
| Remediation period | After 12/4/2018 - Present | *Exh. 8* |

| Damage Summary: | | |
|---|---|---|
| | | |
| Full or Partial Out-of-Pocket Remediation Expenses | $                    - | |
| | | |
| Other Damages | | |
|    Alternate Living Expenses | $           23,940 | *Exh. 2.1* |
|    Personal Property Damage Expense | 943 | *Exh. 2.1* |
|    Additional Damages | - | |
| | $           24,883 | |
| | | |
|    Lost Equity | TBD | |
| | | |
|    Diminution in Value | TBD | |
| | | |
|    Loss of Use and Enjoyment | TBD | |
| | | |
| Punitive Damages | TBD | |

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 317 of 802
Case 1:11-cv-22408-MGC Document 272-1 Entered on FLSD Docket 05/13/2019 Page 34 of
172

Exhibit 2.1
Damage Claims Detail - Lillian Chatmon

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | $  150 | 4/1/2010 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 5/1/2010 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 6/1/2010 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 7/1/2010 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 8/1/2010 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 9/1/2010 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 10/1/2010 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 11/1/2010 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 12/1/2010 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 1/1/2011 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 2/1/2011 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 3/1/2011 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 4/1/2011 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 5/1/2011 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 6/1/2011 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 7/1/2011 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 8/1/2011 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 9/1/2011 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 10/1/2011 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 11/1/2011 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 150 | 12/1/2011 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 1/1/2012 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 2/1/2012 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 3/1/2012 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 4/1/2012 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 5/1/2012 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 6/1/2012 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 7/1/2012 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 8/1/2012 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 9/1/2012 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 10/1/2012 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 11/1/2012 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 12/1/2012 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 1/1/2013 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 2/1/2013 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |

Exhibit 2.1
Damage Claims Detail - Lillian Chatmon

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 3/1/2013 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 4/1/2013 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 5/1/2013 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 6/1/2013 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 7/1/2013 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 8/1/2013 | X | Claimant | Chatmon_000120 | Exhibit 09 | 1 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 9/1/2013 | X | Claimant | Chatmon_000121 | Exhibit 09 | 2 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 10/1/2013 | X | Claimant | Chatmon_000121 | Exhibit 09 | 2 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 11/1/2013 | X | Claimant | Chatmon_000121 | Exhibit 09 | 2 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 12/1/2013 | X | Claimant | Chatmon_000121 | Exhibit 09 | 2 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 1/1/2014 | X | Claimant | Chatmon_000121 | Exhibit 09 | 2 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 2/1/2014 | X | Claimant | Chatmon_000121 | Exhibit 09 | 2 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 3/1/2014 | X | Claimant | Chatmon_000121 | Exhibit 09 | 2 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 4/1/2014 | X | Claimant | Chatmon_000121 | Exhibit 09 | 2 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 5/1/2014 | X | Claimant | Chatmon_000121 | Exhibit 09 | 2 |
| Alternate Living Expenses | Sophia (oldest daughter) | Rental Payments | 200 | 6/1/2014 | X | Claimant | Chatmon_000121 | Exhibit 09 | 2 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 700 | 7/1/2014 | | Check | Chatmon_000137 | Exhibit 09 | 18 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 800 | 12/5/2014 | | Check | Chatmon_000138 | Exhibit 09 | 19 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 1/7/2015 | | Check | Chatmon_000139 | Exhibit 09 | 20 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 2/3/2015 | | Check | Chatmon_000140 | Exhibit 09 | 21 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 3/1/2015 | | Check | Chatmon_000141 | Exhibit 09 | 22 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 4/3/2015 | | Check | Chatmon_000142 | Exhibit 09 | 23 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 5/2/2015 | | Check | Chatmon_000143 | Exhibit 09 | 24 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 6/2/2015 | | Check | Chatmon_000144 | Exhibit 09 | 25 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 7/2/2015 | | Check | Chatmon_000145 | Exhibit 09 | 26 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 8/2/2015 | | Check | Chatmon_000146 | Exhibit 09 | 27 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 9/3/2015 | | Check | Chatmon_000147 | Exhibit 09 | 28 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 10/1/2015 | | Check | Chatmon_000148 | Exhibit 09 | 29 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 11/2/2015 | | Check | Chatmon_000149 | Exhibit 09 | 30 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 150 | 12/2/2015 | | Check | Chatmon_000150 | Exhibit 09 | 31 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 1/3/2016 | | Check | Chatmon_000151 | Exhibit 09 | 32 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 2/1/2016 | | Check | Chatmon_000152 | Exhibit 09 | 33 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 3/1/2016 | X | Claimant | Chatmon_000124 | Exhibit 09 | 5 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 4/2/2016 | | Check | Chatmon_000153 | Exhibit 09 | 34 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 150 | 5/1/2016 | | Check | Chatmon_000154 | Exhibit 09 | 35 |

Exhibit 2.1
Damage Claims Detail - Lillian Chatmon

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 1,300 | 7/26/2016 | | Check | Chatmon_000155 | Exhibit 09 | 36 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 12/1/2016 | X | Claimant | Chatmon_000124 | Exhibit 09 | 5 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 250 | 1/1/2017 | X | Claimant | Chatmon_000124 | Exhibit 09 | 5 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 250 | 2/1/2017 | X | Claimant | Chatmon_000124 | Exhibit 09 | 5 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 250 | 3/1/2017 | X | Claimant | Chatmon_000124 | Exhibit 09 | 5 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 250 | 4/1/2017 | X | Claimant | Chatmon_000124 | Exhibit 09 | 5 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 250 | 5/1/2017 | X | Claimant | Chatmon_000124 | Exhibit 09 | 5 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 250 | 6/1/2017 | X | Claimant | Chatmon_000124 | Exhibit 09 | 5 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 250 | 7/9/2017 | | Check | Chatmon_000160 | Exhibit 09 | 41 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 200 | 9/14/2017 | | Check | Chatmon_000159 | Exhibit 09 | 40 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 200 | 10/2/2017 | | Check | Chatmon_000158 | Exhibit 09 | 39 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 250 | 11/2/2017 | | Check | Chatmon_000157 | Exhibit 09 | 38 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 250 | 12/2/2017 | | Check | Chatmon_000156 | Exhibit 09 | 37 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 1/2/2018 | | Check | Chatmon_000136 | Exhibit 09 | 17 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 2/4/2018 | | Check | Chatmon_000135 | Exhibit 09 | 16 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 3/4/2018 | | Check | Chatmon_000134 | Exhibit 09 | 15 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 4/2/2018 | | Check | Chatmon_000133 | Exhibit 09 | 14 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 300 | 5/4/2018 | | Check | Chatmon_000132 | Exhibit 09 | 13 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 450 | 6/1/2018 | | Check | Chatmon_000131 | Exhibit 09 | 12 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 450 | 7/1/2018 | | Check | Chatmon_000130 | Exhibit 09 | 11 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 450 | 8/2/2018 | | Check | Chatmon_000129 | Exhibit 09 | 10 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 450 | 9/2/2018 | | Check | Chatmon_000128 | Exhibit 09 | 9 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 470 | 10/1/2018 | | Check | Chatmon_000127 | Exhibit 09 | 8 |
| Alternate Living Expenses | Kimberly Chatmon Cain | Rental Payments | 470 | 11/11/2018 | | Check | Chatmon_000126 | Exhibit 09 | 7 |
| **Alternate Living Expenses Total** | | | **$ 23,940** | | | | | | |
| Personal Property Damage Expense | Egg Systems Inc. | HVAC Repairs | $ 220 | 9/8/2008 | | Invoice | N/A | 113601 | 1 |
| Personal Property Damage Expense | Egg Systems Inc. | HVAC Repairs | 363 | 11/15/2008 | | Invoice | N/A | 113601 | 2 |
| Personal Property Damage Expense | Egg Systems Inc. | HVAC Repairs | 360 | 7/8/2009 | | Invoice | N/A | 113601 | 3 |
| **Personal Property Damage Expense Total** | | | **$ 943** | | | | | | |

2.A
Documents and Other Information Considered - Lillian Chatmon

*Chinese Drywall Litigation Involving Priority Claimants*

*Bate Stamp (if applicable)*

| No. | Claimant | General Description | First Page | Last Page |
|-----|----------|---------------------|------------|-----------|
| **A. Pleadings and Other Legal Documents:** | | | | |
| 1 | All | Trial Plan for Property Damage Claims and Scheduling Order dated November 16, 2018 | | |
| 2 | Chatmon | Priority Claimant Lillian Chatmon Answers to Interrogatories, dated November 30, 2018 | | |
| 3 | Chatmon | Priority Claimant Lillian Chatmon Answers to Defendant's Second Set of Interrogatories, dated December 4, 2018 | | |
| 4 | Chatmon | Lillian Chatmon Second Amended Supplemental Profile Plaintiff Profile Form, dated November 30, 2018 | | |
| **B. Depositions & Corresponding Exhibits:** | | | | |
| 1 | Chatmon | Deposition Transcript of Lillian Chatmon, dated January 14, 2019 | | |
| 2 | Chatmon | Deposition Exhibit 01 - Corporate Warranty Deed | Chatmon_000051 | Chatmon_000051 |
| 3 | Chatmon | Deposition Exhibit 02 - US Bank Home Mortgage Account Statement | Chatmon_000092 | Chatmon_000093 |
| 4 | Chatmon | Deposition Exhibit 03 - US Bank Home Mortgage Account Statement | Chatmon_000058 | Chatmon_000091 |
| 5 | Chatmon | Deposition Exhibit 04 - Hillsborough County Property Appraiser Property Records | Chatmon_000052 | Chatmon_000054 |
| 6 | Chatmon | Deposition Exhibit 05 - Koss Inspectors Inspection Report Dated 1/27/2010 | Chatmon_000094 | Chatmon_000102 |
| 7 | Chatmon | Deposition Exhibit 06 - Plaintiff Profile Form - Residential Properties | Chatmon_000037 | Chatmon_000050 |
| 8 | Chatmon | Deposition Exhibit 07 - Builder Defendant Profile Form | Chatmon_000171 | Chatmon_000223 |
| 9 | Chatmon | Deposition Exhibit 08 - JJ Staten Homes LLC, Corrosive Drywall Remediation Contract dated 10/2/2018 | Chatmon_000161 | Chatmon_000170 |
| 10 | Chatmon | Deposition Exhibit 09 - Alternative Living Expenses Documentation | Chatmon_000120 | Chatmon_000160 |
| 11 | Chatmon | Deposition Exhibit 10 - Chinese Drywall Settlement Program MDL 2047 Other Loss Eligibility Notice Dated 1/19/2015 | | |
| 12 | Chatmon | Deposition Exhibit 11 - Chinese Drywall Settlement Program Check Copies | Chatmon_000224 | Chatmon_000229 |
| 13 | Chatmon | Deposition Exhibit 12 - Priority Claimant Lillian Chatmon's Answers to Interrogatories | Chatmon_000027 | Chatmon_000031 |
| 14 | Chatmon | Deposition Exhibit 13 - Loss of Use/Loss of Enjoyment | Chatmon_000103 | Chatmon_000111 |
| 15 | Chatmon | Deposition Exhibit 14 - Second Amended Plaintiff Profile Form | Chatmon_000016 | Chatmon_000022 |
| 16 | Chatmon | Deposition Exhibit 15 - Sabal Pointe Townhomes POA Transaction History | Chatmon_000115 | Chatmon_000119 |
| 17 | Chatmon | Deposition Exhibit 16 - Florida Building Engineering & Inspections Chinese Drywall Inspection Report dated 12/2/2009 | | |
| **C. Supporting Documentation** | | | | |
| 1 | Chatmon | Lillian Chatmon Out of Pocket Damages Summary Provided by Counsel | | |
| 4 | Chatmon | Doc ID. 113601 - Chatmon - Egg Systems AC Receipt | | |
| 2 | Chatmon | Doc ID. 113577 - Alternative Living Expenses Documentation [Claimant Notes on Alternative Living Expenses - Supplemental Note] | | |
| 3 | Chatmon | Doc ID. 113580 - US Bank Home Mortgage Account Statement [US Bank Statement February 2011] | | |
| 5 | Chatmon | Doc ID. 349885 - Alternative Living Expenses Documentation [Claimant Notes on Alternative Living Expenses] | | |
| 6 | Chatmon | Doc ID. 365733 - Alternative Living Expenses Documentation [Claimant Notes on Alternative Living Expenses - with Support] | | |
| 7 | Chatmon | Doc ID. 365734 - Sabal Pointe Townhomes POA Transaction History | | |
| 8 | Chatmon | Doc ID. 365735 - US Bank Home Mortgage Account Statement [US Bank Statements 2014 - 2018] | | |
| 9 | Chatmon | Doc ID. 365960 - JJ Staten Homes LLC, Corrosive Drywall Remediation Contract dated 10/2/2018 | | |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-22408-Civ-COOKE

EDUARDO AND CARMEN AMORIN, *et al.*,
individually and on behalf of others similarly
situated,

      Plaintiffs,

vs.

TAISHAN GYPSUM CO., LTD., f/k/a
SHANDONG TIASHE DONGXIN CO. LTD.,
*et al.*,

      Defendants.

_____

# Exhibit 3 (Revised)

## Calculations of Damages for Priority Claimants

# David Deeg & Deborah Hooker

EXHIBIT TO THE EXPERT WITNESS REPORT OF:
MICHAEL P. ELKIN, CPA/CFF/ABV, CFE
IN THE PRIORITY CLAIMANT TRIAL

April 26, 2019



Exhibit 3 (Revised)
Data and Damage Summary - David Deeg & Deborah Hooker

*Chinese Drywall Litigation Involving Priority Claimants*

| Data: | | Reference / Notes |
|---|---|---|
| Address of Affected property | 516 SW Akron Avenue | *SPPF* |
| | Stuart, FL 34994 | *SPPF* |
| Date Affected property acquired | October 10, 2007 | *SPPF* |
| Date Chinese drywall installed | 2006 | *SPPF* |
| Date moved into Affected property | October 10, 2007 | *SPPF* |
| Date first aware of Chinese drywall | June-09 | *SPPF* |
| | | |
| Move out date to alternate living | N/A | *ROG 1, #2* |
| Date returned to Affected property | N/A | *ROG 1, #2* |
| End date for alternate living expenses | N/A | *ROG 1, #2* |
| | | |
| Still own property? | N | *SPPF* |
| Bankruptcy caused by damage? | N | *SPPF* |
| Foreclosure or short sale? | N | *SPPF* |
| Affected property sold? | Y | *SPPF* |
| Sale date | May 2, 2016 | *SPPF* |
| Type of sale | Sale in Mitigation | *SPPF* |
| | | |
| Remediation status | None | *SPPF* |
| Remediation period | N/A | *SPPF* |

| Damage Summary: | | |
|---|---|---|
| Full or Partial Out-of-Pocket Remediation Expenses | $ - | |
| Other Damages | | |
| Alternate Living Expenses | $ - | |
| Personal Property Damage Expense | 38,261 | *Exh. 3.1* |
| Additional Damages | - | |
| | $ 38,261 | |
| Lost Equity | $ 93,022 | *Exh. 3.2 (Revised)* |
| Diminution in Value | TBD | |
| Loss of Use and Enjoyment | TBD | |
| Punitive Damages | TBD | |

Exhibit 3.1
Damage Claims Detail - David Deeg & Deborah Hooker

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|------|--------|-------------|--------|------|--------------|----------------|-------|-----------------|--------------|
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Nightstand | $ 100 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000071 | Exhibit 8 | 2 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Bed frame - King | 55 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000071 | Exhibit 8 | 2 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Mattress / Boxspring set - King | 1,475 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000071 | Exhibit 8 | 2 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Chair | 220 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000071 | Exhibit 8 | 2 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Dresser / Drawer | 230 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000071 | Exhibit 8 | 2 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Chest | 250 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000071 | Exhibit 8 | 2 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Table - End | 135 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000071 | Exhibit 8 | 2 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Table lamp - High grade | 262 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000071 | Exhibit 8 | 2 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Alarm clock / Clock radio | 30 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000071 | Exhibit 8 | 2 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | AT&T Trimline 210 Telephone (White), 59234 | 13 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000071 | Exhibit 8 | 2 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Vizio 32" Class HD 1080p 60Hz LCD | 448 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000071 | Exhibit 8 | 2 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Cable Receiver Box, Comcast, Cisco | - | 3/9/2010 | X | Duraclean Inspection Report | DEEG000071 | Exhibit 8 | 2 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | RCA 1080p HDMI DVD Player with | 40 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000071 | Exhibit 8 | 2 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | JVC UX-G200 CD Micro Component | 95 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000071 | Exhibit 8 | 2 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Digital video recorder - Standard grade | 150 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000071 | Exhibit 8 | 2 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Geek Squad 1500VA UPS Battery | 60 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000072 | Exhibit 8 | 3 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Picture frame | 24 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000072 | Exhibit 8 | 3 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Table lamp - High grade | 131 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000072 | Exhibit 8 | 3 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Remote control | 125 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000072 | Exhibit 8 | 3 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | CD - New release | 45 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000072 | Exhibit 8 | 3 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | DVD - Box set | 480 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000072 | Exhibit 8 | 3 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Hair dryer | 50 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000072 | Exhibit 8 | 3 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | CHI 67869 1" Turbo Hair Straightener, | 140 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000072 | Exhibit 8 | 3 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | iHome Gun Metal Travel Alarm Clock for | 47 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000072 | Exhibit 8 | 3 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Weight Watchers Chrome and Glass Scale, | 40 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000072 | Exhibit 8 | 3 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Blood Pressure Monitor, Omron BP710 | 50 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000072 | Exhibit 8 | 3 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Picture frame | 24 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000072 | Exhibit 8 | 3 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Luggage - Carry on / Pilot case / 22 in. or | 51 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000073 | Exhibit 8 | 4 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Luggage - Duffle / Gym / Sports / Travel | 64 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000073 | Exhibit 8 | 4 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | 5 lb. ABC fre extinguisher | 46 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000073 | Exhibit 8 | 4 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Case - Briefcase | 162 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000073 | Exhibit 8 | 4 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Honeywell Key metal Box | 20 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000073 | Exhibit 8 | 4 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Midland LXT480VP3 2-Way Radio, | 49 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000073 | Exhibit 8 | 4 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Sony MDR-XB500 Extra Bass Headphones - | 49 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000073 | Exhibit 8 | 4 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | GE Profile 41 Cu Ft 11-Cycle Colossal- | 550 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000073 | Exhibit 8 | 4 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | GE Profile 7.0 cu. ft. Super Capacity | 561 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000074 | Exhibit 8 | 5 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Rowenta IS9100 Commercial Garment | 149 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000074 | Exhibit 8 | 5 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Ironing board - Standard grade | 14 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000074 | Exhibit 8 | 5 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Iron - Clothing / Clothes | 46 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000074 | Exhibit 8 | 5 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Complete bed - Twin / Twin XL - High | 480 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000074 | Exhibit 8 | 5 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Mattress / Boxspring set - Twin/Twin XL | 675 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000074 | Exhibit 8 | 5 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Nightstand | 100 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000074 | Exhibit 8 | 5 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Dresser / Drawer | 230 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000074 | Exhibit 8 | 5 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Children's chair | 80 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000074 | Exhibit 8 | 5 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Table lamp - Standard grade | 56 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000074 | Exhibit 8 | 5 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | JVC TV-20F243 20" Real Flat TV/VCR | 290 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000074 | Exhibit 8 | 5 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Credenza - Standard grade | 300 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000074 | Exhibit 8 | 5 |

Exhibit 3.1
Damage Claims Detail - David Deeg & Deborah Hooker

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|------|--------|-------------|--------|------|--------------|----------------|-------|-----------------|-------------|
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Cable Box, Comcast | - | 3/9/2010 | X | Duraclean Inspection Report | DEEG000075 | Exhibit 8 | 6 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Picture frame | 24 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000075 | Exhibit 8 | 6 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Wall clock | 40 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000075 | Exhibit 8 | 6 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Electric Air Pump, Ozark Trail | 19 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000075 | Exhibit 8 | 6 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Conair Shiatsu Neck Massager, NMIO | 38 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000075 | Exhibit 8 | 6 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Games - Board game - Standard grade | 26 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000075 | Exhibit 8 | 6 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Luggage - Carry on / Pilot case /22 in. or | 51 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000075 | Exhibit 8 | 6 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Plate set - 4pc. - Casual dinnerware - | 168 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000075 | Exhibit 8 | 6 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Plate set - 4pc. - Casual dinnerware - | 56 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000075 | Exhibit 8 | 6 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Plate set - 4pc. - Casual dinnerware - | 84 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000075 | Exhibit 8 | 6 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Plate set - 4pc. - Casual dinnerware - | 112 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000075 | Exhibit 8 | 6 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Plate set - 4pc. - Casual dinnerware - | 112 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000075 | Exhibit 8 | 6 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Bowl - Sugar - Casual dinnerware - Standard | 20 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000076 | Exhibit 8 | 7 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Plate set - 4pc. - Casual dinnerware - | 56 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000076 | Exhibit 8 | 7 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Glasses & cups - Individual - Standard grade | 69 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000076 | Exhibit 8 | 7 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Glasses & cups - Individual | 225 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000076 | Exhibit 8 | 7 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Glasses & cups - Individual | 90 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000076 | Exhibit 8 | 7 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Pitcher - Standard grade | 17 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000076 | Exhibit 8 | 7 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Coffee pot / server - Casual dinnerware | 20 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000076 | Exhibit 8 | 7 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Plastic Containers, Glad ware set of 12 | 100 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000076 | Exhibit 8 | 7 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Colander / strainer | 34 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000076 | Exhibit 8 | 7 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Oster 10-Speed Blender - White, | 33 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000076 | Exhibit 8 | 7 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Toaster - Oven / Broiler - Standard grade | 32 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000076 | Exhibit 8 | 7 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Santa Fe Quesadilla Maker - QM2R, QM2R | 27 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000076 | Exhibit 8 | 7 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | George Foreman Grill, GR2OB | 36 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000076 | Exhibit 8 | 7 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Toaster - Conventional - Standard grade | 25 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000076 | Exhibit 8 | 7 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Cuisinart CFO-3SS Fondue Set, Electric, | 60 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000076 | Exhibit 8 | 7 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Black & Decker HJ30 Handy Citrus Juicer, | 15 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000077 | Exhibit 8 | 8 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Back to Basics SJR1X Smoothie Blast | 23 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000077 | Exhibit 8 | 8 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Bowl - Salad / Serving - Casual dinnerware - | 56 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000077 | Exhibit 8 | 8 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Fry pan/ saute pan / skillet - Standard grade | 119 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000077 | Exhibit 8 | 8 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Cooking pot - Standard grade | 119 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000077 | Exhibit 8 | 8 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Mixing bowl - Single - Standard grade | 13 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000077 | Exhibit 8 | 8 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Serving tray - Standard grade | 45 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000077 | Exhibit 8 | 8 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Salad spinner - Standard grade | 30 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000077 | Exhibit 8 | 8 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Coffee - Brewer / Maker - Standard grade | 21 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000077 | Exhibit 8 | 8 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Hamilton Beach Hand Mixer, 62695V | 27 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000077 | Exhibit 8 | 8 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Hand mixer - Standard grade | 23 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000077 | Exhibit 8 | 8 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Breville Juice Fountain Plus Electric Juicer - | 150 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000077 | Exhibit 8 | 8 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Kitchen scale - Standard grade | 20 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000077 | Exhibit 8 | 8 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Slow cooker / Crock pot - Standard grade | 25 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000077 | Exhibit 8 | 8 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Trivet! spoon rest - Standard grade | 14 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000077 | Exhibit 8 | 8 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Basic Essentials 15-pc. Kitchen Utensil Set, | 35 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000078 | Exhibit 8 | 9 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | TableCraft Oil and Vinegar Set, | 10 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000078 | Exhibit 8 | 9 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Candle holder / candlestick - Standard grade | 16 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000078 | Exhibit 8 | 9 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Paper towel holder - Standard grade | 11 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000078 | Exhibit 8 | 9 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Dish rack / draining rack - Standard grade | 9 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000078 | Exhibit 8 | 9 |

Exhibit 3.1
Damage Claims Detail - David Deeg & Deborah Hooker

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|------|--------|-------------|--------|------|--------------|----------------|-------|------------------|--------------|
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Cutlery & utility - Cutting boards - Standard | 42 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000078 | Exhibit 8 | 9 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Glasses and cups set - 4pc. - Standard grade | 50 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000078 | Exhibit 8 | 9 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Glasses and cups set - 4pc. - Standard grade | 25 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000078 | Exhibit 8 | 9 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | GE Profle 25.5 Cu. ft. French-Door Bottom- | 2,205 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000078 | Exhibit 8 | 9 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | JVM3670SK GE Profle 36" Spacemalcer® | 659 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000078 | Exhibit 8 | 9 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | GE PDWF788PSS 6 LEVEL 12 | 830 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000078 | Exhibit 8 | 9 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | GE Profle 30" Self-Cleaning Freestanding | 1,400 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000078 | Exhibit 8 | 9 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Table - Dining / Kitchen | 300 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000079 | Exhibit 8 | 10 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Chair - Dining room / Kitchen - Standard | 472 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000079 | Exhibit 8 | 10 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Curio | 300 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000079 | Exhibit 8 | 10 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Artificial plant / fowers | 39 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000079 | Exhibit 8 | 10 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Artifcial plant / flowers | 39 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000079 | Exhibit 8 | 10 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Vase | 80 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000079 | Exhibit 8 | 10 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Shark Bagless Cordless Hand Vac - | 60 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000079 | Exhibit 8 | 10 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Decorative fgurine - Standard grade | 340 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000079 | Exhibit 8 | 10 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Jewelry box / storage - Standard grade | 105 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000079 | Exhibit 8 | 10 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Vase - Standard grade | 120 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000079 | Exhibit 8 | 10 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Crytal bowl decorative | 70 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000079 | Exhibit 8 | 10 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Serving tray - Standard grade | 45 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000079 | Exhibit 8 | 10 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Decorative Plates w/ Holder | 100 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000079 | Exhibit 8 | 10 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Glasses & cups - Individual - Standard grade | 12 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000079 | Exhibit 8 | 10 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Glasses & cups - Individual | 18 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000079 | Exhibit 8 | 10 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Remove 2.6 lb.Pro Line Fire Extinguisher | 3 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000080 | Exhibit 8 | 11 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | 2.6 lb.Pro Line Fire Extinguisher | 35 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000080 | Exhibit 8 | 11 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Set of 4 TV Trays | 40 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000080 | Exhibit 8 | 11 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Flashlight - Standard grade | 10 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000080 | Exhibit 8 | 11 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Step stool - Standard grade | 25 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000080 | Exhibit 8 | 11 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Vacuum - Upright - Standard grade | 56 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000080 | Exhibit 8 | 11 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Sofa - Couch - Standard grade | 450 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000080 | Exhibit 8 | 11 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Chair - Standard grade | 80 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000080 | Exhibit 8 | 11 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Table - End - Standard grade | 65 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000080 | Exhibit 8 | 11 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Table - Occasional / Cofee - Standard grade | 90 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000080 | Exhibit 8 | 11 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Sofa - Couch - Standard grade | 450 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000080 | Exhibit 8 | 11 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Table - Sofa - Standard grade | 155 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000080 | Exhibit 8 | 11 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | TV / VCR stand & cabinet | 125 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000080 | Exhibit 8 | 11 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Zenith Z5OPX2D | 1,773 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000080 | Exhibit 8 | 11 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Philips Home Theater Audio System with | 177 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000081 | Exhibit 8 | 12 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Cable Box Receiver, Comcast, Explorer | - | 3/9/2010 | X | Duraclean Inspection Report | DEEG000081 | Exhibit 8 | 12 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Teac CD-X10i Ultra-Thin HiFi System for | 150 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000081 | Exhibit 8 | 12 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Table lamp - Standard grade | 28 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000081 | Exhibit 8 | 12 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Floor lamp / torchiere - Standard grade | 58 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000081 | Exhibit 8 | 12 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Bookcase / shelves - Standard grade | 65 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000081 | Exhibit 8 | 12 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Wall clock - Standard grade | 22 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000081 | Exhibit 8 | 12 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Decorative Boxes | 200 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000081 | Exhibit 8 | 12 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | CD - Old release | 5,920 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000081 | Exhibit 8 | 12 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Table - End - High grade | 210 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000081 | Exhibit 8 | 12 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Picture frame - Standard grade | 40 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000081 | Exhibit 8 | 12 |

Exhibit 3.1
Damage Claims Detail - David Deeg & Deborah Hooker

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|------|--------|-------------|--------|------|--------------|----------------|-------|------------------|--------------|
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Table - End - Standard grade | 65 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000081 | Exhibit 8 | 12 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Table lamp - Standard grade | 28 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000081 | Exhibit 8 | 12 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Vase | 40 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000081 | Exhibit 8 | 12 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Picture frame | 72 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000081 | Exhibit 8 | 12 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Desk - Standard grade | 65 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000082 | Exhibit 8 | 13 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Loveseat - Standard grade | 400 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000082 | Exhibit 8 | 13 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Table - End - Standard grade | 65 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000082 | Exhibit 8 | 13 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Chair - Standard grade | 80 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000082 | Exhibit 8 | 13 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Bookcase / shelves - Standard grade | 65 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000082 | Exhibit 8 | 13 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | DVD Rack | - | 3/9/2010 | X | Duraclean Inspection Report | DEEG000082 | Exhibit 8 | 13 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | TV / VCR stand & cabinet - Standard grade | 45 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000082 | Exhibit 8 | 13 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Coby Electronics TF-DVD7107 7-Inch | 80 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000082 | Exhibit 8 | 13 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Dynex 27" 48t Standard-Defnition Digital | 140 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000082 | Exhibit 8 | 13 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Comcast Receiver, Cisco RG100 | - | 3/9/2010 | X | Duraclean Inspection Report | DEEG000082 | Exhibit 8 | 13 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Panasonic DMR-EZ48VK DVD/VCR | 245 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000082 | Exhibit 8 | 13 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Philips Portable CD Boombox With iPod | 60 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000082 | Exhibit 8 | 13 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Inkjet / Deskjet / Offcejet printer - Standard | 50 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000083 | Exhibit 8 | 14 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Shredder with wastebasket - Standard grade | 30 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000083 | Exhibit 8 | 14 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Home / Desktop computer - Standard grade | 400 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000083 | Exhibit 8 | 14 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Linksys WRT310N Wireless-N Gigabit | 109 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000083 | Exhibit 8 | 14 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Motorola Netopia High-Speed ADSL2+ | 70 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000083 | Exhibit 8 | 14 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | NEW HP/Compaq 5185-0478 USB | 25 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000083 | Exhibit 8 | 14 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Mouse - Standard grade | 12 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000083 | Exhibit 8 | 14 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Camera / Camcorder - Flash- High grade | 235 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000083 | Exhibit 8 | 14 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Canon PowerShot SDI200-IS Blue 10.0MP | 149 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000083 | Exhibit 8 | 14 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | MP3 & video player - Video iPod - Nano 8 | 149 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000083 | Exhibit 8 | 14 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Apple iPod classic 160GB, Black, 7th | 229 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000083 | Exhibit 8 | 14 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Hard drive - External - Computer - Standard | 70 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000083 | Exhibit 8 | 14 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Cell phone - Standard grade | 50 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000083 | Exhibit 8 | 14 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Cell phone - Standard grade | 50 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000083 | Exhibit 8 | 14 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | LCD monitor - 17 inch - Standard grade | 85 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000084 | Exhibit 8 | 15 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Battery Backup APC UPSXF1000 | 130 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000084 | Exhibit 8 | 15 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Printer, scanner, fax, & copier combo | 100 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000084 | Exhibit 8 | 15 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | PlayStation 2 Console Slim - Black | 100 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000084 | Exhibit 8 | 15 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Video game - Playstation 2/ PS2 - Standard | 75 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000084 | Exhibit 8 | 15 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Decorative basket / Wicker basket - | 10 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000084 | Exhibit 8 | 15 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Artifcial plant / flowers - Standard grade | 17 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000084 | Exhibit 8 | 15 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Table lamp - Standard grade | 28 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000084 | Exhibit 8 | 15 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Decorative figurine - Standard grade | 120 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000084 | Exhibit 8 | 15 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Paperback books (old release) | 455 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000084 | Exhibit 8 | 15 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | DVD - Old release | 2,145 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000084 | Exhibit 8 | 15 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | DVD - Old release - Standard grade | 250 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000084 | Exhibit 8 | 15 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Pillow - Standard grade | 210 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000084 | Exhibit 8 | 15 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | CD - Old release | 250 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000084 | Exhibit 8 | 15 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Table - Sofa - Standard grade | 155 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000085 | Exhibit 8 | 16 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Ottoman - Standard grade | 52 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000085 | Exhibit 8 | 16 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Decorative basket / Wicker basket - | 10 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000085 | Exhibit 8 | 16 |

Exhibit 3.1
Damage Claims Detail - David Deeg & Deborah Hooker

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|------|--------|-------------|--------|------|--------------|----------------|-------|-------------------|--------------|
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Vase - Standard grade | 48 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000085 | Exhibit 8 | 16 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Candle holder / candlestick - Standard grade | 16 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000085 | Exhibit 8 | 16 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Decorative Plate, Square | 25 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000085 | Exhibit 8 | 16 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Pillow - Standard grade | 15 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000085 | Exhibit 8 | 16 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Bookcase / shelves - Standard grade | 65 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000085 | Exhibit 8 | 16 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Table - Folding - Standard grade | 40 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000085 | Exhibit 8 | 16 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Camp folding chair | 96 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000085 | Exhibit 8 | 16 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Luggage - Garment bags - Standard grade | 36 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000085 | Exhibit 8 | 16 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Artificial tree - Standard grade | 37 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000085 | Exhibit 8 | 16 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Table lamp - Standard grade | 28 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000085 | Exhibit 8 | 16 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Paper towel holder - Standard grade | 11 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000086 | Exhibit 8 | 17 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Drink / Food cooler | 70 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000086 | Exhibit 8 | 17 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Corded phone - Standard grade | 15 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000086 | Exhibit 8 | 17 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Tool cart - Standard grade | 68 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000086 | Exhibit 8 | 17 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Mainstays 4-Tier Shoe Rack, 14590468 | 45 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000086 | Exhibit 8 | 17 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Drink / Food cooler | 70 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000086 | Exhibit 8 | 17 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Elliptical machine - Standard grade | 230 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000086 | Exhibit 8 | 17 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Exercise trampoline - Standard grade | 45 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000086 | Exhibit 8 | 17 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Garden hose - Standard grade | 10 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000086 | Exhibit 8 | 17 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Garden hose holder - Standard grade | 25 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000086 | Exhibit 8 | 17 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Pressure washer - Electric - Standard grade | 145 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000086 | Exhibit 8 | 17 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Room divider / decorative screen - Standard | 89 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000086 | Exhibit 8 | 17 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Ab toner trainer Machine | 80 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000086 | Exhibit 8 | 17 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Golf bag - Standard grade | 144 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000086 | Exhibit 8 | 17 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Golf club - Hybrid - Standard grade | 675 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000087 | Exhibit 8 | 18 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Fishing rod - Spinning - Standard grade | 25 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000087 | Exhibit 8 | 18 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Table - End - Standard grade | 65 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000087 | Exhibit 8 | 18 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Pruner / Shear - Standard grade | 14 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000087 | Exhibit 8 | 18 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Pruner / Shear | 25 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000087 | Exhibit 8 | 18 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Large storage bin / container / tote | 34 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000087 | Exhibit 8 | 18 |
| Personal Property Damage Expense | Duraclean Restoration & Remediation | Hardware Installer | 116 | 3/9/2010 | X | Duraclean Inspection Report | DEEG000087 | Exhibit 8 | 18 |
| **Personal Property Damage Expense Total** | | | **$ 38,261** | | | | | | |

Exhibit 3.2 (Revised)
Lost Equity - David Deeg & Deborah Hooker

*Chinese Drywall Litigation Involving Priority Claimants*

| | | | | Source Document |
|---|---|---|---|---|
| **Initial Acquisition** | | | | |
| Purchase Price | | $ | 400,500 | Exhibit 2 Schedule A Deeg-Hooker000030 |
| Settlement Charges | | | N/A | |
| Total Gross Amount Due from Claimant | | $ | 400,500 | |
| | | | | |
| Less | | | | |
| Deposit Made by Claimant | | $ | (40,050) | Exhibit 2 Schedule A Deeg-Hooker000030 |
| Borrowings by Claimant | | | (360,450) | First and Second Mortgage Docs (from Public Records) |
| Credits | | | N/A | |
| Amount Due from Claimant at Close | | $ | - | |
| | | | | |
| Funds Paid by Claimant | | | | |
| Deposit Paid with Contract | | $ | 40,050 | Exhibit 2 Schedule A Deeg-Hooker000030 |
| Cash Paid at Closing | | | N/A | |
| Total Payments for Initial Purchase | a | $ | 40,050 | |
| | | | | |
| 1st & 2nd Mortgage | | | | |
| 1st Mortgage Beginning Balance | | $ | 320,400 | Mortgage 10.10.2007 - KR Doc (Public Records), Pg. 2 |
| 2nd Mortgage Beginning Balance | | | 40,050 | Second Mortgage 10.11.2007 - KR Doc (from Public Records), Pg. 2 |
| Mortgage Balance at time of Refinance | | | 332,000 | Refinanced Mortgage - 332,000 - KR Docs (from Public Records) |
| Principal Payments Made | b | $ | 28,450 | |
| | | | | |
| Refinanced Mortgage | | | | |
| Mortgage Beginning Balance | | $ | 332,000 | Refinanced Mortgage - 332,000 - KR Docs (from Public Records) |
| Mortgage Balance at Payoff | | | 290,612 | HUD Statement dated 4/27/16 DEEG000246 |
| Principal Payments Made | c | $ | 41,388 | |
| | | | | |
| Total Principal Payments | = b + c | $ | 69,838 | |
| | | | | |
| Less: Cash Paid to Claimants upon Sale of Home | | $ | (15,970) | HUD Statement dated 4/27/16 DEEG000246 |
| Adjustments from Closing Statement at Sale: | | | | |
| Line 410. Second Quarter HOA | | | 318 * | HUD Statement dated 4/27/16 DEEG000246 |
| Line 510. City / Town Taxes | | | (1,214) * | HUD Statement dated 4/27/16 DEEG000246 |
| Adjusted Cash Paid to Claimants upon Sale of Home | d | $ | (16,866) | |
| | | | | |
| **Total Lost Equity** | = a + b + c + d | $ | 93,022 | |

3.A
Documents and Other Information Considered - David Deeg & Deborah Hooker

*Chinese Drywall Litigation Involving Priority Claimants*

*Bate Stamp (if applicable)*

| No. | Claimant | General Description | First Page | Last Page |
|---|---|---|---|---|
| **A. Pleadings and Other Legal Documents:** | | | | |
| 1 | All | Trial Plan for Property Damage Claims and Scheduling Order dated November 16, 2018 | | |
| 2 | Deeg/Hooker | Claimant Deborah Hooker's Unverified Answers to Defendants' Interrogatories, dated January 2, 2019 (Deposition Exhibit 11) | | |
| 3 | Deeg/Hooker | Claimant Deborah Hooker's Unverified Answers to Defendants' Second Set of Interrogatories, dated January 2, 2019 (Doc ID. 366723) | | |
| 4 | Deeg/Hooker | David Deeg & Deborah Hooker Supplemental Profile Plaintiff Profile Form, dated February 21, 2018 (Doc ID. 351799) | | |
| **B. Depositions & Corresponding Exhibits:** | | | | |
| 1 | Deeg/Hooker | Deposition Transcript of David Deeg, dated January 3, 2019 | | |
| 2 | Deeg/Hooker | Deposition Transcript of Deborah Hooker, dated January 3, 2019 | | |
| 3 | Deeg/Hooker | Deposition Exhibit 01 - Special Warranty Deed | DEEG000027 | DEEG000028 |
| 4 | Deeg/Hooker | Deposition Exhibit 02 - Contract for Purchase and Sale | DEEG000029 | DEEG000054 |
| 5 | Deeg/Hooker | Deposition Exhibit 03 - National Property Inspections Square Footage Affidavit | DEEG000005 | DEEG000024 |
| 6 | Deeg/Hooker | Deposition Exhibit 04 - Plaintiff Profile Form - Residential Properties | Deeg-Hooker000001 | Deeg-Hooker000096 |
| 7 | Deeg/Hooker | Deposition Exhibit 05 - Supplemental Plaintiff Profile Form | | |
| 8 | Deeg/Hooker | Deposition Exhibit 06 - Chinese Drywall Screening Report dated 11/9/2010 | DEEG000145 | DEEG000178 |
| 9 | Deeg/Hooker | Deposition Exhibit 07 - Personal Property Loss | DEEG000058 | DEEG000069 |
| 10 | Deeg/Hooker | Deposition Exhibit 08 - Duraclean Restoration & Remediation Estimate dated 3/9/2010 | DEEG000070 | DEEG000144 |
| 11 | Deeg/Hooker | Deposition Exhibit 09 - Copies of Checks | DEEG000222 | DEEG000225 |
| 12 | Deeg/Hooker | Deposition Exhibit 10 - Letter Titled History of Property | | |
| 13 | Deeg/Hooker | Deposition Exhibit 11 - Claimant, Deborah Hooker's Unverified Answers to Defendants' Interrogatories | | |
| 14 | Deeg/Hooker | Deposition Exhibit 12 - Page from Martin County Property Appraiser Website pertaining to 516 SW Akron Avenue, Stuart, Florida | | |
| 15 | Deeg/Hooker | Deposition Exhibit 13 - Page from Martin County Property Appraiser Website pertaining to 516 SW Akron Avenue, Stuart, Florida | | |
| **C. Supporting Documentation:** | | | | |
| 1 | Deeg/Hooker | Deeg-Hooker Damages Summary Provided by Counsel | | |
| 2 | Deeg/Hooker | Personal Property Loss | DEEG000058 | DEEG000144 |
| 3 | Deeg/Hooker | Jan 2011 Mortgage Statement | DEEG000246 | DEEG000249 |
| 4 | Deeg/Hooker | HUD for Sale of Property | DEEG000055 | DEEG000056 |
| **D. Research and Other Sources:** | | | | |
| 1 | Deeg/Hooker | Mortgage 10.10.2007 - KR Doc (from Public Records) | | |
| 2 | Deeg/Hooker | Second Mortgage 10.11.2007 - KR Doc (from Public Records) | | |
| 3 | Deeg/Hooker | Deeg Satisfaction of Mortgagge - KR Docs (from Public Records) | | |
| 4 | Deeg/Hooker | Refinanced Mortgage - 332,000 - KR Docs (from Public Records) | | |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-22408-Civ-COOKE

EDUARDO AND CARMEN AMORIN, *et al.*,
individually and on behalf of others similarly
situated,

      Plaintiffs,

vs.

TAISHAN GYPSUM CO., LTD., f/k/a
SHANDONG TIASHE DONGXIN CO. LTD.,
*et al.*,

      Defendants.

_____

# Exhibit 4 (Revised)

## Calculations of Damages for Priority Claimants

# Steven & Cathy Etter

EXHIBIT TO THE EXPERT WITNESS REPORT OF:
MICHAEL P. ELKIN, CPA/CFF/ABV, CFE
IN THE PRIORITY CLAIMANT TRIAL

April 26, 2019



Exhibit 4 (Revised)
Data and Damage Summary - Steven & Cathy Etter

*Chinese Drywall Litigation Involving Priority Claimants*

| Data: | | Reference / Notes |
|---|---|---|
| Address of Affected property | 11894 SE Jupiter Inlet Way | *SPPF* |
| | Tequesta, FL 33469 | *SPPF* |
| Date Affected property acquired | December 8, 2004 | *SPPF* |
| Date Chinese drywall installed | February-06 | *SPPF* |
| Date moved into Affected property | November 7, 2006 | *SPPF* |
| Date first aware of Chinese drywall | March-09 | *SPPF* |
| | | |
| Move out date to alternate living | November 15, 2012 | *ROG 1, #2* |
| Date returned to Affected property | August 16, 2013 | *ROG 1, #2* |
| End date for alternate living expenses | August 15, 2013 | *ROG 1, #2* |
| | | |
| Still own property? | N | *SPPF* |
| Bankruptcy caused by damage? | N | *SPPF* |
| Foreclosure or short sale? | N | *SPPF* |
| Affected property sold? | Y | *SPPF* |
| Sale date | September 28, 2016 | *SPPF* |
| Type of sale | Sale in Mitigation | *SPPF* |
| | | |
| Remediation status | Completed | *SPPF* |
| Remediation period | January 2013 - October 2013 | *SPPF* |

| Damage Summary: | | |
|---|---|---|
| Full or Partial Out-of-Pocket Remediation Expenses | $ 1,005,015 | *Exh. 4.1 (Revised)* |
| | | |
| Other Damages | | |
| Alternate Living Expenses | $ 46,037 | *Exh. 4.1 (Revised)* |
| Personal Property Damage Expense | 8,241 | *Exh. 4.1 (Revised)* |
| Additional Damages | - | |
| | $ 54,279 | |
| | | |
| Lost Equity | $ 57,831 | *Exh. 4.2 (Revised)* |
| | | |
| Diminution in Value | TBD | |
| | | |
| Loss of Use and Enjoyment | TBD | |
| | | |
| Punitive Damages | TBD | |

Exhibit 4.1 (Revised)
Damage Claims Detail - Steven & Cathy Etter

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Remediation | Christian Thomas Construction | Deposit + Expert Testimony | $ 52,384 | 12/1/2012 | | Bank Statement | ETTER000104 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 4 |
| Remediation | Chinese Drywall Screening | N/A | 3,100 * | 12/15/2012 | | Bank Statement | ETTER000125 | Etter 17/Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 61/25 |
| Remediation | Christian Thomas Construction | Draw Request - Includes Warehouse | 74,608 | 1/4/2013 | | Bank Statement | ETTER000105 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 5 |
| Remediation | Chinese Drywall Screening | N/A | 1,900 * | 1/23/2013 | | Bank Statement | ETTER000126 | Etter 17/Supplement to S Etter 16 Invoices ETTER000126 | 61/25 |
| Remediation | Christian Thomas Construction | LEEDS Deposit | 50,880 | 1/28/2013 | | Bank Statement | ETTER000146 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 46 |
| Remediation | Christian Thomas Construction | Draw Request | 105,083 | 2/8/2013 | | Bank Statement | ETTER000106 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 6 |
| Remediation | Christian Thomas Construction | Draw Request | 100,945 | 2/28/2013 | | Bank Statement | ETTER000106 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 6 |
| Remediation | Christian Thomas Construction | Draw Request - Includes Warehouse | 72,171 | 4/2/2013 | | Bank Statement | ETTER000107 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 7 |
| Remediation | Lowe's | Vanity Sink | 157 * | 4/2/2013 | | Bank Statement | ETTER000113 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 13 |
| Remediation | Accurate Tile & Marble | Floor | 3,225 * | 4/26/2013 | | Bank Statement | ETTER000108 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 8 |
| Remediation | Leeds Custom Cabinets | Cabinets | 6,900 * | 4/29/2013 | | Bank Statement | ETTER000107 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 7 |
| Remediation | Christian Thomas Construction | Draw Request - Includes Warehouse | 58,263 | 4/30/2013 | | Bank Statement | ETTER000108 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 8 |
| Remediation | HomeGoods | Mirror Bath #3 | 57 * | 5/27/2013 | | Bank Statement | ETTER000113 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 13 |
| Remediation | Christian Thomas Construction | Draw Request - Includes Warehouse | 131,117 | 5/30/2013 | | Bank Statement | ETTER000108 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 8 |
| Remediation | Home Depot | Laundry Countertops | 41 * | 5/31/2013 | | Receipt | ETTER000117 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 17 |
| Remediation | Home Depot | Laundry Countertops | 221 * | 5/31/2013 | | Receipt | ETTER000117 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 17 |
| Remediation | We'll Floor U | Floor | 1,040 * | 5/31/2013 | | Bank Statement | ETTER000114 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 14 |
| Remediation | Jetson Ice Maker | Ice Machine | 2,061 * | 5/31/2013 | | Bank Statement | ETTER000115-116 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 15-16 |
| Remediation | Capitol Lighting | Lights | 259 * | 6/6/2013 | | Receipt | ETTER000118 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 18 |
| Remediation | Christian Thomas Construction | Draw Request - Includes Warehouse | 88,744 | 6/30/2013 | | Bank Statement | ETTER000109 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 9 |
| Remediation | Christian Thomas Construction | Draw Request - Includes Warehouse | 143,716 | 7/1/2013 | | Bank Statement | ETTER000110 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 10 |
| Remediation | Millers | Cabinet Hardware | 275 * | 7/9/2013 | | Receipt | ETTER000119 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 19 |
| Remediation | Broadell's | Kitchen Sink | 624 * | 7/15/2013 | | Bank Statement | ETTER000120 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 20 |
| Remediation | Accurate Tile & Marble | Floor | 3,412 * | 7/16/2013 | | Bank Statement | ETTER000116 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 16 |
| Remediation | Accurate Tile & Marble | Floor | 4,080 * | 7/17/2013 | | Bank Statement | ETTER000121 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 21 |
| Remediation | Related Expenses | Replace 6 Rheostats | 675 * | 7/31/2013 | | Claimant | ETTER000040 | Exhibit 17 | 20 |
| Remediation | Related Expenses | A/C Coil Replacement | 7,575 * | 7/31/2013 | | Claimant | ETTER000040 | Exhibit 17 | 20 |
| Remediation | Millers | Cabinet Hardware | 318 * | 8/6/2013 | | Receipt | ETTER000119 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 19 |
| Remediation | We'll Floor U | Closets | 1,444 * | 8/7/2013 | | Bank Statement | ETTER000122 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 22 |
| Remediation | Steam-A-Way | Clean Carpets | 828 | 8/14/2013 | | Bank Statement | ETTER000127 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 27 |
| Remediation | Residential Elevators | N/A | 375 * | 8/22/2013 | | Bank Statement | ETTER000110 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 10 |
| Remediation | Decorative Products, Inc. | N/A | 455 * | 8/26/2013 | | Bank Statement | ETTER000110 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 10 |
| Remediation | Christian Thomas Construction | Draw Request | 65,903 | 8/27/2013 | | Bank Statement | ETTER000111 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 11 |
| Remediation | Christian Thomas Construction | Draw Request | 21,929 | 10/7/2013 | | Bank Statement | ETTER000112 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 12 |
| Remediation | Chinese Drywall Screening | Evidence Storage | 250 * | 4/9/2015 | | Invoice | ETTER000039 | Exhibit 17 | 19 |
| **Remediation Total** | | | **$ 1,005,015** | | | | | | |
| Alternate Living Expenses | Prop Owners Fee | Lease | 100 | 10/24/2012 | | Bank Statement | ETTER000128 | Supp. to S Etter 16 ETTER101-153 | 28 |
| Alternate Living Expenses | U & Me Moving | Moving Expenses | 181 | 11/21/2012 | | Bank Statement | ETTER000124 | Supp. to S Etter 16 ETTER101-153 | 24 |
| Alternate Living Expenses | U & Me Moving | Moving Expenses | 3,481 | 11/28/2012 | | Bank Statement | ETTER000124 | Supp. to S Etter 16 ETTER101-153 | 24 |
| Alternate Living Expenses | U & Me Moving | Moving Expenses | 1,584 | 11/29/2012 | | Bank Statement | ETTER000124 | Supp. to S Etter 16 ETTER101-153 | 24 |
| Alternate Living Expenses | ADT | Utilities & Services | 74 * | 12/4/2012 | | ADT Letter | N/A | Doc ID 165483 | 5 |
| Alternate Living Expenses | FPL | Utilities & Services | 33 | 12/12/2012 | | FPL Pay History | N/A | Doc ID 165483 | 27 |
| Alternate Living Expenses | Via Veracruz | Lease | 3,650 | 12/15/2012 | | Bank Statement | ETTER000124 | Supp. to S Etter 16 ETTER101-153 | 24 |
| Alternate Living Expenses | Town of Jupiter | Utilities & Services | 20 | 12/17/2012 | | Vendor Statement | N/A | Doc ID 165483 | 14 |
| Alternate Living Expenses | Town of Jupiter | Utilities & Services | 60 | 1/6/2013 | | Claimant | N/A | Exhibit 16 | 3 |
| Alternate Living Expenses | Comcast | Utilities & Services | 164 * | 1/7/2013 | | Vendor Statement | N/A | Doc ID 165483 | 17 |
| Alternate Living Expenses | FPL | Utilities & Services | 162 | 1/8/2013 | | FPL Pay History | N/A | Doc ID 165483 | 27 |
| Alternate Living Expenses | Via Veracruz | Lease | 3,650 | 1/14/2013 | | Bank Statement | ETTER000150 | Supp. to S Etter 16 ETTER101-153 | 50 |
| Alternate Living Expenses | Comcast | Utilities & Services | 54 * | 1/23/2013 | | Vendor Statement | N/A | Doc ID 165483 | 17 |
| Alternate Living Expenses | Via Veracruz | Lease | 3,650 | 2/13/2013 | | Bank Statement | ETTER000150 | Supp. to S Etter 16 ETTER101-153 | 50 |
| Alternate Living Expenses | FPL | Utilities & Services | 125 | 2/15/2013 | | FPL Pay History | N/A | Doc ID 165483 | 27 |
| Alternate Living Expenses | Comcast | Utilities & Services | 54 * | 2/24/2013 | | Vendor Statement | N/A | Doc ID 165483 | 18 |
| Alternate Living Expenses | ADT | Utilities & Services | 76 | 3/4/2013 | | Bank Statement | ETTER000134 | Supp. to S Etter 16 ETTER101-153 | 34 |
| Alternate Living Expenses | Town of Jupiter | Utilities & Services | 139 | 3/4/2013 | | Vendor Statement | N/A | Doc ID 165483 | 21 |
| Alternate Living Expenses | FPL | Utilities & Services | 77 | 3/14/2013 | | FPL Pay History | N/A | Doc ID 165483 | 27 |

Exhibit 4.1 (Revised)
Damage Claims Detail - Steven & Cathy Etter

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|------|--------|-------------|--------|------|--------------|----------------|-------|------------------|--------------|
| Alternate Living Expenses | Via Veracruz | Lease | 3,650 | 3/15/2013 | | Bank Statement | ETTER000151 | Supp. to S Etter 16 ETTER101-153 | 51 |
| Alternate Living Expenses | Via Veracruz | Lease | 3,650 | 4/2/2013 | | Bank Statement | ETTER000137 | Supp. to S Etter 16 ETTER101-153 | 37 |
| Alternate Living Expenses | Town of Jupiter | Utilities & Services | 68 | 4/2/2013 | | Vendor Statement | N/A | Doc ID 165483 | 22 |
| Alternate Living Expenses | FPL | Utilities & Services | 117 | 4/3/2013 | | FPL Pay History | N/A | Doc ID 165483 | 27 |
| Alternate Living Expenses | Town of Jupiter | Utilities & Services | 66 | 4/26/2013 | | Vendor Statement | N/A | Doc ID 165483 | 23 |
| Alternate Living Expenses | Via Veracruz | Lease | 3,650 | 5/10/2013 | | Bank Statement | ETTER000108 | Supp. to S Etter 16 ETTER101-153 | 8 |
| Alternate Living Expenses | FPL | Utilities & Services | 156 | 5/14/2013 | | FPL Pay History | N/A | Doc ID 165483 | 27 |
| Alternate Living Expenses | Town of Jupiter | Utilities & Services | 75 | 5/30/2013 | | Vendor Statement | N/A | Doc ID 165483 | 26 |
| Alternate Living Expenses | ADT | Utilities & Services | 95 | 5/30/2013 | | Bank Statement | ETTER000139 | Supp. to S Etter 16 ETTER101-153 | 39 |
| Alternate Living Expenses | Via Veracruz | Lease | 3,650 | 6/10/2013 | | Bank Statement | ETTER000109 | Supp. to S Etter 16 ETTER101-153 | 9 |
| Alternate Living Expenses | FPL | Utilities & Services | 203 | 6/13/2013 | | FPL Pay History | N/A | Doc ID 165483 | 27 |
| Alternate Living Expenses | Comcast | Utilities & Services | 83 | 6/23/2013 | | Bank Statement | ETTER000109 | Supp. to S Etter 16 ETTER101-153 | 9 |
| Alternate Living Expenses | Town of Jupiter | Utilities & Services | 87 | 7/6/2013 | | Bank Statement | ETTER000142 | Supp. to S Etter 16 ETTER101-153 | 42 |
| Alternate Living Expenses | Via Veracruz | Lease | 3,650 | 7/10/2013 | x | Lease Agreement | N/A | Doc ID 165478 | 3 |
| Alternate Living Expenses | FPL | Utilities & Services | 279 | 7/12/2013 | | FPL Pay History | N/A | Doc ID 165483 | 27 |
| Alternate Living Expenses | Comcast | Utilities & Services | 77 | 7/31/2013 | | Bank Statement | ETTER000142 | Supp. to S Etter 16 ETTER101-153 | 42 |
| Alternate Living Expenses | Via Veracruz | Lease | 3,650 | 8/9/2013 | x | Lease Agreement | N/A | Doc ID 165478 | 3 |
| Alternate Living Expenses | FPL | Utilities & Services | 270 | 8/13/2013 | | FPL Pay History | N/A | Doc ID 165483 | 27 |
| Alternate Living Expenses | U & Me Moving | Moving Expenses | 5,000 | 8/15/2013 | | Bank Statement | ETTER000123 | Supp. to S Etter 16 ETTER101-153 | 23 |
| Alternate Living Expenses | FPL | Utilities & Services | 230 | 9/6/2013 | | FPL Pay History | N/A | Doc ID 165483 | 27 |
| **Alternate Living Expenses Total** | | | **$ 46,037** | | | | | | |
| Personal Property Damage Expense | Related Expenses | Replace Refrigerator Motor | $ 158 | 3/10/2009 | | Claimant | ETTER000040 | Exhibit 17 | 20 |
| Personal Property Damage Expense | Related Expenses | Repaired Microwave Panel | 163 | 11/3/2009 | | Claimant | ETTER000040 | Exhibit 17 | 20 |
| Personal Property Damage Expense | Related Expenses | Ice Maker Broken | 1,500 | 11/3/2009 | | Claimant | ETTER000040 | Exhibit 17 | 20 |
| Personal Property Damage Expense | Related Expenses | Shower door hinges replaced | 551 | 12/8/2010 | | Claimant | ETTER000040 | Exhibit 17 | 20 |
| Personal Property Damage Expense | Related Expenses | repaired samsung tv | 281 | 6/12/2011 | | Claimant | ETTER000040 | Exhibit 17 | 20 |
| Personal Property Damage Expense | Home Depot | Microwave | 369 | 4/9/2013 | | Claimant | ETTER000041-42 | Exhibit 16 | 2 |
| Personal Property Damage Expense | Surreal Sound | N/A | 50 | 8/21/2013 | | Bank Statement | ETTER000111 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 9 |
| Personal Property Damage Expense | Microwave Electric | Appliance Repair | 491 | 8/27/2013 | | Bank Statement | ETTER000110 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 10 |
| Personal Property Damage Expense | Surreal Sound | N/A | 1,922 | 9/4/2013 | | Bank Statement | ETTER000110 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 10 |
| Personal Property Damage Expense | Microwave Electric | Appliance Repair | 169 | 9/5/2013 | | Bank Statement | ETTER000111 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 11 |
| Personal Property Damage Expense | ADT | Home Security | 2,589 | 9/9/2013 | | Bank Statement | ETTER000111 | Supplement to S Etter 16 Invoices ETTER000101 - 000153 | 11 |
| **Personal Property Damage Expense Total** | | | **$ 8,241** | | | | | | |

Exhibit 4.2 (Revised)
Lost Equity - Steven & Cathy Etter

*Chinese Drywall Litigation Involving Priority Claimants*

| | | | | | Source Document |
|---|---|---|---|---|---|
| Initial Acquisition | | | | | |
| Purchase Price - Land & Construction | | | $ | 1,465,716 | Construction Contract - S. Etter Deposition Exhibit 2 (Etter000026) |
| Estimated Settlement Costs/Overage | | | | 59,127 | |
| Total Gross Amount Due from Claimant | | | $ | 1,524,843 | Etter Answers to Interrogatories, dated November 30, 2018 |
| | | | | | |
| Less | | | | | |
| Borrowings by Claimant | | | $ | (1,253,000) | Loan Statement - S. Etter Deposition Exhibit 3 |
| Amount Due from Claimant at Close | | a | $ | 271,843 | |
| | | | | | |
| Mortgage | | | | | |
| Mortgage Beginning Balance | | | $ | 1,253,000 | Loan Statement - S. Etter Deposition Exhibit 3 |
| Mortgage Balance at Payoff | | | | - | |
| Principal Payments Made | | b | $ | 1,253,000 | |
| | | | | | |
| Less: Cash Paid to Claimants upon Sale of Home | | | $ | (1,458,559) | HUD Statement dated 9/28/16 ETTER000017 |
| Adjustments from Closing Statement at Sale: | | | | | |
| County Taxes | | | | (8,388) * | HUD Statement dated 9/28/16 ETTER000017 |
| Emerald Harbor HOA | | | | 39 * | HUD Statement dated 9/28/16 ETTER000017 |
| LRECD - Sewer | | | | 3 * | HUD Statement dated 9/28/16 ETTER000017 |
| Utilities, Village of Tequesta | | | | (107) * | HUD Statement dated 9/28/16 ETTER000018 |
| Adjusted Cash Paid to Claimants upon Sale of Home | | c | $ | (1,467,012) | |
| | | | | | |
| Total Lost Equity | = a + b + c | | $ | 57,831 | |

4.A
Documents and Other Information Considered - Steven & Cathy Etter

*Chinese Drywall Litigation Involving Priority Claimants*

| No. | Claimant | General Description | First Page | Last Page |
|-----|----------|---------------------|------------|-----------|
| | | | Bate Stamp (if applicable) | |

**A. Pleadings and Other Legal Documents:**

| No. | Claimant | General Description | First Page | Last Page |
|-----|----------|---------------------|------------|-----------|
| 1 | All | Trial Plan for Property Damage Claims and Scheduling Order dated November 16, 2018 | | |
| 2 | Etter | Claimant Cathy Etter Answers to Interrogatories, dated November 30, 2018 | | |
| 3 | Etter | Priority Claimant Steven Etter Answers to Interrogatories, dated November 30, 2018 | | |
| 4 | Etter | Claimant Cathy Etter Answers to Defendant's Second Set of Interrogatories, dated December 4, 2018 | | |
| 5 | Etter | Priority Claimant Steven Etter Answers to Defendant's Second Set of Interrogatories, dated December 4, 2018 | | |
| 6 | Etter | Priority Claimant Steven Etter Supplemental Plaintiff Profile Form, dated December 13, 2018 (Doc ID. 366581) | | |

**B. Depositions & Corresponding Exhibits:**

| No. | Claimant | General Description | First Page | Last Page |
|-----|----------|---------------------|------------|-----------|
| 1 | Etter | Deposition Transcript of Cathy Etter, dated January 11, 2019 | | |
| 2 | Etter | Deposition Transcript of Steven Etter, dated January 11, 2019 | | |
| 3 | Etter | Deposition Exhibit 01 - Special Warranty Deed | | |
| 4 | Etter | Deposition Exhibit 02 - AIA Document A101-1997 Standard Form of Agreement | ETTER000018 | ETTER000027 |
| 5 | Etter | Deposition Exhibit 03 - Seacoast National Bank Loan Statement | | |
| 6 | Etter | Deposition Exhibit 04 - Matin County, Florida - Laurel Kelly, C.F.A - Summary | | |
| 7 | Etter | Deposition Exhibit 05 - IMR Test Labs - Analysis of Drywall Sample | CDWIND01-006020 | CDWIND01-006023 |
| 8 | Etter | Deposition Exhibit 06 - Declaration of Correctness of Square Footage on Chinese Drywall Clients Property for Remediation Damages | | |
| 9 | Etter | Deposition Exhibit 07 - Floor Plan and Site Plan - Lot 4 Emerald Harbour, Martin County, Florida | | |
| 10 | Etter | Deposition Exhibit 08 - Plaintiff Profile Form - Residential Properties | ETTER000001 | ETTER000035 |
| 11 | Etter | Deposition Exhibit 09 - January 4, 2019 Letter and September 18, 2012 Settlement Agreement and Release Between the Etters and USAA | | |
| 12 | Etter | Deposition Exhibit 10 - May 8, 2013 Letter, Check, and Confidential Settlement and General Release Agreement (Etters and J. Helm Construction) | ETTER000082 | ETTER000093 |
| 13 | Etter | Deposition Exhibit 11 - Photographs | Taishan000026 | Taishan000029 |
| 14 | Etter | Deposition Exhibit 12 - November 5, 2010 Chinese Drywall Screening, LLC Report Summary | | |
| 15 | Etter | Deposition Exhibit 13 - Chinese Drywall Screening, LLC Evidence Preservation Report | | |
| 16 | Etter | Deposition Exhibit 14 - Supplemental Plaintiff Profile Form - Residential and Commercial Properties (Non-Knauf) | | |
| 17 | Etter | Deposition Exhibit 15 - Christian Thomas Construction, Inc. Remediation Cost of Repairs | | |
| 18 | Etter | Deposition Exhibit 16 - Spreadsheets - Total Costs Directly Related to Chinese Drywall Remediation of the Etter Property | | |
| 19 | Etter | Deposition Exhibit 17 - Invoices | ETTER000021 | ETTER000081 |
| 20 | Etter | Deposition Exhibit 18 - Priority Claimant, Steven Etter's Answers to Defendants' Interrogatories | | |

**C. Supporting Documentation**

| No. | Claimant | General Description | First Page | Last Page |
|-----|----------|---------------------|------------|-----------|
| 6 | Etter | Etter Damages Summary Provided by Counsel | | |
| 4 | Etter | Supplement to S Etter 16 - Invoices | ETTER000101 | ETTER000153 |
| 1 | Etter | Doc ID. 165490 - Etter Relocation Receipts | | |
| 2 | Etter | Doc ID. 165478 - Etter - Etter Relocation Lease | | |
| 3 | Etter | Doc ID. 165483 - Etter Relocation Receipts 2 (Utilities) | | |
| 5 | Etter | HUD for Sale of Property | ETTER000017 | ETTER000020 |

4.A
Documents and Other Information Considered - Steven & Cathy Etter

*Chinese Drywall Litigation Involving Priority Claimants*

| | | | Bate Stamp (if applicable) | |
|---|---|---|---|---|
| No. | Claimant | General Description | First Page | Last Page |

D. Research and Other Sources:

| 1 | Etter | Martin County Public Records - Initial Purchase Price, dated December 13, 2004 |
| 2 | Etter | Martin County Public Records - Mortgage ($1,172,000), dated December 8, 2004 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-22408-Civ-COOKE

EDUARDO AND CARMEN AMORIN, *et al.*,
individually and on behalf of others similarly
situated,

        Plaintiffs,

vs.

TAISHAN GYPSUM CO., LTD., f/k/a
SHANDONG TIASHE DONGXIN CO. LTD.,
*et al.*,

        Defendants.

_____

# Exhibit 5 (Revised)

**Calculations of Damages for Priority Claimants**

# Andrew & Dawn Feldkamp

EXHIBIT TO THE EXPERT WITNESS REPORT OF:
MICHAEL P. ELKIN, CPA/CFF/ABV, CFE
IN THE PRIORITY CLAIMANT TRIAL

April 26, 2019



Exhibit 5 (Revised)
Data and Damage Summary - Andrew & Dawn Feldkamp

*Chinese Drywall Litigation Involving Priority Claimants*

| Data: | | *Reference / Notes* |
|---|---|---|
| Address of Affected property | 5237 Butte Street | *SPPF* |
| | Lehigh Acres, FL 33971 | *SPPF* |
| Date Affected property acquired | August 4, 2008 | *SPPF* |
| Date Chinese drywall installed | 2006 | *SPPF* |
| Date moved into Affected property | August 4, 2008 | *SPPF* |
| Date first aware of Chinese drywall | March-12 | *SPPF* |
| | | |
| Move out date to alternate living | April-12 | *ROG 1, #2* |
| Date returned to Affected property | Never | *ROG 1, #2* |
| End date for alternate living expenses | September 24, 2015 | *ROG 1, #2* |
| | | |
| Still own property? | N | *SPPF* |
| Bankruptcy caused by damage? | Y | *SPPF* |
| Foreclosure or short sale? | Y | *SPPF* |
| Affected property sold? | Y | *SPPF* |
| Sale date | September 24, 2015 | *SPPF* |
| Type of sale | Foreclosure | *SPPF* |
| | | |
| Remediation status | None | *SPPF* |
| Remediation period | N/A | *SPPF* |

| Damage Summary: | | |
|---|---|---|
| Full or Partial Out-of-Pocket Remediation Expenses | $                 - | |
| | | |
| Other Damages | | |
| Alternate Living Expenses | $          36,639 | *Exh. 5.1 (Revised)* |
| Personal Property Damage Expense | 970 | *Exh. 5.1 (Revised)* |
| Additional Damages | - | |
| | $          37,609 | |
| | | |
| Lost Equity | $            9,064 | *Exh. 5.2* |
| | | |
| Diminution in Value / Lost Equity | TBD | |
| | | |
| Loss of Use and Enjoyment | TBD | |
| | | |
| Punitive Damages | TBD | |

Exhibit 5.1 (Revised)
Damage Claims Detail - Andrew & Dawn Feldkamp

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Proof of Payment | Payment Method | Bates | Exhibit/ Doc. ID | PDF Page No. |
|------|--------|-------------|--------|------|--------------|----------------|------------------|----------------|-------|------------------|--------------|
| Alternate Living Expenses | Premier Realty Solutions | App Fee + Deposit | $ 75 * | 4/13/2012 | | Check | Yes | Check | N/A | Exhibit 9 | 58 |
| Alternate Living Expenses | Linda Bays | Deposit | - * | 4/26/2012 | | Check | Yes | Check | N/A | Exhibit 9 | 56 |
| Alternate Living Expenses | Premier Realty Solutions | First/Last | 900 * | 4/26/2012 | | Check | Yes | Check | N/A | Exhibit 9 | 57 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 564 | 5/23/2012 | | Check | Yes | Check | N/A | Exhibit 9 | 55 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 6/25/2012 | | Check | Yes | Check | N/A | Exhibit 9 | 54 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 7/25/2012 | | Check | Yes | Check | N/A | Exhibit 9 | 53 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 8/27/2012 | | Check | Yes | Check | N/A | Exhibit 9 | 52 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 9/26/2012 | | Check | Yes | Check | N/A | Exhibit 9 | 51 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 10/26/2012 | | Check | Yes | Check | N/A | Exhibit 9 | 50 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 11/26/2012 | | Check | Yes | Check | N/A | Exhibit 9 | 49 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 12/26/2012 | | Check | Yes | Check | N/A | Exhibit 9 | 48 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 1/27/2013 | | Check | Yes | Check | N/A | Exhibit 9 | 46 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 2/25/2013 | | Check | Yes | Check | N/A | Exhibit 9 | 45 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 3/26/2013 | | Check | Yes | Check | N/A | Exhibit 9 | 44 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 4/25/2013 | | Check | Yes | Check | N/A | Exhibit 9 | 43 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 5/25/2013 | | Check | Yes | Check | N/A | Exhibit 9 | 42 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 6/28/2013 | | Check | Yes | Check | N/A | Exhibit 9 | 41 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 7/26/2013 | | Check | Yes | Check | N/A | Exhibit 9 | 40 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 8/26/2013 | | Check | Yes | Check | N/A | Exhibit 9 | 39 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 9/25/2013 | | Check | Yes | Check | N/A | Exhibit 9 | 38 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 10/31/2013 | | Check | Yes | Check | N/A | Exhibit 9 | 37 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 11/29/2013 | | Check | Yes | Check | N/A | Exhibit 9 | 36 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 12/27/2013 | | Check | Yes | Check | N/A | Exhibit 9 | 35 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 1/26/2014 | | Check | Yes | Check | N/A | Exhibit 9 | 34 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 2/25/2014 | | Check | Yes | Check | N/A | Exhibit 9 | 33 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 3/25/2014 | | Check | Yes | Check | N/A | Exhibit 9 | 32 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 4/26/2014 | | Check | Yes | Check | N/A | Exhibit 9 | 31 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 5/27/2014 | | Check | Yes | Check | N/A | Exhibit 9 | 30 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 6/26/2014 | | Check | Yes | Check | N/A | Exhibit 9 | 29 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 7/28/2014 | | Check | Yes | Check | N/A | Exhibit 9 | 28 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 8/26/2014 | | Check | Yes | Check | N/A | Exhibit 9 | 27 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 9/28/2014 | | Check | Yes | Check | N/A | Exhibit 9 | 26 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 10/26/2014 | | Check | Yes | Check | N/A | Exhibit 9 | 25 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 11/26/2014 | | Check | Yes | Check | N/A | Exhibit 9 | 24 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 12/28/2014 | | Check | Yes | Check | N/A | Exhibit 9 | 23 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 1/25/2015 | | Check | Yes | Check | N/A | Exhibit 9 | 22 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 2/24/2015 | | Check | Yes | Check | N/A | Exhibit 9 | 21 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 3/27/2015 | | Check | Yes | Check | N/A | Exhibit 9 | 20 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 4/29/2015 | | Check | Yes | Check | N/A | Exhibit 9 | 19 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 5/29/2015 | | Check | Yes | Check | N/A | Exhibit 9 | 18 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 6/26/2015 | | Check | Yes | Check | N/A | Exhibit 9 | 17 |
| Alternate Living Expenses | Premier Realty Solutions | Rent Payment | 900 | 7/27/2015 | | Check | Yes | Check | N/A | Exhibit 9 | 15 |
| Alternate Living Expenses | Gulf Coast Realty | Rent Payment | 900 | 8/27/2015 | | Check | Yes | Check | N/A | Exhibit 9 | 14 |

Exhibit 5.1 (Revised)
Damage Claims Detail - Andrew & Dawn Feldkamp

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Proof of Payment | Payment Method | Bates | Exhibit/ Doc. ID | PDF Page No. |
|------|--------|-------------|--------|------|--------------|----------------|------------------|----------------|-------|------------------|--------------|
| **Alternate Living Expenses Total** | | | $ 36,639 | | | | | | | | |
| Personal Property Damage Expense | Penguin Heating & Air Conditioning | Invoice for Diagnostic of A/C Issues | $ 190 | 8/9/2008 | | Invoice | No | N/A | N/A | Exhibit 7 | 1 |
| Personal Property Damage Expense | Larry's Air Conditioning & Heating, Inc. | A/C Repair | 105 | 4/13/2009 | | Invoice | No | Check | N/A | Exhibit 7 | 2 |
| Personal Property Damage Expense | Larry's Air Conditioning & Heating, Inc. | A/C Repair | 475 | 8/27/2009 | | Invoice | No | Check | N/A | Exhibit 7 | 3 |
| Personal Property Damage Expense | Larry's Air Conditioning & Heating, Inc. | A/C Repair | 100 | 4/8/2011 | | Invoice | No | Check | N/A | Exhibit 7 | 5 |
| Personal Property Damage Expense | Larry's Air Conditioning & Heating, Inc. | A/C Repair | 100 | 8/25/2011 | | Invoice | No | Check | N/A | Exhibit 7 | 4 |
| **Personal Property Damage Expense Total** | | | $ 970 | | | | | | | | |

Exhibit 5.2
Lost Equity - Andrew & Dawn Feldkamp

*Chinese Drywall Litigation Involving Priority Claimants*

| | | | | Source Document |
|---|---|---|---|---|
| **Initial Acquisition** | | | | |
| Purchase Price | | $ | 125,000 | Contract for Purchase Doc ID 366298 |
| Settlement Charges | | | N/A | |
| Total Gross Amount Due from Claimant | | $ | 125,000 | |
| | | | | |
| **Less** | | | | |
| Deposit Made by Claimant | | $ | (3,750) | Contract for Purchase Doc ID 366298 |
| Borrowings by Claimant | | | N/A | |
| Credits | | | N/A | |
| Amount Due from Claimant at Close | | $ | 121,250 | |
| | | | | |
| **Funds Paid by Claimant** | | | | |
| Deposit Paid with Contract | | $ | 2,500 | Contract for Purchase Doc ID 366298 |
| Cash Paid at Closing | | | 1,250 | Contract for Purchase Doc ID 366298 |
| Total Payments for Initial Purchase | a | $ | 3,750 | |
| | | | | |
| **Mortgage** | | | | |
| Mortgage Beginning Balance | | $ | 124,019 | Mortgage Doc ID. 366340 |
| Mortgage Balance at Payoff | | | 118,705 | Exhibit 12 Final Judgment of Foreclosure |
| Principal Payments Made | b | $ | 5,314 | Form 1098 Mortgage Interest Statement |
| | | | | |
| Total Lost Equity | = a + b | $ | 9,064 | |

5.A
Documents and Other Information Considered - Andrew & Dawn Feldkamp

*Chinese Drywall Litigation Involving Priority Claimants*

| | | | Bate Stamp (if applicable) | |
|---|---|---|---|---|
| No. | Claimant | General Description | First Page | Last Page |

**A. Pleadings and Other Legal Documents:**

| | | | | |
|---|---|---|---|---|
| 1 | All | Trial Plan for Property Damage Claims and Scheduling Order dated November 16, 2018 | | |
| 2 | Feldkamp | Priority Claimant Andrew Feldkamp Answers to Interrogatories, dated November 30, 2018 | | |
| 3 | Feldkamp | Priority Claimant Andrew Feldkamp Answers to Defendant's Second Set of Interrogatories, dated December 4, 2018 | | |
| 4 | Feldkamp | Priority Claimant Dawn Feldkamp Answers to Interrogatories, dated November 30, 2018 | | |
| 5 | Feldkamp | Priority Claimant Dawn Feldkamp Answers to Defendant's Second Set of Interrogatories, dated December 4, 2018 | | |
| 6 | Feldkamp | Priority Claimant Andrew Feldkamp First Amended Answers to Interrogatories, dated December 12, 2018 | | |
| 7 | Feldkamp | Priority Claimant Dawn Feldkamp First Amended Answers to Interrogatories, dated December 12, 2018 | | |
| 8 | Feldkamp | Andrew Feldkamp First Amended Supplemental Plaintiff Profile Form, dated December 5, 2018 | | |

**B. Depositions & Corresponding Exhibits:**

| | | | | |
|---|---|---|---|---|
| 1 | Feldkamp | Deposition Transcript of Andrew Feldkamp, dated December 13, 2018 | | |
| 2 | Feldkamp | Deposition Transcript of Dawn Feldkamp, dated December 13, 2018 | | |
| 3 | Feldkamp | Deposition Exhibit 01 - "As Is" Contract for Sale and Purchase | | |
| 4 | Feldkamp | Deposition Exhibit 02 - Lee County Property Appraiser - Online Parcel Inquiry - Property Data | | |
| 5 | Feldkamp | Deposition Exhibit 03 - Plaintiff Profile Form - Residential Properties | Feldkamp,D0001 | Feldkamp,D0023 |
| 6 | Feldkamp | Deposition Exhibit 04 - Comprehensive Building Consultants Confidential Chinese Drywall Inspection Report | | |
| 7 | Feldkamp | Deposition Exhibit 05 - Important Taishan Notice - Supplemental Submission of Evidence for the Taishan Trial Scheduled on April 28, 2015 | | |
| 8 | Feldkamp | Deposition Exhibit 06 - Priority Claimant Andrew Feldkamp's First Amended Answers to Interrogatories | | |
| 9 | Feldkamp | Deposition Exhibit 07 - Air-Conditioning Invoices | | |
| 10 | Feldkamp | Deposition Exhibit 08 - First Amended Supplemental Plaintiff Profile Form | | |
| 11 | Feldkamp | Deposition Exhibit 09 - Suncoast Credit Union September 21, 2018 Letter and Check Copies | | |
| 12 | Feldkamp | Deposition Exhibit 10 - Uniform Borrower Assistance | | |
| 13 | Feldkamp | Deposition Exhibit 11 - Notice of Lis Pendens | | |
| 14 | Feldkamp | Deposition Exhibit 12 - Final Judgment of Foreclosure | | |
| 15 | Feldkamp | Deposition Exhibit 13 - United States Bankruptcy Court Middle District of Florida Voluntary Petition | | |
| 16 | Feldkamp | Deposition Exhibit 14 - Chapter 13 Standing Trustee's Final Report and Account | | |
| 17 | Feldkamp | Deposition Exhibit 04 - Comprehensive Building Consultants Confidential Chinese Drywall Inspection Report | | |
| 18 | Feldkamp | Deposition Exhibit 07 - Air-Conditioning Invoices | | |

5.A
Documents and Other Information Considered - Andrew & Dawn Feldkamp

*Chinese Drywall Litigation Involving Priority Claimants*

*Bate Stamp (if applicable)*

| No. | Claimant | General Description | First Page | Last Page |
|-----|----------|---------------------|------------|-----------|

C. Supporting Documentation

| 1 | Feldkamp | Andrew and Dawn Feldkamp Out of Pocket Damages Summary Provided by Counsel | | |
| 2 | Feldkamp | Doc ID. 365795 - Feldkamp proof of payments for ALE | | |
| 3 | Feldkamp | Doc ID. 366298 - Feldkamp AS IS Contract for Sale and Purchase | | |
| 4 | Feldkamp | Doc ID. 366301 - Feldkamp Mortgage Statement from Fifth Third Bank | | |
| 5 | Feldkamp | Doc ID. 366315 - Feldkamp Lease Agreement for ALE | | |
| 6 | Feldkamp | Doc ID. 366316 - Feldkamp HVAC repairs by Penguin Air and Larry's Air | | |
| 7 | Feldkamp | Doc ID. 365789 - Mortgage Payment History - 5th 3rd Bank - Feldkamp | | |
| 8 | Feldkamp | Doc ID. 265945 - Feldkamp - gbi settlement check | | |
| 9 | Feldkamp | Doc ID. 366063 - Feldkamp - gbi holdback settlement check | | |
| 10 | Feldkamp | Doc ID. 365946 - Feldkamp - gbi settlement check | | |
| 11 | Feldkamp | Doc ID. 366315 - Feldkamp - lease agreement 2012 and extensions for 2013, 2014 and 2015 | | |
| 12 | Feldkamp | Doc ID. 366299 - Feldkamp - letter to 53 bank | | |
| 13 | Feldkamp | Doc ID. 366340 - Feldkamp - mortgage | | |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-22408-Civ-COOKE

EDUARDO AND CARMEN AMORIN, *et al.*,
individually and on behalf of others similarly
situated,

      Plaintiffs,

vs.

TAISHAN GYPSUM CO., LTD., f/k/a
SHANDONG TIASHE DONGXIN CO. LTD.,
*et al.*,

      Defendants.

_____

# Exhibit 6 (Revised)

## Calculations of Damages for Priority Claimants

# William & Vicki Foster

EXHIBIT TO THE EXPERT WITNESS REPORT OF:
MICHAEL P. ELKIN, CPA/CFF/ABV, CFE
IN THE PRIORITY CLAIMANT TRIAL

April 26, 2019



Exhibit 6 (Revised)
Data and Damage Summary - William and Vicki Foster

*Chinese Drywall Litigation Involving Priority Claimants*

| Data: | | *Reference / Notes* |
|---|---|---|
| Address of Affected property | 10814 Fortina Drive | *SPPF* |
| | Fort Myers, FL 33913 | *SPPF* |
| Date Affected property acquired | March 2, 2007 | *SPPF* |
| Date Chinese drywall installed | 2006 | *SPPF* |
| Date moved into Affected property | March 2, 2007 | *SPPF* |
| Date first aware of Chinese drywall | February-09 | *SPPF* |
| | | |
| Move out date to alternate living | October 3, 2009 | *ROG 1, #2* |
| Date returned to Affected property | November 17, 2012 | *ROG 1, #2* |
| End date for alternate living expenses | November 17, 2012 | *ROG 1, #2* |
| | | |
| Still own property? | Y | *SPPF* |
| Bankruptcy caused by damage? | N | *SPPF* |
| Foreclosure or short sale? | N | *SPPF* |
| Affected property sold? | N | *SPPF* |
| Sale date | N/A | *SPPF* |
| Type of sale | N/A | *SPPF* |
| | | |
| Remediation status | Partial | *SPPF* |
| Remediation period | April 22, 2012 - June 13, 2013 | *SPPF* |

| Damage Summary: | | |
|---|---|---|
| Full or Partial Out-of-Pocket Remediation Expenses | $            154,063 | *Exh 6.1 (Revised)* |
| | | |
| Other Damages | | |
| Alternate Living Expenses | $            43,510 | *Exh 6.1 (Revised)* |
| Personal Property Damage Expense | 71,423 | *Exh 6.1 (Revised)* |
| Additional Damages | 94,528 | *Exh 6.1 (Revised)* |
| | $            209,461 | |
| | | |
| Lost Equity | TBD | |
| | | |
| Diminution in Value | TBD | |
| | | |
| Loss of Use and Enjoyment | TBD | |
| | | |
| Punitive Damages | TBD | |

Exhibit 6.1 (Revised)
Damage Claims Detail - William and Vicki Foster

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Remediation | Staples | Copies made for attorney | $ 24 | 3/7/2012 | | Credit Card Statement | | 365749 | 86 |
| Remediation | Steven E. Leftwich | Work Write-up Fee for repairs over $100,000 | 1,000 | 3/29/2012 | | Invoice | | 365749 | 51 |
| Remediation | Kevin Polkow | Polkow Construction - Remediation | 3,000 | 4/26/2012 | | Bank Statement | | 365749 | 100 |
| Remediation | Kevin Polkow | Polkow Construction - Remediation | 4,000 | 5/25/2012 | | Bank Statement | | 365749 | 104 |
| Remediation | Intuitive Environmental Solutions LLC | CDW Evidence Sampling Preservation Investigation and Report | 1,300 | 6/4/2012 | | Bank Statement | | 365749 | 104 |
| Remediation | Build.com | Outdoor Lighting Fixtures | - * | 6/17/2012 | | Invoice | F000378 | V Foster Exhibit 04 | 74 |
| Remediation | Kevin Polkow | Polkow Construction - Remediation | 5,000 | 6/27/2012 | | Bank Statement | | 365749 | 107 |
| Remediation | Lighting New York | Golden Lighting Rockefeller Minio Pendant | 185 * | 6/28/2012 | | Receipt | F000343 | V Foster Exhibit 04 | 39 |
| Remediation | Lighting New York | Lighting Fixtures | 243 * | 7/2/2012 | | Receipt | F000421 | V Foster Exhibit 04 | 117 |
| Remediation | The Kiefer Companies | Brass Hooks for Chandelier | 34 * | 7/3/2012 | | Invoice/Credit Card Statement | | 365749 | 46/91 |
| Remediation | Kevin Polkow | Polkow Construction - Remediation | 9,000 | 7/31/2012 | | Bank Statement | | 365749 | 111 |
| Remediation | Lowes | (Ceiling Fan) | 363 * | 8/2/2012 | | Receipt | | 365749 | 63 |
| Remediation | Lighting New York | Various Fans - Family Room | 491 * | 8/5/2012 | | Credit Card Statement | | 365749 | 92 |
| Remediation | Lighting New York | Various Fans - Family Room | 471 * | 8/5/2012 | | Credit Card Statement | | 365749 | 92 |
| Remediation | Build.com | Single Light Small Outdoor Fixture | - * | 8/5/2012 | | Invoice | F000400 | V Foster Exhibit 04 | 96 |
| Remediation | Intuitive Environmental Solutions LLC | CDW Evidence Sampling Preservation Investigation and Report | 700 | 8/8/2012 | | Bank Statement | | 365749 | 111 |
| Remediation | Amazon | Moen Kitchen Faucet | 100 * | 8/20/2012 | | Invoice | F000399 | V Foster Exhibit 04 | 95 |
| Remediation | Kevin Polkow | Polkow Construction - Remediation | 10,000 | 8/28/2012 | | Bank Statement | | 365749 | 116 |
| Remediation | Build.com | Various Items for Sink and Shower | 2,092 | 8/29/2012 | | Credit Card Statement | | 365749 | 94 |
| Remediation | Hadinger Flooring | Various Items for Flooring | 3,131 | 8/31/2012 | | Credit Card Statement | | 365749 | 94 |
| Remediation | Best Buy | Miscellaneous | 43 | 9/5/2012 | | Credit Card Statement | | 365749 | 94 |
| Remediation | Kevin Polkow | Polkow Construction - Remediation | 8,000 | 9/11/2012 | | Bank Statement | | 365749 | 116 |
| Remediation | Kevin Polkow | Polkow Construction - Remediation | 20,438 | 9/12/2012 | | Bank Statement | | 365749 | 116 |
| Remediation | Kevin Polkow | Polkow Construction - Remediation | 2,500 | 9/12/2012 | | Bank Statement | | 365749 | 116 |
| Remediation | Overstock | Aquasuite Filter FCT - Laundry Room Faucet | 489 | 9/14/2012 | | Credit Card Statement | | 365749 | 94 |
| Remediation | The Home Depot | Miscellaneous | 46 | 9/17/2012 | | Credit Card Statement | | 365749 | 94 |
| Remediation | The Home Depot | Miscellaneous | 35 | 9/17/2012 | | Credit Card Statement | | 365749 | 94 |
| Remediation | The Home Depot | Miscellaneous | 48 | 9/21/2012 | | Credit Card Statement | | 365749 | 95 |
| Remediation | The Home Depot | Miscellaneous | 48 | 9/21/2012 | | Credit Card Statement | | 365749 | 95 |
| Remediation | The Home Depot | Miscellaneous | 63 | 9/22/2012 | | Credit Card Statement | | 365749 | 95 |
| Remediation | The Home Depot | Miscellaneous | 48 | 9/22/2012 | | Credit Card Statement | | 365749 | 95 |
| Remediation | The Home Depot | Miscellaneous | 50 | 9/24/2012 | | Credit Card Statement | | 365749 | 95 |
| Remediation | PMC | Subcontractor | 8,000 | 9/26/2012 | | Bank Statement | | 365749 | 119 |
| Remediation | Macco-Hadinger LLC | (Flooring) | 1,352 * | 10/8/2012 | | Credit Card Statement | | 365749 | 95 |
| Remediation | Build.com | Rinse Basket and Knobs | 165 | 10/10/2012 | | Credit Card Statement | | 365749 | 6 & 96 |
| Remediation | The Home Depot | Miscellaneous | 20 | 10/12/2012 | | Credit Card Statement | | 365749 | 96 |
| Remediation | The Home Depot | Miscellaneous | 8 | 10/14/2012 | | Credit Card Statement | | 365749 | 96 |
| Remediation | Kevin Polkow | Polkow Construction - Remediation | 9,000 | 10/17/2012 | | Bank Statement | | 365749 | 124 |
| Remediation | Costco | 2 Cantilever Wall Mounts | 106 | 10/23/2012 | | Credit Card Statement | | 365749 | 98 |
| Remediation | Kevin Polkow | Polkow Construction - Remediation | 9,000 | 10/25/2012 | | Bank Statement | | 365749 | 124 |
| Remediation | Two Men and a Truck | Moving Expense | 200 | 10/26/2012 | | Credit Card Statement | | 365749 | 98 |
| Remediation | Build.com | Handleset Interior Lever | - * | 10/27/2012 | | Receipt | F000405 | V Foster Exhibit 04 | 101 |
| Remediation | Build.com | Medina Style Handleset | 158 | 10/28/2012 | | Receipt/Credit Card Statement | | 365749 | 26/98 |
| Remediation | Budget Blinds | Budget Blinds | 5,084 * | 10/29/2012 | | Invoice | F000376 | V Foster Exhibit 04 | 72 |
| Remediation | Raymond Building Supply | Replacement of all appliances | 18,928 | 10/29/2012 | | Invoice | | 367444 | 3 |
| Remediation | The Home Depot | Miscellaneous | 8 | 10/30/2012 | | Credit Card Statement | | 365749 | 98 |
| Remediation | Gulf Stone Construction | Gulf Stone Construction | 5,200 | 10/31/2012 | | Bank Statement | | 365749 | 124 |
| Remediation | Budget Blinds | Budget blinds | 2,450 * | 11/2/2012 | | Credit Card Statement | | 365749 | 97 |
| Remediation | Macco-Hadinger LLC | (Flooring) | 715 * | 11/7/2012 | | Credit Card Statement | | 365749 | 97 |
| Remediation | The Home Depot | (Toilets) | 549 * | 11/7/2012 | | Credit Card Statement | | 365749 | 98 |
| Remediation | Kevin Polkow | Polkow Construction - Remediation | 2,500 | 11/9/2012 | | Bank Statement | | 365749 | 124 |
| Remediation | Sherwin Williams | Paint | 15 | 11/10/2012 | | Credit Card Statement | | 365749 | 98 |
| Remediation | Wayfair | Miscellaneous | 307 | 11/12/2012 | | Credit Card Statement | | 365749 | 98 |
| Remediation | Ray Allen Electric | Ray Allen Electric | 2,500 | 11/13/2012 | | Bank Statement | | 365749 | 124 |
| Remediation | Kevin Polkow | Polkow Construction - Remediation | 3,000 | 11/13/2012 | | Bank Statement | | 365749 | 124 |
| Remediation | Todd | Tiles | 400 | 11/14/2012 | | Bank Statement | | 365749 | 124 |
| Remediation | Tile Outlets of America | Medallion Polished | 158 | 11/14/2012 | | Credit Card Statement | | 365749 | 98 |
| Remediation | Raymond Building Supply | Replacement of all appliances | 1,107 | 11/15/2012 | | Invoice | | 367444 | 4 |

Exhibit 6.1 (Revised)
Damage Claims Detail - William and Vicki Foster

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Remediation | Masters Touch | Remediation Work | 570 | 11/19/2012 | | Bank Statement | | 365749 | 127 |
| Remediation | Two Men and a Truck | Moving Expense | 600 | 11/19/2012 | | Credit Card Statement | | 365749 | 98 |
| Remediation | Ray Allen Electric | Ray Allen Electric | 75 | 11/26/2012 | | Bank Statement | | 365749 | 127 |
| Remediation | Bed Bath & Beyond | Miscellaneous | 25 | 12/10/2012 | | Receipt | | 365749 | 64 |
| Remediation | The Home Depot | Miscellaneous | 11 | 12/10/2012 | | Receipt | | 365749 | 28 |
| Remediation | Ray Allen Electric | Ray Allen Electric | 262 | 12/18/2012 | | Bank Statement | | 365749 | 132 |
| Remediation | PCC Tile | CornerCaddy Shelf Crema Sahara | 95 | 1/18/2013 | | Invoice & Receipt | | 365749 | 62 |
| Remediation | The Home Depot | Miscellaneous | 75 | 1/26/2013 | | Receipt | | 365749 | 64 |
| Remediation | Bonita Tile Market | Various Items | 634 | 2/11/2013 | | Receipt | | 365749 | 79 |
| Remediation | My Tile Backsplash | Bella Glass Tiles Opulence 1 x 1 Mosaic Series | 902 | 3/4/2013 | | Invoice | | 365749 | 18 |
| Remediation | Landmark Metalcoat | Tumbled Large Bar Liner | 120 | 4/1/2013 | | Credit Card Statement | | 365749 | 169 |
| Remediation | Kevin Polkow | Polkow Construction - Remediation | 699 | 4/5/2013 | | Bank Statement | | 365749 | 135 |
| Remediation | Lowes | Brown Slide Dimmer & Decorator Rocker Nylon Wall | 24 | 4/24/2013 | | Receipt | | 365749 | 65 |
| Remediation | Lowes | Garage cabinets | 753 * | 4/25/2013 | | Receipt | F000403 | V Foster Exhibit 04 | 99 |
| Remediation | Dennis Reynolds | Outlets - Kitchen Changed | 81 | 5/17/2013 | | Bank Statement | | 365749 | 139 |
| Remediation | Gulf Stone Construction | Kitchen Backsplash Installation | 1,100 | 6/13/2013 | | Bank Statement | | 365749 | 139 |
| Remediation | Gulf Stone Construction | Repair Work | 650 | 6/18/2013 | | Bank Statement | | 365749 | 144 |
| Remediation | Kevin Polkow | Polkow Construction - Remediation | 600 | 8/6/2013 | | Bank Statement | | 365749 | 148 |
| Remediation | Kevin Polkow | Polkow Construction - Remediation | 600 | 8/8/2013 | | Bank Statement | | 365749 | 148 |
| Remediation | Kevin Polkow | Polkow Construction - Remediation | 1,000 | 8/14/2013 | | Bank Statement | | 365749 | 148 |
| Remediation | Ray Allen Electric | Ray Allen Electric | 900 | 8/27/2013 | | Bank Statement | | 365749 | 152 |
| Remediation | Amazon | Moen Kingsley 24-Inch Towel Bar | 46 | 5/2/2014 | | Invoice | | 365749 | 29 |
| Remediation | Tom Collins | Old Fixtures Repaired | 240 | 8/2/2017 | | Bank Statement | | 365749 | 155 |
| Remediation | Tom Collins | Old Fixtures Repaired | 130 | 8/2/2017 | | Bank Statement | | 365749 | 155 |
| **Remediation Total** | | | $ 154,063 | | | | | | |
| Alternate Living Expenses | Robert Rorebeck | Bill of Sale - Furniture - Colonial Condo | $ 2,500 | 9/30/2009 | | Bill of Sale | | 365749 | 82 |
| Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condo | 850 | 10/1/2009 | | Lease Agreement | | 125033 | 1 |
| Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 99 | 10/1/2009 | | Claimant | | 125036 | |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 30 | 10/26/2009 | | FPL Statement | | 125036 | 27 |
| Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condo | 850 | 11/1/2009 | | Lease Agreement | | 125033 | |
| Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 50 | 11/1/2009 | | Claimant | | 125036 | |
| Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 56 | 11/1/2009 | | Claimant | | 125036 | |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 50 | 11/23/2009 | | FPL Statement | | 125036 | 27 |
| Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condo | 850 | 12/1/2009 | | Lease Agreement | | 125033 | |
| Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 152 | 12/1/2009 | | Invoice | | 367445 | 30 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 51 | 12/28/2009 | | FPL Statement | | 125036 | 27 |
| Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condo | 850 | 1/1/2010 | | Lease Agreement | | 125033 | |
| Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 104 | 1/1/2010 | | Invoice | | 367445 | 30 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 29 * | 1/27/2010 | | FPL Statement | | 125036 | 27 |
| Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condo | 850 | 2/1/2010 | | Lease Agreement | | 125033 | |
| Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 104 | 2/1/2010 | | Invoice | | 367445 | 32 |
| Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condo | 850 | 3/1/2010 | | Lease Agreement | | 125033 | |
| Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 104 | 3/1/2010 | | Invoice | | 367445 | 34 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 46 | 3/1/2010 | | FPL Statement | | 125036 | 27 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 41 | 3/29/2010 | | FPL Statement | | 125036 | 27 |
| Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condo | 850 | 4/1/2010 | | Lease Agreement | | 125033 | |
| Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 104 | 4/1/2010 | | Invoice | | 367445 | 36 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 39 | 4/26/2010 | | FPL Statement | | 125036 | 27 |
| Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condo | 850 | 5/1/2010 | | Lease Agreement | | 125033 | |
| Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 104 | 5/1/2010 | | Claimant | | 125036 | |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 51 | 5/28/2010 | | FPL Statement | | 125036 | 27 |
| Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condo | 850 | 6/1/2010 | | Lease Agreement | | 125033 | |
| Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 136 | 6/1/2010 | | Claimant | | 125036 | |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 67 | 6/25/2010 | | FPL Statement | | 125036 | 27 |
| Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condo | 850 | 7/1/2010 | | Lease Agreement | | 125033 | |
| Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 136 | 7/1/2010 | | Claimant | | 125036 | |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 49 | 7/27/2010 | | FPL Statement | | 125036 | 27 |
| Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condo | 850 | 8/1/2010 | | Lease Agreement | | 125033 | |

Exhibit 6.1 (Revised)
Damage Claims Detail - William and Vicki Foster

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 136 | 8/1/2010 | | Claimant | | 125036 | |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 74 | 8/25/2010 | | FPL Statement | | 125036 | 27 |
| Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condo | 850 | 9/1/2010 | | Lease Agreement | | 125033 | |
| Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 136 | 9/1/2010 | | Claimant | | 125036 | |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 76 | 9/24/2010 | | FPL Statement | | 125036 | 28 |
| Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condo | 850 | 10/1/2010 | | Lease Agreement | | 125033 | |
| Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 86 | 10/1/2010 | | Claimant | | 125036 | |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 74 | 10/25/2010 | | FPL Statement | | 125036 | 28 |
| Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condo | 850 | 11/1/2010 | | Lease Agreement | | 125033 | |
| Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 95 | 11/1/2010 | | Claimant | | 125036 | |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 36 | 11/29/2010 | | FPL Statement | | 125036 | 28 |
| Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condo | 850 | 12/1/2010 | | Lease Agreement | | 125033 | |
| Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 95 | 12/15/2010 | | Bank Statement | | 367445 | 4 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 43 | 12/27/2010 | | FPL Statement | | 125036 | 28 |
| Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condo | 850 | 1/1/2011 | | Lease Agreement | | 125033 | |
| Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 95 | 1/14/2011 | | Bank Statement | | 367445 | 8 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 42 | 1/26/2011 | | FPL Statement | | 125036 | 28 |
| Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condo | 850 | 2/1/2011 | | Lease Agreement | | 125033 | |
| Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 95 | 2/15/2011 | | Bank Statement | | 367445 | 11 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 58 | 2/25/2011 | | FPL Statement | | 125036 | 28 |
| Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condo | 850 | 3/1/2011 | | Lease Agreement | | 125033 | |
| Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 95 | 3/15/2011 | | Bank Statement | | 367445 | 15 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 38 | 3/25/2011 | | FPL Statement | | 125036 | 28 |
| Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condo | 850 | 4/1/2011 | | Lease Agreement | | 125033 | |
| Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 95 | 4/13/2011 | | Bank Statement | | 367445 | 19 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 62 | 4/26/2011 | | FPL Statement | | 125036 | 28 |
| Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condo | 850 | 5/1/2011 | | Lease Agreement | | 125033 | |
| Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 100 | 5/16/2011 | | Bank Statement | | 367445 | 23 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 59 | 5/25/2011 | | FPL Statement | | 125036 | 28 |
| Alternate Living Expenses | N/A - Foregone Rent from Robert Rorebeck | Foregone Rent - Colonial Condo | 850 | 6/1/2011 | | Lease Agreement | | 125033 | |
| Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 90 | 6/1/2011 | | Claimant | | 125036 | |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 75 | 6/23/2011 | | FPL Statement | | 125036 | 28 |
| Alternate Living Expenses | Jack Walsh | Rent/Deposit Removed | 1,358 * | 7/7/2011 | | Check | | 125036 | 33 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 99 | 7/8/2011 | | FPL Statement | | 125036 | 28 |
| Alternate Living Expenses | Sherwin Williams | Paint | 26 * | 7/9/2011 | | Credit Card Statement | | 365749 | 83 |
| Alternate Living Expenses | Comcast | Cable & Phone - Colonial Country Club | 94 | 7/11/2011 | | Bank Statement | | 367445 | 27 |
| Alternate Living Expenses | U-Haul Moving & Storage | Moving Expense | 59 * | 7/12/2011 | | Credit Card Statement | | 365749 | 83 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Colonial Country | 16 | 7/13/2011 | | FPL Statement | | 125036 | 28 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 99 | 7/28/2011 | | FPL Statement | | 125036 | 51 |
| Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 94 | 8/1/2011 | | Claimant | | 125036 | |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 34 | 8/22/2011 | | FPL Statement | | 125036 | 51 |
| Alternate Living Expenses | Jack Walsh | Rent | 905 | 8/25/2011 | | Check | | 125036 | 34 |
| Alternate Living Expenses | Jack Walsh | Water bill | 63 | 8/29/2011 | | Check | | 125036 | 35 |
| Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 114 | 9/1/2011 | | Claimant | | 125036 | |
| Alternate Living Expenses | Jack Walsh | Rent & Water | 968 | 9/23/2011 | | Check | | 125036 | 36 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 150 | 9/23/2011 | | FPL Statement | | 125036 | 51 |
| Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 218 | 10/12/2011 | | Bank Statement | | 125036 | 6 |
| Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 95 | 10/17/2011 | | Bank Statement | | 125036 | 6 |
| Alternate Living Expenses | Jack Walsh | Rent & Water | 985 | 10/21/2011 | | Check | | 125036 | 37 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 128 | 10/24/2011 | | FPL Statement | | 125036 | 51 |
| Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 87 | 11/22/2011 | | Bank Statement | | 125036 | 6 |
| Alternate Living Expenses | Jack Walsh | Rent & Water | 970 | 11/23/2011 | | Check | | 125036 | 38 |
| Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 87 | 11/25/2011 | | Credit Card Statement | | 125036 | 3 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 57 | 11/26/2011 | | FPL Statement | | 125036 | 51 |
| Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 95 | 12/1/2011 | | Claimant | | 125036 | |
| Alternate Living Expenses | Jack Walsh | Rent & Water | 967 | 12/22/2011 | | Check | | 125036 | 39 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 71 | 12/27/2011 | | FPL Statement | | 125036 | 51 |
| Alternate Living Expenses | Jack Walsh | Rent & Water | 965 | 1/25/2012 | | Check | | 125036 | 40 |

Exhibit 6.1 (Revised)
Damage Claims Detail - William and Vicki Foster

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 87 | 1/25/2012 | | Credit Card Statement | | 125036 | 3 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 64 | 1/27/2012 | | FPL Statement | | 125036 | 51 |
| Alternate Living Expenses | Jack Walsh | Rent & Water | 977 | 2/23/2012 | | Check | | 125036 | 41 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 63 | 2/27/2012 | | FPL Statement | | 125036 | 51 |
| Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 87 | 2/27/2012 | | Credit Card Statement | | 125036 | 3 |
| Alternate Living Expenses | Jack Walsh | Rent & Water | 977 | 3/23/2012 | | Check | | 125036 | 42 |
| Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 88 | 3/26/2012 | | Credit Card Statement | | 125036 | 3 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 80 | 3/27/2012 | | FPL Statement | | 125036 | 51 |
| Alternate Living Expenses | Jack Walsh | Rent & Water | 1,003 | 4/23/2012 | | Check | | 125036 | 43 |
| Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 88 | 4/25/2012 | | Credit Card Statement | | 125036 | 3 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 112 | 4/26/2012 | | FPL Statement | | 125036 | 51 |
| Alternate Living Expenses | Jack Walsh | Rent & Water | 1,024 | 5/24/2012 | | Check | | 125036 | 44 |
| Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 90 | 5/25/2012 | | Credit Card Statement | | 125036 | 3 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 151 | 5/31/2012 | | FPL Statement | | 125036 | 51 |
| Alternate Living Expenses | Jack Walsh | Rent & Water | 1,018 | 6/22/2012 | | Check | | 125036 | 45 |
| Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 88 | 6/25/2012 | | Credit Card Statement | | 125036 | 3 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 181 | 6/27/2012 | | FPL Statement | | 125036 | 51 |
| Alternate Living Expenses | Jack Walsh | Rent & Water | 1,032 | 7/25/2012 | | Check | | 125036 | 46 |
| Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 109 | 7/25/2012 | | Credit Card Statement | | 125036 | 3 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 140 | 7/27/2012 | | FPL Statement | | 125036 | 50 |
| Alternate Living Expenses | Jack Walsh | Rent & Water | 1,017 | 8/27/2012 | | Check | | 125036 | 47 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 143 | 8/27/2012 | | FPL Statement | | 125036 | 50 |
| Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 109 | 8/27/2012 | | Credit Card Statement | | 125036 | 3 |
| Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 109 | 9/25/2012 | | Credit Card Statement | | 125036 | 3 |
| Alternate Living Expenses | Jack Walsh | Rent & Water | 1,030 | 9/26/2012 | | Check | | 125036 | 48 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 169 | 9/28/2012 | | FPL Statement | | 125036 | 50 |
| Alternate Living Expenses | Jack Walsh | Water bill | 58 | 10/12/2012 | | Claimant | | 125036 | 32 |
| Alternate Living Expenses | Comcast | Cable & Phone - Jack Walsh | 109 | 10/25/2012 | | Credit Card Statement | | 125036 | 5 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 140 | 10/26/2012 | | FPL Statement | | 125036 | 50 |
| Alternate Living Expenses | Jack Walsh | Rent | 545 | 11/17/2012 | | Claimant | | 125036 | 32 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 89 | 11/26/2012 | | FPL Statement | | 125036 | 50 |
| Alternate Living Expenses | FPL | FPL - Electric Bills Paid - Jack Walsh | 22 | 12/7/2012 | | FPL Statement | | 125036 | 50 |
| **Alternate Living Expenses Total** | | | **$ 43,510** | | | | | | |
| Personal Property Damage Expense | Sally Beauty Supply | Hair Cutting Shaver Replaced - Andis T-Light | $ 38 | 5/13/2009 | | Receipt | F000352 | V Foster Exhibit 04 | 48 |
| Personal Property Damage Expense | Walmart | iPod Nano | 135 | 5/22/2009 | | Claimant | F000381 | V Foster Exhibit 04 | 77 |
| Personal Property Damage Expense | Costco | Chair - Sling Chaise | 136 | 6/9/2009 | | Receipt | F000322 | V Foster Exhibit 04 | 18 |
| Personal Property Damage Expense | QVC | Nextar GPS Navigation system | 146 | 6/24/2009 | | Receipt | F000395 | V Foster Exhibit 04 | 91 |
| Personal Property Damage Expense | Costco | iPod 8G Silver | 134 | 7/1/2009 | | Receipt | F000353 | V Foster Exhibit 04 | 49 |
| Personal Property Damage Expense | Overstock | Bedspread Replacement | 535 | 7/7/2009 | | Receipt | F000779 | V Foster Exhibit 06 | 3 |
| Personal Property Damage Expense | QVC | Surge Protector | 62 | 8/6/2009 | | Invoice | F000309 | V Foster Exhibit 04 | 5 |
| Personal Property Damage Expense | Hard drive remover | Hard drive remover | 20 | 9/1/2009 | | Claimant | | V Foster Exhibit 04 | |
| Personal Property Damage Expense | QVC | Clarisonic Skin | 127 | 9/4/2009 | | Invoice | F000309 | V Foster Exhibit 04 | 5 |
| Personal Property Damage Expense | Exchange Catalog & Online Store | Toaster Oven | 180 | 9/20/2009 | | Invoice | F000325 | V Foster Exhibit 04 | 21 |
| Personal Property Damage Expense | TJMaxx | Household Items | 16 | 9/28/2009 | | Receipt | F000327 | V Foster Exhibit 04 | 23 |
| Personal Property Damage Expense | Costco | Hoover Steam Vac | 159 | 9/28/2009 | | Invoice | F000393 | V Foster Exhibit 04 | 89 |
| Personal Property Damage Expense | The Stainless Steel Store | Various Kitchen Items | 44 | 9/29/2009 | | Invoice | F000312 | V Foster Exhibit 04 | 8 |
| Personal Property Damage Expense | Thomasville Ernest Hemingway Furniture | Bedroom Furniture - King Thompson Falls Poster Bed | 2,124 | 10/1/2009 | X | Quote | | 367443 | 2 |
| Personal Property Damage Expense | Thomasville Ernest Hemingway Furniture | Bedroom Furniture - Malawi Dresser with Marble Top | 1,869 | 10/1/2009 | X | Quote | | 367443 | 2 |
| Personal Property Damage Expense | Thomasville Ernest Hemingway Furniture | Bedroom Furniture - Tanganyika Drawer Chest | 1,529 | 10/1/2009 | X | Quote | | 367443 | 2 |
| Personal Property Damage Expense | Thomasville Ernest Hemingway Furniture | Bedroom Furniture - Manyara Media Base | 1,444 | 10/1/2009 | X | Quote | | 367443 | 2 |
| Personal Property Damage Expense | Thomasville Ernest Hemingway Furniture | Bedroom Furniture - Manyara Media Hutch | 1,444 | 10/1/2009 | X | Quote | | 367443 | 2 |
| Personal Property Damage Expense | Thomasville Ernest Hemingway Furniture | Bedroom Furniture - Nairobi Night Stand with Marble Top | 807 | 10/1/2009 | X | Quote | | 367443 | 2 |
| Personal Property Damage Expense | Thomasville Ernest Hemingway Furniture | Bedroom Furniture - Steppe Octagonal Mirror | 509 | 10/1/2009 | X | Quote | | 367443 | 2 |
| Personal Property Damage Expense | Havertys Furniture | Office Furniture - Westbury Desk with Hutch | 1,900 | 10/1/2009 | X | Quote | | 367443 | 4-7 |
| Personal Property Damage Expense | Havertys Furniture | Office Furniture - Westbury L-Shaped Desk | 1,600 | 10/1/2009 | X | Quote | | 367443 | 4-7 |
| Personal Property Damage Expense | Havertys Furniture | Office Furniture - Martin's Landing File Cabinet | 500 | 10/1/2009 | X | Quote | | 367443 | 4-7 |
| Personal Property Damage Expense | Havertys Furniture | Office Furniture - Martin's Landing Office Chair | 400 | 10/1/2009 | X | Quote | | 367443 | 4-7 |
| Personal Property Damage Expense | Golden Lighting | Replace 6 Lighting Fixtures from Golden Lighting | 3,942 | 10/1/2009 | X | Quote | | 367443 | 12 |

Exhibit 6.1 (Revised)
Damage Claims Detail - William and Vicki Foster

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Personal Property Damage Expense | Amazon | Langston Grandfather Clock | 2,876 | 10/1/2009 | X | Quote | | 367443 | 9 |
| Personal Property Damage Expense | Hayneedle | Replacement - Round Gold Mirror | 305 | 10/1/2009 | X | Quote | | 367443 | 13 |
| Personal Property Damage Expense | Chairish | Replacement - Italian Mirror Pitted | 695 | 10/1/2009 | X | Quote | | 367443 | 11 |
| Personal Property Damage Expense | StormTech Shutters, Inc. | Storm Shutters | - * | 10/1/2009 | X | Estimate/Contract | | 367443 | 8 |
| Personal Property Damage Expense | Overstock | Bar Stools | 211 | 10/2/2009 | | Invoice | F000315 | V Foster Exhibit 04 | 11 |
| Personal Property Damage Expense | QVC | Leather Carrier | 238 | 10/4/2009 | | Invoice | F000309 | V Foster Exhibit 04 | 5 |
| Personal Property Damage Expense | Best Buy | Television, Home Theater | 1,071 | 10/4/2009 | | Receipt | F000311 | V Foster Exhibit 04 | 7 |
| Personal Property Damage Expense | Costco | Water Pik Jet | 73 | 10/4/2009 | | Receipt | F000331 | V Foster Exhibit 04 | 27 |
| Personal Property Damage Expense | Sears | Alarm Clock | 31 | 10/7/2009 | | Receipt | F000332 | V Foster Exhibit 04 | 28 |
| Personal Property Damage Expense | Walgreens | Ace Bandage & Batteries | 13 | 10/7/2009 | | Receipt | F000333 | V Foster Exhibit 04 | 29 |
| Personal Property Damage Expense | Homegoods | Household Items | 42 | 10/7/2009 | | Receipt | F000334 | V Foster Exhibit 04 | 30 |
| Personal Property Damage Expense | Overstock | Rug, Comforter, Lamp | 431 | 10/8/2009 | | Invoice | F000314 | V Foster Exhibit 04 | 10 |
| Personal Property Damage Expense | Overstock | Tables | 106 | 10/9/2009 | | Invoice | F000313 | V Foster Exhibit 04 | 9 |
| Personal Property Damage Expense | Tools | Tools | 31 | 10/10/2009 | | Claimant | | V Foster Exhibit 02 | |
| Personal Property Damage Expense | QVC | Rubberized WireDrain Tools | 21 | 10/10/2009 | | Invoice | F000309 | V Foster Exhibit 04 | 5 |
| Personal Property Damage Expense | Home Goods | Household Items | 138 | 10/12/2009 | | Receipt | F000331 | V Foster Exhibit 04 | 27 |
| Personal Property Damage Expense | TJMaxx | Household Items | 29 | 10/12/2009 | | Receipt | F000332 | V Foster Exhibit 04 | 28 |
| Personal Property Damage Expense | Diffuser | Diffuser | 35 | 10/13/2009 | | Claimant | | V Foster Exhibit 02 | |
| Personal Property Damage Expense | Bed Bath & Beyond | Various Household Items | 15 | 10/13/2009 | | Receipt | F000333 | V Foster Exhibit 04 | 29 |
| Personal Property Damage Expense | QVC | InStyler | 95 | 10/14/2009 | | Invoice | F000339 | V Foster Exhibit 04 | 35 |
| Personal Property Damage Expense | duster | duster | 12 | 10/15/2009 | | Claimant | | V Foster Exhibit 02 | |
| Personal Property Damage Expense | Costco | Nutrafoam Queen & Pillows | 165 | 10/16/2009 | X | Receipt | F000336 | V Foster Exhibit 04 | 32 |
| Personal Property Damage Expense | Best Buy | Disc Player | 180 | 10/27/2009 | | Receipt | F000327 | V Foster Exhibit 04 | 23 |
| Personal Property Damage Expense | Bed Bath & Beyond | Kitchen Items Replaced | 24 | 10/27/2009 | | Receipt | F000360 | V Foster Exhibit 04 | 56 |
| Personal Property Damage Expense | QVC | Flashlight | 20 | 10/28/2009 | | Receipt | F000329 | V Foster Exhibit 04 | 25 |
| Personal Property Damage Expense | QVC | Sterling Silver Earrings | 49 | 11/2/2009 | | Receipt | F000323 | V Foster Exhibit 04 | 19 |
| Personal Property Damage Expense | QVC | Earrings | 36 | 11/4/2009 | | Invoice | F000339 | V Foster Exhibit 04 | 35 |
| Personal Property Damage Expense | HSN | Diffusers | 102 | 11/9/2009 | | Receipt | F000330 | V Foster Exhibit 04 | 26 |
| Personal Property Damage Expense | Home Goods | Household Items | 130 | 11/9/2009 | | Receipt | F000331 | V Foster Exhibit 04 | 27 |
| Personal Property Damage Expense | TJMaxx | Household Items | 60 | 11/11/2009 | | Receipt | F000326 | V Foster Exhibit 04 | 22 |
| Personal Property Damage Expense | Home Goods | Household Items | 56 | 11/11/2009 | | Receipt | F000326 | V Foster Exhibit 04 | 22 |
| Personal Property Damage Expense | Calendar | Calendar | 32 | 11/13/2009 | | Claimant | | V Foster Exhibit 02 | |
| Personal Property Damage Expense | Best Buy | Computer, Router, etc. | 2,321 * | 11/15/2009 | | Receipt | F000324 | V Foster Exhibit 04 | 20 |
| Personal Property Damage Expense | Best Buy | Computer, Router, etc. - Warranty | - * | 11/15/2009 | | | | | |
| Personal Property Damage Expense | kitchen | kitchen, clothes, giftware | 94 | 11/16/2009 | | Claimant | | V Foster Exhibit 02 | |
| Personal Property Damage Expense | Best Buy | Phones | 117 | 11/16/2009 | | Invoice | F000322 | V Foster Exhibit 04 | 18 |
| Personal Property Damage Expense | Bed Bath & Beyond | Axis OTC Basket | 13 | 11/20/2009 | | Receipt | F000326 | V Foster Exhibit 04 | 22 |
| Personal Property Damage Expense | Bulbs | Bulbs | 12 | 11/23/2009 | | Claimant | | V Foster Exhibit 02 | |
| Personal Property Damage Expense | Lowes | Christmas tree, ornaments, outlet | 91 | 11/27/2009 | | Receipt | F000335 | V Foster Exhibit 04 | 31 |
| Personal Property Damage Expense | American Signature | American Signature | 105 | 11/28/2009 | | Claimant | | V Foster Exhibit 02 | |
| Personal Property Damage Expense | Ulta | Curling Iron | 49 | 11/30/2009 | X | Receipt | F000333 | V Foster Exhibit 04 | 29 |
| Personal Property Damage Expense | Florida Plumbers and Backflow | Florida Plumbers and Backflow | 174 | 12/15/2009 | | Claimant | | V Foster Exhibit 02 | |
| Personal Property Damage Expense | shoes | shoes | 71 | 12/15/2009 | | Claimant | | V Foster Exhibit 02 | |
| Personal Property Damage Expense | QVC | Skillet | 18 | 12/15/2009 | | Invoice | F000338 | V Foster Exhibit 04 | 34 |
| Personal Property Damage Expense | Sally Beauty Supply | Sally beauty Supply, curlers | 26 | 12/16/2009 | | Invoice | F000322 | V Foster Exhibit 04 | 18 |
| Personal Property Damage Expense | QVC | Leather Crossbody Bag | 126 | 12/21/2009 | | Receipt | F000330 | V Foster Exhibit 04 | 26 |
| Personal Property Damage Expense | Walmart | Household Items | 73 | 12/28/2009 | | Receipt | F000333 | V Foster Exhibit 04 | 29 |
| Personal Property Damage Expense | Laserlink | Laserlink | 159 | 12/31/2009 | | Receipt | F000409 - 000411 | V Foster Exhibit 04 | 107 |
| Personal Property Damage Expense | storage containers | storage containers | 30 | 1/4/2010 | | Claimant | | V Foster Exhibit 02 | |
| Personal Property Damage Expense | clothing and kitchen | clothing and kitchen | 30 | 1/11/2010 | | Claimant | | V Foster Exhibit 02 | |
| Personal Property Damage Expense | TJMaxx | Kitchen Items | 11 | 1/11/2010 | | Receipt | F000336 | V Foster Exhibit 04 | 32 |
| Personal Property Damage Expense | household goods | household goods | 25 | 1/12/2010 | | Claimant | | V Foster Exhibit 02 | |
| Personal Property Damage Expense | Drycleaning | Jacket, Dress, & Pants | 36 | 1/12/2010 | | Credit Card Statement | F000325 | V Foster Exhibit 04 | 21 |
| Personal Property Damage Expense | Marshalls | Marshalls | 37 | 1/13/2010 | | Claimant | | V Foster Exhibit 02 | |
| Personal Property Damage Expense | Bed Bath & Beyond | Towels | 42 | 1/13/2010 | | Credit Card Statement | F000325 | V Foster Exhibit 04 | 21 |
| Personal Property Damage Expense | QVC | Bakeware | 20 | 1/14/2010 | | Invoice | F000337 | V Foster Exhibit 04 | 33 |
| Personal Property Damage Expense | Lamps Plus | Two Lamps | 210 | 1/15/2010 | | Credit Card Statement | F000325 | V Foster Exhibit 04 | 21 |
| Personal Property Damage Expense | shoes | shoes | 40 | 2/5/2010 | | Claimant | | V Foster Exhibit 02 | |

Exhibit 6.1 (Revised)
Damage Claims Detail - William and Vicki Foster

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Claimant/Invoice/Receipt | Bates | Exhibit/ Doc. ID | PDF Page No. |
|------|--------|-------------|--------|------|--------------|----------------|--------------------------|-------|------------------|--------------|
| Personal Property Damage Expense | tiebacks | tiebacks, stacking totes, candle, caddy | 59 | 2/21/2010 | | | Claimant | | V Foster Exhibit 02 | |
| Personal Property Damage Expense | Costco | Lounge Chair | 46 | 3/10/2010 | | | Receipt | F000335 | V Foster Exhibit 04 | 31 |
| Personal Property Damage Expense | Trunk set | Trunk set | 120 | 3/23/2010 | | | Claimant | | V Foster Exhibit 02 | |
| Personal Property Damage Expense | glasses | glasses | 63 | 3/26/2010 | | | Claimant | | V Foster Exhibit 02 | |
| Personal Property Damage Expense | kitchen & accessories | kitchen & accessories, | 61 | 3/31/2010 | | | Claimant | | V Foster Exhibit 02 | |
| Personal Property Damage Expense | QVC | Tarnish Remover Kit | 23 | 4/4/2010 | | | Invoice | F000321 | V Foster Exhibit 04 | 17 |
| Personal Property Damage Expense | QVC | Bakeware | 53 | 4/18/2010 | | | Invoice | F000321 | V Foster Exhibit 04 | 17 |
| Personal Property Damage Expense | HSN | Therapeutic Massager | 138 | 4/23/2010 | | | Receipt | F000329 | V Foster Exhibit 04 | 25 |
| Personal Property Damage Expense | TJ Maxx | Ladies Shoes | 42 | 4/26/2010 | | | Receipt | F000352 | V Foster Exhibit 04 | 48 |
| Personal Property Damage Expense | Marshalls | Clothing | 123 | 4/26/2010 | | | Receipt | F000353 | V Foster Exhibit 04 | 49 |
| Personal Property Damage Expense | HSN | Closet Set | 42 | 4/27/2010 | | | Receipt | F000782 | V Foster Exhibit 06 | 6 |
| Personal Property Damage Expense | Marshalls | Houseware & Shoes | 107 | 4/28/2010 | | | Receipt | F000332 | V Foster Exhibit 04 | 28 |
| Personal Property Damage Expense | QVC | Bose music system | 742 | 5/9/2010 | | | Invoice | F000320 | V Foster Exhibit 04 | 16 |
| Personal Property Damage Expense | QVC | Earrings | 27 | 5/16/2010 | | | Invoice | F000320 | V Foster Exhibit 04 | 16 |
| Personal Property Damage Expense | Marshalls | Houseware and Shoes | 55 | 5/16/2010 | | | Receipt | F000335 | V Foster Exhibit 04 | 31 |
| Personal Property Damage Expense | QVC | Earrings | 36 | 5/17/2010 | | | Invoice | F000320 | V Foster Exhibit 04 | 16 |
| Personal Property Damage Expense | Adams Cleaners | Drycleaning | 17 | 5/18/2010 | X | | Receipt | F000323 | V Foster Exhibit 04 | 19 |
| Personal Property Damage Expense | QVC | QVC, shoe organizer | 29 | 5/19/2010 | | | Invoice | F000320 | V Foster Exhibit 04 | 16 |
| Personal Property Damage Expense | clothes | clothes, luggage | 98 | 5/24/2010 | | | Claimant | | V Foster Exhibit 02 | |
| Personal Property Damage Expense | QVC | Storage Totes | 76 | 6/2/2010 | | | Invoice | F000320 | V Foster Exhibit 04 | 16 |
| Personal Property Damage Expense | TJMaxx | Household Items | 20 | 6/2/2010 | | | Receipt | F000331 | V Foster Exhibit 04 | 27 |
| Personal Property Damage Expense | QVC | Steam & Sweep Floor Sanitizer | 123 | 6/2/2010 | | | Receipt | F000345 | V Foster Exhibit 04 | 41 |
| Personal Property Damage Expense | Keurig Carousel | Keurig Carousel | 29 | 7/18/2010 | | | Claimant | | V Foster Exhibit 02 | |
| Personal Property Damage Expense | Multi purpose knife tool | Multi purpose knife tool | 23 | 7/18/2010 | | | Claimant | | V Foster Exhibit 02 | |
| Personal Property Damage Expense | shoes and clothes | shoes and clothes | 99 | 7/19/2010 | | | Claimant | | V Foster Exhibit 02 | |
| Personal Property Damage Expense | Frontgate | Greek Key Rug | 144 | 7/20/2010 | | | Invoice | F000316 | V Foster Exhibit 04 | 12 |
| Personal Property Damage Expense | HSN | Shoe Stretchers | 25 | 7/23/2010 | | | Receipt | F000329 | V Foster Exhibit 04 | 25 |
| Personal Property Damage Expense | Comcast | Installation - Colonial Country Club | 55 | 8/11/2010 | | | Claimant | | V Foster Exhibit 02 | |
| Personal Property Damage Expense | The Ft. Meyers Store | Tervis Tumbler Cups | 43 | 9/3/2010 | | | Receipt | F000334 | V Foster Exhibit 04 | 30 |
| Personal Property Damage Expense | Costco | Vita-Mix Blender | 689 | 9/7/2010 | | | Invoice | F000392 | V Foster Exhibit 04 | 88 |
| Personal Property Damage Expense | Touch of Class | Serenity Wall Sculpture - Duplicate | - * | 11/12/2010 | | | Receipt | F000357 | V Foster Exhibit 04 | 53 |
| Personal Property Damage Expense | Touch of Class | Wall Sculpture | 261 | 11/15/2010 | | | Invoice | F000404 | V Foster Exhibit 04 | 100 |
| Personal Property Damage Expense | Amazon | Steamer | 32 | 11/27/2010 | | | Receipt | F000324 | V Foster Exhibit 04 | 20 |
| Personal Property Damage Expense | Home Goods | Housewares & Christmas Items | 42 | 12/16/2010 | | | Receipt | F000336 | V Foster Exhibit 04 | 32 |
| Personal Property Damage Expense | Tools For Wellness | Necklace | 210 | 12/17/2010 | | | Receipt | F000418 | V Foster Exhibit 04 | 114 |
| Personal Property Damage Expense | Overstock | Jewelry | 223 | 1/13/2011 | | | Receipt | F000416 | V Foster Exhibit 04 | 112 |
| Personal Property Damage Expense | Inversion Table | Inversion Table | 233 | 1/15/2011 | | | Claimant | | V Foster Exhibit 02 | |
| Personal Property Damage Expense | QVC | Christmas lights | 53 | 1/20/2011 | | | Invoice | F000319 | V Foster Exhibit 04 | 15 |
| Personal Property Damage Expense | walgreens photos | walgreens photos | 23 | 1/24/2011 | | | Claimant | | V Foster Exhibit 02 | |
| Personal Property Damage Expense | TRUE | Mens Shoes | 106 | 1/31/2011 | | | Receipt | F000342 | V Foster Exhibit 04 | 38 |
| Personal Property Damage Expense | QVC | Ezhanger | 27 | 2/1/2011 | | | Invoice | F000319 | V Foster Exhibit 04 | 15 |
| Personal Property Damage Expense | HSN | Nextbook Tablet Case | 42 | 2/5/2011 | | | Receipt | F000347 | V Foster Exhibit 04 | 43 |
| Personal Property Damage Expense | Nextbook touchscreen | Nextbook Touchscreen | 201 | 2/5/2011 | | | Receipt | F000348 | V Foster Exhibit 04 | 44 |
| Personal Property Damage Expense | QVC | Adhesive strips kit | 24 | 2/24/2011 | | | Invoice | F000319 | V Foster Exhibit 04 | 15 |
| Personal Property Damage Expense | Footsmart | Various Sandals | 125 | 3/17/2011 | | | Receipt | F000317 | V Foster Exhibit 04 | 13 |
| Personal Property Damage Expense | Select Comfort | Bedding Replacement | 7,256 | 4/15/2011 | | | Receipt | F000387 | V Foster Exhibit 04 | 83 |
| Personal Property Damage Expense | Target | Men's Jewelry | 61 | 4/21/2011 | | | Receipt | F000371 | V Foster Exhibit 04 | 67 |
| Personal Property Damage Expense | Bealls | Mens Shoes | 74 | 6/14/2011 | | | Receipt | F000413 | V Foster Exhibit 04 | 109 |
| Personal Property Damage Expense | HSN | Digital Slim Stick Vacuum | 333 | 7/5/2011 | | | Receipt | F000397 | V Foster Exhibit 04 | 93 |
| Personal Property Damage Expense | Frontgate | Towel stand | 199 | 9/4/2011 | | | Receipt | F000396 | V Foster Exhibit 04 | 92 |
| Personal Property Damage Expense | Frontgate | Volterra Two Sided Clock | 199 | 9/21/2011 | | | Invoice | F000362 | V Foster Exhibit 04 | 58 |
| Personal Property Damage Expense | Amazon | Magnetic Ball Marker Necklaces | 79 | 12/3/2011 | | | Invoice | F000340 | V Foster Exhibit 04 | 36 |
| Personal Property Damage Expense | Amazon | Bella Crystal Ball Markers | 27 | 12/3/2011 | | | Invoice | F000340 | V Foster Exhibit 04 | 36 |
| Personal Property Damage Expense | Swarovski | Circle Pierced Earrings | 239 | 12/19/2011 | | | Receipt | F000419 | V Foster Exhibit 04 | 115 |
| Personal Property Damage Expense | Costco | Garage Door Opener | 265 | 3/8/2012 | | | Invoice | F000365 | V Foster Exhibit 04 | 61 |
| Personal Property Damage Expense | Overstock | Silver Black Onyx Earrings | 68 | 7/11/2012 | | | Receipt | F000420 | V Foster Exhibit 04 | 116 |
| Personal Property Damage Expense | Kiefers.com | 25 Chrome Bowties | 26 | 7/19/2012 | | | Invoice | F000402 | V Foster Exhibit 04 | 98 |
| Personal Property Damage Expense | Amazon | Pizza Peel & Stoneware | 80 | 8/27/2012 | | | Receipt | F000407 | V Foster Exhibit 04 | 103 |

Exhibit 6.1 (Revised)
Damage Claims Detail - William and Vicki Foster

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Personal Property Damage Expense | Groupon | Blood Pressure Monitor | 24 | 9/27/2012 | | Receipt | F000406 | V Foster Exhibit 04 | 102 |
| Personal Property Damage Expense | Hayneedle | Howard Elliott Chateau Wall Mirror | 431 | 10/31/2012 | | Credit Card Statement | | 365749 | 97 |
| Personal Property Damage Expense | Best Buy | Canon Battery Travel Charger | 45 | 11/30/2012 | | Receipt | F000359 | V Foster Exhibit 04 | 55 |
| Personal Property Damage Expense | Hayneedle | Howard Elliott Chateau Wall Mirror | 227 | 12/5/2012 | | Invoice | F000366 | V Foster Exhibit 04 | 62 |
| Personal Property Damage Expense | Costco | Aerobed, Bed in A Minute, Queen | 74 | 12/19/2012 | | Receipt | F000351 | V Foster Exhibit 04 | 47 |
| Personal Property Damage Expense | Shooz | Shoes | 102 | 1/23/2013 | | Receipt | F000352 | V Foster Exhibit 04 | 48 |
| Personal Property Damage Expense | Marshall  Rousso | Earrings | 32 | 1/27/2013 | | Receipt | F000324 | V Foster Exhibit 04 | 20 |
| Personal Property Damage Expense | Amazon | Stackable Expandable Shoe Rack | 50 | 2/28/2013 | | Invoice | F000349 | V Foster Exhibit 04 | 45 |
| Personal Property Damage Expense | Lowes | Moen Kingsley Chrome Robe Hook | 23 | 3/1/2013 | | Invoice | F000375 | V Foster Exhibit 04 | 71 |
| Personal Property Damage Expense | JCPenney | Curtains | 84 | 3/28/2013 | | Invoice | F000361 | V Foster Exhibit 04 | 57 |
| Personal Property Damage Expense | Lamps Plus | Lamp  Shade  replacements | 80 | 3/29/2013 | | Credit Card Statement | F000344 | V Foster Exhibit 04 | 40 |
| Personal Property Damage Expense | JCPenney | Curtains | 79 | 3/29/2013 | | Credit Card Statement | F000344 | V Foster Exhibit 04 | 40 |
| Personal Property Damage Expense | Costco | Barstools | 541 | 4/4/2013 | | Receipt | F000358 | V Foster Exhibit 04 | 54 |
| Personal Property Damage Expense | Costco | AcuRite - NOAA Weather Radio | 37 | 4/4/2013 | | Receipt | F000358 | V Foster Exhibit 04 | 54 |
| Personal Property Damage Expense | Best Buy | Surround Sound Speakers | 252 | 4/5/2013 | | Receipt | F000344 | V Foster Exhibit 04 | 40 |
| Personal Property Damage Expense | Best Buy | DVD/VCR Replacement | 167 | 4/12/2013 | | Credit Card Statement | F000344 | V Foster Exhibit 04 | 40 |
| Personal Property Damage Expense | Lenoir Empire Furniture | Round Dining Room Table | 1,165 | 4/23/2013 | | Invoice | F000425 | V Foster Exhibit 04 | 121 |
| Personal Property Damage Expense | JCPenney | Curtains | 64 | 5/7/2013 | | Receipt | F000359 | V Foster Exhibit 04 | 55 |
| Personal Property Damage Expense | JCPenney | Curtains | 138 | 5/9/2013 | | Receipt | F000412 | V Foster Exhibit 04 | 108 |
| Personal Property Damage Expense | JCPenney | Curtains | 59 | 5/15/2013 | | Invoice | F000361 | V Foster Exhibit 04 | 57 |
| Personal Property Damage Expense | Dennis Reynolds | Wiring Surround Sound | 81 | 5/17/2013 | | Check | F000385 | V Foster Exhibit 04 | 81 |
| Personal Property Damage Expense | Completely  Connected | Program Remote Control | 120 | 6/1/2013 | | Invoice | F000388 | V Foster Exhibit 04 | 84 |
| Personal Property Damage Expense | Apple | iPad Mini Wi-Fi 32GB Black - Warranty | - * | 6/13/2013 | | | F000810 | W Foster Exhibit 02 | 10 |
| Personal Property Damage Expense | Apple | iPad Mini Wi-Fi 32GB Black | 496 * | 6/13/2013 | | Receipt | F000810 | W Foster Exhibit 02 | 10 |
| Personal Property Damage Expense | Neat | Scanner Replacement | 332 | 6/16/2013 | | Receipt | F000386 | V Foster Exhibit 04 | 82 |
| Personal Property Damage Expense | Art Etc. | Wall Mirror | 190 | 6/30/2013 | X | Receipt | | 365749 | 64 |
| Personal Property Damage Expense | Fitbit.com | Fitbit Flex Band | 106 | 7/21/2013 | | Receipt | F000382 | V Foster Exhibit 04 | 78 |
| Personal Property Damage Expense | JCPenney | Curtains | 25 | 8/1/2013 | | Receipt | F000360 | V Foster Exhibit 04 | 56 |
| Personal Property Damage Expense | TJ Maxx | Clothng | 221 | 8/2/2013 | | Receipt | F000353 | V Foster Exhibit 04 | 49 |
| Personal Property Damage Expense | TJ Maxx | Athletic Footwear | 41 | 8/2/2013 | | Receipt | F000354 | V Foster Exhibit 04 | 50 |
| Personal Property Damage Expense | Best Buy | Small Television | 191 | 8/2/2013 | | Receipt | F000390 | V Foster Exhibit 04 | 86 |
| Personal Property Damage Expense | Sandbaggers Gold Shoes | Golf Shoes | 99 | 8/7/2013 | | Receipt | F000350 | V Foster Exhibit 04 | 46 |
| Personal Property Damage Expense | Marshalls | Ladies Footwear | 32 | 8/9/2013 | | Receipt | F000352 | V Foster Exhibit 04 | 48 |
| Personal Property Damage Expense | Ross | Shoes | 51 | 8/10/2013 | | Receipt | F000328 | V Foster Exhibit 04 | 24 |
| Personal Property Damage Expense | The Home Depot | Garden Sprayer | 16 | 8/10/2013 | | Receipt | F000370 | V Foster Exhibit 04 | 66 |
| Personal Property Damage Expense | JCPenney | Curtains | 26 | 8/12/2013 | | Receipt | F000414 | V Foster Exhibit 04 | 110 |
| Personal Property Damage Expense | Frontgate | Medallion Outdoor Rug | 85 | 8/15/2013 | | Invoice | F000380 | V Foster Exhibit 04 | 76 |
| Personal Property Damage Expense | Amazon | Towel Rack | 98 | 8/15/2013 | | Invoice | F000318 | V Foster Exhibit 04 | 14 |
| Personal Property Damage Expense | Marshalls | Ladies Footwear | 39 | 8/17/2013 | | Receipt | F000354 | V Foster Exhibit 04 | 50 |
| Personal Property Damage Expense | Danby | Dehumdifier | 237 | 8/25/2013 | | Receipt | F000394 | V Foster Exhibit 04 | 90 |
| Personal Property Damage Expense | Amazon | Seiko  Musical  Clock | 389 | 9/5/2013 | | Invoice | F000310 | V Foster Exhibit 04 | 6 |
| Personal Property Damage Expense | Costco | HP  printer  All  in  one | 318 | 9/6/2013 | | Invoice | F000307 | V Foster Exhibit 04 | 3 |
| Personal Property Damage Expense | Sears | Dyson  Vacuum  Cleaner | 689 | 9/6/2013 | | Receipt | F000308 | V Foster Exhibit 04 | 4 |
| Personal Property Damage Expense | Sears | Power  Washer  Electric | 180 | 9/6/2013 | | Receipt | F000308 | V Foster Exhibit 04 | 4 |
| Personal Property Damage Expense | Affordable Golf Carts | Golf Cart | - * | 11/5/2013 | | Invoice | F000777 | V Foster Exhibit 06 | 1 |
| Personal Property Damage Expense | QVC | Surge Protectors | 58 | 12/1/2013 | | Receipt | F000781 | V Foster Exhibit 06 | 5 |
| Personal Property Damage Expense | Florida Leather Gallery | Furniture | 5,447 | 7/6/2014 | | Invoice | F000778 | V Foster Exhibit 06 | 2 |
| Personal Property Damage Expense | Sandbaggers Golf Shoes | Golf Shoes | 338 | 10/6/2014 | | Receipt | F000780 | V Foster Exhibit 06 | 4 |
| Personal Property Damage Expense | Samsung | 55 Inch Television | 2,120 | 9/30/2016 | | Invoice | | 365749 | 71 |
| Personal Property Damage Expense | Havertys Furniture | Entertainment Center | 3,203 | 11/9/2016 | | Invoice | F000912 | V Foster Exhibit 05 | 8 |
| Personal Property Damage Expense | Lenoir Empire Furniture | Tall Waisted Shaped & Chairside Chest | 1,240 | 11/28/2016 | | Invoice | F000907 | V Foster Exhibit 05 | 3 |
| Personal Property Damage Expense | Lenoir Empire Furniture | Delivery of Tall Door Chest & Chairside Chest | 251 | 12/20/2016 | | Invoice | F000908 | V Foster Exhibit 05 | 4 |
| Personal Property Damage Expense | Lenoir Empire Furniture | End  table | 410 | 5/22/2017 | | Claimant | F000905 | V Foster Exhibit 05 | 1 |
| Personal Property Damage Expense | Costco | Sewing  machine | 230 | 7/22/2017 | | Invoice | F000909 | V Foster Exhibit 05 | 5 |
| Personal Property Damage Expense | Lenoir Empire Furniture | Various Items & Shipping | 4,049 | 7/24/2017 | | Invoice | | 365749 | 82 |
| Personal Property Damage Expense | Time Shop | Grandfather Clock Repair | 180 * | 8/17/2017 | | Bank Statement | | 365749 | 157 |
| Personal Property Damage Expense | Lenoir Empire Furniture | Jewelry  Armoire | 1,240 | 2/13/2018 | | Invoice | F000910 | V Foster Exhibit 05 | 6 |
| Personal Property Damage Expense | Lenoir Empire Furniture | Delivery of Jewelry Armoire | 154 | 7/12/2018 | | Invoice | F000911 | V Foster Exhibit 05 | 7 |

Exhibit 6.1 (Revised)
Damage Claims Detail - William and Vicki Foster

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Personal Property Damage Expense Total | | | $ 71,423 | | | | | | |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | $ 96 | 2/26/2008 | | Check Carbon Copy | 367575 | | 10 |
| Additional Damages - W Foster Living | Comcast - Louisville | Cable | 20 | 2/27/2008 | | Check Carbon Copy | 367575 | | 19 |
| Additional Damages - W Foster Living | Wells Fargo Home MTG | Mortgage - In Lieu of Rent | 3,318 | 2/28/2008 | | Check Carbon Copy | 367575 | | 4 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 140 | 3/21/2008 | | Check Carbon Copy | 367575 | | 10 |
| Additional Damages - W Foster Living | Comcast - Louisville | Cable | 20 | 3/24/2008 | | Check Carbon Copy | 367575 | | 19 |
| Additional Damages - W Foster Living | Wells Fargo Home MTG | Mortgage - In Lieu of Rent | 3,526 | 3/31/2008 | | Check Carbon Copy | 367575 | | 4 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 92 | 4/20/2008 | | Check Carbon Copy | 367575 | | 10 |
| Additional Damages - W Foster Living | Louisville Water Co. | Water | 72 | 4/21/2008 | | Check Carbon Copy | 367575 | | 16 |
| Additional Damages - W Foster Living | Wells Fargo Home MTG | Mortgage - In Lieu of Rent | 3,526 | 4/28/2008 | | Check Carbon Copy | 367575 | | 4 |
| Additional Damages - W Foster Living | Comcast - Louisville | Cable | 30 | 5/27/2008 | | Check Carbon Copy | 367575 | | 19 |
| Additional Damages - W Foster Living | Wells Fargo Home MTG | Mortgage - In Lieu of Rent | 3,600 | 5/27/2008 | | Check Carbon Copy | 367575 | | 5 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 139 | 5/27/2008 | | Check Carbon Copy | 367575 | | 11 |
| Additional Damages - W Foster Living | Louisville Water Co. | Water | 41 | 6/17/2008 | | Check Carbon Copy | 367575 | | 16 |
| Additional Damages - W Foster Living | Comcast - Louisville | Cable | 32 | 6/20/2008 | | Check Carbon Copy | 367575 | | 20 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 95 | 6/20/2008 | | Check Carbon Copy | 367575 | | 11 |
| Additional Damages - W Foster Living | Wells Fargo Home MTG | Mortgage - In Lieu of Rent | 3,526 | 6/28/2008 | | Check Carbon Copy | 367575 | | 5 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 127 | 7/22/2008 | | Check Carbon Copy | 367575 | | 11 |
| Additional Damages - W Foster Living | Comcast - Louisville | Cable | 32 | 7/28/2008 | | Check Carbon Copy | 367575 | | 20 |
| Additional Damages - W Foster Living | Wells Fargo Home MTG | Mortgage - In Lieu of Rent | 3,526 | 8/8/2008 | | Check Carbon Copy | 367575 | | 5 |
| Additional Damages - W Foster Living | Louisville Water Co. | Water | 41 | 8/15/2008 | | Check Carbon Copy | 367575 | | 16 |
| Additional Damages - W Foster Living | Comcast - Louisville | Cable | 32 | 8/20/2008 | | Check Carbon Copy | 367575 | | 20 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 139 | 8/20/2008 | | Check Carbon Copy | 367575 | | 12 |
| Additional Damages - W Foster Living | Wells Fargo Home MTG | Mortgage - In Lieu of Rent | 3,526 | 8/27/2008 | | Check Carbon Copy | 367575 | | 6 |
| Additional Damages - W Foster Living | Comcast - Louisville | Cable | 32 | 9/22/2008 | | Check Carbon Copy | 367575 | | 21 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 134 | 9/22/2008 | | Check Carbon Copy | 367575 | | 12 |
| Additional Damages - W Foster Living | Wells Fargo Home MTG | Mortgage - In Lieu of Rent | 3,526 | 9/28/2008 | | Check Carbon Copy | 367575 | | 6 |
| Additional Damages - W Foster Living | Louisville Water Co. | Water | 42 | 10/17/2008 | | Check Carbon Copy | 367575 | | 17 |
| Additional Damages - W Foster Living | Comcast - Louisville | Cable | 32 | 10/24/2008 | | Check Carbon Copy | 367575 | | 21 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 84 | 10/24/2008 | | Check Carbon Copy | 367575 | | 12 |
| Additional Damages - W Foster Living | Wells Fargo Home MTG | Mortgage - In Lieu of Rent | 3,526 | 10/29/2008 | | Check Carbon Copy | 367575 | | 6 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 115 | 11/18/2008 | | Check Carbon Copy | 367575 | | 13 |
| Additional Damages - W Foster Living | Comcast - Louisville | Cable | 32 | 11/28/2008 | | Check Carbon Copy | 367575 | | 21 |
| Additional Damages - W Foster Living | Wells Fargo Home MTG | Mortgage - In Lieu of Rent | 3,108 | 11/28/2008 | | Check Carbon Copy | 367575 | | 7 |
| Additional Damages - W Foster Living | Comcast - Louisville | Cable | 30 | 12/12/2008 | | Check Carbon Copy | 367575 | | 22 |
| Additional Damages - W Foster Living | Louisville Water Co. | Water | 40 | 12/17/2008 | | Check Carbon Copy | 367575 | | 17 |
| Additional Damages - W Foster Living | Comcast - Louisville | Cable | 147 | 12/20/2008 | | Check Carbon Copy | 367575 | | 22 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 271 | 12/22/2008 | | Check Carbon Copy | 367575 | | 13 |
| Additional Damages - W Foster Living | Wells Fargo Home MTG | Mortgage - In Lieu of Rent | 3,108 | 12/30/2008 | | Check Carbon Copy | 367575 | | 7 |
| Additional Damages - W Foster Living | Comcast - Louisville | Cable | 99 | 1/22/2009 | | Check Carbon Copy | 367575 | | 22 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 274 | 1/22/2009 | | Check Carbon Copy | 367575 | | 13 |
| Additional Damages - W Foster Living | Wells Fargo Home MTG | Mortgage - In Lieu of Rent | 3,110 | 1/29/2009 | | Check Carbon Copy | 367575 | | 7 |
| Additional Damages - W Foster Living | Louisville Water Co. | Water | 104 | 2/19/2009 | | Check Carbon Copy | 367575 | | 17 |
| Additional Damages - W Foster Living | Wells Fargo Home MTG | Mortgage - In Lieu of Rent | 3,108 | 2/19/2009 | | Check Carbon Copy | 367575 | | 8 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 352 | 2/19/2009 | | Check Carbon Copy | 367575 | | 14 |
| Additional Damages - W Foster Living | Comcast - Louisville | Cable | 205 | 3/1/2009 | | Check Carbon Copy | 367575 | | 23 |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 325 | 6/1/2013 | X | Claimant | F000783 | W Foster Exhibit 01 | 1 |
| Additional Damages - W Foster Living | ExtendedStay | Hotel | 460 | 6/15/2013 | | Credit Card Statement | F000803 | W Foster Exhibit 02 | 3 |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 650 | 7/1/2013 | X | Claimant | F000783 | W Foster Exhibit 01 | 1 |
| Additional Damages - W Foster Living | Howard Johnson | Hotel | 425 | 7/4/2013 | | Credit Card Statement | F000802 | W Foster Exhibit 02 | 2 |
| Additional Damages - W Foster Living | Best Buy | TV | 191 | 8/2/2013 | | Receipt | F000811 | W Foster Exhibit 02 | 11 |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 650 | 8/30/2013 | | Bank Statement | F000804 | W Foster Exhibit 02 | 4 |
| Additional Damages - W Foster Living | IKEA | Bed & Frame | 349 | 9/27/2013 | | Credit Card Statement | F000801 | W Foster Exhibit 02 | 1 |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 650 | 9/27/2013 | | Bank Statement | F000805 | W Foster Exhibit 02 | 5 |
| Additional Damages - W Foster Living | Southwest Airlines | Airfare | 638 | 10/22/2013 | | Confirmation Statement | F000809 | W Foster Exhibit 02 | 9 |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 650 | 10/30/2013 | | Bank Statement | F000806 | W Foster Exhibit 02 | 6 |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 650 | 11/25/2013 | | Bank Statement | F000807 | W Foster Exhibit 02 | 7 |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 650 | 12/1/2013 | X | Claimant | F000783 | W Foster Exhibit 01 | 1 |

Exhibit 6.1 (Revised)
Damage Claims Detail - William and Vicki Foster

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 675 | 1/30/2014 | | Bank Statement | F000812 | W Foster Exhibit 02 | 12 |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 675 | 2/27/2014 | | Bank Statement | F000813 | W Foster Exhibit 02 | 13 |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 675 | 3/26/2014 | | Bank Statement | F000814 | W Foster Exhibit 02 | 14 |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 675 | 4/28/2014 | | Bank Statement | F000815 | W Foster Exhibit 02 | 15 |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 675 | 5/29/2014 | | Bank Statement | F000816 | W Foster Exhibit 02 | 16 |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 675 | 7/2/2014 | | Check Carbon Copy | F000817 | W Foster Exhibit 02 | 17 |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 675 | 7/31/2014 | | Bank Statement | F000818 | W Foster Exhibit 02 | 18 |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 675 | 9/2/2014 | | Bank Statement | F000819 | W Foster Exhibit 02 | 19 |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 675 | 9/30/2014 | | Bank Statement | F000820 | W Foster Exhibit 02 | 20 |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 675 | 10/29/2014 | | Bank Statement | F000821 | W Foster Exhibit 02 | 21 |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 675 | 11/28/2014 | | Bank Statement | F000822 | W Foster Exhibit 02 | 22 |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent/Utilities | 675 | 12/31/2014 | X | Claimant | F000788 | W Foster Exhibit 01 | 6 |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent | 675 | 1/30/2015 | | Bank Statement | F000823 | W Foster Exhibit 02 | 23 |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent | 675 | 2/26/2015 | | Bank Statement | F000824 | W Foster Exhibit 02 | 24 |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent | 675 | 3/27/2015 | | Bank Statement | F000825 | W Foster Exhibit 02 | 25 |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent | 675 | 4/30/2015 | | Bank Statement | F000826 | W Foster Exhibit 02 | 26 |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent | 675 | 5/1/2015 | | Claimant | F000789 | W Foster Exhibit 01 | |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent - June | 770 | 5/25/2015 | X | Check Carbon Copy | F000828 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Utilities | 200 | 6/1/2015 | | Claimant | F000789 | W Foster Exhibit 01 | |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent - July | 770 | 6/25/2015 | | Check Carbon Copy | F000828 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Utilities | 200 | 7/1/2015 | | Claimant | F000789 | W Foster Exhibit 01 | |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent - August | 770 | 7/25/2015 | X | Check Carbon Copy | F000828 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Utilities - August | 400 | 8/15/2015 | | Check Carbon Copy | F000829 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent - September | 770 | 8/27/2015 | | Check Carbon Copy | F000829 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Utilities - September | 250 | 9/26/2015 | | Check Carbon Copy | F000831 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Village Green Apartments | Rent - October | 930 | 9/27/2015 | | Check Carbon Copy | F000829 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Village Green Apartments | Utilities | 87 | 9/27/2015 | | Check Carbon Copy | F000830 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Village Green Apartments | Rent - November | 930 | 10/30/2015 | | Check Carbon Copy | F000830 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Heathmore Apartments | Fees for New Rental | 65 | 11/18/2015 | | Check Carbon Copy | F000868 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Heathmore Apartments | Hold Deposit for 2016 Apartment | - * | 11/23/2015 | | Check Carbon Copy | F000868 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Village Green Apartments | Half Month Rent & AUM | 501 | 12/1/2015 | | Check Carbon Copy | F000830 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Co-worker in Flat Rock, Michigan | Rent - December | 400 | 12/9/2015 | | Check Carbon Copy | F000831 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Priceline | Hotel Room | 145 | 12/10/2015 | | Credit Card Statement | F000827 | W Foster Exhibit 02 | 27 |
| Additional Damages - W Foster Living | Sprint | Cell Phone | 212 | 12/31/2015 | X | Claimant | F000788 | W Foster Exhibit 01 | 6 |
| Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 58 | 1/5/2016 | | Credit Card Statement | F000841 | W Foster Exhibit 02 | 41 |
| Additional Damages - W Foster Living | Apartment in Louisville, Kentucky | Rent | 513 | 1/8/2016 | | Bank Statement | F000867 | W Foster Exhibit 02 | 67 |
| Additional Damages - W Foster Living | Wal-Mart | Microwave | 47 | 1/9/2016 | | Credit Card Statement | F000841 | W Foster Exhibit 02 | 41 |
| Additional Damages - W Foster Living | Sprint | Cell Phone | 194 | 1/18/2016 | | Credit Card Statement | F000842 | W Foster Exhibit 02 | 42 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 51 | 1/28/2016 | | Bank Statement | F000832 | W Foster Exhibit 02 | 32 |
| Additional Damages - W Foster Living | Heathmore Apartments | Rent - February | 630 | 1/28/2016 | | Check Carbon Copy | F000868 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 57 | 2/1/2016 | X | Claimant | F000790 | W Foster Exhibit 01 | 8 |
| Additional Damages - W Foster Living | Sprint | Cell Phone | 194 | 2/17/2016 | | Credit Card Statement | F000843 | W Foster Exhibit 02 | 43 |
| Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 58 | 2/21/2016 | | Credit Card Statement | F000844 | W Foster Exhibit 02 | 44 |
| Additional Damages - W Foster Living | Heathmore Apartments | Rent - March | 630 | 2/25/2016 | | Check Carbon Copy | F000869 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 130 | 3/11/2016 | | Bank Statement | F000833 | W Foster Exhibit 02 | 33 |
| Additional Damages - W Foster Living | Sprint | Cell Phone | 194 | 3/19/2016 | | Credit Card Statement | F000845 | W Foster Exhibit 02 | 45 |
| Additional Damages - W Foster Living | Heathmore Apartments | Rent - April | 631 | 3/22/2016 | | Check Carbon Copy | F000869 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Amazon | Amazon Mattress | 139 | 3/28/2016 | | Invoice | F000866 | W Foster Exhibit 02 | 66 |
| Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 58 | 3/29/2016 | | Credit Card Statement | F000846 | W Foster Exhibit 02 | 46 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 64 | 4/11/2016 | | Bank Statement | F000834 | W Foster Exhibit 02 | 34 |
| Additional Damages - W Foster Living | Sprint | Cell Phone | 195 | 4/17/2016 | | Credit Card Statement | F000847 | W Foster Exhibit 02 | 47 |
| Additional Damages - W Foster Living | Heathmore Apartments | Rent - May | 631 | 4/28/2016 | | Check Carbon Copy | F000869 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 57 | 4/30/2016 | | Credit Card Statement | F000848 | W Foster Exhibit 02 | 48 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 52 | 5/10/2016 | | Bank Statement | F000835 | W Foster Exhibit 02 | 35 |
| Additional Damages - W Foster Living | Home Goods | Home Goods | 53 | 5/16/2016 | | Credit Card Statement | F000848 | W Foster Exhibit 02 | 48 |
| Additional Damages - W Foster Living | Sprint | Cell Phone | 194 | 5/18/2016 | | Credit Card Statement | F000849 | W Foster Exhibit 02 | 49 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 33 | 5/26/2016 | | Bank Statement | F000835 | W Foster Exhibit 02 | 35 |
| Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 57 | 5/30/2016 | | Credit Card Statement | F000850 | W Foster Exhibit 02 | 50 |

Exhibit 6.1 (Revised)
Damage Claims Detail - William and Vicki Foster

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Additional Damages - W Foster Living | Heathmore Apartments | Rent - June | 631 | 5/31/2016 | | Check Carbon Copy | F000870 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Sprint | Cell Phone | 194 | 6/17/2016 | | Credit Card Statement | F000851 | W Foster Exhibit 02 | 51 |
| Additional Damages - W Foster Living | Heathmore Apartments | Rent - July | 631 | 6/17/2016 | | Check Carbon Copy | F000870 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 33 | 6/28/2016 | | Bank Statement | F000836 | W Foster Exhibit 02 | 36 |
| Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 57 | 6/30/2016 | | Credit Card Statement | F000852 | W Foster Exhibit 02 | 52 |
| Additional Damages - W Foster Living | Sprint | Cell Phone | 194 | 7/18/2016 | | Credit Card Statement | F000853 | W Foster Exhibit 02 | 53 |
| Additional Damages - W Foster Living | Heathmore Apartments | Rent - September (August on Check) | 631 | 7/24/2016 | | Check Carbon Copy | F000871 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Heathmore Apartments | Rent - August | 631 | 7/27/2016 | | Check Carbon Copy | F000870 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 57 | 7/30/2016 | | Credit Card Statement | F000854 | W Foster Exhibit 02 | 54 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 31 | 8/9/2016 | | Bank Statement | F000837 | W Foster Exhibit 02 | 37 |
| Additional Damages - W Foster Living | Sprint | Cell Phone | 194 | 8/17/2016 | | Credit Card Statement | F000855 | W Foster Exhibit 02 | 55 |
| Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 57 | 8/30/2016 | | Credit Card Statement | F000856 | W Foster Exhibit 02 | 56 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 42 | 9/9/2016 | | Bank Statement | F000838 | W Foster Exhibit 02 | 38 |
| Additional Damages - W Foster Living | Sprint | Cell Phone | 194 | 9/17/2016 | | Credit Card Statement | F000857 | W Foster Exhibit 02 | 57 |
| Additional Damages - W Foster Living | Heathmore Apartments | Rent - October | 631 | 9/28/2016 | | Check Carbon Copy | F000871 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 57 | 9/30/2016 | | Credit Card Statement | F000858 | W Foster Exhibit 02 | 58 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 40 | 10/12/2016 | | Bank Statement | F000839 | W Foster Exhibit 02 | 39 |
| Additional Damages - W Foster Living | Sprint | Cell Phone | 168 | 10/18/2016 | | Credit Card Statement | F000859 | W Foster Exhibit 02 | 59 |
| Additional Damages - W Foster Living | Heathmore Apartments | Rent - November | 631 | 10/27/2016 | | Check Carbon Copy | F000871 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 57 | 10/30/2016 | | Credit Card Statement | F000860 | W Foster Exhibit 02 | 60 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 29 | 11/3/2016 | | Bank Statement | F000839 | W Foster Exhibit 02 | 39 |
| Additional Damages - W Foster Living | Sprint | Cell Phone | 168 | 11/17/2016 | | Credit Card Statement | F000861 | W Foster Exhibit 02 | 61 |
| Additional Damages - W Foster Living | Heathmore Apartments | Rent - December | 631 | 11/28/2016 | | Check Carbon Copy | F000872 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 57 | 11/30/2016 | | Credit Card Statement | F000864 | W Foster Exhibit 02 | 64 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 48 | 12/9/2016 | | Bank Statement | F000885 | W Foster Exhibit 02 | 85 |
| Additional Damages - W Foster Living | Sprint | Cell Phone | 112 | 12/18/2016 | | Credit Card Statement | F000865 | W Foster Exhibit 02 | 65 |
| Additional Damages - W Foster Living | Heathmore Apartments | Rent - January | 647 | 12/25/2016 | | Check Carbon Copy | F000900 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 57 | 1/1/2017 | X | Claimant | F000791 | W Foster Exhibit 01 | 9 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 109 | 1/12/2017 | | Bank Statement | F000873 | W Foster Exhibit 02 | 73 |
| Additional Damages - W Foster Living | Sprint | Cell Phone | 187 | 1/17/2017 | | Credit Card Statement | F000884 | W Foster Exhibit 02 | 84 |
| Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 62 | 1/30/2017 | | Credit Card Statement | F000885 | W Foster Exhibit 02 | 85 |
| Additional Damages - W Foster Living | Heathmore Apartments | Rent - February | 652 | 1/30/2017 | | Check Carbon Copy | F000902 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 96 | 2/10/2017 | | Bank Statement | F000874 | W Foster Exhibit 02 | 74 |
| Additional Damages - W Foster Living | Sprint | Cell Phone | 187 | 2/17/2017 | | Credit Card Statement | F000886 | W Foster Exhibit 02 | 86 |
| Additional Damages - W Foster Living | Heathmore Apartments | Rent - March | 652 | 2/27/2017 | | Check Carbon Copy | F000902 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 65 | 3/2/2017 | | Credit Card Statement | F000887 | W Foster Exhibit 02 | 87 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 90 | 3/13/2017 | | Bank Statement | F000875 | W Foster Exhibit 02 | 75 |
| Additional Damages - W Foster Living | Sprint | Cell Phone | 187 | 3/21/2017 | | Credit Card Statement | F000889 | W Foster Exhibit 02 | 89 |
| Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 65 | 3/30/2017 | | Credit Card Statement | F000888 | W Foster Exhibit 02 | 88 |
| Additional Damages - W Foster Living | Heathmore Apartments | Rent - April | 652 | 3/31/2017 | | Check Carbon Copy | F000900 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 86 | 4/10/2017 | | Bank Statement | F000876 | W Foster Exhibit 02 | 76 |
| Additional Damages - W Foster Living | Sprint | Cell Phone | 187 | 4/17/2017 | | Credit Card Statement | F000889 | W Foster Exhibit 02 | 89 |
| Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 65 | 4/30/2017 | | Credit Card Statement | F000890 | W Foster Exhibit 02 | 90 |
| Additional Damages - W Foster Living | Heathmore Apartments | Rent - May | 653 | 4/30/2017 | | Check Carbon Copy | F000900 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 57 | 5/10/2017 | | Bank Statement | F000877 | W Foster Exhibit 02 | 77 |
| Additional Damages - W Foster Living | Sprint | Cell Phone | 187 | 5/18/2017 | | Credit Card Statement | F000890 | W Foster Exhibit 02 | 90 |
| Additional Damages - W Foster Living | Heathmore Apartments | Rent - July (June) | 653 | 5/30/2017 | | Check Carbon Copy | F000901 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 65 | 5/31/2017 | | Credit Card Statement | F000891 | W Foster Exhibit 02 | 91 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 34 | 6/13/2017 | | Bank Statement | F000878 | W Foster Exhibit 02 | 78 |
| Additional Damages - W Foster Living | Sprint | Cell Phone | 187 | 6/17/2017 | | Credit Card Statement | F000891 | W Foster Exhibit 02 | 91 |
| Additional Damages - W Foster Living | Heathmore Apartments | Rent - July | 653 | 6/28/2017 | | Check Carbon Copy | F000901 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 65 | 6/30/2017 | | Credit Card Statement | F000892 | W Foster Exhibit 02 | 92 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 39 | 7/12/2017 | | Bank Statement | F000879 | W Foster Exhibit 02 | 79 |
| Additional Damages - W Foster Living | Sprint | Cell Phone | 183 | 7/18/2017 | | Credit Card Statement | F000892 | W Foster Exhibit 02 | 92 |
| Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 65 | 7/30/2017 | | Credit Card Statement | F000893 | W Foster Exhibit 02 | 93 |
| Additional Damages - W Foster Living | Heathmore Apartments | Rent - August | 653 | 7/31/2017 | X | Check Carbon Copy | F000901 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 34 | 8/11/2017 | | Bank Statement | F000880 | W Foster Exhibit 02 | 80 |
| Additional Damages - W Foster Living | Sprint | Cell Phone | 183 | 8/17/2017 | | Credit Card Statement | F000893 | W Foster Exhibit 02 | 93 |

Exhibit 6.1 (Revised)
Damage Claims Detail - William and Vicki Foster

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 65 | 8/30/2017 | | Credit Card Statement | F000894 | W Foster Exhibit 02 | 94 |
| Additional Damages - W Foster Living | Heathmore Apartments | Rent - September | 653 | 8/31/2017 | X | Check Carbon Copy | F000903 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 38 | 9/11/2017 | | Bank Statement | F000881 | W Foster Exhibit 02 | 81 |
| Additional Damages - W Foster Living | Sprint | Cell Phone | 183 | 9/17/2017 | | Credit Card Statement | F000894 | W Foster Exhibit 02 | 94 |
| Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 67 | 9/30/2017 | | Credit Card Statement | F000895 | W Foster Exhibit 02 | 95 |
| Additional Damages - W Foster Living | Heathmore Apartments | Rent - October | 653 | 9/30/2017 | X | Check Carbon Copy | F000903 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 36 | 10/4/2017 | | Bank Statement | F000882 | W Foster Exhibit 02 | 82 |
| Additional Damages - W Foster Living | Sprint | Cell Phone | 183 | 10/18/2017 | | Credit Card Statement | F000895 | W Foster Exhibit 02 | 95 |
| Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 67 | 10/30/2017 | | Credit Card Statement | F000896 | W Foster Exhibit 02 | 96 |
| Additional Damages - W Foster Living | Heathmore Apartments | Rent - November | 653 | 10/31/2017 | X | Check Carbon Copy | F000903 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 32 | 11/9/2017 | | Bank Statement | F000882 | W Foster Exhibit 02 | 82 |
| Additional Damages - W Foster Living | Sprint | Cell Phone | 183 | 11/17/2017 | | Credit Card Statement | F000897 | W Foster Exhibit 02 | 97 |
| Additional Damages - W Foster Living | Heathmore Apartments | Rent - December | 183 | 11/30/2017 | X | Check Carbon Copy | F000904 | W Foster Exhibit 02 | |
| Additional Damages - W Foster Living | Time Warner Cable | Cable Bill | 63 | 12/8/2017 | | Credit Card Statement | F000898 | W Foster Exhibit 02 | 98 |
| Additional Damages - W Foster Living | Louisville Gas & Electric | Electric Bill | 65 | 12/11/2017 | | Bank Statement | F000883 | W Foster Exhibit 02 | 83 |
| Additional Damages - W Foster Living | Sprint | Cell Phone | 183 | 12/18/2017 | | Credit Card Statement | F000898 | W Foster Exhibit 02 | 98 |
| **Additional Damages - W Foster Living Total** | | | $ 94,528 | | | | | | |

6.A
Documents and Other Information Considered - William & Vicki Foster

*Chinese Drywall Litigation Involving Priority Claimants*

*Bate Stamp (if applicable)*

| No. | Claimant | General Description | First Page | Last Page |
|---|---|---|---|---|
| **A. Pleadings and Other Legal Documents:** | | | | |
| 1 | All | Trial Plan for Property Damage Claims and Scheduling Order dated November 16, 2018 | | |
| 2 | Foster | Priority Claimant Vicki Foster First Amended Answers to Interrogatories, dated January 10, 2019 | | |
| 3 | Foster | Priority Claimant William Foster First Amended Answers to Interrogatories, dated January 10, 2019 | | |
| 4 | Foster | Priority Claimant Vicki Foster First Amended Answers to Defendants' Second Set of Interrogatories, dated December 4, 2018 | | |
| 5 | Foster | Priority Claimant William Foster First Amended Answers to Defendants' Second Set of Interrogatories, dated December 4, 2018 | | |
| 6 | Foster | William Foster Fourth Amended Supplemental Profile Plaintiff Profile Form, dated December 6, 2018 | | |
| 7 | Foster | Priority Claimant William Foster Answers to Interrogatories, dated November 30, 2018 | | |
| 8 | Foster | Priority Claimant William Foster Answers to Defendant's Second Set of Interrogatories, dated November 30, 2018 | | |
| 9 | Foster | Priority Claimant Vicki Foster Answers to Interrogatories, dated November 30, 2018 | | |
| 10 | Foster | Priority Claimant Vicki Foster Answers to Defendant's Second Set of Interrogatories, dated November 30, 2018 | | |
| **B. Depositions & Corresponding Exhibits:** | | | | |
| 1 | Foster | Deposition Transcript of William Foster, dated January 8, 2019 | | |
| 2 | Foster | Deposition Transcript of Vicki Foster, dated December 7, 2018 | | |
| 3 | Foster | Deposition Transcript of Vicki Foster, dated January 8, 2019 | | |
| 4 | Foster | Deposition Exhibit 01 - Priority Claimant Vicki Foster's Answers to Interrogatories | | |
| 5 | Foster | Deposition Exhibit 02 - Foster, Vicki and William Damages Spreadsheet - Personal Property Damages | | |
| 6 | Foster | Deposition Exhibit 03 - Miscellaneous Claim Form Worksheet Bates Numbered 000076 to 000089 | F000076 | F000089 |
| 7 | Foster | Deposition Exhibit 04 - Receipts - Bates Numbered 00305 to 000425 | F000305 | F000425 |
| 8 | Foster | Deposition Exhibit 05 - Receipts - Additional Items Replaced When Cost-Effective - Bates Numbered F000905 to F000915 | F000905 | F000915 |
| 9 | Foster | Deposition Exhibit 06 - Receipts - Golf-Related Items - Bates Numbered F000777 to F000782 | F000777 | F000782 |
| 10 | Foster | Deposition Exhibit 07 - Foster, Vicki and William Damages Spreadsheet - Discarded but Not Replaced | | |
| 11 | Foster | Deposition Exhibit 08 - Foster, Vicki and William Damages Spreadsheet - Items Wanting to be Replaced | | |
| 12 | Foster | Deposition Exhibit 09 - October 19, 2011 Polkow Construction Chinese Drywall Remediation Proposal - Bates Numbered 000090 to 000094 | F000090 | F000094 |
| 13 | Foster | Deposition Exhibit 01 - Housing and Utilities Accumulated Due to Having to Return to Work | F000783 | F000791 |
| 14 | Foster | Deposition Exhibit 02 - Receipts/Invoices - Re: Alternative Living Expenses - Bates Numbered F000801 to F000904 | F000801 | F000904 |
| 15 | Foster | 1st Deposition Exhibit 01 - Warranty Deed | | |
| 16 | Foster | 1st Deposition Exhibit 02 - Floor Plan | | |
| 17 | Foster | 1st Deposition Exhibit 03 - Property Listing - Banner Supply | | |
| 18 | Foster | 1st Deposition Exhibit 04 - Allied Home Inspections Report | | |
| 19 | Foster | 1st Deposition Exhibit 05 - Intuitive Environmental Solutions Report | | |
| 20 | Foster | 1st Deposition Exhibit 06 - Polkow Construction Proposal | | |
| 21 | Foster | 1st Deposition Exhibit 07 - Check Copies | | |
| 22 | Foster | 1st Deposition Exhibit 08 - Lease Agreement | | |
| 23 | Foster | 1st Deposition Exhibit 09 - Receipts and Supporting Documents for Replacement Items | | |

6.A
Documents and Other Information Considered - William & Vicki Foster

*Chinese Drywall Litigation Involving Priority Claimants*

*Bate Stamp (if applicable)*

| No. | Claimant | General Description | First Page | Last Page |
|-----|----------|---------------------|------------|-----------|
| 24 | Foster | 1st Deposition Exhibit 10 - Remediation Checklist | | |
| 25 | Foster | 1st Deposition Exhibit 11 - Additional Receipts and Supporting Documents for Replacement Items | | |
| 26 | Foster | 1st Deposition Exhibit 12 - Lee County Property Appraiser Report | | |
| 27 | Foster | 1st Deposition Exhibit 13 - Plaintiff Profile Form | | |
| 28 | Foster | 1st Deposition Exhibit 14 - Plaintiff Profile Form | | |
| 29 | Foster | 1st Deposition Exhibit 15 - Supplemental Plaintiff Profile Form | | |
| 30 | Foster | 1st Deposition Exhibit 16 - First Amended Supplemental Plaintiff Profile Form | | |
| 31 | Foster | 1st Deposition Exhibit 17 - Second Amended Supplemental Plaintiff Profile Form | | |
| 32 | Foster | 1st Deposition Exhibit 18 - Third Amended Supplemental Plaintiff Profile Form | | |
| 33 | Foster | 1st Deposition Exhibit 19 - Fourth Amended Supplemental Plaintiff Profile Form | | |
| 34 | Foster | 1st Deposition Exhibit 20 - Miscellaneous Claim Form Worksheets | | |

C. Supporting Documentation

| No. | Claimant | General Description | First Page | Last Page |
|-----|----------|---------------------|------------|-----------|
| 1 | Foster | William and Vicki Foster Out of Pocket Damages Summary Provided by Counsel | | |
| 2 | Foster | Doc ID. 365719 - Polkow Construction remediation proposal | | |
| 3 | Foster | Doc ID. 365749 - Foster remediation contract with Polkow Construction, receipts, invoices and proof of payment | | |
| 4 | Foster | Doc ID. 366605 - Foster Proof of payment for remediation damages | | |
| 5 | Foster | Doc ID. 367444 - (Backup) Foster Proof of Payment for Raymond Building Supply Items | | |
| 6 | Foster | Doc ID. 125033 - V Foster Lease Agreements for ALE | | |
| 7 | Foster | Doc ID. 125036 - V Foster Alternative Living Expenses Support | | |
| 8 | Foster | Doc ID. 366603 - Condo moving expense invoices and receipts for ALE | | |
| 9 | Foster | Doc ID. 367445 - (Backup) Foster Proof of Payment for Florida ALE Comcast | | |
| 10 | Foster | Doc ID. 366781 - Personal Property Damage - Damaged Items That Have Been Replaced | | |
| 11 | Foster | Doc ID. 124967 - Receipts for damaged items repaired or replaced | | |
| 12 | Foster | Doc ID. 365713 - Foster List of damaged items and receipts (repaired or replaced) | | |
| 13 | Foster | Doc ID. 367443 - (Backup) Foster Proof of Cost for Items that Need to be Replaced | | |
| 14 | Foster | Doc ID. 329374 - Foster receipts and invoices for damaged items (replaced) | | |
| 15 | Foster | Doc ID. 124973 - Foster photos of damaged items (discarded or not replaced) | | |
| 16 | Foster | Doc ID. 366742 - Foster Photos of damaged items (discarded or not replaced) | | |
| 17 | Foster | Doc ID. 366743 - Foster Photos of damaged items (discarded or not replaced) | | |
| 18 | Foster | Doc ID. 366744 - Foster Photos of damaged items (discarded or not replaced) | | |
| 19 | Foster | Doc ID. 366745 - Foster Photos of damaged items (discarded or not replaced) | | |
| 20 | Foster | Doc ID. 366746 - Foster Photos of damaged items (discarded or not replaced) | | |
| 21 | Foster | Doc ID. 366782 - Personal Property Damage - Damaged Items Discarded and Not Replaced | | |
| 22 | Foster | Doc ID. 366783 - Personal Property Damage - Damaged Items Still Owned and Not Yet Replaced | | |

6.A
Documents and Other Information Considered - William & Vicki Foster

---

*Chinese Drywall Litigation Involving Priority Claimants*

*Bate Stamp (if applicable)*

| No. | Claimant | General Description | First Page | Last Page |
|-----|----------|---------------------|------------|-----------|
| 23 | Foster | Budget Blinds 10.29.2012 - $5,084.00 - better copy | | |
| 24 | Foster | Doc ID. 365712 - W Foster Return to Work Related Expenses | | |
| 25 | Foster | Doc ID. 366606 - W Foster Receipts and Invoices ALE | | |
| 26 | Foster | Doc ID. 367575 - Updated William Fosters ALE Expenses 2008-2009 | | |
| 27 | Foster | Clearer Copies of W Foster Exhibit 2 - Bates Numbered F000801 to F000904 | F000801 | F000904 |
| 28 | Foster | 365714 - Foster CDW Settlement Program Checks | | |
| 29 | Foster | 365715 - Foster GBI Holdback Payment | | |
| 30 | Foster | 365716 - Foster WCI Settlement Check | | |

D. Research and Other Sources:

| 1 | Foster | Telephone Conversation with Counsel and Vicki and William Foster |
|---|--------|-------------------------------------------------------------------|

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-22408-Civ-COOKE

EDUARDO AND CARMEN AMORIN, *et al.*,
individually and on behalf of others similarly
situated,

       Plaintiffs,

vs.

TAISHAN GYPSUM CO., LTD., f/k/a
SHANDONG TIASHE DONGXIN CO. LTD.,
*et al.*,

       Defendants.

_____

# Exhibit 7 (Revised)

**Calculations of Damages for Priority Claimants**

# Anthony & Candace Gody

EXHIBIT TO THE EXPERT WITNESS REPORT OF:
MICHAEL P. ELKIN, CPA/CFF/ABV, CFE
IN THE PRIORITY CLAIMANT TRIAL

April 26, 2019



Exhibit 7 (Revised)
Data and Damage Summary - Anthony & Candace Gody

*Chinese Drywall Litigation Involving Priority Claimants*

| Data: | | Reference / Notes |
|---|---|---|
| Address of Affected property | 10842 Tiberio Drive | *SPPF* |
| | Fort Myer, FL 33913 | *SPPF* |
| Date Affected property acquired | April 10, 2007 | *SPPF* |
| Date Chinese drywall installed | August-06 | *SPPF* |
| Date moved into Affected property | April 10, 2007 | *SPPF* |
| Date first aware of Chinese drywall | June-09 | *SPPF* |
| Move out date to alternate living | June 8, 2010 | *ROG 1, #2* |
| Date returned to Affected property | September-12 | *ROG 1, #2* |
| End date for alternate living expenses | September-12 | *ROG 1, #2* |
| Still own property? | Y | *SPPF* |
| Bankruptcy caused by damage? | N | *SPPF* |
| Foreclosure or short sale? | N | *SPPF* |
| Affected property sold? | N | *SPPF* |
| Sale date | N/A | *SPPF* |
| Type of sale | N/A | *SPPF* |
| Remediation status | Complete | *SPPF* |
| Remediation period | 6/29/2011 - 8/31/2012 | *SPPF* |

| Damage Summary: | | |
|---|---|---|
| Full or Partial Out-of-Pocket Remediation Expenses | $ 153,205 | *Exh. 7.1 (Revised)* |
| Other Damages | | |
| Alternate Living Expenses | $ 55,180 | *Exh. 7.1 (Revised)* |
| Personal Property Damage Expense | 17,799 | *Exh. 7.1 (Revised)* |
| Additional Damages | - | |
| | $ 72,979 | |
| Lost Equity | TBD | |
| Diminution in Value | TBD | |
| Loss of Use and Enjoyment | TBD | |
| Punitive Damages | TBD | |

Exhibit 7.1 (Revised)
Damage Claims Detail - Candace Gody

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Remediation | Polkow Construction | Remediation - Construction | $ 8,000 | 6/28/2011 | | Bank Statement | N/A | Exhibit 12 | 87 |
| Remediation | Intuitive Environmental Solutions LLC | Remediation - Inspection | 1,300 | 7/11/2011 | | Invoice | N/A | Exhibit 8 | 65 |
| Remediation | Polkow Construction | Remediation - Construction | 11,675 | 8/5/2011 | | Bank Statement | N/A | Exhibit 12 | 67 |
| Remediation | Intuitive Environmental Solutions LLC | Remediation - Inspection | 650 | 9/13/2011 | | Statement | N/A | Exhibit 12 | 102 |
| Remediation | Polkow Construction | Remediation - Construction | 7,000 | 1/13/2012 | | Check | N/A | Exhibit 12 | 1 |
| Remediation | Kevin Polkow | Remediation - Other | 6,981 | 2/8/2012 | | Check | N/A | Exhibit 12 | 2 |
| Remediation | Costco | Reverse Osmosis System | 150 | 2/23/2012 | | PBC List | N/A | Exhibit 15 | 1 |
| Remediation | Raymond Building Supply | Remediation - Other | 19,826 | 3/2/2012 | | Invoices | N/A | Exhibit 14 | 6-7 |
| Remediation | Signature Hardware | Remediation - Other | 1,635 | 3/6/2012 | | Receipt | N/A | Exhibit 14 | 22 |
| Remediation | Emilio Martinez | Remediation - Construction | 10,000 | 3/8/2012 | | Check | N/A | Exhibit 12 | 3 |
| Remediation | M & G Best Service (Emilio Martinez) | Remediation - Other | 10,000 | 3/8/2012 | | Invoice | N/A | Exhibit 14 | 8 |
| Remediation | Costco | Garage Door Opener | 250 | 3/8/2012 | | PBC List | N/A | Exhibit 15 | 1 |
| Remediation | Budget Blinds | Remediation - Other | 3,829 | 3/20/2012 | | Invoice | N/A | Exhibit 14 | 28 |
| Remediation | Polkow Construction | Remediation - Construction | 8,615 | 3/23/2012 | | Check | N/A | Exhibit 12 | 4 |
| Remediation | Faucet Direct.com | Remediation - Other | 1,728 | 3/29/2012 | | Order Statement | N/A | Exhibit 14 | 13 |
| Remediation | Kevin Polkow | Remediation - Other | 10,000 | 3/30/2012 | | Check | N/A | Exhibit 12 | 5 |
| Remediation | Lamps Plus | Remediation - Other | 370 | 4/1/2012 | | Order Statement | N/A | Exhibit 14 | 16 |
| Remediation | Lamps Plus | Remediation - Other | 387 | 4/2/2012 | | Order Statement | N/A | Exhibit 14 | 10 |
| Remediation | Amazon | Garbage Disposal | 152 | 4/2/2012 | | PBC List | N/A | Exhibit 15 | 1 |
| Remediation | Amazon | Air Switch | 50 | 4/2/2012 | | PBC List | N/A | Exhibit 15 | 1 |
| Remediation | Lighting First | Remediation - Other | 1,436 | 4/5/2012 | | Receipt | N/A | Exhibit 14 | 20 |
| Remediation | Overstock.com | Remediation - Other | 276 | 4/6/2012 | | PBC List | N/A | Exhibit 15 | 1 |
| Remediation | Tile Outlets of America | Remediation - Other | 24 | 4/6/2012 | | Receipt | N/A | Exhibit 14 | 21 |
| Remediation | Gulf Stone Construction | Remediation - Construction | 3,300 | 4/7/2012 | | Check | N/A | Exhibit 12 | 6 |
| Remediation | Your Home Supply | Remediation - Other | 170 | 4/9/2012 | | Receipt | N/A | Exhibit 14 | 24 |
| Remediation | Tile Outlets of America | Remediation - Other | 100 | 4/9/2012 | | Receipt | N/A | Exhibit 14 | 21 |
| Remediation | Tile Outlets of America | Remediation - Other | 57 | 4/9/2012 | | Receipt | N/A | Exhibit 14 | 21 |
| Remediation | Lamps Plus | Remediation - Other | 522 | 4/16/2012 | | PBC List | N/A | Exhibit 15 | 1 |
| Remediation | Polkow Construction | Phase III | 10,000 | 4/18/2012 | | Check | N/A | Exhibit 12 | 7 |
| Remediation | Lighting First | Remediation - Other | 216 | 4/18/2012 | | Receipt | N/A | Exhibit 14 | 26 |
| Remediation | Hayneedle | Remediation - Other | 40 | 4/26/2012 | | Receipt | N/A | Exhibit 14 | 40 |
| Remediation | Signature Hardware | Front Door | 322 | 4/28/2012 | | PBC List | N/A | Exhibit 15 | 1 |
| Remediation | Polkow Construction | Phase III | 10,000 | 5/1/2012 | | Check | N/A | Exhibit 12 | 9 |
| Remediation | Maurizio D'Alessandro | Phase III | 6,301 | 5/1/2012 | | Check | N/A | Exhibit 12 | 8 |
| Remediation | No Vendor Name - Cushion | Upholster Bench Cushion | 237 | 5/1/2012 | | PBC List | N/A | Exhibit 15 | 1 |
| Remediation | M & G Best Service (Emilio Martinez) | Remediation - Construction | 7,450 | 5/5/2012 | | Check | N/A | Exhibit 12 | 10 |
| Remediation | Grandinroad | Remediation - Other | 111 | 5/8/2012 | | Receipt | N/A | Exhibit 14 | 42 |
| Remediation | ColorWheel Paint | Remediation - Other | 32 | 5/18/2012 | | Receipt | N/A | Exhibit 14 | 43 |
| Remediation | ColorWheel Paint | Remediation - Other | 58 | 5/19/2012 | | Receipt | N/A | Exhibit 14 | 44 |
| Remediation | Home Depot | Remediation - Other | 87 | 5/24/2012 | | PBC List | N/A | Exhibit 15 | 1 |
| Remediation | Comcast | Remediation - Other | 80 | 5/25/2012 | | Statement | N/A | Exhibit 14 | 35 |
| Remediation | Comcast | Remediation - Other | - * | 5/25/2012 | | PBC List | N/A | Exhibit 15 | 1 |
| Remediation | Gulf Stone Construction | Remediation - Construction | 7,288 | 5/29/2012 | | Invoice | N/A | Exhibit 14 | 27 |
| Remediation | Core Cleaning | Remediation - Other | 250 | 6/19/2012 | | PBC List | N/A | Exhibit 15 | 1 |
| Remediation | Build.com | Remediation - Other | 280 | 6/20/2012 | | PBC List | N/A | Exhibit 15 | 1 |
| Remediation | Lighting First | Remediation - Other | 355 | 7/10/2012 | | Invoice | N/A | Exhibit 14 | 32 |
| Remediation | Action Automatic Door & Gate | Remediation - Other | 165 | 7/11/2012 | | Invoice | N/A | Exhibit 14 | 41 |
| Remediation | Ray Allen | Remediation - Other | 50 | 7/16/2012 | | PBC List | N/A | Exhibit 15 | 1 |
| Remediation | Hadinger Flooring | Remediation - Construction | 1,125 | 9/13/2012 | | Invoice | N/A | Exhibit 14 | 29 |
| Remediation | Hadinger Flooring | Remediation - Other | 275 | 10/3/2012 | | Invoice | N/A | Exhibit 14 | 31 |
| **Remediation Total** | | | **$ 153,205** | | | | | | |
| Alternate Living Expenses | Marshalls | (Domestics) | $ - * | 6/22/2010 | | Receipt | N/A | Exhibit 8 | 42 |
| Alternate Living Expenses | Stop & Shop | Groceries in Lieu of Rent | 26 * | 6/22/2010 | | Receipt | N/A | Exhibit 8 | 3 |
| Alternate Living Expenses | IGA | Groceries in Lieu of Rent | 13 * | 6/22/2010 | | Receipt | N/A | Exhibit 8 | 3 |
| Alternate Living Expenses | CVS | Groceries in Lieu of Rent | 11 * | 6/23/2010 | | Receipt | N/A | Exhibit 8 | 2 |

Exhibit 7.1 (Revised)
Damage Claims Detail - Candace Gody

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Alternate Living Expenses | Giutna's Meat Farms | Groceries in Lieu of Rent | 29 * | 6/24/2010 | | Receipt | N/A | Exhibit 8 | 2 |
| Alternate Living Expenses | IGA | Groceries in Lieu of Rent | 6 * | 6/25/2010 | | Receipt | N/A | Exhibit 8 | 3 |
| Alternate Living Expenses | Marshalls | (Giftware and Domestics) | 37 * | 6/26/2010 | | Receipt | N/A | Exhibit 8 | 42 |
| Alternate Living Expenses | Costco | Alt Home - TV | 185 | 6/27/2010 | | Receipt | N/A | Exhibit 8 | 27 |
| Alternate Living Expenses | IGA | Groceries in Lieu of Rent | 27 * | 6/28/2010 | | Receipt | N/A | Exhibit 8 | 8 |
| Alternate Living Expenses | IGA | Groceries in Lieu of Rent | 8 * | 6/28/2010 | | Receipt | N/A | Exhibit 8 | 5 |
| Alternate Living Expenses | IGA | Groceries in Lieu of Rent | 5 * | 6/29/2010 | | Receipt | N/A | Exhibit 8 | 7 |
| Alternate Living Expenses | Uncle Giuseppe's | Groceries in Lieu of Rent | 107 * | 7/1/2010 | | Receipt | N/A | Exhibit 8 | 8 |
| Alternate Living Expenses | HomeGoods | (Dinnerware, Cookware, and Bakeware) | 114 * | 7/6/2010 | | Receipt | N/A | Exhibit 8 | 46 |
| Alternate Living Expenses | Kitchen Collection | (Colander, Bag Clip, Zester and Grater) | 27 * | 7/8/2010 | | Receipt | N/A | Exhibit 8 | 45 |
| Alternate Living Expenses | Kitchen Collection | (Rotary Grater and Bottle Toppers) | 22 * | 7/8/2010 | | Receipt | N/A | Exhibit 8 | 45 |
| Alternate Living Expenses | Bed Bath & Beyond | (Fabric Liner Hotel and Plates) | 72 * | 7/10/2010 | | Receipt | N/A | Exhibit 8 | 45 |
| Alternate Living Expenses | Waldbaums | Groceries in Lieu of Rent | 18 * | 7/10/2010 | | Receipt | N/A | Exhibit 8 | 6 |
| Alternate Living Expenses | IGA | Groceries in Lieu of Rent | 16 * | 7/10/2010 | | Receipt | N/A | Exhibit 8 | 6 |
| Alternate Living Expenses | Voss TV & Appliances | Alt Home - Voss Bedding | 1,931 | 7/14/2010 | | Invoice | N/A | Exhibit 8 | 19 |
| Alternate Living Expenses | Marshalls | (Gourmet Food, Toddler Items, and Giftware) | - * | 7/14/2010 | X | Receipt | N/A | Exhibit 8 | 44 |
| Alternate Living Expenses | King Kullen | Groceries in Lieu of Rent | 22 * | 7/14/2010 | X | Receipt | N/A | Exhibit 8 | 6 |
| Alternate Living Expenses | Pathmark | Groceries in Lieu of Rent | 5 * | 7/14/2010 | X | Receipt | N/A | Exhibit 8 | 3 |
| Alternate Living Expenses | Home Depot | (Garbage Can, Table, Hose, Towel Ring/Bar and etc.) | 325 * | 7/15/2010 | | Receipt | N/A | Exhibit 8 | 33 |
| Alternate Living Expenses | Costco | (Cleaning Supplies, Napkins, Kleenex, Shoe Rack, Paper Towels, Shelves, Baskets, and etc.) | 211 * | 7/15/2010 | X | Receipt | N/A | Exhibit 8 | 32 |
| Alternate Living Expenses | Bed Bath & Beyond | (Various Bathroom and Kitchen Items) | 368 * | 7/16/2010 | | Receipt | N/A | Exhibit 8 | 46 |
| Alternate Living Expenses | Marshalls | (Domestics and Giftware) | - * | 7/16/2010 | | Receipt | N/A | Exhibit 8 | 46 |
| Alternate Living Expenses | Bed Bath & Beyond | (Linens, Paper Towel Holder, K Cups, Trays, Draw Organizers, and etc.) | 146 * | 7/16/2010 | | Receipt | N/A | Exhibit 8 | 47 |
| Alternate Living Expenses | Best Buy | Alt Home - TV | 642 | 7/16/2010 | | Receipt | N/A | Exhibit 8 | 27 |
| Alternate Living Expenses | Home Depot | (Step Ladder, Sisal Rope, EZ Anchor, Shelves, and etc.) | 181 * | 7/19/2010 | | Receipt | N/A | Exhibit 8 | 33 |
| Alternate Living Expenses | Macy's | (Cookware, Glassware, Dinnerware and etc.) | 496 * | 7/21/2010 | | Receipt | N/A | Exhibit 8 | 44 |
| Alternate Living Expenses | Home Depot | (Brush) | 1 * | 7/22/2010 | | Receipt | N/A | Exhibit 8 | 33 |
| Alternate Living Expenses | Bed Bath & Beyond | (Hanger Champs, Squeegee, Soap Savers, Drawer Doubler) | 27 * | 7/22/2010 | | Receipt | N/A | Exhibit 8 | 47 |
| Alternate Living Expenses | Home Depot | (Duct Tape, Storage Hooks, Basket and etc.) | 29 * | 7/22/2010 | | Receipt | N/A | Exhibit 8 | 31 |
| Alternate Living Expenses | Pool City | (Bistro Table and Chairs) | 526 | 7/23/2010 | | Invoice | N/A | Exhibit 8 | 34 |
| Alternate Living Expenses | Big Lots | (Hangers and Vases) | 26 * | 7/23/2010 | | Receipt | N/A | Exhibit 8 | 47 |
| Alternate Living Expenses | Home Depot | (Yardstick, Studsensor, Extinguisher Garnet, Putty Knife, Empty Can) | - * | 7/26/2010 | | Receipt | N/A | Exhibit 8 | 31 |
| Alternate Living Expenses | Tuesday Morning | (Sorbet Set, Nature Lock, Forks and Coasters) | 32 * | 7/26/2010 | | Receipt | N/A | Exhibit 8 | 42 |
| Alternate Living Expenses | Kohl's | (Chairpads, Wall Art and Mirror) | 144 * | 7/26/2010 | | Receipt | N/A | Exhibit 8 | 48 |
| Alternate Living Expenses | Best Buy | Alt Home - Other Electronics | 203 | 7/29/2010 | | Receipt | N/A | Exhibit 8 | 27 |
| Alternate Living Expenses | Dick's Sporting Goods | (Golf Equipment) | - * | 7/31/2010 | | Receipt | N/A | Exhibit 8 | 16 |
| Alternate Living Expenses | Macy's | (Dinnerware, Gadgets, Bakeware and Cookware) | 135 * | 8/3/2010 | | Receipt | N/A | Exhibit 8 | 48 |
| Alternate Living Expenses | Best Buy | Alt Home - Computer | 762 | 8/10/2010 | | Receipt | N/A | Exhibit 8 | 36 |
| Alternate Living Expenses | Voss TV & Appliances | Alt Home - Voss Unknown | - * | 8/16/2010 | | Invoice | N/A | Exhibit 8 | 16 |
| Alternate Living Expenses | Lowe's | (Step Stool, Storage Basket, Polishing Cloth, Grill Accessories and etc.) | 75 * | 8/19/2010 | | Receipt | N/A | Exhibit 8 | 31 |
| Alternate Living Expenses | Bed Bath & Beyond | (Jewel Tray, Hangers, Art Shadow Box, Brita Filters, Spoons) | 61 * | 8/21/2010 | | Receipt | N/A | Exhibit 8 | 43 |
| Alternate Living Expenses | Marshalls | (Toddler Items and Giftware) | - * | 8/21/2010 | | Receipt | N/A | Exhibit 8 | 44 |
| Alternate Living Expenses | Kohl's | (Kitchen Items and Towels) | 19 * | 8/24/2010 | | Receipt | N/A | Exhibit 8 | 43 |
| Alternate Living Expenses | Belsky LTD | Alt Home - Gas Line | - * | 8/25/2010 | | Invoice | N/A | Exhibit 8 | 24 |
| Alternate Living Expenses | Bed Bath & Beyond | (Salad Spinner, Hangers, and Hand Vacuum) | 57 * | 8/29/2010 | | Receipt | N/A | Exhibit 8 | 43 |
| Alternate Living Expenses | Home Depot | (Sprinklers) | 39 * | 8/31/2010 | | Receipt | N/A | Exhibit 8 | 31 |
| Alternate Living Expenses | Best Buy | (Battery Charger) | 19 * | 9/3/2010 | | Receipt | N/A | Exhibit 8 | 32 |
| Alternate Living Expenses | Home Depot | (Doormat, Hang-Ups, Garden Tools, Planters) | 49 * | 9/3/2010 | | Receipt | N/A | Exhibit 8 | 33 |
| Alternate Living Expenses | Dollar General | (Coffee Maker 12 Cups) | 12 * | 9/4/2010 | | Receipt | N/A | Exhibit 8 | 42 |
| Alternate Living Expenses | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,141 | 9/10/2010 | | Bank Statement | N/A | Exhibit 8 | 84 |
| Alternate Living Expenses | Brentwood Bank | Mortgage Modification Fee | - * | 9/26/2010 | | Statement | N/A | Exhibit 8 | 73 |
| Alternate Living Expenses | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 10/12/2010 | | Bank Statement | N/A | Exhibit 8 | 84 |
| Alternate Living Expenses | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 11/10/2010 | | Bank Statement | N/A | Exhibit 8 | 84 |
| Alternate Living Expenses | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 12/10/2010 | | Bank Statement | N/A | Exhibit 8 | 84 |
| Alternate Living Expenses | Remnant World | (Times Squares Rocking Horse) | - * | 12/14/2010 | | Receipt | N/A | Exhibit 8 | 22 |

Exhibit 7.1 (Revised)
Damage Claims Detail - Candace Gody

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Alternate Living Expenses | PA - Sewage | Alt Home - Utilities and Other | 64 | 12/14/2010 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expenses | Guardian Home | Alt Home - Utilities and Other | 45 | 12/16/2010 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expenses | PA - Electric | Alt Home - Utilities and Other | 41 | 12/20/2010 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expenses | PA - Gas | Alt Home - Utilities and Other | 61 | 12/27/2010 | | Bank Statement | N/A | Exhibit 8 | 91 |
| Alternate Living Expenses | Comcast | Alt Home - Utilities and Other | 109 | 12/29/2010 | | Bank Statement | N/A | Exhibit 8 | 86 |
| Alternate Living Expenses | PA - Water | Alt Home - Utilities and Other | 42 | 1/7/2011 | | Bank Statement | N/A | Exhibit 8 | 91 |
| Alternate Living Expenses | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 1/10/2011 | | Bank Statement | N/A | Exhibit 8 | 82 |
| Alternate Living Expenses | PA - Sewage | Alt Home - Utilities and Other | 39 | 1/12/2011 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expenses | PA - Electric | Alt Home - Utilities and Other | 50 | 1/14/2011 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expenses | Guardian Home | Alt Home - Utilities and Other | 45 | 1/18/2011 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expenses | Comcast | Alt Home - Utilities and Other | 113 | 1/27/2011 | | Bank Statement | N/A | Exhibit 8 | 86 |
| Alternate Living Expenses | PA - Gas | Alt Home - Utilities and Other | 133 | 1/31/2011 | | Bank Statement | N/A | Exhibit 8 | 91 |
| Alternate Living Expenses | PA - Water | Alt Home - Utilities and Other | 41 | 2/7/2011 | | Bank Statement | N/A | Exhibit 8 | 91 |
| Alternate Living Expenses | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 2/10/2011 | | Bank Statement | N/A | Exhibit 8 | 82 |
| Alternate Living Expenses | PA - Sewage | Alt Home - Utilities and Other | 34 | 2/10/2011 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expenses | Guardian Home | Alt Home - Utilities and Other | 45 | 2/16/2011 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expenses | PA - Electric | Alt Home - Utilities and Other | 56 | 2/18/2011 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expenses | PA - Trash | Alt Home - Utilities and Other | 30 | 2/22/2011 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expenses | PA - Gas | Alt Home - Utilities and Other | 119 | 2/28/2011 | | Bank Statement | N/A | Exhibit 8 | 91 |
| Alternate Living Expenses | Comcast | Alt Home - Utilities and Other | 113 | 3/1/2011 | | Bank Statement | N/A | Exhibit 8 | 86 |
| Alternate Living Expenses | PA - Water | Alt Home - Utilities and Other | 45 | 3/8/2011 | | Bank Statement | N/A | Exhibit 8 | 91 |
| Alternate Living Expenses | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 3/10/2011 | | Bank Statement | N/A | Exhibit 8 | 82 |
| Alternate Living Expenses | PA - Sewage | Alt Home - Utilities and Other | 35 | 3/14/2011 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expenses | Guardian Home | Alt Home - Utilities and Other | 45 | 3/16/2011 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expenses | PA - Electric | Alt Home - Utilities and Other | 59 | 3/18/2011 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expenses | Comcast | Alt Home - Utilities and Other | 107 | 3/29/2011 | | Bank Statement | N/A | Exhibit 8 | 86 |
| Alternate Living Expenses | PA - Gas | Alt Home - Utilities and Other | 100 | 3/31/2011 | | Bank Statement | N/A | Exhibit 8 | 91 |
| Alternate Living Expenses | PA - Water | Alt Home - Utilities and Other | 50 | 4/7/2011 | | Bank Statement | N/A | Exhibit 8 | 91 |
| Alternate Living Expenses | PA - Sewage | Alt Home - Utilities and Other | 35 | 4/8/2011 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expenses | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 4/11/2011 | | Bank Statement | N/A | Exhibit 8 | 82 |
| Alternate Living Expenses | Guardian Home | Alt Home - Utilities and Other | 45 | 4/14/2011 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expenses | PA - Electric | Alt Home - Utilities and Other | 40 | 4/18/2011 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expenses | Custom Turf | Alt Home - Utilities and Other | 102 | 4/22/2011 | | Bank Statement | N/A | Exhibit 8 | 87 |
| Alternate Living Expenses | PA - Trash | Alt Home - Utilities and Other | 120 | 4/22/2011 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expenses | PA - Gas | Alt Home - Utilities and Other | 85 | 4/22/2011 | | Bank Statement | N/A | Exhibit 8 | 91 |
| Alternate Living Expenses | PA - Sewage | Alt Home - Utilities and Other | 56 | 4/22/2011 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expenses | PA - Water | Alt Home - Utilities and Other | 15 | 4/25/2011 | | Bank Statement | N/A | Exhibit 8 | 91 |
| Alternate Living Expenses | Comcast | Alt Home - Utilities and Other | 111 | 4/28/2011 | | Bank Statement | N/A | Exhibit 8 | 86 |
| Alternate Living Expenses | PA - Sewage | Alt Home - Utilities and Other | 14 | 5/2/2011 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expenses | Naturescape, Inc | Alt Home - Utilities and Other | 90 | 5/9/2011 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expenses | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 5/10/2011 | | Bank Statement | N/A | Exhibit 8 | 82 |
| Alternate Living Expenses | PA - Electric | Alt Home - Utilities and Other | 60 | 5/16/2011 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expenses | Guardian Home | Alt Home - Utilities and Other | 45 | 5/18/2011 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expenses | Custom Turf | Alt Home - Utilities and Other | 90 | 5/19/2011 | | Bank Statement | N/A | Exhibit 8 | 87 |
| Alternate Living Expenses | PA - Gas | Alt Home - Utilities and Other | 42 | 5/25/2011 | | Bank Statement | N/A | Exhibit 8 | 91 |
| Alternate Living Expenses | Comcast | Alt Home - Utilities and Other | 117 | 5/26/2011 | | Bank Statement | N/A | Exhibit 8 | 86 |
| Alternate Living Expenses | PA - Sewage | Alt Home - Utilities and Other | 55 | 6/4/2011 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expenses | Custom Turf | Alt Home - Utilities and Other | 69 | 6/7/2011 | | Bank Statement | N/A | Exhibit 8 | 87 |
| Alternate Living Expenses | PA - Water | Alt Home - Utilities and Other | 89 | 6/9/2011 | | Bank Statement | N/A | Exhibit 8 | 91 |
| Alternate Living Expenses | PA - Sewage | Alt Home - Utilities and Other | 34 | 6/9/2011 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expenses | Naturescape, Inc | Alt Home - Utilities and Other | 180 | 6/10/2011 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expenses | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 6/10/2011 | | Bank Statement | N/A | Exhibit 8 | 82 |
| Alternate Living Expenses | Guardian Home | Alt Home - Utilities and Other | 45 | 6/15/2011 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expenses | PA - Electric | Alt Home - Utilities and Other | 28 | 6/15/2011 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expenses | PA - Electric | Alt Home - Utilities and Other | 28 | 6/16/2011 | | Bank Statement | N/A | Exhibit 8 | 89 |

Exhibit 7.1 (Revised)
Damage Claims Detail - Candace Gody

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Alternate Living Expenses | Naturescape, Inc | Alt Home - Utilities and Other | 1,256 | 6/17/2011 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expenses | Shell | Travel - Gas | 46 | 6/20/2011 | | Receipt | N/A | Exhibit 8 | 52 |
| Alternate Living Expenses | Pilot | Travel - Gas | 35 | 6/21/2011 | | Receipt | N/A | Exhibit 8 | 52 |
| Alternate Living Expenses | Sleep Inn | Travel - Lodging | 80 | 6/21/2011 | | Receipt | N/A | Exhibit 8 | 55 |
| Alternate Living Expenses | PA - Gas | Alt Home - Utilities and Other | 23 | 6/22/2011 | | Bank Statement | N/A | Exhibit 8 | 91 |
| Alternate Living Expenses | Villa Rental - John Miller | Travel - Lodging | 900 * | 6/22/2011 | | Check | N/A | Exhibit 8 | 56 |
| Alternate Living Expenses | Qwik Pack and Ship | Travel - Packing Supplies | 28 | 6/22/2011 | | Receipt | N/A | Exhibit 8 | 58 |
| Alternate Living Expenses | Comcast | Alt Home - Utilities and Other | 111 | 6/28/2011 | | Bank Statement | N/A | Exhibit 8 | 86 |
| Alternate Living Expenses | Bed Bath & Beyond | Travel - Lodging | 56 | 6/29/2011 | | Receipt | N/A | Exhibit 8 | 58 |
| Alternate Living Expenses | Bratta's Piano Bar | Travel - Meals/Groceries | - * | 7/2/2011 | | Receipt | N/A | Exhibit 8 | 62 |
| Alternate Living Expenses | Mario's Italian Meat Market | Travel - Meals/Groceries | - * | 7/2/2011 | | Receipt | N/A | Exhibit 8 | 60 |
| Alternate Living Expenses | Famous Dave's | Travel - Meals/Groceries | - * | 7/2/2011 | | Receipt | N/A | Exhibit 8 | 61 |
| Alternate Living Expenses | PA - Electric | Alt Home - Utilities and Other | 10 | 7/5/2011 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expenses | Carrabba's Italian Grill | Travel - Meals/Groceries | - * | 7/9/2011 | | Receipt | N/A | Exhibit 8 | 62 |
| Alternate Living Expenses | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 7/11/2011 | | Bank Statement | N/A | Exhibit 8 | 82 |
| Alternate Living Expenses | PA - Sewage | Alt Home - Utilities and Other | 50 | 7/11/2011 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expenses | Costco | Travel - Gas | 50 | 7/12/2011 | | Receipt | N/A | Exhibit 8 | 53 |
| Alternate Living Expenses | PA - Water | Alt Home - Utilities and Other | 100 | 7/12/2011 | | Bank Statement | N/A | Exhibit 8 | 91 |
| Alternate Living Expenses | Guardian Home | Alt Home - Utilities and Other | 45 | 7/12/2011 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expenses | Naturescape, Inc | Alt Home - Utilities and Other | 225 | 7/13/2011 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expenses | PA - Gas | Alt Home - Utilities and Other | 40 | 7/15/2011 | | Bank Statement | N/A | Exhibit 8 | 91 |
| Alternate Living Expenses | Mimi's Café | Travel - Meals/Groceries | - * | 7/16/2011 | | Receipt | N/A | Exhibit 8 | 61 |
| Alternate Living Expenses | City Mattress | Travel - Bedding | - * | 7/18/2011 | | Receipt | N/A | Exhibit 8 | 64 |
| Alternate Living Expenses | Outback Steakhouse | Travel - Meals/Groceries | - * | 7/18/2011 | | Receipt | N/A | Exhibit 8 | 62 |
| Alternate Living Expenses | Two Meatballs | Travel - Meals/Groceries | - * | 7/18/2011 | X | Receipt | N/A | Exhibit 8 | 62 |
| Alternate Living Expenses | Villa Rental - John Miller | Travel - Lodging | 83 | 7/20/2011 | | Check | N/A | Exhibit 8 | 57 |
| Alternate Living Expenses | Costco | Travel - Gas | 45 | 7/21/2011 | | Receipt | N/A | Exhibit 8 | 52 |
| Alternate Living Expenses | Costco | Travel - Meals/Groceries | - * | 7/21/2011 | | Receipt | N/A | Exhibit 8 | 60 |
| Alternate Living Expenses | Rodes Fresh and Fancy | Travel - Meals/Groceries | - * | 7/21/2011 | | Receipt | N/A | Exhibit 8 | 60 |
| Alternate Living Expenses | Rodes Fresh and Fancy | Travel - Meals/Groceries | - * | 7/21/2011 | | Receipt | N/A | Exhibit 8 | 60 |
| Alternate Living Expenses | Publix | Travel - Meals/Groceries | - * | 7/24/2011 | | Receipt | N/A | Exhibit 8 | 59 |
| Alternate Living Expenses | Pincher's Crab Shack | Travel - Meals/Groceries | - * | 7/25/2011 | | Receipt | N/A | Exhibit 8 | 61 |
| Alternate Living Expenses | Shell | Travel - Gas | 44 | 7/26/2011 | | Receipt | N/A | Exhibit 8 | 53 |
| Alternate Living Expenses | KangarooExpress | Travel - Gas | 42 | 7/26/2011 | | Receipt | N/A | Exhibit 8 | 53 |
| Alternate Living Expenses | Costco | Travel - Gas | - | 7/26/2011 | X | Receipt | N/A | Exhibit 8 | 53 |
| Alternate Living Expenses | Fresh Market | Travel - Meals/Groceries | - * | 7/26/2011 | X | Receipt | N/A | Exhibit 8 | 59 |
| Alternate Living Expenses | McDonald's | Travel - Meals/Groceries | - * | 7/26/2011 | | Receipt | N/A | Exhibit 8 | 61 |
| Alternate Living Expenses | Holiday Inn Express & Suites | Travel - Lodging | 121 | 7/27/2011 | | Receipt | N/A | Exhibit 8 | 54 |
| Alternate Living Expenses | Guardian Home | Alt Home - Utilities and Other | 45 | 7/28/2011 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expenses | PA - Gas | Alt Home - Utilities and Other | 30 | 7/29/2011 | | Bank Statement | N/A | Exhibit 8 | 91 |
| Alternate Living Expenses | PA - Water | Alt Home - Utilities and Other | 143 | 8/4/2011 | | Bank Statement | N/A | Exhibit 8 | 91 |
| Alternate Living Expenses | Naturescape, Inc | Alt Home - Utilities and Other | 180 | 8/8/2011 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expenses | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 8/10/2011 | | Bank Statement | N/A | Exhibit 8 | 82 |
| Alternate Living Expenses | Comcast | Alt Home - Utilities and Other | 258 | 8/16/2011 | | Bank Statement | N/A | Exhibit 8 | 86 |
| Alternate Living Expenses | PA - Electric | Alt Home - Utilities and Other | 60 | 8/16/2011 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expenses | Custom Turf | Alt Home - Utilities and Other | 99 | 8/22/2011 | | Bank Statement | N/A | Exhibit 8 | 87 |
| Alternate Living Expenses | Naturescape, Inc | Alt Home - Utilities and Other | 942 | 8/24/2011 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expenses | Cannonsburg General | Alt Home - Utilities and Other | 385 | 8/24/2011 | | Bank Statement | N/A | Exhibit 8 | 86 |
| Alternate Living Expenses | Guardian Home | Alt Home - Utilities and Other | 45 | 8/26/2011 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expenses | PA - Sewage | Alt Home - Utilities and Other | 34 | 8/31/2011 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expenses | PA - Water | Alt Home - Utilities and Other | 68 | 9/8/2011 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expenses | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 9/12/2011 | | Bank Statement | N/A | Exhibit 8 | 82 |
| Alternate Living Expenses | PA - Electric | Alt Home - Utilities and Other | 71 | 9/13/2011 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expenses | Naturescape, Inc | Alt Home - Utilities and Other | 135 | 9/15/2011 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expenses | Guardian Home | Alt Home - Utilities and Other | 45 | 9/21/2011 | | Bank Statement | N/A | Exhibit 8 | 88 |

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 366 of 802
Case 2:09-md-02047-MCE Document 271 Entered on FLSD Docket 05/13/2019 Page 83 of
172

Exhibit 7.1 (Revised)
Damage Claims Detail - Candace Gody

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Alternate Living Expenses | PA - Sewage | Alt Home - Utilities and Other | 34 | 10/6/2011 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expenses | PA - Water | Alt Home - Utilities and Other | 375 | 10/7/2011 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expenses | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 10/11/2011 | | Bank Statement | N/A | Exhibit 8 | 82 |
| Alternate Living Expenses | PA - Electric | Alt Home - Utilities and Other | 80 | 10/17/2011 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expenses | Guardian Home | Alt Home - Utilities and Other | 45 | 10/17/2011 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expenses | PA - Gas | Alt Home - Utilities and Other | 9 | 10/17/2011 | | Bank Statement | N/A | Exhibit 8 | 91 |
| Alternate Living Expenses | Naturescape, Inc | Alt Home - Utilities and Other | 90 | 10/18/2011 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expenses | Comcast | Alt Home - Utilities and Other | 320 | 10/20/2011 | | Bank Statement | N/A | Exhibit 8 | 86 |
| Alternate Living Expenses | Custom Turf | Alt Home - Utilities and Other | 99 | 10/24/2011 | | Bank Statement | N/A | Exhibit 8 | 87 |
| Alternate Living Expenses | PA - Sewage | Alt Home - Utilities and Other | 245 | 11/7/2011 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expenses | PA - Water | Alt Home - Utilities and Other | 83 | 11/8/2011 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expenses | Custom Turf | Alt Home - Utilities and Other | 90 | 11/9/2011 | | Bank Statement | N/A | Exhibit 8 | 87 |
| Alternate Living Expenses | PA - Electric | Alt Home - Utilities and Other | 57 | 11/9/2011 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expenses | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 11/10/2011 | | Bank Statement | N/A | Exhibit 8 | 82 |
| Alternate Living Expenses | Guardian Home | Alt Home - Utilities and Other | 45 | 11/14/2011 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expenses | Naturescape, Inc | Alt Home - Utilities and Other | 253 | 11/15/2011 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expenses | PA - Gas | Alt Home - Utilities and Other | 52 | 11/16/2011 | | Bank Statement | N/A | Exhibit 8 | 91 |
| Alternate Living Expenses | Comcast | Alt Home - Utilities and Other | 168 | 12/2/2011 | | Bank Statement | N/A | Exhibit 8 | 86 |
| Alternate Living Expenses | PA - Sewage | Alt Home - Utilities and Other | 61 | 12/8/2011 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expenses | PA - Water | Alt Home - Utilities and Other | 50 | 12/8/2011 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expenses | Naturescape, Inc | Alt Home - Utilities and Other | 45 | 12/9/2011 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expenses | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 12/12/2011 | | Bank Statement | N/A | Exhibit 8 | 82 |
| Alternate Living Expenses | Guardian Home | Alt Home - Utilities and Other | 45 | 12/14/2011 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expenses | Custom Turf | Alt Home - Utilities and Other | 50 | 12/16/2011 | | Bank Statement | N/A | Exhibit 8 | 87 |
| Alternate Living Expenses | PA - Gas | Alt Home - Utilities and Other | 62 | 12/19/2011 | | Bank Statement | N/A | Exhibit 8 | 91 |
| Alternate Living Expenses | Comcast | Alt Home - Utilities and Other | 167 | 12/27/2011 | | Bank Statement | N/A | Exhibit 8 | 86 |
| Alternate Living Expenses | PA - Electric | Alt Home - Utilities and Other | 65 | 12/28/2011 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expenses | PA - Sewage | Alt Home - Utilities and Other | 39 | 1/6/2012 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expenses | PA - Water | Alt Home - Utilities and Other | 61 | 1/9/2012 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expenses | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 1/10/2012 | | Bank Statement | N/A | Exhibit 8 | 80 |
| Alternate Living Expenses | PA - Electric | Alt Home - Utilities and Other | 116 | 1/10/2012 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expenses | PA - Gas | Alt Home - Utilities and Other | 101 | 1/16/2012 | | Bank Statement | N/A | Exhibit 8 | 91 |
| Alternate Living Expenses | Guardian Home | Alt Home - Utilities and Other | 45 | 1/17/2012 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expenses | PA - Water | Alt Home - Utilities and Other | 24 | 1/17/2012 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expenses | Comcast | Alt Home - Utilities and Other | 92 | 1/25/2012 | | Bank Statement | N/A | Exhibit 8 | 86 |
| Alternate Living Expenses | PA - Water | Alt Home - Utilities and Other | 57 | 2/6/2012 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expenses | PA - Sewage | Alt Home - Utilities and Other | 60 | 2/7/2012 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expenses | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 2/10/2012 | | Bank Statement | N/A | Exhibit 8 | 80 |
| Alternate Living Expenses | PA - Gas | Alt Home - Utilities and Other | 123 | 2/14/2012 | | Bank Statement | N/A | Exhibit 8 | 91 |
| Alternate Living Expenses | Guardian Home | Alt Home - Utilities and Other | 45 | 2/14/2012 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expenses | PA - Electric | Alt Home - Utilities and Other | 20 | 2/15/2012 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expenses | Comcast | Alt Home - Utilities and Other | 147 | 2/27/2012 | | Bank Statement | N/A | Exhibit 8 | 86 |
| Alternate Living Expenses | PA - Electric | Alt Home - Utilities and Other | 18 | 3/2/2012 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expenses | PA - Sewage | Alt Home - Utilities and Other | 51 | 3/7/2012 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expenses | PA - Water | Alt Home - Utilities and Other | 57 | 3/8/2012 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expenses | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 3/12/2012 | | Bank Statement | N/A | Exhibit 8 | 80 |
| Alternate Living Expenses | Guardian Home | Alt Home - Utilities and Other | 45 | 3/14/2012 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expenses | PA - Gas | Alt Home - Utilities and Other | 111 | 3/16/2012 | | Bank Statement | N/A | Exhibit 8 | 91 |
| Alternate Living Expenses | PA - Electric | Alt Home - Utilities and Other | 33 | 3/22/2012 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expenses | PA - Sewage | Alt Home - Utilities and Other | 51 | 4/6/2012 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expenses | PA - Water | Alt Home - Utilities and Other | 24 | 4/9/2012 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expenses | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 4/10/2012 | | Bank Statement | N/A | Exhibit 8 | 80 |
| Alternate Living Expenses | PA - Gas | Alt Home - Utilities and Other | 41 | 4/13/2012 | | Bank Statement | N/A | Exhibit 8 | 91 |
| Alternate Living Expenses | Guardian Home | Alt Home - Utilities and Other | 45 | 4/16/2012 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expenses | Custom Turf | Alt Home - Utilities and Other | 50 | 4/20/2012 | | Bank Statement | N/A | Exhibit 8 | 87 |

Exhibit 7.1 (Revised)
Damage Claims Detail - Candace Gody

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|------|--------|-------------|--------|------|--------------|----------------|-------|------------------|--------------|
| Alternate Living Expenses | Naturescape, Inc | Alt Home - Utilities and Other | 144 | 4/23/2012 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expenses | PA - Electric | Alt Home - Utilities and Other | 25 | 5/4/2012 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expenses | PA - Sewage | Alt Home - Utilities and Other | 42 | 5/7/2012 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expenses | Custom Turf | Alt Home - Utilities and Other | 99 | 5/9/2012 | | Bank Statement | N/A | Exhibit 8 | 87 |
| Alternate Living Expenses | PA - Water | Alt Home - Utilities and Other | 28 | 5/9/2012 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expenses | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 5/10/2012 | | Bank Statement | N/A | Exhibit 8 | 80 |
| Alternate Living Expenses | Guardian Home | Alt Home - Utilities and Other | 45 | 5/14/2012 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expenses | PA - Trash | Alt Home - Utilities and Other | 123 | 5/15/2012 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expenses | PA - Gas | Alt Home - Utilities and Other | 59 | 5/16/2012 | | Bank Statement | N/A | Exhibit 8 | 91 |
| Alternate Living Expenses | ERNS Cutting Edg | Alt Home - Utilities and Other | 225 | 5/18/2012 | | Bank Statement | N/A | Exhibit 8 | 87 |
| Alternate Living Expenses | Custom Turf | Alt Home - Utilities and Other | 90 | 5/22/2012 | | Bank Statement | N/A | Exhibit 8 | 87 |
| Alternate Living Expenses | PA - Sewage | Alt Home - Utilities and Other | 42 | 6/6/2012 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expenses | PA - Water | Alt Home - Utilities and Other | 48 | 6/7/2012 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expenses | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 6/11/2012 | | Bank Statement | N/A | Exhibit 8 | 80 |
| Alternate Living Expenses | Comcast | Alt Home - Utilities and Other | 33 | 6/13/2012 | | Bank Statement | N/A | Exhibit 8 | 86 |
| Alternate Living Expenses | Guardian Home | Alt Home - Utilities and Other | 45 | 6/14/2012 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expenses | PA - Electric | Alt Home - Utilities and Other | 17 | 6/14/2012 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expenses | Custom Turf | Alt Home - Utilities and Other | 159 | 6/22/2012 | | Bank Statement | N/A | Exhibit 8 | 87 |
| Alternate Living Expenses | ERNS Cutting Edg | Alt Home - Utilities and Other | 180 | 6/22/2012 | | Bank Statement | N/A | Exhibit 8 | 87 |
| Alternate Living Expenses | PA - Electric | Alt Home - Utilities and Other | 23 | 6/25/2012 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expenses | PA - Sewage | Alt Home - Utilities and Other | 42 | 7/6/2012 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expenses | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 7/10/2012 | | Bank Statement | N/A | Exhibit 8 | 80 |
| Alternate Living Expenses | Comcast | Alt Home - Utilities and Other | 274 | 7/10/2012 | | Bank Statement | N/A | Exhibit 8 | 86 |
| Alternate Living Expenses | ERNS Cutting Edg | Alt Home - Utilities and Other | 135 | 7/10/2012 | | Bank Statement | N/A | Exhibit 8 | 87 |
| Alternate Living Expenses | PA - Water | Alt Home - Utilities and Other | 284 | 7/12/2012 | | Bank Statement | N/A | Exhibit 8 | 90 |
| Alternate Living Expenses | Guardian Home | Alt Home - Utilities and Other | 45 | 7/16/2012 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expenses | Custom Turf | Alt Home - Utilities and Other | 90 | 7/25/2012 | | Bank Statement | N/A | Exhibit 8 | 87 |
| Alternate Living Expenses | PA - Sewage | Alt Home - Utilities and Other | 256 | 8/6/2012 | | Bank Statement | N/A | Exhibit 8 | 89 |
| Alternate Living Expenses | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 8/10/2012 | | Bank Statement | N/A | Exhibit 8 | 80 |
| Alternate Living Expenses | ERNS Cutting Edg | Alt Home - Utilities and Other | 180 | 8/10/2012 | | Bank Statement | N/A | Exhibit 8 | 87 |
| Alternate Living Expenses | Guardian Home | Alt Home - Utilities and Other | 45 | 8/14/2012 | | Bank Statement | N/A | Exhibit 8 | 88 |
| Alternate Living Expenses | Custom Turf | Alt Home - Utilities and Other | 99 | 8/17/2012 | | Bank Statement | N/A | Exhibit 8 | 87 |
| Alternate Living Expenses | Bank Mortgage - Alt Home | Elizabeth Home Mortgage Payments | 1,270 | 9/10/2012 | | Bank Statement | N/A | Exhibit 8 | 80 |
| Alternate Living Expenses | ERNS Cutting Edg | Alt Home - Utilities and Other | 180 | 9/10/2012 | | Bank Statement | N/A | Exhibit 8 | 87 |
| Alternate Living Expenses | Guardian Home | Alt Home - Utilities and Other | 45 | 9/14/2012 | | Bank Statement | N/A | Exhibit 8 | 88 |
| **Alternate Living Expense Total** | | | **$ 55,180** | | | | | | |
| Personal Property Damage Expense | Wiegold & Sons, Inc. | A/C Repair | $ 209 | 7/27/2007 | | Invoice | N/A | Exhibit 6 | 1 |
| Personal Property Damage Expense | Best Buy | Wine Cooler - Warranty | - * | 8/4/2008 | | Receipt | N/A | Exhibit 8 | 50 |
| Personal Property Damage Expense | Best Buy | Wine Cooler | 416 * | 8/4/2008 | | Receipt | N/A | Exhibit 8 | 50 |
| Personal Property Damage Expense | Wiegold & Sons, Inc. | A/C Repair | 169 | 8/5/2008 | | Invoice | N/A | Exhibit 6 | 3 |
| Personal Property Damage Expense | Wiegold & Sons, Inc. | A/C Repair | 107 | 12/18/2008 | | Invoice | N/A | Exhibit 6 | 2 |
| Personal Property Damage Expense | Wiegold & Sons, Inc. | A/C Repair | 268 | 5/26/2009 | | Invoice | N/A | Exhibit 6 | 4 |
| Personal Property Damage Expense | Staples | Copies of Inspection Reports | 33 | 8/15/2009 | | Receipt | N/A | Exhibit 5 | 2 |
| Personal Property Damage Expense | Lowe's | Idylis Air Purifier | 246 | 10/3/2009 | | Receipt | N/A | Exhibit 5 | 2 |
| Personal Property Damage Expense | Home Depot | Retractable Screen Doors | 129 | 10/26/2009 | | Receipt | N/A | Exhibit 5 | 2-Jan |
| Personal Property Damage Expense | Certified Heating & Cooling | HVAC Service Order | 375 | 3/17/2010 | | Invoice | N/A | Exhibit 6 | 7/8 |
| Personal Property Damage Expense | Walgreen's | Personal Grooming Items | 21 | 6/5/2010 | | Receipt | N/A | Exhibit 5 | 3 |
| Personal Property Damage Expense | Walgreen's | Hair Dryer Replacement | 15 | 7/14/2010 | X | Receipt | N/A | Exhibit 5 | 3 |
| Personal Property Damage Expense | Levin Furniture | Alt Home - Furniture | 5,708 | 7/16/2010 | | Invoice | N/A | Exhibit 8 | 40 |
| Personal Property Damage Expense | Levin Furniture | Alt Home - Furniture | 626 | 7/16/2010 | | Invoice | N/A | Exhibit 8 | 39 |
| Personal Property Damage Expense | Old Allegheny Shoppe | Alt Home - Furniture | 3,818 | 7/17/2010 | | Invoice | N/A | Exhibit 8 | 35 |
| Personal Property Damage Expense | Levin Furniture | Alt Home - Furniture | 180 | 8/3/2010 | | Invoice | N/A | Exhibit 8 | 38 |
| Personal Property Damage Expense | Carolina Accents | Alt Home - Furniture | 507 | 8/12/2010 | | Invoice | N/A | Exhibit 8 | 37 |
| Personal Property Damage Expense | Certified Heating & Cooling | HVAC Service Order | 92 | 3/8/2011 | | Invoice | N/A | Exhibit 6 | 5 |
| Personal Property Damage Expense | Certified Heating & Cooling | HVAC Service Order | 375 | 3/16/2011 | | Invoice | N/A | Exhibit 6 | 6/11 |

Exhibit 7.1 (Revised)
Damage Claims Detail - Candace Gody

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Personal Property Damage Expense | Macy's | Pillow Cases? | 45 | 5/12/2012 | | Receipt | N/A | Exhibit 14 | 45 |
| Personal Property Damage Expense | Baer's Furniture | Remediation - Other | 2,872 | 5/24/2012 | | Invoice | N/A | Exhibit 14 | 38/39 |
| Personal Property Damage Expense | City Mattress | Mattress Purchase | 840 | 5/29/2012 | | Invoice | N/A | Exhibit 14 | 48 |
| Personal Property Damage Expense | City Mattress | Bedframe Purchase | 243 | 6/20/2012 | | Invoice | N/A | Exhibit 14 | 46 |
| Personal Property Damage Expense | Baer's Furniture | Remediation - Other | 507 | 9/30/2012 | X | Invoice | N/A | Exhibit 14 | 36/37 |
| **Personal Property Damage Expense Total** | | | **$ 17,799** | | | | | | |

7.A
Documents and Other Information Considered - Anthony & Candace Gody

*Chinese Drywall Litigation Involving Priority Claimants*

*Bate Stamp (if applicable)*

| No. | Claimant | General Description | First Page | Last Page |
|-----|----------|---------------------|------------|-----------|
| **A. Pleadings and Other Legal Documents:** | | | | |
| 1 | All | Trial Plan for Property Damage Claims and Scheduling Order dated November 16, 2018 | | |
| 2 | Gody | Priority Claimant Candace Gody Answers to Interrogatories, dated November 30, 2018 | | |
| 3 | Gody | Priority Claimant Candace Gody Answers to Defendant's Second Set of Interrogatories, dated November 30, 2018 | | |
| 4 | Gody | Candace Gody Fourth Amended Supplemental Profile Plaintiff Profile Form, dated December 11, 2018 | | |
| 5 | Gody | Priority Claimant Candace Gody Second Amended Answers to Defendants' Second Set of Interrogatories, dated December 11, 2018 | | |
| **B. Depositions & Corresponding Exhibits:** | | | | |
| 1 | Gody | Deposition Transcript of Candace Gody, dated December 12, 2018 | | |
| 2 | Gody | Acknowledgment of Deponent Candace Gody, dated January 3, 2019 | | |
| 3 | Gody | Errata Sheet Candace Gody, dated January 3, 2019 | | |
| 4 | Gody | Deposition Exhibit 01 - Lee County Property Appraiser - Property Data | | |
| 5 | Gody | Deposition Exhibit 02 - Plaintiff Profile Form - Residential Properties | GodyA00001 | GodyA00026 |
| 6 | Gody | Deposition Exhibit 03 - Kross Inspectors - Inspection Report | | |
| 7 | Gody | Deposition Exhibit 04 - Priority Claimant Candace Gody's Answers to Interrogatories | | |
| 8 | Gody | Deposition Exhibit 05 - Receipts of Section III - Personal Property | | |
| 9 | Gody | Deposition Exhibit 06 - Invoices - Wiegold & Sons, Inc. and Certified Heating and Cooling | | |
| 10 | Gody | Deposition Exhibit 07 - Fourth Amended Supplemental Plaintiff Profile Form | | |
| 11 | Gody | Deposition Exhibit 08 - Receipts for Alternative Living - Section IV | | |
| 12 | Gody | Deposition Exhibit 09 - Photographs | | |
| 13 | Gody | Deposition Exhibit 10 - April 5, 2011 Polkow Construction, Inc. Chinese Drywall Remediation Proposal | | |
| 14 | Gody | Deposition Exhibit 11 - June 28, 2011 Polkow Construction, Inc. Chinese Drywall Remediation Proposal | | |
| 15 | Gody | Deposition Exhibit 12 - Wells Fargo Checks and Statements | | |
| 16 | Gody | Deposition Exhibit 13 - City of Fort Myers - Letter of Completion | | |
| 17 | Gody | Deposition Exhibit 14 - Payments Made for Remediation at 10842 Tiberio Drive, Fort Myers, Florida 33913 | | |
| 18 | Gody | Deposition Exhibit 15 - Excel Spreadsheet - Expenses | | |
| 19 | Gody | Deposition Exhibit 16 - Intuitive Environmental Solutions, LLC Invoice | | |
| 20 | Gody | Deposition Exhibit 17 - July 8, 2011 Intuitive Environmental Solutions, LLC Report | | |
| 21 | Gody | Deposition Exhibit 18 - August 31, 2011 Intuitive Environmental Solutions, LLC Report | | |
| 22 | Gody | Deposition Exhibit 19 - Supplemental Plaintiff Profile Form | | |
| 23 | Gody | Deposition Exhibit 20 - First Amended Supplemental Plaintiff Profile Form | | |
| **C. Supporting Documentation** | | | | |
| 1 | Gody | Anthony and Candace Out of Pocket Damages Summary Provided by Counsel | | |
| 2 | Gody | Doc ID. 120231 - Gody Mortgage, Utilities and General Expenses for ALE | | |
| 3 | Gody | Doc ID. 120244 - Gody Receipts for personal items and inspections reports | | |

7.A
Documents and Other Information Considered - Anthony & Candace Gody

*Chinese Drywall Litigation Involving Priority Claimants*

*Bate Stamp (if applicable)*

| No. | Claimant | General Description | First Page | Last Page |
|-----|----------|---------------------|-----------|-----------|
| 4 | Gody | Doc ID. 350983 - Gody List of payments for remediation | | |
| 5 | Gody | Doc ID. 365696 - Gody HVAC repairs by Weigold & Sons and Certified Heating & Cooling | | |
| 6 | Gody | Doc ID. 365702 - Gody Wells Fargo loss of interest statements | | |
| 7 | Gody | Doc ID. 365760 - Gody Wells Fargo statements confirming funds for remediation | | |
| 8 | Gody | Doc ID. 366110 - Gody Intuitive Environmental Solutions Invoice | | |
| 9 | Gody | Doc ID. 366111 - Gody Tax Preparation cost due to remediation repairs | | |
| 10 | Gody | Doc ID. 366155 - Gody Polkow Construction remediation proposal | | |
| 11 | Gody | Doc ID. 366156 - Gody payments made to Polkow Construction and receipts for mediation | | |
| 12 | Gody | Doc ID. 366157 - Gody Letter of remediation completion from City of Ft. Myers | | |
| 13 | Gody | Doc ID. 367571 - HUD Settlement Statement for Purchase of PA land | | |
| 14 | Gody | Doc ID. 367572 - HUD Settlement Statement for Sale of PA property | | |
| 15 | Gody | Doc ID. 367573 - Wells Fargo Investment fund balances prior to remediation | | |
| 16 | Gody | Doc ID. 367574 - Wells Fargo Investment fund balances post remediation | | |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-22408-Civ-COOKE

EDUARDO AND CARMEN AMORIN, *et al.*,
individually and on behalf of others similarly
situated,

        Plaintiffs,

vs.

TAISHAN GYPSUM CO., LTD., f/k/a
SHANDONG TIASHE DONGXIN CO. LTD.,
*et al.*,

        Defendants.

_____

# Exhibit 8 (Revised)

### Calculations of Damages for Priority Claimants

# David & Diane Griffin

EXHIBIT TO THE EXPERT WITNESS REPORT OF:
MICHAEL P. ELKIN, CPA/CFF/ABV, CFE
IN THE PRIORITY CLAIMANT TRIAL

April 26, 2019



Exhibit 8 (Revised)
Data and Damage Summary - David & Diane Griffin

*Chinese Drywall Litigation Involving Priority Claimants*

| Data: | | *Reference / Notes* |
|---|---|---|
| Address of Affected property | 9801 Cobblestone Lakes Court | *SPPF* |
| | Boynton Beach, FL 33472 | *SPPF* |
| Date Affected property acquired | October 5, 2006 | *SPPF* |
| Date Chinese drywall installed | N/A | *SPPF* |
| Date moved into Affected property | October 5, 2006 | *SPPF* |
| Date first aware of Chinese drywall | May-10 | *SPPF* |
| | | |
| Move out date to alternate living | N/A | *ROG 1, #2* |
| Date returned to Affected property | N/A | *ROG 1, #2* |
| End date for alternate living expenses | July 27, 2010 | *ROG 1, #2* |
| | | |
| Still own property? | N | *SPPF* |
| Bankruptcy caused by damage? | N | *SPPF* |
| Foreclosure or short sale? | Y | *SPPF* |
| Affected property sold? | Y | *SPPF* |
| Sale date | July 27, 2010 | *SPPF* |
| Type of sale | Short Sale | *SPPF* |
| | | |
| Remediation status | None | *SPPF* |
| Remediation period | N/A | *SPPF* |

| Damage Summary: | | |
|---|---|---|
| Full or Partial Out-of-Pocket Remediation Expenses | $ - | |
| | | |
| Other Damages | | |
| Alternate Living Expenses | $ - | |
| Personal Property Damage Expense | - | |
| Additional Damages | 38,500 | *Exh. 8.1* |
| | $ 38,500 | |
| | | |
| Lost Equity | $ 104,298 | *Exh. 8.2 (Revised)* |
| | | |
| Diminution in Value | TBD | |
| | | |
| Loss of Use and Enjoyment | TBD | |
| | | |
| Punitive Damages | TBD | |

Exhibit 8.1
Damage Claims Detail - David & Diane Griffin

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|------|--------|-------------|--------|------|--------------|----------------|-------|------------------|--------------|
| Additional Damages - Lost Rent | N/A | Lost Rental Income at Affected Property | $ 5,500 | 1/1/2010 | X | Claimant | GRIFFIN, D (OLF) - 000001-62 | 41972 | 1 & 62 |
| Additional Damages - Lost Rent | N/A | Lost Rental Income at Affected Property | 5,500 | 2/1/2010 | X | Claimant | GRIFFIN, D (OLF) - 000001-62 | 41972 | 1 & 62 |
| Additional Damages - Lost Rent | N/A | Lost Rental Income at Affected Property | 5,500 | 3/1/2010 | X | Claimant | GRIFFIN, D (OLF) - 000001-62 | 41972 | 1 & 62 |
| Additional Damages - Lost Rent | N/A | Lost Rental Income at Affected Property | 5,500 | 4/1/2010 | X | Claimant | GRIFFIN, D (OLF) - 000001-62 | 41972 | 1 & 62 |
| Additional Damages - Lost Rent | N/A | Lost Rental Income at Affected Property | 5,500 | 5/1/2010 | X | Claimant | GRIFFIN, D (OLF) - 000001-62 | 41972 | 1 & 62 |
| Additional Damages - Lost Rent | N/A | Lost Rental Income at Affected Property | 5,500 | 6/1/2010 | X | Claimant | GRIFFIN, D (OLF) - 000001-62 | 41972 | 1 & 62 |
| Additional Damages - Lost Rent | N/A | Lost Rental Income at Affected Property | 5,500 | 7/1/2010 | X | Claimant | GRIFFIN, D (OLF) - 000001-62 | 41972 | 1 & 62 |
| Additional Damages - Lost Rent Total | | | $ 38,500 | | | | | | |

Exhibit 8.2 (Revised)
Lost Equity - David & Diane Griffin

*Chinese Drywall Litigation Involving Priority Claimants*

| | | | | Source Document |
|---|---|---|---|---|
| Initial Acquisition | | | | |
| Purchase Price | | $ | 731,544 | HUD Statement dated 10/5/06 DGRIFFIN - 000167 - Exh. 1, Pg. 47 |
| Settlement Charges | | | 29,109 | HUD Statement dated 10/5/06 DGRIFFIN - 000167 - Exh. 1, Pg. 47 |
| Total Gross Amount Due from Claimant | | $ | 760,653 | |
| | | | | |
| Less | | | | |
| Deposit Made by Claimant | | $ | (58,840) | HUD Statement dated 10/5/06 DGRIFFIN - 000167 - Exh. 1, Pg. 47 |
| Options Deposit | | | (25,738) | HUD Statement dated 10/5/06 DGRIFFIN - 000167 - Exh. 1, Pg. 47 |
| Borrowings by Claimant | | | (655,617) | HUD Statement dated 10/5/06 DGRIFFIN - 000167 - Exh. 1, Pg. 47 |
| Credits | | | (1,123) | HUD Statement dated 10/5/06 DGRIFFIN - 000167 - Exh. 1, Pg. 47 |
| Amount Due from Claimant at Close | | $ | 19,335 | |
| | | | | |
| Funds Paid by Claimant | | | | |
| Deposit Paid with Contract | | $ | 58,840 | HUD Statement dated 10/5/06 DGRIFFIN - 000167 - Exh. 1, Pg. 47 |
| Options Deposit | | | 25,738 | HUD Statement dated 10/5/06 DGRIFFIN - 000167 - Exh. 1, Pg. 47 |
| Cash Paid at Closing | | | 19,335 | HUD Statement dated 10/5/06 DGRIFFIN - 000167 - Exh. 1, Pg. 47 |
| Adjustments from Closing Statement at Purchase: | | | | |
| Line 105. Default Interest | | | (361) * | HUD Statement dated 10/5/06 DGRIFFIN - 000167 - Exh. 1, Pg. 47 |
| Line 110. Water Meter | | | (213) * | HUD Statement dated 10/5/06 DGRIFFIN - 000167 - Exh. 1, Pg. 47 |
| Line 111. Electric Meter | | | (110) * | HUD Statement dated 10/5/06 DGRIFFIN - 000167 - Exh. 1, Pg. 47 |
| Line 112. Solid Waster | | | (99) * | HUD Statement dated 10/5/06 DGRIFFIN - 000167 - Exh. 1, Pg. 47 |
| Line 211. County Taxes | | | 622 * | HUD Statement dated 10/5/06 DGRIFFIN - 000167 - Exh. 1, Pg. 47 |
| Line 901. Interest | | | (3,074) * | HUD Statement dated 10/5/06 DGRIFFIN - 000168 - Exh. 1, Pg. 48 |
| Line 1001. Hazard Insurance Deposited with the Lender | | | (1,142) * | HUD Statement dated 10/5/06 DGRIFFIN - 000168 - Exh. 1, Pg. 48 |
| Line 1004. County Property Taxes Deposited with the Lender | | | (1,858) * | HUD Statement dated 10/5/06 DGRIFFIN - 000168 - Exh. 1, Pg. 48 |
| Line 1009. Aggregate Accounting Adjustment | | | 381 * | HUD Statement dated 10/5/06 DGRIFFIN - 000168 - Exh. 1, Pg. 48 |
| Line 1303. Community Association Fees | | | (181) * | HUD Statement dated 10/5/06 DGRIFFIN - 000168 - Exh. 1, Pg. 48 |
| Line 1304. Community Association Fees | | | (200) * | HUD Statement dated 10/5/06 DGRIFFIN - 000168 - Exh. 1, Pg. 48 |
| Line 1308. County Property Tax (estimate) | | | (2,500) * | HUD Statement dated 10/5/06 DGRIFFIN - 000168 - Exh. 1, Pg. 48 |
| Adjusted Payments for Initial Purchase | a | $ | 95,177 | |
| | | | | |
| 1st Mortgage | | | | |
| Mortgage Beginning Balance | | $ | 585,235 | HUD Statement dated 10/5/06 DGRIFFIN - 000167 - Exh. 1, Pg. 47 |
| Mortgage Balance at Payoff[1] | | | 585,235 | |
| Principal Payments Made | b | $ | - | |
| | | | | |
| 2nd Mortgage | | | | |
| Mortgage Beginning Balance | | $ | 70,382 | HUD Statement dated 10/5/06 DGRIFFIN - 000167 - Exh. 1, Pg. 47 |
| Mortgage Balance at Payoff[1] | | | 70,382 | |
| Principal Payments Made | c | $ | - | |
| | | | | |
| Seller Paid Closing Costs on Short Sale[2] | d | $ | 9,122 | ** Aurora Loan Services DGRIFFIN - 000183 - Exh. 13 |
| | | | | |
| Total Lost Equity | = a + b + c + d | $ | 104,298 | |

Notes:
[1] This was a short sale. The HUD (Exh. 13) includes loan payoff amounts totaling $234,986.46 ($212,586.46, $3,892 and $18,508)
However, KR was not able to verify the Principal Balance at the time of Payoff for both the 1st and 2nd Mortgages.
Therefore, KR has not included any principal payments on the loan. Should information that supports any principal payment
be provided, the Lost Equity is subject to change

[2] The HUD (Exh. 13) indicates the amount due from the Claimant was $19,239. However, the
Closing Agent Letter dated July 13, 2010 states "seller paid closing costs not to exceed $9,121.54"
No adjustment for closing statement allocations for county taxes or maintenance fees due required

8.A
Documents and Other Information Considered - David & Diane Griffin

*Chinese Drywall Litigation Involving Priority Claimants*

| | | | Bate Stamp *(if applicable)* | |
| No. | Claimant | General Description | First Page | Last Page |
|---|---|---|---|---|
| **A. Pleadings and Other Legal Documents:** | | | | |
| 1 | All | Trial Plan for Property Damage Claims and Scheduling Order dated November 16, 2018 | | |
| 2 | Griffin | Claimant David Griffin Answers to Interrogatories - Amended, dated December 4, 2018 | | |
| 3 | Griffin | Claimant Diane Griffin Answers to Defendant's Second Set of Interrogatories, dated December 4, 2018 | | |
| 4 | Griffin | Claimant Diane Griffin Supplemental Plaintiff Profile Form | | |
| **B. Depositions & Corresponding Exhibits:** | | | | |
| 1 | Griffin | Deposition Transcript of David Griffin, dated January 8, 2019 | | |
| 2 | Griffin | Deposition Transcript of Diane Griffin, dated January 8, 2019 | | |
| 3 | Griffin | Deposition Exhibit 01 - Letter dated 2/3/2005, Purchase and Sale Agreement | DGRIFFIN000121 | DGRIFFIN000176 |
| 4 | Griffin | Deposition Exhibit 02 - Mortgage | DGRIFFIN000602 | DGRIFFIN000632 |
| 5 | Griffin | Deposition Exhibit 03 - Mortgage | DGRIFFIN000633 | DGRIFFIN000646 |
| 6 | Griffin | Deposition Exhibit 04 - Special Warranty Deed - Book 209481/Page 1426 through Page 1431 | | |
| 7 | Griffin | Deposition Exhibit 05 - Aurora Loan Services Account Statement | DGRIFFIN000119 | DGRIFFIN000120 |
| 8 | Griffin | Deposition Exhibit 06 - Plaintiff Profile Form - Residential Properties | DGRIFFIN000001 | DGRIFFIN000003 |
| 9 | Griffin | Deposition Exhibit 07 - Inspection Report dated 5/11/2010 | DGRIFFIN000199 | DGRIFFIN000200 |
| 10 | Griffin | Deposition Exhibit 08 - Photographs | DGRIFFIN000201 | DGRIFFIN000601 |
| 11 | Griffin | Deposition Exhibit 09 - Palm Beach County Property Appraiser Online Search Information | | |
| 12 | Griffin | Deposition Exhibit 10 - Claimants David and Diane Griffin's Amended Answers to Defendants Interrogatories | | |
| 13 | Griffin | Deposition Exhibit 11 - Supplemental Plaintiff Profile Form - 113 Residential and Commercial Properties (Non-Knauf) | | |
| 14 | Griffin | Deposition Exhibit 12 - Warranty Deed Book 23976/Page 1784 through 1786 | | |
| 15 | Griffin | Deposition Exhibit 13 - Settlement Statement DGRIFFIN - 000179 through 000197 | DGRIFFIN000179 | DGRIFFIN000197 |
| 16 | Griffin | Deposition Exhibit 14 - Chinese Drywall Settlement Program - Foreclosure and Short Sale Claim Form | | |
| 17 | Griffin | Deposition Exhibit 15 - Plaintiff Profile Form | Griffin, D 0001 | Griffin, D 0006 |
| **C. Supporting Documentation** | | | | |
| 1 | Griffin | Doc ID. 41972 - Griffin Mortgage Documents | | |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-22408-Civ-COOKE

EDUARDO AND CARMEN AMORIN, *et al.*,
individually and on behalf of others similarly
situated,

      Plaintiffs,

vs.

TAISHAN GYPSUM CO., LTD., f/k/a
SHANDONG TIASHE DONGXIN CO. LTD.,
*et al.*,

      Defendants.

_____

# Exhibit 9 (Revised)

**Calculations of Damages for Priority Claimants**

# John & Bertha Hernandez

EXHIBIT TO THE EXPERT WITNESS REPORT OF:
MICHAEL P. ELKIN, CPA/CFF/ABV, CFE
IN THE PRIORITY CLAIMANT TRIAL

April 26, 2019



Exhibit 9
Data and Damage Summary - John & Bertha Hernandez

*Chinese Drywall Litigation Involving Priority Claimants*

| Data: | | *Reference / Notes* |
|---|---|---|
| Address of Affected property | 3516 N. Perry Avenue | *SPPF* |
| | Tampa, FL 33603 | *SPPF* |
| Date Affected property acquired | October 1, 2007 | *SPPF* |
| Date Chinese drywall installed | March-07 | *SPPF* |
| Date moved into Affected property | October 1, 2007 | *SPPF* |
| Date first aware of Chinese drywall | January-10 | *SPPF* |
| | | |
| Move out date to alternate living | July 1, 2013 | *ROG 1, #2* |
| Date returned to Affected property | May 16, 2015 | *ROG 1, #2* |
| End date for alternate living expenses | May 16, 2015 | *ROG 1, #2* |
| | | |
| Still own property? | Y | *SPPF* |
| Bankruptcy caused by damage? | N | *SPPF* |
| Foreclosure or short sale? | N | *SPPF* |
| Affected property sold? | N | *SPPF* |
| Sale date | N/A | *SPPF* |
| Type of sale | N/A | *SPPF* |
| | | |
| Remediation status | Completed | *SPPF* |
| Remediation period | June 2013 - July 2015 | *Payments* |

| Damage Summary: | | |
|---|---|---|
| Full or Partial Out-of-Pocket Remediation Expenses | $ 381,784 | *Exh. 9.1* |
| | | |
| Other Damages | | |
| Alternate Living Expenses | $ 41,802 | *Exh. 9.1* |
| Personal Property Damage Expense | 3,454 | *Exh. 9.1* |
| Additional Damages | - | |
| | $ 45,256 | |
| | | |
| Lost Equity | TBD | |
| | | |
| Diminution in Value | TBD | |
| | | |
| Loss of Use and Enjoyment | TBD | |
| | | |
| Punitive Damages | TBD | |

Exhibit 9.1
Damage Claims Detail - John & Bertha Hernandez

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Remediation | Sierra Construction & Restoration, Inc. | Plumbing, HVAC, Electrical Rough Inspections, Cabinets | $ 80,000 | 6/19/2013 | | Invoice & Check | N/A | 366501 | 1 |
| Remediation | Sierra Construction & Restoration, Inc. | Plumbing, HVAC, Electrical Rough Inspections, Cabinets | 80,000 | 12/20/2013 | | Invoice & Check | N/A | 366501 | 2 |
| Remediation | Sierra Construction & Restoration, Inc. | Plumbing, HVAC, Electrical Rough Inspections, Cabinets | 53,101 | 7/2/2014 | | Invoice & Check | N/A | 366501 | 3 |
| Remediation | Custom Distributors | Purchase Appliances | 11,543 | 8/27/2014 | | Invoice | N/A | 366488 | All |
| Remediation | California Closets | Pantry | 4,660 | 11/4/2014 | | Invoice & CC Stmt | N/A | 366486 | 2 |
| Remediation | Ferguson Faucets | Bathroom Fixtures replaced in remediation | 584 | 12/5/2014 | | Credit Card Statement | N/A | 366497 | 1 |
| Remediation | California Closets | Pantry | 4,660 | 12/16/2014 | | Invoice & CC Stmt | N/A | 366486 | 3 |
| Remediation | Sierra Construction & Restoration, Inc. | Plumbing, HVAC, Electrical Rough Inspections, Cabinets | 90,705 | 12/30/2014 | | Invoice & Check | N/A | 366501 | 4 |
| Remediation | California Closets | Pantry | 1,860 | 1/29/2015 | | Invoice & CC Stmt | N/A | 366486 | 5 |
| Remediation | Tampa Tile | Kitchen Tile | 514 | 2/9/2015 | | Credit Card Statement | N/A | 366502 | 3 |
| Remediation | Tampa Tile | Kitchen Tile | 274 | 2/20/2015 | | Credit Card Statement | N/A | 366502 | 3 |
| Remediation | California Closets | Pantry | 1,280 | 3/17/2015 | | Invoice & CC Stmt | N/A | 366486 | 5 |
| Remediation | Capri Pro Painters | Repaint Interior | 4,757 | 5/14/2015 | | Invoice | Hernandez Dep.0000149 | Exhibit 10 | 4 |
| Remediation | Borter Glass Co., Inc | Furnished and Installed Master Bath Vanity Wall | 714 | 6/20/2015 | | Invoice | Hernandez Dep.0000150 | Exhibit 10 | 5 |
| Remediation | Borter Glass Co., Inc | Furnish Shelves for Kitchen Cabinets | 725 | 6/20/2015 | | Invoice | Hernandez Dep.0000151 | Exhibit 10 | 6 |
| Remediation | Borter Glass Co., Inc | Furnished and Installed Powder Bath Vanity Wall | 214 | 6/20/2015 | | Invoice | Hernandez Dep.0000152 | Exhibit 10 | 7 |
| Remediation | Sierra Construction & Restoration, Inc. | Plumbing, HVAC, Electrical Rough Inspections, Cabinets | 30,000 | 7/29/2015 | X | Invoice | N/A | 366501 | 6 |
| Remediation | Sierra Construction & Restoration, Inc. | Plumbing, HVAC, Electrical Rough Inspections, Cabinets | 16,194 | 7/31/2015 | | Invoice & Check | N/A | 366501 | 5 |
| **Remediation Total** | | | **$ 381,784** | | | | | | |
| Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | $ 552 | 6/1/2013 | | Lease Agreement | Hernandez Dep.0000240 | Exhibit 14 | 1 |
| Alternate Living Expenses | Florida Executive Property Services | Application Fee | 150 | 6/13/2013 | | Receipt | 000336 | Exhibit 16 | 4 |
| Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,400 | 7/2/2013 | | Check | N/A | 366500 | 1 |
| Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,400 | 7/30/2013 | | Check | N/A | 366500 | 2 |
| Alternate Living Expenses | Pro Carpet | Clean Carpet in Rental | 95 | 8/13/2013 | | Invoice | Hernandez Dep.0000246 | Exhibit 14 | 7 |
| Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 260 | 8/28/2013 | | Invoice | Hernandez Dep.0000239 | Exhibit 15 | 42 |
| Alternate Living Expenses | Coleman World Group | Moving Expenses - To Rental House | 1,190 | 8/28/2013 | | Invoice | 000341 | Exhibit 16 | 9 |
| Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,400 | 8/30/2013 | | Check | N/A | 366500 | 3 |
| Alternate Living Expenses | City of Tampa | Water Bill | 144 | 9/16/2013 | | Invoice | Hernandez Dep.0000219 | Exhibit 15 | 22 |
| Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 242 | 9/27/2013 | | Invoice | Hernandez Dep.0000238 | Exhibit 15 | 41 |
| Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,400 | 9/30/2013 | | Check | N/A | 366500 | 4 |
| Alternate Living Expenses | City of Tampa | Water Bill | 59 | 10/16/2013 | | Invoice | Hernandez Dep.0000218 | Exhibit 15 | 21 |
| Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 191 | 10/29/2013 | | Invoice | Hernandez Dep.0000237 | Exhibit 15 | 40 |
| Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,400 | 10/30/2013 | | Check | N/A | 366500 | 5 |
| Alternate Living Expenses | City of Tampa | Water Bill | 59 | 11/14/2013 | | Invoice | Hernandez Dep.0000217 | Exhibit 15 | 20 |
| Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 134 | 11/27/2013 | | Invoice | Hernandez Dep.0000236 | Exhibit 15 | 39 |
| Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,400 | 11/30/2013 | | Check | N/A | 366500 | 6 |
| Alternate Living Expenses | City of Tampa | Water Bill | 56 | 12/13/2013 | | Invoice | Hernandez Dep.0000216 | Exhibit 15 | 19 |
| Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,400 | 12/30/2013 | | Check | N/A | 366500 | 7 |
| Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 160 | 12/30/2013 | | Invoice | Hernandez Dep.0000235 | Exhibit 15 | 38 |
| Alternate Living Expenses | City of Tampa | Water Bill | 56 | 1/16/2014 | | Invoice | Hernandez Dep.0000214 | Exhibit 15 | 17 |
| Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 192 | 1/29/2014 | | Invoice | Hernandez Dep.0000234 | Exhibit 15 | 37 |
| Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,400 | 1/30/2014 | | Check | N/A | 366500 | 8 |
| Alternate Living Expenses | City of Tampa | Water Bill | 56 | 2/14/2014 | | Invoice | Hernandez Dep.0000215 | Exhibit 15 | 18 |
| Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,400 | 2/26/2014 | | Check | N/A | 366500 | 9 |
| Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 148 | 2/27/2014 | | Invoice | Hernandez Dep.0000233 | Exhibit 15 | 36 |
| Alternate Living Expenses | City of Tampa | Water Bill | 56 | 3/14/2014 | | Invoice | Hernandez Dep.0000213 | Exhibit 15 | 16 |
| Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 162 | 3/28/2014 | | Invoice | Hernandez Dep.0000232 | Exhibit 15 | 35 |
| Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,400 | 3/31/2014 | | Check | N/A | 366500 | 10 |
| Alternate Living Expenses | City of Tampa | Water Bill | 56 | 4/15/2014 | | Invoice | Hernandez Dep.0000212 | Exhibit 15 | 15 |
| Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,400 | 4/29/2014 | | Check | N/A | 366500 | 11 |
| Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 139 | 4/29/2014 | | Invoice | Hernandez Dep.0000231 | Exhibit 15 | 34 |

Exhibit 9.1
Damage Claims Detail - John & Bertha Hernandez

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Alternate Living Expenses | City of Tampa | Water Bill | 64 | 5/15/2014 | | Invoice | Hernandez Dep.0000211 | Exhibit 15 | 14 |
| Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 197 | 5/29/2014 | | Invoice | Hernandez Dep.0000230 | Exhibit 15 | 33 |
| Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,400 | 6/2/2014 | | Check | N/A | 366500 | 12 |
| Alternate Living Expenses | City of Tampa | Water Bill | 58 | 6/16/2014 | | Invoice | Hernandez Dep.0000210 | Exhibit 15 | 13 |
| Alternate Living Expenses | Florida Executive Property Services | Rent | 1,475 | 6/30/2014 | | Check | 000333 | Exhibit 16 | 1 |
| Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 268 | 6/30/2014 | | Invoice | Hernandez Dep.0000229 | Exhibit 15 | 32 |
| Alternate Living Expenses | City of Tampa | Water Bill | 59 | 7/16/2014 | | Invoice | Hernandez Dep.0000209 | Exhibit 15 | 12 |
| Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 282 | 7/30/2014 | | Invoice | Hernandez Dep.0000228 | Exhibit 15 | 31 |
| Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,475 | 7/31/2014 | | Check | N/A | 366500 | 14 |
| Alternate Living Expenses | City of Tampa | Water Bill | 60 | 8/15/2014 | | Invoice | Hernandez Dep.0000208 | Exhibit 15 | 11 |
| Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 226 | 8/28/2014 | | Invoice | Hernandez Dep.0000227 | Exhibit 15 | 30 |
| Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,475 | 8/29/2014 | | Check | N/A | 366500 | 15 |
| Alternate Living Expenses | City of Tampa | Water Bill | 56 | 9/16/2014 | | Invoice | Hernandez Dep.0000207 | Exhibit 15 | 10 |
| Alternate Living Expenses | Florida Executive Property Services | Rent | 1,247 | 9/29/2014 | | Check | 000334 | Exhibit 16 | 2 |
| Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 224 | 9/29/2014 | x | N/A | Hernandez Dep.0000226 | Exhibit 15 | 29 |
| Alternate Living Expenses | City of Tampa | Water Bill | 57 | 10/15/2014 | | Invoice | Hernandez Dep.0000206 | Exhibit 15 | 9 |
| Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 190 | 10/29/2014 | | Invoice | Hernandez Dep.0000226 | Exhibit 15 | 29 |
| Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,475 | 10/31/2014 | | Check | N/A | 366499 | 1 |
| Alternate Living Expenses | City of Tampa | Water Bill | 60 | 11/14/2014 | | Invoice | Hernandez Dep.0000205 | Exhibit 15 | 8 |
| Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,475 | 11/26/2014 | | Check | N/A | 366499 | 2 |
| Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 157 | 11/28/2014 | | Invoice | Hernandez Dep.0000225 | Exhibit 15 | 28 |
| Alternate Living Expenses | City of Tampa | Water Bill | 60 | 12/15/2014 | | Invoice | Hernandez Dep.0000204 | Exhibit 15 | 7 |
| Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 175 | 12/30/2014 | | Invoice | Hernandez Dep.0000224 | Exhibit 15 | 27 |
| Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,475 | 12/31/2014 | | Check | N/A | 366499 | 3 |
| Alternate Living Expenses | City of Tampa | Water Bill | 65 | 1/16/2015 | | Invoice | Hernandez Dep.0000203 | Exhibit 15 | 6 |
| Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 166 | 1/29/2015 | | Invoice | Hernandez Dep.0000223 | Exhibit 15 | 26 |
| Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,475 | 2/7/2015 | | Check | N/A | 366499 | 4 |
| Alternate Living Expenses | City of Tampa | Water Bill | 57 | 2/13/2015 | | Invoice | Hernandez Dep.0000202 | Exhibit 15 | 5 |
| Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 164 | 2/27/2015 | | Invoice | Hernandez Dep.0000222 | Exhibit 15 | 25 |
| Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 1,475 | 3/7/2015 | | Check | N/A | 366499 | 5 |
| Alternate Living Expenses | City of Tampa | Water Bill | 60 | 3/16/2015 | | Invoice | Hernandez Dep.0000201 | Exhibit 15 | 4 |
| Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 160 | 3/30/2015 | | Invoice | Hernandez Dep.0000221 | Exhibit 15 | 24 |
| Alternate Living Expenses | Florida Executive Property Services | Rent | 1,475 | 4/6/2015 | | Check | 000335 | Exhibit 16 | 3 |
| Alternate Living Expenses | City of Tampa | Water Bill | 57 | 4/15/2015 | | Invoice | Hernandez Dep.0000200 | Exhibit 15 | 3 |
| Alternate Living Expenses | Florida Executive Property Services | Rent Alternative residence | 722 | 5/1/2015 | | Note to Landlord/Depo | Hernandez Dep.0000241 | Exhibit 14 | 113 |
| Alternate Living Expenses | City of Tampa | Water Bill | 57 | 5/15/2015 | | Invoice | Hernandez Dep.0000199 | Exhibit 15 | 2 |
| Alternate Living Expenses | City of Tampa | Water Bill | 35 | 5/19/2015 | | Invoice | Hernandez Dep.0000198 | Exhibit 15 | 1 |
| Alternate Living Expenses | TECO Tampa Electric | Electric Bill | 384 | 5/19/2015 | | Invoice | Hernandez Dep.0000220 | Exhibit 15 | 23 |
| Alternate Living Expenses | Coleman World Group | Moving Expenses - From Rental House | 1,798 | 5/21/2015 | | Invoice | 000338 | Exhibit 16 | 6 |
| Alternate Living Expenses | Florida Executive Property Services | Security Deposit deduction | 405 | 6/9/2015 | | Receipt | Hernandez Dep.0000245 | Exhibit 14 | 6 |
| **Alternate Living Expenses Total** | | | **$ 41,802** | | | | | | |
| Personal Property Damage Expense | Triple H Air Conditioning Inc | Fix A/C | $ 58 | 4/14/2008 | | Invoice | N/A | 365781 | 9 |
| Personal Property Damage Expense | Triple H Air Conditioning Inc | Fix A/C | 1,200 | 7/15/2008 | | Invoice | N/A | 365781 | 8 |
| Personal Property Damage Expense | Triple H Air Conditioning Inc | Fix A/C | 500 | 12/4/2008 | | Invoice | N/A | 365781 | 7 |
| Personal Property Damage Expense | Florida AC Inc | Fix A/C | 90 | 5/27/2009 | | Invoice | N/A | 365781 | 6 |
| Personal Property Damage Expense | Florida AC Inc | Fix A/C | 300 | 8/18/2009 | | Invoice | N/A | 365781 | 4 |
| Personal Property Damage Expense | Triple H Air Conditioning Inc | Fix A/C | 80 | 1/12/2010 | | Invoice | N/A | 365781 | 2 |
| Personal Property Damage Expense | Kenny's A/C | Fix A/C | 743 | 1/18/2010 | | Invoice | N/A | 365781 | 1 |
| Personal Property Damage Expense | Triple H Air Conditioning Inc | Fix A/C | 227 | 9/26/2011 | | Invoice | N/A | 365781 | 3 |
| Personal Property Damage Expense | Aircare Solutions | Repairs to Air Conditioning | 256 | 8/26/2013 | | Invoice | 000341 | Exhibit 16 | 9 |
| **Personal Property Damages Expense Total** | | | **$ 3,454** | | | | | | |

9.A
Documents and Other Information Considered - John & Bertha Hernandez

*Chinese Drywall Litigation Involving Priority Claimants*

| | | | Bate Stamp (if applicable) | |
|---|---|---|---|---|
| No. | Claimant | General Description | First Page | Last Page |

**A. Pleadings and Other Legal Documents:**

| | | | | |
|---|---|---|---|---|
| 1 | All | Judge Cooke's Order, dated November 16, 2018 | | |
| 2 | Hernandez | Plaintiff John Hernandez Answers to Interrogatories, dated November 30, 2018 | | |
| 3 | Hernandez | Plaintiff Bertha Hernandez Answers to Interrogatories, dated November 30, 2018 | | |
| 4 | Hernandez | Plaintiff John Hernandez Supplemental Plaintiff Profile Form - Amended | | |
| 5 | Hernandez | Bertha Hernandez Answers to Interrogatories, dated November 30, 2018 | | |
| 6 | Hernandez | Bertha Hernandez Answers to Defendant's Second Set of Interrogatories, dated December 4, 2018 | | |
| 7 | Hernandez | Bertha Hernandez Answers to Defendant's 1st Request for Production - Amended, dated January 14, 2019 | | |
| 8 | Hernandez | Bertha Hernandez Answers to Defendant's 2nd Request for Production - Amended, dated January 14, 2019 | | |
| 9 | Hernandez | John Hernandez Answers to Defendant's Second Set of Interrogatories, dated December 4, 2018 | | |
| 10 | Hernandez | John Hernandez Answers to Defendant's 1st Request for Production - Amended, dated January 14, 2019 | | |
| 11 | Hernandez | John Hernandez Answers to Interrogatories, dated November 30, 2018 | | |
| 12 | Hernandez | John Hernandez Answers to Defendant's 2nd Request for Production - Amended, dated January 14, 2019 | | |

**B. Depositions & Corresponding Exhibits:**

| | | | | |
|---|---|---|---|---|
| 1 | Hernandez | Deposition Transcript of John Hernandez, dated December 18, 2018 | | |
| 2 | Hernandez | Deposition Transcript of Bertha Hernandez, dated December 18, 2018 | | |
| 3 | Hernandez | Deposition Exhibit 01 - Warranty Deed | | |
| 4 | Hernandez | Deposition Exhibit 02 - US Department of Housing & Urban Development Settlement Statement Dated 4/1/2008 | | |
| 5 | Hernandez | Deposition Exhibit 03 - Annual Escrow Account Disclosure Statement Projections for Coming Year; Bank Statement Dated 12/12/2009 | Hernandez Dep.0000480 | Hernandez Dep.0000486 |
| 6 | Hernandez | Deposition Exhibit 04 - Warranty Deed Dated 1/11/2017 | | |
| 7 | Hernandez | Deposition Exhibit 05 - Hillsborough County Property Appraiser Property Record Card | | |
| 8 | Hernandez | Deposition Exhibit 06 - Floor Plan | Hernandez.J00007 | Hernandez.J00008 |
| 9 | Hernandez | Deposition Exhibit 07 - Chinese Drywall Screening LLC Drywall Investigation Report dated 1/25/2010 | Hernandez Dep.0000008 | Hernandez Dep.0000021 |
| 10 | Hernandez | Deposition Exhibit 08 - Chinese Drywall Screening LLC Evidence Preservation Report dated 10/31/2013 | Hernandez Dep.0000022 | Hernandez Dep.0000061 |
| 11 | Hernandez | Deposition Exhibit 09 - Environmental Certificate Dated 12/10/2013 | | |
| 12 | Hernandez | Deposition Exhibit 10 - Various Remediation Invoices | Hernandez Dep.0000146 | Hernandez Dep.0000157 |
| 13 | Hernandez | Deposition Exhibit 11 - Check Stubs, Bank Statements and Invoices | 000342 | 000355 |
| 14 | Hernandez | Deposition Exhibit 12 - PLAINTIFF BERTHA HERNANDEZ'S FIRST AMENDED RESPONSE TO DEFENDANTS' INTERROGATORIES | | |
| 15 | Hernandez | Deposition Exhibit 13 - SUPPLEMENTAL PLAINTIFF PROFILE FORM | | |
| 16 | Hernandez | Deposition Exhibit 14 - Residential Lease, Handwritten Notes and Invoices | Hernandez Dep.0000240 | Hernandez Dep.0000246 |
| 17 | Hernandez | Deposition Exhibit 15 - WATER BILLS FROM 9/16/2013 TO 05/19/2015; TECO ELECTRIC BILLS FROM 8/28/2013 TO 5/19/2015 | Hernandez Dep.0000198 | Hernandez Dep.0000239 |
| 18 | Hernandez | Deposition Exhibit 16 - Copies of Checks, Receipts and Bank Statements | 000333 | 000341 |
| 19 | Hernandez | Deposition Exhibit 17 - PLAINTIFF BERTHA HERNANDEZ'S RESPONSE TO DEFENDANTS' REQUEST FOR PRODUCTION OF DOCUMENTS | | |

**C. Supporting Documentation**

| | | | | |
|---|---|---|---|---|
| 1 | Hernandez | Doc ID. 365781 - AC Invoices Affected Property | | |
| 2 | Hernandez | Doc ID. 366484 - Application Fee for Rent | | |
| 3 | Hernandez | Doc ID. 366485 - Borter Glass Co. Invoices and Proof of Payment | | |
| 4 | Hernandez | Doc ID. 366486 - California Closets Invoices and Proof of Payment | | |
| 5 | Hernandez | Doc ID. 366488 - Custom Distributors Invoices and Proof of Payment | | |

9.A
Documents and Other Information Considered - John & Bertha Hernandez

*Chinese Drywall Litigation Involving Priority Claimants*

*Bate Stamp (if applicable)*

| No. | Claimant | General Description | First Page | Last Page |
|---|---|---|---|---|
| 6 | Hernandez | Doc ID. 366492 - Proof of AC and Moving Payments | | |
| 7 | Hernandez | Doc ID. 366495 - Proof of Loss of Deposit | | |
| 8 | Hernandez | Doc ID. 366496 - Proof of Moving Payments | | |
| 9 | Hernandez | Doc ID. 366497 - Proof of Payment | | |
| 10 | Hernandez | Doc ID. 366499 - Rent- Proof of Payment | | |
| 11 | Hernandez | Doc ID. 366500 - Rent- Proof of Payment 2 | | |
| 12 | Hernandez | Doc ID. 366501 - Sierra Construction Proof Of Payment | | |
| 13 | Hernandez | Doc ID. 364311 - Rental Property Documentation | | |
| 14 | Hernandez | Doc ID. 364313 - Sierra Construction Proof of Payment | | |
| 15 | Hernandez | Doc ID. 366502 - Tampa Tile Invoices and Proof of Payment | | |
| 16 | Hernandez | Doc ID. 364312 - Water and Electric Bills- Rental Property | | |
| 17 | Hernandez | Doc ID. 364316 - Suncoast Mortgage Payments | | |
| 17 | Hernandez | Doc ID. 366491 - Moving Invoice | | |
| 18 | Hernandez | Doc ID. 366533 - Hernandez - HUD Statement For Remediation Loan | | |
| 19 | Hernandez | Doc ID. 365961 - Hernandez- Global Check 1 | | |
| 20 | Hernandez | Doc ID. 365962 - Hernandez- Global Check 2 | | |
| 21 | Hernandez | Hernandez Out of Pocket Damages Summary Provided by Counsel | | |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-22408-Civ-COOKE

EDUARDO AND CARMEN AMORIN, *et al.*,
individually and on behalf of others similarly
situated,

       Plaintiffs,

vs.

TAISHAN GYPSUM CO., LTD., f/k/a
SHANDONG TIASHE DONGXIN CO. LTD.,
*et al.*,

       Defendants.

_____

# Exhibit 10 (Revised)

## Calculations of Damages for Priority Claimants

# Gul & Deborah Lalwani

EXHIBIT TO THE EXPERT WITNESS REPORT OF:
MICHAEL P. ELKIN, CPA/CFF/ABV, CFE
IN THE PRIORITY CLAIMANT TRIAL

April 26, 2019



Exhibit 10 (Revised)
Data and Damage Summary - Gul & Deborah Lalwani

*Chinese Drywall Litigation Involving Priority Claimants*

| Data: | | *Reference / Notes* |
|---|---|---|
| Address of Affected property | 4590 Kodiak Drive | *SPPF* |
| | Vero Beach, FL 32960 | *SPPF* |
| Date Affected property acquired | October 21, 2006 | *SPPF* |
| Date Chinese drywall installed | ?? | *SPPF* |
| Date moved into Affected property | October 21, 2006 | *SPPF* |
| Date first aware of Chinese drywall | March-09 | *SPPF* |
| | | |
| Move out date to alternate living | April 1, 2009 | *ROG 1, #2* |
| Date returned to Affected property | Never | *ROG 1, #2* |
| End date for alternate living expenses | No - Returned to Primary Residence in NJ | *ROG 1, #2* |
| | | |
| Still own property? | N | *SPPF* |
| Bankruptcy caused by damage? | N | *SPPF* |
| Foreclosure or short sale? | N | *SPPF* |
| Affected property sold? | Y | *SPPF* |
| Sale date | March 11, 2011 | *SPPF* |
| Type of sale | Sale in Mitigation | *SPPF* |
| | | |
| Remediation status | None | *SPPF* |
| Remediation period | N/A | *SPPF* |

| Damage Summary: | | |
|---|---|---|
| Full or Partial Out-of-Pocket Remediation Expenses | $ - | |
| | | |
| Other Damages | | |
| Alternate Living Expenses | $ - | |
| Personal Property Damage Expense | - | |
| Additional Damages | - | |
| | $ - | |
| | | |
| Lost Equity | $ 380,614 | *Exh 10.2 (Revised)* |
| | | |
| Diminution in Value | TBD | |
| | | |
| Loss of Use and Enjoyment | TBD | |
| | | |
| Punitive Damages | TBD | |

Exhibit 10.2 (Revised)
Lost Equity - Gul & Deborah Lalwani

*Chinese Drywall Litigation Involving Priority Claimants*

| | | | | Source Document |
|---|---|---|---|---|
| Initial Acquisition | | | | |
| Purchase Price | | $ | 546,151 | GHO Homes - Additional Building Options Doc ID 366657, Pg. 4 |
| Settlement Charges | | | N/A | |
| Total Gross Amount Due from Claimant | | $ | 546,151 | |
| | | | | |
| Less | | | | |
| Deposit Made by Claimant | | $ | (20,000) | New Home Purchase & Construction Agreement Doc ID 365780, Pg. 1 |
| Borrowings by Claimant | | | (436,900) | Mortgage - KR Doc (Public Records) |
| Credits | | | N/A | |
| Amount Due from Claimant at Close | | $ | 89,251 | |
| | | | | |
| Funds Paid by Claimant | | | | |
| Deposit Paid with Contract | | $ | 20,000 | New Home Purchase & Construction Agreement Doc ID 365780, Pg. 1 |
| Cash Paid at Closing | | | 89,251 | |
| Total Payments for Initial Purchase | a | $ | 109,251 | |
| | | | | |
| Mortgage | | | | |
| Mortgage Beginning Balance | | $ | 436,900 | November 22, 2004 Mortgage from Public Records |
| Mortgage Balance at Payoff | | | - | Response to Defendants' Rogs. |
| Principal Payments Made | b | $ | 436,900 | |
| | | | | |
| Less: Cash Paid to Claimants upon Sale of Home | | $ | (164,831) | HUD Closing Statement dated 3/11/11 Doc ID 147835 |
| Adjustments from Closing Statement at Sale: | | | | |
| Line 511. County Taxes | | | (297) * | HUD Closing Statement dated 3/11/11 Doc ID 147835 |
| Line 1304. 2010 Real Property Taxes | | | (409) * | HUD Closing Statement dated 3/11/11 Doc ID 147835 |
| Adjusted Cash Paid to Claimants upon Sale of Home | c | $ | (165,537) | |
| | | | | |
| Total Lost Equity | = a + b + c | $ | 380,614 | |

Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 385 of 802
Case 1:11-cv-22408-MGC Document 272 entered on FLSD Docket 08/15/2019 Page 102 of
172

10.A
Documents and Other Information Considered - Gul & Deborah Lalwani

*Chinese Drywall Litigation Involving Priority Claimants*

<div align="right">Bate Stamp (if applicable)</div>

| No. | Claimant | General Description | First Page | Last Page |
|-----|----------|---------------------|-----------|-----------|
| **A. Pleadings and Other Legal Documents:** | | | | |
| 1 | All | Trial Plan for Property Damage Claims and Scheduling Order dated November 16, 2018 | | |
| 2 | Lalwani | Plaintiff Deborah Lalwani Answers to Interrogatories, dated November 30, 2018 | | |
| 3 | Lalwani | Plaintiff Gul Lalwani Answers to Interrogatories, dated November 30, 2018 | | |
| 4 | Lalwani | Plaintiff Gul Lalwani Supplemental Plaintiff Profile Form - Amended | | |
| 5 | Lalwani | Plaintiff Deborah Lalwani First Amended Response to Defendants' Request for Production of Documents, dated January 14, 2019 | | |
| 6 | Lalwani | Plaintiff Deborah Lalwani First Amended Response to Defendants' Second Request for Production of Documents, dated January 14, 2019 | | |
| 7 | Lalwani | Plaintiff Gul Lalwani First Amended Response to Defendants' Request for Production of Documents, dated January 14, 2019 | | |
| 8 | Lalwani | Plaintiff Gul Lalwani First Amended Response to Defendants' Second Request for Production of Documents, dated January 14, 2019 | | |
| 9 | Lalwani | Deborah Lalwani Response to Defendants' Second Set of Interrogatories, dated December 4, 2018 | | |
| 10 | Lalwani | Deborah Lalwani Response to Defendants' Interrogatories, dated November 30, 2018 | | |
| 11 | Lalwani | Gul Lalwani Response to Defendants' Interrogatories, dated November 30, 2018 | | |
| 12 | Lalwani | Gul Lalwani Response to Defendants' Second Set of Interrogatories, dated December 4, 2018 | | |
| **B. Depositions & Corresponding Exhibits:** | | | | |
| 1 | Lalwani | Deposition Transcript of Gul Lalwani, dated January 4, 2019 | | |
| 2 | Lalwani | Deposition Transcript of Deborah Lalwani, dated January 4, 2019 | | |
| 3 | Lalwani | Deposition Transcript of Vance Brinkerhoff, dated January 14, 2019 | | |
| 4 | Lalwani | Deposition Exhibit 01 - New Home Purchase & Construction Agreement | | |
| 5 | Lalwani | Deposition Exhibit 02 - Letter from GHO Homes dated 9/17/2004 | | |
| 6 | Lalwani | Deposition Exhibit 03 - Letter dated 7/16/2005 | | |
| 7 | Lalwani | Deposition Exhibit 04 - Letter dated 7/19/2005 | | |
| 8 | Lalwani | Deposition Exhibit 05 - Memo from John E. Fuchs of GHO Homes | | |
| 9 | Lalwani | Deposition Exhibit 06 - Chinese Drywall Settlement Program Global, Banner, Inex Repair and relocation expenses claim form, dated 9/30/13 | | |
| 10 | Lalwani | Deposition Exhibit 07 - Letter dated 4/1/2009, with attached Chinese Drywall Screening Property Screen Report dated 3/30/2009 | | |
| 11 | Lalwani | Deposition Exhibit 08 - Chinese Drywall Screening Drywall Investigation Report, dated 11/17/2009 | | |
| 12 | Lalwani | Deposition Exhibit 09 - First Amended Supplemental Plaintiff Profile Form | | |
| 13 | Lalwani | Deposition Exhibit 10 - Supplemental Plaintiff Profile Form | | |
| 14 | Lalwani | Deposition Exhibit 11 - Letter dated 2/21/2012, with attached copies of checks | | |
| 15 | Lalwani | Deposition Exhibit 12 - HUD-1 Settlement Statement, dated 3/11/2011 | | |
| 16 | Lalwani | Deposition Exhibit 13 - Forwarded e-mails dated 8/12/2009 and 8/10/2009 | | |
| 17 | Lalwani | Deposition Exhibit 14 - Information on property at 4590 Kodiak Drive, Vero Beach, Florida 32967 | | |
| 18 | Lalwani | Deposition Exhibit 15 - E-mail string dated 6/15/2010 | | |
| 19 | Lalwani | Deposition Exhibit 16 - E-mail string dated 4/18/2010, with attachments - Proposed Findings of Fact and Conclusions of Law | | |
| 20 | Lalwani | Deposition Exhibit 01 - MLS #117881 for 4590 Kodiak Dr., Vero Beach, 32967 for $550,000 | | |
| 21 | Lalwani | Deposition Exhibit 02 - Status Report - Coldwell Banker Ed Schlitt LC for Indian River MLS#154259 | | |
| 22 | Lalwani | Deposition Exhibit 03 - Status Report - Coldwell Banker Ed Schlitt LC for Property address 4590 Kodiak Drive, Vero Beach, FL 32967 | | |
| 23 | Lalwani | Deposition Exhibit 04 - Status Report - Coldwell Banker Ed Schlitt LC property address 4590 Kodiak Drive, Vero Beach, FL 32967 | | |
| 24 | Lalwani | Deposition Exhibit 05 - Email string ending with 12/29/2018 email from: Deborah Lalwani to: Holly Werkema, subject: Fw: FW:, attachment: Estimate.pdf | | |
| 25 | Lalwani | Deposition Exhibit 06 - Email string ending with 12/29/2018 email from: Deborah Lalwani to: Holly Werkema, subject: Fw: Chinese Drywall | | |
| 26 | Lalwani | Deposition Exhibit 07 - Document titled Findings of Fact & Conclusions of Law In re: Chinese Manufactured Drywall Products Liability Litigation, MDL No. 2047, Section: L, Judge Fallon | | |
| **C. Supporting Documentation** | | | | |
| 1 | Lalwani | Lalwani Damages Summary Provided by Counsel | | |
| 2 | Lalwani | Doc ID. 366657 - GHO Homes Additional Building Options | | |
| 3 | Lalwani | Doc ID. 365780 - New Home Construction Agreement | | |

Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 386 of 802
Case 1:11-cv-22408-MGC Document 272 Entered on FLSD Docket 09/15/2015 Page 203 of
172

10.A
Documents and Other Information Considered - Gul & Deborah Lalwani

*Chinese Drywall Litigation Involving Priority Claimants*

| | | | | *Bate Stamp (if applicable)* | |
| No. | Claimant | General Description | First Page | Last Page |
|---|---|---|---|---|
| 4 | Lalwani | Doc ID. 147835 - HUD Settlement Statement from Sale of Home | | |

D. Research and Other Sources:

| | | | | | |
|---|---|---|---|---|---|
| 1 | Lalwani | November 22, 2004 Mortgage from Public Records | | | |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-22408-Civ-COOKE

EDUARDO AND CARMEN AMORIN, *et al.*,
individually and on behalf of others similarly
situated,

       Plaintiffs,

vs.

TAISHAN GYPSUM CO., LTD., f/k/a
SHANDONG TIASHE DONGXIN CO. LTD.,
*et al.*,

       Defendants.

_____

# Exhibit 11 (Revised)

**Calculations of Damages for Priority Claimant**

# Cassandra Marin

EXHIBIT TO THE EXPERT WITNESS REPORT OF:
MICHAEL P. ELKIN, CPA/CFF/ABV, CFE
IN THE PRIORITY CLAIMANT TRIAL

April 26, 2019



Exhibit 11 (Revised)
Data and Damage Summary - Cassandra Marin

*Chinese Drywall Litigation Involving Priority Claimants*

| Data: | | *Reference / Notes* |
|---|---|---|
| Address of Affected property | 3865 SW Wycoff Street | *SPPF* |
| | Port St. Lucie, FL 34953 | *SPPF* |
| Date Affected property acquired | February 8, 2007 | *SPPF* |
| Date Chinese drywall installed | 2007 | *SPPF* |
| Date moved into Affected property | February 8, 2007 | *SPPF* |
| Date first aware of Chinese drywall | October-09 | *SPPF* |
| | | |
| Move out date to alternate living | February 1, 2012 | *ROG 1, #2* |
| Date returned to Affected property | N/A | *ROG 1, #2* |
| End date for alternate living expenses | N/A | *ROG 1, #2* |
| | | |
| Still own property? | N | *ROG 1, #2* |
| Bankruptcy caused by damage? | N | *SPPF* |
| Foreclosure or short sale? | N | *SPPF* |
| Affected property sold? | Y | *SPPF* |
| Sale date | February 17, 2012 | *SPPF* |
| Type of sale | Sale in Mitigation | *SPPF* |
| | | |
| Remediation status | None | *ROG 1, #1* |
| Remediation period | N/A | *ROG 1, #1* |

| Damage Summary: | | |
|---|---|---|
| Full or Partial Out-of-Pocket Remediation Expenses | $            - | |
| | | |
| Other Damages | | |
| Alternate Living Expenses | $            - | |
| Personal Property Damage Expense | 575 | *Exh. 11.1* |
| Additional Damages | - | |
| | $         575 | |
| | | |
| Lost Equity | $      196,017 | *Exh. 11.2 (Revised)* |
| | | |
| Diminution in Value | TBD | |
| | | |
| Loss of Use and Enjoyment | TBD | |
| | | |
| Punitive Damages | TBD | |

Exhibit 11.1
Damage Claims Detail - Cassandra Marin

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|------|--------|-------------|--------|---|------|--------------|----------------|-------|-------------------|--------------|
| Personal Property Damage Expense | Domestic Air Conditioning Inc. | AC System Repairs | $ | 175 | 6/3/2009 | | Invoice | N/A | 366714 | 1 |
| Personal Property Damage Expense | Domestic Air Conditioning Inc. | AC System Repairs | | 400 | 10/2/2009 | | Invoice | N/A | 366714 | 2 |
| Personal Property Damage Expense Total | | | $ | 575 | | | | | | |

Exhibit 11.2 (Revised)
Lost Equity - Cassandra Marin

*Chinese Drywall Litigation Involving Priority Claimants*

| | | | | Source Document |
|---|---|---|---|---|
| Initial Acquisition | | | | |
| Purchase Price | | $ | 270,000 | 2-8-07 HUD Statement - Purchase of Property |
| Settlement Charges | | | 727 | 2-8-07 HUD Statement - Purchase of Property |
| Total Gross Amount Due from Claimant | | $ | 270,727 | |
| | | | | |
| Less | | | | |
| Deposit Made by Claimant | | $ | (5,000) | 2-8-07 HUD Statement - Purchase of Property |
| Borrowings by Claimant | | | - | 10-5-06 Purchase Agreement  (Buyer to Pay Cash) |
| Credits | | | - | |
| Amount Due from Claimant at Close | | $ | 265,727 | |
| | | | | |
| Funds Paid by Claimant | | | | |
| Deposit Paid with Contract | | $ | 5,000 | 2-8-07 HUD Statement - Purchase of Property |
| Closing Cash Payments | | | 265,727 | 10-5-06 Purchase Agreement  (Buyer to Pay Cash) |
| Adjustments from Closing Statement at Purchase: | | | | |
| Line 211.  County Taxes | | | - ** | 2-8-07 HUD Statement - Purchase of Property |
| Adjusted Payments for Initial Purchase | a | $ | 270,727 | |
| | | | | |
| Mortgage | | | | |
| Mortgage Beginning Balance | | $ | - | |
| Mortgage Balance at Payoff | | | - | |
| Principal Payments Made | b | $ | - | |
| | | | | |
| Less: Cash Paid to Claimants upon Sale of Home | | $ | (72,276) | 2-17-12 HUD Statement - Sale of Property |
| Adjustments from Closing Statement at Sale: | | | | |
| Line 406. 2011 RE Taxes | | | 257 * | 2-17-12 HUD Statement - Sale of Property |
| Line 408. Water/Sewer | | | 159 * | 2-17-12 HUD Statement - Sale of Property |
| Line 511. County Taxes | | | (232) * | 2-17-12 HUD Statement - Sale of Property |
| Line 1303. Real Estate Taxes | | | (2,385) * | 2-17-12 HUD Statement - Sale of Property |
| Line 1304. Water Bill | | | (232) * | 2-17-12 HUD Statement - Sale of Property |
| Adjusted Cash Paid to Claimants upon Sale of Home | c | $ | (74,710) | |
| | | | | |
| Total Lost Equity | = a + b + c | $ | 196,017 | |

11.A
Documents and Other Information Considered - Cassandra Marin

*Chinese Drywall Litigation Involving Priority Claimants*

*Bate Stamp (if applicable)*

| No. | Claimant | General Description | First Page | Last Page |
|---|---|---|---|---|

**A. Pleadings and Other Legal Documents:**
| 1 | All | Trial Plan for Property Damage Claims and Scheduling Order dated November 16, 2018 | | |
| 2 | Marin | Plaintiff Cassandra Marin Answers to Interrogatories, dated November 30, 2018 | | |
| 3 | Marin | Plaintiff Cassandra Marin Supplemental Plaintiff Profile Form, dated | | |
| 4 | Marin | Plaintiff Cassandra Marin First Amended Response to Defendants' Request for Production of Documents, dated January 14, 2019 | | |
| 5 | Marin | Plaintiff Cassandra Marin First Amended Response to Defendants' Second Request for Production of Documents, dated January 14, 2019 | | |
| 6 | Marin | Cassandra Marin Response to Defendants' Interrogatories, dated November 30, 2018 | | |
| 7 | Marin | Cassandra Marin Response to Defendants' Second Request For Production of Documents, dated December 4, 2018 | | |
| 8 | Marin | Cassandra Marin Response to Defendants' Request For Production of Documents, dated November 30, 2018 | | |
| 9 | Marin | Cassandra Marin Response to Defendants' Second Set of Interrogatories, dated December 4, 2018 | | |

**B. Depositions & Corresponding Exhibits:**
| 1 | Marin | Deposition Transcript of Cassandra Marin, dated January 7, 2019 | | |
| 2 | Marin | Deposition Transcript of Yvette Marin, dated January 10, 2019 | | |
| 3 | Marin | Deposition Exhibit 1 - Purchase Agreement | | |
| 4 | Marin | Deposition Exhibit 2 - Declaration of Correctness of Square Footage on Chinese Drywall Client(s) Property for Remediation Damages dated 5/19/2017 | | |
| 5 | Marin | Deposition Exhibit 3 - First Amended Supplemental Plaintiff Profile Form | | |
| 6 | Marin | Deposition Exhibit 4 - Property Screening Report dated 10/28/2009 | | |
| 7 | Marin | Deposition Exhibit 5 - Chinese Drywall Screening Report dated 6/18/2012 | | |
| 8 | Marin | Deposition Exhibit 6 - Addendum Re: 3865 SW Wycoff Street, Port St. Lucie, FL 34953, signed by Cassandra Marin, and Undated Addendum signed by John O. Jones and Linda S. Pauley | | |
| 9 | Marin | Deposition Exhibit 7 - Domestic Air Conditioning, Inc., Invoice Nos. 8100, 8155, ProMag Energy Group, Inc., Invoice No. 012564 | | |
| 10 | Marin | Deposition Exhibit 8 - Copies of checks from Chinese Drywall Settlement Program | | |
| 11 | Marin | Deposition Exhibit 9 - Addendum No. 1 to the contract dated 8/20/2009 | | |
| 12 | Marin | Deposition Exhibit 10 - "As Is" Residential Contract for Sale and Purchase dated January 16, 2012 | | |
| 13 | Marin | Deposition Exhibit 11 - Plaintiff Cassandra Marin's Response to Defendants' Second Set of Interrogatories | | |
| 14 | Marin | Deposition Exhibit 12 - Verification Page dated 12/4/2018 | | |

**C. Supporting Documentation**
| 1 | Marin | Marin Damages Summary Provided by Counsel (Partially Redacted) | | |
| 2 | Marin | 10-5-06 Purchase Agreement PBC 1.29.19 (Buyer to Pay Cash) | | |
| 3 | Marin | 1.16.12 Sale Contract - PBC 1.29.19 | | |
| 4 | Marin | 2-17-12 HUD Statement - Sale of Property - PBC 1.29.19 | | |
| 5 | Marin | 2-8-07 HUD Statement - Purchase of Property - PBC 1.29.2019 | | |
| 6 | Marin | Doc ID. 366714 - Air Conditioning Invoices | | |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-22408-Civ-COOKE

EDUARDO AND CARMEN AMORIN, *et al.*,
individually and on behalf of others similarly
situated,

       Plaintiffs,

vs.

TAISHAN GYPSUM CO., LTD., f/k/a
SHANDONG TIASHE DONGXIN CO. LTD.,
*et al.*,

       Defendants.

_____

# Exhibit 12 (Revised)

## Calculations of Damages for Priority Claimant

# Dailyn Martinez

EXHIBIT TO THE EXPERT WITNESS REPORT OF:
MICHAEL P. ELKIN, CPA/CFF/ABV, CFE
IN THE PRIORITY CLAIMANT TRIAL

April 26, 2019



Exhibit 12 (Revised)
Data and Damage Summary - Dailyn Martinez

*Chinese Drywall Litigation Involving Priority Claimants*

| Data: | | Reference / Notes |
|---|---|---|
| Address of Affected property | 1624 NW 37th Avenue | *SPPF* |
| | Cape Coral, FL 33993 | *SPPF* |
| Date Affected property acquired | September 16, 2008 | *SPPF* |
| Date Chinese drywall installed | 2006 | *SPPF* |
| Date moved into Affected property | September 16, 2008 | *SPPF* |
| Date first aware of Chinese drywall | October-09 | *SPPF* |
| | | |
| Move out date to alternate living | November 2010 - RV & June 2012 - Rental | *SPPF* |
| Date returned to Affected property | June 1, 2013 | *ROG 1, #2* |
| End date for alternate living expenses | June 1, 2013 | *ROG 1, #2* |
| | | |
| Still own property? | Y | *SPPF* |
| Bankruptcy caused by damage? | N | *SPPF* |
| Foreclosure or short sale? | N | *SPPF* |
| Affected property sold? | N | *ROG 1, #2* |
| Sale date | N/A | *SPPF* |
| Type of sale | N/A | *SPPF* |
| | | |
| Remediation status | None | *SPPF* |
| Remediation period | N/A | *SPPF* |

| Damage Summary: | | | |
|---|---|---|---|
| Full or Partial Out-of-Pocket Remediation Expenses | $ | - | |
| | | | |
| Other Damages | | | |
| Alternate Living Expenses | $ | 8,399 | *Exh. 12.1 (Revised)* |
| Personal Property Damage Expense | | 41,761 | *Exh. 12.1 (Revised)* |
| Additional Damages | | - | |
| | $ | 50,160 | |
| | | | |
| Lost Equity | | TBD | |
| | | | |
| Diminution in Value | | TBD | |
| | | | |
| Loss of Use and Enjoyment | | TBD | |
| | | | |
| Punitive Damages | | TBD | |

Exhibit 12.1 (Revised)
Damage Claims Detail - Dailyn Martinez

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Alternate Living Expenses | D.E. Foeller Sales, Inc | RV Purchase | $ 2,399 * | 11/16/2010 | | Invoice | | Exhibit 11 | 1 |
| Alternate Living Expenses | (1718 SW 12th Terrace, Cape Coral) | Rent | 600 | 6/1/2012 | | Receipt | | Exhibit 12 | 3 |
| Alternate Living Expenses | (1718 SW 12th Terrace, Cape Coral) | Rent | 600 | 7/1/2012 | | Receipt | | Exhibit 12 | 3 |
| Alternate Living Expenses | (1718 SW 12th Terrace, Cape Coral) | Rent | 600 | 8/1/2012 | | Receipt | | Exhibit 12 | 3 |
| Alternate Living Expenses | (1718 SW 12th Terrace, Cape Coral) | Rent | 600 | 9/1/2012 | | Receipt | | Exhibit 12 | 4 |
| Alternate Living Expenses | (1718 SW 12th Terrace, Cape Coral) | Rent | 600 | 10/1/2012 | | Receipt | | Exhibit 12 | 4 |
| Alternate Living Expenses | (1718 SW 12th Terrace, Cape Coral) | Rent | 600 | 11/1/2012 | | Receipt | | Exhibit 12 | 4 |
| Alternate Living Expenses | (1718 SW 12th Terrace, Cape Coral) | Rent | 600 | 12/1/2012 | | Receipt | | Exhibit 12 | 5 |
| Alternate Living Expenses | 2011 Northeast 17th Place, Cape Coral | Rent | 300 * | 1/1/2013 | | Receipt | | Exhibit 12 | 1 |
| Alternate Living Expenses | 2011 Northeast 17th Place, Cape Coral | Rent | 300 * | 2/1/2013 | | Receipt | | Exhibit 12 | 1 |
| Alternate Living Expenses | 2011 Northeast 17th Place, Cape Coral | Rent | 300 * | 3/1/2013 | | Receipt | | Exhibit 12 | 1 |
| Alternate Living Expenses | 2011 Northeast 17th Place, Cape Coral | Rent | 300 * | 4/1/2013 | | Receipt | | Exhibit 12 | 2 |
| Alternate Living Expenses | 2011 Northeast 17th Place, Cape Coral | Rent | 300 * | 5/1/2013 | | Receipt | | Exhibit 12 | 2 |
| Alternate Living Expenses | 2011 Northeast 17th Place, Cape Coral | Rent | 300 * | 6/1/2013 | | Receipt | | Exhibit 12 | 2 |
| **Alternate Living Expenses Total** | | | **$ 8,399** | | | | | | |
| Personal Property Damage Expense | Lowes | Refrigerator | $ - * | 4/1/2007 | | Receipt | | Exhibit 9 | 45 |
| Personal Property Damage Expense | Home Depot | Wine Cooler | - * | 6/30/2007 | | Receipt | | Exhibit 9 | 46 |
| Personal Property Damage Expense | Home Depot | Tractor | - * | 7/16/2007 | | Receipt | | Exhibit 9 | 24 |
| Personal Property Damage Expense | Samsung | Refrigerator | - * | 8/20/2007 | | Receipt | | Exhibit 9 | 31 |
| Personal Property Damage Expense | Lowes | Refrigerator | - * | 8/22/2007 | | Receipt | | Exhibit 9 | 45 |
| Personal Property Damage Expense | Circuit City | Printer (HP Deskjet) | - * | 6/16/2008 | | Receipt | | Exhibit 9 | 25 |
| Personal Property Damage Expense | Lowes | (Extended Protection Plan 4 years - Warranty) | - * | 7/17/2008 | | Receipt | | Exhibit 9 | 46 |
| Personal Property Damage Expense | Lowes | Miscellaneous | - * | 7/17/2008 | | Receipt | | Exhibit 9 | 44 |
| Personal Property Damage Expense | Budget Blinds | Blinds | 2,945 | 9/25/2008 | | Invoice | | Exhibit 9 | 32 |
| Personal Property Damage Expense | Best Buy | Ipod | 246 | 6/6/2009 | | Receipt | | Exhibit 9 | 28 |
| Personal Property Damage Expense | Belk | Mattress Pads | 125 | 7/19/2009 | X | Receipt | | Exhibit 9 | 42 |
| Personal Property Damage Expense | Walmart | WII - Warranty | - * | 11/26/2009 | | Receipt | | Exhibit 9 | 44 |
| Personal Property Damage Expense | Walmart | WII | 214 * | 11/26/2009 | | Receipt | | Exhibit 9 | 44 |
| Personal Property Damage Expense | Touch of Class | Biltmore Library Tapestry | 119 | 1/12/2010 | X | Invoice | | Exhibit 9 | 33 |
| Personal Property Damage Expense | Home Depot | (EC Blower) | 159 * | 9/23/2010 | | Receipt | | Exhibit 9 | 25 |
| Personal Property Damage Expense | Walmart | (Pressure Cooker) | 25 * | 10/26/2010 | | Receipt | | Exhibit 9 | 22 |
| Personal Property Damage Expense | Caribbean Distributing Co., Inc. | (Vaccum cleaner repair) | 146 * | 11/5/2010 | | Invoice | | Exhibit 9 | 34 |
| Personal Property Damage Expense | JCPenney | (Deep Fryer) | 53 * | 12/9/2010 | | Receipt | | Exhibit 9 | 26 |
| Personal Property Damage Expense | JCPenney | (Cooks Color) | 32 * | 12/26/2010 | | Receipt | | Exhibit 9 | 29 |
| Personal Property Damage Expense | JCPenney | (Watches) | 370 * | 12/26/2010 | | Receipt | | Exhibit 9 | 26 |
| Personal Property Damage Expense | BJ's | (Blender) | 30 * | 2/8/2011 | | Receipt | | Exhibit 9 | 27 |
| Personal Property Damage Expense | Paypal | Office Printer | 180 | 3/9/2011 | | Receipt | | Exhibit 9 | 19 |
| Personal Property Damage Expense | Staples | (Miscellaneous (Printer Ink)) | - * | 3/23/2011 | | Receipt | | Exhibit 9 | 27 |
| Personal Property Damage Expense | Walmart | (Fan) | 20 * | 6/6/2011 | | Receipt | | Exhibit 9 | 24 |
| Personal Property Damage Expense | Walmart | (Fan) | 39 * | 8/4/2011 | | Receipt | | Exhibit 9 | 23 |

Exhibit 12.1 (Revised)
Damage Claims Detail - Dailyn Martinez

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Personal Property Damage Expense | Belk | (Sport Coats) | - * | 10/16/2011 | | Receipt | | Exhibit 9 | 36 |
| Personal Property Damage Expense | Lowes | (Pressure washer) | 296 * | 11/15/2011 | | Receipt | | Exhibit 9 | 39 |
| Personal Property Damage Expense | Belk | (Jewelry and Music System) | 82 * | 11/25/2011 | | Receipt | | Exhibit 9 | 35 |
| Personal Property Damage Expense | Enrico & AG Mechanics, Inc | Change out A/C unit | 1,700 | 1/5/2012 | | Receipt | | Exhibit 7 | 1 |
| Personal Property Damage Expense | Belk | (Earrings, necklaces & bracelets) | 38 * | 5/25/2012 | | Receipt | | Exhibit 9 | 37 |
| Personal Property Damage Expense | Home Depot | (Tractor) | 2,522 * | 5/31/2012 | | Receipt | | Exhibit 9 | 29 |
| Personal Property Damage Expense | Kohls | (Watches) | 382 * | 6/7/2012 | | Receipt | | Exhibit 9 | 30 |
| Personal Property Damage Expense | Walmart | (Television and Blu Ray Player) | 483 * | 6/8/2012 | | Receipt | | Exhibit 9 | 36 |
| Personal Property Damage Expense | Kohls | (Watches) | 178 * | 6/11/2012 | | Receipt | | Exhibit 9 | 30 |
| Personal Property Damage Expense | Kohls | (Grills/Waffles, Dinnerware & TV Tables) | 54 * | 8/18/2012 | | Receipt | | Exhibit 9 | 10 |
| Personal Property Damage Expense | Kohls | (Mixers) | 187 * | 8/23/2012 | | Receipt | | Exhibit 9 | 7 |
| Personal Property Damage Expense | Costco | (Drying Rack) | 21 * | 9/20/2012 | | Receipt | | Exhibit 9 | 10 |
| Personal Property Damage Expense | Bed Bath & Beyond | (Kitchen Items) | 100 * | 11/4/2012 | | Receipt | | Exhibit 9 | 13 |
| Personal Property Damage Expense | Office Depot | (Tablet) | 318 * | 11/20/2012 | | Receipt | | Exhibit 9 | 12 |
| Personal Property Damage Expense | Enrico & AG Mechanics, Inc | Change out A/C unit | 4,100 | 12/31/2012 | X | Invoice | | Exhibit 7 | 2 |
| Personal Property Damage Expense | Best Buy | Television - Warranty | - * | 12/31/2012 | | Receipt | | Exhibit 9 | 40 |
| Personal Property Damage Expense | Best Buy | (Television) | 954 * | 12/31/2012 | | Receipt | | Exhibit 9 | 40 |
| Personal Property Damage Expense | Staples | (Printer) | 212 * | 3/16/2013 | | Receipt | | Exhibit 9 | 20 |
| Personal Property Damage Expense | Kay Jewelers | Watches | 636 | 3/23/2013 | | Receipt | | Exhibit 9 | 9 |
| Personal Property Damage Expense | Bed Bath & Beyond | (Kitchen Pans - Calphalon 10 Piece Set) | - * | 4/4/2013 | | Receipt | | Exhibit 9 | 13 |
| **Personal Property Damage Expense** | **Bed Bath & Beyond** | **Miscellaneous (Removed From Revised)** | **-** | **4/4/2013** | | **Receipt** | | **Exhibit 9** | **12** |
| Personal Property Damage Expense | Bed Bath & Beyond | (Ktichen Supplies) | 309 * | 4/14/2013 | X | Receipt | | Exhibit 9 | 11 |
| Personal Property Damage Expense | Lowes | (Drill & Drive) | 19 * | 5/15/2013 | | Receipt | | Exhibit 9 | 14 |
| Personal Property Damage Expense | Lowes | (Trimmer and Blower) | 260 * | 5/23/2013 | | Receipt | | Exhibit 9 | 21 |
| Personal Property Damage Expense | Lowes | (Drill Bit) | 25 * | 5/24/2013 | | Receipt | | Exhibit 9 | 6 |
| Personal Property Damage Expense | Bed Bath & Beyond | (Ninja Mixer) | 134 * | 5/31/2013 | | Receipt | | Exhibit 9 | 11 |
| Personal Property Damage Expense | Lowes | (Refrigerator) | 1,272 * | 6/9/2013 | | Receipt | | Exhibit 9 | 8 |
| Personal Property Damage Expense | Gulf Coast Cell Phones | Cell Phone | 468 * | 6/10/2013 | | Receipt | | Exhibit 9 | 7 |
| Personal Property Damage Expense | Macy's | (Kitchen Electronics) | 25 * | 6/14/2013 | | Receipt | | Exhibit 9 | 6 |
| Personal Property Damage Expense | Belk | Miscellaneous | 117 | 7/7/2013 | | Receipt | | Exhibit 9 | 42 |
| Personal Property Damage Expense | Best Buy | (Television) | 742 * | 7/21/2013 | | Receipt | | Exhibit 9 | 22 |
| Personal Property Damage Expense | BJ's | (Desktop Computer) | 226 * | 7/26/2013 | | Receipt | | Exhibit 9 | 16 |
| Personal Property Damage Expense | BJ's | (Home Theater System) | 133 * | 7/29/2013 | | Receipt | | Exhibit 9 | 15 |
| Personal Property Damage Expense | T - Mobile | Cell Phone | 384 | 7/30/2013 | | Receipt | | Exhibit 9 | 41 |
| Personal Property Damage Expense | BJ's | (Blender) | 40 * | 8/17/2013 | | Receipt | | Exhibit 9 | 15 |
| Personal Property Damage Expense | Target | (Epson Color - Printer Ink) | - * | 8/18/2013 | | Receipt | | Exhibit 9 | 16 |
| Personal Property Damage Expense | Lowes | Washer, Dryer - Warranty | - * | 8/19/2013 | | Receipt | | Exhibit 9 | 43 |
| Personal Property Damage Expense | Lowes | (Washer, Dryer ) | 2,230 * | 8/19/2013 | | Receipt | | Exhibit 9 | 43 |
| Personal Property Damage Expense | Walmart | (Styling Iron & Kitchen Set) | 157 * | 8/28/2013 | | Receipt | | Exhibit 9 | 5 |

Exhibit 12.1 (Revised)
Damage Claims Detail - Dailyn Martinez

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|------|--------|-------------|--------|------|--------------|----------------|-------|------------------|--------------|
| Personal Property Damage Expense | Walmart | (Fan) | 46 * | 8/29/2013 | | Receipt | | Exhibit 9 | 17 |
| Personal Property Damage Expense | Home Depot | (Door Lock) | 26 * | 8/31/2013 | | Receipt | | Exhibit 9 | 14 |
| Personal Property Damage Expense | Lowes | (2 Faucets) | 364 * | 9/2/2013 | | Receipt | | Exhibit 9 | 21 |
| Personal Property Damage Expense | Bed Bath & Beyond | (Clock) | 21 * | 9/4/2013 | | Receipt | | Exhibit 9 | 38 |
| Personal Property Damage Expense | Kohls | Jewelry | 8 | 9/4/2013 | | Receipt | | Exhibit 9 | 38 |
| Personal Property Damage Expense | The Style of Your Life | (Men's Sunglasses) | 154 * | 9/7/2013 | | Receipt | | Exhibit 9 | 18 |
| Personal Property Damage Expense | The Style of Your Life | (Sheets) | 128 * | 9/7/2013 | | Receipt | | Exhibit 9 | 18 |
| Personal Property Damage Expense | TJ Maxx | (Floor Décor) | 18 * | 9/9/2013 | | Receipt | | Exhibit 9 | 39 |
| Personal Property Damage Expense | Best Buy | Music Equipment | 180 * | 1/17/2014 | | Receipt | | 329779 | 48 |
| Personal Property Damage Expense | Leyna Enterprise of Florida | Pozo 100Ft (Water Well) | - * | 1/23/2014 | | Receipt | | 329779 | 49 |
| Personal Property Damage Expense | Lowes | Drill | 101 | 6/6/2014 | | Receipt | | 329779 | 48 |
| Personal Property Damage Expense | Advance Auto Parts | Battery | 150 | 8/8/2014 | | Receipt | | 329779 | 52 |
| Personal Property Damage Expense | Advance Auto Parts | Battery | 58 | 8/25/2014 | | Receipt | | 329779 | 52 |
| Personal Property Damage Expense | Home Depot | (Water Heater) | 363 * | 10/19/2014 | | Receipt | | 329779 | 53 |
| Personal Property Damage Expense | Water Medic of Cape Coral Inc. | Whole House Reverse Osmosis System | 3,600 | 10/20/2014 | | Invoice | | 329779 | 51 |
| Personal Property Damage Expense | Apple Inc. | iPhone | 1,540 | 10/31/2014 | | Receipt | | Exhibit 9 | 51 |
| Personal Property Damage Expense | Apple Inc. | iPhone | 1,006 | 10/31/2014 | | Receipt | | Exhibit 9 | 50 |
| Personal Property Damage Expense | Walmart | (Television) | 952 * | 12/21/2014 | | Receipt | | Exhibit 9 | 59 |
| Personal Property Damage Expense | BJ's | iPad | 403 | 12/21/2014 | | Receipt | | Exhibit 9 | 51 |
| Personal Property Damage Expense | Best Buy | (Macbook Air Computer) | 901 * | 12/27/2014 | | Receipt | | Exhibit 9 | 48 |
| Personal Property Damage Expense | Best Buy | (Case for Macbook) | 74 * | 12/27/2014 | | Receipt | | Exhibit 9 | 47-48 |
| Personal Property Damage Expense | Lowes | Washer and Dryer - Warranty | - * | 1/7/2015 | | Receipt | | Exhibit 9 | 47 |
| Personal Property Damage Expense | Lowes | (Washer and Dryer) | 1,589 * | 1/7/2015 | | Receipt | | Exhibit 9 | 47 |
| Personal Property Damage Expense | Lowes | Blower etc. | 302 | 1/26/2015 | | Receipt | | 329779 | 49 |
| Personal Property Damage Expense | AC Compressor Repair | AC Compressor Repair | 1,200 | 2/2/2015 | | Receipt | | 329779 | 50 |
| Personal Property Damage Expense | Florida Appliance Service AF | Repair Refrigerator | - * | 2/4/2015 | | Invoice | | 329779 | 6 |
| Personal Property Damage Expense | Florida Appliance Service AF | Replace Rear Rollers Dryer | - * | 4/8/2015 | | Invoice | | 329779 | 3 |
| Personal Property Damage Expense | Sears | (Refrigerator) | 2,332 * | 6/27/2017 | | Receipt | | Exhibit 9 | 55 |
| Personal Property Damage Expense | Lowes | (Water Heater) | 558 * | 2/6/2018 | | Receipt | | Exhibit 9 | 56 |
| Personal Property Damage Expense | Sears | (Filters for Refrigerator) | - * | 3/13/2018 | | Receipt | | Exhibit 9 | 53 |
| Personal Property Damage Expense | Sears | (Oven) | 558 * | 3/13/2018 | | Receipt | | Exhibit 9 | 54 |
| Personal Property Damage Expense | Sears | Microwave | 276 * | 3/13/2018 | | Receipt | | Exhibit 9 | 53 |
| Personal Property Damage Expense | Water Medic of Cape Coral Inc. | Change Water membrane | 260 * | 6/5/2018 | | Invoice | | Exhibit 8 | 1 |
| Personal Property Damage Expense | Water Medic of Cape Coral Inc. | Change Water membrane | 660 * | 9/10/2018 | | Invoice | | Exhibit 8 | 1 |
| Personal Property Damage Expense | Kohls | (Canon Camera) | 424 * | 11/22/2018 | | Receipt | | Exhibit 9 | 52 |
| **Personal Property Damages Expense Total** | | | **$ 41,761** | | | | | | |

12.A
Documents and Other Information Considered - Dailyn Martinez

*Chinese Drywall Litigation Involving Priority Claimants*

| | | | Bate Stamp *(if applicable)* | |
|---|---|---|---|---|
| No. | Claimant | General Description | First Page | Last Page |

**A. Pleadings and Other Legal Documents:**

| | | | | |
|---|---|---|---|---|
| 1 | All | Trial Plan for Property Damage Claims and Scheduling Order dated November 16, 2018 | | |
| 2 | Martinez | Priority Claimant Dailyn Martinez Answers to Interrogatories, dated November 30, 2018 | | |
| 3 | Martinez | Priority Claimant Dailyn Martinez Answers to Defendant's Second Set of Interrogatories, dated December 4, 2018 | | |
| 4 | Martinez | Priority Claimant Dailyn Martinez First Amended Answers to Interrogatories, dated December 13, 2018 | | |
| 5 | Martinez | Dailyn Martinez First Amended Supplemental Plaintiff Profile Form, dated December 4, 2018 | | |

**B. Depositions & Corresponding Exhibits:**

| | | | | |
|---|---|---|---|---|
| 1 | Martinez | Deposition Transcript of Dailyn Martinez, dated December 14, 2018 | | |
| 2 | Martinez | Acknowledgment of Deponent Dailyn Martinez, dated January 15, 2019 | | |
| 3 | Martinez | Errata Sheet Dailyn Martinez, dated January 15, 2019 | | |
| 4 | Martinez | Deposition Exhibit 01 - Lee County Property Appraiser - Online Parcel Inquiry - Property Data | | |
| 5 | Martinez | Deposition Exhibit 02 - Plaintiff Profile Form - Residential Properties | MartinezD00001 | MartinezD00013 |
| 6 | Martinez | Deposition Exhibit 03 - Ericksons's Drying Systems - Chinese Drywall Inspection | | |
| 7 | Martinez | Deposition Exhibit 04 - Chinese Drywall Screening, LLC Report | | |
| 8 | Martinez | Deposition Exhibit 05 - Priority Claimant Dailyn Martinez's First Amended Answers to Interrogatories | | |
| 9 | Martinez | Deposition Exhibit 06 - Kawasaki Security Agreement, Buyers Order, and Photographs | | |
| 10 | Martinez | Deposition Exhibit 07 - AG Mechanical, Inc. HVAC Service Order Invoice and Receipt | | |
| 11 | Martinez | Deposition Exhibit 08 - Water Medic of Cape Coral, Inc. Invoices | | |
| 12 | Martinez | Deposition Exhibit 09 - Miscellaneous Claim Form Worksheet and Receipts | | |
| 13 | Martinez | Deposition Exhibit 10 - Chinese Drywall Settlement Program Check Copies | | |
| 14 | Martinez | Deposition Exhibit 11 - D.E. Foeller Sales, Inc. Invoice - RV | | |
| 15 | Martinez | Deposition Exhibit 12 - 2011 Northeast 17th Place Rental Receipts | | |
| 16 | Martinez | Deposition Exhibit 13 - First Amended Supplemental Plaintiff Profile Form | | |
| 17 | Martinez | Deposition Exhibit 14 - Chinese Drywall Experts, LLC Contract Quote | | |
| 18 | Martinez | Deposition Exhibit 15 - Gabisa Construction, Inc. Estimates | | |

**C. Supporting Documentation**

| | | | | |
|---|---|---|---|---|
| 1 | Martinez | Dailyn Martinez Out of Pocket Damages Summary Provided by Counsel | | |
| 2 | Martinez | Doc ID. 150392 - Martinez Kawasaki Motorcycle damage (photos) | | |
| 3 | Martinez | Doc ID. 150393 - Martinez Miscellaneous Claim for property damage | | |
| 4 | Martinez | Doc ID. 150421 - Martinez RV Sales Contract for ALE | | |
| 5 | Martinez | Doc ID. 150426 - Martinez Rent Receipts for ALE | | |
| 6 | Martinez | Doc ID. 316599 - Martinez Receipts for personal property damaged (replaced) | | |
| 7 | Martinez | Doc ID. 365817 - Martinez receipts for damaged appliances (replaced) | | |
| 8 | Martinez | Doc ID. 365944 - Martinez HVAC repair by AG Mechanical, Inc. | | |

12.A
Documents and Other Information Considered - Dailyn Martinez

*Chinese Drywall Litigation Involving Priority Claimants*

*Bate Stamp (if applicable)*

| No. | Claimant | General Description | First Page | Last Page |
|-----|----------|---------------------|------------|-----------|
| 9 | Martinez | Doc ID. 366311 - Martinez HSBC Mortgage statement | | |
| 10 | Martinez | Doc ID. 366393 - Martinez Lease Agreement for ALE (1718 SW 12 Terr, Cape Coral, FL) | | |
| 11 | Martinez | Doc ID. 366394 - Martinez Lease Agreement for ALE (2011 NE 18 PL, Cape Coral, FL) | | |
| 12 | Martinez | Doc ID. 329779 - Personal Property Damage Expenses Support (Added to Exhibit 12 (Updated) on 2/26/2019) | | |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-22408-Civ-COOKE

EDUARDO AND CARMEN AMORIN, *et al.*,
individually and on behalf of others similarly
situated,

        Plaintiffs,

vs.

TAISHAN GYPSUM CO., LTD., f/k/a
SHANDONG TIASHE DONGXIN CO. LTD.,
*et al.*,

        Defendants.

_____

# Exhibit 13 (Revised)

### Calculations of Damages for Priority Claimants

# Jose & Adela Miranda

EXHIBIT TO THE EXPERT WITNESS REPORT OF:
MICHAEL P. ELKIN, CPA/CFF/ABV, CFE
IN THE PRIORITY CLAIMANT TRIAL

April 26, 2019



Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/03/19 Page 400 of 802
Case 1:11-cv-22408-MGC Document 272 Entered on FLSD Docket 09/15/2014 Page 217 of
172

Exhibit 13 (Revised)
Data and Damage Summary - Jose & Adela Miranda

*Chinese Drywall Litigation Involving Priority Claimants*

| Data: | | *Reference / Notes* |
|---|---|---|
| Address of Affected property | 8890 SW 229 Street | *SPPF* |
| | Miami, FL 33190 | *SPPF* |
| Date Affected property acquired | January 22, 2007 | *SPPF* |
| Date Chinese drywall installed | 2006 | *SPPF* |
| Date moved into Affected property | January 22, 2007 | *SPPF* |
| Date first aware of Chinese drywall | Jan-10 | *SPPF* |
| | | |
| Move out date to alternate living | N/A | *SPPF* |
| Date returned to Affected property | Never | *ROG 1, #2* |
| End date for alternate living expenses | Never | *ROG 1, #2* |
| | | |
| Still own property? | N | *SPPF* |
| Bankruptcy caused by damage? | N | *SPPF* |
| Foreclosure or short sale? | Y | *SPPF* |
| Affected property sold? | Y | *ROG 1, #2* |
| Sale date | November 2, 2017 | *SPPF* |
| Type of sale | Foreclosure | *SPPF* |
| | | |
| Remediation status | None | *SPPF* |
| Remediation period | N/A | *SPPF* |

| Damage Summary: | | |
|---|---|---|
| | | |
| Full or Partial Out-of-Pocket Remediation Expenses | $              - | |
| | | |
| Other Damages | | |
|     Alternate Living Expenses | $              - | |
|     Personal Property Damage Expense | - | |
|     Additional Damages | 5,500 | *Exh. 13.1* |
| | $         5,500 | |
| | | |
| Lost Equity | $        35,792 | *Exh. 13.2 (Revised)* |
| | | |
| Diminution in Value / Lost Equity | TBD | |
| | | |
| Loss of Use and Enjoyment | TBD | |
| | | |
| Punitive Damages | TBD | |

Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 401 of 802
Case 1:11-cv-22408-MGC Document 272 Entered on FLSD Docket 09/15/2014 Page 18 of
172

Exhibit 13.1
Damage Claims Detail - Jose & Adela Miranda

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/Doc. ID | PDF Page No. |
|------|--------|-------------|--------|------|--------------|----------------|-------|-----------------|--------------|
| Additional Damages | Pila Law Group | Attorney Fees | $ 1,000 | 6/5/2012 | | Engagement Agreement | N/A | Exhibit 11 | 1 |
| Additional Damages | Pila Law Group | Attorney Fees | 500 | 7/1/2012 | | Engagement Agreement | N/A | Exhibit 11 | 1 |
| Additional Damages | Pila Law Group | Attorney Fees | 500 | 8/1/2012 | | Engagement Agreement | N/A | Exhibit 11 | 1 |
| Additional Damages | Pila Law Group | Attorney Fees | 500 | 9/1/2012 | | Engagement Agreement | N/A | Exhibit 11 | 1 |
| Additional Damages | Pila Law Group | Attorney Fees | 500 | 10/1/2012 | | Engagement Agreement | N/A | Exhibit 11 | 1 |
| Additional Damages | J.P. Law Firm | Attorney Fees | 1,000 | 11/14/2016 | | Engagement Agreement | N/A | Exhibit 11 | 4 |
| Additional Damages | J.P. Law Firm | Attorney Fees | 500 | 1/1/2017 | | Engagement Agreement | N/A | Exhibit 11 | 4 |
| Additional Damages | J.P. Law Firm | Attorney Fees | 500 | 2/1/2017 | | Engagement Agreement | N/A | Exhibit 11 | 4 |
| Additional Damages | J.P. Law Firm | Attorney Fees | 500 | 3/1/2017 | | Engagement Agreement | N/A | Exhibit 11 | 4 |
| **Additional Damages Total** | | | $ 5,500 | | | | | | |

Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 402 of 802
Case 1:11-cv-22408-MGC Document 272 Entered on FLSD Docket 08/15/2019 Page 219 of
172

Exhibit 13.2 (Revised)
Lost Equity - Jose & Adela Miranda

*Chinese Drywall Litigation Involving Priority Claimants*

| | | | | Source Document |
|---|---|---|---|---|
| **Initial Acquisition** | | | | |
| Purchase Price | | $ | 302,790 | Exhibit 1 - J Miranda - HUD Statement dated 1/22/07 |
| Settlement Charges | | | 16,551 | Exhibit 1 - J Miranda - HUD Statement dated 1/22/07 |
| Total Gross Amount Due from Claimant | | $ | 319,341 | |
| | | | | |
| **Less** | | | | |
| Deposit Made by Claimant | | $ | (30,200) | Exhibit 1 - J Miranda - HUD Statement dated 1/22/07 |
| Borrowings by Claimant | | | (272,511) | Exhibit 1 - J Miranda - HUD Statement dated 1/22/07 |
| Credits | | | (5,074) | Exhibit 1 - J Miranda - HUD Statement dated 1/22/07 |
| Amount Due from Claimant at Close | | $ | 11,556 | |
| | | | | |
| **Funds Paid by Claimant** | | | | |
| Deposit Paid with Contract | | $ | 30,200 | Exhibit 1 - J Miranda - HUD Statement dated 1/22/07 |
| Closing Cash Payments | | | 11,556 | Exhibit 1 - J Miranda - HUD Statement dated 1/22/07 |
| Adjustments from Closing Statement at Purchase: | | | | |
| Line 105. CDD Taxes | | | (488) * | Exhibit 1 - J Miranda - HUD Statement dated 1/22/07 |
| Line 112. Maintenance | | | (77) * | Exhibit 1 - J Miranda - HUD Statement dated 1/22/07 |
| Line 211.County Taxes | | | 74 * | Exhibit 1 - J Miranda - HUD Statement dated 1/22/07 |
| Line 901. Interest | | | (485) * | Exhibit 1 - J Miranda - HUD Statement dated 1/22/07 |
| Line 903.  Hazard Insurance,  Exhibit 1 | | | (2,649) * | Exhibit 1 - J Miranda - HUD Statement dated 1/22/07 |
| Line 1001.  Hazard Insurance,  Exhibit 1 | | | (662) * | Exhibit 1 - J Miranda - HUD Statement dated 1/22/07 |
| Line 1004.  County Property Taxes | | | (1,875) * | Exhibit 1 - J Miranda - HUD Statement dated 1/22/07 |
| Line 1006.  Flood Insurance,  Exhibit 1 | | | (157) * | Exhibit 1 - J Miranda - HUD Statement dated 1/22/07 |
| Line 1008. Aggregate Credit for Taxes/Insurance/Annual Assess | | | 750 * | Exhibit 1 - J Miranda - HUD Statement dated 1/22/07 |
| Line 1304.  Waste Fees Exhibit 1 | | | (333) * | Exhibit 1 - J Miranda - HUD Statement dated 1/22/07 |
| Line 1305. Maintenance,  Exhibit 1 | | | (63) * | Exhibit 1 - J Miranda - HUD Statement dated 1/22/07 |
| Adjusted Payments for Initial Purchase | a | $ | 35,792 | Exhibit 1 - J Miranda - HUD Statement dated 1/22/07 |
| | | | | |
| **Mortgage** | | | | |
| Mortgage Beginning Balance | | $ | 272,511 | Exhibit 1 - J Miranda - HUD Statement dated 1/22/07 |
| Mortgage Balance at Payoff | | | 272,511 | Exhibit 10 - Consent Final Judgment of Foreclosure |
| Principal Payments Made | b | $ | - | |
| | | | | |
| Total Lost Equity | = a + b | $ | 35,792 | |

13.A
Documents and Other Information Considered - Jose & Adela Miranda

*Chinese Drywall Litigation Involving Priority Claimants*

*Bate Stamp (if applicable)*

| No. | Claimant | General Description | First Page | Last Page |
|---|---|---|---|---|
| **A. Pleadings and Other Legal Documents:** | | | | |
| 1 | All | Trial Plan for Property Damage Claims and Scheduling Order dated November 16, 2018 | | |
| 2 | Miranda | Plaintiff Jose Miranda Answers to Interrogatories, dated November 30, 2018 | | |
| 3 | Miranda | Plaintiff Jose Miranda Supplemental Plaintiff Profile Form - Amended, dated | | |
| 4 | Miranda | Plaintiff Adela Miranda Answers to Interrogatories, dated November 30, 2018 | | |
| **B. Depositions & Corresponding Exhibits:** | | | | |
| 1 | Miranda | Deposition Transcript of Adela Miranda, dated December 22, 2018 | | |
| 2 | Miranda | Deposition Transcript of Jose Miranda, dated December 22, 2018 | | |
| 3 | Miranda | Deposition Exhibit 01 - Plaintiff Jose Miranda's First Amended Response to Defendants' Second Set of Interrogatories | | |
| 4 | Miranda | Deposition Exhibit 02 - Property Search Miami-Dade County Office of the Property Appraiser Summary Report | | |
| 5 | Miranda | Deposition Exhibit 03 - Third Amended Supplemental Plaintiff Profile Form | | |
| 6 | Miranda | Deposition Exhibit 04 - Certificate of Title | | |
| 7 | Miranda | Deposition Exhibit 01 - U.S. Department of Housing and Urban Development - Settlement Statement | | |
| 8 | Miranda | Deposition Exhibit 02 - Trial Loan Document Scan Sheet | | |
| 9 | Miranda | Deposition Exhibit 03 - Declaration of Correctness of Square Footage on Chinese Drywall Client(s) Property for Remediation Damages | | |
| 10 | Miranda | Deposition Exhibit 04 - Property Search Application - Miami-Dade County Property Information | | |
| 11 | Miranda | Deposition Exhibit 05 - Third Amended Supplemental Plaintiff Profile Form | | |
| 12 | Miranda | Deposition Exhibit 06 - Photographs | | |
| 13 | Miranda | Deposition Exhibit 07 - January 15, 2010 Chinese Drywall Screening, LLC Inspection Reports | | |
| 14 | Miranda | Deposition Exhibit 08 - Chinese Drywall Settlement Program Check Copies | | |
| 15 | Miranda | Deposition Exhibit 09 - June 5, 2010 Letter from Wells Fargo Home Mortgage | | |
| 16 | Miranda | Deposition Exhibit 10 - Consent Final Judgment of Foreclosure | | |
| 17 | Miranda | Deposition Exhibit 11 - Attorney Engagement Agreement and Retainer Agreement | | |
| 18 | Miranda | Deposition Exhibit 12 - Plaintiff Jose Miranda's First Amended Response to Defendants' Second Set of Interrogatories | | |
| 19 | Miranda | Deposition Exhibit 13 - Plaintiff Jose Miranda's Response to Defendants' Interrogatories | | |
| 20 | Miranda | Deposition Exhibit 14 - Verification | | |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-22408-Civ-COOKE

EDUARDO AND CARMEN AMORIN, *et al.*,
individually and on behalf of others similarly
situated,

      Plaintiffs,

vs.

TAISHAN GYPSUM CO., LTD., f/k/a
SHANDONG TIASHE DONGXIN CO. LTD.,
*et al.*,

      Defendants.

_____

# Exhibit 14 (Revised)

## Calculations of Damages for Priority Claimants

# Tracy Nguyen & Mai Tuyen

EXHIBIT TO THE EXPERT WITNESS REPORT OF:
MICHAEL P. ELKIN, CPA/CFF/ABV, CFE
IN THE PRIORITY CLAIMANT TRIAL

April 26, 2019



Exhibit 14
Data and Damage Summary - Tracy Nguyen & Mai Tuyen
_____

*Chinese Drywall Litigation Involving Priority Claimants*

| Data: | | Reference / Notes |
|---|---|---|
| Address of Affected property | 103 SE 16th Place | *SPPF* |
| | Cape Coral, FL 33990 | *SPPF* |
| Date Affected property acquired | June 4, 2004 | *SPPF* |
| Date Chinese drywall installed | 2006 | *SPPF* |
| Date moved into Affected property | Began Construction in 2005 | *SPPF* |
| Date first aware of Chinese drywall | 2010 | *SPPF* |
| | | |
| Move out date to alternate living | May 21, 2010 | *SPPF* |
| Date returned to Affected property | May 5, 2015 | *ROG 1, #2* |
| End date for alternate living expenses | May 5, 2015 | *ROG 1, #2* |
| | | |
| Still own property? | Y | *ROG 1, #2* |
| Bankruptcy caused by damage? | N | *SPPF* |
| Foreclosure or short sale? | N | *SPPF* |
| Affected property sold? | N | *ROG 1, #2* |
| Sale date | N/A | *SPPF* |
| Type of sale | N/A | *SPPF* |
| | | |
| Remediation status | Partial | *SPPF* |
| Remediation period | February 2015 - May 2015 | *SPPF* |

| Damage Summary: | | |
|---|---|---|
| Full or Partial Out-of-Pocket Remediation Expenses | $ 68,095 | |
| | | |
| Other Damages | | |
| Alternate Living Expenses | $ 54,000 | *Exh. 14.1* |
| Personal Property Damage Expense | 463 | *Exh. 14.1* |
| Additional Damages | - | |
| | $ 54,463 | |
| | | |
| Lost Equity | TBD | |
| | | |
| Diminution in Value | TBD | |
| | | |
| Loss of Use and Enjoyment | TBD | |
| | | |
| Punitive Damages | TBD | |

Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 406 of 802
Case 2:11-cv-22408-MCE Document 272 Entered on FLSD Docket 08/15/2019 Page 223 of
172

Exhibit 14.1
Damage Claims Detail - Tracy Nguyen & Mai Tuyen

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Remediation | Alex Fite, State Certified Air Cond., | Fix A/C | $ 3,957 | 2/23/2013 | | Invoice & Check | N/A | Exhibit 11 | 16&17 |
| Remediation | J & A Stucco Drywall | Drywall - Permit | 5,000 | 1/14/2015 | | Check | N/A | Exhibit 11 | 3 |
| Remediation | J & A Stucco Drywall | Drywall - Removed | 12,000 | 2/28/2015 | X | Contract | N/A | Exhibit 11 | 1 to 2 |
| Remediation | J & A Stucco Drywall | Drywall, Base Board,Trim | 15,000 | 3/18/2015 | | Check | N/A | Exhibit 11 | 3 |
| Remediation | J & A Stucco Drywall | Drywall - Ready for Inspection | 5,000 | 4/5/2015 | X | Contract | N/A | Exhibit 11 | 1 to 2 |
| Remediation | J & A Stucco Drywall | Drywall - CO | 6,000 | 4/5/2015 | X | Contract | N/A | Exhibit 11 | 1 to 2 |
| Remediation | Alberto Perez (J & A Stucco) | Electricity | 4,500 | 2/15/2015 | | Check & Bank Statement | N/A | Exhibit 11 | 5 to 8 |
| Remediation | Alberto Perez (J & A Stucco) | Electricity | 2,500 | 3/5/2015 | | Check & Bank Statement | N/A | Exhibit 11 | 9 to 11 |
| Remediation | J & A Stucco Drywall | Electricity | 2,000 | 4/1/2015 | X | Contract | N/A | Exhibit 11 | 1 to 2 |
| Remediation | J & A Stucco Drywall | Tile | 3,000 | 4/1/2015 | X | Contract | N/A | Exhibit 11 | 1 to 2 |
| Remediation | J & A Stucco Drywall | Tile | 3,000 | 4/1/2015 | X | Contract | N/A | Exhibit 11 | 1 to 2 |
| Remediation | J & A Stucco Drywall | Plumbing | 3,500 | 4/1/2015 | X | Contract | N/A | Exhibit 11 | 1 to 2 |
| Remediation | Alex Fite, State Certified Air Cond., | Fix A/C | 1,500 | 4/3/2015 | | Invoice & Check | N/A | Exhibit 11 | 18 to 21 |
| Remediation | Alex Fite, State Certified Air Cond., | Fix A/C | 1,138 | 4/3/2015 | X | Invoice & Check | N/A | Exhibit 11 | 18 to 21 |
| **Remediation Total** | | | 68,095 | | | | | | |
| Alternate Living Expenses | Tuyen Mai | Rent | $ 900 | 5/1/2010 | x | Depo/Letter | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 6/1/2010 | x | Depo/Letter | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 7/1/2010 | x | Depo/Letter | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 8/1/2010 | x | Depo/Letter | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 9/1/2010 | x | Depo/Letter | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 10/1/2010 | x | Depo/Letter | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 11/1/2010 | x | Depo/Letter | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 12/1/2010 | x | Depo/Letter | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 1/1/2011 | x | Depo/Letter | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 2/1/2011 | x | Depo/Letter | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 3/1/2011 | x | Depo/Letter | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 4/1/2011 | x | Depo/Letter | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 5/1/2011 | x | Depo/Letter | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 6/1/2011 | x | Depo/Letter | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 7/1/2011 | x | Closing Statement/Depo | N/A | 365784 | 1 |
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 8/1/2011 | x | Closing Statement/Depo | N/A | 365784 | 1 |
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 9/1/2011 | x | Closing Statement/Depo | N/A | 365784 | 1 |
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 10/1/2011 | x | Closing Statement/Depo | N/A | 365784 | 1 |
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 11/1/2011 | x | Closing Statement/Depo | N/A | 365784 | 1 |
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 12/1/2011 | x | Closing Statement/Depo | N/A | 365784 | 1 |
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 1/1/2012 | x | Closing Statement/Depo | N/A | 365784 | 1 |
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 2/1/2012 | x | Closing Statement/Depo | N/A | 365784 | 1 |

Exhibit 14.1
Damage Claims Detail - Tracy Nguyen & Mai Tuyen

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 3/1/2012 | x | Closing Statement/Depo | N/A | 365784 | 1 |
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 4/1/2012 | x | Closing Statement/Depo | N/A | 365784 | 1 |
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 5/1/2012 | x | Closing Statement/Depo | N/A | 365784 | 1 |
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 6/1/2012 | x | Closing Statement/Depo | N/A | 365784 | 1 |
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 7/1/2012 | x | Closing Statement/Depo | N/A | 365784 | 1 |
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 8/1/2012 | x | Closing Statement/Depo | N/A | 365784 | 1 |
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 9/1/2012 | x | Closing Statement/Depo | N/A | 365784 | 1 |
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 10/1/2012 | x | Closing Statement/Depo | N/A | 365784 | 1 |
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 11/1/2012 | x | Closing Statement/Depo | N/A | 365784 | 1 |
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 12/1/2012 | x | Closing Statement/Depo | N/A | 365784 | 1 |
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 1/1/2013 | x | Closing Statement/Depo | N/A | 365784 | 1 |
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 2/1/2013 | x | Closing Statement/Depo | N/A | 365784 | 1 |
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 3/1/2013 | x | Closing Statement/Depo | N/A | 365784 | 1 |
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 4/1/2013 | x | Closing Statement/Depo | N/A | 365784 | 1 |
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 5/1/2013 | x | Closing Statement/Depo | N/A | 365784 | 1 |
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 6/1/2013 | x | Closing Statement/Depo | N/A | 365784 | 1 |
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 7/1/2013 | x | Closing Statement/Depo | N/A | 365784 | 1 |
| Alternate Living Expenses | Tuyen Mai - Loaned Money for House | Repay Mother | 900 | 8/1/2013 | x | Closing Statement/Depo | N/A | 365784 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 9/1/2013 | | Receipt | N/A | 136388 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 10/1/2013 | | Receipt | N/A | 136388 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 11/1/2013 | x | Depo | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 12/1/2013 | x | Depo | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 1/1/2014 | x | Depo | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 2/1/2014 | x | Depo | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 3/1/2014 | x | Depo | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 4/1/2014 | x | Depo | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 5/1/2014 | x | Depo | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 6/1/2014 | x | Depo | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 7/1/2014 | x | Depo | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 8/1/2014 | x | Depo | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 9/1/2014 | x | Depo | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 10/1/2014 | x | Depo | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 11/1/2014 | x | Depo | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 12/1/2014 | x | Depo | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 1/1/2015 | x | Depo | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 2/1/2015 | x | Depo | N/A | 133154 | 1 |
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 3/1/2015 | x | Depo | N/A | 133154 | 1 |

Exhibit 14.1
Damage Claims Detail - Tracy Nguyen & Mai Tuyen

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/Doc. ID | PDF Page No. |
|------|--------|-------------|--------|------|--------------|----------------|-------|-----------------|--------------|
| Alternate Living Expenses | Tuyen Mai | Rent | 900 | 4/1/2015 | x | Depo | N/A | 133154 | 1 |
| **Alternate Living Expenses Total** | | | $ 54,000 | | | | | | |
| Personal Property Damage Expense | Central Air Conditioning Inc. | Fix A/C | $ 169 | 8/23/2007 | | Invoice | N/A | Exhibit 8 | 5&6 |
| Personal Property Damage Expense | Central Air Conditioning Inc. | Fix A/C | 152 | 8/21/2008 | | Invoice | N/A | Exhibit 8 | 3&4 |
| Personal Property Damage Expense | Central Air Conditioning Inc. | Fix A/C | 142 | 5/28/2010 | | Invoice | N/A | Exhibit 8 | 1&2 |
| **Personal Property Damages Expense Total** | | | $ 463 | | | | | | |

14.A
Documents and Other Information Considered - Tracy Nguyen & Mai Tuyen

*Chinese Drywall Litigation Involving Priority Claimants*

| | | | | *Bate Stamp (if applicable)* | |
|---|---|---|---|---|---|
| No. | Claimant | General Description | | First Page | Last Page |

**A. Pleadings and Other Legal Documents:**

| No. | Claimant | General Description | First Page | Last Page |
|---|---|---|---|---|
| 1 | All | Trial Plan for Property Damage Claims and Scheduling Order dated November 16, 2018 | | |
| 2 | Nguyen | Priority Claimant Tracy Nguyen Answers to Interrogatories, dated November 30, 2018 | | |
| 3 | Nguyen | Priority Claimant Tracy Nguyen Answers to Interrogatories - 2nd Amended, dated | | |
| 4 | Nguyen | Priority Claimant Tracy Nguyen Answers to Defendant's Second Set of Interrogatories, dated | | |
| 5 | Nguyen | Priority Claimant Tracy Nguyen First Amended Answers to Defendants' Second Set of Interrogatories, dated November 30, 2018 | | |
| 6 | Nguyen | Tracy Nguyen Third Amended Supplemental Profile Plaintiff Profile Form, dated January 8, 2019 | | |

**B. Depositions & Corresponding Exhibits:**

| No. | Claimant | General Description | First Page | Last Page |
|---|---|---|---|---|
| 1 | Nguyen | Deposition Transcript of Tracy Nguyen, dated December 6, 2018 | | |
| 2 | Nguyen | Deposition Transcript of Mai Tuyen, dated January 8, 2019 | | |
| 3 | Nguyen | Acknowledgment of Deponent Tracy Nguyen, dated January 8, 2019 | | |
| 4 | Nguyen | Deposition Exhibit 01 - Unlimited Power of Attorney | | |
| 5 | Nguyen | Deposition Exhibit 02 - General Warranty Deed | MaiDepo000026 | MaiDepo000026 |
| 6 | Nguyen | Deposition Exhibit 03 - 2018 Real Estate Informational Notice of Ad Valorem Taxes and Non-Ad Valorem Assessments for Lee County, Florida | MaiDepo000120 | MaiDepo000145 |
| 7 | Nguyen | Deposition Exhibit 04 - Estimate and Payments - Re: Chinese Drywall Remediation | MaiDepo000304 | MaiDepo000332 |
| 8 | Nguyen | Deposition Exhibit 05 - August 23, 2007 Central Aire Conditioning Inc. Invoice | MaiDepo000011 | MaiDepo000011 |
| 9 | Nguyen | Deposition Exhibit 06 - Handwritten Rent Agreement | MaiDepo000013 | MaiDepo000013 |
| 10 | Nguyen | Deposition Exhibit 07 - Two Handwritten Receipts for Rent | MaiDepo000014 | MaiDepo000014 |
| 11 | Nguyen | Deposition Exhibit 08 - Special Warranty Deed | MaiDepo000333 | MaiDepo000335 |
| 12 | Nguyen | Deposition Exhibit 09 - Settlement Statement (HUD-1) | MaiDepo000336 | MaiDepo000344 |
| 13 | Nguyen | Deposition Exhibit 10 - Plaintiff Profile Form - Residential Properties | NguyenT00001 | NguyenT000009 |
| 14 | Nguyen | Deposition Exhibit 11 - Supplemental Plaintiff Profile Form | MaiDepo000022 | MaiDepo000029 |
| 15 | Nguyen | Deposition Exhibit 12 - First Amended Supplemental Plaintiff Profile Form | MaiDepo000030 | MaiDepo000036 |
| 16 | Nguyen | Deposition Exhibit 13 - Quitclaim Deed | | |
| 17 | Nguyen | Deposition Exhibit 01 - General Warranty Deed | NguyenT00039 | NguyenT00039 |
| 18 | Nguyen | Deposition Exhibit 02 - Legend Custom Builders, Inc. Change Order | | |
| 19 | Nguyen | Deposition Exhibit 03 - Mortgage | | |
| 20 | Nguyen | Deposition Exhibit 04 - 2018 Real Estate Informational Notice of Ad Valorem Taxes and Non-Ad Valorem Assessments for Lee County, Florida | | |
| 21 | Nguyen | Deposition Exhibit 05 - Handwritten Rent Agreement | | |
| 22 | Nguyen | Deposition Exhibit 06 - Rent Receipts | | |
| 23 | Nguyen | Deposition Exhibit 07 - Settlement Statement (HUD-1) | | |
| 24 | Nguyen | Deposition Exhibit 08 - Central Aire Conditioning Inc. Invoice | | |
| 25 | Nguyen | Deposition Exhibit 09 - The Tayler Model Floor Plan | | |
| 26 | Nguyen | Deposition Exhibit 10 - Allied Home Inspections Report | | |
| 27 | Nguyen | Deposition Exhibit 11 - Estimate - J & A Stucco Drywall Inc. | | |
| 28 | Nguyen | Deposition Exhibit 12 - Exhibit B - Environmental Certificate | | |
| 29 | Nguyen | Deposition Exhibit 13 - Drywall Installation Certification | | |
| 30 | Nguyen | Deposition Exhibit 14 - Contractor Certification | | |

14.A
Documents and Other Information Considered - Tracy Nguyen & Mai Tuyen

*Chinese Drywall Litigation Involving Priority Claimants*

Bate Stamp (if applicable)

| No. | Claimant | General Description | First Page | Last Page |
|-----|----------|---------------------|------------|-----------|
| 31 | Nguyen | Deposition Exhibit 15 - Plaintiff Profile Form - Residential Properties | NguyenT00001 | NguyenT00039 |
| 32 | Nguyen | Deposition Exhibit 16 - Supplemental Plaintiff Profile Form | | |
| 33 | Nguyen | Deposition Exhibit 17 - Check Copies - Chinese Drywall Settlement Program | | |
| 34 | Nguyen | Deposition Exhibit 18 - Check Copies - Chinese Drywall Settlement Program | | |

C. Supporting Documentation

| | | | | |
|-----|----------|---------------------|------------|-----------|
| 1 | Nguyen | Tracy Nguyen Out of Pocket Damages Summary Provided by Counsel | | |
| 2 | Nguyen | 132940 - Nguyen HVAC repairs by Central Aire Conditioning | | |
| 3 | Nguyen | 133154 - Nguyen Letter from Tuyen Thanh Mai re Lease Agreement | | |
| 4 | Nguyen | 136388 - Nguyen Receipts for rent from Tuyen Thanh Mai | | |
| 5 | Nguyen | 365782 - Nguyen Remediation repairs done by J&A Stucco and Alex Fite | | |
| 6 | Nguyen | 365784 - Nguyen HUD Settlement Statement for ALE | | |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-22408-Civ-COOKE

EDUARDO AND CARMEN AMORIN, *et al.*,
individually and on behalf of others similarly
situated,

        Plaintiffs,

vs.

TAISHAN GYPSUM CO., LTD., f/k/a
SHANDONG TIASHE DONGXIN CO. LTD.,
*et al.*,

        Defendants.

_____

# Exhibit 15 (Revised)

## Calculations of Damages for Priority Claimants

# Jeovany & Monica Nunez

EXHIBIT TO THE EXPERT WITNESS REPORT OF:
MICHAEL P. ELKIN, CPA/CFF/ABV, CFE
IN THE PRIORITY CLAIMANT TRIAL

April 26, 2019



Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 412 of 802
Case 1:11-cv-22408-MGC Document 272 Entered on FLSD Docket 08/15/2019 Page 229 of
172

Exhibit 15 (Revised)
Data and Damage Summary - Jeovany & Monica Nunez

*Chinese Drywall Litigation Involving Priority Claimants*

| Data: | | Reference / Notes |
|---|---|---|
| Address of Affected property | 8049 West 36th Avenue | *SPPF* |
| | Hialeah FL 33018 | *SPPF* |
| Date Affected property acquired | January 10, 2007 | *SPPF* |
| Date Chinese drywall installed | October-06 | *SPPF* |
| Date moved into Affected property | January 10, 2007 | *SPPF* |
| Date first aware of Chinese drywall | March-10 | *SPPF* |
| Move out date to alternate living | January 1, 2012 | *SPPF* |
| Date returned to Affected property | Never | *ROG 1, #2* |
| End date for alternate living expenses | Never | *ROG 1, #2* |
| Still own property? | N | *SPPF* |
| Bankruptcy caused by damage? | N | *SPPF* |
| Foreclosure or short sale? | Y | *SPPF* |
| Affected property sold? | Y | *ROG 1, #2* |
| Sale date | August 22, 2017 | *SPPF* |
| Type of sale | Foreclosure | *SPPF* |
| Remediation status | None | *SPPF* |
| Remediation period | N/A | *SPPF* |

| Damage Summary: | | |
|---|---|---|
| Full or Partial Out-of-Pocket Remediation Expenses | $ - | |
| Other Damages | | |
| Alternate Living Expenses | $ 105,733 | *Exh. 15.1* |
| Personal Property Damage Expense | - | |
| Additional Damages | - | |
| | $ 105,733 | |
| Lost Equity | $ 41,653 | *Exh. 15.2 (Revised)* |
| Diminution in Value | TBD | |
| Loss of Use and Enjoyment | TBD | |
| Punitive Damages | TBD | |

Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 413 of 802
Case 2:11-cv-22408-MCE Document 2 72 Entered on FLSD Docket 08/15/2013 Page 230 of
172

Exhibit 15.1

Damage Claims Detail - Jeovany & Monica Nunez

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|------|--------|-------------|--------|------|--------------|----------------|-------|------------------|--------------|
| Alternate Living Expenses | Move For Less | Moving | $ 375 | 12/26/2011 | X | Moving Quote | N/A | Exhibit 24 | 1 |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 1/1/2012 | X | Lease Agreement | N/A | Exhibit 11 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 2/1/2012 | X | Lease Agreement | N/A | Exhibit 11 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 3/1/2012 | X | Lease Agreement | N/A | Exhibit 11 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 4/1/2012 | X | Lease Agreement | N/A | Exhibit 11 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 5/1/2012 | X | Lease Agreement | N/A | Exhibit 11 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 6/1/2012 | X | Lease Agreement | N/A | Exhibit 11 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 7/1/2012 | X | Lease Agreement | N/A | Exhibit 11 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 8/1/2012 | X | Lease Agreement | N/A | Exhibit 11 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 9/1/2012 | X | Lease Agreement | N/A | Exhibit 11 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 10/1/2012 | X | Lease Agreement | N/A | Exhibit 11 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 11/1/2012 | X | Lease Agreement | N/A | Exhibit 11 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 12/1/2012 | X | Lease Agreement | N/A | Exhibit 11 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 1/1/2013 | X | Lease Agreement | N/A | Exhibit 11 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 2/1/2013 | X | Lease Agreement | N/A | Exhibit 11 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 3/1/2013 | X | Lease Agreement | N/A | Exhibit 11 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 4/1/2013 | X | Lease Agreement | N/A | Exhibit 11 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 5/1/2013 | X | Lease Agreement | N/A | Exhibit 11 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 6/1/2013 | X | Lease Agreement | N/A | Exhibit 11 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 7/1/2013 | X | Lease Agreement | N/A | Exhibit 11 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 8/1/2013 | X | Lease Agreement | N/A | Exhibit 11 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 9/1/2013 | X | Lease Agreement | N/A | Exhibit 11 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 10/1/2013 | X | Lease Agreement | N/A | Exhibit 11 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 11/1/2013 | X | Lease Agreement | N/A | Exhibit 11 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,450 | 12/1/2013 | X | Lease Agreement | N/A | Exhibit 11 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 1/1/2014 | X | Lease Agreement | N/A | Exhibit 12 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 2/1/2014 | X | Lease Agreement | N/A | Exhibit 12 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 3/1/2014 | X | Lease Agreement | N/A | Exhibit 12 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 4/1/2014 | X | Lease Agreement | N/A | Exhibit 12 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 5/1/2014 | X | Lease Agreement | N/A | Exhibit 12 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 6/1/2014 | X | Lease Agreement | N/A | Exhibit 12 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 7/1/2014 | X | Lease Agreement | N/A | Exhibit 12 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 8/1/2014 | X | Lease Agreement | N/A | Exhibit 12 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 9/1/2014 | X | Lease Agreement | N/A | Exhibit 12 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 10/1/2014 | X | Lease Agreement | N/A | Exhibit 12 | |

Exhibit 15.1
Damage Claims Detail - Jeovany & Monica Nunez

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|------|--------|-------------|--------|------|--------------|----------------|-------|------------------|--------------|
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 11/1/2014 | X | Lease Agreement | N/A | Exhibit 12 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 12/1/2014 | X | Lease Agreement | N/A | Exhibit 12 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 1/1/2015 | X | Lease Agreement | N/A | Exhibit 12 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 2/1/2015 | X | Lease Agreement | N/A | Exhibit 12 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 3/1/2015 | X | Lease Agreement | N/A | Exhibit 12 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 4/1/2015 | X | Lease Agreement | N/A | Exhibit 12 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 5/1/2015 | X | Lease Agreement | N/A | Exhibit 12 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 6/1/2015 | X | Lease Agreement | N/A | Exhibit 12 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 7/1/2015 | X | Lease Agreement | N/A | Exhibit 12 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 8/1/2015 | X | Lease Agreement | N/A | Exhibit 12 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 9/1/2015 | X | Lease Agreement | N/A | Exhibit 12 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 10/1/2015 | X | Lease Agreement | N/A | Exhibit 12 | |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 11/2/2015 | | Check | N/A | Exhibit 14 | 5 to 7 |
| Alternate Living Expenses | FPL | Rental - Electric | 118 | 11/16/2015 | | Bank Statement | N/A | Exhibit 14 | 5 |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,500 | 11/30/2015 | | Check | N/A | Exhibit 14 | 14 to 15 |
| Alternate Living Expenses | FPL | Rental - Electric | 143 | 12/14/2015 | | Bank Statement | N/A | Exhibit 14 | 13 |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 12/29/2015 | | Check | N/A | Exhibit 14 | 21 to 23 |
| Alternate Living Expenses | FPL | Rental - Electric | 136 | 1/11/2016 | | Bank Statement | N/A | Exhibit 14 | 20 |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 2/1/2016 | | Check | N/A | Exhibit 14 | 31 to 33 |
| Alternate Living Expenses | FPL | Rental - Electric | 99 | 2/8/2016 | | Bank Statement | N/A | Exhibit 14 | 30 |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 2/29/2016 | | Check | N/A | Exhibit 14 | 40 to 41 |
| Alternate Living Expenses | FPL | Rental - Electric | 98 | 3/7/2016 | | Bank Statement | N/A | Exhibit 14 | 39 |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 3/31/2016 | | Check | N/A | Exhibit 14 | 49 to 51 |
| Alternate Living Expenses | FPL | Rental - Electric | 105 | 4/18/2016 | | Bank Statement | N/A | Exhibit 14 | 49 |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 5/2/2016 | | Check | N/A | Exhibit 14 | 57 to 59 |
| Alternate Living Expenses | FPL | Rental - Electric | 99 | 5/16/2016 | | Bank Statement | N/A | Exhibit 14 | 56 |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 6/1/2016 | | Check | N/A | Exhibit 14 | 65 to 67 |
| Alternate Living Expenses | FPL | Rental - Electric | 116 | 6/13/2016 | | Bank Statement | N/A | Exhibit 14 | 65 |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 6/30/2016 | | Check | N/A | Exhibit 14 | 73 to 75 |
| Alternate Living Expenses | FPL | Rental - Electric | 94 | 7/8/2016 | | Bank Statement | N/A | Exhibit 14 | 72 |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 8/1/2016 | | Check | N/A | Exhibit 14 | 82 to 83 |
| Alternate Living Expenses | FPL | Rental - Electric | 109 | 8/8/2016 | | Bank Statement | N/A | Exhibit 14 | 81 |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 8/30/2016 | | Check | N/A | Exhibit 14 | 89 to 91 |
| Alternate Living Expenses | FPL | Rental - Electric | 133 | 9/6/2016 | | Bank Statement | N/A | Exhibit 14 | 88 |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 10/3/2016 | | Check | N/A | Exhibit 14 | 98 to 99 |

Exhibit 15.1
Damage Claims Detail - Jeovany & Monica Nunez

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|------|--------|-------------|--------|------|--------------|----------------|-------|-----------------|--------------|
| Alternate Living Expenses | FPL | Rental - Electric | 127 | 10/19/2016 | | Bank Statement | N/A | Exhibit 14 | 98 |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 11/1/2016 | | Check | N/A | Exhibit 14 | 106 to 107 |
| Alternate Living Expenses | FPL | Rental - Electric | 116 | 11/14/2016 | | Bank Statement | N/A | Exhibit 14 | 105 |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 11/29/2016 | | Check | N/A | Exhibit 14 | 114 to 115 |
| Alternate Living Expenses | FPL | Rental - Electric | 116 | 12/12/2016 | | Bank Statement | N/A | Exhibit 14 | 113 |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 12/28/2016 | | Check | N/A | Exhibit 14 | 124 to 125 |
| Alternate Living Expenses | FPL | Rental - Electric | 115 | 1/9/2017 | | Bank Statement | N/A | Exhibit 14 | 123 |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 2/1/2017 | | Check | N/A | Exhibit 14 | 131 to 133 |
| Alternate Living Expenses | FPL | Rental - Electric | 117 | 2/6/2017 | | Bank Statement | N/A | Exhibit 14 | 130 |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 2/28/2017 | | Check | N/A | Exhibit 14 | 140 to 141 |
| Alternate Living Expenses | FPL | Rental - Electric | 119 | 3/6/2017 | | Bank Statement | N/A | Exhibit 14 | 139 |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 4/3/2017 | | Check | N/A | Exhibit 14 | 147 to 149 |
| Alternate Living Expenses | FPL | Rental - Electric | 119 | 4/7/2017 | | Bank Statement | N/A | Exhibit 14 | 147 |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 5/1/2017 | | Check | N/A | Exhibit 14 | 156 to 159 |
| Alternate Living Expenses | FPL | Rental - Electric | 118 | 5/15/2017 | | Bank Statement | N/A | Exhibit 14 | 156 |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 5/30/2017 | | Check | N/A | Exhibit 14 | 165 to 167 |
| Alternate Living Expenses | FPL | Rental - Electric | 118 | 6/19/2017 | | Bank Statement | N/A | Exhibit 14 | 165 |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 7/3/2017 | | Check | N/A | Exhibit 14 | 174 to 175 |
| Alternate Living Expenses | FPL | Rental - Electric | 121 | 7/10/2017 | | Bank Statement | N/A | Exhibit 14 | 173 |
| Alternate Living Expenses | Xiao Qi Guan | Rent Payment | 1,600 | 8/2/2017 | | Check | N/A | Exhibit 14 | 182 to 183 |
| Alternate Living Expenses | FPL | Rental - Electric | 122 | 8/7/2017 | | Bank Statement | N/A | Exhibit 14 | 181 |
| Alternate Living Expenses Total | | | $ 105,733 | | | | | | |

Exhibit 15.2 (Revised)
Lost Equity - Jeovany & Monica Nunez

*Chinese Drywall Litigation Involving Priority Claimants*

| | | | | Source Document |
|---|---|---|---|---|
| Initial Acquisition | | | | |
| Purchase Price | $ | 269,990 | | Purchase Agreement |
| Settlement Charges | | 11,605 | | Doc ID. - 365754 HUD Statement 01/12/07 |
| Total Gross Amount Due from Claimant | $ | 281,595 | | |
| | | | | |
| Less | | | | |
| Deposit Made by Claimant | $ | (27,000) | | Doc ID. - 365754 HUD Statement 01/12/07 |
| Borrowings by Claimant | | (241,339) | | Doc ID. - 365754 HUD Statement 01/12/07 |
| Credits | | (4,035) | | Doc ID. - 365754 HUD Statement 01/12/07 |
| Amount Due from Claimant at Close | $ | 9,221 | | |
| | | | | |
| Funds Paid by Claimant | | | | |
| Deposit Paid with Contract | $ | 27,000 | | Purchase Agreement |
| Closing Cash payments | | 9,221 | | Doc ID. - 365754 HUD Statement 01/12/07 |
| Adjustments from Closing Statement at Purchase: | | | | |
| Line 110. Proration of Maintenance | | (109) | * | Doc ID. - 365754 HUD Statement 01/12/07 |
| Line 111. February Maintenance | | (168) | * | Doc ID. - 365754 HUD Statement 01/12/07 |
| Line 211. County Taxes | | 35 | * | Doc ID. - 365754 HUD Statement 01/12/07 |
| Line 901. Interest Expense | | (947) | * | Doc ID. - 365754 HUD Statement 01/12/07 |
| Adjusted Payments for Initial Purchase | a | $ | 35,032 | |
| | | | | |
| 1st Mortgage | | | | |
| Mortgage Beginning Balance | $ | 215,992 | | Doc ID. - 365754 HUD Statement 01/12/07 |
| Mortgage Balance at Payoff | | 209,372 | | Final Judgment of Foreclosure |
| Principal Payments Made | b | $ | 6,620 | |
| | | | | |
| 2nd Mortgage | | | | |
| Mortgage Beginning Balance | $ | 26,999 | | Doc ID. - 365754 HUD Statement 01/12/07 |
| Mortgage Balance at Payoff [1] | | 26,999 | | |
| Principal Payments Made | c | $ | - | |
| | | | | |
| Total Lost Equity | = a + b + c | $ | 41,653 | |

.

Notes:
[1] Per the HUD Statement there was a 2nd mortgage taken out taken out
in the amount of $26,999. To date no information has been provided to verify the principal payments
on this loan. Should that information be provided this Lost Equity is subject to change.

15.A
Documents and Other Information Considered - Jeovany & Monica Nunez

*Chinese Drywall Litigation Involving Priority Claimants*

*Bate Stamp (if applicable)*

| No. | Claimant | General Description | First Page | Last Page |
|-----|----------|---------------------|------------|-----------|

**A. Pleadings and Other Legal Documents:**

| 1 | All | Trial Plan for Property Damage Claims and Scheduling Order dated November 16, 2018 | | |
| 2 | Nunez | Plaintiff Jeovany Nunez Answers to Interrogatories, dated November 30, 2018 | | |
| 3 | Nunez | Plaintiff Jeovany Nunez Answers to Interrogatories, dated November 30, 2018 | | |
| 4 | Nunez | Plaintiff Jeovany Nunez Supplemental Plaintiff Profile Form - Amended, dated | | |
| 5 | Nunez | Plaintiff Jeovany Nunez First Amended Response to Defendants' Request for Production of Documents, dated January 14, 2019 | | |
| 6 | Nunez | Plaintiff Jeovany Nunez First Amended Response to Defendants' Second Request for Production of Documents, dated January 14, 2019 | | |
| 7 | Nunez | Plaintiff Monica Nunez First Amended Response to Defendants' Request for Production of Documents, dated January 14, 2019 | | |
| 8 | Nunez | Plaintiff Monica Nunez First Amended Response to Defendants' Second Request for Production of Documents, dated January 14, 2019 | | |
| 9 | Nunez | Jeovany Nunez Response to Defendants' Second Set of Interrogatories, dated December 4, 2018 | | |
| 10 | Nunez | Monica Nunez Response to Defendants' Second Set of Interrogatories, dated December 4, 2018 | | |

**B. Depositions & Corresponding Exhibits:**

| 1 | Nunez | Deposition Transcript of Jeovany Nunez, dated December 19, 2018 | | |
| 2 | Nunez | Deposition Transcript of Monica Nunez, dated December 19, 2018 | | |
| 3 | Nunez | Errata Sheet Jeovany Nunez, dated December 19, 2018 | | |
| 4 | Nunez | Acknowledgment of Deponent Jeovany Nunez, dated January 11, 2019 | | |
| 5 | Nunez | Deposition Exhibit 01 - Purchase Agreement for Shoma Homes Splendido, a Condominium | | |
| 6 | Nunez | Deposition Exhibit 02 - Warranty Deed | | |
| 7 | Nunez | Deposition Exhibit03 - Declaration of Correctness of Square Footage on Chinese Drywall Client(s) Property for Remediation Damages | | |
| 8 | Nunez | Deposition Exhibit 04 - Miami-Dade County Property Information Report | | |
| 9 | Nunez | Deposition Exhibit 05 - Subcontract Agreement | | |
| 10 | Nunez | Deposition Exhibit 06 - Oscar Air Conditioning, Inc. Invoices | | |
| 11 | Nunez | Deposition Exhibit 07 - Photographs - Air-Conditioning Unit | | |
| 12 | Nunez | Deposition Exhibit 08 - Photographs - Bathroom Faucet Piping | | |
| 13 | Nunez | Deposition Exhibit 09 - Chinese Drywall Screening, LLC March 26, 2010 Report | | |
| 14 | Nunez | Deposition Exhibit 10 - December 22, 2011 Letter from Baron & Budd, P.C. to JP Morgan Chase and Fannie Mae | | |
| 15 | Nunez | Deposition Exhibit 11 - 2012 to 2013 Residential Lease | | |
| 16 | Nunez | Deposition Exhibit 12 - 2014 to 2015 Residential Lease | | |
| 17 | Nunez | Deposition Exhibit 13 - 2016 to 2017 Residential Lease | | |
| 18 | Nunez | Deposition Exhibit 14 - Bank of America Bank Statements | | |
| 19 | Nunez | Deposition Exhibit 15 - Chase Mortgage Loan Payment History | | |
| 20 | Nunez | Deposition Exhibit 16 - First Mortgage | | |
| 21 | Nunez | Deposition Exhibit 17 - Second Mortgage | | |
| 22 | Nunez | Deposition Exhibit 18 - June 14, 2010 E-mail from Jeovany Nunez to Steve Bronzy - Subject: Acct: 5304359424 | | |
| 23 | Nunez | Deposition Exhibit 19 - January 5, 2010 E-mail from PNMAC - Subject: Online Draft | | |
| 24 | Nunez | Deposition Exhibit 20 - February 2, 2014 E-mail from PNMAC - Subject: Online Draft | | |

15.A
Documents and Other Information Considered - Jeovany & Monica Nunez

*Chinese Drywall Litigation Involving Priority Claimants*

| | | | Bate Stamp (if applicable) | |
| No. | Claimant | General Description | First Page | Last Page |
|---|---|---|---|---|
| 25 | Nunez | Deposition Exhibit 21 - In Rem Final Judgment of Foreclosure | | |
| 26 | Nunez | Deposition Exhibit 22 - Certificate of Sale | | |
| 27 | Nunez | Deposition Exhibit 23 - First Amended Supplemental Plaintiff Profile Form | | |
| 28 | Nunez | Deposition Exhibit 24 - Move For Less Quote | | |
| 29 | Nunez | Deposition Exhibit 25 - Plaintiff Jeovany Nunez's Response to Defendants' Interrogatories | | |
| 30 | Nunez | Deposition Exhibit 09 - Chinese Drywall Screening, LLC March 26, 2010 Report | | |
| 31 | Nunez | Deposition Exhibit 23 - First Amended Supplemental Plaintiff Profile Form | | |

C. Supporting Documentation

| | | | | |
|---|---|---|---|---|
| 1 | Nunez | Nunez Damages Summary Provided by Counsel - Partially Redacted | | |
| 2 | Nunez | Doc ID. - 364594 2012-2013 Lease | | |
| 3 | Nunez | Doc ID. - 364595 2014-2015 Lease | | |
| 4 | Nunez | Doc ID. - 364596 2016-2017 Lease | | |
| 5 | Nunez | Doc ID. - 364593 - Moving Invoice | | |
| 6 | Nunez | Doc ID. - 364563 - AC Invoices | | |
| 7 | Nunez | Doc ID. 366577 - Nunez AC Invoices #1-6 | | |
| 8 | Nunez | Doc ID. - 365754 - Statement Settlements | | |
| 9 | Nunez | Mortgage Payment History - PBC 02.01.2019 | | |
| 10 | Nunez | Loan Documents PBC - 2.1.2019 | | |
| 11 | Nunez | Foreclosure Judgment 07.19.2017 - PBC 2.1.2019 | | |
| 12 | Nunez | Closing Documents 1.12.2007 - PBC 2.1.2019 | | |
| 13 | Nunez | Chase Statement - PBC 01.31.2019 | | |
| 14 | Nunez | Closing Documents - 2nd Mortgage 1.12.07 - PBC 1.31.2019 | | |
| 15 | Nunez | Purchase Agreement 04.26.2005 - PBC 01.31.2019 | | |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-22408-Civ-COOKE

EDUARDO AND CARMEN AMORIN, *et al.*,
individually and on behalf of others similarly
situated,

      Plaintiffs,

vs.

TAISHAN GYPSUM CO., LTD., f/k/a
SHANDONG TIASHE DONGXIN CO. LTD.,
*et al.*,

      Defendants.

_____

# Exhibit 16 (Revised)

**Calculations of Damages for Priority Claimants**

# Kelly & Lori O'Brien

EXHIBIT TO THE EXPERT WITNESS REPORT OF:
MICHAEL P. ELKIN, CPA/CFF/ABV, CFE
IN THE PRIORITY CLAIMANT TRIAL

April 26, 2019



Exhibit 16 (Revised)
Data and Damage Summary - Kelly & Lori O'Brien

*Chinese Drywall Litigation Involving Priority Claimants*

| Data: | | *Reference / Notes* |
|---|---|---|
| Address of Affected property | 3120 W. Wallcraft Avenue | *SPPF* |
| | Tampa, FL 33611 | *SPPF* |
| Date Affected property acquired | June 9, 2004 | *SPPF* |
| Date Chinese drywall installed | 2007 | *SPPF* |
| Date moved into Affected property | Began Construction in 2007 | *SPPF* |
| Date first aware of Chinese drywall | November-09 | *SPPF* |
| | | |
| Move out date to alternate living | November-10 | *ROG 1, #2* |
| Date returned to Affected property | Never | *ROG 1, #2* |
| End date for alternate living expenses | February 17, 2012 | *ROG 1, #2* |
| | | |
| Still own property? | N | *SPPF* |
| Bankruptcy caused by damage? | N | *SPPF* |
| Foreclosure or short sale? | N | *SPPF* |
| Affected property sold? | Y | *ROG 1, #2* |
| Sale date | February 17, 2012 | *SPPF* |
| Type of sale | Sale in Mitigation | *SPPF* |
| | | |
| Remediation status | None | *SPPF* |
| Remediation period | N/A | *SPPF* |

| Damage Summary: | | |
|---|---|---|
| Full or Partial Out-of-Pocket Remediation Expenses | $                -    | |
| | | |
| Other Damages | | |
| Alternate Living Expenses | $          10,494 | *Exh. 16.1 (Revised)* |
| Personal Property Damage Expense | 9,230 | *Exh. 16.1 (Revised)* |
| Additional Damages | -    | |
| | $          19,724 | |
| | | |
| Lost Equity | $        234,440 | *Exh. 16.2 (Revised)* |
| | | |
| Diminution in Value | TBD | |
| | | |
| Loss of Use and Enjoyment | TBD | |
| | | |
| Punitive Damages | TBD | |

Exhibit 16.1 (Revised)
Damage Claims Detail - Kelly & Lori O'Brien

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Alternate Living Expenses | Suntrust | Mortgage Payment | $ - * | 11/1/2010 | | Bank Account | OBrienDepo000079 | Exhibit 11 | 4 |
| Alternate Living Expenses | Citizens Property Insurance | Property Insurance | 1,599 | 11/17/2010 | | Invoice | | 366624 | 2 |
| Alternate Living Expenses | Suntrust | Mortgage Payment | 468 | 12/1/2010 | | Bank Account | OBrienDepo000079 | Exhibit 11 | 4 |
| Alternate Living Expenses | Suntrust | Mortgage Payment | 468 | 1/1/2011 | | Bank Account | OBrienDepo000079 | Exhibit 11 | 4 |
| Alternate Living Expenses | 3 Guys Moving | Moving Invoice | 460 | 1/8/2011 | | Invoice | OBrienDepo000153 | Exhibit 12 | 6 |
| Alternate Living Expenses | Suntrust | Mortgage Payment | 468 | 2/1/2011 | | Bank Account | OBrienDepo000079 | Exhibit 11 | 4 |
| Alternate Living Expenses | Suntrust | Mortgage Payment | 468 | 3/1/2011 | | Bank Account | OBrienDepo000079 | Exhibit 11 | 4 |
| Alternate Living Expenses | Suntrust | Mortgage Payment | 468 | 4/1/2011 | | Bank Account | OBrienDepo000079 | Exhibit 11 | 4 |
| Alternate Living Expenses | Suntrust | Mortgage Payment | 468 | 5/1/2011 | | Bank Account | OBrienDepo000079 | Exhibit 11 | 4 |
| Alternate Living Expenses | Suntrust | Mortgage Payment | 468 | 6/1/2011 | | Bank Account | OBrienDepo000079 | Exhibit 11 | 4 |
| Alternate Living Expenses | Suntrust | Mortgage Payment | 468 | 7/1/2011 | | Bank Account | OBrienDepo000079 | Exhibit 11 | 4 |
| Alternate Living Expenses | Suntrust | Mortgage Payment | 468 | 8/1/2011 | | Bank Account | OBrienDepo000079 | Exhibit 11 | 4 |
| Alternate Living Expenses | Suntrust | Mortgage Payment | 468 | 9/1/2011 | | Bank Account | OBrienDepo000079 | Exhibit 11 | 4 |
| Alternate Living Expenses | Suntrust | Mortgage Payment | 468 | 10/1/2011 | | Bank Account | OBrienDepo000079 | Exhibit 11 | 4 |
| Alternate Living Expenses | Suntrust | Mortgage Payment | 468 | 11/1/2011 | | Bank Account | OBrienDepo000079 | Exhibit 11 | 4 |
| Alternate Living Expenses | Hillsborough County Tax Collector | Property Taxes | 1,421 | 11/21/2011 | | Receipt | | 366624 | 1 |
| Alternate Living Expenses | Suntrust | Mortgage Payment | 468 | 12/1/2011 | | Bank Account | OBrienDepo000079 | Exhibit 11 | 4 |
| Alternate Living Expenses | Suntrust | Mortgage Payment | 468 | 1/1/2012 | | Bank Account | OBrienDepo000079 | Exhibit 11 | 4 |
| Alternate Living Expenses | Suntrust | Mortgage Payment | 468 | 2/1/2012 | | Bank Account | OBrienDepo000079 | Exhibit 11 | 4 |
| **Alternate Living Expenses Total** | | | **$ 10,494** | | | | | | |
| Personal Property Damage Expense | Morris Air Conditioning and Heating, Inc. | Repairs to Air Conditioning | $ 238 | 3/13/2008 | | Invoice | OBrienDepo000037 | Exhibit 6 | 2 |
| Personal Property Damage Expense | Morris Air Conditioning and Heating, Inc. | Repairs to Air Conditioning | 945 | 7/14/2008 | | Invoice | OBrienDepo000038 | Exhibit 6 | 3 |
| Personal Property Damage Expense | Morris Air Conditioning and Heating, Inc. | Repairs to Air Conditioning | 527 | 9/29/2008 | | Invoice | OBrienDepo000039 | Exhibit 6 | 4 |
| Personal Property Damage Expense | Morris Air Conditioning and Heating, Inc. | Repairs to Air Conditioning | 1,465 | 12/10/2008 | | Invoice | OBrienDepo000040 | Exhibit 6 | 5 |
| Personal Property Damage Expense | Morris Air Conditioning and Heating, Inc. | Repairs to Air Conditioning | 129 | 5/27/2009 | | Invoice | OBrienDepo000041 | Exhibit 6 | 6 |
| Personal Property Damage Expense | Morris Air Conditioning and Heating, Inc. | Repairs to Air Conditioning | 107 | 6/19/2009 | | Invoice | OBrienDepo000042 | Exhibit 6 | 7 |
| Personal Property Damage Expense | Morris Air Conditioning and Heating, Inc. | Repairs to Air Conditioning | 1,000 | 8/10/2009 | | Invoice | OBrienDepo000043 | Exhibit 6 | 8 |
| Personal Property Damage Expense | Sunstate Mechanical Contractors, Inc. | Replace Coils in Air Conditioning | 850 | 6/7/2010 | | Invoice | OBrienDepo000045 | Exhibit 6 | 10 |
| Personal Property Damage Expense | Sunstate Mechanical Contractors, Inc. | Replace Coils in Air Conditioning | 850 | 6/30/2010 | X | Invoice | OBrienDepo000046 | Exhibit 6 | 11 |
| Personal Property Damage Expense | Famous Tate Appliance & Bedding Centers | Mattress Replacement - Warranty | - * | 1/13/2011 | | Invoice | OBrienDepo000047 | Exhibit 6 | 12 |
| Personal Property Damage Expense | Famous Tate Appliance & Bedding Centers | Mattress Replacement | 3,120 * | 1/13/2011 | | Invoice | OBrienDepo000047 | Exhibit 6 | 12 |
| **Personal Property Damages Expense Total** | | | **$ 9,230** | | | | | | |

Exhibit 16.2 (Revised)
Lost Equity - Kelly & Lori O'Brien

*Chinese Drywall Litigation Involving Priority Claimants*

| | | | | Source Document |
|---|---|---|---|---|
| Initial Acquisition | | | | |
| Purchase Price | | $ | 185,000 | HUD Statement dated 6/9/04 Doc ID 222901 |
| Settlement Charges | | | 519 | HUD Statement dated 6/9/04 Doc ID 222901 |
| Total Gross Amount Due from Claimant | | $ | 185,519 | |
| | | | | |
| Less | | | | |
| Deposit Made by Claimant | | $ | (2,000) | HUD Statement dated 6/9/04 Doc ID 222901 |
| Borrowings by Claimant | | | - | HUD Statement dated 6/9/04 Doc ID 222901 |
| Credits | | | (794) | HUD Statement dated 6/9/04 Doc ID 222901 |
| Amount Due from Claimant at Close | | $ | 182,724 | |
| | | | | |
| Funds Paid by Claimant | | | | |
| Deposit paid with Contract | | $ | 2,000 | HUD Statement dated 6/9/04 Doc ID 222901 |
| Closing cash payments | | | 182,724 | HUD Statement dated 6/9/04 Doc ID 222901 |
| Adjustments from Closing Statement at Purchase | | | | |
| Line 211. County Taxes | | | 794 * | HUD Statement dated 6/9/04 Doc ID 222901 |
| Adjusted Payments for Initial Purchase | a | $ | 185,519 | |
| | | | | |
| Deposit with Contractor | b | $ | 10,000 | Construction Contract dated 1/10/06 Doc ID. 222901, Pg. 12-13 |
| | | | | |
| Mortgage | | | | |
| Construction Loan From Bank | | $ | 359,000 | Mortgage dated 2/20/06 Doc ID. 222905, Pg. 3 |
| Principal Payments on Construction Loan | c | | 184,945 | Agreement for Modification or Extension of Mortgage Doc ID 222905, Pg. 1 |
| Balance of Mortgage upon conversion of Construction Loan | | | 174,055 | Agreement for Modification or Extension of Mortgage Doc ID 222905, Pg. 1 |
| Mortgage Balance at Payoff | | | 143,275 | Doc ID. 365808 - O'Brien Wallcraft Mortgage 2010 - 2012, Pg. 41 |
| Principal Payments Made | d | | 30,780 | |
| | | | | |
| Total Principal Payments Made | | $ | 215,725 | |
| | | | | |
| Less: Cash Paid to Claimants upon Sale of Home | | $ | (176,652) | HUD Statement dated 2/17/12 Doc ID 361431, Pg. 1 |
| Adjustments from Closing Statement at Sale: | | | | |
| Line 511. County Taxes | | | (151) * | HUD Statement dated 2/17/12 Doc ID 361431, Pg. 1 |
| Adjusted Cash Paid to Claimants upon Sale of Home | e | $ | (176,803) | |
| | | | | |
| Total Lost Equity | = a + b + c + d + e | $ | 234,440 | |

Case 1:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 423 of 802
Case 1:11-cv-22408-MGC Document 272 entered on FLSD Docket 08/15/2014 Page 420 of
172

16.A
Documents and Other Information Considered - Kelly & Lori O'Brien

*Chinese Drywall Litigation Involving Priority Claimants*

*Bate Stamp (if applicable)*

| No. | Claimant | General Description | First Page | Last Page |
|-----|----------|--------------------|------------|-----------|
| **A. Pleadings and Other Legal Documents:** | | | | |
| 1 | All | Judge Cooke's Order, dated November 16, 2018 | | |
| 2 | O'Brien | Priority Claimant Kelly O'Brien Answers to Interrogatories, dated | | |
| 3 | O'Brien | Priority Claimant Kelly O'Brien Answers to Defendant's Second Set of Interrogatories, dated | | |
| 4 | O'Brien | Priority Claimant Lori O'Brien Answers to Interrogatories, dated | | |
| 5 | O'Brien | Priority Claimant Lori O'Brien Answers to Defendant's Second Set of Interrogatories, dated | | |
| 6 | O'Brien | Kelly O'Brien First Amended Supplemental Plaintiff Profile Form, dated December 5, 2018 | | |
| **B. Depositions & Corresponding Exhibits:** | | | | |
| 1 | O'Brien | Deposition Transcript of Lori O'Brien, dated December 17, 2018 | | |
| 2 | O'Brien | Deposition Transcript of Kelly O'Brien, dated December 17, 2018 | | |
| 3 | O'Brien | O'Brien 01 - Plaintiff Profile Form - Residential Properties | OBrienK00001 | OBrienK00021 |
| 4 | O'Brien | O'Brien 02 - Purchase Documents | OBrienDepo000049 | OBrienDepo000071 |
| 5 | O'Brien | O'Brien 03 - Final Statement From Steve R. Carter, Inc., Dated 3/23/2007 | OBrienDepo000319 | OBrienDepo000319 |
| 6 | O'Brien | O'Brien 04 - Mortgage | OBrienDepo000080 | OBrienDepo000087 |
| 7 | O'Brien | O'Brien 05 - Allied Home Inspections Report Dated 2/20/2010 | OBrienDepo000029 | OBrienDepo000035 |
| 8 | O'Brien | O'Brien 06 - Spreadsheet Of Air Conditioning Problems, Invoices | OBrienDepo000036 | OBrienDepo000047 |
| 9 | O'Brien | O'Brien 07 - Photographs | OBrienDepo000167 | OBrienDepo000183 |
| 10 | O'Brien | O'Brien 08 - Affidavit Of Donald Mcdermott Support Claim Of Kelly O'Brien | OBrienDepo000121 | OBrienDepo000121 |
| 11 | O'Brien | O'Brien 09 - Chinese Drywall Remediation And Reconstruction Proposal Prepared By Eric Stockland Dated 9/1/2011 | | |
| 12 | O'Brien | O'Brien 10 - Priority Claimant Lori O'Brien'S Answers To Interrogatories | OBrienDepo000373 | OBrienDepo000378 |
| 13 | O'Brien | O'Brien 11 - Note Dated 11/3/2010 And Bank Statement Dated 2/14/2011 | OBrienDepo000076 | OBrienDepo000079 |
| 14 | O'Brien | O'Brien 12 - Bank Statement Dated 2/14/2011; Note Dated 11/3/2010; 3 Guys Moving Receipt Dated 1/8/2011 | OBrienDepo000148 | OBrienDepo000153 |
| 15 | O'Brien | O'Brien 13 - Uniform Residential Appraisal Report And Invoice No. 06-9433 Dated 1/26/2006 | OBrienDepo000154 | OBrienDepo000166 |
| 16 | O'Brien | O'Brien 14 - 2007 Notice Of Ad Valorem Taxes And Non-Ad Valorem Assessment | OBrienDepo000198 | OBrienDepo000202 |
| 17 | O'Brien | O'Brien 15 - My Florida Regional Mls/ Broker Synopsis Report | OBrienDepo000113 | OBrienDepo000113 |
| 18 | O'Brien | O'Brien 16 - Chinese Drywall Settlement Program Foreclosure And Short Sale Claim Form | OBrienDepo000004 | OBrienDepo000008 |
| 19 | O'Brien | O'Brien 17 - Affidavit Of Lori D. O'Brien Dated 10/24/2013 | OBrienDepo000048 | OBrienDepo000048 |
| 20 | O'Brien | O'Brien 18 - Us Department Of Housing And Urban Development Settlement Statement Dated 2/17/2012 | OBrienDepo000072 | OBrienDepo000075 |
| 21 | O'Brien | O'Brien 19 - Spreadsheet | OBrienDepo000320 | OBrienDepo000331 |
| 22 | O'Brien | O'Brien 20 - Spreadsheet | OBrienDepo000332 | OBrienDepo000343 |
| 23 | O'Brien | O'Brien 21 - Supplemental Plaintiff Profile Form | OBrienDepo000188 | OBrienDepo000195 |
| 24 | O'Brien | O'Brien 22 - First Amended Supplemental Plaintiff Profile Form | OBrienDepo000407 | OBrienDepo000413 |
| 25 | O'Brien | O'Brien 23 - Addendum To Sales Agreement Dated 12/28/2013 | OBrienDepo000147 | OBrienDepo000147 |
| 26 | O'Brien | O'Brien 24 - Priority Claimant Kelly O'Brien'S Answers To Interrogatories | OBrienDepo000364 | OBrienDepo000368 |
| **C. Supporting Documentation** | | | | |
| 1 | O'Brien | Kelly Lori O'Brien Out of Pocket Damages Summary Provided by Counsel | | |
| 2 | O'Brien | Doc ID. 361428 - O'Brien 3 Guys Moving Bill of Lading for ALE | | |

16.A
Documents and Other Information Considered - Kelly & Lori O'Brien

_Chinese Drywall Litigation Involving Priority Claimants_

|  |  |  | _Bate Stamp (if applicable)_ | |
| --- | --- | --- | --- | --- |
| No. | Claimant | General Description | First Page | Last Page |
| 3 | O'Brien | Doc ID. 222904 - O'Brien Proof of mortgage payments for ALE | | |
| 4 | O'Brien | Doc ID. 365812 - O'Brien Proof of mortgage payments for ALE | | |
| 5 | O'Brien | Doc ID. 222899 - O'Brien Air Conditioning repairs with receipts | | |
| 6 | O'Brien | Doc ID. 222901 - O'Brien HUD Statement for vacant lot (lost equity) | | |
| 7 | O'Brien | Doc ID. 222905 - O'Brien Loan Modification for Construction (lost equity) | | |
| 8 | O'Brien | Doc ID. 361429 - O'Brien Appraisal Report dated 11.30.06 | | |
| 9 | O'Brien | Doc ID. 361431 - O'Brien HUD Settlement Statement (lost equity) | | |
| 10 | O'Brien | Doc ID. 366624 - O'Brien McElroy Residence Related Documents | | |
| 11 | O'Brien | Doc ID. 365809 - O'Brien Final Statement from Steven R. Carter | | |
| 12 | O'Brien | Doc ID. 365808 - O'Brien Wallcraft Mortgage 2010 - 2012 | | |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-22408-Civ-COOKE

EDUARDO AND CARMEN AMORIN, *et al.*,
individually and on behalf of others similarly
situated,

        Plaintiffs,

vs.

TAISHAN GYPSUM CO., LTD., f/k/a
SHANDONG TIASHE DONGXIN CO. LTD.,
*et al.*,

        Defendants.

_____

# Exhibit 17 (Revised)

### Calculations of Damages for Priority Claimants

# Michael & Robyn Rosen

EXHIBIT TO THE EXPERT WITNESS REPORT OF:
MICHAEL P. ELKIN, CPA/CFF/ABV, CFE
IN THE PRIORITY CLAIMANT TRIAL

April 26, 2019



Exhibit 17 (Revised)
Data and Damage Summary - Michael & Robyn Rosen

*Chinese Drywall Litigation Involving Priority Claimants*

| Data: | | *Reference / Notes* |
|---|---|---|
| Address of Affected property | 17538 Middlebrook Way | *SPPF* |
| | Boca Raton, FL 33496 | *SPPF* |
| Date Affected property acquired | November 6, 2006 | *SPPF* |
| Date Chinese drywall installed | Unknown | *SPPF* |
| Date moved into Affected property | November 6, 2006 | *SPPF* |
| Date first aware of Chinese drywall | August-09 | *SPPF* |
| | | |
| Move out date to alternate living | August-09 | *ROG 1, #2* |
| Date returned to Affected property | Never | *ROG 1, #2* |
| End date for alternate living expenses | December-09 | *ROG 1, #2* |
| | | |
| Still own property? | N | *SPPF* |
| Bankruptcy caused by damage? | N | *SPPF* |
| Foreclosure or short sale? | N | *SPPF* |
| Affected property sold? | Y | *SPPF* |
| Sale date | December 4, 2009 | *SPPF* |
| Type of sale | Sale in Mitigation | *SPPF* |
| | | |
| Remediation status | None | *SPPF* |
| Remediation period | N/A | *SPPF* |

| Damage Summary: | | |
|---|---|---|
| Full or Partial Out-of-Pocket Remediation Expenses | $ - | |
| | | |
| Other Damages: | | |
| Alternate Living Expenses | $ 29,167 | *Exh.17.1 (Revised)* |
| Personal Property Damage Expense | 97,741 | *Exh.17.1 (Revised)* |
| Additional Damages | - | |
| | $ 126,908 | |
| | | |
| Lost Equity | $ 1,165,541 | *Exh. 17.2 (Revised)* |
| | | |
| Diminution in Value | TBD | |
| | | |
| Loss of Use and Enjoyment | TBD | |
| | | |
| Punitive Damages | TBD | |

Case 2:09-md-02047-EEF-MBN  Document 22380-26  Filed 12/02/19  Page 427 of 802
Case 1:11-cv-22408-MGC  Document 272  Entered on FLSD Docket 08/15/2014  Page 44 of
172

Exhibit 17.1 (Revised)
Damage Claims Detail - Michael & Robyn Rosen

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|------|--------|-------------|--------|------|--------------|----------------|-------|------------------|--------------|
| Alternate Living Expenses | Joe Bonnie & Sons | Moving - Deposit | $ 2,929 | 7/23/2009 | | Invoice | ROSENM (OLF) - 000058 | Exhibit 12 | 9 |
| Alternate Living Expenses | Rance Masheck | Lease Payments - August | 5,200 | 8/1/2009 | X | Check | ROSENM (OLF) - 000040 | Exhibit 13 | 6 |
| Alternate Living Expenses | Salty's Plumbing | Plumbing | 441 | 8/7/2009 | X | Receipt | ROSENM (OLF) - 000050 | Exhibit 12 | 1 |
| Alternate Living Expenses | Thanks-A-Lock | | 148 | 8/12/2009 | | Invoice | ROSENM (OLF) - 000051 | Exhibit 12 | 2 |
| Alternate Living Expenses | X-Pert Carpet Care | Cleaning/Carpets | 1,425 | 8/12/2009 | | Invoice | ROSENM (OLF) - 000054 | Exhibit 12 | 5 |
| Alternate Living Expenses | Joe Bonnie & Sons | Moving - At Delivery | 3,416 | 8/13/2009 | | Invoice | ROSENM (OLF) - 000052 | Exhibit 12 | 3 |
| Alternate Living Expenses | Home Depot | Box Cutter | 8 | 8/15/2009 | | Receipt | ROSENM (OLF) - 000050 | Exhibit 12 | 1 |
| Alternate Living Expenses | Rance Masheck | Lease Payments - September | 5,200 | 9/9/2009 | | Check | ROSENM (OLF) - 000036 | Exhibit 13 | 2 |
| Alternate Living Expenses | Rance Masheck | Lease Payments - October | 5,200 | 9/15/2009 | | Check | ROSENM (OLF) - 000037 | Exhibit 13 | 3 |
| Alternate Living Expenses | Rance Masheck | Lease Payments - November | 5,200 | 11/20/2009 | | Check | ROSENM (OLF) - 000038 | Exhibit 13 | 4 |
| **Alternate Living Expenses Total** | | | **$ 29,167** | | | | | | |
| Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Family Room Sofas | $ 367 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000093 | Exhibit 12 | 44 |
| Personal Property Damage Expense | Turkell & Gervis Design | Vanity Chest - Powder Room | 1,104 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000115 | Exhibit 12 | 66 |
| Personal Property Damage Expense | Turkell & Gervis Design | Sofas - Family Room | 6,700 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000093 | Exhibit 12 | 44 |
| Personal Property Damage Expense | Turkell & Gervis Design | Pillows - Family Room Sofas | 546 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000095 | Exhibit 12 | 46 |
| Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Family Room Sofa Pillows | 97 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000095 | Exhibit 12 | 46 |
| Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Family Room Sofas | 62 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000095 | Exhibit 12 | 46 |
| Personal Property Damage Expense | Turkell & Gervis Design | Coffee Tables - Family Room | 1,384 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000099 | Exhibit 12 | 50 |
| Personal Property Damage Expense | Turkell & Gervis Design | Bar Stools - Family Room Kitchen Counter | 1,587 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000100 | Exhibit 12 | 51 |
| Personal Property Damage Expense | Turkell & Gervis Design | Dining Table - Breakfast Nook | 2,019 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000108 | Exhibit 12 | 59 |
| Personal Property Damage Expense | Turkell & Gervis Design | Arm Chairs - Breakfast Nook | 1,674 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000109 | Exhibit 12 | 60 |
| Personal Property Damage Expense | Turkell & Gervis Design | Pillow Pads - Breakfast Room Chairs | 820 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000110 | Exhibit 12 | 61 |
| Personal Property Damage Expense | Turkell & Gervis Design | Pillows - Family Room | 518 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000094 | Exhibit 12 | 45 |
| Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Family Room Sofa Pillows | 357 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000094 | Exhibit 12 | 45 |
| Personal Property Damage Expense | Turkell & Gervis Design | Upholster - Family Room Arm Chairs | 2,523 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000097 | Exhibit 12 | 48 |
| Personal Property Damage Expense | Turkell & Gervis Design | Pillows - Family Room Arm Chair Pillows | 273 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000098 | Exhibit 12 | 49 |
| Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Family Room Arm Chair Pillows | 196 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000098 | Exhibit 12 | 49 |
| Personal Property Damage Expense | Turkell & Gervis Design | Bedside Lamp - Master Bedroom | 285 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000132 | Exhibit 12 | 83 |
| Personal Property Damage Expense | Turkell & Gervis Design | Loveseat - Master Bedroom | 1,856 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000174 | Exhibit 12 | 125 |
| Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Master Bedroom Loveseat | 367 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000174 | Exhibit 12 | 125 |
| Personal Property Damage Expense | Turkell & Gervis Design | Armoire - Master Bedroom | 5,112 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000191 | Exhibit 12 | 142 |
| Personal Property Damage Expense | Turkell & Gervis Design | Pillows - Master Bedroom | 259 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000133 | Exhibit 12 | 84 |
| Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Master Bedroom Pillows | 417 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000133 | Exhibit 12 | 84 |
| Personal Property Damage Expense | Turkell & Gervis Design | Sofa - Living Room | 2,431 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000177 | Exhibit 12 | 128 |
| Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Living Room Sofa | 879 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000177 | Exhibit 12 | 128 |
| Personal Property Damage Expense | Turkell & Gervis Design | Pillows - Living Room Sofa | 293 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000177 | Exhibit 12 | 128 |

Exhibit 17.1 (Revised)
Damage Claims Detail - Michael & Robyn Rosen

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|------|--------|-------------|--------|------|--------------|----------------|-------|------------------|--------------|
| Personal Property Damage Expense | Turkell & Gervis Design | Lounge Chairs - Living Room | 6,099 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000178 | Exhibit 12 | 129 |
| Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Living Room Lounge Chairs | 2,254 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000178 | Exhibit 12 | 129 |
| Personal Property Damage Expense | Turkell & Gervis Design | Table - Living Room | 759 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000179 | Exhibit 12 | 130 |
| Personal Property Damage Expense | Turkell & Gervis Design | Arm Chairs - Living Room | 3,166 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000180 | Exhibit 12 | 131 |
| Personal Property Damage Expense | Turkell & Gervis Design | Tables - Living Room | 353 * | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000181 | Exhibit 12 | 132 |
| Personal Property Damage Expense | Turkell & Gervis Design | Coffee Table Ottoman - Living Room | 2,653 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000182 | Exhibit 12 | 133 |
| Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Coffee Table Ottoman | 179 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000182 | Exhibit 12 | 133 |
| Personal Property Damage Expense | Turkell & Gervis Design | Bed (Upholstered) - Master Bedroom | 2,610 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000189 | Exhibit 12 | 140 |
| Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Master Bedroom Bed (Upholstered) | 1,686 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000189 | Exhibit 12 | 140 |
| Personal Property Damage Expense | Turkell & Gervis Design | Pillows - Master Bedroom | 345 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000190 | Exhibit 12 | 141 |
| Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Master Bedroom Pillows | 446 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000190 | Exhibit 12 | 141 |
| Personal Property Damage Expense | Turkell & Gervis Design | Arm Chair - Master Bedroom | 719 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000175 | Exhibit 12 | 126 |
| Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Master Bedroom Arm Chair | 585 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000175 | Exhibit 12 | 126 |
| Personal Property Damage Expense | Turkell & Gervis Design | Sofa - Office | 1,877 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000188 | Exhibit 12 | 139 |
| Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Office Sofa | 1,149 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000188 | Exhibit 12 | 139 |
| Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Office Sofa Pillows | 863 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000188 | Exhibit 12 | 139 |
| Personal Property Damage Expense | Turkell & Gervis Design | Bed - Guest Bedroom 1 | 1,305 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000187 | Exhibit 12 | 138 |
| Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Guest Bedroom 1 Bedding | 391 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000187 | Exhibit 12 | 138 |
| Personal Property Damage Expense | Turkell & Gervis Design | Writing Desk - Guest Room | 359 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000129 | Exhibit 12 | 80 |
| Personal Property Damage Expense | Turkell & Gervis Design | Refinish - Guest Bedroom Chair | 129 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000129 | Exhibit 12 | 80 |
| Personal Property Damage Expense | Turkell & Gervis Design | Computer Desk - Loft Area | 992 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000153 | Exhibit 12 | 104 |
| Personal Property Damage Expense | Turkell & Gervis Design | Bean Bag Chair - Playroom | 183 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000171 | Exhibit 12 | 122 |
| Personal Property Damage Expense | Turkell & Gervis Design | Bean Bag Ottoman - Playroom | 71 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000171 | Exhibit 12 | 122 |
| Personal Property Damage Expense | Turkell & Gervis Design | Chest - Foyer | 2,130 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000184 | Exhibit 12 | 135 |
| Personal Property Damage Expense | Turkell & Gervis Design | Chair - Sam's Bedroom | 835 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000157 | Exhibit 12 | 108 |
| Personal Property Damage Expense | Turkell & Gervis Design | Artwork - Playroom | 285 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000167 | Exhibit 12 | 118 |
| Personal Property Damage Expense | Turkell & Gervis Design | Vanity Jars - Throughout Home | 173 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000134 | Exhibit 12 | 85 |
| Personal Property Damage Expense | Turkell & Gervis Design | Candle Holders - Throughout | 203 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000186 | Exhibit 12 | 137 |
| Personal Property Damage Expense | Turkell & Gervis Design | Buffet - Playroom | 1,478 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000165 | Exhibit 12 | 116 |
| Personal Property Damage Expense | Turkell & Gervis Design | Sofa - Playroom | 3,411 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000176 | Exhibit 12 | 127 |
| Personal Property Damage Expense | Turkell & Gervis Design | Rug - Guest Bedroom 1 | 1,462 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000123 | Exhibit 12 | 74 |
| Personal Property Damage Expense | Turkell & Gervis Design | Rug - Family Room | 4,525 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000104 | Exhibit 12 | 55 |
| Personal Property Damage Expense | Turkell & Gervis Design | Placemats - Breakfast Nook | - * | 1/22/2007 | | Proposal | ROSENM (OLF) - 000107 | Exhibit 12 | 58 |
| Personal Property Damage Expense | Turkell & Gervis Design | Entertainment Cabinet - Sam's Bedroom | 1,470 | 6/26/2007 | | Proposal | ROSENM (OLF) - 000154 | Exhibit 12 | 105 |
| Personal Property Damage Expense | Turkell & Gervis Design | Bed - Sam's Bedroom | 2,012 | 6/26/2007 | | Proposal | ROSENM (OLF) - 000154 | Exhibit 12 | 105 |
| Personal Property Damage Expense | Turkell & Gervis Design | Chest - Sam's Bedroom | 1,453 | 6/26/2007 | | Proposal | ROSENM (OLF) - 000154 | Exhibit 12 | 105 |

Case 1:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 429 of 802
Case 2:11-cv-02100-MCE Document 272 Entered on FLSD Docket 08/15/2019 Page 246 of
172

Exhibit 17.1 (Revised)
Damage Claims Detail - Michael & Robyn Rosen

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|------|--------|-------------|--------|------|--------------|----------------|-------|------------------|--------------|
| Personal Property Damage Expense | Turkell & Gervis Design | Chaise - Master Bedroom | 1,375 | 7/20/2007 | | Proposal | ROSENM (OLF) - 000144 | Exhibit 12 | 95 |
| Personal Property Damage Expense | Turkell & Gervis Design | Chaise - Master Bedroom | 1,375 | 7/20/2007 | | Proposal | ROSENM (OLF) - 000144 | Exhibit 12 | 95 |
| Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Master Bedroom Chaises | 2,070 | 7/20/2007 | | Proposal | ROSENM (OLF) - 000144 | Exhibit 12 | 95 |
| Personal Property Damage Expense | Turkell & Gervis Design | Reupholstery - Family Room Chairs | 850 | 8/2/2007 | | Proposal | ROSENM (OLF) - 000096 | Exhibit 12 | 47 |
| Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Family Room Chairs | 943 | 8/2/2007 | | Proposal | ROSENM (OLF) - 000096 | Exhibit 12 | 47 |
| Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Family Room Chair Pillows | 273 | 8/2/2007 | | Proposal | ROSENM (OLF) - 000096 | Exhibit 12 | 47 |
| Personal Property Damage Expense | Turkell & Gervis Design | Garden Stool - Patio | 147 | 9/28/2007 | | Proposal | ROSENM (OLF) - 000148 | Exhibit 12 | 99 |
| Personal Property Damage Expense | Turkell & Gervis Design | Chairs - Loft Area | 537 | 1/15/2008 | | Proposal | ROSENM (OLF) - 000146 | Exhibit 12 | 97 |
| Personal Property Damage Expense | Turkell & Gervis Design | Table - Loft Area | 394 | 1/15/2008 | | Proposal | ROSENM (OLF) - 000146 | Exhibit 12 | 97 |
| Personal Property Damage Expense | Turkell & Gervis Design | Stools - Loft Area | 1,227 | 1/15/2008 | | Proposal | ROSENM (OLF) - 000147 | Exhibit 12 | 98 |
| Personal Property Damage Expense | Turkell & Gervis Design | Chair - Loft Area | 676 | 1/15/2008 | | Proposal | ROSENM (OLF) - 000149 | Exhibit 12 | 100 |
| Personal Property Damage Expense | Turkell & Gervis Design | Slipcover - Loft Area Chair | 326 | 1/15/2008 | | Proposal | ROSENM (OLF) - 000149 | Exhibit 12 | 100 |
| Personal Property Damage Expense | Turkell & Gervis Design | Bedding - Sam's Bedroom | 1,006 | 1/17/2008 | | Proposal | ROSENM (OLF) - 000155 | Exhibit 12 | 106 |
| Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Sam's Bedding | 506 | 1/17/2008 | | Proposal | ROSENM (OLF) - 000155 | Exhibit 12 | 106 |
| Personal Property Damage Expense | Turkell & Gervis Design | Fabric - Sam's Bed Pillows | 121 | 1/17/2008 | | Proposal | ROSENM (OLF) - 000155 | Exhibit 12 | 106 |
| Personal Property Damage Expense | Tech Air of Westgate | A/C Maintenance and Repair | 435 | 6/19/2009 | | Invoice | ROSENMOLF-000060 | Exhibit 12 | 11 |
| Personal Property Damage Expense | Posh French Cleaners | Dry Cleaning | 739 | 12/31/2009 | | Receipt | ROSENMOLF-000066 | Exhibit 12 | 17 |
| Personal Property Damage Expense | Gervis Design | Repair/Replace | 199 | 2/16/2010 | | Invoice | ROSENMOLF-000062 | Exhibit 12 | 13 |
| Personal Property Damage Expense | Best Buy | TV Replacement 1 | 1,908 | 2/18/2010 | | Receipt | ROSENMOLF-000069 | Exhibit 12 | 20 |
| Personal Property Damage Expense | Best Buy | TV Replacement 2 | 1,899 | 2/18/2010 | | Receipt | ROSENMOLF-000070 | Exhibit 12 | 21 |
| **Personal Property Damage Expense Total** | | | $ 97,741 | | | | | | |

Exhibit 17.2 (Revised)
Lost Equity - Michael & Robyn Rosen

*Chinese Drywall Litigation Involving Priority Claimants*

| Initial Acquisition | | | Source Document |
|---|---|---|---|
| Purchase Price | $ | 1,600,000 | HUD Statement dated 11/6/06 - Exh. 2 |
| Work Orders | $ | 225,000 | HUD Statement dated 11/6/06 - Exh. 2 |
| Settlement Charges | | 39,877 | HUD Statement dated 11/6/06 - Exh. 2 |
| Total Gross Amount Due from Claimant | $ | 1,864,877 | |
| | | | |
| Less | | | |
| Deposit Made by Claimant | $ | (182,500) | HUD Statement dated 11/6/06 - Exh. 2 |
| Borrowings by Claimant | | (600,000) | HUD Statement dated 11/6/06 - Exh. 2 |
| Credits | | (20,000) | HUD Statement dated 11/6/06 - Exh. 2 |
| Amount Due from Claimant at Close | $ | 1,062,377 | |
| | | | |
| Funds Paid by Claimant | | | |
| Deposit Paid with Contract | $ | 182,500 | HUD Statement dated 11/6/06 - Exh. 2 |
| Closing Cash payments | | 1,062,377 | HUD Statement dated 11/6/06 - Exh. 2 |
| Adjustments from Closing Statement at Purchase: | | | |
| Line 111. HOA Fee | | (727) * | HUD Statement dated 11/6/06 - Exh. 2 |
| Line 901. Interest Expense | | (2,569) * | HUD Statement dated 11/6/06 - Exh. 2 |
| Line 1303. 2006 RE Tax | | (700) * | HUD Statement dated 11/6/06 - Exh. 2 |
| Line 1304. 4th Quarter HOA | | (1,155) * | HUD Statement dated 11/6/06 - Exh. 2 |
| Line 1305. 2007 1st Quarter HOA | | (1,943) ** | HUD Statement dated 11/6/06 - Exh. 2 |
| Adjusted Payments for Initial Purchase | a $ | 1,237,783 | |
| | | | |
| 1st Mortgage | | | |
| Mortgage Beginning Balance | $ | 600,000 | Rosen $600,000 Mortgage - KR Doc (from Public Records) |
| Mortgage Balance at Payoff | | 577,864 | Chase Transaction History - MROSEN - 000203-000208) |
| Principal Payments Made | b $ | 22,136 | |
| | | | |
| 2nd Mortgage | | | |
| Mortgage Beginning Balance (1) | $ | - | |
| Mortgage Balance at Payoff | | 298,115 | HUD Statement dated 12/4/09 - ROSEN, M (OLF) - 000047 - 000049) |
| Principal Payments Made | c $ | (298,115) | |
| | | | |
| Capital Improvements | d $ | 150,219 | Exhibit 17.2A |
| | | | |
| Plus: Seller Paid Closing Costs on Sale in Mitigation | $ | 73,466 | HUD Statement dated 12/4/09 - ROSEN, M (OLF) - 000047 - 000049) |
| Adjustments from Closing Statement at Sale: | | | |
| Line 407. County Taxes | | 1,691 * | HUD Statement dated 12/4/09 - ROSEN, M (OLF) - 000047 - 000049) |
| Line 409. Solid Waste | | 261 * | HUD Statement dated 12/4/09 - ROSEN, M (OLF) - 000047 - 000049) |
| Line 410. Homeowner Association | | 585 * | HUD Statement dated 12/4/09 - ROSEN, M (OLF) - 000047 - 000049) |
| Line 1304. 2009 Real Estate Taxes | | (22,485) * | HUD Statement dated 12/4/09 - ROSEN, M (OLF) - 000047 - 000049) |
| Adjusted Seller Paid Closing Costs on Sale in Mitigation | e $ | 53,518 | |
| | | | |
| Total Lost Equity | = a + b +c + d + e  $ | 1,165,541 | |

Notes:
(1) Per the HUD Statement on the sale of the property in 2009 there was a 2nd mortgage paid off in the amount of $298,114.78.
Per the Claimants' answer to ROGS, initial mortgage was for $802,500. However, the Mortgage and HUD Statement
dated 11/6/06 is in the amount of $600,000 a difference of $202,500. As if this time KR has not been provided
further support for the second mortgage and any potential principal payments. Should that information be provided this Lost
Equity is subject to change.

Exhibit 17.2A
Lost Equity - Michael & Robyn Rosen

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/Doc. ID | PDF Page No. |
|------|--------|-------------|--------|------|--------------|----------------|-------|-----------------|--------------|
| Capital Improvements | Potomac Garage Solutions | Capital Improvements | 12,465 | 7/29/2008 | | Invoice | ROSENMOLF-000072 | Exhibit 12 | 23 |
| Capital Improvements | Closet Systems | Capital Improvements | 10,385 | 8/7/2006 | X | Invoice | ROSENMOLF-000076 | Exhibit 12 | 27 |
| Capital Improvements | Turkell & Gervis Design | Mosaic Tile - Master Bathroom | 402.57 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000136 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Chandelier - Breakfast Nook | 2,846.75 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000106 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Wallpaper - Living Room | 1,358.67 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000086 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Wallpaper - Living Room Installation | 474.46 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000086 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Ceiling Light - Game Room | 814.73 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000113 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Sconces - Downstairs Guest Bathroom | 421.55 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000125 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Sconces - Master Bedroom | 510.88 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000135 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Sideboard - Living Room | 3,664.67 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000183 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Wallpaper - Powder Room | 352.25 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000117 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Wallpaper - Powder Room Installation | 359.44 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000117 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Shelves - Loft Area | 1,452.23 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000151 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Cabinet - Loft Area | 2,490.50 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000152 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Chandelier - Dining Room | 3,961.00 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000185 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Fabric - Master Bedroom Bed Cover | 250.91 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000138 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Carpet - Office | 1,798.44 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000119 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Carpet - Playroom | 2,668.68 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000127 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Carpet - Master Bedroom | 3,976.73 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000137 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Carpet - Sam's & Jesse's Bedrooms | 2,788.17 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000160 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Sink - Powder Room | 728.46 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000114 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Faucet - Powder Room | 742.84 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000114 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Strainer - Powder Room | 94.12 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000114 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Draperies - Guest Bedroom 1 | 4,572.05 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000126 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Fabric - Guest Bedroom 1 Drapes | 467.27 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000126 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Fabric - Guest Bedroom 1 Drapes | 130.84 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000126 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Window Treatment - Powder Room | 1,473.69 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000118 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Window Treatment - Powder Room | 586.60 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000118 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Draperies - Master Bedroom | 4,988.99 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000140 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Fabric - Master Bedroom Drapes | 1,633.28 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000140 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Fabric - Master Bedroom Window Treatment | 1,248.27 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000140 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Ceiling Fan - Master Bedroom | 575.68 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000141 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Window Treatment - Laundry Room | 194.10 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000158 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Window Treatment - Cabana Bathroom | 379.57 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000158 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Window Treatment - Master Bedroom | 1,222.09 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000158 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Side Panels - Living Room | 3,306.83 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000087 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Fabric - Window Treatments | 1,994.45 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000087 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Fabric - Drapes Living Room | 1,705.36 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000087 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Draperies- Office | 4,895.54 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000121 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Window Treatment - Office | 2,156.63 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000121 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Window Treatment - Master Bedroom/Study | 517.59 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 00139 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Fabric - Window Treatments Family Room | 1,204.39 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000101 | Exhibit 12 | |

Exhibit 17.2A
Lost Equity - Michael & Robyn Rosen

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/Doc. ID | PDF Page No. |
|------|--------|-------------|--------|------|--------------|----------------|-------|-----------------|--------------|
| Capital Improvements | Turkell & Gervis Design | Side Panels - Breakfast Room and Family Room | 7,924.88 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000102 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Draperies - Sam's Bedroom | 1,882.01 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000156 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Fabric - Sam's Bedroom Draperies | 213.36 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000156 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Window Treatment - Sam's Bedroom | 200.13 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000156 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Window Treatment - Sam's Bedroom | 435.64 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000159 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Window Treatment - Jesse's Bedroom | 3,824.42 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000163 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Fabric - Jesse's Bedroom Window Treatment | 862.65 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000163 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Window Treatment - Guest Bedroom 2 | 948.92 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000170 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Chandelier for Foyer | 3,173.70 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000085 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Window Treatment - Office | 269.45 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000120 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Window Treatment - Office | 316.31 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000120 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Wallpaper - Cabana Bathroom | 402.57 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000128 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Wallpaper - Cabana Bathroom Installation | 230.04 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000128 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Wallpaper - Master Bathroom | 840.60 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000142 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Wallpaper -Master Bathroom Installation | 517.59 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000142 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Wallpaper - Sam's Bathroom | 293.34 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000161 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Wallpaper - Sam's Bathroom Installation | 230.04 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000161 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Wallpaper - Jesse's Bathroom | 366.68 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000163 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Wallpaper - Jesse's Bathroom Installation | 287.55 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000163 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Ceiling Fan - Family Room | 635.49 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000103 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Sconces - Playroom | 220.46 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000166 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Mirror - Powder Room | 1,453.73 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000116 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Window Treatment - Playroom | 1,114.26 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000169 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Fabric - Playroom Window Treatment | 94.89 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000169 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Fabric - Playroom Window Treatment | 54.63 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000169 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Ceiling Fixture - Kitchen | 838.69 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000111 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Ceiling Fans - Patio | 1,228.41 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000172 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Wallpaper - Playroom | 293.34 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000168 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Wallpaper - Playroom Installation | 230.04 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000168 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Wallpaper - Dining Room | 931.66 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000091 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Wallpaper - Dining Room Installation | 517.59 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000091 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Wood molding with chair rail - Dining Room | 2,264.46 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000092 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Draperies - Cabana Bathroom | 337.87 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000130 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Draperies - Cabana Bath Door | 258.35 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000130 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Window Treatment - Master Bathroom | 1,258.03 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000143 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Fabric - Master Bathroom Window | 470.99 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000143 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Wallpaper - Jesse's Bedroom | 366.68 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000162 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Wallpaper - Jesse's Bedroom Installation | 287.55 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000162 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Wallpaper - Laundry Room | 543.47 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000131 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Wallpaper - Laundry Room Installation | 287.55 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000131 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Fabric - Office Window | 539.16 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000122 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Lights - Kitchen | 776.39 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000105 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Canopy for Lights - Kitchen | 258.80 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000105 | Exhibit 12 | |

Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 433 of 802
Case 1:11-cv-22408-MGC Document 272 Entered on FLSD Docket 08/15/2013 Page 150 of
172

Exhibit 17.2A
Lost Equity - Michael & Robyn Rosen

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Capital Improvements | Turkell & Gervis Design | Ceiling Canopy - Kitchen (connections for lights) | 258.80 | 12/31/2006 | X | Proposal | ROSENM (OLF) - 000112 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Pendant Fixture (location not specified) | 348.26 | 6/13/2007 | | Proposal | ROSENM (OLF) - 000173 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Fabric - Master Bedroom/Gym Window Treatment | 611.04 | 9/28/2007 | | Proposal | ROSENM (OLF) - 000145 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Fabric - Master Bedroom/Gym Window Treatment | 408.32 | 9/28/2007 | | Proposal | ROSENM (OLF) - 000145 | Exhibit 12 | |
| Capital Improvements | Turkell & Gervis Design | Cabinetry - Loft Area | 20,703.60 | 1/25/2008 | | Proposal | ROSENM (OLF) - 000150 | Exhibit 12 | |
| Capital Improvements | Kinderguard Pool Fence | Capital Improvements | 1,145 | 10/6/2006 | | Invoice | ROSENMOLF-000063 | Exhibit 12 | 14 |
| Capital Improvements Total | | | $  150,219 | | | | | | |

Case 1:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 434 of 802
Case 1:11-cv-22408-MGC Document 272 Entered on FLSD Docket 08/15/2019 Page 151 of
172

17.A
Documents and Other Information Considered - Michael & Robyn Rosen

*Chinese Drywall Litigation Involving Priority Claimants*

| | | | Bate Stamp *(if applicable)* | |
|---|---|---|---|---|
| No. | Claimant | General Description | First Page | Last Page |

**A. Pleadings and Other Legal Documents:**

| | | | | |
|---|---|---|---|---|
| 1 | All | Judge Cooke's Order, dated November 16, 2018 | | |
| 2 | Rosen-MR | Claimant Michael & Robyn Rosen Answers to Interrogatories - Amended | | |
| 3 | Rosen-MR | Claimant Michael & Robyn Rosen Answers to Defendant's Second Set of Interrogatories, dated December 4, 2018 | | |
| 4 | Rosen-MR | Claimant Michael & Robyn Rosen Supplemental Plaintiff Profile Form | | |

**B. Depositions & Corresponding Exhibits:**

| | | | | |
|---|---|---|---|---|
| 1 | Rosen-MR | Deposition Transcript of Michael Rosen, dated January 9, 2019 | | |
| 2 | Rosen-MR | Deposition Transcript of Robyn Rosen, dated January 9, 2019 | | |
| 3 | Rosen-MR | Deposition Exhibit 01 - Special Warranty Deed Book 21066/Page 1743, Palm Beach County Property Appraiser Record, and Warranty Deed Book 23588/Page 101 through 102 | | |
| 4 | Rosen-MR | Deposition Exhibit 02 - US Department of Housing & Urban Development Settlement Statement dated 11/6/2006 | MROSEN - 000001 | MROSEN - 000032 |
| 5 | Rosen-MR | Deposition Exhibit 03 - Chase Detailed Transaction History dated 9/5/2013 | MROSEN - 000041 | MROSEN - 000046 |
| 6 | Rosen-MR | Deposition Exhibit 04 - Palm Beach County Property Appraiser Public Records | | |
| 7 | Rosen-MR | Deposition Exhibit 05 - Plaintiff Profile Form - Residential Properties | ROSEN M 000001 | ROSEN M 000010 |
| 8 | Rosen-MR | Deposition Exhibit 06 - Supplemental Plaintiff Profile Form | | |
| 9 | Rosen-MR | Deposition Exhibit 07 - Chinese Drywall Settlement Program Foreclosure or Short Sale Affidavit | | |
| 10 | Rosen-MR | Deposition Exhibit 08 - Michael Rosen Photos of Inspection 08/30/09 and Inspection Report 08/30/2009 | ROSEN,M 0001 | ROSEN,M 0079 |
| 11 | Rosen-MR | Deposition Exhibit 09 - Collection of Evidence Michael Rosen 12/03/2009 | MROSEN - 000235 | MROSEN - 000235 |
| 12 | Rosen-MR | Deposition Exhibit 10 - Claimants Michael and Robyn Rosen's Answers to Defendants Interrogatories | | |
| 13 | Rosen-MR | Deposition Exhibit 11 - Michael and Robin [sic] Rosen's Chinese Drywall Damages Chart | | |
| 14 | Rosen-MR | Deposition Exhibit 12 - Receipts and Invoices | ROSEN, M (OLF) - 000050 | ROSEN, M (OLF) - 000191 |
| 15 | Rosen-MR | Deposition Exhibit 13 - Copies of checks | ROSEN, M (OLF) - 000035 | ROSEN, M (OLF) - 000040 |
| 16 | Rosen-MR | Deposition Exhibit 14 - Residential Sale and Purchase Contract | MROSEN - 000192 | MROSEN - 000202 |
| 17 | Rosen-MR | Deposition Exhibit 15 - Mutual Release dated 12/4/2009 | MROSEN - 000213 | MROSEN - 000221 |

**C. Supporting Documentation**

| | | | | |
|---|---|---|---|---|
| 1 | Rosen-MR | Rosen Damages Summary Provided by Counsel | | |
| 2 | Rosen-MR | MROSEN - 000035-000040) - Lease Payments | MROSEN - 000035 | MROSEN - 000040 |
| 3 | Rosen-MR | MROSEN - 000050-000191) - Upgrades Expenses | MROSEN - 000050 | MROSEN - 000191 |
| 4 | Rosen-MR | MROSEN - 000192-000202) - Rosen Contract | MROSEN - 000192 | MROSEN - 000202 |
| 5 | Rosen-MR | MROSEN - 000203-000208) - Loan Payments | MROSEN - 000203 | MROSEN - 000208 |
| 6 | Rosen-MR | 2922231 - Rosen MR - 2006 Purchase (Better Copy) | | |
| 7 | Rosen-MR | 2922333 - Rosen MR - Rosen HUD | | |
| 8 | Rosen-MR | ROSEN, M (OLF) - 000047 - 000049) - Sale of House in 2009 | ROSEN, M (OLF) - 000047 | ROSEN, M (OLF) - 000049 |

**D. Research and Other Sources:**

| | | | | |
|---|---|---|---|---|
| 1 | Rosen-MR | Rosen $600,000 Mortgage - KR Doc (from Public Records) | | |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-22408-Civ-COOKE

EDUARDO AND CARMEN AMORIN, *et al.*,
individually and on behalf of others similarly
situated,

       Plaintiffs,

vs.

TAISHAN GYPSUM CO., LTD., f/k/a
SHANDONG TIASHE DONGXIN CO. LTD.,
*et al.*,

       Defendants.

_____

# Exhibit 18 (Revised)

## Calculations of Damages for Priority Claimants

# Kevin & Stacey Rosen

EXHIBIT TO THE EXPERT WITNESS REPORT OF:
MICHAEL P. ELKIN, CPA/CFF/ABV, CFE
IN THE PRIORITY CLAIMANT TRIAL

April 26, 2019



Exhibit 18 (Revised)
Data and Damage Summary - Kevin & Stacey Rosen

*Chinese Drywall Litigation Involving Priority Claimants*

| Data: | | Reference / Notes |
|---|---|---|
| Address of Affected property | 17830 Monte Vista Drive | *SPPF* |
| | Boca Raton, FL 33496 | *SPPF* |
| Date Affected property acquired | August 7, 2006 | *SPPF* |
| Date Chinese drywall installed | Unknown | *SPPF* |
| Date moved into Affected property | August 7, 2006 | *SPPF* |
| Date first aware of Chinese drywall | September-09 | *SPPF* |
| Move out date to alternate living | July 27, 2009 | *ROG 1, #2* |
| Date returned to Affected property | Never | *ROG 1, #2* |
| End date for alternate living expenses | December 23, 2009 | *ROG 1, #2* |
| Still own property? | N | *SPPF* |
| Bankruptcy caused by damage? | N | *SPPF* |
| Foreclosure or short sale? | N | *SPPF* |
| Affected property sold? | Y | *SPPF* |
| Sale date | December 23, 2009 | *SPPF* |
| Type of sale | Sale in Mitigation | *ROG 1, #2* |
| Remediation status | None | *SPPF* |
| Remediation period | N/A | *SPPF* |

| Damage Summary: | | |
|---|---|---|
| Full or Partial Out-of-Pocket Remediation Expenses | $ - | |
| Other Damages | | |
| Alternate Living Expenses | $ 31,786 | *Exh. 18.1 (Revised)* |
| Personal Property Damage Expense | 22,482 | *Exh. 18.1 (Revised)* |
| Additional Damages | 97 | *Exh. 18.1 (Revised)* |
| | $ 54,364 | |
| Lost Equity | $ 743,935 | *Exh. 18.2 (Revised)* |
| Diminution in Value | TBD | |
| Loss of Use and Enjoyment | TBD | |
| Punitive Damages | TBD | |

Case 1:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 437 of 802
Case 1:11-cv-22408-MGC Document 272 Entered on FLSD Docket 08/13/2013 Page 154 of
172

Exhibit 18.1 (Revised)
Damage Claims Detail - Kevin & Stacey Rosen

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Alternate Living Expenses | Target | Relocation Baby Clothes | $ 115 | 7/27/2009 | | Claimant | KROSEN - 000222 | Exhibit 10 | 78 |
| Alternate Living Expenses | Publix | Relocation Laundry Hampers | 41 | 7/28/2009 | | Claimant | N/A | Exhibit 10 | |
| Alternate Living Expenses | HOA Application | Townhouse | 200 | 7/28/2009 | | Check | KROSEN - 000314 | Exhibit 10 | 170 |
| Alternate Living Expenses | Baby Love | Infant Mattress | 170 | 7/29/2009 | | Receipt & Invoice | KROSEN - 000324 to 000327 | Exhibit 10 | 180 - 183 |
| Alternate Living Expenses | City Mattress | Adult and Child Bedding | 1,215 | 7/29/2009 | | Receipt & Invoice | KROSEN - 000322 to 000323 | Exhibit 10 | 178 - 179 |
| Alternate Living Expenses | Edward & Jacqueline Diyanni | August 2009 Rent | 3,300 | 7/30/2009 | | Check | KROSEN - 000317 | Exhibit 10 | 173 |
| Alternate Living Expenses | FPU | Deposit & Transfer | 68 | 7/30/2009 | | Claimant | N/A | Exhibit 10 | |
| Alternate Living Expenses | AT&T | Phone Service Townhouse | 68 | 7/30/2009 | | BOA Transaction Detail | KROSEN - 000345 | Exhibit 10 | 201 |
| Alternate Living Expenses | Fed Ex | Rent and Security to Landlord | 13 | 7/31/2009 | | Receipt | KROSEN - 000315 to 000316 | Exhibit 10 | 171 - 172 |
| Alternate Living Expenses | Home Depot | Townhouse Toilet Parts | 36 | 7/31/2009 | | Claimant | N/A | Exhibit 10 | |
| Alternate Living Expenses | Walmart | Cleaning Supplies | 19 | 8/1/2009 | | Claimant | N/A | Exhibit 10 | |
| Alternate Living Expenses | Gas | Cargo Van | 48 | 8/1/2009 | | Claimant | KROSEN - 000215 | Exhibit 10 | 71 |
| Alternate Living Expenses | City Mattress | Box Springs and Frame | 320 | 8/1/2009 | | Receipt | KROSEN - 000312 to 000313 | Exhibit 10 | 168 - 169 |
| Alternate Living Expenses | Two Men & Truck | Moving Company | 1,129 | 8/1/2009 | | Claimant | KROSEN - 000270 to 000273 | Exhibit 10 | 126 - 129, 185 - 188 |
| Alternate Living Expenses | Home Depot | Townhouse Water Filter | 43 | 8/4/2009 | | Claimant | KROSEN - 000220 | Exhibit 10 | 76 |
| Alternate Living Expenses | Homedepot | Air Filters Townhouse | 44 | 8/6/2009 | | Receipt | KROSEN - 000269 | Exhibit 10 | 125 |
| Alternate Living Expenses | Target | Cleaning Supplies | 44 | 8/6/2009 | | Receipt | KROSEN - 000262 | Exhibit 10 | 118 |
| Alternate Living Expenses | Thanks a Lock Locksmith | Townhouse | 11 | 8/8/2009 | | Receipt | KROSEN - 000265 | Exhibit 10 | 121 |
| Alternate Living Expenses | U Gas | Cargo Van | 15 | 8/9/2009 | | Receipt | KROSEN - 000261 | Exhibit 10 | 117 |
| Alternate Living Expenses | Other Perils Insurance | Townhouse Home Insurance | 1,128 | 8/10/2009 | | Invoice & Check | KROSEN - 000373 to 000374 | Exhibit 10 | 229 - 230 |
| Alternate Living Expenses | Flood Insurance Policy | Townhouse | 189 | 8/11/2009 | | Application & Check | KROSEN - 000307; 000308; 000; | Exhibit 10 | 163 - 164 |
| Alternate Living Expenses | Windstorm Insurance | Townhouse | 598 | 8/11/2009 | | Application & Check | KROSEN - 000309 to 000311 | Exhibit 10 | 165 - 167 |
| Alternate Living Expenses | Thompson Pest Control | Townhouse | 45 | 8/21/2009 | | Invoice & Check | KROSEN - 000306 | Exhibit 10 | 162 |
| Alternate Living Expenses | FPL | Townhouse Electricity | 52 | 8/21/2009 | | Invoice & Check | KROSEN - 000304 to 000305 | Exhibit 10 | 160 - 161 |
| Alternate Living Expenses | Comcast | Townhouse Cable & Internet | 117 | 8/21/2009 | | Invoice & Check | KROSEN - 000300 to 000301 | Exhibit 10 | 156 - 157 |
| Alternate Living Expenses | City of Boca Raton Water | Townhouse | 250 | 8/21/2009 | | Invoice & Check | KROSEN - 000302 to 000303 | Exhibit 10 | 158 - 159 |
| Alternate Living Expenses | Edward & Jacqueline Diyanni | September 2009 Rent (Less Offsets) | 2,836 | 8/21/2009 | | Check | KROSEN - 000296 | Exhibit 10 | 152 |
| Alternate Living Expenses | Home Fitness | Relocated Eliptical | 125 | 8/25/2009 | | Receipt | KROSEN - 000283 | Exhibit 10 | 139 |
| Alternate Living Expenses | FPU | Natural Gas Townhouse | 11 | 8/31/2009 | | Invoice & Check | KROSEN - 000292 to 000293 | Exhibit 10 | 148 - 149 |
| Alternate Living Expenses | Comcast | Townhouse Cable & Internet | 126 | 8/31/2009 | | Invoice & Check | KROSEN - 000289 to 000291 | Exhibit 10 | 145 - 147 |
| Alternate Living Expenses | Homedepot - Padlock Storage | Storage | 12 | 9/4/2009 | | Receipt | KROSEN - 000266 | Exhibit 10 | 122 |
| Alternate Living Expenses | Mission Bay-Truck Rental | Moving | 75 | 9/4/2009 | | Receipt | KROSEN - 000274 | Exhibit 10 | 130 |
| Alternate Living Expenses | Mission Bay - Storage Rental | Storage | 466 | 9/4/2009 | | Receipt | KROSEN - 000276 | Exhibit 10 | 132 |
| Alternate Living Expenses | Mission Bay - Storage Rental | Storage | 2,252 | 9/4/2009 | | Receipt | KROSEN - 000275 | Exhibit 10 | 131 |
| Alternate Living Expenses | Two Men & Truck | Moving | 578 | 9/5/2009 | | Claimant | N/A | Exhibit 10 | |
| Alternate Living Expenses | Thompson Pest Control | Townhouse | 27 | 9/9/2009 | | Invoice & Check | KROSEN - 000286 | Exhibit 10 | 142 |
| Alternate Living Expenses | AT&T | Townhouse | 114 | 9/9/2009 | | Invoice & Check | KROSEN - 000287 to 000288 | Exhibit 10 | 143 - 144 |
| Alternate Living Expenses | FPL | Townhouse Electricity | 221 | 9/9/2009 | | Invoice & Check | KROSEN - 000295 to 000296 | Exhibit 10 | 150 - 151 |
| Alternate Living Expenses | Comcast | Townhouse Cable & Internet | 93 | 9/10/2009 | | Invoice | KROSEN - 000285 | Exhibit 10 | 141 |
| Alternate Living Expenses | Homedepot - Padlock Storage | Storage | 12 | 9/19/2009 | | Receipt | KROSEN - 000268 | Exhibit 10 | 124 |
| Alternate Living Expenses | Store-All Rental | Storage | 20 | 9/19/2009 | | Receipt | KROSEN - 000279 | Exhibit 10 | 135 |
| Alternate Living Expenses | Parker Crystals - Chandelier & Sconces | Boxing and Packing Materials | 1,940 | 9/19/2009 | | Invoice | KROSEN - 000277 | Exhibit 10 | 133 |
| Alternate Living Expenses | Plumbing Repair | Townhouse | 120 | 9/22/2009 | | Check | KROSEN - 000280 | Exhibit 10 | 136 |
| Alternate Living Expenses | Comcast | Townhouse Cable & Internet | 93 | 9/26/2009 | | Invoice & Check | KROSEN - 000351 to 000352 | Exhibit 10 | 207 - 208 |
| Alternate Living Expenses | Two Men & Truck | Chandelier Move | 200 | 9/26/2009 | | Claimant | N/A | Exhibit 10 | |
| Alternate Living Expenses | Edward & Jacqueline DiYana | October 2009 Rent | 3,300 | 9/26/2009 | | Check | KROSEN - 000282 | Exhibit 10 | 138 |
| Alternate Living Expenses | Thompson Pest Control | Townhouse | 27 | 10/2/2009 | | Invoice & Check | KROSEN - 000379 | Exhibit 10 | 235 |
| Alternate Living Expenses | FPU | Natural Gas Townhouse | 28 | 10/8/2009 | | Invoice & Check | KROSEN - 000348 to 000349 | Exhibit 10 | 204 - 205 |
| Alternate Living Expenses | AT&T | Townhouse | 61 | 10/18/2009 | | Invoice | KROSEN - 000359 | Exhibit 10 | 215 |
| Alternate Living Expenses | FPL | Townhouse Electricity | 219 | 10/18/2009 | | Invoice & BOA transaction detail | KROSEN - 000365 to 000366 | Exhibit 10 | 221 - 222 |
| Alternate Living Expenses | FPU | Natural Gas Townhouse | 28 | 10/26/2009 | | Invoice & Check | KROSEN - 000363 to 000364 | Exhibit 10 | 219 - 220 |
| Alternate Living Expenses | Comcast | Townhouse Cable & Internet | 114 | 10/26/2009 | | Invoice & Check | KROSEN - 000353 to 000354 | Exhibit 10 | 209 - 210 |
| Alternate Living Expenses | City of Boca Raton Water | Townhouse | 145 | 10/26/2009 | | Invoice & Check | KROSEN - 000357 to 000358 | Exhibit 10 | 213 - 214 |
| Alternate Living Expenses | Boca Raton Stor-All | Storage | 234 | 10/26/2009 | | Invoice & Check | KROSEN - 000342 to 000343 | Exhibit 10 | 198 - 199 |
| Alternate Living Expenses | Edward & Jacqueline DiYana | November 2009 Rent | 3,300 | 10/26/2009 | | Check | KROSEN - 000381 | Exhibit 10 | 237 |
| Alternate Living Expenses | FPL | Townhouse Electricity | 197 | 11/9/2009 | | Invoice & Check | KROSEN - 000371 to 000372 | Exhibit 10 | 227 - 228 |

Exhibit 18.1 (Revised)
Damage Claims Detail - Kevin & Stacey Rosen

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|------|--------|-------------|--------|------|--------------|----------------|-------|------------------|--------------|
| Alternate Living Expenses | FPU | Natural Gas Townhouse | 30 | 11/23/2009 | | Invoice & Check | KROSEN - 000361 to 000362 | Exhibit 10 | 217 - 218 |
| Alternate Living Expenses | Boca Raton Stor-All | Storage | 234 | 11/23/2009 | | Invoice & Check | KROSEN - 000339 to 000340 | Exhibit 10 | 195 - 196 |
| Alternate Living Expenses | Edward & Jacqueline Diyanni | December 2009 Rent | 3,300 | 11/23/2009 | | Check | KROSEN - 000376 | Exhibit 10 | 232 |
| Alternate Living Expenses | Comcast | Townhouse Cable & Internet | 50 | 12/12/2009 | | Invoice & Check | KROSEN - 000355 to 000356 | Exhibit 10 | 211 - 212 |
| Alternate Living Expenses | FPL | Townhouse Electricity | 150 | 12/12/2009 | | Invoice & BOA transaction detail | KROSEN - 000367 to 000368 | Exhibit 10 | 223 - 224 |
| Alternate Living Expenses | Boynton Billiards | Moving Pool Table | 325 | 12/17/2009 | | Invoice & Check | KROSEN - 000377 to 000378 | Exhibit 10 | 233 - 234 |
| Alternate Living Expenses | City of Boca Raton Water | Townhouse | 118 | 12/31/2009 | | Invoice | KROSEN 000333 | Exhibit 10 | 189 |
| Alternate Living Expenses | Comcast | Townhouse Cable & Internet | 158 | 12/31/2009 | | Invoice | KROSEN - 000334 | Exhibit 10 | 190 |
| Alternate Living Expenses | Boca Raton Stor-All | Storage | 703 | 12/31/2009 | | Receipt & Check | KROSEN - 000346 to 000347 | Exhibit 10 | 202 - 203 |
| Alternate Living Expenses | Boca Raton Stor-All | Storage | 469 | 3/29/2010 | | Receipt | KROSEN - 000383 | Exhibit 10 | 239 |
| **Alternate Living Expenses Total** | | | $ 31,786 | | | | | | |
| Personal Property Damage Expense | Mattress | (Plush Mattress Pad and Pillows) | $ 5,255 * | 8/11/2006 | | Invoice/Credit Card Receipts | KROSEN - 000318-320 | Exhibit 10 | 174-176 |
| Personal Property Damage Expense | AZ Plumbing | Plumbing | 75 | 9/12/2008 | | Invoice | KROSEN - 000387 | Exhibit 10 | 243 |
| Personal Property Damage Expense | Central Vacuum Connection | Service Call | 70 | 10/23/2008 | | Invoice | KROSEN - 000386 | Exhibit 10 | 242 |
| Personal Property Damage Expense | First Class AC & Appliance | AC Repair | 79 | 12/4/2008 | | Invoice | KROSEN - 000298 & 000385 | Exhibit 10 | 154 & 241 |
| Personal Property Damage Expense | Florida Public Utilities | Installed left rear burner valve | 130 | 3/4/2009 | | Invoice | KROSEN - 000384 | Exhibit 10 | 240 |
| Personal Property Damage Expense | Sunstate A/C | A/C Repair | 550 | 4/13/2009 | | Invoice | KROSEN - 000388 | Exhibit 10 | 244 |
| Personal Property Damage Expense | Baby Mattress and Pillows | Damaged | 500 | 8/1/2009 | | Claimant | N/A | Exhibit 10 | |
| Personal Property Damage Expense | Silk House Trees and Plants | Damaged | 1,000 | 8/1/2009 | | Claimant | N/A | Exhibit 10 | |
| Personal Property Damage Expense | 8 Foot Rectangular Area Rug for Pool Table | Damaged | 1,000 | 8/1/2009 | | Claimant | N/A | Exhibit 10 | |
| Personal Property Damage Expense | FAO Schwartz Collectible & Other Stuffed Animals | Damaged | 2,500 | 8/1/2009 | | Claimant | N/A | Exhibit 10 | |
| Personal Property Damage Expense | Two 50" Samsung DLP Projection | TVs Damaged | 3,500 | 8/1/2009 | | Claimant | N/A | Exhibit 10 | |
| Personal Property Damage Expense | Italian Imported Custom Carved Wall Unit Abandoned | Movers Unable to Place In Storage | 5,000 | 8/1/2009 | | Claimant | N/A | Exhibit 10 | |
| Personal Property Damage Expense | Laundromat | Cleaning | 97 | 8/8/2009 | | Receipt | KROSEN - 000256 | Exhibit 10 | 112 |
| Personal Property Damage Expense | Posh French Cleaners | Dry Cleaning | 139 | 8/8/2009 | | Receipt | KROSEN - 000223 | Exhibit 10 | 79 |
| Personal Property Damage Expense | Laundromat | Cleaning | 20 | 8/12/2009 | | Receipt | KROSEN - 000258 | Exhibit 10 | 114 |
| Personal Property Damage Expense | Posh French Cleaners | Dry Cleaning | 1,167 | 8/15/2009 | | Receipt | KROSEN - 000149 | Exhibit 10 | 5 |
| Personal Property Damage Expense | Laundromat | Cleaning | 22 | 8/16/2009 | | Receipt | KROSEN - 000257 | Exhibit 10 | 113 |
| Personal Property Damage Expense | Laundromat | Cleaning | 91 | 8/16/2009 | | Receipt | KROSEN - 000259 | Exhibit 10 | 115 |
| Personal Property Damage Expense | Stain Away Rug Cleaning | Area Rugs | 338 | 8/17/2009 | | Check | KROSEN - 000344 | Exhibit 10 | 200 |
| Personal Property Damage Expense | Posh French Cleaners | Dry Cleaning | 545 | 8/21/2009 | | Receipt | KROSEN - 000192 | Exhibit 10 | 48 |
| Personal Property Damage Expense | Posh French Cleaners | Dry Cleaning | 56 | 8/29/2009 | | Receipt | KROSEN - 000251 | Exhibit 10 | 107 |
| Personal Property Damage Expense | Laundromat | Cleaning | 12 | 8/30/2009 | | Receipt | KROSEN - 000260 | Exhibit 10 | 116 |
| Personal Property Damage Expense | Posh French Cleaners | Dry Cleaning | 56 | 9/4/2009 | | Receipt | KROSEN - 000251 | Exhibit 10 | 110 |
| Personal Property Damage Expense | Posh French Cleaners | Dry Cleaning | 280 | 9/23/2009 | | Receipt | KROSEN - 000250 | Exhibit 10 | 106 |
| **Personal Property Damage Expense Total** | | | $ 22,482 | | | | | | |
| Additional Damages | FedEx to Colson Hicks | Delivery Fees | $ 5 | 8/11/2009 | | Receipt | KROSEN - 000263 | Exhibit 10 | 119 |
| Additional Damages | FedEx to Colson Hicks | Delivery Fees | 91 | 8/11/2009 | | Receipt | KROSEN - 000264 | Exhibit 10 | 120 |
| **Additional Damages Total** | | | $ 97 | | | | | | |

Exhibit 18.2 (Revised)
Lost Equity - Kevin & Stacey Rosen

*Chinese Drywall Litigation Involving Priority Claimants*

| | | | | Source Document |
|---|---|---|---|---|
| Initial Acquisition | | | | |
| Purchase Price | | $ | 1,050,000 | HUD Statement dated 8/7/06 KROSEN - 000106 |
| Settlement Charges | | | 70,854 | HUD Statement dated 8/7/06 KROSEN - 000106 |
| Total Gross Amount Due from Claimant | | $ | 1,120,854 | |
| | | | | |
| Less | | | | |
| Deposit Made by Claimant | | $ | (210,000) | HUD Statement dated 8/7/06 KROSEN - 000106 |
| Borrowings by Claimant | | | (175,000) | HUD Statement dated 8/7/06 KROSEN - 000106 |
| Credits | | | (37,500) | HUD Statement dated 8/7/06 KROSEN - 000106 |
| Amount Due from Claimant at Close | | $ | 698,354 | |
| | | | | |
| Funds Paid by Claimant | | | | |
| Deposit Paid with Contract | | $ | 210,000 | HUD Statement dated 8/7/06 KROSEN - 000106 |
| Closing Cash payments | | | 698,354 | HUD Statement dated 8/7/06 KROSEN - 000106 |
| Adjustments from Closing Statement at Purchase: | | | | |
| Line 107. County Taxes | | | (4,202) * | HUD Statement dated 8/7/06 KROSEN - 000106 |
| Line 110. HOA Reimbursement | | | (10,639) * | HUD Statement dated 8/7/06 KROSEN - 000106 |
| Line 901. Interest | | | (809) * | HUD Statement dated 8/7/06 KROSEN - 000106 |
| Line 1001. Hazard Insurance Deposited with lender | | | (1,687) * | HUD Statement dated 8/7/06 KROSEN - 000107 |
| Line 1004. County Taxes Deposited with lender | | | (4,202) * | HUD Statement dated 8/7/06 KROSEN - 000107 |
| Line 1007. Flood Insurance Deposited with lender | | | (79) * | HUD Statement dated 8/7/06 KROSEN - 000107 |
| Line 1008. Aggregate Adjustment | | | 1,767 * | HUD Statement dated 8/7/06 KROSEN - 000107 |
| Line 1304.3rd Quarter HOA | | | (1,172) * | HUD Statement dated 8/7/06 KROSEN - 000107 |
| Line 1305.4th Quarter POA | | | (1,943) * | HUD Statement dated 8/7/06 KROSEN - 000107 |
| Adjusted Payments for Initial Purchase | a | $ | 885,387 | |
| | | | | |
| 1st Mortgage | | | | |
| Mortgage at Acquisition Date | | $ | 175,000 | HUD Statement dated 8/7/06 KROSEN - 000106 |
| Mortgage Balance at Refinancing | | | 172,415 | Settlement Statement dated 4/10/08 KROSEN - 000121 |
| Principal Payments Made | b | $ | 2,585 | |
| | | | | |
| Refinance: | | | | |
| Funds Received from Refinance | | $ | (11,512) * | Settlement Statement dated 4/10/08 KROSEN - 000121 |
| Adjustments for insurance and real estate reserves and other closing costs | | | (16,073) * | Settlement Statement dated 4/10/08 KROSEN - 000122 |
| Adjusted Funds Received from Refinance | c | $ | (27,585) | |
| | | | | |
| Refinance of Mortgage | | | | |
| Mortgage Beginning Balance | | $ | 200,000 | Settlement Statement dated 4/10/08 KROSEN - 000121 |
| Mortgage Balance at Payoff | | | 174,949 | HUD Statement dated 12/23/09 KROSEN - 000002 |
| Principal Payments Made | d | $ | 25,051 | |
| | | | | |
| Capital Improvements | e | $ | 142,129 | Exhibit 18.2A & KROSEN - 002237-2238, Exhibit 11 |
| | | | | |
| Less: Cash Paid to Claimants upon Sale of Home | | $ | (284,042) | HUD Statement dated 12/23/09 KROSEN - 000002 |
| Adjustments from Closing Statement at Sale: | | | | |
| Line 407. County Taxes | | | 412 * | HUD Statement dated 12/23/09 KROSEN - 000002 |
| Adjusted Cash Paid to Claimants upon Sale of Home | f | $ | (283,630) | |
| | | | | |
| Total Lost Equity | = a + b + c + d + e + f | $ | 743,935 | |

Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 440 of 802
Case 1:11-cv-22408-MGC Document 272 Entered on FLSD Docket 08/15/2014 Page 257 of
172

Exhibit 18.2A
Lost Equity - Kevin & Stacey Rosen

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Capital Improvements | Albanese Construction Upgrades | Work Order #1 - Impact Glass | $ 29,410 | 3/14/2005 | | Work Order/Check | KROSEN - 001775/001761 | N/A | 62/48 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #2 - Staircase | 19,283 | 3/14/2005 | | Work Order/Check | KROSEN - 001776/001761 | N/A | 63/48 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #3 - In Wall Pest Control | 659 | 3/14/2005 | | Work Order/Check | KROSEN - 001793/001761 | N/A | 79/48 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #4 - Gas Line for Barbeque | 553 | 3/14/2005 | | Work Order/Check | KROSEN - 001792/001762 | N/A | 80/49 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #5 - Dining Room Columns | 388 | 3/14/2005 | | Work Order/Check | KROSEN - 001794/001762 | N/A | 81/49 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #6 - Speaker System | 2,975 | 8/1/2005 | | Work Order/Check | KROSEN - 001755/001949 | N/A | 42/236 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #7 - DECLINED - Radio Back-Up Alarm System | - | N/A | | Work Order | KROSEN - 001754 | N/A | 41 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #8 - Structured Cabling | 999 | 6/16/2005 | | Work Order/Check | KROSEN - 001870/001872 | N/A | 157/159 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #9 - TV Outlet | 72 | 8/1/2005 | | Work Order/Check | KROSEN - 001909/001949 | N/A | 196/236 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #10 - Angled Archway Living Room | 584 | 3/14/2005 | | Work Order/Check | KROSEN - 001795/001762 | N/A | 82/49 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #11 - Plumbing Fixtures | 1,386 | 8/1/2005 | | Work Order/Check | KROSEN - 001949/001952 | N/A | 236/239 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #12 - Additional Pavers | 2,705 | 9/22/2005 | | Work Order/Check | KROSEN - 002177/002181 | N/A | 464/468 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #13 - Additional Fence | 1,692 | 9/22/2005 | | Work Order/Check | KROSEN - 002178/002181 | N/A | 465/468 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #14 - Upgrade Granite Kitchen/Powder | 3,794 | 8/1/2005 | | Work Order/Check | KROSEN - 001907/001949 | N/A | 194/236 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #15 - Electrical Revisions | 446 | 8/8/2005 | | Work Order | KROSEN - 001927 | N/A | 214 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #16 - Marble Flooring | 2,682 | 6/27/2005 | | Work Order/Check | KROSEN - 001839/001840 | N/A | 126/127 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #17 - Powder Room Mirror (Credit) | (210) | 8/15/2005 | | Work Order | KROSEN - 002062 | N/A | 349 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #18 - Master Shower Enclosure | 102 | 9/12/2005 | | Work Order/Check | KROSEN - 002199/002200 | N/A | 486/487 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #19 - Pool | 5,335 | 9/22/2005 | | Work Order/Check | KROSEN - 002179/002181 | N/A | 466/468 |
| Capital Improvements | Albanese Construction Upgrades | C.K. Security - Pre-Wire Camera Security | 671 | 9/24/2005 | | Work Order | KROSEN - 002173 | N/A | 460 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #20 - Pool Tile Upgrade | 432 | 10/9/2005 | | Work Order/Check | KROSEN - 002158/002159 | N/A | 445/446 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #21 - Cabinets | 9,949 | 11/14/2005 | | Work Order/Check | KROSEN - 002132/002137 | N/A | 419/424 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #22 - Appliances | 838 | 11/14/2005 | | Work Order/Check | KROSEN - 002134/002137 | N/A | 421/424 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #23 - Kitchen Counter Top | 255 | 11/14/2005 | | Work Order/Check | KROSEN - 002136/002137 | N/A | 423/424 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #24 - Kitchen Backsplash | 213 | 5/8/2006 | | Work Order/Check | KROSEN - 002005/002006 | N/A | 292/293 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #25 - Exterior Columns | 2,270 | 11/26/2005 | | Work Order/Check | KROSEN - 002125/002126 | N/A | 412/413 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #26 - Carpet (Credit) | (116) | 11/24/2005 | | Work Order | KROSEN - 002063 | N/A | 350 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #27 - Bath Shower to Tub | 1,629 | 1/3/2006 | | Work Order/Check | KROSEN - 002098/002099 | N/A | 385/386 |
| Capital Improvements | Albanese Construction Upgrades | C.K. Security - Pre-Wire Camera Security | 767 | 1/9/2006 | | N/A | KROSEN - (001714 - 002236) | N/A | |
| Capital Improvements | Albanese Construction Upgrades | Work Order #28 - Electrical / High Hats | 417 | 1/25/2006 | | Work Order/Check | KROSEN - 002079/002093 | N/A | 366/380 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #29 - Transom Window (Credit) | (605) | 2/27/2006 | | Work Order | KROSEN - 002061 | N/A | 348 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #30 - Stainless Steel Appliance | 1,605 | 2/27/2006 | | Work Order/Check | KROSEN - 002057/002060 | N/A | 344/347 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #31 - Wood Flooring | 4,502 | 5/7/2006 | | Work Order/Check | KROSEN - 002018/002023 | N/A | 305/310 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #32 - Bath #4 Counter Top | 1,116 | 6/9/2006 | | Work Order/Check | KROSEN - 001990/001993 | N/A | 277/280 |
| Capital Improvements | Albanese Construction Upgrades | Work Order #33 - Re-Paint Ceilings | 4,734 | 6/9/2006 | | Work Order/Check | KROSEN - 001991/001993 | N/A | 278/280 |
| Capital Improvements | Albanese Construction Upgrades | Landscape | 13,300 | 6/19/2006 | | Work Order/Check | KROSEN - 001982 - 001985 | N/A | 269-272 |
| Capital Improvements | Personalized Power Systems | Full Home Generator - Deposit | 10,000 | 1/10/2008 | | Receipt | | Exhibit 11 | 6 |
| Capital Improvements | Personalized Power Systems | Full Home Generator - Delivery Fee | 15,800 | 2/18/2008 | | Receipt | | Exhibit 11 | 7 |
| Capital Improvements | Personalized Power Systems | Full Home Generator - At Startup | 1,000 | 3/10/2008 | | Receipt | | Exhibit 11 | 8 |
| Capital Improvements | Personalized Power Systems | Full Home Generator - Final Inspection | 500 | 3/19/2008 | | Receipt | | Exhibit 11 | 9 |
| **Capital Improvements Total** | | | **$ 142,129** | | | | | | |

18.A
Documents and Other Information Considered - Kevin & Stacey Rosen

*Chinese Drywall Litigation Involving Priority Claimants*

*Bate Stamp (if applicable)*

| No. | Claimant | General Description | First Page | Last Page |
|---|---|---|---|---|
| **A. Pleadings and Other Legal Documents:** | | | | |
| 1 | All | Judge Cooke's Order, dated November 16, 2018 | | |
| 2 | Rosen-KS | Claimant Kevin & Stacey Rosen Answers to Interrogatories - Amended | | |
| 3 | Rosen-KS | Claimant Kevin & Stacey Rosen Answers to Defendant's Second Set of Interrogatories, dated December 4, 2018 | | |
| 4 | Rosen-KS | Claimant Kevin & Stacey Rosen Supplemental Plaintiff Profile Form | | |
| **B. Depositions & Corresponding Exhibits:** | | | | |
| 1 | Rosen-KS | Deposition Transcript of Kevin Rosen, dated December 19, 2018 | | |
| 2 | Rosen-KS | Deposition Transcript of Stacy Rosen, dated December 19, 2018 | | |
| 3 | Rosen-KS | Deposition Exhibit 01 - Mortgage | KROSEN - 000061 | KROSEN - 000134 |
| 4 | Rosen-KS | Deposition Exhibit 02 - The Oaks at Boca Raton Agreement for Purchase and Sale | KROSEN - 000005 | KROSEN - 000054 |
| 5 | Rosen-KS | Deposition Exhibit 03 - Claimant Kevin Rosen's Answers to Defendants Interrogatories | | |
| 6 | Rosen-KS | Deposition Exhibit 04 - Uniform Residential Appraisal Report | | |
| 7 | Rosen-KS | Deposition Exhibit 05 - Residential Full Report | KROSEN - 000055 | KROSEN - 000058 |
| 8 | Rosen-KS | Deposition Exhibit 06 - Declaration of Correctness of Square Footage on Chinese Drywall Client(s) Property for Remediation Damages | | |
| 9 | Rosen-KS | Deposition Exhibit 07 - Inspection Report - Product ID 09/15/2009 | KROSEN - 000566 | KROSEN - 000568 |
| 10 | Rosen-KS | Deposition Exhibit 08 - Supplemental Plaintiff Profile Form | | |
| 11 | Rosen-KS | Deposition Exhibit 09 - June 24, 2009 Letter from Vincent Altino and Lease Agreement | KROSEN - 000135 | KROSEN - 000144 |
| 12 | Rosen-KS | Deposition Exhibit 10 - Out-of-Pocket Expenses | KROSEN - 000145 | KROSEN - 000393 |
| 13 | Rosen-KS | Deposition Exhibit 11 - Claimant Affidavit of Chinese Drywall Economic Damages | | |
| 14 | Rosen-KS | Deposition Exhibit 12 - (Inadvertently not marked - no exhibit) | | |
| 15 | Rosen-KS | Deposition Exhibit 13 - August 15, 2018 Chinese Drywall Settlement Program Check Copy | | |
| 16 | Rosen-KS | Deposition Exhibit 14 - US Individual Income Tax Return 2009 | KROSEN - 000500 | KROSEN - 000565 |
| 17 | Rosen-KS | Deposition Exhibit 15 - Warranty Deed | KROSEN - 000001 | KROSEN - 000004 |
| 18 | Rosen-KS | Deposition Exhibit 16 - December 23, 2009 Agreement Between Florida Campbell Real Estate Holdings, Inc., and Kevin and Stacey Rosen | KROSEN - 0000978 | KROSEN - 0000978 |
| 19 | Rosen-KS | Deposition Exhibit 17 - August 2, 2016 Chinese Drywall Settlement Program Check Copy | | |
| **C. Supporting Documentation** | | | | |
| 1 | Rosen-KS | Rosen Out of Pocket Damages Summary Provided by Counsel | | |
| 2 | Rosen-KS | KROSEN - (002239-2524) - House Re-Model 2008 | KROSEN - 002239 | KROSEN - 002524 |
| 3 | Rosen-KS | KROSEN - (002237-2238) - Chinese Drywall Upgrades Change Order List - 12-19-18 | KROSEN - 002237 | KROSEN - 002238 |
| 4 | Rosen-KS | KROSEN - (001714-002236) - Upgrades and Work Orders | KROSEN - 001714 | KROSEN - 002236 |
| 5 | Rosen-KS | KROSEN - (000500-000565) - 1049 Income Tax Documentation (Redacted) | KROSEN - 000500 | KROSEN - 000565 |
| 6 | Rosen-KS | KROSEN - (000417-000421) - Client Affidavit | KROSEN - 000417 | KROSEN - 000421 |
| 7 | Rosen-KS | KROSEN - (000145-000393) - Payments, Expenses | KROSEN - 000145 | KROSEN - 000393 |
| 8 | Rosen-KS | KROSEN - (000135-000144) - Townhouse Rental Lease - Rosen | KROSEN - 000135 | KROSEN - 000144 |
| 9 | Rosen-KS | KROSEN - (000061-000134) - Purchase of Home & Mortgage Docs | KROSEN - 000061 | KROSEN - 000134 |

18.A
Documents and Other Information Considered - Kevin & Stacey Rosen

---

*Chinese Drywall Litigation Involving Priority Claimants*

*Bate Stamp (if applicable)*

| No. | Claimant | General Description | First Page | Last Page |
|-----|----------|---------------------|------------|-----------|
| 10 | Rosen-KS | KROSEN - (000059-000060) - Tax Docs | KROSEN - 000059 | KROSEN - 000060 |
| 11 | Rosen-KS | KROSEN - (000055-000058) - Appraisal Report | KROSEN - 000055 | KROSEN - 000058 |
| 12 | Rosen-KS | KROSEN - (000005-000054) - Purchase Documents 2004 | KROSEN - 000005 | KROSEN - 000054 |
| 13 | Rosen-KS | KROSEN - (000001-000004) - Sale of Home in 2009 Documents | KROSEN - 000001 | KROSEN - 000004 |
| 14 | Rosen-KS | Doc ID. 366865 - Rosen-KS - Capital Improvements List | | |

<u>D. Research and Other Sources:</u>

| | | |
|---|---|---|
| 1 | Rosen-KS | Telephone Conversation with Counsel and Kevin Rosen |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-22408-Civ-COOKE

EDUARDO AND CARMEN AMORIN, *et al.*,
individually and on behalf of others similarly
situated,

      Plaintiffs,

vs.

TAISHAN GYPSUM CO., LTD., f/k/a
SHANDONG TIASHE DONGXIN CO. LTD.,
*et al.*,

      Defendants.

_____

# Exhibit 19 (Revised)

## Calculations of Damages for Priority Claimants

# Larry & Rosalee Walls

EXHIBIT TO THE EXPERT WITNESS REPORT OF:
MICHAEL P. ELKIN, CPA/CFF/ABV, CFE
IN THE PRIORITY CLAIMANT TRIAL

April 26, 2019



Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 444 of 802
Case 1:11-cv-22408-MGC Document 272 Entered on FLSD Docket 09/15/2015 Page 161 of
172

Exhibit 19
Data and Damage Summary - Larry & Rosalee Walls

*Chinese Drywall Litigation Involving Priority Claimants*

| Data: | | Reference / Notes |
|---|---|---|
| Address of Affected property | 2510 Van Buren Pkwy. | *SPPF* |
| | Cape Coral, FL 33993 | *SPPF* |
| Date Affected property acquired | September 1, 2006 | *SPPF* |
| Date Chinese drywall installed | 2006 | *SPPF* |
| Date moved into Affected property | September 1, 2006 | *SPPF* |
| Date first aware of Chinese drywall | August-09 | *SPPF* |
| | | |
| Move out date to alternate living | June-10 | *ROG 1, #2* |
| Date returned to Affected property | Never | *ROG 1, #2* |
| End date for alternate living expenses | Never | *ROG 1, #2* |
| | | |
| Still own property? | N | *SPPF* |
| Bankruptcy caused by damage? | N | *SPPF* |
| Foreclosure or short sale? | Y | *SPPF* |
| Affected property sold? | Y | *SPPF* |
| Sale date | July 18, 2014 | *SPPF* |
| Type of sale | Foreclosure | *ROG 1, #2* |
| | | |
| Remediation status | None | *SPPF* |
| Remediation period | N/A | *SPPF* |

| Damage Summary: | | |
|---|---|---|
| Full or Partial Out-of-Pocket Remediation Expenses | $ - | |
| | | |
| Other Damages | | |
| Alternate Living Expenses | $ 65,000 | *Exh. 19.1* |
| Personal Property Damage Expense | 30,932 | *Exh. 19.1* |
| Additional Damages | - | |
| | $ 95,932 | |
| | | |
| Lost Equity | $ 49,880 | *Exh. 19.2* |
| | | |
| Diminution in Value | TBD | |
| | | |
| Loss of Use and Enjoyment | TBD | |
| | | |
| Punitive Damages | TBD | |

Exhibit 19.1
Damage Claims Detail - Larry & Rosalee Walls

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|------|--------|-------------|--------|------|--------------|----------------|-------|------------------|--------------|
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | $ 1,300 | 6/1/2010 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 7/1/2010 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 8/1/2010 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 9/1/2010 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 10/1/2010 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 11/1/2010 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 12/1/2010 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 1/1/2011 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 2/1/2011 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 3/1/2011 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 4/1/2011 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 5/1/2011 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 6/1/2011 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 7/1/2011 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 8/1/2011 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 9/1/2011 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 10/1/2011 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 11/1/2011 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 12/1/2011 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 1/1/2012 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 2/1/2012 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 3/1/2012 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 4/1/2012 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 5/1/2012 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 6/1/2012 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 7/1/2012 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 8/1/2012 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 9/1/2012 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 10/1/2012 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 11/1/2012 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 12/1/2012 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 1/1/2013 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 2/1/2013 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 3/1/2013 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 4/1/2013 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 5/1/2013 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 6/1/2013 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 7/1/2013 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 8/1/2013 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 9/1/2013 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 10/1/2013 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 11/1/2013 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 12/1/2013 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 1/1/2014 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 2/1/2014 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 3/1/2014 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 4/1/2014 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 5/1/2014 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |

Exhibit 19.1
Damage Claims Detail - Larry & Rosalee Walls

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|------|--------|-------------|--------|------|--------------|----------------|-------|------------------|--------------|
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 6/1/2014 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| Alternate Living Expenses | N/A - Foregone Rent from Mark & Lisa Kegley | Foregone Rent from Alternative Residence | 1,300 | 7/1/2014 | X | Lease Agreement | N/A | Exhibit 9, 12, 16 | 1 |
| **Alternate Living Expenses Total** | | | **$ 65,000** | | | | | | |
| Personal Property Damage Expense | National Home Furnishing Center | Paradisio Dining Room and Bar Stools | $ 4,802 | 10/2/2006 | | Invoice | N/A | Exhibit 11 | 3 |
| Personal Property Damage Expense | Spectrum Home Furnishing | Wall Unit and Sofa | 3,478 | 10/22/2006 | | Invoice | N/A | Exhibit 11 | 9 |
| Personal Property Damage Expense | Norris Furniture | Royal Palm Tree Silk | 590 | 11/5/2006 | | Invoice | N/A | Exhibit 11 | 2 |
| Personal Property Damage Expense | Special Delivery Services | Bedroom Furniture | 3,377 | 11/18/2006 | | Invoice | N/A | Exhibit 11 | 11 |
| Personal Property Damage Expense | Spectrum Home Furnishing | Euro Bar Cabinet | 742 | 12/3/2006 | | Receipt | N/A | Exhibit 11 | 8 |
| Personal Property Damage Expense | Spectrum Home Furnishing | Bombay Chest | 878 | 12/14/2006 | | Invoice | N/A | Exhibit 11 | 7 |
| Personal Property Damage Expense | Home Depot | Refrigerator | 504 | 1/8/2007 | | Receipt | N/A | Exhibit 11 | 13 |
| Personal Property Damage Expense | Lowe's | Ceiling Fans, etc. | 671 | 5/22/2007 | | Statement | N/A | Exhibit 11 | 14 |
| Personal Property Damage Expense | Vertical Factory | Blinds | 68 | 7/23/2007 | | Receipt | N/A | Exhibit 11 | 6 |
| Personal Property Damage Expense | Moores Furniture | Two White Sofas | 2,232 | 11/29/2008 | | Claimant | N/A | Exhibit 11 | 19 |
| Personal Property Damage Expense | Sears | Two Televisions | 3,922 | 1/5/2009 | | Claimant/Credit Card Statement | N/A | Exhibit 10 | 1 |
| Personal Property Damage Expense | Rugs of Merit | Rugs | 1,060 | 6/30/2010 | | Claimant | N/A | Exhibit 10 | 1 |
| Personal Property Damage Expense | Vailennzierge | 10x8 Rug - Dining Room | 1,254 | 6/30/2010 | | Claimant | N/A | Exhibit 10 | 1 |
| Personal Property Damage Expense | Vailennzierge | 8x8 Rug - Dining Room | 1,254 | 6/30/2010 | | Claimant | N/A | Exhibit 10 | 1 |
| Personal Property Damage Expense | Vailennzierge | 4x5 Rug - Dining Room | 362 | 6/30/2010 | | Claimant | N/A | Exhibit 10 | 1 |
| Personal Property Damage Expense | Leisure World - Window Treatments | Personal Property Claim | 5,738 | 6/30/2010 | | Claimant | N/A | Exhibit 10 | 1 |
| **Personal Property Damage Expense Total** | | | **$ 30,932** | | | | | | |

Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 447 of 802
Case 1:11-cv-22408-MGC Document 272 Entered on FLSD Docket 08/15/2019 Page 464 of
172

Exhibit 19.2
Lost Equity - Larry & Rosalee Walls

*Chinese Drywall Litigation Involving Priority Claimants*

| | | | | Source Document |
|---|---|---|---|---|
| Initial Acquisition | | | | |
| Purchase Price | | $ | 25,000 | Lee County Property Appraiser Doc ID. 344520 |
| Settlement Charges | | | N/A | |
| Total Gross Amount Due from Claimant | | $ | 25,000 | |
| | | | | |
| Less | | | | |
| Deposit Made by Claimant | | | N/A | |
| Borrowings by Claimant | | | N/A | |
| Credits | | | N/A | |
| Amount Due from Claimant at Close | | $ | 25,000 | |
| | | | | |
| Funds Paid by Claimant | | | | |
| Deposit paid with Contract | | $ | 25,000 | |
| Closing cash payments | | | N/A | |
| Total Payments for Initial Purchase | a | $ | 25,000 | |
| | | | | |
| Deposit with Contractor | b | $ | 24,880 | Construction Contract Doc ID. 366087, PDF Pg. 2 |
| | | | | |
| Mortgage | | | | |
| Mortgage Beginning Balance | | $ | 302,000 | Mortgage Doc ID. 365798 |
| Mortgage Balance at Payoff[1] | | | 335,085 | Final Judgment in Mortgage Foreclosure  DOC ID. 361729 |
| Principal Payments Made | c | $ | - | |
| | | | | |
| Total Lost Equity | = a + b + c | $ | 49,880 | |

Notes:
[1] Per the Final Judgment in Mortgage Foreclosure, the principal balance is $335,084.73.
The Mortgage filed on 11/27/06 was in the amount of $302,000.  As we do not have any information
as to Principal Payments made, we have excluded this from the calculation of Lost Equity.
Should that information be provided this Lost Equity is subject to change.

Case 1:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 448 of 802
Case 1:11-cv-22408-MGC Document 272 Entered on FLSD Docket 08/15/2019 Page 165 of
172

19.A
Documents and Other Information Considered - Larry & Rosalee Walls

*Chinese Drywall Litigation Involving Priority Claimants*

*Bate Stamp (if applicable)*

| No. | Claimant | General Description | First Page | Last Page |
|---|---|---|---|---|
| **A. Pleadings and Other Legal Documents:** | | | | |
| 1 | All | Judge Cooke's Order, dated November 16, 2018 | | |
| 2 | Walls | Priority Claimant Rosalee Walls Answers to Interrogatories, dated | | |
| 3 | Walls | Priority Claimant Rosalee Walls Answers to Defendant's Second Set of Interrogatories, dated | | |
| 4 | Walls | Priority Claimant Larry Walls Answers to Interrogatories, dated | | |
| 5 | Walls | Priority Claimant Larry Walls Answers to Defendant's Second Set of Interrogatories, dated | | |
| 6 | Walls | Larry Walls Third Amended Supplemental Profile Plaintiff Profile Form, dated December 10, 2018 | | |
| 7 | Walls | Priority Claimant Larry Walls First Amended Answers to Interrogatories, dated December 10, 2018 | | |
| 8 | Walls | Priority Claimant Rosalee Walls First Amended Answers to Interrogatories, dated December 10, 2018 | | |
| **B. Depositions & Corresponding Exhibits:** | | | | |
| 1 | Walls | Deposition Transcript of Larry Walls, dated December 11, 2018 | | |
| 2 | Walls | Deposition Transcript of Rosalee Walls, dated December 11, 2018 | | |
| 3 | Walls | Deposition Exhibit 01 - Lee County Appraiser - Online Parcel Inquiry - Property Data | | |
| 4 | Walls | Deposition Exhibit 02 - Warranty Deed | | |
| 5 | Walls | Deposition Exhibit 03 - Aranda Homes, Inc. - Floor Plan | | |
| 6 | Walls | Deposition Exhibit 04 - Plaintiff Profile Form - Residential Properties | Walls,L00001 | Walls,L00030 |
| 7 | Walls | Deposition Exhibit 05 - Supplemental Plaintiff Profile Form - Residential and Commercial Properties (Non-Knauf) | | |
| 8 | Walls | Deposition Exhibit 06 - Liberty Mutual Fire Insurance Company - Residence Damage Evaluation | | |
| 9 | Walls | Deposition Exhibit 07 - AirQuest Environmental, Inc. Report | ARI 01170 | ARI 01197 |
| 10 | Walls | Deposition Exhibit 08 - Benchmark Remediation Group - Report | | |
| 11 | Walls | Deposition Exhibit 09 - Priority Claimant Larry Walls' First Amended Answers to Interrogatories | | |
| 12 | Walls | Deposition Exhibit 10 - Chinese Drywall Settlement Program Miscellaneous Claim Form | | |
| 13 | Walls | Deposition Exhibit 11 - Receipts and Photographs of Miscellaneous Items | | |
| 14 | Walls | Deposition Exhibit 12 - Alternative Living Expenses | | |
| 15 | Walls | Deposition Exhibit 13 - American Home Mortgage Servicing D.I.P. - Monthly Billing Statement and Check Copies | | |
| 16 | Walls | Deposition Exhibit 14 - September 29, 2010 Letter from Morgan & Morgan to American Home Mortgage Servicing, Inc | | |
| 17 | Walls | Deposition Exhibit 15 - October 18, 2010 Letter from Moss Codilis, LLP to Larry and Rosalee Walls and Notice of Proposed Property Taxes | | |
| 18 | Walls | Deposition Exhibit 16 - Final Judgment in Mortgage Foreclosure | | |
| **C. Supporting Documentation** | | | | |
| 1 | Walls | Larry and Rosalee Walls Out of Pocket Damages Summary Provided by Counsel | | |
| 2 | Walls | Doc ID. 150324 - Breakdown of expenses to maintain affected property | | |
| 3 | Walls | Doc ID. 150329 - Lease Agreement for Rental Property, $1,300.00 per month for 39 months | | |
| 4 | Walls | Doc ID. 150341 - Damaged furniture, clothing...etc. | | |
| 5 | Walls | Doc ID. 150347 - Damaged furniture, clothing...etc. | | |
| 6 | Walls | Doc ID. 256780 - Lee County Tax Collector's Office | | |

Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 449 of 802
Case 1:11-cv-22408-MGC Document 272 Entered on FLSD Docket 09/13/2019 Page 166 of
172

19.A
Documents and Other Information Considered - Larry & Rosalee Walls

_Chinese Drywall Litigation Involving Priority Claimants_

_Bate Stamp (if applicable)_

| No. | Claimant | General Description | First Page | Last Page |
|-----|----------|---------------------|------------|-----------|
| 7 | Walls | Doc ID. 256781 - LCEC Bill | | |
| 8 | Walls | Doc ID. 257047 - City of Cape Coral Fire Assessment | | |
| 9 | Walls | Doc ID. 344520 - Cash Payment for land 3/11/002 | | |
| 10 | Walls | Doc ID. 366086 - Damaged furniture, clothing...etc. | | |
| 11 | Walls | Doc ID. 366087 - Deposit for construction of home | | |
| 12 | Walls | Doc ID. 361729 - Walls Foreclosure Document - Judgment | | |
| 13 | Walls | Doc ID. 365798 - Walls Mortgage Van Buren Pkwy | | |
| 14 | Walls | Doc ID. 365797 - Walls Proof of Payment for Mortgage on Van Buren | | |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-22408-Civ-COOKE

EDUARDO AND CARMEN AMORIN, *et al.*,
individually and on behalf of others similarly
situated,

       Plaintiffs,

vs.

TAISHAN GYPSUM CO., LTD., f/k/a
SHANDONG TIASHE DONGXIN CO. LTD.,
*et al.*,

       Defendants.

_____

# Exhibit 20 (Revised)

## Calculations of Damages for Priority Claimants

# Marc & Jennifer Wites

EXHIBIT TO THE EXPERT WITNESS REPORT OF:
MICHAEL P. ELKIN, CPA/CFF/ABV, CFE
IN THE PRIORITY CLAIMANT TRIAL

April 26, 2019



Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 451 of 802
Case 1:11-cv-22408-MGC Document 272 entered on FLSD Docket 08/15/2013 Page 168 of
172

Exhibit 20
Data and Damage Summary - Jennifer & Marc Wites

*Chinese Drywall Litigation Involving Priority Claimants*

| Data: | | Reference / Notes |
|---|:---:|:---:|
| Address of Affected property | 17625 Middlebrook Way | *SPPF* |
| | Boca Raton, FL 33496 | *SPPF* |
| Date Affected property acquired | June-07 | *SPPF* |
| Date Chinese drywall installed | Unknown | *SPPF* |
| Date moved into Affected property | June-07 | *SPPF* |
| Date first aware of Chinese drywall | July-09 | *SPPF* |
| | | |
| Move out date to alternate living | June 11, 2010 | *ROG 1, #2* |
| Date returned to Affected property | February 12, 2011 | *ROG 1, #2* |
| End date for alternate living expenses | February 12, 2011 | *ROG 1, #2* |
| | | |
| Still own property? | Y | *SPPF* |
| Bankruptcy caused by damage? | N | *SPPF* |
| Foreclosure or short sale? | N | *SPPF* |
| Affected property sold? | N | *SPPF* |
| Sale date | N/A | *SPPF* |
| Type of sale | N/A | *SPPF* |
| | | |
| Remediation status | Completed | *SPPF* |
| Remediation period | June 11, 2010 - February 11, 2011 | *SPPF* |

| Damage Summary: | | |
|---|:---:|:---:|
| Full or Partial Out-of-Pocket Remediation Expenses | $ 261,102 | *Exh. 20.1* |
| | | |
| Other Damages | | |
| Alternate Living Expenses | $ 37,795 | *Exh. 20.1* |
| Personal Property Damage Expense | 966 | *Exh. 20.1* |
| Additional Damages | - | |
| | $ 38,761 | |
| | | |
| Lost Equity | TBD | |
| | | |
| Diminution in Value / Lost Equity | TBD | |
| | | |
| Punitive Damages | TBD | |

Exhibit 20.1
Damage Claims Detail - Jennifer & Marc Wites

*Chinese Drywall Litigation Involving Priority Claimants*

| Type | Vendor | Description | Amount | Date | Date Assumed | Supporting Doc | Bates | Exhibit/ Doc. ID | PDF Page No. |
|---|---|---|---|---|---|---|---|---|---|
| Remediation | B4 & After General Contractors - GC Contract | Contract for Chinese Drywall Remediation Project - Payment #1 (10%) | $ 24,105 | 6/2/2010 | | Check | MWITES-000068 | Exhibit 8 | 68 |
| Remediation | B4 & After General Contractors - Additional | Balance of permit fees | 1,475 | 6/2/2010 | | Check | MWITES-000065 | Exhibit 8 | 68 |
| Remediation | B4 & After General Contractors - GC Contract | Contract for Chinese Drywall Remediation Project - Payment #2 (10% - Environmental) | 24,105 | 9/28/2010 | | Check | MWITES-000069 | Exhibit 8 | 69 |
| Remediation | B4 & After General Contractors - GC Contract | Contract for Chinese Drywall Remediation Project - Payment #3 (20%) | 48,210 | 10/15/2010 | | Check | MWITES-000070 | Exhibit 8 | 70 |
| Remediation | B4 & After General Contractors - GC Contract | Contract for Chinese Drywall Remediation Project - Payment #4 (20%) | 48,210 | 11/3/2010 | | Check | MWITES-000071 | Exhibit 8 | 71 |
| Remediation | B4 & After General Contractors - GC Contract | Contract for Chinese Drywall Remediation Project - Payment #5 (30%) | 72,315 | 2/9/2011 | | Check | MWITES-000067 | Exhibit 8 | 67 |
| Remediation | B4 & After General Contractors - GC Contract | Contract for Chinese Drywall Remediation Project - Payment #6 (10%) | 24,105 | 3/8/2011 | | Check | MWITES-000072 | Exhibit 8 | 64 |
| Remediation | ADT | Payment for new alarm system (old system removed from home per new protocol)(See Am Ex) | 1,868 | 2/12/2011 | X | Amex? And Damage Sum | MWITES-000077 – 000078; MWITES-000079 | Exhibit 8 | 77-79 |
| Remediation | Kirk Bever | Cleaning of home fixtures that smelled like Chinese drywall (see check) | 250 | 2/12/2011 | X | Check | MWITES-000081 | Exhibit 8 | 81 |
| Remediation | Lightbulbs Unlimited | Replacement of Lighting Damaged by Chinese Drywall (Am Ex Statement) | 1,518 | 2/12/2011 | X | Amex? And Damage Sum | MWITES-000077 – 000078 | Exhibit 8 | 77-78 |
| Remediation | Build.com | Replace faucets damaged by Chinese Drywall (Am Ex Statement) | 486 | 2/12/2011 | X | Amex? And Damage Sum | MWITES-000077 – 000078 | Exhibit 8 | 77-78 |
| Remediation | Allied Trade Group | Replacement of Lighting Damaged by Chinese Drywall (Am Ex Statement) | 462 | 2/12/2011 | X | Amex? And Damage Sum | MWITES-000077 – 000078 | Exhibit 8 | 77-78 |
| Remediation | 1stoplighting.com | Replacement of Lighting Damaged by Chinese Drywall (Am Ex Statement) | 289 | 2/12/2011 | X | Amex? And Damage Sum | MWITES-000077 – 000078 | Exhibit 8 | 77-78 |
| Remediation | FEI 121 | Replacement of Plumbing Damaged by Chinese Drywall (Am Ex Statement) | 1,472 | 2/12/2011 | X | Amex? And Damage Sum | MWITES-000077 – 000078 | Exhibit 8 | 77-78 |
| Remediation | Plumber Supply | Replacement of Plumbing Damaged by Chinese Drywall (Am Ex Statement) | 581 | 2/12/2011 | X | Amex? And Damage Sum | MWITES-000077 – 000078 | Exhibit 8 | 77-78 |
| Remediation | B4 & After General Contractors - Additional | Plumbing fixtures | 812 | 2/12/2011 | X | Quote and Damage Sum | MWITES-000045 | Exhibit 8 | 45 |
| Remediation | B4 & After General Contractors - Additional | Demo showers (demo, durock & install) | 6,000 | 2/12/2011 | X | Quote and Damage Sum | MWITES-000045 | Exhibit 8 | 45 |
| Remediation | B4 & After General Contractors - Additional | Tiles for bathrooms | 3,367 | 2/12/2011 | X | Quote and Damage Sum | MWITES-000045 | Exhibit 8 | 45 |
| Remediation | B4 & After General Contractors - Additional | Remove and replace 3 curbs | 600 | 2/12/2011 | X | Quote and Damage Sum | MWITES-000045 | Exhibit 8 | 45 |
| Remediation | Brenner Architecture | Copy of Original Plans required for repair and remediation (see invoice) | 130 | 2/12/2011 | X | Invoice | MWITES-000080 | Exhibit 8 | 80 |
| Remediation | Permit Fees to EZ Permits | Paid with OPP Check No. 250; not included in GC contract (see copy of check) | 140 | 2/12/2011 | X | Activity Report | MWITES-000073 | Exhibit 8 | 73 |
| Remediation | Hawkeye Home Inspection | Inspection of GC Work (see check and invoice) | 495 | 2/12/2011 | X | Activity Report | MWITES-000034 – 000035; MWITES-000074 | Exhibit 8 | 34-35, 74 |
| Remediation | Boca Raton Decorating Center | Paint Required for repair and remediation (Am Ex Statement) | 106 | 2/12/2011 | X | Amex? And Damage Sum | MWITES-000077 – 000078 | Exhibit 8 | 77-78 |
| **Remediation Total** | | | **$ 261,102** | | | | | | |
| Alternate Living Expenses | Elkie Gallechio | Rent | $ 4,480 | 5/27/2010 | | Check | MWITES - 000104 | Exhibit 8 | 104 |
| Alternate Living Expenses | FPL | Rental House - Electric | 110 | 7/6/2010 | | Wachovia Bill Activity | MWITES - 000097 | Exhibit 8 | 97 |
| Alternate Living Expenses | Palm Beach County Water | Rental House - Water | 51 | 7/12/2010 | | Wachovia Bill Activity | MWITES - 000094 | Exhibit 8 | 94 |
| Alternate Living Expenses | Coldwell Banker | Rent | 1,920 | 5/27/2010 | | Check | MWITES - 000104 | Exhibit 8 | 104 |
| Alternate Living Expenses | Elkie Gallechio | Rent | 3,200 | 8/11/2010 | | Check | MWITES - 000030, MWITES - 000088 | Exhibit 8 | 30 & 88 |
| Alternate Living Expenses | Elkie Gallechio | Rent | 9,600 | 9/17/2010 | | Check | MWITES - 000088 | Exhibit 8 | 88 |
| Alternate Living Expenses | Elkie Gallechio | Rent | 3,200 | 12/9/2010 | | Check | MWITES-000100 | Exhibit 8 | 100 |
| Alternate Living Expenses | Elkie Gallechio | Rent | 3,200 | 12/14/2010 | | Check | MWITES - 000088, MWITES-000100 | Exhibit 8 | 88 & 100 |
| Alternate Living Expenses | Mizner Country Club | Fees for Rental | 118 | 11/22/2010 | | Check | MWITES - 000090 | Exhibit 8 | 90 |
| Alternate Living Expenses | Mizner Country Club | Fees for Rental | 150 | 6/15/2010 | | Check | MWITES - 000090 | Exhibit 8 | 90 |
| Alternate Living Expenses | Mizner Country Club | Fees for Rental | 439 | 6/15/2010 | | Check | MWITES - 000090 | Exhibit 8 | 90 |
| Alternate Living Expenses | Palm Beach County Water | Rental House - Water | 118 | 8/11/2010 | | Wachovia Bill Activity | MWITES - 000094 | Exhibit 8 | 94 |
| Alternate Living Expenses | FPL | Rental House - Electric | 335 | 8/11/2010 | | Wachovia Bill Activity | MWITES - 000097 | Exhibit 8 | 97 |
| Alternate Living Expenses | Palm Beach County Water | Rental House - Water | 319 | 8/24/2010 | | Wachovia Bill Activity | MWITES - 000094 | Exhibit 8 | 94 |
| Alternate Living Expenses | Palm Beach County Water | Rental House - Water | 100 | 8/27/2010 | | Wachovia Bill Activity | MWITES - 000094 | Exhibit 8 | 94 |
| Alternate Living Expenses | Palm Beach County Water | Rental House - Water | 147 | 9/28/2010 | | Wachovia Bill Activity | MWITES - 000094 | Exhibit 8 | 94 |
| Alternate Living Expenses | FPL | Rental House - Electric | 381 | 9/28/2010 | | Wachovia Bill Activity | MWITES - 000097 | Exhibit 8 | 97 |
| Alternate Living Expenses | Palm Beach County Water | Rental House - Water | 141 | 11/1/2010 | | Wachovia Bill Activity | MWITES - 000094 | Exhibit 8 | 94 |
| Alternate Living Expenses | FPL | Rental House - Electric | 293 | 11/1/2010 | | Wachovia Bill Activity | MWITES - 000097 | Exhibit 8 | 97 |
| Alternate Living Expenses | Palm Beach County Water | Rental House - Water | 125 | 11/30/2010 | | Wachovia Bill Activity | MWITES - 000094 | Exhibit 8 | 94 |
| Alternate Living Expenses | FPL | Rental House - Electric | 242 | 12/3/2010 | | Wachovia Bill Activity | MWITES - 000097 | Exhibit 8 | 97 |
| Alternate Living Expenses | FPL | Rental House - Electric | 324 | 12/27/2010 | | Wachovia Bill Activity | MWITES - 000097 | Exhibit 8 | 97 |
| Alternate Living Expenses | Expert Carpet Cleaner | Rental House | 155 | 1/14/2011 | | Check | MWITES - 000091 | Exhibit 9 | 91 |
| Alternate Living Expenses | Universal Property & Casualty | Rental Insurance | 717 | 7/8/2010 | | Declaration | MWITES-000086 – 000087; MWITES-000138 – 000189 | Exhibit 8 | 86-87 |
| Alternate Living Expenses | Elite Relocation Moving and Storage | Load at Storage | 700 | 3/1/2011 | | Bank Statement | MWITES-000043/MWITES-000075 | Exhibit 8 | 43 |
| Alternate Living Expenses | Elite Relocation Moving and Storage | Load & Move | 1,353 | 2/8/2011 | | Bank Statement | MWITES-000038/MWITES-000075 | Exhibit 8 | 38 |
| Alternate Living Expenses | Elite Relocation Moving and Storage | Pack, Load & Move | 5,875 | 11/23/2010 | | Bank Statement | MWITES-000075/MWITES-000084 | Exhibit 8 | 83 |
| **Alternate Living Expenses Total** | | | **$ 37,795** | | | | | | |
| Personal Property Damage Expense | SanMar Service Corp. | A/C Repair | $ 966 | 11/20/2009 | | Check | N/A | Exhibit 14 | 52 |
| **Personal Property Damages Expense Total** | | | **$ 966** | | | | | | |

20.A
Documents and Other Information Considered - Marc & Jennifer Wites

*Chinese Drywall Litigation Involving Priority Claimants*

| | | | Bate Stamp (if applicable) | |
|---|---|---|---|---|
| No. | Claimant | General Description | First Page | Last Page |

**A. Pleadings and Other Legal Documents:**

| | | | | |
|---|---|---|---|---|
| 1 | All | Judge Cooke's Order, dated November 16, 2018 | | |
| 2 | Wites | Claimant Jennifer Wites Answers to Defendant's Second Set of Interrogatories, dated December 4, 2018 | | |
| 3 | Wites | Claimant Marc Wites Answers to Defendant's Second Set of Interrogatories, dated December 4, 2018 | | |
| 4 | Wites | Claimant Jennifer Wites Answers to Defendant's Interrogatories, dated November 30, 2018 | | |
| 5 | Wites | Claimant Marc Wites Answers to Defendant's Interrogatories, dated November 30, 2018 | | |
| 6 | Wites | Claimant Marc Wites Supplemental Plaintiff Profile Form | | |

**B. Depositions & Corresponding Exhibits:**

| | | | | |
|---|---|---|---|---|
| 1 | Wites | Deposition Transcript of Marc Wites, dated January 10, 2019 | | |
| 2 | Wites | Deposition Transcript of Jennifer Wites, dated January 10, 2019 | | |
| 3 | Wites | Deposition Exhibit 01 - Warranty Deed Book 21844/Page 1881 through 1882 | | |
| 4 | Wites | Deposition Exhibit 02 - Palm Beach County Property Appraiser Public Records | | |
| 5 | Wites | Deposition Exhibit 03 - Plaintiff Profile Form - Residential Properties | WITES, M 000001 | WITES, M 000008 |
| 6 | Wites | Deposition Exhibit 04 - Inspection Report 8/30/2009 | MWITES - 000082 | MWITES - 000082 |
| 7 | Wites | Deposition Exhibit 05 - Supplemental Plaintiff Profile Form | | |
| 8 | Wites | Deposition Exhibit 06 - Marc and Jennifer Wites Damages Summary | | |
| 9 | Wites | Deposition Exhibit 07 - A1A Document A105 - 2007 Standard Form of Agreement Between Owner and Contractor | | |
| 10 | Wites | Deposition Exhibit 08 - Chart of Expenses Deductible Pursuant to IRS Bulletin on Chinese Drywall | MWITES - 000001 | MWITES - 000103 |
| 11 | Wites | Deposition Exhibit 09 - Photographs | WITES, M 000208 | WITES, M 000269 |
| 12 | Wites | Deposition Exhibit 10 - Photographs | Taishan-Wites000001 | Taishan-Wites000062 |
| 13 | Wites | Deposition Exhibit 11 - Remediation Estimates | | |
| 14 | Wites | Deposition Exhibit 12 - Documents Regarding Chapter 558 Construction Defect Notice | | |
| 15 | Wites | Deposition Exhibit 13 - Documents Regarding Credit Inquiries | | |
| 16 | Wites | Deposition Exhibit 14 - Documents Regarding Palm Beach County Property Taxes | | |
| 17 | Wites | Deposition Exhibit 15 - Documents Regarding Building Permits | | |

**C. Supporting Documentation**

| | | | | |
|---|---|---|---|---|
| 1 | Wites | Marc and Jennifer Wites Damages Summary (prepared by Counsel), dated January 23, 2019 | | |
| 2 | Wites | MWITES - (000701-000706) Utility Bills 2 | MWITES - 000701 | MWITES - 000706 |
| 3 | Wites | MWITES - (000698-000700) FPL Bill | MWITES - 000698 | MWITES - 000700 |
| 4 | Wites | MWITES - (000690-000697) Utility Bills 1 | MWITES - 000690 | MWITES - 000697 |
| 5 | Wites | MWITES - (000341-000376) - Wites Income Tax 2010 | MWITES - 000341 | MWITES - 000376 |
| 6 | Wites | MWITES - (000199) - Work Order from San Mar Service Corp | MWITES - 000199 | MWITES - 000199 |
| 7 | Wites | MWITES - (000197) - Check to Mizner Country Club | MWITES - 000197 | MWITES - 000197 |

20.A
Documents and Other Information Considered - Marc & Jennifer Wites

*Chinese Drywall Litigation Involving Priority Claimants*

*Bate Stamp (if applicable)*

| No. | Claimant | General Description | First Page | Last Page |
|-----|----------|--------------------|-----------|-----------|
| 8 | Wites | MWITES - (000191-000196) - Residential Lease Agreement | MWITES - 000191 | MWITES - 000196 |
| 9 | Wites | MWITES - (000092-000093) - Wachovia Report (Rental House Pool Payments) | MWITES - 000092 | MWITES - 000093 |
| 10 | Wites | MWITES - (000091) - Oppenheimer All Activity Report Xpert Carpet Care (Rental House) | MWITES - 000091 | MWITES - 000091 |
| 11 | Wites | MWITES - (000088-000089) - Oppenheimer All Activity Report Elke Gallichio | MWITES - 000088 | MWITES - 000089 |
| 12 | Wites | MWITES - (000086-000087) - Universal Property and Casualty Insurance Tenant Policy | MWITES - 000086 | MWITES - 000087 |
| 13 | Wites | MWITES - (000085) - Fax from Elite Relocation Inc | MWITES - 000085 | MWITES - 000085 |
| 14 | Wites | MWITES - (000084) - Check to Elite Relocation Inc | MWITES - 000084 | MWITES - 000084 |
| 15 | Wites | MWITES - (000083) - Bill from Elite Relocation Inc | MWITES - 000083 | MWITES - 000083 |
| 16 | Wites | MWITES - (000082) - Inspection Report 8-30-09 | MWITES - 000082 | MWITES - 000082 |
| 17 | Wites | MWITES - (000081) - Check to Kirk Bauer | MWITES - 000081 | MWITES - 000081 |
| 18 | Wites | MWITES - (000080) - Invoice for Printing and Blueprints | MWITES - 000080 | MWITES - 000080 |
| 19 | Wites | MWITES - (000077-000079) - Merchant Summary from American Express | MWITES - 000077 | MWITES - 000079 |
| 20 | Wites | MWITES - (000076) - Statement from Hawkeye Home Inspection | MWITES - 000076 | MWITES - 000076 |
| 21 | Wites | MWITES - (000075) - Oppenheimer All Activity Report Elite Relocation Inc | MWITES - 000075 | MWITES - 000075 |
| 22 | Wites | MWITES - (000074) - Oppenheimer All Activity Report Hawkeye Inspection | MWITES - 000074 | MWITES - 000074 |
| 23 | Wites | MWITES - (000073) - Oppenheimer All Activity Report E-Z Permits | MWITES - 000073 | MWITES - 000073 |
| 24 | Wites | MWITES - (000068-000072) - Checks for B4 and After | MWITES - 000068 | MWITES - 000072 |
| 25 | Wites | MWITES - (000067) - Oppenheimer All Activity Report B4 & After | MWITES - 000067 | MWITES - 000067 |
| 26 | Wites | MWITES - (000066) - Oppenheimer All Activity Report Entry Portfolio for Construction | MWITES - 000066 | MWITES - 000066 |
| 27 | Wites | MWITES - (000065) - Checks to B4 & After General Contractors | MWITES - 000065 | MWITES - 000065 |
| 28 | Wites | MWITES - (000059-000064) - B4 & After Quote and Scope of Work | MWITES - 000059 | MWITES - 000064 |
| 29 | Wites | MWITES - (000048-000058) - AIA Document A100 - 2007 | MWITES - 000048 | MWITES - 000058 |
| 30 | Wites | MWITES - (000045-000047) - B4 & After Contractors Quote | MWITES - 000045 | MWITES - 000047 |
| 31 | Wites | MWITES - (000037-000043) - Elite Relocation Invoices and Checks | MWITES - 000037 | MWITES - 000043 |
| 32 | Wites | MWITES - (000034-000035) - Hawkeye Home Inspection Receipts | MWITES - 000034 | MWITES - 000035 |
| 33 | Wites | MWITES - (000031-000032) - Letter and Invoice Re AC at Rental Property | MWITES - 000031 | MWITES - 000032 |
| 34 | Wites | MWITES - (000030) - Rental Check August 2010 | MWITES - 000030 | MWITES - 000030 |
| 35 | Wites | MWITES - (000029) - Letter to Elkie Gallichio Re August 2010 Rent | MWITES - 000029 | MWITES - 000029 |
| 36 | Wites | MWITES - (000028) - Letter to Elkie Gallichio Re Lease | MWITES - 000028 | MWITES - 000028 |
| 37 | Wites | MWITES - (000004-000005) - EE&G Industrial Hygiene Services | MWITES - 000004 | MWITES - 000005 |
| 38 | Wites | MWITES - (000094) Water (July-November 2010) | MWITES - 000094 | MWITES - 000094 |
| 39 | Wites | MWITES - (000097) FPL (July-December 2010) | MWITES - 000097 | MWITES - 000097 |
| 40 | Wites | MWITES - (000100) Dec 2010 and Jan 2011 Rent Checks | MWITES - 000100 | MWITES - 000100 |

20.A
Documents and Other Information Considered - Marc & Jennifer Wites

*Chinese Drywall Litigation Involving Priority Claimants*

| | | | *Bate Stamp (if applicable)* | |
|---|---|---|---|---|
| No. | Claimant | General Description | First Page | Last Page |
| 41 | Wites | MWITES - (000104) 2010 May Rent Checks | MWITES - 000104 | MWITES - 000104 |

# EXHIBIT C

Case 2:09-md-02047-EEF-MBN Document 22280-36 Filed 12/02/19 Page 457 of 802
Case 2:11-cv-02349-MLCF Document 16234 Proceed Under Seal Docket 6/13/2019 Page 2 of 84
Confidential - Subject to Further Confidentiality Review

```
 1              UNITED STATES DISTRICT COURT

                EASTERN DISTRICT OF LOUISIANA

 2

        ------------------------------:

 3    IN RE:  CHINESE-MANUFACTURED   : MDL NO. 2047

      DRYWALL PRODUCTS LIABILITY      :

 4    LITIGATION                      : SECTION:  L

                                      :

 5    THIS DOCUMENT APPLIES TO ALL   : JUDGE FALLON

      CASES                           :

 6                                    : MAG. JUDGE WILKINSON

                                      :

 7    ------------------------------:

 8

                               - - -

 9

                    Monday, March 11, 2019

10

                               - - -

11

12                  ** CONFIDENTIAL **

13      SUBJECT TO FURTHER CONFIDENTIALITY REVIEW

14                       - - -

15        Videotaped deposition of MICHAEL P. ELKIN,

      CPA, CFF, ABV, CFE, Volume 1, held at Colson

16    Hicks Eidson, 255 Alhambra Circle, Penthouse,

      Coral Gables, Florida, commencing at 10:05 a.m.,

17    on the above date, before Susan D. Wasilewski,

      Registered Professional Reporter, Certified

18    Realtime Reporter, Certified Realtime Captioner

19                       - - -

20          GOLKOW LITIGATION SERVICES

          877.370.3377 ph | 917.591.5672 fax

21               deps@golkow.com

22

23

24

25
```

Case 2:09-md-02047-EEF-MBN  Document 22280-36  Filed 12/02/19  Page 458 of 802
Case 2:14-cv-06290-EEF-MBN  Document 15  Filed 04/15/2019  Page 2 of 84
Confidential - Subject to Further Confidentiality Review

## Page 2

```
 1   APPEARANCES:
 2   BREIT DRESCHER IMPREVENTO
     BY: JEFFREY BREIT, ESQUIRE
 3   600 22nd Street, Suite 402
     Virginia Beach, Virginia 23451
 4   Phone: (757) 670-3888
     jeffrey@breitcantor.com
 5   Representing Plaintiffs
 6
 7   COLSON HICKS EIDSON
     BY: NATALIE M. RICO, ESQUIRE
 8   255 Alhambra Circle, Penthouse
     Coral Gables, Florida 33134
 9   Phone: (305) 476-7400
     natalie@colson.com
10   Representing Plaintiffs
11
12   MRACHEK FITZGERALD ROSE KONOPKA THOMAS & WEISS, P.A.
     BY: GREGORY S. WEISS, ESQUIRE
13   505 South Flagler Drive, Suite 600
     West Palm Beach, Florida 33401
14   Phone: (561) 655-2250
     gweiss@mrachek-law.com
15   Representing Plaintiffs
16
17   ABALLI MILNE KALIL
     BY: CRAIG P. KALIL, ESQUIRE
18      MICHAEL AYUB, ESQUIRE
     1 Southeast 3rd Avenue, Suite 2250
19   Miami, Florida 33131
     Phone: (305) 373-6600
20   ckalil@aballi.com
     mayub@aballi.com
21   Representing Defendant Beijing New Building
     Materials PLC
22
23
24
25
```

## Page 3

```
 1   APPEARANCES:
 2   ORRICK, HERRINGTON & SUTCLIFFE, LLP
     BY: DIANA SZEGO FASSBENDER, ESQUIRE
 3   1152 15th Street, NW
     Washington, D.C. 20005-1706
 4   Phone: (202) 339-8533
     dszego@orrick.com
 5   Representing Defendant Beijing New Building
     Materials PLC
 6
 7
     ALSTON & BIRD LLP
 8   BY: SARAH O'DONOHUE, ESQUIRE
     1201 West Peachtree Street
 9   Atlanta, Georgia 30309-3424
     Phone: (404) 881-7000
10   sarah.odonohue@alston.com
     Representing Defendant Taishan Gypsum Company
11
12
     ALSO PRESENT:
13
14   AURELIO ROMAN, Videographer
15   MARCIE D. BOUR, Yip Associates
16   ELAN STERNBERG, Kaufman Rossin
17
18
19
20
21
22
23
24
25
```

## Page 4

```
 1                  - - -
 2              I N D E X
 3              Volume 1
 4          Monday, March 11, 2019
 5                  - - -
 6
     Testimony of: MICHAEL P. ELKIN, CPA, CFF, ABV, CFE  Page
 7
         DIRECT EXAMINATION BY MR. KALIL...............  7
 8
 9
                E X H I B I T S
10
            (Attached to transcript)
11
     MICHAEL ELKIN DEPOSITION EXHIBITS              PAGE
12
     Exhibit 1   Notice of Videotaped Deposition of    10
13               Michael Elkin, CPA, CFF, ABV, CFE
14   Exhibit 2   Curriculum Vitae                      32
                 Michael P. Elkin, CPA/CFF/ABV, CFE
15
     Exhibit 3   Record of Expert Testimony for        40
16               Michael P. Elkin
17   Exhibit 4   Attachment A - Documents and Other    48
                 Information Considered - All
18               Claimants
19   Exhibit 5   General Binder                        13
20   Exhibit 6   Lost Equity Calculations for          30
                 Priority Claimants
21
22   Exhibit 7   Binder - Elkin Expert Report -        62
                 Chinese Drywall Matter
     February 19, 2019
23
     Exhibit 8   Exhibit 4 (Updated)                   65
24               Calculations of Damages for
                 Priority Claimants Steven & Cathy
25               Etter
```

## Page 5

```
 1              E X H I B I T S
 2           (Attached to transcript)
 3   MICHAEL ELKIN DEPOSITION EXHIBITS              PAGE
 4   Exhibit 9   Binder - CPK Email, Documents and    158
                 Other Information Considered -
 5               Updated(12), Report Exhibits -
                 Updated(12), Support Master
 6               Database - Updated(12)
 7   Exhibit 10  Letter and September 18, 2012        175
                 Settlement Agreement and Release
 8               between Steven and Cathy Etter and
                 USAA
 9
     Exhibit 11  November 26, 2004 Agreement between  180
10               Owner and Contractor
11   Exhibit 12  Special Warranty Deed                181
12   Exhibit 13  December 8, 2005 Mortgage - Etter    182
13   Exhibit 14  June 5, 2006 Modification and        184
                 Extension of Mortgage
14
     Exhibit 15  November 22, 2006 Mortgage           186
15               Modification and Consolidation
                 Agreement
16
17
18
19
20
21
22
23
24
25
```

Case 2:09-md-02047-EEF-MBN Document 22280-36 Filed 12/02/19 Page 459 of 802
Case 2:09-md-02047-EEF-MBN Document 22280-36 Filed 12/02/19 Page 459 of 802
Confidential - Subject to Further Confidentiality Review

| Page 6 | Page 8 |
|---|---|

**Page 6**

1         --- 

2    THE VIDEOGRAPHER: Good morning. We're now

3 on the video record. My name is Aurelio Roman.

4 I'm the videographer for Golkow Litigation

5 Services. Today's date is Monday, the 11th day

6 of March, 2019. The time is 5 minutes after

7 10:00 a.m.

8    The video deposition is being held at Colson

9 Hicks & Eidson, 255 Alhambra Circle, Penthouse

10 Suite, Coral Gables, Florida 33134, in the matter

11 of Chinese Drywall, for the courts filed in the

12 US District Court, Eastern District of Louisiana.

13    The deponent is Michael Elkin.

14    Will all counsels please state your

15 appearance for the record.

16    MR. KALIL: Craig Kalil on behalf of Beijing

17 New Building Materials, Public Limited Company.

18 With me is Michel Ayub from my office. Also

19 present is Diana Fassbender of Orrick, Herrington

20 & Sutcliffe, and also present is Marcie Bour.

21    MR. BREIT: Jeffrey Breit representing the

22 Plaintiffs in the Chinese drywall litigation,

23 together with a list of -- we'll let them -- oh,

24 am I the only one with a mic?

25    MR. WEISS: There's mics all the way down.

**Page 7**

1    MR. BREIT: All right.

2    MR. WEISS: Yeah.

3    MS. RICO: Natalie Rico, also representing

4 the Plaintiffs.

5    MR. WEISS: Greg Weiss on behalf of the

6 Plaintiffs.

7    MR. STERNBERG: Elan Sternberg, assistant to

8 Mike Elkin.

9    MS. O'DONOHUE: Sarah O'Donohue from Alston

10 & Bird on behalf of Taishan Gypsum Company.

11    THE VIDEOGRAPHER: Madam Court Reporter,

12 swear in the witness.

13    THE COURT REPORTER: Would you raise your

14 right hand?

15    Do you solemnly swear or affirm the

16 testimony you're about to give will be the truth,

17 the whole truth, and nothing but the truth?

18    THE WITNESS: Yes, I do.

19    THE COURT REPORTER: Thank you.

20    MICHAEL P. ELKIN, CPA, CFF, ABV, CFE, called as

21 a witness by Defendant Beijing New Building

22 Materials, having been duly sworn, testified as

23 follows:

24        DIRECT EXAMINATION

25 BY MR. KALIL:

**Page 8**

1    Q. Will you state your full name, please?

2    A. Michael Paul Elkin.

3    Q. Mr. Elkin, you've been deposed before?

4    A. Yes, I have.

5    Q. On how many occasions?

6    A. Roughly, 100.

7    Q. So you are very familiar with the process?

8    A. I believe so.

9    Q. I'm going the ask you a number of questions

10 today. If any of them are not clear, if you will

11 let me know, I will try to make them clear.

12    A. Certainly.

13    Q. And if you don't understand where I am going

14 with something, please tell me and I will try to

15 break it up into anything we need to.

16    A. Thank you. I appreciate that.

17    Q. If you need a break at any time, will you

18 let me know?

19    A. Of course.

20    Q. Have you ever been deposed before in any

21 case that involves Chinese drywall or defective

22 drywall?

23    A. No.

24    Q. Have you ever testified in any case that

25 involves allegedly defective drywall or Chinese

**Page 9**

1 drywall?

2    A. No.

3    Q. Have you ever rendered any expert reports or

4 opinions involving Chinese drywall or defective

5 drywall?

6    A. No.

7    Q. What did you do to prepare for the

8 deposition?

9    A. You mean specific to the deposition or

10 leading up from the beginning of the engagement?

11    Q. Lets focus specific to the deposition?

12    A. I reviewed my files. I did a little bit of

13 extra jumping around into some documents so that my

14 memory would be a little fresher on some of the

15 issues and some of the plaintiffs.

16    Q. Any particular plaintiffs?

17    A. No. I think I went through them all, at

18 least some level. Some of them are a little more

19 complicated than others, so I might have spent a

20 little bit more time on one or the other but I

21 believe I touched on all of them.

22    Q. Did you speak with anybody other than the

23 plaintiff's attorneys in preparing for today?

24    A. Again, with regard to preparing for the

25 deposition --

Page 10

1    Q.  -- yes.
2    A.  No, I did not.
3    Q.  I'm going to show you Exhibit 1 --
4    A.  Excuse me, other than other people in my
5  office.
6    Q.  That's a very good point.  Who in your
7  office have you talked to to prepare for today's
8  deposition?
9    A.  Probably Elan Sternberg.
10    Q.  Who is Elan Sternberg?
11    A.  Elan is a senior in my Forensic Advisory &
12  Valuation Services Group.
13    Q.  Anyone else?
14    A.  I don't believe so, specific to preparing
15  for this.
16    Q.  Okay.  All right.
17      (Elkin Exhibit 1 was marked for
18  identification.)
19  BY MR. KALIL:
20    Q.  I'm going to show you what we've marked as
21  Exhibit 1 to your deposition and it's a notice of
22  taking deposition.  I'll ask if you've seen that
23  before?
24    A.  Yes, I have.
25    Q.  Okay.  And did you review the request -- the

Page 11

1  requested documents in that notice on page 6?
2    A.  Yes, I did.
3    Q.  Okay.  And is there anything that you
4  brought with you today in response to that that has
5  not previously been produced?
6    A.  Yes.
7    Q.  What specifically have you brought today?
8    A.  For the most part, it's stuff that has been
9  produced but might not have had some of my notations
10  on it.  So I have a binder here that's got --
11  actually, I think this sticky one wasn't produced,
12  it's got a sticky, and it's got some of the
13  documents that were identified in my documents
14  considered, but I noted that they had some
15  highlighting and some tabs, which I considered for
16  this purpose to be sort of my notes, so I included
17  that.
18      I also brought with me the Exhibit .2, so
19  whatever Plaintiff .2, for each plaintiff that had a
20  lost equity segment, because I have a yellow sticky
21  within my notepad that had some notes on it, and it
22  also had a little bit of highlighting -- I mean
23  referencing on it, so I thought that you would want
24  that as well.
25    Q.  Okay.  I would like to take a look at those

Page 12

1  probably on a break rather than now, if we can.
2    A.  Okay.  Certainly.
3    Q.  If you can put those aside.  Anything else?
4      MR. KALIL:  Are those copies?
5      MS. RICO:  Uh-huh.
6      THE WITNESS:  And I'll keep one of these,
7  but these are copies of the other.
8  BY MR. KALIL:
9    Q.  I'm sorry.  These are?
10    A.  These are copies of the exhibits that I told
11  you that I also brought.
12      MR. BREIT:  We come prepared.
13      MR. KALIL:  You do.
14      MR. BREIT:  To save life and save time.
15      MR. KALIL:  Since we've got these in nice
16  little binders, why don't we mark them so we know
17  what they are and then we can go through them at
18  some point after I have had a chance to view them
19  on a break.
20      MR. BREIT:  Yeah, I figured we've got time
21  to do that but someone may want to look at it
22  while we're waiting.
23      MR. KALIL:  All right.
24  BY MR. KALIL:
25    Q.  Mr. Elkin, I'm going to mark what's labeled

Page 13

1  the General Binder as Exhibit Number 5.
2    A.  I'm sorry, what number, 5?
3    Q.  5.
4      (Elkin Exhibit 5 was marked for
5  identification.)
6  BY MR. KALIL:
7    Q.  And can you tell me what's in that document,
8  just generally?
9    A.  It's a variety of information that I
10  received either from counsel or that I read online
11  or other sources to get with regards to a variety of
12  topics in there.  I think there is prejudgment
13  interest rates, and other information from online.
14  There is some information from the IRS.  I believe
15  that Judge Cooke's order is in there.  I believe
16  that some other relevant orders are in there as
17  well, or findings of fact.
18    Q.  Let me just take you through it generically
19  unless you have a list.
20    A.  Oh, wait.  I do have a copy -- I don't have
21  a copy.
22    Q.  Sure, under Tab Number 1, I see an order
23  from Judge Cooke, Docket Entry Number 112 of
24  November 16, 2018.
25    A.  That's correct.

Page 14

1   Q.  Tab Number 2 is an MDL Order Docket Entry
2  2741 from April 21st, 2017?
3   A.  That's correct.
4   Q.  What is Tab Number 3?
5   A.  Tab 3 is Findings of Fact and Conclusion of
6  Law, the document that relates to the Germano
7  matter.
8   Q.  Okay.  Where did you get that?
9   A.  I believe I downloaded that.
10   Q.  Okay.  When did you download that?
11   A.  Probably in the first or second week of
12  February, I would guess.
13   Q.  What is under Tab Number 4?
14   A.  Tab 4 was a table that was provided to me.
15  I had seen a table that looked a lot like this in
16  the discovery at some point and I asked about it and
17  it was sent to me.  I think it was given to me via
18  Dropbox by counsel.
19   Q.  Do you remember who?
20   A.  I believe it might have been -- I believe it
21  might have been Pete --
22   Q.  Pete Albanis?
23   A.  Thank you, of course, Pete Albanis, or his
24  office.
25   Q.  Okay.  All right.  Is that something you

Page 15

1  relied upon in forming your opinions?
2   A.  I don't know if I'd say I relied upon it.
3  It made it -- it just clarified some things and put
4  it in a tabular form.  I also had looked at the
5  Germano Findings of Fact and Conclusions of Law in
6  conjunction with this, and essentially with them it
7  gave me a better understanding of the types of
8  things that were included in various categories.
9   Q.  And what categories were you looking for
10  there?
11   A.  Well, I was trying to understand what was
12  considered to be remediation and perhaps the timing
13  of remediation versus personal property damage and,
14  you know, I'm sure it educated me to other factors
15  in it, but I think that was the primary reason I was
16  looking at it.
17   Q.  Was that for purposes of segregating items
18  into categories of remediation or personal property
19  damage or otherwise?
20   A.  Probably primarily that and then also, just,
21  having a better understanding of all of this.
22   Q.  Did you set up any written protocols in your
23  office for segregating information into different
24  categories?
25   A.  I don't recall any written protocols.  I

Page 16

1  recall having discussions with my staff to
2  understand that.
3       MR. BREIT:  Hold on one second.  Technical
4  problem.
5       MR. KALIL:  Am I speaking too softly?
6       THE COURT REPORTER:  No-- a little bit.
7  That will help.
8       MR. BREIT:  It was all you.  I heard her
9  going.
10       MR. KALIL:  It's always me.  Absolutely.
11       MR. BREIT:  Ready?
12       THE COURT REPORTER:  Yeah.
13  BY MR. KALIL:
14   Q.  Who in your -- while we're on the staff for
15  a second, who on your staff has assisted you in this
16  engagement?
17   A.  Primarily Elan Sternberg, who I mentioned
18  before, Michelle Reinhold, goes by Shelley, Austin
19  Paris, and then there may have been a variety of
20  other people that would have chipped in on a project
21  here or a project there.  I remember Rita Trabanco
22  handled one particular data entry project, Max
23  Halasz.
24   Q.  Can you spell that?
25   A.  H-a-l-a-s-z, and I'm sure if I went through

Page 17

1  them, I'd find one or two other people, but I think
2  that's probably 90 percent or more of the work, and,
3  of course, myself.
4   Q.  Okay.  You told us a minute ago who -- well,
5  at least you started saying who these people are.
6  Can you tell me what each of these people was doing
7  involved with this engagement.  Let's start with
8  Elan Sternberg, if I'm saying the name right.
9   A.  Elan had a role pretty much in every aspect
10  of the matter from the standpoint of being with me
11  in most of the planning for it.  Elan was heavily
12  involved in the beginning and evaluating the
13  documentation that might be available to us as we
14  read through things.  He read early on some of the
15  depositions.  He was really leading the other group
16  that I discussed.  Sometimes they were directly with
17  me, often they were directly with him and often all
18  of them were together with me.
19       So he had roles in reviewing the information
20  organizing the information, directing the other
21  seniors or staff in their roles, and helping me to
22  bring all of it up to a final product.
23   Q.  And what is Elan's title?  I'm sorry if you
24  told me before, within the firm?
25   A.  I believe he's a senior, senior two

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 462 of 802
Case 2:11-cv-01077-Case 2:11-cv-00168-EEF-JCW Document 1-1 Filed 04/15/19 Page 6 of 84
Confidential - Subject to Further Confidentiality Review

Page 18

1  probably.
2      Q.  How does that rank within the firm?  Can you
3  give me the titles within your organization?
4      A.  We have accounting clerks, we have
5  administrative people, then we have accounting
6  clerks, we have staff one, staff two, senior one,
7  senior two, supervisor, manager, senior manager,
8  associate principal, director, and principals, which
9  are the equivalent of partners.
10      Q.  Okay.  And what -- your title is director?
11      A.  I'm a principal.
12      Q.  Principal.  Excuse me.  So Mr. Sternberg is
13  he the most senior person below you in this
14  engagement?
15      A.  In this particular engagement, yes.
16      Q.  Okay.  And then taking them in order from
17  senior to less senior, who is next?
18      A.  I believe Shelley, Michelle Reinhold is also
19  a senior; Austin Paris, I don't recall if he's a
20  staff two or a senior, maybe a staff two.
21          Rita Trabanco is a accounting clerk.
22          And Max Halasz is a senior.
23      Q.  And while we're on the staff, let's talk
24  billing rates for a second.  What are the billing
25  rates associated with these people, as best you

Page 19

1  recall?  What is your billing rate on this
2  assignment?
3      A.  My billing rate is $575 per hour.  I don't
4  recall the billing rates of the other people, so I
5  would be guessing.
6      Q.  I don't want you to guess.  Are they all
7  within the rates set forth in your report, the range
8  that you've given us in your report?
9      A.  Yes.
10      Q.  Would they be proportional from most senior
11  to less senior, do the numbers follow?
12      A.  I believe so.
13      Q.  Good enough.  Now, what tasks did Michelle
14  Reinhold have in this engagement?
15      A.  Michelle had tasks, she would be
16  specifically assigned at one point to one or more of
17  the plaintiffs.  She and Austin and Elan each sort
18  of broke up the plaintiffs among that group so that
19  they would have similar roles in them.
20          I believe at the beginning, before I --
21  before I broke it up, Michelle and/or Austin were
22  gathering different types of information, so I think
23  right at the beginning Michelle was gathering more
24  of the -- I might have this backwards, but I think
25  she was gathering more of the information with

Page 20

1  regard to the backup of damage claims, expenses,
2  receipts, and that type of stuff.
3          While I believe Austin was focused on
4  helping to gather information about the real estate,
5  the property itself.  Information was coming from a
6  number of different sources and Elan was involved
7  with both of those aspects.
8          And then once they were broken out into
9  different plaintiffs, they all -- each got involved
10  in both of those issues with regard to their
11  respective plaintiffs.  So it was lot of document
12  gathering at the beginning and organizing and then
13  in the analysis stage, it was broken up between, you
14  know, different plaintiffs.  I mean, I know that I
15  worked on every plaintiff, I know that Elan worked
16  on every plaintiff.  I don't think that Michelle or
17  Austin worked on every plaintiff.
18      Q.  When you say you worked on every plaintiff,
19  did you gather information on any of these
20  plaintiffs?
21      A.  I was involved in the gathering process.
22      Q.  And where was the information being gathered
23  from?
24      A.  We had a process where, initially, we had --
25  we were getting information as we requested it being

Page 21

1  put on a Dropbox and we'd get a notice, there was
2  information for you on Dropbox and we would grab it
3  and pull it into our files.
4          At some point the information wasn't coming
5  in quite as fast as we needed it to and we were made
6  aware that there was a portal, BrownGreer I believe
7  is who administers that portal, and so we were given
8  access to that portal and when possible we pulled
9  information from there.
10          Some information was e-mailed to us from
11  time to time.  Probably more at the beginning than
12  towards the end, whether it was SPPFs, maybe some
13  interrogatories and those types of things at the
14  beginning, but the majority of the information we
15  got came from the Dropbox or from the portal itself
16  directly.
17      Q.  And who was putting information in the
18  Dropbox, as you understand it?
19      A.  I believe the attorneys and/or their
20  paralegals.
21      Q.  Okay.  Were you tracking, in any way, the
22  sources of this information, in terms of who
23  provided it to you?
24      A.  We were tracking it in terms of when we
25  received it.  We were tracking it in terms of how it

Case 1:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 463 of 802
Case 1:14-cv-24408-KMM Document 176-1 Entered on FLSD Docket 12/22/15 Page 8 of 84
Confidential - Subject to Further Confidentiality Review

## Page 22

1  came in, whether through an e-mail or Dropbox. I
2  don't believe we were tracking who had loaded it
3  into the Dropbox and I don't know that we would have
4  any way of knowing who had loaded it into portal.
5      Q.  And when you say you were tracking it in
6  terms of when you received it, where is that
7  reflected in any of your work papers or otherwise?
8      A.  It should be in the documents that you
9  received. I don't recall if it included the
10  tracking document, but the main way that that was
11  tracked is there is a folder called raw discovery,
12  and inside that folder there are a bunch of other
13  folders so that every day that we downloaded
14  something, if it was from the portal on that day,
15  then it would say that day's portal and a date.
16      There was -- and I don't believe -- in fact,
17  I'm certain that I had not provided to you the raw
18  discovery.
19      Q.  I was just going to say I don't believe I've
20  seen it.
21      A.  Because you've seen all of those same
22  documents in the organized fashion that we gave them
23  to you through the HTML in the basket of documents.
24      Q.  Is that something that is electronic, the
25  raw discovery?

## Page 23

1      A.  Yes.
2      Q.  I would like a copy, if you could provide
3  that to us.
4      Are there any other documents or database,
5  document sources or databases that have not been
6  provided to us?
7      A.  I don't believe so and it's possible that
8  you were provided the tracking that I was talking
9  about.
10      Q.  What type of a document would it be?
11      A.  Excel.
12      Q.  I don't believe I've seen it, Mr. Elkin, I
13  stand to be corrected but we can check on a break.
14  We were going through -- I'm sorry, we got a little
15  sideways. We were going through Exhibit 5. We
16  haven't quite finished.
17      We talked about most of the people who
18  assisted you. Did we leave anything out in terms of
19  Rita -- I'm sorry, Trabanco?
20      A.  Uh-huh.
21      Q.  You said Rita Trabanco had one data entry
22  project, what was that data entry project?
23      A.  She had a data entry project which, I
24  believe, related to Claimant 17.
25      Q.  Okay.

## Page 24

1      A.  She, under my direction, keypunched or
2  entered the data from a number of documents from the
3  company that did their design and update work. I'm
4  trying to remember the name of the company. It's
5  not coming to me.
6      Q.  This is Michael and Robyn --
7      A.  That's correct.
8      Q.  Michael and Robyn Rosen?
9      A.  That's correct. And she helped to put the
10  data in from those various documents that were
11  probably maybe about 100 or less pages, and then
12  each of those pages had multiple -- some of them had
13  one item and some of them had multiple items and I
14  had instructed her on the information that I wanted
15  her to take from those documents and put onto an
16  Excel schedule. The primary focus was breaking them
17  down between capital improvements and personal
18  property.
19      Q.  Okay.
20      A.  I explained to her my criteria for doing
21  that. She did a very good job of doing that. I
22  went back and reviewed it and tweaked a couple of
23  things on it. She also put in some numbers from the
24  proposals and the invoices that -- so that she could
25  calculate the tax, because the items were on the

## Page 25

1  list pre sales tax, but I wanted to include the
2  sales tax into the numbers.
3      So I instructed her on how to do that and
4  then I thoroughly reviewed that information.
5      Q.  Were these instructions in writing?
6      A.  No.
7      Q.  Were they electronic?
8      A.  No.
9      Q.  Just verbal?
10      A.  She came into my office, I brought it onto a
11  screen and I showed her exactly what I wanted, I
12  believe Elan was with me at the time and instructed
13  her and if she had any questions, told her to go to
14  Elan or to me.
15      Q.  And Max, I'm going to get --
16      A.  Halasz.
17      Q.  Halasz, what did Max do?
18      A.  I don't recall specifically. He may have
19  done some work on one of the plaintiffs or he may
20  have just been asked to review some things. He
21  wasn't a primary player on the team but he had some
22  availability and we had some work that we needed
23  somebody to help us with it.
24      Q.  Okay. When were you first consulted on this
25  matter?

Case 2:09-md-02047-EEF-MBN Document 22280-36 Filed 12/02/19 Page 464 of 802
Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 9 of 84
Confidential - Subject to Further Confidentiality Review

Page 26

1    A.  By consulted, you mean the first time I
2  heard about it.
3    Q.  First you heard about it?
4    A.  It would have been sometime in the middle or
5  end of December 2018.
6    Q.  And how did you hear about it?
7    A.  I believe I received a phone call.
8    Q.  And who was that from?
9    A.  I believe it was from Natalie Rico.
10  Actually, I'm not sure if it was Natalie or Patrick
11  Montoya.  It was somebody from the Colson Hicks
12  office and I don't recall who it was, the initial
13  call, might have even been a phone message or an
14  e-mail.
15    Q.  Did you make any notes from that call?
16    A.  I made notes from the first call in which I
17  actually had a conversation with Natalie and that's
18  why I was thinking of that one.  I don't remember if
19  prior to that I had a call or not.  If I did, I
20  don't have notes from it.
21    Q.  Did you learn anything in that call that
22  helped you in coming up with your report?
23    A.  I don't think so. I mean, I think I would
24  have learned a couple of dates that things were
25  happening and I would have been given names so that

Page 27

1  I could run a conflict check and, I think, we
2  probably wouldn't have talked about much because I
3  hadn't run a conflict check.
4    Q.  Let me shift back for a second, Mr. Elkin,
5  just to Exhibit 5.  I apologize for going back and
6  forth.
7    A.  Sure.
8    Q.  What is under Tab Number 6?
9    A.  Tab Number 6 is a schedule that was provided
10  to me, I believe in Excel via Dropbox.  It was
11  identification by counsel of which claimants they
12  were alleging had partial or no remediation, versus
13  those claimants that they were claiming had complete
14  remediation.
15    Q.  And were you asked to make any determination
16  as to whether anyone had had -- had actually had
17  partial or full remediation?
18    A.  No, I was not.
19    Q.  And you didn't do anything in that effect in
20  the course of your engagement?
21    A.  That's correct.
22    Q.  Did it matter for purposes of your
23  engagement, whether somebody had had partial
24  remediation, full remediation or no remediation?
25    A.  I don't think so.  I mean I calculated the

Page 28

1  amounts based on the documentation and things that I
2  had, so I don't recall it having a role.
3    Q.  Okay.  What is under Tab 7 of Exhibit 5?
4    A.  Tab 7 is a download from the Florida --
5  MyFloridaCFO.com, which is the State's website and
6  the information that they provide with regard to
7  judgment interest and prejudgment interest.  It's
8  got two different sections in it.  It's got the most
9  current rates in the first section and it's got the
10  historical judgment interest rates in the second
11  section.  They are from slightly different parts of
12  the website.
13    Q.  Is that the source for the interest rates
14  applied in your calculation of prejudgment interest?
15    A.  Yes.
16    Q.  What is Tab Number 8, please, Mr. Elkin?
17    A.  Tab Number 8 is a variety of information
18  relating to casualty loss deductions and the
19  recovery and taxes on the amounts received after, if
20  somebody does take a casualty loss deduction.  It's
21  from a variety of IRS revenue procedures, rulings,
22  bulletins, publications, and I also, I don't know
23  why, but I stuck a tax form in there for the
24  casualty loss.
25    Q.  Do you have an understanding, sitting here

Page 29

1  today, as to whether there were tax relief provided
2  to the Priority Claimants in connection with
3  defective drywall or Chinese drywall?
4    A.  I understand that some of the claimants may
5  have received -- taken a deduction for casualty loss
6  and, therefore, gotten a deduction which would have
7  given them a reduction of tax in the year in which
8  they had remediation expenses, also understanding,
9  of course, that anything that they received to
10  recover on that will then be taxable too.
11    Q.  But you didn't work up any spreadsheets in
12  your analysis that describes these Priority
13  Claimants?
14    A.  No.
15    Q.  Why not?
16    A.  I don't believe it's relevant.
17    Q.  You didn't calculate anywhere in your
18  reports which of the Priority Claimants received tax
19  relief?
20    A.  No, I did not.
21    Q.  Did you calculate in your report which of
22  the Priority Claimants might have paid any money as
23  a result of receiving payments?
24    A.  No, I did not.
25    Q.  Okay.  What is under Tab Number 9?

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 465 of 802
Case 2:14-cv-02722-MC-MBN Document 23-13 Filed 06/13/19 Page 10 of 84
Confidential - Subject to further confidentiality Review

Page 30

1    A.  I think this is -- at the beginning, when we
2  got access to the docket -- excuse me, the portal.
3    Q.  This is the BrownGreer?
4    A.  Yeah, the BrownGreer.  I think Elan might
5  have printed this up to show it to me, or maybe I
6  printed it up at the time, I don't recall, but this
7  is just an example.  I guess this is for claimant
8  Foster, and it's just an example.  I don't know, did
9  the word example come out on your copy?
10   Q.  It does appear to be written in yellow on
11 the front page.
12   A.  It does, right?  Okay.  Yeah.
13   Q.  Did you consider this page in any way in
14 preparing your report?
15   A.  Not this page itself.
16   Q.  Information of this nature?
17   A.  Information of this nature from this portal.
18 I'm frankly not sure exactly why I have this in here
19 but I do.
20   Q.  Okay.  All right.
21     Mr. Elkin, just so we can get these
22 documents identified, I'm going to mark as
23 Exhibit 6, one of the additional documents you
24 provided to me.
25     (Elkin Exhibit 6 was marked for

Page 31

1  identification.)
2  BY MR. KALIL:
3    Q.  I'm not going to go through that in detail
4  now, I'm going to look at it on a break and ask you
5  a question, but if you could just tell me generally
6  what that is.
7    A.  This is a printout of each of the exhibits
8  for claimants that have a total lost equity
9  calculation.  In my binder that I brought with me
10 today, in the course of my review I was making notes
11 on a yellow sticky, and I was also making in some
12 cases either notations or references to the
13 documents to make them easier to find for me, and
14 recognizing that I was in -- putting notes on some
15 things that were in this binder, that was really
16 just primarily my report, I printed them up.  I
17 scanned them and printed them up so that you would
18 have copies of these notes rather than having to dig
19 through my binder for them.
20   Q.  You used the term total lost equity
21 calculation.  What do you mean by total lost equity?
22   A.  It's lost equity and it's just from a couple
23 of different components, so the word total is
24 getting on it, but lost equity, itself, is a term I
25 described in my report.  Would you mind if I go to

Page 32

1  my report to see --
2    Q.  I don't mind if you go to your report but I
3  just want to know if that was specific to -- was
4  there any difference between the lost equity
5  calculations you did for any of the claimants and
6  the ones that are here, or is this every claimant
7  where you did a lost equity calculation?
8    A.  I apologize, I don't --
9    Q.  I was trying to understand if you were
10 referring to the word "total lost equity" as
11 something different.  Your title of this, on Exhibit
12 1, on the first page says:  1.2 lost equity Janet
13 Avery.
14     I didn't know if the word "total" meant
15 something segregated some of these from others.
16 That was all I was trying to get at.
17   A.  It does not mean anything separate.
18   Q.  That's all I was trying to --
19     Let me see if there is anything else.
20   A.  Here is your exhibit back.
21   Q.  Thank you.  We'll go back to where I wanted
22 to start.
23     (Elkin Exhibit 2 was marked for
24 identification.)
25 BY MR. KALIL:

Page 33

1    Q.  Mr. Elkin, I'm going to give you a copy of
2  what's been marked as Exhibit 2 and ask if you
3  recognize that.
4    A.  I do.
5    Q.  What is that, sir?
6    A.  This is my curriculum vitae.
7    Q.  Is that current as of today?
8    A.  It is.  I know that in the last couple of
9  days they've -- the marketing department is trying
10 to change the format of it.  They don't like the way
11 it looks but I believe all the same information is
12 there.
13   Q.  All right.  Is anything new that's not on
14 here?
15   A.  No.
16   Q.  All right.  You're a certified public
17 accountant, correct?
18   A.  That's correct.
19   Q.  Okay.  Are you expressing any opinions in
20 this case as a certified public accountant?
21     MR. BREIT:  Before you answer that question,
22 all of his opinions, obviously, relate to his
23 background and CV as a certified public
24 accountant.  I'm not sure I understand what
25 you're asking when you say are you giving

Page 34

1  certified public accountant opinions.  They all
2  include his background and knowledge in order to
3  make those opinions and I'm not sure that it's
4  possible to delineate which ones are and which
5  ones aren't.
6      MR. KALIL:  I note your objection.
7  BY MR. KALIL:
8      Q.  Did you understand my question?
9      A.  I'm not certain.  Maybe you could read it
10  back.
11      Q.  Let me see if I can ask it differently.
12      Did you do any work in connection with your
13  engagement, that required you to apply your specific
14  skills as a certified public accountant and governed
15  by the standards appropriate for certified public
16  accountants?
17      A.  Yes.
18      Q.  What specifically did you do that required
19  that set of skills?
20      A.  Well, more importantly, you had multiple
21  things in that question and you talked to me about
22  standards and when I perform my work as a CPA, I
23  will always apply the, and be, within the standards.
24      With regard to whether or not I used my
25  skills or my training or my certification, there are

Page 35

1  a number of issues, for instance, the tax issues,
2  that call on perhaps some specific training, but
3  moreover, the skills that I've developed over some
4  30 years, it's difficult to distinguish whether
5  those are skills that fall under the CPA bracket,
6  the CFF bracket, the AVB bracket, the CFE bracket or
7  anything that doesn't have a certification but are
8  part of the basket of skills that I bring to the
9  table.
10      I do believe that as a CPA and my experience
11  as a CPA, having performed public accounting
12  services over the course of my career, that there
13  are certain -- certainly skill sets and levels of
14  knowledge that I accumulated that were helpful here.
15      Q.  Okay.  Did you set forth any written
16  guidelines for your staff in terms of what they were
17  to do or based on your skills as a CPA, did you say
18  we must follow this standard?
19      A.  Nothing written.
20      Q.  Okay.  You mentioned the tax issues in your
21  response.  Am I correct that you said you did not do
22  any analysis of the tax impacts on the Priority
23  Claimants here?
24      A.  I didn't do any specific analysis or
25  calculations.  I was cognizant of the issue and I

Page 36

1  determined that it was not relevant to my
2  calculations.
3      Q.  So you didn't use that skill set here?
4      A.  Well, I used the skill set of understanding
5  the tax law and the requirements and the impact on
6  individual taxpayers, but I didn't use that skill
7  set to make tax calculations.
8      Q.  Fair enough.  Okay.  Financial forensics,
9  what do you understand that to be in context of what
10  you've done here today?
11      A.  Most of it.  Financial forensics is a rather
12  broad category.  Technically, I suppose it means
13  anything that we do in our arena that relates to
14  matters that involve litigation or the court system.
15  It has, over the years, also taken on a broader -- a
16  broader spectrum so that a lot of the work that we
17  do that we call forensic accounting sometimes has
18  nothing to do with the court system, or at least not
19  yet.  It involves investigative accounting, fraud
20  tracing, and even some cases -- different types of
21  fraud prevention, which do not necessarily include
22  the court systems.
23      Q.  Did you do any fraud analysis here?  Are you
24  looking for any fraudulent materials?
25      A.  That wasn't the scope of what I was looking

Page 37

1  for.
2      Q.  So that's beyond the scope of what you did?
3  You didn't do any fraud analysis here?
4      A.  No.
5      Q.  I take it you are not -- it's not listed
6  here.  You are not a real estate appraiser?
7      A.  No, I'm not.
8      Q.  You wouldn't hold yourself out as giving any
9  opinions on values of real estate?
10      A.  I would not.
11      Q.  You're not a personal property appraiser?
12      A.  I am not.
13      Q.  You wouldn't hold yourself out as giving
14  opinions on personal property?
15      A.  I would not.
16      Q.  What portion of your work, the last two or
17  three years, has been associated with litigation-
18  related assignments?
19      A.  It's really hard to determine.  More than
20  half of my time has nothing to do with any of that.
21  I run a department of 40 forensic accountants and
22  staff, and also I'm a liaison with the firm
23  management with regard to that, including a business
24  valuation department that very little of their
25  specific work is litigation-related.

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 467 of 802
Case 2:14-cv-02722-MBN Document 19-1 Filed 12/06/19 Page 12 of 84
Confidential - Subject to further confidentiality Review

Page 38

1    Then some of the, what I call, client fixing
2  work, which is actually working with cases or
3  individuals, some of it involves other than
4  litigation, so if I were to ballpark it, I would say
5  something less than 50 percent.
6    Q.  Less than?  I'm sorry?
7    A.  Less than 50 percent and I would be
8  comfortable saying probably more than 25 percent,
9  and then depending on the day, the week, the month,
10 and the year, some weeks that's all I do and some
11 weeks I don't do any of it.
12   Q.  If we left out management issues, running
13 the firm and simply into work that you are doing
14 either client work or litigation work, how would you
15 break out the distinction?
16   A.  More than half my time is on those other
17 things, so a little less than double, the 25 to 50.
18 It certainly wouldn't be 100 percent, so probably
19 the 50 wasn't a good estimate either.
20   Q.  Would you agree that a greater proportion of
21 your nonmanagement time is spent on matters relating
22 to litigation than otherwise?
23   A.  Yes.
24   Q.  Has that been consistent for the last
25 several years?

Page 39

1    A.  Yes, if you include in there receiverships,
2  because I have had very demanding, time demanding,
3  receiverships where it may have taken 100 percent of
4  my time for half a year, but I think, typically,
5  receivership is related to some type of litigation
6  and it was in these circumstances I'm thinking of.
7    Q.  What type of receiverships have you been
8  involved with?
9    A.  The most recent was a receivership where I
10 took over the management and operations and sale and
11 winding down of maybe 30 to 40 -- 25 to 35 shopping
12 centers across the -- mostly the southeast, but
13 across the United States as far out as Arizona.
14   Q.  Okay.
15   A.  Other roles have been more as assistant to
16 receivers, but the most current one would have been
17 that.  I've been a special magistrate, which isn't
18 quite being a receiver, in a matter that involved a
19 dispute between partners in a construction
20 contracting business.  So receiver in a very small
21 check cashing/money order/cafe business, very
22 briefly for a bar.  I actually don't remember if I
23 was the named receiver or working for counsel.
24   A lot of different types of small
25 businesses, nothing major lately.

Page 40

1    Q.  Did the receivership of the shopping centers
2  in any way involve any aspects of defective drywall
3  or Chinese drywall?
4    A.  No, at least not that I'm aware of.
5    Q.  Okay.  The construction business, did
6  anything come up in that matter that involved
7  defective drywall or Chinese drywall?
8    A.  No.
9    Q.  In any receivership issues have you had any
10 dealings with defective drywall or Chinese drywall?
11   A.  Not that I'm aware of.
12   Q.  You're not a general contractor?
13   A.  No, I'm not.
14   Q.  Okay.  You wouldn't hold yourself out as an
15 expert on construction, I take it?
16   A.  On the technical sides of construction, no,
17 definitely not.
18   Q.  All right.  You've also provided us a copy
19 of your expert testimony.  Let me give you that.
20     (Elkin Exhibit 3 was marked for
21 identification.)
22 BY MR. KALIL:
23   Q.  Mr. Elkin, this is Exhibit 3.  I'll ask you
24 if you recognize Exhibit 3?
25   A.  I do.

Page 41

1    Q.  Is that an accurate list of your expert
2  testimony between February 2014 and February 2019,
3  as listed on top?
4    A.  I believe it is.  It's certainly intended to
5  be.
6    Q.  Okay.  Let me start with the first question.
7  Do any of these matters involve any allegations of
8  defective drywall or Chinese drywall?
9    A.  No.
10   Q.  Okay.  Do any of these involve valuations or
11 issues involving lost personal property?
12   A.  Possibly.
13   Q.  Let's go through them.  The first one --
14   A.  I can take you to the possibly and zero in
15 on the one that made me say possibly.
16   Q.  Why don't we do that?
17   A.  That may be more efficient.
18   Q.  Which one is that?
19   A.  This is the very last entry.
20   Q.  The Epic Hotels matter?
21   A.  Yes, I simply don't remember if any of the
22 damages in there involved personal property, I
23 believe they may have.
24   Q.  What was the essence of that case, Epic
25 Hotels versus DP Properties?  So is lost profits and

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 468 of 802
Case 2:14-cv-02722-MVL-MBN Document 33-26 Filed 03/16/15 Page 13 of 84
Confidential - Subject to further confidentiality review

Page 42

1 other damages due to business interruption, what was
2 going on?
3 A. That was in connection with a impact to the
4 hotel in connection with Legionnaires' disease and
5 there were a variety of types of damages that were
6 categorized and calculated and I don't remember
7 certainly, but I'm pretty sure there would have been
8 some elements of personal property in that claim.
9 Q. Did you do a calculation of personal
10 property, to your understanding?
11 A. I don't recall.
12 Q. Do you have your deposition from that case?
13 A. Probably not.
14 Q. Okay. Would you check and if you do, would
15 you provide a copy to us?
16 A. I will have to consult with counsel on that
17 case because if I remember correctly, this matter
18 settled and as often happens when a matter settles
19 or even when it doesn't settle, there is various
20 confidential elements of it, so I don't know that I
21 would be at liberty to do that.
22 Q. I'm sorry, I didn't mean to speak over you.
23 A. So if I am to do that, I will check with
24 counsel and then we'll go from there.
25 Q. Did you prepare a report in that case?

Page 43

1 A. Probably.
2 Q. And same request, if you would provide a
3 copy to us if you can, okay?
4 A. Okay.
5 MR. BREIT: With the same proviso that
6 whether counsel thinks it's confidential to
7 whether or not he has it in the first place.
8 BY MR. Kalil:
9 Q. I assume you keep your reports in the
10 computer system?
11 A. Not always. In fact, very often when there
12 has been a confidentiality order they also request
13 us to get rid of documents or those requests comes
14 at the end so it is possible that we do not.
15 Q. You will check and let us know either way?
16 A. I will check with counsel and follow their
17 directions.
18 Q. You're confident, Mr. Elkin, that none of
19 the other matters listed on this sheet of testimony
20 have anything to do with claims for drywall or
21 damage to property as a result of allegedly
22 defective drywall?
23 A. Yes.
24 Q. Okay. Just to touch on a few, the very
25 first one, Florida Beach Investments, what was the

Page 44

1 nature of the claims for damages in that case?
2 A. There were investors -- well, an investor
3 and some junior lenders that were making claims to
4 be repaid or paid amounts that they believed were
5 owed to them.
6 Q. So it was a pure economic claim for
7 investments?
8 A. Pure economic claim for investments? There
9 was nothing pure about it, so no. It was a
10 complicated claim for a variety of things that
11 included not just the amounts but the activities of
12 the company and the accountings of the company.
13 Q. And did you prepare a report in that case?
14 A. Yes.
15 Q. Okay. Do you still have that report?
16 A. Probably.
17 Q. I'd like to ask you for a copy of that, too,
18 just to see if it has anything, maybe, bearing on
19 this?
20 A. Once again, I will need to check with
21 counsel to see if I will be able to do that.
22 Q. Understood.
23 MR. BREIT: As well as reviewed by us with
24 regard to relevance and the appropriateness in
25 this case.

Page 45

1 MR. KALIL: Understood. Understood.
2 BY MR. KALIL:
3 Q. Okay. The Williams Island case, what was
4 the nature of the dispute there, as you recall?
5 A. This particular element involved the
6 developers of Prive, which is a two-tower
7 development in the Aventura area and the developers
8 and their related parties were making claims against
9 Williams Island Property Owners Association, where
10 they believed that the actions of Williams Island
11 Property Owners Association caused them damages in
12 the development and sale of their property.
13 Q. Was this an access issue, access to the
14 properties?
15 A. There were issues of access in this case. I
16 don't think that the specific claims relating to
17 Williams Island Property Owners Association, were
18 primarily centered around access.
19 Q. Okay. Did any of these claims or any of
20 these -- excuse me, matters involve damage to
21 personal property and valuations of that property?
22 A. Only the Epic Hotel matter that we
23 discussed.
24 Q. Okay. Mr. Elkin, you were first engaged in
25 this matter on what date?

Case 2:09-md-02047-EEF-MBN  Document 22380-36  Filed 12/02/19  Page 469 of 802
Case 2:14-cv-02722-MCE  Document 22213-36  2nd Cocket  13/29/19  Page 14 of 84
Confidential - Subject to Further Confidentiality Review

Page 46

```
 1    A.  I don't recall the exact date.  It would
 2  have been at the beginning of sometime in January.
 3    Q.  Okay.
 4    A.  Or sometime at the beginning of January.
 5    Q.  Early January?
 6    A.  Yes.
 7    Q.  Okay.
 8    A.  First or second week.
 9    Q.  And were you given a time frame in which
10  your work had to be performed?
11    A.  We had discussed a time frame.  I don't
12  recall what it was but yes.
13    Q.  Did you understand that there were deadlines
14  being met under Judge Cooke's order?
15    A.  Yes.
16    Q.  And what process did you undertake,
17  initially, in terms of getting information?  I think
18  you told me a little bit about it but what was
19  brought to you and what did you actually go looking
20  for?
21    A.  Well, initially very little was brought to
22  us.  We became aware through conversation that there
23  were three or four relevant documents that had been
24  filed related to each plaintiff, and so the first
25  step was us trying to gather for each claimant their
```

Page 47

```
 1  answers to interrogatories, their answers to second
 2  interrogatories, and any amended answers there might
 3  be, and their -- I remember the initials but the
 4  property profile -- I don't remember the first P,
 5  but the SPPF.
 6    Q.  Supplemental plaintiff profile form?
 7    A.  Plaintiff was the word I was looking so
 8  there was a plaintiff profile form and then there
 9  was a supplemental plaintiff profile form, and I
10  believe we got many of them at the beginning and
11  then continued to seek out -- seek those out, and
12  then reviewed them to understand the nature of the
13  claims and to start asking for information that
14  might be available that had been produced in the
15  case or was available.  Ultimately, we learned that
16  a lot of it was available on the portal, but the
17  counsels for respective claimants were operative in
18  putting things into a Dropbox, some of which may
19  have come from the portal or may have originated
20  from the portal.  They may have been subsequently
21  marked as an exhibit to a deposition or an affidavit
22  or produced as a Bates-stamped document, and we
23  found a lot of them that were -- or some of them
24  that were probably all three of the above, and then
25  in addition to that, we sought out the deposition
```

Page 48

```
 1  transcripts and deposition exhibits from the
 2  depositions of each of the claimants.
 3        It remained a rather fluid process of
 4  getting documents as we could and recognizing when
 5  we needed, there were certain documents, we sought
 6  counsel's assistance whenever possible, if they were
 7  aware of particular documents that were related to a
 8  particular issue and they were cooperative in
 9  helping us to identify that.
10        (Elkin Exhibit 4 was marked for
11  identification.)
12  BY MR. KALIL:
13    Q.  I'm going to show you what we've marked as
14  Exhibit 4 to your deposition and ask if you
15  recognize that document?
16        MR. BREIT:  What number is this?
17        MR. KALIL:  Exhibit 4.
18        THE WITNESS:  I do.
19  BY MR. KALIL:
20    Q.  And what is that, sir?
21    A.  This is Attachment A to my report.  It's a
22  listing of the documents and other information
23  considered for all of the different claimants.
24    Q.  Okay.  And it's in sections, starting with
25  Section A titled Pleadings and Other Legal
```

Page 49

```
 1  Documents; is that correct?
 2    A.  That's the first section, that's correct.
 3    Q.  Are those all documents you would have
 4  either received from counsel or from the portal?
 5    A.  And when you say from counsel that is could
 6  be either through an e-mail from counsel or them
 7  making it available in the Dropbox?
 8    Q.  Yes.
 9    A.  I don't recall if the very first item, which
10  is Judge Cooke's order, if I received that from
11  counsel or if possibly we pulled that down from the
12  docket.
13    Q.  Okay.
14    A.  Which we sometimes do; so I'm just not
15  certain, but I think everything else on that list
16  would have come from counsel.
17    Q.  And did you personally review each of those
18  documents thoroughly in Section A?
19    A.  By the time this was over, I would say I've
20  reviewed at least parts of every document on that
21  list.  If something was an amendment to something, I
22  might not have read the original one.  I might have
23  only read the amendment, but for the most part, I
24  think that I looked at all of these.
25    Q.  Did you make notes on all of these?
```

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 470 of 802
Case 2:09-md-02047-EEF-MBN Document 21310-10 Filed 07/29/19 Page 15 of 84
Confidential - Subject to further confidentiality review

Page 50

1    A.  No.
2    Q.  Did you make notes on any of them?
3    A.  No.
4    Q.  Okay.
5    A.  Not that I recall.  It's possible that I
6  might have put a check on something as I was going
7  through, maybe done -- put a little yellow sticky to
8  ask somebody a question.  I do a lot of yellow
9  stickies, but no real material notes that I can
10  think of.
11    Q.  Okay.  I neglected to ask you so let me go
12  back for a second.  Has anyone -- have you consulted
13  with anyone in your firm than has had any prior
14  experience with defective drywall or Chinese drywall
15  that assisted you in preparing your report?
16    A.  What do you mean by experience with it?
17    Q.  Did you consult with anyone in your firm who
18  has previously dealt with issues involving Chinese
19  drywall or defective drywall that aided you in
20  preparing your report?
21    A.  I think I talked with somebody in my tax
22  department specific to treatment that they had
23  because they had a client that had made a -- had a
24  casualty loss deduction at some point in the past.
25    Q.  Okay.  And who would that have been, do you

Page 51

1  remember?
2    A.  It would have been one of three people.
3  Actually, the first one I talked to directed me to
4  either Evan Morgan or most likely -- no, it was not
5  Evan, it would have been -- I believe his name was
6  Eric Christianson.
7    Q.  Okay.  Anybody else in the firm that you
8  talked to, that gave you any information that you
9  used in formulating your opinions in your report?
10    A.  No.
11    MR. BREIT:  Before you -- you've already
12  answered it but for purposes of the question, the
13  question that preceded this question, I object to
14  the form.  The question that preceded it had to
15  deal with consulting.  This new question is a
16  different question in a different subject and I
17  want to make sure that you intended that and the
18  witness understood that.  Consulting and talking
19  and conducing for purposes of this formulation
20  are all different and I wanted to make sure that
21  the form of that was understood by you
22  particularly, and Counsel when that was his
23  intent.
24  BY MR. KALIL:
25    Q.  Well, let me ask it in a slightly different

Page 52

1  way.  Has anyone in your firm provided you any
2  information that was used in formulating your
3  opinions here, other than the people you've
4  talked -- you've described the system and the
5  project?
6    A.  Yes, and I just realized I left out a
7  significant player when I was listing people before.
8    Q.  Who was that?
9    A.  Cara Sharp.
10    Q.  Who is Cara Sharp?
11    A.  Cara Sharp is one of my partners in our
12  forensic group, our FABS group.
13    Q.  What did Cara -- what information did Cara
14  provide you that assisted you?
15    A.  Cara assisted me with the lost equity
16  calculations.
17    Q.  Okay.  To your knowledge had Cara had any
18  prior experience dealing with Chinese drywall or
19  defective drywall?
20    A.  I don't think so.  In fact, I know she did
21  not.
22    Q.  Has your firm represented any of the
23  priority plaintiffs in this case?
24    A.  Not that I'm aware of.
25    Q.  Have you had any clients, other than the one

Page 53

1  you mentioned the person in the tax department was
2  dealing with, that had any interaction with Chinese
3  drywall?
4    A.  I don't know.
5    Q.  You're not aware of any others?
6    A.  Just that one.
7    Q.  The second set of documents in Exhibit 4 is
8  depositions and corresponding exhibits.  Where did
9  you get these from, sir?
10    A.  These would have come from counsel either
11  through e-mail or Dropbox.
12    Q.  And have you personally reviewed each and
13  every one of those?
14    A.  I'm sorry, have I personally reviewed each
15  of --
16    Q.  Each and every one of those depositions and
17  exhibits?
18    A.  Those being the transcripts and exhibits?
19    Q.  Yes.
20    A.  I have personally viewed parts of, if not
21  all of, the deposition transcripts.  I've reviewed
22  notes from review of them, and I have reviewed many
23  of the exhibits but, certain of the exhibits that I
24  didn't think were relevant, I just did not, so, for
25  instance, on the first page of that it says, floor

Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 471 of 802
Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 471 of 802
Confidential – Subject to Further Confidentiality Review

## Page 54

1  plan.  Maybe I clicked it and opened it, but not --
2  probably not intentionally.  So there are certain of
3  these that I would not have looked at because I
4  didn't believe they were relevant.
5      Q.  You said you reviewed parts of the
6  deposition transcripts.  Who prepared the excerpts
7  from the deposition transcripts for you?
8      A.  The excerpts were prepared by Elan
9  Sternberg.  There may have been one or two that
10  actually were prepared by me.  I don't recall.
11      Q.  Okay.  Would there be any way to tell?
12      A.  Actually, I can tell you I didn't because
13  then I would remember printing them, so those would
14  have been all Elan, I think.
15      Q.  Did you rely on Elan's selection in -- just
16  in helping you to decide what to review in the
17  deposition transcripts?
18      A.  We had a lot of discussion.  I didn't rely
19  entirely on it, but one of the good things that --
20  what he did help me with was to identify where in a
21  deposition a topic might be so if I was interested
22  in that topic I could read it more myself.  I mean,
23  I did open each of the depositions for one reason or
24  another.  I didn't rely solely on the deposition
25  summaries.

## Page 55

1      Q.  Okay.  You stated, for instance, the floor
2  plan was not something you looked at?
3      A.  I don't think so.
4      Q.  For purposes of your report, you therefore
5  didn't consider it relevant to the layout of the
6  houses at issue?
7      A.  No.
8      Q.  I note that some of these have got Bates
9  stamps and some of them don't.  Is there any reason
10  for that that you're aware of?
11      A.  Some of the --
12      Q.  Some of the documents on this list,
13  Exhibit B, Bates stamps.  Did you make any effort to
14  understand why some were so numbered and some
15  weren't?
16      A.  The reason I have that is because some of
17  the documents did have Bates stamps and others did
18  not.
19      Q.  Okay.
20      A.  My understanding is documents, for instance,
21  that we pulled off of the portal, many of them did
22  not have Bates stamps.  They had a document ID
23  number and, therefore, it doesn't have a Bates
24  stamp.
25      Q.  Okay.

## Page 56

1      A.  Some of these also are transcripts and
2  things that typically would not have.  Some of them
3  are pleadings or filings.  In some cases they did
4  have -- they might have been marked as an exhibit
5  and maybe one or two of them actually had Bates
6  stamps for some reason, so when we found a document
7  and it had that, we tried as much as we could to
8  also include the Bates number.
9      Q.  Section C, of this Exhibit 4, lists
10  supporting documentation.  Is that a complete list
11  of all other documentation you've looked at in
12  preparing your report?
13      A.  When coupled with Section D and the items
14  before it, yes.
15      Q.  I'm sorry.  I may have skipped Section D?
16      A.  You didn't skip it.  It just didn't come
17  yet.
18      Q.  What is Section D then?
19      A.  Section D is our research and other sources
20  that were not provided directly to me, but that I
21  received either through online search or from public
22  records.
23      Q.  So am I correct in understanding that
24  Section D is materials that your firm went out and
25  gathered independently?

## Page 57

1      A.  That's correct, or in a couple cases maybe
2  conversations we had.
3      Q.  Okay.
4      A.  But things that were not included in Section
5  C.
6      Q.  Did you list all conversations you had with
7  any of the priority plaintiffs on Section D?
8      A.  Yes.
9      Q.  I only see two.  I see Vickie and William
10  Foster and Kevin Rosen.  Is that consistent with
11  your understanding?
12      A.  Yes.
13      Q.  Were you on both of those conversations?
14      A.  Yes.
15      Q.  Okay.  Do you have any notes from those?
16      A.  No.
17      Q.  Okay.  Do you recall when you spoke to
18  Vickie and William Foster?
19      A.  Sometime within the week before the issuance
20  of my report, I believe.
21      Q.  Do you recall the reason that you spoke with
22  Vickie and William Foster?
23      A.  Trying to -- there were some documents that
24  were hard to read.  I was trying to get a better
25  understanding if there were better copies of them

Case 2:09-md-02047-EEF-MBN  Document 22380-36  Filed 12/02/19  Page 472 of 802
Case 1:16-cv-04315-NRB  Document 243  Filed 09/24/18  Page 17 of 84
Confidential — Subject to Further Confidentiality Review

Page 58

1  somewhere, whether it was in the Doc IDs and what
2  have you, and I was trying to get an understanding
3  of one of the components of damage claims that they
4  had.
5      Q.  Which component?
6      A.  It was a component that related to
7  Mr. Foster needing to continue to work because he
8  was not comfortable without having cash flow while
9  there was questions with regard to his house and the
10 issues he was having with his house, and so he had a
11 variety of expenses that were associated with him
12 having to return to work.
13     Q.  Did you do any analysis or request any
14 information about his savings?
15     A.  No.
16     Q.  Do you have any documents that would
17 establish what assets Mr. Foster had at that time?
18     A.  No.
19     Q.  Was there any other topic that was discussed
20 in that call that you can remember?
21     A.  Not that comes to mind.
22     Q.  Okay.  You have a telephone conference --
23 conversation with counsel and Kevin Rosen.  Do you
24 recall the substance of that conversation?
25     A.  Yes.

Page 59

1      Q.  Were there any notes made from that?
2      A.  No.
3      Q.  How long was the conversation?
4      A.  Five minutes, maybe.
5      Q.  And when was that?
6      A.  Would have been sometime in that few days or
7  week before the issuance of our report.
8      Q.  What was the substance of that conversation?
9      A.  I was trying to get an understanding of some
10 of his construction, his capital improvements and
11 getting -- understanding where the documentation of
12 that was within the -- within the documents.
13     Q.  What specific items were you trying to
14 understand?
15     A.  Well, he had a significant amount of
16 spending in constructing, and there is a very
17 detailed list of it in my report, and I was trying to
18 find out where that detail was, and making sure that
19 I had properly addressed it.
20     Q.  How much time has been spent since your
21 engagement, your firm's engagement, in early January
22 through today, in connection with this engagement in
23 your report?
24     A.  Are you talking, like, total hours?
25     Q.  Yes.

Page 60

1      A.  Hundreds.
2      Q.  Do you have an accurate number or --
3      A.  I probably have 150 hours myself.
4      Q.  Okay.
5      A.  And I suspect Elan has at least that, so
6  that's 300.  Probably more than 500.  I mean, I
7  can't guarantee that amount but I've got to believe
8  it was at least that.
9      Q.  All right.
10     Are there things that you were looking for
11 that you have not been able to obtain in connection
12 with this engagement?
13     A.  Yes.
14     Q.  What have you not been able to obtain?
15     A.  Well, to the extent that there were property
16 transactions, there were some instances where I
17 would have liked to have had the HUD from -- some of
18 them date back quite some period of time.  When I
19 didn't have the HUD, I used other information that
20 was available to reconstruct the most relevant
21 issues, but I would have liked to have had the HUD.
22     And, you know, as any forensic accountant
23 would like, although it's typically not expected, I
24 would have loved to have had every little receipt
25 and every little, you know, payment for every

Page 61

1  transaction that's on here, but -- so that's
2  something I would have liked but I did find there to
3  be sufficient information to provide reliability for
4  the vast majority of the information I've included
5  and when I didn't find something, I believe I made
6  it clear through my documentation.
7      Q.  So you've tracked in your -- is it the
8  master Excel spreadsheet?
9      A.  I don't remember what we call it.  It's
10 the -- I mean, that's what it essentially is.  There
11 is one Excel spreadsheet that has, I think, what we
12 call it the support --
13     Q.  Is it the support and master database?
14     A.  Thank you.
15     Q.  Is that the one that tracks when you did and
16 did not have supporting materials?
17     A.  It tracks what we looked at.  It didn't
18 track everything that we looked at.  Sometimes we
19 would look at -- a lot of these things are
20 documented in a lot of different ways in a lot of
21 different places, so it would have been tracking
22 sometimes more than one and sometimes, you know, the
23 last place it was seen or the first place it was
24 seen, so it doesn't document every level of
25 tracking.  Some of them do.

Page 62

1    Q.  Was the intent to document everything in the
2  support master database?
3    A.  Not to document everything.  To document,
4  you know, to give me a good way to get back to
5  information that I could reach in order to see what
6  we had that supported it.  It wasn't intended to
7  identify every piece of paper that did or did not
8  identify it.
9    Q.  Okay.  Mr. Elkin, do you have a copy of your
10  report handy?
11    A.  I do.
12       MR. KALIL:  Could you give me a copy?
13       MR. BREIT:  He has one.
14       MR. KALIL:  We'll mark one.
15       THE WITNESS:  Would you like me to review it
16  for completion?
17       MR. BREIT:  Yes, please.  Let me hand you
18  what I'm going to mark as Exhibit 7.
19       (Elkin Exhibit 7 was marked for
20  identification.)
21       MR. BREIT:  Did we already mark 4?
22       MR. KALIL:  Did we mark 4?
23       MR. BREIT:  Yes.
24       MR. KALIL:  Yes, we did.
25       MR. BREIT:  This was 4.

Page 63

1       THE WITNESS:  Thank you.
2  BY MR. KALIL:
3    Q.  4 was the Attachment A.
4    A.  Thank you.
5    Q.  Let me show you Exhibit 7 and ask you if you
6  recognize that, and when you have it in front of
7  you, I will give you one caveat?
8       MR. BREIT:  Take your time.  Make sure it's
9  complete and accurate.
10       THE WITNESS:  Do you need me to go through
11  each of the 1 through 20 to make sure every
12  schedule is there?
13  BY MR. KALIL
14    Q.  We'll work through them in the course of
15  what we're doing, but generally do you understand --
16  let's start with the first part of that, the section
17  that's titled Expert Report of Michael Elkin, dated
18  February 19, 2019 and it's nine pages.
19    A.  That's correct.
20    Q.  Is that your expert report or some portion
21  of it?
22    A.  Yes.
23    Q.  What would you call that piece, sir?
24    A.  The body of the report without the exhibits
25  and attachments.

Page 64

1    Q.  And behind it there should be the
2  attachments, including the schedules we've talked
3  about, the attachments A, B and C that we've already
4  marked separately.
5    A.  That's correct.
6    Q.  And then the exhibits for each of the 20
7  Priority Claimants; is that correct?
8    A.  That is correct.  Those were the exhibits
9  that were submitted in connection with the February
10  19th report.
11    Q.  Okay.  And I believe in that binder, this is
12  the caveat, you will see an update for Exhibit 12?
13    A.  Yes, I see that.
14    Q.  And that was provided by you on February 26,
15  2019?  That's what it's dated.
16    A.  I don't recall -- yes.
17    Q.  And there is also an update for Exhibit 17
18  dated March 8th, 2019?
19    A.  That's correct.
20    Q.  Okay.  As of yesterday, were those all the
21  updates to your report?
22    A.  No.  As of yesterday I had -- there was
23  another update which I gave you at the beginning of
24  the deposition today that I had finished on
25  Saturday.

Page 65

1    Q.  That would be Exhibit 4 updated?
2    A.  That's correct.
3    Q.  Which actually is dated March 9th.  So
4  you're correct.
5       If we add that -- let me make that Exhibit
6  Number 8 since it was not in the binder.
7       (Elkin Exhibit 8 was marked for
8  identification.)
9  BY MR. KALIL:
10    Q.  Mr. Elkin, I'm going to --
11       MR. KALIL:  The Exhibit 4, did we -- can we
12  go off for one second?  I am just a little
13  confused.
14       Did we mark this already, Counsel?  This is
15  Exhibit 4 for Steven and Cathy Etter.  I don't
16  think so.
17       MS. RICO:  I don't believe we did, no.
18    A.  No, we did not.
19       MR. KALIL:  You gave me this copy that I've
20  got.  I'm going to check with the other copies,
21  make sure we get those marked.  There it is.
22       Let's go back on.
23  BY MR. KALIL:
24    Q.  I'm going to show you what I've marked
25  Exhibit 9 -- so Exhibit 8, and ask you what that is.

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 474 of 802
Case 2:14-cv-02722-EEF-MBN Document 243-3 entered on FLSD Docket 11/28/19 Page 19 of 84
Confidential - Subject to further Confidentiality Review

Page 66

1    A.  This is an update to Exhibit 4 from my
2  initial report for Steven and Cathy Etter.
3    Q.  So if we add Exhibit 7 and Exhibit 8
4  together, do we have your complete report?
5    A.  Yes.
6    Q.  Okay.
7      MR. KALIL:  Do you need a break?
8      THE COURT REPORTER:  No.
9      MR. KALIL:  Okay.
10  BY MR. KALIL:
11    Q.  All right.  Mr. Elkin, in your report, the
12  first section titled Background, you state:  "Is not
13  intended to represent any expert opinion."
14      So you're not offering any opinion on the
15  status of the litigation or how that came into
16  being, are you?
17    A.  No, I'm not.
18    Q.  Okay.
19      MR. BREIT:  Do you want him to?  We could
20  add it on there.
21      MR. KALIL:  You know, if --
22      MR. BREIT:  I'd like someone to explain it
23  to me.
24      MR. KALIL:  Well, I could ask the question,
25  I probably should ask the question.

Page 67

1  BY MR. KALIL:
2    Q.  Mr. Elkin, do you have an understanding
3  sitting here today of what the pleading -- the
4  operative pleading is in the Florida litigation that
5  we're traveling under and what comprises that
6  pleading?
7    A.  I'm not certain.
8    Q.  I think we might get agreement around the
9  table.
10      You've got some references to some orders.
11  In Paragraph 2 you talk about Judge Cooke's -- you
12  talk about the case in front of Judge Cooke but
13  you're not expressing any statement on what the
14  status of that case is, are you?
15    A.  No, I'm not.
16    Q.  This is just background?
17    A.  That's correct.
18    Q.  Similarly, Paragraph 3 is just background
19  regarding the proceedings in front of the multi
20  district judge, you're not expressing any opinions
21  on the status of that case?
22    A.  I am not.
23    Q.  The references to the trial plan in
24  Paragraph 4 is talking about a timeline and the
25  methodology.  Are you expressing any opinions with

Page 68

1  regard to either of those?
2    A.  No.
3    Q.  The -- Paragraph 5 just talks about a
4  timeline for the 20 Priority Claimants and certain
5  types of damages.  Now, you are going to be
6  expressing opinions as to some damages in this case?
7    A.  That's correct.
8    Q.  Are you limiting your opinions to the 20
9  Priority Claimants?
10      MR. BREIT:  When are we talking about?  As
11  of now?
12      MR. KALIL:  As of today.
13    A.  As of today, that's correct.
14    Q.  Have you been asked to do anything more than
15  look at the 20 Priority Claimants as of today?
16    A.  No.
17    Q.  Do you have any expectation, sitting here
18  today, that you will be asked to do analyses for
19  more than the 20 Priority Claimants?
20    A.  I haven't been asked at this time.
21      THE WITNESS:  When you have a good time, if
22  we could just take a quick break, I want to get a
23  little bit of water.
24      MR. KALIL:  This is as good a time as any.
25      THE VIDEOGRAPHER:  The time is 11:23.  We

Page 69

1  are going off the record.  Please stand by.
2      (Recess from 11:23 a.m. until 11:31 a.m.)
3      THE VIDEOGRAPHER:  The time is 11:31 and
4  we're back on the video record.
5  BY MR. KALIL:
6    Q.  Mr. Elkin, in your scope of assignment --
7  but let's first go through what you are not
8  rendering your opinions on, if I may.  I think you
9  address it in Paragraph 7.  You say you're not
10  rendering any opinions regarding any legal theories
11  or conclusions; correct?
12    A.  That's correct.
13    Q.  You're not rendering any opinions regarding
14  liability or issues of liability; is that correct?
15    A.  That's correct.
16    Q.  Are you also not making any effort to
17  allocate any damages as between the various
18  defendants in the litigation?
19    A.  I am not.
20    Q.  If you were asked to do that, do you think
21  you could do it?
22      MR. BREIT:  Before you answer that question,
23  are you talking about delineation of the damages
24  in each item, whether it was caused by a
25  particular defendant, or whether part of it was

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 475 of 802
Case 2:14-cv-02722-MSG Document 143-36 Filed 12/18/19 Page 19 of 84
Confidential - Subject to further Confidentiality Review

Page 70

1  damaged and the other part was damaged by someone
2  else?
3      MR. KALIL:  First talking about --
4      MR. BREIT:  Asking for clarification.
5  BY MR. KALIL:
6      Q.  First part is, could you allocate damages as
7  to who caused the damages if asked to do so?
8      A.  Probably not.
9      Q.  Have you been asked to determine if any of
10  the damages in your report have previously been
11  compensated from any sources?
12      A.  No.
13      Q.  And you've not made any such allocations?
14      A.  That's correct.
15      Q.  Were you specifically instructed not to look
16  at that?
17      A.  It was a conversation we had.  I would say I
18  wasn't specifically instructed not to, unless me
19  asking "Will I be?" and me being told no is an
20  instruction.
21      Q.  So you asked if you should look at other
22  sources?
23      A.  I just asked what my role was expected to be
24  with regard to them, and they said that those would
25  be separate issues for the court, were not for me.

Page 71

1      Q.  You are aware that many of the Priority
2  Claimants have received compensation from other
3  sources?
4      A.  I don't know if it would be termed
5  compensation or how to characterize it.  I know that
6  many of these Priority Claimants have received money
7  from something.
8      Q.  You've got a schedule, actually a work
9  paper, that lists payments made to the Priority
10  Claimants?
11      A.  Yes.
12      Q.  And do you have that available or do you --
13      A.  The -- I don't have it in the body of the
14  report.  It would be in the work papers that I
15  provided to you.
16      Q.  Okay.  Well, let me -- well, if we go
17  through the work papers, we'll do that in a minute,
18  you do have an actual listing of all of the payments
19  that you're aware of that were received by the
20  Priority Claimants?
21      A.  I believe that's correct.
22      Q.  And from what sources were those payments
23  received?
24      A.  I'd have to look at them to recall.  I
25  believe some of them were some types of settlements

Page 72

1  and others may have been other things.  I might look
2  at them and not know specifically what they were.
3      Q.  But you didn't do any analysis of whether
4  those were related to the same damages, or did you?
5      A.  I did not.
6      Q.  Did you have any discussions with any of the
7  counsel as to whether the damages you were
8  calculating had been compensated in whole or in part
9  from any sources?
10      A.  No.
11      Q.  You state that you're not looking at -- or
12  not rendering opinions on any remediation for any of
13  the damages, this is in Paragraph 7 of your scope of
14  assignment.
15      A.  That's correct.
16      Q.  Why are you not looking at that issue?
17      A.  I wasn't asked to or ultimately was not
18  asked to.
19      Q.  You were also not rendering any opinions on
20  any personal injury claims?
21      A.  That's correct.
22      Q.  Not rendering any opinions of any loss of
23  use or enjoyment; is that correct?
24      A.  That is correct.
25      Q.  And you're not rendering any opinions on

Page 73

1  diminished value/stigma; is that correct?
2      A.  That is correct.
3      Q.  Now, let me just be clear.  Diminished value
4  and stigma, what do you understand that to be in
5  that context?
6      A.  I have a limited understanding about it,
7  just that it has to do with the impact that these
8  circumstances has had or may continue to have on
9  these properties.
10      Q.  You're also not going to be rendering any
11  opinions on any punitive damages?
12      A.  That's correct.
13      Q.  Now, let me direct you for a second to
14  Exhibit 1 for Janet Avery in your report, and
15  there's a document titled Data and Damage Summary.
16  Do you see that?  It's the first page under
17  Exhibit -- first page behind the title page for
18  Janet Avery.
19      A.  Yes.
20      Q.  Who prepared that document, sir?
21      A.  That was prepared in a combined effort by me
22  and by Elan Sternberg.
23      Q.  Okay.  And who determined what items to put
24  on that page?
25      A.  At the end of the day, I did, but it was in

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 476 of 802
Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 1 of 84
Confidential — Subject to further confidentiality review

Page 74

1 conjunction with discussions with Elan, but I did.
2    Q.   Did you have any discussions with counsel in
3 determining what to be put on that page?
4    A.   No.
5    Q.   Did you provide any drafts of this format to
6 counsel?
7    A.   Counsel would have received a draft that
8 included this format.
9    Q.   Were there any drafts that were different in
10 terms of the types of information they were showing?
11    A.   No.
12    Q.   I note that there is a comment -- there is a
13 line on the very bottom that says punitive damages
14 and then the letters TBD?
15    A.   Yes.
16    Q.   TBD means to be determined?
17    A.   Yes.
18    Q.   By whom, sir?
19    A.   Not me.
20    Q.   Why did you include a line for that if
21 you're not doing that as part of your report?
22    A.   For clarity.
23    Q.   Clarity for what?
24    A.   Clarity to see that these are not items --
25 when I did this, I hadn't written the report yet or

Page 75

1 I was in conjunction with it.  So I had a list that
2 I had identified in the order and other places as to
3 what various claims were.  So I just listed
4 everything there, and I thought it would be good to
5 make very clear what I do have an opinion on and
6 what I do not.
7    Q.   Did you ever consider taking those lines out
8 entirely if they're not part of your report?
9    A.   I don't think so.  It wasn't, you know, a
10 significant determination one way or another.
11    Q.   Do you have any expectation that at any
12 point in time you will be asked to add in a number
13 for punitive damage as part of your work in this
14 engagement?
15    A.   I don't know.
16    Q.   Have you been asked to be ready to do that?
17    A.   No.
18    Q.   In any of your spreadsheets or work papers
19 have you included any place where you can bring in a
20 punitive damage figure to these documents, these
21 summaries?
22    A.   No, no.
23    Q.   Does this document, the data and damage
24 summary, import data from other places in your work
25 papers?

Page 76

1    A.   Yes.
2    Q.   Where is this created?  Is it a spreadsheet?
3    A.   It's in the Excel that I provided to you.
4    Q.   Okay.  And there is no place that would feed
5 into the punitive damage amount in your work papers?
6    A.   No, there's not.
7    Q.   What about a loss of use and enjoyment, is
8 there anything in your work papers where you're
9 tracking any numbers of that nature?
10    A.   No.
11    Q.   Have you been asked to track that?
12    A.   No.
13    Q.   Do you expect at any point that someone else
14 will provide you any information about loss of use
15 and enjoyment and that you will be asked to testify
16 to that?
17    A.   No.
18    Q.   Diminution in value, you've listed it here
19 as another item that says "TBD."  Do you have any
20 place in your work papers where there is any
21 tracking of diminution of value?
22    A.   No.
23    Q.   Do you have any expectation that you will be
24 bringing any numbers into your damage summaries at
25 any point for diminution in value?

Page 77

1    A.   If I'm asked to.
2    Q.   Has anybody asked you to do that yet?
3    A.   They talked that at some point that I might
4 be asked to add that on.
5    Q.   Who talked about that?
6    A.   I believe that was Natalie Rico.
7    Q.   And when was that?
8    A.   Before the issuance of the report, probably
9 -- probably after I sent them a draft or somewhere
10 in that time period.
11    Q.   When did you prepare your first draft of the
12 report?
13    A.   When did I prepare -- I mean, I started
14 preparing the report almost as soon as we got the
15 engagement.  I mean, this was a very short period.
16 So when you say when did I start preparing the
17 draft, I mean, everything was just leading up to a
18 final portion.  The only thing that I would actually
19 consider a draft is when I actually send something
20 to somebody and it's marked up as draft.
21    Q.   How many drafts have you shared with counsel
22 of your report?
23    A.   One or two.
24    Q.   Okay.  When did you share the first draft?
25    A.   Roughly a week before it was due, I believe.

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 477 of 802
Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 477 of 802
Confidential - Subject to further confidentiality Review

Page 78

1  I'd have to take a look and --
2      Q.  So your report --
3      A.  -- try to figure that out.
4      Q.  So your report is dated February 19th, so
5  somewhere in early February?
6      A.  Yes.
7      Q.  Okay.  And when did you share the second
8  draft?
9      A.  I'm trying to remember if I did do a second
10  draft.  I don't recall, but if I did, it would have
11  been sometime in that time period shortly before.
12      Q.  Okay.  And did you get any substantive
13  comments back on your first draft?
14      A.  Nothing particularly substantive.  I did get
15  one comment that I noticed just now, actually, that
16  I didn't correct, which is, I had West Palm Beach
17  division listed on all of my exhibits, but I also
18  have it on the cover page.  I took it off all the
19  exhibits, but left it on the cover page.  So, oops.
20  But, no, I don't recall anything -- anything
21  substantive.
22      Q.  Given that you had inquired of one of your
23  partners about the tax consequences of Chinese
24  drywall -- and let me be more specific.
25          I believe you said you inquired of one of

Page 79

1  your partners about whether there were tax
2  deductions that could be taken or casualty losses
3  that could be taken; is that correct?
4      A.  I was aware that there were.  I had asked
5  the partner that heads up that department if he had
6  or anybody in his group sort of could -- had
7  specialized in that or had done a lot of those.  And
8  he was aware of one of our managers -- I think he's
9  a manager, or a director -- in the group that had a
10  client that had that, so he just directed me to him.
11      Q.  So you were aware of that as a -- as an
12  issue that comes up in this context?
13      A.  Well, I read some of the questions in the
14  depositions, and I knew it was a question that was
15  being asked.  And so it's very often, when we're
16  doing damage calculations of any kind, that we talk
17  about taxes and whether they have an impact and
18  whether they should be done -- the damages should be
19  done pre or post-tax.
20          And so I was exploring the taxability not
21  only of -- as a deduction, but also the taxability
22  of money that would be received as compensation.  So
23  that was discussions that I wanted to have.
24      Q.  Why did you not put anything in your damage
25  summary that refers to whether you were or were not

Page 80

1  considering the tax impact of the losses or
2  payments?
3      A.  I just don't think it's relevant, period.
4      Q.  Well, you're -- it's not something you're
5  calculating?  It's not something you were asked to
6  calculate?
7      A.  It's not a question of being asked to
8  calculate or not asked to calculate.  It's my
9  opinion that it's not needed to be calculated
10  because it wouldn't be an appropriate component in
11  order to offset the damage.
12      Q.  Let me ask you this, Mr. Elkin.  If somebody
13  receives a deduction on their tax return, does that
14  give them an increase in cash?
15      A.  Potentially.
16      Q.  Would that not be relevant if a deduct -- a
17  deduction is directly related to a Chinese drywall
18  or defective drywall event?
19      A.  It could be potentially relevant, except
20  that any recovery of those amounts would also be
21  taxable to the extent -- at a minimum, to the extent
22  to which it would offset any benefit they had
23  received.
24          And typically, when we do damage
25  calculations and there's uncertainty with regard to

Page 81

1  the taxes that will be paid ultimately, we don't do
2  it.  We don't make tax calculations, and we don't
3  calculate tax benefits.
4      Q.  Were any of the Priority Claimants able to
5  obtain a tax deduction on their federal income tax
6  returns in relation to the Chinese drywall?
7      A.  I believe so.
8      Q.  Who?
9      A.  I don't recall as we sit here.
10      Q.  Okay.  This was an historical deduction?
11  When you say you believe so, somebody did this
12  historically?
13      A.  This happened in the past.
14      Q.  So it's not -- it's not an uncertain event?
15      A.  Well, that part might not be, but then the
16  recovery and the tax that they would have to pay on
17  it or may have already paid on some of the recovery
18  would be.
19      Q.  Now, if somebody had obtained -- if one of
20  the Priority Claimants had taken a tax deduction on
21  their federal income tax returns as a result of the
22  Chinese drywall -- defective drywall loss, and that
23  was a past year in their tax returns, you could
24  calculate the impact, couldn't you?
25      A.  Most likely.

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 478 of 802
Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 478 of 802
Confidential - Subject to further confidentiality Review

1    Q.  Did you make any effort to -- you didn't
2  make any effort to do that here?
3    A.  No.
4    Q.  To the extent somebody has an historical tax
5  deduction for defective drywall, and they pay less
6  income tax, doesn't that impact their cash flow such
7  that it should be taken into account in your
8  prejudgment interest calculations at a minimum?
9    A.  I think that would depend on a lot of
10  different circumstances.
11    Q.  What would it depend on?
12    A.  Well, it depends on what the --
13    MR. BREIT:  Before you answer this question,
14  let me just state an objection for purposes of
15  this deposition and what this expert has been
16  asked to do and not do.
17    You're now trying to inquire of this witness
18  in an area that he has not been asked to look
19  into, has not been asked to testify to, has not
20  given any information on any report to.  And
21  you're just throwing out questions to an
22  accountant because you want to know.
23    MR. KALIL:  Counsel, first of all, I object
24  to the speaking objection.  Typically, we say
25  simply "object to form" in this district, and

1  that's all we need.  If I need more, I can ask
2  you.
3    But I'm asking a question to understand his
4  methodology and his procedures.
5    MR. BREIT:  Well, with regard to his
6  methodology and procedures, this was not a part
7  of his expert report and/or testimony.
8    And so now I will state again on the
9  objection, whether you think it's speaking or
10  not, this is not part of his expertise that was
11  asked for in this case.
12    Now you're asking an expert to give you an
13  opinion broadly on tax information, which is not
14  a part of what he's supposed to do or asked to
15  do.  And I object to you trying to get him to
16  help you out on tax consequences of tax
17  returns --
18    MR. KALIL:  Counsel --
19    MR. BREIT:  -- which is not a part of this
20  subject area.
21    MR. KALIL:  Counsel, same thing.  "Objection
22  to form" is sufficient.  Speaking objections are
23  not allowed in the Southern District of Florida,
24  and I'd ask you not to make them.
25    MR. BREIT:  Well, then I'm going to ask you

1  not to go outside the expertise of this witness
2  and keep on asking him.
3    MR. KALIL:  It's --
4    MR. BREIT:  Otherwise, he may just say "It's
5  not part of my expertise.  I'm not going to
6  answer."
7    MR. KALIL:  Well, I think there's documents
8  that this witness has already provided where he
9  looked at the specific issue.  He's already given
10  me papers in his binder, and it is this binder
11  marked as Exhibit 5 where he has specifically
12  retrieved documents dealing with tax impacts of
13  Chinese drywall.  So he has looked at it.
14    MR. BREIT:  And what he said -- and so it's
15  clear on the record for purposes of your
16  questioning, he said, "I brought down from the
17  IRS documents with regard to this, but I am not
18  offering or stating or researched or reviewed
19  anything with regard to any of the Priority
20  Claimants for purpose of their testimony."
21    So you're way beyond this expert's testimony
22  for purposes of this case.
23    MR. KALIL:  I disagree with you, Counsel,
24  but I'm asking if this could be something that is
25  relevant to how he formulated his opinions.

1  BY MR. KALIL:
2    Q.  So let me go back to my question.
3  Mr. Elkin, you did a schedule of prejudgment
4  interest based on expenditures of some of the
5  priority -- of all of the Priority Claimants who
6  spent money, did you not?
7    A.  Yes.
8    Q.  Okay.  And what did you consider in the
9  prejudgment interest calculations, just outflows?
10    A.  I just considered alternate living expenses
11  and personal property damage and remediation
12  expenses.
13    Q.  Okay.  So these are all expenses, outflows
14  of cash by those Priority Claimants, correct?
15    A.  That's correct.
16    Q.  Did you consider any inflows of cash?
17    A.  No.
18    Q.  You didn't factor in, in that part of your
19  report or anywhere else, any receipts by the
20  Priority Claimants of any funds from any sources,
21  did you?
22    A.  No.
23    Q.  Would you agree with me that if you are
24  calculating prejudgment interest on outflows, that
25  if you have an inflow, you should offset it?

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 479 of 802
Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 479 of 84
Confidential - Subject to further Confidentiality Review

Page 86

1    MR. BREIT:  Again, I'm going to object to
2  the form of the question.
3    A.  Not necessarily.
4    Q.  Would you agree with me that if a Priority
5  Claimant spends money and is -- then receives an
6  equivalent or greater amount, you would not be
7  calculating prejudgment interest on the expenditure?
8    A.  I don't think that can be determined at this
9  point.
10    Q.  Did you make -- you made no effort to
11  determine that?
12    A.  I didn't think it would be appropriate.
13    Q.  But you made no effort to determine that; is
14  that correct?
15    A.  I didn't include it.
16    Q.  Did you make any effort to determine it?
17    A.  Well, to the extent that I didn't include
18  it, that's the effort that I made.
19    Q.  You didn't include it in your processes at
20  all?
21    A.  I was aware of it, and it was -- the receipt
22  of those funds was included in a schedule in my work
23  papers.  But whether or not those amounts should or
24  shouldn't go to offset the amounts that were
25  included in my prejudgment calculation is not a

Page 87

1  determination to be made by me.
2    Q.  Did you present any summary of those
3  receipts in your report proper?
4    A.  In the report?  No.  Very clearly in the
5  tabs and the detail of the Excel schedule that was
6  provided to you, yes.
7    Q.  The Excel schedule was provided to us, but
8  is not part of your report; is that correct?
9    A.  It's not part of the -- it's not part of the
10  report.  Several of the tabs -- it forms several of
11  the tabs and calculations in the report.
12    Q.  You agree with me that no part of your
13  report references the schedules that show the
14  receipts of funds by the Priority Claimants; is that
15  correct?
16    A.  I don't recall, so I would have to go
17  through and look, but probably not.
18    Q.  If you're at all uncertain, please take a
19  look.
20    A.  I did not make reference to the specific
21  schedules, but I did have a paragraph that discussed
22  that I was not asked by counsel to address potential
23  reductions in damages in connection with potential
24  setoffs, settlement payments received by claimants,
25  or other collateral sources.  I understand that the

Page 88

1  applicability of these items is matter for the
2  court.
3    Q.  Okay.  Where is that you're referring to
4  specifically?
5    A.  Paragraph 29 on Page 9 of 9.
6    Q.  There is no reference in there that would
7  advice a recipient of your report to the fact that
8  you had calculated a schedule of these receipts, is
9  there?
10    A.  Probably not.  No.  Other than it being
11  clearly delineated in the Excel schedule that I
12  provided to you, I don't -- I don't think it's
13  referenced in my report, so --
14    Q.  You make a reference in Paragraph 25 of your
15  report to prejudgment interest.  I'd direct you to
16  that, and let me read it to you.
17      It says:  "I was asked by counsel to
18  calculate prejudgment interest amounts as an aid for
19  the court or trier of fact should it be determined
20  that prejudgment interest is awardable for any or
21  all components of damage."
22      You go on to say:  "I'm not providing an
23  opinion regarding whether such interest is a legal
24  remedy in this matter.  I understand such a
25  conclusion is a matter for the court."

Page 89

1      So you've given the recipient of your report
2  notice that you've done a calculation of prejudgment
3  interest; is that correct?
4    A.  That's correct.
5    Q.  You have not given a similar advice to the
6  recipients of your report that you have information
7  regarding payments that you are not factoring into
8  that; is that correct?
9    A.  That is correct.  I don't believe that it's
10  relevant to make that -- such a disclosure, but I
11  would agree with you that it's not here.
12    Q.  Let me direct you to Paragraph 27 of your
13  report -- actually, Paragraph 26, excuse me.
14      "I have evaluated the nature and timing of
15  the various damage components, and I have calculated
16  potential prejudgment interest for each Priority
17  Claimant as reflected in the corresponding
18  Exhibits 1 through 20.  I calculated prejudgment
19  interest using the Florida statutory interest rates,
20  following the simple interest method, not
21  compounded, to calculate statutory interest for each
22  element of damage on a claim-by-claim basis.
23      So again, you're describing that you have
24  calculated prejudgment interest, but you have not
25  given any disclosure that there are other items that

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 480 of 802
Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 480 of 84
Confidential - Subject to further confidentiality review

Page 90

1  have been received by the Priority Claimants that
2  are not factored into that; is that correct?
3     A.  That is correct.
4     Q.  Paragraph 27, another paragraph dealing with
5  prejudgment interest:  "The period of prejudgment
6  interest has been calculated to begin at a date
7  corresponding with the date costs or damages were
8  incurred and to end on July 22, 2019, the
9  anticipated date of trial."
10     What do you mean by the date corresponding
11  with the date costs or damages were incurred?
12     A.  Based on the records that I reviewed, some
13  items were very clear, when something was paid for,
14  where the cost was incurred.
15     Other items required some level of
16  assumptions with regard to when it would have --
17  most likely have been paid.  Some items, the damage
18  may have taken place as of an assumed date even
19  though it might be something that had been paid for
20  in the past.
21     Q.  Okay.  So let's separate those out, then.
22  You've talked about costs and damages.  Are they two
23  separate components?
24     A.  I don't think so.  I mean, something can
25  cost something, but it might not be a damage in the

Page 91

1  case, so I think it's a combined --
2     Q.  When you try to calculate -- or when you've
3  calculated a date that a cost was incurred, what did
4  you use?
5     A.  I used the best available information.  So
6  by example, if somebody had a lease to rent a
7  piece -- to rent an alternative living facility, but
8  they were not available to provide data going back
9  to a certain period of time as to when they actually
10  wrote the check, I looked at the lease, and so I
11  assumed that it had been paid based on the terms of
12  the lease.  So that would be an example of where I
13  don't have the actual payments.
14     In some cases, I had the actual payments, so
15  I would have used those dates.
16     Q.  So the dates were the dates of expenditures?
17     A.  Yes.
18     Q.  Whether proven or assumed?
19     A.  Correct.
20     Q.  Did you determine -- did you make any --
21  excuse me.  You didn't make any effort to determine
22  the source of funds used to pay those costs, did
23  you?
24     A.  No.
25     Q.  How did you calculate the dates of damages

Page 92

1  incurred?  What did you use as your benchmark?
2     A.  Again, I think it's the -- it's the same
3  explanation.
4     Q.  Well, what is a damage as opposed to a cost?
5  You've used the two different words.
6     A.  Well, a cost can be something that costs
7  something, but not a damage.  So perhaps I could
8  have worded that a little bit such that it was just
9  costs/damages.  But I wasn't really using those as
10  separate -- as separate and distinct items requiring
11  definition.
12     Q.  You didn't include any costs in your report
13  that you are not also claiming as damages, or did
14  you?
15     A.  I may have excluded some, but they wouldn't
16  be on here.  There might be one or two that have
17  a -- have a zero next to them, but for the most
18  part, I observed things that cost money, but that
19  weren't included as damages.
20     Q.  Let me talk to you about dates of damage.
21  To the extent somebody has personal property that
22  you've included as a damage, what did you use as the
23  date of damage?
24     A.  That was a difficult component.  And again,
25  I've used them, to be clear, for purposes of these

Page 93

1  calculations, with what I hope was a clear caveat
2  that ultimately those dates might be determined
3  based on the law, or what have you, to be different
4  dates.
5     Sometimes I would have used -- if it was a
6  cost that was incurred to replace something, I
7  believe I would have used the cost on the date that
8  they actually expended it, although there could be
9  argument that it was damaged earlier than that.
10     In some cases where I didn't have something
11  that was replaced, I used my judgment on a line item
12  basis to determine at what point that damage may
13  have taken place.
14     There were some things where I couldn't make
15  a determination as to when they were put in place,
16  so I used alternative dates, and I would have to go
17  line item by line item.
18     There was not a bright line, here's how
19  you're going to do it for each one, because the
20  facts and circumstances for each case were
21  different.
22     But when I had evidence of an actual date or
23  what I believed would be the date, particularly in
24  the alternate living expenses, I used a date then.
25     What I ultimately did was I used a -- I

1 used -- I'm going to just call it a buffer period,
2 but I added an additional 30 days to the
3 calculation -- or I subtracted -- there is less days
4 of interest because I used a later date to try to
5 account for what might be differences as to whether
6 something hit a credit card expense or then got paid
7 a month later, or what have you, although there's
8 argument in other cases that I've been in where, if
9 it hit your credit card, that was the date of the
10 expense.
11     But I was trying to be as conservative as
12 possible, recognizing there is a variety of
13 different circumstances for these different dates.
14     Q.  Mr. Elkin, would it be conservative to
15 include reimbursements in calculating prejudgment
16 interest?
17     A.  I believe I was pretty clear that I haven't
18 considered what you're calling reimbursements and
19 I'm just calling other collateral sources or other
20 funds or other setoffs.  I don't believe it would
21 have been appropriate to do that because I haven't
22 made any conclusion whatsoever as to whether those
23 should apply, shouldn't apply, or are even relevant.
24     Some of those -- what you're calling
25 reimbursements may have been reimbursements for

1 things that aren't built into the damage
2 calculations.
3     So since I was not addressing that, and I am
4 not addressing that, I don't believe it would have
5 been proper to offset these things because I don't
6 render an opinion as to the relevance of these
7 setoffs or other amounts received.
8     Q.  Would you agree with me that if the court
9 determined that the items you've tracked as
10 reimbursements or payments, but that you haven't
11 worked into your report, were relevant, that they
12 would impact your damage calculations, and they
13 would reduce them?
14     A.  They could.
15     Q.  And would you agree with me that if the
16 court determined they were relevant, they would also
17 impact your prejudgment interest?
18     A.  They could.
19     Q.  Assuming the timing was such that they came
20 before an expenditure, they would reduce prejudgment
21 interest; is that correct?
22     A.  Or even if they came after an expenditure,
23 it might reduce the period interest.
24     Q.  Okay.  What about claimants -- Priority
25 Claimants who testified they were reimbursed for

1 alternative living expenses, why didn't you include
2 that?
3     A.  I haven't been asked to determine the
4 relevance and the appropriateness of offsetting any
5 of the amounts that they received.
6     Q.  So notwithstanding the fact that some of the
7 Priority Claimants said they were reimbursed for the
8 expenses that you were tracking as a damage
9 component, you didn't back out those reimbursements?
10     A.  That's correct.
11     Q.  Let me go back for a minute to the personal
12 property expenses, items that were calculated as
13 being damaged.  Did you use the dates of acquisition
14 for those items, original acquisition, or the dates
15 of replacement as your basis?
16     A.  It depended on the type of item and the
17 timing.
18     Q.  Okay.  Is that reflected in your report or
19 your work papers anywhere?
20     A.  As to -- the date that I used is reflected.
21 As to whether or not it relates to the date that it
22 was originally purchased or the date it was replaced
23 would have to be determined on a line-by-line
24 item --
25     Q.  Is there a --

1     A.  -- a line-by-line basis.
2     Q.  Is there somewhere in your work papers where
3 that is readily shown?  We can readily sort your
4 work papers or Excel spreadsheet by that
5 differentiation?
6     A.  I don't think so.
7     Q.  When you were dealing with personal property
8 and putting it into your spreadsheets, did you
9 obtain evidence and inventories of what was in each
10 property before the Chinese drywall or defective
11 drywall came into the property?
12     A.  No.
13     Q.  Okay.  Did you obtain full documentation of
14 what was in the --
15     A.  I'm sorry.  Could you read back the last
16 question?
17     Q.  Sure.  Let me do it -- let me do it a little
18 differently.  I think I'll make it clearer.
19     A.  I think the question that you asked is not
20 the question that I answered.
21     Q.  I think that's correct.
22     A.  Because there's something about that
23 question that doesn't work.
24     Q.  And I see the problem.  Let me see if I can
25 fix it.

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 482 of 802
Case 2:14-cv-02722-EEF-MBN Document 245-1 Filed 06/13/2019 Page 27 of
84
Confidential — Subject to further confidentiality Review

Page 98

1  When you were calculating personal property
2  damages and putting that into your work papers and
3  spreadsheets, did you obtain evidence and
4  inventories of what was in each property prior to
5  the time it was damaged?
6    A.  That's still not really making sense to me,
7  because my understanding is the dry -- the -- I
8  don't know what would be considered the date of
9  damage.
10    But if the date of damage is when the
11  drywall went in, then these people, or at least the
12  majority of them, would not have moved into the
13  house yet.  So it doesn't make sense that the
14  furniture would have been in there before the
15  drywall is installed.  If it's determined that it's
16  some other date that does correlate, but I did not
17  do that.
18    Q.  I take your point.  Let me make it a better
19  question.
20    Were you able to verify, through an
21  inventory or otherwise, that each item of personal
22  property that is claimed as a damage was, in fact,
23  in the Priority Claimant's house or other dwelling?
24    A.  No.
25    Q.  Okay.  Did you get an inventory by Priority

Page 99

1  Claimant of the personal property that was damaged,
2  the date it was purchased, and the original cost?
3    A.  Some claimants had better information than
4  others.  Some of them had a lot of that information.
5  Some of them had very little.  And so to answer that
6  question, I would have to go on a -- pretty much a
7  case-by-case basis.
8    In one particular case, I received what I
9  believed to be a very detailed itemization that was
10  made actually by a third party.  In other cases,
11  there was more information -- I mean, we're talking
12  about information that would not typically be kept
13  by an individual.  So I really didn't expect to get
14  a lot of the information you're talking about.
15    Individuals don't always keep the receipts
16  and the proof of payment for things that they bought
17  many years ago, anticipating that they would need it
18  for any reason.  So some of them had better
19  information than others.  And I used a variety of
20  the information that they gave me.
21    Q.  Did you ask in all instances for either
22  proof or estimates of original costs?
23    A.  I asked about all of those things, and was
24  explained to me that everything that was either in
25  the items that had been provided to me that were

Page 100

1  Bates stamped or that were already on the portal
2  included everything that their clients had been
3  able -- and I say that -- I'm generalizing.
4    There might have been -- we're talking about
5  20 different plaintiffs, but overriding that
6  everything that was there was what they had with
7  regard to what they spent, what they had, if they
8  replaced it, what it cost them to replace, and if
9  they hadn't replaced it yet, what they used to
10  determine the case.  In some cases, that was an
11  estimate.
12    Q.  And that was information provided by
13  counsel?
14    A.  It was information provided through counsel.
15  I believe most, if not all, of it was information
16  they got from their clients.
17    Q.  Did you speak to each of the clients to ask
18  for estimates?
19    A.  I did not.
20    Q.  Did you speak to each of the clients to ask
21  what additional information they might have that
22  could help you improve the accuracy of your report?
23    A.  Not directly.
24    Q.  Did you, through anybody in your firm, speak
25  to each of the clients to ask for that information?

Page 101

1    A.  No.  By not directly, I meant nobody in my
2  firm directly spoke to the clients.  We would have
3  spoken to counsel, made clear to counsel what we
4  were looking for, and they would have inquired of
5  their clients.
6    Q.  With the two exceptions we talked about
7  earlier?
8    A.  With those two exceptions, and those were
9  just relevant to specific line items, not the
10  entirety.
11    Q.  But you had access to the clients if you
12  wished to speak with them?
13    A.  I had asked, for those particular clients,
14  for the specific things I was looking for from these
15  clients, not for everything that they had provided.
16    Q.  Isn't it a fact you were provided with a
17  contact list for all of the clients, and that's in
18  your work papers?
19    A.  I do have that contacts list.  That wasn't
20  why I was provided the contact list.  I believe I
21  was provided that list either in the -- in the scope
22  of running a conflict check, identifying whose
23  lawyers are whose, or knowing which depositions were
24  taken.  But it was not for purposes of me expecting
25  to contact those people.

1    Q.  Did anybody tell you not to contact the
2  clients?
3    A.  No.
4    Q.  So it was your decision?
5    A.  That's correct.
6    Q.  Sitting here today, can you say with any
7  certainty whether any of those clients might have
8  had greater information if you had reached out to
9  them?
10    A.  It's possible they could.
11    Q.  Okay.  You made no efforts to do that?
12    MR. BREIT:  Asked and answered.
13    A.  I believe I did make the effort.  I -- but I
14  can't tell you for sure what they might -- might or
15  might not have in some place.
16    Q.  To be clear, other than communications
17  through counsel, what other efforts, if any, did you
18  make to speak with the Priority Claimants and ask
19  for additional information?
20    A.  I felt comfortable that my inquiries of
21  counsel were sufficient.
22    Q.  Mr. Elkin, in regard to the values that you
23  put in your report for personal property that you
24  are claiming are damages, did you make any effort to
25  adjust them for the passage of time?  And by that, I

1  don't mean prejudgment interest.  I mean from the
2  date an item was purchased until the date it was
3  determined to be damaged.
4    A.  No.
5    Q.  Did you make any effort to adjust to fair
6  market value for any of the personal property
7  items on the date -- fair market value on the date
8  of damage?
9    A.  No.
10    Q.  Did you make any effort to compare the
11  personal property items that are listed in your
12  damage schedules for each of the Priority Claimants
13  to see that a lost item and a replacement item were
14  of like kind and quality?
15    A.  No.
16    Q.  Did you make any effort to determine, for
17  any of the Priority Claimants, if any of the
18  personal property items that are listed in your
19  damage schedule were betterment or improvements over
20  the items that had been lost?
21    A.  Not specifically.
22    Q.  How about not specifically, what --
23    A.  I may have seen one or -- one or two places
24  where the replacement was of similar nature, but I
25  wasn't specifically looking at them for that

1  purpose.
2    Q.  So you didn't make any judgment as to
3  whether a replacement item that might have been
4  better than the original should be included or not
5  included?
6    A.  That's correct.
7    Q.  Okay.  Did you see any instances that there
8  were replacement items that were of greater quality
9  than the original items?
10    A.  Not that I recall.
11    Q.  When you were given receipts for the
12  personal property items, were you able to verify,
13  for each of the receipts, specifically what quality
14  or type of item it was purchasing?
15    A.  No.
16    Q.  Did you put any procedures in place to
17  disallow any claimed personal property items if you
18  could not verify what was being purchased?
19    A.  No.  I mean, the procedure would have been
20  to identify whatever we believed was, in fact,
21  purchased, and when we could not, to make sure that
22  the description just accurately reflected that we
23  were unable to, either it was ineligible or it would
24  say miscellaneous.  But when we could identify what
25  it was, the description was included.

1    Q.  Did you use the word "ineligible."  Did you
2  mean ineligible or illegible?
3    A.  I totally meant illegible.
4    Q.  That's what I thought.
5    A.  Thank you for helping with that.
6    Q.  That's fine.  You did not make any --
7  establish any procedures for determining
8  ineligibility of any of the items -- let me finish
9  the question.
10    Am I correct that you did not establish any
11  forensic procedures for determining ineligibility of
12  any personal property items claimed as damages by
13  the Priority Claimants?
14    A.  That's correct.
15    Q.  Did you -- and you also did not establish
16  any forensic procedures for determining if any of
17  the replacement personal property items were of
18  greater value than the ones that were damaged?
19    A.  That's correct.
20    Q.  Let me shift you back to your report for a
21  second.  The -- Paragraph 6, you state that:
22  Kaufman Rossin & Company was retained in January of
23  2019 by Colson Hicks Eidson to provide expert
24  witness and consulting services regarding Priority
25  Claimants' damages...

Page 106

1 And then you go on to say: "Specifically,
2 Counsel requested that KR determine out-of-pocket
3 expenses for those who fully or partially
4 remediated..."
5 What did you understand the out-of-pocket
6 expenses to be here?
7 A. It wasn't intended to be a technical term,
8 but it was intended to be a delineation as to these
9 are expenses that were for moneys spent, not
10 something that would -- was -- corresponded to any
11 formulas or damages that had been proposed through
12 any other prescribed formulas.
13 Q. Let me see if I understand that. Are you
14 saying that you were taking expenditures and putting
15 them into an Excel spreadsheet so they could be
16 added together, but you weren't doing any formulaic
17 analysis of those? Is that what you're saying.
18 A. No.
19 Q. I misunderstood you.
20 A. What I'm saying is I was aware, and am
21 aware, that there is a remediation formula with
22 regard to claimants that have not fully
23 remediated --
24 Q. Okay.
25 A. -- or completely remediated. And I was

Page 107

1 trying to make it clear that that's not what this
2 is. This is related to expenditures.
3 Q. Now, when you got information about
4 out-of-pocket expenditures, how did you put them
5 into the Excel spreadsheet? Was there any vetting
6 that was done, or did everything that was brought to
7 your attention get put into the spreadsheets?
8 A. Everything would have been put into the
9 spreadsheets that we could identify, and then if
10 there were things that we couldn't find backup for
11 or we didn't find relevant support for or we didn't
12 find -- or we found contradictions, would have
13 either been removed or in some cases, or in some
14 cases, just a zero would have been put next to them.
15 But in most cases, I think they would have been
16 removed.
17 If we found an extraneous receipt somewhere
18 or we found something listed somewhere -- if it was
19 listed by the claimant, we would have included it
20 there and identified it as claimant.
21 Are you talking about specifically for
22 remediation or for everything in general?
23 Q. Well, I'm talking about -- you've used the
24 term "out-of-pocket expenses," and I'm not sure how
25 broadly you were using that term in Paragraph 6.

Page 108

1 A. I was primarily using those in conjunction
2 with the fully or partially remediated.
3 Q. Okay.
4 A. Although I suppose it would be relevant to
5 the other ones, as well.
6 Q. So if we go through your worksheets and your
7 spreadsheets, will there be entries showing which of
8 those expenses were excluded from your calculations?
9 A. There might be a handful. Very few things
10 were actually excluded. Well, actually, there
11 were -- there were large classes of things that
12 weren't entered in the first place.
13 Q. Okay.
14 A. So those wouldn't -- I don't know if those
15 ever even would have made it to the spreadsheet, or
16 if they did put them on the spreadsheet originally,
17 I think I would have just said, no, those don't
18 belong in here.
19 I don't remember if they stayed on the
20 schedule, because the schedule has the ability to --
21 I think there's a column in there where you can --
22 you can filter by damage, not damage, and a couple
23 of other categories. It's likely I had them exclude
24 them in total just so we wouldn't spend a lot of
25 time on them.

Page 109

1 Q. What type of categories would you excluded
2 in total?
3 A. So, for example, if they had -- one
4 component that sticks out in my mind is they were
5 claiming as alternate damage -- alternate living
6 expenses amounts that they were paying for the
7 property owner association at the affected property,
8 and I did not include those as a damage for the
9 alternate living expenses.
10 Q. That would have been an original living
11 expense, correct?
12 A. If you want to call it that. I just -- it's
13 expenses in connection with the affected property.
14 Q. Any others that come to mind?
15 A. Nothing that's jumping out at me at the
16 moment. I mean, I'm sure there were other things.
17 It might have been things like real estate taxes or
18 other things like that that were also paid at the
19 affected property that might be relevant to one
20 area, but not to the areas that I dealt with.
21 Q. Okay. Now, with regard to the information
22 that you put into your spreadsheets, you would take
23 an expenditure which you saw some evidence of and
24 include it and then just add them all up by
25 claimant?

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 485 of 802
Case 2:09-md-02047-EEF-MBN Document 23380-36 Filed 13/02/19 Page 485 of 84
Confidential - Subject to further Confidentiality Review

## Page 110

1    A.   No.  Then we would look for backup for them.
2    Q.   Okay.
3    A.   In some cases, adjust them if we thought the
4  number was wrong.
5    Q.   Okay.
6    A.   Some of these documents go back a very long
7  time, and I don't know how many times they have been
8  copied over and over.  Some of them were very
9  difficult to read, so we would blow them up on a
10  screen.  In a couple of cases, we asked for better
11  copies.  You know, maybe someone was aware of an
12  earlier production, either on the -- on the portal
13  that hadn't been copied then for an exhibit, because
14  the exhibits had a tendency to be a little harder to
15  read than some of the more original documents down
16  the road.  But we would verify that.  We would look
17  for the timing of those to make sure we had the
18  dates proper.
19       In some cases, there were things that I
20  would move from one category to another when I
21  observed the nature of the expenditure.  There were
22  some things that were being put in remediation, for
23  instance, an air-conditioner repair that was done
24  back in 2011 when they hadn't even started
25  remediation process.  And so that really is damage

## Page 111

1  to the air-conditioning system before it was being
2  replaced or anything like that.  So that's really a
3  personal property damage, not a remediation effort.
4       So I went, I'd say, almost line item by line
5  item at one point or another, as did Elan, just
6  making sure that we felt we had things in the proper
7  categories.  In some cases, to the totality of this,
8  it might not have mattered which category it was in,
9  but we did try.
10       And there's a lot of really small
11  expenditures, too, in here.  You know, sometimes
12  there is a $12 item or $60 item.  So I can't say I
13  necessarily focused on every single item, but
14  probably most of them.
15    Q.   When -- in part of your answer, you said you
16  adjusted some of the items.  And when you say
17  "adjusted," did you mean to make sure they matched
18  the receipts or the information provided?
19    A.   There were some cases where it just looked
20  like either somebody had made a transposition error
21  on the information that we had been provided or -- I
22  remember one where we had a line item in there, but
23  when I looked at the receipt, I noticed that it
24  looked like it was -- it was Bed, Bath & Beyond.
25  And I don't know if you've ever been to Bed, Bath &

## Page 112

1  Beyond, but they take anything back on an exchange.
2       And it was clear that something had actually
3  been returned and replaced, so I eliminated that
4  from the expenditure, because it looked like maybe
5  they took back whatever that damaged property was.
6       So I can't say I looked at every one of them
7  in that level of detail, but we did look at them
8  with as much detail as we could.  So that would have
9  been an adjustment.
10       And there might have been things where one
11  or two places we saw that maybe they had -- I mean,
12  remember, the people that did this, the homeowners,
13  the claimants, are not forensic accountants or
14  accountants, and they are dealing with older stuff.
15       So sometimes -- I would remember noticing
16  one or two where the number might have been actually
17  the change that was given on the receipt, as opposed
18  to the amount.  They were pretty close, but -- so
19  that's the type of adjustments that we tried to
20  make.
21    Q.   So you were -- you were making sure the data
22  you were putting into your spreadsheet matched the
23  invoices or receipts that you had been given?
24    A.   To the extent we could, yes.
25    Q.   Okay.  Did you do any calculations to say

## Page 113

1  not all of these should be included or some portion
2  of them should be included only?
3    A.   I think there were items from time to time
4  that we identified and didn't include --
5    Q.   Okay.  So --
6    A.   -- or --
7    Q.   I'm sorry.  I didn't mean to cut you off.
8    A.   And didn't include.  I don't remember at the
9  time, whether we -- we didn't have a process to
10  identify things and then say exclude.  So most of
11  those times, I think we just took them off the
12  schedule.
13    Q.   Was there any written process for your staff
14  to use in determining what should be included and
15  what should not be included?
16    A.   My staff was told to include everything that
17  they could, so that I would have an opportunity to
18  make that judgment and not leave that judgment to
19  them.
20    Q.   Did you review every single item on this for
21  that purpose?
22    A.   Pretty close.  Well, with what purpose?  To
23  determine whether it should be included or not?
24    Q.   Yes.
25    A.   Not every single line item, but the nature

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 486 of 802
Case 2:14-cv-02722-FED MBN Document 22-13 entered 04/30/19 Page 31 of 84
Confidential - Subject to Further Confidentiality Review

Page 114

1 of the expenditures and the timing of the
2 expenditures and many of the larger expenditures,
3 but not all of them.
4 Q. You mentioned returns. That's an
5 interesting topic. Did you set up any procedures to
6 see if any of the items being claimed had, in fact,
7 been returned?
8 A. The staff was aware of it. I mean, when you
9 say set up procedures, we're -- you know, we sat
10 together almost every day. I reviewed the work that
11 had been in process, talked to them, sent them off
12 to do more work. I did not -- we didn't have
13 written procedures as to -- as to what to do.
14 Q. Am I correct that you did not make efforts
15 to verify that if you had a receipt, that the
16 claimant had not returned it on a separate document
17 that hadn't been provided to you?
18 A. No, I did not.
19 Q. Am I -- am I correct you didn't ask for
20 evidence of credit card statements to verify
21 receipts, if you had a receipt?
22 A. In some cases, we had credit card
23 statements, and we did verify with credit card
24 statements if they were available.
25 Q. If you didn't have them, did you ask for

Page 115

1 them?
2 A. If we didn't have them, it was part of the
3 conversation where we were told we have what they
4 have.
5 Q. Conversation with counsel?
6 A. Counsel, yes.
7 Q. But you never made any efforts to reach out
8 to the Priority Claimants directly to say, "Do you
9 have credit card statements," if you didn't have
10 them in the original set?
11 A. That's correct.
12 Q. Okay. Once the information got into your
13 spreadsheets for -- let's just use out-of-pocket
14 expenses -- what did you do with it? Did you just
15 tally it by claimant and add it up? In other words,
16 did you -- did you perform any calculations on the
17 data after it was input?
18 A. I mean, I did a lot of different types of
19 filtering in order to see the timing of things and
20 see them sequentially and to see -- in some cases, I
21 filtered by -- by vendor.
22 We did some extensive work just to try to
23 eliminate any duplicates, which we did also find.
24 So we would sort by dollar amount, and if we found a
25 number of -- we found a number of different times

Page 116

1 where there might have been two documents, maybe an
2 invoice and a receipt, that related to the same
3 thing. So if there was a duplicate, we removed it.
4 So we did a lot of hands-on analytics, not
5 just general analytics, but really digging into,
6 whether it was by vendor or whether it was by date,
7 in each case on a claimant-by-claimant basis.
8 Q. So you were deduplicating the records?
9 A. Yes.
10 Q. Okay. And --
11 A. And not only just deduplicating, but if we
12 found that -- if I remember correctly, in one or two
13 cases, there were payments that were made as a
14 deposit on something, and then later the full
15 payment was made, but the full payment didn't
16 include it. But they might have put the amount that
17 was on the invoice. So that's another form of
18 deduplicating or making sure that only the total
19 amount being paid was included.
20 Q. Did you have any procedures to exclude items
21 based on date ranges?
22 A. We looked at date ranges. Again, it wasn't
23 a procedure. It was a hands-on, take a look, does
24 it make sense.
25 We excluded alternative -- alternate living

Page 117

1 expenses. And again, I don't remember if they're in
2 the -- still in the database or if they were moved
3 to not damage. But in some cases, in a lot of
4 cases, for folk that did not move back into the
5 house and might have still been living in the
6 alternate living -- alternative living facility, we
7 cut off the -- all those expenditures as of the date
8 of the foreclosure or the short sale or the sale in
9 mitigation.
10 Q. I think you used the term "moved to not
11 damages." Is that the other spreadsheet you were
12 talking about earlier, or is there somewhere else
13 that you moved it?
14 A. On the same spreadsheet, if you sort --
15 there is -- there's -- one of the category -- one of
16 the columns that I believe says "category" or
17 something of the like. And I believe one of the
18 categories is settlement, one of the categories is
19 damage, one of the categories is not damage, and I
20 don't remember if there was another category in
21 there. But some of them may have been moved to not
22 damage or they may have been taken out completely.
23 Q. Okay. So --
24 A. And just eliminated from the schedule.
25 Q. This is under the categories that you use in

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 487 of 802
Case 2:14-cv-02722-MCE Document 33-39 Filed 06/13/19 Page 31 of 84
Confidential - Subject to further confidentiality review

1 your Support Master Database. I'm pulling it up
2 here, and I don't know if you have it available,
3 Mr. Elkin.
4   A.  It would take me a little bit to log on, if
5 you want me to do that, but if you want me to --
6   Q.  But you've got, as I see it, three
7 categories, damage, not damage, and settlement.
8   A.  Okay.
9   Q.  What did you deem to be settlement?
10   A.  Just -- that was the generic term for any
11 moneys that we saw that were collected. I don't --
12 I wasn't intending to characterize it. I think one
13 of them had used that, because it says settlement on
14 some of the checks. And so we just said anything
15 that's incoming money that's going to go on this
16 worksheet, just call it settlement so we can sort it
17 that way.
18   Q.  And what did you use as criteria for
19 something to be determined not damage?
20   A.  If they had picked up some detail from
21 somewhere and put it into the spreadsheet and either
22 it was clear on the surface that it wasn't damage or
23 if it was ultimately determined -- for instance, if
24 it was a property owner association payment made in
25 conjunction with the affected property, when we made

1 the determination, and I communicated to them that
2 those would not be included in alternate damage --
3 alternate living expenses, there may have been some
4 cases where they had already keyed in the data for
5 that particular claimant. I don't recall if, in all
6 cases, they just simply removed it from the schedule
7 or if they called it not damage.
8     In some cases, where they hadn't already put
9 it in, they would not have keyed it into the
10 information, because that's how it would have been
11 identified to us. That might include, you know,
12 lawn maintenance or any of the things that were
13 taking place on the facility that they were no
14 longer able to live in, the affected property.
15     MR. KALIL:  All right. Can we take two
16 minutes, if that's okay with everybody?
17     MR. BREIT:  Yeah.
18     THE VIDEOGRAPHER:  The time is 12:31. We're
19 going off the video record. Please stand by.
20     (Recess from 12:31 p.m. until 12:35 p.m.)
21     THE VIDEOGRAPHER:  Stand by, please. The
22 time is 12:35. We're going off the video --
23 going on the video record.
24 BY MR. KALIL:
25   Q.  Mr. Elkin, in terms of the numbers that you

1 put into your spreadsheets, once they were input and
2 once you've checked them off to make sure that the
3 numbers matched the appropriate receipts, what
4 calculations, if any, did you do on those numbers?
5   A.  Totaled them up.
6   Q.  Okay.
7   A.  Carried them to the prejudgment interest
8 spreadsheet in order to make those calculations,
9 carried them forward to summary schedules, which
10 isn't the calculations, just a function. I don't
11 know if there's any other calculations.
12     There were some calculations that were made
13 before they got onto the spreadsheet, so that items
14 that were being delineated separate of their sales
15 tax would have the sales tax included into them, and
16 then brought on. So that's -- and that's on a --
17 was done separately, so those were on -- they
18 ultimately end up here, but those were on separate
19 calculations.
20   Q.  Let me pause you, if I may.
21   A.  Yes.
22   Q.  Have those been provided?
23   A.  It's all in here. I mean, it just rolled up
24 into it. I think -- I think at one point, we were
25 putting the number in with a formula, just you

1 know, put the number in that's showing up here. I
2 think it's -- six-and-a-half percent was the sales
3 tax at that time. And so -- and then we would have
4 replaced the item.
5     And then when I went back and reviewed it, I
6 just was reviewing with a little spreadsheet so I
7 can check the number, and it would fall off. But I
8 don't believe it was a separate schedule. I think
9 it was an Excel schedule that was in this data and
10 then pulled into the summary data.
11   Q.  Okay. Did you or any of your staff visit
12 any of the properties at issue?
13   A.  No.
14   Q.  Is it fair to say that the report we have,
15 with the three updated exhibits, represents your
16 full opinion in this case as of today?
17   A.  Yes.
18   Q.  Okay. Are you expecting to give any
19 additional opinions between now and trial?
20   A.  I haven't been asked to.
21   Q.  Okay. Is there any other -- have you --
22 have you noticed any other errors in your report
23 besides Exhibit 12 that you've updated, Exhibit 17
24 that you've updated, and Exhibit 4?
25   A.  No.

Case 2:09-md-02047-EEF-MBN  Document 22380-36  Filed 12/02/19  Page 488 of 802
Case 2:14-cv-02722-MCE-KJN  Document 248  Filed 01/13/2019  Page 3 of 84
Confidential - Subject to Further Confidentiality Review

| Page 122 | Page 124 |
|---|---|
| 1  Q.  Okay.  What brought to your attention the | 1  It should be fresh in your mind. |
| 2  need to update Exhibit 12? | 2  A.  I wouldn't say it should be fresh in my mind |
| 3  A.  Exhibit 12, I believe, is the Martinez | 3  when there's 20 different plaintiffs, but I could |
| 4  family, and we had been aware that there was a | 4  possibly refer to that document. |
| 5  higher -- that they believed that there had been a | 5  Q.  Would you be kind enough to -- I mean, can |
| 6  higher number than the number we were using. | 6  you tell me, sitting here today, what a water |
| 7  And I believe in looking at our report and | 7  well -- |
| 8  looking at the documents we considered, they | 8  A.  Well, I do remember that they were on well |
| 9  recognized that we did not have a package that was | 9  water there. |
| 10  on the portal that included receipts that we had not | 10  Q.  Okay. |
| 11  gotten, and so they asked us to look at that | 11  A.  And I do remember I saw some expenditure for |
| 12  particular document on the portal. | 12  replacement of the pump.  I don't think that's the |
| 13  We went to the portal and got that document | 13  replacement of the pump, or it might be, but since |
| 14  and, in fact, recognized that there were -- I mean, | 14  it's talking about depth, I'm wondering if that had |
| 15  the biggest item that I recall was a reverse osmosis | 15  to do with some of the piping or anything that was |
| 16  equipment, and I believe there is a -- maybe an | 16  in connection with that. |
| 17  air-conditioning repair, but there were -- and some | 17  So -- but to actually know specifically, I'd |
| 18  other smaller items, and so we added that to the | 18  have to get in and look at the actual -- it's -- I |
| 19  report. | 19  mean, it's from PDF Page 48 of Document 329779.  But |
| 20  Q.  Let me ask you, then, if you would look at | 20  I don't think that you -- and you were provided that |
| 21  Exhibit 12 updated, which should be in your binder. | 21  document.  Actually, you weren't provided that |
| 22  A.  Uh-huh. | 22  document, I don't think. |
| 23  Q.  And I see that on Page -- it's | 23  Q.  Okay. |
| 24  Exhibit 12.1 updated. | 24  A.  I think you were just told the number |
| 25  A.  Yes. | 25  because it's -- it was on the portal. |

| Page 123 | Page 125 |
|---|---|
| 1  Q.  It's three pages.  And you've been kind | 1  Q.  Okay.  Do you have that in your work papers? |
| 2  enough to highlight the changes.  The first one is | 2  A.  I can find it.  I think it may have reverted |
| 3  the Bed, Bath & Beyond receipt.  Is that the one you | 3  back to -- |
| 4  said you found there was a return on the same | 4  Q.  I'm looking through what I've been provided, |
| 5  receipt? | 5  Mr. Elkin, and I do not see that in the list of |
| 6  A.  I think it is. | 6  documents that I have. |
| 7  Q.  Okay.  So you took that off? | 7  A.  It's not. |
| 8  A.  Yes. | 8  Q.  So am I correct, then, that there are |
| 9  Q.  The third page has a number of items, and I | 9  documents that you have relied on in doing this |
| 10  was going to ask you about these.  What do you | 10  update to the Martinez schedule that were not |
| 11  understand the music equipment on here to be? | 11  provided to us yet? |
| 12  A.  I don't remember specifically. | 12  A.  That one document. |
| 13  Q.  Okay. | 13  Q.  Okay. |
| 14  A.  I think that's a general characterization of | 14  A.  And we've made reference to it.  It's |
| 15  what was on the invoice. | 15  available to you on the portal, but -- I brought up |
| 16  Q.  What about the second entry, Pozo 100 foot | 16  on the screen.  I think I said Page 48, but it's |
| 17  water well, what do you understand that to be? | 17  actually PDF Page 49, which is properly reflected |
| 18  A.  The plaintiff would have to describe that | 18  there, and it's -- it says "well" on the top. |
| 19  specifically.  I believe it was either part of the | 19  Q.  Okay. |
| 20  well or -- I'd have to go back to that specific | 20  A.  And I think pozo -- there were many |
| 21  receipt to see what it is.  I don't recall as we're | 21  circumstances here where I had to rely on Google |
| 22  sitting here right now. | 22  Translate to get a general understanding.  Most of |
| 23  Q.  Is that something you can access?  Because | 23  the words, I had to -- I don't recall what that is. |
| 24  this is -- this is one of the ones you've updated | 24  Q.  Did you make any determination, when you |
| 25  since the time of your report, I want to find out. | 25  were updating Exhibit 12, that that was an |

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 489 of 804
Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 34 of 84
Confidential - Subject to further confidentiality Review

Page 126

1 appropriate expense to include here?
2    A.  My analysis was not to determine the
3 eligibility of particular expenses, but rather to
4 quantify the items that were being claimed and to do
5 everything I could to find the backup.  As to
6 whether or not the replacement or the repair that
7 relates to that well receipt, I did not.
8    Q.  And is that -- would that be true for all of
9 the items that are in your report, you were not --
10   A.  Yes.
11   Q.  I'm sorry.  Let me just finish the question.
12       Would you agree with me that you were not
13 making a determination as to whether -- whether any
14 of these items were appropriately included in the
15 report; you were simply including them for purposes
16 of the numbers and tallying them up?
17   A.  For the numbers and to do a diligent job to
18 make sure that we applied relatively simple, but
19 forensic procedures to be able to correlate the
20 expenses with the claimed backup.
21   Q.  And those forensic procedures extended to
22 matching invoices with numbers in your spreadsheets,
23 but they did not include any determination of
24 whether those invoices were, in fact, related to the
25 claims in the case; is that fair?

Page 127

1    A.  To the extent that if something obvious
2 jumped out, we might have had some discussion
3 with -- about it.  There are things that I excluded
4 based on my observation and subsequent discussions.
5       In fact, particular to this -- this -- the
6 Martinez claim, I had excluded a relatively large
7 item, but that was not -- it wasn't my intended
8 scope to be able to go through every receipt and
9 determine its eligibility.
10   Q.  And recognizing that you've already said
11 you're not an expert on Chinese drywall or defective
12 drywall, is it your general understanding that wells
13 are usually found outside of the homes?
14   A.  The well itself?  Again, I'm not an expert
15 in wells, but I've had three or four of them, and
16 all of mine were outside of the house.  The motor
17 was inside of the house, and much of the piping was
18 inside the house -- inside the garage.
19   Q.  Inside the garage.  Do you have any
20 understanding of where the well referenced here for
21 Mr. Martinez was located?
22   A.  I do not.
23   Q.  There's another entry also on that same
24 page, Home Depot miscellaneous.  Are you able to
25 find that for us?

Page 128

1    A.  Yes.
2    Q.  And what is -- what is it that's being
3 identified, or why is it listed as miscellaneous?
4    A.  It's being listed as miscellaneous because
5 it contains a number of different things, and I am
6 not certain what all of them are.  You can see the
7 descriptions there, drain pan.  The most expensive
8 thing on there is a -- was a 4500-watt 50-gallon,
9 but I'm not sure what it actually is.
10       I think I started to look at the -- I don't
11 recall what I did to look at this, but it was
12 described as miscellaneous because I couldn't
13 specifically identify what it is.  And I expect that
14 the claimant would be able to do that.
15   Q.  So you're not offering any opinion as to
16 whether this is an appropriate item or any of the
17 items are an appropriate item to be claimed by the
18 Priority Claimants; is that correct?  That's not
19 part of your --
20   A.  That's correct.  That's correct.
21   Q.  Okay.  While we're doing the updates, can I
22 ask you to turn to Exhibit 17, the second correction
23 to your report that you provided us?  Do you have
24 that in front of you?
25   A.  I do.

Page 129

1    Q.  Okay.  Can you tell me what is different
2 between the original Exhibit 17 and the updated
3 Exhibit 17?
4    A.  Yes.  The Exhibit 17.2, in the original
5 calculation, incorrectly treated the second mortgage
6 reflecting that that second mortgage had been taken
7 out in conjunction with the acquisition.  And upon a
8 deeper dive and review, it was determined that that
9 actually was taken out later.
10       And you've heard the expression pulling
11 equity out of your home, and so this was an equity
12 loan, as I understand it.  And the beginning
13 balance, for purposes of my calculation, should have
14 been zero, not 298,115.  And that one change flows
15 through to reduce the lost equity by that same
16 amount, 298,115.
17   Q.  Okay.  Were there any other changes on
18 Exhibit 17?
19   A.  I think it looks like I corrected -- in the
20 footnote, it's -- in the original, it said 98,114.
21 It was missing the 2, so I put that 2 in there.
22   Q.  Okay.
23   A.  And now, actually, as I'm looking at it
24 right now, it says "as if this time," and I should
25 have corrected that to say "as of this time," but I

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 490 of 802
Case 2:14-cv-02722-MLCF-DEK Document 23-43 Filed 10/23/15 Page 35 of
84
Confidential — Subject to further confidentiality review

Page 130

1  didn't.
2      I don't see anything else that changed.  It
3  looks like the documents that are referenced are the
4  same.
5      Q.  So I take it in the original Exhibit 17, you
6  had assumed or presumed that all of the mortgages
7  were used to acquire or improve the house?
8      A.  I wouldn't say I assumed it.  I was just
9  wrong about it.  I think I -- I had read it
10  somewhere.  I thought I had read it somewhere.  I
11  think I must have confused two claimants.
12      And when I was going through a
13  reconciliation process at a more detailed level,
14  sort of taking this in a different direction, it
15  wasn't matching, and it wasn't matching by 298,115.
16  I went -- if I remember correctly, I went back to
17  the deposition, the Rosen deposition, I think I had
18  read pretty early.  And it became clear to me, and
19  so I had made a mistake.
20      Q.  When was the reconciliation process?  When
21  did you engage in that?
22      A.  Well, when I reviewed this before submitting
23  it, I was really looking at the calculations as they
24  are in the backup.
25      In preparation for the deposition, I did

Page 131

1  it -- I'll just say going at it at a different
2  direction.  And so that took place last week and
3  then even through this weekend.
4      This particular item, I probably identified
5  on maybe Wednesday.  I don't remember the exact
6  time, but sometime last week.
7      Q.  When you say in a different direction, what
8  do you mean by that?
9      A.  Well, in order to determine the equity, the
10  money that they had in the deal, there's a lot of
11  different ways you can calculate it.  So we did it
12  one particular way, looking at the balances and
13  looking at the transactions one by one.
14      And then I did what I'll call a more
15  simplified method, and that's -- in the exhibits
16  that we marked at the beginning, that little yellow
17  sticky that's in the bottom left hand, was doing it
18  in a different direction.
19      So in other words, I was first measuring
20  what did they put into it -- not that binder.
21  It's --
22      Q.  Thank you.
23      A.  It's there.  And -- and so if you went to
24  17 -- it should be in that binder.  It probably says
25  17U.

Page 132

1      Q.  Okay.
2      A.  It just says 17.
3      Q.  Okay.
4      A.  So in this -- you know, it's a lot of
5  same numbers because they are coming from the same
6  place, but I made a simple calculation of, here's
7  the money that they put into it via paying for it,
8  the 1,825,000.  Here, I just broke it out between
9  the million six --
10      Q.  Bear with me one second.  I'm trying to
11  follow you.
12      A.  Sorry.  I'm down on the yellow sticky on the
13  bottom left.  Are we talking about --
14      Q.  Are we on 17?
15      A.  17.2 updated.
16      Q.  I'm looking for a 1,825,000.
17      A.  You won't see it.
18      Q.  Oh.
19      A.  That's my point.  It's a 1,600,000 plus
20  225,000.
21      Q.  Got it.
22      A.  So the testimony would have been that
23  they 1,825,000.  It was a combination of the
24  1,600,000 purchase price and then there were some
25  work orders in place at that time, and then capital

Page 133

1  improvements that were made subsequent to the home,
2  to bring up a total of 1,975,000 that he had
3  actually physically put in money for.
4      I took out the balances of the loans that
5  were due at the time of the sale and mitigation, and
6  then I adjusted that for the closing costs and
7  related credits to come to a net of 1,192,583, which
8  is basically the money he had in the deal, you know,
9  not including the money that he had spent to carry
10  the property, the interest expense, the real estate
11  taxes, the hazard insurance, all those things.
12      This is just the money that he had so that
13  at the end -- sometimes someone says, How much
14  equity do you have in your house?  Well, the equity
15  I have is -- is, you know, what -- what I put into
16  it or what it's worth less the mortgages that I
17  have.
18      Q.  So I'm just going to ask you a question:
19  Isn't the general definition of equity in regards to
20  real estate the difference between the market value
21  and the outstanding incumbrances or loans?
22      A.  It can be, and -- and as you'll see in my
23  report, I defined what I'm calling equity in this
24  particular case.  And -- and it's including
25  settlement costs and other -- other capital -- other

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 491 of 802
Case 2:14-cv-02722-EEF-MBN Document 22380-36 Filed 12/02/19 Page 36 of 84
Confidential - Subject to further confidentiality review

Page 134

1  outlays, either during the acquisition or held back
2  from them at the sale.
3       And one of those reasons is they weren't
4  given an opportunity to get that money out of this
5  because of either sale through foreclosure or sale
6  on a short sale or the fact that they sold it
7  prematurely.
8    Q.  You're not expressing an opinion on whether
9  they were not able to sell it otherwise, are you?
10   A.  No, I'm not.
11   Q.  You're taking that as that's what they
12  stated to you?
13   A.  Well, in part, I think it's -- I don't want
14  to call it obvious, but I think it's a fair
15  assumption on my part just for purposes of being
16  able to make a calculation, not to render an
17  opinion.
18   Q.  The assumption being that the Priority
19  Claimants' reduction in their cash flows -- this is
20  really a cash flow analysis, isn't it?
21   A.  More or less, yeah.  In fact, I think
22  what -- the best way to describe it --
23   Q.  In Paragraph 22 of your report?
24   A.  Yeah.  That it's really like almost net
25  investment capital.  It's the amount that they've

Page 135

1  paid for the affected property.  So it's what was
2  paid directly by claimant through deposits, funds at
3  closing, payments of principal on mortgages, or
4  capital improvements, less the funds that they may
5  have received when they either sold it through --
6  whether -- when it was foreclosed, although I don't
7  think anybody got money back when it was foreclosed,
8  through a short sale or through -- or through sale
9  in mitigation.  And to the extent that they had to
10  come out-of-pocket for anything at one of those
11  events, that was included as well.
12   Q.  Am I correct in doing your analysis of lost
13  equity, you did not make any effort to take into
14  account general market forces in the real estate --
15  in the real estate world?
16   A.  That's absolutely correct.
17   Q.  Did you not attempt to take into account
18  whether any of the Priority Claimants has bought at
19  a high point in the real estate market and sold at a
20  low point?
21   A.  That's correct.
22   Q.  And you did not take -- attempt to take into
23  account any other issues that might have affected
24  the values of the property to determine whether the
25  equity was reduced for reasons wholly unrelated to

Page 136

1  the presence of defective drywall or Chinese
2  drywall?
3    A.  That's correct.  This was simply a financial
4  calculation without those considerations.
5    Q.  Okay.  Am I correct that you did not take
6  into account in your calculation of lost equity, as
7  you've defined it, whether or not any of the
8  claimants, Priority Claimants, received a reduction
9  in property taxes as a result of the presence of
10  defective drywall or Chinese drywall?
11   A.  That's correct.
12   Q.  Okay.  Am I correct that you didn't take
13  into account in your calculation of lost equity, as
14  you've defined it, whether or not any of the
15  Priority Claimants overdeveloped their properties
16  for the neigh- -- neighborhood?
17   A.  I did not.
18   Q.  Am I correct that you did not take into
19  account for your determination of lost equity for
20  any of the Priority Claimants whether they made
21  improvements that were not the type of improvements
22  that are dollar-for-dollar increase in the value of
23  a home?
24   A.  I think that's sort of the same question as
25  the one before, but that's correct.

Page 137

1    Q.  Okay.  Am I correct that you didn't take
2  into account in your report whether or not any of
3  the Priority Claimants had the financial capacity to
4  maintain their homes rather than lose them through
5  foreclosures or short sales?
6    A.  That's correct.
7    Q.  Am I correct that you did not investigate
8  the circumstances of any of the short sales and what
9  negotiations were had with the lenders in regard to
10  the Priority Claimants who had short sales?
11   A.  That's correct.  Those things -- all those
12  things that you just said were not within my scope.
13   Q.  Am I correct that you did not investigate
14  any of the foreclosure processes in connection with
15  any of the Priority Claimants who were facing a
16  foreclosure?
17   A.  I mean, investigate the process, that's
18  correct.  I reviewed the documentation to see the
19  financial impact.
20   Q.  Am I correct that you did not attempt to
21  evaluate in any manner whether a piece of real
22  estate sold at a foreclosure sale has a lower sale
23  price than the same property sold privately?
24   A.  That's correct.
25   Q.  Am I correct that you did not attempt to

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 492 of 802

Case 2:14-cv-02722-MCE-JDE Document 34-9 Filed 05/13/15 Page 37 of 84
Confidential - Subject to further confidentiality Review

| | |
|---|---|
| **Page 138** | **Page 140** |

Page 138

1  evaluate in any manner in your report whether a
2  property sold by a short sale has a lower selling
3  price than a property sold outside of that process?
4      A.  That's correct.
5          MR. KALIL:  Good point for lunch?  It's
6  1:00 o'clock.
7          MR. BREIT:  It's up to you.  It's good with
8  me.
9          THE VIDEOGRAPHER:  The time is 1:00 o'clock.
10  We're going off the video record.  Stand by.
11      (Recess from 1:00?p.m. until 1:53?p.m.)
12          THE VIDEOGRAPHER:  The time is 1:53, and
13  we're back on the video record.
14  BY MR. KALIL:
15      Q.  Good afternoon, Mr. Elkin.  Just a couple of
16  cleanup things.
17          We mentioned -- or we talked about earlier
18  some items that you were retrieving from the portal.
19          Did you have full -- do you have full access
20  to the -- the portal that gives you full access to
21  all the documents on it?
22      A.  I don't know if my access is restricted or
23  not.
24      Q.  Okay.
25      A.  I know that I can get the things I see.  I

Page 139

1  don't know if there are more things on it or not.
2      Q.  Have you ever inquired as to whether your
3  access is full or limited?
4      A.  No.
5      Q.  Has anybody guided you in what items to look
6  at or suggested to you you should look at certain
7  items in the portal?
8      A.  Yes.  When we were seeking backup in
9  different information, we specifically got guidance
10  from probably each counsel as to things that they
11  knew were there that we relied on -- or that --
12  related to the different expenses.
13      Q.  Did they give you any proactive suggestions
14  on things you should look at as well?
15      A.  Yeah.  Yeah, they linked them to, you know,
16  particular items, or they would give us a list of
17  things and say, these came from -- these items or
18  this item.
19      Q.  Okay.
20      A.  That was -- that was the whole purpose.  We
21  really didn't go to the portal for the purpose of
22  looking through the portal for everything.  We went
23  to the portal to get better copies of something, and
24  really, once we got it, just to -- to know that
25  there was some information there, but we were still

Page 140

1  relying on representations of what documents were
2  available.
3      Q.  And -- and representations from counsel as
4  to what documents might be helpful in your analysis?
5      A.  Yes.
6      Q.  Is everything you've relied upon with the
7  exception of one document we talked about earlier,
8  on the Dropbox?  Did you -- everything you
9  generated.  Excuse me.
10          There was one document --
11      A.  On the Dropbox?
12      Q.  I'm sorry.  That's been --
13      A.  Oh, the drop -- the second drop, yes.
14      Q.  Second Dropbox.
15      A.  The Dropbox that was provided for you?
16      Q.  Exactly.
17      A.  Yes.  It's possible that you got the Dropbox
18  that was connected to the HTML?
19      Q.  I have the HTML link.
20      A.  Yeah, okay.  Then you have the basket that
21  was -- the one file of documents that has everything
22  in it, so yes.
23      Q.  Okay.  Would I find in there the list of
24  documents that counsel suggested you review on the
25  portal?

Page 141

1      A.  What you'll find in every section is a Word
2  or PDF document that -- they called it "damage
3  summaries," and it's not that at all.  But it links
4  different expenses and different things, and it
5  links them to either things on the portal or it
6  links it to wherever they were aware that those
7  documents were.  And you'll find that in every
8  section.
9      Q.  Well, I -- when I look --
10      A.  It's a Word document.
11      Q.  I am looking at what I have a link to right
12  now, and I've got -- let me see if I can find it
13  here.  Bear with me one second.
14          I see under "Supporting Documents,"
15  Section C, something EXT923 Martinez Out-of-Pocket
16  Damages Summary Provided by Counsel.
17          So I think that may be one of the documents
18  you relied on.
19      A.  I think -- well, I know I included it.
20          Are you looking at the -- what are you
21  looking at?
22      Q.  I am looking at -- whatever this is.
23      A.  Okay.  So that's the -- the --
24      Q.  The HTML link?
25      A.  The HTML -- yeah, sorry.  Let me log onto

Page 142

1 this real quick.
2 Q. I want to make sure we have the same
3 materials.
4 A. Absolutely.
5 So which one were you looking at?
6 Q. Well, I saw the one that says -- if you go
7 up or -- excuse me, if you -- if I go to "Supporting
8 Documentation" --
9 A. Yeah, which --
10 Q. EXT9774, Florida Claimants Remediation, that
11 appears, at least what I'm seeing --
12 A. Well, that's something different.
13 Q. Okay. That looks like I'm in the wrong one.
14 Let me go back.
15 A. If you pick a particular claimant --
16 Q. Yeah.
17 A. -- I can show you what I'm talking about in
18 any claimant you'd like to ask about.
19 Q. Why don't we just take the first one, Avery?
20 A. Okay. All right. For some reason --
21 Q. Your link is not working?
22 A. Yeah. So let me go to the same thing, if
23 you don't mind, but I'm going to go to the live
24 version of it --
25 Q. Okay.

Page 143

1 A. -- which is the same basic thing, except
2 it's using the software that it was designed for,
3 and you will see it looks just like yours.
4 Q. Uh-huh.
5 A. And so at the bottom of Avery, you will see
6 "Janet Avery Out-of-Pocket Damage Summary."
7 Q. Okay. We'll go to that.
8 A. And you can see there that this was counsel
9 sending me some things and basically telling me what
10 doc ID this lease was at.
11 Q. All right. And is -- is that the listing
12 which you were referring to of what counsel directed
13 you to on the portal, or was there anything else?
14 A. It's possible, like on a phone conversation,
15 they could have also said something, but I don't
16 think so. I think for the most part -- if they did
17 that, maybe we were on the phone and we were on the
18 portal while we talked to them, but I don't recall
19 that ever happening. So I think -- I think it was
20 always this.
21 And then for Martinez, I don't remember, I
22 think they actually e-mailed me the actual document,
23 the one that we just looked at before.
24 Q. Yeah.
25 A. I think they e-mailed it to me, and I

Page 144

1 probably double-checked it, because I typically do
2 that on the docket but --
3 Q. Is this -- is this a single time event per
4 priority plaintiff, or were these updated over time?
5 A. I don't think they were updated. I think
6 basically it was -- we were asking them where did
7 some of this stuff come from. They were trying to
8 get stuff onto the portal as fast as they could, and
9 it really wasn't happening fast enough for us. So
10 they said they could put this together for us.
11 I don't know if they already had this or
12 they put it together, but, no, it wasn't the
13 continual update thing.
14 Q. All right. Just a definitional thing.
15 There is a phrase, "sale in mitigation," that's in
16 your report. Is that a phrase you came up with or
17 somebody else generated that?
18 A. I think it evolved out of a conversation.
19 It's not a technical term I came out of. I think it
20 was just, in their mind, a more descriptive -- more
21 descriptive of what -- what took place.
22 Q. Not your choice of words?
23 A. I don't know how it evolved, whether I said
24 "sale in mitigation" and they said, oh, let's use
25 that, or if they said, we want to call this "sale in

Page 145

1 mitigation," but it's not a term that I've used
2 outside of this case.
3 And I think I define it somewhere in my
4 report to be clear as to what I mean by that.
5 Q. Can you tell me where that's found in your
6 report?
7 A. Sure. It's on Page 7 of 9, and it does say:
8 "Counsel refers to homes that were sold outside
9 of foreclosure or short sale as sales in mitigations
10 as claimants contend that such sales were made at
11 amounts below what they should have sold for but for
12 the Chinese drywall circumstance."
13 So that does make it sound a little bit more
14 to me like that was a terminology that they had been
15 using.
16 Q. So does that refresh your recollection that
17 was counsel's terminology, not yours?
18 A. I don't actually remember it that way, but
19 if I wrote that, which I did -- I wrote the
20 footnote -- then probably so.
21 Q. And when you say that -- in here that
22 claimants contend such sales were made at amounts
23 below what they should have sold for but for this,
24 that's based upon representations from counsel, the
25 claimants' statements, and/or things you read in

Page 146

1  their depositions?
2      A.  Things I read in their depositions, things
3  that they put into their interrogatories or in their
4  SPPF or -- or anything like that.
5      Q.  But you didn't do any analysis of whether
6  that was an accurate statement or inaccurate?
7      A.  That's absolutely correct.
8      Q.  In your report, you say that you were asked
9  to determine out-of-pocket expenses.  And we've
10  touched on this, but I just want to make sure I
11  understand the use of that word "determine."
12      Was there anything else that you were trying
13  to do in terms of measuring the amounts put in
14  besides tying it into receipts or other evidences of
15  expenditures?
16      A.  Well, we were trying to determine the
17  accuracy of them.  So for instance, one of the
18  remediation expenses, the documentation was there,
19  everything was there, but it was missing a
20  50,000-dollar expenditure that was made to a
21  subcontractor as opposed to directly to the
22  contractor.
23      So there was an amount of, you know, going
24  through the documents, you know, as an accountant, a
25  forensic accountant, you know, tying things out and

Page 147

1  making sure that things were included or not, as we
2  said before, duplicated or not duplicated.  But as
3  far as making determinations outside of the
4  financial and accounting accuracy, no.
5      Q.  And -- and again, you didn't verify each
6  expense independently as to whether it was
7  reasonable or in any other measure, just it had been
8  incurred?
9      A.  For the most part, that's correct.
10      Q.  Well, where would there be exceptions on
11  that?
12      A.  There -- there was -- I mean, the one thing
13  I can think of related to a motorcycle.
14      Q.  Okay.
15      A.  And I don't know that I made any
16  determination, but there was conversation as to
17  whether or not to include that motorcycle in the
18  personal damages -- personal property damages.  And
19  we talked about a number of different things, and
20  I'm pretty sure that that's not included.
21      Q.  When you say it's "not included," meaning
22  you didn't put it into your damage report?
23      A.  That's correct.
24      Q.  And why did you determine not to put the
25  motorcycle in?

Page 148

1      A.  There were a combination of things and I --
2  it was older, but then also I had read somewhere
3  that they had sold it, but they couldn't tell me how
4  much they sold it for.  And I just -- I don't
5  remember what it was at that point, but the
6  combination of all those things, we just felt that
7  -- now, I was trying to be conservative for the most
8  part with measurements, and in that particular case,
9  I said -- you know, I don't remember my exact words,
10  but I said I'd prefer not to include it.
11      Q.  It was a Kawasaki motorcycle, if I recall
12  correctly.
13      A.  That's good, yes.  On a yellow receipt.
14      Q.  Did it have anything to do with the fact
15  that it might have been parked outside as opposed to
16  inside?
17      A.  No.
18      Q.  Any others that come to mind?
19      A.  Other than things that we've already spoken
20  about, I don't think so.
21      Q.  Did you ask --
22      A.  Actually, I take that back.  I'm sure there
23  are some other ones that aren't coming to my mind,
24  but the majority of them are the ones we've spoken
25  about.

Page 149

1      Q.  Is there any way that we can find those from
2  your -- your work papers to see which ones you
3  exercised that additional level of inquiry?
4      A.  I think it would just be things that might
5  be listed somewhere that aren't on my listing, so I
6  don't think so.
7      Q.  Okay.  But I'm correct in saying there was
8  no comparison on items in your damage reports and
9  market values or things of that ilk?
10      That's not part of what you were doing?
11      A.  That's correct.
12      Q.  And I think I used the term "market values."
13      You didn't -- just to be clear, you didn't
14  make any effort to compare the prices in your report
15  for any personal property items with any other
16  measure of value except what the receipts were
17  showing?
18      A.  With one exception where, actually, I was
19  provided with an inventory that included a column
20  that had -- I believe they referred to it as
21  "replacement cost."
22      Q.  And which one was that?
23      A.  I believe that is for Claimant 3.
24      Q.  Let's see.  Is that David Deeg and Deborah
25  Hooker?

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 495 of 802 of
Case 1:14-cv-00054-L3 Document 213 entered on FLSD Docket 11/26/15 Page 39 of
84
Confidential - Subject to further Confidentiality Review

Page 150

```
1    A.  Yes.
2    Q.  Okay.  And where can we find in your
3  reports, if it's there -- it wasn't in your work
4  papers -- that other inventory?
5    A.  Well, if you look at Exhibit 3.1 --
6    Q.  Right.
7    A.  -- you will see that there is a -- five
8  pages of detail.  And when you look at "Supporting
9  Document" for that detail, it says "Duraclean
10  Inspection Report."  And it provides the -- the
11  Bates number from which each line item came and it
12  identifies that it was Exhibit 8 to a deposition,
13  and it identifies the PDF page that it came from.
14    Q.  Okay.  So that --
15    A.  The document itself is, of course, not with
16  my report, but it's specifically referenced.
17    Q.  And in that instance, you're not expressing
18  any opinion on whether those values are correct,
19  that's somebody else's work directly?
20    A.  That's correct.
21    Q.  Is that the only instance where you have
22  something of that nature?
23    A.  That's the only thing I can recall right
24  now.
25    Q.  All right.  While we're on that, why don't
```

Page 151

```
1  we just work through the column just to understand
2  what these are, if you don't mind.  We're on 3.1.
3    The first column -- these are all
4  extractions from your Excel spreadsheets?
5    A.  These are -- that's fair enough.  This is an
6  extraction from the support database.
7    Q.  Okay.
8    A.  And it -- less information was brought over
9  to here so that it could give you the relevant
10  columns for this.  There may be one or two instances
11  where I might have made an update on the exhibit and
12  didn't make it on the original support database, but
13  they'd be very few.
14    Q.  All right.  So the first column is just
15  "Type."  Is that just the category into which you've
16  allocated that expense?
17    A.  That's correct.  If you recall on the --
18  when we were looking earlier at the Support Master
19  Database or Master Support Database, there was a
20  column before that that had Damage, Not Damage,
21  Settlement.  And so that wasn't necessary to make
22  this schedule so big since everything that's on here
23  is damage, so I didn't include that column.
24    Q.  Okay.  Now, if I look at the Support Master
25  Database -- let's see if I can find this.  Are you
```

Page 152

```
1  saying that the -- the type is just a selection from
2  the options in there?
3    A.  Yes.
4    Q.  Okay.  And in there, I'm seeing a number of
5  different types of categories, if you will.  I don't
6  know if you can pull that up.
7    A.  What I'm going to do is pull up the one that
8  was sent to you that was the most recent updated
9  one, that was sent when we sent you the corrections
10  to 12.
11    Q.  "Support Master Database Updated (12)"?
12    A.  And it's got a little parenthesis in it that
13  says 12?
14    Q.  That's the one I'm looking at.
15    A.  Perfect.  Yeah.  Make sure we're on the
16  same --
17    Q.  And I see under the "Type," there is a
18  number of possible selections, if you look at the
19  dropdown.
20    A.  That's right.
21    Q.  Okay.  Let's run through those for a second.
22    What were "Additional Damages"?
23    A.  Additional damages were the things that fell
24  into a category consistent with Judge Cooke's order.
25  I would have to go into the specifics of that, but
```

Page 153

```
1  those are things that were not some of the things
2  that she specifically made reference to.  So it was
3  not alternate living expenses, it was not personal
4  property damage, it was not remediation.
5    You see in some cases, I -- I would have put
6  a -- I would have put a description of it, so one of
7  them says "Additional Damages, Lost rent."
8    Q.  Right.
9    A.  The particular one that's only called
10  "Additional Damages" actually just relates to a
11  small group of expenses, and those were attorneys'
12  fees and that was primarily for Claimant Miranda and
13  that related to costs in connection with their
14  foreclosure and possibly bankruptcy.  I don't
15  remember if they -- which they had.  I'd have to
16  look at that.  And then 96 dollars' worth of FedEx
17  expenses in connection with, I guess, this -- this
18  matter.
19    Q.  Are those included in your damages for
20  Miranda or excluded?
21    A.  Included.
22    Q.  Okay.  And why would you put the foreclosure
23  costs in your damages?
24    A.  One of the specific things in Judge Cooke's
25  order said "costs in connection with foreclosure,"
```

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 496 of 802
Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 1 of 84
Confidential - Subject to Further Confidentiality Review

Page 154

1 so they have been itemized there.
2 Q. Now, it says on there, if I'm looking at it,
3 "Supporting Document Engagement Agreement"?
4 A. That's correct.
5 Q. Okay. And then "proof of payment, no"?
6 A. That's correct.
7 Q. What does that mean? You couldn't --
8 A. I didn't have copies of the actual checks of
9 the payments, but I had copies of the agreement that
10 called for the payments.
11 Q. And it called for payments at different
12 times?
13 A. Yes.
14 Q. Okay. All right. Did you make any attempt
15 to verify if those payments were actually made?
16 A. Other than knowing that I didn't have the
17 checks and they weren't available to me. We -- we
18 would ask, Do you have the checks? And they would
19 say no.
20 Q. So you would have asked the plaintiff's
21 counsel?
22 A. That's correct.
23 Q. But you didn't go to the lawyer -- the law
24 firm that was referring to, the third --
25 A. No. No.

Page 155

1 Q. Is it fair to say that in your work, you
2 have not reached out to third parties to verify data
3 that was not available through counsel?
4 A. Other than going onto research property
5 information, that's correct.
6 Q. Public records?
7 A. Public records, that's correct.
8 Q. Question: When you were preparing your
9 report, actually before you issued your report, did
10 you provide the report and the schedules to each of
11 the plaintiffs to have them review it before you
12 finalized your report?
13 A. I provided it to each of their counsel.
14 Q. Each of their counsel.
15 And did you get any comments back before you
16 issued your report from the plaintiffs?
17 A. Yes.
18 Q. Okay. Which ones?
19 A. One was Kevin and Stacy Rosen with regard to
20 not having included all of the capital improvements.
21 Q. That's the one we talked about earlier?
22 A. That's correct.
23 Q. Anyone else?
24 A. I think I may have fielded a question or two
25 with regard to -- I remember there was one question

Page 156

1 in connection with the duration of somebody's
2 remediation period. It was more of a question, and
3 I don't remember if anything changed as a result of
4 that.
5 Q. Okay.
6 A. Take West Palm Beach off of the header.
7 I don't remember anything else coming up.
8 Q. Okay.
9 A. I think, you know, there were a couple -- a
10 couple of questions and then -- I apologize. Then
11 subsequent to actually issuing the report, I heard
12 back with regard to the one that we talked about for
13 Martinez about there being some additional -- I
14 guess they went to look into why their number was
15 lower, and aside from the motorcycle, they realized
16 that these other things that had been on one of the
17 things that they had submitted for -- for
18 reimbursement for hadn't been picked up, and that's
19 that reverse osmosis, and I think some
20 air-conditioning repair.
21 Q. Okay. And that's -- that's how you got
22 those additional receipts?
23 A. That's correct.
24 Q. But no further discussions with them at that
25 point?

Page 157

1 A. Not with the parties. I -- I don't think
2 I -- I never talked to the Martinez claimant but
3 conversations with Mr. Albanis specific to that.
4 Q. Do you recall anything more about those
5 receipts than what we talked about earlier?
6 A. No. It was in a package that had a lot of
7 the same receipts. We had to actually go through
8 there to make sure that we weren't duplicating any
9 of them, and these was toward the back of that
10 package. So I don't know if it got cut off from a
11 package or what happened, but it was -- it was clear
12 that -- clear that they had intended those to be
13 included as part of their personal property damage.
14 Q. Okay. Let me take you back, since we were
15 there, to the Support Master Database updated -- and
16 in fact, to be fair to you, I think we have that as
17 an exhibit.
18 I'm going to turn to my colleague who is
19 better at managing these things than I am and ask if
20 we have that as an exhibit.
21 MR. KALIL: While he's doing that, let me
22 digress for one moment and just tell everybody I
23 realized on the break that I had marked as
24 Exhibit 8, the Steve and Cathy Etter report, I
25 had marked a copy that I had actually written on.

Page 158

1   With your permission, I will substitute a clean
2   copy.
3       MR. BREIT:  With permission.
4   BY MR. KALIL:
5       Q.  And I'll just ask Mr. Elkin to verify that,
6   just to make it clear.
7       A.  That looks to be a complete copy.
8       Q.  All right.
9       (Elkin Exhibit 9 was marked for
10  identification.)
11  BY MR. KALIL:
12      Q.  Mr. Elkin, let me hand you, just so we can
13  do it for the record, what we've had put together as
14  Exhibit Number 9, and I believe that is everything
15  that was sent to us when you updated Exhibit 12,
16  including the Excel spreadsheets we've been talking
17  about, but if you'd take a minute and just verify
18  that for me.  My apologies, but --
19      A.  I'll try.
20      Q.  Start --
21      MR. BREIT:  Take your time.
22  BY MR. KALIL:
23      Q.  Take your time.
24      A.  Yeah.
25      MR. BREIT:  I'll be back tomorrow.

Page 159

1       Have you looked at it?  That's what I want
2   to know.
3       MR. KALIL:  Have I looked at it?  Yes.
4   Do you want to go off the -- for a second?
5   Let's not burn the tape.
6       THE VIDEOGRAPHER:  The time is 2:16.  We're
7   going off the video record.  Stand by.
8       (Recess from 2:16?p.m. until 2:22?p.m.)
9       THE VIDEOGRAPHER:  The time is 2:22.  We're
10  back on the video record.
11      (Discussion off the record.)
12  BY MR. KALIL:
13      Q.  Mr. Elkin, you have in front of you what's
14  been marked as Exhibit 9, and I will ask you if you
15  recognize that as the updates you provided to
16  Exhibit 12, to the Documents and Other Information
17  Considered Updated, the Report Exhibits Updated, the
18  Support Master Database Updated?
19      A.  I believe that's correct.
20      Q.  Okay.
21      A.  The Support Master Database Updated (12) is
22  a little bit difficult because it's multi pages.
23  What I did verify is that the first and last group
24  of them are the same, and then I know specifically
25  that there were Martinez items that were changed,

Page 160

1   and so I did find them on the spreadsheet, but I
2   couldn't possibly go through line item by line item,
3   but it seems correct.
4       The only other thing is at the back of this
5   binder, there is a blue sheet and then another copy
6   of a Support Master Database, and I don't know if
7   that is the original one or what it's intended to
8   be.
9       Q.  That's a fair question, and I suppose the
10  only way we can find out the answer is if we look
11  for the change.
12      A.  Yeah, and I don't see the changes on it.
13  That's why I suspect that it's not what was -- what
14  accompanied it.
15      Q.  Okay.
16      A.  So --
17      Q.  We may well have put that into the -- so we
18  can --
19      A.  It makes perfect sense.  I just didn't want
20  to say that was everything because I don't think I
21  sent you that one with it as well.
22      Q.  Oh, well.
23      A.  Let's look again.
24      This was -- yeah, I only sent you the
25  updated.

Page 161

1       Q.  Now, whether we work from the paper or work
2   from the electronic, I was going to ask you if you
3   would go back to the support master database so we
4   can run through some of the categories --
5       A.  Okay.
6       Q.  -- that you have in there and see what they
7   relate to.
8       A.  Okay.
9       Q.  Okay.  If we look under the Types, I
10  think we -- excuse me, I said "categories," I meant
11  "Type."  I just wonder if you can tell us what, for
12  instance, "betterment" is.  It's one of the types
13  you have selected there.
14      I believe it's under D for --
15      A.  Yeah, I'm just -- I'm -- I'm going to --
16      Q.  -- select all --
17      A.  Yeah, I don't want anything else filtered
18  through this.
19      Okay.  I'm sorry.  Your question was?
20      Q.  What did you intend the word "betterment" to
21  be in that part of your report?
22      A.  "Betterment" was intended to identify things
23  that might have been considered to be beyond the
24  scope of remediation --
25      Q.  Okay.

Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 498 of 802
Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 43 of 84
Confidential - Subject to further confidentiality Review

Page 162

1    A.  -- and, therefore, potentially not part of
2  remediation expense.
3    Q.  Did you also intend to include any
4  improvements beyond what had existed before?  And by
5  that, I mean if one of the Priority Claimants had
6  had an item that they said was damaged and they had
7  replaced it with a better item, were you factoring
8  that in in any way?
9    A.  No.
10    Q.  If we look at what comes up in "Betterment,"
11  it's only one of the priority plaintiffs?
12    A.  I believe that's correct.  I believe it's
13  Chapman, but we'll see.  Yes.
14    Q.  Okay.  And why did you include these under
15  "Betterment"?
16    A.  At one point I was reviewing Chapman's
17  deposition as well as the proposal that she had for
18  the remediation.  I think it was back in December of
19  2018.  And specifically in connection with questions
20  that she was asked, she identified a group of
21  expenditures as improvements.
22    Q.  Okay.
23    A.  I think she had made a -- I don't think they
24  had been done yet.  I don't even know if they have
25  been done yet today.  But she had identified, I

Page 163

1  think, that she had put a deposit down on them or
2  was about to put a deposit down on them, but they
3  had been specifically identified by her as beyond
4  the scope of remediation.
5    Q.  So you were relying on her statement this
6  was beyond, you weren't making an independent
7  determination on that?
8    A.  That's correct.
9    Q.  If we look down to "Capital Improvements,"
10  what does that refer to?
11    A.  So Capital Improvements would have been for
12  a couple of claimants that had specifically
13  identified work that they had done in addition to
14  purchasing the house to make capital improvements
15  or -- or improvements to the home that were not
16  personal property damage, things that were attached
17  to the home or part of the construction.
18    Q.  Okay.  And these -- these would be the
19  Rosens, both group of Rosen claimants?
20    A.  As it turns out.  Let's see if there is
21  anybody else in that category.
22      That's correct, it's just those two.
23    Q.  If I direct you to Line 2244, for example.
24    A.  Yes.
25    Q.  Wallpaper in the powder room, is that

Page 164

1  something that they determined to be a capital
2  improvement or you determined it to be a capital
3  improvement?
4    A.  I determined it to be a capital improvement.
5    Q.  And why would you consider that capital
6  improvement?
7    A.  Because it's not something that can be taken
8  out of the home.  The delineation that I made,
9  because these came from -- from specific things that
10  they got from their design group, was if it was
11  something that you could pick up and take out of the
12  house, it was personal property, and if it wasn't,
13  then -- sort of also thought of that along the lines
14  of if I was selling the house to somebody, the
15  things that they would reasonably expect would stay
16  there or the things that you would expect you would
17  be able to take away, or if you weren't going to
18  take them away, they typically would go on a
19  separate schedule identifying those things in the
20  purchase of a residence.
21      So, for instance, televisions.  If I were --
22  typically that's considered personal property, but
23  if you are selling your home and they are getting
24  the televisions, sometimes you list those out on a
25  personal property rider or addendum.

Page 165

1    Q.  Okay.  Was there a listing that you gave to
2  your staff to help allocate these?
3    A.  I spoke to you earlier.  That's the work
4  that I had Rita Trabanco do.
5    Q.  Okay.
6    A.  So I gave her very specific instructions
7  with basically the description that I just gave you
8  and I think I changed three things on the entire
9  list that she did, but I went item by item.
10    Q.  So we found her work product?
11    A.  The result of her work product, that's
12  correct.
13    Q.  Is there anything else that she was doing
14  other than this one?
15    A.  She did other things in the case.  She
16  helped us -- I don't know if you've noticed, but on
17  all the things that are -- they are document ID'd,
18  at least at the point that I had her do it.  So if
19  there is a document ID in the title, because there
20  is no Bate number on it or anything else, I had her
21  put a footer in the bottom right of all those
22  documents so that if somebody printed that up, you
23  could see document ID and so it wouldn't just be
24  some loose paper and you would know that it was a
25  document ID that would have come from the portal.

Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 499 of 802
Case 2:14-cv-02722-EEF-MBN Document 21-5 Filed 06/13/15 Page 45 of 84
Confidential - Subject to Further Confidentiality Review

Page 166

1    Q.  So it was effectively making sure the
2  documents could be tracked?
3    A.  Yes.
4    Q.  All right.
5    A.  And she may have done some other schedules
6  for us here and there.  She's, you know, incredibly
7  fast with entering data into these things.  So I
8  don't know, Elan may have asked her to do one or two
9  projects along the way, but all of it got reviewed
10  at multiple levels.
11    Q.  Okay.  Now, the Rosen -- Michael Rosen,
12  Capital Improvements, were they based on a proposal
13  or were they based on actual expenses?
14    Can you tell?
15    A.  They were based on proposals that the
16  testimony was that these proposals were pulled
17  because that's the work they actually had done at
18  those costs.
19    Q.  And did you go beyond the proposals to
20  verify that in any way?
21    A.  I was unable to do that.  No.
22    Q.  Okay.  Let me ask you to turn to Type -- and
23  let me see if I can get the right one here, excuse
24  me -- "Settlement Check From Contractor."
25    I think we see just one.

Page 167

1    A.  Yes.
2    Q.  This is for Etter?
3    A.  Yes.
4    Q.  Okay.  And what did you understand that to
5  be?
6    A.  I understood it to be a check from J. Helm
7  Construction.
8    Q.  Was that the -- was that the company that
9  built her home?
10    A.  I don't know.
11    Q.  Did you make any inquiries?
12    A.  No.
13    Q.  Did anybody suggest that that is something
14  you should follow up?
15    A.  No.
16    Q.  Can I ask you to look at -- do you have any
17  doubt that that is the contractor who built the home
18  for Ms. -- for the Etters?
19    A.  I don't know one way or the other.
20    Q.  Okay.  If we go to the "Type Settlement
21  Program Check," can you select that, please?
22    A.  Okay.
23    Q.  Okay.  And what do you understand these to
24  be?
25    A.  These were checks that I understood came

Page 168

1  through the vendors that are listed here.  It says
2  "Vendor" here, but that would have been probably the
3  payer; and the description there would have been a
4  description of the source.  This information would
5  have come from either the SPPF or the interrogatory
6  specifically related to this or copies of the checks
7  themselves.
8    Beyond that, I don't -- other than what it
9  says on them, I don't have a deep understanding of
10  what they were for.
11    Q.  Do you understand from the plaintiffs that
12  these were actually funds they received?
13    A.  Yes.
14    Q.  And these relate to a number of the
15  different plaintiffs?
16    A.  That's correct.
17    Q.  Okay.  And have you not included any of
18  these payments in any of your work for any of the
19  priority plaintiffs; is that correct?
20    A.  I have included these payments in a schedule
21  in my work papers.  I have not -- they are -- they
22  are part of what I make reference to in a paragraph
23  we reviewed earlier where I have not incorporated
24  them in any way into the calculations that I've
25  made.

Page 169

1    Q.  Okay.  So these -- none of these payments
2  find their way into the calculations you've made in
3  your -- in your report?
4    A.  That's correct.
5    Q.  What is the total number of those payments
6  that you're showing on this sort?
7    A.  47.
8    Q.  And what is the total value?
9    A.  $628,221.
10    Q.  Okay.  And for it looks like all but five,
11  you actually have proofs of payment?
12    A.  It looks that way, although my notes tell me
13  it's possible that it -- that I have proof of
14  payment for two of those five.
15    Q.  Okay.  Now, help me --
16    A.  Now, it's probably not actually.
17    Q.  When you say the "notes," what notes would
18  you be looking for?
19    A.  I'm looking in the column that says
20  "Supporting Doc."
21    Q.  Okay.
22    A.  And since two of those said "check," I
23  thought perhaps we had a copy of the check, but I'm
24  looking at it.  It does appear to only go to the
25  SPPF.  I'm guessing in the SPPF, maybe it made

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 500 of 805
Case 2:14-cv-02722-MRH Document 143-8 Filed 11/12/19 Page 45 of 84
Confidential — Subject to further Confidentiality Review

Page 170

1 reference to a check number or something. So that
2 told me that it was a check but that I didn't
3 actually see the check, so I probably kept "no" in
4 there. I would have to go back to the specific
5 document to be sure.
6 Q. And if you wanted to do that, how would you
7 do that?
8 A. I would go to the SPPF for this claimant,
9 which is Wites --
10 Q. Okay.
11 A. -- and I would take a look at what it said
12 there.
13 Q. All right. And it -- and the total amount
14 that you have identified as not having proof of
15 payment is what dollar amount?
16 A. $72,784.
17 Q. And for the balance, you do have proofs of
18 payment?
19 A. Pardon?
20 Q. For the balance of the settlement of -- I
21 think it's for the settlement -- let me get the
22 terminology.
23 A. "Settlement program check"?
24 Q. Yeah, settlement program check, you do have
25 proofs of payment?

Page 171

1 A. It does appear so.
2 Q. Okay. Now, if you -- if you include in your
3 selection "Settlement Program Check" and "Settlement
4 Check From Contractor," what number do you get up to
5 there?
6 A. $680,437, 43 different line items.
7 Q. Let me ask you to include whether or not you
8 have proof of payment.
9 A. Do you want to know the whether or the not?
10 Q. Well, let's include all of them.
11 A. The "yes" or the "no"?
12 Q. Let's include both. Let's do all under
13 "Proof of Payment."
14 A. Oh, actually, I realize -- I'm sorry.
15 Q. That's okay.
16 A. I still had that filter on --
17 Q. That's what I thought.
18 A. -- if that's what you meant.
19 $753,221.
20 Q. And now, that -- you're looking currently at
21 the support database updated. Would that
22 information be the same in the support database
23 original? Would you also show $753,000 in either
24 settlement program checks or settlement checks from
25 contractors?

Page 172

1 A. I -- I would think so because that was not
2 anything that changed based on the changes to
3 Exhibit 12 updated.
4 Q. Okay. Now, do you have a different type
5 that would include insurance payments or some other
6 denomination under "Type"?
7 A. I don't see one, no.
8 Q. Do you recall any of the priority plaintiffs
9 receiving a payment from an insurance company?
10 A. Yes.
11 Q. Do you know --
12 A. I think so.
13 Q. Do you know who that was?
14 A. I don't. I recall that the insurance
15 company was USAA I think.
16 Q. That's consistent with my recollection.
17 A. But I don't remember who it was.
18 Q. Is there --
19 A. Let me look and see if it -- if it's in
20 here. It might not be in here. I don't know if we
21 have the payment. I remember reading that in a
22 deposition. I don't actually remember -- I'm
23 guessing it's not in there. Let's open up the whole
24 database and see if USAA is in there in case we
25 called it something else.

Page 173

1 Anything else sorted over here? No. So
2 that should be -- well, something sorted. Yeah.
3 Damage. Okay.
4 No, now that thing is sorted. And we'll put
5 in periods just in case.
6 I don't believe it's in the database.
7 Q. Okay. Is there another place that you could
8 identify -- I think it might be Etter. Is there any
9 way you can tell if Etter received that payment? If
10 not, I can take a look.
11 A. Well, if it's not in this database --
12 Q. Right.
13 A. -- then I hadn't identified it directly.
14 Q. Okay.
15 A. It's possible there was somewhere else and
16 not entered here because we were -- that was not the
17 primary focus of what we were doing. But I think
18 other than seeing it in the deposition, but that might
19 be the only place.
20 And that does make sense that it was Etter
21 because I was looking at Etter's deposition just
22 recently because of the revision that we did.
23 Q. So it's --
24 A. But I'm not aware of any documents
25 specifically related to it.

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 501 of 802
Case 2:14-cv-02722-MBD Document 22-13 Filed 06/25/14 Page 46 of 84
Confidential - Subject to further confidentiality review

| Page 174 | Page 176 |
|---|---|
| 1   Q. All right. The reason I asked the question | 1   number that you had calculated from all of the |
| 2   is you had some that didn't have a proof of payment, | 2   settlement payments and settlement program checks |
| 3   and I didn't know if there was distinction made | 3   that had not been factored into your damage |
| 4   between those and the USAA? | 4   calculations, what would the total amount left out |
| 5   A. I don't think so. | 5   be? |
| 6   Q. Okay. Do you recall the order of magnitude | 6   A. Can you ask your question again, please? |
| 7   of the USAA payment? | 7   Q. Sure. If you include the $368,203.69 |
| 8   A. I don't. | 8   described as a payment to -- payable to Steven and |
| 9   Q. We'll find them and then come back to it. | 9   Cathy Etter in Exhibit 10 to your deposition or |
| 10   All right. Mr. Elkin, you had given us an | 10   Exhibit 9 to the Etters' deposition, and you add |
| 11   update this morning, Exhibit 4 updated for Steven | 11   that to the total of the settlement program checks, |
| 12   and Cathy Etter which we've marked as Exhibit 8. | 12   settlement checks from the contractors that you had |
| 13   Can I give that to you, please? | 13   previously described as not being included in your |
| 14   A. Sure. | 14   damage calculations, what is the total that you have |
| 15   Q. All right. Mr. Elkin, let's take a look at | 15   not included in your damage calculations of these |
| 16   the update that you did. This is Exhibit 8 for | 16   numbers? |
| 17   Steven and Cathy Etter. And while you've got -- | 17   A. $1,121,425 is the total of those checks or |
| 18   actually, you've got a deposition exhibit. Why | 18   those amounts. |
| 19   don't -- why don't we do that first, if you want? | 19   Q. And just to be clear, those are not anywhere |
| 20   A. I was just looking, because you were making | 20   in your damage calculations in your expert report? |
| 21   reference to the USAA, and I noted on here that | 21   A. Those are the items that are referred to in |
| 22   there is an -- Exhibit 9 is a letter regarding a | 22   the paragraph that we reviewed earlier, and they are |
| 23   settlement agreement between the Etters and USAA, | 23   not part of the calculations in the exhibits. |
| 24   and you had asked me if I had any documents so -- | 24   Q. Let me ask it a little bit differently. Is |
| 25   Q. Yes. | 25   it fair to say that the $1,121,422 is how it rounds |

| Page 175 | Page 177 |
|---|---|
| 1   A. -- I was looking to see what that document | 1   up on mine is not included in the damage |
| 2   is. | 2   calculations in your expert report? |
| 3   Q. Let me mark a copy of that as Exhibit 10 to | 3   A. That weren't included there? |
| 4   your deposition and hand that to you. | 4   Q. Let me do it differently. |
| 5   (Elkin Exhibit 10 was marked for | 5   A. All right. |
| 6   identification.) | 6   Q. I -- I said it -- if my questions are |
| 7   BY MR. KALIL: | 7   difficult, I'll make them better. |
| 8   Q. And ask you if that's what you're referring | 8   You would agree with me, Mr. Elkin, that the |
| 9   to? | 9   sum we've just determined, $1,121,422 in payments |
| 10   A. Okay. Yes. | 10   from the various sources we've discussed are not |
| 11   Q. And do you see on Page 4 a reference to a | 11   deducted in any way from the damage calculations in |
| 12   payment and settlement funds? | 12   your expert report? |
| 13   A. Yes. | 13   A. That's correct. |
| 14   Q. And what is the amount that's referenced | 14   Q. Please take me through what you did with |
| 15   there? | 15   respect to the Etters' calculation of lost equity in |
| 16   A. It's $368,203.69. | 16   the update you gave us this morning, and that's |
| 17   Q. Okay. And this was a document you had | 17   Exhibit 8 to your deposition today. |
| 18   available to you when you were preparing your | 18   A. So referring to Exhibit 4.2 Updated that is |
| 19   report? | 19   inside of attachment -- excuse me, Exhibit 8 of the |
| 20   A. Yes. | 20   deposition. |
| 21   Q. Is there any reason -- well, but you didn't | 21   Q. So I can follow along with you, I'm going to |
| 22   put that number into your spreadsheet or your work | 22   get 4.2 Original and 4.2 Updated so I can do them |
| 23   papers? | 23   both. Okay. All right. I have 4.2 Updated in |
| 24   A. That's correct. | 24   front of me. |
| 25   Q. Okay. If you added that in to the prior | 25   A. I apologize. Did you say to walk you |

Case 2:09-md-02047-EEF-MBN Document 23380-36 Filed 12/02/19 Page 502 of 802
Case 2:09-md-02047-EEF-MBN Document 23380-36 Filed 12/02/19 Page 502 of 84
Confidential - Subject to further confidentiality review

Page 178

1 through the calculation?
2 Q. Well, let's first start with: How did this
3 come to your attention that this number was -- that
4 the number reflected in Exhibit 4.2 of your original
5 report was incorrect?
6 A. I had initially -- it came to my attention
7 because I was doing a more detailed, different
8 direction I think I described earlier of the
9 amounts, and I was -- I was not coming up with the
10 same answer.
11 And when I was referring back to I believe
12 Mr. Etter's deposition, at that point I recognized
13 that we had treated the land as a separate
14 transaction, as though the land had been bought
15 separately, and then that the mortgage that was
16 taken out was strictly to cover the construction,
17 and that didn't seem right.
18 So I went back to look at the detail, along
19 with the deposition, along with my new
20 reconciliation methodology and realized that was in
21 fact wrong, and that the mortgage was taken out at
22 the time of the -- I think the land was recorded at
23 one point, but it was all very close to the same
24 point in time.
25 So it was clear that the mortgage included

Page 179

1 the land; and, therefore, it was wrong to assume or
2 to build in a calculation that had the land in it,
3 600,000, and the construction at the million one,
4 whatever the amount of the loan was at that point.
5 So I went back and took the documentation --
6 we didn't have the HUD unfortunately from the
7 beginning, the settlement statement. So I went back
8 and took the construction contract and identified
9 that the construction contract was for $1,465,716,
10 and I recognized that the estimate, according to the
11 Etters' answers to interrogatories, was that the
12 cost of the project was $1,524,843.
13 I was unable to determine why there was a
14 difference between the million 465 and the million
15 524, but it made sense that that amount would
16 include closing costs or other such costs. So I
17 accepted that as an estimate for the settlement
18 costs.
19 I then took out the loan balance for the
20 actual loan of $1,253,000 reflecting that the amount
21 due from the claimant at close would have
22 approximated $271,843. Then I took the mortgage at
23 the beginning of a million 253 and I understood that
24 the Etters had paid off their mortgage, and so I
25 gave them credit for paying down the entire

Page 180

1 1,253,000.
2 And then to determine the cash paid to
3 claim -- and then backed out from that the cash that
4 they received upon the close of the sale in
5 mediation -- in mitigation of 1,458,559, giving them
6 a total lost equity as we've described as $66,284.
7 (Elkin Exhibit 11 was marked for
8 identification.)
9 BY MR. KALIL:
10 Q. Okay. Let me show you what I've marked as
11 Exhibit 11 to your deposition, Mr. Elkin, and ask
12 you if you recognize that document. It was
13 previously marked as Exhibit 2 to Mr. Etter's
14 deposition.
15 A. Yes.
16 Q. Is that the -- the contractor's agreement
17 that you were talking about?
18 A. Yes, that's the very first line item that we
19 discussed.
20 Q. Okay. That is dated November 26, 2004?
21 A. That's correct.
22 Q. Okay. And that's something that you had at
23 the time you did your first report, Exhibit 4.2?
24 A. I did.
25 Q. Okay. And on the last page of that

Page 181

1 document, there is an amendment to contract. Do you
2 see that?
3 A. Yes.
4 Q. And it talks about the purchase price of the
5 lot as $600,000?
6 A. Yes.
7 Q. Okay. And if we go back to the page before
8 that, it also shows a $600,000 purchase price,
9 discounted lot price?
10 A. That's correct.
11 Q. And the total of 1,465,000 is the estimate?
12 A. That's correct.
13 Q. So you had that information. Now, I note in
14 the original 4.2, for purchase price you had a
15 reference to Martin County property search. Is that
16 something where you or someone on your staff had to
17 go out to search the public records of Martin County
18 to find out the acquisition price for the Etters'
19 property?
20 A. Yes.
21 (Elkin Exhibit 12 was marked for
22 identification.)
23 BY MR. KALIL:
24 Q. Okay. Let me show you Exhibit 12, if I may,
25 to your deposition and ask if you recognize that

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 503 of 802
Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 48 of 84
Confidential - Subject to further confidentiality review

Page 182

1  document?
2    A.  Yes.
3    Q.  Is that the deed for the acquisition of the
4  Etters' property?
5    A.  Yes, it is.
6    Q.  Okay.  And did you determine from the doc
7  stamps on the deed that the purchase price was
8  $600,000?
9    A.  Yes.  I divided the 4,200,000 by seven cents
10 per thousand to determine that the $600,000 was the
11 purchase price.
12   Q.  And the date of the deed is what?
13   A.  December 8, 2004.
14      (Elkin Exhibit 13 was marked for
15 identification.)
16 BY MR. KALIL:
17   Q.  Okay.  Let me show you what I'm going to
18 mark as Exhibit 13 to your deposition.  I'm sorry to
19 slide it this way.
20      Do you recognize that document as something
21 you've seen before?
22   A.  Yes.
23   Q.  And is that the mortgage that's referenced
24 on your original Exhibit 4.2?
25   A.  Yes.

Page 183

1    Q.  And that is a construction mortgage?
2    A.  I believe so.
3    Q.  And that's for $1,172,000?
4    A.  That's correct.
5    Q.  Did you ever get a draw schedule for the
6  construction of the Etters' property?
7    A.  I did not.
8    Q.  Okay.  Did you ever ask for one?
9    A.  No.
10   Q.  When you or your staff were looking for the
11 documents -- sorry.
12      That document, the mortgage we've just
13 marked as Exhibit 13, is also referenced as a source
14 document in your original Exhibit 4.2 as a KR
15 document public records?
16   A.  Yes.
17   Q.  Does that mean it was retrieved by somebody
18 in your staff?
19   A.  Yes.
20   Q.  Okay.  Did they find anything else at the
21 time from the public records with regard to the
22 Etters' property?
23   A.  I don't believe they found anything else
24 that would have -- that they thought would be
25 useful.

Page 184

1    Q.  Did they find anything else that they
2  brought to your attention that you determined was
3  not useful?
4    A.  No.
5       (Elkin Exhibit 14 was marked for
6  identification.)
7  BY MR. KALIL:
8    Q.  I'm going to show you what's marked as
9  Exhibit 14 -- what I'm marking as Exhibit 14, if I
10 may, and ask if you recognize that document.  And
11 it's titled "Modification and Extension of
12 Mortgage."
13   A.  I have not seen this document.
14   Q.  Okay.  That appears to be from the public
15 records of Martin County, Florida.  Is that where
16 your staff retrieved the original mortgage?
17   A.  I believe so.
18   Q.  Does this appear or does it state on its
19 face that is a modification of the original
20 mortgage, and can you tell that by the book and page
21 number referenced?
22   A.  It does appear so.
23   Q.  They just missed that?
24   A.  I don't know if they missed it or they just
25 didn't feel it was relevant when they were looking.

Page 185

1    Q.  Okay.  Did you have any discussions with
2  anyone about what was relevant or not relevant in
3  giving the lost equity timely for the Etters at the
4  time you prepared Exhibit 4.2?
5    A.  The discussion was that we would try to
6  determine the history of the purchases, sales, and
7  financing.
8    Q.  And Exhibit 4.2 was attributing a $1,172,000
9  mortgage in addition to a $600,000 purchase price as
10 the equity, as you described it, that was put in by
11 the Etters when you did that first calculation?
12   A.  Yes, and that was incorrect.
13   Q.  Okay.  And would it have been important to
14 know if the mortgage had been modified in any way?
15   A.  It, along with -- even without having this,
16 had I seen the documentation and put two and two
17 together in a better form, I would not have needed
18 this to make that correction.
19   Q.  Okay.
20   A.  I had the information originally, and that
21 was a mistake.
22   Q.  And the information you're talking about is
23 the deposition testimony of the Etters; is that
24 correct?
25   A.  Well, it's the deposition testimony and the

Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 504 of 802
Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 49 of 84
Confidential - Subject to further confidentiality review

Page 186

1  other records we just looked at, the purchase
2  contract that does make it clear that the $600,000
3  was embedded in that, the mortgage that took place
4  at the same time.
5      Q.  All right.
6      A.  So I would not have needed this Exhibit 14
7  to -- I should have identified that correction at
8  the time I was reviewing it initially.
9      Q.  All right.  So what you -- you've done,
10 though, is you've then gone further and -- excuse
11 me, let me show you another document, and I
12 apologize for skipping around here.
13     (Elkin Exhibit 15 was marked for
14 identification.)
15 BY MR. KALIL:
16     Q.  I'm going to show you what's been marked as
17 Exhibit 15 to your deposition and ask you if you've
18 seen that document before?
19     A.  I've not seen this specific document.
20     Q.  Does that appear to be a mortgage
21 modification and consolidation agreements of
22 November 22nd, 2006?
23     A.  Yes.
24     Q.  Does it appear to relate to the Etters'
25 loan?

Page 187

1      A.  Yes.  In fact it's the balance that was used
2  in my updated calculation of 1,253,000 which I
3  didn't take from this document, but I took instead
4  from the information from the actual loan
5  statements.
6      Q.  When you say the "loan statements," what
7  specifically were you referring to?  It says in your
8  updated 4.2 loan statement as Etter Deposition
9  Exhibit 3.
10     A.  I've brought up on the screen Exhibit 3,
11 which was referred to in my schedule.  This is a
12 loan statement as it says up in the top right corner
13 for Seacoast National Bank dated November 19th,
14 2010, stating that the current balance is 1,253,000,
15 which is the same number on the document that you
16 just gave me from the public records.
17     Q.  Right.  Now, that loan statement is
18 December 1st, 2010.  What date did the Etters sell
19 their property, according to your updated
20 Exhibit 4.2?
21     A.  I believe it was 2016.
22     Q.  So some four-and-a-half years later?
23     A.  Give or take.
24     Q.  Okay.  Did you -- did you obtain any further
25 documentation about the loan balance on the date of

Page 188

1  sale?
2      A.  My understanding is the loan had been paid
3  off by the date of sale.
4      Q.  What was that based on?
5      A.  The fact that the HUD did not show any
6  mortgage being paid off at that date and Mr. Etter's
7  testimony that had he paid off the loan when he sold
8  his business.
9      Q.  If I'm not mistaken, you are attributing the
10 full mortgage balance as a -- an investment by the
11 Etters; is that correct?  Let -- let me -- let me do
12 that differently.
13     In your calculations of lost equity on
14 Exhibit 4.2 Updated, what are you treating as the
15 equity?
16     A.  The amount that would be calculated as due
17 from the claimant at close, the amount of the
18 mortgage that they paid off, less cash paid to
19 claimants on the sale of the home.
20     Q.  Okay.  Now, if I take you back to
21 Exhibit 4.2, before you updated it, there's an
22 item -- an entry "Mortgage Beginning Balance."
23     Do you see that?
24     A.  In the -- in the original?
25     Q.  Yes, in the original.

Page 189

1      A.  Yes.
2      Q.  And that's $1,172,000?
3      A.  That's correct.
4      Q.  And then on the "Mortgage Beginning Balance"
5  on Exhibit 4.2 Updated, it's moved to $1,253,000?
6      A.  That's correct.
7      Q.  How did you verify what was done with the
8  additional amounts borrowed, if at all?
9      A.  I did not.
10     Q.  Okay.  Fair enough.  Would you agree with me
11 that if the additional borrowings were not put into
12 the house, your amended calculation of lost equity
13 would not be accurate for what it is intended to
14 show?
15     A.  That depends on if it was closing costs or
16 other things that were intended to modify the
17 mortgage.  If it was cash that had been purely taken
18 out, then I would agree with that.
19     Q.  And you didn't make any effort to determine
20 what those amounts were used for?
21     A.  That's correct.
22     Q.  Okay.  Did you find any other -- well, let
23 me say it differently.
24     In your calculations of lost equity for any
25 of the other Priority Claimants, have you found any

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 505 of 802
Case 2:14-cv-02722-NG-JO Document 248-9 Filed 06/18/21 Page 50 of 84
Confidential — Subject to further confidentiality review

Page 190

1  errors?
2     A.  We talked earlier about Rosen.
3     Q.  Yes.
4     A.  No, I haven't.
5     Q.  Okay.  Have you found all of the source
6  documents that you wish to look at for each of the
7  Priority Claimants to do the calculations you are
8  doing on lost --
9     A.  On many of them I would prefer to have the
10  HUDs, so I don't have the HUDs for everything.
11     Q.  Fair to say that you don't have supporting
12  documents to show the precise details on some of
13  those?
14     A.  That's correct.
15     Q.  Is there a possibility that any of the
16  Priority Claimants might have -- other than we've
17  talked about so far, might have taken out equity
18  from their homes by way of borrowings and used it
19  for purposes other than improvements to their house?
20     A.  I don't believe, based on my review of
21  these, that such circumstances exist; and I believe
22  I would have identified -- one in particular I did
23  identify and I don't recall any others -- where the
24  circumstances or the sequence of borrowing would
25  have lent to that opportunity.

Page 191

1     Q.  Fair enough.  And just to be clear,
2  Mr. Etter -- Mr. Elkin, my apology.
3        To be clear, Mr. Elkin, in your calculations
4  for lost equity for Steven and Cathy Etter, you do
5  not include in the calculations the USAA payment in
6  any fashion?
7     A.  That's correct.
8        MR. KALIL:  Can we take a two-minute break?
9        THE VIDEOGRAPHER:  The time is 5 minutes
10  after 3:00, and we're off the video record.
11        Stand by.
12        (Recess from 3:05 p.m. until 3:12?p.m.)
13        THE VIDEOGRAPHER:  The time is 12 after
14  3:00, and we're back on the video record.
15  BY MR. KALIL:
16     Q.  Mr. Elkin, you mentioned before we went off
17  that you had one other circumstance where you
18  identified a Priority Claimant may have taken money
19  out.  Do you -- I think that's what you said.  Do
20  you recall who that might be?
21     A.  I believe it was Kevin and Stacy Rosen.
22     Q.  Okay.  Okay.  Let me take you back to one
23  last point on the Etters, and I'm going to direct
24  you to Exhibit 6 which you provided me this morning,
25  which is the yellow stickies.  Do you have that

Page 192

1  handy?
2     A.  Yes.
3     Q.  Okay.  You've got -- first of all, you've
4  said $59,127 is an estimate for closing costs.  But,
5  again, just to be clear, there -- there is no
6  documentation that supported that?
7     A.  Yeah.  I don't know if it was closing costs
8  or potentially overruns for the construction or
9  potentially an error in Mr. Etter's calculation.
10     Q.  Okay.  And do you know if the original loan
11  for the Etters was $1,172,000, the original
12  mortgage, but they show a purchase price of
13  $1,465,716 on your updated schedule, do you know
14  where the balance came from?
15     A.  My understanding is it came from the
16  claimants.
17     Q.  And do you know how they paid that?
18     A.  I do not.
19     Q.  Okay.  You don't have any supporting
20  documents to establish that they did in fact pay
21  that?
22     A.  Other than testimony, I don't believe so.
23     Q.  And what would the difference be on that
24  between those two numbers, if you just did the math?
25     A.  Well, it -- if it's on the million 172?

Page 193

1     Q.  Yes.  The million 172 being the original
2  loan amount --
3        MR. BREIT:  Do you need a calculator?
4        THE WITNESS:  Yeah, I've got one.
5  BY MR. KALIL:
6     Q.  -- and 1,465,416 being the amount that they
7  had put on their -- I believe their claimants'
8  profile form -- or their answers to interrogatories,
9  excuse me.  What is the amount that you do not have
10  support for beyond that?
11     A.  And I apologize again.  Your question?
12     Q.  Sure.  If I understand it correctly, in your
13  updated schedule for Steven and Cathy Etter, you've
14  calculated a purchase price for the land and
15  construction of $1,465,716 based upon the
16  construction contract and the deposition testimony;
17  is that correct?
18     A.  Yes.
19     Q.  And the original mortgage that was taken
20  out -- and we can get the date of it -- which was in
21  December of 2004 was for $1,172,000.
22        What is the amount that had to be provided
23  from some other source?
24     A.  $293,716.
25     Q.  And am I correct that you have never seen

Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 506 of 802
Case 2:09-md-02047-EEF-MBN Document 22381-3 Filed 12/02/19 Page 51 of 84
Confidential - Subject to further confidentiality Review

Page 194

1 any proof that that additional 293,716 was in fact
2 paid?
3     A.  That's correct.
4     Q.  Do you know if the Etters received any
5 deduction on their income taxes relating to Chinese
6 drywall?
7     A.  I don't recall.
8     Q.  Okay.
9     A.  I imagine they did.
10    Q.  Okay.
11    A.  I think that might be from testimony.
12    Q.  I could direct you to Page 80 of I believe
13 it is Steven Etter's deposition of January 11, 2019
14 where the topic came up.  I'm going to ask you if
15 you have seen that before?
16    A.  Yes.
17    Q.  Okay.  So there is a reference to that.  Did
18 you --
19    A.  As I indicated, I thought I had seen it in
20 the deposition --
21    Q.  Yeah.
22    A.  -- and that's what I saw.
23    Q.  But you don't have any information as to
24 what amount they might have received on their taxes?
25    A.  That's correct.

Page 195

1     Q.  Did you make any efforts to find that out?
2     A.  No.
3     Q.  Can I direct -- well, let me first ask you:
4 Do you recall if the Etters received any reduction
5 in their property taxes for their home as a result
6 of Chinese drywall?
7     A.  I don't know.
8     Q.  Can I direct you to Page 33 of Mr. Etter's
9 deposition, and particularly Lines 5 through 9?  Did
10 you read that before?
11    A.  Yes.
12    Q.  Okay.  Mr. Etter appears to be saying that
13 there was a program in Martin County to give you a
14 lower tax value; is that correct?
15    A.  Yes.
16    Q.  Okay.  Did you make any efforts to verify if
17 that had in fact occurred?
18    A.  No.
19    Q.  And on Page 34, Lines 2 through 4, Mr. Etter
20 confirms that reduced his tax payments; is that
21 correct?
22    A.  That's what it says.
23    Q.  Okay.  Do you have any reason to doubt that?
24    A.  No.
25    Q.  Mr. Elkin, can I direct to you Exhibit 4.1

Page 196

1 with regard to the Etters?
2     A.  Yes.
3     Q.  And what -- again, that is a calculation of
4 damages that you have done for the Etters?
5     A.  That's correct.
6     Q.  Okay.  Do you see -- let me find it here.
7         Do you see any charges for Florida Power &
8 Light for the Etters under "Alternate Living
9 Expenses"?
10    A.  Yes.
11    Q.  And what's the earliest date that you see a
12 charge for that?
13    A.  December of 2012.
14    Q.  Okay.  And what is the latest date you see
15 for that?
16    A.  September of 2013.
17    Q.  Okay.  Now, when were that -- when did they
18 return to the property?
19    A.  August of 2013.
20    Q.  Okay.  You didn't exclude the September
21 statement?
22    A.  Well, it's September 6th.
23    Q.  Okay.
24    A.  So it would include power through the month
25 of August.

Page 197

1     Q.  Okay.
2     A.  And to the extent that they were making
3 payments at an alternate -- at an alternate
4 location, it seemed to be appropriate to include
5 that.
6     Q.  All right.  When you included for
7 calculations of alternate living expenses, did you
8 attempt to make any adjustments for reduced expenses
9 at the primary residence?
10    A.  No.
11    Q.  In any instance?
12    A.  No.
13    Q.  Okay.  Is it correct that you did not
14 attempt to adjust for duplicative alternative living
15 expenses in your analysis?
16        MR. BREIT:  Could you define what you mean
17    by "duplicative expenses," please?
18        MR. KALIL:  Certainly.  Certainly.
19 BY MR. KALIL:
20    Q.  Am I correct that if you were including a
21 utility expense in an alternate living location, you
22 did not adjust for any reduction in the living
23 expense in the primary location?
24    A.  That's correct.  My calculation is the
25 expenses they incurred in an alternate living

Confidential - Subject to further confidentiality Review

Page 198

1 facility.
2 　Q.　Okay.　And -- and you don't do any offset
3 for reductions elsewhere?
4 　A.　I did not.
5 　Q.　Okay.　Were you -- were you asked not to do
6 that, or was that your choice?
7 　A.　My choice.
8 　Q.　Hold on one second.　I think we may be done.
9 　　Mr. Elkin, did you read all of Mr. Steven
10 Etter's deposition of January 11, 2019?
11 　A.　I don't recall if I read the whole thing or
12 if I read through parts.
13 　Q.　Okay.
14 　A.　I feel like I read the whole thing, but I'm
15 not sure.
16 　Q.　Do you recall Mr. Etter stating that they
17 stopped paying for utility services at their primary
18 home while it was being remediated?
19 　A.　I don't recall one way or another, but it
20 wouldn't surprise me.
21 　Q.　Let me direct you, if I may, to Page 145 of
22 Mr. Etter's deposition, and Page [sic] 18, if I may,
23 or you can start before that if you wish.
24 　A.　I see that.
25 　Q.　Do you agree with me that Mr. Etter saying

Page 199

1 he ceased paying for utilities at his primary
2 residence when he moved to the alternate residence?
3 　A.　Yes.
4 　Q.　And why would you consider the expenses at
5 the alternate residence an additional cost?
6 　A.　They were expenses that they had for their
7 alternate living facility.　As to whether or not
8 other expenses changed, I think that that has more
9 to do with the loss of enjoyment or other elements
10 of damage than as a direct offset against these
11 components.
12 　Q.　So if somebody moves out of one residence
13 and ceases having any expenses associated with it
14 and moves into another residence and has the same
15 expenses they would have had in the primary, you
16 could count those expenses as alternate living
17 expense just because they are in a different
18 location?
19 　A.　Well, I'm identifying the costs at the
20 alternate facility.　There are a lot of other
21 factors that go into play as to expenditures that
22 did or didn't continue in a house they were no
23 longer able to live in, and so I considered those to
24 be factors that should be considered separately.
25 　Q.　And where are those considered in your

Page 200

1 report for the Etters?
2 　A.　I'm not addressing loss of use and
3 enjoyment.
4 　Q.　So am I correct in saying that your
5 definition of "alternate living expenses" does not
6 require an increase in expenses, just a different
7 location?
8 　A.　It's the expenses that they incurred at an
9 alternate living residence.
10 　Q.　Are we saying the same thing or something
11 different?
12 　A.　Pardon?
13 　Q.　Are we saying the same thing or something
14 different?　And did -- is --
15 　A.　If you want to read back.
16 　Q.　Sure.
17 　A.　I heard it as a little bit different.
18 　Q.　And let me -- let me see if I can do that.
19 　　For purposes of your expert reports, have
20 you defined "alternative living expenses" in your
21 report anywhere?　I believe it's in Paragraph 17.
22 　A.　Paragraph 17, Page 5 of 9 in my report and
23 Paragraph 18, but I don't believe I specifically
24 defined it.
25 　Q.　Okay.　So --

Page 201

1 　A.　I believe the expenditure is defined -- or
2 there are very different circumstances between
3 different claimants as to what they did for purposes
4 of living outside of the house that they couldn't
5 live in anymore, and so each one was considered
6 differently.　If somebody had a reduction in their
7 FPL bill because they moved into a smaller house or
8 a small condo or whatever it was, versus whatever
9 they were paying or stopped paying in the other
10 home, I considered those be two separate issues for
11 purposes of my calculation of alternate living
12 expenses.
13 　Q.　Okay.　And when you say you consider those
14 to be two separate issues, one of which you are
15 going to tally up and one of which you are not going
16 to tally up; is that correct?
17 　A.　That is correct.
18 　Q.　So is it fair to say that in no instances
19 where you calculated alternative living expenses for
20 any of the Priority Claimants did you attempt to
21 limit those to additional expenses, these were just
22 any expenses?
23 　A.　That's correct.
24 　Q.　Does it say that anywhere in your report?
25 　A.　No, I don't think it specifically says it,

Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 508 of 803
Case 2:14-cv-02722-EEF-JCW Document 36-3 Filed 07/23/19 Page 53 of 84
Confidential - Subject to Further Confidentiality Review

Page 202

1 but I think that it's what I did. It's what I
2 believe my evidence and my -- my schedules reflect.
3 And to the extent sometimes things need a little
4 additional clarification, that's why we're here
5 today.
6 Q. Well, I'm just trying to see where in the
7 schedules attached to your report we can determine
8 that there is -- is or may be a reduction in
9 expenses at the primary residence. Is that
10 reflected anywhere in the schedules?
11 A. The -- it's reflected by the fact there are
12 no reductions on the schedule. That would be the
13 first -- the first thing. And it's reflected in the
14 fact that all the things that are on there are the
15 full amount that they paid.
16 So that's simply looking at the schedule, as
17 you have already deduced. The amounts that they did
18 pay are on there, and there is no deduction for
19 anything else.
20 Q. Is there anything in the schedules attached
21 to your report to show the court or any finder of
22 fact that might see your report that there were or
23 were not continued expenses in other locations?
24 A. No.
25 Q. And I take it that leaving aside your

Page 203

1 report, there is no work sheet or schedule from
2 which we could make that analysis in any of your
3 work papers?
4 A. That's correct.
5 MR. KALIL: Can we take a longer than
6 two-minute break for a different reason?
7 THE VIDEOGRAPHER: The time is 3:31. We're
8 going off the video record. Stand by.
9 (Recess from 3:31?p.m. until 3:47?p.m.)
10 THE VIDEOGRAPHER: The time is 3:47. We're
11 back on the video record.
12 BY MR. KALIL:
13 Q. Mr. Elkin, just to follow up on one of the
14 questions I asked you before, is it correct that you
15 didn't make any efforts for any of the Priority
16 Claimants to gather information that would allow you
17 to do a comparison of their expenses in their
18 primary residence before they moved out and after?
19 A. That's right.
20 Q. Okay.
21 A. And I'm aware of them, but I didn't do any
22 analysis.
23 Q. All right. I think we're done with Foster.
24 One topic we didn't go to and correct
25 earlier was you have in your report the damage

Page 204

1 summaries, and I don't see a place for diminution in
2 value and stigma. I see a place for diminution in
3 value.
4 Do I understand correctly that you are
5 expecting to receive additional numbers or
6 information from other experts that will be put in
7 that report or you're not planning on putting
8 anything in?
9 A. I -- it was mentioned to me at one point
10 that maybe I would. If I did, it would just be a
11 question of sticking something on and adding it. I
12 wouldn't be doing anything above that.
13 When you say you don't see it, are you
14 saying because this line item just says "Diminution
15 of Value" on Exhibit 4?
16 Q. Yes.
17 A. Yeah. I didn't -- when I -- when I put that
18 in there, I didn't have in mind the word "stigma."
19 Q. Okay.
20 A. And I just never made the change.
21 Q. All right. And -- and -- but I'm also
22 referencing this Page 7 of your report,
23 Paragraph 23, the narrative on "Diminution in Value
24 and Stigma." I just want to be sure I'm
25 understanding you correctly.

Page 205

1 You're not going to be doing any analysis or
2 providing any opinions on that irrespective of what
3 you might learn from other experts; is that correct?
4 A. That's right.
5 Q. Okay. What is the reason for including
6 counsel as represented to me that the amounts will
7 be provided to me by that expert at a later date,
8 what are you expected to do with those?
9 A. I think if they wanted to have a summary up
10 there that had the numbers together, that I might
11 have just put it on my schedule and I just wanted to
12 make sure I gave a warning, "Hey, this number might
13 be" -- it says "TBD" right now, to be determined.
14 That didn't mean to be determined by me, and so
15 maybe they were going to ask me to put it on the
16 schedule.
17 Q. But you wouldn't be expressing any opinions,
18 regardless?
19 A. No.
20 Q. Has there been any expansion of the scope of
21 your engagement since you signed your expert report
22 on February 19th, 2019?
23 A. No, I don't think -- when I signed the
24 engagement, I don't know that we knew the full scope
25 of what it would be.

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 509 of 802
Case 2:14-cv-02722-NGG-ST Document 1-13 Filed 3/1/22 Page 54 of 84
Confidential -- Subject to further confidentiality review

Page 206

1  Q.  Okay.
2  A.  But there was nothing beyond what I
3  anticipated it would be like.
4  Q.  Have you talked to any of the experts that
5  might be generating reports on diminution in value
6  or stigma since you were engaged in this case?
7  A.  I had conversation with Mr. Graziano --
8  Q.  Okay.
9  A.  -- very much toward the beginning of the
10  engagement and have not spoken with him since, that
11  I can think of.
12  Q.  Do you recall what those conversations
13  centered on?
14  A.  I don't know how specific they were to any
15  particular issue, but I know that I spoke to him.  I
16  don't think that I spoke to him about methodologies
17  or anything like that.
18  I'm trying to think if -- I don't know that
19  there was anything very specific.  That was -- it
20  was sort of trying to gain an understanding with --
21  with others as to the scope of who was doing what,
22  so it was probably more about just in general who
23  was doing what.
24  Q.  Did you call him, or did he call you?
25  A.  It wasn't a phone call.

Page 207

1  Q.  Did you meet with him in person?
2  A.  I was at a meeting that he was in attendance
3  at.
4  Q.  Who else was there?
5  A.  A lot of people.
6  Q.  The best as you recall?
7  A.  Elan, Natalie, Patrick Montoya, Greg Weiss,
8  Holly Werkema, Allison -- I don't remember her last
9  name --
10  Q.  Okay.
11  A.  -- but she's co-counsel with Holly on some
12  cases.  And some other people that I don't remember
13  their names, but I believe essentially the other --
14  there was a -- hopefully they won't read this
15  transcript and realize I didn't remember their
16  name -- Dugan or -- or --
17  Q.  Okay.
18  MR. BREIT:  We know who she is.
19  A.  And then there were some people that were,
20  like, down to the right, and I don't remember who
21  they were.
22  But they were -- there was a Pete was
23  there --
24  BY MR. KALIL:
25  Q.  Okay.

Page 208

1  A.  -- if I didn't say him.
2  So there was -- there was everybody from all
3  four of these, and those are the ones I'm most
4  familiar with; and then, for instance, I don't
5  believe you were there --
6  MR. BREIT:  (Shaking head.)
7  A.  -- and Mr. Graziano.
8  BY MR. KALIL:
9  Q.  Do you recall when that meeting took place?
10  A.  I think it was like the first week of
11  February, maybe the end of January.  It was -- it
12  was very much toward the beginning of digging in.
13  We had -- we had dug in some but --
14  Q.  Did you make any notes from that meeting?
15  A.  I didn't.  At one point I drew a picture
16  with the names on it.  I should have kept that.  But
17  I looked at it and realized I had done a bad job.
18  At some -- like in a room like this, I will do that
19  so that I can remember.  So clearly I should have
20  kept it, but I think I got rid of it that day.
21  Q.  Anything else?
22  A.  But as far as notes themselves, no.
23  Q.  Did you gather any information at that
24  meeting that has made its way into your report?
25  A.  Not details.  I mean, I -- I talked a bit

Page 209

1  about trying to understand what the -- how I was
2  going to be able to communicate with people and ask
3  questions and -- and get -- get information and
4  tried to understand what my scope would be with
5  regard to, you know, understanding there were other
6  experts and there is things that are not within my
7  scope.  So a lot of it was also making sure they
8  understood, you know, what was within my expertise
9  and what was not.
10  Q.  Have you had any subsequent meetings or
11  discussions with any of the other experts retained
12  by the plaintiffs?
13  A.  No.
14  Q.  All right.
15  MR. KALIL:  With your consent and counsel's
16  consent, this is probably a good place to break
17  for the day and pick it up at 9:00 o'clock
18  tomorrow, if that works.
19  MR. BREIT:  It's okay with me.
20  MR. KALIL:  Didn't think you'd complain.
21  MR. BREIT:  You're making me go to the gym,
22  which I didn't want to do.
23  (Discussion off the record.)
24  MR. KALIL:  If -- if I may, one thing
25  that -- just to give you a heads-up for

Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 510 of 802
Case 2:14-cv-02722-EEF-MBN Document 43-1 Filed 06/11/19 Page 55 of 84
Confidential - Subject to Further Confidentiality Review

| | Page 210 |
|---|---|
| 1 | tomorrow -- if you don't mind going back on for |
| 2 | one second. |
| 3 | One of the things I want to do tomorrow, and |
| 4 | I want to give you advance warning so we can do |
| 5 | it quicker, I'd asked you earlier about how you |
| 6 | had determined prices for items that had been |
| 7 | damaged, personal property items, and you said it |
| 8 | would be a case-by-case basis. I want to give |
| 9 | you the heads-up that I'd like to go through just |
| 10 | in some detail tomorrow so you can think about |
| 11 | that. Maybe we can do it a little quicker rather |
| 12 | than just springing it on you. |
| 13 | MR. BREIT: Can you give me an example, give |
| 14 | him an example -- |
| 15 | MR. KALIL: Sure. |
| 16 | MR. BREIT: -- just to -- just so it will |
| 17 | help speed us up. |
| 18 | MR. KALIL: I could pick any one of the 20 |
| 19 | Priority Claimants and I'll select some of the |
| 20 | items in there and say, "Was this a cost when |
| 21 | they bought it originally? Was this a |
| 22 | replacement cost? Was this some other valuation |
| 23 | method, and how do you determine it?" |
| 24 | MR. BREIT: Right. So how do you have the |
| 25 | number to get you to that number that's on your |

| | Page 211 |
|---|---|
| 1 | sheet? |
| 2 | MR. KALIL: Exactly. And -- and to get |
| 3 | variations on the theme and see what -- what the |
| 4 | variations are and how you determine them. So I |
| 5 | can give you that ahead of time rather than |
| 6 | springing it on you. |
| 7 | THE WITNESS: Okay. I don't know that I |
| 8 | will be able to do anything in advance other than |
| 9 | go through detail, but I will think of -- I'll |
| 10 | give it some thought. |
| 11 | MR. KALIL: If -- if -- I appreciate that. |
| 12 | I just didn't want it to come out of the blue. |
| 13 | THE WITNESS: I appreciate it. |
| 14 | (Discussion off the record.) |
| 15 | THE VIDEOGRAPHER: The time is 3:55. |
| 16 | (The deposition was recessed at 3:55 p.m.) |
| 17 | (Whereupon, the deposition recessed at |
| 18 | 3:55 p.m.) |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

| | Page 212 |
|---|---|
| 1 | C E R T I F I C A T E |
| 2 | I, SUSAN D. WASILEWSKI, Registered |
| 3 | Professional Reporter, Certified Realtime Reporter |
| 4 | and Certified Realtime Captioner, do hereby certify |
| 5 | that, pursuant to notice, the deposition of MICHAEL |
| 6 | ELKIN was duly taken on Monday, March 11, 2019, at |
| 7 | 10:05 a.m. before me. |
| 8 | The said MICHAEL P. ELKIN, CPA was duly sworn |
| 9 | by me according to law to tell the truth, the whole truth |
| 10 | and nothing but the truth and thereupon did testify |
| 11 | as set forth in the above transcript of testimony. |
| 12 | The testimony was taken down stenographically by me. |
| 13 | I do further certify that the above deposition is |
| 14 | full, complete, and a true record of all the |
| 15 | testimony given by the said witness, and that a |
| 16 | review of the transcript was requested. |
| 17 | |
| 18 | _____ |
| 19 | Susan D. Wasilewski, RPR, CRR, CCP |
| 20 | (The foregoing certification of this transcript does |
| 21 | not apply to any reproduction of the same by any |
| 22 | means, unless under the direct control and/or |
| 23 | supervision of the certifying reporter.) |
| 24 | |
| 25 | |

| | Page 213 |
|---|---|
| 1 | INSTRUCTIONS TO WITNESS |
| 2 | |
| 3 | |
| 4 | Please read your deposition over carefully |
| 5 | and make any necessary corrections. You should |
| 6 | state the reason in the appropriate space on the |
| 7 | errata sheet for any corrections that are made. |
| 8 | |
| 9 | After doing so, please sign the errata sheet |
| 10 | and date it. It will be attached to your |
| 11 | deposition. |
| 12 | |
| 13 | It is imperative that you return the |
| 14 | original errata sheet to the deposing attorney |
| 15 | within thirty (30) days of receipt of the deposition |
| 16 | transcript by you. If you fail to do so, the |
| 17 | deposition transcript may be deemed to be accurate |
| 18 | and may be used in court. |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

## Page 214

```
 1       ------
 2         E R R A T A
 3       ------
 4  PAGE  LINE  CHANGE
 5  ____ ____ _____
 6    REASON: _____
 7  ____ ____ _____
 8    REASON: _____
 9  ____ ____ _____
10    REASON: _____
11  ____ ____ _____
12    REASON: _____
13  ____ ____ _____
14    REASON: _____
15  ____ ____ _____
16    REASON: _____
17  ____ ____ _____
18    REASON: _____
19  ____ ____ _____
20    REASON: _____
21  ____ ____ _____
22    REASON: _____
23  ____ ____ _____
24    REASON: _____
25
```

## Page 216

```
 1            LAWYER'S NOTES
 2  PAGE  LINE
 3  ____ ____  _____
 4  ____ ____  _____
 5  ____ ____  _____
 6  ____ ____  _____
 7  ____ ____  _____
 8  ____ ____  _____
 9  ____ ____  _____
10  ____ ____  _____
11  ____ ____  _____
12  ____ ____  _____
13  ____ ____  _____
14  ____ ____  _____
15  ____ ____  _____
16  ____ ____  _____
17  ____ ____  _____
18  ____ ____  _____
19  ____ ____  _____
20  ____ ____  _____
21  ____ ____  _____
22  ____ ____  _____
23  ____ ____  _____
24  ____ ____  _____
25
```

## Page 215

```
 1       ACKNOWLEDGMENT OF DEPONENT
 2
 3       I, _____, do hereby
 4  acknowledge that I have read the foregoing pages, 1
 5  through 214, and that the same is a correct
 6  transcription of the answers given by me to the
 7  questions therein propounded, except for the
 8  corrections or changes in form or substance, if any,
 9  noted in the attached Errata Sheet.
10
11
12  _____   _____
13  MICHAEL P. ELKIN, CPA, CFF, ABV, CFE      DATE
14
15
16
17
18  Subscribed and sworn to before me this
19  ____ day of _____, 20___.
20  My Commission expires: _____
21
22  _____
    Notary Public
23
24
25
```

Confidential - Subject to Further Confidentiality Review

```
 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF LOUISIANA
 2

      ------------------------------:
 3    IN RE:  CHINESE-MANUFACTURED  : MDL NO. 2047
      DRYWALL PRODUCTS LIABILITY     :
 4    LITIGATION                     : SECTION:  L
                                     :
 5    THIS DOCUMENT APPLIES TO ALL  : JUDGE FALLON
      CASES                          :
 6                                   : MAG. JUDGE WILKINSON
                                     :
 7    ------------------------------:
 8
                          - - -
 9
                  Tuesday, March 12, 2019
10
                          - - -
11
12              ** CONFIDENTIAL **
13        SUBJECT TO FURTHER CONFIDENTIALITY REVIEW
14                        - - -
15          Videotaped deposition of MICHAEL P. ELKIN,
        CPA, CFF, ABV, CFE, Volume 2, held at Colson
16      Hicks Eidson, 255 Alhambra Circle, Penthouse,
        Coral Gables, Florida, commencing at 9:00 a.m.,
17      on the above date, before Susan D. Wasilewski,
        Registered Professional Reporter, Certified
18      Realtime Reporter, Certified Realtime Captioner
19                        - - -
20            GOLKOW LITIGATION SERVICES
          877.370.3377 ph | 917.591.5672 fax
21                 deps@golkow.com
22
23
24
25
```

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 513 of 802
Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 2 of 84
Confidential - Subject to Further Confidentiality Review

Page 218

```
 1  APPEARANCES:
 2    BREIT DRESCHER IMPREVENTO
      BY:  JEFFREY BREIT, ESQUIRE
 3    600 22nd Street, Suite 402
      Virginia Beach, Virginia 23451
 4    Phone:  (757) 670-3888
      jeffrey@breitcantor.com
 5    Representing Plaintiffs
 6
 7    COLSON HICKS EIDSON
      BY:  NATALIE M. RICO, ESQUIRE
 8    255 Alhambra Circle, Penthouse
      Coral Gables, Florida 33134
 9    Phone:  (305) 476-7400
      natalie@colson.com
10    Representing Plaintiffs
11
12    ABALLI MILNE KALIL
      BY:  CRAIG P. KALIL, ESQUIRE
13       MICHEL AYUB, ESQUIRE
      1 Southeast 3rd Avenue, Suite 2250
14    Miami, Florida 33131
      Phone:  (305) 373-6600
15    ckalil@aballi.com
      mayub@aballi.com
16    Representing Defendant Beijing New Building
      Materials PLC
17
18
19    ORRICK, HERRINGTON & SUTCLIFFE, LLP
      BY:  DIANA SZEGO FASSBENDER, ESQUIRE
20    1152 15th Street, NW
      Washington, D.C. 20005-1706
21    Phone:  (202) 339-8533
      dszego@orrick.com
22    Representing Defendant Beijing New Building
      Materials PLC
23
24
25
```

Page 219

```
 1  APPEARANCES:
 2    ALSTON & BIRD LLP
      BY:  SARAH O'DONOHUE, ESQUIRE
 3    1201 West Peachtree Street
      Atlanta, Georgia 30309-3424
 4    Phone:  (404) 881-7000
      sarah.odonohue@alston.com
 5    Representing Defendant Taishan Gypsum Company
 6
 7  ALSO PRESENT:
 8
      AURELIO ROMAN, Videographer
 9
      MARCIE D. BOUR, Yip Associates
10
      ELAN STERNBERG, Kaufman Rossin
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 220

```
 1            - - -
 2         I N D E X
 3         Volume 2
 4      Tuesday, March 12, 2019
 5            - - -
 6
    Testimony of:  MICHAEL P. ELKIN, CPA, CFF, ABV, CFE  Page
 7
      DIRECT EXAMINATION BY MR. KALIL................  221
 8
 9         E X H I B I T S
10      (Attached to transcript)
11  ELKIN DEPOSITION EXHIBITS              PAGE
12  Exhibit 16   US Tax Return - 2009          286
         Kevin and Stacey Rosen
13       KROSEN - 000500 through 555
14  Exhibit 17   Turkell & Gervis Design Documents    307
         ROSEN, M (OLF) - 000085 through 191
15
16
17
18
19
20
21
22
23
24
25
```

Page 221

```
 1            - - -
 2      THE VIDEOGRAPHER:  Good morning.  Here
 3  begins Media Number 1 of Day 2 of the deposition
 4  of Mr. Michael Elkin.  We're back on the video
 5  record.  The time is 9 -- seven minutes after
 6  9:00 a.m.
 7      THE COURT REPORTER:  Let me remind you you
 8  are still under oath.
 9      THE WITNESS:  Thank you.  I understand that.
10      MICHAEL P. ELKIN, CPA, CFF, ABV, CFE, called as
11  a witness by the Beijing New Building Materials Defendants,
12  having been previously duly sworn, continued to testify as
13  follows:
14         DIRECT EXAMINATION
15  BY MR. KALIL:
16    Q.  Good morning, Mr. Elkin.
17    A.  Good morning.
18    Q.  I want to pick up with some of the things we
19  were discussing yesterday.
20      First, let me ask you, have you brought
21  anything additional today or made any additional --
22  found any additional changes to your report?
23    A.  I did find a few things that might require
24  adjustment.
25    Q.  Okay.  What --
```

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 514 of 802
Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 514 of 802
Confidential - Subject to Further Confidentiality Review

Page 222

1    A.  I brought with me some notes that I made as
2  I looked through some of the property damage
3  analysis.
4    Q.  Okay.  And as to which properties?
5    A.  With regard to Martinez --
6    Q.  Okay.
7    A.  -- I noted that somewhere in my formulas,
8  the start date for prejudgment interest for number
9  of transactions, I think I hard-coded something and
10  then I recopied a formula back over it, so it
11  actually has dates starting before they even moved
12  into the property which related to the date that
13  they acquired some of the property that they were
14  claiming damage for, and naturally, that should not
15  be predating the date that they moved, so that would
16  require some adjustment.
17    Q.  Let me hold you for one second.  So
18  Martin -- can I just get the names first, then we'll
19  go through them one by one, if that's okay.
20    So Martinez is one?
21    A.  I believe Martinez and Etter.
22    Q.  Etter.  Okay.
23    Just those two?
24    A.  And I'm trying to remember specifically if
25  Etter -- I believe Etter was a change in

Page 223

1  quantification.  It was just a change in
2  classification.
3    I don't recall any others.
4    Q.  Let's go to Martinez for a second.  You
5  would agree, wouldn't you, that prejudgment interest
6  should not be calculated on anything prior to the
7  time any of the Priority Claimants moved into their
8  properties?
9    A.  I'm not rendering opinions as to when the
10  timing should be, but I think I could be pretty
11  comfortable to say that.
12    Q.  So you're not rendering any opinions on
13  prejudgment interest as to when it should start
14  running, if at all?
15    A.  That's correct.  My goal was to establish
16  the format and the methodology, recognizing that
17  it's, as I understand it, up to the court's
18  jurisdiction or court's authority to determine
19  whether those things are even subject to prejudgment
20  interest and then to provide guidelines on when
21  prejudgment interest might or might not start, which
22  is why I tried to just lay out a very general --
23  pick the date something was acquired or the date
24  something was deemed damaged, add 30 days to it
25  for -- to catch some of the differences that might

Page 224

1  happen, and it was not my intention.
2    And I did not go through item by item to
3  make that determination because, as I believe I
4  stated in the report, the timing and the dates and
5  even the things that are included would be subject
6  for the court.
7    Q.  Okay.  So let me -- let me see if I can just
8  break those down into bits.
9    Do you have a schedule where you found the
10  Martinez prejudgment interest that you have now said
11  needs to be adjusted?
12    A.  I haven't made the adjustment, but I
13  could -- but I could point on the schedule which --
14    Q.  Could you direct us to the one in the -- in
15  the report as it currently exists or your schedules
16  as they currently exist or your work papers, just to
17  make sure we're in the same place?
18    A.  I think the -- I think the best place to see
19  it would be to -- you want it in the actual report
20  or in the -- in the Excel?
21    Q.  So why won't we go to the report first?
22    A.  Okay.  So in the updated Martinez 12 --
23    Q.  This is the document you gave us as of the
24  26th?
25    A.  That's correct.

Page 225

1    Q.  Okay.
2    A.  If you go to Page 1 of 3 of Exhibit 12.1
3  Updated.
4    Q.  That is the damage claims detail?
5    A.  Yes.
6    Q.  Okay.  And by the way, just to be clear,
7  that is part of your report proper that we put in
8  evidence?
9    A.  That's correct.
10    Q.  That we've -- that we've marked, excuse me?
11    A.  That's correct.
12    Q.  Okay.
13    A.  And if you look under where it begins with
14  "Property, Personal Property Damage Expense" --
15    Q.  Right.
16    A.  -- and if you look into the "Date" column.
17    Q.  For the first item, the frig?
18    A.  The first item, the frig, you can see that
19  that was purchased in April 2007.
20    Q.  All right.
21    A.  The Martinez's have claimed that to have
22  been damaged and --
23    Q.  And they didn't acquire their property until
24  September of 2008?
25    A.  They -- they had -- that's correct.

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 515 of 802
Case 2:09-md-02047-EEF-MBN Document 22311-1 Filed 12/02/19 Page 5 of 84
Confidential - Subject to Further Confidentiality Review

Page 226

1   So if you look, there are -- beginning with
2   the frig on April 1st, 2007, and ending with the
3   miscellaneous from Lowe's of $115 on July 17th, all
4   of those predated the date that they moved in, and
5   so certainly prejudgment interest should not start
6   then.
7       I believe at one point I had changed those
8   dates manually --
9   Q.  Okay.
10  A.  -- not in the "Date" column, but in the
11  measure column --
12  Q.  I'm sorry.  In the which --
13  A.  -- so it wouldn't show up on here.  So if
14  you -- if you --
15  Q.  It would show up on the next schedule --
16  A.  Yeah.  If you would --
17  Q.  -- the one showing prejudgment interest?
18  A.  -- go to Exhibit --
19  Q.  12.3?
20  A.  It's actually 12.3A.
21  Q.  Okay.
22  A.  Well, actually, no.  You can see it on
23  preponderance 12.3 as well.  That's -- in fact,
24  it's -- 12.3A is sort of tiny.  So if you look
25  there, you will see that that is only using the

Page 227

1   30-day formula in the second column called
2   "Measurement Date."
3   Q.  Okay.
4   A.  I had -- I thought that I had recalled
5   changing that at one point to the move-in date.
6   Q.  Okay.
7   A.  But it's possible that I recopied the
8   formula back over it and didn't notice it.  I
9   suspect that's what happened.
10  Q.  So let me just see if I follow that.
11      On 12.3 Updated, the first column that's
12  labeled "Damage Date" is a date at which some
13  document indicates either an item was acquired or an
14  item was replaced; is that correct?
15  A.  Item was acquired, replaced, or determined
16  to be damaged.
17  Q.  Okay.  And when it was determined to be
18  damaged, that wasn't done by you or your office; is
19  that correct?
20  A.  There were assumptions that were made in
21  part by my office.
22  Q.  And what --
23  A.  So --
24  Q.  What assumptions?  I'm sorry.
25  A.  Such as -- so for these particular items --

Page 228

1   and, again, this is -- you know, the "Damage Date"
2   is not my opinion with regard to how it impacts the
3   prejudgment interest -- but for the items that were
4   moved into the house, assuming that the house at
5   that point already had the Chinese drywall, even
6   though they weren't aware of it, I took -- for
7   quantification, I would have changed that to be the
8   date that they moved in and that the items were
9   subject to the Chinese drywall.
10  Q.  So if I follow, you're saying that just
11  logically and not as part of your opinion, an item
12  could not be damaged by being put in the property
13  that might have defective drywall until it entered
14  that property.  That's the -- that's why you're
15  saying that?
16  A.  Yes.
17  Q.  Okay.  But you're not saying that as a --
18  you've made any determination as part of your
19  opinion that any of these properties in fact had
20  defective drywall, did you?
21  A.  No.
22  Q.  And you're not saying that you made any
23  determination as part of your opinion that any of
24  the items of personal property that are listed on
25  any of these schedules were in fact damaged by

Page 229

1   defective drywall.  That's not part of your opinion?
2   A.  That's correct.
3   Q.  Okay.  So this is just simply saying if
4   someone else were to make a determination that a
5   particular item was in fact damaged and was in fact
6   damaged by defective drywall, this would be the
7   earliest date of which it could have been damaged?
8   A.  It would be the earliest.  And I would also
9   say if we were doing this calculation for, you know,
10  the purposes of rendering an opinion, it would also
11  be important to recognize it probably wasn't damaged
12  the day that it moved in.
13      And so I recognize, you know, as with all of
14  these dates, you know, it's going to be subject to
15  some other information before this calculation
16  becomes an actual calculation -- an actual opinion
17  of some type.
18  Q.  Are you planning on doing an actual opinion
19  on that issue?
20  A.  No.
21  Q.  Okay.  So when you say before it becomes,
22  not -- not by your hand?
23  A.  Not by my hand for purposes of rendering an
24  opinion at this time.  As you may know, sometimes
25  the court will end up rendering prejudgment interest

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 516 of 802
Case 2:14-cv-02722-EEF-MBN Document 224-3 Filed 06/30/21 Page 21 of 84
Confidential - Subject to further confidentiality Review

Page 230

1 is due; and then it comes back to somebody, and
2 often it's me, and the court would actually request
3 me to make a prejudgment interest calculation and
4 then they might lay out the parameters of how they
5 want that calculation done. I've done that a number
6 of times.
7 Q. Right. But to under -- to get your last
8 statement clear, as best I understand it, you're not
9 rendering an opinion as to whether defective drywall
10 destroys items instantaneously. In fact, I think
11 you're saying it would not be your view, just as a
12 general matter, that it does. This is not a
13 catastrophic event?
14 A. I just don't know the answer to it.
15 Q. You have no opinion on this?
16 A. I have no opinion on it.
17 Q. So that's not any part of your report?
18 A. That's correct.
19 Q. Okay. And all you're saying, though, is
20 logically, for no other reason than if the damage
21 would occur by being in the presence of Chinese
22 drywall, it couldn't start being damaged, even if
23 it's a slow process, until it's in close proximity?
24 MR. BREIT: I'm going to object to the form
25 of the question based on his earlier answer.

Page 231

1 MR. KALIL: Okay.
2 MR. BREIT: He has no opinion.
3 A. I don't have an actual opinion, but --
4 BY MR. KALIL:
5 Q. But that's --
6 A. But that's --
7 Q. -- what you were trying to establish by
8 putting an -- an earliest date was to say,
9 logically, you wouldn't see a way that the property
10 could be damaged before it came into proximity, if
11 that -- if that was the cause?
12 A. That would seem logical.
13 Q. Okay. Now, while we're on that, to be
14 clear, you never looked to make any determine -- you
15 were never asked to make any determination or render
16 a professional opinion as to whether there was any
17 defective drywall in any of the Priority Claimants'
18 properties; is that correct?
19 A. Certainly not. That's correct.
20 Q. And you were never asked to render any
21 professional opinion as to whether any of the items
22 of personal property were in fact damaged by
23 defective drywall; is that correct?
24 A. That is correct.
25 Q. And you were not asked to render any

Page 232

1 professional opinion as to whether any of the other
2 damages at issue in this case were caused by
3 defective drywall directly?
4 A. That's correct.
5 Q. Okay. And in fact, while we're just getting
6 into what is not at issue, would you agree with me
7 that it was not within the scope of your engagement
8 to try to make any determination whether there was
9 or was not any defective drywall in any of the
10 Priority Claimants' properties?
11 A. Yes, I would agree.
12 Q. Would you --
13 A. Sorry. It just sounded like the other
14 question, so --
15 Q. No. I'm just -- I just want to get them
16 clean because I think past the objection --
17 A. There -- the other questions --
18 Q. -- to form.
19 A. -- the answers were "no" and this one was
20 "yes," so I was trying to make sure there wasn't a
21 double negative that I missed.
22 Q. I'll try to put them in a way that I hope
23 you will say "yes."
24 A. I'll -- I'll be fine.
25 Q. Okay.

Page 233

1 A. You hope I say "yes." Okay.
2 Q. Am I correct that you are not offering any
3 professional opinion whether there was or was not
4 any defective drywall in any of the Priority
5 Claimants' properties?
6 A. That's correct.
7 Q. Am I correct that it is -- was not within
8 the scope of your engagement to try to make any
9 determination whether any personal property being
10 claimed by any Priority Claimant was in fact damaged
11 by being in close enough proximity to be defective
12 drywall?
13 A. That's correct.
14 Q. Am I correct that you are not offering any
15 professional opinion whether any personal property
16 being claimed by any Priority Claimant was in fact
17 damaged by being in close enough proximity to any
18 defective drywall?
19 A. That's correct.
20 Q. Am I correct that you're not offering any
21 professional opinion whether any personal property
22 being claimed by any Priority Claimant that was
23 located outside of the property was in fact damaged
24 by any defective drywall?
25 A. That's correct.

Case 2:09-md-02047-EEF-MBN Document 23380-26 Filed 12/02/19 Page 517 of 802
Case 2:14-cv-02722-NG Document 24-15 Entered on FLSD Docket 12/20/17 Page 6 of 84
Confidential - Subject to further confidentiality Review

Page 234

1    Q.   And it was not within the scope of your
2  engagement to try to be a gatekeeper as to whether
3  any of the Priority Claimants' claims for damage
4  were in fact caused by the presence of defective
5  drywall?
6       MR. BREIT:  I'm going to object to the form
7  of the question because of the way it's phrased
8  based on what he said yesterday, that there were
9  certain determinations made.  That's --
10    Q.   Let me see what --
11    A.   Can you -- can you --
12    Q.   I'll read it back.
13    A.   -- read it back for me, please?
14    Q.   Do you agree with me that it was not within
15  the scope of your engagement to try to be a
16  gatekeeper as to whether any of the Priority
17  Claimants' claims for damages were in fact caused by
18  the presence of defective drywall?
19    A.   I believe that's correct.
20    Q.   Would you agree with me that you were not
21  offering any professional opinion whether any of the
22  Priority Claimants' claims for damage were in fact
23  caused by the presence of defective drywall?
24    A.   Yes.
25    Q.   Would you agree with me that you are not

Page 235

1  offering any professional opinion whether any of the
2  claims advanced by the Priority Claimants through
3  their counsel are or are not meritorious?
4    A.   I need you to read that one back.
5    Q.   Sure.
6       Do you agree with me that you are not
7  offering any professional opinion whether any of the
8  claims advanced by the Priority Claimants through
9  their counsel in this case are or are not
10  meritorious?
11    A.   I don't think I understand what you mean by
12  "meritorious."  Perhaps you can help me understand
13  that.
14    Q.   You are not expressing any opinion, any
15  professional opinion on the bona fides of any of
16  those claims, are you?
17    A.   I still don't understand the question.
18    Q.   Sure.
19    A.   I mean, there -- there are things that I'm
20  verifying the accuracy of, so that might in some --
21  in some way be whether something is bona fide or
22  not.
23    Q.   Well, let's -- let's see if we can do that
24  differently.
25       As I understand your role, you were looking

Page 236

1  at data provided to you by way of invoices,
2  receipts, interrogatories, depositions, other data
3  that came from the Priority Claimants and their
4  counsel, but you weren't testing that data to see
5  whether the underlying premises were true or not
6  true?
7    A.   The underlying premises of the liability,
8  the causation, and what have you?
9    Q.   Yes, exactly.
10    A.   That's correct.
11    Q.   Okay.  So you were not validating the claims
12  as such as a gatekeeper?
13    A.   Not with regard to liability and not with
14  regard to causation, that's correct.
15    Q.   And it wasn't part of your engagement to
16  read out claims that you thought in your
17  professional opinion should not be included on the
18  basis of causation or liability?
19    A.   That's correct.
20    Q.   What you were doing was validating the
21  amounts listed on the claims to the best of your
22  ability?
23    A.   That is one of the things I did, yes.
24    Q.   And then you were putting those amounts into
25  various Excel spreadsheets or databases so that you

Page 237

1  could sort them by date and add them to combine them
2  in various ways?
3    A.   That's one of the things I did, yes.
4    Q.   And then you did prejudgment interest
5  calculations on some of those to show examples of
6  what might be if the court asked for that type of
7  work?
8    A.   That's correct.
9    Q.   Did you do any other financial analysis of
10  that data?
11    A.   In some cases, it required financial
12  analysis of contracts or tracing back to bank
13  statements to determine if numbers were correct;
14  then also the linking of the actual expense with one
15  of the tens of thousands of documents or pages as --
16  as a forensic exercise; and looking for filtering,
17  whether it's duplicates or -- or certain payments
18  that might be in two places because one might have
19  been paid at a later time and a total might have
20  been picked up at another time.
21       So there was a -- an amount of screening of
22  the information in order to reach the totals as --
23  as you described.
24    Q.   Okay.
25    A.   And then there was some level of -- of

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 518 of 802
Case 2:14-cv-02722-MBN Document 243 Entered on FLSD Docket 11/29/19 Page 8 of 84
Confidential - Subject to further confidentiality review

Page 238

1  putting things in buckets so that they were
2  identifiable in that way.
3    Q.  So to that extent, you were categorizing
4  these numbers as personal property expenses or
5  damage or lost equity or the other components that
6  you've put them into?
7    A.  That's correct.
8    Q.  And that's what you mean by that, the
9  "buckets"?
10   A.  Yes.  Yes.
11   Q.  Okay.
12   A.  Or excluding them from any bucket.
13   Q.  Exactly.  But excluding them on the basis
14 that you either didn't have a sufficient support for
15 the item or you couldn't validate the number, not on
16 the basis of whether it was meritorious to include
17 it?
18   A.  Yes, plus to the extent that I didn't feel
19 that the expenditure fit into any of those buckets.
20   Q.  When --
21   A.  We talked about some of those yesterday.
22   Q.  Okay.  So some things that might be a
23 betterment?  We had one of the claimants who
24 self-described this as betterment, and you accepted
25 that?

Page 239

1    A.  That's correct.
2    Q.  But you didn't put any other items into
3  betterment based on your review?
4    A.  That's correct.
5    Q.  I noted -- while we're on the documents, I
6  noted in your report there was a reference -- and
7  let me get to the page.  I apologize for not having
8  it queued up.
9        On Page 4, Footnote 7 of your report, you
10 talk about some of the source information that you
11 were looking to, invoices, check copies, contracts,
12 et cetera; but there -- there is a reference that in
13 some instances either due to the passage of time or
14 other limitations, e.g., hurricane damage, specific
15 items may be supported by representation by
16 plaintiffs, through sworn testimony, or otherwise.
17        Did you find any instances where information
18 was said to be missing due to hurricanes?
19   A.  I recall in a conversation, I don't remember
20 if it was -- I don't remember if I read it in a
21 deposition or if it was a conversation possibly with
22 the Fosters.
23   Q.  Okay.
24   A.  But I do recall someone indicating that
25 somewhere along the line documentation that they

Page 240

1  had -- and I don't even know if they were
2  specifically referencing this information, but that
3  they had had some damage and might not have the
4  documentation because of that.  I don't recall who
5  that was.
6    Q.  Okay.  But at least one of the Priority
7  Claimants you believe may have indicated they could
8  have lost documentation due to a hurricane or a
9  storm?  I'm asking because you used the word --
10   A.  No.  Well, no.  I remember putting it in
11 there.  I definitely used it, and I definitely -- at
12 the time I wrote this, which was a little while ago,
13 it was probably fresher in my mind as to who it was
14 and why, but that is my recollection.
15   Q.  Did you make any inquiry as to whether the
16 hurricane that had caused the loss of the data had
17 also caused damage to property?
18   A.  No.
19   Q.  Okay.  So you're not expressing any opinion
20 as to whether any of the property that's being
21 claimed to be damaged by the Priority Claimants
22 might have been damaged by other events such as
23 hurricanes?
24   A.  No.  I almost remember that perhaps the
25 hurricane or whatever they were talking about wasn't

Page 241

1  in the affected property.  Maybe it's where the
2  records were or something like that.  I really don't
3  recall 100 percent.
4    Q.  Okay.
5    A.  It wasn't intended to be, you know, a word
6  that I put in there to say that it has implications.
7  I was just trying to give an example because this
8  has been going on for, you know, well over
9  ten years, and I don't recall specifically, but I
10 think it had to do with the Fosters, but I'm not
11 even certain.
12   Q.  But it's fair to say that although the case
13 has been going on for some time, the Priority
14 Claimants have been represented by counsel for that
15 time?
16   A.  I don't know when they were first
17 represented by counsel.
18   Q.  Did you ever make any inquiries to that
19 effect?
20   A.  As to when the -- each of the claimants was
21 first represented by counsel?
22   Q.  Yes.
23   A.  No.
24   Q.  Is it fair to say that you're not expressing
25 any opinions on whether there may or may not be

| | |
|---|---|
| **Page 242** | **Page 244** |

**Page 242**

1 alternate causes of damage to any of the personal

2 property at issue in this report?

3    A. I am not.

4    Q. Is it fair to say that you're not expressing

5 any opinions as to whether there may or may not be

6 any alternate causes of a loss of equity as

7 expressed in your report?

8    A. I am not.

9    Q. Is it fair to say that you did not engage in

10 any forensic analysis to try to determine the causes

11 of any of the losses to the Priority Claimants,

12 whether it was related to defective drywall or other

13 causes?

14    A. That's correct.

15    Q. So you had told me about Martinez and I

16 think we touched on that; and while we're at it, let

17 me take one second here. Let's see.

18      Do you recall Mr. Martinez or Mr. and

19 Mrs. Martinez, if I'm not mistaken, buying an RV?

20    A. And that would be related to the second

21 thing on Martinez.

22    Q. Okay. And -- and did you originally include

23 the RV in your damage spreadsheet?

24    A. Originally, and it is still in my damage

25 spreadsheet.

**Page 243**

1    Q. And --

2    A. But -- but what's missing from it is I had

3 intended to net out -- they testified that they had

4 sold the RV for $2,000 at a later time, and I noted

5 that although my intention was to submit that

6 amount, now I did not.

7      I think part of that was I was -- had been

8 looking for the timing of when to do that because,

9 in theory, at whatever time that would happen, aside

10 from it reducing the damage amount, it would also

11 reduce the prejudgment interest. And ultimately I

12 had intended to just adjust it at the purchase

13 amount since I really wasn't doing the entire

14 prejudgment interest, and I saw -- I noted last

15 night that I neglected to do that.

16      So the RV, at a minimum, should be net of

17 the $2,000 that they estimated that they sold it

18 for.

19    Q. And there should be, in addition, some

20 credit, if prejudgment interest is calculated,

21 allowing for the recovery when that was made?

22    A. Positively.

23    Q. Okay. Are there any other items that you've

24 noted there were residual value on items that were

25 not accounted for?

**Page 244**

1    A. Not that I was aware of.

2    Q. Was it within the scope of your engagement

3 to determine if any of the personal property items

4 that the Priority Claimants say were damaged had any

5 residual value?

6    A. No.

7    Q. Okay. Is it fair to say that for purposes

8 of the calculations you've done, adding up these

9 numbers, you've treated every one of the personal

10 property items as a total loss?

11    A. Well, to the extent that there was a

12 replacement, I just treated it as a replacement. So

13 sort of like the question before, I did not seek to

14 determine whether or not there was a residual value

15 to that damaged item. That's correct.

16    Q. So if there was a replacement for an item

17 that one of the Priority Claimants said was damaged,

18 did you attempt to use or did you use the original

19 cost for valuation, or the replacement cost, or

20 something else?

21    A. If there was something that had not been

22 replaced, we used either the original cost, if there

23 was -- if there was evidence of that, or in some

24 cases estimates by the -- by the claimant with

25 regard to what they believed the original cost or

**Page 245**

1 the value was.

2      With regard to items that were actually

3 replaced, we used the replacement cost as of the

4 date that they replaced it, evidenced by the cost

5 for them to replace it.

6    Q. And was that consistent throughout all of

7 the Priority Claimants?

8    A. I believe to the extent that they replaced

9 something, yes. With regard to some things that

10 might not have been replaced, I know that in at

11 least -- I'm trying to remember which one it is. I

12 believe it's in Deeg/Hooker, we used an inventory

13 that was prepared as of a particular date of all the

14 items in the house as of that date that that company

15 deemed to have been damaged and their estimate of

16 replacement costs at that point in time.

17    Q. That was Duraclean's estimate --

18    A. That's correct. I think we talked about

19 that yesterday, yeah.

20    Q. And, again, you weren't expressing any

21 opinion on the validity of those estimates, that was

22 Duraclean's?

23    A. That's correct.

24    Q. With the exception of Duraclean, was there

25 any other instance where you had a third party

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 520 of 802
Case 2:09-md-02047-EEF-MBN Document 21641-36 Filed 08/13/18 Page 9 of 84
Confidential - Subject to further confidentiality review

Page 246

```
 1  giving you estimates of the value of the damaged
 2  property?
 3      A.  I think there were some instances where the
 4  claimants had sought information from third parties
 5  as to estimates for some of their items; and to the
 6  extent they provided those, I believe I may have
 7  used those in one or two instances, but I did not go
 8  out to seek independently any -- any values from
 9  third parties.
10      Q.  That wasn't part of your engagement?
11      A.  No.
12      Q.  And you're not expressing any opinion on
13  whether those third-party values were in fact
14  correct or incorrect?
15      A.  That's correct.
16      Q.  And you didn't test those third-party values
17  in any way?
18      A.  That's correct.
19      Q.  If I can turn you to Page 4 of your report,
20  where we were before, at Paragraph 13, and we may
21  have touched on some of this, I just wanted to make
22  sure we've covered this.  You say:  "In formulating
23  my opinions, I considered qualitative and
24  quantitative information relative to damages
25  suffered for each Priority Claimant following
```

Page 247

```
 1  prescribed or commonly applied methodology using the
 2  best available evidence."
 3          What qualitative information are you
 4  referring to there?
 5      A.  That would have to do with anything that I
 6  read or anything that described the nature of things
 7  that, in and of itself, didn't necessarily provide
 8  me an absolute number but either gave me a timeline
 9  or gave me a description of what took place as
10  opposed to just a document that had quantitative
11  numbers on it.
12      Q.  Can you give me an example?
13      A.  An example would be with Martinez, their
14  explanation as to why an RV expense would in fact be
15  an alternate living expense.
16          As to the timing of when they may have
17  started or when they may have moved out of a place,
18  the explanations in some cases where some claimants
19  took all of their -- their -- what they considered
20  to be damaged personal property and just brought it
21  to the curb.
22          So I guess that would come in -- in some you
23  asked, I guess, if I considered residual value.
24  While I didn't consider it, that would tell me that
25  those particular things didn't have a residual
```

Page 248

```
 1  value; or at a minimum, you know, just things that I
 2  learned and understood.  I couldn't say other than
 3  the things that I might mention as we go which
 4  particular qualitative things, but not everything I
 5  did was strictly based on quantitative measures.
 6      Q.  And -- and when you say "taking things to
 7  the curb" would indicate there was no residual
 8  value, it would indicate at least to the person who
 9  took it to the curb.  You weren't -- you weren't
10  validating that?
11      A.  That's absolutely correct.
12      Q.  Okay.  What standard did you hold yourself
13  to in finding best available evidence in order to
14  comply with any imposition of CPA guidelines; in
15  other words, having a reasonable basis for rendering
16  the opinions that you are intending to render?
17          MR. BREIT:  I'm going to object to the form
18      of the question.
19          Go ahead.
20      A.  I don't believe that there are specific
21  standards for litigation consulting work that
22  prescribe what is or is not best available evidence.
23      Q.  Okay.
24      A.  I believe that within our standards, there
25  is a certain amount of judgment, but there is also a
```

Page 249

```
 1  certain amount of transparency.  And when I talk
 2  about best available evidence, I sought to find
 3  exactly that, including in it testimony or -- or
 4  representations by claimants that in and of itself
 5  is some level of evidence, and that's evidence that
 6  can be considered by others, and to include that
 7  into the schedule so that a trier of fact or
 8  somebody could have reached their own conclusion as
 9  to the quality of that evidence.
10      Q.  Okay.  And --
11      A.  But I don't believe that there is
12  necessarily a standard within the CPA profession as
13  to what is or is not the best evidence or sufficient
14  relevant information, and a lot of it depends on the
15  nature of the case and the nature of the
16  documentation that could be expected under given
17  circumstances.
18      Q.  And so you're not -- you're not stating that
19  you had complete or perfect information as to any of
20  the Priority Claimants, are you?
21      A.  I believe that there was very strong
22  evidence for some line items; and I believe some
23  line items, although as few as possible, were
24  limited to the testimony and/or written
25  interrogatories or what have you of the claimants.
```

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 521 of 802
Case 2:09-md-02047-MDL Document 213 Ultimate 36 FSD Clerk 09/13/2019 Page 66 of
84
Confidential - Subject to further confidentiality review

| Page 250 | Page 252 |
|---|---|
| 1   Q. But there is nowhere in your report that | 1   I started talking and I don't remember the whole |
| 2   I've seen where you rank the evidence or the quality | 2   question. |
| 3   of the evidence as such. You're not expressing | 3   Q. That's all right. Let me see if I can do |
| 4   varied opinions on the quality of the individual | 4   this slightly differently. Let me take one of these |
| 5   items you were looking at? | 5   examples. You say traveling -- "travel costs |
| 6   A. I'm just presenting what was -- where it was | 6   incurred by a claimant because he needed to return |
| 7   traced to. I'm not doing any rankings, and I'm not | 7   to work." |
| 8   doing statistical analysis of that. | 8   A. Yes. |
| 9   Q. Okay. Let me just direct you to Page 6 of | 9   Q. Who does that refer to? |
| 10   your report for a moment, the topic "Additional | 10   A. Mr. Foster. |
| 11   Damages." I think we've touched on it in some | 11   Q. Okay. Now, Mr. Foster was work -- was |
| 12   sense, but I just want to make sure we've covered | 12   living in Florida but working in Kentucky, if I |
| 13   it. | 13   recall correctly? |
| 14      When you are looking at topics of additional | 14   A. At one point, that's correct. |
| 15   damages: "I have evaluated documentation and | 15   Q. And then he also worked in Michigan? |
| 16   information in order to identify and quantify | 16   A. I believe that's correct. |
| 17   additional damages incurred by some Priority | 17   Q. Why did you include travel expenses for |
| 18   Claimants. These damages include lost rental income | 18   Mr. Foster? |
| 19   from affected properties, legal fees and costs in | 19   A. I -- initially, those expenses were included |
| 20   connection with foreclosures, short sales or | 20   as alternate living expenses. |
| 21   bankruptcy, and in one case additional living | 21   Q. Okay. |
| 22   expenses and travel costs incurred by a claimant | 22   A. In evaluating the claim and having |
| 23   because he needed to return to work." | 23   discussions with counsel, there was question as to |
| 24      Am I correct, though, that you are not | 24   whether those were actually alternate living |
| 25   expressing any opinion on whether any of those | 25   expenses or expenses related to his claim with |

| Page 251 | Page 253 |
|---|---|
| 1   additional damages are in fact caused by defective | 1   regard to having to return to work because of the -- |
| 2   or Chinese drywall? | 2   in his -- in his words, maybe not exact |
| 3   A. That's correct. | 3   paraphrasing, because of the added expenses they |
| 4   Q. Okay. Now, when you were doing your damages | 4   were going to have and because of the issues related |
| 5   assessment, did you eliminate some expenses? I | 5   to not being able to retire into that home. |
| 6   think you said homeowners association fees, real | 6      If that's the case and if that's deemed to |
| 7   estate taxes, and betterment were things you | 7   be the cause of that, then he did represent and did |
| 8   eliminated from your -- your calculation of damages? | 8   present much information relative to the costs of |
| 9   I believe you said that yesterday? | 9   that taking place. |
| 10   A. Yes. | 10      Based on how I was dealing with alternate |
| 11   Q. Okay. Were there any other expenses that | 11   living expenses, it didn't seem to fit into that |
| 12   you eliminated? | 12   bucket, so I put it into the other expenses, because |
| 13   A. When you say "eliminated," there were a lot | 13   other expenses isn't limited to these components. |
| 14   of documents that were provided, and so it was not | 14   And so if it's deemed that is an appropriate damage, |
| 15   as much of a question at all times of eliminating, | 15   then they've been quantified. |
| 16   but whether or not they would be included. And in | 16   Q. Now, I think we talked a bit about Foster |
| 17   some cases, I noted where -- whether it was through | 17   yesterday, and if I recall correctly, I think you |
| 18   an interrogatory or some other representation, where | 18   said you didn't make any inquiries into the Fosters' |
| 19   they did have things listed, and so I didn't include | 19   general financial condition, and you didn't express |
| 20   them and so I was calling that "eliminated." | 20   any opinion on whether you could -- or did you make |
| 21      I don't know that they were, in those | 21   any inquiries into the Fosters' general financial |
| 22   instances, stating whether they were a damage or | 22   condition? |
| 23   just stating, "This is what I had to pay for X, Y or | 23   A. No. |
| 24   Z." | 24   Q. Okay. And I take it you're not expressing |
| 25      I don't know if that answered your question. | 25   any opinion on whether his statement that he needed |

Page 254

1  to return to work was in fact true or not true?
2      A.  That's correct.
3      Q.  And did he provide you with any statement of
4  his net worth or his financial position?
5      A.  No.
6      Q.  And if I recall correctly, Mr. Foster --
7  let's see if I've got --
8          MR. KALIL:  Do we have the clip on Foster?
9  BY MR. KALIL:
10     Q.  While he's looking for that, you said you
11 put it in "Other Damages."  Is that include -- can
12 you show me where in your report or schedules the
13 "Other Damages" for Mr. Foster are found?  And
14 that's Exhibit 6, I believe, Mr. Foster.
15     A.  It is.  And if you look at Exhibit 6 under
16 "Other Damages," there are three categories:  One
17 for "Alternate Living Expenses," one for "Personal
18 Property Damages," and another called "Additional
19 Damages," and that "Additional Damages" makes
20 reference to Exhibit 6.1.
21         And if you go to Exhibit 6.1, beginning on
22 page -- beginning on Page 8 of 11 of 6.1 --
23     Q.  Give me one second to catch up with you.
24 I'm on Page 8.
25     A.  Are you there?

Page 255

1      Q.  Yes.
2      A.  And you will see that after the totals for
3  "Personal Property Damage" begins a section that
4  goes on for the next four pages.
5      Q.  I'm -- I may be missing something.  On 6.1?
6      A.  On Exhibit 6.1, Page 8 of 11.
7      Q.  Okay.  Page 8 of 11, I don't see a total.
8  Maybe I've got something --
9      A.  Well, you will see in the middle of the
10 page --
11     Q.  Okay.
12     A.  Higher.  Are you on Exhibit 6.1?
13     Q.  I believe I have -- Mr. Elkin, I'll show you
14 my page and you can tell me if I've got the same
15 page as you.
16         If there is a disconnect, I'll just go to
17 the one that's here.  Let me see.  Let me go to
18 exhibit -- I'll grab it here.
19         You know what?  I think, Mr. Elkin, I was
20 looking at a version that doesn't show that total.
21 I believe what you're looking at may be a
22 printout from the Excel itself as opposed to the PDF
23 version, so maybe the pages are different.
24     Q.  Okay.
25     A.  I think if you look at the -- I'm guessing,

Page 256

1  because these are different.
2      Q.  That's -- that's fine.
3      A.  But it looks like it's the same schedule.
4      Q.  I tell you what I'll do is I'll work with
5  the exhibits that we've marked because it has it in
6  the middle.  So go ahead.
7      A.  You do see that on there?
8      Q.  I do see that.
9      A.  Okay.  So that's what I'm guessing happened,
10 which --
11     Q.  That's fine.
12     A.  -- which is not uncommon at all.
13         So if you look at that page from the
14 Exhibit 6.1, I'm trying to focus you on the section
15 below that total that starts --
16     Q.  Sally's Beauty Salon?
17     A.  It starts with "Comcast - Louisville,
18 Cable."
19     Q.  Hold on one second.  Let me get there.
20     A.  Page 8 of 11.
21     Q.  Again, this one, for some reason, is
22 formatted slightly different.  Okay.  This is on 7
23 of 11.  It's just, for some reason, the pages are
24 confusing and that's why this.
25         It's not a difference in the print other

Page 257

1  than the way it printed because of the Excel or PDF.
2      A.  Okay.
3      Q.  On here it's at Page 7, but I can follow
4  you.
5      A.  Okay.  So if you can see the first line item
6  where it says:  "Additional Damages - W Foster
7  Living."
8      Q.  Okay.
9      A.  And so that entire category relates to
10 Mr. Foster's expenses for living and traveling in
11 order for him to be able to work.  It includes a
12 variety of expenses during that time period
13 totalling $94,728, and that is the amount that is
14 reflected on that initial schedule that I showed you
15 at Exhibit 6 for "Additional Damages."
16     Q.  Understood.
17         Now, if I understand it, did Mr. Foster --
18 when did Mr. Foster first become aware of the
19 defective drywall?
20     A.  I believe he indicated or it was indicated
21 that it was in February of 2009.
22     Q.  And the expenses we've just been talking
23 about seem to commence in February of 2008; is that
24 correct?
25     A.  Yes.

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 523 of 802
Case 2:09-md-02047-MBN Document 22380-36 Filed 12/02/19 Page 13 of
84
Confidential — Subject to further confidentiality Review

Page 258

1    Q.  Why would you categorize expenses associated
2  with returning to work prior to the date that
3  Mr. Foster became aware of the Chinese drywall or
4  the defective drywall, if that's what he had in his
5  home?
6    A.  I'd have to go back to make sure that I'm
7  addressing the proper plaintiff in this response.
8      But if I recall, they had recognized that
9  there were problems in the house and they were
10  having issues; but I don't know that they had
11  directly associated them with Chinese drywall until
12  2009, if I'm recalling the correct one, and I'm not
13  certain that I am.
14    Q.  Well, let me -- let me direct you if I can
15  to -- I can mark them.  Perhaps we can pull it up.
16  It's got that Bates number on the bottom that I
17  think might have been put on by your office,
18  F000783 -- or W Exhibit 01.  It's Mr. Foster's
19  Deposition Exhibit Number 1.
20      There we go.  Okay.  Now, this appears to be
21  a statement by the Fosters.  Is that what you
22  understand it to be?
23    A.  Yes.
24    Q.  If I'm reading the first entry correctly,
25  for 2008, is Mr. Foster staying at a house he owns

Page 259

1  in Louisville?
2    A.  Yes.
3    Q.  Okay.  And it appears that house has been
4  for sale since 2007?
5    A.  That's correct.
6    Q.  So wouldn't he be incurring utilities and
7  expenses of maintaining that house while it's for
8  sale in any event?
9    A.  If it's determined that he wouldn't have
10  been able to sell it, that's correct.  My -- my
11  understanding was that he had slowed down on his
12  efforts to sell it in order that he could continue
13  to work and live from there.
14    Q.  And what do you base that upon?
15    A.  I believe that was his testimony or that
16  might have been part of our discussions when I had
17  him on the phone.
18    Q.  Because I see him saying in the second
19  sentence under 2008:  "It had been for sale since
20  late 2007."
21    A.  It does say that.
22    Q.  And then it continues in 2009:  "Stayed at
23  our house until 3/20/2009 when we sold the house."
24      So it appears that he was still marketing
25  the house?

Page 260

1    A.  Yes.
2    Q.  And he ultimately did sell it?
3    A.  Yes, he did.
4    Q.  But in the meantime, he's putting in as rent
5  and utilities what I am assuming you would be able
6  to determine were the carrying costs for that house?
7    A.  That's correct.
8    Q.  So you weren't making any judgments as to
9  whether that was an appropriate item to include here
10  or not; you were just taking it as, "This is
11  something he provided, let me include it in the
12  schedules and try to categorize it where I can"?
13    A.  For further testimony by him to represent
14  what he told me, that's correct.
15    Q.  Okay.  Now, did Mr. Foster also make a claim
16  for loss of rental income for the house in Florida?
17      Well, I'll reorient you in a minute.  Let me
18  -- let me give you one other thing before we go
19  there, Mr. Elkin, to make it a little simpler.
20      Did Mr. Foster make a claim for mileage
21  while he was working out of town?
22    A.  I believe he did.
23    Q.  Was he reimbursed any of that mileage by his
24  employer?
25    A.  I don't believe so.

Page 261

1    Q.  Can I ask you to turn to -- I think it's got
2  a Bates number F -- on that same document.  In that
3  same document you're on, a few pages in, there is a
4  bottom number F000785.  I think you have that.
5  Okay.
6      And where it starts "consulting job
7  Louisville," right where you've got the cursor,
8  okay, I think it says:  "Mileage for trips back and
9  forth from Fort Myers, Florida, to Louisville,
10  Kentucky, as well as food expenses were paid, all
11  paid by Ford during this time."
12      Do you see that?
13    A.  Yes.
14    Q.  Did you include or exclude those expenses in
15  the schedule?
16    A.  My understanding is that those expenses
17  weren't included on the schedule.  If I'm incorrect,
18  then they would need to come off.  I believe that
19  the other travel that wasn't reimbursed was all that
20  he put on his schedule.
21    Q.  So the -- that would be the travel to and
22  from work while in Louisville?
23    A.  To and from work, that's correct.
24    Q.  Now, did you make a determination of whether
25  people can normally expense travel to and from work?

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 524 of 802
Case 2:09-cv-06690-EEF-JCW Document 2-3 Filed 10/16/14 Page 14 of 84
Confidential - Subject to further confidentiality Review

| Page 262 | Page 264 |
|---|---|
| 1   A. Whether they normally -- | 1   foregone rent. |
| 2   Q. Can expense -- is that considered a | 2   Q. Okay. Did you find evidence that they had |
| 3   deductible business expense? | 3   leased the Colonial Club property prior to the time |
| 4   A. It's not a question of whether it's a | 4   they were saying they were foregoing rent? |
| 5   deductible business expense. It's a question of | 5   A. Yes. |
| 6   whether it's an expense that he should or should not | 6   Q. Okay. And that lease ended, I believe, on |
| 7   have had to incur based on the circumstances. | 7   September 26th, 2009? Is that consistent with what |
| 8   Q. Okay. | 8   you found? |
| 9   A. So it's -- typically your travel to and from | 9   A. I'd have to look at the lease. I don't |
| 10   work is not a deductible expense. There are some -- | 10   recall. |
| 11   there are some differences in that, but this isn't a | 11   Q. I believe the document ID is 125033. I'm |
| 12   question of whether something is tax deductible or | 12   not sure that's what you have, but I have 125033. |
| 13   not. It's a question of whether it was incurred or | 13   A. I got it. I just was trying to find it for |
| 14   reimbursed. | 14   you. |
| 15   Q. All right. And did -- and so you didn't | 15   Q. Okay. And somewhere there, I believe there |
| 16   make any analysis as to whether or not this should | 16   is a -- maybe the second page I believe you will see |
| 17   or shouldn't be on the expenses. You just simply | 17   a lease, if you keep going. There we go. Okay. |
| 18   took it if he hadn't been reimbursed, it was going | 18   And at the bottom, it seems to have that number. |
| 19   to be included? | 19   Okay. Mr. Elkin, if I can direct you to |
| 20   A. That's correct. | 20   that first lease agreement, the one that is titled |
| 21   Q. Okay. Let me ask you to look at -- well, | 21   "Dwelling Lease." I think it's Page 2 of the 12. |
| 22   the first question is: Did we -- did we determine | 22   A. I just was looking at the whole document so |
| 23   if the Fosters also included lost rent in their | 23   that I could be -- if you don't mind. |
| 24   claim? | 24   Q. You take your time if you want. Take your |
| 25   A. They didn't include lost rent of the -- of | 25   time. |

| Page 263 | Page 265 |
|---|---|
| 1   the affected property, if that's what you mean. | 1   A. It's a 12-page document. I'd like to see |
| 2   Q. But did they include any lost rent? | 2   everything in context, if I could. |
| 3   A. What they included as rent -- as part of | 3   Q. Take your time and when you're ready, let me |
| 4   their alternate living expense was foregone rent; in | 4   know. Do you want to go off for a second? |
| 5   other words, rent that they were not able to receive | 5   A. No, it will be quick. |
| 6   because they moved into the home that they would | 6   Okay. |
| 7   have otherwise received rental income from. | 7   Q. All right. Would you agree with me that the |
| 8   Q. Okay. And do you know which home that was? | 8   Page 2 titled "Dwelling Lease" is a lease from Vicki |
| 9   A. I believe it was a Colonial Condo that | 9   Foster to a Robert -- I'm going to do this badly -- |
| 10   they -- | 10   Rosebeck maybe? |
| 11   Q. Colonial Country Club perhaps? | 11   A. I'm going to go with Rorebeck. |
| 12   A. Well, I have it listed as "Colonial Condo." | 12   Q. Rorebeck? Okay. |
| 13   Q. Okay. | 13   A. But if it's Rosebeck, I'll go with that, |
| 14   A. Maybe it was in the Colonial Country Club. | 14   too. |
| 15   Q. All right. And for what time period did | 15   Q. I'm not suggesting I've got it better than |
| 16   they claim that they were entitled to foregone | 16   you do. |
| 17   rental income? | 17   And that is a lease that begins on |
| 18   A. Beginning October 1, 2009. | 18   September 27, 2009, and ends on September 26, 2009, |
| 19   Q. Okay. And ending in what time period? | 19   a one-year lease. |
| 20   Approximately nine months later? | 20   A. It's -- |
| 21   A. I believe July 2011. | 21   Q. I'm sorry, September 27, 2008 -- |
| 22   Q. About nine months later? | 22   September 27, 2008, through September 26, 2009. |
| 23   A. That's, I believe, more than nine months. | 23   A. That's correct. |
| 24   Q. Okay. All right. Now, did you see any -- | 24   Q. So that lease ended by its own terms on |
| 25   A. Looks like June 2011 was their last included | 25   September 26, 2009, correct? |

Confidential - Subject to further confidentiality Review

Page 266

1    A.  That's correct.
2    Q.  Did you see any evidence that Mr. Rorebeck
3  asked to renew that lease?
4    A.  I don't know.
5    Q.  You didn't see any evidence?
6    A.  I didn't -- I didn't see any evidence.
7    Q.  Okay.  And if we go to the page that
8  immediately follows that lease, I think it's just
9  titled "Lease Agreement," that one, that appears to
10  be a June 4th, 2011 lease with the Fosters leasing
11  from -- or leasing to Ted Koch and Michelle
12  Maciejewski, if I'm saying it right?
13    A.  Yes.
14    Q.  And that is a lease that's dated June 4,
15  2011; is that correct?
16    A.  That's correct.
17    Q.  But when does the lease commence?
18    A.  It's -- actually it's dated -- yeah,
19  June 4th, 2011.
20    Q.  And when does the lease commence?
21    A.  July 14th, 2011.
22    Q.  So they had about a month and ten days'
23  notice before that lease commenced; is that correct?
24    A.  That's right.
25    Q.  If we go to the next document, the lease --

Page 267

1  there we go.  This appears to be a lease where the
2  Fosters went and leased another property.  Would you
3  agree with that?
4    A.  Yes.
5    Q.  And when did that commence?
6    A.  July 13th, 2011.
7    Q.  Okay.  So would you agree with me that it
8  appears that they stayed in their Colonial Club
9  property until they had a new tenant and then they
10  moved out?
11    A.  That's not how I understand it.
12    Q.  Okay.  Why would you see it any differently?
13    A.  Because I understand that this opportunity
14  became available to them, to move into this home,
15  which is, as I recall, closer to the neighborhood
16  that they had been living.
17       And so with that opportunity, they were able
18  to put the other apartment or condominium, excuse
19  me, back on the market to lease, and that's what
20  they did.
21    Q.  Well, they also lowered their -- excuse me.
22  They also were leasing this property for less than
23  they were renting the other one out for; is that
24  correct?  Because they were making money on the
25  transaction?

Page 268

1    A.  No.
2    Q.  Well, let's look at the two leases.  Let's
3  take a --
4    A.  Oh, you're talking about for the one coming
5  in?
6    Q.  Yes.
7    A.  Yeah.  I thought you meant more than the 850
8  that I -- because I used 850 throughout from the
9  prior lease.
10    Q.  Okay.
11    A.  Also, it was my understanding that they may
12  have had an opportunity --
13    Q.  Okay.
14    A.  -- to continue leasing to the original
15  tenant; but needing -- needing a place to live, they
16  did -- they decided not to do that.
17    Q.  And do we have a document that shows that?
18    A.  No.  You -- you had asked me before if there
19  was a document, but I was just telling you what my
20  understanding was.
21    Q.  And what did you base that on?
22    A.  Discussion with Mr. Foster.
23    Q.  Did you make any notes from that discussion?
24    A.  I don't think so.  In fact, I know I did
25  not.

Page 269

1    Q.  All right.  Did you include in your
2  schedules the differential between the lease to the
3  Kochs and what they were paying on the lease from
4  the Walshes?
5    A.  No.
6    Q.  Okay.  Let me -- in fact, if we look at
7  those two, the lease agreement of the dwelling
8  lease, they are making a slight profit; is that
9  correct?
10    A.  I wouldn't call it a "profit."  I would say
11  that they have increased by $55 a month the amount
12  that were incurring.  I don't know that I would call
13  it a "profit" since we know that the lease that they
14  were able to get when they moved out was actually
15  for more.  So it was for $950 a month, so I think it
16  was a prudent move.
17    Q.  But they -- they were net positive on the
18  cash flow between those two events, the two leases?
19    A.  No, they were still negative cash flow.  In
20  one case, they would be paying zero -- $850, were
21  not getting $850, so that would put them at a
22  negative $850.
23       And they would still be in a negative.  They
24  are not positive cash flow.  They are just having to
25  spend less, but I've used only the $850 amount up

Case 2:09-md-02047-EEF-MBN   Document 22380-36   Filed 12/02/19   Page 526 of 802
Case 2:09-md-02047-EEF-MBN   Document 22380-36 Filed 12/02/19  Page 526 of 802
Confidential – Subject to further confidentiality Review
84

Page 270

1  until that point.
2  Q. Okay. And then you stopped?
3  A. What's that?
4  Q. That was only until that point?
5  A. Well, for a while they were in the Colonial
6  as opposed to increasing it for what was -- any
7  potential increase after the 850.
8  Q. Okay. Did the Fosters cease claiming
9  alternative living expenses -- when did they cease
10  claiming alternative living expenses?
11  A. I believe when they moved back into the
12  home.
13  Q. And when was that?
14  A. November 2012.
15  Q. Okay. All right. And you're not including
16  any alternative living expenses beyond that date?
17  A. I think there were maybe some follow-on
18  electric bills that needed to be paid at that point,
19  but that's correct.
20  Q. Okay. One other thing I noted on the
21  Fosters, if I may, since we're on those, they had a
22  charge for storm shutters. Did you see that?
23  A. I think I recall that.
24  Q. I believe it's a company called StormTech
25  Shutters?

Page 271

1  A. Do you have the date handy to help me look
2  through this?
3  Q. Yeah. It looks like it's April 24th, 2008,
4  is what the estimate or contract appears to be.
5  It's in your database as a personal
6  damage expense, and it has a vendor of StormTech
7  Shutters, Inc., if that helps, personal property
8  damage expense, and then the vendor is StormTech
9  Shutters.
10  A. What did you say the date was?
11  Q. Well, according to what I've got here, let
12  me see. I have it included as 10/1/2009 based --
13  I'm sorry, but based on an estimate from 2008.
14  A. Okay. So that's why I didn't find it. So
15  10/1/2009.
16  Q. This is where I was -- we talked yesterday
17  about what dates were used. This is one example I
18  was trying to understand.
19  A. Yes.
20  Q. Doc ID, I think, is 367443 for the document,
21  if you want to see that, at Page 8, I believe of
22  that document.
23  Okay. You have the same document I have.
24  Did you make any determination, Mr. Elkin,
25  as to the propriety of the Fosters including this

Page 272

1  item in their listing of damages?
2  A. I did not.
3  Q. Okay. Would you agree with me that this
4  appears to be storm shutters, exterior storm
5  shutters?
6  A. Yes.
7  Q. And they appear to have been purchased, if I
8  have the date right, in April of 2008?
9  A. That's correct.
10  Q. Okay. And you've included that on your
11  report or your database as one of the items that
12  comes into personal property damage expenses?
13  A. That's correct.
14  Q. Did they tell you anything more than what
15  you have in these documents as to why they were
16  claiming that?
17  A. They told me that they were damaged.
18  Q. Okay. Did they say how they were damaged?
19  A. I believe that they -- my assumption was
20  that they were making the assertion that it was from
21  the Chinese drywall.
22  Q. So they were asserting that exterior storm
23  shutters were damaged by drywall in the house?
24  A. They were asserting that these items on this
25  invoice were damaged.

Page 273

1  Q. But they were asserting it was damaged by
2  drywall?
3  A. That's correct.
4  Q. And you didn't attempt to make any effort to
5  validate or invalidate that assertion?
6  A. That's not within the scope of my analysis.
7  Q. Understood. You did put in the dates -- I'm
8  sorry, if I can go back to your master spreadsheet.
9  A. Yeah. Actually, you were going to ask me
10  about the October 1, 2009 date?
11  Q. Which I assume is the move-out date?
12  A. Since I couldn't be certain as to when those
13  were actually installed, because that was the --
14  when they made their deposit, that and a number of
15  items below it which they were claiming damage on,
16  but I didn't know when they were purchased, but I
17  did know that they were there when they moved out,
18  so I used the date a couple of days before their
19  move-out.
20  Q. And you didn't make any effort to adjust the
21  purchase price from whenever they were installed in
22  April of 2008 to what they might be worth in 2009;
23  you just took the original purchase price?
24  A. That's correct.
25  Q. Full price?

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 527 of 802
Case 2:14-cv-02722-NGG Document 1243 Entered 06/15/21 on FLSD Docket 13/29/15 Page 16 of 84
Confidential — Subject to further confidentiality review

Page 274

1  A.  That's correct.
2  Q.  All right.  Also in the documents for
3  Mr. Foster, they had -- it may be in the same pages.
4  They had some furniture that they were claiming, and
5  let me -- I think you're in the right pages.
6      There's a -- there's an invoice in there from a
7  company called Haverty's -- let me see if I can --
8  Exhibit 5 for Vicki Foster might be the easiest place
9  to find that, I'm told.  And on Page 8, I believe
10  you will find what I'm looking at.  Okay.
11      It looks like -- there's an invoice 277145.
12  It might be a little higher or lower -- I'm sorry.
13  It was back where we had the -- your summary.
14  There's a -- do you know which page?
15      (Discussion off the record.)
16  Q.  The prior document we're on, my apologies,
17  Mr. Elkin.
18  A.  No worries.
19  Q.  There's a lot of documents.
20  A.  I'm trying to remember which document we
21  were -- 033.
22      (Discussion off the record.)
23  Q.  4443?  Okay.  Now, in there, there is an
24  invoice from a company called Haverty's that has an
25  invoice -- a sales invoice number 271745 -- let's

Page 275

1  see, maybe a few more pages in -- okay.  That's
2  fine.  That will work.  There you are.  Okay.
3      Did you understand these to be items that
4  the Fosters were claiming were damaged?
5  A.  Yes.
6  Q.  And where were those items delivered when
7  they were purchased?
8  A.  To some other home.  This was back in 2004.
9  Q.  Delivered to Kentucky?
10  A.  Yes.
11  Q.  At the home that they still had when he went
12  back to work?
13  A.  Yes.
14  Q.  Did they show you any evidence of these
15  items being brought to Florida?
16  A.  Just told me that they were.
17  Q.  And if --
18  A.  I think there may have been pictures of
19  these in other places.  These particular cherry
20  chests, I think there are pictures of them, as well.
21  Q.  Okay.  But did the pictures show a location
22  that you could identify where they were?
23  A.  No.
24  Q.  And if you look at Invoice 2751750, it's
25  also delivered to Kentucky?

Page 276

1  A.  Yes.
2  Q.  But again, you weren't acting as a
3  gatekeeper to say whether these items had actually
4  made it into the Fosters' house in Florida?
5  A.  Not to inspect it, but they told me that
6  they were there, so --
7  Q.  And you just accepted that?
8  A.  Yes.
9  Q.  Did the Fosters also put in a claim for a
10  television set, a Samsung television set?
11  A.  I believe so.
12  Q.  Okay.  And if it helps, I think it's a
13  $2,000 item or thereabouts.  It's listed as personal
14  property damage expense and Samsung 55-inch
15  television.
16  A.  Do you have the date?
17  Q.  The date on this is shown as 9/30/2016,
18  September 30, 2016.
19  A.  It would help if I was in the proper
20  plaintiff.
21  Q.  Ah, that would help indeed.  Okay.  So
22  September 30, 2016, and it's listed as personal
23  property damage expense, Samsung television.  There
24  you are.  Okay.
25      And, Mr. Elkin, did you accept at face value

Page 277

1  that that was an item that had been damaged, or was
2  that an item that was being replaced?
3  A.  This was an item, I believe, that was
4  replaced.
5  Q.  This was -- this was replacement of a
6  prior -- previously damaged item?
7  A.  That's my understanding.
8  Q.  Did they tell you what was actually the
9  original item that they were replacing?
10  A.  A similar TV.
11  Q.  Did you --
12  A.  Actually, when you say did they tell me, no,
13  they didn't tell me.
14  Q.  Did you find any indication of what was
15  being replaced?
16  A.  It was my understanding that this was a
17  replacement of some other TV.  I did not ask if it
18  was a Samsung 50 -- 55-inch television.
19  Q.  Okay.  Have you seen the invoice for that?
20  A.  The invoice for this television?
21  Q.  Yes.
22  A.  I believe I have.
23  Q.  And is there any way you can pull that up,
24  doc ID 365749?
25  A.  Yeah, Page 71.  I believe that that's going

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 528 of 823
Case 2:09-md-02047-EEF-MBN Document 22313-19 Filed 12/05/19 Page 18 of 84
Confidential - Subject to further confidentiality Review

Page 278

1  to be on a credit card and maybe not the invoice,
2  but let's find out.
3      Q.  I think it's an under confirmation, I
4  believe is what I see it as being.  That's Page 71
5  of that document ID, I believe.
6      A.  I don't know why I'm not seeing 365749.
7      Q.  Do you have that number again?
8      A.  I'm sure that's the right number.  There it
9  is.
10     Q.  All right.  Page Number 71, I believe.
11  Okay.  You have the document.  And what did you
12  understand that to be, if you had an understanding?
13     A.  Replacement television.
14     Q.  Okay.  And when did they tell you the
15  original television was damaged, if they told you?
16     A.  I don't recall.  I mean, they didn't tell
17  me.  They just said that this was a -- or the
18  documentation reflected that this was a replacement
19  television.
20     Q.  And this was a 55-inch 9 Series curved
21  4K SUHD TV from Samsung?
22     A.  I'm trying to see where it says Samsung.
23     Q.  If you scroll up a little bit --
24     A.  Here it is, Samsung.  Yes.
25     Q.  Did they even make Samsung curved

Page 279

1  televisions back at the date that they were leaving
2  the property?
3      A.  I don't recall when the curved option became
4  available, but it's possibly not.
5      Q.  I would suggest to you that the Internet
6  suggests somewhere in 2014.  I don't know if that's
7  accurate.
8      A.  That's probably about right, based on my own
9  purchases.
10     Q.  Okay.  So would you --
11     A.  I didn't buy one, but I remember seeing
12  them.
13     Q.  Did you make any determination whether this
14  was an improvement over what they had claimed to
15  have lost?
16     A.  I did not.
17     Q.  So you included it regardless, without any
18  adjustment?
19     A.  That's correct.
20     Q.  And was that consistent with all of the
21  personal property items; you weren't trying to
22  adjust for like kind and quality?
23     A.  That's correct.
24     MR. KALIL:  I think we're done with
25  Mr. Foster, so let's --

Page 280

1      MR. BREIT:  Do you want a break?
2      THE WITNESS:  I could use a break if you
3  don't mind.
4      MR. KALIL:  Why don't we take a break.  This
5  is a good time.
6      THE VIDEOGRAPHER:  The time is 19 after
7  10:00 a.m.  We're going off the video record.
8  Please stand by.
9      (Recess from 10:19?a.m. until 10:34?a.m.)
10     THE VIDEOGRAPHER:  The time is 10:34 a.m.,
11  and we're back on the video record.
12  BY MR. KALIL:
13     Q.  Mr. Elkin, a few more questions just of a
14  general nature, if I may.  Am I correct that you are
15  not offering any professional opinion with respect
16  to any of the Priority Claimants that their lost
17  equity was not based on market declines in the
18  overall prices of real estate?
19     A.  I'm not basing an opinion on what caused the
20  lost equity.
21     Q.  Okay.  And then it's fair to say that you're
22  not offering any professional opinion that defective
23  drywall had any impact on the lost equity
24  calculations?  That's not within the scope of your
25  report?

Page 281

1      A.  That's correct.
2      Q.  Let me ask it as a clean question, then.
3      You're not offering any professional opinion
4  with respect to any of the Priority Claimants that
5  defective drywall is the cause of their lost equity
6  to the exclusion of any other causes?
7      A.  That's correct.
8      Q.  And you're not opining in any way on the
9  cause of any damages claimed by any of the Priority
10  Claimants?
11     A.  That's correct.
12     Q.  Okay.  Let me take you to Mr. Martin --
13  Mr. and Mrs. Martinez, excuse me.  Under the
14  alternative living expenses for the Martinez
15  Priority Claimants --
16     A.  Yes.
17     Q.  -- how many items were included that were
18  labeled miscellaneous?  I'm sorry.  I think it's
19  alternative living.  I'm sorry.  It's personal
20  property damage expense I meant to ask you about.
21  Excuse me.
22     A.  No worries.
23     Q.  Thank you.  Can we do a sort just for
24  miscellaneous?
25      Now, I see you've got two categories.  You

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 529 of 802
Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/03/19 Page 4 of 84
Confidential - Subject to further confidentiality review

Page 282

1  have miscellaneous, and then you have miscellaneous
2  removed from revised because you did the revised
3  spreadsheet for the Martinezes?
4      A.  That's correct.
5      Q.  How many were removed from miscellaneous?
6  Was it just the one entry?
7      A.  Just that one.
8      Q.  Okay.  Leaving that aside, how many are
9  still in for miscellaneous?
10     A.  59.
11     Q.  59.  And what is the total dollar value of
12  those?
13     A.  $26,167.
14     Q.  Okay.  And is it possible to sort those by
15  dollar amount so we can see what's in there?
16     A.  You want it largest to smallest?
17     Q.  Largest to smallest is probably easy.  Okay.
18  All right.  If I can direct you to the Lowe's entry
19  that is for $1,272, do you know what that is for?
20  If it helps, I believe it's a June 9th, 2013 entry.
21     A.  I'll find it.  It's just --
22     Q.  Sure.
23     A.  It's in the revised.
24     Q.  Okay.  I think that's it.
25     A.  I believe it's for a refrigerator.

Page 283

1      Q.  Okay.  And so that was a refrigerator in
2  2013.  Was that a replacement of a prior
3  refrigerator, as you understood it?
4      A.  I believe so.  I believe they -- I believe
5  they testified that they had to replace a
6  refrigerator on a number of occasions.
7      Q.  On a number of occasions.  Okay.  How many
8  refrigerators did they include in their damages?
9      A.  I'm not certain.
10     Q.  Well, we've got the one in -- June 9th,
11  2013?
12     A.  I have the -- that's the one we just looked
13  at; that's correct.
14     Q.  Okay.  If we go back to their personal
15  property damage expenses and we search for "fridge,"
16  will we see any other entries?
17     A.  I believe we'll see the one they brought
18  into the home, but let me look.  We see two other
19  entries.
20     Q.  And what are the dates of those?
21     A.  One of them is April 1st, 2007, and the
22  other is August 20th, 2007.
23     Q.  Okay.  And what date did they move into
24  their property?  I have it in -- on your Exhibit 12.
25     A.  They moved into the property in September of

Page 284

1  2008.
2      Q.  So they're claiming they had two separate
3  refrigerators?
4      A.  I believe they brought two refrigerators
5  into the home.
6      Q.  Okay.  And then they replaced one in 2013,
7  we saw before.  Do we also have another entry on
8  August 22nd, 2007 under their personal property
9  expenses?  If the amount helps, I have it as $1,544.
10     A.  What was the date you said?
11     Q.  August 22, 2007.  I think -- it's just three
12  lines above what's highlighted.  It's labeled as
13  miscellaneous, the fifth -- there we go.  Do we know
14  what that is?  From the note, it appears to be
15  another refrigerator?
16     A.  That's what the note says; that's correct.
17     Q.  So am I correct that they have a
18  refrigerator they bought on April 1st, 2007, before
19  they moved into the property, another one they
20  purchased on August 20, 2007, also before they moved
21  into the property, a third one on August 22, 2007,
22  also before they moved into the property, and then
23  one that they purchased on June 9, 2013, and they're
24  claiming all four?
25     A.  It appears that way.

Page 285

1      Q.  Okay.  And there was no process set up to
2  look for that type of duplication?  Let me ask you a
3  different question.
4      A.  The process was set up to identify
5  duplications, but not necessarily of the same item.
6      Q.  Fair enough.
7      A.  Or more to make sure that we weren't
8  including the same item.
9      Q.  But you weren't looking to find multiple
10  instances of similar items, even in close proximity
11  in time?
12     A.  That's correct.
13     Q.  Okay.  You had mentioned with Etter that
14  there was one other change that you had made this
15  morning, and I don't think we followed that up
16  because we went into Martinez.  Maybe just get that
17  while we're here.  I think you said a change in
18  private property --
19     A.  I think it was when I was reviewing the
20  Etter personal property --
21     Q.  Uh-huh.
22     A.  -- it appeared that there were a number of
23  things that would probably fall better into the
24  remediation category, rather than the personal
25  property category.  And I believe there were also

Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 530 of 802
Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 20 of 84
Confidential - Subject to further confidentiality Review

Page 286

1   some expenses there that related to screening -- and
2   I don't mean like patio screening; I mean like
3   testing, probably --
4      Q.   Okay.
5      A.   -- that were in personal property damages,
6   and if they belonged, they probably should be in
7   other damages.
8      Q.   So you put them in a different bucket, so to
9   speak?
10     A.   I would put them in a different bucket.
11     Q.   Fair enough.  All right.  Let me go to
12  Mr. Kevin Rosen, and I'm going to mark this document
13  as Exhibit 16 to your deposition.
14        MR. KALIL:  Counsel.
15        (Elkin Exhibit 16 was marked for
16  identification.)
17  BY MR. KALIL:
18     Q.   And I'd ask you if that's part of your work
19  papers or what was provided to you.
20     A.   I believe it was, but I'll confirm that for
21  you.
22     Q.   Thank you.
23     A.   Yes.
24     Q.   Okay.  Now, if you'll go to two pages from
25  the end, almost where you were, do you see a Form

Page 287

1   4868 Application for Automatic Extension of Time to
2   File US Individual Tax Return for tax year 2009?
3      A.   I do.
4      Q.   And you're familiar with those?
5      A.   Yes.
6      Q.   And in those applications, you're required
7   to estimate your taxes for the year?
8      A.   Yes.
9      Q.   And what was the estimate of taxes for 2009
10  that the Rosens did when they requested their
11  extension?
12     A.   $110,321.
13     Q.   Okay.  And those have to be filed by the due
14  date for your tax return, so by April of the year
15  following, so by April 20 -- 2010?
16     A.   With some flexibility depending on the
17  circumstances, but that's approximately correct.
18     Q.   So it's fair to say from that, we can
19  ascertain at least of -- no earlier -- somewhere in
20  2010, that they had estimated their 2009 tax
21  liability as $110,000 for purposes of requesting an
22  extension?
23     A.   If -- that's what this form shows; that's
24  correct.
25     Q.   Can I take you to the first page of the

Page 288

1   document, and that appears to be their Form 1040
2   2009 tax return?
3      A.   That's correct.
4      Q.   And on the second page, is that dated?
5      A.   Yes.
6      Q.   And that's September 21, 2010.
7      A.   That's what it says, yes.
8      Q.   So that would be some months later, right?
9      A.   Yes.
10     Q.   And what do they show as their tax liability
11  for 2009 as of September?  I believe it's on Line
12  60.
13     A.   Zero.
14     Q.   Okay.  And do you see a casualty loss
15  deduction on this form?
16     A.   Yes.
17     Q.   And what is the amount of that?
18     A.   The amount of the deduction is $553,400.
19     Q.   Okay.  And if we go to -- see how many pages
20  this is.  KROSEN - 000509 is the Bates number on the
21  bottom.  You have a Form 4684?
22     A.   Yes.
23     Q.   And that is casualties and thefts; is that
24  correct?
25     A.   Yes.

Page 289

1      Q.   And is that the Rosens taking losses
2   associated with Chinese drywall?
3      A.   Yes.
4      Q.   And is that where the $553,400 comes from?
5      A.   Yes.
6      Q.   Is it fair to say that without having to do
7   any more work from these documents alone, we can
8   tell that the Rosens saved $110,000 on their 2009
9   taxes by the casualty loss?
10     A.   I don't think it's fair to say that we know
11  that.  I don't know what other adjustments may have
12  come up or when they filled out -- since they filled
13  out the extension.  If -- there may have been other
14  items that might have also reduced it, but I would
15  say it's -- a significant portion of that would have
16  been this --
17     Q.   Okay.
18     A.   -- not knowing exactly what they had built
19  in to determine the 110,000.
20     Q.   If we go to Page 525 of that same exhibit,
21  Bates Number 525 --
22     A.   Yes.
23     Q.   -- is there a statement from the taxpayers
24  that they're claiming the casualty loss on that form
25  of 553,000 for that -- for losses associated with

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 531 of 802
Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 6 of 84
Confidential - Subject to Further Confidentiality Review

Page 290

1  Chinese drywall?
2    A.  Absolutely.
3    Q.  Okay.  So when we talked about it yesterday,
4  I believe we had left it that it might take some
5  work to determine whether or not a particular
6  Priority Claimant received a tax benefit, federal
7  income tax benefit, as a result of Chinese drywall
8  casualty deduction, but here we have an actual
9  example.
10    A.  Yeah.  And I don't know if that's
11  characterizing my testimony exactly right from
12  yesterday, because I think we were talking both
13  about the benefit they may have gotten and the taxes
14  they may have to pay upon recovery of those amounts,
15  which are certain and that they would, and whether
16  or not one could even be larger than the other.  So
17  I don't recall specifically stating that.
18    But even in this case, we can see that they
19  took a deduction.  We might not be able to
20  determine, without a little bit of work at least,
21  what their taxes would be otherwise; although I
22  think if I were going to undertake that exercise
23  with this particular tax return in front of me, I
24  could probably do that.
25    Q.  I was going to say, it's within the scope of

Page 291

1  the work that your firm does?
2    A.  I could do that.
3    Q.  But that savings, whatever amount they might
4  have achieved, is not reflected in your schedules
5  for the Rosens' damage; is that correct?
6    A.  Because I don't think it's a -- it's an
7  element that can be considered without taking into
8  account the taxes that they would have to pay if
9  they get recovery on these amounts.
10    Q.  My question is:  It's not included, though?
11  Is that a "yes," it's not included?
12    A.  It's not deducted.
13    Q.  Well --
14    A.  We -- yesterday we had this same thing.
15  It's -- a deduction for their tax benefit in two
16  thousand -- for tax year 2009 has not been made in
17  my calculations.
18    Q.  That's what I was looking at.  Thank you.
19    I'll try to move through some of the little
20  buckets.  Janet Avery, if I can direct you to that,
21  did you include in her schedule -- sorry.  Did you
22  include in the schedule of expenses for Janet Avery
23  any moving expenses?  I believe it's under --
24    A.  Yes.
25    Q.  -- 1.3A.

Page 292

1    A.  Yes.
2    Q.  And how much was that?
3    A.  $3,500.
4    Q.  Did you see Ms. Avery's deposition testimony
5  December 7th, 2018?
6    A.  I believe I did.
7    Q.  Did you see in there that she said the
8  moving expenses, she couldn't remember what they
9  were for?
10    A.  I don't know if she said she couldn't
11  remember what they were for or how much they were.
12    Q.  Couldn't remember how much they were.  Okay.
13    A.  I believe.  If --
14    Q.  Okay.
15    A.  -- I refer to the deposition, I might be
16  able to --
17    Q.  I believe it's -- it's Page 93 to 94 of her
18  deposition.  And you're absolutely correct.  She
19  couldn't recall what it was for.
20    If I could direct you to the top of Page
21  94 --
22    A.  I'm starting on Page 90 -- 91, which is
23  where she begins speaking about it.
24    Q.  That's fine.
25    A.  She indicated that she has no receipts for

Page 293

1  the moving expenses.
2    Q.  Okay.
3    A.  And then it looks like she gets a little
4  confused, saying "yes" when she meant "no" and "no"
5  when she meant "yes."
6    Q.  And then she's asked:  What did the 3,500
7  moving expenses --
8    A.  She -- so she -- at that time, she said
9  she --
10    Q.  Said she --
11    A.  -- could not remember at that point.
12    Q.  Right.  And then on the next page, she's
13  asked:  Do you recall what you left behind in the
14  home as you vacated it?
15    And her answer is:  Everything I had in the
16  house, all my furniture, everything that was there.
17  Pots, pans, dishes, you name it, it was there.  The
18  only thing I took out was my clothes.  Actually, I
19  took some dishes out, too, because they were
20  washable.
21    Is that correct?
22    A.  I see that.
23    Q.  Did that -- that testimony didn't cause you
24  to question whether a $3,500 moving expense was
25  appropriate?

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 532 of 802
Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 13/02/19 Page 22 of 84
Confidential - Subject to further confidentiality Review

Page 294

1  A.  I didn't have any more information.  So I
2  believe I've marked that very clear, that it's just
3  coming from the SPPF, and I have no other backup for
4  that.  And I'm not weighing one way or another the
5  credibility of the witness's testimony for the
6  $3,500.
7  Q.  Okay.  When you say you marked -- you marked
8  that, in which section of the report?
9  A.  On the -- in the supporting document column,
10  it says SPPF, which means -- it could have also, I
11  guess, made reference to the deposition, but she had
12  listed the $3,500 on her testimony through the SPPF,
13  so it's just making reference to that, no receipts
14  or anything else.
15  Q.  But it doesn't say no receipts in the
16  summary, at least in your damage summary, does it?
17  A.  No, it doesn't.
18  Q.  Did Ms. Avery also say that she had stopped
19  paying her mortgage?  Do you recall that?
20  A.  I believe she may have, but I don't want to
21  confuse her with anybody else, so --
22  Q.  I think it's Page 95 she talks about that.
23  A.  I believe that's correct.
24  Q.  Okay.  The fact that she stopped paying her
25  mortgage is not something that factored into your

Page 295

1  lost equity calculations, is it?
2  A.  No.
3  Q.  And that would be true for any of the
4  Priority Claimants who stopped paying their
5  mortgage; that would not be something taken into
6  account in your lost equity calculations?
7  A.  It would be taken into account in that they
8  would not have continued to build equity through
9  those payments, which would have happened if they
10  made them.  And that's the only way it would impact
11  that calculation, except to the extent that it might
12  have caused them to be out-of-pocket any amount at
13  closing, through foreclosure, short sale, or
14  anything else, because then that amount would be --
15  if they got money back or if they had to lay out
16  money, that would have gone into that calculation,
17  as well.
18  Q.  But it wasn't something that would have
19  impacted whether or not to do a lost equity
20  calculation?  It wasn't a causal event?  You didn't
21  consider whether somebody had voluntarily stopped
22  paying a mortgage as having any impact on whether
23  that calculation should be done?
24  A.  Well, to the extent you say voluntarily,
25  it's sort of a characterization that may or may not

Page 296

1  be, but the fact that they did or didn't, whether
2  they did it voluntarily or not --
3  Q.  Let me make a clean question.
4  A.  -- I believe was more appropriately dealt
5  with not through the equity calculation, because
6  that wasn't the intention of the equity calculation.
7  Q.  So fair to say that where there's -- for
8  whatever reason, if a Priority Claimant stopped
9  paying their mortgage, that did not impact whether
10  you did an equity calculation, lost equity
11  calculation?
12  A.  I think it was directly related, because I
13  believe for everybody that stopped making a payment,
14  there was either a foreclosure or short sale.  And
15  for those Priority Claimants, I did an equity
16  calculation for anybody that sold either through
17  sale in mitigation, short sale, or foreclosure.  So
18  it might not be a direct reason, but I think it all
19  fits together in the same package.
20  Q.  Is it fair to say that the reasons for them
21  stopping making their payments was not something you
22  considered, just the fact that they stopped making
23  the payments?
24  A.  Yes.
25  Q.  Do you recall anyone else who stopped making

Page 297

1  payments?  Does Miranda ring a bell?  Do you
2  recall -- for Mr. Miranda, you have a lost equity
3  calculation.  And do you remember when he stopped
4  making his payments on his mortgage?
5  A.  I don't remember the date.
6  Q.  Okay.  I believe it's on Page 53 of his
7  deposition at Line 11, and I can wait for you to get
8  there, on Page 53.
9  A.  January of 2009.
10  Q.  Okay.  And when did he first become aware of
11  the Chinese drywall?  On your -- on your damage
12  summary, I think I have it as January '10.
13  A.  That's correct.
14  Q.  So this was a year before he became aware of
15  the Chinese drywall?
16  A.  Yes.
17  Q.  Okay.  And that didn't factor into whether
18  you -- that did not change your analysis in any way?
19  A.  No.
20  Q.  Give me one second, Mr. Elkin.  I'm sorry.
21  A.  No worries.
22  Q.  Did any of the Priority Claimants state that
23  they were not seeking damages for repair or
24  replacement of personal property?  Does that ring
25  any bells?

Confidential -- Subject to further confidentiality Review

Page 298

1    A.  Did any of them state that they were not?
2    Q.  Yes.
3    A.  I believe so.
4    Q.  Okay.  Does anyone come to mind?
5    A.  I believe it was in the deposition of
6  Deborah Hooker.
7    Q.  Okay.  At Page 35.  You have a very good
8  memory, Mr. Elkin.
9    A.  Wrong depo.  I have Mr. Deeg's depo by
10  accident.
11    Q.  We can probably go to her --
12    A.  I've got it.  It will take two seconds.
13  Maybe it was three.  Okay.  I'm there.
14    Q.  Do you see on Page 35, she's asked -- here
15  it is -- on Line 10:  Are you seeking any damage for
16  the repair of that personal property appliance?
17      And she says:  No.
18      Are you seeking any damage for the
19  replacement of that personal property or appliance?
20      And she says:  No.
21      Did you factor into your analysis any
22  statements by a Priority Claimant that they were not
23  seeking reimbursement for replacement of personal
24  property when they said so in their depositions?
25    A.  This is the only time I recall it happening,

Page 299

1  and I did specifically discuss this with her
2  counsel.
3    Q.  Okay.
4    A.  And I was advised by her counsel that
5  whether or not she could was a legal -- a legal
6  question.  It's clear what she says here in her
7  deposition.  As to whether she understood that or
8  not is not -- is not my purview, but I was explained
9  by counsel that the inclusion or exclusion of that
10  would be a legal matter.
11    Q.  So what did you do?
12    A.  It's in there.
13    Q.  Okay.  So the Priority Claimant said she
14  wasn't seeking it, counsel said she was, and you put
15  it in your report?
16    A.  That's correct.
17    Q.  Okay.  Is it noted in your details in your
18  report proper that there was a disclaimer by the
19  Priority Claimant of seeking that reimbursement or
20  expense?
21    A.  Probably not.
22    Q.  Okay.  Fair enough.  Minor one.
23      Can I direct you to Mr. -- the Feldkamps?
24  They have some rental payments they've included, and
25  I believe it's on your Schedule 5.1.

Page 300

1    A.  Yes.
2    Q.  Am I correct that you've included the $375
3  application fee and deposit that they made on April
4  13th, 2012 in your -- in your damage calculation?
5    A.  That's correct.
6    Q.  And the $1,500 check in April 26, 2012 for
7  first and last month's rent?
8    A.  That's correct.
9    Q.  And also the $900 check made -- paid on
10  August 29th is included?
11    A.  August 27th?
12    Q.  I have it as August 29th.  I can show you
13  the document.  I don't know if you can find it that
14  way.  I'll have to hand that to you.
15    A.  I'm wondering if perhaps I just have it
16  miscoded.
17    Q.  Okay.
18    A.  Let's see if it's the same one.  No.  I'm
19  sorry.  It's 2016.  I thought we were --
20    Q.  Ah.
21    A.  -- at the beginning.  No, this is not
22  included.
23    Q.  It's not included?
24    A.  No.
25    Q.  Okay.  Fair enough.  Is there a different

Page 301

1  check that's on your schedule for August 27?  I'm
2  sorry.  This is 2016.  You're right.  It's not.
3  We'll leave that.
4      Give me one second, Mr. Elkin.  Let me get
5  organized here.
6      Did you include a rental payment from August
7  of 2015 for the Feldkamps in your schedule?
8    A.  Yes.
9    Q.  Do you know when they vacated the rental
10  property?
11    A.  September 24th, 2015.
12    Q.  Okay.  So it would appear, then, if they did
13  a first and last month's deposit and they paid a
14  payment at the end of August 2015, that they
15  double-paid for the last month?
16    A.  Well, if they didn't move in until September
17  24th, and there's no payment here for September
18  24th, so they would not have double-paid the rent.
19  And the question is the deposit.  And I don't
20  remember if it's this claimant or not, but I do
21  recall a claimant that did not get back all of their
22  deposit.  I don't remember if it was this one or
23  not.
24    Q.  Is there any reference to that in your
25  report?

Page 302

1    A.  No.
2    Q.  Okay.  A general question about lost equity
3  and HUDs.  Did you include -- let me see if I can
4  frame this the right way.
5      If a Priority Claimant sells a property, and
6  you're doing a lost equity calculation, would you
7  include charges for real estate taxes as a return of
8  money to them or not?  I'm not sure if I'm making
9  that clear.  Let me see if I can do a little better.
10     Let me direct you, if I may, to Mr. Marin --
11  or the Marins.  When you calculated the cash paid to
12  the claimants upon the sale of their home from the
13  HUD, did you take into account any charges for real
14  property prorations?
15     A.  No.
16     Q.  So you just looked at the cash that was paid
17  to them?
18     A.  That is correct.
19     Q.  So if there was a charge for real property
20  prorations, even though they may have been
21  responsible for it because -- from having occupied
22  the house, you didn't treat that as something that
23  they got a benefit for?
24     A.  No.
25     Q.  Would you agree --

Page 303

1    A.  Or can you -- can you repeat that?
2    Q.  Sure.  Let me -- let me see if I can do it.
3      Do you agree that to the extent one of the
4  Priority Claimants sells real estate, and there's a
5  prorated charge on a HUD for real estate taxes or
6  insurance up until the date of closing, that those
7  charges should have been considered expenses
8  associated with living in the property and shouldn't
9  be deducted from the amount they received back in
10  calculating lost equity?
11     A.  I think it would depend on which way the
12  allocation goes.  If you are --
13     Q.  If they're sellers.
14     A.  If they're sellers and the charge is at the
15  end and if it relates to taxes during a time period
16  that they lived in the house, as opposed to the
17  allocation that relates to taxes that were already
18  paid that related to a period that they didn't live
19  in the house, I would agree.
20     Q.  Okay.  And did you check each of your lost
21  equity calculations to see whether you properly
22  allocated the tax prorations?  And I'll direct you
23  to -- on this one, it's Lines 1303 -- Line 1303 for
24  the Marins.  And as I read it, it looks like they
25  are being charged for 2011 real estate taxes even

Page 304

1  though this closing is in February 2012.
2      And my question, sir --
3    A.  Yeah.  I was going to ask you to repeat the
4  question.
5    Q.  My question is:  Would you agree that with
6  regard to the Marins, a charge for 2011 real estate
7  taxes, when they lived in the property for all of
8  2011, should not have been considered lost equity?
9  In other words, your figure for lost equity should
10  have been reduced by that amount?
11     A.  Yes.
12     Q.  And the same would be true for any charges
13  for prorations within the year of sale for the time
14  that the sellers had occupied the property, like
15  water bills --
16     A.  I'd want to look at it on a case-by-case
17  basis, but probably.
18     Q.  For instance, in that one, in the Marins, if
19  we go to Line 1304, there's also a charge for a
20  water bill.
21     A.  $232.14.  It's not clear what period that
22  relates to, but I suspect that would have been a
23  water bill that should have been the responsibility
24  of the Marins, and that's why it's being deducted.
25     Q.  And so should --

Page 305

1    A.  And I would agree that that's not -- that
2  $232 should not be a -- an addition to the equity
3  calculation.
4    Q.  So their lost equity calculation, all other
5  things being equal, should be reduced by that
6  amount?
7    A.  By $232.
8    Q.  And similarly, on Line 511 on the first
9  page, the proration for county taxes in 2012 up
10  through the date of sale, should also be a reduction
11  to your calculation of lost equity?  And I'll orient
12  you to the top of the page, the settlement date
13  being February 17th, 2012.
14     A.  I'm just wondering why those two numbers are
15  so close.  I suppose it could be a coincidence, the
16  $232 and the $232, but assuming that they are
17  separate things, I think I would agree with that.
18     Q.  Okay.  Am I correct that that is not
19  properly calculated, then; that the Marins' lost
20  equity calculation is incorrect at least incorrect
21  to that extent?
22     A.  It does reflect that.  It still corrects --
23  it still reflects the same cash flow, but that cash
24  flow should likely recognize that certain amounts
25  that were -- that were deducted from their amount --

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 535 of 802
Case 2:09-md-02047-EEF-MBN Document 21813-15 Filed 09/13/18 Page 25 of 84
Confidential — Subject to further confidentiality review

Page 306

1  the $72,000 should be more of a carrying cost than
2  an equity calculation.
3     Q.  It would be no different than if somebody
4  had cashed out a mortgage, other than orders of
5  magnitude?  In other words --
6     A.  It's a different thing, but --
7     Q.  In terms of how it would impact actual cash
8  flow or what they are responsible for, leaving --
9     A.  Well, the answer is -- I mean, the simple
10 part of it is, if they had paid this in advance of
11 this, not that you can, then it wouldn't have been
12 reduced from cash, and they would have gotten a
13 little bit more, and then the little bit more would
14 have reduced their equity.
15    Q.  Right.  But you could have paid the 2011
16 taxes?
17    A.  That's -- they could have done that.
18    Q.  And in which case, all they did by not
19 paying it is they effectively borrowed from the
20 county, if you want to call it that?  They paid the
21 county like -- they weren't late.
22    A.  It's not due -- it wouldn't --
23    Q.  It's not due until --
24    A.  -- it's not due until 2012, so I'd not call
25 it borrowing from the county.  I would just say that

Page 307

1  that allocation for 2011 has an -- has that impact.
2     Q.  And nonetheless, the proceeds they received
3  satisfied an obligation that was theirs?
4     A.  Yes.
5     Q.  So it's the same as having cash come into
6  their pocket for that purpose?
7     A.  Similar.
8        MR. KALIL:  Okay.  Give me one second.
9     Q.  Can I direct you to Exhibit 17, Michael and
10 Robyne Rosen?
11    A.  Yes.
12    Q.  And in the section personal property damage
13 expense on 17.1, there is an extensive list of items
14 for -- I'm not going to say this right -- Turkell &
15 Gervis Design.
16    A.  Yes.
17    Q.  Do you know what the total amount for
18 Turkell & Gervis Design is?
19    A.  I believe that amount is $96,637.
20       (Elkin Exhibit 17 was marked for
21 identification.)
22 BY MR. KALIL:
23    Q.  I'm going to show you what I've marked
24 Exhibit 17.
25    A.  I've included in that number something that

Page 308

1  was just for Gervis Design, a small amount.
2     Q.  You have in front of you Exhibit 17 which I
3  believe is a printout of the proposals of the items
4  referenced there?
5     A.  Without going line by line, I recognize this
6  as what I believe to be that.
7     Q.  Okay.  And so that $96,637, with the --
8  there is one at the end, Gervis, G-e-r-v-i-s, which
9  appears to be different.
10    A.  Would you like me to exclude that one from
11 this?
12    Q.  If you won't mind, just so we can get an
13 idea about it.
14    A.  Sure.
15    Q.  So if we -- if we limit it to Turkell &
16 Gervis Designs, not --
17    A.  $96,437.  Sorry.  I cut you off.
18    Q.  I've done it to you several times.
19       For supporting documents you state for that,
20 is it consistent with the proposal?
21    A.  Yes.
22    Q.  And you also state proof of payment, no?
23    A.  That's correct.
24    Q.  Did you not ask for proof of payment on
25 that?

Page 309

1     A.  All -- this was all that was available to
2  me.
3     Q.  Did you not have any protocol in place to
4  say, for significant expenditures, before they put
5  in the listing, they should have a proof of payment
6  or some further identification?
7     A.  I would like, in the ideal world, to have
8  proof of payment.  They weren't able to give me any,
9  or none had been produced.  And so their testimony
10 was that they had pulled out from a big book of
11 proposals only the things they had ordered, followed
12 through, and paid for.  Their testimony was that
13 they did, in fact, pay for this, and I didn't have
14 any other evidence of that.
15       MR. KALIL:  We're getting close.  Can I
16 suggest we take five minutes to see what I have
17 left?
18       THE VIDEOGRAPHER:  The time is 11:21.
19 Please stand by.
20       (Recess from 11:21?a.m. until 11:37 a.m.)
21       THE VIDEOGRAPHER:  The time is 11:37.  We're
22 back on the video record.
23 BY MR. KALIL:
24    Q.  Mr. Elkin, just to follow up your
25 communications regarding the proposal for the

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 536 of 802
Case 2:14-cv-02722-MBN Document 22380-36 Filed 12/02/19 Page 1 of 84
Confidential - Subject to further Confidentiality Review

Page 310

1  Rosens, did you actually call the Rosens and inquire
2  if they had any proofs of payment?
3      A.  No.
4      Q.  But you had the ability to call them?  You
5  had their phone number?
6      A.  I had their phone number.
7      Q.  In instances -- did you call the vendor,
8  Turkell & Gervis, if I'm saying it right?
9      A.  No.
10     Q.  Did you try and reach out to anybody else to
11  see if you could find verification for that 90,000
12  plus dollars?
13     A.  I discussed it with counsel, and I don't
14  know what counsel did in order to seek that
15  information, but they weren't able to provide it.
16     Q.  But you relied entirely on counsel to see if
17  there was anything else to be found?
18     A.  That's correct.
19     Q.  Is that consistent with any other instances
20  when you didn't have proofs of payment?  Did you
21  rely on counsel to find the proofs of payment, if
22  they existed?
23     A.  Well, I mean, I relied on them to
24  communicate with their client.  I would give them
25  ideas of the types of things that I was looking for.

Page 311

1  I'm just trying to think if there is any example.
2      It would be uncommon, under these
3  circumstances, to try to connect with third parties
4  directly.  So I don't -- I don't -- can't think of
5  an instance where I did anything differently, other
6  than the two phone calls that we've already spoken
7  about.
8      Q.  So two of the 20 Priority Claimants you or
9  your office spoke with directly, and 18 you didn't?
10     A.  I didn't.
11     Q.  Okay.  So you didn't personally?
12     A.  No.
13     Q.  And to your understanding, nobody else in
14  your office spoke to any of the others?
15     A.  That's correct.
16     Q.  All right.  When you were requesting
17  information in regards to the proofs of payment for
18  the Turkell & Gervis Design proposal, was that
19  request in writing?
20     A.  No.
21     Q.  Would it be by e-mail?
22     A.  It would have been telephonic.
23     Q.  Did you make any notes of those telephone
24  calls?
25     A.  Not that I can recall.  If I did --

Page 312

1  typically what I do is, while I'm on the work paper
2  that I'm dealing with, I'm updating things on there,
3  so I'm not necessarily taking notes, but if I did,
4  maybe it was on a yellow sticky, just to remind me
5  of something or just remind me of the call, but not
6  notes specific to the call, no.
7      Q.  Were any requests for supporting
8  documentation to counsel put in writing?
9      A.  I don't -- I'll tell you what we did.  I
10  don't know if it falls in the category exactly, but
11  at one point very early, we were tracking whether or
12  not we had what I'll call the core -- the initial
13  core documents, which was the interrogatories, the
14  SPPFs, maybe even the depositions at that point.  So
15  we were trying to get all that preliminary stuff.
16     I think we had made a matrix, a schedule
17  that had Xs, here's what we have, here's what we
18  don't.  And I do think we may have sent that to
19  probably Natalie, and I don't recall what happened
20  with it.
21     But that's the only thing that I recall
22  where there was a communication, an actual written
23  communication, about what we have or didn't have.
24     Q.  And by written, you're including electronic?
25     A.  Yes, yes.

Page 313

1      Q.  Do you have a copy of that still?
2      A.  I'm sure I have it somewhere.  I don't -- I
3  don't have it with me today, I don't think.
4      MR. KALIL:  Can we request it to be provided
5  in due course?
6      MR. BREIT:  It can be requested.  Whether we
7  comply will be a decision we make at a point
8  after you request it.
9      MR. KALIL:  That's fine.
10     MR. BREIT:  We'll decide later.
11 BY MR. KALIL:
12     Q.  Mr. Elkin, with regard to the 20 Priority
13  Claimants, did you single any out for special or
14  different treatment, greater inquiries, or anything
15  of that nature?
16     A.  When you say single them out, I mean, I
17  think they singled themselves out by having either
18  more complications or more information or a lot of
19  documents.
20     So I didn't, you know, go into any
21  particular one saying I'm going to focus on this one
22  because of this, but by the nature of the
23  transactions or the claims or the information
24  available, some required a lot more attention than
25  others.

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 537 of 802
Case 2:09-md-02047-EEF-MBN Document 20741-36 Filed 08/13/16 Page 2 of 84
Confidential - Subject to further confidentiality Review

Page 314

1    Q.   And I take it that -- yeah, so if there is a
2  greater volume, you would spend more time on certain
3  ones, but what I'm really getting at is did you have
4  any different procedures that you applied to certain
5  of the Priority Claimants versus others, or were the
6  procedures uniform?
7    A.   I think the procedures were pretty uniform.
8  I think they were different in that, once something
9  had more complications, we probably did something
10  that we didn't need to do on other ones, but there
11  wasn't a prescribed "let's do this on these and
12  let's do this on those."
13       I mean, one of the differences would be we
14  only did equity calculations on affected homes that
15  were sold.
16    Q.   Okay.
17    A.   So that would be maybe an example.  I'm not
18  sure what you have in mind, but other than that.
19    Q.   Let's take that as an example.  With the
20  homes that were sold, did you make any inquiries
21  specifically targeting whether there were any other
22  factors unrelated to defective drywall that were the
23  cause of those foreclosures or short sales?
24    A.   No.
25    Q.   I didn't mean to cut you off.  You had

Page 315

1  another piece.  I just wanted to get that question.
2       Anything else that was different?
3    A.   Not really.
4    Q.   When we started this morning, you told me
5  you'd found some additional information on Martinez.
6  Are you planning on doing any further amendment to
7  the Martinez section of your report?
8    A.   I'll have to ask counsel what they intend
9  for me to do.
10    Q.   And as you sit here today, do you believe
11  you've been asked to do anything further, or not?
12    A.   Not yet.
13    Q.   How about with regard to Etter?
14    A.   Same answer.
15    Q.   Okay.  As you sit here today, are you
16  planning on going back and doing any further work on
17  your report based on any of the questions we've had
18  in the last two days?
19    A.   That will be a discussion I'll have with
20  counsel.
21    Q.   Well, let me just ask you:  What is your
22  understanding today is the scope of your work --
23  does it include any further work based on these
24  discussions?
25    A.   I don't know yet.

Page 316

1    Q.   Okay.  Is it fair to say that as we're
2  sitting here today, we have the full and complete
3  opinions that you've expressed to date?
4    A.   Yes.
5    Q.   And there's nothing that we haven't asked
6  about or talked about that's not reflected in your
7  report as way -- by way of an opinion that you have
8  as of this date?
9    A.   By way of an opinion, although every opinion
10  is made up of perhaps many opinions, so to the
11  extent I have things documented about how I've
12  treated them, ever so small as some of them might
13  be, we may not have talked about them today, but
14  they are incorporated into the schedules that I
15  have.
16    Q.   And they're incorporated into the documents
17  we've been provided?
18    A.   Yes.
19    Q.   Do you -- as you sit here today, do you
20  believe any changes need to be made to your report
21  to more accurately reflect your opinion?
22    A.   I think there are a few things that could be
23  changed.
24    Q.   What needs to be changed?
25    A.   On the prejudgment interest calculations, I

Page 317

1  don't know that I would change them, because I
2  really never intended them to be a full calculation,
3  but for those things that we've noted that obviously
4  don't make sense, I would probably make some type of
5  an adjustment for that.
6    Q.   What would you include in that category,
7  things that don't make sense?
8    A.   Some of the things that I marked as the
9  damage date before they moved into the home, that's
10  the primary thing that I'm thinking about right now.
11  I would reduce the Martinez's RV by the --
12    Q.   Residual value by the sale value?
13    A.   -- by the sale of -- I think it was $2,000,
14  even though they didn't know exactly when.  I'm not
15  sure when I would do the timing of that.
16       And I think there are just a number of
17  things that came up.  I think you brought up a good
18  point about the real estate taxes on the closing
19  statement.  So I would want to think about that a
20  little bit more, but that's a potential adjustment.
21    Q.   If there were any similar treatment, you
22  would want to adjust it?
23    A.   I might.  I need to look at the
24  circumstances, because there could be corresponding
25  differences the other way.

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 538 of 802
Case 2:14-md-02047-MBN Document 223-13 Filed 06/02/16 Page 27 of 84
Confidential — Subject to further Confidentiality Review

Page 318

1    I would want to -- I'd probably -- there's a
2  couple of categories that we talked about before
3  that I think -- that are better suited in a
4  different category, but it wouldn't change the
5  calculation, I don't believe.
6      That's what's coming to mind right now.
7      Q.  What about the treatment of the payments,
8  whether they're from Chinese drywall settlements,
9  insurance proceeds, or otherwise, the million-plus
10  dollars we added up yesterday, do you think that
11  needs to be factored differently?
12     A.  I think my report still says exactly how I
13  feel about those, that they are not for my purposes.
14  And then if somebody makes a decision about them,
15  and if there is a decision how they impact it, then
16  I might build that into my report one way or the
17  another, but as it stands right now is exactly how I
18  would expect it to be, which is collateral sources
19  or, you know, whatever you want to call them are not
20  under my scope.
21     Q.  And you don't believe those need to be
22  factored into even the prejudgment interest
23  calculations?
24     A.  No.  Depends on whether -- it depends on
25  whether they're expected to be or not.

Page 319

1      Q.  Anything else --
2      A.  I think if they're expected to be a
3  reduction of some type, then I think that they would
4  affect the prejudgment interest, as well.
5      Q.  Anything else you think needs to be changed
6  or adjusted?
7      A.  We've been through a lot of the details
8  during the days, also some other things that we
9  looked at that might impact others that, you know,
10  might have similar circumstances, but I can't think
11  of anything as I sit here.
12     MR. KALIL:  Okay.  Mr. Elkin, I thank you
13  very much for your time you spent with us the
14  last two days.
15     And I pass the witness.
16     MR. BREIT:  I'll pass him back.
17     THE WITNESS:  I feel like a tennis ball.
18     MS. O'DONOHUE:  No questions from Taishan.
19     THE VIDEOGRAPHER:  Read or waive?
20     THE WITNESS:  Read, please.
21     THE VIDEOGRAPHER:  The time is 11:48 and
22  this concludes the deposition of Mr. Michael
23  Elkin.  Stand by, please.  We're off.
24     (Whereupon, the deposition concluded at
25  11:48 a.m.)

Page 320

1           C E R T I F I C A T E
2      I, SUSAN D. WASILEWSKI, Registered
3  Professional Reporter, Certified Realtime Reporter
4  and Certified Realtime Captioner, do hereby certify
5  that, pursuant to notice, the deposition of MICHAEL
6  P. ELKIN was duly taken on Tuesday, March 12, 2019 at
7  9:00 a.m. before me.
8      The said MICHAEL ELKIN was duly sworn by me
9  according to law to tell the truth, the whole truth
10  and nothing but the truth and thereupon did testify
11  as set forth in the above transcript of testimony.
12  The testimony was taken down stenographically by me.
13  I do further certify that the above deposition is
14  full, complete, and a true record of all the
15  testimony given by the said witness, and that a
16  review of the transcript was requested.
17
18  _____
19  Susan D. Wasilewski, RPR, CRR, CCP
20  (The foregoing certification of this transcript does
21  not apply to any reproduction of the same by any
22  means, unless under the direct control and/or
23  supervision of the certifying reporter.)
24
25

Page 321

INSTRUCTIONS TO WITNESS

4      Please read your deposition over carefully
5  and make any necessary corrections.  You should
6  state the reason in the appropriate space on the
7  errata sheet for any corrections that are made.
8
9      After doing so, please sign the errata sheet
10  and date it.  It will be attached to your
11  deposition.
12
13      It is imperative that you return the
14  original errata sheet to the deposing attorney
15  within thirty (30) days of receipt of the deposition
16  transcript by you.  If you fail to do so, the
17  deposition transcript may be deemed to be accurate
18  and may be used in court.
19
20
21
22
23
24
25

| Page 322 | Page 324 |
|---|---|

**Page 322**

```
 1        ------
 2        E R R A T A
 3        ------
 4   PAGE  LINE  CHANGE
 5   ___  ___  _____
 6     REASON: _____
 7   ___  ___  _____
 8     REASON: _____
 9   ___  ___  _____
10     REASON: _____
11   ___  ___  _____
12     REASON: _____
13   ___  ___  _____
14     REASON: _____
15   ___  ___  _____
16     REASON: _____
17   ___  ___  _____
18     REASON: _____
19   ___  ___  _____
20     REASON: _____
21   ___  ___  _____
22     REASON: _____
23   ___  ___  _____
24     REASON: _____
25
```

**Page 324**

```
 1            LAWYER'S NOTES
 2   PAGE  LINE
 3   ___  ___  _____
 4   ___  ___  _____
 5   ___  ___  _____
 6   ___  ___  _____
 7   ___  ___  _____
 8   ___  ___  _____
 9   ___  ___  _____
10   ___  ___  _____
11   ___  ___  _____
12   ___  ___  _____
13   ___  ___  _____
14   ___  ___  _____
15   ___  ___  _____
16   ___  ___  _____
17   ___  ___  _____
18   ___  ___  _____
19   ___  ___  _____
20   ___  ___  _____
21   ___  ___  _____
22   ___  ___  _____
23   ___  ___  _____
24   ___  ___  _____
25
```

**Page 323**

```
 1        ACKNOWLEDGMENT OF DEPONENT
 2
 3        I, _____, do hereby
 4   acknowledge that I have read the foregoing pages,
 5   217 through 322, and that the same is a correct
 6   transcription of the answers given by me to the
 7   questions therein propounded, except for the
 8   corrections or changes in form or substance, if any,
 9   noted in the attached Errata Sheet.
10
11
12   _____     _____
13   MICHAEL P. ELKIN, CPA, CFF, ABV, CFE        DATE
14
15
16
17
18   Subscribed and sworn to before me this
19   ____ day of _____, 20___.
20   My Commission expires: _____
21
22   _____
     Notary Public
23
24
25
```

# EXHIBIT D

Case 2:09-md-02047-EEF-MBN Document 22280-26 Filed 12/02/19 Page 541 of 802
Case 1:11-cv-22408-MGC Document 124-1 Entered on FLSD Docket 05/13/2019 Page 2 of 44
Confidential - Subject to Further Confidentiality Review

```
 1            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF FLORIDA
 2
      ----------------------------:
 3  EDUARDO AND CARMEN AMORIN,  :
    et al., individually, and on  :
 4  behalf of all others          :
    similarly situated,           :
 5                                 :
          Plaintiffs,             :
 6                                 :
    v.                             : Case No. 1:11-CV-22408-MGC
 7                                 :
    TAISHAN GYPSUM CO., LTD,       :
 8  f/k/a SHANDONG TAIHE DONGXIN  :
    CO., LTD.; TAIAN TAISHAN       :
 9  PLASTERBOARD CO., LTD.,        :
    et al.,                        :
10                                 :
          Defendants.             :
11  ----------------------------:
12
                        - - -
13
                 Monday, April 15, 2019
14
                        - - -
15
                  ** CONFIDENTIAL **
16
        SUBJECT TO FURTHER CONFIDENTIALITY REVIEW
17
                        - - -
18
          Videotaped deposition of MARCIE D. BOUR,
19    held at Aballi Milne Kalil, 1 Southeast 3rd
      Avenue, Suite 2250 ,Miami, Florida, commencing at
20    9:30 a.m., on the above date, before Susan D.
      Wasilewski, Registered Professional Reporter,
21    Certified Realtime Reporter and Certified Realtime
      Captioner.
22
                        - - -
23
                GOLKOW LITIGATION SERVICES
24        877.370.3377 ph | 917.591.5672 fax
                    deps@golkow.com
25
```

| | Page 2 |
|---|---|
| 1 | APPEARANCES: |
| 2 | LEVIN SEDRAN & BERMAN LLP |
| 3 | BY : FREDERICK S. LONGER, ESQ. |
| 4 | flonger@lfsblaw.com |
| 5 | 510 Walnut Street, Suite 500 |
| 6 | Philadelphia, Pennsylvania 19106-3697 |
| 7 | Phone: (877) 882-1011 |
| 8 | Representing Plaintiffs |
| 9 | |
| 10 | COLSON HICKS EIDSON |
| 11 | BY : NATALIE M. RICO, ESQUIRE |
| 12 | natalie@colson.com |
| 13 | 255 Alhambra Circle, Penthouse |
| 14 | Coral Gables, Florida 33134 |
| 15 | Phone: (305) 476-7400 |
| 16 | Representing Plaintiffs |
| 17 | |
| 18 | ORRICK, HERRINGTON & SUTCLIFFE, LLP |
| 19 | BY: STEPHANIE ALBRECHT, ESQUIRE |
| 20 | salbrecht@orrick.com |
| 21 | 777 South Figueroa Street, Suite 3200 |
| 22 | Los Angeles, California 90017-5855 |
| 23 | Phone: (310) 617-0027 |
| 24 | Representing Defendant Beijing New Building |
| 25 | Materials PLC |

| | Page 3 |
|---|---|
| 1 | APPEARANCES: |
| 2 | ABALLI MILNE KALIL |
| 3 | BY: CRAIG KALIL, ESQUIRE |
| 4 | ckalil@aballi.com |
| 5 | JOSHUA D. POYER, ESQUIRE |
| 6 | jpoyer@aballi.com |
| 7 | 1 Southeast 3rd Avenue, Suite 2250 |
| 8 | Miami, Florida 33131 |
| 9 | Phone: (305) 373-6600 |
| 10 | Representing Defendant Beijing New Building |
| 11 | Materials PLC |
| 12 | |
| 13 | ALSTON & BIRD LLP |
| 14 | BY: SARAH O'DONOHUE, ESQUIRE |
| 15 | sarah.odonohue@alston.com |
| 16 | 1201 West Peachtree Street |
| 17 | Atlanta, Georgia 30309-3424 |
| 18 | Phone: (404) 881-7000 |
| 19 | Representing Defendants Taishan Gypsum Co., Ltd, |
| 20 | and Taian Taishan Plasterboard Co., Ltd. |
| 21 | |
| 22 | ALSO PRESENT: |
| 23 | ANTHONY BARBARO, Videographer |
| 24 | ELAN J. STERNBERG, CPA, Kaufman Rossin |
| 25 | |

| | Page 4 |
|---|---|
| 1 | - - - |
| 2 | I N D E X |
| 3 | - - - |
| 4 | Testimony of: MARCIE D. BOUR        Page |
| 5 | DIRECT EXAMINATION BY MR. LONGER............ 7 |
| 6 | |
| 7 | E X H I B I T S |
| | (Attached to transcript) |
| 8 | |
| | MARCIE D. BOUR DEPOSITION EXHIBITS        PAGE |
| 9 | |
| | Exhibit 1   Amended Notice of Videotaped        8 |
| 10 | Deposition of Marcie D. Bour |
| 11 | Exhibit 2   March 4, 2019 Letter from Yip        14 |
| | Associates |
| 12 | |
| | Exhibit 3   Invoice Number 29602        14 |
| 13 | Yip Associates |
| 14 | Exhibit 4   Exhibit 2: Qualifications        28 |
| | Expert Rebuttal Report of Marcie D. |
| 15 | Bour |
| 16 | Exhibit 5   Exhibit 3: Testimony Log        45 |
| | Expert Rebuttal Report of Marcie D. |
| 17 | Bour |
| 18 | Exhibit 6   Expert Rebuttal Report of Marcie D.   50 |
| | Bour, CPA/ABV, CVA, CFE, MAFF, ABAR, |
| 19 | CDBV |
| | March 25, 2019 |
| 20 | |
| | Exhibit 7   E-mail - Subject: Marcie D. Bour        69 |
| 21 | Production, Objections, and Errata |
| | Sheet |
| 22 | |
| | Exhibit 8   Marcie D. Bour Errata Sheet for        69 |
| 23 | Expert Rebuttal Report issued |
| | March 25, 2019 |
| 24 | |
| 25 | |

| | Page 5 |
|---|---|
| 1 | E X H I B I T S |
| 2 | (Attached to transcript) |
| 3 | MARCIE D. BOUR DEPOSITION EXHIBITS        PAGE |
| 4 | Exhibit 9   Expert Report and Workpaper Binder   77 |
| 5 | Exhibit 10  Damage Claims Detail Documents        78 |
| 6 | Exhibit 11  Forensic Services Section 100        89 |
| | Forensic Services: Definitions and |
| 7 | Standards |
| 8 | Exhibit 12  AICPA Code of Professional Conduct   92 |
| 9 | Exhibit 13  AICPA Forensic & Valuation Services   99 |
| | Practice Aid: "Serving as an Expert |
| 10 | Witness Or Consultant." |
| 11 | Exhibit 14  Spreadsheet from YA Analysis for ALE  135 |
| | when no Mtg Pymt at Summary |
| 12 | |
| | Exhibit 15  Exhibit 4: Analysis of Cash Flow        148 |
| 13 | Upon Sale of Residence |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

Confidential - Subject to Further Confidentiality Review

## Page 6

1           ---
2       THE VIDEOGRAPHER:  We are now on the record.
3   My name is Anthony Barbaro.  I'm a videographer
4   for Golkow Litigation Services.
5       Today's date is April 15th, 2019, and the
6   time is 9:30 a.m.
7       This video deposition is being held at
8   1 Southeast 3rd Avenue, Suite 2250, Miami,
9   Florida 33131, in the matter of Eduardo and
10  Carmen Amorin, et al., vs. Taishan Gypsum
11  Company, Ltd., et al., for the United States
12  District Court for the Southern District of
13  Florida.
14      The deponent is Marcie D. Bour.
15      Counsel, will you please identify yourselves
16  for the record?
17      MR. LONGER:  Fred Longer on behalf of the
18  Plaintiffs.
19      MS. RICO:  Natalie Rico on behalf of the
20  Plaintiffs.
21      MR. KALIL:  Craig Kalil and Joshua Poyer of
22  Aballi Milne Kalil on behalf of Beijing New
23  Building Materials Public Limited Company.
24      MS. O'DONOHUE:  Sarah O'Donohue of Alston &
25  Bird on behalf of Taishan Gypsum Company.

## Page 7

1       MS. ALBRECHT:  Stephanie Albrecht from
2   Orrick, Herrington & Sutcliffe on behalf of
3   Beijing New Building Materials.
4       THE VIDEOGRAPHER:  The court reporter is
5   Susan Wasilewski, and she will now swear in the
6   witness.
7       THE COURT REPORTER:  Would you raise your
8   right hand?
9       Do you solemnly swear or affirm the
10  testimony you're about to give will be the truth,
11  the whole truth, and nothing but the truth?
12      THE WITNESS:  Yes.
13      THE COURT REPORTER:  Thank you.
14      MR. POYER:  And also for the record, in the
15  room present is Elan Sternberg of Kaufman Rossin.
16      MARCIE D. BOUR, called as a witness by the
17  Plaintiffs, having been duly sworn, testified as
18  follows:
19          DIRECT EXAMINATION
20  BY MR. LONGER:
21      Q.  Would you state your name for the record,
22  please?
23      A.  Marcie, middle initial D., Bour.
24      Q.  Ms. Bour, we met briefly beforehand.  My
25  name is Fred Longer.  I'm going to be asking you a

## Page 8

1   series of questions today.  I know you've been
2   deposed before, so I don't want to belabor this.
3   But if there is a question that I ask you and you
4   don't understand it, please let us know or let me
5   know, and I'll try to rephrase it.  Is that okay?
6       A.  Yes.
7       Q.  Okay.  If you need to take a break, that's
8   fine with me, but I would like you to answer -- if
9   there is a question pending, answer the question
10  before we take a break.  Is that acceptable?
11      A.  Yes.
12      Q.  Is there -- I know we got a slightly delayed
13  start, but is there any issues for you that we need
14  to be aware of in your schedule today?
15      A.  No.
16      Q.  Okay.
17      (Bour Exhibit 1 was marked for
18  identification.)
19  BY MR. LONGER:
20      Q.  I have asked the court reporter to mark as
21  Exhibit Number 1 the Amended Notice of Videotaped
22  Deposition, and I have presented that to you.
23      Do you have that before you?
24      A.  No.
25      Q.  I'm sorry.  I'm -- I'm handing it to you.

## Page 9

1       You have it before you?
2       A.  Oh, I'm sorry.  I thought you meant before
3   as in previously, no.  I -- I have it in front of me
4   now.
5       Q.  Okay.  Just before I begin, can you give me
6   your professional address?
7       A.  My professional address is 2 South Biscayne
8   Boulevard, Miami, Florida --
9       Q.  All right.  And what --
10      A.  -- 33131.
11      Q.  And what is located there?
12      A.  An office building.
13      Q.  Yes, but the name of your company is?
14      A.  Yip Associates.
15      Q.  Thank you.  So you've never seen Exhibit
16  No. 1 previously, is that what I heard you say --
17      A.  Yes.
18      Q.  -- just a moment ago?
19      So I would ask you to turn your attention to
20  Page 7 of this document and beginning on Page 7 are
21  document requests.
22      A.  Yes.
23      Q.  Were you asked to recover and produce to
24  counsel all documents and data that you reviewed,
25  considered, or relied upon in forming your opinions

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 546 of 802
Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 03/13/18 Page 5 of 44
Confidential - Subject to Further Confidentiality Review

Page 10

1  in this matter?
2  A.  Yes.
3  Q.  And have you done so?
4  A.  Yes.
5  Q.  Do we now have your entire file relating to
6  the properties of the Florida Priority Claimants?
7  A.  To the best of my knowledge, yes.
8  Q.  And do you have -- I'm sorry.
9      Have you produced to Counsel all reports,
10 affidavits, exhibits you submitted in connection
11 with any matters related to Chinese drywall?
12 A.  Yes.
13 Q.  What other matters have you worked on --
14 A.  None.
15 Q.  -- regarding Chinese drywall?
16     None?
17 A.  No.
18 Q.  So what you -- when you answered yes just a
19 moment ago, it's all your papers in connection with
20 this particular report that you've just done dated
21 March 21, correct?
22 A.  That would -- yes.  That would be accurate.
23 Q.  All right.  And have you produced to Counsel
24 all documents and data you've reviewed, considered,
25 or relied upon while serving as an expert in any

Page 11

1  matters related to Chinese or defective drywall?
2  A.  Yes.
3  Q.  Just going through this list, I'm on
4  Number 5: Have you produced all copies of studies,
5  surveys, reports, or other written analysis that you
6  have performed regarding the value of properties
7  that contain or used to contain Chinese or defective
8  drywall?
9  A.  Yes.
10 Q.  What were they?
11 A.  There are none.
12 Q.  And same now with Number 6, have you
13 produced to Counsel copies of all articles you have
14 written relating to or referencing Chinese or
15 defective drywall?
16 A.  Yes.
17 Q.  And what were they?
18 A.  There were none.
19 Q.  Have you produced to Counsel all written
20 correspondence which identify facts, data, or
21 assumptions provided to you that you relied on or
22 considered in forming your opinions?
23 A.  Yes.
24 Q.  And what was the nature of that production?
25 A.  There were none.

Page 12

1  Q.  You have no written correspondence with
2  Counsel in this matter?
3      MR. KALIL:  Object to the form.
4  A.  Not that identify facts, data, or
5  assumptions.
6  BY MR. LONGER:
7  Q.  Let me ask you, Number 8 asks -- and let me
8  ask:  Did you produce to counsel your -- any -- I'm
9  sorry, all engagement letters, retention letters,
10 and other documents relating to your compensation in
11 connection with your study or review of materials,
12 preparation of your expert report, and deposition in
13 this matter?
14 A.  Yes, I did.
15 Q.  And do you have an engagement letter in this
16 litigation?
17 A.  Yes.
18     MR. LONGER:  I have not been produced that,
19 Counsel, but it looks like --
20     MR. KALIL:  You're going to get one in a
21 moment.
22     MR. LONGER:  -- my plans -- my request has
23 been --
24     MR. KALIL:  Has been met.
25     MR. LONGER:  -- fulfilled.

Page 13

1  BY MR. LONGER:
2  Q.  We'll get to that in one second.
3      Let's just finish this.
4      And the last, Ms. Bour, is Number 9, which
5  deals with your billing in this matter.
6      Have you billed Counsel in connection with,
7  like, the work that you've performed in this
8  litigation?
9  A.  Yes.
10 Q.  And when was the last time you billed
11 Counsel?
12 A.  I don't recall the date.  It was relatively
13 recently.
14 Q.  Within the past week?
15 A.  No.
16 Q.  Within the past two weeks?
17 A.  Sometime within the past month.  I don't
18 recall the date.
19     MR. LONGER:  And are we being produced that
20 as well?
21     MR. POYER:  Those are the invoices.
22     MR. LONGER:  Okay.
23     MR. KALIL:  For the record, we've given you
24 invoices and we've given you the retainer letter,
25 so -- but you'll mark those as you go?

Case 2:09-md-02047-EEF-MBN Document 22280-36 Filed 12/02/19 Page 545 of 802
Case 2:14-cv-02722-EEF-MBN Document 1-1 Filed 09/15/15 Page 5 of 44
Confidential - Subject to Further Confidentiality Review

Page 14

1    MR. LONGER: Okay. Yeah, I'm about to.
2    Okay.
3    MR. POYER: I meant to give those to you
4    earlier. I'm sorry.
5    MR. LONGER: That's okay.
6    All right. So I'm going to ask the court
7    reporter to mark this March 24, 2019 letter as
8    Exhibit No. 2.
9    (Bour Exhibit 2 was marked for
10   identification.)
11   MR. LONGER: And I'm going to ask the court
12   reporter to mark as Exhibit No. 3 the billing
13   invoices dated March 26.
14   (Bour Exhibit 3 was marked for
15   identification.)
16   MR. LONGER: All right. Do you need a copy?
17   MR. KALIL: Just so we're on the same page.
18   Thank you. Thank you.
19   BY MR. LONGER:
20   Q. Ms. Bour, when were you first consulted in
21   this matter by opposing counsel?
22   A. Towards the end of February.
23   Q. And who did you speak with, or how were you
24   contacted?
25   A. I was contacted by -- I believe I had a

Page 15

1    telephone conversation with Mr. Kalil.
2    Q. And did you take any notes during that
3    conversation?
4    A. I don't believe so.
5    Q. As a result of -- what did Mr. Kalil mention
6    to you in that convers- -- initial conversation?
7    A. Actually, the initial conversation may have
8    been with Mr. Poyer, I don't recall, and it was to
9    set up a telephone call with other counsel in the
10   case so that they could speak with me.
11   Q. So you think Mr. Poyer called you first
12   and -- to set up a call with Mr. Kalil? Is that --
13   I'm trying to understand your recollection.
14   A. My recollection is I spoke to one or both of
15   them in regard to setting up a call with counsel
16   from Orrick so that they could speak to me and
17   select an expert.
18   Q. And this was in February?
19   A. To the best of my recollection, yes.
20   Q. Okay. And did there come a time that you
21   had this conversation with counsel for Orrick?
22   A. Yes.
23   Q. Tell me about that, when and what happened.
24   A. They asked me lots of questions about my
25   background and my experience, and I can't -- I don't

Page 16

1    recall the date. I recall the conversation was
2    while I was in -- while I was traveling, so I was in
3    the car.
4    Q. Happens a lot, doesn't it?
5    A. Yes.
6    Q. We get calls in our cars.
7    A. Well, no. I was -- I was up in West Palm
8    Beach that day, and I scheduled the call after I had
9    been in court that day, so I -- I can't tell you
10   which day it was, but I do recall that I was driving
11   south.
12   Q. Fair enough. Did the counsel give you any
13   input as to the facts of the matter?
14   A. Other than the general basis of the case,
15   not that I recall.
16   Q. What do you recall the general basis of the
17   case being described to you as?
18   A. That there were 20 plaintiffs in this
19   portion of the case, that it was part of a class
20   action, and that they were looking for an expert to
21   review -- I don't remember whether Mr. Elkin had
22   been identified at that point in time to me, but to
23   review another expert report.
24   Q. And do you recollect who the counsel were at
25   Orrick that you spoke to? Who was on this telephone

Page 17

1    call, is basically what I'm asking?
2    A. I believe Ms. -- no, actually, I don't
3    specifically recall who was on the call.
4    Q. All right. Exhibit No. 2, which we've
5    marked, is your retention letter. It's a letter
6    that, I take it, you wrote on March 4 of 2019.
7    Is that correct?
8    A. Yes.
9    Q. And so the time frame that -- how many days
10   after this telephone call did you write this letter?
11   A. It may have been a week. I don't recall.
12   Q. All right. And you wrote the letter to
13   Christopher Vejnoska. Do you see that?
14   A. Yes.
15   Q. Do you recollect Mr. Vejnoska being on the
16   telephone call?
17   A. No. He may have been. I don't -- I don't
18   recall.
19   Q. How did you know to write this letter to
20   Mr. Vejnoska?
21   A. Counsel at Orrick instructed me to, please
22   address the letter to him. It may -- it may have
23   counsel at Orrick, but I inquired as to who would be
24   signing the engagement letter and I was told to
25   address it to him.

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 546 of 802
Case 2:14-cv-02722-EEF-MBN Document 100-1 Filed 04/15/19 Page 6 of 44
Confidential — Subject to Further Confidentiality Review

Page 18

1    Q.  Okay.  And going back to this conversation
2  now that you had prior to March 4th, what were you
3  asked to do in this case?
4    A.  I was asked to review Mr. Elkin's report.
5    Q.  Okay.  And what does it mean to look at a
6  report, when -- when you say that?
7      It seems very open-ended.
8    A.  I'm -- I'm sorry.  As opposed to reviewing
9  the report?
10    Q.  You say you were asked to look at the
11  report.
12      MR. KALIL:  Objection to form.
13  BY MR. LONGER:
14    Q.  And I'm asking you, what do you mean by "to
15  look at a report"?
16    A.  No, I'm sorry.  I thought I said, I was
17  asked to review his report.
18    Q.  Oh, I heard "looked."  My apologies.
19      So you were asked to review the report?
20    A.  Yes.
21    Q.  And what type of review were you asked to
22  provide?
23    A.  I wasn't asked to provide any particular
24  type of review.  I was asked to review it and
25  provide my opinion and feedback with regard to the

Page 19

1  report.
2    Q.  All right.  And when did you begin your
3  analysis?
4    A.  Shortly after I was retained.
5    Q.  All right.  So Exhibit No. 3 is some of your
6  billing.
7    A.  Yes.
8    Q.  And this is dated March 26, correct?
9    A.  Yes.
10    Q.  And it says -- the first line entry is that
11  on February 25 you have reviewed Mr. Elkin's report.
12  And am I correct?
13    A.  Yes.
14    Q.  Your initials are MDB, correct?
15    A.  Yes.
16    Q.  And you spent 1.6 hours reviewing
17  Mr. Elkin report on February 25, 2019, correct?
18    A.  Yes.
19    Q.  And that was before you were retained
20  formally in this letter that you wrote on March 4,
21  correct?
22    A.  Yes.
23    Q.  All right.  It's going to take me a while to
24  go through this, but these billings on your invoice
25  are all the efforts that your office performed for

Page 20

1  the period February 25 to March 19; is that correct?
2    A.  Yes, it should be.
3    Q.  So if you would, tell me, after you were
4  officially retained on March 4, how you went about
5  staffing the work and getting your -- your review in
6  order.
7    A.  Well, I used two associates in my office to
8  assist me in compiling and reviewing the data that
9  was provided by Mr. Elkin, and we met and I -- I
10  initially -- I initially went through a lot of the
11  data myself.  I met with them, gave them
12  instruction, instructions as to how I wanted them to
13  look at certain information and match it to source
14  documents, and then they proceeded under my
15  supervision.
16    Q.  All right.  Can you identify the names of
17  the staff, the associates that you were meeting
18  with?
19    A.  Gregory Sidoti and --
20    Q.  Can you spell his last name?
21    A.  S-i-d-o-t-i, Sidoti.  I apologize.
22      And Santi Carpio, C-a-r-p-i-o.
23    Q.  And --
24    A.  Santiago.
25    Q.  His last name is Sidoti?

Page 21

1    A.  No.
2    Q.  I've got that wrong.  What is Santiago's
3  last name?
4    A.  Carpio, C-a-r-p-i-o.
5    Q.  Okay.  So "GPS" is Gregory Sidoti, and "SIC"
6  is Santiago Carpio?
7    A.  Yes.
8    Q.  When you gave them instructions as to what
9  you wanted them to do, were they -- how did you give
10  those instructions?
11    A.  I met with them and explained to them what I
12  wanted them to do.
13    Q.  Were they written or oral instructions?
14    A.  Oral.
15    Q.  And your personal review of Mr. Elkin's
16  report, how long did that take?
17    A.  It would be documented here.  I haven't
18  tallied up the hours.
19    Q.  All right.  Did you instruct them in terms
20  of how many hours you anticipated them to conduct --
21  let me strike that.
22      Did you give them a time frame in which to
23  perform their work?
24    A.  No, not specifically.  I blocked out time,
25  and they were told we would assess how much more

Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 547 of 802
Case 1:11-cv-22408-MGC Document 120-2 Entered on FLSD Docket 05/13/2012 Page 8 of 44
Confidential - Subject to Further Confidentiality Review

Page 22

1  time was needed as we got into the project.
2  Q.  Going back to Exhibit No. 2, which is the
3  retention letter, you received an initial retainer
4  of $40,000; is that correct?
5  A.  I actually initially received $20,000 and
6  the other $20,000 was received after, but I've
7  received $40,000.
8  Q.  All right.  And was the second $20,000
9  applied against this invoice of March 26?
10  A.  No, it was not.
11  Q.  So in other words, you got two installments
12  of $20,000, and you still have billings applied
13  against that retainer; is that correct?
14     MR. KALIL:  Object to form.
15  A.  I'm sorry.  I don't understand your
16  question.
17  BY MR. LONGER:
18  Q.  Explain to me how you were paid to date.
19  A.  I received an initial $20,000, a
20  20,000-dollar retainer.  And then the second
21  payment, which included payment towards the invoice,
22  included the second $20,000.
23  Q.  So there is still a balance due, then, on
24  the $68,568.50 invoice which is Exhibit No. 3,
25  correct?

Page 23

1  A.  Yes.
2  Q.  Okay.
3  A.  There might be a slight balance due.
4  Q.  And you still have ongoing billing, I take
5  it?
6  A.  Yes.
7  Q.  Now, you said recently you had done some
8  billing, when I asked you that question 20 minutes
9  ago.  Is -- were you referencing this invoice, or is
10  there yet another invoice following this one?
11  A.  No, this invoice.
12  Q.  Is it -- let me ask a different question.
13     Are you obliged by any professional standard
14  to set forth any written guidelines for your staff
15  in terms of what they are to do when you give them
16  instructions to perform the review work that they
17  did in this matter?
18  A.  No.
19     MR. KALIL:  Object to form.
20  BY MR. LONGER:
21  Q.  Is it typical for you to just give oral
22  guidelines to your staff so that they know what is
23  demanded of them?
24  A.  It depends on the nature of the case and the
25  assignment, but typically I will meet with them

Page 24

1  very -- I will meet with them on a regular basis and
2  walk over to their desks multiple times during the
3  day to make sure they're doing what's necessary for
4  the project.
5  Q.  And it's just a discussion as opposed to
6  something in writing, correct?
7  A.  Instructions.  I wouldn't call it a
8  "discussion," but yes.
9  Q.  Very well.
10     Did you ask any of your staff or did you
11  perform any statistical analysis of the data that
12  you were reviewing from Mr. Elkin?
13  A.  No.  I would not -- I would not classify it
14  as a "statistical analysis."
15  Q.  Did you feel that a statistical analysis was
16  not necessary?
17     MR. KALIL:  Objection to the form.
18  A.  Yes.
19  BY MR. LONGER:
20  Q.  Your rebuttal report, which I'll introduce
21  in a moment, is dated March 25, 2019, correct?
22  A.  Yes.
23  Q.  And how many drafts of your report did you
24  share with counsel?
25  A.  Either two or three, to the best of my

Page 25

1  recollection.
2  Q.  I take it you received comments from
3  counsel?
4  A.  I received information from counsel.  I
5  discussed the report with counsel.
6  Q.  And that generated draft upon draft, based
7  on those comments that you received?
8  A.  No.
9     MR. KALIL:  Object to the form.
10  BY MR. LONGER:
11  Q.  Oh.  Sorry.  Based on the information that
12  you received, did you change your report so that you
13  had iterative drafts; is that correct?
14  A.  No.
15  Q.  Tell me about the drafting process of the
16  report.
17  A.  I had not completed my report, and counsel
18  had wanted to look at progress so that they would be
19  apprised of how the report was developing.  So they
20  received interim drafts until I had completed my
21  work.
22  Q.  Now, you label your report a "rebuttal
23  report," correct?
24  A.  Yes.
25  Q.  Were you asked to present any affirmative

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 548 of 802
Case 1:11-cv-22408-FAM Document 152-1 Entered on FLSD Docket 13/9/15 Page 8 of 44
Confidential - Subject to Further Confidentiality Review

| Page 26 |
|---|
| 1 opinions about damages in this case, or were all of |
| 2 your opinions simply to be rebuttal? |
| 3    A. No, all of my opinions were -- are expressed |
| 4 in the report. I was not asked to do anything else. |
| 5    Q. All of the rates that your -- that you or |
| 6 your associates are identified here in the billing |
| 7 invoice, correct? |
| 8    A. Yes. |
| 9    Q. So your billing rate is $495 an hour? |
| 10    A. Yes. |
| 11    Q. And Mr. Sidoti's billing rate is $245 an |
| 12 hour? |
| 13    A. Yes, Mr. Sidoti is $245 an hour. |
| 14    Q. And Mr. Carpio's billing rate is $195 an |
| 15 hour; is that correct? |
| 16    A. Yes. |
| 17    Q. How much time, if -- and you can use this |
| 18 exhibit, if it helps you -- was spent performing |
| 19 work reviewing Mr. Elkin's report, and how much time |
| 20 was spent actually drafting the report? |
| 21    MR. KALIL: Object to the form. |
| 22    A. I don't differentiate my work in that way. |
| 23 I write the report as I do the work. So the report |
| 24 is a documentation of what I'm doing. |
| 25 BY MR. LONGER: |

| Page 27 |
|---|
| 1    Q. Okay. So the last entry of this invoice |
| 2 dated March 19, it just says "rebuttal report." |
| 3    Do you see that? |
| 4    A. Yes. |
| 5    Q. Tell me how that entry is not differentiated |
| 6 between "analysis" and "rebuttal report." |
| 7    A. For those four hours, I may have been |
| 8 entirely drafting the report versus doing analyses. |
| 9    Q. So if you're just drafting, you'll just |
| 10 write "rebuttal report"? |
| 11    MR. KALIL: Object to the form. |
| 12    A. Yes. |
| 13 BY MR. LONGER: |
| 14    Q. And if you're doing some analysis, you may |
| 15 have some description other than "rebuttal report." |
| 16    Is that fair? |
| 17    A. Yes. |
| 18    Q. Do you know how much additional time since |
| 19 March 19 you've billed to draft the rebuttal report |
| 20 prior to March 25? |
| 21    MR. KALIL: Object to the form. |
| 22    A. No. I was working -- I was working |
| 23 primarily on that until the report was drafted, but |
| 24 I don't know how much additional time. |
| 25 BY MR. LONGER: |

| Page 28 |
|---|
| 1    Q. Do you know how much additional work your |
| 2 associates performed in that same time frame? |
| 3    A. To the best of my recollection, it -- it |
| 4 would have been mostly Mr. Carpio who worked during |
| 5 that time frame, and again, I don't specifically |
| 6 recall. I did -- I have not reviewed the numbers, |
| 7 the hours to know how much time was spent. |
| 8    Q. All right. I'm going to hand you a new |
| 9 exhibit, which is going to be your r?sum?, which was |
| 10 Exhibit 2 to your report, but we're going to mark |
| 11 this as Exhibit No. 4. |
| 12    (Bour Exhibit 4 was marked for |
| 13 identification.) |
| 14 BY MR. LONGER: |
| 15    Q. Do you have that before you? |
| 16    A. Yes. |
| 17    Q. So this is your r?sum?, correct? |
| 18    A. Yes. |
| 19    Q. And on the last page of the document, it |
| 20 says "Updated January 2019"? |
| 21    A. Yes. |
| 22    Q. Is this the most current version of your |
| 23 r?sum?? |
| 24    A. I believe so, yes. |
| 25    Q. Are there any substantive changes that have |

| Page 29 |
|---|
| 1 occurred since you updated it in January to today's |
| 2 date, Tax Day, April 15, 2019? |
| 3    A. This weekend, I made the decision to close |
| 4 Marcie D. Bour, CPA, PA, and wrap up that entity, so |
| 5 that will -- I have not done it yet, but if I were |
| 6 to revise my CPA today -- my CV today, I probably |
| 7 would have taken that off. |
| 8    Q. I called this a r?sum?. You just call it a |
| 9 CV. I want to call it what you call it, if that's |
| 10 okay. |
| 11    So this -- you go by CV, not r?sum?? |
| 12    A. Yes. |
| 13    Q. And CV stands for? |
| 14    A. Curriculum vitae. |
| 15    Q. Since you mentioned this decision to close |
| 16 out Marcie D. Bour, CPA, PA, can you tell me what |
| 17 that entity was and the reasoning behind closing it? |
| 18    A. That is my professional association out of |
| 19 which I did business as Florida Business Valuation |
| 20 Group, and it has been left open because it has the |
| 21 fictitious name of Florida Business Valuation Group, |
| 22 which I still do marketing under, under that name. |
| 23    Q. Is that simple -- is that business, the -- |
| 24 the consulting group business, is that purely for |
| 25 litigation support? |

Page 30

1    A.  Well, the business is inactive.  It just
2  owns the name, which is used for marketing purposes.
3    Q.  Okay.  Previously, when it was active, was
4  it for litigation support?
5    A.  Business valuation and litigation
6  consulting.
7    Q.  And you moved from that entity to Yip
8  Associates, or what -- I can always ask a bad
9  question.
10      Give me a little bit of history leading up
11  to your current position at Yip Associates.
12    A.  I had a firm, Florida Business Valuation
13  Group, and in April of 2015, I moved my practice to
14  Yip Associates.  However, since Florida Business
15  Valuation Group still has a website and is still a
16  name that's out there in marketing, I had left my
17  professional association opened.  And in the early
18  years, I was still collecting some receivables, but
19  for the past -- I do not know whether I would have
20  anything else coming in, and at this point in time,
21  it's not an active -- it -- I made the determination
22  this weekend that it's not an active entity and I'm
23  not going to renew, I'm not going to renew the
24  corporate registration.
25    Q.  So all of that business is now being done

Page 31

1  under the umbrella of Yip Associates?
2    A.  All professional activities that I have done
3  have been under -- under Yip -- had been through Yip
4  Associates since April of 2015.
5    Q.  I applaud you for starting out at Laventhol
6  & Horwath in beautiful Pennsylvania, because I'm
7  from Philadelphia, and I see that that's on your
8  r?sum?.  I just want to congratulate you.
9    A.  Thank you.
10    Q.  Tell me, you are licensed as a Certified
11  Public Accountant in Florida; is that correct?
12    A.  Yes.
13    Q.  And you were originally licensed in
14  Pennsylvania; is that correct?
15    A.  Yes.
16    Q.  All right.  So looking at your CV, you're
17  not a lawyer, right?
18    A.  Correct.
19    Q.  Do you have any legal training?
20    A.  I've not gone to law school.
21    Q.  You're not -- you're not an economist?
22    A.  No.
23    Q.  Are you an expert on corrosion?
24    A.  No.
25    Q.  I take it you were a licensed real estate

Page 32

1  broker here in Florida from 1983 to 1991; is that
2  correct?
3    A.  Yes.
4    Q.  Can I ask you, why did -- do you still
5  maintain that license?
6    A.  No.
7    Q.  Why did you give up the license?
8    A.  I was working as a CPA, and it was
9  constantly an issue with the firms that I worked for
10  as far as conflicting activities.  I was not -- and
11  I was not living in Florida, so I made the decision
12  that there was, at that time, no purpose to my
13  keeping the license active.
14    Q.  Are you giving any opinions on values of
15  real estate in this litigation?
16    A.  No.
17    Q.  You're not a personal property appraiser,
18  correct?
19    A.  Yes.
20    Q.  Yes, you are; or yes, you are not?
21    A.  Yes, that is correct.
22    Q.  Yes, that is correct.  Thank you.  And you
23  wouldn't hold yourself out as an expert giving
24  opinions on valuations of personal property,
25  correct?

Page 33

1    A.  Yes.
2    Q.  I understand that you hold yourself out as
3  an expert in forensic accounting and business
4  valuation; is that correct?
5    A.  Yes.
6    Q.  Are you giving any opinions in this matter
7  on business valuation?
8    A.  No.
9    Q.  Do you hold yourself out as an expert in any
10  other field?
11      MR. KALIL:  Object to the form.
12    A.  Other than accounting, no.  I have -- I have
13  expertise in certain industries as it relates to
14  accounting, but no, no other fields.
15    Q.  What are those industries that you have
16  expertise in?
17    A.  Oh, I've worked in a lot of industries.
18    Q.  Any -- what are the big three?
19    A.  Real estate, healthcare, probably financial
20  services.
21    Q.  Okay.  You have a number of licenses and
22  accreditations.  We talked about your CPA already.
23  I wanted to ask you about all of these.
24  Interesting.
25      You have an accreditation in business

Case 2:09-md-02047-EEF-MBN   Document 22380-36   Filed 12/02/19   Page 550 of 802
Case 2:14-cv-02722-ML   Document 244   Filed 08/13/2019   Page 11 of 44
Confidential — Subject to further confidentiality review

Page 34

1  valuation, correct?
2      A.  Yes.
3      Q.  That goes by the initials ABV after your
4  name?
5      A.  Yes.
6      Q.  When did you receive your ABV accreditation?
7      A.  Around 2001.
8      Q.  And what -- are there any requirements to
9  maintain your ABV accreditation?
10     A.  Yes.
11     Q.  What are they?
12     A.  Continuing education requirements.
13     Q.  And do you report them to the sponsor of the
14  ABV accreditation?
15     A.  If I remember correctly, I just have to sign
16  a certification that I've completed the continuing
17  education.  I don't think there is an actual report,
18  but I -- for each one I look at, for each
19  certification, I look at the requirements each year
20  to make sure that I'm not confusing them with
21  others.
22     Q.  Yeah.  Well, you have what, almost half a
23  dozen, so I want to go through each one.
24         You also have an acredit -- you're
25  accredited in business appraisal review, and -- is

Page 35

1  that correct?
2      A.  Yes.
3      Q.  And that goes by the initials ABAR?
4      A.  Yes.
5      Q.  Do you call that ABAR?
6      A.  Yes.
7      Q.  And when did you receive that accreditation?
8      A.  I'm not going to remember which year.  It
9  was approximately six or seven years ago, to the
10  best of my recollection.
11     Q.  And consistent with my prior question, do
12  you -- what are the requirements to maintain your
13  ABAR accreditation?
14     A.  Continuing education requirements.
15     Q.  And as before, do you report those
16  requirements to whoever sponsors the ABAR
17  accreditation?
18     A.  To the best of my recollection, those
19  credits are actually reported.
20     Q.  You next speak about business valuator
21  accredited for litigation.  Am I correct that that
22  goes by the initials -- well, strike that.
23         What is a business valuator accredited for
24  litigation?
25     A.  It was a designation designed for those who

Page 36

1  do business valuation in a litigation context, and
2  the designation was retired, so it no longer exists.
3      Q.  It no longer exists?  You're also certified
4  in distress business valuation; is that correct?
5      A.  Yes.
6      Q.  And that goes by the initials CDBV after
7  your name?
8      A.  Yes.
9      Q.  When were you certified?
10     A.  I think the certification came through in
11  2016.  It may have come through in '15.
12     Q.  And are there any requirements to maintain
13  that certification?
14     A.  Other than maintaining my membership in the
15  organization in good standing, no, there aren't.
16     Q.  Do you recollect what your obligations were
17  to obtain that certification?
18     A.  Yes.
19     Q.  What was that?
20     A.  I had to demonstrate that I had other
21  accreditations in business valuation and I had to go
22  through two, I believe, they were four-day courses
23  with the fifth day being an examination.  The ones I
24  passed -- successfully passed the two levels, I had
25  to submit a report for peer review, along with an

Page 37

1  application and I don't recall whether there were
2  references involved, and after I went through a
3  process, then the designation was granted.
4      Q.  Any chance you recollect what the draft
5  report was that you did for them?
6      A.  No.
7      Q.  The next is a certified valuation analyst;
8  am I correct?
9      A.  Yes.
10     Q.  And that goes by the initials CVA after your
11  name?
12     A.  Yes.
13     Q.  When did you receive a CVA certification?
14     A.  Around 1994, either '93 or '94.
15     Q.  And are there any requirements to maintain
16  your CVA certification?
17     A.  Yes.
18     Q.  What is that?
19     A.  I have to meet continuing education
20  requirements.
21     Q.  And do you report them to the sponsor of the
22  CVA?
23     A.  Yes.
24     Q.  The next accreditation is you are a
25  certified fraud examiner; is that correct?

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 551 of 802
Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 2 of 44
Confidential - Subject to Further Confidentiality Review

Page 38

1   A.  Yes.
2   Q.  Does that go by the initials CFA -- I'm
3   sorry, CFE?
4   A.  Yes, it does.
5   Q.  And when did you receive your CFE
6   certification?
7   A.  Probably 1996, possibly 1997.
8   Q.  Are there any requirements to maintain your
9   CFE certification?
10  A.  Yes.
11  Q.  And what are they?
12  A.  Continuing education requirements.
13  Q.  Do you report that to the sponsor of the CFE
14  certification?
15  A.  Historically, you do report the credits.
16  Recently, within the past few years, they've just
17  gone to a certification that you've completed the
18  credits.
19  Q.  Your CV also indicates that you are a Master
20  Analyst in Financial Forensics; is that correct?
21  A.  Yes.
22  Q.  And that goes by the initials MAFF after
23  your name?
24  A.  Yes.
25  Q.  When did you receive your MAFF?

Page 39

1   A.  I don't recall.  I went through the course
2   in 2002 and I didn't take the certification until a
3   number of years later.
4   Q.  Are there any requirements to maintain the
5   MAFF accreditation?
6   A.  Yes.
7   Q.  What is that?
8   A.  Continuing education requirements.
9   Q.  And again, do you report them regularly to
10  the sponsor of the MAFF?
11  A.  Yes.
12  Q.  To your knowledge, are you in good standing
13  with all of your sponsors of all of the
14  accreditations that you and I have just been
15  discussing?
16  A.  Yes.
17  Q.  Do you have any honors that are not
18  identified on your report?
19      MR. KALIL:  Object to the form.
20  A.  I'm -- I'm sorry.  I don't know what you
21  mean by honors.
22  Q.  Have you received any awards or
23  accommodations or proclamations, honors outside of
24  what is on the CV?
25      MR. KALIL:  Same objection.

Page 40

1   A.  Probably.
2   Q.  Any in the last five years?
3       MR. KALIL:  Same objection.
4   A.  Not that I can recall.
5   Q.  I'd like to ask you, on your CV you list
6   several professional affiliations on the second page
7   of the document.  Do you see that?
8   A.  Yes.
9   Q.  What is an affiliate member of the American
10  Bar Association?
11  A.  It's a membership status for nonlawyers.
12  Q.  Do you participate in activities of the
13  American Bar Association?
14  A.  No, generally not.  I am on committees and I
15  get information from the committees, but I'm not
16  active on the committees.
17  Q.  Similarly, you identify yourself as an
18  affiliate member of the Florida Bar, is that
19  correct?
20  A.  Yes.
21  Q.  What is an affiliate member of the Florida
22  Bar?
23  A.  A nonlawyer member.
24  Q.  And do you receive information from the
25  business law section, is that what I'm to gather

Page 41

1   from your CV?
2   A.  Yes.
3   Q.  Have you received any information from the
4   Florida Bar regarding Chinese drywall in connection
5   with the materials that you've received from the
6   business law section?
7   A.  No.
8   Q.  At the bottom of that page running to the
9   next page, you list this discussion which you
10  describe as the range of experience.  Do you see
11  that?
12  A.  Yes.
13  Q.  Is this a description of everything you do
14  or everything that Yip does, or both?
15      MR. KALIL:  Object to the form.
16  A.  No, it's a description of what I do.  It's
17  not a description of everything that Yip does, Yip
18  Associates does.
19  Q.  But this is basically a section that is a
20  narrative of the work that you've performed and
21  offered to clients, correct?
22  A.  It's -- yes, it's a narrative of the work I
23  have done in the past.  I don't offer all of these
24  services to clients currently.
25  Q.  I'd like to talk to you a little bit about

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 552 of 802
Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 13 of 44
Confidential - Subject to Further Confidentiality Review

Page 42

1  some of the publications and speaking engagements.
2  I see that you're a coauthor of Financial Valuation
3  Applications and Models, the fourth edition. Is
4  that correct?
5      A. Yes.
6      Q. Am I correct that you wrote one chapter
7  in -- and that's a book; is that right?
8      A. Yes.
9      Q. And you wrote one chapter in that book; is
10  that correct?
11     A. Yes.
12     Q. What is the chapter that you wrote?
13     A. I wrote the chapter on market approach to
14  business valuation.
15     Q. Just a moment ago you told me that you are
16  not offering any business valuation opinion in this
17  matter, correct?
18     A. Yes.
19     Q. So is there anything in the book that we're
20  talking about, Financial Valuation Applications,
21  that's applicable to this work that you've done for
22  the Chinese drywall matter?
23         MR. KALIL: Objection to the form.
24     A. Not -- I do not refer to the book in writing
25  this report.

Page 43

1      Q. All right. You wrote in September 2011 on
2  calculations of damages for litigation. Do you see
3  where I'm referring?
4      A. That was a presentation.
5      Q. Did you write a paper for that presentation?
6      A. No.
7      Q. Is there a recording of that presentation?
8      A. Not to my knowledge.
9      Q. Do you know what you spoke to at that
10  presentation?
11     A. I spoke to a group of people.
12     Q. And --
13     A. CPAs.
14     Q. And what is the FICPA?
15     A. The Florida Institute of CPAs.
16     Q. What was the general discussion that you
17  presented to that assemblage?
18     A. It was a basic introduction to calculation
19  of damages for litigation.
20     Q. What, if you recollect, I understand it's a
21  long time ago, what do you recall speaking to in
22  that general discussion?
23     A. I most likely -- it was -- I don't
24  specifically recall. I can't tell you what I spoke
25  about in September 2011.

Page 44

1      Q. I don't blame you. Do you have any notes
2  from that discussion?
3      A. I don't know.
4      Q. I saw in here -- oh, on the next page, you
5  publish a blog at Bizvalblog.com?
6      A. Yes.
7      Q. Tell me about that. Do you still contribute
8  to Bizvalblog.com?
9      A. I haven't posted any new entries in a number
10  of years, but it's a valuation blog.
11     Q. All right. And just out of curiosity, did
12  you ever evaluate any business valuations for
13  businesses that were affected by Chinese drywall?
14     A. No.
15         MR. KALIL: Objection to the form.
16     A. No.
17     Q. Previously you said that you've never
18  authored any written report or article on Chinese
19  drywall; is that correct?
20         MR. KALIL: Object to the form.
21     A. Yes.
22     Q. So this report is the first time you've ever
23  addressed the impact of Chinese drywall, in any
24  fashion, professionally?
25         MR. KALIL: Object to the form.

Page 45

1      Q. Correct?
2      A. It's the first time that I had a case that
3  was involving Chinese drywall, yes, but not to
4  mischaracterize my report. I do not assess the
5  impact of Chinese drywall in this report.
6      Q. Fair enough. All right. Okay.
7         MR. LONGER: Can you hand me --
8         I'm going to ask the court reporter to mark
9  this as Exhibit Number 5.
10        (Bour Exhibit 5 was marked for
11  identification.)
12        MR. LONGER: Craig, I'm going to hand you
13  copies.
14        MR. KALIL: Thank you.
15  BY MR. LONGER:
16     Q. Ms. Bour, I've handed you Exhibit Number 5,
17  which is Exhibit Number 3 to your rebuttal report,
18  and it's entitled your Testimony Log. Do you have
19  that before you?
20     A. Yes.
21     Q. This is a description of the testimony that
22  you have given in the prior four years; is that
23  correct?
24     A. Yes.
25     Q. You've testified well beyond four years ago,

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 553 of 802
Case 2:14-cv-02722-MSG Document 204-1 Filed 12/01/19 Page 157 of 344
Confidential - Subject to further confidentiality Review
44

Page 46

1  correct?
2    A.  Yes.
3    Q.  And in this log, you have testified in a
4  number of matters, both in deposition and at
5  hearings and at trial, correct?
6    A.  Yes.
7    Q.  In any of these matters have you ever
8  been -- are you familiar with what is -- what
9  lawyers call a Daubert challenge?
10   A.  Yes.
11   Q.  In any of these matters, are you aware of
12 yourself being confronted with a Daubert challenge?
13   A.  Yes.
14   Q.  Would you identify each of the matters in
15 which you're aware you've been so challenged?
16   A.  August of 2016, the Hebding vs. Kresty
17 matter.
18   Q.  That was a motion filed by Greg Weiss?
19   A.  Yes.
20   Q.  Go ahead.  Next.
21   A.  I presume it was filed by him.  I don't
22 recall specifically that it was filed by him but he
23 was one of the counsel in that matter.
24   Q.  He took your deposition, correct?
25   A.  Yes, he did.  In July 2018 there may have

Page 47

1  been a Daubert -- I believe there was a motion filed
2  in Express Logistics.
3    Q.  Was it ruled on?
4    A.  I'm sorry?
5    Q.  Was it ruled on?
6    A.  No, it was not.
7    Q.  Was the matter resolved?
8    A.  Yes.
9    Q.  Okay.  Any others?
10   A.  No, not on this list.
11   Q.  Previously, are you aware of matters that
12 you worked on before 2015 in which you were the
13 subject of a Daubert challenge?
14   A.  Yes.
15   Q.  And have you ever been excluded by a court,
16 to your knowledge?
17   A.  No.
18   Q.  Have you ever had a professional complaint
19 filed against you?
20   A.  Yes.
21   Q.  How many times?
22   A.  Once.
23   Q.  And what was the nature of that complaint?
24   A.  The nature of the complaint involved a real
25 estate transaction.

Page 48

1    Q.  Did the -- where was the complaint
2  presented?
3    A.  Geographically, I don't know.  I mean, I
4  don't know -- I don't know whether it -- exactly
5  where it was filed.
6    Q.  Okay.  So let me -- let me understand,
7  because I'm not understanding what you're saying.
8        So was this a lawsuit filed against you?
9    A.  I don't recall if there was a lawsuit.
10   Q.  What was filed?
11   A.  There was a professional complaint filed
12 against me in either the late '70s or early '80s,
13 pertaining to a company that I had a real estate
14 license with at the time.  I was 16 years old and
15 not licensed at the time of the alleged actions, but
16 it was a professional complaint that was filed
17 against me.
18   Q.  Were you still in Pennsylvania?
19   A.  No.  I was not in -- I was not yet in
20 Pennsylvania.
21   Q.  Oh, good.  Keep up with the rolling ball.
22       So where was this activity, where did this
23 activity occur?
24   A.  Well, the alleged activity occurred --
25   Q.  The alleged activity.

Page 49

1    A.  -- in Florida.
2    Q.  Okay.  And if it was a complaint, would it
3  have been filed in some official court or in a
4  professional association?
5      MR. KALIL:  Object to the form.
6    A.  No, this was -- this was -- back when it was
7  called FREC, Florida Real Estate Commission, and
8  again it was -- the question was:  Has a
9  professional complaint been filed against you?
10       So a complaint was filed.  I think it was
11 filed either in the late '70s or early '80s.  At the
12 time of the alleged activity, I was not licensed, I
13 was 16 years old and I did not have anything to do
14 with the activities and it was dismissed.
15   Q.  Okay.
16       MR. LONGER:  Just one second.  I want to
17 talk to my lawyer.  You know what, why don't we
18 take a break here.  I'm going to get some
19 exhibits assembled.
20       MR. KALIL:  Perfect.  Do you want to go
21 about five or 10 minutes?
22       MR. LONGER:  Five minutes.
23       THE VIDEOGRAPHER:  Off the record at 10:37.
24    (Recess from 10:37 a.m. until 10:56 a.m.)
25       THE VIDEOGRAPHER:  We're now back on the

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 554 of 802
Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 15 of 44
Confidential - Subject to Further Confidentiality Review

Page 50

1 record at 10:56.
2 BY MR. LONGER:
3    Q.  Over the break, Ms. Bour, I've asked the
4 court reporter to mark as your report Exhibit
5 Number 6, and I have copies for your counsel.
6     MR. KALIL:  Thank you.
7     (Bour Exhibit 6 was marked for
8 identification.)
9 BY MR. LONGER:
10    Q.  I have questions about this document.  We've
11 already pretty much locked this down, but it's dated
12 March 25, 2019, correct?
13    A.  Yes.
14    Q.  And this report, on page 2, describes your
15 sort of scope of matters that you've considered and
16 are about to opine upon; is that generally fair to
17 say?
18    A.  Yes.
19    Q.  Paragraph Number 3 says that you have been
20 asked to look at claimed damages for alternate
21 living expenses, personal property damages, and lost
22 equity as summarized in the Elkin report.
23     Correct?
24    A.  Yes.
25    Q.  What -- what does it mean to look at, as you

Page 51

1 used it in that sentence?
2    A.  I started by reviewing those three years.
3    Q.  What type of review did you perform?
4    A.  Well, I -- I read his report, I looked at
5 his methodology, I reviewed and traced the documents
6 supporting his work, and the application of that
7 methodology.
8    Q.  You used the term "claimed damages."  What
9 do you mean by claimed?
10    A.  The amount that Mr. Elkin is setting forth
11 as damages in his report.
12    Q.  By use of the term "claimed," you're not
13 making a qualitative assessment of the damages
14 themselves, you're just averting to the fact that
15 these are the damages referenced in Mr. Elkin's
16 report?
17    A.  Right.  It's specifically in this sentence,
18 I literally initially looked, reviewed, whatever
19 word you want, for visually read his report, looked
20 at the claimed damages in his report, analyzed the
21 methodology and his application of the methodology.
22    Q.  Okay.  For alternate living expenses, would
23 you tell me specifically what you did to look at
24 alternate living expenses, unless you're just saying
25 it's captured by reading his report, looking at his

Page 52

1 methodology, tracing the documents and exploring the
2 application of Mr. Elkin's methodology?
3     MR. KALIL:  Object to the form.
4    A.  I believe it's captured by those items.
5    Q.  With respect to personal property damages,
6 did you do any other activities with regard to
7 looking at claim damages for the personal property
8 damages?
9    A.  Again, the looking is the initial, the
10 analysis of the methodology and his application of
11 his methodology is the -- would describe the nature
12 of what I did.
13    Q.  And is the same true for lost equity, you
14 evaluated Mr. Elkin's lost equity analysis by
15 conducting the several factors that you've just
16 previously testified to?
17    A.  Yes.
18    Q.  All right.  Paragraph 4, you state that
19 you've been asked to look at the framework he set up
20 for calculation of prejudgment interest based upon
21 his updated support master database, correct?
22    A.  Yes.
23    Q.  And you understand that Mr. Elkin was just
24 proposing a framework and not rendering a expert
25 opinion on actual prejudgment interest?

Page 53

1     MR. KALIL:  Object to the form.
2    A.  No, I'm actual -- I'm not sure I understood
3 that.  I thought he actually calculated what he
4 believed prejudgment interest would be based on his
5 damages using that framework, assuming that the
6 court were to award prejudgment interest, but my
7 understanding is that he felt that his calculation
8 was accurate based on the work that he did.
9    Q.  Okay.  He -- you understood that he also
10 understood that an assumption of his was that the
11 court would have to award prejudgment interest,
12 correct?
13    A.  Yes.
14    Q.  Paragraph Number 5, this paragraph describes
15 subjects that you're not opining upon; is that
16 right?
17    A.  Yes.
18    Q.  So you are not going to offer any opinions
19 about remediation, correct?
20    A.  Correct.
21    Q.  Why?
22    A.  I'm not a remediation specialist or nor do I
23 have expertise in that area.
24    Q.  All right.  What about diminution in value,
25 you're not going to offer any opinions on diminution

Page 54

1  in value?
2      A.  No.  I'm not a property appraiser, either
3  personal or real estate, so I will not be offering
4  an opinion as to value.
5      Q.  Similarly with loss of use and enjoyment,
6  you're not going to offer any opinions on that?
7      A.  Correct.
8      Q.  Why?
9      A.  It's outside the scope of my engagement.
10      Q.  Paragraph Number 6 similarly describes
11  matters that you're not going to testify to; is that
12  correct?
13      A.  No.
14      Q.  Okay.  So you may testify to liability and
15  causation?
16      A.  No.
17      Q.  All right.  I think we're having a
18  miscommunication then.
19          So will you be testifying to liability in
20  this matter?
21      A.  No, I will not.
22      Q.  Will you be testifying to causation in this
23  matter?
24      A.  No, I will not.
25      Q.  The second sentence of your Paragraph 6

Page 55

1  says: "However, in certain circumstances the
2  evidence provided to Mr. Elkin may indicate that
3  there is no causal link between Chinese
4  drywall/defective drywall and the claimed damage.  I
5  have noted such instances in this report."
6          Did I read that accurately?
7      A.  Yes.
8      Q.  Are you making some causal opinion when you
9  note such instances in your report?
10      A.  I don't know whether it will rise to the
11  level of a causal opinion, but I may be asked to
12  provide testimony of the items that I noted that
13  indicate there is no causal link in the information
14  that Mr. Elkin received.
15      Q.  And is that something that you've discussed
16  with counsel, that you may be asked to provide
17  testimony on some of these items and whether there
18  is a causal link?
19      A.  No.
20      Q.  It just occurred as you were going through
21  the review that you saw certain items that you
22  thought there was no causal link?
23      A.  Yes.  There were certain instances where the
24  documentation indicated that there may be no causal
25  link, as indicated in my report, and because it's in

Page 56

1  my report, I may be asked to testify to such --
2  to -- with regard to that matter.
3      Q.  All right.  If and when we discuss an item
4  that you think lacks a causal link, will you please
5  flag that for us in the course of this discussion?
6      A.  I will do my best to do so.
7      Q.  Thanks.  Are you offering any opinions
8  regarding the credibility of testimony of any of the
9  plaintiffs in this litigation?
10      A.  I don't believe so.
11      Q.  Are there any other considerations that you
12  evaluated that are not mentioned in your report in
13  terms of the scope of what you're trying to
14  accomplish?
15      A.  No.
16      Q.  So do you have Exhibit 6 in front of you,
17  your report?
18      A.  Yes.
19      Q.  Good.  Would you turn, please, to page 29,
20  which is Exhibit 1 to your report, the information
21  you've considered.  This is the compendium of all
22  the information that you have utilized to prepare
23  your report; is that correct?
24      A.  Yes.  I do my best to include everything and
25  things are also cited throughout my report,

Page 57

1  references are cited throughout the report, but this
2  generally captures everything.  There could be one
3  thing that I missed, but that's the attempt.
4      Q.  All right.  Did you discuss any information
5  with -- in connection with the preparation of your
6  report with any of the other experts that the
7  defense counsel have retained for purposes of this
8  litigation?
9      A.  No.
10      Q.  Are you aware that they are -- there are
11  other experts that have been retained other than
12  yourself on the defense side of this matter?
13      A.  Yes.
14      Q.  Do you know the experts that were retained?
15      A.  I don't know that I've ever met any of them.
16      Q.  Have you communicated with any of them?
17      A.  Not in regard to this case.
18      Q.  Who have you communicated with in regards to
19  any matter?
20      A.  I don't know that I have.  Mr. Fishkind is
21  an economist who routinely issues reports on the
22  status of the economy in Florida and I may have
23  reached out to him at some point in the past on some
24  matter.  I don't specifically recall but I can't
25  testify that I've never spoken to him.

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 556 of 802
Case 2:14-cv-02722-MCR Document 244 entered on FLSD Docket 11/26/15 Page 17 of 44
Confidential - Subject to Further Confidentiality Review

Page 58

1    Q.  Fair enough.  Have you reviewed any of --
2  any of the records, including Mr. Fishkind's report,
3  in this matter?
4    A.  Yes.
5    Q.  When?
6    A.  A number of weeks ago.
7    Q.  Prior to your report issuing, or after?
8    A.  Prior.
9    Q.  Whose report did you have prior to your
10 report issuing?
11   A.  Mr. Graziano, I believe that's his name.
12   Q.  All right.  Did you have any -- Mr. Graziano
13 is an expert retained on behalf of the plaintiffs.
14 Do you understand that?
15   A.  Oh, you know what, I didn't recall that.  I
16 know that I looked at his report.  That was the only
17 report that I looked at.
18   Q.  Okay.
19   A.  I apologize that I forgot.
20   Q.  So --
21   A.  So the answer would be no then, I have not
22 looked at any of the other plaintiffs' --
23   Q.  The other defense experts?
24   A.  -- defense experts' report.  The only report
25 that I did look at, and I did not review it in any

Page 59

1  depth, was Mr. Graziano's report.
2    Q.  Thank you.  Now, I believe that you
3  clarified with your answer, but thank you for
4  clarifying further.
5      And Mr. Graziano was the only plaintiffs'
6  expert report then that you recollect reviewing
7  prior to issuing your report?
8      MR. KALIL:  Objection to the form.
9    A.  Other than Mr. Elkin's report, yes.
10   Q.  And Mr. Graziano's report is not mentioned
11 in the reliance material, is it?
12   A.  No.
13   Q.  So you did not consider it or rely upon it,
14 you just reviewed it?
15   A.  Yes.
16   Q.  You have no intention to opine upon
17 Mr. Graziano's report; is that correct?
18   A.  Yes.
19   Q.  In your reliance material, the information
20 you had considered, you have identified cases
21 provided by counsel on the first page that run
22 through the second page.  Do you see that?
23   A.  Yes.
24   Q.  How did you come to acquire this material?
25   A.  Counsel provided them to me.

Page 60

1    Q.  Did you ask for them?
2    A.  We had discussed that there was case law
3  regarding how value is defined and how damages are
4  calculated for personal property, and counsel
5  offered these cases to me.
6    Q.  Did you request it?
7    A.  After we discussed it, yes.
8    Q.  And -- strike that.
9      None of these cases -- or let me say it
10 differently.
11     All of these cases that were provided to you
12 are from intermediate appellate courts from the
13 state of Florida; is that correct?
14   A.  Without looking at each one, I don't recall.
15   Q.  Are you aware that there is a stratified
16 system of courts in the state of Florida?
17   A.  Yes.
18   Q.  There is trial courts, intermediate
19 appellate courts and then the Supreme Court of
20 Florida, do you understand that?
21   A.  Yes, I do.
22   Q.  Are any of these opinions from the Supreme
23 Court of Florida?
24   A.  No.
25   Q.  Did you inquire of counsel as to why you

Page 61

1  were only being provided intermediate appellate
2  court decisions as opposed to rulings by the Supreme
3  Court of Florida?
4    A.  No.
5    Q.  Is that something you noticed or didn't even
6  take into account?
7      MR. KALIL:  Object to the form.
8    A.  I am not an attorney and I looked at the
9  information, looked at the definitions, and took it
10 under advisement.  I'm not rendering any opinion as
11 to the validity of these cases.
12   Q.  All right.  How did you come to acquire the
13 Findings of Fact and Conclusions of Law relating to
14 the June 9, 2015 damages hearing authored by Judge
15 Fallon in MDL2047 regarding in Re:  Chinese
16 Manufactured Product Liability Litigation?
17   A.  I requested it.
18   Q.  What was the nature of the discussion that
19 led to your request?
20     MR. KALIL:  Object to the form.
21   A.  I said could you please provide me with this
22 particular finding of facts and it was provided to
23 me.
24   Q.  All right.  And do you accept the findings
25 of fact that Judge Fallon rendered in his opinion?

Page 62

1   MR. KALIL: Object to the form.
2   A. I'm not an attorney. I wanted it for
3   informational purposes. I am not qualified to make
4   a determination on the finding of facts within that
5   opinion.
6   Q. Did you read that he made a finding that
7   Chinese drywall is defective?
8   A. If that's what it said, then yes, that's
9   what I read.
10  Q. And did you accept that finding of the
11  court?
12  MR. KALIL: Object to the form.
13  A. I neither accepted nor rejected it. I read
14  it for informational purposes.
15  Q. Did you read that Judge Fallon found that
16  the -- as established by the US consumer products
17  safety commission, the Florida Department of Health,
18  other scientific entities and this court in the
19  Germano Findings of Fact Conclusions of Law, the
20  defective of nature of this Chinese drywall is
21  undisputed?
22  MR. KALIL: Object to the form.
23  A. If that's what it says, then that's what I
24  read.
25  Q. Did your clients ask you to assume that

Page 63

1   their product was defective?
2   MR. KALIL: Object to the form.
3   A. No.
4   Q. Were you aware that the defendants in this
5   case have been found to be in default?
6   MR. KALIL: Object to the form.
7   A. I believe I am aware of that.
8   Q. How did you become aware of that? Were you
9   informed by counsel or did you read that in Judge
10  Fallon's opinion?
11  MR. KALIL: Object to the form.
12  A. I --
13  Q. Let me rephrase the question based on the
14  objection.
15  MR. LONGER: What is the objection,
16  compound?
17  MR. KALIL: It's compound and it misstates
18  our position, but you've got your question.
19  BY MR. LONGER:
20  Q. How did you come to be aware that the
21  defendants are in default in this litigation?
22  MR. KALIL: Object to the form.
23  A. I don't recall.
24  Q. Did you discuss it with counsel?
25  A. I think, yes, I had discussions with counsel

Page 64

1   as to how the case has progressed and I believe that
2   counsel advised me of the status. I'm not -- I
3   don't have an opinion as to whether there is a
4   default. My role is to look at damages.
5   Q. So based on a conversation you had with
6   counsel, you understood that the defendants are in
7   default in this litigation?
8   MR. KALIL: Object to the form.
9   A. I'm not -- I understand that there is a
10  default. Quite frankly, I did not get involved with
11  that aspect of it because the scope of my engagement
12  was to review Mr. Elkin's report as to damages, not
13  with regard to liability.
14  Q. How did reading the Findings of Fact and
15  Conclusions of Law inform your opinion or opinions
16  in the report?
17  A. I don't know that it did.
18  Q. So you requested the Findings of Fact and
19  Conclusions of Law simply to get you up to speed on
20  the litigation; is that fair?
21  A. No.
22  Q. Okay. Tell me why you requested it and how
23  it helped you once you saw it.
24  A. I believe that one of the plaintiffs had
25  referred to a ruling a number of times, and I had

Page 65

1   asked for a copy of the ruling so I would be
2   informed as to -- and have a context for what the
3   plaintiff was discussing.
4   Q. You identify Revenue Ruling 5960, correct?
5   A. Yes.
6   Q. That provides the definition of the gross
7   estate; is that correct?
8   A. I -- that's not generally what I refer to
9   for Revenue Ruling 5960 for, so I'm -- there may be
10  a definition of a gross estate in there, but that's
11  not how I'm -- that's not the source that I'm using
12  it for.
13  Q. What is the reasoning for your reliance upon
14  Revenue Ruling 5960?
15  A. Well, again, reliance? It's a reference.
16  I'm not sure it's a reliance. The commonly referred
17  to definition of fair market value is defined within
18  Revenue Ruling 5960.
19  Q. Am I correct that Revenue Ruling 5960 is
20  authoritative in the field of business valuations?
21  A. Yes.
22  Q. And what part of 5960 are you applying here?
23  A. The definition of fair market value. Well,
24  again, I'm not applying it. I'm using it as a
25  reference and one of the sources of defining what

| Page 66 | Page 68 |
|---|---|

**Page 66**

1  fair market value is. It's a common definition
2  outside of Revenue Ruling 5960, but that's a
3  commonly cited source for the definition.
4     Q. Tell me if you agree with this statement:
5  "A sound valuation will be based upon all the
6  relevant facts but the elements of common sense,
7  informed judgment, and reasonableness must enter
8  into the process of weighing those facts and
9  determining their aggregate significance."
10     MR. KALIL: Object to the form.
11     A. In general, yes.
12     Q. Are you aware that that comes from Revenue
13  Ruling 5960?
14     A. It sounds like it would, and that would be
15  applicable to a business valuation, in determining
16  value for a business valuation.
17     Q. And you're offering no opinions on business
18  valuation in this matter based on my understanding
19  of your prior testimony, correct?
20     A. Yes.
21     Q. So is Revenue Ruling 5960 inapplicable to
22  this matter?
23     MR. KALIL: Object to the form.
24     A. I -- no.
25     Q. The definition of fair market value

**Page 67**

1  transcends to your opinion, correct?
2     MR. KALIL: Object to the form.
3     A. No. The definition of fair market value is
4  cited in this particular revenue ruling as it is
5  cited in, I believe, regulations as well. It's the
6  same definition. I just happen to refer to revenue
7  ruling 5960.
8     Q. The last item on this exhibit, on page 31,
9  you say: "This was from various property appraiser
10  websites regarding history of affected properties of
11  claimants."
12     Do you see that?
13     A. Yes.
14     Q. Did you provide this information to your
15  counsel?
16     A. Yes.
17     Q. Where is that? Or what is it? What was it?
18     A. Just information from the property
19  appraiser's site showing prior transactions of each
20  of the properties. I believe the information, for
21  the most part, was included in Mr. Elkin's
22  documentation, so it's not something that I have
23  relied upon, but I had pulled the information and
24  had not pulled it from the binders that were
25  produced to you, so it's listed there.

**Page 68**

1     Q. All right. Is there any other materials not
2  listed here that you considered or relied upon just
3  from your career?
4     MR. KALIL: Object to the form.
5     A. No, other than what's cited in this report,
6  I don't believe so. I mean, I have 30 years of
7  experience, I have knowledge, but that's -- I don't
8  know that that's the knowledge that's applied in my
9  analysis.
10     Q. All right. That's really what I'm getting
11  at. You've got 30 years of experience, you've read
12  the other materials. Is there any one thing that
13  you're drawing from just based on general knowledge
14  and experience?
15     A. No.
16     Q. All right. Is -- going back to your report,
17  I just want to ask, is this report, Exhibit
18  Number 6, complete and accurate?
19     A. No.
20     Q. I want to explore that with you. I received
21  materials over the weekend in preparation for this
22  deposition from your cocounsel and I've asked the
23  court reporter to mark as Exhibit Number 7 and
24  Number 8 two documents, one is an e-mail and one is
25  an errata sheet.

**Page 69**

1     (Bour Exhibit 7 was marked for
2  identification.)
3     (Bour Exhibit 8 was marked for
4  identification.)
5  BY MR. LONGER:
6     Q. I'll ask you to take a look at that.
7     MR. KALIL: Exhibit 7 was the e-mail?
8     MR. LONGER: 7.
9     MR. KALIL: Thank you.
10     A. I'm sorry, which do you want me to look at
11  first?
12     Q. Exhibit Number 7.
13     A. Yes.
14     Q. I just -- I'm really just identifying it for
15  the record. This was the transmittal e-mail that
16  sent to me your errata sheet. Have you seen that
17  before?
18     A. No.
19     Q. You can put that aside. Take a look at
20  Number 8.
21     Did you draft or have someone draft for you
22  Exhibit Number 8?
23     A. Yes.
24     Q. And previously I asked you if your report
25  was final and accurate and you said no. Is that

Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 559 of 802
Case 2:14-cv-02722-EEF-JCW Document 36-21 Filed 09/11/2018 Page 20 of 44
Confidential - Subject to Further Confidentiality Review

Page 70

1  because of this document, Exhibit Number 8?
2      A.  Yes.
3      Q.  And so you've gone back to your report and
4  found matters that were either inaccurate or in
5  error, or needed correction, correct?
6      A.  Yes.
7      Q.  And you flagged them in this document called
8  an errata?
9      A.  Yes.
10     Q.  All right.  Is there any other changes post
11 the errata that you have found that would make your
12 report more accurate, more final, more definite?
13     A.  No.
14        MR. LONGER:  Can we just take a quick break?
15        (Discussion off the record.)
16     (Recess from 11:29?a.m. until 11:32 a.m.)
17        THE VIDEOGRAPHER:  We're now back on the
18 record at 11:32.
19 BY MR. LONGER:
20     Q.  Referring to Exhibit Number 8, I counted 17
21 entries that you flagged as either matters that were
22 inaccurate, in error or needed correction.  Is that
23 correct?
24     A.  Yes.
25     Q.  All right.  Let's turn back to Exhibit

Page 71

1  Number 6 -- and by the way, if, in the course of my
2  questions I missed a correction from your errata,
3  you will point that out to me if we're going through
4  these changes and I miss the change.
5        Paragraph Number 13 is where I'd like to
6  begin, and in that paragraph you say:  "My
7  assignment was to determine whether the opinion of
8  damages was arrived at using methods and information
9  resulting in a reliable measurement of damages."
10        How would you define reliable measurement of
11 damages as you use it in that sentence?
12     A.  Something that the court or a trier of fact
13 could use to give them an accurate and consistent
14 representation of damages.
15     Q.  Is there any written source that supports
16 your use of that term?
17     A.  I use the common definition of reliable.
18     Q.  Do you believe that there is any criteria
19 where some items may be too small to warrant
20 investigation?
21        MR. KALIL:  Object to the form.
22     A.  There could be.
23     Q.  What criteria would that -- would you apply
24 to that?
25     A.  I haven't made that determination.

Page 72

1      Q.  All right.  Paragraph 20, you state there:
2  "Mr. Elkin performed limited forensic procedures
3  which essentially amounted to matching alleged
4  damages to any backup information provided.
5        What limited forensic procedures did you
6  observe Mr. Elkin to employ?
7      A.  He matched the claimed damages in his
8  schedules with information provided by the
9  claimants.
10     Q.  Is there a methodology that you believe
11 should have been done that Mr. Elkin did not
12 perform --
13        MR. KALIL:  Object to the form.
14     Q.  -- in this regard?
15     A.  I haven't made the determination of what
16 methodology would be best suited for this situation.
17     Q.  You have no opinion on methodology to be
18 employed in this situation; is that correct?
19     A.  No.  I said I have not determined the best
20 methodology that could have been used in this
21 situation.
22     Q.  What other methodologies, besides that
23 employed by Mr. Elkin, would you imagine could be
24 employed that he did not?
25        MR. KALIL:  Object to the form.

Page 73

1      A.  There could have been a documentation as to
2  the particular assets that were allegedly damaged
3  documenting their age, documenting what they
4  actually were, the condition at the time of the
5  damage, documenting the date of damage.  So there
6  are method -- there are methodologies or procedures
7  that he could have done to better document that
8  information.
9      Q.  Is that a methodology or is that simply the
10 application of the methodology that Mr. Elkin, in
11 fact, attempted to employ?
12     A.  Actually, maybe it would be better described
13 instead of methodology is procedures, that he could
14 have done procedures to identify specific
15 information that he did not employ.
16     Q.  Okay.  So you take issue with procedures he
17 employed, not the methodology he employed?
18     A.  That's not what I said.  You asked a
19 specific question, I gave you a specific answer.
20     Q.  Well, let me understand your --
21     A.  I used the word methodology and then I
22 corrected it and said procedures would be a better
23 description rather than methodology.
24     Q.  All right.  And I am asking you are you
25 taking issue with Mr. Elkin's methodology or his

Page 74

1 procedures?
2 A. Yes.
3 Q. Which?
4 A. Both.
5 Q. All right. In Paragraph 21 you say that he
6 did not independently determine the fair market
7 value of any property as a measurement of damages,
8 and then you follow that with a quote of Mr. Elkin's
9 testimony on the following page. Do you see that?
10 A. Yes.
11 Q. Is this an observation or a criticism of
12 Mr. Elkin's work?
13 A. Yes.
14 Q. Sorry. Is this an observation of
15 Mr. Elkin's work?
16 A. Yes.
17 Q. It is not a criticism?
18 A. No, it is also a criticism. It's a
19 criticism that either he didn't determine it or it
20 wasn't determined for him to use in measuring
21 damages.
22 Q. I take it -- I see. You yourself did not
23 make any evaluation of value of any personal
24 property in this litigation, correct?
25 A. Yes.

Page 75

1 Q. And you are not intending to offer
2 affirmative opinions of fair market value in this
3 litigation, right?
4 A. Yes.
5 Q. You're just criticizing Mr. Elkin for what
6 you think he did not do; is that right?
7 A. Well, I am -- it's my opinion that in order
8 to determine damages, you need to know the value of
9 what was damaged.
10 Q. And your understanding of value is based
11 upon case law provided to you by counsel, correct?
12 A. No.
13 Q. What is the basis for -- I'll get to that, I
14 guess. No, let me ask now.
15 What is -- what are you relying on, other
16 than the information provided to you by counsel, for
17 the definition of damages?
18 MR. KALIL: Objection to the form.
19 A. My understanding of the calculation of
20 damages based on my experience, based on the
21 definition of value, market value, fair market
22 value, that's commonly used, and the case law that I
23 was provided to support and are consistent with that
24 definition.
25 There's also reference for tax purposes in

Page 76

1 computing casualty losses as to the definition of
2 value, or definition of how to -- how the loss in
3 value is calculated.
4 Q. Where is this reference for tax purposes in
5 computing casualty losses?
6 A. It's referred to in the instructions. There
7 is a publication on casualty losses which I believe
8 was included in Mr. Elkin's documentation.
9 Q. And what is that reference and what is it
10 that you're relying on?
11 A. I'm sorry. I'm not sure what your question
12 is.
13 Q. Well, you -- you say there is also a
14 reference for tax purposes in computing casualty
15 losses as to the definition of value. What are you
16 relying on to get to that?
17 A. Mr. Elkin, in his documentation, I believe
18 that's where this came from, Publication 547,
19 Casualty, Disasters and Thefts.
20 Q. Thank you.
21 A. Okay.
22 Q. As I understand it, you and your staff
23 evaluated and reviewed Mr. Elkin's spreadsheet and
24 other data that he produced in this litigation,
25 correct?

Page 77

1 A. Yes.
2 Q. And you provided to us the YA analysis of
3 Elkin's report exhibits, which was your recording of
4 your evaluation of his spreadsheet; is that correct?
5 A. I'm not sure that's a correct
6 characterization.
7 Q. What is on the spreadsheet that you've
8 provided to us that is the YA analysis of Elkin's
9 report exhibit?
10 A. I'd -- I actually have to look at exactly
11 what's in there, but -- what's in that file, I don't
12 recall specifically what was in the YA analysis, so
13 there may be certain things in there that are my
14 analysis, there may be certain things in there that
15 are just reproductions of his work.
16 (Bour Exhibit 9 was marked for
17 identification.)
18 BY MR. LONGER:
19 Q. Over the break I had this marked. It's the
20 expert report and work paper binder, which is
21 Exhibit Number 9. I'd ask you to review that.
22 What is Exhibit Number 9?
23 A. This would be any work papers or schedules
24 that I produced, and it includes a copy of -- my
25 working copy of the report.

Page 78

1    Q.   And I see that you have in front of you a
2  whole binder.  Is -- what is in the material that
3  you have before you?
4    A.   The first three tabs are what you've given
5  me in Exhibit 9, and the other tabs are just copies
6  of reference materials that were previously provided
7  to you electronically.
8    Q.   All right.  Let me hand you another exhibit.
9       MR. LONGER:  Can you hand me --
10      (Bour Exhibit 10 was marked for
11  identification.)
12  BY MR. LONGER:
13    Q.   I'm going to have marked as Exhibit
14  Number 10, a hard copy of a spreadsheet that your
15  office produced -- that counsel produced from your
16  office.  I'm going to represent to you, Ms. Bour,
17  that this is the YA analysis of Elkin's report
18  exhibit that we had been talking about earlier.
19    A.   Okay.  Yes.
20    Q.   And previously you said you couldn't
21  recollect -- you'd have to look at the document to
22  know exactly what was in the file.  So I wanted to
23  hand it to you so that you have it now and we can
24  talk about it.
25       As I understand that document, you were

Page 79

1  using Mr. Elkin's spreadsheet and added some
2  material to it; is that correct?
3    A.   Yes.
4    Q.   All right.  And what is it that you added to
5  the document?
6    A.   Any column which begins with YA, for Yip
7  Associates, would be a modification that we did to
8  the document.
9    Q.   All right.  And there are two columns at the
10  end of that document that you added, correct?
11    A.   Some are at the end of the document.
12  Sometimes the page numbers are moved over more
13  towards the middle for convenience, the YA page
14  number.
15    Q.   And the YA page number is reference -- is
16  your reference for work that you performed
17  throughout the analysis that you've done on your
18  master spreadsheet; is that correct?
19    A.   No, I don't think that's an appropriate
20  characterization.
21    Q.   Oh.  Well, the YA page number was a
22  reference that you used in other papers that you
23  created, or other documents that you've created?
24    A.   No.  The YA page number references specific
25  page numbers in files, in -- in binders.  It does

Page 80

1  not represent what you're saying.
2    Q.   Well, you created the YA page number, you
3  created that column?
4    A.   Yes, I created that column.
5    Q.   And you filled in that column?
6    A.   Yes.
7    Q.   With a page number?
8    A.   Yes.
9    Q.   And that reference that you filled in was
10  your reference for any particular document or source
11  in connection with your preparation of your
12  spreadsheet, correct?
13    A.   I -- no.  There -- it's an index.  When --
14  when you say in preparation of my spreadsheet, it's
15  just a reference number here so that I can go to
16  another file and find something.
17    Q.   Right, so -- but you filled in the -- that
18  page number, and that's your reference for that page
19  number?
20    A.   Yes.
21    Q.   Okay.  All right.  And there is also another
22  column that you've added besides the YA page number,
23  which is the "Comments" column, correct?
24    A.   Yes.
25    Q.   And those are the substantive differences

Page 81

1  between the YA document and Mr. Elkin's spreadsheet,
2  the addition of those two columns, correct?
3    A.   Yes.
4    Q.   All right.  I'd like to go back to
5  Paragraph 15 of your rebuttal report.
6       And there, you summarize your opinions,
7  correct?
8    A.   Yes.
9    Q.   And as I see it, you take issue with
10  accuracy of Mr. Elkin, consistency of Mr. Elkin, and
11  reliability of Mr. Elkin's analysis, correct?
12    A.   Yes.  Well, the accuracy within the report,
13  the consistency of various factors in the report,
14  and then the reliability of the report in total.
15    Q.   All right.  Is accuracy an accounting
16  standard?
17       MR. KALIL:  Object to the form.
18    A.   Well, I don't know that accuracy, as such,
19  is an accounting standard, per se.  There is not an
20  accounting standard called "accuracy," but within a
21  damage context, accuracy is a factor.
22  BY MR. LONGER:
23    Q.   What standard did you employ to measure
24  accuracy?
25    A.   Well, when you -- you measure accuracy?

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 562 of 802
Case 2:14-cv-02722-JTM Document 36-5 Filed 09/04/15 Page 23 of
44
Confidential — Subject to Further Confidentiality Review

1    Q.  Right, what was -- what was the -- the
2  measure by which you measured accuracy?
3    A.  Well, errors, the number of errors,
4  duplications, and omissions in total.  Something is
5  either accurate or it's not.  So I looked at -- I
6  looked at errors, duplications, and omissions.
7    Q.  All right.  And with -- the same with
8  respect to consistency, is consistency an accounting
9  standard?
10   A.  There's not an accounting standard called
11  "consistency."
12   Q.  Is there an accounting -- well, let me
13  ask --
14   A.  I --
15   Q.  Sorry.  I didn't want to interrupt you, if
16  you want to finish.
17   A.  Yes.  You're asking for -- there is not a
18  consistency standard, as you're asking.
19   Q.  What -- is there a standard that you
20  employed to measure consistency?
21   A.  Again, consistency is a factual
22  determination.  There is either a consistency
23  between the way something is applied or there isn't.
24  It's not a matter of standard.  It's a factual
25  conclusion.

1    Q.  All right.  Same with reliability, is
2  reliability an accounting standard?
3    A.  Yes?  Well, it is a factor that our work
4  should be reliable.  I'm not sure you're going to
5  match it necessarily to, as you're calling it, a
6  standard, but it is incorporated in the standards.
7    Q.  And what is the measure of reliability that
8  you employed to render an opinion that Mr. Elkin's
9  work was not reliable?
10   A.  Based on the inaccuracies and the lack of
11  consistency, it's my professional opinion that the
12  damage calculations of Mr. Elkin's -- Mr. Elkin's
13  conclusions are not reliable, so it's based on the
14  facts and circumstances in their totality.
15   Q.  You're not looking for an accounting
16  standard, you're not -- you're just basing it on
17  what your observations were of Mr. Elkin's work?
18   MR. KALIL:  Object to the form.
19   A.  So -- okay.  I -- and again, I'm trying to
20  match your question with an appropriate answer.  So
21  one of the practice aids that we consider in
22  performing litigation services cautions that
23  "failure to appropriately direct and supervise the
24  work performed may adversely affect the quality and
25  reliability of the expert's opinion."

1    So it's something that's integrated into
2  what we do because our role is to assist the trier
3  of fact, and if we're not providing a reliable
4  opinion, then that doesn't assist the trier of fact.
5    Q.  And I took it that you were reading from
6  your report.  Where were you reading?
7    A.  Paragraph 31.
8    Q.  All right.  Is it your assertion that
9  Mr. Elkin did not supervise his staff?
10   A.  My opinion is that Mr. Elkin did not catch
11  certain errors and omissions, and whether that's a
12  failure to supervise or his own errors, I don't
13  know.
14   Q.  You were not personally observing his
15  supervision of his staff, correct?
16   A.  Correct.
17   Q.  So you are making that opinion based upon
18  your observation of the work product that he
19  produced, correct?
20   A.  That's not completely accurate.
21   Q.  What would make it completely accurate?
22   A.  I also sat at his deposition and listened to
23  his testimony and listened to him describe how the
24  work was done and his role in the work.  So based on
25  his testimony, either he failed to supervise or

1  he -- or he made mistakes.
2    Q.  Well, are you aware of any accounting audit
3  where some mistakes aren't -- are -- are made?
4    A.  Well, an audit is not relevant to damage
5  work, so it's not -- it's not a comparable
6  crossover.
7    Q.  All right.  Well, in this instance, you made
8  mistakes, yourself, correct?
9    A.  Yes.
10   Q.  Your report was inaccurate, correct?
11   A.  There are certain things that were
12  inaccurate and there are -- there are a reasonable
13  number of mistakes, and it depends on the nature of
14  the mistakes and -- with regard to the impact on the
15  overall conclusions.
16    So, for example, one of my mistakes, I had a
17  typographical error.  I typed FSSF instead of SSFS.
18  Okay.  That is absolutely a mistake, I did it twice,
19  but that doesn't impact my decision in the work that
20  I performed, nor does it impact my opinion.
21    Whereas, Mr. Elkin omitted, for example, the
22  sale of an asset for one of the claimants.  That
23  actually does impact his opinion and the conclusion.
24   Q.  Okay.  We were talking about standards, and
25  you had more than just typographical errors in your

Page 86

1  report, right?
2      A.  I had -- I had omitted -- I had -- I think I
3  had included two line items that should have been
4  omitted, and I had -- there may have been one other
5  section where I went back and I found some
6  additional information, but the majority of the rest
7  of the items were typographical.
8          There may have been -- I'm looking -- I
9  had -- I inadvertently listed $600 in a narrative
10  discussion with regard to a particular item when the
11  amount should have been $384.  So there was a, you
12  know, 200-plus dollar differential in a narrative
13  description, but that -- other than, like I said,
14  the other -- there were a few items which were
15  positive that should have been negative, and then
16  there was -- there were, I think, two items included
17  that needed to be omitted and one group of items
18  that needed to be added when I did some further
19  investigation, but that's it.
20          So while there are 17 items here, quite a
21  few of those 17 counting are typographical errors.
22      Q.  All right.  Well, I'm going to revisit that,
23  but Mr. Elkin was assembling a lot of information
24  here.  Would you agree with that?
25      A.  Yes.

Page 87

1      Q.  He was dealing with thousands of documents,
2  correct?
3      A.  Yes.
4      Q.  He was dealing with testimony of witnesses,
5  correct?
6      A.  Yes.
7      Q.  He was dealing with information that was
8  being provided to him from witnesses that was not
9  testimony, right?
10      A.  Yes.
11      Q.  You had a finite assemblage of data that he
12  had provided to you, correct?
13      A.  Well, I had the -- yeah, the data he
14  provided to me, yes, which I assume is all the data
15  he received.
16      Q.  But he was the initial compiler, you didn't
17  have to compile that information?
18      MR. KALIL:  Objection to the form.
19      A.  No.  I worked with what he provided.
20  BY MR. LONGER:
21      Q.  And there's been instances where you have
22  been the compiler of information; isn't that true?
23      A.  Yes.
24      Q.  And have you never made mistakes in your
25  compilation of that data?

Page 88

1      A.  No, I have made mistakes.
2      Q.  And we're all subject to criticism for our
3  mistakes, right?
4      A.  Yes.
5      Q.  Are we violating a professional standard
6  when we make mistakes?
7      A.  Depending upon the magnitude of the mistakes
8  in the context of the report, we -- it can be.
9      Q.  Where you made mistakes in the past
10  compiling information, were you violating ethical
11  standards?
12      MR. KALIL:  Objection to the form.
13      A.  I don't believe I was.
14  BY MR. LONGER:
15      Q.  All right.  You reference standards in --
16  that are applicable in this report in Section V of
17  your report, Roman V, right?
18      A.  Yes.
19      Q.  And you rely on a standard provided by the
20  American Institute of Certified Public Accountants
21  that is a "Statement on Standards for Forensic
22  Services."  Is that also correct?
23      A.  I include that in here.  It has not -- I
24  don't rely upon it.  I've included it in here.  It
25  encompasses things which are already independent of

Page 89

1  that document standards.
2      Q.  That standard is not yet applicable to
3  engagements prior to May 1, 2019, correct?
4      A.  Yes.
5      Q.  And you acknowledge that those proposed
6  standards do not specifically apply to this
7  engagement, correct?
8      A.  No.  I -- I agree that SSFS, the statement
9  for forensic services, a statement of standards
10  on standards for forensic services, is not in effect
11  and does not apply.  However, the items that I list
12  refer to the Code of Professional Conduct, which is
13  in existence and does apply.
14      Q.  And that applies to all accountants in the
15  state of Florida?
16      A.  It applies to all members of the AICPA and
17  specifically the Board of Accountancy has adopted
18  that as standards in the state of Florida.
19      Q.  I'm going to mark them as -- both the code
20  and the standards as an exhibit.
21      MR. LONGER:  So why don't we mark as Exhibit
22  No. 11 the Statement on Standards for Forensic
23  Services.
24          (Bour Exhibit 11 was marked for
25  identification.)

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 564 of 802
Case 2:14-cv-24009-MBN Document 9-11 entered on FLSD Docket 11/26/15 Page 25 of
44
Confidential - Subject to Further Confidentiality Review

Page 90

1    MR. LONGER:  That's 11.
2    MR. KALIL:  Thank you.
3  BY MR. LONGER:
4    Q.  Ms. Bour, you have before you Exhibit
5  No. 11, correct?
6    A.  Yes.
7    Q.  Is that the Statement on Standards For
8  Forensic Services that you've been discussing?
9    A.  Yes.
10    Q.  And you quote that in Paragraph 28 of your
11  report, correct?
12    A.  Yes.
13    Q.  Just out of curiosity, you -- you're quoting
14  from Standard .04 of the SSFS?
15    A.  Yes.
16    Q.  You omit, do you not, the first standard
17  that is provided in Section .04; is that correct?
18    A.  Yes.
19    Q.  Was that intentional?
20    A.  Yes.
21    Q.  So that standard is "Professional
22  competence," correct?
23    A.  Yes.
24    Q.  Do you take any issue with Mr. Elkin being
25  professionally competent in the sense of

Page 91

1  Standard .04's mention?
2    A.  Well, again, it -- it's .04 within this
3  particular agreement.  These are the general
4  standards rules of the code, which exists
5  independently of this particular set of standards,
6  and I have not made a determination as to the
7  professional competence with regard to this
8  engagement.
9    Q.  You have made opinions about sufficient
10  relevant data, correct?
11    A.  Yes.
12    Q.  And the standard provides:  "Obtain
13  sufficient relevant data to afford a reasonable
14  basis for conclusions or recommendations in relation
15  to any professional services performed."
16    Did I read that accurately?
17    A.  Yes.
18    Q.  What standard determines "a reasonable
19  basis" as that term is used in that sentence?
20    A.  I don't know that there is a definition
21  within the standard of a reasonable basis.  That's
22  what the standard says.
23    Q.  So reasonable bases could be broadly -- I'm
24  not articulating this well.  Let me say it
25  differently.

Page 92

1    There is wide latitude, is there not, for
2  what constitutes "a reasonable basis" for making a
3  conclusion or recommendation?
4    Is that fair to say?
5    A.  I don't know that I would say there's "wide
6  latitude."  I agree that there is some latitude, but
7  I think "wide latitude" would be inaccurate.
8    Q.  There is reasonable latitude for what
9  constitutes a reasonable basis; is that more
10  accurate?
11    A.  I don't know that that would be inaccurate.
12  I wouldn't describe it that way.
13    Q.  I'll accept you.
14    MR. LONGER:  I'm going to have marked as
15  Exhibit No. 12 the APA -- AICPA Code of
16  Professional Conduct.
17    (Bour Exhibit 12 was marked for
18  identification.)
19    MR. KALIL:  Thank you.
20  BY MR. LONGER:
21    Q.  Ms. Bour, you had talked about the SSFS
22  incorporating the AICPA Code of Professional
23  Conduct, correct?
24    A.  Yes.
25    Q.  And I've handed you the code itself, right?

Page 93

1    A.  Yes.
2    Q.  And Exhibit 12 -- I'm -- I'm turning to
3  Page 105 -- has general standards which comport with
4  those that you quote in Paragraph 28 of your report,
5  correct?
6    A.  Yes.
7    Q.  And it also includes "professional
8  competence," which you omitted, correct?
9    A.  I didn't omit it.  I just didn't include it.
10    Q.  Well, it's not in your report, right?
11    A.  Correct.
12    Q.  So by not including it, you omitted it,
13  right?
14    A.  I -- well, I look at that as intention.  No,
15  I -- I chose to include the others.  I didn't choose
16  to necessarily omit "professional competence," so
17  I --
18    Q.  You purposely did not include it in your
19  report, right?
20    A.  Yes, but I also didn't include the entire
21  set of standards in my report.
22    Q.  Uh-huh.  So as to the standards that you did
23  describe, you -- we've talked about one, but let's
24  go to exercising "due professional care in the
25  performance of professional services."

Page 94

1    Is it your assertion that Mr. Elkin did not
2  abide by this standard?
3    A.  I am just referring to my report.  I want to
4  make sure that I accurately -- yes, I conclude that
5  Mr. -- the number and type of errors indicate that
6  Mr. Elkin did not meet his obligation to exercise
7  professional diligence in performing the engagement.
8    Q.  Is there any other grounds that you have for
9  making that conclusion?
10    MR. KALIL:  Object to the form.
11  BY MR. LONGER:
12    Q.  Is that everything?
13    A.  That's -- yeah.  Yes, it is.
14    Q.  And that -- you're reading from what
15  paragraph in your report?
16    A.  117.
17    Q.  From the summary?
18    A.  I'm sorry?
19    Q.  From the summary.
20    A.  Yes, Paragraph 117.
21    Q.  You also quote the "Planning and
22  supervision" element of Section .04, which you say
23  Mr. Elkins -- I'm sorry, I'm not saying this well.
24    You also quote, in Paragraph 28, that the
25  code, the proposed standard, requires ad- -- that

Page 95

1  one "adequately plan and supervise the performance
2  of professional services."
3    And it's your assertion that Mr. Elkin did
4  not abide by this standard based on what you heard
5  him testify to and the nature of the results of his
6  report?
7    A.  Yes.
8    Q.  Is there anything else?
9    A.  No.
10    Q.  And let me just ask this same question, but
11  as to Paragraph 28C.  You say that he was required
12  to "obtain sufficient relevant data to afford a
13  reasonable basis for conclusions or recommendations
14  in relation to any professional services performed."
15    And is it your assertion that Mr. Elkin did
16  not abide by this standard?
17    A.  Not specifically.
18    Q.  I don't understand your answer, "not
19  specifically."  Are you saying that you're not
20  opining, or Mr. Elkins did not satisfy the standard?
21    A.  I think there was a problem with the
22  methodology, so he used the information he had.  I
23  don't agree with the methodology.  I'm not sure that
24  that falls specifically within C, as you -- as you
25  refer to it here.

Page 96

1    And that's not my opinion.  This section is
2  not my opinion.  This section is just reciting the
3  applicable standards.
4    Q.  And this standard, you agree, offers some
5  latitude regarding conclusions and recommendations
6  based on the data received, correct?
7    MR. KALIL:  Object to the form.
8    A.  I -- the standards are principles-based.
9  They are not procedural-based.  So none of the
10  standards give you any -- a quantification.  So from
11  that aspect, there is some latitude.
12    However, conclusions or recommendations in
13  relation to professional services have to be
14  reliable for their purpose in order for them to be
15  useful.
16  BY MR. LONGER:
17    Q.  How many -- or is there a way to test your
18  measure of what is reliable for the purpose?  Do you
19  -- like, how many errors does it have to be before
20  you break the camel's back, so to speak?
21    A.  There isn't a number.  It -- there is no
22  quantification.  It's a facts-and-circumstances
23  situation and it depends upon the magnitude, and it
24  affects reliability and credibility.  And that will
25  be a decision for a trier of fact to determine.

Page 97

1    Q.  So your opinion is based on your experience,
2  but you agree that this is a matter that the jury is
3  going to go have to resolve, correct?
4    MR. KALIL:  Objection to the form.
5    A.  The trier of fact.  I don't know whether it
6  will be the judge or the jury.
7  BY MR. LONGER:
8    Q.  I'll restate it.
9    Your opinion is based on your experience,
10  but you agree that this is a matter that the trier
11  of fact is going to have to resolve?
12    MR. KALIL:  Objection to the form.
13    A.  Yes.
14  BY MR. LONGER:
15    Q.  You have all these other standards.  For
16  example, in Paragraph 29 of your report, you say
17  that the SSFS at 100.06 states:  Members must
18  service their clients with integrity and
19  objectivity, as required by the Code.  Members
20  performing Forensic Services should only be an
21  advocate for their professional opinion.
22    Did I read that accurately?
23    A.  Yes.
24    Q.  Is it your opinion that Mr. Elkin did not
25  abide by this standard?

Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 566 of 802
Case 2:14-cv-02722-EEF-MBN Document 36-1 Filed 11/18/15 Page 27 of 44
Confidential - Subject to Further Confidentiality Review

Page 98

1    A.  No, I don't -- I do not.  I don't have such
2  an opinion.
3        And you had asked me to point out when we
4  came to something which was a typographical error.
5    Q.  Right.
6    A.  In this particular instance, I had typed
7  FFSF instead of SSFF -- SSFS in this case.  So this
8  is one of the items on the errata sheet.
9    Q.  Can you say that faster?
10   A.  No.
11   Q.  In fact, I -- I tried to correct that when I
12 read you the question, because --
13   A.  Well --
14   Q.  -- I -- I recognized that --
15   A.  You -- you --
16     MR. KALIL:  I think you did, but you did ask
17 Ms. Bour to point it out, if you didn't point it
18 out affirmatively.
19   A.  So I'm just acknowledging that --
20 BY MR. LONGER:
21   Q.  You were listening.
22   A.  I -- I -- when I typed it, I did it
23 inaccurately.
24   Q.  Okay.
25   A.  But it does not change what I quoted

Page 99

1  accurately.
2    Q.  Understood.  I -- while we're at it, let me
3  point out to you another error, and in order to do
4  that, I need to mark this as an exhibit.
5      MR. LONGER:  So this is -- what number are
6  we up to?
7      THE COURT REPORTER:  13.
8      MS. RICO:  13.
9      MR. LONGER:  Okay.  This is Exhibit 13.
10     (Bour Exhibit 13 was marked for
11 identification.)
12     MR. KALIL:  Thank you.
13 BY MR. LONGER:
14   Q.  So in Paragraph 32 you quote from the
15 Practice Aid, which is Exhibit Number 13, correct?
16   A.  On 32?  Yes.
17   Q.  All right.  And just for the record,
18 Ms. Bour, what is Exhibit Number 13?
19   A.  Exhibit Number 13 is the American Institute
20 of CPAs, also referred to as the AICPA, Forensic &
21 Valuation Services Practice Aid:  "Serving as an
22 Expert Witness Or Consultant."
23   Q.  And this is a document that you've relied
24 upon for the information regarding certain standards
25 applicable to Mr. Elkin's work, correct?

Page 100

1    A.  Yes.
2    Q.  It equally applies to your work as an expert
3  witness, correct?
4    A.  Yes.
5    Q.  On part -- Page 14 running through Page 15,
6  that's what you quote in Paragraph 32, correct?
7    A.  Yes.
8    Q.  And if I could draw your attention to your
9  report, the first sentence of the quote of the
10 practice aid --
11   A.  Yes.
12   Q.  -- you say is:  "An expert may base opinion
13 testimony on either facts or assumptions."
14     Did I read that accurately?
15   A.  Yes.
16   Q.  But if we look at the practice aid, your
17 quote is inaccurate, correct?
18   A.  Yes.  I typed in "may," and it says "can."
19   Q.  And obviously, that is just a transposition
20 error, but I wanted to ask you on the more material
21 matter where you quote from the practice aid that
22 "the practitioner should consider analyzing key
23 assumptions to determine whether they are reasonable
24 and identify the source of the information.
25 Ultimately, the trier of fact will determine the

Page 101

1  reasonableness of the assumptions."
2      Isn't it exactly what Mr. Elkins did to
3  analyze key assumptions to determine whether they
4  are reasonable and identify the source of the
5  information based on all of the material that he had
6  before him?
7    A.  I don't know that he -- I think he failed in
8  identifying the reasonableness of some of the
9  information.
10   Q.  Some, right?
11   A.  Yes.
12   Q.  From -- on a percentage basis, from 1 to
13 100, what percentage did you find him to error?
14     MR. KALIL:  Objection to the form.
15   A.  I didn't calculate a percentage.
16   Q.  You just saw some, and from that, you found
17 that he did not abide by the standard; is that
18 correct?
19   A.  The errors were such that it created the
20 question as to whether his report in total was
21 reliable, because the errors were significant and
22 the errors were such that it questioned the
23 reliability of his conclusions.
24     THE WITNESS:  Are we getting close to
25 breaking?

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 567 of 802
Case 2:14-cv-02722-MHT Document 44 Filed 10/29/14 Page 51 of 28 of 44
Confidential - Subject to Further Confidentiality Review

Page 102

1    MR. LONGER:  We're almost at a breaking
2  point.  Why don't we -- why don't we break right
3  now.  It's a good time.
4     THE VIDEOGRAPHER:  Off the record at 12:33.
5   (Recess from 12:33 p.m. until 1:21 p.m.)
6     THE VIDEOGRAPHER:  The time is 1:21.  We're
7  now back on the record.
8  BY MR. LONGER:
9    Q.  Ms. Bour, we're back on the record after a
10  lunch break.  Are you okay to keep going?
11   A.  Yes.
12   Q.  I am going to turn your attention to
13  Section 6 of your report dealing with the date of
14  damage and standard of value for personal property,
15  and I only have a few questions in this section,
16  because I think we touched on several of them
17  before.
18    But in connection with this discussion of
19  damage, did you write all of this section yourself?
20   A.  Yes.
21   Q.  And was this based on your evaluation of the
22  case law that counsel provided to you?
23   A.  Yes.  I wrote this section, and then counsel
24  provided me with case law.  The section was written
25  before I received the case law.

Page 103

1    Q.  Uh-huh.  Your definition in Paragraph 37 of
2  fair market value is the price between a willing
3  buyer and seller, both informed of relevant facts
4  and neither of a -- under a compulsion to act,
5  correct?
6    A.  That's the definition that I used, which is
7  the definition we discussed in Revenue Ruling 59-60.
8    Q.  This definition applies to real property as
9  well as personal property, correct?
10   A.  Yes.
11   Q.  And you're aware that some of the plaintiffs
12  in this litigation have had short sales,
13  foreclosures, and the like, correct?
14   A.  Yes.
15   Q.  Those are referred to as distressed sales;
16  is that correct?
17   A.  Depending upon the facts and circumstances,
18  yes.
19   Q.  And that's because they are not arm's-length
20  deals that reflect the fair market value because the
21  seller is under a compulsion to sell the property,
22  right?
23   A.  Possibly as one of the reasons.  There may
24  be other reasons as well.
25   Q.  Would you agree that any analysis that the

Page 104

1  plaintiffs' real estate sales that did not consider
2  them distressed sales would be improper?
3     MR. KALIL:  Object to the form.
4    A.  I -- I'm sorry.  Could you repeat that one
5  more time?
6  BY MR. LONGER:
7    Q.  All right.  Would you agree that any
8  analysis that the plaintiffs' real estate sales that
9  did not consider these sales as distressed sales
10  would be improper?
11     MR. KALIL:  Object to the form.
12    A.  I don't know that you can make that
13  generalization.  It would be determined on a
14  situation-by-situation basis.
15   Q.  Paragraph 41, is that a legal opinion?
16   A.  No.
17   Q.  Do you feel -- you don't feel competent to
18  render a legal opinion, do you?
19   A.  I'm not an attorney.  I cannot render a
20  legal opinion.
21   Q.  Similarly for Paragraph 42 -- I'm sorry, for
22  Paragraph 40, is that a legal opinion?
23     MR. KALIL:  Objection to form.
24   A.  No.
25  BY MR. LONGER:

Page 105

1    Q.  You say in Paragraph 40:  Generally, damage
2  to property is measured by the loss of value that
3  was caused by some act.
4     Correct?
5    A.  Yes.
6    Q.  Are there exceptions to that standard that
7  you've just provided?
8    A.  Again, I wouldn't refer to this as
9  necessarily a -- a standard, given that there are so
10  many things we're calling as standards, but yes,
11  there are exceptions.
12   Q.  And what would they be?
13   A.  Sometimes the repair value may be a
14  measurement of the damages, the -- not the -- the
15  cost to repair.
16   Q.  Anything else?
17   A.  Not that I can think of right now.
18   Q.  Do you take into account replacement costs?
19     MR. KALIL:  Objection to the form.
20     MR. LONGER:  Let me say it differently,
21  then.
22     MR. KALIL:  Thank you.
23  BY MR. LONGER:
24   Q.  In addition to the cost of repair, could
25  replacement costs be an exception to that standard?

| Page 106 |
|---|
| 1   MR. KALIL: Objection to the form. |
| 2   A.  Depending upon the facts and circumstances, |
| 3 it -- it could be, and it may not be representative |
| 4 of the damages. |
| 5 BY MR. LONGER: |
| 6   Q.  I'd like to talk about Paragraph 44. |
| 7       In this paragraph, you're stating that it's |
| 8 your opinion that it's necessary for -- I may have |
| 9 the paragraph number wrong. Hold on a second. |
| 10      I'm sorry, in Paragraph 45. |
| 11      In Paragraph 45, you state it's your opinion |
| 12 that it's necessary for an appropriate expert to |
| 13 make determinations of when an item is damaged in |
| 14 order to accurately compute damages. |
| 15      Is that fair to say? |
| 16   A.  Yes. |
| 17   Q.  Do you discount entirely whether one of the |
| 18 plaintiffs can accurately determine when their |
| 19 property was damaged? |
| 20   MR. KALIL: Object to the form. |
| 21   A.  No. |
| 22 BY MR. LONGER: |
| 23   Q.  Can you personally make an evaluation of |
| 24 whether their personal property is no longer |
| 25 functional? |

| Page 107 |
|---|
| 1   A.  No. |
| 2   Q.  Do you have an opinion whether an item may |
| 3 be considered damaged as soon as it is exposed to |
| 4 Chinese drywall? |
| 5   A.  No. |
| 6   Q.  Does -- have you been provided any guidance |
| 7 on when a -- any property has been considered |
| 8 damaged as a result of Chinese drywall? |
| 9   A.  No. |
| 10   MR. KALIL: Object to the form. |
| 11 BY MR. LONGER: |
| 12   Q.  Does an item have to stop working before you |
| 13 considered it damaged by Chinese drywall? |
| 14   MR. KALIL: Objection to the form. |
| 15   A.  No. |
| 16   Q.  Why do you consider it necessary to date the |
| 17 damage of an item for -- for purposes of evaluating |
| 18 the value of the damaged item? |
| 19   A.  I'm sorry. Could you repeat the question? |
| 20   Q.  Yeah. That was poorly phrased. |
| 21      Why do you consider it necessary to date the |
| 22 damage of an item for purposes of evaluating how |
| 23 much damage occurred to the item? |
| 24   A.  So I'm -- |
| 25   MR. KALIL: Objection to the form. |

| Page 108 |
|---|
| 1   A.  I'm -- I'm still not sure that I understand |
| 2 what you're asking. Date the damage? |
| 3      Are you talking about determine the date of |
| 4 damage? |
| 5   Q.  Yes, determine the date of damage. |
| 6   A.  Okay. Thank you. |
| 7   Q.  Sure. |
| 8   A.  I just want to make sure I accurately |
| 9 answer. |
| 10      In some instances, the age of the piece of |
| 11 property may be relevant to the value, and without |
| 12 knowing the -- without knowing the date of damage, |
| 13 you don't know how old the piece of property is. |
| 14   Q.  And Mr. Elkin was clear that he did not |
| 15 determine fair market value for properties that -- |
| 16 or the personal property that he evaluated, correct? |
| 17   A.  Yes. |
| 18   Q.  And are you doing that? |
| 19   A.  No. |
| 20   Q.  And, yet, we agree that -- and I believe you |
| 21 testified, you're not qualified to do that, you |
| 22 believe somebody else should be doing that, correct? |
| 23   A.  Correct. I'm not a property appraiser, so I |
| 24 can't determine the -- the value of a piece of |
| 25 personal property. I'm not qualified to do that. |

| Page 109 |
|---|
| 1   Q.  Moving on in your report, you say that |
| 2 you've done -- I'm on Paragraph 51 -- that you have |
| 3 done a general review of all the claimants; however, |
| 4 for purposes of the rebuttal report, you selected |
| 5 three claimants for detailed review. |
| 6      Do you see where I am? |
| 7   A.  Yes. |
| 8   Q.  What is the "general review" as opposed to a |
| 9 "detailed review"? |
| 10   A.  I started my engagement by organizing the |
| 11 data, and actually, I started with Claimant |
| 12 Number 1. And as I went through and organized the |
| 13 data and I looked at the underlying data and matched |
| 14 the sources to a number of the claimants, at a point |
| 15 in time, we got a revised schedule -- we got revised |
| 16 schedules for Etter and Martinez at a certain point |
| 17 during my review, as well as one of the other |
| 18 claimants. So I focused on those, because they were |
| 19 revised, instead of looking at them numerically in |
| 20 order and ended up finding a significant number of |
| 21 issues with those. So I never -- there was no need |
| 22 for me to go back and continue with the others. |
| 23   Q.  Was it your decision to focus on Etter and |
| 24 Martinez? |
| 25   A.  Yes. |

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 569 of 802
Case 2:09-md-02047-EEF-MBN Document 22411 Filed 06/13/19 Page 30 of 44
Confidential - Subject to Further Confidentiality Review

Page 110

1  Q.  Did you have any input from counsel on who
2  to select?
3  A.  No.
4  Q.  And what is a "detailed review" as opposed
5  to a "general review"?
6  A.  Just that I -- there is no good
7  quantification.  I stopped work on a lot of the
8  other plaintiffs and just focused the -- my analysis
9  on those three, although there were certain items
10  that, either from reading the depositions or from
11  Mr. Elkin's testimony, I looked at -- isolated
12  issues with some of the other plaintiffs as opposed
13  to going through and looking at every single line
14  of -- every single claim line, I should say.
15  Q.  All right.  Apart from what's in your
16  report, are there any other errors beyond those that
17  you found for Etter, Martinez -- Etter, Martinez,
18  and Foster?
19  A.  There -- there may be some other errors.  I
20  stopped looking at a certain point in time.  So
21  these -- the errors that I documented are within my
22  report and my work papers.
23  Q.  Okay.
24  A.  But this is not --
25  Q.  But there are --

Page 111

1  A.  -- intended to be all-encompassing.  There
2  may be other errors.
3  Q.  You have not found any others that you have
4  reported, however?
5  A.  Correct.
6  Q.  Beginning on Page 12 of your report, you
7  talk about accuracy and consistency for damage
8  dates.  Do you see that?
9  A.  Yes.
10  Q.  And you checked the dates -- damage dates
11  for accuracy and for consistency with key dates,
12  such as move in date, the date claimant became aware
13  of Chinese drywall or defective drywall, and the
14  date they moved out of the affected property to an
15  alternative living location.
16  Do you see that?
17  A.  Yes.
18  Q.  Are you comfortable agreeing with me that
19  the facts and circumstances of each plaintiff's
20  property -- the effect of Chinese drywall on their
21  property varied --
22  MR. KALIL:  Objection to the form.
23  BY MR. LONGER:
24  Q.  -- in terms of -- yeah.
25  Let me ask it differently.

Page 112

1  Would you agree that when the Chinese
2  drywall affected each of the claimants' property
3  varied by the property and the circumstances as to
4  the personal property that was affected?
5  MR. KALIL:  Object to the form.
6  A.  I'm not sure I understand your question.
7  BY MR. LONGER:
8  Q.  So I'm trying to -- I'm trying to explore
9  whether you would agree that the facts and
10  circumstances of each plaintiff's damages are, in
11  themselves, unique?
12  A.  There are differing aspects to them.
13  There -- so there are some differences, and there
14  are some similarities.  I -- I -- I'm not -- I don't
15  know that I would necessarily categorize them as
16  "unique."  I mean, there may be some unique
17  circumstances, but I don't know that -- and I --
18  again, it would depend on the context and the
19  reason.  I'm -- I'm not willing to make an absolute
20  generalization.
21  Q.  Mr. Elkin was facing these circumstances of
22  each individual plaintiff and trying to make an
23  evaluation as to what is or what would be an
24  appropriate damage date; is that fair to say?
25  MR. KALIL:  Object to the form.

Page 113

1  A.  In some cases, and I'm not sure that he was
2  necessarily indicating that these were damage dates.
3  They were -- you'd have to ask -- that's not for me
4  to determine.  There was an inconsistency between
5  dates.  I don't want to say what he was doing with
6  regard to that.
7  BY MR. LONGER:
8  Q.  And you're pointing out that there could be
9  differences in general timing of damage dates, and
10  you point that out in Paragraph 57, correct?
11  MR. KALIL:  Objection.
12  A.  Right, that the time -- the date -- the --
13  the source of the date that he used as a proxy for
14  the damage date was different for different
15  plaintiffs, and even within different plaintiffs, he
16  used different dates.
17  BY MR. LONGER:
18  Q.  And my question to you is, because each
19  person presented with the -- with their own facts,
20  he had to accommodate his evaluation to address the
21  circumstances of that particular plaintiff, correct?
22  MR. KALIL:  Object to the form.
23  A.  I don't agree that that was the reason for
24  all of the differences.
25  BY MR. LONGER:

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 570 of 802 1 of
Case 2:09-md-02047-EEF-MBN Document 23380-36 Filed 12/02/19 Page 31 of
44
Confidential - Subject to further confidentiality review

Page 114

1    Q.  Well, what -- what methodology would you
2  have employed to address the circumstances of damage
3  dates for the different plaintiffs involved in this
4  litigation?
5         MR. KALIL:  Object to the form.
6    A.  I -- I haven't made a determination as to
7  how I would have addressed this.  That was beyond
8  the scope.
9         However, within -- as an example, within a
10  single plaintiff.  So a single plaintiff, you
11  shouldn't have a move-out date for one piece
12  of prop- -- one type of property or one group of
13  property and then the date of a quote for another
14  property within that same -- for that same
15  plaintiff.  So there was inconsistency within
16  plaintiffs as to the date that was selected.
17        And it may be based on facts and
18  circumstances.  There would have been a reason to
19  choose a different date as a measurement of damages
20  if, in fact, property was all disposed of as of the
21  move-in date -- I mean, I'm sorry, the move-out
22  date.  That may have been an appropriate date in
23  that circumstance because the property was abandoned
24  at that point in time.
25        However, to use a mix of dates within the

Page 115

1  same claimant indicated to me -- or -- possibly
2  to any reader of his report, that there was
3  inconsistency, that it -- there wasn't -- in any
4  case, there wasn't a well-explained reason for the
5  dates that were selected and when they were
6  selected.
7  BY MR. LONGER:
8    Q.  So truly a matter of him explaining his
9  reasoning that you're critical of his analysis?
10    A.  No.  That's -- that may -- that may resolve
11  some of the inconsistencies, but I -- I don't
12  believe it will resolve all of the inconsistencies.
13    Q.  So the methodology that you would prefer be
14  employed is a consistent damage date?
15    A.  No, an accurate damage date, whatever is
16  most accurate to represent when something was
17  damaged.  And it may be none of these.  It may be
18  when the actual property was damaged, but that's all
19  part of collecting the information.
20    Q.  Now, some of the assumptions that the
21  standards that we discussed earlier permit an expert
22  to rely on information provided by the client,
23  correct?
24    A.  Yes.
25    Q.  If the client were to give the damage date,

Page 116

1  would it be an unreasonable assumption on
2  Mr. Elkin's part to accept what the client said was
3  the damage date?
4         MR. KALIL:  Objection to the form.
5    A.  It depends on the facts and circumstances.
6  BY MR. LONGER:
7    Q.  Do you know all of the information that
8  Mr. -- Mr. Elkin received as to information obtained
9  from the clients as to damage date?
10    A.  I received what he produced to us.  If the
11  information was included in there, I -- I did my
12  best to review all the documents produced to make
13  sure that I included everything that he had.
14    Q.  Was the primary function of determining the
15  damage dates directed to Mr. Elkin's analysis of
16  prejudgment interest?
17    A.  I'm -- again, I'm -- I'm sorry, I -- could
18  you repeat the question?
19    Q.  Let me ask it more abstractly.
20        Is the primary function of determining
21  damage dates more appropriately addressed to
22  evaluating prejudgment interest?
23         MR. KALIL:  Object to the form.
24    A.  Not necessarily.
25  BY MR. LONGER:

Page 117

1    Q.  What are the circumstances that you are
2  saying that weigh in on your answer?
3    A.  Again, the -- knowing the -- the age and the
4  timing of the property could impact the -- the
5  diminution in value of that property as a result of
6  the damage, as well as the prejudgment date --
7  prejudgment interest calculation.
8    Q.  So whether it's depreciated or not, is that
9  your point?  Is -- I'm sorry.
10        Is depreciation an aspect that you're
11  describing?
12    A.  Correct.
13    Q.  And you have not rendered an opinion about
14  what the proper evaluation of the timing of damage
15  dates to be; is that correct?
16         MR. KALIL:  Objection.
17    A.  Yes.
18  BY MR. LONGER:
19    Q.  Do you intend to offer one if we come to
20  trial?
21    A.  No, not at this time.
22    Q.  This is more just a curiosity, but you had
23  talked about how you kind of narrowed down your
24  focus on Etter, Martinez, and Foster, and, yet,
25  later in the report you also talk about furniture

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 571 of 802
Confidential - Subject to further Confidentiality Review
Page 118

1  damage to the Walls in Paragraph 65.
2      Do you see where I'm --
3      A.  Yes.
4      Q.  -- referring?
5      What was it about this circumstance that
6  made you go outside of the three that you had
7  described that you were going to focus on?
8      MR. KALIL:  Objection to the form.
9      A.  In my preliminary analysis where -- the --
10  the general analysis that I did, I looked at damages
11  by date for each -- I -- I looked at -- not by date,
12  in totality.  But I looked at the claims that were
13  before or close to when they actually moved into the
14  home to see what dates were prior to their move-ins
15  or immediately after, and this was one where they
16  had damage -- they were claiming damage almost
17  immediately when they moved into the home.
18      Q.  And it -- strike that.
19      The -- this stood out, and you were
20  questioning his assumption of the date of damage?
21      A.  Yes.
22      Q.  Do you know whether he received that
23  information from the client that the furniture was
24  damaged or not?
25      A.  I don't recall in that instance whether --

Page 119

1  whether that was their claim or he used the date
2  purchased, without looking at the file.
3      Q.  So in order to evaluate what Mr. Rosen had
4  done and have taken you a lot more time than what
5  you had devoted just in the limited review to the
6  three persons that you focused on; is that fair to
7  say?
8      MR. KALIL:  Object to the form.
9      A.  I'm not sure --
10      MR. LONGER:  I'm sorry, did I say Rosen?
11      THE WITNESS:  Yes.
12      MR. KALIL:  You did.
13      MR. LONGER:  That's a valid objection.
14      Let me start again.
15  BY MR. LONGER:
16      Q.  Mr. Elkins had a lot of material to
17  evaluate, and you were just focusing on three
18  persons, right?
19      A.  I -- well, at the point when I began to
20  actually develop my report, I had narrowed it down
21  to predominantly three people, three -- three of the
22  individuals -- or three of the -- the claimants.
23      Q.  My question was going to if you had to do
24  what he had done and look at all of the plaintiffs,
25  it would have taken you a lot more time to have

Page 120

1  evaluated all of them in the level of detail that
2  you did for just the three that you were primarily
3  focused on, correct?
4      A.  Most likely, yes.
5      Q.  And you did not review every last item in
6  detail for all of the plaintiffs, correct?
7      A.  Correct.
8      Q.  You've only reviewed the three in detail?
9      A.  Except as noted for other issues in the
10  report, yes.
11      Q.  And you said you even stopped looking for
12  errors at some point in time, you were just going to
13  focus on just those three, right?
14      A.  Well --
15      MR. KALIL:  Objection to the form.
16      A.  I accept what is included in the report.
17  Yes, I stopped looking for additional errors.  So
18  the errors include -- the errors, omissions, and
19  discrepancies include claimants other than those
20  three, but I did not do a detailed analysis of other
21  claimants equivalent to what I did for the three.
22      Q.  Were you concerned about the time it would
23  take to make such a broad evaluation?
24      A.  I don't know that "concerned" would be the
25  right word to describe it.  I recognize that it

Page 121

1  would take a significant amount of time for me to do
2  that work, and I determined that it wasn't necessary
3  for me to issue a report.
4      Q.  Earlier today, before the lunch break, we
5  were talking about Mr. Elkin's evaluation of
6  prejudgment interest as being a framework, not a
7  real hard opinion on what prejudgment interest would
8  be.  Do you recollect that testimony?
9      MR. KALIL:  Objection.
10      A.  Well, I recommend -- yeah, I re- -- I
11  recall --
12  BY MR. LONGER:
13      Q.  That discussion?
14      A.  -- you -- yes, that I -- I stated he
15  presented -- I evaluated his framework.  I didn't
16  state that he presented it as a framework because I
17  was under the impression that, based on his
18  findings, if the Judge were to determine that
19  prejudgment interest would be awarded, that would be
20  the amount.
21      And listening to him in deposition, my
22  recollection is that he said, well, I can correct
23  the errors that he had found up until that point in
24  time and use the framework that he had, but it was
25  not my understanding that it was done for purposes

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 572 of 802
Case 2:14-cv-02722-NGG Document 36 Filed 06/13/2019 Page 33 of 44
Confidential - Subject to further confidentiality Review

Page 122

1 of establishing a framework. It was done -- my
2 understanding was that, assuming his information was
3 correct, that was his opinion of what prejudgment
4 interest would be, should it be awarded.
5 Q. And I thought you said that he actually
6 calculated what he thought preinterest would be
7 based on his damages using that framework?
8 A. Yes.
9 Q. You were present at his deposition?
10 A. Yes.
11 Q. You heard his testimony?
12 A. Yes.
13 Q. His testimony was clear that he was just
14 establishing a framework, was it not?
15 MR. KALIL: Objection to the form.
16 A. I'd have to go back and -- and review his
17 testimony to tell you exactly what he said.
18 BY MR. LONGER:
19 Q. Well, I could read it to you, or I could
20 show it to you and we could read it together.
21 But the question was presented to him: So
22 you're not rendering any opinions on prejudgment
23 interest as to when it should start running, if at
24 all?
25 And his answer was --

Page 123

1 Too far away?
2 A. I tell you what. I have his deposition
3 here, if you want to tell me exactly where it is.
4 Q. Page 223, Lines 12, through 224, Line 6.
5 So I'll read into the record what you're
6 reading, and you can follow along.
7 His answer was: "That's correct. My goal
8 was to establish the format and methodology,
9 recognizing that it's, as I understand it, up to
10 the Court's jurisdiction or Court's authority to
11 determine whether those things are even subject
12 to prejudgment interest, and then to provide
13 guidelines on when prejudgment interest might or
14 might not start, which is why I tried to just lay
15 out a very general pick the date something was
16 acquired or the date something was deemed
17 damaged, add 30 days to it for -- to catch some
18 of the differences that might happen, and it was
19 not my intention -- and I did not go through item
20 by item to make that determination because, as I
21 believe I stated in the report, the timing and
22 dates, even the things that are included, would
23 be subject for the Court."
24 Do you see where I'm reading?
25 A. Yes.

Page 124

1 Q. That's different than what I've heard you
2 testify to this morning and just now, correct?
3 A. Well, and --
4 MR. KALIL: Objection to form.
5 A. I think in isolation, yes, but in looking to
6 what came immediately before that, what immediately
7 came before that in his testimony was he had some
8 errors in his formulas.
9 He said, "I noted that somewhere in my
10 formulas, the start date for prejudgment interest
11 for a number of transactions -- I think I hard-coded
12 something and then I recopied the formula back over
13 it. So it actually is dates starting before they
14 even moved into the property, which relate to the
15 date that they acquired some of the property that
16 they were claiming damages for, and naturally, that
17 should not be predating the date they moved in. So
18 that would require some adjustment."
19 And then there was some discussion, and then
20 he went ahead to say, wait, I'm not rendering an
21 opinion. So he set forth the numbers, but the
22 disclosure and I -- and it -- it's difficult to
23 determine as far as if he sets forth a number. He
24 calculated prejudgment interest and put a lot of
25 schedules into his report calculating prejudgment

Page 125

1 interest. I -- I don't recall -- I'd have to
2 look at his report -- a disclosure on the bottom
3 saying "This is for illustrative purposes only."
4 So the presumption is if he's calculating
5 the interest, presenting the interest, it's part of
6 his opinion. And then he backed out as he realized
7 there were mistakes in there, so --
8 Q. Okay.
9 A. -- that's -- that was -- he -- he testified
10 to what he testified to. That's my recollection of
11 the testimony. If I'm -- if I'm inaccurate, I will
12 go back and read his testimony, but...
13 Q. Well, I just want to be clear. In
14 Paragraph 4 of your report, you say you've been
15 asked to look at the framework he set up for
16 calculation of prejudgment interest based upon his
17 updated support master database, right?
18 A. Right, which is a different question.
19 Q. But you recognize that it was a framework,
20 not a hard opinion, right?
21 A. No. That's not -- that's not -- you're
22 mischaracterizing what I said. The framework that I
23 evaluated was the method referring to the
24 methodology of what he did. That's the framework
25 that I looked at.

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 573 of 802
Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 573 of 802
Confidential - Subject to Further Confidentiality Review
44

Page 126

1    Q.   Let me ask you this:  If he was to provide
2  an errata like you've provided an errata over the
3  weekend, might your two opinions be reconciled?
4      MR. KALIL:  Objection to the form.
5    A.   I don't know.  And again, there's the
6  question at that -- if he were to provide another
7  updated report -- I mean, he's already provided
8  updates for, I believe, three of the claimants and
9  then recognized a few errors that he did not correct
10  in the form of anything printed.
11      So if he were to then incorporate and go
12  through and find out what other errors there are and
13  update that, I would evaluate that and need to
14  determine -- and, I guess, my client would determine
15  whether they'd want me to evaluate to see whether he
16  captured all the errors.
17  BY MR. LONGER:
18    Q.   All right.  So nobody is perfect, right?
19    A.   Correct.
20    Q.   In fact, we've established that Mr. Elkin is
21  not perfect, right?
22      You've pointed out some errors in his
23  report, right?
24    A.   Yes.
25    Q.   And you, yourself, have pointed out errors

Page 127

1  in your own report.  You're not perfect, either,
2  right?
3    A.   No, I am not perfect.
4    Q.   So if he were to narrow down and exclude any
5  errors that he found, you could come to reconcile
6  with his opinion regarding prejudgment interest; is
7  that fair?
8      MR. KALIL:  Objection to the form.
9    A.   Yes, with regard to prejudgment interest.
10  It's a mathematical calculation.  If the input is
11  accurate, the output should be accurate.  I do -- I
12  don't know that I agree with his framework, with all
13  of his assumptions that he made in calculating
14  prejudgment interest, which is a separate issue from
15  accuracy.
16  BY MR. LONGER:
17    Q.   All right.  I'm going to turn to
18  Paragraph 69 to your report -- or of that section
19  with -- that starts with Paragraph 69.
20      You were using -- or, I'm sorry.
21      You were describing in this section
22  particular errors of recording source material,
23  correct?
24    A.   Yes.
25    Q.   And the first --

Page 128

1    A.   I think -- in general, I think that that --
2  that's accurate.
3    Q.   The first error that you pointed out was a
4  Comcast bill that was twice billed; is that correct?
5    A.   It wasn't billed twice.  Page 1 of the
6  information was recorded as one -- information on
7  Page 1 was recorded and then information on Page 2
8  of that same invoice was also recorded, so the
9  information was duplicate -- duplicated.
10    Q.   Thank you.  And that was for a Comcast bill,
11  right?
12    A.   Yes.
13    Q.   Do you recall the amount of that Comcast
14  bill?
15    A.   A couple hundred dollars.
16    Q.   Does $164.10 sound better?
17    A.   That may have been one of the bills.  $164
18  was one of the bills, and $54 was the other bill.
19  Those were the two that were duplicated.
20    Q.   And those -- what document is that?
21    A.   This is a schedule that was provided to you
22  in my work papers.
23    Q.   Right.  I'm sorry.  I just noted -- I looked
24  high and low for -- in Footnote 22 of your report
25  for a document 165486, and I couldn't locate it.

Page 129

1      What -- what document are you looking for --
2  or looking at?
3    A.   I apologize.  I did not catch that.
4      It is 165483.
5    Q.   All right.
6    A.   Pages 17 and 18.  Actually, that's not --
7  the doc- -- the document I'm looking at, as I told
8  you, is one of my work papers.
9    Q.   Is a schedule?
10    A.   Is a schedule, and I --
11    Q.   But the source document is --
12    A.   It should be --
13    Q.   -- the 483 document?
14    A.   483 versus 486, yes.
15    Q.   All right.  So I'm thinking we'll add that
16  to your errata.
17      Paragraph 70B, do you know whether the ADT
18  payment -- I'm sorry, credit that was not reflected
19  for the ADT payment was $40.79?
20      MR. LONGER:  Excuse me.  I thought I said
21  $40.79 but I'm looking at the realtime, and it
22  says 40.71.  So I just want to be clear as to the
23  amount.
24    A.   I'd have to pull the actual document.  I
25  don't have reference to the amount of the credit in

Page 130

```
1   here.
2      Q.  Do you know if it was a substantial
3   creditor, would you be willing to --
4      A.  No.
5      Q.  -- accept that it was $40.79?
6      A.  I would be willing to accept that it was
7   somewhere in the vicinity of that.
8      Q.  All right.  And you also, in Paragraph 70C,
9   identified an issue with the RV that was purchased
10  and that Mr. Elkin should have used $2,000, not
11  $4,399, correct?
12     A.  No.
13     Q.  I'm sorry, did I misstate it?
14     A.  Yes, you did.
15     Q.  Oh.  Would you correct me, please?
16     A.  He used a cost to purchase an RV by
17  Ms. Martinez for $4,399.  I don't have an opinion
18  nor -- in -- in -- whether it's a valid -- that the
19  purchase of a recreational vehicle for her to keep
20  in her backyard is an appropriate measure of
21  alternative living expenses -- alternate living
22  expenses.
23         However, he -- Mr. Elkin acknowledged in his
24  deposition that she sold it for $2,000, and he
25  failed to take into consideration the sale of that
```

Page 131

```
1   asset as an offset for the claimed damage.
2      Q.  So it should be 2,399?
3      A.  I don't know what --
4         MR. KALIL:  Objection to form.
5      A.  I don't know what the appropriate number
6   should have been, but it would be something less
7   than $4,399.
8   BY MR. LONGER:
9      Q.  Okay.  In Subparagraph D, you found a refund
10  on an FPL bill.  Do you know the amount of that
11  refund?
12     A.  Not without referring to the file.
13     Q.  Does it -- if I told you it was $21.11, do
14  you accept that?
15     A.  If that's the number that -- I have no
16  problem accepting it.
17     Q.  Okay.  And for the Fosters, you say
18  Mr. Elkin claimed the purchase of a copper wall
19  sculpture from A Touch of Class twice?
20     A.  Yes.
21     Q.  And do you recollect that that sculpture was
22  for $260.86?
23     A.  Mr. Elkin's schedule rounded in his
24  database, so I don't have cents.  One was recorded
25  for $265, and one was recorded for $261 for the same
```

Page 132

```
1   item, yes.
2      Q.  How much time did you and your staff spend
3   to find these errors that you have identified in
4   this Paragraph 7?
5      A.  These errors were a byproduct of the
6   analysis we did.  No significant amount of time was
7   specifically spent on locating these errors.
8      Q.  Overall, what I recollect seeing in just
9   this partial bill that you have provided, which only
10  goes to March 19, is that you've billed your client
11  $68,565.50, correct?
12     A.  If that's what the number is, that's what --
13  that sounds approximately right.
14     Q.  And you've -- you had just over 200 hours
15  altogether reviewing Mr. Elkin's papers and
16  preparing your report up until the March 19 cutoff
17  for this invoice, correct?
18     A.  Yes.
19     Q.  And --
20     A.  And not exclusively.  There were other
21  things that were involved as well, but yes, that's
22  the total time in on the engagement at that point in
23  time.
24     Q.  And what is the difference, the delta
25  between Mr. Elkin's analysis and what you've
```

Page 133

```
1   concluded would be the correct analysis?
2         MR. KALIL:  Objection to the form.
3      A.  I'm sorry, I --
4   BY MR. LONGER:
5      Q.  If you don't understand the question, I
6   can --
7      A.  -- I could not understand the question.
8      Q.  I can ask a really bad question, and
9   sometimes I can ask a really good one.
10         Let me try to ask a really good one.
11         So have you calculated the difference
12  between the total damages that Mr. Elkins has
13  calculated for the plaintiffs and what you believe
14  to be the correct damage calculation?
15     A.  No.
16     Q.  Is it more than $68,565.50?
17         MR. KALIL:  Object to the form.
18     A.  I haven't done -- I haven't done a
19  calculation of the -- what I would give an opinion
20  on as far as damages, so I can't tell you what that
21  number is, because I have not done it.
22  BY MR. LONGER:
23     Q.  Okay.  Thank you for that.
24         I just want to ask you a question about
25  Paragraph 87.  Paragraph 87 reads:  "While it is
```

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 575 of 802
Case 2:14-cv-02722-EEF-MBN Document 44-4 Filed 09/29/16 Page 35 of 44
Confidential - Subject to Further Confidentiality Review

Page 134

1  understandable that Martinez may have had repairs or
2  replacements of her washers and dryers, the evidence
3  provided to support the damage claims is
4  inconsistent and requires further inquiry to
5  validate the claims."
6      Did I read that accurately?
7  A.  Yes.
8  Q.  I'm trying to understand what this means,
9  this last proviso, "the evidence provided to support
10 the damage claims is inconsistent."
11     What are you trying to say there, or what
12 are you saying there?
13 A.  Well, it was troublesome that she had a
14 service call to repair a dryer for a model that she
15 doesn't own, and she purchased a Whirlpool washer
16 and dryer in August of 2013 with a four-year
17 extended warranty, yet, replaced it in 2000 -- in
18 January of 2015 with another Whirlpool washer and
19 dryer with a three-year extended warranty and then
20 had a service call approximately three months later
21 on a different model.  There's an in -- there is a
22 fact pattern there which, as a forensic accountant
23 who is supposed to be inquisitive, would -- you
24 know, I would look at it and say wait a minute,
25 let's talk to her a little bit more and find out

Page 135

1  what's going on.
2      And then particularly for that claimant,
3  looking at the other issues with regard to the
4  purchase of refrigerators and her other spending
5  patterns, it raises questions, and to be prudent, I
6  would make more inquiries to validate the claims.
7  Q.  All right.  Is this a prudent statement?
8  A.  I'm sorry?
9  Q.  Is this a prudent statement?
10     MR. KALIL:  Object to the form.
11 A.  Is my statement prudent?
12 Q.  Yes.
13     MR. KALIL:  Objection.
14 A.  I don't see why not.
15 Q.  Yes.  Okay.
16     MR. LONGER:  Oh, we're going to have to take
17 a break, technical break.
18     THE VIDEOGRAPHER:  Off the record at 2:16.
19     (Recess from 2:16 p.m. until 2:30?p.m.)
20     THE VIDEOGRAPHER:  We're now back on the
21 record at 2:30.
22     (Bour Exhibit 14 was marked for
23 identification.)
24 BY MR. LONGER:
25 Q.  Ms. Bour, I've handed you what we've had

Page 136

1  marked as Exhibit Number 14, which is the YA
2  analysis for ALE with no mortgage payment add
3  summary.  Do you have that before you?
4  A.  Yes.  Yes.
5  Q.  Is this a document you or your staff
6  created?
7  A.  Yes.
8  Q.  And I'll just ask you, if you would, to walk
9  us through the document and tell us what it says.
10 A.  For each of the 20 claimants, plaintiffs, it
11 indicates whether they -- they indicated in their
12 deposition or otherwise that they stopped making
13 mortgage payments or there was some other reference
14 to the mortgage payments, and then for Ms. Avery,
15 the Feldkamps, the Nunezes, and the Walls, who all
16 indicated that they had stopped making mortgage
17 payments, I calculated the alternate living expenses
18 during the period which they were not making
19 mortgage payments.
20 Q.  And that would be the time after they
21 stopped making the mortgage payments; is that
22 correct?
23 A.  Yes.
24 Q.  And what is your rationale for making that
25 evaluation?

Page 137

1  A.  Should the court or the trier of fact
2  determine that the purpose of alternate living
3  expenses is so that the plaintiffs don't have
4  duplicate living expenses, these are the expenses
5  that are for these four claimants, that are not
6  duplicative, duplicative not in amount but in kind.
7  They are not paying -- they are not paying to live
8  in the residence that they left, so the question for
9  the court is:  Are these in fact alternate living
10 expenses or are these now their living expenses?
11 Q.  As I understand it, you draw a hard line at
12 stopping making mortgage payments and that the
13 plaintiffs are simply not entitled to any
14 alternative living expenses after that time for
15 residing in another property?
16     MR. KALIL:  Objection to the form.
17 A.  That is not what I said, with all due
18 respect.
19 Q.  What I'm trying to understand is where you
20 are in your answer.  So you said that these are
21 duplicative expenses?
22 A.  Well, and then I clarified that duplicative
23 was probably not the best word to use.  These are
24 the expenses that they incurred that were -- that
25 they didn't -- they didn't have two sets of

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 576 of 802
Case 2:09-md-02047-EEF-MBN Document 23380-36 Filed 11/28/19 Page 37 of 44
Confidential - Subject to Further Confidentiality Review

## Page 138

1  expenses, so they didn't pay their mortgage and pay
2  rent, they only paid rent. So it would be up to the
3  court to determine if in fact these are living
4  expenses rather than alternate living expenses, and
5  I provided the information to assist the court with
6  the quantification, if the court were to so
7  determine that to be the case.
8      Q. Did you take into account that the plaintiff
9  was displaced from their property because it became
10 uninhabitable?
11     A. Again, this was a -- this was not a judgment
12 in any way. It's a factual account. They stopped
13 paying the mortgage, what was the rent during that
14 period?
15         There is no other -- it's a simple
16 calculation, there is no other factor that would
17 enter into the actual calculation.
18     Q. You don't -- I'm sorry. I don't want to
19 speak over you.
20     A. There are other factors that may enter into
21 whether the calculation should be considered, but I
22 didn't -- I didn't -- I'm not saying this is what
23 should be done, I'm saying during this period of
24 time, these are their living expenses, they are not
25 alternate living expenses.

## Page 139

1      Q. So you didn't take into account that the
2  plaintiff was distressed from losing their home and
3  couldn't make both a payment on the mortgage and
4  having to live some place?
5         MR. KALIL: Objection to the form.
6      A. No, I did not.
7      Q. And it's not even something that you care
8  about, whether the plaintiffs are in this dire
9  situation, where they can't afford to make both
10 payments and had to basically abandon their original
11 property; is that correct?
12         MR. KALIL: Objection to form.
13     A. No, that is not correct.
14     Q. All right. But what you do is you draw a
15 line and say if they stopped making a mortgage
16 payment, they are not entitled to the alternative
17 living expense of the other property?
18         MR. KALIL: Objection to the form.
19     A. No, that is not accurate.
20     Q. What expenses do you -- have you excluded in
21 this exhibit, or maybe duplicative is not the right
22 word, but what expenses have you eliminated in this
23 exhibit? And let's just look at the Averys for
24 example.
25     A. Ms. Avery?

## Page 140

1      Q. Yes.
2      A. So Ms. Avery was claiming $14,822 of
3  expenses, and this is a summary, so I would be happy
4  to look at a more -- look at my more detailed
5  schedule to give you more information, but I'm only
6  going to be able to give you limited information.
7      Q. If you look at what we marked previously as
8  Exhibit 10, maybe that will help.
9      A. Okay. Yes. Thank you very much, very
10 helpful.
11     Q. On a good day.
12     A. Janet Avery, the expenses that they claimed
13 as alternative living expenses consisted solely of a
14 monthly lease, so the $9,450 of lease payments
15 represent the monthly rent she was making after she
16 stopped paying the mortgage.
17     Q. And that is in the highlighted line "amount
18 claimed after stopped paying mortgage."
19         Correct?
20     A. Yes.
21     Q. And Mr. Elkin calculated that amount to
22 be -- I'm sorry.
23         Mr. Elkin claimed in his report for ALE
24 $14,822 and you say she paid $9,450 after she
25 stopped paying the mortgage so that the correct

## Page 141

1  figure should be where?
2      A. No.
3         MR. KALIL: Objection to the form.
4      A. You're mischaracterizing. I am not
5  correcting. I'm providing information so that the
6  court can make a determination. I don't -- I'm
7  not -- I don't have an opinion that they are not
8  entitled to alternative living expenses, but for the
9  court, the trier of fact to make an informed
10 judgment, it may be relevant that they stopped
11 paying -- that Ms. Avery stopped paying her mortgage
12 and $9,450 of her alternative living expenses are in
13 fact her primary living expenses now.
14     Q. All right. And excuse me one second.
15         So this is making me think that we need to
16 go -- no.
17         I'm sorry. I was thinking that your errata
18 would cover this and it doesn't, but you have
19 $10,125 as the ALE after the claimant stopped making
20 the mortgage payment for Janet Avery. I'm sorry.
21 You say that in your report?
22     A. Yes, I did.
23     Q. At Paragraph 95A and we're talking about
24 $9450.
25     A. Let me just double-check my file right here.

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 577 of 802
Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 11/28/19 Page 38 of 44
Confidential - Subject to further confidentiality review

Page 142

1  Q.  And I want to understand the discrepancy.
2  A.  Let me look and I will let you know whether
3 the discrepancy is in the work paper, that this did
4 not get updated, or whether it's my report.
5     The discrepancy is in the work paper, the
6 report is correct.  So I apologize.
7  Q.  And -- thank you.  It's that $675 payment in
8 January --
9  A.  It's dated January 29, 2011.
10  Q.  Okay.
11  A.  So I checked my numbers and you actually --
12  Q.  You corrected the report?
13  A.  You actually received the schedule with the
14 correct amount.  This schedule was not corrected.
15  Q.  Fair enough.  I thought it was in the
16 errata, I remember this in there.
17  A.  Well, if you did look through my work
18 papers, you would have seen the correct number.
19  Q.  Thank you.  And you did the same analysis
20 for the Feldkamps, Nunezes and Walls, correct?
21  A.  Yes.
22  Q.  We could go through this page by page but
23 I'm trying to speed things up.
24  A.  Uh-huh.  Yes.
25  Q.  That was basically the same analysis for

Page 143

1 each one, after they stopped making a mortgage
2 payment, you pointed out what that amount would be?
3  A.  Yes.  Yes.
4  Q.  I'm going to talk now about the lost equity
5 section of your report, which begins on page 24, and
6 I'm trying to understand the differences between you
7 and Mr. Elkin.  It strikes me that you have in your
8 report come up with at least some analysis that
9 supports a cash flow analysis akin to what Mr. Elkin
10 did; is that correct?
11  A.  No.
12  Q.  What is Exhibit 4 to your report purport to
13 be doing?
14  A.  It purports to correct his methodology which
15 I don't necessarily agree with or, actually, I don't
16 agree with.  It does not measure equity, but if
17 using his methodology, it corrects his analysis for
18 things that he didn't consider on the settlement
19 sheets.
20  Q.  So if we were to discard the word "lost
21 equity" and talk in terms of just lost cash, and
22 just talk in terms of a cash flow analysis, are you
23 more comfortable with that description and then you
24 can correct for it by removing certain expenses
25 along the lines of what you've done in Exhibit 4?

Page 144

1  A.  I don't -- I don't think it's an appropriate
2 measurement of damages, but given that's what he
3 used, there were -- there were some errors in how
4 he -- in how he analyzed the information.
5  Q.  So what he was doing, in your words, was a
6 lost net invested capital analysis; is that
7 accurate?
8  A.  Invested cash analysis.  I don't know that I
9 called it capital.
10  Q.  Maybe I misspoke.  Invested cash analysis.
11  A.  I believe he referred to it as net invested
12 capital at some place in his report; however, he
13 calls it lost equity.
14  Q.  So --
15  A.  Because I see that I, in Paragraph 105, I
16 refer to it as "net invested capital" in quotation
17 marks, which indicates to me that I -- that that's
18 not my wording.
19  Q.  So explain to me how you appreciate -- or,
20 no.  Sorry.
21     Explain to me, please, what the analysis was
22 that he did, which you call net invested capital?
23  A.  He looked at the cash that each of the
24 claimants -- or in theory that each of the claimants
25 put into their residence, and offset it by what they

Page 145

1 were able to realize when they sold it to determine
2 their net invested capital.
3  Q.  And you don't perceive that to fit within
4 the square definition of lost equity, correct?
5  A.  That's -- I don't -- my understanding is
6 that is not lost equity.
7  Q.  I'm trying to agree with -- I'm trying to
8 get to exactly that point.  You don't agree that
9 that's lost equity but you can perceive -- let me
10 just.  That's a question.
11     You don't perceive that to be lost equity,
12 correct?
13  A.  Correct.
14  Q.  You can perceive it to be a lost net
15 invested capital if performed accurately, correct?
16     MR. KALIL:  Object to the form.
17  A.  It's a -- it's a cash flow analysis and
18 again, lost capital, it's a mathematical
19 calculation.  It's not necessarily a measurement of
20 damage, so I can agree that it's a calculation, I
21 just don't agree that that's a measurement of lost
22 equity.
23  Q.  All right.  In Paragraph 105 you say:  "This
24 methodology is inherently flawed because among other
25 reasons, not all items on the HUD settlement sheets

Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 578 of 802
Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 578 of 802
Confidential - Subject to further Confidentiality Review
44

Page 146

1 relate to the net invested capital."
2     And your analysis focuses on the
3 misstatements of settlement costs and occupancy
4 costs.
5     Did I read that accurately?
6   A. Well, except for the commentary you put
7 after when you read it, yes. So just to clarify,
8 that not all of what you said before "did I read
9 that accurately" was what's written in the report.
10   Q. All right. I can read it accurately if you
11 want me to, but I'm going to try and save some time.
12   A. Okay. Well, you'll excuse me if I don't
13 agree to the inaccuracy as far as it being read.
14   Q. Where I am is on the "among other reasons."
15     What are the other reasons that you perceive
16 the methodology to be inherently flawed that are not
17 described in your report?
18   A. Oh, it doesn't take into consideration all
19 the external factors that can influence -- that
20 could influence a measurement of lost equity as a
21 damage.
22   Q. Such as?
23   A. Such as the local real estate market, such
24 as the economic conditions, such as the credit
25 market and access to available credit for home

Page 147

1 buyers and how that impacts the price of homes in a
2 particular market.
3   Q. Anything else?
4   A. I'm sure that there are a whole list of
5 other factors that go into the market value or a
6 reduction in the market value, fluctuations in the
7 market value at any given point in time.
8   Q. Can you identify them today?
9   A. I can't identify all of them. I can tell
10 you all sorts of things that impact market value of
11 residential houses, but I can't give you an all
12 inclusive list.
13   Q. So what are the factors that are among other
14 reasons that you find his methodology inherently
15 flawed?
16   A. Well, it was beyond the scope of my
17 engagement to identify all the items. I just know
18 that there are other items, other reasons why the
19 methodology is flawed and I gave you some examples.
20 My engagement was not to identify all the reasons
21 why his methodology was flawed.
22   Q. I'm still in Paragraph 105, that second
23 sentence reads: My analysis focuses on the
24 misstatements of settlement costs and occupancy
25 costs.

Page 148

1     Are there any other components to your
2 analysis other than what's described there?
3   A. No.
4   Q. All right. So for ease, I'm going to mark
5 as Exhibit Number --
6     MR. LONGER: Are we up to 15?
7     THE COURT REPORTER: 15.
8     MR. LONGER: Exhibit 14 was this.
9     (Bour Exhibit 15 was marked for
10 identification.)
11 BY MR. LONGER:
12   Q. What is Exhibit 15, Ms. Bour?
13   A. It is my initial analysis of cash flow among
14 sales of the residences as attached to my report
15 before corrections.
16   Q. So can you explain the updates to this
17 report based on your updates?
18   A. Yes.
19   Q. Would you -- would you agree that they are
20 identified on Exhibit 8, which was your errata?
21   A. Yes.
22   Q. And let's start with the Averys.
23   A. Ms. Avery.
24   Q. Ms. Avery.
25   A. So the update to this schedule, the items

Page 149

1 that are shown as positive on this schedule should
2 have been shown as negative, so the only change is
3 to make those subtractions rather than additions.
4   Q. When you say this schedule, if I were to
5 direct you to Exhibit Number 9 --
6   A. Yes.
7   Q. -- and ask you to turn to Tab 3, towards the
8 rear of the document, and forgive me, because
9 it's -- the PDF is paginated but the hard copy is
10 not, so I'm just going to say towards the rear but
11 there is an Exhibit 1 about Janet Avery updated.
12   A. Yes.
13   Q. Do you see where I'm talking about?
14   A. Yes.
15   Q. And is that the schedule that you're talking
16 about as well?
17   A. Yes.
18   Q. Okay. Thank you. So continue. You were
19 saying if -- if you look at this schedule, you could
20 see that the figures that were -- they should be
21 negative instead of positive, correct?
22   A. Yes.
23   Q. So that amounted to a substantive
24 difference, did it not?
25   A. Yes, a couple thousand dollars.

Page 150

1    Q.   The difference between $116,273 and
2  $112,989, correct?
3    A.   Yes.
4    Q.   Can we do the same analysis for Marin?
5    A.   I'm sorry, for?
6    Q.   Marin?
7    A.   Marin.  Okay.  So on Marin, there was a line
8  item for $156,000 -- I mean $156.30.
9        THE WITNESS:  Actually, could you get me
10  Binder 11.
11       MR. KALIL:  There you go.
12       THE WITNESS:  Thank you very much.
13    A.   Okay.  So the $156.30 represents county
14  taxes, and in Mr. Elkin's schedule he did a
15  departure from his standard methodology.  Typically
16  that amount would have been shown on the credits
17  line, as was for the other claimants, and it was
18  omitted here, and I didn't catch that he didn't
19  include the credit the same as he did for all the
20  other claimants, so I picked up the taxes,
21  erroneously, where he didn't include it on this one
22  particular claim -- claimant.
23    Q.   And --
24    A.   So I corrected, as I was preparing for my
25  deposition and reviewing all my work and checking

Page 151

1  all my numbers, I went back and looked through
2  everything, realized on this particular claimant he
3  did not pick up the credit similarly to what he had
4  done on the other claimants, so that number was
5  removed.
6    Q.   All right.  And what you are doing, if we
7  look at page 45 of your Exhibit Number 15, there is
8  the line that says:  "Adjustments from purchase
9  closing statement, $156.30 for county taxes?"
10    A.   Yes.
11    Q.   And you are adjusting for that figure?
12    A.   I initially adjusted for it.  Again, I
13  missed that Mr. Elkin, for this one claimant, this
14  was the only claimant he didn't pull the credit
15  forward for, so I pulled the amount that -- it's a
16  credit on the settlement sheet, so I pulled that
17  amount forward, not realizing he missed it.
18    Q.   And then from your analysis, what you are
19  doing is taking into account occupancy-related
20  expenses by removing them from the calculation?
21    A.   From his calculated lost equity, as he -- he
22  calls it lost equity.  So I started with his lost
23  equity number, what he's claiming is a lost equity
24  number, and I adjusted for -- so, for example, real
25  estate costs.  So on the purchase of the house, the

Page 152

1  person who is buying the house won't pay taxes until
2  the end of the year in Florida, they pay in arrears,
3  so there is a payment back for real estate taxes
4  that the seller of the house would have had to pay.
5  Okay?  So that's additional money that the buyer of
6  the house gets.  They get reimbursed from the seller
7  for that amount.
8        However, on the credit line on Mr. Elkin's
9  schedule for Cassandra Marin, on his Exhibit 11.2,
10  he did not reflect the credit there.
11    Q.   The $156?
12    A.   The $156, where he did for other settlement
13  sheets.  I missed that it wasn't included.  So when
14  I realized it wasn't included, that was one of my
15  corrections.
16    Q.   Thank you.  And then you also, in order to
17  adjust over all for him, what you were saying is
18  look, I don't agree that it's lost equity, but if we
19  are talking about lost invested cash, I need to
20  remove the occupancy-related expenses, such as real
21  estate taxes, water bills, and the like, correct?
22    A.   Yes.
23    Q.   And that is what's reflected here, which is
24  that you have identified, and I'm just talking about
25  Marin, for example, you've identified $256.54 for

Page 153

1  real estate taxes, $158.88 for water sewer, and a
2  credit, am I saying that correctly, or how do you
3  say a negative number?
4    A.   It gets very confusing because depending
5  upon whether you are on the buyer's side or the
6  seller's side.  So it would be -- and I'll look at
7  the settlement sheet and be specific.
8        Okay.  So when Cassandra Marin sold the
9  residence, the selling price was $81,000 even.  The
10  seller, Ms. Marin, received another $256.54 for
11  storm water -- it says storm water/garbage, so the
12  water/sewer bill, for the amounts paid by the seller
13  in advance.  So she paid her bill for -- through
14  October 1st, 2012, and was reimbursed for the pro
15  rata share where she was not going to be living
16  there.
17        Okay.  So it's positive because it was
18  included in cash that she received, but it's not
19  cash related to her investment in the property, it's
20  cash for a utility bill she prepaid.
21    Q.   Understood.
22    A.   Okay.  So since Mr. Elkin's number
23  represents a loss, the loss needs to be increased by
24  $256.54, similarly, the $158.80 is water and sewer
25  assessment, and again it's a reimbursement to her of

Page 154

1  something that she paid that's not related to her
2  investment, her net cash in the real estate. It's
3  related to something she paid -- prepaid and got
4  reimbursed for.
5      So again, it reduced -- artificially reduced
6  the amount of cash she got out, so it gets added
7  back.
8      The converse is true for the other three
9  numbers, where they are expenses that she hadn't
10  paid that Mr. Elkin, because he took the net cash to
11  seller as the line that he incorporated in his
12  schedule had not factored in accordingly either. He
13  factored them in. They reduced the net amount when
14  they would have been paid outside of closing because
15  they represented operating expenses if they were --
16      Q. And so the other expenses on this exhibit
17  that we were just talking about were Line 511 for
18  county taxes, Line 1303 for real estate taxes and
19  Line 1304 for a water bill; is that correct?
20      A. Yes, and those are from the HUD 1, the
21  settlement sheet from when she sold the property.
22      Q. Now, you've also corrected Exhibit 4 in your
23  errata for Nunez, correct?
24      A. Yes.
25      Q. And what is the result of that difference?

Page 155

1      Let me say that very differently. What is
2  the difference between what you originally had and
3  your updated amount?
4      A. $177.60, so there was a reduction for
5  interest expense on their second mortgage, which I
6  incorrectly assumed had been included in -- factored
7  into Mr. Elkin's calculation. When I went back and
8  reviewed on a line item by line item basis, it was
9  not a part of his calculation, so therefore that
10  line item was removed.
11      Q. If we go to O'Brien, it's the same page as
12  Exhibit 4.
13      A. Right. The $158.88 should have been a
14  negative number. It's shown as a positive number.
15      Q. All right. And that was corrected on the
16  errata and we still have the original document, so
17  this original document, Exhibit Number 15, is
18  inaccurate, but you're correcting it through the
19  errata on Exhibit 8, correct?
20      A. Correct, and in Exhibit 9 I provided you
21  updated schedules.
22      Q. And you provided updated schedules for
23  Avery, Marin, Nunez, O'Brien and Rosen, correct?
24      A. Yes.
25      Q. And last -- I'm sorry. What was the

Page 156

1  difference with O'Brien, the overall delta between
2  what you originally had and your updated?
3      A. With the correction, it went from
4  $150,000 -- I'm sorry, $150.88 positive to a
5  negative. So the change should have been that
6  difference.
7      Q. That difference. All right. And then with
8  the Rosens, what is the difference there?
9      A. Okay. The difference in the Rosens has to
10  do with adding information from -- the majority of
11  the changes have to do with adding information from
12  their refinancing.
13      So the Rosens refinanced a 175,000-dollar
14  mortgage with a 200,000-dollar mortgage. And the
15  costs in refinancing, the settlement costs of
16  between $16,000 and $17,000, are mostly to fund a
17  reserve with the lender for taxes, insurance, and --
18  I believe it's hazard insurance, county -- let's
19  see.
20      I'm sorry, I'm looking at the wrong
21  schedule.
22      Yes, insurance and county taxes are the
23  majority of the expenses. There is also some
24  interest that was paid in conjunction with the
25  refinancing, as well as $22 00 in settlement costs

Page 157

1  for the elective refinancing. So those aren't
2  investments in the real estate. Those have to do
3  with either occupancy or the -- the cost of
4  refinancing, which, in theory, would have gotten --
5  which would have been a trade-off with saved
6  interest over time.
7      Q. Understood. You're -- you're taking out
8  occupancy, and you are taking out any costs
9  associated with the refinancing?
10      A. Yes.
11      Q. And those are all reflected in the schedule
12  which was part of Exhibit Number 9, the updated
13  schedule?
14      A. Yes.
15      Q. And what is the overall difference between
16  your original report, which was inaccurate, and the
17  corrected version?
18      MR. KALIL: Object to the form.
19      A. Approximately -- approximately $16,000.
20  BY MR. LONGER:
21      Q. $16,000?
22      A. Yes.
23      Q. So that's not an insignificant amount,
24  correct?
25      A. Correct.

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 581 of 802
Case 2:14-cv-02722-MSG Document 2024-4 Filed 02/18/14 Page 42 of 44
Confidential - Subject to further confidentiality Review

Page 158

1    Q.  I don't see any adjustments for Feldkamp or
2  Walls in your errata, in your expert report and work
3  paper binder, or in Exhibit Number 4.
4        Is that because -- well, why is that?
5    A.  If I remember correctly, there was -- there
6  were no adjustments for one of them.  I believe it
7  was Wall, and I -- I would have to pull -- one --
8  one of them had no adjustments that were necessary
9  because there were no occupancy costs reflected on
10  whatever settlement sheet I had.  In the other,
11  there was no settlement sheet.
12        And there -- there are instances in here
13  where settlement sheets weren't provided or closing
14  costs were estimated, and I can't make an adjustment
15  for something that I don't have.  So this -- these
16  are the adjustments based on the documentation that
17  Mr. Elkin had.
18    Q.  As between the two, do you recall which one
19  did not have the HUD statement?
20    A.  Wall would be, I believe, 19 or -- let's
21  see.  I'm sorry.  Wall is, yeah, 19.
22        No, I don't, without looking at the file.
23    Q.  I'm sorry?
24    A.  I said I do not, without looking at the
25  file.

Page 159

1    Q.  And now, do you have the file?
2    A.  I have the file.
3    Q.  Well, let's do it.
4    A.  So Wall did not have a settlement sheet
5  associated with it, and, therefore, there were no
6  adjustments.
7        I'd have to look at Feldkamp to see whether
8  there was any -- whether there was a settlement
9  sheet involved with his or not, if you would like me
10  to.
11    Q.  I thought you told me that the other --
12  there were no adjustments to be made.
13    A.  It -- Wall could be the one where there were
14  no adjustments because it was a foreclosure, and
15  Feldkamp could be the one that I didn't have enough
16  information on.  I don't -- don't recall without
17  looking at them.
18    Q.  Do you want to take a quick look at
19  Feldkamp?
20    A.  Sure.
21        THE WITNESS:  Feldkamp would be Number 5.
22        Thank you very much.
23    A.  Both of them were sold in foreclosure with
24  judgments of foreclosure, and I don't have
25  settlement sheets for either of them.  So there just

Page 160

1  weren't any adjustments that needed to be made to
2  them.  That's why there's no -- that's why I have no
3  schedule.
4    Q.  Okay.
5        MR. LONGER:  I believe I'm at a breaking
6  point here.  Let me -- let's go off the record.
7        THE VIDEOGRAPHER:  Off the record at 3:17.
8        (Recess from 3:17 p.m. until 3:26 p.m.)
9        THE VIDEOGRAPHER:  Back on the record at
10  3:26.
11        MR. LONGER:  Ms. Bour, I want to thank you
12  for your time.  I have no further questions.  I
13  appreciate that you have answered the questions
14  that I have had today, and I look forward to
15  visiting you with some other time.
16        THE WITNESS:  Thank you.
17        MR. KALIL:  Thank you very much.
18        We have no questions on this side.
19        And you have the right to read.
20        THE WITNESS:  I would like to read.  Thank
21  you.
22        MR. KALIL:  Thank you very much.
23        THE VIDEOGRAPHER:  The time is 3:26 p.m.
24  We're going off the record.  This marks the end
25  of the deposition.

Page 161

1        (Whereupon, the deposition concluded at
2  3:26 p.m.)
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 582 of 802
Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 43 of 44
Confidential - Subject to further confidentiality review

Page 162

1    C E R T I F I C A T E
2         I, SUSAN D. WASILEWSKI, Registered
3    Professional Reporter, Certified Realtime Reporter
4    and Certified Realtime Captioner, do hereby certify
5    that, pursuant to notice, the deposition of MARCIE
6    D. BOUR was duly taken on Monday, April 15, 2019, at
7    9:30 a.m. before me.
8         The said MARCIE D. BOUR was duly sworn by me
9    according to law to tell the truth, the whole truth
10   and nothing but the truth and thereupon did testify
11   as set forth in the above transcript of testimony.
12   The testimony was taken down stenographically by me.
13   I do further certify that the above deposition is
14   full, complete, and a true record of all the
15   testimony given by the said witness, and that a
16   review of the transcript was requested.
17
18   _____
19   Susan D. Wasilewski, RPR, CRR, CCP
20   (The foregoing certification of this transcript does
21   not apply to any reproduction of the same by any
22   means, unless under the direct control and/or
23   supervision of the certifying reporter.)
24
25

Page 163

INSTRUCTIONS TO WITNESS

1
2
3
4         Please read your deposition over carefully
5    and make any necessary corrections.  You should
6    state the reason in the appropriate space on the
7    errata sheet for any corrections that are made.
8
9         After doing so, please sign the errata sheet
10   and date it.  It will be attached to your
11   deposition.
12
13        It is imperative that you return the
14   original errata sheet to the deposing attorney
15   within thirty (30) days of receipt of the deposition
16   transcript by you.  If you fail to do so, the
17   deposition transcript may be deemed to be accurate
18   and may be used in court.
19
20
21
22
23
24
25

Page 164

1         ------
2       E R R A T A
3         ------
4    PAGE  LINE  CHANGE
5    ____  ____  _____
6    REASON: _____
7    ____  ____  _____
8    REASON: _____
9    ____  ____  _____
10   REASON: _____
11   ____  ____  _____
12   REASON: _____
13   ____  ____  _____
14   REASON: _____
15   ____  ____  _____
16   REASON: _____
17   ____  ____  _____
18   REASON: _____
19   ____  ____  _____
20   REASON: _____
21   ____  ____  _____
22   REASON: _____
23   ____  ____  _____
24   REASON: _____
25

Page 165

ACKNOWLEDGMENT OF DEPONENT

1
2
3         I, _____, do hereby
4    acknowledge that I have read the foregoing pages, 1
5    through 164, and that the same is a correct
6    transcription of the answers given by me to the
7    questions therein propounded, except for the
8    corrections or changes in form or substance, if any,
9    noted in the attached Errata Sheet.
10
11
12   _____
13   MARCIE D. BOUR                    DATE
14
15
16
17
18   Subscribed and sworn to before me this
19   ____ day of _____, 20___.
20   My Commission expires: _____
21
22   _____
      Notary Public
23
24
25

Confidential - Subject to Further Confidentiality Review

Page 166

```
 1              LAWYER'S NOTES
 2  PAGE  LINE
 3  _____ _____ _____
 4  _____ _____ _____
 5  _____ _____ _____
 6  _____ _____ _____
 7  _____ _____ _____
 8  _____ _____ _____
 9  _____ _____ _____
10  _____ _____ _____
11  _____ _____ _____
12  _____ _____ _____
13  _____ _____ _____
14  _____ _____ _____
15  _____ _____ _____
16  _____ _____ _____
17  _____ _____ _____
18  _____ _____ _____
19  _____ _____ _____
20  _____ _____ _____
21  _____ _____ _____
22  _____ _____ _____
23  _____ _____ _____
24  _____ _____ _____
25
```

# EXHIBIT E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE No.: 11-22408-Civ- COOKE

EDUARDO and CARMEN AMORIN,
et al.,
Individually and on behalf of others similarly
situated,

        Plaintiffs,

vs.

TAISHAN GYPSUM CO., LTD., f/k/a
SHANDONG TIASHE DONGXIN CO., LTD.,
et al.,

        Defendants.

_____/

_____

**EXPERT REBUTTAL REPORT OF**
**MARCIE D. BOUR, CPA/ABV, CVA, CFE, MAFF, ABAR, CDBV**


**March 25, 2019**

Expert Rebuttal Report of Marcie D. Bour
Eduardo and Carmen Amorin, et al. v. Taishan Gypsum, Co., Ltd., et al.

# Contents

I.    INTRODUCTION ................................................................................................................ 2

II.    RELEVANT EXPERIENCE ............................................................................................... 4

III.    SUMMARY OF OPINIONS ............................................................................................... 4

IV.    BACKGROUND: ELKIN REPORT AND TESTIMONY ................................................. 5

V.    APPLICABLE STANDARDS ............................................................................................ 7

VI.    DATE OF DAMAGE AND STANDARD OF VALUE FOR PERSONAL PROPERTY ................. 9

VII.    REBUTTAL REPORT METHODOLGY AND ANALYSIS ........................................... 11

Accuracy and Consistency: Damage Dates ............................................................................. 12

Accuracy: Amounts ................................................................................................................. 15

Accuracy: Descriptions............................................................................................................ 16

Accuracy: Use of Estimates..................................................................................................... 17

Consistency: Reconciling Supporting Information ................................................................. 18

Consistency: Claimants Who Stopped Making Mortgage Payments ...................................... 23

Consistency: Review of Supporting Documents for Non-Damage Items .................................. 24

Consistency:  Methodology for "Lost Equity" ....................................................................... 24

VIII.    SUMMARY OF FINDINGS .......................................................................................... 26

IX.    COMPENSATION FOR STUDY AND TESTIMONY.................................................... 27

EXHIBIT 1: INFORMATION CONSIDERED ...................................................................... 29

EXHIBIT 2: QUALIFICATIONS .......................................................................................... 32

EXHIBIT 3: TESTIMONY LOG ........................................................................................... 39

EXHIBIT 4: ANALYSIS OF CASH FLOW UPON SALE OF RESIDENCE ........................... 42

Expert Rebuttal Report of Marcie D. Bour
Eduardo and Carmen Amorin, et al. v. Taishan Gypsum, Co., Ltd., et al.

## I.  **INTRODUCTION**

1.  Yip Associates has been retained by Orrick Herrington & Sutcliffe LLP, representing Beijing New Building Materials Public Limited Company.

2.  I have been asked to review Michael P. Elkin's ("Mr. Elkin") opinions as contained in:

    a.  the report issued by Michael P. Elkin, CPA/CFF/ABV, CFE dated February 19, 2019 ("Elkin Report");

    b.  Elkin Report Updated Exhibit 4, Steven & Cathy Etter ("Etters") dated March 9, 2019;

    c.  Elkin Report Updated Exhibit 12, Dailyn Martinez ("Martinez") dated February 26, 2019;

    d.  Elkin Report Updated Exhibit 17 Michael & Robin Rosen ("M. Rosen Claimants") dated March 8, 2019; and

    e.  deposition testimony provided by Michael P. Elkin on March 11, 2019 and March 12, 2019.[1]

3.  More specifically, I have been asked to look at claimed damages for alternate living expenses, personal property damages, and "lost equity" as summarized in the Elkin Report. In the process of my review, I have analyzed his methodology and his application of such methodology.

---

[1] I was present for both days of Mr. Elkin's depositions. Mr. Elkin revised the Martinez, Etter and Rosen Exhibits prior to his deposition. During his deposition, he indicated, the only things that require adjustments in his report are the dates for Martinez that are prior to her moving into the house. He noted that the classifications in damage categories were in some cases wrong, but reclassification would not change the amount of calculated damages for any Claimant.

Expert Rebuttal Report of Marcie D. Bour
Eduardo and Carmen Amorin, et al. v. Taishan Gypsum, Co., Ltd., et al.

4.    I have also been asked to look at the framework he set up for calculation of prejudgment interest based upon his Updated Support Master Database.[2]

5.    I have not been asked to provide any opinions with regard to remediation, diminution in value, or loss of use and enjoyment.

6.    My rebuttal opinion will not address liability or causation. However, in certain circumstances, the evidence provided to Mr. Elkin may indicate that there is no causal link between Chinese drywall / defective drywall and the claimed damage. I have noted such instances in this report.

7.    In preparing this report and forming the opinions expressed herein, I have reviewed and considered to the extent deemed necessary and appropriate, the documents, information and data sources listed in Exhibit 1, as well as the appropriate professional standards and sources specifically cited in this report.

8.    My opinions are based on the documents reviewed, analysis performed, and testimony of witnesses, as well as my experience, education and training as a certified public accountant, forensic accountant, and business appraiser, as relevant to the engagement.

9.    Should additional documents and information be made available or reviewed, certain information or facts may come to light, which may impact the observations and conclusions herein. I reserve the right to amend this Expert Rebuttal Report based on such information. Should Mr. Elkin issue a report or schedules reflecting modifications to his work, I reserve the right to update this Rebuttal Report.

---

[2] I received Mr. Elkin's Updated Support Master Database in native electronic form.

Expert Rebuttal Report of Marcie D. Bour
Eduardo and Carmen Amorin, et al. v. Taishan Gypsum, Co., Ltd., et al.

## II.  **RELEVANT EXPERIENCE**

10.  I am a Partner at Yip Associates, a forensic accounting and financial investigations firm with offices in Miami, Fort Lauderdale, Boca Raton, Tampa, New York, and New Jersey.

11.  I am a Certified Public Accountant licensed by the State of Florida since 1993.  Prior to becoming licensed in Florida, I was licensed as a Certified Public Accountant in Pennsylvania in 1986.  I also hold the following professional designations: Certified Fraud Examiner ("CFE"), Master Analyst in Financial Forensics ("MAFF"), Certified Valuation Analyst ("CVA"), Accredited in Business Valuation ("ABV"), Accredited in Business Appraisal Review ("ABAR"), and Certified in Distressed Business Valuation ("CDBV").  My experience for the past 23 years has been in the areas of forensic accounting, economic losses, and business valuation.

12.  I have over thirty years of professional experience as a CPA, dealing with a wide variety of companies.  Specific to this case, I have been involved with real estate projects for over thirty years. I also have experience in asset tracing as it relates to real estate, as well as other asset tracing engagements.  See Exhibits 2 and 3.

## III.  **SUMMARY OF OPINIONS**

13.  My assignment was to determine whether the opinion of damages was arrived at using methods and information resulting in a reliable measurement of damages.

14.  As outlined in the Rebuttal Report, I analyzed the Updated Master Database ("Database") and supporting information used by Mr. Elkin in forming his opinion.

15.  Based on my analysis and review of Mr. Elkin's report, including exhibits and updated exhibits, I have reached the following opinions:

4

Expert Rebuttal Report of Marcie D. Bour
Eduardo and Carmen Amorin, et al. v. Taishan Gypsum, Co., Ltd., et al.

    a.   Accuracy: The report issued by Mr. Elkin is inaccurate because it contains data entry errors, duplications and omissions. In some instances, Mr. Elkin fails to take into consideration relevant facts in quantifying damage amounts.

    b.   Consistency: Because Mr. Elkin did not use any single criteria to identify the date of the damage, quantify the amount of damage, or validate the amount of the damage, the resulting opinions for the Priority Claimants ("Claimant" or "Claimants") were based on different criteria.

    c.   Reliability: The estimates of the Claimants' damages and prejudgment interest are inflated due to flaws in methodology, errors and omissions. Accordingly, the opinions expressed in the Elkin Report are not a reliable measurement of damages.

16.    My analysis of the flaws in methodology, errors, and omissions in the Elkin Report noted in the Rebuttal Report are the basis for my opinions.

## IV.   BACKGROUND: ELKIN REPORT AND TESTIMONY

17.    Mr. Elkin stated in his report the scope of his assignment was, "…to determine Out-of-Pocket Expenses for those who fully or partially remediated and certain components of Other Damages pursuant to Judge Cooke's Order."[3]

18.    Mr. Elkin is a Certified Public Accountant and a Certified Fraud Examine who routinely does forensic accounting for this type of engagement.

19.    Specifically, Mr. Elkin states that, "In formulating my opinions, I considered qualitative and quantitative information relative to each Claimant following prescribed or commonly applied methodology using the best evidence available." He recognizes in a footnote that

---

[3] Elkin Report, page 2, paragraph 6.

Expert Rebuttal Report of Marcie D. Bour
Eduardo and Carmen Amorin, et al. v. Taishan Gypsum, Co., Ltd., et al.

ultimately the trier of fact will be the one to determine if the available evidence is sufficient to support the Claimants' damages, so he makes no such determination.

20.  Mr. Elkin performed limited forensic procedures, which essentially amounted to matching alleged damages to any backup information provided.

> "Q: Would you agree with me that you were not making a determination as to whether -- whether any of these items were appropriately included in the report; you were simply including them for purposes of the numbers and tallying them up?
>
> A. For the numbers and to do a diligent job to make sure that we applied relatively simple, but forensic procedures to be able to correlate the expenses with the claimed backup.
>
> Q. And those forensic procedures extended to matching invoices with numbers in your spreadsheets, but they did not include any determination of whether those invoices were, in fact, related to the claims in the case; is that fair?
>
> A. To the extent that if something obvious jumped out, we might have had some discussion with -- about it. There are things that I excluded based on my observation and subsequent discussions. In fact, particular to this -- this – the Martinez claim, I had excluded a relatively large item, but that was not -- it wasn't my intended scope to be able to go through every receipt and determine its eligibility."[4]

21.  He did not independently determine the fair market value of any property as a measurement of damages.

---

[4] Deposition of Michael P. Elkin, March 11, 2019, 126:12-25, 127:1-9.

Expert Rebuttal Report of Marcie D. Bour
Eduardo and Carmen Amorin, et al. v. Taishan Gypsum, Co., Ltd., et al.

> "Q: Am I correct that you did not establish any forensic procedures for determining
>
> ineligibility of any personal property items claimed as damages by the Claimants?
>
> A. That's correct.
>
> Q. Did you -- and you also did not establish any forensic procedures for determining
>
> if any of the replacement personal property items were of greater value than the
>
> ones that were damaged?
>
> A. That's correct."[5]

22. He further clarified that he did not rank the quality of the evidence, nor did he do any statistical analysis of the evidence.[6]

23. With regard to his calculation of prejudgment interest, Mr. Elkin testified that his purposes was to assist the court, should it determine that prejudgment interest was appropriate. However, without an accurate recording of the damages, it is not possible to accurately calculate prejudgment interest.

24. While Mr. Elkin tracked settlement amounts received by the Claimants in his workpapers, he did not consider the receipt of such payments for purposes of an offset to the alleged damages or in his calculation of prejudgment interest.

## V.  APPLICABLE STANDARDS

25. The American Institute of Certified Public Accounts' ("AICPA") *Code of Professional Conduct* ("the Code") applies to all CPAs within the state of Florida.

---

[5] Ibid, March 11, 2019, 105:10-19.
[6] Ibid, March 12, 2019, 250:1-9.

Expert Rebuttal Report of Marcie D. Bour
Eduardo and Carmen Amorin, et al. v. Taishan Gypsum, Co., Ltd., et al.

26. The AICPA has issued an exposure draft titled *Statement on Standards for Forensic Services* (*"SSFS"*)*, which is expected to apply to engagements accepted after May 1, 2019.

27. While the proposed standards do not specifically apply to this engagement, they are indicative of best practices within the field, which were previously outlined in AICPA *Forensic & Valuation Service Practice Aid, Serving as an Expert Witness or Consultant*[7] ("Practice Aid").

28. *SSFS* refers back to the Code, which does apply to Mr. Elkin, requiring that the practitioner:

    a. "Exercise due professional care in the performance of professional services."[8]

    b. "Adequately plan and supervise the performance of professional services."[9]

    c. "Obtain sufficient relevant data to afford a reasonable basis for conclusions or recommendations in relation to any professional services performed."[10]

29. Proposed *FFSF* 100.06 states, "*Members* must service their client with integrity and objectivity, as required by the Code. *Members* performing Forensic Services should only be an advocate of their professional opinion."

30. The Practice Aid, which is intended to provide general guidance to certified public accountants providing expert witness services, outlines the practitioner's role. Similar to the proposed standard, it states, "…when acting as an expert witness, the practitioner needs to maintain his or her independence and objectivity at all times during the

---

[7] Published in 2014.
[8] Proposed FFSF 100.04.
[9] Ibid.
[10] Ibid.

Expert Rebuttal Report of Marcie D. Bour
Eduardo and Carmen Amorin, et al. v. Taishan Gypsum, Co., Ltd., et al.

engagement and not become the client's advocate. In this capacity, the practitioner's role is to form an objective professional opinion based on facts or hypotheses."[11]

31.  With regard to staffing and supervision, the Practice Aid cautions, "Failure to…appropriately direct and supervise the work performed may adversely affect the quality and reliability of the expert's opinions."[12]

32.  While sufficient relevant data is not defined with the Practice Aid, the practitioner needs to consider the assumptions relied upon. "An expert may base opinion testimony on either facts or assumptions. Likewise, an expert may base assumptions on facts; presumptions from facts; or assumptions provided by the client, other expert or counsel…*The practitioner should consider analyzing key assumptions to determine whether they are reasonable and identify the source of information.* Ultimately the trier of fact will determine the reasonableness of the assumptions."[13] [Emphasis added]

33.  Mr. Elkin is subject to the Code and has an obligation to exercise professional diligence in performing the engagement, as well as to supervise the work that is the basis for his professional opinion. He also has the obligation to consider relevant facts in the formation of his opinion.

## VI.  DATE OF DAMAGE AND STANDARD OF VALUE FOR PERSONAL PROPERTY

34.  I am a qualified business appraiser, but my training and experience does not include the valuation of personal property.

35.  Counsel has provided me with guidance regarding quantifying damages for loss of personal property.

---

[11] Practice Aid, Page 10.
[12] Practice Aid, page 14.
[13] Practice Aid, page 15.

Expert Rebuttal Report of Marcie D. Bour
Eduardo and Carmen Amorin, et al. v. Taishan Gypsum, Co., Ltd., et al.

36. The definition of value is similar for both businesses and for personal property.

37. The definition of fair market value is generally recognized in the valuation community as the price between a willing buyer and seller, both informed of relevant facts, and neither under compulsion to act.[14] The Department of Treasury does not distinguish between a business interest and a property interest in applying this definition.

38. The cases provided to me by counsel indicate that the damages for loss of personal property are measured by the fair market value (also referred to as market value) of the property on the date of loss.

39. This is consistent with my understanding of value and experience with losses.

40. Generally, damage to property is measured by the loss of value that was caused by some act.

41. When the property can be repaired to the pre-damage condition, the repair cost is usually considered a measurement of that damage. However, if the repair cost exceeds the value of the property immediately prior to the damage, a trier of fact or insurer could limit the damage to the value of the property.

42. Rarely is the value of the property immediately prior to the damage equal to its original cost. That is because most assets have depreciating or declining value over time. An exception to this is collectibles that may increase in value over their original cost.

43. By way of an example, a television may have a cost of $500 when purchased. Shortly after the television is delivered, it has a value of less than $500 because a buyer would

---

[14] "The price at which the property would change hands between a willing buyer and a willing seller when the former is not under any compulsion to buy and the latter is not under any compulsion to sell, both parties having reasonable knowledge of relevant facts. Court decisions frequently state in addition that the hypothetical buyer and seller are assumed to be able, as well as willing, to trade and to be well informed about the property and concerning the market for such property." IRS Revenue Ruling 59-60 Sec. 2.02.

Expert Rebuttal Report of Marcie D. Bour
Eduardo and Carmen Amorin, et al. v. Taishan Gypsum, Co., Ltd., et al.

not pay the original cost for a used television when he or she could buy that same item brand new. This is also evidenced by reduced prices for open box items in stores, where new items which have been returned are sold at a discount. After a year or two, the value declines because new models are available and stores put the older models on sale.

44. An analysis for the value of personal property would include identifying the property by model or description, its age, and its condition immediately before it was damaged.

45. In order to do this, it also is necessary to identify the date it became damaged. For property that was damaged over a period of time, it would be necessary to identify when the use of the property was impaired. For an item that stopped working that would be relatively simple. For an item that continued to be functional, it would be more complex.

46. I note that it is beyond the scope of my expertise to make determinations of when an item was deemed damaged or what its value was immediately prior to the damage and after the damage. However, it is my opinion that it is necessary for an appropriate expert to make these determinations in order to accurately compute damages.

## VII.   REBUTTAL REPORT METHODOLGY AND ANALYSIS

47. My rebuttal opinion is limited to the analysis and procedures Mr. Elkin performed as reflected in his workpapers, the exhibits to his report (included updated exhibits) and related testimony that is the basis for his opinions.

48. My analysis consisted of a detailed review of his Updated Support Master Database and the Elkin Report Exhibits (including updates).

49. I also reviewed the supporting documentation he identified for each Claimant as well as related depositions. The complete list of documents is in Exhibit A to this Rebuttal Report.

Expert Rebuttal Report of Marcie D. Bour
Eduardo and Carmen Amorin, et al. v. Taishan Gypsum, Co., Ltd., et al.

50.    I reviewed Mr. Elkin's work for accuracy, consistency, and reliability.

51.    First, I analyzed the Database to see whether transactions appear to be accurately recorded.  I used the Database to sort by Claimant.  I have done a general review of all the Claimants, however, for purposes of the Rebuttal Report, I have selected three Claimants for detailed review.

52.    I selected Etter and Martinez to review in detail because they were two of the three Claimants that Mr. Elkin revised prior to and during his deposition.  I also selected William and Vicki Foster ("Fosters") to review in detail.

53.    I also noted several items in the course of my general review related to other Claimants.

54.    The results of my analysis are summarized below.

**Accuracy and Consistency: Damage Dates**

55.    For each of the Claimants, I checked the damage dates for accuracy and for inconsistencies with the key dates such as move in date, date the Claimant became aware of Chinese drywall /defective drywall, and the date they moved out of the Affected Property to an alternative living location.  I noted that various sources for the damage dates were used.

56.    The damage dates varied in two ways.

57.    First, the general timing of the damage dates fell into various categories:

    a.   Original date of purchase of the asset;

    b.   Date the Claimant moved into the Affected Property;

    c.   Date the Claimant discovered the Chinese drywall / defective drywall;

    d.   Date the Claimant moved out of the Affected Property;

    e.   The date of a quote to replace the asset; or

Expert Rebuttal Report of Marcie D. Bour
Eduardo and Carmen Amorin, et al. v. Taishan Gypsum, Co., Ltd., et al.

       f.   Date the asset was replaced.

58. The other way in which dates varied was the source of the date of damage:

       a.   The date provided by the Claimant;

       b.   The date the check for payment was written;

       c.   The date the check for payment cleared the bank;

       d.   The date of the credit card charge; and

       e.   The date of the invoice or quote.

59. The selection of the damage date impacts the calculation of prejudgment interest, so it is relevant to the opinions reached.

60. Exhibit 6.1 for the Fosters is an illustration of damage dates that do not reflect the date the personal property was damaged. This also illustrates inconsistent criteria for determination of damage dates. The Fosters moved out of their house October 1, 2009. This date was used as the damage date for the storm shutters, furniture, and lighting with a damage amount of $29,974, without regard to when (or if) these item were replaced.[15] However, for certain furniture the Fosters replaced, Mr. Elkin used July 24, 2007, the date from the bill of lading, as the damage date.[16]  I observed that in the Original Elkin Report, nine (9) of the dates used as damage dates for Martinez were prior to her actually moving into the house on September 196, 2008.[17]  The damage date used for blinds with a claimed loss of $2,945 was 9/25/2008, the month that she moved in.[18]

---

[15] Doc ID 367443, PDF pages 2, 4-7, 9, and 11-13.
[16] Doc ID 365749, PDF page 82.
[17] Martinez Exhibit 9, PDF pages 24, 25, 31, 44, 45, 46, and 53.
[18] Martinez Exhibit 9, PDF page 32.

Expert Rebuttal Report of Marcie D. Bour
Eduardo and Carmen Amorin, et al. v. Taishan Gypsum, Co., Ltd., et al.

61. Kevin & Stacy Rosen claimed a mattress with a loss value of $5,255 was damaged August 11, 2006, four days after they moved into their home.[19]

62. Mr. Elkin did note in his deposition that he intended to correct some of these errors.

63. In the case of the M. Rosen Claimants, the majority of the items claimed for personal property damage reflect a damage date of December 31, 2006. M. Rosen Claimants moved into to their home on November 6, 2006. Mr. Elkin does not address how $79,313 of furniture was completely damaged within two months of when they moved in to their home. The damage dates for the balance of the furniture also precedes the date the M. Rosen Claimants became aware of the Chinese drywall / defective drywall and moved out of their home. Mr. Elkin does not address how the continued use of the furniture before they discovered the Chinese drywall / defective drywall impacted the age and condition of the assets, which impact the value.[20]

64. The Fosters purchased a bed on a 24 month, "equal payments, no interest plan" for $7,255.64. However, the date of damage used by Mr. Elkin was the date of purchase, not the dates that the Fosters actually made payments.[21]

65. Larry & Rosallee Walls claimed that their furniture was damaged between October 2, 2006 and December 14, 2006 totaling $13,867. The Walls moved into their home on September 1, 2006. Mr. Elkin does not address how the continued use of the furniture before they discovered the Chinese drywall / defective drywall impacted the age and condition of the assets, which impacts the value.

---

[19] Elkin Exhibit 18.1.
[20] Rosen M (OLF) 000181.
[21] Foster Exhibit 2, PDF page 83.

Expert Rebuttal Report of Marcie D. Bour
Eduardo and Carmen Amorin, et al. v. Taishan Gypsum, Co., Ltd., et al.

66.     Lastly, with regard to the dates, Mr. Elkin in his prejudgment interest calculation added 30 days to each date to use for purposes of the calculation. In cases where a credit card was used, there is a rational basis for using a later date to take into consideration the timing difference from the date of the charge to the date the Claimant paid the credit card bill. However, when the date of the check clearing the bank is used, there is no reason to add 30 days. Similarly, there should be no prejudgment interest on items purchased on non-interest bearing installment plans until such payments are made.

67.     Without an examination of the underlying documents it is not possible to know from Mr. Elkin's Report whether his date of damage is the date of purchase, the date of replacement, or some other date.

68.     The impact of using inaccurate damage dates and inconsistent methodology to determine damage dates is that the prejudgment interest calculation model is not accurate or reliable.

**Accuracy: Amounts**

69.     For the three Claimants that I did detailed reviews for, I verified the accuracy the damaged amounts used by Mr. Elkin against the underlying documents cited in the Elkin Report.

70.     Examples of recording errors include:

   a.   Mr. Elkin included the same Comcast bill twice, once using the payment information on page 2 of the bill and the other using the total on page 1 of the bill for the Etters.[22]

---

[22] Doc ID 165486, PDF pages 17 and 18.

Expert Rebuttal Report of Marcie D. Bour
Eduardo and Carmen Amorin, et al. v. Taishan Gypsum, Co., Ltd., et al.

     b.   For the Etters, Mr. Elkin failed to reflect a credit as written on the face of the invoice used to support an ADT payment.[23]

     c.   Mr. Elkin failed to include the proceeds from the sale of the RV purchased by Martinez and claimed as an alternate living expense. The RV was purchased in November 2010 for $4,399 and sold for approximately $2,000 in 2013.[24] Mr. Elkin did clarify in his deposition that this is an item that requires correction.

     d.   Mr. Elkin failed to apply a refund on an FPL bill when recording an amount for the Fosters.[25]

     e.   For the Fosters, Mr. Elkin claimed a purchase of a copper wall sculpture from A Touch of Class twice.[26]

## Accuracy: Descriptions

71.   I noted that there are inaccurate descriptions in some cases, making it difficult to evaluate claims based solely on the Elkin Report.

72.   The use of "miscellaneous" as a description in the Martinez Exhibit makes it impossible to evaluate claims based solely on his exhibits. I noted that the description "miscellaneous" was used 59 times in the Updated Martinez Exhibit. As discussed below, some of the miscellaneous items, upon review of the support, should be evaluated further to determine their validity.

---

[23] Doc ID 165483, PDF page 5.
[24] Martinez deposition, 117:11-22; 118:4-14.
[25] Doc ID 125036, PDF page 27.
[26] Vicki Foster Exhibit 4, pages 53 and 100.

16

Expert Rebuttal Report of Marcie D. Bour
Eduardo and Carmen Amorin, et al. v. Taishan Gypsum, Co., Ltd., et al.

73.  Martinez claimed six items that were described as printers.[27] Upon examination of the
     receipts, one of the five items was actually a toner cartridge.[28]  Based on a bad copy of
     another receipt, it is possible that another one of the items designated as a printer may be
     a tablet.  There is another item described as a television, which is listed on the receipt as
     HP PG-2112B, which is the model number for a desktop computer. [29]

74.  Although I did not do an analysis of the impact of any misclassifications based on the
     descriptions, I noted some items that were treated as personal property damages appeared
     to be remediation costs.  Examples included replacement of flooring, sinks, cabinets and
     other items that are typically treated as part of the real estate.

**Accuracy: Use of Estimates**

75.  Mr. Elkin does not address whether the use of estimates for property that has not been
     replaced accurately captures the alleged damaged property, including the age and
     condition.  As previously discussed, the original cost of personal property is usually not
     indicative of the value at a later date.  Similarly, the cost of new property, is also not a
     good estimate of older items.

76.  Estimates of the cost to purchase new items ignore the decline in value due to age and
     the condition of the property.  Additionally, estimates of replacement costs are often for
     new models with enhanced features.

77.  In some cases, a Claimant continued to use the allegedly damaged property past Mr.
     Elkin's damage date.

---

[27] Martinez Exhibit 9, PDF pages 12, 16, 19, 20, 25, and 27.
[28] Ibid, PDF page 12.
[29] Ibid, PDF page 27.

Expert Rebuttal Report of Marcie D. Bour
Eduardo and Carmen Amorin, et al. v. Taishan Gypsum, Co., Ltd., et al.

78. Foster relied upon an email estimate of replacement cost as indicative of the damage amount. The email to the Claimants was dated June 24, 2011.[30] Foster also used estimates downloaded from the internet from December 21, 2018 to estimate the cost of office furniture purchased in 2004.[31]

79. Mr. Elkin used a damage date of October 1, 2009, as previously discussed, even though the quotes were not obtained until June 2011 and December 2018.

80. Based on deposition testimony of Vicki Foster, Foster was still using the furniture and it had not been replaced as of the date of her deposition.[32]

81. No consideration is made for depreciation in the value of the furniture between September 2004 and the claimed damage date of October 1, 2009, or for the period of continued use through 2018. Nor was the value of the use of the personal property for the period of time taken into consideration.

**Consistency: Reconciling Supporting Information**

82. The Fosters claimed a loss for storm shutters totaling $8,030.[33] The damage date claimed was October 1, 2009. Evidence to support the loss was provided in the form of an invoice for the original shutters from April 2008. Mr. Elkin did no investigation to document how shutters located on the outside of the house were damaged by Chinese drywall / defective drywall on the inside of the house.

---

[30] Doc ID 367443, PDF page 2.
[31] Doc ID 367443, PDF pages 6-7.
[32] Vicki Foster Deposition, January 8, 2019, 7:22-24, 8:1-9.
[33] Doc ID 367443, PDF page 8.

Expert Rebuttal Report of Marcie D. Bour
Eduardo and Carmen Amorin, et al. v. Taishan Gypsum, Co., Ltd., et al.

83. The Fosters claimed damages for the replacement of a golf cart for $8,651 on November 5, 2013, the date of the invoice.[34] Vicki Foster testified that she had problems with the wiring for the golf cart charger and there was corrosion underneath the golf cart.[35] The golf cart was stored in the garage and was used through the date that it was traded in. Mr. Elkin did not consider that the inspection report[36] of the Foster's home for Chinese drywall / defective drywall produced by Intuitive Environmental Solutions, as well as the deposition testimony of Vicki Foster[37], reflects that there was no Chinese drywall in the garage. He also did not consider the normal wear and tear associated with the use of a golf cart.

84. Martinez claimed the cost of three refrigerators that were purchased prior to her purchase of the Affected Property, a three bedroom, two bathroom house at 1624 NW 37 Avenue. Then, she claimed the cost of replacing two refrigerator, resulting in the cost of five refrigerators being claimed as damages.

   a. 4/1/2007 purchased a refrigerator from Lowes for $1,906.[38]

   b. 8/20/2007 purchased a Samsung 25.8 CF refrigerator (model # RF266AASH) for $1,774.30.[39]

   c. 8/22/2007 purchased a refrigerator for $1,544.[40]

---

[34] Vicki Foster Exhibit 6, PDF page 1.
[35] Vicki Foster Deposition, 119:1, 120:1-6.
[36] Vicki Foster Exhibit 5.
[37] Vicki Foster Deposition, 52:8-12, 122:8-10.
[38] Martinez Exhibit 9, PDF page 45; Doc ID 329779, PDF page 13.
[39] Martinez Exhibit 9, PDF page 31; Doc ID 329779, PDF page 24.
[40] Martinez Exhibit 9, PDF page 45; Doc ID 329779, PDF page 13.

Expert Rebuttal Report of Marcie D. Bour
Eduardo and Carmen Amorin, et al. v. Taishan Gypsum, Co., Ltd., et al.

d.  6/9/13 purchased a 25 CF side by side Whirlpool refrigerator for $1,272 from Lowes (Model # GZ25FSRXYY).[41]

e.  2/4/15 Florida Appliance made a service call to service a Samsung Refrigerator (Model #RF266A).[42]

f.  6/27/2017 Martinez purchased a Kenmore Elite refrigerator for $2,331.99 from Sears (Model #KE73165).[43]

85.  In her deposition, Martinez states that she replaced the refrigerator twice.[44]  That would account for the 2013 and 2017 purchases, but does not explain why Mr. Elkin shows as damages the three refrigerators purchased before Martinez even moved into the house. Additionally, the repair in 2015 of the Samsung refrigerator purchased in 2007 raises the question that, assuming that there were two refrigerators in the house, the other one purchased in 2007 had to be replaced in 2013, why this older one was still working after repair when another refrigerator was replaced.

86.  Martinez claimed multiple replacements and repairs for washers and dryers that are inconsistent, and at a minimum, should have prompted additional inquiry:

a.  1/7/11 Sears Home services did a washer repair on a GE model WHRE5550K2WW.[45]

b.  8/19/13 purchased a Whirlpool washer and dryer (Model # WFW94HEAW and #WED94HEAW) for $2,411.06, which included a 4 year extended warranty.[46]

---

[41] Martinez Exhibit 9, PDF page 8; Doc ID 329779 PDF page 2.
[42] Doc ID 329779, PDF page 6.
[43] Martinez Exhibit 9, PDF page 55.
[44] Martinez deposition, 103:12-23.
[45] Doc ID 329779, PDF page 27.  The receipt is not included in the Elkin Report, but was submitted with updated information.
[46] Martinez Exhibit 9, PDF page 43; Doc ID 329779, PDF page 15.

Expert Rebuttal Report of Marcie D. Bour
Eduardo and Carmen Amorin, et al. v. Taishan Gypsum, Co., Ltd., et al.

  c. 1/7/15 purchased a Whirlpool washer and dryer (Model #STS5800BC and #WED5800BC) for $1,710.17 with a three year extended warranty, even though the extended warranty was still in effect on the August 2013 purchase.[47]

  d. Then on 4/8/15 Florida Appliance Service did a service call to repair a dryer, which is identified as a Maytag (Model #MDE7658BYW).[48]

87. While it is understandable that Martinez may have had repairs or replacements of her washers and dryers, the evidence provided to support the damage claims is inconsistent and requires further inquiry to validate the claims.

88. Martinez took the cost for both an original tractor (purchased 7/16/2007 for $2,330.94) and a replacement tractor (5/31/2012 for $2,522.44).[49] This is another example of double counting.

89. Martinez purchased new phones in June and July 2013: two LG Spirit phones for $269.99 each and a Samsung Galaxy for $600.[50] In October 2014, Martinez purchased 3 new phones, two iPhone Gold phones for $649 each and an iPhone 6 Plus Gold phone for $949.[51] Mr. Elkin did not inquire into what appears to be upgrades to more expensive phones and whether the replacement phones should have been limited in value based on their market value at the time of the damage, which is less than the cost of new phones.

---

[47] Martinez Exhibit 9, PDF pages 47-48; Doc ID 329779, PDF pages 56-57.
[48] Doc ID 329779, PDF page 3.
[49] Martinez Exhibit 9, PDF page 24; Doc ID 329779, PDF page 31. Martinez Exhibit 9, PDF page 29; Doc ID 329779, PDF page 26.
[50] Martinez Exhibit 9, PDF page 7; Doc ID 329779, PDF page 4. Martinez Exhibit 9, PDF page 41; Doc ID 329779, PDF page 16. The cost of phones in this narrative is before taxes and credits.
[51] Martinez Exhibit 9, PDF page 51; Doc ID 329779, PDF page 55. Martinez Exhibit 9, PDF page 50. The cost of phones in this narrative is before taxes and credits.

Expert Rebuttal Report of Marcie D. Bour
Eduardo and Carmen Amorin, et al. v. Taishan Gypsum, Co., Ltd., et al.

90.  Martinez purchased a television on 6/8/12.[52]  She also purchased a 50" LG television
12/31/12 with a 4 year extended warranty, the cost of which was claimed as part of her
damages.[53]  Yet on 7/21/13, less than seven months later, she purchased another 50"
Samsung TV.[54]  Then on 1/21/14 she purchased yet another 60" LED television.[55]  Her
pattern of buying raises questions about what was actually replaced, especially when
taken in the context of her other claims and related documentation.

91.  I noted that in Janet Avery's deposition she could not remember when or to whom she
paid $3,500 for moving expense.[56]  She testified that the only things that she moved from
her home to her alternative living location were her clothes and some dishes.  Mr. Elkin
reported the full amount of her claim.

92.  I also noted in Robyn Rosen's deposition that she testified that the only furniture she had
kept was a set of martini tables.[57]  I did a search for the tables in the personal property
damage items listed in Exhibit 17.  Based on the Bates number listed, I was able to match
the proposal showing the original cost of the tables with Exhibit 7.1.[58]  The amount
claimed on Exhibit 17.1 is $3,867.  The proposal shows a cost of $352.73.

---

[52] Martinez Exhibit 9, PDF page 36; Doc ID 329779, PDF page 21.
[53] Martinez Exhibit 9, PDF page 40; Doc ID 329779, PDF page 17.
[54] Martinez Exhibit 9, PDF page 22; Doc ID 329779, PDF page 33.
[55] Martinez Exhibit 9, PDF page 59; Doc ID 329779, PDF page 54.
[56] Janet Avery Deposition, 93:4-20, 97:2-18.
[57] Robyn Rosen Deposition, 14:11-18.
[58] Bates Number Rosen, M (OLF) – 000181.

Expert Rebuttal Report of Marcie D. Bour
Eduardo and Carmen Amorin, et al. v. Taishan Gypsum, Co., Ltd., et al.

### Consistency: Claimants Who Stopped Making Mortgage Payments

93. I also considered that some of the Claimants stopped making mortgage payments, yet claimed alternate living expenses for the periods during which they were not making mortgage payments.

94. In particular, four Claimants stopped making mortgage payments, yet claimed alternate living expenses. There are two issues that were not addressed within Mr. Elkins forensic procedures.

95. First, whether a payment on an alternate living location is considered to be truly an alternate living expense if the Claimant stopped paying the mortgage on the residence that was vacated. In cases where the Claimant defaulted or sold the house on a short sale, those payments would never be made. If the trier of fact were to determine that alternate living expenses must be duplicative in nature to qualify, Mr. Elkin did not provide information for such a determination. The following are alternate living expenses made after the Claimant stopped making mortgage payments on their residences:

    a. Janet Avery: $10,125;

    b. Feldkamp: $35,250;

    c. Nunez: $105,358; and

    d. Walls: $55,900.

96. The failure to consider missed mortgage payments also impacts Mr. Elkin's prejudgment interest calculation. Since prejudgment interest is usually based on the lost use of the cash, at a minimum, the alternate living expenses should be reduced by the avoided

Expert Rebuttal Report of Marcie D. Bour
Eduardo and Carmen Amorin, et al. v. Taishan Gypsum, Co., Ltd., et al.

mortgage payment to determine the amount of cash out of pocket that relates to duplicative living expenses.

### Consistency: Review of Supporting Documents for Non-Damage Items

97. Mr. Elkin included a 3 year protection plan with Geek Squad on the purchase of a new computer which costs $423.99 for the Foster Claim.[59]

98. Mr. Elkin included an Apple Care plan for an iPad Mini for $104.94 the Foster Claim.[60]

99. Mr. Elkin included Martinez extended warranties for televisions, a Wii, and appliances for the Martinez claim.[61]

100. I noted that for Martinez, Mr. Elkin claimed damages for receipts where only certain items had been identified as items claimed. This was most likely due to two sets of receipts, one with handwritten notes presumably made by Martinez and the other with fewer notes. However, a review of the receipts should have raised questions as to why Martinez would claim items such as: Tide with Bleach, Windex, Listerine, Pledge, Suavitel, Ramen noodles, spaghetti sauce, olives, eggs, Hershey's milk, boots, dresses, fashion underwear, aerosol, Stayfree pads, mulch, sunflower seeds, and top soil. [62]

### Consistency:  Methodology for "Lost Equity"

101. Mr. Elkin refers to "Lost Equity" as the net investment capital Claimants have paid for the Affected Property. His calculation is a cash flow calculation rather than a measurement of equity.

---

[59] Vicki Foster Exhibit 4, PFD page 20.
[60] William Foster Exhibit 2, PFD page 10.
[61] Martinez Exhibit 9, PDF pages 40, 43, and 46-48.
[62] Martinez Exhibit 9, PDF pages 4, 5, 23, 24, 27, 35, 37, and 49.

Expert Rebuttal Report of Marcie D. Bour
Eduardo and Carmen Amorin, et al. v. Taishan Gypsum, Co., Ltd., et al.

102. Equity usually refers to the difference between an asset's value and any debt related to the asset.

103. In the case of Mr. Elkin's "Lost Equity" calculation, he states that he includes amount of net cash Claimants invested in the Affected Properties, including taking into consideration any proceeds they received when the property was sold.

104. The methodology used to capture the proceeds was simply taking the cash to seller off of the HUD settlement sheet.

105. This methodology is inherently flawed because, among other reasons, not all items on the HUD settlement sheets relate to the "net invested capital." My analysis focuses on the misstatements of settlement costs and occupancy costs.

106. For example, it is quite common for occupancy expenses such as real estate taxes, home owner associate fees and utilities to be prorated and included on the settlement sheet.

107. Mr. Elkin's methodology includes no accommodation for such occupancy type expenses.

108. Similarly, when calculating the initial investment in the Affected Properties using HUD settlement sheets, Mr. Elkin chose to use the cash due from buyer.

109. Upon the purchase of a residence, it is common to have interest charges, insurance, real estate taxes, and homeowner association fees included.

110. By including occupancy costs related to the purchase and sale of the Affected Properties, Mr. Elkin did not accurately represent the "net investment capital" of the Claimants. See Exhibit 4.

Expert Rebuttal Report of Marcie D. Bour
Eduardo and Carmen Amorin, et al. v. Taishan Gypsum, Co., Ltd., et al.

## VIII.    SUMMARY OF FINDINGS

112.  As discussed in my report, it is my opinion that based on my review of his report and

testimony, and analysis of his workpapers, his report is deficient as follows:

    a.   Accuracy:  The report issued by Mr. Elkin is inaccurate because it contains data

entry errors, duplications and omissions.  In some instances, Mr. Elkin fails to

take into consideration relevant facts in quantifying damage amounts.

    b.   Consistency:  Because Mr. Elkin did not use any single criteria to identify the

date of the damage, quantify the amount of damage, or validate the amount of the

damage, the resulting opinions for the Claimants were based on different criteria.

    c.   Reliability:  The estimates of the Claimants' damages and prejudgment interest

are inflated due to flaws in methodology and errors.  Accordingly the opinions

expressed in the Elkin Report are not a reliable measurement of damages.

113.  As noted, the methodology used by Mr. Elkin did not necessarily:

    a.   validate the damages claimed;

    b.   measure the market value of allegedly damaged property in his damage amount;

    c.   take into consideration all of the information available, nor

    d.   determine the date the property was allegedly damaged.

114.  The forensic techniques he applied failed to catch duplications of damage claims and

items which should not qualify as damages.

115.  The calculations for the "Lost Equity" claims relied on flawed methodology to capture

"net investment capital."

Expert Rebuttal Report of Marcie D. Bour
Eduardo and Carmen Amorin, et al. v. Taishan Gypsum, Co., Ltd., et al.

116. Numerous factors including methodology for determining dates, failure to consider
settlements received and failure to consider avoided mortgage payments result in an
inaccurate calculation of prejudgment interest.

117. The number and type of errors indicate that Mr. Elkin did not meet his obligation to
exercise professional diligence in performing his engagement, nor did he adequately
supervise the work that was the basis for his professional opinion as required by the Code.

118. Overall, Mr. Elkin's report is not a reliable representation of damages claimed for the
reasons discussed in this Rebuttal Report.

## IX.   COMPENSATION FOR STUDY AND TESTIMONY

119. Yip Associates will be compensated based on the various services rendered and the level
of skill and responsibility required.  The rates for our service are between $195 and $500
per hour, plus out-of-pocket expenses that may be incurred connection with this matter.
My hourly billing rate is $495.  My compensation is not contingent on the outcome of
this litigation.

120. Whereas to the extent that discovery in this case is still ongoing, documents or other
information may be produced subsequent to this report.  The contents of such subsequent
discovery may warrant modification of the opinions expressed herein.  I have no
responsibility to update this report for events and circumstances occurring after March
25, 2019.  However, I reserve the right to review the information and opinions included
in this report including schedules and/or to further supplement this report upon receipt of

Expert Rebuttal Report of Marcie D. Bour
Eduardo and Carmen Amorin, et al. v. Taishan Gypsum, Co., Ltd., et al.


any additional information or discovery.


Respectfully Submitted,


Marcie D. Bour, CPA/ABV, CVA, CFE, MAFF, ABAR, CDBV

Yip Associates

March 25, 2019

Expert Rebuttal Report of Marcie D. Bour
Eduardo and Carmen Amorin, et al. v. Taishan Gypsum, Co., Ltd., et al.

**EXHIBIT 1: INFORMATION CONSIDERED**

Expert Rebuttal Report of Marcie D. Bour
Eduardo and Carmen Amorin, et al. v. Taishan Gypsum, Co., Ltd., et al.

## Information Considered

I have considered the information listed here and cited throughout my report in reaching my opinion:

- The report issued by Michael P. Elkin, CPA/CFF/ABV, CFE dated February 19, 2019.

- Elkin Report Updated Exhibit 4, Steven & Cathy Etter dated March 9, 2019.

- Elkin Report Updated Exhibit 12, Dailyn Martinez dated February 26, 2019.

- Elkin Report Updated Exhibit 17 Michael & Robin Rosen dated March 8, 2019.

- Deposition of Michael P. Elkin on March 11, 2019 and March 12, 2019, including all exhibits.

- American Institute of Certified Public Accountants' Code of Professional Conduct.

- American Institute of Certified Public Accountants' *Forensic & Valuation Service Practice Aid, Serving as an Expert Witness or Consultant.*

- American Institute of Certified Public Accountants' *Exposure Draft Statement on Standards for Forensic Services.*

- Cases provide by counsel:

  o Immon Nabil Ibrahim, Appellant, v. State of Florida, Appellee. 866 So.2d 749, District Court of Appeal of Florida, 5th District. February 13, 2004.

  o Ocean Electric Company, Appellant, v. Hughes Laboratories, Inc., Appellee. 636 So.2d 112, District Court of Appeal of Florida, 3rd District. April 12, 1994.

  o Eugene Loury, Appellant, v. Jo Ann Loury, Appellee. 431 So.2d 701. District Court of Appeal of Florida, 2nd District. May 20, 1983.

Expert Rebuttal Report of Marcie D. Bour
Eduardo and Carmen Amorin, et al. v. Taishan Gypsum, Co., Ltd., et al.

- o Sarasota Yacht & Ship Services, Inc., Appellant, v. Raymond G. Harris, Appellee. 813 So.2d 231. District Court of Appeal of Florida, 2nd District. April 5, 2002.

- o McDonald Air Conditioning, Inc., Appellant, v. John Brown, Inc., d/b/a Equipment Sales Company, Appellee. 285 So.2d 697. District Court of Appeal of Florida, 4th District. November 30, 1973.

- In Re: Chinese Manufactured Drywall Products Liability Litigation, MDL No. 2047, Section L, Judge Fallon, Findings of Fact & Conclusions of Law Relating to the June 9, 2015 Damages Hearing.

- Revenue Ruling 59-60.

- Documents listed in Document and Other Information Considered – Updated as provided by Michael Elkin.

- Information from various property appraiser websites regarding history of Affected Properties of Claimants.

31

Expert Rebuttal Report of Marcie D. Bour
Eduardo and Carmen Amorin, et al. v. Taishan Gypsum, Co., Ltd., et al.

# EXHIBIT 2: QUALIFICATIONS

Expert Rebuttal Report of Marcie D. Bour
Eduardo and Carmen Amorin, et al. v. Taishan Gypsum, Co., Ltd., et al.

# MARCIE D. BOUR, CPA

| | |
|---|---|
| Education | B.B.A., Major in Accounting, with Distinction, Emory University (1984) |
| Professional History | Yip Associates, Partner, Forensic Accounting and Litigation Services (April 2015-) |
| | Marcie D. Bour, CPA, P.A./Florida Business Valuation Group, Forensic Accounting and Litigation Consulting Services, President (March 2003-) |
| | Valuation & Forensic Partners, LLC, Managing Director (2013-2014) |
| | Fiske & Company, Certified Public Accountants, Director Litigation Consulting Services (October 1999 - February 2003) |
| | Pinchasik, Strongin, Muskat, Stein & Co., Senior Manager (October 1998 - October 1999) |
| | Marcie D. Bour, CPA, Self Employed Litigation Consultant (May 1998 - October 1998) |
| | Kapila & Company, Manager (January 1998 - May 1998) |
| | Rachlin, Cohen & Holtz, Certified Public Accountants, Manager, Litigation Consulting and Business Valuation (October 1995 - January 1998) |
| | Bour & Yaverbaum, P.C. Certified Public Accountants, Pennsylvania, President and Managing Shareholder (May 1990 - August 1995) |
| | Felty & Company, Certified Public Accountants, Pennsylvania, Director of Taxes (September 1986 to May 1990) |
| | Laventhol & Horwath, Pennsylvania, Tax Specialist (July 1984 - September 1986) |
| Licenses & Accreditations | Certified Public Accountant, Florida (Pennsylvania, inactive) |
| | Accredited in Business Valuation |
| | Accredited in Business Appraisal Review |
| | Business Valuator Accredited for Litigation (credential retired 2012) |
| | Certification in Distressed Business Valuation |
| | Certified Valuation Analyst |
| | Certified Fraud Examiner |
| | Master Analyst in Financial Forensics (formerly Certified Forensic Financial Analyst) |

33

Expert Rebuttal Report of Marcie D. Bour
Eduardo and Carmen Amorin, et al. v. Taishan Gypsum, Co., Ltd., et al.

|  |  |
|---|---|
|  | Qualified Arbitrator, Florida |
| Professional Affiliations | Licensed Real Estate Broker, Florida (1983-1991) Member, American Institute of Certified Public Accountants (AICPA): Forensic and Valuation Section |
|  | Member, Florida Institute of Certified Public Accountants (FICPA): Valuation, Forensic Accounting and Litigation Services (VFALS) Section Resource Council (2006-2013); Chair VFALS Section Steering Committee (2013-2014); Chair 2012 VFALS Conference Planning Committee |
|  | Member, FICPA North Dade South Broward Chapter: Board of Directors (2002-2005, 2009 -2017); President (2008-2009): President Elect (2007-2008); Treasurer (2005-2007); CPE Chair (2005) |
|  | Affiliate Member, American Bar Association: Litigation, Intellectual Property Law, Business Law and Family Law Sections |
|  | Affiliate Member, Florida Bar: Business Law Section |
|  | Member, National Association of Certified Valuators and Analysts (NACVA): Executive Advisory Board (2008); Litigation Forensics Board Member (2006-2008);  Chair, Litigation Track of 2005 Annual Conference;  Co-Chair, Litigation Track of 2006 Annual Conference; Co-Chair Advanced Business Valuation Track of 2007 Annual Conference; Consultants' Training Institute, Instructor "Calculating Business Damages"; Team Leader and Instructor, "Loss of Business Income Claims Workshop" |
|  | Member, Association of Certified Fraud Examiners |
|  | Member, Institute of Business Appraisers (2002-2012): Board of Governors (2008-2011, Chair 2011-2012); 2010 Annual Symposium Chair; 2011 Volunteer of the Year Award |
|  | Member, 17th Judicial District of Florida Grievance Committee (1998-2001, 2004-2007, 2010-2013) |
|  | Member, Florida Bar Unlicensed Practice of Law Committee (2001-2004, 2016-2018) |
|  | Member (through 2017) American Woman's Society of Certified Public Accountants (AWSCPA): South Florida Affiliate Board Member (2006-2013; 2015-2017); South Florida Affiliate President (2014-2015); South Florida Affiliate President Elect (2013-2014); 2013 AWSCPA National Public Service Award |
| Range of Experience | Extensive experience performing litigation consulting in areas of valuation, proof of damages, proof of lost profits, forensic accounting and fraud examination.  Assistance with discovery, site and document inspections, document management, research, strategy, deposition and |

Expert Rebuttal Report of Marcie D. Bour
Eduardo and Carmen Amorin, et al. v. Taishan Gypsum, Co., Ltd., et al.

|  |  |
|---|---|
|  | trial preparation. Expert deposition or trial testimony in Federal and State Courts regarding shareholder disputes, matrimonial matters, damages, alter ego and usury cases. |
|  | Trademark licensure and patent infringement issues including valuation, lost profits, and reasonable royalty rates. Litigation consulting regarding franchise relationships in areas of damages related to breach of contract, proof of lost profits and causation. |
|  | Consulting with regard to various employment issues including lost wages/earnings, lost profits, lost benefits, and mitigation in discrimination, wrongful death, personal injury, and wrongful termination. |
|  | Litigation consulting regarding divorce cases including discovery, forensic accounting with regard to hidden assets, tax issues including fraud, valuation, equitable distribution and other economic considerations. |
|  | Business valuations prepared for various purposes involving a wide variety of industries including healthcare, retail, professional services, marketing, insurance, real estate, marine, Internet-based, technology, travel, trucking, packaging, light manufacturing, and wholesale/distribution. Also valuations for undivided interests in real estate. |
|  | Non-litigation services provided for real estate clients, consulting with counsel regarding various tax issues, review property management systems for various properties to determine accuracy of reporting, construction costs and due diligence. |
|  | Tax experience includes research and compliance for individuals and small to medium size businesses, review and supervision, tax planning and expert testimony regarding QDROs. |
| Publications and Speaking Engagements | *A New Look at an Old Question: are pass through entities worth more than C corporations?,* Southeast Chapter of Business Appraisers Annual Conference, Atlanta, GA (February 2018) |
|  | *Industry and Company Research for the Risk Assessment Process,* FICPA Accounting & Business Show, Ft. Lauderdale, FL (September 2017) |
|  | *Back to School: Lessons in industry and company research for the risk assessment process*, South Florida Affiliate of American Women's Society of CPAs, Davie, FL (June 2017) |
|  | Coauthor, <u>Financial Valuation Applications and Models, Fourth Edition</u>, Wiley, 2017 |

Expert Rebuttal Report of Marcie D. Bour
Eduardo and Carmen Amorin, et al. v. Taishan Gypsum, Co., Ltd., et al.

*Misadventures in Accounting: A forensic accounting perspective*, FICPA University of Florida Accounting Conference, Gainesville, FL (November 2016); FICPA Mega Conference, Orlando, FL (June 2016); Southeast Chapter of Business Appraisers, Annual Conference, Atlanta, GA (September 2015); FICPA North Dade South Broward Chapter, Fort Lauderdale, FL (February 2015); FICPA South Dade Chapter, Miami, FL (February 2015)

*Expert Panel: Common Mistakes in Business Valuation,* Southeast Chapter of Business Appraisers, Annual Conference, Atlanta, GA (September 2015)

*Cost of Capital: A Case Study Approach,* NACVA Florida Conference, Coral Springs, FL (December 2014)

*Crossing the Bridge between Valuation and Litigation: How Valuation changes when the intended use is litigation,* Southeast Chapter of Business Appraisers, Annual Conference, Atlanta, GA (September 2014)

*What Business Appraisers Need to know about Litigation: A Non-Lawyer Expert's Viewpoint,* American Business Appraisers, Annual Conference, San Francisco, CA (April 2014)

*Business Interruptions: A primer to policy provisions and loss claims,* NACVA and the CTI, 2013 Annual Consultants' Conference Washington, DC (June 2013)

*Benchmarking Data: Do you know enough about the data?* Tennessee Society of CPAs, Southeast Forensic & Valuation Service Conference, Nashville, TN (October 2013); FICPA Valuation Forensic Accounting and Litigation Services Conference, Fort Lauderdale, FL (January 2013); Southeast Chapter of Institute of Business Appraisers, Annual Conference, Atlanta, GA (September 2012)

"Do Business Valuations and Lost Profits Methodologies Produce the Same Damage Results?" *Dunn on Damages*: *The Economic Damages Report for Litigators and Experts*, Issue 5, Winter, 2011

*Application of the Transaction Method*, AICPA Business Valuation Conference, Las Vegas, NV (November 2011)

*Using the Direct Market Data Method*, Institute of Business Appraisers/NACVA, Southeast Chapter Conference, Atlanta, GA (September 2011)

*Calculations of Damages for Litigation*, FICPA Accounting Show, Fort Lauderdale, FL (September 2011)

*Ibbotson and Duff & Phelps: You can't just mix and match,* NACVA, 2011 Annual Consultants' Conference, San Diego, CA (June 2011)

Expert Rebuttal Report of Marcie D. Bour
Eduardo and Carmen Amorin, et al. v. Taishan Gypsum, Co., Ltd., et al.

Coauthor, <u>Financial Valuation Applications and Models, Third Edition</u>, Wiley, 2011

*Transaction Databases Update: Pratt's Stats®, BIZCOMPS® and the IBA*, VPS STRAIGHTtalk Series Webinar (May 2011)

*Cost of Capital*, Institute of Business Appraisers, Southeast Regional Conference, Atlanta, GA (October 2010)

*Publish blog at http://www.bizvalblog.com*

*Calculation of Economic Losses Due to Catastrophic Events*, NACVA, Webinar Moderator (July 2010)

*Loss Claims Resulting from the Deepwater Horizon Oil Spill and the BV Claims Process*, NACVA, Webinar Moderator (July 2010)

"Liability Insurance: Covering business interruptions when they happen," *AccountingWeb.com,* November 2009

"What Every CPA Should Know About Business Valuation: Part Two, Fundamentals and Form," *AWSCPA National News*, October 2008

*S Corporations: Are they worth more than C Corporations?*, Institute of Business Appraisers, Southeast Chapter Conference, Atlanta, GA, (September 2008)

"What Every CPA Should Know About Business Valuation: Part One, Fundamentals and Form," *AWSCPA National News*, February 2008

*What Every Accountant Should Know About Business Valuation*, AWSCPA/ASWA Joint Conference, Orlando, FL (October 2007)

"Business Valuation in Litigation: Where NOT to Cut Corners," *National Litigation Consultants' Review*, Volume. 7, Issue 1, June 2007

*The Relevance of Revenue Ruling 59-60 to Business Valuations Today:* FICPA Florida Accounting & Business Expo™, Orlando, FL (May 2007); FICPA's 22nd Annual Accounting Show, Fort Lauderdale, FL (Sept 2007)

*Valuation Issues for Professional Practices,* FICPA North Dade South Broward Chapter, Fort Lauderdale, FL (January 2007)

*Business Valuation v. Lost Profits: Reconciling the Inherent Differences in Methodologies for Measuring Damages,* NACVA, Thirteenth Annual Consultants' Conference, San Francisco, CA (June 2006)

Expert Rebuttal Report of Marcie D. Bour
Eduardo and Carmen Amorin, et al. v. Taishan Gypsum, Co., Ltd., et al.

"Valuation Issues in E-Business," co-author, paper presented at the Society for Advancement of Management, 2006 International Business Conference, Orlando, FL (April 2006)

*Exposure Draft – Proposed Statement on Standards for Valuation Services: the Impact on CPAs*, FICPA North Dade South Broward Chapter, Hollywood, FL (July 2005); AWSCPA South Florida Affiliate, Fort Lauderdale, FL (February 2006)

*Calculation of Lost Profits Damages: Methods, Deductible Costs and Other Key Issues*, NACVA, Twelfth Annual Consultants' Conference, Philadelphia,  PA (June 2005)

*Comparison of Economic Damages and Business Valuation Methodologies,* Webinar Presented by Shannon Pratt and Business Valuation Resources, Speaker (February 2005)

*Business and Commercial Damages: Lost Profits,* Institute of Business Appraisers, Southeast Chapter Conference, Atlanta, GA (September 2004)

*Business and Commercial Damages*, Florida Atlantic University, Forensic Accounting Conference, Fort Lauderdale, FL (June 2004)

Instructor, Master Class, *Business & Commercial Damages,* Institute of Business Appraisers, Annual Conference, Orlando, FL (June 2003)

Regularly speaks on topics including commercial damages, lost profits methodology, valuation methodology, and standards for professional groups and associations.

Updated January 2019

Expert Rebuttal Report of Marcie D. Bour
Eduardo and Carmen Amorin, et al. v. Taishan Gypsum, Co., Ltd., et al.

# EXHIBIT 3: TESTIMONY LOG

Expert Rebuttal Report of Marcie D. Bour
Eduardo and Carmen Amorin, et al. v. Taishan Gypsum, Co., Ltd., et al.

**Marcie D. Bour, CPA/ABV, CVA, CFE, MAFF, ABAR, CDBV**

**Testimony Log - Prior Four Years**

| Date of Testimony | Case Style | Case No. | Jurisdiction | Attorney | Plaintiff/ Defendant | Type of Testimony |
|---|---|---|---|---|---|---|
| June 2015 | Marin v. Dzikoski | Case No.:FMCE2014-00272 (35) | 17th Judicial Circuit, Broward County Florida | Nancy Brodski, Esq. | Wife/ Respondent | Deposition |
| July 2015 | Acarra LLC v. VizoALL d/b/a ScheduALL | Case No.:CACE 13-003968 | 17th Judicial Circuit, Broward County Florida | Bruce Berman, Esq. | Plaintiff | Deposition |
| August 2015 | KD Healthcare Co, USA, Inc. vs. MS Marketing, Inc. | Case No.: 15-003161 CA 01 (40) | 11th Judicial Circuit, Miami-Dade County Florida | Joshua Martin, Esq. | Defendant | Deposition |
| August 2015 | KD Healthcare Co, USA, Inc. vs. MS Marketing, Inc. | Case No.: 15-003161 CA 01 (40) | 11th Judicial Circuit, Miami-Dade County Florida | Joshua Martin, Esq. | Defendant | Hearing |
| September 2015 | Terry Berger and Albert Berger vs. National General Insurance Online, Inc. and RLI Insurance Company | Case No.: 502014CA010763XXX XMB | 15th Judicial Circuit, Palm Beach County Florida | Randy C. Golden, Esq. | Plaintiff | Deposition |
| September 2015 | Norwood Investments One, LLC, itself and on behalf of North Armenia Holdings, LLC, v. North Armenia Holdings, LLC, Pink Cat, LLC, Dali Investments, LLC, Ronald David Greer, Liza Perdomo, DMG, QOL, LLC, and Hillcrest Property Holdings, LLC. | Case No. CACE 14-021394 | 17th Judicial Circuit, Broward County Florida | Eric Rosen, Esq. | Plaintiff | Deposition |
| December 2015 | Clement Bourgoin v. Myriam Nabizada | Case No.: 13027478CA01 | 11th Judicial Circuit, Miami-Dade County Florida | Christopher Leigh, Esq. | Plaintiff | Trial |
| March 2016 | PSP MRC Debt Portfolio S 1 P vs. Project Orlando LLC, et al. | Case No.: 2013-CA-005076-O | 9th Judicial Circuit, Orange County Florida | James M. Talley, Esq. | Defendant | Deposition |
| May 2016 | Stylian Cocalides v. Raul D. Segredo and Avionica, Inc. and Archeon Holdings, LLC | JAMS Arbitration No. 1460000002440 | Arbitration | Peter F. Valori, Esq. | Plaintiff | Arbitration Proceedings |
| August 2016 | William J. Hebding, Individually and as Trustee of The Pamela M. Hebding Trust A-1; Triad Services, Inc. v. Cecilia Kresty, Daniel Kresty, Skill-Metric Machine and Tool, Inc. | Case No.: 502016CA001438XXX XMBAD | 15th Judicial Circuit, Palm Beach County Florida | Scott G. Hawkins, Esq. | Plaintiff | Deposition |
| September 2016 | In Re: The Marriage of James L. Fleming and Dorothea C. Fleming v. James L. Fleming and Tropic Traditions, Inc. | Case No.: 01-2015-DR-3543 | 8th Judicial Circuit, Alachua County Florida | Justin Jacobson, Esq. | Wife/ Respondent | Trial |

Expert Rebuttal Report of Marcie D. Bour

Eduardo and Carmen Amorin, et al. v. Taishan Gypsum, Co., Ltd., et al.

**Marcie D. Bour, CPA/ABV, CVA, CFE, MAFF, ABAR, CDBV**

**Testimony Log - Prior Four Years**

| Date of Testimony | Case Style | Case No. | Jurisdiction | Attorney | Plaintiff/ Defendant | Type of Testimony |
|---|---|---|---|---|---|---|
| December 2016 | Top Secret Nutrition LLC v. FHG Corporation d/b/a Capstone Nutrition f/k/a Integrity Nutraceuticals | | Arbitration | Jesse Bernheim, Esq. | | Arbitration Proceedings |
| January 2017 | William J. Hebding, Individually and as Trustee of The Pamela M. Hebding Trust A-1; Triad Services, Inc. v. Cecilia Kressy, Daniel Kressy, Skil-Metric Machine and Tool, Inc. | Case No.: 502016CA001438XXXX XMBAD | 15th Judicial Circuit, Palm Beach County Florida | Scott G. Hawkins, Esq. | Plaintiff | Deposition |
| March 2017, April 2017 | Dreamhouse Entertainment, LLC and Latek Novela Network, LLC v. Olympusat, Inc. | Case No.: 12-16082 CA 30 | 11th Judicial Circuit, Miami-Dade County Florida | Robert Einhorn, Esq. | Defendant | Depositions |
| October 2017 | Daniel R. Smith & Associates v. Al Eldredge, et al. | Case No.: 502016CA016887XXXX XMB | 15th Judicial Circuit, Palm Beach County Florida | Gerald F. Richman, Esq. | Plaintiff | Trial |
| May 2018 | Preserve Grove Isle, LLC and Grove Isle Associates, Inc. vs. Grove Isle Yacht & Tennis Club, LLC, Grove Isle Club, Inc., and Grove Isle Associates, LLLP | Case No.: 15-0091106CA04 (Limited Consolidation with Case No. 17-007277 CA 04) | 11th Judicial Circuit, Miami-Dade County Florida | John Shubin, Esq. | Defendant | Deposition |
| July 2018 | Express Logistics, LLC and Express Carriers LLC v. General Electric Company, Thomas Kirschner and Frank Kirschner | Case No. 2014 CA 002358 | 15th Judicial Circuit, Palm Beach County Florida | James Beasley, Esq. and Don Fountain, Esq. | Plaintiff | Deposition |
| August 2018 | Maria Yip, as Trustee of Providence Financial Investments, Inc. and Providence Fixed Income Fund, LLC v. Wilton Perez and Financial Assurance Group, Inc. | Case No. 16-20516-AIC; Case No. 16-20517-AJC | United States Bankruptcy Court, Southern District of Florida, Miami Division | Bryan West, Esq. | Plaintiff | Trial |
| September 2018 | Maria Yip, as Trustee of Providence Financial Investments, Inc. and Providence Fixed Income Fund, LLC v. Maxwell Ortiz Vega and Elinte Max Consulting PSC | Case No. 16-20516-AIC; Case No. 16-20517-AJC | United States Bankruptcy Court, Southern District of Florida, Miami Division | Bryan West, Esq. | Plaintiff | Trial |
| November 2018 | In re: 160 Royal Palm, LLC, Debtor | Case No. 18-19441-BKC-EPK | United States Bankruptcy Court, Southern District of Florida, West Palm Beach Division | Philip J. Landau, Esq. | Debtor | Deposition |
| December 2018 | In re: 160 Royal Palm, LLC, Debtor | Case No. 18-19441-BKC-EPK | United States Bankruptcy Court, Southern District of Florida, West Palm Beach Division | Philip J. Landau, Esq. | Debtor | Evidentiary Hearing |
| January 2019, February 2019 | In re: 160 Royal Palm, LLC, Debtor | Case No. 18-19441-BKC-EPK | United States Bankruptcy Court, Southern District of Florida, West Palm Beach Division | Philip J. Landau, Esq. | Debtor | Trial |

41

Expert Rebuttal Report of Marcie D. Bour
Eduardo and Carmen Amorin, et al. v. Taishan Gypsum, Co., Ltd., et al.



**EXHIBIT 4: ANALYSIS OF CASH FLOW UPON SALE OF RESIDENCE**

Expert Rebuttal Report of Marcie D. Bour
Eduardo and Carmen Amorin, et al. v. Taishan Gypsum, Co., Ltd., et al.

# ANALYSIS OF CASH FLOW UPON SALE OF RESIDENCE

| Elkin Exhibit 1: Janet Avery | | Source / Description |
|---|---:|---|
| Elkin Calculation of "Lost Equity" | $ 115,364.95 | |
| | | |
| Adjustments from Purchase Closing Statement | | |
| | (285.62) | Line 107. County Taxes, Doc ID. 178127 |
| | (448.02) | Line 109. Non Ad Valorem Taxes, Doc ID. 178127 |
| | 15.94 | Line 901. Interest Charge, Doc ID. 178127 |
| | 535.50 | Line 903. Hazard Insurance Deposited, Doc ID. 178127 |
| | 245.32 | Line 1307. Community Association Dues, Doc ID. 178127 |
| | 194.78 | Line 1308. Community Association Dues Doc ID. 178127 |
| | 249.63 | Line 1309. Community Association Dues,Dues Doc ID. 178127 |
| | 400.79 | Line 1310. Community Association Dues Doc ID. 178127 |
| | | |
| **Adjustment to Elkin Calculation** | **908.32** | |
| | | |
| **Adjusted "Lost Equity" (Cash)** | **$ 116,273.27** | |

| Elkin Exhibit No. 3: David Deeg and Deborah Hooker | | Source / Description |
|---|---:|---|
| Elkin Calculation of "Lost Equity" | $ 93,917.70 | |
| | | |
| Adjustments from Purchase Closing Statement | | |
| | 317.86 | Line 410. DEEG000246 Second Quarter HOA |
| | (1,213.77) | Line 510. DEEG000246 City / Town Taxes |
| | | |
| **Adjustment to Elkin Calculation** | **(895.91)** | |
| | | |
| **Adjusted "Lost Equity" (Net Cash)** | **$ 93,021.79** | |

| Elkin Exhibit No. 4: Steven & Cathy Etter | | Source / Description |
|---|---:|---|
| Elkin Calculation of "Lost Equity" | $ 66,283.92 | |
| | | |
| Adjustments from Sale Closing Statement | | |
| | (8,388.17) | County Taxes ETTER000017 EXU.055 |
| | 39.13 | Emerald Harbor HOA ETTER000017 |
| | 3.05 | LRECD - Sewer ETTER000017 |
| | (106.65) | Utilities, Village of Tequesta ETTER000018 |
| | | |
| **Adjustment to Elkin Calculation** | **(8,452.64)** | |
| | | |
| **Adjusted "Lost Equity" (Net Cash)** | **$ 57,831.28** | |

Expert Rebuttal Report of Marcie D. Bour
Eduardo and Carmen Amorin, et al. v. Taishan Gypsum, Co., Ltd., et al.

| Elkin Exhibit No. 8: David & Diane Griffin | | |
|---|---|---|
| | | **Source / Description** |
| Elkin Calculation of "Lost Equity" | $      113,035.01 | |
| | | |
| Adjustments from Purchase Closing Statement | | |
| | (306.76) | Line 105.  Default Interest, DGRIFFIN - 000168 |
| | (212.50) | Line 110. Water Meter, DGRIFFIN - 000168 |
| | (110.00) | Line 111. Electric Meter, DGRIFFIN - 000168 |
| | (99.20) | Line 112. Solid Waster, DGRIFFIN - 000168 |
| | 621.50 | Line 211, County Taxes,  DGRIFFIN - 000168 |
| | (3,074.49) | Line 901. Interest, DGRIFFIN - 000168 |
| | (1,142.49) | Line 1001. Hazard Insurance Deposited with the Lender, DGRIFFIN - 000167 - Exh. 1, Pg. 48 |
| | (1,858.46) | Line 1004. County Property Taxes Deposited with the Lender, DGRIFFIN - 000168 - Exh. 1, Pg. 48 |
| | 380.83 | Line 1009. Aggregate Accounting Adjustment, DGRIFFIN - 000168 - Exh. 1, Pg. 48 |
| | (180.60) | Line 1303.  Community Association Fees, DGRIFFIN - 000168 - Exh. 1, Pg. 48 |
| | (200.00) | Line 1304.  Community Association Fees, DGRIFFIN - 000168 - Exh. 1, Pg. 48 |
| | (2,500.00) | Line 1308.  County Property Tax (estimate), DGRIFFIN - 000168 - Exh. 1, Pg. 48 |
| | | |
| Adjustments from Sale Closing Statement | | |
| | (4,385.66) | Line 511. County Taxes, Ext 815, Griffin 13 |
| | (1,301.28) | Line 513. Maint Fees Due, Ext 815, Griffin 13 |
| | | |
| **Adjustment to Elkin Calculation** | **(14,369.11)** | |
| | | |
| **Adjusted "Lost Equity" (Net Cash)** | **$       98,665.90** | |

| Elkin Exhibit No. 10: Gul & Deborah Lalwani | | |
|---|---|---|
| | | **Source / Description** |
| Elkin Calculation of "Lost Equity" | $  381,319.92 | |
| | | |
| Adjustments from Sale Closing Statement | | |
| | (296.93) | Line 511.  Doc ID 147835 EXT.766 |
| | (408.99) | Line 1304. 2010 Real Property Taxes, Doc ID 147835 EXT.766 |
| | | |
| **Adjustment to Elkin Calculation** | **(705.92)** | |
| | | |
| **Adjusted "Lost Equity" (Net Cash)** | **$  380,614.00** | |

Expert Rebuttal Report of Marcie D. Bour
Eduardo and Carmen Amorin, et al. v. Taishan Gypsum, Co., Ltd., et al.

| Elkin Exhibit No. 11: Cassandra Marin | | |
|---|---|---|
| | | **Source / Description** |
| Elkin Calculation of "Lost Equity" | $ 198,451.01 | |
| | | |
| Adjustments from Purchase Closing Statement | | |
| | 156.30 | County Taxes, HUD 2/8/2007 |
| | | |
| Adjustments from Sale Closing Statement | | |
| | 256.54 | Line 406. 2011 RE Taxes, EXT. 750 |
| | 158.88 | Line 408. Water/Sewer, EXT. 750 |
| | (232.17) | Line 511. County Taxes, EXT. 750 |
| | (2,385.19) | Line 1303. Real Estate Taxes, EXT. 750 |
| | (232.14) | Line 1304. Water Bill, EXT. 750 |
| | | |
| **Adjustment to Elkin Calculation** | **(2,277.78)** | |
| | | |
| **Adjusted "Lost Equity" (Net Cash)** | **$ 196,173.23** | |

| Elkin Exhibit No. 13: Jose & Adela Miranda | | |
|---|---|---|
| | | **Source / Description** |
| Elkin Calculation of "Lost Equity" | $ 41,756.49 | |
| | | |
| Adjustments from Purchase Closing Statement | | |
| | (487.82) | Line 105. CDD Taxes, Exhibit 1 |
| | (77.14) | Line 112. Maintenance, Exhibit 1 |
| | 73.81 | Line 211.County Taxes, Exhibit 1 |
| | (485.30) | Line 901. Interest, Exhibit 1 |
| | (2,649.00) | Line 903. Hazard Insurance, Exhibit 1 |
| | (662.25) | Line 1001. Hazard Insurance, Exhibit 1 |
| | (1,875.00) | Line 1004. County Property Taxes, Exhibit 1 |
| | (156.51) | Line 1006. Flood Insurance, Exhibit 1 |
| | 750.04 | Line 1008. Aggregate Credit for Taxes/Insurance/Annual Assess |
| | (332.50) | Line 1304. Waste Fees Exhibit 1 |
| | (62.70) | Line 1305. Maintenance, Exhibit 1 |
| | | |
| | | |
| **Adjustment to Elkin Calculation** | **(5,964.37)** | |
| | | |
| **Adjusted "Lost Equity" (Net Cash)** | **$ 35,792.12** | |

45

Expert Rebuttal Report of Marcie D. Bour
Eduardo and Carmen Amorin, et al. v. Taishan Gypsum, Co., Ltd., et al.

| Elkin Exhibit No. 15: Jeovany & Monica Nunez | | |
|---|---|---|
| | | Source / Description |
| Elkin Calculation of "Lost Equity" | $ 42,841.75 | |
| | | |
| Adjustments from Purchase Closing Statement | | |
| | (108.59) | Line 110. Proration of Maintenance, Doc ID. -0365754 |
| | (168.31) | Line 111. February Maintenance, Doc ID. -0365754 |
| | 34.81 | Line 211. County Taxes, Doc ID. -0365754 |
| | (946.80) | Line 901. Interest Expense, Doc ID. - 365754 |
| | (177.60) | Line 901. Interest Expense, Second Mortgage |
| | | |
| **Adjustment to Elkin Calculation** | **(1,366.49)** | |
| | | |
| **Adjusted "Lost Equity" (Net Cash)** | **$ 41,475.26** | |

| Elkin Exhibit No. 16: Kelly & Lori O'Brien | | |
|---|---|---|
| | | Source / Description |
| Elkin Calculation of "Lost Equity" | $ 233,796.79 | |
| | | |
| Adjustments from Purchase Closing Statement | | |
| | 794.05 | Line 211. County Taxes, DOC ID. - 222901 |
| | | |
| Adjustments from Sale Closing Statement | | |
| | 150.88 | Line 511. County Taxes, DOC ID. - 361431 |
| | | |
| **Adjustment to Elkin Calculation** | **944.93** | |
| | | |
| **Adjusted "Lost Equity" (Net Cash)** | **$ 234,741.72** | |

Expert Rebuttal Report of Marcie D. Bour
Eduardo and Carmen Amorin, et al. v. Taishan Gypsum, Co., Ltd., et al.

| Elkin Exhibit No. 17: Michael & Robyn Rosen | | |
|---|---|---|
| | | Source / Description |
| Elkin Calculation of "Lost Equity" | $ 1,192,583.40 | |
| | | |
| Adjustments from Purchase Closing Statement | | |
| | (727.05) | Line 111. HOA Fee MRosen 00001 |
| | (2,568.50) | Line 901. Interest Expense, MRosen 00002 Exh. 2 EXT.821 |
| | (699.95) | Line 1303. 2006 RE Tax,  MRosen 00002 Exh. 2 EXT.821 |
| | (1,155.38) | Line 1304. 4th Quarter HOA, MRosen 00002 Exh. 2 EXT.821 |
| | (1,343.46) | Line 1305. 2007 1st  Quarter HOA, MRosen 00002 Exh. 2 EXT.821 |
| Adjustments from Sale Closing Statement | | |
| | 1,691.21 | Line 407. County Taxes MRosen 00047 |
| | 261.37 | Line 409. Solid Waste MRosen 00002 |
| | 584.74 | Line 410. Homeowner Association |
| | (22,485.18) | Line 1304. 2009 Real Estate Taxes, ROSEN, M (OLF) - 000047 - 000049) EXT.006 |
| **Adjustment to Elkin Calculation** | **(26,442.20)** | |
| | | |
| **Adjusted "Lost Equity" (Net Cash)** | **$ 1,166,141.20** | |

| Elkin Exhibit No. 18: Kevin & Stacy Rosen | | |
|---|---|---|
| | | Source / Description |
| Elkin Calculation of "Lost Equity" | $ 782,563.24 | |
| | | |
| Adjustments from Purchase Closing Statement | | |
| | (4,202.14) | Line 107. County Taxes, KROSEN - 000106 EXT. 737 |
| | (10,638.89) | Line 110. HOA Reimbursement  ROSEN - 000106 EXT. 737 |
| | (809.08) | Line 901.  Interest,  KROSEN - 000106 EXT. 737 |
| | (1,687.41) | Line 1001. Hazard Insurance Deposited with lender, KROSEN - 000106 EXT. 737 |
| | (4,202.16) | Line 1004. County Taxes Deposited with lender, KROSEN - 000106 EXT. 737 |
| | (79.26) | Line 1007. Flood Insurance Deposited with lender, KROSEN - 000106 EXT. 737 |
| | 1,766.69 | Line 1008. Aggregate Adjustment, KROSEN - 000107 EXT. 737 |
| | (1,171.50) | Line 1304.3rd Quarter HOA, KROSEN - 000107 EXT. 737 |
| | (1,943.48) | Line 1305.4th Quarter POA, KROSEN - 000107  EXT. 737 |
| **Adjustment to Elkin Calculation** | **(22,967.23)** | |
| | | |
| **Adjusted "Lost Equity" (Net Cash)** | **$ 759,596.01** | |

# EXHIBIT F

| | | | |
|---|---|---|---|
| **Marcie D. Bour** | | | |
| **Errata Sheet for Expert Rebuttal Report issued March 25, 2019** | | | |
| | | | |
| **Page** | **Reference** | **Change From** | **To** |
| 8 | Paragraph 29 | FFSF | SSFS |
| 8 | FN 8 | FFSF | SSFS |
| 13 | Paragraph 60 | July 24, 2007 | July 24, 2017 |
| 13 | Paragraph 60 | September 196, 2008 | September 16, 2008 |
| 17 | FN 28 | page 12 | page 27 |
| 17 | FN 29 | page 27 | page 16 |
| 20 | Paragraph 84 (f) | Model #KE73165 | 28.5 cubic feet |
| 21 | Paragraph 86 (c) | Model #STS | Model #WTW |
| 21 | Paragraph 89 | $600 | $384 |
| 22 | Paragraph 90 | 50" | 55" |
| 22 | Paragraph 90 | 1/21/14 | 12/21/14 |
| 24 | FN 62 | 49 | Doc ID 329779, page 49. |
| 43 | Exhibit 4, (Elkin Exhibit 1) Avery | | Reference Lines 901-1310, should be negative numbers instead of positive for a new Adjustment of ($2,375.60); total Adjusted "Lost Equity" (Cash) should be $112,989.35 |
| 45 | Exhibit 4, (Elkin Exhibit 11) Marin | | Reference County Taxes ($156.30) should be omitted; for a new Adjustment of ($2,434.08); total Adjusted "Lost Equity" (Cash) should be $196,016.93 |
| 46 | Exhibit 4, (Elkin Exhibit 15) Nunez | | Reference Line 901, Second Mortgage ($177.60) should be omitted for a new Adjustment of ($1,188.89); total Adjusted "Lost Equity" (Cash) should be $41,652.86 |
| 46 | Exhibit 4, (Elkin Exhibit 16) O'Brien | | Reference Line 511 should be negative instead of positive for a new Adjustment of $643.17; total Adjusted "Lost Equity" (Cash) should be $234,439.96 |
| 47 | Exhibit 4, (Elkin Exhibit 18) K Rosen | | Reduce loss for Closing Costs from refinancing at owner's discretion in amount of $16,072.52 and increase loss for Reference Line 407 on Closing Statement dated 12/23/2009, $411.90 for a new Adjustment of ($38,627.85); total Adjusted "Lost Equity" (Cash) should be $743,935.39 |



EXHIBIT SDW
8 BOUR
4/15/19
PENGAD 800-631-6989

# EXHIBIT G



# Forensic & Valuation Services
# Practice Aid

# Serving as an Expert Witness or Consultant



EXHIBIT SDW

13 BOUR
4/15/19

Copyright © 2014 by
American Institute of Certified Public Accountants, Inc.
New York, NY 10036-8775

All rights reserved. For information about the procedure for requesting permission to make copies of any part of this work, please e-mail copyright@aicpa.org with your request. Otherwise, requests should be written and mailed to the Permissions Department, AICPA, 220 Leigh Farm Road, Durham, NC 27707-8110.

## Notice to Readers

This publication is designed to provide illustrative information about the subject matter covered. It does not establish standards or preferred practices. The material was prepared by AICPA staff and volunteers and has not been considered or acted upon by AICPA senior technical committees or the AICPA board of directors and does not represent an official opinion or position of the AICPA. It is provided with the understanding that the AICPA staff and the publisher are not engaged in rendering any legal, accounting, or other professional service. If legal advice or other expert assistance is required, the services of a competent professional should be sought. The AICPA staff and this publisher make no representations, warranties, or guarantees about, and assume no responsibility for, the content or application of the material contained herein and expressly disclaim all liability for any damages arising out of the use of, reference to, or reliance on such material.

This practice aid supersedes Practice Aid 10-1, *Serving as an Expert Witness or Consultant*.

The original authors of this practice aid were Debra Thompson, David Friedman, Paul Rodrigues, Heidi Bucklew, Bryne Liner, James O'Brien, and Christopher McClure. Updates were authored by Kevin Summers, a member of the 2012–2014 FLS Litigation Process Task Force.

In addition, some members of the 2012–2014 AICPA Forensic and Litigation Services (FLS) Committee, the Forensic and Valuation Services (FVS) Executive Committee and FLS Litigation Process Task Force also provided information and advice to the author and AICPA staff for this practice aid.

### AICPA Staff

Jeannette Koger
*Vice President*
*Member Specialization and Credentialing*
Eddy Parker
*Sr. Technical Manager*
*FVS Section*
Barbara Andrews
*Manager*
*FVS Section*

## Recent Developments Significant to This Practice Aid: AICPA's Ethics Codification Project

The AICPA's Professional Ethics Executive Committee (PEEC) restructured and codified the AICPA Code of Professional Conduct (code) so that members and other users of the code can apply the rules and reach correct conclusions more easily and intuitively. This is referred to as the AICPA "Ethics Codification Project."

Although PEEC believes it was able to maintain the substance of the existing AICPA ethics standards through this process and limited substantive changes to certain specific areas that were in need of revision, the numeric citations and titles of interpretations have all changed. In addition, the ethics rulings are no longer in a question and answer format but rather, have been drafted as interpretations, incorporated into interpretations as examples, or deleted where deemed appropriate. Some examples are as follows:

- Rule 101, *Independence* (AICPA, *Professional Standards*, ET sec. 101 par. .01), will be referred to as the "Independence Rule" [1.200.001] in the revised code.

- The content from the ethics ruling titled "Financial Services Company Client has Custody of a Member's Assets" (AICPA, *Professional Standards*, ET sec. 191 par. .081–.082), was incorporated into the "Brokerage and Other Accounts" interpretation [1.255.020] found under the subtopic "Depository, Brokerage, and Other Accounts" [1.255] of the "Independence" topic [1.200].

The revised code is effective December 15, 2014, and will be available at www.aicpa.org. References to the code in this practice aid will be updated at that time.

To assist users in locating in the revised code content from the prior code, the PEEC created a mapping document. The mapping document is available in Excel format at www.aicpa.org/InterestAreas/ProfessionalEthics/Community/DownloadableDocuments/Mapping.xlsx and can also be found in appendix D in the revised code.

## Recognition

The original authors of this practice aid were Debra Thompson, David Friedman, Paul Rodrigues, Heidi Bucklew, Bryne Liner, James O'Brien, and Christopher McClure. Updates were authored by Kevin Summers, a member of the 2012–2014 FLS Litigation Process Task Force.

In addition, some members of the 2012–2014 AICPA Forensic and Litigation Services (FLS) Committee, the Forensic and Valuation Services (FVS) Executive Committee and FLS Litigation Process Task Force also provided information and advice to the author and AICPA staff for this practice aid.

<div align="center">

**AICPA Staff**

Jeannette Koger
*Vice President*
*Member Specialization and Credentialing*
Eddy Parker
*Sr. Technical Manager*
*FVS Section*
Barbara Andrews
*Manager*
*FVS Section*

</div>

## Introduction

The intent of this practice aid is to provide the forensic accounting practitioner with non-authoritative guidance when the practitioner is serving as an expert witness or consultant for litigation and dispute service engagements.

Terms in this practice aid that are bolded are defined in appendix A, "Glossary." The term *practitioner* is used throughout this practice aid when a person serves either as an expert witness or consultant, although these two roles are different. The terms *expert witness* and *consultant* are used independently in this practice aid in instances when it is necessary to indicate the separate roles and status of the practitioners.

### Definition of Forensic Accounting Services

Forensic accounting services generally involve the application of specialized knowledge and investigative skills possessed by CPAs to collect, analyze, and evaluate evidential matter and to interpret and communicate findings in the courtroom, boardroom, or other legal or administrative venue. More simply, in the context of litigation, the term forensic means to be suitable for use in a court of law.

Forensic accounting services include, among others, litigation support, alternative dispute resolution, and fraud and special investigations. Forensic accounting services often require the practitioner to serve as a consultant, expert witness, or fact witness, depending on the assignment. A listing of examples of forensic accounting services is located in appendix B, "Examples of Forensic Accounting Services."

Litigation services involve pending or potential legal or regulatory proceedings before a trier of fact in connection with the resolution of a dispute between parties. Other dispute resolution services assist parties with the settlement or determination of a dispute. A trier of fact may be a judge, a jury, a tribunal, a regulatory body or government authority and their agents, an arbitrator, a mediator, a special master, a referee, or another party with authority to decide the outcome of a dispute. Fraud and special investigations typically use recognized forensic accounting techniques to investigate known or suspected bad acts or events.

### Roles of the Practitioner

The practitioner can be retained to serve in a number of roles, including the following:

- **Expert witness.** A person formally designated to render an opinion(s) before a trier of fact is an expert witness. If designated as an expert witness, the practitioner's litigation-related work may be required to be produced to opposing parties through a process called discovery.

- **Consultant.** A person retained to advise about facts, issues, strategies, and other matters is a consultant. The consultant does not testify about his or her expert opinion before a trier of fact unless the consultant's role is subsequently changed to an expert witness during the pendency of the litigation. Generally, the consultant's work is protected from discovery by the attorney work product doctrine, which emanates by extension from the attorney-client privilege. When engaged by a litigant or prospective litigant the consultant's work may lose the protection of privilege that

would be afforded such work if the consultant was retained directly by the litigant's attorney. [fn 1]
In the event the practitioner's role changes from consultant to expert witness, the practitioner
should consider executing a new engagement letter for the expert witness services to be per-
formed.

Additionally, a practitioner can be retained in a number of different roles, including, without limitation,
a trier of fact, a special master, a court-appointed expert, a referee, an arbitrator, or a mediator.

### Scope and Purpose of the Practice Aid

The intent of this practice aid is to provide the practitioner with nonauthoritative guidance when serving
as an expert witness or consultant for litigation service engagements in the United States of America,
although certain parts of this guidance also may be applicable to international assignments. This practice
aid focuses primarily on the practitioner serving in a role in connection with civil litigation disputes;
however, this practice aid also provides limited guidance for serving as an expert witness or consultant
in criminal proceeding matters. This practice aid is not intended to apply to situations in which the prac-
titioner may be required to testify as an official custodian of records or as a fact or lay witness, although
certain portions may be helpful.

A large number of state and local jurisdictions and private conflict resolution forums are available to
disputing parties, and each has unique rules and practices. However, many jurisdictions and private par-
ties have adopted some portion of the *Federal Rules of Evidence* and the *Federal Rules of Civil Proce-
dure*. These rules, along with the *Federal Rules of Criminal Procedure* for criminal matters, also are ap-
plicable in federal court proceedings. Therefore, this practice aid generally refers to these federal rules.

In addition to this practice aid, the AICPA has issued additional nonauthoritative guidance for providing
forensic accounting services in separate practice aids. This practice aid is to be used together with this
additional guidance.

## Professional Standards and Nonauthoritative Guidance

### Authoritative Literature

Readers should be aware that the following authoritative literature applies to forensic accounting ser-
vices as well as any other service provided by CPAs in public practice:

- AICPA *Professional Standards*

- AICPA *Code of Professional Conduct and Bylaws*

- AICPA Statement on Standards for Consulting Services No. 1, *Consulting Services: Definitions
  and Standards*

---

[fn 1] For purposes of this practice aid, the client will be defined as the attorney, and the litigant party will be defined as the attorney's
client, except where noted.

- AICPA Statement on Standards for Valuation Services No. 1, *Valuation of a Business, Business Ownership Interest, Security, or Intangible Asset*

## Other Guidance

The practitioner should ask the client or the client's attorney to provide the appropriate guidance applicable to the practitioner's forensic work before undertaking any substantive forensic accounting services. If the client or the client's attorney is unfamiliar with the specific requirements, the practitioner can perform research or, alternatively, engage his or her own legal counsel to determine the guidance to follow.

### Federal, State, and Local Requirements

Federal, state, and local administrative, court, and jurisdictional standards, procedures, rules, and protocols differ. For example, state courts have differing requirements related to the designation and disclosure of expert witnesses, the admissibility of expert testimony, the filing of expert witness reports, and the use of courtroom demonstratives, among other matters. Refer to appendix D, "Courts and Websites," for a listing of federal and state courts and their websites.

The *Federal Rules of Evidence* applicable to expert witnesses in federal civil matters are as follows:

- Rule 702, "Testimony by Expert Witnesses"

- Rule 703, "Bases of an Expert's Opinion Testimony"

- Rule 704, "Opinion on an Ultimate Issue"

- Rule 705, "Disclosing the Facts or Data Underlying an Expert's Opinion"

- Rule 706, "Court-Appointed Expert Witnesses"

Rule 26, "Duty to Disclose; General Provisions Governing Discovery," of the *Federal Rules of Civil Procedure* describes, among other things, the following:

- Requirements for disclosure, including electronically stored information (ESI)

- Reports and testimony of expert witnesses

- Basis upon which a federal trial judge can disallow opinion testimony by lay witnesses

- Determination of whether testimony by experts meets the minimum standards

- Identification of the bases of opinion testimony by expert

Refer to appendix E, "Excerpts of the *Federal Rules of Civil Procedure* and the *Federal Rules of Evidence*," for applicable sections of the rules, as well as citations to websites containing the rules.

### Laws, Statutes, and Regulations

Depending on the type of dispute and litigation issues involved, there may be federal, state, and local laws and statutes that apply to forensic accounting services provided by the practitioner. Some states

have statutes and regulations that preclude testimony from a practitioner serving as a CPA expert witness unless the practitioner has an active license to practice public accounting in that state; however, most states have now enacted exceptions for CPA expert witness testimony. In addition, practitioners also should be aware that there are federal and state laws that specifically address allowable legal remedies for certain causes of action. For instance, federal laws specifically define monetary damages for infringement of most types of intellectual property rights. Additionally, some states have statutes that spell out how lost profits and pretrial or prejudgment interest are to be calculated.

Legal precedent, which comprises prior appellate court decisions, also binds judges presiding over the litigation process. Therefore, it is important for the practitioner to discuss any legal precedent with the client's attorney that may affect the practitioner's work in the matter at hand.

## Court and Other Authoritative Orders

A court, judge, or another in a similar role and capacity may issue legal orders binding the parties and, at times, the practitioner.

One order commonly encountered by the practitioner requires the maintenance of the confidentiality of documents and data produced by the parties. A confidentiality or nondisclosure agreement typically requires the practitioner to read, understand, and sign the agreement prior to beginning any work. The practitioner should confirm that the confidentiality agreement allows the retention of CPA work product and working paper documentation. In addition, the practitioner should carefully evaluate security, including physical and electronic access, related to confidential materials received and under his or her control and custody.

Another common order important to the practitioner is a scheduling order. This order typically sets out the deadlines for the proceedings and, if possible, an expected trial date. If possible, the practitioner should obtain the scheduling order prior to being engaged to ensure the practitioner can comply with discovery schedules, submission requirements, and other important matters. It is suggested that the forensic accountant monitor revisions and other modifications to scheduling or calendaring orders as the case progresses to avoid schedule conflicts in the future.

## Alternative Dispute Resolution Rules

Differing rules and protocols exist for alternative dispute resolution (ADR) matters, depending on the type and form of governance agreed to by the disputing parties. ADR commonly consists of four types: negotiation, mediation, arbitration, and collaborative proceedings. However, other methods of ADR include mock trial and settlement conference.

In negotiation forms of ADR, the parties mutually agree to communicate with each other in an attempt to reach agreement on the resolution of a dispute outside of any formal or structured proceeding. Mediation forms of ADR utilize the services of a neutral third party, or mediator, to facilitate the disputing parties in reaching an agreement. It can be thought of as a facilitated negotiation. In arbitration, the disputing parties agree to have a neutral decision maker, or arbitrator, reach a binding resolution. A collaborative ADR process is used in many states during divorce proceedings, with the disputing parties reaching a nonbinding agreement supported by legal counsel and experts. Forms of ADR are discussed more fully in the section "Overview of Alternative Dispute Resolution."

The American Arbitration Association (AAA) is one of the largest ADR provider organizations, although there are several others throughout the United States. AAA uses proprietary governing processes

consisting of established rules and protocols to hear and resolve disputes. Alternatively, disputing parties may simply agree to prepare a tailored set of rules and protocols to be used for the ADR proceedings.

**Internal Guidance**

Practitioners providing forensic accounting services should have and comply with internal guidance related to the acceptance and provision of litigation support services to ensure conformance with applicable professional standards. Internal guidance may be subject to discovery by opposing parties when the practitioner is serving as an expert witness or providing other litigation support services.

## Other Considerations

**Conflict of Interest**

Conflicts of interest are actual or apparent incompatible interests between the practitioner and others connected to the engagement. These may include the potential client and legal counsel, opposing parties and legal counsel, and unnamed but associated third parties to the dispute. Accordingly, before beginning work, the practitioner should undertake a conflict of interest check by making an effort to identify all of the potentially relevant parties. If a conflict of interest exists, the practitioner should not accept the engagement or, alternatively, should attempt to resolve the conflict, if possible. The parties and entities causing the conflict of interest for the practitioner generally should not be disclosed to the potential client or others, due to client confidentiality standards.

Conflicts of interest may impair objectivity. When performing forensic accounting services, attorneys or courts may evaluate potential conflicts of interest. A conflict of interest can impair a practitioner's ability to objectively evaluate and present an issue for a client because of a current, prior, or possible future relationship with other parties, including those who may be involved in the engagement.

Determining whether it is a conflict of interest to accept a litigation engagement against a former client can best be resolved on a case-by-case basis. Factors to consider include the length of time since the party was a client, the confidential information the practitioner possesses that may become an issue in the litigation, and the facts and circumstances of the case. The practitioner's ability to maintain integrity and objectivity is paramount in making a decision to accept the engagement. The practitioner should be mindful of, and deal with, conflicts of interest before accepting the engagement and should continue to monitor for conflicts of interest throughout the performance of the engagement.

Practitioners should consider whether they would be asked to perform services that are inconsistent with what they currently provide other clients. For example, in a typical securities fraud case, the plaintiff wants to prove that the practices of the defendant company's accountant contributed to nondisclosure or fraudulent disclosure in the financial statements. A practitioner who is considering accepting the plaintiff's engagement needs to consider if the practices of the defendant's accountant represent conduct that the practitioner or his firm engages in or condones in its own practice.

Typically, practitioners disclose current and former relationships with all the parties to the litigation to the client's attorney so that the attorney and his or her client have the ability to make their own determination about whether a conflict exists. During this process, the practitioner should be mindful not to disclose any information that could be confidential to his or her other clients without prior consent.

In some cases, the parties know of, and agree to waive the conflicts of interest; however, the practitioner should exercise caution to avoid improperly disclosing any relationship or service to others that may violate professional client confidentiality.

## Engagement Acceptance

Prior to agreeing to serve as an expert witness or a consultant for a forensic accounting services engagement, the practitioner should determine whether there are any conflicts of interest. If no conflict exists, or after any known conflicts are satisfactorily resolved, the practitioner may want to understand the expected role of the practitioner and others in the matter, the scope of the assignment, any potential limitations, the expert opinion(s) the practitioner is asked for, and any other pertinent matters. After obtaining this understanding, the practitioner should carefully evaluate the ability to serve by determining his or her qualifications, independence and objectivity, absence of bias, resources and availability, fee structure, and engagement terms.

Accountants, who perform expert witness or litigation consulting services, or both, need to consider and comply with accounting and other professional standards and relevant legal guidance or requirements specific to the situation, as discussed with legal counsel. As more and more cases are decided through the court systems, the implications on litigation strategy and the role of the financial expert and consultant play are critical factors in successfully representing your client while maintaining your independence, integrity, and objectivity.

Unlike attorneys who are engaged to represent their clients zealously, practitioners are engaged to be advocates for their professional opinions and not to advocate for any of the parties involved in the dispute. As stated previously, when acting as an expert witness, the practitioner needs to maintain his or her independence and objectivity at all times during the engagement and not become the client's advocate. In this capacity, the practitioner's role is to form an objective professional opinion based on facts or hypotheses. When serving as an expert witness, the practitioner needs to present and defend his or her position with strength and conviction.

The practitioner's reputation and qualifications will likely become an issue in judicial proceedings because of the impact of two seminal cases. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993), the Supreme Court upheld the rule that expert opinion based on a scientific technique is inadmissible unless the technique is "generally accepted" as reliable in the relevant scientific community. *Kumho Tire Co v. Carmichael*, 526 U.S. 137, 119S.Ct. 1167, 1179 (1999) extends *Daubert* not only to scientific testimony but to all expert testimony. As these and many other cases suggest, the scheduling or calendaring order and relevance of the expected testimony will likely be subjected to careful judicial scrutiny before expert testimony will be allowed to be presented at the trial. Therefore, when deciding whether to accept a litigation services engagement, the practitioner should seriously consider whether it is likely that he or she has the knowledge and skills necessary to provide a reasonable basis to present relevant and reliable testimony on the issues in the particular case.

Another factor that practitioners may want to consider when contemplating whether to accept work as an expert is whether an attorney or client will restrict the practitioner's scope by limiting access to certain facts or attempting to influence the practitioner's judgment. Such restriction or limitation might endanger the practitioner's reputation and the ultimate success of the case. In some situations, however, any attorney's limited presentation of the facts to a practitioner may be appropriate.

When providing expert testimony, the practitioner's every word, through reports, deposition, or on the stand at the trial, will be scrutinized by intelligent and experienced attorneys and opposing experts. Any

weakness or inconsistency in testimony could be used against the expert witness. Therefore, before accepting an engagement, a practitioner may want to review his or her testimony given in previous engagements to be sure it is consistent with the testimony anticipated in the prospective engagement. A practitioner who has no previous testimonial experience should consider whether his or her background is appropriate for the engagement and whether this litigation is a proper one for his or her first experience before accepting the engagement.

A practitioner should consider whether his or her testimony would be consistent or inconsistent with the position of the client. It can be extremely embarrassing to the practitioner to give testimony that contradicts the client's position.

Practice mobility has become an issue that a practitioner also needs to consider before accepting an engagement. Mobility for a practitioner is the ability to gain a practice privilege outside of his or her home jurisdiction without obtaining an additional license in another state where he or she will be serving a client or an employer. Because the electronic age makes conducting business across state borders an everyday occurrence, an effort is underway to adopt a uniform system that will allow licensed practitioners to provide services across state lines without being subject to unnecessary burdens that do not protect the public interest. Currently, if a practitioner is practicing outside his or her home state, or expects to, he or she should take into consideration the other states' licensing requirements and ensure compliance. Practitioners may obtain details on varying state boards of accountancy requirements by visiting the cpamobility.org website.

A practitioner can serve in other roles in the litigation process, such as a trier of fact, a special master, a court-appointed expert, a referee, an arbitrator, or a mediator; a practitioner can also perform investigative services. The independence implications of providing these services are addressed in Ethics Interpretation No. 101-3, "Performance of nonattest services," of the "Independence Rule." [fn 2]

## The Client-Practitioner Relationship

At the beginning of an engagement, it is important to determine whether the client is the attorney or the attorney's client. If the client is the attorney, the practitioner's work may be protected from discovery by opposing parties as long as the practitioner does not give expert testimony. In most instances in which the practitioner is retained as a consultant by the client's attorney, such work will be protected by privilege. [fn 3] Consultants, as opposed to experts, may help develop the strategy of the case, assist in preparing other experts to testify, develop cross-examination material for use against the opposing experts, assist with discovery, and explore the strengths and weaknesses of each party's case. However, if the practitioner's client is the attorney's client, then the attorney's work product privilege may not protect the practitioner's work from discovery by the opposing side.

The work of experts, regardless of the client, will likely be discoverable. [fn 4] Nonetheless, no matter what the practitioner's role, the practitioner should maintain working paper files with the expectation

---

[fn 2] AICPA, *Professional Standards*, ET sec. 101 par. .05

[fn 3] The attorney work product privilege doctrine should be monitored to ensure an up-to-date understanding.

[fn 4] Effective December 1, 2010, Rule 26 of the *Federal Rules of Civil Procedure* was amended to provide that draft reports of experts are no longer discoverable.

that the working papers will be produced. A waiver of the privilege, or a production of documents compelled by a regulatory body, many times causes an unanticipated production.

Particularly when a practitioner is engaged to serve as a litigation consultant, legal privilege may protect the practitioner's work. Legal privilege applicable to practitioners typically falls into one of the following categories:

- Attorney-client privilege. The client's right to refuse to disclose, and to prevent any other person from disclosing, confidential communications between the client and the attorney.

- Attorney work-product privilege or doctrine. Under this rule, anything prepared by an attorney in anticipation of litigation is protected from discovery or compelled disclosure. This includes, but is not limited to, notes, working papers, and memoranda.

- Accountant-client privilege. The protection afforded to a client from an accountant's unauthorized disclosure of materials submitted to, or prepared by, the accountant. This privilege is not widely recognized.

It is important for the practitioner to discuss with the client's legal counsel the extent the practitioner's work is protected by legal privilege because it may influence communications and how the work is directed, documented, and disclosed. In instances in which legal privilege will be, or may be, asserted, the practitioner should confirm communication and documentation protocols, and work product should be identified on its face as "privileged" to aid in identification and protection.

## Scope of Work

It is critical that the practitioner obtain an initial understanding about the expected scope of work and the practitioner's and others' roles in the engagement. However, the scope and roles often change over the course of a forensic accounting services engagement, so the practitioner should periodically document this understanding. If the practitioner decides that the role, scope, or limitations are unacceptable, the engagement should be declined.

## Timetables

The litigation process timetable often is determined by the court. When accepting a litigation services engagement, the practitioner needs to consider the timetable to provide services. Quite often, lawyers delay hiring experts, which may affect the practitioner's ability to adequately perform his or her services. Once hired, the practitioner should expect to provide services continuously or sporadically, or both, over a period of time.

## Fees

As with any professional engagement, the fees and billing practices used by the practitioner will depend upon the perceived economic risks and rewards of the engagement, scope of the work to be performed, personnel needs, and resource requirements, as well as other factors. Additionally, rules and requirements related to fee arrangements, timekeeping, and invoicing vary depending on the subject matter, jurisdiction, judge, law, and prospective client attorney preferences. The practitioner needs to assess the credit risks of performing the litigation services.

The engagement letter typically sets forth who will be responsible for the payment of fees and expenses. The engagement letter often is addressed to the attorney and usually requests acknowledgement of the terms of the engagement by having both the attorney and client sign and return a copy. Often an engagement letter requests a retainer be paid upon the hiring of the practitioner.

The level of detail to be provided (for example, description of time, expenses, detail, and so on) with the invoice also varies between engagements and should be discussed with the attorney at the beginning of the engagement. In certain engagements, the court may require more detail in the billing. The practitioner should realize that if detailed billing records exist, they might be discoverable.

A practitioner in public practice shall not perform for a contingent fee any professional services for, or receive such a fee from, a client for whom the practitioner or the practitioner's firm performs

  a. an audit or review of a financial statement;

  b. a compilation of a financial statement when the practitioner expects, or reasonably might expect, that a third party will use the financial statement and the practitioner's compilation report does not disclose a lack of independence;

  c. an examination of prospective financial information; or

  d. preparation of an original or amended tax return or claim for a tax refund for any client. [fn 5]

These prohibitions apply during the period in which the practitioner or the practitioner's firm is engaged to perform any of the preceding services and the period covered by any historical statements involved in any such listed services.

A contingent fee is a fee established for the performance of any service pursuant to an arrangement in which no fee will be charged unless a specified finding or result is attained or in which the amount of the fee is otherwise dependent upon the finding or result of such service. However, the "Contingent Fees Rule" [fn 6] notes this exception: fees are not regarded as being contingent if fixed by courts or other public authorities or, in tax matters, if determined based on the results of judicial proceedings or the findings of government agencies.

Fixed fees arrangements are permissible but may not be advisable. Typically, as the litigation process develops, additional work is required. The amount of work that needs to be performed usually increases as the case progresses. Thus, the practitioner who is working under a fixed fee arrangement should be specific about his or her scope and may want to consider protecting himself or herself in the engagement letter by requiring the client to sign written change orders before beginning work that is outside of the scope of the original engagement letter.

The majority of practitioner fee arrangements for litigation services are hourly rates for professionals, plus any associated expense incurred. Nonetheless, arrangements may include fixed fee tasks, blended average hourly rate agreements, discounts or premiums, and administrative charges. Invoicing may pro-

---

[fn 5] See the "Contingent Fees Rule" (AICPA, *Professional Standards*, ET sec. 302 par. .01).

[fn 6] AICPA, *Professional Standards*, ET sec. 302 par. .01

vide for early payment discounts, late payment charges, and other allowable and acceptable terms. In addition, the practitioner may elect to collect a retainer in advance, which is a common practice for litigation support engagements. Others require a higher hourly rate for expert testimony in deposition or at the trial. Regardless of the fee arrangement, it is advisable for the practitioner to collect any outstanding balances due for litigation services prior to expert testimony to avoid any collection issues.

In most cases, when the practitioner is working as a consultant for litigation support, the fees and invoicing information may be protected by the attorney work product privilege and may not be discoverable. Conversely, in the role of an expert witness, the practitioner should understand that timekeeping, invoicing, and billing information might be subject to discovery and analysis by the opposing party. In addition, the *Federal Rules of Civil Procedure* requires the practitioner's expert witness to disclose the compensation paid in the case. Whether serving as an expert witness or a consultant, the practitioner should reach an agreement with the client or the client's attorney on the type and details of information to be disclosed in connection with the practitioner's timekeeping and invoicing activities. It is also important to note that certain jurisdictions, courts, and matters have specific timekeeping, disclosure, and invoicing requirements.

## Staffing and Supervision

Litigation services engagements require competent staffing because of the complex nature of the work. In addition, attorneys usually demand significant involvement by the person who will be the expert witness. Therefore, a practitioner needs to closely supervise the staff and be ready to testify that the work, exhibits, analyses, and the like were prepared under his or her direct supervision and control. The practitioner who was asked to serve as an expert witness is ultimately responsible for the staff assigned for each task and the supervision of the work performed. Failure to assign staff with the proper experience and qualifications and to appropriately direct and supervise the work performed may adversely affect the quality and reliability of the expert's opinions. In addition, opposing legal counsel may attempt to discredit the expert witness and the foundation for any opinions offered by the practitioner in situations in which the work performed was not personally directed and supervised by the expert. The practitioner in an expert report or testimony often confirms the direction and control exercised by the practitioner over the staff and work performed. Therefore, in cases in which it is anticipated that the practitioner will be unable to personally direct and supervise the work performed in support of his or her expert opinions, the practitioner should discuss this matter with the prospective client and the client's attorney and consider the impact on expected expert opinions and testimony.

## Sufficient Relevant Data

The practitioner needs to consider the following:

- Legal evidence. The courts have established rules for the determination of admissible evidence and expert testimony. The expert witness generally can rely on documents that the parties to the proceeding have authenticated or that are acceptable to the court under the various rules of evidence. Each legal jurisdiction may have different rules governing what the expert witness may rely upon; thus, it is important to communicate to the attorney what evidence is necessary to support the expert witness's conclusions and judgments. Different rules of evidence may apply in different jurisdictions, and the practitioner is not expected to be a legal expert.

- Assumptions. An expert witness can base opinion testimony on either facts or assumptions. Likewise, an expert witness may base assumptions on facts; presumptions from facts; or assumptions provided by the client, other experts, or counsel. For example, some analyses require the

use of assumptions about hypothetical situations. The practitioner should consider analyzing key assumptions to determine whether they are reasonable and to identify the source of information. Ultimately, the trier of fact will determine the reasonableness of the assumptions.

- Documentation. The practitioner should prepare and maintain documentation, the form and content of which should be designed to meet the circumstances of the particular engagement. The quantity, type, and content of documentation are determined by several factors, including the practitioner's professional judgment, the nature of the engagement, and the directives of legal counsel. The expert witness should understand that his or her conclusions and judgments may be subject to discovery and cross-examination by the opposing legal counsel and evaluation by the trier of fact. Results of research and working paper documentation (including e-mail, spreadsheets, and correspondence) are the principal records of the procedures applied, information obtained, and conclusions reached by the practitioner in the engagement. Finally, the practitioner also may want to consider adopting a formal record retention policy in litigation matters and ensure that the staff are in compliance with the document retention policy or respond appropriately to any subpoenas or agreements between the parties to the litigation.

## Opinions

In situations when the practitioner is being considered, or may be ultimately asked, to serve as an expert witness on the engagement, it is recommended that the practitioner gain an initial understanding of the opinions expected by the client's attorney to be formed and offered in testimony by the practitioner. It is important to note that the practitioner continue confirming this understanding with the client because modifications are common during the course of an engagement. In most cases, an expert opinion is exclusively that of the individual practitioner, and not of a firm or employer. If the practitioner finds a requested opinion inappropriate, improper, or impossible, the practitioner should promptly communicate this belief to the potential client's attorney and not accept this particular assignment of the engagement. Care should be taken by the practitioner to avoid accepting an assignment that may result in the practitioner not being able to support an opinion.

In general, the practitioner, when serving as an expert, will be asked to opine in three broad areas: (*a*) liability, (*b*) causation, and (*c*) damages. Liability expert opinions assist the trier of fact to determine the fault or legal responsibility of the disputing parties. An example is a practitioner's expert opinion about whether management misstated financial results. Causation, sometimes referred to as proximate cause opinions, helps the trier of fact understand to what extent an action or omission caused the claimed monetary damages in the case. The most commonly requested expert opinion from the practitioner is the quantification of monetary damages based on legally acceptable theories of remedy. In certain cases, a trial may be bifurcated, with proceedings on liability and causation separately tried from damages.

## Inconsistent Opinions

At the outset of litigation, a practitioner usually cannot know his or her ultimate opinions. Only after a careful evaluation and analysis of the facts can the practitioner form an opinion. An opinion could be adverse to the client's position or legal theory. When a practitioner draws conclusions that are inconsistent with the theories pursued by the client in the case, the practitioner should contact the attorney as soon as possible. In the event the attorney is unable to provide additional information regarding the practitioner's inconsistent opinion, the practitioner may need to withdraw from the engagement.

## Qualifications

One of the most important factors for the practitioner and the prospective client to evaluate prior to being retained as an expert witness is qualification to serve. It is common for the practitioner to provide a professional resume or curriculum vitae (CV) to the potential client or the client's attorney to assist with this determination. Under Rule 26(a)(2) of the *Federal Rules of Civil Procedure*, the expert witness must disclose the witness's qualification including the following:

- A list of publications authored in the previous 10 years

- A list of cases in which the expert testified during the previous four years, at trial or by deposition

- A statement of the compensation to be paid for the study and testimony in the case

Typically, these items are included in the CV or attached as a supplement.

The practitioner also should be aware that once disclosed as an expert witness, opposing legal counsel is likely to scrutinize the practitioner's reputation, published works, prior testimony, and opinions, as well as any other factor that might be relevant, in an effort to challenge qualifications or to discredit or limit the practitioner's expert testimony. If the practitioner believes he or she is unqualified to serve as an expert, the practitioner should inform the prospective client or the client's attorney immediately and decline to accept this portion of the engagement.

## Scheduling

The practitioner should obtain an understanding about the timing of the work to be performed and any important dates in the litigation process before agreeing to undertake a litigation engagement. This information may be obtained from the prospective client or the client's attorney, scheduling or calendaring orders, and other case filings. Typically, key dates for the practitioner to know will include deadlines for disclosure of witnesses, expert witness and rebuttal reporting, depositions, closure of discovery, sequestration, and trial.

Due to the nature of litigated disputes and the numerous ways a matter may progress through the litigation process, the practitioner may be approached to accept a litigation consulting engagement close to the deadline for closure of discovery. This presents difficulties and challenges for the practitioner to complete an appropriate amount of work for sufficiently supportable expert opinions. Complicating this situation, the practitioner may not have available to him or her all the relevant information to perform the requested engagement. The practitioner may identify additional evidence, including electronically stored information (ESI), [fn 7] and witness statements needed from the disputing parties; the acquisition and delivery of this information may require significant time, cost, and effort. In these circumstances, the practitioner should carefully consider his or her workload, together with the expected scope and timing of the litigation support work, before accepting an engagement. In certain cases, it may be possible to work with the client's attorney to request and secure from the court an extension of scheduled deadlines to address this issue.

---

[fn 7]   Appendix A, "Glossary," provides the practitioner with some basic computer terminology.

## Engagement Letter

It is important to emphasize to the practitioner the importance of defining the client and adequately documenting the understanding with the client. Significant changes, modifications, and amendments to the engagement letter should be approved and documented, or alternatively, a new or supplemental engagement letter should be prepared and signed. Cases exist in which the court or a judge is required to approve the retention of the practitioner (for example, a court-appointed expert [see Rule 706 in appendix E] or in bail matters). In such cases, the court or judge may not agree to execute an engagement letter. In these situations, the practitioner should obtain a properly executed court order or approval with language satisfactory to the practitioner prior to initiating any service. It may be appropriate for the practitioner to engage his or her own attorney to ensure that the rights of the practitioner are properly protected.

## The CPA's Role

Serving as an expert witness, the practitioner is required to adhere to the reporting requirements of the dispute forum and may consider the preferences of the trier of fact. Under Rule 26 of the *Federal Rules of Civil Procedure*, in addition to disclosure of the expert witness's qualifications, publications, testimony, and compensation, the expert report must contain several other items. The expert witness also must report a complete statement of the opinions he or she will express and the basis and reasons for them, the data of other information considered by him or her in forming such opinions, and any exhibits that will be used to summarize or support his or her opinions. [fn 8]

## Assistance With Case Strategy

The client and the client's attorney are advocates for their position, and their advocacy influences how they present the facts of a case. One of the principal services a practitioner offers is an objective professional review of the facts. In addition, if the attorney is unfamiliar with the business, the practitioner can help by explaining the business facts relevant to the legal theories of the case. The practitioner can suggest several different ways to prove facts or make points, but the final decisions should be made by the attorney and the client.

## Required Expert Report Disclosures

In accordance with these requirements, following is a list of the contents of an expert report under Rule 26(a)(2)(B) of the *Federal Rules of Civil Procedure*:

- Basis for the expert witness opinions (*required*). In combination with work performed, a description of the fundamental principles used completes the requirement to report the basis and reasons for the expert witness's opinions.

- Opinions of the expert witness (*required*). The practitioner must report the opinions to be expressed by testimony at the trial.

- Data or other information considered (*required*). Disclosure of materials considered by the practitioner in reaching opinions and preparing the expert report. This includes documents and data

---

[fn 8]  See appendix E, "Excerpts of the *Federal Rules of Civil Procedure* and the *Federal Rules of Evidence*."

produced by the parties during the litigation, as well as research and other materials independently prepared by the practitioner.

- Exhibits to be used by the expert witness (*required*). Describe the expert witness's scientific, technical, or other specialized knowledge believed to enable the witness to assist the trier of fact in understanding the evidence or determine a fact in issue. The practitioner should focus on the following qualifications:

    *a.* Publications authored for the last 10 years

    *b.* Testimony given in the last 4 years

    *c.* Compensation (see Rule 702 of the *Federal Rules of Evidence* in appendix E)

## Data and Documents Considered and Work Product

Related to the reporting of data and documents considered, the practitioner should discuss the documentation requirement with the client's attorney to ensure proper compliance. In some cases, the understanding is that materials received by the expert witness should be disclosed. In other cases, the disclosure is limited to only those materials received, read, considered, and used to reach the expert witness's opinions.

In connection with the required reporting of data and documents considered, the practitioner should become familiar with evidence considerations, such as the standard of proof, admissibility, and chain of custody, because these matters may affect the reliance and weight given to certain information considered by the expert witness. In addition, the practitioner is reminded that the materials considered or prepared by the expert witness are generally discoverable and cannot be protected from discovery by legal privilege.

Therefore, the practitioner must exercise diligence to retain materials provided to or prepared by him or her during the litigation. The practitioner also must preserve the metadata generated in connection with ESI. This may be facilitated by a disciplined approach to receiving, inventorying, securing, and maintaining materials received or prepared during the litigation support engagement. For example, a bates-stamp is commonly used to control the dissemination of documents to the expert witness. The failure to properly preserve and disclose expert witness materials may result in unfavorable rulings, sanctions, and other adverse consequences.

## Expert Witness Opinions

In federal court, the expert witness's opinion must comply with the *Federal Rule of Evidence* in order to be presented by the practitioner at the trial (see appendix E). Failure to comply may result in disqualification of the expert witness, limitations on the expert testimony that can be given at the trial, or, in severe cases, the exclusion of the expert witness testimony.

Generally, the practitioner will be allowed to testify at the trial if the expert witness's opinions are based upon sufficient facts or data and are the product of reliable principles and methods and if the expert witness has reliably applied the principles and methods to the facts of the case. However, the expert witness typically is allowed to rely on hearsay as part of the basis for his or her opinions, a right not afforded fact and lay witnesses. According to Rule 703 of the *Federal Rules of Evidence*,

[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of acts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

In addition, case precedent has given the trial judge gatekeeping responsibilities and discretion related to the admissibility of expert witness testimony (see appendix G, "*Daubert* and *Kumho* Case Summaries"). Therefore, it is possible that the practitioner's expert report and associated opinions will be challenged by the opposing legal counsel in an effort to exclude the practitioner's testimony. This may be accomplished by filing a *Daubert motion*. Some reasons for the exclusion of expert witness testimony are that the testimony

- is based on legal theories or remedies unavailable in the jurisdiction.

- fails to consider alternative scenarios, explanations, facts, and assumptions.

- fails to use procedures typically employed by similar professionals.

- ignores or fails to consider material facts and evidence in the case.

- employs unreasonable or unjustified use of a proven theory or technique.

- offers unreliable results.

- offers unsupported assumptions.

- uses unproven or generally unaccepted theories, methods, and techniques.

- uses untested, biased, or inadmissible evidence.

The practitioner engaged as an expert witness by the party initiating a civil complaint, referred to as the plaintiff, generally submits his or her expert witness report first, although simultaneous submission by the disputing parties is common. The practitioner engaged by the party subject to the complaint of the plaintiff, or the defendant, submits his or her expert witness report afterwards, and it is often referred to as a rebuttal report because it contradicts the plaintiff's expert witness report. In some cases, additional responsive or supplemental expert witness reports may be prepared and submitted by the practitioner. It is important that the practitioner disclose the expert witness opinions prior to the closure of discovery because failure to do so may prohibit the expert witness from testifying about these opinions at the trial.

## Expert Witness Reporting and Spoliation

Spoliation is an intentional act to improperly destroy, alter, or conceal evidence. A finding of spoliation is serious and may result in significant undesirable consequences to the practitioner and his or her client. This concept is particularly relevant for the practitioner to consider in connection with the preparation and retention of expert report drafts. Accordingly, the practitioner should discuss with the client's attorney the protocols to be followed and potential implications of the *Federal Rules of Civil Procedure* on drafts and attorney communications to avoid accusations of spoliation. This includes an agreement about the definition of a draft document for the particular case. In certain cases, legal counsel representing the

Page 19

disputing parties will agree that drafts of expert reports are not discoverable. However, to be safe, the practitioner may elect to save drafts and provide them to the client's legal counsel for the attorney to make a determination regarding production to the opposing party. [fn 9]

### Contractual Agreements

The practitioner may be asked to execute and comply with contractual agreements as part of his or her forensic litigation services. This is common for certain types and forms of ADR. Contracts also are expected in circumstances when privacy is important and confidentiality orders are not in place. In such cases, the practitioner may be asked to sign a confidentiality or nondisclosure agreement to protect confidential and proprietary information of the parties to the dispute. Similar to confidentiality orders, the practitioner must ensure that such arrangements provide for the retention of work product and working papers to comply with the document retention policy. The practitioner also may want to consider seeking the advice of his or her legal counsel before signing such contractual arrangements, especially if such arrangements provide for the provision of work product to third parties when such provision might constitute a waiver of privilege.

### Expert Witness Malpractice

Although cases of financial expert witness malpractice are not common, the practitioner should be aware that his or her standard of care can be challenged. An expert witness cannot be sued by an opposing party for expert witness testimony; however, the practitioner's client can ask the court to review the standard of care used by the expert witness and his or her adherence to professional standards. This right was established by the appellate court in *Mattco Forge, Inc. v. Arthur Young & Co.*, 5 Cal. App. 4th 392 (1994).

## Discovery

Discovery takes place in the time between filing the original pleadings (the complaint and answer) and beginning the trial. Discovery is the attempt to find out the facts and theories of the other party(ies). The practitioner collects the necessary facts, analyzes the facts, develops any assumptions, and reaches a conclusion.

This is a very important area for the practitioner to manage. Usually, litigation attorneys have multiple cases running at one time. As a result, their schedules get hectic, and they will rely on the practitioner to maintain the follow-up and constant reminders needed to keep the discovery process moving. In many instances, the attorney relies on the practitioner to identify the specific records needed to complete the analysis necessary to form an opinion. In basic terms, this often means that the practitioner's communication with the attorney will be delayed or limited. Furthermore, it is in the practitioner's best interest to understand what time commitments are necessary to meet the various deadlines in each case. Otherwise, practitioners may find themselves having to complete a large amount of work at the last minute and possibly not having sufficient relevant data upon which to base an opinion.

---

[fn 9] Effective December 1, 2010, Rule 26 of the *Federal Rules of Civil Procedure* was amended to provide that draft reports of experts are no longer discoverable

## Interrogatories

Interrogatories are often the first discovery device used. They are written questions put forward by one party and served on the opposing party, who must answer the questions in writing, under oath. Interrogatories serve as an excellent tool to obtain information when little, if anything, is known about the opposing party. The practitioner's special knowledge of business or a particular industry can help in constructing questions to develop a thorough understanding of an organization's systems, documentation and structure. For example, the nature and extent of the opposing party's financial reporting and management information systems are possible areas of inquiry. The names and title of officer or principals in the business also can be obtained for further discovery of their files.

## Request for Production of Documents

A request for production of documents requires one party to provide the opposing party with documents in its possession that are relevant to the issues in the case. These requests usually follow the interrogatories. The requests must be very specific, or the opposing party may not produce the documents, even when the information sought is apparent. Therefore, each party needs to request exact titles of reports, culled from the information already obtained through interrogatories or depositions.

## Depositions [fn 10]

A deposition is the oral testimony of a witness questioned under oath by an attorney. The questions and answers are transcribed by a court reporter who records the testimony in a written document that can be used in court. In a litigation engagement, the practitioner may give the deposition or assist the attorney in taking the deposition.

The opposition's attorney usually takes the deposition of the practitioner retained as an expert witness in a civil case (depositions generally are not taken in criminal matters). The attorney does this to understand the practitioner's background, reasoning, and opinions in the case. Often, the deposition affords the only opportunity prior to the trial for the opposing attorney to question the expert witness in depth. The opposing attorney uses the deposition to evaluate the practitioner's strengths and weaknesses as a trial witness and to develop a comprehensive understanding of this expert's opinions, studies, and analyses. However, some experienced attorneys prefer not to question an expert in depth at a deposition because it allows the expert to thoroughly test theories and approaches and then correct them as needed for the trial. Questions at the deposition usually cover the work performed by the practitioner, including rejected analyses and unused information. In addition, the deposition can be used to narrow the scope of the practitioner's testimony at the trial because anything said at the deposition can be used to impeach the practitioner's credibility at the trial. Therefore, the practitioner's testimony in the deposition needs to be consistent with the testimony at the trial.

Once the practitioner is named as an expert witness, the practitioner needs to understand that he or she must be independent as a fact finder for the court and is not an advocate for his or her party as he or she may have been if he or she were initially retained as a consultant. Conversely, the practitioner also should be aware that the attorney works for the attorney's client, and the practitioner may wish to en-

---

[fn 10] See appendix C, "Deposition and Trial Testimony Tips."

gage or consult with his or her own counsel during a challenge of his or her expert opinion or a Daubert challenge.

During a deposition, the practitioner must answer honestly because he or she is required to do so not only for ethical standards but also because he or she is under oath and the penalty of perjury. Therefore, it is critical that weaknesses the practitioner uncovers during discovery should be communicated to legal counsel as soon as possible. In addition, the practitioner should answer questions without volunteering additional information. The practitioner should read the deposition transcript carefully before signing and again before testifying at the trial because it often will serve as a script for the cross-examination by opposing counsel.

Depositions of experts in federal cases are covered by the *Federal Rules of Evidence* and the *Federal Rules of Civil Procedure*, as discussed in various areas of this practice aid, and are not an absolute right of the opposing party. Usually, agreement by both sides or the direction of the court is required to obtain an expert's deposition.

Although the only person who can ask questions at a deposition is the attorney, a practitioner can provide highly valuable assistance to the attorney during the examination of business people, particularly those in the financial or accounting areas. Frequently, the attorney asks the practitioner to assist at a deposition in examining the opposition's expert or accounting personnel. The practitioner knows the language of business, including technical terminology, and usually can detect a witness's uninformative answer or a sign of weakness that the attorney might miss. The practitioner can suggest additional questions to the attorney by passing notes during the deposition or at meetings during breaks.

In this way, the practitioner can help identify an inconsistency or expose a flaw in testimony. To the extent that the practitioner can be present to assist the attorney in taking a deposition, he or she should do so. Even if the practitioner does not identify weaknesses, he or she can assist in assessing the strength of an opposing expert's position and pass notes to get further clarification or rationale on technical points, which may help avoid faulty future assumptions.

Even an attorney who does not request the practitioner's presence at the deposition often will ask the practitioner to draft questions for the deposition. These questions have two aims: (*a*) to clarify the opposing expert's analysis and (*b*) to point out problems, inconsistencies, and errors in the analysis. This is also one of the best times during the discovery process to gain an understanding of the opposing party's position and the underlying basis thereof.

Again, attorneys differ in approach. Some believe it is unwise to make the witness aware of analytical flaws at the deposition. They prefer to withhold this information for use at the trial. Others believe that the deposition can be used to point out the weaknesses in their opponent's case, thus encouraging settlement or, at a minimum, getting the expert to correct a presentation for use at the trial.

## Subpoenas

A subpoena commands a person to appear in court. The subpoena ad testificandum commands a person to appear and testify as a witness. The subpoena duces tecum commands a person to produce documents in court that are then designated as evidence.

The subpoena is frequently the only method of obtaining information from third parties not related to the litigation. The recipient of a subpoena who refuses to cooperate can be found in contempt of court and jailed until agreeing to cooperate.

A party, including the practitioner hired for the case, may file an objection to a subpoena with the court, thus requiring a hearing on the relevance and propriety of materials demanded. This practice is not recommended because it might create a conflict between the practitioner and client, delay the trial, and generate costly legal fees. Occasionally, however, it may be necessary for the practitioner to object if a subpoena requests irrelevant documents or materials related to other clients. Often, the opposing attorneys can reach an agreement on how much they will try to discover about the practitioner expert and thereby avoid issuing subpoenas or filing objections.

The opposing counsel may wish to explore deeply the records of other nonparty clients of the practitioner through the subpoena and deposition process. A practitioner needs to be careful not to violate the "Confidential Client Information Rule," [fn 11] which requires the practitioner to maintain client confidentiality. The practitioner has a duty to comply with only a validly issued subpoena and, therefore, may find it necessary to test and verify the subpoena's validity before revealing confidential client information. In addition, for nonparty tax clients of the practitioner as of January 1, 2009, the IRS now requires under Internal Revenue Code Section 7216 the client's express written consent prior to the release of any taxpayer information. Therefore, it is imperative that if there is any question to the validity of the subpoena as it relates to a violation of client confidentiality, the practitioner should consult with his or her own firm's legal counsel before proceeding.

## Requests for Admissions

A request for admission is used to obtain the opposing party's verification of information as fact. The request must be relevant to the litigation. Verifying the information as fact usually is adverse to the interest of the party making the admission.

Requests for admissions help narrow the factual issues litigated at the trial. Any facts that both parties agree upon prior to the trial do not have to be demonstrated at the trial. This can greatly decrease the time it takes to try a case and is therefore favored by the judiciary. The practitioner can suggest the types of facts that the opposing party could admit prior to a civil litigation trial. The practitioner also can assist the attorney in developing arguments about why certain business facts should or should not be admitted prior to the trial.

## Other Discovery Issues

Documents or data obtained through the discovery process need to be organized. The practitioner can help in categorizing the information, developing or maintaining a retrieval system for it, and summarizing it for testimony. Information should be bates-stamped to the extent possible. This will aid the practitioner in organizing and referencing the data used in forming his or her opinion. The practitioner must be able to produce for the opposing counsel the information that he or she reviewed, considered, or obtained in the course of the discovery process.

Discovery includes obtaining third party documents and data, which usually take the form of industry, competitive, or economic information. If the information obtained is from another client, without that client's express consent to use it for litigation, or from a source that will not allow its disclosure, then it probably cannot be used to support an opinion at the trial.

---

[fn 11] AICPA, *Professional Standards*, ET sec. 301 par. .01

Economic and financial data are frequently available from computerized databases. To use this information effectively, the practitioner needs to understand and validate how the data are input into the databases, as well as how the people who maintain the databases can manipulate the information. Documents or information from databases that are collected and support the practitioner's assumptions, conclusions, or opinions need to be properly organized and referenced in working papers. Extraneous materials that do not affect the assumptions, conclusions, or opinions may be removed, but the removal of this extraneous information should be discussed with the client or the client's attorney for any possible consequences.

Normally, a proper foundation must be established for testimony and documentary evidence submitted during a trial. Typically, witnesses cannot testify about information told to them by a third party. The authors, recipients, or custodians must authenticate documents submitted as evidence. Otherwise, the testimony or written evidence may be classified as hearsay or may lack a proper foundation and may be excluded from the trial. However, several exceptions to the hearsay rule may affect a practitioner acting as an expert witness. Under the *Federal Rules of Evidence*, an expert witness is allowed wide latitude in what he or she may rely upon to formulate an opinion. An expert, in forming an opinion, may rely on information that otherwise would be deemed hearsay if admitted to prove something. Such items include research and academic literature available in the expert's field, as well as consultations with other experts and interviews with parties who have relevant information. The testimony may be based on the expert's research, interviews, and conversations.

Another important exception to the hearsay rule relates to business records, which include journals, ledgers, files, correspondence, financial statements, and other records created or maintained in the normal course of business. The practitioner expert witness may rely on such records without auditing them. Of course, if the opposing side shows any inaccuracies or deficiencies in such records during cross-examination or surrebuttal, the disclosure may have an impact on how the trier of fact weighs the expert's opinion.

## Overview of Alternative Dispute Resolution

Alternative dispute resolution (ADR) refers to a group of processes and procedures used to settle a dispute outside of litigation. It is common for ADR to be required under the terms of contractual agreements or to be mandated by courts and judges prior to the trial. In addition, many disputing parties prefer ADR for a variety of reasons. In ADR, formal rules and protocols usually are relaxes, compared with formal litigation, often reducing the time, effort, and cost to resolve a dispute. Further, many disputing parties believe that control over the resolution process is greater using ADR.

A practitioner may be engaged by his or her clients to assist with ADR proceedings as either an expert witness or a consultant. Additionally, depending on the qualifications of the practitioner, he or she may be engaged by the disputing parties to serve as a neutral decision maker, a special master, a mediator, or an arbitrator. ADR engagements typically require a specially tailored arrangement letter between the practitioner and the disputing parties and often preclude ex parte, or one party in the absence of the other, communications.

There are a number of different ADR procedures utilized to resolve disputes. Two of the more common procedures are mediation and arbitration.

## Mediation

Mediation is an ADR process in which parties to a dispute voluntarily meet with a neutral third party, or mediator, to try to resolve their differences and reach a mutually agreeable settlement. The mediator is jointly selected by the parties. The mediator does not render an opinion. The mediator's role is to view the dispute objectively and to assist the parties in exploring various alternatives to settling their dispute.

There are a number of benefits to using the ADR process of mediation, including the following:

- Control. In mediation, the parties have active roles in the process, from selecting the mediator to agreeing on an outcome.

- Speed. Mediation can occur very early during a dispute. Mediation is less formal than litigation, thus increasing the chances for a quick resolution.

- Cost. Parties that choose mediation tend to save money on legal fees and staff time.

- Confidentiality. Unlike litigation, the mediation process lends itself to private and confidential meetings and settlements.

The mediation process has several phases and activities. Mediation is less formal than arbitration and litigation. The mediator does not conduct evidentiary hearings and parties to the dispute do not call witnesses to provide direct testimony. Rather, the mediator holds a series of joint and separate meetings in an effort to understand the dispute and help the parties reach a mutually agreeable settlement. Thus, the practitioner will not be retained as an expert witness for mediation. However, the practitioner can provide a number of different services and contribute significant value to this process as consultant. A brief description of the phases or activities involved in mediation and ways the practitioner can provide valuable services are included in the following chart.

| Phase | Phase or Activity Description | Practitioner's Potential Services |
|---|---|---|
| Dispute | A dispute is the subject of the potential or ending mediation. | • Dispute development and preparation<br>• Fact finding<br>• Investigation |
| Pre-request for Mediation | Prior to filing a formal request for mediation, the parties will gather information related to the dispute. | • Assist in preparing the request for mediation<br>• Case assessment<br>• Case budgeting<br>• Fact finding |
| Request for Mediation | Mediation is a voluntary process. Parties to a contract often include a mediation clause to provide a quick and cost-effective method to resolve future disputes. The mediation clause | • Review resumes of potential mediators |

| Phase | Phase or Activity Description | Practitioner's Potential Services |
|---|---|---|
| | may include, among other items, the name of the organization to administer the mediation proceedings, the required qualifications for the mediator and the locale in which mediation meetings will take place. Depending on the administering organization, a copy of the mediation clause may be required when completing a formal request for mediation.<br><br>However, even if the parties failed to include a mediation clause in the contract, many organizations will agree to administer mediation if both parties agree in writing. | • Develop interview questions for potential mediators (if allowed) |
| Preparation for Mediation Conference | In order to assist the mediator to better understand the issues of the dispute, the mediator may require the parties to do any number of tasks prior to the mediation conference, such as participate in a telephone conference call or file briefs. | • Case strategy<br><br>• Case assessment<br><br>• Preparation of materials to support claim<br><br>• Assistance in preparation of pre-mediation briefs |
| Mediation Conference | At the beginning of the mediation conference, the mediator will describe the mediation procedures and establish the ground rules. Next, at a joint meeting, each party will have an opportunity to discuss the dispute, respond to opposing party's comments, and present ideas as to how the parties can resolve their dispute. If the joint meeting is not progressing towards settlement, the mediator may find it more beneficial to split the parties up and conduct separate meetings. The mediator will then move back and forth between parties, discussing the pros and cons of each party's position in an attempt to move the parties closer to settlement. When appropriate, the mediator can bring the parties together again to conduct a joint meeting. | • Assistance with case presentation<br><br>• Case assessment<br><br>• Settlement assistance |
| Settlement | If the parties are able to reach a settlement, they should formalize the terms of the settlement in writing. However, if the parties are unable to reach a settlement during mediation, they can agree to submit their case to arbitration. If the parties do not agree to submit the case to arbitration, the next step will most likely be litigation. | • Case settlement<br><br>• Settlement assistance |

## Arbitration

Arbitration is an ADR process in which parties to a dispute submit their case to one or more impartial persons, or arbitrators, for a final and binding decision. The arbitrators conduct hearings in which they receive evidence, including oral testimony. The arbitrators' decision, or award, is binding on the parties and enforceable by law.

There are a number of benefits to using the ADR process of arbitration, including the following:

- Control. In arbitration, the parties mutually select the arbitrators and can limit the issues to be re-solved by the arbitrators.

- Speed. Unlike litigation, there is no docket for arbitration. Thus, the speed to which an arbitration matter can be resolved is limited only by the willingness of the parties to resolve their dispute. Additionally, because arbitration decisions are final and binding, there is no delay resulting from appeals.

- Cost. Parties that choose arbitration tend to save money on legal fees and staff time.

- Confidentiality. Unlike litigation, arbitration hearings and awards are generally kept private and confidential.

The arbitration process has several phases and activities. The practitioner can provide a number of different services and contribute significant value to this process as an expert witness or consultant. A brief description of the phases or activities involved in arbitration and ways the practitioner can provide valuable services are included in the following chart.

| Phase | Phase or Activity Description | Practitioner's Potential Services |
|---|---|---|
| Dispute | A dispute is the subject of the potential or pending arbitration. | - Dispute development and preparation<br>- Fact finding<br>- Investigation |
| Pre-agreement to Arbitrate | Prior to filing a formal agreement to arbitrate, the parties will gather information related to the dispute. | - Assist in preparing the agreement to arbitrate<br>- Case assessment<br>- Case budgeting<br>- Fact finding<br>- Third party corroboration |
| Agreement to Arbitrate | Arbitration is a voluntary process. Parties to a contract often include an arbitration clause to provide a quick and cost-effective method to resolve future disputes. The arbitration clause may include, among other items, the name of the organization to administer the arbitration proceedings, the required qualifications for the arbitrators and the locale in which arbitration hearings will take place. Depending on the administering organization, a copy of the arbitration clause may be required when completing a | - Case management<br>- Case strategy (consulting expert only) |

| Phase | Phase or Activity Description | Practitioner's Potential Services |
|---|---|---|
| | formal agreement to arbitrate. However, even if the parties failed to include an arbitration clause in the contract, many organizations will agree to administer arbitration if both parties agree in writing. | |
| Selection of the Arbitrators | The parties mutually select the arbitrators. Arbitrators have experience and knowledge from a wide variety of disciplines. While not a requirement, many arbitrators are attorneys or former judges. | • Review resumes of potential arbitrators<br><br>• Develop interview questions for potential arbitrators (if allowed) |
| Preliminary Hearing | The parties and the arbitrators will meet to discuss the case and to establish a schedule which will serve as a roadmap for the arbitration. The schedule will set the dates for the arbitration hearing and will provide deadlines for the filing of preliminary briefs, the exchange of documents and reports, and the disclosure of witness lists. | • Case strategy (consulting expert only)<br><br>• Case assessment |
| Preparation for Arbitration Hearing | Based upon the schedule agreed upon at the preliminary hearing, the parties will exchange information and will file documents with the arbitrators. At the conclusion of this phase, both parties should be prepared to present their case at the arbitration hearing. | • Case strategy (consulting expert only)<br><br>• Case assessment<br><br>• Assistance in preparation of briefs<br><br>• Drafting of document requests<br><br>• Document, data, and evidence identification, recovery, analysis, and management<br><br>• Preparation of expert report<br><br>• Analysis and rebuttal of opposing expert report<br><br>• Arbitration hearing preparation |
| Arbitration Hearing | Much like a trial, the parties will present evidence to the arbitrators for their consideration. Witnesses will be called to provide direct testimony. Scheduling or calendaring order of the witness by opposing counsel is allowed. Additionally, the arbitrators are allowed to ask the witness questions. The arbitration hearing will conclude after both sides have presented their case to the arbitrators. The arbitrator may require the parties to submit post-hearing briefs to clarify issues that may have arisen during the arbitration hearing. | • Expert witness testimony<br><br>• Witness preparation<br><br>• Analysis of opposing expert testimony and cross-examination assistance<br><br>• Assistance with preparation of post-hearing briefs |

| Phase | Phase or Activity Description | Practitioner's Potential Services |
|---|---|---|
| The Award | After the hearing has been completed and all final documents have been submitted, the arbitrators will render their decision, or award, usually within 30 days. The decision, or award, is final and binding on both parties | • Analysis of award |

## Overview of Civil Litigation [fn 12]

Civil litigation arises from disputes that are either actions in tort statute or actions in contract. **Tort** actions are civil wrongs that result in a remedy of damages to the harmed party. Contract actions stem from breaches or other violations of contractual terms. During the litigation process, the party initiating a civil complaint, referred to as the plaintiff, and the party subject to the plaintiff's complaint, referred to as the defendant, may each engage litigation support professionals to assist with the dispute proceedings.

The civil litigation process has several phases and activities. The practitioner can provide a number of different services and contribute significant value to the process as an expert witness or a consultant. A brief description of selected phases or activities involved in a dispute and how the practitioner can provide valuable services are included in the following chart.

| Phase | Activity | Phase or Activity Description | Practitioner's Potential Services |
|---|---|---|---|
| Dispute | | A dispute is the subject of the potential or pending litigation or a disputed fact, claim, or allegation from one side (the plaintiff) met by the contrary fact, claim, or allegation by the other side (the defendant). | • Dispute development and preparation<br><br>• Early dispute resolution<br><br>• Fact finding<br><br>• Investigation |
| Pre-complaint | | Prior to filing a formal complaint, the potential plaintiff and defendant gather information related to the dispute | • Complaint preparation<br><br>• Case assessment<br><br>• Case budgeting<br><br>• Fact finding<br><br>• Third party corroboration |

---

[fn 12] See AICPA FVS Section Practice Aid, *Introduction to Civil Litigation Services*, for more information.

| Phase | Activity | Phase or Activity Description | Practitioner's Potential Services |
|---|---|---|---|
| Complaint [fn 13] | | Initiated by the plaintiff, the original or initial complaint is the first pleading in a formal civil litigated proceeding. The complaint names the defendant, identifies, the court having jurisdiction, and describes the legal complaints and remedies or relief requested. The plaintiff files the complaint with the court. The official notification of the complaint to the defendant requires official service, or delivery by a court appointed server. | • Case management<br>• Case strategy (consulting only)<br>• Class action certification<br>• Motion support |
| | Motions | Motions are requests by the disputing parties to have the court make a specified ruling or order in the case. Motions commonly encountered by the practitioner may include a scheduling or calendaring motion, a motion for summary judgment requesting the court to decide on judgment before the trial, a motion to compel discovery to order a response to a valid discovery request, or a motion to dismiss the complaint. | • Preparation of materials to support the motion<br>• Drafting document request lists |
| | Rulings and Orders | Rulings are the decisions made by the court or judge on disputed legal issues or case matters. These represent the opinions and judgment of the court or judge. Orders are the commands, directions, and instructions of the court or judge. | • Reviews of rulings and orders for insight into court proceedings (that is, timing, discovery, procedures, and so on) |
| Answer or Response | | In response to the complaint, the defendant prepares a pleading called an answer or response, which denies or admits each of the allegations made by the plaintiff. | • Preparation of materials or verbiage for answer or response<br>• Response preparation<br>• Counterclaim preparation |
| Discovery | | Discovery is the exchange of information and knowledge between the parties after the case has been filed in order assemble evidence for the trial. | • Case strategy (consulting only) |
| | Interrogatories | These are written questions prepared and submitted to an opposing party, which require written answers under oath. | • Assistance with questions for interrogatories<br>• Assistance with responses to interrogatories |

[fn 13] See appendix I, "Sample Court Document (One Page Complaint)."

| Phase | Activity | Phase or Activity Description | Practitioner's Potential Services |
|---|---|---|---|
| | Requests for admissions | These are formal written requests for an opposing party to agree to, or admit the accuracy of, undisputed facts. | • Settlement assistance |
| | Stipulations | These are voluntary agreements between opposing parties about any matter relevant to the dispute | • Settlement assistance |
| | Requests for production of documents | These are requests to have an opposing party produce, or make available for inspection and duplication, certain specifically identified materials believed to be potentially relevant to the dispute. The materials may be hard copies of electronically stored information. | • Drafting production requests and responses<br>• Document, data, and evidence identification, recovery analysis, and management |
| | Written sworn statements (affidavits) and declarations | A sworn statement, or an affidavit, is a written and signed out-of-court statement or account given under oath. A declaration is a signed and written out-of-court statement. | • Expert witness affidavit<br>• Rebuttal of opposing expert affidavit<br>• Analysis of case documents<br>• Damages quantification<br>• Expert report<br>• Analysis and rebuttal of opposing expert report |
| | Expert reports | Written reports prepared by the practitioner, or other experts based on the report requirement, such as under Rule 26, "Duty to Disclose; General Provisions Governing Discovery," of the *Federal Rules of Civil Procedure* for a federal case. | • Expert report<br>• Analysis and rebuttal of opposing expert report |
| | Depositions | Out-of-court oral testimony given by a witness or expert under oath and reduced to writing, usually by a certified court reporter. | • Deposition assistance<br>• Expert witness deposition testimony<br>• Rebuttal of opposing expert testimony<br>• Witness preparation |
| Pretrial | | Prior to the trial, the disputes may be narrowed by using information obtained during discovery, through court hearings, and by rulings made and orders issued by the judge as a result of numerous pleadings, motions, and ob- | • Trial preparation<br>• Trial demonstratives |

| Phase | Activity | Phase or Activity Description | Practitioner's Potential Services |
|---|---|---|---|
| | | jections registered over the course of litigation | • Settlement and resolution support |
| | Pretrial conference | In most federal cases, a conference is ordered prior to the commencement of the trial to encourage the parties to settle their disputes | • Settlement and resolution support |
| | Settlement | Settlement of all or a portion of the litigated dispute may take place at any time during the litigation process. Settlement occurs when the disputing parties agree on the outcome and resolution of the claims in the complaint. | • Settlement and resolution support <br><br> • Settlement assistance |
| Trial | | The trial can be either a jury or bench trial (a judge serves as the trier of fact). | • Jury selection |
| | Direct examination | Direct examination is the initial questioning of a witness at the trial by the attorney who calls the witness for examination. Direct examination consists of a series of questions designed to solicit admissible evidence from the witness in the form of responsive testimony and other materials. | • Expert witness testimony <br><br> • Witness preparation <br><br> • Analysis of opposing expert testimony |
| | Cross-examination | The initial examination of a witness by the opposing legal counsel, cross-examination follows the direct examination. The opposing attorney can use leading questions that are prohibited in direct examination, and frequently, deposition testimony is used to impugn the witness. | • Opposing expert cross-examination assistance <br><br> • Trial preparation <br><br> • Witness preparation |
| Post-trial | | After the trial is concluded, a number of activities may occur, including appealing adverse decisions or calculating and distributing monetary damages. | • Calculation of beneficiary allocation <br><br> • Distribution of judgments and awards |
| | Calculation and Distribution of Judgments and Awards | Prepare a final calculation of the amount of damages, including applicable pre- and post-judgment interest, and any penalties, attorney fees; or exemplary punitive, or other damages awarded by the court. | • Calculation of amounts awarded |

Appendix J, "Case Study — Shareholder Dispute," demonstrates a simple shareholder dispute as it goes through the civil litigation process.

## Overview of Criminal Proceedings

The practitioner also may serve as an expert witness or a consultant in criminal litigation. In some cases, civil claims and criminal charges may be filed together, requiring consideration of the unique aspects of criminal litigation and the consulting services to be provided. Differences exist between the federal civil and criminal litigation processes, some of which are described herein. However, much of the guidance related to civil litigation contained in this practice aid also may apply to criminal litigation support engagements.

In criminal litigation, the federal government attempts to identify and arrest individuals involved in illegal criminal activity and successfully convict, punish, and fine the violators, as provided under the law. The risk of punishment, including imprisonment, drives many of the differences between the civil and criminal litigation processes.

In criminal litigation, the party that brings the criminal complaint is the prosecution, and the legal counsel leading the case is the prosecutor. The party subject to the criminal claims is the defendant, just as in a civil litigation case. The prosecutor always represents the federal government, frequently referred to as *the State*, even when the prosecuting party is the U.S. federal government.

The Constitution provides increased protection to a criminal defendant, as compared with a civil defendant. The Fourth Amendment of the Constitution prohibits unreasonable search and seizure. [fn 14] The Fifth Amendment protects the defendant from unwanted self-incrimination, requires a grand jury indictment for specified crimes, prohibits double jeopardy, and provides the right to due process. [fn 15] The Sixth Amendment guarantees the right for a trial by a jury of peers, the right to be represented by legal counsel, and other measures. [fn 16]

Most of the time, the practitioner's involvement in criminal litigation cases will be limited to white collar crimes, such as fraud, financial statement misrepresentation, or insider trading, and will focus on financial forensic investigation procedures designed to identify and reconstruct the improper and potentially illegal flow of monies.

This section of the practice aid also provides a chart to assist the practitioner with the provision of consulting services for federal criminal litigation matters. State and local criminal litigation processes, law, rules, and regulations are numerous and may vary greatly and, therefore, have not been included in the scope of this practice aid.

The criminal litigation process consists of several phases and activities. Typically, a substantial part of the practitioner's work is performed and completed, and the associated evidence is gathered, at the front end of the engagement in anticipation of the grand jury proceedings. The practitioner can create substantial value through expert witness and consultant services during this process and for these activities.

---

[fn 14] See www.law.cornell.edu/constitution/billofrights.

[fn 15] Ibid.

[fn 16] Ibid.

| Phase | Activity | Phase or Activity Description | Practitioner's Potential Services |
|-------|----------|------------------------------|-----------------------------------|
| Investigation | | The federal criminal litigation process usually stars with an investigation of suspicious activities or suspected crimes by an authorized federal governmental unit. [fn 17] | • Assist with federal governmental investigation, such as suspected financial statement fraud, tax crimes, money laundering, or corrupt practices<br><br>• Case assessment<br><br>• Document management |
| Indictment—federal crimes | | These are some of the federal crimes likely to be serviced by the practitioner in criminal litigation support engagement:<br><br>   • Anti-money laundering law violations<br><br>   • Antitrust law violations<br><br>   • Bail crimes (for example, fraudulent conveyance and illegal preferential payments)<br><br>   • Federal income tax crimes (for example, conspiracy, false returns, tax evasion, and fraud)<br><br>   • Federal financial institution law and regulatory violations<br><br>   • Federal health care law violations<br><br>   • Federal financial statement fraud crimes involving public companies<br><br>   • Federal securities law violations | • Case assessment based on alleged regulatory violation<br><br>• Indictment assistance<br><br>• Grand jury testimony<br><br>• Document management<br><br>• Case strategy (consulting only) |

---

[fn 17] Federal investigations may involve the following agencies and departments among others: Bureau of Alcohol, Tobacco, Firearms, and Explosives; Department of Labor; Drug Enforcement Administration; FBI; Department of Health and Human Services; Department of the Interior; Department of Justice and the associate U.S. Attorneys General ; Department of the Treasury; IRS; Securities and Exchange Commission; U.S. Postal Service; U.S. Secret Services.

| Phase | Activity | Phase or Activity Description | Practitioner's Potential Services |
|---|---|---|---|
| | Grand jury | The grand jury reviews the evidence and must decide whether to issue an indictment. However, it differs from a civil trial because the jury has subpoena power to compel witness appearance, and no defendant defense is presented. | • Grand jury testimony<br><br>• Indictment fact assistance |
| Discovery | | The discovery process typically is accelerated in criminal litigation to protect the defendant's rights and ensure a speedy trial. | |
| | Evidence gathering | The federal government, depending on the alleged crimes and violations of law, may be able to use surveillance and other investigative methods such as undercover observation and wiretapping to gather admissible evidence. In addition, evidence developed for a civil trial can be admissible in a criminal trial. | • Document production requests and responses<br><br>• Document, data, and evidence identification, recovery, analysis, and management |
| | Subpoenas and warrants | Subpoenas are used extensively in criminal cases to compel reluctant or uncooperative witnesses to provide testimonial evidence. In addition, warrants are used to legally search for and seize potential evidence for criminal litigation. | • Document production requests and responses<br><br>• Document, data, and evidence identification, recovery, analysis, and management |
| Trial | | Criminal trials are jury trials, with limited exception. The evidence admissible in a federal criminal trial receives a higher level of scrutiny by the court than the evidence in most civil trials. | • Trial preparation<br><br>• Trial demonstratives |

# Appendix A: Glossary [fn 18]

This is not an exhaustive list of litigation terms. However, the terms defined in this glossary are frequently used during litigation proceedings and are included for the benefit of the users of this practice aid.

**access code.** An identification number or password used to gain access to a computer system

**accountant-client privilege.** The protection afforded to a client from an accountant's unauthorized disclosure of materials submitted to, or prepared by, the accountant. This privilege is not widely recognized.

**accounting package.** A program or group of programs intended to help a business owner automate a firm's accounting procedures. Though accounting packages have grown easier to use recently, they still often require a level of accounting expertise and tedious data entry.

**acquittal.** The legal certification, usually by jury **verdict**, that an accused person is not guilty of the charged offense.

**admissibility.** The quality or state of being allowed to be entered into evidence in a hearing, trial, or other legal proceeding.

**affidavits** (written sworn statements). A voluntary declaration of facts written down and sworn to by the declarant before an officer authorized to administer oaths, such as a notary public.

**alternative dispute resolution (ADR).** A procedure for settling a dispute by means other than litigation, such as arbitration or mediation.

**American Bar Association.** A voluntary national organization of lawyers organized in 1878. Among other things, it participates in law reform, law school accreditation, and continuing legal education in an effort to improve legal services and the administration of justice.

**answer.** A defendant's first pleading that addresses the merits of the case, usually by denying the plaintiff's allegations.

**antitrust law.** The body of law designed to protect trade and commerce from restraints, monopolies, **price-fixing**, and **price discrimination**. The principal federal **antitrust laws** are the Sherman Act and Clayton Act.

**appeal.** A proceeding undertaken to have a decision reconsidered by a higher authority, especially the submission of a lower court's or agency's decision to a higher court for review and possible reversal.

---

[fn 18] Unless otherwise noted, all litigation related definitions are derived from *Black's Law Dictionary*, 8th ed.,(St. Paul, MN: West Publishing Company, 2004) and all computer related definitions are derived from Webster's *New World Computer Dictionary*, 10th ed. (Indianapolis, IN: John Wiley & Sons, Inc., 2003).

**apportionment.** Division into proportionate shares, especially the division of rights and liabilities between two or more persons or entities.

**arbitration.** Method of dispute resolution involving one or more neutral third parties who usually are agreed to by the disputing parties and whose decision is binding.

**arbitrator.** A neutral person who resolves disputes between parties, especially by means of formal arbitration.

**arraignment.** The initial step in a criminal **prosecution** whereby the defendant is brought before the court to hear the charges and enter a plea.

**assurance services.** An audit, review, compilation, or other attestation performed in compliance with applicable AICPA and other professional standards. [fn 19]

**attorney-client privilege.** The attorney's client's right to refuse to disclose, and to prevent any other person from disclosing, confidential communications between the client and the attorney.

**attorney work product privilege** (work product rule). Qualified immunity of an attorney's work product from discovery or other compelled disclosure.

**audit trail.** In an **accounting package**, any program feature that automatically keeps a record of transactions so that one can backtrack to find the origin of specific figures that appear on reports.

**bail.** (1) A statutory procedure by which a (usually insolvent) debtor obtains financial relief and undergoes a judicially supervised reorganization or liquidation of the debtor's assets for the benefit of creditors. (2) A case under the Bankruptcy Code (*Bankruptcy, U.S. Code* [USC] 11).

**bates-stamp.** To affix a mark, usually a number, to a document or the individual pages of a document for the purpose of identifying and distinguishing it in a series of documents.

**bench trial.** A trial before a judge without a jury.

**bifurcated (trial).** A trial divided into two stages, such as for liability and damages.

**bribery.** The corrupt payment, receipt, or solicitation of a private favor for official action.

**brief.** (1) A written statement setting out the legal contentions of a party litigation, especially on appeal. (2) A document prepared by an attorney as the basis for arguing a case consisting of legal and factual arguments and the authorities in support of them.

**bulk storage.** Devices used to store massive amounts of computer data, including clusters of hard drives, optical disks, and magnetic tape. Synonymous with mass storage.

**burden of proof.** A party's duty to prove a disputed assertion or charge.

---

[fn 19] Source: AICPA Litigation Consulting Task Force of the 2008 AICPA Forensic and Valuation Committee.

**burn.** To record data on a writable optical disc, such as a CD-R, CD-RW, DVD-R, DVD-RW, DVD-RAM disk.

**business interruption insurance.** An agreement to protect against one or more kinds of loss from the interruption of an ongoing business, such as a loss of profits while the business is shut down to repair fire damage.

**calendaring or scheduling order.** A schedule of the time of court appearances.

**case evaluation.** A method of nonbinding dispute resolution involving a neutral third party who tries to help the disputing parties reach a mutually agreeable solution (conciliation).

**case-in-chief.** The evidence presented at the trial by a party between the time the party calls the first witness and the time the party rests.

**causation.** A cause that directly produces an event that without which the event would not have occurred.

**chain of custody.** The movement and location of real evidence, and the history of those persons who had it in their custody, from the time it is obtained to the time it is presented in court.

**chain of evidence.** The sequencing of the chain of evidence follows this order: identification and collection, analysis, storage, preservation, transportation, presentation in court, and return to owner. The chain of evidence shows who obtained the evidence, where and when the evidence was obtained, who secured the evidence, and who had control or possession of the evidence. [fn 20]

**civil litigation.** (1) Litigation regarding a civil action brought to enforce, redress, or protect a private or civil right. (2) A noncriminal litigation.

**class action.** A lawsuit in which the court authorizes a single person or a small group of people to represent the interests of a larger group.

**clients.** "[A]ny person or entity, other than the member's employer, that engages a member or a member's firm to perform professional services or a person or entity with respect to which professional services are performed." [fn 21] However, for civil litigation services, the client is usually the attorney representing an underlying party to the litigation. The underlying party represented by the attorney's client is referred to as the *attorney's client*.

**closing arguments.** In a trial, an attorney's final statement to the judge or jury before deliberation begins in which the attorney requests the judge or jury to consider the evidence and apply the law in his or her client's favor.

**complaint.** The initial pleading that starts a civil action and states the basis for the court's jurisdiction, the basis for the plaintiff's claim, and the demand for relief.

---

[fn 20] Source: www.edrm.net/resources/glossaries/glossary.

[fn 21] Source: Paragraph .03 of ET section 92, *Definitions* (AICPA, *Professional Standards*).

**confidentiality or nondisclosure agreement.** (1) An agreement that protects confidential information or an agreement of secrecy. (2) An agreement protecting the state of having the dissemination of certain information restricted.

**confidentiality order.** A court order prohibiting or restricting a party from engaging in conduct, especially a legal procedure, such as discovery, that unduly annoys or burdens the opposing party or third party witness.

**conflict of interest.** A real or seeming incompatibility between one's private interests and one's public or fiduciary duties.

**consultant (litigation).** A person or expert who, though retained by a party, is not expected to be called as a witness at the trial.

**corroboration.** Confirmation or support by additional evidence or authority.

**corruption.** (1) The act of doing something with intent to give some advantage inconsistent with official duty and the right of others. (2) A fiduciary's or official's use of a station or office to procure some benefit, either personally or for someone else, contrary to the rights of others.

**counterclaim.** A claim for relief asserted against an opposing party after an original claim has been made, especially a defendant's claim in opposition to, or as a set-off against, a plaintiff's claim.

**court-appointed expert.** An expert who is appointed by the court to present an unbiased opinion. See Rule 706, "Court Appointed Experts, "of the *Federal Rules of Evidence.*

**CPA-client privilege.** See **accountant-client privilege**.

**crime.** (1) An act that the law makes punishable. (2) The breach of a legal duty treated as the subject matter of a criminal proceeding.

**criminal proceeding.** (1) A proceeding instituted to determine a person's guilt or innocence or to set a convicted person's punishment. (2) A criminal hearing or trial.

**cross-complaint.** A claim asserted by a defendant against a person not a party to the action for a matter relating to the subject of the action.

**cross-defendant.** A defendant party to a claim asserted between co-plaintiffs or co-defendants in a case that relates to the subject of the original claim or counterclaim.

**cross-examination.** The questioning of a witness at a trial or hearing by the party opposed to the party who called the witness to testify.

**custodian.** Person having administrative control of a document or electronic file (for example, the data custodian of an e-mail is the owner of the mailbox that contains the message). [fn 22]

---

[fn 22] Source: www.edrm.net/resources/glossaries/glossary.

**custodian of records.** A person or institution that has charge or custody of records.

**damages.** Money claimed by, or ordered to be paid to, a person as compensation for loss or injury.

**database.** An application that provides the tools for data retrieval, modification, deletion, and insertion (for instance, Access, MySQL, and Oracle). Such applications also can create a database and produce reports.

**data culling.** The umbrella term used to describe the technical tactics or processes employed to reduce a large document population to a much smaller set. [fn 23]

**data custodian.** See **custodian**.

**data field.** In databases, a space reserved for a specified piece of information in a data record. In a table-oriented database management program, in which all retrieval operations produce a table with rows and columns, data fields are displayed as vertical columns.

**data manipulation.** In databases, the use of the basic database manipulation operations, such as data deletion, data insertion, data modification, and data retrieval, to make changes to data records.

**data mining.** In a data warehouse, a discovery method applied to very large collections of data. In contract to traditional database queries, which phrase search questions using a query language (such as SQL), data mining proceeds by classifying and clustering data, often from a variety of different and even mutually incompatible databases and then looking for association.

**Daubert hearing.** A hearing conducted by federal district courts, usually before the trial, to determine whether proposed expert testimony meets the federal requirements for relevance and reliability. See *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993).

**declarations.** A formal statement, proclamation, or announcement.

**defendant.** A person sued in a civil proceeding.

**demurrer.** A pleading stating that although the facts alleged in a complaint may be true, they are insufficient for the plaintiff to state a claim for relief and for the defendant to frame an answer.

**deposition.** A witness's out-of-court testimony that is reduced to writing (usually by a court reporter) for later use in court or for discovery purposes.

**de duplication.** The process of identifying and segregating those files that are exact duplicates of one another. The goal is to provide a deliverable that contains one coy of each original document while maintaining the information associated with each instance of that document with the collection. [fn 24]

---

[fn 23] Ibid.

[fn 24] Ibid.

**directed verdict.** A ruling by a trial judge taking a case from the jury because the evidence will permit only one reasonable **verdict** as a matter of law.

**directory tree.** A graphical representation of a disk's contents that shows the branching structure of directories and subdirectories. Microsoft Windows 95 and 98 Explorer, for example, display a directory tree.

**disaster recovery plan.** A written plan with detailed instructions specifying an alternative computing facility to sue for emergency processing until a destroyed computer can be replaced.

**discovery.** Compulsory disclosure, at a party's request, of information that relates to the litigation. The primary discovery devices are interrogatories, depositions, requests for admissions, and request for production.

**dispute.** A conflict or controversy, especially one that has given rise to a particular lawsuit.

**dispute resolution services.** Consulting services to assist parties with the settlement or determination of a dispute.

**dissolution of marriage.** A divorce-like remedy available when both spouses have signed a separation agreement that deals with (1) the issue of alimony (providing either some or none) and (2) if there are children, the issues of support, custody, and visitation.

**diversity of citizenship.** A basis for federal court jurisdiction that exists when (1) a case is between citizens of different states or a citizen of a state and an alien and (2) the matter in controversy exceeds a specific value (now $75,000) (*Judiciary and Judicial Procedures*, USC 28 Section 1332).

**domain.** In a computer network, a group of computers that are administered as a unit. Network administrators are responsible for all the computers in their domain. On the Internet, this term refers to all the computers that are collectively addressable within one of the four parts of an IP address. For example, the first part of an IP address specifies the number of a computer network. All the computers within this network are part of the same domain.

**double jeopardy.** The fact of being prosecuted or sentenced twice for substantially the same offense.

**drill down.** In data mining, a method of data exploration and analysis that involves more detailed examination of the data that produced a summary value or aggregate.

**driver.** A program designed to operate a specific peripheral, such as a monitor or printer.

**due diligence.** The diligence reasonably expected from, and ordinarily exercised by, a person who seeks to satisfy a legal requirement or discharge an obligation.

**dumping.** (1) The act of selling a large quantity of goods at less than fair value. (2) Selling good abroad at less than the market price at home.

**electronically stored information (ESI).** Defined in this practice aid to mean electronically stored data. See Rule 26(a)(1)(A) of the *Federal Rules of Civil Procedure* and *The Sedona Confer-*

*ence®Glossary: E-Discovery & Digital Information Management*, 2nd ed. (Sedona, AZ: The Sedona Conference®,2005), which established practices of electronic discovery.

**embezzlement.** The fraudulent taking of personal property with which one has been entrusted, especially as a fiduciary.

**ex parte.** (1) Done or made at the instance and for the benefit of one party only and without notice to, or argument by, any person adversely interested. (2) Of or relating to court action taken by one party without notice to the other, usually for temporary or emergency relief.

**expert.** A person who, through education or experience, has developed skill or knowledge in a particular subject so that he or she may form an opinion that will assist the fact finder.

**expert report.** A report prepared by an expert witness in accordance with court rules and procedures for the purpose of assisting a trier of fact and expressing the opinions of the expert witness.

**fact (lay) witness.** A witness who does not testify as an expert and who is, therefore, restricted to giving an opinion or making an inference that is (1) based on firsthand knowledge and (2) helpful in clarifying the testimony or determining facts (Rule 701, "Opinion Testimony by Lay witnesses," of the *Federal Rules of Evidence*).

**file permissions.** In a multiuser operating system, such as **Linux** or Microsoft Windows XP, a file attribute that specifies varying levels of file access for different types of file owners (individual owners, group owners, and others). Access levels include no access, read-only access, and read/write access. An additional level of access—execute access—is available for executable programs and scripts. Synonymous with permissions.

**file server.** In a local area network, a computer that stores on its hard disk the application programs and data files for all the workstations in the network. In a peer-to-peer network, all workstations act as file servers because each workstation can provide files to other workstations. In more common client and server architecture, a single, high-powered machine with a huge hard disk is set aside to function as the file server for all the workstations (clients) in the network.

**financial statement.** A balance sheet, income statement, or annual report that summarizes an individual's or organization's financial condition on a specified date or for a specified period by reporting assets and liabilities.

**forensic.** Used in, or suitable to, courts of law or public debate.

**forensic accounting services.** Services that generally involve the application of specialized knowledge and investigative skills possessed by CPAs to collect, analyze, and evaluate evidential matter and to interpret and communicate findings in the courtroom, boardroom, or other legal or administrative venue (March 2007 AICPA Council-approved definition).

**forensic techniques.** The following seven recognized forensic investigative techniques: (1) public document reviews, (2) interviews of knowledgeable persons, (3) confidential sources, (4) laboratory analysis of physical and electronic evidence, (5) physical and electronic surveillance, (6) undercover operations, and (7) analysis of financial transactions.

**forgery.** (1) The act of fraudulently making a false document or altering a real one to be used as if genuine. (2) A false or altered document made to look genuine by someone with the intent to de-

ceive. (3) Under the *Model Penal Code,* the act of fraudulently altering, authenticating, issuing, or transferring a writing without appropriate authorization.

**foundation** (that is, basis and reasons for expert witness opinions). The basis on which something is supported, especially evidence or testimony that establishes the admissibility of other evidence.

**fraud.** A knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment.

**FTP.** Acronym for file transfer protocol. An Internet standard for the exchange of files. FTP (uppercase) is a specific set of rules that comprise a file transfer protocol (note the lowercase letters).

**FTP site.** On the Internet, an Internet host running an FTP server that makes a large number of files available for downloading.

**grand jury.** A body of people (often 23) who are chosen to sit permanently for at least 1 month — and sometimes 1 year—and who, in ex parte proceedings, decide whether to issue indictments.

**hearsay.** Traditionally, testimony that is given by a witness who relates not what he or she knows personally but what others have said and that is, therefore, dependent on the credibility of someone other than the witness. Such testimony generally is inadmissible under the rules of evidence.

**hung jury.** A jury that cannot reach a verdict by the required voting margin.

**illegal.** (1) Forbidden by law. (2) Unlawful.

**indictment.** The formal written accusation of a crime made by a grand jury and presented to a court for prosecution against the accused person.

**insolvency.** (1) The condition of being unable to pay debts as they fall due or in the usual course of business. (2) The inability to pay debts as they mature.

**intellectual property.** A category of intangible rights protecting commercially valuable products of the human intellect.

**integrated accounting package.** An accounting package that includes all the following major accounting functions: general ledger, accounts payable, accounts receivable, payroll, and inventory. Integrated programs update the general ledger every time an accounts payable or accounts receivable transaction occurs.

**interrogatories.** Written questions submitted to an opposing party in a lawsuit as part of discovery.

**judgment.** A court's final determination of the rights and obligations of the parties in a case.

**judgment as a matter of law.** A judgment rendered during a jury, trial, either before or after the jury's verdict, against a party on a given issue when there is no legally sufficient basis for a jury to find for that party on the issue.

**jury trial.** A trial in which the factual issues are determined by a jury, not the judge.

**LAN.** Acronym for local area network. A computer network that uses cables or radio signals to link two or more computers within a geographically limited area (generally one building or group of buildings).

**lay (fact) witness.** See Fact (lay) witness.

**leading questions.** A question that suggests the answer to the person being interrogated, especially a question that may be answered by a mere "Yes" or "No".

**legal orders (order).** A written command, direction, or instruction delivered by a court or judge.

**legal precedent.** (1) The making of law by a court in recognizing and applying new rules while administering justice. (2) A decided case that furnishes a basis for determining later cases involving similar facts or issues.

**legal privilege.** (1) A special legal right, exemption, or immunity granted to a person or class of persons. (2) An exception to a duty.

**liability (legal).** (1) The quality or state of being legally obligated or accountable. (2) Legal responsibility to another or to society, enforceable by civil remedy or criminal punishment.

**linux.** Extremely popular **Unix**-like operating system created by Linus Torvalds that originally was designed to run on Intel-powered PCs. Linux is free, open source software distributed under the term of the GNU General Public License.

**litigant.** A part to a lawsuit.

**litigation hold.** Defined in this practice aid to mean an order to preserve records that may be relevant to a lawsuit, including any lawsuit that is "reasonably anticipated" to be filed. See *Zubulake v. UBS Warburg, 229 F.R.D. 422 (SDNY 2004) and* Cache La Poudre Feeds, LLC v. Land O'Lakes Farmland Feed, LLC, 2007 WL 684001 (D. Colo. 2007).

**lost profits.** Contracts—A measure of damages that allows a seller to collect the profits that would have been made on the sale if the buyer had not breached. Patents—A measure of damages set by estimating the net amount lost by a plaintiff inventor because of the infringing defendant's actions.

**manual journal entries.** An entry performed by hand in an accounting journal of equal debits and credits, with occasional explanations of the recorded transactions.

**market.** A place of commercial activity in which goods or services are bought and sold.

**market share.** The percentage of the market for a product that a firm supplies, usually calculated by dividing the firm's output by the total market output. In **antitrust law**, **market share** is used to measure a firm's market power, and if the share if high enough (generally 70 percent or more), then the firm may be guilty of monopolization.

**mediation.** See **case evaluation**.

**mediator.** A person serving as a neutral third party in mediation who tries to help the disputing parties reach a mutually agreeable solution.

**metadata.** The digital attributes of electronic documents that are appended to those documents either during their creation or use in their native application. Metadata is created and exists in its natural state before the electronic discovery process is initiated. The existence of metadata is referenced in the comments to the proposed *Federal Rules of Civil Procedure* and is characterized as the historical, managerial, and tracking components of a document or file; these components can be lost when the document I printed to paper or quasipaper. [fn 25]

**mirror.** To copy automatically to another storage location.

**misappropriation.** The dishonest application of another's property or money to one's own use.

**mitigate.** To make less severe or intense.

**mitigation-of-damages doctrine.** The principle requiring a plaintiff, after an injury or breach of contract, to make reasonable efforts to alleviate the effects of the injury or breach.

**mock trial.** A fictitious trial organized to allow law students, or sometimes lawyers, to practice the techniques of trial advocacy.

**motion.** A written or oral application requesting a court to make a specified ruling or order.

**motion for summary judgment.** A request that the court enter judgment without a trial because there I no genuine issue of material fact to be decided by a fact finder. That is because the evidence is legally insufficient to support a verdict in the nonmovant's favor. See Rule 56, "Summary Judgment," of the *Federal Rules of Civil Procedure*.

**motion in limine.** A pretrial request that certain inadmissible evidence not be referred to or offered at the trial. Typically, a party makes this motion when it believes that mere mention of the evidence during the trial would be highly prejudicial and could not be remedied by an instruction to disregard.

**motion to compel discovery.** A party's request that the court force the party's opponent to respond to the party's discovery request (for example, to answer interrogatories or produce documents). See Rule 37(a) of the *Federal Rules of Civil Procedure.*

**motion to dismiss.** A request that the court dismiss the case because of settlement, voluntary withdrawal, or procedural defect.

**negotiation.** (1) A consensual bargaining process in which the parties attempt to reach agreement on a disputed or potentially disputed matter. (2) Dealings conducted between two or more parties for the purpose of reaching an understanding.

**network.** A group of computers or devices that is connected together for the exchange of data and sharing of resources. [fn 26]

---

[fn 25] Ibid.

[fn 26] Ibid.

**notice of trial.** A document issued by the court informing the parties of the date on which the law-suit is set for trial.

**opening statement.** At the outset of a trial, an advocate's statement giving the fact finder a preview of the case and the evidence to be presented.

**operating system.** A master control program that manages the computer's internal functions, such as accepting keyboard input, and that provides a means to control the computer's operations and file system.

**PAN.** A computer network that is designed to serve the needs of an individual rather than a group. PANs are designed to integrate an individual's devices, including desktop computers, notebook computers, personal digital assistants (PDA), and digital cellular phones.

**plaintiff.** The party who brings a civil suit in a court of law.

**plea bargain.** A negotiated agreement between a prosecutor and a criminal defendant whereby the defendant pleads guilty to a lesser offense or to one of multiple charges in exchange for some concession by the prosecutor, usually a more lenient sentence or a dismissal of the other charges.

**pleadings.** Formal documents in which a party to a legal proceeding, especially a civil lawsuit, sets forth or responds to allegations, claims, denials, or defenses.

**precedent.** See legal precedent.

**predatory pricing.** (1) Unlawful below-cost pricing intended to eliminate specific competitors and reduce overall competition. (2) Pricing below an appropriate measure of cost for the purpose of eliminating competitors in the short run and reducing competition in the long run.

**pretrial conference.** An informal meeting at which opposing attorneys confer, usually with the judge, to work toward the disposition of the case by discussing matters of evidence and narrowing the issues that will be tried.

**price discrimination.** The practice of offering identical or similar good to different buyers at differ-ent prices when the costs of producing the goods are the same. Price discrimination can violate antitrust laws if it reduces competition, either directly when a seller charges different prices to different buyers or indirectly when a seller offers special concessions (such as favorable credit terms) to some but not all buyers.

**price-fixing.** The artificial setting or maintenance of prices at a certain level, contrary to the work-ings of the free market.

**prosecution.** A criminal proceeding in which an accused person is tried.

**proximate cause.** See **causation**.

**punitive damages.** (1) Damages awarded in addition to actual damages when the defendant acted with recklessness, malice, or deceit. (2) Specifically, damages assessed by way of penalizing the wrongdoer or making an example to others.

**rebuttal.** A disinterested person appointed by a court or a corporation or other person for the protection or collection of property that is the subject of diverse claims. For example, a *judgment receiver* is a receiver who collects or diverts funds from a judgment debtor to the creditor.

**redirect examination.** A second direct examination after cross-examination, the scope ordinarily being limited to matters covered during cross-examination.

**referee.** A type of master appointed by a court to assist with certain proceedings.

**requests for admissions.** In pretrial discovery, a party's written factual statement served on another party who must admit, deny, or object to the substance of the statement.

**request for production of documents.** In pretrial discovery, a party's written request that another party provide specified documents or other tangible things for inspection and copying.

**restitution.** (1) A body of substantive law in which liability is based not on tort or contract but on the defendant's unjust enrichment. (2) The set of remedies associated with that body of law, in which the measure of recovery usually is based not on the plaintiff's loss but on the defendant's gain. (3) Return or restoration of some specific thing to its rightful owner or statues. (4) Compensation for loss, especially full or partial compensation paid by a criminal to a victim, not awarded in a civil trial for tort but ordered as part of a criminal sentence or a condition of probation.

**scheduling or calendaring order.** A schedule of the time of court appearances.

**self-incrimination.** The act of indicating one's own involvement in a crime or exposing oneself to **prosecution**, especially by making a statement.

**sequestered.** To segregate or isolate (a jury or witness) during trial.

**server.** Any computer on a network that contains data or applications shared by users of the network on their client PCs. [fn 27]

**service.** The formal delivery of a writ, summons, or other legal process.

**settlement.** An agreement ending a dispute or lawsuit.

**sequestered.** A meeting by disputing parties in litigation for reaching an agreement to end a dispute or law suit.

**settlement (full).** A settlement and release of all pending claims between the parties.

**settlement (structured).** A settlement in which the defendant agrees to pay periodic sums to the plaintiff for a specified time especially in personal injury and product liability cases.

---

[fn 27] Ibid.

**special master.** A parajudicial officer (such as a referee, an auditor, an examiner, or an assessor) specially appointed to help a court with its proceedings.

**spoliation.** The intentional destruction, mutilation, alteration, or concealment of evidence, usually a document.

**standard of proof.** The degree or level of proof demanded in a specific case, such as "beyond a reasonable doubt" or " by preponderance of the evidence".

**stipulations.** A voluntary agreement between opposing parties concerning some relevant point.

**subpoena.** A writ commanding a person to appear before a court or other tribunal, subject to a penalty for failing to comply.

**subpoena duces tecum.** A subpoena ordering the witness to appear and bring specified documents, records, or items.

**surrebuttal.** (1) The response to the opposing party's rebuttal in a trial or other proceeding. (2) A rebuttal to a rebuttal.

**system.** (1) An organized collection of components that have been optimized to work together in a functional whole. (2) The entire computer system, including peripheral devices.

**tax basis.** The value assigned to a taxpayer's investment in property and used primarily for computing gain or loss from a transfer of the property.

**testimony.** Evidence that a competent witness under oath or affirmation gives at the trial or in an affidavit or deposition.

**tort.** (1) A civil wrong, other than breach of contract, for which a remedy may be obtained, usually in the form of damages. (2) A breach of a duty that the law imposes on persons who stand in a particular relation to one another.

**trade secret.** (1) A formula, process, device, or other business information that is kept confidential to maintain an advantage over competitors. (2) Information, including a formula, pattern, compilation, program, device, method, technique, or process, that (*a*) derives independent economic value (actual or potential) from not being generally known or readily ascertainable by others who can obtain economic value from its disclosure or use and (*b*) is the subject of reasonable efforts, under the circumstances, to maintain its secrecy.

**trial.** A formal judicial examination of evidence and determination of legal claims in an adversary proceeding.

**trial (bench).** See **bench trial**.

**trial (bifurcated).** See bifurcated (trial).

**trial (jury).** See **jury trial**.

**trier of fact.** One or more persons, such as jurors in a trial or a judge in a hearing, who hear testimony and review evidence to rule on a factual issues.

**unix.** A 32-bit multitasking and multiuser operating system that originated at AT&T's Bell Laboratories and is now used on a wide variety of computers, from mainframes to PDAs.

**validation.** A process that ensures the data entered into a database form, an Internet form, or a computer program conforms to the correct data type.

**verdict (general).** A verdict by which the jury finds in favor of one party or the other, as opposed to resolving a specific issue.

**verdict (special).** A verdict in which the jury makes findings only on factual issues submitted to them by the judge, who then decides the legal effect of the verdict.

**virtual.** (1) Not real. (2) A computer representation of something that is real.

**voir dire.** A preliminary examination of a prospective juror (or expert witness) by a judge or lawyer to decide whether the prospect is qualified and suitable to serve on a jury (or as an expert witness).

**WAN.** Acronym for wide area network. A data network that provides data communications services for businesses and government agencies.

**warrant.** A writ directing or authorizing someone to do an act, especially one directing a law enforcer to make an arrest, a search, or a seizure.

**white collar crimes.** A nonviolent crime usually involving cheating or dishonesty in commercial matters.

**work product privilege or doctrine.** See **attorney work product privilege** (work product rule).

**written sworn statements (affidavits).** See **affidavit** (written sworn statement).

## Appendix B: Examples of Forensic Accounting Services

The following is a representative listing of forensic accounting services engagement matter types. This listing is not all-inclusive.

Dispute Resolution (excluding litigation):

- Alternative dispute resolution

    — Arbitration

    — Collaborative proceeding

    — Mediation

    — Mock trial

    — Negotiation

    — Sequestered

- Administrative proceedings

- Breach of contract

- License and royalty contract compliance

- Post-acquisition disputes

    — Working capital computations

    — Earn-out payments

- Regulatory inquiries, investigations, and compliance

**Litigation Support Services:**

Providing assistance for actual, pending, or potential legal or regulatory proceedings before a trier of fact in connection with the resolution of disputes between parties.

- Expert services. Rendering an opinion before a trier of fact about the matter(s) in dispute.

- Consulting. Providing advice about the facts, issues, and strategy of a matter. The consultant does not testify unless the role changes to that of an expert witness.

- Other. Servicing as a trier of fact, a special master, a court-appointed expert, a referee, an arbitrator, or a mediator.

## Type of Engagements

*Discovery:*

1. Request production of financial documents and other information that the parties to the lawsuit want to analyze, gather , or preserve

2. Advise on suitable questions for interrogatories related to various accounting matters at issue or in dispute, such as information recorded or reported in financial statements or books and records

3. Assist with depositions in the form of (*a*) advising on questions for the opposing party's financial and accounting witnesses or experts or (*b*) facilitating the understanding of terminology and the bases of the accounting issues, facts, or generally accepted accounting principles (GAAP) at issue or in dispute

*Information Seeking Interviews:*

1. Gain an understanding of the organization's accounting and reporting process based on individual roles, responsibilities, and perspectives

2. Gather perspective of the internal audit department, audit committee members, or external auditors regarding pertinent financial or accounting issues or disputes

*Document Management:*

1. Extract data from electronic devices (data-mining), such as ensuring complete revenue recognition or reviewing master files

2. Secure electronic evidence

3. Retrieve financial data

4. Store and categorize or file financial and accounting information (hard or soft copy)

*Third Party Corroboration:*

1. Verify an organization's representations through confirmation requests of third parties, such as financial institutions, suppliers, or vendors

2. Compare client or organization metrics to external metrics, such as industry benchmarks

*Settlement:*

1. Assist with settlement terms and negotiations, especially in regard to accounting terms and GAAP

2. Oversee payments, such as structure settlement payments, to plaintiffs in class-action settlements

*Cast Assessment:*

1. Perform case evaluation to assist parties in realizing the strengths and weaknesses of their lawsuit positions and potential resolutions

2. Analyze GAAP issues or disputes

3. Determine the potential merits of a case involving professional liability (accounting malpractice)

4. Examine financial and accounting recording and reporting issues

*Trial Assistance:*

1. Prepare questions for the opposing party's financial and accounting fact witnesses or experts

2. Assist with accounting terminology and dispute analysis

3. Provide GAAP perspective or analysis

*Posttrial Support:*

1. Serve as settlement funds administrator, especially for structured settlements

2. Serve as receiver

*Transaction Testing:*

1. Determine how disputed regulatory or contractual obligations, such as sales and use taxes or royalty payments, are calculated

2. Verify how disputed transactions are recorded through the financial and accounting processes and systems

3. Analyze whether financial and accounting processes and systems capture all of the contractual assets or obligations, based on the appropriate bases of accounting

*Negotiation:*

1. Provide a GAAP perspective

2. Perform case evaluation to assist parties in realizing the strengths and weaknesses of their positions and potential resolutions

3. Examine financial and accounting recording and reporting issues

4. Prepare questions for the opposing party's financial and accounting fact witnesses or experts

5. Assist with accounting terminology

*Arbitration:*

1. Act as a sole arbitrator or on a panel of arbitrators for accounting or contractual disputes

2. Provide a GAAP perspective or analysis

3. Provide an expert report or testimony for the arbitrator

*Mediation:*

1. Act as a sole arbitrator or on a panel of arbitrators for accounting or contractual disputes

2. Provide a GAAP perspective or analysis

*Expert reports and Testimony:*

1. Provide a GAAP perspective

2. Examine financial and accounting recording and reporting issues

3. Opine on whether there was a perpetration of a fraud

*Litigation Fact Finding:*

1. Execute asset searches

2. Conduct market studies

3. Review systems

4. Interview witnesses

5. Perform due diligence

*Litigation Analysis:*

1. Perform investigative accounting

2. Conduct computer modeling

3. Carry out statistical or actuarial analysis

*Antitrust:*

1. Analyze potential price-fixing

2. Define the market

3. Determine market share

4. Investigate predatory pricing

5. Analyze price dumping

6. Investigate price discrimination

*Tax:*

1. Determine tax basis

2. Aid with numerous federal or state tax matters

3. Assist with property tax issues, such as exempt versus nonexempt

4. Allocate costs

5. Determine tax treatment of specific transactions

6. Assist with duty or import tax matters

*Economic Damages:*

1. Perform lost profits analysis

2. Determine lost value of a business

3. Verify extra costs associated with a specific business situation

4. Analyze lost cash flows

5. Review mitigation of damages of economic damages

6. Analyze or aid in calculating restitution

*Punitive damages:*

1. Perform a study based on benchmarks

2. Assist in calculation

*Insurance Claims:*

1. Analyze or calculate business interruption

2. Determine lost wages

*Financial and Source Documents Fraud:*

1. Identify false reporting, particularly of income or assets

2. Determine whether financial books and records have been manipulated

3. Identify and analyze forgery of financial documents, such as invoices

4. Analyze electronic tampering of financial books and records

5. Trace and review related party transactions

6. Determine and review manual journal entries

7. Perform data-mining techniques

8. Carry out accounts receivable aging analysis, including trend analysis

9. Examine suspicious vendor relationships or activities

10. Examine suspicious financial performance by a unit, subsidiary, or joint venture

*Fraud and Illegal Acts:*

1. Investigate embezzlement

2. Identity theft

3. Determine and catalog asset misappropriation

4. Investigate corruption and bribery

5. Evaluate financial statement manipulation

*Financial Reporting and Securities Fraud:*

1. Trace and review related party transactions, arms-length transactions, or preferential treatment

2. Determine and review manual journal entries

3. Carry out accounts receivable aging analysis, including trend analysis

4. Perform data-mining techniques

5. Investigate insider trading

*Insolvency and Bail Fraud:*

1. Trace and review related party transactions or preferential treatment

2. Serve as a bail consultant, a trustee, or an examiner

*Intellectual Property and Trade Secrets:*

1. Test royalty payment transactions

2. Confirm all royalties are included

3. Ensure proper basis of accounting, such as GAAP versus International Financial Reporting Standards (IFRS) or other comprehensive basis of accounting

*Marital Dissolution:*

1. Search for hidden assets

2. Trace Assets for apportionment

3. Evaluate and analyze spending and expenses

*Bail Support:*

1. Breach of fiduciary duty claims

2. Fraudulent conveyance claims

3. Preferential payment claims

*Fraud and Special Investigations:*

1. Commercial fraud claims

2. Financial statement restatements

3. Securities claims

*Other:*

1. Civil complaints (all phases of civil litigation process)

    a. Breach of fiduciary duty claims

    b. Business interruption claims

    c. Contractual disputes

    d. Contracting, construction, and real estate claims

    e. Commercial fraud claims

    f. Divorce, domestic, and matrimonial cases

    g. Insurance claims and defense

    h. Intellectual property (for example, patent, copyright, trademark, and know-how) claims

    i. Labor and employment claims

    j. Licenses and royalties claims

    k. Postacquisition dispute

    l. Professional malpractice claims

2. Other complaints (civil or criminal—all phases of litigation)

    *a.* Antitrust claims

    *b.* Class actions

    *c.* Fraud, waste, and abuse claims

    *d.* Securities claims

3. Valuations (for example, asset valuation and business valuation)

## Appendix C: Deposition and Trial Testimony Tips

Testimony is evidence that a competent witness under oath or affirmation gives at trial or in an affidavit or deposition. The following list of tips will assist the expert witness in testifying at deposition or trial. For additional tips, please consult the *Quick Reference Guide to Deposition and Trial Preparation and Testimony* published by the AICPA's Forensic and Valuation Services Section.

I. Deposition Testimony

    A. Administrative Issues

        1. Know where and when the deposition is going to be held well in advance of the date.

        2. Know who is paying for the deposition.

        3. Review subpoenas and determine if compliance is possible. If compliance is not possible, you may need to consult your own counsel.

        4. Update your curriculum vitae (CV).

        5. Preparation meeting with attorney—ask the following:

            *a.* Who will be present at the deposition?

            *b.* Will the deposition be videotaped?

            *c.* How long the deposition is like to last?

            *d.* What, if anything, should be brought to the deposition?

            *e.* What time should you arrive at the deposition?

        6. Dress professionally.

    B. Preparations Issues

        1. If you are to bring your files, organize them for easy reference.

        2. Know key dates for engagement, such as date you were first contacted (by whom and how), date you were hired, and last date you worked on the engagement.

        3. Review applicable AICPA professional standards and non-authoritative publications.

        4. Review your report and supporting documents—know where your strengths and weaknesses lie.

        5. Review opposing experts report, especially if you have been hired to provide rebuttal testimony at trial.

        6. Review legal issues in the case.

C. Questions Likely to Be Asked During Deposition

    1. Be prepared to answer questions regarding your qualifications, including questions about:

        *a.* Your CV

        *b.* Education

        *c.* Work history

        *d.* Licenses, credentials and certifications

        *e.* Professional memberships

        *f.* Prior publications and presentations

        *g.* Prior testimony experience

    2. Attorneys will often ask questions about:

        *a.* Who, when and how you were first contacted

        *b.* How much you have been paid, you are owed, and any amounts for unbilled time

        *c.* Total hours worked on the engagement by you and those you supervised

        *d.* Percentage of your work received from the engaging law firm

        *e.* Percentage of your work in a particular professional area, or lack thereof

        *f.* Your opinions and assumptions

        *g.* Your understanding of the fact

        *h.* The research you conducted

        *i.* What information you reviewed and relied upon

        *j.* Whether your work is complete or additional work is still to be performed

D. Deposition Testimony Do's and Don'ts.

    1. Do tell the truth.

    2. Do answer only the questions asked, with as few words as possible.

    3. Do listen to the question in its entirety and make sure you understand it before you answer.

    4. Do take your time answering the questions—remember, the transcript will not indicate your pauses or any periods of silence.

5. Do recognize that your deposition carries the same weight as your trial testimony.

6. Do read any document presented to you before answering questions about that document.

7. Do remember that "I do not recall," "I don't know," and "I do not remember" are all valid answers.

8. Do ask for breaks when needed.

9. Do not be argumentative or arrogant.

10. Do not speculate.

11. Do not respond to questions you do not understand.

12. Do not anticipate the next question.

13. Do not answer compound questions with one answer—ask that the question be broken down.

14. Do not guess or assume you understood the question.

15. Do not stray from your expertise.

II. Trial Testimony

A. Administrative Issues

1. Know where and when the trial is going to be held well in advance of the date.

2. Preparation meeting with attorney—discuss the following:

   *a.* Direct examination, particularly in light of your deposition

   *b.* Potential subject for cross-examination

   *c.* Any new developments in the case

   *d.* Exhibits

   *e.* Whether you may sit in on opposing expert's testimony

   *f.* Type of trial (bench or jury)

   *g.* Characteristics of the presiding judge

3. Dress Professionally.

B. Preparations issues

1. See list of preparations issues under deposition testimony.

2. Review your deposition transcript.

3. Practice your direct testimony and anticipated cross-examination.

C. Trial Testimony Do's and Don'ts

1. Do tell the truth.

2. Do be modest but respond confidently.

3. Do make eye contact and answer by speaking to the trier of fact or jury as appropriate.

4. Do sit forward in the witness chair.

5. Do maintain consistent voice level and inflection from direct to cross examination.

6. Do be patient and respectful in the heat of cross examination.

7. Do speak clearly and at a pace using words that lay people can understand.

8. Do not be argumentative or arrogant.

9. Do not speculate.

10. Do tell the truth.

11. Do not respond to questions you do not understand.

12. Do not anticipate the next question.

13. Do not answer compound questions with one answer—ask that the question be broken down.

14. Do not guess or assume you understood the question.

15. Do not stray from your expertise.

16. Do not be nervous.

17. Do not slump—be careful with body language.

18. Do not use inappropriate language or humor.

## Appendix D: Courts and Websites

### Federal Court System

The federal court system consists of the following courts and special courts:

- **District courts.** Involve a dispute claiming monetary damages in excess of an established minimum when the plaintiff and defendant reside in different states (referred to as diversity of citizenship) or, alternative, involve an issue of federal law. Consists of 93 geographic districts (each state has at least one).

- **Courts of appeal.** The courts used for appeals of district court trial decisions

- **Supreme Court.** This is the highest appeals court in the federal court system. Generally, a disputing party must have a decision from the Court of Appeals for the Federal Circuit and file a successful petition for trial to be granted in the Supreme Court.

- **Tax Court.** The courts used for tax disputes between taxpayers and the IRS.

- **Court of federal claims.** The courts used for constitutional claims against the federal government or its branches, offices, or executives.

- **Bail court.** The courts used for federal bail matters.

### Federal Circuits

Following are the 13 appeals circuits operated by the federal court system:

1. First (Maine, New Hampshire, Massachusetts, Rhode island, and Puerto Rico)
2. Second (New York, Connecticut, and Vermont)
3. Third (New Jersey, Pennsylvania, Delaware, and Virgin Islands)
4. Fourth (Maryland, Virginia, West Virginia, North Carolina, and South Carolina)
5. Fifth (Texas, Louisiana, and Mississippi)
6. Sixth (Tennessee, Kentucky, Ohio, and Michigan)
7. Seventh (Illinois, Indiana, and Wisconsin)
8. Eighth (Arkansas, Iowan, Minnesota, Missouri, Nebraska, North Dakota, and South Dakota)
9. Ninth (California, Arizona, Nevada, Oregon, Washington, Idaho, Montana, Alaska, Hawaii, Guam, and Northern Mariana Islands)
10. Tenth (Colorado, Kansas, New Mexico, Oklahoma, Utah, and Wyoming)
11. Eleventh (Alabama, Georgia, and Florida)

12. District of Columbia (Washington, D.C.)

13. Federal

The federal court system website is www.uscourts.gov.

**State Court System**

The structure of state court systems, law, rules, and regulations varies. Refer to the National Center for State Courts website at www.ncsconline.org.

# Appendix E: Excerpts of the *Federal Rules of Civil Procedure* and the *Federal Rules of Evidence*

Following are excerpts of the *Federal Rules of Civil Procedure* and the *Federal Rules of Evidence* that apply to an expert witness. The *Federal Rules of Civil Procedure* can be located in their entirety at www.uscourts.gov/uscourts/rules/civil-procedure.pdf and the *Federal Rules of Evidence* at www.uscourts.gov/uscourts/rules/rules-evidence.pdf

The *Federal Rules of Civil Procedure* and the *Federal Rules of Evidence* are subject to revision.

## Federal Rules of Civil Procedure

### V. DISCLOSURES AND DISCOVERY

### Rule 26. Duty to Disclose; General Provisions Governing Discovery, (a) Required Disclosures

(2) *Disclosure of Expert Testimony.*

   (A)*In General*. In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identify of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.

   (B) *Witness Who Must Provide a Written Report*. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

      i.   a complete statement of all opinions the witness will express and the basis and reasons for them;

      ii.  the facts or data considered by the witness in forming them;

      iii. any exhibits that will be used to summarize or support them;

      iv.  the witness's qualifications, including a list of all publications authored in the previous 10 years;

      v.   a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

      vi.  a statement of the compensation to be paid for the study and testimony in the case.

   (C) *Witness Who Do Not Provide a Written Report*. Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:

      i.   the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and

      ii.  a summary of the facts and opinions to which the witness is expected to testify.

(D) *Time to Disclose Expert Testimony*. A party must make these disclosures at the times and in the sequence that the court orders. Absent a stipulation or a court order, the disclosures must be made:

    i.  at least 90 days before the date set for trial or for the case to be ready for trial; or

    ii.  if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure.

(E) *Supplementing the Disclosure*. The parties must supplement these disclosures when required under Rule 26(e).

(3) *Pretrial Disclosures*.

  (A) *In General*. In addition to the disclosures required by Rule 26(a)(1) and (2), a party must provide to the other parties and promptly file the following information about the evidence that it may present at trial other than solely for impeachment:

    i.  the name and, if not previously provided, the address and telephone number of each witness—separately identifying those the party expects to present and those it may call if the need arises;

    ii.  the designation of those witnesses whose testimony the party expects to present by deposition and, if not taken stenographically, a transcript of the pertinent parts of the deposition; and

    iii.  an identification of each document or other exhibit, including summaries of other evidence—separately identifying those items the party expects to offer and those it may offer if the need arises.

  (B) *Time for Pretrial Disclosures; Objections*. Unless the court orders otherwise, these disclosures must be made at least 30 days before trial. Within 14 days after they are made, unless the court sets a different time, a party may serve and promptly file a list of the following objections: any objections to the use under Rule 32(a) of a deposition designated by another part under Rule 26(a)(3)(A)(ii); and any objection, together with the grounds for it, that may be made to the admissibility of materials identified under Rule 26(a)(A)(iii). An objection not so made—except for one under Federal Rule of Evidence 402 or 403—is waived unless excused by the court for good cause.

(4) *Form of Disclosures*. Unless the court orders otherwise, all disclosures under Rule 26(a) must be in writing, signed, and served.

**Rule 26. Duty to Disclose; General Provisions, Governing Discovery, (b) Discovery Scope and Limits**

(1) *Scope in General*. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at

the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discover is subject to the limitations imposed by Rule 26(b)(2)(C).

(3) *Trial Preparation: Materials*.

  (A) *Documents and Tangible Things*. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:

    i. they are otherwise discoverable under Rule 26(b)(1); and

    ii. the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

  (B) *Protection Against Disclosure*. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

  (C) *Previous Statement*. Any party or other person may, on request and without the required showing, obtain the person's own previous statement about the action or its subject matter. If the request is refused, the person may move for a court order, and Rule 37(a)(5) applies to the award of expenses. A previous statement is either:

    i. a written statement that the person has signed or otherwise adopted or approved; or

    ii. a contemporaneous stenographic, mechanical, electrical, or other recording—or a transcription of it—that recites substantially verbatim the person's oral statement.

(4) *Trial Preparation; Experts*.

  (A) *Deposition of an Expert Who May Testify*. A party may depose any person who has been identified as an expert whose opinions may be presented at trial. If Rule 26(a)(2)(B) requires a report from the expert, the deposition may be conducted only after the report is provided.

  (B) *Trial-Preparation for Draft Reports or Disclosures*. Rules 26(b)(3)(a) and (B) protect drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded.

  (C) *Trial-Preparation Protection for Communications Between a Party's Attorney and Expert Witnesses*. Rule 26(b)(3)(a) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communicatons:

    i. relate to compensation for the expert's study or testimony;

ii.   identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or

iii.   identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

(D) *Expert Employed Only for Trial Preparation.* Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only:

i.   as provided in Rule 35(b); or

ii.   on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

(E) *Payment.* Unless manifest injustice would result, the court must require that the party seeking discovery:

i.   pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) or (D); and

ii.   for discovery under (D), also pay the other party a fair portion of the fees and expenses it reasonably incurred in obtaining the expert's facts and opinions.

**Federal Rules of Evidence**

**Rule 702. Testimony by Expert Witnesses**

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or, otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

**Rule 703. Bases of an Expert's Opinion Testimony**

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If a type that is reasonably relied upon by experts in the particular field of forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference, unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

**Rule 704. Opinion on an Ultimate Issue**

Except as provided in subdivision testimony in the form of an opinion or inference, otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

### Rule 705. Disclosing the Facts or Data Underlying an Expert's Opinion

The expert may testify in terms of opinion or inference and give reasons without first testifying to the underlying facts or data, unless the court requires otherwise. The expert may be required to disclose the underlying facts or data on cross-examination.

### Rule 706. Court-Appointed Expert Witnesses

*Appointment.* The court may, on its own motion or on the motion of any party, enter an order to show cause why expert witnesses should not be appointed and may request the parties to submit nominations. The court may appoint any expert witness agreed upon by the parties and may appoint expert witnesses of its own selection. An expert witness shall not be appointed by the court unless the witness consents to act. A witness so appointed shall be informed of the witness's duties by the court in writing, a copy of which shall be filed with the clerk, or at a conference in which the parties shall have opportunity to participate. A witness so appointed shall advise the parties of the witness's findings, if any; the witness's deposition may be taken by any party; and the witness may be called to testify by the court or any party. The witness shall be subject to cross-examination by each party, including a party calling the witness.

*Compensation.* Expert witnesses so appointed are entitled to reasonable compensation in any sum the court may allow. The compensation thus fixed is payable from funds which may be provided by law in criminal cases and civil actions and proceedings involving just compensation under the fifth amendment. In other civil actions and proceedings, the compensation shall be paid by the parties in such proportion and at such time as the court directs, and thereafter charge in like manner as other costs.

*Disclosure of appointment.* In the exercise of its discretion, the court may authorize disclosure to the jury of the fact that the court appointed the expert witness.

*Parties' experts of own selection.* Nothing in this rule limits the parties in calling expert witnesses of their own selection.

### Rule 803. Exceptions to the Rule Against Hearsay—Regardless of Whether the Declarant is Available as a Witness

Learned treatises are not excluded by the hearsay rule, even though the declarant is available as a witness. To the extent called to the attention of an expert witness upon cross-examination or relied upon by the expert witness in direct examination, learned treatises are statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice. If admitted, the statements may be read into evidence but may not be received as exhibits.

## Appendix F: Computer Data Gathering

Ensuring that you acquire reliable, accurate electronic data can be a challenge for a forensic accountant. How do you ensure the right information is gathered? What do you need in order to conduct your investigation? If you have limited knowledge of computers, how do you communicate your needs to the computer forensic people to get the correct information and ensure that they are capable of getting the right information? The following exchange is a good illustration of this point:

> Forensic accountant (FA): I need to have a mirror of the accounting package, complete with any access code so I can gain access to the accounting system. I would also like to be sure the audit trail is preserved.

> Computer geek (CG): What sort of system do they have?

> FA: I don't know. That's your job, isn't it?

> CG: Let me be more specific, what sort of OS do they have?

> FA: Huh?

> CG: What sort of operating system do they have? You know, like UNIX or Linux?

> FA: I don't know.

> CG: Okay, let's start over.

The following outline details the steps that should be followed and the type of information to convey to the computer forensic technician to facilitate a legitimate and efficient date extraction.

- Consider the chain of evidence.

    — Maintain and document the chronological history of the investigation.

        - When and how data was collected?

        - Where data was stored and found?

        - How the data was collected and maintained?

        - Who handled the data and when?

        - What procedures and analyses were performed?

    — Maintain for each piece of evidence.

Page 69

- Determine the type of data of interest.
  - Spreadsheets, word processing documents, PDFs, image files, sound files, and so on
  - Accounting package data files
  - Emails
    - Type of server (in-house or external)
- Determine where the data is stored and maintained.
  - Individual's computer, network server, flash drive, CD or DVD, mobile device, and so on
  - Make and model of the computer or device
  - Type of network
- Determine who has access to the data.
  - What type of operating system?
  - Who has administrator rights?
  - Is there an access code?
  - When was the data (or system) last accessed?
    - The more activity that has occurred, the less likely of finding historical data.
- Consider collection and preservation.
  - Imaging—make a mirror of the original data:
    - Forensic computer technicians often have special tools to enable imaging.
  - Evidence should be protected from physical, mechanical, or electromagnetic damage.

# Appendix G: *Daubert* and *Kumho* Case Summaries

Two Supreme Court cases set the primary legal precedence for the admissibility of expert testimony in federal cases: *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 3786 (1993), and *Kumho Tire Co. vs. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 1179 (1999). These cases expanded the role of the trial judge as a gatekeeper for expert testimony. [fn 28]

### *Daubert v. Merrell Dow Pharmaceuticals, Inc.*

In *Daubert v. Merrell Dow Pharmaceutical, Inc.*, the court addressed scientific evidence offered by an expert witness and its admissibility. In summary, the court held that trial judges are to ensure expert witness testimony is based on a reliable foundation and is relevant to the task at hand. In general, the *Daubert* ruling consists of two parts:

1. Is the expertise and testimony of the expert witness relevant to matters at issue in the trial?

2. Is the testimony of the expert witness reliable because the theory or technique used by the expert

   a. can and has been tested?

   b. has been subjected to peer review and publication?

   c. identifies the known or potential error rate?

   d. is standardized and generally accepted within the relevant peer community?

### *Kumho Tire Co. vs. Carmichael*

*Kumho Tire Co. v. Carmichael* expanded the gatekeeping function of the trial judge under *Daubert v. Merrell Dow Pharmaceuticals, Inc.* to all expert testimony based on scientific, technical, or other specialized knowledge, including experience-based technical testimony.

---

[fn 28] These cases are referenced as guidance only and do not necessarily comprise all factors and consideration related to the admissibility of expert witness testimony.

## Appendix H: Civil Litigation Chart

Dispute
- Damages quantification
- Dispute development and preparation
- Early dispute resolution
- Fact Finding
- Investigations

Precomplaint
- Complaint preparation
- Damages quantification
- Early case assessment and budgeting
- Fact finding
- Liability assessment (limited)

Complaint
- Case management
- Case strategy (consulting only)
- Class action certification
- Motion support

Answer
- Response preparation
- Counterclaim preparation

Discovery
- Case Strategy (consulting only)
- Damages quantification
- Deposition assistance
- Document, data and evidence identification, recovery, analysis, management

Page 72

- Expert witness deposition testimony

- Interrogatories and responses

- Production requests and responses

- Rebuttal of opposing expert testimony

- Witness preparation

Pretrial

- Trial preparations

- Trial demonstratives

- Settlement and resolution support

Trial

- Expert witness testimony

- Opposing expert cross-examination assistance

- Trial preparation

- Witness preparation

Posttrial

- Calculation of beneficiary allocation

- Distribution of judgments and awards

## Appendix I: Sample Court Document (One Page Complaint)

| | | |
|---|---|---|
| JOE JOHNSON | * | IN THE DISTRICT COURT |
| 1234 Valley Drive | * | OF MARYLAND |
| Belle Note, Maryland 21101, | * | FOR NORTH EDWARD |
| *Plaintiff,* | * | COUNTY |
| v. | * | CASE NO.: 0000-0000000-2008 |
| STATE INSURANCE FUND. | * | |
| Served on: | * | |
| Susan Jones. | * | |
| Insurance Commissioner | * | |
| 36 Capitol Place | * | |
| Baltimore, MD 21201 | * | |
| *Defendants.* | | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

COMPLAINT

Plaintiff, Joe Johnson (hereinafter referred to as the plaintiff), by and through her attorneys Jimmy Smith and Miller & Smith, LLC, brings suit against the defendant, State Insurance Fund (SIF), and in support thereof states as follows:

COUNT I – BREACH OF CONTRACT – PIP BENEFITS

1. That at all times, the defendant, SIF, was a corporation licensed in the state of Maryland to provide insurance, including, but not limited to, personal injury protection (PIP) coverage.

2. That on or before September 7, 20XX, the defendant, SIF, provided a policy of insurance, which included PIP coverage to the plaintiff.

3. That since January 10, 20XX, the plaintiff has demanded benefits due her under the PIP policy from the defendant, but the defendant has refused to pay same.

4. That said denial is without justification.

5. That under *Maryland Code* § 19-508 (c), payment of benefits that are not made within 30 days after the insurer receives satisfactory proof of claim, said benefits are overdue and shall bear simple interest at the rate of 1.5 percent per month.

WHEREFORE, the plaintiff demands judgment against the defendant, SIF, in the amount of $102,000.00 plus costs.

        Respectfully submitted,
        MILLER & SMITH, LLC
        Jimmy Smith
        Attorney for the plaintiff

# Appendix J: Case Study — Shareholder Dispute [fn 29]

### Preface

An acquaintance meets with Betty Jones of Smith & Jones CPAs to discuss the operations of a business (company A) in which he is part owner. The business is supposed to be managed by another owner, and a third owner (a CPA) handles all record keeping. These two other owners are also co-owners of the same type of business they are opening in another town (company Z). Because of his concerns that resources from his business are being used to facilitate the opening of the other business, the acquaintance engages Betty to

1. determine if funds are being misappropriated by the two other owners.

2. assist him, as needed, to recover those funds, if funds are being misappropriated.

### The Investigation

As with any litigation support engagement, Jones first prepares an engagement letter to serve as a contract between the new client and her firm.

Her next step is to gather circumstantial evidence. She prepares a list of the documents needed for her initial investigation, determining that she would start with the three most recent years then expand the investigation, if necessary. [fn 30] She requests the following from company A:

1. A backup of the QuickBooks company file

2. Three years of bank statements for all bank accounts

3. Copies of all income and payroll tax returns filed, with any supporting documentation

4. All accounts payable files for the three years included in the initial investigation

As an owner of the business, the client has the right to request the documents without having to take legal action. The downside of having to request the information from the other two owners is that it alerts them to the investigation, but Betty and the client determine that this is the best avenue to take.

Upon receiving the records, Betty performs an analytical review of the information and finds evidence of substantial related party transactions and transactions that appear to be for company Z. After receiving written permission from the client, she requests additional information from the vendors (that is, source of orders, delivery information, payment information, and so on). She also visits both sites, chats with employees, and observes activities. She immediately notices two employees of company A who are working at the site of company Z. She then request interviews of the employees of company A but is re-

---

[fn 29] All cases, characters, names, and places used in examples herein are used fictitiously. Any resemblance to actual person(s), living or dead; event; or locales is entirely coincidental.

[fn 30] See AICPA FVS Section Practice Aid, *Forensic Accounting & Fraud Investigations*, for more information.

fused access by the two opposing owners. After visiting with her client, Betty prepares her written report of the investigation. [fn 31] The report includes the following:

1. The objectives of the investigation

2. The scope of the investigation

3. Background information on the company and the purpose of the investigation

4. Source documents used

5. A summary of procedures performed

6. Her findings and opinions

7. A conclusion

8. The restrictions on the findings, opinions, and use of the report

9. The assumptions used during the investigation

10. All exhibits

11. Her qualifications

12. Her compensation

13. A list of other cases in which she testified

14. Her signature

Betty's report states that she found almost $500,000 in transactions, and it indicates that the other two owners conspired to utilize assets of company A to facilitate the opening of company Z. Her client is appalled at the amount. He and his attorney meet with his co-owners to discuss the matter. The manager/co-owner denies the allegations and refuses to reimburse company A. The CPA/co-owner is silent.

**Mediation and Arbitration**

Betty, Betty's client, and his attorney meet to discuss the options. The attorney mentions two options that would avert a court proceeding: mediation and arbitration.

In mediation, an impartial third person assists the parties in reaching a resolution of the dispute. The mediator does not decide who should win but instead works with the parties to reach a mutually agreeable settlement.

---

[fn 31] See AICPA Practice Aid, *Communicating in Litigation Services: Reports*, for more information.

In arbitration, the arbitrator (an impartial third person) acts as a judge by deciding the case on its merits. The arbitration can be either binding or nonbinding. If it is binding, the decision of the arbitrator is the same as a judge's would be and the parties cannot later turn to the courts for a decision.

In the hopes of saving money and avoiding public knowledge of the problems, Betty's client requests mediation. The manager/co-owner continues to deny that there is anything to mediate. The CPA/co-owner continues his silence. Betty's client has two options at this point: work with law enforcement in pursuit of criminal charges or file a civil action. He chooses a civil action because it presents the best chance of recovering the misappropriated funds.

**The Civil Action**

The civil action is commenced by filing a complaint with the court. In order to be inclusive, Betty's client, now the plaintiff, files a complaint against the other two co-owners and company Z. Included with the complaint are three copies of the summons, one for each of the defendants, which are signed by the clerk and served upon the defendants. They are given 20 days to respond.

The response is received within one week. All three defendants have hired the same attorney, and they have denied all the allegations in the complaint. They ask the court to dismiss the proceedings. A hearing is set for two weeks later. During the hearing, the plaintiff testifies to the evidence found during Betty's preliminary investigation. The judge denies the request to dismiss. At that time, he also signs subpoenas for copies of the personal financial records of the individual defendants and the corporate financial records of company Z.

At this point, Betty's initial engagement has changed, so she issues a new engagement letter covering the additional records, a more distinct purpose, assistance to the client's attorney, and the possibility of expert testimony.

Her analysis of the additional records verifies her original findings. She updates her report to include this new information, being particularly aware that this report will be filed with the court. She knows that the copy provided to the defendants also will be given to their expert witness, whose main purpose is to find ways to question and discredit the report. Betty, aware that she is not protected by any privilege, is very careful about what she puts in writing and also is careful to maintain her files properly in case they are subpoenaed. She meets frequently with her client's attorney to discuss the various motions, counterclaims, and cross-claims filed by the parties. During this time, it also is disclosed that she will testify as an expert witness.

Betty assists the attorney in preparing interrogatories for the defendants and in preparing for depositions of related parties, including the two company A employees she saw working at company Z. As expected, Betty receives a notice of her own deposition by the opposing attorney.

Then there is a surprise filing. The CPA/co-owner defendant has hired a different attorney and is claiming he was not involved in any alleged misappropriation and had no knowledge of any such activities. He also asks that his proceeding be severed from that against the manager/co-owner and company Z. Betty is not surprised by this because he could lose his CPA license if he is found guilty [fn 32] and it is

---

[fn 32] See the "Integrity and Objectivity Rule" (AICPA, *Professional Standards*, ET sec. 102 par. .01), and the "Acts Discreditable Rule" (AICPA, *Professional Standards*, ET sec. 501 par. .01).

taken as a good sign by her client and his attorney. The judge denies the request to sever the proceedings, so the new attorney then approaches the plaintiff's attorney about a settlement. He continues to assert that his client was unaware of any of the alleged activities, and publicity from the lawsuit and trial would have a negative impact on his client's practice. Betty goes back to the audit trail in the Quick-Books provided for company A and shows that the CPA had changed transactions in order to hide the misappropriation. The assertions of innocence are dropped but pursuit of a financial settlement continues. Betty's client wants justice but understands that the cost of pursuing justice through the courts might exceed any benefit he would receive. Eventually, the client agrees to accept $300,000 and the CPAs share of ownership in company A in exchange for dismissing him from the lawsuit.

The journey through the discovery process continues, and Betty's turn to be deposed arrives. She has done this before and knows that a deposition is often more stressful than testifying in court. During court testimony, the judge will keep testimony to relevant questions and her client's attorney can object to a question before she answers. Frequently, a deposition is more of a "fishing trip," and although her client's attorney may object to the form of a question, she still has to answer. Opposing attorneys may badger, belittle, or attempt to confuse in order to get information. She reviews all the sources of information in her report so they are fresh in her mind and realizes that remaining calm and taking her time to answer is the key. Her deposition takes most of a day, and in the end, she wishes she had said a few things differently, but her client's attorney is pleased with her testimony.

Her client's attorney then deposes the expert for the defendants. His main issue with her report is that there was no proof that the QuickBooks company file hadn't been tampered with prior to its delivery to Betty and that the CPA/co-owner was the guilty one, not the manager/co-owner. Betty again uses the Quick Books audit trail to verify that the only changes made were those made to cover up misappropriation and that orders were made and checks were written by the manager/co-owner. This is further verified by the bank statements and the records received from vendors. Alternatively, he suggests that the funds used were actually just loans to the defendants, even though no loan documents were prepared and a loan was never discussed with, or approved by, Betty's client. Her client's attorney considers this ruse to be easily cleared up in court.

As the date for trial approaches, the attorney for the remaining defendants begins dropping hints about a possible settlement, but no offer is made. Betty and her client's attorney spend time making easy-to-follow exhibits for use during her testimony, and he reviews with her the questions he intends to ask and the points he expects the opposing attorney will try to make.

The trial date eventually arrives and jury selection begins. All jurors and alternates are selected and given instructions by the end of the first day. The attorney had told Betty that her testimony would probably begin the afternoon of the following day and may go into the third day so she spends the next morning reviewing all records. As she is leaving for the courthouse, she receives a call from her client's attorney telling her that the defendant's attorney has come forward with a serious offer for settlement, and the trial had recessed for the afternoon. No settlement is reached, however, so Betty shows up the next morning to testify.

Her testimony takes most of the morning, and she believes she did a good job of explaining the procedures she used during her investigation and the results thereof. After lunch comes **cross-examination**, with opposing counsel trying to misrepresent some of the things she had said that morning and also trying to get her to say that her results were not conclusive. Betty takes her time and allows her client's attorney to object to the questions before answering. Above all, she knows not to take it personally.

When she is dismissed from the witness stand, she breathes a sigh of relief. Although she knows she could be called back to the stand, she knows the worst part is over. One of the two company A employees she saw working at company Z testifies that afternoon as the last witness for the plaintiff. The defendant's testimony will begin the following day. Her client's attorney is again approached about a settlement—this time a reasonable offer—but her client smells victory and won't even consider it.

The defense concludes testimony by its witnesses by the afternoon of the following day, at which time her client's attorney files a motion for judgment as a matter of law. The judge agrees that there is no legally sufficient evidentiary basis for the jury to find for the defense and grants the motion. The jury is dismissed.

The judgment calls for payment of $500,000, plus court costs and attorney's fees, which is later negotiated to $400,000, plus court costs and attorney's fees, plus transfer of the defendant's ownership in company A to Betty's client.

Moreover, in the best compliment of all, Betty is contacted by the opposing attorney who wants to hire her as an expert witness in another case.

# EXHIBIT H

# AICPA Code of Professional Conduct

**Effective December 15, 2014.**

Updated for all Official Releases through April 23, 2015



Copyright © 2015, American Institute of Certified Public Accountants, Inc. All Rights Reserved.

# Table of Contents

Preface: Applicable to All Members ................................................................................................ 1
  0.100 Overview of the Code of Professional Conduct ...................................................... 1
    .01 ................................................................................................................................... 1
    .02 ................................................................................................................................... 1
    .03 ................................................................................................................................... 1
    0.100.010 Principles and Rules of Conduct ............................................................ 1
    0.100.020 Interpretations and Other Guidance ......................................................... 1
  0.200 Structure and Application of the AICPA Code ........................................................ 2
    0.200.010 Structure of the AICPA Code .................................................................. 2
    0.200.020 Application of the AICPA Code .............................................................. 2
    0.200.030 Citations ................................................................................................... 3
    0.200.040 Transition Provisions ............................................................................... 4
    0.200.050 Drafting Conventions .............................................................................. 4
  0.300 Principles of Professional Conduct .......................................................................... 4
    0.300.010 Preamble ................................................................................................... 5
    0.300.020 Responsibilities ........................................................................................ 5
    0.300.030 The Public Interest ................................................................................... 5
    0.300.040 Integrity .................................................................................................... 5
    0.300.050 Objectivity and Independence .................................................................. 6
    0.300.060 Due Care .................................................................................................. 6
    0.300.070 Scope and Nature of Services .................................................................. 7
  0.400 Definitions ................................................................................................................ 7
    .01 ................................................................................................................................... 8
    .02 ................................................................................................................................... 8
    .03 ................................................................................................................................... 8
    .04 ................................................................................................................................... 9
    .05 ................................................................................................................................... 9
    .06 ................................................................................................................................... 9
    .07 ................................................................................................................................... 9
    .08 ................................................................................................................................... 9
    .09 ................................................................................................................................... 9
    .10 ................................................................................................................................. 10
    .11 ................................................................................................................................. 10
    .12 ................................................................................................................................. 10
    .13 ................................................................................................................................. 10
    .14 ................................................................................................................................. 11
    .15 ................................................................................................................................. 11
    .16 ................................................................................................................................. 11
    .17 ................................................................................................................................. 11
    .18 ................................................................................................................................. 11
    .19 ................................................................................................................................. 11
    .20 ................................................................................................................................. 11
    .21 ................................................................................................................................. 11
    .22 ................................................................................................................................. 12
    .23 ................................................................................................................................. 12
    .24 ................................................................................................................................. 12
    .25 ................................................................................................................................. 12
    .26 ................................................................................................................................. 12
    .27 ................................................................................................................................. 12
    .28 ................................................................................................................................. 13
    .29 ................................................................................................................................. 13

AICPA Code of Professional Conduct

.30 ............................................................................................... 13
.31 ............................................................................................... 13
.32 ............................................................................................... 13
.33 ............................................................................................... 13
.34 ............................................................................................... 14
.35 ............................................................................................... 14
.36 ............................................................................................... 14
.37 ............................................................................................... 14
.38 ............................................................................................... 14
.39 ............................................................................................... 15
.40 ............................................................................................... 15
.41 ............................................................................................... 15
.42 ............................................................................................... 15
.43 ............................................................................................... 15
.44 ............................................................................................... 15
.45 ............................................................................................... 15
.46 ............................................................................................... 16
.47 ............................................................................................... 16
.48 ............................................................................................... 16
.49 ............................................................................................... 16
0.500 Nonauthoritative Guidance ............................................................. 16
.01 ............................................................................................... 16
.02 ............................................................................................... 16
.03 ............................................................................................... 17
0.600 New, Revised, and Pending Interpretations and Other Guidance ................................. 17
0.600.010 New and Revised Interpretations and Other Guidance ................................. 17
0.600.020 Pending Interpretations and Other Guidance ............................................. 20
0.700 Deleted Interpretations and Other Guidance ........................................................... 22
.01 ............................................................................................... 22
Part 1 ............................................................................................... 26
1.000 Introduction ............................................................................................... 26
.01 ............................................................................................... 26
.02 ............................................................................................... 26
.03 ............................................................................................... 26
1.000.010 Conceptual Framework for Members in Public Practice ............................... 26
1.000.020 Ethical Conflicts ............................................................................. 32
1.100 Integrity and Objectivity ............................................................................. 32
1.100.001 Integrity and Objectivity Rule ............................................................... 32
Interpretations Under the Integrity and Objectivity Rule ............................................. 33
1.200 Independence ............................................................................................... 41
1.200.001 Independence Rule ............................................................................. 41
Interpretations Under the Independence Rule ....................................................... 41
1.300 General Standards ............................................................................................... 105
1.300.001 General Standards Rule ....................................................................... 105
Interpretations Under the General Standards Rule ................................................. 105
1.310 Compliance With Standards ............................................................................. 107
1.310.001 Compliance With Standards Rule ......................................................... 107
Interpretations Under the Compliance with Standards Rule ..................................... 107
1.320 Accounting Principles ............................................................................................... 107
1.320.001 Accounting Principles Rule ................................................................... 107
Interpretations Under the Accounting Standards Rule ............................................. 108
1.400 Acts Discreditable ............................................................................................... 110
1.400.001 Acts Discreditable Rule ....................................................................... 110
Interpretations Under the Acts Discreditable Rule ................................................. 110

Case 2:09-md-02047-EEF-MBN Document 22380-26 Filed 12/02/19 Page 720 of 802
Case 1:14-cv-22408-MGC Document 2-128 Entered on FLSD Docket 05/13/2015 Page 3 of
190

AICPA Code of Professional Conduct

1.500 Fees and Other Types of Remuneration .............................................................. 116
    1.500.008 Unpaid Fees .................................................................................... 116
    1.510 Contingent Fees ................................................................................... 116
    1.520 Commissions and Referral Fees ........................................................ 119
1.600 Advertising and Other Forms of Solicitation ...................................................... 122
    1.600.001 Advertising and Other Forms of Solicitation Rule ..................................... 122
    Interpretations Under the Advertising and Other Forms of Solicitation Rule ............... 122
1.700 Confidential Information ..................................................................................... 123
    1.700.001 Confidential Client Information Rule ......................................................... 123
    Interpretations Under the Confidential Client Information Rule ................................ 124
1.800 Form of Organization and Name ........................................................................ 127
    1.800.001 Form of Organization and Name Rule ....................................................... 128
    Interpretations Under the Form of Organization and Name Rule ............................... 128
Part 2 ................................................................................................................................ 132
  2.000 Introduction .......................................................................................... 132
    .01 ............................................................................................................ 132
    .02 ............................................................................................................ 132
    2.000.010 Conceptual Framework for Members in Business ...................................... 132
    2.000.020 Ethical Conflicts .......................................................................... 136
  2.100 Integrity and Objectivity ..................................................................... 137
    2.100.001 Integrity and Objectivity Rule ................................................................. 137
    Interpretations Under the Integrity and Objectivity Rule ......................................... 137
  2.300 General Standards ................................................................................. 142
    2.300.001 General Standards Rule .......................................................................... 142
    Interpretations Under the General Standards Rule .................................................. 143
  2.310 Compliance With Standards ................................................................. 144
    2.310.001 Compliance With Standards Rule ............................................................. 144
    Interpretations Under the Compliance with Standards Rule ..................................... 144
  2.320 Accounting Principles ........................................................................... 144
    2.320.001 Accounting Principles Rule .................................................................... 144
    Interpretations Under the Accounting Principles Rule ............................................. 145
  2.400 Acts Discreditable ................................................................................ 147
    2.400.001 Acts Discreditable Rule ........................................................................ 147
    Interpretations Under the Acts Discreditable Rule .................................................. 147
Part 3 ................................................................................................................................ 151
  3.000 Introduction .......................................................................................... 151
    .01 ............................................................................................................ 151
    .02 ............................................................................................................ 151
    3.000.030 Applicability ................................................................................ 151
  3.400 Acts Discreditable ................................................................................ 151
    3.400.001 Acts Discreditable Rule ........................................................................ 151
    Interpretations Under the Acts Discreditable Rule .................................................. 151
Appendix A ...................................................................................................................... 154
    ............................................................................................................... 154
Appendix B ...................................................................................................................... 158
    ............................................................................................................... 158
Appendix C ...................................................................................................................... 160
    ............................................................................................................... 160
Appendix D ...................................................................................................................... 163
    ............................................................................................................... 163

# Preface: Applicable to All Members

## 0.100 Overview of the Code of Professional Conduct

**.01**   The AICPA Code of Professional Conduct (the code) begins with this preface, which applies to all *members* The term *member*, when used in part 1 of the code, applies to and means a *member* in *public practice*; when used in part 2 of the code, applies to and means a *member in business*; and when used in part 3 of the code, applies to and means all other *members*, such as those *members* who are retired or unemployed.

**.02**   A *member* may have multiple roles, such as a *member in business* and a *member* in *public practice*. In such circumstances, the *member* should consult all applicable parts of the code and apply the most restrictive provisions. [No prior reference: new content]

### *Effective Date*

**.03**   Effective December 15, 2014.

## 0.100.010 Principles and Rules of Conduct

**.01**   The AICPA membership adopted the Code of Professional Conduct (the code) to provide guidance and rules to all *members* in the performance of their professional responsibilities. The code consists of principles and rules as well as *interpretations* and other guidance which are discussed in 0.100.020. The principles provide the framework for the rules that govern the performance of their professional responsibilities.

**.02**   The AICPA bylaws require that *members* adhere to the rules of the code. Compliance with the rules depends primarily on *members'* understanding and voluntary actions; secondarily on reinforcement by peers and public opinion; and ultimately on disciplinary proceedings, when necessary, against *members* who fail to comply with the rules. *Members* must be prepared to justify departures from these rules.

## 0.100.020 Interpretations and Other Guidance

**.01**   *Interpretations* of the rules of conduct are adopted after exposure to the membership, state societies, state boards, and other interested parties. The *interpretations* of the rules of conduct, "Definitions" [0.400], "Application of the AICPA Code" [0.200.020], and "Citations" [0.200.030], provide guidelines about the scope and application of the rules but are not intended to limit such scope or application. A *member* who departs from the *interpretations* shall have the burden of justifying such departure in any disciplinary hearing. *Interpretations* that existed before the adoption of the code on January 12, 1988, will remain in effect until further action is deemed necessary by the appropriate senior committee.

**.02**   A *member* should also consult the following, if applicable:

•   The ethical requirements of the *member's* state CPA society and authoritative regulatory bodies such as state board(s) of accountancy

•   The Securities and Exchange Commission (SEC)

•   The Public Company Accounting Oversight Board (PCAOB)

•   The Government Accountability Office (GAO)

•   The Department of Labor (DOL)

•   Federal, state and local taxing authorities

Case 1:09-md-02047-EEF-MBN   Document 22380-26   Filed 12/02/19   Page 722 of 802
Case 1:11-cv-22408-MGC   Document 24-18   Entered on FLSD Docket 05/13/2013   Page 7 of
190

- Any other body that regulates a *member* who performs *professional services* for an entity when the *member* or entity is subject to the rules and regulations of such regulatory body. [Prior reference: Introduction]

## 0.200 Structure and Application of the AICPA Code

### 0.200.010 Structure of the AICPA Code

**.01**   A variety of topics appear in parts 1–3 of the code. When applicable, topics are aligned with the relevant rule or rules of conduct. Topics may be further divided into subtopics, and some subtopics include one or more sections. Topics, subtopics, and sections interpret the rules of conduct (see "Interpretations and Other Guidance" [0.100.020]).

**.02**   Defined terms (see "Definitions" [0.400]) as well as the plurals and possessives thereof, are shown in *italics* throughout the code. When a defined term is used in the code but is not shown in *italics*, the definition in 0.400 should not be applied. [No prior reference: new content]

*Effective Date*

**.03**   Effective December 15, 2014.

### 0.200.020 Application of the AICPA Code

**.01**   The Code of Professional Conduct (the code) was originally adopted on January 12, 1988, and was periodically revised through June 1, 2014. On June 1, 2014, the AICPA issued a codification of the code's principles, rules, *interpretations* and rulings (revised code). The revised code will be effective December 15, 2014, excluding the Conceptual Framework sections. These sections, "Conceptual Framework for Members in Public Practice" [1.000.010] and "Conceptual Framework for Members in Business" [2.000.010], will be effective December 15, 2015. *Members* are permitted to implement the revised code prior to December 15, 2014, but a member may not implement the relevant Conceptual Framework prior to implementing the entire revised code. Revisions made subsequent to June 1, 2014, are identified in appendix C, the Revision History Table, which notes the month and year of the change, the effective date of the change, the purpose for the revision, and when possible, a link to the marked revision of the content that appeared in the *Journal of Accountancy*. If the interpretation or paragraph does not contain a specific effective date or a reference to the revision history table, then the content was effective prior to June 1, 2014. [No prior reference: new content.]

**.02**   When used in the preface of the code, the term *member* includes *members*, associate *members*, and affiliate *members*, as well as international associates of the AICPA.

**.03**   The rules of conduct apply to all *professional services* performed, except

   *a.* when the wording of the rule indicates otherwise.

   *b.* that a *member* who is practicing outside the United States will not be considered in violation of a particular rule for departing from any of the rules stated herein, as long as the *member's* conduct is in accordance with the rules of the organized accounting profession in the country in which he or she is practicing. However, when a *member* is associated with *financial statements* under circumstances that would lead the reader to assume that practices of the United States were followed, the *member* must comply with the "Compliance With Standards Rule" [1.310.001 for *members* in *public practice* and 2.310.001 for *members* in *business*] and the "Accounting Principles Rule" [1.320.001 for *members* in *public practice* and 2.320.001 for *members* in *business*].

   *c.* that a *member* who is a member of a group engagement team (see the clarified Statement on Auditing Standards *Special Considerations—Audits of Group Financial Statements [Including the Work of Component Auditors]* [AICPA, *Professional Standards*, AU-C sec. 600]) will not be considered in

violation of a particular rule if a foreign component auditor (accountant) departed from any of the rules stated herein with respect to the audit or review of group *financial statements* or other *attest engagement*, as long as the foreign component auditor's (accountant's) conduct, at a minimum, is in accordance with the ethics and *independence* requirements set forth in the International Ethics Standards Board for Accountants' (IESBA's) Code of Ethics for Professional Accountants, and the members of the group engagement team are in compliance with the rules stated therein.

d. that the *independence* of the *member's firm* will not be considered *impaired* if another *firm* or entity located outside the United States that is within the *member firm's network* departed from any of the rules stated herein, as long as the other *firm* or entity's conduct, at a minimum, is in accordance with the *independence* requirements set forth in the IESBA's Code of Ethics for Professional Accountants.

**.04** A *member* shall not knowingly permit a person whom the *member* has the authority or capacity to control to carry out on his or her behalf, either with or without compensation, acts that, if carried out by the *member*, would place the *member* in violation of the rules. Further, a *member* may be held responsible for the acts of all persons associated with the *member* in *public practice* whom the *member* has the authority or capacity to control.

**.05** The *independence* of a *member* in *public practice* or a *covered member* may be *impaired* with respect to a *client* as the result of the actions or relationships, as described in the "Independence Rule" [1.200.001] and its *interpretations*, of certain persons or entities whom the *member* or *covered member* does not have the authority or capacity to control. Even if the *member* is unable to control the actions or relationships of such persons or entities, the *member's independence* may still be *impaired*. [Prior reference: ET section 91]

**.06** The "Breach of an Independence Interpretation" [1.298.010] of the "Independence Rule" [1.200.001] contains guidance with which a *member* should comply if the *member* identifies a breach of an *independence interpretation* of the code. If a *member* identifies a breach of any other provision of this code, the *member* should evaluate the significance of the breach and its effect on the *member's* ability to comply with the rules of the code. The *member* should take whatever actions may be available, as soon as practicable, to satisfactorily address the consequences of the breach. The *member* should determine whether to report the breach, for example, to those who may have been affected by the breach, a professional body, relevant regulator, or oversight authority. In making the evaluation and in determining what actions should be taken, the *member* should exercise professional judgment and take into account whether a reasonable and informed third party, weighing the significance of the breach, the action to be taken, and all the specific facts and circumstances available to the *member* at that time, would be likely to conclude that the *member* is able to comply with the rules of the code. A *member's* determination that the *member* has satisfactorily addressed the consequences of the breach will not, however, preclude an investigation or enforcement action concerning the underlying breach of the code and the *member* should be prepared to justify such determination.

*Effective Date*

**.07** Paragraph .01 is effective December 15, 2014. Paragraph .06 is effective March 31, 2016, with early implementation allowed.

[See Revision History Table.]

## 0.200.030 Citations

*Prior ET Sections*

**.01** The code has been revised by codifying the principles, rules, *interpretations*, and rulings. These revisions are effective December 15, 2014. To facilitate implementation of the revised code, the prior ET references from the professional standards of the AICPA will be included for a four-year period (until December 15, 2018) in appendix D, "Mapping Document," and in bracketed text at the end of standards, where applicable.

*Numeric Citations*

Preface: Applicable to All Members

**.02**     The numbering system for the code is "ET section X.XXX.XXX." The single digit that begins the citation identifies the part wherein the content resides. Accordingly, content from the preface begins with the single digit 0.XXX.XXX, whereas content for <u>part 1</u> begins with a 1.XXX.XXX, <u>part 2</u> with 2.XXX.XXX, and <u>part 3</u> with a 3.XXX.XXX.

**.03**     Next are two sets of three digit numbers that identify the topics and, when applicable, subtopics or sections. When a topic, subtopic or section appears in two or more parts of the code, the same number is used. For example, the "Acts Discreditable Rule" appears in <u>parts 1</u>, <u>2</u>, and <u>3</u> and the citations for this rule are <u>1.400.001</u>, <u>2.400.001</u>, and <u>3.400.001</u>, respectively. Accordingly, the two sets of three digit numbers remain the same with only the first digit changing.

**.04**     When only two digits appear, those digits represent the paragraph number. For example, the complete citation for this paragraph would be 0.200.030.04.

**.05**     All bracketed section references, such as [0.200.030.04] refer to sections within the Code of Professional Conduct. [No prior reference: new content]

*Effective Date*

**.06**     Effective December 15, 2014.

**0.200.040 Transition Provisions**

**.01**     The text of the transition provisions in effect as of May 31, 2013, has not been codified because the transition provisions apply to a limited number of situations. Nevertheless, these transition provisions are still authoritative. The texts of these transition provisions are available at http://aicpa.org/InterestAreas/ProfessionalEthics/Community/DownloadableDocuments/Transistion%20Periods.pdf. [No prior reference: new content]

*Effective Date*

**.02**     Effective December 15, 2014.

**0.200.050 Drafting Conventions**

**.01**     The code utilizes certain drafting conventions to enhance the clarity of the interpretations and definitions. For example, when the term "should consider" is used in connection with a specified procedure or action, consideration of the procedure or action by the member is presumptively required. Actual performance of the action or procedure is up to the member, based upon the outcome of the member's consideration and the member's professional judgment. Other drafting conventions used in the code include use of the terms "consider," "evaluate," and "determine," as follows:

  *a*. "Consider" is used when the member is required to think about several matters.

  *b*. "Evaluate" is used when the member has to assess and weigh the significance of a matter.

  *c*. "Determine" is used when the member has to come to a conclusion and make a decision on a matter. [No prior reference: new content]

*Effective Date*

**.02**     Effective December 15, 2014.

> A complete nonauthoritative guide, *Drafting Guide—Drafting Guidelines for Integrating the Conceptual Framework and Drafting Conventions and Style Guidance*, is also available at http://aicpa.org/InterestAreas/ProfessionalEthics/Community/DownloadableDocuments/Drafting%20Guide.pdf.

**0.300 Principles of Professional Conduct**

### 0.300.010 Preamble

**.01** Membership in the American Institute of Certified Public Accountants is voluntary. By accepting membership, a *member* assumes an obligation of self-discipline above and beyond the requirements of laws and regulations.

**.02** These Principles of the Code of Professional Conduct of the American Institute of Certified Public Accountants express the profession's recognition of its responsibilities to the public, to *clients*, and to colleagues. They guide *members* in the performance of their professional responsibilities and express the basic tenets of ethical and professional conduct. The Principles call for an unswerving commitment to honorable behavior, even at the sacrifice of personal advantage. [Prior reference: ET section 51]

### 0.300.020 Responsibilities

**.01** *Responsibilities principle.* In carrying out their responsibilities as professionals, *members* should exercise sensitive professional and moral judgments in all their activities.

**.02** As professionals, *members* perform an essential role in society. Consistent with that role, *members* of the American Institute of Certified Public Accountants have responsibilities to all those who use their *professional services*. *Members* also have a continuing responsibility to cooperate with each other to improve the art of accounting, maintain the public's confidence, and carry out the profession's special responsibilities for self-governance. The collective efforts of all *members* are required to maintain and enhance the traditions of the profession. [Prior reference: ET section 52]

### 0.300.030 The Public Interest

**.01** *The public interest principle. Members* should accept the obligation to act in a way that will serve the public interest, honor the public trust, and demonstrate a commitment to professionalism.

**.02** A distinguishing mark of a profession is acceptance of its responsibility to the public. The accounting profession's public consists of *clients*, credit grantors, governments, employers, investors, the business and financial community, and others who rely on the objectivity and integrity of *members* to maintain the orderly functioning of commerce. This reliance imposes a public interest responsibility on *members*. The public interest is defined as the collective well-being of the community of people and institutions that the profession serves.

**.03** In discharging their professional responsibilities, *members* may encounter conflicting pressures from each of those groups. In resolving those conflicts, *members* should act with integrity, guided by the precept that when *members* fulfill their responsibility to the public, *clients'* and employers' interests are best served.

**.04** Those who rely on *members* expect them to discharge their responsibilities with integrity, objectivity, due professional care, and a genuine interest in serving the public. They are expected to provide quality services, enter into fee arrangements, and offer a range of services—all in a manner that demonstrates a level of professionalism consistent with these Principles of the Code of Professional Conduct.

**.05** All who accept membership in the American Institute of Certified Public Accountants commit themselves to honor the public trust. In return for the faith that the public reposes in them, *members* should seek to continually demonstrate their dedication to professional excellence. [Prior reference: ET section 53]

### 0.300.040 Integrity

**.01** *Integrity principle.* To maintain and broaden public confidence, *members* should perform all professional responsibilities with the highest sense of integrity.

**.02** Integrity is an element of character fundamental to professional recognition. It is the quality from which the public trust derives and the benchmark against which a *member* must ultimately test all decisions.

**.03**     Integrity requires a *member* to be, among other things, honest and candid within the constraints of *client* confidentiality. Service and the public trust should not be subordinated to personal gain and advantage. Integrity can accommodate the inadvertent error and honest difference of opinion; it cannot accommodate deceit or subordination of principle.

**.04**     Integrity is measured in terms of what is right and just. In the absence of specific rules, standards, or guidance or in the face of conflicting opinions, a *member* should test decisions and deeds by asking: "Am I doing what a person of integrity would do? Have I retained my integrity?" Integrity requires a *member* to observe both the form and the spirit of technical and ethical standards; circumvention of those standards constitutes subordination of judgment.

**.05**     Integrity also requires a *member* to observe the principles of objectivity and independence and of due care. [Prior reference: ET section 54]

## 0.300.050 Objectivity and Independence

**.01**     *Objectivity and independence principle.* A *member* should maintain objectivity and be free of conflicts of interest in discharging professional responsibilities. A *member* in public practice should be independent in fact and appearance when providing auditing and other attestation services.

**.02**     Objectivity is a state of mind, a quality that lends value to a *member's* services. It is a distinguishing feature of the profession. The principle of objectivity imposes the obligation to be impartial, intellectually honest, and free of conflicts of interest. *Independence* precludes relationships that may appear to *impair* a *member's* objectivity in rendering attestation services.

**.03**     *Members* often serve multiple interests in many different capacities and must demonstrate their objectivity in varying circumstances. *Members* in public practice render attest, tax, and management advisory services. Other *members* prepare *financial statements* in the employment of others, perform internal auditing services, and serve in financial and management capacities in industry, education, and government. They also educate and train those who aspire to admission into the profession. Regardless of service or capacity, *members* should protect the integrity of their work, maintain objectivity, and avoid any subordination of their judgment.

**.04**     For a *member* in public practice, the maintenance of objectivity and *independence* requires a continuing assessment of *client* relationships and public responsibility. Such a *member* who provides auditing and other attestation services should be independent in fact and appearance. In providing all other services, a *member* should maintain objectivity and avoid conflicts of interest.

**.05**     Although *members* not in public practice cannot maintain the appearance of *independence*, they nevertheless have the responsibility to maintain objectivity in rendering *professional services*. *Members* employed by others to prepare *financial statements* or to perform auditing, tax, or consulting services are charged with the same responsibility for objectivity as *members* in public practice and must be scrupulous in their application of generally accepted accounting principles and candid in all their dealings with *members* in public practice. [Prior reference: ET section 55]

## 0.300.060 Due Care

**.01**     *Due care principle.* A *member* should observe the profession's technical and ethical standards, strive continually to improve competence and the quality of services, and discharge professional responsibility to the best of the *member's* ability.

**.02**     The quest for excellence is the essence of due care. Due care requires a *member* to discharge professional responsibilities with competence and diligence. It imposes the obligation to perform *professional services* to the best of a *member's* ability, with concern for the best interest of those for whom the services are performed, and consistent with the profession's responsibility to the public.

**.03** Competence is derived from a synthesis of education and experience. It begins with a mastery of the common body of knowledge required for designation as a certified public accountant. The maintenance of competence requires a commitment to learning and professional improvement that must continue throughout a *member's* professional life. It is a *member's* individual responsibility. In all engagements and in all responsibilities, each *member* should undertake to achieve a level of competence that will assure that the quality of the *member's* services meets the high level of professionalism required by these Principles.

**.04** Competence represents the attainment and maintenance of a level of understanding and knowledge that enables a *member* to render services with facility and acumen. It also establishes the limitations of a *member's* capabilities by dictating that consultation or referral may be required when a professional engagement exceeds the personal competence of a *member* or a *member's firm*. Each *member* is responsible for assessing his or her own competence of evaluating whether education, experience, and judgment are adequate for the responsibility to be assumed.

**.05** *Members* should be diligent in discharging responsibilities to *clients*, employers, and the public. Diligence imposes the responsibility to render services promptly and carefully, to be thorough, and to observe applicable technical and ethical standards.

**.06** Due care requires a *member* to plan and supervise adequately any professional activity for which he or she is responsible. [Prior reference: ET section 56]

#### 0.300.070 Scope and Nature of Services

**.01** *Scope and nature of services principle.* A *member* in public practice should observe the Principles of the Code of Professional Conduct in determining the scope and nature of services to be provided.

**.02** The public interest aspect of *members'* services requires that such services be consistent with acceptable professional behavior for *members*. Integrity requires that service and the public trust not be subordinated to personal gain and advantage. Objectivity and *independence* require that *members* be free from conflicts of interest in discharging professional responsibilities. Due care requires that services be provided with competence and diligence.

**.03** Each of these Principles should be considered by *members* in determining whether or not to provide specific services in individual circumstances. In some instances, they may represent an overall constraint on the nonaudit services that might be offered to a specific *client*. No hard-and-fast rules can be developed to help *members* reach these judgments, but they must be satisfied that they are meeting the spirit of the Principles in this regard.

**.04** In order to accomplish this, *members* should

> *a.* Practice in *firms* that have in place internal quality control procedures to ensure that services are competently delivered and adequately supervised.
>
> *b.* Determine, in their individual judgments, whether the scope and nature of other services provided to an audit *client* would create a conflict of interest in the performance of the audit function for that *client*.
>
> *c.* Assess, in their individual judgments, whether an activity is consistent with their role as professionals. [Prior reference: ET section 57]

#### 0.400 Definitions

Pursuant to its authority under the bylaws (paragraph .01 [3.6.2.2] of BL section 360, *Committees* [AICPA, *Professional Standards*]) to interpret the code, the Professional Ethics Executive Committee has issued the following definitions of terms appearing in the code.

**.01**    **Acceptable level.** In connection with *independence*, an acceptable level is a level at which a reasonable and informed third party who is aware of the relevant information would be expected to conclude that a *member's independence* is not *impaired*. When used in connection with any rule but the "Independence Rule" [1.200.001] an acceptable level is a level at which a reasonable and informed third party who is aware of the relevant information would be expected to conclude that a *member's* compliance with the rules is not compromised. [Prior reference: ET section 100-1 and new content]

*Effective Date*

When this definition is used in connection with any rule but the "Independence Rule" [1.200.001] it is effective December 15, 2014.

**.02**    **Affiliate.** The following entities are affiliates of a *financial statement attest client*:

*a.* An entity (for example, subsidiary, partnership, or limited liability company [LLC]) that a *financial statement attest client* can *control*.

*b.* An entity in which a *financial statement attest client* or an entity *controlled* by the *financial statement attest client* has a *direct financial interest* that gives the *financial statement attest client* *significant influence* over such entity and that is material to the *financial statement attest client*.

*c.* An entity (for example, parent, partnership, or LLC) that *controls* a *financial statement attest client* when the *financial statement attest client* is material to such entity.

*d.* An entity with a *direct financial interest* in the *financial statement attest client* when that entity has *significant influence* over the *financial statement attest client*, and the interest in the *financial statement attest client* is material to such entity.

*e.* A sister entity of a *financial statement attest client* if the *financial statement attest client* and sister entity are each material to the entity that *controls* both.

*f.* A trustee that is deemed to *control* a trust *financial statement attest client* that is not an investment company.

*g.* The sponsor of a single employer employee benefit plan *financial statement attest client*.

*h.* Any union or participating employer that has *significant influence* over a multiple or multiemployer employee benefit plan *financial statement attest client*.

*i.* An employee benefit plan sponsored by either a *financial statement attest client* or an entity *controlled* by the *financial statement attest client*. A *financial statement attest client* that sponsors an employee benefit plan includes, but is not limited to, a union whose members participate in the plan and participating employers of a multiple or multiemployer plan.

*j.* An investment adviser, a general partner, or a trustee of an investment company *financial statement attest client* (fund) if the fund is material to the investment adviser, general partner, or trustee that is deemed to have either *control* or *significant influence* over the fund. When considering materiality, *members* should consider investments in, and fees received from, the fund.

[Prior reference: paragraph .20 of ET section 101]

**.03**    **Attest client.** A *client* that engages a *member* to perform an *attest engagement* or with respect to which a *member* performs an *attest engagement*. [No prior reference: new content]

See paragraph .06 of the "Client Affiliate" interpretation [1.224.010] for acquisitions and business combinations that involve a *financial statement attest client*.

*Effective Date*

This definition is effective December 15, 2014.

[See Revision History Table.]

.04  **Attest engagement.** An engagement that requires *independence*, as set forth in the AICPA Statements on Auditing Standards (SASs), Statements on Standards for Accounting and Review Services (SSARSs), and Statements on Standards for Attestation Engagements (SSAEs). [Prior reference: paragraph .01 of ET section 92]

.05  **Attest engagement team.** Those individuals participating in the *attest engagement*, including those who perform concurring and engagement quality reviews. The attest engagement team includes all employees and contractors retained by the *firm* who participate in the *attest engagement*, regardless of their functional classification (for example, audit, tax, or management consulting services). The attest engagement team excludes specialists, as discussed in AU-C section 620, *Using the Work of an Auditor's Specialist* (AICPA, *Professional Standards*), and individuals who perform only routine clerical functions, such as word processing and photocopying. [Prior reference: paragraph .02 of ET section 92]

.06  **Beneficially owned.** Describes a *financial interest* of which an individual or entity is not the record owner but has a right to some or all of the underlying benefits of ownership. These benefits include the authority to direct the voting or disposition of the interest or to receive the economic benefits of the ownership of the interest. [Prior reference: paragraph .17 of ET section 101]

.07  **Client.** Any person or entity, other than the *member's* employer, that engages a *member* or *member's firm* to perform *professional services* and, if different, the person or entity with respect to which *professional services* are performed. For purposes of this definition, the term employer does not include the following:

  *a.* Person or entity engaged in *public practice.*

  *b.* Federal, state, and local government or component unit thereof, provided that the *member* performing *professional services* with respect to the entity is

    i. directly elected by voters of the government or component unit thereof with respect to which *professional services* are performed;

    ii. an individual who is (1) appointed by a legislative body and (2) subject to removal by a legislative body; or

    iii. appointed by someone other than the legislative body, so long as the appointment is confirmed by the legislative body and removal is subject to oversight or approval by the legislative body.

[Prior reference: paragraph .03 of ET section 92]

.08  **Close relative.** A parent, sibling, or nondependent child. [Prior reference: paragraph .04 of ET section 92]

.09  **Confidential client information.** Any information obtained from the *client* that is not available to the public. Information that is available to the public includes, but is not limited to, information

  *a.* in a book, periodical, newspaper, or similar publication;

  *b.* in a *client* document that has been released by the *client* to the public or that has otherwise become a matter of public knowledge;

  *c.* on publicly accessible websites, databases, online discussion forums, or other electronic media by which members of the public can access the information;

*d.* released or disclosed by the *client* or other third parties in media interviews, speeches, testimony in a public forum, presentations made at seminars or trade association meetings, panel discussions, earnings press release calls, investor calls, analyst sessions, investor conference presentations, or a similar public forum;

*e.* maintained by, or filed with, regulatory or governmental bodies that is available to the public; or

*f.* obtained from other public sources.

Unless the particular *client* information is available to the public, such information should be considered confidential client information. *Members* are advised that federal, state, or local statutes, rules, or regulations concerning confidentiality of *client* information may be more restrictive than the requirements in the code. [Prior reference: paragraph .05 of ET section 92]

.10 **Control (s) (led).** As used in FASB *Accounting Standards Codification* (ASC) 810, *Consolidation.* When used in the "Client Affiliates" interpretation [1.224.010] of the "Independence Rule" [1.200.001], control depends upon the entity in question. For example, when used for not-for-profit entities, control is as used in FASB ASC 958-805-20; for commercial entities, control is as used in FASB ASC 810. [Prior reference: numerous ET sections; also see "Breakdown of the Term Control in the Code" at AICPA.org www.aicpa.org/InterestAreas/ProfessionalEthics/Community/DownloadableDocuments/breakdown-of-the-term-control.pdf]

.11 **Council.** The AICPA Council. [Prior reference: paragraph .06 of ET section 92]

.12 **Covered member.** All of the following:

*a.* an individual on the *attest engagement team.*

*b.* an *individual in a position to influence the attest engagement.*

*c.* a *partner*, *partner equivalent*, or *manager* who provides more than 10 hours of nonattest services to the *attest client* within any fiscal year. Designation as *covered member* ends on the later of (i) the date that the *firm* signs the report on the *financial statements* for the fiscal year during which those services were provided or (ii) the date he or she no longer expects to provide 10 or more hours of nonattest services to the *attest client* on a recurring basis.

*d.* a *partner* or *partner equivalent* in the *office* in which the lead *attest engagement partner* or *partner equivalent* primarily practices in connection with the *attest engagement.*

*e.* the *firm*, including the *firm's* employee benefit plans.

*f.* an entity whose operating, financial, or accounting policies can be *controlled* by any of the individuals or entities described in items *a–e* or two or more such individuals or entities if they act together. [Prior reference: paragraph .07 of ET section 92]

*Effective Date*

The addition of partner equivalents to this definition is effective for engagements covering periods beginning on or after December 15, 2014.

.13 **Direct financial interest.** A *financial interest* that is

*a.* owned directly by an individual or entity, including those managed on a discretionary basis by others.

*b.* under the control of an individual or entity, including those managed on a discretionary basis by others.

*c. beneficially owned* through an investment vehicle, estate, trust, or other intermediary when the beneficiary

    i. controls the intermediary or

    ii. has the authority to supervise or participate in the intermediary's investment decisions.

When used in this definition, the term control includes situations in which the *covered member* has the ability to exercise such control, either individually or acting together with his or her *firm* or other *partners* or professional employees of his or her *firm*. [Prior reference: paragraph .17 of ET section 101]

**.14**      **Employing organization.** Any entity that employs the *member* or engages the *member* on a contractual or volunteer basis in an executive, a staff, a governance, an advisory, or an administrative capacity to provide *professional services.* [No prior reference: new content]

*Effective Date*

This definition is effective December 15, 2014.

**.15**      **Financial interest.** An ownership interest in an equity or a debt security issued by an entity, including rights and obligations to acquire such an interest and derivatives directly related to such interest. [Prior reference: paragraph .17 of ET section 101]

**.16**      **Financial statement attest client.** An entity whose *financial statements* are audited, reviewed, or compiled when the *member's* compilation report does not disclose a lack of *independence*. This term is used in the "Client Affiliates" interpretation [1.224.010] of the "Independence Rule" [1.200.001] and in the definition of an affiliate [0.400.02]. [Prior reference: paragraph .20 of ET section 101]

**.17**      **Financial statements.** A presentation of financial data, including accompanying disclosures, if any, intended to communicate an entity's economic resources or obligations, or both, at a point in time or the changes therein for a period of time, in accordance with the applicable financial reporting framework. Incidental financial data to support recommendations to a *client* or in (*a*) documents for which the reporting is governed by SSAEs and (*b*) tax returns and supporting schedules do not, for this purpose, constitute financial statements. The statement, affidavit, or signature of preparers required on tax returns neither constitutes an opinion on financial statements nor requires a disclaimer of such opinion. [Prior reference: paragraph .10 of ET section 92]

**.18**      **Firm.** A form of organization permitted by law or regulation whose characteristics conform to resolutions of the *Council* and that is engaged in *public practice*. A firm includes the individual *partners* thereof, except for purposes of applying the "Independence Rule" [1.200.001] and related *interpretations*. For purposes of applying the "Independence Rule," a firm includes a *network firm* when the engagement is either a *financial statement* audit or review engagement and the audit or review report is not restricted, as set forth in the AICPA SASs and SSARSs (AICPA, *Professional Standards*). [Prior reference: paragraph .11 of ET section 92]

**.19**      **Immediate family.** A spouse, spousal equivalent, or dependent (regardless of whether the dependent is related). [Prior reference: paragraph .13 of ET section 92]

**.20**      **Impair(ed)(ing).** In connection with *independence*, to effectively extinguish *independence*. When a *member's independence* is impaired, the *member* is not independent. [Prior reference: paragraph .09 of ET section 100-1]

**.21**      **Independence.** Consists of two elements, defined as follows:

*a.* Independence of mind is the state of mind that permits a *member* to perform an attest service without being affected by influences that compromise professional judgment, thereby allowing an individual to act with integrity and exercise objectivity and professional skepticism.

*b.* Independence in appearance is the avoidance of circumstances that would cause a reasonable and informed third party who has knowledge of all relevant information, including the *safeguards* applied, to reasonably conclude that the integrity, objectivity, or professional skepticism of a *firm* or member of the *attest engagement team* is compromised.

This definition should not be interpreted as an absolute. For example, the phrase "without being affected by influences that compromise professional judgment" is not intended to convey that the *member* must be free of any and all influences that might compromise objective judgment. Instead, the *member* should determine whether such influences, if present, create a *threat* that is not at an *acceptable level* that a *member* would not act with integrity and exercise objectivity and professional skepticism in the conduct of a particular engagement or would be perceived as not being able to do so by a reasonable and informed third party with knowledge of all relevant information. [Prior reference: paragraphs .06–.08 of ET section 100-1]

**.22** **Indirect financial interest.** A *financial interest beneficially owned* through an investment vehicle, an estate, a trust, or an other intermediary when the beneficiary neither controls the intermediary nor has the authority to supervise or participate in the intermediary's investment decisions. When used in this definition, control includes situations in which the *covered member* has the ability to exercise such control, either individually or acting together with his or her *firm* or other *partners* or professional employees of his or her *firm*. [Prior reference: paragraph .17 of ET section 101]

**.23** **Individual in a position to influence the attest engagement.** One who

*a.* evaluates the performance or recommends the compensation of the *attest engagement partner*;

*b.* directly supervises or manages the *attest engagement partner*, including all successively senior levels above that individual through the *firm's* chief executive;

*c.* consults with the *attest engagement team* regarding technical or industry-related issues specific to the *attest engagement*; or

*d.* participates in or oversees, at all successively senior levels, quality control activities, including internal monitoring, with respect to the specific *attest engagement*.

[Prior reference: paragraph .14 of ET section 92]

**.24** **Institute.** The AICPA. [Prior reference: paragraph .15 of ET section 92]

**.25** **Interpretation.** Pronouncements issued by the division of professional ethics to provide guidelines concerning the scope and application of the rules of conduct. [Prior reference: paragraph .16 of ET section 92]

**.26** **Joint closely held investment.** An investment in an entity or a property by the *member* and *client* (or the *client's* officers or directors or any owner who has the ability to exercise *significant influence* over the *client*) that enables them to *control* the entity or property. [Prior reference: paragraph .17 of ET section 92]

**.27** **Key position.** A position in which an individual has

*a.* primary responsibility for significant accounting functions that support material components of the *financial statements*;

*b.* primary responsibility for the preparation of the *financial statements*; or

*c.* the ability to exercise influence over the contents of the *financial statements*, including when the individual is a member of the board of directors or similar governing body, chief executive officer, president, chief financial officer, chief operating officer, general counsel, chief accounting officer, controller, director of internal audit, director of financial reporting, treasurer, or any equivalent position.

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 733 of 802
Case 1:09-cv-22408-MGC Document 22380-36 Filed 12/02/19 Page 18 of
190

For purposes of *attest engagements* not involving a *client's financial statements*, a key position is one in which an individual is primarily responsible for, or able to influence, the subject matter of the *attest engagement*, as previously described. [Prior reference: paragraph .18 of ET section 92]

.28    **Lending institution.** An entity that, as part of its normal business operations, makes *loans*. This definition is not meant to include an organization that might schedule payment for services for a client over a period of time. Examples of such entities are banks, credit unions, certain retailers, and insurance and finance companies. For example, for automobile leases addressed by the "Loans and Leases With Lending Institutions" interpretation [1.260.020] of the "Independence Rule" [1.200.001], an entity is considered a lending institution if it leases automobiles as part of its normal business operations. [Prior reference: paragraph .09 of ET section 92]

*Effective Date*

This revised definition is effective December 15, 2014.

.29    **Loan.** A contractual obligation to pay or right to receive money on demand or on a fixed or determinable date and includes a stated or implied rate of return to the lender. For purposes of this definition, loans include, among other things, a guarantee of a loan, a letter of credit, a line of credit, or a loan commitment. However, for purposes of this definition, a loan would not include debt securities (which are considered a *financial interest*) or lease arrangements. [Prior reference: paragraph .19 of ET section 92]

*Effective Date*

This revised definition is effective December 15, 2014.

.30    **Manager.** A professional employee of the *firm* who has continuing responsibility for the planning and supervision of engagements for specified *clients*. [Prior reference: paragraph .20 of ET section 92]

.31    **Member.** A member, associate member, affiliate member, or international associate of the AICPA. When the term member is used in part 1 of the code, it means a member in *public practice*; when used in part 2 of the code, it means a *member in business*; and when used in part 3 of the code, it means all other members. [Prior reference: paragraph .21 of ET section 92]

.32    **Member(s) in business.** A *member* who is employed or engaged on a contractual or volunteer basis in a(n) executive, staff, governance, advisory, or administrative capacity in such areas as industry, the public sector, education, the not-for-profit sector, and regulatory or professional bodies. This does not include a *member* engaged in *public practice*. [Prior reference: paragraph .22 of ET section 92]

.33    **Network.** For purposes of the "Network and Network Firms" interpretation [1.220.010] of the "Independence Rule" [1.200.001], a network is an association of entities that includes one or more *firms* that (*a*) cooperate for the purpose of enhancing the *firms'* capabilities to provide *professional services* and (*b*) share one or more of the following characteristics:

   *a.* The use of a common brand name, including common initials, as part of the *firm* name

   *b.* Common *control* among the *firms* through ownership, management, or other means

   *c.* Profits or costs, excluding costs of operating the association; costs of developing audit methodologies, manuals, and training courses; and other costs that are immaterial to the *firm*

   *d.* A common business strategy that involves ongoing collaboration amongst the *firms* whereby the *firms* are responsible for implementing the association's strategy and are held accountable for performance pursuant to that strategy

   *e.* A significant part of professional resources

*f.* Common quality control policies and procedures that *firms* are required to implement and that are monitored by the association

A network may comprise a subset of entities within an association only if that subset of entities cooperates and shares one or more of the characteristics set forth in the preceding list. [Prior reference: paragraph .23 of ET section 92]

**.34**    **Network firm.** A *firm* or other entity that belongs to a *network*. This includes any entity (including another *firm*) that the network firm, by itself or through one or more of its owners, *controls*, is *controlled* by, or is under common *control* with. [Prior reference: paragraph .24 of ET section 92]

**.35**    **Normal lending procedures, terms, and requirements.** In connection with a *covered member's loan* from a *lending institution*, lending procedures, terms, and requirements that are reasonably comparable with those relating to *loans* of a similar character committed to other borrowers during the period in which the *loan* to the *covered member* is committed. Accordingly, in making such comparison and evaluating whether a *loan* was made under normal lending procedures, terms, and requirements, the *covered member* should consider all the circumstances under which the *loan* was granted, including the following:

     *a.* The amount of the *loan* in relation to the value of the collateral pledged as security and the credit standing of the *covered member*

     *b.* Repayment terms

     *c.* Interest rate, including points

     *d.* Closing costs

     *e.* General availability of such *loans* to the public

Related prohibitions that may be more restrictive are prescribed by certain state and federal agencies having regulatory authority over such *lending institutions*. Broker-dealers, for example, are subject to regulation by the SEC. [Prior reference: paragraph .25 of ET section 92]

**.36**    **Office.** A reasonably distinct subgroup within a *firm*, whether constituted by formal organization or informal practice, in which personnel who make up the subgroup generally serve the same group of *clients* or work on the same categories of matters. Substance should govern the office classification. For example, the expected regular personnel interactions and assigned reporting channels of an individual may well be more important than an individual's physical location. [Prior reference: paragraph .26 of ET section 92]

**.37**    **Partner.** A proprietor, a shareholder, an equity or a nonequity partner, or any individual who assumes the risks and benefits of *firm* ownership or is otherwise held out by the *firm* to be the equivalent of any of the aforementioned. [Prior reference: paragraph .27 of ET section 92]

**.38**    **Partner equivalent.** A professional employee who is not a *partner* of the *firm* but who either

     *a.* has the ultimate responsibility for the conduct of an *attest engagement*, including the authority to sign or affix the *firm's* name to an attest report or issue, or authorize others to issue, an attest report on behalf of the *firm* without *partner* approval; or

     *b.* has the authority to bind the *firm* to conduct an *attest engagement* without *partner* approval. For example, the professional employee has the authority to sign or affix the *firm's* name to an *attest engagement* letter or contract to conduct an *attest engagement* without *partner* approval.

Firms may use different titles to refer to professional employees with this authority, although a title is not determinative of a partner equivalent. For purposes of this definition, *partner* approval does not include any partner approvals that are part of the *firm's* normal approval and quality control review procedures applicable to a partner.

This definition is solely for the purpose of applying the "Independence Rule" [1.200.001] and its *interpretations* and should not be used or relied upon in any other context, including the determination of whether the partner equivalent is an owner of the *firm*. [Prior reference: paragraph .28 of ET section 92.]

*Effective Date*

This definition is effective for engagements covering periods beginning on or after December 15, 2014.

.39 **Period of the professional engagement.** The period begins when a *member* either signs an initial engagement letter or other agreement to perform attest services or begins to perform an *attest engagement* for a *client*, whichever is earlier. The period lasts for the entire duration of the professional relationship, which could cover many periods, and ends with the formal or informal notification, either by the *member* or *client*, of the termination of the professional relationship or by the issuance of a report, whichever is later. Accordingly, the period does not end with the issuance of a report and recommence with the beginning of the following year's *attest engagement*. [Prior reference: paragraph .29 of ET section 92]

.40 **Professional services.** Include all services requiring accountancy or related skills that are performed by a *member* for a *client*, an employer, or on a volunteer basis. These services include, but are not limited to accounting, audit and other attest services, tax, bookkeeping, management consulting, financial management, corporate governance, personal financial planning, business valuation, litigation support, educational, and those services for which standards are promulgated by bodies designated by *Council*. [Prior reference: paragraph .31 of ET section 92]

.41 **Public interest entities.** All of the following:

> *a.* All listed entities, including entities that are outside the United States whose shares, stock, or debt are quoted or listed on a recognized stock exchange or marketed under the regulations of a recognized stock exchange or other equivalent body.

> *b.* Any entity for which an audit is required by regulation or legislation to be conducted in compliance with the same *independence* requirements that apply to an audit of listed entities (for example, requirements of the SEC, the PCAOB, or other similar regulators or standard setters).

*Members* may wish to consider whether additional entities should also be treated as public interest entities because they have a large number and wide range of stakeholders. Factors to be considered may include

- the nature of the business, such as the holding of assets in a fiduciary capacity for a large number of stakeholders;

- size; and

- number of employees.

*Members* should refer to the *independence* regulations of applicable authoritative regulatory bodies when a *member* performs attest services and is required to be independent of the *client* under such regulations. [Prior reference: paragraph .20 of ET section 100-1]

.42 **Public practice.** Consists of the performance of *professional services* for a *client* by a *member* or *member's firm*. [Prior reference: paragraph .30 of ET section 92]

.43 **Safeguards.** Actions or other measures that may eliminate a *threat* or reduce a *threat* to an *acceptable level*. [Prior reference: paragraph .20 of ET section 100-1]

.44 **Share-based compensation arrangements.** As defined in the FASB ASC glossary under the term share-based payment arrangements. [Prior reference: paragraph .02 ET section 101]

.45 **Significant influence.** As defined in FASB ASC 323-10-15. [Prior reference: paragraph .32 of ET section 92]

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 736 of 802
Case 2:12-cv-22408-MGC Document 272-8 Entered on FLSD Docket 05/13/2016 Page 21 of
190

**.46**     **Source documents.** The documents upon which evidence of an accounting transaction are initially recorded. Source documents are often followed by the creation of many additional records and reports that do not, however, qualify as initial recordings. Examples of source documents are purchase orders, payroll time cards, and customer orders. [Prior reference: footnote 17 in paragraph .05 of ET section 101]

**.47**     **Third-party service provider.** All of the following:

> *a.* An entity that the *member* does not *control*, individually or collectively with his or her *firm* or with *members* of his or her *firm*.
>
> *b.* An individual not employed by the *member* who assists the *member* in providing *professional services* to *clients* (for example, bookkeeping, tax return preparation, consulting, or attest services, including related clerical and data entry functions). [Prior reference: paragraphs .224–.225 of ET section 191, .023–.024 of ET section 291, and .001–.002 of ET section 391]

**.48**     **Those charged with governance.** The person(s) or organization(s) (for example, a corporate trustee) with responsibility for overseeing the strategic direction of the entity and the obligations related to the accountability of the entity. This includes overseeing the financial reporting process. Those charged with governance may include management personnel (for example, executive members of a governance board or an owner-manager).

When an *interpretation* requires communicating with those charged with governance, the *member* should determine the appropriate person(s) within the entity's governance structure with whom to communicate, based on the nature and importance of the particular circumstances and matter to be communicated. If the *member* communicates with a subgroup of those charged with governance (for example, an audit committee or an individual), the *member* should determine whether communication with all of those charged with governance is also necessary, so that they are adequately informed. [Prior reference: paragraph .33 of ET section 92]

**Effective Date**

This definition is effective April 30, 2014.

**.49**     **Threat(s).** In connection with independence, threats are relationships or circumstances that could *impair independence*. In connection with any rule but the "Independence Rule" [1.200.001], threats are relationships or circumstances that could compromise a *member's* compliance with the rules. [Prior reference: paragraph .10 of ET section 100-1]

**Effective Date**

When this definition is used in connection with any rule but the "Independence Rule" it is effective December 15, 2014.

## 0.500 Nonauthoritative Guidance

**.01**     The code is the only authoritative source of AICPA ethics rules and *interpretations*. The staff of the Professional Ethics Division has issued nonauthoritative guidance to assist *members* and others in their implementation of the code. Such guidance does not amend or override the code. Further, the guidance is not meant to be exhaustive and does not establish best practices, set standards, or serve as official pronouncements of the AICPA. These documents were not approved in accordance with normal due process, which requires proposed changes to be exposed to the public and requires consideration of *members'* and others' comments.

**.02**     References to relevant nonauthoritative guidance, when available, are provided throughout the code in boxed text at the end of the applicable *interpretation*. [No prior reference: new content]

**Effective Date**

**.03**       Effective December 15, 2014.

### 0.600 New, Revised, and Pending Interpretations and Other Guidance

### 0.600.010 New and Revised Interpretations and Other Guidance

**.01**       Periodically, new or revised authoritative ethics *interpretations* and other guidance are issued. Publication of the text of a new or revised pronouncement or a notice with a link to the text of a new or revised authoritative *interpretation* and other guidance in the *Journal of Accountancy* constitutes notice to *members*. Hence, the effective date of the *interpretation* and other guidance is the last day of the month in which the pronouncement or notice is published in the *Journal of Accountancy*, unless otherwise noted. The Professional Ethics Division takes into consideration the time that would have been reasonable for the *member* to comply with the pronouncement. This section lists the citation and title of any new or revised *interpretation* or other guidance for a period of 12 months after its effective date. When an *interpretation* or other guidance is not yet effective, it will appear as a pending *interpretation* or other guidance (see "Pending Interpretations and Other Guidance" [0.600.020]).

- "Individual in a Campaign Treasurer or Similar Financial Position" [1.275.025]. (Revised April 2015. Effective April 30, 2015.)

- "Client Affiliates" [1.224.010]. (Revised April 2015. Effective April 30, 2015.)

- Revised paragraph .03 of "Definitions" [0.400]. (Revised April 2015. Effective April 30, 2015.)

- "Application of AICPA Code" [0.200.020]. (Revised June 2014. Effective September 30, 2014.)

- "Conflicts of Interest for Members in Public Practice" [1.110.010]. (Issued June 2014. Effective September 30, 2014.)

- "Conflicts of Interest for Members in Business" [2.110.010]. (Issued June 2014. Effective September 30, 2014.)

- "Council Resolution Concerning the Form of Organization and Name Rule" [Appendix B]. (Issued January 2015. Effective October 19, 2014.)

- "Overview of the Code of Professional Conduct" [0.100]. (Issued June 2014. Effective December 15, 2014.)

- "Structure of the AICPA Code" [0.200.010]. (Issued June 2014. Effective December 15, 2014.)

- "Application of the AICPA Code" [0.200.020.01]. (Issued June 2014. Effective December 15, 2014.)

- "Citations" [0.200.030]. (Issued June 2014. Effective December 15, 2014.)

- "Transition Provisions" [0.200.040]. (Issued June 2014. Effective December 15, 2014.)

- "Drafting Conventions" [0.200.050]. (Issued June 2014. Effective December 15, 2014.)

- "Acceptable level" under "Definitions" [0.400.01]. (Issued June 2014. When this definition is used in connection with any rule but the "Independence Rule" [1.200.001], it is effective December 15, 2014.)

- "Attest client" under "Definitions" [0.400.03]. (Issued June 2014. Effective December 15, 2014.)

- "Employing organization" under "Definitions" [0.400.14]. (Issued June 2014. Effective December 15, 2014.)

- "Lending institution" under "Definitions" [0.400.28] (Revised June 2014. Effective December 15, 2014

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 738 of 802
Case 2:12-cv-22408-MGC Document 277-8 Entered on FLSD Docket 05/13/2016 Page 23 of
190

- "Loan" under "Definitions" [0.400.29] (Revised June 2014. Effective December 15, 2014.)

- "Threats" under "Definitions" [0.400.49]. (Issued June 2014. When this definition is used in connection with any rule but the "Independence Rule," it is effective December 15, 2014.)

- "Nonauthoritative Guidance" [0.500]. (Issued June 2014. Effective December 15, 2014.)

- "New, Revised, and Pending Interpretations and Other Guidance" [0.600]. (Issued June 2014. Effective December 15, 2014.)

- "Deleted Interpretations and Other Guidance" [0.700]. (Issued June 2014. Effective December 15, 2014.)

- "Members in Public Practice—Introduction" [1.000]. (Issued June 2014. Effective December 15, 2014.)

- "Members in Public Practice—Ethical Conflicts" [1.000.020]. (Issued June 2014. Effective December 15, 2014.)

- "Application of the Conceptual Framework for Members in Public Practice and Ethical Conflicts" interpretation [1.100.005] of the "Integrity and Objectivity Rule" (Issued June 2014. Paragraph .03 is effective December 15, 2014.)

- "Director Positions" [1.110.020]. (Revised June 2014. Effective December 15, 2014.)

- "Application of the Conceptual Framework for Independence and Ethical Conflicts" interpretation [1.200.005.03] of the "Independence Rule." (Issued June 2014. Effective December 15, 2014)

- "Fees and Other Types of Remuneration" [1.230.020]. (Issued June 2014. Effective December 15, 2014.)

- "Trust Investments" [1.245.020]. (Revised June 2014. Effective December 15, 2014.)

- "Tax Services" [1.295.160.06]. (Revised June 2014. Effective December 15, 2014.)

- "Application of the Conceptual Framework for Members in Public Practice and Ethical Conflicts" interpretation [1.300.005] of the "General Standards Rule." (Issued June 2014. Paragraph .03 is effective December 15, 2014.)

- "Application of the Conceptual Framework for Members in Public Practice and Ethical Conflicts" interpretation [1.310.005] of the "Compliance with Standards Rule." (Issued June 2014. Paragraph .03 is effective December 15, 2014.)

- "Application of the Conceptual Framework for Members in Public Practice and Ethical Conflicts" interpretation [1.320.005] of the "Accounting Standards Rule." (Issued June 2014. Paragraph .03 is effective December 15, 2014.)

- "Application of the Conceptual Framework for Members in Public Practice and Ethical Conflicts" interpretation [1.400.005] of the "Acts Discreditable Rule." (Issued June 2014. Paragraph .03 is effective December 15, 2014.)

- "False, Misleading, or Deceptive Acts in Promoting or Marketing Professional Services" [1.400.090]. (Issued June 2014. Effective December 15, 2014.)

- "Removing Client Files or Proprietary Information From a Firm" [1.400.210]. (Revised June 2014. Effective December 15, 2014.)

- "Use of Confidential Information From Nonclient Sources" [1.400.240]. (Revised June 2014. Effective December 15, 2014.)

- "Unpaid Fees" [1.500.008]. (Issued June 2014. Effective December 15, 2014.)

- "Application of the Conceptual Framework for Members in Public Practice and Ethical Conflicts" interpretation [1.510.005] of the "Contingent Fees Rule." (Issued June 2014. Paragraph .03 is effective December 15, 2014.)

- "Application of the Conceptual Framework for Members in Public Practice and Ethical Conflicts" interpretation [1.520.005] of the "Commissions and Referral Fees Rule." (Issued June 2014. Paragraph .03 is effective December 15, 2014.)

- "Billing for a Subcontractor's Services" [1.520.070]. (Revised June 2014. Effective December 15, 2014.)

- "Application of the Conceptual Framework for Members in Public Practice and Ethical Conflicts" interpretation [1.600.005] of the "Advertising and Other Forms of Solicitation Rule." (Issued June 2014. Paragraph .03 is effective December 15, 2014.)

- "Use of AICPA-Awarded Designation" [1.600.030] (Revised June 2014. Effective December 15, 2014.)

- "Application of the Conceptual Framework for Members in Public Practice and Ethical Conflicts" interpretation [1.700.005] of the "Confidential Client Information Rule." (Issued June 2014. Paragraph .03 is effective December 15, 2014.)

- "Disclosing Client Information in Director Positions" [1.700.080]. (Revised June 2014. Effective December 15, 2014.)

- "Disclosing Confidential Client Information as a Result of a Subpoena or Summons" [1.700.100]. (Issued June 2014. Effective December 15, 2014.)

- "Application of the Conceptual Framework for Members in Public Practice and Ethical Conflicts" interpretation [1.800.005] of the "Form of Organization and Name Rule." (Issued June 2014. Paragraph .03 is effective December 15, 2014.)

- "Attest Engagement Performed With a Former Partner" [1.810.040]. (Revised June 2014. Effective December 15, 2014.)

- "Members in Business—Introduction" [2.000.01]. (Issued June 2014. Effective December 15, 2014.)

- "Members in Business—Ethical Conflicts" [2.000.020]. (Issued June 2014. Effective December 15, 2014.)

- "Application of the Conceptual Framework for Members in Business and Ethical Conflicts" interpretation [2.100.005] of the "Integrity and Objectivity Rule." (Issued June 2014. Paragraph .03 is effective December 15, 2014.)

- "Application of the Conceptual Framework for Members in Business and Ethical Conflicts" interpretation [2.300.005] of the "General Standards Rule." (Issued June 2014. Paragraph .03 is effective December 15, 2014.)

- "Application of the Conceptual Framework for Members in Business and Ethical Conflicts" interpretation [2.310.005] of the "Compliance with Standards Rule." (Issued June 2014. Paragraph .03 is effective December 15, 2014.)

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 740 of 802
Case 2:11-cv-22408-MGC Document 272-8 Entered on FLSD Docket 05/13/2019 Page 25 of
190

- "Application of the Conceptual Framework for Members in Business and Ethical Conflicts" interpretation [2.320.005] of the "Accounting Standards Rule." (Issued June 2014. Paragraph .03 is effective December 15, 2014.)

- "Application of the Conceptual Framework for Members in Business and Ethical Conflicts" interpretation [2.400.005] of the "Acts Discreditable Rule." (Issued June 2014. Paragraph .03 is effective December 15, 2014.)

- "Other Members—Introduction" [3.000.01]. (Issued June 2014. Effective December 15, 2014.)

- "Other Members—Applicability" [3.000.030]. (Issued June 2014. Effective December 15, 2014.)

- "False, Misleading, or Deceptive Acts in Promoting or Marketing Professional Services" [3.400.090]. (Issued June 2014. Effective December 15, 2014.)

- "Those charged with governance" under "Definitions" [0.400.48]. (Issued April 2014. Effective April 30, 2014.)

- "Cumulative Effect on Independence When Providing Multiple Nonattest Services" [1.295.020]. (Issued October 2013. Effective for engagements covering periods beginning on or after December 15, 2014.)

- "Covered member" under "Definitions" [0.400.12]. (Revised March 2013, revisions effective for engagements covering periods beginning on or after December 15, 2014.)

- "Partner equivalent" under "Definitions" [0.400.38]. (Issued March 2013, revisions effective for engagements covering periods beginning on or after December 15, 2014.)

- "Conceptual Framework for Independence" [1.210.010.14b]. (Revised March 2013, revisions effective for engagements covering periods beginning on or after December 15, 2014.)

- "Close Relatives" [1.270.100]. (Revised March 2013, revisions effective for engagements covering periods beginning on or after December 15, 2014.)

- "Scope and Applicability of Nonattest Services" [1.295.010.06]. (Revised March 2013, revisions effective for engagements covering periods beginning on or after December 15, 2014.)

- "Agreed-Upon Procedure Engagements Performed in Accordance With SSAEs" [1.297.020.04]. (Revised March 2013, revisions effective for engagements covering periods beginning on or after December 15, 2014.)

### Effective Date

.02      Paragraph .01, excluding the bulleted text, is effective December 15, 2014.

### 0.600.020 Pending Interpretations and Other Guidance

.01      Periodically, new or revised authoritative ethics *interpretations* and other guidance are issued. This section lists the titles and citations of any pending new or revised *interpretations* or other guidance until they are effective and notes whether early application is permitted or encouraged. Once the *interpretation* or other guidance becomes effective, it will appear under the "New and Revised Interpretation and Other Guidance" section of the preface [0.600.010]:

- "Application of AICPA Code" [0.200.020]. (Revised January 2015. Effective March 31, 2016, early implementation allowed.)

- "Breach of an Independence Interpretation" [1.298]. (Added January 2015. Effective March 31, 2016, early implementation allowed.)

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 741 of 802
Case 1:09-cv-02047-MGC Document 272-8 Entered on FLSD Docket 05/13/2019 Page 26 of
190

Preface: Applicable to All Members

- "Breach of an Independence Interpretation" [1.298.010]. (Added January 2015. Effective March 31, 2016, early implementation allowed.)

- "Conceptual Framework for Members in Public Practice" [1.000.010]. (Issued June 2014. Effective December 15, 2015. Early implementation is allowed provided the member has implemented the revised code.)

- "Application of the Conceptual Framework for Members in Public Practice and Ethical Conflicts" interpretation [1.100.005] of the "Integrity and Objectivity Rule" (Issued June 2014. Paragraphs .01 and .02 are effective December 15, 2015, and early implementation is allowed provided the member has implemented the revised code.)

- "Application of the Conceptual Framework for Members in Public Practice and Ethical Conflicts" interpretation [1.300.005] of the "General Standards Rule." (Issued June 2014. Paragraphs .01 and .02 are effective December 15, 2015, and early implementation is allowed provided the member has implemented the revised code.)

- "Application of the Conceptual Framework for Members in Public Practice and Ethical Conflicts" interpretation [1.310.005] of the "Compliance with Standards Rule." (Issued June 2014. Paragraphs .01 and .02 are effective December 15, 2015, and early implementation is allowed provided the member has implemented the revised code.)

- "Application of the Conceptual Framework for Members in Public Practice and Ethical Conflicts" interpretation [1.320.005] of the "Accounting Standards Rule." (Issued June 2014. Paragraphs .01 and .02 are effective December 15, 2015, and early implementation is allowed provided the member has implemented the revised code.)

- "Application of the Conceptual Framework for Members in Public Practice and Ethical Conflicts" interpretation [1.400.005] of the "Acts Discreditable Rule." (Issued June 2014. Paragraphs .01 and .02 are effective December 15, 2015, and early implementation is allowed provided the member has implemented the revised code.)

- "Application of the Conceptual Framework for Members in Public Practice and Ethical Conflicts" interpretation [1.510.005] of the "Contingent Fees Rule." (Issued June 2014. Paragraphs .01 and .02 are effective December 15, 2015, and early implementation is allowed provided the member has implemented the revised code.)

- "Application of the Conceptual Framework for Members in Public Practice and Ethical Conflicts" interpretation [1.520.005] of the "Commissions and Referral Fees Rule." (Issued June 2014. Paragraphs .01 and .02 are effective December 15, 2015, and early implementation is allowed provided the member has implemented the revised code.)

- "Application of the Conceptual Framework for Members in Public Practice and Ethical Conflicts" interpretation [1.600.005] of the "Advertising and Other Forms of Solicitation Rule." (Issued June 2014. Paragraphs .01 and .02 are effective December 15, 2015 and early implementation is allowed provided the member has implemented the revised code.)

- "Application of the Conceptual Framework for Members in Public Practice and Ethical Conflicts" interpretation [1.700.005] of the "Confidential Client Information Rule." (Issued June 2014. Paragraphs .01 and .02 are effective December 15, 2015, and early implementation is allowed provided the member has implemented the revised code.)

- "Application of the Conceptual Framework for Members in Public Practice and Ethical Conflicts" interpretation [1.800.005] of the "Form of Organization and Name Rule." (Issued June 2014. Paragraphs .01 and .02 are effective December 15, 2015, and early implementation is allowed provided the member has implemented the revised code.)

- "Conceptual Framework for Members in Business" [2.000.010]. (Issued June 2014. Effective December 15, 2015. Early implementation is allowed provided the member has implemented the revised code.)

- "Application of the Conceptual Framework for Members in Business and Ethical Conflicts" interpretation [2.100.005] of the "Integrity and Objectivity Rule." (Issued June 2014. Paragraphs .01 and .02 are effective December 15, 2015, and early implementation is allowed if the member has implemented the revised code.)

- "Application of the Conceptual Framework for Members in Business and Ethical Conflicts" interpretation [2.300.005] of the "General Standards Rule." (Issued June 2014. Paragraphs .01 and .02 are effective December 15, 2015, and early implementation is allowed provided the member has implemented the revised code.)

- "Application of the Conceptual Framework for Members in Business and Ethical Conflicts" interpretation [2.310.005] of the "Compliance with Standards Rule." (Issued June 2014. Paragraphs .01 and .02 are effective December 15, 2015, and early implementation is allowed provided the member has implemented the revised code.)

- "Application of the Conceptual Framework for Members in Business and Ethical Conflicts" interpretation [2.320.005] of the "Accounting Standards Rule." (Issued June 2014. Paragraphs .01 and .02 are effective December 15, 2015, and early implementation is allowed provided the member has implemented the revised code.)

- "Application of the Conceptual Framework for Members in Business and Ethical Conflicts" interpretation [2.400.005] of the "Acts Discreditable Rule." (Issued June 2014. Paragraphs .01 and .02 are effective December 15, 2015, and early implementation is allowed provided the member has implemented the revised code.)

*Effective Date*

**.02**    Paragraph .01, excluding the bulleted text, is effective December 15, 2014.

**0.700 Deleted Interpretations and Other Guidance**

**.01**    The following interpretations and other guidance were deleted from the code during the 10 years prior to the 2014 edition:

- Definition of *holding out* (ET sec. 92 par. .12) (Deleted March 2013, effective May 31, 2013)

- Ethics Ruling No. 65, "Use of the CPA Designation by Member Not in Public Practice" (ET sec. 191 par. .130) (Deleted March 2013, effective May 31, 2013)

- Ethics Ruling No. 38, "CPA Title, Controller of Bank" (ET sec. 591 par. .075–.076) (Deleted March 2013, effective May 31, 2013)

- Ethics Ruling No. 78, "Letterhead: Lawyer-CPA" (ET sec. 591 par. .155–.156) (Deleted March 2013, effective May 31, 2013)

- Ethics Ruling No. 134, "Association of Accountants Not Partners" (ET sec. 591 par. .267–.268) (Deleted August 2012)

- Ethics Ruling No. 74, "Audits, Reviews, or Compilations and a Lack of Independence" (ET sec. 191 par. .148–.149) (Deleted April 2012).

- Ethics Ruling No. 135, "Association of Firms Not Partners" (ET sec. 591 par. .269–.270) (Deleted April 2012).

- Interpretation No. 101-8, "Effect on Independence of Financial Interests in Nonclients Having Investor or Investee Relationships With a Covered Member's Client" (ET sec. 101 par. .10) (Deleted November 2011. *Reestablished and effective October 31, 2012 until the earlier of January 1, 2014, or adoption of Interpretation 101-18*).

- Ethics Ruling No. 9, "Member as Representative of Creditor's Committee" (ET sec. 191 par. .017–.018) (Deleted November 2011)

- Ethics Ruling No. 10, "Member as Legislator" (ET sec. 191 par. .019–.020) (Deleted November 2011)

- Ethics Ruling No. 12, "Member as Trustee of Charitable Foundation" (ET sec. 191 par. .023–.024) (Deleted November 2011)

- Ethics Ruling No. 16, "Member on Board of Directors of Nonprofit Social Club" (ET sec. 191 par. .031–.032) (Deleted November 2011)

- Ethics Ruling No. 19, "Member on Deferred Compensation Committee" (ET sec. 191 par. .037–.038) (Deleted November 2011)

- Ethics Ruling No. 21, "Member as Director and Auditor of an Entity's Profit Sharing and Retirement Trust" (ET sec. 191 par. .041–.042) (Deleted November 2011. *Reestablished and effective October 31, 2012 until the earlier of January 1, 2014, or adoption of Interpretation 101-18*)

- Ethics Ruling No. 29, "Member as Bondholder" (ET sec. 191 par. .057–.058) (Deleted November 2011)

- Ethics Ruling No. 38, "Member as Co-Fiduciary With Client Bank" (ET sec. 191 par. .075–.076) (Deleted November 2011. *Reestablished and effective October 31, 2012 until the earlier of January 1, 2014, or adoption of Interpretation 101-18*)

- Ethics Ruling No. 48, "Faculty Member as Auditor of a Student Fund" (ET sec. 191 par. .095–.096) (Deleted November 2011)

- Ethics Ruling No. 60, "Employee Benefit Plans—Member's Relationships With Participating Employer," (ET sec. 191 par. .119–.120) (Deleted November 2011. *Reestablished and effective October 31, 2012 until the earlier of January 1, 2014, or adoption of Interpretation 101-18*)

- Ethics Ruling No. 69, "Investment With a General Partner" (ET sec. 191 par. .138–.139) (Deleted November 2011. *Reestablished and effective October 31, 2012 until the earlier of January 1, 2014, or adoption of Interpretation 101-18*)

- Ethics Ruling No. 81, "Member's Investment in a Limited Partnership" (ET sec. 191 par. .162–.163) (Deleted November 2011. *Reestablished and effective October 31, 2012 until the earlier of January 1, 2014, or adoption of Interpretation 101-18*)

- Ethics Ruling No. 98, "Member's Loan From a Nonclient Subsidiary or Parent of an Attest Client" (ET sec. 191 par. .196–.197) (Deleted November 2011. *Reestablished and effective October 31, 2012 until the earlier of January 1, 2014, or adoption of Interpretation 101-18*)

- Ethics Ruling No. 103, "Attest Report on Internal Controls" (ET sec. 191 par. .206–.207) (Deleted November 2011)

- Ethics Ruling No. 106, "Member Has Significant Influence Over an Entity That Has Significant Influence Over a Client" (ET sec. 191 par. .212–.213) (Deleted November 2011. *Reestablished and effective October 31, 2012 until the earlier of January 1, 2014, or adoption of Interpretation 101-18*)

Preface: Applicable to All Members

- Ethics Ruling No. 111, "Employee Benefit Plan Sponsored by Client" (ET sec. 191 par. .222–.223) (Deleted November 2011. *Reestablished and effective October 31, 2012 until the earlier of January 1, 2014, or adoption of Interpretation 101-18*)

- Ethics Ruling No. 11, "Applicability of Rule 203 to Members Performing Litigation Support Services" (ET sec. 291 par. .021–.022) (Deleted November 2011)

- Ethics Ruling No. 2, "Fees: Collection of Notes Issued in Payment" (ET sec. 591 par. .003–.004) (Deleted November 2011)

- Ethics Ruling No. 33, "Course Instructor" (ET sec. 591 par. .065–.066) (Deleted November 2011)

- Ethics Ruling No. 108, "Member Interviewed by the Press" (ET sec. 591 par. .215–.216) (Deleted November 2011)

- Ethics Ruling No. 117, "Consumer Credit Company Director" (ET sec. 591 par. .233–.234) (Deleted November 2011)

- Ethics Ruling No. 140, "Political Election" (ET sec. 591 par. .279–.280) (Deleted November 2011)

- Ethics Ruling No. 144, "Title: Partnership Roster" (ET sec. 591 par. .287–.288) (Deleted November 2011)

- Ethics Ruling No. 176, "Member's Association With Newsletters and Publications" (ET sec. 591 par. .351–.352) (Deleted November 2011)

- Ethics Ruling No. 177, "Data Processing: Billing Services" (ET sec. 591 par. .353–.354) (Deleted November 2011)

- Ethics Ruling No. 179, "Practice of Public Accounting Under Name of Association or Group" (ET sec. 591 par. .357–.358) (Deleted November 2011)

- Ethics Ruling No. 101, "Client advocacy and Expert Witness Services" (ET sec. 191 par. .202–.203) (Deleted July 2007)

- Ethics Ruling No. 182, "Termination of Engagement Prior to Completion" (ET sec. 591 par. .363–.364) (Deleted April 2006).

- Ethics Ruling No. 1, "Acceptance of a Gift" (ET sec. 191 par. .001–.002) (Deleted January 2006).

- Ethics Ruling No. 35, "Stockholder in Mutual Funds" (ET sec. 191 par. .069–.070) (Deleted December 2005).

- Ethics Ruling No. 36, "Participant in Investment Club" (ET sec. 191 par. .071–.072) (Deleted December 2005).

- Ethics Ruling No. 79, "Member's Investment in a Partnership That Invests in Client" (ET sec. 191 par. .158–.159) (Deleted December 2005).

- Ethics Ruling No. 109, "Member's Investment in Financial Services Products that Invest in Clients" (ET sec. 191 par. .218–.219) (Deleted December 2005).

- Ethics Ruling No. 66, "Member's Retirement or Savings Plan Has Financial Interest in Client" (ET sec. 191 par. .132–.133) (Deleted December 2005).

- Ethics Ruling No. 68, "Blind Trust" (ET sec. 191 par. .136–.137) (Deleted December 2005).

Preface: Applicable to All Members

> The content of these deleted standards is available in a nonauthoritative document at http://aicpa.org/InterestAreas/ProfessionalEthics/Community/DownloadableDocuments/Deletions.pdf.

# Part 1

## Members in Public Practice

### 1.000 Introduction

**.01** Part 1 of the Code of Professional Conduct (the code) applies to *members* in *public practice*. Accordingly, when the term *member* is used in part 1 of the code, the requirements apply only to *members* in *public practice*. When a *member* in *public practice* is also a *member in business* (for example, serves as a member of an entity's board of directors), the *member* should also consult part 2 of the code, which applies to a *member in business*.

**.02** Government auditors within a government audit organization who audit federal, state, or local governments or component units thereof, that are structurally located within the government audit organization, are considered in *public practice* with respect to those entities provided the head of the audit organization meets one of the organizational structures described in paragraph .07*b*(i–iii) of the "Client" definition [0.400.07]. [No prior reference: new content]

*Effective Date*

**.03** Effective December 15, 2014.

### 1.000.010 Conceptual Framework for Members in Public Practice

*Introduction*

**.01** *Members* may encounter various relationships or circumstances that create *threats* to the *member's* compliance with the rules. The rules and *interpretations* seek to address many situations; however, they cannot address all relationships or circumstances that may arise. Thus, in the absence of an *interpretation* that addresses a particular relationship or circumstance, a *member* should evaluate whether that relationship or circumstance would lead a reasonable and informed third party who is aware of the relevant information to conclude that there is a *threat* to the *member's* compliance with the rules that is not at an *acceptable level*. When making that evaluation, the *member* should apply the conceptual framework approach as outlined in this interpretation.

**.02** The code specifies that in some circumstances no *safeguards* can reduce a *threat* to an *acceptable level*. For example, the code specifies that a *member* may not subordinate the *member's* professional judgment to others without violating the "Integrity and Objectivity Rule" [1.100.001]. A member may not use the conceptual framework to overcome this prohibition or any other prohibition or requirement in the code.

**.03** The "Conceptual Framework for Independence" interpretation [1.210.010] of the "Independence Rule" [1.200.001] provides authoritative guidance that *members* should use when making decisions on *independence* matters that are not explicitly addressed by the "Independence Rule" and its *interpretations*.

*Definitions Used in Applying the Conceptual Framework*

**.04** **Acceptable level.** A level at which a reasonable and informed third party who is aware of the relevant information would be expected to conclude that a *member's* compliance with the rules is not compromised.

**.05** **Safeguards.** Actions or other measures that may eliminate a *threat* or reduce a *threat* to an *acceptable level*.

**.06** **Threats.** Relationships or circumstances that could compromise a *member's* compliance with the rules.

*Conceptual Framework Approach*

**.07**    Under the conceptual framework approach, *members* should identify *threats* to compliance with the rules and evaluate the significance of those threats. *Members* should evaluate identified *threats* both individually and in the aggregate because *threats* can have a cumulative effect on a *member's* compliance with the rules. *Members* should perform three main steps in applying the conceptual framework approach:

   *a. Identify threats.* The relationships or circumstances that a *member* encounters in various engagements and work assignments will often create different *threats* to complying with the rules. When a *member* encounters a relationship or circumstance that is not specifically addressed by a rule or an *interpretation*, under this approach, the *member* should determine whether the relationship or circumstance creates one or more *threats*, such as those identified in paragraphs .10–.16 that follow. The existence of a *threat* does not mean that the *member* is in violation of the rules; however, the *member* should evaluate the significance of the *threat.*

   *b. Evaluate the significance of a threat.* In evaluating the significance of an identified *threat*, the *member* should determine whether a *threat* is at an *acceptable level.* A *threat* is at an *acceptable level* when a reasonable and informed third party who is aware of the relevant information would be expected to conclude that the *threat* would not compromise the *member's* compliance with the rules. *Members* should consider both qualitative and quantitative factors when evaluating the significance of a *threat*, including the extent to which existing *safeguards* already reduce the *threat* to an *acceptable level.* If the *member* evaluates the *threat* and concludes that a reasonable and informed third party who is aware of the relevant information would be expected to conclude that the *threat* does not compromise a *member's* compliance with the rules, the *threat* is at an *acceptable level*, and the *member* is not required to evaluate the *threat* any further under this conceptual framework approach.

   *c. Identify and apply safeguards.* If, in evaluating the significance of an identified *threat*, the *member* concludes that the *threat* is not at an *acceptable level*, the *member* should apply *safeguards* to eliminate the *threat* or reduce it to an *acceptable level.* The *member* should apply judgment in determining the nature of the *safeguards* to be applied because the effectiveness of *safeguards* will vary, depending on the circumstances. When identifying appropriate *safeguards* to apply, one *safeguard* may eliminate or reduce multiple *threats.* In some cases, the *member* should apply multiple *safeguards* to eliminate or reduce one *threat* to an *acceptable level.* In other cases, an identified *threat* may be so significant that no *safeguards* will eliminate the *threat* or reduce it to an *acceptable level*, or the *member* will be unable to implement effective *safeguards.* Under such circumstances, providing the specific *professional services* would compromise the *member's* compliance with the rules, and the *member* should determine whether to decline or discontinue the *professional services* or resign from the engagement.

*Threats*

**.08**    Many *threats* fall into one or more of the following seven broad categories: adverse interest, advocacy, familiarity, management participation, self-interest, self-review, and undue influence.

**.09**    Examples of *threats* associated with a specific relationship or circumstance are identified in the *interpretations* of the code. Paragraphs .10–.16 of this section define and provide examples, which are not all inclusive, of each of these *threat* categories.

**.10**    **Adverse interest threat.** The *threat* that a *member* will not act with objectivity because the *member's* interests are opposed to the *client's* interests. Examples of adverse interest *threats* include the following:

   *a.* The *client* has expressed an intention to commence litigation against the *member.*

   *b.* A *client* or officer, director, or significant shareholder of the *client* participates in litigation against the *firm.*

   *c.* A subrogee asserts a claim against the *firm* for recovery of insurance payments made to the *client.*

*d.* A class action lawsuit is filed against the *client* and its officers and directors and the *firm* and its professional accountants.

**.11** **Advocacy threat.** The *threat* that a *member* will promote a *client's* interests or position to the point that his or her objectivity or *independence* is compromised. Examples of advocacy *threats* include the following:

   *a.* A *member* provides forensic accounting services to a *client* in litigation or a dispute with third parties.

   *b.* A *firm* acts as an investment adviser for an officer, a director, or a 10 percent shareholder of a *client*.

   *c.* A *firm* underwrites or promotes a *client's* shares.

   *d.* A *firm* acts as a registered agent for a *client*.

   *e.* A *member* endorses a *client's* services or products.

**.12** **Familiarity threat.** The *threat* that, due to a long or close relationship with a *client*, a *member* will become too sympathetic to the *client's* interests or too accepting of the *client's* work or product. Examples of familiarity *threats* include the following:

   *a.* A *member's immediate family* or *close relative* is employed by the *client*.

   *b.* A *member's* close friend is employed by the *client*.

   *c.* A former *partner* or professional employee joins the *client* in a *key position* and has knowledge of the *firm's* policies and practices for the *professional services* engagement.

   *d.* Senior personnel have a long association with a *client*.

   *e.* A *member* has a significant close business relationship with an officer, a director, or a 10 percent shareholder of a *client*.

**.13** **Management participation threat.** The *threat* that a *member* will take on the role of *client* management or otherwise assume management responsibilities, such may occur during an engagement to provide nonattest services.

**.14** **Self-interest threat.** The *threat* that a *member* could benefit, financially or otherwise, from an interest in, or relationship with, a *client* or persons associated with the *client*. Examples of self-interest *threats* include the following:

   *a.* The *member* has a *financial interest* in a *client*, and the outcome of a *professional services* engagement may affect the fair value of that *financial interest*.

   *b.* The *member's* spouse enters into employment negotiations with the *client*.

   *c.* A *firm* enters into a contingent fee arrangement for a tax refund claim that is not a predetermined fee.

   *d.* Excessive reliance exists on revenue from a single *client*.

**.15** **Self-review threat.** The *threat* that a *member* will not appropriately evaluate the results of a previous judgment made or service performed or supervised by the *member* or an individual in the *member's firm* and that the *member* will rely on that service in forming a judgment as part of another service. Examples of self-review *threats* include the following:

   *a.* The *member* relies on the work product of the *member's firm*.

   *b.* The *member* performs bookkeeping services for a *client*.

Part 1 — Members in Public Practice

      *c.* A *partner* in the *member's office* was associated with the *client* as an employee, an officer, a director, or a contractor.

**.16**      **Undue influence threat.** The *threat* that a *member* will subordinate his or her judgment to an individual associated with a *client* or any relevant third party due to that individual's reputation or expertise, aggressive or dominant personality, or attempts to coerce or exercise excessive influence over the *member*. Examples of undue influence *threats* include the following:

      *a.* The *firm* is threatened with dismissal from a *client* engagement.

      *b.* The *client* indicates that it will not award additional engagements to the *firm* if the *firm* continues to disagree with the *client* on an accounting or tax matter.

      *c.* An individual associated with a *client* or any relevant third party threatens to withdraw or terminate a *professional service* unless the *member* reaches certain judgments or conclusions.

### *Safeguards*

**.17**      *Safeguards* may partially or completely eliminate a *threat* or diminish the potential influence of a *threat*. The nature and extent of the *safeguards* applied will depend on many factors. To be effective, *safeguards* should eliminate the *threat* or reduce it to an *acceptable level*.

**.18**      *Safeguards* that may eliminate a *threat* or reduce it to an *acceptable level* fall into three broad categories:

      *a. Safeguards* created by the profession, legislation, or regulation.

      *b. Safeguards* implemented by the *client*. It is not possible to rely solely on *safeguards* implemented by the *client* to eliminate or reduce significant *threats* to an *acceptable level*.

      *c. Safeguards* implemented by the *firm*, including policies and procedures to implement professional and regulatory requirements.

**.19**      The effectiveness of a *safeguard* depends on many factors, including those listed here:

      *a.* The facts and circumstances specific to a particular situation

      *b.* The proper identification of *threats*

      *c.* Whether the *safeguard* is suitably designed to meet its objectives

      *d.* The party(ies) who will be subject to the *safeguard*

      *e.* How the *safeguard* is applied

      *f.* The consistency with which the *safeguard* is applied

      *g.* Who applies the *safeguard*

      *h.* How the *safeguard* interacts with a *safeguard* from another category

      *i.* Whether the *client* is a *public interest entity*

**.20**      Examples of *safeguards* within each category are presented in the following paragraphs. Because these are only examples and are not intended to be all inclusive, it is possible that *threats* may be sufficiently mitigated through the application of other *safeguards* not specifically identified herein.

**.21**      The following are examples of *safeguards* created by the profession, legislation, or regulation:

      *a.* Education and training requirements on *independence* and ethics rules

Part 1 — Members in Public Practice

    *b.* Continuing education requirements on *independence* and ethics

    *c.* Professional standards and the threat of discipline

    *d.* External review of a *firm's* quality control system

    *e.* Legislation establishing prohibitions and requirements for a *firm* or a *firm's* professional employees

    *f.* Competency and experience requirements for professional licensure

    *g.* Professional resources, such as hotlines, for consultation on ethical issues

**.22**    Examples of *safeguards* implemented by the *client* that would operate in combination with other *safeguards* are as follows:

    *a.* The *client* has personnel with suitable skill, knowledge, or experience who make managerial decisions about the delivery of *professional services* and makes use of third-party resources for consultation as needed.

    *b.* The tone at the top emphasizes the *client's* commitment to fair financial reporting and compliance with the applicable laws, rules, regulations, and corporate governance policies.

    *c.* Policies and procedures are in place to achieve fair financial reporting and compliance with the applicable laws, rules, regulations, and corporate governance policies.

    *d.* Policies and procedures are in place to address ethical conduct.

    *e.* A governance structure, such as an active audit committee, is in place to ensure appropriate decision making, oversight, and communications regarding a *firm's* services.

    *f.* Policies are in place that bar the entity from hiring a *firm* to provide services that do not serve the public interest or that would cause the *firm's independence* or objectivity to be considered *impaired*.

**.23**    The following are examples of *safeguards* implemented by the *firm*:

    *a. Firm* leadership that stresses the importance of complying with the rules and the expectation that engagement teams will act in the public interest.

    *b.* Policies and procedures that are designed to implement and monitor engagement quality control.

    *c.* Documented policies regarding the identification of *threats* to compliance with the rules, the evaluation of the significance of those *threats*, and the identification and application of *safeguards* that can eliminate identified *threats* or reduce them to an *acceptable level*.

    *d.* Internal policies and procedures that are designed to monitor compliance with the *firm's* policies and procedures.

    *e.* Policies and procedures that are designed to identify interests or relationships between the *firm* or its *partners* and professional staff and the *firm's clients*.

    *f.* The use of different *partners*, *partner equivalents*, and engagement teams from different offices or that report to different supervisors.

    *g.* Training on, and timely communication of, a *firm's* policies and procedures and any changes to them for all *partners* and professional staff.

    *h.* Policies and procedures that are designed to monitor the *firm's*, *partner's*, or *partner equivalent's* reliance on revenue from a single *client* and that, if necessary, trigger action to address excessive reliance.

*i.* Designation of someone from senior management as the person responsible for overseeing the adequate functioning of the *firm's* quality control system.

*j.* A means for informing *partners* and professional staff of *attest clients* and related entities from which they must be independent.

*k.* A disciplinary mechanism that is designed to promote compliance with policies and procedures.

*l.* Policies and procedures that are designed to empower staff to communicate to senior members of the *firm* any engagement issues that concern them without fear of retribution.

*m.* Policies and procedures relating to *independence* and ethics communications with audit committees or others charged with *client* governance.

*n.* Discussion of *independence* and ethics issues with the audit committee or others responsible for the *client's* governance.

*o.* Disclosures to the audit committee or others responsible for the *client's* governance regarding the nature of the services that are or will be provided and the extent of the fees charged or to be charged.

*p.* The involvement of another professional accountant who (*a*) reviews the work that is done for a *client* or (*b*) otherwise advises the engagement team. This individual could be someone from outside the *firm* or someone from within the *firm* who is not otherwise associated with the engagement.

*q.* Consultation on engagement issues with an interested third party, such as a committee of independent directors, a professional regulatory body, or another professional accountant.

*r.* Rotation of senior personnel who are part of the engagement team.

*s.* Policies and procedures that are designed to ensure that members of the engagement team do not make or assume responsibility for management decisions for the *client.*

*t.* The involvement of another *firm* to perform part of the engagement.

*u.* Having another *firm* to reperform a nonattest service to the extent necessary for it to take responsibility for that service.

*v.* The removal of an individual from an *attest engagement team* when that individual's *financial interests* or relationships pose a *threat* to *independence* or objectivity.

*w.* A consultation function that is staffed with experts in accounting, auditing, *independence*, ethics, and reporting matters who can help engagement teams

    i. assess issues when guidance is unclear or when the issues are highly technical or require a great deal of judgment; and

    ii. resist undue pressure from a *client* when the engagement team disagrees with the *client* about such issues.

*x. Client* acceptance and continuation policies that are designed to prevent association with *clients* that pose a *threat* that is not at an *acceptable level* to the *member's* compliance with the rules.

*y.* Policies that preclude audit *partners* or *partner equivalents* from being directly compensated for selling nonattest services to the *attest client.*

*z.* Policies and procedures addressing ethical conduct and compliance with laws and regulations. [No prior reference: new content]

*Effective Date*

**.24**   Effective December 15, 2015. Early implementation is allowed provided the member has implemented the revised code.

## 1.000.020 Ethical Conflicts

**.01**   An ethical conflict arises when a *member* encounters one or both of the following:

　　*a.* Obstacles to following an appropriate course of action due to internal or external pressures

　　*b.* Conflicts in applying relevant professional standards or legal standards

For example, a *member* suspects a fraud may have occurred, but reporting the suspected fraud would violate the *member's* responsibility to maintain *client* confidentiality.

**.02**   Once an ethical conflict is encountered, a *member* may be required to take steps to best achieve compliance with the rules and law. In weighing alternative courses of action, the *member* should consider factors such as the following:

　　*a.* Relevant facts and circumstances, including applicable rules, laws, or regulations

　　*b.* Ethical issues involved

　　*c.* Established internal procedures

**.03**   The *member* should also be prepared to justify any departures that the *member* believes were appropriate in applying the relevant rules and law. If the *member* was unable to resolve the conflict in a way that permitted compliance with the applicable rules and law, the *member* may have to address the consequences of any violations.

**.04**   Before pursuing a course of action, the *member* should consider consulting with appropriate persons within the *firm* or the organization that employs the *member*.

**.05**   If a *member* decides not to consult with appropriate persons within the *firm* or the organization that employs the *member* and the conflict remains unresolved after pursuing the selected course of action, the *member* should consider either consulting with other individuals for help in reaching a resolution or obtaining advice from an appropriate professional body or legal counsel. The *member* also should consider documenting the substance of the issue, the parties with whom the issue was discussed, details of any discussions held, and any decisions made concerning the issue.

**.06**   If the ethical conflict remains unresolved, the *member* will in all likelihood be in violation of one or more rules if he or she remains associated with the matter creating the conflict. Accordingly, the *member* should consider his or her continuing relationship with the engagement team, specific assignment, *client*, *firm*, or employer. [No prior reference: new content.]

*Effective Date*

**.07**   Effective December 15, 2014.

## 1.100 Integrity and Objectivity

## 1.100.001 Integrity and Objectivity Rule

**.01**   In the performance of any *professional service*, a *member* shall maintain objectivity and integrity, shall be free of conflicts of interest, and shall not knowingly misrepresent facts or subordinate his or her judgment to others. [Prior reference: paragraph .01 of ET section 102]

**Interpretations Under the Integrity and Objectivity Rule**

**1.100.005 Application of the Conceptual Framework for Members in Public Practice and Ethical Conflicts**

**.01**     In the absence of an *interpretation* of the "Integrity and Objectivity Rule" [1.100.001] that addresses a particular relationship or circumstance, a *member* should apply the "Conceptual Framework for Members in Public Practice" [1.000.010].

**.02**     A *member* would be considered in violation of the "Integrity and Objectivity Rule" [1.100.001] if the *member* cannot demonstrate that *safeguards* were applied that eliminated or reduced significant *threats* to an *acceptable level*.

**.03**     A *member* should consider the guidance in "Ethical Conflicts" [1.000.020] when addressing ethical conflicts that may arise when the *member* encounters obstacles to following an appropriate course of action. Such obstacles may be due to internal or external pressures or to conflicts in applying relevant professional or legal standards, or both. [No prior reference: new content]

*Effective Date*

**.04**     Paragraphs .01 and .02 are effective December 15, 2015 and early implementation is allowed provided the member has implemented the revised code. Paragraph .03 is effective December 15, 2014.

**1.110 Conflicts of Interest**

**1.110.010 Conflicts of Interest for Members in Public Practice**

**.01**     A *member* or his or her *firm* may be faced with a conflict of interest when performing a *professional service*. In determining whether a *professional service*, relationship or matter would result in a conflict of interest, a *member* should use professional judgment, taking into account whether a reasonable and informed third party who is aware of the relevant information would conclude that a conflict of interest exists.

**.02**     A conflict of interest creates adverse interest and self-interest *threats* to the *member's* compliance with the "Integrity and Objectivity Rule" [1.100.001]. For example, *threats* may be created when

       *a.* the *member* or the *member's firm* provides a *professional service* related to a particular matter involving two or more *clients* whose interests with respect to that matter are in conflict, or

       *b.* the interests of the *member* or the *member's firm* with respect to a particular matter and the interests of the *client* for whom the *member* or the *member's firm* provides a *professional service* related to that matter are in conflict.

**.03**     Certain professional engagements, such as audits, reviews and other attest services require *independence*. *Independence* impairments under the "Independence Rule" [1.200.001], its *interpretations*, and rulings cannot be eliminated by the *safeguards* provided in this interpretation or by disclosure and consent.

**.04**     The following are examples of situations in which conflicts of interest may arise:

       *a.* Providing corporate finance services to a *client* seeking to acquire an audit *client* of the *firm*, when the *firm* has obtained confidential information during the course of the audit that may be relevant to the transaction

       *b.* Advising two *clients* at the same time who are competing to acquire the same company when the advice might be relevant to the parties' competitive positions

       *c.* Providing services to both a vendor and a purchaser who are *clients* of the *firm* in relation to the same transaction

*d.* Preparing valuations of assets for two *clients* who are in an adversarial position with respect to the same assets

*e.* Representing two *clients* at the same time regarding the same matter who are in a legal dispute with each other, such as during divorce proceedings or the dissolution of a partnership

*f.* Providing a report for a licensor on royalties due under a license agreement while at the same time advising the licensee of the correctness of the amounts payable under the same license agreement

*g.* Advising a *client* to invest in a business in which, for example, the *immediate family* member of the *member* has a *financial interest* in the business

*h.* Providing strategic advice to a *client* on its competitive position while having a joint venture or similar interest with a competitor of the *client*

*i.* Advising a *client* on the acquisition of a business which the *firm* is also interested in acquiring

*j.* Advising a *client* on the purchase of a product or service while having a royalty or commission agreement with one of the potential vendors of that product or service

*k.* Providing forensic investigation services to a *client* for the purpose of evaluating or supporting contemplated litigation against another *client* of the *firm*

*l.* Providing tax or personal financial planning services for several members of a family whom the *member* knows to have opposing interests

*m.* Referring a personal financial planning or tax *client* to an insurance broker or other service provider, which refers *clients* to the *member* under an exclusive arrangement

### *Identification of a Conflict of Interest*

**.05** Before accepting a new *client* relationship, engagement, or business relationship, a *member* should take reasonable steps to identify circumstances that might create a conflict of interest including identification of

*a.* the nature of the relevant interests and relationships between the parties involved and

*b.* the nature of the service and its implication for relevant parties.

**.06** The nature of the relevant interests and relationships and the services may change during the course of the engagement. This is particularly true when a *member* is asked to conduct an engagement for a *client* in a situation that may become adversarial with respect to another *client* or the *member* or *member's firm*, even though the parties who engage the *member* may not initially be involved in a dispute. A *member* should remain alert to such changes for the purpose of identifying circumstances that might create a conflict of interest.

**.07** For the purpose of identifying interests and relationships that might create a conflict of interest, having an effective conflict identification process assists a *member* in identifying actual or potential conflicts of interest that may create significant *threats* to compliance with the "Integrity and Objectivity Rule" [1.100.001] prior to determining whether to accept an engagement and throughout an engagement. This includes matters identified by external parties, for example *clients* or potential *clients*. The earlier an actual or potential conflict of interest is identified, the greater the likelihood of a *member* being able to apply *safeguards* to eliminate or reduce significant *threats* to an *acceptable level*. The process to identify actual or potential conflicts of interest will depend on such factors as

*a.* the nature of the *professional services* provided,

*b.* the size of the *firm*,

       *c.* the size and nature of the *client* base, and

       *d.* the structure of the *firm*, for example the number and geographic location of offices.

**.08**     If the *firm* is a member of a *network*, the *member* is not required to take specific steps to identify conflicts of interest of other *network firms*; however, if the *member* knows or has reason to believe that such conflicts of interest may exist or might arise due to interests and relationships of a *network firm*, the *member* should evaluate the significance of the *threat* created by such conflicts of interest as described below.

### *Evaluation of a Conflict of Interest*

**.09**     When an actual conflict of interest has been identified, the *member* should evaluate the significance of the *threat* created by the conflict of interest to determine if the *threat* is at an *acceptable level*. Members should consider both qualitative and quantitative factors when evaluating the significance of the *threat*, including the extent to which existing *safeguards* already reduce the *threat* to an *acceptable level*. In evaluating the significance of an identified *threat*, *members* should consider both of the following:

       *a.* The significance of relevant interests or relationships.

       *b.* The significance of the *threats* created by performing the *professional service* or services. In general, the more direct the connection between the *professional service* and the matter on which the parties' interests are in conflict, the more significant the *threat* to compliance with the rule will be.

**.10**     If the *member* concludes that the *threat* is not at an *acceptable level*, the *member* should apply *safeguards* to eliminate the *threat* or reduce it to an *acceptable level*. Examples of *safeguards* include the following:

       *a.* Implementing mechanisms to prevent unauthorized disclosure of confidential information when performing *professional services* related to a particular matter for two or more *clients* whose interests with respect to that matter are in conflict. This could include

           i. using separate engagement teams who are provided with clear policies and procedures on maintaining confidentiality;

           ii. creating separate areas of practice for specialty functions within the *firm*, which may act as a barrier to the passing of *confidential client information* from one practice area to another within a *firm*;

           iii. establishing policies and procedures to limit access to *client* files, the use of confidentiality agreements signed by employees and *partners* of the *firm* and the physical and electronic separation of confidential information.

       *b.* Regularly reviewing the application of *safeguards* by a senior individual not involved with the *client* engagement or engagements.

       *c.* Having a member of the *firm* who is not involved in providing the service or otherwise affected by the conflict, review the work performed to assess whether the key judgments and conclusions are appropriate.

       *d.* Consulting with third parties, such as a professional body, legal counsel, or another professional accountant.

**.11**     In cases where an identified *threat* may be so significant that no *safeguards* will eliminate the *threat* or reduce it to an *acceptable level*, or the *member* is unable to implement effective *safeguards*, the *member* should (*a*) decline to perform or discontinue the *professional services* that would result in the conflict of interest; or (*b*) terminate the relevant relationships or dispose of the relevant interests to eliminate the *threat* or reduce it to an *acceptable level*.

### *Disclosure of a Conflict of Interest and Consent*

.12      When a conflict of interest exists, the *member* should disclose the nature of the conflict of interest to *clients* and other appropriate parties affected by the conflict and obtain their consent to perform the *professional services*. The member should disclose the conflict of interest and obtain consent even if the *member* concludes that *threats* are at an *acceptable level*.

.13      Disclosure and consent may take different forms. The following are examples:

> *a.* General disclosure to *clients* of circumstances in which the *member*, in keeping with common commercial practice, does not provide services exclusively for any one *client* (for example, in a particular service in a particular market sector) in order for the *client* to provide general consent accordingly. Such disclosure might be made in a *member's* standard terms and conditions for the engagement.

> *b.* Specific disclosure to affected *clients* of the circumstances of the particular conflict including an explanation of the situation and any planned safeguards, sufficient to enable the *client* to make an informed decision with respect to the matter and to provide specific consent.

.14      The *member* should determine whether the nature and significance of the conflict of interest is such that specific disclosure and specific consent are necessary, as opposed to general disclosure and general consent. For this purpose, the *member* should exercise professional judgment in evaluating the circumstances that create a conflict of interest, including the parties that might be affected, the nature of the issues that might arise and the potential for the particular matter to develop in an unexpected manner.

.15      When a *member* has requested specific consent from a *client* and that consent has been refused by the *client*, the *member* should (*a*) decline to perform or discontinue *professional services* that would result in the conflict of interest; or (*b*) terminate the relevant relationships or dispose of the relevant interests to eliminate the *threat* or reduce it to an *acceptable level*, such that consent can be obtained, after applying any additional *safeguards*, if necessary.

.16      The *member* is encouraged to document the nature of the circumstances giving rise to the conflict of interest, the *safeguards* applied to eliminate or reduce the *threats* to an *acceptable level*, and the consent obtained.

.17      When addressing conflicts of interest, including making disclosures and seeking guidance of third parties, a *member* should remain alert to the requirements of the "Confidential Client Information Rule" [1.700.001] and the "Confidential Information Obtained From Employment or Volunteer Activities" interpretation [1.400.070] of the "Acts Discreditable Rule" [1.400.001]. In addition, federal, state, or local statutes, or regulations concerning confidentiality of *client* information may be more restrictive than the requirements contained in the Code of Professional Conduct.

.18      When practicing before the IRS or other taxing authorities, *members* should ensure compliance with any requirements that are more restrictive. For example, Treasury Department Circular No. 230, *Regulations Governing Practice before the Internal Revenue Service*, provides more restrictive requirements concerning written consent by the *client* when a conflict of interest exists.

[See Revision History Table.]

A nonauthoritative question and answer regarding independent contractors retained by the firm who are simultaneously employed or associated with an attest client is available in the FAQ at www.aicpa.org/InterestAreas/ProfessionalEthics/Resources/Tools/DownloadableDocuments/Ethics-General-FAQs.pdf.

## 1.110.020 Director Positions

.01      When a *member* serves as a director of an entity, such as a bank, the *member's* fiduciary responsibilities to the entity may create *threats* to the *member's* compliance with the "Integrity and Objectivity

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 757 of 802
Case 2:11-cv-22408-MGC Document 272-8 Entered on FLSD Docket 05/13/2015 Page 42 of
190

Part 1 — Members in Public Practice

Rule" [1.100.001] and the "Confidential Client Information Rule" [1.700.001]. For example, an adverse interest *threat* to the *member's* objectivity may exist if the *member's clients* are customers of the entity or likely to engage in significant transactions with the entity. A *member's* general knowledge and experience may be very helpful to an entity in formulating policies and making business decisions. Nevertheless, if the *member's clients* are likely to engage in significant transactions with the entity, it would be more appropriate for the *member* to serve as a consultant to the board. Under such an arrangement, the *member* could limit activities to those that do not *threaten* the *member's* compliance with these rules. If, however, the *member* serves as a board member, the *member* should evaluate the significance of any *threats* and apply *safeguards*, when necessary, to eliminate or reduce the *threats* to an *acceptable level*.

**.02**    Refer to the "Disclosing Client Information in Director Positions" interpretation [1.700.080] of the "Confidential Client Information Rule" [1.700.001] for additional guidance. [Prior reference: paragraphs .170–.171 of ET section 191]

***Effective Date***

**.03**    This revised interpretation is effective December 15, 2014.

### 1.120 Gifts and Entertainment

### 1.120.010 Offering or Accepting Gifts or Entertainment

**.01**    For purposes of this interpretation, a client includes the *client*, an individual in a *key position* with the *client*, or an individual owning 10 percent or more of the *client's* outstanding equity securities or other ownership interests.

**.02**    When a *member* offers to a client or accepts gifts or entertainment from a client, self-interest, familiarity, or undue influence *threats* to the *member's* compliance with the "Integrity and Objectivity Rule" [1.100.001] may exist.

**.03**    *Threats* to compliance with the "Integrity and Objectivity Rule" [1.100.001] would not be at an *acceptable level* and could not be reduced to an *acceptable level* by the application of *safeguards* and the *member* would be presumed to lack integrity in violation of the "Integrity and Objectivity Rule" in the following circumstances:

   *a.* The *member* offers to a client or accepts gifts or entertainment from a client that violate the member's or client's policies or applicable laws, rules, and regulations; and

   *b.* The *member* knows of the violation or demonstrates recklessness in not knowing.

**.04**    A *member* should evaluate the significance of any *threats* to determine if they are at an *acceptable level*. *Threats* are at an *acceptable level* when gifts or entertainment are reasonable in the circumstances. The *member* should exercise judgment in determining whether gifts or entertainment would be considered reasonable in the circumstances. The following are examples of relevant facts and circumstances:

   *a.* The nature of the gift or entertainment

   *b.* The occasion giving rise to the gift or entertainment

   *c.* The cost or value of the gift or entertainment

   *d.* The nature, frequency, and value of other gifts and entertainment offered or accepted

   *e.* Whether the entertainment was associated with the active conduct of business directly before, during, or after the entertainment

   *f.* Whether other clients also participated in the entertainment

       *g.* The individuals from the client and *member's firm* who participated in the entertainment

**.05**     *Threats* to compliance with the "Integrity and Objectivity Rule" [1.100.001] would not be at an *acceptable level* and could not be reduced to an *acceptable level* through the application of safeguards if a *member* offers to a client or accepts gifts or entertainment from a client that is not reasonable in the circumstances. The *member* would be presumed to lack objectivity in violation of the "Integrity and Objectivity Rule" under these circumstances.

**.06**     Refer to the "Offering or Accepting Gifts or Entertainment" interpretation [1.285.010] of the "Independence Rule" [1.200.001] for additional guidance. [Prior reference: paragraphs .226–.227 of ET section 191]

---

A nonauthoritative basis-for-conclusions document summarizing considerations that were deemed significant in the development of this interpretation is available at www.aicpa.org/InterestAreas/ProfessionalEthics/Resources/Tools/ DownloadableDocuments/Gifts_Basis_Document.pdf.

A nonauthoritative question and answer regarding campaign contributions is available at the following address. The subject is member contributions made to the campaign of an individual who holds a key position with or has a financial interest in an attest client. www.aicpa.org/InterestAreas/ProfessionalEthics/Resources/Tools/ DownloadableDocuments/Ethics-General-FAQs.pdf.

---

## 1.130 Preparing and Reporting Information

### 1.130.010 Knowing Misrepresentations in the Preparation of Financial Statements or Records

**.01**     *Threats* to compliance with the "Integrity and Objectivity Rule" [1.100.001] would not be at an *acceptable level* and could not be reduced to an *acceptable level* by the application of *safeguards* and the *member* would be considered to have knowingly misrepresented facts in violation of the "Integrity and Objectivity Rule," if the *member*

     *a.* makes, or permits or directs another to make, materially false and misleading entries in an entity's *financial statements* or records;

     *b.* fails to correct an entity's *financial statements* or records that are materially false and misleading when the *member* has the authority to record the entries; or

     *c.* signs, or permits or directs another to sign, a document containing materially false and misleading information. [Prior reference: paragraph .02 of ET section 102]

### 1.130.020 Subordination of Judgment

**.01**     The "Integrity and Objectivity Rule" [1.100.001] prohibits a *member* from knowingly misrepresenting facts or subordinating his or her judgment when performing *professional services* for a *client* , for an employer, or on a volunteer basis. This interpretation addresses differences of opinion between a *member* and his or her supervisor or any other person within the *member's* organization.

**.02**     Self-interest, familiarity, and undue influence *threats* to the *member's* compliance with the "Integrity and Objectivity Rule" [1.100.001] may exist when a *member* and his or her supervisor or any other person within the *member's* organization have a difference of opinion relating to the application of accounting principles; auditing standards; or other relevant professional standards, including standards applicable to tax and consulting services or applicable laws or regulations.

**.03**     A *member* should evaluate the significance of any *threats* to determine if they are at an *acceptable level*. *Threats* are at an *acceptable level* if the *member* concludes that the position taken does not result in a

material misrepresentation of fact or a violation of applicable laws or regulations. If *threats* are not at an *acceptable level*, the *member* should apply the *safeguards* in paragraphs .06–.08 to eliminate or reduce the *threat(s)* to an *acceptable level* so that the *member* does not subordinate his or her judgment.

**.04** In evaluating the significance of any identified *threats* , the *member* should determine, after appropriate research or consultation, whether the result of the position taken by the supervisor or other person

    *a.* fails to comply with professional standards, when applicable;

    *b.* creates a material misrepresentation of fact; or

    *c.* may violate applicable laws or regulations.

**.05** If the *member* concludes that *threats* are at an *acceptable level* the *member* should discuss his or her conclusions with the person taking the position. No further action would be needed under this interpretation.

**.06** If the *member* concludes that the position results in a material misrepresentation of fact or a violation of applicable laws or regulations, then *threats* would not be at an *acceptable level*. In such circumstances, the *member* should discuss his or her concerns with the supervisor.

**.07** If the difference of opinion is not resolved after discussing the concerns with the supervisor, the *member* should discuss his or her concerns with the appropriate higher level(s) of management within the *member's* organization (for example, the supervisor's immediate superior, senior management, and *those charged with governance*).

**.08** If after discussing the concerns with the supervisor and appropriate higher level(s) of management within the *member's* organization, the *member* concludes that appropriate action was not taken, then the *member* should consider, in no specific order, the following *safeguards* to ensure that *threats* to the *member's* compliance with the "Integrity and Objectivity Rule" [1.100.001] are eliminated or reduced to an *acceptable level*:

    *a.* Determine whether the organization's internal policies and procedures have any additional requirements for reporting differences of opinion.

    *b.* Determine whether he or she is responsible for communicating to third parties, such as regulatory authorities or the organization's (former organization's) external accountant. In considering such communications, the *member* should be cognizant of his or her obligations under the "Confidential Information Obtained From Employment or Volunteer Activities" interpretation [1.400.070] of the "Acts Discreditable Rule" [1.400.001].

    *c.* Consult with his or her legal counsel regarding his or her responsibilities.

    *d.* Document his or her understanding of the facts, the accounting principles, auditing standards, or other relevant professional standards involved or applicable laws or regulations and the conversations and parties with whom these matters were discussed.

**.09** If the *member* concludes that no *safeguards* can eliminate or reduce the *threats* to an *acceptable level* or if the *member* concludes that appropriate action was not taken, then he or she should consider the continuing relationship with the *member's* organization and take appropriate steps to eliminate his or her exposure to subordination of judgment.

**.10** Nothing in this interpretation precludes a *member* from resigning from the organization at any time. However, resignation may not relieve the *member* of responsibilities in the situation, including any responsibility to disclose concerns to third parties, such as regulatory authorities or the employer's (former employer's) external accountant.

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 760 of 802
Case 1:11-cv-22408-MGC Document 272-18 entered on FLSD Docket 05/13/2015 Page 45 of
190

**.11**     A *member* should use professional judgment and apply similar *safeguards*, as appropriate, to other situations involving a difference of opinion as described in this interpretation so that the *member* does not subordinate his or her judgment. [Prior reference: paragraph .05 of ET section 102]

## 1.140 Client Advocacy

### 1.140.010 Client Advocacy

**.01**     An advocacy *threat* to compliance with the "Integrity and Objectivity Rule" [1.100.001] may exist when a *member* or the *member's firm* is engaged to perform nonattest services, such as tax and consulting services, that involve acting as an advocate for the *client* or to support a *client's* position on accounting or financial reporting issues either within the *firm* or outside the *firm* with standard setters, regulators, or others.

**.02**     The code governs these types of *professional services*, and the *member* shall perform such services in compliance with the "General Standards Rule" [1.300.001], the "Compliance With Standards Rule" [1.310.001], the "Accounting Principles Rule" [1.320.001], and any *interpretations* thereof. The *member* shall also comply with the "Integrity and Objectivity Rule" [1.100.001] that requires maintaining objectivity and integrity and prohibits subordinating one's judgment to others.

**.03**     Some *professional services* involving *client* advocacy may stretch the bounds of performance standards, go beyond sound and reasonable professional practice, or compromise credibility, thereby creating *threats* to the *member's* compliance with the rules and damaging the reputation of the *member* and the *member's firm*. If such circumstances exist, the *member* and *member's firm* should determine whether it is appropriate to perform the *professional services*.

**.04**     When performing *professional services* requiring *independence*, a *member* shall also comply with the "Independence Rule" [1.200.001]. [Prior reference: paragraph .07 of ET section 102]

## 1.150 Use of a Third-Party Service Provider

### 1.150.040 Use of a Third-Party Service Provider

**.01**     When a *member* uses a *third-party service provider* to assist the *member* in providing *professional services*, *threats* to compliance with the "Integrity and Objectivity Rule" [1.100.001] may exist.

**.02**     *Clients* might not have an expectation that a *member* would use a *third-party service provider* to assist the *member* in providing the *professional services*. Therefore, before disclosing *confidential client information* to a *third-party service provider*, the *member* should inform the *client*, preferably in writing, that the *member* may use a *third-party service provider*. If the *client* objects to the *member's* use of a *third-party service provider*, the *member* either should not use the *third-party service provider* to perform the *professional services* or should decline to perform the engagement.

**.03**     A *member* is not required to inform the *client* when he or she uses a *third-party service provider* to provide administrative support services to the *member* (for example, record storage, software application hosting, or authorized e-file tax transmittal services).

**.04**     Refer to the "Use of a Third-Party Service Provider" interpretation [1.300.040] of the "General Standards Rule" [1.300.001] and the "Disclosing Information to a Third-Party Service Provider" interpretation [1.700.040] of the "Confidential Client Information Rule" [1.700.001] for additional guidance. [Prior reference: paragraphs .224–.225 of ET section 191]

A nonauthoritative basis for conclusions document that summarizes considerations that were deemed significant in the development of this interpretation is available at www.aicpa.org/InterestAreas/ProfessionalEthics/Resources/Tools/DownloadableDocuments/BasisforConclusionsOutsourcing.pdf.

Case 1:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 761 of 802
Case 2:09-cv-02406-MdC- Document 22718 Entered on FLSD Docket 05/13/2019 Page 46 of
190

> In addition, nonauthoritative sample client disclosure language a member could use to fulfill the requirement discussed in this interpretation is also available at www.aicpa.org/InterestAreas/ProfessionalEthics/Resources/Tools/DownloadableDocuments/Sample_Disclosure_Notification.pdf.

### 1.200 Independence

#### 1.200.001 Independence Rule

**.01**     A *member* in public practice shall be independent in the performance of *professional services* as required by standards promulgated by bodies designated by *Council*. [Prior reference: paragraph .01 of ET section 101]

### Interpretations Under the Independence Rule

#### 1.200.005 Application of the Conceptual Framework for Independence and Ethical Conflicts

**.01**     In the absence of an *interpretation* of the "<u>Independence Rule</u>" [1.200.001] that addresses a particular relationship or circumstance, a *member* should apply the "<u>Conceptual Framework for Independence</u>" interpretation [1.210.010].

**.02**     A *member* would be considered in violation of the "<u>Independence Rule</u>" [1.200.001] if the *member* cannot demonstrate that *safeguards* were applied that eliminated or reduced significant *threats* to an *acceptable level*. [Prior reference: "Other Considerations" section of paragraph .02 of ET section 101]

**.03**     A *member* should consider the guidance in "<u>Ethical Conflicts</u>" [1.000.020] when addressing ethical conflicts that may arise when the *member* encounters obstacles to following an appropriate course of action. Such obstacles may be due to internal or external pressures or to conflicts in applying relevant professional or legal standards, or both. [No prior reference: new content]

*Effective Date*

**.04**     Paragraph .03 is effective December 15, 2014.

### 1.210 Conceptual Framework Approach

#### 1.210.010 Conceptual Framework for Independence

*Introduction*

**.01**     It is impossible to enumerate all relationships or circumstances in which the appearance of *independence* might be questioned. Thus, in the absence of an *independence interpretation* that addresses a particular relationship or circumstance, a *member* should evaluate whether that relationship or circumstance would lead a reasonable and informed third party who is aware of the relevant information to conclude that there is a *threat* to either the *member's* or *firm's independence*, or both, that is not at an *acceptable level*. When making that evaluation, a *member* should apply the conceptual framework approach as outlined in this interpretation to analyze *independence* matters. A *member* may also wish to consider the conceptual framework approach described in this interpretation to gain a better understanding of the conclusions reached in other *interpretations* in ET section 1.200, "Independence." [Prior reference: "Other Considerations" section of paragraph .02 of ET section 101]

**.02**     The code specifies that in some circumstances no *safeguards* can reduce an *independence threat* to an *acceptable level*. For example, the code specifies that a *covered member* may not own even an immaterial *direct financial interest* in an *attest client* because there is no *safeguard* to reduce the self-interest *threat* to an *acceptable level*. A *member* may not use the conceptual framework to overcome this prohibition or any other prohibition or requirement in an *independence interpretation*.

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 762 of 802
Case 2:12-cv-22408-MGC Document 272-8 Entered on FLSD Docket 05/13/2019 Page 47 of
190

*Definitions Used in Applying the Conceptual Framework for Independence*

**.03**    **Acceptable level.** A level at which a reasonable and informed third party who is aware of the relevant information would be expected to conclude that a *member's independence* is not *impaired*.

**.04**    **Impair(ed).** In connection with *independence*, to effectively extinguish *independence*. When a *member's independence* is *impaired*, the *member* is not independent.

**.05**    **Safeguards.** Actions or other measures that may eliminate a *threat* or reduce a *threat* to an *acceptable level*.

**.06**    **Threats.** Relationships or circumstances that could *impair independence*.

*Conceptual Framework Approach*

**.07**    The conceptual framework approach entails identifying *threats* and evaluating the *threat* that the *member* would not be independent or would be perceived by a reasonable and informed third party who is aware of the relevant information as not being independent. The *member* must eliminate or reduce that *threat* to an *acceptable level* to conclude that the *member* is independent. *Threats* are at an *acceptable level* either because of the types of *threats* and their potential effect or because *safeguards* have eliminated or reduced the *threat*, so that a reasonable and informed third party who is aware of the relevant information would perceive that the *member's* professional judgment is not compromised.

**.08**    Refer to <u>paragraph .07</u> of the "Conceptual Framework for Members in Public Practice" [1.000.010.07] for a detailed description of the conceptual framework approach. [Prior reference: ET section 100-1]

*Documentation*

**.09**    When the *member* applies *safeguards* to eliminate or reduce significant *threats* to an *acceptable level*, as described in <u>paragraph .07c</u> of the "Conceptual Framework for Members in Public Practice" [1.000.010.07], the *member* should document the identified *threats* and *safeguards* applied. Failure to prepare the required documentation would be considered a violation of the "<u>Compliance With Standards Rule</u>" [1.310.001] rather than the "<u>Independence Rule</u>" [1.200.001] if the *member* can demonstrate that *safeguards* were applied that eliminated or reduced significant *threats* to an *acceptable level*. [Prior reference: "Other Considerations" section of paragraph .02 of ET section 101]

*Threats*

**.10**    Many different relationships or circumstances (or combinations of relationships or circumstances) can create *threats* to compliance with the "<u>Independence Rule</u>" [1.200.001]. It is impossible to identify every relationship or circumstance that creates a *threat*. Many *threats* fall into one or more of the following seven broad categories: adverse interest, advocacy, familiarity, management participation, self-interest, self-review, and undue influence.

**.11**    Examples of *threats* associated with a specific relationship or circumstance are identified in the *interpretations* of the code. <u>Paragraphs .12–.18</u> in this section define and provide examples, which are not all inclusive, of each of these *threat* categories. In certain circumstances, the code specifies that because of the type of *threat* and its potential effect, either no *safeguards* can eliminate or reduce the *threat* to an *acceptable level*, or a *member* would need to apply specific *safeguards* to eliminate or reduce an *independence threat* to an *acceptable level*. When *independence interpretations* in the code address one of these examples, a specific reference to the *independence interpretation* is provided in brackets after that example. If an example does not contain a specific reference to an *independence interpretation* , a *member* should use this "Conceptual Framework for Independence" interpretation to evaluate whether a *threat* is significant.

**.12**    *Adverse interest threat.* The *threat* that a *member* will not act with objectivity because the *member's* interests are in opposition to the interests of an *attest client*. An example is either the *attest client* or

the *member* commencing litigation against the other or expressing the intent to commence litigation. [1.290.010]

**.13**    *Advocacy threat.* The *threat* that a *member* will promote an *attest client's* interests or position to the point that his or her *independence* is compromised. Examples of advocacy *threats* include the following:

     a. A *member* promotes the *attest client's* securities as part of an initial public offering. [1.295.130]

     b. A *member* provides expert witness services to an *attest client*. [1.295.140]

     c. A *member* represents an *attest client* in U.S. tax court or other public forum. [1.295.160]

**.14**    *Familiarity threat.* The *threat* that, because of a long or close relationship with an *attest client*, a *member* will become too sympathetic to the *attest client's* interests or too accepting of the *attest client's* work or product. Examples of familiarity *threats* include the following:

     a. A member of the *attest engagement team* has an *immediate family* member or *close relative* in a *key position* at the *attest client*, such as the *attest client's* CEO. [1.270.020 and 1.270.100]

     b. A *partner* or *partner equivalent* of the *firm* has been a member of the *attest engagement team* for a prolonged period.

     c. A member of the *firm* has recently been a director or an officer of the *attest client*. [1.277.010]

     d. A member of the *attest engagement team* has a close friend who is in a *key position* at the *attest client*.

**.15**    *Management participation threat.* The *threat* that a *member* will take on the role of *attest client* management or otherwise assume management responsibilities for an *attest client*. Examples of management participation *threats* include the following:

     a. A *member* serves as an officer or a director of the *attest client*. [1.275.005]

     b. A *member* accepts responsibility for designing, implementing, or maintaining internal controls for the *attest client*. [1.295.030]

     c. A *member* hires, supervises, or terminates the *attest client's* employees. [1.295.135]

**.16**    *Self-interest threat.* The *threat* that a *member* could benefit, financially or otherwise, from an interest in, or relationship with, an *attest client* or persons associated with the *attest client*. Examples of self-interest *threats* include the following:

     a. A *member* has a *direct financial interest* or material *indirect financial interest* in the *attest client*. [1.240.010]

     b. A *member* has a *loan* from the *attest client*, an officer or a director of the *attest client*, or an individual who owns 10 percent or more of the *attest client's* outstanding equity securities. [1.260.010]

     c. A *member* or his or her *firm* relies excessively on revenue from a single *attest client*.

     d. A *member* or *member's firm* has a material joint venture or other material joint business arrangement with the *attest client*. [1.265]

**.17**    *Self-review threat.* The *threat* that a *member* will not appropriately evaluate the results of a previous judgment made, or service performed or supervised by the *member* or an individual in the *member's firm* and that the *member* will rely on that service in forming a judgment as part of an *attest engagement*. Certain self-review *threats*, such as preparing *source documents* used to generate the *attest client's financial*

*statements* [1.295.120], pose such a significant self-review *threat* that no *safeguards* can eliminate or reduce the *threats* to an *acceptable level*.

**.18** *Undue influence threat.* The *threat* that a *member* will subordinate his or her judgment to that of an individual associated with an *attest client* or any relevant third party due to that individual's reputation or expertise, aggressive or dominant personality, or attempts to coerce or exercise excessive influence over the *member*. Examples of undue influence *threats* include the following:

> *a.* Management threatens to replace the *member* or *member's firm* over a disagreement on the application of an accounting principle.

> *b.* Management pressures the *member* to reduce necessary audit procedures in order to reduce audit fees.

> *c.* The *member* receives a gift from the *attest client*, its management, or its significant shareholders. [1.285.010]

### Safeguards

**.19** *Safeguards* may partially or completely eliminate a *threat* or diminish the potential influence of a *threat*. The nature and extent of the *safeguards* applied will depend on many factors, including the size of the *firm* and whether the *attest client* is a *public interest entity*. To be effective, *safeguards* should eliminate the *threat* or reduce it to an *acceptable level*.

**.20** The following are three broad categories of *safeguards*:

> *a. Safeguards* created by the profession, legislation, or regulation.

> *b. Safeguards* implemented by the *attest client*. It is not possible to rely solely on *safeguards* implemented by the *attest client* to eliminate or reduce significant *threats* to an *acceptable level*.

> *c. Safeguards* implemented by the *firm*, including policies and procedures to implement professional and regulatory requirements.

**.21** The effectiveness of a *safeguard* depends on many factors, including those listed here:

> *a.* The facts and circumstances specific to a particular situation

> *b.* The proper identification of *threats*

> *c.* Whether the *safeguard* is suitably designed to meet its objectives

> *d.* The party(ies) that will be subject to the *safeguard*

> *e.* How the *safeguard* is applied

> *f.* The consistency with which the *safeguard* is applied

> *g.* Who applies the *safeguard*

> *h.* How the *safeguard* interacts with a *safeguard* from another category

> *i.* Whether the *attest client* is a *public interest entity*

**.22** Examples of various *safeguards* within each category are presented in paragraphs .21–.23 of the "Conceptual Framework for Members in Public Practice" [1.000.010]. The examples presented in these paragraphs are not intended to be all inclusive. In addition, *threats* may be sufficiently mitigated through the application of other *safeguards* not specifically identified in these paragraphs. [Prior reference: ET section 100-1]

*Effective Date*

**.23**     The addition of *partner equivalents* to paragraph .14*b* is effective for engagements covering periods beginning on or after December 15, 2014.

## 1.220 Accounting Firms

> A nonauthoritative question and answer regarding letter of intent to purchase practice is available in the Ethics FAQ at www.aicpa.org/InterestAreas/ProfessionalEthics/Resources/Tools/DownloadableDocuments/Ethics-General-FAQs.pdf.

### 1.220.010 Network and Network Firms

*General*

**.01**     To enhance their capabilities to provide *professional services*, *firms* frequently join larger groups, which typically are membership associations that are separate legal entities and otherwise unrelated to their members. The associations facilitate their members' use of association services and resources. They do not themselves typically engage in *public practice* or provide *professional services* to their members' *clients* or other third parties.

**.02**     *Firms* and other entities in the association cooperate with the *firms* and other entities that are members of the association to enhance their capabilities to provide *professional services*. For example, a *firm* may become a member of an association in order to refer work to, or receive referrals from, other association members. That characteristic alone would not be sufficient for the association to constitute a *network* or for the *firm* to be considered a *network firm*.

**.03**     However, an association would be considered a *network* if, in addition to cooperation among member *firms* and other entities to enhance their capabilities to provide *professional services*, member *firms* and other entities share one or more additional characteristics described in paragraphs .07–.18 of this section. If an association is considered a *network* and an entity is considered a *network firm* the classification should be applied consistently by all members of the association. When determining if one or more additional characteristics exist, *members* should give due consideration to what a reasonable and informed third party who is aware of the relevant information would be expected to conclude.

**.04**     A *network firm* is required to comply with the "Independence Rule" [1.200.001] with respect to the *financial statement* audit and review *clients* of the other *network firms* if the use of the audit or review report for the *client* is not restricted, as defined by professional standards. For all other *attest clients*, the *covered member* should consider any *threats* that the *covered member* knows or has reason to believe may be created by another *network firm's* interests and relationships. If those *threats* are not at an *acceptable level*, the *covered member* should apply *safeguards* to eliminate the *threats* or reduce them to an *acceptable level*. If *safeguards* cannot be applied to eliminate or reduce the *threats* to an *acceptable level*, *independence* will be *impaired*. Entities within the *network* that meet the definition of a *network firm* are subject to the "Independence Rule."

**.05**     The determination that a *firm* or other entity or an association of *firms* or other entities meets the definition of a *network firm* and *network* is solely for purposes of this interpretation and may not be used or relied upon in any other context. In particular, determining whether a *firm* or other entity is a *network firm* or whether an association of *firms* or other entities is a *network* for purposes of defining legal responsibilities from one *firm* to the other or to third parties is beyond the scope of this interpretation.

*Characteristics of a Network*

**.06**     When an association is formed for the purpose of cooperating to enhance the *firms'* capabilities to provide *professional services*, and one of the characteristics described in paragraphs .07–.18 of this section also applies, the association is considered to be a *network*.

**.07** *Sharing a common brand name.* This characteristic exists when the association's members or entities *controlled* by the association's members share the use of a common brand name or share common initials as part of the *firm* name.

**.08** A *firm* that does not use a common brand name as part of its *firm* name but makes reference in its stationery or promotional materials to being a member of an association of *firms* should carefully consider how it describes that membership and take steps to avoid the perception that it belongs to a *network*. The *firm* may wish to avoid such perception by clearly describing the nature of its membership in the association (for example, by stating on its stationery or promotional material that it is "an independently owned and operated member firm of XYZ Association").

**.09** *Sharing common control.* This characteristic exists when entities within the association are under common *control* with other firms in the association through ownership, management, or other means (for example, by contract). However, compliance with association requirements as a condition of membership does not indicate that members are under common *control*; rather, it reflects the type of cooperation that is expected when an entity joins the association.

**.10** *Sharing profits or costs.* This characteristic exists when entities within the association share profits or costs. Following are examples of profit and cost sharing that would not create a *network*:

  *a.* Sharing immaterial costs

  *b.* Sharing costs related to operating the association

  *c.* Sharing costs related to the development of audit methodologies, manuals, and training courses

  *d.* Arrangements between a *firm* and an otherwise unrelated entity to jointly provide a service or develop a product

**.11** *Sharing a common business strategy.* This characteristic exists when entities within the association share a common business strategy. Sharing a common business strategy involves ongoing collaboration among the *firms* whereby the *firms* are responsible for implementing the association's strategy and held accountable for performance pursuant to that strategy. An entity's ability to pursue an alternative strategy may be limited by the common business strategy because, as a member, it must act in accordance with the common business strategy and, therefore, in the best interest of the association.

**.12** An entity is not considered to be a *network firm* merely because it cooperates with another entity solely to market *professional services* or responds jointly to a request for a proposal for the provision of a *professional service*.

**.13** *Sharing significant professional resources.* This characteristic exists when entities within the association share a significant part of professional resources. *Members* should consider both qualitative and quantitative factors in determining whether the shared professional resources are significant.

**.14** Examples of professional resources include the following:

  *a.* Common systems that enable *firms* to exchange information, such as *client* data, billing, and time records

  *b. Partners* and staff

  *c.* Technical departments to consult on technical or industry-specific issues, transactions, or events for assurance engagements

  *d.* Audit methodology or audit manuals

  *e.* Training courses and facilities

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 767 of 802
Case 1:1 -cv-22408-MGC Document 2-28 entered on FLSD Docket 05/13/2019 Page 82 of
190

**.15**    When shared professional resources involve the exchange of *client* information or personnel, such as when staff are drawn from a shared pool or a common technical department is created within the association to provide participating *firms* with technical advice that the *firms* are required to follow, a reasonable and informed third party who is aware of the relevant information would be expected to conclude that the shared professional resources are significant.

**.16**    When the entities within the association do not share a significant amount of human resources (for example, a *firm* occasionally uses personnel of another member *firm* to assist with an engagement, such as observing a *client's* physical inventory count) or significant *client* information (for example, *client* data, billing, and time records) and have the ability to make independent decisions regarding technical matters, audit methodology, training, and the like, the entities are not considered to be sharing a significant part of professional resources.

**.17**    When the shared professional resources are limited to a common audit methodology, audit manuals, training courses, or facilities and do not include a significant amount of human resources or *clients* or markets, the shared professional resources are not considered significant.

**.18**    *Sharing common quality control policies and procedures.* This characteristic exists when entities within the association are required to follow common quality control policies and procedures that the association monitors. Monitoring is the ongoing consideration and evaluation of the *firms'* systems of quality control, which enables the association to obtain reasonable assurance that the *firms'* systems of quality control are designed appropriately and operating effectively.

**.19**    Refer to paragraph .03*d* of the "Application of the AICPA Code" [0.200.020] for additional guidance. [Prior reference: paragraph .19 of ET section 101]

---

Nonauthoritative implementation guidance can be found at www.aicpa.org/InterestAreas/ProfessionalEthics/Resources/Tools/DownloadableDocuments/Ethics-Division-Network-Firm-Implementation-Guidance.pdf.

Nonauthoritative frequently asked questions (FAQ) and case studies can be found at www.aicpa.org/InterestAreas/ProfessionalEthics/Resources/Tools/DownloadableDocuments/NetworkFirmFAQandCaseStudies.pdf

---

### 1.220.020 Alternative Practice Structures

**.01**    *Members* practicing public accounting in nontraditional practice structures (alternative practice structures [APS]) should apply this interpretation to determine whether they are in compliance with the "Independence Rule" [1.200.001].

**.02**    All such structures must be organized in a form that complies with applicable laws, rules, and regulations, the "Form of Organization and Name Rule" [1.800.001] and the related "Alternative Practice Structures" interpretation [1.810.050] of the "Form of Organization and Name Rule."

**.03**    For example, in an APS, a substantial piece of the nonattest portion of a *member's* practice may be conducted under public or private ownership, and the attest portion of the practice may be conducted through a separate *firm* that the *member* owns and *controls*.

*Terminology*

**.04**    The following terms are defined solely for the purpose of applying this interpretation:

        *a.* APS is a form of organization in which a *firm* that provides attest services is closely aligned with another public or private organization that performs other *professional services*.

        *b.* A covered member includes both employed and leased individuals who meet the definition of a *covered member*.

c. The term direct superiors includes those persons so closely associated with a *partner* or *manager* who is a covered member that such persons can directly control the *partner's* or *manager's* activities. For this purpose, a person who can directly control is the immediate superior of the *partner* or *manager* who has the power to direct the activities of that person so as to be able to directly or indirectly (for example, through another entity over which the direct superior can exercise significant influence) derive a benefit from that person's activities. An example is the person who has day-to-day responsibility for the activities of the *partner* or *manager* and is in a position to recommend promotions and compensation levels. This group of persons is so closely aligned through direct reporting relationships that their interests seem to be inseparable.

d. Indirect superiors are not connected with *partners* and *managers* who are covered members through direct reporting relationships; rather, they are one or more levels above direct superiors of covered members (that is, there always is a level in between). Generally, this starts with persons in an organization structure to whom direct superiors report and go up the line from there. Indirect superiors also include the *immediate family* of indirect superiors.

e. Other public company entities include the public company and all entities consolidated in the public company *financial statements* that are not subject to the "Independence Rule" [1.200.001] and its *interpretations* in their entirety.

f. Significant influence is having the ability to exercise significant influence over the financial, operating, or accounting policies of the entity by, for example

  i. being connected with the entity as a promoter, an underwriter, a voting trustee, a general partner, or a director;

  ii. being in a policy-making position, such as chief executive officer, chief operating officer, chief financial officer, or chief accounting officer; or

  iii. meeting the criteria in Financial Accounting Standards Board (FASB) *Accounting Standards Codification* (ASC) 323-10-15 to determine the ability of an investor to exercise such influence with respect to an entity.

### *APS Model*

**.05** The APS described in paragraphs .06–.07 in this section and the related chart provides an example of a structure in use at the time that this interpretation was developed. Many of the references in this interpretation are to the example, but *members* should apply the concepts in spirit and substance to variations of the example structure as they develop.

**.06** The example APS in this interpretation is one in which an existing CPA practice (Oldfirm) is sold by its owners to another (possibly public) entity (PublicCo). PublicCo has subsidiaries or divisions, such as a bank, an insurance company, or a broker-dealer. It also has one or more professional service subsidiaries (PSS) or divisions that offer nonattest services (for example, tax, personal financial planning, and management consulting) to *clients*. The owners and employees of Oldfirm become employees of one of PublicCo's subsidiaries or divisions and may provide those nonattest services. In addition, the owners of Oldfirm form a new CPA *firm* (Newfirm) to provide attest services. CPAs, including the former owners of Oldfirm, own a majority of Newfirm (with regard to voting and financial interests). Attest services are performed by Newfirm and supervised by its owners. The arrangement between Newfirm and PublicCo (or one of its subsidiaries or divisions) includes the lease of employees, office space, and equipment; the performance of back-office functions, such as billing and collections; and advertising. Newfirm pays a negotiated amount for these services.

**.07** The chief executive of the local office of the PSS where the *partners* of Newfirm are employed would be a direct superior. The chief executive of the PSS itself would be an indirect superior, and there may be indirect superiors in between, such as a regional chief executive of all PSS offices within a geographic area.

Part 1 — Members in Public Practice



**Interpretation**

.08    The "Independence Rule" [1.200.001] and *interpretations* normally extend only to those persons and entities included in the definition of *covered members*. However, in an APS environment, the self-interest, management participation, self-review, advocacy, or undue influence *threats* to a covered member's compliance with the "Independence Rule" may not be at an *acceptable level* unless certain *safeguards* are implemented by other individuals or entities.

.09    *Threats* to compliance with the "Independence Rule" [1.200.001] would not be at an *acceptable level*, could not be reduced to an *acceptable level* by the application of *safeguards*, and *independence* would be *impaired* when the following individuals or entities fail to apply the "Independence Rule" and *interpretations* with respect to *attest clients* of Newfirm:

  a. Covered members of Newfirm

  b. Direct superiors of any *partner* or *manager* who is a covered member of Newfirm and entities within the APS over which such individuals can exercise *significant influence*

.10    In addition, *threats* to compliance with the "Independence Rule" [1.200.001] would not be at an *acceptable level*, could not be reduced to an *acceptable level* by the application of *safeguards*, and *independence* would be *impaired* in the following circumstances:

  a. Indirect superiors and other public company entities have a material relationship with an *attest client* of Newfirm that is prohibited by the "Overview of Financial Interests" interpretation [1.240.010], the "Trustee or Executor" interpretation [1.245.010], the "Loans" interpretation [1.260.010], or the "Joint Closely Held Investments" interpretation [1.265.020] of the "Independence Rule" (for example, investments, *loans*, and so on). In making the test for materiality for financial relationships of an indirect superior, all the financial relationships with an *attest client* held by that person should be aggregated and, to determine materiality, assessed in relation to the person's net worth. In making the materiality test for financial relationships of other public company entities, all the financial relationships with an *attest client* held by such entities should be aggregated and, to determine materiality, assessed in relation to the consolidated *financial statements* of PublicCo.

Case 1:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 770 of 802
Case 1:12-cv-22408-MGC Document 27-18 Entered on FLSD Docket 05/13/2019 Page 85 of
190

    *b.* Any other public company entity over which an indirect superior has direct responsibility has a financial relationship with an *attest client* during the *period of the professional engagement* that is material in relation to the other public company entity's *financial statements*.

    *c.* Financial relationships of indirect superiors or other public company entities allow such persons or entities to exercise significant influence over the *attest client* during the *period of the professional engagement*. In making the test for significant influence, financial relationships of all indirect superiors and other public company entities should be aggregated.

    *d.* Other public company entities or any of their employees are connected with an *attest client* of Newfirm as a promoter, an underwriter, a voting trustee, a director, or an officer during the *period of the professional engagement* or during the period covered by the *financial statements*.

**.11**    Indirect superiors and other public company entities may provide services to an *attest client* of Newfirm that would *impair independence* if performed by Newfirm, except as noted in paragraph .10*d*.

**.12**    When Newfirm and its *partners* and professional employees perform *attest engagements* for PublicCo or any of its subsidiaries or divisions, *threats* to compliance with the "Independence Rule" [1.200.001] would not be at an *acceptable level* and could not be reduced to an *acceptable level* through the application of *safeguards*. Accordingly, *independence* would be *impaired*.

**.13**    If an *attest client* of Newfirm holds an investment in PublicCo that is material to the *attest client* or that allows the *attest client* to exercise significant influence over PublicCo during the *period of the professional engagement*, *threats* to compliance with the "Independence Rule" [1.200.001] would not be at an *acceptable level* and could not be reduced to an *acceptable level* through the application of *safeguards*. Accordingly, *independence* would be *impaired*.

**.14**    When making referrals of services between Newfirm and any of the entities within PublicCo, a *member* should consider the provisions of the "Conflicts of Interest" interpretation [1.110.010] of the "Integrity and Objectivity Rule" [1.100.001] and the "Alternative Practice Structures" interpretation [1.810.050] of the "Form of Organization and Name Rule" [1.800.001]. [Prior reference: paragraph .16 of ET section 101]

### 1.220.030 Use of a Nonindependent CPA Firm on an Engagement

**.01**    If *partners* or professional employees from another *firm* that was not independent of an *attest client* participate on the *attest engagement team*, *threats* to compliance with the "Independence Rule" [1.200.001] would not be at an *acceptable level* and could not be reduced to an *acceptable level* through the application of *safeguards*. Accordingly, the *firm's independence* would be *impaired*.

**.02**    However, the *firm* may use the work of such individuals in a manner similar to internal auditors, provided that the *firm* complies with AU-C section 610, *Using the Work of Internal Auditors* (AICPA, *Professional Standards*). [Prior reference: paragraphs .142–.143 of ET section 191]

### 1.224 Affiliates, Including Governmental Units

### 1.224.010 Client Affiliates

**.01**    *Financial interests* in, and other relationships with, *affiliates* of a *financial statement attest client* may create *threats* to a *member's* compliance with the "Independence Rule" [1.200.001].

**.02**    When a *client* is a *financial statement attest client*, *members* should apply the "Independence Rule" [1.200.001] and related *interpretations* applicable to the *financial statement attest client* to their *affiliates*, except in the following situations:

    *a.* A *covered member* may have a *loan* to or from an individual who is an officer, a director, or a 10 percent or more owner of an *affiliate* of a *financial statement attest client* during the *period of the professional engagement* unless the *covered member* knows or has reason to believe that the individual is in such a position with the *affiliate*. If the *covered member* knows or has reason to

believe that the individual is an officer, a director, or a 10 percent or more owner of the *affiliate*, the *covered member* should evaluate the effect that the relationship would have on the *covered member's independence* by applying the "Conceptual Framework for Independence" [1.210.010].

   *b.* A *member* or the *member's firm* may provide prohibited nonattest services to entities described under items *c–j* of the definition of *affiliate* during the *period of the professional engagement* or during the period covered by the *financial statements*, provided that it is reasonable to conclude that the services do not create a self-review *threat* with respect to the *financial statement attest client* because the results of the nonattest services will not be subject to *financial statement* attest procedures. For any other *threats* that are created by the provision of the nonattest services that are not at an *acceptable level* (in particular, those relating to management participation), the *member* should apply *safeguards* to eliminate or reduce the *threats* to an *acceptable level*.

   *c.* A *firm* will only have to apply the "Subsequent Employment or Association With an Attest Client" interpretation [1.279.020] of the "Independence Rule" if the former employee, by virtue of his or her employment at an entity described under items *c–j* of the definition of *affiliate*, is in a *key position* with respect to the *financial statement attest client*. Individuals in a position to influence the attest engagement and on the *attest engagement team* who are considering employment with an *affiliate* of a *financial statement attest client* will still need to report consideration of employment to an appropriate person in the *firm* and remove themselves from the *financial statement attest engagement*, even if the position with the *affiliate* is not a *key position*.

   *d.* A *covered member's immediate family* members and *close relatives* may be employed in a *key position* at an entity described under items *c–j* of the definition of *affiliate* during the *period of the professional engagement* or during the period covered by the *financial statements*, provided they are not in a *key position* with respect to the *financial statement attest client*.

**.03**   A *member* must expend best efforts to obtain the information necessary to identify the *affiliates* of a *financial statement attest client*. If, after expending best efforts, a *member* is unable to obtain the information to determine which entities are *affiliates* of a *financial statement attest client*, *threats* would be at an *acceptable level* and *independence* would not be *impaired* if the *member* (*a*) discusses the matter, including the potential impact on *independence*, with *those charged with governance*; (*b*) documents the results of that discussion and the efforts taken to obtain the information; and (*c*) obtains written assurance from the *financial statement attest client* that it is unable to provide the *member* with the information necessary to identify the *affiliates* of the *financial statement attest client*.

**.04**   This interpretation does not apply to a *financial statement attest client* that is covered by the "Entities Included in State and Local Government Financial Statements" interpretation [1.224.020] of the "Independence Rule" [1.200.001]. [Prior reference: paragraph .20 of ET section 101]

***Acquisitions and Other Business Combinations That Involve a Financial Statement Attest Client***

**.05**   The exception in paragraph .06 would apply when (1) a *financial statement attest client* is acquired during the *period of the professional engagement* by either a non-client or a nonattest client (acquirer), (2) the *attest engagement* covers only periods prior to the acquisition, and (3) the *member* or *member's firm* will not continue to provide *financial statement* attest services to the acquirer.

**.06**   *Independence* will not be considered *impaired* with respect to the *financial statement attest client* because a *member* or *member's firm* has an interest in or relationship with the acquirer that may otherwise *impair independence* as a result of the requirements of this interpretation or the definition of "*attest client*" (as it relates to the entity or person that engages the member or member's firm to perform the *attest engagement*).

**.07**   Notwithstanding paragraph .06, a *member* should give consideration to the requirements of the "Conflicts of Interest" interpretation [1.110.010], under the "Integrity and Objectivity Rule" [1.100.001], with regard to any relationships that the *member* knows or has reason to believe exist with the acquirer, the *financial statement attest client*, or the *firm*.

**.08** A *member* should refer to paragraph .03 of "Application of the AICPA Code" [0.200.020] for guidance on circumstances involving foreign network firms.

*Effective Date*

**.09** Paragraphs .01–.04 are effective for engagements covering periods beginning on or after January 1, 2014. Early implementation is allowed.

[See Revision History Table.]

Nonauthoritative questions and answers regarding the application of the independence rules to affiliates of employee benefit plans are available at http://aicpa.org/InterestAreas/ProfessionalEthics/Resources/Tools/DownloadableDocuments/FAQsOnAppplictionOfTheIndependnceRulesToAffiliatesOfEmployeeBenefitPlans.pdf.

### 1.224.020 Entities Included in State and Local Government Financial Statements

**.01** For purposes of this interpretation, a financial reporting entity's basic *financial statements* issued in conformity with generally accepted accounting principles (GAAP) include the following:

> *a.* The government-wide *financial statements* (consisting of the entity's governmental activities, business-type activities, and discretely presented component units)
>
> *b.* The fund *financial statements* (consisting of major funds, nonmajor governmental and enterprise funds, internal service funds, blended component units, and fiduciary funds)
>
> *c.* Other entities disclosed in the notes to the basic *financial statements*. Examples of other entities that should be disclosed include the following:
>
>> i. Related organizations
>>
>> ii. Joint ventures
>>
>> iii. Jointly governed organizations
>>
>> iv. Component units of another government with characteristics of a joint venture or jointly governed organization

**.02** Certain terminology used in this interpretation is specifically defined by the Governmental Accounting Standards Board (GASB).

**.03** When a *covered member* audits the basic *financial statements* of a financial reporting entity or the *financial statements* of a major fund, a nonmajor fund, an internal service fund, a fiduciary fund, or a component unit of the financial reporting entity or other entity that should be disclosed in the notes to the basic *financial statements*, the *covered member* must be independent of the entity, fund, or component unit that the *covered member* is auditing, as discussed in this interpretation.

*Auditor of the Financial Reporting Entity*

**.04** When a *covered member* audits the basic *financial statements* of the financial reporting entity, the *covered member* must also be independent of any major or nonmajor fund, internal service fund, fiduciary fund, or component unit or other entities disclosed in the basic *financial statements* unless the primary auditor explicitly states reliance on other auditors' reports.

**.05** *Independence* is not required with respect to an entity disclosed in the notes to the basic *financial statements* if the financial reporting entity is not financially accountable for the entity and the required disclosure does not include financial information. For example, a disclosure limited to the financial reporting entity's ability to appoint the governing board members would not require the *covered member* to be independent of that entity.

**.06** Regardless of the exceptions in paragraph .05, if a *covered member* or a *covered member's immediate family* holds a *key position* in any of the following entities during the *period of the professional engagement* or during the period covered by the *financial statements*, *threats* to compliance with the "Independence Rule" [1.200.001] would not be at an *acceptable level* and could not be reduced to an *acceptable level* by the application of *safeguards* and the *covered member's independence* would be *impaired*:

   *a.* Major fund, nonmajor fund, internal service fund, fiduciary fund, or component unit of the financial reporting entity

   *b.* Other entity that should be disclosed in the notes to the basic *financial statements*

**Auditor Does Not Audit the Primary Government**

**.07** When a *covered member* does not audit the primary government but audits the *financial statements* of the following entities, the *covered member* is not required to be independent of entities that the *covered member* does not audit:

   *a.* A major fund, a nonmajor fund, an internal service fund, a fiduciary fund, or a component unit of the financial reporting entity

   *b.* An entity that should be disclosed in the notes to the basic *financial statements* of the financial reporting entity

**.08** However, if a *covered member* or a *covered member's immediate family* holds a *key position* within the primary government during the *period of the professional engagement* or during the period covered by the *financial statements*, *threats* to compliance with the "Independence Rule" [1.200.001] would not be at an *acceptable level* and could not be reduced to an *acceptable level* by the application of *safeguards*. Accordingly, the *covered member's independence* would be *impaired*. For purposes of this interpretation, a *covered member* and the *covered member's immediate family* would not be considered employed by the primary government if the exceptions provided for in paragraph .07*b* of the "Client" definition [0.400.07] were met. [Prior reference: paragraph .12 of ET section 101]

## 1.226 Reissued Reports

### 1.226.010 Consenting to the Use of a Previously Issued Report

**.01** A *member* or *member's firm* who was in compliance with the "Independence Rule" [1.200.001] when initially issuing a report may reissue the previously issued report or consent to, or acknowledge the inclusion or incorporation by reference of, the report when the *member* or *member's firm's independence* is *impaired*, provided that the *member* or *member's firm* does not perform procedures that require updating the date or dual dating the report.

**.02** In order to consent to, or acknowledge the inclusion or incorporation by reference of, a previously issued report, the *member* or *member's firm* may perform procedures required by applicable professional standards when the *member's* or *member's firm's independence* is *impaired*. Such procedures include making inquiries of successor auditors, reading the subsequent *financial statements*, or other procedures that the *member* believes are necessary to assess the effect of subsequently discovered facts on the *financial statements* covered by the previously issued report. [Prior reference: paragraphs .200–.201 of ET section 191]

## 1.228 Engagement Contractual Terms

### 1.228.010 Indemnification of a Covered Member

**.01** *Threats* to compliance with the "Independence Rule" [1.200.001] would be at an *acceptable level* and a *covered member's independence* would not be *impaired* if the *covered member* includes in engagement

letters a clause that provides that its *attest client* would release, indemnify, defend, and hold the *covered member* (and the *covered member's partners*, heirs, executors, personal representatives, successors, and assigns) harmless from any liability and costs resulting from knowing misrepresentations by management. [Prior reference: paragraphs .188–.189 of ET section 191]

.02     Refer to the "Indemnification and Limitation of Liability Provisions" interpretation [1.400.060] of the "Acts Discreditable Rule" [1.400.001].

### 1.228.020 Indemnification of an Attest Client

.01     *Threats* to compliance with the "Independence Rule" [1.200.001] would not be at an *acceptable level* and could not be reduced to an *acceptable level* by the application of *safeguards* if the *covered member* enters into an agreement providing, among other things, that the *covered member* indemnifies the *attest client* for damages, losses, or costs arising from lawsuits, claims, or settlements that relate, directly or indirectly, to the *attest client's* acts. The *covered member's independence* would be *impaired* under these circumstances. [Prior reference: paragraphs .204–.205 of ET section 191]

### 1.228.030 Alternative Dispute Resolution

.01     A *covered member* may include in an engagement letter a provision to use alternative dispute resolution (ADR) techniques to resolve disputes relating to past services (in lieu of litigation). *Threats* to compliance with the "Independence Rule" [1.200.001] would be at an *acceptable level* and *independence* would not be *impaired* because the *covered member* and *attest client* would not be in positions of material adverse interests due to threatened or actual litigation.

.02     The *covered member* should exercise professional judgment when rendering current services, regardless of the existence of the provision. [Prior reference: paragraphs .190–.191 of ET section 191]

.03     If ADR techniques are initiated to resolve a dispute with the *attest client*, *threats* to compliance with the "Independence Rule" [1.200.001] would be at an *acceptable level* when the ADR techniques are designed to facilitate negotiation, and the conduct of those negotiations does not place the *covered member* and the *attest client* in positions of material adverse interests. *Independence* would not be *impaired* under these circumstances. If, however, the ADR proceedings are sufficiently similar to litigation (as in the case of binding arbitration), an adverse interest *threat* may exist and place the *covered member* and the *attest client* in a position of material adverse interests. Under such circumstances, the *member* should apply the guidance under the "Actual or Threatened Litigation" interpretation [1.290.010] of the "Independence Rule." [Prior reference: paragraphs .192–.193 of ET section 191]

### 1.230 Fees

A nonauthoritative question and answer regarding *pro bono* and below cost fees is available in the Ethics FAQ at www.aicpa.org/InterestAreas/ProfessionalEthics/Resources/Tools/DownloadableDocuments/Ethics-General-FAQs.pdf.

### 1.230.010 Unpaid Fees

.01     The existence of unpaid fees to a *covered member* for *professional services* previously rendered to an *attest client* may create self-interest, undue influence, or advocacy *threats* to the *covered member's* compliance with the "Independence Rule" [1.200.001].

.02     *Threats* to the *covered member's* compliance with the "Independence Rule" [1.200.001] would not be at an *acceptable level* and could not be reduced to an *acceptable level* by the application of *safeguards* if a *covered member* has unpaid fees from an *attest client* for any previously rendered *professional service* provided more than one year prior to the date of the current-year report. Accordingly, *independence* would be *impaired*. Unpaid fees include fees that are unbilled or a note receivable arising from such fees.

**.03**    This interpretation does not apply to fees outstanding from an *attest client* in bankruptcy. [Prior reference: paragraphs .103–.104 of ET section 191]

**.04**    Refer to the "Fees and Other Types of Remuneration" topic [1.500] for additional guidance.

### 1.230.020 Fees and Other Types of Remuneration

**.01**    See the "Fees and Other Types of Remuneration" topic [1.500] for guidance on contingent fees, commissions, and referral fees. [No prior reference: new content]

*Effective Date*

**.02**    Effective December 15, 2014.

### 1.240 Financial Interests

### 1.240.010 Overview of Financial Interests

**.01**    If a *covered member* had or was committed to acquire any *direct financial interest* in an *attest client* during the *period of the professional engagement*, the self-interest *threat* to the *covered member's* compliance with the "Independence Rule" [1.200.001] would not be at an *acceptable level* and could not be reduced to an *acceptable level* by the application of *safeguards*. Accordingly, *independence* would be *impaired*. [Prior reference: paragraphs .02A(1) and .17 of ET section 101]

**.02**    If a *covered member* had or was committed to acquire any material *indirect financial interest* in an *attest client* during the *period of the professional engagement*, the self-interest *threat* to the *covered member's* compliance with the "Independence Rule" [1.200.001] would not be at an *acceptable level* and could not be reduced to an *acceptable level* by the application of *safeguards*. Accordingly, *independence* would be *impaired*. [Prior reference: paragraphs .02A(1) and .17 of ET section 101]

**.03**    If a *partner* or professional employee of the *firm*, his or her *immediate family*, or any group of such persons acting together owned more than 5 percent of an *attest client's* outstanding equity securities or other ownership interests during the *period of the professional engagement*, the self-interest *threat* to compliance with the "Independence Rule" [1.200.001] would not be at an *acceptable level* and could not be reduced to an *acceptable level* by the application of *safeguards*. Accordingly, *independence* would be *impaired*. [Prior reference: paragraph .02B of ET section 101]

**.04**    Refer to the "Joint Closely Held Investments" interpretation [1.265.020] for additional guidance.

### 1.240.020 Unsolicited Financial Interests

**.01**    When a *covered member* becomes aware that he or she will receive, or has received, an unsolicited *financial interest* in an *attest client* during the *period of the professional engagement*, such as through a gift or an inheritance, the self-interest *threat* would be at an *acceptable level* and *independence* would not be *impaired* if both of the following *safeguards* are met:

   *a.* The *covered member* disposes of the *financial interest* as soon as practicable but no later than 30 days after the *covered member* has knowledge of and obtains the right to dispose of the *financial interest*.

   *b.* During the period in which the *covered member* does not have the right to dispose of the *financial interest*, the *covered member* does not participate on the *attest engagement team*, and the *direct financial interest* or *indirect financial interest* is not material to the *covered member*. [Prior reference: paragraph .17 of ET section 101]

### 1.240.030 Mutual Funds

**.01**    A *covered member* who owns shares in a mutual fund has a *direct financial interest* in the mutual fund. However, whether the underlying investments in the mutual fund are considered to be the *covered*

*member's direct financial interests* or *indirect financial interests* depends on the proportion of the mutual fund's outstanding shares that the *covered member* owns and whether the mutual fund is diversified.

.02 If a *covered member* owns 5 percent or less of the outstanding shares of a diversified mutual fund, the underlying investments would be considered immaterial *indirect financial interests*. Accordingly, the self-interest *threat* would be at an *acceptable level*, and *independence* would not be *impaired*. To determine if the mutual fund is diversified, the *covered member* should consider referring to (*a*) the mutual fund's prospectus for disclosure regarding fund management's determination regarding diversification and (*b*) Section 5(b)(1) of the Investment Company Act of 1940.

.03 If a *covered member* owns more than 5 percent of a diversified mutual fund's outstanding shares, or if a *covered member* owns a *financial interest* in a nondiversified mutual fund, the *covered member* should evaluate the mutual fund's underlying investments to determine whether the *covered member* holds a material *indirect financial interest* in any of the underlying investments.

.04 The following example illustrates how to determine if the underlying investments are material to a *covered member's* net worth. If

- a nondiversified mutual fund owns shares in client company A,

- the mutual fund's net assets are $10 million,

- the *covered member* owns 1 percent of the outstanding shares of the mutual fund, having a value of $100,000, and

- the mutual fund has 10 percent of its assets invested in company A,

then the *covered member's indirect financial interest* in company A is $10,000 ($100,000 × 10%). The *covered member* would then compare the $10,000 *indirect financial interest* with his or her net worth, including the net worth of his or her *immediate family*, to determine if the *indirect financial interest* in company A is material. [Prior reference: paragraph .17 of ET section 101]

### 1.240.040 Retirement, Savings, Compensation, or Similar Plans

.01 Depending upon the facts and circumstances, *financial interests* held in a retirement, savings, compensation, or similar plan are either *direct financial interests* or *indirect financial interests*.

.02 Investments held by a retirement, savings, compensation, or similar plan sponsored by a *firm* are *direct financial interests* of the *firm*.

.03 If a *covered member* or his or her *immediate family* self-directs the investments in a retirement, savings, compensation, or similar plan or has the ability to supervise or participate in the plan's investment decisions, the *financial interests* held by the plan are *direct financial interests* of the *covered member*. For example,

    *a.* when a *covered member* or his or her *immediate family* member is a trustee of a retirement, savings, compensation, or similar plan or otherwise has the authority to supervise or participate in the plan's investment decisions (including through the selection of investment managers or pooled investment vehicles), the underlying investments are *direct financial interests* of the *covered member*.

    *b.* for self-directed or participant-directed plans (that is, the *covered member* or his or her *immediate family* member selects the underlying plan investments or selects from investment alternatives offered by the plan), the underlying investments are *direct financial interests* of the *covered member*.

.04 When the *covered member* or his or her *immediate family* do not participate in a self-directed or participant-directed plan and have no authority to supervise or participate in the plan's investment decisions, the underlying investments would be considered to be *indirect financial interests* of the *covered member*.

**.05** *Financial interests* held by a defined benefit plan are not considered *financial interests* of the *covered member* unless the *covered member* or his or her *immediate family* member is a trustee of the plan or otherwise has the ability to supervise or participate in the plan's investment decisions.

**.06** Allocated shares held in an employee stock ownership plan (ESOP) are considered *beneficially owned* by the *covered member*. Until the *covered member* or his or her *immediate family* member has the right to dispose of the allocated shares of the ESOP, the beneficial ownership is considered an *indirect financial interest*. Once the participant has the right to dispose of the *financial interests*, the *financial interests* are *direct financial interests* of the *covered member*.

**.07** Rights to acquire equity interests, restricted stock awards, or other *share-based compensation arrangements* are considered the *direct financial interests* of the *covered member*, regardless of whether such *financial interests* are vested or exercisable.

**.08** See the "Plan Is an Attest Client or Is Sponsored by an Attest Client" interpretation [1.250.010] and the "Former Employment or Association With an Attest Client" interpretation [1.277.010] of the "Independence Rule" [1.200.001] and the interpretations of the "Family Relationships With Attest Clients" subtopic [1.270] under the "Independence Rule." [Prior reference: paragraph .17 of ET section 101]

### 1.240.050 Partnerships

**.01** When used in this interpretation, control includes situations in which the *covered member* has the ability to exercise such control, either individually or acting together with his or her *firm* or other *partners* or professional employees of his or her *firm*.

**.02** The ownership of a general or limited partnership interest is considered a *direct financial interest* in the partnership.

**.03** *General partner*. If the *covered member* is a general partner, the *financial interests* held by a partnership are a *covered member's direct financial interests* because the *covered member* is in a position to control the partnership or supervise or participate in the partnership's investment decisions.

**.04** *Limited partner*. If the *covered member* is a limited partner, the *financial interests* held by a limited partnership are a *covered member's indirect financial interests* as long as the *covered member* does not control the partnership or supervise or participate in the partnership's investment decisions. However, if the *covered member* has the ability to replace the general partner or has the authority to supervise or participate in the partnership's investment decisions, the partnership's *financial interests* would be the *covered member's direct financial interests* .

**.05** Refer to the "Client Affiliates" interpretation [1.224.010] [1.200.001] and the "Joint Closely Held Investments" interpretation [1.265.020] of the "Independence Rule" for additional guidance. [Prior reference: paragraph .17 of ET section 101]

### 1.240.060 Limited Liability Companies

**.01** When used in this interpretation, control includes situations in which the *covered member* has the ability to exercise such control, either individually or acting together with his or her *firm* or other *partners* or professional employees of his or her *firm*.

**.02** Ownership of an interest in a limited liability company (LLC) is a *direct financial interest* in the LLC.

**.03** In an LLC, managing members control the LLC and have the authority to supervise or participate in the LLC's investment decisions. Accordingly, if a *covered member* is a manager of the LLC, the *financial interests* of the LLC are the *covered member's direct financial interests*. When a *covered member* is not a managing member of the LLC, the *covered member* should review the LLC's operating agreement to determine whether he or she can control the LLC or has the authority to supervise or participate in the LLC's investment decisions. In situations in which the *covered member* does not control the LLC and does

not have the authority to supervise or participate in the LLC's investment decisions, the *financial interests* held by the LLC are the *covered member's indirect financial interests*. [Prior reference: paragraph .17 of ET section 101]

### 1.240.070 Section 529 Plans

**.01** Section 529 plans are sponsored by states or higher education institutions and may be prepaid tuition plans or savings plans. An account owner establishes both types of plans for the benefit of a single beneficiary. The account owner may change the beneficiary at any time to another individual who is a relative of the previous beneficiary.

**.02** *Prepaid tuition plan.* A *covered member* who is the account owner of a Section 529 prepaid tuition plan is considered to have a *direct financial interest* in the plan. The account owner does not have any *financial interests* in the plan's underlying investments because the credits purchased represent an obligation of the state or educational institution to provide the education regardless of the plan's investment performance or the cost of the education at the future date.

**.03** *Savings plan.* A *covered member* who is the account owner of a Section 529 savings plan is considered to have a *direct financial interest* in both the plan and the plan's underlying investments because the account owner elects which sponsor's Section 529 savings plan to invest in, and prior to making the investment decision, the *covered member* has access to information about the plan's investment options or funds. However, if the Section 529 savings plan does not hold *financial interests* in an *attest client* at the time of the investment but the plan subsequently invests in that *attest client*, the financial interest *threat* would be at an *acceptable level* and *independence* would not be *impaired* if the *covered member* applies both of the following *safeguards*:

> *a.* The *covered member* transfers the account to another sponsor's Section 529 savings plan.

> *b.* The *covered member* transfers the account to another account owner who is not a *covered member*.

When the transfer of the account will result in a penalty or tax that is significant to the account, the *covered member* may continue to own the account until the account can be transferred without significant penalty or tax, provided that the *covered member* does not participate on the *attest engagement team* and is not an *individual in a position to influence the attest engagement*.

**.04** *Beneficiary of Section 529 account.* A *covered member* who is a beneficiary of a Section 529 account is not considered to have a *financial interest* in the plan or the plan's underlying investments because the *covered member* does not own the account or possess any of the underlying benefits of ownership. The beneficiary's only interest is to receive distributions from the account for qualified higher education expenses if and when they are authorized by the account owner.

**.05** *Government or governmental entity sponsors Section 529 plan.* Before becoming engaged to perform an *attest engagement* for a government or governmental entity that sponsors a Section 529 plan, *covered members* who are account owners of a Section 529 plan should consider the guidance in the "Entities Included in State and Local Government Financial Statements" interpretation [1.224.020]. [Prior reference: paragraph .17 of ET section 101]

### 1.245 Trusts and Estates

### 1.245.010 Trustee or Executor

**.01** The designation of a *covered member* to serve as a trustee of a trust or an executor or administrator of an estate that held, or was committed to acquire, any *direct financial interest* or any material *indirect financial interest* in an *attest client* during the *period of the professional engagement* does not in itself create a self-interest *threat* to the *covered member's* compliance with the "Independence Rule" [1.200.001]. [Prior reference: paragraphs .021–.022 of ET section 191]

**.02** However, when the *covered member* serves as the trustee or executor during the *period of the professional engagement*, *threats* to compliance with the "Independence Rule" [1.200.001] would not be at an *acceptable level* and could not be reduced to an *acceptable level* by the application of *safeguards* if

a. the *covered member* (individually or with others) has the authority to make investment decisions for the trust or estate,

b. the trust or estate owned or was committed to acquire more than 10 percent of the *attest client's* outstanding equity securities or other ownership interests, or

c. the value of the trust's or estate's holdings in the *attest client* exceeds 10 percent of the total assets of the trust or estate.

Accordingly, in these situations, *independence* would be *impaired*. [Prior reference: paragraph .02A(2) of ET section 101]

### 1.245.020 Trust Investments

**.01** When used in this interpretation, control includes situations in which the *covered member* has the ability to exercise such control, either individually or acting together with his or her *firm* or other *partners* or professional employees of his or her *firm*.

**.02** When a *covered member* is a grantor of a trust, including a blind trust, the trust and its underlying investments are considered to be the *covered member's direct financial interest* if any of the following rights or responsibilities exist:

a. The *covered member* has the ability to amend or revoke the trust.

b. The *covered member* has authority to control the trust.

c. The *covered member* has ability to supervise or participate in the trust's investment decisions.

d. The underlying trust investments will ultimately revert to the *covered member* as the grantor of the trust.

However, the trust and the trust's underlying investments are not considered to be *financial interests* of a *covered member* if the *covered member* is the grantor of the trust and the *covered member* does not have any of the rights or responsibilities in items *a–d*.

**.03** When a *covered member* is only a beneficiary of a trust and does not have any of the rights or responsibilities noted in paragraph .02, the trust is considered to be the *direct financial interest* of the *covered member*, and the trust's underlying investments are considered to be *indirect financial interests* of the *covered member*. [Prior reference: paragraph .17 of ET section 101]

***Effective Date***

**.04** This revised interpretation is effective December 15, 2014.

A nonauthoritative question and answer regarding the use of blind trusts is available at www.aicpa.org/InterestAreas/ ProfessionalEthics/Resources/Tools/DownloadableDocuments/Ethics-General-FAQs.pdf.

### 1.250 Participation in Employee Benefit Plans

### 1.250.010 Plan Is an Attest Client or Is Sponsored by an Attest Client

**.01** When a *covered member* participates in an employee benefit plan that is an *attest client* or is sponsored by an *attest client*, during the *period of the professional engagement* or during the period covered by

the *financial statements*, the self-interest *threat* to compliance with the "Independence Rule" [1.200.001] would not be at an *acceptable level*. *Independence* with respect to the employee benefit plan and the sponsor would be *impaired* except in the following specific situations:

    *a. Governmental organization.* When a *covered member* is an employee of a governmental organization that sponsors, cosponsors, or participates with other governmental organizations in a public employee retirement plan (the plan) and the *covered member* is required by law, rule, or regulation to audit the plan, *threats* to *independence* would be at an *acceptable level* if all of the following *safeguards* are met:

        i. The *covered member* is required to participate in the plan as a condition of employment.

        ii. The plan is offered to all employees in comparable employment positions.

        iii. The *covered member* is not associated with the plan in any capacity prohibited by the "Simultaneous Employment or Association With an Attest Client" interpretation [1.275.005] of the "Independence Rule."

        iv. The *covered member* has no influence or control over the investment strategy, benefits, or other management activities associated with the plan.

    *b. Former employment or association with the attest client.* The requirements of paragraph .04 of the "Former Employment or Association With an Attest Client" interpretation [1.277.010] must be met. [Prior reference: paragraphs .214–.215 of ET section 191]

**.02** When an *immediate family* member participates as a result of his or her employment, in an employee benefit plan that is an *attest client* or is sponsored by an *attest client*, the requirements of the "Immediate Family Member Participation in an Employee Benefit Plan That Is an Attest Client or Is Sponsored by an Attest Client (Other Than Certain Share-Based Arrangements or Nonqualified Deferred Compensation Plans)" interpretation [1.270.030] of the "Independence Rule" [1.200.001] must be met. [Prior reference: paragraph .17 of ET section 101]

### 1.250.020 Former Partners and Professional Employees Participation in a Firm-Sponsored Plan

**.01** When *partners* and professional employees leave a *firm* and are subsequently employed by, or associated with, an *attest client* of the *firm* in a *key position*, the requirements of paragraph .02a–c of the "Subsequent Employment or Association With an Attest Client" interpretation [1.279.020] must be met to reduce the familiarity, self-interest, or management participation *threats* to an *acceptable level*. [Prior reference: paragraph .04 of ET section 101]

### 1.255 Depository, Brokerage, and Other Accounts

### 1.255.010 Depository Accounts

**.01** If a *covered member* maintains checking, savings, certificates of deposit, money market, or other depository accounts (depository accounts) at a bank or similar depository institution that is an *attest client* during the *period of the professional engagement*, a self-interest *threat* to the *covered member's* compliance with the "Independence Rule" [1.200.001] may exist. For specific guidance applicable to any other types of custodial accounts (for example, brokerage accounts), see the "Brokerage and Other Accounts" interpretation [1.255.020] of the "Independence Rule."

**.02** When the *covered member* is a *firm*, the *threat* would be at an *acceptable level*, and *independence* would not be *impaired* if the *firm* concludes that the likelihood is remote that the bank or similar depository institution will experience financial difficulties.

**.03** When the *covered member* is an individual, the *threat* would be at an *acceptable level*, and *independence* would not be *impaired* if

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 781 of 802
Case 1:11-cv-22408-MGC Document 272-8 Entered on FLSD Docket 05/13/2015 Page 66 of
190

*a.* the balance in the depository account(s) is fully insured by the appropriate state or federal government deposit insurance agencies or by any other insurer, or

*b.* any uninsured amounts, in the aggregate, were not material to the *covered member's* net worth, or

*c.* if uninsured amounts were considered material, any uninsured amounts, in the aggregate, are reduced to an immaterial amount no later than 30 days from the date that the uninsured amount becomes material to the covered member's net worth.

**.04** Refer to the "Member of a Credit Union" interpretation [1.280.040] of the "Independence Rule" [1.200.001] for additional guidance. [Prior reference: paragraphs .140–.141 of ET section 191]

**1.255.020 Brokerage and Other Accounts**

**.01** If an *attest client* in the financial services industry, such as an insurance company, an investment adviser, a broker-dealer, a bank, or similar depository institution, has custody of a *covered member's* assets other than depository accounts, including retirement plan assets, during the *period of the professional engagement*, a self-interest *threat* to the *covered member's* compliance with the "Independence Rule" [1.200.001] may exist. For specific guidance applicable to depository accounts held at a bank or similar depository institution, see the "Depository Accounts" interpretation [1.255.010] of the "Independence Rule."

**.02** *Threats* would not be at an *acceptable level* and *independence* would be *impaired* unless the following safeguards are met

*a.* The *attest client's* services were rendered under the *attest client's* normal terms, procedures, and requirements.

*b.* Any *covered member's* assets subject to the risk of loss are immaterial to the *covered member's* net worth.

**.03** In determining if there is a risk of loss, the *covered member* should consider losses arising from the *attest client's* insolvency, bankruptcy, or acts of fraud or other illegal acts but should not consider potential losses arising from a market decline in the value of the assets.

**.04** When considering the materiality of assets subject to the risk of loss, the *covered member* should consider the following:

*a.* Protection that state or federal regulators provide for the assets, such as state insurance funds

*b.* Private insurance or other forms of protection that the financial services company obtains to protect its customers' assets, such as coverage by the Securities Investor Protection Corporation

*c.* Protection from creditors, such as assets held in a pooled separate account or separate escrow accounts [Prior reference: paragraphs .081–.082 of ET section 191]

**1.257 Insurance Products**

**1.257.010 Insurance Policies With No Investment Option**

**.01** An insurance policy obtained from a stock or mutual insurance company that does not offer the policy holder an investment option is not considered a *financial interest*.

**.02** If during the *period of the professional engagement*, a *covered member* owns an insurance policy with no investment option issued by an *attest client*, a self-interest *threat* to the *covered member's* compliance with the "Independence Rule" [1.200.001] may exist. *Threats* would not be at an *acceptable level*, and could not be reduced to an *acceptable level* through the application of *safeguards*, if the *covered member* purchased

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 782 of 802
Case 2:11-cv-22408-MGC Document 2271-8 Entered on FLSD Docket 05/13/2019 Page 87 of
190

the policy not under the normal terms, procedures, and requirements. Accordingly, *independence* would be *impaired*. [Prior reference: paragraph .17 of ET section 101]

### 1.257.020 Insurance Policies With Investment Options

**.01**     If during the *period of the professional engagement* the *covered member* owns an insurance policy with investment options issued by an *attest client*, but the *covered member* did not purchase the policy under the insurance company's normal terms, procedures, and requirements, *threats* would not be at an *acceptable level* and could not be reduced to an *acceptable level* by the application of *safeguards*. Accordingly, *independence* would be *impaired*.

**.02**     When a *covered member* purchases an insurance policy, under the insurance company's normal terms, procedures, and requirements, which offers an investment option that allows the *covered member* to invest part of the policy's cash value in various investment products, the policy's underlying investments are considered to be *financial interests* of the *covered member*. Accordingly, a self-interest *threat* to the *covered member's* compliance with the "Independence Rule" [1.200.001] may exist.

**.03**     If the *covered member* has the ability to select the policy's underlying investments or the authority to supervise or participate in the investment decisions and the *covered member* invests in an *attest client* during the *period of the professional engagement*, *threats* to compliance with the "Independence Rule" [1.200.001] would not be at an *acceptable level* and could not be reduced to an *acceptable level* by the application of *safeguards*. Accordingly, *independence* would be *impaired* because the investment would be considered a *direct financial interest*. For example, if the *covered member* invested the policy's cash value into a mutual fund that is an *attest client*, the investment in the mutual fund would be considered a *direct financial interest* and *independence* would be *impaired*. However, the mutual fund's underlying investments are considered to be *indirect financial interests*.

**.04**     Refer to the "Financial Interests" subtopic [1.240] and the "Joint Closely Held Investments" interpretation [1.265.020] of the "Independence Rule" [1.200.001] for additional guidance. [Prior reference: paragraph .17 of ET section 101]

### 1.257.030 Insurer Undergoes Demutualization

**.01**     If a mutual insurance company begins demutualization, a *covered member* who holds an insurance policy from the insurer should apply the guidance in the "Unsolicited Financial Interests" interpretation [1.240.020] of the "Independence Rule" [1.200.001]. [Prior reference: paragraph .17 of ET section 101]

### 1.260 Loans, Leases, and Guarantees

### 1.260.010 Loans

**.01**     If a *covered member* has a *loan* to or from an *attest client*, any officer or director of the *attest client*, or any individual owning 10 percent or more of the *attest client's* outstanding equity securities or other ownership interests, a self-interest *threat* to the *covered member's* compliance with the "Independence Rule" [1.200.001] may exist. *Threats* would not be at an *acceptable level* and *independence* would be *impaired* if the *loan* exists during the *period of the professional engagement*, except as provided for in the "Loans and Leases With Lending Institutions" interpretation [1.260.020] of the "Independence Rule." [Prior reference: paragraph .02A(4) of ET section 101]

### 1.260.020 Loans and Leases With Lending Institutions

**.01**     The "Loans" interpretation [1.260.010] of the "Independence Rule" [1.200.001] provides that a self-interest *threat* would not be at an *acceptable level* and *independence* would be *impaired* if a *covered member* had a *loan* to or from an *attest client*, any officer or director of the *attest client*, or any individual owning 10 percent or more of the *attest client's* outstanding equity securities or other ownership interests, except as provided for in this interpretation.

Part 1 — Members in Public Practice

**.02**  *Home mortgages, secured loans, and immaterial unsecured loans.* However, *threats* would be at an *acceptable level* and *independence* would not be *impaired* if a *covered member* or his or her *immediate family* has an unsecured *loan* that is not material to the *covered member's* net worth (that is, immaterial unsecured *loan*), a home mortgage, or a secured *loan* from a *lending institution attest client*, if all the following *safeguards* are met:

> *a.* The home mortgage, secured *loan*, or immaterial unsecured *loan* was obtained under the *lending institution's normal lending procedures, terms, and requirements.* In determining when the home mortgage, secured *loan*, or immaterial unsecured *loan* was obtained, the date a commitment or line of credit is granted must be used, rather than the date a transaction closes or funds are obtained.

> *b.* The home mortgage, secured *loan*, or immaterial unsecured *loan* was obtained

>> i. from the *lending institution* prior to its becoming an *attest client*;

>> ii. from a *lending institution* for which *independence* was not required and was later sold to an *attest client*;

>> iii. after May 31, 2002, from a *lending institution attest client* by a borrower prior to his or her becoming a *covered member* with respect to that *attest client*; or

>> iv. prior to May 31, 2002 and the requirements of the loan transition provision in www.aicpa.org/interestareas/professionalethics/community/downloadabledocuments/transistion%20periods.pdf are met.

> *c.* After becoming a *covered member*, any home mortgage, secured *loan*, or immaterial unsecured *loan* must be kept current regarding all terms at all times, and the terms may not change in any manner not provided for in the original agreement. Examples of changed terms are a new or extended maturity date, a new interest rate or formula, revised collateral, and revised or waived covenants.

> *d.* The estimated fair value of the collateral for a home mortgage or other secured *loan* must equal or exceed the outstanding balance during the term of the home mortgage or other secured *loan*. If the estimated fair value of the collateral is less than the outstanding balance of the home mortgage or other secured *loan*, the portion that exceeds the estimated fair value of the collateral may not be material to the *covered member's* net worth.

**.03**  *Loans to partnerships and other similar entities.* For purposes of applying the loan provision in paragraph .02 when the *covered member* is a partner in a partnership, a *loan* to a limited partnership (or similar type of entity) or general partnership would be ascribed to each *covered member* who is a partner in the partnership on the basis of his or her legal liability as a limited or general partner if

> *a.* the *covered member's* interest in the limited partnership, either individually or combined with the interest of one or more *covered members*, exceeds 50 percent of the total limited partnership interest, or

> *b.* the *covered member*, either individually or together with one or more *covered members*, can *control* the general partnership.

Even if no amount of a partnership *loan* is ascribed to the *covered member(s)* previously identified, *threats* to compliance with the "Independence Rule" [1.200.001] would not be at an *acceptable level* and could not be reduced to an *acceptable level* through the application of *safeguards* if the partnership renegotiates a loan or obtains a new *loan* that is not a permitted *loan*, as described in paragraph .04 of this interpretation. Accordingly, *independence* would be *impaired*.

**.04**  *Other loans and leases. Threats* would be at an *acceptable level* and *independence* would not be *impaired* if a *covered member* obtains one of the following types of *loans* or leases under the *lending institution's*

63

*normal lending procedures, terms, and requirements*, provided the *covered member* complies with the terms of the loan or lease agreement at all times (for example, keeping payments current):

    *a.* Automobile *loans* and leases collateralized by the automobile

    *b. Loans* fully collateralized by the cash surrender value of an insurance policy

    *c. Loans* fully collateralized by cash deposits at the same *lending institution* (for example, passbook *loans*)

    *d.* Aggregate outstanding balances from credit cards and overdraft reserve accounts that have a balance of $10,000 or less after payment of the most recent monthly statement made by the due date or within any available grace period

**.05**     *Members* should consider that certain state and federal agencies may proscribe more restrictive requirements over *lending institutions* that are subject to their oversight and that, in turn, impose more restrictive requirements upon *members* that perform *attest engagements* for these *lending institutions*. For example, the Securities and Exchange Commission (SEC) proscribes more restrictive requirements over *members* providing attest services to *lending institutions* and broker-dealers within their purview. [Prior reference: paragraph .07 of ET section 101 and paragraphs .150–.151 of ET section 191]

**.06**     *Covered members* may be subject to additional restrictions, as described in the "Depository Accounts" interpretation [1.255.010] and the "Member of a Credit Union" interpretation [1.280.040] of the "Independence Rule" [1.200.001].

### 1.260.030 Servicing of a Loan

**.01**     The self-interest *threat* to compliance with the "Independence Rule" [1.200.001] would be at an *acceptable level* and *independence* would not be *impaired* if a *lending institution attest client* services a *loan* originally extended to a *covered member* by another *lending institution*. [Prior reference: paragraphs .134–.135 of ET section 191]

### 1.260.040 Leases

**.01**     If a *covered member* enters into a leasing agreement with an *attest client* during the *period of the professional engagement*, the self-interest *threat* would be at an *acceptable level* and *independence* would not be *impaired* if all the following *safeguards* are met:

    *a.* The lease meets the criteria of an operating lease (as described in GAAP).

    *b.* The terms and conditions set forth in the lease agreement are comparable with other leases of a similar nature.

    *c.* All amounts are paid in accordance with the lease terms or provisions.

This paragraph excludes leases addressed by paragraph .04 of the "Loans and Leases With Lending Institutions" interpretation [1.260.020] of the "Independence Rule" [1.200.001].

**.02**     *Threats* to compliance with the "Independence Rule" [1.200.001] would not be at an *acceptable level* and could not be reduced to an *acceptable level* by the application of *safeguards*, and *independence* would be *impaired*, if a *covered member* has a lease that meets the criteria of a capital lease (as described in GAAP). Accordingly, *independence* would be *impaired* because the lease would be considered to be a *loan* with an *attest client*. This paragraph excludes a lease that is in compliance with the "Loans and Leases With Lending Institutions" interpretation [1.260.020] of the "Independence Rule." [Prior reference: paragraphs .182–.183 of ET section 191]

## 1.260.050 Association With an Entity That Has a Loan To or From an Attest Client

**.01**    If a *covered member* is an officer, a director, or a shareholder of an entity and the entity has a *loan* to or from an *attest client* during the *period of the professional engagement*, a self-interest *threat* to the *covered member's* compliance with the "Independence Rule" [1.200.001] may exist. *Threats* to compliance with the "Independence Rule" would not be at an *acceptable level* and could not be reduced to an *acceptable level* by the application of *safeguards* if the *covered member* has *control* over the entity. Accordingly, *independence* would be *impaired* because the lease would be considered to be a *loan* with an *attest client*. This paragraph excludes a lending relationship that is permitted under the "Loans and Leases With Lending Institutions" interpretation [1.260.020] of the "Independence Rule."

**.02**    If any *partner* or professional employee of the *firm* is an officer, a director, or a shareholder of an entity and the entity has a *loan* to or from an *attest client*, *threats* to the *partner's* or professional employee's objectivity may exist. If the *partner* or professional employee is able to exercise *significant influence* over the entity but is not a *covered member* who can *control* the entity (see paragraph .01), the *partner* or professional employee should consider the "Conflicts of Interest" interpretation [1.110.010] of the "Integrity and Objectivity Rule" [1.100.001].

**.03**    When making the decision about whether to perform a *professional service* and in making disclosure to the appropriate parties, the *member* should consider the "Confidential Client Information Rule" [1.700.001]. [Prior reference: paragraphs .220–.221 of ET section 191]

## 1.265 Business Relationships

## 1.265.010 Cooperative Arrangements With Attest Clients

**.01**    If a *member* or his or her *firm* has a cooperative arrangement with an *attest client*, self-interest, familiarity, and undue influence *threats* to the *member* or his or her *firm's* compliance with the "Independence Rule" [1.200.001] may exist. *Threats* to compliance with the "Independence Rule" would not be at an *acceptable level* and could not be reduced to an *acceptable level* by the application of *safeguards* if, during the *period of the professional engagement*, the cooperative arrangement is material to the *firm* or *attest client*. Accordingly, *independence* would be *impaired*.

**.02**    A cooperative arrangement exists when a *member* or the *member's firm* and an *attest client* jointly participate in a business activity. However, a cooperative arrangement would not exist when all of the following *safeguards* are met:

   *a.* The participation of the *firm* and *attest client* are governed by separate agreements, arrangements, or understandings that do not create rights or obligations between the *firm* and *attest client*.

   *b.* Neither the *firm* nor the *attest client* assumes responsibility for the other's activities or results.

   *c.* Neither party has the authority to act as the other's representative or agent.

**.03**    Examples of cooperative arrangements include the following:

   *a.* Prime and subcontractor arrangements to provide services or products to a third party

   *b.* Joint ventures to develop or market products or services

   *c.* Arrangements to combine one or more of the *firm's* services or products with one or more of the *attest client's* services or products and market the package with references to both parties

   *d.* Arrangements under which the *firm* acts as a distributor or marketer of the *attest client's* products or services or the *attest client* acts as the distributor or marketer of the *firm's* products or services

**.04**    Refer to the "Contingent Fees Rule" [1.510.001] and the "Commissions and Referral Fees Rule" [1.520.001] for additional guidance. [Prior reference: paragraph .14 of ET section 101]

#### 1.265.020 Joint Closely Held Investments

**.01**  If a *covered member* has a *joint closely held investment*, a self-interest *threat* to the *covered member's* compliance with the "Independence Rule" [1.200.001] may exist. *Threats* to compliance with the "Independence Rule" would not be at an *acceptable level* and could not be reduced to an *acceptable level* by the application of *safeguards* if the *covered member* holds a material *joint closely held investment* during the *period of the professional engagement*. Accordingly, *independence* would be *impaired*. [Prior reference: paragraph .02A(3) of ET section 101]

**.02**  A *joint closely held investment* includes a joint interest in a vacation home shared by a *covered member* and an *attest client* (or one of the client's officers or directors, or any owner who has the ability to exercise significant influence over the *attest client*), if the *covered member* and *attest client* (or one of the client's officers or directors or any owner who has the ability to exercise significant influence over the *attest client*) control the investment and the vacation home is material to the *covered member*. Such is the case even if the vacation home is solely intended for the personal use of the owners. [Prior reference: paragraphs .184–.185 of ET section 191]

### 1.270 Family Relationships With Attest Clients

#### 1.270.010 Immediate Family Members

**.01**  The *immediate family* of a *covered member* must comply with the "Independence Rule" [1.200.001] and its *interpretations*, except as permitted in the following interpretations:

   *a.* "Immediate Family Member Is Employed by the Attest Client" [1.270.020]

   *b.* "Immediate Family Member Participation in an Employee Benefit Plan That Is an Attest Client or Is Sponsored by an Attest Client (Other Than Certain Share-Based Arrangements or Nonqualified Deferred Compensation Plans)" [1.270.030]

   *c.* "Immediate Family Member Participation in an Employee Benefit Plan With Financial Interests in an Attest Client" [1.270.040]

   *d.* "Immediate Family Member Participation in Share-Based Compensation Arrangements Resulting in Beneficially Owned Financial Interests in Attest Clients" [1.270.050]

   *e.* "Immediate Family Member Participation in Share-Based Compensation Arrangements Resulting in Rights to Acquire Shares in an Attest Client" [1.270.060]

   *f.* "Immediate Family Member Participation in Share-Based Compensation Arrangements Based Upon Stock Appreciation" [1.270.070]

   *g.* "Immediate Family Member Participation in a Nonqualified Deferred Compensation Plan" [1.270.080]

**.02**  Notwithstanding any exceptions provided for in paragraph .01, the ownership interests of a *covered member's immediate family* may not exceed those specified in paragraph .03 of the "Overview of Financial Interests" interpretation [1.240.010] of the "Independence Rule" [1.200.001].

**.03**  When materiality of a *financial interest* is identified as a factor affecting *independence* in the *interpretations* of the "Independence Rule" [1.200.001], interests of the *immediate family* member and the *covered member* should be combined to determine materiality to the *covered member*. [Prior reference: paragraph .02 of ET section 101]

A nonauthoritative white paper, *Independence Rules Modernization Project*, provides some discussion on changes made to the independence provisions that are applicable to close relatives. The white

paper is available at www.aicpa.org/InterestAreas/ProfessionalEthics/Resources/Tools/DownloadableDocuments/
IndependenceModernizationWhitePaper.doc.

A nonauthoritative basis-for-conclusions document summarizing considerations that were deemed significant in the
development of this interpretation is available at www.aicpa.org/InterestAreas/ProfessionalEthics/Resources/Tools/
DownloadableDocuments/BasisforConclusionsImmediateFamilyMember6-1-10Final.doc.

### 1.270.020 Immediate Family Member Is Employed by the Attest Client

**.01**      When an individual in a *covered member's immediate family* is employed by an *attest client*, management
participation, familiarity, and self-interest *threats* to the *covered member's* compliance with the
"Independence Rule" [1.200.001] may exist.

**.02**      If a *covered member's immediate family* is employed by an *attest client* but is not in a *key position*, *threats*
would be at an *acceptable level* and *independence* would not be *impaired*.

**.03**      If a *covered member's immediate family* is in a *key position* with an *attest client* during the period covered
by the *financial statements* or during the *period of the professional engagement*, *threats* to compliance
with the "Independence Rule" [1.200.001] would not be at an *acceptable level* and could not be reduced
to an *acceptable level* by the application of *safeguards*. Accordingly, *independence* would be *impaired*.

***Grandfathered Employment Relationships***

**.04**      For information about grandfathered employment relationships for immediate family members,
refer to www.aicpa.org/interestareas/professionalethics/community/downloadabledocuments/transistion
%20periods.pdf. [Prior reference: paragraph .02 of ET section 101]

---

A nonauthoritative white paper, *Independence Rules Modernization Project*, provides some discussion
on changes made to the independence provisions that are applicable to close relatives. The white
paper is available at www.aicpa.org/InterestAreas/ProfessionalEthics/Resources/Tools/DownloadableDocuments/
IndependenceModernizationWhitePaper.doc.

A nonauthoritative basis-for-conclusions document summarizing considerations that were deemed significant in the
development of this interpretation is available at www.aicpa.org/InterestAreas/ProfessionalEthics/Resources/Tools/
DownloadableDocuments/BasisforConclusionsImmediateFamilyMember6-1-10Final.doc.

---

### 1.270.030 Immediate Family Member Participation in an Employee Benefit Plan That Is an Attest Client or Is Sponsored by an Attest Client (Other Than Certain Share-Based Arrangements or Nonqualified Deferred Compensation Plans)

**.01**      If during the period covered by the *financial statements* or during the *period of the professional
engagement*, an *immediate family* member of a *covered member* participates in an employee benefit
plan (plan) that is an *attest client* or is sponsored by an *attest client* (other than an *attest client's share-
based compensation arrangement* and nonqualified deferred compensation plan), *threats* would be at an
*acceptable level* and *independence* would not be *impaired* if all of the following *safeguards* were met:

        *a.* The *immediate family* member does not serve in a *key position* for the *attest client*, as discussed in
the "Immediate Family Member Is Employed by the Attest Client" interpretation [1.270.020] of the
"Independence Rule" [1.200.001].

        *b.* The plan is offered to all employees in comparable employment positions.

        *c.* The *immediate family* member does not serve in a position of governance (for example, board of
trustees) for the plan.

Case 1:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 788 of 802
Case 2:09-cv-02408-MCE Document 272-18 Entered on FLSD Docket 05/13/2019 Page 73 of
190

Part 1 — Members in Public Practice

    *d.* The *immediate family* member does not have the ability to supervise or participate in the plan's investment decisions or in the selection of the investment options made available to plan participants. [Prior reference: paragraph .02 of ET section 101]

**.02**    *Share-based compensation arrangements* and nonqualified deferred compensation plans are discussed in the following interpretations:

    *a.* "Immediate Family Member Participation in Share-Based Compensation Arrangements Resulting in Beneficially Owned Financial Interests in Attest Clients" interpretation [1.270.050] of the "Independence Rule" [1.200.001]

    *b.* "Immediate Family Member Participation in Share-Based Compensation Arrangements Resulting in Rights to Acquire Shares in an Attest Client" interpretation [1.270.060] of the "Independence Rule"

    *c.* "Immediate Family Member Participation in Share-Based Compensation Arrangements Based Upon Stock Appreciation" interpretation [1.270.070] of the "Independence Rule"

    *d.* "Immediate Family Member Participation in a Nonqualified Deferred Compensation Plan" interpretation [1.270.080] of the "Independence Rule"

---

A nonauthoritative basis-for-conclusions document that summarizes considerations that were deemed significant in the development of this interpretation is available at www.aicpa.org/InterestAreas/ProfessionalEthics/Resources/Tools/DownloadableDocuments/BasisforConclusionsImmediateFamilyMember6-1-10Final.doc.

---

### 1.270.040 Immediate Family Member Participation in an Employee Benefit Plan With Financial Interests in an Attest Client

**.01**    If during the *period of the professional engagement*, an *immediate family* member of a *covered member* is employed at a non-client or employed in a non-*key position* at an *attest client*, the *immediate family* member may hold a *direct financial interest* or material *indirect financial interest* in an *attest client* through participation in an employee benefit plan if *threats* are at an *acceptable level*. *Threats* would be at an *acceptable level*, and *independence* would not be *impaired*, if all of the following *safeguards* were met:

    *a.* The *covered member* neither participates on the *attest engagement team* nor is an *individual in a position to influence the attest engagement.*

    *b.* Such investment is an unavoidable consequence of such participation. Unavoidable consequence means that the *immediate family* member has no other investment options available for selection, including money market or invested cash options, except for selecting an investment option in an *attest client.*

    *c.* In the event that a plan provides an option that permits the *immediate family* member to invest in a non*attest client* or a non-client investment option that becomes available, the *immediate family* member is required to select the investment option in the non-client or nonattest *client* and dispose of *financial interests* in the *attest client* as soon as practicable but no later than 30 days after such option becomes available. When legal or other similar restrictions exist on an *immediate family* member's right to dispose of a *financial interest* at a particular time, the *immediate family* member need not dispose of the interest until the restrictions have lapsed. For example, an *immediate family* member is not required to dispose of a *financial interest* in an *attest client* if doing so would violate an employer's policies on insider trading. On the other hand, waiting for more advantageous market conditions to dispose of the interest would not fall within this exception. [Prior reference: paragraph .02 of ET section 101]

This paragraph excludes participation in *share-based compensation arrangements* and nonqualified deferred compensation arrangements (see paragraph .02).

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 789 of 802
Case 2:12-cv-22408-MGC Document 272-18 Entered on FLSD Docket 05/13/2019 Page 74 of
190

**.02**  *Share-based compensation arrangements* and nonqualified deferred compensation plans are discussed in the following interpretations:

   a. "Immediate Family Member Participation in Share-Based Compensation Arrangements Resulting in Beneficially Owned Financial Interests in Attest Clients" interpretation [1.270.050] of the "Independence Rule" [1.200.001]

   b. "Immediate Family Member Participation in Share-Based Compensation Arrangements Resulting in Rights to Acquire Shares in an Attest Client" interpretation [1.270.060] of the "Independence Rule"

   c. "Immediate Family Member Participation in Share-Based Compensation Arrangements Based Upon Stock Appreciation" interpretation [1.270.070] of the "Independence Rule"

   d. "Immediate Family Member Participation in a Nonqualified Deferred Compensation Plan" interpretation [1.270.080] of the "Independence Rule"

---

A nonauthoritative basis-for-conclusions document that summarizes considerations that were deemed significant in the development of this interpretation is available at www.aicpa.org/InterestAreas/ProfessionalEthics/Resources/Tools/DownloadableDocuments/BasisforConclusionsImmediateFamilyMember6-1-10Final.doc.

---

**1.270.050 Immediate Family Member Participation in Share-Based Compensation Arrangements Resulting in Beneficially Owned Financial Interests in Attest Clients**

**.01**  If during the *period of the professional engagement*, an *immediate family* member of a *covered member* participates in a *share-based compensation arrangement* of an *attest client*, such as an ESOP, that results in the *immediate family* member holding a *financial interest* in an *attest client* that is *beneficially owned*, *threats* are at an *acceptable level* and *independence* would not be *impaired* if all of the following *safeguards* were met:

   a. The *immediate family* member does not serve in a *key position* for the *attest client*, as discussed in the "Immediate Family Member Is Employed by the Attest Client" interpretation [1.270.020] of the "Independence Rule" [1.200.001].

   b. The *covered member* neither participates on the *attest engagement team* nor is an *individual in a position to influence the attest engagement*.

   c. The *immediate family* member does not serve as a trustee for the *share-based compensation arrangement* and does not have the ability to supervise or participate in the selection of any investment options made available to plan participants.

   d. When the *financial interests* that are *beneficially owned* are distributed or the *immediate family* member has the right to dispose of the *financial interests*, the *immediate family* member is required to do one of the following:

      i. Dispose of the *financial interests* as soon as practicable but no later than 30 days after he or she has the right to dispose of the *financial interests*.

      ii. Exercise his or her put option to require the employer to repurchase the *financial interests* as soon as permitted by the terms of the *share-based compensation arrangement*. In addition, any repurchase obligation due to the *immediate family* member arising from exercise of the option that is outstanding for more than 30 days needs to be immaterial to the *covered member* during the payout period. When legal or other similar restrictions exist on an *immediate family* member's right to dispose of a *financial interest* at a particular time, the *immediate family* member need not dispose of the interest until the restrictions have lapsed. For example, an *immediate family* member does not have to dispose of a *financial interest* in an *attest client* if

doing so would violate an employer's policies on insider trading. On the other hand, waiting for more advantageous market conditions to dispose of the interest does not qualify for this exception.

e. Benefits payable from the *share-based compensation arrangement* to the *immediate family* member upon termination of employment, whether through retirement, death, disability, or voluntary or involuntary termination, are funded by investment options other than the employer's *financial interests*, and any unfunded benefits payable are immaterial to the *covered member* at all times during the payout period. [Prior reference: paragraph .02 of ET section 101]

---

A nonauthoritative basis-for-conclusions document that summarizes considerations that were deemed significant in the development of this interpretation is available at www.aicpa.org/InterestAreas/ProfessionalEthics/Resources/Tools/DownloadableDocuments/BasisforConclusionsImmediateFamilyMember6-1-10Final.doc.

---

### 1.270.060 Immediate Family Member Participation in Share-Based Compensation Arrangements Resulting in Rights to Acquire Shares in an Attest Client

.01    If during the *period of the professional engagement* an *immediate family* member of a *covered member* participates in a *share-based compensation arrangement* resulting in a right to acquire shares in an *attest client*, such as an ESOP or restricted stock rights plan, *threats* are at an *acceptable level* and *independence* would not be *impaired* if all of the following *safeguards* were met:

   a. The *immediate family* member does not serve in a *key position* for the *attest client*, as discussed in the "Immediate Family Member Is Employed by the Attest Client" interpretation [1.270.020] of the "Independence Rule" [1.200.001].

   b. The *covered member* neither participates on the *attest engagement team* nor is an *individual in a position to influence the attest engagement*.

   c. The *immediate family* member exercises or forfeits these rights once he or she is vested, and the closing market price of the underlying stock equals or exceeds the exercise price for 10 consecutive days (market period). The exercise or forfeiture should occur as soon as practicable but no later than 30 days after the end of the market period. In addition, if the *immediate family* member exercises his or her right to acquire shares in the *attest client*, he or she should dispose of the shares as soon as practicable but no later than 30 days after the exercise date. Also, note the following:

      i. When legal or other similar restrictions exist on an *immediate family* member's right to dispose of a *financial interest* at a particular time, the *immediate family* member need not dispose of the interest until the restrictions have lapsed. For example, an *immediate family* member does not have to dispose of a *financial interest* in an *attest client* if doing so would violate an employer's policies on insider trading. On the other hand, waiting for more advantageous market conditions to dispose of the interest would not qualify for this exception.

      ii. If the employer repurchases the shares, any employer repurchase obligation due to the *immediate family* member that is outstanding for more than 30 days needs to be immaterial to the *covered member* during the payout period.

.02    Refer to paragraph .06 of the "Retirement, Savings, Compensation, or Similar Plans" interpretation [1.240.040] of the "Independence Rule" [1.200.001] for additional guidance. [Prior reference: paragraph .02 of ET section 101]

---

A nonauthoritative basis-for-conclusions document that summarizes considerations that were deemed significant in the development of this interpretation is available at www.aicpa.org/InterestAreas/ProfessionalEthics/Resources/Tools/DownloadableDocuments/BasisforConclusionsImmediateFamilyMember6-1-10Final.doc.

---

Case 1:09-md-02047-EEF-MBN Document 22280-36 Filed 12/02/19 Page 791 of 802
Case 2:14-cv-22408-MGC Document 272-8 Entered on FLSD Docket 05/13/2016 Page 76 of
190

**1.270.070 Immediate Family Member Participation in Share-Based Compensation Arrangements Based Upon Stock Appreciation**

.01     If during the *period of the professional engagement* an *immediate family* member of a *covered member* participates in a *share-based compensation arrangement* based on the appreciation of an *attest client's* underlying shares, such as a stock appreciation plan or phantom stock plan, *threats* are at an *acceptable level* and *independence* would not be impaired if all of the following *safeguards* were met:

   a. The *immediate family* member does not serve in a *key position* for the *attest client*, as discussed in the "Immediate Family Member Is Employed by the Attest Client" interpretation [1.270.020] of the "Independence Rule" [1.200.001].

   b. The *share-based compensation arrangement* does not provide for the issuance of rights to acquire the employer's *financial interests*.

   c. The *covered member* neither participates on the *attest engagement team* nor is an *individual in a position to influence the attest engagement*.

   d. The *immediate family* member exercises or forfeits these rights once he or she is vested, if the underlying price of the employer's shares equals or exceeds the exercise price for 10 consecutive days (market period). Exercise or forfeiture should occur as soon as practicable but no later than 30 days after the end of the market period.

   e. Any resulting compensation payable to the *immediate family* member that is outstanding for more than 30 days is immaterial to the *covered member* during the payout period. [Prior reference: paragraph .02 of ET section 101]

A nonauthoritative basis-for-conclusions document that summarizes considerations that were deemed significant in the development of this interpretation is available at www.aicpa.org/InterestAreas/ProfessionalEthics/Resources/Tools/DownloadableDocuments/BasisforConclusionsImmediateFamilyMember6-1-10Final.doc.

**1.270.080 Immediate Family Member Participation in a Nonqualified Deferred Compensation Plan**

.01     If during the *period of the professional engagement* an *immediate family* member of a *covered member* participates in a nonqualified deferred compensation plan of an *attest client* as a result of his or her employment, *threats* are at an *acceptable level* and *independence* would not be *impaired* if all of the following *safeguards* were met:

   a. The *immediate family* member does not serve in a *key position* for the *attest client*, as discussed in the "Immediate Family Member Is Employed by the Attest Client" interpretation [1.270.020] of the "Independence Rule" [1.200.001].

   b. The *covered member* neither participates on the *attest engagement team* nor is an *individual in a position to influence the attest engagement*.

   c. The amount of the deferred compensation payable to the *immediate family* member is funded through life insurance, an annuity, a trust, or similar vehicle, and any unfunded portion is immaterial to the *covered member*.

   d. Any funding of the deferred compensation does not include *financial interests* in the *attest client*. [Prior reference: paragraph .02 of ET section 101]

A nonauthoritative basis-for-conclusions document summarizing considerations that were deemed significant in the development of this interpretation is available at www.aicpa.org/InterestAreas/ProfessionalEthics/Resources/Tools/DownloadableDocuments/BasisforConclusionsImmediateFamilyMember6-1-10Final.doc.

## 1.270.100 Close Relatives

**.01** When a *close relative* of a *covered member* is employed by an *attest client* or has *financial interests* in an *attest client*, management participation, familiarity, and self-interest *threats* to the *covered member's* compliance with the "Independence Rule" [1.200.001] may exist.

**.02** *Threats* to compliance with the "Independence Rule" [1.200.001] would not be at an *acceptable level* and could not be reduced to an *acceptable level* by the application of *safeguards*, and *independence* would be *impaired*, if an individual participating on the *attest engagement team* has a *close relative* who has either of the following:

    *a.* A *key position* with the *attest client* during the period covered by the *financial statements* or during the *period of the professional engagement*.

    *b.* A *financial interest* in the *attest client* during the *period of the professional engagement* that

        i. the individual knows or has reason to believe was material to the *close relative* or

        ii. enabled the *close relative* to exercise *significant influence* over the *attest client*.

**.03** *Threats* to compliance with the "Independence Rule" [1.200.001] would not be at an *acceptable level* and could not be reduced to an *acceptable level* by the application of *safeguards* and *independence* will be *impaired* if an *individual in a position to influence the attest engagement* or any *partner* or *partner equivalent* in the *office* in which the lead *attest engagement partner* or *partner equivalent* primarily practices in connection with the *attest engagement* has a *close relative* who has either of the following:

    *a.* A *key position* with the *attest client* during the period covered by the *financial statements* or during the *period of the professional engagement*.

    *b.* A *financial interest* in the *attest client* during the *period of the professional engagement* that

        i. the individual, *partner*, or *partner equivalent* knows or has reason to believe was material to the *close relative* and

        ii. enabled the *close relative* to exercise *significant influence* over the *attest client*.

### *Grandfathered Employment Relationships*

**.04** For information about grandfathered employment relationships for close relatives, refer to www.aicpa.org/ interestareas/professionalethics/community/downloadabledocuments/transistion%20periods.pdf. [Prior reference: paragraph .02 of ET section 101]

### *Effective Date*

**.05** The addition of partner equivalents to paragraph .03 is effective for engagements covering periods beginning on or after December 15, 2014.

A nonauthoritative white paper, *Independence Rules Modernization Project*, provides some discussion about changes made to the independence provisions that are applicable to close relatives. The white paper is available at www.aicpa.org/InterestAreas/ProfessionalEthics/Resources/Tools/DownloadableDocuments/ IndependenceModernizationWhitePaper.doc.

## 1.275 Current Employment or Association With an Attest Client

## 1.275.005 Simultaneous Employment or Association With an Attest Client

**.01** In this interpretation, simultaneous employment or association with an *attest client* is serving as a director, an officer, an employee, a promoter, an underwriter, a voting trustee, a trustee for any pension or profit-

Case 1:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 793 of 802
Case 2:09-md-02047-MCE Document 2771-8 Entered on FLSD Docket 05/13/2019 Page 78 of
190

Part 1 — Members in Public Practice

sharing trust of the *attest client*, or in any capacity equivalent to that of a member of management of an *attest client* during the period covered by the *financial statements* or the *period of the professional engagement*.

**.02**    If a *partner* or professional employee of the *member's firm* is simultaneously employed or associated with an *attest client*, familiarity, management participation, advocacy, or self-review *threats* to the *member's* compliance with the "Independence Rule" [1.200.001] would not be at an *acceptable level* and could not be reduced to an *acceptable level* by the application of *safeguards*. Accordingly, *independence* would be *impaired*. [Prior reference: paragraph .02C of ET section 101]

**.03**    However, *threats* will be at an *acceptable level* and *independence* will not be *impaired* if a *partner* or professional employee of a *firm* serves as an adjunct faculty member of an educational institution that is an *attest client* of the *firm*, provided that the *partner* or professional employee meets all of the following *safeguards*:

   *a.* Does not hold a *key position* at the educational institution

   *b.* Does not participate on the *attest engagement team*

   *c.* Is not an *individual in a position to influence the attest engagement*

   *d.* Is employed by the educational institution on a part-time and non-tenure basis

   *e.* Does not participate in any employee benefit plans sponsored by the educational institution, unless participation is required

   *f.* Does not assume any management responsibilities or set policies for the educational institution

   Upon termination of employment, the *partner* or professional employee should comply with the requirements of the "Former Employment or Association With an Attest Client" interpretation [1.277.010] of the "Independence Rule" [1.200.001]. [Prior reference: paragraph .21 of ET section 101]

**.04**    *Members* that are simultaneously employed or associated with an *attest client* should consider their obligations as a *member in business* under part 2 of the code. [No prior reference: new content]

***Effective Date***

**.05**    Paragraph .04 of this interpretation is effective December 15, 2014.

A nonauthoritative question and answer regarding independent contractors retained by the firm who are simultaneously employed or associated with an attest client is available at www.aicpa.org/InterestAreas/ProfessionalEthics/Resources/Tools/DownloadableDocuments/Ethics-General-FAQs.pdf.

### 1.275.010 Honorary Director or Trustee of a Not-for-Profit Organization

**.01**    When a *partner* or professional employee of a *member's firm* is asked to lend the prestige of his or her name to a not-for-profit organization (the assumption is that the organization limits its activities to charitable, religious, or civic or other matters of a similar nature) by serving as an honorary director or trustee of the organization during the period covered by the *financial statements* or during the *period of the professional engagement*, familiarity, self-review, or management participation *threats* to the *member's* compliance with the "Independence Rule" [1.200.001] may exist. However, *threats* would be at an *acceptable level* and *independence* would not be *impaired* if all of the following *safeguards* are met:

   *a.* The position is clearly honorary and the individual holds the position in name only.

   *b.* The individual cannot vote or otherwise participate in board or management responsibilities.

c. If the individual is named in letterheads and externally circulated materials, the individual is identified as an honorary director or honorary trustee. [Prior reference: paragraph .06 of ET section 101]

**.02** *Members* that are simultaneously employed or associated with an *attest client* should consider their obligations as a *member in business* under part 2 of the code. [No prior reference: new content]

### *Effective Date*

**.03** Paragraph .02 of this interpretation is effective December 15, 2014.

### 1.275.015 Member of Advisory Board

**.01** If a *partner* or professional employee of a *member's firm* serves on an advisory board of an *attest client*, familiarity, self-review, or management participation *threats* to the *member's* compliance with the "Independence Rule" [1.200.001] may exist. However, *threats* would be at an *acceptable level* and *independence* would not be *impaired* if all of the following *safeguards* are met:

  a. The responsibilities of the advisory board are in fact advisory in nature.

  b. The advisory board has no authority to make nor does it appear to make management decisions on behalf of the *attest client*.

  c. The advisory board and those having authority to make management decisions, including the board of directors or its equivalent, are distinct groups with minimal, if any, common membership. [Prior reference: paragraphs .144–.145 of ET section 191]

**.02** *Members* in such positions should consider their obligations as *members in business* under part 2 of the code. [No prior reference: new content]

### *Effective Date*

**.03** Paragraph .02 of this interpretation is effective December 15, 2014.

### 1.275.020 Member of Governmental Advisory Committee

**.01** If a *partner* or professional employee of the *firm* serves on a citizens' advisory committee that is studying possible changes in the form of a county government that is an *attest client* of the *member's firm*, familiarity, self-review, or management participation *threats* to the *member's* compliance with the "Independence Rule" [1.200.001] may exist. However, *threats* would be at an *acceptable level* and *independence* would not be *impaired* with respect to the county.

**.02** If a *partner* or professional employee of the *firm* serves on an advisory committee appointed to study the financial status of the state in which the county is located, *threats* to the *member's* compliance with the "Independence Rule" [1.200.001] would be at an *acceptable level*. Accordingly, *independence* would not be *impaired* with respect to the county. [Prior reference: paragraphs .039–.040 of ET section 191]

**.03** *Members* in such positions should consider their obligations as *members in business* under part 2 of the code. [No prior reference: new content]

### *Effective Date*

**.04** Paragraph .03 of this interpretation is effective December 15, 2014.

### 1.275.025 Individual in a Campaign Treasurer or Similar Financial Position

**.01** For purposes of this interpretation, a campaign treasurer would also include individuals with similar financial responsibilities as a campaign treasurer. While other campaign positions may result in *threats*

Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 795 of 802
Case 1:11-cv-22408-MGC Document 27-18 Entered on FLSD Docket 05/13/2015 Page 80 of
190

to compliance with the "Independence Rule" [1.200.001], such positions are not covered by this interpretation. Accordingly, *members* should consult the Conceptual Framework for Independence [1.210.010] if *partners* or professional employees serve in campaign positions not specifically addressed by this interpretation.

### Campaign Organization Is Attest Client

**.02**　If during the *period of the professional engagement* or during the period covered by the *financial statements*, a *partner* or professional employee of a *member's firm* serves as a campaign treasurer and the campaign organization is an *attest client*, the management participation *threat* to the *member's* compliance with the "Independence Rule" [1.200.001] would not be at an *acceptable level* and could not be reduced to an *acceptable level* by the application of *safeguards*. Accordingly, *independence* would be *impaired*.

### Candidate Running for Election of a Governmental Entity That Is an Attest Client

**.03**　If, during the *period of the professional engagement* or during the period covered by the *financial statements*, a *partner* or professional employee serves as a campaign treasurer for either (*a*) an elected official of a governmental entity that is an *attest client*, or (*b*) for a candidate who is running for election but is not yet an elected official of such *attest client*, then advocacy, adverse interest, and familiarity *threats* to compliance with the "Independence Rule" [1.200.001] would not be at an *acceptable level* and could not be reduced to an acceptable level by the application of *safeguards*. Accordingly, *independence* would be *impaired*.

### Political Party Is Attest Client

**.04**　If during the *period of the professional engagement* or during the period covered by the *financial statements* a *partner* or professional employee serves as a campaign treasurer for a candidate and the political party for which the candidate is a member is an *attest client*, advocacy and familiarity *threats* may exist. Accordingly, a responsible individual within the *firm* should evaluate the significance of the *threats* to determine if the *threats* are at an *acceptable level*. If the responsible individual within the *firm* determines that *threats* are not at an *acceptable level*, he or she should apply *safeguards* to eliminate or reduce the *threats* to an *acceptable level*. However, *threats* would not be at an *acceptable level* and could not be reduced to an *acceptable level* by the application of *safeguards* and *independence* would be *impaired* if the candidate is a member of one of the political party's governing bodies.

### General

**.05**　In the state and local government environment, *members* should consult the "Entities Included in State and Local Government Financial Statements" interpretation [1.224.020] to determine which entities related to their *attest client* require the *member's independence*. Also refer to the "Conflicts of Interest for Members in Public Practice" interpretation [1.110.010] of the "Integrity and Objectivity Rule" [1.100.001] for additional guidance. In addition, *members* in such positions should consider their obligations as *members in business* under part 2 of the code. [Prior reference: paragraphs .164–.165 of ET section 191]

### Grandfathered Positions

**.06**　*Independence* would not be *impaired* as a result of the more restrictive requirements of this interpretation that are effective on May 31, 2015, provided the *attest engagement* commenced prior to April 30, 2015, and the *member* was in compliance with the preexisting requirements of this interpretation.

[See Revision History Table.]

## 1.275.030 Member of Federated Fund-Raising Organization

**.01**　When a *partner* or professional employee of a *member's firm* serves as a director or an officer of a federated fund-raising organization, such as United Way (the organization), during the period covered by

Case 1:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 796 of 802
Case 2:09-md-02047-EEF-MBN Document 22380-36 Filed 12/02/19 Page 796 of 802
Case 1:09-md-02047-MGC Document 22380-36 Entered on FSD Docket 05/13/2019 Page 81 of 190

the *financial statements* or during the *period of the professional engagement*, and a charity that receives funds from the organization is an *attest client* of the *member's firm* , management participation or self-review *threats* to the *member's* compliance with the "Independence Rule" [1.200.001] may exist.

**.02** If the organization has managerial control over the charity, the *threats* to the *member's* compliance with the "Independence Rule" [1.200.001] would not be at an *acceptable level* and could not be reduced to an *acceptable level* by the application of *safeguards*. Accordingly, *independence* would be *impaired*.

**.03** Even if the organization does not have managerial control over the charity, a conflict of interest could arise that may create a *threat* to the *member's* compliance with the "Integrity and Objectivity Rule" [1.100.001]. In such situations, the *member* should consult the "Conflicts of Interest" interpretation [1.110.010]. [Prior reference: paragraphs .027–.028 of ET section 191]

**.04** In addition, *members* in such positions should consider their obligations as *members in business* under part 2 of the code. [No prior reference: new content]

### Effective Date

**.05** Paragraph .04 of this interpretation is effective December 15, 2014.

### 1.275.035 Member of Organization that Receives Funds From Fund-Raising Organization

**.01** When a *partner* or professional employee of a *member's firm* serves on the board of directors of an organization during the period covered by the *financial statements* or during the *period of the professional engagement* and the organization receives funds from a fund-raising foundation that is an *attest client*, management participation or self-review *threats* to the *member's* compliance with the "Independence Rule" [1.200.001] may exist.

**.02** If the fund–raising foundation functions solely to raise funds for that organization, the *threat* to compliance with the "Independence Rule" [1.200.001] would not be at an *acceptable level* and could not be reduced to an *acceptable level* by the application of *safeguards*. Accordingly, *independence* would be *impaired*.

**.03** However, if the directorship is clearly honorary, in accordance with the "Honorary Director or Trustee of a Not-for-Profit Organization" interpretation [1.275.010] of the "Independence Rule" [1.200.001], *threats* would be at an *acceptable level*. Accordingly, *independence* would not be *impaired*. [Prior reference: paragraphs .128–.129 of ET section 191]

**.04** *Members* in such positions should consider their obligations as a *member in business* under part 2 of the code. [No prior reference: new content]

### Effective Date

**.05** Paragraph .04 of this interpretation is effective December 15, 2014.

### 1.277 Former Employment or Association With an Attest Client

### 1.277.010 Former Employment or Association With an Attest Client

**.01** This interpretation applies to *covered members* who were formerly employed by an entity or associated with an entity as an officer, a director, a promoter, an underwriter, a voting trustee, or a trustee for the entity's pension or profit sharing trust and subsequently became employed by a *firm* that provides attest service to that entity.

**.02** When a *member* becomes a *partner* or professional employee of a *firm* that provides attest services to an entity where the *member* was formerly employed or otherwise associated, familiarity, self-interest, self-review, or management participation *threats* to the *member's* compliance with the "Independence Rule" [1.200.001] may exist.

**.03**    If a *covered member* participates on the *client's attest engagement* or is an *individual in a position to influence the attest engagement* covering any period that includes the *covered member's* former employment or association with the *attest client*, *threats* to the *member's* compliance with the "Independence Rule" [1.200.001] would not be at an *acceptable level* and could not be reduced to an *acceptable level* by the application of *safeguards*. Accordingly, *independence* would be *impaired*.

**.04**    If a *member* fails to disassociate from the *attest client* before becoming a *covered member*, *threats* to the *member's* compliance with the "Independence Rule" [1.200.001] would not be at an *acceptable level* and *independence* would be *impaired* unless all of the following *safeguards* are met:

    *a.* The *covered member* ceases to participate in all employee health and welfare plans sponsored by the *attest client*, unless the *attest client* is legally required to allow the *member* to participate in the plan (for example, the Consolidated Omnibus Budget Reconciliation Act [COBRA]) and the *member* pays 100 percent of the *member's* portion of the cost of participation on a current basis.

    *b.* The *covered member* ceases to participate in all other employee benefit plans by liquidating or transferring, at the earliest date permitted under the plan, all vested benefits in the *attest client's* defined benefit plans, defined contribution plans, *share-based compensation arrangements*, deferred compensation plans, and other similar arrangements.

    However, when a *covered member's* participation in one of these plans results from former employment or association with an *attest client*, *threats* would be at an *acceptable level* and *independence* would not be *impaired* provided the liquidation or transfer of any vested benefits is either not permitted under the terms of the plan or would result in a penalty significant to the benefits being imposed upon such liquidation or transfer and the *covered member*

        i. does not participate on the *attest engagement team* or

        ii. is not an *individual in a position to influence the attest engagement*.

    A penalty includes an early withdrawal penalty levied under the applicable tax law but excludes other income taxes that would be owed, or market losses that may be incurred, as a result of such liquidation or transfer.

    *c.* The *covered member* disposes of any *direct financial interest* or material *indirect financial interests* in the *attest client*.

    *d.* The *covered member* collects or repays any *loans* to or from the *attest client*, except for *loans* specifically permitted or grandfathered by the *interpretations* of the "Loans, Leases, and Guarantees" subtopic [1.260] under the "Independence Rule."

    *e. Covered members* should evaluate whether other relationships with the *attest client* create *threats* that require the *member* to apply *safeguards* to reduce those *threats* to an *acceptable level*. [Prior reference: paragraph .02 of ET section 101]

### 1.279 Considering or Subsequent Employment or Association With an Attest Client

### 1.279.010 Considering Employment or Association With an Attest Client

**.01**    This interpretation applies to a member of the *attest engagement team* or an *individual in a position to influence the attest engagement* (individual) who intends to seek or discuss potential employment or association with an *attest client* or is in receipt of a specific offer of employment from an *attest client*.

**.02**    The undue influence and self-interest *threats* to compliance with the "Independence Rule" [1.200.001] would be at an *acceptable level* and *independence* would not be *impaired* if all of the following *safeguards* are met:

    *a.* The individual promptly reports such consideration or offer to an appropriate person in the *firm*.

       *b.* The individual immediately ceases participation in the engagement and does not provide any services to the *attest client* until the employment offer is rejected or employment is no longer sought.

       *c.* If a *covered member* becomes aware that an individual is considering employment or association with an *attest client*, the *covered member* should notify an appropriate person in the *firm*.

       *d.* The appropriate person in the *firm* should consider whether, based on the nature of the engagement and the individual involved, the *firm* should perform additional procedures to provide reasonable assurance that any work that the individual performed for the *attest client* was performed in compliance with the "Integrity and Objectivity Rule" [1.100.001].

**.03** If the individual accepts an offer of employment or otherwise becomes associated with the *attest client* in a *key position,* see the "Subsequent Employment or Association With an Attest Client" interpretation [1.279.020] of the "Independence Rule" [1.200.001] for additional requirements. [Prior reference: paragraph .04 of ET section 101]

## 1.279.020 Subsequent Employment or Association With an Attest Client

**.01** This interpretation applies to *partners* and professional employees who leave their *firms* and are subsequently employed by, or associated with, one of the *firm's attest clients* in a *key position.*

**.02** The familiarity, self-interest, undue influence, or management participation *threats* to the *member's* compliance with the "Independence Rule" [1.200.001] would not be at an *acceptable level* and *independence* would be *impaired* unless all of the *safeguards* in items *a–e* of the following list are met:

*Individual Safeguards*

       *a.* Amounts due to the former *partner* or professional employee for his or her previous interest in the *firm* and unfunded, vested retirement benefits cannot be material to the *firm*, and the underlying formula used to calculate the payments remain fixed during the payout period. The *firm* may adjust the retirement benefits for inflation and pay interest on amounts due.

       *b.* The former *partner* or professional employee is not in a position to influence the *firm's* operations or financial policies.

       *c.* The former *partner* or professional employee does not participate or appear to participate in the *firm's* business and is not otherwise associated with the *firm*, regardless of whether he or she is compensated for such participation or association, once employment or association with the *attest client* begins. For example, the individual would appear to participate in, or be associated with, the *firm* if

          i. the individual provides consultation to the *firm*;

          ii. the *firm* provides the individual with an *office* and related amenities, such as administrative and technology services;

          iii. the individual's name is included in the *firm's office* directory; or

          iv. the individual is identified as a member of the *firm* in membership lists of business, professional, or civic organizations, unless the *member* is clearly designated as retired.

*Ongoing Attest Engagement Team Safeguards*

       *d.* The ongoing *attest engagement team* should consider whether to modify the engagement procedures to adjust for the risk that the former *partner's* or professional employee's prior knowledge of the audit plan could reduce audit effectiveness. In addition, if the individual will have significant interaction with the *attest engagement team*, an appropriate individual in the *firm* should evaluate

whether the existing *attest engagement team* members have sufficient experience and stature to deal effectively with the individual in conducting the engagement.

    *e.* If the former *partner* or professional employee joins the *attest client* in a *key position* within one year of disassociating from the *firm* and has significant interaction with the *attest engagement team*, an appropriate professional in the *firm* should review the subsequent *attest engagement* to determine whether the engagement team members maintained the appropriate level of skepticism when evaluating the individual's representations and work. The professional applying this *safeguard* should have appropriate stature, expertise, and objectivity. In performing this review, the professional should consider relevant factors, such as the following:

        i. The position that the individual assumed at the *attest client*.

        ii. The position that the individual held at the *firm*.

        iii. The nature of the services that the individual provided to the *attest client*. The professional should take appropriate actions, as deemed necessary, based on the results of this review.

**.03**    The procedures performed in applying items *d–e* of paragraph .02 of this interpretation will depend on several factors, including the following:

    *a.* Whether the individual served on the engagement team

    *b.* The positions that the individual held at the *firm* and has accepted at the *attest client*

    *c.* The length of time that has elapsed since the individual left the *firm*

    *d.* The circumstances of the individual's departure

**.04**    An inadvertent and isolated failure to apply items *d–e* in paragraph .02 of this interpretation would not *impair independence* provided that the relevant parties perform the required procedures promptly upon discovery of the failure to do so and all other provisions of this interpretation are met. [Prior reference: paragraph .04 of ET section 101]

## 1.280 Memberships

### 1.280.010 Member of a Social Club

**.01**    If a *covered member* belongs to a social club (for example, a country club, tennis club) that is an *attest client* and is required to acquire a pro rata share of the club's equity or debt securities, then management participation, self-review, and self-interest *threats* to the *covered member's* compliance with the "Independence Rule" [1.200.001] may exist. *Threats* would be at an *acceptable level* if the club membership is essentially a social matter, because such equity or debt ownership would not be considered to be a *direct financial interest*. Accordingly, *independence* would not be *impaired*.

**.02**    *Threats* to compliance with the "Independence Rule" [1.200.001] would not be at an *acceptable level* and could not be reduced to an *acceptable level* by the application of *safeguards* if a *partner* or professional employee is simultaneously employed or associated with the *attest client's* social club as described in the "Simultaneous Employment or Association With an Attest Client" interpretation [1.275.005] of the "Independence Rule." Accordingly, *independence* would be *impaired*. [Prior reference: paragraphs .033–.034 of ET section 191]

### 1.280.020 Member of a Trade Association

**.01**    If a *covered member* belongs to a trade association that is an *attest client*, management participation or self-review *threats* to the *covered member's* compliance with the "Independence Rule" [1.200.001] may exist.

**.02**    *Threats* to compliance with the "Independence Rule" [1.200.001] would not be at an *acceptable level* and could not be reduced to an *acceptable level* by the application of *safeguards* if a *partner* or professional employee is simultaneously employed or associated with the trade association as described in the "Simultaneous Employment or Association With an Attest Client" interpretation [1.275.005] of the "Independence Rule." Accordingly, *independence* would be *impaired*. [Prior reference: paragraphs .003–.004 of ET section 191]

### 1.280.030 Member of Common Interest Realty Association

**.01**    If a *covered member* belongs to a common interest realty association (CIRA) because the *covered member* owns or leases real estate, then management participation, self-interest, self-review, or advocacy *threats* to the *covered member's* compliance with the "Independence Rule" [1.200.001] may exist. Examples of CIRAs include cooperatives, condominium associations, planned unit developments, homeowners associations, and timeshare developments.

**.02**    *Threats* would be at an *acceptable level* and *independence* would not be *impaired* if all of the following *safeguards* are met:

   *a.* The CIRA performs functions similar to local governments, such as public safety, road maintenance, and utilities.

   *b.* The *covered member's* annual assessment is not material to either the *covered member* or the CIRA's operating budgeted assessments.

   *c.* The liquidation of the CIRA or the sale of common assets would not result in a distribution to the *covered member*.

   *d.* The CIRA's creditors would not have recourse to the *covered member's* assets if the CIRA became insolvent.

**.03**    *Threats* to compliance with the "Independence Rule" [1.200.001] would not be at an *acceptable level* and cannot be reduced to an *acceptable level* by the application of *safeguards* if a *partner* or professional employee is simultaneously employed or associated with the CIRA as described in the "Simultaneous Employment or Association With an Attest Client" interpretation [1.275.005] of the "Independence Rule." Accordingly, *independence* would be *impaired*.

**.04**    A *member* who has a personal or professional relationship with a real estate developer or management company that is associated with the CIRA should consider the "Conflicts of Interest" interpretation [1.110.010] under the "Integrity and Objectivity Rule" [1.100.001]. [Prior reference: paragraphs .061–.062 of ET section 191]

### 1.280.040 Member of a Credit Union

**.01**    When a *covered member* is a member of a credit union that is an *attest client*, the self-interest *threat* would be at an *acceptable level*, and *independence* would not be *impaired*, if the *covered member* individually qualifies to join the credit union other than by virtue of the *professional services* provided to the *client*. However, if during the *period of the professional engagement* the *member's* qualification to join the credit union is a result of the *professional services* provided to the *client*, *threats* to compliance with the "Independence Rule" [1.200.001] would not be at an *acceptable level* and could not be reduced to an *acceptable level* by the application of *safeguards*. Accordingly, *independence* would be *impaired*.

**.02**    *Covered members* may be subject to additional restrictions, as described in the "Depository Accounts" interpretation [1.255.010] and the "Loans and Leases With Lending Institutions" interpretation [1.260.020] of the "Independence Rule" [1.200.001]. In addition, *partners* and professional employees may be subject to additional restrictions, as described in paragraph .03 of the "Overview of Financial Interests" interpretation [1.240.010] of the "Independence Rule." [Prior reference: paragraphs .150–.151 of ET section 191]

### 1.285 Gifts and Entertainment

### 1.285.010 Offering or Accepting Gifts or Entertainment

**.01** For purposes of this interpretation, the *attest client* also includes an individual in a *key position* with the *attest client* and individuals owning 10 percent or more of the *attest client's* outstanding equity securities or other ownership interests.

**.02** Accepting a gift from an attest client during the *period of the professional engagement* may create undue influence or self-interest *threats* to a *member's* compliance with the "Independence Rule" [1.200.001]. If a *member's firm*, a member of the *attest engagement team*, or an *individual in a position to influence the attest engagement* accepts a gift from an attest client and the value is not clearly insignificant to the recipient, the *threat* to the *member's* compliance with the "Independence Rule" would not be at an *acceptable level* and could not be reduced to an *acceptable level* by the application of *safeguards*. Accordingly, *independence* would be *impaired*.

**.03** Accepting entertainment from an attest client during the *period of the professional engagement* may create undue influence or self-interest *threats* to a *member's* compliance with the "Independence Rule" [1.200.001]. If a *covered member* accepts entertainment from an attest client that is not reasonable in the circumstances, the *threats* to the *member's* compliance with the "Independence Rule" would not be at an *acceptable level* and could not be reduced to an *acceptable level* by the application of *safeguards*. Accordingly, *independence* would be *impaired*.

**.04** Offering gifts or entertainment to an attest client during the *period of the professional engagement* may create a familiarity *threat* to a *member's* compliance with the "Independence Rule" [1.200.001]. If a *covered member* offers a gift or entertainment to an attest client that is not reasonable in the circumstances, the *threat* to the *member's* compliance with the "Independence Rule" would not be at an *acceptable level* and could not be reduced to an *acceptable level* by the application of *safeguards*. Accordingly, *independence* would be *impaired*.

**.05** The *member* should exercise judgment in determining whether gifts or entertainment would be considered reasonable in the circumstances. Examples of relevant facts and circumstances include the following:

    *a.* The nature of the gift or entertainment

    *b.* The occasion giving rise to the gift or entertainment

    *c.* The cost or value of the gift or entertainment

    *d.* The nature, frequency, and value of other gifts and entertainment offered or accepted

    *e.* Whether the entertainment was associated with the active conduct of business directly before, during, or after the entertainment

    *f.* Whether other attest clients also participated in the entertainment

    g. The individuals from the attest client's and *member's firm* who participated in the entertainment

**.06** Refer to the "Offering or Accepting Gifts or Entertainment" interpretation [1.120.010] of the "Integrity and Objectivity Rule" [1.100.001] for additional guidance. [Prior reference: paragraphs .228–.229 of ET section 191]

---

A nonauthoritative basis-for-conclusions document summarizing considerations that were deemed significant in the development of this interpretation is available at www.aicpa.org/InterestAreas/ProfessionalEthics/Resources/Tools/DownloadableDocuments/Gifts_Basis_Document.pdf.

---

A nonauthoritative question and answer regarding campaign contributions made to the campaign of an individual that is associated with an attest client in a key position or holds a financial interest in an attest client that is material or enables the individual to exercise significant influence over the attest client is available at www.aicpa.org/InterestAreas/ProfessionalEthics/Resources/Tools/DownloadableDocuments/Ethics-General-FAQs.pdf .

## 1.290 Actual or Threatened Litigation

### 1.290.010 Actual or Threatened Litigation

**.01**    The relationship between an *attest client's* management and a *covered member* must be characterized by complete candor and full disclosure regarding all aspects of the *attest client's* business operations. In addition, the *covered member* must not be biased so that the *covered member* can exercise professional judgment and objectivity in evaluating management's financial reporting decisions.

**.02**    Litigation or the expressed intention to commence litigation between a *covered member* and an *attest client* or its management and, in some cases, other parties during the *period of the professional engagement* may create self-interest or adverse interest *threats* to the *member's* compliance with the "Independence Rule" [1.200.001]. Accordingly, *covered members* should evaluate all such circumstances in accordance with this interpretation.

**.03**    Litigation or the expressed intention to commence litigation between a *covered member* and an *attest client* or its management and, in some cases, other parties requires the *covered member* to assess the materiality of the litigation to the *covered member*, the *covered member's firm*, and the *attest client*. The *covered member's* assessment should include an evaluation of the nature of the matter(s) underlying the litigation and all other relevant factors.

#### *Litigation Between the Attest Client and Member*

**.04**    When an *attest client's* present management commences, or expresses an intention to commence, legal action against a *covered member*, the *covered member* and the *attest client's* management may be placed in adversarial positions in which self-interest may affect the *covered member's* objectivity and management's willingness to make complete disclosures.

**.05**    Accordingly, *independence* may be *impaired* whenever the *covered member* and the *covered member's attest client* or its management are in threatened or actual positions of material adverse interests due to threatened or actual litigation.

**.06**    Situations involving threatened or actual litigation are complex and diverse, making it difficult to identify precise points at which *threats* to the *covered member's* compliance with the "Independence Rule" [1.200.001] would be at an *acceptable level*. There are situations regarding litigation between *covered members* and *attest clients* in which *threats* to the *covered member's* compliance with the "Independence Rule" would not be at an *acceptable level* and could not be reduced to an *acceptable level* by *safeguards* and *independence* would be *impaired*. Examples of these situations are:

> *a.* An *attest client's* present management commences litigation alleging deficiencies in audit work performed for the *attest client* or expresses its intention to commence such litigation, and the *covered member* concludes that it is probable that such a claim will be filed.

> *b.* A *covered member* commences litigation against an *attest client's* present management alleging management fraud or deceit.

**.07**    If threatened or actual litigation is unrelated to the performance of a *client's attest engagement* and is for an amount that is not material to the *covered member's firm* or the *attest client*, *threats* to the *covered member's* compliance with the "Independence Rule" [1.200.001] would be at an *acceptable level*, and *independence* would not be *impaired*. Such claims may arise, for example, out of immaterial disputes regarding billings for services, results of tax or management services advice, or similar matters.