# EXHIBIT 29

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

|  |  |
|---|---|
| EDUARDO AND CARMEN AMORIN, *et al.*, individually, and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No. 1:11-CV-22408-MGC |
| v. | |
| TAISHAN GYPSUM CO., LTD. f/k/a SHANDONG TAIHE DONGXIN CO., LTD.; TAIAN TAISHAN PLASTERBOARD CO., LTD., *et al.*, | |
| Defendants. | |

**PLAINTIFFS' OBJECTIONS TO AND APPEAL FROM THE SPECIAL MASTER'S REPORT AND RECOMMENDATION REGARDING PRODUCT ID CATEGORIES ATTRIBUTABLE TO TAISHAN GYPSUM CO., LTD.**

## TABLE OF CONTENTS

Table of Authorities ................................................................................................. ii

I. INTRODUCTION ........................................................................................ 1

II. THE STANDARD OF PROOF TO BE APPLIED ........................................... 5

    A. The Default Judgment is Not Irrelevant to the Burden of Proof. ............... 5

    B. "Greater Weight of the Evidence" Requires Consideration of the Totality of the Circumstances To Determine What is More Likely Than Not. ............................................................................................... 6

    C. Defendants' Litigation Misconduct Is Relevant to their Credibility. .......... 6

III. ERRORS IN SPECIAL MASTER'S ANALYSIS THAT FLOW THROUGH THE ENTIRE REPORT & RECOMMENDATION ........................................ 7

    A. There Is No Evidence in the Record of Additional Manufacturers of Defective Chinese Drywall ..................................................................... 7

    B. Evidence Regarding Taishan's Manufacturing Process. ........................... 9

    C. Taishan's Suggested Chemical Analysis Test Doesn't Exist. .................... 10

IV. CATEGORY-SPECIFIC ISSUES WITH THE SPECIAL MASTER'S R&R ........................................................................................ 11

    A. Made in China Meet[s] or Exceed[s] ...................................................... 11

    B. Various Drywall Dimensions, Including 4feetx12feetx1/2inch. ............... 13

    C. IMT Gypsum ....................................................................................... 16

    D. ProWall ............................................................................................... 17

    E. White Edge Tape, Boards with No Markings or Boards with No Markings Other Than Numbers. .................................... 18

    F. C&K Drywall. ...................................................................................... 20

V. CONCLUSION ......................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Au Bon Pain Corp. v. Artect, Inc.,*
653 F.2d 61 (2d Cir. 1981) .......................................................................... 5

*Finkel v. Romanowicz,*
577 F.3d 79 (2d Cir. 2009) .......................................................................... 5

*Huck v. Louisville Ladder, Inc.,*
2008 WL 222682 (M.D. Fla. Jan. 25, 2008) ................................................ 6

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.,*
894 F. Supp. 2d 819 (E.D. La. 2012) ........................................................... 9

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.,*
2017 WL 1421627 (E.D. La. Apr. 21, 2017) ............................................. 5, 8

*In re Levin,*
434 B.R. 910 (S.D. Fla. 2010) ..................................................................... 6

*Lowery v. Ala. Power Co.,*
483 F.3d 1184 (11th Cir. 2007) ................................................................... 6

*Michalic v. Cleveland Tankers, Inc.,*
364 U.S. 325 (1960) .................................................................................... 6

*Peach State Labs, Inc. v. Environmental Manufacturing Solutions, LLC,*
2011 WL 13140669 (M.D. Fla. Dec. 29, 2011) ............................................ 6

*Pulte Home Corp. v. Ply Gem Indus., Inc.,*
804 F.Supp. 1471 (M.D. Fla. 1992) ............................................................. 6

*Sweeney v. Kimberly-Clark Corp.,*
2016 WL 727173 (M.D. Fla. Feb. 22, 2016) ................................................ 6

*United States v. Almedina,*
686 F.3d 1312 (11th Cir. 2012) ................................................................... 6

## Statutes

19 U.S.C. §1304(a) ..................................................................................... 9

**<u>Rules</u>**

Fed. R. Civ. P. 53(f) ..................................................................................................2, 5

Fed. R. Civ. P. 55(b)(2) ............................................................................................... 5

iii

## I.    __INTRODUCTION__

On April 8, 2019, the Special Master issued her Report and Recommendation Regarding Product ID Categories Attributable to Taishan ("Special Master's R&R").[1]  Before the Special Master was the determination of whether eight Product ID categories were attributable to Taishan.[2]  Because Taishan accepted responsibility for two of the Product ID categories (Venture Supply and Taihe Tape), the Special Master addressed six Product ID categories (C&K; IMT Gypsum; ProWall; Made in China Meet or Exceeds ("Meet[s] or Exceed[s]"); various Drywall dimensions, including 4feetx12feetx1/2 inch and 4feet*12feet*1/2inchs ("Dimensions"); and White Edge Tape, boards with no markings or boards with no markings other than numbers ("White Edge Tape").  Two of these Product ID categories (Meet[s] or Exceed[s] and Dimensions) are demonstrated by thirteen variations of the relevant markings, which are referenced by the respective photos in the Taishan Product ID Catalog (ECF No. 155-2) reflecting the marking variations.[3]

The Special Master determined that Plaintiffs did not meet their burden of proof on four of the Product ID categories at issue (C&K; IMT Gypsum; ProWall; and White Edge Tape).  She also determined that Plaintiffs did not meet their burden with respect to the majority of the "subdivided" Meet[s] or Exceed[s] and Dimensions categories, finding that attribution had been established for the markings in only three out of six photos within the

---

[1] *See* Special Master's Report and Recommendation Regarding Product ID Categories Attributable to Taishan Defendants ("SM R&R") (ECF No. 233).  Taishan Gypsum Co., Ltd. and its wholly-owned subsidiary and alter ego Taian Taishan Plasterboard Co., Ltd. will be referred to herein as "Taishan" or "Defendant."  Plaintiffs' Brief in Support of Product ID Categories Attributable to Taishan ("Plaintiffs' PID Brief") is attached hereto as Exhibit "A" and incorporated herein by reference.  The Exhibits to the Plaintiffs' PID Brief are referred to herein by their respective "Tab" number as "Plaintiffs' Tab" and incorporated herein by reference.  An Appendix with hyperlinks to the relevant documents is attached hereto as Exhibit "B."

[2] The Court's Omnibus Order Regarding Trial Plan set forth twelve categories of Product ID (*see* ECF No. 112 at 6 n.2), but four of those categories were not before the Special Master at this time.  Two categories – BNBM/Dragon Board and Chinese Manufacturer #2 (purple stamp) – are alleged to be manufactured by Defendant BNBM, which will be addressed separately; and DUN and Crescent City Gypsum are not alleged to be present in any Florida properties.

[3] The Court's Trial Plan required the Special Master to issue a Report and Recommendation as to whether the Product ID *categories* at issue should be attributed to Defendants despite their denial (ECF No. 112 at 6 (para. 3.a.vi)).  Problematically, the Special Master subdivided the Meet or Exceeds and Dimensions categories by attributing only certain specific photos in the Taishan Product ID Catalog to Taishan.

Meet[s] or Exceed[s] category and three out of seven photos within the Dimensions category. SM R&R at 10-11. In each of those six circumstances, Taishan had either explicitly or implicitly admitted it manufactured boards with the markings in question.[4]

Plaintiffs file these Objections to the Special Master's R&R[5] not only because the Special Master made specific errors with respect to the categories of Product ID that she found were not attributable to Taishan; but also, and equally important, because she applied an unmeetable burden of proof and completely disregarded the substantial and compelling direct and circumstantial evidence of attribution presented by Plaintiffs. There is no better illustration of the standard applied by the Special Master than the fact that there was only one piece of evidence that satisfied it – an *admission* by Taishan. On this score, the Special Master applied the preponderance standard in such a way that it literally could not be met by Plaintiffs. This is not hyperbole but merely an acknowledgment that *the Special Master only found that the burden of proof had been satisfied when it came with a Taishan admission.*

By requiring an admission by Taishan as a predicate for attribution, the Special Master disregarded direct evidence linking Taishan to certain Product ID categories and, importantly, gave no weight to the significant amount of compelling circumstantial evidence that supported Plaintiffs' claims, which should have tilted the scales in Plaintiffs' favor. In this regard, the Special Master effectively placed the burden on Plaintiffs to prove, not only by the greater weight of the evidence, but by evidence that was *direct and incontrovertible* that a particular board of drywall was manufactured by Taishan. In most cases, the Special Master conducted no analysis of the Plaintiffs' evidence.

To make matters worse, Taishan's acceptance of responsibility for particular markings was based largely, if not exclusively, on whether the exact same markings were contained on certain "residual" American-sized boards that Taishan discovered in its warehouse in late

---

[4] Of the seven contested photos within these two Product ID categories, the Special Master found the Plaintiffs met their burden of showing attribution on only two and that was because (1) the pictures of one were underlined identical to pictures that were admitted by Defendant and (2) the wording on the second was the same as that listed in Defendant's Manufacturer Profile Form, *i.e.*, Taishan admitted the language. *See* SM R&R [ECF No. 233] at 9.

[5] Plaintiffs object pursuant to FRCP 53(f)(2). Specifically, Plaintiffs object to the Special Master's findings with respect to C&K, IMT Gypsum, ProWall, Meet[s] or Exceed[s] with respect to the findings regarding Photos 18, 19, and 21, Dimensions with respect to the findings regarding Photos 6, 7, 8, 10 and 11, and White Edge Tape.

2018, even though Plaintiffs had requested this evidence long ago.[6]  Problematically, Taishan did not find exemplars of all of the American-sized boards it ever manufactured; therefore, there is no basis to attribute only the "residual" drywall to Taishan, and exclude other drywall not found in the warehouse.  Moreover, Taishan's Manufacturer Profile Form ("MPF") states that Taishan only labeled its products when, and as, a certain purchaser might request that the drywall bear particular markings.[7]  Therefore, whether a particular marking is not found on a given piece of drywall is not, in and of itself, probative.  In fact, some of Taishan's admissions, after finding the residual boards, involved boards with markings it denied responsibility for merely months ago prior to discovery of these boards.[8]  Yet, the Special Master based her Product ID determinations almost exclusively on these flawed admissions.

In contrast, the Special Master ignored direct photographic evidence and significant circumstantial evidence.  For example, it is relevant, probative and significant that after ten years of litigation, Taishan has been unable to identify any specific manufacturer, other than Taishan, BNBM, Knauf and C&K, who manufactured defective Chinese drywall (*i.e.*, reactive drywall that experienced the same type of high-sulfur off-gassing).[9]  Taishan is aware that this highly relevant fact is damaging, so Defendant goes to great lengths to make the irrelevant point that other companies manufactured drywall in China and exported it to the United States, in the hopes of a creating an inference that these other companies also made

---

[6] *See generally* 2019 CHE Dep. [Pls.' Tab 20] at 258:4-260:12, 268:21-271:13; *see also* Pls.' Tabs 16-18.

[7] *See* Pls.' Tab 11 at 2; *see also, e.g.,* Pls.' Tab 10, at TG-0129675-676 (Taishan manufactured and exported to the U.S. 998778.91 m² of boards with "unlettered edge band, no coding, and neutral packaging" and 1,020,749.45 m² with "unknown" markings); Pls.' Tab 11 at 2.

[8] *See* Taishan's MPF [Pls.' Tab 11] at Ex. A (listing numerous markings with "Meet or Exceed"); Def.'s PID Br. at 37-38 (acknowledging manufacture of board with markings "Meet or Exceeds," "Exceeds" with an "s" after finding residual boards); SM R&R at 8-9.

[9] *See* CPSC RELEASE NO.10-243 (May 25, 2010) [Pls.' Tab 27] (identifying 10 manufacturers of the defective drywall, (all Taishan/Taihe, BNBM, Knauf, and/or C&K), and noting that the other Chinese drywall samples and the domestically manufactured samples "had low or no detectible emissions").  The only other company identified is "C&K," which Plaintiffs continue to believe received some or all of its drywall from Taishan. *See, e.g.,* Pls.' Tabs 40-45.  In 2004, CNBM (parent to BNBM) acquired C&K to manufacture their drywall beginning in 2004. Shortly thereafter, CNBM went public and assigned its manufacturing operations to BNBM. CNBM's public offering reorganized the lightweight building sector (which is dominated by gypsum board manufacturing), and gave BNBM control over gypsum board manufacturing, including majority control over Taishan's stock.  Finally, the loop is closed in 2009, upon C&K's bankruptcy and BNBM's purchase of all C&K assets on September 22, 2009.

the <u>defective</u> drywall that is at issue in this case.[10]  Indeed, the Consumer Product Safety Commission ("CPSC") tested drywall from different manufacturers and those tests confirmed what Judge Fallon has repeated throughout this litigation – not all Chinese-manufactured drywall is defective, but the defective Chinese-manufactured drywall ***at issue in this litigation*** was manufactured by either Taishan, BNBM, Knauf or C&K.[11]  Taishan does not point to any piece of evidence that identifies another manufacturer of ***defective*** Chinese drywall. Therefore, it is reasonable, and supported by the evidence, to infer that a non-Knauf board of high-sulfur off-gassing drywall manufactured during this time period was, more likely than not, made by Taishan or BNBM.  ***Yet, this was given no weight by the Special Master***.

Similarly, the Special Master disregarded evidence of Defendant's misconduct throughout the course of the litigation.  Viewing numerous aspects of Defendant's litigation misconduct as relevant, Plaintiffs raised this issue before the Special Master, but she appeared to view it as a binary choice – either the Defendant's behavior was egregious enough to warrant a finding of spoliation or an adverse inference, or the behavior warranted no consideration at all.  Even assuming *arguendo* that Taishan's conduct does not constitute a predicate for formal spoliation sanctions or does not change the burden of proof, it is nevertheless relevant and important evidence first as to the ultimate Product ID determination under a "greater weight of the evidence" standard and second ***as a matter of credibility***, particularly where much of Defendant's "rebuttal" to Plaintiffs' evidence involves Taishan's own largely self-serving contentions and representations.  Despite the relevance of this circumstantial evidence, ***these facts were given effectively no weight by the Special Master***.

If left unaltered, the Special Master's R&R would dismiss, in their entirety, the claims of close to half of the Florida *Amorin* Class, who have been waiting nearly ten years to receive some compensation for the devastating financial damage and often heartbreaking emotional losses they incurred as a result of having defective Chinese drywall installed in their homes. Realizing that the impact on these homeowners is not a reason to hold Taishan accountable for damage done by someone else's product, it is important nonetheless that these

---

[10] *See, e.g.*, Defendant Taishan's Product Identification Contentions and Defenses, attached hereto as Exhibit "D," at 4-6.

[11] *See* fn.9, *supra*, discussing CPSC findings and C&K's relationship with Taishan.

homeowners not be held to an insurmountable burden of proof. This is particularly true here where Taishan does not outright deny that it manufactured the defective drywall in question but instead offers the unsatisfying non-denial position that "it has no records to reflect that it ever made a product with that marking" coupled with unsupported references to other possible guilty manufacturers.

The Court's review of the legal and factual findings of the Special Master is *de novo*.[12] For the reasons set forth herein and in Plaintiffs' PID Brief, Plaintiffs respectfully request that the Special Master's Report and Recommendation should be modified and amended.

## II.    THE STANDARD OF PROOF TO BE APPLIED

### A.    The Default Judgment is Not Irrelevant to the Burden of Proof.

The Special Master did not consider the fact that Taishan is in default when assessing the standard of proof. "Causation and liability have been conclusively established." *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2017 WL 1421627, at *23 ¶ 85 (E.D. La. Apr. 21, 2017). While the plaintiff generally maintains a burden to establish damages under FRCP 55(b)(2), Product ID would appear to be an issue of liability and/or causation,[13] and not damages. The Court, in this regard, has referred to a *challenge* by the *Defendants* to Product ID – as opposed to an affirmative burden on the part of the Plaintiffs.[14] That Taishan is liable for causing injury or loss to the Plaintiffs should accordingly be presumed, with the Defendants carrying the burden of persuasion. Even where the Plaintiffs have the burden to prove damages in a default proceeding, moreover, all reasonable inferences from the evidence are generally drawn in the Plaintiffs' favor. *See, e.g., Finkel v. Romanowicz,* 577 F.3d 79, 84 (2d Cir. 2009); *Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir. 1981).

### B.    "Greater Weight of the Evidence" Requires Consideration of the Totality of the Circumstances To Determine What is More Likely Than Not.

The Special Master stated at the outset that Plaintiffs bore the burden of proof "by the greater weight of the evidence standard," SM R&R at 4, a phrase that is used interchangeably

---

[12] Fed. R. Civ. P. 53(f).

[13] *See, e.g.,* SM R&R at 3 ("Plaintiffs bear the burden of proof to establish … that the drywall that *caused* any claimed damages was manufactured by the Taishan Defendants") (emphasis added).

[14] *See, e.g., Chinese Drywall*, 2017 WL 1421627, AT *50 ("Taishan will then be permitted to review and contest"); ECF No. 112 at 6 ("*Defendants may challenge* only….") (emphasis added); SM R&R at 3 ("the *Defendants are entitled to challenge* ….") (emphasis added).

with "preponderance of the evidence." *In re Levin,* 434 B.R. 910, 921 (S.D. Fla. 2010). Plaintiffs satisfy this burden when, upon consideration of *all* the evidence, it is *more likely than not* that the boards in question were manufactured by the Defendant. *See United States v. Almedina,* 686 F.3d 1312, 1315 (11th Cir. 2012); *see also Lowery v. Ala. Power Co.,* 483 F.3d 1184 (11th Cir. 2007). Significantly, "direct evidence of a fact is not required. Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Michalic v. Cleveland Tankers, Inc.,* 364 U.S. 325, 330 (1960); *Peach State Labs, Inc. v. Environmental Mfct. Solutions, LLC,* 2011 WL 13140669, at *4 (M.D. Fla. Dec. 29, 2011).

There is no caselaw in Florida that limits the method for establishing Product ID to direct photographic evidence and markings only even though it appears that was the standard applied by the Special Master. *See, e.g., Sweeney v. Kimberly-Clark Corp.,* 2016 WL 727173, at *7 (M.D. Fla. Feb. 22, 2016), *order clarified,* 2016 WL 7138530 (M.D. Fla. Mar. 3, 2016). *Instead*, the appropriate standard involves a totality-of-the-circumstance approach. *See also, e.g., Huck v. Louisville Ladder, Inc.,* 2008 WL 222682, at *2 (M.D. Fla. Jan. 25, 2008); *Pulte Home Corp. v. Ply Gem Indus., Inc.,* 804 F.Supp. 1471, 1486 (M.D. Fla. 1992) (same).

### C.    Defendants' Litigation Misconduct Is Relevant to its Credibility.

It is relevant to Taishan's credibility that its conduct at every point has been designed with one goal in mind – minimizing its financial exposure to the aggrieved homeowners – and it has not hesitated to disregard the rules and litigation norms when it thought that was the best way to achieve that goal. In addition, Defendants' discovery abuses and overall litigation tactics are important when weighing the presence or absence of certain evidence. For example, if Taishan says that it will only respond to discovery by providing evidence beneficial to the company and only do so "when necessary,"[15] it would explain, among other things, why volumes of direct evidence may be hard to obtain, why there are so few records "kept," and why Taishan denies it is responsible for certain markings and then change its position years later when "residual boards" turn up at the last minute.

This is significant because the Special Master essentially accepted without question Taishan's *post hoc* explanations at face value, disregarded the fact that Taishan intentionally failed to put its name or other identifying information on the vast majority of the drywall it

---

[15] Taishan Information Report [Pls.' Tab 6], at TG-0208430.

admits to manufacturing, and ignored the substantial body of direct photographic evidence and circumstantial evidence presented by Plaintiffs to refute same.[16]

Perhaps the Special Master was swayed, in part, by Taishan's new attempt to play the victim, repeatedly stating or implying that it has been denied a fair opportunity to have its arguments considered. Taishan argued that it is being wrongly condemned "because it is a Chinese company," that "[t]he rhetoric has at times swung dangerously close to xenophobic prejudice," and that this is the first time it has "had an opportunity to defend itself to a fact-finder on PID."[17] In other words, Taishan audaciously claims that it has been mistreated by Plaintiffs as an appeal to prejudice when, in fact, it is simply an innocent litigant seeking their day in court which has finally arrived. To be clear, Plaintiffs' citations to Defendant's litigation misconduct are based on Taishan's documents and direct quotations from Judge Fallon's opinions addressing that misconduct – they are not based upon preconceptions.

## III.  ERRORS IN SPECIAL MASTER'S ANALYSIS THAT FLOW THROUGH THE ENTIRE REPORT & RECOMMENDATION

### A.  There Is No Evidence in the Record of Additional Manufacturers of Defective Chinese Drywall.

One of the most persuasive pieces of evidence that a given sheet of drywall was manufactured by Taishan is that there are no additional manufacturers of defective Chinese drywall. The fact that a sheet of drywall is non-Knauf and high-sulfur off-gassing immediately gives rise to a presumption that it is a Taishan (or BNBM) board. Taishan understands this, so it goes all-in on trying to refute this fact but in doing so, does not offer a single piece of evidence that there are additional manufacturers of *defective* Chinese drywall.

Testing by the CPSC confirmed that the only drywall that was reactive (*i.e.*, high-sulfur off-gassing defective) was manufactured by Taishan, BNBM, Knauf and C&K.[18] That is consistent with Judge Fallon's findings that the "Chinese drywall at issue was largely manufactured by two groups of defendants: (1) the Knauf Entities, and (2) the Taishan Entities" with the Taishan Entities including both Taishan and BNBM. *See Chinese Drywall*,

---

[16] A detailed discussion of litigation tactics that have impacted on discovery is contained in Plaintiffs' PID Brief at pages 11-22, 23-30.

[17] Defs.' PID Br. [Ex. D] at 4, 13.

[18] *See* fn.9, *supra*, discussing CPSC findings and C&K's relationship with Taishan.

2017 WL 1421627, at *1-2.[19]  The CPSC tested samples of over fifteen other manufacturers' drywall and concluded that they "had low or no detectable emission of hydrogen sulfide as did the drywall samples tested that were manufactured domestically."[20] There is no question from these findings that there are multiple manufacturers of drywall imported from China **but only four** manufacturers of **defective** Chinese drywall.

Taishan then used the mere existence of other Chinese drywall manufacturers to recast the entire case from one that involves **defective** Chinese drywall to one that, according to Taishan, involves any and all Chinese drywall – this is simply false.  By changing the question, it allows Taishan to create its strawman – "one of the misconceptions that has perpetuated in this litigation is the notion that only two companies in China manufactured drywall that was sent to the United States in the 2005-2009 time frame" – and then knock it down with a series of charts and statistics about overall drywall manufacturing in China and imports to the U.S.[21] But, this is a total misdirection and was irrelevant to the issues before the Special Master.[22]  It is indisputable that the drywall at issue here is not **all** drywall manufactured in China, **it is high-sulfur off-gassing defective drywall** and Taishan did not offer any evidence that there are additional, unknown manufacturers of **defective** Chinese drywall.

Beyond trying to shift the focus away from the CPSC testing of drywall samples and Judge Fallon's findings, Taishan was apparently hoping to create an inference that if other companies manufactured drywall in China, one could assume they also manufactured defective drywall.[23]  There is no evidence to support this inference and in fact, the CPSC report

---

[19] Taishan also quotes this statement from Judge Fallon's opinions and notes that he has made this exact statement in at least 27 different orders.  *See* Def.'s PID Br. [Ex. D] at 4 n.3.

[20] CSPC Report [Pls.' Tab 15] at 1-2.

[21] *See, e.g.,* Def.'s PID Br. [Ex. D] at 4-6. *See also* March 11, 2019 PID Hearing Tr., attached hereto as Exhibit "E," at 182:19-184:16 (Taishan discussing pie chart reflecting sales of drywall from China **not sales of defective drywall**), at 216:18-219:23 (discussing problems with pie chart and fact that only drywall at issue is high-sulfur off-gassing defective drywall).

[22] In fact, Taishan was clever with its word choice, always referring to "manufacturers of drywall," and never other manufacturers of "defective drywall." *See, e.g.,* Def.'s PID Br. [Ex. D] at 6.

[23] The only other piece of "evidence" Taishan argues supports its "other manufacturer" assertion is that Plaintiffs named other manufacturer defendants early in the litigation.  These manufacturers were not pursued once it became clear that the evidence showed that the manufacturers of defective drywall were Knauf, Taishan and BNBM.

rebuts it. That did not stop Taishan from going to great pains to create a false impression, specifically identifying Pingyi Baier Building Materials Co., Ltd. ("Baier")[24] as another Chinese drywall manufacturer whose samples were tested by the CPSC, but failing to note that the CPSC found Baier's drywall non-reactive (not defective).[25] Yet, in spite of the complete lack of evidence that there are other manufacturers of *defective* Chinese drywall, the Special Master accepted Taishan's invitation to make unsupported inferences and gave no weight to the fact that a given piece of drywall was non-Knauf and defective.

### B.  Evidence Regarding Taishan's Manufacturing Process.

It is clear that Taishan's manufacturing process and record-keeping were inconsistent and inaccurate. These inconsistencies and inaccuracies provide circumstantial evidence that further Plaintiffs' position but were given no weight by the Special Master. For example, the Special Master ignored that: (1) Taishan sold at least 86 million square feet of its drywall to American homeowners during the relevant time period, with more than 9 million square feet going directly to Florida;[26] (2) Taishan made blank boards for export to the U.S., knowing that others might add markings;[27] (3) Taishan was legally required to, but did not, ensure that its boards for sale to and use in the United States were permanently marked as "Made in China" under the Tariff Act of 1930;[28] (4) Taishan claims that its Labeling Manuals "do not relate to Taishan's foreign sales or production;"[29] (5) Taishan used a multitude of different spray marking machines, which often stopped functioning after a short period of time and had to be replaced, and Taishan had no formal protocols for giving "employees in the production department…any written instructions on using the spray machines to put markings on American-sized drywall" and, in fact, Taishan admits "[t]here was no written instruction on the [spray machine printing] operation. Usually we [Taishan] did what the

---

[24] Def.'s PID Br. [Ex. D] at 8 (citing "Baier").

[25] Pls.' Tab 15 at 2.

[26] *See* Pls.' Tab 6. *See also, generally, In re Chinese-Manufactured Drywall Prod. Liab. Litig.,* 894 F. Supp. 2d 819 (E.D. La. 2012), *aff'd,* 742 F.3d 576 & 753 F.3d 521 (5th Cir. 2014).

[27] *See,* fn. 7, *supra*.

[28] 19 U.S.C. §1304(a). *See also* 2019 Che Dep. [Pls.' Tab 20] at 252:14-254:10 (Taishan was aware of the requirement).

[29] Pls.' Tab 71, at ¶7.

customers requested";[30] (6) Taishan's 30(b)(6) Representative implausibly suggests that the edge tape production department (i) had no computers to receive email orders,[31] and (ii) no written requests were made for edge tape (and if such a request was ever jotted down, no records of any type, electronic or otherwise, were kept of the edge tape manufacturing process); [32] (7) Taishan's repeated acknowledgments and admissions that its customers would frequently put their own markings on the Taishan-manufactured drywall;[33] (8) Taishan's corporate representative testified to the lack of accuracy in the spray markings applied to boards: "according to our memory and speculation, usually [the printer] would use the font left from the prior work, only to change the content of the spray mark. People are always lazy;[34] and (9) the fact that Taishan did not keep records of any specific spray markings.[35] This mounting evidence is directly relevant to why there may be slight differences in font, differences in wording (*e.g.*, meet"s" versus meet, "x" versus "*", etc.), no records of spray markings, etc. Yet, the Special Master accorded the evidence no weight.

###### C.    Taishan's Suggested Chemical Analysis Test Doesn't Exist.

In an effort to heighten Plaintiffs evidentiary burden in this default proceeding, Taishan suggested that in the case of boards with "white edge tape, blank boards with no markings" Plaintiffs should be required to conduct something along the lines of chemical analysis, an argument that seemed to resonate with the Special Master who cited it in footnote 6 of her R&R, even though Taishan knows no such analysis can be performed. In doing so, Taishan raised the required evidentiary bar by creating an inference that, without the bogus chemical analysis, Plaintiffs would fail to satisfy their burden. Taishan argued to the Special Master that with drywall samples, "chemical analysis could identify the maker of a drywall." Immediately thereafter, Plaintiffs called upon Taishan to acknowledge that Product ID by chemical analysis was a fiction; after that was denied, sought discovery on the matter; and ultimately, Taishan acknowledged that it has never done any chemical analysis and refused

---

[30] *See, e.g.,* 2019 Che Dep. [Pls.' Tab 20] at 184:4-191:11, 212:25-215:13.

[31] *Id.* at 244:23-245:8.

[32] *Id.* at 247:19-248:3.

[33] *See, e.g.,* Pls.' Tab 10, at TG-0129675-676; Pls.' Tab 11 at 2.

[34] *See, e.g., id.* at 215:13.

[35] *See, e.g., id.* at 288:14-21.

to answer as to any reliable method for Product ID by chemical analysis. Taishan's suggestion that a chemical analysis product identification system was available was pure fiction and more evidence that the gamesmanship has never stopped.[36]

## IV. CATEGORY-SPECIFIC ISSUES WITH THE SPECIAL MASTER'S R&R

### A. Made in China Meet[s] or Exceed[s].

This category contains markings reflected in six photos – Photos 13, 17, 18, 19, 20 and 21. Taishan admits it manufactured markings reflected in Photos 13, 17, and 20 which contain the words "Meet or Exceeds," but denies manufacturing markings reflected in Photos 18, 19, and 21. The difference between the markings that were admitted and those that were denied is the addition of the letter "s" to the word "Meet" – in other words, Taishan admits it manufactured boards labelled "Meet or Exceeds" but denies it manufactured those labelled "Meet**s** or Exceeds." Because Taishan admits responsibility for these two markings, the Special Master attributed those specific markings to Taishan. *Id.* at 9.

As it relates to markings that contain an "s" in "Meets," the Special Master reached a vastly different conclusion because Taishan "den[ied], however, that it manufactured drywall with product markings that include 'MEETS'" and according to the Special Master, "[t]he Plaintiffs have not established otherwise." SM R&R at 9. The Special Master was simply wrong on both counts.

First, Taishan's "denial" is not really a denial, but simply a statement that "there are no records at Taishan of any -- of ever us manufacturing boards with an S at the end of MEETS."[37] As discussed above, this lack of records is not surprising in light of all of the evidence of Taishan's manufacturing process and poor record keeping. Indeed, as noted above, the evidence suggests that variations in fonts such as an additional "s" could be easily predicted. This is further corroborated by Taishan's MPF on this very issue. Taishan incorrectly filled out the MPF, denying responsibility for boards marked "Meet or Exceeds" because it had no records of manufacturing boards with that marking, but then after the

---

[36] *See* March 11, 2019 PID Hearing Tr. [Ex. E] at 232:14-19 ("they could do it that way . . . it has the same chemical analysis that a Taishan board has."); *see also* Taishan's Resp. and Obj. to PSC's Supp. Doc. Requests, attached hereto as Exhibit "F" (responses to discovery requests regarding purported chemical analysis); April 18, 2019 Eickhoff Letter to Serpe regarding chemical analysis testing, attached hereto as Exhibit "G."

[37] March 11, 2019 PID Hearing Tr. [Ex. E] at 192:2-6.

"residual boards" that said "Meet or Exceeds" were found in late-2018, it had to accept responsibility for those despite prior denials, SM R&R at 9.[38]

Furthermore, Photo 18, for which the Special Master denied attribution, depicts a board with the marking "Meets" with an "s," and illustrates that the board also contains the aqua blue Taihe edge tape that Taishan admits making.[39] Taishan has admitted that it manufactured boards with the aqua blue edge tape. Taishan Br., Ex. B, at 23; *see also* SM R&R at 8. Additionally, the font and print in Photo 18 is identical to Photo 17, which Taishan admits manufacturing.

The same is true for the version of Photo 19 that was provided to the Special Master as part of Plaintiffs' Product ID presentation. The same board with the marking "Meets" with an "s" also contains Taihe edge tape.[40] ***This is direct evidence that Taishan manufactured boards with the marking "Meets" with an "s."*** And, to make matters worse, the Special Master asked Taishan directly about the Taihe Tape in Photo 19 at the hearing and Taishan did not even pretend to offer explanation but simply repeated its position that it has no records indicating it manufactured boards with the marking "Meets" with an "s." Tr. at 191:20-192:10. Even with this "smoking gun" evidence, the Special Master ruled in favor of Taishan without so much as mentioning the direct photographic evidence in Photos 18 and 19. The Special Master also ignored the fact that the numerical sequence in Photo 19 is identical to Photo 9, which the Special Master found attributable to Taishan. In addition, Taishan admitted that

---

[38] *See* fn. 8, *supra*, (discussing discovery of residual boards and Taishan's eventual acknowledgement of responsibility for "Meet or Exceeds" marking).

[39] March 11, 2019 PID Hearing Tr. [Ex. E] at 191:3-19. *See also* Photo 18 [Pls.' Tab 57]. Other pictures of the same exact board that is reflected in Photo 18 show the edge tape even more clearly. *See* Dennis S. Hocker, 509 E. Sheridan Street, Unit 304, Dania, Florida, BrownGreer Doc 191809, at 11, attached hereto as Exhibit "H." Numerous pictures produced in this litigation illustrate the same "Meets" with an "s" along with aqua blue Taihe edge tape that show conclusively that Taishan does, in fact, manufacture boards with "Meets" with an "s" "or Exceeds." *See, e.g.*, Priority Plaintiffs John and Bertha Hernandez, 3516 N. Perry Avenue, Tampa, FL, BrownGreer Doc 365098, at 10-11, attached hereto as Exhibit "I."

[40] *See* Plaintiffs' PID Powerpoint, attached hereto as Exhibit "C," at Slides 78, 82 (all photos of the same board).

it manufactured Photo 15. Although the "s" was obscured in Photo 15, other pictures with this identical marking and font reveal the word "Meets" following the comma in the photo.[41]

In addition to the direct photographic evidence, there is voluminous circumstantial evidence that supports attribution of all photos in the "Meet[s] or Exceed[s]" category to Taishan. The Special Master conceded that the "font variations are minimal" among the pictures with that variation to be expected because of the numerous production lines and machines in use by Taishan. SM R&R at 8 & n.5. So, the Court could simply walk through the facts: (1) drywall with the "Meet[s] or Exceed[s]" is defective; (2) the "Meet[s] or Exceed[s]" is not a Knauf product; (3) Taishan admits it made drywall marked "Meet or Exceeds"; (4) boards with the "Meets or Exceeds" marking have been found to contain Taihe edge tape; (5) Taishan admits that its use of singular and plural was not always accurate;[42] (6) the "Meets" with an "s" "or Exceeds" marking is the same font as other admitted markings; and (7) Taishan had previously not taken responsibility for "Meet or Exceeds" markings it manufactured until it found the residual boards in December 2018. Add to that the evidence discussed above with respect to Taishan's manufacturing process and record keeping.

This evidentiary mountain is met with only Taishan's self-serving statements: (1) that the "Meet[s] or Exceed[s]" label is generic; (2) that these markings could be from some unidentified competitor; and (3) that it has no records of using "Meets" with an "s" marking. Nevertheless, the Special Master accepted, at face value, Defendant's unreliable, incredible and self-serving denials and ignored not only the circumstantial evidence discussed above, but also the direct photographic evidence. This is clear error.

## B.     Various Drywall Dimensions, Including 4feetx12feetx1/2inch.

It is undisputed that Taishan manufactured drywall with the word "Drywall" and the phrase "4feetx12feetx1/2inch." This category involved 7 photos – Photos 5, 6, 7, 8, 9, 10 and 11. Taishan does not deny that it made the boards with the markings reflected in Photo 2 which shows the phrase "DrYwall" with a capital "Y" and the phrase "4feetx12feetx1/2inch."[43] SM R&R at 9. In addition, Taishan acknowledged in its MFP that

---

[41] *See* Photo 15 [Pls.' Tab 55]; *see also* John and Bertha Hernandez, BrownGreer Doc. 365099, at 14, 19 and 3650987, at 7, attached hereto as Exhibit "J."

[42] 2019 Che Dep. [Pls.' Tab 20] at 107:13-18.

[43] Def.'s PID Br. [Ex. D], at 41-44.

it made boards with the phrase "DRYWALL 4feetx12feetx1/2inch." Beyond that, Taishan once claimed it did not have any records to confirm or deny whether it made boards with the markings contained in the remaining photos and denies responsibility primarily because some of the photos reflect marking where the word "Drywall" is written in different font (*e.g.*, all capital letters – even though their MFP states "DRYWALL" in all capital letters) and several of the photos reflect an asterisk instead of a multiplication sign between the dimensions (*i.e.*, "4feet*12feet*1/2inch"). Based upon Taishan's admission, the Special Master found the markings found in Photo 2 to be attributable to Taishan and then, found Taishan responsible for the markings in Photo 5 because it used the same words as the MFP – "Drywall 4feetx12feetx1/2inch" – and Photo 9 because it had the same font for the word "DrYwall" with a capital "Y" as the admitted Photo 2. In other words, the Special Master only attributed the drywall markings in this category to Taishan when it admitted it or the markings in a given photo were identical to the markings it admitted.

The Special Master offers no explanation for denying Taishan's responsibility for the markings in Photos 6, 7, 8, 10 and 11. By finding Taishan liable only for the markings it admitted, either directly or indirectly, and accepting Taishan's self-serving representations with respect to their use of capital lettering or asterisks, the Special Master essentially made Taishan's credibility the determining factor in her analysis. And, what is troubling is that she did so in the face of compelling evidence showing Taishan's representations were inaccurate, and significant circumstantial evidence linking these boards to Taishan. In addition to the arguments below, the Special Master ignored all of the evidence regarding Taishan's manufacturing processes and record-keeping discussed above.

*First*, there is a fundamental problem with the Special Master's denial of the markings in Photo 6. That denial contained no explanation, which is significant because the Special Master appropriately found the markings in Photo 5 attributable to Taishan because "the marking on photo #5 reflects the same words listed on [Taishan's MPF], specifically "Drywall 4feetx12feetx1/2inch" – and Photo 6 is identical to Photo 5.[44] SM R&R at 9. Both contain

---

[44] The exemplar that is reflected in Photo 6 is cut off because it came from a ripped piece of drywall so it shows only "Drywall 4feetx12" with the jagged edge of the tear cutting through the "2" but there is no plausible dispute that had the piece of drywall not been torn, the remainder of the phrase – "feetx1/2inch" would follow what is seen in the photo.

the same words listed on Taishan's MPF, namely the "Drywall 4feetx12feetx1/2inch."[45] Both contain the same elongated "y" and both contain the same font. The only difference is that the markings in Photo 6 are printed in dot matrix. That difference is inconsequential particularly given the fact that other markings in dot matrix are (correctly and appropriately) attributed to Taishan. Furthermore, the dot matrix printing in Photo 6 (including the irregular/stray marks, particularly the letter "D") are identical to those that appear in Photo 17 (which the Special Master found attributable to Taishan).

*Second*, the Special Master's determination that the nearly identical marking – "Drywall 4feet*12feet*1/2inch" (an asterisk in place of the multiplication sign) – contained on the drywall in Photos 7 and 8 should not be attributable to Taishan flies in the face of the evidence. Indeed, the Special Master's refusal to infer that drywall with the nearly identical markings "Drywall 4feet*12feet*1/2inch" was also manufactured by Taishan can only be explained by her requirement that Taishan's responsibility be shown with *direct* evidence – *i.e.* an admission by Defendants – that Taishan used an asterisk in representing the board's dimensions. Taishan's key defense, beyond claiming that "other manufacturers may have produced drywall with these markings," was that it has not uncovered any records showing that it used an asterisk in place of a multiplication sign.[46] Yet, not only did Plaintiffs produce evidence directly calling into question this defense, namely numerous emails between Taishan personnel and United States' customers in which Taishan used asterisks instead of multiplication signs when discussing drywall dimensions,[47] but also Taishan initially admitted manufacturing the type of drywall depicted in Photo 35 in which an asterisk is used.[48] Photos 7 and 8 should have been attributed to Taishan.

*Finally*, with respect to the variations in the capitalization of the word "Drywall," the Special Master denied attribution for the markings in Photo 10 ("DRYWALL") and Photo 11 ("DryWall") without explanation. First, "DRYWALL" with all capital letters was identified on Taishan's MPF. In addition, Taishan admittedly has no idea what style the

---

[46] *See* 2019 CHE Dep., [Pls.' Tab 20], at 129:16-25; *see also* Def.'s PID Br. [Ex. D], at 44.

[47] *See, e.g.*, Pls.' PID Br. 49, Tabs 62-64, 65 and 67.

[48] *See* MDL Rec. Doc. 8310-1, at 6.

word "Drywall" took when it was placed on their boards because it has no records. It is clear that it made boards with the specific dimensions described above and that those boards had the word "Drywall" on them in different forms. Given that Taishan manufactured defective high-sulfur "DrYwall" with a capital "Y," is it *more likely than not* that it also manufactured defective "DryWall" with a capital "W," particularly given the evidence in the record about the inconsistency of its manufacturing process, or instead that some other unknown and unidentified company manufactured defective high-sulfur "DryWall" with a capital W? The weight of the evidence clearly points to Taishan.

### C.    IMT Gypsum

It is undisputed that Taishan manufactured drywall with "IMTGYPSUM" printed on it,[49] but the Special Master hinges her opinion on a distinction drawn between Taishan manufacturing board with "IMT Gypsum" printed on edge tape (admitted) vs. "IMT Gypsum" printed with spray markings, as opposed to edge tape (not admitted). Again, the Special Master accepted, at face value, the self-serving testimony of Defendants that it did not use "IMTGypsum.com" (simply because it found no records "that Taishan had sprayed the marking of 'IMT' on the back of its boards"[50]) and that it has no evidence of having used asterisks instead of multiplication signs.[51]

This conclusion flies in the face of the overwhelming weight of the evidence, including the facts referenced above with respect to Taishan's manufacturing process as well as the following: (1) the existence of at least one 2006 Sales Plan Notification from Taishan's Sales Department for the manufacture of IMT Gypsum drywall to Taishan's Management Department wherein the edge tape was to clearly read "IMT Gypsum" and a spray marking was to be attached (Taishan's production of the Sales Plan Notification did not include the attached spray marking);[52] (2) when asked what the "IMTGypsum" edge tape identified in the Manufacturer Profile Form looks like, Mr. CHE responded, "I was not able to discover

---

[49] SM R&R at 6 (citing Def.'s Tab 29).

[50] 2019 Che Dep. [Pls.' Tab 20] at 60:23-25.

[51] *See* SM R&R at 6.

[52] *See* Pls.' Tab 15, at TG-PID-000041-42.

the edge tape during my depo preparation as the corporation's representative";[53] (3) Taishan initially admitted to the manufacture of the type of drywall depicted in Photo 35 in which an asterisk is used;[54] and (4) Taishan's numerous emails to United States customers listing drywall dimensions using asterisks in lieu of a multiplication sign (*e.g.,* 12'*4'*1/2").[55]

Taking the fact that Taishan admittedly manufactured board marked "IMTGYPSUM" and the Sales Plan Notification indicated that there were to be spray markings (although not attached) would certainly make it more probable than not, absent evidence to the contrary, that the boards in questions were manufactured by Taishan.

### D. ProWall

The evidence presented to the Special Master clearly established that Taishan manufactured ProWall for a Chinese entity called Run & Fly (Jinan) New Materials Co. Ltd. who imported that drywall into the U.S.[56] SM R&R at 7. In fact, it is undisputed that Taishan sold at least 9,936 sheets of blank drywall to Run & Fly in 2006.[57] The evidence also shows that Run & Fly sold that same amount, 9,936 sheets of ProWall, to a North Carolina entity called Manchester In Home and Manchester subsequently sold, that same amount, 9,936 sheets of ProWall, to Stock Building Supply whose Florida locations distributed ProWall to installers in Florida. With these facts, it cannot seriously be questioned that Plaintiffs have established that it was "more likely than not" that Taishan manufactured ProWall.

However, the Special Master found that Plaintiffs did not meet their burden relying upon: (1) the suspect and self-serving deposition testimony of Taishan's corporate representative who had claimed that the batch of drywall it manufactured for Run & Fly was only a test batch and Run & Fly ultimately went with a less expensive manufacturer to fulfill

---

[53] *See, e.g.,* 2019 Che Dep. [Pls.' Tab 20] at 67:22-24.

[54] *See* MDL Rec. Doc. 8310-1, at 6. (While the document refers to "4feetX12feetX1/2inch" the photograph itself depicts "4feet*12feet").

[55] *See, e.g.,* Pls.' Tabs 62-64. *See also* March 11, 2019 PID Hearing [Ex. "E"] at 144:17-146:2 (Taishan admits to manufacturing DUN drywall. The "Product Markings" column on the MPF is blank for DUN drywall but indicates under the "Edge Sealing Tape Markings" column that it contains "Edge sealing tape: DUN Drywall." However, contrary to the MPF, the DUN boards have "DUN Drywall" markings on the boards themselves, not the edge tape, which Taishan admits it manufactured.).

[56] Pls.' PID Br. [Ex. A] at 40-43.

[57] *See, e.g.*, Pls.' Tab 19; 2019 Che Dep. [Tab 20] at 146:20-148:15.

their drywall needs; and (2) Taishan's claim that it has no record of having manufactured boards with the phrase "Meets ASTM C36/C1396 STANDARD," which appears on the ProWall boards as opposed to "Meet or Exceeds" that is indicated in the MPF.[58]

The only evidence in the record that any other entity produced ProWall drywall for Run & Fly is the self-serving testimony of Taishan's Rule 30(b)(6) witness.[59] *Yet, the Special Master found this denial to be conclusive*. This is precisely where Taishan's credibility problem comes into play and yet, the Special Master gave it no weight. Instead, the Special Master found this speculative and self-serving "evidence" overcame the direct and unrefuted evidence that Taishan provided Run & Fly with ProWall who then provided that drywall downstream to Stock who used that drywall in Florida.

### E. White Edge Tape, Boards with No Markings or Boards with No Markings Other Than Numbers.

There is no dispute that Taishan manufactured boards in this category, and noting that "Plaintiffs assert that the Taishan Defendants manufactured and exported nearly one million square meters of blank board with white edge tape to the United States," the Special Master concedes "it is likely that at least some of the boards in the Florida claimants' homes that fit this Product ID category were manufactured by the Taishan Defendants." SM R&R at 10. Yet, the Special Master declined to attribute this Product ID Category to Taishan because without more information, she "is unable to determine what portion or which claimants' homes" contained boards manufactured by Taishan. *Id*. In other words, the Special Master declined to hold Taishan accountable for none of the "nearly one million square meters of blank board[s]" because there would be no way to determine if a given "blank" board was manufactured by Taishan or someone else. The intentional failure to mark one's product should not provide a free pass to manufacturers of those products if they cause harm.

The relevant inquiry in this default proceeding is whether under the totality of the circumstances, it is more likely than not that Taishan manufactured the boards in the Category that were used in claimants' homes. Plaintiffs satisfied their burden of proving that

---

[58] The Special Master also noted Taishan's claim that their invoice with Run & Fly was a "common invoice" indicating for use in China as opposed to an "export invoice," a fact that hardly seems relevant in that the manufactured boards were American-sized and the evidence noted by the Special Master shows the boards ended up in the United States. SM R&R at 7.

[59] 2019 Che Dep. [Pls.' Tab 20] at 150:7-151:21; *see also* Def.'s PID Br. [Ex. D] at 34.

Taishan manufactured boards in this category generally, but the Special Master argues that Plaintiffs cannot meet their burden specifically as to each board. First of all, Plaintiffs are entitled to the reasonable inference that this non-Knauf high-sulfur off-gassing defective drywall was made by Taishan. Second, it is Taishan's manufacturing process and procedures, or lack thereof, that created the identification problem by failing to property mark their boards as required under U.S. law.[60] That alone should shift the burden to Defendant to refute that it did not manufacture a given board.

Attribution to Taishan is also supported by the fact that: (1) Taishan's documents admit to the manufacture and export of nearly one million square meets of blank board with white edge tape to the U.S.;[61] (2) Taishan admits in its MPF that it manufactured 351,745 sheets of drywall with no "Product Markings" and no "Edge Sealing Tape Markings" from 3/13/2006 to 9/15/2006;[62] (3) Taishan admits in its MPF that it manufactured 19,565 sheets of drywall with no "Product Markings" but "Edge Sealing Tape Markings" identified as "White Edge Sealing Tape (without words printed thereon)" from 4/26/2006-4/30/2007;[63] (4) Taishan reported, in April of 2006, that the "labeling for the remaining 1020749.452 square meters [10,987,347.10 square feet] of gypsum boards is *unknown*";[64] (5) Taishan admits it manufactured boards without any product or edge sealing tape markings, which were exported by Taian Taigo Trading Corp.;[65] and (6) there is no evidence (no document and no witness) who can say that there was ever any defective blank board with white edge tape exported to the U.S. by any competitor or other manufacturer.[66]

In response, Defendant argues that (1) other companies manufactured drywall, ***not defective drywall***, with white backing or white edge tape that contained no other markings;

---

[60] Pls.' PID Br. [Ex. A] at 28-30.

[61] *See* Pls.' Tab 10; *see also* Taishan MPF [Pls.' Tab 11] at lines 11, 62-63, 131, 198-201, 224-228, 231, 235.

[62] *See* Taishan MPF [Pls.' Tab 11] at lines 2-5, 16-21, 24-28, 122, 218 (totaling 351,745 sheets of drywall with no "Product Markings" and no "Edge Sealing Tape Markings" markings).

[63] *See id*. at lines 11, 62-63, 131, 198-201, 224-228, 231, 235 (totaling 19,565 sheets of drywall with no "Product Markings" but "White Edge Sealing Tape (without words printed thereon)").

[64] *See* Pls.' Tab 68, (emphasis supplied).

[65] *See* Pls.' Tabs 11 and 68.

[66] *See* 2019 Che Dep. [Pls.' Tab 20] at 27:5-13.

and (2) Plaintiffs should provide a "chemical analysis" to trace the drywall to Taishan – the very "chemical analysis" that Taishan knows is not possible to conduct.[67] Yet, the Special Master did not stop to weigh the evidence (since Taishan presented none) and merely accepted Taishan's argument that more was required than the evidence set forth above for Plaintiffs to meet their burden, even going so far as to seemingly accept Taishan's bogus "chemical analysis" claim. Under the Special Master's approach, Taishan is allowed to escape liability for millions of square feet of defective drywall that Taishan *admits* was shipped to the U.S.[68]

### F. C&K Drywall.

The Special Master found that Taishan was not responsible for boards bearing markings in this Category. SM R&R at 5. Taishan's key rebuttal to its responsibility for this Category is that these boards were manufactured by a competitor, Shandong Chenxiang Building Materials Co., Ltd. ("Shandong Chenxiang"). *Id.* Three key points were left unaddressed by the Special Master's analysis: (1) Shandong Chenxiang is noted as the shipper, not the manufacturer, of the drywall in question on many of Taishan's documents; (2) Taishan regularly fulfilled orders for American-sized drywall during times of increased demand for smaller gypsum board factories; and (3) York Building Supply imported C&K drywall, and (4) evidence indicated that Taishan had a contractual relationship with York Building Supply/International Materials Group to produce drywall.[69] In addition, Shandong Chenxiang eventually went bankrupt and was ultimately acquired by BNBM.[70]

## V. **CONCLUSION**

For these reasons, the Court should sustain Plaintiffs' Objections to the Special Master's R&R and find that the following Product ID Categories (and markings contained in all photos therein) are attributable to Taishan: C&K; IMT Gypsum; ProWall; Meet[s] or Exceed[s]; Dimensions; and White Edge Tape.

---

[67] *See* Section III.C, *supra*.

[68] *See, e.g.,* SM R&R at 10 (citing Def's Tabs 27-29 and noting that "it is likely that at least some of the boards in the Florida claimants' homes that fit this Product ID were manufactured by the Taishan Defendants").

[69] *See, e.g.,* 2019 CHE Dep. [Pls.' Tab 20] at 68:11-15, 133:10-138:25; *see also* Pls.' Tabs 42-45.

[70] *See* fn.9, *supra*, discussing CPSC findings and C&K's relationship with Taishan.

Dated: April 29, 2019

Respectfully Submitted,

/s/ Patrick S. Montoya, Esq.
Patrick Shanan Montoya
Fla. Bar No. 0524441
Email: Patrick@colson.com
Colson Hicks Eidson
255 Alhambra Circle, PH
Coral Gables, FL  33134-2351
Telephone:  (305) 476-7400
Facsimile:  (305) 476-7444
*Interim Lead Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Southern District of Florida by using the CM/ECF System, which will send a notice of electronic filing on this 29th day of April, 2019.

/s/ Patrick S. Montoya, Esq.
Patrick Shanan Montoya
Fla. Bar No. 0524441
Email: Patrick@colson.com
Colson Hicks Eidson
255 Alhambra Circle, PH
Coral Gables, FL 33134-2351
Telephone: (305) 476-7400
Facsimile: (305) 476-7444
*Interim Lead Counsel for Plaintiffs*

# EXHIBIT

# "A"

# FILED UNDER SEAL

# EXHIBIT

# "B"

# <u>FILED UNDER SEAL</u>

# EXHIBIT

# "C"

# FILED UNDER SEAL

# EXHIBIT

# "D"

# <u>FILED UNDER SEAL</u>

# EXHIBIT

# "E"

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 33 of 344
Case 1:11-cv-22408-MGC Document 259 Entered on FLSD Docket 04/29/2019 Page 2 of 281
March 11, 2019

1              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF FLORIDA
2

3    EDUARDO AND CARMEN          )
     AMORIN, et al.,             )
4    individually, and on        )   Case No.
     behalf of all others        )   1:11-CV-22408-MGC
5    similarly situated,         )
                                 )
6         Plaintiffs,            )
                                 )
7    v.                          )
                                 )
8    TAISHAN GYPSUM CO., LTD.    )
     F/k/a SHANDONG TAIHE        )
9    DONGXIN CO., LTD.; TAIAN    )
     TAISHAN PLASTERBOARD        )
10   CO., LTD., et al.,          )
                                 )
11        Defendants.            )

12

13             Monday, March 11, 2019

14

15        HEARING RE: PRODUCT IDENTIFICATION,

16   held before Special Master Tiffani G. Lee at

17   the offices of Holland & Knight LLP,

18   701 Brickell Avenue, Miami, Florida,

19   commencing at 9:45 a.m. on the above date,

20   before Michael E. Miller, Registered

21   Diplomate Reporter, Certified Realtime

22   Reporter and Notary Public.

23              —— —— ——

24        GOLKOW LITIGATION SERVICES
       877.370.3377 ph | 917.591.5672 fax
25          deps@golkow.com

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 34 of 344
Case 1:11-cv-22408-MGC Document 28 Entered on FLSD Docket 04/29/2019 Page 3 of 281
March 11, 2019

```
 1     A P P E A R A N C E S:
 2    SPECIAL MASTER:
 3         TIFFANI G. LEE, ESQUIRE
           HOLLAND & KNIGHT, LLP
 4
 5    COUNSEL FOR THE PLAINTIFF CLASS:
 6         COLSON HICKS EIDSON
           BY:  PATRICK S. MONTOYA, ESQUIRE
 7             patrick@colson.com
           255 Alhambra Circle
 8         Penthouse
           Coral Gables, Florida 33134
 9         (305) 476-7400
10
11         LAW OFFICES OF RICHARD J. SERPE PC
           BY:  RICHARD J. SERPE, ESQUIRE
12             rserpe@serpefirm.com
           580 East Main Street
13         Suite 310
           Norfolk, Virginia 23510
14         (757) 233-0009
15
16         LEVIN SEDRAN & BERMAN
           BY:  SANDRA L. DUGGAN, ESQUIRE
17             sduggan@lfsblaw.com
           510 Walnut Street
18         Suite 500
           Philadelphia, Pennsylvania 19106
19         (215) 592-1500
20
21         IRPINO LAW FIRM
           BY:  PEARL A. ROBERTSON, ESQUIRE
22             probertson@irpinolaw.com
           2216 Magazine Street
23         New Orleans, Louisiana 70130
           (504) 525-1500
24
25
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 35 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2013 Page 4 of
281
March 11, 2019

```
 1      A P P E A R A N C E S :
 2          BARRIOS KINGSDORF & CASTEIX LLP
            BY:  EMMA SCHWAB, ESQUIRE
 3              eschwab@bkc-law.com
            701 Poydras Street
 4          Suite 3650
            New Orleans, Louisiana 70139-3650
 5          (504) 524-3300
 6
 7          LAW OFFICE OF ALLISON GRANT, P.A.
            BY:  ALLISON KAY GRANT, ESQUIRE
 8              agrant@allisongrantpa.com
            14 Southeast 14th Street
 9          Boca Raton, Florida 33432
            (561) 994-9646
10
11      COUNSEL FOR TAISHAN GYPSUM COMPANY:
12          ALSTON & BIRD LLP
            BY:  BERNARD TAYLOR, ESQUIRE
13              bernard.taylor@alston.com
                CHRISTY HULL EIKHOFF, ESQUIRE
14              christy.eikhoff@alston.com
            One Atlantic Center
15          1201 West Peachtree Street
            Atlanta, Georgia 30309-3424
16          (404) 881-7000
17
            ALSTON & BIRD LLP
18          BY:  DAVID VENDERBUSH, ESQUIRE
                david.venderbush@alston.com
19          90 Park Avenue
            15th Floor
20          New York, New York 10016
            (212) 210-9400
21
            AKERMAN LLP
22          BY:  ENJOLIQUE D. AYTCH, ESQUIRE
                enjolique.aytch@akerman.com
23          350 East Las Olas Boulevard
            Suite 1600
24          Fort Lauderdale, Florida 33301
            (954) 463-2700
25
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 36 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 5 of 281

March 11, 2019

```
 1      A P P E A R A N C E S:

 2      COUNSEL FOR BNBM DEFENDANTS:

 3          ORRICK HERRINGTON & SUTCLIFFE LLP

            BY:  ANDREW K. DAVIDSON, ESQUIRE

 4               adavidson@orrick.com

            The Orrick Building

 5          405 Howard Street

            San Francisco, California 94105

 6          (415) 773-5700

 7

            ABALLI MILNE KALIL

 8          BY:  JOSHUA D. POYER, ESQUIRE

                 jpoyer@aballi.com

 9          2250 SunTrust International Center

            One Southeast Third Avenue

10          Miami, Florida 33131

            (305) 373-6600

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 37 of 344
Case 1:11-cv-22408-MGC Document 291 Entered on FLSD Docket 04/29/2019 Page 6 of 281
March 11, 2019

```
 1                    PROCEEDINGS

 2              (March 11, 2019 at 9:45 a.m.)

 3              SPECIAL MASTER LEE:  Good

 4       morning, everyone.  This is Tiffani

 5       Lee, court-appointed special master in

 6       the case styled Amorin v. Taishan

 7       Gypsum, et al pending in the Southern

 8       District of Florida.

 9              We're here at the Miami office

10       of Holland & Knight for a hearing on

11       product identification issues that

12       will be related to the property damage

13       claims that I've been appointed to

14       adjudicate.

15              We'll first start with

16       appearances of the counsel.  For the

17       plaintiffs.

18              MR. MONTOYA:  Your Honor,

19       Patrick Montoya.

20              MR. SERPE:  Richard Serpe.

21              MS. DUGGAN:  Sandra Duggan from

22       Levin Sedran & Berman.

23              MS. GRANT:  Allison Grant.

24              MS. SCHWAB:  Emma Schwab.

25              MS. ROBERTSON:  Pearl
```

March 11, 2019

1    Robertson.

2           MR. POYER:  Joshua Poyer for

3    Beijing National Building Materials

4    PLC.

5           MR. DAVIDSON:  Andrew Davidson

6    for BNBM PLC.

7           MS. AYTCH:  Enjolique D. Aytch

8    for Defendant Taishan.

9           MR. TAYLOR:  Bernard Taylor for

10   Taishan.

11          MR. VENDERBUSH:  David

12   Venderbush for Taishan.

13          MS. EIKHOFF:  Christy Hull

14   Eikhoff for Taishan.

15          SPECIAL MASTER LEE:  Thank you

16   very much, and we'll turn it over to

17   plaintiff's counsel for presentation.

18          MR. MONTOYA:  Thank you.

19          Your Honor, thank you for

20   hosting us today.  I'm going to call

21   you Your Honor just because I'm much

22   more comfortable in that manner and I

23   won't trip over the phrasing

24   otherwise.

25          You were appointed with a very

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 39 of 344
Case 1:11-cv-22408-MGC Document 25 Entered on FLSD Docket 04/29/2019 Page 8 of 281
March 11, 2019

1    serious responsibility in this case.

2    We're here on behalf of 1700

3    plaintiffs that were affected in

4    Florida by Chinese drywall.

5             Your job, while a large one, is

6    also very limited in scope.  One of

7    the things we will talk about today I

8    think is, in many ways, the simplicity

9    of what you've been tasked with, but

10   the difficulties that the defendants

11   have made of this case and of the

12   information that's been available.  So

13   on behalf of those homeowners, I thank

14   you for your time today.

15            A little brief background on

16   Chinese drywall, and frankly, why we

17   are here.  Back in 2009 in this group

18   we filed among the first cases in the

19   Southern District of Florida were

20   Chinese drywall.  Basically, what

21   Chinese drywall does is it off-gases

22   sulfur.

23            There were mines in China that

24   had a layer of sulfur shale that ran

25   throughout the mines, was not cooked

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 40 of 344
Case 1:11-cv-22408-MGC Document 25 Entered on FLSD Docket 04/29/2019 Page 9 of 281
Margene, 11, 2019

```
 1        out of the drywall when the drywall
 2        was made.  It got into people's homes
 3        and it off-gases, and that off-gassing
 4        basically affects what we call
 5        anything with a button, anything that
 6        has silver, metal or copper.
 7             So all the electronics, silver
 8        tarnishes, it oxidizes the silver, and
 9        computers, anything with a chip or a
10        motherboard, TVs.  It also affects
11        copper plumbing, so wiring and
12        plumbing as well.
13             It affected the -- the only
14        remedy and the court-ordered remedy
15        and the court-ordered protocol is to
16        rip and tear a home down to its studs,
17        take all the drywall out, HEPA vacuum
18        it, wipe it down, replace all the
19        appliances, all the affected wiring,
20        all the affected plumbing.  That's the
21        remedy.
22             So if you think to myself, this
23        is my home, this is my -- for most
24        people it's their biggest investment
25        in Florida.  The Chinese drywall was
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/03/19 Page 41 of 344
Case 1:11-cv-22408-MGC Document 294 Entered on FLSD Docket 04/29/2019 Page 10 of 281
March 11, 2019

1      imported from '05 to '09.  That

2      coincided with the building boom that

3      was going on at that time and also the

4      hurricanes that were going on at the

5      time, and the shortage of drywall in

6      the U.S.

7           Typically, companies would not

8      import drywall because it wasn't

9      economical to do so.  Drywall is

10     heavy.  It costs a lot of money to

11     ship, so the U.S. gypsum market has

12     always been healthy and always been

13     able to satisfy demand.

14          But when the hurricanes

15     happened back in '05 to '09, the

16     building boom, the U.S. market simply

17     couldn't take on the demand.  So U.S.

18     distributors and others started

19     calling over to China to get drywall.

20     That's how the drywall problem started

21     was due to the building boom and to

22     the hurricanes.

23          You will hear some allusions in

24     this case and there was testimony from

25     the corporate heads of Taishan that

March 11, 2019

```
 1        essentially U.S. consumers were stuck

 2        in a foreclosure crisis and now

 3        they're blaming Chinese drywall.

 4        Nothing could be further from the

 5        truth.

 6              The drywall has been found

 7        defective.  The Court's found it

 8        defective.  And we are here in a

 9        default proceeding, so we're not here

10        to argue about the defective nature of

11        the drywall, but we wanted to give

12        Your Honor a background of how it

13        impacts people's lives.

14              I mentioned the foreclosure

15        aspect of it because I do believe it

16        goes to the conduct and overall

17        demeanor of the defendants.

18              For the defendants to come in

19        and blame the U.S. consumer saying:

20        Well, they can't pay their mortgages,

21        they got in over their head and now

22        they want to blame defective drywall

23        is indicative of the stance that these

24        companies have taken in this

25        litigation and the litigation abuse
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/03/19 Page 43 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2013 Page 12 of 281
March 11, 2013

1    that has gone on in this case.

2         At no time when I talk of the

3    litigation abuse or the -- we say

4    misrepresentations, I will say lies of

5    Taishan, I do not impute any of that

6    to lawyers in this room.  I think the

7    lawyers in the room are fine people.

8    I think they're doing the best job

9    they can with a very difficult and

10   very recalcitrant client.

11        We often go to hearings and

12   before or after a hearing you may

13   represent folks, I've represented

14   folks and I've had to tell people on

15   the other side, hey, you know what,

16   I'm having a hard time with my client.

17   We're going to fight on this issue,

18   but I really need an order to help

19   push my client towards what it needs

20   to do.

21        I have not had that

22   conversation with these folks in this

23   room on the other side of the table,

24   but I get the sense from what has

25   happened in this case, and I'm going

March 11, 2019

```
 1          to go through it, that they're dealing

 2          with a very difficult and recalcitrant

 3          client.

 4               So I don't want to have

 5          anything construed that I'm saying

 6          here as against the lawyers in this

 7          room.  I think what they're dealing

 8          with is a very, very difficult client.

 9               And as an example, Taishan sat

10          on the sidelines for a year in this

11          case before they came in.  They were

12          defaulted, served through The Hague

13          Convention properly, and on the eve of

14          the default, on the appeal, they came

15          in and they only came in to contest

16          jurisdiction.

17               So the MDL Court, Judge Fallon,

18          allowed them to contest jurisdiction,

19          and we did discovery on jurisdiction

20          for about a year and a half to two

21          years.

22               When it went up on appeal, we

23          prevailed on jurisdiction, the

24          plaintiffs prevailed on jurisdiction

25          in front of two panels at the Fifth
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/03/19 Page 45 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 14 of 281
March 11, 2019

1    Circuit.  This was one of the

2    statements in Taishan's brief.

3         Over its entire history, TG,

4    Taishan Gypsum, made only two sales to

5    a U.S. company.  That's back in 2010.

6         And you'll see from the heading

7    of the slide, Taishan actually

8    manufactured and shipped 86 million

9    square feet of drywall to the U.S.

10   I'm laying this out because you will

11   see how the story changes and evolves.

12   So I want you to remember two

13   shipments -- or sales of drywall to a

14   U.S. company.

15        May 11th, 2009, this is about

16   three or four months after the first

17   lawsuit was actually filed.  Taishan

18   hasn't appeared in the cases at all,

19   but their own internal documents show

20   that by May 11th, 2009, they're

21   already categorizing and able to

22   organize and report to themselves, to

23   their parent company, how much drywall

24   they had shipped to the U.S.

25        Now, back on May 11th, 2009, we

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/03/19 Page 46 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 15 of 281

March 11, 2019

1    didn't have this document.  We didn't

2    have it in 2010.  We didn't have it in

3    '11, '12, '13, '14, or '15.  What we

4    found throughout this case is that we

5    get documents two, three, four, five

6    years later down the road after

7    they've been produced.

8          So why am I telling you all

9    this?  Because the fight on

10   jurisdiction was how much drywall did

11   they ship to Florida, how much drywall

12   did they ship to Louisiana,

13   North Carolina, Virginia.  And what we

14   found was a pattern of hiding

15   information and not being forthcoming

16   with information.

17         So this is by Taishan's own

18   admission in their own documents that

19   we didn't get until 2015.  This is at

20   Tab 6 in the binder: 446,000 meters of

21   drywall in 2005, 5.9 million square

22   meters, 240,000 square meters, 16,000

23   square meters.  Contrast that with

24   their statement to the Fifth Circuit

25   that they only made two sales to a

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/03/19 Page 47 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 16 of 281

March 11, 2019

1          U.S. company.

2                October 20th, 2010, yet again

3          another document that we did not have

4          until 2015.  Six months after

5          litigation was filed against them and

6          they hadn't answered -- they knew that

7          they had been sued.  They had already

8          retained counsel.  They were already

9          talking to lawyers about what was

10         happening.

11               They were making their own

12         internal reports about what was there.

13         They already knew -- is there -- I

14         don't know if there's a pointer on

15         this.  Let me find one that has a

16         pointer.

17               So they still haven't responded

18         to the lawsuits at this point.

19         They're sitting on the sidelines, they

20         made a conscious decision to sit on

21         the sidelines, and you'll see their

22         internal documents will show that.

23               But by this point -- and this

24         starts to get to what we're really

25         here about today, which is the

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/03/19 Page 48 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 17 of 281
March 11, 2019

1    markings and the labelings on the

2    drywall.

3          They were able to categorize

4    and knew that they printed Shandong

5    Taihe Dongxin, which is our name for

6    Taishan Gypsum in the factory -- on

7    the back of boards, 687,000 meters;

8    the same for Taian Taishan

9    Plasterboard, what we call TTP,

10   117,000 square meters; Taishan brand

11   edge sealing tape, 965,000 meters.

12         And another important category,

13   number 4, white, letter-free edge

14   sealing tape and no sprayed code

15   neutral packaging.  In other words, no

16   identifying marks on the board

17   whatsoever, almost a million square

18   meters.

19         And then 3.5 million square

20   meters that was custom ordered from

21   U.S. customers, where they should have

22   documents of what they sent out.

23         Again, they told the Fifth

24   Circuit two shipments, and here they

25   are in 2010, before they're even in

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 49 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/29/2019 Page 18 of 281
March 11, 2019

1       the litigation, already knowing what

2       they did, how they did it, who they

3       shipped to and how it was marked or

4       not marked.

5              And probably the most

6       remarkable category, at least to me,

7       in the litigation is number 6.  Over

8       a million square meters, the labeling

9       is unknown.

10             So here I am as the plaintiff

11      with the burden of proof, and I've got

12      a defendant who hides information for

13      four to five years or more -- and

14      we'll get into this later -- up and to

15      the eve of the depositions in January

16      is producing documents and producing

17      labeling on documents and producing

18      photos of drywall that they magically

19      found in their factory after ten years

20      of litigation.

21             When in October of 2010 they

22      apparently had the wherewithal to know

23      what was being shipped, where it was

24      being shipped and how much was being

25      shipped.

March 11, 2019

 1          And they don't want to take

 2     responsibility for unmarked board, and

 3     they've got a million square meters.

 4     The labeling on the remaining drywall

 5     of 1 million square meters is unknown.

 6     And this isn't Patrick talking.  This

 7     is in their own documents at Tab 27.

 8          Again, we didn't have these

 9     documents until 2015.  I think it came

10     from the -- and my team will correct

11     me if I'm wrong -- from the magically

12     found computer.  So there was an

13     employee in the plant named Peng

14     Wenlong.  You'll hear this name.

15          Mr. Pong or Mr. Peng, depending

16     on the pronunciation, testified that

17     he was in the foreign sales department

18     at Taishan, but that was back in, I

19     think, his second deposition.

20          In his first deposition he just

21     said that he was responsible for

22     watering flowers and being the

23     gardener, but then later on it evolved

24     that he was in foreign sales.

25          Well, later on it evolved, when

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 51 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 20 of 281
March 11, 2019

```
 1          he got fired, the computer that he had
 2          that had close to 300,000 documents on
 3          it that were relevant to this case
 4          were on his computer.
 5                  So after the jurisdictional
 6          discovery in 2010 and then the rulings
 7          in '11 and '12, we were finally able
 8          to get ahold of his computer in 2015.
 9                  That's all detailed in the
10          brief, but that goes, again, to the
11          pattern -- and I'm trying to be
12          delicate -- of lies in this case.
13                  June 2010, again, they still
14          have not appeared in the litigation at
15          this point.  This is their own
16          internal documents.  They prepared a
17          statistical spreadsheet and analysis
18          for their parent entity for the
19          purpose of concluding the lawsuit.
20                  What had -- what were they able
21          to tell from their own internal
22          documents about what they created?
23          They had a two-page statement of the
24          data and statistics of exports to the
25          U.S. from 2005 to 2007, a three-page
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 52 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2015 Page 21 of 281
March 11, 2015

1  spreadsheet from U.S. buyers -- so

2  they knew they were selling to the

3  U.S., even though they told the Fifth

4  Circuit they only made two shipments

5  there -- and then a 28-page

6  spreadsheet of product labeling.

7  That's at Tab 10 of this e-mail chain.

8       Why do we go through this here?

9  Why are we telling you about this?

10       So this is one of those

11  spreadsheets.  This was the detail

12  that they had back in 2010.  They were

13  able to track date, invoice number,

14  manufacturer, exporter, who the U.S.

15  customer was -- and remember, we don't

16  sell board to the U.S., we don't know

17  anything about the U.S. -- who issued

18  the invoice, where the drywall came

19  from, the size of it, how much they

20  produced, how it was delivered, where

21  it was going, how much it was worth,

22  how it was exported, what the product

23  label said.

24       We're here about, in part

25  today, about product labeling.  They

March 11, 2019

1       were able to track the labeling.

2       Absolutely they were doing it.  They

3       were able to do it at the time.  This

4       was 2010.  They produced the drywall

5       in '05, '06, '7, '8 and '9.  Yet in

6       2010 they could tell you what they

7       had.

8               What you'll find out later as

9       we continue to go on is, well, certain

10      sales invoices and certain sales

11      notifications get produced on the eve

12      of deposition 10 years later that they

13      magically find in the factory.

14              The bottom line is their

15      discovery practices, their hiding of

16      documents -- Taishan's hiding of

17      documents, not counsel -- is used both

18      as a sword and a shield in this

19      litigation.  So when there's something

20      they don't like, they don't have it.

21      When they find something that's

22      beneficial to them, all of a sudden

23      they have it.

24              And then what they want to do

25      is flip the burden and say:  When we

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/03/19 Page 54 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2015 Page 23 of 281
March 11, 2015

1    make unlabeled drywall that is unknown

2    to us, well, plaintiffs' got the

3    burden.  No, it can't be that way.

4    And that's what we briefed and put in

5    our papers to you is that burden of

6    proof needs to be shifted.

7         We made a prima facie case.

8    We've passed muster.  We have the

9    markings that they either admit or

10   deny that we all agree are at issue in

11   litigation.  The burden should shift

12   to them because of what they've done

13   and what they've hidden in this case.

14        What I wanted to get to was the

15   amount of detail that they were able

16   to provide to themselves for their

17   parent company.  And this is part of

18   the 28-page spreadsheet.  All this is

19   in the briefing in your documents.

20        So what do we know now?

21   86 million square feet of drywall have

22   been imported from '05 to '08.  They

23   knowingly exported to the United

24   States and targeted Florida in

25   particular.  They had exclusive

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/03/19 Page 55 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/29/2015 Page 24 of 281

March 11, 2019

```
 1          distributorship agreements with a
 2          customer in Florida.
 3                But what did they say?  Why did
 4          this all happen this way?  This was a
 5          very early litigation strategy, and
 6          it's at Tab 6 in your binder.  This is
 7          probably, to me at least, probably the
 8          most important document in the case as
 9          we sit here today.
10                So if you don't know, and we
11          didn't go into it enough in our
12          briefing, Taishan was held in both
13          civil and criminal contempt by
14          Judge Fallon in the MDL back in 2015.
15          And part of that process was there was
16          the discovery of attorney-client
17          privileged documents and a lot of
18          Taishan's own internal documents.
19                And what we later found out
20          is -- and it's in the packet -- is
21          Taishan took the very early stance
22          that responding to lawsuits would be
23          too expensive.  They knew that their
24          assets were located in China and they
25          basically said, even if they lost,
```

March 11, 2019

```
1        they can't get us.  They thumbed their
2        nose at us because there's no treaty.
3        They figure you can't collect, so why
4        do we have to respond at all?  And
5        that's the stance they took throughout
6        this.
7             This is the document I'm
8        talking about.  This is Tab 6.  This
9        is the translation from their own
10       internal documents, and they say:
11       Summarizing the reasons above,
12       Taishan Company is inclined not to
13       respond to the lawsuit, but when
14       necessary, it will adopt methods such
15       as mailing the evidence that is
16       beneficial to Taishan Company to the
17       U.S. court and having the government
18       departments interfere, so as to
19       eliminate and reduce some negative
20       impact.
21            The key term there is
22       "beneficial," and you'll see that
23       throughout.  When it benefits them,
24       when it benefits Taishan to produce
25       the documents, like when they found
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/03/19 Page 57 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2015 Page 26 of 281
March 11, 2019

```
 1          the magic residual boards that were

 2          left over in their factories in

 3          December of 2018 and then gave us the

 4          photos in January of 2019, just before

 5          the depositions a month or two ago, it

 6          benefits them because they want to be

 7          able to say, well, here's proof

 8          positive that these are the boards we

 9          made and these are the markings.  All

10          the other stuff, well, you know, I

11          don't know if we have documents of

12          that.  We don't have the documents of

13          that.  But we do have these, so we get

14          the benefit from that.  That's the

15          sword and the shield that I'm speaking

16          of.

17              Also in that same document:

18          After analysis, Taishan Company

19          believes that this lawsuit is

20          relatively complicated, and it plans

21          not to respond.

22              This is back in 2010, after the

23          lawsuits were filed, before they

24          responded.  It's a conscious

25          litigation strategy not to respond, to
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/03/19 Page 58 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 27 of 281

March 11, 2019

1    continue to delay and to create

2    problems for these plaintiffs.

3         We already went through these

4    statements here, but this is their

5    words:  No treaty, they can't get us.

6         So they came in in 2010 only to

7    contest jurisdiction.  They denied any

8    knowledge in 2010 of exporting the

9    drywall to the U.S.

10        Well, I just spent the last ten

11   minutes, frankly, belaboring the

12   points that they knew what they

13   produced back in 2010.

14        They lied to the Fifth Circuit

15   and they have in their own internal

16   documents the volumes and volumes and

17   volumes of drywall.  So this is a

18   conscious strategy.

19        The last bullet point:

20   Taishan's witnesses were deemed not

21   credible, necessitating a second round

22   of depositions overseen by

23   Judge Fallon in Hong Kong.

24        First time I've ever heard of

25   it, I was involved in it, but we took

March 11, 2019

```
 1        the first round of jurisdictional
 2        depositions in Hong Kong of Taishan.
 3        We agreed to go out to Hong Kong to
 4        conduct the depositions there, and we
 5        set aside a week to do it.
 6              Present counsel was not
 7        involved in the case at that time.  It
 8        was four days of lawyer hell and
 9        torture, I will tell you that.  And
10        I'm not -- I'm not prone to hyperbole,
11        but here I will tell you the truth.
12        There was a lineup across the table
13        about like we are here in this room
14        with the party chairman, with a
15        translator from Taishan, with a
16        lawyer, two lawyers and a check
17        interpreter that they brought.
18              Within minutes, the
19        interpreters starting fighting with
20        each other, but what was most
21        remarkable to me was as the witness
22        was answering questions, was looking
23        down the row at the table at the party
24        boss to make sure that he could answer
25        the questions correctly.
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/03/19 Page 60 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 29 of 281
March 11, 2019

1          So again, I don't blame the

2     lawyers for what's happening in this

3     case, but the short version is those

4     depositions were so chaotic and so

5     bad, I moved for sanctions in a case

6     for the first time in my life, and I

7     stood in front of Judge Fallon and

8     moved for sanctions.

9          And he took a look at the

10    transcripts and his quote in his order

11    was "these depositions turned into

12    chaos and dark night."  That was his

13    quote.

14          He said:  You know what, we're

15    going to do these over again.  I'm

16    going to fly out there myself.  I'm

17    going to go with the parties.  We're

18    getting a State Department

19    interpreter.  We're going to do this

20    the right way.

21          So what took a week and was

22    absolute madness ended up taking three

23    days with Judge Fallon coming out.

24    But he had to sit in and officiate and

25    try and get this right.  Those

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 61 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 30 of 281
March 11, 2019

            1         depositions led to him finding

            2         jurisdiction and then eventually the

            3         appeals that went up to the Fifth

            4         Circuit.

            5              What we haven't touched on yet

            6         is once they lost the jurisdictional

            7         battle, that's when they left the

            8         litigation, fired their lawyers, and

            9         that's when they were found in

            10        criminal and civil contempt.  So

            11        that's the timeline of what's going

            12        on.  Constant running, cat and mouse,

            13        hiding.

            14             So again, misrepresentations,

            15        that's a polite word.  In 2011, this

            16        is the chairman, Chairman Jia of

            17        Taishan.  He says:  TG produced the

            18        plasterboard.  They are very heavy.

            19        So we don't have plan to sell it to

            20        foreign countries.

            21             But we know they did.  We know

            22        by their own internal documents they

            23        did, and he knew in 2011 when he

            24        testified that they did.

            25             Mr. Peng, who I alluded to

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/03/19 Page 62 of 344
Case 1:11-cv-22408-MGC Document 294 Entered on FLSD Docket 04/29/2019 Page 31 of 281
March 11, 2019

1    before, the guy who had the missing

2    computer that went hidden for five

3    years, he says:  There is no exports

4    for us to the United States.

5          That's sworn testimony.

6          2015, Mr. Che, who you'll hear

7    a lot about as the day goes on, was

8    the -- I think was deposed three times

9    in this case, the most recent time in

10   Atlanta in January, and he's the

11   corporate representative at this time

12   because Mr. Peng has apparently been

13   fired and is no longer with the

14   company.

15         Mr. Che said:  Because I cannot

16   confirm where the gypsum boards that

17   were shipped to the United States, I

18   was unable to prepare for that.  So he

19   wasn't ready to testify about that in

20   2015.

21         Let's see what they say now.

22   Same guy, Mr. Che, in 2019:  In

23   preparation for the deposition, I did

24   read in detail what Mr. Peng (Wenlong)

25   had created regarding the detailed

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/03/19 Page 63 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2013 Page 32 of 281
March 11, 2019

1     American-sized gypsum board.

2          So what is he referring to

3     here?  There was a spreadsheet that

4     was prepared by Peng Wenlong; that was

5     that 28-page spreadsheet that I

6     referred to before.

7          So by 2019, Mr. Che thought it

8     was due time to go ahead and review

9     that, nine years after the fact, and

10    now understands that there was

11    American-sized gypsum board.  Because

12    we know China operates on the metric

13    system and we've got -- what's it

14    called, the English system or whatever

15    it is that we do with feet.

16         They made custom board that

17    said 4X12X1/2 inch.  They knew when

18    they were shipping it out in '05, '06,

19    '07, '08, '09, it was going to the

20    U.S., because those markings make no

21    sense in China.  But they would not

22    admit to it.  It didn't matter how

23    many times you asked them or how you

24    asked them, they don't know where it

25    went; they just produced the board.

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 64 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 33 of 281
March 11, 2019

 1      Well, we all know it was going to the

 2      U.S.

 3              So they started to change their

 4      tune a little bit.  The question was

 5      asked:  Why use the term

 6      American-sized drywall?  Because

 7      frankly, they had never used it in the

 8      litigation up until this point.

 9              He says:  I used

10      "American-sized gypsum board" because

11      the gypsum board of this kind of size

12      is generally used in America and other

13      countries generally do not use this

14      size of gypsum board.

15              So they knew all along, but it

16      took us ten years to get to that

17      point.

18              I'll talk a little bit about

19      the markings.  These markings -- and

20      you'll see in the next two slides,

21      these come from the court-created --

22      the MDL court-created Chinese drywall

23      markings catalog.  This is what they

24      would admit to in 2011, the ones that

25      had the Taishan or Taihe brand on

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/03/19 Page 65 of 344
Case 1:11-cv-22408-MGC Document 294 Entered on FLSD Docket 04/29/2015 Page 34 of 281
March 11, 2019

```
 1          them.  So you'll become familiar very
 2          quickly with these labels and what the
 3          logos look like.  But at this point in
 4          2011, this was all that they would
 5          admit to as to their markings.
 6               They would also admit in 2011
 7          that they had drywall markings on the
 8          back of the boards, they had produced
 9          drywall with markings on the back of
10          the board that had these phrases;
11          DRYWALL 4feetX12feetX1/2inch, all
12          capital letters, MADE IN CHINA MEET OR
13          EXCEED ASTM, and then the standard,
14          and then the VENTURE SUPPLY.
15               Well, why do I bring this up
16          about what they're admitting?  They
17          admit they put those words on the back
18          of the board when they looked at those
19          photographs in the catalog that we
20          just looked at.  So if it's got this
21          edge tape that goes along the drywall
22          border, they'll admit to that.  And
23          they know they put these markings on
24          the back, but unless they've got the
25          tape and the markings on the same
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 66 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/28/2019 Page 35 of 281
March 11, 2019

1        photo, they don't admit to it.

2              So basically what they said is

3        we know we made this board with this

4        type of marking, but there's

5        insufficient evidence to conclude that

6        the drywall depicted in this image was

7        sold by TTP, Taian Taishan

8        Plasterboard; among other reasons,

9        other manufacturers might have

10       produced drywall with these markings.

11             So on one hand, they'll say,

12       yeah, we knew we put it out there, we

13       had it, but it could have come from

14       somebody else.  We have yet to see who

15       that somebody else is.

16             So we talk about burden of

17       proof, plaintiffs got the burden of

18       proof.  Well, this is their defense.

19       Now, they really don't have any

20       affirmative defenses because they've

21       been defaulted.  But if this is their

22       defense, they then have the burden of

23       proof.

24             So who are the others?  You'll

25       hear a little bit about counterfeiting

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/03/19 Page 67 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 36 of 281

March 11, 2019

1    and how they were very careful in the
2    market to watch out for counterfeiting
3    because their product is so good, but
4    all we've heard is innuendo.  We've
5    seen nothing about other Chinese
6    manufacturers making boards with these
7    markings.
8          These are the same markings in
9    2011.  They will admit to -- and this
10   is an example.  They'll admit to these
11   words, the meets or exceeds -- MEET OR
12   EXCEEDS ASTM.  They know they printed
13   drywall with those words, but they
14   won't admit to those specific photos,
15   whether it be because of the font or
16   some other reason, you'll hear more
17   about that, but that's really what's
18   in front of you today and for the next
19   few days.
20         Same thing with this marking,
21   Drywall 4feetX12feetX1/2inch, they'll
22   contend that there's insufficient
23   evidence.
24         So where are they today?  That
25   was back in 2011.  This is where they

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/03/19 Page 68 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 37 of 281
March 11, 2019

```
1        are today.  They say that they do not

2        deny Taian Taishan or Taihe tape, so

3        this is the edge tape I've been

4        talking a little bit about.  So the

5        edge tape and the manufacturing

6        process is done to protect the board,

7        and what the testimony has borne out

8        in this case is that when installers

9        put the board in in a home, generally

10       what they do is they rip the tape off

11       and then they install it.  But that's

12       what the drywall tape is.

13            So from a proof standpoint,

14       frankly, there's going to be some

15       issues because you're not always going

16       to have drywall end tape just by

17       nature of how the drywall is

18       installed.

19            But they will admit to this

20       tape, they will admit to stuff only

21       with their name on it, but they won't

22       admit to anything else.

23            Venture Supply, you'll hear a

24       little more about.  Not so much an

25       issue in Florida, but that was a
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 69 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 38 of 281
March 11, 2019

```
 1          specific run of drywall that Taishan
 2          did for a company in Virginia named
 3          Venture Supply, and they painted it on
 4          the back.
 5                And why do I go through these
 6          slides, for example, Venture Supply
 7          and the ones with edge tape?  Because
 8          you'll find throughout our
 9          presentation, whether it be the font
10          or the labeling or the phrasing, there
11          are other what we called buckets of
12          drywall.  There's eight other -- eight
13          total categories of drywall where
14          you're going to see similar font and
15          similar wording.
16                So what I'm getting at is
17          they'll admit to this, they'll admit
18          to this phrasing, they'll admit to the
19          font in this section, but when you see
20          another piece of drywall with the same
21          font but not the same edge tape,
22          they'll say, oh, must be somebody
23          else's.  Well, it's the same font.  It
24          came from the same printer, it came
25          from the same factory.  So that's the
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/03/19 Page 70 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2013 Page 39 of 281
March 11, 2013

1          game that they're going to be playing.

2                    We'll talk about the markings

3          for a moment.  We found out at the

4          depositions in January that the

5          drywall labeling machines that they

6          have, my colleague, Mr. Serpe is going

7          to address this in much more detail.

8          They had four different machines for

9          labeling drywall.

10                   They have no records of what

11         font was used, whether it came out

12         with little dots or if it came out

13         with straight lines.  They have none

14         of that because -- and the testimony,

15         at least, was any notes of that were

16         thrown away.

17                   There were four different

18         machines.  They don't know what font

19         was there.  They don't have any

20         records of what was actually written

21         on the back from those machine

22         operators.  There's no protocol for

23         what the machine operators were

24         supposed to do.  It's one big guess at

25         this point, but they know they had

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 71 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2013 Page 40 of
281
March 11, 2019

1        four different machines.

2            So what they're doing, again,

3        these unknowns, they want to push back

4        on us from a burden of proof

5        standpoint when they had the

6        information at one time, they had the

7        information at the time of production,

8        but they didn't keep it.

9            So they want to take their lack

10       of recordkeeping and foist that burden

11       upon the plaintiff to be able to prove

12       it.  And that's why I'm going through

13       those categories.  It will become more

14       relevant later.

15           Same thing here, the markings.

16       There's going to be a lot of

17       discussion about a capital Y in the

18       middle of "DrYwall" and whether it's

19       their drywall or not and how it looks

20       like others.  These are their denials.

21           So they'll admit some that say

22       "DrYwall" with a capital Y, others, if

23       there's no capital Y they're going to

24       deny that.  But what we all know is

25       they say -- have the dimensions.

March 11, 2013

```
 1              So in terms of how we're

 2         splitting this up, Mr. Serpe is going

 3         to finish up when I sit down, and then

 4         I think they will open, and then we'll

 5         get into the specific categories of

 6         documents.

 7              I also -- one point I'm

 8         missing, I skipped over that.  So

 9         there was a Manufacturer Profile Form

10         that was produced in this litigation.

11         Just like in any mass tort, you'll

12         have court-ordered discovery.  There

13         was a profile form that was created

14         that they had to fill out.  There's a

15         Distributor Profile Form as well.  So

16         all the defendants had to fill in

17         these profile forms.

18              On the Manufacturer Profile

19         Form, they did a listing of the

20         drywall that was created and the

21         markings that were on it.  But what

22         you find in the Manufacturer Profile

23         Form is they will admit to marking

24         drywall with 4feetX12feetX1/2inch, but

25         what they didn't detail on the
```

March 11, 2019

```
 1          Manufacturer Profile Form was whether
 2          it was in uppercase and lowercase
 3          letters or whether it was in all
 4          capital letters.
 5               So Mr. Che, who was the
 6          corporate representative testifying
 7          this past January, had to admit that,
 8          well, Mr. Peng's spreadsheet that he
 9          made that was really part of the
10          Manufacturer Profile Form, it doesn't
11          go into great detail about what the
12          markings are.
13               We know it says Drywall
14          4feetX12feetX1/2, but they can't tell
15          us one way or the other whether it's
16          all capital letters or a mix of both.
17          Again, and you'll see what his
18          testimony was:  Well, maybe Mr. Peng
19          wasn't that careful in creating it.
20               Well, what has that done to us
21          ten years later?  It's left us as the
22          plaintiffs trying to figure out what
23          is what with this drywall when that is
24          their own records.  They admit to this
25          phrasing.  They just won't admit to
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/03/19 Page 74 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2013 Page 43 of 281

March 11, 2013

1    the font, they won't admit to the

2    capital letters, they won't admit to

3    singulars or plurals.  That's what

4    you're going to be seeing with the

5    product ID binders.

6         This is a direct quote from

7    Judge Fallon:  The Court is

8    disheartened that delay tactics have

9    permeated every aspect of the

10   defendant's litigation strategy; from

11   their initial failure to appear to

12   their now perpetual motion to

13   relitigate settled matters.

14        We see that same delay tactic

15   from jurisdiction to document

16   discovery to document production and

17   to late-produced suddenly found

18   information on the eves of

19   depositions.

20        So what do we know?

21   9.4 million square feet of drywall

22   directly to Florida, part of the

23   86 million.

24        At this point, Taishan only

25   admits the manufacture of 1.4 million

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 75 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2015 Page 44 of 281

March 11, 2015

1     square feet of drywall in Florida

2     plaintiffs' homes.  How does that come

3     about?

4          So a few weeks ago the parties

5     exchanged claimant-specific objections

6     or denials on homes, and whether or

7     not Taishan believed that the drywall

8     in a particular home based on the

9     photos was theirs or not.

10         So of the 1,700 claims that we

11    went through on the individual sheets,

12    they only admitted to about

13    1.4 million square sheet of drywall,

14    when their own records show they

15    shipped 9.4 million square feet of

16    drywall to Florida.

17         So overall, they know they've

18    got almost 9? million square feet of

19    drywall in Florida, yet when we look

20    at the individual contests, they'll

21    only admit to about a million and a

22    half square feet, which amounts to

23    about 15% of their total shipments

24    here.

25         So there's obviously a lot more

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/03/19 Page 76 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 45 of 281
March 11, 2019

1    drywall that made it to Florida from

2    Taishan that is either not being --

3    that is not being admitted to by them.

4        Those denials are inconsistent

5    with the product ID admissions from

6    Taishan and to the evidence that

7    plaintiffs have.

8        So we had to go back -- and

9    this was in 2012 this was filed.  This

10    was during the jurisdictional

11    discovery -- and try to figure out how

12    much drywall they actually shipped

13    here.

14        And the people in this room

15    along here to the left side of you, we

16    took everything that we had from

17    different distributors in the U.S.

18    because we weren't getting that

19    information from Taishan, and we

20    compiled this spreadsheet based off of

21    invoices and shipping documents, and

22    what we came up with was 87 million

23    total square feet of drywall and

24    9.3 million square feet, so very close

25    to what the numbers actually ended up

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/03/19 Page 77 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2013 Page 46 of 281
March 11, 2019

1        being.

2               The point of the matter is,

3        though, we had to figure that out for

4        ourselves when Taishan had that

5        information the whole time.  And that

6        was the information that I showed you

7        very early on in the presentation.

8        Back in 2010, before they came into

9        the lawsuit, they had already figured

10       out how much drywall they manufactured

11       and how it was labeled or wasn't

12       labeled.

13              This is an overall view of the

14       1,700 cases, where they're located in

15       Florida.  There's 1,707 total claims

16       representing 1,581 properties.

17              The reason there's less

18       properties than claims are

19       condominiums.  So if you've got a

20       condominium with 30 units or 40 units

21       of drywall, we counted it as one

22       property.  But this is what it looks

23       like geographically.

24              And not surprisingly, it

25       follows along the major building

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 78 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2013 Page 47 of 281
March 11, 2013

1          points when the building boom was

2          going on in '05 to '08.

3                    So as broad as this case is,

4          your task is product ID, which we're

5          here about today, ownership

6          verification, whether the plaintiff

7          owned or didn't own the home, and what

8          the square footage is.

9                    Frankly, I think that the

10         square footage issues will probably be

11         pretty easy to solve between the

12         parties.  I think for the most part

13         the ownership verification will

14         probably be along the same lines.

15                   The product ID is really where

16         the rubber meets the road.  These are

17         the calls that you have to make and

18         that are so important to these

19         plaintiffs.

20                   This is the general, what we

21         call buckets.  Again, we're going to

22         probably use the term "buckets"

23         throughout the day, the different

24         categories of drywall.  There are

25         eight of them at issue today; C&K has

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/03/19 Page 79 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2013 Page 48 of 281
March 11, 2019

```
 1        50; IMT, 66; ProWall, 96; Taian

 2        Taishan or Taihe Tape, 107; with the

 3        markings MADE IN CHINA MEETS OR

 4        EXCEEDS, 266; the various drywall

 5        dimension boards, 960; Venture Supply

 6        has 5 in Florida; and then the

 7        unmarked board with the white edge

 8        tape, 80 Florida properties.

 9             So, Your Honor, you can see

10        that the bulk of the claims are the

11        dimensional and the MADE IN CHINA.

12        Those really make up the bulk of the

13        claims, and then lesser down the line.

14        And these are the order we'll take

15        them in once we start doing the

16        product-specific categories.

17             We talked a little bit about

18        edge tape.  I just wanted to -- I

19        wanted to familiarize Your Honor with

20        that term.  I'm going to ask you to

21        put a pin in edge tape, I'm going to

22        get to it in a minute, because I've

23        got some slides that better address

24        what edge tape is.  I kind of already

25        did.  I told you it's the bottom
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/03/19 Page 80 of 344
Case 1:11-cv-22408-MGC Document 294 Entered on FLSD Docket 04/29/2019 Page 49 of
281
March 11, 2019

```
1          protective tape that typically gets

2          peeled off during installation.

3                    I've talked to you about these

4          magic boards that showed up in their

5          factory in December of 2018 when

6          opposing counsel went out to

7          prepare -- to China to prepare their

8          clients for deposition and they were

9          advised that there was three pallets

10         of drywall, one in an office area, I

11         believe, and one in a factory.  I may

12         be wrong on exactly where they are,

13         but I know they were in two different

14         spots in China with three different

15         sets of markings.  We call them

16         residual boards.

17                   The point is this:  We're ten

18         years down the line after the

19         lawsuit's been filed in 2009.  It's

20         December, it's the eve of the

21         depositions, and now all of a sudden

22         Taishan is finding drywall in their

23         own factory.

24                   And this isn't one board; this

25         is 400-something boards.  And you've
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/03/19 Page 81 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2013 Page 50 of 281

March 11, 2019

1     seen drywall before, it's

2     4feetX12feetX1/2inch.  It's not

3     something that you move around easily

4     or it gets lost.  They come in huge

5     pallets, and they would, you know,

6     take up the corner of this room

7     without a problem when they're stacked

8     up 40 or 50 high.  It's not something

9     that you lose.  It's not like losing

10    your cell phone.

11        This is 400 and something

12    sheets of drywall that could have been

13    found, that could have been made

14    available to us that weren't.  So it

15    begs the question:  What else is

16    there?  What else is out there at this

17    point, ten years later, that we don't

18    know about?

19        And our situation is this:  We

20    are now at this point ten years after

21    litigation.  The truth of the matter

22    is we could discover this case for

23    another five years.  Our folks have

24    been out of these homes since '5, '6,

25    '7, '8.  The time is now.  We have to

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/03/19 Page 82 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 51 of 281
March 11, 2019

1    do it.  We are forced to do it,

2    because this litigation has to come to

3    an end for these plaintiffs.  They

4    need an answer one way or the other.

5         But for us to be forced, for

6    the plaintiffs to be forced into the

7    situation where we're getting stuff on

8    the eve of depositions ten years

9    later, that's where I ask you as the

10   finder of fact, as the trier of fact,

11   to shift the burden.

12        We've made a prima facie case.

13   They need to put up their defenses,

14   just based on their conduct alone.

15   That's the residual boards.

16        The Manufacturer Profile Form I

17   alluded to a little bit earlier.  That

18   was a court-ordered form.  We're

19   calling product ID, we're referring to

20   as PID.  The Taishan product ID

21   catalog was filed in the MDL at 155-2.

22   It's also in your materials.

23        And you'll see Taishan Gypsum

24   referred to as TG sometimes.  Taian

25   Taishan Plasterboard as TTP.  I refer

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 83 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 52 of 281

March 11, 2019

1          to both the companies overall as

2          Taishan.  Just makes it a lot easier.

3                    Here's the scoreboard of what

4          you're having to deal with.

5                    Taishan has denied they

6          produced C&K Gypsum, IMT is denied,

7          ProWall is denied.  Taian Taishan is

8          admitted to, MADE IN CHINA MEETS OR

9          EXCEEDS, whether it's singular or

10          plural, part of them are admitted to,

11          part are denied.

12                    The dimensions, same thing,

13          admitted -- partially admitted,

14          partially denied.  Venture Supply is

15          admitted.  The unmarked boards with

16          the white edge tape are denied.

17                    The point of this slide is here

18          you see the edge tape with the

19          color -- or the markings, and there --

20          so we know this is their board.  And

21          here you see the font and the typing,

22          the MADE IN CHINA.

23                    What we found throughout our

24          analysis is that you will see this

25          same font and the same typing on other

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/03/19 Page 84 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2013 Page 53 of 281
March 11, 2019

```
1          buckets of drywall that they won't
2          admit to, but unless it has their
3          tape, they won't admit to it.
4               So basically what they're
5          saying is if it's just this alone, I'm
6          not going to admit to it.  It's got to
7          have the tape for me to be able to
8          admit to it.  Well, it can't be.  You
9          produced it with this label, with this
10         font from whatever machines that you
11         no longer have and don't have the
12         labels to, and now you want to take
13         the position that that's not your
14         board when we know it's your board,
15         but you only admit to it when the tape
16         is on there.
17              It's that type of hiding, it's
18         that type of delay tactics, and
19         frankly, that lack of candor about
20         their own board that lead us to being
21         here today.
22              These are more examples of what
23         they've admitted to with their edge
24         tape, what it looks like.
25              And I'd ask you to put a pin on
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/03/19 Page 85 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2015 Page 54 of 281
March 11, 2015

1    edge tape in terms of what it is in

2    describing it.  I just pulled this

3    piece of the testimony because I told

4    you there was record evidence that the

5    edge tape gets pulled off during

6    construction.

7         Taishan's corporate

8    representative understands that.  It's

9    the normal practice to remove the edge

10   sealing tape before the drywall is

11   installed, and in reality, this is

12   what it looks like on a construction

13   site.

14        So workers get the -- the

15   drywall installers go to put it in,

16   they rip off the edge tape.  So a lot

17   of times you just simply won't have

18   the edge tape when we're trying to

19   identify what's in a home or what's

20   not.

21        Before I turn the program over

22   to my colleague, Mr. Serpe, I think

23   there's one passage or one quote from

24   Judge Fallon that probably sums up

25   everything that I'm trying to talk to

March 11, 2019

```
1        you about today.  It at page 10 of our
2        brief.
3               Judge Fallon, this was last
4        August:  The whole approach is just
5        delay, delay because people die, delay
6        because people lose their homes, delay
7        because they're frustrated and giving
8        up.
9               And as a litigation strategy,
10       and it's kind of one of the elephants
11       in the room, maybe not the elephant in
12       this room, but in the litigation
13       overall.
14              Part of the litigation strategy
15       is to make people walk away, have
16       people sell their homes, have people
17       give up on their homes, because when
18       people were faced with this problem,
19       they had the choice of keeping their
20       families in a toxic home that affected
21       their health, or moving out.
22              Moving out -- can't pay two
23       mortgages.  Biggest asset.  I've got
24       to get rid of my home.
25              Well, depending on how you see
```

March 11, 2019

```
 1          damages in the state of Florida and

 2          damage law, you've got to mitigate,

 3          right?  We all know you've got to

 4          mitigate.  That benefits their client.

 5          The longer they drag this out, the

 6          less they've got to deal with it.

 7               That's not right.  We know

 8          that's not right, and we know it's not

 9          right because in 2010 when we see

10          those documents they produced and they

11          created, that was their tactic.  They

12          said they would delay it.  They're not

13          going to respond to the lawsuits.

14               So we're asking you to shift

15          the burden of proof.  We know you take

16          this task extremely seriously for

17          these plaintiffs that are before you.

18               But I think as you hear our

19          presentations, I think it's very

20          important for you to consider the

21          equities in the situation.  As the

22          trier of fact, you have the ability to

23          determine credibility, to make

24          inferences, direct evidence,

25          circumstantial evidence, and in many
```

March 11, 2019

```
 1          cases the circumstantial evidence may

 2          be much stronger than the direct

 3          evidence.

 4               So I ask you to keep those

 5          concepts and thoughts in mind as I

 6          turn the clicker over to Mr. Serpe.

 7               SPECIAL MASTER LEE:  Before you

 8          do, and if you're going to get to it,

 9          it may be a trivial matter, but what

10          were the markings on the residual

11          boards that were discovered?

12               MR. MONTOYA:  We have photos of

13          those.

14               MR. SERPE:  I'm going to cover

15          that.

16               SPECIAL MASTER LEE:  Okay.

17               MR. MONTOYA:  Thank you.

18          Special Master, let me ask two favors.

19               Would it be all right if I sat

20          here during the presentation?

21               SPECIAL MASTER LEE:  Sure.

22               MR. SERPE:  And second, I beg

23          your indulgence.  I'm going to jump

24          around a little bit with the order of

25          the slides.  Can I get you to go back
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 89 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 58 of 281
March 11, 2019

1          to 25 just for a minute.

2                    Patrick emphasized the point,

3          which is critical to us, that with the

4          documentation of exports to Florida

5          where 9.4 million square feet of

6          Taishan drywall clearly came into

7          Florida, you're talking about a degree

8          of record where you've got the actual

9          purchaser of the supply house and,

10         boom, the board is landing there,

11         9.4 million square feet, representing

12         now, at this point, what Taishan had

13         admitted is only 15% of that.

14                   The point that I wanted to

15         emphasize, if you go to the next

16         slide, 26, and the callout, look above

17         at the deliveries that Taishan made to

18         unknown, state unknown, at 56,866,080

19         square feet.

20                   So here we don't have the

21         actual supply house that it's coming

22         into, but it came into the United

23         States.  These are export records.

24         Clearly 87 million square feet from

25         Taishan came in.

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/03/19 Page 90 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 59 of 281
March 11, 2019

```
 1              I just wanted to make the point

 2         that, when you look around the

 3         country, what states got hammered,

 4         hammered with Chinese drywall from

 5         Taishan.  Florida is by far and away

 6         triple any other state.  And there's

 7         only a handful of states that have had

 8         the impact.

 9              So the point becomes, when

10         you're considering the fact that

11         Taishan has only admitted 15%, 15% of

12         the boards that went into Florida,

13         understand that that is augmented by

14         the fact that 56 million additional

15         square foot got spread around the

16         United States, we would argue, the

17         majority to Florida.

18              Now, do we have direct proof on

19         which supply house?  No.  But it went

20         somewhere.  Where did these homes end

21         up?  Where did the drywall end up?

22         Florida, triple any other state.

23              And the point becomes it's not

24         that they're admitting 15%.  That's

25         15% they're admitting of sales that we
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/03/19 Page 91 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 60 of
281
March 11, 2019

1           know the supply house.

2                   When it comes to their overall

3           drywall that came into the United

4           States, we're talking about like 1%

5           that they've admitted for the state of

6           Florida.

7                   So the question becomes, well,

8           where did it all go?  Where did it all

9           go?

10                  Another question is who else

11          was out there?  We addressed this in

12          the briefing.  And there was another

13          company, Knauf, who was a German-based

14          company.  They also imported drywall

15          with the same defect, the sulfur that

16          caused off-gassing.

17                  Within a year, they admitted

18          their responsibility, began a program

19          fixing houses, and ultimately fixed

20          every house that their drywall was in.

21          Every one of their boards was marked

22          with the name Knauf on it, as is the

23          custom for U.S. drywall makers, USG,

24          National Gypsum, boom, right on the

25          board.  People -- responsible

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/03/19 Page 92 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 61 of 281
March 11, 2019

1          manufacturers mark their board.

2                  But Knauf came in and repaired

3          everything.  None of these cases we're

4          talking about today have Knauf because

5          we know Knauf never made a board

6          blank, never made a board MEETS OR

7          EXCEEDS without a manufacturer name.

8                  So who is this third boogieman?

9          Who is capable of sending 90 million

10         square feet of Chinese drywall into

11         the United States other than Taishan?

12                 That was the specific topic

13         identified on the 30(b)(6) notice to

14         Taishan in the deposition we took in

15         January.  Where are the documents?

16         Who are the witnesses?  Who's going to

17         say anybody made any of these buckets.

18                 Taishan hasn't produced a

19         single document or a single witness to

20         indicate that there was a third player

21         out there.

22                 So not only are they admitting

23         a tiny percentage of what they sent

24         into the United States, they've got no

25         evidence that somebody else did.

March 11, 2019

1          So perhaps my learned opposing

2     counsel would say:  Well, that's not

3     our burden of proof to tell you who

4     did it.  They accused us.

5          In the documentation before the

6     court in the record, we have Taishan

7     as a dominant player in the market.

8     We have quoted in the product ID brief

9     the testimony where they've got their

10    own internal investigation department

11    looking at other manufacturers; are

12    they counterfeiting us, let's shut

13    that down.  They study the market.

14    They know it.

15         They bragged about how they had

16    brought claims against the other small

17    manufacturers and had shut down, and

18    they quoted percentages and dollars

19    that they had shut down other

20    manufacturers on counterfeiting.

21         So with a sophisticated, huge

22    market player, with its own division

23    studying other Chinese drywall

24    manufacturers, where is the first

25    document that some company other than

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/03/19 Page 94 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 63 of 281
March 11, 2019

1    Taishan sent drywall into the state of

2    Florida?  Not one that's been

3    produced.

4         Let me go back to where Patrick

5    dropped off at slide 36.  So now we

6    have the question of what markings did

7    they make on the boards?  Separate

8    topic that they made some boards that

9    were unmarked, and we're going to come

10   to that separately.  But let's start

11   with those boards for which they did

12   put markings.

13        Well, they didn't put their

14   name on anything, as opposed to Knauf

15   and what we would argue responsible

16   U.S. manufacturers did.

17        So instead, they had various

18   markings.  And we're going to spend

19   most of the day today and tomorrow

20   looking at those markings.

21        But let's draw some

22   conclusions.  How did the markings get

23   on the boards?  As these boards are

24   moving down the factory line, there

25   are printers that put the markings on

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/03/19 Page 95 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 64 of 281
March 11, 2019

1        the board, one board after another as

2        they go down the line.  They're moving

3        hundreds of thousands of these boards

4        through.

5             So you can imagine that a

6        printer that's dealing with that kind

7        of volume is taking a lot of ink.  In

8        fact, in the deposition, Mr. Che told

9        us that they've got -- needed to buy

10       so much ink that the manufacturers of

11       the machines would give them the

12       machines because they were looking for

13       the ink sales.

14            So these things were in a rough

15       environment.  There were lots of them,

16       at least four by manufacturing that

17       they told us about.  That often broke

18       down, they often had to be replaced.

19            So we've got multiple

20       production lines, multiple printers,

21       the printers are breaking, new

22       printers are come in.

23            Okay.  So what does that tell

24       you about what the markings are going

25       to look like?  If you look at the next

March 11, 2019

1    slide, no standard protocol for

2    delivering marking instructions to the

3    spray marking operators.

4           Pause for a second.  So again,

5    on the eve of deposition we found, in

6    a reference in another document, that

7    there was a markings manual and a

8    highly detailed set of instructions on

9    how markings are supposed to be done

10   on the boards.

11          We wrote to opposing counsel.

12   Where is the manual?  We're ten years

13   in, we're arguing about markings.

14   Where is the manual on how to do the

15   markings on the board?

16          The day before the deposition,

17   two days before the deposition, we're

18   in Atlanta for the deposition.  Here

19   it is, it's in Chinese.

20          We get it, we use our resources

21   for interpreting, and it says this is

22   the current version but there were

23   three previous versions going right

24   back to the time when this board was

25   being manufactured.

Case 2:09-md-02047-EEF-MBN  Document 22380-37  Filed 12/03/19  Page 97 of 344
Case 1:11-cv-22408-MGC  Document 29-1  Entered on FLSD Docket 04/29/2019  Page 66 of
281
March 11, 2019

1        Where are the earlier versions?

2   Do you have an English translation?

3   Answer, well, that manual only applies

4   to drywall we make in China.  We don't

5   really have a manual for the board

6   that we exported that was American

7   sized.  That was something else, and

8   there's no documentation whatsoever.

9        So you've got a company, a big

10  industrial player, factories going up

11  everywhere, corporate chains of

12  authority, annual reports being filed,

13  and their claim is, yeah, we had this

14  process where we sold tens of millions

15  of, for them, square meters of drywall

16  to the United States, yet we had no

17  procedures, no written rules, no

18  protocol for how to mark the boards,

19  despite the fact that you can sure

20  believe that we got it for every other

21  board that we make.

22       So then how would the machine

23  operator know how to mark the board?

24  We call them on the phone, say, put

25  this in there.  Or maybe we would walk

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/03/19 Page 98 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 67 of 281
March 11, 2019

1        over to him and say, you know, say
2        Venture Supply, Inc., Made in Taihe,
3        or say 4feetX12feetX1/2inch.  We would
4        tell them face-to-face or on the
5        phone.  There's no e-mails, there's no
6        documents of that.  We don't have any
7        records of that.
8              And Mr. Che acknowledges,
9        well -- as a principle, so how does he
10       get that in to the printer?  Is there
11       a keyboard?  Is there a separate
12       computer that has memory?  No, no, no.
13       There's a keyboard, but it goes right
14       into the printer, and the printer
15       prints, and then when you're ready to
16       do a label change, it doesn't remember
17       what the previous labels were.  You
18       overwrite when you put in the key for
19       the next label.
20             I said, so who selects the
21       font, capitals versus small, periods,
22       the spacing, who does that?
23             Well, the machine operator does
24       that, he does all of that.  But some
25       of them are lazy -- his word -- and

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 99 of 344
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 68 of 281
March 11, 2019

 1          what they do is they don't really

 2          change the settings from the last time

 3          we did a label.

 4               So there's no documentation,

 5          there's no consistency, it changes all

 6          the time.  You've got multiple

 7          machines that come with different

 8          fonts.  And who makes the decision?

 9          Well, the machine operator -- the lazy

10          machine operators will key it in, and

11          that's how the printer knows what

12          labels to put out onto the boards.

13               So I'm going to do one more

14          flipping around.  We're going to go

15          from 37 and I want to go to the

16          residual board on page 40.  If you'll

17          go to slide 40 for me.  I'll come back

18          and pick up these other three slides.

19               This becomes important because

20          in December of -- just this last year,

21          Taishan goes out and finally looks for

22          examples of what they call

23          American-sized drywall.  That's their

24          new euphemism for the stuff that they

25          knew that they sent to the United

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 100 of 344
Case 1:14-cv-22408-MGC Document 23 Entered on FLSD Docket 04/29/2015 Page 69 of 281
March 11, 2019

1       States.  And they -- they say, we

2       searched for it to see if it was

3       possible that the residual boards, in

4       every corner of the warehouse, and in

5       the end I discovered these residual

6       boards.  So I called lawyers and the

7       lawyers came and took pictures.

8               Your Honor asked me a minute

9       ago, what were those residual boards?

10      There were only three types.  In slide

11      41, which is the next slide, you'll

12      see that they did MADE IN CHINA MEET,

13      singular, OR EXCEEDS ASTM.

14              Not pictured here, they had a

15      stack of boards that had what you see

16      above, you know, the MEET OR EXCEEDS,

17      but also had Crescent City on it.

18      That is for the Louisiana case.  It's

19      not an issue in the state of Florida.

20              And then in a final photograph,

21      which we can supplement to you,

22      TG-PID-22.  It's very difficult to

23      read.  What we call it internally, it

24      was an illegible marking, and we're

25      not making really heads or tails out

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 101 of 344
Case 2:14-cv-22408-MGC Document 23 Entered on FLSD Docket 04/29/2019 Page 70 of 281
March 11, 2019

1          of it.

2                  So as the special master has

3          now clearly discerned, we don't have

4          one exemplar per bucket.  We don't

5          have what they contend to be like a

6          mug shot book.  Let's get every label

7          you ever made, lay them out.  Then

8          when we get a photograph from one of

9          the houses we can compare it to the

10         mug shot book and see which labels,

11         what matched.  And if there's a match,

12         a photo identification, you have the

13         product ID.

14                 So what we have here is now

15         we've got three mug shots.  That's all

16         we've got.  One of them we can't read.

17         Two of them, now, Taishan wants to

18         take the position that we're lucky

19         that they found them, because if they

20         can match -- now they're going to be

21         the arbiters.  So if they match the

22         font and the wording, the lettering to

23         the sample, they'll admit it.  And if

24         you can't, well, that's not their

25         drywall.

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 102 of 344
Case 1:07-cv-22408-MGC Document 25 Entered on FLSD Docket 04/29/2019 Page 71 of 281
March 11, 2019

1          Why don't we have a full mug

2      shot book after all this time?  I

3      believe Mr. Montoya made the point

4      repeatedly, which is, the strategy has

5      been don't give anything hurtful to

6      us; only give things that are

7      beneficial to us.

8          Why these boards?  Well, they

9      want to use them now as a sword.

10     They're going to say that unless it

11     meets these fonts exactly, we're going

12     to say, no, that's not our font.  We

13     didn't print that way.

14          So the last time I'll do it,

15     but if you'll go up to slide 38.  So

16     Venture Supply, there were only five

17     in Florida, they've all been admitted.

18          Why do we put the slide in

19     here?  Because it elegantly

20     demonstrates just how many different

21     fonts, type styles, layouts are here.

22     I think I'll jump up out of the chair

23     and actually point at a couple of

24     things here.

25          Number one, different printer

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 103 of 344
Case 2:14-cv-02408-MGC Document 29 Entered on FLSD Docket 04/29/2015 Page 72 of 281
March 11, 2015

1        types.  Look at the smooth printing.

2        Different technical people use

3        different words for it, but my IT

4        people tell me this is technically

5        called an impact printer versus a

6        nonimpact printer.  I think of laser

7        versus an old dot matrix.

8             So Venture here is clearly the

9        more advanced type of printer that's

10       making the nice smooth label.  And if

11       you'll look for the other red one

12       here, you've got these rows of

13       printing where it's spitting dots out

14       to create the letters that way.

15            So clearly you've got two

16       different types of printers here that

17       Taishan is using to print the label

18       VENTURE SUPPLY INC.

19            Mr. Che, in his deposition,

20       said:  We never did this.  But clearly

21       they did.  Clearly they did.

22            Why is that important?  Because

23       if we turn over photographic proof

24       with this type of printing, they're

25       denying it, saying we never did it.

March 11, 2019

```
 1      Until they're caught.  Oh, yeah, I
 2      guess we did.  And then they're going
 3      to back off and come up with yet
 4      another strategy on how they're going
 5      to deny it.
 6           What are the other differences?
 7      Print differences.  Look at the E here
 8      and here and here.  That's at least
 9      three different types of Es.
10           Font.  Look at the U's.  This
11      one's got kind of an angle in it.
12      This one comes down and makes a harsh
13      kind of 90-degree turn, and this one
14      is a nice loop.  Different fonts.
15           And then this goes to the lazy
16      machine operator.  I hate the term,
17      but I'm using what Mr. Che told me,
18      not my characterization.  Are you
19      putting a space after the period, as,
20      you know, was drilled into us in
21      grammar school?  Or are you going to
22      jam it all together, not put the
23      space?
24           So now we're down on font
25      levels to this tremendous variation
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 105 of 344
Case 2:14-cv-02408-MSG Document 23 March 11, 2019 Docket 04/29/2019 Page 74 of
281

March 11, 2019

1          depending on the machine operator on

2          any given day, on which machine that

3          it's being done on, what's the

4          standard fonts.

5              But the point, Special Master,

6          becomes that any attempt by Taishan to

7          disavow a board because the font

8          doesn't match what's in that residual

9          board is hopelessly insupportable

10         because they can't account for the

11         massive amount of variation that they

12         had within their own printers and with

13         their own print operators, without a

14         manual.

15             Gosh, it would be nice to have

16         the paper, right?  What did they

17         actually put on the board.

18             In this next slide, again,

19         late-discovered documents, just got

20         them.  And we're looking at

21         specifications that were internal to

22         the factory, and look at this.  It

23         says board with dimensions and so that

24         3660x1220x12.7-millimeter, that's the

25         metric equivalent of the U.S. drywall.

Case 2:09-md-02047-EEF-MBN  Document 22380-37  Filed 12/02/19  Page 106 of 344
Case 1:14-cv-22408-MGC  Document 23  Entered on FLSD Docket 04/29/2019  Page 75 of 281
March 11, 2019

```
 1          I guess their machines ran off of
 2      millimeters.
 3          So 12-foot by 4-foot by -- I'm
 4      sorry, 12-foot by 8-foot by half an
 5      inch thick, that's 3660x1220x12.7mm.
 6      So this is clearly going to the United
 7      States.  I'm just going to steal one
 8      of my colleague's thunder, because
 9      Patrick stole a couple of my things.
10          But IMT, we're going to point
11      that -- that's one of the issues that
12      we have here.  So we know this is
13      going to have a specific marking.  But
14      look here at the spray markings that
15      are attached to the document.  Produce
16      them.  We want to see what your
17      instructions were for the spray
18      marking so we can have them.
19          Answer:  The information of the
20      spray marking that is attached for the
21      use of the worker who inputs the
22      information, when they're done with
23      the information, the piece of paper is
24      thrown away.  This is our common
25      practice.
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 107 of 344
Case 1:14-cv-22408-MGC Document 29-1 Entered on FLSD Docket 04/29/2015 Page 76 of 281
March 11, 2019

1        I come back to the slide

2        Patrick showed you with the 12 columns

3        of information down to, you know,

4        where it was made, when it was made,

5        the cost, et cetera.  They've got

6        their internal records when they want

7        them for their purposes.

8            When we ask for records,

9        everything either never existed or was

10       thrown away.

11           I'm going to go off on a

12       tangent for one second and say these

13       are the markings on the boards, but

14       the edge tape that goes along the side

15       where they said Taihe -- they admitted

16       that one because that was their

17       standard tape they used over and over

18       again, it's in product catalogs.  You

19       can't miss it.

20           But we asked them, where's the

21       rest of the documents for what you

22       printed on other edge tapes?  Like

23       they made a specialty tape for Venture

24       Supply.  Show us how you made the edge

25       tapes for U.S. customers.

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 108 of 344
Case 1:14-cv-22408-MGC Document 234 Entered on FLSD Docket 04/29/2019 Page 77 of 281
March 11, 2019

1              In the deposition of Mr. Che,

2        he told me that the separate factory

3        that made the tapes had no computers,

4        so they couldn't take an e-mail.

5        There were no records of what they

6        made.  And the way they would know

7        what to print was that somebody would

8        call them on the phone and tell them

9        to print tape, that they wouldn't

10       write it down anywhere, and there were

11       no permanent records.

12             So you've got a warehouse

13       producing millions of miles of edge

14       tape with no e-mails, no computers and

15       no filing cabinets.  And that was the

16       document production for the edge tape

17       examples.

18             So we got no spray marking

19       documents and we got no edge tape

20       documents.

21             In conclusion, the plaintiffs

22       would ask that as the day unfolds with

23       respect to these individual so-called

24       buckets and the issues thrown back and

25       forth about burden of proof and what

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 109 of 344
Case 1:14-cv-22408-MGC Document 23-1 Entered on FLSD Docket 04/29/2015 Page 78 of 281
March 11, 2019

```
 1          has been shown versus not, that the
 2          Court take into account not only
 3          Mr. Montoya's description of the
 4          practices as found by Judge Fallon of
 5          delay and obfuscation by the
 6          defendant, but also take into account
 7          the incredible lengths that the
 8          plaintiffs have gone to to try and
 9          find this information from them, to
10          build the mug shot book to have every
11          picture so that we can compare
12          markings and do a fair assessment,
13          when we're told that we get two boards
14          that you can actually read the photo
15          of and that's it, despite ten years of
16          effort.
17               So that when we show that
18          enough drywall that says MEET OR
19          EXCEEDS was sent by Taishan into
20          Florida to make thousands of homes,
21          and that we have those markings, that
22          they haven't shown that anybody else
23          in China ever sent a board out that
24          said that, that when they argue that's
25          not enough, other people could have
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 110 of 344
Case 2:14-cv-02408-MGC Document 28-4 Entered on FLSD Docket 04/29/2019 Page 79 of 281

March 11, 2019

```
 1          done it, that the special master takes

 2          into consideration, we asked at every

 3          step for this information, and we're

 4          getting implausible answers like, oh,

 5          yeah, those documents that we had for

 6          spray markings, we threw those away.

 7          Never had a document for edge tape,

 8          and we could only find two samples in

 9          2018, nine years after Judge Fallon

10          issued an order saying everyone

11          preserve physical evidence in this

12          case.

13               And find that we have satisfied

14          our burden of moving forward with

15          proof that they made a drywall with

16          the markings that we claim, and that

17          the inference based on their conduct

18          should be that unless they can

19          disprove it, that's their drywall.

20               Thank you.

21               SPECIAL MASTER LEE:  I have one

22          question.  Did plaintiff ever obtain

23          the earlier marking manuals, either

24          for China-produced drywall or U.S.

25          directly?
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 111 of 344
Case 2:14-cv-22408-MGC Document 25 Entered on FLSD Docket 04/29/2015 Page 80 of 281
March 11, 2019

     1              MR. SERPE:  We had the manual

     2         itself in Chinese produced to us from

     3         2015.  Now, the earlier manuals --

     4              MS. DUGGAN:  We were told

     5         that -- Christy can correct me if I'm

     6         wrong, that they overwrote them as

     7         they revised them and there is no

     8         longer an earlier version; is that

     9         correct?

    10              MS. EIKHOFF:  You had the

    11         earlier manuals from -- that were

    12         produced in 2012, and that was the

    13         basis of your request for the

    14         manuals -- you had, I guess, one of

    15         them, right?  You had one of the

    16         manuals.  That was the basis of your

    17         request the Thursday before the

    18         Tuesday deposition for the manuals

    19         that were referenced in what you had.

    20              SPECIAL MASTER LEE:  That's not

    21         what he said.

    22              MS. ROBERTSON:  Can I please

    23         clarify?

    24              I think this was unfortunately

    25         some wires got crossed.  We had

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 112 of 344
Case 2:14-cv-02408-MCE Document 23 Entered on FLSD Docket 04/29/2015 Page 81 of
281
March 11, 2019

```
 1           pulled -- we had a document that was

 2           produced to us.  It referred to two

 3           manuals.  We asked for the two

 4           manuals --

 5                    SPECIAL MASTER LEE:  What was

 6           the date of that document?

 7                    MS. ROBERTSON:  That document

 8           was dated 2009, I believe.

 9                    MS. EIKHOFF:  And it was

10           produced in 2012 by Taishan's prior

11           counsel.

12                    MS. ROBERTSON:  Correct.  And

13           it referred to these two manuals.  We

14           asked for the two manuals that were

15           referred to in the document.

16                    I think that potentially where

17           there's a little bit of -- where we're

18           not having a meeting of the minds is I

19           think that you were just representing

20           is that one of the attachments to that

21           2009 e-mail was one of the -- one of

22           the documents we sought.  And we

23           didn't read the document to be that

24           way.

25                    MS. EIKHOFF:  Okay.
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 113 of 344
Case 1:14-cv-22405-MGC Document 25 Entered on FLSD Docket 04/29/2015 Page 82 of
281
March 11, 2019

1          MS. ROBERTSON:  We read the

2      document to refer to two manuals that

3      we only received the later versions

4      of.

5          MS. EIKHOFF:  Okay.

6          MS. DUGGAN:  But am I correct

7      that you've represented to us that the

8      earlier versions of these manuals have

9      been overwritten over time, so they

10     don't exist?

11         MS. EIKHOFF:  That's right.  We

12     have the current versions of the

13     manuals and the declaration --

14         MR. SERPE:  For domestic --

15         MS. EIKHOFF:  For domestic,

16     that's right.

17         MR. SERPE:  There was never a

18     separate manual for American-sized or

19     U.S. imports.

20         MS. EIKHOFF:  And I'm sorry for

21     talking over you.  Sorry.  And I

22     apologize to the court reporter too.

23         But you're right, there was

24     never a separate manual that would

25     govern foreign sales, foreign

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 114 of 344
Case 1:14-cv-22408-MGC Document 25 Entered on FLSD Docket 04/29/2015 Page 83 of 281
March 11, 2019

```
 1          markings.  So the manuals that were

 2          produced relate to Chinese domestic

 3          practices.

 4               MR. SERPE:  Subject to our

 5          suggestion to the special master that

 6          that's implausible.  That didn't

 7          happen.  And this is another example

 8          that everything they do is highly

 9          detailed, except when it benefits them

10          not to have a manual, not to have

11          documents, not to have attachments,

12          and then they disappear.

13               As they indicated, all the way

14          back to 2009, they were going to do,

15          only send beneficial documents.  What

16          does that mean?  Don't send the ones

17          that hurt us.

18               SPECIAL MASTER LEE:  Okay.  So

19          why don't we take a five-minute break,

20          and we'll turn it over to defendant.

21               MS. EIKHOFF:  Sounds great.

22               (Recess taken, 10:58?a.m. to

23          11:07?a.m.)

24               MS. EIKHOFF:  Ms. Lee, I've

25          already introduced myself.  I'm
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 115 of 344
Case 1:14-cv-22408-MGC Document 259 Entered on FLSD Docket 04/29/2015 Page 84 of 281
March 11, 2019

1       Christy Eikhoff of Alston & Bird.
2       Alston & Bird has represented Taishan
3       since 2015 when Taishan came back into
4       the litigation after they had taken a
5       break from -- they broke from their
6       prior counsel in the case.
7            And Mr. Taylor, my partner
8       Mr. Taylor, Mr. Venderbush, we have
9       been working on this case for the last
10      four years plus.  And on the day that
11      we came into Judge Fallon's courtroom,
12      which was March 17th, 2015 was when we
13      first physically appeared in his
14      courtroom, and we stood up and said to
15      Judge Fallon that Taishan was coming
16      back into the litigation to find out
17      who did they owe and how much did they
18      owe them.
19           Taishan understands it's in
20      default.  Taishan does not contest
21      jurisdiction in Florida.  And that has
22      been our focus over the four-plus
23      years that we've been involved in this
24      case, and that is our focus here today
25      to find out who had Taishan drywall

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 116 of 344
Case 2:14-cv-22408-MGC Document 23 Entered on FLSD Docket 04/29/2019 Page 85 of 281

March 11, 2019

```
1        and how much should the damages be.
2        That's what we're here to do.
3             Now, what the plaintiffs have
4        focused on today is exactly what we
5        predicted they would focus on, and we
6        said it in our brief; that they're
7        going to come in and hammer two themes
8        home.
9             One theme that they will hammer
10       is that there were only ever two
11       Chinese drywall manufacturers that
12       sent goods into the U.S.  There was
13       Knauf, who we settled with, and then
14       there was Taishan, who should be
15       responsible for everything else that's
16       not Knauf.
17            And that myth, as we said in
18       our brief and as we'll go through in
19       more detail today, is demonstrably
20       false.  There were other Chinese
21       drywall manufacturers that sent goods
22       into the marketplace.  We'll get into
23       that in just a few slides.
24            But what they've spent the
25       lion's share of their time today doing
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 117 of 344
Case 2:14-cv-22408-MCE Document 25 Entered on FLSD Docket 04/29/2019 Page 86 of 281
March 11, 2019

```
 1              is to paint Taishan as a bad actor, to
 2              say Taishan's a bad guy, the company
 3              is full of bad guys, and they've been
 4              bad guys in this litigation; and
 5              therefore, they shouldn't get a fair
 6              shake.  We should just assume that
 7              they're responsible for everything,
 8              unless they can affirmatively disprove
 9              it.
10                   There's a lot of problems with
11              that approach, and we're going to go
12              through those too.  But one of the
13              problems is you cannot take at face
14              value their characterizations of
15              Taishan's conduct and Taishan's
16              motives in this litigation.  Some of
17              their renditions of what has happened
18              is misleading.
19                   In particular, a point that
20              Mr. Montoya made, he said that we lied
21              to the Fifth Circuit.  Not going to be
22              delicate about it, Taishan lied to the
23              Fifth Circuit.  That is what he told
24              you.  That is not true.  That did not
25              happen.
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 118 of 344
Case 2:17-cv-22408-MGC Document 29, Entered on FLSD Docket 04/29/2019 Page 87 of 281
March 11, 2019

 1              As Mr. Montoya explained, there

 2         are two related defendants that are

 3         called Taishan.  There is Taishan

 4         Gypsum, TG, and then Taian Taishan

 5         Paperboard, TTP.  TTP is a subsidiary

 6         of TG, and for purposes of this

 7         litigation, we do call them both

 8         Taishan.  We tend to merge them

 9         because, for all practical purposes,

10         the liability is ultimately going to

11         be the same.  But they're two separate

12         companies.

13              And so these two separate

14         companies, TG and TTP, submitted in

15         the MDL two separate Manufacturer

16         Profile Forms, or MPFs.  One of the

17         Manufacturer Profile Forms was for

18         TTP, one for TG.

19              TTP's Manufacturer Profile Form

20         has a big exhibit to it, and it's a

21         chart, and you've seen it and you'll

22         see more of it; the chart that lists

23         each of the sales of the drywall in

24         American sizes and who ordered it,

25         what the sizes were, what the spray

Case 2:09-md-02047-EEF-MBN  Document 22380-37  Filed 12/02/19  Page 119 of 344
Case 2:14-cv-02408-MSG  Document 23  Filed 04/29/2019  Page 88 of 281

March 11, 2019

1      markings were, what the edge tape was.

2             But TG only made two sales ever

3      to a U.S. company, and both of those

4      sales were to Venture Supply, a

5      category that we have admitted.

6             So here's Taishan Gypsum's

7      Manufacturer Profile Form from the

8      case.  It is not attached to what the

9      plaintiffs submitted, and frankly,

10     it's not attached to what we submitted

11     because Venture Supply is not at

12     issue.  That's not a disputed

13     category, so there really wouldn't be

14     any reason for them to show TG's

15     Manufacturer Profile Form with these

16     two sales.

17            But the quote that he showed

18     you from the Fifth Circuit was a quote

19     that said TG made two sales to a U.S.

20     company.  That is true.  It was to

21     Venture Supply.

22            So I use that as an example of

23     how careful you should be in accepting

24     some of the characterizations of our

25     client, mischaracterizations of our

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 120 of 344
Case 1:14-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2015 Page 89 of 281
March 11, 2019

1        client.

2            So they can be misleading, but

3        more importantly here, they're

4        irrelevant, because under the law, the

5        factfinder, the adjudicator, which is

6        the situation that you have been

7        commissioned to be, cannot be

8        prejudiced by thinking that someone's

9        a bad guy or a good guy.

10            Your job is to look at the

11        facts and the evidence and to make

12        decisions based on what the facts and

13        the evidence show, not the paint with

14        which a party has been colored as a

15        bad guy or a good guy.

16            And the reason that the

17        plaintiffs spend so much time

18        hammering these two themes, we

19        believe, is because it is -- they're

20        replacing those themes for evidence.

21            If they have an evidentiary gap

22        where they can't prove that Taishan

23        made the drywall that's at issue, then

24        they want to fill that gap with

25        presumptions that Taishan is a bad

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 121 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/29/2019 Page 90 of 281
March 11, 2019

```
 1          actor and a presumption that Taishan's
 2          the only other manufacturer out there
 3          who could have possibly made this, so
 4          let's just assume it was Taishan.
 5               Now, plaintiffs acknowledge
 6          Florida law that they have the burden
 7          of proof and that their burden of
 8          proof is to show by the greater weight
 9          of the evidence that these boards are
10          manufactured by Taishan.
11               This is from the plaintiffs'
12          brief, and it is a correct statement
13          of the law:  The determination before
14          the special master is governed by the
15          greater weight of the evidence
16          standard.
17               That is correct, and Mr. Serpe
18          at the beginning of our proceedings
19          today, said we bear the burden of
20          proof, and so that's why we think we
21          should have a rebuttal.  That's a fair
22          point.
23               But then from that clear and
24          correct statement of Florida law, they
25          take a bizarre pivot to say but you
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 122 of 344
Case 1:14-cv-22405-MGC Document 25 Entered on FLSD Docket 04/29/2015 Page 91 of 281
March 11, 2015

```
 1          should change Florida law.  Adjustment

 2          should be made to the burden of proof.

 3          And Mr. Montoya said explicitly, the

 4          burden of proof should be flipped

 5          here.

 6                 Special Master Lee, you don't

 7          have the authority to flip the burden

 8          of proof.  You don't have that

 9          authority as the special master, but

10          more importantly, Judge Cooke doesn't

11          have that authority.  No district

12          court has that authority.  And this

13          has been tried before in the product

14          ID setting.

15                 The Eleventh Circuit in the

16          Blackston case, that was a case that

17          involved asbestos, another product

18          that caused a lot of harm to a lot of

19          people over a lot of years and a lot

20          of litigation, and aggravation on

21          behalf of all of the parties involved

22          in the courts.  Asbestos has been a

23          litigation nightmare.

24                 And so there was a plaintiff in

25          the Blackston case that said to the
```

1        court, similarly to what the

2        plaintiffs are saying here today:

3        This isn't fair that we should have to

4        prove that you made this asbestos.

5        It's too hard.  It's too difficult.

6        There aren't enough records, there's

7        not enough identifying features.

8              We think there should be a

9        rebuttable presumption that the

10       defendant made this asbestos and make

11       the defendant rebut it.  If they can't

12       rebut it, then it's theirs.

13             And the Eleventh Circuit said

14       you can't do that.  Even if you've

15       been litigating a lot of years, even

16       if the records aren't great, even if

17       it's hard.  The burden of proof is

18       still on the plaintiff.

19             Now, plaintiffs have cited to

20       no Florida law that would allow this

21       court or you to change the burden of

22       proof.  They cited to the law what the

23       burden of proof is.

24             Now, we all know that under

25       Rule 37 there are times when an

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 124 of 344
Case 1:14-cv-22405-MGC Document 25 Entered on FLSD Docket 04/29/2015 Page 93 of 281
March 11, 2019

1    adverse inference can be imposed by a

2    court, but Rule 37 adverse inferences

3    are governed by a very concrete set of

4    judicial principles and rules that are

5    not invoked here.

6        The plaintiffs haven't moved

7    for a Rule 37 sanction.  As we have

8    explained, no spoliation occurred

9    here, and they have admitted that our

10   recordkeeping was in the normal

11   course.

12       When Mr. Serpe was selling you,

13   oh, they got these slips of paper and

14   then they input them in the machine

15   and then they just threw them away.

16   Yeah, because it was a piece of paper

17   in a factory, and they threw it away

18   in the normal course.  They didn't

19   know there was any U.S. litigation.

20   This was in China in 2006.  They

21   didn't know that there was going to be

22   litigation over it.

23       And we cited in our brief

24   Eleventh Circuit law and all law is

25   clear on this issue.  Unless and until

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 125 of 344
Case 1:09-cv-22408-MGC Document 25 Entered on FLSD Docket 04/29/2019 Page 94 of 281
March 11, 2019

```
 1        you know that there's a claim being

 2        brought, you don't have to save every

 3        piece of paper, and they didn't.  So

 4        no adverse inference can flow from

 5        that.

 6             And Mr. Montoya, as we

 7        expected, told stories about how bad

 8        things were in Hong Kong in 2012 and

 9        everybody was agitated, the judge was

10        agitated.  That was years ago, and

11        Judge Fallon has dealt with that.

12        Those were in his court.  They were

13        his issues to deal with and he has

14        dealt with them.  The Peng issues that

15        you heard about, Judge Fallon dealt

16        with that.

17             There have been times in this

18        litigation, even since we've come in,

19        where we've had to deal with some

20        discovery issues and sometimes --

21        sometimes the plaintiffs have won

22        those issues, sometimes we've won.

23        There's been some back-and-forth, as

24        you would expect.

25             But that's not before you
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 126 of 344
Case 1:14-cv-22408-MGC Document 23 Entered on FLSD Docket 04/29/2019 Page 95 of 281
March 11, 2019

1    today, and that cannot change the

2    burden of proof.  The fact that there

3    have been discovery issues in the past

4    that another judge dealt with, that

5    doesn't change the burden of proof.

6    That doesn't flip the burden as

7    they're asking you to do.

8            So they didn't refer to it

9    today, but they talk about the Tariff

10   Act of 1930.  Same thing.  It's not --

11   that can't flip the burden.  And so

12   there's no basis under Florida law

13   that says that a violation of a 1930

14   statute would shift the burden of

15   proof.

16           And I want to move past this

17   because they didn't spend much time on

18   it, so I don't want to spend more time

19   on it than they do, but I will say

20   this:  Even if the word "China" had

21   been printed on some of the boards,

22   that obviously doesn't resolve the

23   product ID issues, because we have

24   product ID disputes about boards that

25   say "China" on them.  So it would not

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 127 of 344
Case 2:14-cv-02408-MSG Document 23 Filed on 51/19 Docket 04/29/2019 Page 96 of 281
March 11, 2019

1        shed any more light on whether Taishan

2        made the boards or not.

3             Now, let me turn away for a

4        minute from their characterization of

5        Taishan as a bad actor and talk about

6        this myth, pervasive myth, that if

7        it's not Knauf, then it must be

8        Taishan.

9             So we laid this out in our

10       brief, and I'll explain it again

11       today, that there have been two

12       Chinese manufacturing defendants that

13       were served and that appeared in this

14       litigation:  Knauf and then Taishan

15       and BNBM -- so three, but we're

16       talking about Taishan today, okay?

17            And what the plaintiffs have

18       done and the myth that's been created

19       and perpetuated over the course of

20       this litigation is, well, Knauf put

21       their name on their boards, and so

22       Knauf boards are Knauf's.  Knauf

23       settled those cases a few years ago,

24       and so now, everything else we have

25       that we think is Chinese drywall must

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 128 of 344
Case 1:14-cv-22408-MGC Document 23 Entered on FLSD Docket 04/29/2015 Page 97 of 281
March 11, 2019

1       have been made by Taishan.

2               But plaintiffs know that there

3       are other Chinese drywall

4       manufacturers besides Knauf and

5       Taishan and BNBM.

6               Mr. Serpe today referred to who

7       is this third bogeyman.  Who else

8       could possibly have made this drywall

9       if not Taishan?  They asked the

10      question in their brief:  If the

11      drywall is not Knauf's and, as Taishan

12      claims, it is not Taishan's, it begs

13      the question whose drywall is it, as

14      if this is an unanswerable question.

15              But they know the answer to

16      this question because they sued other

17      Chinese drywall manufacturers.  They

18      sued them, but they did not pursue

19      them.

20              And so you will see today as we

21      go through the specific categories

22      that there is another major Chinese

23      drywall manufacturer in China that's

24      called Shandong Chenxiang Building

25      Materials.  Today we're going to call

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 129 of 344
Case 2:09-cv-22408-MCE Document 23 Entered on FLSD Docket 04/29/2019 Page 98 of 281
March 11, 2019

1    it Chenxiang or C&K.  There's Pingyi
2    Baier.  We're calling them Baier.
3    There's Tai'an Kangyija Building
4    Materials.  We'll call them Kang Yi
5    Jia.
6         These are just some of the
7    other manufacturers that we know made
8    drywall that came into the United
9    States and that we know the plaintiffs
10   sued because they're named on the
11   early complaints.
12        But instead of pursuing those
13   other manufacturers, they've had their
14   eyes on Taishan, and with that blinder
15   vision are now saying Taishan made
16   everything.  Unless it says Knauf, you
17   should assume that Taishan made it.
18   You should find that Taishan made it.
19        But it's not just the
20   plaintiffs that know about these other
21   manufacturers.  The government
22   agencies of the United States know
23   that there are other manufacturers.
24   So when there was -- when the problem
25   with Chinese drywall arose in the 2008

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 130 of 344
Case 1:14-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2015 Page 99 of 281
March 11, 2019

 1        and '9 time period, and it became --

 2        as Mr. Montoya said, it was really the

 3        first time Chinese drywall had ever

 4        come into the United States because

 5        drywall supply had always been handled

 6        domestically until that point, until

 7        the circumstances created a shortage

 8        of domestic supply and forced builders

 9        and drywall suppliers to go outside of

10        the U.S. for their drywall needs.

11            So when this problem arose, the

12        Consumer Product Safety Commission did

13        a study into the drywall -- Chinese

14        drywall issue, and they identified

15        other manufacturers, including

16        Chenxiang and including Baier.

17            And the Housing and Urban

18        Development Agency also did a study.

19        Theirs came later than the CPSC study

20        and it is our understanding from

21        reading those reports that they relied

22        on some of the data that had been

23        collected by the CPSC, and they

24        concluded that 6,229,166 boards of

25        drywall from China came into the

Case 2:09-md-02047-EEF-MBN   Document 22380-37   Filed 12/02/19   Page 131 of 344
Case 2:11-cv-22408-MCE   Document 253   Filed 04/25/2013   Page 100 of
281
March 11, 2019

1    United States in the 2005 to 2007 time

2    frame, and by the way, the vast

3    majority came in in 2006.  That was

4    the year that it really came in.

5         What we've done is we've said,

6    well, this is the volume -- these are

7    the three defendants that the

8    plaintiffs have pursued.  This is the

9    volume that Knauf has reported.  This

10   is the volume Taishan reported.  This

11   is the volume BNBM reported.

12        And so that leaves about 22% of

13   the marketplace supplied by other

14   Chinese drywall manufacturers that

15   aren't one of the three defendants

16   that actively have been involved in

17   this litigation.  So that's more than

18   a fifth of the marketplace are other

19   Chinese drywall manufacturers.

20        Who is in this piece of the

21   pie, Chenxiang, Baier, Kang Yi Jia,

22   and countless others, smaller

23   manufacturers, some whose names we

24   know, some we don't know.

25        So there was a statistic that

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/03/19 Page 132 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 101 of 281
March 11, 2019

1    was used in the plaintiffs' opening

2    that Taishan has only admitted to 15%,

3    only 15%, and I think there was maybe

4    a little bit of -- the way the numbers

5    were presented perhaps didn't tell you

6    the full story; and so we thought --

7    we were scratching our heads, because

8    here we are at a PID, categorical PID

9    hearing, and we're looking at how much

10   of this PID we've admitted by category

11   and how much we're still disputing.

12        And if you look at how much of

13   the boards, according to the

14   plaintiffs' numbers, fall into the

15   categories that we have admitted, we

16   have admitted 47% of the boards by

17   category, almost half.

18        Keeping in mind we were 31% of

19   the marketplace, but we have admitted

20   almost half of these boards by

21   category so they can tell you how they

22   got to 15%.

23        What I surmise, based on what I

24   heard, is they looked at other

25   objections, nonproduct ID objections

March 11, 2019

1          that we have asserted.  We do have

2          other defenses.  We'll get to those on

3          another day, they're not what we're

4          here for.

5                What we're here for today is to

6          determine product ID by category, and

7          within those categories, our

8          admissions of those categories cover

9          almost half of the boards that are

10         being presented to you.

11               So speaking of those other

12         defenses and other stages of your

13         adjudication as a special master, we

14         wanted to reiterate a point that we

15         made in our brief, but that's

16         important today.

17               So today's hearing is about the

18         categorical PID attribution.  I like

19         to think of that as the macro

20         determination, whether certain big

21         categories can be rightfully

22         attributed to Taishan with the

23         plaintiffs' proof by the greater

24         weight of the evidence, and which ones

25         there is insufficient proof to

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 134 of 344
Case 2:14-cv-24008-MCE-TEC Document 253 Filed 04/25/2019 Docket 04/25/2019 Page 103 of 281
March 11, 2019

1        attribute the whole category to

2        Taishan.

3              Now, there still will need to

4        be, in some cases, a claim-specific

5        determination of whether the

6        claim-specific proof falls into that

7        category.  So let me give you an

8        example.

9              Taihe edge tape, as Mr. Montoya

10       told you, is a product ID marking that

11       we admit is ours, and I know that

12       there's been some things come up about

13       maybe it's counterfeit, maybe it's

14       not.

15             For purposes of this

16       litigation, we have said this Taihe

17       edge tape is ours, and we're going to

18       concede for litigation purposes that

19       it's ours, even if maybe it was

20       counterfeited, it doesn't matter.  If

21       it looks like this, we are taking

22       responsibility for it.

23             It says Taihe in English, by

24       the way.  These characters have our

25       brand name in Chinese.

Case 2:09-md-02047-EEF-MBN Document 23380-37 Filed 12/02/19 Page 135 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 104 of 281
March 11, 2019

1          But some of the proof for some

2      of the specific claims aren't this

3      clear, and so this is an example of

4      one of the claims that the plaintiff

5      says, well, this is Taihe edge tape,

6      and you just see a little piece of

7      tape and a little line of blue.

8          And we object to that because

9      we say if this is all you've got,

10     this, to us, is not enough to prove

11     that this is a Taihe product.

12         We have identified those

13     objections on our claim-specific

14     contest.  We've done the preliminary.

15     We're going to do the final.  We are

16     working with the plaintiffs' side to

17     try to resolve as many of those

18     differences as we can, but

19     undoubtedly, there may be some, a few

20     at the margins, where we're going to

21     need a claim-specific proof

22     determination made of whether it falls

23     into the category or not.

24         So this is step one of PID, and

25     that second step will come in those

1          subsequent proceedings.

2                    So at this point, we are ready

3          to get into the claim-specific

4          categories and as we laid them out,

5          these are the ones that are in

6          dispute.

7                    Category I and J are the

8          generic categories that are partially

9          contested, and we will -- have agreed

10         to take them in order as they're laid

11         out.  Do you have any questions for

12         me, Ms. Lee?

13                   SPECIAL MASTER LEE:  Do we know

14         anything about any markings used by

15         the other Chinese drywall

16         manufacturers or has that not been

17         discovered?

18                   MS. EIKHOFF:  That's a very

19         good question.  We have records that

20         we have obtained and we will show you

21         that demonstrate what the other

22         manufacturers were doing in the

23         marketplace, but we do not have

24         detailed information about exactly

25         what their markings looked like

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 137 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 106 of 281
March 11, 2019

1      because they were never pursued in

2      this litigation.

3            And so if they had been

4      pursued, let's say that they had been

5      served and they came into the U.S.

6      litigation, like Taishan and BNBM and

7      Knauf did, they would have a

8      Manufacturer Profile Form, and their

9      Manufacturer Profile Form would do

10     what TTP's did and itemize each order

11     and describe the spray markings on the

12     side and describe what was on the end

13     tape.  But because they were never

14     pursued as defendants, we don't have

15     that.

16           So that's one of the ways that

17     the plaintiffs have tried to flip the

18     script and say we sued you, you gave

19     us a list of what you did, and now

20     we're going to say it must be you

21     because we see this generic marking on

22     your form, so it must be you.  It must

23     be you.  You said that you produced

24     some blank boards.  All blank boards

25     must be you.

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 138 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 107 of 281
March 11, 2019

 1              Well, that's not enough,

 2         especially when, as you will see as we

 3         go through the evidence, the evidence

 4         will show that it is more likely than

 5         not and sometimes incredibly

 6         compelling showing that the drywall at

 7         issue that they're putting to Taishan

 8         was made by another specific

 9         manufacturer, ones that we can

10         identify and ones that they could have

11         pursued and didn't.

12              SPECIAL MASTER LEE:  And how

13         does the defense propose that we

14         resolve the edge tape issues if, as

15         the plaintiff says, the edge tape is

16         typically removed during installation

17         of the drywall?

18              MS. EIKHOFF:  So the way that

19         the PID claim-specific determinations

20         have been made is to look at whatever

21         product ID documentation is available,

22         and so the decisions have to be made

23         based on what was provided at the

24         time.

25              SPECIAL MASTER LEE:  Okay.

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 139 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 108 of 281
March 11, 2019

1          Now we're going to go through

2     specific categories, and we're going

3     to have to switch back and forth.

4          MS. DUGGAN:  I wanted to know

5     if I could just make one clarification

6     with regard to the defendants at issue

7     in this case, and I don't think

8     Ms. Eikhoff would disagree with me.

9     There's TG, as we refer to as Taishan

10    Gypsum Company, and TTP, Taihe Taishan

11    Plasterboard Company, they were two

12    separate defendants that were sued.

13    They're both represented by Alston &

14    Bird here and previously by

15    Hogan Lovells, and there is a ruling

16    from Judge Fallon in the MDL and then

17    the Fifth Circuit Court of Appeals

18    that they are alter egos and one and

19    the same, and for that reason we refer

20    to them as Taishan and we consider all

21    the documents for both to be

22    applicable.

23          MS. EIKHOFF:  We agree with

24    that.  The quote that was given from

25    the Fifth Circuit court was in the

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 140 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 109 of 281
March 11, 2019

1    course of making that decision and

2    specifically referred to TG having

3    only two sales.

4            MR. VENDERBUSH:  And that was

5    relevant in the jurisdictional

6    setting.

7            SPECIAL MASTER LEE:  Okay.  So

8    I think you're up.

9            MR. MONTOYA:  We are if you

10   could switch the PowerPoints.  Judge,

11   I'm going to defer to Ms. Robertson

12   who's going to make the presentation

13   on C&K, and we're at slide 43 then.

14           SPECIAL MASTER LEE:  I think

15   we'll do this category and then we'll

16   get lunch.

17           MS. ROBERTSON:  All right.  So

18   the first bucket in our brief is C&K.

19   C&K is not on Taishan's Manufacturer

20   Profile Form.  C&K is not on the

21   informational reports that you heard

22   about earlier from Mr. Montoya.

23           However, plaintiffs do

24   recognize and observe that Taishan,

25   throughout the years, has acknowledged

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 141 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2019 Page 110 of 281
March 11, 2019

1      that they exported drywall to the

2      United States that they either don't

3      know what markings were on them or

4      they had unspecified markings.

5              And that's clear on the

6      Manufacturer Profile Form and that's

7      also clear on the statistical

8      spreadsheets you saw earlier.

9              Specifically at slide 7, you

10     can see that the product label column

11     is filled with unspecified, and so we

12     believe that C&K could fall in the

13     sort of unspecified, unknown category,

14     despite the fact that Taishan doesn't

15     have it on their Manufacturer Profile

16     Form.

17             C&K, the markings do read C&K

18     GYPSUM BOARD, as well as ASTM C 1396,

19     MADE IN CHINA.  I skipped up to slide

20     47 just to give you a quick overview

21     of what the markings look like.  This

22     is from an Amorin claimant's home, and

23     then the very next slide is what is in

24     the PID catalog as well as Florida

25     Amorin claimants.

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 142 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 111 of
281

March 11, 2019

```
 1              So briefly real quick, as we
 2       get into these buckets and we start to
 3       talk about markings, what happened in
 4       the course of the litigation is a
 5       claimant would suspect drywall, maybe
 6       their -- suspect Chinese drywall.
 7       Maybe their neighbor found Chinese
 8       drywall, maybe they were in a condo
 9       unit, maybe had a smell.  One way or
10       another, in 2008-2009, plaintiffs
11       started to suspect they had this
12       Chinese drywall.
13              Usually this resulted in
14       calling an inspector or calling
15       somebody in the industry to say:  Will
16       you come look at my home?  Is there
17       any indication of Chinese drywall?  I
18       have these sort of concerns.
19              So with those concerns, an
20       inspector would come, and they would
21       do a visual inspection.  The visual
22       inspection was usually looking at some
23       sort of wiring, some sort of coil,
24       anything that was sort of metal, as
25       Mr. Montoya said.  Button pushing,
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 143 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 112 of 281
March 11, 2019

```
 1         we're looking maybe even at light

 2         fixtures.  Is there corrosion on

 3         there?

 4              If there was a visual identity

 5         or perhaps there's corrosion, then you

 6         would start to do destructive testing,

 7         which would be removing boards from

 8         the home, removing chunks of boards

 9         and looking for markings.  So that's

10         why we kind of get into this marking

11         thing that comes up.

12              So the markings followed at

13         first the visual of I believe there

14         could be Chinese drywall in my home.

15         Just to give a background, it also

16         explains why sometimes we get full

17         boards, sometimes we have partial

18         boards.

19              Partial boards are usually

20         those that were more destructive

21         testing or pulled out.  Whole boards

22         are for those claimants who usually

23         did full remediation, which wasn't

24         always possible here, as we've heard.

25         There are a bunch of claimants who
```

March 11, 2019

```
 1          haven't even remediated their homes
 2          yet.  So those markings in those
 3          plaintiffs' homes aren't usually full
 4          boards because they haven't pulled
 5          those walls out yet.
 6                  So we just have some quality
 7          issues.  Just trying to get a little
 8          bit of background on that.
 9                  So back to C&K.  C&K clearly
10          shows C&K GYPSUM BOARD.  I don't think
11          there's a dispute with either side
12          that the product ID in this bucket
13          reads C&K.  We can agree on that.
14                  Our link from the plaintiffs'
15          side is through Taishan's documents as
16          well as documents that were pulled
17          from a bankruptcy proceeding.  The
18          document here at slide 44 is a
19          contract proposal between
20          International Materials Group, IMG,
21          and Shandong Taihe.
22                  It's very clear just from the
23          face of the document that you have IMG
24          desiring to do business with Taishan
25          in March of 2006 for drywall.  It is
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 145 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2019 Page 114 of 281
March 11, 2019

1    unsigned, we understand that, but the

2    TG_1292, 1293, that was from the

3    production that was produced to us in

4    2012.  Apollo Yang is a representative

5    of Taishan who did have the authority

6    to engage in contracts on behalf of

7    Taishan with United States customers.

8           So how and why would

9    International Materials Group at all

10   be relevant to Florida specifically

11   and C&K drywall?

12          So Guardian Industries was a

13   distributor defendant in this

14   litigation.  They had depositions.

15   There was potentially -- there was

16   even a settlement that kind of came

17   out.

18          Guardian is trying to figure

19   out how to get this drywall in 2006.

20   There's a need, there's a shortage,

21   and we're getting a discussion here of

22   oh, well, International Materials

23   Group, sounds like they're working

24   with Taihe.

25          Taihe is shipping product to

Case 2:09-md-02047-EEF-MBN  Document 22380-37  Filed 12/02/19  Page 146 of 344
Case 1:11-cv-22408-MGC  Document 253  Entered on FLSD Docket 04/25/2019  Page 115 of 281
March 11, 2019

1    the United States, so on, so forth.

2    We're looking for these links.  We're

3    trying to piece together what we can

4    from the documents related to C&K.

5         So just as a quick reminder, we

6    have C&K -- or sorry, we have IMG

7    dealing with Apollo, and again,

8    confirmation that this is the same IMG

9    that Guardian, a Florida distributor,

10   knows is working with Taihe.

11        We're going to go a tiny bit

12   weedy.  Unfortunately, Special Master,

13   we just kind of have to with this

14   particular bucket.

15        So this next document is a

16   contract between the seller, York

17   Supply Company, and the buyer, WCI.

18        York Supply Company has the

19   same address and common ownership as

20   IMG.  We have Steve Gordon and we have

21   Steve Gordon.  Common ownership and

22   same address came out and was

23   confirmed by their bankruptcy

24   proceedings when they went to the

25   bankruptcy with WCI.  Those are tabs

Case 2:09-md-02047-EEF-MBN Document 22380 Filed 12/02/19 Page 147 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2019 Page 116 of 281
March 11, 2019

1          to our PID brief.  They are also in

2          the C&K section, as you might recall.

3                So as plaintiffs are trying to

4          piece these puzzles together, we're

5          starting to see a little bit of

6          overlap, a little bit of similarities

7          here.  It looks like we're getting a

8          link to Taihe.  We don't have board

9          markings.  You know, they were not

10         part of the residual boards from

11         Taihe.  We have our claimants'

12         markings and then we have these

13         documents that are suggesting that

14         Taihe sold this -- sold to York Supply

15         and York Supply sold to WCI.

16               WCI only has C&K in its homes.

17         Like that's what they build their

18         homes with.  So that's how we're

19         closing the loop in a way here, what

20         we've been able to understand.

21               Now, WCI and York, they were

22         sued, but they were sued at a time

23         when WCI was already going into

24         bankruptcy or was bankrupt, so this

25         document is not part of the litigation

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 148 of 344
Case 1:11-cv-22408-MGC Document 293-1 Entered on FLSD Docket 04/25/2013 Page 117 of 281
March 11, 2019

1      here, but is a public document pulled

2      from part of the bankruptcy

3      proceedings that we're doing trying to

4      piece together our product ID for C&K.

5           Now, when we actually look at

6      the markings, which all C&K markings

7      are denied by Taishan.  We are seeing

8      that, more or less, it's C&K GYPSUM

9      BOARD with ASTM C 1396, MADE IN CHINA.

10          What plaintiffs contend is, as

11     we looked at the Venture Supply

12     markings that had so many variations

13     and there were some font similarities,

14     some similarities -- some fonts that

15     weren't similar as well as the

16     residual boards that had the MEET AND

17     EXCEED that then became similar.

18          We find that we're also finding

19     lots of similarities here because,

20     importantly, photo ID 1, which is from

21     the Taihe tape section, is admitted by

22     Taishan.  These product, these

23     markings, this font is admitted by

24     Taishan.

25          When we look here and we have a

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 149 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 118 of 281
March 11, 2019

1       denial, but we're starting to see very

2       similar sort of fonts, caps, reading

3       about kind of in the same spot of the

4       board, but, you know, again, we're

5       denied here, we don't have Taihe tape

6       like we do here.

7           But as you sort of do kind of a

8       massage out the C&K bucket and you're

9       really kind of getting into the grits,

10      we're finding the contract ties that

11      are pretty suggestive that there was

12      some dealings with Florida companies

13      with Taihe to import board.

14          Those builders were using C&K

15      to complete their homes, and then you

16      actually are starting to get a

17      comparison of it, finally an admission

18      of these markings.  And I'm comparing

19      the font.

20          Now, I can promise that, you

21      know, Taishan's position is like,

22      well, of course we're going to admit

23      this marking.  It says Taishan on it.

24      You know, and so I think we can all

25      agree that this doesn't say Taishan.

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 150 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 119 of 281
March 11, 2019

1    It says C&K.  But Taishan doesn't

2    admit to only board that only says

3    Taishan.  We're more focusing on the

4    actual font, the eyeball, and kind of

5    looking at, well, you know, it's

6    looking like we've got the same

7    printer going off and we also have the

8    board coming in at the same time that

9    we know this admitted board came into

10   Florida.

11        I think that I will want to ask

12   really quickly just with my colleague

13   to make sure I properly represented

14   the sequence of the businesses.

15        (Pause.)

16        MS. ROBERTSON:  Sorry.  Thank

17   you so much for that short pause.  I

18   just want to clarify just so it's not

19   misrepresented.  WCI has other brands

20   they did build homes with, but when

21   you have a WCI home that has C&K in

22   it, it's only C&K.  So I just wanted

23   to clarify that sort of tie.

24        So I think we'll volley.

25        MS. EIKHOFF:  Yeah.  We have to

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 151 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 120 of 281
March 11, 2019

1    volley the PowerPoint.  My C&K starts

2    on page 10.

3           In my introductory remarks, I

4    referenced a former defendant in this

5    case called Chenxiang, otherwise known

6    as C&K.  Ms. Lee, all of the evidence

7    that has been developed is that C&K

8    boards were made by Chenxiang.

9           Taishan testified that it

10   understood that C&K drywall was made

11   by Chenxiang.  Chenxiang is a

12   competitor of Taishan's.

13          The plaintiffs asked Taishan's

14   representative, well, would you ever

15   print boards with the competitor's

16   name on it?  And he said that would be

17   impossible.  We would never print

18   boards with our competitor's name on

19   it.

20          But it's not just Taishan's

21   testimony that says that C&K boards

22   were made by Chenxiang.  American

23   buyers who were deposed in this suit

24   testified that C&K boards were made by

25   Chenxiang.

March 11, 2019

1            There was a particular American

2       distributor who went out and procured

3       Chinese drywall.  The name of that

4       witness was Wood Nation.  And he was

5       asked about Chenxiang documents and

6       C&K drywall, and he said yep,

7       Chenxiang, that's C&K.

8            And he said, but I thought we

9       were here talking about Taishan sales.

10      And plaintiffs' counsel said, well, we

11      need to talk about the C&K sales too

12      because they're also a defendant in

13      this lawsuit.

14           The Consumer Product Safety

15      Commission report identifies Chenxiang

16      as the maker of C&K drywall.  We

17      provided a web link at page 27 of our

18      brief.

19           And the plaintiffs know exactly

20      who Chenxiang is because they named

21      them as a defendant in a complaint,

22      which is a point we've already made.

23           And their brief about C&K

24      markings says approximately 50,000

25      sheets of C&K drywall were shipped by

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 153 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 122 of 281
March 11, 2019

1      Chenxiang to Port Everglades in

2      July 2006.

3              So how are they possibly saying

4      that Taishan made C&K drywall?  Well,

5      their theory keeps changing, and as

6      you will see when you go back and look

7      at our brief, the theory of

8      attribution that we anticipated they

9      would make when we wrote our brief was

10     apparently the last theory of

11     attribution, and now they have

12     developed a new theory of attribution

13     that somehow ties York to IMG.

14             And you'll notice when we look

15     back at the transcript that

16     Ms. Robertson didn't even say anything

17     about C&K when she showed you those

18     documents.

19             She said, well, here you see

20     there's a proposal by IMG to buy

21     boards from Taihe and then there's

22     this other e-mail talking about IMG,

23     ordering boards from IMG.  There was

24     nothing said about C&K in any of those

25     documents or in any of those

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 154 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 123 of
281
March 11, 2019

```
 1          discussions.  And so they don't have

 2          any evidence connecting C&K.

 3               Boiling down what we have

 4          perceived their argument to be, and

 5          this wasn't all presented to you, but

 6          it's more laid out in their brief,

 7          that one buyer bought C&K drywall from

 8          Chenxiang.  That buyer was York.

 9               And then a related company

10          sought to buy other drywall from

11          Taishan.  That related company is IMG.

12          Therefore, Taishan made all C&K

13          drywall.  That's not evidence.  That's

14          not even good logic.

15               If the plaintiffs wanted to get

16          after the manufacturer of C&K drywall,

17          they should have pursued their claims

18          against Chenxiang, who all the

19          witnesses said made it, who the U.S.

20          government says made it, and Mr. Serpe

21          said at the beginning in his

22          introductory remarks, well, Knauf put

23          their name on the sides of the

24          drywall.  Maybe Taishan should have.

25               Well, so did C&K.  They put
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 155 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 124 of 281
March 11, 2019

1    their name on the side of the drywall,

2    C&K.  That's Chenxiang.

3         So the scales are so tipped

4    against the plaintiffs here, they have

5    not shown by the greater weight of the

6    evidence that Taishan made C&K

7    drywall.  The evidence shows that

8    Chenxiang did.

9         MR. MONTOYA:  Briefly, Your

10   Honor.

11        MS. ROBERTSON:  Yeah, I think

12   just briefly, I don't think I have to

13   respond to anything on there.

14        I think just briefly, I don't

15   think that plaintiffs disagree with

16   the link we're trying to make and how

17   it seems convoluted, but that's how

18   all -- not all.  That's how most

19   drywall from Taishan came into the

20   United States.

21        We can use Richard Hamm and

22   Wood Nation as an example, just as

23   Taishan's counsel did.  Richard Hamm

24   needed some drywall.  He calls up a

25   U.S. company called BNBM USA.  BNBM

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 156 of 344
Case 2:11-cv-22408-MCE Document 253 Entered on FLSD Docket 04/25/2013 Page 125 of 281
March 11, 2019

```
1          USA says, oh, yeah, I know a guy.

2     He's in China.  BNBM USA contacts

3     Taishan.

4          Taishan says, oh, yeah, we just

5     have this alter ego out there.

6     They're going to make it, but you

7     contract with BNBM.

8          TG contacts TTP.  TTP contacts

9     BNBM, they make a contract.  Richard

10    Hamm signs his contract with BNBM

11    only.

12         So all of this import of

13    drywall comes in this convoluted, why

14    are we going in these weird circles

15    with all these names.  You're saying

16    it's like Shandong Chenxiang in your

17    brief, but really Shandong Chenxiang

18    was also an exporter of drywall.

19         So it's kind of -- it's one of

20    those things where you're working with

21    the evidence, you're trying to draw

22    what you can out of it because all of

23    this drywall that comes into the

24    United States came through and touched

25    many different hands until,
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 157 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 126 of 281
March 11, 2019

1    ultimately, it ended up in a

2    plaintiff's home.  I think that that's

3    point one.

4         I think the other part that is

5    very convenient with Shandong

6    Chenxiang, particularly, Shandong

7    Chenxiang went bankrupt in 2007.  We

8    know this because Bill Cher, who is

9    also Che Gang, wrote an e-mail to a

10   U.S. customer and said:  Well, they

11   were bankrupt, they closed their

12   factory three months ago.

13        And so I think it's a little

14   bit more of the story.  We are

15   constantly digging for evidence to try

16   to lift up and support our plaintiffs'

17   homes -- or claims rather, for the

18   evidence that they have in their homes

19   that we believe is attributable to

20   Taishan.

21        SPECIAL MASTER LEE:  So does

22   the plaintiff currently have any

23   evidence of a relationship between

24   Taishan and Chenxiang?

25        MS. ROBERTSON:  I don't think

March 11, 2019

```
 1          the plaintiffs themselves have any
 2          evidence of Taishan and the Chenxiang
 3          company.  I think that the -- I think
 4          that what we have is the evidence that
 5          through the distributors, we're
 6          linking the plaintiff's home to the
 7          distributor to Shandong Chenxiang to
 8          Taishan.
 9               And it is kind of as presented
10          on the screen going through those
11          various contracts of just over time
12          they're looking for York or IMG with
13          WCI, York/IMG contacts Taishan, and
14          the drywall is coming into the United
15          States.
16               SPECIAL MASTER LEE:  And was
17          this a topic of the depositions that
18          were taken earlier this year?  And if
19          so, what was the testimony around
20          this?
21               MS. EIKHOFF:  The testimony --
22          I alluded to the testimony.  And if we
23          go back a slide, I have a specific
24          citation to it.  133 and 138.  You
25          will see the testimony of Taishan that
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 159 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 128 of 281

March 11, 2019

1    Chenxiang made C&K drywall and it was

2    a competitor, that Taishan would never

3    use their brand on anything that they

4    made.

5         MS. ROBERTSON:  Yeah, I think

6    that as far as a depo topic, was the

7    relationship of Taishan and Chenxiang

8    a depo topic?  No.  Product ID was the

9    depo topic.  And so C&K by, I guess,

10   reference, was the depo topic.

11        But I don't believe the depo

12   notice read the relationship between

13   Taishan and Chenxiang.

14        MS. EIKHOFF:  No, but it did

15   ask for manufacturers that may have

16   made drywall at issue.

17        SPECIAL MASTER LEE:  And how

18   much of the product falls into this

19   category?

20        MS. ROBERTSON:  I think there's

21   50 homes.

22        MS. DUGGAN:  50 homes.

23        SPECIAL MASTER LEE:  Thank you.

24        I think lunch is here.  Do you

25   want to take a break for lunch?

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 160 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2019 Page 129 of 281
March 11, 2019

```
 1              (Recess taken, 11:59?a.m. to
 2         12:45?p.m.)
 3              MS. ROBERTSON:  We are moving
 4         on to the next bucket, which is
 5         IMT Gypsum.  IMT Gypsum does appear on
 6         Taishan's manufacturer profile forms,
 7         which was Tab 11 to our PID brief.  It
 8         appears on several different lines,
 9         and Taishan admits through its
10         Manufacturer Profile Form to
11         manufacturing 206,595 sheets of
12         drywall with both blue and white edge
13         sealing tape, IMTGYPSUM, and spray
14         markings with DRYWALL
15         4feetX12feetX1/2inch.
16              Highlighted here are lines 110,
17         111 and 112 showing that they used the
18         exporter Beijing Building Material
19         Import & Export Company and the
20         quantity -- or the drywall had
21         markings on the edge sealing tape and
22         markings on the board itself.
23              Prior to the deposition in
24         2019, Taishan produced a package of
25         sales notification plans.  The entire
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 161 of 344
Case 2:11-cv-22408-MCE Document 233, Proffer report, Docket 04/25/2019 Page 130 of
281
March 11, 2019

```
1        package is found at Tab 15 of our
2        product identification brief.  That is
3        the Chinese version, followed by the
4        English version, which was a
5        translation by Taishan's counsel's
6        vendor.  I didn't want to misstate.
7              MS. EIKHOFF:  Yes.
8              MS. ROBERTSON:  The PSC had a
9        couple of issues with some of the
10       translations, so we haven't come to an
11       agreement with that yet, but that is
12       just kind of a little background,
13       Counsel, if you want to add one
14       qualifier.
15             MS. EIKHOFF:  Yeah.  Actually,
16       for the sales plan notification, those
17       translations were done in-house.  We
18       did not have a vendor for the sales
19       plan notification translations.
20             MS. ROBERTSON:  Okay.  Thank
21       you.
22             So just days before the
23       deposition, in response to the
24       deposition notice and the request for
25       production, we get the sales plan
```

March 11, 2019

1      notifications.  They were not

2      previously produced at any other time

3      in this litigation.

4           When asked about where these

5      sales plan notifications were found,

6      how they were found, where they were

7      held, Taishan's corporate

8      representative testified that he --

9      you know, he worked very diligently,

10     searched very, very hard and long for

11     responsive documents to prepare for

12     his deposition in 2019 and found a

13     cabinet that had a lot of paperwork,

14     and he and a colleague went though

15     this cabinet, found these sheets,

16     which I think totals 24 sales plan

17     notifications total, and gave them to

18     their lawyers.  They were translated

19     and produced I think somewhere around

20     the 19th of January of 2019.

21          The sales plan notification is

22     very important to the IMT bucket

23     because Taishan's own documents show

24     that they did, in fact, manufacture

25     IMT Gypsum, as is consistent with

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 163 of 344
Case 1:11-cv-22408-MGC Document 293-1 Entered on FLSD Docket 04/25/2013 Page 132 of 281
March 11, 2019

1    their Manufacturer Profile Form.

2         So the sales plan notification

3    is from the sales company to the

4    management department, all done

5    in-house, in-house document saying,

6    hey management department, we have

7    gotten a sales plan.  This is for --

8    this is the quantity, this is the

9    standard, and this is the specific

10   requirements.

11        The words are missing here.

12   There should be 6560 sheets and 1920

13   sheets for the respective different

14   sizes.

15        So we talked a lot with Mr. Che

16   about these sales plan notifications.

17   He said this is all he could find.  He

18   could only find these 24.  But we see

19   here for IMT specifically, we need to

20   have the specific edge tape that says

21   IMTGYMSUM.  Unfortunately, there's a

22   typo.  That typo is also in the

23   Chinese version.

24        We do know from Taishan's

25   Manufacturer Profile Form it is IMT

March 11, 2019

1      Gypsum.  I don't think there's much

2      dispute over the fact that there's a

3      typo here in the specific requirement.

4          We'll note, though, that one

5      thing in the specific requirements is

6      back to those spray markings.  We have

7      one type of board being manufactured

8      here with no markings but with tape,

9      and another part of the order is

10     attached spray markings.  There's no

11     attachment.

12         The attachment here is what you

13     heard from my colleague earlier.

14     Those were those sheets given to the

15     spray marking workers that were thrown

16     away.

17         You know, so unfortunately,

18     we're left with this implication that

19     we have a spray marking on IMT Gypsum

20     board, Taishan gave specific

21     instructions regarding that spray

22     marking, and that sheet was thrown

23     away.

24         Plaintiffs have the burden of

25     persuasion here and we believe it is

Case 2:09-md-02047-EEF-MBN Document 22380 Filed 12/02/19 Page 165 of 344 of
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 134 of
281
March 11, 2019

1    persuasive that IMT Gypsum was

2    manufactured by Taishan.  It went from

3    their sales department to their

4    management department and then to the

5    production folks with specific

6    instructions.

7         Now, this sales plan

8    notification specifically says

9    IMT Gypsum.  In preparation for this

10   presentation, there is a later sales

11   plan notification at 00046 that

12   incorporates by reference 00042.

13   Unfortunately, because I just realized

14   it in preparing for this, I didn't

15   question the witness, so I understand

16   if there's a contest of the

17   incorporation by reference.

18        But reading the facts in the

19   way it's presented here, we can

20   account for 39,780 sheets of drywall

21   that Taishan has provided records for,

22   yet their Manufacturer Profile Form

23   admits to 206,595 sheets of drywall.

24        Here again, we have an example

25   of we have partial evidence.  We don't

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 166 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/29/2013 Page 135 of 281
March 11, 2019

1       have all the evidence.  Taishan really

2       is in the best position to have had

3       this evidence for us.  They're able to

4       find one, possibly two, sales plan

5       notifications, but they represented to

6       us they could find no others.

7               Finding documents to support

8       the Manufacturer Profile Form and also

9       documents to support the spreadsheets

10      that we talked about earlier, that was

11      part of the deposition notice.  We

12      asked the witness to be prepared to

13      testify and produce documents to

14      support those charts, those

15      statistics.  We got this and other

16      company documents.

17              Now, IMT Gypsum is another one

18      that has branded IMTGYPSUM.COM with

19      the 4feetX12feetX1/2inch.  PID catalog

20      photo, this references the ECF filing

21      in Florida 155-2.

22              We have a couple of variations

23      as we've seen with some of the other

24      boards.  And then we have this

25      particular picture.  So PID-51 was

Case 2:09-md-02047-EEF-MBN Document 22380 Filed 12/02/19 Page 167 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 136 of 281
March 11, 2019

1    introduced at the deposition of Che

2    Gang.  This is from a plaintiff's

3    home.  And we asked Mr. Che:  Is the

4    blue-and-white edge tape with

5    IMTGYPSUM the same as in this

6    paragraph?

7         Their Manufacturer Profile Form

8    identifies blue-and-white edge sealing

9    tape, IMTGYPSUM.

10        We have positive photo evidence

11   from a plaintiff's home, yet Mr. Che

12   says:  The information we still have

13   is incomplete.  And he can't make a

14   decision because he couldn't find or

15   discover this edge tape while he was

16   preparing for his deposition.

17        It's a little bit problematic

18   in that we did ask, as previously

19   stated, for the supporting material of

20   how they all came up with an MPF.  How

21   did you create this Manufacturer

22   Profile Form?  Where is the evidence

23   you used to support this Manufacturer

24   Profile Form?  That's not the first

25   time similar-type productions have

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 168 of 344
Case 1:11-cv-22408-MGC Document 293-3 Entered on FLSD Docket 04/29/2019 Page 137 of 281
March 11, 2019

1          been asked in this litigation.

2               But again, we get this sales

3          plan notification that talks about

4          IMT Gypsum.  It talks about IMT Gypsum

5          tape.  It talks about not having

6          boards marked.  It talks about marking

7          boards with this attached marking, all

8          of which, when we get to the

9          plaintiff's photo, does match what's

10         represented on the profile form,

11         what's represented by Che that this

12         blue-and-white tape looks similar, but

13         because he couldn't find any

14         additional documents, he can't confirm

15         it.

16              This is another one of those

17         examples of the sword and shield sort

18         of thing we kind of have throughout

19         the litigation and throughout these

20         product ID buckets.

21              Plaintiffs present this

22         evidence, we get so far, we feel like

23         we've pushed the limit, and then all

24         of a sudden we get pushback, well, I

25         couldn't find it, though.  But you did

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 169 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 138 of
281
March 11, 2019

1          find the sales plan notification.

2               It says the same thing as your

3          Manufacturer Profile Form.  It's

4          matching what we're showing you on

5          this picture, but because you didn't

6          find this tape, which we also learned

7          isn't manufactured at Taishan's

8          facility, you're going to deny the

9          plaintiff's ID of this particular

10         bucket.

11              MS. EIKHOFF:  We should be at

12         slide 14, Ms. Lee.

13              So that presentation by

14         plaintiffs made it sound like Taishan

15         admitted on its Manufacturer Profile

16         Form that it made boards that looked

17         like the IMT Gypsum boards in this

18         category, and I want to make very

19         clear that that is not the case.

20              It is true that Taishan sold

21         boards with IMTGYPSUM on edge tape.

22         They have never denied that.  As a

23         matter of fact, they're the ones that

24         reported that.  And they reported it

25         in their Manufacturer Profile Form all

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 170 of 344
Case 1:11-cv-22408-MGC Document 293-1 Entered on FLSD Docket 04/25/2019 Page 139 of 281
March 11, 2019

1    the way back in 2012 with specificity.

2         And part of that specificity

3    was that although those orders had

4    IMTGYPSUM written on the edge tape,

5    that what was sprayed on the side of

6    the board was DRYWALL

7    4feetX12feetX1/2inch.

8         In the catalog that we are

9    using to make these categorical

10   determinations, the photos that we

11   were required to admit or deny are

12   photos of the sides of boards with a

13   spray marking IMTGYPSUM.COM.  And

14   there is no evidence anywhere that

15   Taishan ever made any boards sprayed

16   IMTGYPSUM.COM on the side.

17        We did do some business with a

18   brand called IMT Gypsum, and I'm about

19   to show you, so did a lot of other

20   manufacturers and in quantities that

21   dwarf the business that Taishan did

22   for that brand.

23        Ms. Robertson also brought up

24   that the sales plan notifications, the

25   numbers of orders with IMT Gypsum tape

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/03/19 Page 171 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2019 Page 140 of 281
March 11, 2019

1       are smaller than the numbers that they

2       reported on their MPF, and that's

3       easily explained.

4              Mr. Serpe explained that to you

5       this morning.  He showed you a slide

6       that said that instructions on how to

7       prepare tapes and how to prepare

8       boards was often done orally or by

9       phone, in various other ways.

10             And so it is to Taishan's

11      credit that this initial discovery

12      offering in the case reported far more

13      than the sales plan notifications that

14      exist to this day.

15             So what we will show you is

16      that the plaintiffs have not satisfied

17      their burden of proof that Taishan

18      made boards with the specific

19      IMTGYPSUM.COM spray marking, and

20      instead are asking you to fill those

21      evidentiary gaps; to just assume that

22      Taishan made it.  Because they did one

23      transaction that relates to the

24      IMT Gypsum brand, then you should

25      assume that every board that has that

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 172 of 344
Case 1:11-cv-22408-MGC Document 295 Entered on FLSD Docket 04/29/2019 Page 141 of 281
March 11, 2019

1    brand on it was also made by Taishan,

2    even when that assumption is refuted

3    by the evidence in the case.

4            So one of the things that

5    you've been hearing all morning, and

6    Ms. Robertson talked about it when she

7    was talking about C&K, is that you had

8    distributors and brokers and buyers

9    trying to get as much drywall from

10   China as they could during this

11   shortage.

12           And so we talked about

13   suppliers who have testified in this

14   case who said they were buying from

15   Chenxiang and they were buying from

16   Taishan and they were buying from

17   other manufacturers.  And U.S.

18   shipping records bear that out, and

19   specifically bear it out for

20   IMT Gypsum.

21           So we have located U.S.

22   shipping records that IMT, the company

23   at issue here, purchased lots of

24   boards from multiple manufacturers in

25   2006 and brought them into the United

1        States, specifically brought them into

2        Florida.

3              And this transaction right

4        here, to Beijing Building Materials

5        Import, is reported on our MPF.  It's

6        the one with the IMT on the edge tape.

7        And the exporter listed on our MPF is

8        Beijing Building Materials.  So we can

9        line up this one shipment as probably

10       coming from Taishan.

11             But then you look at who else

12       IMT was buying from at this same time

13       and look at the quantities.  There's

14       two lines here for Pingyi Baier.  So

15       there's -- they ordered twice as much

16       from Baier as they did from Taishan.

17             And then you look at who else

18       shows up on this shipping record, and

19       guess who it is.  Chenxiang, the

20       manufacturer who used to be a

21       defendant here that plaintiffs want to

22       pretend never existed, the same one

23       that made C&K drywall.

24             And look at the volume.  IMT

25       ordered ten times as much drywall from

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 174 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2019 Page 143 of
281
March 11, 2019

```
 1          Chenxiang as it did from Taishan, and

 2          twice as much from Baier as it did

 3          from Taishan.

 4               But Taishan's the only

 5          defendant here and the only one who

 6          has submitted an MPF, and Taishan's

 7          MPF says, yeah, here it is, we did

 8          that transaction, and the spray

 9          markings on the side didn't say

10          IMTGYPSUM.

11               Now, the shipping records show

12          that the lion's share of IMT board was

13          made by C&K.  We know because the

14          evidence shows that C&K is the brand

15          of Chenxiang.

16               C&K GYPSUM, the bottom two

17          pictures are C&K, the brand for

18          Chenxiang.  IMTGYPSUM, this is the

19          exemplar we have that you have to

20          decide did Taishan make it or not.

21               It is exact -- the word

22          "GYPSUM" in C&K's drywall and in IMT's

23          drywall is exactly the same.  Compare

24          the G, the Y, the P, the S, the U and

25          the M.
```

Case 2:09-md-02047-EEF-MBN Document 22380 Filed 12/02/19 Page 175 of 344
Case 1:11-cv-22408-MGC Document 253-1 Entered on FLSD Docket 04/25/2019 Page 144 of 281
March 11, 2019

```
 1              So what the evidence is showing

 2         you is not some attenuated speculative

 3         theory that Taishan says that it made

 4         board with IMTGYPSUM on the side, on

 5         the edge tape, but they misrepresented

 6         what they sprayed on the side, and we

 7         should just assume that IMTGYPSUM,

 8         that they really sprayed it on the

 9         side, you should just assume that

10         that's what they did.

11              So instead of that speculative

12         theory, what the evidence is showing

13         you is that most of IMT came from

14         Chenxiang, who made C&K boards; and

15         IMT boards and C&K boards are almost

16         exactly identical.  The word "GYPSUM"

17         is identical in the two boards.

18              So we do not believe that the

19         plaintiffs have put forth the greater

20         weight of the evidence that Taishan

21         made the boards with IMT sprayed on

22         the side.

23              MR. MONTOYA:  Brief rebuttal?

24              MS. ROBERTSON:  So counsel's

25         representation that there was one
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 176 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2019 Page 145 of 281
March 11, 2019

1          transaction by Taishan of IMT Gypsum

2          just doesn't quite follow the same

3          logic.

4                   IMT Gypsum appears on several

5          different lines of their Manufacturer

6          Profile Form.  It also appears on

7          several different lines of the

8          statistical spreadsheet that we

9          recovered from the 2010 e-mail.

10                  In addition to that, we have

11         the witness, corporate witness for

12         Taishan, testifying:  I believe the

13         Manufacturer Profile Form created by

14         Mr. Peng is correct, but it's possible

15         that it's not very accurate, did not

16         pay attention to small details.

17                  You'll hear some more about

18         this later from my colleague when she

19         talks about some of the other buckets,

20         but in particular, Taishan's argument

21         today that while their Manufacturer

22         Profile Form was so careful, that it

23         was so precise that it clearly says on

24         the edge sealing tape and from the

25         beginning we had admitted we put IMT

March 11, 2019

```
 1          on our sealing tape, but the product

 2          marking, it doesn't have those same

 3          words.

 4               That is again a sword/shield

 5          argument, because if we look -- and

 6          it's not at issue here in Florida, but

 7          DUN Drywall, which is admitted to by

 8          Taishan on their Manufacturer Profile

 9          Form, does not include the sprayed

10          marking and the product marking on

11          their Manufacturer Profile Form.

12               So we have a bunch of

13          inconsistencies that really are

14          occurring here of when it is to their

15          benefit to say, well, that's not what

16          we read on the Manufacturer Profile

17          Form, so your argument's wrong.  You

18          didn't get it.

19               But they'll admit some of these

20          other things, and DUN is a perfect

21          example.  No contest there.  No

22          contest.

23               The product marking column of

24          the Manufacturer Profile Form does not

25          match the markings that are found on
```

March 11, 2019

```
1          that board.  IMT should be looked at
2          no differently.
3                    MS. EIKHOFF:  Could I just make
4          a point of clarification?  We did
5          submit an errata that the word
6          "accurate" in this quote was
7          mistranslated, and when that same
8          Chinese word was used every other
9          instance in the deposition, it was
10         translated as "precise."
11                   And so on February 28th, we
12         provided to the PSC an errata signed
13         by Mr. Che, the witness, that noted
14         that translation error, and consistent
15         with the rest of the translation of
16         the deposition, that word should have
17         been translated as "precise."
18                   MS. ROBERTSON:  We haven't
19         really addressed any of the errata
20         between the parties.  They did in fact
21         submit it.  I'm not trying to mislead
22         the special master.  If they'd like it
23         read into the record that it's not
24         very precise, so be it.
25                   MS. EIKHOFF:  Thank you.
```

1          SPECIAL MASTER LEE:  Before we

2     get to the next category, as we go

3     through the categories, are any of

4     those categories overlapping, meaning

5     is there a home that has drywall that

6     has several categories?

7          MS. ROBERTSON:  Yes.

8          SPECIAL MASTER LEE:  So it's

9     not all distinct?

10         MS. ROBERTSON:  Yes.

11         SPECIAL MASTER LEE:  So what's

12    next?

13         MS. ROBERTSON:  It will be

14    ProWall.  That will be slide 57.

15         Next bucket is ProWall.

16    ProWall gets into the weeds again.

17    Anybody who knows my experience with

18    this case, I live in the weeds.  It's

19    fair.

20         MS. EIKHOFF:  True.

21         MS. ROBERTSON:  We have

22    Taishan, Run & Fly Jinan,

23    Manchester Holdings, Inc., Stock

24    Building Supply Company -- Stock

25    Building Supply Inc., apologies.

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 180 of 344
Case 1:11-cv-22408-MGC Document 253-2 Entered on FLSD Docket 04/29/2013 Page 149 of 281
March 11, 2019

<span style="display:block; text-align:center;">1</span>                Our trace from Taishan to Stock

<span style="display:block; text-align:center;">2</span>        Building Supply Inc., who built the

<span style="display:block; text-align:center;">3</span>        homes in Florida, is that Taishan

<span style="display:block; text-align:center;">4</span>        manufactured the drywall.  It was

<span style="display:block; text-align:center;">5</span>        purchased by Run & Fly Jinan, which

<span style="display:block; text-align:center;">6</span>        was a domestic Chinese company and

<span style="display:block; text-align:center;">7</span>        exporter who sent the drywall from

<span style="display:block; text-align:center;">8</span>        China to the United States through

<span style="display:block; text-align:center;">9</span>        Manchester Holdings Inc., and

<span style="display:block; text-align:center;">10</span>        eventually purchased by Stock Building

<span style="display:block; text-align:center;">11</span>        Supply Inc., who built the plaintiffs'

<span style="display:block; text-align:center;">12</span>        homes.

<span style="display:block; text-align:center;">13</span>                Again, this document is another

<span style="display:block; text-align:center;">14</span>        one of those that was newly produced

<span style="display:block; text-align:center;">15</span>        to us in January of 2019, everything

<span style="display:block; text-align:center;">16</span>        except for the TG-PID-00079, which is

<span style="display:block; text-align:center;">17</span>        the Bates number, and the red circle

<span style="display:block; text-align:center;">18</span>        in the middle, that was how it was

<span style="display:block; text-align:center;">19</span>        produced to plaintiffs who received a

<span style="display:block; text-align:center;">20</span>        version that did not have the English

<span style="display:block; text-align:center;">21</span>        red lettering and a version that had

<span style="display:block; text-align:center;">22</span>        the English red lettering, which is

<span style="display:block; text-align:center;">23</span>        the translation of each of the various

<span style="display:block; text-align:center;">24</span>        parts of this invoice.

<span style="display:block; text-align:center;">25</span>                When we talked to Mr. Che about

March 11, 2019

1            this invoice, we asked him why it

2            wasn't produced until now.  Where was

3            it from, what are we showing?  Because

4            Run & Fly Jinan is not a company that

5            is new to some of the arguments in

6            this litigation.

7                  Mr. Che explained that this

8            type of invoice for Taishan is known

9            as a domestic invoice.  It's domestic

10            and they keep it -- it came from a

11            book or what appears to be sort of a

12            ledger book that has a carbon copy

13            that you flip through, write on one

14            page, flip to the next page, fill it

15            out, flip to the next page.  We only

16            received this one page as part of the

17            deposition production in 2019.

18                  So why does it matter?  Why

19            were we all excited as plaintiffs when

20            we got this document?  We got this

21            document because, as I mentioned

22            earlier, Taishan to Run & Fly, Run &

23            Fly to Manchester Holdings.

24                  We know from Manchester

25            Holdings' documents that they had a

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 182 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 151 of 281
March 11, 2019

1    packing list of drywall that came from

2    Run & Fly Jinan New Materials.  We

3    further know that Manchester sold that

4    drywall they purchased to Stock

5    Building Supply Inc.

6         Now, let's back up and see why

7    we care.  This is why we care.  The

8    volume here on the invoice produced by

9    Taishan is extremely important because

10   it is a precise number, 9,936 pieces,

11   which we can take to mean sheets, of

12   drywall.  If we take 598 plus 9338, we

13   get 9,936 pieces of drywall.

14        We have the Taishan invoice

15   going to Run & Fly.  Run & Fly

16   invoicing Manchester Holdings for the

17   same amount of gypsum board.

18        And then finally, coming in

19   through Georgia to Manchester-in-Home

20   and eventually to Stock Building

21   Supply, who built the homes, we have

22   this same 9,936 sheets of drywall,

23   country of origin is China.

24        Now, ProWall is another one of

25   those -- another one of these buckets

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 183 of 344
Case 2:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 152 of 281

March 11, 2019

1          that we're going to hear about how

2          ProWall was manufactured by some other

3          folks and certainly not Taishan's, you

4          guys can't show it, and the like.

5                But again, we have traced this

6          distributor -- or the builder to the

7          distributor to the importer to the

8          maker for this drywall of 9,936

9          sheets.

10               Manchester asked where are we

11         getting this drywall?  Where is this

12         drywall coming from?  Who is your

13         manufacturer?  Let me know.

14               Manufacturer gets the response:

15         The full postal address of our gypsum

16         board manufacturer is as follows:

17         Headquarters, Shandong Taihe

18         Dongxin Co., Ltd.  That is the Taishan

19         that we've been talking about today.

20         That is the company that manufactured

21         the drywall that Manchester sold to

22         Stock Building Supply.

23               ProWall has markings that say

24         MADE IN CHINA MEETS ASTM with various

25         standards, with the C36 and the slash

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 184 of 344
Case 2:11-cv-22408-MCE-DEK Document 253 Foreign on 7/29 Docket 04/25/2019 Page 153 of
281
March 11, 2019

1          C1396.  These are relatively clear

2          markings in the homes.

3                  So we have the plaintiff's

4          home -- or the product ID catalog

5          photo that shows that we have ProWall.

6          The reason they're in this category

7          specifically is the tape the Pro and

8          the capital W for the Wall and the

9          marking, all because we're able now in

10         2019 to receive an invoice from

11         Taishan that shows the 9,936 pieces of

12         drywall.

13                 Now, Taishan's corporate

14         representative again did say the

15         reason that this board did not make it

16         to their Manufacturer Profile Form is

17         because that is the type of invoice

18         they use for domestic sales and

19         therefore didn't make it to the

20         Manufacturer Profile Form, and that's

21         why we don't see Taishan ProWall on

22         their Manufacturer Profile Form,

23         because it isn't what they would call

24         a VAT invoice, which is how they

25         suggest they put together their

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 185 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 154 of 281

March 11, 2019

1        Manufacturer Profile Form.

2              But again, we don't have

3        everything they used to support their

4        Manufacturer Profile Form, so we're

5        using the connection of Taishan to

6        Run & Fly, Run & Fly Chinese domestic

7        corporation shipped it to

8        Manchester Holdings.

9        Manchester Holdings sells it to Stock

10       Building Supply to build the homes

11       with the 9,936 sheets of drywall that

12       they purchased through the chain from

13       Taishan.

14             MS. EIKHOFF:  All right,

15       Ms. Lee, we are at slide 18.

16             So when I start talking to you

17       about the ProWall category, I want to

18       introduce to you a theme, and it's a

19       theme that we see throughout what the

20       plaintiffs have presented today, but

21       it's particularly pronounced in this

22       category.

23             And the theme is to just look

24       through a very small scope, something

25       that they say points to Taishan and

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 186 of 344
Case 2:14-cv-02408-MCE Document 253 Dec 09 Fl Direction 07/13 Docket 04/25/2019 Page 155 of
281
March 11, 2019

1    ignore the rest of the story.  Ignore

2    that there are other manufacturers out

3    there, ignore that there are other

4    documents out there.

5        They present you with a single

6    transaction and they have a theory

7    that it somehow connects Taishan to

8    the boards at issue and say just look

9    at that, ignore other manufacturers,

10   just assume that Taishan made all of

11   this.

12       And in this case, it is

13   particularly pronounced because the

14   plaintiffs are not only saying that

15   Taishan made ProWall boards.  They are

16   also saying that BNBM made ProWall

17   boards, but not the ProWall

18   attributable to Taishan.

19       We have no idea what ProWall

20   they say is attributable to Taishan

21   versus attributable to BNBM, but I

22   will tell you that their theories of

23   attribution are mutually exclusive.

24   They're completely different stories.

25       And so in a few weeks, when you

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 187 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 156 of 281
March 11, 2019

1    hear their presentation attributing

2    ProWall to BNBM, there's not going to

3    be any mention of Manchester or any

4    mention of Jinan Run & Fly or Stock

5    Building Supply or any of these

6    documents that they've just shown you.

7        There's a whole different set

8    of documents and there will be a

9    different flowchart involving

10   different players and different

11   documents; Great Western Building

12   Materials, ProWall Building Products.

13       So before I get started, and we

14   will show you that we can identify and

15   have identified another manufacturer

16   that is responsible for the ProWall

17   boards that they've shown you, I would

18   submit to the special master that it

19   would not be appropriate for the

20   special master to make a decision

21   based on this set of evidence for

22   Taishan until she has also seen the

23   competing theory attributing it to

24   BNBM.  Because if you've already made

25   a decision as to Taishan and then

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 188 of 344
Case 2:11-cv-22408-MCE-DFM Document 253 Entered on FLSD Docket 04/25/2013 Page 157 of 281
March 11, 2019

1       you'll be presented with alternative

2       evidence attributing it to BNBM, the

3       special master will not have all of

4       the relevant evidence before her to

5       make this decision.

6           So I would ask that on this

7       particular category, because they're

8       attributing it under two different

9       theories to two different defendants,

10      that the special master reserve her

11      final ruling on this category.

12          I don't know why that's coming

13      up a little fuzzy, but the question

14      before the special master in this

15      category is: Did Taishan make the

16      boards with these unique ProWall

17      markings? These are what identify

18      these boards as ProWall, spray

19      markings that say ProWall GYPSUM BOARD

20      or end tape that says ProWall. And I

21      don't know why that's coming up

22      pixillated on the screen, but I

23      believe on your copy it's clear.

24          Unlike their theory for

25      IMT Gypsum, where they say, oh, the

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 189 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2019 Page 158 of
281
March 11, 2019

1        word "IMT Gypsum" shows up somewhere

2        on the MPF, so let's just assume

3        anything with that word is Taishan's,

4        the word "ProWall" shows up nowhere in

5        Taishan's documents; not in any

6        e-mails they've produced, not in any

7        correspondence, not in the MPF,

8        nowhere.  No connection whatsoever to

9        ProWall.

10            And so how have the plaintiffs

11       come up with an explanation that would

12       attribute ProWall to Taishan?  Well,

13       once again, they're relying on

14       speculation and gap-filling in trying

15       to tie these products to Taishan

16       through a common buyer.  And in this

17       case the common buyer is Jinan Run &

18       Fly.  That's the common buyer.

19            But in this case, and I'm about

20       to lay this out in a little more

21       detail, the other manufacturer that is

22       being ignored is Tai'an Kang Yi Jia, a

23       competing drywall manufacturer also in

24       Taian, the same area of Taishan's

25       manufacturing facilities.

March 11, 2019

1          Now, plaintiff's theory of

2       attribution rests on Taishan's single

3       sale of blank board with unmarked

4       white edge tape to Jinan Run & Fly.  I

5       want to be clear, we do not dispute

6       that that transaction occurred.

7          So lining up the 9,936 on our

8       invoice and the 9,936 on the other

9       e-mails, we agree that there was a

10      Taishan transaction with Jinan Run &

11      Fly.  But the documents tell the rest

12      of the story.

13         So on the same e-mail at Tab 53

14      of the plaintiff's exhibit, where the

15      plaintiff circled this is the address

16      where it came from, that's true.  That

17      is the address where that shipment

18      came from.  If you look at page 3 of

19      4 -- I'm sorry, it's one of their

20      exhibits, but, yes, if you look at

21      page 3 of 4 of their Tab 53 document,

22      the e-mail talks about --

23          Yes, I'll show it to you, and

24      can I get my glasses so I can see it?

25      Thank you.

 1          And I'll show it to you,

 2     Ms. Lee.  In view this is going to be

 3     the first order we don't want to mess

 4     up, a trial order, quantity of 10,000

 5     sheets.  10,000 is approximately

 6     9,936.  They say where is it coming

 7     from.  They say it's coming from

 8     Taishan.

 9          Taishan did a blank unmarked

10     trial order for Jinan Run & Fly which

11     looks like it was going to be shipped

12     forward through Manchester and Stock

13     and eventually to ProWall.

14          But then what happened after

15     this very small trial order?  Mr. Che

16     testified that Jinan Run & Fly thought

17     that Taishan was too expensive and so

18     they turned to the competitor, Kang Yi

19     Jia.  Kang Yi Jia is also in the Taian

20     region.

21          And plaintiffs' counsel used to

22     have a document that they used as part

23     of their ProWall story that is a Jinan

24     Run & Fly production run from

25     May-June 2006 showing that someone

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 192 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2019 Page 161 of 281
March 11, 2019

```
1        made 55,440 boards, and those boards,

2        that later bigger order, the nontrial

3        run order, that production run

4        specifies that those boards were on

5        steel pallets and had ProWall tapes.

6            So there was a subsequent order

7        specified with ProWall markings after

8        the initial trial run with Taishan,

9        which was the only run they ever did,

10       and those boards were blank.

11           Now, Taishan -- I'm sorry.

12       ProWall is apparently a building

13       materials company, and that part of

14       the story they're going to tell you

15       later when they unroll their theory

16       attributing these boards to BNBM.

17           But what happened in this case,

18       when you take off the myopic blinders

19       that just say I just want to look at

20       Taishan, what you see is a bigger

21       story, that there was an undisputed

22       trial run of blank boards by Taishan,

23       but that the rest of the order was

24       made by a competitor with ProWall

25       tapes, and therefore, we do not
```

March 11, 2019

 1          believe that this one transaction

 2          translates into Taishan is the

 3          manufacturer of everything with

 4          ProWall markings on it.

 5                    SPECIAL MASTER LEE:  Is the

 6          e-mail that you showed me the same

 7          e-mail that's on page 62 of their

 8          PowerPoint?

 9                    MS. EIKHOFF:  Yes, the one with

10          the address?  Yeah, it's the page 3 of

11          that same e-mail.

12                    MS. ROBERTSON:  Quickly, one

13          thing I do want to clear up real

14          quick.  We didn't remove any evidence

15          not represented in our brief.  I

16          believe it's at Tab 50 and it's the

17          stock defendant -- or Distributors

18          Profile Form.  I think that's what

19          you're referring to as far as that.

20                    To the extent you were

21          referring to something else, I

22          apologize.  I believe we just felt

23          that Tab 50 accomplished that.

24                    But nonetheless, the point is

25          this:  I'm not asking you to assume

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 194 of 344
Case 1:11-cv-22408-MGC Document 295 Entered on FLSD Docket 04/25/2013 Page 163 of
281
March 11, 2019

1           anything.  There's no reason to delay

2           the ProWall bucket as it relates to

3           Taishan.  This ProWall, this Florida

4           ProWall has nothing to do with BNBM.

5           BNBM doesn't -- it has no part in this

6           discussion.

7                    What I am asking -- what I am

8           telling you is that it is clear with

9           this number of this 9,936 pieces, as

10          we pop out here, we have ProWall

11          sheetrock and then 9,936.

12                   So as we've done so frequently

13          in this case throughout the years, we

14          have gone and pored through various

15          different records to piece together

16          the evidence to tie the drywall in

17          plaintiffs' homes to Taishan.

18                   This is a precise and specific

19          example of what you would do in a

20          products liability case to establish

21          the entire supply chain, and that was

22          done here for the 9,936 boards that we

23          find in Florida homes that have the

24          ProWall marking.

25                   My understanding is that this

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 195 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/29/2013 Page 164 of 281
March 11, 2019

1    ProWall with the capital W here, this

2    marking, this board from PID catalog

3    photo 44, is not going to come up in

4    the BNBM/ProWall argument at all.

5         We contend that this marking,

6    this language, this tape is Taishan.

7    This will not be discussed with BNBM.

8         SPECIAL MASTER LEE:  Can you

9    just go back to slide 60?

10        MS. ROBERTSON:  Yes.

11        SPECIAL MASTER LEE:  What is

12   the date on that packing list?

13        MS. ROBERTSON:  That's

14   March 23rd.

15        MR. SERPE:  It is March 23.

16        SPECIAL MASTER LEE:  Okay.  And

17   this is the packing list from Run &

18   Fly to Manchester Holdings?

19        MS. ROBERTSON:  Yes.

20        SPECIAL MASTER LEE:  So I guess

21   my question is:  Why is that packing

22   list dated before the one on 59?

23        MS. ROBERTSON:  This May 5 one?

24   And I think that's a very good

25   question.  I think what we often found

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 196 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2019 Page 165 of 281
March 11, 2019

1    and that we see with a lot of the

2    other documents, whether it's the

3    statistical spreadsheet, the

4    Manufacturer Profile Form, the packing

5    list, the invoices, the export

6    materials, the dates do vary every

7    once in a while until everything goes

8    through.

9         I will definitely tell you,

10   Special Master, we did not talk to

11   Run & Fly Jinan.  We didn't.  So a

12   precise answer for you is probably

13   inappropriate for me to give.

14        But we do have varying dates

15   depending on whether it's a packing

16   list, an invoice, an export list.  And

17   these were the pieces we were able to

18   find and establish.

19        SPECIAL MASTER LEE:  So you

20   have varying dates even with other --

21   in other transactions, not just this

22   one?

23        MS. ROBERTSON:  Yes, correct.

24        SPECIAL MASTER LEE:  Okay.

25        MS. EIKHOFF:  If I may just

March 11, 2019

```
 1          state for the record that the document

 2          that we were relying on for the 55,440

 3          boards with ProWall tapes that we

 4          referred to is in the Defendant

 5          Taishan's appendix at 55.

 6               MS. ROBERTSON:  I am going to

 7          sit down, and I believe my colleague

 8          is going to go, but I think maybe we

 9          want to do a short break, if that's

10          possible.

11               SPECIAL MASTER LEE:  Sure.

12          Take five minutes.

13               (Recess taken, 1:35?p.m. to

14          1:42?p.m.)

15               MS. SCHWAB:  So as we discussed

16          earlier, this is a bucket that is

17          admitted.  We are going over this only

18          to discuss the markings that have been

19          found on boards with edge tape, and as

20          we alluded to earlier, edge tape, the

21          practice is for it to be removed.  So

22          it's very important that we review the

23          markings on the boards because most of

24          the time the edge tape is no longer

25          there.
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 198 of 344
Case 2:14-cv-22408-MCE Document 293 Entered on FLSD Docket 04/25/2019 Page 167 of 281
March 11, 2019

 1              So this is just to discuss

 2        how -- this is the edge tape.  I

 3        believe Ms. Eikhoff reviewed it

 4        earlier.  It's teal, it's Taihe.  I

 5        can't read Chinese characters but I

 6        will take the representation that it's

 7        the company's name.  And it is

 8        identified in the Manufacturer's

 9        Profile Form as Taishan edge sealing

10        tape.

11              This is a recap that Taishan

12        admits to this bucket, but because the

13        edge tape is removed, that's why it's

14        so important; that's why we are going

15        over this.  And any markings on boards

16        with edge tape, whether it's still

17        there in present day or whether it has

18        been removed, is critical and should

19        be admitted as well.

20              So this is a picture that

21        Taishan has admitted to the edge

22        sealing tape.  As you will see, I have

23        circled it in red.  That is admitted.

24              But what you also see is right

25        to the left of the beam is a date.  I

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 199 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2019 Page 168 of 281

March 11, 2019

1    believe that's 214491 is what it says.

2    However, Taishan, in the deposition,

3    Mr. Che Gang said -- and Taishan in

4    its brief said:  The photo category

5    includes additional numerical markings

6    that are not consistent with Taishan's

7    records.

8         So if we had this marking

9    without the Taishan tape, this would

10   be denied because it is not consistent

11   with Taishan's records.

12        However, because this claimant

13   was lucky and had the number, the

14   numerical marking and edge sealing

15   tape, it was admitted.  And there's a

16   few other examples like this.

17        Again, this is just a picture

18   with just the numbers, no marking.

19   This would be denied.  Here's another

20   one.  This is a better picture, and I

21   will represent to you that this photo

22   on the bottom of the edge tape, which

23   is the top of the Taihe edge tape, was

24   found on the same board, but to get a

25   better picture, I broke it into two

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 200 of 344
Case 1:11-cv-22408-MGC Document 295 Entered on FLSD Docket 04/25/2013 Page 169 of 281
March 11, 2019

1        pictures, but this is the same board.

2              And this is admitted because

3        the plaintiff was lucky and had the

4        Taihe tape as well as the numerical

5        marking.

6              But again, it's Taishan's

7        position that they did not manufacture

8        boards with numerical markings.  So

9        unless the claimant had Taihe edge

10       tape, that would be denied.

11             So that is all that I want to

12       say about that category, if you want

13       to respond.  Keep going?

14             SPECIAL MASTER LEE:  I have a

15       question:  The numbers, what do the

16       numbers represent?  Are they lot

17       numbers or something else?

18             MS. SCHWAB:  I believe that we

19       call them batch numbers.  We don't

20       know.  We call them batch numbers, and

21       I believe my colleague would like to

22       respond.

23             MS. ROBERTSON:  Quickly, we

24       have one document that was part of the

25       sales plan notification bundle that's

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 201 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 170 of 281
March 11, 2019

1    at Tab 15 to our PID brief -- wait, I

2    apologize, it was a -- we have a

3    notification of collaboration of

4    drywall.  We attached this to our

5    brief.

6         And it's a one-sheet paper

7    where Taishan is essentially

8    subcontracting or outsourcing some of

9    its manufacture of drywall, and the

10   specific requirement, like we saw that

11   one thing says specific requirement,

12   that one document shows the specific

13   requirement was to have a work shift

14   stamp on the board.

15        So that's really the only piece

16   that we have that explains this date,

17   time and some particular number.  I

18   think there was potentially one other

19   piece of evidence.  I'll look up both

20   for you, Special Master, so you have

21   it.  I'll also give it to the

22   defendants, to the extent it's not in

23   our brief, but I'm pretty sure it is,

24   that potentially the other numbers

25   could have been a sheet number, but I

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 202 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 171 of 281
March 11, 2019

1          think after giving that -- seeing the

2          document, we thought it was a work

3          shift time stamp.

4                And we'll provide those to both

5          sides, but I think you know what I'm

6          talking about.

7                MS. EIKHOFF:  Yeah.  And I will

8          be happy to respond on this.  We did

9          not expect this to be a topic for

10         today, but I'll be happy to state

11         Taishan's position on it for the

12         record.

13               Taishan, as I said at the

14         outset, does admit and has admitted to

15         the category that is Taihe edge tape

16         with its unique brand, with its --

17         with its name on it and its unique

18         markings on it.  That is not in

19         dispute.

20               And so when the plaintiffs say,

21         oh, but if there's just numbers on a

22         board without the tape, then they're

23         not admitting it.  That's right.

24         Because if you just show a board with

25         numbers on it, there's nothing from

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 303 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 172 of 281
March 11, 2019

1          that picture that can positively

2          identify that as Taishan's product.

3                And as we've been saying all

4          day today, Taishan was not the only

5          manufacturer in this space and other

6          manufacturers could just as easily

7          make drywall board with numbers on it.

8                So if there is Taishan's unique

9          branding indicia, then yes, it is a

10         category that we've admitted.  It is

11         not a surprise that if there's not

12         Taishan's unique branding indicia that

13         we're not admitting it.

14               We're not just admitting that

15         any board they show that has numbers

16         on it is Taishan's board.

17               And my colleague,

18         Mr. Venderbush, is going to be talking

19         more about this whole category that

20         we're about to move into of generics,

21         where there are generic markings like

22         numbers, like MADE IN CHINA stamps on

23         boards that we cannot be in a position

24         to say that we admit all of them are

25         ours, because they aren't all ours.

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 204 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/29/2013 Page 173 of 281
March 11, 2019

1          MS. ROBERTSON:  So quickly,

2     Special Master, apologies.  It's

3     Tab 34 to our PID brief.  The title of

4     the document is Notification of

5     Collaborative Processing.  It was

6     produced by Taishan at TG0211714.

7          MS. SCHWAB:  And, Your Honor, I

8     just want to make one note.

9     Ms. Eikhoff said anybody can produce

10     these -- these boards with just

11     numbers without the edge tape.  So

12     without the edge tape, their position

13     would be that they would deny it.

14          I think that this is a good

15     representation of where the tape is on

16     the board.  It's on the side that's

17     perpendicular to the markings, and so

18     if the marking is in the middle of the

19     board, the chances that you get the

20     tape and the marking are slim to none.

21          So unless you have a photo of

22     the entire board -- unless you have a

23     photo of the entire board, which would

24     only be if the claimant remediated and

25     took out the walls or was willing to

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 205 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/29/2013 Page 174 of 281
March 11, 2019

1      have their entire home destructed,

2      then you wouldn't get this entire

3      picture.

4              So chances are you would get a

5      bore scope hole, which is just a small

6      hole and a camera can go up the small

7      hole inside the wall cavity and you'd

8      just get the numbers and not the edge

9      tape.

10             So the next category is MADE IN

11     CHINA MEETS OR EXCEEDS.  And the

12     reason why the S's are in brackets

13     will be explained as we go through

14     this bucket.

15             So to begin, Taishan in its

16     Manufacturer Profile Form admits to

17     manufacturing 482,435 sheets of

18     drywall with MADE IN CHINA MEET OR

19     EXCEED ASTM C1396 04 standard

20     markings.

21             Now, it's important to note

22     that it just says MEET OR EXCEED.

23     Both of them are singular.  And also

24     with white edge sealing tape.

25             Taishan also admits to

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 306 of 344
Case 2:11-cv-22408-MCE Document 253-1 Entered on FLSD Docket 04/25/2013 Page 175 of 281
March 11, 2019

1     manufacturing 244,120 sheets with the

2     same MADE IN CHINA MEET OR EXCEED,

3     singular, with Taishan edge sealing

4     tape.  That's the Taihe teal tape that

5     we looked at earlier.

6          So there are, in this bucket, I

7     will call it, four different font

8     variations.  The first one -- this

9     picture looks a little grainy, but

10    it's like triple dot.  The second one

11    is single dot.  The third one is --

12    it's not really dotted at all.  And

13    the last one, again, not dotted, but

14    it's -- the font differences, you can

15    see in the A primarily and the D.

16         So let's look at the first one

17    that's number 15.  So this is a better

18    picture that you can see.  It's a

19    triple dot, is what I will call it.

20    And Taishan, in their position paper,

21    says they do not -- they do not deny

22    that products -- that boards with this

23    marking is theirs.  So that takes care

24    of the first font variation.

25         The second font variation,

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 207 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 176 of 281
March 11, 2019

1      these are the residual boards that

2      Your Honor asked about earlier that

3      were found in 2018, and there are two

4      variations.  The first one is MADE IN

5      CHINA MEET OR EXCEEDS ASTM.  The

6      second one is MADE IN CHINA MEET OR

7      EXCEEDS, again, ASTM.  Both of the

8      MEET is singular, and both of the

9      EXCEEDS is plural.

10          The difference is in the font.

11     It's very minuscule, but they are

12     different.  And as you will see, the

13     top one takes care of the second

14     marking for font variations, and the

15     bottom one takes care of the font

16     variation at the third entry right

17     there, so we can check off both of

18     those font variations.

19          Now, the last one, Taishan has

20     not admitted and did not find any

21     residual boards.  However, we found

22     this board in one of the claimants'

23     homes in Florida who has remediated.

24     And as you'll see, it's the same

25     marking with the pointed A and it's

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 208 of 344
Case 2:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 177 of 281
March 11, 2019

1        MADE IN CHINA dot.  There's not a

2        space in between CHINA and MEETS.  But

3        as you'll see on the right-hand side,

4        the Taihe edge tape.  There's some

5        other Taihe edge tape, you can see

6        some above, but I have it circled

7        right here; and which is important

8        because -- we will review this in a

9        second, but for right now I will just

10       note that the font for this, we had

11       the Taihe edge tape, and that font,

12       Taishan would have admitted this

13       because of the Taihe edge tape;

14       however, if the edge tape was not

15       present, then it would have been

16       denied.

17            But I would represent to you,

18       Your Honor, that this -- that this

19       photo shows that they also

20       manufactured boards with this type of

21       font, so we can put a check on the

22       last one.

23            Now, this is a good

24       side-by-side comparison because at the

25       catalog which is at Tab 3 to the

March 11, 2019

1     plaintiff's product ID brief, photo 20

2     and photo 21 look nearly identical.

3     The only difference is that Taishan

4     has admitted to photo 20, but has

5     denied photo 21.

6              And why is that?  It's because

7     this is MEETS, plural, and the top,

8     photo 20 is MEET, singular.

9              Same thing for 17 and 18.

10    Identical font, identical words,

11    except for the top one is singular,

12    Taishan has admitted to it.  The MEET

13    is singular, and the bottom one,

14    Taishan has denied because it's MEETS,

15    plural.

16             Now, Your Honor, I would remind

17    you that the Manufacturer Profile Form

18    says MEET OR EXCEED, both singular.

19    Nowhere does it say MEET OR EXCEEDS,

20    plural.  It's only until the residual

21    boards were found in 2018 that Taishan

22    started to admit these boards.

23             They -- back in 2011, they

24    claimed that they had insufficient

25    evidence to admit or deny that they

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 210 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 179 of
281
March 11, 2019

1          manufactured these boards, but in

2          2018, whenever they were found with

3          the MEET OR EXCEEDS, plural, they were

4          now admitted to.

5                    And I'd just like to point one

6          other thing out for this picture that

7          we saw earlier.  Again, edge tape,

8          different kind of font that's found at

9          photo 19 of the catalog.  There's

10          MEETS, MEETS OR EXCEEDS.  Both

11          MEETS -- both plural, which Taishan

12          claims they did not manufacture any

13          boards with MEETS, plural.  And also,

14          this is a date stamp or work shift

15          number also on this board.

16                    Mr. Che Gang was asked in his

17          deposition -- we saw this slide

18          earlier -- about whether -- which is

19          correct.  You found the residual

20          boards in 2018 that say MEET OR

21          EXCEEDS plural, but the Manufacturer

22          Profile Form says MEET OR EXCEED, both

23          singular.  Which one is correct?  You

24          can't have it both ways.

25                    And his response, and I will

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 211 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 180 of 281
March 11, 2019

```
 1          read it as Ms. Eikhoff alluded to
 2          earlier with the errata, says:  I
 3          believe the Manufacturer Profile Form
 4          created by Mr. Peng is correct, but
 5          it's possible that it's not very
 6          precise.  It did not pay attention to
 7          small details such as the changes
 8          between plural and singular forms.
 9              And this is unfortunate because
10          this is such a big issue in the
11          plaintiffs' homes because a lot of
12          plaintiffs in Florida have variations
13          of drywall, and we don't have the
14          information from the printers from
15          Taishan, we don't have the records, we
16          don't have any of that.
17              So if we can't rely on the
18          Manufacturer Profile Form and can only
19          rely on Taishan's residual boards that
20          they luckily found, our hands are
21          tied.
22              So we believe that we have put
23          forth enough to show that Taishan
24          manufactured boards with MEETS OR
25          EXCEEDS, MEET OR EXCEEDS, and all of
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 212 of 344
Case 2:11-cv-22408-MCC Document 253 Entered on FLSD Docket 04/25/2013 Page 181 of 281
March 11, 2019

1          the four font variations.

2                MR. VENDERBUSH:  So I think

3          we're going to slide 23.  So now we're

4          into the first of the two generic

5          categories, and I just want to reframe

6          the table that we're looking at

7          specific categories here, and we have

8          admitted to this where we found the

9          residual boards in our factory, so we

10          know that we made those, but these

11          other ones are different.

12                And given what you've heard

13          today and given what we know about the

14          market conditions in this time and

15          other manufacturers were out there and

16          other manufacturers were making boards

17          and other manufacturers were making

18          generic boards, that it does not

19          automatically flow that every board

20          with a generic marking was

21          fortuitously made by the only

22          manufacturer that plaintiffs continue

23          to pursue in this litigation when they

24          named other manufacturers and chose

25          not to pursue them.

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 213 of 344
Case 1:11-cv-22408-MGC Document 293-2 Entered on FLSD Docket 04/25/2013 Page 182 of
281
March 11, 2019

1          That's what they are asking you

2      to presume, that they're all made by

3      Taishan because we're the only ones

4      here before you, and that doesn't

5      logically flow.

6          So it's not about a

7      presumption.  It's about -- I'll just

8      touch on their legal burden again --

9      that plaintiffs have to prove each of

10     the markings that we're talking about.

11     It's not just an, oh, MADE IN CHINA,

12     throw it all to Taishan.

13         My understanding, the special

14     master has to make a determination as

15     to each of the catalog pictures that

16     the parties have agreed to and make a

17     specific finding that plaintiffs have

18     met their burden of proof to tie that

19     specific finding, one by one, to

20     Taishan.

21         And some of the pictures that

22     they've showed you today from specific

23     claimants' houses then also show how

24     important it is that we're going to

25     have another step that's claim

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 214 of 344
Case 2:11-cv-22408-MCE-Document 253-1 Preparation 07/25/13 Docket 04/25/2013 Page 183 of 281
March 11, 2019

1    specific to say what is it that that

2    picture shows?  Does it show enough?

3    Because we've seen that we then have

4    issues about what is the level of

5    claim-specific proof to tie any

6    claimant to a category that you found

7    to be sufficient or that Taishan has

8    admitted to.

9         So we think that is going to be

10   a step in this process when we get

11   down to a claim-specific objection

12   level in the future.

13        So I ask the special master to

14   require them to have the greater

15   weight of the evidence, not just to

16   make a presumption because they're

17   claiming that there are proof

18   problems.

19        And so here's where it's

20   important to go back to the myth of

21   only the two manufacturers.  And we've

22   showed you this chart before, that we

23   were at, at most, 30% of this market.

24   And remember, this is -- the equities

25   here have been a little skewed so far,

Case 2:09-md-02047-EEF-MBN   Document 22380-37   Filed 12/02/19   Page 215 of 344
Case 2:11-cv-22408-MCE-DCE   Document 253   Entered on FLSD Docket 04/25/2013   Page 184 of 281

March 11, 2019

 1          because we have admitted when we found
 2          the residual board, and even before
 3          that in the MPF, back in 2011.  It's
 4          not that we were denying that we made
 5          board with some generic mark.
 6                  We said that we did make some
 7          board with generic mark, and that was
 8          the question presented to us by
 9          Judge Fallon as the MPF exercise.  But
10          consistent with our understanding of
11          the market was that we hadn't made
12          every board with generic mark.
13                  So that was the distinction we
14          were trying to draw in our MPF and
15          which we are still trying to draw to
16          this day, that it is not a binary
17          choice between did Taishan make all
18          generic board, did Taishan not make
19          all generic board.
20                  We have accepted responsibility
21          for 128 of the 266 claims in the
22          generic board super-category that has
23          five subcategories that you have to
24          make five separate -- or not only --
25                  MS. EIKHOFF:  Four.

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 216 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2014 Page 185 of 281
March 11, 2019

1          MR. VENDERBUSH:  -- four now.

2          So the plaintiffs have ignored

3     all the other manufacturers when they

4     give you their presentation.  They

5     sued those manufacturers and they

6     didn't pursue them, and so we don't

7     have the discovery on what -- on what

8     their boards would have looked like.

9          And I want to suggest that it

10    makes sense -- it makes more sense

11    that Taishan did not make every

12    generic board that is in Florida, that

13    it makes much more sense, if you're

14    going to make a presumption, that

15    Taishan did not make every board

16    that's in Florida.

17          Because you've heard people

18    touch on it at the time -- or today,

19    but at the time, this was an

20    incredibly chaotic market and time

21    because for the -- there was a huge

22    drywall shortage.  People for the

23    first time were trying to source

24    drywall from other places, and it was

25    almost like drug dealing, right?  A

March 11, 2019

```
 1          guy heard about a guy who could get
 2          you some drywall from China and I need
 3          some drywall.
 4               So people were scurrying
 5          around, and you've gotten a sense of
 6          that in the documents today.  Hey, I'm
 7          sending you this random e-mail, and
 8          maybe we documented it, maybe we
 9          haven't, and so where can I find some
10          drywall?
11               And so people were asking --
12          and this was not a market that had
13          been put together before.  People were
14          making it up as they were going along,
15          and Taishan was making it up as it was
16          going along too because they had not
17          been in the export to America market
18          before this, which explains many of
19          the practices you've heard today.
20               This was new territory for
21          Taishan, and Taishan now doesn't sell
22          to the United States.  This was a
23          finite period in 2006 to 2007 that
24          Taishan, because of market conditions,
25          was drawn into the United States
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 218 of 344
Case 2:11-cv-22408-MCE Document 293 Page 4 of 43 Docket 04/29/2013 Page 187 of 281
March 11, 2019

1        market.

2              And so that is why they didn't

3        have a manual for foreign sales,

4        because they had never done it before.

5        But now suddenly people were

6        clambering.  And you saw -- you know,

7        IMT went to all the different people

8        in China to try to get some drywall

9        because we're -- it's a housing boom

10        and we're repairing from all the

11        hurricanes.  We can make money if we

12        can get some drywall.  And so that's

13        what's happening here.

14              And the shipping -- so the

15        shipping records show it.  We've also

16        cited you to the Devon Trading Company

17        testimony where the Devon

18        representative states that customers

19        were specifically requesting generic

20        markings.

21              Do you have that cite there?

22              MS. EIKHOFF:  There's a lot of

23        different record citations, but they

24        are all laid out on pages 39 and 40 of

25        our PID brief.

Case 2:09-md-02047-EEF-MBN   Document 22380-37   Filed 12/02/19   Page 219 of 344
Case 1:11-cv-22408-MGC   Document 253-1   Entered on FLSD Docket 04/25/2013   Page 188 of 281
March 11, 2019

1          MR. VENDERBUSH:  Thank you.

2          So that's really important,

3     that this was a mark that -- because

4     people were getting drywall from

5     sources that they had never gotten it

6     before, because you have the

7     manufacturer.  Then you have these

8     brokers and importers who are getting

9     the drywall, and then they sell to

10    their customers, who are usually the

11    suppliers.

12         So they want to have something

13    that they can represent, right?  They

14    don't want to have Chinese characters

15    over all of it, they don't want to

16    have Chinese names.  So this generic

17    marking that meets minimum standards

18    for them that says MADE IN CHINA, that

19    says that it meets or exceeds the ASTM

20    American standard, that would be good

21    for them.

22         And they asked for that, and so

23    that's what they could sell to

24    suppliers.  Because it wasn't going to

25    say U.S. Gypsum on it, which was, you

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 220 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 189 of 281
March 11, 2019

```
 1            know, the usual domestic companies

 2            that brokers would sell to suppliers.

 3            It was new, and so it's this generic

 4            product.  You wanted drywall?  I've

 5            got drywall for you.

 6                  So that's where this generic

 7            market comes from, and so importers

 8            were asking different people to --

 9            different manufacturers in China to

10            make it that way so they could resell

11            it, and those are the examples that

12            are on those, 38 and 39.

13                  So they're making a big deal

14            out of the MPF, whether it has --

15            where we said MEET OR EXCEED, and that

16            that somehow proves or disproves

17            something.  It sort of gets used both

18            ways.

19                  But I just want to sort of take

20            the attention off of that, because

21            when Mr. Che testified that -- this is

22            a discussion between accurate and

23            precise.

24                  And I think it's when Mr. Peng

25            put that together, these are peoples
```

March 11, 2019

1    who are native Chinese speakers, and

2    they're being asked to fill out

3    American documents, and so the sort of

4    variation is understandable, really.

5         So -- and actually, the

6    plaintiffs themselves mention it.

7    It's footnote 208 in their brief,

8    which is on page 46.  And they say

9    it's not a stretch that a Chinese

10   manufacturer operating in a foreign

11   language would make a grammatical

12   error.

13        So it's -- the MPF is not that

14   it included an S or it doesn't include

15   an S.  We relied on what we saw in our

16   board, right, the board that we found

17   in our factory.  And so that had the

18   MEET OR EXCEEDS, and that's what we

19   based our admission on.

20        So I want to close with the

21   idea that we do not presume that every

22   single MADE IN CHINA is Taishan just

23   because some of them were admitted.

24   But look at each picture and see if

25   the greater weight proves it because

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 222 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 191 of 281
March 11, 2019

1       there were other manufacturers in this

2       area.

3               MS. SCHWAB:  Ms. Lee, if you

4       can go to slide 80, please.

5               SPECIAL MASTER LEE:

6       Eight-zero?

7               MS. SCHWAB:  Eight-zero.

8               Very briefly, I just want to

9       touch on a few points that

10      Mr. Venderbush made.

11              There's three boards or three

12      photos that Taishan denies in this

13      category.  The first one is photo 21,

14      and as you'll see, it's not just a

15      generic, as Taishan calls it.  The

16      similarities are -- they're nearly

17      identical.

18              The top one and the bottom one,

19      same font, same lettering, same

20      spacing, same everything.  The only

21      difference, as we looked at before, is

22      the S.

23              Another one Taishan denies is

24      photo 18.  This is the second one,

25      MADE IN CHINA MEET OR EXCEEDS, top one

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 223 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 192 of 281
March 11, 2019

1      they accept.  The bottom one they deny

2      because MEETS is plural.

3              Finally, the third one that

4      they denied is because -- it's photo

5      19 -- is because it says MADE IN CHINA

6      MEETS, plural.  And they say that they

7      didn't find any residual boards with

8      MEETS, plural, and so they -- it's

9      their -- they don't believe that

10     Taishan manufactured boards with

11     MEETS, plural.

12             However, the Taishan edge tape

13     on the right, also the date stamp and

14     the MEETS.  That's the third category

15     that they deny.

16             So we feel that we have met our

17     burden of persuasion to -- that all

18     three of these markings, 18, 19 and

19     21, are Taishan products.

20             SPECIAL MASTER LEE:  So

21     Defendants, can you just address photo

22     19?  Like what is your position on

23     that one?

24             MS. EIKHOFF:  Do you want me

25     to?

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 224 of 344
Case 2:11-cv-22408-MCE Document 253 Entered on FLSD Docket 04/25/2013 Page 193 of 281
March 11, 2019

1          MR. VENDERBUSH:  Go ahead.

2          MS. EIKHOFF:  Photo 19 has

3     MEETS with an S, and there are no

4     records at Taishan of any -- of ever

5     us manufacturing boards with an S at

6     the end of MEETS.

7          The evidence that we have and

8     what we have accepted responsibility

9     for are boards that say MEET OR

10    EXCEEDS.

11         I just want to take an

12    opportunity, and I don't think that

13    you'll disagree with me on this, that

14    when you have on your presentation PID

15    Catalog Photo 19, those are actually

16    not the photos from the catalog.

17         MS. SCHWAB:  Right.  This is

18    just a photo, an exemplar of photo 19.

19         MS. EIKHOFF:  Right.  So --

20         MR. VENDERBUSH:  According to

21    you.

22         MS. SCHWAB:  According?

23         MR. VENDERBUSH:  To you.

24         MS. SCHWAB:  Okay.  If you

25    classify this differently --

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 225 of 344
Case 2:11-cv-22408-MCE-EDocument 293-4 Entered on FLSD Docket 04/25/2013 Page 194 of
281
March 11, 2019

```
 1              MR. VENDERBUSH:  We don't know.
 2         This is the first we're seeing it.
 3              MS. EIKHOFF:  Yeah.  So I just
 4         want to just make clear that when
 5         Taishan was stating its positions for
 6         the court, it was stating them on the
 7         basis of the PID photo catalog and the
 8         photos in that catalog.
 9              So I just want to -- since that
10         says PID Catalog Photo 19, it is
11         another photo from a claim file that
12         you guys have attributed to category
13         photo 19.
14              MS. SCHWAB:  Right.  And, you
15         know, and I'll represent to you that
16         photo 19 says MADE IN CHINA.MEETS, and
17         it's the same font that's in this
18         photo.  This is just a photo that we
19         came across that we are using because
20         we think that it's a better picture
21         because it gives the full board.
22              SPECIAL MASTER LEE:  Does the
23         catalog photo have the tape?
24              MS. SCHWAB:  It does not.
25              MS. EIKHOFF:  No.  And
```

March 11, 2019

1          actually, here's -- that's photo 19

2          from the catalog, if you want to just

3          see.

4                    SPECIAL MASTER LEE:  Okay.

5                    MS. SCHWAB:  And one final

6          comment, Your Honor.  I would just

7          like to note that I understand that

8          Ms. Eikhoff's position is they haven't

9          come across any records that they

10         manufactured boards with MEETS,

11         plural.  However, in light of the

12         Manufacturer Profile Form, only having

13         MEET OR EXCEEDS singular, and Mr. Che

14         Gang's testimony that it was not

15         necessarily precise with regards to

16         singular or plural, I think that --

17         I'm belaboring the point, but I will

18         move on.

19                   So Category J, which is drywall

20         with dimensions.  So again, in

21         Taishan's Manufacturing Profile Form,

22         they admit to manufacturing 203,130

23         sheets of drywall with white edge

24         tape -- with white edge sealing tape

25         without words printed thereon and

1    product markings DRYWALL, all caps,

2    4feetX12feetX1/2inch.

3           Now, as Your Honor is likely

4    aware by now, that is the size of the

5    American size of gypsum board.

6           So this is actually the photo

7    from the catalog, photo number 2, and

8    this is the only drywall with

9    dimensions marking that Taishan admits

10   in this bucket.

11          In Mr. Che Gang's deposition in

12   2019, his position was Taishan does

13   not deny the possibility that 2 is a

14   product of Taishan as a possibility.

15          In Taishan's brief, they say:

16   Taishan's litigation position to

17   accept responsibility for the markings

18   in photo 2 relied on its similarities

19   in font and print style to the MADE IN

20   CHINA exemplars it found.

21          That's at page 44 in Taishan's

22   brief.

23          So it's talking about this W,

24   and that's what Mr. Che Gang

25   explained, that they found some other

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 228 of 344
Case 2:11-cv-22408-MCC Document 293 Correction 07/15 Docket 04/25/2013 Page 197 of 281
March 11, 2019

1    residual board in 2018 that had a

2    similar W, so because of the

3    similarities in the W with the drywall

4    with dimensions, they are accepting

5    this vari- -- this font variation.

6         Again, this is the same sword

7    and shield argument.  At one point

8    they want to say, oh, the fonts are

9    similar, and so they will accept it.

10   But whenever the fonts are -- whenever

11   other fonts are similar, like the

12   GYPSUM in C&K and the GYPSUM in

13   another marking, the Taishan sealing

14   board, they don't want to acknowledge

15   it and say, no, just because fonts are

16   similar, it doesn't mean that they're

17   both our product.

18         But here, they relied

19   exclusively on the similarities in the

20   W to accept this marking variation.

21         So this is photo number 2 from

22   the catalog, and this is photo

23   number 9 from the catalog, and I tried

24   to blow it up so I see that it's kind

25   of pixillated, but this is at Tab 3 to

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 229 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 198 of
281
March 11, 2019

```
1              plaintiff's product ID brief, and

2              there are better pictures.

3                   So number 2, Taishan admits

4              responsibility.  So you have drywall

5              with dimensions.  And as you'll see,

6              this is a big Y.  The D is capitalized

7              and the Y is capitalized, and that's

8              very important because the DRYWALL

9              4feetX12feetX1/2inch that is indicated

10             in the Manufacturer Profile Form that

11             Taishan admits to manufacturing, all

12             of the DRYWALL is capitalized.  Here,

13             just the D and just the Y is

14             capitalized.  So Taishan admits to

15             manufacturing this.

16                  However, at page 19 of the

17             catalog, again, big Y, big D, Taishan

18             says, no, this isn't ours because we

19             didn't make -- the numerical markings

20             are not consistent with Taishan's

21             records.  They didn't manufacture

22             this.  So they said even though the Y

23             is similar, even though both of these

24             look nearly identical, this isn't one

25             of ours.
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 330 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 199 of
281
March 11, 2019

```
1              Again, Mr. Che Gang was shown
2         this picture -- this is found at photo
3         5 in the catalog -- and was asked what
4         did Taishan rely on to deny this
5         marking?
6              Mr. Che Gang's testimony was:
7         Based on my years of experience in the
8         gypsum board industry, the marking on
9         page 5 is not a sprayed marking, but
10        rather a painted marking.
11             Now, that was discussed
12        earlier, the difference between a
13        spray marking and a painted marking
14        and the numerous font variations.
15             However, whenever this photo
16        was shown to Mr. Che Gang, which was
17        from Taishan's own production -- and
18        this makes it look like that it's
19        really grainy.  It's not that grainy,
20        but be that as it may, same font
21        variations, same type of writing --
22        was asked:  Is this the same marking
23        that's found at photo 5?
24             Mr. Che Gang's response was:
25        There's some similarities of fonts,
```

March 11, 2019

1    but because the picture is in black

2    and white, you cannot see whether or

3    not it is injected by needle sprayer.

4    In addition to that, this set of

5    pictures cannot prove that the

6    products are from Taishan.

7         Now, this will come up and will

8    be discussed, but we would love to

9    have better quality photos.  We would

10   love to have photos that aren't in

11   black and white.  We would love to

12   have color photos.  But this is what

13   we were given.  We've asked for better

14   quality, we've asked for color photos

15   and have been told that this is the

16   best that we can do.

17        So even though the similarities

18   are striking, he said that there's

19   some similarities, but because of the

20   quality, he can't accept that.  And

21   that's why this marking was denied by

22   Taishan.

23        So this is a photo from

24   Venture, and I put this in here only

25   to show that this is also a painted

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 233 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 201 of 281
March 11, 2019

1      marking.  And what's Taishan's

2      position here?  They accept this

3      Venture marking.

4             So if we go to the next slide,

5      I just show this to again show the

6      work shift number, work shift stamp I

7      think is what the correct term is.

8             Again, big Y that Taishan has

9      admitted to whenever it's followed by

10     or preceded by dimensions.  But if

11     it's with a date and work shift

12     number, what do they do?  They deny

13     the top one, but the bottom one, which

14     is Venture Supply, and we looked at

15     all of the different variations, the

16     bottom one is admitted.

17            And Mr. Venderbush said earlier

18     that anybody can stamp these numbers

19     and these dates and the time on their

20     boards.  But I would submit that the

21     fonts in these two photos are very --

22     are very similar.  I think that's

23     important because, again, whenever

24     it's beneficial to Taishan, they say

25     look at the similarities, we'll admit

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 233 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 202 of 281
March 11, 2019

```
 1          that.  Whenever -- and then in other

 2          situations when it's similar, they

 3          won't take the same position.

 4                  Now, Your Honor, there are some

 5          other markings for drywall with

 6          dimensions that I have not gone over.

 7          Those can be found at 6, 7, 8 and 10

 8          of the catalog.  And I would submit

 9          that because of all of the variations

10          in Taishan's position, that the reason

11          why they accepted just this one was

12          because of the similarity in the W

13          and, in contrast with the Manufacturer

14          Profile Form, where all of the letters

15          were in caps, that -- and this is

16          outlined in the brief, in the

17          variations in all of them, that

18          there's no way, because we weren't

19          lucky to find any residual boards for

20          any of these markings, that all of

21          them should be attributed to Taishan.

22                  MS. EIKHOFF:  We should be at

23          slide 28.

24                  MR. VENDERBUSH:  Thank you.

25                  So here in drywall with
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 234 of 344
Case 2:11-cv-22408-MCE-DCK Document 253, Page ID on File Docket 04/25/2013 Page 203 of
281
March 11, 2019

1        dimensions, the plaintiffs begin to do

2        what they should be doing, which is --

3        which as I suggested in the last

4        category, which is to bring to you

5        their proof for each category.

6                And we heard about

7        subcategory 9 and we heard about

8        subcategory 5, and at the end,

9        Ms. Schwab said she didn't touch on 6,

10       7, 8 and 10.

11               So the fact that they have some

12       proof for 9 and some proof for 5

13       doesn't mean that then you just roll

14       all the cards over and put it all to

15       Taishan, that there is a burden of

16       proof and there is a fact-specific

17       inquiry for each of the different

18       subcategories.  And just because

19       there's variation doesn't mean that it

20       all goes to Taishan.

21               So here we can see the

22       variation in this category, we have at

23       least eight different looks of that.

24       And earlier today I think the

25       plaintiffs showed you the picture

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 235 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 204 of 281

March 11, 2019

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 235 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 204 of 281

1          of -- for Venture, and they put five

2          different versions up here, and I

3          would suggest that there's actually,

4          at most, three, that this one and this

5          one are the same, and this one and

6          this one are the same, and this one --

7          I mean, that doesn't really count

8          because they haven't shown you

9          anything that looks anything like that

10         in MADE IN CHINA or in DRYWALL.

11              So were there two different

12         sets that they showed you?  Yes, but

13         that's not eight different sets.  And

14         so there's not so much variation here

15         as meets the eye.

16              So the inquiry continues to be

17         subcategory specific, and we haven't

18         heard anything about 6, 7, 8 and 10.

19              And so they continue to rely on

20         the myth of the two manufacturers in

21         this hearing, and they discount

22         Taishan's attempt to acknowledge its

23         responsibility here where, by

24         accepting Category 2 -- which we did

25         accept.  We did not have to do that,

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 236 of 344
Case 1:11-cv-22408-MGC Document 293-1 Entered on FLSD Docket 04/25/2013 Page 205 of 281
March 11, 2019

```
 1          but that Category 2 actually accounts

 2          for 529 of the 960 claims that are in

 3          this category.  So that is not a

 4          small -- even though it's only one of

 5          the eight, it's actually by far the

 6          largest section.

 7               So that was not something that

 8          Taishan had to do, but they could

 9          have -- you know, if we were as

10          recalcitrant as we have been painted

11          today to just sit back and say prove

12          your case, right, so we haven't done

13          that.

14               And so the equitable picture

15          here, I'm just trying to reset it a

16          little bit, that there have been

17          reasonable admissions that my client

18          has made, and it's not just we threw

19          away all the documents that were

20          making you prove your case, right?

21               We're making denials where we

22          reasonably felt that we couldn't admit

23          it because that's what defendants do.

24          That's the defendant's right, to make

25          the plaintiffs prove their case.  And
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 237 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 206 of
281
March 11, 2019

1    so on some they may have better proof,

2    on some they may have no proof.  So we

3    ask the special master to honor

4    Florida law and honor the record here

5    to make the determinations.

6         SPECIAL MASTER LEE:  Okay.

7         MS. SCHWAB:  Slide 88, please.

8    Your Honor, I just -- I noticed that

9    there's wasn't a cite to the photo on

10   the right that I represented was from

11   Taishan's production that I wanted to

12   provide.  It's Tab 30 at page 3 of

13   plaintiffs' product ID brief.

14        Mr. Venderbush is right.  We

15   didn't go through 6, we didn't go

16   through 7, we didn't go through the

17   other ones, but the reason is, is

18   because all of that is discussed in

19   depth in our brief.

20        We can go through all of those

21   today, but we don't think that it

22   would be efficient or beneficial

23   considering the Manufacturer Profile

24   Form doesn't distinguish between

25   capitalizations, plural, singular,

March 11, 2019

1    none of that.

2            So we're relying on the

3    evidence that we have and the markings

4    that we have and the admissions, and

5    from that, we can extrapolate what we

6    can.

7            Taishan just said earlier that

8    there are other manufacturers besides

9    them that mark boards with these

10   markings.  Yet they haven't named one

11   manufacturer.  They haven't pointed to

12   one manufacturer with the drywall with

13   dimensions, so there's no one else

14   that we know of with the DRYWALL

15   4feetX12feetX1/2inch except for

16   Taishan.

17           And I am going to pass at the

18   time to my colleague, Mr. Serpe.

19           MR. SERPE:  One moment.

20   Special Master, I'd like to take a

21   short break.  I've got a couple of

22   questions I want to bounce of off

23   counsel about one of the slides they

24   put up that would be helpful for me on

25   this presentation, and then I'll be

Case 2:09-md-02047-EEF-MBN  Document 22380-37  Filed 12/02/19  Page 239 of 344
Case 2:11-cv-22408-MCE-Document 253  Entered on FLSD Docket 04/25/2013  Page 208 of 281
March 11, 2019

1          ready to go.

2                    SPECIAL MASTER LEE:   Okay.

3          We'll take five minutes.

4                    (Recess taken, 2:33?p.m. to

5          2:40?p.m.)

6                    MR. SERPE:   The next bucket

7          we're going to attend to are unmarked

8          boards with white edge tapes.   The

9          denomination of these is an area that

10         calls for a little bit of precision as

11         to whether there was no edge tape or

12         whether it was white edge tape, but

13         we're going to -- let me start by

14         saying unmarked, there were no

15         markings on the board itself, white

16         edge tape.

17                   So we start with Taishan's

18         Manufacturer Profile Form, we've

19         provided as Tab 11, and they admit to

20         351,745 sheets of drywall with no

21         product markings, no edge sealing tape

22         markings from -- it's a narrow window,

23         March of '6 to September of '6, so

24         it's a six-month window for Taishan,

25         and in that window they generated

Case 2:09-md-02047-EEF-MBN   Document 22380   Filed 12/02/19   Page 340 of 344
Case 1:11-cv-22408-MGC   Document 253   Entered on FLSD Docket 04/25/2013   Page 209 of
281
March 11, 2019

```
 1          351,745 boards to go into the United
 2          States.
 3                  I like to convert boards to
 4          homes, how many homes are we talking
 5          about.  And you can measure a home and
 6          calculate.  But let me just tell you
 7          that my metric is 500.  Counsel might
 8          suggest a different number.  500
 9          sheets go into a home.  I've done that
10          based on having looked at sales
11          invoices for 200 homes built with
12          Taishan drywall in Virginia and
13          counted how many boards.  500 would be
14          an overestimate of how many Taishan
15          boards went into a home, but I use
16          that.
17                  If you do that math, which I'm
18          terrible at, but did it before I
19          started, you're talking about enough
20          drywall to do 700 homes.  700 homes
21          with white board.
22                  At line 11 of the profile form,
23          they admit to 19,000 sheets of drywall
24          with no product markings, but edge
25          sealing tape that is white edge
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 241 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 210 of 281
March 11, 2019

1    sealing tape without words printed

2    thereon.  So, you know, add that to

3    the pile.

4          Despite having sent that volume

5    in, into the United States, Taishan,

6    for the purposes of the contest that

7    you're deciding, has admitted zero

8    boards that are unmarked.

9          Taishan has no lucky residual

10    board exemplar for which we can turn

11    to, so we end up in a situation where,

12    by counsel's definition, pounding away

13    on the burden of proof, Taishan's

14    position would be on a white board,

15    even though we sent in enough drywall

16    for here, 700 -- I'm going to do a

17    little bit more calculations on some

18    other documents -- we're responsible

19    for none of it.

20          The deposition which we took in

21    January, we went over a document with

22    Mr. Che, who was the 30(b)(6)

23    deponent.  And in it they acknowledged

24    998,778 square meters of board with

25    white, unlettered edge banding and

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/03/19 Page 242 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 211 of 281
March 11, 2019

1        another 1,020,749 square meters of

2        gypsum board with unknown.

3            So let me just look at the

4        unknowns for a second.  We've got,

5        from their Manufacturer Profile Form,

6        351,000 boards.  I said that's 700

7        homes.

8            For the unknown category, at a

9        million square meters, Counsel can

10       correct my math, but I'm looking at

11       228,000 sheets.  That would be enough

12       for another 457 homes of unknown.  It

13       was unknown white and blank, but we

14       don't know.  We don't know.

15           Did they have records that have

16       been destroyed that haven't been

17       turned over?  But between these two

18       categories, the ones they acknowledge

19       were white, 700 homes.  Here's another

20       450 homes that they're saying unknown.

21       Between the two of them, that's 1,200

22       homes that Chinese -- that Taishan's

23       drywall installed in a home is going

24       to destroy that home from the inside

25       out, damaging the plaintiffs

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 343 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 212 of 281
March 11, 2019

1    monumentally, turning their lives

2    upside down.

3         1,200 -- enough drywall, 1,200

4    families lives turned upside down.

5    Only 80 homes now are in this contest

6    to say, hey, I had the white board.

7    This has got to be yours, Taishan.

8         How many does Taishan accept?

9    The answer?  Zero.

10        So when we're talking about

11   equities, when we're talking about how

12   you should interpret evidence and the

13   defendants' conduct in this

14   litigation, we want to make sure that

15   we've emphasized the fact that because

16   of their marketing and marking

17   strategies, they end up in the

18   luxurious position where even though

19   they dumped toxic drywall on 1200

20   homes, they're able to sit back and

21   say, burden of proof, get out of jail

22   free card.

23        In the briefing we laid out how

24   United States custom law has very

25   specific regulations with respect to

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 244 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 213 of 281
March 11, 2019

1    how products have to be marked before

2    they're imported into the United

3    States.

4        We also provided citations to

5    documents where some of the U.S.

6    customers that were dealing with

7    Taishan at the time said, hey, you

8    need to make -- you have to print MADE

9    IN CHINA, you have to put other

10   identification information on those

11   boards according to U.S. custom law.

12   That's the law.

13       So we know back in 2006 that

14   Taishan was aware of it.  It would be

15   real incredulous to suggest that a

16   huge manufacturing concern like

17   Taishan was unaware of U.S. imports,

18   but we can show, because one of the

19   customers was e-mailing the U.S.

20   customs requirement to Taishan

21   contemporaneously, they knew about it.

22       In the 30(b)(6), Mr. Che

23   offhandedly brushed it aside.  Oh,

24   different companies -- countries have

25   different things that they may require

March 11, 2019

```
 1        on their board.  We don't pay any
 2        attention to that.
 3              So we now end up with enough --
 4        clearly enough for 700 homes.  In my
 5        mind, I lump their unknown into this
 6        category as well.  To me it fits
 7        conceptually, either 1,200 or 700
 8        homes with these blank boards, no
 9        information.
10              And we've got them specifically
11        violating U.S. law which required them
12        to print the identifying information
13        on the boards.
14              In terms of burden of proof,
15        burden of persuasion, we believe we
16        presented the special master with
17        overwhelming evidence regarding the
18        fact that Chinese clearly -- that
19        Taishan clearly made these boards.
20        They clearly imported them.  It's here
21        in the United States.
22              Now we have 80 homes, a tiny
23        fraction of that where people have
24        pulled the boards out, submitted the
25        proof, that's what it is.  Taishan is
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 246 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 215 of 281
March 11, 2019

 1          saying none of that is ours, so you

 2          can't satisfy your burden of proof,

 3          hiding behind a violation of U.S. law

 4          that they were supposed to print

 5          information on the board and did not.

 6              We think in that situation that

 7          the law -- they're quite right on the

 8          burden of proof, and I went back and

 9          looked at the inference and shifting

10          burden section of our brief, and we'll

11          be happy to supplement, but we believe

12          you do have the ability, as the finder

13          of fact, to make inferences against

14          the defendants based upon their

15          conduct.

16              Start with the basic jury

17          instruction, credibility of a witness,

18          in every trial you've ever been in.

19          If you believe that the witness has

20          been untruthful about one thing, you

21          may infer that they've been untruthful

22          for their entire testimony.  That's

23          standard.

24              If they violate U.S. law and

25          say, you know what, we're not going to

1    mark those boards, thumbing their nose

2    at the U.S. legal requirements for

3    importing, and then dump 700 or 1200

4    homes worth of drywall, hundreds of

5    thousands of sheets of drywall on the

6    U.S. market, engage in the course of

7    discovery, which we've briefed

8    ad nauseam, we've argued back and

9    forth over whether or not Taishan has

10   acted with -- beyond callous

11   disregard, really with intent to

12   deceive.

13           And we believe Judge Fallon has

14   so found, and we've laid that out.

15   I'm not going to delve into specific

16   items and argue back and forth with

17   counsel, but I believe that the court

18   will find that after the years of

19   delay, after the hide-the-ball

20   discovery tactics, after they violated

21   U.S. law, after they lied in

22   depositions, that the court has got

23   the ability to infer that on that vast

24   volume of blank board or white board

25   without markings that came in, tiny

March 11, 2019

```
 1          portion that is 80 homes, zero

 2          admitted in violation of the law, that

 3          you should infer against the

 4          defendants and let's turn that

 5          burden -- the burden of persuasion,

 6          not the burden of proof.  Let's turn

 7          the burden of persuasion to Taishan.

 8               Explain yourselves.  Why didn't

 9          you mark those boards?  Do you have

10          any evidence?

11               Now, I appreciate the Court's

12          ability to take a minute to ask

13          learned counsel where they got this

14          pie chart from, which is their slide

15          30, but I think it shows up like five

16          times in their presentation.  They

17          keep coming back to it, the pie chart.

18               And which, you put it up and

19          you look and they're calculating out

20          to 22%, how much drywall came from

21          other manufacturers other than

22          Taishan, Knauf and BNBM, who is their

23          parent company, right.  And they come

24          down, all these other companies, it's

25          this vast -- of the drywall that came
```

Case 2:09-md-02047-EEF-MBN Document 22380 Filed 12/02/19 Page 249 of 344
Case 1:11-cv-22408-MGC Document 295 Entered on FLSD Docket 04/25/2013 Page 218 of 281
March 11, 2019

1     into the United States, it's a vast

2     22%.  And counsel keep pounding me

3     specifically and the plaintiffs' team.

4     They had these plaintiffs, they let

5     them go, they should have presented

6     it.  Here's the evidence that there

7     were all those manufacturers.

8          Where did that come from?

9     Where do you get 22% from?

10         Well, it turns out that they

11    pick one of their markers for how much

12    drywall total came into the United

13    States.  They picked the HUD number.

14    So they start with, well, that's how

15    much drywall came in, in the number of

16    sheets or square meters, whatever unit

17    that you want.

18         What did they deduct from that?

19    They deducted how much they admitted

20    they sent in.  Those are their

21    numbers.  Assuming we put in 20% here

22    and 20% there and 20% here; so

23    therefore, add that up and you know

24    what we're not admitting?  We're not

25    admitting 22% of this.  So therefore,

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 250 of 344
Case 2:11-cv-22408-MCC Document 253 Entered on FLSD Docket 04/25/2013 Page 219 of 281
March 11, 2019

```
 1          ergo, that had to have been some other

 2          manufacturer in China that was sending

 3          that stuff in there.  I think that's

 4          hogwash.

 5               You put it in a pie chart and

 6          take it out to a percentage like 22%

 7          and cloak it with what looks like a

 8          reliable amount of information, but

 9          it's based on a deduction from their

10          assumptions or how much they've been

11          willing to admit they manufactured.

12               Where is the hard documentation

13          that these manufacturers sent in

14          drywall to the United States?  Where

15          are the sales records, where are the

16          sheets, where are these other items?

17               So two last kind of points on

18          this.  One of the points counsel makes

19          is, yeah, we named these other

20          manufacturers in the complaint.  Where

21          are they?  How come you haven't

22          brought them in?

23               Counsel relies on the Consumer

24          Product Safety Commission as part of

25          the slide here.  When you go back and
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 251 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 220 of 281
March 11, 2019

```
 1        look at the Consumer Product Safety
 2        Commission, several of these
 3        manufacturers had their boards
 4        submitted to the Consumer Product
 5        Safety Commission and they were tested
 6        to see if they came from the same
 7        region, the same strata of the mine
 8        that Mr. Montoya was talking about,
 9        that you picked up the contamination
10        and that they would release gases.
11             And guess what?  Many, many of
12        the Chinese companies that were
13        sending a small amount of drywall at
14        the time, yeah, they had drywall, but
15        it wasn't from that mine.  There was
16        no sulfur in it.  It wasn't
17        off-gassing.
18             So it's not enough that it was
19        a Chinese company that happened to
20        make drywall at the time.  It had to
21        have been the problematic drywall that
22        had the sulfur that released the
23        corrosion.
24             So we come back again to --
25        we've been pursuing this for a decade,
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 252 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 221 of 281
March 11, 2019

1      fighting as hard as we can, looking

2      everywhere, to China.  Every time we

3      serve a complaint over there, it's

4      $100,000.  We've done everything we

5      can to get documentation.

6          And we turn to -- we're in the

7      United States.  We're doing this

8      across the ocean, we're doing it from

9      the standpoint where the state of

10     China goes through documents that

11     we've asked for and makes sure that

12     they're okay for state secrets before

13     they release them to us.

14         That laptop computer that

15     Mr. Montoya told you about?  Before

16     they gave us anything off the laptop,

17     it had to go through the state secrets

18     commission.  We only saw what they

19     wanted us to see.  So that's how we

20     get documents from companies like

21     that.

22         They're a Chinese company

23     that's state owned, and they've got

24     state ownership going all the way up

25     to the state of China.

Case 2:09-md-02047-EEF-MBN Document 23380-37 Filed 12/02/19 Page 353 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 222 of 281
March 11, 2019

1          They have a division -- we

2     cited this in your brief -- who

3     specifically looks at their

4     competitors to see what they're doing.

5          And I again, in the deposition

6     and today, I said show me a document

7     where there was any substantial

8     exporting of unmarked boards with

9     white edge tape from any manufacturer

10    that was from the Taihe region that

11    had the contaminated sulfur.  One

12    document, one invoice.  I haven't seen

13    one.

14          Is there one out there?  Is it

15    possible another company sent them?

16    Anything's possible, Special Master,

17    but what I can tell you is, they did

18    enough to destroy 700 homes, 1200

19    homes if you lump in the unknowns.

20          We know they did, and it's

21    here, and it's corrosive, and we have

22    80 homes with that board that have

23    been destroyed.  Their response is:

24    Burden of proof.  We're done.  Didn't

25    mark it.  Too bad.  Still your burden

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 254 of 344
Case 2:11-cv-22408-MCE Document 253-1 Entered on FLSD Docket 04/29/2013 Page 223 of 281
March 11, 2019

1    of proof.

2         They're in China, they know

3    their competitors.  They know how to

4    access documents and how to do the

5    research.  We're not there, we can't

6    do any of that, yet they want to say

7    we have to go and figure out about

8    these other companies, et cetera.

9         We've done our best and what I

10   can tell you is we're unaware of

11   another Chinese company making

12   unmarked boards with white edge tape

13   that were sent into this state by

14   anyone other than Taishan.

15        Thank you.  Special Master,

16   forgive me, I got ahead of myself.  I

17   just want to point out three last

18   documents that were in the PowerPoint.

19   Thank you, and I apologize for that.

20        We were layering additional

21   proof of our diligence in pursuing

22   documentation.  Here is Taishan

23   specifically indicating that they're

24   not going to do spray markings.

25        Exhibit A to the Defendant's

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 355 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 224 of
281
March 11, 2019

1    Manufacturer Profile Form

2    acknowledging that they made white

3    edge sealing tape without words.  And,

4    as an example, the Wheeler case --

5    this is one of the 80 families --

6    white board, white tape, highly

7    corrosive, and there's no markings on

8    it.

9         And the question becomes what

10   do you tell the Wheelers?  In this

11   situation and for the reasons I just

12   articulated, we believe we've met our

13   burden of persuasion because of the

14   huge volume they sent.  Their conduct,

15   particularly in not marking the

16   boards, and not marking the boards,

17   and their lack of presenting any

18   affirmative data to the contrary.

19        Thank you.

20        MR. VENDERBUSH:  Slide 32, I

21   think we're at.  So Mr. Serpe did a

22   little bit of a mini closing there, so

23   I'm not going to touch on everything

24   that he talked on.  I'm going to talk

25   about white edge tape and the -- some

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/03/19 Page 256 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 225 of 281
March 11, 2019

1    of the legal issues that relate to

2    white edge tape, and then I understand

3    we're going to have some real

4    closings.  So I think my colleague,

5    Ms. Eikhoff, will address some of the

6    other issues that Mr. Serpe raised

7    that were more global.

8        So I just want to give you a

9    quick picture of what white edge tape

10   looks like.  We were talking about

11   generics before.  This is as generic

12   as it gets.  This is -- these are the

13   kinds of pictures that we're looking

14   at for them to say this was made by

15   Taishan, right?

16       And, I mean, I have been a

17   products liability lawyer for

18   25 years, and product ID is a critical

19   issue in many cases.  And the

20   plaintiffs have to make the

21   connection, and Florida law requires

22   it, to connect the product to the

23   manufacturer.

24       So the ultimate question in --

25   for each of these claims is going to

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 357 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/29/2013 Page 226 of 281
March 11, 2019

1    be can the claimant prove that the

2    product in the home was corrosive,

3    number one.

4         I mean, Mr. Serpe says, oh,

5    look at Mr. Wheeler's boards, they're

6    corrosive.  We don't know that those

7    boards are corrosive.  There's nothing

8    about them on their face that says

9    they're corrosive.

10        Do they have -- are there

11   chemical reports that say those

12   particular boards are corrosive?  And

13   then there's nothing that says that

14   those are Taishan boards.

15        So he said we don't know

16   anything about other people making

17   blank boards, but we do.  There is in

18   this record, and we -- there's buyer

19   testimony in our Appendix 67.

20        What distinguishing marks does

21   Pingyi Baier drywall have on it?

22        None.

23        Does it say Pingyi Baier on it?

24        No.

25        Does it say Chinese drywall?

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 358 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 227 of 281
March 11, 2019

```
 1                No.
 2                It has no markings on it at
 3       all?
 4                Not that I recall.
 5                How about the Beijing product,
 6       Beijing Materials?
 7                How about it?
 8                What distinguishing marks does
 9       it have?
10                None.
11                It doesn't say anything.
12                So in this hectic market,
13       people were getting the drywall that
14       they could get and Chinese
15       manufacturers were making it in
16       various different ways.
17                And so there is nothing that is
18       distinctive or unique about blank
19       drywall, and there's -- actually, we
20       have to look at each one of these
21       pictures.  It's not like it says
22       ProWall on it, or it's not like it's
23       something that's distinctive as we
24       would be used to in a product
25       liability product identification
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/03/19 Page 259 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 228 of 281
March 11, 2019

1     setting.  If you have a product and

2     there's nothing identifying about it,

3     then there's nothing to tie it to the

4     manufacturer.

5         So if there's an absence of

6     evidence, that is the state of the

7     record.  And that's what the Blackston

8     case is about, is that the Eleventh

9     Circuit said in the asbestos setting,

10    which I will submit the equities were

11    even greater, the Eleventh Circuit

12    said just because it's hard to prove

13    exposure to asbestos doesn't mean that

14    we're going to create a presumption

15    that does not exist in the applicable

16    state law.

17        And that's what they're asking

18    you to do, to sua sponte create a

19    presumption that shifts the burden of

20    proof to us to disprove that any of

21    these products are ours.  And there's

22    just no authority for that.

23        So Blackston says you cannot do

24    that.  They have not invoked Rule 37,

25    and the inherent power that they cite

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 360 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 229 of 281
March 11, 2019

```
 1          in their brief, the cases that suggest
 2          that might be available, they also say
 3          that that would be a Rule 37-like
 4          procedure.
 5               So they need to move for that
 6          and allow us to defend on that if
 7          they're going to try to meet the very
 8          specific Rule 37 factors, which
 9          include bad faith, which they
10          themselves have said we couldn't have
11          done because we did this in the normal
12          course.
13               So I don't want to get into
14          litigating Rule 37.  I'm just saying
15          Rule 37 is not here.  So that's not a
16          basis for doing it.
17               And the reference to the
18          Tariff Act of 1930, which Mr. Serpe
19          obliquely referred to -- that's what
20          he was referring to about the
21          markings.  And he misstated it,
22          because it's not a statute that
23          requires a manufacturer to identify
24          their product.  It identifies -- in a
25          conspicuous place as legibly,
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 361 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 230 of
281
March 11, 2019

```
1        indelibly and permanently as the

2        nature of the article or container

3        will permit in such manner as to

4        indicate to an alternate purchaser in

5        the United States the English name of

6        the country of origin of the article.

7            So it's not a product

8        identification statute, so there's not

9        some sort of reasonable care standard

10       that we have violated or something.

11       It is country of origin.

12           And the sanction for violating

13       the Tariff Act, if we have done that,

14       is set forth in the statute, and it is

15       not to change Florida law on the

16       burden of proof.

17           So -- and even if we put

18       that -- and it's not relevant because

19       even if we put it on, MADE IN CHINA,

20       we've seen MADE IN CHINA is not an

21       indelibly uniquely mark.

22           So there's just no basis that

23       they've provided you other than just

24       do it because we've been doing this

25       for ten years and it's hard.  And so
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 262 of 344
Case 2:11-cv-22408-MCE-DEK Document 253-1 Filed on 04/25/2013 Page 281 of
281
March 11, 2019

1    that would just be unlawful as far as

2    we're concerned.

3            So we think that this is a

4    situation where the plaintiffs have --

5    that the special master cannot say as

6    a categorical matter not only have

7    they not proved that this has to be

8    our board, but that's not a -- that

9    wouldn't even be a meaningful ruling

10   because when we look at some of these

11   pictures, they're calling white edge

12   tape things that aren't edge tape,

13   right?

14           This came up at the -- at

15   Mr. Che's deposition where the

16   plaintiffs were calling things edge

17   tape and he had to correct them to say

18   that that's joint tape or face tape.

19           So we actually, if -- we would

20   have to go through each one of

21   these -- even if there were some

22   categorical saying, anytime you see

23   tape, that means it's Taishan, we

24   would still have to go through and say

25   but that's not edge tape.  Just the

1    fact that we made product with edge

2    tape doesn't mean that every time you

3    see a piece of white that it has to be

4    ours.

5          And they -- we haven't made

6    this impossible for them, right?

7    There are ways that could be done, but

8    they -- in a difficult situation, and

9    the Eleventh Circuit envisions that

10   there will be difficult situations of

11   proof in the product ID space.

12          So what could they have done?

13   They could have gone to every home and

14   found out where those boards came

15   from.  These supply chain records

16   exist and they've shown you some of

17   them over the course of the day.  It's

18   a difficult situation.

19          If you have proof -- they have

20   all documents from many of these

21   suppliers, and they could trace those

22   back to home -- because this is what

23   they're going to have to do eventually

24   is go, all right, Mr. Wheeler's house,

25   those five blank boards, how are those

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 264 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 233 of
281

March 11, 2019

1    Taishan, right?  Well, they could go

2    find who -- the builder who built that

3    home and get the supply records and

4    then tie those back, and did those

5    come from one of the shipments that

6    Mr. Serpe referenced.

7         But it is not enough for an

8    individual product identification

9    inquiry to say -- to use volume.  You

10   shipped a lot of boards, therefore any

11   board that we call white edge tape is

12   yours.  That cannot be how a product

13   identification inquiry works.

14        So they could do it that way,

15   they could do drywall samples, where

16   they find one of these they can tie

17   back to a Taishan shipment and then

18   go, look, it has the same chemical

19   analysis that a Taishan board has.

20        But we don't even know that the

21   particular boards that we saw are

22   corrosive.

23        So this is not impossible.  It

24   is very difficult, I totally grant you

25   that.  But that is the burden that

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 365 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 234 of 281
March 11, 2019

1    Florida law puts on a party that wants

2    to shift resources from one side of

3    the V to the other side of the V.  And

4    the wisdom of hundreds of years of law

5    says that this is what we demand in

6    our legal system before we do that

7    property shifting.

8         And on the white, unmarked edge

9    tape, it is a complete failure of

10   proof for what they've given you.

11        MR. SERPE:  You can leave that

12   up.  Drywall samples, chemical

13   analysis could identify the maker of

14   the drywall.

15        I've been in this case since

16   2009.  Tried the first case against

17   Taishan in the fall.  I have been on

18   every expert and science team since

19   then.  I have never heard an expert

20   witness, not once, that purported to

21   say here's a drywall sample and I can

22   do a chemical signature and show it

23   came from the same company.

24        If such proof existed, I'm

25   shocked that we haven't seen chemical

Case 2:09-md-02047-EEF-MBN  Document 22380-37  Filed 12/02/19  Page 266 of 344
Case 1:11-cv-22408-MGC  Document 253  Entered on FLSD Docket 04/25/2013  Page 235 of
281
March 11, 2019

1    analyses that have attempted to

2    exculpate the defendant presented at

3    this point.

4         We have a defendant in default.

5    Their drywall has already been

6    demonstrated to be corrosive,

7    demonstrated and adopted by

8    Judge Fallon, adopted by Judge Cooke,

9    that it off-gases and causes corrosion

10   in the homes.

11        We go in the homes, we find the

12   corrosion.  We have done all of the

13   scientific testing that we think is

14   possible in this case.

15        Supply chain.  We took those

16   depositions.  We went through all the

17   employees.  We went through the

18   records.  If we had found -- if there

19   was a way to do this, we would have

20   unturned those stones to have looked

21   for additional documentation and

22   presented it.  And it's not there.

23        So we're left with the burden

24   now to say what do you do with a

25   white, unmarked board?  Well, you do

1       what we did here, which is find out

2       exactly how much they made and under

3       what circumstances, and we did.

4            Counsel is quite right, and I

5       tried to say -- it's in our brief

6       about the Tariff Act because my strong

7       suit is more on the science than on

8       the legal analysis.  And in our brief

9       we specifically outlined the Tariff

10      Act and what their requirements are.

11           I think I just heard counsel

12      acknowledge his client violated that

13      law, they're not contesting that.

14      Guilty.  He points to penalties that

15      are in there that U.S. Customs could

16      have imposed against the manufacturer

17      for each shipment that had come in,

18      but that's not the context we're

19      talking about here.

20           We're talking about what do you

21      do, what does Your Honor do in the

22      context of this case.

23           Counsel talks about we've got

24      to go picture by picture because one

25      of the reasons is that there's joint

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 268 of 344
Case 2:11-cv-22408-MCC Document 253 Entered on FLSD Docket 04/25/2013 Page 237 of
281
March 11, 2019

1          tape, and Mr. Che had to educate us

2          plaintiff lawyers what about joint

3          tape was when we took his deposition

4          in January.

5                  Well, I'm sure Your Honor has

6          been in a home that's under

7          construction.  Before they paint, they

8          put the two boards together and then

9          the drywall mechanic puts a piece of

10         tape on the outside of the board, and

11         they put plaster over it and they sand

12         it smooth so that when you paint it

13         you can't see where the seam is.

14         That's joint tape for joints.  We know

15         what that is.  We know what joint tape

16         is, and we're not saying that a joint

17         tape is an edge tape.

18                 Now, is there one photograph

19         somewhere where you look at it and

20         say, now, is that a joint tape or an

21         edge tape?  We can have that debate as

22         part of the contests or an individual

23         one-off, but really what we're here

24         about is what are we going to do with

25         Taishan having sent enough drywall to

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 369 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 238 of
281
March 11, 2019

```
1          destroy 700 or 1200 homes, and now the
2          confirmation, how many of them are
3          they going to admit to?  Zero.
4               Why?  Burden of proof.
5               Eleventh Circuit, in our
6          closing we're going to distinguish
7          Eleventh Circuit and tell you how that
8          is inapplicable in this context, but
9          we'll hide behind the Eleventh Circuit
10         and say because of burden of proof and
11         the massive destruction we did, 80
12         homes here, zero, and we're going to
13         go home.
14               We don't think that the special
15         master should rule that way.  We
16         think, based on the huge volume of
17         data, the fact that, you know,
18         counsel, again with an opportunity to
19         show where is this drywall coming
20         from, this white drywall that's
21         corrosive and it's from the Taihe
22         region.  Where is that coming from?
23               We hear Pingyi again.  That's
24         one of the companies CPSC says makes a
25         drywall that doesn't release gases.
```

Mach 11, 2019

1    I'm looking for the proof at long

2    last.  Here we are.  Who else did

3    this?  I'm not seeing a single

4    documentary evidence of that.

5         We are urging Your Honor to

6    judge the credibility of this

7    corporate player, and they're a bad

8    actor, to not believe their

9    representations in this contest, to

10   take a look at this evidence,

11   including their decision to violate

12   the law, and make inferences against

13   Taishan based upon those adverse

14   negative conduct which is in your

15   power to do.

16        And we ask that you find that

17   we have met our burden of persuasion,

18   that Taishan was responsible for these

19   homes, and that in that context, it

20   should be Taishan's responsibility to

21   come forward with at least definitive

22   proof that another company made a

23   corrosive Chinese drywall board or

24   that they weren't responsible in this

25   context, and there's been none.

March 11, 2019

```
 1                Instead, it's a waving of hands
 2        that we're sorry that this is hard.
 3        This is just like the asbestos
 4        victims, these people all need to go
 5        home.  We're asking Your Honor to not
 6        rule that way.  Thank you.
 7                MR. MONTOYA:  Your Honor, that
 8        concludes the presentations on the
 9        buckets.
10                SPECIAL MASTER LEE:  I think
11        there was more on the PowerPoint.
12                MS. ROBERTSON:  Yeah, that's
13        for the conclusion.
14                SPECIAL MASTER LEE:  Okay.
15                MR. VENDERBUSH:  So you guys
16        are done with the buckets?
17                SPECIAL MASTER LEE:  Was there
18        anything else you wanted to address?
19                MR. VENDERBUSH:  Yeah, so
20        there's two more -- if you put ours up
21        one more time.
22                MS. EIKHOFF:  It should be the
23        very last slide of the presentation.
24                MR. VENDERBUSH:  The last two
25        slides, I think.
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 272 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 241 of 281
March 11, 2019

1          MS. EIKHOFF:  It's the last one

2     slide.

3          MR. VENDERBUSH:  Yeah, last

4     slide.  So there's just photos 3 and 4

5     are in the catalog, and they're not in

6     their brief, and they weren't

7     addressed here, so we -- there's no

8     proof on that.

9          MS. ROBERTSON:  I can --

10          MS. EIKHOFF:  You guys just

11     said you closed.  You said you were

12     done with the presentation.

13          MS. ROBERTSON:  It's not an

14     argument.  We were simply explaining

15     to the special master those markings

16     are in homes that have other markings

17     that were already discussed during

18     this presentation.

19          MR. VENDERBUSH:  Okay.

20          MS. ROBERTSON:  So apologies.

21          MR. VENDERBUSH:  She's going to

22     have to go through and do every photo,

23     so she's going to have to say

24     something about it presumably.

25          SPECIAL MASTER LEE:  Did the

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/03/19 Page 273 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 242 of
281

March 11, 2019

<pre>
 1         plaintiff want to say anything else
 2         about these?
 3                  MS. DUGGAN:  I don't think so.
 4                  SPECIAL MASTER LEE:  No?  Okay.
 5         So anything else before we do the
 6         closing?  Yeah, we're going to take a
 7         break.
 8                  MR. SERPE:  Nothing else before
 9         closing.
10                  SPECIAL MASTER LEE:  Okay.  Did
11         the plaintiff want to say anything
12         more about the drywall dimensions, 6,
13         7, 8, 10?  I think the defense was
14         pointing out that you didn't really
15         say anything about them other than
16         that they're variations on the same
17         theme.
18                  MR. SERPE:  Just a minute,
19         please.
20                  SPECIAL MASTER LEE:  You can
21         talk about it over the break, but
22         that's one question I have.
23                  MS. EIKHOFF:  Do you have any
24         questions for us?
25                  SPECIAL MASTER LEE:  On the
</pre>

Case 2:09-md-02047-EEF-MBN Document 22380 Filed 12/02/19 Page 274 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2019 Page 243 of 281
March 11, 2019

1          defense side, did you want to say

2          anything more about the whole adverse

3          inference argument?

4                    MS. EIKHOFF:  Yes.

5                    SPECIAL MASTER LEE:  If you're

6          going to address in your closing.

7                    MS. EIKHOFF:  Will do, thank

8          you.

9                    SPECIAL MASTER LEE:  All right.

10          Give me one second.  One question just

11          for my knowledge:  Were there any

12          preservation issues addressed in the

13          MDL?

14                    MS. ROBERTSON:  I think over

15          time of the MDL we had various

16          different arguments regarding the

17          preservation of evidence.  I think

18          that plaintiffs always consistently

19          tried to -- we presented a few times

20          asking for sanctions.

21                    I don't believe that

22          Judge Fallon ever found spoliation had

23          been the result of the preservation

24          order as far as PTO #1 goes.  That is

25          correct, right, Christy?

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 275 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 244 of 281
March 11, 2019

```
1              MS. EIKHOFF:  There has never

2         been a finding of spoliation in the

3         MDL, despite some allegations.

4              MR. MONTOYA:  Judge, I think in

5         terms of the spoliation type issues

6         and the discovery issues, they are

7         fully briefed in our brief.

8         There are sections in there and we

9         would rely on those.

10             SPECIAL MASTER LEE:  Yeah, I

11        read that.  I just didn't know -- it

12        didn't make clear to me whether there

13        was ever a ruling, a finding, anything

14        like that.

15             MS. DUGGAN:  No, there was not.

16             MS. ROBERTSON:  I can pull the

17        MDL record document from the orders

18        and read them if you would like.

19             SPECIAL MASTER LEE:  And I'm

20        correct that defense position is that

21        ProWall should be decided after the

22        BNBM hearing but the plaintiff doesn't

23        agree with that?

24             MS. DUGGAN:  We don't agree

25        because it's a different set of
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 276 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 245 of 281
March 11, 2019

1    allegations in the homes at issue in

2    Florida with regard to the boards that

3    we claim were made by Taishan are not

4    at issue.

5          MS. GRANT:  One thing.  It's a

6    Texas home, and I believe there's only

7    one of them.  That is the BNBM

8    argument.  That's the reason.

9          MS. EIKHOFF:  So why don't you

10    let us talk at the break, because we

11    had never heard until it was said

12    today that there was a distinction

13    between ProWall markings and

14    attribution.

15          We only saw the footnote in

16    their brief that said some are to

17    BNBM, some are to Taishan, but we

18    don't know how those are -- how those

19    are distinguished from one another.

20          MR. VENDERBUSH:  Can I ask how

21    a Texas home is being litigated in the

22    Florida BNBM proceeding?

23          MS. ROBERTSON:  I think that's

24    a question for BNBM, but we can

25    address that with the BNBM counsel.

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 277 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/29/2013 Page 246 of 281
March 11, 2019

1    Once we get to the BNBM argument, I'm

2    happy to address that, but probably

3    not today.

4         MR. DAVIDSON:  I was just

5    asking if we had to address it at all

6    in front of Special Master Lee since

7    it's a Texas property.

8         MS. ROBERTSON:  Maybe we can

9    discuss and go offline.

10         SPECIAL MASTER LEE:  From the

11    defense, when will the claim-specific

12    objections be addressed?  You said

13    there are claim-specific objections

14    that would have to be decided later.

15         MS. EIKHOFF:  Yes, Your Honor.

16    So we -- Your Honor, I'm sorry.  That

17    was an old habit.

18         Special Master Lee, we

19    submitted a preliminary list of

20    contests.

21         SPECIAL MASTER LEE:  I saw it.

22         MS. EIKHOFF:  And then our

23    final contest list is due on

24    April 8th.

25         MS. DUGGAN:  I thought yours

March 11, 2019

```
1        was due on April 2nd.

2               MS. EIKHOFF:  April 2nd.  April

3        2nd.

4               MS. DUGGAN:  We're going to

5        respond on April 8th and then we have

6        three days set aside with the special

7        master April 10th, 11th and 12th.

8               SPECIAL MASTER LEE:  Okay.

9               MS. EIKHOFF:  And in the

10        meantime, Ms. Lee, to the extent that

11        some of those objections can be

12        resolved between the parties, we're

13        working to see if we can.  But there

14        will no doubt be many objections that

15        will need to be resolved by the finder

16        of fact.

17               SPECIAL MASTER LEE:  Okay.  So

18        how much of a break do you want?

19               MS. DUGGAN:  10 minutes?  Is

20        that enough?

21               MS. EIKHOFF:  Sure.

22               SPECIAL MASTER LEE:

23        15 minutes?

24               MR. SERPE:  15, thanks.

25               (Recess taken, 3:21?p.m. to
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/03/19 Page 279 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 248 of 281
March 11, 2019

```
 1          3:42?p.m.)

 2               MS. SCHWAB:  Your Honor, you

 3          asked earlier about Category -- or

 4          photos 6, 7, 8 and 10, and I would

 5          just like to briefly respond to those.

 6               Photo number 6 is the same W as

 7          photo number 2 that Taishan relied on

 8          in making -- in admitting photo 2.

 9               Photo 7 is DRYWALL in all caps,

10          as stated in the Manufacturer Profile

11          Form, and Tab 62 to plaintiff's brief

12          is an e-mail chain between Che Gang

13          and Ivan Gonima, who is a U.S.

14          customer.  Mr. Che uses the asterisk

15          instead of X's to -- in the place of

16          4feetX12feetX1/2inch.

17               Number 8 is the same DRYWALL

18          all caps, just as the Manufacturer

19          Profile Form, and the asterisk again,

20          I would direct Your Honor to Tab 62 in

21          plaintiff's brief.

22               And 10, photo 10 is DRYWALL in

23          all caps again as indicated in the

24          Manufacturer Profile Form, and all of

25          these are discussed at length in
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 380 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 249 of 281

March 11, 2019

```
 1          plaintiff's brief.  Thank you.

 2              SPECIAL MASTER LEE:  Thank you.

 3      Are we ready for closing?

 4              MR. MONTOYA:  Mr. Serpe is

 5      going to close.

 6              MS. EIKHOFF:  Are you guys

 7      going to preserve a rebuttal?  Because

 8      if you're saying it's our burden of

 9      proof, then we should go first.  I'm

10      confused now as to whether you want it

11      to be our burden of proof or don't.

12              MS. DUGGAN:  You want to go

13      first right now?  That would be fine

14      with us.

15              MR. SERPE:  Go ahead.

16              MS. DUGGAN:  That's fine, we'll

17      go last.

18              MR. VENDERBUSH:  That's the

19      point, if they go first --

20              MS. EIKHOFF:  The point is

21      we're not accepting that we have the

22      burden of proof.

23              MR. SERPE:  Christy, we know

24      that you're not accepting that.  We're

25      stipulating that you're not accepting
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 381 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 250 of 281
March 11, 2019

1        that you have the burden of proof.

2                MS. EIKHOFF:  Then go ahead.

3                MR. SERPE:  Special Master,

4        there's a problem here, and the

5        question is who's responsible.

6                I think it's clear from the

7        presentation today that this is

8        entirely a problem that was created by

9        the defendants.  100% of this problem

10       was from their conduct, not only when

11       manufacturing, but what they've done

12       since that time.

13               From the decision to make U.S.

14       drywall allegedly without a manual,

15       detailing how markings are supposed to

16       be put on the board, when the rest of

17       the company's corporate discipline is

18       you have a very specific manual on

19       exactly how to put the markings, where

20       to put them, what has to be on there,

21       and get our name on it.

22               On the U.S. side, they either

23       didn't have that manual or it existed

24       and we're just being told that it

25       doesn't exist.

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/03/19 Page 382 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 251 of 281
March 11, 2019

1          But from our standpoint, we

2     don't have the 40-page highly detailed

3     manual that they have for all the rest

4     of their drywall production.  We have

5     nothing.

6          What about the documents that

7     got sent down from the factory floor

8     saying make this much drywall for this

9     customer with these markings?  We got

10    those records.  They preserved those

11    records.

12         But we're being asked to

13    believe that the critical sheet of

14    paper, the part of the order that had

15    the marking information on it, well,

16    we just happened to throw that piece

17    out.  But not the order, just the

18    attachment that said what we put it

19    on.  And then we'll see if -- the

20    record that you can't show our product

21    from.

22         I'll go back to the opening

23    slide where Taishan told its

24    stockholders that they're going to

25    send over documents, only documents

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 383 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 252 of
281
March 11, 2019

```
 1          that are beneficial to their case, and
 2          we'll use agencies to run interference
 3          for us.  So we don't get proof on what
 4          the markings were because supposedly
 5          they were thrown out.
 6               We asked about edge tapes and
 7          what was printed on those.  Where are
 8          those records?  We haven't seen the
 9          first record of how the edge tapes
10          were printed and what was printed on
11          them and what was the order and how
12          was it accounted for.  Did the sales
13          documents -- you know, how was it
14          billed out.
15               So we wait a decade, and
16          finally get a 30(b)(6) deposition of a
17          witness who he's been deposed three
18          times, his story has changed each
19          time.  But in his third iteration,
20          with a specific time frame on edge
21          tapes, what was your process, what was
22          the documentation, where are the
23          records.
24               And his answer was there was a
25          whole factory to make the edge tapes.
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 384 of 344
Case 2:11-cv-22408-MCE-...Document 253 Page... on...Docket 04/25/2013 Page 253 of 281
March 11, 2019

1    It was so complex and big we have to

2    put it in its own factory.

3              Well, how did they know what to

4    make?  Did you send e-mails?  Where

5    are those e-mails?  Who looked for the

6    e-mails on the edge tape?  Oh, they

7    didn't have computers.  So what, you

8    would hand-deliver forms to them with

9    the specifications on how to make the

10   edge tape?  No, there was no paper.

11   We would call them or maybe I could go

12   over and tell them what to make.

13             So when they were making it,

14   did they keep a record?  Okay, today

15   we made, you know, 10,000 miles of

16   tape that said IMT or another marking

17   on the edge tape and then put it into

18   their file on what they had concluded

19   for that day.  No, no records

20   whatsoever of any edge tape

21   manufacturing process.

22             Did they really exist and we're

23   just being told they didn't, or did

24   Taishan just have a practice that

25   was -- that operated around no

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 385 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 254 of 281
March 11, 2019

 1          evidence being saved in realtime?  In

 2          either event, this problem we're

 3          facing is of their making.

 4               So the question becomes if they

 5          created a problem through their

 6          practices, do they get a pass now to

 7          say, whew, it was a good thing we did

 8          that.  Now, no one's going to be able

 9          to prove our drywall, and we should

10          get a pass with no responsibility

11          whatsoever.

12               And we're asking the special

13          master to not accept that definition,

14          that the entity that created the

15          problem shouldn't be able to walk away

16          from the damages that they caused.

17               So on the next layer down, the

18          records that we did get and the

19          photographs that we did get, we were

20          very sensitive to looking for pictures

21          of the markings so that we could match

22          them up and say now we have another

23          mug shot for the mug shot book that we

24          could compare a homeowner's home to to

25          see is this Taishan drywall.

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 286 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2013 Page 255 of 281
March 11, 2019

1           So we are produced this record

2       from Taishan, and in a deposition --

3       next slide, please -- of Mr. Che, he

4       was asked about the drywall in the

5       left-hand side, the black-and-white

6       picture.

7           And his answer is:  "This

8       picture is very much unclear.  If you

9       look at it from afar, it looks similar

10      in a small degree that that resembles

11      that of Taishan's; however, it would

12      be great if you can give me a more

13      clear version of it.

14          "Sir, do you see the words

15      'Taihe' in that photograph on the

16      labels?

17          "Well, I can only see the

18      Chinese character 'mountain.'  It was

19      blurry before the character and it's

20      pretty blurry after.  If I were to

21      speculate, and I can only speculate,

22      it might be Taishan's edge tape."

23          So we begin the process saying,

24      all right, do we have a better

25      picture?  Asked Taishan, please send

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 387 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 256 of 281
March 11, 2019

<pre>
 1         us the color, the clearer picture of

 2         this.  And lo and behold, last week we

 3         get this picture, and it's clearly

 4         Taihe edge tape.  Absolutely,

 5         indisputably their edge tape.

 6              Where has this photograph been?

 7         Why do we go through ten years of

 8         litigation, take a deposition where

 9         this is what we're provided and a

10         witness says I don't know, maybe it

11         looks like mountain.  It's a little

12         blurry, I can only speculate about

13         that, when in their records all along

14         they had the color picture which

15         definitively proved product ID in the

16         case.

17              You've got to ask, who was it

18         that looked for this stuff?  Did they

19         really look hard or did they kind of

20         do a half-baked search, put a few

21         things together that are beneficial to

22         them in the U.S. litigation and send

23         those over, letting other people run

24         interference for them.

25              I suggest this is another of
</pre>

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 288 of 344
Case 2:11-cv-22408-MCE-JEC Document 293 Entered on FLSD Docket 04/25/2013 Page 257 of 281
March 11, 2019

1    many examples in the brief and that we

2    presented today where Taishan has had

3    evidence and has not turned it over.

4         Really, after ten years, in

5    January, at the deposition and new

6    documents, the product ID briefing, we

7    see the final stand by Taishan on

8    their theme on how it is that we're

9    supposed to prove product ID.

10        It's the "luckily" testimony

11   from Mr. Che; a very ironic word from

12   our standpoint.  Let's break that

13   down.

14        A corporate witness, on the

15   basis of all of the depositions, all

16   of the records, this guy is the

17   foreign sales manager.  He's been

18   deposed three times.  He's asked about

19   the residual American-sized drywall

20   samples, those three pallets of

21   drywall that we found, and he said:

22   However, very luckily, during my

23   preparation of the witness testimony

24   in deposition representing Taishan,

25   these American-sized residual boards

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 289 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 258 of 281
March 11, 2019

1      were discovered.

2              So very luckily for who?  Very

3      luckily for who?

4              Well, consider now that

5      Taishan's product ID paradigm is that

6      if you can match your product ID

7      exactly to what we see on these three

8      pallets, we're going to accept it.

9              But if you can't, insufficient

10     proof, we deny it.  This is their --

11     this is their final position.

12             So three pallets of drywall

13     with two markings and one illegible --

14     call it three markings of all of the

15     different buckets that we've talked

16     about.

17             Now, it's on a pallet.  I think

18     a reasonable inference for Your Honor

19     is that that came from the same

20     production run, the same printer,

21     (indicating) sprayed those words that

22     you see from the residual buckets,

23     residual boards that we talked about.

24     That was the same printer, same

25     production run, it's all on the same

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 290 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 259 of 281
March 11, 2019

```
 1          pallet.  It was stacked up in the

 2          warehouse at the same time.

 3               So we've got one printer only

 4          for three different types of markings

 5          when there were at least four printers

 6          that were repeatedly changed out.

 7          Every time it was changed it was a

 8          different font.

 9               And we don't have pictures of

10          any other Taishan marking, even the

11          ones they acknowledge that they made

12          on their Manufacturer Profile Form.

13          We don't have a single picture of

14          that.

15               So, therefore, we don't have

16          the picture.  We don't have any of the

17          other production runs with any of the

18          other fonts, so we don't have a

19          picture like these three where we can

20          show it and Taishan will say, you know

21          what, we'll accept that one.

22               So to accept their formulation,

23          the only narrow band of homeowner that

24          gets compensation happens to be

25          someone that had the same font from
```

1          the same production run that got lucky

2          that it was one of these three stacks

3          that they found.

4                Anyone else that's not a direct

5          match to this, they're out because we

6          can't prove that it matches an example

7          of the drywall that was in their

8          possession.

9                In so doing, they walk away

10         from the responsibility for every

11         other piece of drywall that they

12         manufactured which was sufficient to

13         build thousands of homes.

14               So the question becomes if

15         we're in the situation where we want

16         to know what else is there besides

17         these three -- just these three

18         pallets, where are the e-mails

19         directly to the customers in the U.S.?

20               We know Mr. Che, foreign sales

21         manager, and we've produced many

22         examples where he's directly e-mailing

23         back and forth with U.S. customers.

24               He's got a computer that he did

25         that with in this time frame.  He

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 292 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 261 of 281
March 11, 2019

```
 1              testified that it's been preserved.

 2              He was told to hang on to the

 3              computer.  So far so good.

 4                    Then the question becomes:  In

 5              preparation for the deposition today,

 6              did you search your own e-mails, your

 7              own records to see what you had for

 8              foreign sales?  Did you e-mail a

 9              customer?  Did they e-mail back an

10              edge tape or a photograph or something

11              that they had that they wanted that

12              would be evidence to us that could be

13              used in the case?  What do you have?

14                    And his response was:

15                    (Video playback commenced.)

16                    "QUESTION:  In preparing for

17              testifying as Taishan's corporate

18              representative, did you look at your

19              own computer hardware and e-mails to

20              look for evidence of

21              American-sized-drywall?

22                    "ANSWER:  No, because the

23              attorneys already have all the

24              documents and evidence.  It would be

25              unefficient for unprofessionals like
```

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 393 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 262 of 281
March 11, 2019

```
1        us to work on that.  In that case, you
2        have to wait until next year to depose
3        me."
4               (Video playback stopped.)
5               MR. SERPE:  So when asked did
6        he look at his own e-mails, he says,
7        no, I didn't.  It would be inefficient
8        for unprofessionals like us to work on
9        that.  In that case you would have to
10       wait until next year to depose me.
11              Let me break that down into two
12       halves.  The first is:  This is his
13       computer, where he stores e-mails from
14       foreign entities, who they were, how
15       to search that.  Who better to look at
16       that computer for evidence of U.S.
17       sales than the guy whose computer it
18       was who is the director of foreign
19       sales who's the 30(b)(6) witness?
20              Yet his testimony is he didn't
21       look at any of that.  He didn't do a
22       search.  He's going to rely on maybe
23       somebody else did that.
24              And then he concludes, in that
25       case, if you want me to do this,
```

Case 2:09-md-02047-EEF-MBN   Document 22380 on 37 Filed 12/02/19   Page 294 of 344
Case 1:11-cv-22408-MGC   Document 293   Entered on FLSD Docket 04/25/2013   Page 263 of
281
March 11, 2019

1    you'll have to wait until next year to

2    depose me.

3         Third time out deposing him,

4    clearly on the notice of deposition it

5    was directly on this topic.  One of

6    the topics was making sure you got the

7    witness completely ready to testify

8    with documents in a manner in which he

9    was prepared for the deposition, and

10   he wasn't even reviewing his own

11   e-mails.  He did no search and then

12   he -- he'll joke that if he's got to

13   do that, if he's actually got to look

14   for his own responsive documents, we

15   can come back next year.

16        The look on his face as he

17   finished that answer to me was a

18   triumphant smirk.

19        Special Master, it's to do just

20   this and bring it back to burden and

21   to the equities here.

22        Mr. Walls, Mr. and Mrs. Walls

23   are one of the priority plaintiffs

24   whose case is set for trial this

25   summer.  They're a lovely retired

March 11, 2019

1      couple.  Their entire life was focused

2      towards being able to retire and have

3      this home.

4           The testimony from Mr. Walls

5      indicates what a day in the life is

6      like for the Walls family, and his

7      testimony is very gripping, but I

8      particularly want to point out that

9      twice a day she drives by the house.

10     Some days she pulls over.  She pulls

11     over because the house that she picks

12     up is just down the street and she

13     sees, and when she comes home, she's a

14     wreck.  She's crying, she's all messed

15     up.

16          So a year, come back in a year

17     if you want me to look for my own

18     records, which we didn't keep, or the

19     ones that are on my computer as the

20     head of the foreign sales department

21     I'm not actually going to look at,

22     when their overall strategy was don't

23     turn it over unless it's beneficial to

24     us.

25          We believe that in that

1    environment, as special master,

2    reviewing the evidence and for the

3    reasons we pointed out, that you

4    should find that this problem that

5    they created, that the plaintiffs are

6    suffering with, that these plaintiffs,

7    based on this vast amount of evidence

8    on the drywall imported by Taishan and

9    their lack of any concrete information

10   that it wasn't their drywall, we

11   believe you should rule in favor

12   across the board on all of these

13   buckets.  Thank you.

14          MS. EIKHOFF:  I don't have a

15   PowerPoint for my closing, Your Honor,

16   Special Master Lee.  But if you have

17   their PowerPoint handy, at a certain

18   point I may ask you to put up their

19   slide number 9.

20          Ms. Lee, what you just heard

21   from the plaintiffs was not a

22   summation of the evidence as closings

23   are.  Their conclusion was not focused

24   on the proof that they have to satisfy

25   their Florida law burden to show by

March 11, 2019

1       the greater weight of the evidence

2       that certain of these categories

3       should be attributed to Taishan.

4               Instead of a summation of their

5       evidence on product ID, you heard more

6       of the same theme; the theme that we

7       told you to expect when we filed our

8       brief, the theme that we told you to

9       expect when I stood up here this

10      morning in my opening remarks, the

11      theme that they have articulated

12      bluntly and clearly:  Taishan is a bad

13      actor.

14              And that's what they're trying

15      to put in front of you in place of

16      evidence of product ID to connect the

17      boards of their clients to boards that

18      were manufactured by Taishan.

19              And they keep telling you over

20      and over in many ways with many

21      distorted examples of what a bad actor

22      Taishan is.  And the goal of those

23      stories is to persuade you to presume

24      the evidence that they don't have, to

25      flip the burden of proof on Taishan,

March 11, 2019

```
1        to make Taishan prove that it didn't
2        make the boards for their hundreds and
3        hundreds of claimants.
4             That is not how Florida law
5        works, and it would be a violation of
6        Florida law to be persuaded by these
7        discovery stories and these
8        anti-Chinese manufacturer defendant
9        stories.  It would be a violation of
10       Florida law to replace their
11       evidentiary burden with an assumption
12       that Taishan made these boards because
13       we don't like Taishan.
14            That is not fair, that is not
15       justice, and that is not the law.
16            Now, we've heard a lot about
17       Taishan.  They've been painted as a
18       very nefarious villain today.  It's
19       not the first time we've heard it.
20       We've been hearing it for years.
21            They say Taishan is a giant
22       corporation over there in China.  Let
23       me tell you a little bit more about
24       Taishan's operations in China, because
25       I've been there more than once.
```

March 11, 2019

1          Taishan has no English speakers

2     that work in Taishan.  They have no

3     presence outside of -- in the United

4     States whatsoever.  E-mails that you

5     have seen in English, the testimony

6     has been that they were translated

7     from Chinese to English using

8     something akin to Google Translate.

9          They don't have an e-mail

10    server.  Any e-mails that they send

11    are on the Chinese equivalent of like

12    a Yahoo or a Hotmail.

13         They have never exported goods

14    to the United States before 2006.  As

15    we've described, this was new for them

16    to ever be called upon to make boards

17    of these sizes to go over to the

18    United States.

19         And they certainly had no

20    experience with U.S. litigation.  The

21    idea, the whole concept of the U.S.

22    legal system is something that is so

23    foreign to their minds, they had no

24    frame of reference.

25         And I'm -- I've just been to

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 300 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2019 Page 269 of 281
March 11, 2019

1    Taishan's headquarters and factory in

2    the last couple of months.  I went the

3    week after Christmas, working on this

4    case.

5         There's no heat in the factory.

6    There's no heat in the offices.  It

7    was 18 degrees.  There's no lights in

8    the offices unless -- only in the room

9    that you're in.  There's no

10   receptionist.

11        This is a company that in 2006

12   was called upon to make a new type of

13   board for a new type of customer with

14   absolutely no frame of reference at

15   all that U.S. litigation would arise

16   from it.

17        And so they operated the way

18   that they always operate, in a

19   not-very-sophisticated manufacturing

20   environment in the Shandong province

21   of the People's Republic of China.

22        They communicated using slips

23   of paper.  They communicated by phone.

24   They communicated in person.

25        Yeah, there were some e-mails.

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 301 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 270 of
281
March 11, 2019

1       We produced those e-mails.  Those

2       e-mails were produced -- e-mails

3       regarding American sales were produced

4       in 2012 in this case.  Plaintiffs have

5       had those for years.

6            And so we hear so much about

7       this evil intent to only mail the

8       evidence that is beneficial to

9       Taishan Company.  That's the modus

10      operandi of this evil Chinese company.

11           Let me give you a little

12      context of this document, because

13      you've heard it a lot today.  This was

14      an internal memorandum that was

15      written by Taishan in Chinese to other

16      Chinese nationals.

17           On May 11th, 2009, they were

18      just hearing about litigation in the

19      U.S., and before Taishan had retained

20      U.S. counsel, they were discussing how

21      to respond to this new development

22      that they weren't expecting.

23           And they respond to it the way

24      that nonlawyer, non-American, Chinese

25      manufacturing executives would

March 11, 2019

1      respond, in an uninformed, probably

2      naive manner.

3           What they say here doesn't make

4      sense in the U.S. legal system, and

5      the plaintiffs have alluded to that.

6      They say, well, we're inclined not to

7      respond to the lawsuit, but if it's

8      necessary, we can maybe mail some

9      evidence that's helpful to the

10     Taishan Company, just to the court.

11     We'll mail it to the court, and then

12     we can have the government departments

13     interfere to eliminate and reduce some

14     of this negative impact.

15          They have contorted that

16     uninformed internal nonlegal

17     discussion, contorted it to a motive

18     that they say persists to this day and

19     this month.  They accuse us currently

20     of only producing things that are

21     beneficial to us and accuse us of

22     withholding documents that aren't

23     beneficial to us.

24          It was not beneficial to us to

25     find these exemplars of generic

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 303 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2019 Page 272 of 281
March 11, 2019

1   markings because with the admissions

2   of those exemplars, Taishan has

3   accepted the legal responsibility for

4   PID for half of the generic boards at

5   issue in this case.

6        If we were going to

7   systematically withhold negative

8   documents and evidence and only

9   produce what's beneficial to us in

10  this case for nine years, those

11  exemplar photos that we produced never

12  would have seen the light of day.

13       So what you have here is not a

14  spoliation story.  What you have here

15  is a story of a manufacturing company

16  in China that didn't know that what it

17  was doing would, years later, become

18  subject to lawsuits in the United

19  States of America.

20       And the plaintiffs acknowledge

21  this.  They've acknowledged it today.

22  They've acknowledged it in their

23  brief, that when we threw away slips

24  of paper that might have said exactly

25  what the spray marking was going to be

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 304 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2013 Page 273 of 281
March 11, 2019

1      at the -- that went to the factory,

2      that was in the normal course.  That

3      wasn't with knowledge that it was

4      evidence.  That wasn't in bad faith,

5      dereliction of U.S. litigation duties.

6           And so you look at their brief,

7      and they don't use the word

8      "spoliation."  It's nowhere in their

9      brief.  Instead, they want to infuse

10     Taishan's normal recordkeeping in

11     China in 2006 and 2007 with this bad

12     motive and this evil intent that's

13     unfounded and it's unfair.

14           Now, this isn't the first time

15     they've tried to make these kind of

16     points to the court, and we spent a

17     lot of time in this case in 2015 and

18     early 2016 dealing with discovery

19     issues that the plaintiffs said was

20     spoliation.

21           And I'm going to read to you

22     from Judge Fallon's order, which is at

23     the MDL Docket No. 19959 filed on

24     January 8th, 2016.

25           And in that order the Court

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 305 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2019 Page 274 of 281
March 11, 2019

1    said -- this is the bold heading:  The

2    PSC Has Not Proven Spoliation.  He

3    said, "This Court's Pretrial Order

4    No. 1 entered on June 16th, 2009

5    required all parties to take

6    reasonable steps to preserve all

7    documents, data and tangible things

8    containing information potentially

9    relevant to the subject matter of the

10   litigation.

11        "The Court finds insufficient

12   evidence of intentional failure to

13   preserve evidence under PTO #1 to

14   justify a finding of spoliation.  The

15   PSC has failed to prove that Taishan

16   destroyed, lost or altered evidence

17   relevant to potential violations of

18   the injunction or the relationship

19   between the defendants.

20        "The Court does not find

21   evidence that Taishan intentionally

22   violated PTO #1 or the general duty of

23   preservation."

24        They don't have a Rule 37

25   spoliation case.  That's why they

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 306 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/29/2019 Page 275 of 281
March 11, 2019

1    haven't filed a motion, and their

2    brief doesn't say that.  Instead,

3    their brief kind of makes it sort of

4    murkier.

5          Well, they threw away documents

6    at the time, and those documents would

7    be helpful now if they had been saved,

8    and they're bad guys, so let's go

9    ahead and presume that those documents

10   would be helpful to us.

11         You can't do that under Florida

12   law.  You can't do it under the

13   Eleventh Circuit either.

14         And there's another issue with

15   PTO #1 preservation and spoliation,

16   and we put it in our brief.  I didn't

17   think we were going to have to go

18   there today, but seems like the door's

19   been opened.

20         If we want to look at failure

21   to comply with PTO #1 preservation in

22   this case, we need look no further

23   than the plaintiffs' Supplemental

24   Profile Forms, which have been turned

25   in in this case in the last year.

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 307 of 344
Case 2:11-cv-22408-MCE-EE Document 293-3 Foreign on Us Docket 04/29/2019 Page 276 of 281
March 11, 2019

1           And those forms, which were

2     signed by the plaintiffs under penalty

3     of perjury, 624 of the claimants said

4     they did not comply with PTO #1 and

5     preserve the specific drywall evidence

6     that Judge Fallon ordered them to.

7           That is 79% of the plaintiffs

8     that said that they remediated their

9     properties.  79% of them got rid of

10    the samples of drywall that could have

11    helped us on PID.

12          And so we don't think that they

13    can be heard to talk about Taishan and

14    document preservation, particularly

15    when there's no showing that Taishan

16    violated PTO #1.  They cannot be heard

17    and at the same time hundreds of their

18    clients have not complied with the

19    same order that they would be pointing

20    to.

21          And so what we come to is this:

22    We're not standing before you, Special

23    Master Lee, and being a recalcitrant

24    defendant that won't accept any

25    responsibility for anything and is

Case 2:09-md-02047-EEF-MBN Document 22380 Filed 12/02/19 Page 308 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2019 Page 277 of 281
March 11, 2019

1     making them prove every single jot and

2     every single tittle.

3          It is not consistent with the

4     plaintiffs' characterization of us of

5     taking no responsibility when we have

6     admitted to categories, based on our

7     own evidence production, that assumes

8     responsibility for the PID for 47% of

9     the claims in this case.

10          But they're using their

11     mischaracterization of Taishan and

12     their prejudices against Taishan as a

13     party in this case in asking you to

14     flip the burden, to not make them

15     produce evidence, and to ignore away

16     all of the other evidence.

17          And we've shown you today,

18     Ms. Lee, that there is evidence of

19     other manufacturers and other players

20     in the marketplace that should be

21     called here -- should have been called

22     here to also stand and defend

23     themselves against these allegations.

24          It is not reasonable to

25     conclude that every variation of

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 309 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2019 Page 278 of
281
March 11, 2019

1      drywall, every marking, including no

2      markings, all of them, every single

3      one that's presented to you today,

4      they're all Taishan.

5           That is not a reasonable

6      conclusion, and we think that the only

7      way you could conclude it would be if

8      you accepted their mischaracterization

9      of Taishan as a litigant and of

10     Florida law and Eleventh Circuit law.

11     And we ask you to hold them to their

12     burden of proof.  Thank you.

13          MR. SERPE:  Special Master, was

14     there anything as part of that

15     argument that you had a question about

16     that you would like us to address?  I

17     mean, I'm dying to jump up and

18     ad seriatim go through that, but I

19     think that the parties have

20     articulated our positions.

21          SPECIAL MASTER LEE:  Okay.  So

22     you're done?

23          MR. SERPE:  Yes.

24          SPECIAL MASTER LEE:  Okay.

25     Does either side desire to do any

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 310 of 344
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/25/2019 Page 279 of 281
March 11, 2019

1    supplemental briefing on any issue?

2    We should decide that today.

3              MR. SERPE:  Special Master,

4    unless you would like anything

5    addressed, of course we'll respond to

6    any request you make for

7    clarification.

8              In an effort to bring closure

9    for these families and not inject

10   another briefing schedule into this,

11   we would just as soon stand on what

12   we've submitted so far.

13             MS. EIKHOFF:  We agree.

14             SPECIAL MASTER LEE:  Okay.

15   Then what I'm inclined to do is I'm

16   going to go back through my notes and

17   go back through your briefs and the

18   appendices to your briefs, and then if

19   there's something that I have a

20   specific question about, I will e-mail

21   the group by Friday, probably, and

22   I'll group everything and we can

23   decide then if we should have a

24   conference call or you can just answer

25   in writing.  It won't be anything that

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 311 of 344
Case 1:11-cv-22408-MGC Document 253-1 Entered on FLSD Docket 04/25/2019 Page 280 of 281
March 11, 2019

1    requires long anything, so answering

2    in writing is perfectly okay, but if

3    you think there's a reason that we'd

4    want to get on the phone, we can do

5    that as well.  So I will let you know

6    that by Friday.

7         Is there anything else that we

8    need to address?

9         MS. DUGGAN:  We did have one

10   small favor.  I don't know if this has

11   to be on the record.

12        SPECIAL MASTER LEE:  We can go

13   off the record.

14        (Proceedings recessed at

15   4:29 p.m.)

16             --oOo--

17

18

19

20

21

22

23

24

25

Case 2:09-md-02047-EEF-MBN Document 22380-37 Filed 12/02/19 Page 312 of 344
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/25/2019 Page 281 of 281

March 11, 2019

```
 1              REPORTER'S CERTIFICATION

 2

 3         I, Michael E. Miller, FAPR, RDR, CRR,

 4    Notary Public, hereby certify that this

 5    transcript is a true record of the

 6    proceedings held in the foregoing matter on

 7    Monday, March 11, 2019.

 8         I further certify that I am neither

 9    counsel for, related to, nor employed by any

10    of the parties or attorneys in the action in

11    which these proceedings were taken; and,

12    further, I am not a relative or employee of

13    any attorney of record in these proceedings,

14    nor am I financially or otherwise interested

15    in the outcome of said proceedings.

16

17         Subscribed and sworn to on March 13, 2019.

18

19

20    _____

      MICHAEL E. MILLER,

21    Fellow of the Academy of

      Professional Reporters

22    NCRA Registered Diplomate Reporter

      NCRA Certified Realtime Reporter

23

      Notary Public

24    My Commission Expires: 7/9/2020

25
```

# EXHIBIT

# "F"

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION, | MDL Docket No. 2047 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE FALLON |
| | MAG. JUDGE WILKINSON |
| EDUARDO AND CARMEN AMORIN, *et al.*, individually and on behalf of others similarly situated | |
| Plaintiffs, | Case No. 2:11-cv-01395-EEF-JCW |
| vs. | |
| TAISHAN GYPSUM CO., LTD. F/K/A SHANDONG TAIHE DONGXIN CO., LTD.; TAIAN TAISHAN PLASTERBOARD CO., LTD., *et al.*, | |
| Defendants. | |

### TAISHAN GYPSUM CO., LTD. AND TAI'AN TAISHAN PLASTERBOARD CO., LTD.'s OBJECTIONS AND RESPONSES TO THE PLAINTIFF'S STEERING COMMITTEE'S SUPPLEMENTAL DOCUMENT REQUEST

Defendants Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd. ("Taishan") object and respond to the Plaintiff's Steering Committee's ("PSC") Supplemental Document Request as follows:

### GENERAL OBJECTIONS

Taishan hereby sets forth its general objections to the PSC's Supplemental Document Request on the following basis, all of which are incorporated into Taishan's responses by this reference:

1. Taishan objects to these Requests as unauthorized and untimely to the extent it purports to relate to "ALL CASES" in the MDL. Taishan submits that the only case in the MDL to

1

which these Requests could possibly relate is *Amorin*, 2:11-CV-01395-EEF-JCW (E.D. La.).

2.   Taishan objects to all of the Document Requests to the extent they seek information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, and/or other applicable privileges.

3.   Taishan objects to these Document Requests to the extent they seek or purport to seek information or documents: which are already in the custody of PSC; which are in the possession of other parties, third parties or in the public domain; or which are not in Taishan's possession, custody or control.  To the extent that the PSC seeks information that is more readily available from other sources or already in the possession of the PSC, Taishan objects to these Document Requests as unduly burdensome.  Taishan also objects to these Document Requests to the extent they seek to impose upon Taishan the duty to obtain documents, things, or other information from any sources other than its own corporate records.  Such document requests are improper and exceed the scope of permissible discovery.

4.   All of these General Objections are incorporated by reference into each and every Document Request response set forth below. Without waiving, and in addition to the foregoing, Taishan makes the following specific objections to the PSC's Document Request:

**SPECIFIC OBJECTIONS AND RESPONSES TO THE PLAINTIFF'S STEERING
COMMITTEE'S SUPPLEMENTAL DOCUMENT REQUEST**

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 1:**

All documents relating to the method that you were relying on in your assertion to
Special Master Lee that "chemical analysis could identify the maker of the drywall" (Taishan
PowerPoint Slide 36) and/or that Taishan believes is available to compare chemical components
of residual boards found in Taishan's warehouse with boards from Plaintiffs' homes. See 2019
CHE Dep. At 71:1-6.

**RESPONSE NO. 1:**

Taishan objects to Document Request No. 1 to the extent that it seeks attorney-client
communications and attorney-work product. Specifically, "the method you were relying on in
your assertion to Special Master Lee" quotes from a demonstrative created by attorneys and not
entered into evidence. For the basis of this demonstrative, Taishan refers Plaintiffs to Taishan's
PID Deposition, January 22, 2019, at 71:1-6. Additionally, Plaintiffs are not entitled to documents
reflecting privileged and protected communications between Taishan, its attorneys and consulting
experts regarding possible chemical analyses. Subject to and without waiving the foregoing
objections, Taishan responds that it has no non-privileged, non-work product protected documents
in its custody and control.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 2:**

All documents relating to any and all methods for chemical analysis for product
identification for Chinese drywall.

**RESPONSE NO. 2:**

Taishan objects to Document Request No. 2 to the extent that it seeks attorney-client communications and attorney-work product. Specifically, Plaintiffs are not entitled to documents reflecting privileged and protected communications between Taishan, its attorneys and consulting experts regarding possible chemical analyses. Subject to and without waiving the foregoing objections, Taishan responds that it has no non-privileged, non-work product protected documents in its custody and control.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 3:**

All documents and samples (including those from other manufacturers) that you contend can serve as exemplars or known samples of Chinese drywall that can be used for the purpose of matching them against samples from individual homes.

**RESPONSE NO. 3:**

Taishan objects to Document Request No. 3 as vague, ambiguous and confusing because "documents" cannot be "exemplars" of Chinese drywall. Reasonably interpreting Request No. 3 as seeking only drywall samples, Taishan refers Plaintiffs to Taishan's PID Deposition, January 22, 2019, which states, "from the chemical analysis channel, we can compare whether the component of chemical from this board is the same as the chemical component which is covered from the residual boards in Taishan's warehouse." Subject to and without waiving the foregoing objections, Taishan is willing to make available to Plaintiffs exemplars from the drywall in its custody and control that are photographed in TG-PID-000001-000033, subject to the Court's approval for any untimely discovery activity.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 4:**

All documents from any tests you have conducted regarding chemical analysis to

identify the maker of the drywall.

**RESPONSE NO. 4:**

  Taishan responds that it has conducted no "tests . . . regarding chemical analysis to identify the maker of the drywall," and thus has no documents responsive to Document Request No. 4.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 5:**

  All documents from any tests in which chemical analysis was used to identify the maker of the drywall.

**RESPONSE NO. 5:**

  See Response to Request No. 4.  N/A.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 6:**

  Documents identifying the person(s) who conducted the above mentioned tests and their credentials.

**RESPONSE NO. 6:**

  See Response to Request No. 4.  N/A.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 7:**

  Documents identifying the source of the gypsum used in the drywall used in any of the above mentioned samples and/or tests.

**RESPONSE NO. 7:**

  See Response to Request No. 4.  N/A.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 8:**

  Documents identifying the batches, lot numbers, factory, and dates of manufacture for the drywall used in any of the above mentioned samples and/or tests.

**RESPONSE NO. 8:**

See Response to Request No. 4.  N/A.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 9:**

Documents identify [sic] the end market(s) to which drywall from the aforementioned

batches and lot numbers were sold.

**RESPONSE NO. 9:**

Taishan objects to Document Request No. 9 as vague, ambiguous and confusing.  To the

extent Request No. 9 references "aforementioned batches and lot numbers," and to the extent that

phrase references Document Request No. 8, and to the extent that Document Request No. 8 is

limited to "above mentioned samples and/or tests," Taishan refers to its Response to Requests No.

3 and No. 4.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 10:**

All literature, reports, and other documentation that discusses the reliability of

chemical analysis to accurately conduct product identification for Chinese drywall.

**RESPONSE NO. 10:**

Taishan objects to Document Request No. 10 to the extent that it seeks attorney-client

communications and attorney-work product.  Specifically, Plaintiffs are not entitled to

documents reflecting privileged and protected communications between Taishan, its attorneys

and consulting experts regarding possible chemical analyses.  Subject to and without waiving the

foregoing objections, Taishan responds that it has no non-privileged, non-work product protected

documents in its custody and control.

Respectfully submitted this 12th day of April 2019.

/s Michael P. Kenny
Bernard Taylor, Esq.
Georgia Bar No. 669625
Michael P. Kenny, Esq.
Georgia Bar No. 415064
Christina Hull Eikhoff, Esq.
Georgia Bar No. 242539
David Venderbush, Esq.
New York Bar No. 2920817
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
bernard.taylor@alston.com
mike.kenny@alston.com
christy.eikhoff@alston.com
david.venderbush@alston.com

*Counsel for Taishan Gypsum Co., Ltd. and*
*Tai'an Taishan Plasterboard Co., Ltd.*

Alan Dean Weinberger
Louisiana Bar No. 13331
HANGARTNER, RYDBERG & TERRELL, LLC
One Shell Square
701 Poydras Street, Suite 310
New Orleans, Louisiana 70179
Phone: (504) 434-6815
Fax: (504) 522-5689
aweinberger@hanrylaw.com

*Local Counsel for Taishan Gypsum Co., Ltd. and*
*Tai'an Taishan Plasterboard Co., Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, by U.S. mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 12th day of April, 2019.

 /s Michael P. Kenny
Michael P. Kenny, Esq.
Georgia Bar No. 415064
ALSTON & BIRD LLP
1201 West Peachtree Street NW
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
mike.kenny@alston.com

*Counsel for Taishan Gypsum Co., Ltd. and
Tai'an Taishan Plasterboard Co., Ltd.*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## Case No. 1:11-CV-22408-MGC

EDUARDO AND CARMEN AMORIN, *et al.*,
individually, and on behalf of all others
similarly situated,

       Plaintiffs,

v.

TAISHAN GYPSUM CO., LTD. F/K/A SHANDONG
TAIHE DONGXIN CO., LTD.; TAIAN TAISHAN
PLASTERBOARD CO., LTD., *et al.*,

       Defendants.

_____/

## TAISHAN GYPSUM CO., LTD. AND TAI'AN TAISHAN PLASTERBOARD CO., LTD.'s OBJECTIONS AND RESPONSES TO THE PLAINTIFF'S STEERING COMMITTEE'S SUPPLEMENTAL DOCUMENT REQUEST

Defendants Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd.

("Taishan") object and respond to the Plaintiff's Steering Committee's ("PSC") Supplemental

Document Request as follows:

## GENERAL OBJECTIONS

Taishan hereby sets forth its general objections to the PSC's Supplemental Document

Request on the following basis, all of which are incorporated into Taishan's responses by this

reference:

1. Taishan objects to these Requests as untimely under Dkt. No. 174, which established a PID

    discovery deadline of March 5, 2019, and a PID evidentiary hearing, which was conducted

    on March 10, 2019. These Requests were served on Taishan after the close of PID

    discovery and after the PID evidentiary hearing.

1

2.  Taishan objects to all of the Document Requests to the extent they seek information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, and/or other applicable privileges.

3.  Taishan objects to these Document Requests to the extent they seek or purport to seek information or documents: which are already in the custody of PSC; which are in the possession of other parties, third parties or in the public domain; or which are not in Taishan's possession, custody or control. To the extent that the PSC seeks information that is more readily available from other sources or already in the possession of the PSC, Taishan objects to these Document Requests as unduly burdensome. Taishan also objects to these Document Requests to the extent they seek to impose upon Taishan the duty to obtain documents, things, or other information from any sources other than its own corporate records. Such document requests are improper and exceed the scope of permissible discovery.

4.  All of these General Objections are incorporated by reference into each and every Document Request response set forth below. Without waiving, and in addition to the foregoing, Taishan makes the following specific objections to the PSC's Document Request:

**SPECIFIC OBJECTIONS AND RESPONSES TO THE PLAINTIFF'S STEERING COMMITTEE'S SUPPLEMENTAL DOCUMENT REQUEST**

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 1:**

All documents relating to the method that you were relying on in your assertion to Special Master Lee that "chemical analysis could identify the maker of the drywall" (Taishan

PowerPoint Slide 36) and/or that Taishan believes is available to compare chemical components of residual boards found in Taishan's warehouse with boards from Plaintiffs' homes. See 2019 CHE Dep. At 71:1-6.

**RESPONSE NO. 1:**

Taishan objects to Document Request No. 1 to the extent that it seeks attorney-client communications and attorney-work product. Specifically, "the method you were relying on in your assertion to Special Master Lee" quotes from a demonstrative created by attorneys and not entered into evidence. For the basis of this demonstrative, Taishan refers Plaintiffs to Taishan's PID Deposition, January 22, 2019, at 71:1-6. Additionally, Plaintiffs are not entitled to documents reflecting privileged and protected communications between Taishan, its attorneys and consulting experts regarding possible chemical analyses. Subject to and without waiving the foregoing objections, Taishan responds that it has no non-privileged, non-work product protected documents in its custody and control.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 2:**

All documents relating to any and all methods for chemical analysis for product identification for Chinese drywall.

**RESPONSE NO. 2:**

Taishan objects to Document Request No. 2 to the extent that it seeks attorney-client communications and attorney-work product. Specifically, Plaintiffs are not entitled to documents reflecting privileged and protected communications between Taishan, its attorneys and consulting experts regarding possible chemical analyses. Subject to and without waiving the foregoing objections, Taishan responds that it has no non-privileged, non-work product protected documents in its custody and control.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 3:**

All documents and samples (including those from other manufacturers) that you contend can serve as exemplars or known samples of Chinese drywall that can be used for the purpose of matching them against samples from individual homes.

**RESPONSE NO. 3:**

Taishan objects to Document Request No. 3 as vague, ambiguous and confusing because "documents" cannot be "exemplars" of Chinese drywall. Reasonably interpreting Request No. 3 as seeking only drywall samples, Taishan refers Plaintiffs to Taishan's PID Deposition, January 22, 2019, which states, "from the chemical analysis channel, we can compare whether the component of chemical from this board is the same as the chemical component which is covered from the residual boards in Taishan's warehouse." Subject to and without waiving the foregoing objections, Taishan is willing to make available to Plaintiffs exemplars from the drywall in its custody and control that are photographed in TG-PID-000001-000033, subject to the Court's approval for any untimely discovery activity.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 4:**

All documents from any tests you have conducted regarding chemical analysis to identify the maker of the drywall.

**RESPONSE NO. 4:**

Taishan responds that it has conducted no "tests . . . regarding chemical analysis to identify the maker of the drywall," and thus has no documents responsive to Document Request No. 4.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 5:**

All documents from any tests in which chemical analysis was used to identify the maker of the drywall.

**RESPONSE NO. 5:**

See Response to Request No. 4.  N/A.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 6:**

Documents identifying the person(s) who conducted the above mentioned tests and

their credentials.

**RESPONSE NO. 6:**

See Response to Request No. 4.  N/A.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 7:**

Documents identifying the source of the gypsum used in the drywall used in any of

the above mentioned samples and/or tests.

**RESPONSE NO. 7:**

See Response to Request No. 4.  N/A.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 8:**

Documents identifying the batches, lot numbers, factory, and dates of manufacture

for the drywall used in any of the above mentioned samples and/or tests.

**RESPONSE NO. 8:**

See Response to Request No. 4.  N/A.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 9:**

Documents identify [sic] the end market(s) to which drywall from the aforementioned

batches and lot numbers were sold.

**RESPONSE NO. 9:**

Taishan objects to Document Request No. 9 as vague, ambiguous and confusing.  To the

extent Request No. 9 references "aforementioned batches and lot numbers," and to the extent that

phrase references Document Request No. 8, and to the extent that Document Request No. 8 is limited to "above mentioned samples and/or tests," Taishan refers to its Response to Requests No. 3 and No. 4.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 10:**

All literature, reports, and other documentation that discusses the reliability of chemical analysis to accurately conduct product identification for Chinese drywall.

**RESPONSE NO. 10:**

Taishan objects to Document Request No. 10 to the extent that it seeks attorney-client communications and attorney-work product. Specifically, Plaintiffs are not entitled to documents reflecting privileged and protected communications between Taishan, its attorneys and consulting experts regarding possible chemical analyses. Subject to and without waiving the foregoing objections, Taishan responds that it has no non-privileged, non-work product protected documents in its custody and control.

Dated: April 12, 2019

Respectfully submitted,

*/s/ Enjoliqué Aytch*
Enjoliqué Aytch
Fla. Bar No. 0104881
Email: enjolique.aytch@akerman.com
Akerman LLP
Las Olas Centre II, Suite 1600
350 East Las Olas Boulevard
Fort Lauderdale, FL 33301-2229
Telephone: (954) 463-2700
Facsimile: (954) 463-2224

**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777

Bernard Taylor, Esq.
Georgia Bar No. 669625
Michael P. Kenny, Esq.
Georgia Bar No. 415064
Christina Hull Eikhoff, Esq.
Georgia Bar No. 242539
David Venderbush, Esq.
New York Bar No. 2920817
bernard.taylor@alston.com
mike.kenny@alston.com
christy.eikhoff@alston.com
david.venderbush@alston.com

*Attorneys for Taishan Gypsum Co., Ltd. and
Tai'an Taishan Plasterboard Co., Ltd.*

## SERVICE LIST

Arnold Levin, Esq.
Sandra Duggan, Esq.
Frederick S. Longer, Esq.
LEVIN SEDRAN & BERMAN LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500
*Attorneys for Plaintiffs*

Jay P. Dinan
Email: jdinan@yourlawyer.com
Parker Waichman LLP
27300 Riverview Center Boulevard, Suite 103
Bonita Springs, Florida 34134
Office: 239.390.1000
Fax: 239.390.0055
*Counsel for Parker Waichman LLP Plaintiffs*

Dawn Barrios, Esq.
Emma Kingsdorf Schwab, Esq.
BARRIOS, KINGSDORF & CASTEIX, LLP
701 Poydras Street, Suite 3650
New Orleans, Louisiana 70139,
504-524-3300
*Attorneys for Plaintiffs*

Jimmy Faircloth, Esq.
Faircloth, Melton, & Sobel
Gras Town Plaza,
412 N. 4th Street, Suite 230
Baton Rouge, LA 70802,
(225) 343-9535
*Attorney for Plaintiffs*

Leonard A. Davis, Esq.
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue,
New Orleans, Louisiana 70113,
PH: (504) 581-4892
*Attorneys for Plaintiffs*

Scott A. George, Esq.
Jeffrey S. Grand, Esq.
Christopher Seeger, Esq.
Seeger Weiss LLP
1515 Market Street, Suite 1380
Philadelphia, PA 19102,
(215) 564-2300
*Attorney for Plaintiffs*

Pearl Anna Robertson, Esq.
IRPINO, AVIN, HAWKINS, LLP
2216 Magazine Street
New Orleans, LA 70130
504-525-1500
*Attorneys for Plaintiffs*

Jeffrey A. Breit, Esq.
BREIT DRESCHER IMPREVENTO, P.C.
600 22nd Street, Suite 402
Virginia Beach, VA 23451
757-622-6000
*Attorneys for Plaintiffs*

James V. Doyle, Esq.
DOYLE LAW FIRM, PC
2100 Southbridge Pkwy., Suite 650
Birmingham, AL 35209
Tele: 205-533-9500 Fax: 844-638-5812
Jim.Doyle@DoyleFirm.com

Richard S. Lewis, Esq.
Hausfeld LLP,
1700 K Street, NW., Ste. 650
Washington, DC 20006
(202) 540-7200
*Attorneys for Plaintiffs*

*Attorneys for Plaintiffs*

Richard J. Serpe, Esq.
LAW OFFICES OF RICHARD J.
SERPE, PC.
580 E. MAIN STREET, SUITE 310
Norfolk, Virginia 23510
757-233-0009
*Attorneys for Plaintiffs*


David Venderbush, Esq.
Michael P. Kenney, Esq.
Kristine McAlister Brown, Esq.
Christina Hull Eikhoff, Esq.
Bernard Taylor, Esq.
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Tel: 404-881-7000 Fax: 404-881-7777
*Counsel for Defendant Taishan Gypsum Co.
Ltd, & Tai'an Taishan Plasterboard Co.*

Patrick Shanan Montoya
Email: Patrick@colson.com
Colson Hicks Eidson
255 Alhambra Circle, PH
Coral Gables, FL 33134-2351
Telephone: (305) 476-7400
Facsimile: (305) 476-7444
*Interim Lead Counsel for Plaintiffs*


Eric Matthew Hairston, Esq.
L. Christopher Vejnoska, Esq.
James L. Stengel, Esq.
Andrew K. Davidson, Esq.
Orrick, Herrington & Sutcliffe, LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Tel: 415-773-5700
*Counsel for BNBM PLC*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Case No. 2:11-CV-377-MSD**

EDUARDO AND CARMEN AMORIN, *et al.*,
individually, and on behalf of all others
similarly situated,

      Plaintiffs,

v.

TAISHAN GYPSUM CO., LTD. F/K/A SHANDONG
TAIHE DONGXIN CO., LTD.; TAIAN TAISHAN
PLASTERBOARD CO., LTD., *et al.*,

      Defendants.

_____/

**TAISHAN GYPSUM CO., LTD. AND TAI'AN TAISHAN PLASTERBOARD**
**CO., LTD.'s OBJECTIONS AND RESPONSES TO THE PLAINTIFF'S STEERING**
**COMMITTEE'S SUPPLEMENTAL DOCUMENT REQUEST**

Defendants Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd.

("Taishan") object and respond to the Plaintiff's Steering Committee's ("PSC") Supplemental

Document Request as follows:

**OBJECTION**

Taishan objects to these Requests as not in compliance with Federal Rule of Civil

Procedure 26, unauthorized and untimely, as the Court is considering the parties' competing

discovery and trial plans, and has not established any discovery period.

Dated: April 12, 2019          Respectfully submitted,

*/s/ Eric D. Cook*
Eric D. Cook
Virginia Bar No. 68054
Willcox & Savage P.C.
Wells Fargo Center
440 Monticello Ave., Suite 2200
Norfolk, VA 23510
Telephone: 757-628-5500
Facsimile: 757-628-5566

**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777

Bernard Taylor
Georgia Bar No. 669625
Michael P. Kenny, Esq.
Georgia Bar No. 415064
Christina Hull Eikhoff, Esq.
Georgia Bar No. 242539
David Venderbush, Esq.
New York Bar No. 2920817
bernard.taylor@alston.com
mike.kenny@alston.com
christy.eikhoff@alston.com
david.venderbush@alston.com

*Attorneys for Taishan Gypsum Co., Ltd. and
Tai'an Taishan Plasterboard Co., Ltd.*

**CERTIFICATE OF SERVICE**

     I hereby certify that on the 12th day of April, 2019, I electronically filed the foregoing Notice and Request for Oral Argument with the Clerk of the Court using the CM/ECF system which will then send a notification of such filing (NEF) to counsel of records.

*/s/ Eric D. Cook*
Eric D. Cook
Virginia Bar No. 68054
Willcox & Savage P.C.
Wells Fargo Center
440 Monticello Ave., Suite 2200
Norfolk, VA 23510
Telephone: 757-628-5500
Facsimile: 757-628-5566
*Counsel for Taishan Gypsum Co., Ltd. and*
*Tai'an Taishan Plasterboard Co., Ltd.*

# EXHIBIT

## "G"

# ALSTON & BIRD

One Atlantic Center
1201 West Peachtree Street
Atlanta, GA  30309-3424
404-881-7000 | Fax: 404-881-7777

Christina Hull Eikhoff                    Direct Dial: 404-881-4496                    Email: christy.eikhoff@alston.com

April 18, 2019

**VIA EMAIL**

Richard J. Serpe, Esq.
Law Offices of Richard J. Serpe, PC
580 East Main Street, Suite 310
Norfolk, VA 23510
rserpe@serpefirm.com

Re:    *Amorin v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co.,
          Ltd*, Civil Action No. 1:11-CV-22408-MGC (S.D. Fla.);
       *Amorin v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co.,
          Ltd*, Civil Action No. : 2:11-CV-01395-EEF-JCW (E.D. La);
       *Amorin v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co.,
          Ltd,* Civil Action No. 2:11-CV-377-MSD (E.D. Va.)

Dear Richard:

This letter relates to your Requests for Production of Documents to Taishan served on March 13, 2019, and our objections and responses to those discovery requests served on April 12, 2019. Your discovery pursuit is controversial, and we have met and conferred about the discovery extensively by email and on the phone.  I expressly incorporate all of our positions stated in those dialogues, and we stand by all of our objections.

However, in an effort to resolve this discovery dispute, you have requested in writing some statements by us.  Because these statements are true and entirely consistent with what we've already told you, we have agreed to summarize them here.

We understand that your new discovery pursuit arises from the following testimony of Taishan's corporate representative on January 22, 2019:

> Of course, there are other ways to make the [PID] determination.  . . .
>
> Number two, from the chemical analysis channel, we can compare whether the component of chemical from this board is the same as the chemical component which is covered from the residual boards in Taishan's warehouse.

---

April 18, 2019
Page 2

(Taishan Dep., Jan. 21, 2019, at 70-71). That proposal was made in good faith based on the witness's true beliefs from his long experience in the drywall manufacturing industry. To this day, you have never asked Taishan any questions about that statement, either during the remainder of that 2-day deposition or by subsequent interrogatories. Taishan did not represent, and has never represented, that it has in fact performed chemical analysis tests on its boards (or any other boards) for product identification purposes. That is why Taishan has no responsive documents to your document requests about prior testing.

At the Florida PID hearing on March 11, our demonstrative and oral argument paraphrased the above quoted deposition testimony. On the record, you vigorously argued against the feasibility of a comparative analysis of the chemical composition of drywall.

The possibility of doing a comparative analysis of the chemical composition of sample drywall boards has been discussed in attorney-client communications many times during our representation of Taishan. Any documentation of those communications would either be in an attorneys' notes of the conversations, or in the client's notes of the conversations. Both would be privileged and very difficult to isolate considering our 4+ year engagement in this case. We have also had oral conversations with consulting experts about the concept of doing a comparative analysis. However, no expert has ever been engaged by us on that issue, and it is not in the scope of any of our designated experts analysis and reports.

We continue to object to your discovery requests on this issue as substantively and procedurally improper. It is not Taishan's job to show you how to meet your burden of proof on Product ID, nor did it become Taishan's job by merely making suggestions (this was one of many) of ways you could do it. Moreover, the discovery requests are too late in Florida, too early in Virginia, and a distinct departure from our course of litigation in Louisiana.

We know you disagree. We are nevertheless providing you with this letter in the hopes that this dispute can come to an end.

Sincerely,

Christina Hull Eikhoff

cc:    Bernard Taylor, Esq.
       Mike Kenny, Esq.
       David Venderbush, Esq.
       Sandra Duggan, Esq.
       Leonard Davis, Esq.

LEGAL02/38910730v1

# EXHIBIT

# "H"



# EXHIBIT

# "I"



# EXHIBIT

## "J"





## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF FLORIDA

|  |  |
|---|---|
| EDUARDO AND CARMEN AMORIN, *et al.*, individually, and on behalf of all others similarly situated,<br><br>      **Plaintiffs,**<br><br>v.<br><br>**TAISHAN GYPSUM CO., LTD. f/k/a SHANDONG TAIHE DONGXIN CO., LTD.; TAIAN TAISHAN PLASTERBOARD CO., LTD.,** *et al.*,<br><br>      **Defendants.** | **Case No. 1:11-CV-22408-MGC** |

**[PROPOSED] ORDER GRANTING PLAINTIFFS' OBJECTIONS TO THE SPECIAL MASTER'S REPORT AND RECOMMENDATION REGARDING PRODUCT ID CATEGORIES ATTRIBUTABLE TO TAISHAN GYPSUM CO., LTD.**

THIS MATTER is before the Court on Plaintiffs' Objections to the Special Master's Report and Recommendation Regarding Product ID Categories Attributable to Taishan Gypsum Co., Ltd., filed April 29, 2019.

The Court having reviewed the Objections and being fully advised in the premises, IT IS HEREBY ORDERED THAT Plaintiffs' Objections are **GRANTED**.

The Court **FURTHER ORDERS and ADJUDGES** that the Special Master's Report and Recommendation Regarding Product ID Categories Attributable to Taishan Gypsum Co., Ltd. is hereby **MODIFIED** so that the following Product ID Categories (and markings contained in all photos therein) are attributable to Taishan Gypsum Co. Ltd.: C&K; IMT Gypsum; ProWall; Taian Tape or Taihe Tape; Made in China Meet[s] or Exceed[s]; Various drywall dimensions, including 4feetx12feetx1/2inch; Venture Supply; and White Edge Tape, boards with no markings or boards with no markings other than numbers.

 

 

**DONE and ORDERED** in Chambers, Miami, Florida, this ___ day of _____, 20__.

 

 

 

_____
Honorable Marcia G. Cooke
United States District Judge