# EXHIBIT 35 part 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

EDUARDO AND CARMEN AMORIN, *et al.*, individually, and on behalf of all others similarly situated,

      Plaintiffs,

          v.

TAISHAN GYPSUM CO., LTD. f/k/a SHANDONG TAIHE DONGXIN CO., LTD.; TAIAN TAISHAN PLASTERBOARD CO., LTD., et al.,

      Plaintiffs.

Case No. 1:11-CV-22408-MGC

## PRIORITY CLAIMANTS' NOTICE OF FILING EXPERT REPORTS OF ANTHONY M. GRAZIANO IN RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS NOT IN DISPUTE, AND COUNTERSTATEMENT OF FACTS IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON <u>NON-FORMULA DAMAGES</u>

Priority Claimants, by and through undersigned counsel, hereby file the following Expert Reports of Anthony M. Graziano in support of their Response to Defendants' Motion and Memorandum for Summary Judgment (Dkt. No. 245) and Defendants' Statement of Material Facts Not In Dispute (Dkt. No. 250). The exhibits below will be cited in Priority Claimants' Reponses to docket numbers 245 and 250.

| Exhibit | Expert Report |
|---------|---------------|
| F1 | Market Analysis of the Post-Remediation Impact of Chinese Drywall On Residential Property Values in Florida of Expert Witness Anthony M. Graziano |
| F2 | Miranda, Jose and Adela - Appraisal Report and Post-Remediation Damage Related to Chinese Drywall |
| F3 | Nunez, Jeovany - Appraisal Report and Post-Remediation Damage Related to Chinese Drywall |
| F4 | Rosen, Kevin and Stacey - Appraisal Report and Post-Remediation Damage Related to Chinese Drywall |
| F5 | Wites, Marc and Jennifer - Appraisal Report and Post-Remediation Damage Related to Chinese Drywall |

| F6 | Griffin, David and Diane - Appraisal Report and Post-Remediation Damage Related to Chinese Drywall |
|---|---|
| F7 | Rosen, Michael and Robyn - Appraisal Report and Post-Remediation Damage Related to Chinese Drywall |
| F8 | Etter, Steven and Cathy - Appraisal Report and Post-Remediation Damage Related to Chinese Drywall |
| F9 | Chatmon, Lillian - Appraisal Report and Post-Remediation Damage Related to Chinese Drywall |
| F10 | Hernandez, Bertha - Appraisal Report and Post-Remediation Damage Related to Chinese Drywall |
| F11 | O'Brien, Kelly and Lori - Appraisal Report and Post-Remediation Damage Related to Chinese Drywall |
| F12 | Avery, Janet - Appraisal Report and Post-Remediation Damage Related to Chinese Drywall |
| F13 | Foster, William P. and Vicki D. - Appraisal Report and Post-Remediation Damage Related to Chinese Drywall |
| F14 | Gody, Anthony T. and Candace D. - Appraisal Report and Post-Remediation Damage Related to Chinese Drywall |
| F15 | Martinez, Dailyn - Appraisal Report and Post-Remediation Damage Related to Chinese Drywall |
| F16 | Nguyen, Mai Tuyen and Tracy - Appraisal Report and Post-Remediation Damage Related to Chinese Drywall |
| F17 | Walls, Larry and Rosalee - Appraisal Report and Post-Remediation Damage Related to Chinese Drywall |
| F18 | Feldkamp, Andrew and Dawn M. - Appraisal Report and Post-Remediation Damage Related to Chinese Drywall |
| F19 | Lalwani, Gul and Deborah - Appraisal Report and Post-Remediation Damage Related to Chinese Drywall |
| F20 | Marin, Cassandra - Appraisal Report and Post-Remediation Damage Related to Chinese Drywall |
| F21 | Deeg, David R. and Hooker, Deborah M. - Appraisal Report and Post-Remediation Damage Related to Chinese Drywall |

Dated: May 13, 2019.

/s/ Patrick S. Montoya, Esq.
Patrick Shanan Montoya
Fla. Bar No. 0524441
Email: Patrick@colson.com
Colson Hicks Eidson
255 Alhambra Circle, PH
Coral Gables, FL 33134-2351
Telephone: (305) 476-7400
Facsimile: (305) 476-7444
*Interim Lead Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing motion was served by via CM/ECF on all parties authorized to receive service via CM/ECF, this 13th day of May 2019.

/s/ Patrick S. Montoya, Esq.
Patrick Shanan Montoya
Fla. Bar No. 0524441
Email: Patrick@colson.com
Colson Hicks Eidson
255 Alhambra Circle, PH
Coral Gables, FL 33134-2351
Telephone: (305) 476-7400
Facsimile: (305) 476-7444
*Interim Lead Counsel for Plaintiffs*

# EXHIBIT F1

**Integra Realty Resources**
Miami/Palm Beach

# Market Analysis of the Post-Remediation Impact of Chinese Drywall On Residential Property Values in Florida

**Prepared For:**
Colsen Hicks Eidson and related parties to Amorin v. Taishan Gypsum Co. Ltd. et al
United States District Court – Southern District of Florida
Case No. 11-22408 – Civ - COOKE

**Effective Date of the Study:**
February 15, 2019

Covering the period 2009 - 2018

**Report Format:**
Consulting Report

**IRR - Miami/Palm Beach**
File Number: 123-2018-0275





| Integra Realty Resources | In Miami | In Orlando | In Naples/Sarasota |
| Miami | Dadeland Centre | The Magnolia Building | Horseshoe Professional Park |
| Orlando | 9155 South Dadeland Blvd. | 326 N. Magnolia Ave. | 2770 Horseshoe Drive S. |
| Southwest Florida | Suite 1208 | | Suite 3 |
| | Miami, FL 33156 | Orlando, FL 32801 | Naples, FL 34104 |
| www.irr.com | (305) 670-0001 | (407) 843-3377 | (239)-643-6888 |

February 15, 2019

Patrick Montoya, Esq.
Colson Hicks Eidson
255 Alhambra Circle, PH
Coral Gables, FL 33134`

SUBJECT:      Detrimental Conditions Analysis
              Market Analysis of Post Remediation Impacts relating to Chinese Drywall
              Case No 11-22408-Civ-COOKE
              United States District Court Southern District of Florida in the matter of
              Eduardo and Carmen Amorin, et al. individually and on behalf of others situated
              similarly v. Taishan Gypsum Co., LTD., f/k/a Shandong Taishan Dongxin Co. Ltd., et al
              IRR - Miami/Palm Beach File No. 123-2018-0275

Dear Mr. Montoya:

Integra Realty Resources – Miami/Palm Beach ("Integra") submits the following report in anticipation of providing expert testimony in the above captioned matter before the United States District Court – Southern District of Florida.

This report outlines the premise of our research, the relevant literature and theory with respect to real property value diminution, and sets forth of our material findings with respect to Integra's study of post-remediation value impacts on residential property values in Florida. Integra's research includes additional source material contained within our workfile to arrive at these expert conclusions.

The report is intended to comply with the Uniform Standards of Professional Appraisal Practice (USPAP) and methods of research relevant to our industry and documented by industry professionals and are deemed reliable within the degree of certainty accepted in the practice of real estate appraisal.

The material findings will form the basis of expert witness testimony in the above referenced case.

On Residential Property Values in Florida



Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/02/19 Page 9 of 232
Case 1:11-cv-22408-MGC Document 201-1 Entered on FLSD Docket 03/13/2019 Page 8 of 54

Identification of Subject(s)                                                      2

## Identification of Subject(s)

The intended application of the relevant findings is for the 20 priority claimant damage analyses delivered under separate cover. Integra has prepared individual appraisal reports demonstrating the unimpaired values of those homes on relevant dates as instructed by Plaintiff's counsel. Those appraisal reports reference findings within this report to provide an independent opinion of relevant post-remediation damages suffered by Claimants as of those effective dates.

This detrimental conditions report and findings are considered applicable to the Florida cases remanded by Judge Fallon from the United States District Court for the Eastern District of Louisiana with respect to the Florida cases only.

This analysis does not consider the costs to cure the defects as Plaintiffs are proceeding on a separate track for those damages apart from this expert's scope of work.

## Effective Date

The effective date of the study covers the time period December 1, 2009 through August 8, 2016 based upon the relevant case study evidence developed in this matter. Our interview methods extend this date through a current (February 2019) date and support our conclusion that the case study evidence is relevant from December 1, 2009 through February 15, 2019.

## Intended Use and User

The intended use of the study is to provide material conclusions with respect to value diminution of real property residential values after defective Chinese Drywall and related remediation is completed.

The Plaintiffs, their related experts and counsel, and the Court are considered intended users of the report. Integra Realty Resources – Miami/Palm Beach is not responsible for unauthorized use of this report. Specifically, the scope of the report relates to residential property values in Florida and using the study outside of the State of Florida may not be appropriate without supplementing additional research.

## Material Statement of Findings

Pursuant to Rule 26(A)(2)(B) of the Federal Rules of Civil Procedure, a complete statement of all opinions I will express, including the basis and reasons for them, is set forth below. I have rendered my opinions based on my experience, knowledge and training as a real estate appraiser and based on the research conducted in this study under methods and practices typically undertaken by my peers. All opinions are based upon a reasonable degree of certainty one would expect from a practitioner of real estate appraisal and damage analysis experts.

The value impact of residential homes with in-place defective Chinese Drywall are known to be worth materially less than the value of homes unimpaired (to wit: never affected by the presence of defective drywall in the construction or renovation of the home). This report does not address value diminution with respect to homes with in-place defective drywall, but rather analyzes the economic impact (damage) on homes post-remediation only.



The method for assessing value diminution as set forth by industry peers is best expressed and consolidated into uniform peer methodology in the Appraisal Institute text "Real Estate Damages, Applied Economics and Detrimental Conditions", Third Edition by Randall Bell, MAI.

We incorporate by reference the Bell Damage Matrix, and have structured the research framework associated with my conclusions around the recommended relevant methods outlined by Bell.

The scope of this study does not address the <u>cost of assessment</u> of the Class VI detrimental condition[1], <u>or the cost to cure</u>. These items are being handled separate from my analysis. This study specifically addresses the magnitude of probable economic damages (expressed as a percentage of unimpaired value) that likely persists, and which apply to Florida residential properties, following a full and complete drywall remediation process and certification by the contractor responsible for remediation.

The value of homes that had defective drywall and were subsequently remediated were generally found to have lower values than similarly situated homes that never had defective drywall. Our findings incorporate the results of (20) case studies developed over the time period 2009 – 2019 across (7) counties in Florida.

A review of the published appraisal and general real estate literature found no published case studies of the post-remediation effect on value of defective Chinese Drywall, and there is a lack of published literature on studies of defective drywall pre or post-remediation. After post-remediation, nevertheless, the application of the research framework applied herein is considered a reliable methodology to evaluate these matters.

Our development of the Contingent Valuation Method through Type I Market Surveys with brokers and salespersons in the market areas associated with the control and comparable unimpaired sales revealed mixed impressions of post-remediation impacts. However, the interview process also informed our correlation of why the impacts are not uniformly measurable or distributed, and assisted in our final correlation of likely post-remediation impact.

Integra's final finding with respect to post-remediation value diminution is as follows:

- The analysis of the (20) case studies demonstrates a wide range of value impacts to properties that have completed a defective drywall remediation from zero to 30%.

- The ability to fairly measure the value diminution requires a careful assessment of the unimpaired values, and, in most cases, we have developed the case studies (and impact assessments) in a range in order to mitigate the influence of normal market differences due to differing physical factors. These results form a lower and upper boundary of impact which in some cases is quite large (a/k/a "the spread").

---

[1] Bell defines and classifies the typology of various Detrimental Conditions (DC), and construction defects are classified as Class VI DC's.



Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/02/19 Page 11 of 232
Case 1:11-cv-22408-MGC Document 291-1 Entered on FLSD Docket 05/13/2019 Page 7 of 54

Material Statement of Findings                                                    4

- The majority of the case studies (11 of 20) indicated measurable post-remediation diminution of at least 5% on the lower boundary.

- The majority of the case studies (13 of 20) indicated upper boundary impacts greater than 10%, with many (10 of 20) at 20% or higher.

- The mean and median of all case studies demonstrate a lower boundary median/mean at 7% /-11% respectively, and an upper boundary median\mean at 20% / 19%, respectively.

- The case studies were confirmed with primary parties to the greatest extent possible, both the control sales with remediated drywall, and comparable sales used to model the unimpaired pairing.

- Integra analyzed the case studies on various issues potentially affecting the magnitude or potentially systematic analysis of the value diminution including geography, price segmentation, and date of value.  No systematic patterns emerged.

- Integra's conclusion of 10% value diminution post-remediation considers the potential variation in market adjustments and also considers that properties with less diminution may have suffered extended marketing times, may not have disclosed prior conditions, or may indicate less diminution because they found "the right buyer" who preferred a completely remodeled home, and suffered the risks of future disclosure (or intended not to disclose in the future).

- On the other hand, the 10% conclusion may understate the value diminution that some homes suffer when there are a high number of unaffected competitive properties listed for sale, or when the buyer/broker pool is more cautious resulting from prior bias or experience regarding Chinese drywall, or where there may be less confidence in the efficacy and/or proofs of the remedial action taken.

- For purposes of developing and applying a uniform damage analysis that withstands minor variations in the market's pricing behavior across time, geography and price segmentation, and which is both a fair and reasonable professional effort to measure the damage to both Plaintiff and Defendant, it is my expert opinion that the 10% estimate strikes a reasonable balance between the preponderance of the data analyzed, and the potential error rate of property and market variations.



Case 1:11-cv-22408-MGC Document 201-1 Entered on FLSD Docket 05/13/2019 Page 8 of 54
Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/02/19 Page 12 of 232

Definition of the Appraisal Problem                                                                      5

## Definition of the Appraisal Problem

"As of October 15, 2010, The Consumer Product Safety Commission (CSPC) received 3,650 reports concerning problem drywall across 38 states, the District of Columbia, Puerto Rico, and American Somoa…Two states, Florida and Louisiana account for more than 75% of all complaints…"[2] The reported problems commenced following major homebuilder use of Chinese Drywall following a supply shortage of typical drywall suppliers in 2006.

The CSPC maintained monthly reports on this evolving problem dating back to early 2009.  By 2010, the CSPC was conducting indoor air studies and distributing guidance on potential remedial actions.

The National Association of Homebuilders (NAHB) reported in May 2010 that initial imports dated back to 2000-2001, but by 2004-2007 these imports increased rapidly following escalating demand from Gulf Coast hurricane recovery efforts and general building demand.  The NAHB, a lobbying association for major public and private homebuilders, was issuing guidance to homebuilders on various legislative actions, insurance and risk assessment, and remediation guidance.

The Florida Association of Realtors (FAR) issued a White Paper identifying the problem, and guiding Realtors to disclose known conditions and educate themselves.  In conjunction with this White Paper, FAR developed a "Chinese Drywall Addendum for Purchase" contract addendum to specifically address the disclosure.

County Assessor offices began compiling lists of homes confirmed as having Chinese Drywall, and systematically offering 50% - 100% reductions in the building assessments for homes with confirmed defective drywall.

News articles describing the problem and addressing the myriad problems for homebuilders and homeowners alike propagated throughout statewide media outlets.

By middle to late 2010, a search of internet sources and various public agency websites confirmed that the problem was identified, and although the magnitude had not been fully quantified, market participants were aware of the potential problems with Chinese Drywall.

The appraisal problem examined herein is to estimate whether the knowledge of market participants, including Realtors, homebuilders, homeowners and the general public affected the price setting of homes with prior existence of Chinese Drywall if disclosed.  The disclosure of a known defect, which could materially affect the value of property, triggers the need for an affirmative disclosure of its presence.

I understand from Plaintiff's counsel that the prescribed standards and scope of a "complete" remediation of a Chinese Drywall property are identified in Judge Fallon's April 8, 2010 Findings of Facts @ Conclusions of Law in connection with Germano, et al, v. Taishan Gypsom Co. LTD, et al.

---

[2] Consumer Product Safety Commission, "Study of the Possible Effect of Problem Drywall Presence on Foreclosures – A report to Congress" dated July 17, 2012, page 4.  See Addendum for full report and data compiled by CPSC.



Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/02/19 Page 13 of 232
Case 1:11-cv-22408-MGC Document 291-1 Entered on FLSD Docket 05/13/2019 Page 3 of 54

Definition of the Appraisal Problem                                                    6

Compounding the complexity of remediation, the timing of the discovery and assessment phase occurred during the depths of the Great Recession[3], so capital availability for homeowners was more limited, and banking foreclosures were at historic highs. Residential real estate values had declined, and access to lending channels (and home equity) was constrained.

The breadth of public experience with the negative effects of Chinese Drywall and the required disclosure on the existence of the problem conspired to raise more public awareness of this defective material. The detrimental condition, once identified through broad public knowledge, commences to affect peoples' perception on value and risk.

The specific valuation problem addressed in this report is not the cost to cure or discount to market value for an unremediated property , but rather the market resistance following a complete remediation (with disclosure) that sellers are likely to experience.

---

[3] https://www.investopedia.com/terms/g/great-recession.asp; The Great Recession is a term that represents the sharp decline in economic activity during the late 2000s, which is considered the most significant downturn since the Great Depression. The term "Great Recession" applies to both the U.S. recession, officially lasting from December 2007 to June 2009, and the ensuing global recession in 2009.



Case 1:11-cv-22408-MGC Document 201-1 Entered on FLSD Docket 09/18/2013 Page 10 of 54
Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/03/19 Page 14 of 232

Foundational Theory on Value Diminution                                    7

## Foundational Theory on Value Diminution

The foundational theory on value diminution within the appraisal community has been developing since the early 1970's and 1980's[4]. In the early 1990's, Randall Bell, PhD., MAI commenced aggregating prior research and codifying a uniform framework that started as an Appraisal Institute seminar.  This early research culminated into the current Third Edition (2016) of the Appraisal Institute textbook "Real Estate Damages" authored by Dr. Bell.

It would not be an understatement to say that no one has advanced the knowledge base and framework of the analysis of detrimental property conditions and their effect on value more than Dr. Randall Bell.

Following years of study including input from many academic and industry professionals, and over multiple textbook editions, interim article and study publications, and exposure of the detrimental condition theory in the private and public sector practices and courts, the definitive framework for describing and quantifying detrimental conditions is now well established within the definitive textbook on the subject matter.   The classification of the types of detrimental conditions is even known as "the Bell Chart."

The Detrimental Conditions Matrix describes three definitive areas giving rise to value discounts relating to the Cost, Use, and Risk factors during three stages (time periods); 1) Assessment Stage; 2) Repair Stage; and 3) an On-Going Stage post remediation.[5]

This framework posits that in each of these nine quadrants, overall values could be affected depending upon the specific factors and case facts surrounding the specific type of detrimental condition (DC).

The DC matrix is a continuum of costs, use, and risk factors that combined affect real property value and give rise to cumulative value discounts versus an unimpaired value.

The DC Model (and damage continuum) is graphically represented by Dr. Bell as follows:

---

[4] Early publication indexes of articles as contained within the Appraisal Institute's LUM Library date back to 1990, but Integra maintains historic copies of Appraisal Journals back to 1985.  The first article on the "Effects of Violent Crimes on Residential Property Values", Sheila Little was published in July 1988.  Real Property practice includes many comparative value premises dating back to the original codification of appraisal texts in the 1950's, but collective and comprehensive published research began in earnest in the early 1990's.  Real Estate Damages provides a collective index of research and published papers dating back to 1972.

[5] The text clearly describes how these stages are not always sequential, and during repair a property owner with a DC may have to return for new assessments, or once proceeding to remediate the problem (thereby in an on-going phase) may have to return for additional repairs.  This is beyond the scope of this study.  For this class of detrimental condition, it is only the "risk" of possibly having to return to a prior stage that gives rise to market resistance.  For a properly remediated Chinese Drywall home where all copper and plumbing, electrical, and HVAC systems have been replaced, and 100% of the drywall in the house has been removed, we consider it somewhat unlikely to revert into prior stages once remediation is completed.



Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/03/19 Page 15 of 232
Case 1:11-cv-22408-MGC Document 281-1 Entered on FLSD Docket 09/13/2019 Page 11 of 54

Foundational Theory on Value Diminution                                                    8



This expert report incorporates the Appraisal Institute textbook <u>Real Estate Damages</u>, Third Edition (2016) by Randall Bell, PhD., MAI by reference.

The subject of this damage analysis concerns itself at the point above of "D", with the assumption that Property Damage Claims for remediation cost, risk and project incentive are being accounted for separately by Judge Cooke's Trial Plan.

The focus of this report is from D to E, reflective of the costs immediately preceding final repairs (interruption /loss of use during repair) which has been estimated by using the rental rate of the property as a proxy for the temporary loss of use during remediation, and the Points E to F, the "Market Resistance" phase post-remediation where the property owner must disclose the prior detrimental condition, and suffer any potential loss in value (versus a property that never experienced the DC).



Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/03/19 Page 16 of 232
Case 1:11-cv-22408-MGC Document 281-1 Entered on FLSD Docket 09/18/2019 Page 12 of 54

Foundational Theory on Value Diminution                                    9

## Table I   The DC Matrix

| Cost | Assessment | Repair | Ongoing |
|------|-----------|--------|---------|
| **Cost** | • Cost to assess & responsibility<br>• Engineering<br>• Phase I, II, III studies | • Repair costs & responsibility<br>• Repairs<br>• Remediation<br>• Contingencies | • Ongoing costs & responsibility<br>• Operations & maintenance (O&M)<br>• Monitoring |
| **Use** | • All loss of utility while assessed<br>• Disruptions<br>• Safety concerns<br>• Use restrictions | • All loss of utility while assessed<br>• Income loss<br>• Expense increase<br>• Use restrictions | • Ongoing disruptions<br>• Material alterations to highest & best use |
| **Risk** | • Uncertainty factor<br>• Discount, if any, where extent of damage is unknown | • Project incentive<br>• Financial incentive or risk, if any, during repairs | • Market resistance<br>• Residual discount, if any, due to a historical situation |

We do not expect there to be any costs in the On-going phase post remediation, although part of the market resistance arises because of the unknown risk of future disruptions and potential costs.

In the instant case with defective Chinese Drywall, and in many Class VI construction defects cases, the physical defects (DC's) are curable. The market resistance arises because of buyers' fear that future disclosure of a prior problem will scare future buyers. Some buyers just have a natural resistance to taking on problems, which although cured, are not guaranteed as cured.

**Definition of Market Resistance:** The risk, if any, associated with the ongoing stage of a detrimental conditions analysis. Market resistance includes the reluctance on the part of the real estate market to buy a property that has historically been damaged or tainted. Sometimes called *stigma.*[6]

**Detrimental Condition:** Any issue or condition that may cause a diminution in value to real estate.[7]

**Diminution in Value:** the lost value of real estate before (as if impaired) and after (or upon the discovery of) a detrimental condition.

Applicable valuation methodologies for measuring valuation diminution associated with detrimental conditions are outlined in the Bell textbook. Cost Approach methods are not relevant in the instant case because the costs of repair are being handled separately from this expert's analysis. The cost of moving is quantified herein as a damage since this is a cost reasonably expected to be incurred by an owner who suffers a full home remediation.

---

[6] Bell, Randall. Real Estate Damages Third Edition, *Appraisal Institute,* Chicago:2016, pg. 462

[7] *Ibid., pg. 458*



Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/03/19 Page 17 of 232
Case 1:11-cv-22408-MGC Document 291-1 Entered on FLSD Docket 09/15/2013 Page 13 of 54

Foundational Theory on Value Diminution                                                        10

Similarly, Income Approach methods are not applied since the residential properties studied are not traditionally traded on their income potential. However, the use of market rent as a proxy for occupancy costs is a "replacement approach" that considers the economic impact of rent as a proxy for use\occupancy value. This is considered and applied.

This report applies various methods as outlined within the Sales Comparison Approach to Detrimental Conditions. These methods include:

- Paired Sales Analysis
- Impaired Sales Comparables
- Market Resistance Estimation
- Sale-Resale Analysis
- Neighborhood Studies
- Proximity Studies
- Case Study Analysis
- Statistical Studies using Inferential Statistics, Linear Regression, or Multiple Regression
- Market Interview and Surveys

This report applies all of the above sales comparison methods with the exception of Linear and Multiple Regression, and Neighborhood and Proximity Studies, all of which are generally more suitable for studying a fixed-point detrimental condition (the impact of nuclear disaster, or a landfill) on surrounding properties where the fixed variable (location) can be arrayed against multiple variables (distance, time, price, and physical and economic differences).

The sale-resale method is considered within the individual reports by analyzing the Priority Claimants sales history against the findings within this report. This is not individually tested within this Report, but has been considered.

The process followed within this report conforms to the process described in Dr. Bell's Real Estate Damages text at page 8:

- Use Multiple Research sources (constructionism) and rely upon [an experts] general experience (Action)
- Demonstrate or acquire geographic competency (ethnography)
- Conduct a literature review and comply with USPAP (hermeneutics)
- Use sale or lease comparables, vacancy rates, expenses, and capitalization rates (empirical research)
- Use adjustment grids or other means to compare and contrast the data (comparative research)
- Have discussions with property owners or managers (testimony); verify the market data with parties involved or survey participants within the market (phenomenology) and ultimately produce findings that are logical, innate, testable, and repeatable (rationalism)

The scope, activities, analysis and findings conform to the above process.

On Residential Property Values in Florida



Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/03/19 Page 18 of 221
Case 1:11-cv-22408-MGC Document 201-1 Entered on FLSD Docket 08/15/2013 Page 14 of 54

Scope of Study and Methods                                                                11

## Scope of Study and Methods

As part of the scope of this report, and the related individual damage analyses, Integra professionals undertook an extensive review of published literature on defective drywall (a/k/a "Chinese Drywall") referring to the manufacture, import, and installation of drywall originally manufactured in China.

Integra Miami maintains a historic archive of reports from the Consumer Product Safety Commission (CPSC), Florida Board of Realtor and National Homebuilder Association alerts, various correspondence with Integra professionals on the matter of Chinese Drywall dating back to 2009-2010 timeframe contemporaneous with the discovery and study of the initial effects of Chinese Drywall.

In conjunction with this assignment, we updated these (3) data binders and reviewed additional public literature to familiarize ourselves with the timeline of the problems, the emerging report and study of the problems, and the reactions of the business community, realtors, legislators, homebuilders (to wit "market participants") over the time period 2009 – present.

We also undertook research to determine if studies related to valuation were published, and found none. We also researched and\or refamiliarized ourselves with writings on stigma and detrimental conditions generally, including reviewing excerpts and portions of the Real Estate Damages, and other related detrimental condition writings.

Over a period of 8 weeks, we engaged local appraisers with substantial residential appraisal experience to assist in the inspection and appraisal of the unimpaired values (hypothetical) of the twenty Priority Claimant properties covering various dates of value from 2012 – present. As part of this process, we interfaced with the residential appraisers, conducted telephone interviews and actively participated in the data gathering and analysis of the Claimant properties.

We developed a confirmation script, and proceeded to research through the various local Multiple Listing Services (MLS) to identify properties which had sold with Chinese Drywall (both remediated and unremediated). From among over 50 case studies, we narrowed our search and focused on the remediated properties and developed case studies to quantify whether any diminution in value was apparent.

As part of the case study and paired sales development, the Integra team conducted and collected dozens of in-person interviews with listing and selling Realtors™ involved or with primary knowledge of homes that sold with Chinese Drywall, or post remediation of Chinese Drywall. The results of these surveys were then analyzed, and specific comments were arrayed and analyzed to assess market participant reactions to the presence (or prior existence) of Chinese Drywall, and its impact on marketing and price of residential homes.

This material was fully analyzed and condensed into this report, and into various workfile documents evidencing our study, and supporting the process which lead to the development of conclusions contained herein. Following this scope are the results of our study.

It is acknowledged that Peter G. Kayworth, Yuliya Georgieva, Joseph Melloni, Juan Gamio and Paul L. Jones of IRR-Miami/Palm Beach made contributions to this study consisting of conducting research on the subject and transactions involving comparable properties, performing interviews, researching



Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/03/19 Page 19 of 232
Case 1:11-cv-22408-MGC Document 201-1 Entered on FLSD Docket 09/18/2019 Page 15 of 54

Review of Literature                                                                                12

literature, and development of research for all case studies under the direct supervision of Anthony M. Graziano, MAI, CRE.

## Review of Literature

Bell, Randall PhD., MAI <u>Real Estate Damages</u> (Third Edition) *Appraisal Institute* Chicago: 2016

"Chinese Drywall Facts and Fears" – Powerpoint Presentation dated June 24, 2009; www.assetadvisorsandmanagers.com

Consumer Product Safety Commission "Study of the Possible Effects of Problem Drywall Presence on Foreclosures – A Report to Congress", www.cpsc.gov/s3fs-public/StudyofthePossibleEffectofProblemDrywallPresenceonForeclosures.pdf dated July 12, 2012; Accessed January 23, 2019.

Kinnard, William N. "How North American Appraisers Value Contaminated Property and Associated Stigma", The Appraisal Journal, July, 1999

Kirkpatrick, John A. "Construction Defects and Stigma" Mealy's Construction Defects, July 2003

Mundy, Bill PhD., MAI "Stigma and Value" The Appraisal Journal, January 1992.

Patchin, Peter J. "Contaminated Properties – Stigma Revisited", The Appraisal Journal, April 1991

Patchin, Peter J. "Valuation of Contaminated Properties", The Appraisal Journal, January 1988

Various materials and documents comprised of Integra historic research specifically on Chinese Drywall; source material includes timestamped material downloaded from various government and industry sources proximate the 2009 – 2012 timeframe. This material is referred to as "Integra Research Binder Volumes I – III."

## Case Study Analysis

The following presents an analysis of the paired case studies developed in conjunction with this assignment. The 20 case studies represent a cross-section of pairings with control sales (sales of properties where the control sale had been remediated and disclosed during market exposure) which was then compared to 3-4 comparables that were not affected and never had defective drywall.

The presentation and analysis of the data and results will follow the process by which we collected and analyzed the data, and the resulting conclusions.

### Process of Development and Selection

Over the period January 20, 2019 – February 14, 2019, Integra developed over 40 case study files for properties in both a remediated and unremediated state as of the date of the control sale.



Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/02/19 Page 20 of 232
Case 1:11-cv-22408-MGC Document 201-1 Entered on FLSD Docket 09/15/2013 Page 16 of 54

Case Study Analysis                                                                                    13

The Integra team started with an understanding that a well-structured study would demonstrate a range in control sales that varied by A) date of sale; B) varying geographies generally representative of the distribution of affected drywall properties; C) various price segments to test whether different price ranged homes were affected differently.

These initial case studies collected included remediated and unremediated homes since the selection process was focused on a mass search of the various Multiple Listing Service (MLS) records searching for key word terms "Chinese Drywall" and variations. From these 50+ case studies, we then confirmed by direct contact with the listing or selling agent whether the control sales were remediated. If unavailable, we relied upon the disclosures in the MLS.

From these data sets, we then arrayed 27 sales which Integra reasonably confirmed were sales of homes post-remediation (the focus of the study). The Integra team then mapped these sales and identified relevant comparable sales from within the MLS to create paired analysis on each of the 27 control sale sets. Primary residential comparative factors were considered including building size, # BR, # Baths; Lot Size; Condition; and date of sale.

Over a 2- week period commencing on or about January 25, 2019, the team then followed a confirmation script to confirm all control sales and interview the listing broker. We repeated the same process for all of the comparable sales. Each listing was printed including photos when available of all relevant sales. Market data from Zillow/Trulia on sales trends in the market during the relevant timeframe was also collected and considered to understand the pricing trends during the relevant timeframe.

The team then confirmed as many control and comparable sales as possible, and recorded notes for each sale regarding the arms-length nature, confirming the control sale had been remediated and was disclosed at the time of sale, and that all comparable sales never had defective drywall issues.

From this initial set of 27, there were (7) case studies that were eliminated from further consideration. Three (3) of the (7) were eliminated because we confirmed the control sale was not remediated or had no confirmation of the existence of defective drywall. One case study was eliminated because the area had known sinkhole issues, and comparables may have been affected by a different detrimental condition; and three (3) case studies were eliminated due to insufficient comparable sales within close proximity or physical similarity to the control sale.

The balance of the (20) case studies were confirmed with the brokers, and notes on the control sale and comparables were recorded. These interviews also form the basis of our Market Participant Interviews analyzed separately.

Under my direction, Integra then developed adjustments for each of the comparable sales using typical adjustment processes used in residential appraisal to adjust for the major factors considered in pricing residential properties. The listing photographs were used to evaluate the overall condition, effective age, and level of finishes at the time of listing.

From the unaffected comparables, we then correlated to a range of indicated value that the control sale "should have" sold for if unaffected by the prior existence of defective drywall, as disclosed. This



Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/03/19 Page 21 of 232
Case 1:11-cv-22408-MGC Document 201-1 Entered on FLSD Docket 09/13/2013 Page 17 of 54

Case Study Analysis                                                                              14

concluded range in value considers a lower and upper boundary established by the adjusted comparables, and a reasonable correlation of the range the control sale should have sold within. This range was then compared to the actual price, and a range in post-remediation damages was reflected per case study.

The result of each case study was then arrayed on a master sheet, and the meta data and correlated data was then analyzed.

**Meta-Data**

Meta Data is the set of data that describes and gives information about other data. The 20 case studies represent a cross section of the Florida residential market. A 2010 article in the Sarasota Herald Tribune (Dec 14, 2010) outlined the reported drywall cases at that time from assessment records. The distribution of reported defective drywall cases based upon this article is compared to the geographic distribution of our case studies as follows:

|  |  | % Cases by County | Integra Case Study % | Integra Case Study # |
|---|---|---|---|---|
| Lee | 1518 | 30% | 0% | 0 |
| Palm Beach | 747 | 15% | 10% | 2 |
| Broward | 607 | 12% | 24% | 5 |
| Hillsborough | 515 | 10% | 19% | 4 |
| Miami Dade | 294 | 6% | 14% | 3 |
| Collier | 264 | 5% | 0% | 0 |
| Charlotte | 254 | 5% | 19% | 4 |
| St. Lucie | 240 | 5% | 5% | 1 |
| Indian River | 132 | 3% | 0% | 0 |
| Pinellas | 106 | 2% | 0% | 0 |
| Sarasota | 93 | 2% | 0% | 0 |
| Martin | 88 | 2% | 5% | 1 |
| Pasco | 59 | 1% | 0% | 0 |
| Polk | 33 | 1% | 5% | 1 |
| **Base TOTAL** | 5137 |  |  | 21 |

*Source: Larson, Jeff and Sapien Jouquin - Sarasota Herald Tribune Dec 14, 2010*

Integra intentionally omitted Lee County from the data set because this represented the highest prevalence of defective drywall in the entire State of Florida. A substantial number of news articles and published surveys on the problem focus on Lee County as "ground zero" of the Chinese Drywall problem. This area being hardest hit by the detrimental condition could create bias with Realtors and market participants, and identifying clean "unimpaired sales" was deemed significantly more complex without full confirmation. This elimination was performed to prevent bias that might skew the results in favor of the Plaintiff. Whatever impacts are measured, we would expect the impacts in Lee County to be equivalent or more severe than the balance of the state.

Generally, the case studies represent an otherwise similar proportion relative to the reported cases in 2010.

Part of the study design was to also control for the dates of sale and price segmentations, so it was considered significant to have a few counties with multiple case studies to allow for analysis on other factors where geography was held consistent.



Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/03/19 Page 22 of 232
Case 1:11-cv-22408-MGC Document 261-1 Entered on FLSD Docket 09/18/2013 Page 18 of 54

Case Study Analysis                                                                        15

The date of sale was considered, and the following distribution is reflected among the 20 case studies:

| Year | Count |
|------|-------|
| 2010 | 3 |
| 2011 | 1 |
| 2012 | 2 |
| 2013 | 7 |
| 2014 | 1 |
| 2015 | 2 |
| 2016 | 3 |
| 2017 | 1 |
| | 20 |

The case study price segmentation is shown as follows:

| Segment | Value |
|---------|-------|
| <$150K | 3.00 |
| $150K - $300K | 9.00 |
| $300K - $750K | 2.00 |
| > $750K | 6.00 |
| | 20.00 |

Notably, the price segmentation is heavily skewed towards case studies that developed in the $750,000+ range. This over-weighting of the >$750K price segment resulted because five (5) of the (7) case studies excluded from final development fell within other price ranges.

The median sales prices in Florida through the study period is shown as follows:





Source:  Zillow.com

Twelve (60%) of the 20 case studies fall within the median home price averages.  Therefore, we consider the distribution of the case studies representative of the price segmentation generally dominant in the market.



Case Study Analysis      17

The following page provides an index listing of the case studies cross-referenced in our workfile by Case Study # and Address.

**Summary of Case Study Control Sales**
**Source: IRR-Miami | File # 123-2017-0275**

| IRR Case Study # | Control Subject | County | Impaired Status | | Price | Date of Sale | Size, SF | Bedrooms | Bathrooms | Year Built |
|---|---|---|---|---|---|---|---|---|---|---|
| Broward 1 | 6985 Long Leaf Dr, Parkland | Broward | Remediated | $ | 1,056,000 | 5/10/2012 | 6,381 | 7 | 5 | 2007 |
| Broward 10 | 6935 Long Leaf Dr, Parkland | Broward | Remediated | $ | 390,000 | 4/1/2010 | 4,100 | 5 | 4.1 | 2007 |
| Broward 2 | 8289 Emerald Ave, Parkland | Broward | Remediated | $ | 855,000 | 3/20/2013 | 4,744 | 6 | 4.1 | 2006 |
| Broward 3 | 6339 NW 120th Dr, Coral Springs | Broward | Remediated | $ | 814,000 | 10/30/2015 | 3,850 | 5 | 4 | 2002 |
| Broward 5 | 9677 Cinnamon ct, Parkland | Broward | Remediated | $ | 585,000 | 8/26/2013 | 3,331 | 4 | 3 | 2006 |
| FM 20 | 1358 RICHMAR ST, NORTH PORT, FL 34288 | Charlotte County | Remediated | $ | 110,000 | 4/22/2010 | 1,851 | 3 | 2 | 2006 |
| FM 21 | 5428 SHAGBARK CT, NORTH PORT, FL 34287 | Charlotte County | Remediated | $ | 115,000 | 3/22/2010 | 1,477 | 3 | 2 | 2006 |
| FM 22 | 4698 GLOBE TER, NORTH PORT, FL 34286 | Charlotte County | Remediated | $ | 148,000 | 11/12/2013 | 1,914 | 3 | 2 | 2007 |
| FM 23 | 4637 ANTIOCH ST, NORTH PORT, FL 34286 | Charlotte County | Remediated | $ | 159,650 | 10/8/2014 | 1,728 | 3 | 2 | 2005 |
| Hialeah 2 | 8031 W 36th Ave Unit 5, Hialeah | Miami-Dade | Remediated | $ | 233,000 | 11/22/2017 | 1,356 | 3 | 3 | 2006 |
| Miami Dade 1 | 363 NE 30 Av, Homestead | Miami-Dade | Remediated | $ | 276,500 | 2/6/2017 | 2,733 | 3 | 3 | 2006 |
| Miami-Dade 2 | 372 NE 36 TR, Homestead | Miami-Dade | Remediated | $ | 210,000 | 7/6/2015 | 2,549 | 4 | 3 | 2006 |
| PB Boca 1 | 9407 Bridgebrook Dr, Boca Raton, FL 33496 | Palm Beach | Remediated | $ | 1,200,000 | 7/9/2013 | 5,209 | 5 | 5 | 2006 |
| PB Boca 2 | 17830 Monte Vista Dr, Boca Raton, FL 33496 | Palm Beach | Remediated | $ | 940,000 | 6/29/2012 | 4,674 | 5 | 5 | 2006 |
| PSL # 6 | 503 NW Ashton Way, Port St. Lucie, FL 34983 | St. Lucie | Remediated | $ | 228,500 | 2/20/2013 | 2,564 | 4 | 3 | 2006 |
| Stuart 1 | 520 SW Akron Ave, Stuart | Martin | Remediated | $ | 332,500 | 3/9/2016 | 2,750 | 3 | 3.1 | 2005 |
| Tampa 12 | 1211 E. Giddons Avenue, Tampa, FL 33603 | Hillsborough | Remediated | $ | 179,000 | 9/19/2016 | 1,562 | 3 | 2 | 2007 |
| Tampa 25 | 416 VINE CLIFF ST, RUSKIN, FL 33570 | Hillsborough | Remediated | $ | 104,000 | 3/8/2011 | 1,930 | 4 | 2 | 2007 |
| Tampa 26 | 11618 HAMMOCKS GLADE DR, RIVERVIEW, FL 33569 | Hillsborough | Remediated | $ | 115,000 | 2/11/2013 | 1,446 | 3 | 2 | 2006 |
| Tampa 27 | 11511 HAMMOCKS GLADE DR, RIVERVIEW, FL 33569 | Hillsborough | Remediated | $ | 120,000 | 3/16/2012 | 1,766 | 4 | 3 | 2006 |
| | | | Average | $ | 374,482 | | 2,712 | 3.84 | 3.02 | 2006 |
| | | | Median | $ | 228,500 | | 2,549 | 4.00 | 3.00 | 2006 |

On Residential Property Values in Florida

irr.

Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/03/19 Page 25 of 232
Case 1:11-cv-22408-MGC Document 281-1 Entered on FLSD Docket 09/18/2013 Page 21 of 54

Case Study Analysis                                                                                      18

The case study analysis worksheets are included within the Appendix. Backup notes and research is collated in our research binders indexed by IRR Case Study #.

The results of the low-end estimate of impact and high-end estimate of impact are shown. We first present the data sorted by "Highest Impact" reflecting the upper boundary of value diminution based on the correlated unimpaired prediction.

**Summary of Case Study Control Sales**
Source: IRR-Miami | File # 123-2017-0275

| IRR Case Study # | Control Subject | County | Price | Date of Sale | Sale Year | Price Segment | Low Impact | High Impact | Spread | Notes |
|---|---|---|---|---|---|---|---|---|---|---|
| FM 22 | 4637 ANTIOCH ST, NORTH PORT, FL. 34288 | Charlotte County | $ 150,650 | 10/8/2014 | 2014 | $150 - $300K | 0% | 0% | 0% | No material adjustment |
| Broward 3 | 6339 NW 120th Dr, Coral Springs | Broward | $ 814,000 | 10/30/2015 | 2015 | >$750K | 0% | 3% | 3% | |
| PSL#6 | 503 NW Ashton Way, Port St. Lucie, FL. 34983 | St. Lucie | $ 228,500 | 2/25/2013 | 2013 | $150 - $300K | 0% | 5% | 5% | Homes sold within range - need to confirm w/ listing agent the "guarentee" |
| Tampa 27 | 11511 HAMMOCKS GLADE DR. RIVERVIEW FL. 33569 | Hillsborough | $ 120,000 | 3/16/2012 | 2013 | <$150K | 0% | 7% | 7% | 60 DOM versus comps (2 - 13 days) |
| Hialeah 2 | 8031 W 36th Ave Unit 5, Hialeah | Miami-Dade | $ 255,000 | 11/22/2017 | 2017 | $150 - $300K | 5% | 7% | 2% | Selling Broker did not disclose; prior history on listing |
| Broward 5 | 9677 Cinnamon ct, Parkland | Broward | $ 585,000 | 8/26/2013 | 2013 | $350K - $750K | 0% | 9% | 9% | Newly renovated 2007 home; no apparent discount. With disclosure and remediation cert |
| Miami Dade 1 | 563 NE 36 Av, Homestead | Miami-Dade | $ 276,500 | 2/6/2017 | 2016 | $150K - $300K | 2% | 12% | 10% | Extended Marketing Time |
| Miami-Dade 2 | 372 NE 36 TR, Homestead | Miami-Dade | $ 210,000 | 7/6/2015 | 2015 | $150K - $300K | 13% | 13% | 0% | Have prior sale; not pained unremediated |
| Tampa 26 | 11618 HAMMOCKS GLADE DR. RIVERVIEW, FL. 33569 | Hillsborough | $ 115,000 | 2/11/2013 | 2013 | <$150K | 0% | 13% | 13% | 60 DOM versus comps (2 - 13 days) |
| Tampa 12 | 1211 E. Giddens Avenue, Tampa, FL. 33603 | Hillsborough | $ 170,000 | 9/10/2016 | 2016 | $150 - $300K | 3% | 20% | 17% | 12 months on market  versus comps 40-90 days |
| PB Boca 1 | 9407 Bridgebrook Dr. Boca Raton FL. 33496 | Palm Beach | $ 1,200,000 | 7/9/2013 | 2013 | >$750,000 | 8% | 20% | 12% | |
| FM 20 | 1598 RICHMAR ST, NORTH PORT, FL. 34288 | Charlotte County | $ 155,000 | 4/22/2010 | 2010 | $150 - $300K | 0% | 21% | 21% | |
| FM 22 | 4698 GLOBE TER, NORTH PORT, FL. 34286 | Charlotte County | $ 148,000 | 11/12/2013 | 2013 | $150 - $300K | 13% | 23% | 10% | |
| Broward 2 | 8209 Emerald Ave, Parkland | Broward | $ 855,000 | 5/20/2013 | 2013 | >$750K | 8% | 25% | 17% | Remediated by BRS in under 3 months |
| FM 21 | 5428 SHAGBARK CT, NORTH PORT, FL. 34287 | Charlotte County | $ 115,000 | 3/22/2010 | 2010 | $150 - $300K | 23% | 28% | 5% | |
| PB Boca 2 | 17830 Monte Vista Dr. Boca Raton  FL. 33496 | Palm Beach | $ 940,000 | 6/29/2012 | 2012 | >$750,000 | 22% | 28% | 6% | |
| Stuart 1 | 920 SW Akron Ave, Stuart | Martin | $ 332,500 | 5/9/2016 | 2016 | $300K - $750K | 26% | 28% | 2% | Drywall Reportedly 90%; No guarentee- Seller motivated |
| Tampa 25 | 416 VINE CLIFF ST, RUSKIN, FL. 33570 | Hillsborough | $ 104,000 | 5/8/2011 | 2011 | <$150K | 21% | 30% | 9% | Remediation @ KB Homes;  62 DOM versus  0-45 |
| Broward 1 | 6985 Long Leaf Dr, Parkland | Broward | $ 1,056,000 | 5/30/2012 | 2012 | >$750K | 24% | 30% | 6% | Control home sold in 22 days; may have been influenced by list-discount |
| Broward  0 | 6935 Long Leaf Dr, Parkland | Broward | $ 390,000 | 4/1/2010 | 2010 | >$750K | 48% | 50% | 2% | -48% on Unremediated; Back to Back Control |

Of the 20 case studies, there were (3) that showed no demonstrable discount at the upper or lower boundary. The "spread" indicates that the comparable data was sufficiently similar to correlate to a single point value.

Case Study Tampa27 showed 60 days on market versus the (4) comparables ranging from 2-13 days on market. So, while the price achieved was comparable to the peers, it took on average 6x longer to achieve that price. This also occurred in Tampa26 with a 0% lower boundary, reflecting the same subdivision, year and price point as Tampa 27; therefore, two of the case studies with no lower boundary impact revealed a demonstrable market time difference to achieve the market price.

PSL#6 was noted that the drywall remediation was "guaranteed." We were unable to confirm with the agent what "guarantees" were provided, but whether this guarantee was perception or reality, it may have influenced the buyer and hence influenced the 0% impact.

Overall, of the 20 case studies, there were only (3) that were "no value diminution" by review of the upper and lower boundary. Three (3) of the 20 sales (15%) suggest that post-remediation, there is no impact other than an extended marketing time. Ignoring the upper boundary, this could be extended to (7) sales of 20 (35%).

The other 65% - 85% of the case studies strongly suggest that there is post-remediation value diminution present. Integra then analyzed this based on date of sale, geography by county, and price segmentation.



Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/03/19 Page 26 of 232
Case 1:11-cv-22408-MGC Document 281-1 Entered on FLSD Docket 08/18/2013 Page 22 of 54

Case Study Analysis
19

An array of the same data set <u>sorted by date</u> is shown below.

**Summary of Case Study Control Sales**
Source: IRR-Miami | File # 123-2017-0275

| IRR Case Study # | Control Subject | County | Price | Date of Sale | Sale Year | Price Segment | Low Impact | High Impact | Spread | Notes |
|---|---|---|---|---|---|---|---|---|---|---|
| FM 21 | 5428 SPAGRABIC CT, NORTH PORT. FL 34287 | Charlotte County | $ 115,000 | 3/22/2010 | 2010 | $150 - $300K | 23% | 25% | 2% | |
| Broward 10 | 6935 Long Leaf Dr, Parkland | Broward | $ 390,000 | 4/1/2010 | 2010 | >$750K | 48% | 50% | 2% | -48% on Unremediated; Back to Back Control |
| FM 20 | 1358 RICHMAR ST, NORTH PORT, FL 34288 | Charlotte County | $ 110,000 | 4/22/2010 | 2010 | $150 - $300K | 0% | 21% | 21% | |
| Tampa 25 | 416 VINE CLIFF ST, RUSKIN, FL 33570 | Hillsborough | $ 104,000 | 3/8/2011 | 2011 | <$150K | 21% | 30% | 9% | Remediation @ KB Homes; 02 DOM versus 03 |
| Tampa 27 | 11511 HAMMOCKS GLADE DR, RIVERVIEW, FL 33569 | Hillsborough | $ 120,000 | 3/16/2012 | 2013 | <$150K | 0% | 7% | 7% | 60 DOM versus comps (2 - 13 days) |
| Broward 1 | 6985 Long Leaf Dr, Parkland | Broward | $ 1,056,000 | 5/10/2012 | 2012 | >$750K | 24% | 30% | 6% | Control home sold in 22 days; may have been influenced by list-discount |
| PB Box 2 | 17830 Monte Vista Dr, Boca Raton FL 33496 | Palm Beach | $ 940,000 | 6/25/2012 | 2012 | >$750,000 | 22% | 28% | 6% | |
| Tampa 26 | 11618 HAMMOCKS GLADE DR, RIVERVIEW, FL 33569 | Hillsborough | $ 115,000 | 2/11/2013 | 2013 | <$150K | 0% | 13% | 13% | 60 DOM versus comps (2 - 13 days) |
| PSL # 6 | 503 NW Ashton Way, Port St. Lucie, FL 34983 | St. Lucie | $ 228,500 | 2/20/2013 | 2013 | $150 - $300K | 0% | 5% | 5% | Homes sold within range - need to confirm w/ |
| Broward 2 | 8289 Emerald Ave, Parkland | Broward | $ 855,000 | 5/20/2013 | 2013 | >$750K | 8% | 25% | 17% | Remediated by BRS in under 3 months |
| PB Box 1 | 9407 Bridgebrook Dr. Boca Raton, FL 33496 | Palm Beach | $ 1,200,000 | 7/9/2013 | 2013 | >$750,000 | 8% | 20% | 12% | |
| Broward 5 | 9677 Cinnamon ct, Parkland | Broward | $ 585,000 | 8/26/2013 | 2013 | $350K - $750K | 0% | 9% | 9% | Newly renovated 2007 home; no apparent |
| FM 22 | 4698 GLOBE TRR, NORTH PORT, FL 34286 | Charlotte County | $ 148,000 | 11/12/2013 | 2013 | $150 - $300K | 13% | 23% | 10% | |
| FM 23 | 4657 ANTIOCH ST, NORTH PORT, FL 34288 | Charlotte County | $ 159,650 | 10/8/2014 | 2014 | $150 - $300K | 0% | 0% | 0% | No material adjustment |
| Miami-Dade 2 | 372 NE 36 TR, Homestead | Miami-Dade | $ 210,000 | 7/6/2015 | 2015 | $150K - $300K | 13% | 13% | 0% | Have prior sale; not paired unremediated |
| Broward 3 | 6339 NW 120th Dr, Coral Springs | Broward | $ 814,000 | 10/30/2015 | 2015 | >$750K | 0% | 3% | 3% | |
| Stuart 1 | 520 SW Akron Ave, Stuart | Martin | $ 352,500 | 3/9/2016 | 2016 | $300K - $750K | 26% | 28% | 2% | Drywall Reportedly 90%; No guarantee- Seller motivated |
| Tampa 12 | 1211 E. Giddens Avenue, Tampa, FL 33603 | Hillsborough | $ 179,000 | 3/19/2016 | 2016 | $150 - $300K | 3% | 20% | 17% | 11 months on market versus comps 40-90 days |
| Miami Dade 1 | 365 NE 30 Av, Homestead | Miami-Dade | $ 276,500 | 2/6/2017 | 2016 | $150K - $300K | 2% | 12% | 10% | Extended Marketing Time |
| Hialeah 2 | 8031 W 36th Ave Unit 5, Hialeah | Miami-Dade | $ 233,000 | 11/22/2017 | 2017 | $150 - $300K | 5% | 7% | 2% | Selling Broker did not disclose; prior history on listing |

Notably, some of the upper boundary highest impacts occur in the earliest years, which is suggestive that post remediation damages may be declining as the market becomes more sophisticated and understands the remediation process. However, there still remains indications as late as 2015 – 2016 of upper limit impacts in the 20%+ range. There is no systematic decline in damage impacts by date.

As array of the same data set <u>sorted by geography (county)</u> is shown below:

**Summary of Case Study Control Sales**
Source: IRR-Miami | File # 123-2017-0275

| IRR Case Study # | Control Subject | County | Price | Date of Sale | Sale Year | Price Segment | Low Impact | High Impact | Spread | Notes |
|---|---|---|---|---|---|---|---|---|---|---|
| Broward 10 | 6935 Long Leaf Dr, Parkland | Broward | $ 390,000 | 4/1/2010 | 2010 | >$750K | 48% | 50% | 2% | -48% on Unremediated; Back to Back Control |
| Broward 1 | 6985 Long Leaf Dr, Parkland | Broward | $ 1,056,000 | 5/10/2012 | 2012 | >$750K | 24% | 30% | 6% | Control home sold in 22 days; may have been |
| Broward 2 | 8289 Emerald Ave, Parkland | Broward | $ 855,000 | 5/20/2013 | 2013 | >$750K | 8% | 25% | 17% | Remediated by BRS in under 3 months |
| Broward 5 | 9677 Cinnamon ct, Parkland | Broward | $ 585,000 | 8/26/2013 | 2013 | $350K - $750K | 0% | 9% | 9% | Newly renovated 2007 home; no apparent |
| Broward 3 | 6339 NW 120th Dr, Coral Springs | Broward | $ 814,000 | 10/30/2015 | 2015 | >$750K | 0% | 3% | 3% | |
| FM 21 | 5428 SPAGRABIC CT, NORTH PORT, FL 34287 | Charlotte County | $ 115,000 | 3/22/2010 | 2010 | $150 - $300K | 23% | 25% | 2% | |
| FM 20 | 1358 RICHMAR ST, NORTH PORT, FL 34288 | Charlotte County | $ 110,000 | 4/22/2010 | 2010 | $150 - $300K | 0% | 21% | 21% | |
| FM 22 | 4698 GLOBE TRR, NORTH PORT, FL 34286 | Charlotte County | $ 148,000 | 11/12/2013 | 2013 | $150 - $300K | 13% | 23% | 10% | |
| FM 23 | 4657 ANTIOCH ST, NORTH PORT, FL 34288 | Charlotte County | $ 159,650 | 10/8/2014 | 2014 | $150 - $300K | 0% | 0% | 0% | No material adjustment |
| Tampa 25 | 416 VINE CLIFF ST, RUSKIN, FL 33570 | Hillsborough | $ 104,000 | 3/8/2011 | 2011 | <$150K | 21% | 30% | 9% | Remediation @ KB Homes; 02 DOM versus 0-45 |
| Tampa 27 | 11511 HAMMOCKS GLADE DR, RIVERVIEW, FL 33569 | Hillsborough | $ 120,000 | 3/16/2012 | 2013 | <$150K | 0% | 7% | 7% | 60 DOM versus comps (2 - 13 days) |
| Tampa 26 | 11618 HAMMOCKS GLADE DR, RIVERVIEW, FL 33569 | Hillsborough | $ 115,000 | 2/11/2013 | 2013 | <$150K | 0% | 13% | 13% | 60 DOM versus comps (2 - 13 days) |
| Tampa 12 | 1211 E. Giddens Avenue, Tampa, FL 33603 | Hillsborough | $ 179,000 | 3/19/2016 | 2016 | $150 - $300K | 3% | 20% | 17% | 11 months on market versus comps 40-90 |
| Stuart 1 | 520 SW Akron Ave, Stuart | Martin | $ 352,500 | 3/9/2016 | 2016 | $300K - $750K | 26% | 28% | 2% | Drywall Reportedly 90%; No guarantee- Seller |
| Miami-Dade 2 | 372 NE 36 TR, Homestead | Miami-Dade | $ 210,000 | 7/6/2015 | 2015 | $150K - $300K | 13% | 13% | 0% | Have prior sale; not paired unremediated |
| Miami Dade 1 | 365 NE 30 Av, Homestead | Miami-Dade | $ 276,500 | 2/6/2017 | 2016 | $150K - $300K | 2% | 12% | 10% | Extended Marketing Time |
| Hialeah 2 | 8031 W 36th Ave Unit 5, Hialeah | Miami-Dade | $ 233,000 | 11/22/2017 | 2017 | $150 - $300K | 5% | 7% | 2% | Selling Broker did not disclose; prior history on listing |
| PB Box 2 | 17830 Monte Vista Dr, Boca Raton, FL 33496 | Palm Beach | $ 940,000 | 6/25/2012 | 2012 | >$750,000 | 22% | 28% | 6% | |
| PB Box 1 | 9407 Bridgebrook Dr. Boca Raton, FL 33496 | Palm Beach | $ 1,200,000 | 7/9/2013 | 2013 | >$750,000 | 8% | 20% | 12% | |
| PSL # 6 | 503 NW Ashton Way, Port St. Lucie, FL 34983 | St. Lucie | $ 228,500 | 2/20/2013 | 2013 | $150 - $300K | 0% | 5% | 5% | Homes sold within range - need to confirm w/ listing agent the "guarantee" |

The Broward County case studies were about 60/40 on significant impacts of 20% or more, notably most in the higher price segments.

Charlotte County had 75% of the study results with 20%+impacts.

Hillsborough County was 30/70, with 3 of the 4 case studies having lower boundary impacts of zero – 3%. All three of these sales had demonstrably inferior marketing times for the control sales.



Miami-Dade County 2/3rds of the cases showing 13%+/- diminution.

With only one study in Martin, and St. Lucie – Martin show significant impacts (26% - 27%) and St. Lucie no impact.

The two Palm Beach studies had significant impacts in the upper boundaries in excess of 25% diminution, both on homes over $750,000.

While not conclusive, the groupings by county generally showed prominent impacts in Broward, Palm Beach, Charlotte, and Miami-Dade consistent with the prevalence of cases in those counties.

As array of the same data set <u>sorted by price segmentation</u> is shown below:

**Summary of Case Study Control Sales**
**Source: IRR-Miami | File # 123-2017-0275**

| IRR Case Study # | Control Subject | County | Sale Year | Price Segment | Low Impact | High Impact |
|---|---|---|---|---|---|---|
| Tampa 25 | 416 VINE CLIFF ST, RUSKIN, FL 33570 | Hillsborough | 2011 | <$150K | 21% | 30% |
| Tampa 27 | 11511 HAMMOCKS GLADE DR, RIVERVIEW, FL 33569 | Hillsborough | 2013 | <$150K | 0% | 7% |
| Tampa 26 | 11618 HAMMOCKS GLADE DR, RIVERVIEW, FL 33569 | Hillsborough | 2013 | <$150K | 0% | 13% |
| FM21 | 5428 SHAGBARK CT, NORTH PORT, FL 34287 | Charlotte County | 2010 | $150 - $300K | 23% | 25% |
| FM20 | 1358 RICHMAR ST, NORTH PORT, FL 34288 | Charlotte County | 2010 | $150 - $300K | 0% | 21% |
| FM22 | 4698 GLOBE TER, NORTH PORT, FL 34286 | Charlotte County | 2013 | $150 - $300K | 13% | 23% |
| FM23 | 4637 ANTIOCH ST, NORTH PORT, FL 34288 | Charlotte County | 2014 | $150 - $300K | 0% | 0% |
| Tampa 12 | 1211 E. Giddens Avenue, Tampa, FL 33603 | Hillsborough | 2016 | $150 - $300K | 3% | 20% |
| Hialeah 2 | 8031 W 36th Ave Unit 5, Hialeah | Miami-Dade | 2017 | $150 - $300K | 5% | 7% |
| PSL #6 | 503 NW Ashton Way, Port St. Lucie, FL 34983 | St. Lucie | 2013 | $150 - $300K | 0% | 5% |
| Miami-Dade 2 | 372 NE 36 TE, Homestead | Miami-Dade | 2015 | $150K - $300K | 13% | 13% |
| Miami Dade 1 | 363 NE 30 Av, Homestead | Miami-Dade | 2016 | $150K - $300K | 2% | 12% |
| Stuart 1 | 520 SW Akron Ave, Stuart | Martin | 2016 | $300K - $750K | 26% | 28% |
| Broward 5 | 9677 Cinnamon ct, Parkland | Broward | 2013 | $350K - $750K | 0% | 9% |
| PB Boca 2 | 17830 Monte Vista Dr.  Boca Raton, FL 33496 | Palm Beach | 2012 | >$750K | 22% | 28% |
| PB Boca 1 | 9407 Bridgebrook Dr. Boca Raton, FL 33496 | Palm Beach | 2013 | >$750K | 8% | 20% |
| Broward 10 | 6935 Long Leaf Dr, Parkland | Broward | 2010 | >$750K | 48% | 50% |
| Broward 1 | 6985 Long Leaf Dr, Parkland | Broward | 2012 | >$750K | 24% | 30% |
| Broward 2 | 8289 Emerald Ave, Parkland | Broward | 2013 | >$750K | 8% | 25% |
| Broward 3 | 6339 NW 120th Dr, Coral Springs | Broward | 2015 | >$750K | 0% | 3% |

There was no systematic patterns on price segmentation.  Each price segment had examples of neutral case studies where nominal impacts were shown, but each segment also contained a greater number of case studies with lower and upper bound limits at 20%+.

The last array shows the case studies sorted by the spread between the lower and upper boundaries of impact.  This method of testing underscores how the "tightness" of the unimpaired adjustment.

Integra then compared the median and mean of the impacts upper and lower boundaries to identify the average and median impacts across geography, price segmentation, date of sale.  Integra segregated three classes of mean and median across A) All sales; B) only sales with spreads of 1% of more; and C) only sales with 1% - 8% spreads (essentially eliminating the outer boundaries of zero and high indications that were not "tight")

On Residential Property Values in Florida



Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/03/19 Page 28 of 232
Case 1:11-cv-22408-MGC Document 281-1 Entered on FLSD Docket 08/15/2013 Page 24 of 54

Case Study Analysis        21

**Summary of Case Study Control Sales**
Source: IRR-Miami | File # 123-2017-0275

| IRR Case Study # | Control Subject | County | Sale Year | Price Segment | Low Impact | High Impact | Spread | Notes |
|---|---|---|---|---|---|---|---|---|
| FM 23 | 4637 ANTIOCH ST, NORTH PORT, FL 34288 | Charlotte County | 2014 | $150 - $300K | 0% | 0% | 0% | No material adjustment |
| Miami-Dade 2 | 372 NE 36 TE, Homestead | Miami-Dade | 2015 | $150K - $300K | 13% | 13% | 0% | Have prior sale; not paired unremediated |
| FM 21 | 5428 SHAGBARK CT NORTH PORT FL 34287 | Charlotte County | 2010 | $150 - $300K | 23% | 25% | 2% | |
| Hialeah 2 | 8031 W 36th Ave Unit 5 Hialeah | Miami-Dade | 2017 | $150 - $300K | 5% | 7% | 2% | Selling Broker did not disclose; prior history |
| Broward 10 | 6935 Long Leaf Dr, Parkland | Broward | 2010 | >$750K | 48% | 50% | 2% | -48% on Unremediated; Back to Back Control Sale |
| Stuart 1 | 520 SW Akron Ave, Stuart | Martin | 2016 | $300K - $750K | 26% | 28% | 2% | Drywall Reportedly 90%; No guarentee- Seller |
| Broward 3 | 6339 NW 120th Dr, Coral Springs | Broward | 2015 | >$750K | 0% | 3% | 3% | |
| PSL #6 | 503 NW Ashton Way, Port St. Lucie, FL 34953 | St. Lucie | 2013 | $150 - $300K | 0% | 5% | 5% | Homes sold within range - need to confirm w/ |
| Broward 1 | 6985 Long Leaf Dr, Parkland | Broward | 2012 | >$750K | 24% | 30% | 6% | Control home sold in 22 days; may have been |
| PB Boca 2 | 17830 Monte Vista Dr, Boca Raton, FL 33496 | Palm Beach | 2012 | >$750K | 22% | 28% | 6% | |
| Tampa 27 | 11511 HAMMOCKS GLADE DR, RIVERVIEW, FL 33569 | Hillsborough | 2013 | <$150K | 0% | 7% | 7% | 60 DOM versus comps (2 - 13 days) |
| Tampa 25 | 416 VINE CLIFF ST, RUSKIN, FL 33570 | Hillsborough | 2011 | <$150K | 21% | 30% | 9% | Remediation @ KB Homes; 102 DOM versus 30- |
| Broward 5 | 9677 Cinnamon ct, Parkland | Broward | 2013 | $300K - $750K | 0% | 9% | 9% | Newly renovated 2007 home; no apparent discount. With disclosure and remediation |
| Miami Dade 1 | 363 NE 30 Av, Homestead | Miami-Dade | 2016 | $150K - $300K | 2% | 12% | 10% | Extended Marketing Time |
| FM 22 | 4698 GLOBE TER, NORTH PORT, FL 34286 | Charlotte County | 2013 | $150 - $300K | 13% | 23% | 10% | |
| PB Boca 1 | 9407 Bridgebrook Dr, Boca Raton, FL 33496 | Palm Beach | 2013 | >$750K | 8% | 20% | 12% | |
| Tampa 26 | 11618 HAMMOCKS GLADE DR, RIVERVIEW, FL 33569 | Hillsborough | 2013 | <$150K | 0% | 13% | 13% | 60 DOM versus comps (40-90) |
| Broward 2 | 8289 Emerald Ave, Parkland | Broward | 2013 | >$750K | 8% | 25% | 17% | Remediated by BRS in under 3 months |
| Tampa 12 | 1211 E. Giddens Avenue, Tampa, FL 32603 | Hillsborough | 2016 | $150 - $300K | 3% | 20% | 17% | 11 months on market versus comps 40-90 |
| FM 20 | 1350 RICHMAR ST, NORTH PORT, FL 34288 | Charlotte County | 2010 | $150 - $300K | 0% | 21% | 21% | |

| | Median Lower | Median Upper |
|---|---|---|
| ALL | 7% | 20% |
| ALL Non-Zero HIGH | 7% | 21% |
| Spread 1% - 13% | 8% | 20% |

| | Mean Lower | Mean Upper |
|---|---|---|
| ALL | 11% | 19% |
| ALL Non-Zero HIGH | 11% | 20% |
| Spread 1% - 13% | 13% | 19% |

**Conclusion:**

In evaluating the case study results and reconciling to a post-remediation value diminution as a percentage of unimpaired value, Integra has considered all material factors within the various segregations of the data.

Using simple averages or medians across a population where n=20 is not unreliable, but it does not recognize that the derivation of the spreads is based on a comparative analysis that contains imputed variability on property condition and effective age. There is also the inherent bias that remediated homes have been "restored", so comparing homes built in 2006 (unimpaired) with a home built in 2006 but renovated in 2011, is inherently prejudicial to under-estimating the damage. Some "damage" may be masked by the restoration when in fact, the property is still damaged relative to newer peers, but the market accepts a 5%-15% discount (due to perception/impairment) in exchange for new bathrooms, kitchen and completely remodeled drywall and fresh paint.

In almost all of the price ranges, new kitchens and bathrooms that are worth 10% - 15% of the home's value can skew the measurement of a potential damage in the same range. And still, 50% of the case studies have an upper and/or a lower-upper damage estimate of 20% of greater.

Alternatively, appraisals (or adjusted paired sales analyses in the instant case) are sensitive to the magnitude of net adjustments unless the comparables are extremely homogeneous. Price variations

On Residential Property Values in Florida



of 5%+/- would be considered within the normal variation of the market with or without detrimental conditions.[8]

Considering these factors, I consider the data well reconciled toward the lower end of the mean/median range, and conclude that over the time period in question, among the Florida residential market and within all price segmentations, a 10% value diminution reflects the most probable market-based adjustment against unimpaired value for post-remediation value diminution.

I would expect these value diminution impacts to decline over time after numerous resales of the same property where no adverse conditions persist. The 10% diminution may understate the impacts on larger properties where owners have more choice and are less tolerant of risks, but this is offset by the multiplier effect of larger price variation in higher-priced, more customized homes.

In the case study examples where the marketing time was extended, a 10% price discount is certainly sufficient to accelerate ordinary marketing times.

**Based on the case studies analyzed and presented, and considering the myriad factors that could affect the reliability of higher or lower estimates, I conclude there exists a post-remediation value diminution of 10%.** This assumes disclosure of the detrimental condition, and provision of a certificate of completion from a recognized and qualified contractor.

Where a contractor (or homebuilder) provides a multi-year warranty, the measurement of this diminution may result in a lower conclusion. However, this is merely shifting the impact (and risk) to a different party, it does not eliminate the risk, it only eliminates the measurement of the risk discount.

---

[8] 11 of the 20 case studies demonstrated a correlated "spread" of 5% or less; and 15 of the 20 had a correlated spread of 6% or less.



Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/03/19 Page 30 of 232
Case 1:11-cv-22408-MGC Document 201-1 Entered on FLSD Docket 09/18/2019 Page 26 of 54

Market Participant Interviews                                                                          23

## Market Participant Interviews

Included within the Addendum of this report is a cross-referenced list of all interviews conducted as part of the case study interview confirmation process. This included interviews with listing and selling brokers involved in control sale or comparable sales transactions, and having experience and/or knowledge as market participants.

Integra then reviewed the confirmation and interviews with market participants, who were not advised on which side of the case we were working, only that we were engaged to analyze the impact of Chinese Drywall.

The Integra team asked interviewees as a percentage of price, how the presence of Chinese Drywall affects the market value. The design of the question elicited respondents to discuss percentage impacts, if any and to determine whether the interviewee would make a distinction between remediated and unremediated homes.

This response array does not classify the number of respondents that declined to go on record for the survey, or those who responded "Don't know".

Among the 45 responses, 13 responses were classified as "unclear" whether the respondent meant pre-remediation or post remediation. Many of these responses tended to a 30% - 40% discount, and given the results of our case studies and other inquiries, this appears to represent an opinion pre-remediation. Since this was not explicit, we classified these as "unclear".

14 of the 45 responses (31%+-) indicated that post remediation, there would not be any value impact. Some of these statements were qualified to say certificates were needed, no value impact of contractor was known and reputable, etc. Some of these respondents also quoted the 40% +/- discount range, and clearly delineated this was for properties pre-remediation, corroborating Integra's classification of the unclear comments at 40%+/-.

18 of the 45 (40%) responses indicated clearly that there would be some market resistance even after remedial actions were completed. Only one respondent qualified the impact at 5%, others indicated it would extend marketing time, it would limit buyers, some buyers don't want anything to do with prior defects. Respondents chose their own words to describe "tainted, stigmatized, negative, etc."

Excluding the "qualified" comments, most of which indicated that buyers have a problem but not isolating for the remediated conditions we are studying herein, Integra was identified 32 relevant comments, 56% of which were negative indicating post-remediation impacts, and 44% of which indicate no post-remediation impacts.

The results of the survey are shown on the following page, groups by respondents who provided clear designation that remediated homes would see price impacts (noted as PR – "Post Remediation Negative); agents who responded post-remediation there would be no impact (PR + - Post Remediation Positive); and UC (comment was unclear whether the respondent was talking about post or pre-remediation).



Case 2:09-md-02047-EEF-MBN   Document 22380-55   Filed 12/02/19   Page 31 of 232

Market Participant Interviews                                                                 24

## Integra Realty Resources
### Controlled Pairing Interview Comments

| Market | Property Reference | Property Address | City | Interviewer | Interviewee | Phone # | Interview Date | Interviewee Comment | Category |
|---|---|---|---|---|---|---|---|---|---|
| Tampa | T12-C1 | 1413 E. Commanche Ave | Tampa | Paul Jones | Rae Catanese | 813-784-7744 | 2/11/2019 | "Always a negative." | PR - - |
| Palm Beach-Boca | PB-S | 17830 Monte Vista Dr | Boca Raton | Juan Gamio | Wendy Jensen | 561-706-7502 | 2/8/2019 | "Yes  some people would never buy a property with past history of Chinese drywall." | PR - - |
| Palm Beach-Boca | PB2-C1 | 17782 Cedena Dr | Boca Raton | Juan Gamio | Lorna Swartz | 561-735-9820 | 2/8/2019 | "Absolutely  but don't hear about those since 5 years ago." | PR - - |
| Palm Beach-Boca | PB2-C3 | 9604 Bridgebrook Dr | Boca Raton | Juan Gamio | Myrta Gonzalez | 561-706-6037 | 2/8/2019 | "Yes  many buyers don't want anything with those properties." | PR - - |
| Palm Beach-Boca | PB1-C1 | 9468 Grand Estates | Boca Raton | Juan Gamio | Jill Golden | 561-613-3507 | 2/8/2019 | "Completely." "A lot" "In today's market  even if 100% remediated  they are considered 'older homes.'" | PR - - |
| Palm Beach-Boca | PB1-C2 | 9391 Bridgebrook Dr | Boca Raton | Juan Gamio | Bruce Gaines | 561-289-7777 | 2/8/2019 | "Substantive  can't tell how much.  Even remediated many buyers would not touch it." | PR - - |
| Palm Beach-Boca | PB1-C3 | 9411 Grand Estates Way | Boca Raton | Juan Gamio | Alex Curcio | 561-702-3587 | 2/8/2019 | "Yes" | PR - - |
| Broward | B4-C2 | 11953 NW 66 Ct | Parkland | Paul Jones | Shellee Gold-Peterson | 954-614-0055 | 2/9/2019 | "Not seeing difference.  I have certain buyers who do not want tainted properties." | PR - - |
| Broward | B3-C4 | 12757 NW 68 Dr | Parkland | Joe Melloni | David Carlton | 954-903-3114 | 2/8/2019 | "Even afterward  yes  a remediated home's value was impacted." | PR - - |
| Broward | B1-C2 | 6725 NW 122 Ave | Parkland | Joe Melloni | Robert Auerbach | 954-547-3600 | 2/8/2019 | "Yes  of course." | PR - - |
| Broward | B2-S | 8289 Emerald Ave | Parkland | Joe Melloni | ea Plotkin | 954-802-8451 | 2/9/2019 | "Tainted  some clients simply wouldn't touch it." | PR - - |
| Broward | B2-C2 | 10055 Bay Leaf Ct | Parkland | Joe Melloni | Bette Abrams | 954-303-5185 | 2/9/2019 | "Yes  the stigma remained and I believe even after remediation it impacted the value you could get. Some people would just stay away." | PR - - |
| Broward | B2-C3 | 7086 Spyglass Ave | Parkland | Joe Melloni | Brent Mechler | 954-410-6056 | 2/9/2019 | "There was a stigma  deals fell through  people either stayed away or trusted in the repairs." | PR - - |
| Broward | B5-C2 | 6968 Spyglass Ave | Parkland | Joe Melloni | oy Fischer | 954-256-0646 | 2/8/2019 | "Buyers now - Toll Brothers 10 year guarantee  resale value was good. Remediation Experts - yes  would affect resale." | PR - - |
| Broward | B10-S2 | 6935 Longleaf Dr | Parkland | Paul Jones | 0 | 954-753-2000 | 2/8/2019 | "Little bit of stigma still - 5%." | PR - - |
| Broward | B10-C4 | 6013 NW 91 Ave | Parkland | Joe Melloni | Hap Pomerantz | 954-341-4444 | 2/9/2019 | "Limits the market." | PR - - |
| Broward | B2-C4 | 9860 Bay Leaf Ct | Parkland | Joe Melloni | Ed Poirier | Email | 2/12/2019 | "Chinese drywall had a huge impact and homes that were remediated sell for less than homes that never had the issue.  Some buyers refuse to see remediated homes and nobody wants one within  remediated price is significantly reduced." | PR - - |
| Tampa | T12-S | 1211 E. Giddens Ave | Tampa | Paul Jones | Rich Guagliardo | 813-244-7424 | 2/11/2019 | "It stigmatizes the houses; took a long time to find a buyer okay with the prior existence of Chinese drywall." | PR - - |
| Stuart Cay | SC1-C2 | 536 SW Akron Ave | Stuart Cay | Paul Jones | Maria Gaio | 561-414-1642 | 2/9/2019 | "After remediation  no - recent sales are at market; selling is great." | PR - - |
| Miami-Dade | MD-C4 | 919 NE 35 Ave | Homestead | Paul Jones | ose Tavares | 305-984-7468 | 2/7/2019 | Not seeing any difference at this time. | PR - - |
| Broward | B3-S | 6339 NW 12 Dr | Coral Springs | Joe Melloni | Beth Laggan | 954-444-5143 | 2/8/2019 | "After remediation  no.  Must be a reputable  Devistated the market  but in my opinion  once remediated  absolutely not - good as new." | PR - - |
| Broward | B5-C1 | 7848 NW 112 Way | Parkland | Joe Melloni | oseph Fiorello | 954-646-4611 | 2/9/2019 | | PR - - |
| Broward | B5-C3 | 7066 Spyglass Ave | Parkland | Joe Melloni | Darcy Silver | 954-234-5206 | 2/8/2019 | "No  overall not much." | PR - |
| Broward | B5-C4 | 9447 Satinleaf Pl | Parkland | Joe Melloni | David Cohen | 561-271-3103 | 2/8/2019 | "At remediation - market value." | PR - |
| Miami-Dade | MD3-S | 385 NE 36 Ter | Homestead | Paul Jones | ouis Melara | 305-281-9472 | 2/7/2019 | "If remediated  not a factor." | PR - |
| Miami-Dade | MD-C1 | 555 SE 30 Dr | Homestead | Paul Jones | David Cirinna | 786-390-6324 | 2/7/2019 | Yes if unremediated | PR - |
| Miami-Dade | MD3-C4 | 215 NE 36 Ter | Homestead | Paul Jones | Natalia Betancur | 786-512-1116 | 2/7/2019 | "Back then  if remediated  not impacted. Had to have the certificate." | PR - |
| Miami-Dade | MD4-C4 | 380 NE 31 Ter | Homestead | Paul Jones | Fernando Martinez | 305-216-3620 | 2/7/2019 | "Homes that were remediated were able to sell at market value." | PR - |
| Miami-Dade | MD1-C3 | 180 NE 26 Ave | Homestead | Paul Jones | Serafin Sanchez | 305-244-7373 | 2/7/2019 | "Unremediated homes  yes; remediated homes  no." Unremediated homes - 40% below market; no discount for remediated homes. | PR - |
| Miami-Dade | MD1-C4 | 730 SE 28 Lane | Homestead | Paul Jones | Kim Green | 305-219-2665 | 2/7/2019 | "If not remediated  40%  -- discount.  If remediated  no impact on current pricing.  Some buyers do walk away." | PR - |
| Tampa | T24-S | 12115 Rockford St | Spring Hill | Paul Jones | Sheree Landreth | 727-919-3713 | 2/11/2019 | "Being sold at market." | PR - |
| Tampa | T24-C2 | 5243 Roble Ave | Spring Hill | Paul Jones | oshua Miller | 352-201-2557 | 2/11/2019 | "Yes  significantly; have to gut-renovation.  Once remediated  not a factor." | PR - |
| Fort Myers | FM22-C2 | 3682 Parade Ter | North Port | Yule Georgieva | Sandra Winkler | 941-223-4436 | 2/9/2019 | "Yes  because remediation needs to be done." | Qualified |
| Fort Myers | FM22-C4 | 4566 Appleton Ter | North Port | Yule Georgieva | Vicki Painter | 941-4129 | 2/9/2019 | "Huge impact" | Qualified |
| Fort Myers | FM20-C2 | 5644 Cissus Ave | North Port | Yule Georgieva | Ed Moser | 941-320-2680 | 2/9/2019 | "Obviously yes we had to remediate all sources of Chinese Drywall." | Qualified |
| Fort Myers | FM20-C4 | 1898 Andy Rd | North Port | Yule Georgieva | Dick Miller | 941-375-5000 | 2/9/2019 | Recommend home inspection to our buyers "Chinese | Qualified |
| Fort Myers | FM21-S | 5428 Shagbark Ct | North Port | Yule Georgieva | Randy McLendon | 941-473-7752 | 2/8/2019 | "Absolutely  this drywall was a terrifying experience. | Qualified |
| Stuart Cay | SC1-S | 520 SW Akron Ave | Stuart Cay | Paul Jones | Debra Manuel | 561-252-1353 | 2/9/2019 | Property was originally listed for $559 000; reduced to $375 000 once Chinese Drywall was discovered. | Qualified |
| Palm Beach-Boca | PB2-C4 | 17846 Cadena Dr | Boca Raton | Juan Gamio | Claire Sheres | 561-414-4146 | 2/8/2019 | "Huge: $2 million worth; $500 000 sold." | Qualified |
| Broward | B5-S | 9677 Cinnamon Ct | Parkland | Joe Melloni | Hap Pomerantz | 954-341-4444 | 2/9/2019 | "Salability; wouldn't touch; limits market" | Qualified |
| Miami-Dade | MD4-C1 | 3767 NE 10 Ct | Homestead | Paul Jones | Michelle Hoo | 786-367-7705 | 2/7/2019 | "Controlled by HFA remediated- price was impacted  30-40% market discount if not properly documented." | Qualified |
| Miami-Dade Hialeah | MDH2-S | 8031 W. 36 Ave #5 | Hialeah | Juan Gamio | Gulenka Buergo | 305-776-0296 | 2/11/2019 | "Big  important  40% maybe" | Qualified |
| Miami-Dade Hialeah | MDH2-C1 | 10762 NW 87 Ct | Hialeah | Juan Gamio | Daniel Vera | 786-972-4883 | 2/11/2019 | "Of course  usually in distressed homes you see it.  If $250k worth; single family it will sell for $170k  32% discount.  Worst the mold; health hazard." | Qualified |
| Miami-Dade Hialeah | MDH2-C2 | 10762 NW 87 Ct | Hialeah | Juan Gamio | Yasmiina La Paz | 305-788-3520 | 2/11/2019 | "More than 40% I think - nobody wants them." | Qualified |
| Miami-Dade Hialeah | MDH2-C5 | 8547 NW 140 Ter | Hialeah | Juan Gamio | uis Dominguez | 305-962-9592 | 2/11/2019 | "I sold some in that area  significant reduction - 30% in my opinion." | Qualified |

On Residential Property Values in Florida



Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/03/19 Page 32 of 232
Case 1:11-cv-22408-MGC Document 261-1 Entered on FLSD Docket 09/13/2013 Page 28 of 54

Market Participant Interviews                                                                    25

Integra professionals conducted 78 interviews, with 45 responses regarding the potential effects of presence and disclosure.

The conclusions drawn from the interview process is that the majority of respondents offered an opinion on post and pre-remediation impacts, and very clearly all respondents who offered an opinion said pre-remediation impacts were evident in the market, and most (> 50%) of Realtors believe there is post-remediation impacts directly related to value\price, inclusive of extended market times (which can sometimes be cured by price reductions), or direct price reductions and loss of buyers.

## Final Conclusions:

Informed by the knowledge and literature regarding the appraisal problem which was readily known in the market, and continues to be readily known, after consideration and extensive market participant interviews and analysis of the 20 case studies, Integra concludes there is a post-remediation value diminution estimate of 10% of unimpaired value for properties with remediated Chinese Drywall where subsequent proper disclosure is made available to the market.



Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/03/19 Page 33 of 232
Case 1:11-cv-22408-MGC Document 201-1 Entered on FLSD Docket 09/18/2013 Page 29 of
54
Certification                                                                    26

## Certification

I certify that, to the best of my knowledge and belief:

1.   The statements of fact contained in this report are true and correct.

2.   The reported analyses, opinions, and conclusions are our personal, impartial, and unbiased professional analyses, opinions, and conclusions.

3.   I have no present or prospective interest in the properties or subject matter that is the subject of this report and no personal interest with respect to the parties involved.

4.   I have not performed any services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

5.   I have no bias with respect to any of the real estate, direct or indirect, that may be the subject of this report, or to the parties involved with this assignment.

6.   My engagement in this assignment was not contingent upon developing or reporting predetermined results.

7.   My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the plaintiffs, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this Report.

8.   My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice as well as applicable state appraisal regulations.

9.   The reported analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute.

10.  The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

11.  I did not make a personal inspection of the real estate referenced in this report.  This does not affect the reliability of the results given the methods and reconciled conclusions contained herein.

12.  Significant real property appraisal assistance was provided by Peter G. Kayworth, Yuliya Georgieva, Joseph Melloni and Paul L. Jones.  Additionally, real estate assistance was provided by various Valucentric employees and subcontractors, including: John Barcelo, Angela Barcelo, Fred Stites, Carlos Fong, Sarah D. Wilson and Rob Baird.

13.  I have experience in evaluating detrimental conditions and are in compliance with the Competency Rule of USPAP.

14.  As of the date of this report, I have completed the continuing education program for Designated Members of the Appraisal Institute.





Anthony M. Graziano, MAI, CRESenior Managing Director - Miami
State-Certified General RE Appraiser
FL Certificate # RZ#3510



Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/03/19 Page 35 of 232
Case 1:11-cv-22408-MGC Document 281-1 Entered on FLSD Docket 09/15/2015 Page 31 of 54

Addenda

# Addenda



## Integra Realty Resources
**Market / Pairing: Broward 1**
**Value Adjustment Conclusions**

| | | | | | | | | | | Market Area: | Broward 1 | Net | Adjusted |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Control Subject | Subdivision | Impaired Status | Price | Date of Sale | Size, SF | Bedrooms | Bathrooms | Lot Size, SF | Condition | | Year Built | Adjustments | Sales Price |
| 6985 Long Leaf Dr, Parkland | Parkland Golf | Remediated | $ 1,056,000 | 5/10/2012 | 6,381 | 7 | 5 | 1/2 - < 3/4 AC | Good | | 2007 | | |
| Unimpaired Comp 1 | | | | | | | | | | | | | |
| 7023 Lost Garden Ter Parkland | Parkland Golf | Unimpaired | $ 1,375,000 | 3/26/2012 | 6,336 | 5 | 5.1 | 1/4 - < 1/2 AC | Good | | 2008 | | |
| VALUE ADJUSTMENTS | | | | | | 25,000 | (10,000) | | | | | $15,000 | $ 1,390,000 |
| Unimpaired Comp 2 | | | | | | | | | | | | | |
| 6725 NW 122nd Ave Parkland | Heron Bay East | Unimpaired | $ 2,200,000 | 7/11/2012 | 6,559 | 5 | 5.2 | 1/4 - < 1/2 AC | Good | | 2008 | | |
| VALUE ADJUSTMENTS | | | | | (27,000) | 25,000 | (20,000) | | | | | -$22,000 | $ 2,178,000 |
| Unimpaired Comp 3 | | | | | | | | | | | | | |
| 6244 NW 120th Dr Coral Springs | c Falls/Heron B | Unimpaired | $ 1,600,000 | 8/14/2012 | 6,149 | 6 | 6.2 | 1/2 - < 3/4 AC | Good | | 2007 | | |
| VALUE ADJUSTMENTS | | | | | 20,000 | 10,000 | | | | | | $30,000 | $ 1,630,000 |
| Unimpaired Comp 4 | | | | | | | | | | | | | |
| 7620 Marblehead Ln Parkland | Cypress Head | Unimpaired | $ 1,225,000 | 5/15/2012 | 6,261 | 6 | 5.1 | 3/4 - < 1 AC | Good | | 1997 | | |
| VALUE ADJUSTMENTS | | | | | 10,000 | 10,000 | (10,000) | (25,000) | | | 150,000 | $135,000 | $ 1,360,000 |

| | Average | High | Low | | Concluded Value Range | | | Percent (%) Value Diminution | |
| | | | | | High | Low | | High | Low |
|---|---|---|---|---|---|---|---|---|---|
| Comparable Adjusted Sales Price | $1,639,500 | $2,178,000 | $1,360,000 | | $1,500,000 | $1,385,000 | | 29.6% | 23.8% |

**NOTES:**

## Integra Realty Resources

**Market / Pairing: Broward 2**
**Value Adjustment Conclusions**

| Control Subject | Subdivision | Impaired Status | Price | Date of Sale | Size, SF | Bedrooms | Bathrooms | Lot Size, SF | Market Area: Broward 2 Condition | Year Built | Net Adjustments | Adjusted Sales Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8289 Emerald Ave, Parkland | Parkland Golf | Remediated | $ 855,000 | 5/20/2013 | 4,744 | 6 | 4.5 | 1/2 - <3/4 AC | Good | 2006 | | |
| Unimpaired Comp 1 | | | | | | | | | | | | |
| 7848 NW 112th Way, Parkland | cenbriar/Heron | Unimpaired | $ 785,000 | 4/1/2013 | 4,710 | 6 | 5 | 1/2 - <3/4 AC | Average | 2006 | | |
| VALUE ADJUSTMENTS | | | | | | | | (10,000) | 150,000 | | $140,000 | $ 925,000 |
| Unimpaired Comp 2 | | | | | | | | | | | | |
| 10055 Bay Leaf Ct, Parkland | arkland Golf & C | Unimpaired | $ 1,125,000 | 8/20/2013 | 4,811 | 6 | 5 | 1/4 - <1/2 AC | Good | 2007 | | |
| VALUE ADJUSTMENTS | | | | | | | | (10,000) | 25,000 | | $15,000 | $ 1,140,000 |
| Unimpaired Comp 3 | | | | | | | | | | | | |
| 7086 Spyglass Ave, Parkland | arkland Golf & C | Unimpaired | $ 675,000 | 7/30/2013 | 4,800 | 5 | 3.5 | <1/4 AC | Good | 2006 | | |
| VALUE ADJUSTMENTS | | | | | | | 10,000 | 10,000 | 35,000 | | $55,000 | $ 730,000 |
| Unimpaired Comp 4 | | | | | | | | | | | | |
| 9860 Bay Leaf Ct, Parkland | arkland Golf & C | Unimpaired | $ 1,142,000 | 12/17/2013 | 4,388 | 6 | 5 | 1/4 - <1/2 AC | Good | 2007 | | |
| VALUE ADJUSTMENTS | | | (70,000) | | 50,000 | | | (10,000) | 25,000 | | -$5,000 | $ 1,137,000 |

| | Average | High | Low | Concluded Value Range High | Low | Percent (%) Value Diminution High | Low |
|---|---|---|---|---|---|---|---|
| Comparable Adjusted Sales Price | $983,000 | $1,140,000 | $730,000 | $1,140,000 | $925,000 | 25.0% | 7.6% |

**NOTES:**          Comp 3 not considered; Had prior partial Chinese drywall problem not remediated (see confirmation notes).

## Integra Realty Resources
**Market / Pairing: Broward 3**
**Value Adjustment Conclusions**

| Control Subject | Subdivision | Impaired Status | | Price | Date of Sale | Size, SF | Bedrooms | Bathrooms | Lot Size, SF | Market Area: Condition | Broward 3 Year Built | Net Adjustments | Adjusted Sales Price | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6339 NW 120th Dr, Coral Springs | Heron Bay 2 | Remediated | $ | 814,000 | 10/30/2015 | 3,850 | 5 | 4 | 1/4 - <1/2 AC | Good | 2002 | | | |
| | | | | | | | | | | | | | | |
| Unimpaired Comp 1 | | | | | | | | | | | | | | |
| 12735 NW 67th Dr, Parkland | Estates of Heron B | Unimpaired | $ | 795,000 | 9/9/2015 | 3,935 | 5 | 4.1 | <1/4 AC | Average | 2002 | | | |
| VALUE ADJUSTMENTS | | | | | | | | | | 50,000 | | $50,000 | $ | 845,000 |
| Unimpaired Comp 2 | | | | | | | | | | | | | | |
| 11325 NW 83 Way, Parkland | Heron Bay North | Unimpaired | $ | 835,885 | 2/17/2016 | 3,558 | 5 | 4 | AC Oversized / C | New | 2016 | | | |
| VALUE ADJUSTMENTS | | | | (33,000) | | 35,000 | | | | | | $2,000 | $ | 837,885 |
| Unimpaired Comp 3 | | | | | | | | | | | | | | |
| 7183 NW 123rd Ave, Parkland | Heron Bay | Unimpaired | $ | 775,000 | 3/14/2016 | 3,818 | 5 | 4.1 | 1/4 - <1/2 AC | Average | 2004 | | | |
| VALUE ADJUSTMENTS | | | | (31,000) | | | | | | 50,000 | | $19,000 | $ | 794,000 |
| Unimpaired Comp 4 | | | | | | | | | | | | | | |
| 12757 NW68 Dr, Parkland | Heron Bay | Unimpaired | $ | 720,000 | 10/5/2015 | 3,764 | 5 | 4 | 1/4 - <1/2 AC | Good | 2001 | | | |
| VALUE ADJUSTMENTS | | | | | | | | | | | | $0 | $ | 720,000 |

| | Average | High | Low | | Concluded Value Range High | Low | | Percent (%) Value Diminution High | Low |
|---|---|---|---|---|---|---|---|---|---|
| Comparable Adjusted Sales Price | $799,221 | $845,000 | $720,000 | | $840,000 | $800,000 | | 3.1% | -1 8% |

**NOTES:**            Prenominal price $200 / sf; Adjust ment for area @ $120 / sf (60%)

## Integra Realty Resources

**Market / Pairing: Broward 5**
**Value Adjustment Conclusions**

| Control Subject | Subdivision | Impaired Status | Price | Date of Sale | Size, SF | Bedrooms | Bathrooms | Lot Size, SF | Market Area: Condition | Broward 5 Year Built | Net Adjustments | Adjusted Sales Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9677 Cinnamon ct, Parkland | Parkland Golf & CC | Remediated | $ 585,000 | 8/26/2013 | 3,331 | 4 | 3 | <1/4 AC | Good | 2006 | | |
| Unimpaired Comp 1 | | | | | | | | | | | | |
| 7066 Spyglass Ave, Parkland | Parkland Golf & CC | Remediated | $ 630,000 | 12/3/2013 | 3,520 | 4 | 3 | <1/4 AC | Good | 2006 | | |
| VALUE ADJUSTMENTS | | | | | (20,000) | | | | | | -$20,000 | $ 610,000 |
| Unimpaired Comp 2 | | | | | | | | | | | | |
| 6986 Spyglass Ave, Parkland | Parkland Golf & CC | Unimpaired | $ 580,000 | 10/28/2013 | 3,689 | 5 | 3 | 1/4 - < 1/2 AC | Good | 2006 | | |
| VALUE ADJUSTMENTS | | | | | (25,800) | (10,000) | | | | | -$35,800 | $ 544,200 |
| Unimpaired Comp 3 | | | | | | | | | | | | |
| 10110 Camolla St, Parkland | Parkland Golf & CC | Unimpaired | $ 603,313 | 1/31/2013 | 2,952 | 4 | 3 | <1/4 AC | New | 2012 | | |
| VALUE ADJUSTMENTS | | | | | 40,000 | | | | | | $40,000 | $ 643,313 |
| Unimpaired Comp 4 | | | | | | | | | | | | |
| 9447 Satinleaf Pl, Parkland | Parkland Golf & CC | Unimpaired | $ 500,000 | 11/27/2013 | 3,015 | 4 | 3 | <1/4 AC | Average | 2005 | | |
| VALUE ADJUSTMENTS | | | | | 31,600 | | | | | | $131,600 | $ 631,600 |

| | Average | High | Low | Concluded Value Range | | Percent (%) Value Diminution | |
| | | | | High | Low | High | Low |
|---|---|---|---|---|---|---|---|
| Comparable Adjusted Sales Price | $607,278 | $643,313 | $544,200 | $640,000 | $550,000 | 8.6% | 0.0% |

**NOTES:**       See Broward 2 - Comp 3 partially remediated sold @ $675,000

## Integra Realty Resources
**Market / Pairing: Broward 10**
**Value Adjustment Conclusions**

| Control Subject | Subdivision | Impaired Status | Price | Date of Sale | Size, SF | Bedrooms | Bathrooms | Lot Size, SF | Market Area: Condition | Broward 10 Year Built | Net Adjustments | Adjusted Sales Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6935 Long Leaf Dr, Parkland | Parkland Golf & CC | Impaired | $ 390,000 | 4/1/2010 | 4,100 | 5 | 4.5 | 1/2 - < 3/4 AC | Good | 2007 | | |
| | | | | | | | | | | | | |
| Unimpaired Comp 1 | | | | | | | | | | | | |
| 7003 Lost Garden Te, Parkland | Parkland Golf & CC | Unimpaired | $ 849,000 | 3/4/2010 | 4,227 | 5 | 4.5 | < 1/4 AC | New* | 2008 | | |
| VALUE ADJUSTMENTS | $50,000 | | | | | | $5,000 | | | | $55,000 | $ 904,000 |
| Unimpaired Comp 2 | | | | | | | | | | | | |
| 7003 Lost Garden Te, Parkland | Parkland Golf & CC | Unimpaired | $ 849,000 | 3/4/2010 | 4,227 | 5 | 4.5 | < 1/4 AC | New* | 2008 | | |
| VALUE ADJUSTMENTS | -$50,000 | | | | | | $5,000 | | | | -$45,000 | $ 804,000 |
| Unimpaired Comp 3 | | | | | | | | | | | | |
| 10925 NW 71st Ct, Parkland | Parkland Isles | Unimpaired | $ 495,000 | 9/15/2010 | 4,056 | 5 | 4 | < 1/4 AC | New* | 2004 | | |
| VALUE ADJUSTMENTS | | | | | | | (10,000) | | | | -$10,000 | $ 485,000 |
| Unimpaired Comp 4 | | | | | | | | | | | | |
| 6013 NW 91st Ave, Parkland | Grand Cypress | Unimpaired | $ 800,000 | 7/8/2010 | 3,926 | 6 | 4.5 | 1/4 - < 1/2 AC | Average | 2002 | | |
| VALUE ADJUSTMENTS | $50,000 | | | | | | $10,000 | | | | $60,000 | $ 860,000 |
| Unimpaired Comp 5 | | | | | | | | | | | | |
| 6747 NW 110th Wy, Parkland | Parkland Isles | Unimpaired | $ 640,000 | 8/13/2010 | 4,100 | 5 | 4 | 1/4 - < 1/2 AC | Average | 2000 | | |
| VALUE ADJUSTMENTS | $50,000 | | | | | | $10,000 | | | | $60,000 | $ 700,000 |

| | Average | High | Low | Concluded Value Range | | Percent (%) Value Diminution | |
|---|---|---|---|---|---|---|---|
| | | | | **High** | **Low** | **High** | **Low** |
| Comparable Adjusted Sales Price | $731,000 | $904,000 | $485,000 | $775,000 | $755,000 | 49.7% | 48 3% |

**NOTES:**     Subject sold on 9/13/2010 for $755,000 remediated.

## Integra Realty Resources

**Market / Pairing: Miami 1**
**Value Adjustment Conclusions**

| | | | | | | | | | Market Area: | Miami 1 | Net | Adjusted |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Control Subject | Subdivision | Impaired Status | Price | Date of Sale | Size, SF | Bedrooms | Bathrooms | Lot Size, SF | Condition | Year Built | Adjustments | Sales Price |
| 363 NE 30 Av, Homestead | Carmens Place | Remediated | $ 276,500 | 2/6/2017 | 2,733 | 3 | 3 | 6,000 | Good | 2006 | | |
| Unimpaired Comp 1 | | | | | | | | | | | | |
| 109 NE 26 Ave. Homestead, FL 33033 | CAPRI AT OASIS | Unimpaired | $ 282,000 | 5/9/2017 | 2,696 | 4 | 3 | 6,527 | Good | 2014 | | |
| VALUE ADJUSTMENTS | | | | | | | | | | | $0 | $ 282,000 |
| Unimpaired Comp 2 | | | | | | | | | | | | |
| 2631 NE 2nd. Dr. Homestead, FL 33033 | CAPRI AT OASIS | Unimpaired | $ 265,000 | 9/23/2016 | 2,093 | 4 | 3 | 5,330 | Good | 2013 | | |
| VALUE ADJUSTMENTS | | | | | 18,000 | | | | | | $18,000 | $ 283,000 |
| Unimpaired Comp 3 | | | | | | | | | | | | |
| 180 NE 26th Ave. Homestead, FL 33033 | CAPRI AT OASIS | Unimpaired | $ 334,900 | 4/21/2017 | 2,550 | 5 | 3 | 5,933 | Good | 2013 | | |
| VALUE ADJUSTMENTS | | | | | 5,000 | (25,000) | | | | | -$20,000 | $ 314,900 |
| Unimpaired Comp 4 | | | | | | | | | | | | |
| 730 SE 28th Ln. Homestead, FL 33033 | KEYS-GATE NO 3 | Unimpaired | $ 240,000 | 10/14/2016 | 2,126 | 2 | 2 | 7,050 | Good | 2001 | | |
| VALUE ADJUSTMENTS | | | | | 17,000 | 15,000 | 10,000 | | | | $42,000 | $ 282,000 |

| | Average | High | Low | Concluded Value Range High | Low | Percent (%) Value Diminution High | Low |
|---|---|---|---|---|---|---|---|
| Comparable Adjusted Sales Price | $290,475 | $314,900 | $282,000 | $315,000 | $282,000 | 12.2% | 2.0% |

**NOTES:**     SF Adjustment $28/SF

**Integra Realty Resources**
Market / Pairing: Miami Dade 2
Value Adjustment Conclusions

| Control Subject | Subdivision | Impaired Status | Price | Date of Sale | Size, SF | Bedrooms | Bathrooms | Lot Size, SF | Market Area: Condition | Miami Dade 2 Year Built | Net Adjustments | Adjusted Sales Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 372 NE 36 TE, Homestead | Bali at Oasis | Remediated | $ 210,000 | 7/6/2015 | 2,549 | 4 | 3 | - | Average | 2006 | | |
| Unimpaired Comp 1 | | | | | | | | | | | | |
| 375 NE 35th Ave. Homestead, FL 33033 | BALI AT OASIS | Unimpaired | $ 228,000 | 7/29/2015 | 2,258 | 5 | 3 | 3,600 | Average | 2006 | | |
| VALUE ADJUSTMENTS | | | | | 20,000 | (10,000) | | | | | $10,000 | $ 238,000 |
| Unimpaired Comp 2 | | | | | | | | | | | | |
| 380 NE 31st. Ter. Homestead, FL. 33033 | BIMINI AT THE OASIS | Unimpaired | $ 191,300 | 4/9/2015 | 1,906 | 4 | 2 | 4,212 | Average | 2007 | | |
| VALUE ADJUSTMENTS | | | | | 35,000 | | 10,000 | | | | $45,000 | $ 236,300 |
| Unimpaired Comp 3 | | | | | | | | | | | | |
| 3488 NE 1st St. Homestead, FL 33033 | ANTIGUA AT OASIS | Unimpaired | $ 210,000 | 4/23/2015 | 2,250 | 3 | 2 | 6,657 | Average | 2008 | | |
| VALUE ADJUSTMENTS | | | | | | 10,000 | 10,000 | (5,000) | | | $15,000 | $ 225,000 |
| Unimpaired Comp 4 | | | | | | | | | | | | |
| 919 NE 35 Ave. Homestead, FL 33033 | ESTATES AT MENDICINO | Unimpaired | $ 230,000 | 7/9/2015 | 2,237 | 4 | 2 | 6,000 | Average | 2004 | | |
| VALUE ADJUSTMENTS | | | | | 15,000 | | 10,000 | (5,000) | | | $20,000 | $ 250,000 |

| | Average | High | Low | Concluded Value Range High | Low | Percent (%) Value Diminution High | Low |
|---|---|---|---|---|---|---|---|
| Comparable Adjusted Sales Price | $237,325 | $250,000 | $225,000 | $240,000 | $240,000 | 12.5% | 12.5% |

**NOTES:**

## Integra Realty Resources
**Market / Pairing: Hialeah 2**
**Value Adjustment Conclusions**

| Control Subject | Subdivision | Impaired Status | Price | Date of Sale | Size, SF | Bedrooms | Bathrooms | Lot Size, SF | Condition (Market Area:) | Year Built (Hialeah 2) | Net Adjustments | Adjusted Sales Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8031 W 36th Ave Unit 5 | Splendido | Remediated | $ 233,000 | 11/22/2017 | 1,356 | 3 | 3 | 1,356 | New | 2006 | | |
| Unimpaired Comp 1 | | | | | | | | | | | | |
| 10762 NW 87th Ct Unit 10762 | Gardengate II | Unimpaired | $ 237,000 | 3/29/2017 | 1,384 | 3 | 2 | 1,384 | New | 2002 | | |
| VALUE ADJUSTMENTS | | | | | | | | 10,000 | | | $10,000 | $ 247,000 |
| Unimpaired Comp 2 | | | | | | | | | | | | |
| 10762 NW 87th Ct Unit 10762 | Gardengate II | Unimpaired | $ 240,000 | 11/29/2017 | 1,384 | 3 | 2 | 1,384 | New | 2002 | | |
| VALUE ADJUSTMENTS | | | | | | | | 10,000 | | | $10,000 | $ 250,000 |
| Unimpaired Comp 3 | | | | | | | | | | | | |
| 8545 NW 140th St. Unit 1101 | Villa Vizcaya | Unimpaired | $ 247,000 | 8/3/2017 | 1,450 | 3 | 2.5 | 1,450 | Average | 2002 | | |
| VALUE ADJUSTMENTS | | | | | (10,000) | | 5,000 | | | | -$5,000 | $ 242,000 |
| Unimpaired Comp 4 | | | | | | | | | | | | |
| 8444 NW 141 St. Ter. Unit 5904 | Villa Vizcaya | Unimpaired | $ 225,000 | 8/25/2016 | 1,351 | 3 | 3 | 1,351 | Average | 2002 | | |
| VALUE ADJUSTMENTS | | | | | | | | 18,000 | | | $18,000 | $ 243,000 |
| Unimpaired Comp 5 | | | | | | | | | | | | |
| 8547 NW 140th Ter. Unit 703 | Villa Vizcaya | Unimpaired | $ 245,000 | 2/3/2017 | 1,351 | 3 | 3 | 1,351 | Average | 2002 | | |
| VALUE ADJUSTMENTS | | | | | | | | | | | $0 | $ 245,000 |

| | Average | High | Low | | Concluded Value Range High | Concluded Value Range Low | | Percent (%) Value Diminution High | Percent (%) Value Diminution Low |
|---|---|---|---|---|---|---|---|---|---|
| Comparable Adjusted Sales Price | $245,500 | $250,000 | $242,000 | | $250,000 | $245,000 | | 6.8% | 4 9% |

**NOTES:**   $165 price/60/=$100/SF for size

## Integra Realty Resources

**Market / Pairing: Palm Beach Boca 1**
**Value Adjustment Conclusions**

| Control Subject | Subdivision | Impaired Status | Price | Date of Sale | Size, SF | Bedrooms | Bathrooms | Lot Size, SF | Market Area: Condition | PB Boca 1 Year Built | Net Adjustments | Adjusted Sales Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9407 Bridgebrook Dr. Boca Raton, FL 33496 | The Oaks | Remediated | $ 1,200,000 | 7/9/2013 | 5,209 | 5 | 5 | 10,125 | Average | 2006 | | |
| Unimpaired Comp 1 | | | | | | | | | | | | |
| 9468 Grand Estates Way, Boca Raton, FL 33496 | The Oaks/Grand Estates | 0 | $ 1,642,000 | 4/9/2013 | 5,940 | 5 | 5.5 | 7,585 | 0 | 2004 | -$115,000 | $ 1,527,000 |
| VALUE ADJUSTMENTS | | | | | (115,000) | | (10,000) | 10,000 | | | | |
| Unimpaired Comp 2 | | | | | | | | | | | | |
| 9391 Bridgebrook Dr. Boca Raton, FL 33496 | The Oaks | 0 | $ 1,720,000 | 5/30/2013 | 6,317 | 6 | 6.5 | 7,692 | 0 | 2006 | -$175,000 | $ 1,545,000 |
| VALUE ADJUSTMENTS | | | | | (140,000) | (20,000) | (25,000) | 10,000 | | | | |
| Unimpaired Comp 3 | | | | | | | | | | | | |
| 9411 Grand Estates Way, Boca Raton, FL 33496 | The Oaks/Grand Estates | 0 | $ 1,598,000 | 12/5/2013 | 6,531 | 6 | 7.5 | 8,020 | 0 | 2005 | -$185,000 | $ 1,413,000 |
| VALUE ADJUSTMENTS | | | | | (140,000) | (20,000) | (35,000) | 10,000 | | | | |
| Unimpaired Comp 4 | | | | | | | | | | | | |
| 9327 Grand Estates Way Boca Raton, FL 33496 | The Oaks | 0 | $ 1,140,000 | 8/2/2013 | 4,519 | 4 | 4.5 | 5,861 | 0 | 2005 | $165,000 | $ 1,305,000 |
| VALUE ADJUSTMENTS | | | | | 100,000 | 20,000 | 10,000 | 35,000 | | | | |

| | Average | High | Low | | Concluded Value Range High | Low | | Percent (%) Value Diminution High | Low |
|---|---|---|---|---|---|---|---|---|---|
| Comparable Adjusted Sales Price | $1,447,500 | $1,545,000 | $1,305,000 | | $1,500,000 | $1,300,000 | | 20.0% | 7.7% |

**NOTES:**

$275 / sf overall on adjustment

Sizze adjustment at $165 psf (60% of typical)

## Integra Realty Resources

**Market / Pairing: Palm Beach Boca 2**

Value Adjustment Conclusions

| Control Subject | Subdivision | Impaired Status | Price | Date of Sale | Size, SF | Bedrooms | Bathrooms | Lot Size, SF | Market Area: Condition | PB Boca 2 Year Built | Net Adjustments | Adjusted Sales Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 17830 Monte Vista Dr. Boca Raton, FL 33496 | Oaks At Boca Raton | Remediated | $ 940,000 | 6/29/2012 | 4,674 | 5 | 5 | 6,132 | Average | 2006 | | |
| Unimpaired Comp 1 | | | | | | | | | | | | |
| 17782 Cadena Dr. Boca Raton, FL 33496 | Oaks At Boca Raton | 0 | $ 1,250,000 | 5/3/2012 | 4,975 | 5 | 5 | 6,151 | 0 | 2010 | | |
| VALUE ADJUSTMENTS | | | | | (40,000) | | | | | | -$40,000 | $ 1,210,000 |
| Unimpaired Comp 2 | | | | | | | | | | | | |
| 9328 Grand Estates Way, Boca Raton, FL 33496 | Oaks At Boca Raton | 0 | $ 1,450,000 | 6/20/2012 | 4,523 | 4 | 4.5 | 5,865 | 0 | 2005 | | |
| VALUE ADJUSTMENTS | | | | | | 20,000 | 5,000 | | | | $25,000 | $ 1,475,000 |
| Unimpaired Comp 3 | | | | | | | | | | | | |
| 9604 Bridgebrook Dr. Boca Raton, FL 33496 | Oaks At Boca Raton | 0 | $ 1,050,000 | 6/26/2012 | 4,358 | 4 | 4.5 | 5,324 | 0 | 2006 | | |
| VALUE ADJUSTMENTS | | | | | 15,000 | 20,000 | 5,000 | | | | $40,000 | $ 1,090,000 |
| Unimpaired Comp 4 | | | | | | | | | | | | |
| 17846 Cadena Dr. Boca Raton, FL 33496 | Oaks At Boca Raton | 0 | $ 1,425,000 | 12/21/2012 | 5,653 | 6 | 6 | 7,204 | 0 | 0 | | |
| VALUE ADJUSTMENTS | | | | | (100,000) | (10,000) | (10,000) | (20,000) | | | -$140,000 | $ 1,285,000 |

| | Average | High | Low | | Concluded Value Range High | Low | | Percent (%) Value Diminution High | Low |
|---|---|---|---|---|---|---|---|---|---|
| Comparable Adjusted Sales Price | $1,265,000 | $1,475,000 | $1,090,000 | | $1,300,000 | $1,200,000 | | 27.7% | 21.7% |

**NOTES:**

**Integra Realty Resources**
Market / Pairing: Port St. Lucie 6
Value Adjustment Conclusions

| Control Subject | Subdivision | Impaired Status | Price | Date of Sale | Size, SF | Bedrooms | Bathrooms | Lot Size, SF | Market Area: | Port St. Lucie 6 | Net Adjustments | Adjusted Sales Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | Condition | Age at time of sale | | |
| 503 NW Ashton Way, Port St. Lucie, FL 34983 | St James Golf Club Pod D | Remediated | $ 228,500 | 2/20/2013 | 2,564 | 4 | 3 | 1/4 - < 1/2 AC | Average | 2006 | | |
| Unimpaired Comp 1 | | | | | | | | | | | | |
| 451 Dover Court, PSL | St James Golf Club Pod D | Unimpaired | $ 215,000 | 3/8/2013 | 2,672 | 4 | 3 | < 1/4 AC | Average | 2006 | | |
| VALUE ADJUSTMENTS | | | | | | | | | | | $0 | $ 215,000 |
| Unimpaired Comp 2 | | | | | | | | | | | | |
| 507 NW Dover Ct, PSL | St James Golf Club Pod D | Unimpaired | $ 240,000 | 2/28/2013 | 2,672 | 4 | 3 | < 1/4 AC | Average | 2008 | | |
| VALUE ADJUSTMENTS | | | | | | | | | | (20,000) | -$20,000 | $ 220,000 |
| Unimpaired Comp 3 | | | | | | | | | | | | |
| 480 NW Dover Ct, PSL | St James Golf Club Pod D | Unimpaired | $ 220,000 | 4/30/2013 | 2,672 | 4 | 3 | < 1/4 AC | Average | 2005 | | |
| VALUE ADJUSTMENTS | | | | | | | | | | | $0 | $ 220,000 |
| Unimpaired Comp 4 | | | | | | | | | | | | |
| 408 Sheffield Cir, PSL | St James Golf Club Pod D | Unimpaired | $ 231,500 | 6/17/2013 | 2,519 | 4 | 2 | < 1/4 AC | Average | 2005 | | |
| VALUE ADJUSTMENTS | | | | | | | | 7,500 | | | $7,500 | $ 239,000 |

| | Average | High | Low | Concluded Value Range High | Low | Percent (%) Value Diminution High | Low |
|---|---|---|---|---|---|---|---|
| Comparable Adjusted Sales Price | $223,500 | $239,000 | $215,000 | $239,000 | $228,500 | 4.4% | 0.0% |

**NOTES:**

# Integra Realty Resources
**Market / Pairing: Stuart 1**
**Value Adjustment Conclusions**

| Control Subject | Subdivision | Impaired Status | Price | Date of Sale | Size, SF | Bedrooms | Bathrooms | Lot Size, SF | Market Area: Stuart 1 Condition | Age at time of sale | Net Adjustments | Adjusted Sales Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 520 SW Akron Ave, Stewart | Stuart Cay | Remediated | $332,500 | 3/9/2016 | 2,750 | 3 | 3.5 | < 1/4 AC | Average | 2005 | | |
| Unimpaired Comp 1 | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| 508 SW California Ave, Stuart | Stuart Cay | Unimpaired | 420000 | 42479 | 2750 | 4 | 3 | 0 | Average | 2005 | | |
| VALUE ADJUSTMENTS | | | | | | (10,000) | | | 40,000 | | $30,000 | $ 450,000 |
| Unimpaired Comp 2 | | | | | | | | | | | | |
| 536 SW Akron Ave | Stuart Cay | Unimpaired | $510,000 | 5/5/2016 | 2,421 | 3 | 3.5 | < 1/4 AC | Good | 2006 | | |
| VALUE ADJUSTMENTS | | | | | | | | | (50,000) | | -$50,000 | $ 460,000 |
| Unimpaired Comp 3 | | | | | | | | | | | | |
| 524 SW Akron Ave | Stuart Cay | Unimpaired | $449,900 | 4/9/2015 | 2,421 | 3 | 3.5 | <1/4 AC | Average | 2006 | | |
| VALUE ADJUSTMENTS | | | | | | | | | | | $0 | $ 449,900 |
| Unimpaired Comp 4 | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| VALUE ADJUSTMENTS | | | | | | | | | | | $0 | $ - |

| | Average | High | Low | | Concluded Value Range High | Low | Percent (%) Value Diminution High | Low |
|---|---|---|---|---|---|---|---|---|
| Comparable Adjusted Sales Price | $453,300 | $460,000 | $449,900 | | $460,000 | $450,000 | 27.7% | 26.1% |

**NOTES:**  Subject sold with REO conditions.

## Integra Realty Resources

**Market / Pairing: Tampa 12**
**Value Adjustment Conclusions**

| Control Subject | Subdivision | Impaired Status | | Price | Date of Sale | Size, SF | Bedrooms | Bathrooms | Lot Size, SF | Condition | Year Built | Net Adjustments | Adjusted Sales Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | Market Area: | Tampa 12 | | |
| 1211 E GIDDENS AVE, TAMPA, FL 33603 | MCDAVIDS EAST SEMINOLE REV | Remediated | $ | 179,000 | 9/19/2016 | 1,562 | 3 | 2 | 1,947 | Good | 2007 | | |
| Unimpaired Comp 1 | | | | | | | | | | | | | |
| 1413 E COMANCHE AVE, TAMPA, FL 33604 | HAMPTON TERRACE | Unimpaired | $ | 291,000 | 5/16/2016 | 1,493 | 3 | 2 | 1,786 | New | 2016 | | |
| VALUE ADJUSTMENTS | | | | | | 6,900 | | | | (75,000) | | -$68,100 | $ 222,900 |
| Unimpaired Comp 2 | | | | | | | | | | | | | |
| 931 E MCBERRY ST, TAMPA, FL 33603 | MC CLUNG BERRY SUB 2 | Unimpaired | $ | 320,000 | 9/9/2016 | 1,944 | 3 | 2 | 2,118 | Good | 2005 | | |
| VALUE ADJUSTMENTS | | | | | | (38,200) | | | | (97,200) | | -$135,400 | $ 184,600 |
| Unimpaired Comp 3 | | | | | | | | | | | | | |
| 1608 E POWHATAN AVE, TAMPA, FL 33610 | TRIPOLI PLACE | Unimpaired | $ | 268,000 | 8/16/2016 | 1,615 | 3 | 2 | 1,989 | Good | 2004 | | |
| VALUE ADJUSTMENTS | | | | | | | | | | (80,750) | | -$80,750 | $ 187,250 |
| Unimpaired Comp 4 | | | | | | | | | | | | | |
| 1208 E CLIFTON ST, TAMPA, FL 33604 | ALTA VISTA | Unimpaired | $ | 353,500 | 7/8/2016 | 1,757 | 3 | 2 | 2,550 | Good | 2003 | | |
| VALUE ADJUSTMENTS | | | | | | (19,500) | | | | (87,850) | | -$107,350 | $ 246,150 |

| | Average | High | Low | Concluded Value Range | | Percent (%) Value Diminution | |
| | | | | High | Low | High | Low |
|---|---|---|---|---|---|---|---|
| Comparable Adjusted Sales Price | $210,225 | $246,150 | $184,600 | $225,000 | $185,000 | 20.4% | 3.2% |

**NOTES:**  All comps in significantly better finishes. Est. +$50/SF for condition

**Integra Realty Resources**
**Market / Pairing: Tampa 25**
Value Adjustment Conclusions

| Control Subject | Subdivision | Impaired Status | Price | Date of Sale | Size, SF | Bedrooms | Bathrooms | Lot Size, SF | Market Area: Condition | Tampa 25 Year Built | Net Adjustments | Adjusted Sales Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 416 VINE CLIFF ST, RUSKIN, FL 33570 | BLACKSTONE AT BAY PARK | Remediated | $ 104,000 | 3/8/2011 | 1,930 | 4 | 2 | 2,688 | Good | 2007 | | |
| Unimpaired Comp 1 | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| 1821 ATLANTIC DR, RUSKIN, FL 33570 | WELLINGTON NORTH AT BAY PARK | Unimpaired | $ 149,990 | 11/30/2011 | 1,752 | 4 | 2 | 1,725 | New | 2011 | | |
| VALUE ADJUSTMENTS | | | | | -15000 | 8,500 | | | 5,000 | | -$1,500 | $ 148,490 |
| Unimpaired Comp 2 | | | | | | | | | | | | |
| 1865 ATLANTIC DR, RUSKIN, FL 33570 | WELLINGTON NORTH AT BAY PARK | Unimpaired | $ 157,990 | 10/26/2011 | 2,044 | 4 | 2.1 | 2,044 | New | 2011 | | |
| VALUE ADJUSTMENTS | | | | | -15000 | (5,700) | | (5,000) | | | -$25,700 | $ 132,290 |
| Unimpaired Comp 3 | | | | | | | | | | | | |
| 529 LAGUNA MILL DR, RUSKIN, FL 33570 | WELLINGTON NORTH | Unimpaired | $ 140,440 | 11/18/2011 | 1,573 | 4 | 2 | 1,573 | New | 2011 | | |
| VALUE ADJUSTMENTS | | | | | -15000 | 18,000 | | | 8,000 | | $11,000 | $ 151,440 |
| Unimpaired Comp 4 | | | | | | | | | | | | |
| 523 LAGUNA MILL DR, RUSKIN, FL 33570 | WELLINGTON NORTH | Unimpaired | $ 149,990 | 8/31/2011 | 1,752 | 4 | 2 | 1,752 | New | 2011 | | |
| VALUE ADJUSTMENTS | | | | | -15000 | 8,900 | | | 5,000 | | -$1,100 | $ 148,890 |

| | Average | High | Low | Concluded Value Range High | Low | Percent (%) Value Diminution High | Low |
|---|---|---|---|---|---|---|---|
| Comparable Adjusted Sales Price | $145,278 | $151,440 | $132,290 | $149,000 | $132,000 | 30.2% | 21.2% |

**NOTES:** Control Sale Remediation done by KB Homes
$51/ of adj per day

**Integra Realty Resources**
Market / Pairing: Tampa 26
Value Adjustment Conclusions

| Control Subject | Subdivision | Impaired Status | Price | Date of Sale | Size, SF | Bedrooms | Bathrooms | Lot Size, SF | Market Area: Tampa 26 Condition | Year Built | Net Adjustments | Adjusted Sales Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11618 HAMMOCKS GLADE DR, RIVERVIEW, FL 33569 | RIVERCREST PH 2 PARCEL O AND R | Remediated | $ 115,000 | 2/11/2013 | 1,446 | 3 | 2 | 2,037 Lakeview | Good | 2006 | | |
| Unimpaired Comp 1 | | | | | | | | | | | | |
| 11014 LAUREL BROOK CT, RIVERVIEW, FL 33569 | RIVERCREST PH 1A | Unimpaired | $ 125,000 | 7/26/2013 | 1,520 | 3 | 2 | 2,182 | Good | 2002 | | |
| VALUE ADJUSTMENTS | | | | | -6300.00 | (3,700) | | | | | -$10,000 | $ 115,000 |
| Unimpaired Comp 2 | | | | | | | | | | | | |
| 11517 HAMMOCKS GLADE DR, RIVERVIEW, FL 33569 | RIVERCREST | Unimpaired | $ 138,000 | 4/9/2013 | 1,550 | 3 | 2 | 2,130 | Good | 2006 | | |
| VALUE ADJUSTMENTS | | | | | -6250.00 | (3,700) | | | | | -$9,950 | $ 128,050 |
| Unimpaired Comp 3 | | | | | | | | | | | | |
| 11120 RUNNING PINE DR, RIVERVIEW, FL 33569 | MOSS LANDING PH 1 | Unimpaired | $ 195,000 | 7/30/2013 | 1,695 | 3 | 2 | 2,206 | Very Good | 2006 | | |
| VALUE ADJUSTMENTS | | | | | -10000.00 | (12,450) | | | | (40,000) | -$62,450 | $ 132,550 |

| | Average | High | Low | Concluded Value Range High | Low | Percent (%) Value Diminution High | Low |
|---|---|---|---|---|---|---|---|
| Comparable Adjusted Sales Price | $125,200 | $132,550 | $115,000 | $132,550 | $115,000 | 13.2% | 0.0% |

**NOTES:**   0% - 13% without adjustment for subject lake view

**Integra Realty Resources**
Market / Pairing: Tampa 27
Value Adjustment Conclusions

| Control Subject | Subdivision | Impaired Status | Price | Date of Sale | Size, SF | Bedrooms | Bathrooms | Lot Size, SF | Market Area: Condition | Tampa 27 Year Built | Net Adjustments | Adjusted Sales Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11511 HAMMOCKS GLADE DR, RIVERVIEW, FL 33569 | RIVERCREST PH 2 PARCEL O AND R | Remediated | $ 120,000 | 3/16/2012 | 1,766 | 4 | 3 | 2,639 | Good | 2006 | | |
| Unimpaired Comp 1 | | | | | | | | | | | | |
| 10926 HOLLY CONE DR, RIVERVIEW, FL 33569 | RIVERCREST | Unimpaired | $ 120,000 | 1/19/2012 | 1,838 | 4 | 2 | 2,419 | Good | 2004 | | |
| VALUE ADJUSTMENTS | | | | | | | | 10,000 | | | $10,000 | $ 130,000 |
| Unimpaired Comp 2 | | | | | | | | | | | | |
| 11409 COCONUT ISLAND DR, RIVERVIEW, FL 33569 | RIVERCREST | Unimpaired | $ 121,000 | 6/15/2011 | 1,748 | 4 | 2 | 2,329 | Good | 2005 | | |
| VALUE ADJUSTMENTS | | | | | | | | 10,000 | | | $10,000 | $ 131,000 |
| Unimpaired Comp 3 | | | | | | | | | | | | |
| 11308 CRESTLAKE VILLAGE DR, RIVERVIEW, FL 33569 | LAKESIDE TRACT | Unimpaired | $ 126,000 | 4/27/2012 | 2,730 | 4 | 2.1 | 2,884 | Good | 2004 | | |
| VALUE ADJUSTMENTS | | | | | | | | (38,560) | | | ($33,560) | $ 92,440 |

| | Average | High | Low | Concluded Value Range High | Low | Percent (%) Value Diminution High | Low |
|---|---|---|---|---|---|---|---|
| Comparable Adjusted Sales Price | $117,813 | $131,000 | $92,440 | $130,000 | $93,000 | 7.7% | -29.0% |

**NOTES:**
$40/SF for Size
Certificate provided to seller
No impact indicated

## Integra Realty Resources

**Market / Pairing: Fort Myers 20**
**Value Adjustment Conclusions**

| Control Subject | Subdivision | Impaired Status | Price | Date of Sale | Size, SF | Bedrooms | Bathrooms | Lot Size, SF | Market Area: Condition | Fort Myers 20 Year Built | Net Adjustments | Adjusted Sales Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1358 RICHMAR ST, NORTH PORT, FL 34288 | PORT CHARLOTTE 49 | Remediate | $ 110,000 | 4/22/2010 | 1,851 | 3 | 2 | 2,508 | Good | 2006 | | |
| Unimpaired Comp 1 | | | | | | | | | | | | |
| 1260 BOSWELL ST, NORTH PORT, FL 34288 | PORT CHARLOTTE | 0 | $ 139,900 | 3/26/2010 | 1,682 | 3 | 2 | 2,457 | Good | 2005 | | |
| VALUE ADJUSTMENTS | | | | | 10,000 | | | | (10,000) | | $0 | $ 139,900 |
| Unimpaired Comp 2 | | | | | | | | | | | | |
| 5644 CISSUS AVE, NORTH PORT, FL 34288 | PORT CHARLOTTE 24 | 0 | $ 149,900 | 8/5/2010 | 1,849 | 3 | 2 | 2,594 | Good | 2007 | | |
| VALUE ADJUSTMENTS | | | | | | | | | (10,000) | | -$10,000 | $ 139,900 |
| Unimpaired Comp 3 | | | | | | | | | | | | |
| 1508 JAGUST RD S, NORTH PORT, FL 34288 | PORT CHARLOTTE | might be remediated | $ 124,000 | 8/23/2010 | 1,788 | 3 | 2 | 2,433 | Good | 2005 | | |
| VALUE ADJUSTMENTS | | | | | | | | | | | $0 | $ 124,000 |
| Unimpaired Comp 4 | | | | | | | | | | | | |
| 1959 ANDY RD, NORTH PORT, FL 34288 | SAN MATEO | 0 | $ 150,000 | 1/29/2010 | 1,830 | 3 | 2 | 2,615 | Good | 2006 | | |
| VALUE ADJUSTMENTS | | | -10000 | | | | | | | | -$10,000 | $ 140,000 |

| | Average | High | Low | | Concluded Value Range High | Low | | Percent (%) Value Diminution High | Low |
|---|---|---|---|---|---|---|---|---|---|
| Comparable Adjusted Sales Price | $135,950 | $140,000 | $124,000 | | $140,000 | $110,000 | | 21.4% | 0.0% |

**NOTES:**

## Integra Realty Resources

**Market / Pairing: Fort Myers 21**
**Value Adjustment Conclusions**

| Control Subject | Subdivision | Impaired Status | Price | Date of Sale | Size, SF | Bedrooms | Bathrooms | Lot Size, SF | Market Area: Condition | Fort Myers 21 Year Built | Net Adjustments | Adjusted Sales Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5428 SHAGBARK CT, NORTH PORT, FL 34287 | VILLAS OF SABAL TRACE PH 2 | Remediated | $ 115,000 | 3/22/2010 | 1,477 | 3 | 2 | 2,053 | Good | 2006 | | |
| Unimpaired Comp 1 | | | | | | | | | | | | |
| 3729 FAIRWAY DR, NORTH PORT, FL 34287 | VILLAS SABAL TRACE | 0 | $ 148,500 | 2/10/2010 | 1,477 | 3 | 2 | 2,053 | Good | 2006 | | |
| VALUE ADJUSTMENTS | | | | | | | | | | | $0 | $ 148,500 |
| Unimpaired Comp 2 | | | | | | | | | | | | |
| 3976 IBIS CT, NORTH PORT, FL 34287 | VILLAS OF SABAL TRACE | 0 | $ 153,000 | 3/26/2010 | 1,477 | 3 | 2 | 2,053 | Good | 2006 | | |
| VALUE ADJUSTMENTS | | | | | | | | | | | $0 | $ 153,000 |
| Unimpaired Comp 3 | | | | | | | | | | | | |
| 3813 FAIRWAY DR, NORTH PORT, FL 34287 | VILLAS OF SABAL TRAC | 0 | $ 154,000 | 2/19/2010 | 1,477 | 3 | 2 | 2,050 | Good | 2006 | | |
| VALUE ADJUSTMENTS | | | | | | | | | | | $0 | $ 154,000 |
| Unimpaired Comp 4 | | | | | | | | | | | | |
| 5697 WHISPERING OAKS DR, NORTH PORT, FL 34287 | HERON CREEK | 0 | $ 190,000 | 8/5/2010 | 1,767 | 3 | 2 | 2,488 | Good | 2004 | | |
| VALUE ADJUSTMENTS | | | | | | | | | | | $0 | $ 190,000 |

| | Average | High | Low | Concluded Value Range | | Percent (%) Value Diminution | |
|---|---|---|---|---|---|---|---|
| | | | | High | Low | High | Low |
| Comparable Adjusted Sales Price | $161,375 | $190,000 | $148,500 | $154,000 | $150,000 | 25.3% | 23.3% |

**NOTES:**     2010 Ft. Myers post-remediation with letter from Lennar.

**Integra Realty Resources**

**Market / Pairing: Fort Myers 22**

**Value Adjustment Conclusions**

| Control Subject | Subdivision | Impaired Status | Price | Date of Sale | Size, SF | Bedrooms | Bathrooms | Lot Size, SF | Condition | Market Area: Fort Myers 22 Year Built | Net Adjustments | Adjusted Sales Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4698 GLOBE TER, NORTH PORT, FL 34286 | PORT CHARLOTTE 6 | Remediated | $ 148,000 | 11/12/2013 | 1,914 | 3 | 2 | 2,603 | Good | 2007 | | |
| Unimpaired Comp 1 | | | | | | | | | | | | |
| 4160 MARCELLA TER, NORTH PORT, FL 34286 | PORT CHARLOTTE | REO | $ 167,000 | 8/15/2013 | 1,845 | 3 | 2 | 2,595 | Good | 2006 | | |
| VALUE ADJUSTMENTS | | $25,000 | | | | | | | | | $25,000 | $ 192,000 |
| Unimpaired Comp 2 | | | | | | | | | | | | |
| 3682 PARADE TER, NORTH PORT, FL 34286 | PORT CHARLOTTE | 0 | $ 169,900 | 10/11/2013 | 1,981 | 3 | 2 | 2,663 | Good | 2004 | | |
| VALUE ADJUSTMENTS | | | | | | | | | | | $0 | $ 169,900 |
| Unimpaired Comp 3 | | | | | | | | | | | | |
| 2559 CARTWRIGHT LN, NORTH PORT, FL 34286 | PORT CHARLOTTE | 0 | $ 195,000 | 7/22/2013 | 2,247 | 3 | 2.1 | 3,016 | Good | 2007 | | |
| VALUE ADJUSTMENTS | | | | | (16,500) | | | | 15,000 | | -$1,500 | $ 193,500 |
| Unimpaired Comp 4 | | | | | | | | | | | | |
| 4566 APPLETON TER, NORTH PORT, FL 34286 | PORT CHARLOTTE | 0 | $ 219,500 | 11/8/2013 | 2,306 | 3 | 2 | 2,954 | Good | 2006 | | |
| VALUE ADJUSTMENTS | | | | | (16,500) | | | | (10,000) | | -$26,500 | $ 193,000 |

| | Average | High | Low | Concluded Value Range High | Low | Percent (%) Value Diminution High | Low |
|---|---|---|---|---|---|---|---|
| Comparable Adjusted Sales Price | $187,100 | $193,500 | $169,900 | $193,000 | $170,000 | 23.3% | 12.9% |

**NOTES:** Subject control sold 5/15/2013 for $75,000; on 11/12/2013 for %148000 Drywall discussed in listing; contractor did renovation. Prior sale in 2005 @ $375,000.

**Integra Realty Resources**
Market / Pairing: Fort Myers 23
Value Adjustment Conclusions

| Control Subject | Subdivision | Impaired Status | Price | Date of Sale | Size, SF | Bedrooms | Bathrooms | Lot Size, SF | Market Area: Fort Myers 23 Condition | Year Built | Net Adjustments | Adjusted Sales Price |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4637 ANTIOCH ST, NORTH PORT, FL 34288 | PORT CHARLOTTE SUB 12 | Remediated | $ 159,650 | 10/8/2014 | 1,728 | 3 | 2 | 2,545 | Good | 2005 | | |
| Unimpaired Comp 1 | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| 4792 MIDLAND ST, NORTH PORT, FL 34288 | PORT CHARLOTTE | 0 | $ 134,900 | 2/6/2014 | 2,040 | 3 | 2 | 2,534 | Fair | 2002 | | |
| VALUE ADJUSTMENTS | | | | | (14,000) | | | | 25,000 | | $11,000 | $ 145,900 |
| Unimpaired Comp 2 | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| 2837 ESCAMBIA, NORTH PORT, FL 34288 | NORTH PORT | 0 | $ 149,900 | 12/17/2014 | 1,400 | 3 | 2 | 1,400 | New | 2014 | | |
| VALUE ADJUSTMENTS | | | | | 15,000 | | | | | | $15,000 | $ 164,900 |
| Unimpaired Comp 3 | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| 2980 SILAS AVE, NORTH PORT, FL 34288 | PORT CHARLOTTE | 0 | $ 151,000 | 6/7/2014 | 1,798 | 3 | 2 | 2,623 | Poor | 2004 | | |
| VALUE ADJUSTMENTS | | | | | | | | | 10,000 | | $10,000 | $ 161,000 |
| Unimpaired Comp 4 | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| 4086 BILLINGHAM LN, NORTH PORT, FL 34288 | PORT CHARLOTTE | 0 | $ 165,000 | 6/25/2014 | 2,194 | 3 | 2 | 2,878 | Good | 2005 | | |
| VALUE ADJUSTMENTS | | | | | (21,000) | | | | | | $21,000 | $ 144,000 |

| | Average | High | Low | Concluded Value Range High | Low | Percent (%) Value Diminution High | Low |
|---|---|---|---|---|---|---|---|
| Comparable Adjusted Sales Price | $153,950 | $164,900 | $144,000 | $159,000 | $144,000 | -0.4% | -10.9% |

NOTES:

**Integra Realty Resources**

Controlled Pairing Interview Comments

| Market | Property Reference | Property Address | City | Interviewer | Interviewee | Phone # | Interview Date | Interviewee Comment | Category |
|---|---|---|---|---|---|---|---|---|---|
| Tampa | T12-C1 | 1413 E. Commanche Ave | Tampa | Paul Jones | Rae Catanese | 813-784-7744 | 2/11/2019 | "Always a negative." | PR -- |
| Palm Beach-Boca | PB-S | 17830 Monte Vista Dr | Boca Raton | Juan Gamio | Wendy Jensen | 561-706-7502 | 2/8/2019 | "Yes, some people would never buy a property with past history of Chinese drywall." | PR - - |
| Palm Beach-Boca | PB2-C1 | 17782 Cedena Dr | Boca Raton | Juan Gamio | Lorna Swartz | 561-735-9820 | 2/8/2019 | "Absolutely, but don't hear about trhose since 5 years ago." | PR - - |
| Palm Beach-Boca | PB2-C3 | 9604 Bridgebrook Dr | Boca Raton | Juan Gamio | Myrta Gonzalez | 561-706-6037 | 2/8/2019 | "Yes, many buyers don't want anything with those properties." | PR - - |
| Palm Beach-Boca | PB1-C1 | 9468 Grand Estates | Boca Raton | Juan Gamio | Jill Golden | 561-613-3507 | 2/8/2019 | "Completely." "A lot" "In today's market, even if 100% remediated, they are considered 'older homes.'" | PR - - |
| Palm Beach-Boca | PB1-C2 | 9391 Bridgebrook Dr | Boca Raton | Juan Gamio | Bruce Gaines | 561-289-7777 | 2/8/2019 | "Substantive, can't tell how much.  Even remediated, many buyers would not touch it." | PR - - |
| Palm Beach-Boca | PB1-C3 | 9411 Grand Estates Way | Boca Raton | Juan Gamio | Alex Curcio | 561-702-3587 | 2/8/2019 | "Yes" | PR - - |
| Broward | B4-C2 | 11953 NW 66 Ct | Parkland | Paul Jones | Shellee Gold-Peterson | 954-614-0055 | 2/9/2019 | "Not seeing difference.  I have certain buyers who do not want tainted properties." | PR - - |
| Broward | B3-C4 | 12757 NW 68 Dr | Parkland | Joe Melloni | David Carlton | 954-903-8114 | 2/8/2019 | "Even afterward, yes, a remediated home's value was impacted." | PR - - |
| Broward | B1-C2 | 6725 NW 122 Ave | Parkland | Joe Melloni | Robert Auerbach | 954-547-3600 | 2/8/2019 | "Yes, of course." | PR - - |
| Broward | B2-S | 8289 Emerald Ave | Parkland | Joe Melloni | Lea Plotkin | 954-802-8451 | 2/9/2019 | "Tainted, some clients simply wouldn't touch it." | PR - - |
| Broward | B2-C2 | 10055 Bay Leaf Ct | Parkland | Joe Melloni | Bette Abrams | 954-303-5185 | 2/9/2019 | "Yes, the stigma remained and I believe even after remediation it impacted the value you could get.  Some people would just stay away." | PR - - |
| Broward | B2-C3 | 7086 Spyglass Ave | Parkland | Joe Melloni | Brent Mechler | 954-410-6056 | 2/9/2019 | "There was a stigma, deals fell through, people either stayed away or trusted in the repairs." | PR - - |
| Broward | B5-C2 | 6968 Spyglass Ave | Parkland | Joe Melloni | Joy Fischer | 954-254-0646 | 2/8/2019 | "Buyers now - Toll Brothers 10 year guarantee, resale value was good. Remediation Experts - yes, would affect resale." | PR - - |
| Broward | B10-S2 | 6935 Longleaf Dr | Parkland | Paul Jones | | 0 954-753-2000 | 2/8/2019 | "Little bit of stigma still - 5%." | PR - - |
| Broward | B10-C4 | 6013 NW 91 Ave | Parkland | Joe Melloni | Hap Pomerantz | 954-341-4444 | 2/9/2019 | "Limits the market." | PR - - |
| Broward | B2-C4 | 9860 Bay Leaf Ct | Parkland | Joe Melloni | Ed Poirier | Email | 2/12/2019 | "Chinese drywall had a huge impact and homes that were remediated sell for less than homes that never had the issue.  Some buyers refuse to see remediated homes and nobody wants one with drywall in it unless price is significantly reduced." | PR - - |
| Tampa | T12-S | 1211 E. Giddens Ave | Tampa | Paul Jones | Rich Guagliardo | 813-244-7424 | 2/11/2019 | "It stigmatizes the houses; took a long time to find a buyer okay with the prior existence of Chinese drywall." | PR - - |
| Stuart Cay | SC1-C2 | 536 SW Akron Ave | Stuart Cay | Paul Jones | Maria Gain | 561-414-1642 | 2/9/2019 | "After remediation, no - recent sales are at market; market is doing great." | PR - + |
| Miami-Dade | MD-C4 | 919 NE 35 Ave | Homestead | Paul Jones | Jose Tavares | 305-984-7468 | 2/7/2019 | Not seeing any difference at this time. | PR - + |
| Broward | B3-S | 6339 NW 12 Dr | Coral Springs | Joe Melloni | Beth Laggan | 954-444-5143 | 2/8/2019 | "After remediation, no.  Must be a reputable company. 10- | PR - + |
| Broward | B2-C1 | 7848 NW 112 Way | Parkland | Joe Melloni | Joseph Fiorello | 954-646-4611 | 2/9/2019 | "Devistated the market, but in my opinion, once remediated, absolutely not - good as new." | PR - + |
| Broward | B5-C1 | 7066 Spyglass Ave | Parkland | Joe Melloni | Darcy Silver | 954-234-5206 | 2/8/2019 | "No, overall not much." | PR - + |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Broward | B5-C4 | 9447 Satinleaf Pl | Parkland | Joe Melloni | David Cohen | 561-271-3103 | 2/8/2019 | "At remediation - market value." | PR - + |
| Miami-Dade | MD3-S | 385 NE 36 Ter | Homestead | Paul Jones | Louis Melara | 305-281-9472 | 2/7/2019 | "If remediated, not a factor." | PR - + |
| Miami-Dade | MD3-C1 | 555 SE 30 Dr | Homestead | Paul Jones | David Cirinna | 786-390-6324 | 2/7/2019 | Yes if unremediated | PR - + |
| Miami-Dade | MD3-C4 | 215 NE 36 Ter | Homestead | Paul Jones | Natalia Betancur | 786-512-1116 | 2/7/2019 | "Back then, if remediated, not impacted. Had to have the certificate." | PR - + |
| Miami-Dade | MD4-C2 | 380 NE 31 Ter | Homestead | Paul Jones | Fernando Martinez | 305-216-3620 | 2/7/2019 | "Homes that were remediated were able to sell at market." | PR - + |
| Miami-Dade | MD1-C3 | 180 NE 26 Ave | Homestead | Paul Jones | Serafin Sanchez | 305-244-7373 | 2/7/2019 | "Unremediated homes, yes; remediated homes, no." Unremediated homes - 40% below market; no discount for remediated homes. | PR - + |
| Miami-Dade | MD1-C4 | 730 SE 28 Lane | Homestead | Paul Jones | Kim Green | 305-219-2665 | 2/7/2019 | "If not remediated, 40% +- discount.  If remediated, no impact on current pricing.  Some buyers do walk away." | PR - + |
| Tampa | T24-S | 12115 Rockford St | Spring Hill | Paul Jones | Sheree Landreth | 727-919-3713 | 2/11/2019 | "Being sold at market." | PR - + |
| Tampa | T24-C2 | 5243 Roble Ave | Spring Hill | Paul Jones | Joshua Miller | 352-201-2557 | 2/11/2019 | "Yes, significantly; have to do gut-renovation.  Once remediated, not a factor." | PR - + |
| Fort Myers | FM22-C2 | 3682 Parade Ter | North Port | Yule Georgieva | Sandra Winkler | 941-223-4436 | 2/9/2019 | "Yes, because remediation needs to be done." | Qualified |
| Fort Myers | FM22-C4 | 4566 Appleton Ter | North Port | Yule Georgieva | Vicki Painter | 941-4129 | 2/9/2019 | "Huge Impact" | Qualified |
| Fort Myers | FM20-C2 | 5644 Cissus Ave | North Port | Yule Georgieva | Ed Moser | 941-320-2680 | 2/9/2019 | "Obviously yes we had to remediate all sources of Chinese Drywall." | Qualified |
| Fort Myers | FM20-C4 | 1898 Andy Rd | North Port | Yule Georgieva | Dick Miller | 941-375-5000 | 2/9/2019 | Recommend home inspection to our buyers "Chinese | Qualified |
| Fort Myers | FM21-S | 5428 Shagbark Ct | North Port | Yule Georgieva | Randy McLendon | 941-473-7750 | 2/8/2019 | "Absolutely, this drywall was a terrifying experience. | Qualified |
| Stuart Cay | SC1-S | 520 SW Akron Ave | Stuart Cay | Paul Jones | Debra Manuel | 561-252-1353 | 2/9/2019 | Property was originally listed for $559,000; reduced to $375,000 once Chinese Drywall was discovered. | Qualified |
| Palm Beach-Boca | PB2-C4 | 17846 Cadena Dr | Boca Raton | Juan Gamio | Claire Sheres | 561-414-4146 | 2/8/2019 | "Huge: $2 million worth; $500,000 sold." | Qualified |
| Broward | B5-S | 9677 Cinnamon Ct | Parkland | Joe Melloni | Hap Pomerantz | 954-341-4444 | 2/8/2019 | "Salability; wouldn't touch; limits market" | Qualified |
| Miami-Dade | MD4-C1 | 3767 NE 10 Ct | Homestead | Paul Jones | Michelle Hoo | 786-367-7705 | 2/7/2019 | "Controlled by HFA remediated- price was impacted 30-40% market discount if not properly documented." | Qualified |
| Miami-Dade Hialeah | MDH2-S | 8031 W. 36 Ave #5 | Hialeah | Juan Gamio | Gulenka Buergo | 305-776-0296 | 2/11/2019 | "Big, important, 40% maybe" | Qualified |
| Miami-Dade Hialeah | MDH2-C1 | 10762 NW 87 Ct | Hialeah | Juan Gamio | Daniel Vera | 786-972-4883 | 2/11/2019 | "Of course, usually in distressed homes you see it.  If $250k worth; single family it will sell for $170k, 32% discount.  Worst the mold; health hazard." | Qualified |
| Miami-Dade Hialeah | MDH2-C2 | 10762 NW 87 Ct | Hialeah | Juan Gamio | Yasmiina La Paz | 305-788-3520 | 2/11/2019 | "More than 40% I think - nobody wants them." | Qualified |
| Miami-Dade Hialeah | MDH2-C5 | 8547 NW 140 Ter | Hialeah | Juan Gamio | Luis Dominguez | 305-962-9592 | 2/11/2019 | "I sold some in that area, significant reduction - 30% in my opinon." | Qualified |

**Intergra Realty Resources**
Control Pairing Interview Statistics

| Market | Subject # | R=Remediated I=Impaired | Subject | | Comparable 1 | | Comparable 2 | | Comparable 3 | | Comparable 4 | | Comparable 5 | | Subject 2 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Interview | Comment | Interview | Comment | Interview | Comment | Interview | Comment | Interview | Comment | Interview | Comment | Interview | Comment |
| Fort Myers | 20 | R | LM | | Y | NC | Y | CN | LM | | Y | CN | | | | |
| Fort Myers | 22 | R | N | | N | | Y | C | N | | Y | CN | | | | |
| Fort Myers | 21 | R | Y | CN | Y | NC | Y | NC | Y | NO | Y | NO | | | | |
| Stuart Cay | 1 | R | Y | NO | LM | | Y | C | LM | | NAP | | | | | |
| Port St. Lucie | 7 | R | LM | | Y | NO | LM | | LM | | LM | | | | | |
| Miami-Dade | 2 | R | LM/E | | Y | NC | Y | NO | Y | NO | Y | C | | | | |
| Palm Beach-Boca | 2 | R | Y | CN | Y | CN | Y | NC | Y | CN | Y | CN | | | | |
| Palm Beach-Boca | 1 | R | N1 | | Y | CN | Y | CN | Y | NO | Y1 | CN | | | | |
| Broward | 4 | NAP | Y | NC | Y | NC | Y | CN | LM/T | | Y | NC | | | | |
| Broward | 3 | R | Y | CN | LM/E | | LM | | Y | NC | Y | CN | | | | |
| Broward | 1 | R | N2 | | LM/T | | Y | C | N3 | | Y2 | | | | | |
| Broward | 2 | R | Y | CN | Y | CN | Y | CN | Y | CN | | | | | | |
| Broward | 5 | R | Y | CN | Y | C | Y | C | LM | | Y | C | | | | |
| Miami-Dade | 3 | I | Y | C | Y | C | Y | NO | Y | NO | Y | CN | | | | |
| Tampa | 5 | I | Y | NO | LM | | LM | | N3 | | NAP | | | | | |
| Broward | 10 | I | Y | NO | Y | NC | Y | CN | LM | | Y | C | | | Y | CN |
| Tampa | 8 | I | Y | NO | LM | | LM | | LM | | LM | | | | | |
| Tampa | 25 | R | LM | | Y2 | | Y2 | | LM | | LM | | | | | |
| Tampa | 26 | R | Y | NO | Y | NO | LM | | LM/E | | LM | | | | | |
| Miami-Dade | 4 | R | LM | | Y | C | Y | C | Y | NC | Y | NC | | | | |
| Miami-Dade | 1 | R | LM | | LM | | Y | NO | Y | CN | Y | CN | | | | |
| | | | | | | | | | | | | | | | | |
| Miami-Dade Hialeah | 2 | R | Y | CN | Y | CN | Y | C | Y | NO | LM | | Y | CN | Y | NC |
| Tampa | 12 | R | Y | CN | Y | C | Y | NO | LM | | Y | NC | | | | |
| Tampa | 27 | R | Y | C | LM | | LM | | LM | | | | | | | |
| Fort Myers | 23 | R | Y | NC | Y | NC | N3 | | LM | | | | | | | |
| Tampa | 24 | R | Y | C | N4 | | Y | C | N4 | | Y | NC | | | | |

78

**LEGEND**

N1  Agent ( Ryan Greenblatt) said he was retained for a class action lawsuit on CDW.  Declined to answer
N2  Agent no longer with company
N3  Agent declined to cooperate/would not confirm/did not remember
N4  Did not call - had repaired sinkhole.
Y1  Agent (Mark Nestler) did not recall transaction; referred to public records
Y2  Agent confirmed no CDW; could not confirm sales price or date
C  Comment neutral
NC  No Comment
NO  No Opinion
CN  Comment Negative (shows impact)
LM  Left Message
LM/T  Left Message/ Sent Text
LM/E  Left Message/ Sent Email

# EXHIBIT F2

**Integra Realty Resources**
Miami/Palm Beach

**Appraisal Report & Post-Remediation Damage Related to Chinese Drywall**

**Miranda, Jose and Adela**
Market Value - "As Remediated"
8890 SW 229th St.
Miami, Miami-Dade County, Florida 33190
Client Reference: 1

**Prepared For:**
Colson Hicks Eidson

**Effective Date of the Appraisal:**
November 16, 2017

**Report Format:**
Appraisal Report

**IRR - Miami/Palm Beach**
File Number: 123-2018-0275





**Miranda, Jose and Adela**
8890 SW 229th St.
Miami, Florida

Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/02/19 Page 62 of 232
Case 1:11-cv-22408-MGC Document 291-2 Entered on FLSD Docket 05/13/2019 Page 4 of 43

Identification of Subject                                                                    3

February 10, 2019

Patrick S. Montoya
Partner
Colson Hicks Eidson
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134

SUBJECT:      Market Value - "As Remediated"
              Case No 11-22408-Civ-COOKE
              United States District Court Southern District of Florida in the matter of
              Eduardo and Carmen Amorin, et al. individually and on behalf of others situated
              similarly v. Taishan Gypsum Co., LTD., f/k/a Shandong Taiche Dongxin Co. Ltd., et al
              Priority Claimant Case at:
              Miranda, Jose and Adela
              8890 SW 229th St.
              Miami, Miami-Dade County, Florida 33190
              Client Reference: 1
              IRR - Miami/Palm Beach File No. 123-2018-0275

Dear Mr. Montoya:

Integra Realty Resources – Miami/Palm Beach submits the following damage estimate in the
referenced property as of the effective date assuming all remediation was completed by an
appropriate contractor with experience and credentials in remediating defective drywall.

The report is intended to comply the Uniform Standards of Professional Appraisal Practice (USPAP). It
presents summary discussions of the data, reasoning, and analysis that were used in the appraisal
process to develop the opinions. Additional information is contained within our workfile.

The findings will form the basis of expert witness testimony in the above referenced case.

## Identification of Subject

The subject of this report is a single-family home configured with 3 bedroom and 2.1 baths with 1,988
SF under air-conditioning.  The subject property was built in 2006 and is located on a 2,337 SF site.

## Purpose of the Appraisal

The purpose of the appraisal is to develop an opinion of the diminution in value and related damages,
collectively "the damages" as of the effective date of the appraisal, November 16, 2017. The damage
estimate assumes the defective drywall remediation was completed and does not consider the cost to
cure. The date of the report is February 10, 2019. The appraisal is valid only as of the stated effective
date or dates.



Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/02/19 Page 63 of 232
Case 1:11-cv-22408-MGC Document 201-2 Entered on FLSD Docket 05/13/2019 Page 3 of 43

Intended Use and User                                                                    4

## Intended Use and User

The intended use of the appraisal is for litigation purposes. The client, Colson Hicks Eidson and related co-counsel, Plaintiff and the Court are the intended users.  Integra Realty Resources – Miami/Palm Beach is not responsible for unauthorized use of this report.

## Most Recent Sale History

The most recent closed sale of the subject is summarized as follows:

| Most Recent Subject Sale (Closed) | |
| --- | --- |
| Sale Date (Most Recent) | January 1, 2007 |
| Seller | Pride Homes of Lakes by the Bay |
| Buyer | Miranda, Jose and Adela |
| Sale Price | $302,790 |
| Recording Instrument Number | 25312-0889 |
| Disposition Details | Original Sale from homebuilder |

To the best of our knowledge, no other sale or transfer of ownership has taken place within a three-year period prior to the effective appraisal date.

The following transfers occurred subsequent to our effective date of value, November 16, 2017

- May 3, 2018 a Certificate of Title was issued on May 03, 2018 in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida reflecting a consideration of $208,200. Plaintiff was Wells Fargo Bank, NA, Defendant was Jose F. Miranda et al, Buyer was Pier 18 Developments LLC.

- October 2, 2018 a Warranty Deed was recorded reflecting a consideration of $306,500. Grantor was Pier 18 Developments, LLC (grantor) and Aldo Amoretti, Gilda Francheska Mattei Haddock (grantees).

  The property was listed for sale in the Realtors MLS system with an asking price of $315,000 August 8, 2018, with a status change to Pending Sale on September 4, 2018 and Closed Sale on October 17, 2018.

  A representative of the listing office confirmed the Chinese Drywall had been completely remediated, however the MLS listing makes no mention of prior existence of Chinese Drywall at the property.

## Pending Transactions

To the best of our knowledge, the property is not subject to an agreement of sale or an option to buy, nor is it listed for sale, as of the effective appraisal date.



Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/02/19 Page 64 of 232
Case 1:11-cv-22408-MGC Document 201-2 Entered on FLSD Docket 05/13/2019 Page 6 of 43

Definition of Market Value                                                                                     5

## Definition of Market Value

The following definition of market value is used by agencies that regulate federally insured financial institutions in the United States:

"The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:

- Buyer and seller are typically motivated;

- Both parties are well informed or well advised, and acting in what they consider their own best interests;

- A reasonable time is allowed for exposure in the open market;

- Payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and

- The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale."

*(12 C.F.R. Part 34.42(g); 55 Federal Register 54696, August 24, 1990, as amended at 57 Federal Register 12202, April 9, 1992, 59 Federal Register 29499, June 7, 1994)*

## Definition of Retrospective Value Opinion

A value opinion effective as of a specified historical date. The term retrospective does not define a type of value. Instead, it identifies a value opinion as being effective at some specific prior date. Value as of a historical date is frequently sought in connection with property tax appeals, damage models, lease renegotiation, deficiency judgements, estate tax, and condemnation. Inclusion of the type of value with this term is appropriate, e.g. "retrospective market value opinion".

*(Source: The Dictionary of Real Estate Appraisal – 6th Edition; Appraisal Institute, 200 W. Madison, Suite 1500, Chicago, IL 60606, www.appraisalinstitute.org)*

## Definition of Hypothetical Condition

1. A condition that is presumed to be true when it is known to be false. (SVP)

2. A condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis. Comment: Hypothetical conditions are contrary to known facts about physical, legal, or economic characteristics of the subject property; or about conditions external to the property, such as market conditions or trends; or about the integrity of date used in an analysis. (USPAP, 2016-2017 ed.)

*(Source: The Dictionary of Real Estate Appraisal – 6th Edition; Appraisal Institute, 200 W. Madison, Suite 1500, Chicago, IL 60606, www.appraisalinstitute.org)*



## Scope of Work

Integra was retained as an expert in the captioned matter of this report to address potential damages related to the subject property, specifically excluding the costs to cure.

Integra was retained to estimate any post remediation damages, and conducted a separate study to determine whether damages persist following defective drywall remediation. The result of that study are outlined within Integra's report entitled "Market Analysis of the Post Remediation Impact of Chinese Drywall on Residential Property Values in Florida." The results of that study are incorporated by reference herein.

In addition, our damage model was requested to include a rental value analysis of the Priority Claimant residence, and a determination of the relevant economic damage associated with having to vacate the home for a period of time (and secure alternate living arrangements) during the remediation. As of the effective date, the claimant would have suffered the damages.

Integra established individual case files on each Priority Claimant residence, and retained professional assistance from qualified residential appraisers in each jurisdiction. Integra managed the process of these retrospective appraisals, interfaced with the residential appraisers, and reviewed the form appraisals completed on each assignment including review of the comparables, adjustments, and form narrative to establish the market value of the residence unimpaired as of the effective date.

Integra professionals reviewed various materials exchanged as part of this case and considered materials that were relevant to the market valuation. These materials were downloaded from the attorney's dropbox and are retained within our workfile.

Integra's participation in and review of the final appraised values results in a conclusion of the market value of the home defined as "Hypothetical Market Value" assuming defective drywall had never been identified within the subject property. This forms the basis of the unimpaired market value as of the effective date.

All properties and comparables were inspected by the local residential appraisers without the benefit of interior inspections. Adjustments for condition and age at the time of sale are based upon photographs contained within the various MLS databases, paired analysis from amongst the comparables, and for the subject, were based on photos, if available. In the event a property had not been remediated as of the effective date, we assume average condition for the property in the market as of the effective date.

The damage analysis expressed within this report follows the peer teachings and market accepted processes for damage analysis. However, the damage analysis only represents a <u>portion of the overall damages</u> because we were specifically requested to exclude the consideration of the costs to cure. This represents a relevant component of damage in this case for property that factually have not been remediated.

Integra's role was strictly to identify post remediation value damage (sometime referred to as a "stigma") and estimate the relevant rental value and moving costs as a proxy for the temporary loss of use during remediation.

Miranda, Jose and Adela



Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/02/19 Page 66 of 232
Case 1:11-cv-22408-MGC Document 201-2 Entered on FLSD Docket 05/13/2019 Page 8 of 43

Highest and Best Use 7

## Significant Appraisal Assistance

In addition to Anthony M. Graziano, MAI ,CRE, principal, it is acknowledged that Peter G. Kayworth, Yuliya Georgieva, Joseph Melloni and Paul L. Jones of IRR-Miami/Palm Beach were involved in the assignment consisting of conducting research on the subject and transactions involving comparable properties, performing appraisal analyses and assisting in report writing, under the supervision of the persons signing the report.  The local residential appraisers are also named as providing significant assistance, including exterior inspection of the properties and comparables, application of their local knowledge in adjusting and estimating the unimpaired value, and developing the form report valuations incorporated herein.

## Prior Services

USPAP requires appraisers to disclose to the client any other services they have provided in connection with the subject property in the prior three years, including valuation, consulting, property management, brokerage, or any other services. We have not performed any services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

## Valuation Methodology

Appraisers usually consider the use of three approaches to value when developing a market value opinion for real property. These are the cost approach, sales comparison approach, and income capitalization approach.  The valuations consider the only relevant approach for residential valuation, the sales comparison analysis.  The cost and income approach are not considered relevant.

The sales comparison approach is the most applicable valuation method since there is an active market for similar properties, and sufficient sales data is available for analysis.  Additionally, this approach directly considered the prices of alternative properties having similar utility.

### Highest and Best Use

The highest and best use of the subject as if vacant for development of a single-family home which is physically possible, legally permissible as per zoning, financially feasible and maximally productive.

The highest and best use of the subject as improved is for continued use as a single-family home with no other use that could reasonably be expected to provide a higher value to the land as if vacant.  The improvements contribute to the over all value to a greater extent than the land value alone, and therefore, continued use as improved concluded to be maximally productive and the highest and best use of the property.

### Conclusion of Value

The Hypothetical market value appraisal as of the effective date, reflective of a traditional form appraisal, is contained within the Addenda of this report.  This value us hypothetical since it assumes that defective drywall had never been present at the subject property.



Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/02/19 Page 67 of 232
Case 1:11-cv-22408-MGC Document 291-2 Entered on FLSD Docket 05/13/2019 Page 3 of 43

Conclusion of Value                                                                                              8

Against this value, we then apply the Post Impairment Discount as a percentage of unimpaired value as developed within the Integra report studying this issue. This represents a compensable damage resulting from the prior existence of defective drywall in the home as of the effective date.

In addition, each appraisal (unimpaired) reflects a rental value analysis as of the effective date. This rental value analysis concludes to the equivalent market rent for the home (unimpaired) and reflects a proxy for the probable actual costs the homeowner would experience by having to move-out of the primary residence during remediation.

The homeowner would also have to incur moving /storage costs twice, once before and once after remediation. Professional packing, moving and storage for an average home is estimated at $1,500 per move, or $3,000 in total. This amount is added to the loss of use estimate as an additional damage.

This loss of use calculation does not consider the costs of alternative housing or other tangible costs potentially incurred for damages suffered between the date of discovery and the date of value. These damages, if applicable, are being estimated by a separate expert (Elkins et al). To the extent Elkins posits costs which are duplicative or actual costs that are greater or less, some minor adjustments to Integra's damage model may be required.

The timeframe for remediation (months of actual loss) could vary depending upon the permitting process in the specific community, the availability of labor, and the size of the home. Integra reviewed a number of transactions that were remediated by investors and found the typical timeframe between purchase of an unremediated home and listing[1] of the home post-remediation to be 3-6 months.

Larger more expansive homes would be expected to take longer to remediate since more materials are required, and in higher-priced homes, supplies would typically be custom-ordered. Therefore, we apply the following timeframes based on the subject's size and price range:

< $150,000 Home up to 2,000+/- SF                4 months

$150,000 - $750,000 home up to 4,000 SF          6 months

$750,000+ home up over 4,000 SF                  9 months

---

[1] The "listing date" is most relevant since a homeowner conducting their own remediation can move back in once the home is ready for sale (ie- coinciding with a final certificate of occupancy).

Miranda, Jose and Adela                                                                          

The following shows our final estimate of damages as of the effective date, and assuming costs to cure (i.e. – to conduct the remediation) have been expended.

**Conclusions of Damage**

| | | | |
|---|---|---|---|
| Hypothetical Value (Unimpaired - Before) | | $265,000 | |
| Market Impairment Discount (As if Remediated) | | 10% | |
| Post Impairment Damage ($) | | $26,500 | |
| **Hypothetical Value As IF Remediated** | | | **$238,500** |
| Post Remediation Damages as of Effective Date | | | **$26,500** |
| Loss of Use: | | | |
| Rental Rate ($/Month) | **$1,900** | | |
| Moving & Storage Costs | | $3,000 | |
| Loss of Use Subject (# Months) | 4x | $7,600 | |
| Subject Total | | | **$10,600** |
| **Post Remediation Damage** | | | **$37,100** |

Note: Does not consider "cost to cure". Assumes remediation was completed by qualified contractor who warranties the work.

Property records reflect a foreclosure of the subject on May 3, 2018 for $208,200, and a subsequent sale October 2, 2018 for $306,500 (see page 4 for details on both). The MLS listing related to the October 2018 sale makes no mention of the property having previously contained Chinese Drywall, and no mention of any significant renovation or remediation.

Miranda, Jose and Adela



Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/03/19 Page 69 of 232
Case 1:11-cv-22408-MGC Document 281-2 Entered on FLSD Docket 09/18/2019 Page 11 of 43

Certification                                                                        10

## Certification

We certify that, to the best of our knowledge and belief:

1. The statements of fact contained in this report are true and correct.

2. The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are our personal, impartial, and unbiased professional analyses, opinions, and conclusions.

3. We have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.

4. We have not performed any services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

5. We have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

6. Our engagement in this assignment was not contingent upon developing or reporting predetermined results.

7. Our compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

8. Our analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice as well as applicable state appraisal regulations.

9. The reported analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute.

10. The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

11. Anthony M. Graziano, MAI, CRE did not make a personal inspection of the property that is the subject of this report. Carlos Fong has personally inspected the subject.

12. Significant real property appraisal assistance was provided by Peter G. Kayworth, Yuliya Georgieva, Joseph Melloni and Paul L. Jones. Additionally, real estate assistance was provided by various Valucentric employees and subcontractors, including: John Barcelo, Angela Barcelo, Fred Stites, Carlos Fong, Sarah D. Wilson and Rob Baird.

13. We have experience in appraising properties similar to the subject and are in compliance with the Competency Rule of USPAP.

14. As of the date of this report, Anthony M. Graziano, MAI, CRE, has completed the continuing education program for Designated Members of the Appraisal Institute.

Anthony M. Graziano, MAI, CRE
Senior Managing Director - Miami
State-Certified General RE Appraiser
FL Certificate # RZ#3510

irr.

Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/03/19 Page 70 of 232
Case 1:11-cv-22408-MGC Document 281-2 Entered on FLSD Docket 09/15/2015 Page 12 of 43

Assumptions and Limiting Conditions                                                                    11

## Assumptions and Limiting Conditions

This appraisal and any other work product related to this engagement are limited by the following standard assumptions, <u>except as otherwise noted in the report</u>:

1.  The title is marketable and free and clear of all liens, encumbrances, encroachments, easements and restrictions. The property is under responsible ownership and competent management and is available for its highest and best use.

2.  There are no existing judgments or pending or threatened litigation that could affect the value of the property.

3.  There are no hidden or undisclosed conditions of the land or of the improvements that would render the property more or less valuable. Furthermore, there is no asbestos in the property.

4.  The revenue stamps placed on any deed referenced herein to indicate the sale price are in correct relation to the actual dollar amount of the transaction.

5.  The property is in compliance with all applicable building, environmental, zoning, and other federal, state and local laws, regulations and codes.

6.  The information furnished by others is believed to be reliable, but no warranty is given for its accuracy.

This appraisal and any other work product related to this engagement are subject to the following limiting conditions, except as otherwise noted in the report:

1.  An appraisal is inherently subjective and represents our opinion as to the value of the property appraised.

2.  The conclusions stated in our appraisal apply only as of the effective date of the appraisal, and no representation is made as to the effect of subsequent events.

3.  No changes in any federal, state or local laws, regulations or codes (including, without limitation, the Internal Revenue Code) are anticipated.

4.  No environmental impact studies were either requested or made in conjunction with this appraisal, and we reserve the right to revise or rescind any of the value opinions based upon any subsequent environmental impact studies. If any environmental impact statement is required by law, the appraisal assumes that such statement will be favorable and will be approved by the appropriate regulatory bodies.

5.  Unless otherwise agreed to in writing, we are not required to give testimony, respond to any subpoena or attend any court, governmental or other hearing with reference to the property without compensation relative to such additional employment.

6.  We have made no survey of the property and assume no responsibility in connection with such matters. Any sketch or survey of the property included in this report is for illustrative purposes only and should not be considered to be scaled accurately for size. The appraisal covers the property as described in this report, and the areas and dimensions set forth are assumed to be correct.

Miranda, Jose and Adela



Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/03/19 Page 71 of 232
Case 1:11-cv-22408-MGC Document 281-2 Entered on FLSD Docket 09/18/2013 Page 13 of 43

Assumptions and Limiting Conditions                                                               12

7. No opinion is expressed as to the value of subsurface oil, gas or mineral rights, if any, and we have assumed that the property is not subject to surface entry for the exploration or removal of such materials, unless otherwise noted in our appraisal.

8. We accept no responsibility for considerations requiring expertise in other fields. Such considerations include, but are not limited to, legal descriptions and other legal matters such as legal title, geologic considerations such as soils and seismic stability; and civil, mechanical, electrical, structural and other engineering and environmental matters. Such considerations may also include determinations of compliance with zoning and other federal, state, and local laws, regulations and codes.

9. The distribution of the total valuation in the report between land and improvements applies only under the reported highest and best use of the property. The allocations of value for land and improvements must not be used in conjunction with any other appraisal and are invalid if so used. The appraisal report shall be considered only in its entirety. No part of the appraisal report shall be utilized separately or out of context.

10. Neither all nor any part of the contents of this report (especially any conclusions as to value, the identity of the appraisers, or any reference to the Appraisal Institute) shall be disseminated through advertising media, public relations media, news media or any other means of communication (including without limitation prospectuses, private offering memoranda and other offering material provided to prospective investors) without the prior written consent of the persons signing the report.

11. Information, estimates and opinions contained in the report and obtained from third-party sources are assumed to be reliable and have not been independently verified.

12. Any income and expense estimates contained in the appraisal report are used only for the purpose of estimating value and do not constitute predictions of future operating results.

13. If the property is subject to one or more leases, any estimate of residual value contained in the appraisal may be particularly affected by significant changes in the condition of the economy, of the real estate industry, or of the appraised property at the time these leases expire or otherwise terminate.

14. Unless otherwise stated in the report, no consideration has been given to personal property located on the premises or to the cost of moving or relocating such personal property; only the real property has been considered.

15. The current purchasing power of the dollar is the basis for the values stated in the appraisal; we have assumed that no extreme fluctuations in economic cycles will occur.

16. The values found herein are subject to these and to any other assumptions or conditions set forth in the body of this report but which may have been omitted from this list of Assumptions and Limiting Conditions.

17. The analyses contained in the report necessarily incorporate numerous estimates and assumptions regarding property performance, general and local business and economic conditions, the absence of material changes in the competitive environment and other matters. Some estimates or assumptions, however, inevitably will not materialize, and unanticipated events and circumstances may occur; therefore, actual results achieved during

Miranda, Jose and Adela



Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/03/19 Page 72 of 221
Case 1:11-cv-22408-MGC Document 281-2 Entered on FLSD Docket 09/18/2013 Page 14 of 43

Assumptions and Limiting Conditions                                                                13

the period covered by our analysis will vary from our estimates, and the variations may be material.

18.  The Americans with Disabilities Act (ADA) became effective January 26, 1992. We have not made a specific survey or analysis of the property to determine whether the physical aspects of the improvements meet the ADA accessibility guidelines. We claim no expertise in ADA issues, and render no opinion regarding compliance of the subject with ADA regulations. Inasmuch as compliance matches each owner's financial ability with the cost to cure the non-conforming physical characteristics of a property, a specific study of both the owner's financial ability and the cost to cure any deficiencies would be needed for the Department of Justice to determine compliance.

19.  The appraisal report is prepared for the exclusive benefit of the Client, its subsidiaries and/or affiliates. It may not be used or relied upon by any other party. All parties who use or rely upon any information in the report without our written consent do so at their own risk.

20.  No studies have been provided to us indicating the presence or absence of hazardous materials on the subject property or in the improvements, and our valuation is predicated upon the assumption that the subject property is free and clear of any environment hazards including, without limitation, hazardous wastes, toxic substances and mold. No representations or warranties are made regarding the environmental condition of the subject property. Integra Realty Resources – Miami/Palm Beach, Integra Realty Resources, Inc., Integra Strategic Ventures, Inc. and/or any of their respective officers, owners, managers, directors, agents, subcontractors or employees (the "Integra Parties"), shall not be responsible for any such environmental conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because we are not experts in the field of environmental conditions, the appraisal report cannot be considered as an environmental assessment of the subject property.

21.  The persons signing the report may have reviewed available flood maps and may have noted in the appraisal report whether the subject property is located in an identified Special Flood Hazard Area. We are not qualified to detect such areas and therefore do not guarantee such determinations. The presence of flood plain areas and/or wetlands may affect the value of the property, and the value conclusion is predicated on the assumption that wetlands are non-existent or minimal.

22.  Integra Realty Resources – Miami/Palm Beach is not a building or environmental inspector. Integra Miami/Palm Beach does not guarantee that the subject property is free of defects or environmental problems. Mold may be present in the subject property and a professional inspection is recommended.

23.  The appraisal report and value conclusions for an appraisal assume the satisfactory completion of construction, repairs or alterations in a workmanlike manner.

24.  It is expressly acknowledged that in any action which may be brought against any of the Integra Parties, arising out of, relating to, or in any way pertaining to this engagement, the appraisal reports, and/or any other related work product, the Integra Parties shall not be responsible or liable for any incidental or consequential damages or losses, unless the appraisal was fraudulent or prepared with intentional misconduct. It is further acknowledged



Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/03/19 Page 73 of 232
Case 1:11-cv-22408-MGC Document 281-2 Entered on FLSD Docket 09/18/2013 Page 15 of 43

Assumptions and Limiting Conditions                                                         14

that the collective liability of the Integra Parties in any such action shall not exceed the fees paid for the preparation of the appraisal report unless the appraisal was fraudulent or prepared with intentional misconduct. Finally, it is acknowledged that the fees charged herein are in reliance upon the foregoing limitations of liability.

25.   Integra Realty Resources – Miami/Palm Beach, an independently owned and operated company, has prepared the appraisal for the specific intended use stated elsewhere in the report. The use of the appraisal report by anyone other than the Client is prohibited except as otherwise provided. Accordingly, the appraisal report is addressed to and shall be solely for the Client's use and benefit unless we provide our prior written consent. We expressly reserve the unrestricted right to withhold our consent to your disclosure of the appraisal report or any other work product related to the engagement (or any part thereof including, without limitation, conclusions of value and our identity), to any third parties. Stated again for clarification, unless our prior written consent is obtained, no third party may rely on the appraisal report (even if their reliance was foreseeable).

26.   The conclusions of this report are estimates based on known current trends and reasonably foreseeable future occurrences. These estimates are based partly on property information, data obtained in public records, interviews, existing trends, buyer-seller decision criteria in the current market, and research conducted by third parties, and such data are not always completely reliable. The Integra Parties are not responsible for these and other future occurrences that could not have reasonably been foreseen on the effective date of this assignment. Furthermore, it is inevitable that some assumptions will not materialize and that unanticipated events may occur that will likely affect actual performance. While we are of the opinion that our findings are reasonable based on current market conditions, we do not represent that these estimates will actually be achieved, as they are subject to considerable risk and uncertainty. Moreover, we assume competent and effective management and marketing for the duration of the projected holding period of this property.

27.   All prospective value opinions presented in this report are estimates and forecasts which are prospective in nature and are subject to considerable risk and uncertainty. In addition to the contingencies noted in the preceding paragraph, several events may occur that could substantially alter the outcome of our estimates such as, but not limited to changes in the economy, interest rates, and capitalization rates, behavior of consumers, investors and lenders, fire and other physical destruction, changes in title or conveyances of easements and deed restrictions, etc. It is assumed that conditions reasonably foreseeable at the present time are consistent or similar with the future.

Miranda, Jose and Adela



# Addenda



| Borrower | Jose & Adele Miranda | | | File No. | VALU-18-12-1464 | |
|---|---|---|---|---|---|---|
| Property Address | 8890 SW 229th St | | | | | |
| City | Miami | County | Dade | State | FL | Zip Code 33190 |
| Lender/Client | Integra Realty Resources (IRR) - Miami | | | | | |

## TABLE OF CONTENTS



USPAP Identification Addendum ........................................................................................................................................ 1
Exterior-Only ................................................................................................................................................................... 2
Single Family Comparable Rent Schedule ...................................................................................................................... 8
General Text Addendum .................................................................................................................................................. 9
Subject Photos ............................................................................................................................................................... 12
Comparable Photos 1-3 .................................................................................................................................................. 13
Rental Photos 1-3 ........................................................................................................................................................... 14
Assessor Map ................................................................................................................................................................. 15
Location Map .................................................................................................................................................................. 16
Subject Aerial Map ......................................................................................................................................................... 17
Assessor Data ................................................................................................................................................................ 18
MLS Listing Sheet .......................................................................................................................................................... 19
MLS Listing History ........................................................................................................................................................ 20
License ........................................................................................................................................................................... 21

USPAP ADDENDUM

File No. VALU-18-12-1464

| Borrower | Jose & Adele Miranda | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 8890 SW 229th St | | | | | |
| City | Miami | County | Dade | State FL | Zip Code | 33190 |
| Lender | Integra Realty Resources (IRR) - Miami | | | | | |

This report was prepared under the following USPAP reporting option:

☒ Appraisal Report — This report was prepared in accordance with USPAP Standards Rule 2-2(a).

☐ Restricted Appraisal Report — This report was prepared in accordance with USPAP Standards Rule 2-2(b).

**Reasonable Exposure Time**

My opinion of a reasonable exposure time for the subject property at the market value stated in this report is: 30-90 DAYS

EXPOSURE TIME: estimated length of time that the property interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of the appraisal.

USPAP 2018-19 Comment: Exposure time is a retrospective opinion based on an analysis of past events assuming a competitive and open market

**Additional Certifications**

I certify that, to the best of my knowledge and belief:

☒ I have NOT performed services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

☐ I HAVE performed services, as an appraiser or in another capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment. Those services are described in the comments below.

- The statements of fact contained in this report are true and correct.
- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.
- Unless otherwise indicated, I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.
- I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.
- My engagement in this assignment was not contingent upon developing or reporting predetermined results.
- My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice that were in effect at the time this report was prepared.
- Unless otherwise indicated, I have made a personal inspection of the property that is the subject of this report.
- Unless otherwise indicated, no one provided significant real property appraisal assistance to the person(s) signing this certification (if there are exceptions, the name of each individual providing significant real property appraisal assistance is stated elsewhere in this report).

**Additional Comments**

APPRAISER COMPETENCY

An appraiser must determine, prior to accepting an assignment, that he or she can perform the assignment competently. Competency requires:

1. the ability to properly identify the problem to be addressed; and
2. the knowledge and experience to complete the assignment competently; and
3. recognition of, and compliance with, laws and regulations that apply to the appraiser or to the assignment.

I am competent to perform this assignment based on my state appraiser license and familiarity with this type of property in the subject market

I performed this appraisal in accordance with the requirements of Title XI of the Financial Institution Reform, Recovery and Enforcement Act of 1989, (12 U.S.C.3331 et seq.), and any implementing regulations

**APPRAISER:**

Signature: *Carlos Fong*
Name: Carlos Fong
Date Signed: 02/10/2019
State Certification #: RD 6782
or State License #:
State: FL
Expiration Date of Certification or License: 11/30/2020
Effective Date of Appraisal: 11/16/2017

**SUPERVISORY APPRAISER: (only if required)**

Signature:
Name:
Date Signed:
State Certification #:
or State License #:
State:
Expiration Date of Certification or License:
Supervisory Appraiser Inspection of Subject Property:
☐ Did Not   ☐ Exterior-only from Street   ☐ Interior and Exterior

VALU-18-12-1464
File # VALU-18-12-1464

# Exterior–Only Inspection Residential Appraisal Report

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| | | | |
|---|---|---|---|
| Property Address 8890 SW 229th St | City Miami | State FL | Zip Code 33190 |

Borrower Jose & Adele Miranda    Owner of Public Record Aldo Amoretti & Gilda Francheska Mattei    County Dade

Legal Description TRELLIS AT BAYSHOREPB 164-047 T-2225TLOT 2 BLK 8LOT SIZE 2337 SQ FTFAU 36 6016000 0023COC 25312-0889 01 2007 1

Assessor's Parcel # 36-60-16-017-0390    Tax Year 2017    R.E. Taxes $ 2,482

Neighborhood Name Trellis at Bayshore    Map Reference 33124    Census Tract 0106.17

Occupant ☒ Owner ☐ Tenant ☐ Vacant    Special Assessments $ 0    ☒ PUD    HOA $ 74 ☐ per year ☒ per month

Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)

Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe) Litigation

Lender/Client Integra Realty Resources (IRR) - Miami    Address

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☐ Yes ☒ No

Report data source(s) used, offering price(s), and date(s). The subject property has not been offered for sale in the last 12 months per MLS.

☐ I ☐ did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $    Date of Contract    Is the property seller the owner of public record? ☐ Yes ☐ No Data Source(s)

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☐ No

If Yes, report the total dollar amount and describe the items to be paid.

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | One-Unit Housing Trends | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | | Property Values ☐ Increasing ☒ Stable ☐ Declining | | PRICE $ (000) | AGE (yrs) | One-Unit | 80 % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | | 121 Low 5 | | 2-4 Unit | % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | | Marketing Time ☒ Under 3 mths ☐ 3-6 mths ☐ Over 6 mths | | 299 High 15 | | Multi-Family | 10 % |
| | | | | 205 Pred. 10 | | Commercial | 10 % |
| | | | | | | Other | 10 % |

Neighborhood Boundaries The subject is bound to the north by SW 216th St, to the west by SW 97th Ave, to the east by SW 87th Ave and to the south by SW 232nd St.

Neighborhood Description There are no apparent factors that should affect the subject's marketability. The subject has access to all necessary supporting facilities including schools, shopping, recreation and employment centers.

Market Conditions (including support for the above conclusions) See Attached Addendum

| | | | | |
|---|---|---|---|---|
| Dimensions Per Dade County Assessor | Area 2,337 sf | Shape Rectangular | View Preserves | |

Specific Zoning Classification SR    Zoning Description Single Family Residential District

Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No If No, describe

| Utilities | Public | Other (describe) | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water ☒ | | Street Asphalt | ☒ | |
| Gas | ☒ | | Sanitary Sewer ☒ | | Alley None | | |

FEMA Special Flood Hazard Area ☒ Yes ☐ No    FEMA Flood Zone AE    FEMA Map # 12086C0612L    FEMA Map Date 9/11/2009

Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No If Yes, describe

No observed or known adverse influences to market value were noted.

Source(s) Used for Physical Characteristics of Property ☐ Appraisal Files ☒ MLS ☒ Assessment and Tax Records ☐ Prior Inspection ☐ Property Owner
☐ Other (describe)    Data Source for Gross Living Area Assessor

| General Description | | General Description | | Heating/Cooling | | Amenities | | Car Storage | |
|---|---|---|---|---|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | | ☒ Concrete Slab ☐ Crawl Space | | ☒ FWA ☐ HWBB | | Fireplace(s) # 0 | ☐ None | | |
| # of Stories 2 | | ☐ Full Basement ☐ Finished | | ☐ Radiant | | Woodstove(s) # 0 | ☒ Driveway # of Cars 2 | | |
| Type ☐ Det. ☒ Att. ☐ S-Det./End Unit | | ☐ Partial Basement ☐ Finished | | ☐ Other | Fuel | ☒ Patio/Deck Patio | Driveway Surface Pavers | | |
| ☒ Existing ☐ Proposed ☐ Under Const. | | Exterior Walls CBS | | Elec. | | ☒ Porch Porch | ☒ Garage # of Cars 2 | | |
| Design (Style) Traditional | | Roof Surface Barrel | | ☒ Central Air Conditioning | | Pool None | ☐ Carport # of Cars 0 | | |
| Year Built 2006 | | Gutters & Downspouts None | | ☐ Individual | | ☒ Fence Wd | ☒ Attached ☐ Detached | | |
| Effective Age (Yrs) 8 | | Window Type Single Hung | | ☐ Other | | ☐ Other | ☐ Built-in | | |

Appliances ☒ Refrigerator ☒ Range/Oven ☒ Dishwasher ☒ Disposal ☒ Microwave ☐ Washer/Dryer ☐ Other (describe)

Finished area above grade contains: 6 Rooms 3 Bedrooms 2.1 Bath(s) 1,988 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.) None

Describe the condition of the property and data source(s) (including apparent needed repairs, deterioration, renovations, remodeling, etc.). The subject was noted in average condition upon exterior inspection.

Are there any apparent physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No
If Yes, describe.

There are no apparent external or functional inadequacies noted or reported at time of inspection. Physical depreciation is calculated by the modified age life method.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No If No, describe.

The construction quality is typical for the area.

# Exterior–Only Inspection Residential Appraisal Report

VALU-18-12-1464
File # VALU-18-12-1464

There are **1** comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 329,000 to $ 329,000 .
There are **14** comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 190,000 to $ 299,000 .

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 8890 SW 229th St Cutler Bay, FL 33190 | 8870 SW 229th St Cutler Bay, FL 33190 | | 8928 SW 228th Ln Cutler Bay, FL 33190 | | 8977 SW 227th Ter Cutler Bay, FL 33190 | |
| Proximity to Subject | | 0.07 miles E | | 0.09 miles W | | 0.18 miles NW | |
| Sale Price | $ | | $ 269,000 | | $ 260,000 | | $ 260,000 |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 135.31 sq.ft. | | $ 130.78 sq.ft. | | $ 130.78 sq.ft. | |
| Data Source(s) | | SEF #A10191445;DOM 121 | | SEF #A10200442;DOM 24 | | SEF #A10223042;DOM 35 | |
| Verification Source(s) | | Assessor, Realist | | Assessor, Realist | | Assessor, Realist | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | ArmLth | | ArmLth | | ArmLth | |
| Concessions | | Conv;0 | | Cash;0 | | Conv;0 | |
| Date of Sale/Time | | s06/17;c04/17 | | s02/17;c01/17 | | s04/17;c03/17 | |
| Location | Residential | Residential | | Residential | | Residential | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 2337 sf | 2337 sf | | 2337 sf | | 2337 sf | |
| View | Preserves | Preserves | | Preserves | | Residential | +5,000 |
| Design (Style) | Traditional | Traditional | | Traditional | | Traditional | |
| Quality of Construction | Average | Average | | Average | | Average | |
| Actual Age | 8 | 11 | | 10 | | 10 | |
| Condition | Average | Average | | Average | | Average | |
| Above Grade | Total / Bdrms. / Baths | Total / Bdrms. / Baths | | Total / Bdrms. / Baths | | Total / Bdrms. / Baths | |
| Room Count | 6 / 3 / 2.1 | 6 / 3 / 2.1 | | 6 / 3 / 2.1 | | 6 / 3 / 2.1 | |
| Gross Living Area | 1,988 sq.ft. | 1,988 sq.ft. | | 1,988 sq.ft. | | 1,988 sq.ft. | |
| Basement & Finished | No Basement | No Basement | | No Basement | | No Basement | |
| Rooms Below Grade | None | None | | None | | None | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | EFA/CAC | EFA/CAC | | EFA/CAC | | EFA/CAC | |
| Energy Efficient Items | None | None | | None | | None | |
| Garage/Carport | 2-Car Garage | 2-Car Garage | | 2-Car Garage | | 2-Car Garage | |
| Porch/Patio/Deck | Patio/Porch | Patio/Porch | | Patio/Porch | | Patio/Porch | |
| Net Adjustment (Total) | | ☐ + ☐ - | $ | ☐ + ☐ - | $ | ☒ + ☐ - | $ 5,000 |
| Adjusted Sale Price | | Net Adj. 0.0 % | | Net Adj. 0.0 % | | Net Adj. 1.9 % | |
| of Comparables | | Gross Adj. 0.0 % | $ 269,000 | Gross Adj. 0.0 % | $ 260,000 | Gross Adj. 1.9 % | $ 265,000 |

☒ I did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s) MIAMI MLS, Miami-Dade County Records, and Realist
My research ☐ did ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s) MIAMI MLS, Miami-Dade County Records, and Realist
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | | | | |
| Data Source(s) | MLS, Assessor, Realist | MLS, Assessor, Realist | MLS, Assessor, Realist | MLS, Assessor, Realist |
| Effective Date of Data Source(s) | 11/16/2017 | 11/16/2017 | 11/16/2017 | 11/16/2017 |

Analysis of prior sale or transfer history of the subject property and comparable sales 8928 SW 228th Ln has no 12-month prior transfer history. 8977 SW 227th Ter has no 12-month prior transfer history. 8870 SW 229th St has no 12-month prior transfer history.

Summary of Sales Comparison Approach See Attached Addendum.

Indicated Value by Sales Comparison Approach $ 265,000

Indicated Value by: Sales Comparison Approach $ 265,000 Cost Approach (if developed) $ Income Approach (if developed) $

see attached addendum.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair: No special conditions are noted.

Personal property is not included in this valuation.
Based on a visual inspection of the exterior areas of the subject property from at least the street, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 265,000 , as of 11/16/2017 , which is the date of inspection and the effective date of this appraisal.

**Exterior–Only Inspection Residential Appraisal Report**

VALU-18-12-1464
File # VALU-18-12-1464

| | |
|---|---|
| PLEASE ATTACHED ADDENDUM FOR FURTHER INFORMATION | |

**ADDITIONAL COMMENTS**

---

**COST APPROACH TO VALUE (not required by Fannie Mae)**

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)   Site value is estimated and/or supported by the
sales comparison approach whenever data is available, otherwise extraction method is used.

| ESTIMATED ☐ REPRODUCTION OR ☐ REPLACEMENT COST NEW | OPINION OF SITE VALUE | ..... =$ 20,000 |
|---|---|---|
| Source of cost data   N/A | DWELLING   1,988 Sq.Ft. @ $ | ..... =$ |
| Quality rating from cost service   N/A   Effective date of cost data   N/A | Sq.Ft. @ $ | ..... =$ |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | ..... =$ |
| The cost approach was not applied as the area is fully built up and there | Garage/Carport   Sq.Ft. @ $ | ..... =$ |
| is no vacant land available, except where an existing house will be torn | Total Estimate of Cost-New | ..... =$ |
| down.  Although the Cost Approach could be considered an applicable | Less   Physical   Functional   External | |
| approach to value, it is not typically relied upon by market participants | Depreciation | =$( ) |
| for one to four family properties. | Depreciated Cost of Improvements | =$ |
| | "As-is" Value of Site Improvements | =$ |
| Estimated Remaining Economic Life (HUD and VA only)   52 Years | INDICATED VALUE BY COST APPROACH | =$ |

**INCOME APPROACH TO VALUE (not required by Fannie Mae)**

| Estimated Monthly Market Rent $   1,900   X Gross Rent Multiplier | = $ | Indicated Value by Income Approach |
|---|---|---|
| Summary of Income Approach (including support for market rent and GRM)   The income approach is not applicable to this report as homes in the area are | | |
| typically owner occupied. | | |

**PROJECT INFORMATION FOR PUDs (if applicable)**

Is the developer/builder in control of the Homeowners' Association (HOA)?   ☐ Yes   ☒ No   Unit type(s)   ☐ Detached   ☒ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

| Total number of phases | Total number of units | Total number of units sold |
|---|---|---|
| Total number of units rented | Total number of units for sale | Data source(s) |

Was the project created by the conversion of existing building(s) into a PUD?   ☐ Yes   ☐ No   If Yes, date of conversion

Does the project contain any multi-dwelling units?   ☐ Yes   ☐ No   Data Source(s)

Are the units, common elements, and recreation facilities complete?   ☐ Yes   ☐ No   If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?   ☐ Yes   ☐ No   If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

**Exterior-Only Inspection Residential Appraisal Report**

VALU-18-12-1464
File # VALU-18-12-1464

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

SCOPE OF WORK: The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a visual inspection of the exterior areas of the subject property from at least the street, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

The appraiser must be able to obtain adequate information about the physical characteristics (including, but not limited to, condition, room count, gross living area, etc.) of the subject property from the exterior-only inspection and reliable public and/or private sources to perform this appraisal. The appraiser should use the same type of data sources that he or she uses for comparable sales such as, but not limited to, multiple listing services, tax and assessment records, prior inspections, appraisal files, information provided by the property owner, etc.

INTENDED USE: The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

INTENDED USER: The intended user of this appraisal report is the lender/client.

DEFINITION OF MARKET VALUE: The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS: The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

3. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

4. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

5. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Form 2055 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

**Exterior-Only Inspection Residential Appraisal Report**

VALU-18-12-1464
File # VALU-18-12-1464

APPRAISER'S CERTIFICATION:     The   Appraiser   certifies   and   agrees   that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this   appraisal   report.

2. I performed a visual inspection of the exterior areas of the subject property from at least the street. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property   and   the   comparable   sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the   sale   or   financing   of   the   subject   property.

11. I have   knowledge   and   experience   in   appraising   this   type   of   property   in   this   market   area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable   sources   that   I   believe   to   be   true   and   correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability   of   the   subject   property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements   and   information   in   this   appraisal   report   are   true   and   correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage   loan   application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility   for   it.

Form 2055 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

**Exterior-Only Inspection Residential Appraisal Report**

VALU-18-12-1464
File # VALU-18-12-1464

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

SUPERVISORY APPRAISER'S CERTIFICATION:    The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature *Carlos Fong* | Signature |
| Name  Carlos Fong | Name |
| Company Name  Valucentric LLC | Company Name |
| Company Address  7908 Montecito Pl, Delray Beach, FL 33446 | Company Address |
| Telephone Number  (844) 825-8236 | Telephone Number |
| Email Address  info@valucentric.com | Email Address |
| Date of Signature and Report  02/10/2019 | Date of Signature |
| Effective Date of Appraisal  11/16/2017 | State Certification # |
| State Certification #  RD 6782 | or State License # |
| or State License # | State |
| or Other (describe)  State # | Expiration Date of Certification or License |
| State  FL | |
| Expiration Date of Certification or License  11/30/2020 | SUBJECT PROPERTY |
| ADDRESS OF PROPERTY APPRAISED | ☐ Did not inspect exterior of subject property |
| 8890 SW 229th St | ☐ Did inspect exterior of subject property from street |
| Miami, FL 33190 | Date of Inspection |
| APPRAISED VALUE OF SUBJECT PROPERTY $  265,000 | COMPARABLE SALES |
| LENDER/CLIENT | |
| Name | ☐ Did not inspect exterior of comparable sales from street |
| Company Name  Integra Realty Resources (IRR) - Miami | ☐ Did inspect exterior of comparable sales from street |
| Company Address | Date of Inspection |
| Email Address | |

Form 2055 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

# SINGLE FAMILY COMPARABLE RENT SCHEDULE

File # VALU-18-12-1464

This form is intended to provide the appraiser with a familiar format to estimate the market rent of the subject property. Adjustments should be made only for items of significant difference between the comparables and the subject property.

| ITEM | SUBJECT | COMPARABLE NO. 1 | | COMPARABLE NO. 2 | | COMPARABLE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 8890 SW 229th St Cutler Bay, FL 33190 | 8908 SW 229th St Cutler Bay, FL 33190 | | 8952 SW 228th Ln Cutler Bay, FL 33190 | | 8939 SW 228th Ln Cutler Bay, FL 33190 | |
| Proximity to Subject | | 0.05 miles W | | 0.13 miles W | | 0.12 miles NW | |
| Date Lease Begins Date Lease Expires | | 10/17 Unk | | 07/17 Unk | | 11/16 Unk | |
| Monthy Rental | If Currently Rented: $ | $ 1,900 | | $ 1,975 | | $ 1,850 | |
| Less: Utilities Furniture | $ | $ | | $ | | $ | |
| Adjusted Monthly Rent | $ | $ 1,900 | | $ 1,975 | | $ 1,850 | |
| Data Source | MLS,Inspection Assessor,Realist | MLS #A10351387 Assessor, Realist | | MLS #A10308550 Assessor, Realist | | MLS #A10184013 Assessor, Realist | |
| RENT ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. |
| Rent Concessions | | | | | | | |
| Location/View | Residential Preserves | Residential Preserves | | Residential Preserves | | Residential Residential | |
| Design and Appeal | Traditional | Traditional | | Traditional | | Traditional | |
| Age/Condition | 8 Average | 10 Average | | 10 Average | | 10 Average | |
| Above Grade Room Count Gross Living Area | Total 6 Bdrms 3 Baths 2.1 1,988 Sq. Ft. | Total 6 Bdrms 3 Baths 2.1 1,988 Sq. Ft. | | Total 6 Bdrms 3 Baths 2.1 1,988 Sq. Ft. | | Total 6 Bdrms 3 Baths 2.1 1,988 Sq. Ft. | |
| Other (e.g., basement, etc.) | No Basement None | No Basement None | | No Basement None | | No Basement None | |
| Other: | | | | | | | |
| Net Adj. (total) | | [ ] + [ ] − $ | 0 | [ ] + [ ] − $ | 0 | [ ] + [ ] − $ | 0 |
| Indicated Monthly Market Rent | | $ 1,900 | | $ 1,975 | | $ 1,850 | |

Comments on market data, including the range of rents for single family properties, an estimate of vacancy for single family rental properties, the general trend of rents and vacancy, and support for the above adjustments. (Rent concessions should be adjusted to the market, not to the subject property.)  Rentals of comparable style dwellings ranged from $1,800 to $1,900.

Final Reconciliation of Market Rent:   All rentals were taken into the final consideration.  The opinion of market rent is $1,900

I (WE) ESTIMATE THE MONTHLY MARKET RENT OF THE SUBJECT AS OF    11/16/2017    TO BE $    1,900

Appraiser(s)  SIGNATURE  *Carlos Fong*    Review Appraiser  SIGNATURE
NAME   Carlos Fong    (If applicable)   NAME
Certified Residential Appraiser
Date Property Inspected  11/16/2017   Report Signed  02/10/2019    Date Property Inspected    Report Signed
License or Certification #  RD 6782   State  FL    License or Certification #    State
Expiration Date of License or Certification  11/30/2020    Expiration Date of License or Certification
  Review Appraiser  [ ] Did  [ ] Did Not   Inspect Subject Property

Freddie Mac Form 1000 (8/88)    Fannie Mae Form 1007 (8/88)

Form 1007 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

Supplemental Addendum

File No. VALU-18-12-1464

| Borrower | Jose & Adele Miranda | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 8890 SW 229th St | | | | | |
| City | Miami | County | Dade | State | FL | Zip Code 33190 |
| Lender/Client | Integra Realty Resources (IRR) - Miami | | | | | |

**PURPOSE OF APPRAISAL REPORT**

The purpose of this appraisal is to estimate the market value of the subject property as defined herein. The function of the appraisal is to assist the above-named Lender/Client, its successors and/or assigns, in evaluating the subject property for lending purposes. This is a federally regulated transaction. Additional supporting data can be found in our appraiser work file.

It is assumed that the title to this property is good and marketable. No title search has been made, nor have we attempted to determine ownership of the property. The value estimate is given without regard to any questions of title, boundaries, or encroachments. It is assumed that all assessments are paid. We assume the property to be free and clear of liens and encumbrances except as noted.

The legal description, if included herein, should be verified by legal counsel before being relied upon or used in any conveyance or other document.

We are not familiar with any engineering studies made to determine the bearing capacity of the land. Improvements in the area appear to be structurally sound. It is therefore assumed that soil and subsoil conditions are stable unless specifically outlined in this report.

Any exhibits in the report are intended to assist the reader in visualizing the property and its surroundings. The drawings are not intended as surveys and no responsibility is assumed for their cartographic accuracy. Drawings are not intended to be exact in size, scale or detail.

Areas and dimensions of the property were physically measured. If data is furnished by the principal or from plot plans or surveys furnished by the principal, or from public records, we assume it to be reasonably accurate. In the absence of current surveys, land areas may be based upon representations made by the owner's agents or the client. No attempt has been made to render an opinion or determine the status of easements that may exist. No responsibility is assumed for discrepancies that may become evident from a licensed survey of the property.

The value estimate involves only the real estate and all normal building equipment if any improvements are involved. No consideration was given to personal property, (or special equipment), unless stated.

It is assumed that the property is subject to lawful, competent and informed ownership and management unless noted.

Information in this report concerning market data was obtained from buyers, sellers, brokers, attorneys, trade publications or public records. To the extent possible, this information was examined for accuracy and is believed to be reliable. Dimensions, areas or data obtained from others is believed correct; however, no guarantee is made.

Any information, in whatever form, furnished by others is believed to b e reliable; however, no responsibility is assumed for accuracy.

The separate allocations between land and improvements, if applicable, represents our judgment only under the existing utilization of the property. A re-evaluation should be made if the improvements are removed or substantially altered, and the land utilized for another purpose.

All information and comments concerning the location, neighborhood trends, construction quality and costs, loss in value from whatever cause, condition, rents, or any other data for the property appraised herein, represents the estimates and opinions of the appraiser formed after an examination and study of the property.

Any valuation analysis of the income stream has been predicted upon financing conditions as specified herein, which we have reason to believe are currently available for this property. Financing terms and conditions other than those indicated may alter the final value conclusions.

The appraiser is not required to give testimony or appear in court because of having made this appraisal, with reference to the property in question, unless arrangements have been made previously thereto. If the appraiser (s) is subpoenaed pursuant to court order, the client will be required to compensate said appraiser(s) for his/her time at his/her regular hourly rates, plus expenses.

All opinions, as to values stated, are presented as the appraiser's considered opinion based on the information set forth in the report and his experience. We assume no responsibility for changes in market conditions or for the inability of the client or any other party to achieve their desired results based upon the appraised value. Further, some of the assumptions made can be subject to variation depending upon evolving events. We realize some assumptions may never occur and unanticipated events or circumstances may occur. Therefore, actual results achieved during the projection period may vary from those in this report.

The appraisal assignment was not based on developing or reporting predetermined results, or a requested minimum valuation, a specific valuation, or the approval of a loan.

Our analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the requirements of: USPAP Uniform Standards of Professional Appraisal Practice, and SPP-AI Code of Professional Ethics and the Standards of Professional Practice of the Appraisal Institute; and, except as noted in the Scope of Appraisal, in conformity with specific implementation rules of the following agencies:

FIRREA Title XI of the Financial Institutions Reform, Recovery and Enforcement Act and section 5(b) of the Bank Company Holding Act; FRB – Federal Reserve Board; RTC-Resolution Trust Corporation; OTS-Office of Thrift Supervision; FDIC – Federal Deposit Insurance Corporation; OTC – Office of the Comptroller; NCUA – National Credit Union Association.

**THE APPRAISER HAS PREPARED THIS APPRAISAL IN FULL COMPLIANCE WITH THE APPRAISAL INDEPENDENCE REQUIREMENTS AND HAS NOT PERFORMED, PARTICIPATED IN, OR BEEN ASSOCIATED WITH ANY ACTIVITY IN VIOLATION OF AIR.**

**AT THE REQUEST OF THE CLIENT, THIS APPRAISAL REPORT HAS BEEN PREPARED IN COMPLIANCE WITH THE**

## Supplemental Addendum

File No. VALU-18-12-1464

| Borrower | Jose & Adele Miranda | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 8890 SW 229th St | | | | | | |
| City | Miami | County | Dade | | State | FL | Zip Code | 33190 |
| Lender/Client | Integra Realty Resources (IRR) - Miami | | | | | | |

**UNIFORM APPRAISAL DATASET (UAD) FROM FANNIE MAE AND FREDDIE MAC. THE UAD REQUIRES THE APPRAISER TO USE STANDARDIZED RESPONSES THAT INCLUDE SPECIFIC FORMATS, DEFINITIONS, ABBREVIATIONS, AND ACRONYMS.**

We do not authorize the out-of-context quoting from or partial reprinting of this appraisal report.  Further, neither all nor any part of the contents of this report (especially any conclusions as to value, the identity of the appraiser nor the name of the firm which he is connected, shall be reproduced, published, or disseminated to the public through advertising media, public relations media, news media, or another public means of communication, without the prior written consent of the appraiser signing this report.

Adobe's Distiller software or equivalent may be utilized by appraiser to transmit this encrypted PDF-formatted appraisal.  At a minimum, the software contains the following security measure:

- identifies transmission error during the transmission process, and confirms date, time and quantity of data submitted by appraiser and the date, time and quantity of data received by the Client, and/or its assigns and
- secures data from editing by means of a password, hardware device, or other means that remains in the sole control of the transmitting appraiser.

**THIRTY SIX MONTH LISTING HISTORY**

We are not aware of any prior listings pertaining to the subject property in the past three years as researched through the local Multiple Listing Service.

**NEIGHBORHOOD MARKET CONDITIONS**

No discounts, buy downs or other concessions were noted.  Current 30 year fixed rate financing at 4.5 - 5.5% and 0-2 points.

Stricter Lending Standards and the availability of Mortgage Capital may affect the average sales prices in the area, however, given the market data analyzed by the appraiser, there are no fiscal or economic trends expected to occur that would significantly impact the relatively stable market currently experienced in this neighborhood.

Neighborhood conditions can be found in detail in the attached 1004MC form.

**SITE COMMENTS**

This site is very typical of the neighborhood in terms of size, topography, view and general appeal.  It provides a suitable setting for the improvements and is consistent with market expectations in this price range.  Statements regarding zoning compliance are intended only in the most general sense.  Zoning and building ordinances vary significantly from one municipality to another and can be extremely detailed.  The scope of this assignment does not include a comparison of every potentially significant characteristic of the subject property's site and improvements relative to zoning and building ordinances.  Unless otherwise noted, standard utility and right-of-way easements are insignificant to value.  However, a current locational or boundary survey or title report may reveal encroachments, easements, zoning violations or other matters of interest that could warrant modification of the appraised value.

**COMMENTS REGARDING HIGHEST AND BEST USE**

In compliance with USPAP the following is included in the appraisal;
•	The current use of the real estate as of the date of value is Residential as described in the improvements section of this appraisal.

•	The use of the real estate reflected in this appraisal is as currently improved

•	The rationale and support for the opinion of highest and best use developed for this assignment is as per below:
Highest and Best Use is defined as "The reasonably probable and legal use of vacant land or an improved property that is physically possible, appropriately supported, financially feasible, and that results in the highest value. The four criteria the highest and best use must meet are legal permissibility, physical possibility, financial feasibility, and maximum productivity. Alternatively, the probable use of land or improved property-specific with respect to the user and timing of the use-that is adequately supported and results in the highest present value"
Source: Appraisal Institute, The Dictionary of Real Estate Appraisal, 5th ed. (Appraisal Institute, 2010).
The highest and best use analysis is a critical step in the valuation process.  The comparable properties incorporated into the appraisal are directly affected by the highest and best use analysis. The analysis is based on the use that a hypothetical purchaser would make of the property based on the four tests cited above:
•	Legally Permissible
•	Physically Possible
•	Financially Feasible
•	Maximally Productive

After consideration of the above criteria it has been determined that the current improvements continue to contribute to the total market value of the property and the return from a new improvement would not currently offset the cost of demolishing the existing improvements and constructing a new one.   Therefore, the highest and best use is as improved.

**COMMENTS ON SALES COMPARISON APPROACH**

All comparables provided strong support.  The most weight, and opinion of value fell on comparables 1, and 2, for requiring zero adjustments.

Comparables were adjusted for their differences in views.  No gross living area adjustments were warranted as all comparable dwellings were within 100 square feet of the subject property.  No age adjustments were warranted as all comparables were noted in similar overall condition.

## Supplemental Addendum

File No. VALU-18-12-1464

| Borrower | Jose & Adele Miranda | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 8890 SW 229th St | | | | | |
| City | Miami | County | Dade | State | FL | Zip Code | 33190 |
| Lender/Client | Integra Realty Resources (IRR) - Miami | | | | | |

It should be noted that the estimated value of the subject exceeds the predominate value in the subject neighborhood. This will not have a negative effect on the marketability of the subject property. The subject property is in no way an over improvement for the market area.

ALL ADJUSTMENTS WERE DERIVED FROM THE SUBJECT MARKET AND THE APPRAISERS EXPERTISE IN THE MARKET PLACE.

I performed this appraisal in accordance with the requirements of Title XI of the Financial Institution Reform, Recovery and Enforcement Act of 1989, (12 U.S.C.3331 et seq.), and any implementing regulations.

All comparables are located within the subject's neighborhood boundaries. No geographic boundaries were crossed.

**RECONCILIATION**

The sales comparison approach was considered most applicable for the subject property because a typical buyer or seller would most readily understand and apply this approach. The income approach was not considered applicable due to the fact that the majority of housing stock in the area is owner occupied and not typically used for investment property. The cost approach was not completed due the subjectivity in estimating depreciation and because the typical buyer does not base price points on the cost approach. The quality of available data utilized in the Sales comparison Approach was considered adequate.

**EXTERIOR INSPECTION ADDENDA**

The appraiser has been requested to perform an appraisal based on an exterior only inspection and not to disturb the occupants by entering the building. The physical characteristics used to develop this appraisal are based on the assessment records of Dade County, Florida and on the multiple listing service. The subject property was observed from the public street as of the effective date of the appraisal. On the basis of the observed conditions, the assessment records and multiple listing service information appear to be accurate. For the purposes of this appraisal, it is assumed that the interior condition of the subject property is consistent with the exterior conditions as observed and that the information concerning the interior condition as provided by the assessor's records and the multiple listing service is accurate.

**PHYSICAL DEFICIENCIES OR ADVERSE CONDITIONS**

Unless otherwise stated in this report, the existence of hazardous material and/or electromagnetic emission, which may or may not be present on the property, was not observed by the appraiser. The appraiser has no such knowledge of the existence of such materials on or in the subject property, or in the properties of the subject neighborhood. The appraiser is not qualified to detect such substances. The presence of such substances as asbestos, urea formaldehyde foam insulation, radon, mold, or other potentially hazardous material may affect the value of the property. The value estimate expressed is predicated on the assumption that there is no such material in or on the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The customer is urged to retain an expert in this field.

Dwellings built prior to 1978 may contain lead-based paint.

**MOLD**

The appraiser is not a home or environmental inspector. The appraiser provides an opinion of value. The appraisal does not guarantee that the property is free of defects or environmental problems. The appraiser performs an inspection of visible and accessible areas only. Mold may be present in areas the appraiser cannot see. A professional home inspection or environmental inspection is recommended.

**CONCLUSION**

This is an Appraisal Report which is intended to comply with the reporting requirements set forth under Standards Rule 2-2(a) of the Uniform Standards of Professional Appraisal Practice for an Appraisal Report. As such, it presents only minimal discussions of the data, reasoning, and analyses that were used in the appraisal process to develop the appraiser's opinion of value. Supporting documentation concerning the data, reasoning, and analyses is retained in the appraiser's file. The depth of discussion contained in this report is specific to the needs of the client and for the intended use stated herein. The appraiser is not responsible for unauthorized use of this report.

## Subject Photo Page

| Borrower | Jose & Adele Miranda | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 8890 SW 229th St | | | | | | |
| City | Miami | County | Dade | | State | FL | Zip Code | 33190 |
| Lender/Client | Integra Realty Resources (IRR) - Miami | | | | | | |



**Subject Front**

| | |
|---|---|
| 8890 SW 229th St | |
| Sales Price | |
| Gross Living Area | 1,988 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.1 |
| Location | Residential |
| View | Preserves |
| Site | 2337 sf |
| Quality | Average |
| Age | 8 |

**Subject Rear**



**Subject Street**

## Comparable Photo Page

| Borrower | Jose & Adele Miranda | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 8890 SW 229th St | | | | | | |
| City | Miami | | County | Dade | | State | FL | Zip Code | 33190 |
| Lender/Client | Integra Realty Resources (IRR) - Miami | | | | | | |



### Comparable 1

8870 SW 229th St

| | |
|---|---|
| Prox. to Subject | 0.07 miles E |
| Sales Price | 269,000 |
| Gross Living Area | 1,988 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.1 |
| Location | Residential |
| View | Preserves |
| Site | 2337 sf |
| Quality | Average |
| Age | 11 |



### Comparable 2

8928 SW 228th Ln

| | |
|---|---|
| Prox. to Subject | 0.09 miles W |
| Sales Price | 260,000 |
| Gross Living Area | 1,988 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.1 |
| Location | Residential |
| View | Preserves |
| Site | 2337 sf |
| Quality | Average |
| Age | 10 |



### Comparable 3

8977 SW 227th Ter

| | |
|---|---|
| Prox. to Subject | 0.18 miles NW |
| Sales Price | 260,000 |
| Gross Living Area | 1,988 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.1 |
| Location | Residential |
| View | Residential |
| Site | 2337 sf |
| Quality | Average |
| Age | 10 |

# Rental Photo Page

| Borrower | Jose & Adele Miranda | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 8890 SW 229th St | | | | | |
| City | Miami | County | Dade | State | FL | Zip Code 33190 |
| Lender/Client | Integra Realty Resources (IRR) - Miami | | | | | |



### Rental 1

8908 SW 229th St
| | |
|---|---|
| Proximity to Subject | 0.05 miles W |
| Adj. Monthly Rent | 1,900 |
| Gross Living Area | 1,988 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.1 |
| Location | Residential |
| View | Preserves |
| Condition | Average |
| Age/Year Built | 10 |



### Rental 2

8952 SW 228th Ln
| | |
|---|---|
| Proximity to Subject | 0.13 miles W |
| Adj. Monthly Rent | 1,975 |
| Gross Living Area | 1,988 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.1 |
| Location | Residential |
| View | Preserves |
| Condition | Average |
| Age/Year Built | 10 |



### Rental 3

8939 SW 228th Ln
| | |
|---|---|
| Proximity to Subject | 0.12 miles NW |
| Adj. Monthly Rent | 1,850 |
| Gross Living Area | 1,988 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.1 |
| Location | Residential |
| View | Residential |
| Condition | Average |
| Age/Year Built | 10 |

## Assessor Map

| Borrower | Jose & Adele Miranda | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 8890 SW 229th St | | | | | | |
| City | Miami | County | Dade | | State | FL | Zip Code | 33190 |
| Lender/Client | Integra Realty Resources (IRR) - Miami | | | | | | |



**Location Map**

| Borrower | Jose & Adele Miranda | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 8890 SW 229th St | | | | | | |
| City | Miami | County | Dade | | State | FL | Zip Code | 33190 |
| Lender/Client | Integra Realty Resources (IRR) - Miami | | | | | | |



## Subject Aerial Map

| Borrower | Jose & Adele Miranda | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 8890 SW 229th St | | | | | | |
| City | Miami | County | Dade | | State | FL | Zip Code | 33190 |
| Lender/Client | Integra Realty Resources (IRR) - Miami | | | | | | |



## Assessor Data

| Borrower | Jose & Adele Miranda | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 8890 SW 229th St | | | | | | |
| City | Miami | County | Dade | | State | FL | Zip Code | 33190 |
| Lender/Client | Integra Realty Resources (IRR) - Miami | | | | | | |



1/2/2019      Property Search Application - Miami-Dade County

# OFFICE OF THE PROPERTY APPRAISER

## Summary Report

Generated On : 1/2/2019

### Property Information

| Folio: | 36-6016-017-0390 |
|---|---|
| Property Address: | 8890 SW 229 ST<br>Cutler Bay, FL 33190-1959 |
| Owner | ALDO AMORETTI<br>GILDA FRANCHESKA MATTEI<br>HADDOCK |
| Mailing Address | 8890 SW 229 ST<br>CUTLER BAY, FL 33190 USA |
| PA Primary Zone | 0100 SINGLE FAMILY - GENERAL |
| Primary Land Use | 0410 RESIDENTIAL - TOTAL VALUE<br>: TOWNHOUSE |
| Beds / Baths / Half | 3 / 2 / 1 |
| Floors | 2 |
| Living Units | 1 |
| Actual Area | 2,575 Sq.Ft |
| Living Area | 1,988 Sq.Ft |
| Adjusted Area | 1,988 Sq.Ft |
| Lot Size | 2,337 Sq.Ft |
| Year Built | 2006 |

### Assessment Information

| Year | 2018 | 2017 | 2016 |
|---|---|---|---|
| Land Value | $0 | $0 | $0 |
| Building Value | $0 | $0 | $0 |
| XF Value | $0 | $0 | $0 |
| Market Value | $23,370 | $23,370 | $23,370 |
| Assessed Value | $23,370 | $23,370 | $23,370 |

### Benefits Information

| Benefit | Type | 2018 | 2017 | 2016 |
|---|---|---|---|---|
| Homestead | Exemption | $23,370 | $23,370 | $23,370 |
| Second Homestead | Exemption | $0 | $0 | $0 |

Note: Not all benefits are applicable to all Taxable Values (i.e. County, School Board, City, Regional).

### Short Legal Description

TRELLIS AT BAYSHORE
PB 164-047 T-22057
LOT 2 BLK 8
LOT SIZE 2337 SQ FT
FAU 36 6016 000 0023

### Taxable Value Information

| | 2018 | 2017 | 2016 |
|---|---|---|---|
| **County** | | | |
| Exemption Value | $23,370 | $23,370 | $23,370 |
| Taxable Value | $0 | $0 | $0 |
| **School Board** | | | |
| Exemption Value | $23,370 | $23,370 | $23,370 |
| Taxable Value | $0 | $0 | $0 |
| **City** | | | |
| Exemption Value | $23,370 | $23,370 | $23,370 |
| Taxable Value | $0 | $0 | $0 |
| **Regional** | | | |
| Exemption Value | $23,370 | $23,370 | $23,370 |
| Taxable Value | $0 | $0 | $0 |

### Sales Information

| Previous Sale | Price | OR Book-Page | Qualification Description |
|---|---|---|---|
| 10/02/2018 | $306,500 | 31197-3536 | Qual by exam of deed |
| 05/17/2016 | $208,200 | 30982-4149 | Federal, state or local government agency |
| 01/01/2007 | $302,790 | 25312-0889 | Sales which are qualified |

The Office of the Property Appraiser is continually editing and updating the tax roll. This website may not reflect the most current information on record. The Property Appraiser and Miami-Dade County assumes no liability, see full disclaimer and User Agreement at http://www.miamidade.gov/info/disclaimer.asp

Version:

## MLS Listing Sheet

| Borrower | Jose & Adele Miranda | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 8890 SW 229th St | | | | | | |
| City | Miami | County | Dade | | State | FL | Zip Code | 33190 |
| Lender/Client | Integra Realty Resources (IRR) - Miami | | | | | | |

1/2/2019                                                                 Matrix

🏠 **Listing**

**Single Family**
8890 SW 229th St
CUTLER BAY, FL 33190-1959

| | | | |
|---|---|---|---|
| **MLS#:** | A10517799 | **List Price:** | $315,000 |
| **Rng Price:** | | **Sold Price:** | $306,500 |
| **LLP:** | | **Status:** | Closed Sale |
| **Short Sale:** | No | **REO:** | No |
| **Listing Brkr:** | LKSR01 /LuckyStart Realty, LLC | | |
| **County:** | Miami-Dade County | | |
| **Area:** | 60 | **Auction:** | No |
| **Geo Area:** | | | |
| **Legal:** | ≈TRELLIS AT BAYSHORE PB 164-047 T-22057 LOT 2 BLK 8 LOT SIZE 2337 SQ FT FAU 36 6016 000 0023 COC 25312-0889 01 2007 1 | | |
| **Furnished:** | | | |
| **Bedrooms:** | 3 | **Baths:** | 2/1 |
| **Convert Bed:** | | | |
| **SqFt (Liv):** | ≈1,988 | **Tot SqFt:** | ≈2,575 |
| **SqFt (Adj):** | ≈1,988 | | |
| **Bld Ar/Src:** | | | |
| **Year Built:** | 2006/New Construction | | |
| **Virtual Tour:** | Click Here | | |

### Location Information

| | | | | | |
|---|---|---|---|---|---|
| **Folio#:** | ≈3660160170390 | **Parcel #:** | 0390 | **Model Name:** | |
| **Municipal Code:** | 36 | **Town/Range:** | 60 | **Section:** | 16 |
| **Subdivision #:** | 17 | **Map Coord:** | | **Zoning:** | ≈0100 |
| **Subdivision:** | ≈TRELLIS AT BAYSHORE | **Development:** | | | |
| **Elementary:** | | **Middle:** | | | |
| **High:** | | | | | |
| **Neighborhood:** | | | | | |

### General Information

| | | | | | |
|---|---|---|---|---|---|
| **Type Property:** | Single | **Front Exposure:** | North East | **HOPA:** | No HOPA |
| **For Lease:** | | **For Lease MLS#:** | | **SS Addend:** | |
| **Boat Services:** | | | | | |
| **Style:** | R30-No Pool/No Water | | | | |
| **Garage:** | 2 | | | **Carport:** | |
| **Lot SF:** | ≈2,337 | **Appr Lot Size:** | | | |
| **Parking Desc:** | Covered Parking | | | | |
| **Parking Restr:** | | | | | |
| **Lot Desc:** | Less Than 1/4 Acre Lot | | | | |
| **Waterfront:** | No | | | | |
| **Water Access:** | | | | | |
| **Water Frontage:** | | **View:** | Other View | | |
| **Pool Dim:** | | **Spa:** | | | |
| **Pool:** | No | | | | |
| **Design/Desc:** | Attached/Two Story | | | | |
| **Construction:** | Concrete Block Construction | | | | |
| **Roof Desc:** | Barrel Roof | | | | |
| **Floor:** | Tile Floors, Wood Floors | | | | |

### Remarks

| | |
|---|---|
| **Remarks:** | Great Property with Large master bedroom. Huge closet spaces. Nice private backyard for entertaining and your pets. Close to top schools. Short drive to the Marina. Listed as a three bedroom , and one den that can be used as a forth bedroom, two and a half bathrooms, Upgraded kitchen with quartz counter top, all new SS appliances, new washer and dryer, updated vanities , lots of room and light. Do not let this one pass you by. |

**Driving Directions:**

| | |
|---|---|
| **Broker Remarks:** | Please submit offer and required docs to BOTH jfernandez@luckystarthomes.com & nl@lyacon.com with DU. |

### Rooms

| | |
|---|---|
| **Bedroom Desc:** | Master Bedroom Upstairs, Other |
| **Master Bath:** | |
| **Addition Rooms:** | Den/Library/Office |
| **Dining Desc:** | |
| **ADA Compliant:** | |

### Additional Information

| | |
|---|---|
| **Pets:** | Yes |
| **Pet Rstr:** | Restrictions Or Possible Restrictions |
| **Guest House:** | |
| **# Ceiling Fans:** | |
| **Interior Feat:** | First Floor Entry, Walk-In Closets |

https://sef.mlsmatrix.com/Matrix/Printing/PrintOptions.aspx?c=AAEAAAD*****AQAAAAAAAARAQAAAFQAAAAGAgAAAAQzMzYyBgMAAAABMwY...         1/3

**MLS Listing History**

| Borrower | Jose & Adele Miranda | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 8890 SW 229th St | | | | | | |
| City | Miami | County | Dade | State | FL | Zip Code | 33190 |
| Lender/Client | Integra Realty Resources (IRR) - Miami | | | | | | |

Property History

| RE1/ | | 8890 SW 229th St | | | L - $315,000 |
|---|---|---|---|---|---|
| A10517799 - Closed Sale | | Cutler Bay, FL 33190-1959 | | | C - $306,500 |

MLS#: A10517799    8890 SW 229th St    Single Family

| | Price | Chg Type | Chg Info | Eff Date | Agent ID | Office ID | DOM |
|---|---|---|---|---|---|---|---|
| | $306,500 | CS | ($306,500) | 10/17/2018 | 3398270 | LKSR01 | 22 |
| | $315,000 | PS | A -> PS | 09/04/2018 | 3398270 | LKSR01 | 22 |
| | $315,000 | BOM | T -> A | 08/13/2018 | 3398270 | LKSR01 | 0 |
| | $315,000 | T | A -> T | 08/08/2018 | 3398270 | LKSR01 | 0 |
| | $315,000 | NEW | ACTV -> $315,000 | 08/08/2018 | 3398270 | LKSR01 | 0 |

**License**

| Borrower | Jose & Adele Miranda | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 8890 SW 229th St | | | | | | |
| City | Miami | County | Dade | | State | FL | Zip Code 33190 |
| Lender/Client | Integra Realty Resources (IRR) - Miami | | | | | | |

 RICK SCOTT, GOVERNOR

JONATHAN ZACHEM, SECRETARY



**STATE OF FLORIDA**

**DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION**

**FLORIDA REAL ESTATE APPRAISAL BD**

THE CERTIFIED RESIDENTIAL APPRAISER HEREIN IS CERTIFIED UNDER THE
PROVISIONS OF CHAPTER 475, FLORIDA STATUTES

**FONG, CARLOS RAFAEL**

10601 S.W. 124 ROAD.
MIAMI        FL 33186

**LICENSE NUMBER: RD6782**

**EXPIRATION DATE: NOVEMBER 30, 2020**

Always verify licenses online at MyFloridaLicense.com



Do not alter this document in any form.

This is your license. It is unlawful for anyone other than the licensee to use this document.

# Anthony M. Graziano, MAI, CRE

**Integra Realty Resources**
**Miami/Palm Beach**

Dadeland Centre
9155 S. Dadeland Boulevard
Suite 1208
Miami, FL 33156

T 305.670.0001
F 305.670.2276

irr.com

## Experience

Senior Managing Director of Integra Realty Resources – Miami/Palm Beach.

Mr. Graziano has actively counseled and advised clients on the sale, leasing, valuation, management, and development of commercial real estate assets throughout the northeast and southeast U.S. since 1992.

Mr. Graziano's professional perspective is a blend of his experience and educational background which includes formal training in architecture, urban planning, macro and micro economics, real estate finance, institutional asset management, and land development. His market experience in sales, leasing, management, and valuation disciplines combine to bring practical real world answers to complex planning and development projects. He has been actively involved as a consultant and/or member of a consultant team on various major redevelopment and land use projects for public and private clients over the past 25+ years.

Mr. Graziano has specialized in consulting and valuation assignments for corporate and private clients on a wide array of complex issues related to estate and condemnation matters, title defects, environmental contamination/damages, air rights, partial and fractional interests, contract disputes, and mediation/arbitration disputes. Mr. Graziano's experience in these matters provides a comprehensive framework for effective strategic real estate consulting.

## Professional Activities & Affiliations

Advisory Board Member: Urban Land Institute (ULI) South Florida / Caribbean
Advisory Board Member: University of Miami M+RED Program
Member: Economic Roundtable - Miami Beacon Council (2012-present)
Board of Director: Integra Realty Resources, Inc. (2011-2016)
Chairman of the Board:    Integra Realty Resources, Inc. (2016-present)
Director: South Florida Chapter of the Appraisal Institute (2014-2016)
Board Member: Builders Association of South Florida (BASF) (2014-2016)
Subject Matter Expert (SME): Appraisal Practice Board, Appraisal Foundation
Member: Appraisal Institute (MAI) (2008-Present)
Member: Counselors of Real Estate (CRE) (2007-Present)
National Association of Realtors (REALTOR)
Miami Association of REALTORS Industry Analyst of the Year (2016)
Former Fellow: Royal Institute of Chartered Surveyors (FRICS) (2007-2014)
AI Leadership Development Advisory Council, March 1998 - February 2001
Lifetime Member: National Eagle Scout Association (NESA)

## Licenses

Florida, State-Certified General Real Estate Appraiser, RZ3510
New Jersey, State-Certified General Real Estate Appraiser, RG001261

## Education

University of Miami, Coral Gables, Florida 1988-1992
Degree: Bachelor of Science in Land Development and Planning, School of Architecture

New York University Real Estate Institute, New York, New York 1993-1996
Degree: Master of Science in Real Estate Development and Investment

amgraziano@irr.com    -    305.670.0001 x320



# Anthony M. Graziano, MAI, CRE

**Integra Realty Resources**
**Miami/Palm Beach**

The Douglas Centre
2600 Douglas Road, Suite 801
Coral Gables, FL 33134

T 305.670.0001
F 305.670.2276

irr.com

### Qualified Before Courts & Administrative Bodies

Qualified and accepted as an expert before:
US Bankruptcy Court (Newark, Southern District of Texas, Southern District of Florida)
US Federal District Court (Southern District of Florida)
FL Circuit Court (Miami-Dade, Broward, and Monroe Counties)
NJ State Tax Court
NJ Superior Court - Chancery Division
NJ Superior Court - Law Division
Various municipal planning and zoning boards throughout New Jersey and Florida
Various Taxing Authorities and Boards throughout New Jersey and Florida



amgraziano@irr.com  -  305.670.0001 x320



**Anthony M. Graziano, MAI, CRE, FRICS**

PROFERRED OR DISCLOSED EXPERT WITNESS REPORTS/SETTLEMENTS

| RETENTION DATE | ON BEHALF | IRR FILE # | COURT CASE NO. | COURT / VENUE | CASE NAME | RETAINED BY | TYPE OF CASE |
|---|---|---|---|---|---|---|---|
| 1/2015 | Defendant | 123-2015-0037 | 14-CV-22384 LIU | Miami-Dade County, FL | Ray Benson & Maria Helena V. QBE Insurance Corporation | John A. Camp | Retrospective (2004-2006) analysis of market value claims against insurance company related to property |
| 9/2014 | Defendant | 123-2014-0194 | 13-03084CA 10 | 11th Judicial Circuit Miami-Dade, FL | Manuel Soltero V. Adorno & Yoss, LLP | Kaplan Zeena, LLP | Professional Liability suit against law firm and attorneys for malfeasance in litigation matter. |
| 2/2014 | Plaintiff | 123-2014-0030 | Settled | Carribean Islands | Rainmaker Development V. A&F Bahamas, etal | VLASAC & SHMARUK, LLC | Partnership Dispute between Joint Venture in Carribean development project (golf course, villas, and large-scale marina-commercial-retail development) |
| 1/1/2012 | Defendant | 123-2012-0140 | 42-2012-CA-001065 | Marion County, FL | CSX Transportation, Inc. V. Moshen Saranazi, Faith Ann Safarazi, Proverbium Hldg, LLC, USA & George Albright | NeJame, La Fay, Jancha, Ahmed, Barker, Joshi & Moreno, P.A. | Condemnation of partial interest with damages |
| 7/2012 | Confidential | 123-2012-0076 | Confidential | Broward County, FL | Ft. Lauderdale-Hollywood Int'l Airport Expansion | White & Case, LLP | Value Diminution Study to assist public agency in good faith negotiations based on airport expansion. |
| 6/2012 | Defendant | 123-2012-0070 | 10-49616-CA-40 | Miami-Dade County, FL | CB Entertainment, LLC V. South Beach Ocean Parcel | Kubicki Draper, P.A. | Construction Damages claim |
| 12/2009 | Plaintiff | 109-2009-0443 | Dept. Justice File 90-11-3-5801 | Federal District Court of Virginia | United States vs. Atlantic Wood Industries, Inc. | U.S. Department of Justice | Damages/environmental contamination dispute between United States Navy and responsible party (Atlantic Wood Industries) |



**Anthony M. Graziano, MAI, CRE, FRICS**
IDENTIFIED EXPERT WITNESS TESTIMONY AT DEPOSITION and/or TRIAL

M. Qualis: Graziano: Trial Lists

| RETENTION DATE | ON BEHALF | TRI FILE # | COURT/CASE NO. # | COURT / VENUE | CASE NAME | RETAINED BY | TYPE OF CASE |
|---|---|---|---|---|---|---|---|
| 6/2015 | Plaintiff | 123-2015-0170 | 15-008950-CA-01 | 11th Judicial Circuit Dade County, Florida (Hon. Peter R. Lopez) | Aaron Stauber & Aviva Stauber V. BH 33, LLC | Piedra & Associates, P.A. | Motion to dismiss Lis Pendens in an action to enforce contractual specific performance clause |
| 1/2015 | Defendant | 123-2015-0037 | 14-CV-22364 UU | Southern District of Florida | Ray Benson & Maria Helena Campos V. QBE Insurance Corporation | John Campos | Retrospective (2004-2006) analysis of market value claims against insurance company related to property damage claims arising from Hurricane Wilma |
| 1/2014 | Plaintiff | 123-2015-0031 | Pending | Miami-Dade County | Igor Gen' V. Yacht Club at Portofino Condo Association | Weil Quaranta McGovern, P.A. | Construction defect dispute related to water-intrusion and damage-detrimental conditions analysis of |
| 10/2014 | Plaintiff | 123-2014-0226 | 08-CA-408-P | Monroe County | Ocean Bank V. Lindsack, Monroe County | Ocean Bank | Deficiency claim against borrower on real estate collateral in the Florida Keys (development site plus marine related improvements) |
| 10/2014 | Defendant | 123-2014-0215 | 11-24694 CA 06 | 11th Judicial Circuit Dade County, Florida | Palm-Aire Holdings V. JRGS Investments, LLC, Jorge Garcia-Seriff and Course Drive Investments, LLC | Cole, Scott & Kissane, P.A. | Partnership dispute over valuation issues proximal to a fractured condominium project (retrospective values), and operating agreement dispute |
| 7/2014 | Plaintiff | 123-2014-0194 | 13-016822 CACE 02 | 17th Judicial Circuit Broward County, Florida | Amalia I. Irlanda-Rivera V. Rivera Diagnostic Center, Inc., Oknay Rivera & Yudil Rivero | Amalia I. Irlanda-Rivera | Rent default judgment and market rental and damage analysis associated with lease default. |
| 10/2014 | Defendant | 123-2014-0159 | 2014FLL534 (Pending) | Palm Beach County | Roehm Title Resources Claim | Title Resources Guaranty Company | Title insurance claim related to before and after damage/value diminution analysis based on defined loss-defects not identified by Title Insurance Company |
| 4/2014 | Plaintiff | 123-2014-0117 | 4:14-CV-01077 (Pending) | USA District Court for the Eastern District of Missouri Eastern Division | USA V. GSA-VA St. Louis Property, LLC | Bryan Cave LLP | Condemnation of a possessory interest for a term. Retained as consulting/rebuttal expert |
| 5/2014 | Defendant | 123-2014-0114 | Pending | Miami-Dade County | Euforia Club | Rennert Bogel Mandler & Rodriguez, P.A. | Rent dispute regarding forced relocation of a nightclub, and relevant market rental rate of replacement club space in Miami |
| 4/2014 | Plaintiff | 123-2014-0089 | | Broward County | Pan American Holdings Corp. V. Florida DOT Right of Way (ROW) Acquisition S.R. 7 | Henry Wulf, Esq. | Condemnation for R.O.W. purposes including before and after damage analysis |
| 1/2014 | Debtor | 123-2014-005 | 13-25728-BKC-RAM | US Federal Bankruptcy - Southern District of Florida - Miami Division (Hon. R. Mark) | West Airport Plaza Business Park, LLC | Counsel for the Debtor, Michael D. Seese, Esq. | Fairness Opinion and valuation analysis in conjunction with Debtor's Plan for Reorganization |
| 8/2013 | Defendant | 123-2009-0016 | 02-23922-CA 09 | 11th Judicial Circuit Dade County, Florida | American Educational Enterprises, LLC v. The Board of Trustees of the Internal Improvement Trust Fund | Richard Alayon, Esq. - Alayon and Associates | Economic Damages case associated with an alleged misrepresentation or omission by seller of real property |
| 7/2013 | Plaintiff | 123-2013-0126 | CACE 08057624 (14) | 17th Judicial Circuit Broward County, Florida (Hon. Carlos A. Rodriguez) | Bayview Loan Servicing, LLC v. Kayhan Soodjani; Muhammad Mahmoodi; et al | Bayview Servicing, represented by Tabais, Freedman and Soloff; Stacey Soloff, Esq. | Deficiency judgment on multi-family project (Dewey Street Apartments) |
| 3/2013 | Defendant | 123-2013-0105 | 11-23561 CIV - Rosenbaum | US District Court - Southern District of Florida (Hon. Rosenbaum) | United States of America v. G.K.K. etal | Richard Duvall, Holland and Knight and Jeffrey Nieman, Esq. | Condemnation claim on the 137,779 s.f. Miami Federal Bureau of Investigation (F.B.I.) building; condemnation of a possessory interest (leasehold) |
| 2/2013 | Defendant | 123-2011-0670 | 09-05650 CA 04 | 11th Judicial Circuit Dade County, Florida (Hon. Beth Bloom) | Zenaida Gomez v. City of Pinecrest | Cynthia A. Everett, Cynthia A. Everett, P.A. | Economic damage resulting from temporary taking (seizure) of private residence |
| 1/2013 | Plaintiff | 123-2013-0016 | 12-60950-CIV | US Federal Court - Southern District of Florida | Q Lending, Inc., Equity Financial Group, Inc., and Equity Commercial Group, Inc. v. Travelers Companies, Inc. etal | Heidi Raschke, Butler Pappas etal | Value diminution resulting from alleged mortgage fraud. |
| 11/2012 | Plaintiff | 123-2012-0128 | Pending | 11th Judicial Circuit Dade County, Florida | Ken Wurtenberger, Esq. Vasquez Tax Protest | Ken Wurtenberger, Esq. Kenneth Oxford Ferro | Tax protest of commercial condominium. |
| 10/19/2012 | Plaintiff | 123-2012-0111 | 2011-1107 CA-23 | 11th Judicial Circuit Dade County, Florida (Hon. Stanford Blake) | Renegade at Hialeah Blvd v. Dynatech Engineering | Daniel Levin, Esq. Cole, Scott, Kissane, P.A. | Economic Damages case, diminution in value resulting from prepaid lease modification. |
| 10/12/2012 | Plaintiff | 123-2012-0109 | 11-30189 CA21 | 11th Judicial Circuit Dade County, Florida | Yaffa Yakubov vs. Bayview at Fisher Island No 3 | Craig Minko, Esq. Cole Scott Kissane, P.A. | Market Value estimate of Fisher Island Condominium purchased under right of first refusal, economic damages claimed by Plaintiff due to contract dispute arising from association's exercise of right of first |
| 8/20/2012 | Plaintiff | 123-2010-0012 | CA-02180 CA-25 | 11th Judicial Circuit Dade County, Florida | 7935 NBV, LLC v. Harbour East Development LTD, Mario Egozi, etal | Jose Casal, Esq., Holland and Knight | Deficiency judgment on 32-unit fractured condominium, substitute expert following issuance of RRM-Trigild reports in 2010 and 2012 |
| 8/15/2012 | Disclosed Dual Expert | 123-2012-0072 | | Matrimonial Mediation | Vazquez v. Vazquez Matrimonial Matter | Colon and Mendoza and Robert Hertzberg, P.A. | Retained as a court-appointed third party expert to both parties to appraise (2) marital assets comprised of office, retail, single and multi-family units in FL, TN, NC, and Illinois, Bahamas |
| 7/2012 | Plaintiff | 109-2011-0120 | Pending; 2003-2014 | Tax Court of New Jersey (Hon. Patrick DeMenedia) | BASF Inc., successor Ciba Geigy Inc., vs. Township of Toms River | Phil Genuario, Garippa, etal on behalf of BASF | Challenge to multi-year appeal of $80 Million+ land assessment on contaminated superfund site in Central New Jersey |
| 3/2012 | Plaintiff | 109-2010-0172 | ATL-L-4451-08 | Superior Court of New Jersey, Law Division Atlantic County | Scott Netherlands Inc. vs. State of New Jersey Department of Environmental Protection (NJDEP) | Jay Rhatican, Connell Foley on behalf of Scot Netherlands, Inc. | Challenge to NJDEP permit denial to fill wetlands, deprivation of all reasonable investment backed expectations |
| 7/2/2011 | Defendant | 109-2010-0199 | MER-L-3034-08 | Superior Court of New Jersey Mercer County | 480 Mercer Street, LLP and Bruckener Southern, LLC vs. Hightstown | Anexil Zarro Grimm & Aaron, P.C. Hussam Chater | Litigation-Dispute Resolution - Hightstown Zoning Challenge |
| 12/2009 | Plaintiff | 109-2009-0443 | Dept. Justice File 90-11-3-5801 | Federal District Court of Virginia | United States v s. Atlantic Wood Industries, Inc. | U.S. Department of Justice | Damages/Environmental contamination dispute between United States Navy and responsible party (Atlantic Wood Industries) |
| 12/2009 | Plaintiff | 109-2009-0377 | | Tax Court of New Jersey | Wextrust/HPC Mortgage Fund vs. City of Atlantic City | Cole, Schotz, Meisel, Forman & Leonard, P.A. Carl Rizzo, Esq. | Tax Appeals - To develop an opinion of the market value of the fee simple interest in the property |

**Anthony M. Graziano, MAI, CRE, FRICS**
IDENTIFIED EXPERT WITNESS TESTIMONY AT DEPOSITION and/or TRIAL.

M. Qualis: Graziano: Trial Lists

| RETENTION DATE | ON BEHALF | IRR FILE # | COURT CASE NO | COURT / VENUE | CASE NAME | RETAINED BY | TYPE OF CASE |
|---|---|---|---|---|---|---|---|
| 1/2009 | Secured Creditor | 109-2009-0439 | | US Bankruptcy Court - Southern District of Texas | Erickson Building | Stuart Glick, Esq., Sills, Cummis & Gross | Market Value for Bankruptcy of 140,000 SF corporate campus in Bethesda, Maryland |
| 09/2009 | Plaintiff | 109-2009-0123 | 3035-001 | Tax Court of New Jersey | Bay Head Yacht Club vs. Ocean County Tax Board | John Doyle, Carsuccio, Leone, Dimon, Doyle & Sacks, LLC | Tax Appeal for Bay Head Yacht Club |
| 12/2008 | Plaintiff | 109-2009-XXX | INA (DEPS Pending) | Tax Court of New Jersey | Mirage Atlantic City (MAC) vs. City of Atlantic City | Hank Rovitant, Esq. | Tax Appeal at State Tax Court on 15 acre casino site adjacent to Trump Marina |
| 08/2008 | Defendant | 109-2008-0252 | L-2424-05 | Superior Court of New Jersey Law Division, Middlesex County | The City of South Amboy vs. Lower Main Street Development, LLC & Amboy Aggregates Joint Venture | Bathgate, Wegener, etal | Verified complaint in condemnation |
| 6/2008 | Defendant | 109-2008-345 | C.A. No. OCNL-3361-06 | Superior Court of New Jersey, Law Division Ocean County | Osbourne Associates, Melbourne Associates VI, LLC, Kingsway Realty Profit Share vs. Citta Enterprises Co, JAC Property Management etal and Eckerd Corporation | Francis X. Manning, Esq, Stradley Ronon Stevens & Young & Michael Carmoli, Esq, Partridge Snow and Hahn, both on behalf of | Dispute re: proper valuation of leasehold and sub-lessee's sandwich leasehold interest on damage claim for breach of agreement claim |
| 1/2008 | Defendant | 109-2008-0125- | N/A | American Arbitration Association [testimony at Arbitration conducted by Hon. Eugene Serpentelli] | Toms River Township vs. Citta Geigy Corporation | Mark Troncone, Esq., In-house Counsel to Township of Toms River | Arbitration of environmental damages claim, and counter-claim of appropriateness of zoning on 1,900 acre superfund site. |
| 11/2007 | Defendant | 109-2007-211 | L-008635-06 | Superior Court of New Jersey, Law Division Middlesex County | Kyle Mosteller vs. Gaila Neeman | Frank Canuso, Esq, Hoogland, Longo, Moran and Dunst | Damage claim due to loss of trees and screening between urban properties |
| 6/2007 | Plaintiff | 109-2007-0134 | 3:07-CV-2322 | Superior Court of New Jersey, Chancery Division Monmouth County | Silver Lakes Inc. vs. Township of Freehold Inc. | Christopher Hanlon, Esq, Hanlon and Neiman | Challenge to validity of Rent Control Ordinance as transfer of property rights from Lessor to Lessee |
| 06/2007 | Plaintiff | 109-2007-0173 | | Federal District Court of Virginia | Laurelwood Homes, LLC vs. United States Department of Navy | William A. Shook Esq. | Leasehold interest in the property, breach of lease claim on behalf of leasehold owner (Laurelwood) claiming breach of lease and damages |
| 12/2006 | Defendant | 109-2006-0192 | CAM-L-9731-05 | Superior Court of New Jersey, Chancery Division, Camden County | Brandywine Operating Partnership, LP vs. UFCW Local 56 | Brett Last, Esq, O'Brien, Belland and Bushinsky | Estimate the value of damages to landlord on breach of above-market lease |
| 08/2006 | Defendant | 109-2006-0257 | | Superior Court of New Jersey, Chancery Division Ocean County | County Line & Browns Bridge, Jackson Township | Levin, Shea, Pfeffer, PA, Steven Pfeffer | To develop an opinion of the hypothetical market value of the fee simple interest in the property |
| 02/2006 | Defendant | 109-2006-0044 | OCN-L-2482-04 | Ocean Superior Court, Ocean County Courthouse | Carl Brooks vs. K. Hovanian | Ronan, Tuzzio & Giannone, Linda Olsen | To estimate value diminution in the subject property as a result of various issues asserted by the property owner in conjunction with pending litigation between the property owner and the subject developer K. Hovnanian @ Sea Oaks |
| 10/2005 | Defendant | 109-2005-0315 | OCN-L-1810-5 | Superior Court of New Jersey, Chancery Division Ocean County | Atlantic City Electric Company d/b/a Conectiv Power Delivery, a regulated public utility of the state of New Jersey vs. ACI Manahawkin, LLC, formerly Armstrong | Flaster/Greenberg, PC, R. Oberlander, Esq. | David Compensation for the taking of an easement for construction and maintenance of a 230kv transmission line and tower by Atlantic City Electric |
| 08/2005 | Defendant | 109-2005-0214 | MON-L-2609-05 | Superior Court of New Jersey Law Division Monmouth County | Township of Howell vs. George Harms Construction Co., Inc. etal | Connell & Foley, LLP Kevin Coakley, Esq. | To develop an opinion of the market value of the fee simple estate of the property |
| 08/2003 | Defendant | 109-2003-0292 | | Superior Court of New Jersey Chancery Division, Family Park, Monmouth County | Giuffre vs. Giuffre | Louis & Wolf - Frank A. Louis | To develop an opinion of the market value of the Fee Simple estate of the properties for purposes of equitable distribution of marital assets |
| 07/2003 | Defendant | 109-2003-0203 | OCN-C-78-03 | Superior Court of New Jersey, Chancery Division, Ocean County | West, etal vs. Pompaino, etal | Stephen E. Smith, Esq | To develop an opinion of the diminution in value due to a loss of useable land area |
| 06/2003 | Plaintiff | 109-2003-0101 | OCN-C-316-02 | Superior Court of New Jersey Law Division, Ocean County | Eugene M. Lord vs. Donald W. Rinaldo | Lombardi & Lombard, Scott Telson | To develop an opinion of the market value of the fee simple estate of the property |
| 04/2003 | Plaintiff | 109-2003-0128 | FM-15-468-03-C | Superior Court of New Jersey, Chancery Division, Family Park Ocean County | Vincent Urbank vs. Lisa Urbank | Marianna Pontonero, Esq. | Litigation-Matrimonial |
| 02/2002 | Plaintiff | 109-2002-0055 | | | Shenandoah Mobile Home Park | Windels Marx Lane & Mittendorf, LLP - William Cagney | Inverse Condemnation - Rent Control Ordinance |
| 04/2001 | Claimant | 109-2001-0189 | NJ-2624-00 | Superior Court of New Jersey, Chancery Division | DeForest John Ely and Kimberle A. Ely, h/w | First American Title Insurance Co. Jack Mikis | To derive an opinion of the fair compensation of the fee simple estate, subject to the temporary title encumbrance |
| 03/1999 | Secured Creditors | 109-1999-0062 | | US Bankruptcy Court - District of Newark | Georgetown Apartments | Emmes & Co. Andrew Schwarz | To estimate the market value of the Leased Fee Estate of the property, inclusive of 28 Apartment complexes through NY, NJ, PA, and MD. |
| 12/1997 | Defendant | LKW-257-3186 | FM-15-1465-94 | Superior Court of New Jersey, Chancery Division, Family Park, Ocean County | Lisa Franklin, etal vs. Donald Franklin, etal | Greenbaum, Rowe, Smith, Ravin, Davis & Himmel LLP Robert S. Underhill | Estimating the market value of the leased fee interest |
| 8/1984 | Creditor | HUD-XX | | US Bankruptcy Court - District of Newark | Hudson Marina Association vs. Emmes & Co. | | Bankruptcy Reorganization of 200+ slip failed marina/dockominium complex |



# EXHIBIT F3

**Integra Realty Resources**
Miami/Palm Beach

**Appraisal Report & Post-Remediation Damage Related to Chinese Drywall**

**Nunez, Jeovany**
Hypothetical Market Value "As If" Remediated
8049 W 36th Ave, Unit 4
Hialeah, Miami-Dade County, Florida 33018
Client Reference: 2

**Prepared For:**
Colson Hicks Eidson

**Effective Date of the Appraisal:**
August 22, 2017

**Report Format:**
Appraisal Report

**IRR - Miami/Palm Beach**
File Number: 123-2018-0275





**Nunez, Jeovany**
8049 W 36th Ave, Unit 4
Hialeah, Florida



Integra Realty Resources

Miami
Orlando
Southwest Florida

www.irr.com

| In Miami | In Orlando | In Naples/Sarasota |
|---|---|---|
| Dadeland Centre | The Magnolia Building | Horseshoe Professional Park |
| 9155 South Dadeland Blvd. | 326 N. Magnolia Ave. | 2770 Horseshoe Drive S. |
| Suite 1208 | | Suite 3 |
| Miami, FL 33156 | Orlando, FL 32801 | Naples, FL 34104 |
| (305) 670-0001 | (407) 843-3377 | (239)-643-6888 |

February 10, 2019

Patrick S. Montoya
Partner
Colson Hicks Eidson
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134

SUBJECT:    Hypothetical Market Value "As If" Remediated
Case No 11-22408-Civ-COOKE
United States District Court Southern District of Florida in the matter of
Eduardo and Carmen Amorin, et al. individually and on behalf of others situated
similarly v. Taishan Gypsum Co., LTD., f/k/a Shandong Taiche Dongxin Co. Ltd., et al
Priority Claimant Case at:
Nunez, Jeovany
8049 W 36th Ave, Unit 4
Hialeah, Miami-Dade County, Florida 33018
Client Reference: 2
IRR - Miami/Palm Beach File No. 123-2018-0275

Dear Mr. Montoya:

Integra Realty Resources – Miami/Palm Beach submits the following damage estimate in the referenced property as of the effective date assuming all remediation was completed by an appropriate contractor with experience and credentials in remediating defective drywall.

The report is intended to comply the Uniform Standards of Professional Appraisal Practice (USPAP). It presents summary discussions of the data, reasoning, and analysis that were used in the appraisal process to develop the opinions. Additional information is contained within our workfile.

The findings will form the basis of expert witness testimony in the above referenced case.

Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/02/19 Page 106 of 232
Case 1:11-cv-22408-MGC Document 201-5 Entered on FLSD Docket 05/13/2019 Page 8 of 43

Identification of Subject                                                                                           2

## Identification of Subject

The subject of this report is a residential condominium home configured with 3 bedroom and 2.5 baths with 1,356 SF under air-conditioning. The subject property was built in 2006 and is located in the Shoma Homes Splendido Condominium neighborhood.

## Purpose of the Appraisal

The purpose of the appraisal is to develop an opinion of the diminution in value and related damages, collectively "the damages" as of the effective date of the appraisal, August 22, 2017. The damage estimate assumes the defective drywall remediation was completed and does not consider the cost to cure. The date of the report is February 10, 2019. The appraisal is valid only as of the stated effective date or dates.

## Intended Use and User

The intended use of the appraisal is for litigation purposes. The client, Colson Hicks Eidson and related co-counsel, Plaintiff and the Court are the intended users. Integra Realty Resources – Miami/Palm Beach is not responsible for unauthorized use of this report.

## Most Recent Sale History

The most recent closed sale of the subject is summarized as follows:

| Most Recent Subject Sale (Closed) | |
|---|---|
| Sale Date (Most Recent) | January 1, 2007 |
| Seller | Shoma Homes Splendido |
| Buyer | Nunez, Jeovany |
| Sale Price | $269,990 |
| Recording Instrument Number | 25295-2421 |
| Disposition Details | Original Sale from homebuilder |

To the best of our knowledge, no other sale or transfer of ownership has taken place within a three-year period prior to the effective appraisal date.

The property was foreclosed on in July 2017, which is just prior to our effective date of value. No listing or sale was found subsequent to the foreclosure or effective value date, and it is not clear whether the Chinese Drywall had been remediated at the time of foreclosure.

## Pending Transactions

To the best of our knowledge, the property is not subject to an agreement of sale or an option to buy, nor is it listed for sale, as of the effective appraisal date.

## Definition of Market Value

The following definition of market value is used by agencies that regulate federally insured financial institutions in the United States:

Nunez, Jeovany



Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/02/19 Page 107 of 232
Case 1:11-cv-22408-MGC Document 291-9 Entered on FLSD Docket 05/13/2019 Page 8 of 43

Definition of Retrospective Value Opinion                                                    3

- Buyer and seller are typically motivated;

- Both parties are well informed or well advised, and acting in what they consider their own best interests;

- A reasonable time is allowed for exposure in the open market;

- Payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and

- The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale."

*(12 C.F.R. Part 34.42(g); 55 Federal Register 54696, August 24, 1990, as amended at 57 Federal Register 12202, April 9, 1992, 59 Federal Register 29499, June 7, 1994)*

## Definition of Retrospective Value Opinion

A value opinion effective as of a specified historical date. The term retrospective does not define a type of value. Instead, it identifies a value opinion as being effective at some specific prior date. Value as of a historical date is frequently sought in connection with property tax appeals, damage models, lease renegotiation, deficiency judgements, estate tax, and condemnation. Inclusion of the type of value with this term is appropriate, e.g. "retrospective market value opinion".

*(Source: The Dictionary of Real Estate Appraisal – 6th Edition; Appraisal Institute, 200 W. Madison, Suite 1500, Chicago, IL 60606, www.appraisalinstitute.org)*

## Definition of Hypothetical Condition

1. A condition that is presumed to be true when it is known to be false. (SVP)

2. A condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis. Comment: Hypothetical conditions are contrary to known facts about physical, legal, or economic characteristics of the subject property; or about conditions external to the property, such as market conditions or trends; or about the integrity of date used in an analysis. (USPAP, 2016-2017 ed.)

*(Source: The Dictionary of Real Estate Appraisal – 6th Edition; Appraisal Institute, 200 W. Madison, Suite 1500, Chicago, IL 60606, www.appraisalinstitute.org)*

## Scope of Work

Integra was retained as an expert in the captioned matter of this report to address potential damages related to the subject property, specifically excluding the costs to cure.

Integra was retained to estimate any post remediation damages, and conducted a separate study to determine whether damages persist following defective drywall remediation. The result of that study are outlined within Integra's report entitled "Market Analysis of the Post Remediation Impact of Chinese Drywall on Residential Property Values in Florida." The results of that study are incorporated by reference herein.



Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/02/19 Page 108 of 232
Case 1:11-cv-22408-MGC Document 201-5 Entered on FLSD Docket 05/13/2013 Page 7 of 43

Scope of Work                                                                              4

In addition, our damage model was requested to include a rental value analysis of the Priority Claimant residence, and a determination of the relevant economic damage associated with having to vacate the home for a period of time (and secure alternate living arrangements) during the remediation.  As of the effective date, the claimant would have suffered the damages.

Integra established individual case files on each Priority Claimant residence, and retained professional assistance from qualified residential appraisers in each jurisdiction.  Integra managed the process of these retrospective appraisals, interfaced with the residential appraisers, and reviewed the form appraisals completed on each assignment including review of the comparables, adjustments, and form narrative to establish the market value of the residence unimpaired as of the effective date.

Integra professionals reviewed various materials exchanged as part of this case and considered materials that were relevant to the market valuation.  These materials were downloaded from the attorney's dropbox and are retained within our workfile.

Integra's participation in and review of the final appraised values results in a conclusion of the market value of the home defined as "Hypothetical Market Value" assuming defective drywall had never been identified within the subject property.  This forms the basis of the unimpaired market value as of the effective date.

All properties and comparables were inspected by the local residential appraisers without the benefit of interior inspections.  Adjustments for condition and age at the time of sale are based upon photographs contained within the various MLS databases, paired analysis from amongst the comparables, and for the subject, were based on photos, if available.  In the event a property had not been remediated as of the effective date, we assume average condition for the property in the market as of the effective date.

The damage analysis expressed within this report follows the peer teachings and market accepted processes for damage analysis.  However, the damage analysis only represents a <u>portion of the overall damages</u> because we were specifically requested to exclude the consideration of the costs to cure.  This represents a relevant component of damage in this case for property that factually have not been remediated.

Integra's role was strictly to identify post remediation value damage (sometime referred to a "stigma") and estimate the relevant rental value and moving costs as a proxy for the temporary loss of use during remediation.

## Significant Appraisal Assistance

In addition to Anthony M. Graziano, MAI ,CRE, principal, it is acknowledged that Peter G. Kayworth, Yuliya Georgieva, Joseph Melloni and Paul L. Jones of IRR-Miami/Palm Beach were involved in the assignment consisting of conducting research on the subject and transactions involving comparable properties, performing appraisal analyses and assisting in report writing, under the supervision of the persons signing the report.  The local residential appraisers are also named as providing significant assistance, including exterior inspection of the properties and comparables, application of their local

Nunez, Jeovany



Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/02/19 Page 109 of 232
Case 1:11-cv-22408-MGC Document 201-3 Entered on FLSD Docket 05/13/2019 Page 8 of 43

Highest and Best Use                                                                                           5

knowledge in adjusting and estimating the unimpaired value, and developing the form report valuations incorporated herein.

## Prior Services

USPAP requires appraisers to disclose to the client any other services they have provided in connection with the subject property in the prior three years, including valuation, consulting, property management, brokerage, or any other services. We have not performed any services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

## Valuation Methodology

Appraisers usually consider the use of three approaches to value when developing a market value opinion for real property. These are the cost approach, sales comparison approach, and income capitalization approach. The valuations consider the only relevant approach for residential valuation, the sales comparison analysis. The cost and income approach are not considered relevant.

The sales comparison approach is the most applicable valuation method since there is an active market for similar properties, and sufficient sales data is available for analysis. Additionally, this approach directly considered the prices of alternative properties having similar utility.

## Highest and Best Use

The highest and best use of the subject as if vacant for development of a single-family home which is physically possible, legally permissible as per zoning, financially feasible and maximally productive.

The highest and best use of the subject as improved is for continued use as a single-family home with no other use that could reasonably be expected to provide a higher value to the land as if vacant. The improvements contribute to the over all value to a greater extent than the land value alone, and therefore, continued use as improved concluded to be maximally productive and the highest and best use of the property.

## Conclusion of Value

The Hypothetical market value appraisal as of the effective date, reflective of a traditional form appraisal, is contained within the Addenda of this report. This value us hypothetical since it assumes that defective drywall had never been present at the subject property.

Against this value, we then apply the Post Impairment Discount as a percentage of unimpaired value as developed within the Integra report studying this issue. This represents a compensable damage resulting from the prior existence of defective drywall in the home as of the effective date.

In addition, each appraisal (unimpaired) reflects a rental value analysis as of the effective date. This rental value analysis concludes to the equivalent market rent for the home (unimpaired) and reflects a proxy for the probable actual costs the homeowner would experience by having to move-out of the primary residence during remediation.



Case 2:09-md-02047-EEF-MBN Document 22280-55 Filed 12/02/19 Page 110 of 232
Case 1:11-cv-22408-MGC Document 201-3 Entered on FLSD Docket 05/13/2019 Page 9 of 43

Conclusion of Value                                                                                        6

The homeowner would also have to incur moving /storage costs twice, once before and once after remediation.  Professional packing, moving and storage for an average home is estimated at $1,500 per move, or $3,000 in total.  This amount is added to the loss of use estimate as an additional damage.

This loss of use calculation does not consider the costs of alternative housing or other tangible costs potentially incurred for damages suffered between the date of discovery and the date of value.  These damages, if applicable, are being estimated by a separate expert (Elkins et al). To the extent Elkins posits costs which are duplicative or actual costs that are greater or less, some minor adjustments to Integra's damage model may be required.

The timeframe for remediation (months of actual loss) could vary depending upon the permitting process in the specific community, the availability of labor, and the size of the home.  Integra reviewed a number of transactions that were remediated by investors and found the typical timeframe between purchase of an unremediated home and listing[1] of the home post-remediation to be 3-6 months.

Larger more expansive homes would be expected to take longer to remediate since more materials are required, and in higher-priced homes, supplies would typically be custom-ordered.  Therefore, we apply the following timeframes based on the subject's size and price range:

< $150,000 Home up to 2,000+/- SF              4 months

$150,000 - $750,000 home up to 4,000 SF       6 months

$750,000+ home up over 4,000 SF               9 months

---

[1] The "listing date" is most relevant since a homeowner conducting their own remediation can move back in once the home is ready for sale (ie- coinciding with a final certificate of occupancy).

Nunez, Jeovany



Case 1:09-md-02047-EEF-MBN   Document 22380-55   Filed 12/02/19   Page 11 of 232
Case 1:11-cv-22408-MGC   Document 281-8   Entered on FLSD Docket 05/13/2019   Page 40 of 43

Conclusion of Value                                                                                         7

The following shows our final estimate of damages as of the effective date, and assuming costs to cure (i.e. – to conduct the remediation) have been expended.

**Conclusions of Damage**

| | | |
|---|---|---|
| Hypothetical Value (Unimpaired - Before) | | $200,000 |
| Market Impairment Discount (As if Remediated) | | 10% |
| Post Impairment Damage ($) | | $20,000 |
| **Hypothetical Value As IF Remediated** | | **$180,000** |
| **Post Remediation Damages as of Effective Date** | | **$20,000** |
| Loss of Use: | | |
| Rental Rate ($/Month) | **$1,850** | |
| Moving & Storage Costs | | $3,000 |
| Loss of Use Subject (# Months) | 4x | $7,400 |
| Subject Total | | **$10,400** |
| **Post Remediation Damage** | | **$30,400** |

Note: Does not consider "cost to cure". Assumes remediation was completed by qualified contractor who warranties the work.

Nunez, Jeovany



Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/02/19 Page 112 of 232
Case 1:14-cv-22408-MGC Document 284-3 Entered on FLSD Docket 05/13/2019 Page 41 of 43

Certification                                                                                      8

## Certification

We certify that, to the best of our knowledge and belief:

1.   The statements of fact contained in this report are true and correct.

2.   The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are our personal, impartial, and unbiased professional analyses, opinions, and conclusions.

3.   We have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.

4.   We have not performed any services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

5.   We have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

6.   Our engagement in this assignment was not contingent upon developing or reporting predetermined results.

7.   Our compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

8.   Our analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice as well as applicable state appraisal regulations.

9.   The reported analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute.

10.  The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

11.  Anthony M. Graziano, MAI, CRE did not make a personal inspection of the property that is the subject of this report. Carlos Fong has personally inspected the subject.

12.  Significant real property appraisal assistance was provided by Peter G. Kayworth, Yuliya Georgieva, Joseph Melloni and Paul L. Jones.  Additionally, real estate assistance was provided by various Valucentric employees and subcontractors, including: John Barcelo, Angela Barcelo, Fred Stites, Carlos Fong, Sarah D. Wilson and Rob Baird.

13.  We have experience in appraising properties similar to the subject and are in compliance with the Competency Rule of USPAP.

14.  As of the date of this report, Anthony M. Graziano, MAI, CRE, has completed the continuing education program for Designated Members of the Appraisal Institute.

Anthony M. Graziano, MAI, CRE
Senior Managing Director - Miami
State-Certified General RE Appraiser
FL Certificate # RZ#3510

Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/02/19 Page 113 of 232
Case 1:11-cv-22408-MGC Document 201-8 Entered on FLSD Docket 05/13/2019 Page 42 of 43

Assumptions and Limiting Conditions                                                    9

## Assumptions and Limiting Conditions

This appraisal and any other work product related to this engagement are limited by the following standard assumptions, <u>except as otherwise noted in the report</u>:

1. The title is marketable and free and clear of all liens, encumbrances, encroachments, easements and restrictions. The property is under responsible ownership and competent management and is available for its highest and best use.

2. There are no existing judgments or pending or threatened litigation that could affect the value of the property.

3. There are no hidden or undisclosed conditions of the land or of the improvements that would render the property more or less valuable. Furthermore, there is no asbestos in the property.

4. The revenue stamps placed on any deed referenced herein to indicate the sale price are in correct relation to the actual dollar amount of the transaction.

5. The property is in compliance with all applicable building, environmental, zoning, and other federal, state and local laws, regulations and codes.

6. The information furnished by others is believed to be reliable, but no warranty is given for its accuracy.

This appraisal and any other work product related to this engagement are subject to the following limiting conditions, except as otherwise noted in the report:

1. An appraisal is inherently subjective and represents our opinion as to the value of the property appraised.

2. The conclusions stated in our appraisal apply only as of the effective date of the appraisal, and no representation is made as to the effect of subsequent events.

3. No changes in any federal, state or local laws, regulations or codes (including, without limitation, the Internal Revenue Code) are anticipated.

4. No environmental impact studies were either requested or made in conjunction with this appraisal, and we reserve the right to revise or rescind any of the value opinions based upon any subsequent environmental impact studies. If any environmental impact statement is required by law, the appraisal assumes that such statement will be favorable and will be approved by the appropriate regulatory bodies.

5. Unless otherwise agreed to in writing, we are not required to give testimony, respond to any subpoena or attend any court, governmental or other hearing with reference to the property without compensation relative to such additional employment.

6. We have made no survey of the property and assume no responsibility in connection with such matters. Any sketch or survey of the property included in this report is for illustrative purposes only and should not be considered to be scaled accurately for size. The appraisal covers the property as described in this report, and the areas and dimensions set forth are assumed to be correct.



Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/02/19 Page 114 of 232
Case 1:14-cv-22489-MGC Document 201-8 Entered on FLSD Docket 05/13/2019 Page 43 of 43

Assumptions and Limiting Conditions                                                    10

7.   No opinion is expressed as to the value of subsurface oil, gas or mineral rights, if any, and we have assumed that the property is not subject to surface entry for the exploration or removal of such materials, unless otherwise noted in our appraisal.

8.   We accept no responsibility for considerations requiring expertise in other fields. Such considerations include, but are not limited to, legal descriptions and other legal matters such as legal title, geologic considerations such as soils and seismic stability; and civil, mechanical, electrical, structural and other engineering and environmental matters. Such considerations may also include determinations of compliance with zoning and other federal, state, and local laws, regulations and codes.

9.   The distribution of the total valuation in the report between land and improvements applies only under the reported highest and best use of the property. The allocations of value for land and improvements must not be used in conjunction with any other appraisal and are invalid if so used. The appraisal report shall be considered only in its entirety. No part of the appraisal report shall be utilized separately or out of context.

10.  Neither all nor any part of the contents of this report (especially any conclusions as to value, the identity of the appraisers, or any reference to the Appraisal Institute) shall be disseminated through advertising media, public relations media, news media or any other means of communication (including without limitation prospectuses, private offering memoranda and other offering material provided to prospective investors) without the prior written consent of the persons signing the report.

11.  Information, estimates and opinions contained in the report and obtained from third-party sources are assumed to be reliable and have not been independently verified.

12.  Any income and expense estimates contained in the appraisal report are used only for the purpose of estimating value and do not constitute predictions of future operating results.

13.  If the property is subject to one or more leases, any estimate of residual value contained in the appraisal may be particularly affected by significant changes in the condition of the economy, of the real estate industry, or of the appraised property at the time these leases expire or otherwise terminate.

14.  Unless otherwise stated in the report, no consideration has been given to personal property located on the premises or to the cost of moving or relocating such personal property; only the real property has been considered.

15.  The current purchasing power of the dollar is the basis for the values stated in the appraisal; we have assumed that no extreme fluctuations in economic cycles will occur.

16.  The values found herein are subject to these and to any other assumptions or conditions set forth in the body of this report but which may have been omitted from this list of Assumptions and Limiting Conditions.

17.  The analyses contained in the report necessarily incorporate numerous estimates and assumptions regarding property performance, general and local business and economic conditions, the absence of material changes in the competitive environment and other matters. Some estimates or assumptions, however, inevitably will not materialize, and unanticipated events and circumstances may occur; therefore, actual results achieved during



Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/02/19 Page 115 of 232
Case 1:14-cv-22409-MGC Document 281-8 Entered on FLSD Docket 05/13/2015 Page 14 of 43

Assumptions and Limiting Conditions                                                          11

the period covered by our analysis will vary from our estimates, and the variations may be material.

18. The Americans with Disabilities Act (ADA) became effective January 26, 1992. We have not made a specific survey or analysis of the property to determine whether the physical aspects of the improvements meet the ADA accessibility guidelines. We claim no expertise in ADA issues, and render no opinion regarding compliance of the subject with ADA regulations. Inasmuch as compliance matches each owner's financial ability with the cost to cure the non-conforming physical characteristics of a property, a specific study of both the owner's financial ability and the cost to cure any deficiencies would be needed for the Department of Justice to determine compliance.

19. The appraisal report is prepared for the exclusive benefit of the Client, its subsidiaries and/or affiliates. It may not be used or relied upon by any other party. All parties who use or rely upon any information in the report without our written consent do so at their own risk.

20. No studies have been provided to us indicating the presence or absence of hazardous materials on the subject property or in the improvements, and our valuation is predicated upon the assumption that the subject property is free and clear of any environment hazards including, without limitation, hazardous wastes, toxic substances and mold. No representations or warranties are made regarding the environmental condition of the subject property. Integra Realty Resources – Miami/Palm Beach, Integra Realty Resources, Inc., Integra Strategic Ventures, Inc. and/or any of their respective officers, owners, managers, directors, agents, subcontractors or employees (the "Integra Parties"), shall not be responsible for any such environmental conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because we are not experts in the field of environmental conditions, the appraisal report cannot be considered as an environmental assessment of the subject property.

21. The persons signing the report may have reviewed available flood maps and may have noted in the appraisal report whether the subject property is located in an identified Special Flood Hazard Area. We are not qualified to detect such areas and therefore do not guarantee such determinations. The presence of flood plain areas and/or wetlands may affect the value of the property, and the value conclusion is predicated on the assumption that wetlands are non-existent or minimal.

22. Integra Realty Resources – Miami/Palm Beach is not a building or environmental inspector. Integra Miami/Palm Beach does not guarantee that the subject property is free of defects or environmental problems. Mold may be present in the subject property and a professional inspection is recommended.

23. The appraisal report and value conclusions for an appraisal assume the satisfactory completion of construction, repairs or alterations in a workmanlike manner.

24. It is expressly acknowledged that in any action which may be brought against any of the Integra Parties, arising out of, relating to, or in any way pertaining to this engagement, the appraisal reports, and/or any other related work product, the Integra Parties shall not be responsible or liable for any incidental or consequential damages or losses, unless the appraisal was fraudulent or prepared with intentional misconduct. It is further acknowledged



Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/02/19 Page 116 of 232
Case 1:11-cv-22408-MGC Document 201-8 Entered on FLSD Docket 05/13/2019 Page 15 of 43

Assumptions and Limiting Conditions                                                          12

that the collective liability of the Integra Parties in any such action shall not exceed the fees paid for the preparation of the appraisal report unless the appraisal was fraudulent or prepared with intentional misconduct. Finally, it is acknowledged that the fees charged herein are in reliance upon the foregoing limitations of liability.

25.  Integra Realty Resources – Miami/Palm Beach, an independently owned and operated company, has prepared the appraisal for the specific intended use stated elsewhere in the report. The use of the appraisal report by anyone other than the Client is prohibited except as otherwise provided. Accordingly, the appraisal report is addressed to and shall be solely for the Client's use and benefit unless we provide our prior written consent. We expressly reserve the unrestricted right to withhold our consent to your disclosure of the appraisal report or any other work product related to the engagement (or any part thereof including, without limitation, conclusions of value and our identity), to any third parties. Stated again for clarification, unless our prior written consent is obtained, no third party may rely on the appraisal report (even if their reliance was foreseeable).

26.  The conclusions of this report are estimates based on known current trends and reasonably foreseeable future occurrences. These estimates are based partly on property information, data obtained in public records, interviews, existing trends, buyer-seller decision criteria in the current market, and research conducted by third parties, and such data are not always completely reliable. The Integra Parties are not responsible for these and other future occurrences that could not have reasonably been foreseen on the effective date of this assignment. Furthermore, it is inevitable that some assumptions will not materialize and that unanticipated events may occur that will likely affect actual performance. While we are of the opinion that our findings are reasonable based on current market conditions, we do not represent that these estimates will actually be achieved, as they are subject to considerable risk and uncertainty. Moreover, we assume competent and effective management and marketing for the duration of the projected holding period of this property.

27.  All prospective value opinions presented in this report are estimates and forecasts which are prospective in nature and are subject to considerable risk and uncertainty. In addition to the contingencies noted in the preceding paragraph, several events may occur that could substantially alter the outcome of our estimates such as, but not limited to changes in the economy, interest rates, and capitalization rates, behavior of consumers, investors and lenders, fire and other physical destruction, changes in title or conveyances of easements and deed restrictions, etc. It is assumed that conditions reasonably foreseeable at the present time are consistent or similar with the future.

Nunez, Jeovany



Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/02/19 Page 117 of 232
Case 1:11-cv-22408-MGC Document 281-3 Entered on FLSD Docket 05/13/2019 Page 46 of 43

Addenda

# Addenda



| Borrower | Jeovany & Monica Nunez | | | | File No. | VALU-18-12-1465 |
|---|---|---|---|---|---|---|
| Property Address | 8049 W 36th Ave | | | | | |
| City | Hialeah | County | Dade | State | FL | Zip Code 33018 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | |

## TABLE OF CONTENTS



USPAP Identification Addendum .................................................................................................. 1
Exterior-Only Condo .................................................................................................................. 2
Additional Comparables 4-6 ....................................................................................................... 8
Single Family Comparable Rent Schedule ................................................................................... 9
General Text Addendum ............................................................................................................. 10
Subject Photos ......................................................................................................................... 13
Comparable Photos 1-3 ............................................................................................................. 14
Comparable Photos 4-6 ............................................................................................................. 15
Rental Photos 1-3 ..................................................................................................................... 16
Subject Aerial Map .................................................................................................................... 17
Location Map ............................................................................................................................. 18
Assessor Data ........................................................................................................................... 19
Tax Information ......................................................................................................................... 20
License ...................................................................................................................................... 21

## USPAP ADDENDUM

File No. VALU-18-12-1465
VALU-18-12-1465

| Borrower | Jeovany & Monica Nunez | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 8049 W 36th Ave | | | | | |
| City | Hialeah | County | Dade | State | FL | Zip Code 33018 |
| Lender | Integra Realty Resources (IRR) | | | | | |

This report was prepared under the following USPAP reporting option:

[X] Appraisal Report      This report was prepared in accordance with USPAP Standards Rule 2-2(a).

[ ] Restricted Appraisal Report      This report was prepared in accordance with USPAP Standards Rule 2-2(b).

**Reasonable Exposure Time**

My opinion of a reasonable exposure time for the subject property at the market value stated in this report is: _____

EXPOSURE TIME: estimated length of time that the property interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of the appraisal.

USPAP 2018-19 Comment: Exposure time is a retrospective opinion based on an analysis of past events assuming a competitive and open market

**Additional Certifications**

I certify that, to the best of my knowledge and belief:

[X] I have NOT performed services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

[ ] I HAVE performed services, as an appraiser or in another capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment. Those services are described in the comments below.

- The statements of fact contained in this report are true and correct.
- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.
- Unless otherwise indicated, I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.
- I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.
- My engagement in this assignment was not contingent upon developing or reporting predetermined results.
- My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice that were in effect at the time this report was prepared.
- Unless otherwise indicated, I have made a personal inspection of the property that is the subject of this report.
- Unless otherwise indicated, no one provided significant real property appraisal assistance to the person(s) signing this certification (if there are exceptions, the name of each individual providing significant real property appraisal assistance is stated elsewhere in this report).

**Additional Comments**

APPRAISER COMPETENCY

An appraiser must determine, prior to accepting an assignment, that he or she can perform the assignment competently. Competency requires:

1. the ability to properly identify the problem to be addressed; and
2. the knowledge and experience to complete the assignment competently; and
3. recognition of, and compliance with, laws and regulations that apply to the appraiser or to the assignment.

I am competent to perform this assignment based on my state appraiser license and familiarity with this type of property in the subject market

I performed this appraisal in accordance with the requirements of Title XI of the Financial Institution Reform, Recovery and Enforcement Act of 1989, (12 U.S.C.3331 et seq.), and any implementing regulations

**APPRAISER:**

Signature: *Carlos Fong*
Name: Carlos Fong
Date Signed: 02/10/2019
State Certification #: RD 6782
or State License #: _____
State: FL
Expiration Date of Certification or License: 11/30/2020
Effective Date of Appraisal: 08/22/2017

**SUPERVISORY APPRAISER: (only if required)**

Signature: _____
Name: _____
Date Signed: _____
State Certification #: _____
or State License #: _____
State: _____
Expiration Date of Certification or License: _____
Supervisory Appraiser Inspection of Subject Property:
[ ] Did Not   [ ] Exterior-only from Street   [ ] Interior and Exterior

**Exterior–Only Inspection Individual Condominium Unit Appraisal Report**

VALU-18-12-1465
File # VALU-18-12-1465

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| SUBJECT | | |
|---|---|---|
| Property Address 8049 W 36th Ave | Unit # 4 City Hialeah | State FL Zip Code 33018 |
| Borrower Jeovany & Monica Nunez | Owner of Public Record Jeovany & Monica Nunez | County Dade |
| Legal Description SHOMA HOMES SPLENDIDO CONDOUNIT 60 BLDG 11UNDIV 1/219INT IN COMMON ELEMENTSOFF REC 24177-2205COC 25295-2421 01 20 | | |
| Assessor's Parcel # 04-2028-106-0600 | Tax Year 2017 | R.E. Taxes $ 2,562 |
| Project Name Shoma Homes Splendido Condo | Phase # | Map Reference 33124 Census Tract 0126.00 |
| Occupant ☐ Owner ☐ Tenant ☒ Vacant | Special Assessments $ 0 | HOA $ 175 ☐ per year ☒ per month |
| Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe) | | |
| Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe) Litigation | | |
| Lender/Client Integra Realty Resources (IRR) Address 9155 South Dadeland Boulevard, Miami, FL 33156 | | |
| Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☐ Yes ☒ No | | |
| Report data source(s) used, offering price(s), and date(s). The subject has not listed or sold for the past 12 months per MIAMI MLS. | | |

| CONTRACT | |
|---|---|
| I ☐ did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed. | |
| Contract Price $ Date of Contract Is the property seller the owner of public record? ☐ Yes ☐ No Data Source(s) | |
| Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☐ No | |
| If Yes, report the total dollar amount and describe the items to be paid. | |

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| NEIGHBORHOOD | Neighborhood Characteristics | | Condominium Unit Housing Trends | | | Condominium Housing | | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|---|
| Location | ☐ Urban ☒ Suburban ☐ Rural | | Property Values ☐ Increasing ☒ Stable ☐ Declining | | | PRICE | AGE | | One-Unit | 85 % |
| Built-Up | ☒ Over 75% ☐ 25-75% ☐ Under 25% | | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | | | $ (000) | (yrs) | | 2-4 Unit | 5 % |
| Growth | ☐ Rapid ☒ Stable ☐ Slow | | Marketing Time ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | | | 139 Low | 0 | | Multi-Family | 5 % |
| Neighborhood Boundaries The subject is bound to the north by Florida's Tpke, to the west by N | | | | | | 345 High | 40 | | Commercial | 5 % |
| Okeechobee Rd, to the east by Hialeah Gardens Blvd and to the south by N Okeechobee Rd. | | | | | | 288 Pred. | 15 | | Other | % |

Neighborhood Description There are no apparent factors that should affect the subject's marketability. The subject has access to all necessary
supporting facilities including schools, shopping, recreation and employment centers.

Market Conditions (including support for the above conclusions) See Attached Addendum

| PROJECT SITE | | |
|---|---|---|
| Topography Typical | Size Typical | Density Typical View N;Res; |
| Specific Zoning Classification R-3-2 | Zoning Description Residential (Medium Density) | |
| Zoning Compliance ☒ Legal ☐ Legal Nonconforming – Do the zoning regulations permit rebuilding to current density? ☐ Yes ☐ No | | |
| ☐ No Zoning ☐ Illegal (describe) | | |
| Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No If No, describe | | |

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | ☐ | Water | ☒ | ☐ | Street Asphalt | ☒ | ☐ |
| Gas | ☒ | ☐ | Sanitary Sewer | ☒ | ☐ | Alley None | | |

| FEMA Special Flood Hazard Area ☒ Yes ☐ No FEMA Flood Zone AH FEMA Map # 12086C0113L FEMA Map Date 9/11/2009 |
|---|
| Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No If No, describe |
| Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc )? ☐ Yes ☒ No If Yes, describe |
| No observed or known adverse influences to market value were noted. |

| PROJECT INFORMATION | | | |
|---|---|---|---|
| Data source(s) for project information Management | | | |
| Project Description ☐ Detached ☒ Row or Townhouse ☐ Garden ☐ Mid-Rise ☐ High-Rise ☐ Other (describe) | | | |

| General Description | | Subject Phase | If Project Completed | If Project Incomplete |
|---|---|---|---|---|
| # of Stories 2 | Exterior Walls CBS | # of Units 200 | # of Phases 200 | # of Planned Phases |
| # of Elevators 0 | Roof Surface Barrel | # of Units Completed 200 | # of Units 200 | # of Planned Units |
| ☒ Existing ☐ Proposed | Total # Parking 200 | # of Units For Sale 0 | # of Units for Sale 0 | # of Units for Sale |
| ☐ Under Construction | Ratio (spaces/units) 1/1 | # of Units Sold 200 | # of Units Sold 200 | # of Units Sold |
| Year Built 2006 | Type Ext | # of Units Rented 100 | # of Units Rented 100 | # of Units Rented |
| Effective Age 8 | Guest Parking Street | # of Owner Occupied Units 100 | # of Owner Occupied Units 100 | # of Owner Occupied Units |

| Project Primary Occupancy ☒ Principle Residence ☐ Second Home or Recreational ☐ Tenant |
|---|
| Is the developer/builder in control of the Homeowners' Association (HOA)? ☐ Yes ☒ No |
| Management Group – ☐ Homeowners' Association ☐ Developer ☒ Management Agent - Provide name of management company. |

Does any single entity (the same individual, investor group, corporation, etc.) own more than 10% of the total units in the project? ☐ Yes ☒ No If Yes, Describe

Was the project created by the conversion of existing building(s) into a condominium? ☐ Yes ☒ No If Yes, describe the original use and date of conversion.

Are the units, common elements, and recreation facilities complete (including any planned rehabilitation for a condominium conversion)? ☒ Yes ☐ No If No, describe

Is there any commercial space in the project? ☐ Yes ☒ No If Yes, describe and indicate the overall percentage of the commercial space.

Form 1075 - "TOTAL" appraisal software by a la mode, inc. – 1-800-ALAMODE

VALU-18-12-1465

**Exterior–Only Inspection Individual Condominium Unit Appraisal Report**  File # VALU-18-12-1465

**PROJECT INFORMATION**

Describe the condition of the project and quality of construction  The project displayed an average level of condition, appeal, and unit mix compared to the other similar developments.

Describe the common elements and recreational facilities.  Water, common insurance, exterior maintenance.

Are any common elements leased to or by the Homeowners' Association?  ☐ Yes  ☒ No  If Yes, describe the rental terms and options.

Is the project subject to a ground rent?  ☐ Yes  ☒ No  If Yes, $ _____ per year (describe terms and conditions)

Are the parking facilities adequate for the project size and type?  ☒ Yes  ☐ No  If No, describe and comment on the effect on value and marketability.

**PROJECT ANALYSIS**

I ☐ did  ☒ did not analyze the condominium project budget for the current year. Explain the results of the analysis of the budget (adequacy of fees, reserves, etc.), or why the analysis was not performed.  Neither a copy of the condominium documents nor a budget was provided to the appraiser.  The appraiser assumes that there was no information which would be detrimental to the marketability of the project.

Are there any other fees (other than regular HOA charges) for the use of the project facilities?  ☐ Yes  ☒ No  If Yes, report the charges and describe.

Compared to other competitive projects of similar quality and design, the subject unit charge appears  ☐ High  ☒ Average  ☐ Low  If High or Low, describe

Are there any special or unusual characteristics of the project (based on the condominium documents, HOA meetings, or other information) known to the appraiser?
☐ Yes  ☒ No  If Yes, describe and explain the effect on value and marketability.

Unit Charge $  175  per month X 12 = $  2,100.00  per year  Annual assessment charge per year per square foot of gross living area = $  1.55

| Utilities included in the unit monthly assessment | ☐ None | ☐ Heat | ☐ Air Conditioning | ☐ Electricity | ☐ Gas | ☒ Water | ☒ Sewer | ☐ Cable | ☐ Other |
|---|---|---|---|---|---|---|---|---|---|

Source(s) used for physical characteristics of property  ☐ Previous Appraisal Files  ☒ MLS  ☒ Assessment and Tax Records  ☐ Prior Inspection  ☐ Property Owner
☐ Other (describe)  Data Source for Gross Living Area  Assessor

**UNIT IMPROVEMENTS**

| General Description | Amenities | Appliances | Car Storage |
|---|---|---|---|
| Floor #  1/2 | ☐ Fireplace(s) #  0 | ☒ Refrigerator | ☐ None |
| # of Levels  1 | ☐ WoodStove(s) #  0 | ☒ Range/Oven | ☐ Garage  ☒ Covered  ☒ Open |
| Heating Type  Elec.  Fuel  Elec. | ☒ Deck/Patio  Patio | ☒ Disp  ☒ Microwave | # of Cars  1 |
| ☒ Central AC  ☐ Individual AC | ☒ Porch/Balcony  Entry | ☒ Dishwasher | ☐ Assigned  ☐ Owned |
| ☐ Other (describe) | ☒ Other | ☒ Washer/Dryer | Parking Space #  N/A |

Finished area **above** grade contains:  6  Rooms  3  Bedrooms  2.1  Bath(s)  1,356  Square Feet of Gross Living Area Above Grade

Are the heating and cooling for the individual units separately metered?  ☒ Yes  ☐ No  If No, describe and comment on compatibility to other projects in the market area.

Additional features (special energy efficient items, etc.)  None

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).  The subject was noted in average condition upon exterior inspection.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property?  ☐ Yes  ☒ No  If Yes, describe
There are no apparent external or functional inadequacies noted or reported at time of inspection.  Physical depreciation is calculated by the modified age life method.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)?  ☒ Yes  ☐ No  If No, describe
The construction quality is typical for the area.

**PRIOR SALE HISTORY**

I ☒ did  ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☐ did  ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s)  MIAMI MLS, Miami-Dade County Records, and Realist
My research ☒ did  ☐ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s)  MIAMI MLS, Miami-Dade County Records, and Realist
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | 03/01/2016 | 09/20/2016 |
| Price of Prior Sale/Transfer | | | 146,500 | 121,300 |
| Data Source(s) | MLS, Assessor, Realist | MLS, Assessor, Realist | MLS, Assessor, Realist | MLS, Assessor, Realist |
| Effective Date of Data Source(s) | 08/22/2017 | 08/22/2017 | 08/22/2017 | 08/22/2017 |

Analysis of prior sale or transfer history of the subject property and comparable sales.  8043 W 36th Ave Unit 6 has no 12-month prior transfer history. 8025 W 36th Ave Unit 2 transferred on 03/01/2016 for $146,500 (Special Warranty Deed - Doc #29981-4036). 8123 W 36th Ave Unit 1 transferred on 09/20/2016 for $121,300 (Certificate Of Title (FI) - Doc #30236-4586).

**Exterior–Only Inspection Individual Condominium Unit Appraisal Report**

VALU-18-12-1465
File # VALU-18-12-1465

| | | |
|---|---|---|
| There are | 35 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 175,000 to $ 395,000 . |
| There are | 23 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 139,000 to $ 345,000 . |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address and Unit # | 8049 W 36th Ave Apt 4 Hialeah, FL 33018 | 8043 W 36th Ave Hialeah, FL 33018 | | 8025 W 36th Ave Hialeah, FL 33018 | | 8123 W 36th Ave Hialeah, FL 33018 | |
| Project Name and Phase | Shoma Homes Splendido C 1 | Shoma Homes Splendido Condo 1 | | Shoma Homes Splendido Condo 1 | | Shoma Homes Splendido Condo 1 | |
| Proximity to Subject | | 0.09 miles SW | | 0.10 miles SW | | 0.06 miles SW | |
| Sale Price | $ | | 235,000 | | 220,000 | | 187,900 |
| Sale Price/Gross Liv. Area | $ sq. ft. | $ 160.52 sq. ft. | | $ 161.76 sq. ft. | | $ 138.06 sq. ft. | |
| Data Source(s) | | SEF #A10215462;DOM 9 | | SEF #A10185832;DOM 9 | | SEF #A10176504;DOM 14 | |
| Verification Source(s) | | Assessor, Realist | | Assessor, Realist | | Assessor, Realist | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing Concessions | | ArmLth FHA;0 | | ArmLth Conv;103 | | REO Conv;0 | |
| Date of Sale/Time | | s03/17;c02/17 | | s01/17;c12/16 | | s01/17;c11/16 | |
| Location | Residential | Residential | | Residential | | Residential | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| HOA Mo. Assessment | 175 | 175 | | 175 | | 170 | |
| Common Elements and Rec. Facilities | Typical for Similar Projects | Typical for Similar Projects | | Typical for Similar Projects | | Typical for Similar Projects | |
| Floor Location | 1/2 | 1/2 | | 1/2 | | 1/2 | |
| View | Residential | Residential | | Residential | | Residential | |
| Design (Style) | Townhouse | Townhouse | | Townhouse | | Townhouse | |
| Quality of Construction | Average | Average | | Average | | Average | |
| Actual Age | 11 | 13 | | 13 | | 13 | |
| Condition | Average | Good | -10,000 | Good | -10,000 | Average | |
| Above Grade | Total / Bdrms. / Baths | Total / Bdrms. / Baths | | Total / Bdrms. / Baths | | Total / Bdrms. / Baths | |
| Room Count | 6 / 3 / 2.1 | 7 / 4 / 3.0 | -5,000 | 6 / 3 / 2.0 | +5,000 | 6 / 3 / 2.0 | +5,000 |
| Gross Living Area | 1,356 sq. ft. | 1,464 sq. ft. | -4,300 | 1,360 sq. ft. | | 1,361 sq. ft. | |
| Basement & Finished Rooms Below Grade | No Basement None | No Basement None | | No Basement None | | No Basement None | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | EFA/CAC | EFA/CAC | | EFA/CAC | | EFA/CAC | |
| Energy Efficient Items | None | None | | None | | None | |
| Garage/Carport | 1 Open Space | 1 Open Space | | 1 Open Space | | 1 Open Space | |
| Porch/Patio/Deck | Patio | Patio | | Patio | | Patio | |
| | | | | | | | |
| | | | | | | | |
| Net Adjustment (Total) | | ☐ + ☒ - | $ -19,300 | ☐ + ☒ - | $ -5,000 | ☒ + ☐ - | $ 5,000 |
| Adjusted Sale Price of Comparables | | Net Adj. 8.2 % Gross Adj. 8.2 % | $ 215,700 | Net Adj. 2.3 % Gross Adj. 6.8 % | $ 215,000 | Net Adj. 2.7 % Gross Adj. 2.7 % | $ 192,900 |
| Summary of Sales Comparison Approach | See Attached Addendum | | | | | | |

Indicated Value by Sales Comparison Approach $ 200,000

**INCOME APPROACH TO VALUE (not required by Fannie Mae)**

Estimated Monthly Market Rent $ 1,850 X Gross Rent Multiplier = $ Indicated Value by Income Approach

Summary of Income Approach (including support for market rent and GRM) N/A

Indicated Value by: Sales Comparison Approach $ 200,000 Income Approach (if developed) $

see attached addendum.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair: No special conditions are noted.

Personal property is not included in this valuation.

Based on a visual inspection of the exterior areas of the subject property from at least the street, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 200,000 , as of 08/22/2017 , which is the date of the exterior inspection and the effective date of this appraisal.

| | | |
|---|---|---|
| Freddie Mac Form 466 March 2005 | Page 3 of 6 | Fannie Mae Form 1075 March 2005 |

Form 1075 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

VALU-18-12-1465

**Exterior-Only Inspection Individual Condominium Unit Appraisal Report**    File # VALU-18-12-1465

This report form is designed to report an appraisal of a unit in a condominium project or a condominium unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

SCOPE OF WORK: The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a visual inspection of the exterior areas of the subject property from at least the street, (2) inspect and analyze the condominium project, (3) inspect the neighborhood, (4) inspect each of the comparable sales from at least the street, (5) research, verify, and analyze data from reliable public and/or private sources, and (6) report his or her analysis, opinions, and conclusions in this appraisal report.

The appraiser must be able to obtain adequate information about the physical characteristics (including, but not limited to, condition, room count, gross living area, etc.) of the subject property from the exterior-only inspection and reliable public and/or private sources to perform this appraisal. The appraiser should use the same type of data sources that he or she uses for comparable sales such as, but not limited to, multiple listing services, tax and assessment records, prior inspections, appraisal files, information provided by the property owner, etc.

INTENDED USE: The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

INTENDED USER: The intended user of this appraisal report is the lender/client.

DEFINITION OF MARKET VALUE: The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS: The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

3. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

4. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

5. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

**Exterior-Only Inspection Individual Condominium Unit Appraisal Report**

APPRAISER'S CERTIFICATION:    The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I have performed a visual inspection of the exterior areas of the subject property from at least the street. I have reported the condition of the improvements in factual, specific terms. I have identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

**Exterior–Only Inspection Individual Condominium Unit Appraisal Report**

VALU-18-12-1465
File # VALU-18-12-1465

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

SUPERVISORY APPRAISER'S CERTIFICATION:     The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature   *Carlos Fong* | Signature |
| Name   Carlos Fong | Name |
| Company Name   Valucentric LLC | Company Name |
| Company Address   7908 Montecito Pl, Delray Beach, FL 33446 | Company Address |
| Telephone Number   (844) 825-8236 | Telephone Number |
| Email Address   info@valucentric.com | Email Address |
| Date of Signature and Report   02/10/2019 | Date of Signature |
| Effective Date of Appraisal   08/22/2017 | State Certification # |
| State Certification #   RD 6782 | or State License # |
| or State License # | State |
| or Other | Expiration Date of Certification or License |
| State   FL | |
| Expiration Date of Certification or License   11/30/2020 | SUBJECT PROPERTY |
| | ☐ Did not inspect subject property |
| ADDRESS OF PROPERTY APPRAISED | ☐ Did inspect exterior of subject property from street |
| 8049 W 36th Ave, # 4 | Date of Inspection |
| 4, Hialeah, FL 33018 | |
| APPRAISED VALUE OF SUBJECT PROPERTY $   200,000 | COMPARABLE SALES |
| LENDER/CLIENT | |
| Name | ☐ Did not inspect exterior of comparable sales from street |
| Company Name   Integra Realty Resources (IRR) | ☐ Did inspect exterior of comparable sales from street |
| Company Address   9155 South Dadeland Boulevard, Miami, FL 33156 | Date of Inspection |
| Email Address | |

| | | |
|---|---|---|
| Freddie Mac Form 466 March 2005 | Page 6 of 6 | Fannie Mae Form 1075 March 2005 |

Form 1075 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

**Exterior–Only Inspection Individual Condominium Unit Appraisal Report**

VALU-18-12-1465
File # VALU-18-12-1465

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | | COMPARABLE SALE # 5 | | COMPARABLE SALE # 6 | |
|---|---|---|---|---|---|---|---|
| Address and Unit # | 8049 W 36th Ave Apt 4<br>Hialeah, FL 33018 | 3574 W 88th Ter<br>Hialeah, FL 33018 | | | | | |
| Project Name and Phase | Shoma Homes Splendido C<br>1 | Aragon At Lennar | | | | | |
| Proximity to Subject | | 0.43 miles N | | | | | |
| Sale Price | $ | $ 270,000 | | $ | | $ | |
| Sale Price/Gross Liv. Area | $ sq. ft. | $ 189.87 sq. ft. | | $ sq. ft. | | $ sq. ft. | |
| Data Source(s) | | SEF #A10216716;DOM 106 | | | | | |
| Verification Source(s) | | Assessor, Realist | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing Concessions | | ArmLth<br>VA;0 | | | | | |
| Date of Sale/Time | | s07/17;c05/17 | | | | | |
| Location | Residential | Residential | | | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | | | | |
| HOA Mo. Assessment | 175 | 165 | 0 | | | | |
| Common Elements and Rec. Facilities | Typical for Similar Projects | Typical for Similar Projects | | | | | |
| Floor Location | 1/2 | 1/2 | | | | | |
| View | Residential | Residential | | | | | |
| Design (Style) | Townhouse | Townhouse | | | | | |
| Quality of Construction | Average | Average | | | | | |
| Actual Age | 11 | 5 | | | | | |
| Condition | Average | Good | -10,000 | | | | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 6  3  2.1 | 6  2  2.1 | | | | | |
| Gross Living Area | 1,356 sq. ft. | 1,422 sq. ft. | | sq. ft. | | sq. ft. | |
| Basement & Finished Rooms Below Grade | No Basement<br>None | No Basement<br>None | | | | | |
| Functional Utility | Average | Average | | | | | |
| Heating/Cooling | EFA/CAC | EFA/CAC | | | | | |
| Energy Efficient Items | None | None | | | | | |
| Garage/Carport | 1 Open Space | 1 Open Space | | | | | |
| Porch/Patio/Deck | Patio | Patio | | | | | |
| | | | | | | | |
| | | | | | | | |
| Net Adjustment (Total) | | ☐ +  ☒ - | $ -10,000 | ☐ +  ☐ - | $ | ☐ +  ☐ - | $ |
| Adjusted Sale Price of Comparables | | Net Adj. 3.7 %<br>Gross Adj. 3.7 % | $ 260,000 | Net Adj. 0.0 %<br>Gross Adj. 0.0 % | $ 0 | Net Adj. 0.0 %<br>Gross Adj. 0.0 % | $ 0 |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 4 | COMPARABLE SALE # 5 | COMPARABLE SALE # 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | | | | |
| Data Source(s) | MLS, Assessor, Realist | MLS, Assessor, Realist | | |
| Effective Date of Data Source(s) | 08/22/2017 | 08/22/2017 | | |

Analysis of prior sale or transfer history of the subject property and comparable sales    3574 W 88th Ter has no 12-month prior transfer history.

Analysis/Comments

# SINGLE FAMILY COMPARABLE RENT SCHEDULE

VALU-18-12-1465
File # VALU-18-12-1465

This form is intended to provide the appraiser with a familiar format to estimate the market rent of the subject property. Adjustments should be made only for items of significant difference between the comparables and the subject property.

| ITEM | SUBJECT | COMPARABLE NO. 1 | | COMPARABLE NO. 2 | | COMPARABLE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 8049 W 36th Ave Apt 4 Hialeah, FL 33018 | 8153 W 36th Ave Apt 3 Hialeah, FL 33018 | | 8123 W 36th Ave Apt 1 Hialeah, FL 33018 | | 8141 W 36th Ave Apt 4 Hialeah, FL 33018 | |
| Proximity to Subject | | 0.05 miles W | | 0.06 miles SW | | 0.05 miles W | |
| Date Lease Begins Date Lease Expires | | 09/16 Unk | | 03/17 Unk | | 05/17 Unk | |
| Monthly Rental | If Currently Rented: $ | $ 1,850 | | $ 1,900 | | $ 1,850 | |
| Less: Utilities Furniture | $ | $ | | $ | | $ | |
| Adjusted Monthly Rent | $ | $ 1,850 | | $ 1,900 | | $ 1,850 | |
| Data Source | MLS,Inspection Assessor,Realist | MLS #A10148474 Assessor, Realist | | MLS #A10242914 Assessor, Realist | | MLS # Assessor, Realist | |
| RENT ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. |
| Rent Concessions | | | | | | | |
| Location/View | Residential Residential | Residential Residential | | Residential Residential | | Residential Residential | |
| Design and Appeal | Townhouse | Townhouse | | Townhouse | | Townhouse | |
| Age/Condition | 11 Average | 11 Average | | 11 Average | | 11 Average | |
| Above Grade Room Count Gross Living Area | Total 6 Bdrms 3 Baths 2.1 1,356 Sq. Ft. | Total 6 Bdrms 3 Baths 2.1 1,360 Sq. Ft. | | Total 6 Bdrms 3 Baths 2.1 1,361 Sq. Ft. | | Total 6 Bdrms 3 Baths 2.1 1,356 Sq. Ft. | |
| Other (e.g., basement, etc.) | No Basement None | No Basement None | | No Basement None | | No Basement None | |
| Other: | | | | | | | |
| Net Adj. (total) | | ☐+ ☐− $ | 0 | ☐+ ☐− $ | 0 | ☐+ ☐− $ | 0 |
| Indicated Monthly Market Rent | | $ 1,850 | | $ 1,900 | | $ 1,850 | |

Comments on market data, including the range of rents for single family properties, an estimate of vacancy for single family rental properties, the general trend of rents and vacancy, and support for the above adjustments. (Rent concessions should be adjusted to the market, not to the subject property.)  Rentals of comparable style dwellings ranged from $1,500 to $1,900.

Final Reconciliation of Market Rent:   All rentals were taken into the final consideration.  The opinion of market rent is $1,850

I (WE) ESTIMATE THE MONTHLY MARKET RENT OF THE SUBJECT AS OF   08/22/2017   TO BE $   1,850

Appraiser(s) SIGNATURE *Carlos Fong*   Review Appraiser SIGNATURE

NAME   Carlos Fong   (If applicable)   NAME
Certified Residential Appraiser

Date Property Inspected   08/22/2017   Report Signed   02/10/2019   Date Property Inspected _____ Report Signed _____
License or Certification #   RD 6782   State   FL   License or Certification # _____ State _____
Expiration Date of License or Certification   11/30/2020   Expiration Date of License or Certification _____
Review Appraiser ☐ Did ☐ Did Not   Inspect Subject Property

Freddie Mac Form 1000 (8/88)   Fannie Mae Form 1007 (8/88)

Form 1007 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

## Supplemental Addendum

File No. VALU-18-12-1465

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower | Jeovany & Monica Nunez | | | | | |
| Property Address | 8049 W 36th Ave | | | | | |
| City | Hialeah | County | Dade | State | FL | Zip Code 33018 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | |

**PURPOSE OF APPRAISAL REPORT**

The purpose of this appraisal is to estimate the market value of the subject property as defined herein. The function of the appraisal is to assist the above-named Lender/Client, its successors and/or assigns, in evaluating the subject property for lending purposes. This is a federally regulated transaction. Additional supporting data can be found in our appraiser work file.

It is assumed that the title to this property is good and marketable. No title search has been made, nor have we attempted to determine ownership of the property. The value estimate is given without regard to any questions of title, boundaries, or encroachments. It is assumed that all assessments are paid. We assume the property to be free and clear of liens and encumbrances except as noted.

The legal description, if included herein, should be verified by legal counsel before being relied upon or used in any conveyance or other document.

We are not familiar with any engineering studies made to determine the bearing capacity of the land. Improvements in the area appear to be structurally sound. It is therefore assumed that soil and subsoil conditions are stable unless specifically outlined in this report.

Any exhibits in the report are intended to assist the reader in visualizing the property and its surroundings. The drawings are not intended as surveys and no responsibility is assumed for their cartographic accuracy. Drawings are not intended to be exact in size, scale or detail.

Areas and dimensions of the property were physically measured. If data is furnished by the principal or from plot plans or surveys furnished by the principal, or from public records, we assume it to be reasonably accurate. In the absence of current surveys, land areas may be based upon representations made by the owner's agents or the client. No attempt has been made to render an opinion or determine the status of easements that may exist. No responsibility is assumed for discrepancies that may become evident from a licensed survey of the property.

The value estimate involves only the real estate and all normal building equipment if any improvements are involved. No consideration was given to personal property, (or special equipment), unless stated.

It is assumed that the property is subject to lawful, competent and informed ownership and management unless noted.

Information in this report concerning market data was obtained from buyers, sellers, brokers, attorneys, trade publications or public records. To the extent possible, this information was examined for accuracy and is believed to be reliable. Dimensions, areas or data obtained from others is believed correct; however, no guarantee is made.

Any information, in whatever form, furnished by others is believed to b e reliable; however, no responsibility is assumed for accuracy.

The separate allocations between land and improvements, if applicable, represents our judgment only under the existing utilization of the property. A re-evaluation should be made if the improvements are removed or substantially altered, and the land utilized for another purpose.

All information and comments concerning the location, neighborhood trends, construction quality and costs, loss in value from whatever cause, condition, rents, or any other data for the property appraised herein, represents the estimates and opinions of the appraiser formed after an examination and study of the property.

Any valuation analysis of the income stream has been predicted upon financing conditions as specified herein, which we have reason to believe are currently available for this property. Financing terms and conditions other than those indicated may alter the final value conclusions.

The appraiser is not required to give testimony or appear in court because of having made this appraisal, with reference to the property in question, unless arrangements have been made previously thereto. If the appraiser (s) is subpoenaed pursuant to court order, the client will be required to compensate said appraiser(s) for his/her time at his/her regular hourly rates, plus expenses.

All opinions, as to values stated, are presented as the appraiser's considered opinion based on the information set forth in the report and his experience. We assume no responsibility for changes in market conditions or for the inability of the client or any other party to achieve their desired results based upon the appraised value. Further, some of the assumptions made can be subject to variation depending upon evolving events. We realize some assumptions may never occur and unanticipated events or circumstances may occur. Therefore, actual results achieved during the projection period may vary from those in this report.

The appraisal assignment was not based on developing or reporting predetermined results, or a requested minimum valuation, a specific valuation, or the approval of a loan.

Our analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the requirements of: USPAP Uniform Standards of Professional Appraisal Practice, and SPP-AI Code of Professional Ethics and the Standards of Professional Practice of the Appraisal Institute; and, except as noted in the Scope of Appraisal, in conformity with specific implementation rules of the following agencies:

FIRREA Title XI of the Financial Institutions Reform, Recovery and Enforcement Act and section 5(b) of the Bank Company Holding Act; FRB – Federal Reserve Board; RTC-Resolution Trust Corporation; OTS-Office of Thrift Supervision; FDIC – Federal Deposit Insurance Corporation; OTC – Office of the Comptroller; NCUA – National Credit Union Association.

**THE APPRAISER HAS PREPARED THIS APPRAISAL IN FULL COMPLIANCE WITH THE APPRAISAL INDEPENDENCE REQUIREMENTS AND HAS NOT PERFORMED, PARTICIPATED IN, OR BEEN ASSOCIATED WITH ANY ACTIVITY IN VIOLATION OF AIR.**

**AT THE REQUEST OF THE CLIENT, THIS APPRAISAL REPORT HAS BEEN PREPARED IN COMPLIANCE WITH THE**

## Supplemental Addendum

File No. VALU-18-12-1465

| Borrower | Jeovany & Monica Nunez | | | | | |
|----------|------------------------|--|--|--|--|--|
| Property Address | 8049 W 36th Ave | | | | | |
| City | Hialeah | County | Dade | State | FL | Zip Code 33018 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | |

**UNIFORM APPRAISAL DATASET (UAD) FROM FANNIE MAE AND FREDDIE MAC. THE UAD REQUIRES THE APPRAISER TO USE STANDARDIZED RESPONSES THAT INCLUDE SPECIFIC FORMATS, DEFINITIONS, ABBREVIATIONS, AND ACRONYMS.**

We do not authorize the out-of-context quoting from or partial reprinting of this appraisal report.  Further, neither all nor any part of the contents of this report (especially any conclusions as to value, the identity of the appraiser nor the name of the firm which he is connected, shall be reproduced, published, or disseminated to the public through advertising media, public relations media, news media, or another public means of communication, without the prior written consent of the appraiser signing this report.

Adobe's Distiller software or equivalent may be utilized by appraiser to transmit this encrypted PDF-formatted appraisal.  At a minimum, the software contains the following security measure:

- identifies transmission error during the transmission process, and confirms date, time and quantity of data submitted by appraiser and the date, time and quantity of data received by the Client, and/or its assigns and
- secures data from editing by means of a password, hardware device, or other means that remains in the sole control of the transmitting appraiser.

**THIRTY SIX MONTH LISTING HISTORY**

We are not aware of any prior listings pertaining to the subject property in the past three years as researched through the local Multiple Listing Service.

**NEIGHBORHOOD MARKET CONDITIONS**

No discounts, buy downs or other concessions were noted.  Current 30 year fixed rate financing at 4.5 - 5.5% and 0-2 points.

Stricter Lending Standards and the availability of Mortgage Capital may affect the average sales prices in the area, however, given the market data analyzed by the appraiser, there are no fiscal or economic trends expected to occur that would significantly impact the relatively stable market currently experienced in this neighborhood.

Neighborhood conditions can be found in detail in the attached 1004MC form.

**SITE COMMENTS**

This site is very typical of the neighborhood in terms of size, topography, view and general appeal.  It provides a suitable setting for the improvements and is consistent with market expectations in this price range.  Statements regarding zoning compliance are intended only in the most general sense.  Zoning and building ordinances vary significantly from one municipality to another and can be extremely detailed.  The scope of this assignment does not include a comparison of every potentially significant characteristic of the subject property's site and improvements relative to zoning and building ordinances.  Unless otherwise noted, standard utility and right-of-way easements are insignificant to value.  However, a current locational or boundary survey or title report may reveal encroachments, easements, zoning violations or other matters of interest that could warrant modification of the appraised value.

**COMMENTS REGARDING HIGHEST AND BEST USE**

In compliance with USPAP the following is included in the appraisal;
•	The current use of the real estate as of the date of value is Residential as described in the improvements section of this appraisal.

•	The use of the real estate reflected in this appraisal is as currently improved

•	The rationale and support for the opinion of highest and best use developed for this assignment is as per below:
Highest and Best Use is defined as "The reasonably probable and legal use of vacant land or an improved property that is physically possible, appropriately supported, financially feasible, and that results in the highest value. The four criteria the highest and best use must meet are legal permissibility, physical possibility, financial feasibility, and maximum productivity. Alternatively, the probable use of land or improved property-specific with respect to the user and timing of the use-that is adequately supported and results in the highest present value"
Source: Appraisal Institute, The Dictionary of Real Estate Appraisal, 5th ed. (Appraisal Institute, 2010).
The highest and best use analysis is a critical step in the valuation process.  The comparable properties incorporated into the appraisal are directly affected by the highest and best use analysis. The analysis is based on the use that a hypothetical purchaser would make of the property based on the four tests cited above:
•	Legally Permissible
•	Physically Possible
•	Financially Feasible
•	Maximally Productive
Although the current use is considered in the analysis, it is not always the highest and best use based on the four tests. The analysis involves determining if a typical purchaser would:
•	Utilize the current improvements on the site as they currently exist
•	Make modification to the current improvements
•	Raze or demolish  the current improvements because they no longer have sufficiently contribute to value or until the return from the new improvements would more than offset the cost of demolishing the existing improvements and construction of new ones.

Since the property appraised is owned under the condominium form of ownership, the land is an element common to all units in the owner's association. The subject's fractional interest in the land is not a marketable entity unto itself; it does not have independent market value.  Accordingly, the highest and best use of just the subject's interest in the land is to remain part of a larger parcel that has more usefulness.

## Supplemental Addendum

File No. VALU-18-12-1465

| Borrower | Jeovany & Monica Nunez | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 8049 W 36th Ave | | | | | |
| City | Hialeah | County | Dade | State | FL | Zip Code 33018 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | |

**COMMENTS ON SALES COMPARISON APPROACH**

All comparables provided strong support. The most weight, and opinion of value fell on comparables 1 through 3, for being in the subjects project. The opinion fell near the lower end of the adjusted range, due to the condition.

Comparables were adjusted for their differences in overall condition, bathroom count, gross living area. Gross living area adjustments were made at $40 per square foot. Comparables within 100 square feet of the subject property did not warrant an adjustment. Comparables 1, 2, and 4 received negative condition adjustments. This was based off of interior MLS Photos, and descriptions.

ALL ADJUSTMENTS WERE DERIVED FROM THE SUBJECT MARKET AND THE APPRAISERS EXPERTISE IN THE MARKET PLACE.

I performed this appraisal in accordance with the requirements of Title XI of the Financial Institution Reform, Recovery and Enforcement Act of 1989, (12 U.S.C.3331 et seq.), and any implementing regulations.

All comparables are located within the subject's neighborhood boundaries. No geographic boundaries were crossed.

THE ESTIMATED VALUE OF THE SUBJECT IS BELOW THE PREDOMINATE VALUE IN THE SUBJECT NEIGHBORHOOD. THIS WILL NOT HAVE A NEGATIVE EFFECT ON THE MARKETABILITY OF THE SUBJECT. THE SUBJECT PROPERTY IS NOT AN UNDER IMPROVEMENT FOR THE AREA.

**RECONCILIATION**

The sales comparison approach was considered most applicable for the subject property because a typical buyer or seller would most readily understand and apply this approach. The income approach was not considered applicable due to the fact that the majority of housing stock in the area is owner occupied and not typically used for investment property. The cost approach is not applicable for condominium ownership dwellings. The quality of available data utilized in the Sales comparison Approach was considered adequate.

**EXTERIOR INSPECTION ADDENDA**

The appraiser has been requested to perform an appraisal based on an exterior only inspection and not to disturb the occupants by entering the building. The physical characteristics used to develop this appraisal are based on the assessment records of Dade County, Florida and on the multiple listing service. The subject property was observed from the public street as of the effective date of the appraisal. On the basis of the observed conditions, the assessment records and multiple listing service information appear to be accurate. For the purposes of this appraisal, it is assumed that the interior condition of the subject property is consistent with the exterior conditions as observed and that the information concerning the interior condition as provided by the assessor's records and the multiple listing service is accurate.

**PHYSICAL DEFICIENCIES OR ADVERSE CONDITIONS**

Unless otherwise stated in this report, the existence of hazardous material and/or electromagnetic emission, which may or may not be present on the property, was not observed by the appraiser. The appraiser has no such knowledge of the existence of such materials on or in the subject property, or in the properties of the subject neighborhood. The appraiser is not qualified to detect such substances. The presence of such substances as asbestos, urea formaldehyde foam insulation, radon, mold, or other potentially hazardous material may affect the value of the property. The value estimate expressed is predicated on the assumption that there is no such material in or on the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The customer is urged to retain an expert in this field.

Dwellings built prior to 1978 may contain lead-based paint.

**MOLD**

The appraiser is not a home or environmental inspector. The appraiser provides an opinion of value. The appraisal does not guarantee that the property is free of defects or environmental problems. The appraiser performs an inspection of visible and accessible areas only. Mold may be present in areas the appraiser cannot see. A professional home inspection or environmental inspection is recommended.

**CONCLUSION**

This is an Appraisal Report which is intended to comply with the reporting requirements set forth under Standards Rule 2-2(a) of the Uniform Standards of Professional Appraisal Practice for an Appraisal Report. As such, it presents only minimal discussions of the data, reasoning, and analyses that were used in the appraisal process to develop the appraiser's opinion of value. Supporting documentation concerning the data, reasoning, and analyses is retained in the appraiser's file. The depth of discussion contained in this report is specific to the needs of the client and for the intended use stated herein. The appraiser is not responsible for unauthorized use of this report.

## Subject Photo Page

| Borrower | Jeovany & Monica Nunez | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 8049 W 36th Ave | | | | | | |
| City | Hialeah | County | Dade | State | FL | Zip Code | 33018 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |



**Subject Front**

| | |
|---|---|
| 8049 W 36th Ave Apt 4 | |
| Sales Price | |
| Gross Living Area | 1,356 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.1 |
| Location | Residential |
| View | Residential |
| Site | |
| Quality | Average |
| Age | 11 |

**Subject Rear**

**Subject Street**



**Comparable Photo Page**

| Borrower | Jeovany & Monica Nunez | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 8049 W 36th Ave | | | | | |
| City | Hialeah | County | Dade | State | FL | Zip Code 33018 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | |



### Comparable 1

| | |
|---|---|
| 8043 W 36th Ave | |
| Prox. to Subject | 0.09 miles SW |
| Sales Price | 235,000 |
| Gross Living Area | 1,464 |
| Total Rooms | 7 |
| Total Bedrooms | 4 |
| Total Bathrooms | 3.0 |
| Location | Residential |
| View | Residential |
| Site | |
| Quality | Average |
| Age | 13 |



### Comparable 2

| | |
|---|---|
| 8025 W 36th Ave | |
| Prox. to Subject | 0.10 miles SW |
| Sales Price | 220,000 |
| Gross Living Area | 1,360 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.0 |
| Location | Residential |
| View | Residential |
| Site | |
| Quality | Average |
| Age | 13 |



### Comparable 3

| | |
|---|---|
| 8123 W 36th Ave | |
| Prox. to Subject | 0.06 miles SW |
| Sales Price | 187,900 |
| Gross Living Area | 1,361 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.0 |
| Location | Residential |
| View | Residential |
| Site | |
| Quality | Average |
| Age | 13 |

## Comparable Photo Page

| Borrower | Jeovany & Monica Nunez | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 8049 W 36th Ave | | | | | | |
| City | Hialeah | County | Dade | | State | FL | Zip Code | 33018 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |



### Comparable 4

| | |
|---|---|
| | 3574 W 88th Ter |
| Prox. to Subject | 0.43 miles N |
| Sales Price | 270,000 |
| Gross Living Area | 1,422 |
| Total Rooms | 6 |
| Total Bedrooms | 2 |
| Total Bathrooms | 2.1 |
| Location | Residential |
| View | Residential |
| Site | |
| Quality | Average |
| Age | 5 |

### Comparable 5

| | |
|---|---|
| Prox. to Subject | |
| Sales Price | |
| Gross Living Area | |
| Total Rooms | |
| Total Bedrooms | |
| Total Bathrooms | |
| Location | |
| View | |
| Site | |
| Quality | |
| Age | |

### Comparable 6

| | |
|---|---|
| Prox. to Subject | |
| Sales Price | |
| Gross Living Area | |
| Total Rooms | |
| Total Bedrooms | |
| Total Bathrooms | |
| Location | |
| View | |
| Site | |
| Quality | |
| Age | |

## Rental Photo Page

| Borrower | Jeovany & Monica Nunez | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 8049 W 36th Ave | | | | | |
| City | Hialeah | County | Dade | State | FL | Zip Code | 33018 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | |



### Rental 1
8153 W 36th Ave Apt 3

| | |
|---|---|
| Proximity to Subject | 0.05 miles W |
| Adj. Monthly Rent | 1,850 |
| Gross Living Area | 1,360 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.1 |
| Location | Residential |
| View | Residential |
| Condition | Average |
| Age/Year Built | 11 |



### Rental 2
8123 W 36th Ave Apt 1

| | |
|---|---|
| Proximity to Subject | 0.06 miles SW |
| Adj. Monthly Rent | 1,900 |
| Gross Living Area | 1,361 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.1 |
| Location | Residential |
| View | Residential |
| Condition | Average |
| Age/Year Built | 11 |



### Rental 3
8141 W 36th Ave Apt 4

| | |
|---|---|
| Proximity to Subject | 0.05 miles W |
| Adj. Monthly Rent | 1,850 |
| Gross Living Area | 1,356 |
| Total Rooms | 6 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.1 |
| Location | Residential |
| View | Residential |
| Condition | Average |
| Age/Year Built | 11 |

## Subject Aerial Map

| Borrower | Jeovany & Monica Nunez | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 8049 W 36th Ave | | | | | | |
| City | Hialeah | County | Dade | | State | FL | Zip Code | 33018 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |



## Location Map

| Borrower | Jeovany & Monica Nunez | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 8049 W 36th Ave | | | | | |
| City | Hialeah | County | Dade | State | FL | Zip Code 33018 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | |



## Assessor Data

| Borrower | Jeovany & Monica Nunez | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 8049 W 36th Ave | | | | | |
| City | Hialeah | County | Dade | State | FL | Zip Code 33018 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | |



1/3/2019      Property Search Application – Miami-Dade County

# OFFICE OF THE PROPERTY APPRAISER

## Summary Report

Generated On : 1/3/2019

### Property Information

| | |
|---|---|
| Folio: | 04-2028-106-0600 |
| Property Address: | 8049 W 36 AVE  UNIT: 4<br>Hialeah, FL  33018-1753 |
| Owner | FEDERAL NATIONAL MORTGAGE ASSN |
| Mailing Address | PO BOX 650043<br>DALLAS, TX 75265 USA |
| PA Primary Zone | 4300 MULTI-FAMILY - 2 STORY |
| Primary Land Use | 0407 RESIDENTIAL – TOTAL VALUE : CONDOMINIUM - RESIDENTIAL |
| Beds / Baths / Half | 3 / 2 / 1 |
| Floors | 0 |
| Living Units | 1 |
| Actual Area | Sq.Ft |
| Living Area | 1,356 Sq.Ft |
| Adjusted Area | 1,356 Sq.Ft |
| Lot Size | 0 Sq.Ft |
| Year Built | 2006 |

### Assessment Information

| Year | 2018 | 2017 | 2016 |
|---|---|---|---|
| Land Value | $0 | $0 | $0 |
| Building Value | $0 | $0 | $0 |
| XF Value | $0 | $0 | $0 |
| Market Value | $185,075 | $174,599 | $135,348 |
| Assessed Value | $185,075 | $110,083 | $100,076 |

### Benefits Information

| Benefit | Type | 2018 | 2017 | 2016 |
|---|---|---|---|---|
| Non-Homestead Cap | Assessment Reduction | | $64,516 | $35,272 |

Note: Not all benefits are applicable to all Taxable Values (i.e. County, School Board, City, Regional).

### Short Legal Description

| |
|---|
| SHOMA HOMES SPLENDIDO CONDO |
| UNIT 60 BLDG 11 |
| UNDIV 1/219 |
| INT IN COMMON ELEMENTS |
| OFF REC 24177-2205 |

### Taxable Value Information

| | 2018 | 2017 | 2016 |
|---|---|---|---|
| **County** | | | |
| Exemption Value | $0 | $0 | $0 |
| Taxable Value | $185,075 | $110,083 | $100,076 |
| **School Board** | | | |
| Exemption Value | $0 | $0 | $0 |
| Taxable Value | $185,075 | $174,599 | $135,348 |
| **City** | | | |
| Exemption Value | $0 | $0 | $0 |
| Taxable Value | $185,075 | $110,083 | $100,076 |
| **Regional** | | | |
| Exemption Value | $0 | $0 | $0 |
| Taxable Value | $185,075 | $110,083 | $100,076 |

### Sales Information

| Previous Sale | Price | OR Book-Page | Qualification Description |
|---|---|---|---|
| 09/18/2017 | $0 | 30697-4488 | Federal, state or local government agency |
| 01/01/2007 | $269,990 | 25295-2421 | Sales which are qualified |

The Office of the Property Appraiser is continually editing and updating the tax roll. This website may not reflect the most current information on record. The Property Appraiser and Miami-Dade County assumes no liability, see full disclaimer and User Agreement at http://www.miamidade.gov/info/disclaimer.asp

Version:

# Tax Information

| Borrower | Jeovany & Monica Nunez | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 8049 W 36th Ave | | | | | | |
| City | Hialeah | County | Dade | | State | FL | Zip Code | 33018 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |

1/3/2019     Southeast Florida MLS - Miami-Dade County Tax Report - 8049 W 36TH AVE APT 4, HIALEAH, FL 33018-1754

**Southeast Florida MLS - IMAPP**
Miami-Dade County Tax Report - 8049 W 36TH AVE APT 4, HIALEAH, FL 33018-1754

## PROPERTY INFORMATION

**PID #** 04-2028-106-0600
**Property Type:** Multi-Unit
**Property Address:**
8049 W 36TH AVE APT 4
HIALEAH, FL 33018-1754
**Current Owner:**
FEDERAL NATIONAL MORTGAGE ASSN
**Tax Mailing Address:**
PO BOX 650043
DALLAS, TX 75265-0043
**Use Code:** 04 / CONDO
**Total Land Area:**
0 acres / 0 sf
**Land Areas:**
1. RESIDENTIAL - TOTAL VALUE :
CONDOMINIUM - RESIDENTIAL (0407)
**Zoning:** 4300/MULTI-FAMILY - 2
STORY
**Waterfront:** Yes - LAKE/POND
**Subdivision:**
SHOMA SPLENDIDO CONDO
**Census Tract/Block:** 012600 / 2003
**Twn:** 52 / **Rng:** 40 / **Sec:** 28
**Block:** / Lot:
**Latitude:** 25.896556
**Longitude:** -80.355291
**Legal Description:**
SHOMA HOMES SPLENDIDO CONDO UNIT 60
BLDG 11 UNDIV 1/219 INT IN COMMON
ELEMENTS OFF REC 24177-2205 COC 25295-2421
01 2007 1

Residential Commercial · Agricultural Industrial · Government Other · Water Condo

Active · Sold · Pending · Withdrawn · Expired

Foreclosures

## VALUE INFORMATION

| | 2014 | 2015 | 2016 | 2017 | 2018 |
|---|---|---|---|---|---|
| Building Value: | $0 | $0 | $0 | $0 | $0 |
| Land Value: | $0 | $0 | $0 | $0 | $0 |
| Just Market Value: | $29,364 | $112,790 | $135,348 | $174,599 | $185,075 |
| Percent Change: | - n/a - | 284.11% | 20% | 29% | 6% |
| Total Assessed Value: | $29,364 | $90,979 | $100,076 | $110,083 | $185,075 |
| Homestead Exemption: | NO | NO | NO | NO | NO |
| Total Exemptions: | $0 | $0 | $0 | $0 | $0 |
| Taxable Value: | $29,364 | $90,979 | $100,076 | $110,083 | $185,075 |
| Total Tax Amount: | $596.41 | $1,978.12 | $2,215.07 | $2,561.74 | $3,504.07 |

**Taxing District(s):** 0400 - HIALEAH

Link To County Tax Collector

## SALES INFORMATION

| Deed Type: | CERTIFICATE OF TRANSFER | | | Price: | $180,000 | Qualifiers: | U[1] |
|---|---|---|---|---|---|---|---|
| Sale Date: | 09/18/2017 | Recorded Date: | 09/28/2017 | Document # | Bk 30697/Pg 4488 | | |
| Grantor: | JEOVANY NUNEZ | | | Grantee: | FEDERAL NATIONAL MORTGAGE ASSN | | |

| Deed Type: | WARRANTY DEED | | | Price: | $269,990 | Qualifiers: | Q[2] |
|---|---|---|---|---|---|---|---|
| Sale Date: | 01/12/2007 | Recorded Date: | 01/22/2007 | Document # | Bk 25295/Pg 2421 | | |
| Grantor: | Not Available | | | Grantee: | Not Available | | |
| Mortgage Amount: | $26,999 | Instrument Date: | 01/12/2007 | Document # | 2007R0000069990 | | |
| Terms: | 6.05%/180 M | Attributes: | Traditional Loan, Original, Warranty Deed | | | | |
| Lender: | CONTINENTAL TRUST MORTGAGE CORP | | | Borrower: | NUNEZ JEOVANY | | |
| Mortgage Amount: | $215,992 | Instrument Date: | 01/12/2007 | Document # | 2007R0069990 | | |
| Terms: | 360 M | Attributes: | Other Subordinate Loan, Original, Stand Alone Mortgage | | | | |
| Lender: | CONTINENTAL TRUST MORTGAGE CORP | | | Borrower: | NUNEZ JEOVANY | | |

**Qualifier Flags:** Q=Qualified, U=Unqualified, O=Other (see note), M=Multiple, P=Partial, V=Vacant, I=Improved
[1] UNQUALIFIED - FORECLOSURE OR THIRD PARTY INTERVENTION , [2] QUALIFIED

http://sef.imapp.com/ilinks/property?upin=US120860420281060600     1/2

Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/02/19 Page 139 of 232 of
License
Case 1:14-cv-22408-MGC Document 261-8 Entered on FLSD Docket 05/13/2019 Page 88 of 148

| Borrower | Jeovany & Monica Nunez | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 8049 W 36th Ave | | | | | | |
| City | Hialeah | County | Dade | State | FL | Zip Code | 33018 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |

 RICK SCOTT, GOVERNOR

JONATHAN ZACHEM, SECRETARY



## STATE OF FLORIDA
## DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION

### FLORIDA REAL ESTATE APPRAISAL BD

THE CERTIFIED RESIDENTIAL APPRAISER HEREIN IS CERTIFIED UNDER THE
PROVISIONS OF CHAPTER 475, FLORIDA STATUTES

## FONG, CARLOS RAFAEL

10601 S.W. 124 ROAD.
MIAMI        FL 33186

**LICENSE NUMBER: RD6782**

**EXPIRATION DATE: NOVEMBER 30, 2020**

Always verify licenses online at MyFloridaLicense.com



Do not alter this document in any form.

This is your license. It is unlawful for anyone other than the licensee to use this document.

# Anthony M. Graziano, MAI, CRE

**Integra Realty Resources**
**Miami/Palm Beach**

Dadeland Centre
9155 S. Dadeland Boulevard
Suite 1208
Miami, FL 33156

T 305.670.0001
F 305.670.2276

irr.com

## Experience

Senior Managing Director of Integra Realty Resources – Miami/Palm Beach.

Mr. Graziano has actively counseled and advised clients on the sale, leasing, valuation, management, and development of commercial real estate assets throughout the northeast and southeast U.S. since 1992.

Mr. Graziano's professional perspective is a blend of his experience and educational background which includes formal training in architecture, urban planning, macro and micro economics, real estate finance, institutional asset management, and land development. His market experience in sales, leasing, management, and valuation disciplines combine to bring practical real world answers to complex planning and development projects. He has been actively involved as a consultant and/or member of a consultant team on various major redevelopment and land use projects for public and private clients over the past 25+ years.

Mr. Graziano has specialized in consulting and valuation assignments for corporate and private clients on a wide array of complex issues related to estate and condemnation matters, title defects, environmental contamination/damages, air rights, partial and fractional interests, contract disputes, and mediation/arbitration disputes. Mr. Graziano's experience in these matters provides a comprehensive framework for effective strategic real estate consulting.

## Professional Activities & Affiliations

Advisory Board Member: Urban Land Institute (ULI) South Florida / Caribbean
Advisory Board Member: University of Miami M+RED Program
Member: Economic Roundtable - Miami Beacon Council (2012-present)
Board of Director: Integra Realty Resources, Inc. (2011-2016)
Chairman of the Board:    Integra Realty Resources, Inc. (2016-present)
Director: South Florida Chapter of the Appraisal Institute (2014-2016)
Board Member: Builders Association of South Florida (BASF) (2014-2016)
Subject Matter Expert (SME): Appraisal Practice Board, Appraisal Foundation
Member: Appraisal Institute (MAI) (2008-Present)
Member: Counselors of Real Estate (CRE) (2007-Present)
National Association of Realtors (REALTOR)
Miami Association of REALTORS Industry Analyst of the Year (2016)
Former Fellow: Royal Institute of Chartered Surveyors (FRICS) (2007-2014)
AI Leadership Development Advisory Council, March 1998 - February 2001
Lifetime Member: National Eagle Scout Association (NESA)

## Licenses

Florida, State-Certified General Real Estate Appraiser, RZ3510
New Jersey, State-Certified General Real Estate Appraiser, RG001261

## Education

University of Miami, Coral Gables, Florida 1988-1992
Degree: Bachelor of Science in Land Development and Planning, School of Architecture

New York University Real Estate Institute, New York, New York 1993-1996
Degree: Master of Science in Real Estate Development and Investment



amgraziano@irr.com    -    305.670.0001 x320

# Anthony M. Graziano, MAI, CRE

### Qualified Before Courts & Administrative Bodies

Qualified and accepted as an expert before:
US Bankruptcy Court (Newark, Southern District of Texas, Southern District of Florida)
US Federal District Court (Southern District of Florida)
FL Circuit Court (Miami-Dade, Broward, and Monroe Counties)
NJ State Tax Court
NJ Superior Court - Chancery Division
NJ Superior Court - Law Division
Various municipal planning and zoning boards throughout New Jersey and Florida
Various Taxing Authorities and Boards throughout New Jersey and Florida

**Integra Realty Resources**
**Miami/Palm Beach**

The Douglas Centre
2600 Douglas Road, Suite 801
Coral Gables, FL 33134

T 305.670.0001
F 305.670.2276

irr.com



amgraziano@irr.com   -   305.670.0001 x320

**Anthony M. Graziano, MAI, CRE, FRICS**
PROFERRED OR DISCLOSED EXPERT WITNESS REPORTS/SETTLEMENTS

| RETENTION DATE | ON BEHALF | IRR FILE # | COURT CASE NO. | COURT / VENUE | CASE NAME | RETAINED BY | TYPE OF CASE |
|---|---|---|---|---|---|---|---|
| 1/2015 | Defendant | 123-2015-0037 | 14-CV-22384 UU | Miami-Dade County, FL | Ray Benson & Maria Helena V. QBE Insurance Corporation | John A. Camp | Retrospective (2004-2006) analysis of market value claims against insurance company related to property |
| 9/2014 | Defendant | 123-2014-0194 | 13-03084CA 10 | 11th Judicial Circuit Miami-Dade, FL | Manuel Soltero V. Adorno & Yoss, LLP | Kaplan Zeena, LLP | Professional Liability suit against law firm and attorneys for malfeasance in litigation matter. |
| 2/2014 | Plaintiff | 123-2014-0030 | Settled | Caribbean Islands | Rainmaker Development V. A&F Bahamas, etal | VLASAC & SHMARUK, LLC | Partnership Dispute between Joint Venture in Caribbean development project (golf course, villas, and large-scale marina-commercial-retail development) |
| 11/2012 | Defendant | 123-2012-0140 | 42-2012-CA-001065 | Marion County, FL | CSX Transportation, Inc. V. Moshen Saranzzi, Faith Ann Safarazi, Proverbium Hldg, LLC, USA & George Albright | NeJame, La Fay, Jancha, Ahmed, Barker, Joshi & Moreno, P.A. | Condemnation of partial interest with damages |
| 7/2012 | Confidential | 123-2012-0076 | Confidential | Broward County, FL | Ft. Lauderdale-Hollywood Int'l Airport Expansion | White & Case, LLP | Value Diminution Study to assist public agency in good faith negotiations based on airport expansion. |
| 6/2012 | Defendant | 123-2012-0070 | 10-49616-CA-40 | Miami-Dade County, FL | CB Entertainment, LLC V. South Beach Ocean Parcel | Kubicki Draper, P.A. | Construction Damages claim |
| 12/2009 | Plaintiff | 109-2009-0443 | Dept. Justice File 90-11-3-5801 | Federal District Court of Virginia | United States vs. Atlantic Wood Industries, Inc. | U.S. Department of Justice | Damages/environmental contamination dispute between United States Navy and responsible party (Atlantic Wood Industries) |

**Anthony M. Graziano, MAI, CRE, FRICS**
IDENTIFIED EXPERT WITNESS TESTIMONY AT DEPOSITION and/or TRIAL.

M. Quals: Graziano; Trial Lists

| RETENTION DATE | ON BEHALF OF | TRI FILE # | COURT/CASE NO. # | COURT / VENUE | CASE NAME | RETAINED BY | TYPE OF CASE |
|---|---|---|---|---|---|---|---|
| 6/2015 | Plaintiff | 123-2015-0170 | 15-008930-CA-01 | 11th Judicial Circuit Dade County, Florida (Hon. Peter R. Lopez) | Aaron Stauber & Aviva Stauber V. BH 33, LLC | Piedra & Associates, P.A. | Motion to dismiss Lis Pendens in an action to enforce contractual specific performance clause |
| 1/2015 | Defendant | 123-2015-0037 | 14-CV-22384 UU | Southern District of Florida | Ray Benson & Maria Helena Campos V. QBE Insurance Corporation | John Camps | Retrospective (2004-2006) analysis of market value claims against insurance company related to property damage claims arising from Hurricane Wilma |
| 1/2014 | Plaintiff | 123-2015-0031 | Pending | Miami-Dade County | Igor Ger V. Yacht Club at Portofino Condo Association | Weil Quaranta McGovern, P.A. | Construction defect dispute related to water-intrusion and damage-detrimental conditions analysis of |
| 10/2014 | Plaintiff | 123-2014-0226 | 08-CA-408-P | Monroe County | Ocean Bank V. Lindback, Monroe County | Ocean Bank | Deficiency claim against borrower on real estate collateral in the Florida Keys (development site plus marine related improvements) |
| 10/2014 | Defendant | 123-2014-0215 | 11-24994 CA 06 | 11th Judicial Circuit Dade County, Florida | Palm-Aire Holdings V. JRGS Investments, LLC, Jorge Garcia-Seriff and Counci Drive Investments, LLC | Cole, Scott & Kissane, P.A. | Partnership dispute over valuation issues proximal to a fractured condominium project (retrospective values), and operating agreement dispute |
| 7/2014 | Plaintiff | 123-2014-0194 | 13-018022 CACE 02 | 17th Judicial Circuit Broward County, Florida | Amalia I. Wanda-Rivera V. Rivera Diagnostic Center, Inc., Oknay Rivera & Yudit Rivero | Amalia I. Iñarda-Rivera | Rent default judgment and market rental and damage analysis associated with lease default. |
| 10/2014 | Defendant | 123-2014-0159 | 2014FLS34 (Pending) | Palm Beach County | Roehm Title Resources Claim | Title Resources Guaranty Company | Title insurance claim related to before and after damage/value diminution analysis based on defined title defects not identified by Title Insurance Company |
| 4/2014 | Plaintiff | 123-2014-0117 | 4:14-CV-01077 (Pending) | USA District Court for the Eastern District of Missouri Eastern Division | USA V. GSA-VA St. Louis Property, LLC | Bryan Cave LLP | Condemnation of a possessory interest for a term. Retained as consulting/rebuttal expert |
| 5/2014 | Defendant | 123-2014-0114 | Pending | Miami-Dade County | Eufonia Club | Rennert Bogel Mandler & Rodriguez, P.A. | Rent dispute regarding forced relocation of a nightclub, and relevant market rental rate of replacement club space in Miami |
| 4/2014 | Plaintiff | 123-2014-0089 | | Broward County | Pan American Holdings Corp. V. Florida DOT Right of Way (ROW) Acquisition S.R. 7 | Henry Wulf, Esq. | Condemnation for R.O.W. purposes including before and after damage analysis |
| 1/2014 | Debtor | 123-2014-005 | 13-25728-BKC-RAM | US Federal Bankruptcy - Southern District of Florida - Miami Division (Hon. R. Mark) | West Airport Plaza Business Park, LLC | Counsel for the Debtor, Michael D. Seese, Esq. | Fairness Opinion and market value opinions in conjunction with Debtor's Plan for Reorganization |
| 8/2013 | Defendant | 123-2009-0016 | 02-23922-CA 09 | 11th Judicial Circuit Dade County, Florida | American Educational Enterprises LLC v. The Board of Trustees of the Internal Improvement Trust Fund | Richard Alayon, Esq. - Alayon and Associates | Economic Damages case associated with an alleged misrepresentation or omission by seller of real property |
| 7/2013 | Plaintiff | 123-2013-0126 | CACE 08057624 (14) | 17th Judicial Circuit Broward County, Florida (Hon. Carlos A. Rodriguez) | Bayview Loan Servicing, LLC v. Kayhan Soodjani; Muhammad Mahmood; et al | Bayview Servicing, represented by Tabacs, Freedman and Soloff; Stacey Soloff, Esq. | Deficiency Judgment on multi-family project (Dewey Street Apartments) |
| 3/2013 | Defendant | 123-2013-0105 | 11-23561-CIV-Rosenbaum | US District Court - Southern District of Florida (Hon. Rosenbaum) | United States of America v. G.K.K. etal | Richard Duvall, Holland and Knight and Jeffrey Neiman, Esq. | Condemnation claim on the 137,779 s.f. Miami Federal Bureau of Investigation (F.B.I.) building; condemnation of a possessory interest (leasehold) |
| 2/2013 | Plaintiff | 123-2011-0670 | 09-05650 CA 04 | 11th Judicial Circuit Dade County, Florida (Hon. Beth Bloom) | Zenaida Gomez v. City of Pinecrest | Cynthia A. Everett, Cynthia A. Everett, P.A. | Economic damage resulting from temporary taking (seizure) of private residence |
| 1/2013 | Defendant | 123-2013-0016 | 12-60950-CIV | 11th Judicial Circuit Dade County, Florida | G Lending, Inc., Equity Financial Group, Inc., and Equity Commercial Group, Inc. v. Travelers Companies, Inc. etal | Heidi Raschke, Butler Pappas etal | Value diminution resulting from alleged mortgage fraud. |
| 11/2012 | Plaintiff | 123-2012-0120 | Pending | 11th Judicial Circuit Dade County, Florida | Renegade at Hialeah Blvd v. Dynatech Engineering | Ken Wurtenberger, Esq., Kopelowitz Ostrow Ferguson | Tax protest of commercial condominium. |
| 10/19/2012 | Plaintiff | 123-2012-0111 | 2011-1107 CA-23 | 11th Judicial Circuit Dade County, Florida (Hon. Stanford Blake) | BASF Inc., successor Ciba Geigy Inc., vs Township of Toms River | Daniel Lavin, Esq., Cole, Scott, Kissane, P.A. | Economic Damages case, diminution in value resulting from prejud lease modification. |
| 10/12/2012 | Plaintiff | 123-2012-0109 | 11-30189 CA21 | 11th Judicial Circuit Dade County, Florida | Yaffa Yakubov vs. Bayview at Fisher Island No 3 | Craig Minko, Esq., Cole Scott Kissane, P.A. | Market Value estimate of Fisher Island Condominium purchased under right of first refusal; economic damages claimed by Plaintiff due to contract dispute arising from association's exercise of right of first refusal |
| 8/20/2012 | Plaintiff | 123-2012-0012 | CA-02180 CA-25 | 11th Judicial Circuit Dade County, Florida | 7935 NBV, LLC v. Harbour East Development LTD, Mario Egozi, etal | Jose Casal, Esq., Holland and Knight | Deficiency judgment on 32-unit fractured condominium; substitute expert following issuance of IRR-Miami reports in 2010 and 2012. |
| 8/15/2012 | Disclosed Dual Expert | 123-2012-0072 | | Matrimonial Mediation | Vazquez v. Vazquez Matrimonial Matter | Colon and Mendoza and Robert Hertzberg, P.A. | Retained as a court-appointed third party expert to both parties to appraise (2) marital assets comprised of office, retail, single and multi-family units in FL, TN, NC, and Illinois, Bahamas |
| 7/2012 | Plaintiff | 109-2011-0172 | Pending; 2003-2014 | Tax Court of New Jersey (Hon. Patrick DeMarriello) | BASF Inc., successor Ciba Geigy Inc, vs. Township of Toms River | Phil Gersunto, Garippa, etal on behalf of BASF | Challenge to multi-year appeal of $80 Million+ land assessment on contaminated superfund site in Central New Jersey |
| 3/2012 | Plaintiff | 109-2010-0172 | ATL-L-4451-08 | Superior Court of New Jersey, Law Division Atlantic County | Scot Netherlands Inc. vs. State of New Jersey Department of Environmental Protection (NJDEP) | Jay Rhatican, Connell Foloey on behalf of Scot Netherlands, Inc. | Challenge to NJDEP permit denial to fill wetlands, deprivation of all reasonable investment backed expectations |
| 7/2011 | Defendant | 109-2010-0199 | MER-L-3034-08 | Superior Court of New Jersey Mercer County | 460 Mercer Street, LLP and Bruckener Southern, LLC vs. Hightstown | Anseli Zaro Grimm & Aaron, P.C. Husam Chater | Litigation-Dispute Resolution - Hightstown Zoning Challenge |
| 12/2009 | Plaintiff | 109-2009-0443 | Dept. Justice File 90-11-3-580-1 | Federal District Court of Virginia | United States vs. Atlantic Wood Industries, Inc. | U.S. Department of Justice | Damages/environmental contamination dispute between United States Navy and responsible party (Atlantic Wood Industries) |
| 12/2009 | Plaintiff | 109-2009-0377 | | Tax Court of New Jersey | Westrust/HPC Mortgage Fund vs. City of Atlantic City | Cole, Schotz, Meisei, Forman & Leonard, P.A. Carl Rizzo, Esq. | Tax Appeals - To develop an opinion of the market value of the fee simple interest in the property |



**Anthony M. Graziano, MAI, CRE, FRICS**
IDENTIFIED EXPERT WITNESS TESTIMONY AT DEPOSITION and/or TRIAL

| RETENTION DATE | ON BEHALF | IRR FILE # | COURT CASE NO | CASE NAME | COURT / VENUE | RETAINED BY | TYPE OF CASE |
|---|---|---|---|---|---|---|---|
| 1/1/2009 | Secured Creditor | 109-2009-0439 | | Erickson Building | US Bankruptcy Court - Southern District of Texas | Stuart Glick, Esq., Sills, Cummis & Gross | Market Value for Bankruptcy of 140,000 SF corporate campus in Bethesda, Maryland |
| 9/0/2009 | Plaintiff | 109-2009-0123 | 3035-001 | Bay Head Yacht Club vs. Ocean County Tax Board | Tax Court of New Jersey | John Doyle, Cariucco, Leone, Dimon, Doyle & Sacks, LLC | Tax Appeal for Bay Head Yacht Club |
| 12/2008 | Plaintiff | 109-2008-XXX | INA (DEFS Pending) | Mirage Atlantic City (MAC) vs. City of Atlantic City | Superior Court of New Jersey | Hank Rovitfaarl, Esq. | Tax Appeal at State Tax Court on 15 acre casino site adjacent to Trump Marina |
| 8/6/2008 | Defendant | 109-2008-0252 | L-2424-05 | The City of South Amboy vs. Lower Main Street Development, LLC & Amboy Aggregates Joint Venture | Superior Court of New Jersey Law Division, Middlesex County | Bathgate, Wegenar, etal | Verified complaint in condemnation |
| 6/2008 | Defendant | 109-2008-345 | C.A. No. OCNL-3361-06 | Oxbourne Associates, Melbourne Associates VI, LLC, Kingsway Realty Profit Share vs. Citta Enterprises Co, JAC Property Management etal and Eckerd Corporation | Superior Court of New Jersey, Law Division, Ocean County | Francis X. Manning, Esq, Stradley Ronon Stevens & Young & Michael Carrnboli, Esq, Partridge Snow and Hahn, both on behalf of | Dispute re: proper valuation of leasehold and sub-lessee's sandwich leasehold interest on damage claim for breach of agreement claim |
| 1/2008 | Defendant | 109-2008-0125- | N/A | Toms River Township vs. Citta Geigy Corporation | American Arbitration Association [testimony at Arbitration conducted by Hon. Eugene Serpentelli] | Mark Troncone, Esq., In-house Counsel to Township of Toms River | Arbitration of environmental damages claim, and counter-claim of appropriateness of zoning on 1,900 acre superfund site. |
| 11/2007 | Defendant | 109-2007-211 | L-008635-06 | Kyle Mosteller vs. Galia Neeman | Superior Court of New Jersey, Law Division Middlesex County | Frank Caruso, Esq, Hoagland, Longo, Moran and Dunst | Damage claim due to loss of trees and screening between urban properties |
| 6/2007 | Plaintiff | 109-2007-0134 | 3:07-CV-2322 | Silver Lakes Inc. vs. Township of Freehold Inc. | Superior Court of New Jersey, Chancery Division Monmouth County | Christopher Hanlon, Esq, Hanlon and Niemann | Challenge to validity of Rent Control Ordinance as transfer of property rights from Lessor to Lessee. |
| 6/2007 | Plaintiff | 109-2007-0173 | | Laurelwood Homes, LLC vs. United States Department of Navy | Federal District Court of Virginia | William A. Shook Esq. | Leasehold interest in the property, breach of lease claim on behalf of leasehold owner (Laurelwood) claiming breach of lease and damages |
| 12/2006 | Defendant | 109-2006-0192 | CAM - L - 9731-05 | Brandywine Operating Partnership, LP vs. UFCW Local 56 | Superior Court of New Jersey, Chancery Division, Camden County | Brett Last, Esq, O'Brien, Belland and Bushinsky | Estimate the value of damages to landlord on breach of above-market lease |
| 8/2006 | Defendant | 109-2006-0257 | | County Line & Browers Bridge, Jackson Township | Superior Court of New Jersey, Law Division | Levin, Shea, Pfeffer, PA, Steven Pfeffer | To develop an opinion of the hypothetical market value of the fee simple interest in the property |
| 2/2006 | Defendant | 109-2006-0044 | OCN-L-2482-04 | Carl Brooks vs. K. Hovanian | Ocean Superior Court, Ocean County Courthouse | Ronan, Tuzzio & Giannone, Linda Olsen | To estimate value diminution in the subject property as a result of various issues asserted by the property owner in conjunction with pending litigation between the property owner, and the subject developer K. Hovnanian @ Sea Oaks |
| 10/2005 | Defendant | 109-2005-0315 | OCN-L-1810-5 | Atlantic City Electric Company d/b/a Conectiv Power Delivery, a regulated public utility of the state of New Jersey vs. ACT Manahawkin, LLC family and/or Armstrong | Superior Court of New Jersey, Law Division Ocean County | Flaster/Greenberg, PC, David R. Oberlander, Esq. | Compensation for the taking of an easement for construction and maintenance of a 230kw transmission line and towers by Atlantic City Electric |
| 9/2005 | Defendant | 109-2005-0214 | MON-L-2609-05 | Township of Howell vs. George Harms Construction Co., Inc. etal | Superior Court of New Jersey Law Division: Monmouth County | Connell & Foley, LLP Kevin Coakley, Esq. | To develop an opinion of the market value of the fee simple estate of the property |
| 8/2003 | Defendant | 109-2003-0282 | | Giuffre vs. Giuffre | Superior Court of New Jersey Chancery Division, Family Part, Monmouth County | Louis & Wolf - Frank A. Louis | To develop an opinion of the market value of the Fee Simple estate of the property for purposes of equitable distribution of marital assets |
| 7/2003 | Defendant | 109-2003-0203 | OCN-C-79-03 | West, etal vs. Pompaino, etal | Superior Court of New Jersey, Chancery Division, Ocean County | Stephen E. Smith, Esq | To develop an opinion of the diminution in value due to a loss of useable land area |
| 6/2003 | Plaintiff | 109-2003-0101 | OCN-C-316-02 | Eugene M. Lord vs. Donald W. Rinaldo | Superior Court of New Jersey Law Division, Ocean County | Lombardi & Lombardi Scott Telson | To develop an opinion of the market value of the fee simple estate of the property |
| 4/2003 | Plaintiff | 109-2003-0128 | FM-15-468-03-C | Vincent Urbank vs. Lisa Urbank | Superior Court of New Jersey, Chancery Division, Family Part Ocean County | Marianna Pontorero, Esq. | Litigation-Matrimonial |
| 2/2002 | Plaintiff | 109-2002-0055 | | Shenandoah Mobile Home Park | | Windels Marx Lane & Mittendorf, LLP - William Cagney | Inverse Condemnation - Rent Control Ordinance |
| 4/2001 | Claimant | 109-2001-0169 | NJ-2624-00 | DeForest John Ely and Kimberle A. Ely, h/w | US Bankruptcy Court - District of Newark | First American Title Insurance Co, Jack Mikis | To derive an opinion of the fair compensation of the fee simple estate, subject to the temporary title encumbrance |
| 3/1999 | Defendant | 109-1999-0062 | | Georgetown Apartments | Superior Court of New Jersey, Chancery Division, District of Newark | Emmes & Co, Andrew Schwarz | To estimate the market value of the Leased Fee Estate of the property, inclusive of 28 Apartment complexes through NY, NJ, PA, and MD. |
| 12/1997 | Defendant | LKW-257-3186 | FM-15-1465-94 | Lisa Franklin, etal vs. Donald Franklin, etal | Superior Court of New Jersey, Chancery Division, Family Part, Ocean County | Greenbaum, Rowe, Smith, Ravin, Davis & Himmel LLP Robert S. Underhil | Estimating the market value of the leased fee interest |
| 8/1984 | Creditor | HUD-XX | | Hudson Marina Association vs. Emmes & Co. | US Bankruptcy Court - District of Newark | | Bankruptcy Reorganization of 200+ slip failed marina/dockominium complex |



# EXHIBIT F4

**Integra Realty Resources**
Miami/Palm Beach

**Appraisal Report & Post-Remediation Damage Related to Chinese Drywall**

**Rosen, Kevin and Stacey**
Hypothetical Market Value "As If" Remediated
17830 Monte Vista Drive
Boca Raton, Palm Beach County, Florida 33496
Client Reference: 3

**Prepared For:**
Colson Hicks Eidson

**Effective Date of the Appraisal:**
December 23, 2009

**Report Format:**
Appraisal Report

**IRR - Miami/Palm Beach**
File Number: 123-2018-0275





**Rosen, Kevin and Stacey**
17830 Monte Vista Drive
Boca Raton, Florida



| | | | |
|---|---|---|---|
| **Integra Realty Resources** | In Miami | In Orlando | In Naples/Sarasota |
| Miami | Dadeland Centre | The Magnolia Building | Horseshoe Professional Park |
| Orlando | 9155 South Dadeland Blvd. | 326 N. Magnolia Ave. | 2770 Horseshoe Drive S. |
| Southwest Florida | Suite 1208 | | Suite 3 |
| | Miami, FL 33156 | Orlando, FL 32801 | Naples, FL 34104 |
| www.irr.com | (305) 670-0001 | (407) 843-3377 | (239)-643-6888 |

February 13, 2019


Patrick S. Montoya
Partner
Colson Hicks Eidson
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134


SUBJECT:     Hypothetical Market Value "As If" Remediated
                     Case No 11-22408-Civ-COOKE
                     United States District Court Southern District of Florida in the matter of
                     Eduardo and Carmen Amorin, et al. individually and on behalf of others situated
                     similarly v. Taishan Gypsum Co., LTD., f/k/a Shandong Taiche Dongxin Co. Ltd., et al
                     Priority Claimant Case at:
                     Rosen, Kevin and Stacey
                     17830 Monte Vista Drive
                     Boca Raton, Palm Beach County, Florida 33496
                     Client Reference: 3
                     IRR - Miami/Palm Beach File No. 123-2018-0275


Dear Mr.Montoya:

Integra Realty Resources – Miami/Palm Beach submits the following damage estimate in the referenced property as of the effective date assuming all remediation was completed by an appropriate contractor with experience and credentials in remediating defective drywall.

The report is intended to comply the Uniform Standards of Professional Appraisal Practice (USPAP). It presents summary discussions of the data, reasoning, and analysis that were used in the appraisal process to develop the opinions. Additional information is contained within our workfile.

The findings will form the basis of expert witness testimony in the above referenced case.

Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/02/19 Page 149 of 232
Case 1:11-cv-22408-MGC Document 201-4 Entered on FLSD Docket 05/13/2019 Page 8 of 44

Identification of Subject                                                                 2

## Identification of Subject

The subject of this report is a single-family mediterranean style home configured with 5- bedroom and 5- full baths, 2- half baths with 4,674 SF under air-conditioning.  The subject property was built in 2006 and is located on a 13,068 SF site.

## Purpose of the Appraisal

The purpose of the appraisal is to develop an opinion of the diminution in value and related damages, collectively "the damages" as of the effective date of the appraisal, December 23, 2009. The damage estimate assumes the defective drywall remediation was completed and does not consider the cost to cure. The date of the report is February 13, 2019. The appraisal is valid only as of the stated effective date or dates.

## Intended Use and User

The intended use of the appraisal is for litigation purposes. The client, Colson Hicks Eidson and related co-counsel, Plaintiff and the Court are the intended users.  Integra Realty Resources – Miami/Palm Beach is not responsible for unauthorized use of this report.

## Most Recent Sale History

The most recent closed sale of the subject is summarized as follows:

| Most Recent Subject Sale (Closed) | |
| --- | --- |
| Sale Date (Most Recent) | August 7, 2006 |
| Seller | Albanese Popkin The Oaks Development LLC |
| Buyer | Rosen, Kevin & Stacey |
| Sale Price | $1,050,000 |
| Recording Instrument Number | 20060463683 |
| Disposition Details | This was the original sale from the developer |

To the best of our knowledge, no other sale or transfer of ownership has taken place within a three-year period prior to the effective appraisal date.

Subsequent to this sale the property had the following transfers:

- September 14, 2009 the property was listed for sale in the Realtors MLS system for $839,000, with a status change to Pending Sale December 7, 2009 and Closed December 23, 2009 at $501,000. The listing specified the house was in need of remediation of Chinese's Drywall. The discount to our unimpair4ed value as of 2009 was nearly 51%.

- December 30, 2011 the property was listed for sale in the Realtors MLS system for $999,000, with a status change to Pending Sale February 27, 2012 and Closed Sale June 29, 2012 for $940,000. The listing disclosed the home previously contained Chinese Drywall which had been remediated.  Integras Dec 2012 appraisal unimpaired ($1,015,000) compared to the post-remediation closed price ($940,000) reflects a 7% diminution w/o accounting for 2.5-years of property appreciation between 12-2009 and 06-2012.



## Pending Transactions

To the best of our knowledge, the property is not subject to an agreement of sale or an option to buy, nor is it listed for sale, as of the effective appraisal date.

## Definition of Market Value

The following definition of market value is used by agencies that regulate federally insured financial institutions in the United States:

"The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:

- Buyer and seller are typically motivated;

- Both parties are well informed or well advised, and acting in what they consider their own best interests;

- A reasonable time is allowed for exposure in the open market;

- Payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and

- The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale."

*(12 C.F.R. Part 34.42(g); 55 Federal Register 54696, August 24, 1990, as amended at 57 Federal Register 12202, April 9, 1992, 59 Federal Register 29499, June 7, 1994)*

## Definition of Retrospective Value Opinion

A value opinion effective as of a specified historical date. The term retrospective does not define a type of value.  Instead, it identifies a value opinion as being effective at some specific prior date. Value as of a historical date is frequently sought in connection with property tax appeals, damage models, lease renegotiation, deficiency judgements, estate tax, and condemnation.  Inclusion of the type of value with this term is appropriate, e.g. "retrospective market value opinion".

(*Source: The Dictionary of Real Estate Appraisal – 6th Edition; Appraisal Institute, 200 W. Madison, Suite 1500, Chicago, IL 60606, www.appraisalinstitute.org*)

## Definition of Hypothetical Condition

1. A condition that is presumed to be true when it is known to be false. (SVP)

2. A condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis. Comment: Hypothetical conditions are contrary to known facts about physical, legal, or economic characteristics of the subject property; or about conditions

Rosen, Kevin and Stacey



external to the property, such as market conditions or trends; or about the integrity of date used in an analysis. (USPAP, 2016-2017 ed.)

(*Source: The Dictionary of Real Estate Appraisal – 6th Edition; Appraisal Institute, 200 W. Madison, Suite 1500, Chicago, IL 60606, www.appraisalinstitute.org*)

## Scope of Work

Integra was retained as an expert in the captioned matter of this report to address potential damages related to the subject property, specifically excluding the costs to cure.

Integra was retained to estimate any post remediation damages, and conducted a separate study to determine whether damages persist following defective drywall remediation.  The result of that study are outlined within Integra's report entitled "Market Analysis of the Post Remediation Impact of Chinese Drywall on Residential Property Values in Florida."  The results of that study are incorporated by reference herein.

In addition, our damage model was requested to include a rental value analysis of the Priority Claimant residence, and a determination of the relevant economic damage associated with having to vacate the home for a period of time (and secure alternate living arrangements) during the remediation.  As of the effective date, the claimant would have suffered the damages.

Integra established individual case files on each Priority Claimant residence, and retained professional assistance from qualified residential appraisers in each jurisdiction.  Integra managed the process of these retrospective appraisals, interfaced with the residential appraisers, and reviewed the form appraisals completed on each assignment including review of the comparables, adjustments, and form narrative to establish the market value of the residence unimpaired as of the effective date.

Integra professionals reviewed various materials exchanged as part of this case and considered materials that were relevant to the market valuation.  These materials were downloaded from the attorney's dropbox and are retained within our workfile.

Integra's participation in and review of the final appraised values results in a conclusion of the market value of the home defined as "Hypothetical Market Value" assuming defective drywall had never been identified within the subject property.  This forms the basis of the unimpaired market value as of the effective date.

All properties and comparables were inspected by the local residential appraisers without the benefit of interior inspections.  Adjustments for condition and age at the time of sale are based upon photographs contained within the various MLS databases, paired analysis from amongst the comparables, and for the subject, were based on photos, if available.  In the event a property had not been remediated as of the effective date, we assume average condition for the property in the market as of the effective date.

The damage analysis expressed within this report follows the peer teachings and market accepted processes for damage analysis.  However, the damage analysis only represents a portion of the overall damages because we were specifically requested to exclude the consideration of the costs to cure.



Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/02/19 Page 152 of 232
Case 1:11-cv-22408-MGC Document 201-4 Entered on FLSD Docket 05/13/2019 Page 8 of 44

Highest and Best Use                                                                                          5

This represents a relevant component of damage in this case for property that factually have not been remediated.

Integra's role was strictly to identify post remediation value damage (sometime referred to a "stigma") and estimate the relevant rental value and moving costs as a proxy for the temporary loss of use during remediation.

## Significant Appraisal Assistance

In addition to Anthony M. Graziano, MAI ,CRE, principal, it is acknowledged that Peter G. Kayworth, Yuliya Georgieva, Joseph Melloni and Paul L. Jones of IRR-Miami/Palm Beach were involved in the assignment consisting of conducting research on the subject and transactions involving comparable properties, performing appraisal analyses and assisting in report writing, under the supervision of the persons signing the report. The local residential appraisers are also named as providing significant assistance, including exterior inspection of the properties and comparables, application of their local knowledge in adjusting and estimating the unimpaired value, and developing the form report valuations incorporated herein.

## Prior Services

USPAP requires appraisers to disclose to the client any other services they have provided in connection with the subject property in the prior three years, including valuation, consulting, property management, brokerage, or any other services. We have not performed any services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

## Valuation Methodology

Appraisers usually consider the use of three approaches to value when developing a market value opinion for real property. These are the cost approach, sales comparison approach, and income capitalization approach. The valuations consider the only relevant approach for residential valuation, the sales comparison analysis. The cost and income approach are not considered relevant.

The sales comparison approach is the most applicable valuation method since there is an active market for similar properties, and sufficient sales data is available for analysis. Additionally, this approach directly considered the prices of alternative properties having similar utility.

## Highest and Best Use

The highest and best use of the subject as if vacant for development of a single-family home which is physically possible, legally permissible as per zoning, financially feasible and maximally productive.

The highest and best use of the subject as improved is for continued use as a single-family home with no other use that could reasonably be expected to provide a higher value to the land as if vacant. The improvements contribute to the over all value to a greater extent than the land value alone, and therefore, continued use as improved concluded to be maximally productive and the highest and best use of the property.



Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/02/19 Page 153 of 232
Case 1:11-cv-22408-MGC Document 201-4 Entered on FLSD Docket 05/13/2019 Page 9 of 44

Conclusion of Value                                                                                      6

## Conclusion of Value

The Hypothetical market value appraisal as of the effective date, reflective of a traditional form appraisal, is contained within the Addenda of this report.  This value us hypothetical since it assumes that defective drywall had never been present at the subject property.

Against this value, we then apply the Post Impairment Discount as a percentage of unimpaired value as developed within the Integra report studying this issue.  This represents a compensable damage resulting from the prior existence of defective drywall in the home as of the effective date.

In addition, each appraisal (unimpaired) reflects a rental value analysis as of the effective date.  This rental value analysis concludes to the equivalent market rent for the home (unimpaired) and reflects a proxy for the probable actual costs the homeowner would experience by having to move-out of the primary residence during remediation.

The homeowner would also have to incur moving /storage costs twice, once before and once after remediation.  Professional packing, moving and storage for an average home is estimated at $1,500 per move, or $3,000 in total.  This amount is added to the loss of use estimate as an additional damage.

This loss of use calculation does not consider the costs of alternative housing or other tangible costs potentially incurred for damages suffered between the date of discovery and the date of value.  These damages, if applicable, are being estimated by a separate expert (Elkins et al). To the extent Elkins posits costs which are duplicative or actual costs that are greater or less, some minor adjustments to Integra's damage model may be required.

The timeframe for remediation (months of actual loss) could vary depending upon the permitting process in the specific community, the availability of labor, and the size of the home.  Integra reviewed a number of transactions that were remediated by investors and found the typical timeframe between purchase of an unremediated home and listing[1] of the home post-remediation to be 3-6 months.

Larger more expansive homes would be expected to take longer to remediate since more materials are required, and in higher-priced homes, supplies would typically be custom-ordered.  Therefore, we apply the following timeframes based on the subject's size and price range:

< $150,000 Home up to 2,000+/- SF            4 months

$150,000 - $750,000 home up to 4,000 SF      6 months

$750,000+ home up over 4,000 SF              9 months

---

[1] The "listing date" is most relevant since a homeowner conducting their own remediation can move back in once the home is ready for sale (ie- coinciding with a final certificate of occupancy).

Rosen, Kevin and Stacey



The following shows our final estimate of damages as of the effective date, and assuming costs to cure (i.e. – to conduct the remediation) have been expended.

| Conclusions of Damage | | | |
|---|---|---|---|
| Hypothetical Value (Unimpaired - Before) | | $1,015,000 | |
| Market Impairment Discount (As if Remediated) | | 10% | |
| Post Impairment Damage ($) | | $101,500 | |
| **Hypothetical Value As IF Remediated** | | | **$913,500** |
| Post Remediation Damages as of Effective Date | | | **$101,500** |
| Loss of Use: | | | |
| Rental Rate ($/Month) | **$8,000** | | |
| Moving & Storage Costs | | $3,000 | |
| Loss of Use Subject (# Months) | 9x | $72,000 | |
| Subject Total | | | **$75,000** |
| **Post Remediation Damage** | | | **$176,500** |

Note: Does not consider "cost to cure". Assumes remediation was completed by qualified contractor who warranties the work.

December 30, 2011 the property was listed for sale in the Realtors MLS system for $999,000, with a status change to Pending Sale February 27, 2012 and Closed Sale June 29, 2012 for $940,000. The listing disclosed the home previously contained Chinese Drywall which had been remediated. Integras Dec 2012 appraisal unimpaired ($1,015,000) compared to the post-remediation closed price ($940,000) reflects a 7% diminution w/o accounting for 2.5-years of property appreciation between 12-2009 and 06-2012.

Rosen, Kevin and Stacey



## Certification

We certify that, to the best of our knowledge and belief:

1. The statements of fact contained in this report are true and correct.

2. The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are our personal, impartial, and unbiased professional analyses, opinions, and conclusions.

3. We have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.

4. We have not performed any services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

5. We have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

6. Our engagement in this assignment was not contingent upon developing or reporting predetermined results.

7. Our compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

8. Our analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice as well as applicable state appraisal regulations.

9. The reported analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute.

10. The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

11. Anthony M. Graziano, MAI, CRE did not make a personal inspection of the property that is the subject of this report. Carlos Fong has personally inspected the subject.

12. Significant real property appraisal assistance was provided by Peter G. Kayworth, Yuliya Georgieva, Joseph Melloni and Paul L. Jones.  Additionally, real estate assistance was provided by various Valucentric employees and subcontractors, including: John Barcelo, Angela Barcelo, Fred Stites, Carlos Fong, Sarah D. Wilson and Rob Baird.

13. We have experience in appraising properties similar to the subject and are in compliance with the Competency Rule of USPAP.

14. As of the date of this report, Anthony M. Graziano, MAI, CRE, has completed the continuing education program for Designated Members of the Appraisal Institute.

Anthony M. Graziano, MAI, CRE
Senior Managing Director - Miami
State-Certified General RE Appraiser
FL Certificate # RZ#3510



Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/02/19 Page 156 of 232
Case 1:14-cv-22408-MGC Document 281-4 Entered on FLSD Docket 05/13/2015 Page 42 of 44

Assumptions and Limiting Conditions                                                                    9

## Assumptions and Limiting Conditions

This appraisal and any other work product related to this engagement are limited by the following standard assumptions, <u>except as otherwise noted in the report</u>:

1.  The title is marketable and free and clear of all liens, encumbrances, encroachments, easements and restrictions. The property is under responsible ownership and competent management and is available for its highest and best use.

2.  There are no existing judgments or pending or threatened litigation that could affect the value of the property.

3.  There are no hidden or undisclosed conditions of the land or of the improvements that would render the property more or less valuable. Furthermore, there is no asbestos in the property.

4.  The revenue stamps placed on any deed referenced herein to indicate the sale price are in correct relation to the actual dollar amount of the transaction.

5.  The property is in compliance with all applicable building, environmental, zoning, and other federal, state and local laws, regulations and codes.

6.  The information furnished by others is believed to be reliable, but no warranty is given for its accuracy.

This appraisal and any other work product related to this engagement are subject to the following limiting conditions, except as otherwise noted in the report:

1.  An appraisal is inherently subjective and represents our opinion as to the value of the property appraised.

2.  The conclusions stated in our appraisal apply only as of the effective date of the appraisal, and no representation is made as to the effect of subsequent events.

3.  No changes in any federal, state or local laws, regulations or codes (including, without limitation, the Internal Revenue Code) are anticipated.

4.  No environmental impact studies were either requested or made in conjunction with this appraisal, and we reserve the right to revise or rescind any of the value opinions based upon any subsequent environmental impact studies. If any environmental impact statement is required by law, the appraisal assumes that such statement will be favorable and will be approved by the appropriate regulatory bodies.

5.  Unless otherwise agreed to in writing, we are not required to give testimony, respond to any subpoena or attend any court, governmental or other hearing with reference to the property without compensation relative to such additional employment.

6.  We have made no survey of the property and assume no responsibility in connection with such matters. Any sketch or survey of the property included in this report is for illustrative purposes only and should not be considered to be scaled accurately for size. The appraisal covers the property as described in this report, and the areas and dimensions set forth are assumed to be correct.

Rosen, Kevin and Stacey



Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/02/19 Page 157 of 232
Case 1:14-cv-22405-MGC Document 281-4 Entered on FLSD Docket 05/13/2015 Page 43 of 44

Assumptions and Limiting Conditions                                                    10

7.   No opinion is expressed as to the value of subsurface oil, gas or mineral rights, if any, and we have assumed that the property is not subject to surface entry for the exploration or removal of such materials, unless otherwise noted in our appraisal.

8.   We accept no responsibility for considerations requiring expertise in other fields. Such considerations include, but are not limited to, legal descriptions and other legal matters such as legal title, geologic considerations such as soils and seismic stability; and civil, mechanical, electrical, structural and other engineering and environmental matters. Such considerations may also include determinations of compliance with zoning and other federal, state, and local laws, regulations and codes.

9.   The distribution of the total valuation in the report between land and improvements applies only under the reported highest and best use of the property. The allocations of value for land and improvements must not be used in conjunction with any other appraisal and are invalid if so used. The appraisal report shall be considered only in its entirety. No part of the appraisal report shall be utilized separately or out of context.

10.  Neither all nor any part of the contents of this report (especially any conclusions as to value, the identity of the appraisers, or any reference to the Appraisal Institute) shall be disseminated through advertising media, public relations media, news media or any other means of communication (including without limitation prospectuses, private offering memoranda and other offering material provided to prospective investors) without the prior written consent of the persons signing the report.

11.  Information, estimates and opinions contained in the report and obtained from third-party sources are assumed to be reliable and have not been independently verified.

12.  Any income and expense estimates contained in the appraisal report are used only for the purpose of estimating value and do not constitute predictions of future operating results.

13.  If the property is subject to one or more leases, any estimate of residual value contained in the appraisal may be particularly affected by significant changes in the condition of the economy, of the real estate industry, or of the appraised property at the time these leases expire or otherwise terminate.

14.  Unless otherwise stated in the report, no consideration has been given to personal property located on the premises or to the cost of moving or relocating such personal property; only the real property has been considered.

15.  The current purchasing power of the dollar is the basis for the values stated in the appraisal; we have assumed that no extreme fluctuations in economic cycles will occur.

16.  The values found herein are subject to these and to any other assumptions or conditions set forth in the body of this report but which may have been omitted from this list of Assumptions and Limiting Conditions.

17.  The analyses contained in the report necessarily incorporate numerous estimates and assumptions regarding property performance, general and local business and economic conditions, the absence of material changes in the competitive environment and other matters. Some estimates or assumptions, however, inevitably will not materialize, and unanticipated events and circumstances may occur; therefore, actual results achieved during



Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/02/19 Page 158 of 232
Case 1:14-cv-22403-MGC Document 201-4 Entered on FLSD Docket 05/13/2015 Page 44 of 44

Assumptions and Limiting Conditions                                                    11

the period covered by our analysis will vary from our estimates, and the variations may be material.

18. The Americans with Disabilities Act (ADA) became effective January 26, 1992. We have not made a specific survey or analysis of the property to determine whether the physical aspects of the improvements meet the ADA accessibility guidelines. We claim no expertise in ADA issues, and render no opinion regarding compliance of the subject with ADA regulations. Inasmuch as compliance matches each owner's financial ability with the cost to cure the non-conforming physical characteristics of a property, a specific study of both the owner's financial ability and the cost to cure any deficiencies would be needed for the Department of Justice to determine compliance.

19. The appraisal report is prepared for the exclusive benefit of the Client, its subsidiaries and/or affiliates. It may not be used or relied upon by any other party. All parties who use or rely upon any information in the report without our written consent do so at their own risk.

20. No studies have been provided to us indicating the presence or absence of hazardous materials on the subject property or in the improvements, and our valuation is predicated upon the assumption that the subject property is free and clear of any environment hazards including, without limitation, hazardous wastes, toxic substances and mold. No representations or warranties are made regarding the environmental condition of the subject property. Integra Realty Resources – Miami/Palm Beach, Integra Realty Resources, Inc., Integra Strategic Ventures, Inc. and/or any of their respective officers, owners, managers, directors, agents, subcontractors or employees (the "Integra Parties"), shall not be responsible for any such environmental conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because we are not experts in the field of environmental conditions, the appraisal report cannot be considered as an environmental assessment of the subject property.

21. The persons signing the report may have reviewed available flood maps and may have noted in the appraisal report whether the subject property is located in an identified Special Flood Hazard Area. We are not qualified to detect such areas and therefore do not guarantee such determinations. The presence of flood plain areas and/or wetlands may affect the value of the property, and the value conclusion is predicated on the assumption that wetlands are non-existent or minimal.

22. Integra Realty Resources – Miami/Palm Beach is not a building or environmental inspector. Integra Miami/Palm Beach does not guarantee that the subject property is free of defects or environmental problems. Mold may be present in the subject property and a professional inspection is recommended.

23. The appraisal report and value conclusions for an appraisal assume the satisfactory completion of construction, repairs or alterations in a workmanlike manner.

24. It is expressly acknowledged that in any action which may be brought against any of the Integra Parties, arising out of, relating to, or in any way pertaining to this engagement, the appraisal reports, and/or any other related work product, the Integra Parties shall not be responsible or liable for any incidental or consequential damages or losses, unless the appraisal was fraudulent or prepared with intentional misconduct. It is further acknowledged



Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/02/19 Page 159 of 232
Case 1:11-cv-22408-MGC Document 201-4 Entered on FLSD Docket 05/13/2015 Page 45 of 44

Assumptions and Limiting Conditions                                                      12

that the collective liability of the Integra Parties in any such action shall not exceed the fees paid for the preparation of the appraisal report unless the appraisal was fraudulent or prepared with intentional misconduct. Finally, it is acknowledged that the fees charged herein are in reliance upon the foregoing limitations of liability.

25. Integra Realty Resources – Miami/Palm Beach, an independently owned and operated company, has prepared the appraisal for the specific intended use stated elsewhere in the report. The use of the appraisal report by anyone other than the Client is prohibited except as otherwise provided. Accordingly, the appraisal report is addressed to and shall be solely for the Client's use and benefit unless we provide our prior written consent. We expressly reserve the unrestricted right to withhold our consent to your disclosure of the appraisal report or any other work product related to the engagement (or any part thereof including, without limitation, conclusions of value and our identity), to any third parties. Stated again for clarification, unless our prior written consent is obtained, no third party may rely on the appraisal report (even if their reliance was foreseeable).

26. The conclusions of this report are estimates based on known current trends and reasonably foreseeable future occurrences. These estimates are based partly on property information, data obtained in public records, interviews, existing trends, buyer-seller decision criteria in the current market, and research conducted by third parties, and such data are not always completely reliable. The Integra Parties are not responsible for these and other future occurrences that could not have reasonably been foreseen on the effective date of this assignment. Furthermore, it is inevitable that some assumptions will not materialize and that unanticipated events may occur that will likely affect actual performance. While we are of the opinion that our findings are reasonable based on current market conditions, we do not represent that these estimates will actually be achieved, as they are subject to considerable risk and uncertainty. Moreover, we assume competent and effective management and marketing for the duration of the projected holding period of this property.

27. All prospective value opinions presented in this report are estimates and forecasts which are prospective in nature and are subject to considerable risk and uncertainty. In addition to the contingencies noted in the preceding paragraph, several events may occur that could substantially alter the outcome of our estimates such as, but not limited to changes in the economy, interest rates, and capitalization rates, behavior of consumers, investors and lenders, fire and other physical destruction, changes in title or conveyances of easements and deed restrictions, etc. It is assumed that conditions reasonably foreseeable at the present time are consistent or similar with the future.

Rosen, Kevin and Stacey



Addenda

# Addenda



| Borrower | Kevin & Stacey Rosen | | | File No. | VALU-18-12-1468 |
|---|---|---|---|---|---|
| Property Address | 17830 Monte Vista Dr | | | | |
| City | Boca Raton | County | Palm Beach | State | FL | Zip Code | 33496 |
| Lender/Client | Integra Realty Resources (IRR) | | | | |

## TABLE OF CONTENTS



USPAP Identification Addendum ................................................................................. 1
Exterior-Only ............................................................................................................... 2
Single Family Comparable Rent Schedule ................................................................. 8
General Text Addendum ............................................................................................. 9
Subject Photos ........................................................................................................... 12
Comparable Photos 1-3 .............................................................................................. 13
Rental Photos 1-3 ....................................................................................................... 14
Assessor Map .............................................................................................................. 15
Subject Aerial Map ...................................................................................................... 16
Location Map ............................................................................................................... 17
Assessor Data ............................................................................................................. 18
MLS Listing Sheet ....................................................................................................... 19
MLS Listing History ..................................................................................................... 20
Tax Information ........................................................................................................... 21
License ........................................................................................................................ 22

# USPAP ADDENDUM

VALU-18-12-1468
File No. VALU-18-12-1468

| Borrower | Kevin & Stacey Rosen | | | | |
|---|---|---|---|---|---|
| Property Address | 17830 Monte Vista Dr | | | | |
| City | Boca Raton | County Palm Beach | | State FL | Zip Code 33496 |
| Lender | Integra Realty Resources (IRR) | | | | |

This report was prepared under the following USPAP reporting option:

☒ Appraisal Report      This report was prepared in accordance with USPAP Standards Rule 2-2(a).

☐ Restricted Appraisal Report      This report was prepared in accordance with USPAP Standards Rule 2-2(b).

**Reasonable Exposure Time**
My opinion of a reasonable exposure time for the subject property at the market value stated in this report is:    90-180 DAYS
EXPOSURE TIME: estimated length of time that the property interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of the appraisal.

USPAP 2018-19 Comment: Exposure time is a retrospective opinion based on an analysis of past events assuming a competitive and open market

**Additional Certifications**
I certify that, to the best of my knowledge and belief:

☒ I have NOT performed services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

☐ I HAVE performed services, as an appraiser or in another capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment. Those services are described in the comments below.

- The statements of fact contained in this report are true and correct.
- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.
- Unless otherwise indicated, I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.
- I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.
- My engagement in this assignment was not contingent upon developing or reporting predetermined results.
- My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice that were in effect at the time this report was prepared.
- Unless otherwise indicated, I have made a personal inspection of the property that is the subject of this report.
- Unless otherwise indicated, no one provided significant real property appraisal assistance to the person(s) signing this certification (if there are exceptions, the name of each individual providing significant real property appraisal assistance is stated elsewhere in this report).

**Additional Comments**

APPRAISER COMPETENCY

An appraiser must determine, prior to accepting an assignment, that he or she can perform the assignment competently. Competency requires:

1. the ability to properly identify the problem to be addressed; and
2. the knowledge and experience to complete the assignment competently; and
3. recognition of, and compliance with, laws and regulations that apply to the appraiser or to the assignment.

I am competent to perform this assignment based on my state appraiser license and familiarity with this type of property in the subject market

I performed this appraisal in accordance with the requirements of Title XI of the Financial Institution Reform, Recovery and Enforcement Act of 1989, (12 U.S.C.3331 et seq.), and any implementing regulations

| **APPRAISER:** | **SUPERVISORY APPRAISER: (only if required)** |
|---|---|
| Signature: *Carlos Fong* | Signature: |
| Name: Carlos Fong | Name: |
| Date Signed: 02/13/2019 | Date Signed: |
| State Certification #: RD 6782 | State Certification #: |
| or State License #: | or State License #: |
| State: FL | State: |
| Expiration Date of Certification or License: 11/30/2020 | Expiration Date of Certification or License: |
| Effective Date of Appraisal: 12/23/2009 | Supervisory Appraiser Inspection of Subject Property: |
| | ☐ Did Not   ☐ Exterior-only from Street   ☐ Interior and Exterior |

**Exterior-Only Inspection Residential Appraisal Report**

VALU-18-12-1468
File # VALU-18-12-1468

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| | |
|---|---|
| Property Address | 17830 Monte Vista Dr | City Boca Raton | State FL | Zip Code 33496 |
| Borrower Kevin & Stacey Rosen | Owner of Public Record Kevin & Stacey Rosen | County Palm Beach |
| Legal Description OAKS AT BOCA RATON PL 6 LT 30 BLK G1 |
| Assessor's Parcel # 00-42-46-31-07-007-0300 | Tax Year 2017 | R.E. Taxes $ 14,008 |
| Neighborhood Name Oaks at Boca Raton | Map Reference 48424 | Census Tract 0077.43 |
| Occupant ☒ Owner ☐ Tenant ☐ Vacant | Special Assessments $ 0 | ☐ PUD | HOA $ 0 | ☐ per year ☐ per month |
| Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe) |
| Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe) Litigation |
| Lender/Client Integra Realty Resources (IRR) | Address 9155 South Dadeland Boulevard, Miami, FL 33156 |
| Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☒ Yes ☐ No |
| Report data source(s) used, offering price(s), and date(s). DOM 84; See attached listing history |

| | |
|---|---|
| I ☐ did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed. |
| Contract Price $ | Date of Contract | Is the property seller the owner of public record? ☐ Yes ☐ No Data Source(s) |
| Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☐ No |
| If Yes, report the total dollar amount and describe the items to be paid. |

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | Property Values ☐ Increasing ☒ Stable ☐ Declining | PRICE $ (000) | AGE (yrs) | One-Unit 90 % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | | | 2-4 Unit % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | Marketing Time ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | 266 Low 0 | | Multi-Family 5 % |
| Neighborhood Boundaries The subject is bound to the north by Gulf Stream, to the west by FL Route 441, | 2,575 High 40 | | Commercial 5 % |
| to the east by Lyons Rd and to the south by Clint Moore Rd. | 1,413 Pred. 25 | | Other % |
| Neighborhood Description There are no apparent factors that should affect the subject's marketability. The subject has access to all necessary | | | | | |
| supporting facilities including schools, shopping, recreation and employment centers. | | | | | |
| Market Conditions (including support for the above conclusions) See Attached Addendum | | | | | |

| | |
|---|---|
| Dimensions Per Palm Beach County Assr | Area 13,068 sf | Shape Irregular | View N;Res; |
| Specific Zoning Classification AGR-PUD | Zoning Description Agricultural Reserve PUD (00-Unincorporated) |
| Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe) |
| Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No If No, describe |

| Utilities | Public | Other (describe) | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water ☒ | | Street Asphalt | ☒ | |
| Gas | ☒ | | Sanitary Sewer ☒ | | Alley None | ☒ | |

| | |
|---|---|
| FEMA Special Flood Hazard Area ☐ Yes ☒ No | FEMA Flood Zone X | FEMA Map # 12099C0965F | FEMA Map Date 10/5/2017 |
| Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No If No, describe |
| Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No If Yes, describe |
| No observed or known adverse influences to market value were noted. |

| Source(s) Used for Physical Characteristics of Property | ☐ Appraisal Files ☒ MLS ☒ Assessment and Tax Records ☐ Prior Inspection ☐ Property Owner |
|---|---|
| ☐ Other (describe) | Data Source for Gross Living Area Assessor |

| General Description | General Description | Heating/Cooling | Amenities | Car Storage |
|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | ☒ Concrete Slab ☐ Crawl Space | ☒ FWA ☐ HWBB | Fireplace(s) # 0 ☐ None | ☐ None |
| # of Stories 2 | ☐ Full Basement ☐ Finished | ☐ Radiant | Woodstove(s) # 0 | ☒ Driveway # of Cars 3 |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | ☐ Partial Basement ☐ Finished | ☐ Other | ☒ Patio/Deck Patio | Driveway Surface Pavers |
| ☒ Existing ☐ Proposed ☐ Under Const. | Exterior Walls CBS | Fuel Gas/Elec. | ☒ Porch Entry | ☒ Garage # of Cars 3 |
| Design (Style) Mediterranean | Roof Surface S-Tile | ☒ Central Air Conditioning | ☒ Pool Pool | ☐ Carport # of Cars |
| Year Built 2006 | Gutters & Downspouts Alum | ☐ Individual | ☒ Fence Fence | ☒ Attached ☐ Detached |
| Effective Age (Yrs) 3 | Window Type Pic./SH | ☐ Other | ☐ Other | ☐ Built-in |
| Appliances ☒ Refrigerator ☒ Range/Oven ☒ Dishwasher ☒ Disposal ☒ Microwave ☒ Washer/Dryer ☐ Other (describe) | | | | |
| Finished area above grade contains: 9 Rooms 5 Bedrooms 5.2 Bath(s) 4,674 Square Feet of Gross Living Area Above Grade | | | | |
| Additional features (special energy efficient items, etc.) None | | | | |

| | |
|---|---|
| Describe the condition of the property and data source(s) (including apparent needed repairs, deterioration, renovations, remodeling, etc.). Upon visual inspection of the |
| neighborhood the property was located in a gated community where public access was restricted. We therefore assume the subject is in |
| average condition relative to our observations of the general condition of the neighborhood. |

| | |
|---|---|
| Are there any apparent physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No |
| If Yes, describe. |
| There are no apparent external or functional inadequacies noted or reported at time of inspection. Physical depreciation is calculated by the |
| modified age life method. |

| | |
|---|---|
| Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No If No, describe. |
| The construction quality is typical for the neighborhood. |

| | | |
|---|---|---|
| Freddie Mac Form 2055 March 2005 | Page 1 of 6 | Fannie Mae Form 2055 March 2005 |

**Exterior–Only Inspection Residential Appraisal Report**

VALU-18-12-1468
File # VALU-18-12-1468

| | | | |
|---|---|---|---|
| There are | 26 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 875,000 | to $ 3,750,000 . |
| There are | 11 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 1,015,000 | to $ 2,575,000 . |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 17830 Monte Vista Dr | 17800 Key Vista Way | | 9684 Bridgebrook Dr | | 9068 Redonda Dr | |
| | Boca Raton, FL 33496 | Boca Raton, FL 33496 | | Boca Raton, FL 33496 | | Boca Raton, FL 33496 | |
| Proximity to Subject | | 0.32 miles W | | 0.49 miles W | | 0.21 miles E | |
| Sale Price | $ | | $ 1,015,000 | | $ 1,200,000 | | $ 1,300,000 |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 182.59 sq.ft. | | $ 205.62 sq.ft. | | $ 228.95 sq.ft. | |
| Data Source(s) | | SEF #R3047057;DOM 51 | | SEF #R2996463;DOM 81 | | SEF #R3001359;DOM 31 | |
| Verification Source(s) | | Assessor, Realist | | Assessor, Realist | | Assessor, Realist | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | Arms Length | | Arms Length | | Arms Length | |
| Concessions | | Cash;0 | | Conv;0 | | Cash;0 | |
| Date of Sale/Time | | s10/09;c10/09 | | s06/09;c05/09 | | s05/09;c03/09 | |
| Location | Residential | Residential | | Residential | | Residential | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 13068 sf | 12632 sf | 0 | 11761 sf | 0 | 17873 sf | -24,025 |
| View | Residential | Residential | | Residential | | Residential | |
| Design (Style) | Mediterranean | Mediterranean | | Mediterranean | | Mediterranean | |
| Quality of Construction | Good | Good | | Good | | Good | |
| Actual Age | 3 | 2 | | 3 | | 0 | |
| Condition | Good | Good | | Good | | New | -100,000 |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 9 5 5.2 | 9 5 5.1 | +10,000 | 9 5 5.1 | +10,000 | 9 5 5.1 | +10,000 |
| Gross Living Area | 4,674 sq.ft. | 5,559 sq.ft. | -88,500 | 5,836 sq.ft. | -116,200 | 5,678 sq.ft. | -100,400 |
| Basement & Finished | No Basement | No Basement | | No Basement | | No Basement | |
| Rooms Below Grade | None | None | | None | | None | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | EFA/CAC | EFA/CAC | | EFA/CAC | | EFA/CAC | |
| Energy Efficient Items | None | None | | None | | None | |
| Garage/Carport | 3-Car Garage | 3-Car Garage | | 3-Car Garage | | 3-Car Garage | |
| Porch/Patio/Deck | Blcs/Pto/Porch | Blcs/Pto/Porch | | Blcs/Pto/Porch | | Blcs/Pto/Porch | |
| Net Adjustment (Total) | | ☐ + ☒ - | $ -78,500 | ☐ + ☒ - | $ -106,200 | ☐ + ☒ - | $ -214,425 |
| Adjusted Sale Price | | Net Adj. 7.7 % | | Net Adj. 8.9 % | | Net Adj. 16.5 % | |
| of Comparables | | Gross Adj. 9.7 % $ | 936,500 | Gross Adj. 10.5 % $ | 1,093,800 | Gross Adj. 18.0 % $ | 1,085,575 |

☐ I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s) MIAMI MLS, Palm Beach County Records, and Realist
My research ☒ did ☐ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s) MIAMI MLS, Palm Beach County Records, and Realist
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | 10/14/2009 | | 05/06/2009 |
| Price of Prior Sale/Transfer | | 0 | | 0 |
| Data Source(s) | MLS, Assessor, Realist | MLS, Assessor, Realist | MLS, Assessor, Realist | MLS, Assessor, Realist |
| Effective Date of Data Source(s) | 12/23/2009 | 12/23/2009 | 12/23/2009 | 12/23/2009 |

Analysis of prior sale or transfer history of the subject property and comparable sales    Per public record, the Subject sold on 03/29/2018 for $835,000 from
Michael & Valerie Z Buckstein to Ronald Y & Gail Marsh (Warranty Deed #29747-1454) and is an arms length sale. The Subject sold on
12/23/2009 for $501,000 from Kevin & Stacey Rosen to Florida Campbell R/E Holdings (Warranty Deed #23622-870) and is an arms length sale.
The Subject transferred on 04/30/2009 for $0 from Oakes at Boca Raton Venture to Albanese-Popkin The Oaks Dev G (Special Warranty Deed
#23215-208). The Subject sold on 02/06/2008 for $2,112,569 from Kenco of the Oaks/Boca Raton to Aerocav Ltd (Special Warranty Deed
#22435-370) and is an arms length sale.
Summary of Sales Comparison Approach    See Attached Addendum

Indicated Value by Sales Comparison Approach $  1,015,000

Indicated Value by: Sales Comparison Approach $  1,015,000    Cost Approach (if developed) $    Income Approach (if developed) $

The cost approach is not applicable. Insufficient data is available to compute the income approach. Thus the Sales Comparison Approach is
most readily reflects active buyers / sellers.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been
completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the
following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:  No special conditions are noted.
Personal property is not included in this valuation.
Based on a visual inspection of the exterior areas of the subject property from at least the street, defined scope of work, statement of assumptions and limiting
conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$  1,015,000  , as of  12/23/2009  , which is the date of inspection and the effective date of this appraisal.

**Exterior–Only Inspection Residential Appraisal Report**

VALU-18-12-1468
**File #** VALU-18-12-1468

PLEASE ATTACHED ADDENDUM FOR FURTHER INFORMATION

**ADDITIONAL COMMENTS**

**COST APPROACH TO VALUE (not required by Fannie Mae)**

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)  Site value is estimated and/or supported by the

sales comparison approach whenever data is available, otherwise extraction method is used.

| | |
|---|---|
| ESTIMATED ☐ REPRODUCTION OR ☐ REPLACEMENT COST NEW | OPINION OF SITE VALUE .................................... =$ 150,000 |
| Source of cost data   N/A | DWELLING   4,674 Sq Ft. @ $ .......... =$ |
| Quality rating from cost service   N/A   Effective date of cost data   N/A | Sq Ft. @ $ .......... =$ |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | .......... =$ |
| The cost approach was not applied as the area is fully built up and there | Garage/Carport   Sq Ft. @ $ .......... =$ |
| is no vacant land available, except where an existing house will be torn | Total Estimate of Cost-New .......... =$ |
| down.  In addition, physical depreciation is often difficult to estimate for | Less   Physical   Functional   External |
| homes over 5 years of age.  Although the Cost Approach could be | Depreciation   =$( ) |
| considered an applicable approach to value, it is not typically relied | Depreciated Cost of Improvements .................................... =$ |
| upon by market participants for one to four family properties. | "As-is" Value of Site Improvements .................................... =$ |
| Estimated Remaining Economic Life (HUD and VA only)   57 Years | INDICATED VALUE BY COST APPROACH .................................... =$ |

**INCOME APPROACH TO VALUE (not required by Fannie Mae)**

| | |
|---|---|
| Estimated Monthly Market Rent $   8,000   X Gross Rent Multiplier   = $ | Indicated Value by Income Approach |

Summary of Income Approach (including support for market rent and GRM)   The income approach is not applicable to this report as homes in the area are

typically owner occupied.

**PROJECT INFORMATION FOR PUDs (if applicable)**

Is the developer/builder in control of the Homeowners' Association (HOA)?   ☐ Yes ☐ No   Unit type(s) ☐ Detached ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

| | | |
|---|---|---|
| Total number of phases | Total number of units | Total number of units sold |
| Total number of units rented | Total number of units for sale | Data source(s) |

Was the project created by the conversion of existing building(s) into a PUD?   ☐ Yes   ☐ No  If Yes, date of conversion

Does the project contain any multi-dwelling units?   ☐ Yes   ☐ No  Data Source(s)

Are the units, common elements, and recreation facilities complete?   ☐ Yes   ☐ No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?   ☐ Yes   ☐ No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

Form 2055 - "TOTAL" appraisal software by a la mode, inc. · 1-800-ALAMODE

**Exterior-Only Inspection Residential Appraisal Report**

VALU-18-12-1468
File # VALU-18-12-1468

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

SCOPE OF WORK:  The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a visual inspection of the exterior areas of the subject property from at least the street, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

The appraiser must be able to obtain adequate information about the physical characteristics (including, but not limited to, condition, room count, gross living area, etc.) of the subject property from the exterior-only inspection and reliable public and/or private sources to perform this appraisal. The appraiser should use the same type of data sources that he or she uses for comparable sales such as, but not limited to, multiple listing services, tax and assessment records, prior inspections, appraisal files, information provided by the property owner, etc.

INTENDED USE:  The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

INTENDED USER:  The intended user of this appraisal report is the lender/client.

DEFINITION OF MARKET VALUE:  The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:  The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

3. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

4. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

5. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Form 2055 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

**Exterior-Only Inspection Residential Appraisal Report**

APPRAISER'S CERTIFICATION:    The   Appraiser   certifies   and   agrees   that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a visual inspection of the exterior areas of the subject property from at least the street. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

## Exterior-Only Inspection Residential Appraisal Report

VALU-18-12-1468
File # VALU-18-12-1468

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

SUPERVISORY APPRAISER'S CERTIFICATION:    The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature  *Carlos Fong* | Signature |
| Name  Carlos Fong | Name |
| Company Name  Valucentric LLC | Company Name |
| Company Address  7908 Montecito Pl, Delray Beach, FL 33446 | Company Address |
| Telephone Number  (844) 825-8236 | Telephone Number |
| Email Address  info@valucentric.com | Email Address |
| Date of Signature and Report  02/13/2019 | Date of Signature |
| Effective Date of Appraisal  12/23/2009 | State Certification # |
| State Certification #  RD 6782 | or State License # |
| or State License # | State |
| or Other (describe)                          State # | Expiration Date of Certification or License |
| State  FL | |
| Expiration Date of Certification or License  11/30/2020 | SUBJECT PROPERTY |
| ADDRESS OF PROPERTY APPRAISED | ☐ Did not inspect exterior of subject property |
| 17830 Monte Vista Dr | ☐ Did inspect exterior of subject property from street |
| Boca Raton, FL 33496 | Date of Inspection |
| APPRAISED VALUE OF SUBJECT PROPERTY $  1,015,000 | COMPARABLE SALES |
| LENDER/CLIENT | |
| Name | ☐ Did not inspect exterior of comparable sales from street |
| Company Name  Integra Realty Resources (IRR) | ☐ Did inspect exterior of comparable sales from street |
| Company Address  9155 South Dadeland Boulevard, Miami, FL 33156 | Date of Inspection |
| Email Address | |

Form 2055 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

# SINGLE FAMILY COMPARABLE RENT SCHEDULE

File # VALU-18-12-1468
VALU-18-12-1468

This form is intended to provide the appraiser with a familiar format to estimate the market rent of the subject property. Adjustments should be made only for items of significant difference between the comparables and the subject property.

| ITEM | SUBJECT | COMPARABLE NO. 1 | | COMPARABLE NO. 2 | | COMPARABLE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 17830 Monte Vista Dr<br>Boca Raton, FL 33496 | 17554 Middlebrook Way<br>Boca Raton, FL 33496 | | 17690 Middlebrook Way<br>Boca Raton, FL 33496 | | 17979 Lake Azure Way<br>Boca Raton, FL 33496 | |
| Proximity to Subject | | 0.52 miles W | | 0.44 miles NW | | 0.22 miles SW | |
| Date Lease Begins<br>Date Lease Expires | | 02/08<br>Unk | | 05/09<br>Unk | | 11/07<br>Unk | |
| Monthy Rental | If Currently<br>Rented: $ | $ 10,000 | | $ 8,500 | | $ 8,000 | |
| Less: Utilities<br>Furniture | $ | $ | | $ | | $ | |
| Adjusted<br>Monthly Rent | $ | $ 10,000 | | $ 8,500 | | $ 8,000 | |
| Data Source | MLS, Inspection<br>Assessor, Realist | MLS #R2899264<br>Assessor, Realist | | MLS #R3005050<br>Assessor, Realist | | MLS #R2873477<br>Assessor, Realist | |
| RENT ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. |
| Rent<br>Concessions | | | | | | | |
| Location/View | Residential<br>Residential | Residential<br>Residential | | Residential<br>Residential | | Residential<br>Residential | |
| Design and Appeal | Mediterranean | Mediterranean | | Mediterranean | | Mediterranean | |
| Age/Condition | 3<br>Good | 7<br>Good | | 5<br>Good | | 3<br>Good | |
| Above Grade<br>Room Count<br>Gross Living Area | Total│Bdrms│Baths<br>9 │ 5 │ 5.2<br>4,674 Sq. Ft. | Total│Bdrms│Baths<br>9 │ 5 │ 5.2<br>4,882 Sq. Ft. | | Total│Bdrms│Baths<br>10 │ 6 │ 6.2<br>4,986 Sq. Ft. | | Total│Bdrms│Baths<br>9 │ 5 │ 4.2<br>4,661 Sq. Ft. | |
| Other (e.g., basement,<br>etc.) | No Basement<br>None | No Basement<br>None | | No Basement<br>None | | No Basement<br>None | |
| Other: | | | | | | | |
| Net Adj. (total) | | ☐ + ☐ − $ | 0 | ☐ + ☐ − $ | 0 | ☐ + ☐ − $ | 0 |
| Indicated Monthly<br>Market Rent | | $ 10,000 | | $ 8,500 | | $ 8,000 | |

Comments on market data, including the range of rents for single family properties, an estimate of vacancy for single family rental properties, the general trend of rents and vacancy, and support for the above adjustments. (Rent concessions should be adjusted to the market, not to the subject property.) Rentals of comparable style dwellings ranged from $8,000 to $10,000.

Final Reconciliation of Market Rent:    All rentals were taken into the final consideration. The opinion of market rent is $8,000

I (WE) ESTIMATE THE MONTHLY MARKET RENT OF THE SUBJECT AS OF    12/23/2009    TO BE $    8,000

Appraiser(s) SIGNATURE *Carlos Fong*    Review Appraiser SIGNATURE
NAME  Carlos Fong    (If applicable)    NAME
Certified Residential Appraiser
Date Property Inspected  12/23/2009    Report Signed  02/13/2019    Date Property Inspected    Report Signed
License or Certification #  RD 6782    State  FL    License or Certification #    State
Expiration Date of License or Certification    11/30/2020    Expiration Date of License or Certification
Review Appraiser  ☐ Did  ☐ Did Not  Inspect Subject Property

Freddie Mac Form 1000  (8/88)    Fannie Mae Form 1007  (8/88)

Form 1007 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

**Supplemental Addendum**

File No. VALU-18-12-1468

| Borrower | Kevin & Stacey Rosen | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 17830 Monte Vista Dr | | | | | | |
| City | Boca Raton | County | Palm Beach | State | FL | Zip Code | 33496 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |

**PURPOSE OF APPRAISAL REPORT**

The purpose of this appraisal is to estimate the market value of the subject property as defined herein. The function of the appraisal is to assist the above-named Lender/Client, its successors and/or assigns, in evaluating the subject property for lending purposes. This is a federally regulated transaction. Additional supporting data can be found in our appraisal work file.

It is assumed that the title to this property is good and marketable. No title search has been made, nor have we attempted to determine ownership of the property. The value estimate is given without regard to any questions of title, boundaries, or encroachments. It is assumed that all assessments are paid. We assume the property to be free and clear of liens and encumbrances except as noted.

The legal description, if included herein, should be verified by legal counsel before being relied upon or used in any conveyance or other document.

We are not familiar with any engineering studies made to determine the bearing capacity of the land. Improvements in the area appear to be structurally sound. It is therefore assumed that soil and subsoil conditions are stable unless specifically outlined in this report.

Any exhibits in the report are intended to assist the reader in visualizing the property and its surroundings. The drawings are not intended as surveys and no responsibility is assumed for their cartographic accuracy. Drawings are not intended to be exact in size, scale or detail.

Areas and dimensions of the property were physically measured. If data is furnished by the principal or from plot plans or surveys furnished by the principal, or from public records, we assume it to be reasonably accurate. In the absence of current surveys, land areas may be based upon representations made by the owner's agents or the client. No attempt has been made to render an opinion or determine the status of easements that may exist. No responsibility is assumed for discrepancies that may become evident from a licensed survey of the property.

The value estimate involves only the real estate and all normal building equipment if any improvements are involved. No consideration was given to personal property, (or special equipment), unless stated.

It is assumed that the property is subject to lawful, competent and informed ownership and management unless noted.

Information in this report concerning market data was obtained from buyers, sellers, brokers, attorneys, trade publications or public records. To the extent possible, this information was examined for accuracy and is believed to be reliable. Dimensions, areas or data obtained from others is believed correct; however, no guarantee is made.

Any information, in whatever form, furnished by others is believed to b e reliable; however, no responsibility is assumed for accuracy.

The separate allocations between land and improvements, if applicable, represents our judgment only under the existing utilization of the property. A re-evaluation should be made if the improvements are removed or substantially altered, and the land utilized for another purpose.

All information and comments concerning the location, neighborhood trends, construction quality and costs, loss in value from whatever cause, condition, rents, or any other data for the property appraised herein, represents the estimates and opinions of the appraiser formed after an examination and study of the property.

Any valuation analysis of the income stream has been predicted upon financing conditions as specified herein, which we have reason to believe are currently available for this property. Financing terms and conditions other than those indicated may alter the final value conclusions.

The appraiser is not required to give testimony or appear in court because of having made this appraisal, with reference to the property in question, unless arrangements have been made previously thereto. If the appraiser (s) is subpoenaed pursuant to court order, the client will be required to compensate said appraiser(s) for his/her time at his/her regular hourly rates, plus expenses.

All opinions, as to values stated, are presented as the appraiser's considered opinion based on the information set forth in the report and his experience. We assume no responsibility for changes in market conditions or for the inability of the client or any other party to achieve their desired results based upon the appraised value. Further, some of the assumptions made can be subject to variation depending upon evolving events. We realize some assumptions may never occur and unanticipated events or circumstances may occur. Therefore, actual results achieved during the projection period may vary from those in this report.

The appraisal assignment was not based on developing or reporting predetermined results, or a requested minimum valuation, a specific valuation, or the approval of a loan.

Our analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the requirements of: USPAP Uniform Standards of Professional Appraisal Practice, and SPP-AI Code of Professional Ethics and the Standards of Professional Practice of the Appraisal Institute; and, except as noted in the Scope of Appraisal, in conformity with specific implementation rules of the following agencies:

FIRREA Title XI of the Financial Institutions Reform, Recovery and Enforcement Act and section 5(b) of the Bank Company Holding Act; FRB – Federal Reserve Board; RTC-Resolution Trust Corporation; OTS-Office of Thrift Supervision; FDIC – Federal Deposit Insurance Corporation; OTC – Office of the Comptroller; NCUA – National Credit Union Association.

**THE APPRAISER HAS PREPARED THIS APPRAISAL IN FULL COMPLIANCE WITH THE APPRAISAL INDEPENDENCE REQUIREMENTS AND HAS NOT PERFORMED, PARTICIPATED IN, OR BEEN ASSOCIATED WITH ANY ACTIVITY IN VIOLATION OF AIR.**

**AT THE REQUEST OF THE CLIENT, THIS APPRAISAL REPORT HAS BEEN PREPARED IN COMPLIANCE WITH THE**

**Supplemental Addendum**

File No. VALU-18-12-1468

| | |
|---|---|
| Borrower | Kevin & Stacey Rosen |
| Property Address | 17830 Monte Vista Dr |
| City | Boca Raton | County | Palm Beach | State | FL | Zip Code | 33496 |
| Lender/Client | Integra Realty Resources (IRR) |

**UNIFORM APPRAISAL DATASET (UAD) FROM FANNIE MAE AND FREDDIE MAC. THE UAD REQUIRES THE APPRAISER TO USE STANDARDIZED RESPONSES THAT INCLUDE SPECIFIC FORMATS, DEFINITIONS, ABBREVIATIONS, AND ACRONYMS.**

We do not authorize the out-of-context quoting from or partial reprinting of this appraisal report.  Further, neither all nor any part of the contents of this report (especially any conclusions as to value, the identity of the appraiser nor the name of the firm which he is connected, shall be reproduced, published, or disseminated to the public through advertising media, public relations media, news media, or another public means of communication, without the prior written consent of the appraiser signing this report.

Adobe's Distiller software or equivalent may be utilized by appraiser to transmit this encrypted PDF-formatted appraisal.  At a minimum, the software contains the following security measure:

- identifies transmission error during the transmission process, and confirms date, time and quantity of data submitted by appraiser and the date, time and quantity of data received by the Client, and/or its assigns and
- secures data from editing by means of a password, hardware device, or other means that remains in the sole control of the transmitting appraiser.

**THIRTY SIX MONTH LISTING HISTORY**

We are not aware of any prior listings pertaining to the subject property in the past three years as researched through the local Multiple Listing Service.

**NEIGHBORHOOD MARKET CONDITIONS**

No discounts, buy downs or other concessions were noted.  Current 30 year fixed rate financing at 4.5 - 5.5% and 0-2 points.

Stricter Lending Standards and the availability of Mortgage Capital may affect the average sales prices in the area, however, given the market data analyzed by the appraiser, there are no fiscal or economic trends expected to occur that would significantly impact the relatively stable market currently experienced in this neighborhood.

Neighborhood conditions can be found in detail in the attached 1004MC form.

**1004 MARKET CONDITIONS COMMENTS**

Market Conditions Addendum Criteria included XXXXXXXXXXX.

*In the past three months, there were XXX dwellings sold with a median sales price of $XXXXXX.  In the previous four to six months, there were XXX dwellings sold with a median sales price of $XXX,XXX.  In the prior 7-12 months the median price was $XXX,XXX and XX units sold.  This data supports stable values in the market.*

This report is provided "as is" for information purposes only and DynaConnections expressly disclaims any warranties regarding accuracy or completeness.  DynaConnections makes no representation or warranties about
the legality or propriety of the use of this report for any purpose, including for purposes related to appraisals.  DynaConnections disclaims any warranties of merchantability, fitness for a particular purpose, or warranties
based on course of dealing or usage in trade.

**SITE COMMENTS**

This site is very typical of the neighborhood in terms of size, topography, view and general appeal.  It provides a suitable setting for the improvements and is consistent with market expectations in this price range.  Statements regarding zoning compliance are intended only in the most general sense.  Zoning and building ordinances vary significantly from one municipality to another and can be extremely detailed.  The scope of this assignment does not include a comparison of every potentially significant characteristic of the subject property's site and improvements relative to zoning and building ordinances.  Unless otherwise noted, standard utility and right-of-way easements are insignificant to value.  However, a current locational or boundary survey or title report may reveal encroachments, easements, zoning violations or other matters of interest that could warrant modification of the appraised value.

**COMMENTS REGARDING HIGHEST AND BEST USE**

In compliance with USPAP the following is included in the appraisal;
•        The current use of the real estate as of the date of value is Residential as described in the improvements section of this appraisal.

•        The use of the real estate reflected in this appraisal is as currently improved

•        The rationale and support for the opinion of highest and best use developed for this assignment is as per below:
Highest and Best Use is defined as "The reasonably probable and legal use of vacant land or an improved property that is physically possible, appropriately supported, financially feasible, and that results in the highest value. The four criteria the highest and best use must meet are legal permissibility, physical possibility, financial feasibility, and maximum productivity. Alternatively, the probable use of land or improved property-specific with respect to the user and timing of the use-that is adequately supported and results in the highest present value"
Source: Appraisal Institute, The Dictionary of Real Estate Appraisal, 5th ed. (Appraisal Institute, 2010).
The highest and best use analysis is a critical step in the valuation process. The comparable properties incorporated into the appraisal are directly affected by the highest and best use analysis. The analysis is based on the use that a hypothetical purchaser would make of the property based on the four tests cited above:
•        Legally Permissible
•        Physically Possible
•        Financially Feasible
•        Maximally Productive

## Supplemental Addendum

File No. VALU-18-12-1468

| Borrower | Kevin & Stacey Rosen | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 17830 Monte Vista Dr | | | | | | |
| City | Boca Raton | County | Palm Beach | State | FL | Zip Code | 33496 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |

After consideration of the above criteria it has been determined that the current improvements continue to contribute to the total market value of the property and the return from a new improvement would not currently offset the cost of demolishing the existing improvements and constructing a new one. Therefore, the highest and best use is as improved.

**COMMENTS ON SALES COMPARISON APPROACH**

All comparables proivded strong support. The most weight, and opinion of value fell on comparables 1, and 2, for being the most recent sales. The opinion fell near the lower end of the unadjusted range, due to the GLA.

Comparables were adjusted for their differences in lot square footages, overall condition, above grade bathroom count, and gross living area. Gross living area adjustments were made at $100 per square foot. Comparables within 100 square feet of the subject property did not warrant an adjustment. Lot adjustments were made at $5 per square foot. No lot size adjustments were warranted for lot size differences within 20% of the subject lot size as no market data exists to support an adjustment. Comparable 3 received a negative condition adjustment, for being brand new construction.

The remaining adjustments are indicated on the sales comparison grid.

**RECONCILIATION**

The sales comparison approach was considered most applicable for the subject property because a typical buyer or seller would most readily understand and apply this approach. The income approach was not considered applicable due to the fact that the majority of housing stock in the area is owner occupied and not typically used for investment property. The cost approach was not completed due to the subjectivity in estimating depreciation and because the typical buyer does not base price points on the cost approach. The quality of available data utilized in the Sales comparison Approach was considered adequate.

**EXTERIOR INSPECTION ADDENDA**

The appraiser has been requested to perform an appraisal based on an exterior only inspection and not to disturb the occupants by entering the building. The physical characteristics used to develop this appraisal are based on the assessment records of Palm Beach County, Florida and on the multiple listing service. The subject property was observed from the public street as of the effective date of the appraisal. On the basis of the observed conditions, the assessment records and multiple listing service information appear to be accurate. For the purposes of this appraisal, it is assumed that the interior condition of the subject property is consistent with the exterior conditions as observed and that the information concerning the interior condition as provided by the assessor's records and the multiple listing service is accurate.

**PHYSICAL DEFICIENCIES OR ADVERSE CONDITIONS**

Unless otherwise stated in this report, the existence of hazardous material and/or electromagnetic emission, which may or may not be present on the property, was not observed by the appraiser. The appraiser has no such knowledge of the existence of such materials on or in the subject property, or in the properties of the subject neighborhood. The appraiser is not qualified to detect such substances. The presence of such substances as asbestos, urea formaldehyde foam insulation, radon, mold, or other potentially hazardous material may affect the value of the property. The value estimate expressed is predicated on the assumption that there is no such material in or on the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any expertise or engineering knowledge required discovering them. The customer is urged to retain an expert in this field.

Dwellings built prior to 1978 may contain lead-based paint.

**MOLD**

The appraiser is not a home or environmental inspector. The appraiser provides an opinion of value. The appraisal does not guarantee that the property is free of defects or environmental problems. The appraiser performs an inspection of visible and accessible areas only. Mold may be present in areas the appraiser cannot see. A professional home inspection or environmental inspection is recommended.

**CONCLUSION**

This is an Appraisal Report which is intended to comply with the reporting requirements set forth under Standards Rule 2-2(a) of the Uniform Standards of Professional Appraisal Practice for an Appraisal Report. As such, it presents only minimal discussions of the data, reasoning, and analyses that were used in the appraisal process to develop the appraiser's opinion of value. Supporting documentation concerning the data, reasoning, and analyses is retained in the appraiser's file. The depth of discussion contained in this report is specific to the needs of the client and for the intended use stated herein. The appraiser is not responsible for unauthorized use of this report.

## Subject Photo Page

| Borrower | Kevin & Stacey Rosen | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 17830 Monte Vista Dr | | | | | | |
| City | Boca Raton | County | Palm Beach | State | FL | Zip Code | 33496 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |



### Subject Front

17830 Monte Vista Dr

| | |
|---|---|
| Sales Price | |
| Gross Living Area | 4,674 |
| Total Rooms | 9 |
| Total Bedrooms | 5 |
| Total Bathrooms | 5.2 |
| Location | Residential |
| View | Residential |
| Site | 13068 sf |
| Quality | Good |
| Age | 3 |



### Subject Rear



### Subject Street

## Comparable Photo Page

| Borrower | Kevin & Stacey Rosen | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 17830 Monte Vista Dr | | | | | | |
| City | Boca Raton | County | Palm Beach | State | FL | Zip Code | 33496 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |



### Comparable 1

| | |
|---|---|
| 17800 Key Vista Way | |
| Prox. to Subject | 0.32 miles W |
| Sales Price | 1,015,000 |
| Gross Living Area | 5,559 |
| Total Rooms | 9 |
| Total Bedrooms | 5 |
| Total Bathrooms | 5.1 |
| Location | Residential |
| View | Residential |
| Site | 12632 sf |
| Quality | Good |
| Age | 2 |



### Comparable 2

| | |
|---|---|
| 9684 Bridgebrook Dr | |
| Prox. to Subject | 0.49 miles W |
| Sales Price | 1,200,000 |
| Gross Living Area | 5,836 |
| Total Rooms | 9 |
| Total Bedrooms | 5 |
| Total Bathrooms | 5.1 |
| Location | Residential |
| View | Residential |
| Site | 11761 sf |
| Quality | Good |
| Age | 3 |



### Comparable 3

| | |
|---|---|
| 9068 Redonda Dr | |
| Prox. to Subject | 0.21 miles E |
| Sales Price | 1,300,000 |
| Gross Living Area | 5,678 |
| Total Rooms | 9 |
| Total Bedrooms | 5 |
| Total Bathrooms | 5.1 |
| Location | Residential |
| View | Residential |
| Site | 17873 sf |
| Quality | Good |
| Age | 0 |

## Rental Photo Page

| Borrower | Kevin & Stacey Rosen | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 17830 Monte Vista Dr | | | | | | |
| City | Boca Raton | County | Palm Beach | | State | FL | Zip Code | 33496 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |



### Rental 1

17554 Middlebrook Way

| | |
|---|---|
| Proximity to Subject | 0.52 miles W |
| Adj. Monthly Rent | 10,000 |
| Gross Living Area | 4,882 |
| Total Rooms | 9 |
| Total Bedrooms | 5 |
| Total Bathrooms | 5.2 |
| Location | Residential |
| View | Residential |
| Condition | Good |
| Age/Year Built | 7 |



### Rental 2

17690 Middlebrook Way

| | |
|---|---|
| Proximity to Subject | 0.44 miles NW |
| Adj. Monthly Rent | 8,500 |
| Gross Living Area | 4,986 |
| Total Rooms | 10 |
| Total Bedrooms | 6 |
| Total Bathrooms | 6.2 |
| Location | Residential |
| View | Residential |
| Condition | Good |
| Age/Year Built | 5 |



### Rental 3

17979 Lake Azure Way

| | |
|---|---|
| Proximity to Subject | 0.22 miles SW |
| Adj. Monthly Rent | 8,000 |
| Gross Living Area | 4,661 |
| Total Rooms | 9 |
| Total Bedrooms | 5 |
| Total Bathrooms | 4.2 |
| Location | Residential |
| View | Residential |
| Condition | Good |
| Age/Year Built | 3 |

**Assessor Map**

| Borrower | Kevin & Stacey Rosen | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 17830 Monte Vista Dr | | | | | | |
| City | Boca Raton | County | Palm Beach | State | FL | Zip Code | 33496 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |



## Subject Aerial Map

| Borrower | Kevin & Stacey Rosen | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 17830 Monte Vista Dr | | | | | | |
| City | Boca Raton | County | Palm Beach | | State | FL | Zip Code 33496 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |



**Location Map**

| Borrower | Kevin & Stacey Rosen | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 17830 Monte Vista Dr | | | | | | |
| City | Boca Raton | County | Palm Beach | | State | FL | Zip Code 33496 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |



# Assessor Data

| Borrower | Kevin & Stacey Rosen | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 17830 Monte Vista Dr | | | | | | |
| City | Boca Raton | County | Palm Beach | | State | FL | Zip Code | 33496 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |



## MLS Listing Sheet

| Borrower | Kevin & Stacey Rosen | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 17830 Monte Vista Dr | | | | | | |
| City | Boca Raton | County | Palm Beach | State | FL | Zip Code | 33496 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |



1/3/2019     Matrix

### Listing

**Single Family**
17830 Monte Vista Dr #
BOCA RATON, 33496

| | | | |
|---|---|---|---|
| ML#: | R3050040 | List Price: | $599,000 |
| Rng Price: | | Sold Price: | $501,000 |
| LLP: | | Status: | Closed Sale |
| Short Sale: | No | REO: | |
| Listing Brkr: | FLL608114 /Lang Realty | | |
| County: | Palm Beach County | | |
| Area: | 4750 | | |
| Geo Area: | Palm Beach 4750; 4760; 4770; 4780; 4860; 4870; 488 | | |
| Legal: | Oaks At Boca Raton 06 Lot:30 Blk:G1 Lot SqFt:13068 Frontage: Depth: | | |
| Furnished: | | | |
| Bedrooms: | 5 | Baths: | 5/2 |
| Convert Bed: | | | |
| SqFt (Liv): | 4,604 | Tot SqFt: | 4,604 |
| SqFt (Adj): | | | |
| Bld Ar/Src: | | | |
| Year Built: | 2006/New Construction | | |
| Virtual Tour: | Click Here | | |

#### Location Information

| | | | |
|---|---|---|---|
| Folio#: | 00424631070070300 | Parcel #: | | Model Name: | Monte Verde |
| Municipal Code: | | Town/Range: | | Section: | |
| Subdivision #: | | Map Coord: | | Zoning: | Agr-Pud |
| Subdivision: | The Oaks | Development: | The Oaks | | |
| Elementary: | | Middle: | | | |
| High: | | | |
| Neighborhood: | | | |

#### General Information

| | | | | | |
|---|---|---|---|---|---|
| Type Property: | Single | Front Exposure: | South West | HOPA: | |
| For Lease: | | For Lease MLS#: | | SS Addend: | |
| Boat Services: | | | | | |
| Style: | R33-WF/Pool/No Ocean Access | | | | |
| Garage: | 3 | | | Carport: | |
| Lot SF: | | Appr Lot Size: | .3 | | |
| Parking Desc: | | | | | |
| Parking Restr: | | | | | |
| Lot Desc: | | | | | |
| Waterfront: | Yes/Lake Front | | | | |
| Water Access: | | | | | |
| Water Frontage: | | View: | Water View | | |
| Pool Dim: | X | Spa: | | | |
| Pool: | Yes/Below Ground Pool, Heated | | | | |
| Design/Desc: | | | | | |
| Construction: | CBS Construction | | | | |
| Roof Desc: | | | | | |
| Floor: | Marble Floors, Wood Floors | | | | |

#### Remarks

| | |
|---|---|
| Remarks: | NOT A SHORT SALE.NO WAITING. NO MONKEY BUSINESS.Beautiful corner lot totally upgraded Monte Verde model 5 bedrooms plus loft.Upgraded everything.gorgeous pool patio.Impact Glass,whole house nat/gas generator.!!Chinese Drywall and needs remediation!! This home has Chinese Drywall. Take advantage of this opportunity. Remediate and live in The Oaks for a fraction of building new... NOT A SHORT SALE |
| Driving Directions: | Clint Moore Rd. between Lyons and 441. Entry on north side of Clint Moore. |
| Broker Remarks: | NOT A SHORT SALE.WHY WASTE YOUR TIME WITH A SHORT SALE GOING NOWHERE WHEN YOU CAN MAKE A DEAL ON THIS HOME.NO MONKEY BUSINESS.Please qualify buyer bef |

#### Rooms

| Room | Dim | Room | Dim | Room | Dim |
|---|---|---|---|---|---|
| Kitchen | 15X15 | LivingRoom | 19X19 | MasterBedroom | 16X19 |
| Bedroom Desc: | | | | | |
| Master Bath: | Bidet, Dual Sinks, Whirlpool/Spa | | | | |
| Addition Rooms: | Family Room, Loft | | | | |
| Dining Desc: | | | | | |
| ADA Compliant: | | | | | |

| | | | |
|---|---|---|---|
| Pets: | Yes | Cable: | Yes |
| Pet Rstr: | | | |
| Guest House: | | | |

https://sef.mlsmatrix.com/Matrix/Printing/PrintOptions.aspx?c=AAEAAAD*****AQAAAAAAAARAQAAAFQAAAAGAgAAAAQyODA4BgMAAAABNAY...    1/4

## MLS Listing History

| Borrower | Kevin & Stacey Rosen | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 17830 Monte Vista Dr | | | | | | |
| City | Boca Raton | County | Palm Beach | State | FL | Zip Code | 33496 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |

**MLS#:** R3050040    17830 Monte Vista Dr #    Single Family


No Picture Available

| Price | Chg Type | Chg Info | Eff Date | Agent ID | Office ID | DOM |
|---|---|---|---|---|---|---|
| $501,000 | CS | ($501,000) | 12/23/2009 | FLL6061521 | FLL608114 | |
| $599,000 | PS | A -> PS | 12/07/2009 | FLL6061521 | FLL608114 | |
| $599,000 | DECR | $699,000 -> $599,000 | 11/04/2009 | FLL6061521 | FLL608114 | |
| $699,000 | DECR | $789,000 -> $699,000 | 10/08/2009 | FLL6061521 | FLL608114 | |
| $789,000 | DECR | $839,000 -> $789,000 | 10/06/2009 | FLL6061521 | FLL608114 | |
| $839,000 | NEW | ACTV -> $839,000 | 09/14/2009 | FLL6061521 | FLL608114 | |

## Tax Information

| Borrower | Kevin & Stacey Rosen | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 17830 Monte Vista Dr | | | | | | |
| City | Boca Raton | County | Palm Beach | State | FL | Zip Code | 33496 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |



Case 2:09-md-02047-EEF-MBN   Document 22380-55   Filed 12/02/19   Page 183 of 232
Case 1:14-cv-22408-MGC   Document 281-4   Entered on FLSD Docket 05/13/2019   Page 89 of
License

| Borrower | Kevin & Stacey Rosen | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 17830 Monte Vista Dr | | | | | | |
| City | Boca Raton | County | Palm Beach | | State | FL | Zip Code | 33496 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |

 RICK SCOTT, GOVERNOR

JONATHAN ZACHEM, SECRETARY



## STATE OF FLORIDA
## DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION

### FLORIDA REAL ESTATE APPRAISAL BD

THE CERTIFIED RESIDENTIAL APPRAISER HEREIN IS CERTIFIED UNDER THE
PROVISIONS OF CHAPTER 475, FLORIDA STATUTES

## FONG, CARLOS RAFAEL

10601 S.W. 124 ROAD.
MIAMI          FL 33186

LICENSE NUMBER: RD6782

EXPIRATION DATE: NOVEMBER 30, 2020

Always verify licenses online at MyFloridaLicense.com



Do not alter this document in any form.

This is your license. It is unlawful for anyone other than the licensee to use this document.

# Anthony M. Graziano, MAI, CRE

**Integra Realty Resources**
**Miami/Palm Beach**

Dadeland Centre
9155 S. Dadeland Boulevard
Suite 1208
Miami, FL 33156

T 305.670.0001
F 305.670.2276

irr.com

## Experience

Senior Managing Director of Integra Realty Resources – Miami/Palm Beach.

Mr. Graziano has actively counseled and advised clients on the sale, leasing, valuation, management, and development of commercial real estate assets throughout the northeast and southeast U.S. since 1992.

Mr. Graziano's professional perspective is a blend of his experience and educational background which includes formal training in architecture, urban planning, macro and micro economics, real estate finance, institutional asset management, and land development. His market experience in sales, leasing, management, and valuation disciplines combine to bring practical real world answers to complex planning and development projects. He has been actively involved as a consultant and/or member of a consultant team on various major redevelopment and land use projects for public and private clients over the past 25+ years.

Mr. Graziano has specialized in consulting and valuation assignments for corporate and private clients on a wide array of complex issues related to estate and condemnation matters, title defects, environmental contamination/damages, air rights, partial and fractional interests, contract disputes, and mediation/arbitration disputes. Mr. Graziano's experience in these matters provides a comprehensive framework for effective strategic real estate consulting.

## Professional Activities & Affiliations

Advisory Board Member: Urban Land Institute (ULI) South Florida / Caribbean
Advisory Board Member: University of Miami M+RED Program
Member: Economic Roundtable - Miami Beacon Council (2012-present)
Board of Director: Integra Realty Resources, Inc. (2011-2016)
Chairman of the Board:    Integra Realty Resources, Inc. (2016-present)
Director: South Florida Chapter of the Appraisal Institute (2014-2016)
Board Member: Builders Association of South Florida (BASF) (2014-2016)
Subject Matter Expert (SME): Appraisal Practice Board, Appraisal Foundation
Member: Appraisal Institute (MAI) (2008-Present)
Member: Counselors of Real Estate (CRE) (2007-Present)
National Association of Realtors (REALTOR)
Miami Association of REALTORS Industry Analyst of the Year (2016)
Former Fellow: Royal Institute of Chartered Surveyors (FRICS) (2007-2014)
AI Leadership Development Advisory Council, March 1998 - February 2001
Lifetime Member: National Eagle Scout Association (NESA)

## Licenses

Florida, State-Certified General Real Estate Appraiser, RZ3510
New Jersey, State-Certified General Real Estate Appraiser, RG001261

## Education

University of Miami, Coral Gables, Florida 1988-1992
Degree: Bachelor of Science in Land Development and Planning, School of Architecture

New York University Real Estate Institute, New York, New York 1993-1996
Degree: Master of Science in Real Estate Development and Investment



amgraziano@irr.com    -    305.670.0001 x320

# Anthony M. Graziano, MAI, CRE

## Qualified Before Courts & Administrative Bodies

Qualified and accepted as an expert before:
US Bankruptcy Court (Newark, Southern District of Texas, Southern District of Florida)
US Federal District Court (Southern District of Florida)
FL Circuit Court (Miami-Dade, Broward, and Monroe Counties)
NJ State Tax Court
NJ Superior Court - Chancery Division
NJ Superior Court - Law Division
Various municipal planning and zoning boards throughout New Jersey and Florida
Various Taxing Authorities and Boards throughout New Jersey and Florida

**Integra Realty Resources**
**Miami/Palm Beach**

The Douglas Centre
2600 Douglas Road, Suite 801
Coral Gables, FL 33134

T 305.670.0001
F 305.670.2276

irr.com



amgraziano@irr.com    -    305.670.0001 x320

**Anthony M. Graziano, MAI, CRE, FRICS**

PROFERRED OR DISCLOSED EXPERT WITNESS REPORTS/SETTLEMENTS

| RETENTION DATE | ON BEHALF | IRR FILE # | COURT CASE NO. | COURT / VENUE | CASE NAME | RETAINED BY | TYPE OF CASE |
|---|---|---|---|---|---|---|---|
| 1/2015 | Defendant | 123-2015-0037 | 14-CV-22384 UU | Miami-Dade County, FL | Ray Benson & Maria Helena V. QBE Insurance Corporation | John A. Camp | Retrospective (2004-2006) analysis of market value claims against insurance company related to property |
| 9/2014 | Defendant | 123-2014-0194 | 13-03084CA 10 | 11th Judicial Circuit Miami-Dade, FL | Manuel Soltero V. Adorno & Yoss, LLP | Kaplan Zeena, LLP | Professional Liability suit against law firm and attorneys for malfeasance in litigation matter. |
| 2/2014 | Plaintiff | 123-2014-0030 | Settled | Caribbean Islands | Rainmaker Development V. A&F Bahamas, etal | VLASAC & SHMARUK, LLC | Partnership Dispute between Joint Venture in Carribean development project (golf course, villas, and large-scale marina-commercial-retail development) |
| 1/1/2012 | Defendant | 123-2012-0140 | 42-2012-CA-001066 | Marion County, FL | CSX Transportation, Inc. V. Moshen Saranzi, Faith Ann Safaranzi, Proverbium Hldg, LLC, USA & George Albright | NeJame, La Fay, Jancha, Ahmed, Barker, Joshi & Moreno, P.A. | Condemnation of partial interest with damages |
| 7/2012 | Confidential | 123-2012-0076 | Confidential | Broward County, FL | Ft. Lauderdale-Hollywood Int'l Airport Expansion | White & Case, LLP | Value Diminution Study to assist public agency in good faith negotiations based on airport expansion. |
| 6/2012 | Defendant | 123-2012-0070 | 10-49616-CA-40 | Miami-Dade County, FL | C8 Entertainment, LLC V. South Beach Ocean Parcel | Kubicki Draper, P.A. | Construction Damages claim |
| 12/2009 | Plaintiff | 109-2009-0443 | Dept. Justice File 90-11-3-5801 | Federal District Court of Virginia | United States vs. Atlantic Wood Industries, Inc. | U.S. Department of Justice | Damages/environmental contamination dispute between United States Navy and responsible party (Atlantic Wood Industries) |



**Anthony M. Graziano, MAI, CRE, FRICS**
IDENTIFIED EXPERT WITNESS TESTIMONY AT DEPOSITION and/or TRIAL

M. Quals: Graziano: Trial Lists

| RETENTION DATE | ON BEHALF OF | TRI FILE # | COURT/CASE NO. # | COURT / VENUE | CASE NAME | RETAINED BY | TYPE OF CASE |
|---|---|---|---|---|---|---|---|
| 6/2015 | Plaintiff | 123-2015-0170 | 15-00893/CA-01 | 11th Judicial Circuit Dade County, Florida (Hon. Peter R. Lopez) | Aaron Stauber & Aviva Stauber V. BH 33, LLC | Piedra & Associates, P.A. | Motion to dismiss Lis Pendens in an action to enforce contractual specific performance clause |
| 1/2015 | Defendant | 123-2015-0037 | 14-CV-22364 UU | Southern District of Florida | Ray Benson & Maria Helena Campos V. QBE Insurance Corporation | John Camps | Retrospective (2004-2006) analysis of market value claims against insurance company related to property damage claims arising from Hurricane Wilma |
| 1/2014 | Plaintiff | 123-2015-0031 | Pending | Miami-Dade County | Igor Gel V. Yacht Club at Portofino Condo Association | Weil Quaranta McGovern, P.A. | Construction defect dispute related to water-intrusion and damage-detrimental conditions analysis of |
| 10/2014 | Plaintiff | 123-2014-0226 | 08-CA-408-P | Monroe County | Ocean Bank V. Lindback, Monroe County | Ocean Bank | Deficiency claim against borrower on real estate collateral in the Florida Keys (development site plus marine related improvements) |
| 10/2014 | Defendant | 123-2014-0215 | 11-24994 CA 06 | 11th Judicial Circuit Dade County, Florida | Palm-Aire Holdings V. JRGS Investments, LLC, Jorge Garcia-Saniff and Course Drive Investments, LLC | Cole, Scott & Kissane, P.A. | Partnership dispute over valuation issues proximal to a fractured condominium project (retrospective values), and operating agreement dispute |
| 7/2014 | Plaintiff | 123-2014-0194 | 13-01822 CACE 02 | 17th Judicial Circuit Broward County, Florida | Amalia I. Iriarda-Rivera V. Rivero Diagnostic Center, Inc., Okray Rivero & Yudit Rivero | Amalia I. Iriarda-Rivera | Rent default judgment and market rental and damage analysis associated with lease default. |
| 10/2014 | Defendant | 123-2014-0159 | 2014FLS34 (Pending) | Palm Beach County | Roehm Title Resources Claim | Title Resources Guaranty Company | Title insurance claim related to before and after damage/value diminution analysis based on defined title defects not identified by Title insurance Company |
| 4/2014 | Plaintiff | 123-2014-0117 | 4:14-CV-01077 (Pending) | USA District Court for the Eastern District of Missouri Eastern Division | USA V. /GSA-VA St. Louis Property, LLC | Bryan Cave LLP | Condemnation of a possessory interest for a term. Retained as consulting/rebuttal expert |
| 5/2014 | Defendant | 123-2014-0114 | Pending | Miami-Dade County | Eufonia Club | Rennert Bogel Mandler & Rodriguez, P.A. | Rent dispute regarding forced relocation of a nightclub, and relevant market rental rate of replacement club space in Miami |
| 4/2014 | Plaintiff | 123-2014-0089 | Pending | Broward County | Pan American Holdings Corp. V. Florida DOT Right of Way (ROW) Acquisition S.R. 7 | Henry Wulf, Esq. | Condemnation for R.O.W. purposes including before and after damage analysis |
| 1/2014 | Debtor | 123-2014-005 | 13-25728-BKC-RAM | US Federal Bankruptcy - Southern District of Florida - Miami Division (Hon. R. Mark) | West Airport Plaza Business Park, LLC | Counsel for the Debtor, Michael D. Seese, Esq. | Fairness Opinion and market value opinions in conjunction with Debtor's Plan for Reorganization |
| 8/2013 | Defendant | 123-2000-0016 | 02-23922-CA 09 | 11th Judicial Circuit Dade County, Florida | American Educational Enterprises LLC v. The Board of Trustees of the Internal Improvement Trust Fund | Richard Alayon, Esq. - Alayon and Associates | Economic Damages case associated with an alleged misrepresentation or omission by seller of real property |
| 7/2013 | Plaintiff | 123-2013-0126 | CACE 08857624 (14) | 17th Judicial Circuit Broward County, Florida (Hon. Carlos A. Rodriguez) | Bayview Loan Servicing, LLC v. Kayhan Soodjani; Muhammad Mahmoodi; et al | Bayview Servicing, represented by Tabais, Freedman and Soloff; Stacey Soloff, Esq. | Deficiency judgment on multi-family project (Dewey Street Apartments) |
| 3/2013 | Defendant | 123-2013-0105 | 11-23561-CIV - Rosenbaum | US District Court - Southern District of Florida (Hon. Rosenbaum) | United States of America v. G.K.K. etal | Richard Duvall, Holland and Knight and Jeffrey Neiman, Esq. | Condemnation claim on the 137,779 s.f. Miami Federal Bureau of Investigation (F.B.I.) building; condemnation of a possessory interest (leasehold) |
| 2/2013 | Defendant | 123-2011-0670 | 09-05650 CA 04 | 11th Judicial Circuit Dade County, Florida (Hon. Beth Bloom) | Zenaida Gomez v. City of Pinecrest | Cynthia A. Everett, Cynthia A. Everett, P.A. | Economic damage resulting from temporary taking (seizure) of private residence |
| 11/2012 | Defendant | 123-2012-0016 | 12-60950-CIV / Pending | 11th Judicial Circuit Dade County, Florida | Q Lending, Inc., Equity Financial Group, Inc., and Equity Commercial Group, Inc. v. Travelers Companies, Inc. etal | Heidi Raschke, Butler Pappas etal | Value diminution resulting from alleged mortgage fraud. |
| 11/2012 | Plaintiff | 123-2012-0128 | Pending | 11th Judicial Circuit Dade County, Florida | 2011 and 2012 Ad Valorem Tax Protest | Ken Wurtenberger, Esq. Koblentz Law Firm Ferguson | Tax protest of commercial condominium. |
| 10/19/2012 | Plaintiff | 123-2012-0111 | 2011-1107 CA-23 | 11th Judicial Circuit Broward County, Florida (Hon. Patrick Stanford Blake) | Renegade at Hialeah Blvd v. Dynatech Engineering | Daniel Levin, Esq., Cole, Scott, Kissane, P.A. | Economic Damages case, diminution in value resulting from prior lease modification. |
| 10/12/2012 | Plaintiff | 123-2012-0109 | 11-30189 CA21 | 11th Judicial Circuit Dade County, Florida | Yaffa Yakubov vs. Bayview at Fisher Island No 3 | Craig Minko, Esq., Cole Scott Kissane, P.A. | Market Value estimate of Fisher Island Condominium purchased under right of first refusal; economic damages claimed by Plaintiff due to contract dispute arising from association's exercise of right of first refusal |
| 8/20/2012 | Plaintiff | 123-2010-0012 | CA-02180 CA-25 | 11th Judicial Circuit Dade County, Florida | 7935 NBV, LLC v. Harbour East Development LTD, Mario Egozi, etal | Jose Casal, Esq., Holland and Knight | Deficiency judgment on 32-unit fractured condominium, substitute expert following issuance of IRR-Miami reports in 2010 and 2012. |
| 8/15/2012 | Disclosed Dual Expert | 123-2012-0072 | | Matrimonial Mediation | Vazquez v. Vazquez Matrimonial Matter | Colon and Mendoza and Robert Hertzberg, P.A. | Retained as a court-appointed third party expert to both parties to appraise (2) marital assets comprised of office, retail, single and multi-family units in FL, TN, NC, and Illinois, Bahamas |
| 7/2012 | Plaintiff | 109-2011-0172 | Pending; 2003-2014 | Tax Court of New Jersey (Hon. Patrick DeMaenelia) | BASF Inc., successor Ciba Geigy Inc. vs. Township of Toms River | Phil Genuario, Garippa, etal on behalf of BASF | Challenge to multi-year appeal of $80 Million+ land assessment on contaminated superfund site in Central New Jersey |
| 3/2012 | Plaintiff | 109-2010-0172 | ATL-L-4451-08 | Superior Court of New Jersey, Law Division Atlantic County | Scot Netherlands Inc. vs. State of New Jersey Department of Environmental Protection (NJDEP) | Jay Rhatican, Connell Foley on behalf of Scot Netherlands, Inc. | Challenge to NJDEP permit denial to fill wetlands, deprivation of all reasonable investment backed expectations |
| 07/2011 | Defendant | 109-2010-0199 | MER-L-3034-08 | Superior Court of New Jersey Mercer County | 460 Mercer Street, LLP and Brucketner Southern, LLC vs. Hightstown | Aneil Zaro Grimm & Aaron, P.C. Hussam Chater | Litigation-Dispute Resolution - Hightstown Zoning Challenge |
| 12/2009 | Plaintiff | 109-2009-0443 | Dept. Justice File 90-11-5-580-1 | Federal District Court of Virginia | United States v.s. Atlantic Wood Industries, Inc. | U.S. Department of Justice | Damage/environmental contamination dispute between United States Navy and responsible party (Atlantic Wood Industries) |
| 12/2009 | Plaintiff | 109-2009-0377 | | Tax Court of New Jersey | WextrushPIC Mortgage Fund vs. City of Atlantic City | Cole, Schotz, Meisel, Forman & Leonard, P.A. Carl Rizzo, Esq. | Tax Appeals - To develop an opinion of the market value of the fee simple interest in the property |



**Anthony M. Graziano, MAI, CRE, FRICS**
IDENTIFIED EXPERT WITNESS TESTIMONY AT DEPOSITION and/or TRIAL

| RETENTION DATE | ON BEHALF OF | IRR FILE # | COURT CASE NO | COURT / VENUE | CASE NAME | RETAINED BY | TYPE OF CASE |
|---|---|---|---|---|---|---|---|
| 1/12/09 | Secured Creditor | 109-2009-0439 | | US Bankruptcy Court - Southern District of Texas | Erickson Building | Stuart Glick, Esq., Sills, Cummis & Gross | Market Value for Bankruptcy of 140,000 SF corporate campus in Bethesda, Maryland |
| 09/2009 | Plaintiff | 109-2009-0123 | 3035-601 | Tax Court of New Jersey | Bay Head Yacht Club vs. Ocean County Tax Board | John Doyle, Carluccio, Leone, Dimon, Doyle & Sacks, LLC | Tax Appeal for Bay Head Yacht Club |
| 12/2008 | Plaintiff | 109-2008-XXX | INA (DEFS Pending) | Tax Court of New Jersey | Mirage Atlantic City (MAC) vs. City of Atlantic City | Hank Rovitant, Esq. | Tax Appeal at State Tax Court on 15 acre casino site adjacent to Trump Marina |
| 09/2008 | Defendant | 109-2008-0252 | L-2424-05 | Superior Court of New Jersey Law Division, Middlesex County | The City of South Amboy vs. Lower Main Street Development, LLC & Amboy Aggregates Joint Venture | Bathgate, Wegener, etal | Verified complaint in condemnation |
| 6/2008 | Defendant | 109-2008-345 | C.A. No. OCN1-3361-06 | Superior Court of New Jersey, Law Division Ocean County | Osbourne Associates, Melbourne Associates VI, LLC, Kingsway Realty Profit Share vs. Citta Enterprises Co, JAC Property Management etal and Eckerd Corporation | Francis X. Manning, Esq, Stradley Ronon Stevens & Young & Michael Camboli, Esq. Partridge Snow and Hahn, both on behalf of | Dispute re: proper valuation of leasehold and sub-lessee's sandwich leasehold interest on damage claim for breach of agreement claim |
| 1/2008 | Defendant | 109-2008-0125 | N/A | American Arbitration Association [testimony at Arbitration conducted by Hon. Eugene Serpentelli] | Toms River Township vs. Citta Geigy Corporation | Mark Troncone, Esq., In-house Counsel to Township of Toms River | Arbitration of environmental damages claim, and counter-claim of appropriateness of zoning on 1,900 acre superfund site. |
| 11/2007 | Defendant | 109-2007-211 | L-000835-06 | Superior Court of New Jersey, Law Division Middlesex County | Kyle Mosteller vs. Gaila Newman | Frank Canuso, Esq, Hoagland, Longo, Moran and Dunst | Damage claim due to loss of trees and screening between urban properties |
| 6/2007 | Plaintiff | 109-2007-0134 | 3:07-CV-2322 | Superior Court of New Jersey, Chancery Division Monmouth County | Silver Lakes Inc. vs. Township of Freehold Inc. | Christopher Hanlon, Esq, Hanlon and Niemann | Challenge to validity of Rent Control Ordinance as transfer of property rights from Lessor to Lessee |
| 06/2007 | Plaintiff | 109-2007-0173 | | Federal District Court of Virginia | Laurelwood Homes, LLC vs. United States Department of Navy | William A. Shook Esq. | Leasehold interest in the property, breach of lease claim on behalf of leasehold owner (Laurelwood) claiming breach of lease and damages |
| 12/2006 | Defendant | 109-2006-0192 | CAM - L - 9731-05 | Superior Court of New Jersey, Chancery Division, Camden County | Brandywine Operating Partnership, LP vs. UFCW Local 56 | Brett Last, Esq. O'Brien, Beiland and Bushinsky | Estimate the value of damages to landlord on breach of above-market lease |
| 08/2006 | Defendant | 109-2006-0257 | | Superior Court of New Jersey, Law Division | County Line & Browns Bridge, Jackson Township | Levin, Shea, Pfeiffer, PA Steven Pfeiffer | To develop an opinion of the hypothetical market value of the fee simple interest in the property |
| 02/2006 | Defendant | 109-2006-0044 | OCN-L-2482-04 | Ocean Superior Court, Ocean County Courthouse | Carl Brooks vs. K. Hovanian | Ronan, Tuzzio & Giannone    Linda Olsen | To estimate value diminution in the subject property as a result of various issues asserted by the property owner in conjunction with pending litigation between the property owner. and the subject developer K. Hovnanian @ Sea Oaks |
| 10/2005 | Defendant | 109-2005-0315 | OCN-L-1810-5 | Superior Court of New Jersey, Law Division Ocean County | Atlantic City Electric Company d/b/a Conectiv Power Delivery, a regulated public utility of the state of New Jersey vs. AC! Manahawkin, LLC family and/or Armstrong | Flaster/Greenberg, PC, R. Oberlander, Esq. | David Compensation for the taking of an easement for construction and maintenance of a 230kv transmission line and towers by Atlantic City Electric |
| 06/2005 | Defendant | 109-2005-0214 | MON-L-2609-05 | Superior Court of New Jersey Law Division: Monmouth County | Township of Howell vs. George Harms Construction Co., Inc. etal | Connell & Foley, LLP Kevin Coakley, Esq. | To develop an opinion of the market value of the fee simple estate of the property |
| 08/2003 | Defendant | 109-2003-0282 | | Superior Court of New Jersey Chancery Division, Family Part, Monmouth County | Giuffre vs. Giuffre | Louis & Wolf - Frank A. Louis | To develop an opinion of the market value of the Fee Simple estate of two properties for purposes of equitable distribution of marital assets |
| 07/2003 | Plaintiff | 109-2003-0203 | OCN-C-79-03 | Superior Court of New Jersey, Chancery Division, Ocean County | West, etal vs. Pompaino, etal | Stephen E. Smith, Esq. | To develop an opinion of the diminution in value due to a loss of useable land area |
| 06/2003 | Plaintiff | 109-2003-0191 | OCN-C-316-02 | Superior Court of New Jersey Law Division, Ocean County | Eugene M. Lord vs. Donald W. Rinaldo | Lombardi & Lombardi Scott Telson | To develop an opinion of the market value of the fee simple estate of the property |
| 04/2003 | Plaintiff | 109-2003-0128 | FM-15-468-03-C | Superior Court of New Jersey, Chancery Division, Family Part Ocean County | Vincent Urbank vs. Lisa Urbank | Marianna Pontoriero, Esq. | Litigation-Matrimonial |
| 02/2002 | Plaintiff | 109-2002-0055 | | | Shenandoah Mobile Home Park | Winokis Mann, Lainre & Mittendorf, LLP - William Cagney | Inverse Condemnation - Rent Control Ordinance |
| 04/2001 | Claimant | 109-2001-0169 | NJ-2624-00 | Superior Court of New Jersey, Chancery Division | DeForest John Ely and Kimberle A. Ely, hw | First American Title Insurance Co. Jack Milks | To derive an opinion of the fair compensation of the fee simple estate, subject to the temporary title encumbrance |
| 03/1999 | Secured Creditors | 109-1999-0062 | | US Bankruptcy Court - District of Newark | Georgetown Apartments | Emmes & Co. Andrew Schwarz | To estimate the market value of the Leased Fee Estate of the property, inclusive of 28 Apartment complexes through NY, NJ, PA, and MD. |
| 12/1997 | Defendant | LKW-257-3186 | FM-15-1465-94 | Superior Court of New Jersey, Chancery Division, Family Part, Ocean County | Lisa Franklin, etal vs. Donald Franklin, etal | Greenbaum, Rowe, Smith, Ravin, Davis & Himmel LLP     Robert S. Underhill | Estimating the market value of the leased fee interest |
| 8/1994 | Creditor | HUD-XX | | US Bankruptcy Court - District of Newark | Hudson Marina Association vs. Emmes & Co. | | Bankruptcy Reorganization of 200+ slip failed marina/dockominium condominium |



# EXHIBIT F5

**Integra Realty Resources**
Miami/Palm Beach

**Appraisal Report & Post-Remediation Damage Related to Chinese Drywall**

**Wites, Marc & Jennifer**
Market Value - "As Remediated"
17625 Middlebrook Way
Boca Raton, Palm Beach County, Florida 33496
Client Reference: 4

**Prepared For:**
Colson Hicks Eidson

**Effective Date of the Appraisal:**
January 1, 2019

**Report Format:**
Appraisal Report

**IRR - Miami/Palm Beach**
File Number: 123-2018-0275





**Wites, Marc & Jennifer**
17625 Middlebrook Way
Boca Raton, Florida



| Integra Realty Resources | In Miami | In Orlando | In Naples/Sarasota |
|---|---|---|---|
| Miami | Dadeland Centre | The Magnolia Building | Horseshoe Professional Park |
| Orlando | 9155 South Dadeland Blvd. | 326 N. Magnolia Ave. | 2770 Horseshoe Drive S. |
| Southwest Florida | Suite 1208 | | Suite 3 |
| | Miami, FL 33156 | Orlando, FL 32801 | Naples, FL 34104 |
| www.irr.com | (305) 670-0001 | (407) 843-3377 | (239)-643-6888 |

January 15, 2019

Patrick S. Montoya
Partner
Colson Hicks Eidson
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134

SUBJECT:      Market Value - "As Remediated"
Case No 11-22408-Civ-COOKE
United States District Court Southern District of Florida in the matter of
Eduardo and Carmen Amorin, et al. individually and on behalf of others situated
similarly v. Taishan Gypsum Co., LTD., f/k/a Shandong Taiche Dongxin Co. Ltd., et al
Priority Claimant Case at:
Wites, Marc & Jennifer
17625 Middlebrook Way
Boca Raton, Palm Beach County, Florida 33496
Client Reference: 4
IRR - Miami/Palm Beach File No. 123-2018-0275

Dear Mr. Montoya:

Integra Realty Resources – Miami/Palm Beach submits the following damage estimate in the referenced property as of the effective date assuming all remediation was completed by an appropriate contractor with experience and credentials in remediating defective drywall.

The report is intended to comply the Uniform Standards of Professional Appraisal Practice (USPAP). It presents summary discussions of the data, reasoning, and analysis that were used in the appraisal process to develop the opinions. Additional information is contained within our workfile.

The findings will form the basis of expert witness testimony in the above referenced case.

Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/02/19 Page 193 of 232
Case 1:11-cv-22408-MGC Document 201-5 Entered on FLSD Docket 05/13/2019 Page 8 of 44

Identification of Subject                                                                 2

## Identification of Subject

The subject of this report is a single-family Mediterranean style home configured with 6 bedroom and 5.5 baths with 5,935 SF under air-conditioning.  The subject property was built in 2006 and is located on a 10302 SF site.

## Purpose of the Appraisal

The purpose of the appraisal is to develop an opinion of the diminution in value and related damages, collectively "the damages" as of the effective date of the appraisal, January 1, 2019. The damage estimate assumes the defective drywall remediation was completed and does not consider the cost to cure. The date of the report is January 15, 2019. The appraisal is valid only as of the stated effective date or dates.

## Intended Use and User

The intended use of the appraisal is for litigation purposes. The client, Colson Hicks Eidson and related co-counsel, Plaintiff and the Court are the intended users.  Integra Realty Resources – Miami/Palm Beach is not responsible for unauthorized use of this report.

## Most Recent Sale History

The most recent closed sale of the subject is summarized as follows:

| Most Recent Subject Sale (Closed) | |
|---|---|
| Sale Date (Most Recent) | June 8, 2007 |
| Seller | Pech, Jeffrey & Bari |
| Buyer | Wites, Marc & Jennifer |
| Sale Price | $1,600,000 |
| Recording Instrument Number | 20070292703 |
| Disposition Details | Both buyer & seller were unaware of defective drywall issue at TOS |

To the best of our knowledge, no other sale or transfer of ownership has taken place within a three-year period prior to the effective appraisal date.

## Pending Transactions

To the best of our knowledge, the property is not subject to an agreement of sale or an option to buy, nor is it listed for sale, as of the effective appraisal date.

## Definition of Market Value

The following definition of market value is used by agencies that regulate federally insured financial institutions in the United States:

"The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:

Wites, Marc & Jennifer



Case 2:09-md-02047-EEF-MBN   Document 22380-55   Filed 12/02/19   Page 194 of 232
Case 1:11-cv-22408-MGC   Document 201-5   Entered on FLSD Docket 05/13/2019   Page 6 of 44

Definition of Retrospective Value Opinion                                                3

- Buyer and seller are typically motivated;

- Both parties are well informed or well advised, and acting in what they consider their own best interests;

- A reasonable time is allowed for exposure in the open market;

- Payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and

- The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale."

*(12 C.F.R. Part 34.42(g); 55 Federal Register 54696, August 24, 1990, as amended at 57 Federal Register 12202, April 9, 1992, 59 Federal Register 29499, June 7, 1994)*

## Definition of Retrospective Value Opinion

A value opinion effective as of a specified historical date. The term retrospective does not define a type of value.  Instead, it identifies a value opinion as being effective at some specific prior date. Value as of a historical date is frequently sought in connection with property tax appeals, damage models, lease renegotiation, deficiency judgements, estate tax, and condemnation.  Inclusion of the type of value with this term is appropriate, e.g. "retrospective market value opinion".

*(Source: The Dictionary of Real Estate Appraisal – 6th Edition; Appraisal Institute, 200 W. Madison, Suite 1500, Chicago, IL 60606, www.appraisalinstitute.org)*

## Definition of Hypothetical Condition

1. A condition that is presumed to be true when it is known to be false. (SVP)

2. A condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis. Comment: Hypothetical conditions are contrary to known facts about physical, legal, or economic characteristics of the subject property; or about conditions external to the property, such as market conditions or trends; or about the integrity of date used in an analysis. (USPAP, 2016-2017 ed.)

*(Source: The Dictionary of Real Estate Appraisal – 6th Edition; Appraisal Institute, 200 W. Madison, Suite 1500, Chicago, IL 60606, www.appraisalinstitute.org)*

## Scope of Work

Integra was retained as an expert in the captioned matter of this report to address potential damages related to the subject property, specifically excluding the costs to cure.

Integra was retained to estimate any post remediation damages, and conducted a separate study to determine whether damages persist following defective drywall remediation.  The result of that study are outlined within Integra's report entitled "Market Analysis of the Post Remediation Impact of Chinese Drywall on Residential Property Values in Florida."  The results of that study are incorporated by reference herein.

Wites, Marc & Jennifer



Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/02/19 Page 195 of 232
Case 1:11-cv-22408-MGC Document 201-5 Entered on FLSD Docket 05/13/2019 Page 32 of 44

Scope of Work                                                                                          4

In addition, our damage model was requested to include a rental value analysis of the Priority Claimant residence, and a determination of the relevant economic damage associated with having to vacate the home for a period of time (and secure alternate living arrangements) during the remediation.  As of the effective date, the claimant would have suffered the damages.

Integra established individual case files on each Priority Claimant residence, and retained professional assistance from qualified residential appraisers in each jurisdiction.  Integra managed the process of these retrospective appraisals, interfaced with the residential appraisers, and reviewed the form appraisals completed on each assignment including review of the comparables, adjustments, and form narrative to establish the market value of the residence unimpaired as of the effective date.

Integra professionals reviewed various materials exchanged as part of this case and considered materials that were relevant to the market valuation.  These materials were downloaded from the attorney's dropbox and are retained within our workfile.

Integra's participation in and review of the final appraised values results in a conclusion of the market value of the home defined as "Hypothetical Market Value" assuming defective drywall had never been identified within the subject property.  This forms the basis of the unimpaired market value as of the effective date.

All properties and comparables were inspected by the local residential appraisers without the benefit of interior inspections.  Adjustments for condition and age at the time of sale are based upon photographs contained within the various MLS databases, paired analysis from amongst the comparables, and for the subject, were based on photos, if available.  In the event a property had not been remediated as of the effective date, we assume average condition for the property in the market as of the effective date.

The damage analysis expressed within this report follows the peer teachings and market accepted processes for damage analysis.  However, the damage analysis only represents a <u>portion of the overall damages</u> because we were specifically requested to exclude the consideration of the costs to cure. This represents a relevant component of damage in this case for property that factually have not been remediated.

Integra's role was strictly to identify post remediation value damage (sometime referred to a "stigma") and estimate the relevant rental value and moving costs as a proxy for the temporary loss of use during remediation.

## Significant Appraisal Assistance

In addition to Anthony M. Graziano, MAI ,CRE, principal, it is acknowledged that Peter G. Kayworth, Yuliya Georgieva, Joseph Melloni and Paul L. Jones of IRR-Miami/Palm Beach were involved in the assignment consisting of conducting research on the subject and transactions involving comparable properties, performing appraisal analyses and assisting in report writing, under the supervision of the persons signing the report.  The local residential appraisers are also named as providing significant assistance, including exterior inspection of the properties and comparables, application of their local



Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/02/19 Page 196 of 232
Case 1:11-cv-22408-MGC Document 291-5 Entered on FLSD Docket 05/13/2019 Page 8 of 44

Highest and Best Use                                                                                   5

knowledge in adjusting and estimating the unimpaired value, and developing the form report valuations incorporated herein.

## Prior Services

USPAP requires appraisers to disclose to the client any other services they have provided in connection with the subject property in the prior three years, including valuation, consulting, property management, brokerage, or any other services. We have not performed any services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

## Valuation Methodology

Appraisers usually consider the use of three approaches to value when developing a market value opinion for real property. These are the cost approach, sales comparison approach, and income capitalization approach.  The valuations consider the only relevant approach for residential valuation, the sales comparison analysis.  The cost and income approach are not considered relevant.

The sales comparison approach is the most applicable valuation method since there is an active market for similar properties, and sufficient sales data is available for analysis.  Additionally, this approach directly considered the prices of alternative properties having similar utility.

## Highest and Best Use

The highest and best use of the subject as if vacant for development of a single-family home which is physically possible, legally permissible as per zoning, financially feasible and maximally productive.

The highest and best use of the subject as improved is for continued use as a single-family home with no other use that could reasonably be expected to provide a higher value to the land as if vacant.  The improvements contribute to the over all value to a greater extent than the land value alone, and therefore, continued use as improved concluded to be maximally productive and the highest and best use of the property.

## Conclusion of Value

The Hypothetical market value appraisal as of the effective date, reflective of a traditional form appraisal, is contained within the Addenda of this report.  This value us hypothetical since it assumes that defective drywall had never been present at the subject property.

Against this value, we then apply the Post Impairment Discount as a percentage of unimpaired value as developed within the Integra report studying this issue.  This represents a compensable damage resulting from the prior existence of defective drywall in the home as of the effective date.

In addition, each appraisal (unimpaired) reflects a rental value analysis as of the effective date.  This rental value analysis concludes to the equivalent market rent for the home (unimpaired) and reflects a proxy for the probable actual costs the homeowner would experience by having to move-out of the primary residence during remediation.

Wites, Marc & Jennifer



The homeowner would also have to incur moving /storage costs twice, once before and once after remediation.  Professional packing, moving and storage for an average home is estimated at $1,500 per move, or $3,000 in total.  This amount is added to the loss of use estimate as an additional damage.

This loss of use calculation does not consider the costs of alternative housing or other tangible costs potentially incurred for damages suffered between the date of discovery and the date of value.  These damages, if applicable, are being estimated by a separate expert (Elkins et al). To the extent Elkins posits costs which are duplicative or actual costs that are greater or less, some minor adjustments to Integra's damage model may be required.

The timeframe for remediation (months of actual loss) could vary depending upon the permitting process in the specific community, the availability of labor, and the size of the home.  Integra reviewed a number of transactions that were remediated by investors and found the typical timeframe between purchase of an unremediated home and listing[1] of the home post-remediation to be 3-6 months.

Larger more expansive homes would be expected to take longer to remediate since more materials are required, and in higher-priced homes, supplies would typically be custom-ordered.  Therefore, we apply the following timeframes based on the subject's size and price range:

< $150,000 Home up to 2,000+/- SF                    4 months

$150,000 - $750,000 home up to 4,000 SF            6 months

$750,000+ home up over 4,000 SF                        9 months

---

[1] The "listing date" is most relevant since a homeowner conducting their own remediation can move back in once the home is ready for sale (ie- coinciding with a final certificate of occupancy).

Wites, Marc & Jennifer



Conclusion of Value                                                                                     7

The following shows our final estimate of damages as of the effective date, and assuming costs to cure (i.e. – to conduct the remediation) have been expended.

| Conclusions of Damage | | | |
|---|---|---|---|
| Hypothetical Value (Unimpaired - Before) | | $1,500,000 | |
| Market Impairment Discount (As if Remediated) | | 10% | |
| Post Impairment Damage ($) | | $150,000 | |
| **Hypothetical Value As IF Remediated** | | **$1,350,000** | |
| Post Remediation Damages as of Effective Date | | **$150,000** | |
| Loss of Use: | | | |
| Rental Rate ($/Month) | **$8,250** | | |
| Moving & Storage Costs | | $3,000 | |
| Loss of Use Subject (# Months) | 9x | $74,250 | |
| Subject Total | | | **$77,250** |
| **Post Remediation Damage** | | | **$227,250** |

Note: Does not consider "cost to cure". Assumes remediation was completed by qualified contractor who warranties the work.

The property owner reportedly remediated the home and continues to own the home. Therefore, the above damages relate to the home's current impairment assuming disclosure of prior detrimental condition in any future listings.

Wites, Marc & Jennifer



Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/02/19 Page 199 of 232
Case 1:14-cv-22408-MGC Document 261-3 Entered on FLSD Docket 05/13/2019 Page 41 of 44
Certification                                                                        8

## Certification

We certify that, to the best of our knowledge and belief:

1.  The statements of fact contained in this report are true and correct.

2.  The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are our personal, impartial, and unbiased professional analyses, opinions, and conclusions.

3.  We have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.

4.  We have not performed any services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

5.  We have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

6.  Our engagement in this assignment was not contingent upon developing or reporting predetermined results.

7.  Our compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

8.  Our analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice as well as applicable state appraisal regulations.

9.  The reported analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute.

10. The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

11. Anthony M. Graziano, MAI, CRE did not make a personal inspection of the property that is the subject of this report. Carlos Fong has personally inspected the subject.

12. Significant real property appraisal assistance was provided by Peter G. Kayworth, Yuliya Georgieva, Joseph Melloni and Paul L. Jones. Additionally, real estate assistance was provided by various Valucentric employees and subcontractors, including: John Barcelo, Angela Barcelo, Fred Stites, Carlos Fong, Sarah D. Wilson and Rob Baird.

13. We have experience in appraising properties similar to the subject and are in compliance with the Competency Rule of USPAP.

14. As of the date of this report, Anthony M. Graziano, MAI, CRE, has completed the continuing education program for Designated Members of the Appraisal Institute.

Anthony M. Graziano, MAI, CRE
Senior Managing Director - Miami
State-Certified General RE Appraiser
FL Certificate # RZ#3510

Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/02/19 Page 200 of 232
Case 1:11-cv-22408-MGC Document 281-8 Entered on FLSD Docket 05/13/2019 Page 42 of 44

Assumptions and Limiting Conditions                                                                9

## Assumptions and Limiting Conditions

This appraisal and any other work product related to this engagement are limited by the following standard assumptions, <u>except as otherwise noted in the report</u>:

1. The title is marketable and free and clear of all liens, encumbrances, encroachments, easements and restrictions. The property is under responsible ownership and competent management and is available for its highest and best use.

2. There are no existing judgments or pending or threatened litigation that could affect the value of the property.

3. There are no hidden or undisclosed conditions of the land or of the improvements that would render the property more or less valuable. Furthermore, there is no asbestos in the property.

4. The revenue stamps placed on any deed referenced herein to indicate the sale price are in correct relation to the actual dollar amount of the transaction.

5. The property is in compliance with all applicable building, environmental, zoning, and other federal, state and local laws, regulations and codes.

6. The information furnished by others is believed to be reliable, but no warranty is given for its accuracy.

This appraisal and any other work product related to this engagement are subject to the following limiting conditions, except as otherwise noted in the report:

1. An appraisal is inherently subjective and represents our opinion as to the value of the property appraised.

2. The conclusions stated in our appraisal apply only as of the effective date of the appraisal, and no representation is made as to the effect of subsequent events.

3. No changes in any federal, state or local laws, regulations or codes (including, without limitation, the Internal Revenue Code) are anticipated.

4. No environmental impact studies were either requested or made in conjunction with this appraisal, and we reserve the right to revise or rescind any of the value opinions based upon any subsequent environmental impact studies. If any environmental impact statement is required by law, the appraisal assumes that such statement will be favorable and will be approved by the appropriate regulatory bodies.

5. Unless otherwise agreed to in writing, we are not required to give testimony, respond to any subpoena or attend any court, governmental or other hearing with reference to the property without compensation relative to such additional employment.

6. We have made no survey of the property and assume no responsibility in connection with such matters. Any sketch or survey of the property included in this report is for illustrative purposes only and should not be considered to be scaled accurately for size. The appraisal covers the property as described in this report, and the areas and dimensions set forth are assumed to be correct.

Wites, Marc & Jennifer



Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/02/19 Page 201 of 232
Case 1:11-cv-22408-MGC Document 281-8 Entered on FLSD Docket 05/13/2019 Page 43 of 44

Assumptions and Limiting Conditions                                                                    10

7.  No opinion is expressed as to the value of subsurface oil, gas or mineral rights, if any, and we have assumed that the property is not subject to surface entry for the exploration or removal of such materials, unless otherwise noted in our appraisal.

8.  We accept no responsibility for considerations requiring expertise in other fields. Such considerations include, but are not limited to, legal descriptions and other legal matters such as legal title, geologic considerations such as soils and seismic stability; and civil, mechanical, electrical, structural and other engineering and environmental matters. Such considerations may also include determinations of compliance with zoning and other federal, state, and local laws, regulations and codes.

9.  The distribution of the total valuation in the report between land and improvements applies only under the reported highest and best use of the property. The allocations of value for land and improvements must not be used in conjunction with any other appraisal and are invalid if so used. The appraisal report shall be considered only in its entirety. No part of the appraisal report shall be utilized separately or out of context.

10. Neither all nor any part of the contents of this report (especially any conclusions as to value, the identity of the appraisers, or any reference to the Appraisal Institute) shall be disseminated through advertising media, public relations media, news media or any other means of communication (including without limitation prospectuses, private offering memoranda and other offering material provided to prospective investors) without the prior written consent of the persons signing the report.

11. Information, estimates and opinions contained in the report and obtained from third-party sources are assumed to be reliable and have not been independently verified.

12. Any income and expense estimates contained in the appraisal report are used only for the purpose of estimating value and do not constitute predictions of future operating results.

13. If the property is subject to one or more leases, any estimate of residual value contained in the appraisal may be particularly affected by significant changes in the condition of the economy, of the real estate industry, or of the appraised property at the time these leases expire or otherwise terminate.

14. Unless otherwise stated in the report, no consideration has been given to personal property located on the premises or to the cost of moving or relocating such personal property; only the real property has been considered.

15. The current purchasing power of the dollar is the basis for the values stated in the appraisal; we have assumed that no extreme fluctuations in economic cycles will occur.

16. The values found herein are subject to these and to any other assumptions or conditions set forth in the body of this report but which may have been omitted from this list of Assumptions and Limiting Conditions.

17. The analyses contained in the report necessarily incorporate numerous estimates and assumptions regarding property performance, general and local business and economic conditions, the absence of material changes in the competitive environment and other matters. Some estimates or assumptions, however, inevitably will not materialize, and unanticipated events and circumstances may occur; therefore, actual results achieved during



Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/02/19 Page 202 of 232
Case 1:11-cv-22408-MGC Document 281-9 Entered on FLSD Docket 05/13/2019 Page 44 of 44

Assumptions and Limiting Conditions                                                          11

the period covered by our analysis will vary from our estimates, and the variations may be material.

18.  The Americans with Disabilities Act (ADA) became effective January 26, 1992. We have not made a specific survey or analysis of the property to determine whether the physical aspects of the improvements meet the ADA accessibility guidelines. We claim no expertise in ADA issues, and render no opinion regarding compliance of the subject with ADA regulations. Inasmuch as compliance matches each owner's financial ability with the cost to cure the non-conforming physical characteristics of a property, a specific study of both the owner's financial ability and the cost to cure any deficiencies would be needed for the Department of Justice to determine compliance.

19.  The appraisal report is prepared for the exclusive benefit of the Client, its subsidiaries and/or affiliates. It may not be used or relied upon by any other party. All parties who use or rely upon any information in the report without our written consent do so at their own risk.

20.  No studies have been provided to us indicating the presence or absence of hazardous materials on the subject property or in the improvements, and our valuation is predicated upon the assumption that the subject property is free and clear of any environment hazards including, without limitation, hazardous wastes, toxic substances and mold. No representations or warranties are made regarding the environmental condition of the subject property. Integra Realty Resources – Miami/Palm Beach, Integra Realty Resources, Inc., Integra Strategic Ventures, Inc. and/or any of their respective officers, owners, managers, directors, agents, subcontractors or employees (the "Integra Parties"), shall not be responsible for any such environmental conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because we are not experts in the field of environmental conditions, the appraisal report cannot be considered as an environmental assessment of the subject property.

21.  The persons signing the report may have reviewed available flood maps and may have noted in the appraisal report whether the subject property is located in an identified Special Flood Hazard Area. We are not qualified to detect such areas and therefore do not guarantee such determinations. The presence of flood plain areas and/or wetlands may affect the value of the property, and the value conclusion is predicated on the assumption that wetlands are non-existent or minimal.

22.  Integra Realty Resources – Miami/Palm Beach is not a building or environmental inspector. Integra Miami/Palm Beach does not guarantee that the subject property is free of defects or environmental problems. Mold may be present in the subject property and a professional inspection is recommended.

23.  The appraisal report and value conclusions for an appraisal assume the satisfactory completion of construction, repairs or alterations in a workmanlike manner.

24.  It is expressly acknowledged that in any action which may be brought against any of the Integra Parties, arising out of, relating to, or in any way pertaining to this engagement, the appraisal reports, and/or any other related work product, the Integra Parties shall not be responsible or liable for any incidental or consequential damages or losses, unless the appraisal was fraudulent or prepared with intentional misconduct. It is further acknowledged

Wites, Marc & Jennifer



Case 2:09-md-02047-EEF-MBN   Document 22380-55   Filed 12/02/19   Page 203 of 232
Case 1:11-cv-22408-MGC   Document 281-5   Entered on FLSD Docket 05/13/2019   Page 15 of 44

Assumptions and Limiting Conditions                                                    12

that the collective liability of the Integra Parties in any such action shall not exceed the fees paid for the preparation of the appraisal report unless the appraisal was fraudulent or prepared with intentional misconduct. Finally, it is acknowledged that the fees charged herein are in reliance upon the foregoing limitations of liability.

25.  Integra Realty Resources – Miami/Palm Beach, an independently owned and operated company, has prepared the appraisal for the specific intended use stated elsewhere in the report. The use of the appraisal report by anyone other than the Client is prohibited except as otherwise provided. Accordingly, the appraisal report is addressed to and shall be solely for the Client's use and benefit unless we provide our prior written consent. We expressly reserve the unrestricted right to withhold our consent to your disclosure of the appraisal report or any other work product related to the engagement (or any part thereof including, without limitation, conclusions of value and our identity), to any third parties. Stated again for clarification, unless our prior written consent is obtained, no third party may rely on the appraisal report (even if their reliance was foreseeable).

26.  The conclusions of this report are estimates based on known current trends and reasonably foreseeable future occurrences. These estimates are based partly on property information, data obtained in public records, interviews, existing trends, buyer-seller decision criteria in the current market, and research conducted by third parties, and such data are not always completely reliable. The Integra Parties are not responsible for these and other future occurrences that could not have reasonably been foreseen on the effective date of this assignment. Furthermore, it is inevitable that some assumptions will not materialize and that unanticipated events may occur that will likely affect actual performance. While we are of the opinion that our findings are reasonable based on current market conditions, we do not represent that these estimates will actually be achieved, as they are subject to considerable risk and uncertainty. Moreover, we assume competent and effective management and marketing for the duration of the projected holding period of this property.

27.  All prospective value opinions presented in this report are estimates and forecasts which are prospective in nature and are subject to considerable risk and uncertainty. In addition to the contingencies noted in the preceding paragraph, several events may occur that could substantially alter the outcome of our estimates such as, but not limited to changes in the economy, interest rates, and capitalization rates, behavior of consumers, investors and lenders, fire and other physical destruction, changes in title or conveyances of easements and deed restrictions, etc. It is assumed that conditions reasonably foreseeable at the present time are consistent or similar with the future.



Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/02/19 Page 204 of 232
Case 1:11-cv-22408-MGC Document 281-3 Entered on FLSD Docket 05/13/2019 Page 46 of 44

Addenda

## Addenda



| Borrower | Marc & Jennifer Wites | | | File No. | VALU-18-12-1469 |
| Property Address | 17625 Middlebrook Way | | | | |
| City | Boca Raton | County | Palm Beach | State FL | Zip Code 33496 |
| Lender/Client | Integra Realty Resources (IRR) | | | | |

## TABLE OF CONTENTS



| | |
|---|---|
| USPAP Identification Addendum | 1 |
| Exterior-Only | 2 |
| Additional Comparables 4-6 | 8 |
| Single Family Comparable Rent Schedule | 9 |
| General Text Addendum | 10 |
| Subject Photos | 13 |
| Comparable Photos 1-3 | 14 |
| Comparable Photos 4-6 | 15 |
| Rental Photos 1-3 | 16 |
| Assessor Map | 17 |
| Location Map | 18 |
| Subject Aerial Map | 19 |
| Assessor Data | 20 |
| Tax Information | 21 |
| License | 22 |

USPAP ADDENDUM

VALU-18-12-1469

File No. VALU-18-12-1469

| Borrower | Marc & Jennifer Wites | | | | |
|---|---|---|---|---|---|
| Property Address | 17625 Middlebrook Way | | | | |
| City | Boca Raton | County Palm Beach | | State FL | Zip Code 33496 |
| Lender | Integra Realty Resources (IRR) | | | | |

This report was prepared under the following USPAP reporting option:

☒ Appraisal Report — This report was prepared in accordance with USPAP Standards Rule 2-2(a).

☐ Restricted Appraisal Report — This report was prepared in accordance with USPAP Standards Rule 2-2(b).

**Reasonable Exposure Time**

My opinion of a reasonable exposure time for the subject property at the market value stated in this report is: 90-180 DAYS

EXPOSURE TIME: estimated length of time that the property interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of the appraisal.

USPAP 2018-19 Comment: Exposure time is a retrospective opinion based on an analysis of past events assuming a competitive and open market

**Additional Certifications**

I certify that, to the best of my knowledge and belief:

☒ I have NOT performed services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

☐ I HAVE performed services, as an appraiser or in another capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment. Those services are described in the comments below.

- The statements of fact contained in this report are true and correct.
- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.
- Unless otherwise indicated, I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.
- I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.
- My engagement in this assignment was not contingent upon developing or reporting predetermined results.
- My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.
- My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice that were in effect at the time this report was prepared.
- Unless otherwise indicated, I have made a personal inspection of the property that is the subject of this report.
- Unless otherwise indicated, no one provided significant real property appraisal assistance to the person(s) signing this certification (if there are exceptions, the name of each individual providing significant real property appraisal assistance is stated elsewhere in this report).

**Additional Comments**

APPRAISER COMPETENCY

An appraiser must determine, prior to accepting an assignment, that he or she can perform the assignment competently. Competency requires:

1. the ability to properly identify the problem to be addressed; and
2. the knowledge and experience to complete the assignment competently; and
3. recognition of, and compliance with, laws and regulations that apply to the appraiser or to the assignment.

I am competent to perform this assignment based on my state appraiser license and familiarity with this type of property in the subject market

I performed this appraisal in accordance with the requirements of Title XI of the Financial Institution Reform, Recovery and Enforcement Act of 1989, (12 U.S.C.3331 et seq.), and any implementing regulations

| APPRAISER: | SUPERVISORY APPRAISER: (only if required) |
|---|---|
| Signature: *Carlos Fong* | Signature: |
| Name: Carlos Fong | Name: |
| Date Signed: 01/15/2019 | Date Signed: |
| State Certification #: RD 6782 | State Certification #: |
| or State License #: | or State License #: |
| State: FL | State: |
| Expiration Date of Certification or License: 11/30/2020 | Expiration Date of Certification or License: |
| Effective Date of Appraisal: 01/01/2019 | Supervisory Appraiser Inspection of Subject Property: ☐ Did Not ☐ Exterior-only from Street ☐ Interior and Exterior |

# Exterior-Only Inspection Residential Appraisal Report

VALU-18-12-1469
File # VALU-18-12-1469

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

**SUBJECT**

| | | | |
|---|---|---|---|
| Property Address | 17625 Middlebrook Way | City Boca Raton | State FL Zip Code 33496 |
| Borrower Marc & Jennifer Wites | Owner of Public Record | Marc & Jennifer Wites | County Palm Beach |

Legal Description FOX HILL ESTATES OF BOCA RATON LT 114

| | | | |
|---|---|---|---|
| Assessor's Parcel # 00-42-46-31-01-000-1140 | Tax Year 2017 | R.E. Taxes $ 16,950 | |
| Neighborhood Name Fox Hill Estates of Boca Raton | Map Reference 48424 | Census Tract 0077.43 | |

Occupant ☒ Owner ☐ Tenant ☐ Vacant  Special Assessments $ 0  ☐ PUD  HOA $ 0  ☐ per year ☐ per month

Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe)

Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe) Litigation

Lender/Client Integra Realty Resources (IRR)  Address 9155 South Dadeland Boulevard, Miami, FL 33156

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☐ Yes ☒ No

Report data source(s) used, offering price(s), and date(s). The subject has not listed or sold for the past 12 months per MIAMI MLS.

**CONTRACT**

I ☐ did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $ ___ Date of Contract ___ Is the property seller the owner of public record? ☐ Yes ☐ No Data Source(s) ___

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☐ Yes ☐ No
If Yes, report the total dollar amount and describe the items to be paid.

**NEIGHBORHOOD**

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | | | Property Values ☐ Increasing ☒ Stable ☐ Declining | | | PRICE $ (000) | AGE (yrs) | One-Unit 90 % | |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | | | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | | | 79 Low 0 | | 2-4 Unit % | |
| Growth ☐ Rapid ☒ Stable ☐ Slow | | | Marketing Time ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | | | 2,100 High 40 | | Multi-Family 5 % | |
| | | | | | | 347 Pred. 25 | | Commercial 5 % | |
| | | | | | | | | Other % | |

Neighborhood Boundaries The subject is bound to the north by Gulf Stream, to the west by FL Route 441, to the east by Lyons Rd and to the south by Clint Moore Rd.

Neighborhood Description There are no adverse factors that should affect the subject's marketability. The subject has access to all necessary supporting facilities including schools, shopping, recreation and employment centers.

Market Conditions (including support for the above conclusions) There is a slight oversupply of active listings. This will lead to higher marketing times, however, will not adversely effect the subject.

**SITE**

| | | | |
|---|---|---|---|
| Dimensions Per Palm Beach County Assr | Area 10,302 sf | Shape Rectangular | View N;Res; |

Specific Zoning Classification AGR-PUD  Zoning Description Agricultural Reserve PUD (00-Unincorporated)

Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street Asphalt | ☒ | |
| Gas | ☒ | | Sanitary Sewer | ☒ | | Alley None | | |

FEMA Special Flood Hazard Area ☐ Yes ☒ No  FEMA Flood Zone X  FEMA Map # 12099C0965F  FEMA Map Date 10/05/2017

Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No If Yes, describe

No observed or known adverse influences to market value were noted. Subject backs up to a plant farm/nursery, external obsolescence was not noted.

**IMPROVEMENTS**

Source(s) Used for Physical Characteristics of Property ☐ Appraisal Files ☒ MLS ☒ Assessment and Tax Records ☐ Prior Inspection ☐ Property Owner
☐ Other (describe)  Data Source for Gross Living Area Sefimapp

| General Description | | General Description | | Heating/Cooling | | Amenities | | Car Storage | |
|---|---|---|---|---|---|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | | ☒ Concrete Slab ☐ Crawl Space | | ☒ FWA ☐ HWBB | | Fireplace(s) # 0 ☐ None | | ☐ None | |
| # of Stories 2 | | ☐ Full Basement ☐ Finished | | ☐ Radiant | | Woodstove(s) # 0 | | ☒ Driveway # of Cars 3 | |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | | ☐ Partial Basement ☐ Finished | | ☐ Other | | ☒ Patio/Deck Patio | | Driveway Surface Pavers | |
| ☒ Existing ☐ Proposed ☐ Under Const. | | Exterior Walls CBS | | Fuel Gas/Elec. | | ☒ Porch Entry | | ☒ Garage # of Cars 3 | |
| Design (Style) Mediterranean | | Roof Surface S-Tile | | ☒ Central Air Conditioning | | ☒ Pool Pool | | ☐ Carport # of Cars 0 | |
| Year Built 2006 | | Gutters & Downspouts Gutters | | ☐ Individual | | ☒ Fence Fence | | ☒ Attached ☐ Detached | |
| Effective Age (Yrs) 10 | | Window Type Sliders | | ☐ Other | | ☐ None None | | ☐ Built-in | |

Appliances ☒ Refrigerator ☒ Range/Oven ☒ Dishwasher ☒ Disposal ☒ Microwave ☒ Washer/Dryer ☐ Other (describe)

Finished area above grade contains: 10 Rooms 6 Bedrooms 5.1 Bath(s) 5,935 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.) None

Describe the condition of the property and data source(s) (including apparent needed repairs, deterioration, renovations, remodeling, etc.). C2;The subject was noted in average condition upon inspection. Subject is located in a gated community and access was not granted.

Are there any apparent physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No
If Yes, describe.

There are no apparent external or functional inadequacies noted or reported at time of inspection. Physical depreciation is calculated by the modified age life method.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? ☒ Yes ☐ No If No, describe.

The construction quality is typical for the area.

Form 2055 - "TOTAL" appraisal software by a la mode, inc. – 1-800-ALAMODE

**Exterior-Only Inspection Residential Appraisal Report**

VALU-18-12-1469
File # VALU-18-12-1469

| | | |
|---|---|---|
| There are | 25 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 899,000 to $ 9,490,000 . |
| There are | 18 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 920,000 to $ 2,100,000 . |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 17625 Middlebrook Way | 17837 Key Vista Way | | 17768 Vecino Way | | 9398 Grand Estates Way | |
| | Boca Raton, FL 33496 | Boca Raton, FL 33496 | | Boca Raton, FL 33496 | | Boca Raton, FL 33496 | |
| Proximity to Subject | | 0.31 miles SE | | 0.71 miles SE | | 0.34 miles E | |
| Sale Price | $ | | $ 1,500,000 | | $ 1,600,000 | | $ 1,562,500 |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 262.79 sq.ft. | | $ 251.37 sq.ft. | | $ 235.92 sq.ft. | |
| Data Source(s) | | SEF #R10417012;DOM 42 | | SEF #R10447451;DOM 75 | | SEF #R10420998;DOM 137 | |
| Verification Source(s) | | Assessor, Realist | | Assessor, Realist | | Assessor, Realist | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | ArmLth | | ArmLth | | ArmLth | |
| Concessions | | Cash;0 | | Cash;0 | | Cash;0 | |
| Date of Sale/Time | | s06/18;c05/18 | | s10/18;c09/18 | | s09/18;c08/18 | |
| Location | Residential | Residential | 0 | Residential | | Residential | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 10302 sf | 11326 sf | | 11269 sf | | 19589 sf | -46,435 |
| View | Residential | Residential | | Residential | | Residential | |
| Design (Style) | Mediterranean | Mediterranean | | Mediterranean | | Mediterranean | |
| Quality of Construction | Good | Good | | Good | | Good | |
| Actual Age | 13 | 13 | | 8 | 0 | 13 | |
| Condition | Good | Good | | Good | | Good | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 10 6 5.1 | 9 5 5.1 | 0 | 10 6 6.2 | -30,000 | 10 5 6.2 | -30,000 |
| Gross Living Area | 5,935 sq.ft. | 5,708 sq.ft. | | 6,365 sq.ft. | | 6,623 sq.ft. | -68,800 |
| Basement & Finished | No Basement | No Basement | | No Basement | | No Basement | |
| Rooms Below Grade | None | None | | None | | None | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | EFA/CAC | EFA/CAC | | EFA/CAC | | EFA/CAC | |
| Energy Efficient Items | None | None | | None | | None | |
| Garage/Carport | 3-Car Garage | 3-Car Garage | | 3-Car Garage | | 4-Car Garage | -20,000 |
| Porch/Patio/Deck | Porch/Patio | Blcs/Pto/Porch | 0 | Blcs/Pto/Porch | 0 | Blcs/Pto/Porch | 0 |
| Other | Pool | Pool | | Pool | | Pool | |
| Net Adjustment (Total) | | ☐ + ☐ - | $ 0 | ☐ + ☒ - | $ -30,000 | ☐ + ☒ - | $ -165,235 |
| Adjusted Sale Price | | Net Adj. 0.0 % | | Net Adj. 1.9 % | | Net Adj. 10.6 % | |
| of Comparables | | Gross Adj. 0.0 % $ | 1,500,000 | Gross Adj. 1.9 % $ | 1,570,000 | Gross Adj. 10.6 % $ | 1,397,265 |

☐ I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s) MIAMI MLS, Palm Beach County Records, and Realist
My research ☐ did ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s) MIAMI MLS, Palm Beach County Records, and Realist
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | | | | |
| Data Source(s) | MLS, Assessor, Realist | MLS, Assessor, Realist | MLS, Assessor, Realist | MLS, Assessor, Realist |
| Effective Date of Data Source(s) | 01/01/2019 | 01/01/2019 | 01/01/2019 | 01/01/2019 |

Analysis of prior sale or transfer history of the subject property and comparable sales   Per public record, the Subject has not sold or transferred in the past 36 months.

Summary of Sales Comparison Approach   See Attached Addendum.

Indicated Value by Sales Comparison Approach $ 1,500,000

| Indicated Value by: Sales Comparison Approach $ 1,500,000 | Cost Approach (if developed) $ | Income Approach (if developed) $ |
|---|---|---|

see attached addendum.

This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair: No special conditions are noted.

Personal property is not included in this valuation.
Based on a visual inspection of the exterior areas of the subject property from at least the street, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 1,500,000 , as of 01/01/2019 , which is the date of inspection and the effective date of this appraisal.

**Exterior-Only Inspection Residential Appraisal Report**  VALU-18-12-1469   File # VALU-18-12-1469

PLEASE ATTACHED ADDENDUM FOR FURTHER INFORMATION

**ADDITIONAL COMMENTS**

**COST APPROACH TO VALUE (not required by Fannie Mae)**

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)   Site value is estimated and/or supported by the sales comparison approach whenever data is available, otherwise extraction method is used.

ESTIMATED ☐ REPRODUCTION OR ☐ REPLACEMENT COST NEW   OPINION OF SITE VALUE .......................... =$ 150,000

Source of cost data   N/A   DWELLING   5,935 Sq.Ft. @ $ .......... =$

Quality rating from cost service   N/A   Effective date of cost data   N/A   0 Sq.Ft. @ $ .......... =$

Comments on Cost Approach (gross living area calculations, depreciation, etc.)   .......... =$

The cost approach was not applied as the area is fully built up and there   Garage/Carport   Sq.Ft. @ $ .......... =$

is no vacant land available, except where an existing house will be torn   Total Estimate of Cost-New .......... =$

down. In addition, physical depreciation is often difficult to estimate for   Less   Physical   Functional   External

homes over 5 years of age. Although the Cost Approach could be   Depreciation   =$( )

considered an applicable approach to value, it is not typically relied   Depreciated Cost of Improvements .......... =$

upon by market participants for one to four family properties.   "As-is" Value of Site Improvements .......... =$

Estimated Remaining Economic Life (HUD and VA only)   50 Years   INDICATED VALUE BY COST APPROACH .......... =$

**INCOME APPROACH TO VALUE (not required by Fannie Mae)**

Estimated Monthly Market Rent $   8,250   X Gross Rent Multiplier   = $   Indicated Value by Income Approach

Summary of Income Approach (including support for market rent and GRM)   The income approach is not applicable to this report as homes in the area are typically owner occupied.

**PROJECT INFORMATION FOR PUDs (if applicable)**

Is the developer/builder in control of the Homeowners' Association (HOA)? ☐ Yes ☐ No   Unit type(s) ☐ Detached ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of Project

Total number of phases   Total number of units   Total number of units sold

Total number of units rented   Total number of units for sale   Data source(s)

Was the project created by the conversion of existing building(s) into a PUD? ☐ Yes ☐ No   If Yes, date of conversion

Does the project contain any multi-dwelling units? ☐ Yes ☐ No   Data Source(s)

Are the units, common elements, and recreation facilities complete? ☐ Yes ☐ No   If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association? ☐ Yes ☐ No   If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

Freddie Mac Form 2055 March 2005   Page 3 of 6   Fannie Mae Form 2055 March 2005

Form 2055 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

**Exterior-Only Inspection Residential Appraisal Report**

VALU-18-12-1469
File # VALU-18-12-1469

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

SCOPE OF WORK: The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a visual inspection of the exterior areas of the subject property from at least the street, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

The appraiser must be able to obtain adequate information about the physical characteristics (including, but not limited to, condition, room count, gross living area, etc.) of the subject property from the exterior-only inspection and reliable public and/or private sources to perform this appraisal. The appraiser should use the same type of data sources that he or she uses for comparable sales such as, but not limited to, multiple listing services, tax and assessment records, prior inspections, appraisal files, information provided by the property owner, etc.

INTENDED USE: The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

INTENDED USER: The intended user of this appraisal report is the lender/client.

DEFINITION OF MARKET VALUE: The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS: The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

3. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

4. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

5. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Form 2055 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

**Exterior-Only Inspection Residential Appraisal Report**

VALU-18-12-1469
File # VALU-18-12-1469

APPRAISER'S CERTIFICATION:   The   Appraiser   certifies   and   agrees   that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a visual inspection of the exterior areas of the subject property from at least the street. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

## Exterior-Only Inspection Residential Appraisal Report

VALU-18-12-1469
File # VALU-18-12-1469

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

SUPERVISORY APPRAISER'S CERTIFICATION:    The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature  *Carlos Fong* | Signature |
| Name  Carlos Fong | Name |
| Company Name  Valucentric LLC | Company Name |
| Company Address  7908 Montecito Pl, Delray Beach, FL 33446 | Company Address |
| | |
| Telephone Number  (844) 825-8236 | Telephone Number |
| Email Address  info@valucentric.com | Email Address |
| Date of Signature and Report  01/15/2019 | Date of Signature |
| Effective Date of Appraisal  01/01/2019 | State Certification # |
| State Certification #  RD 6782 | or State License # |
| or State License # | State |
| or Other (describe)  State #  | Expiration Date of Certification or License |
| State  FL | |
| Expiration Date of Certification or License  11/30/2020 | SUBJECT PROPERTY |
| ADDRESS OF PROPERTY APPRAISED | |
| 17625 Middlebrook Way | ☐ Did not inspect exterior of subject property |
| Boca Raton, FL 33496 | ☐ Did inspect exterior of subject property from street |
| | Date of Inspection  |
| APPRAISED VALUE OF SUBJECT PROPERTY $  1,500,000 | |
| LENDER/CLIENT | COMPARABLE SALES |
| Name  Integra Realty Resources (IRR) | |
| Company Name  Integra Realty Resources (IRR) | ☐ Did not inspect exterior of comparable sales from street |
| Company Address  9155 South Dadeland Boulevard, Miami, FL | ☐ Did inspect exterior of comparable sales from street |
| 33156 | Date of Inspection  |
| Email Address | |

Form 2055 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

# Exterior–Only Inspection Residential Appraisal Report

VALU-18-12-1469
File # VALU-18-12-1469

| FEATURE | SUBJECT | COMPARABLE SALE # 4 | | COMPARABLE SALE # 5 | | COMPARABLE SALE # 6 | |
|---|---|---|---|---|---|---|---|
| Address | 17625 Middlebrook Way Boca Raton, FL 33496 | 9439 Grand Estates Way Boca Raton, FL 33496 | | 9509 Grand Estates Way Boca Raton, FL 33496 | | | |
| Proximity to Subject | | 0.32 miles E | | 0.24 miles E | | | |
| Sale Price | $ | | $ 1,512,500 | | $ 1,480,000 | | $ |
| Sale Price/Gross Liv. Area | $ sq.ft. | $ 231.59 sq.ft. | | $ 249.16 sq.ft. | | $ sq.ft. | |
| Data Source(s) | | SEF #R10390472;DOM 45 | | SEF #R10438257;DOM 40 | | | |
| Verification Source(s) | | Assessor, Realist | | Assessor, Realist | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | ArmLth | | ArmLth | | | |
| Concessions | | Cash;0 | | Conv;0 | | | |
| Date of Sale/Time | | s03/18;c02/18 | | s08/18;c07/18 | | | |
| Location | Residential | Residential | | Residential | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | | |
| Site | 10302 sf | 14745 sf | -22,215 | 16705 sf | -32,015 | | |
| View | Residential | Residential | | Residential | | | |
| Design (Style) | Mediterranean | Mediterranean | | Mediterranean | | | |
| Quality of Construction | Good | Good | | Good | | | |
| Actual Age | 13 | 13 | | 13 | | | |
| Condition | Good | Average | +150,000 | Good | | | |
| Above Grade | Total | Bdrms. | Baths | Total | Bdrms. | Baths | Total | Bdrms. | Baths | Total | Bdrms. | Baths |
| Room Count | 10 | 6 | 5.1 | 11 | 6 | 7.2 | -50,000 | 10 | 5 | 5.1 | 0 | | | |
| Gross Living Area | 5,935 sq.ft. | 6,531 sq.ft. | -59,600 | 5,940 sq.ft. | | sq.ft. | |
| Basement & Finished | No Basement | No Basement | | No Basement | | | |
| Rooms Below Grade | None | None | | None | | | |
| Functional Utility | Average | Average | | Average | | | |
| Heating/Cooling | EFA/CAC | EFA/CAC | | EFA/CAC | | | |
| Energy Efficient Items | None | None | | None | | | |
| Garage/Carport | 3-Car Garage | 4-Car Garage | -20,000 | 3-Car Garage | | | |
| Porch/Patio/Deck | Porch/Patio | Blcs/Pto/Porch | 0 | Blcs/Pto/Porch | 0 | | |
| Other | | Pool | | Pool | | | |
| | | | | | | | |
| Net Adjustment (Total) | | ☐ + ☒ - | $ -1,815 | ☐ + ☒ - | $ -32,015 | ☐ + ☐ - | $ |
| Adjusted Sale Price | | Net Adj. 0.1 % | | Net Adj. 2.2 % | | Net Adj. 0.0 % | |
| of Comparables | | Gross Adj. 20.0 % | $ 1,510,685 | Gross Adj. 2.2 % | $ 1,447,985 | Gross Adj. 0.0 % | $ |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 4 | COMPARABLE SALE # 5 | COMPARABLE SALE # 6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | | | | |
| Data Source(s) | MLS, Assessor, Realist | MLS, Assessor, Realist | MLS, Assessor, Realist | |
| Effective Date of Data Source(s) | 01/01/2019 | 01/01/2019 | 01/01/2019 | |

Analysis of prior sale or transfer history of the subject property and comparable sales    9398 Grand Estates Way has no 12-month prior transfer history. 9439 Grand Estates Way has no 12-month prior transfer history. 9509 Grand Estates Way has no 12-month prior transfer history.

Analysis/Comments

*(Vertical labels: SALES COMPARISON APPROACH, SALE HISTORY, ANALYSIS / COMMENTS)*

# SINGLE FAMILY COMPARABLE RENT SCHEDULE

VALU-18-12-1469
File # VALU-18-12-1469

This form is intended to provide the appraiser with a familiar format to estimate the market rent of the subject property. Adjustments should be made only for items of significant difference between the comparables and the subject property.

| ITEM | SUBJECT | COMPARABLE NO. 1 | | COMPARABLE NO. 2 | | COMPARABLE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 17625 Middlebrook Way Boca Raton, FL 33496 | 17637 Circle Pond Ct Boca Raton, FL 33496 | | 17642 Middlebrook Way Boca Raton, FL 33496 | | 17697 Middlebrook Way Boca Raton, FL 33496 | |
| Proximity to Subject | | 0.13 miles W | | 0.04 miles SE | | 0.13 miles E | |
| Date Lease Begins Date Lease Expires | | 04/17 Unk | | 05/17 Unk | | 08/17 Unk | |
| Monthly Rental | If Currently Rented: $ | $ 8,500 | | $ 8,500 | | $ 8,000 | |
| Less: Utilities Furniture | $ | $ | | $ | | $ | |
| Adjusted Monthly Rent | $ | $ 8,500 | | $ 8,500 | | $ 8,000 | |
| Data Source | MLS,Inspection Assessor,Realist | MLS #R10319032 Assessor, Realist | | MLS #R10317508 Assessor, Realist | | MLS #R10363320 Assessor, Realist | |
| RENT ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. | DESCRIPTION | +(−)$ Adjust. |
| Rent Concessions | | | | | | | |
| Location/View | Residential Residential | N;Res; N;Res; | | N;Res; N;Res; | | N;Res; N;Res; | |
| Design and Appeal | Mediterranean | DT2;Mediterranean | | DT2;Mediterranean | | DT2;Mediterranean | |
| Age/Condition | 13 Good | 13 C2 | | 16 C2 | | 14 C2 | |
| Above Grade Room Count | Total Bdrms Baths 10 6 5.1 | Total Bdrms Baths 11 6 6.2 | | Total Bdrms Baths 10 6 6.1 | | Total Bdrms Baths 9 5 5.1 | |
| Gross Living Area | 5,935 Sq. Ft. | 6,538 Sq. Ft. | | 5,188 Sq. Ft. | | 5,511 Sq. Ft. | |
| Other (e.g., basement, etc.) | No Basement None | 0sf | | 0sf | | 0sf | |
| Other: | | | | | | | |
| Net Adj. (total) | | ☐ + ☐ − $ 0 | | ☐ + ☐ − $ 0 | | ☐ + ☐ − $ 0 | |
| Indicated Monthly Market Rent | | $ 8,500 | | $ 8,500 | | $ 8,000 | |

Comments on market data, including the range of rents for single family properties, an estimate of vacancy for single family rental properties, the general trend of rents and vacancy, and support for the above adjustments. (Rent concessions should be adjusted to the market, not to the subject property.) Rentals of comparable style dwellings ranged from $8,000 to $8,500.

Final Reconciliation of Market Rent: All rentals were taken into the final consideration. The opinion of market rent is $8,250

I (WE) ESTIMATE THE MONTHLY MARKET RENT OF THE SUBJECT AS OF 01/01/2019 TO BE $ 8,250

Appraiser(s) SIGNATURE *Carlos Fong*   Review Appraiser SIGNATURE
NAME Carlos Fong   (If applicable) NAME
Certified Residential Appraiser
Date Property Inspected 01/01/2019   Report Signed 01/15/2019   Date Property Inspected _____ Report Signed _____
License or Certification # RD 6782   State FL   License or Certification # _____ State _____
Expiration Date of License or Certification 11/30/2020   Expiration Date of License or Certification _____
Review Appraiser ☐ Did ☐ Did Not Inspect Subject Property

Freddie Mac Form 1000 (8/88)

Fannie Mae Form 1007 (8/88)

Form 1007 - "TOTAL" appraisal software by a la mode, inc. - 1-800-ALAMODE

## Supplemental Addendum

File No. VALU-18-12-1469

| Borrower | Marc & Jennifer Wites | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 17625 Middlebrook Way | | | | | | |
| City | Boca Raton | County | Palm Beach | State | FL | Zip Code | 33496 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |

**PURPOSE OF APPRAISAL REPORT**

The purpose of this appraisal is to estimate the market value of the subject property as defined herein. The function of the appraisal is to assist the above-named Lender/Client, its successors and/or assigns, in evaluating the subject property for lending purposes. This is a federally regulated transaction. Additional supporting data can be found in our appraisal work file.

It is assumed that the title to this property is good and marketable. No title search has been made, nor have we attempted to determine ownership of the property. The value estimate is given without regard to any questions of title, boundaries, or encroachments. It is assumed that all assessments are paid. We assume the property to be free and clear of liens and encumbrances except as noted.

The legal description, if included herein, should be verified by legal counsel before being relied upon or used in any conveyance or other document.

We are not familiar with any engineering studies made to determine the bearing capacity of the land. Improvements in the area appear to be structurally sound. It is therefore assumed that soil and subsoil conditions are stable unless specifically outlined in this report.

Any exhibits in the report are intended to assist the reader in visualizing the property and its surroundings. The drawings are not intended as surveys and no responsibility is assumed for their cartographic accuracy. Drawings are not intended to be exact in size, scale or detail.

Areas and dimensions of the property were physically measured. If data is furnished by the principal or from plot plans or surveys furnished by the principal, or from public records, we assume it to be reasonably accurate. In the absence of current surveys, land areas may be based upon representations made by the owner's agents or the client. No attempt has been made to render an opinion or determine the status of easements that may exist. No responsibility is assumed for discrepancies that may become evident from a licensed survey of the property.

The value estimate involves only the real estate and all normal building equipment if any improvements are involved. No consideration was given to personal property, (or special equipment), unless stated.

It is assumed that the property is subject to lawful, competent and informed ownership and management unless noted.

Information in this report concerning market data was obtained from buyers, sellers, brokers, attorneys, trade publications or public records. To the extent possible, this information was examined for accuracy and is believed to be reliable. Dimensions, areas or data obtained from others is believed correct; however, no guarantee is made.

Any information, in whatever form, furnished by others is believed to b e reliable; however, no responsibility is assumed for accuracy.

The separate allocations between land and improvements, if applicable, represents our judgment only under the existing utilization of the property. A re-evaluation should be made if the improvements are removed or substantially altered, and the land utilized for another purpose.

All information and comments concerning the location, neighborhood trends, construction quality and costs, loss in value from whatever cause, condition, rents, or any other data for the property appraised herein, represents the estimates and opinions of the appraiser formed after an examination and study of the property.

Any valuation analysis of the income stream has been predicted upon financing conditions as specified herein, which we have reason to believe are currently available for this property. Financing terms and conditions other than those indicated may alter the final value conclusions.

The appraiser is not required to give testimony or appear in court because of having made this appraisal, with reference to the property in question, unless arrangements have been made previously thereto. If the appraiser (s) is subpoenaed pursuant to court order, the client will be required to compensate said appraiser(s) for his/her time at his/her regular hourly rates, plus expenses.

All opinions, as to values stated, are presented as the appraiser's considered opinion based on the information set forth in the report and his experience. We assume no responsibility for changes in market conditions or for the inability of the client or any other party to achieve their desired results based upon the appraised value. Further, some of the assumptions made can be subject to variation depending upon evolving events. We realize some assumptions may never occur and unanticipated events or circumstances may occur. Therefore, actual results achieved during the projection period may vary from those in this report.

The appraisal assignment was not based on developing or reporting predetermined results, or a requested minimum valuation, a specific valuation, or the approval of a loan.

Our analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the requirements of: USPAP Uniform Standards of Professional Appraisal Practice, and SPP-AI Code of Professional Ethics and the Standards of Professional Practice of the Appraisal Institute; and, except as noted in the Scope of Appraisal, in conformity with specific implementation rules of the following agencies:

FIRREA Title XI of the Financial Institutions Reform, Recovery and Enforcement Act and section 5(b) of the Bank Company Holding Act; FRB – Federal Reserve Board; RTC-Resolution Trust Corporation; OTS-Office of Thrift Supervision; FDIC – Federal Deposit Insurance Corporation; OTC – Office of the Comptroller; NCUA – National Credit Union Association.

**THE APPRAISER HAS PREPARED THIS APPRAISAL IN FULL COMPLIANCE WITH THE APPRAISAL INDEPENDENCE REQUIREMENTS AND HAS NOT PERFORMED, PARTICIPATED IN, OR BEEN ASSOCIATED WITH ANY ACTIVITY IN VIOLATION OF AIR.**

**AT THE REQUEST OF THE CLIENT, THIS APPRAISAL REPORT HAS BEEN PREPARED IN COMPLIANCE WITH THE**

**Supplemental Addendum**

File No. VALU-18-12-1469

| Borrower | Marc & Jennifer Wites | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 17625 Middlebrook Way | | | | | | |
| City | Boca Raton | County | Palm Beach | State | FL | Zip Code | 33496 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |

**UNIFORM APPRAISAL DATASET (UAD) FROM FANNIE MAE AND FREDDIE MAC. THE UAD REQUIRES THE APPRAISER TO USE STANDARDIZED RESPONSES THAT INCLUDE SPECIFIC FORMATS, DEFINITIONS, ABBREVIATIONS, AND ACRONYMS.**

We do not authorize the out-of-context quoting from or partial reprinting of this appraisal report.  Further, neither all nor any part of the contents of this report (especially any conclusions as to value, the identity of the appraiser nor the name of the firm which he is connected, shall be reproduced, published, or disseminated to the public through advertising media, public relations media, news media, or another public means of communication, without the prior written consent of the appraiser signing this report.

Adobe's Distiller software or equivalent may be utilized by appraiser to transmit this encrypted PDF-formatted appraisal.  At a minimum, the software contains the following security measure:

- identifies transmission error during the transmission process, and confirms date, time and quantity of data submitted by appraiser and the date, time and quantity of data received by the Client, and/or its assigns and
- secures data from editing by means of a password, hardware device, or other means that remains in the sole control of the transmitting appraiser.

**THIRTY SIX MONTH LISTING HISTORY**

We are not aware of any prior listings pertaining to the subject property in the past three years as researched through the local Multiple Listing Service.

**NEIGHBORHOOD MARKET CONDITIONS**

No discounts, buy downs or other concessions were noted.  Current 30 year fixed rate financing at 4.5 - 5.5% and 0-2 points.

Stricter Lending Standards and the availability of Mortgage Capital may affect the average sales prices in the area, however, given the market data analyzed by the appraiser, there are no fiscal or economic trends expected to occur that would significantly impact the relatively stable market currently experienced in this neighborhood.

Neighborhood conditions can be found in detail in the attached 1004MC form.

**SITE COMMENTS**

This site is very typical of the neighborhood in terms of size, topography, view and general appeal.  It provides a suitable setting for the improvements and is consistent with market expectations in this price range.  Statements regarding zoning compliance are intended only in the most general sense.  Zoning and building ordinances vary significantly from one municipality to another and can be extremely detailed.  The scope of this assignment does not include a comparison of every potentially significant characteristic of the subject property's site and improvements relative to zoning and building ordinances.  Unless otherwise noted, standard utility and right-of-way easements are insignificant to value.  However, a current locational or boundary survey or title report may reveal encroachments, easements, zoning violations or other matters of interest that could warrant modification of the appraised value.

**COMMENTS REGARDING HIGHEST AND BEST USE**

In compliance with USPAP the following is included in the appraisal;
•          The current use of the real estate as of the date of value is Residential as described in the improvements section of this appraisal.

•          The use of the real estate reflected in this appraisal is as currently improved

•          The rationale and support for the opinion of highest and best use developed for this assignment is as per below:
Highest and Best Use is defined as "The reasonably probable and legal use of vacant land or an improved property that is physically possible, appropriately supported, financially feasible, and that results in the highest value. The four criteria the highest and best use must meet are legal permissibility, physical possibility, financial feasibility, and maximum productivity. Alternatively, the probable use of land or improved property-specific with respect to the user and timing of the use-that is adequately supported and results in the highest present value"
Source: Appraisal Institute, The Dictionary of Real Estate Appraisal, 5th ed. (Appraisal Institute, 2010).
The highest and best use analysis is a critical step in the valuation process.  The comparable properties incorporated into the appraisal are directly affected by the highest and best use analysis. The analysis is based on the use that a hypothetical purchaser would make of the property based on the four tests cited above:
•          Legally Permissible
•          Physically Possible
•          Financially Feasible
•          Maximally Productive

After consideration of the above criteria it has been determined that the current improvements continue to contribute to the total market value of the property and the return from a new improvement would not currently offset the cost of demolishing the existing improvements and constructing a new one.   Therefore, the highest and best use is as improved.

**COMMENTS ON SALES COMPARISON APPROACH**

All comparables provided strong support.  The most weight, and opinion of value fell on comparable 1, for requiring zero adjustments.

Comparables were adjusted for their differences in lot square footages, overall condition, above grade bathroom count, gross living area, and parking.  Gross living area adjustments were made at $100 per square foot.  Comparables within 10% of the subject property did not warrant an adjustment.  Lot adjustments were made at $5 per square foot.  No lot size adjustments were warranted for lot size differences within 30% of the subject lot size as no market data exists to support an adjustment.

## Supplemental Addendum

| | | | | | | File No. VALU-18-12-1469 |
|---|---|---|---|---|---|---|
| Borrower | Marc & Jennifer Wites | | | | | |
| Property Address | 17625 Middlebrook Way | | | | | |
| City | Boca Raton | County | Palm Beach | State | FL | Zip Code 33496 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | |

The remaining adjustments are indicated on the sales comparison grid.

ALL ADJUSTMENTS WERE DERIVED FROM THE SUBJECT MARKET AND THE APPRAISERS EXPERTISE IN THE MARKET PLACE.

I performed this appraisal in accordance with the requirements of Title XI of the Financial Institution Reform, Recovery and Enforcement Act of 1989, (12 U.S.C.3331 et seq.), and any implementing regulations.

All comparables are located within the subject's neighborhood boundaries. No geographic boundaries were crossed.

It should be noted that the estimated value of the subject exceeds the predominate value in the subject neighborhood. This will not have a negative effect on the marketability of the subject property. The subject property is in no way an over improvement for the market area.

**RECONCILIATION**

The sales comparison approach was considered most applicable for the subject property because a typical buyer or seller would most readily understand and apply this approach. The income approach was not considered applicable due to the fact that the majority of housing stock in the area is owner occupied and not typically used for investment property. The cost approach was not completed due to the age of the subject and the subjectivity in estimating depreciation and because the typical buyer does not base price points on the cost approach. The quality of available data utilized in the Sales comparison Approach was considered adequate.

**EXTERIOR INSPECTION ADDENDA**

The appraiser has been requested to perform an appraisal based on an exterior only inspection and not to disturb the occupants by entering the building. The physical characteristics used to develop this appraisal are based on the assessment records of Palm Beach County, Florida and on the multiple listing service. The subject property was observed from the public street as of the effective date of the appraisal. On the basis of the observed conditions, the assessment records and multiple listing service information appear to be accurate. For the purposes of this appraisal, it is assumed that the interior condition of the subject property is consistent with the exterior conditions as observed and that the information concerning the interior condition as provided by the assessor's records and the multiple listing service is accurate.

**PHYSICAL DEFICIENCIES OR ADVERSE CONDITIONS**

Unless otherwise stated in this report, the existence of hazardous material and/or electromagnetic emission, which may or may not be present on the property, was not observed by the appraiser. The appraiser has no such knowledge of the existence of such materials on or in the subject property, or in the properties of the subject neighborhood. The appraiser is not qualified to detect such substances. The presence of such substances as asbestos, urea formaldehyde foam insulation, radon, mold, or other potentially hazardous material may affect the value of the property. The value estimate expressed is predicated on the assumption that there is no such material in or on the property that would cause a loss in value. No responsibility is assumed for any such conditions, or for any such expertise or engineering knowledge required discovering them. The customer is urged to retain an expert in this field.

Dwellings built prior to 1978 may contain lead-based paint.

**MOLD**

The appraiser is not a home or environmental inspector. The appraiser provides an opinion of value. The appraisal does not guarantee that the property is free of defects or environmental problems. The appraiser performs an inspection of visible and accessible areas only. Mold may be present in areas the appraiser cannot see. A professional home inspection or environmental inspection is recommended.

**CONCLUSION**

This is an Appraisal Report which is intended to comply with the reporting requirements set forth under Standards Rule 2-2(a) of the Uniform Standards of Professional Appraisal Practice for an Appraisal Report. As such, it presents only minimal discussions of the data, reasoning, and analyses that were used in the appraisal process to develop the appraiser's opinion of value. Supporting documentation concerning the data, reasoning, and analyses is retained in the appraiser's file. The depth of discussion contained in this report is specific to the needs of the client and for the intended use stated herein. The appraiser is not responsible for unauthorized use of this report.

## Subject Photo Page

| Borrower | Marc & Jennifer Wites | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 17625 Middlebrook Way | | | | | | |
| City | Boca Raton | County | Palm Beach | State | FL | Zip Code | 33496 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |



### Subject Front

17625 Middlebrook Way

| | |
|---|---|
| Sales Price | |
| Gross Living Area | 5,935 |
| Total Rooms | 10 |
| Total Bedrooms | 6 |
| Total Bathrooms | 5.1 |
| Location | Residential |
| View | Residential |
| Site | 10302 sf |
| Quality | Good |
| Age | 13 |



### Subject Rear



### Subject Street

**Comparable Photo Page**

| Borrower | Marc & Jennifer Wites | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 17625 Middlebrook Way | | | | | | |
| City | Boca Raton | County | Palm Beach | State | FL | Zip Code | 33496 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |



### Comparable 1

| | |
|---|---|
| 17837 Key Vista Way | |
| Prox. to Subject | 0.31 miles SE |
| Sales Price | 1,500,000 |
| Gross Living Area | 5,708 |
| Total Rooms | 9 |
| Total Bedrooms | 5 |
| Total Bathrooms | 5.1 |
| Location | Residential |
| View | Residential |
| Site | 11326 sf |
| Quality | Good |
| Age | 13 |



### Comparable 2

| | |
|---|---|
| 17768 Vecino Way | |
| Prox. to Subject | 0.71 miles SE |
| Sales Price | 1,600,000 |
| Gross Living Area | 6,365 |
| Total Rooms | 10 |
| Total Bedrooms | 6 |
| Total Bathrooms | 6.2 |
| Location | Residential |
| View | Residential |
| Site | 11269 sf |
| Quality | Good |
| Age | 8 |



### Comparable 3

| | |
|---|---|
| 9398 Grand Estates Way | |
| Prox. to Subject | 0.34 miles E |
| Sales Price | 1,562,500 |
| Gross Living Area | 6,623 |
| Total Rooms | 10 |
| Total Bedrooms | 5 |
| Total Bathrooms | 6.2 |
| Location | Residential |
| View | Residential |
| Site | 19589 sf |
| Quality | Good |
| Age | 13 |

## Comparable Photo Page

| Borrower | Marc & Jennifer Wites | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 17625 Middlebrook Way | | | | | | |
| City | Boca Raton | County | Palm Beach | State | FL | Zip Code | 33496 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |



### Comparable 4

9439 Grand Estates Way
| Prox. to Subject | 0.32 miles E |
|---|---|
| Sales Price | 1,512,500 |
| Gross Living Area | 6,531 |
| Total Rooms | 11 |
| Total Bedrooms | 6 |
| Total Bathrooms | 7.2 |
| Location | Residential |
| View | Residential |
| Site | 14745 sf |
| Quality | Good |
| Age | 13 |



### Comparable 5

9509 Grand Estates Way
| Prox. to Subject | 0.24 miles E |
|---|---|
| Sales Price | 1,480,000 |
| Gross Living Area | 5,940 |
| Total Rooms | 10 |
| Total Bedrooms | 5 |
| Total Bathrooms | 5.1 |
| Location | Residential |
| View | Residential |
| Site | 16705 sf |
| Quality | Good |
| Age | 13 |

### Comparable 6

| Prox. to Subject | |
|---|---|
| Sales Price | |
| Gross Living Area | |
| Total Rooms | |
| Total Bedrooms | |
| Total Bathrooms | |
| Location | |
| View | |
| Site | |
| Quality | |
| Age | |

## Rental Photo Page

| Borrower | Marc & Jennifer Wites | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 17625 Middlebrook Way | | | | | | |
| City | Boca Raton | County | Palm Beach | | State | FL | Zip Code | 33496 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |



### Rental 1

17637 Circle Pond Ct

| | |
|---|---|
| Proximity to Subject | 0.13 miles W |
| Adj. Monthly Rent | 8,500 |
| Gross Living Area | 6,538 |
| Total Rooms | 11 |
| Total Bedrooms | 6 |
| Total Bathrooms | 6.2 |
| Location | N;Res; |
| View | N;Res; |
| Condition | C2 |
| Age/Year Built | 13 |



### Rental 2

17642 Middlebrook Way

| | |
|---|---|
| Proximity to Subject | 0.04 miles SE |
| Adj. Monthly Rent | 8,500 |
| Gross Living Area | 5,188 |
| Total Rooms | 10 |
| Total Bedrooms | 6 |
| Total Bathrooms | 6.1 |
| Location | N;Res; |
| View | N;Res; |
| Condition | C2 |
| Age/Year Built | 16 |



### Rental 3

17697 Middlebrook Way

| | |
|---|---|
| Proximity to Subject | 0.13 miles E |
| Adj. Monthly Rent | 8,000 |
| Gross Living Area | 5,511 |
| Total Rooms | 9 |
| Total Bedrooms | 5 |
| Total Bathrooms | 5.1 |
| Location | N;Res; |
| View | N;Res; |
| Condition | C2 |
| Age/Year Built | 14 |

**Assessor Map**

| Borrower | Marc & Jennifer Wites | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 17625 Middlebrook Way | | | | | | |
| City | Boca Raton | County | Palm Beach | State | FL | Zip Code | 33496 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |



Case 2:09-md-02047-EEF-MBN Document 22380-55 Filed 12/02/19 Page 223 of 232
Case 1:11-cv-22408-MGC Document 261-8 Entered on FLSD Docket 05/13/2019 Page 85 of
114

## Location Map

| Borrower | Marc & Jennifer Wites | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Property Address | 17625 Middlebrook Way | | | | | | | |
| City | Boca Raton | County | Palm Beach | | State | FL | Zip Code | 33496 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | | |



## Subject Aerial Map

| Borrower | Marc & Jennifer Wites | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 17625 Middlebrook Way | | | | | |
| City | Boca Raton | County | Palm Beach | State | FL | Zip Code 33496 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | |



**Assessor Data**

| Borrower | Marc & Jennifer Wites | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 17625 Middlebrook Way | | | | | | |
| City | Boca Raton | County | Palm Beach | State | FL | Zip Code | 33496 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |

# Tax Information

| Borrower | Marc & Jennifer Wites | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 17625 Middlebrook Way | | | | | | |
| City | Boca Raton | County | Palm Beach | State | FL | Zip Code | 33496 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |



1/3/2019     Southeast Florida MLS - Palm Beach County Tax Report - 17625 MIDDLEBROOK WAY, BOCA RATON, FL 33496-1021

## Southeast Florida MLS - IMAPP
**Palm Beach County Tax Report - 17625 MIDDLEBROOK WAY, BOCA RATON, FL 33496-1021**

### PROPERTY INFORMATION

**PID #** 00-42-46-31-01-000-1140
**Property Type:** Residential
**Property Address:**
17625 MIDDLEBROOK WAY
BOCA RATON, FL 33496-1021
**Current Owner:**
MARC WITES
JENNIFER WITES
**Tax Mailing Address:**
17625 MIDDLEBROOK WAY
BOCA RATON, FL 33496-1021
**Phone Number:**
( ) 470-6098
(see phone use authorize below)

**Use Code:** 01 / SINGLE FAMILY
RESIDENTIAL
**Total Land Area:**
0.2365 acres / 10,303 sf
**Land Areas:**
1. SFR (0100)
**Zoning:** AGR-PUD/AGRICULTURAL
RESERVE PLANNED UNIT
DEVELOPMENT DISTRICT
**Frontage:** 76 ft
**Waterfront:** No
**Subdivision:**
FOX HILL ESTATES OF BOCA RATON
**Census Tract/Block:** 007743 / 1004
**Twn:** 46S / **Rng:** 42E / **Sec:** 31
**Block:** 000 / **Lot:** 1140
**Latitude:** 26.415792
**Longitude:** -80.199045
**Legal Description:**
FOX HILL ESTATES OF BOCA RATON LT 114

Residential / Commercial   Agricultural / Industrial   Government / Other   Water / Condo
Active   Sold   Pending   Withdrawn   Expired

Foreclosures

### VALUE INFORMATION

| | 2014 | 2015 | 2016 | 2017 | 2018 |
|---|---|---|---|---|---|
| **Improved Value:** | $927,871 | $1,007,479 | $883,413 | $872,706 | $903,692 |
| Land Value: | $180,000 | $135,000 | $141,750 | $155,925 | $140,333 |
| Just Market Value: | $1,107,871 | $1,142,479 | $1,025,163 | $1,028,631 | $1,044,025 |
| Percent Change: | - n/a - | 3.12% | -10.27% | 0.34% | 1.5% |
| Total Assessed Value: | $953,397 | $961,024 | $967,751 | $988,074 | $988,074 |
| Homestead Exemption: | $25,000 | $25,000 | $25,000 | $25,000 | $25,000 |
| Total Exemptions: | $50,000 | $50,000 | $50,000 | $50,000 | $50,000 |
| Taxable Value: | $903,397 | $911,024 | $917,751 | $938,074 | $958,824 |
| Ad Valorem Taxes: | $17,174.27 | $17,127.09 | $16,678.74 | $16,585.80 | $16,665.85 |
| Non-Ad Valorem Taxes: | $361.00 | $357.00 | $360.50 | $364.00 | $393.50 |
| Total Tax Amount: | $17,535.27 | $17,484.09 | $17,039.24 | $16,949.80 | $17,059.35 |

**Taxing District(s):** 0035S - UNINCORPORATED COUNTY(35S)
**\*Non-Ad Valorem** SOLID WASTE AUTHORITY OF PBC ($316.00) LAKE WORTH DRAINAGE DISTRICT MAINT ($48.00)
**Levies:**

Link To County Tax Collector

http://sef.imapp.com/ilinks/property?upin=US120990024631010001140       1/2

| Borrower | Marc & Jennifer Wites | | | | | | |
|---|---|---|---|---|---|---|---|
| Property Address | 17625 Middlebrook Way | | | | | | |
| City | Boca Raton | County | Palm Beach | | State | FL | Zip Code | 33496 |
| Lender/Client | Integra Realty Resources (IRR) | | | | | | |

 RICK SCOTT, GOVERNOR

JONATHAN ZACHEM, SECRETARY 

## STATE OF FLORIDA
## DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION

### FLORIDA REAL ESTATE APPRAISAL BD

THE CERTIFIED RESIDENTIAL APPRAISER HEREIN IS CERTIFIED UNDER THE
PROVISIONS OF CHAPTER 475, FLORIDA STATUTES

## FONG, CARLOS RAFAEL

10601 S.W. 124 ROAD.
MIAMI            FL 33186

LICENSE NUMBER: RD6782

EXPIRATION DATE: NOVEMBER 30, 2020

Always verify licenses online at MyFloridaLicense.com



Do not alter this document in any form.

This is your license. It is unlawful for anyone other than the licensee to use this document.

# Anthony M. Graziano, MAI, CRE

**Integra Realty Resources**
**Miami/Palm Beach**

Dadeland Centre
9155 S. Dadeland Boulevard
Suite 1208
Miami, FL 33156

T 305.670.0001
F 305.670.2276

irr.com

## Experience

Senior Managing Director of Integra Realty Resources – Miami/Palm Beach.

Mr. Graziano has actively counseled and advised clients on the sale, leasing, valuation, management, and development of commercial real estate assets throughout the northeast and southeast U.S. since 1992.

Mr. Graziano's professional perspective is a blend of his experience and educational background which includes formal training in architecture, urban planning, macro and micro economics, real estate finance, institutional asset management, and land development. His market experience in sales, leasing, management, and valuation disciplines combine to bring practical real world answers to complex planning and development projects. He has been actively involved as a consultant and/or member of a consultant team on various major redevelopment and land use projects for public and private clients over the past 25+ years.

Mr. Graziano has specialized in consulting and valuation assignments for corporate and private clients on a wide array of complex issues related to estate and condemnation matters, title defects, environmental contamination/damages, air rights, partial and fractional interests, contract disputes, and mediation/arbitration disputes. Mr. Graziano's experience in these matters provides a comprehensive framework for effective strategic real estate consulting.

## Professional Activities & Affiliations

Advisory Board Member: Urban Land Institute (ULI) South Florida / Caribbean
Advisory Board Member: University of Miami M+RED Program
Member: Economic Roundtable - Miami Beacon Council (2012-present)
Board of Director: Integra Realty Resources, Inc. (2011-2016)
Chairman of the Board:    Integra Realty Resources, Inc. (2016-present)
Director: South Florida Chapter of the Appraisal Institute (2014-2016)
Board Member: Builders Association of South Florida (BASF) (2014-2016)
Subject Matter Expert (SME): Appraisal Practice Board, Appraisal Foundation
Member: Appraisal Institute (MAI) (2008-Present)
Member: Counselors of Real Estate (CRE) (2007-Present)
National Association of Realtors (REALTOR)
Miami Association of REALTORS Industry Analyst of the Year (2016)
Former Fellow: Royal Institute of Chartered Surveyors (FRICS) (2007-2014)
AI Leadership Development Advisory Council, March 1998 - February 2001
Lifetime Member: National Eagle Scout Association (NESA)

## Licenses

Florida, State-Certified General Real Estate Appraiser, RZ3510
New Jersey, State-Certified General Real Estate Appraiser, RG001261

## Education

University of Miami, Coral Gables, Florida 1988-1992
Degree: Bachelor of Science in Land Development and Planning, School of Architecture

New York University Real Estate Institute, New York, New York 1993-1996
Degree: Master of Science in Real Estate Development and Investment



amgraziano@irr.com    -    305.670.0001 x320

# Anthony M. Graziano, MAI, CRE

### Qualified Before Courts & Administrative Bodies

Qualified and accepted as an expert before:
US Bankruptcy Court (Newark, Southern District of Texas, Southern District of Florida)
US Federal District Court (Southern District of Florida)
FL Circuit Court (Miami-Dade, Broward, and Monroe Counties)
NJ State Tax Court
NJ Superior Court - Chancery Division
NJ Superior Court - Law Division
Various municipal planning and zoning boards throughout New Jersey and Florida
Various Taxing Authorities and Boards throughout New Jersey and Florida

**Integra Realty Resources**
**Miami/Palm Beach**

The Douglas Centre
2600 Douglas Road, Suite 801
Coral Gables, FL 33134

T 305.670.0001
F 305.670.2276

irr.com



amgraziano@irr.com    -    305.670.0001 x320



**Anthony M. Graziano, MAI, CRE, FRICS**

PROFERRED OR DISCLOSED EXPERT WITNESS REPORTS/SETTLEMENTS

| RETENTION DATE | ON BEHALF | IRR FILE # | COURT CASE NO. | COURT / VENUE | CASE NAME | RETAINED BY | TYPE OF CASE |
|---|---|---|---|---|---|---|---|
| 1/2/2015 | Defendant | 123-2015-0037 | 14-CV-22384 UU | Miami-Dade County, FL | Ray Benson & Maria Helena V. QBE Insurance Corporation | John A. Camp | Retrospective (2004-2006) analysis of market value claims against insurance company related to property |
| 9/2/2014 | Defendant | 123-2014-0194 | 13-03084CA 10 | 11th Judicial Circuit Miami-Dade, FL | Manuel Soltero V. Adorno & Yoss, LLP | Kaplan Zeena, LLP | Professional Liability suit against law firm and attorneys for malfeasance in litigation matter. |
| 2/2/2014 | Plaintiff | 123-2014-0030 | Settled | Caribbean Islands | Rainmaker Development V. A&F Bahamas, etal | VLASAC & SHMARUK, LLC | Partnership Dispute between Joint Venture in Carribean development project (golf course, villas, and large-scale marina-commercial development) |
| 11/2012 | Defendant | 123-2012-0140 | 42-2012-CA-001065 | Marion County, FL | CSX Transportation, Inc. V. Moshen Saranzzi, Faith Ann Safaruzzi, Proverbium Hidg, LLC, USA & George Albright | NeJame, La Fay, Jancha, Ahmed, Barker, Joshi & Moreno, P.A. | Condemnation of partial interest with damages |
| 7/2012 | Confidential | 123-2012-0076 | Confidential | Broward County, FL | Ft. Lauderdale-Hollywood Int'l Airport Expansion | White & Case, LLP | Value Diminution Study to assist public agency in good faith negotiations based on airport expansion. |
| 6/2012 | Defendant | 123-2012-0070 | 10-49616-CA-40 | Miami-Dade County, FL | CB Entertainment, LLC V. South Beach Ocean Parcel | Kubicki Draper, P.A. | Construction Damages claim |
| 12/2009 | Plaintiff | 109-2009-0443 | Dept. Justice File 90-11-3-5801 | Federal District Court of Virginia | United States vs. Atlantic Wood Industries, Inc. | U.S. Department of Justice | Damages/environmental contamination dispute between United States Navy and responsible party (Atlantic Wood Industries) |

**Anthony M. Graziano, MAI, CRE, FRICS**
IDENTIFIED EXPERT WITNESS TESTIMONY AT DEPOSITION and/or TRIAL

| RETENTION DATE | ON BEHALF | TRI FILE # | COURT/CASE NO. # | CASE NAME | COURT / VENUE | RETAINED BY | TYPE OF CASE |
|---|---|---|---|---|---|---|---|
| 6/2015 | Plaintiff | 123-2015-0170 | 15-008930-CA-01 | Aaron Stauber & Aviva Stauber V. BH 33, LLC | 11th Judicial Circuit Dade County, Florida (Hon. Peter R. Lopez) | Piedra & Associates, P.A. | Motion to dismiss Lis Pendens in an action to enforce contractual specific performance clause |
| 1/2015 | Defendant | 123-2015-0037 | 14-CV-22384 UU | Ray Benson & Maria Helena Campos V. QBE Insurance Corporation | Southern District of Florida | John Camps | Retrospective (2004-2006) analysis of market value claims against insurance company related to property damage claims arising from Hurricane Wilma |
| 1/2014 | Plaintiff | 123-2015-0031 | Pending | Igor Geri V. Yacht Club at Portofino Condo Association | Miami-Dade County | Weil Quaranta McGovern, P.A. | Construction defect dispute related to water-intrusion and damage-detrimental conditions analysis of |
| 10/2014 | Plaintiff | 123-2014-0226 | 08-CA-408-P | Ocean Bank V. Lindsack, Monroe County | Monroe County | Ocean Bank | Deficiency claim against borrower on real estate collateral in the Florida Keys (development site plus marine related improvements) |
| 10/2014 | Defendant | 123-2014-0215 | 11-24994 CA 04 | Palm-Aire Holdings V. JRGS Investments, LLC, Jorge Garcia-Saratf and Course Drive Investments, LLC | 11th Judicial Circuit Dade County, Florida | Cole, Scott & Kissane, P.A. | Partnership dispute over valuation issues proximal to a fractured condominium project (retrospective values), and operating agreement dispute |
| 7/2014 | Plaintiff | 123-2014-0194 | 13-01822 CACE 02 | Amalia I. Irlanda-Rivera V. Rivera Diagnostic Center, Inc., Oknay Rivera & Yudit Rivero | 13th Judicial Circuit Broward County, Florida | Amalia I. Irlanda-Rivera | Rent default judgment and market rental and damage analysis associated with lease default. |
| 10/2014 | Defendant | 123-2014-0159 | 2014FLS34 (Pending) | Roehm Title Resources Claim | Palm Beach County | Title Resources Guaranty Company | Title insurance claim related to before and after damage/value diminution analysis based on defined title defects not identified by Title Insurance Company |
| 4/2014 | Plaintiff | 123-2014-0117 | 4:14-CV-01077 (Pending) | USA V. GSA-VA St. Louis Property, LLC | USA District Court for the Eastern District of Missouri Eastern Division | Bryan Cave LLP | Condemnation of a possessory interest for a term. Retained as consulting/rebuttal expert |
| 5/2014 | Defendant | 123-2014-0114 | Pending | Euforia Club | Miami-Dade County | Rennert Bogart Mandler & Rodriguez, P.A. | Rent dispute regarding forced relocation of a nightclub, and relevant market rental rate of replacement club space in Miami |
| 4/2014 | Plaintiff | 123-2014-0089 | | Pan American Holdings Corp. V Florida DOT Right of Way (ROW) Acquisition S.R.7 | Broward County | Henry Wulf, Esq. | Condemnation for R.O.W. purposes including before and after damage analysis |
| 1/2014 | Debtor | 123-2014-005 | 13-25728-BKC-RAM | West Airport Plaza Business Park, LLC | US Federal Bankruptcy - Southern District of Florida - Miami Division (Hon. R. Mark) | Counsel for the Debtor, Michael D. Seese, Esq. | Fairness Opinion and market value opinions in conjunction with Debtor's Plan for Reorganization |
| 8/2013 | Defendant | 123-2009-016 | 02-23922-CA 09 | American Educational Enterprises LLC v. The Board of Trustees of the Internal Improvement Trust Fund | 11th Judicial Circuit Dade County, Florida | Richard Alayon, Esq. - Alayon and Associates | Economic Damages case associated with an alleged misrepresentation or omission by seller of real property |
| 7/2013 | Plaintiff | 123-2013-0126 | CACE 08657624 (14) | Bayview Loan Servicing, LLC v. Kayhan Soodjani; Muhammad Mahmoodi; et al | 17th Judicial Circuit Broward County, Florida (Hon. Carlos A. Rodriguez) | Bayview Servicing, represented by Tabais, Freedman and Soloff; Stacey Soloff, Esq. | Deficiency judgment on multi-family project (Dewey Street Apartments) |
| 3/2013 | Defendant | 123-2013-0105 | 11-23561 CIV - Rosenbaum | United States of America v. G.K.K. etal | US District Court - Southern District of Florida (Hon. Rosenbaum) | Richard Duvall, Holland and Knight and Jeffrey Neiman, Esq. | Condemnation claim on the 137,779 s.f. Miami Federal Bureau of Investigation (F.B.I.) building; condemnation of a possessory interest (leasehold) |
| 2/2013 | Defendant | 123-2011-0670 | 09-05650 CA 04 | Zenaida Gomez v. City of Pinecrest | 11th Judicial Circuit Dade County, Florida (Hon. Beth Bloom) | Cynthia A. Everett, Cynthia A. Everett, P.A. | Economic damage resulting from temporary taking (seizure) of private residence |
| 7/2013 | Defendant | 123-2013-0016 | 12-60950-CIV | Q Lending, Inc., Equity Financial Group, Inc., and Equity Commercial Group, Inc. v. Travelers Companies, Inc. etal | US Federal Court - Southern District of Florida | Heidi Raschke, Butler Pappas etal | Value diminution resulting from alleged mortgage fraud. |
| 1/2012 | Plaintiff | 123-2012-0128 | Pending | 2011 and 2012 Ad Valorem Tax Protest | 11th Judicial Circuit Dade County, Florida | Ken Wurtenberger, Esq., Kramer, Koeblle, Oshlow Ferguson | Tax protest of commercial condominium. |
| 10/19/2012 | Plaintiff | 123-2012-0111 | 2011-1107 CA-23 | Renegade at Hialeah Blvd v. Dynatech Engineering | 11th Judicial Circuit Dade County, Florida (Hon. Stanford Blake) | Daniel Levin, Esq., Cole, Scott, Kissane, P.A. | Economic Damages case, diminution in value resulting from ground lease modification. |
| 10/12/2012 | Plaintiff | 123-2012-0109 | 11-30189 CA21 | Yaffa Yakubov vs. Bayview at Fisher Island No 3 | 11th Judicial Circuit Dade County, Florida | Craig Minko, Esq., Cole Scott Kissane, P.A. | Market Value estimate of Fisher Island Condominium purchased under right of first refusal; economic damages claimed by Plaintiff due to contract dispute arising from association's exercise of right of first refusal |
| 8/20/2012 | Plaintiff | 123-2010-0012 | CA-02180 CA-25 | 7935 NBV, LLC v. Harbour East Development LTD, Mario Egozi, etal | 11th Judicial Circuit Dade County, Florida | Jose Casal, Esq., Holland and Knight | Deficiency judgment on 32-unit fractured condominium, substitute expert following issuance of IRR-Miami reports in 2010 and 2012. |
| 8/15/2012 | Disclosed Dual Expert | 123-2012-0072 | | Vazquez v. Vazquez Matrimonial Matter | Matrimonial Mediation | Colon and Mendoza and Robert Hertzberg, P.A. | Retained as a court-appointed third party expert to both parties to appraise (2) marital assets comprised of office, retail, single and multi-family units in FL, TN, NC, and Illinois, Bahamas |
| 7/2012 | Plaintiff | 109-2011-0190 | Pending; 2003-2014 | BASF Inc., successor Ciba Geigy Inc., vs. Township of Toms River | Tax Court of New Jersey (Hon. Patrick DeMimenda) | Phil Genuario, Garippa, etal on behalf of BASF | Challenge to multi-year appeal of $60 Million+ land assessment on contaminated superfund site in Central New Jersey |
| 3/2012 | Plaintiff | 109-2010-0172 | ATL-L-4451-08 | Scot Netherlands Inc. vs. State of New Jersey Department of Environmental Protection (NJDEP) | Superior Court of New Jersey, Law Division Atlantic County | Jay Rhatican, Connell Foley on behalf of Scot Netherlands, Inc. | Challenge to NJDEP permit denial to wetlands, deprivation of all reasonable investment backed expectations |
| 7/2011 | Defendant | 109-2010-0199 | MER-L-3034-08 | 460 Mercer Street, LLP and Bruckener Southern, LLC v. Hightstown | Superior Court of New Jersey Mercer County | Aneil Zaro Grimm & Aaron, P.C. Husam Chater | Litigation-Dispute Resolution - Hightown Zoning Challenge |
| 12/2009 | Plaintiff | 109-2009-0443 | Dept.-Justice File 90-11-3-5801 | United States v.s. Atlantic Wood Industries, Inc. | Federal District Court of Virginia | U.S. Department of Justice | Damage/environmental contamination dispute between United States Navy and responsible party (Atlantic Wood Industries) |
| 12/2009 | Plaintiff | 109-2009-0377 | | Wextrust/HPC Mortgage Fund v.s. City of Atlantic City | Tax Court of New Jersey | Cole, Schotz, Meisel, Forman & Leonard, P.A. Carl Rizzo, Esq. | Tax Appeals - To develop an opinion of the market value of the fee simple interest in the property |

**Anthony M. Graziano, MAI, CRE, FRICS**
IDENTIFIED EXPERT WITNESS TESTIMONY AT DEPOSITION and/or TRIAL

M. Qualis: Graziano: Trial Lists

| RETENTION DATE | ON BEHALF | IRR FILE # | COURT CASE NO | CASE NAME | COURT / VENUE | RETAINED BY | TYPE OF CASE |
|---|---|---|---|---|---|---|---|
| 1/2009 | Secured Creditor | 109-2009-0439 | | Erickson Building | US Bankruptcy Court - Southern District of Texas | Stuart Glick, Esq., Sills, Cummis & Gross | Market Value for Bankruptcy of 140,000 SF corporate campus in Bethesda, Maryland |
| 9/0/2009 | Plaintiff | 109-2009-0123 | 3035-001 | Bay Head Yacht Club vs. Ocean County Tax Board | Tax Court of New Jersey | John Doyle, Carluccio, Leone, Dimon, Doyle & Sacks, LLC | Tax Appeal for Bay Head Yacht Club |
| 12/2008 | Plaintiff | 109-2008-XXX | INA (DEPS Pending) | Mirage Atlantic City (MAC) vs. City of Atlantic City | Tax Court of New Jersey | Hank Rovitarri, Esq. | Tax Appeal at State Tax Court on 15 acre casino site adjacent to Trump Marina |
| 8/2008 | Defendant | 109-2008-0252 | L-2424-05 | The City of South Amboy vs. Lower Main Street Development, LLC & Amboy Aggregates Joint Venture | Superior Court of New Jersey Law Division, Middlesex County | Bathgate, Wegener, etal | Verified complaint in condemnation |
| 6/2008 | Defendant | 109-2008-345 | C.A. No. OCNL-3361-06 | Osbourne Associates, Melbourne Associates VI, LLC, Kingsway Realty Profit Share vs. Citta Enterprises Co., JAC Property Management etal and Eckert Corporation | Superior Court of New Jersey, Law Division Ocean County | Francis X. Manning, Esq., Stradley Ronon Stevens & Young & Michael Canitoli, Esq. Partridge Snow and Hahn, both on behalf of | Dispute re: proper valuation of leasehold and sub-lessee's sandwich leasehold interest on damage claim for breach of agreement claim |
| 1/2008 | Defendant | 109-2008-0125- | N/A | Toms River Township vs. Ciba Geigy Corporation | American Arbitration Association [testimony at Arbitration conducted by Hon. Eugene Serpentelli] | Mark Troncone, Esq., In-house Counsel to Township of Toms River | Arbitration of environmental damages claim, and counter-claim of appropriateness of zoning on 1,900 acre superfund site. |
| 11/2007 | Defendant | 109-2007-211 | L-0008-35-06 | Kyle Mosteller vs. Galia Neeman | Superior Court of New Jersey, Law Division Middlesex County | Frank Canuso, Esq. Hoogland, Longo, Moran and Dunst | Damage claim due to loss of trees and screening between urban properties |
| 6/2007 | Plaintiff | 109-2007-0134 | 3:07-CV-2322 | Silver Lakes Inc. vs. Township of Freehold Inc. | Superior Court of New Jersey, Chancery Division Monmouth County | Christopher Hanlon, Esq. Hanlon and Niemann | Challenge to validity of Rent Control Ordinance as transferred between property rights from Lessor to Lessee |
| 6/2007 | Plaintiff | 109-2007-0173 | | Laurelwood Homes, LLC vs. United States Department of Navy | Federal District Court of Virginia | William A. Shook Esq. | Leasehold interest in the property, breach of lease claim on behalf of leasehold owner (Laurelwood) claiming breach of lease and damages |
| 12/2006 | Defendant | 109-2006-0192 | CAM - L - 9731-05 | Brandywine Operating Partnership, LP vs. UFCW Local 56 | Superior Court of New Jersey, Chancery Division, Camden County | Brett Last, Esq. O'Brien, Belland and Bushinsky | Estimate the value of damages to landlord on breach of above-market lease |
| 8/2006 | Defendant | 109-2006-0257 | | County Line & Browers Bridge, Jackson Township | Superior Court of New Jersey, Law Division Ocean County | Levin, Shea, Pfeffer, PA Steven Pfeffer | To develop an opinion of the hypothetical market value of the fee simple interest in the property |
| 2/2006 | Defendant | 109-2006-0044 | OCN-L-2482-04 | Carl Brooks vs. K. Hovarian | Ocean Superior Court, Ocean County Courthouse | Ronan, Tuzzio & Giannone   Linda Olsen | To estimate value diminution in the subject property as a result of various issues asserted by the property owner in conjunction with pending litigation between the property owner and the subject developer K. Hovnanian @ Sea Oaks |
| 10/2005 | Defendant | 109-2005-0315 | OCN-L-1810-5 | Atlantic Electric Company d.b.a Conectiv Power Delivery, a regulated public utility of the state of New Jersey vs. AC1 Manahawkin, LLC family and/or Armstrong | Superior Court of New Jersey, Chancery Division Ocean County | Flaster/Greenberg, PC,   David R. Oberlander, Esq. | Compensation for the taking of an easement for construction and maintenance of a 230kv transmission line and towers by Atlantic City Electric |
| 6/2005 | Defendant | 109-2005-0214 | MON-L-2609-05 | Township of Howell vs. George Harms Construction Co., Inc. etal | Superior Court of New Jersey Law Division Monmouth County | Connell & Foley LLP Kevin Coakley, Esq. | To develop an opinion of the market value of the fee simple estate of the property |
| 8/2003 | Defendant | 109-2003-0282 | | Giuffre vs. Giuffre | Superior Court of New Jersey Chancery Division, Family Part, Monmouth County | Louis & Wolf - Frank A. Louis | To develop an opinion of the market value of the Fee Simple estate of two properties for purposes of equitable distribution of marital assets |
| 7/2003 | Defendant | 109-2003-0203 | OCN-C-78-03 | West, etal vs. Pompaino, etal | Superior Court of New Jersey, Chancery Division, Ocean County | Stephen E. Smith, Esq. | To develop an opinion of the diminution in value due to a loss of useable land area |
| 6/2003 | Plaintiff | 109-2003-0101 | OCN-C-316-02 | Eugene M. Lord vs. Donald W. Rinaldo | Superior Court of New Jersey Law Division, Ocean County | Lombardi & Lombardi Scott Telson | To develop an opinion of the market value of the fee simple estate of the property |
| 4/2003 | Defendant | 109-2003-0128 | FM-15-468-03-C | Vincent Urbank vs. Lisa Urbank | Superior Court of New Jersey, Chancery Division, Family Part Ocean County | Marianna Pontoriero, Esq. | Litigation-Matrimonal |
| 2/2002 | Plaintiff | 109-2002-0055 | | Shenandoah Mobile Home Park | | Winicki Marx Lane & Mittendorf, LLP - William Cagney | Inverse Condemnation - Rent Control Ordinance |
| 4/2001 | Claimant | 109-2001-0189 | NJ-2624-00 | DeForest John Ely and Kimberle A. Ely, hw | Superior Court of New Jersey, Chancery Division Middlesex County | First American Title Insurance Co. Jack Milkis | To derive an opinion of the fair compensation of the fee simple estate, subject to the temporary title encumbrance |
| 3/1999 | Secured Creditors | 109-1999-0062 | | Georgetown Apartments | US Bankruptcy Court - District of Newark | Emmes & Co. Andrew Schwarz | To estimate the market value of the Leased Fee Estate of the property, inclusive of 28 Apartment complexes through NY, NJ, PA, and MD. |
| 12/1997 | Defendant | LKW-257-3186 | FM-15-1465-94 | Lisa Franklin, etal vs. Donald Franklin, etal | Superior Court of New Jersey, Chancery Division, Family Part, Ocean County | Greenbaum, Rowe, Smith, Ravin, Davis & Himmel LLP   Robert S. Underhill | Estimating the market value of the leased fee interest |
| 8/1984 | Creditor | HUD-XX | | Hudson Marina Association vs. Emmes & Co. | US Bankruptcy Court - District of Newark | | Bankruptcy Reorganization of 200+ slip failed marina/dockominium complex |

