# EXHIBIT 35 part 8

# EXHIBIT F19

**Integra Realty Resources**
Miami/Palm Beach

**Appraisal Report & Post-Remediation Damage Related to Chinese Drywall**

**Lalwani, Gul & Deborah**
Hypothetical Market Value "As If" Remediated
4590 Kodiak
Vero Beach, Indian River County, Florida 32967
Client Reference: 18

**Prepared For:**
Colson Hicks Eidson

**Effective Date of the Appraisal:**
March 11, 2011

**Report Format:**
Appraisal Report

**IRR - Miami/Palm Beach**
File Number: 123-2018-0275





**Lalwani, Gul & Deborah**
4590 Kodiak
Vero Beach, Florida

**Integra Realty Resources**
Miami
Orlando
Southwest Florida

www.irr.com

In Miami
Dadeland Centre
9155 South Dadeland Blvd.
Suite 1208
Miami, FL 33156
(305) 670-0001

In Orlando
The Magnolia Building
326 N. Magnolia Ave.

Orlando, FL 32801
(407) 843-3377

In Naples/Sarasota
Horseshoe Professional Park
2770 Horseshoe Drive S.
Suite 3
Naples, FL 34104
(239)-643-6888



January 24, 2019

Patrick S. Montoya
Partner
Colson Hicks Eidson
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134

SUBJECT:     Hypothetical Market Value "As If" Remediated
             Case No 11-22408-Civ-COOKE
             United States District Court Southern District of Florida in the matter of
             Eduardo and Carmen Amorin, et al. individually and on behalf of others situated
             similarly v. Taishan Gypsum Co., LTD., f/k/a Shandong Taiche Dongxin Co. Ltd., et al
             Priority Claimant Case at:
             Lalwani, Gul & Deborah
             4590 Kodiak
             Vero Beach, Indian River County, Florida 32967
             Client Reference: 18
             IRR - Miami/Palm Beach File No. 123-2018-0275

Dear Mr. Montoya:

Integra Realty Resources – Miami/Palm Beach submits the following damage estimate in the referenced property as of the effective date assuming all remediation was completed by an appropriate contractor with experience and credentials in remediating defective drywall.

The report is intended to comply the Uniform Standards of Professional Appraisal Practice (USPAP). It presents summary discussions of the data, reasoning, and analysis that were used in the appraisal process to develop the opinions. Additional information is contained within our workfile.

The findings will form the basis of expert witness testimony in the above referenced case.

Case 2:09-md-02047-EEF-MBN Document 22380-62 Filed 12/02/19 Page 6 of 130
Case 1:11-cv-22408-MGC Document 201-19 Entered on FLSD Docket 05/13/2019 Page 5 of 43

Identification of Subject                                                                    2

## Identification of Subject

The subject of this report is a single-family ranch style home configured with 4 bedroom and 3 baths with 3,552 SF under air-conditioning. The subject property was built in 2006 and is located on a 36,785 SF site.

## Purpose of the Appraisal

The purpose of the appraisal is to develop an opinion of the diminution in value and related damages, collectively "the damages" as of the effective date of the appraisal, March 11, 2011. The damage estimate assumes the defective drywall remediation was completed and does not consider the cost to cure. The date of the report is January 24, 2019. The appraisal is valid only as of the stated effective date or dates.

## Intended Use and User

The intended use of the appraisal is for litigation purposes. The client, Colson Hicks Eidson and related co-counsel, Plaintiff and the Court are the intended users. Integra Realty Resources – Miami/Palm Beach is not responsible for unauthorized use of this report.

## Most Recent Sale History

The most recent closed sale of the subject is summarized as follows:

| Most Recent Subject Sale (Closed) | |
| --- | --- |
| Sale Date (Most Recent) | December 1, 2004 |
| Seller | Black Bear Development Group |
| Buyer | Lalwani, Gul & Deborah |
| Sale Price | $115,000 |
| Recording Instrument Number | 1816-400 |
| Disposition Details | Sale of vacant land |

To the best of our knowledge, no other sale or transfer of ownership has taken place within a three-year period prior to the effective appraisal date.

The property was listed for sale and sold un-remediated on March 18, 2011 for $174,000.

## Pending Transactions

To the best of our knowledge, the property is not subject to an agreement of sale or an option to buy, nor is it listed for sale, as of the effective appraisal date.

## Definition of Market Value

The following definition of market value is used by agencies that regulate federally insured financial institutions in the United States:

"The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and



Case 2:09-md-02047-EEF-MBN Document 22380-62 Filed 12/02/19 Page 7 of 130
Case 1:11-cv-22408-MGC Document 201-19 Entered on FLSD Docket 05/13/2019 Page 6 of 43

Definition of Retrospective Value Opinion                                                    3

assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:

- Buyer and seller are typically motivated;

- Both parties are well informed or well advised, and acting in what they consider their own best interests;

- A reasonable time is allowed for exposure in the open market;

- Payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and

- The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale."

*(12 C.F.R. Part 34.42(g); 55 Federal Register 54696, August 24, 1990, as amended at 57 Federal Register 12202, April 9, 1992, 59 Federal Register 29499, June 7, 1994)*

## Definition of Retrospective Value Opinion

A value opinion effective as of a specified historical date. The term retrospective does not define a type of value. Instead, it identifies a value opinion as being effective at some specific prior date. Value as of a historical date is frequently sought in connection with property tax appeals, damage models, lease renegotiation, deficiency judgements, estate tax, and condemnation. Inclusion of the type of value with this term is appropriate, e.g. "retrospective market value opinion".

(*Source: The Dictionary of Real Estate Appraisal – 6th Edition; Appraisal Institute, 200 W. Madison, Suite 1500, Chicago, IL 60606, www.appraisalinstitute.org*)

## Definition of Hypothetical Condition

1. A condition that is presumed to be true when it is known to be false. (SVP)

2. A condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis. Comment: Hypothetical conditions are contrary to known facts about physical, legal, or economic characteristics of the subject property; or about conditions external to the property, such as market conditions or trends; or about the integrity of date used in an analysis. (USPAP, 2016-2017 ed.)

(*Source: The Dictionary of Real Estate Appraisal – 6th Edition; Appraisal Institute, 200 W. Madison, Suite 1500, Chicago, IL 60606, www.appraisalinstitute.org*)

## Scope of Work

Integra was retained as an expert in the captioned matter of this report to address potential damages related to the subject property, specifically excluding the costs to cure.

Integra was retained to estimate any post remediation damages, and conducted a separate study to determine whether damages persist following defective drywall remediation. The result of that study



are outlined within Integra's report entitled "Market Analysis of the Post Remediation Impact of Chinese Drywall on Residential Property Values in Florida." The results of that study are incorporated by reference herein.

In addition, our damage model was requested to include a rental value analysis of the Priority Claimant residence, and a determination of the relevant economic damage associated with having to vacate the home for a period of time (and secure alternate living arrangements) during the remediation. As of the effective date, the claimant would have suffered the damages.

Integra established individual case files on each Priority Claimant residence, and retained professional assistance from qualified residential appraisers in each jurisdiction. Integra managed the process of these retrospective appraisals, interfaced with the residential appraisers, and reviewed the form appraisals completed on each assignment including review of the comparables, adjustments, and form narrative to establish the market value of the residence unimpaired as of the effective date.

Integra professionals reviewed various materials exchanged as part of this case and considered materials that were relevant to the market valuation. These materials were downloaded from the attorney's dropbox and are retained within our workfile.

Integra's participation in and review of the final appraised values results in a conclusion of the market value of the home defined as "Hypothetical Market Value" assuming defective drywall had never been identified within the subject property. This forms the basis of the unimpaired market value as of the effective date.

All properties and comparables were inspected by the local residential appraisers without the benefit of interior inspections. Adjustments for condition and age at the time of sale are based upon photographs contained within the various MLS databases, paired analysis from amongst the comparables, and for the subject, were based on photos, if available. In the event a property had not been remediated as of the effective date, we assume average condition for the property in the market as of the effective date.

The damage analysis expressed within this report follows the peer teachings and market accepted processes for damage analysis. However, the damage analysis only represents a <u>portion of the overall damages</u> because we were specifically requested to exclude the consideration of the costs to cure. This represents a relevant component of damage in this case for property that factually have not been remediated.

Integra's role was strictly to identify post remediation value damage (sometime referred to a "stigma") and estimate the relevant rental value and moving costs as a proxy for the temporary loss of use during remediation.

## Significant Appraisal Assistance

In addition to Anthony M. Graziano, MAI ,CRE, principal, it is acknowledged that Peter G. Kayworth, Yuliya Georgieva, Joseph Melloni and Paul L. Jones of IRR-Miami/Palm Beach were involved in the assignment consisting of conducting research on the subject and transactions involving comparable



properties, performing appraisal analyses and assisting in report writing, under the supervision of the persons signing the report. The local residential appraisers are also named as providing significant assistance, including exterior inspection of the properties and comparables, application of their local knowledge in adjusting and estimating the unimpaired value, and developing the form report valuations incorporated herein.

## Prior Services

USPAP requires appraisers to disclose to the client any other services they have provided in connection with the subject property in the prior three years, including valuation, consulting, property management, brokerage, or any other services. We have not performed any services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

## Valuation Methodology

Appraisers usually consider the use of three approaches to value when developing a market value opinion for real property. These are the cost approach, sales comparison approach, and income capitalization approach. The valuations consider the only relevant approach for residential valuation, the sales comparison analysis. The cost and income approach are not considered relevant.

The sales comparison approach is the most applicable valuation method since there is an active market for similar properties, and sufficent sales data is available for analysis. Additionally, this approach directly considered the prices of alternative properties having similar utility.

### Highest and Best Use

The highest and best use of the subject as if vacant for development of a single-family home which is physically possible, legally permissible as per zoning, financially feasible and maximally productive.

The highest and best use of the subject as improved is for continued use as a single-family home with no other use that could reasonably be expected to provide a higher value to the land as if vacant. The improvements contribute to the over all value to a greater extent than the land value alone, and therefore, continued use as improved concluded to be maximally productive and the highest and best use of the property.

### Conclusion of Value

The Hypothetical market value appraisal as of the effective date, reflective of a traditional form appraisal, is contained within the Addenda of this report. This value us hypothetical since it assumes that defective drywall had never been present at the subject property.

Against this value, we then apply the Post Impairment Discount as a percentage of unimpaired value as developed within the Integra report studying this issue. This represents a compensable damage resulting from the prior existence of defective drywall in the home as of the effective date.

In addition, each appraisal (unimpaired) reflects a rental value analysis as of the effective date. This rental value analysis concludes to the equivalent market rent for the home (unimpaired) and reflects a

Lalwani, Gul & Deborah



Case 2:09-md-02047-EEF-MBN Document 22380-62 Filed 12/02/19 Page 10 of 130
Case 1:11-cv-22408-MGC Document 291-19 Entered on FLSD Docket 05/13/2019 Page 9 of 43

Conclusion of Value                                                                                           6

proxy for the probable actual costs the homeowner would experience by having to move-out of the primary residence during remediation.

The homeowner would also have to incur moving /storage costs twice, once before and once after remediation. Professional packing, moving and storage for an average home is estimated at $1,500 per move, or $3,000 in total. This amount is added to the loss of use estimate as an additional damage.

This loss of use calculation does not consider the costs of alternative housing or other tangible costs potentially incurred for damages suffered between the date of discovery and the date of value. These damages, if applicable, are being estimated by a separate expert (Elkins et al). To the extent Elkins posits costs which are duplicative or actual costs that are greater or less, some minor adjustments to Integra's damage model may be required.

The timeframe for remediation (months of actual loss) could vary depending upon the permitting process in the specific community, the availability of labor, and the size of the home. Integra reviewed a number of transactions that were remediated by investors and found the typical timeframe between purchase of an unremediated home and listing[1] of the home post-remediation to be 3-6 months.

Larger more expansive homes would be expected to take longer to remediate since more materials are required, and in higher-priced homes, supplies would typically be custom-ordered. Therefore, we apply the following timeframes based on the subject's size and price range:

< $150,000 Home up to 2,000+/- SF              4 months

$150,000 - $750,000 home up to 4,000 SF        6 months

$750,000+ home up over 4,000 SF                9 months

---

[1] The "listing date" is most relevant since a homeowner conducting their own remediation can move back in once the home is ready for sale (ie- coinciding with a final certificate of occupancy).

Lalwani, Gul & Deborah



The following shows our final estimate of damages as of the effective date, and assuming costs to cure (i.e. – to conduct the remediation) have been expended.

**Conclusions of Damage**

| | | | | |
|---|---|---|---|---|
| Hypothetical Value (Unimpaired - Before) | | | $300,000 | |
| Market Impairment Discount (As if Remediated) | | | 10% | |
| Post Impairment Damage ($) | | | $30,000 | |
| **Hypothetical Value As IF Remediated** | | | | **$270,000** |
| Post Remediation Damages as of Effective Date | | | | **$30,000** |
| Loss of Use: | | | | |
| Rental Rate ($/Month) | | **$2,600** | | |
| Moving & Storage Costs | | | $3,000 | |
| Loss of Use Subject (# Months) | 6x | | $15,600 | |
| Subject Total | | | | **$18,600** |
| **Post Remediation Damage** | | | | **$48,600** |

Note:  Does not consider "cost to cure". Assumes remediation was completed by qualified contractor who warranties the work.

The property was listed for sale, and the Claimant sold the property in an un-remediated condition in March 2011 for $174,000 (45%$ discount to Integra's appraised value). Cost to cure damages apply, these costs are prescribed by the Court's special master.

Lalwani, Gul & Deborah



Case 2:09-md-02047-EEF-MBN Document 22380-62 Filed 12/02/19 Page 12 of 130
Case 1:11-cv-22408-MGC Document 201-49 Entered on FLSD Docket 05/13/2015 Page 11 of 43

Certification 8

## Certification

We certify that, to the best of our knowledge and belief:

1. The statements of fact contained in this report are true and correct.

2. The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are our personal, impartial, and unbiased professional analyses, opinions, and conclusions.

3. We have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.

4. We have not performed any services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

5. We have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

6. Our engagement in this assignment was not contingent upon developing or reporting predetermined results.

7. Our compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

8. Our analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice as well as applicable state appraisal regulations.

9. The reported analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute.

10. The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

11. Anthony M. Graziano, MAI, CRE did not make a personal inspection of the property that is the subject of this report. Chad F. Stites has personally inspected the subject.

12. Significant real property appraisal assistance was provided by Peter G. Kayworth, Yuliya Georgieva, Joseph Melloni and Paul L. Jones. Additionally, real estate assistance was provided by various Valucentric employees and subcontractors, including: John Barcelo, Angela Barcelo, Fred Stites, Carlos Fong, Sarah D. Wilson and Rob Baird.

13. We have experience in appraising properties similar to the subject and are in compliance with the Competency Rule of USPAP.

14. As of the date of this report, Anthony M. Graziano, MAI, CRE, has completed the continuing education program for Designated Members of the Appraisal Institute.

Anthony M. Graziano, MAI, CRE
Senior Managing Director - Miami
State-Certified General RE Appraiser
FL Certificate # RZ#3510

## Assumptions and Limiting Conditions

This appraisal and any other work product related to this engagement are limited by the following standard assumptions, <u>except as otherwise noted in the report</u>:

1.  The title is marketable and free and clear of all liens, encumbrances, encroachments, easements and restrictions. The property is under responsible ownership and competent management and is available for its highest and best use.

2.  There are no existing judgments or pending or threatened litigation that could affect the value of the property.

3.  There are no hidden or undisclosed conditions of the land or of the improvements that would render the property more or less valuable. Furthermore, there is no asbestos in the property.

4.  The revenue stamps placed on any deed referenced herein to indicate the sale price are in correct relation to the actual dollar amount of the transaction.

5.  The property is in compliance with all applicable building, environmental, zoning, and other federal, state and local laws, regulations and codes.

6.  The information furnished by others is believed to be reliable, but no warranty is given for its accuracy.

This appraisal and any other work product related to this engagement are subject to the following limiting conditions, except as otherwise noted in the report:

1.  An appraisal is inherently subjective and represents our opinion as to the value of the property appraised.

2.  The conclusions stated in our appraisal apply only as of the effective date of the appraisal, and no representation is made as to the effect of subsequent events.

3.  No changes in any federal, state or local laws, regulations or codes (including, without limitation, the Internal Revenue Code) are anticipated.

4.  No environmental impact studies were either requested or made in conjunction with this appraisal, and we reserve the right to revise or rescind any of the value opinions based upon any subsequent environmental impact studies. If any environmental impact statement is required by law, the appraisal assumes that such statement will be favorable and will be approved by the appropriate regulatory bodies.

5.  Unless otherwise agreed to in writing, we are not required to give testimony, respond to any subpoena or attend any court, governmental or other hearing with reference to the property without compensation relative to such additional employment.

6.  We have made no survey of the property and assume no responsibility in connection with such matters. Any sketch or survey of the property included in this report is for illustrative purposes only and should not be considered to be scaled accurately for size. The appraisal covers the property as described in this report, and the areas and dimensions set forth are assumed to be correct.

Lalwani, Gul & Deborah



Case 2:09-md-02047-EEF-MBN Document 22380-62 Filed 12/02/19 Page 14 of 130
Case 1:11-cv-22408-MGC Document 201-49 Entered on FLSD Docket 05/13/2015 Page 13 of 43

Assumptions and Limiting Conditions                                                                    10

7.  No opinion is expressed as to the value of subsurface oil, gas or mineral rights, if any, and we have assumed that the property is not subject to surface entry for the exploration or removal of such materials, unless otherwise noted in our appraisal.

8.  We accept no responsibility for considerations requiring expertise in other fields. Such considerations include, but are not limited to, legal descriptions and other legal matters such as legal title, geologic considerations such as soils and seismic stability; and civil, mechanical, electrical, structural and other engineering and environmental matters. Such considerations may also include determinations of compliance with zoning and other federal, state, and local laws, regulations and codes.

9.  The distribution of the total valuation in the report between land and improvements applies only under the reported highest and best use of the property. The allocations of value for land and improvements must not be used in conjunction with any other appraisal and are invalid if so used. The appraisal report shall be considered only in its entirety. No part of the appraisal report shall be utilized separately or out of context.

10. Neither all nor any part of the contents of this report (especially any conclusions as to value, the identity of the appraisers, or any reference to the Appraisal Institute) shall be disseminated through advertising media, public relations media, news media or any other means of communication (including without limitation prospectuses, private offering memoranda and other offering material provided to prospective investors) without the prior written consent of the persons signing the report.

11. Information, estimates and opinions contained in the report and obtained from third-party sources are assumed to be reliable and have not been independently verified.

12. Any income and expense estimates contained in the appraisal report are used only for the purpose of estimating value and do not constitute predictions of future operating results.

13. If the property is subject to one or more leases, any estimate of residual value contained in the appraisal may be particularly affected by significant changes in the condition of the economy, of the real estate industry, or of the appraised property at the time these leases expire or otherwise terminate.

14. Unless otherwise stated in the report, no consideration has been given to personal property located on the premises or to the cost of moving or relocating such personal property; only the real property has been considered.

15. The current purchasing power of the dollar is the basis for the values stated in the appraisal; we have assumed that no extreme fluctuations in economic cycles will occur.

16. The values found herein are subject to these and to any other assumptions or conditions set forth in the body of this report but which may have been omitted from this list of Assumptions and Limiting Conditions.

17. The analyses contained in the report necessarily incorporate numerous estimates and assumptions regarding property performance, general and local business and economic conditions, the absence of material changes in the competitive environment and other matters. Some estimates or assumptions, however, inevitably will not materialize, and unanticipated events and circumstances may occur; therefore, actual results achieved during

Lalwani, Gul & Deborah



Case 2:09-md-02047-EEF-MBN Document 22380-62 Filed 12/02/19 Page 15 of 130
Case 1:11-cv-22408-MGC Document 201-49 Entered on FLSD Docket 05/13/2015 Page 14 of 43

Assumptions and Limiting Conditions          11

the period covered by our analysis will vary from our estimates, and the variations may be material.

18. The Americans with Disabilities Act (ADA) became effective January 26, 1992. We have not made a specific survey or analysis of the property to determine whether the physical aspects of the improvements meet the ADA accessibility guidelines. We claim no expertise in ADA issues, and render no opinion regarding compliance of the subject with ADA regulations. Inasmuch as compliance matches each owner's financial ability with the cost to cure the non-conforming physical characteristics of a property, a specific study of both the owner's financial ability and the cost to cure any deficiencies would be needed for the Department of Justice to determine compliance.

19. The appraisal report is prepared for the exclusive benefit of the Client, its subsidiaries and/or affiliates. It may not be used or relied upon by any other party. All parties who use or rely upon any information in the report without our written consent do so at their own risk.

20. No studies have been provided to us indicating the presence or absence of hazardous materials on the subject property or in the improvements, and our valuation is predicated upon the assumption that the subject property is free and clear of any environment hazards including, without limitation, hazardous wastes, toxic substances and mold. No representations or warranties are made regarding the environmental condition of the subject property. Integra Realty Resources – Miami/Palm Beach, Integra Realty Resources, Inc., Integra Strategic Ventures, Inc. and/or any of their respective officers, owners, managers, directors, agents, subcontractors or employees (the "Integra Parties"), shall not be responsible for any such environmental conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because we are not experts in the field of environmental conditions, the appraisal report cannot be considered as an environmental assessment of the subject property.

21. The persons signing the report may have reviewed available flood maps and may have noted in the appraisal report whether the subject property is located in an identified Special Flood Hazard Area. We are not qualified to detect such areas and therefore do not guarantee such determinations. The presence of flood plain areas and/or wetlands may affect the value of the property, and the value conclusion is predicated on the assumption that wetlands are non-existent or minimal.

22. Integra Realty Resources – Miami/Palm Beach is not a building or environmental inspector. Integra Miami/Palm Beach does not guarantee that the subject property is free of defects or environmental problems. Mold may be present in the subject property and a professional inspection is recommended.

23. The appraisal report and value conclusions for an appraisal assume the satisfactory completion of construction, repairs or alterations in a workmanlike manner.

24. It is expressly acknowledged that in any action which may be brought against any of the Integra Parties, arising out of, relating to, or in any way pertaining to this engagement, the appraisal reports, and/or any other related work product, the Integra Parties shall not be responsible or liable for any incidental or consequential damages or losses, unless the appraisal was fraudulent or prepared with intentional misconduct. It is further acknowledged



Case 2:09-md-02047-EEF-MBN Document 22380-62 Filed 12/02/19 Page 16 of 130
Case 1:11-cv-22408-MGC Document 201-49 Entered on FLSD Docket 05/13/2015 Page 15 of 43

Assumptions and Limiting Conditions                                                                                    12

that the collective liability of the Integra Parties in any such action shall not exceed the fees paid for the preparation of the appraisal report unless the appraisal was fraudulent or prepared with intentional misconduct. Finally, it is acknowledged that the fees charged herein are in reliance upon the foregoing limitations of liability.

25.    Integra Realty Resources – Miami/Palm Beach, an independently owned and operated company, has prepared the appraisal for the specific intended use stated elsewhere in the report. The use of the appraisal report by anyone other than the Client is prohibited except as otherwise provided. Accordingly, the appraisal report is addressed to and shall be solely for the Client's use and benefit unless we provide our prior written consent. We expressly reserve the unrestricted right to withhold our consent to your disclosure of the appraisal report or any other work product related to the engagement (or any part thereof including, without limitation, conclusions of value and our identity), to any third parties. Stated again for clarification, unless our prior written consent is obtained, no third party may rely on the appraisal report (even if their reliance was foreseeable).

26.    The conclusions of this report are estimates based on known current trends and reasonably foreseeable future occurrences. These estimates are based partly on property information, data obtained in public records, interviews, existing trends, buyer-seller decision criteria in the current market, and research conducted by third parties, and such data are not always completely reliable. The Integra Parties are not responsible for these and other future occurrences that could not have reasonably been foreseen on the effective date of this assignment. Furthermore, it is inevitable that some assumptions will not materialize and that unanticipated events may occur that will likely affect actual performance. While we are of the opinion that our findings are reasonable based on current market conditions, we do not represent that these estimates will actually be achieved, as they are subject to considerable risk and uncertainty. Moreover, we assume competent and effective management and marketing for the duration of the projected holding period of this property.

27.    All prospective value opinions presented in this report are estimates and forecasts which are prospective in nature and are subject to considerable risk and uncertainty. In addition to the contingencies noted in the preceding paragraph, several events may occur that could substantially alter the outcome of our estimates such as, but not limited to changes in the economy, interest rates, and capitalization rates, behavior of consumers, investors and lenders, fire and other physical destruction, changes in title or conveyances of easements and deed restrictions, etc. It is assumed that conditions reasonably foreseeable at the present time are consistent or similar with the future.

Lalwani, Gul & Deborah



Case 2:09-md-02047-EEF-MBN Document 22380-62 Filed 12/02/19 Page 17 of 130
Case 1:11-cv-22408-MGC Document 291-49 Entered on FLSD Docket 05/13/2015 Page 16 of 43

Addenda

# Addenda



File No. 4590

APPRAISAL OF



LOCATED AT:

4590 Kodiak Drive
Vero Beach, FL 32967

FOR:

Integra Realty Resources
9155 S. Dadeland Blvd, Ste 1208
Miami, FL 33156

BORROWER:

Gul Lalwani

AS OF:

March 11, 2011

BY:

C. F. Stites, SRA

File No. 4590

Valcentric LLC
Integra Realty Resources
9155 S. Dadeland Blvd, Ste 1208
Miami, FL 33156

File Number: 4590

In accordance with your request, I have appraised the real property at:

4590 Kodiak Drive
Vero Beach, FL 32967

The purpose of this appraisal is to develop an opinion of the market value of the subject property, as improved.
The property rights appraised are the fee simple interest in the site and improvements.

In my opinion, the market value of the property as of   March 11, 2011                          is:

$300,000
Three Hundred Thousand  Dollars

The attached report contains the description, analysis and supportive data for the conclusions,
final opinion of value, descriptive photographs, limiting conditions and appropriate certifications.

C. F. Stites, SRA

**Exterior-Only Inspection Residential Appraisal Report**  File No. 4590

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

### SUBJECT

| | |
|---|---|
| Property Address 4590 Kodiak Drive | City Vero Beach  State FL  Zip Code 32967 |
| Borrower Gul Lalwani | Owner of Public Record N/A  County Indian River |
| Legal Description Lot 16, Black Bear Reserve according to the recorded plat thereof (Plat Book 17 Page 86) | |
| Assessor's Parcel # 32392000005000000016.0 | Tax Year 2011  R.E. Taxes $ 1,374 |
| Neighborhood Name Black Bear Reserve | Map Reference 20-32-39  Census Tract 0508.04 |
| Occupant [X] Owner [ ] Tenant [ ] Vacant | Special Assessments $ 0  [ ] PUD  HOA $ 895  [ ] per year [X] per month |
| Property Rights Appraised [X] Fee Simple [ ] Leasehold [ ] Other (describe) | |
| Assignment Type [ ] Purchase Transaction [ ] Refinance Transaction [X] Other (describe) VALUATION AS OF RETROSPECTIVE DATE 03/11/2011 | |
| Lender/Client Integra Realty Resources | Address 9155 S. Dadeland Blvd, Ste 1208, Miami, FL 33156 |

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? [X] Yes [ ] No

Report data source(s) used, offering price(s), and date(s). DOM 858;IRCMLS#117881 list date unknown (pre-dates current MLS system). House sold 3/18/2011 after 858 DOM.

I [ ] did [ ] did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

### CONTRACT

Contract Price $ _____ Date of Contract _____ Is the property seller the owner of public record? [ ] Yes [ ] No  Data Source(s) _____

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? [ ] Yes [ ] No
If Yes, report the total dollar amount and describe the items to be paid.

### NEIGHBORHOOD

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | One-Unit Housing Trends | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|
| Location [ ] Urban [X] Suburban [ ] Rural | | Property Values [ ] Increasing [X] Stable [ ] Declining | | PRICE | AGE | One-Unit | 65 % |
| Built-Up [X] Over 75% [ ] 25-75% [ ] Under 25% | | Demand/Supply [ ] Shortage [X] In Balance [ ] Over Supply | | $(000) | (yrs) | 2-4 Unit | 1 % |
| Growth [ ] Rapid [X] Stable [ ] Slow | | Marketing Time [ ] Under 3 mths [X] 3-6 mths [ ] Over 6 mths | | 170 Low | 1 | Multi-Family | 2 % |
| Neighborhood Boundaries  The subject neighborhood is the area north of 41st St, south of 69th St, | | | | 799 High | 30 | Commercial | 12 % |
| between, 66th Ave on the west and US Hwy 1 on the east. | | | | 400 Pred. | 10 | Other Vac | 20 % |

Neighborhood Description  Developing suburban neighborhood near schools, places of worship, and shopping.  Highway access is available within 2 miles.  Close access to a public park.  Work centers are 1-25 miles away.  Mixture of ranch-style houses on small lots with some multi-family including duplex and apt.  Commercial uses are along arterials and highways.  Some new construction was noted.

Market Conditions (including support for the above conclusions)  Developing suburban neighborhood near all vital services.  No adverse conditions were observed.  REO activity was noted in the area during the 2010-2013 time frame.  Agents report average market demand, particularly among investors.  Normal market time for the area is typically 3 - 9 months.

### SITE

| | |
|---|---|
| Dimensions 150.29 x 237.52 x 161.00 x 235.16 | Area 36785 sf  Shape Nearly Rectangular  View N;Res;Res |
| Specific Zoning Classification RS-3 | Zoning Description Residential single family |
| Zoning Compliance [X] Legal [ ] Legal Nonconforming (Grandfathered Use) [ ] No Zoning [ ] Illegal (describe) | |

Is the highest and best use of the subject property as improved (or as proposed per plans and specifications) the present use? [X] Yes [ ] No  If No, describe.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements—Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | | Water | [X] | | Street Asphalt | [ ] | [X] |
| Gas | [ ] | None | Sanitary Sewer | [X] | | Alley None | | |

FEMA Special Flood Hazard Area [ ] Yes [X] No  FEMA Flood Zone X  FEMA Map # 12061C0237H  FEMA Map Date 12/04/2012

Are the utilities and off-site improvements typical for the market area? [X] Yes [ ] No  If No, describe.

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? [X] Yes [ ] No  If Yes, describe.  Gated development with private streets.  HOA dues cover street maintenance while HOA docs cover roadway use issues.  There are several gated communities in the area with private roads.  No adverse impact on value or marketability results from gated community location or private roadways.

Source(s) Used for Physical Characteristics of Property [ ] Appraisal Files [ ] MLS [X] Assessment and Tax Records [ ] Prior Inspection [ ] Property Owner [ ] Other (describe)  Data Source(s) for Gross Living Area County Property Appraiser

### IMPROVEMENTS

| GENERAL DESCRIPTION | | GENERAL DESCRIPTION | | Heating / Cooling | | Amenities | | Car Storage | |
|---|---|---|---|---|---|---|---|---|---|
| Units [X] One [ ] One with Accessory Unit | | Concrete Slab [ ] Crawl Space | | [X] FWA [ ] HWBB | | Fireplace(s) # 0 | | [ ] None | |
| # of Stories 1.0 | | [ ] Full Basement [ ] Finished | | [ ] Radiant | | WoodStove(s) # 0 | | [X] Driveway # of Cars 2 | |
| Type [X] Det. [ ] Att. [ ] S-Det./End Unit | | [ ] Partial Basement [ ] Finished | | [ ] Other | | [X] Patio/Deck Scrnd | | Driveway Surface Concrete | |
| [X] Existing [ ] Proposed [ ] Under Const. | | Exterior Walls CBS | | Fuel Electric | | [X] Pool Front | | [X] Garage # of Cars 2 | |
| Design (Style) Ranch | | Roof Surface Comp shgl | | [X] Central Air Conditioning | | [X] Pool In-Grnd | | [ ] Carport # of Cars 0 | |
| Year Built 2006 | | Gutters & Downspouts Barrel tile | | [ ] Individual | | [X] Fence Partial | | [X] Attached [ ] Detached | |
| Effective Age (Yrs) 4 | | Window Type Insul metal | | [ ] Other | | [X] Other None | | [ ] Built-in | |
| Appliances [X] Refrigerator [X] Range/Oven [X] Dishwasher [ ] Disposal [X] Microwave [ ] Washer/Dryer [ ] Other (describe) | | | | | | | | | |

Finished area above grade contains:  8 Rooms  4 Bedrooms  3.0 Bath(s)  3,552 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.)  Physical data per MLS; standard appliance package assumed.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).  C4;VALUATION AS OF A RETROSPECTIVE DATE (03/11/2011) BASED ON 01/17/2019 ATTEMPTED EXTERIOR FRONTAL DRIVE-BY INSPECTION. GATED DEVELOPMENT; ACCESS DENIED TO APPRAISER AT ACCESS GATE.  PHOTO CONTAINED HEREIN IS OF THE ACCESS GATE. PHYSICAL DATA  PER COUNTY PROPERTY APPRAISER'S OFFICE.  AVERAGE CONDITION ASSUMED WITH NO SERIOUS ITEMS OF DEFERRED MAINTENANCE.

Are there any apparent physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? [ ] Yes [X] No  If Yes, describe.
SEE COMMENTS ABOVE

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? [X] Yes [ ] No  If No, describe.

## Exterior-Only Inspection Residential Appraisal Report

File No. 4590

| | | | |
|---|---|---|---|
| There are | 3 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 405,000 | to $ 535,000 . |
| There are | 6 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 260,000 | to $ 465,000 . |

| FEATURE | SUBJECT | COMPARABLE SALE NO. 1 | COMPARABLE SALE NO. 2 | COMPARABLE SALE NO. 3 |
|---|---|---|---|---|
| Address | 4590 Kodiak Drive<br>Vero Beach, FL 32967 | 5880 Glen Eagle Lane<br>Vero Beach, FL 32967 | 5881 Bent Pine Drive<br>Vero Beach, FL 32967 | 5835 Glen Eagle Lane<br>Vero Beach, FL 32967 |
| Proximity to Subject | | 2.00 miles NE | 2.33 miles NE | 1.98 miles NE |
| Sale Price | $ | $ 465,000 | $ 375,000 | $ 260,000 |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 131.10 sq. ft. | $ 129.94 sq. ft. | $ 105.86 sq. ft. |
| Data Source(s) | | IRCMLS#104665;DOM 261 | IRCMLS#112446;DOM 39 | IRCMLS#114055;DOM 33 |
| Verification Source(s) | | Courthouse Agent | Courthouse Agent | Courthouse Agent |

| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
|---|---|---|---|---|---|---|---|
| Sale or Financing | | ArmLth | | ArmLth | | ArmLth | |
| Concessions | | Cash;0 | | Conv;0 | | Conv;0 | |
| Date of Sale/Time | | s08/10;c07/10 | | s12/10;c11/10 | | s01/11;c12/10 | |
| Location | N;Res;Gated | N;Res;Gated | | N;Res;Gated | | N;Res;Gated | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 36785 sf | 34211 sf | 0 | 1.00 ac | -15,000 | 31845 sf | 0 |
| View | N;Res;Res | B;Glfvw;Pond | -35,000 | B;Glfvw;Res | -20,000 | B;Glfvw;Res | -20,000 |
| Design (Style) | DT1.0;Ranch | DT1.0;Ranch | | DT1.0;Ranch | | DT1.0;Ranch | |
| Quality of Construction | Q4 | Q3 | -25,000 | Q3 | -25,000 | Q4 | |
| Actual Age | 5 | 7 | 0 | 22 | 3,400 | 17 | 2,400 |
| Condition | C4 | C2 | -60,000 | C3 | -30,000 | C4 | |
| Above Grade | Total 8 / Bdrms. 4 / Baths 3.0 | Total 8 / Bdrms. 3 / Baths 3.0 | 0 | Total 8 / Bdrms. 3 / Baths 3.0 | 0 | Total 8 / Bdrms. 4 / Baths 3.0 | |
| Room Count | | | | | | | |
| Gross Living Area | 3,552 sq. ft. | 3,547 sq. ft. | 0 | 2,886 sq. ft. | 30,000 | 2,456 sq. ft. | 49,300 |
| Basement & Finished | 0sf | 0sf | | 0sf | | 0sf | |
| Rooms Below Grade | | | | | | | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | Cent/Cent | Cent/Cent | | Cent/Cent | | Cent/Cent | |
| Energy Efficient Items | Insul metal | Insul metal | | Insul metal | | Insul metal | |
| Garage/Carport | 2ga2dw | 2ga2dw | | 2ga2dw | | 2ga2dw | |
| Porch/Patio/Deck | Porch,Scrn Patio | Porch,Scrn Patio | | Porch,Scrn Patio | | Porch,Scrn Patio | |
| Appliances | RO DW Di MW | RO DW Di MW | | RO DW Di MW | | RO DW Di MW | |
| Other | Fence,Pool | Fnc,Pool,Fireplc | -6,000 | Fnc,Pool,SumrK | -5,000 | Fence,Pool | |
| Net Adjustment (Total) | | ☐ + ☒ - | $ 126,000 | ☐ + ☒ - | $ 61,600 | ☒ + ☐ - | $ 31,700 |
| Adjusted Sale Price | | Net Adj. -27.1% | | Net Adj. -16.4% | | Net Adj. 12.2% | |
| of Comparables | | Gross Adj. 27.1% | $ 339,000 | Gross Adj. 34.2% | $ 313,400 | Gross Adj. 27.6% | $ 291,700 |

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain   Sales history was researched.

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s)   Courthouse
My research ☐ did ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s)   Courthouse
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE NO. 1 | COMPARABLE SALE NO. 2 | COMPARABLE SALE NO. 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | $0 | $0 | $0 | $0 |
| Data Source(s) | Courthouse | Courthouse | Courthouse | Courthouse |
| Effective Date of Data Source(s) | 01/01/2012 | 01/01/2012 | 01/01/2012 | 01/01/2012 |

Analysis of prior sale or transfer history of the subject property and comparable sales   Courthouse records show no sales or transfers of the subject property in the three years prior to the appraisal assignment effective date.  Courthouse records show no sales or transfers of the comparables in the 12 months prior.

NOTE:  No suitable sales were found in the subject development, therefore sales from other nearby areas were used.  Driving distance between subject and comparables is typical for this area.

Summary of Sales Comparison Approach   There were no sales in the year prior to the RETROSPECTIVE APPRAISAL DATE in the subject subdivision.  Therefore, sales from other gated developments in the northwest portion of Vero Beach were utilized.  The comparables above are from the Bent Pine golf development.  All have superior golf and/or golf/pond views.  Comp #1 and #2 were custom dwellings considered to be superior in terms of construction quality.  Comp #1 is most similar in sq ft size.  It was superior in condition requiring a large (over 10%) adjustment however.  Comp #3 is smaller requiring a large GLA adjustment (over 10%).  Those adjustments and others resulted in high net and gross adjustment on Comp #1 and #2 with high gross adjustment on Comp #3.  Despite the adjusting needed, the comparables used were the best available.  All three sales serve to support the final estimate of market value.

Indicated Value by Sales Comparison Approach $ 300,000
Indicated Value by:  Sales Comparison Approach $ 300,000   Cost Approach (if developed) $ 322,900   Income Approach (if developed) $ 312,000
Appraiser relied most heavily on the Sales Comparison Approach since it is the comparison of the subject dwelling to recent sales of similar houses in the area.  The Cost Approach serves to support the final estimate of market value.

This appraisal is made ☒ "as is,"  ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:   VALUATION AS OF RETROSPECTIVE DATE ESTABLISHED BY CLIENT (03/11/2011) BASED ON 1/17/2019 EXTERIOR FRONTAL (GATE) APPRAISER DRIVE-BY INSPECTION.

Based on a visual inspection of the exterior areas of the subject property from at least the street, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 300,000
as of 03/11/2011 , which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 2055   March 2005          UAD Version 9/2011          Produced using ACI software, 800.234.8727 www.aciweb.com          Page 2 of 6          Fannie Mae Form 2055   March 2005
2055_05UAD 12182015

STATEWIDE APPRAISAL SERVICE INC.

Exterior-Only Inspection Residential Appraisal Report    File No. 4590

All three sales serve to support the final estimate of market value.

This appraiser has not conducted an appraisal nor any service on the subject property in the three years prior to the appraisal assignment acceptance date.

As noted, this is a gated development and the appraiser was denied access at the entry gate. Accordingly, the photo of the subject in this appraisal is of the entry gate with MLS photo as well. All comparables are also gated. Appraiser was denied access at the entry gate to Bent Pine. Accordingly, comp photos in this report are of the the entry gate plus MLS photos.

*(vertical label: ADDITIONAL COMMENTS)*

| COST APPROACH TO VALUE (not required by Fannie Mae) |
|---|

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)    The SITE value is based on 2011 land sales from the Vero Beach area.

| | | | | |
|---|---|---|---|---|
| ESTIMATED ☐ REPRODUCTION OR ☒ REPLACEMENT COST NEW | OPINION OF SITE VALUE . . . . . . . . . . . . . . . . . . . . . . . . . . . = $ | | | 59,500 |
| Source of cost data Marshall & Swift Co | Dwelling        3,552 Sq. Ft. @ $    92.00 . . . . . = $ | | | 326,784 |
| Quality rating from cost service  Average     Effective date of cost data  12/2011 | Sq. Ft. @ $ . . . . . . . . . . . . = $ | | | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | Appl,Extras,Pool | | | 29,220 |
| Physical: Est 4yr effective age in est 50yr economic life, equals | Garage/Carport  710   Sq. Ft. @ $  21.00 . . . . . . . . = $ | | | 14,910 |
| 8% physical depreciation (Rd) | Total Estimate of Cost-New . . . . . . . . . . . . . . . = $ | | | 370,914 |
| External: Loss in value due to proliferation of REO and short-sale | Less  50   Physical | Functional | External | |
| properties. Est as 25% of RCN | Depreciation  $30,000 | $0 | $92,700 | = $ (  122,700) |
| | Depreciated Cost of Improvements . . . . . . . . . . . . . . . = $ | | | 248,214 |
| | "As-is" Value of Site Improvements . . . . . . . . . . . . . . . = $ | | | 15,200 |
| Estimated Remaining Economic Life (HUD and VA only)       46 Years | INDICATED VALUE BY COST APPROACH . . . . . . . . . . . . . . . = $ | | | 322,900 |

*(vertical label: COST APPROACH)*

| INCOME APPROACH TO VALUE (not required by Fannie Mae) |
|---|

| | | | |
|---|---|---|---|
| Estimated Monthly Market Rent $        2,600  X Gross Rent Multiplier   120  = $   312,000  Indicated Value by Income Approach | | | |

Summary of Income Approach (including support for market rent and GRM)    There was no MLS rental comp data for 2011. Rental comps from 2012 & 2013 show rental rates for executive houses (2100-2700sf) ranging from $0.78 to $0.85/sf/mo.; At $0.75/sf subject market rental rate is $2600

*(vertical label: INCOME)*

| PROJECT INFORMATION FOR PUDs (if applicable) |
|---|

| | |
|---|---|
| Is the developer/builder in control of the Homeowners' Association (HOA)?   ☒ Yes  ☐ No    Unit type(s)  ☒ Detached  ☐ Attached | |

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal name of project

| | | |
|---|---|---|
| Total number of phases | Total number of units | Total number of units sold |
| Total number of units rented | Total number of units for sale | Data source(s) |

Was the project created by the conversion of an existing building(s) into a PUD?   ☐ Yes  ☐ No   If Yes, date of conversion.

Does the project contain any multi-dwelling units?   ☐ Yes  ☐ No   Data source(s)

Are the units, common elements, and recreation facilities complete?   ☐ Yes  ☐ No   If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?   ☐ Yes  ☐ No   If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

*(vertical label: PUD INFORMATION)*

C. F. S___, SRA

### Exterior-Only Inspection Residential Appraisal Report

File No. 4590

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a visual inspection of the exterior areas of the subject property from at least the street, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

The appraiser must be able to obtain adequate information about the physical characteristics (including, but not limited to, condition, room count, gross living area, etc.) of the subject property from the exterior-only inspection and reliable public and/or private sources to perform this appraisal. The appraiser should use the same type of data sources that he or she uses for comparable sales such as, but not limited to, multiple listing services, tax and assessment records, prior inspections, appraisal files, information provided by the property owner, etc.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

3. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

4. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

5. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

C. F. S---, SRA

## Exterior-Only Inspection Residential Appraisal Report
File No. 4590

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1.   I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2.   I performed a visual inspection of the exterior areas of the subject property from at least the street. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3.   I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4.   I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value.  I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment.  I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5.   I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6.   I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7.   I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8.   I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9.   I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10.  I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11.  I have knowledge and experience in appraising this type of property in this market area.

12.  I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13.  I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14.  I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value.  I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal.  I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15.  I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16.  I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17.  I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction.  I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18.  My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19.  I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report.  If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report.  I certify that any individual so named is qualified to perform the tasks.  I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20.  I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

21.  The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent.  Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

C. F. Stites, SRA

## Exterior-Only Inspection Residential Appraisal Report

File No. 4590

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name C. F. Stites, SRA | Name |
| Company Name C F Stites appraiser | Company Name |
| Company Address P O Box 991 | Company Address |
| Lake Worth, FL 33460 | |
| Telephone Number 561 588-2550 | Telephone Number |
| Email Address realestateappraiserflorida@gmail.com | Email Address |
| Date of Signature and Report 01/24/2019 | Date of Signature |
| Effective Date of Appraisal 03/11/2011 | State Certification # |
| State Certification # RZ2761 | or State License # |
| or State License # | State |
| or Other (describe) State # | Expiration Date of Certification or License |
| State FL | |
| Expiration Date of Certification or License 11/30/2020 | |

ADDRESS OF PROPERTY APPRAISED
4590 Kodiak Drive
Vero Beach, FL  32967

SUBJECT PROPERTY
☐ Did not inspect exterior subject property
☐ Did inspect exterior of subject property from street
　Date of Inspection

APPRAISED VALUE OF SUBJECT PROPERTY $ 300,000

LENDER/CLIENT
Name Valcentric LLC
Company Name Integra Realty Resources
Company Address 9155 S. Dadeland Blvd, Ste 1208
Miami, FL 33156
Email Address

COMPARABLE SALES
☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
　Date of Inspection

STATEWIDE APPRAISAL SERVICE INC.

C.T. States New V

## Uniform Appraisal Dataset Definitions

File No. **4590**

### Condition Ratings and Definitions

C1   The improvements have been very recently constructed and have not previously been occupied. The entire structure and all components are new and the dwelling features no physical depreciation."

*Note: Newly constructed improvements that feature recycled materials and/or components can be considered new dwellings provided that the dwelling is placed on a 100% new foundation and the recycled materials and the recycled components have been rehabilitated/re-manufactured into like-new condition. Recently constructed improvements that have not been previously occupied are not considered "new" if they have any significant physical depreciation (i.e., newly constructed dwellings that have been vacant for an extended period of time without adequate maintenance or upkeep).*

C2   The improvements feature no deferred maintenance, little or no physical depreciation, and require no repairs. Virtually all building components are new or have been recently repaired, refinished, or rehabilitated. All outdated components and finishes have been updated and/or replaced with components that meet current standards. Dwellings in this category either are almost new or have been recently completely renovated and are similar in condition to new construction.

*Note: The improvements represent a relatively new property that is well maintained with no deferred maintenance and little or no physical depreciation, or an older property that has been recently completely renovated.*

C3   The improvements are well maintained and feature limited physical depreciation due to normal wear and tear. Some components, but not every major building component, may be updated or recently rehabilitated. The structure has been well maintained.

*Note: The improvement is in its first-cycle of replacing short-lived building components (appliances, floor coverings, HVAC, etc.) and is being well maintained. Its estimated effective age is less than its actual age. It also may reflect a property in which the majority of short-lived building components have been replaced but not to the level of a complete renovation.*

C4   The improvements feature some minor deferred maintenance and physical deterioration due to normal wear and tear. The dwelling has been adequately maintained and requires only minimal repairs to building components/mechanical systems and cosmetic repairs. All major building components have been adequately maintained and are functionally adequate.

*Note: The estimated effective age may be close to or equal to its actual age. It reflects a property in which some of the short-lived building components have been replaced, and some short-lived building components are at or near the end of their physical life expectancy; however, they still function adequately. Most minor repairs have been addressed on an ongoing basis resulting in an adequately maintained property.*

C5   The improvements feature obvious deferred maintenance and are in need of some significant repairs. Some building components need repairs, rehabilitation, or updating. The functional utility and overall livability is somewhat diminished due to condition, but the dwelling remains useable and functional as a residence.

*Note: Some significant repairs are needed to the improvements due to the lack of adequate maintenance. It reflects a property in which many of its short-lived building components are at the end of or have exceeded their physical life expectancy but remain functional.*

C6   The improvements have substantial damage or deferred maintenance with deficiencies or defects that are severe enough to affect the safety, soundness, or structural integrity of the improvements. The improvements are in need of substantial repairs and rehabilitation, including many or most major components.

*Note: Substantial repairs are needed to the improvements due to the lack of adequate maintenance or property damage. It reflects a property with conditions severe enough to affect the safety, soundness, or structural integrity of the improvements.*

### Quality Ratings and Definitions

Q1   Dwellings with this quality rating are usually unique structures that are individually designed by an architect for a specified user. Such residences typically are constructed from detailed architectural plans and specifications and feature an exceptionally high level of workmanship and exceptionally high-grade materials throughout the interior and exterior of the structure. The design features exceptionally high-quality exterior refinements and ornamentation, and exceptionally high-quality interior refinements. The workmanship, materials, and finishes throughout the dwelling are of exceptionally high quality.

Q2   Dwellings with this quality rating are often custom designed for construction on an individual property owner's site. However, dwellings in this quality grade are also found in high-quality tract developments featuring residences constructed from individual plans or from highly modified or upgraded plans. The design features detailed, high-quality exterior ornamentation, high-quality interior refinements, and detail. The workmanship, materials, and finishes throughout the dwelling are generally of high or very high quality.

Q3   Dwellings with this quality rating are residences of higher quality built from individual or readily available designer plans in above-standard residential tract developments or on an individual property owner's site. The design includes significant exterior ornamentation and interiors that are well finished. The workmanship exceeds acceptable standards and many materials and finishes throughout the dwelling have been upgraded from "stock" standards.

Q4   Dwellings with this quality rating meet or exceed the requirements of applicable building codes. Standard or modified standard building plans are utilized and the design includes adequate fenestration and some exterior ornamentation and interior refinements. Materials, workmanship, finish, and equipment are of stock or builder grade and may feature some upgrades.

Q5   Dwellings with this quality rating feature economy of construction and basic functionality as main considerations. Such dwellings feature a plain design using readily available or basic floor plans featuring minimal fenestration and basic finishes with minimal exterior ornamentation and limited interior detail. These dwellings meet minimum building codes and are constructed with inexpensive, stock materials with limited refinements and upgrades.

Q6   Dwellings with this quality rating are of basic quality and lower cost; some may not be suitable for year-round occupancy. Such dwellings are often built with simple plans or without plans, often utilizing the lowest quality building materials. Such dwellings are often built or expanded by persons who are professionally unskilled or possess only minimal construction skills. Electrical, plumbing, and other mechanical systems and equipment may be minimal or non-existent. Older dwellings may feature one or more substandard or non-conforming additions to the original structure.

### Definitions of Not Updated, Updated, and Remodeled

Not Updated
Little or no updating or modernization. This description includes, but is not limited to, new homes.
Residential properties of fifteen years of age or less often reflect an original condition with no updating, if no major components have been replaced or updated. Those over fifteen years of age are also considered not updated if the appliances, fixtures, and finishes are predominantly dated. An area that is 'Not Updated' may still be well maintained and fully functional, and this rating does not necessarily imply deferred maintenance or physical /functional deterioration.

Updated
The area of the home has been modified to meet current market expectations. These modifications are limited in terms of both scope and cost.
An updated area of the home should have an improved look and feel, or functional utility. Changes that constitute updates include refurbishment and/or replacing components to meet existing market expectations. Updates do not include significant alterations to the existing structure.

Remodeled
Significant finish and/or structural changes have been made that increase utility and appeal through complete replacement and/or expansion.
A remodeled area reflects fundamental changes that include multiple alterations. These alterations may include some or all of the following: replacement of a major component (cabinet(s), bathtub, or bathroom tile), relocation of plumbing/gas fixtures/appliances, significant structural alterations (relocating walls, and/or the addition of square footage). This would include a complete gutting and rebuild.

### Explanation of Bathroom Count

The number of full and half baths is reported by separating the two values by a period. The full bath is represented to the left of the period. The half bath count is represented to the right of the period.  Three-quarter baths are to be counted as a full bath in all cases. Quarter baths (baths that feature only toilet) are not to be included in the bathroom count.

Case 2:09-md-02047-EEF-MBN   Document 22380-62   Filed 12/02/19   Page 27 of 130
Case 4:11-cv-22408-MGC   Document 201-4 Entered on FLSD Docket 05/13/2019   Page 26 of 43
C.T. Suites SRBA

## Uniform Appraisal Dataset Definitions

File No. **4590**

### Abbreviations Used in Data Standardization Text

| Abbrev. | Full Name | Appropriate Fields | | Abbrev. | Full Name | Appropriate Fields |
|---|---|---|---|---|---|---|
| ac | Acres | Area, Site | | in | Interior Only Stairs | Basement & Finished Rooms Below Grade |
| AdjPrk | Adjacent to Park | Location | | Lndfl | Landfill | Location |
| AdjPwr | Adjacent to Power Lines | Location | | LtdSght | Limited Sight | View |
| A | Adverse | Location & View | | Listing | Listing | Sale or Financing Concessions |
| ArmLth | Arms Length Sale | Sale or Financing Concessions | | MR | Mid-Rise Structure | Design(Style) |
| AT | Attached Structure | Design(Style) | | Mtn | Mountain View | View |
| ba | Bathroom(s) | Basement & Finished Rooms Below Grade | | N | Neutral | Location & View |
| br | Bedroom | Basement & Finished Rooms Below Grade | | NonArm | Non-Arms Length Sale | Sale or Financing Concessions |
| B | Beneficial | Location & View | | op | Open | Garage/Carport |
| BsyRd | Busy Road | Location | | o | Other | Basement & Finished Rooms Below Grade |
| cp | Carport | Garage/Carport | | O | Other | Design(Style) |
| Cash | Cash | Sale or Financing Concessions | | Prk | Park View | View |
| CtySky | City View Skyline View | View | | Pstrl | Pastoral View | View |
| CtyStr | City Street View | View | | PwrLn | Power Lines | View |
| Comm | Commercial Influence | Location | | PubTrn | Public Transportation | Location |
| c | Contracted Date | Date of Sale/Time | | rr | Recreational (Rec) Room | Basement & Finished Rooms Below Grade |
| Conv | Conventional | Sale or Financing Concessions | | Relo | Relocation Sale | Sale or Financing Concessions |
| cv | Covered | Garage/Carport | | REO | REO Sale | Sale or Financing Concessions |
| CrtOrd | Court Ordered Sale | Sale or Financing Concessions | | Res | Residential | Location & View |
| DOM | Days On Market | Data Sources | | RT | Row or Townhouse | Design(Style) |
| DT | Detached Structure | Design(Style) | | RH | Rural Housing - USDA | Sale or Financing Concessions |
| dw | Driveway | Garage/Carport | | SD | Semi-detached Structure | Design(Style) |
| Estate | Estate Sale | Sale or Financing Concessions | | s | Settlement Date | Date of Sale/Time |
| e | Expiration Date | Date of Sale/Time | | Short | Short Sale | Sale or Financing Concessions |
| FHA | Federal Housing Authority | Sale or Financing Concessions | | sf | Square Feet | Area, Site, Basement |
| g | Garage | Garage/Carport | | sqm | Square Meters | Area, Site, Basement |
| ga | Garage - Attached | Garage/Carport | | Unk | Unknown | Date of Sale/Time |
| gbi | Garage - Built-in | Garage/Carport | | VA | Veterans Administration | Sale or Financing Concessions |
| gd | Garage - Detached | Garage/Carport | | wo | Walk Out Basement | Basement & Finished Rooms Below Grade |
| GR | Garden Structure | Design(Style) | | wu | Walk Up Basement | Basement & Finished Rooms Below Grade |
| GlfCse | Golf Course | Location | | WtrFr | Water Frontage | Location |
| Glfvw | Golf Course View | View | | Wtr | Water View | View |
| HR | High Rise Structure | Design(Style) | | w | Withdrawn Date | Date of Sale/Time |
| Ind | Industrial | Location & View | | Woods | Woods View | View |

### Other Appraiser-Defined Abbreviations

| Abbrev. | Full Name | Appropriate Fields | | Abbrev. | Full Name | Appropriate Fields |
|---|---|---|---|---|---|---|
| | | | | | | |

## SINGLE FAMILY COMPARABLE RENT SCHEDULE

This form is intended to provide the appraiser with a familiar format to estimate the market rent of the subject property.
Adjustments should be made only for items of significant difference between the comparables and the subject property.

C. F. Stites, SRA                                                                         File No. **4590**

| ITEM | SUBJECT | COMPARABLE NO. 1 | | COMPARABLE NO. 2 | | COMPARABLE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 4590 Kodiak Drive Vero Beach, FL 32967 | 4311 Summer Breeze Terrace Vero Beach, FL 32967 | | 2206 Falls Circle Vero Beach, FL 32967 | | 5421 Barbados Square Vero Beach, FL 32967 | |
| Proximity to Subject | | 3.40 miles SE | | 2.92 miles NE | | 0.97 miles NE | |
| Date Lease Begins Date Lease Expires | | 12/2012 11/3013 | | 01/2013 12/2014 | | 06/2013 05/2014 | |
| Monthly Rental | If Currently Rented: $ | $ 2,000 | | $ 2,100 | | $ 2,000 | |
| Less: Utilities Furniture | $ $ | $ $ 0 | | $ $ 0 | | $ $ 0 | |
| Adjusted Monthly Rent | $ | $ 2,000 | | $ 2,100 | | $ 2,000 | |
| Data Source | | MLS#130395 Agent | | MLS#134033 Agent | | MLS#135928 Agent | |
| RENT ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Rent Concessions | | None | | None | | None | |
| Location/View | N;Res;Gated N;Res;Res | N;Res;Res N;Res;Res | 0 | N;Res;Res N;Res;Res | 0 | N;Res;Res N;Res;Res | 0 |
| Design and Appeal | DT1.0;Ranch | DT1.0;Ranch | | DT1.0;Ranch | | DT1.0;Ranch | |
| Age/Condition | 5 C4 | 6 C3 | 0 | 5 C3 | 0 | 5 C4 | |
| Above Grade Room Count | Total 8 Bdrms 4 Baths 3.00 | Total 7 Bdrms 3 Baths 3.00 | 0 | Total 7 Bdrms 3 Baths 3.00 | 0 | Total 8 Bdrms 4 Baths 4.00 | -100 |
| Gross Living Area | 3,552 Sq. Ft. | 2,519 Sq. Ft. | 500 | 2,692 Sq. Ft. | 450 | 2,467 Sq. Ft. | 550 |
| Other (e.g., basement, etc.) | 0sf | 0sf | | 0sf | | 0sf | |
| Other: | RO DW Di MW Fence,Pool | RO DW Di MW Spa | 100 | RO DW Di MW None | 150 | RO DW Di MW Fence,Pool | |
| Net Adj. (total) | | [X] + □ - $ | 600 | [X] + □ - $ | 600 | [X] + □ - $ | 450 |
| Indicated Monthly Market Rent | | 30.0 30.0 | | 28.6 28.6 | 2,700 | 32.5 22.5 | 2,450 |

Comments on market data, including the range of rents for single family properties, an estimate of vacancy for single family rental properties, the general trend of rents and vacancy, and support for the above adjustments. (Rent concessions should be adjusted to the market, not to the subject.)

No rental comparable data for 2010 or 2011 in MLS system; 2012 is the earliest rental data available. The above rentals are from 2012 and 2013. All rental comparables are smaller in GLA size - no rentals of similar size were found. Like the subject, Rental Comparable #3 has a pool. Rental Comparable #1 has an in-ground spa while Rental Comparable #2 has neither. Large individual adjustments were needed for differences in GLA size. Size adjustment is at 50 cents per sq ft.

No suitable rental comparables were found nearby, therefore rentals used were over 1 mile away.

Final Reconciliation of Market Rent: Comparable rentals used were the best available. These rentals all occurred AFTER the effective date of this appraisal report.

THIS RENTAL ANALYSIS IS AS OF A RETROSPECTIVE DATE (03/11/2011) BASED ON 01/17/2019 EXTERIOR FRONTAL DRIVE-BY PROPERTY INSPECTION (OF GATE) BY THIS APPRAISER AS NOTED IN THE REPORT WHICH ACCOMPANIES THIS FORM.

I (WE) ESTIMATE THE MONTHLY MARKET RENT OF THE SUBJECT AS OF   03/11/2011   TO BE $   2,600

APPRAISER:                                                                 SUPERVISORY APPRAISER (ONLY IF REQUIRED):

| | |
|---|---|
| Signature | Signature |
| Name  C. F. Stites, SRA | Name |
| Date Report Signed  01/24/2019 | Date Report Signed |
| State Certification #  RZ2761          State  FL | State Certification #          State |
| Or State License #          State | Or State License #          State |
| Date Property Inspected 03/11/2011 | Date Property Inspected |
| | □ Did □ Did Not  Inspect Property |

Freddie Mac Form 1000 (8/88)                    Produced using ACI software, 800.234.8727 www.aciweb.com                    Fannie Mae Form 1007 (8/88)
1007 08192010

STATEWIDE APPRAISAL SERVICE INC.

Case 2:09-md-02047-EEF-MBN Document 20149-19 Filed 12/03/19 Page 29 of 130
Case 2:09-md-02047-EEF-MBN Document 20149 Entered on FLSD Docket 05/13/2019 Page 28 of 43

| Borrower: Carl Lawani | | File No.: 4590 |
|---|---|---|
| Property Address: 4590 Kodiak Drive | | Case No.: |
| City: Vero Beach | State: FL | Zip: 32967 |
| Lender: Integra Realty Resources | | |



FRONT VIEW OF
SUBJECT PROPERTY

Appraised Date: March 11, 2011
Appraised Value: $ 300,000



REAR VIEW OF
SUBJECT PROPERTY



STREET SCENE

COMPARABLE PROPERTY PHOTO ADDENDUM

| | | |
|---|---|---|
| Borrower: Gul Lalwani | | File No.: 4590 |
| Property Address: 4590 Kodiak Drive | | Case No.: |
| City: Vero Beach | State: FL | Zip: 32967 |
| Lender: Integra Realty Resources | | |



COMPARABLE SALE #1

5880 Glen Eagle Lane
Vero Beach, FL 32967
Sale Date: s08/10;c07/10
Sale Price: $ 465,000



COMPARABLE SALE #2

5881 Bent Pine Drive
Vero Beach, FL 32967
Sale Date: s12/10;c11/10
Sale Price: $ 375,000



COMPARABLE SALE #3

5835 Glen Eagle Lane
Vero Beach, FL 32967
Sale Date: s01/11;c12/10
Sale Price: $ 260,000

| | |
|---|---|
| Borrower: Carl Edwart | File No.: 4590 |
| Property Address: 4590 Kodiak Drive | Case No.: |
| City: Vero Beach | State: FL | Zip: 32967 |
| Lender: Integra Realty Resources | |



Comp #1 - MLS photo



Comp #2 - MLS photo



Comp #3 - MLS photo

| Borrower: Gail Lanvani | | | |
|---|---|---|---|
| Property Address: 4590 Kodiak Drive | | Case No.: | |
| City: Vero Beach | State: FL | | Zip: 32967 |
| Lender: Integra Realty Resources | | | |

File No.: 4590



Rental comparable #1
4311 Summer Breeze



Rental comparable #2
2206 Falls Circle



Rental comparable #3
5421 Barbados Sq

| Borrower: Gul Lalwani | | File No.: 4590 |
|---|---|---|
| Property Address: 4590 Kodiak Drive | | Case No.: |
| City: Vero Beach | State: FL | Zip: 32967 |
| Lender: Integra Realty Resources | | |



MLS Photo - subject property



| Borrower: Gul Lalwani | | File No.: 4590 | |
|---|---|---|---|
| Property Address: 4590 Kodiak Drive | | Case No.: | |
| City: Vero Beach | State: FL | | Zip: 32967 |
| Lender: Integra Realty Resources | | | |



PLAT MAP

LOCATION MAP

| Borrower: Gul Lalwani | | File No.: 4590 | |
| Property Address: 4590 Kodiak Drive | | Case No.: | |
| City: Vero Beach | State: FL | | Zip: 32967 |
| Lender: Integra Realty Resources | | | |



AERIAL MAP

| Borrower: Gul Lalwani | | File No.: 4590 | |
|---|---|---|---|
| Property Address: 4590 Kodiak Drive | | Case No.: | |
| City: Vero Beach | State: FL | | Zip: 32967 |
| Lender: Integra Realty Resources | | | |



Subject
4590 Kodiak Drive
Vero Beach, FL 32967

**FLOOD MAP**

| | |
|---|---|
| Borrower: Gul Lalwani | File No.: 4590 |
| Property Address: 4590 Kodiak Drive | Case No.: |
| City: Vero Beach | State: FL Zip: 32967 |
| Lender: Integra Realty Resources | |



**FLOOD INFORMATION**

Community: Indian River County

Property is NOT in a FEMA Special Flood Hazard Area

Map Number: 12061C0237H

Panel: 0237H

Zone: X

Map Date: 12-04-2012

FIPS: 12061

Source: FEMA DFIRM

**LEGEND**

⬛ = FEMA Special Flood Hazard Area – High Risk

🟨 = Moderate and Minimal Risk Areas

Road View:

🟩 = Forest      🟦 = Water

**Sky Flood™**

No representations or warranties to any party concerning the content, accuracy or completeness of this flood report, including any warranty of merchantability or fitness for a particular purpose is implied or provided. Visual scaling factors differ between map layers and are separate from flood zone information at marker location. No liability is accepted to any third party for any use or misuse of this flood map or its data.

| Borrower: Gul Lalwani | | File No.: 4590 | |
|---|---|---|---|
| Property Address: 4590 Kodiak Drive | | Case No.: | |
| City: Vero Beach | State: FL | | Zip: 32967 |
| Lender: Integra Realty Resources | | | |

| Borrower: Gul Lalwani | | File No.: 4590 | |
|---|---|---|---|
| Property Address: 4590 Kodiak Drive | | Case No.: | |
| City: Vero Beach | State: FL | | Zip: 32967 |
| Lender: Integra Realty Resources | | | |



# Anthony M. Graziano, MAI, CRE

**Integra Realty Resources**
Miami/Palm Beach

Dadeland Centre
9155 S. Dadeland Boulevard
Suite 1208
Miami, FL 33156

T 305.670.0001
F 305.670.2276

irr.com

## Experience

Senior Managing Director of Integra Realty Resources – Miami/Palm Beach.

Mr. Graziano has actively counseled and advised clients on the sale, leasing, valuation, management, and development of commercial real estate assets throughout the northeast and southeast U.S. since 1992.

Mr. Graziano's professional perspective is a blend of his experience and educational background which includes formal training in architecture, urban planning, macro and micro economics, real estate finance, institutional asset management, and land development. His market experience in sales, leasing, management, and valuation disciplines combine to bring practical real world answers to complex planning and development projects. He has been actively involved as a consultant and/or member of a consultant team on various major redevelopment and land use projects for public and private clients over the past 25+ years.

Mr. Graziano has specialized in consulting and valuation assignments for corporate and private clients on a wide array of complex issues related to estate and condemnation matters, title defects, environmental contamination/damages, air rights, partial and fractional interests, contract disputes, and mediation/arbitration disputes. Mr. Graziano's experience in these matters provides a comprehensive framework for effective strategic real estate consulting.

## Professional Activities & Affiliations

Advisory Board Member: Urban Land Institute (ULI) South Florida / Caribbean
Advisory Board Member: University of Miami M+RED Program
Member: Economic Roundtable - Miami Beacon Council (2012-present)
Board of Director: Integra Realty Resources, Inc. (2011-2016)
Chairman of the Board:    Integra Realty Resources, Inc. (2016-present)
Director: South Florida Chapter of the Appraisal Institute (2014-2016)
Board Member: Builders Association of South Florida (BASF) (2014-2016)
Subject Matter Expert (SME): Appraisal Practice Board, Appraisal Foundation
Member: Appraisal Institute (MAI) (2008-Present)
Member: Counselors of Real Estate (CRE) (2007-Present)
National Association of Realtors (REALTOR)
Miami Association of REALTORS Industry Analyst of the Year (2016)
Former Fellow: Royal Institute of Chartered Surveyors (FRICS) (2007-2014)
AI Leadership Development Advisory Council, March 1998 - February 2001
Lifetime Member: National Eagle Scout Association (NESA)

## Licenses

Florida, State-Certified General Real Estate Appraiser, RZ3510
New Jersey, State-Certified General Real Estate Appraiser, RG001261

## Education

University of Miami, Coral Gables, Florida 1988-1992
Degree: Bachelor of Science in Land Development and Planning, School of Architecture

New York University Real Estate Institute, New York, New York 1993-1996
Degree: Master of Science in Real Estate Development and Investment



amgraziano@irr.com    -    305.670.0001 x320

# Anthony M. Graziano, MAI, CRE

## Qualified Before Courts & Administrative Bodies

Qualified and accepted as an expert before:
US Bankruptcy Court (Newark, Southern District of Texas, Southern District of Florida)
US Federal District Court (Southern District of Florida)
FL Circuit Court (Miami-Dade, Broward, and Monroe Counties)
NJ State Tax Court
NJ Superior Court - Chancery Division
NJ Superior Court - Law Division
Various municipal planning and zoning boards throughout New Jersey and Florida
Various Taxing Authorities and Boards throughout New Jersey and Florida

**Integra Realty Resources**
**Miami/Palm Beach**

The Douglas Centre
2600 Douglas Road, Suite 801
Coral Gables, FL 33134

T 305.670.0001
F 305.670.2276

irr.com



amgraziano@irr.com    -    305.670.0001 x320

**Anthony M. Graziano, MAI, CRE, FRICS**
PROFERRED OR DISCLOSED EXPERT WITNESS REPORTS/SETTLEMENTS

| RETENTION DATE | ON BEHALF | IRR FILE # | COURT CASE NO. | COURT / VENUE | CASE NAME | RETAINED BY | TYPE OF CASE |
|---|---|---|---|---|---|---|---|
| 1/2015 | Defendant | 123-2015-0037 | 14-CV-22384 | Miami-Dade County, FL | Ray Benson & Maria Helena V. QBE Insurance Corporation | John A. Camp | Retrospective (2004-2006) analysis of market value claims against insurance company related to property |
| 9/2014 | Defendant | 123-2014-0194 | 13-03084CA 10 | 11th Judicial Circuit Miami-Dade, FL | Manuel Soltero V. Adorno & Yoss, LLP | Kaplan Zeena, LLP | Professional Liability suit against law firm and attorneys for malfeasance in litigation matter. |
| 2/2014 | Plaintiff | 123-2014-0030 | Settled | Caribbean Islands | Rainmaker Development V. A&F Bahamas, etal | VLASAC & SHMARUK, LLC | Partnership Dispute between Joint Venture in Caribbean development project (golf course, villas, and large-scale marina-commercial-retail development) |
| 11/2012 | Defendant | 123-2012-0140 | 42-2012-CA-001065 | Marion County, FL | CSX Transportation, Inc. V. Moshen Saranazi, Faith Ann Safanazi, Proverbium Hldg, LLC, USA & George Albright | NeJame, La Fay, Jancha, Ahmed, Barker, Joshi & Moreno, P.A. | Condemnation of partial interest with damages |
| 7/2012 | Confidential | 123-2012-0076 | Confidential | Broward County, FL | Ft. Lauderdale-Hollywood Int'l Airport Expansion | White & Case, LLP | Value Diminution Study to assist public agency in good faith negotiations based on airport expansion. |
| 6/2012 | Defendant | 123-2012-0070 | 10-49616-CA-40 | Miami-Dade County, FL | CB Entertainment, LLC V. South Beach Ocean Parcel | Kubicki Draper, P.A. | Construction Damages claim |
| 12/2009 | Plaintiff | 109-2009-0443 | Dept. Justice File 90-11-3-5801 | Federal District Court of Virginia | United States vs. Atlantic Wood Industries, Inc. | U.S. Department of Justice | Damages/environmental contamination dispute between United States Navy and responsible party (Atlantic Wood Industries) |

**Anthony M. Graziano, MAI, CRE, FRICS**
IDENTIFIED EXPERT WITNESS TESTIMONY AT DEPOSITION and/or TRIAL

| RETENTION DATE | ON BEHALF OF | TRI FILE # | COURT CASE NO. # | CASE NAME | COURT / VENUE | RETAINED BY | TYPE OF CASE |
|---|---|---|---|---|---|---|---|
| 6/2015 | Plaintiff | 123-2015-0170 | 15-008930-CA-01 | Aaron Stauber & Aviva Stauber V. BH 33, LLC | 11th Judicial Circuit Dade County, Florida (Hon. Peter R. Lopez) | Piedra & Associates, P.A. | Motion to dismiss Lis Pendens in an action to enforce contractual specific performance clause |
| 1/2015 | Defendant | 123-2015-0037 | 14-CV-22384 UU | Ray Benson & Maria Helena Campos V. QBE Insurance Corporation | Southern District of Florida | John Camps | Retrospective (2004-2006) analysis of market value claims against insurance company related to property damage claims arising from Hurricane Wilma |
| 1/2014 | Plaintiff | 123-2015-0031 | Pending | Igor Gei V. Yacht Club at Portofino Condo Association | Miami-Dade County | Weil Quaranta McGovern, P.A. | Construction defect dispute related to water-intrusion and damage-detrimental conditions analysis of |
| 10/2014 | Plaintiff | 123-2014-0226 | 08-CA-408-P | Ocean Bank V. Lindsack, Monroe County | Monroe County | Ocean Bank | Deficiency claim against borrower on real estate collateral in the Florida Keys (development site plus marine related improvements) |
| 10/2014 | Defendant | 123-2014-0215 | 11-24994 CA 06 | Palm-Aire Holdings V. JRGS Investments, LLC, Jorge Garcia-Saniff and Course Drive Investments, LLC | 11th Judicial Circuit Dade County, Florida | Cole, Scott & Kissane, P.A. | Partnership dispute over valuation issues proximal to a fractured condominium project (respective values), and operating agreement dispute |
| 7/2014 | Plaintiff | 123-2014-0194 | 13-01822 CACE 02 | Amalia I. Irlanda-Rivera V. Rivera Diagnostic Center, Inc., Obrejo Rivero & Yudit Rivero | 13th Judicial Circuit Broward County, Florida | Amalia I. Irlanda-Rivera | Rent default judgment and market rental and damage analysis associated with lease default. |
| 10/2014 | Defendant | 123-2014-0159 | 2014FL534 (Pending) | Roehm Title Resources Claim | Palm Beach County | Title Resources Guaranty Company | Title insurance claim related to before and after damage/value diminution analysis based on defined title defects not identified by Title Insurance Company |
| 4/2014 | Defendant | 123-2014-0117 | 4-14-CV-01077 (Pending) | USA V. GSA-VA St. Louis Property, LLC | USA District Court for the Eastern District of Missouri Eastern Division | Bryan Cave LLP | Condemnation of a possessory interest for a term. Retained as consulting/rebuttal expert |
| 5/2014 | Defendant | 123-2014-0114 | Pending | Euforia Club | Miami-Dade County | Rennert Bogel Mandler & Rodriguez, P.A. | Rent dispute regarding forced relocation of a nightclub, and relevant market rental and analysis of replacement club space in Miami |
| 4/2014 | Plaintiff | 123-2014-0069 | | Pan American Holdings Corp. V. Florida DOT Right of Way (ROW) Acquisition S.R. 7 | Broward County | Henry Wulf, Esq. | Condemnation for R.O.W. purposes including before and after damage analysis |
| 1/2014 | Debtor | 123-2014-005 | 13-25728-BKC-RAM | West Airport Plaza Business Park, LLC | US Federal Bankruptcy - Southern District of Florida - Miami Division (Hon. R. Mark) | Counsel for the Debtor, Michael D. Seese, Esq. | Fairness Opinion and market value opinions in conjunction with Debtor's Plan for Reorganization |
| 8/2013 | Defendant | 123-2009-0016 | 02-23922-CA 09 | American Educational Enterprises LLC v. The Board of Trustees of the Internal Improvement Trust Fund | 11th Judicial Circuit Dade County, Florida | Richard Alayon, Esq. - Alayon and Associates | Economic Damages case associated with an alleged misrepresentation or omission by seller of real property |
| 7/2013 | Plaintiff | 123-2013-0126 | CACE 08857624 (14) | Bayview Loan Servicing, LLC v. Kayhan Soodjani; Muhammad Mahmoodi; et al | 17th Judicial Circuit Broward County, Florida (Hon. Carlos A. Rodriguez) | Bayview Servicing, represented by Tabbas, Freedman and Soloff; Stacey Soloff, Esq. | Deficiency Judgment on multi-family project (Dewey Street Apartments) |
| 3/2013 | Defendant | 123-2013-0105 | 11-23561-CIV - Rosenbaum | United States of America v. G.K.K. etal | US District Court - Southern District of Florida (Hon. Rosenbaum) | Richard Duvall, Holland and Knight and Jeffrey Neiman, Esq. | Condemnation claim on the 137.779 +/- Miami Federal Bureau of Investigation (F.B.I.) building, condemnation of possessory interest (leasehold) |
| 2/2013 | Defendant | 123-2011-0670 | 09-05650 CA 04 | Zenaida Gomez v. City of Pinecrest | 11th Judicial Circuit Dade County, Florida (Hon. Beth Bloom) | Cynthia A. Everett, Cynthia A. Everett, P.A. | Economic damage resulting from temporary taking (seizure) of private residence |
| 1/2013 | Defendant | 123-2013-0016 | 12-60950-CIV | Q Lending, Inc., Equity Financial Group, Inc., and Equity Commercial Group, Inc. v. Travelers Companies, Inc. etal | 11th Judicial Circuit Dade County, Florida | Heidi Raschke, Butler Pappas etal | Value diminution resulting from alleged mortgage fraud. |
| 11/2012 | Plaintiff | 123-2012-0129 | Pending | 2011 and 2012 Ad Valorem Tax Protest | 11th Judicial Circuit Dade County, Florida | Ken Wurtenberger, Esq., Koblewski Oehme Fuentes | Tax protest of commercial condominium. |
| 10/19/2012 | Plaintiff | 123-2012-0111 | 2011-1107 CA-23 | Renegade at Hialeah Blvd v. Dynatech Engineering | 11th Judicial Circuit Dade County, Florida (Hon. Stanford Blake) | Daniel Levin, Esq., Cole Scott, Kissane, P.A. | Economic Damages case, diminution in value resulting from ground lease modification. |
| 10/12/2012 | Plaintiff | 123-2012-0109 | 11-30189 CA21 | Yaffa Yakubov vs. Bayview at Fisher Island No 3 | 11th Judicial Circuit Dade County, Florida | Craig Minko, Esq., Cole Scott Kissane, P.A. | Market Value estimate of Fisher Island Condominium purchased under right of first refusal; economic damages claimed by Plaintiff due to contract dispute arising from association's exercise of right of first refusal |
| 8/20/2012 | Plaintiff | 123-2010-0012 | CA-22160 CA-25 | 7935 NBV, LLC v. Harbour East Development LTD, Mario Egozi, etal | 11th Judicial Circuit Dade County, Florida | Jose Casal, Esq., Holland and Knight | Deficiency judgment on 32-unit fractured condominium, substitute expert following issuance of IRR-Miami reports in 2010 and 2012 |
| 8/15/2012 | Disclosed Dual Expert | 123-2012-0072 | | Vazquez v. Vazquez Matrimonial Matter | Matrimonial Mediation | Colon and Mendoza and Robert Hertzberg, P.A. | Retained as a court-appointed third party expert to both parties to appraise (2) marital assets comprised of office, retail, single and multi-family units in FL, TN, NC, and Illinois, Bahamas |
| 7/2012 | Plaintiff | 109-2011-0199 | Pending; 2003-2014 | BASF Inc., successor Ciba Geigy Inc. vs. Township of Toms River | Tax Court of New Jersey (Hon. Patrick DeMuenda) | Phil Gersuerio, Garippa, etal on behalf of BASF | Challenge to multi-year appeal of $80 Million+ land assessment on contaminated superfund site in Central New Jersey |
| 3/2012 | Plaintiff | 109-2010-0172 | ATL-L-4451-08 | Scot Netherlands Inc. vs. State of New Jersey Department of Environmental Protection (NJDEP) | Superior Court of New Jersey, Law Division Atlantic County | Jay Rhatican, Connell Foley on behalf of Scot Netherlands, Inc. | Challenge to NJDEP permit denial to fill wetlands, deprivation of all reasonable investment backed expectations |
| 7/2011 | Defendant | 109-2010-0199 | MER-L-3034-08 | 460 Mercer Street, LLP and Bruckener Southern, LLC vs. Hightstown | Superior Court of New Jersey Mercer County | Areell Zarro Grimm & Aaron, P.C. Hussam Chater | Litigation-Dispute Resolution - Hightstown Zoning Challenge |
| 12/2009 | Plaintiff | 109-2009-0443 | Dept. Justice File 90-11-3-5801 | United States v.s. Atlantic Wood Industries, Inc. | Federal District Court of Virginia | U.S. Department of Justice | Damages/environmental contamination dispute between United States Navy and responsible party (Atlantic Wood Industries) |
| 12/2009 | Plaintiff | 109-2009-0377 | | WextrustHPC Mortgage Fund v.s. City of Atlantic City | Tax Court of New Jersey | Cole, Schotz, Meisel, Forman & Leonard, P.A. Carl Rizzo, Esq. | Tax Appeals - To develop an opinion of the market value of the fee simple interest in the property |



M. Quals: Graziano; Trial Lists

**Anthony M. Graziano, MAI, CRE, FRICS**
IDENTIFIED EXPERT WITNESS TESTIMONY AT DEPOSITION and/or TRIAL

| RETENTION DATE | ON BEHALF | IRR FILE # | COURT CASE NO | COURT / VENUE | CASE NAME | RETAINED BY | TYPE OF CASE |
|---|---|---|---|---|---|---|---|
| 1/2009 | Secured Creditor | 109-2009-0439 | 3035-001 | US Bankruptcy Court - Southern District of Texas | Erickson Building | Stuart Glick, Esq., Sills, Cummis & Gross | Market Value for Bankruptcy of 140,000 SF corporate campus in Bethesda, Maryland |
| 09/2009 | Plaintiff | 109-2009-0123 | | Tax Court of New Jersey | Bay Head Yacht Club vs. Ocean County Tax Board | John Doyle, Carluccio, Leone, Dimon, Doyle & Sacks, LLC | Tax Appeal for Bay Head Yacht Club |
| 12/2008 | Plaintiff | 109-2009-XXXX | INA (DEPS Pending) | Tax Court of New Jersey | Mirage Atlantic City (MAC) vs. City of Atlantic City | Hank Rovitharl, Esq. | Tax Appeal at State Tax Court on 15 acre casino site adjacent to Trump Marina |
| 08/2008 | Defendant | 109-2008-0252 | L-2424-05 | Superior Court of New Jersey Law Division, Middlesex County | The City of South Amboy vs. Lower Main Street Development, LLC & Amboy Aggregates Joint Venture | Bathgate, Wegenar, etal | Verified complaint in condemnation |
| 6/2008 | Defendant | 109-2008-345 | C.A. No. OCHL-3361-06 | Superior Court of New Jersey, Law Division Ocean County | Osbourne Associates, Melbourne Associates VI, LLC, Kingsway Realty Profit Share vs. Citta Enterprises Co, JAC Property Management etal and Eckert Corporation | Francis X. Manning, Esq, Stradley Ronon Stevens & Young & Michael Camboli, Esq, Partridge Snow and Hahn, both on behalf of | Dispute re: proper valuation of leasehold and sub-lessee's sandwich leasehold interest on damage claim for breach of agreement claim |
| 1/2008 | Defendant | 109-2008-0125- | N/A | American Arbitration Association [testimony at Arbitration conducted by Hon. Eugene Serpentelli] | Toms River Township vs. Gba Geigy Corporation | Mark Troncone, Esq., In-House Counsel to Township of Toms River | Arbitration of environmental damages claim, and counter-claim of appropriateness of zoning on 1,900 acre superfund site. |
| 11/2007 | Defendant | 109-2007-211 | L-0008/35-06 | Superior Court of New Jersey, Law Division Middlesex County | Kyle Mosteller vs. Galia Neeman | Frank Canuso, Esq, Hoagland, Longo, Moran and Dunst | Damage claim due to loss of trees and screening between urban properties |
| 6/2007 | Plaintiff | 109-2007-0134 | 3:07-CV-2322 | Superior Court of New Jersey, Chancery Division Monmouth County | Silver Lakes Inc. vs. Township of Freehold Inc. | Christopher Hanlon, Esq, Hanlon and Niemann | Challenge to validity of Rent Control Ordinance as transfer of property rights from Lessor to Lessee. |
| 06/2007 | Plaintiff | 109-2007-0173 | | Federal District Court of Virginia | Laurelwood Homes, LLC vs. United States Department of Navy | William A. Shook Esq. | Leasehold interest in the property, breach of lease claim on behalf of leasehold owner (Laurelwood) claiming breach of lease and damages. |
| 12/2006 | Defendant | 109-2006-0192 | CAM - L - 9731-05 | Superior Court of New Jersey, Chancery Division, Camden County | Brandywine Operating Partnership, LP vs. UFCW Local 56 | Brett Last, Esq, O'Brien, Belland and Bushinsky | Estimate the value of damages to landlord on breach of above-market lease |
| 08/2006 | Defendant | 109-2006-0257 | | Superior Court of New Jersey, Law Division Ocean County | County Line & Browers Bridge, Jackson Township | Levin, Shea, Pfeffer, PA, Steven Pfeffer | To develop an opinion of the hypothetical market value of the fee simple interest in the property |
| 02/2006 | Defendant | 109-2006-0044 | OCN-L-2482-04 | Ocean Superior Court, Ocean County Courthouse | Carl Brooks vs. K. Hovanian | Ronan, Tuzzio & Giannone, Linda Olsen | To estimate value diminution in the subject property as a result of various issues asserted by the property owner in conjunction with pending litigation between the property owner, and the subject developer K. Hovnanian @ Sea Oaks |
| 10/2005 | Defendant | 109-2005-0315 | OCN-L-1810-5 | Superior Court of New Jersey, Chancery Division Ocean County | Atlantic City Electric Company d/b/a Conectiv Power Delivery, a regulated public utility of the state of New Jersey vs. AC1 Manahawkin, LLC family and/or Armstrong | Flaster/Greenberg, PC, David R. Oberlander, Esq. | Compensation for the taking of an easement for construction and maintenance of a 230kv transmission line and towers by Atlantic City Electric |
| 06/2005 | Defendant | 109-2005-0214 | MON-L-2609-05 | Superior Court of New Jersey Law Division Monmouth County | Township of Howell vs. George Harms Construction Co., Inc. etal | Connell & Foley, LLP Kevin Coakley, Esq. | To develop an opinion of the market value of the fee simple estate of the property |
| 08/2003 | Defendant | 109-2003-0282 | | Superior Court of New Jersey Chancery Division, Family Part, Monmouth County | Giuffre vs. Giuffre | Louis & Wolf - Frank A. Louis | To develop an opinion of the market value of the Fee Simple estate of two properties for purposes of equitable distribution of marital assets |
| 07/2003 | Defendant | 109-2003-0203 | OCN-C-78-03 | Superior Court of New Jersey, Chancery Division, Ocean County | West, etal vs. Pompaino, etal | Stephen E. Smith, Esq | To develop an opinion of the diminution in value due to a loss of useable land area |
| 06/2003 | Plaintiff | 109-2003-0101 | OCN-C-316-02 | Superior Court of New Jersey, Law Division, Ocean County | Eugene M. Lord vs. Donald W. Rinaldo | Lombardi & Lombardi Scott Telson | To develop an opinion of the market value of the fee simple estate of the property |
| 04/2003 | Plaintiff | 109-2003-0128 | FM-15-468-03-C | Superior Court of New Jersey, Chancery Division, Family Part Ocean County | Vincent Urbank vs. Lisa Urbank | Marianna Pontorero, Esq. | Litigation-Matrimonial |
| 02/2002 | Plaintiff | 109-2002-0055 | | | Shenandoah Mobile Home Park | Windels Marx Lane & Mittendorf, LLP - William Cagney | Inverse Condemnation - Rent Control Ordinance |
| 04/2001 | Claimant | 109-2001-0169 | NJ-2824-00 | Superior Court of New Jersey, Chancery Division Middlesex County | DeForest John Ely and Kimberle A. Ely, h/w | First American Title Insurance Co, Jack Mirkis | To derive an opinion of the fair compensation of the fee simple estate, subject to the temporary title encumbrance |
| 03/1999 | Secured Creditors | 109-1999-0052 | | US Bankruptcy Court - District of Newark | Georgetown Apartments | Emmes & Co, Andrew Schwarz | To estimate the market value of the Leased Fee Estate of the property, inclusive of 28 Apartment complexes through NY, NJ, PA, and MD. |
| 12/1997 | Defendant | LKW 257-3186 | FM-15-1465-94 | Superior Court of New Jersey, Chancery Division, Family Part, Ocean County | Lisa Franklin, etal vs. Donald Franklin, etal | Greenbaum, Rowe, Smith, Ravin, Davis & Himmel LLP Robert S. Underhill | Estimating the market value of the leased fee interest |
| 8/1984 | Creditor | HUD-XX | | US Bankruptcy Court - District of Newark | Hudson Marina Association vs. Emmes & Co. | | Bankruptcy Reorganization of 200+ slip failed marina/dockominium complex |



# EXHIBIT F20

**Integra Realty Resources**
Miami/Palm Beach

**Appraisal Report & Post-Remediation Damage Related to Chinese Drywall**

**Marin, Cassandra**
Hypothetical Market Value "As If" Remediated
3865 SW Wycoff Street
Port St. Lucie, St. Lucie County, Florida 34953
Client Reference: 19

**Prepared For:**
Colson Hicks Eidson

**Effective Date of the Appraisal:**
February 17, 2012

**Report Format:**
Appraisal Report

**IRR - Miami/Palm Beach**
File Number: 123-2018-0275





**Marin, Cassandra**
3865 SW Wycoff Street
Port St. Lucie, Florida



**Integra Realty Resources**    In Miami               In Orlando                    In Naples/Sarasota
Miami                          Dadeland Centre        The Magnolia Building         Horseshoe Professional Park
Orlando                        9155 South Dadeland Blvd.  326 N. Magnolia Ave.       2770 Horseshoe Drive S.
Southwest Florida              Suite 1208                                           Suite 3
                               Miami, FL 33156        Orlando, FL 32801             Naples, FL 34104
www.irr.com                    (305) 670-0001         (407) 843-3377                (239)-643-6888

January 24, 2019 (Amended February 26, 2019)


Patrick S. Montoya
Partner
Colson Hicks Eidson
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134


SUBJECT:        Hypothetical Market Value "As If" Remediated
                Case No 11-22408-Civ-COOKE
                United States District Court Southern District of Florida in the matter of
                Eduardo and Carmen Amorin, et al. individually and on behalf of others situated
                similarly v. Taishan Gypsum Co., LTD., f/k/a Shandong Taiche Dongxin Co. Ltd., et al
                Priority Claimant Case at:
                Marin, Cassandra
                3865 SW Wycoff Street
                Port St. Lucie, St. Lucie County, Florida 34953
                Client Reference: 19
                IRR - Miami/Palm Beach File No. 123-2018-0275


Dear Mr. Montoya:

Integra Realty Resources – Miami/Palm Beach submits the following damage estimate in the
referenced property as of the effective date assuming all remediation was completed by an
appropriate contractor with experience and credentials in remediating defective drywall.

The report is intended to comply the Uniform Standards of Professional Appraisal Practice (USPAP). It
presents summary discussions of the data, reasoning, and analysis that were used in the appraisal
process to develop the opinions. Additional information is contained within our workfile.

The findings will form the basis of expert witness testimony in the above referenced case.

Case 2:09-md-02047-EEF-MBN Document 22380-62 Filed 12/02/19 Page 49 of 130
Case 1:11-cv-22408-MGC Document 281-20 Entered on FLSD Docket 05/13/2019 Page 5 of 43

Identification of Subject                                                                                    2

## Identification of Subject

The subject of this report is a single-family ranch style home configured with 3 bedroom and 2 baths with 2,082 SF under air-conditioning. The subject property was built in 2007 and is located on a 10,000 SF site.

## Purpose of the Appraisal

The purpose of the appraisal is to develop an opinion of the diminution in value and related damages, collectively "the damages" as of the effective date of the appraisal, February 17, 2012. The damage estimate assumes the defective drywall remediation was completed and does not consider the cost to cure. The date of the report is January 24, 2019. The appraisal is valid only as of the stated effective date or dates.

## Intended Use and User

The intended use of the appraisal is for litigation purposes. The client, Colson Hicks Eidson and related co-counsel, Plaintiff and the Court are the intended users. Integra Realty Resources – Miami/Palm Beach is not responsible for unauthorized use of this report.

## Most Recent Sale History

The most recent closed sale of the subject is summarized as follows:

| Most Recent Subject Sale (Closed) | |
| --- | --- |
| Sale Date (Most Recent) | November 8, 2006 |
| Seller | Blanchard Jean P |
| Buyer | Marin, Cassandra |
| Sale Price | $270,000 |
| Recording Instrument Number | 3012089 |
| Disposition Details | Both buyer and seller were unaware of defective drywall issue at TOS |

At the time of the above transaction the buyer was not aware of the presence of Chinese Drywall in the home.

To the best of our knowledge, no other sale or transfer of ownership has taken place within a three-year period prior to the effective appraisal date. The buyer purchased the home in 2006 without knowledge of Chinese Drywall present on the property.

## Pending Transactions

The home was sold with defective drywall on February 17, 2012 for $81,000

## Definition of Market Value

The following definition of market value is used by agencies that regulate federally insured financial institutions in the United States:



Case 2:09-md-02047-EEF-MBN Document 22380-62 Filed 12/02/19 Page 50 of 130
Case 1:11-cv-22408-MGC Document 281-20 Entered on FLSD Docket 05/13/2019 Page 6 of 43

Definition of Retrospective Value Opinion 3

"The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:

- Buyer and seller are typically motivated;

- Both parties are well informed or well advised, and acting in what they consider their own best interests;

- A reasonable time is allowed for exposure in the open market;

- Payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and

- The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale."

*(12 C.F.R. Part 34.42(g); 55 Federal Register 54696, August 24, 1990, as amended at 57 Federal Register 12202, April 9, 1992, 59 Federal Register 29499, June 7, 1994)*

## Definition of Retrospective Value Opinion

A value opinion effective as of a specified historical date. The term retrospective does not define a type of value. Instead, it identifies a value opinion as being effective at some specific prior date. Value as of a historical date is frequently sought in connection with property tax appeals, damage models, lease renegotiation, deficiency judgements, estate tax, and condemnation. Inclusion of the type of value with this term is appropriate, e.g. "retrospective market value opinion".

*(Source: The Dictionary of Real Estate Appraisal – 6th Edition; Appraisal Institute, 200 W. Madison, Suite 1500, Chicago, IL 60606, www.appraisalinstitute.org)*

## Definition of Hypothetical Condition

1. A condition that is presumed to be true when it is known to be false. (SVP)

2. A condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis. Comment: Hypothetical conditions are contrary to known facts about physical, legal, or economic characteristics of the subject property; or about conditions external to the property, such as market conditions or trends; or about the integrity of date used in an analysis. (USPAP, 2016-2017 ed.)

*(Source: The Dictionary of Real Estate Appraisal – 6th Edition; Appraisal Institute, 200 W. Madison, Suite 1500, Chicago, IL 60606, www.appraisalinstitute.org)*

## Scope of Work

Integra was retained as an expert in the captioned matter of this report to address potential damages related to the subject property, specifically excluding the costs to cure.

Marin, Cassandra



Integra was retained to estimate any post remediation damages, and conducted a separate study to determine whether damages persist following defective drywall remediation.  The result of that study are outlined within Integra's report entitled "Market Analysis of the Post Remediation Impact of Chinese Drywall on Residential Property Values in Florida."  The results of that study are incorporated by reference herein.

In addition, our damage model was requested to include a rental value analysis of the Priority Claimant residence, and a determination of the relevant economic damage associated with having to vacate the home for a period of time (and secure alternate living arrangements) during the remediation.  As of the effective date, the claimant would have suffered the damages.

Integra established individual case files on each Priority Claimant residence, and retained professional assistance from qualified residential appraisers in each jurisdiction.  Integra managed the process of these retrospective appraisals, interfaced with the residential appraisers, and reviewed the form appraisals completed on each assignment including review of the comparables, adjustments, and form narrative to establish the market value of the residence unimpaired as of the effective date.

Integra professionals reviewed various materials exchanged as part of this case and considered materials that were relevant to the market valuation.  These materials were downloaded from the attorney's dropbox and are retained within our workfile.

Integra's participation in and review of the final appraised values results in a conclusion of the market value of the home defined as "Hypothetical Market Value" assuming defective drywall had never been identified within the subject property.  This forms the basis of the unimpaired market value as of the effective date.

All properties and comparables were inspected by the local residential appraisers without the benefit of interior inspections.  Adjustments for condition and age at the time of sale are based upon photographs contained within the various MLS databases, paired analysis from amongst the comparables, and for the subject, were based on photos, if available.  In the event a property had not been remediated as of the effective date, we assume average condition for the property in the market as of the effective date.

The damage analysis expressed within this report follows the peer teachings and market accepted processes for damage analysis.  However, the damage analysis only represents a <u>portion of the overall damages</u> because we were specifically requested to exclude the consideration of the costs to cure.  This represents a relevant component of damage in this case for property that factually have not been remediated.

Integra's role was strictly to identify post remediation value damage (sometime referred to as a "stigma") and estimate the relevant rental value and moving costs as a proxy for the temporary loss of use during remediation.



Case 2:09-md-02047-EEF-MBN  Document 22380-62  Filed 12/02/19  Page 52 of 130
Case 1:11-cv-22408-MGC  Document 201-20  Entered on FLSD Docket 05/13/2013  Page 8 of 43

Highest and Best Use                                                                                      5

## Significant Appraisal Assistance

In addition to Anthony M. Graziano, MAI ,CRE, principal, it is acknowledged that Peter G. Kayworth, Yuliya Georgieva, Joseph Melloni and Paul L. Jones of IRR-Miami/Palm Beach were involved in the assignment consisting of conducting research on the subject and transactions involving comparable properties, performing appraisal analyses and assisting in report writing, under the supervision of the persons signing the report.  The local residential appraisers are also named as providing significant assistance, including exterior inspection of the properties and comparables, application of their local knowledge in adjusting and estimating the unimpaired value, and developing the form report valuations incorporated herein.

## Prior Services

USPAP requires appraisers to disclose to the client any other services they have provided in connection with the subject property in the prior three years, including valuation, consulting, property management, brokerage, or any other services. We have not performed any services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

## Valuation Methodology

Appraisers usually consider the use of three approaches to value when developing a market value opinion for real property. These are the cost approach, sales comparison approach, and income capitalization approach.  The valuations consider the only relevant approach for residential valuation, the sales comparison analysis.  The cost and income approach are not considered relevant.

The sales comparison approach is the most applicable valuation method since there is an active market for similar properties, and sufficient sales data is available for analysis.  Additionally, this approach directly considered the prices of alternative properties having similar utility.

### Highest and Best Use

The highest and best use of the subject as if vacant for development of a single-family home which is physically possible, legally permissible as per zoning, financially feasible and maximally productive.

The highest and best use of the subject as improved is for continued use as a single-family home with no other use that could reasonably be expected to provide a higher value to the land as if vacant.  The improvements contribute to the over all value to a greater extent than the land value alone, and therefore, continued use as improved concluded to be maximally productive and the highest and best use of the property.

### Conclusion of Value

The Hypothetical market value appraisal as of the effective date, reflective of a traditional form appraisal, is contained within the Addenda of this report.  This value us hypothetical since it assumes that defective drywall had never been present at the subject property.



Case 2:09-md-02047-EEF-MBN Document 22380-62 Filed 12/02/19 Page 53 of 130
Case 1:11-cv-22408-MGC Document 281-20 Entered on FLSD Docket 05/13/2013 Page 9 of 43

Conclusion of Value                                                                                          6

Against this value, we then apply the Post Impairment Discount as a percentage of unimpaired value as developed within the Integra report studying this issue. This represents a compensable damage resulting from the prior existence of defective drywall in the home as of the effective date.

In addition, each appraisal (unimpaired) reflects a rental value analysis as of the effective date. This rental value analysis concludes to the equivalent market rent for the home (unimpaired) and reflects a proxy for the probable actual costs the homeowner would experience by having to move-out of the primary residence during remediation.

The homeowner would also have to incur moving /storage costs twice, once before and once after remediation. Professional packing, moving and storage for an average home is estimated at $1,500 per move, or $3,000 in total. This amount is added to the loss of use estimate as an additional damage.

This loss of use calculation does not consider the costs of alternative housing or other tangible costs potentially incurred for damages suffered between the date of discovery and the date of value. These damages, if applicable, are being estimated by a separate expert (Elkins et al). To the extent Elkins posits costs which are duplicative or actual costs that are greater or less, some minor adjustments to Integra's damage model may be required.

The timeframe for remediation (months of actual loss) could vary depending upon the permitting process in the specific community, the availability of labor, and the size of the home. Integra reviewed a number of transactions that were remediated by investors and found the typical timeframe between purchase of an unremediated home and listing[1] of the home post-remediation to be 3-6 months.

Larger more expansive homes would be expected to take longer to remediate since more materials are required, and in higher-priced homes, supplies would typically be custom-ordered. Therefore, we apply the following timeframes based on the subject's size and price range:

< $150,000 Home up to 2,000+/- SF            4 months

$150,000 - $750,000 home up to 4,000 SF      6 months

$750,000+ home up over 4,000 SF              9 months

---

[1] The "listing date" is most relevant since a homeowner conducting their own remediation can move back in once the home is ready for sale (ie- coinciding with a final certificate of occupancy).

Marin, Cassandra



Case 2:09-md-02047-EEF-MBN Document 22380-62 Filed 12/02/19 Page 54 of 130
Case 1:11-cv-22408-MGC Document 201-20 Entered on FLSD Docket 05/13/2015 Page 10 of 43

Conclusion of Value                                                                 7

The following shows our final estimate of damages as of the effective date, and assuming costs to cure (i.e. – to conduct the remediation) have been expended.

**Conclusions of Damage**

| | | | |
|---|---|---|---|
| Hypothetical Value (Unimpaired - Before) | | $112,000 | |
| Market Impairment Discount (As if Remediated) | | 10% | |
| | | | |
| Post Impairment Damage ($) | | $11,200 | |
| **Hypothetical Value As IF Remediated** | | | **$100,800** |
| | | | |
| Post Remediation Damages as of Effective Date | | | **$11,200** |
| Loss of Use: | | | |
|    Rental Rate ($/Month) | **$1,100** | | |
|    Moving & Storage Costs | | $3,000 | |
|    Loss of Use Subject (# Months) | 4x | $4,400 | |
|      Subject Total | | | **$7,400** |
| | | | |
| **Post Remediation Damage** | | | **$18,600** |

Note: Does not consider "cost to cure". Assumes remediation was completed by qualified contractor who warranties the work.

Marin, Cassandra



Case 2:09-md-02047-EEF-MBN Document 22380-62 Filed 12/02/19 Page 55 of 130
Case 1:11-cv-22408-MGC Document 201-20 Entered on FLSD Docket 05/13/2015 Page 11 of 43

Certification 8

## Certification

We certify that, to the best of our knowledge and belief:

1.  The statements of fact contained in this report are true and correct.

2.  The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are our personal, impartial, and unbiased professional analyses, opinions, and conclusions.

3.  We have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.

4.  We have not performed any services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

5.  We have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

6.  Our engagement in this assignment was not contingent upon developing or reporting predetermined results.

7.  Our compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

8.  Our analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice as well as applicable state appraisal regulations.

9.  The reported analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute.

10. The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

11. Anthony M. Graziano, MAI, CRE did not make a personal inspection of the property that is the subject of this report. Chad F. Stites has personally inspected the subject.

12. Significant real property appraisal assistance was provided by Peter G. Kayworth, Yuliya Georgieva, Joseph Melloni and Paul L. Jones.  Additionally, real estate assistance was provided by various Valucentric employees and subcontractors, including: John Barcelo, Angela Barcelo, Fred Stites, Carlos Fong, Sarah D. Wilson and Rob Baird.

13. We have experience in appraising properties similar to the subject and are in compliance with the Competency Rule of USPAP.

14. As of the date of this report, Anthony M. Graziano, MAI, CRE, has completed the continuing education program for Designated Members of the Appraisal Institute.

Anthony M. Graziano, MAI, CRE
Senior Managing Director - Miami
State-Certified General RE Appraiser
FL Certificate # RZ#3510

Case 2:09-md-02047-EEF-MBN Document 22380-62 Filed 12/02/19 Page 56 of 130
Case 1:11-cv-22408-MGC Document 201-20 Entered on FLSD Docket 05/13/2015 Page 12 of 43

Assumptions and Limiting Conditions                                                9

## Assumptions and Limiting Conditions

This appraisal and any other work product related to this engagement are limited by the following standard assumptions, <u>except as otherwise noted in the report</u>:

1.  The title is marketable and free and clear of all liens, encumbrances, encroachments, easements and restrictions. The property is under responsible ownership and competent management and is available for its highest and best use.

2.  There are no existing judgments or pending or threatened litigation that could affect the value of the property.

3.  There are no hidden or undisclosed conditions of the land or of the improvements that would render the property more or less valuable. Furthermore, there is no asbestos in the property.

4.  The revenue stamps placed on any deed referenced herein to indicate the sale price are in correct relation to the actual dollar amount of the transaction.

5.  The property is in compliance with all applicable building, environmental, zoning, and other federal, state and local laws, regulations and codes.

6.  The information furnished by others is believed to be reliable, but no warranty is given for its accuracy.

This appraisal and any other work product related to this engagement are subject to the following limiting conditions, except as otherwise noted in the report:

1.  An appraisal is inherently subjective and represents our opinion as to the value of the property appraised.

2.  The conclusions stated in our appraisal apply only as of the effective date of the appraisal, and no representation is made as to the effect of subsequent events.

3.  No changes in any federal, state or local laws, regulations or codes (including, without limitation, the Internal Revenue Code) are anticipated.

4.  No environmental impact studies were either requested or made in conjunction with this appraisal, and we reserve the right to revise or rescind any of the value opinions based upon any subsequent environmental impact studies. If any environmental impact statement is required by law, the appraisal assumes that such statement will be favorable and will be approved by the appropriate regulatory bodies.

5.  Unless otherwise agreed to in writing, we are not required to give testimony, respond to any subpoena or attend any court, governmental or other hearing with reference to the property without compensation relative to such additional employment.

6.  We have made no survey of the property and assume no responsibility in connection with such matters. Any sketch or survey of the property included in this report is for illustrative purposes only and should not be considered to be scaled accurately for size. The appraisal covers the property as described in this report, and the areas and dimensions set forth are assumed to be correct.

Marin, Cassandra



Case 2:09-md-02047-EEF-MBN Document 22380-62 Filed 12/02/19 Page 57 of 130
Case 1:11-cv-22408-MGC Document 201-20 Entered on FLSD Docket 05/13/2019 Page 13 of 43

Assumptions and Limiting Conditions                                                                    10

7. No opinion is expressed as to the value of subsurface oil, gas or mineral rights, if any, and we have assumed that the property is not subject to surface entry for the exploration or removal of such materials, unless otherwise noted in our appraisal.

8. We accept no responsibility for considerations requiring expertise in other fields. Such considerations include, but are not limited to, legal descriptions and other legal matters such as legal title, geologic considerations such as soils and seismic stability; and civil, mechanical, electrical, structural and other engineering and environmental matters. Such considerations may also include determinations of compliance with zoning and other federal, state, and local laws, regulations and codes.

9. The distribution of the total valuation in the report between land and improvements applies only under the reported highest and best use of the property. The allocations of value for land and improvements must not be used in conjunction with any other appraisal and are invalid if so used. The appraisal report shall be considered only in its entirety. No part of the appraisal report shall be utilized separately or out of context.

10. Neither all nor any part of the contents of this report (especially any conclusions as to value, the identity of the appraisers, or any reference to the Appraisal Institute) shall be disseminated through advertising media, public relations media, news media or any other means of communication (including without limitation prospectuses, private offering memoranda and other offering material provided to prospective investors) without the prior written consent of the persons signing the report.

11. Information, estimates and opinions contained in the report and obtained from third-party sources are assumed to be reliable and have not been independently verified.

12. Any income and expense estimates contained in the appraisal report are used only for the purpose of estimating value and do not constitute predictions of future operating results.

13. If the property is subject to one or more leases, any estimate of residual value contained in the appraisal may be particularly affected by significant changes in the condition of the economy, of the real estate industry, or of the appraised property at the time these leases expire or otherwise terminate.

14. Unless otherwise stated in the report, no consideration has been given to personal property located on the premises or to the cost of moving or relocating such personal property; only the real property has been considered.

15. The current purchasing power of the dollar is the basis for the values stated in the appraisal; we have assumed that no extreme fluctuations in economic cycles will occur.

16. The values found herein are subject to these and to any other assumptions or conditions set forth in the body of this report but which may have been omitted from this list of Assumptions and Limiting Conditions.

17. The analyses contained in the report necessarily incorporate numerous estimates and assumptions regarding property performance, general and local business and economic conditions, the absence of material changes in the competitive environment and other matters. Some estimates or assumptions, however, inevitably will not materialize, and unanticipated events and circumstances may occur; therefore, actual results achieved during

Marin, Cassandra



the period covered by our analysis will vary from our estimates, and the variations may be material.

18.  The Americans with Disabilities Act (ADA) became effective January 26, 1992. We have not made a specific survey or analysis of the property to determine whether the physical aspects of the improvements meet the ADA accessibility guidelines. We claim no expertise in ADA issues, and render no opinion regarding compliance of the subject with ADA regulations. Inasmuch as compliance matches each owner's financial ability with the cost to cure the non-conforming physical characteristics of a property, a specific study of both the owner's financial ability and the cost to cure any deficiencies would be needed for the Department of Justice to determine compliance.

19.  The appraisal report is prepared for the exclusive benefit of the Client, its subsidiaries and/or affiliates. It may not be used or relied upon by any other party. All parties who use or rely upon any information in the report without our written consent do so at their own risk.

20.  No studies have been provided to us indicating the presence or absence of hazardous materials on the subject property or in the improvements, and our valuation is predicated upon the assumption that the subject property is free and clear of any environment hazards including, without limitation, hazardous wastes, toxic substances and mold. No representations or warranties are made regarding the environmental condition of the subject property. Integra Realty Resources – Miami/Palm Beach, Integra Realty Resources, Inc., Integra Strategic Ventures, Inc. and/or any of their respective officers, owners, managers, directors, agents, subcontractors or employees (the "Integra Parties"), shall not be responsible for any such environmental conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because we are not experts in the field of environmental conditions, the appraisal report cannot be considered as an environmental assessment of the subject property.

21.  The persons signing the report may have reviewed available flood maps and may have noted in the appraisal report whether the subject property is located in an identified Special Flood Hazard Area. We are not qualified to detect such areas and therefore do not guarantee such determinations. The presence of flood plain areas and/or wetlands may affect the value of the property, and the value conclusion is predicated on the assumption that wetlands are non-existent or minimal.

22.  Integra Realty Resources – Miami/Palm Beach is not a building or environmental inspector. Integra Miami/Palm Beach does not guarantee that the subject property is free of defects or environmental problems. Mold may be present in the subject property and a professional inspection is recommended.

23.  The appraisal report and value conclusions for an appraisal assume the satisfactory completion of construction, repairs or alterations in a workmanlike manner.

24.  It is expressly acknowledged that in any action which may be brought against any of the Integra Parties, arising out of, relating to, or in any way pertaining to this engagement, the appraisal reports, and/or any other related work product, the Integra Parties shall not be responsible or liable for any incidental or consequential damages or losses, unless the appraisal was fraudulent or prepared with intentional misconduct. It is further acknowledged



Case 2:09-md-02047-EEF-MBN Document 22380-62 Filed 12/02/19 Page 59 of 130
Case 1:11-cv-22408-MGC Document 201-20 Entered on FLSD Docket 05/13/2015 Page 15 of 43

Assumptions and Limiting Conditions                                                      12

that the collective liability of the Integra Parties in any such action shall not exceed the fees
paid for the preparation of the appraisal report unless the appraisal was fraudulent or
prepared with intentional misconduct. Finally, it is acknowledged that the fees charged herein
are in reliance upon the foregoing limitations of liability.

25. Integra Realty Resources – Miami/Palm Beach, an independently owned and operated
company, has prepared the appraisal for the specific intended use stated elsewhere in the
report. The use of the appraisal report by anyone other than the Client is prohibited except as
otherwise provided. Accordingly, the appraisal report is addressed to and shall be solely for
the Client's use and benefit unless we provide our prior written consent. We expressly reserve
the unrestricted right to withhold our consent to your disclosure of the appraisal report or any
other work product related to the engagement (or any part thereof including, without
limitation, conclusions of value and our identity), to any third parties. Stated again for
clarification, unless our prior written consent is obtained, no third party may rely on the
appraisal report (even if their reliance was foreseeable).

26. The conclusions of this report are estimates based on known current trends and reasonably
foreseeable future occurrences. These estimates are based partly on property information,
data obtained in public records, interviews, existing trends, buyer-seller decision criteria in the
current market, and research conducted by third parties, and such data are not always
completely reliable. The Integra Parties are not responsible for these and other future
occurrences that could not have reasonably been foreseen on the effective date of this
assignment. Furthermore, it is inevitable that some assumptions will not materialize and that
unanticipated events may occur that will likely affect actual performance. While we are of the
opinion that our findings are reasonable based on current market conditions, we do not
represent that these estimates will actually be achieved, as they are subject to considerable
risk and uncertainty. Moreover, we assume competent and effective management and
marketing for the duration of the projected holding period of this property.

27. All prospective value opinions presented in this report are estimates and forecasts which are
prospective in nature and are subject to considerable risk and uncertainty. In addition to the
contingencies noted in the preceding paragraph, several events may occur that could
substantially alter the outcome of our estimates such as, but not limited to changes in the
economy, interest rates, and capitalization rates, behavior of consumers, investors and
lenders, fire and other physical destruction, changes in title or conveyances of easements and
deed restrictions, etc. It is assumed that conditions reasonably foreseeable at the present
time are consistent or similar with the future.

Marin, Cassandra



# Addenda



File No. 3865 Wycoff

APPRAISAL OF



LOCATED AT:

3865 SW Wycoff Street
Port St Lucie, FL 34953

FOR:

Integra Realty Resources
9155 S. Dadeland Blvd, Ste 1208
Miami, FL 33156

BORROWER:

Cassandra Yvette Marin

AS OF:

February 17, 2012

BY:

C. F. Stites, SRA

Valcentric LLC
Integra Realty Resources
9155 S. Dadeland Blvd, Ste 1208
Miami, FL 33156

File Number: 3865 Wycoff

In accordance with your request, I have appraised the real property at:

3865 SW Wycoff Street
Port St Lucie, FL 34953

The purpose of this appraisal is to develop an opinion of the market value of the subject property, as improved.
The property rights appraised are the fee simple interest in the site and improvements.

In my opinion, the market value of the property as of February 17, 2012 is:

$112,000
One Hundred Twelve Thousand Dollars

The attached report contains the description, analysis and supportive data for the conclusions,
final opinion of value, descriptive photographs, limiting conditions and appropriate certifications.



C. F. Stites, SRA

C.T. States ROAD

## Exterior-Only Inspection Residential Appraisal Report

File No. 3865 Wycoff

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

VALUATION AS OF RETROSPECTIVE DATE 02/17/2012

**SUBJECT**

| | |
|---|---|
| Property Address 3865 SW Wycoff Street | City Port St Lucie  State FL  Zip Code 34953 |
| Borrower Cassandra Yvette Marin | Owner of Public Record N/A  County St Lucie |

Legal Description Lot 6, Block 1941, Port St Lucie Section 19, according to the recorded plat thereof

| Assessor's Parcel # 3420-590-1483-000-9 | Tax Year 2012 | R.E. Taxes $ 2,692 |
|---|---|---|

| Neighborhood Name Port St Lucie | Map Reference 40/30N | Census Tract 3821.06 |
|---|---|---|

Occupant [X] Owner [ ] Tenant [ ] Vacant   Special Assessments $ 0   [ ] PUD  HOA $ 0  [ ] per year [ ] per month

Property Rights Appraised [X] Fee Simple [ ] Leasehold [ ] Other (describe)

Assignment Type [ ] Purchase Transaction [ ] Refinance Transaction [X] Other (describe) VALUATION AS OF RETROSPECTIVE DATE 02/17/2012

Lender/Client Integra Realty Resources   Address 9155 S. Dadeland Blvd, Ste 1208, Miami, FL 33156

Is the subject property currently offered for sale or has it been offered for sale within the twelve months prior to the effective date of this appraisal? [X] Yes [ ] No

Report data source(s) used, offering price(s), and date(s). DOM 6;RegMLS#3250704 list date 1/06/2012 at $79,900 with 6 DOM and sold 02/17/2012 at $81,000 on an all cash transaction.  No other listings in the previous 12 months.

**CONTRACT**

I [ ] did [ ] did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $ _____  Date of Contract _____  Is the property seller the owner of public record? [ ] Yes [ ] No  Data Source(s) _____

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? [ ] Yes [ ] No
If Yes, report the total dollar amount and describe the items to be paid.

**NEIGHBORHOOD**

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|
| Location [ ] Urban [X] Suburban [ ] Rural | | Property Values [ ] Increasing [X] Stable [ ] Declining | | | PRICE | AGE | One-Unit | 75 % |
| Built-Up [X] Over 75% [ ] 25-75% [ ] Under 25% | | Demand/Supply [ ] Shortage [X] In Balance [ ] Over Supply | | | $(000) | (yrs) | 2-4 Unit | 1 % |
| Growth [ ] Rapid [X] Stable [ ] Slow | | Marketing Time [ ] Under 3 mths [X] 3-6 mths [ ] Over 6 mths | | | 70 Low | 1 | Multi-Family | 2 % |
| Neighborhood Boundaries The subject neighborhood is the area north of Becker Rd, south of Gatlin | | | | | 190 High | 20 | Commercial | 12 % |
| Blvd, between PSL Blvd on the east and I-95 on the west. | | | | | 110 Pred. | 10 | Other Vac | 10 % |

Neighborhood Description  Established suburban neighborhood near schools, places of worship, and shopping.  Highway access is available within 2 miles.  Close access to a public park.  Work centers are 1-25 miles away.  Mixture of ranch-style houses on small lots with some multi-family including duplex and apartment.  Commercial uses are along arterials and highways.

Market Conditions (including support for the above conclusions)  Stable suburban neighborhood near all vital services.  No adverse conditions were observed.  Some REO activity was noted in the area.  Agents report good market demand, particularly among investors.  Normal market time for the area is typically 3 - 6 months.

**SITE**

| Dimensions 80 x 125 | Area 10000 sf | Shape Rectangular | View N;Res;Res |
|---|---|---|---|

Specific Zoning Classification RS-2   Zoning Description Residential single family

Zoning Compliance [X] Legal [ ] Legal Nonconforming (Grandfathered Use) [ ] No Zoning [ ] Illegal (describe)

Is the highest and best use of the subject property as improved (or as proposed per plans and specifications) the present use? [X] Yes [ ] No  If No, describe.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements—Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | | Water | [X] | | Street Asphalt | [X] | |
| Gas | [ ] | None | Sanitary Sewer | [X] | | Alley None | | |

FEMA Special Flood Hazard Area [ ] Yes [X] No  FEMA Flood Zone X  FEMA Map # 12111C0400J  FEMA Map Date 02/16/2012

Are the utilities and off-site improvements typical for the market area? [X] Yes [ ] No  If No, describe.

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? [ ] Yes [X] No  If Yes, describe. The subject parcel appears to back to a narrow canal however there is no view benefit.

**IMPROVEMENTS**

Source(s) Used for Physical Characteristics of Property [ ] Appraisal Files [ ] MLS [X] Assessment and Tax Records [ ] Prior Inspection [ ] Property Owner
[ ] Other (describe)   Data Source(s) for Gross Living Area County Property Appraiser

| GENERAL DESCRIPTION | | GENERAL DESCRIPTION | | Heating / Cooling | Amenities | Car Storage |
|---|---|---|---|---|---|---|
| Units [X] One [ ] One with Accessory Unit | | [X] Concrete Slab [ ] Crawl Space | | [ ] FWA [ ] HWBB | Fireplace(s) # 0 | [ ] None |
| # of Stories 1.0 | | [ ] Full Basement [ ] Finished | | [ ] Radiant | WoodStove(s) # 0 | [X] Driveway # of Cars 2 |
| Type [X] Det. [ ] Att. [ ] S-Det./End Unit | | [ ] Partial Basement [ ] Finished | | [ ] Other | [X] Patio/Deck Cov | Driveway Surface Concrete |
| [X] Existing [ ] Proposed [ ] Under Const. | | Exterior Walls CBS | | Fuel Electric | [X] Porch Front | [ ] Garage # of Cars 0 |
| Design (Style) Ranch | | Roof Surface Comp shgl | | [X] Central Air Conditioning | Pool None | [ ] Carport # of Cars 0 |
| Year Built 2007 | | Gutters & Downspouts Part-mtl | | [ ] Individual | [ ] Fence None | [ ] Attached [ ] Built-in [ ] Detached |
| Effective Age (Yrs) 4 | | Window Type Insul metal | | [ ] Other | [ ] Other None | |
| Appliances [ ] Refrigerator [X] Range/Oven [X] Dishwasher [ ] Disposal [X] Microwave [ ] Washer/Dryer [ ] Other (describe) | | | | | | |

Finished area above grade contains:  7 Rooms  3 Bedrooms  2.0 Bath(s)  2,082 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.)  Assumed standard kitchen appliance package.  MLS shows 3-bedrooms plus den (no closet).

Describe the condition of the property and data source(s) (including apparent needed repairs, deterioration, renovations, remodeling, etc.).  C3;VALUATION AS OF A RETROSPECTIVE DATE (02/17/2012) BASED ON 01/17/2019 EXTERIOR FRONTAL DRIVE-BY INSPECTION.  PHYSICAL DATA PER COUNTY PROPERTY APPRAISER'S OFFICE.  AVERAGE CONDITION ASSUMED WITH NO SERIOUS ITEMS OF DEFERRED MAINTENANCE.

Are there any apparent physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? [ ] Yes [X] No  If Yes, describe.
SEE COMMENTS ABOVE

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? [X] Yes [ ] No  If No, describe.

**Exterior-Only Inspection Residential Appraisal Report**     File No. 3865 Wycoff

| | | |
|---|---|---|
| There are | 4 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 105,000 to $ 135,000 . |
| There are | 6 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 109,000 to $ 130,500 . |

| FEATURE | SUBJECT | COMPARABLE SALE NO. 1 | | COMPARABLE SALE NO. 2 | | COMPARABLE SALE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 3865 SW Wycoff Street<br>Port St Lucie, FL 34953 | 1217 SW Santiago Avenue<br>Port St Lucie, FL 34953 | | 3725 Kistler Street<br>Port St Lucie, FL 34953 | | 1261 SW Hunnicut Avenue<br>Port St Lucie, FL 34953 | |
| Proximity to Subject | | 0.84 miles NW | | 0.38 miles NW | | 0.45 miles SW | |
| Sale Price | $ | $ | 110,000 | $ | 113,400 | $ | 109,000 |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 54.46 sq. ft. | | $ 57.07 sq. ft. | | $ 54.50 sq. ft. | |
| Data Source(s) | | RegMLS#3228819;DOM 21 | | RegMLS#3218548;DOM 98 | | RegMLS#3135229;DOM 240 | |
| Verification Source(s) | | Courthouse Agent | | Courthouse Agent | | Courthouse Agent | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | | ArmLth | | ArmLth | | ArmLth | |
| Concessions | | VA;0 | | Conv;0 | | FHA;0 | |
| Date of Sale/Time | | s12/11;c10/11 | | s12/11;c11/11 | | s05/11;c04/11 | |
| Location | N;Res;Res | N;Res;Res | | N;Res;Res | | N;Res;Res | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 10000 sf | 10000 sf | | 10000 sf | | 10000 sf | |
| View | N;Res;Res | N;Res;Res | | N;Res;Res | | N;Res;Res | |
| Design (Style) | DT1.0;Ranch | DT1.0;Ranch | | DT1.0;Ranch | | DT1.0;Ranch | |
| Quality of Construction | Q4 | Q4 | | Q4 | | Q4 | |
| Actual Age | 5 | 7 | 0 | 6 | 0 | 8 | 0 |
| Condition | C3 | C3 | | C3 | | C3 | |
| Above Grade | Total | Bdrms. | Baths | Total | Bdrms. | Baths | Total | Bdrms. | Baths | | Total | Bdrms. | Baths |
| Room Count | 7 | 3 | 2.0 | 7 | 3 | 2.0 | | 8 | 4 | 2.0 | 0 | 7 | 3 | 2.0 | |
| Gross Living Area | 2,082 sq. ft. | 2,020 sq. ft. | 2,500 | 1,987 sq. ft. | 3,800 | 2,000 sq. ft. | 3,300 |
| Basement & Finished | 0sf | 0sf | | 0sf | | 0sf | |
| Rooms Below Grade | | | | | | | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | Cent/Cent | Cent/Cent | | Cent/Cent | | Cent/Cent | |
| Energy Efficient Items | Insul metal | Insul metal | | Insul metal | | Insul metal | |
| Garage/Carport | 2ga2dw | 2ga2dw | | 2ga2dw | | 2ga2dw | |
| Porch/Patio/Deck | Porch,Cov Patio | Porch,Scrn Patio | -2,000 | Porch,Cov Patio | | Porch,Cov Patio | |
| Appliances | RO DW Di MW | RO DW Di MW | | RO DW Di MW | | RO DW Di MW | |
| Other | None | None | | Fenced | -4,000 | | |
| Net Adjustment (Total) | | [X] + [ ] - | $ 500 | [ ] + [X] - | $ 200 | [X] + [ ] - | $ 3,300 |
| Adjusted Sale Price | | Net Adj. 0.5% | | Net Adj. -0.2% | | Net Adj. 3.0% | |
| of Comparables | | Gross Adj. 4.1% | $ 110,500 | Gross Adj. 6.9% | $ 113,200 | Gross Adj. 3.0% | $ 112,300 |

I [X] did [ ] did not research the sale or transfer history of the subject property and comparable sales. If not, explain   Sales history was researched.

My research [ ] did [X] did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s)   Courthouse

My research [ ] did [X] did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s)   Courthouse

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE NO. 1 | COMPARABLE SALE NO. 2 | COMPARABLE SALE NO. 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | $0 | $0 | $0 | $0 |
| Data Source(s) | Courthouse | Courthouse | Courthouse | Courthouse |
| Effective Date of Data Source(s) | 01/01/2012 | 01/01/2012 | 01/01/2012 | 01/01/2012 |

Analysis of prior sale or transfer history of the subject property and comparable sales   Courthouse records show no sales or transfers of the subject property in the three years prior to the appraisal assignment effective date. Courthouse records show no sales or transfers of the comparables in the 12 months prior.

Summary of Sales Comparison Approach.   All three of the comparable sales are located in the SW portion of Port St Lucie and are generally similar to the appraised property in terms of age, size, design, and appeal. Comp #1 and #2 are the most recent. Comp #3 is somewhat dated (over 6 months) but was one of the best and most recent sales found. Adjustments were made for differences in GLA size and features. The adjusted sales produce a reasonably tight range of indicated values.

Indicated Value by Sales Comparison Approach $ 112,000

Indicated Value by: Sales Comparison Approach $ 112,000   Cost Approach (if developed) $ 137,000   Income Approach (if developed) $ 110,000
Appraiser relied most heavily on the Sales Comparison Approach since it is the comparison of the subject dwelling to recent sales of similar houses in the area. The Cost Approach serves to support the final estimate of market value.

This appraisal is made [X] "as is," [ ] subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, [ ] subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or [ ] subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:   VALUATION AS OF RETROSPECTIVE DATE ESTABLISHED BY CLIENT (2/17/2012) BASED ON 1/17/2019 EXTERIOR FRONTAL APPRAISER DRIVE-BY INSPECTION.

Based on a visual inspection of the exterior areas of the subject property from at least the street, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 112,000
as of   02/17/2012  , which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 2055   March 2005    UAD Version 9/2011     Produced using ACI software, 800.234.8727 www.aciweb.com     Fannie Mae Form 2055   March 2005
Page 2 of 6    2055_05UAD 12182015

STATEWIDE APPRAISAL SERVICE INC.

C. F. Stiles: SRO

## Exterior-Only Inspection Residential Appraisal Report

File No. 3865 Wycoff

| ADDITIONAL COMMENTS |
|---|

All three sales serve to support the final estimate of market value.

This appraiser has not conducted an appraisal nor any service on the subject property in the three years prior to the appraisal assignment acceptance date.

### COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)   The SITE value is based on 2011 land sales from the Port St Lucie area.

| COST APPROACH | | | |
|---|---|---|---|
| ESTIMATED ☐ REPRODUCTION OR ☒ REPLACEMENT COST NEW | OPINION OF SITE VALUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . = $ | | 9,500 |
| Source of cost data Marshall & Swift Co | Dwelling 2,082 Sq. Ft. @ $ 82.00 . . . . . = $ | | 170,724 |
| Quality rating from cost service Average   Effective date of cost data 12/2011 | Sq. Ft. @ $ . . . . . . . . . . . . . = $ | | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | Appl,Extras | | 4,040 |
| Physical:  Est 4yr effective age in est 50yr economic life, equals | Garage/Carport 441  Sq. Ft. @ $ 19.00 . . . . . . . . . . = $ | | 8,379 |
| 8% physical depreciation (Rd) | Total Estimate of Cost-New . . . . . . . . . . . . . . . . = $ | | 183,143 |
| External:  Loss in value due to proliferation of REO and short-sale | Less 50 Physical Functional External | | |
| properties.  Est as 25% of RCN | Depreciation $15,000 | $0 | $45,800 = $ ( | 60,800) |
| | Depreciated Cost of Improvements . . . . . . . . . . . . . . . . . . . . . . = $ | | 122,343 |
| | "As-is" Value of Site Improvements . . . . . . . . . . . . . . . . . . . . . . = $ | | 5,200 |
| Estimated Remaining Economic Life (HUD and VA only) 46 Years | INDICATED VALUE BY COST APPROACH . . . . . . . . . . . . . . . . . . . . . = $ | | 137,000 |

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

| INCOME | |
|---|---|
| Estimated Monthly Market Rent $ 1,100 X Gross Rent Multiplier 100 = $ | 110,000 Indicated Value by Income Approach |
| Summary of Income Approach (including support for market rent and GRM)   Rental comparables show a market rental rate of +/- $1100 per month with an applicable GRM of 100 | |

### PROJECT INFORMATION FOR PUDs (if applicable)

| PUD INFORMATION | |
|---|---|
| Is the developer/builder in control of the Homeowners' Association (HOA)? ☐ Yes ☐ No  Unit type(s) ☐ Detached ☐ Attached | |
| Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit. | |
| Legal name of project | |
| Total number of phases | Total number of units | Total number of units sold |
| Total number of units rented | Total number of units for sale | Data source(s) |
| Was the project created by the conversion of an existing building(s) into a PUD? ☐ Yes ☐ No  If Yes, date of conversion. | |
| Does the project contain any multi-dwelling units? ☐ Yes ☐ No  Data source(s) | |
| Are the units, common elements, and recreation facilities complete? ☐ Yes ☐ No  If No, describe the status of completion. | |
| Are the common elements leased to or by the Homeowners' Association? ☐ Yes ☐ No  If Yes, describe the rental terms and options. | |
| Describe common elements and recreational facilities. | |

C. F. S***, SRA

## Exterior-Only Inspection Residential Appraisal Report

File No. 3865 Wycoff

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a visual inspection of the exterior areas of the subject property from at least the street, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

The appraiser must be able to obtain adequate information about the physical characteristics (including, but not limited to, condition, room count, gross living area, etc.) of the subject property from the exterior-only inspection and reliable public and/or private sources to perform this appraisal. The appraiser should use the same type of data sources that he or she uses for comparable sales such as, but not limited to, multiple listing services, tax and assessment records, prior inspections, appraisal files, information provided by the property owner, etc.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

3. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

4. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

5. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

C. F. Sax, SRA

### Exterior-Only Inspection Residential Appraisal Report

File No. 3865 Wycoff

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a visual inspection of the exterior areas of the subject property from at least the street. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

C. F. Stites, SRA

## Exterior-Only Inspection Residential Appraisal Report

File No. 3865 Wycoff

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name C. F. Stites, SRA | Name |
| Company Name C F Stites appraiser | Company Name |
| Company Address P O Box 991 | Company Address |
| Lake Worth, FL 33460 | |
| Telephone Number 561 588-2550 | Telephone Number |
| Email Address realestateappraiserflorida@gmail.com | Email Address |
| Date of Signature and Report 01/24/2019 | Date of Signature |
| Effective Date of Appraisal 02/17/2012 | State Certification # |
| State Certification # RZ2761 | or State License # |
| or State License # | State |
| or Other (describe) _____ State # _____ | Expiration Date of Certification or License |
| State FL | |
| Expiration Date of Certification or License 11/30/2020 | |

| ADDRESS OF PROPERTY APPRAISED | SUBJECT PROPERTY |
|---|---|
| 3865 SW Wycoff Street | ☐ Did not inspect exterior subject property |
| Port St Lucie, FL 34953 | ☐ Did inspect exterior of subject property from street |
| | Date of Inspection |
| APPRAISED VALUE OF SUBJECT PROPERTY $ 112,000 | |

| LENDER/CLIENT | COMPARABLE SALES |
|---|---|
| Name Valcentric LLC | ☐ Did not inspect exterior of comparable sales from street |
| Company Name Integra Realty Resources | ☐ Did inspect exterior of comparable sales from street |
| Company Address 9155 S. Dadeland Blvd, Ste 1208 | Date of Inspection |
| Miami, FL 33156 | |
| Email Address | |

Freddie Mac Form 2055   March 2005          UAD Version 9/2011                    Produced using ACI software, 800.234.8727 www.aciweb.com                    Fannie Mae Form 2055 March 2005
Page 6 of 6                                                                                                                          2055_05UAD 12182015

STATEWIDE APPRAISAL SERVICE INC.

C.F. Suttereau XV
**Uniform Appraisal Dataset Definitions**

File No.   3865 Wycoff

### Condition Ratings and Definitions

C1   The improvements have been very recently constructed and have not previously been occupied. The entire structure and all components are new and the dwelling features no physical depreciation.*

*Note: Newly constructed improvements that feature recycled materials and/or components can be considered new dwellings provided that the dwelling is placed on a 100% new foundation and the recycled materials and the recycled components have been rehabilitated/re-manufactured into like-new condition. Recently constructed improvements that have not been previously occupied are not considered "new" if they have any significant physical depreciation (i.e., newly constructed dwellings that have been vacant for an extended period of time without adequate maintenance or upkeep).*

C2   The improvements feature no deferred maintenance, little or no physical depreciation, and require no repairs. Virtually all building components are new or have been recently repaired, refinished, or rehabilitated. All outdated components and finishes have been updated and/or replaced with components that meet current standards. Dwellings in this category either are almost new or have been recently completely renovated and are similar in condition to new construction.

*Note: The improvements represent a relatively new property that is well maintained with no deferred maintenance and little or no physical depreciation, or an older property that has been recently completely renovated.*

C3   The improvements are well maintained and feature limited physical depreciation due to normal wear and tear. Some components, but not every major building component, may be updated or recently rehabilitated. The structure has been well maintained.

*Note: The improvement is in its first-cycle of replacing short-lived building components (appliances, floor coverings, HVAC, etc.) and is being well maintained. Its estimated effective age is less than its actual age. It also may reflect a property in which the majority of short-lived building components have been replaced but not to the level of a complete renovation.*

C4   The improvements feature some minor deferred maintenance and physical deterioration due to normal wear and tear. The dwelling has been adequately maintained and requires only minimal repairs to building components/mechanical systems and cosmetic repairs. All major building components have been adequately maintained and are functionally adequate.

*Note: The estimated effective age may be close to or equal to its actual age. It reflects a property in which some of the short-lived building components have been replaced, and some short-lived building components are at or near the end of their physical life expectancy; however, they still function adequately. Most minor repairs have been addressed on an ongoing basis resulting in an adequately maintained property.*

C5   The improvements feature obvious deferred maintenance and are in need of some significant repairs. Some building components need repairs, rehabilitation, or updating. The functional utility and overall livability is somewhat diminished due to condition, but the dwelling remains useable and functional as a residence.

*Note: Some significant repairs are needed to the improvements due to the lack of adequate maintenance. It reflects a property in which many of its short-lived building components are at the end of or have exceeded their physical life expectancy but remain functional.*

C6   The improvements have substantial damage or deferred maintenance with deficiencies or defects that are severe enough to affect the safety, soundness, or structural integrity of the improvements. The improvements are in need of substantial repairs and rehabilitation, including many or most major components.

*Note: Substantial repairs are needed to the improvements due to the lack of adequate maintenance or property damage. It reflects a property with conditions severe enough to affect the safety, soundness, or structural integrity of the improvements.*

### Quality Ratings and Definitions

Q1   Dwellings with this quality rating are usually unique structures that are individually designed by an architect for a specified user. Such residences typically are constructed from detailed architectural plans and specifications and feature an exceptionally high level of workmanship and exceptionally high-grade materials throughout the interior and exterior of the structure. The design features exceptionally high-quality exterior refinements and ornamentation, and exceptionally high-quality interior refinements. The workmanship, materials, and finishes throughout the dwelling are of exceptionally high quality.

Q2   Dwellings with this quality rating are often custom designed for construction on an individual property owner's site. However, dwellings in this quality grade are also found in high-quality tract developments featuring residences constructed from individual plans or from highly modified or upgraded plans. The design features detailed, high-quality exterior ornamentation, high-quality interior refinements, and detail. The workmanship, materials, and finishes throughout the dwelling are generally of high or very high quality.

Q3   Dwellings with this quality rating are residences of higher quality built from individual or readily available designer plans in above-standard residential tract developments or on an individual property owner's site. The design includes significant exterior ornamentation and interiors that are well finished. The workmanship exceeds acceptable standards and many materials and finishes throughout the dwelling have been upgraded from "stock" standards.

Q4   Dwellings with this quality rating meet or exceed the requirements of applicable building codes. Standard or modified standard building plans are utilized and the design includes adequate fenestration and some exterior ornamentation and interior refinements. Materials, workmanship, finish, and equipment are of stock or builder grade and may feature some upgrades.

Q5   Dwellings with this quality rating feature economy of construction and basic functionality as main considerations. Such dwellings feature a plain design using readily available or basic floor plans featuring minimal fenestration and basic finishes with minimal exterior ornamentation and limited interior detail. These dwellings meet minimum building codes and are constructed with inexpensive, stock materials with limited refinements and upgrades.

Q6   Dwellings with this quality rating are of basic quality and lower cost; some may not be suitable for year-round occupancy. Such dwellings are often built with simple plans or without plans, often utilizing the lowest quality building materials. Such dwellings are often built or expanded by persons who are professionally unskilled or possess only minimal construction skills. Electrical, plumbing, and other mechanical systems and equipment may be minimal or non-existent. Older dwellings may feature one or more substandard or non-conforming additions to the original structure.

### Definitions of Not Updated, Updated, and Remodeled

**Not Updated**
Little or no updating or modernization. This description includes, but is not limited to, new homes.
Residential properties of fifteen years of age or less often reflect an original condition with no updating, if no major components have been replaced or updated. Those over fifteen years of age are also considered not updated if the appliances, fixtures, and finishes are predominantly dated. An area that is 'Not Updated' may still be well maintained and fully functional, and this rating does not necessarily imply deferred maintenance or physical /functional deterioration.

**Updated**
The area of the home has been modified to meet current market expectations. These modifications are limited in terms of both scope and cost.
An updated area of the home should have an improved look and feel, or functional utility. Changes that constitute updates include refurbishment and/or replacing components to meet existing market expectations. Updates do not include significant alterations to the existing structure.

**Remodeled**
Significant finish and/or structural changes have been made that increase utility and appeal through complete replacement and/ or expansion.
A remodeled area reflects fundamental changes that include multiple alterations. These alterations may include some or all of the following:  replacement of a major component (cabinet(s), bathtub, or bathroom tile), relocation of plumbing/gas fixtures/appliances, significant structural alterations (relocating walls, and/or the addition of square footage). This would include a complete gutting and rebuild.

### Explanation of Bathroom Count

The number of full and half baths is reported by separating the two values by a period. The full bath is represented to the left of the period. The half bath count is represented to the right of the period.  Three-quarter baths are to be counted as a full bath in all cases. Quarter baths (baths that feature only toilet) are not to be included in the bathroom count.

C.T. Suites SRA

## Uniform Appraisal Dataset Definitions

File No.  **3865 Wycoff**

### Abbreviations Used in Data Standardization Text

| Abbrev. | Full Name | Appropriate Fields | | Abbrev. | Full Name | Appropriate Fields |
|---------|-----------|--------------------|---|---------|-----------|--------------------|
| ac | Acres | Area, Site | | in | Interior Only Stairs | Basement & Finished Rooms Below Grade |
| AdjPrk | Adjacent to Park | Location | | Lndfl | Landfill | Location |
| AdjPwr | Adjacent to Power Lines | Location | | LtdSght | Limited Sight | View |
| A | Adverse | Location & View | | Listing | Listing | Sale or Financing Concessions |
| ArmLth | Arms Length Sale | Sale or Financing Concessions | | MR | Mid-Rise Structure | Design(Style) |
| AT | Attached Structure | Design(Style) | | Mtn | Mountain View | View |
| ba | Bathroom(s) | Basement & Finished Rooms Below Grade | | N | Neutral | Location & View |
| br | Bedroom | Basement & Finished Rooms Below Grade | | NonArm | Non-Arms Length Sale | Sale or Financing Concessions |
| B | Beneficial | Location & View | | op | Open | Garage/Carport |
| BsyRd | Busy Road | Location | | o | Other | Basement & Finished Rooms Below Grade |
| cp | Carport | Garage/Carport | | O | Other | Design(Style) |
| Cash | Cash | Sale or Financing Concessions | | Prk | Park View | View |
| CtySky | City View Skyline View | View | | Pstrl | Pastoral View | View |
| CtyStr | City Street View | View | | PwrLn | Power Lines | View |
| Comm | Commercial Influence | Location | | PubTrn | Public Transportation | Location |
| c | Contracted Date | Date of Sale/Time | | rr | Recreational (Rec) Room | Basement & Finished Rooms Below Grade |
| Conv | Conventional | Sale or Financing Concessions | | Relo | Relocation Sale | Sale or Financing Concessions |
| cv | Covered | Garage/Carport | | REO | REO Sale | Sale or Financing Concessions |
| CrtOrd | Court Ordered Sale | Sale or Financing Concessions | | Res | Residential | Location & View |
| DOM | Days On Market | Data Sources | | RT | Row or Townhouse | Design(Style) |
| DT | Detached Structure | Design(Style) | | RH | Rural Housing - USDA | Sale or Financing Concessions |
| dw | Driveway | Garage/Carport | | SD | Semi-detached Structure | Design(Style) |
| Estate | Estate Sale | Sale or Financing Concessions | | s | Settlement Date | Date of Sale/Time |
| e | Expiration Date | Date of Sale/Time | | Short | Short Sale | Sale or Financing Concessions |
| FHA | Federal Housing Authority | Sale or Financing Concessions | | sf | Square Feet | Area, Site, Basement |
| g | Garage | Garage/Carport | | sqm | Square Meters | Area, Site, Basement |
| ga | Garage - Attached | Garage/Carport | | Unk | Unknown | Date of Sale/Time |
| gbi | Garage - Built-in | Garage/Carport | | VA | Veterans Administration | Sale or Financing Concessions |
| gd | Garage - Detached | Garage/Carport | | wo | Walk Out Basement | Basement & Finished Rooms Below Grade |
| GR | Garden Structure | Design(Style) | | wu | Walk Up Basement | Basement & Finished Rooms Below Grade |
| GlfCse | Golf Course | Location | | WtrFr | Water Frontage | Location |
| Glfvw | Golf Course View | View | | Wtr | Water View | View |
| HR | High Rise Structure | Design(Style) | | w | Withdrawn Date | Date of Sale/Time |
| Ind | Industrial | Location & View | | Woods | Woods View | View |

### Other Appraiser-Defined Abbreviations

| Abbrev. | Full Name | Appropriate Fields | | Abbrev. | Full Name | Appropriate Fields |
|---------|-----------|--------------------|---|---------|-----------|--------------------|
| | | | | | | |

## Market Conditions Addendum to the Appraisal Report

File No. 3865 Wycoff

The purpose of this addendum is to provide the lender/client with a clear and accurate understanding of the market trends and conditions prevalent in the subject neighborhood. This is a required addendum for all appraisal reports with an effective date on or after April 1, 2009.

| | | | |
|---|---|---|---|
| Property Address 3865 SW Wycoff Street | City Port St Lucie | State FL | Zip Code 34953 |

Borrower **Cassandra Yvette Marin**

Instructions: The appraiser must use the information required on this form as the basis for his/her conclusions, and must provide support for those conclusions, regarding housing trends and overall market conditions as reported in the Neighborhood section of the appraisal report form. The appraiser must fill in all the information to the extent it is available and reliable and must provide analysis as indicated below. If any required data is unavailable or is considered unreliable, the appraiser must provide an explanation. It is recognized that not all data sources will be able to provide data for the shaded areas below; if it is available, however, the appraiser must include the data in the analysis. If data sources provide the required information as an average instead of the median, the appraiser should report the available figure and identify it as an average. Sales and listings must be properties that compete with the subject property, determined by applying the criteria that would be used by a prospective buyer of the subject property. The appraiser must explain any anomalies in the data, such as seasonal markets, new construction, foreclosures, etc.

<table>
<tr><td colspan="1">Inventory Analysis</td><td>Prior 7-12 Months</td><td>Prior 4-6 Months</td><td>Current - 3 Months</td><td colspan="2">Overall Trend</td></tr>
<tr><td>Total # of Comparable Sales (Settled)</td><td></td><td></td><td></td><td>Increasing</td><td>Stable</td><td>Declining</td></tr>
<tr><td>Absorption Rate (Total Sales/Months)</td><td></td><td></td><td></td><td>Increasing</td><td>Stable</td><td>Declining</td></tr>
<tr><td>Total # of Comparable Active Listings</td><td></td><td></td><td></td><td>Declining</td><td>Stable</td><td>Increasing</td></tr>
<tr><td>Months of Housing Supply (Total Listings/Ab.Rate)</td><td></td><td></td><td></td><td>Declining</td><td>Stable</td><td>Increasing</td></tr>
<tr><td>Median Sale & List Price, DOM, Sale/List %</td><td>Prior 7-12 Months</td><td>Prior 4-6 Months</td><td>Current - 3 Months</td><td colspan="2">Overall Trend</td></tr>
<tr><td>Median Comparable Sale Price</td><td></td><td></td><td></td><td>Increasing</td><td>Stable</td><td>Declining</td></tr>
<tr><td>Median Comparable Sales Days on Market</td><td></td><td></td><td></td><td>Declining</td><td>Stable</td><td>Increasing</td></tr>
<tr><td>Median Comparable List Price</td><td></td><td></td><td></td><td>Increasing</td><td>Stable</td><td>Declining</td></tr>
<tr><td>Median Comparable Listings Days on Market</td><td></td><td></td><td></td><td>Declining</td><td>Stable</td><td>Increasing</td></tr>
<tr><td>Median Sale Price as % of List Price</td><td></td><td></td><td></td><td>Increasing</td><td>Stable</td><td>Declining</td></tr>
<tr><td colspan="4">Seller-(developer, builder, etc.)paid financial assistance prevalent? ☐ Yes ☐ No</td><td>Declining</td><td>Stable</td><td>Increasing</td></tr>
</table>

Explain in detail the seller concessions trends for the past 12 months (e.g., seller contributions increased from 3% to 5%, increasing use of buydowns, closing costs, condo fees, options, etc.).

Are foreclosure sales (REO sales) a factor in the market? ☐ Yes ☐ No    If yes, explain (including the trends in listings and sales of foreclosed properties).

Cite data sources for above information.

Summarize the above information as support for your conclusions in the Neighborhood section of the appraisal report form. If you used any additional information, such as an analysis of pending sales and/or expired and withdrawn listings, to formulate your conclusions, provide both an explanation and support for your conclusions.

If the subject is a unit in a condominium or cooperative project , complete the following:    Project Name:

<table>
<tr><td>Subject Project Data</td><td>Prior 7-12 Months</td><td>Prior 4-6 Months</td><td>Current - 3 Months</td><td colspan="2">Overall Trend</td></tr>
<tr><td>Total # of Comparable Sales (Settled)</td><td></td><td></td><td></td><td>Increasing</td><td>Stable</td><td>Declining</td></tr>
<tr><td>Absorption Rate (Total Sales/Months)</td><td></td><td></td><td></td><td>Increasing</td><td>Stable</td><td>Declining</td></tr>
<tr><td>Total # of Active Comparable Listings</td><td></td><td></td><td></td><td>Declining</td><td>Stable</td><td>Increasing</td></tr>
<tr><td>Months of Unit Supply (Total Listings/Ab. Rate)</td><td></td><td></td><td></td><td>Declining</td><td>Stable</td><td>Increasing</td></tr>
</table>

Are foreclosure sales (REO sales) a factor in the project? ☐ Yes ☐ No    If yes, indicate the number of REO listings and explain the trends in listings and sales of foreclosed properties.

Summarize the above trends and address the impact on the subject unit and project.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name C. F. Stites, SRA | Name |
| Company Name C F Stites appraiser | Company Name |
| Company Address P O Box 991 | Company Address |
| Lake Worth, FL 33460 | |
| State License/Certification # RZ2761      State FL | State License/Certification #      State |
| Email Address  realestateappraiserflorida@gmail.com | Email Address |

## SINGLE FAMILY COMPARABLE RENT SCHEDULE

This form is intended to provide the appraiser with a familiar format to estimate the market rent of the subject property.
Adjustments should be made only for items of significant difference between the comparables and the subject property.

C. F. Stites, SRA                                           File No. **3865 Wycoff**

| ITEM | SUBJECT | COMPARABLE NO. 1 | | COMPARABLE NO. 2 | | COMPARABLE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 3865 SW Wycoff Street<br>Port St Lucie, FL 34953 | 4256 Savona Blvd<br>Port St Lucie, FL 34953 | | 3901 SW Savona Blvd<br>Port St Lucie, FL 34953 | | 1031 SW Jerico Avenue<br>Port St Lucie, FL 34953 | |
| Proximity to Subject | | 0.82 miles SW | | 0.31 miles SW | | 0.88 miles SE | |
| Date Lease Begins<br>Date Lease Expires | | 09/01/2011<br>08/31/2012 | | 06/20/2011<br>05/31/2012 | | 06/08/2011<br>05/31/2012 | |
| Monthly Rental | If Currently<br>Rented: $ | $ 1,050 | | $ 1,100 | | $ 1,250 | |
| Less: Utilities<br>Furniture | $<br>$ | $<br>$ 0 | | $<br>$ 0 | | $<br>$ 0 | |
| Adjusted<br>Monthly Rent | $ | $ 1,050 | | $ 1,100 | | $ 1,250 | |
| Data Source | | MLS#3193979<br>Agent | | MLS#3200896<br>Agent | | MLS#3200808<br>Agent | |
| RENT ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Rent Concessions | | None | | None | | None | |
| Location/View | N;Res;Res<br>N;Res;Res | N;Res;Res<br>N;Res;Res | | N;Res;Res<br>N;Res;Res | | N;Res;Res<br>N;Res;Res | |
| Design and Appeal | DT1.0;Ranch | DT1.0;Ranch | | DT1.0;Ranch | | DT1.0;Ranch | |
| Age/Condition | 5<br>C3 | 5<br>C3 | | 8<br>C3 | | 7<br>C3 | |
| Above Grade<br>Room Count | Total 7 Bdrms 3 Baths 2.00 | Total 7 Bdrms 3 Baths 2.00 | | Total 7 Bdrms 3 Baths 2.00 | | Total 8 Bdrms 4 Baths 2.00 | -100 |
| Gross Living Area | 2,082 Sq. Ft. | 2,070 Sq. Ft. | 0 | 2,053 Sq. Ft. | 0 | 1,997 Sq. Ft. | 0 |
| Other (e.g., basement, etc.) | 0sf | 0sf | | 0sf | | 0sf | |
| Other: | RO DW Di MW<br>None | RO DW Di MW<br>None | | RO DW Di MW<br>None | | RO DW Di MW<br>None | |
| Net Adj. (total) | | [X] + [ ] - $ | 0 | [X] + [ ] - $ | 0 | [ ] + [X] - $ | 100 |
| Indicated Monthly | | 0.0 | | 0.0 | | 8.0 | |
| Market Rent | | 0.0 $ 1,050 | | 0.0 $ 1,100 | | -8.0 $ 1,150 | |

Comments on market data, including the range of rents for single family properties, an estimate of vacancy for single family rental properties, the general trend of rents and vacancy, and support for the above adjustments. (Rent concessions should be adjusted to the market, not to the subject property.)

Comparable rentals are of similar age and size. All of the comparable rentals are within a few blocks of the appraised house.

Final Reconciliation of Market Rent: Comparable rentals are highly similar in size and appeal. Comparable rental #3 is a 4-bedroom while the subject and other rental comparables are 3-bedroom units. All comparable rentals are under gross leases with tenant supplied utilities.

THIS RENTAL ANALYSIS IS AS OF A RETROSPECTIVE DATE (02/17/2012) BASED ON 01/17/2019 EXTERIOR FRONTAL DRIVE-BY PROPERTY INSPECTION BY THIS APPRAISER AS NOTED IN THE REPORT WHICH ACCOMPANIES THIS FORM.

I (WE) ESTIMATE THE MONTHLY MARKET RENT OF THE SUBJECT AS OF    02/17/2012                    TO BE $            1,100

APPRAISER:                                          SUPERVISORY APPRAISER (ONLY IF REQUIRED):

| | |
|---|---|
| Signature | Signature |
| Name C. F. Stites, SRA | Name |
| Date Report Signed 01/24/2019 | Date Report Signed |
| State Certification # RZ2761    State FL | State Certification #    State |
| Or State License #    State | Or State License #    State |
| Date Property Inspected 01/17/2019 | Date Property Inspected |

[ ] Did  [ ] Did Not  Inspect Property

Freddie Mac Form 1000 (8/88)                    Produced using ACI software, 800.234.8727 www.aciweb.com                    Fannie Mae Form 1007 (8/88)
1007 08191/2010

STATEWIDE APPRAISAL SERVICE INC.

SUBJECT PROPERTY PHOTO ADDENDUM

| Borrower: Cassandra Yvette Marin | | |
|---|---|---|
| Property Address: 3865 SW Wycoff Street | | File No.: 3865 Wycoff |
| | | Case No.: |
| City: Port St Lucie | State: FL | Zip: 34953 |
| Lender: Integra Realty Resources | | |



**FRONT VIEW OF
SUBJECT PROPERTY**

Appraised Date: February 17, 2012
Appraised Value: $ 112,000



**REAR VIEW OF
SUBJECT PROPERTY**



**STREET SCENE**

COMPARABLE PROPERTY PHOTO ADDENDUM

| | |
|---|---|
| Borrower: Cassandra Yvette Marin | File No.: 3865 Wycoff |
| Property Address: 3865 SW Wycoff Street | Case No.: |
| City: Port St Lucie | State: FL | Zip: 34953 |
| Lender: Integra Realty Resources | |



COMPARABLE SALE #1

1217 SW Santiago Avenue
Port St Lucie, FL 34953
Sale Date: s12/11;c10/11
Sale Price: $ 110,000



COMPARABLE SALE #2

3725 Kistler Street
Port St Lucie, FL 34953
Sale Date: s12/11;c11/11
Sale Price: $ 113,400



COMPARABLE SALE #3

1261 SW Hunnicut Avenue
Port St Lucie, FL 34953
Sale Date: s05/11;c04/11
Sale Price: $ 109,000

| Borrower: Cassandra Yvette Marin | | |
|---|---|---|
| Property Address: 3865 SW Wycoff Street | | Case No.: |
| City: Port St Lucie | State: FL | Zip: 34953 |
| Lender: Integra Realty Resources | | |

File No.: 3865 Wycoff



Front/Side view



Front/Side view



Address verification

| Borrower: Cassandra Yvette Marin | | | File No.: 3865 Wycoff | |
| --- | --- | --- | --- | --- |
| Property Address: 3865 SW Wycoff Street | | | Case No.: | |
| City: Port St Lucie | | State: FL | | Zip: 34953 |
| Lender: Integra Realty Resources | | | | |



Rental comparable #1
4256 Savona Blvd



Rental comparable #2
3901 Savona Blvd



Rental comparable #3
1031 SW Jericho Avenue

**PLAT MAP**

| Borrower: Cassandra Yvette Marin | | File No.: 3865 Wycoff | |
| Property Address: 3865 SW Wycoff Street | | Case No.: | |
| City: Port St Lucie | State: FL | | Zip: 34953 |
| Lender: Integra Realty Resources | | | |

LOCATION MAP

| Borrower: Cassandra Yvette Marin | | File No.: | 3865 Wycoff |
| Property Address: 3865 SW Wycoff Street | | Case No.: | |
| City: Port St Lucie | State: FL | | Zip: 34953 |
| Lender: Integra Realty Resources | | | |



AERIAL MAP

| Borrower: Cassandra Yvette Marin | | File No.: 3865 Wycoff |
| Property Address: 3865 SW Wycoff Street | | Case No.: |
| City: Port St Lucie | State: FL | Zip: 34953 |
| Lender: Integra Realty Resources | | |



Subject
3865 SW Wycoff Street
Port St Lucie, FL 34953

**FLOOD MAP**

| Borrower: Cassandra Yvette Marin | | | File No.: 3865 Wycoff |
|---|---|---|---|
| Property Address: 3865 SW Wycoff Street | | | Case No.: |
| City: Port St Lucie | | State: FL | Zip: 34953 |
| Lender: Integra Realty Resources | | | |



Subject
3865 SW Wycoff St
Port St. Lucie, FL 34953

**FLOOD INFORMATION**

Community: CITY OF PORT ST. LUCIE
Property is NOT in a FEMA Special Flood Hazard Area
Map Number: 12111C0400J
Panel: 0400J
Zone: X
Map Date: 02-16-2012
FIPS: 12111
Source: FEMA DFIRM

**LEGEND**

= FEMA Special Flood Hazard Area – High Risk

= Moderate and Minimal Risk Areas

Road View:

= Forest      = Water

**Sky Flood™**

No representations or warranties to any party concerning the content, accuracy or completeness of this flood report, including any warranty of merchantability or fitness for a particular purpose is implied or provided. Visual scaling factors differ between map layers and are separate from flood zone information at marker location. No liability is accepted to any third party for any use or misuse of this flood map or its data.

| Borrower: Cassandra Yvette Marin | | File No.: 3865 Wycoff |
|---|---|---|
| Property Address: 3865 SW Wycoff Street | | Case No.: |
| City: Port St Lucie | State: FL | Zip: 34953 |
| Lender: Integra Realty Resources | | |

Michelle Franklin, CFA -- Saint Lucie County Property Appraiser -- All rights reserved.

## Property Identification

| | |
|---|---|
| Site Address: | 3865 SW Wycoff ST |
| Parcel ID: | 3420-590-1483-000-9 |
| Account #: | 69819 |
| Map ID: | 44/30N |
| Use Type: | 0100 |
| Zoning: | RS-2 |
| City/County: | Port Saint Lucie |

### Ownership

Jims Yzacc
1077 Golden Rod Rd
Wellington, FL 33414

### Legal Description

PORT ST LUCIE-SEC 19- BLK 1941 LOT 6 (MAP 44/30N) (OR 3487-1094)

### Current Values

| | |
|---|---|
| Just/Market Value: | $212,500 |
| Assessed Value: | $212,500 |
| Exemptions: | $0 |
| Taxable Value: | $212,500 |

Taxes for this parcel: SLC Tax Collector's Office ◪
Download TRIM for this parcel: Download PDF ◪



### Total Areas

| | |
|---|---|
| Finished/Under Air (SF): | 2,082 |
| Gross Area (SF): | 2,741 |
| Land Size (acres): | 0.23 |
| Land Size (SF): | 10,000 |

### Sale History

| | |
|---|---|
| Date: | Feb 14, 2013 |
| Book/Page: | 3487 / 1094 |
| Sale Code: | 0001 |
| Deed: | WD |
| Grantor: | Pauley Drywall & Construction |
| Price: | $140,000 |
| | |
| Date: | Mar 23, 2012 |
| Book/Page: | 3374 / 0690 |
| Sale Code: | 0111 |
| Deed: | QC |
| Grantor: | Jones John O |
| Price: | $100 |
| | |
| Date: | Feb 15, 2012 |
| Book/Page: | 3365 / 1487 |
| Sale Code: | 0001 |
| Deed: | WD |
| Grantor: | Marin Cassandra |

| Borrower: Cassandra Yvette Marin | | File No.: 3865 Wycoff | |
|---|---|---|---|
| Property Address: 3865 SW Wycoff Street | | Case No.: | |
| City: Port St Lucie | State: FL | | Zip: 34953 |
| Lender: Integra Realty Resources | | | |





# Anthony M. Graziano, MAI, CRE

**Integra Realty Resources**
**Miami/Palm Beach**

Dadeland Centre
9155 S. Dadeland Boulevard
Suite 1208
Miami, FL 33156

T 305.670.0001
F 305.670.2276

irr.com

## Experience

Senior Managing Director of Integra Realty Resources – Miami/Palm Beach.

Mr. Graziano has actively counseled and advised clients on the sale, leasing, valuation, management, and development of commercial real estate assets throughout the northeast and southeast U.S. since 1992.

Mr. Graziano's professional perspective is a blend of his experience and educational background which includes formal training in architecture, urban planning, macro and micro economics, real estate finance, institutional asset management, and land development. His market experience in sales, leasing, management, and valuation disciplines combine to bring practical real world answers to complex planning and development projects. He has been actively involved as a consultant and/or member of a consultant team on various major redevelopment and land use projects for public and private clients over the past 25+ years.

Mr. Graziano has specialized in consulting and valuation assignments for corporate and private clients on a wide array of complex issues related to estate and condemnation matters, title defects, environmental contamination/damages, air rights, partial and fractional interests, contract disputes, and mediation/arbitration disputes. Mr. Graziano's experience in these matters provides a comprehensive framework for effective strategic real estate consulting.

## Professional Activities & Affiliations

Advisory Board Member: Urban Land Institute (ULI) South Florida / Caribbean
Advisory Board Member: University of Miami M+RED Program
Member: Economic Roundtable - Miami Beacon Council (2012-present)
Board of Director: Integra Realty Resources, Inc. (2011-2016)
Chairman of the Board:    Integra Realty Resources, Inc. (2016-present)
Director: South Florida Chapter of the Appraisal Institute (2014-2016)
Board Member: Builders Association of South Florida (BASF) (2014-2016)
Subject Matter Expert (SME): Appraisal Practice Board, Appraisal Foundation
Member: Appraisal Institute (MAI) (2008-Present)
Member: Counselors of Real Estate (CRE) (2007-Present)
National Association of Realtors (REALTOR)
Miami Association of REALTORS Industry Analyst of the Year (2016)
Former Fellow: Royal Institute of Chartered Surveyors (FRICS) (2007-2014)
AI Leadership Development Advisory Council, March 1998 - February 2001
Lifetime Member: National Eagle Scout Association (NESA)

## Licenses

Florida, State-Certified General Real Estate Appraiser, RZ3510
New Jersey, State-Certified General Real Estate Appraiser, RG001261

## Education

University of Miami, Coral Gables, Florida 1988-1992
Degree: Bachelor of Science in Land Development and Planning, School of Architecture

New York University Real Estate Institute, New York, New York 1993-1996
Degree: Master of Science in Real Estate Development and Investment



amgraziano@irr.com    -    305.670.0001 x320

# Anthony M. Graziano, MAI, CRE

### Qualified Before Courts & Administrative Bodies

Qualified and accepted as an expert before:
US Bankruptcy Court (Newark, Southern District of Texas, Southern District of Florida)
US Federal District Court (Southern District of Florida)
FL Circuit Court (Miami-Dade, Broward, and Monroe Counties)
NJ State Tax Court
NJ Superior Court - Chancery Division
NJ Superior Court - Law Division
Various municipal planning and zoning boards throughout New Jersey and Florida
Various Taxing Authorities and Boards throughout New Jersey and Florida

**Integra Realty Resources**
**Miami/Palm Beach**

The Douglas Centre
2600 Douglas Road, Suite 801
Coral Gables, FL 33134

T 305.670.0001
F 305.670.2276

irr.com



amgraziano@irr.com    -    305.670.0001 x320

**Anthony M. Graziano, MAI, CRE, FRICS**
PROFFERED OR DISCLOSED EXPERT WITNESS REPORTS/SETTLEMENTS

| RETENTION DATE | ON BEHALF | IRR FILE # | COURT CASE NO. | COURT / VENUE | CASE NAME | RETAINED BY | TYPE OF CASE |
|---|---|---|---|---|---|---|---|
| 1/2/2015 | Defendant | 123-2015-0037 | 14-CV-22384-UU | Miami-Dade County, FL | Ray Benson & Maria Helena V. QBE Insurance Corporation | John A. Camp | Retrospective (2004-2006) analysis of market value claims against insurance company related to property |
| 9/2/2014 | Defendant | 123-2014-0194 | 13-03084CA 10 | 11th Judicial Circuit Miami-Dade, FL | Manuel Soltero V. Adorno & Yoss, LLP | Kaplan Zeena, LLP | Professional Liability suit against law firm and attorneys for malfeasance in litigation matter. |
| 2/2/2014 | Plaintiff | 123-2014-0030 | Settled | Caribbean Islands | Rainmaker Development V. A&F Bahamas, etal | VLASAC & SHMARUK, LLC | Partnership Dispute between Joint Venture in Caribbean development project (golf course, villas, and large-scale marina-commercial-retail development) |
| 11/2012 | Defendant | 123-2012-0140 | 42-2012-CA-001066 | Marion County, FL | CSX Transportation, Inc. V. Moshen Saranazi, Faith Ann Safanazi, Proverbium Hldg, LLC, USA & George Albright | NeJame, La Fay, Jancha, Ahmed, Barker, Joshi & Moreno, P.A. | Condemnation of partial interest with damages |
| 7/2012 | Confidential | 123-2012-0076 | Confidential | Broward County, FL | Ft. Lauderdale-Hollywood Int'l Airport Expansion | White & Case, LLP | Value Diminution Study to assist public agency in good faith negotiations based on airport expansion. |
| 6/2012 | Defendant | 123-2012-0070 | 10-49616-CA-40 | Miami-Dade County, FL | CB Entertainment, LLC V. South Beach Ocean Parcel | Kubicki Draper, P.A. | Construction Damages claim |
| 12/2009 | Plaintiff | 109-2009-0443 | Dept. Justice File 90-11-3-5801 | Federal District Court of Virginia | United States vs. Atlantic Wood Industries, Inc. | U.S. Department of Justice | Damages/environmental contamination dispute between United States Navy and responsible party (Atlantic Wood Industries) |



M. Quals: Graziano: Trial Lists

**Anthony M. Graziano, MAI, CRE, FRICS**
IDENTIFIED EXPERT WITNESS TESTIMONY AT DEPOSITION and/or TRIAL

| RETENTION DATE | ON BEHALF OF | TRI FILE # | COURT CASE NO. # | COURT / VENUE | CASE NAME | RETAINED BY | TYPE OF CASE |
|---|---|---|---|---|---|---|---|
| 6/2015 | Plaintiff | 123-2015-0170 | 15-008930-CA-01 | 11th Judicial Circuit Dade County, Florida (Hon. Peter R. Lopez) | Aaron Stauber & Aviva Stauber V. BH 33, LLC | Piedra & Associates, P.A. | Motion to dismiss Lis Pendens in an action to enforce contractual specific performance clause |
| 1/2015 | Defendant | 123-2015-0037 | 14-CV-22364 UU | Southern District of Florida | Ray Benson & Maria Helena Campos V. QBE Insurance Corporation | John Campos | Retrospective (2004-2006) analysis of market value claims against insurance company related to property damage claims arising from Hurricane Wilma |
| 1/2014 | Plaintiff | 123-2015-0031 | Pending | Miami-Dade County | Igor Gel V. Yacht Club at Portofino Condo Association | Weil Quaranta McGovern, P.A. | Construction defect dispute related to water-intrusion and damage-detrimental conditions analysis of |
| 10/2014 | Plaintiff | 123-2014-0226 | 08-CA-408-P | Monroe County | Ocean Bank V. Lindback, Monroe County | Ocean Bank | Deficiency claim against borrower on real estate collateral in the Florida Keys (development site plus marine related improvements) |
| 10/2014 | Defendant | 123-2014-0215 | 11-24994 CA 06 | 11th Judicial Circuit Dade County, Florida | Palm-Aire Holdings V. JRGS Investments, LLC, Jorge Garcia-Serraff and Course Drive Investments, LLC | Cole, Scott & Kissane, P.A. | Partnership dispute over valuation issues proximal to a fractured condominium project (retrospective values), and operating agreement dispute |
| 7/2014 | Plaintiff | 123-2014-0194 | 13-018022 CACE 02 | 17th Judicial Circuit Broward County, Florida | Amalia I. Irarda-Rivera V. Rivera Diagnostic Center, Inc., Obsay Rivera & Yudit Rivero | Amalia I. Iriarda-Rivera | Rent default judgment and market rental and damage analysis associated with lease default. |
| 10/2014 | Defendant | 123-2014-0159 | 2014FLL534 (Pending) | Palm Beach County | Roehm Title Resources Claim | Title Resources Guaranty Company | Title insurance claim related to before and after damage/value diminution analysis based on defined title defects not identified by Title Insurance Company |
| 4/2014 | Defendant | 123-2014-0117 | 4:14-CV-01077 (Pending) | USA District Court for the Eastern District of Missouri Eastern Division | USA V. GSA-VA St. Louis Property, LLC | Bryan Cave LLP | Condemnation of a possessory interest for a term. Retained as consulting/rebuttal expert |
| 5/2014 | Defendant | 123-2014-0114 | Pending | Miami-Dade County | Euforia Club | Rennert Bogen Mandler & Rodriguez, P.A. | Rent dispute regarding forced relocation of a nightclub, and relevant market rental value of replacement club space in Miami |
| 4/2014 | Plaintiff | 123-2014-0089 | | Broward County | Pan American Holdings Corp. V. Florida DOT Right of Way (ROW) Acquisition SR-7 | Henry Wulf, Esq. | Condemnation for R.O.W. purposes including before and after damage analysis |
| 1/2014 | Debtor | 123-2014-005 | 13-25728-BKC-RAM | US Federal Bankruptcy - Southern District of Florida - Miami Division (Hon. R. Mark) | West Airport Plaza Business Park, LLC | Counsel for the Debtor, Michael D. Seese, Esq. | Fairness Opinion and market value opinions in conjunction with Debtor's Plan for Reorganization |
| 8/2013 | Defendant | 123-2000-0016 | 02-23922-CA 09 | 11th Judicial Circuit Dade County, Florida | American Educational Enterprises, LLC v. The Board of Trustees of the Internal Improvement Trust Fund | Richard Alayon, Esq. - Alayon and Associates | Economic Damages case associated with an alleged misrepresentation or omission by seller of real property |
| 7/2013 | Plaintiff | 123-2013-0111 | CACE 08057824 (14) | 17th Judicial Circuit Broward County, Florida (Hon. Carlos A. Rodriguez) | Bayview Loan Servicing, LLC v. Kayhan Soodjani; Muhammad Mahmoodi; et al | Bayview Servicing, represented by Tabas, Freedman and Soloff; Stacey Soloff, Esq. | Deficiency Judgment on multi-family project (Dewey Street Apartments) |
| 3/2013 | Defendant | 123-2013-0105 | 11-23561-CIV - Rosenbaum | US District Court - Southern District of Florida (Hon. Rosenbaum) | United States of America v. G.K.K. etal | Richard Duvall, Holland and Knight and Jeffrey Neiman, Esq. | Condemnation claim on the 137,779 s.f. Miami Federal Bureau of Investigation (F.B.I.) building; condemnation of a possessory interest (leasehold) |
| 02/2013 | Defendant | 123-2011-0070 | 08-05650 CA 04 | 11th Judicial Circuit Dade County, Florida (Hon. Beth Bloom) | Zenaida Gomez v. City of Pinecrest | Cynthia A. Everett, Cynthia A. Everett, P.A. | Economic damage resulting from temporary taking (seizure) of private residence |
| 1/2013 | Defendant | 123-2013-0016 | 12-60950-CIV | 11th Judicial Circuit Dade County, Florida | Q Lending, Inc., Equity Financial Group, Inc., and Equity Commercial Group, Inc. v. Travelers Companies, Inc. etal | Heidi Raschke, Butler Pappas etal | Value diminution resulting from alleged mortgage fraud. |
| 11/2012 | Plaintiff | 123-2012-0128 | Pending | 11th Judicial Circuit Dade County, Florida | 2011 and 2012 Ad Valorem Tax Protest | Ken Wurtenberger, Esq., Kozevnikoff-Ostrow Ferguson | Tax protest of commercial condominium. |
| 10/19/2012 | Plaintiff | 123-2012-0111 | 2011-1107 CA-23 | 11th Judicial Circuit Dade County, Florida | Renegade at Hialeah Blvd v. Dynatech Engineering | Daniel Levin, Esq., Cole, Scott, Kissane, P.A. | Economic Damages case, diminution in value resulting from prepaid lease modification. |
| 10/12/2012 | Plaintiff | 123-2012-0109 | 11-30189 CA21 | 11th Judicial Circuit Dade County, Florida (Hon. Stanford Blake) | Yaffa Yakubov vs. Bayview at Fisher Island No 3 | Craig Minko, Esq., Cole Scott Kissane, P.A. | Market Value estimate of Fisher Island Condominium purchased under right of first refusal, economic damages claimed by Plaintiff due to contract dispute arising from association's exercise of right of first refusal |
| 8/20/2012 | Plaintiff | 123-2010-0012 | CA-02180 CA-25 | 11th Judicial Circuit Dade County, Florida | 7935 NBV, LLC v. Harbour East Development LTD, Mario Egozi, etal | Jose Casal, Esq., Holland and Knight | Deficiency judgment on 32-unit fractured condominium, substitute expert following issuance of IRR-Miami reports in 2010 and 2012. |
| 8/15/2012 | Disclosed Dual Expert | 123-2012-0072 | | Matrimonial Mediation | Vazquez v. Vazquez Matrimonial Matter | Colon and Mendoza and Robert Hertzberg, P.A. | Retained as a court-appointed third party expert to both parties to appraise (2) marital assets comprised of office, retail, single and multi-family units in FL, TN, NC, and Illinois, Bahamas |
| 7/2012 | Plaintiff | 109-2011-0199 | Pending: 2003-2014 | Tax Court of New Jersey (Hon. Patrick DeMinemida) | BASF Inc., successor Ciba Geigy Inc. vs. Township of Toms River | Phil Genuario, Garippa, etal on behalf of BASF | Challenge to multi-year appeal of $80 Million+ land assessment on contaminated superfund site in Central New Jersey |
| 3/2012 | Plaintiff | 109-2010-0172 | ATL-L-4451-08 | Superior Court of New Jersey, Law Division Atlantic County | Scot Netherlands Inc. vs. State of New Jersey Department of Environmental Protection (NJDEP) | Jay Rhatican, Connell Foley on behalf of Scot Netherlands, Inc. | Challenge to NJDEP permit denial to fill wetlands, deprivation of all reasonable investment backed expectations |
| 07/2011 | Defendant | 109-2010-0199 | MERA-3034-08 | Superior Court of New Jersey Mercer County | 460 Mercer Street, LLP and Bruckener Southern, LLC vs. Hightstown | Anexil Zarro Grimm & Aaron, P.C. Hussam Chater | Litigation-Dispute Resolution - Hightstown Zoning Challenge |
| 12/2009 | Plaintiff | 109-2009-0443 | Dept. Justice File 90-11-3-5801 | Federal District Court of Virginia | United States v.s. Atlantic Wood Industries, Inc. | U.S. Department of Justice | Damages/environmental contamination dispute between United States Navy and responsible party (Atlantic Wood Industries) |
| 12/2009 | Plaintiff | 109-2009-0377 | | Tax Court of New Jersey | Westrust/HPC Mortgage Fund v.s. City of Atlantic City | Cole, Schotz, Meisel, Forman & Leonard, P.A. Carl Rizzo, Esq. | Tax Appeals - To develop an opinion of the market value of the fee simple interest in the property |

M. Qualls: Grazian; Trial Lists



**Anthony M. Graziano, MAI, CRE, FRICS**
IDENTIFIED EXPERT WITNESS TESTIMONY AT DEPOSITION and/or TRIAL

| RETENTION DATE | ON BEHALF | IRR FILE # | COURT CASE NO. | COURT / VENUE | CASE NAME | RETAINED BY | TYPE OF CASE |
|---|---|---|---|---|---|---|---|
| 1/2009 | Secured Creditor | 1/09-2009-0439 | 3035-001 | US Bankruptcy Court - Southern District of Texas | Erickson Building | Stuart Glick, Esq., Sills, Cummis & Gross | Market Value for Bankruptcy of 140,000 SF corporate campus in Bethesda, Maryland |
| 9/2009 | Plaintiff | 1/09-2009-0123 | INA /DEPS Pending) | Tax Court of New Jersey | Bay Head Yacht Club vs. Ocean County Tax Board | John Doyle, Carluccio, Leone, Dimon, Doyle & Sacks, LLC | Tax Appeal for Bay Head Yacht Club |
| 12/2008 | Plaintiff | 1/09-2006-XXX | N/A | Tax Court of New Jersey | Mirage Atlantic City (MAC) vs. City of Atlantic City | Hank Rovitsard, Esq. | Tax Appeal at State Tax Court on 15 acre casino site adjacent to Trump Marina |
| 8/2008 | Defendant | 1/09-2006-0252 | L-2424-05 | Superior Court of New Jersey Law Division, Middlesex County | The City of South Amboy vs. Lower Main Street Development, LLC & Amboy Aggregates Joint Venture | Bathgate, Wegenar, etal | Verified complaint in condemnation |
| 6/2008 | Defendant | 1/09-2006-345 | C.A. No. OCNL-3361-06 | Superior Court of New Jersey, Law Division, Ocean County | Osbourne Associates, Melbourne Associates VI, LLC, Kingsway Realty Profit Share vs. Citta Enterprises Co., JAC Property Management etal and Eckerd Corporation | Francis X. Manning, Esq, Stradley Ronon Stevens & Young & Michael Cantioli, Esq, Partridge Snow and Hahn, both on behalf of | Dispute re: proper valuation of leasehold and sub-lessee's sandwich leasehold interest on damage claim for breach of agreement claim |
| 1/2008 | Defendant | 1/09-2006-0125- | N/A | American Arbitration Association [testimony at Arbitration conducted by Hon. Eugene Serpentelli] | Toms River Township vs. Citta Genjay Corporation | Mark Troncone, Esq., In-House Counsel to Township of Toms River | Arbitration of environmental damages claim, and counter-claim of appropriateness of zoning on 1,900 acre superfund site. |
| 11/2007 | Defendant | 1/09-2007-211 | L-0008/35-06 | Superior Court of New Jersey, Law Division | Kyle Mosteller vs. Galia Neeman | Frank Canuso, Esq, Hoagland, Longo, Moran and Dunst | Damage claim due to loss of trees and screening between urban properties |
| 6/2007 | Plaintiff | 1/09-2007-0134 | 3:07-CV-2322 | Superior Court of New Jersey, Chancery Division Monmouth County | Silver Lakes Inc. vs. Township of Freehold Inc. | Christopher Hanlon, Esq, Hanlon and Niemann | Challenge to validity of Rent Control Ordinance as transfer of property rights from Lessor to Lessee. |
| 6/2007 | Plaintiff | 1/09-2007-0173 | | Federal District Court of Virginia | Laurelwood Homes, LLC vs. United States Department of Navy | William A. Shook Esq. | Leasehold interest in the property, breach of lease claim on behalf of leasehold owner (Laurelwood) claiming breach of lease and damages |
| 12/2006 | Defendant | 1/09-2006-0192 | CAM - L - 9731-05 | Superior Court of New Jersey, Chancery Division, Camden County | Brandywine Operating Partnership, LP vs. UFCW Local 56 | Brett Last, Esq, O'Brien, Belland and Bushinsky | Estimate the value of damages to landlord on breach of above-market lease |
| 8/2006 | Defendant | 1/09-2006-0257 | | Superior Court of New Jersey, Law Division | County Line & Browns Bridge, Jackson Township | Levin, Shea, Pfeffer, PA, Steven Pfeffer | To develop an opinion of the hypothetical market value of the fee simple interest in the property |
| 2/2006 | Defendant | 1/09-2006-0044 | OCNL-2482-04 | Ocean Superior Court, Ocean County Courthouse | Carl Brooks vs. K. Hovanian | Ronan, Tuzzio & Giannone, Linda Olsen | To estimate value diminution to the subject property as a result of various issues asserted by the property owner in conjunction with pending litigation between the property owner, and the subject developer K. Hovnanian @ Sea Oaks |
| 10/2005 | Defendant | 1/09-2005-0315 | OCNL-1810-5 | Superior Court of New Jersey, Law Division Ocean County | Atlantic City Electric Company d/b/a Conectiv Power Delivery, a regulated public utility in the state of New Jersey vs. AC1 Manahawkin, LLC formerly and/or Armstrong | Flaster/Greenberg, PC, David R. Oberlander, Esq. | Compensation for the taking of an easement for construction and maintenance of a 230kv transmission line and towers by Atlantic City Electric |
| 9/2005 | Defendant | 1/09-2005-0214 | MONL-2609-05 | Superior Court of New Jersey Law Division: Monmouth County | Township of Howell vs. George Harms Construction Co., Inc. etal | Connell & Foley, LLP Kevin Coakley, Esq. | To develop an opinion of the market value of the fee simple estate of the property |
| 8/2003 | Defendant | 1/09-2003-0282 | | Superior Court of New Jersey Chancery Division, Family Part, Monmouth County | Giuffre vs. Giuffre | Louis & Wolf - Frank A. Louis | To develop an opinion of the market value of the Fee Simple estate of five properties for purposes of equitable distribution of marital assets |
| 7/2003 | Defendant | 1/09-2003-0203 | OCN-C-78-03 | Superior Court of New Jersey, Chancery Division, Ocean County | West, etal vs. Pompaino, etal | Stephen E. Smith, Esq | To develop an opinion of the diminution in value due to a loss of useable land area |
| 6/2003 | Plaintiff | 1/09-2003-0161 | OCN-C-316-02 | Superior Court of New Jersey Law Division, Ocean County | Eugene M. Lord vs. Donald W. Rinaldo | Lombardi & Lombardi Scott Telson | To develop an opinion of the market value of the fee simple estate of the property |
| 4/2003 | Defendant | 1/09-2003-0128 | FM-15-468-03-C | Superior Court of New Jersey, Chancery Division, Family Part Ocean County | Vincent Urbank vs. Lisa Urbank | Marianna Pontoriero, Esq. | Litigation-Matrimonial |
| 2/2002 | Plaintiff | 1/09-2002-0055 | | | Shenandoah Mobile Home Park | Windels Marx Lane & Mittendorf, LLP - William Cagney | Inverse Condemnation - Rent Control Ordinance |
| 4/2001 | Claimant | 1/09-2001-0169 | NJ-2824-00 | Superior Court of New Jersey, Chancery Division Middlesex County | DeForest John Ely and Kimberle A. Ely, h/w | First American Title Insurance Co. Jack Milkis | To derive an opinion of the fair compensation of the fee simple estate, subject to the temporary title encumbrance |
| 3/1999 | Defendant | 1/09-1999-0062 | | US Bankruptcy Court - District of Newark | Georgetown Apartments | Emmes & Co., Andrew Schwarz | To estimate the market value of the Leased Fee Estate of the property, inclusive of 28 Apartment complexes through NY, NJ, PA, and MD. |
| 12/1997 | Defendant | LKW-257-3186 | FM-15-1465-94 | Superior Court of New Jersey, Chancery Division, Family Part, Ocean County | Lisa Franklin, etal vs. Donald Franklin, etal | Greenbaum, Rowe, Smith, Ravin, Davis & Himmel LLP Robert S. Underhill | Estimating the market value of the leased fee interest in the property |
| 8/1984 | Creditor | HUD-XX | | US Bankruptcy Court - District of Newark | Hudson Marina Association vs. Emmes & Co. | | Bankruptcy Reorganization of 200+ slip failed marina/dockominium condo |



# EXHIBIT F21

**Integra Realty Resources**
Miami/Palm Beach

**Appraisal Report & Post-Remediation Damage Related to Chinese Drywall**

**Deeg, David R. & Hooker, Deborah M.**
Hypothetical Market Value "As If" Remediated
516 SW Akron Avenue
Stuart, Martin County, Florida 34994
Client Reference: 20

**Prepared For:**
Colson Hicks Eidson

**Effective Date of the Appraisal:**
May 2, 2016

**Report Format:**
Appraisal Report

**IRR - Miami/Palm Beach**
File Number: 123-2018-0275





**Deeg, David R. & Hooker, Deborah M.**
516 SW Akron Avenue
Stuart, Florida



| Integra Realty Resources | In Miami | In Orlando | In Naples/Sarasota |
|---|---|---|---|
| Miami | Dadeland Centre | The Magnolia Building | Horseshoe Professional Park |
| Orlando | 9155 South Dadeland Blvd. | 326 N. Magnolia Ave. | 2770 Horseshoe Drive S. |
| Southwest Florida | Suite 1208 | | Suite 3 |
| | Miami, FL 33156 | Orlando, FL 32801 | Naples, FL 34104 |
| www.irr.com | (305) 670-0001 | (407) 843-3377 | (239)-643-6888 |

January 24, 2019

Patrick S. Montoya
Partner
Colson Hicks Eidson
255 Alhambra Circle, Penthouse
Coral Gables, FL 33134

SUBJECT:      Hypothetical Market Value "As If" Remediated
Case No 11-22408-Civ-COOKE
United States District Court Southern District of Florida in the matter of
Eduardo and Carmen Amorin, et al. individually and on behalf of others situated
similarly v. Taishan Gypsum Co., LTD., f/k/a Shandong Taiche Dongxin Co. Ltd., et al
Priority Claimant Case at:
Deeg, David R. & Hooker, Deborah M.
516 SW Akron Avenue
Stuart, Martin County, Florida 34994
Client Reference: 20
IRR - Miami/Palm Beach File No. 123-2018-0275

Dear Mr. Montoya:

Integra Realty Resources – Miami/Palm Beach submits the following damage estimate in the referenced property as of the effective date assuming all remediation was completed by an appropriate contractor with experience and credentials in remediating defective drywall.

The report is intended to comply the Uniform Standards of Professional Appraisal Practice (USPAP). It presents summary discussions of the data, reasoning, and analysis that were used in the appraisal process to develop the opinions. Additional information is contained within our workfile.

The findings will form the basis of expert witness testimony in the above referenced case.

Case 2:09-md-02047-EEF-MBN Document 22380-62 Filed 12/02/19 Page 92 of 130
Case 1:11-cv-22408-MGC Document 281-21 Entered on FLSD Docket 05/13/2013 Page 5 of 43

Identification of Subject                                                                 2

## Identification of Subject

The subject of this report is a single-family Key West style home configured with 3 bedroom and 3.5 baths with 2,421 SF under air-conditioning. The subject property was built in 2006 and is located on a 3,223 SF site.

## Purpose of the Appraisal

The purpose of the appraisal is to develop an opinion of the diminution in value and related damages, collectively "the damages" as of the effective date of the appraisal, May 2, 2016. The damage estimate assumes the defective drywall remediation was completed and does not consider the cost to cure. The date of the report is January 24, 2019. The appraisal is valid only as of the stated effective date or dates.

## Intended Use and User

The intended use of the appraisal is for litigation purposes. The client, Colson Hicks Eidson and related co-counsel, Plaintiff and the Court are the intended users. Integra Realty Resources – Miami/Palm Beach is not responsible for unauthorized use of this report.

## Most Recent Sale History

The most recent closed sale of the subject is summarized as follows:

| Most Recent Subject Sale (Closed) | |
| --- | --- |
| Sale Date (Most Recent) | October 10, 2007 |
| Seller | Treasure Coast Communities |
| Buyer | Deeg, David R. & Hooker, Deborah M. |
| Sale Price | $400,500 |
| Recording Instrument Number | 2043812 |
| Disposition Details | Original sale of home from builder |

To the best of our knowledge, no other sale or transfer of ownership has taken place within a three-year period prior to the effective appraisal date.

The property was listed for sale in January 2016 with an asking price of $369,000 with full disclosure of un-remediated Chinese drywall in the listing. The sale closed May 2016 for $330,000 un-remediated.

After remediation, the property was listed for sale in December 2016 for $579,000 and sold January 2017 for $530,000. The remediation was disclosed, and the marketing time was one month.

## Pending Transactions

To the best of our knowledge, the property is not subject to an agreement of sale or an option to buy, nor is it listed for sale, as of the effective appraisal date.



Case 2:09-md-02047-EEF-MBN Document 22380-62 Filed 12/02/19 Page 93 of 130
Case 1:11-cv-22408-MGC Document 201-21 Entered on FLSD Docket 05/13/2019 Page 6 of 43

Definition of Market Value                                                                    3

## Definition of Market Value

The following definition of market value is used by agencies that regulate federally insured financial institutions in the United States:

"The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:

- Buyer and seller are typically motivated;

- Both parties are well informed or well advised, and acting in what they consider their own best interests;

- A reasonable time is allowed for exposure in the open market;

- Payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and

- The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale."

*(12 C.F.R. Part 34.42(g); 55 Federal Register 54696, August 24, 1990, as amended at 57 Federal Register 12202, April 9, 1992, 59 Federal Register 29499, June 7, 1994)*

## Definition of Retrospective Value Opinion

A value opinion effective as of a specified historical date. The term retrospective does not define a type of value.  Instead, it identifies a value opinion as being effective at some specific prior date. Value as of a historical date is frequently sought in connection with property tax appeals, damage models, lease renegotiation, deficiency judgements, estate tax, and condemnation.  Inclusion of the type of value with this term is appropriate, e.g. "retrospective market value opinion".

(*Source: The Dictionary of Real Estate Appraisal – 6th Edition; Appraisal Institute, 200 W. Madison, Suite 1500, Chicago, IL 60606, www.appraisalinstitute.org*)

## Definition of Hypothetical Condition

1. A condition that is presumed to be true when it is known to be false. (SVP)

2. A condition, directly related to a specific assignment, which is contrary to what is known by the appraiser to exist on the effective date of the assignment results, but is used for the purpose of analysis. Comment: Hypothetical conditions are contrary to known facts about physical, legal, or economic characteristics of the subject property; or about conditions external to the property, such as market conditions or trends; or about the integrity of date used in an analysis. (USPAP, 2016-2017 ed.)

(*Source: The Dictionary of Real Estate Appraisal – 6th Edition; Appraisal Institute, 200 W. Madison, Suite 1500, Chicago, IL 60606, www.appraisalinstitute.org*)



Case 2:09-md-02047-EEF-MBN Document 22380-62 Filed 12/02/19 Page 94 of 130
Case 1:11-cv-22408-MGC Document 201-21 Entered on FLSD Docket 05/13/2019 Page 7 of 43

Scope of Work                                                                                     4

## Scope of Work

Integra was retained as an expert in the captioned matter of this report to address potential damages related to the subject property, specifically excluding the costs to cure.

Integra was retained to estimate any post remediation damages, and conducted a separate study to determine whether damages persist following defective drywall remediation. The result of that study are outlined within Integra's report entitled "Market Analysis of the Post Remediation Impact of Chinese Drywall on Residential Property Values in Florida." The results of that study are incorporated by reference herein.

In addition, our damage model was requested to include a rental value analysis of the Priority Claimant residence, and a determination of the relevant economic damage associated with having to vacate the home for a period of time (and secure alternate living arrangements) during the remediation. As of the effective date, the claimant would have suffered the damages.

Integra established individual case files on each Priority Claimant residence, and retained professional assistance from qualified residential appraisers in each jurisdiction. Integra managed the process of these retrospective appraisals, interfaced with the residential appraisers, and reviewed the form appraisals completed on each assignment including review of the comparables, adjustments, and form narrative to establish the market value of the residence unimpaired as of the effective date.

Integra professionals reviewed various materials exchanged as part of this case and considered materials that were relevant to the market valuation. These materials were downloaded from the attorney's dropbox and are retained within our workfile.

Integra's participation in and review of the final appraised values results in a conclusion of the market value of the home defined as "Hypothetical Market Value" assuming defective drywall had never been identified within the subject property. This forms the basis of the unimpaired market value as of the effective date.

All properties and comparables were inspected by the local residential appraisers without the benefit of interior inspections. Adjustments for condition and age at the time of sale are based upon photographs contained within the various MLS databases, paired analysis from amongst the comparables, and for the subject, were based on photos, if available. In the event a property had not been remediated as of the effective date, we assume average condition for the property in the market as of the effective date.

The damage analysis expressed within this report follows the peer teachings and market accepted processes for damage analysis. However, the damage analysis only represents a <u>portion of the overall damages</u> because we were specifically requested to exclude the consideration of the costs to cure. This represents a relevant component of damage in this case for property that factually have not been remediated.

Integra's role was strictly to identify post remediation value damage (sometime referred to as a "stigma") and estimate the relevant rental value and moving costs as a proxy for the temporary loss of use during remediation.

Deeg, David R. & Hooker, Deborah M.



Case 2:09-md-02047-EEF-MBN Document 22380-62 Filed 12/02/19 Page 95 of 130
Case 1:11-cv-22408-MGC Document 281-21 Entered on FLSD Docket 05/13/2015 Page 8 of 43

Highest and Best Use 5

## Significant Appraisal Assistance

In addition to Anthony M. Graziano, MAI ,CRE, principal, it is acknowledged that Peter G. Kayworth, Yuliya Georgieva, Joseph Melloni and Paul L. Jones of IRR-Miami/Palm Beach were involved in the assignment consisting of conducting research on the subject and transactions involving comparable properties, performing appraisal analyses and assisting in report writing, under the supervision of the persons signing the report. The local residential appraisers are also named as providing significant assistance, including exterior inspection of the properties and comparables, application of their local knowledge in adjusting and estimating the unimpaired value, and developing the form report valuations incorporated herein.

## Prior Services

USPAP requires appraisers to disclose to the client any other services they have provided in connection with the subject property in the prior three years, including valuation, consulting, property management, brokerage, or any other services. We have not performed any services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

## Valuation Methodology

Appraisers usually consider the use of three approaches to value when developing a market value opinion for real property. These are the cost approach, sales comparison approach, and income capitalization approach. The valuations consider the only relevant approach for residential valuation, the sales comparison analysis. The cost and income approach are not considered relevant.

The sales comparison approach is the most applicable valuation method since there is an active market for similar properties, and sufficient sales data is available for analysis. Additionally, this approach directly considered the prices of alternative properties having similar utility.

## Highest and Best Use

The highest and best use of the subject as if vacant for development of a single-family home which is physically possible, legally permissible as per zoning, financially feasible and maximally productive.

The highest and best use of the subject as improved is for continued use as a single-family home with no other use that could reasonably be expected to provide a higher value to the land as if vacant. The improvements contribute to the over all value to a greater extent than the land value alone, and therefore, continued use as improved concluded to be maximally productive and the highest and best use of the property.

## Conclusion of Value

The Hypothetical market value appraisal as of the effective date, reflective of a traditional form appraisal, is contained within the Addenda of this report. This value us hypothetical since it assumes that defective drywall had never been present at the subject property.



Case 2:09-md-02047-EEF-MBN Document 22380-62 Filed 12/02/19 Page 96 of 130
Case 1:11-cv-22408-MGC Document 201-21 Entered on FLSD Docket 05/13/2019 Page 9 of 43

Conclusion of Value                                                                 6

Against this value, we then apply the Post Impairment Discount as a percentage of unimpaired value as developed within the Integra report studying this issue. This represents a compensable damage resulting from the prior existence of defective drywall in the home as of the effective date.

In addition, each appraisal (unimpaired) reflects a rental value analysis as of the effective date. This rental value analysis concludes to the equivalent market rent for the home (unimpaired) and reflects a proxy for the probable actual costs the homeowner would experience by having to move-out of the primary residence during remediation.

The homeowner would also have to incur moving /storage costs twice, once before and once after remediation. Professional packing, moving and storage for an average home is estimated at $1,500 per move, or $3,000 in total. This amount is added to the loss of use estimate as an additional damage.

This loss of use calculation does not consider the costs of alternative housing or other tangible costs potentially incurred for damages suffered between the date of discovery and the date of value. These damages, if applicable, are being estimated by a separate expert (Elkins et al). To the extent Elkins posits costs which are duplicative or actual costs that are greater or less, some minor adjustments to Integra's damage model may be required.

The timeframe for remediation (months of actual loss) could vary depending upon the permitting process in the specific community, the availability of labor, and the size of the home. Integra reviewed a number of transactions that were remediated by investors and found the typical timeframe between purchase of an unremediated home and listing[1] of the home post-remediation to be 3-6 months.

Larger more expansive homes would be expected to take longer to remediate since more materials are required, and in higher-priced homes, supplies would typically be custom-ordered. Therefore, we apply the following timeframes based on the subject's size and price range:

< $150,000 Home up to 2,000+/- SF          4 months

$150,000 - $750,000 home up to 4,000 SF     6 months

$750,000+ home up over 4,000 SF             9 months

---

[1] The "listing date" is most relevant since a homeowner conducting their own remediation can move back in once the home is ready for sale (ie- coinciding with a final certificate of occupancy).



Case 2:09-md-02047-EEF-MBN Document 22380-62 Filed 12/02/19 Page 97 of 130
Case 1:11-cv-22408-MGC Document 291-21 Entered on FLSD Docket 05/13/2019 Page 10 of 43

Conclusion of Value                                                                                                                                    7

The following shows our final estimate of damages as of the effective date, and assuming costs to cure (i.e. – to conduct the remediation) have been expended.

**Conclusions of Damage**

| | | | |
|---|---|---|---|
| Hypothetical Value (Unimpaired - Before) | | $450,000 | |
| Market Impairment Discount (As if Remediated) | | 10% | |
| | | | |
| Post Impairment Damage ($) | | $45,000 | |
| **Hypothetical Value As IF Remediated** | | | **$405,000** |
| | | | |
| Post Remediation Damages as of Effective Date | | | **$45,000** |
| Loss of Use: | | | |
|   Rental Rate ($/Month) | **$2,400** | | |
|   Moving & Storage Costs | | $3,000 | |
|   Loss of Use Subject (# Months) | 6x | $14,400 | |
|     Subject Total | | | **$17,400** |
| | | | |
| **Post Remediation Damage** | | | **$62,400** |

Note: Does not consider "cost to cure". Assumes remediation was completed by qualified contractor who warranties the work.

The property was listed for sale in January 2016 with an asking price of $369,000 with full disclosure of un-remediated Chinese drywall in the listing. The sale closed May 2016 for $330,000 un-remediated. After remediation, the property was listed for sale in December 2016 for $579,000 and sold January 2017 for $530,000. The remediation was disclosed, and the marketing time was one month.

Deeg, David R. & Hooker, Deborah M.



## Certification

We certify that, to the best of our knowledge and belief:

1. The statements of fact contained in this report are true and correct.

2. The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are our personal, impartial, and unbiased professional analyses, opinions, and conclusions.

3. We have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.

4. We have not performed any services, as an appraiser or in any other capacity, regarding the property that is the subject of this report within the three-year period immediately preceding acceptance of this assignment.

5. We have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

6. Our engagement in this assignment was not contingent upon developing or reporting predetermined results.

7. Our compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

8. Our analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice as well as applicable state appraisal regulations.

9. The reported analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute.

10. The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

11. Anthony M. Graziano, MAI, CRE did not make a personal inspection of the property that is the subject of this report. Chad F. Stites has personally inspected the subject.

12. Significant real property appraisal assistance was provided by Peter G. Kayworth, Yuliya Georgieva, Joseph Melloni and Paul L. Jones. Additionally, real estate assistance was provided by various Valucentric employees and subcontractors, including: John Barcelo, Angela Barcelo, Fred Stites, Carlos Fong, Sarah D. Wilson and Rob Baird.

13. We have experience in appraising properties similar to the subject and are in compliance with the Competency Rule of USPAP.

14. As of the date of this report, Anthony M. Graziano, MAI, CRE, has completed the continuing education program for Designated Members of the Appraisal Institute.

Anthony M. Graziano, MAI, CRE
Senior Managing Director - Miami
State-Certified General RE Appraiser
FL Certificate # RZ#3510

Case 2:09-md-02047-EEF-MBN Document 22380-62 Filed 12/02/19 Page 99 of 130
Case 1:11-cv-22408-MGC Document 291-11 Entered on FLSD Docket 05/13/2019 Page 12 of 43

Assumptions and Limiting Conditions                                                9

## Assumptions and Limiting Conditions

This appraisal and any other work product related to this engagement are limited by the following standard assumptions, <u>except as otherwise noted in the report</u>:

1. The title is marketable and free and clear of all liens, encumbrances, encroachments, easements and restrictions. The property is under responsible ownership and competent management and is available for its highest and best use.

2. There are no existing judgments or pending or threatened litigation that could affect the value of the property.

3. There are no hidden or undisclosed conditions of the land or of the improvements that would render the property more or less valuable. Furthermore, there is no asbestos in the property.

4. The revenue stamps placed on any deed referenced herein to indicate the sale price are in correct relation to the actual dollar amount of the transaction.

5. The property is in compliance with all applicable building, environmental, zoning, and other federal, state and local laws, regulations and codes.

6. The information furnished by others is believed to be reliable, but no warranty is given for its accuracy.

This appraisal and any other work product related to this engagement are subject to the following limiting conditions, except as otherwise noted in the report:

1. An appraisal is inherently subjective and represents our opinion as to the value of the property appraised.

2. The conclusions stated in our appraisal apply only as of the effective date of the appraisal, and no representation is made as to the effect of subsequent events.

3. No changes in any federal, state or local laws, regulations or codes (including, without limitation, the Internal Revenue Code) are anticipated.

4. No environmental impact studies were either requested or made in conjunction with this appraisal, and we reserve the right to revise or rescind any of the value opinions based upon any subsequent environmental impact studies. If any environmental impact statement is required by law, the appraisal assumes that such statement will be favorable and will be approved by the appropriate regulatory bodies.

5. Unless otherwise agreed to in writing, we are not required to give testimony, respond to any subpoena or attend any court, governmental or other hearing with reference to the property without compensation relative to such additional employment.

6. We have made no survey of the property and assume no responsibility in connection with such matters. Any sketch or survey of the property included in this report is for illustrative purposes only and should not be considered to be scaled accurately for size. The appraisal covers the property as described in this report, and the areas and dimensions set forth are assumed to be correct.

Deeg, David R. & Hooker, Deborah M.



7.    No opinion is expressed as to the value of subsurface oil, gas or mineral rights, if any, and we have assumed that the property is not subject to surface entry for the exploration or removal of such materials, unless otherwise noted in our appraisal.

8.    We accept no responsibility for considerations requiring expertise in other fields. Such considerations include, but are not limited to, legal descriptions and other legal matters such as legal title, geologic considerations such as soils and seismic stability; and civil, mechanical, electrical, structural and other engineering and environmental matters. Such considerations may also include determinations of compliance with zoning and other federal, state, and local laws, regulations and codes.

9.    The distribution of the total valuation in the report between land and improvements applies only under the reported highest and best use of the property. The allocations of value for land and improvements must not be used in conjunction with any other appraisal and are invalid if so used. The appraisal report shall be considered only in its entirety. No part of the appraisal report shall be utilized separately or out of context.

10.   Neither all nor any part of the contents of this report (especially any conclusions as to value, the identity of the appraisers, or any reference to the Appraisal Institute) shall be disseminated through advertising media, public relations media, news media or any other means of communication (including without limitation prospectuses, private offering memoranda and other offering material provided to prospective investors) without the prior written consent of the persons signing the report.

11.   Information, estimates and opinions contained in the report and obtained from third-party sources are assumed to be reliable and have not been independently verified.

12.   Any income and expense estimates contained in the appraisal report are used only for the purpose of estimating value and do not constitute predictions of future operating results.

13.   If the property is subject to one or more leases, any estimate of residual value contained in the appraisal may be particularly affected by significant changes in the condition of the economy, of the real estate industry, or of the appraised property at the time these leases expire or otherwise terminate.

14.   Unless otherwise stated in the report, no consideration has been given to personal property located on the premises or to the cost of moving or relocating such personal property; only the real property has been considered.

15.   The current purchasing power of the dollar is the basis for the values stated in the appraisal; we have assumed that no extreme fluctuations in economic cycles will occur.

16.   The values found herein are subject to these and to any other assumptions or conditions set forth in the body of this report but which may have been omitted from this list of Assumptions and Limiting Conditions.

17.   The analyses contained in the report necessarily incorporate numerous estimates and assumptions regarding property performance, general and local business and economic conditions, the absence of material changes in the competitive environment and other matters. Some estimates or assumptions, however, inevitably will not materialize, and unanticipated events and circumstances may occur; therefore, actual results achieved during



Case 2:09-md-02047-EEF-MBN   Document 22380-62   Filed 12/02/19   Page 101 of 130
Case 1:51-cv-22408-MGC   Document 201-21   Entered on FLSD Docket 05/13/2019   Page 14 of 43

Assumptions and Limiting Conditions                                                                11

the period covered by our analysis will vary from our estimates, and the variations may be material.

18.   The Americans with Disabilities Act (ADA) became effective January 26, 1992. We have not made a specific survey or analysis of the property to determine whether the physical aspects of the improvements meet the ADA accessibility guidelines. We claim no expertise in ADA issues, and render no opinion regarding compliance of the subject with ADA regulations. Inasmuch as compliance matches each owner's financial ability with the cost to cure the non-conforming physical characteristics of a property, a specific study of both the owner's financial ability and the cost to cure any deficiencies would be needed for the Department of Justice to determine compliance.

19.   The appraisal report is prepared for the exclusive benefit of the Client, its subsidiaries and/or affiliates. It may not be used or relied upon by any other party. All parties who use or rely upon any information in the report without our written consent do so at their own risk.

20.   No studies have been provided to us indicating the presence or absence of hazardous materials on the subject property or in the improvements, and our valuation is predicated upon the assumption that the subject property is free and clear of any environment hazards including, without limitation, hazardous wastes, toxic substances and mold. No representations or warranties are made regarding the environmental condition of the subject property. Integra Realty Resources – Miami/Palm Beach, Integra Realty Resources, Inc., Integra Strategic Ventures, Inc. and/or any of their respective officers, owners, managers, directors, agents, subcontractors or employees (the "Integra Parties"), shall not be responsible for any such environmental conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because we are not experts in the field of environmental conditions, the appraisal report cannot be considered as an environmental assessment of the subject property.

21.   The persons signing the report may have reviewed available flood maps and may have noted in the appraisal report whether the subject property is located in an identified Special Flood Hazard Area. We are not qualified to detect such areas and therefore do not guarantee such determinations. The presence of flood plain areas and/or wetlands may affect the value of the property, and the value conclusion is predicated on the assumption that wetlands are non-existent or minimal.

22.   Integra Realty Resources – Miami/Palm Beach is not a building or environmental inspector. Integra Miami/Palm Beach does not guarantee that the subject property is free of defects or environmental problems. Mold may be present in the subject property and a professional inspection is recommended.

23.   The appraisal report and value conclusions for an appraisal assume the satisfactory completion of construction, repairs or alterations in a workmanlike manner.

24.   It is expressly acknowledged that in any action which may be brought against any of the Integra Parties, arising out of, relating to, or in any way pertaining to this engagement, the appraisal reports, and/or any other related work product, the Integra Parties shall not be responsible or liable for any incidental or consequential damages or losses, unless the appraisal was fraudulent or prepared with intentional misconduct. It is further acknowledged



Case 2:09-md-02047-EEF-MBN Document 22380-62 Filed 12/02/19 Page 102 of 130
Case 1:11-cv-22408-MGC Document 291-21 Entered on FLSD Docket 05/13/2019 Page 15 of 43

Assumptions and Limiting Conditions                                                                                    12

that the collective liability of the Integra Parties in any such action shall not exceed the fees paid for the preparation of the appraisal report unless the appraisal was fraudulent or prepared with intentional misconduct. Finally, it is acknowledged that the fees charged herein are in reliance upon the foregoing limitations of liability.

25.     Integra Realty Resources – Miami/Palm Beach, an independently owned and operated company, has prepared the appraisal for the specific intended use stated elsewhere in the report. The use of the appraisal report by anyone other than the Client is prohibited except as otherwise provided. Accordingly, the appraisal report is addressed to and shall be solely for the Client's use and benefit unless we provide our prior written consent. We expressly reserve the unrestricted right to withhold our consent to your disclosure of the appraisal report or any other work product related to the engagement (or any part thereof including, without limitation, conclusions of value and our identity), to any third parties. Stated again for clarification, unless our prior written consent is obtained, no third party may rely on the appraisal report (even if their reliance was foreseeable).

26.     The conclusions of this report are estimates based on known current trends and reasonably foreseeable future occurrences. These estimates are based partly on property information, data obtained in public records, interviews, existing trends, buyer-seller decision criteria in the current market, and research conducted by third parties, and such data are not always completely reliable. The Integra Parties are not responsible for these and other future occurrences that could not have reasonably been foreseen on the effective date of this assignment. Furthermore, it is inevitable that some assumptions will not materialize and that unanticipated events may occur that will likely affect actual performance. While we are of the opinion that our findings are reasonable based on current market conditions, we do not represent that these estimates will actually be achieved, as they are subject to considerable risk and uncertainty. Moreover, we assume competent and effective management and marketing for the duration of the projected holding period of this property.

27.     All prospective value opinions presented in this report are estimates and forecasts which are prospective in nature and are subject to considerable risk and uncertainty. In addition to the contingencies noted in the preceding paragraph, several events may occur that could substantially alter the outcome of our estimates such as, but not limited to changes in the economy, interest rates, and capitalization rates, behavior of consumers, investors and lenders, fire and other physical destruction, changes in title or conveyances of easements and deed restrictions, etc. It is assumed that conditions reasonably foreseeable at the present time are consistent or similar with the future.



# Addenda



File No. 516 Akron

APPRAISAL OF



LOCATED AT:

516 SW Akron Avenue
Stuart, FL  34994

FOR:

Integra Realty Resources
9155 S. Dadeland Blvd, Ste 1208
Miami, FL  33156

BORROWER:

David Deeg, Deborah Deeg

AS OF:

May 2, 2016

BY:

C. F. Stites, SRA



File No. 516 Akron

Valcentric LLC
Integra Realty Resources
9155 S. Dadeland Blvd, Ste 1208
Miami, FL 33156

File Number: 516 Akron

In accordance with your request, I have appraised the real property at:

516 SW Akron Avenue
Stuart, FL 34994

The purpose of this appraisal is to develop an opinion of the market value of the subject property, as improved.
The property rights appraised are the fee simple interest in the site and improvements.

In my opinion, the market value of the property as of May 2, 2016                                    is:

$450,000
Four Hundred Fifty Thousand Dollars

The attached report contains the description, analysis and supportive data for the conclusions,
final opinion of value, descriptive photographs, limiting conditions and appropriate certifications.

C. F. Stites, SRA

## Exterior-Only Inspection Residential Appraisal Report

File No. 516 Akron

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

### SUBJECT

| | |
|---|---|
| Property Address 516 SW Akron Avenue | City Stuart  State FL  Zip Code 34994 |
| Borrower David Deeg, Deborah Deeg | Owner of Public Record N/A  County Martin |
| Legal Description Lot 8, Stuart Cay | |
| Assessor's Parcel # 05-38-41-028-000-00080-0 | Tax Year 2016  R.E. Taxes $ 3,764 |
| Neighborhood Name Stuart Cay/Downtown Stuart | Map Reference 05/38/41  Census Tract 0007.00 |

Occupant [X] Owner [ ] Tenant [ ] Vacant  Special Assessments $ 0  [ ] PUD  HOA $ 148  [ ] per year [X] per month
Property Rights Appraised [X] Fee Simple [ ] Leasehold [ ] Other (describe)
Assignment Type [ ] Purchase Transaction [ ] Refinance Transaction [X] Other (describe) VALUATION AS OF RETROSPECTIVE DATE 05/02/2016
Lender/Client Integra Realty Resources  Address 9155 S. Dadeland Blvd, Ste 1208, Miami, FL 33156
Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? [X] Yes [ ] No
Report data source(s) used, offering price(s), and date(s). DOM 87;RegMLS#TX-385902 with list date 1/07/2016 at $369,000 with 87 DOM and sold 5/03/2016 at $330,000 in a conventional loan transaction. No other listings in the previous 12 months.

### CONTRACT

I [ ] did [ ] did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $  Date of Contract  Is the property seller the owner of public record? [ ] Yes [ ] No  Data Source(s)
Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? [ ] Yes [ ] No
If Yes, report the total dollar amount and describe the items to be paid.

### NEIGHBORHOOD

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | One-Unit Housing Trends | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|
| Location [ ] Urban [X] Suburban [ ] Rural | | Property Values [ ] Increasing [X] Stable [ ] Declining | | PRICE  AGE | | One-Unit | 55 % |
| Built-Up [X] Over 75% [ ] 25-75% [ ] Under 25% | | Demand/Supply [ ] Shortage [X] In Balance [ ] Over Supply | | $(000)  (yrs) | | 2-4 Unit | 1 % |
| Growth [ ] Rapid [X] Stable [ ] Slow | | Marketing Time [X] Under 3 mths [ ] 3-6 mths [ ] Over 6 mths | | 140 Low  1 | | Multi-Family | 12 % |
| Neighborhood Boundaries The subject neighborhood is the area north of Federal Hwy, south of the | | | | 790 High  99 | | Commercial | 22 % |
| intracoastal waterway, between Federal Hwy on the west and Memorial Park on the east. | | | | 330 Pred.  45 | | Other Vac | 10 % |

Neighborhood Description Older neighborhood near downtown Stuart in close proximity to schools, places of worship, and shopping. Highway access is available within a few blocks. The downtown CBD is within walking distance with other work centers within 10 miles. Mixture of bungalow and ranch-style houses on small lots with multi-family including duplex, apt, condo and townhouse.

Market Conditions (including support for the above conclusions) Stable suburban neighborhood near all vital services. No adverse conditions were observed. Only minimal REO activity was noted in the area. Agents report good market demand for area properties. Readily available mortgage financing primarily conventional and bank transactions.

### SITE

Dimensions 27.34x22.54x82.75x39.51x73.08  Area 3223 sf  Shape Irregular  View B;Wtr;Twnhouse
Specific Zoning Classification RS  Zoning Description Residential single family
Zoning Compliance [X] Legal [ ] Legal Nonconforming (Grandfathered Use) [ ] No Zoning [ ] Illegal (describe)
Is the highest and best use of the subject property as improved (or as proposed per plans and specifications) the present use? [X] Yes [ ] No  If No, describe.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements—Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | | Water | [X] | | Street Pavers | | [X] |
| Gas | [ ] | None | Sanitary Sewer | [X] | | Alley None | | |

FEMA Special Flood Hazard Area [ ] Yes [X] No  FEMA Flood Zone X  FEMA Map # 12085C0134G  FEMA Map Date 03/16/2015
Are the utilities and off-site improvements typical for the market area? [X] Yes [ ] No  If No, describe.
Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? [ ] Yes [X] No  If Yes, describe. Private street for this development. HOA dues cover street maintenance while HOA docs cover roadway use issues.

### IMPROVEMENTS

Source(s) Used for Physical Characteristics of Property [ ] Appraisal Files [ ] MLS [X] Assessment and Tax Records [ ] Prior Inspection [ ] Property Owner
[ ] Other (describe)  Data Source(s) for Gross Living Area County Property Appraiser

| GENERAL DESCRIPTION | GENERAL DESCRIPTION | Heating / Cooling | Amenities | Car Storage |
|---|---|---|---|---|
| Units [X] One [ ] One with Accessory Unit | [ ] Concrete Slab [ ] Crawl Space | [ ] FWA [ ] HWBB | Fireplace(s) # 0 | [ ] None |
| # of Stories 3.0 | | [ ] Radiant | WoodStove(s) # 0 | [X] Driveway  # of Cars 2 |
| Type [X] Det. [ ] Att. [ ] S-Det./End Unit | [ ] Partial Basement [ ] Finished | [ ] Other | [X] Patio/Deck Cov | Driveway Surface Concrete |
| [X] Existing [ ] Proposed [ ] Under Const. | Exterior Walls CBS | Fuel Electric | [ ] Porch Front | [X] Garage  # of Cars 2 |
| Design (Style) Key West | Roof Surface Metal | [X] Central Air Conditioning | Pool None | [ ] Carport  # of Cars 0 |
| Year Built 2006 | Gutters & Downspouts Part-mtl | [ ] Individual | [ ] Fence None | [X] Attached [ ] Detached |
| Effective Age (Yrs) 9 | Window Type Impact | [ ] Other | [X] Other Balconys | [ ] Built-in |

Appliances [X] Refrigerator [X] Range/Oven [X] Dishwasher [X] Disposal [X] Microwave [ ] Washer/Dryer [ ] Other (describe)
Finished area above grade contains: 8 Rooms  3 Bedrooms  3.1 Bath(s)  2,421 Square Feet of Gross Living Area Above Grade
Additional features (special energy efficient items, etc.). Assumed standard kitchen appliance package. MLS shows 3-bedroom,3.1 bathrooms. Elevator, boat dock.
Describe the condition of the property and data source(s) (including apparent needed repairs, deterioration, renovations, remodeling, etc.). C2;VALUATION AS OF A RETROSPECTIVE DATE (05/02/2016) BASED ON 1/17/2019 EXTERIOR FRONTAL DRIVE-BY INSPECTION. PHYSICAL DATA PER COUNTY PROPERTY APPRAISER'S OFFICE. AVERAGE CONDITION ASSUMED WITH NO SERIOUS ITEMS OF DEFERRED MAINTENANCE.

Are there any apparent physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? [ ] Yes [X] No  If Yes, describe.
SEE COMMENTS ABOVE

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? [X] Yes [ ] No  If No, describe.

C.T. Suites 3rev.w

## Exterior-Only Inspection Residential Appraisal Report
File No. 516 Akron

| There are | 2 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 395,000 | to $ 445,000 | . |
| There are | 4 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 332,500 | to $ 449,900 | . |

| FEATURE | SUBJECT | | COMPARABLE SALE NO. 1 | | COMPARABLE SALE NO. 2 | | COMPARABLE SALE NO. 3 | |
|---|---|---|---|---|---|---|---|---|
| Address | 516 SW Akron Avenue Stuart, FL 34994 | | 508 SW California Ave #A Stuart, FL 34994 | | 536 SW Akron Avenue Stuart, FL 34994 | | 524 SW Akron Avenue Stuart, FL 34994 | |
| Proximity to Subject | | | 0.06 miles SE | | 0.04 miles SE | | 0.02 miles SE | |
| Sale Price | $ | | $ | 420,000 | $ | 510,000 | $ | 449,900 |
| Sale Price/Gross Liv. Area | $ | 0.00 sq. ft. | $ | 201.92 sq. ft. | $ | 210.66 sq. ft. | $ | 185.83 sq. ft. |
| Data Source(s) | | | RegMLS#381395;DOM 354 | | RegMLS#10214824;DOM 10 | | RegMLS#380145;DOM 42 | |
| Verification Source(s) | | | Courthouse Agent | | Courthouse Agent | | Courthouse Agent | |
| VALUE ADJUSTMENTS | DESCRIPTION | | DESCRIPTION | (-) $ Adjustment | DESCRIPTION | (-) $ Adjustment | DESCRIPTION | (-) $ Adjustment |
| Sale or Financing | | | ArmLth | | ArmLth | | ArmLth | |
| Concessions | | | Seller;0 | | Conv;0 | | Conv;0 | |
| Date of Sale/Time | | | s04/16;c03/16 | | s05/16;c03/16 | | s04/15;c03/15 | |
| Location | N;Res;Res | | N;Res;Res | | N;Res;Res | | N;Res;Res | |
| Leasehold/Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 3223 sf | | 3123 sf | 0 | 2962 sf | 0 | 2744 sf | 0 |
| View | B;Wtr;Twnhouse | | N;Res;Twnhouse | 20,000 | B;Wtr;Twnhouse | | B;Wtr;Twnhouse | |
| Design (Style) | DT3.0;Key West | | SD2.0;Key West | 0 | DT3.0;Key West | | DT3.0;Key West | |
| Quality of Construction | Q4 | | Q4 | | Q3 | -50,000 | Q4 | |
| Actual Age | 10 | | 10 | 0 | 10 | | 10 | |
| Condition | C2 | | C2 | | C2 | | C2 | |
| Above Grade | Total 8 | Bdrms. 3 | Baths 3.1 | Total 7 Bdrms. 3 Baths 2.1 | 7,000 | Total 8 Bdrms. 3 Baths 3.1 | Total 8 Bdrms. 3 Baths 3.1 | |
| Room Count | | | | | | | | |
| Gross Living Area | | 2,421 sq. ft. | 2,080 sq. ft. | 15,350 | 2,421 sq. ft. | | 2,421 sq. ft. | |
| Basement & Finished | 0sf | | 0sf | | 0sf | | 0sf | |
| Rooms Below Grade | | | | | | | | |
| Functional Utility | Average | | Average | | Average | | Average | |
| Heating/Cooling | Cent/Cent | | Cent/Cent | | Cent/Cent | | Cent/Cent | |
| Energy Efficient Items | Impact windows | | Impact windows | | Impact windows | | Impact windows | |
| Garage/Carport | 2gd2dw | | 2gd2dw | 0 | 2ga2dw | | 2ga2dw | |
| Porch/Patio/Deck | Por,CvPat,Balc | | Por,CvPat,Balc | | Por,CvPat,Balc | | Por,CvPat,Balc | |
| Appliances | RO DW Di MW | | RO DW Di MW | | RO DW Di MW | | RO DW Di MW | |
| Other | Elevator,Dock | | Guest apt,Pool | -10,000 | Elevator,Dock | | Elevator,Dock | |
| Net Adjustment (Total) | | | X + - | $ 32,350 | + X - | $ 50,000 | X + - | $ 0 |
| Adjusted Sale Price | | | Net Adj. 7.7% | | Net Adj. -9.8% | | Net Adj. 0.0% | |
| of Comparables | | | Gross Adj. 12.5% | $ 452,350 | Gross Adj. 9.8% | $ 460,000 | Gross Adj. 0.0% | $ 449,900 |

I [X] did [ ] did not research the sale or transfer history of the subject property and comparable sales. If not, explain **Sales history was researched.**

My research [ ] did [X] did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s) **Courthouse**
My research [ ] did [X] did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s) **Courthouse**
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE NO. 1 | COMPARABLE SALE NO. 2 | COMPARABLE SALE NO. 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | | | | |
| Price of Prior Sale/Transfer | $0 | $0 | $0 | $0 |
| Data Source(s) | Courthouse | Courthouse | Courthouse | Courthouse |
| Effective Date of Data Source(s) | 01/01/2016 | 01/01/2016 | 01/01/2016 | 01/01/2016 |

Analysis of prior sale or transfer history of the subject property and comparable sales **Courthouse records show no sales or transfers of the subject property in the three years prior to the appraisal assignment effective date. Courthouse records show no sales or transfers of the comparables in the 12 months prior.**

Note: Comp #2 was pending as of the date of value (5/02/2016) and closed on 05/05/2016. It was used in this appraisal at the request of the client.

Summary of Sales Comparison Approach. **All three sales are townhouse units in the immediate area. Comp #2 and #3 are a model-match to the subject property while Comp #1 is a semi-detached dwelling a block to the east. Like the appraised property, Comp #3 have a dock. Comp #1 has a guest apartment and an in-ground pool. Comp #2 has an elevator. MLS indicates Comp #2 has substantial high-end upgrades. Accordingly, a quality adjustment was made to Comp #2. All three sales serve to support the final estimate of market value with weight and emphasis on Comp #1 and #3 since they needed the least adjusting.**

Indicated Value by Sales Comparison Approach $ 450,000

## RECONCILIATION

Indicated Value by: Sales Comparison Approach $ 450,000 Cost Approach (if developed) $ 462,500 Income Approach (if developed) $ 432,000
Appraiser relied most heavily on the Sales Comparison Approach since it is the comparison of the subject dwelling to recent sales of similar houses in the area. The Cost Approach serves to support the final estimate of market value.

This appraisal is made [X] "as is", [ ] subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, [ ] subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or [ ] subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair: VALUATION AS OF RETROSPECTIVE DATE ESTABLISHED BY CLIENT (05/02/2016) BASED ON 1/17/2019 EXTERIOR FRONTAL APPRAISER DRIVE-BY INSPECTION.

Based on a visual inspection of the exterior areas of the subject property from at least the street, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 450,000
as of 05/02/2016 , which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 2055 March 2005    UAD Version 9/2011    Produced using ACI software, 800.234.8727 www.aciweb.com    Page 2 of 6    Fannie Mae Form 2055 March 2005
2055_05UAD 12/182015

STATEWIDE APPRAISAL SERVICE INC.

## Exterior-Only Inspection Residential Appraisal Report
File No. 516 Akron

C. F. Stiles, SRA

**ADDITIONAL COMMENTS**

All three sales serve to support the final estimate of market value.

This appraiser has not conducted an appraisal nor any service on the subject property in the three years prior to the appraisal assignment acceptance date.

### COST APPROACH TO VALUE (not required by Fannie Mae)

**COST APPROACH**

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)   The SITE value is based on 2015 and 2016 land sales from the downtown Stuart vicinity.

| ESTIMATED | ☐ REPRODUCTION OR | ☒ REPLACEMENT COST NEW | OPINION OF SITE VALUE ........................................ = $ | 165,000 |
|---|---|---|---|---|
| Source of cost data Marshall & Swift Co | | | Dwelling    2,421 Sq. Ft. @ $   122.00 ........... = $ | 295,362 |
| Quality rating from cost service  Avg/Good   Effective date of cost data  12/2015 | | | Sq. Ft. @ $ ........... = $ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | Appl,Elev,Dock,etc | | 34,042 |
| Physical:  Est 9yr effective age in est 50yr economic life, equals | | Garage/Carport 458   Sq. Ft. @ $   31.00 ........... = $ | | 14,198 |
| 18% physical depreciation (Rd) | | Total Estimate of Cost-New ........... = $ | | 343,602 |
| | | Less  50      Physical | Functional | External |
| | | Depreciation  $61,900 | $0 | $0 | = $ ( | 61,900) |
| | | Depreciated Cost of Improvements ........................... = $ | | 281,702 |
| | | "As-is" Value of Site Improvements ........................... = $ | | 15,800 |
| Estimated Remaining Economic Life (HUD and VA only) | 41 Years | INDICATED VALUE BY COST APPROACH ........................ = $ | | 462,500 |

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

**INCOME**

Estimated Monthly Market Rent $   2,400  X Gross Rent Multiplier   180  = $   432,000  Indicated Value by Income Approach

Summary of Income Approach (including support for market rent and GRM)  Rental comparables show a market rental rate of +/- $2400 per month with an applicable GRM of 180.

### PROJECT INFORMATION FOR PUDs (if applicable)

**PUD INFORMATION**

Is the developer/builder in control of the Homeowners' Association (HOA)?   ☐ Yes ☐ No   Unit type(s)   ☐ Detached   ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal name of project

| Total number of phases | Total number of units | Total number of units sold |
|---|---|---|
| Total number of units rented | Total number of units for sale | Data source(s) |

Was the project created by the conversion of an existing building(s) into a PUD?   ☐ Yes ☐ No   If Yes, date of conversion.

Does the project contain any multi-dwelling units?   ☐ Yes ☐ No   Data source(s)

Are the units, common elements, and recreation facilities complete?   ☐ Yes ☐ No   If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?   ☐ Yes ☐ No   If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

C. F. S—s, SRA

### Exterior-Only Inspection Residential Appraisal Report

File No. 516 Akron

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a visual inspection of the exterior areas of the subject property from at least the street, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

The appraiser must be able to obtain adequate information about the physical characteristics (including, but not limited to, condition, room count, gross living area, etc.) of the subject property from the exterior-only inspection and reliable public and/or private sources to perform this appraisal. The appraiser should use the same type of data sources that he or she uses for comparable sales such as, but not limited to, multiple listing services, tax and assessment records, prior inspections, appraisal files, information provided by the property owner, etc.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

3. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

4. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

5. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

**Exterior-Only Inspection Residential Appraisal Report**  File No. 516 Akron

C. F. S___, SRA

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1.   I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2.   I performed a visual inspection of the exterior areas of the subject property from at least the street. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3.   I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4.   I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value.  I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment.  I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5.   I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6.   I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7.   I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8.   I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9.   I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10.  I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11.  I have knowledge and experience in appraising this type of property in this market area.

12.  I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13.  I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14.  I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value.  I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal.  I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15.  I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16.  I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17.  I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction.  I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18.  My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19.  I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report.  If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report.  I certify that any individual so named is qualified to perform the tasks.  I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20.  I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

21.  The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent.  Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

C. F. Stites, SRA

## Exterior-Only Inspection Residential Appraisal Report

File No. 516 Akron

22.  I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations.  Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23.  The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24.  If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25.  Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:**  The Supervisory Appraiser certifies and agrees that:

1.   I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2.   I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3.   The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4.   This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5.   If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if  a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name C. F. Stites, SRA | Name |
| Company Name C F Stites appraiser | Company Name |
| Company Address P O Box 991 | Company Address |
| Lake Worth, FL 33460 | |
| Telephone Number 561 588-2550 | Telephone Number |
| Email Address realestateappraiserflorida@gmail.com | Email Address |
| Date of Signature and Report 01/20/2019 | Date of Signature |
| Effective Date of Appraisal 05/02/2016 | State Certification # |
| State Certification # RZ2761 | or State License # |
| or State License # | State |
| or Other (describe) _____ State # _____ | Expiration Date of Certification or License |
| State FL | |
| Expiration Date of Certification or License 11/30/2020 | |

| ADDRESS OF PROPERTY APPRAISED | SUBJECT PROPERTY |
|---|---|
| 516 SW Akron Avenue | ☐ Did not inspect exterior subject property |
| Stuart, FL  34994 | ☐ Did inspect exterior of subject property from street |
| | Date of Inspection |
| APPRAISED VALUE OF SUBJECT PROPERTY $ 450,000 | |

| LENDER/CLIENT | COMPARABLE SALES |
|---|---|
| Name Valcentric LLC | ☐ Did not inspect exterior of comparable sales from street |
| Company Name Integra Realty Resources | ☐ Did inspect exterior of comparable sales from street |
| Company Address 9155 S. Dadeland Blvd, Ste 1208 | Date of Inspection |
| Miami, FL 33156 | |
| Email Address | |

Freddie Mac Form 2055  March 2005          UAD Version 9/2011          Produced using ACI software, 800.234.8727 www.aciweb.com          Fannie Mae Form 2055 March 2005
Page 6 of 6          2055_05UAD 12182015

STATEWIDE APPRAISAL SERVICE INC.

C.T. Suites, New

## Uniform Appraisal Dataset Definitions

File No.  516 Akron

### Condition Ratings and Definitions

C1      The improvements have been very recently constructed and have not previously been occupied. The entire structure and all components are new and the dwelling features no physical depreciation.*

*Note: Newly constructed improvements that feature recycled materials and/or components can be considered new dwellings provided that the dwelling is placed on a 100% new foundation and the recycled materials and the recycled components have been rehabilitated/re-manufactured into like-new condition. Recently constructed improvements that have not been previously occupied are not considered "new" if they have any significant physical depreciation (i.e., newly constructed dwellings that have been vacant for an extended period of time without adequate maintenance or upkeep).*

C2      The improvements feature no deferred maintenance, little or no physical depreciation, and require no repairs. Virtually all building components are new or have been recently repaired, refinished, or rehabilitated. All outdated components and finishes have been updated and/or replaced with components that meet current standards. Dwellings in this category either are almost new or have been recently completely renovated and are similar in condition to new construction.

*Note: The improvements represent a relatively new property that is well maintained with no deferred maintenance and little or no physical depreciation, or an older property that has been recently completely renovated.*

C3      The improvements are well maintained and feature limited physical depreciation due to normal wear and tear. Some components, but not every major building component, may be updated or recently rehabilitated. The structure has been well maintained.

*Note: The improvement is in its first-cycle of replacing short-lived building components (appliances, floor coverings, HVAC, etc.) and is being well maintained. Its estimated effective age is less than its actual age. It also may reflect a property in which the majority of short-lived building components have been replaced but not to the level of a complete renovation.*

C4      The improvements feature some minor deferred maintenance and physical deterioration due to normal wear and tear. The dwelling has been adequately maintained and requires only minimal repairs to building components/mechanical systems and cosmetic repairs. All major building components have been adequately maintained and are functionally adequate.

*Note: The estimated effective age may be close to or equal to its actual age. It reflects a property in which some of the short-lived building components have been replaced, and some short-lived building components are at or near the end of their physical life expectancy; however, they still function adequately. Most minor repairs have been addressed on an ongoing basis resulting in an adequately maintained property.*

C5      The improvements feature obvious deferred maintenance and are in need of some significant repairs. Some building components need repairs, rehabilitation, or updating. The functional utility and overall livability is somewhat diminished due to condition, but the dwelling remains useable and functional as a residence.

*Note: Some significant repairs are needed to the improvements due to the lack of adequate maintenance. It reflects a property in which many of its short-lived building components are at the end of or have exceeded their physical life expectancy but remain functional.*

C6      The improvements have substantial damage or deferred maintenance with deficiencies or defects that are severe enough to affect the safety, soundness, or structural integrity of the improvements. The improvements are in need of substantial repairs and rehabilitation, including many or most major components.

*Note: Substantial repairs are needed to the improvements due to the lack of adequate maintenance or property damage. It reflects a property with conditions severe enough to affect the safety, soundness, or structural integrity of the improvements.*

### Quality Ratings and Definitions

Q1      Dwellings with this quality rating are usually unique structures that are individually designed by an architect for a specified user. Such residences typically are constructed from detailed architectural plans and specifications and feature an exceptionally high level of workmanship and exceptionally high-grade materials throughout the interior and exterior of the structure. The design features exceptionally high-quality exterior refinements and ornamentation, and exceptionally high-quality interior refinements. The workmanship, materials, and finishes throughout the dwelling are of exceptionally high quality.

Q2      Dwellings with this quality rating are often custom designed for construction on an individual property owner's site. However, dwellings in this quality grade are also found in high-quality tract developments featuring residences constructed from individual plans or from highly modified or upgraded plans. The design features detailed, high-quality exterior ornamentation, high-quality interior refinements, and detail. The workmanship, materials, and finishes throughout the dwelling are generally of high or very high quality.

Q3      Dwellings with this quality rating are residences of higher quality built from individual or readily available designer plans in above-standard residential tract developments or on an individual property owner's site. The design includes significant exterior ornamentation and interiors that are well finished. The workmanship exceeds acceptable standards and many materials and finishes throughout the dwelling have been upgraded from "stock" standards.

Q4      Dwellings with this quality rating meet or exceed the requirements of applicable building codes. Standard or modified standard building plans are utilized and the design includes adequate fenestration and some exterior ornamentation and interior refinements. Materials, workmanship, finish, and equipment are of stock or builder grade and may feature some upgrades.

Q5      Dwellings with this quality rating feature economy of construction and basic functionality as main considerations. Such dwellings feature a plain design using readily available or basic floor plans featuring minimal fenestration and basic finishes with minimal exterior ornamentation and limited interior detail. These dwellings meet minimum building codes and are constructed with inexpensive, stock materials with limited refinements and upgrades.

Q6      Dwellings with this quality rating are of basic quality and lower cost; some may not be suitable for year-round occupancy. Such dwellings are often built with simple plans or without plans, often utilizing the lowest quality building materials. Such dwellings are often built or expanded by persons who are professionally unskilled or possess only minimal construction skills. Electrical, plumbing, and other mechanical systems and equipment may be minimal or non-existent. Older dwellings may feature one or more substandard or non-conforming additions to the original structure.

### Definitions of Not Updated, Updated, and Remodeled

Not Updated

Little or no updating or modernization. This description includes, but is not limited to, new homes.

Residential properties of fifteen years of age or less often reflect an original condition with no updating, if no major components have been replaced or updated. Those over fifteen years of age are also considered not updated if the appliances, fixtures, and finishes are predominantly dated. An area that is 'Not Updated' may still be well maintained and fully functional, and this rating does not necessarily imply deferred maintenance and/or functional /functional deterioration.

Updated

The area of the home has been modified to meet current market expectations. These modifications are limited in terms of both scope and cost.

An updated area of the home should have an improved look and feel, or functional utility. Changes that constitute updates include refurbishment and/or replacing components to meet existing market expectations. Updates do not include significant alterations to the existing structure.

Remodeled

Significant finish and/or structural changes have been made that increase utility and appeal through complete replacement and/ or expansion.

A remodeled area reflects fundamental changes that include multiple alterations. These alterations may include some or all of the following:  replacement of a major component (cabinet(s), bathtub, or bathroom tile), relocation of plumbing/gas fixtures/appliances, significant structural alterations (relocating walls, and/or the addition of square footage). This would include a complete gutting and rebuild.

### Explanation of Bathroom Count

The number of full and half baths is reported by separating the two values by a period. The full bath is represented to the left of the period. The half bath count is represented to the right of the period.  Three-quarter baths are to be counted as a full bath in all cases. Quarter baths (baths that feature only toilet) are not to be included in the bathroom count.

C.F. Suites, LBA

## Uniform Appraisal Dataset Definitions

File No. **516 Akron**

### Abbreviations Used in Data Standardization Text

| Abbrev. | Full Name | Appropriate Fields | Abbrev. | Full Name | Appropriate Fields |
|---|---|---|---|---|---|
| ac | Acres | Area, Site | in | Interior Only Stairs | Basement & Finished Rooms Below Grade |
| AdjPrk | Adjacent to Park | Location | Lndfl | Landfill | Location |
| AdjPwr | Adjacent to Power Lines | Location | LtdSght | Limited Sight | View |
| A | Adverse | Location & View | Listing | Listing | Sale or Financing Concessions |
| ArmLth | Arms Length Sale | Sale or Financing Concessions | MR | Mid-Rise Structure | Design(Style) |
| AT | Attached Structure | Design(Style) | Mtn | Mountain View | View |
| ba | Bathroom(s) | Basement & Finished Rooms Below Grade | N | Neutral | Location & View |
| br | Bedroom | Basement & Finished Rooms Below Grade | NonArm | Non-Arms Length Sale | Sale or Financing Concessions |
| B | Beneficial | Location & View | op | Open | Garage/Carport |
| BsyRd | Busy Road | Location | o | Other | Basement & Finished Rooms Below Grade |
| cp | Carport | Garage/Carport | O | Other | Design(Style) |
| Cash | Cash | Sale or Financing Concessions | Prk | Park View | View |
| CtySky | City View Skyline View | View | Pstrl | Pastoral View | View |
| CtyStr | City Street View | View | PwrLn | Power Lines | View |
| Comm | Commercial Influence | Location | PubTrn | Public Transportation | Location |
| c | Contracted Date | Date of Sale/Time | rr | Recreational (Rec) Room | Basement & Finished Rooms Below Grade |
| Conv | Conventional | Sale or Financing Concessions | Relo | Relocation Sale | Sale or Financing Concessions |
| cv | Covered | Garage/Carport | REO | REO Sale | Sale or Financing Concessions |
| CrtOrd | Court Ordered Sale | Sale or Financing Concessions | Res | Residential | Location & View |
| DOM | Days On Market | Data Sources | RT | Row or Townhouse | Design(Style) |
| DT | Detached Structure | Design(Style) | RH | Rural Housing - USDA | Sale or Financing Concessions |
| dw | Driveway | Garage/Carport | SD | Semi-detached Structure | Design(Style) |
| Estate | Estate Sale | Sale or Financing Concessions | s | Settlement Date | Date of Sale/Time |
| e | Expiration Date | Date of Sale/Time | Short | Short Sale | Sale or Financing Concessions |
| FHA | Federal Housing Authority | Sale or Financing Concessions | sf | Square Feet | Area, Site, Basement |
| g | Garage | Garage/Carport | sqm | Square Meters | Area, Site, Basement |
| ga | Garage - Attached | Garage/Carport | Unk | Unknown | Date of Sale/Time |
| gbi | Garage - Built-in | Garage/Carport | VA | Veterans Administration | Sale or Financing Concessions |
| gd | Garage - Detached | Garage/Carport | wo | Walk Out Basement | Basement & Finished Rooms Below Grade |
| GR | Garden Structure | Design(Style) | wu | Walk Up Basement | Basement & Finished Rooms Below Grade |
| GlfCse | Golf Course | Location | WtrFr | Water Frontage | Location |
| Glfvw | Golf Course View | View | Wtr | Water View | View |
| HR | High Rise Structure | Design(Style) | w | Withdrawn Date | Date of Sale/Time |
| Ind | Industrial | Location & View | Woods | Woods View | View |

### Other Appraiser-Defined Abbreviations

| Abbrev. | Full Name | Appropriate Fields | Abbrev. | Full Name | Appropriate Fields |
|---|---|---|---|---|---|
| | | | | | |

C. F. Stites appraiser

## Market Conditions Addendum to the Appraisal Report

File No. 516 Akron

The purpose of this addendum is to provide the lender/client with a clear and accurate understanding of the market trends and conditions prevalent in the subject neighborhood. This is a required addendum for all appraisal reports with an effective date on or after April 1, 2009.

Property Address **516 SW Akron Avenue**   City **Stuart**   State **FL**   Zip Code **34994**

Borrower **David Deeg, Deborah Deeg**

Instructions:  The appraiser must use the information required on this form as the basis for his/her conclusions, and must provide support for those conclusions, regarding housing trends and overall market conditions as reported in the Neighborhood section of the appraisal report form. The appraiser must fill in all the information to the extent it is available and reliable and must provide analysis as indicated below. If any required data is unavailable or is considered unreliable, the appraiser must provide an explanation. It is recognized that not all data sources will be able to provide data for the shaded areas below; if it is available, however, the appraiser must include the data in the analysis. If data sources provide the required information as an average instead of the median, the appraiser should report the available figure and identify it as an average. Sales and listings must be properties that compete with the subject property, determined by applying the criteria that would be used by a prospective buyer of the subject property. The appraiser must explain any anomalies in the data, such as seasonal markets, new construction, foreclosures, etc.

| Inventory Analysis | Prior 7-12 Months | Prior 4-6 Months | Current - 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Absorption Rate (Total Sales/Months) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Total # of Comparable Active Listings | | | | ☐ Declining | ☐ Stable | ☐ Increasing |
| Months of Housing Supply (Total Listings/Ab.Rate) | | | | ☐ Declining | ☐ Stable | ☐ Increasing |
| Median Sale & List Price, DOM, Sale/List % | Prior 7-12 Months | Prior 4-6 Months | Current - 3 Months | Overall Trend | | |
| Median Comparable Sale Price | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Median Comparable Sales Days on Market | | | | ☐ Declining | ☐ Stable | ☐ Increasing |
| Median Comparable List Price | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Median Comparable Listings Days on Market | | | | ☐ Declining | ☐ Stable | ☐ Increasing |
| Median Sale Price as % of List Price | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Seller-(developer, builder, etc.)paid financial assistance prevalent? | ☐ Yes | ☐ No | | ☐ Declining | ☐ Stable | ☐ Increasing |

Explain in detail the seller concessions trends for the past 12 months (e.g., seller contributions increased from 3% to 5%, increasing use of buydowns, closing costs, condo fees, options, etc.).

Are foreclosure sales (REO sales) a factor in the market?  ☐ Yes  ☐ No   If yes, explain (including the trends in listings and sales of foreclosed properties).

Cite data sources for above information.

Summarize the above information as support for your conclusions in the Neighborhood section of the appraisal report form. If you used any additional information, such as an analysis of pending sales and/or expired and withdrawn listings, to formulate your conclusions, provide both an explanation and support for your conclusions.

If the subject is a unit in a condominium or cooperative project , complete the following:   Project Name:

| Subject Project Data | Prior 7-12 Months | Prior 4-6 Months | Current - 3 Months | Overall Trend | | |
|---|---|---|---|---|---|---|
| Total # of Comparable Sales (Settled) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Absorption Rate (Total Sales/Months) | | | | ☐ Increasing | ☐ Stable | ☐ Declining |
| Total # of Active Comparable Listings | | | | ☐ Declining | ☐ Stable | ☐ Increasing |
| Months of Unit Supply (Total Listings/Ab. Rate) | | | | ☐ Declining | ☐ Stable | ☐ Increasing |

Are foreclosure sales (REO sales) a factor in the project?  ☐ Yes  ☐ No   If yes, indicate the number of REO listings and explain the trends in listings and sales of foreclosed properties.

Summarize the above trends and address the impact on the subject unit and project.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name C. F. Stites, SRA | Name |
| Company Name C F Stites appraiser | Company Name |
| Company Address P O Box 991 | Company Address |
| Lake Worth, FL 33460 | |
| State License/Certification # RZ2761        State FL | State License/Certification #        State |
| Email Address  realestateappraiserflorida@gmail.com | Email Address |

## SINGLE FAMILY COMPARABLE RENT SCHEDULE

This form is intended to provide the appraiser with a familiar format to estimate the market rent of the subject property.
Adjustments should be made only for items of significant difference between the comparables and the subject property.

C. F. Stites, SRA                                          File No. **516 Akron**

| ITEM | SUBJECT | COMPARABLE NO. 1 | | COMPARABLE NO. 2 | | COMPARABLE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 516 SW Akron Avenue Stuart, FL 34994 | 521 SW Akron Avenue Stuart, FL 34994 | | 229 SW Otter Run Stuart, FL 34997 | | 128 SE Crestwood Circle Stuart, FL 34997 | |
| Proximity to Subject | | 0.02 miles NE | | 2.92 miles SE | | 5.42 miles SE | |
| Date Lease Begins Date Lease Expires | | 06/06/2015 to 05/31/2017 | | 04/02/2016 03/31/2017 | | 09/01/2014 Mo to Mo | |
| Monthly Rental | If Currently Rented: $ | $ 2,500 | | $ 1,800 | | $ 1,600 | |
| Less: Utilities Furniture | $ | $ 0 | | $ 0 | | $ 0 | |
| Adjusted Monthly Rent | $ | $ 2,500 | | $ 1,800 | | $ 1,600 | |
| Data Source | | MLS#381973 Agent | | MLS#1375884 Agent | | MLS#10055703 Agent | |
| RENT ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Rent Concessions | | None | | None | | None | |
| Location/View | N;Res;Res B;Wtr;Twnhouse | N;Res;Res N;Res;Twnhouse | 50 | N;Res;Res N;Res;Twnhouse | 50 | N;Res;Res N;Res;Twnhouse | 50 |
| Design and Appeal | DT3.0;Key West | DT2.0;Key West | 0 | SD2.0;Mediterran | 100 | SD2.0;Ranch | 100 |
| Age/Condition | 10 C2 | 10 C2 | | 6 C3 | | 10 C3 | |
| Above Grade Room Count | Total 8 Bdrms 3 Baths 3.10 | Total 7 Bdrms 3 Baths 2.10 | 100 | Total 7 Bdrms 3 Baths 2.10 | 100 | Total 7 Bdrms 3 Baths 2.10 | 100 |
| Gross Living Area | 2,421 Sq. Ft. | 2,000 Sq. Ft. | 200 | 2,053 Sq. Ft. | 150 | 2,377 Sq. Ft. | 50 |
| Other (e.g., basement, etc.) | 0sf 2ga | 0sf 2ga | | 0sf 2ga | | 0sf 2ga | |
| Other: | RO DW Di MW Elevator,Dock | RO DW Di MW Efficiency Apt | -400 | RO DW Di MW None | 200 | RO DW Di MW None | 200 |
| Net Adj. (total) | | [ ]+ [X]- $ | 50 | [X]+ [ ]- $ | 600 | [X]+ [ ]- $ | 500 |
| Indicated Monthly Market Rent | | 30.0 -2.0 % | 2,450 | 33.3 33.3 % | 2,400 | 31.3 31.3 % | 2,100 |

Comments on market data, including the range of rents for single family properties, an estimate of vacancy for single family rental properties, the general trend of rents and vacancy, and support for the above adjustments. (Rent concessions should be adjusted to the market, not to the subject property.)
Comparable rental #1 above was the only rental found in the subject development. It is across the street from the subject property and has no water view or dock. Comparable rental #2 and #3 are distant but were the best alternative rental comparables found.
No rental comparables of similar size, bedroom/bath count, and features were found. Accordingly, rental comparables requiring large adjusting were required. Despite the adjusting needed, the rental comparables were considered to be the best and most similar available.

Final Reconciliation of Market Rent: Comparable rentals are reasonably similar in size and appeal. Comparable rental #1 and #2 are the best indicators of value and will receive the most weight. All rentals are under a gross lease with tenant supplied utilities.

THIS RENTAL ANALYSIS IS AS OF A RETROSPECTIVE DATE (05/02/2016) BASED ON 01/17/2019 EXTERIOR FRONTAL DRIVE-BY PROPERTY INSPECTION BY THIS APPRAISER AS NOTED IN THE REPORT WHICH ACCOMPANIES THIS FORM.

I (WE) ESTIMATE THE MONTHLY MARKET RENT OF THE SUBJECT AS OF   05/02/2016   TO BE $   2,400

APPRAISER:                                              SUPERVISORY APPRAISER (ONLY IF REQUIRED):

Signature                                              Signature
Name  C. F. Stites, SRA                                Name
Date Report Signed  01/20/2019                         Date Report Signed
State Certification #  RZ2761           State  FL       State Certification #                   State
Or State License #                      State          Or State License #                     State
Date Property Inspected 01/17/2019                      Date Property Inspected
                                                        [ ] Did  [ ] Did Not  Inspect Property

Freddie Mac Form 1000 (8/88)                 Produced by ACI software, 800.234.8727 www.aciweb.com                Fannie Mae Form 1007 (8/88)
                                      STATEWIDE APPRAISAL SERVICE INC.                                           1007.08192010

SUBJECT PROPERTY PHOTO ADDENDUM

| Borrower: David Deeg; Deborah Deeg | | |
| Property Address: 516 SW Akron Avenue | File No.: 516 Akron | Case No.: |
| City: Stuart | State: FL | Zip: 34994 |
| Lender: Integra Realty Resources | | |



FRONT VIEW OF
SUBJECT PROPERTY

Appraised Date: May 2, 2016
Appraised Value: $ 450,000



REAR VIEW OF
SUBJECT PROPERTY



STREET SCENE

Case 2:09-md-02047-EEF-MBN Document 251-21 Entered on FLSD Docket 05/13/2019 Page 80 of 43

Case 2:09-md-02047-EEF-MBN Document 251-21 Entered on FLSD Docket 05/13/2019 Page 117 of 130

| | | | |
|---|---|---|---|
| Borrower: David Deeg, Deborah Deeg | | File No.: 516 Akron | |
| Property Address: 516 SW Akron Avenue | | Case No.: | |
| City: Stuart | State: FL | | Zip: 34994 |
| Lender: Integra Realty Resources | | | |



COMPARABLE SALE #1

508 SW California Ave #A
Stuart, FL 34994
Sale Date: s04/16;c03/16
Sale Price: $ 420,000



COMPARABLE SALE #2

536 SW Akron Avenue
Stuart, FL 34994
Sale Date: s05/16;c03/16
Sale Price: $ 510,000



COMPARABLE SALE #3

524 SW Akron Avenue
Stuart, FL 34994
Sale Date: s04/15;c03/15
Sale Price: $ 449,900

| Borrower: David Deeg, Deborah Deeg | | File No.: 516 Akron |
|---|---|---|
| Property Address: 516 SW Akron Avenue | | Case No.: |
| City: Stuart | State: FL | Zip: 34994 |
| Lender: Integra Realty Resources | | |



Front/Side view



Front/Side view

| Borrower: David Deeg; Deborah Deeg | File No.: 516 Akron | |
|---|---|---|
| Property Address: 516 SW Akron Avenue | Case No.: | |
| City: Stuart | State: FL | Zip: 34994 |
| Lender: Integra Realty Resources | | |



Rental comparable #1
521 SW Akron - Stuart, FL



Rental comparable #2
229 SW Otter Run - Stuart FL



Rental comparable #3
128 SE Crestwood Circle - Stuart, FL

| Borrower: David Deeg, Deborah Deeg | File No.: 516 Akron |
| Property Address: 516 SW Akron Avenue | Case No.: |
| City: Stuart | State: FL | Zip: 34994 |
| Lender: Integra Realty Resources |

PLAT MAP



LOCATION MAP

| Borrower: David Deeg, Deborah Deeg | | File No.: 516 Akron |
| Property Address: 516 SW Akron Avenue | | Case No.: |
| City: Stuart | State: FL | Zip: 34994 |
| Lender: Integra Realty Resources | | |



AERIAL MAP

| Borrower: David Deeg, Deborah Deeg | | File No.: 516 Akron | |
| Property Address: 516 SW Akron Avenue | | Case No.: | |
| City: Stuart | State: FL | | Zip: 34994 |
| Lender: Integra Realty Resources | | | |





# FLOOD MAP

| Borrower: David Deeg, Deborah Deeg | | File No.: 516 Akron |
| Property Address: 516 SW Akron Avenue | | Case No.: |
| City: Stuart | State: FL | Zip: 34994 |
| Lender: Integra Realty Resources | | |

Subject
516 SW Akron Ave
Stuart, FL 34994

## FLOOD INFORMATION

Community: CITY OF STUART
Property is NOT in a FEMA Special Flood Hazard Area
Map Number: 12085C0134G
Panel: 0134G
Zone: X
Map Date: 03-16-2015
FIPS: 12085
Source: FEMA DFIRM

## LEGEND

= FEMA Special Flood Hazard Area – High Risk

= Moderate and Minimal Risk Areas

Road View:

= Forest       = Water

## Sky Flood™

No representations or warranties to any party concerning the content, accuracy or completeness of this flood report, including any warranty of merchantability or fitness for a particular purpose is implied or provided. Visual scaling factors differ between map layers and are separate from flood zone information at marker location. No liability is accepted to any third party for any use or misuse of this flood map or its data.

| Borrower: David Deeg, Deborah Deeg | | File No.: 516 Akron |
|---|---|---|
| Property Address: 516 SW Akron Avenue | | Case No.: |
| City: Stuart | State: FL | Zip: 34994 |
| Lender: Integra Realty Resources | | |

1/17/2019         Martin County, Florida - Laurel Kelly, C.F.A

## Martin County, Florida - Laurel Kelly, C.F.A

*generated on 1/17/2019 6:41:59 AM*

### Summary

| Parcel ID | Account # | Unit Address | Market Total Value | Website Updated |
|---|---|---|---|---|
| 05-38-41-028-000-00080-0 | 559137 | 516 SW AKRON AVE, STUART | $446,260 | 1/12/2019 |

#### Owner Information

| | |
|---|---|
| Owner(Current) | POMFREY ROBERT POMFREY KELLIE |
| Owner/Mail Address | 516 SW AKRON AVE STUART FL 34994 |
| Sale Date | 1/12/2017 |
| Document Book/Page | 2901 1514 |
| Document No. | 2614548 |
| Sale Price | 530000 |

#### Location/Description

| | | | |
|---|---|---|---|
| Account # | 559137 | Map Page No. | |
| Tax District | 3100 | Legal Description | LOT 8 STUART CAY (PB 16 PG 3) |
| Parcel Address | 516 SW AKRON AVE, STUART | | |
| Acres | .0740 | | |

#### Parcel Type

| | |
|---|---|
| Use Code | 0100 Single Family |
| Neighborhood | 395385 Stuart Cay |

#### Assessment Information

| | |
|---|---|
| Market Land Value | $200,000 |
| Market Improvement Value | $246,260 |
| Market Total Value | $446,260 |

| Borrower: David Deeg, Deborah Deeg | | File No.: 516 Akron | |
|---|---|---|---|
| Property Address: 516 SW Akron Avenue | | Case No.: | |
| City: Stuart | State: FL | | Zip: 34994 |
| Lender: Integra Realty Resources | | | |



# Anthony M. Graziano, MAI, CRE

## Experience

Senior Managing Director of Integra Realty Resources – Miami/Palm Beach.

Mr. Graziano has actively counseled and advised clients on the sale, leasing, valuation, management, and development of commercial real estate assets throughout the northeast and southeast U.S. since 1992.

Mr. Graziano's professional perspective is a blend of his experience and educational background which includes formal training in architecture, urban planning, macro and micro economics, real estate finance, institutional asset management, and land development. His market experience in sales, leasing, management, and valuation disciplines combine to bring practical real world answers to complex planning and development projects. He has been actively involved as a consultant and/or member of a consultant team on various major redevelopment and land use projects for public and private clients over the past 25+ years.

Mr. Graziano has specialized in consulting and valuation assignments for corporate and private clients on a wide array of complex issues related to estate and condemnation matters, title defects, environmental contamination/damages, air rights, partial and fractional interests, contract disputes, and mediation/arbitration disputes. Mr. Graziano's experience in these matters provides a comprehensive framework for effective strategic real estate consulting.

## Professional Activities & Affiliations

Advisory Board Member: Urban Land Institute (ULI) South Florida / Caribbean
Advisory Board Member: University of Miami M+RED Program
Member: Economic Roundtable - Miami Beacon Council (2012-present)
Board of Director: Integra Realty Resources, Inc. (2011-2016)
Chairman of the Board:   Integra Realty Resources, Inc. (2016-present)
Director: South Florida Chapter of the Appraisal Institute (2014-2016)
Board Member: Builders Association of South Florida (BASF) (2014-2016)
Subject Matter Expert (SME): Appraisal Practice Board, Appraisal Foundation
Member: Appraisal Institute (MAI) (2008-Present)
Member: Counselors of Real Estate (CRE) (2007-Present)
National Association of Realtors (REALTOR)
Miami Association of REALTORS Industry Analyst of the Year (2016)
Former Fellow: Royal Institute of Chartered Surveyors (FRICS) (2007-2014)
AI Leadership Development Advisory Council, March 1998 - February 2001
Lifetime Member: National Eagle Scout Association (NESA)

## Licenses

Florida, State-Certified General Real Estate Appraiser, RZ3510
New Jersey, State-Certified General Real Estate Appraiser, RG001261

## Education

University of Miami, Coral Gables, Florida 1988-1992
Degree: Bachelor of Science in Land Development and Planning, School of Architecture

New York University Real Estate Institute, New York, New York 1993-1996
Degree: Master of Science in Real Estate Development and Investment



**Integra Realty Resources**
Miami/Palm Beach

Dadeland Centre
9155 S. Dadeland Boulevard
Suite 1208
Miami, FL 33156

T 305.670.0001
F 305.670.2276

irr.com

amgraziano@irr.com   -   305.670.0001 x320

# Anthony M. Graziano, MAI, CRE

**Integra Realty Resources**
**Miami/Palm Beach**

The Douglas Centre
2600 Douglas Road, Suite 801
Coral Gables, FL 33134

T 305.670.0001
F 305.670.2276

irr.com

## Qualified Before Courts & Administrative Bodies

Qualified and accepted as an expert before:
US Bankruptcy Court (Newark, Southern District of Texas, Southern District of Florida)
US Federal District Court (Southern District of Florida)
FL Circuit Court (Miami-Dade, Broward, and Monroe Counties)
NJ State Tax Court
NJ Superior Court - Chancery Division
NJ Superior Court - Law Division
Various municipal planning and zoning boards throughout New Jersey and Florida
Various Taxing Authorities and Boards throughout New Jersey and Florida



**Anthony M. Graziano, MAI, CRE, FRICS**
PROFERRED OR DISCLOSED EXPERT WITNESS REPORTS/SETTLEMENTS

| RETENTION DATE | ON BEHALF | IRR FILE # | COURT CASE NO. | COURT / VENUE | CASE NAME | RETAINED BY | TYPE OF CASE |
|---|---|---|---|---|---|---|---|
| 1/2015 | Defendant | 123-2015-0037 | 14-CV-22384 LIU | Miami-Dade County, FL | Ray Benson & Maria Helena V. QBE Insurance Corporation | John A. Camp | Retrospective (2004-2006) analysis of market value claims against insurance company related to property |
| 9/2014 | Defendant | 123-2014-0194 | 13-03084CA 10 | 11th Judicial Circuit Miami-Dade, FL | Manuel Soltero V. Adorno & Yoss, LLP | Kaplan Zeena, LLP | Professional Liability suit against law firm and attorneys for malfeasance in litigation matter. |
| 2/2014 | Plaintiff | 123-2014-0030 | Settled | Caribbean Islands | Rainmaker Development V. A&F Bahamas, etal | VLASAC & SHMARUK, LLC | Partnership Dispute between Joint Venture in Caribbean development project (golf course, villas, and large-scale marina-commercial-retail development) |
| 11/2012 | Defendant | 123-2012-0140 | 42-2012-CA-001065 | Marion County, FL | CSX Transportation, Inc. V. Moshen Saranazi, Fatih Ann Safarazi, Proverbium Hldg, LLC, USA & George Albright | NeJame, La Fay, Jancha, Ahmed, Barker, Joshi & Moreno, P.A. | Condemnation of partial interest with damages |
| 7/2012 | Confidential | 123-2012-0076 | Confidential | Broward County, FL | Ft. Lauderdale-Hollywood Int'l Airport Expansion | White & Case, LLP | Value Diminution Study to assist public agency in good faith negotiations based on airport expansion. |
| 6/2012 | Defendant | 123-2012-0070 | 10-49616-CA-40 | Miami-Dade County, FL | C8 Entertainment, LLC V. South Beach Ocean Parcel | Kubicki Draper, P.A. | Construction Damages claim |
| 12/2009 | Plaintiff | 109-2009-0443 | Dept. Justice File 90-11-3-5801 | Federal District Court of Virginia | United States vs. Atlantic Wood Industries, Inc. | U.S. Department of Justice | Damages/environmental contamination dispute between United States Navy and responsible party (Atlantic Wood Industries) |

M. Quals: Graziano: Trial Lists

**Anthony M. Graziano, MAI, CRE, FRICS**
IDENTIFIED EXPERT WITNESS TESTIMONY AT DEPOSITION and/or TRIAL

| RETENTION DATE | ON BEHALF OF | TRI FILE # | COURT/CASE NO. # | COURT / VENUE | CASE NAME | RETAINED BY | TYPE OF CASE |
|---|---|---|---|---|---|---|---|
| 6/2015 | Plaintiff | 123-2015-0170 | 15-008930-CA-01 | 11th Judicial Circuit Dade County, Florida (Hon. Peter R. Lopez) | Aaron Stauber & Aviva Stauber V. BH 33, LLC | Piedra & Associates, P.A. | Motion to dismiss Lis Pendens in an action to enforce contractual specific performance clause |
| 1/2015 | Defendant | 123-2015-0037 | 14-CV-22384 UU | Southern District of Florida | Ray Benson & Maria Helena Campos V. QBE Insurance Corporation | John Camps | Retrospective (2004-2006) analysis of market value claims against insurance company related to property damage claims arising from Hurricane Wilma |
| 1/2014 | Plaintiff | 123-2015-0031 | Pending | Miami-Dade County | Igor Gel V. Yacht Club at Portofino Condo Association | Weil Quaranta McGovern, P.A. | Construction defect dispute related to water-intrusion and damage-detrimental conditions analysis of |
| 10/2014 | Plaintiff | 123-2014-0226 | 08-CA-408-P | Monroe County | Ocean Bank V. Lindback, Monroe County | Ocean Bank | Deficiency claim against borrower on real estate collateral in the Florida Keys (development site plus marine related improvements) |
| 10/2014 | Defendant | 123-2014-0215 | 11-24994 CA 04 | 11th Judicial Circuit Dade County, Florida | Palm-Aire Holdings V. JRGS Investments, LLC, Jorge Garcia-Serriff and Course Drive Investments, LLC | Cole, Scott & Kissane, P.A. | Partnership dispute over valuation issues proximal to a fractured condominium project (retrospective values), and operating agreement dispute |
| 7/2014 | Plaintiff | 123-2014-0194 | 13-016822 CACE 02 | 17th Judicial Circuit Broward County, Florida | Amalia I. Irianda-Rivera V. Rivers Diagnostic Center, Inc., Obray Rivers & Yudit Rivero | Amalia I. Irianda-Rivera | Rent default judgment and market rental and damage analysis associated with lease default. |
| 10/2014 | Defendant | 123-2014-0159 | 2014FL534 (Pending) | 17th Judicial Circuit Broward County, Florida | Roehm Title Resources Claim | Title Resources Guaranty Company | Title insurance claim related to before and after damage/value diminution analysis based on defined title defects not identified by Title Insurance Company |
| 4/2014 | Plaintiff | 123-2014-0117 | 4:14-CV-01077 (Pending) | USA District Court for the Eastern District of Missouri Eastern Division | USA V. /GSA-VA St. Louis Property, LLC | Bryan Cave LLP | Condemnation defect of a possessory interest for a term. Retained as consulting/rebuttal expert |
| 5/2014 | Defendant | 123-2014-0114 | Pending | Miami-Dade County | Euforia Club | Rennert Bogart Mandler & Rodriguez, P.A. | Rent dispute regarding forced relocation of a nightclub, and relevant market rental rate analysis of replacement club space in Miami |
| 4/2014 | Plaintiff | 123-2014-0089 | | Broward County | Pan American Holdings Corp. V. Florida DOT Right of Way (ROW) Acquisition SR-7 | Henry Wulf, Esq. | Condemnation for R.O.W. purposes including before and after damage analysis |
| 1/2014 | Debtor | 123-2014-005 | 13-25728-BKC-RAM | US Federal Bankruptcy - Southern District of Florida - Miami Division (Hon. R. Mark) | West Airport Plaza Business Park, LLC | Counsel for the Debtor, Michael D. Seese, Esq. | Fairness Opinion and market value opinions in conjunction with Debtor's Plan for Reorganization |
| 8/2013 | Defendant | 123-2009-0016 | 02-23922-CA-09 | 11th Judicial Circuit Dade County, Florida | American Educational Enterprises LLC v. The Board of Trustees of the Internal Improvement Trust Fund | Richard Alayon, Esq. - Alayon and Associates | Economic Damages case associated with an alleged misrepresentation or omission by seller of real property |
| 7/2013 | Defendant | 123-2013-0126 | CACE 08057624 (14) | 17th Judicial Circuit Broward County, Florida (Hon. Carlos A. Rodriguez) | Bayview Loan Servicing, LLC v. Kayhan Soodjani; Muhammad Mahmoodi; et al | Bayview Servicing, represented by Tabais, Freedman and Soloff; Stacey Soloff, Esq. | Deficiency judgment on multi-family project (Dewey Street Apartments) |
| 3/2013 | Defendant | 123-2013-0105 | 11-23561 CIV - Rosenbaum | US District Court - Southern District of Florida (Hon. Rosenbaum) | United States of America v. G.K.K. etal | Richard Duvall, Holland and Knight and Jeffrey Nieman, Esq. | Condemnation claim on the 137,779 s.f. Miami Federal Bureau of Investigation (F.B.I.) building; condemnation of a possessory interest in real estate |
| 02/2013 | Defendant | 123-2011-0670 | 09-06650 CA 04 | 11th Judicial Circuit Dade County, Florida (Hon. Beth Bloom) | Zenaida Gomez v. City of Pinecrest | Cynthia A. Everett, Cynthia A. Everett, P.A. | Economic damage resulting from temporary taking (seizure) of private residence |
| 1/2013 | Defendant | 123-2013-0016 | 12-60935-CIV | Pending | Q Lending, Inc., Equity Financial Group, Inc., and Equity Commercial Group, Inc. v. Travelers Companies, Inc. etal | Heidi Raschke, Butler Pappas etal | Value diminution resulting from alleged mortgage fraud |
| 1/2012 | Plaintiff | 123-2012-0128 | Pending | 11th Judicial Circuit Dade County, Florida | 2011 and 2012 Ad Valorem Tax Protest | Ken Wurtenberger, Esq. Koppelowitz Ostrow Ferguson | Tax protest of commercial condominium. |
| 10/19/2012 | Plaintiff | 123-2012-0111 | 2011-1107 CA-23 | 11th Judicial Circuit Dade County, Florida (Hon. Patrick Stanford Blake) | Renegade at Hialeah Blvd v. Dynatech Engineering | Daniel Levin, Esq., Cole Scott, Kissane, P.A. | Economic Damages case, diminution in value resulting from prayed lease modification |
| 10/12/2012 | Plaintiff | 123-2012-0109 | 11-30189 CA21 | 11th Judicial Circuit Dade County, Florida | Yaffa Yakubov vs. Bayview at Fisher Island No 3 | Craig Minko, Esq., Cole Scott Kissane, P.A. | Market Value estimate of Fisher Island Condominium purchased under right of first refusal, economic damages claimed by Plaintiff due to contract dispute arising from association's exercise of right of first refusal |
| 8/20/2012 | Plaintiff | 123-2010-0012 | CA-02160 CA-25 | 11th Judicial Circuit Dade County, Florida | 7935 NBV, LLC v. Harbour East Development LTD, Mario Egozi, etal | Jose Casal, Esq., Holland and Knight | Deficiency judgment on 32-unit fractured condominium, substitute expert following issuance of IRR-Miami reports in 2010 and 2012. |
| 8/15/2012 | Disclosed Dual Expert | 123-2012-0072 | | Matrimonial Mediation | Vazquez v. Vazquez Matrimonial Matter | Colon and Mendoza and Robert Hertzberg, P.A. | Retained as a court-appointed third party expert to both parties to appraise (2) marital assets comprised of office, retail, single and multi-family units in FL, TN, NC, and Illinois, Bahama |
| 7/2012 | Plaintiff | 109/2011-0172 | Pending: 2003-2014 | Tax Court of New Jersey (Hon. Patrick DeMariensis) | BASF Inc., successor Ciba Geigy Inc., vs Township of Toms River | Phil Genuario, Garippa, etal on behalf of BASF | Challenge to multi-year appeal of $80 Million+ land assessment on contaminated superfund site in Central New Jersey |
| 3/2012 | Plaintiff | 109/2010-0172 | ATL-L-4461-08 | Superior Court of New Jersey, Law Division Atlantic County | Scot Netherlands Inc. vs. State of New Jersey Department of Environmental Protection (NJDEP) | Jay Rhatican, Connell Foloey on behalf of Scot Netherlands, Inc. | Challenge to NJDEP permit denial to fill wetlands, deprivation of all reasonable investment backed expectations |
| 07/2011 | Defendant | 109/2010-0199 | MER-L-3034-08 | Superior Court of New Jersey Mercer County | 480 Mercer Street, LLP and Brueckner Southern, LLC vs. Hightstown | Aneel Zarro Grimm & Aaron, P.C. Hussain Chater | Litigation-Dispute Resolution - Hightstown Zoning Challenge |
| 12/2009 | Plaintiff | 109/2009-0443 | Dept. Justice File 90-11-3-5801 | Federal District Court of Virginia | United States v.s. Atlantic Wood Industries, Inc. | U.S. Department of Justice | Damages/environmental contamination dispute between United States Navy and responsible party (Atlantic Wood Industries) |
| 12/2009 | Plaintiff | 109-2009-0377 | | Tax Court of New Jersey | Westrust/HPC Mortgage Fund vs. City of Atlantic City | Cole, Schotz, Meisel, Forman & Leonard, P.A. Carl Rizzo, Esq. | Tax Appeals - To develop an opinion of the market value of the fee simple interest in the property |



**Anthony M. Graziano, MAI, CRE, FRICS**
IDENTIFIED EXPERT WITNESS TESTIMONY AT DEPOSITION and/or TRIAL

| RETENTION DATE | ON BEHALF | IRR FILE # | COURT CASE NO | CASE NAME | COURT / VENUE | RETAINED BY | TYPE OF CASE |
|---|---|---|---|---|---|---|---|
| 11/2009 | Secured Creditor | 109-2009-0439 | | Erickson Building | US Bankruptcy Court - Southern District of Texas | Stuart Glick, Esq., Sills, Cummis & Gross | Market Value for Bankruptcy of 140,000 SF corporate campus in Bethesda, Maryland |
| 09/2009 | Plaintiff | 109-2009-0123 | 3035-001 | Bay Head Yacht Club vs. Ocean County Tax Board | Tax Court of New Jersey | John Doyle, Carluccio, Leone, Dimon, Doyle & Sacks, LLC | Tax Appeal for Bay Head Yacht Club |
| 12/2008 | Plaintiff | 109-2008-XXX | INA (DEFS Pending) | Mirage Atlantic City (MAC) vs. City of Atlantic City | Tax Court of New Jersey | Hank Rovitsard, Esq. | Tax Appeal at State Tax Court on 15 acre casino site adjacent to Trump Marina |
| 08/2008 | Defendant | 109-2008-0252 | L-2424-05 | The City of South Amboy vs. Lower Main Street Development, LLC & Amboy Aggregates Joint Venture | Superior Court of New Jersey Law Division, Middlesex County | Bathgate, Wegenar, etal | Verified complaint in condemnation |
| 6/2008 | Defendant | 109-2008-345 | C.A. No. OCNL-3361-06 | Osborne Associates, Melbourne Associates VI, LLC, Kingsway Realty Profit Share vs. Citta Enterprises Co, JAC Property Management etal and Eckerd Corporation | Superior Court of New Jersey, Law Division Ocean County | Francis X. Manning, Esq, Standley Ronon Stevens & Young & Michael Camboli, Esq, Partridge Snow and Hahn, both on behalf of | Dispute re: proper valuation of leasehold and sub-lessee's sandwich leasehold interest on damage claim for breach of agreement claim |
| 1/2008 | Defendant | 109-2008-0125- | N/A | Toms River Township vs. Gba Geigy Corporation | American Arbitration Association [testimony at Arbitration conducted by Hon. Eugene Serpentelli] | Mark Troncone, Esq., In-house Counsel to Township of Toms River | Arbitration of environmental damages claim, and counter-claim of appropriateness of zoning on 1,900 acre superfund site. |
| 11/2007 | Defendant | 109-2007-211 | L-000635-06 | Kyle Mosteller vs. Gaita Neerman | Superior Court of New Jersey, Law Division Middlesex County | Frank Canuso, Esq, Hoagland, Longo, Moran and Dunst | Damage claim due to loss of trees and screening between urban properties |
| 6/2007 | Plaintiff | 109-2007-0134 | 3:07-CV-2322 | Silver Lakes Inc. vs. Township of Freehold Inc. | Superior Court of New Jersey, Chancery Division Monmouth County | Christopher Hanlon, Esq, Hanlon and Niemann | Challenge to validity of Rent Control Ordinance as transfer of property rights from Lessor to Lessee |
| 06/2007 | Plaintiff | 109-2007-0173 | | Laurelwood Homes, LLC vs. United States Department of Navy | Federal District Court of Virginia | William A. Shook Esq. | Leasehold interest in the property, breach of lease claim on behalf of leasehold owner (Laurelwood) claiming breach of lease and damages |
| 12/2006 | Defendant | 109-2006-0192 | CAM - L - 9731-05 | Brandywine Operating Partnership, LP vs. UFCW Local 56 | Superior Court of New Jersey, Law Division, Camden County | Brett Last, Esq, O'Brien, Belland and Bushinsky | Estimate the value of damages to landlord on breach of above-market lease |
| 08/2006 | Defendant | 109-2006-0257 | | County Line & Browers Bridge, Jackson Township | | Levin, Shea, Pfeffer, PA Steven Pfeffer | To develop an opinion of the hypothetical market value of the fee simple interest in the property |
| 02/2006 | Defendant | 109-2006-0044 | OCN-L-2482-04 | Carl Brooks vs. K. Hovanian | Ocean Superior Court, Ocean County Courthouse | Ronan, Tuzzio & Giannone, Linda Olsen | To estimate value diminution in the subject property as a result of various issues asserted by the property owner in conjunction with pending litigation between the property owner, and the subject developer K. Hovnanian @ Sea Oaks |
| 10/2005 | Defendant | 109-2005-0315 | OCN-L-1810-5 | Atlantic City Electric Company d/b/a Conectiv Power Delivery, a regulated public utility of the state of New Jersey vs. AC1 Manahawkin, LLC family and/or Armstrong | Superior Court of New Jersey, Law Division Ocean County | Flaster/Greenberg, PC, R. Oberlander, Esq | David Compensation for the taking of an easement for construction and maintenance of a 230kv transmission line and towers by Atlantic City Electric |
| 06/2005 | Defendant | 109-2005-0214 | MON-L-2609-05 | Township of Howell vs. George Harms Construction Co., Inc. etal | Superior Court of New Jersey Law Division Monmouth County | Connell & Foley, LLP Kevin Coakley, Esq. | To develop an opinion of the market value of the fee simple estate of the property |
| 08/2003 | Defendant | 109-2003-0282 | | Giuffre vs. Giuffre | Superior Court of New Jersey Chancery Division, Family Part, Monmouth County | Louis & Wolf - Frank A. Louis | To develop an opinion of the market value of the Fee Simple estate of two properties for purposes of equitable distribution of marital assets |
| 07/2003 | Defendant | 109-2003-0203 | OCN-C-78-03 | West, etal vs. Pompaino, etal | Superior Court of New Jersey, Chancery Division, Ocean County | Stephen E. Smith, Esq | To develop an opinion of the diminution in value due to a loss of useable land area |
| 06/2003 | Plaintiff | 109-2003-0101 | OCN-C-316-02 | Eugene M. Lord vs. Donald W. Rinaldo | Superior Court of New Jersey Law Division, Ocean County | Lombardi & Lombardi Scott Telson | To develop an opinion of the market value of the fee simple estate of the property |
| 04/2003 | Plaintiff | 109-2003-0128 | FM-15-468-03-C | Vincent Urbank vs. Lisa Urbank | Superior Court of New Jersey, Chancery Division, Family Part Ocean County | Marianna Pontoriero, Esq. | Litigation-Matrimonial |
| 02/2002 | Plaintiff | 109-2002-0055 | NJ-2824-00 | Shenandoah Mobile Home Park | | Winckels Marx Lane & Mittendorf, LLP - William Cagney | Inverse Condemnation - Rent Control Ordinance |
| 04/2001 | Claimant | 109-2001-0169 | | DeForest John Ely and Kimberle A. Ely, h/w | US Bankruptcy Court - District of Newark | First American Title Insurance Co, Jack Milks | To derive an opinion of the fair compensation of the fee simple estate, subject to the temporary title encumbrance |
| 03/1999 | Defendant | 109-1999-0062 | | Georgetown Apartments | | Emmes & Co., Andrew Schwarz | To estimate the market value of the Leased Fee Estate of the property, inclusive of 28 Apartment complexes through NY, NJ, PA, and MD. |
| 12/1997 | Defendant | LKW-257-3186 | FM-15-1465-94 | Lisa Franklin, etal vs. Donald Franklin, etal | Superior Court of New Jersey, Chancery Division, Family Part, Ocean County | Greenbaum, Rowe, Smith, Ravin, Davis & Himmel LLP  Robert S. Underhil | Estimating the market value of the leased fee interest |
| 8/1984 | Creditor | HUD-XX | | Hudson Marina Association vs. Emmes & Co. | US Bankruptcy Court - District of Newark | | Bankruptcy Reorganization of 200+ slip failed marina/dockominium complex |

