# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 SECTION: L JUDGE FALLON MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO: ALL ACTIONS (except *The Mitchell Co., Inc. v. Knauf Gips KG, et al.*, Civil Action No. 09-4115 (E.D. La.)) | |

DECLARATION OF SANDRA L. DUGGAN IN SUPPORT
OF SETTLEMENT CLASS COUNSEL'S MOTION FOR AN
AWARD OF ATTORNEYS' FEES AND COST REIMBURSEMENTS FOR
<u>COMMON BENEFIT COUNSEL AND INDIVIDUALLY RETAINED ATTORNEYS</u>

Sandra L. Duggan declares, pursuant to 28 U.S.C. §1746, based upon her personal knowledge, information and belief, the following:

1.     I submit this Declaration in support of Settlement Class Counsel's motion for an award of attorneys' fees and cost reimbursements for common benefit counsel and individually retained attorneys from the Settlement with Taishan. Capitalized terms used in this Declaration have the same meaning as those defined in the Settlement Agreement preliminarily approved by the Court [Rec. Doc. 22314]. Except as otherwise noted, I have personal knowledge of the facts set forth in this Declaration and could testify competently to them if called upon to do so.

I.     <u>INTRODUCTION</u>

2.     By Order dated August 29, 2019 [Rec. Doc. 22314], this Court preliminarily approved the settlement Agreement with Taishan and appointed Sandra L. Duggan to be Settlement Class Counsel, along with (i) Lead Counsel Arnold Levin from Levin, Sedran & Berman LLP; (ii) Liaison Counsel and Settlement Class Counsel, Stephen J. Herman from Herman, Herman & Katz; (iii) PSC member and Interim Lead Counsel in Florida for remanded

1

*Amorin* and *Brooke* Claims Patrick S. Montoya from Colson Hicks Eidson; and (iv) PSC member and Lead Counsel in Virginia for remanded *Amorin* and *Brooke* Claims Richard J. Serpe from The Law Offices of Richard J. Serpe, P.C.

3.      The motion requests an award of attorneys' fees totaling 30% of the Settlement Fund to compensate Settlement Class Counsel, the Plaintiffs' Steering Committee ("PSC") and other common benefit attorneys working at their direction (collectively, "Common Benefit Counsel") and Individually Retained Attorneys (collectively, "Plaintiffs' Counsel") for their efforts in achieving a $248 million cash settlement for the benefit of the class.  In addition, Settlement Class Counsel seek cost reimbursements of $4,608,411.27 in Shared Expenses, $1,166,418.88 in Held Costs, and a $500 stipend (net of previous stipends) to reimburse individually retained attorneys for their individual case costs, which is estimated, based on current information, to be approximately $1.3 million.  Together, Settlement Class Counsel have requested in the aggregate 3% of the Settlement Fund to pay for these expenses.

4.      In connection with this motion, I rely upon the time and expense records submitted by common benefit counsel pursuant to PTO 9 or 9A to the court-appointed CPA, Philip A. Garrett. Mr. Garrett regularly provides reports to the Court summarizing these time and expense submissions.  Mr. Garrett has separately submitted an affidavit directed to this fee petition ("Garrett Affidavit"), which is attached hereto as Exhibit "1."

5.      In addition, I attach hereto true and correct copies of exhibits submitted in support of the instant motion:

1.  Affidavit of Philip A. Garrett, C.P.A.
2.  Affidavit of Thomas Shrack

**Filings in the Southern District of Florida**

3.  The Parties' Joint Case Management Plan

4.  Order Setting Civil Trial Date and Pretrial Deadlines
5.  Plaintiffs' Motion and Memorandum of Law to Stay all Claims in the Florida *Amorin* Complaint that Relate to Properties Outside of Florida (*i.e.*, "Non-Florida Claims")
6.  Plaintiffs' Reply Memorandum in Support of Its Motion to Stay all Non-Florida *Amorin* Claims
7.  Plaintiffs' Opposition to Defendants' Motion to Dismiss Non-Florida Claims
8.  Order Staying Non-Florida Claims
9.  Plaintiffs' Motion and Memorandum of Law to Adopt Plan for Resolution of Florida *Amorin* Plaintiffs' Claims for Remediation and Other Damages
10. Plaintiffs' Reply in Support of Their Motion to Adopt Plan for Resolution of Florida *Amorin* Plaintiffs' Claims for Remediation and Other Damages
11. Plaintiffs' Response to Defendants' Trial Plan Proposal
12. Plaintiffs' Oppositions to Defendants' Motion to Dismiss Claims for Failure to Complete Supplemental [Plaintiff] Profile Forms
13. Plaintiffs' Selection of 20 Priority Plaintiffs
14. Plaintiffs' Witness Lists for 20 Priority Plaintiffs
15. Defendants' Notice of Selection of 20 Priority Claimants
16. Defendants' Witness Lists for 20 Priority Claimants
17. Parties' Joint Motion for Status Conference
18. Plaintiffs' Response Brief in Support of this Court Giving Entirely Preclusive Effect to Judge Fallon's Findings of Liability and Application of the Remediation Damages Formula
19. Plaintiffs' Brief in Response to Defendants' Supplemental Brief Addressing Liability as to BNBM PLC
20. Transcript of Motion Hearing 11/7/18
21. Order Appointing Special Master
22. The Parties' Joint Stipulation Regarding Authentication and Hearsay as to Certain Categories of Documents for Priority Claimants
23. Plaintiffs' Response in Opposition to Defendants' Joint Motion to Preclude the Proposed Testimony and Strike the Expert Report of Plaintiffs' Expert Michael P. Elkin
24. Plaintiffs' Memorandum of Law in Opposition to Motion to Exclude Opinions of Anthony Graziano, MAI, CRE
25. Plaintiffs' Response in Opposition to Defendants' Joint Motion to Exclude the Opinion and Preclude Testimony of Plaintiffs' Expert Ryan T. Greenblatt
26. Plaintiffs' Motion and Memorandum to Strike the Expert Report of Ben Nolan as Violative of the Court's Order "Adopting *All* of Judge Fallon's Findings of Facts and Legal Conclusions"
27. Amended Notice of Deposition of Taishan Pursuant to Fed.R.Civ.P. 30(b)(6)
28. Notice of Deposition of BNBM Pursuant to Fed.R.Civ.P. 30(b)(6)

29. Plaintiffs' Objections to and Appeal from the Special Master's Report and Recommendation Regarding Product ID Categories Attributable to Taishan Gypsum Co., Ltd.

30. Priority Claimants' Notice of filing Deposition Transcripts in Response to Defendants' Statement of Material Facts not in Dispute, and counterstatement of Facts in Opposition to Defendants' Motion for Summary Judgment on Non-Formula Damages

31. Priority Claimants' Notice of Filing Interrogatory Answers in Response to Defendants' Statement of Material Facts Not in Dispute, and Counterstatement of Facts in Opposition to Defendants' Motion for Summary Judgment on Non-Formula Damages

32. Priority Claimants' Notice of Filing Additional Record Evidence on a Per Priority Claimants Basis in Response to Defendants' Statement of Material Facts not in Dispute, and counterstatement of Facts in Opposition to Defendants' Motion for Summary Judgment on Non-Formula Damages

33. Priority Claimants' Notice of Filing Supplemental Plaintiff Profile Forms ("SPPF") in Response to Defendants' Statement of Material Facts Not in Dispute, and counterstatement of Facts in Opposition to Defendants' Motion for Summary Judgment on Non-Formula Damages

34. Priority Claimants' Notice of Filing Expert Deposition Transcripts in Response to Defendants' Statement of Material Facts Not in Dispute, and Counterstatement of Facts in Opposition to Defendants' Motion for Summary Judgment on Non-Formula Damages

35. Priority Claimants' Notice of Filing Expert Reports of Anthony M. Graziano in Response to Defendants' Statement of Material Facts Not in Dispute, and Counterstatement of Facts in Opposition to Defendants' Motion for Summary Judgment on Non-Formula Damages

36. Priority Claimants' Notice of Filing Expert Report of Michael P. Elkin in Response to Defendants' Statement of Material Facts Not in Dispute, and Counterstatement of Facts in Opposition to Defendants' Motion for Summary Judgment on Non-Formula Damages

37. Plaintiffs' Response to Defendants' Statement of Material Facts Not in Dispute, and Counterstatement of Facts in Opposition to Defendants' Motion for Summary Judgment on Non-Formula Damages

38. Plaintiffs' Opposition to Defendants' Motion for Summary Judgment on Non-Formula Damages

39. Plaintiffs' Notice of Filing Corrected Opposition to Defendants' Motion for Summary Judgment on Non-Formula Damages (ECF No. 284)

40. Special Master's First Report and Recommendation Regarding Defendants' Contests and Set-Offs

41. Special Master's Second Report and Recommendation Regarding Defendants' Contests and Set-Offs

42. Plaintiffs' Responses to Remediation Damages Discovery Directed to Florida *Amorin* Plaintiffs without spreadsheet as exhibit

43. Plaintiffs' Response to Defendants' Preliminary Contests against Florida *Amorin* Plaintiffs' Claims for Remediation Damages, *i.e.*, Plaintiffs' Omnibus Response to Taishan's and BNBM PLC's Preliminary Contests and Requests for Set-Offs Regarding the Calculation of Remediation Damages for the *Amorin* Plaintiffs

44. Plaintiffs' Response to Defendants' Final Contests against Florida *Amorin* Plaintiffs' Claims for Remediation Damages, *i.e.*, Plaintiffs' Omnibus Response to Defendants' Final Contests and Requests for Setoffs Regarding the Calculation of Remediation Damages for the Florida *Amorin* Plaintiffs

45. Plaintiffs' Supplemental Briefing: Plaintiffs' Post-Hearing Briefing Regarding Defendants' Contests and Setoffs dated April 22, 2019

46. Plaintiffs' Supplemental Briefing: Plaintiffs' Post-Hearing Briefing Regarding Defendants' Revised Objections "G" and "J" dated April 24, 2019

47. Plaintiffs' Updated Remediation Damages Calculations based on 2019 RS Means data

48. Transcript of Argument to Special Master regarding Contests, on April 10-11, 2019

**Filings in the Eastern District of Virginia (Norfolk Division)**

49. Plaintiffs' Motion and Memorandum to Adopt Plan for Resolution of Virginia *Amorin* Cases

50. Joint Appendix (*Amorin* Plaintiffs)

51. Plaintiffs' Reply to Defendants' Trial Plan Brief

**Filings in the MDL**

52. Transcript of Status Conference of October 23, 2019

## II.   PLAINTIFFS' COUNSEL DESERVE TO BE COMPENSATED FOR THEIR WORK PRODUCT

6.     Plaintiffs' Counsel have been entrenched in contentious, adversarial litigation with Taishan and the Additional Released Parties for the past decade.  In contrast to the Knauf settlement, Class Counsel expended extraordinarily more time, more money and more resources prosecuting the Plaintiffs' claims against Taishan and the Additional Released Parties in comparison to the Knauf Defendants.

7.     Since June of 2009, Plaintiffs' Counsel have worked diligently and many times around the clock to vigorously prosecute the claims of approximately 10,000 Chinese Drywall Plaintiffs in this MDL. As a result of early bellwether trials – *Germano* and *Hernandez* – the PSC entered into a comprehensive KPT Pilot Remediation Program for claimants who had drywall manufactured by the German Defendant, Knauf, which led to a negotiated resolution with Knauf and related entities in December 2011. The class settlement agreement provided comprehensive remediation and cash benefits to homeowners with KPT Chinese Drywall, which the MDL Court certified as a class action and approved on February 7, 2013. *In re Chinese-Manufactured Drywall Prod. Liab. Litig.,* 2013 WL 499474 (E.D. La. Feb. 7, 2013). In addition, the PSC reached class settlement agreements with hundreds of downstream Defendant homebuilders, suppliers, and installers (and most of their insurers), resulting in the resolution of almost all of the Knauf entities' chain-of-commerce litigation. *Id.* Relatedly, the PSC negotiated, and the MDL Court approved on July 9, 2013, four additional class settlements with several downstream entities in the Taishan chain of commerce and their insurers for the benefit of mostly Virginia claimants [Rec. Doc. 16934].

8.     Regarding the Knauf settlement, Common Benefit Counsel previously submitted a fee petition covering time recorded between the inception of the Litigation in June 2009 and December 31, 2013 (expenses extended until year-end 2014), which was addressed by *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, MDL 2047, Order & Reasons Setting Common Benefit Fees at 23 (E.D. La. Jan. 31, 2018) [Rec. Doc. 21168]. Plaintiffs' Counsel recognize that the Court previously considered common benefit time from the inception of MDL 2047 to December 31, 2013, in conducting a lodestar cross-check analysis in connection with the fee petition related to the Knauf settlement. Accordingly, only submissions for time reported after

January 1, 2014 to August 2019, and costs incurred after January 1, 2015 to September 2019, are being presented here. Excluded from the common benefit time reported to Mr. Garrett is any time associated with the billing category intended to capture work associated with the Fee Committee's efforts intended to collect a fee from the Knauf settlement. [1] Nevertheless, Plaintiffs' Counsel submit that all work performed since the inception of this Litigation is still relevant to this motion since it represents the foundation of the work performed by Plaintiffs' Counsel, all of which contributed to the successful conclusion of this Litigation.

A. **The claims against Taishan and the Additional Released Parties required substantial time and labor**

9.      Prosecuting and resolving this Litigation demanded immense amounts of time and labor, making this fee request reasonable. Throughout the 10-year pendency of the Litigation, the internal organization of all counsel, including assignments of work, conference calls, oversight of various tasks and projects, was coordinated to maximize efficiency and minimize duplication of effort. Nevertheless, since January 2014, Plaintiffs' Counsel still recorded over 109,236 hours prosecuting this action. Garrett Affidavit, at ¶ 14. With over (20) common benefit law firms involved in prosecuting the claims against Taishan and the Additional Released Parties, such coordination was particularly important considering the vast amount of work performed, including: (i) creating innovative Omni Complaints and serving the foreign manufacturers and their parent entities through the Hague Convention, securing defaults for all *Amorin* Plaintiffs; (ii) serving extensive written discovery on Defendants and third parties in the Chinese Drywall supply

---

[1] At my direction, all time reported since January 1, 2014, which was coded ("L190") for time spent on Knauf fee-related matters, was purposely omitted to avoid as much as possible any time entries related to such efforts.

chain; (iii) preparing discovery requests directed to the Consumer Product Safety Commission, Environmental Protection Agency, Centers for Disease Control, Department of State, Florida Department of Health, Florida Department of Financial Services (Division of State Fire Marshall), and Louisiana Departments of Health, Environmental Quality, Economic Development, and Justice; (iv) testing and preserving Chinese Drywall removed from Plaintiffs' homes and creating the Taishan Product ID Catalog [Rec. Doc. 22152-3] of all categories of Chinese Drywall alleged to be manufactured by Taishan and/or BNBM; (v) conducting several bellwether trials; (vi) exchanging millions of pages of documents with Defendants and third parties on liability, Product ID, jurisdiction, and class remediation damages and individual losses; (vii) taking hundreds of depositions of employees of Defendants and third parties throughout the United States, and also in London, Frankfurt, and Hong Kong; (viii) developing experts on issues of corrosion, metallurgy, electrical engineering, power electronics, electrical machinery, failure analysis to demonstrate the devastating effects of having Chinese Drywall installed in Plaintiffs' homes, the proper scope of remediation, proper inspection protocols, Chinese law, and damages for lost equity and the economic impact of Chinese Drywall on real estate; (ix) negotiating and administering nine class settlements with the Knauf Entities and hundreds of builders, suppliers, installers and insurers of Chinese Drywall, as well as the related class settlement with Taishan of Assigned Claims in MDL No. 2047 on Behalf of the Porter-Blaine/Venture Supply Class Regarding Claims Assigned to the Class by the Porter-Blaine/Venture Participating Defendants and Participating Insurers Against Taishan Gypsum Company Ltd. and Taian Taishan Plasterboard Co., Ltd. [Rec. Doc. 21544]; (x) definitively establishing jurisdiction over Taishan; (xi) establishing jurisdiction over Taishan's parents BNBM, BNBM Group, and CNBM, a decision which is currently on appeal in the Fifth Circuit; (xii) obtaining certification of the *Amorin* Class and obtaining an Order approving the

8

Class Remediation Damages Formula; and (xiii) prosecution of Florida and Virginia *Amorin* and *Brooke* Plaintiffs' Claims after remand, among other things.

10.     Further, Plaintiffs' Counsel interfaced with the Court, communicated with and assisted individually retained counsel and *pro se* litigants, and coordinated with defense counsel, as necessary. Plaintiffs' Counsel administered the MDL docket with more than 22,300 entries and interfaced with the Clerk of Court and its staff. Since the MDL was formed, Plaintiffs' Counsel have prepared 116 monthly status reports for the Court and have assumed primary responsibility for all the Court's monthly status conferences and hearings to date, all major motions, jurisdictional hearings, and other conferences. We continue to perform these services. *See, e.g.,* Affidavit of Thomas Shrack ("Shrack Affidavit"), Exhibit A (Compendium of Charts of PSC Court Appearances from Inception through October 31, 2019).[2]

11.     The work performed in the MDL was substantial and involved extensive briefing of complex issues of 1) personal jurisdiction involving foreign corporations, as well as State-Owned Enterprises that presented unique defenses under the Foreign Sovereign Immunities Act; 2) class certification and the Defendants' efforts to have the class decertified; 3) the ability to employ formulaic class damages, and 4) contempt. *See* Compendium of Charts of MDL Pleadings (Shrack Affidavit, Exhibit B). Opposing these potentially dispositive motions required substantial legal research, as well as an enormous briefing effort that ultimately resulted in thousands of pages

---

[2] At Arnold Levin's direction, we have assembled compendiums of prior Charts prepared by Levin Sedran & Berman's Information Technology Manager, Thomas Shrack, which were submitted with the prior fee petition that have been twice updated so that each chart is comprised of three sections: 1) Inception through December 31, 2013; 2) January 1, 2014 to April 30, 2017; and 3) May 1, 2017 to October 31, 2019. Attached hereto as Exhibit "2" is the Affidavit of Thomas Shrack, which describes each of the Charts appended hereto. Plaintiffs submit that even the time previously considered in the prior fee petition remains relevant to understand the breadth and scope of the common benefit work performed over the past decade on behalf of all Class Members.

of briefing.  Plaintiffs' Counsel regularly convened in advance of oral argument on the various

motions to prepare for the evidentiary hearings or lengthy arguments that ensued.

     12.     To summarize the enormity of this effort, I will briefly recount the history of the

Litigation leading up to the request to approve the Taishan Settlement and this fee request.  Lead

Counsel in MDL 2047, along with Plaintiffs' Liaison Counsel, Russ Herman and Steve Herman,

organized and implemented the aggressive prosecution against Taishan and the Additional

Released Parties, in an effort to achieve a judgment for class-wide damages for Plaintiffs with

Covered Chinese Drywall.  This effort began with the implementation of the Omnibus Complaint,

the so-called "Omni Complaint." These pleadings proved to be a tremendous achievement in

efficiency as they utilized the Class Action Fairness Act, 29 U.S.C. §1332(d)(2), *et seq.*, to

aggregate claimants on one pleading against many non-diverse Defendants, but still permitted a

series of interventions to add claimants without the need or expense of individual complaints and

individual service of process.  Instead, Lead Counsel engaged in the administrative effort of

compiling the complaints and incurred the unitary cost of translation of the complaints and service

abroad.  All Plaintiffs' Counsel's clients are on an Omni Complaint, which enabled these attorneys

to engage their clients in litigation with minimal effort and virtually no expense – the cost and

effort of filing and service being advanced by Common Benefit Counsel.  The costs for service of

these initial Omni Complaints filed before 2015 are the subject of a prior fee petition, but

collectively the costs of service of all the Omni Complaints exceeds $1.7 million.  The following

Omni Complaints were filed:

> *Payton v. Knauf Gips, KG*, No. 09-7628 (E.D. La.) (Omni I, I(A), I(B), I(C)); *Wiltz v. Beijing New Building Materials Public Limited Co.*, No. 10-361 (E.D. La.) (Omni II, II(A), II(B), II(C)); *Gross v. Knauf Gips, KG*, No. 09-6690 (E.D. La.) (original complaint, Omni III, III(A)); *Rogers v. Knauf Gips, KG*, No. 10-362 (E.D. La.) (Omni IV, IV(A), IV(B), IV(C)); *Amato v. Liberty Mutual Ins. Co.*, No. 10-932 (E.D. La.) (Omni V); *Hernandez v. AAA Ins.*, No. 10-3070 (E.D. La.) (Omni VI);

*Abel v. Taishan Gypsum Co., Ltd.*, No. 11-080 (E.D. La.) (Omni VII); *Abreu v. Gebrueder Knauf Verwaltungsgesellschaft, KG*, No. 11-252 (E.D. La.) (Omni VIII); *Haya v. Taishan Gypsum Co., Ltd.*, No. 11-1077 (E.D.La.) (Omni IX); *Block v. Gebrueder Knauf Verwaltungsgesellschaft, KG*, No. 11-1363 (E.D. La.) (Omni X); *Benoit v. Lafarge S.A.*, No. 11-1893 (E.D. La.) (Omni XI); *Arndt v. Gebrueder Knauf Verwaltungsgesellschaft, KG*, No. 11-2349 (E.D. La.) (Omni XII); *Almeroth v. Taishan Gypsum Co., Ltd.*, No. 12-0498 (E.D. La.) (Omni XIII); *Cassidy v. Gebrueder Knauf Verwaltungsgesellschaft, KG*, No. 11-3023 (E.D. La.) (Omni XIV); *Amorin v. Taishan Gypsum Co., Ltd.*, No. 11-1672 (E.D. La.) (Omni XV); *Amorin v. Taishan Gypsum Co., Ltd.*, No. 11-1395 (E.D. La.) (Omni XVI); *Amorin v. Taishan Gypsum Co., Ltd.*, No. 11-1673 (E.D. Va.) (Omni XVII); *Beane v. Gebrueder Knauf Verwaltungsgesellschaft, KG*, No. 13-609 (E.D. La.) (Omni XVIII); *Amorin v. State-Owned Assets Supervision and Administration Commission of the State Council*, No. 14-1727 (E.D. La.) (Omni XIX); *Brooke v. State-Owned Assets Supervision and Administration Commission of the State Council*, No. 15-4127 (E.D. La.) (Omni XX); *Macon v. Taishan Gypsum Co., Ltd.*, No. 17-1287 (N.D. Ala.) (Omni XXI); *Peoples v. Taishan Gypsum Co., Ltd.*, No. 17-2890 (N.D. Ga.) (Omni XXII); *Polk v. Taishan Gypsum Co., Ltd.*, No. 17-216H50 (S.D. Miss.) (Omni XXIII); *Bright v. Taishan Gypsum Co., Ltd.*, No. 17-0035 (E.D.N.C.) (Omni XXIV); *DeOliveira v. Taishan Gypsum Co., Ltd.*, No. 17-2019 (D.S.C.) (Omni XXV); *Redden v. Taishan Gypsum Co., Ltd.*, No. 17-1146 (W.D. Tenn.) (Omni XXVI); *Mertlitz v. Taishan Gypsum Co., Ltd.*, No. 17-140 (E.D. Tex.) (Omni XXVII); *Bayne, v. Taishan Gypsum Co., Ltd.*, No. 17-1286 (N.D. Ala.) (Omni XXVIII); *Abner v. Taishan Gypsum Co., Ltd.*, No. 11-3094 (N.D. Calif.) (Omni XXIX); *Bentz v. Taishan Gypsum Co., Ltd.*, No. 17-2892 (N.D. Ga.) (Omni XXX); *Allen v. Taishan Gypsum Co., Ltd.*, No. 17-217LG (S.D. Miss.) (Omni XXXI); *Lochhead v. Taishan Gypsum Co.*, No. 17-294 (S.D. Tex.) (Omni XXXII); *Stutzman, et al. v. Taishan Gypsum Co., Ltd., et al.*, No. 17-1209 (S.D. Ill.) (Omni XXXIII); *Allman, et al. v. Taishan Gypsum Co., Ltd., et al.*, No. 17-00051 (E.D.N.C.) (Omni XXXIV); *Cole, et al., v. State-Owned Assets Supervision and Administration Commission of the State Council, et al.*, No. 18-00562 (E.D. La.) (Omni XXXV).

13.    In our dogged pursuit against Taishan and the Additional Released Parties, Class Counsel traveled around the globe to far-reaching locations, including Hong Kong, to depose numerous witnesses including, Tinghuan Fu, Zhang Fudong, Tongchun Jia, Wenlong Peng, Shiliang Peng, Jianchun Zhang, and others.  Other critical depositions were conducted in Florida and elsewhere, including those of Ivan Gonima (Oriental Trading Company); Donald Wilson (BNBM); Carlos Rios; CNBM (USA) Corp.; James Martin Alexander (Delmar Logistics); Gang Che (TG/TTP); Darrin Steber (GD-Distributors); Richard Hannam (Wood Nation); Rafael Sardi;

Jianchun Zhang (TTP); Yongzhi (Charley) Yang.[3]  Plaintiffs' Counsel drafted and prepared all of the responses to Taishan's jurisdictional motions.  Over a period of approximately one month, Plaintiffs' Counsel prepared: (a) a Global Statement of Facts totaling 95 pages; (b) a 58-page Affidavit of Russ M. Herman; (c) 202 evidentiary exhibits supporting the exercise of jurisdiction over Taishan; (d) three declarations of experts on Chinese law from a law professor in China, a corporate attorney in China, and a law professor from Georgetown University;[4] (e) a 39-page Global Memorandum of Law on personal jurisdiction and imputing the acts of TTP to its parent TG and vice versa based on alter ego principles; and (f) three separate individual Memoranda of Law, totaling 81 pages, addressing each of the jurisdictions and long-arm statutes challenged by Taishan (*i.e.*, Virginia, Florida, and Louisiana) and choice of law provisions.[5]  In addition, Plaintiffs' Counsel filed an omnibus response to Taishan's evidentiary objections.  Further, Plaintiffs' Counsel presented oral argument to this Court at the evidentiary hearing on these motions.  These efforts were successful.

14.     This Court denied all four of Taishan's jurisdictional motions in a consolidated 142-page Order and Reasons.  *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 894 F. Supp. 2d 819 (E.D. La. 2012).  Taishan then appealed this order.  Plaintiffs' Counsel prepared the Appellees' briefs and Record Excerpts in *Germano*, *Gross*, and *Wiltz*, and assisted Mitchell's counsel with its Appellee brief and Record Excerpts, specifically with regard to Taishan's contacts in Florida and on the issues pertaining to Chinese law and the alter ego relationship between TG and TTP.  I worked full-time for more than five months opposing Taishan's appeals.  These briefs

---

[3] *See* Shrack Affidavit, Exhibit E.

[4] *See* Shrack Affidavit, Exhibit F.

[5] Rec. Docs. 14202, 14203, 14204, 14215, 14216.

totaled almost 400 pages.  In addition, Plaintiffs' Counsel consulted with United States Senators and Congressmen comprising the Chinese Drywall Congressional Caucus when they expressed an interest in preparing and filing an *amicus* brief supporting Plaintiffs-Appellees in *Germano*. Plaintiffs' Counsel provided the Congressional Caucus with documentation they requested concerning jurisdiction over Taishan.  Plaintiffs' Counsel also prepared an *amicus* brief in the *Mitchell* appeal addressing the Court's jurisdiction over Taishan and TTP in Florida since there are thousands of Florida homeowners with Taishan's Chinese Drywall in their properties.  Mr. Levin and Mr. Herman presented oral argument to the Fifth Circuit Court of Appeals in both sets of appeals (*Germano*, and *Gross/Wiltz*), which resulted in published opinions and mandates affirming Plaintiffs' judgments against Taishan.  *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 742 F.3d 576 and 753 F.3d 521 (5th Cir. 2014).

15.     In addition, Plaintiffs' Counsel after confirming jurisdiction over Taishan were successful in obtaining both a contempt order against Taishan for failure to appear for a judgment debtor examination and a sanctions order for discovery abuses. [Rec. Doc. 17869].  This Court found Taishan to be in both civil and criminal contempt.  Further, it ordered that: "Taishan, and any of its affiliates or subsidiaries, is hereby ENJOINED from conducting any business in the United States until or unless it participates in this judicial process.  If Taishan violates this injunction, it must pay a further penalty of 25% of the profits earned by the company or its affiliates who violate the order, for the year of violation." *Id*. at 3.  Plaintiffs' Counsel then orchestrated an intense investigation into the Taishan Defendants' activities during the Contempt Period.  In order to accomplish this, the PSC took numerous depositions of third parties across the United States, analyzed document productions from the Defendants and various third parties, and prepared hundreds of pages of briefs and exhibits documenting alleged Defendants' contempt violations in

extensive motions practice. [Rec. Doc. Nos. 18302, 18475]. The Court's contempt order and the efforts of Plaintiffs' Counsel were substantial contributing factors towards the renewed participation of Taishan and initiation of Taishan's parent companies' participation in the Litigation. Thereafter, Plaintiffs' Counsel successfully opposed the CNBM and BNBM entities' jurisdictional motions, which required hundreds of pages of briefing and the preparation of hundreds of exhibits. [Rec. Doc. Nos. 19556, 19557]. Specifically, Plaintiffs' Counsel provided sufficient evidence demonstrating an agency relationship between Taishan and BNBM under Florida and Virginia law and a single business enterprise among Taishan, BNBM, BNBM Group, and CNBM under Louisiana law. *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2017 WL 1476595 (E.D. La. Apr. 21, 2017) ("Jurisdictional Order"), *mot. to certify appeal granted*, 2018 WL 4863625 (E.D. La. Mar. 06, 2018). However, BNBM Group and CNBM were dismissed in Florida and Virginia, *id.*, and CNBM Group was dismissed in all jurisdictions. *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 168 F. Supp. 3d 918 (E.D. La. 2016). The issue of jurisdiction over BNBM, BNBM Group, and CNBM is not settled. These Defendants were successful in obtaining permission for an interlocutory appeal of the Court's Jurisdictional Order to the Fifth Circuit. That appeal has been fully briefed and the parties are awaiting a date for oral argument. *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, No. 18-30742 (5th Cir.). Of course, Plaintiffs' Counsel are prepared to defend this Court's rulings at the Fifth Circuit if necessary.

16.      The Class Damages track was prosecuted with alacrity and efficiency by Plaintiffs' Counsel. Once Taishan returned to defend itself, Plaintiffs were repeatedly challenged in their efforts to prove class damages. Leading up to the June 9, 2015 class damages hearing, Plaintiffs' Counsel engaged in significant fact discovery and expert discovery. Extensive pretrial briefing

was prepared, which included discovery motions and *Daubert* motions filed against Taishan's experts or responding to the Defendants' motions to exclude Plaintiffs' experts [Rec. Doc. 18908, 19014, 19034, 19062, 19066]. On June 9, 2015, Plaintiffs participated in the class damages hearing. Plaintiffs prepared witnesses and presented evidence, including the testimony of Jacob Woody of BrownGreer, the Claims Administrator, and George J. Inglis of Berman & Wright, Plaintiffs' expert on remediation damages. Plaintiffs' Counsel also prepared for and cross-examined the Defendants' expert witnesses, David Pogorolich and Dr. M. Laurentis Marais. After that hearing, Plaintiffs' Counsel prepared comprehensive findings of fact and conclusions of law, which laid the foundation for the Court's ruling. *See* Rec. Doc. 19197.

17.     Preparing for and accomplishing this discovery and monumental briefing was not performed without considerable expense. Recognizing that financing was needed to pursue the Taishan Defendants, cash calls were made to remaining Common Benefit Counsel after the Knauf settlement based on these firms' relative lodestars in the Litigation from 2014 through 2019. Mr. Garret confirmed that assessments through this time period exceeded $1.669 million. Garrett Affidavit, Exhibit 4.

18.     These assessments afforded the extensive discovery conducted since January 2014, involving over 30 depositions of parties and third parties, which produced an incontrovertible record regarding the Defendants' targeted efforts to sell their products in the United States and that (i) CNBM, BNBM Group, BNBM, and Taishan operate as a single business enterprise under Louisiana law, (ii) Taishan and BNBM are agents under Virginia and Florida law, and (iii) there is jurisdiction over BNBM under Florida law for its manufacture and sales of Dragon Board in Florida.

19.     Plaintiffs' Counsel served written discovery requests on each of the Defendants and third parties, seeking relevant and probative documents and information in their possession. Defendants produced over 300,000 documents exceeding 1.9 million pages in response to Plaintiffs' discovery requests, and also served responses to interrogatories. Further, third parties produced thousands of pages of additional documents. Defendants also asserted layers of objections to Plaintiffs' discovery requests. The parties held meet-and-confer discussions to resolve numerous discovery disputes. Those disputes that could not be resolved were presented to the MDL Court through briefs and oral arguments, which also demanded considerable time and effort. *See* Compendium of Charts of Discovery Propounded by the PSC (Shrack Affidavit, Exhibit C). *See also* Compendium of Charts of Discovery Responded to by the PSC/Plaintiffs/PSC's Discovery and Discovery Related Pleadings (Shrack Affidavit, Exhibit D hereto). Because of discovery disputes with the Taishan Defendants, Plaintiffs' Counsel were forced to prepare a number of motions to compel. *Id.*

20.     In the MDL, a document review team of attorneys from participating law firms was assembled to diligently review, sort, and code the mountain of documents Defendants produced. The document review was especially complicated and demanding, because many documents were produced in Chinese, requiring time-consuming translation and specialized translators, at great expense. To make the review and subsequent litigation more efficient, document reviewers remained in constant contact with each other to ensure that all counsel became aware of significant emerging evidence in real time. Such document review efforts and coordination were essential to make the depositions that followed productive.

21.     Proving jurisdiction over Taishan and BNBM set the stage for the Court to remand more than 1,700 Taishan *Amorin* Plaintiffs to Judge Cooke in the Southern District of Florida

(Civil Action No. 11-22408) [Rec. Doc. 21242, 21252], and 200 *Amorin* cases were remanded to Judge Davis in the Eastern District of Virginia (Norfolk Civil Action No. 11-00377) [Rec. Doc. 21695].  An additional 850 *Brooke* Plaintiffs were remanded to Judge Williams in the Southern District of Florida (Civil Action No. 15-24348) [Rec. Doc. 22138], and 30 *Brooke* Plaintiffs were remanded to Judge Smith in the Eastern District of Virginia (Norfolk Civil Action No. 15-00506) [Rec. Doc. 22139]. Prior to these remands, Plaintiffs' Counsel actively assisted the Court by providing spreadsheets identifying those claimants subject to remands, as well as Louisiana Plaintiffs not subject to remand and ready for trial. The Louisiana *Amorin* and *Brooke* actions remain in the MDL, and even though the Florida and Virginia *Amorin* and *Brooke* actions were remanded, all of these Plaintiffs' claims also remain in the Louisiana *Amorin* and *Brooke* actions because the Complaints are identical.  Since the Settlement was reached, all CDW-Related Actions, both in the MDL and on remand, have been stayed during the Settlement approval process.

22.     To progress the cases remaining on its docket, by Order dated August 23, 2018 [Rec. Doc. 21719], the Court scheduled briefing on the BNBM entities' motions to dismiss the *Brooke* and *Abner* Omni Complaints, which had been the subject of a standstill agreement for over 18 months.  Plaintiffs responded to the Defendants' efforts to challenge, among other things, the timeliness of these actions [Rec. Docs. 21766, 21767].  In addition to individual responses to both motions, Plaintiffs' Counsel also complied with this Court's request for supplemental briefing [Rec. Doc. 21963].  These efforts were successful as the Court denied in part Defendants' motions,

finding that when Plaintiffs knew of their claim is a "highly fact based inquiry not appropriate for a motion to dismiss."[6]

23.    In preparation for the contemplated trial phase of the Louisiana Plaintiffs whose claims were pending in the MDL, Plaintiffs' Counsel met and conferred with Defendants to develop a briefing schedule to afford the Court an appreciation of each side's positions.[7]   In response to the Defendants' plan for resolution of the Litigation, Plaintiffs' Counsel prepared their joint response which presented an ambitious but feasible plan to conclude both *Amorin* and *Brooke* Claims within 12 months.  This precipitated this Court's trial plan involving the selection by the parties of 40 *Amorin* Select Plaintiffs to form a discovery pool.[8]

24.    Upon entry of the Court's trial plan, Plaintiffs' Counsel rapidly set about the process of assessing their clients and vetting those to be included among the 20 selected by Plaintiffs' Counsel for the discovery pool.  This same effort was repeated upon receipt of the Defendants' selection of their 20 Plaintiffs.[9]  Thereafter, Plaintiffs' Counsel engaged in the demanding task of producing relevant documents, identifying fact witnesses and scheduling, preparing and attending the 55 depositions of the Louisiana Select Plaintiffs and related witnesses.

### B.  Plaintiffs' Counsel Continued to Prosecute Plaintiffs' Claims in the Remand Courts

25.    Plaintiffs who were remanded to their transferor courts continued to benefit from the services of Plaintiffs' Counsel whose efforts were not limited to the work performed in the

---

[6] *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2019 WL 1057003 (E.D. La. Mar. 6, 2019) [Rec. Doc. 22124].

[7] Rec. Doc. 21339.

[8] Rec. Doc. 21847.

[9] When it became impossible for one of the Select Plaintiffs (Daniel Gammage) to continue, the parties agreed to reduce the discovery pool to proceed with only 39 Select Plaintiffs. [Rec. Doc. 22097].

MDL in Louisiana. As described above, the Court suggested that the Florida and Virginia *Amorin* and *Brooke* actions be remanded. These remands ratcheted up the burdens and responsibilities of Plaintiffs' Counsel. Not only were these counsel responsible for overseeing Plaintiffs' efforts in the MDL, but now they were managing matters before four other jurists.

**C.  The Common Benefit Efforts Performed in the Southern District of Florida**

26.      Upon remand of the Florida *Amorin* cases, Plaintiffs' Counsel conducted myriad actions set forth in the Chart of Remand Court Appearances and Remand Court Pleadings (Shrack Affidavit, Exhibits G and H). The following highlights the many tasks performed on behalf of all Florida litigants:

27.      We negotiated with Defendants a Joint Case Management Plan to resolve the *Amorin* cases [SDFL ECF No. 45].[10]  The Joint Plan included a proposed schedule of pretrial deadlines, mediation, and trial dates. Based on this filing, the Court entered an Order setting trial dates and pretrial deadlines, including for the selection of 20 Priority Plaintiffs [SDFL ECF No. 47].[11]

28.      We prepared and filed a motion to stay the non-Florida claims on the *Amorin* complaint while we prosecuted those claims in the MDL and other jurisdictions [SDFL ECF Nos. 49 & 63].[12]

29.      We opposed Defendants' motion to dismiss the non-Florida claims [SDFL ECF No. 57].[13]

---

[10] Attached hereto as Exhibit 3.

[11] Attached hereto as Exhibit 4.

[12] Attached hereto as Exhibits 5 and 6.

[13] Attached hereto as Exhibit 7.

30.     On February 13, 2019, Patrick Montoya presented argument in support of our motion to stay and opposed Defendants' motion to dismiss the non-Florida *Amorin* claims. Ultimately, the Court granted our motion and stayed all non-Florida claims on the *Amorin* complaint [SDFL ECF No. 195].[14]

31.     We prepared a motion to adopt a plan for resolution of the Florida *Amorin* Plaintiffs' claims for remediation and other damages [SDFL ECF Nos. 52 & 71].[15] In our papers, we argued that "the judicial labor [was] completed" because liability already had been established in the MDL by the PSC. Plaintiffs' Trial Plan Motion (Exhibit "9" hereto), at 7. We contended that the only remaining issue to be determined on remand was the amount of damages, and we implored the Court to limit discovery to: 1) verification of under air square footage, 2) proof of Defendants' product in the affected properties, and 3) proof of ownership. *Id.* at 5.

32.     We opposed Defendants' trial plan proposal, which essentially sought to relitigate all matters previously decided in the MDL in an effort to undo Plaintiffs' progress and further delay resolution of Plaintiffs' claims [SDFL ECF No. 64].[16]

33.     We opposed BNBM's motion to enforce trial rights, which challenged Judge Fallon's determination that liability has been established as to all Defendants – including BNBM [SDFL ECF No. 80/ Rec. Doc. 21806-2].

34.     We opposed Taishan's motion to reject application of the MDL Court's remediation damages formula [SDFL ECF No. 84/ Rec. Doc. 21806-4].

---

[14] Attached hereto as Exhibit 8.

[15] Attached hereto as Exhibits 9 and 10.

[16] Attached hereto as Exhibit 11.

35.     We opposed Defendants' motion to enforce discovery rights, which sought to reopen discovery into liability and causation [SDFL ECF No. 88/ Rec. Doc. 22806-4].

36.     We responded to Defendants' motion to dismiss claims for failure to complete a Supplemental Plaintiff Profile Form [SDFL ECF Nos. 82 & 175].[17]

37.     We vetted and selected 20 Priority Plaintiffs for trial [ECF No. 73] and identified all fact witnesses for these Plaintiffs [*see* SDFL ECF Nos. 86, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150].[18]

38.     We analyzed Defendants' selection of a different set of Priority Plaintiffs [SDFL ECF No. 72][19] and the list of fact witnesses identified for those Plaintiffs [SDFL ECF No. 153].[20]

39.     We filed a joint motion for a hearing to address the parties' competing trial plans and for a determination on which set of Priority Plaintiffs would be set for trial [SDFL ECF No. 89].[21]

40.     We filed supplemental briefing urging the Court to give entirely preclusive effect to Your Honor's findings of liability and to apply the remediation damages formula to Plaintiffs' claims [SDFL ECF No. 99].[22]

41.     We responded to Defendants' supplemental briefing addressing liability as to BNBM [SDFL ECF No. 100].[23]

---

[17] Attached hereto, collectively, as Exhibit 12.

[18] Attached hereto, collectively, as Exhibit 13.

[19] Attached hereto as Exhibit 15.

[20] Attached hereto as Exhibit 16.

[21] Attached hereto as Exhibit 17.

[22] Attached hereto as Exhibit 18.

[23] Attached hereto as Exhibit 19.

42.     On November 7, 2018, we presented oral argument in support of Judge Cooke giving entirely preclusive effect to the MDL Court's rulings prior to remand and in opposition to BNBM's motion seeking to erase this Court's prior decisions on default. *See* Transcript of Motion Hearing dated 11/7/2019 [SDFL ECF No. 109].[24]

43.     Based on Class Counsel's extensive briefing and argument, on November 16, 2018, Judge Cooke entered an Order "**ADOPT[ING]** **all** of Judge Fallon's findings of facts and legal conclusions" including the MDL Court's orders (1) certifying the *Amorin* class, (2) holding all of the Defendants in default, (3) establishing liability as to all Defendants, and (4) approving the remediation damages formula as a reasonable and reliable measure of the remediation damages which the Court would apply to determine the appropriate amount of Plaintiffs' property damages [Rec. Doc. 21933-1]. Further, Judge Cooke adopted a two-track Trial Plan to resolve Plaintiffs' claims on an expedited basis. *Id.* ("Florida Trial Plan Order").

44.     First, the court-appointed Special Master Tiffani Lee [SDFL ECF No. 110][25] to calculate all Florida *Amorin* Plaintiffs' remediation damages by May 31, 2019, based on this Court's remediation damages formula.  The Florida Court permitted limited discovery on the Chinese Drywall products attributed to Taishan and BNBM, under air square footage of Plaintiffs' properties, and ownership status, and set a schedule for Defendants to assert contests to Plaintiffs' remediation damages [Florida Trial Plan Order, at 6-8].

45.     Second, the Florida Court set an aggressive schedule to try within eight months the claims for "Other Losses" of 20 Priority Plaintiffs selected by Plaintiffs, including claims for

---

[24] Attached hereto as Exhibit 20.

[25] Attached hereto as Exhibit 21.

alternate living expenses, loss of use and enjoyment, lost rent, bankruptcy, foreclosure, and short sale [Florida Trial Plan Order, at 9-11].

46.     Immediately, upon entry of Judge Cooke's Order, Plaintiffs' Counsel constituted several trial teams to meet the tight deadlines and requirements set by the court, all with an eye towards maximizing the resolution of these cases as expeditiously as possible. Often, multiple, overlapping events were scheduled in different locations across the state of Florida and in many cities in the U.S., including Atlanta, Chicago, Irvine, San Francisco, New Orleans, and Norfolk, requiring an incredible amount of detailed organization and coordination among multiple teams to ensure consistency of position and to maximize the recovery for all Chinese Drywall litigants. Because of the 8-month deadline before trial was to begin in Florida a flurry of activity ensued:

a.   Plaintiffs' Counsel negotiated a joint stipulation regarding authentication and hearsay regarding certain categories of documents for the Priority Plaintiffs [SDFL ECF No. 156].[26]

b.   Plaintiffs' Counsel engaged experts around the country in support of Plaintiffs' other losses and the current measure of Plaintiffs' remediation damages. In particular, Plaintiffs' Counsel retained Bradley Krantz and Lori Streit Ph.D., experts in the fields of corrosion, metallurgy, electrical engineering, power electronics, electrical machinery, and failure analysis to demonstrate the devastating effects of having Chinese Drywall installed in Plaintiffs' homes. They also engaged Randall Bell, Ph.D., MBA, MAI; Michael P. Elkin, CPA/CFF/ABV, CFE; Ryan D. Greenblatt; and Anthony M. Graziano, MAI, CRE, real estate and accounting experts to calculate the losses sustained by the

---

[26] Attached hereto as Exhibit 22.

Plaintiffs and the economic impact of Chinese Drywall on real estate in support of Plaintiffs' damages. *See* Chart of Remand Court Experts (Shrack Affidavit, Exhibit I).

c.   Plaintiffs' Counsel defended Plaintiffs' expert depositions and took discovery of Defendants' rebuttal experts. Class counsel deposed Defendants' Experts David J. Cohen; Marcie D. Bour, CPA/ABV, CVA, CFE, MAFF, ABAR, CDBV; Henry H. Fishkind, Ph.D.; Brian D. Flinn, Ph.D., P.E.; and Richard J. Roddewig, MAI, CRE, FRICS. *Id.*

d.   Plaintiffs' Counsel opposed Defendants' *Daubert* motions seeking to strike our experts [SDFL ECF Nos. 272, 273, 280],[27] and we filed a motion to strike Defendants' proposed expert on proper remediation protocols [*see* SDFL ECF No. 244].[28]

e.   Plaintiffs' Counsel propounded written discovery on Defendants and scheduled 30(b)(6) depositions of Taishan [SDFL ECF No. 160][29] and BNBM [SDFL ECF No. 167][30] regarding Product ID.

f.   Plaintiffs' Counsel prepared briefing and presented argument to the Special Master at a hearing to determine whether the various categories of Chinese Drywall present in Plaintiffs' properties should be attributed to Defendants despite their denials.[31]

---

[27] Attached hereto as Exhibits 23, 24 and 25.

[28] Attached hereto as Exhibit 26.

[29] Attached hereto as Exhibit 27.

[30] Attached hereto as Exhibit 28.

[31] *See* Exhibits A and E in Exhibit 29 attached hereto.

g.  Plaintiffs' Counsel filed objections to and an appeal from the Special Master's Report and Recommendation regarding Product ID categories attributable to Taishan [SDFL ECF No. 253].[32]

h.  Plaintiffs' Counsel coordinated and assisted in the defense of dozens of Priority Plaintiffs and other fact witness depositions.

i.  Plaintiffs' Counsel analyzed and approved the protocol to be used to inspect Plaintiffs' homes and Class Counsel coordinated and monitored the inspections.

j.  Plaintiffs' Counsel responded to remediation damages discovery directed to more than 1,700 Florida Plaintiffs.[33]

k.  Plaintiffs' Counsel prepared voluminous briefing in response to 17 categories of individualized preliminary and final contests lodged against 1,700 Plaintiffs' claims for remediation damages following months of detailed and time-consuming analysis and negotiations with Defendants.[34]

l.  Plaintiffs' Counsel updated the calculation of remediation damages for all Florida *Amorin* Plaintiffs in conformity with 2019 national R.S. Means data.[35]

m.  Plaintiffs' Counsel presented oral argument to the Special Master in opposition to Defendants' contests to remediation damages.[36]

n.  Plaintiffs' Counsel prepared detailed spreadsheets setting forth the support for each Plaintiff's claim for remediation damages.

---

[32] Attached hereto as Exhibit 29.

[33] Attached hereto as Exhibit 42.

[34] Attached hereto as Exhibits 43, 44, 45, & 46.

[35] Attached hereto as Exhibit 47.

[36] Attached hereto as Exhibit 48.

o.  Plaintiffs' Counsel filed a comprehensive opposition to Defendants' motion for summary judgment directed to all of the Priority Plaintiffs [SDFL ECF Nos. 269, 270, 276, 278, 279, 281, 282, 283, 284, 288].[37]

p.  Plaintiffs' Counsel Class Counsel were in the process of preparing limited objections to the Special Master's Reports and Recommendations regarding Defendants' contests and set-offs [SDFL ECF Nos. 266 & 268],[38] motions *in limine*, a joint pretrial statement, summaries of the claims and defenses regarding each of the Priority Plaintiffs, and a response to Defendants' expedited motion to establish a bench trial [SDFL ECF No. 299], when the global class settlement was reached.

47.  On May 9, 2019, Plaintiffs' Counsel appeared before Judge Williams on behalf of the approximately 850 Florida *Brooke* Plaintiffs.  Plaintiffs sought to implement the SPPF process for these Plaintiffs and provided Judge Williams with access to BrownGreer's Chinese Drywall Portal and sample profile forms, including the SPPFs prepared by Plaintiffs pursuant to PTO 11A.

**D.  <u>The Common Benefit Efforts Performed in the Eastern District of Virginia</u>**

48.  Plaintiffs' Counsel successfully obtained a similar trial plan in the Virginia *Amorin* litigation. Plaintiffs' Counsel attended the initial status conference before Judge Davis on December 18, 2018.  Thereafter, Plaintiffs' Counsel submitted detailed briefing setting forth the most efficient plan for resolving the Virginia litigation, including giving this Court's orders preclusive effect [EDVA ECF Nos. 69 and 70, 71 & 76][39], and thereafter successfully presented

---

[37] Attached hereto as Exhibits 30, 31, 32, 33, 34, 35, 36, 37, 38, & 39.

[38] Attached hereto as Exhibit 40 and 41.

[39] Attached hereto as Exhibits 49, 50, and 51.

argument at the April 30, 2019 Hearing on the plan for resolution [Rec. Doc. 22245-1]. Following the argument, Plaintiffs' Counsel submitted their Updated Remediation Damages Spreadsheet to obtain remediation damages based on current-day building materials and labor, as adjusted for local factors, for the court to calculate formulaic damage [EDVA ECF No. 85/ Rec. Doc. 21807-1]. On May 20, 2019, the Virginia Court issued an order largely adhering to the Plaintiffs' requests. [EDVA ECF No. 87/ Rec. Doc. 22253-1]. Shortly after issuing this ruling, the parties jointly sought a stay of the proceedings as a result of the successful mediation that took place on May 22-23, 2019.

49.    The remanded Virginia *Brooke* action had no activity, as it was stayed following the mediation in May 2019. Nevertheless, Plaintiffs' Counsel regularly provided the remand court with status reports to keep it apprized of the progress of the Settlement.

E. **History of the Settlement Negotiations and Mediation**

50.    In addition to Plaintiffs' Counsel coordinating and overseeing the prosecution of Plaintiffs' efforts to execute the Trial Plans in this Court and the remand Courts, they were instrumental in resolving the Litigation. This Court's implementation of the MDL "nuclear option" of remanding cases back to their original transferor courts had its intended effect of burdening the parties. Recognizing this burden as opportunity, Plaintiffs' Counsel seized on the moment when Judge Cooke's Trial Plan called for a mediation. While Plaintiffs' Counsel were actively preparing for the scheduled July 22, 2019 trial on "other damages" for 20 Priority Plaintiffs [Florida Trial Plan Order, at 11], including preparation of motions *in limine*, they were at the same time preparing for the court-mandated mediation scheduled with Mr. John Sigmund Freud, Esq.[40] The mediation took place over two days on May 22-23, 2019. With the assistance

---

[40] *See* C.V. of Mr. Freud [Rec. Doc. 22305-8].

of the mediator, Plaintiffs' Counsel made a global demand of Taishan, and the Parties exchanged detailed damage calculations, counter-offers and responses.  Following intense, hard-fought in-person negotiations, where each side acquiesced to compromises, the mediation successfully resolved with the parties achieving a Settlement Term Sheet that set forth (i) the class definition, (ii) the cash payment amount, (iii) the terms of funding, (iv) the Parties' agreement to jointly recommend to the Court that an Allocation Neutral be appointed to determine, subject to Court approval, fair and reasonable allocation criteria for equitably dividing the Settlement Funds among eligible Class Members based on objective factors including, but not limited to: Product ID; square footage; ownership status; remediation status; and whether the claimant is an *Amorin* Class Member or a *Brooke* Plaintiff, and (v) the non-cash settlement terms.

51.     Because of careful planning and diligent preparation, Plaintiffs' Counsel were able to negotiate the overarching terms of the $248 million Class Settlement that resolved the claims of all *Amorin* Plaintiffs, all *Brooke* Plaintiffs, and absent Class Members.  Excluded from the class are the 498 Florida *Amorin* Plaintiffs (listed on Exhibit 1 to the Settlement Agreement), who were offered separate individual settlements from Taishan.[41]  These Plaintiffs not only benefited from

---

[41] The common benefit efforts of Plaintiffs' Counsel benefitted all the Plaintiffs.  While Plaintiffs' Counsel were diligently litigating the Florida *Amorin* claims before Judge Cooke, certain counsel, spearheaded by Jimmy Faircloth, separately negotiated an agreement to resolve their Florida *Amorin* clients' claims, the so-called "Florida Individual Settlement" or FIS.  These counsel recognized that Plaintiffs' Counsel were still pursuing claims on behalf of all class members, including their clients, and that those efforts might surpass the terms of their FIS.  Thus, they negotiated a "Most Favored Nations" clause, which provided their clients parity with whatever terms were later obtained by Class Counsel with Taishan.  As a result of the Global Settlement, the 498 FIS claimants improved their recoveries in excess of $12 million through the Most Favored Nations clause.  Having bestowed upon the 498 FIS claimants the benefit of representing them throughout the Litigation *and* tremendously improving their settlement, Plaintiffs' Counsel petitioned to be separately compensated for their common benefit efforts in connection with the FIS proceeds before Judge Cooke.  *See* Rec. Doc. Nos. 22303 & 22341.  Plaintiffs' Counsel have requested that Judge Cooke in her discretion refrain from ruling on the fee petition before her,

the prior ten years of common benefit work-product that laid the groundwork for the FIS, but their settlements were increased on average 46% due to a "Most Favored Nations" clause that was triggered by the Class Settlement we reached with Taishan. The Class Settlement's impact on the operation of the MFN increased the FIS in the aggregate from approximately $27.7 million to $40.7 million [Rec. Doc. 22341].

52.     Thereafter, the Parties jointly moved this Court and the remand courts to stay the proceedings while the parties negotiated the details of the Settlement Agreement. The Parties then participated in several in-person meetings, as well as numerous meetings over the phone, to negotiate the terms of the final Agreement that was preliminarily approved by the Court on August 29, 2019 [Rec. Doc. 22314] and is now before the Court for final approval. At all times, the Parties proceeded at arm's length, and did not enter into any side agreements.

53.     Plaintiffs' Counsel then prepared the Motion for Preliminary Approval of the Settlement. Since the announcement of the settlement and, to a greater extent after formal Notice issued to the class, Class Counsel have fielded hundreds of inquiries of Class Members and their counsel regarding the terms of the Settlement Agreement. Beyond the notice approved by the Court, Plaintiffs' Counsel also established a Settlement website -- https://www.chinesedrywallsettlement.com/ -- to provide important information to all Class Members, including filed papers. Already the website has received over 99,000 visits (Oct. 23, 2019 Status Conference Transcript at 9).[42] As a further service, Plaintiffs' Counsel also provided a call center with a toll-free number and had attorneys respond to the hundreds of phone call

---

pending this Court's determination of this motion. A hearing is currently scheduled before Judge Cooke on January 8, 2020, to discuss the status of the Taishan settlement, among other things.

[42] Attached hereto as Exhibit 52 [Rec. Doc. 22352].

inquiries made about the Settlement. *Id.* This common benefit work reflects the dedication and devotion of Plaintiffs' Counsel, which successfully culminated in this unprecedented settlement.

## III.     CONCLUSION

54.     Throughout this Litigation the work performed by Plaintiffs' Counsel was professional and zealously conducted.  Plaintiffs' Counsel regularly produced high caliber, well-reasoned work product which substantially contributed to the success of this Litigation.  Where efforts of counsel, such as these, result in the creation of a common fund they deserve to be compensated for their work.  Given the extent of work performed over the past decade and the quality of the services performed, an award of 30% of the common fund is deserved.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 19, 2019.

SANDRA L. DUGGAN