## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALLPRODUCT LIABILITY LITIGATION | : | MDL NO. 2047 |
| | : | |
| | : | SECTION: L |
| | : | |
| | : | JUDGE FALLON |
| | : | MAG. JUDGE WILKINSON |
| | : | |
| | : | |

## ART EDGE, P.C.'S RESPONSE TO THE COURT'S OCTOBER 31, 2019 ORDER (DOC. 22356) AND MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

Comes now Art Edge, PC ("Edge") and responds to the Court's October 31, 2019 Order (Doc. 22356) and, additionally, respectfully moves this Court, pursuant to the Federal Arbitration Act ("FAA") and controlling law, to compel arbitration and stay proceedings of this fee dispute. As grounds in support, Edge states as follows:

### STATEMENT OF RELEVANT FACTS

1.     In the Fall of 2009, Dan Bryson of Lewis & Roberts, LLC (now with Whitfield, Bryson & Mason, LLP) and others (Bryson Group)[1] approached Brian Collins (Collins Law Office f/k/a Collins & Horsley f/k/a Collins & Downey), Art Edge (Art Edge, PC) and Eddie Sexton (Gentle, Turner & Sexton) (Collins Group) regarding a Co-Counsel Agreement related to Chinese Drywall cases filed in the Eastern District of Louisiana. (Exhibit A – Affidavit of H. Arthur Edge, III, at ¶ 7.)

---

[1] The Bryson Group is comprised of Dan Bryson of Lewis & Roberts, PLLC (Currently with Whitfield, Bryson & Mason, LLP), Stephen Mullins of Luckey & Mullins, Gary Mason of Mason, LLP (Currently with Whitfield, Bryson & Mason, LLP), Joe Rhine of Lea, Rhine & Rosburgh, PLLC and Christopher Coffin of Pendley, Baudin and Coffin, LLP

2.      Contained within the Agreement is a "Dispute Resolution" clause that reads "Alabama law shall apply to all disputes related to the terms of this agreement. In the event of a dispute arising from this agreement, the Law Firms agreed to submit the matter to confidential and binding arbitration utilizing rules promulgated by the American Arbitration Association ("AAA"). The parties agree to first try to select an unbiased arbitrator; however, if that effort fails, to file with the AAA. The hearing would be in Birmingham, Alabama." (*See* Co-Counsel Agreement, included as "Attachment 1" to Exhibit A.)

3.      Additionally, the Agreement affects interstate commerce because the parties to the agreement are headquartered in different states requiring travel for meetings and participating in the Louisiana-based MDL and because funds are being transferred across state lines.

## **ARGUMENT**

### I.      **The Court Lacks Jurisdiction Over this Fee Dispute.**

### A.      **The Parties' Fee-Related Claims Must be Arbitrated Pursuant to the FAA.**

The FAA "is a congressional declaration of a liberal policy favoring arbitration." *Moses H. Cone Mem'l. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Section 3 of the FAA provides for a stay of legal proceedings whenever the issues in a case are within the reach of an arbitration agreement. *Midwest Mechanical Contractors, Inc. v. Commonwealth Constr. Co.,* 801 F.2d 748, 751 (5th Cir. 1986) (discussing 9 U.S.C. § 3). If a valid arbitration agreement exists, the FAA is <u>mandatory</u> and divests courts

of jurisdiction: "If the issues in a case are within the reach of the agreement, the district court has no discretion under section 3 to deny the stay." *Id.*

To succeed on a motion to compel arbitration and stay proceedings, a party must prove two things: (1) that there is a written agreement calling for arbitration between it and the other party or parties; and (2) that the subject transaction involves or affects interstate commerce. *See Ex parte Allen*, 798 So. 2d 668, 671 (Ala. 2001). All claims alleged in this matter are subject to arbitration pursuant to the FAA, 9 U.S.C. § 1, *et seq.*, and applicable Alabama law, because the Co-Counsel Agreement incorporates an arbitration clause which applies to all parties, and because the transactions at issue involve and affect interstate commerce.

> **i.     The Co-CounselAgreement was Signed by Edge and Bryson and Incorporates a Written Arbitration Agreement.**

The Co-Counsel Agreement between the parties was signed by Art Edge, on behalf of H. Arthur Edge, III, P.C., and by Daniel K. Bryson, on behalf of Lewis & Roberts, PLLC (Ex. A ¶ 7; Ex. A, Attachment 1 [the Co-Counsel Agreement]), and incorporates the following arbitration provision:

> **§ 7 Dispute Resolution** Alabama law shall apply to all disputes related to the terms of this agreement. In the event of a dispute arising from this agreement, the Law Firms agree to submit the matter to confidential and binding arbitration utilizing rules promulgated by the American Arbitration Association ("AAA"). The parties agree to first try to select an unbiased arbitrator; however, if that effort fails, to file with the AAA. The hearing would be in Birmingham, Alabama.

(Ex. A, Attachment 1 ¶ 7.) Accordingly, all claims asserted in this matter are subject to arbitration pursuant to the parties' intent as expressed by the arbitration agreement.

ii.     **The Arbitration Clause is Broad and Encompasses all Fee Related Disputes.**

The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *see also Harvey v. Joyce*, 199 F.3d 790, 793 (5th Cir. 2000) (discussing *Moses H. Cone*). In making this determination, the Fifth Circuit distinguishes between broad and narrow arbitration clauses. If the clause is broad, the action should be stayed and the arbitrators permitted to decide whether the dispute falls within the clause. *Sedco v. Petroleos Mexicanos Mexican Nat'l Oil*, 767 F.2d 1140, 1145 n. 10 (5th Cir. 1985) (citing *Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59, 64 (2d Cir. 1983)). On the other hand, if the clause is narrow, the court may determine whether the dispute falls within the clause and should be compelled to arbitration. *Id.* Any dispute is to be decided in favor of arbitration: "[a] presumption of arbitrability exists requiring that whenever the scope of an arbitration clause is fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration. *Mar-Len of Louisiana, Inc. v. Parsons-Gilbane*, 773 F.2d 633, 635–36 (5th Cir. 1985) (citing *United Steelworkers of America v. Warrior & Gulf Navigational Co.*, 363 U.S. 574, 583, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)). Indeed, "[t]he weight of this presumption is heavy: arbitration should not be denied 'unless it can be said with positive assurance that an arbitration clause is not susceptible of an

interpretation that could cover the dispute at issue.'" *Id.* at 636 (quoting *Wick v. Atlantic Marine, Inc.*, 605 F.2d 166, 168 (5th Cir. 1979)).

Courts generally hold that arbitration clauses containing the "any dispute" language, such as the one within the Co-Counsel Agreement, are of the "broad" type. *See Sedco*, 767 F.2d at 1144 (clause deemed broad that governed "any dispute or difference between the parties"); *Mar–Len*, 773 F.2d at 634 (clause deemed broad that governed "any dispute . . . with respect to the interpretation or performance of" the contract); *Neal*, 918 F.2d at 38 (broad clause governed "any and all disputes" between the parties). As noted in *Sedco*, "[i]t is difficult to imagine broader general language than that contained in the . . . arbitration clause, 'any dispute' . . . ." 767 F.2d at 1145 (*quoting Caribbean Steamship Co., S.A., v. Sonmez Denizcilik Ve Ticare*t, 598 F.2d 1264, 1266 (2d Cir.1979)).

The language used in the Co-Counsel Agreement, which was draft by The Bryson Group, states that "In the event of a dispute arising from this agreement, the Law Firms agree to submit the matter to confidential and binding arbitration…." (Ex. A, Attachment 1 ¶ 7.) The scope of this language is broad and, pursuant to the FAA and cases cited above, dictates that this court stay this proceeding and compel this dispute to arbitration.

      **iii.**      **The Co-Counsel Agreement Involves and Affects Interstate Commerce.**

In order to compel arbitration, the transaction in question must involve interstate commerce so as to render the FAA, 9 U.S.C. § 1, *et seq.*, applicable. Section 2 of the FAA provides, in pertinent part, that a "written provision in . . . a contract evidencing a transaction **involving commerce** to settle by arbitration a controversy thereafter arising out of such

contract or transaction, or the refusal to perform the whole or any part thereof . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (emphasis added). The United States Supreme Court explained what activities "involve commerce" under the FAA in *Citizens Bank v. Alafabco, Inc.*, stating:

> We have interpreted the term "involving commerce" in the FAA as the functional equivalent of the more familiar term "affecting commerce"--words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power. *Allied-Bruce Terminix Cos.,* 513 U.S., at 273-274, 115 S.Ct. 834.
>
> . . .
>
> **Congress' Commerce Clause power "may be exercised in individual cases without showing any specific effect upon interstate commerce" if in the aggregate the economic activity in question would represent "a general practice . . . subject to federal control."** *Mandeville Island Farms, Inc. v. American Crystal Sugar Co.,* 334 U.S. 219, 236, 68 S.Ct. 996, 92 L.Ed. 1328 (1948). *See also Perez v. United States,* 402 U.S. 146 (1971); *Wickard v. Filburn,* 317 U.S. 111, 127-128 (1942). Only that general practice need bear on interstate commerce in a substantial way. *Maryland v. Wirtz*, 392 U.S. 183, 196-197, n. 27 (1968); *NLRB v. Jones & Laughlin Steel Corp*., 301 U.S. 1, 37-38 (1937).

539 U.S. 52, 123 S.Ct. 2037 (2003) ("*Alafabco*") (emphasis added). Following *Alafabco*, the Alabama Supreme Court has held that "the FAA is applicable to transactions (1) that use the channels of interstate commerce, (2) that involve the instrumentalities of interstate commerce, or persons or things in interstate commerce, or (3) that involve general activities having a substantial effect on interstate commerce." *Edwards v. Costner*, 979 So. 2d 757, 761 (Ala. 2007) (citing *McKay Bldg. Co. v. Juliano,* 949 So. 2d 882, 885 (Ala. 2006)). Furthermore, when determining whether contracts fall under the FAA, "the requirement that an individual

contract involve interstate commerce should be read in the broadest possible terms because the word 'involving' signals 'an intent to exercise Congress' commerce power to the full.'" *Jim Walter Homes, Inc. v. Saxton*, 880 So. 2d 428, 432 (Ala. 2003) (quoting *Allied-Bruce Terminix Cos. V. Dobson*, 513 U.S. 265, 277 (1995)).

The Co-Counsel Agreement involves or affects interstate commerce because it was entered into by parties in various different states, involves claims litigated in Louisiana, and because the parties were required to cross state lines including firms located in North Carolina, Washington DC, Mississippi and Alabama and send funds electronically across state lines in order to perform their contractual duties under the Co-Counsel Agreement.

**B.     This Court Lacks Ancillary Jurisdiction Over this Fee Dispute.**

Even in the absence of a binding arbitration clause, this Court would still lack jurisdiction over this fee dispute because the Court lacks ancillary jurisdiction.

"Federal courts are courts of limited jurisdiction." *In re Cmty. Bank,* 911 F.3d at 670 (internal citation and quotation marks omitted). Typically, federal courts' jurisdiction arises from either federal question or diversity jurisdiction; though, federal courts may also assert ancillary jurisdiction "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Id.* at 671 (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994)). Indeed, the practical basis for ancillary jurisdiction is "to protect legal rights or effectively to resolve an entire, logically entwined lawsuit."

7

*Peacock v. Thomas*, 516 U.S. 349, 355, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996) (internal citation and quotation marks omitted). "Ancillary jurisdiction allows the court to hear claims that bear a 'logical relationship to the aggregate core of operative facts which constitutes the main claim over which the court has an independent basis of federal jurisdiction.'" *Warren G. Kleban Eng'g Corp. v. Caldwell*, 490 F.2d 800, 802 (5th Cir.1974). However, the exercise of ancillary jurisdiction is discretionary. *Olympia Hotels Corp. v. Johnson Wax Development Corp.*, 908 F.2d 1363, 1365 (7th Cir. 1990).

Courts have exercised ancillary jurisdiction over disputes between attorneys and clients over the proper amount of attorney's fees due the attorneys for work performed in the underlying litigation. *Cluett, Peabody & Co. v. CPC Acquisition Co.*, 863 F.2d 251, 256 (2d Cir. 1988); *Novinger v E.I. DuPont de Nemours & Co.*, 809 F.2d 212, 217 (3d Cir.), cert. denied, 481 U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987); *520 East 72nd Commercial Corp. v. 520 East 72nd Owners Corp.*, 691 F.Supp. 728, 737 (S.D.N.Y. 1988). However, other than in the settlement of class actions, courts have declined to exercise ancillary jurisdiction over disputes between attorneys as to the proper division of fees earned in the underlying litigation. *Adams v. Allied Chemical Corp.*, 503 F.Supp. 253 (E.D.Va.1980), aff'd, *Taylor v. Kelsey*, 666 F.2d 53, 54 (4th Cir.1981) (per curiam) (fee splitting agreement); *See also In re Hijacking of Pan American World Airways, Inc. Aircraft at Karachi International Airport, Pakistan on September 5, 1986,* 698 F.Supp. 479, 482 (S.D.N.Y.1988) (court would not ordinarily exercise ancillary jurisdiction to settle fee dispute between law firm and former member, assuming the court had such jurisdiction); *Sederquist v. Court*, 861 F.2d 554, 557

(9th Cir.1988) (no ancillary jurisdiction over separate action to recover attorneys' fees from non-parties to the first action).

In *Law Office of Daniel E. Becnel, Jr. v. John Arthur Eaves Law Firm*, 2001 WL 1426681 (EDLA 2001), this Court concluded that it did not have jurisdiction over a dispute between attorneys over a private referral agreement. The Court applied the Tenth Circuit's analytical test from *Jenkins v. Weinshienk*, 670 F.2d 915, (10th Cir. 1982)) to determine ancillary jurisdiction: (1) an ancillary matter should arise from the transaction that was the basis of the principal proceeding, during the course of the principal proceedings, or as an integral part of the main proceedings; (2) the federal court should be able to determine the matter without a substantial new fact-finding proceeding; (3) failing to determine the matter should not deprive a party of any important procedural or substantive right; and (4) the matter should be decided in order to protect the integrity of the principal proceeding or ensure that its disposition is not frustrated.

Applying the *Jenkins* test to this case shows that the Court should not exercise ancillary jurisdiction in this matter. First, the fee dispute does not arise from the injuries sustained by the parties in the Chinese drywall lawsuit—i.e., the homeowners harmed by the toxic drywall. This dispute arises solely from a Co-Counsel Agreement between the parties. Second, the Court would be unable to resolve the instant dispute without substantial fact-finding. This Court does not know the relationship between the parties, the division of labor agreed upon by the parties, or what work was even done by the parties. Per the terms of the Co-Counsel Agreement, the parties are required to submit any dispute to arbitration where a hearing and

possibly discovery would be conducted. Third, the Court's failure to decide the fee dispute will not deprive any of the parties to the original action of any rights because those parties (the homeowners) are not involved in this fee dispute. Finally, resolution of the fee dispute will have no impact on the integrity of the principal proceeding and will not frustrate its disposition. Additionally, on October 24, 2019, the Third Circuit, in *In Re: National Football League Players' Concussion Injury Litigation*, ruled that the district court did not have jurisdiction over a fee dispute between firms applying the *Jenkins* test in a circumstance almost identical to this. 2019 WL 5618161 (EDPA 2019).

## II.     Art Edge's Response in Compliance with Court's October 31, 2019 Order.

Should this Court refuse to compel arbitration or divest itself of jurisdiction of this fee dispute, Edge submits to the Court the following in support of its claim for attorney's fees:

### A.      Dispute between Collins Group and Bryson

The Collins Group entered into an agreement with the Bryson group to "jointly represent these individuals (Chinese drywall clients), and others who may be retained by the Collins Group in the future, in class and individual actions which have been or will be filed in state or federal courts." Beyond the overall representation of Clients the agreement provides certain duties of Bryson:

**Filing in the MDL**

The Bryson Group will assist in the filing of all cases that the Collins Group seeks to file in the MDL. (Para. 2)

**MDL Participation**

The Collins Group desires to participate in the MDL through committee work and application for common benefit time. Dan Bryson will assist the Collins Group in joining MDL committees. The Collins Group is hereby advised that the PSC requires a payment of $10,000 per committee member, payable by the Collins Group. (Para. 3)

**Consulting with Collins Group**

Daniel K. Bryson, or other members of the Bryson Group, will consult with the Collins Group on an as requested basis during the pendency of this agreement on all aspects of this litigation. Upon request, at least once per quarter, Bryson will travel to Birmingham to consult with the Collins Group. Also, Bryson will facilitate with either his staff, or through appropriate training and software as permitted by the PSC, the review of all documents produced by parties such as Interior Exterior.

**Decision – Making and Communication**

Counsel agree to keep each other informed about their work projects and additional case acquisition. Counsel agree to communicate by conference call or other agreed means in order to make key strategic decisions with regard to filing in the MDL. Counsel agrees to not settle any case in the MDL without the approval of all undersigned law firms.

Edge does not dispute that Bryson assisted The Collins Group in filing claims in the MDL.  In fact, Bryson provided paralegal services to The Collins Group at the Edge and Collins law offices to assist in meeting Court mandated deadlines. In addition, Bryson has provided paralegals in his office to assist with submitting documents and Platiniff Profile Forms throughout the litigation. However, Bryson was unable to secure any common benefit time for The Collins Group, did not travel to Alabama after the initial meeting for any meetings with Edge or Collins, nor did he inform The Collins Group of any pending settlements or negotiations. The vast majority of the work provided by The Bryson Group was administrative

in nature and performed by paralegals.  This is evidenced by Dan Bryson's July 27, 2016 detailing the tasks performed by his office, attached as Exhibit B.  Edge agrees that Bryson deserves a portion of the fee based on his assistance with the submission of cases, but Bryson provided little to no legal services to assist The Collins Group. Bryson should not be compensated 25% of the fees filed through his office simply because an agreement was signed that he did not fulfill. Additionally, as discussed in Section 1, discovery is necessary to determine if any time The Bryson Group submitted as common benefit was spent assisting The Collins Group.

### B.      Dispute between Edge and Collins

Art Edge and Brian Collins formed Edge & Collins, PC on March 8, 2001. Over the next several years Edge and Collins practiced together with other lawyers. In 2005, irreconcilable differences arose between the two and they split into Art Edge, PC and Collins, Liveoak & Boyles (which would after several reiterations become The Collins Law Office). After the split the parties entered into a fee sharing agreement. In January 2017, the parties ceased operating together. The dispute between Edge and Collins involves more than just Chinese drywall fees and includes fees from other cases over the course of the fee sharing arrangement. This dispute will require extensive fact discovery and should not be before this Court.

### C.      Dispute Between Edge, Collins and Joe Buffington (Law Offices of Joe Buffington)

Brian Collins entered into a verbal referral agreement with Joe Buffington for the prosecution of any Chinese drywall cases that Buffington signed up and referred to Collins and Edge. Edge is unaware of the specific terms of their verbal agreement and neither Collins

12

nor Buffington have disclosed those terms to Edge. Over the course of the litigation, Buffington referred the following cases with allocated attorney's fees:

| | |
|---|---|
| Forbes, William | $675.52 |
| Ballard, James | $617.06 |
| Nearing, Wayne | $539.24 |
| Haralson, Tommy & Sanda | $34,379.13 |
| Cox, Donnis & Thoms | $37,910.34 |
| Sumner, David & Amy | $29,379.43 |
| Cook, Thomas & Martha | $24,690.45 |
| Davis, James and Nancy | $36,531.78 |
| Gibbs, Michael and Eileen | $32,761.07 |
| Moulin, William | $25,786.03 |
| Fowler, David & Nan | $25,890.26 |
| Peace, Dan & Shron | $39,016.31 |
| Nichols, John & Pamela | $30,974.27 |
| Hoit, Charles & Leta | $38,782.57 |
| Johnson, George & Millie | $62,326.38 |
| Nguyen, Katie | $27,186.54 |
| Dennis, Jack & Sabrina | $78,985.52 |
| Thrower, Christopher & Jennifer | $954.00 |

| Jackson, James & Amy | $39,034.02 |
|---|---|
| Smith, Patrick | $57.58 |
| Sutherland, Heath | $69.49 |
| **TOTAL** | **$566,546.99** |

All of Buffington's cases were submitted through Bryson's office.  As a result, these fees would be subject to any decrease based upon a ruling as to what Bryson is entitled to. The Collins Group handled the day to day administration of Buffington's files, although, Edge admits that Buffington was heavily involved with these clients.

## CONCLUSION

The parties to this matter entered into a written contract that incorporated an arbitration provision, and the transaction at issue involved interstate commerce. Thus, pursuant to the FAA and the above cited United States Supreme Court and Alabama Supreme Court precedent, Edge's Motion to Compel Arbitration and Stay Proceedings is due to be granted.  If this Court, does not Compel this action to Arbitration, Edge requests this Court deny any motions regarding the fee allocation and allow the parties to resolve their dispute in the appropriate U.S District or State Court.

**WHEREFORE**, premises considered, Edge requests that this Honorable Court compel arbitration of all claims alleged by all parties pursuant to the arbitration agreement attached hereto, and stay all proceedings until arbitration has completed, and for any other or different

relief the Court deems just.  Alternatively, Edge requests that all motions be denied, so these

claims can be filed with the appropriate U.S. District or State Court.


                                                    s/ H. Arthur Edge, III
                                                    H. Arthur Edge, III (ASB-8927-d64h)

**OF COUNSEL**:
ARTHUR EDGE, III, P.C.
2320 Highland Avenue South, Suite 175
Birmingham, Alabama 35205
telephone: (205) 453-0322
facsimile: (205) 453-0326
art@edgelawyers.com


### CERTIFICATE OF SERVICE

        I hereby certify that on December 2, 2019, I electronically filed the foregoing with the
Clerk of the Court using the CM/ECF E-filing system and Lexis File and Serve which will
send notification of such filing; and I hereby certify that any non-E-filing participants to whom
the foregoing is due will have a copy of same placed in the United States mail, first class
postage prepaid and properly addressed this same day.


                                                    s/ H. Arthur Edge, III
                                                    OF COUNSEL