UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |
|---|---|
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS (except *The Mitchell Co., Inc. v. Knauf Gips KG, et al.*, Civil Action No. 09-4115 (E.D. La.)) | |

### DECLARATION OF SANDRA L. DUGGAN IN SUPPORT OF SETTLEMENT CLASS COUNSEL'S MOTION FOR ENTRY OF AN ORDER AND JUDGMENT (1) GRANTING FINAL APPROVAL OF THE CLASS SETTLEMENT WITH TAISHAN AND (2) CERTIFYING THE SETTLEMENT CLASS

Sandra L. Duggan declares, pursuant to 28 U.S.C. §1746, based upon personal knowledge, information and belief, the following:

1. I am Of Counsel to the law firm of Levin, Sedran & Berman LLP. Since the inception of this Litigation in 2009, I have worked closely with Plaintiffs' Lead Counsel Arnold Levin, the Plaintiffs' Steering Committee ("PSC"), Plaintiffs' Liaison Counsel, and others on virtually a daily basis to prosecute the Claims of Plaintiffs. I was one of the principal negotiators of the Class Settlement with Taishan (the "Settlement"), filed on August 20, 2019 [Rec. Doc. 22305-2]. On August 29, 2019, the Court preliminarily approved the Settlement and appointed me to serve as Settlement Class Counsel. *See* Preliminary Approval Order [Rec. Doc. 22314] at ¶¶ 2 & 5. I submit this Declaration in support of Settlement Class Counsel's Motion for Entry of an Order and Judgment (1) Granting Final Approval of the Class Settlement with Taishan and (2) Certifying the Settlement Class ("Motion for Final Approval"). I have personal knowledge of the information set forth herein. Capitalized terms used in this Declaration have the same meaning as those defined in the Settlement Agreement.

EXHIBIT 4 to Memorandum of Law in Support of Class Settlement

2. In addition to myself, the MDL Court appointed as Settlement Class Counsel (i) Plaintiffs' Lead Counsel Arnold Levin from Levin, Sedran & Berman LLP; (ii) Plaintiffs' Liaison Counsel Stephen J. Herman from Herman, Herman & Katz, LLC; (iii) PSC member and Interim Lead Counsel in Florida for remanded *Amorin* and *Brooke* Claims Patrick S. Montoya from Colson Hicks Eidson; and (iv) PSC member and Lead Counsel in Virginia for remanded *Amorin* and *Brooke* Claims Richard J. Serpe from The Law Offices of Richard J. Serpe, P.C. [Rec. Doc. 22314, at ¶ 5]. Settlement Class Counsel have extensive experience representing Plaintiffs in class actions, mass torts, and multidistrict litigation. *See generally* C.V.'s of Settlement Class Counsel [Rec. Doc. 22305-9]; *see also* Declarations of Arnold Levin, Stephen J. Herman, Patrick S. Montoya, and Richard J. Serpe (attached as Exhibits "22"–"25" to the accompanying Memorandum of Law in Support of the Motion for Final Approval). They have received numerous appointments to leadership positions as Plaintiffs' Lead Counsel and/or as members of Plaintiffs' Executive Committees or Steering Committees. *Id*. Collectively, they have decades of experience in serving as Class Counsel. In those leadership roles, Settlement Class Counsel have garnered substantial and comprehensive knowledge and familiarity with negotiating national class and aggregate settlements that have achieved final court approval. *Id*.

3. Over many years of experience, Settlement Class Counsel have gained a thorough understanding of the overarching legal and prudential considerations and constructs that are common to global resolutions in class actions, mass torts and MDLs. In addition, Settlement Class Counsel have a wealth of training and ability to assess (i) the risks involved in trying cases, including difficulties in proving liability, causation, and damages, (ii) the inherent delays and expenses required to bring a case to conclusion, and (iii) the likelihood of appeals and efforts needed to collect on a judgment if successful.

4. When negotiating a class settlement, there are many factors that class counsel must take into consideration. Class counsel need to evaluate, among other things, the strength of the plaintiffs' claims, individually and collectively, taking into consideration the types of alleged damages; the availability of evidence to prove those damages; all potential defenses (*e.g.*, lack of causation, statutes of limitations); risks of litigating if a settlement is not achieved and risks of not achieving class certification; delays attendant to resolution of a large number of individual actions; potential appeals from favorable court rulings and verdicts; and potential difficulties of collectability.

5. It is class counsel's duty to consider the class as a whole when negotiating a global resolution of plaintiffs' claims and then attempt to achieve the best possible overall result under the circumstances, which is fundamentally fair, reasonable, and adequate. It is usually not possible to gain compensation for every alleged injury or condition through a class settlement. Defendants are often willing to risk opt-outs for certain claims or damages that they perceive to be weak and/or without merit.

6. Specifically, Settlement Class Counsel have intimate knowledge of the strengths and weaknesses of the Claims in this *Chinese Drywall* Litigation through their day-to-day involvement in the case for more than ten years. During that time, Settlement Class Counsel, among other things: (i) created innovative Omni Complaints and served the foreign manufacturers and their parent entities through the Hague Convention, securing defaults for all *Amorin* Plaintiffs; (ii) served extensive written discovery on Defendants and third parties in the Chinese Drywall supply chain; (iii) prepared discovery requests directed to the Consumer Product Safety Commission, Environmental Protection Agency, Centers for Disease Control, Department of State, Florida Department of Health, Florida Department of Financial Services (Division of State

Fire Marshall), and Louisiana Departments of Health, Environmental Quality, Economic Development, and Justice; (iv) tested and preserved Chinese Drywall removed from Plaintiffs' homes and created the Taishan Product ID Catalog of all categories of Chinese Drywall alleged to be manufactured by Taishan and/or BNBM (Rec. Doc. 22152-3); (v) conducted several bellwether trials; (vi) exchanged millions of pages of documents with Defendants and third parties on liability, Product ID, jurisdiction, and class remediation damages and individual losses; (vii) took hundreds of depositions of employees of Defendants and third parties throughout the United States, and also in London, Frankfurt, and Hong Kong; (viii) developed experts on issues of corrosion, metallurgy, electrical engineering, power electronics, electrical machinery, failure analysis to demonstrate the devastating effects of having Chinese Drywall installed in Plaintiffs' homes, the proper scope of remediation, proper inspection protocols, Chinese law, and damages for lost equity and the economic impact of Chinese Drywall on real estate; (ix) negotiated and administered nine class settlements with the Knauf Entities and hundreds of builders, suppliers, installers and insurers of Chinese Drywall, as well as the related class settlement with Taishan of Assigned Claims in MDL No. 2047 on Behalf of the Porter-Blaine/Venture Supply Class Regarding Claims Assigned to the Class by the Porter-Blaine/Venture Participating Defendants and Participating Insurers Against Taishan Gypsum Company Ltd. and Taian Taishan Plasterboard Co., Ltd. [Rec. Doc. 21544]; (x) definitively established jurisdiction over Taishan; (xi) established jurisdiction over Taishan's parents BNBM, BNBM Group, and CNBM, a decision which is currently on appeal in the Fifth Circuit; (xii) obtained certification of the *Amorin* Class and obtained an Order approving the Class Remediation Damages Formula; and (xiii) continued to lead the prosecution of Florida and Virginia *Amorin* and *Brooke* Plaintiffs' Claims after remand, among other things.

7.      In fact, since June 2009, Settlement Class Counsel have worked diligently and often around the clock to vigorously prosecute the claims of approximately 10,000 Chinese Drywall Plaintiffs in this MDL. As a result of early bellwether trials – *Germano* and *Hernandez* – the PSC was able to enter into a comprehensive KPT Pilot Remediation Program for claimants who had drywall manufactured by the German defendant, Knauf, which led to a negotiated resolution with Knauf and related entities. The class settlement agreement provided comprehensive remediation and cash benefits to homeowners with KPT Chinese Drywall, which the MDL Court certified as a class action and approved on February 7, 2013. *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2013 WL 499474 (E.D. La. Feb. 7, 2013). In addition, the PSC reached class settlement agreements with hundreds of downstream defendant homebuilders, suppliers, and installers (and most of their insurers), resulting in the resolution of almost all the Knauf entities' chain-of-commerce litigation. *Id.* Relatedly, the PSC negotiated, and the MDL Court approved on July 9, 2013, four additional class settlements with several downstream entities in the Taishan chain of commerce and their insurers for the benefit of mostly Virginia claimants [Rec. Doc. 16934].

8.      The PSC also aggressively pursued litigation against Taishan and the Additional Released Parties, obtaining defaults against Taishan, BNBM, BNBM Group, and/or CNBM in various cases early in the Litigation. In addition, after the *Amorin* Class was certified, the PSC filed additional complaints (the "*Brooke*" actions) with new Plaintiffs who were not part of the certified *Amorin* Class, asserting similar claims to the *Amorin* actions. The *Brooke* actions remain in the early stages – there have been no defaults entered, there have not been any responsive pleadings filed, and a class has not been certified.

9.      During the course of the Litigation against Taishan, jurisdiction over the foreign manufacturers and their parent companies was a paramount concern. It took four years, from 2010-

5

2014, for Plaintiffs to successfully establish jurisdiction over Taishan in Louisiana, Virginia, and Florida, through four separate appeals to the Fifth Circuit. In 2017, the PSC obtained a favorable jurisdictional opinion from the MDL Court against Taishan's parent companies BNBM, BNBM Group, and CNBM in Louisiana, and against BNBM in Florida and Virginia. *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2017 WL 1476595 (E.D. La. Apr. 21, 2017) ("Jurisdictional Order"), *mot. to certify appeal granted*, 2018 WL 4863625 (E.D. La. Mar. 06, 2018). However, BNBM Group and CNBM were dismissed in Florida and Virginia; and CNBM Group, CNBMIT Co. Ltd., CNBM USA Corp., and United Suntech Craft were dismissed in all jurisdictions. *Id.* & *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 168 F. Supp. 3d 918 (E.D. La. 2016). The issue of jurisdiction over BNBM, BNBM Group, and CNBM is not settled. These Defendants were successful in obtaining permission for an interlocutory appeal of the Court's Jurisdictional Order to the Fifth Circuit. That appeal has been fully briefed and oral argument has been scheduled for the week of February 3, 2020. *See In re Chinese-Manufactured Drywall Prod. Liab. Litig*., No. 18-30742, Notice of Oral Argument, Doc. No. 00515211235 (5th Cir.) (Nov. 22, 2019). An adverse jurisdictional ruling from the appellate court could affect Plaintiffs' ability to enforce and collect on any final judgment that might be obtained in litigation if the Settlement is not approved.

10. After nearly nine years of litigation, this Court began the process of remanding *Amorin* and *Brooke* actions in 2018. First, this Court suggested that the Florida and Virginia *Amorin* actions be remanded. Then, on March 11, 2019, this Court suggested that the Florida and Virginia *Brooke* actions be remanded. The Florida *Amorin* action was remanded to Judge Cooke in the Southern District of Florida (Civil Action No. 11-22408), the Virginia *Amorin* action was remanded to Judge Davis in the Eastern District of Virginia (Norfolk Civil Action No. 11-377),

the Florida *Brooke* action was remanded to Judge Williams in the Southern District of Florida (Civil Action No. 15-24348), and the Virginia *Brooke* action was remanded to Judge Smith in the Eastern District of Virginia (Norfolk Civil Action No. 15-506). The Louisiana *Amorin* and *Brooke* actions remain in the MDL, and even though the Florida and Virginia *Amorin* and *Brooke* actions were remanded, all these Plaintiffs' claims also remain in the Louisiana *Amorin* and *Brooke* actions because the Complaints are identical. Since the Settlement was reached, all Chinese Drywall-Related Actions, both in the MDL and on remand, have been stayed during the Settlement approval process.

11. Upon remand of the Florida *Amorin* cases, on November 16, 2018, Judge Cooke entered an ambitious two-track scheduling order designed to move the cases to resolution – one track for remediation damages and one track for other losses [Rec. Doc. 21933-1]. For the next six months, the Parties worked diligently, and many times Settlement Class Counsel worked around the clock to execute the remand court's trial plan. On behalf of approximately 1,700 Florida *Amorin* Plaintiffs, Settlement Class Counsel responded to Defendants' discovery requests and contests regarding remediation damages, generally, and proof of Product ID, ownership status of Affected Properties, under air square footage, remediation status, prior payments for Chinese Drywall Claims, and assignments of claims to third parties, specifically.

12. In addition, in Florida, Settlement Class Counsel and other common benefit counsel, including PSC members and attorneys working under their direction, took the deposition of Taishan's 30(b)(6) witness regarding the categories of Chinese Drywall alleged to be attributed to Taishan. Settlement Class Counsel also attempted to depose BNBM on Product ID issues. However, even though BNBM's 30(b)(6) witness had been granted approval to enter the United

States, he had yet to formally receive his visa. Given the time constraints of Judge Cooke's trial plan order, the Parties agreed to written discovery of BNBM in lieu of live testimony.

13. Following the Product ID and remediation damages discovery, the Parties presented multiple briefs with evidentiary support and several days of oral argument to court-appointed Special Master Tiffani Lee. Despite Settlement Class Counsel's zealous advocacy in support of Plaintiffs' Product ID contentions, the Special Master concluded there was insufficient evidence that Defendants manufactured the products they denied, except for one marking for which Plaintiffs had direct evidence of attribution to Taishan. Plaintiffs objected to the unfavorable portions of the Special Master's Product ID Report and Recommendation, but those objections were still pending at the time the Settlement was reached. If the Special Master's ruling had been upheld by Judge Cooke, more than half of the Florida *Amorin* Plaintiffs (and likely similarly situated *Amorin* Plaintiffs in other jurisdictions and similarly situated *Brooke* Plaintiffs) would have recovered nothing. These vigorously contested Product ID issues would have continued in other remand courts, and could have led to even further motion practice, discovery, trials and appeals.

14. In addition, the Parties engaged in substantial briefing concerning Defendants' Contests and Set-Offs to the remediation claims of over 1,700 *Amorin* Plaintiffs. The Parties presented oral argument to Special Master Lee regarding Defendants' Contests and Set-Offs, and the Special Master issued two Reports and Recommendations Regarding Defendants' Contests and Set-Offs in which she sustained some of Defendants' Contests, denied others and deferred on several. The time for filing objections to the Special Master's Reports and Recommendations on Defendants' Contests to Remediation Damages was not ripe when the Settlement was reached, so no objections regarding those rulings were filed by either side.

15.     Beyond remediation damages, the Parties in Florida also engaged in discovery regarding the "Other Losses" of 20 Priority Plaintiffs whose claims were set for trial in July 2019. During a two-month period, those Priority Plaintiffs produced relevant documents requested by Defendants concerning alternative living expenses, short sales, foreclosures, bankruptcies, bodily injury claims, loss of use and enjoyment, punitive damages, lost equity, personal property damages and other losses. In addition, Priority Plaintiffs prepared lists of fact witnesses and submitted themselves (and other owners of the Affected Properties) for depositions and home inspections if requested.

16.     Following fact discovery, Settlement Class Counsel, and other common benefit counsel working under their direction, engaged in expert discovery and motions practice in preparation of the trials scheduled for the claims of "Other Losses." Tens of thousands of pages of expert reliance material were exchanged, including copious scientific testing data and complex housing market valuations. Depositions of both Plaintiff and Defendant experts were vigorously pursued, generating thousands of pages of expert transcripts. These depositions formed the basis of motion practice, which was fully briefed and pending at the time the proposed Settlement was reached.

17.     Further, in Florida, Defendants filed an omnibus motion for summary judgment, which posited multiple theories as to why the Priority Plaintiffs should not be entitled to recover (or, to the extent they can recover, why their damages should be minimized). Plaintiffs responded to this motion, but it was pending at the time the Settlement was reached.

18.     Trial plans like the Florida *Amorin* trial plan were set by the MDL Court with respect to the Louisiana *Amorin* claims [Rec. Doc. 22251], and by Judge Davis with respect to the Virginia *Amorin* claims [Rec. Doc. 22253-1]. In Louisiana, the Parties engaged in fact discovery

9

involving 39 Select Claimants, who (along with other owners of the subject Affected Properties) submitted themselves for depositions and home inspections, and were preparing to engage in expert discovery at the time the Settlement was reached. In advance of trial, the MDL Court ruled that the former owners' diminished property values are presumptively the same as the cost required to remediate the homes. *See* Order & Reasons [Rec. Doc. 22237] at 12.

19. Proceedings with respect to the remanded *Brooke* cases were still in their infancy when they were remanded. However, in addressing Defendants' motions to dismiss *Brooke* actions on statute of limitations grounds, the MDL Court recognized that class action tolling did not broadly apply, and thus, the viability of many *Brooke* claims would have to be addressed on a case-by-case basis. Otherwise, all the issues in the *Brooke* actions are yet to be litigated, including individual determinations regarding application of the respective statutes of limitation and statutes of repose, and the applicability of any rulings from the *Amorin* actions to the *Brooke* actions.

20. Pursuant to the aggressive schedule set by Judge Cooke for the Florida *Amorin* cases, the Parties were set to engage in court-ordered mediation on May 22-23, 2019. *See* Notice of Mediation (FLSD ECF No. 235); Notice of Order of Referral and Order Regarding Court Practices and Procedures (FLSD ECF No. 113) at ¶ 3; Joint Report No. 110 of Plaintiffs' and Defendants' Liaison Counsel [Rec. Doc. 22224] at 35 (citing Notice of Mediation). Shortly before the mediation, Parker Waichman LLP filed an objection to the Notice of Mediation and any resulting mediation implicating the rights of Parker Waichman's clients who were among the 498 *Amorin* Plaintiffs who had received a separate settlement offer from Taishan. *See* Notice of Objection to Mediation (FLSD ECF No. 239) (attached as Exhibit "27" to the accompanying Memorandum of Law in Support of the Motion for Final Approval).

10

21. The Parties jointly selected John S. Freud as the Mediator. *See* Notice of Mediator Selection (FLSD ECF No. 237); C.V. of John S. Freud [Rec. Doc. 22305-8]. In late April 2019, the Parties began settlement discussions that involved arm's-length negotiations over several weeks to reach this Settlement. Under the guidance of Mr. Freud, Settlement Class Counsel made a global demand of Taishan, and the Parties exchanged detailed damage calculations and arguments in support of their respective positions, and made counter-offers and responded to the other side's positions.

22. The mediation took place on May 22-23, 2019. In addition to Settlement Class Counsel, PSC member Pete Albanis of Morgan & Morgan, Plaintiffs' Counsel Emma Schwab of Barrios, Kingsdorf & Casteix , Allison Grant, and Holly Werkema of Baron & Budd, participated in and contributed to the negotiations of the Settlement. Mr. Faircloth was present at the mediation, but he did not participate in any of the class settlement negotiations.

23. Following intense, hard-fought, in-person mediation sessions that proceeded over two days, where each side made demands and acquiesced to compromises, on May 23, 2019, the Parties agreed to a Settlement Term Sheet on behalf of the Settlement Class that set forth (i) the class definition, (ii) the cash payment amount, (iii) the terms of funding, (iv) the Parties' agreement to jointly recommend to the Court that an Allocation Neutral be appointed to determine, subject to Court approval, fair and reasonable allocation criteria for equitably dividing the Settlement Funds among eligible Class Members based on objective factors including, but not limited to: Product ID; square footage; ownership status; remediation status; and whether the claimant is an *Amorin* Class Member or a *Brooke* Plaintiff, and (v) the non-cash settlement terms. Thereafter, over the next three months, the Parties met in person on multiple occasions and over the phone to negotiate the terms of the final Settlement Agreement.

24.     Both sides vigorously negotiated their respective positions on all material terms of the Settlement Agreement and the negotiations were non-collusive. At all times, the Parties proceeded at arm's length. The Settlement contains all terms agreed to by the Parties. They did not enter into any side agreements. Nor did they negotiate a particular fee amount; that decision remains entirely in the Court's discretion.

25.     The named class representatives are David Griffin, a Florida *Amorin* Plaintiff; Lillian Eyrich, a Louisiana *Amorin* Plaintiff; Michelle Germano, a Virginia *Amorin* Plaintiff; Virginia Tiernan, a Florida *Brooke* Plaintiff; Debra Williams, a Louisiana *Brooke* Plaintiff; and Judd Mendelson, a Virginia *Brooke* Plaintiff. This group of class representatives represents a cross-section of the Settlement Class because there is both an *Amorin* and a *Brooke* representative from the three states where the majority of the proceedings have occurred. They all have a high degree of knowledge and understanding of the Litigation and, in fact, Ms. Eyrich is an attorney. In addition, all of the Settlement Class Representatives support certification of the Settlement Class and final approval of the Settlement. *See* Affidavits of Settlement Class Representatives (attached as Exhibits "16"–"21" to the accompanying Memorandum of Law in Support of the Motion for Final Approval).

26.     After the Court preliminarily approved the Settlement and approved dissemination of Notice to the Settlement Class, BrownGreer – the approved Claims Administrator – sent to each known Class Member, *via* first-class mail, postage prepaid, a long-form notice approved by the Court. That Notice contained sufficient information for each Class Member to make an informed decision by clearly and concisely stating, in plain English, the nature of the action, class definition, claims and defenses, and that any Class Member could enter an appearance at the Fairness Hearing. The Notice also explained that a Class Member could object to the Settlement, and provided the

manner for objecting and the deadline for doing so. Further, the Notice provided that Class Members could request exclusion, the time and manner for requesting exclusion, and the binding nature of a judgment on Class Members who do not request exclusion. For the *Amorin* Plaintiffs and *Brooke* Plaintiffs listed on the Master Spreadsheet [Rec. Doc. 22312-1], the Notice was accompanied by an individualized Estimate Letter prepared by BrownGreer. Further details concerning this transparent process are set forth in the Declaration of Jacob S. Woody dated 12/2/2019 (attached as Exhibit "12" to the accompanying Memorandum of Law in Support of the Motion for Final Approval).

27. Settlement Class Counsel provided a copy of the Notice to the MDL Court clerk and requested that it be posted at each courthouse and on all court dockets where CDW-Related Actions are pending, including the MDL Court, the Florida Courts, the Virginia Courts, and all other Courts listed on Exhibit 6 to the Settlement Agreement. The Court facilitated the posting of Notice by writing a letter to all United States District Courts, the Fifth Circuit Court of Appeals, and to State Judges where CDW-Related Actions are pending. *See*, *e.g.*, Letter from Judge Fallon to the U.S.D.C. for the Southern District of Florida (FLSD ECF No. 336) (attached as Exhibit "14" to the accompanying Memorandum of Law in Support of the Motion for Final Approval). In addition, the Court posted the Notice on the Court's Chinese Drywall MDL website.

28. Settlement Class Counsel established a toll-free number for Class Members to call with questions about the Settlement ("Call Center") and set up a Chinese Drywall Settlement website (ChineseDrywallSettlement.com) that provides Class Members an opportunity to review relevant Settlement materials and send written requests or questions to Settlement Class Counsel. The Settlement Agreement, Master Spreadsheet, Notice, and important deadlines are posted on the

website. In addition, there are answers to Frequently Asked Questions ("FAQs") for both individual Class Members and Attorneys.

29. Settlement Class Counsel fulfilled their duty to answer inquiries from Settlement Class Members and potential members of the Settlement Class that were received primarily through the Call Center, by email *via* the Chinese Drywall Settlement website, and from direct inquiries made to the individual offices of Settlement Class Counsel. In total, Settlement Class Counsel responded to more than 270 inquiries of Class Members and potential Class Members from 24 different states. To respond to those inquiries, Settlement Class Counsel researched the specifics of individual claims, confirmed information on the Master Spreadsheet, updated or corrected objective information, such as mailing addresses and name changes, facilitated communication with the Claims Administrator and/or individual counsel, and generally answered any questions and listened to the concerns that the Class Members or potential Class Members had. In addition, when appropriate, Settlement Class Counsel immediately notified individual counsel of specific concerns or questions raised by Class Members or potential Class Members they represent. Settlement Class Counsel also provided individual counsel with a list of the names of all their clients, to the best that they could be identified, who made inquiries of Settlement Class Counsel.

30. Further, Settlement Class Counsel monitored activity on the Chinese Drywall Settlement website. During the Class Notice Period, the website was accessed by over 86,000 users and had in excess of 121,000 page views. Importantly, the website was accessed by individuals from all 50 states plus the District of Columbia, with the top five (5) states being Florida, Georgia, Virginia, Texas, and California. Settlement Class Counsel responded to all inquiries sent by Class Members through the Settlement website. *See* Analytics of Settlement Website Data (attached as

Exhibit "15" to the accompanying Memorandum of Law in Support of the Motion for Final Approval).

31.     In order to reach absent Class Members, Taishan retained Kinsella Media LLC ("Kinsella Media") to develop and implement the Media Notice Program approved by the Court. *See generally* Declaration of Shannon R. Wheatman, Ph.D. on Implementation of Notices and Notice Plan dated 12/2/2019 (attached as Exhibit "13" to the accompanying Memorandum of Law in Support of the Motion for Final Approval). This plan included paid media in states containing at least one Affected Property of *Amorin* or *Brooke* Plaintiffs. *Id*. at ¶ 6. The media program heavily targeted the six states that each have over 1% of the Chinese Drywall Claims of *Amorin* and *Brooke* Plaintiffs – Florida, Louisiana, Alabama, Virginia, Mississippi, and Georgia ("Top 6 States"). *Id.* These six states combined account for over 90% of the known Chinese Drywall products at issue in this Settlement. Florida and Louisiana account for 75.8% of the known Chinese Drywall claims in this Settlement and the four other states (Alabama, Virginia, Mississippi, and Georgia) account for an additional 14.7% of the known Chinese Drywall claims in this Settlement. *Id.* at ¶ 6. Accordingly, the media program included one newspaper to cover each media market in Florida and Louisiana, ads on two lifestyle websites in Florida and Louisiana, Hispanic newspapers for each media market in Florida, and a national magazine and national digital media that reached all states where Class Members have been affected by Chinese Drywall. Additionally, a heavier concentration of statewide digital media was targeted to the Top 6 States. *Id.*

32.     The short-form, summary notice ("Publication Notice") approved by the Court was published in English and/or Spanish in the following newspapers and magazines: People, News Press, Gainesville Sun, Florida Times Union, Miami Herald, Orlando Sentinel, Panama City News, Tallahassee Democrat, Tampa Bay Times, Palm Beach Post, Baton Rouge Advocate, Daily

Advertiser, American Press, Monroe News Star, New Orleans Advocate, Shreveport Times, Nuevo Ecos, Hola Noticias, El Clarin, El Sentinel, Centro Tampa, El Semanario Acción. *Id.* at ¶¶ 16-18. Publication in each newspaper and magazine occurred bi-weekly, weekly, or one time depending on each publication's specific schedule for thirty (30) days. *Id.* The Media Notice Program also included a 30-day digital program comprised of programmatic advertising and social media with focused targeting based on keywords, geography, and topics. *Id.* at ¶ 19. Further, the media program included banner ads on digital media, including premium websites (*e.g.,* DIY Network), local news and newspapers sites, including Florida Weekly and Louisiana Life, contextual targeting, Facebook, and Google Display Network (which includes YouTube). *Id.*

33.     In addition, Class Counsel issued a press release about the Settlement, which was distributed on PR Newswire's US1 news circuit reaching 5,400 traditional media outlets (television, radio, newspapers, magazines) and relevant trade publications and 4,000 national websites. The release highlighted the Settlement Call Center toll-free telephone number and Settlement website address, so that Class Members could obtain complete information about their rights under the Settlement. *Id.* at ¶ 20.

34.     It is my opinion, based on my knowledge and vast experience in class actions and mass tort litigation, generally, and my acute awareness of the particular strengths and weaknesses of the Claims at issue in these Chinese Drywall proceedings after ten years of hard-fought litigation, that the proposed Settlement Class should be certified and the proposed Settlement should be approved as being fair, reasonable, and adequate to resolve Settlement Class Members' Claims against Taishan and the Additional Released Parties, and that, under the existing facts and circumstances, the proposed Class Settlement represents the most favorable resolution available to the Settlement Class. This Settlement treats Class Members equitably relative to each other, as

set forth in the Allocation Neutral's Allocation Model. The Court approved the Allocation Model, finding that "the Allocation Neutral appropriately performed his assigned function." *See* Preliminary Approval Order [Rec. Doc. 22314] at ¶ 6; Declaration of J. Cal Mayo, Jr. dated 12/2/2019 (attached as Exhibit "11" to the accompanying Memorandum of Law in Support of the Motion for Final Approval). If approved, this Settlement will provide much needed cash payments to Eligible Class Members.

35. I declare under penalty of perjury that the foregoing is true and correct.

Executed this 5th day of December, 2019 in Philadelphia, Pennsylvania.

_____
Sandra L. Duggan