UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:11-CV-22408-MGC

EDUARDO AND CARMEN AMORIN, *et al.*,
Individually, and on behalf of all others
similarly situated,

    Plaintiffs.

v.

TAISHAN GYPSUM CO., LTD. f/k/a
SHANDONG TAIHE DONGXIN CO., LTD.,
TAIAN TAISHAN PLASTERBOARD CO., LTD., *et al.*,

    Defendants.

_____/

**SPECIAL MASTER'S REPORT AND RECOMMENDATION REGARDING
PRODUCT ID CATEGORIES ATTRIBUTABLE TO TAISHAN DEFENDANTS**[1]

    **THIS CAUSE** having come before Special Master Tiffani G. Lee for hearing on March 11, 2019, pursuant to the Order Appointing Special Master dated November 16, 2018 (ECF No. 110), and the Trial Plan for Property Damage Claims identified as Attachment A to the Order dated November 16, 2018 (ECF No. 112), and the Special Master having reviewed Plaintiffs' Brief in Support of Product ID Categories Attributable to Taishan dated March 1, 2019, and Defendant Taishan's Product Identification Contentions and Defenses dated March 1, 2019, heard argument by the parties' counsel at the hearing on Production ID issues held on March 11, 2019, and being otherwise advised in the premises, it is

---

[1] The "Taishan Defendants" are Defendants Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd.

**EXHIBIT 5 to Memorandum of Law in Support of Class Settlement**

**FOUND AND RECOMMENDED** as follows:

**I.     BACKGROUND**

This case involves a certified class action brought by property owners in Florida, Louisiana, and Virginia against companies responsible for problematic Chinese-manufactured drywall. The United States Judicial Panel on Multidistrict Litigation consolidated this action to the District Court for the Eastern District of Louisiana where it was litigated for approximately nine years. During that time, the Defendants submitted information about their manufacture of drywall for export to the United States. For example, in October 2010, the Taishan Defendants each completed and filed a Manufacturer Profile Form in the MDL, which itemized the drywall they exported to the United States during the relevant time and identified any markings on the drywall product. Taishan Gypsum identified two shipments to the U.S. for a purchaser named Venture Supply, Inc. TTP identified 243 orders of drywall with U.S. dimensions. Combined, the Taishan Defendants manufactured and shipped 86 million square feet of drywall to the U.S. during the relevant time, with 9.4 million square feet of drywall sent directly to Florida. (*See* Plaintiffs' TAB 6).[2] The Taishan Defendants ceased manufacture of U.S.-sized drywall boards in or about July 2007.

In 2018, the MDL remanded this action to this Court. (ECF No. 13 in the MDL). After remand, this Court adopted all of Judge Fallon's findings of fact and legal conclusions, including that Taishan, TTP, BNBM Group, CNBM Group and CNBM had been held in default; Defendants constitute a single business enterprise for purposes of piercing the corporate veil and holding each of the defendants liable for the conduct of their affiliated entities; liability has been conclusively established as to all defendants and the only remaining issue is the amount of the award; and the

---

[2] References to the exhibits submitted by the parties in support of their Product ID contentions are identified with an indication of whether it was Plaintiffs' or Defendants' exhibit followed by the Tab behind which the exhibit is found such as "Plaintiffs' TAB [insert exhibit number]."

2

remediation formula represents a reasonable and reliable measure of the remediation damages which the Court will apply to determine the appropriate amount of property damages. (ECF No. 112).

After adopting all of Judge Fallon's findings and legal conclusions, the Court ordered that the Defendants are entitled to challenge only the following aspects of the remediation damages calculation: (1) Product ID, (2) ownership verification, and (3) square footage of the subject properties. (ECF No. 112) The Court authorized the Defendants to challenge only the following twelve Product ID categories: (A) BNBM/Dragon board, (B) C&K, (C) Chinese Manufacturer #2 (purple stamp), (D) Crescent City Gypsum, (E) DUN, (F) IMT Gypsum, (G) ProWall, (H) Taian Taishan or Taihe Tape, (I) Made in China Meet or Exceeds, (J) various Drywall dimensions, including 4 feetx12feetx1/2 inch and 4feet*12feet*1/2 inch, (K) Venture Supply, (L) White Edge Tape, boards with no markings or boards with no markings other than numbers, and (13) others. (ECF No. 112).[3] The Court further directed the Special Master to proceed with all diligence to facilitate the resolution of the Property Damage Claims. (ECF No. 110). As the first step in that process, this Report and Recommendation addresses whether the Product ID categories should be attributed to the Taishan Defendants. (ECF No. 112).

## II. DISCUSSION/ANALYSIS

Plaintiffs bear the burden of proof to establish that they incurred damages from the Taishan Defendants' products, *i.e.,* to establish that the drywall that caused any claimed damages was manufactured by the Taishan Defendants. As the first step in the process, Plaintiffs must prove by

---

[3] The parties submitted a list of Product ID categories that are identified with letters A through L, totaling twelve categories. *See* The Parties' Joint Submission to Special Master Regarding Product Identification Discovery and Adjudication (ECF No. 155). For consistency, the Special Master will do the same.

3

the greater weight of the evidence that the Taishan Defendants manufactured the drywall in each Product ID category.

Plaintiffs argue that the Special Master should apply an adverse inference or rebuttable presumption against the Taishan Defendants for their discovery abuses, destruction of evidence, delay tactics, and failure to place clear and uniform markings on their drywall boards. (*See* Plaintiffs' Brief at 23-28). The Special Master declines to do so for a few reasons. First, the issues regarding the Taishan Defendants' delay tactics and discovery abuses were resolved by Judge Fallon in the MDL back in 2015. After an evidentiary hearing, Judge Fallon found that the Taishan Defendants engaged in discovery abuses, but he did not find spoliation or the basis to impose adverse inferences. (*See* Findings of Fact and Conclusions of Law From the November 17, 2015 Evidentiary Hearing (ECF No. 19959 in the MDL), Plaintiffs' TAB 21). Second, to the extent the Plaintiffs complain about post-2015 discovery conduct, they have not properly raised those issues via a motion to this Court. Finally, based on the information presented in connection with and at the Product ID Hearing, Plaintiffs have not established a sufficient predicate for the Special Master to impose or recommend a sanction pursuant to the authority granted under Federal Rule of Civil Procedure 53(c)(2). Accordingly, in evaluating the evidence presented regarding each Product ID category, Plaintiff bears the burden to prove by the greater weight of the evidence that the product was manufactured by the Taishan Defendants.

### a. Category "A" – BNBM/Dragon Board.

Plaintiffs contend that products with these types of markings were manufactured by BNBM, not the Taishan Defendants. Accordingly, this Product ID category will be addressed in the forthcoming Special Master's Report and Recommendation Regarding Product ID Categories Attributable to BNBM.

4

  b. **Category "B" – C&K Drywall.**

  Plaintiffs contend that products with these types of markings were manufactured by the Taishan Defendants, which the Taishan Defendants deny. The evidence reflects that another manufacturer named Shandong Chenxiang Building Materials Co., Ltd. ("Chenxiang") was named as a defendant in some of the complaints, but was never properly served or brought into the litigation. (*See, e.g., Gross, et al. v. Knauf GIPS KG, et al.,* Case No. 2:09-cv-06690-EEF-JCW, Defendants' TAB 7). Chenxiang is a competitor of the Taishan Defendants. (January 22, 2019 Depo. of Taishan Gypsum (TAB 32) at 138:14-21). The Taishan Defendants have no record of manufacturing drywall for Chenxiang or bearing the letters "C&K." *Id*. at 133:5-23. Their Manufacturer Profile Forms make no mention of Chenxiang. (*See* Defendants' TABS 27-29). Further, the Consumer Product Safety Commission identified Chenxiang as the manufacturer of "C&K Gypsum Board." (*See* Defendants' TAB 15). As such, the Special Master finds that the Plaintiffs have not met their burden of proof to establish by the greater weight of the evidence that the Taishan Defendants manufactured drywall in Category "B."

  c. **Category "C" – Chinese Manufacturer #2 (purple stamp).**

  Plaintiffs contend that products with these types of markings were manufactured by BNBM, not the Taishan Defendants. Accordingly, this Product ID category will be addressed in the forthcoming Special Master's Report and Recommendation Regarding Product ID Categories Attributable to BNBM.

  d. **Category "D" – Crescent City Gypsum.**

Because no Florida claimants allege these markings, this category is inapplicable.

  e. **Category "E" – DUN Drywall.**

Because no Florida claimants allege these markings, this category is inapplicable.

5

f.  **Category "F" – IMT Gypsum.**

Plaintiffs contend that products with these types of markings were manufactured by the Taishan Defendants, which the Taishan Defendants deny. The evidence presented at the Product ID Hearing established that the Taishan Defendants manufactured drywall with blue and white edge sealing tape with "IMTGYPSUM" printed on it. (*See* Defendants' TAB 29]). There was no evidence presented to establish that the Taishan Defendants manufactured drywall with spray markings of "IMT Gypsum" on the boards (as opposed to the edge tape). For example, the Taishan Defendants' Manufacturer Profile Forms reflect shipments of product with "IMTGYPSUM" on the edge sealing tape, but those same shipments had product markings of "DRYWALL 4feetx12feetx1/2 inch." (*See* Defendants' TABS 27-29). The Taishan Defendants' corporate representative testified that, as reflected on the Manufacturer Profile Forms, the Taishan Defendants manufactured some drywall with "IMT" on the blue-and-white edge tape, but not with spray markings of "IMTGypsum.com" on them. (*See* Defendants' TAB 32 at 60:3-25). Plaintiffs noted, however, that the sales plan notifications for some of these shipments referenced "sprayed marking attached," but no attachment was provided. (*See, e.g.,* TG-PID-000042 and 046).[4] The photo exemplars provided by Plaintiffs – PID Catalog Photos 30 and 33 – reflect that an asterisk (rather than a multiplication sign) was used in stating the dimensions of those boards. The Taishan Defendants testified that they consistently used the multiplication sign, not an asterisk. (January 22, 2019 Depo. of Taishan Gypsum (Plaintiffs' TAB 20) at 129:16-26 and 130:17-23). Accordingly, the Special Master finds that the Plaintiffs have not met their burden of proof to

---

[4] According to Plaintiffs, Taishan produced two sales plan notifications for IMT drywall, totaling 39,780 sheets.

6

establish by the greater weight of the evidence that the Taishan Defendants manufactured drywall in Category "F."

### g. Category "G" – ProWall.

Plaintiffs contend that products with these types of markings were manufactured by the Taishan Defendants, which the Taishan Defendants deny. Plaintiffs' contention is based on the fact that the Taishan Defendants admitted that they manufactured several batches of drywall with product markings "similar to ProWall," and that in 2006, Taishan manufactured 9,936 Sheets of drywall for Run & Fly (Jinan) New Materials Co., Ltd., which Run & Fly then sold to Manchester-in-Home, which sold it to Stock Building Supply, Inc. (*See* Plaintiffs' Brief at 40-43).

In a March 2006 e-mail, Manchester-in-Home confirmed that its manufacturer was "Shandong Taihe Dongxin Company, Ltd." (*See* Plaintiffs' TAB 53). The Taishan Defendants argue that this batch was a trial order and that Run & Fly ultimately went to a different, less expensive manufacturer. (*See* January 22, 2019 Depo. of Taishan Gypsum (Defendants' TAB 32) at 150:7-19). They further note that the invoice documenting the transaction was a common invoice, which is typically used for domestic productions of drywall. (*See* TG-PID-000079; *see also* Defendants' TAB 53 at 148:17 – 149:8) Finally, the photo exemplars of the ProWall product markings – PID Catalog Photos 43 and 44 – do not include the language "MEET OR EXCEEDS …" which the Manufacturer's Profile Form reflects was customarily used by the Taishan Defendants. Accordingly, the Special Master finds that the Plaintiffs have not met their burden to establish by the greater weight of the evidence that the Taishan Defendants manufactured the product in Category "G."

7

h. **Category "H" – Taian Taishan or Taihe Tape.**

Plaintiffs contend that products with these types of markings were manufactured by the Taishan Defendants. Subject to sufficient claimant-specific proof of Product ID, including but not limited to location and dimensions of markings, font type and color, and other physical and visual characteristics of drywall boards, the Taishan Defendants do not deny that products with these types of markings were manufactured by the Taishan Defendants.

i. **Category "I" – Made in China Meet[s] or Exceed[s].[5]**

Plaintiffs contend that products with these types of markings were manufactured by the Taishan Defendants. The Taishan Defendants deny that they manufactured products with some of the markings in this category, specifically, those reflected in photos # 18, 19, and 21. Subject to sufficient claimant-specific Product ID, however, the Taishan Defendants do not deny that they manufactured products with some of the markings in this category, specifically, those reflected in photos # 13, 17, and 20.

Plaintiffs argue that the font variations and wording variations in product markings in the category are "minimal" and "differ only slightly." (*See* Plaintiffs' Brief at 44). While the Special Master agrees that he font variations are minimal, the wording variations are significant. In their Manufacturer Profile Forms, the Taishan Defendants admitted they manufactured drywall with product markings of "MADE IN CHINA MEET OR EXCEED ASTM C1396 O4 STANDARD." (*See* Defendants' TABS 27-29). In addition, because they located residual boards with product

---

[5] The markings in Category "I" reflect some variations in font type and font size as do markings in other categories. These variations are to be expected given that the Taishan Defendants had three production lines during the relevant time, each production line had one or two spray marking machines, the spray marketing machines were manufactured by several different manufacturers, and the machines were frequently replaced due to their short lifespans. (*See* Defendants' TAB 32 at 188:5-22, 189:23 – 190:20, and 191:3-6).

8

markings of "MADE IN CHINA MEET OR EXCEEDS ASTM C1396 O4 STANDARD," they admit to manufacturing drywall with that product marking even though it is nowhere listed on the Manufacturer Profile Forms. They deny, however, that they manufactured drywall with product markings that include "MEETS." (*See* Defendants' TAB 32 at 106:11-20). The Plaintiffs have not established otherwise. Accordingly, the Special Master finds that only drywall containing the markings exemplified in photos #13, 17, and 20 should be attributed to the Taishan Defendants.

### j. Category "J" – Various Drywall Dimensions, Including 4feetx12feetx1/2inch and 4feet*12feet*1/2 inch.

Plaintiffs contend that products with these types of markings were manufactured by the Taishan Defendants. The Taishan Defendants deny that they manufactured products with some of the markings in this category, specifically, those reflected in photos # 5, 6, 7, 8, 9, 10, and 11. Subject to sufficient claimant-specific Product ID, however, the Taishan Defendants do not deny that they manufactured products with some of the markings in this category, specifically, those reflected in photo # 2.

The word "Drywall" in photo # 9 appears to be the same as that in photo #2 as both appear to have the capital letter "Y" in drywall. In addition, the marking on photo #5 reflects the same words as some listed on the Taishan Defendants' Manufacturer Profile Forms, specifically "Drywall 4feetx12feetx1/2inch." Accordingly, the Special Master finds that products with markings as exemplified by photos #2, 5, and 9 should be attributed to the Taishan Defendants.

### k. Category "K" – Venture Supply.

Plaintiffs contend that products with these types of markings were manufactured by the Taishan Defendants. Subject to sufficient claimant-specific proof of Product ID, including but not limited to location and dimensions of markings, font type and color, and other physical and visual

9

characteristics of drywall boards, the Taishan Defendants do no deny that products with these types of markings were manufactured by the Taishan Defendants.

### l. Category "L" – White Edge Tape, Boards with No Markings or Boards with No Markings Other Than Numbers.

Plaintiffs contend that products with these types of markings were manufactured by the Taishan Defendants, which the Taishan Defendants deny.

The Taishan Defendants admit they produced drywall that fits this category. (*See* Defendants' TABS 27-29). In fact, Plaintiffs assert that the Taishan Defendants manufactured and exported nearly one million square meters of blank board with white edge tape to the United States. (*See* Plaintiffs' Brief at 54). Thus, it is likely that at least some of the boards in the Florida claimants' homes that fit this Product ID category were manufactured by the Taishan Defendants. However, without additional information, the Special Master is unable to determine what portion or which claimants' homes. Accordingly, the Special Master finds that the Plaintiffs have not met their burden of proof to establish by the greater weight of the evidence that products in this category should be attributed to the Taishan Defendants.[6]

## III. RECOMMENDATION

Based upon the foregoing, the Special Master recommends that the following Product ID categories be attributed to the Taishan Defendants:

- Category H;
- Category I as exemplified by photos # 13, 17, and 20;

---

[6] When deposed, the corporate representative for the Taishan Defendants suggested that a chemical analysis of the boards could be done to determine their formulations and whether they came from the same batch or formulation as other boards that the Taishan Defendants admit they manufactured. (*See* Defendants' TAB 32 at 70:22 -71:6). To date, the Plaintiffs have not conducted such chemical analysis.

- Category J as exemplified by photos # 2, 5, and 9; and
- Category K.

**DONE AND SUBMITTED** in Miami, Florida on this 8th day of April, 2019.

Respectfully submitted,

/s/ Tiffani G. Lee
TIFFANI G. LEE
HOLLAND & KNIGHT LLP
701 Brickell Avenue, Suite 3300
Miami, FL 33131
Phone: (305) 789-7725
Fax: (305) 789-7799
E-mail: tiffani.lee@hklaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 8, 2019, I electronically filed the foregoing Special Master's Report and Recommendation Regarding Product ID Categories Attributable to Taishan Defendants with the Clerk of the Court using CM/ECF. I also certify that the foregoing is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or via e-mail.

/s/ Tiffani G. Lee
Tiffani G. Lee

#66914130_v1

11