# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

EDUARDO AND CARMEN AMORIN,
*et al.*, individually, and on behalf of all
others similarly situated,

      Plaintiffs,

v.

TAISHAN GYPSUM CO., LTD. f/k/a
SHANDONG TAIHE DONGXIN CO.,
LTD.; TAIAN TAISHAN
PLASTERBOARD CO., LTD., *et al.*,

      Defendants.

Case No. 1:11-CV-22408-MGC

**PLAINTIFFS' OBJECTIONS TO AND APPEAL FROM THE SPECIAL
MASTER'S REPORT AND RECOMMENDATION REGARDING PRODUCT ID
CATEGORIES ATTRIBUTABLE TO TAISHAN GYPSUM CO., LTD.**

**EXHIBIT 6 to Memorandum of Law in Support of Class Settlement**

# TABLE OF CONTENTS

Table of Authorities....................................................................................... ii

I.  INTRODUCTION ............................................................................... 1

II.  THE STANDARD OF PROOF TO BE APPLIED ........................................... 5

    A.  The Default Judgment is Not Irrelevant to the Burden of Proof. ............... 5

    B.  "Greater Weight of the Evidence" Requires Consideration of
    the Totality of the Circumstances To Determine What is More Likely
    Than Not. .............................................................................................. 6

    C.  Defendants' Litigation Misconduct Is Relevant to their Credibility. .......... 6

III.  ERRORS IN SPECIAL MASTER'S ANALYSIS THAT FLOW THROUGH
THE ENTIRE REPORT & RECOMMENDATION .......................................... 7

    A.  There Is No Evidence in the Record of Additional Manufacturers
    of Defective Chinese Drywall .................................................................... 7

    B.  Evidence Regarding Taishan's Manufacturing Process. ........................... 9

    C.  Taishan's Suggested Chemical Analysis Test Doesn't Exist. ...................10

IV.  CATEGORY-SPECIFIC ISSUES WITH THE SPECIAL
MASTER'S R&R .................................................................................11

    A.  Made in China Meet[s] or Exceed[s] .....................................................11

    B.  Various Drywall Dimensions, Including 4feetx12feetx1/2inch. ...............13

    C.  IMT Gypsum ........................................................................................16

    D.  ProWall ...............................................................................................17

    E.  White Edge Tape, Boards with No Markings or
    Boards with No Markings Other Than Numbers. ....................................18

    F.  C&K Drywall. ......................................................................................20

V.  CONCLUSION ..................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Au Bon Pain Corp. v. Artect, Inc.,*
  653 F.2d 61 (2d Cir. 1981) ............................................................................. 5

*Finkel v. Romanowicz,*
  577 F.3d 79 (2d Cir. 2009) ............................................................................. 5

*Huck v. Louisville Ladder, Inc.,*
  2008 WL 222682 (M.D. Fla. Jan. 25, 2008) ................................................... 6

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.,*
  894 F. Supp. 2d 819 (E.D. La. 2012) ............................................................. 9

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.,*
  2017 WL 1421627 (E.D. La. Apr. 21, 2017) .............................................. 5, 8

*In re Levin,*
  434 B.R. 910 (S.D. Fla. 2010) ....................................................................... 6

*Lowery v. Ala. Power Co.,*
  483 F.3d 1184 (11th Cir. 2007) ...................................................................... 6

*Michalic v. Cleveland Tankers, Inc.,*
  364 U.S. 325 (1960) ........................................................................................ 6

*Peach State Labs, Inc. v. Environmental Manufacturing Solutions, LLC,*
  2011 WL 13140669 (M.D. Fla. Dec. 29, 2011) ............................................. 6

*Pulte Home Corp. v. Ply Gem Indus., Inc.,*
  804 F.Supp. 1471 (M.D. Fla. 1992) ............................................................... 6

*Sweeney v. Kimberly-Clark Corp.,*
  2016 WL 727173 (M.D. Fla. Feb. 22, 2016) ................................................. 6

*United States v. Almedina,*
  686 F.3d 1312 (11th Cir. 2012) ...................................................................... 6

## Statutes

19 U.S.C. §1304(a) ............................................................................................. 9

**<u>Rules</u>**

Fed. R. Civ. P. 53(f) ..............................................................................2, 5

Fed. R. Civ. P. 55(b)(2)............................................................................ 5

# I.    __INTRODUCTION__

On April 8, 2019, the Special Master issued her Report and Recommendation Regarding Product ID Categories Attributable to Taishan ("Special Master's R&R").[1]  Before the Special Master was the determination of whether eight Product ID categories were attributable to Taishan.[2]  Because Taishan accepted responsibility for two of the Product ID categories (Venture Supply and Taihe Tape), the Special Master addressed six Product ID categories (C&K; IMT Gypsum; ProWall; Made in China Meet or Exceeds ("Meet[s] or Exceed[s]"); various Drywall dimensions, including 4feetx12feetx1/2 inch and 4feet*12feet*1/2inchs ("Dimensions"); and White Edge Tape, boards with no markings or boards with no markings other than numbers ("White Edge Tape").  Two of these Product ID categories (Meet[s] or Exceed[s] and Dimensions) are demonstrated by thirteen variations of the relevant markings, which are referenced by the respective photos in the Taishan Product ID Catalog (ECF No. 155-2) reflecting the marking variations.[3]

The Special Master determined that Plaintiffs did not meet their burden of proof on four of the Product ID categories at issue (C&K; IMT Gypsum; ProWall; and White Edge Tape).  She also determined that Plaintiffs did not meet their burden with respect to the majority of the "subdivided" Meet[s] or Exceed[s] and Dimensions categories, finding that attribution had been established for the markings in only three out of six photos within the

---

[1] *See* Special Master's Report and Recommendation Regarding Product ID Categories Attributable to Taishan Defendants ("SM R&R") (ECF No. 233).  Taishan Gypsum Co., Ltd. and its wholly-owned subsidiary and alter ego Taian Taishan Plasterboard Co., Ltd. will be referred to herein as "Taishan" or "Defendant."  Plaintiffs' Brief in Support of Product ID Categories Attributable to Taishan ("Plaintiffs' PID Brief") is attached hereto as Exhibit "A" and incorporated herein by reference. The Exhibits to the Plaintiffs' PID Brief are referred to herein by their respective "Tab" number as "Plaintiffs' Tab" and incorporated herein by reference.  An Appendix with hyperlinks to the relevant documents is attached hereto as Exhibit "B."

[2] The Court's Omnibus Order Regarding Trial Plan set forth twelve categories of Product ID (*see* ECF No. 112 at 6 n.2), but four of those categories were not before the Special Master at this time.  Two categories – BNBM/Dragon Board and Chinese Manufacturer #2 (purple stamp) – are alleged to be manufactured by Defendant BNBM, which will be addressed separately; and DUN and Crescent City Gypsum are not alleged to be present in any Florida properties.

[3] The Court's Trial Plan required the Special Master to issue a Report and Recommendation as to whether the Product ID *categories* at issue should be attributed to Defendants despite their denial (ECF No. 112 at 6 (para. 3.a.vi)).  Problematically, the Special Master subdivided the Meet or Exceeds and Dimensions categories by attributing only certain specific photos in the Taishan Product ID Catalog to Taishan.

Meet[s] or Exceed[s] category and three out of seven photos within the Dimensions category. SM R&R at 10-11. In each of those six circumstances, Taishan had either explicitly or implicitly admitted it manufactured boards with the markings in question.[4]

Plaintiffs file these Objections to the Special Master's R&R[5] not only because the Special Master made specific errors with respect to the categories of Product ID that she found were not attributable to Taishan; but also, and equally important, because she applied an unmeetable burden of proof and completely disregarded the substantial and compelling direct and circumstantial evidence of attribution presented by Plaintiffs. There is no better illustration of the standard applied by the Special Master than the fact that there was only one piece of evidence that satisfied it – an *admission* by Taishan. On this score, the Special Master applied the preponderance standard in such a way that it literally could not be met by Plaintiffs. This is not hyperbole but merely an acknowledgment that *the Special Master only found that the burden of proof had been satisfied when it came with a Taishan admission.*

By requiring an admission by Taishan as a predicate for attribution, the Special Master disregarded direct evidence linking Taishan to certain Product ID categories and, importantly, gave no weight to the significant amount of compelling circumstantial evidence that supported Plaintiffs' claims, which should have tilted the scales in Plaintiffs' favor. In this regard, the Special Master effectively placed the burden on Plaintiffs to prove, not only by the greater weight of the evidence, but by evidence that was *direct and incontrovertible* that a particular board of drywall was manufactured by Taishan. In most cases, the Special Master conducted no analysis of the Plaintiffs' evidence.

To make matters worse, Taishan's acceptance of responsibility for particular markings was based largely, if not exclusively, on whether the exact same markings were contained on certain "residual" American-sized boards that Taishan discovered in its warehouse in late

---

[4] Of the seven contested photos within these two Product ID categories, the Special Master found the Plaintiffs met their burden of showing attribution on only two and that was because (1) the pictures of one were <u>identical</u> to pictures that were admitted by Defendant and (2) the wording on the second was the same as that listed in Defendant's Manufacturer Profile Form, *i.e.*, Taishan admitted the language. *See* SM R&R [ECF No. 233] at 9.

[5] Plaintiffs object pursuant to FRCP 53(f)(2). Specifically, Plaintiffs object to the Special Master's findings with respect to C&K, IMT Gypsum, ProWall, Meet[s] or Exceed[s] with respect to the findings regarding Photos 18, 19, and 21, Dimensions with respect to the findings regarding Photos 6, 7, 8, 10 and 11, and White Edge Tape.

2018, even though Plaintiffs had requested this evidence long ago.[6]  Problematically, Taishan did not find exemplars of all of the American-sized boards it ever manufactured; therefore, there is no basis to attribute only the "residual" drywall to Taishan, and exclude other drywall not found in the warehouse.  Moreover, Taishan's Manufacturer Profile Form ("MPF") states that Taishan only labeled its products when, and as, a certain purchaser might request that the drywall bear particular markings.[7]  Therefore, whether a particular marking is not found on a given piece of drywall is not, in and of itself, probative.  In fact, some of Taishan's admissions, after finding the residual boards, involved boards with markings it denied responsibility for merely months ago prior to discovery of these boards.[8]  Yet, the Special Master based her Product ID determinations almost exclusively on these flawed admissions.

In contrast, the Special Master ignored direct photographic evidence and significant circumstantial evidence.  For example, it is relevant, probative and significant that after ten years of litigation, Taishan has been unable to identify any specific manufacturer, other than Taishan, BNBM, Knauf and C&K, who manufactured defective Chinese drywall (*i.e.*, reactive drywall that experienced the same type of high-sulfur off-gassing).[9]  Taishan is aware that this highly relevant fact is damaging, so Defendant goes to great lengths to make the irrelevant point that other companies manufactured drywall in China and exported it to the United States, in the hopes of a creating an inference that these other companies also made

---

[6] *See generally* 2019 CHE Dep. [Pls.' Tab 20] at 258:4-260:12, 268:21-271:13; *see also* Pls.' Tabs 16-18.

[7] *See* Pls.' Tab 11 at 2; *see also, e.g.,* Pls.' Tab 10, at TG-0129675-676 (Taishan manufactured and exported to the U.S. 998778.91 m$^2$ of boards with "unlettered edge band, no coding, and neutral packaging" and 1,020,749.45 m$^2$ with "unknown" markings); Pls.' Tab 11 at 2.

[8] *See* Taishan's MFP [Pls.' Tab 11] at Ex. A (listing numerous markings with "Meet or Exceed"); Def.'s PID Br. at 37-38 (acknowledging manufacture of board with markings "Meet or Exceeds," "Exceeds" with an "s" after finding residual boards); SM R&R at 8-9.

[9] *See* CPSC RELEASE NO.10-243 (May 25, 2010) [Pls.' Tab 27] (identifying 10 manufacturers of the defective drywall, (all Taishan/Taihe, BNBM, Knauf, and/or C&K), and noting that the other Chinese drywall samples and the domestically manufactured samples "had low or no detectible emissions").  The only other company identified is "C&K," which Plaintiffs continue to believe received some or all of its drywall from Taishan. *See, e.g.,* Pls.' Tabs 40-45.  In 2004, CNBM (parent to BNBM) acquired C&K to manufacture their drywall beginning in 2004. Shortly thereafter, CNBM went public and assigned its manufacturing operations to BNBM. CNBM's public offering reorganized the lightweight building sector (which is dominated by gypsum board manufacturing), and gave BNBM control over gypsum board manufacturing, including majority control over Taishan's stock.  Finally, the loop is closed in 2009, upon C&K's bankruptcy and BNBM's purchase of all C&K assets on September 22, 2009.

the <u>defective</u> drywall that is at issue in this case.[10]  Indeed, the Consumer Product Safety Commission ("CPSC") tested drywall from different manufacturers and those tests confirmed what Judge Fallon has repeated throughout this litigation – not all Chinese-manufactured drywall is defective, but the defective Chinese-manufactured drywall ***at issue in this litigation*** was manufactured by either Taishan, BNBM, Knauf or C&K.[11]  Taishan does not point to any piece of evidence that identifies another manufacturer of ***defective*** Chinese drywall. Therefore, it is reasonable, and supported by the evidence, to infer that a non-Knauf board of high-sulfur off-gassing drywall manufactured during this time period was, more likely than not, made by Taishan or BNBM.  ***Yet, this was given no weight by the Special Master***.

Similarly, the Special Master disregarded evidence of Defendant's misconduct throughout the course of the litigation.  Viewing numerous aspects of Defendant's litigation misconduct as relevant, Plaintiffs raised this issue before the Special Master, but she appeared to view it as a binary choice – either the Defendant's behavior was egregious enough to warrant a finding of spoliation or an adverse inference, or the behavior warranted no consideration at all.  Even assuming *arguendo* that Taishan's conduct does not constitute a predicate for formal spoliation sanctions or does not change the burden of proof, it is nevertheless relevant and important evidence first as to the ultimate Product ID determination under a "greater weight of the evidence" standard and second ***as a matter of credibility***, particularly where much of Defendant's "rebuttal" to Plaintiffs' evidence involves Taishan's own largely self-serving contentions and representations.  Despite the relevance of this circumstantial evidence, ***these facts were given effectively no weight by the Special Master***.

If left unaltered, the Special Master's R&R would dismiss, in their entirety, the claims of close to half of the Florida *Amorin* Class, who have been waiting nearly ten years to receive some compensation for the devastating financial damage and often heartbreaking emotional losses they incurred as a result of having defective Chinese drywall installed in their homes. Realizing that the impact on these homeowners is not a reason to hold Taishan accountable for damage done by someone else's product, it is important nonetheless that these

---

[10] *See, e.g.*, Defendant Taishan's Product Identification Contentions and Defenses, attached hereto as Exhibit "D," at 4-6.

[11] *See* fn.9, *supra*, discussing CPSC findings and C&K's relationship with Taishan.

homeowners not be held to an insurmountable burden of proof. This is particularly true here where Taishan does not outright deny that it manufactured the defective drywall in question but instead offers the unsatisfying non-denial position that "it has no records to reflect that it ever made a product with that marking" coupled with unsupported references to other possible guilty manufacturers.

The Court's review of the legal and factual findings of the Special Master is *de novo*.[12] For the reasons set forth herein and in Plaintiffs' PID Brief, Plaintiffs respectfully request that the Special Master's Report and Recommendation should be modified and amended.

## II.   THE STANDARD OF PROOF TO BE APPLIED

### A.   The Default Judgment is Not Irrelevant to the Burden of Proof.

The Special Master did not consider the fact that Taishan is in default when assessing the standard of proof. "Causation and liability have been conclusively established." *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2017 WL 1421627, at *23 ¶ 85 (E.D. La. Apr. 21, 2017). While the plaintiff generally maintains a burden to establish damages under FRCP 55(b)(2), Product ID would appear to be an issue of liability and/or causation,[13] and not damages. The Court, in this regard, has referred to a *challenge* by the *Defendants* to Product ID – as opposed to an affirmative burden on the part of the Plaintiffs.[14] That Taishan is liable for causing injury or loss to the Plaintiffs should accordingly be presumed, with the Defendants carrying the burden of persuasion. Even where the Plaintiffs have the burden to prove damages in a default proceeding, moreover, all reasonable inferences from the evidence are generally drawn in the Plaintiffs' favor. *See, e.g., Finkel v. Romanowicz,* 577 F.3d 79, 84 (2d Cir. 2009); *Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir. 1981).

### B.   "Greater Weight of the Evidence" Requires Consideration of the Totality of the Circumstances To Determine What is More Likely Than Not.

The Special Master stated at the outset that Plaintiffs bore the burden of proof "by the greater weight of the evidence standard," SM R&R at 4, a phrase that is used interchangeably

---

[12] Fed. R. Civ. P. 53(f).

[13] *See, e.g.,* SM R&R at 3 ("Plaintiffs bear the burden of proof to establish … that the drywall that *caused* any claimed damages was manufactured by the Taishan Defendants") (emphasis added).

[14] *See, e.g., Chinese Drywall*, 2017 WL 1421627, AT *50 ("Taishan will then be permitted to review and contest"); ECF No. 112 at 6 ("*Defendants may challenge* only....") (emphasis added); SM R&R at 3 ("the *Defendants are entitled to challenge* ….") (emphasis added).

with "preponderance of the evidence." *In re Levin,* 434 B.R. 910, 921 (S.D. Fla. 2010). Plaintiffs satisfy this burden when, upon consideration of ***all*** the evidence, it is ***more likely than not*** that the boards in question were manufactured by the Defendant. *See United States v. Almedina,* 686 F.3d 1312, 1315 (11th Cir. 2012); *see also Lowery v. Ala. Power Co.,* 483 F.3d 1184 (11th Cir. 2007). Significantly, "direct evidence of a fact is not required. Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Michalic v. Cleveland Tankers, Inc.,* 364 U.S. 325, 330 (1960); *Peach State Labs, Inc. v. Environmental Mfct. Solutions, LLC,* 2011 WL 13140669, at *4 (M.D. Fla. Dec. 29, 2011).

There is no caselaw in Florida that limits the method for establishing Product ID to direct photographic evidence and markings only even though it appears that was the standard applied by the Special Master. *See, e.g., Sweeney v. Kimberly-Clark Corp.,* 2016 WL 727173, at *7 (M.D. Fla. Feb. 22, 2016), *order clarified,* 2016 WL 7138530 (M.D. Fla. Mar. 3, 2016). ***Instead***, the appropriate standard involves a totality-of-the-circumstance approach. *See also, e.g., Huck v. Louisville Ladder, Inc.,* 2008 WL 222682, at *2 (M.D. Fla. Jan. 25, 2008); *Pulte Home Corp. v. Ply Gem Indus., Inc.,* 804 F.Supp. 1471, 1486 (M.D. Fla. 1992) (same).

## C. Defendants' Litigation Misconduct Is Relevant to its Credibility.

It is relevant to Taishan's credibility that its conduct at every point has been designed with one goal in mind – minimizing its financial exposure to the aggrieved homeowners – and it has not hesitated to disregard the rules and litigation norms when it thought that was the best way to achieve that goal. In addition, Defendants' discovery abuses and overall litigation tactics are important when weighing the presence or absence of certain evidence. For example, if Taishan says that it will only respond to discovery by providing evidence beneficial to the company and only do so "when necessary,"[15] it would explain, among other things, why volumes of direct evidence may be hard to obtain, why there are so few records "kept," and why Taishan denies it is responsible for certain markings and then change its position years later when "residual boards" turn up at the last minute.

This is significant because the Special Master essentially accepted without question Taishan's *post hoc* explanations at face value, disregarded the fact that Taishan intentionally failed to put its name or other identifying information on the vast majority of the drywall it

---

[15] Taishan Information Report [Pls.' Tab 6], at TG-0208430.

6

admits to manufacturing, and ignored the substantial body of direct photographic evidence and circumstantial evidence presented by Plaintiffs to refute same.[16]

Perhaps the Special Master was swayed, in part, by Taishan's new attempt to play the victim, repeatedly stating or implying that it has been denied a fair opportunity to have its arguments considered. Taishan argued that it is being wrongly condemned "because it is a Chinese company," that "[t]he rhetoric has at times swung dangerously close to xenophobic prejudice," and that this is the first time it has "had an opportunity to defend itself to a fact-finder on PID."[17] In other words, Taishan audaciously claims that it has been mistreated by Plaintiffs as an appeal to prejudice when, in fact, it is simply an innocent litigant seeking their day in court which has finally arrived. To be clear, Plaintiffs' citations to Defendant's litigation misconduct are based on Taishan's documents and direct quotations from Judge Fallon's opinions addressing that misconduct – they are not based upon preconceptions.

## III. ERRORS IN SPECIAL MASTER'S ANALYSIS THAT FLOW THROUGH THE ENTIRE REPORT & RECOMMENDATION

### A. There Is No Evidence in the Record of Additional Manufacturers of Defective Chinese Drywall.

One of the most persuasive pieces of evidence that a given sheet of drywall was manufactured by Taishan is that there are no additional manufacturers of defective Chinese drywall. The fact that a sheet of drywall is non-Knauf and high-sulfur off-gassing immediately gives rise to a presumption that it is a Taishan (or BNBM) board. Taishan understands this, so it goes all-in on trying to refute this fact but in doing so, does not offer a single piece of evidence that there are additional manufacturers of *defective* Chinese drywall.

Testing by the CPSC confirmed that the only drywall that was reactive (*i.e.*, high-sulfur off-gassing defective) was manufactured by Taishan, BNBM, Knauf and C&K.[18] That is consistent with Judge Fallon's findings that the "Chinese drywall at issue was largely manufactured by two groups of defendants: (1) the Knauf Entities, and (2) the Taishan Entities" with the Taishan Entities including both Taishan and BNBM. *See Chinese Drywall*,

---

[16] A detailed discussion of litigation tactics that have impacted on discovery is contained in Plaintiffs' PID Brief at pages 11-22, 23-30.

[17] Defs.' PID Br. [Ex. D] at 4, 13.

[18] *See* fn.9, *supra*, discussing CPSC findings and C&K's relationship with Taishan.

2017 WL 1421627, at *1-2.[19]  The CPSC tested samples of over fifteen other manufacturers' drywall and concluded that they "had low or no detectable emission of hydrogen sulfide as did the drywall samples tested that were manufactured domestically."[20] There is no question from these findings that there are multiple manufacturers of drywall imported from China **but only four** manufacturers of **defective** Chinese drywall.

Taishan then used the mere existence of other Chinese drywall manufacturers to recast the entire case from one that involves **defective** Chinese drywall to one that, according to Taishan, involves any and all Chinese drywall – this is simply false.  By changing the question, it allows Taishan to create its strawman – "one of the misconceptions that has perpetuated in this litigation is the notion that only two companies in China manufactured drywall that was sent to the United States in the 2005-2009 time frame" – and then knock it down with a series of charts and statistics about overall drywall manufacturing in China and imports to the U.S.[21] But, this is a total misdirection and was irrelevant to the issues before the Special Master.[22]  It is indisputable that the drywall at issue here is not **all** drywall manufactured in China, **it is high-sulfur off-gassing defective drywall** and Taishan did not offer any evidence that there are additional, unknown manufacturers of **defective** Chinese drywall.

Beyond trying to shift the focus away from the CPSC testing of drywall samples and Judge Fallon's findings, Taishan was apparently hoping to create an inference that if other companies manufactured drywall in China, one could assume they also manufactured defective drywall.[23]  There is no evidence to support this inference and in fact, the CPSC report

---

[19] Taishan also quotes this statement from Judge Fallon's opinions and notes that he has made this exact statement in at least 27 different orders.  See Def.'s PID Br. [Ex. D] at 4 n.3.

[20] CSPC Report [Pls.' Tab 15] at 1-2.

[21] *See, e.g.,* Def.'s PID Br. [Ex. D] at 4-6. *See also* March 11, 2019 PID Hearing Tr., attached hereto as Exhibit "E," at 182:19-184:16 (Taishan discussing pie chart reflecting sales of drywall from China **not sales of defective drywall**), at 216:18-219:23 (discussing problems with pie chart and fact that only drywall at issue is high-sulfur off-gassing defective drywall).

[22] In fact, Taishan was clever with its word choice, always referring to "manufacturers of drywall," and never other manufacturers of "defective drywall." *See, e.g.,* Def.'s PID Br. [Ex. D] at 6.

[23] The only other piece of "evidence" Taishan argues supports its "other manufacturer" assertion is that Plaintiffs named other manufacturer defendants early in the litigation.  These manufacturers were not pursued once it became clear that the evidence showed that the manufacturers of defective drywall were Knauf, Taishan and BNBM.

rebuts it. That did not stop Taishan from going to great pains to create a false impression, specifically identifying Pingyi Baier Building Materials Co., Ltd. ("Baier")[24] as another Chinese drywall manufacturer whose samples were tested by the CPSC, but failing to note that the CPSC found Baier's drywall non-reactive (not defective).[25] Yet, in spite of the complete lack of evidence that there are other manufacturers of *defective* Chinese drywall, the Special Master accepted Taishan's invitation to make unsupported inferences and gave no weight to the fact that a given piece of drywall was non-Knauf and defective.

 **B.**   **Evidence Regarding Taishan's Manufacturing Process.**

 It is clear that Taishan's manufacturing process and record-keeping were inconsistent and inaccurate. These inconsistencies and inaccuracies provide circumstantial evidence that further Plaintiffs' position but were given no weight by the Special Master. For example, the Special Master ignored that: (1) Taishan sold at least 86 million square feet of its drywall to American homeowners during the relevant time period, with more than 9 million square feet going directly to Florida;[26] (2) Taishan made blank boards for export to the U.S., knowing that others might add markings;[27] (3) Taishan was legally required to, but did not, ensure that its boards for sale to and use in the United States were permanently marked as "Made in China" under the Tariff Act of 1930;[28] (4) Taishan claims that its Labeling Manuals "do not relate to Taishan's foreign sales or production;"[29] (5) Taishan used a multitude of different spray marking machines, which often stopped functioning after a short period of time and had to be replaced, and Taishan had no formal protocols for giving "employees in the production department…any written instructions on using the spray machines to put markings on American-sized drywall" and, in fact, Taishan admits "[t]here was no written instruction on the [spray machine printing] operation. Usually we [Taishan] did what the

---

[24] Def.'s PID Br. [Ex. D] at 8 (citing "Baier").

[25] Pls.' Tab 15 at 2.

[26] *See* Pls.' Tab 6. *See also, generally, In re Chinese-Manufactured Drywall Prod. Liab. Litig.,* 894 F. Supp. 2d 819 (E.D. La. 2012), *aff'd,* 742 F.3d 576 & 753 F.3d 521 (5th Cir. 2014).

[27] *See,* fn. 7, *supra.*

[28] 19 U.S.C. §1304(a). *See also* 2019 Che Dep. [Pls.' Tab 20] at 252:14-254:10 (Taishan was aware of the requirement).

[29] Pls.' Tab 71, at ¶7.

customers requested";[30] (6) Taishan's 30(b)(6) Representative implausibly suggests that the edge tape production department (i) had no computers to receive email orders,[31] and (ii) no written requests were made for edge tape (and if such a request was ever jotted down, no records of any type, electronic or otherwise, were kept of the edge tape manufacturing process); [32] (7) Taishan's repeated acknowledgments and admissions that its customers would frequently put their own markings on the Taishan-manufactured drywall;[33] (8) Taishan's corporate representative testified to the lack of accuracy in the spray markings applied to boards: "according to our memory and speculation, usually [the printer] would use the font left from the prior work, only to change the content of the spray mark. People are always lazy;[34] and (9) the fact that Taishan did not keep records of any specific spray markings.[35] This mounting evidence is directly relevant to why there may be slight differences in font, differences in wording (*e.g.*, meet"s" versus meet, "x" versus "*", etc.), no records of spray markings, etc. Yet, the Special Master accorded the evidence no weight.

    **C.    Taishan's Suggested Chemical Analysis Test Doesn't Exist.**

    In an effort to heighten Plaintiffs evidentiary burden in this default proceeding, Taishan suggested that in the case of boards with "white edge tape, blank boards with no markings" Plaintiffs should be required to conduct something along the lines of chemical analysis, an argument that seemed to resonate with the Special Master who cited it in footnote 6 of her R&R, even though Taishan knows no such analysis can be performed. In doing so, Taishan raised the required evidentiary bar by creating an inference that, without the bogus chemical analysis, Plaintiffs would fail to satisfy their burden. Taishan argued to the Special Master that with drywall samples, "chemical analysis could identify the maker of a drywall." Immediately thereafter, Plaintiffs called upon Taishan to acknowledge that Product ID by chemical analysis was a fiction; after that was denied, sought discovery on the matter; and ultimately, Taishan acknowledged that it has never done any chemical analysis and refused

---

[30] *See, e.g.,* 2019 Che Dep. [Pls.' Tab 20] at 184:4-191:11, 212:25-215:13.

[31] *Id.* at 244:23-245:8.

[32] *Id.* at 247:19-248:3.

[33] *See, e.g.,* Pls.' Tab 10, at TG-0129675-676; Pls.' Tab 11 at 2.

[34] *See, e.g., id.* at 215:13.

[35] *See, e.g., id.* at 288:14-21.

to answer as to any reliable method for Product ID by chemical analysis. Taishan's suggestion that a chemical analysis product identification system was available was pure fiction and more evidence that the gamesmanship has never stopped.[36]

## IV. CATEGORY-SPECIFIC ISSUES WITH THE SPECIAL MASTER'S R&R

### A. Made in China Meet[s] or Exceed[s].

This category contains markings reflected in six photos – Photos 13, 17, 18, 19, 20 and 21. Taishan admits it manufactured markings reflected in Photos 13, 17, and 20 which contain the words "Meet or Exceeds," but denies manufacturing markings reflected in Photos 18, 19, and 21. The difference between the markings that were admitted and those that were denied is the addition of the letter "s" to the word "Meet" – in other words, Taishan admits it manufactured boards labelled "Meet or Exceeds" but denies it manufactured those labelled "Meets or Exceeds." Because Taishan admits responsibility for these two markings, the Special Master attributed those specific markings to Taishan. *Id.* at 9.

As it relates to markings that contain an "s" in "Meets," the Special Master reached a vastly different conclusion because Taishan "den[ied], however, that it manufactured drywall with product markings that include 'MEETS'" and according to the Special Master, "[t]he Plaintiffs have not established otherwise." SM R&R at 9. The Special Master was simply wrong on both counts.

First, Taishan's "denial" is not really a denial, but simply a statement that "there are no records at Taishan of any -- of ever us manufacturing boards with an S at the end of MEETS."[37] As discussed above, this lack of records is not surprising in light of all of the evidence of Taishan's manufacturing process and poor record keeping. Indeed, as noted above, the evidence suggests that variations in fonts such as an additional "s" could be easily predicted. This is further corroborated by Taishan's MPF on this very issue. Taishan incorrectly filled out the MPF, denying responsibility for boards marked "Meet or Exceeds" because it had no records of manufacturing boards with that marking, but then after the

---

[36] *See* March 11, 2019 PID Hearing Tr. [Ex. E] at 232:14-19 ("they could do it that way . . . it has the same chemical analysis that a Taishan board has."); *see also* Taishan's Resp. and Obj. to PSC's Supp. Doc. Requests, attached hereto as Exhibit "F" (responses to discovery requests regarding purported chemical analysis); April 18, 2019 Eickhoff Letter to Serpe regarding chemical analysis testing, attached hereto as Exhibit "G."

[37] March 11, 2019 PID Hearing Tr. [Ex. E] at 192:2-6.

"residual boards" that said "Meet or Exceeds" were found in late-2018, it had to accept responsibility for those despite prior denials, SM R&R at 9.[38]

Furthermore, Photo 18, for which the Special Master denied attribution, depicts a board with the marking "Meets" with an "s," and illustrates that the board also contains the aqua blue Taihe edge tape that Taishan admits making.[39] Taishan has admitted that it manufactured boards with the aqua blue edge tape. Taishan Br., Ex. B, at 23; *see also* SM R&R at 8. Additionally, the font and print in Photo 18 is identical to Photo 17, which Taishan admits manufacturing.

The same is true for the version of Photo 19 that was provided to the Special Master as part of Plaintiffs' Product ID presentation. The same board with the marking "Meets" with an "s" also contains Taihe edge tape.[40] ***This is direct evidence that Taishan manufactured boards with the marking "Meets" with an "s."*** And, to make matters worse, the Special Master asked Taishan directly about the Taihe Tape in Photo 19 at the hearing and Taishan did not even pretend to offer explanation but simply repeated its position that it has no records indicating it manufactured boards with the marking "Meets" with an "s." Tr. at 191:20-192:10. Even with this "smoking gun" evidence, the Special Master ruled in favor of Taishan without so much as mentioning the direct photographic evidence in Photos 18 and 19. The Special Master also ignored the fact that the numerical sequence in Photo 19 is identical to Photo 9, which the Special Master found attributable to Taishan. In addition, Taishan admitted that

---

[38] *See* fn. 8, *supra*, (discussing discovery of residual boards and Taishan's eventual acknowledgement of responsibility for "Meet or Exceeds" marking).

[39] March 11, 2019 PID Hearing Tr. [Ex. E] at 191:3-19. *See also* Photo 18 [Pls.' Tab 57]. Other pictures of the same exact board that is reflected in Photo 18 show the edge tape even more clearly. *See* Dennis S. Hocker, 509 E. Sheridan Street, Unit 304, Dania, Florida, BrownGreer Doc 191809, at 11, attached hereto as Exhibit "H." Numerous pictures produced in this litigation illustrate the same "Meets" with an "s" along with aqua blue Taihe edge tape that show conclusively that Taishan does, in fact, manufacture boards with "Meets" with an "s" "or Exceeds." *See, e.g.*, Priority Plaintiffs John and Bertha Hernandez, 3516 N. Perry Avenue, Tampa, FL, BrownGreer Doc 365098, at 10-11, attached hereto as Exhibit "I."

[40] *See* Plaintiffs' PID Powerpoint, attached hereto as Exhibit "C," at Slides 78, 82 (all photos of the same board).

it manufactured Photo 15. Although the "s" was obscured in Photo 15, other pictures with this identical marking and font reveal the word "Meets" following the comma in the photo.[41]

In addition to the direct photographic evidence, there is voluminous circumstantial evidence that supports attribution of all photos in the "Meet[s] or Exceed[s]" category to Taishan. The Special Master conceded that the "font variations are minimal" among the pictures with that variation to be expected because of the numerous production lines and machines in use by Taishan. SM R&R at 8 & n.5. So, the Court could simply walk through the facts: (1) drywall with the "Meet[s] or Exceed[s]" is defective; (2) the "Meet[s] or Exceed[s]" is not a Knauf product; (3) Taishan admits it made drywall marked "Meet or Exceeds"; (4) boards with the "Meets or Exceeds" marking have been found to contain Taihe edge tape; (5) Taishan admits that its use of singular and plural was not always accurate;[42] (6) the "Meets" with an "s" "or Exceeds" marking is the same font as other admitted markings; and (7) Taishan had previously not taken responsibility for "Meet or Exceeds" markings it manufactured until it found the residual boards in December 2018. Add to that the evidence discussed above with respect to Taishan's manufacturing process and record keeping.

This evidentiary mountain is met with only Taishan's self-serving statements: (1) that the "Meet[s] or Exceed[s]" label is generic; (2) that these markings could be from some unidentified competitor; and (3) that it has no records of using "Meets" with an "s" marking. Nevertheless, the Special Master accepted, at face value, Defendant's unreliable, incredible and self-serving denials and ignored not only the circumstantial evidence discussed above, but also the direct photographic evidence. This is clear error.

### B. Various Drywall Dimensions, Including 4feetx12feetx1/2inch.

It is undisputed that Taishan manufactured drywall with the word "Drywall" and the phrase "4feetx12feetx1/2inch." This category involved 7 photos – Photos 5, 6, 7, 8, 9, 10 and 11. Taishan does not deny that it made the boards with the markings reflected in Photo 2 which shows the phrase "DrYwall" with a capital "Y" and the phrase "4feetx12feetx1/2inch."[43] SM R&R at 9. In addition, Taishan acknowledged in its MFP that

---

[41] *See* Photo 15 [Pls.' Tab 55]; *see also* John and Bertha Hernandez, BrownGreer Doc. 365099, at 14, 19 and 3650987, at 7, attached hereto as Exhibit "J."

[42] 2019 Che Dep. [Pls.' Tab 20] at 107:13-18.

[43] Def.'s PID Br. [Ex. D], at 41-44.

it made boards with the phrase "DRYWALL 4feetx12feetx1/2inch." Beyond that, Taishan once claimed it did not have any records to confirm or deny whether it made boards with the markings contained in the remaining photos and denies responsibility primarily because some of the photos reflect marking where the word "Drywall" is written in different font (*e.g.*, all capital letters – even though their MFP states "DRYWALL" in all capital letters) and several of the photos reflect an asterisk instead of a multiplication sign between the dimensions (*i.e.*, "4feet*12feet*1/2inch"). Based upon Taishan's admission, the Special Master found the markings found in Photo 2 to be attributable to Taishan and then, found Taishan responsible for the markings in Photo 5 because it used the same words as the MFP – "Drywall 4feetx12feetx1/2inch" – and Photo 9 because it had the same font for the word "DrYwall" with a capital "Y" as the admitted Photo 2. In other words, the Special Master only attributed the drywall markings in this category to Taishan when it admitted it or the markings in a given photo were identical to the markings it admitted.

The Special Master offers no explanation for denying Taishan's responsibility for the markings in Photos 6, 7, 8, 10 and 11. By finding Taishan liable only for the markings it admitted, either directly or indirectly, and accepting Taishan's self-serving representations with respect to their use of capital lettering or asterisks, the Special Master essentially made Taishan's credibility the determining factor in her analysis. And, what is troubling is that she did so in the face of compelling evidence showing Taishan's representations were inaccurate, and significant circumstantial evidence linking these boards to Taishan. In addition to the arguments below, the Special Master ignored all of the evidence regarding Taishan's manufacturing processes and record-keeping discussed above.

*First*, there is a fundamental problem with the Special Master's denial of the markings in Photo 6. That denial contained no explanation, which is significant because the Special Master appropriately found the markings in Photo 5 attributable to Taishan because "the marking on photo #5 reflects the same words listed on [Taishan's MPF], specifically "Drywall 4feetx12feetx1/2inch" – and Photo 6 is identical to Photo 5.[44] SM R&R at 9. Both contain

---

[44] The exemplar that is reflected in Photo 6 is cut off because it came from a ripped piece of drywall so it shows only "Drywall 4feetx12" with the jagged edge of the tear cutting through the "2" but there is no plausible dispute that had the piece of drywall not been torn, the remainder of the phrase – "feetx1/2inch" would follow what is seen in the photo.

the same words listed on Taishan's MPF, namely the "Drywall 4feetx12feetx1/2inch."[45] Both contain the same elongated "y" and both contain the same font. The only difference is that the markings in Photo 6 are printed in dot matrix. That difference is inconsequential particularly given the fact that other markings in dot matrix are (correctly and appropriately) attributed to Taishan. Furthermore, the dot matrix printing in Photo 6 (including the irregular/stray marks, particularly the letter "D") are identical to those that appear in Photo 17 (which the Special Master found attributable to Taishan).

*Second*, the Special Master's determination that the nearly identical marking – "Drywall 4feet*12feet*1/2inch" (an asterisk in place of the multiplication sign) – contained on the drywall in Photos 7 and 8 should not be attributable to Taishan flies in the face of the evidence. Indeed, the Special Master's refusal to infer that drywall with the nearly identical markings "Drywall 4feet*12feet*1/2inch" was also manufactured by Taishan can only be explained by her requirement that Taishan's responsibility be shown with *direct* evidence – *i.e.* an admission by Defendants – that Taishan used an asterisk in representing the board's dimensions. Taishan's key defense, beyond claiming that "other manufacturers may have produced drywall with these markings," was that it has not uncovered any records showing that it used an asterisk in place of a multiplication sign.[46] Yet, not only did Plaintiffs produce evidence directly calling into question this defense, namely numerous emails between Taishan personnel and United States' customers in which Taishan used asterisks instead of multiplication signs when discussing drywall dimensions,[47] but also Taishan initially admitted manufacturing the type of drywall depicted in Photo 35 in which an asterisk is used.[48] Photos 7 and 8 should have been attributed to Taishan.

*Finally*, with respect to the variations in the capitalization of the word "Drywall," the Special Master denied attribution for the markings in Photo 10 ("DRYWALL") and Photo 11 ("DryWall") without explanation. First, "DRYWALL" with all capital letters was identified on Taishan's MPF. In addition, Taishan admittedly has no idea what style the

---

[45] Pls.' Tab 61.

[46] *See* 2019 CHE Dep., [Pls.' Tab 20], at 129:16-25; *see also* Def.'s PID Br. [Ex. D], at 44.

[47] *See, e.g.*, Pls.' PID Br. 49, Tabs 62-64, 65 and 67.

[48] *See* MDL Rec. Doc. 8310-1, at 6.

word "Drywall" took when it was placed on their boards because it has no records. It is clear that it made boards with the specific dimensions described above and that those boards had the word "Drywall" on them in different forms. Given that Taishan manufactured defective high-sulfur "DrYwall" with a capital "Y," is it *more likely than not* that it also manufactured defective "DrywAll" with a capital "W," particularly given the evidence in the record about the inconsistency of its manufacturing process, or instead that some other unknown and unidentified company manufactured defective high-sulfur "DryWall" with a capital W? The weight of the evidence clearly points to Taishan.

### C. IMT Gypsum

It is undisputed that Taishan manufactured drywall with "IMTGYPSUM" printed on it,[49] but the Special Master hinges her opinion on a distinction drawn between Taishan manufacturing board with "IMT Gypsum" printed on edge tape (admitted) vs. "IMT Gypsum" printed with spray markings, as opposed to edge tape (not admitted). Again, the Special Master accepted, at face value, the self-serving testimony of Defendants that it did not use "IMTGypsum.com" (simply because it found no records "that Taishan had sprayed the marking of 'IMT' on the back of its boards"[50]) and that it has no evidence of having used asterisks instead of multiplication signs.[51]

This conclusion flies in the face of the overwhelming weight of the evidence, including the facts referenced above with respect to Taishan's manufacturing process as well as the following: (1) the existence of at least one 2006 Sales Plan Notification from Taishan's Sales Department for the manufacture of IMT Gypsum drywall to Taishan's Management Department wherein the edge tape was to clearly read "IMT Gypsum" and a spray marking was to be attached (Taishan's production of the Sales Plan Notification did not include the attached spray marking);[52] (2) when asked what the "IMTGypsum" edge tape identified in the Manufacturer Profile Form looks like, Mr. CHE responded, "I was not able to discover

---

[49] SM R&R at 6 (citing Def.'s Tab 29).

[50] 2019 Che Dep. [Pls.' Tab 20] at 60:23-25.

[51] *See* SM R&R at 6.

[52] *See* Pls.' Tab 15, at TG-PID-000041-42.

the edge tape during my depo preparation as the corporation's representative";[53] (3) Taishan initially admitted to the manufacture of the type of drywall depicted in Photo 35 in which an asterisk is used;[54] and (4) Taishan's numerous emails to United States customers listing drywall dimensions using asterisks in lieu of a multiplication sign (*e.g.*, 12'*4'*1/2").[55]

Taking the fact that Taishan admittedly manufactured board marked "IMTGYPSUM" and the Sales Plan Notification indicated that there were to be spray markings (although not attached) would certainly make it more probable than not, absent evidence to the contrary, that the boards in questions were manufactured by Taishan.

   **D.    ProWall**

The evidence presented to the Special Master clearly established that Taishan manufactured ProWall for a Chinese entity called Run & Fly (Jinan) New Materials Co. Ltd. who imported that drywall into the U.S.[56] SM R&R at 7. In fact, it is undisputed that Taishan sold at least 9,936 sheets of blank drywall to Run & Fly in 2006.[57] The evidence also shows that Run & Fly sold that same amount, 9,936 sheets of ProWall, to a North Carolina entity called Manchester In Home and Manchester subsequently sold, that same amount, 9,936 sheets of ProWall, to Stock Building Supply whose Florida locations distributed ProWall to installers in Florida. With these facts, it cannot seriously be questioned that Plaintiffs have established that it was "more likely than not" that Taishan manufactured ProWall.

However, the Special Master found that Plaintiffs did not meet their burden relying upon: (1) the suspect and self-serving deposition testimony of Taishan's corporate representative who had claimed that the batch of drywall it manufactured for Run & Fly was only a test batch and Run & Fly ultimately went with a less expensive manufacturer to fulfill

---

[53] *See, e.g.,* 2019 Che Dep. [Pls.' Tab 20] at 67:22-24.

[54] *See* MDL Rec. Doc. 8310-1, at 6. (While the document refers to "4feetX12feetX1/2inch" the photograph itself depicts "4feet*12feet").

[55] *See, e.g.,* Pls.' Tabs 62-64. *See also* March 11, 2019 PID Hearing [Ex. "E"] at 144:17-146:2 (Taishan admits to manufacturing DUN drywall. The "Product Markings" column on the MPF is blank for DUN drywall but indicates under the "Edge Sealing Tape Markings" column that it contains "Edge sealing tape: DUN Drywall." However, contrary to the MPF, the DUN boards have "DUN Drywall" markings on the boards themselves, not the edge tape, which Taishan admits it manufactured.).

[56] Pls.' PID Br. [Ex. A] at 40-43.

[57] *See, e.g.*, Pls.' Tab 19; 2019 Che Dep. [Tab 20] at 146:20-148:15.

their drywall needs; and (2) Taishan's claim that it has no record of having manufactured boards with the phrase "Meets ASTM C36/C1396 STANDARD," which appears on the ProWall boards as opposed to "Meet or Exceeds" that is indicated in the MPF.[58]

The only evidence in the record that any other entity produced ProWall drywall for Run & Fly is the self-serving testimony of Taishan's Rule 30(b)(6) witness.[59] *Yet, the Special Master found this denial to be conclusive*. This is precisely where Taishan's credibility problem comes into play and yet, the Special Master gave it no weight. Instead, the Special Master found this speculative and self-serving "evidence" overcame the direct and unrefuted evidence that Taishan provided Run & Fly with ProWall who then provided that drywall downstream to Stock who used that drywall in Florida.

E.    **White Edge Tape, Boards with No Markings or Boards with No Markings Other Than Numbers.**

There is no dispute that Taishan manufactured boards in this category, and noting that "Plaintiffs assert that the Taishan Defendants manufactured and exported nearly one million square meters of blank board with white edge tape to the United States," the Special Master concedes "it is likely that at least some of the boards in the Florida claimants' homes that fit this Product ID category were manufactured by the Taishan Defendants." SM R&R at 10. Yet, the Special Master declined to attribute this Product ID Category to Taishan because without more information, she "is unable to determine what portion or which claimants' homes" contained boards manufactured by Taishan. *Id*. In other words, the Special Master declined to hold Taishan accountable for none of the "nearly one million square meters of blank board[s]" because there would be no way to determine if a given "blank" board was manufactured by Taishan or someone else. The intentional failure to mark one's product should not provide a free pass to manufacturers of those products if they cause harm.

The relevant inquiry in this default proceeding is whether under the totality of the circumstances, it is more likely than not that Taishan manufactured the boards in the Category that were used in claimants' homes. Plaintiffs satisfied their burden of proving that

---

[58] The Special Master also noted Taishan's claim that their invoice with Run & Fly was a "common invoice" indicating for use in China as opposed to an "export invoice," a fact that hardly seems relevant in that the manufactured boards were American-sized and the evidence noted by the Special Master shows the boards ended up in the United States. SM R&R at 7.

[59] 2019 Che Dep. [Pls.' Tab 20] at 150:7-151:21; *see also* Def.'s PID Br. [Ex. D] at 34.

Taishan manufactured boards in this category generally, but the Special Master argues that Plaintiffs cannot meet their burden specifically as to each board. First of all, Plaintiffs are entitled to the reasonable inference that this non-Knauf high-sulfur off-gassing defective drywall was made by Taishan. Second, it is Taishan's manufacturing process and procedures, or lack thereof, that created the identification problem by failing to property mark their boards as required under U.S. law.[60] That alone should shift the burden to Defendant to refute that it did not manufacture a given board.

Attribution to Taishan is also supported by the fact that: (1) Taishan's documents admit to the manufacture and export of nearly one million square meets of blank board with white edge tape to the U.S.;[61] (2) Taishan admits in its MPF that it manufactured 351,745 sheets of drywall with no "Product Markings" and no "Edge Sealing Tape Markings" from 3/13/2006 to 9/15/2006;[62] (3) Taishan admits in its MPF that it manufactured 19,565 sheets of drywall with no "Product Markings" but "Edge Sealing Tape Markings" identified as "White Edge Sealing Tape (without words printed thereon)" from 4/26/2006-4/30/2007;[63] (4) Taishan reported, in April of 2006, that the "labeling for the remaining 1020749.452 square meters [10,987,347.10 square feet] of gypsum boards is *unknown*";[64] (5) Taishan admits it manufactured boards without any product or edge sealing tape markings, which were exported by Taian Taigo Trading Corp.;[65] and (6) there is no evidence (no document and no witness) who can say that there was ever any defective blank board with white edge tape exported to the U.S. by any competitor or other manufacturer.[66]

In response, Defendant argues that (1) other companies manufactured drywall, ***not defective drywall***, with white backing or white edge tape that contained no other markings;

---

[60] Pls.' PID Br. [Ex. A] at 28-30.

[61] *See* Pls.' Tab 10; *see also* Taishan MPF [Pls.' Tab 11] at lines 11, 62-63, 131, 198-201, 224-228, 231, 235.

[62] *See* Taishan MPF [Pls.' Tab 11] at lines 2-5, 16-21, 24-28, 122, 218 (totaling 351,745 sheets of drywall with no "Product Markings" and no "Edge Sealing Tape Markings" markings).

[63] *See id*. at lines 11, 62-63, 131, 198-201, 224-228, 231, 235 (totaling 19,565 sheets of drywall with no "Product Markings" but "White Edge Sealing Tape (without words printed thereon)").

[64] *See* Pls.' Tab 68, (emphasis supplied).

[65] *See* Pls.' Tabs 11 and 68.

[66] *See* 2019 Che Dep. [Pls.' Tab 20] at 27:5-13.

and (2) Plaintiffs should provide a "chemical analysis" to trace the drywall to Taishan – the very "chemical analysis" that Taishan knows is not possible to conduct.[67] Yet, the Special Master did not stop to weigh the evidence (since Taishan presented none) and merely accepted Taishan's argument that more was required than the evidence set forth above for Plaintiffs to meet their burden, even going so far as to seemingly accept Taishan's bogus "chemical analysis" claim. Under the Special Master's approach, Taishan is allowed to escape liability for millions of square feet of defective drywall that Taishan *admits* was shipped to the U.S.[68]

### F. C&K Drywall.

The Special Master found that Taishan was not responsible for boards bearing markings in this Category. SM R&R at 5. Taishan's key rebuttal to its responsibility for this Category is that these boards were manufactured by a competitor, Shandong Chenxiang Building Materials Co., Ltd. ("Shandong Chenxiang"). *Id*. Three key points were left unaddressed by the Special Master's analysis: (1) Shandong Chenxiang is noted as the shipper, not the manufacturer, of the drywall in question on many of Taishan's documents; (2) Taishan regularly fulfilled orders for American-sized drywall during times of increased demand for smaller gypsum board factories; and (3) York Building Supply imported C&K drywall, and (4) evidence indicated that Taishan had a contractual relationship with York Building Supply/International Materials Group to produce drywall.[69] In addition, Shandong Chenxiang eventually went bankrupt and was ultimately acquired by BNBM.[70]

## V. CONCLUSION

For these reasons, the Court should sustain Plaintiffs' Objections to the Special Master's R&R and find that the following Product ID Categories (and markings contained in all photos therein) are attributable to Taishan: C&K; IMT Gypsum; ProWall; Meet[s] or Exceed[s]; Dimensions; and White Edge Tape.

---

[67] *See* Section III.C, *supra*.

[68] *See, e.g.,* SM R&R at 10 (citing Def's Tabs 27-29 and noting that "it is likely that at least some of the boards in the Florida claimants' homes that fit this Product ID were manufactured by the Taishan Defendants").

[69] *See, e.g.,* 2019 CHE Dep. [Pls.' Tab 20] at 68:11-15, 133:10-138:25; *see also* Pls.' Tabs 42-45.

[70] *See* fn.9, *supra*, discussing CPSC findings and C&K's relationship with Taishan.

20

Dated: April 29, 2019                                Respectfully Submitted,

/s/ Patrick S. Montoya, Esq.
Patrick Shanan Montoya
Fla. Bar No. 0524441
Email: Patrick@colson.com
Colson Hicks Eidson
255 Alhambra Circle, PH
Coral Gables, FL 33134-2351
Telephone: (305) 476-7400
Facsimile: (305) 476-7444
*Interim Lead Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Southern District of Florida by using the CM/ECF System, which will send a notice of electronic filing on this 29th day of April, 2019.

/s/ Patrick S. Montoya, Esq.
Patrick Shanan Montoya
Fla. Bar No. 0524441
Email: Patrick@colson.com
Colson Hicks Eidson
255 Alhambra Circle, PH
Coral Gables, FL 33134-2351
Telephone: (305) 476-7400
Facsimile: (305) 476-7444
*Interim Lead Counsel for Plaintiffs*

# EXHIBIT

# "A"

# <u>FILED UNDER SEAL</u>

# EXHIBIT

## "B"

# <u>FILED UNDER SEAL</u>

# EXHIBIT

# "C"

# <u>FILED UNDER SEAL</u>

# EXHIBIT

# "D"

# <u>FILED UNDER SEAL</u>

# EXHIBIT

# "E"

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 32 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2023 Page 2 of 281
March 11, 2019

```
1              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF FLORIDA
2
3   EDUARDO AND CARMEN          )
    AMORIN, et al.,             )
4   individually, and on        )    Case No.
    behalf of all others        )    1:11-CV-22408-MGC
5   similarly situated,         )
                                )
6        Plaintiffs,            )
                                )
7   v.                          )
                                )
8   TAISHAN GYPSUM CO., LTD.    )
    F/k/a SHANDONG TAIHE         )
9   DONGXIN CO., LTD.; TAIAN    )
    TAISHAN PLASTERBOARD         )
10  CO., LTD., et al.,          )
                                )
11       Defendants.            )
12
13            Monday, March 11, 2019
14
15       HEARING RE: PRODUCT IDENTIFICATION,
16   held before Special Master Tiffani G. Lee at
17   the offices of Holland & Knight LLP,
18   701 Brickell Avenue, Miami, Florida,
19   commencing at 9:45 a.m. on the above date,
20   before Michael E. Miller, Registered
21   Diplomate Reporter, Certified Realtime
22   Reporter and Notary Public.
23              — — —
24        GOLKOW LITIGATION SERVICES
         877.370.3377 ph | 917.591.5672 fax
25            deps@golkow.com
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 33 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 3 of 281
March 11, 2019

```
 1     A P P E A R A N C E S:
 2    SPECIAL MASTER:
 3         TIFFANI G. LEE, ESQUIRE
           HOLLAND & KNIGHT, LLP
 4
 5    COUNSEL FOR THE PLAINTIFF CLASS:
 6         COLSON HICKS EIDSON
           BY:  PATRICK S. MONTOYA, ESQUIRE
 7             patrick@colson.com
           255 Alhambra Circle
 8         Penthouse
           Coral Gables, Florida 33134
 9         (305) 476-7400
10
11         LAW OFFICES OF RICHARD J. SERPE PC
           BY:  RICHARD J. SERPE, ESQUIRE
12             rserpe@serpefirm.com
           580 East Main Street
13         Suite 310
           Norfolk, Virginia 23510
14         (757) 233-0009
15
16         LEVIN SEDRAN & BERMAN
           BY:  SANDRA L. DUGGAN, ESQUIRE
17             sduggan@lfsblaw.com
           510 Walnut Street
18         Suite 500
           Philadelphia, Pennsylvania 19106
19         (215) 592-1500
20
21         IRPINO LAW FIRM
           BY:  PEARL A. ROBERTSON, ESQUIRE
22             probertson@irpinolaw.com
           2216 Magazine Street
23         New Orleans, Louisiana 70130
           (504) 525-1500
24
25
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 34 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 4 of 281
March 11, 2019

```
 1     A P P E A R A N C E S :
 2        BARRIOS KINGSDORF & CASTEIX LLP
          BY:  EMMA SCHWAB, ESQUIRE
 3            eschwab@bkc-law.com
          701 Poydras Street
 4        Suite 3650
          New Orleans, Louisiana 70139-3650
 5        (504) 524-3300
 6
 7        LAW OFFICE OF ALLISON GRANT, P.A.
          BY:  ALLISON KAY GRANT, ESQUIRE
 8            agrant@allisongrantpa.com
          14 Southeast 14th Street
 9        Boca Raton, Florida 33432
          (561) 994-9646
10
11     COUNSEL FOR TAISHAN GYPSUM COMPANY:
12        ALSTON & BIRD LLP
          BY:  BERNARD TAYLOR, ESQUIRE
13            bernard.taylor@alston.com
              CHRISTY HULL EIKHOFF, ESQUIRE
14            christy.eikhoff@alston.com
          One Atlantic Center
15        1201 West Peachtree Street
          Atlanta, Georgia 30309-3424
16        (404) 881-7000
17
          ALSTON & BIRD LLP
18        BY:  DAVID VENDERBUSH, ESQUIRE
              david.venderbush@alston.com
19        90 Park Avenue
          15th Floor
20        New York, New York 10016
          (212) 210-9400
21
          AKERMAN LLP
22        BY:  ENJOLIQUE D. AYTCH, ESQUIRE
23            enjolique.aytch@akerman.com
          350 East Las Olas Boulevard
24        Suite 1600
          Fort Lauderdale, Florida 33301
25        (954) 463-2700
```

March 11, 2019

```
 1     A P P E A R A N C E S:
 2    COUNSEL FOR BNBM DEFENDANTS:
 3       ORRICK HERRINGTON & SUTCLIFFE LLP
         BY:  ANDREW K. DAVIDSON, ESQUIRE
 4            adavidson@orrick.com
         The Orrick Building
 5       405 Howard Street
         San Francisco, California 94105
 6       (415) 773-5700
 7
         ABALLI MILNE KALIL
 8       BY:  JOSHUA D. POYER, ESQUIRE
              jpoyer@aballi.com
 9       2250 SunTrust International Center
         One Southeast Third Avenue
10       Miami, Florida 33131
         (305) 373-6600
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

March 11, 2019

```
 1                    PROCEEDINGS

 2            (March 11, 2019 at 9:45 a.m.)

 3            SPECIAL MASTER LEE:  Good

 4      morning, everyone.  This is Tiffani

 5      Lee, court-appointed special master in

 6      the case styled Amorin v. Taishan

 7      Gypsum, et al pending in the Southern

 8      District of Florida.

 9            We're here at the Miami office

10      of Holland & Knight for a hearing on

11      product identification issues that

12      will be related to the property damage

13      claims that I've been appointed to

14      adjudicate.

15            We'll first start with

16      appearances of the counsel.  For the

17      plaintiffs.

18            MR. MONTOYA:  Your Honor,

19      Patrick Montoya.

20            MR. SERPE:  Richard Serpe.

21            MS. DUGGAN:  Sandra Duggan from

22      Levin Sedran & Berman.

23            MS. GRANT:  Allison Grant.

24            MS. SCHWAB:  Emma Schwab.

25            MS. ROBERTSON:  Pearl
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 37 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2015 Page 7 of 281
March 11, 2019

1    Robertson.

2         MR. POYER:  Joshua Poyer for

3    Beijing National Building Materials

4    PLC.

5         MR. DAVIDSON:  Andrew Davidson

6    for BNBM PLC.

7         MS. AYTCH:  Enjolique D. Aytch

8    for Defendant Taishan.

9         MR. TAYLOR:  Bernard Taylor for

10   Taishan.

11        MR. VENDERBUSH:  David

12   Venderbush for Taishan.

13        MS. EIKHOFF:  Christy Hull

14   Eikhoff for Taishan.

15        SPECIAL MASTER LEE:  Thank you

16   very much, and we'll turn it over to

17   plaintiff's counsel for presentation.

18        MR. MONTOYA:  Thank you.

19        Your Honor, thank you for

20   hosting us today.  I'm going to call

21   you Your Honor just because I'm much

22   more comfortable in that manner and I

23   won't trip over the phrasing

24   otherwise.

25        You were appointed with a very

March 11, 2019

```
 1        serious responsibility in this case.
 2        We're here on behalf of 1700
 3        plaintiffs that were affected in
 4        Florida by Chinese drywall.
 5              Your job, while a large one, is
 6        also very limited in scope.  One of
 7        the things we will talk about today I
 8        think is, in many ways, the simplicity
 9        of what you've been tasked with, but
10        the difficulties that the defendants
11        have made of this case and of the
12        information that's been available.  So
13        on behalf of those homeowners, I thank
14        you for your time today.
15              A little brief background on
16        Chinese drywall, and frankly, why we
17        are here.  Back in 2009 in this group
18        we filed among the first cases in the
19        Southern District of Florida were
20        Chinese drywall.  Basically, what
21        Chinese drywall does is it off-gases
22        sulfur.
23              There were mines in China that
24        had a layer of sulfur shale that ran
25        throughout the mines, was not cooked
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 39 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 9 of 281
March 11, 2019

1    out of the drywall when the drywall

2    was made.  It got into people's homes

3    and it off-gases, and that off-gassing

4    basically affects what we call

5    anything with a button, anything that

6    has silver, metal or copper.

7         So all the electronics, silver

8    tarnishes, it oxidizes the silver, and

9    computers, anything with a chip or a

10   motherboard, TVs.  It also affects

11   copper plumbing, so wiring and

12   plumbing as well.

13        It affected the -- the only

14   remedy and the court-ordered remedy

15   and the court-ordered protocol is to

16   rip and tear a home down to its studs,

17   take all the drywall out, HEPA vacuum

18   it, wipe it down, replace all the

19   appliances, all the affected wiring,

20   all the affected plumbing.  That's the

21   remedy.

22        So if you think to myself, this

23   is my home, this is my -- for most

24   people it's their biggest investment

25   in Florida.  The Chinese drywall was

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 10 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/23/2019 Page 10 of
281
March 11, 2019

1    imported from '05 to '09.  That

2    coincided with the building boom that

3    was going on at that time and also the

4    hurricanes that were going on at the

5    time, and the shortage of drywall in

6    the U.S.

7         Typically, companies would not

8    import drywall because it wasn't

9    economical to do so.  Drywall is

10   heavy.  It costs a lot of money to

11   ship, so the U.S. gypsum market has

12   always been healthy and always been

13   able to satisfy demand.

14        But when the hurricanes

15   happened back in '05 to '09, the

16   building boom, the U.S. market simply

17   couldn't take on the demand.  So U.S.

18   distributors and others started

19   calling over to China to get drywall.

20   That's how the drywall problem started

21   was due to the building boom and to

22   the hurricanes.

23        You will hear some allusions in

24   this case and there was testimony from

25   the corporate heads of Taishan that

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 41 of 343
Case 1:11-cv-22408-MGC Document D entered on FLSD Docket 04/29/2019 Page 11 of 281
March 11, 2019

1    essentially U.S. consumers were stuck

2    in a foreclosure crisis and now

3    they're blaming Chinese drywall.

4    Nothing could be further from the

5    truth.

6        The drywall has been found

7    defective.  The Court's found it

8    defective.  And we are here in a

9    default proceeding, so we're not here

10   to argue about the defective nature of

11   the drywall, but we wanted to give

12   Your Honor a background of how it

13   impacts people's lives.

14        I mentioned the foreclosure

15   aspect of it because I do believe it

16   goes to the conduct and overall

17   demeanor of the defendants.

18        For the defendants to come in

19   and blame the U.S. consumer saying:

20   Well, they can't pay their mortgages,

21   they got in over their head and now

22   they want to blame defective drywall

23   is indicative of the stance that these

24   companies have taken in this

25   litigation and the litigation abuse

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 42 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 12 of 281
March 11, 2019

```
 1          that has gone on in this case.
 2               At no time when I talk of the
 3          litigation abuse or the -- we say
 4          misrepresentations, I will say lies of
 5          Taishan, I do not impute any of that
 6          to lawyers in this room.  I think the
 7          lawyers in the room are fine people.
 8          I think they're doing the best job
 9          they can with a very difficult and
10          very recalcitrant client.
11               We often go to hearings and
12          before or after a hearing you may
13          represent folks, I've represented
14          folks and I've had to tell people on
15          the other side, hey, you know what,
16          I'm having a hard time with my client.
17          We're going to fight on this issue,
18          but I really need an order to help
19          push my client towards what it needs
20          to do.
21               I have not had that
22          conversation with these folks in this
23          room on the other side of the table,
24          but I get the sense from what has
25          happened in this case, and I'm going
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 43 of 343
Case 2:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 13 of 281
March 11, 2019

```
1          to go through it, that they're dealing

2          with a very difficult and recalcitrant

3          client.

4                  So I don't want to have

5          anything construed that I'm saying

6          here as against the lawyers in this

7          room.  I think what they're dealing

8          with is a very, very difficult client.

9                  And as an example, Taishan sat

10         on the sidelines for a year in this

11         case before they came in.  They were

12         defaulted, served through The Hague

13         Convention properly, and on the eve of

14         the default, on the appeal, they came

15         in and they only came in to contest

16         jurisdiction.

17                 So the MDL Court, Judge Fallon,

18         allowed them to contest jurisdiction,

19         and we did discovery on jurisdiction

20         for about a year and a half to two

21         years.

22                 When it went up on appeal, we

23         prevailed on jurisdiction, the

24         plaintiffs prevailed on jurisdiction

25         in front of two panels at the Fifth
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 44 of 343
Case 2:11-cv-22408-MGC Document 29 entered on FLSD Docket 04/23/2019 Page 14 of
281
March 11, 2019

1    Circuit.  This was one of the

2    statements in Taishan's brief.

3         Over its entire history, TG,

4    Taishan Gypsum, made only two sales to

5    a U.S. company.  That's back in 2010.

6         And you'll see from the heading

7    of the slide, Taishan actually

8    manufactured and shipped 86 million

9    square feet of drywall to the U.S.

10   I'm laying this out because you will

11   see how the story changes and evolves.

12   So I want you to remember two

13   shipments -- or sales of drywall to a

14   U.S. company.

15        May 11th, 2009, this is about

16   three or four months after the first

17   lawsuit was actually filed.  Taishan

18   hasn't appeared in the cases at all,

19   but their own internal documents show

20   that by May 11th, 2009, they're

21   already categorizing and able to

22   organize and report to themselves, to

23   their parent company, how much drywall

24   they had shipped to the U.S.

25        Now, back on May 11th, 2009, we

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 45 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2015 Page 15 of 281
March 11, 2019

1    didn't have this document.  We didn't

2    have it in 2010.  We didn't have it in

3    '11, '12, '13, '14, or '15.  What we

4    found throughout this case is that we

5    get documents two, three, four, five

6    years later down the road after

7    they've been produced.

8         So why am I telling you all

9    this?  Because the fight on

10   jurisdiction was how much drywall did

11   they ship to Florida, how much drywall

12   did they ship to Louisiana,

13   North Carolina, Virginia.  And what we

14   found was a pattern of hiding

15   information and not being forthcoming

16   with information.

17        So this is by Taishan's own

18   admission in their own documents that

19   we didn't get until 2015.  This is at

20   Tab 6 in the binder: 446,000 meters of

21   drywall in 2005, 5.9 million square

22   meters, 240,000 square meters, 16,000

23   square meters.  Contrast that with

24   their statement to the Fifth Circuit

25   that they only made two sales to a

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 46 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/23/2019 Page 16 of
281
March 11, 2019

```
  1              U.S. company.

  2                   October 20th, 2010, yet again

  3              another document that we did not have

  4              until 2015.  Six months after

  5              litigation was filed against them and

  6              they hadn't answered -- they knew that

  7              they had been sued.  They had already

  8              retained counsel.  They were already

  9              talking to lawyers about what was

 10              happening.

 11                   They were making their own

 12              internal reports about what was there.

 13              They already knew -- is there -- I

 14              don't know if there's a pointer on

 15              this.  Let me find one that has a

 16              pointer.

 17                   So they still haven't responded

 18              to the lawsuits at this point.

 19              They're sitting on the sidelines, they

 20              made a conscious decision to sit on

 21              the sidelines, and you'll see their

 22              internal documents will show that.

 23                   But by this point -- and this

 24              starts to get to what we're really

 25              here about today, which is the
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 47 of 343
Case 3:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 17 of 281
March 11, 2019

1    markings and the labelings on the

2    drywall.

3              They were able to categorize

4    and knew that they printed Shandong

5    Taihe Dongxin, which is our name for

6    Taishan Gypsum in the factory -- on

7    the back of boards, 687,000 meters;

8    the same for Taian Taishan

9    Plasterboard, what we call TTP,

10   117,000 square meters; Taishan brand

11   edge sealing tape, 965,000 meters.

12             And another important category,

13   number 4, white, letter-free edge

14   sealing tape and no sprayed code

15   neutral packaging.  In other words, no

16   identifying marks on the board

17   whatsoever, almost a million square

18   meters.

19             And then 3.5 million square

20   meters that was custom ordered from

21   U.S. customers, where they should have

22   documents of what they sent out.

23             Again, they told the Fifth

24   Circuit two shipments, and here they

25   are in 2010, before they're even in

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 48 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/23/2019 Page 18 of 281
March 11, 2019

1      the litigation, already knowing what

2      they did, how they did it, who they

3      shipped to and how it was marked or

4      not marked.

5              And probably the most

6      remarkable category, at least to me,

7      in the litigation is number 6.  Over

8      a million square meters, the labeling

9      is unknown.

10             So here I am as the plaintiff

11     with the burden of proof, and I've got

12     a defendant who hides information for

13     four to five years or more -- and

14     we'll get into this later -- up and to

15     the eve of the depositions in January

16     is producing documents and producing

17     labeling on documents and producing

18     photos of drywall that they magically

19     found in their factory after ten years

20     of litigation.

21             When in October of 2010 they

22     apparently had the wherewithal to know

23     what was being shipped, where it was

24     being shipped and how much was being

25     shipped.

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 19 of 343
Case 1:11-cv-22408-MGC Document Dsqauntered on FLSD Docket 04/29/2019 Page 19 of 281
March 11, 2019

1        And they don't want to take
2    responsibility for unmarked board, and
3    they've got a million square meters.
4    The labeling on the remaining drywall
5    of 1 million square meters is unknown.
6    And this isn't Patrick talking.  This
7    is in their own documents at Tab 27.
8        Again, we didn't have these
9    documents until 2015.  I think it came
10    from the -- and my team will correct
11    me if I'm wrong -- from the magically
12    found computer.  So there was an
13    employee in the plant named Peng
14    Wenlong.  You'll hear this name.
15        Mr. Pong or Mr. Peng, depending
16    on the pronunciation, testified that
17    he was in the foreign sales department
18    at Taishan, but that was back in, I
19    think, his second deposition.
20        In his first deposition he just
21    said that he was responsible for
22    watering flowers and being the
23    gardener, but then later on it evolved
24    that he was in foreign sales.
25        Well, later on it evolved, when

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 50 of 343
Case 2:11-cv-22408-MGC  Document 1 Entered on FLSD Docket 04/29/2019  Page 20 of 281
March 11, 2019

```
1    he got fired, the computer that he had
2    that had close to 300,000 documents on
3    it that were relevant to this case
4    were on his computer.
5         So after the jurisdictional
6    discovery in 2010 and then the rulings
7    in '11 and '12, we were finally able
8    to get ahold of his computer in 2015.
9         That's all detailed in the
10   brief, but that goes, again, to the
11   pattern -- and I'm trying to be
12   delicate -- of lies in this case.
13        June 2010, again, they still
14   have not appeared in the litigation at
15   this point.  This is their own
16   internal documents.  They prepared a
17   statistical spreadsheet and analysis
18   for their parent entity for the
19   purpose of concluding the lawsuit.
20        What had -- what were they able
21   to tell from their own internal
22   documents about what they created?
23   They had a two-page statement of the
24   data and statistics of exports to the
25   U.S. from 2005 to 2007, a three-page
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 51 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 21 of 281
March 11, 2019

```
 1          spreadsheet from U.S. buyers -- so
 2          they knew they were selling to the
 3          U.S., even though they told the Fifth
 4          Circuit they only made two shipments
 5          there -- and then a 28-page
 6          spreadsheet of product labeling.
 7          That's at Tab 10 of this e-mail chain.
 8                   Why do we go through this here?
 9          Why are we telling you about this?
10                   So this is one of those
11          spreadsheets.  This was the detail
12          that they had back in 2010.  They were
13          able to track date, invoice number,
14          manufacturer, exporter, who the U.S.
15          customer was -- and remember, we don't
16          sell board to the U.S., we don't know
17          anything about the U.S. -- who issued
18          the invoice, where the drywall came
19          from, the size of it, how much they
20          produced, how it was delivered, where
21          it was going, how much it was worth,
22          how it was exported, what the product
23          label said.
24                   We're here about, in part
25          today, about product labeling.  They
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 52 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 22 of 281
Marcn 11, 2019

1    were able to track the labeling.

2    Absolutely they were doing it.  They

3    were able to do it at the time.  This

4    was 2010.  They produced the drywall

5    in '05, '06, '7, '8 and '9.  Yet in

6    2010 they could tell you what they

7    had.

8           What you'll find out later as

9    we continue to go on is, well, certain

10   sales invoices and certain sales

11   notifications get produced on the eve

12   of deposition 10 years later that they

13   magically find in the factory.

14          The bottom line is their

15   discovery practices, their hiding of

16   documents -- Taishan's hiding of

17   documents, not counsel -- is used both

18   as a sword and a shield in this

19   litigation.  So when there's something

20   they don't like, they don't have it.

21   When they find something that's

22   beneficial to them, all of a sudden

23   they have it.

24          And then what they want to do

25   is flip the burden and say:  When we

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 53 of 343
Case 3:11-cv-22408-MGC Document Docket Entered on FLSD Docket 04/23/2019 Page 23 of
281
March 11, 2019

```
 1            make unlabeled drywall that is unknown
 2            to us, well, plaintiffs' got the
 3            burden.  No, it can't be that way.
 4            And that's what we briefed and put in
 5            our papers to you is that burden of
 6            proof needs to be shifted.
 7                    We made a prima facie case.
 8            We've passed muster.  We have the
 9            markings that they either admit or
10            deny that we all agree are at issue in
11            litigation.  The burden should shift
12            to them because of what they've done
13            and what they've hidden in this case.
14                    What I wanted to get to was the
15            amount of detail that they were able
16            to provide to themselves for their
17            parent company.  And this is part of
18            the 28-page spreadsheet.  All this is
19            in the briefing in your documents.
20                    So what do we know now?
21            86 million square feet of drywall have
22            been imported from '05 to '08.  They
23            knowingly exported to the United
24            States and targeted Florida in
25            particular.  They had exclusive
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 54 of 343
Case 1:11-cv-22408-MGC Document 25 Entered on FLSD Docket 04/29/2019 Page 24 of 281
March 11, 2019

```
 1            distributorship agreements with a
 2            customer in Florida.
 3                 But what did they say?  Why did
 4            this all happen this way?  This was a
 5            very early litigation strategy, and
 6            it's at Tab 6 in your binder.  This is
 7            probably, to me at least, probably the
 8            most important document in the case as
 9            we sit here today.
10                 So if you don't know, and we
11            didn't go into it enough in our
12            briefing, Taishan was held in both
13            civil and criminal contempt by
14            Judge Fallon in the MDL back in 2015.
15            And part of that process was there was
16            the discovery of attorney-client
17            privileged documents and a lot of
18            Taishan's own internal documents.
19                 And what we later found out
20            is -- and it's in the packet -- is
21            Taishan took the very early stance
22            that responding to lawsuits would be
23            too expensive.  They knew that their
24            assets were located in China and they
25            basically said, even if they lost,
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 55 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2015 Page 25 of 281

March 11, 2019

1      they can't get us.  They thumbed their
2      nose at us because there's no treaty.
3      They figure you can't collect, so why
4      do we have to respond at all?  And
5      that's the stance they took throughout
6      this.
7           This is the document I'm
8      talking about.  This is Tab 6.  This
9      is the translation from their own
10     internal documents, and they say:
11     Summarizing the reasons above,
12     Taishan Company is inclined not to
13     respond to the lawsuit, but when
14     necessary, it will adopt methods such
15     as mailing the evidence that is
16     beneficial to Taishan Company to the
17     U.S. court and having the government
18     departments interfere, so as to
19     eliminate and reduce some negative
20     impact.
21          The key term there is
22     "beneficial," and you'll see that
23     throughout.  When it benefits them,
24     when it benefits Taishan to produce
25     the documents, like when they found

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 56 of 343
Case 2:11-cv-22408-MGC Document 2 Entered on FLSD Docket 04/29/2019 Page 26 of
281
March 11, 2019

1          the magic residual boards that were

2          left over in their factories in

3          December of 2018 and then gave us the

4          photos in January of 2019, just before

5          the depositions a month or two ago, it

6          benefits them because they want to be

7          able to say, well, here's proof

8          positive that these are the boards we

9          made and these are the markings.  All

10         the other stuff, well, you know, I

11         don't know if we have documents of

12         that.  We don't have the documents of

13         that.  But we do have these, so we get

14         the benefit from that.  That's the

15         sword and the shield that I'm speaking

16         of.

17              Also in that same document:

18         After analysis, Taishan Company

19         believes that this lawsuit is

20         relatively complicated, and it plans

21         not to respond.

22              This is back in 2010, after the

23         lawsuits were filed, before they

24         responded.  It's a conscious

25         litigation strategy not to respond, to

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 57 of 343
Case 3:11-cv-22408-MSC Document 29 entered on FSD Docket 04/29/2019 Page 27 of 281
March 11, 2019

1    continue to delay and to create

2    problems for these plaintiffs.

3         We already went through these

4    statements here, but this is their

5    words:  No treaty, they can't get us.

6         So they came in in 2010 only to

7    contest jurisdiction.  They denied any

8    knowledge in 2010 of exporting the

9    drywall to the U.S.

10         Well, I just spent the last ten

11    minutes, frankly, belaboring the

12    points that they knew what they

13    produced back in 2010.

14         They lied to the Fifth Circuit

15    and they have in their own internal

16    documents the volumes and volumes and

17    volumes of drywall.  So this is a

18    conscious strategy.

19         The last bullet point:

20    Taishan's witnesses were deemed not

21    credible, necessitating a second round

22    of depositions overseen by

23    Judge Fallon in Hong Kong.

24         First time I've ever heard of

25    it, I was involved in it, but we took

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 58 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 28 of 281
March 11, 2019

1        the first round of jurisdictional

2        depositions in Hong Kong of Taishan.

3        We agreed to go out to Hong Kong to

4        conduct the depositions there, and we

5        set aside a week to do it.

6             Present counsel was not

7        involved in the case at that time.  It

8        was four days of lawyer hell and

9        torture, I will tell you that.  And

10       I'm not -- I'm not prone to hyperbole,

11       but here I will tell you the truth.

12       There was a lineup across the table

13       about like we are here in this room

14       with the party chairman, with a

15       translator from Taishan, with a

16       lawyer, two lawyers and a check

17       interpreter that they brought.

18            Within minutes, the

19       interpreters starting fighting with

20       each other, but what was most

21       remarkable to me was as the witness

22       was answering questions, was looking

23       down the row at the table at the party

24       boss to make sure that he could answer

25       the questions correctly.

Case 2:09-md-02047-EEF-MBN  Document 22392-9  Filed 12/06/19  Page 59 of 343
Case 1:11-cv-22408-MGC  Document 29 Entered on FLSD Docket 04/29/2015  Page 29 of 281
March 11, 2019

```
1              So again, I don't blame the

2        lawyers for what's happening in this

3        case, but the short version is those

4        depositions were so chaotic and so

5        bad, I moved for sanctions in a case

6        for the first time in my life, and I

7        stood in front of Judge Fallon and

8        moved for sanctions.

9              And he took a look at the

10       transcripts and his quote in his order

11       was "these depositions turned into

12       chaos and dark night."  That was his

13       quote.

14             He said:  You know what, we're

15       going to do these over again.  I'm

16       going to fly out there myself.  I'm

17       going to go with the parties.  We're

18       getting a State Department

19       interpreter.  We're going to do this

20       the right way.

21             So what took a week and was

22       absolute madness ended up taking three

23       days with Judge Fallon coming out.

24       But he had to sit in and officiate and

25       try and get this right.  Those
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 60 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 30 of 281
March 11, 2019

1    depositions led to him finding
2    jurisdiction and then eventually the
3    appeals that went up to the Fifth
4    Circuit.
5          What we haven't touched on yet
6    is once they lost the jurisdictional
7    battle, that's when they left the
8    litigation, fired their lawyers, and
9    that's when they were found in
10   criminal and civil contempt.  So
11   that's the timeline of what's going
12   on.  Constant running, cat and mouse,
13   hiding.
14         So again, misrepresentations,
15   that's a polite word.  In 2011, this
16   is the chairman, Chairman Jia of
17   Taishan.  He says:  TG produced the
18   plasterboard.  They are very heavy.
19   So we don't have plan to sell it to
20   foreign countries.
21         But we know they did.  We know
22   by their own internal documents they
23   did, and he knew in 2011 when he
24   testified that they did.
25         Mr. Peng, who I alluded to

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 61 of 343
Case 2:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/23/2019 Page 31 of 281
March 11, 2019

1    before, the guy who had the missing

2    computer that went hidden for five

3    years, he says:  There is no exports

4    for us to the United States.

5            That's sworn testimony.

6            2015, Mr. Che, who you'll hear

7    a lot about as the day goes on, was

8    the -- I think was deposed three times

9    in this case, the most recent time in

10   Atlanta in January, and he's the

11   corporate representative at this time

12   because Mr. Peng has apparently been

13   fired and is no longer with the

14   company.

15           Mr. Che said:  Because I cannot

16   confirm where the gypsum boards that

17   were shipped to the United States, I

18   was unable to prepare for that.  So he

19   wasn't ready to testify about that in

20   2015.

21           Let's see what they say now.

22   Same guy, Mr. Che, in 2019:  In

23   preparation for the deposition, I did

24   read in detail what Mr. Peng (Wenlong)

25   had created regarding the detailed

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 62 of 343
Case 1:11-cv-22408-MGC Document 29 entered on FLSD Docket 04/29/2019 Page 32 of 281
March 11, 2019

```
 1          American-sized gypsum board.
 2                 So what is he referring to
 3          here?  There was a spreadsheet that
 4          was prepared by Peng Wenlong; that was
 5          that 28-page spreadsheet that I
 6          referred to before.
 7                 So by 2019, Mr. Che thought it
 8          was due time to go ahead and review
 9          that, nine years after the fact, and
10          now understands that there was
11          American-sized gypsum board.  Because
12          we know China operates on the metric
13          system and we've got -- what's it
14          called, the English system or whatever
15          it is that we do with feet.
16                 They made custom board that
17          said 4X12X1/2 inch.  They knew when
18          they were shipping it out in '05, '06,
19          '07, '08, '09, it was going to the
20          U.S., because those markings make no
21          sense in China.  But they would not
22          admit to it.  It didn't matter how
23          many times you asked them or how you
24          asked them, they don't know where it
25          went; they just produced the board.
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 63 of 343
Case 2:11-cv-22408-MGC Document 29 entered on FLSD Docket 04/29/2019 Page 33 of
281

Marihaere 11, 2019

```
 1          Well, we all know it was going to the

 2     U.S.

 3               So they started to change their

 4     tune a little bit.  The question was

 5     asked:  Why use the term

 6     American-sized drywall?  Because

 7     frankly, they had never used it in the

 8     litigation up until this point.

 9               He says:  I used

10     "American-sized gypsum board" because

11     the gypsum board of this kind of size

12     is generally used in America and other

13     countries generally do not use this

14     size of gypsum board.

15               So they knew all along, but it

16     took us ten years to get to that

17     point.

18               I'll talk a little bit about

19     the markings.  These markings -- and

20     you'll see in the next two slides,

21     these come from the court-created --

22     the MDL court-created Chinese drywall

23     markings catalog.  This is what they

24     would admit to in 2011, the ones that

25     had the Taishan or Taihe brand on
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 64 of 343
Case 1:11-cv-22408-MGC Document 294 Entered on FLSD Docket 04/29/2019 Page 34 of 281
March 11, 2019

```
1        them.  So you'll become familiar very
2        quickly with these labels and what the
3        logos look like.  But at this point in
4        2011, this was all that they would
5        admit to as to their markings.
6             They would also admit in 2011
7        that they had drywall markings on the
8        back of the boards, they had produced
9        drywall with markings on the back of
10       the board that had these phrases;
11       DRYWALL 4feetX12feetX1/2inch, all
12       capital letters, MADE IN CHINA MEET OR
13       EXCEED ASTM, and then the standard,
14       and then the VENTURE SUPPLY.
15            Well, why do I bring this up
16       about what they're admitting?  They
17       admit they put those words on the back
18       of the board when they looked at those
19       photographs in the catalog that we
20       just looked at.  So if it's got this
21       edge tape that goes along the drywall
22       border, they'll admit to that.  And
23       they know they put these markings on
24       the back, but unless they've got the
25       tape and the markings on the same
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 65 of 343
Case 1:11-cv-22408-MGC Document Docketed on 5/19/15 Docket 04/29/2015 Page 35 of 281
March 11, 2019

1    photo, they don't admit to it.

2         So basically what they said is

3    we know we made this board with this

4    type of marking, but there's

5    insufficient evidence to conclude that

6    the drywall depicted in this image was

7    sold by TTP, Taian Taishan

8    Plasterboard; among other reasons,

9    other manufacturers might have

10   produced drywall with these markings.

11        So on one hand, they'll say,

12   yeah, we knew we put it out there, we

13   had it, but it could have come from

14   somebody else.  We have yet to see who

15   that somebody else is.

16        So we talk about burden of

17   proof, plaintiffs got the burden of

18   proof.  Well, this is their defense.

19   Now, they really don't have any

20   affirmative defenses because they've

21   been defaulted.  But if this is their

22   defense, they then have the burden of

23   proof.

24        So who are the others?  You'll

25   hear a little bit about counterfeiting

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 66 of 343
Case 2:11-cv-22408-MGC Document 2 Entered on FLSD Docket 04/29/2019 Page 36 of
281
March 11, 2019

```
1        and how they were very careful in the
2        market to watch out for counterfeiting
3        because their product is so good, but
4        all we've heard is innuendo.  We've
5        seen nothing about other Chinese
6        manufacturers making boards with these
7        markings.
8             These are the same markings in
9        2011.  They will admit to -- and this
10       is an example.  They'll admit to these
11       words, the meets or exceeds -- MEET OR
12       EXCEEDS ASTM.  They know they printed
13       drywall with those words, but they
14       won't admit to those specific photos,
15       whether it be because of the font or
16       some other reason, you'll hear more
17       about that, but that's really what's
18       in front of you today and for the next
19       few days.
20            Same thing with this marking,
21       Drywall 4feetX12feetX1/2inch, they'll
22       contend that there's insufficient
23       evidence.
24            So where are they today?  That
25       was back in 2011.  This is where they
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 67 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 37 of 281
March 11, 2019

```
1         are today.  They say that they do not
2         deny Taian Taishan or Taihe tape, so
3         this is the edge tape I've been
4         talking a little bit about.  So the
5         edge tape and the manufacturing
6         process is done to protect the board,
7         and what the testimony has borne out
8         in this case is that when installers
9         put the board in in a home, generally
10        what they do is they rip the tape off
11        and then they install it.  But that's
12        what the drywall tape is.
13             So from a proof standpoint,
14        frankly, there's going to be some
15        issues because you're not always going
16        to have drywall end tape just by
17        nature of how the drywall is
18        installed.
19             But they will admit to this
20        tape, they will admit to stuff only
21        with their name on it, but they won't
22        admit to anything else.
23             Venture Supply, you'll hear a
24        little more about.  Not so much an
25        issue in Florida, but that was a
```

 1          specific run of drywall that Taishan

 2          did for a company in Virginia named

 3          Venture Supply, and they painted it on

 4          the back.

 5                  And why do I go through these

 6          slides, for example, Venture Supply

 7          and the ones with edge tape?  Because

 8          you'll find throughout our

 9          presentation, whether it be the font

10          or the labeling or the phrasing, there

11          are other what we called buckets of

12          drywall.  There's eight other -- eight

13          total categories of drywall where

14          you're going to see similar font and

15          similar wording.

16                  So what I'm getting at is

17          they'll admit to this, they'll admit

18          to this phrasing, they'll admit to the

19          font in this section, but when you see

20          another piece of drywall with the same

21          font but not the same edge tape,

22          they'll say, oh, must be somebody

23          else's.  Well, it's the same font.  It

24          came from the same printer, it came

25          from the same factory.  So that's the

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 69 of 343
Case 3:11-cv-22408-MGC Document 2 Entered on FLSD Docket 04/29/2019 Page 39 of 281
March 11, 2019

```
 1              game that they're going to be playing.
 2                   We'll talk about the markings
 3              for a moment.  We found out at the
 4              depositions in January that the
 5              drywall labeling machines that they
 6              have, my colleague, Mr. Serpe is going
 7              to address this in much more detail.
 8              They had four different machines for
 9              labeling drywall.
10                   They have no records of what
11              font was used, whether it came out
12              with little dots or if it came out
13              with straight lines.  They have none
14              of that because -- and the testimony,
15              at least, was any notes of that were
16              thrown away.
17                   There were four different
18              machines.  They don't know what font
19              was there.  They don't have any
20              records of what was actually written
21              on the back from those machine
22              operators.  There's no protocol for
23              what the machine operators were
24              supposed to do.  It's one big guess at
25              this point, but they know they had
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 70 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 40 of
281
March 11, 2019

1          four different machines.

2               So what they're doing, again,

3          these unknowns, they want to push back

4          on us from a burden of proof

5          standpoint when they had the

6          information at one time, they had the

7          information at the time of production,

8          but they didn't keep it.

9               So they want to take their lack

10         of recordkeeping and foist that burden

11         upon the plaintiff to be able to prove

12         it.  And that's why I'm going through

13         those categories.  It will become more

14         relevant later.

15              Same thing here, the markings.

16         There's going to be a lot of

17         discussion about a capital Y in the

18         middle of "DrYwall" and whether it's

19         their drywall or not and how it looks

20         like others.  These are their denials.

21              So they'll admit some that say

22         "DrYwall" with a capital Y, others, if

23         there's no capital Y they're going to

24         deny that.  But what we all know is

25         they say -- have the dimensions.

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 71 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 41 of 281
March 11, 2019

```
 1              So in terms of how we're
 2         splitting this up, Mr. Serpe is going
 3         to finish up when I sit down, and then
 4         I think they will open, and then we'll
 5         get into the specific categories of
 6         documents.
 7              I also -- one point I'm
 8         missing, I skipped over that.  So
 9         there was a Manufacturer Profile Form
10         that was produced in this litigation.
11         Just like in any mass tort, you'll
12         have court-ordered discovery.  There
13         was a profile form that was created
14         that they had to fill out.  There's a
15         Distributor Profile Form as well.  So
16         all the defendants had to fill in
17         these profile forms.
18              On the Manufacturer Profile
19         Form, they did a listing of the
20         drywall that was created and the
21         markings that were on it.  But what
22         you find in the Manufacturer Profile
23         Form is they will admit to marking
24         drywall with 4feetX12feetX1/2inch, but
25         what they didn't detail on the
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 72 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 42 of 281
March 11, 2019

     1          Manufacturer Profile Form was whether
     2          it was in uppercase and lowercase
     3          letters or whether it was in all
     4          capital letters.
     5               So Mr. Che, who was the
     6          corporate representative testifying
     7          this past January, had to admit that,
     8          well, Mr. Peng's spreadsheet that he
     9          made that was really part of the
    10          Manufacturer Profile Form, it doesn't
    11          go into great detail about what the
    12          markings are.
    13               We know it says Drywall
    14          4feetX12feetX1/2, but they can't tell
    15          us one way or the other whether it's
    16          all capital letters or a mix of both.
    17          Again, and you'll see what his
    18          testimony was:  Well, maybe Mr. Peng
    19          wasn't that careful in creating it.
    20               Well, what has that done to us
    21          ten years later?  It's left us as the
    22          plaintiffs trying to figure out what
    23          is what with this drywall when that is
    24          their own records.  They admit to this
    25          phrasing.  They just won't admit to

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 73 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 43 of 281
March 11, 2019

1    the font, they won't admit to the

2    capital letters, they won't admit to

3    singulars or plurals.  That's what

4    you're going to be seeing with the

5    product ID binders.

6         This is a direct quote from

7    Judge Fallon:  The Court is

8    disheartened that delay tactics have

9    permeated every aspect of the

10   defendant's litigation strategy; from

11   their initial failure to appear to

12   their now perpetual motion to

13   relitigate settled matters.

14        We see that same delay tactic

15   from jurisdiction to document

16   discovery to document production and

17   to late-produced suddenly found

18   information on the eves of

19   depositions.

20        So what do we know?

21   9.4 million square feet of drywall

22   directly to Florida, part of the

23   86 million.

24        At this point, Taishan only

25   admits the manufacture of 1.4 million

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 74 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 44 of
281
March 11, 2019

```
1        square feet of drywall in Florida

2        plaintiffs' homes.  How does that come

3        about?

4              So a few weeks ago the parties

5        exchanged claimant-specific objections

6        or denials on homes, and whether or

7        not Taishan believed that the drywall

8        in a particular home based on the

9        photos was theirs or not.

10             So of the 1,700 claims that we

11       went through on the individual sheets,

12       they only admitted to about

13       1.4 million square sheet of drywall,

14       when their own records show they

15       shipped 9.4 million square feet of

16       drywall to Florida.

17             So overall, they know they've

18       got almost 9? million square feet of

19       drywall in Florida, yet when we look

20       at the individual contests, they'll

21       only admit to about a million and a

22       half square feet, which amounts to

23       about 15% of their total shipments

24       here.

25             So there's obviously a lot more
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 75 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 45 of
281
March 11, 2019

```
1        drywall that made it to Florida from
2        Taishan that is either not being --
3        that is not being admitted to by them.
4             Those denials are inconsistent
5        with the product ID admissions from
6        Taishan and to the evidence that
7        plaintiffs have.
8             So we had to go back -- and
9        this was in 2012 this was filed.  This
10       was during the jurisdictional
11       discovery -- and try to figure out how
12       much drywall they actually shipped
13       here.
14             And the people in this room
15       along here to the left side of you, we
16       took everything that we had from
17       different distributors in the U.S.
18       because we weren't getting that
19       information from Taishan, and we
20       compiled this spreadsheet based off of
21       invoices and shipping documents, and
22       what we came up with was 87 million
23       total square feet of drywall and
24       9.3 million square feet, so very close
25       to what the numbers actually ended up
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 76 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 46 of
281
March 11, 2019

1           being.
2                   The point of the matter is,
3           though, we had to figure that out for
4           ourselves when Taishan had that
5           information the whole time.  And that
6           was the information that I showed you
7           very early on in the presentation.
8           Back in 2010, before they came into
9           the lawsuit, they had already figured
10          out how much drywall they manufactured
11          and how it was labeled or wasn't
12          labeled.
13                  This is an overall view of the
14          1,700 cases, where they're located in
15          Florida.  There's 1,707 total claims
16          representing 1,581 properties.
17                  The reason there's less
18          properties than claims are
19          condominiums.  So if you've got a
20          condominium with 30 units or 40 units
21          of drywall, we counted it as one
22          property.  But this is what it looks
23          like geographically.
24                  And not surprisingly, it
25          follows along the major building

Case 2:09-md-02047-EEF-MBN  Document 22392-9  Filed 12/06/19  Page 77 of 343
Case 1:11-cv-22408-MGC  Document 29 Entered on FLSD Docket 04/29/2019  Page 47 of
281
March 11, 2019

1          points when the building boom was

2          going on in '05 to '08.

3                   So as broad as this case is,

4          your task is product ID, which we're

5          here about today, ownership

6          verification, whether the plaintiff

7          owned or didn't own the home, and what

8          the square footage is.

9                   Frankly, I think that the

10         square footage issues will probably be

11         pretty easy to solve between the

12         parties.  I think for the most part

13         the ownership verification will

14         probably be along the same lines.

15                  The product ID is really where

16         the rubber meets the road.  These are

17         the calls that you have to make and

18         that are so important to these

19         plaintiffs.

20                  This is the general, what we

21         call buckets.  Again, we're going to

22         probably use the term "buckets"

23         throughout the day, the different

24         categories of drywall.  There are

25         eight of them at issue today; C&K has

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 78 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/23/2019 Page 48 of 281
March 11, 2019

```
 1        50; IMT, 66; ProWall, 96; Taian
 2        Taishan or Taihe Tape, 107; with the
 3        markings MADE IN CHINA MEETS OR
 4        EXCEEDS, 266; the various drywall
 5        dimension boards, 960; Venture Supply
 6        has 5 in Florida; and then the
 7        unmarked board with the white edge
 8        tape, 80 Florida properties.
 9              So, Your Honor, you can see
10        that the bulk of the claims are the
11        dimensional and the MADE IN CHINA.
12        Those really make up the bulk of the
13        claims, and then lesser down the line.
14        And these are the order we'll take
15        them in once we start doing the
16        product-specific categories.
17              We talked a little bit about
18        edge tape.  I just wanted to -- I
19        wanted to familiarize Your Honor with
20        that term.  I'm going to ask you to
21        put a pin in edge tape, I'm going to
22        get to it in a minute, because I've
23        got some slides that better address
24        what edge tape is.  I kind of already
25        did.  I told you it's the bottom
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 79 of 343
Case 1:11-cv-22408-MGC Document 2 Entered on FLSD Docket 04/29/2019 Page 49 of
281
March 11, 2019

1          protective tape that typically gets

2          peeled off during installation.

3                  I've talked to you about these

4          magic boards that showed up in their

5          factory in December of 2018 when

6          opposing counsel went out to

7          prepare -- to China to prepare their

8          clients for deposition and they were

9          advised that there was three pallets

10         of drywall, one in an office area, I

11         believe, and one in a factory.  I may

12         be wrong on exactly where they are,

13         but I know they were in two different

14         spots in China with three different

15         sets of markings.  We call them

16         residual boards.

17                 The point is this:  We're ten

18         years down the line after the

19         lawsuit's been filed in 2009.  It's

20         December, it's the eve of the

21         depositions, and now all of a sudden

22         Taishan is finding drywall in their

23         own factory.

24                 And this isn't one board; this

25         is 400-something boards.  And you've

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 80 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 50 of
281
March 11, 2019

```
 1            seen drywall before, it's
 2            4feetX12feetX1/2inch.  It's not
 3            something that you move around easily
 4            or it gets lost.  They come in huge
 5            pallets, and they would, you know,
 6            take up the corner of this room
 7            without a problem when they're stacked
 8            up 40 or 50 high.  It's not something
 9            that you lose.  It's not like losing
10            your cell phone.
11                This is 400 and something
12            sheets of drywall that could have been
13            found, that could have been made
14            available to us that weren't.  So it
15            begs the question:  What else is
16            there?  What else is out there at this
17            point, ten years later, that we don't
18            know about?
19                And our situation is this:  We
20            are now at this point ten years after
21            litigation.  The truth of the matter
22            is we could discover this case for
23            another five years.  Our folks have
24            been out of these homes since '5, '6,
25            '7, '8.  The time is now.  We have to
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 81 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 51 of 281
March 11, 2019

1       do it.  We are forced to do it,

2       because this litigation has to come to

3       an end for these plaintiffs.  They

4       need an answer one way or the other.

5              But for us to be forced, for

6       the plaintiffs to be forced into the

7       situation where we're getting stuff on

8       the eve of depositions ten years

9       later, that's where I ask you as the

10      finder of fact, as the trier of fact,

11      to shift the burden.

12             We've made a prima facie case.

13      They need to put up their defenses,

14      just based on their conduct alone.

15      That's the residual boards.

16             The Manufacturer Profile Form I

17      alluded to a little bit earlier.  That

18      was a court-ordered form.  We're

19      calling product ID, we're referring to

20      as PID.  The Taishan product ID

21      catalog was filed in the MDL at 155-2.

22      It's also in your materials.

23             And you'll see Taishan Gypsum

24      referred to as TG sometimes.  Taian

25      Taishan Plasterboard as TTP.  I refer

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 82 of 343
Case 3:11-cv-22408-MGC Document 2 Entered on FLSD Docket 04/29/2019 Page 52 of
281
March 11, 2019

 1        to both the companies overall as

 2        Taishan.  Just makes it a lot easier.

 3              Here's the scoreboard of what

 4        you're having to deal with.

 5              Taishan has denied they

 6        produced C&K Gypsum, IMT is denied,

 7        ProWall is denied.  Taian Taishan is

 8        admitted to, MADE IN CHINA MEETS OR

 9        EXCEEDS, whether it's singular or

10        plural, part of them are admitted to,

11        part are denied.

12              The dimensions, same thing,

13        admitted -- partially admitted,

14        partially denied.  Venture Supply is

15        admitted.  The unmarked boards with

16        the white edge tape are denied.

17              The point of this slide is here

18        you see the edge tape with the

19        color -- or the markings, and there --

20        so we know this is their board.  And

21        here you see the font and the typing,

22        the MADE IN CHINA.

23              What we found throughout our

24        analysis is that you will see this

25        same font and the same typing on other

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 83 of 343
Case 2:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 53 of 281
March 11, 2019

1       buckets of drywall that they won't

2       admit to, but unless it has their

3       tape, they won't admit to it.

4            So basically what they're

5       saying is if it's just this alone, I'm

6       not going to admit to it.  It's got to

7       have the tape for me to be able to

8       admit to it.  Well, it can't be.  You

9       produced it with this label, with this

10      font from whatever machines that you

11      no longer have and don't have the

12      labels to, and now you want to take

13      the position that that's not your

14      board when we know it's your board,

15      but you only admit to it when the tape

16      is on there.

17            It's that type of hiding, it's

18      that type of delay tactics, and

19      frankly, that lack of candor about

20      their own board that lead us to being

21      here today.

22            These are more examples of what

23      they've admitted to with their edge

24      tape, what it looks like.

25            And I'd ask you to put a pin on

```
1        edge tape in terms of what it is in

2        describing it.  I just pulled this

3        piece of the testimony because I told

4        you there was record evidence that the

5        edge tape gets pulled off during

6        construction.

7                Taishan's corporate

8        representative understands that.  It's

9        the normal practice to remove the edge

10       sealing tape before the drywall is

11       installed, and in reality, this is

12       what it looks like on a construction

13       site.

14               So workers get the -- the

15       drywall installers go to put it in,

16       they rip off the edge tape.  So a lot

17       of times you just simply won't have

18       the edge tape when we're trying to

19       identify what's in a home or what's

20       not.

21               Before I turn the program over

22       to my colleague, Mr. Serpe, I think

23       there's one passage or one quote from

24       Judge Fallon that probably sums up

25       everything that I'm trying to talk to
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 85 of 343
Case 2:11-cv-22408-MGC   Document 29 Entered on FLSD Docket 04/29/2019   Page 55 of 281
March 11, 2019

 1          you about today.  It at page 10 of our
 2          brief.
 3                   Judge Fallon, this was last
 4          August:  The whole approach is just
 5          delay, delay because people die, delay
 6          because people lose their homes, delay
 7          because they're frustrated and giving
 8          up.
 9                   And as a litigation strategy,
10          and it's kind of one of the elephants
11          in the room, maybe not the elephant in
12          this room, but in the litigation
13          overall.
14                   Part of the litigation strategy
15          is to make people walk away, have
16          people sell their homes, have people
17          give up on their homes, because when
18          people were faced with this problem,
19          they had the choice of keeping their
20          families in a toxic home that affected
21          their health, or moving out.
22                   Moving out -- can't pay two
23          mortgages.  Biggest asset.  I've got
24          to get rid of my home.
25                   Well, depending on how you see

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 86 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 56 of
281
March 11, 2019

1     damages in the state of Florida and

2     damage law, you've got to mitigate,

3     right?  We all know you've got to

4     mitigate.  That benefits their client.

5     The longer they drag this out, the

6     less they've got to deal with it.

7          That's not right.  We know

8     that's not right, and we know it's not

9     right because in 2010 when we see

10    those documents they produced and they

11    created, that was their tactic.  They

12    said they would delay it.  They're not

13    going to respond to the lawsuits.

14         So we're asking you to shift

15    the burden of proof.  We know you take

16    this task extremely seriously for

17    these plaintiffs that are before you.

18         But I think as you hear our

19    presentations, I think it's very

20    important for you to consider the

21    equities in the situation.  As the

22    trier of fact, you have the ability to

23    determine credibility, to make

24    inferences, direct evidence,

25    circumstantial evidence, and in many

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 87 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/23/2019 Page 57 of 281
March 11, 2019

| | |
|---|---|
| 1 | cases the circumstantial evidence may |
| 2 | be much stronger than the direct |
| 3 | evidence. |
| 4 | So I ask you to keep those |
| 5 | concepts and thoughts in mind as I |
| 6 | turn the clicker over to Mr. Serpe. |
| 7 | SPECIAL MASTER LEE:  Before you |
| 8 | do, and if you're going to get to it, |
| 9 | it may be a trivial matter, but what |
| 10 | were the markings on the residual |
| 11 | boards that were discovered? |
| 12 | MR. MONTOYA:  We have photos of |
| 13 | those. |
| 14 | MR. SERPE:  I'm going to cover |
| 15 | that. |
| 16 | SPECIAL MASTER LEE:  Okay. |
| 17 | MR. MONTOYA:  Thank you. |
| 18 | Special Master, let me ask two favors. |
| 19 | Would it be all right if I sat |
| 20 | here during the presentation? |
| 21 | SPECIAL MASTER LEE:  Sure. |
| 22 | MR. SERPE:  And second, I beg |
| 23 | your indulgence.  I'm going to jump |
| 24 | around a little bit with the order of |
| 25 | the slides.  Can I get you to go back |

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 88 of 343
Case 1:11-cv-22408-MGC Document 29 entered on FLSD Docket 04/29/2019 Page 58 of 281
March 11, 2019

```
 1      to 25 just for a minute.

 2             Patrick emphasized the point,

 3      which is critical to us, that with the

 4      documentation of exports to Florida

 5      where 9.4 million square feet of

 6      Taishan drywall clearly came into

 7      Florida, you're talking about a degree

 8      of record where you've got the actual

 9      purchaser of the supply house and,

10      boom, the board is landing there,

11      9.4 million square feet, representing

12      now, at this point, what Taishan had

13      admitted is only 15% of that.

14             The point that I wanted to

15      emphasize, if you go to the next

16      slide, 26, and the callout, look above

17      at the deliveries that Taishan made to

18      unknown, state unknown, at 56,866,080

19      square feet.

20             So here we don't have the

21      actual supply house that it's coming

22      into, but it came into the United

23      States.  These are export records.

24      Clearly 87 million square feet from

25      Taishan came in.
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 89 of 343
Case 1:11-cv-22408-MGC Document 254 Entered on FLSD Docket 04/29/2019 Page 59 of 281
March 11, 2019

```
1              I just wanted to make the point

2         that, when you look around the

3         country, what states got hammered,

4         hammered with Chinese drywall from

5         Taishan.  Florida is by far and away

6         triple any other state.  And there's

7         only a handful of states that have had

8         the impact.

9              So the point becomes, when

10        you're considering the fact that

11        Taishan has only admitted 15%, 15% of

12        the boards that went into Florida,

13        understand that that is augmented by

14        the fact that 56 million additional

15        square foot got spread around the

16        United States, we would argue, the

17        majority to Florida.

18             Now, do we have direct proof on

19        which supply house?  No.  But it went

20        somewhere.  Where did these homes end

21        up?  Where did the drywall end up?

22        Florida, triple any other state.

23             And the point becomes it's not

24        that they're admitting 15%.  That's

25        15% they're admitting of sales that we
```

Case 2:09-md-02047-EEF-MBN  Document 22392-9  Filed 12/06/19  Page 90 of 343
Case 1:11-cv-22408-MGC  Document 29  Entered on FLSD Docket 04/23/2019  Page 60 of 281
March 11, 2019

1      know the supply house.

2          When it comes to their overall

3      drywall that came into the United

4      States, we're talking about like 1%

5      that they've admitted for the state of

6      Florida.

7          So the question becomes, well,

8      where did it all go?  Where did it all

9      go?

10         Another question is who else

11     was out there?  We addressed this in

12     the briefing.  And there was another

13     company, Knauf, who was a German-based

14     company.  They also imported drywall

15     with the same defect, the sulfur that

16     caused off-gassing.

17         Within a year, they admitted

18     their responsibility, began a program

19     fixing houses, and ultimately fixed

20     every house that their drywall was in.

21     Every one of their boards was marked

22     with the name Knauf on it, as is the

23     custom for U.S. drywall makers, USG,

24     National Gypsum, boom, right on the

25     board.  People -- responsible

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 91 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 61 of 281
March 11, 2019

```
1              manufacturers mark their board.

2                   But Knauf came in and repaired

3              everything.  None of these cases we're

4              talking about today have Knauf because

5              we know Knauf never made a board

6              blank, never made a board MEETS OR

7              EXCEEDS without a manufacturer name.

8                   So who is this third boogieman?

9              Who is capable of sending 90 million

10             square feet of Chinese drywall into

11             the United States other than Taishan?

12                  That was the specific topic

13             identified on the 30(b)(6) notice to

14             Taishan in the deposition we took in

15             January.  Where are the documents?

16             Who are the witnesses?  Who's going to

17             say anybody made any of these buckets.

18                  Taishan hasn't produced a

19             single document or a single witness to

20             indicate that there was a third player

21             out there.

22                  So not only are they admitting

23             a tiny percentage of what they sent

24             into the United States, they've got no

25             evidence that somebody else did.
```

March 11, 2019

1           So perhaps my learned opposing

2       counsel would say:  Well, that's not

3       our burden of proof to tell you who

4       did it.  They accused us.

5           In the documentation before the

6       court in the record, we have Taishan

7       as a dominant player in the market.

8       We have quoted in the product ID brief

9       the testimony where they've got their

10      own internal investigation department

11      looking at other manufacturers; are

12      they counterfeiting us, let's shut

13      that down.  They study the market.

14      They know it.

15          They bragged about how they had

16      brought claims against the other small

17      manufacturers and had shut down, and

18      they quoted percentages and dollars

19      that they had shut down other

20      manufacturers on counterfeiting.

21          So with a sophisticated, huge

22      market player, with its own division

23      studying other Chinese drywall

24      manufacturers, where is the first

25      document that some company other than

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 93 of 343
Case 3:11-cv-22408-MGC-EBD Document 29 entered on FLSD Docket 04/29/2019 Page 63 of 281
March 11, 2019

1    Taishan sent drywall into the state of

2    Florida?  Not one that's been

3    produced.

4         Let me go back to where Patrick

5    dropped off at slide 36.  So now we

6    have the question of what markings did

7    they make on the boards?  Separate

8    topic that they made some boards that

9    were unmarked, and we're going to come

10   to that separately.  But let's start

11   with those boards for which they did

12   put markings.

13        Well, they didn't put their

14   name on anything, as opposed to Knauf

15   and what we would argue responsible

16   U.S. manufacturers did.

17        So instead, they had various

18   markings.  And we're going to spend

19   most of the day today and tomorrow

20   looking at those markings.

21        But let's draw some

22   conclusions.  How did the markings get

23   on the boards?  As these boards are

24   moving down the factory line, there

25   are printers that put the markings on

Case 2:09-md-02047-EEF-MBN  Document 22392-9  Filed 12/06/19  Page 94 of 343
Case 1:11-cv-22408-MGC  Document 25 Entered on FLSD Docket 04/23/2019  Page 64 of
281
March 11, 2019

1          the board, one board after another as

2          they go down the line.  They're moving

3          hundreds of thousands of these boards

4          through.

5               So you can imagine that a

6          printer that's dealing with that kind

7          of volume is taking a lot of ink.  In

8          fact, in the deposition, Mr. Che told

9          us that they've got -- needed to buy

10         so much ink that the manufacturers of

11         the machines would give them the

12         machines because they were looking for

13         the ink sales.

14              So these things were in a rough

15         environment.  There were lots of them,

16         at least four by manufacturing that

17         they told us about.  That often broke

18         down, they often had to be replaced.

19              So we've got multiple

20         production lines, multiple printers,

21         the printers are breaking, new

22         printers are come in.

23              Okay.  So what does that tell

24         you about what the markings are going

25         to look like?  If you look at the next

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 95 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2015 Page 65 of
281
Marrero, Jr., 2019

1    slide, no standard protocol for

2    delivering marking instructions to the

3    spray marking operators.

4              Pause for a second.  So again,

5    on the eve of deposition we found, in

6    a reference in another document, that

7    there was a markings manual and a

8    highly detailed set of instructions on

9    how markings are supposed to be done

10   on the boards.

11             We wrote to opposing counsel.

12   Where is the manual?  We're ten years

13   in, we're arguing about markings.

14   Where is the manual on how to do the

15   markings on the board?

16             The day before the deposition,

17   two days before the deposition, we're

18   in Atlanta for the deposition.  Here

19   it is, it's in Chinese.

20             We get it, we use our resources

21   for interpreting, and it says this is

22   the current version but there were

23   three previous versions going right

24   back to the time when this board was

25   being manufactured.

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 96 of 343
Case 1:11-cv-22408-MGC Document 29 entered on FLSD Docket 04/29/2019 Page 66 of 281
March 11, 2019

 1              Where are the earlier versions?

 2      Do you have an English translation?

 3      Answer, well, that manual only applies

 4      to drywall we make in China.  We don't

 5      really have a manual for the board

 6      that we exported that was American

 7      sized.  That was something else, and

 8      there's no documentation whatsoever.

 9              So you've got a company, a big

10      industrial player, factories going up

11      everywhere, corporate chains of

12      authority, annual reports being filed,

13      and their claim is, yeah, we had this

14      process where we sold tens of millions

15      of, for them, square meters of drywall

16      to the United States, yet we had no

17      procedures, no written rules, no

18      protocol for how to mark the boards,

19      despite the fact that you can sure

20      believe that we got it for every other

21      board that we make.

22              So then how would the machine

23      operator know how to mark the board?

24      We call them on the phone, say, put

25      this in there.  Or maybe we would walk

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 97 of 343
Case 2:11-cv-22408-MGC   Document 2 Entered on FLSD Docket 04/23/2019   Page 67 of
281
Margaret Herr, 2019

1    over to him and say, you know, say

2    Venture Supply, Inc., Made in Taihe,

3    or say 4feetX12feetX1/2inch.  We would

4    tell them face-to-face or on the

5    phone.  There's no e-mails, there's no

6    documents of that.  We don't have any

7    records of that.

8         And Mr. Che acknowledges,

9    well -- as a principle, so how does he

10   get that in to the printer?  Is there

11   a keyboard?  Is there a separate

12   computer that has memory?  No, no, no.

13   There's a keyboard, but it goes right

14   into the printer, and the printer

15   prints, and then when you're ready to

16   do a label change, it doesn't remember

17   what the previous labels were.  You

18   overwrite when you put in the key for

19   the next label.

20        I said, so who selects the

21   font, capitals versus small, periods,

22   the spacing, who does that?

23        Well, the machine operator does

24   that, he does all of that.  But some

25   of them are lazy -- his word -- and

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 98 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 68 of 281
March 11, 2019

1       what they do is they don't really

2       change the settings from the last time

3       we did a label.

4              So there's no documentation,

5       there's no consistency, it changes all

6       the time.  You've got multiple

7       machines that come with different

8       fonts.  And who makes the decision?

9       Well, the machine operator -- the lazy

10      machine operators will key it in, and

11      that's how the printer knows what

12      labels to put out onto the boards.

13             So I'm going to do one more

14      flipping around.  We're going to go

15      from 37 and I want to go to the

16      residual board on page 40.  If you'll

17      go to slide 40 for me.  I'll come back

18      and pick up these other three slides.

19             This becomes important because

20      in December of -- just this last year,

21      Taishan goes out and finally looks for

22      examples of what they call

23      American-sized drywall.  That's their

24      new euphemism for the stuff that they

25      knew that they sent to the United

Case 2:09-md-02047-EEF-MBN   Document 22392-9   Filed 12/06/19   Page 99 of 343
Case 1:11-cv-22408-MGC   Document 29 Entered on FLSD Docket 04/29/2019   Page 69 of 281
March 11, 2019

1   States.  And they -- they say, we

2   searched for it to see if it was

3   possible that the residual boards, in

4   every corner of the warehouse, and in

5   the end I discovered these residual

6   boards.  So I called lawyers and the

7   lawyers came and took pictures.

8          Your Honor asked me a minute

9   ago, what were those residual boards?

10  There were only three types.  In slide

11  41, which is the next slide, you'll

12  see that they did MADE IN CHINA MEET,

13  singular, OR EXCEEDS ASTM.

14         Not pictured here, they had a

15  stack of boards that had what you see

16  above, you know, the MEET OR EXCEEDS,

17  but also had Crescent City on it.

18  That is for the Louisiana case.  It's

19  not an issue in the state of Florida.

20         And then in a final photograph,

21  which we can supplement to you,

22  TG-PID-22.  It's very difficult to

23  read.  What we call it internally, it

24  was an illegible marking, and we're

25  not making really heads or tails out

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 100 of 343
Case 1:11-cv-22408-MGC Document 290 Entered on FLSD Docket 04/29/2019 Page 70 of 281
March 11, 2019

```
 1           of it.
 2                 So as the special master has
 3           now clearly discerned, we don't have
 4           one exemplar per bucket.  We don't
 5           have what they contend to be like a
 6           mug shot book.  Let's get every label
 7           you ever made, lay them out.  Then
 8           when we get a photograph from one of
 9           the houses we can compare it to the
10           mug shot book and see which labels,
11           what matched.  And if there's a match,
12           a photo identification, you have the
13           product ID.
14                 So what we have here is now
15           we've got three mug shots.  That's all
16           we've got.  One of them we can't read.
17           Two of them, now, Taishan wants to
18           take the position that we're lucky
19           that they found them, because if they
20           can match -- now they're going to be
21           the arbiters.  So if they match the
22           font and the wording, the lettering to
23           the sample, they'll admit it.  And if
24           you can't, well, that's not their
25           drywall.
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 101 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 71 of 281
March 11, 2019

```
1              Why don't we have a full mug
2         shot book after all this time?  I
3         believe Mr. Montoya made the point
4         repeatedly, which is, the strategy has
5         been don't give anything hurtful to
6         us; only give things that are
7         beneficial to us.
8              Why these boards?  Well, they
9         want to use them now as a sword.
10        They're going to say that unless it
11        meets these fonts exactly, we're going
12        to say, no, that's not our font.  We
13        didn't print that way.
14             So the last time I'll do it,
15        but if you'll go up to slide 38.  So
16        Venture Supply, there were only five
17        in Florida, they've all been admitted.
18             Why do we put the slide in
19        here?  Because it elegantly
20        demonstrates just how many different
21        fonts, type styles, layouts are here.
22        I think I'll jump up out of the chair
23        and actually point at a couple of
24        things here.
25             Number one, different printer
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 102 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 72 of
281
March 11, 2019

1        types.  Look at the smooth printing.

2        Different technical people use

3        different words for it, but my IT

4        people tell me this is technically

5        called an impact printer versus a

6        nonimpact printer.  I think of laser

7        versus an old dot matrix.

8                So Venture here is clearly the

9        more advanced type of printer that's

10       making the nice smooth label.  And if

11       you'll look for the other red one

12       here, you've got these rows of

13       printing where it's spitting dots out

14       to create the letters that way.

15               So clearly you've got two

16       different types of printers here that

17       Taishan is using to print the label

18       VENTURE SUPPLY INC.

19               Mr. Che, in his deposition,

20       said:  We never did this.  But clearly

21       they did.  Clearly they did.

22               Why is that important?  Because

23       if we turn over photographic proof

24       with this type of printing, they're

25       denying it, saying we never did it.

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 103 of 343
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/29/2019 Page 73 of 281
March 11, 2019

```
1    Until they're caught.  Oh, yeah, I
2    guess we did.  And then they're going
3    to back off and come up with yet
4    another strategy on how they're going
5    to deny it.
6         What are the other differences?
7    Print differences.  Look at the E here
8    and here and here.  That's at least
9    three different types of Es.
10        Font.  Look at the U's.  This
11   one's got kind of an angle in it.
12   This one comes down and makes a harsh
13   kind of 90-degree turn, and this one
14   is a nice loop.  Different fonts.
15        And then this goes to the lazy
16   machine operator.  I hate the term,
17   but I'm using what Mr. Che told me,
18   not my characterization.  Are you
19   putting a space after the period, as,
20   you know, was drilled into us in
21   grammar school?  Or are you going to
22   jam it all together, not put the
23   space?
24        So now we're down on font
25   levels to this tremendous variation
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 104 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 74 of
281
March 11, 2019

1      depending on the machine operator on

2      any given day, on which machine that

3      it's being done on, what's the

4      standard fonts.

5             But the point, Special Master,

6      becomes that any attempt by Taishan to

7      disavow a board because the font

8      doesn't match what's in that residual

9      board is hopelessly insupportable

10     because they can't account for the

11     massive amount of variation that they

12     had within their own printers and with

13     their own print operators, without a

14     manual.

15            Gosh, it would be nice to have

16     the paper, right?  What did they

17     actually put on the board.

18            In this next slide, again,

19     late-discovered documents, just got

20     them.  And we're looking at

21     specifications that were internal to

22     the factory, and look at this.  It

23     says board with dimensions and so that

24     3660x1220x12.7-millimeter, that's the

25     metric equivalent of the U.S. drywall.

March 11, 2019

```
 1          I guess their machines ran off of

 2          millimeters.

 3                  So 12-foot by 4-foot by -- I'm

 4          sorry, 12-foot by 8-foot by half an

 5          inch thick, that's 3660x1220x12.7mm.

 6          So this is clearly going to the United

 7          States.  I'm just going to steal one

 8          of my colleague's thunder, because

 9          Patrick stole a couple of my things.

10                  But IMT, we're going to point

11          that -- that's one of the issues that

12          we have here.  So we know this is

13          going to have a specific marking.  But

14          look here at the spray markings that

15          are attached to the document.  Produce

16          them.  We want to see what your

17          instructions were for the spray

18          marking so we can have them.

19                  Answer:  The information of the

20          spray marking that is attached for the

21          use of the worker who inputs the

22          information, when they're done with

23          the information, the piece of paper is

24          thrown away.  This is our common

25          practice.
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 106 of 343
Case 1:11-cv-22408-MGC Document 291 Entered on FLSD Docket 04/29/2019 Page 76 of
281
March 11, 2019

```
 1              I come back to the slide
 2         Patrick showed you with the 12 columns
 3         of information down to, you know,
 4         where it was made, when it was made,
 5         the cost, et cetera.  They've got
 6         their internal records when they want
 7         them for their purposes.
 8              When we ask for records,
 9         everything either never existed or was
10         thrown away.
11              I'm going to go off on a
12         tangent for one second and say these
13         are the markings on the boards, but
14         the edge tape that goes along the side
15         where they said Taihe -- they admitted
16         that one because that was their
17         standard tape they used over and over
18         again, it's in product catalogs.  You
19         can't miss it.
20              But we asked them, where's the
21         rest of the documents for what you
22         printed on other edge tapes?  Like
23         they made a specialty tape for Venture
24         Supply.  Show us how you made the edge
25         tapes for U.S. customers.
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 107 of 343
Case 1:11-cv-22408-MGC Document 294 Entered on FLSD Docket 04/29/2019 Page 77 of 281
March 11, 2019

1              In the deposition of Mr. Che,
2         he told me that the separate factory
3         that made the tapes had no computers,
4         so they couldn't take an e-mail.
5         There were no records of what they
6         made.  And the way they would know
7         what to print was that somebody would
8         call them on the phone and tell them
9         to print tape, that they wouldn't
10        write it down anywhere, and there were
11        no permanent records.
12              So you've got a warehouse
13        producing millions of miles of edge
14        tape with no e-mails, no computers and
15        no filing cabinets.  And that was the
16        document production for the edge tape
17        examples.
18              So we got no spray marking
19        documents and we got no edge tape
20        documents.
21              In conclusion, the plaintiffs
22        would ask that as the day unfolds with
23        respect to these individual so-called
24        buckets and the issues thrown back and
25        forth about burden of proof and what

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 108 of 343
Case 1:11-cv-22408-MGC Document 295 Entered on FLSD Docket 04/29/2019 Page 78 of 281
March 11, 2019

1          has been shown versus not, that the
2          Court take into account not only
3          Mr. Montoya's description of the
4          practices as found by Judge Fallon of
5          delay and obfuscation by the
6          defendant, but also take into account
7          the incredible lengths that the
8          plaintiffs have gone to to try and
9          find this information from them, to
10         build the mug shot book to have every
11         picture so that we can compare
12         markings and do a fair assessment,
13         when we're told that we get two boards
14         that you can actually read the photo
15         of and that's it, despite ten years of
16         effort.
17                So that when we show that
18         enough drywall that says MEET OR
19         EXCEEDS was sent by Taishan into
20         Florida to make thousands of homes,
21         and that we have those markings, that
22         they haven't shown that anybody else
23         in China ever sent a board out that
24         said that, that when they argue that's
25         not enough, other people could have

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 109 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 79 of 281
March 11, 2019

1       done it, that the special master takes

2       into consideration, we asked at every

3       step for this information, and we're

4       getting implausible answers like, oh,

5       yeah, those documents that we had for

6       spray markings, we threw those away.

7       Never had a document for edge tape,

8       and we could only find two samples in

9       2018, nine years after Judge Fallon

10      issued an order saying everyone

11      preserve physical evidence in this

12      case.

13              And find that we have satisfied

14      our burden of moving forward with

15      proof that they made a drywall with

16      the markings that we claim, and that

17      the inference based on their conduct

18      should be that unless they can

19      disprove it, that's their drywall.

20              Thank you.

21              SPECIAL MASTER LEE:  I have one

22      question.  Did plaintiff ever obtain

23      the earlier marking manuals, either

24      for China-produced drywall or U.S.

25      directly?

March 11, 2019

1               MR. SERPE:  We had the manual

2         itself in Chinese produced to us from

3         2015.  Now, the earlier manuals --

4               MS. DUGGAN:  We were told

5         that -- Christy can correct me if I'm

6         wrong, that they overwrote them as

7         they revised them and there is no

8         longer an earlier version; is that

9         correct?

10              MS. EIKHOFF:  You had the

11        earlier manuals from -- that were

12        produced in 2012, and that was the

13        basis of your request for the

14        manuals -- you had, I guess, one of

15        them, right?  You had one of the

16        manuals.  That was the basis of your

17        request the Thursday before the

18        Tuesday deposition for the manuals

19        that were referenced in what you had.

20              SPECIAL MASTER LEE:  That's not

21        what he said.

22              MS. ROBERTSON:  Can I please

23        clarify?

24              I think this was unfortunately

25        some wires got crossed.  We had

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 111 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2013 Page 81 of 281
March 11, 2019

```
 1        pulled -- we had a document that was
 2        produced to us.  It referred to two
 3        manuals.  We asked for the two
 4        manuals --
 5              SPECIAL MASTER LEE:  What was
 6        the date of that document?
 7              MS. ROBERTSON:  That document
 8        was dated 2009, I believe.
 9              MS. EIKHOFF:  And it was
10        produced in 2012 by Taishan's prior
11        counsel.
12              MS. ROBERTSON:  Correct.  And
13        it referred to these two manuals.  We
14        asked for the two manuals that were
15        referred to in the document.
16              I think that potentially where
17        there's a little bit of -- where we're
18        not having a meeting of the minds is I
19        think that you were just representing
20        is that one of the attachments to that
21        2009 e-mail was one of the -- one of
22        the documents we sought.  And we
23        didn't read the document to be that
24        way.
25              MS. EIKHOFF:  Okay.
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 112 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2013 Page 82 of
281
March 11, 2019

```
1              MS. ROBERTSON:  We read the

2        document to refer to two manuals that

3        we only received the later versions

4        of.

5              MS. EIKHOFF:  Okay.

6              MS. DUGGAN:  But am I correct

7        that you've represented to us that the

8        earlier versions of these manuals have

9        been overwritten over time, so they

10       don't exist?

11             MS. EIKHOFF:  That's right.  We

12       have the current versions of the

13       manuals and the declaration --

14             MR. SERPE:  For domestic --

15             MS. EIKHOFF:  For domestic,

16       that's right.

17             MR. SERPE:  There was never a

18       separate manual for American-sized or

19       U.S. imports.

20             MS. EIKHOFF:  And I'm sorry for

21       talking over you.  Sorry.  And I

22       apologize to the court reporter too.

23             But you're right, there was

24       never a separate manual that would

25       govern foreign sales, foreign
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 113 of 343
Case 1:11-cv-22408-MGC Document 291 Entered on FLSD Docket 04/29/2013 Page 83 of 281
March 11, 2019

```
 1        markings.  So the manuals that were

 2        produced relate to Chinese domestic

 3        practices.

 4             MR. SERPE:  Subject to our

 5        suggestion to the special master that

 6        that's implausible.  That didn't

 7        happen.  And this is another example

 8        that everything they do is highly

 9        detailed, except when it benefits them

10        not to have a manual, not to have

11        documents, not to have attachments,

12        and then they disappear.

13             As they indicated, all the way

14        back to 2009, they were going to do,

15        only send beneficial documents.  What

16        does that mean?  Don't send the ones

17        that hurt us.

18             SPECIAL MASTER LEE:  Okay.  So

19        why don't we take a five-minute break,

20        and we'll turn it over to defendant.

21             MS. EIKHOFF:  Sounds great.

22             (Recess taken, 10:58?a.m. to

23        11:07?a.m.)

24             MS. EIKHOFF:  Ms. Lee, I've

25        already introduced myself.  I'm
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 114 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 84 of 281
March 11, 2019

1    Christy Eikhoff of Alston & Bird.

2    Alston & Bird has represented Taishan

3    since 2015 when Taishan came back into

4    the litigation after they had taken a

5    break from -- they broke from their

6    prior counsel in the case.

7         And Mr. Taylor, my partner

8    Mr. Taylor, Mr. Venderbush, we have

9    been working on this case for the last

10   four years plus.  And on the day that

11   we came into Judge Fallon's courtroom,

12   which was March 17th, 2015 was when we

13   first physically appeared in his

14   courtroom, and we stood up and said to

15   Judge Fallon that Taishan was coming

16   back into the litigation to find out

17   who did they owe and how much did they

18   owe them.

19        Taishan understands it's in

20   default.  Taishan does not contest

21   jurisdiction in Florida.  And that has

22   been our focus over the four-plus

23   years that we've been involved in this

24   case, and that is our focus here today

25   to find out who had Taishan drywall

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 115 of 343
Case 1:11-cv-22408-MGC Document 294 Entered on FLSD Docket 04/29/2015 Page 85 of 281
March 11, 2019

1          and how much should the damages be.

2          That's what we're here to do.

3                  Now, what the plaintiffs have

4          focused on today is exactly what we

5          predicted they would focus on, and we

6          said it in our brief; that they're

7          going to come in and hammer two themes

8          home.

9                  One theme that they will hammer

10         is that there were only ever two

11         Chinese drywall manufacturers that

12         sent goods into the U.S.  There was

13         Knauf, who we settled with, and then

14         there was Taishan, who should be

15         responsible for everything else that's

16         not Knauf.

17                 And that myth, as we said in

18         our brief and as we'll go through in

19         more detail today, is demonstrably

20         false.  There were other Chinese

21         drywall manufacturers that sent goods

22         into the marketplace.  We'll get into

23         that in just a few slides.

24                 But what they've spent the

25         lion's share of their time today doing

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 116 of 343
Case 1:11-cv-22408-MGC Document 294 Entered on FLSD Docket 04/29/2019 Page 86 of
281
March 11, 2019

```
 1            is to paint Taishan as a bad actor, to
 2            say Taishan's a bad guy, the company
 3            is full of bad guys, and they've been
 4            bad guys in this litigation; and
 5            therefore, they shouldn't get a fair
 6            shake.  We should just assume that
 7            they're responsible for everything,
 8            unless they can affirmatively disprove
 9            it.
10                 There's a lot of problems with
11            that approach, and we're going to go
12            through those too.  But one of the
13            problems is you cannot take at face
14            value their characterizations of
15            Taishan's conduct and Taishan's
16            motives in this litigation.  Some of
17            their renditions of what has happened
18            is misleading.
19                 In particular, a point that
20            Mr. Montoya made, he said that we lied
21            to the Fifth Circuit.  Not going to be
22            delicate about it, Taishan lied to the
23            Fifth Circuit.  That is what he told
24            you.  That is not true.  That did not
25            happen.
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 117 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 87 of 281
March 11, 2019

```
 1                As Mr. Montoya explained, there
 2          are two related defendants that are
 3          called Taishan.  There is Taishan
 4          Gypsum, TG, and then Taian Taishan
 5          Paperboard, TTP.  TTP is a subsidiary
 6          of TG, and for purposes of this
 7          litigation, we do call them both
 8          Taishan.  We tend to merge them
 9          because, for all practical purposes,
10          the liability is ultimately going to
11          be the same.  But they're two separate
12          companies.
13                And so these two separate
14          companies, TG and TTP, submitted in
15          the MDL two separate Manufacturer
16          Profile Forms, or MPFs.  One of the
17          Manufacturer Profile Forms was for
18          TTP, one for TG.
19                TTP's Manufacturer Profile Form
20          has a big exhibit to it, and it's a
21          chart, and you've seen it and you'll
22          see more of it; the chart that lists
23          each of the sales of the drywall in
24          American sizes and who ordered it,
25          what the sizes were, what the spray
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 118 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 88 of 281
March 11, 2019

1    markings were, what the edge tape was.

2           But TG only made two sales ever

3    to a U.S. company, and both of those

4    sales were to Venture Supply, a

5    category that we have admitted.

6           So here's Taishan Gypsum's

7    Manufacturer Profile Form from the

8    case.  It is not attached to what the

9    plaintiffs submitted, and frankly,

10   it's not attached to what we submitted

11   because Venture Supply is not at

12   issue.  That's not a disputed

13   category, so there really wouldn't be

14   any reason for them to show TG's

15   Manufacturer Profile Form with these

16   two sales.

17          But the quote that he showed

18   you from the Fifth Circuit was a quote

19   that said TG made two sales to a U.S.

20   company.  That is true.  It was to

21   Venture Supply.

22          So I use that as an example of

23   how careful you should be in accepting

24   some of the characterizations of our

25   client, mischaracterizations of our

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 119 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 89 of
281
March 11, 2019

1          client.
2              So they can be misleading, but
3          more importantly here, they're
4          irrelevant, because under the law, the
5          factfinder, the adjudicator, which is
6          the situation that you have been
7          commissioned to be, cannot be
8          prejudiced by thinking that someone's
9          a bad guy or a good guy.
10             Your job is to look at the
11         facts and the evidence and to make
12         decisions based on what the facts and
13         the evidence show, not the paint with
14         which a party has been colored as a
15         bad guy or a good guy.
16             And the reason that the
17         plaintiffs spend so much time
18         hammering these two themes, we
19         believe, is because it is -- they're
20         replacing those themes for evidence.
21             If they have an evidentiary gap
22         where they can't prove that Taishan
23         made the drywall that's at issue, then
24         they want to fill that gap with
25         presumptions that Taishan is a bad

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 120 of 343
Case 1:11-cv-22408-MGC Document 291 Entered on FLSD Docket 04/29/2019 Page 90 of 281
March 11, 2019

1        actor and a presumption that Taishan's

2        the only other manufacturer out there

3        who could have possibly made this, so

4        let's just assume it was Taishan.

5               Now, plaintiffs acknowledge

6        Florida law that they have the burden

7        of proof and that their burden of

8        proof is to show by the greater weight

9        of the evidence that these boards are

10       manufactured by Taishan.

11              This is from the plaintiffs'

12       brief, and it is a correct statement

13       of the law:  The determination before

14       the special master is governed by the

15       greater weight of the evidence

16       standard.

17              That is correct, and Mr. Serpe

18       at the beginning of our proceedings

19       today, said we bear the burden of

20       proof, and so that's why we think we

21       should have a rebuttal.  That's a fair

22       point.

23              But then from that clear and

24       correct statement of Florida law, they

25       take a bizarre pivot to say but you

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 121 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 91 of 281
March 11, 2019

| | |
|---|---|
| 1 | should change Florida law. Adjustment |
| 2 | should be made to the burden of proof. |
| 3 | And Mr. Montoya said explicitly, the |
| 4 | burden of proof should be flipped |
| 5 | here. |
| 6 | Special Master Lee, you don't |
| 7 | have the authority to flip the burden |
| 8 | of proof. You don't have that |
| 9 | authority as the special master, but |
| 10 | more importantly, Judge Cooke doesn't |
| 11 | have that authority. No district |
| 12 | court has that authority. And this |
| 13 | has been tried before in the product |
| 14 | ID setting. |
| 15 | The Eleventh Circuit in the |
| 16 | Blackston case, that was a case that |
| 17 | involved asbestos, another product |
| 18 | that caused a lot of harm to a lot of |
| 19 | people over a lot of years and a lot |
| 20 | of litigation, and aggravation on |
| 21 | behalf of all of the parties involved |
| 22 | in the courts. Asbestos has been a |
| 23 | litigation nightmare. |
| 24 | And so there was a plaintiff in |
| 25 | the Blackston case that said to the |

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 122 of 343
Case 1:11-cv-22408-MGC Document 295 Entered on FLSD Docket 04/29/2013 Page 92 of 281
March 11, 2019

1    court, similarly to what the

2    plaintiffs are saying here today:

3    This isn't fair that we should have to

4    prove that you made this asbestos.

5    It's too hard.  It's too difficult.

6    There aren't enough records, there's

7    not enough identifying features.

8         We think there should be a

9    rebuttable presumption that the

10   defendant made this asbestos and make

11   the defendant rebut it.  If they can't

12   rebut it, then it's theirs.

13        And the Eleventh Circuit said

14   you can't do that.  Even if you've

15   been litigating a lot of years, even

16   if the records aren't great, even if

17   it's hard.  The burden of proof is

18   still on the plaintiff.

19        Now, plaintiffs have cited to

20   no Florida law that would allow this

21   court or you to change the burden of

22   proof.  They cited to the law what the

23   burden of proof is.

24        Now, we all know that under

25   Rule 37 there are times when an

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 123 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2013 Page 93 of
281
March 11, 2019

```
 1          adverse inference can be imposed by a

 2          court, but Rule 37 adverse inferences

 3          are governed by a very concrete set of

 4          judicial principles and rules that are

 5          not invoked here.

 6              The plaintiffs haven't moved

 7          for a Rule 37 sanction.  As we have

 8          explained, no spoliation occurred

 9          here, and they have admitted that our

10          recordkeeping was in the normal

11          course.

12              When Mr. Serpe was selling you,

13          oh, they got these slips of paper and

14          then they input them in the machine

15          and then they just threw them away.

16          Yeah, because it was a piece of paper

17          in a factory, and they threw it away

18          in the normal course.  They didn't

19          know there was any U.S. litigation.

20          This was in China in 2006.  They

21          didn't know that there was going to be

22          litigation over it.

23              And we cited in our brief

24          Eleventh Circuit law and all law is

25          clear on this issue.  Unless and until
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 124 of 343
Case 1:11-cv-22408-MGC Document 291 Entered on FLSD Docket 04/29/2013 Page 94 of 281
March 11, 2019

        1      you know that there's a claim being
        2      brought, you don't have to save every
        3      piece of paper, and they didn't.  So
        4      no adverse inference can flow from
        5      that.
        6           And Mr. Montoya, as we
        7      expected, told stories about how bad
        8      things were in Hong Kong in 2012 and
        9      everybody was agitated, the judge was
       10      agitated.  That was years ago, and
       11      Judge Fallon has dealt with that.
       12      Those were in his court.  They were
       13      his issues to deal with and he has
       14      dealt with them.  The Peng issues that
       15      you heard about, Judge Fallon dealt
       16      with that.
       17           There have been times in this
       18      litigation, even since we've come in,
       19      where we've had to deal with some
       20      discovery issues and sometimes --
       21      sometimes the plaintiffs have won
       22      those issues, sometimes we've won.
       23      There's been some back-and-forth, as
       24      you would expect.
       25           But that's not before you

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 125 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2013 Page 95 of 281
March 11, 2019

       1      today, and that cannot change the
       2      burden of proof.  The fact that there
       3      have been discovery issues in the past
       4      that another judge dealt with, that
       5      doesn't change the burden of proof.
       6      That doesn't flip the burden as
       7      they're asking you to do.
       8            So they didn't refer to it
       9      today, but they talk about the Tariff
      10      Act of 1930.  Same thing.  It's not --
      11      that can't flip the burden.  And so
      12      there's no basis under Florida law
      13      that says that a violation of a 1930
      14      statute would shift the burden of
      15      proof.
      16            And I want to move past this
      17      because they didn't spend much time on
      18      it, so I don't want to spend more time
      19      on it than they do, but I will say
      20      this:  Even if the word "China" had
      21      been printed on some of the boards,
      22      that obviously doesn't resolve the
      23      product ID issues, because we have
      24      product ID disputes about boards that
      25      say "China" on them.  So it would not

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 126 of 343
Case 1:11-cv-22408-MGC Document 292 Entered on FLSD Docket 04/29/2013 Page 96 of 281
March 11, 2019

```
 1          shed any more light on whether Taishan
 2          made the boards or not.
 3              Now, let me turn away for a
 4          minute from their characterization of
 5          Taishan as a bad actor and talk about
 6          this myth, pervasive myth, that if
 7          it's not Knauf, then it must be
 8          Taishan.
 9              So we laid this out in our
10          brief, and I'll explain it again
11          today, that there have been two
12          Chinese manufacturing defendants that
13          were served and that appeared in this
14          litigation:  Knauf and then Taishan
15          and BNBM -- so three, but we're
16          talking about Taishan today, okay?
17              And what the plaintiffs have
18          done and the myth that's been created
19          and perpetuated over the course of
20          this litigation is, well, Knauf put
21          their name on their boards, and so
22          Knauf boards are Knauf's.  Knauf
23          settled those cases a few years ago,
24          and so now, everything else we have
25          that we think is Chinese drywall must
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 127 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2013 Page 97 of 281
March 11, 2019

1      have been made by Taishan.

2           But plaintiffs know that there

3      are other Chinese drywall

4      manufacturers besides Knauf and

5      Taishan and BNBM.

6           Mr. Serpe today referred to who

7      is this third bogeyman.  Who else

8      could possibly have made this drywall

9      if not Taishan?  They asked the

10     question in their brief:  If the

11     drywall is not Knauf's and, as Taishan

12     claims, it is not Taishan's, it begs

13     the question whose drywall is it, as

14     if this is an unanswerable question.

15          But they know the answer to

16     this question because they sued other

17     Chinese drywall manufacturers.  They

18     sued them, but they did not pursue

19     them.

20          And so you will see today as we

21     go through the specific categories

22     that there is another major Chinese

23     drywall manufacturer in China that's

24     called Shandong Chenxiang Building

25     Materials.  Today we're going to call

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 128 of 343
Case 1:11-cv-22408-MGC Document 293 entered on FLSD Docket 04/29/2019 Page 98 of 281
March 11, 2019

1    it Chenxiang or C&K.  There's Pingyi

2    Baier.  We're calling them Baier.

3    There's Tai'an Kangyija Building

4    Materials.  We'll call them Kang Yi

5    Jia.

6         These are just some of the

7    other manufacturers that we know made

8    drywall that came into the United

9    States and that we know the plaintiffs

10   sued because they're named on the

11   early complaints.

12        But instead of pursuing those

13   other manufacturers, they've had their

14   eyes on Taishan, and with that blinder

15   vision are now saying Taishan made

16   everything.  Unless it says Knauf, you

17   should assume that Taishan made it.

18   You should find that Taishan made it.

19        But it's not just the

20   plaintiffs that know about these other

21   manufacturers.  The government

22   agencies of the United States know

23   that there are other manufacturers.

24   So when there was -- when the problem

25   with Chinese drywall arose in the 2008

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 129 of 343
Case 1:11-cv-22408-MGC Document 29-1 Entered on FLSD Docket 04/29/2013 Page 99 of 281
March 11, 2019

          1              and '9 time period, and it became --

          2              as Mr. Montoya said, it was really the

          3              first time Chinese drywall had ever

          4              come into the United States because

          5              drywall supply had always been handled

          6              domestically until that point, until

          7              the circumstances created a shortage

          8              of domestic supply and forced builders

          9              and drywall suppliers to go outside of

         10              the U.S. for their drywall needs.

         11                   So when this problem arose, the

         12              Consumer Product Safety Commission did

         13              a study into the drywall -- Chinese

         14              drywall issue, and they identified

         15              other manufacturers, including

         16              Chenxiang and including Baier.

         17                   And the Housing and Urban

         18              Development Agency also did a study.

         19              Theirs came later than the CPSC study

         20              and it is our understanding from

         21              reading those reports that they relied

         22              on some of the data that had been

         23              collected by the CPSC, and they

         24              concluded that 6,229,166 boards of

         25              drywall from China came into the

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 130 of 343
Case 1:11-cv-22408-MGC-EEF Document 299 Entered on FLSD Docket 04/29/2015 Page 100 of 281
March 11, 2019

1    United States in the 2005 to 2007 time

2    frame, and by the way, the vast

3    majority came in in 2006.  That was

4    the year that it really came in.

5          What we've done is we've said,

6    well, this is the volume -- these are

7    the three defendants that the

8    plaintiffs have pursued.  This is the

9    volume that Knauf has reported.  This

10   is the volume Taishan reported.  This

11   is the volume BNBM reported.

12         And so that leaves about 22% of

13   the marketplace supplied by other

14   Chinese drywall manufacturers that

15   aren't one of the three defendants

16   that actively have been involved in

17   this litigation.  So that's more than

18   a fifth of the marketplace are other

19   Chinese drywall manufacturers.

20         Who is in this piece of the

21   pie, Chenxiang, Baier, Kang Yi Jia,

22   and countless others, smaller

23   manufacturers, some whose names we

24   know, some we don't know.

25         So there was a statistic that

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 131 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2015 Page 101 of 281
March 11, 2019

```
 1          was used in the plaintiffs' opening

 2          that Taishan has only admitted to 15%,

 3          only 15%, and I think there was maybe

 4          a little bit of -- the way the numbers

 5          were presented perhaps didn't tell you

 6          the full story; and so we thought --

 7          we were scratching our heads, because

 8          here we are at a PID, categorical PID

 9          hearing, and we're looking at how much

10          of this PID we've admitted by category

11          and how much we're still disputing.

12                 And if you look at how much of

13          the boards, according to the

14          plaintiffs' numbers, fall into the

15          categories that we have admitted, we

16          have admitted 47% of the boards by

17          category, almost half.

18                 Keeping in mind we were 31% of

19          the marketplace, but we have admitted

20          almost half of these boards by

21          category so they can tell you how they

22          got to 15%.

23                 What I surmise, based on what I

24          heard, is they looked at other

25          objections, nonproduct ID objections
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 132 of 343
Case 1:11-cv-22408-MGC-EGT Document 299 Entered on FLSD Docket 04/29/2013 Page 102 of
281
March 11, 2019

1          that we have asserted.  We do have

2          other defenses.  We'll get to those on

3          another day, they're not what we're

4          here for.

5               What we're here for today is to

6          determine product ID by category, and

7          within those categories, our

8          admissions of those categories cover

9          almost half of the boards that are

10         being presented to you.

11              So speaking of those other

12         defenses and other stages of your

13         adjudication as a special master, we

14         wanted to reiterate a point that we

15         made in our brief, but that's

16         important today.

17              So today's hearing is about the

18         categorical PID attribution.  I like

19         to think of that as the macro

20         determination, whether certain big

21         categories can be rightfully

22         attributed to Taishan with the

23         plaintiffs' proof by the greater

24         weight of the evidence, and which ones

25         there is insufficient proof to

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 133 of 343
Case 4:11-cv-22408-MGC-EEF-MBN Document 299 Entered on FLSD Docket 04/29/2019 Page 103 of 281
March 11, 2019

1    attribute the whole category to

2    Taishan.

3          Now, there still will need to

4    be, in some cases, a claim-specific

5    determination of whether the

6    claim-specific proof falls into that

7    category.  So let me give you an

8    example.

9          Taihe edge tape, as Mr. Montoya

10   told you, is a product ID marking that

11   we admit is ours, and I know that

12   there's been some things come up about

13   maybe it's counterfeit, maybe it's

14   not.

15         For purposes of this

16   litigation, we have said this Taihe

17   edge tape is ours, and we're going to

18   concede for litigation purposes that

19   it's ours, even if maybe it was

20   counterfeited, it doesn't matter.  If

21   it looks like this, we are taking

22   responsibility for it.

23         It says Taihe in English, by

24   the way.  These characters have our

25   brand name in Chinese.

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 134 of 343
Case 1:11-cv-22408-MGC Document 259 Entered on FLSD Docket 04/29/2013 Page 104 of 281
March 11, 2019

1          But some of the proof for some

2      of the specific claims aren't this

3      clear, and so this is an example of

4      one of the claims that the plaintiff

5      says, well, this is Taihe edge tape,

6      and you just see a little piece of

7      tape and a little line of blue.

8          And we object to that because

9      we say if this is all you've got,

10     this, to us, is not enough to prove

11     that this is a Taihe product.

12         We have identified those

13     objections on our claim-specific

14     contest.  We've done the preliminary.

15     We're going to do the final.  We are

16     working with the plaintiffs' side to

17     try to resolve as many of those

18     differences as we can, but

19     undoubtedly, there may be some, a few

20     at the margins, where we're going to

21     need a claim-specific proof

22     determination made of whether it falls

23     into the category or not.

24         So this is step one of PID, and

25     that second step will come in those

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 135 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 105 of 281

March 11, 2019

1       subsequent proceedings.

2              So at this point, we are ready

3       to get into the claim-specific

4       categories and as we laid them out,

5       these are the ones that are in

6       dispute.

7              Category I and J are the

8       generic categories that are partially

9       contested, and we will -- have agreed

10      to take them in order as they're laid

11      out.  Do you have any questions for

12      me, Ms. Lee?

13             SPECIAL MASTER LEE:  Do we know

14      anything about any markings used by

15      the other Chinese drywall

16      manufacturers or has that not been

17      discovered?

18             MS. EIKHOFF:  That's a very

19      good question.  We have records that

20      we have obtained and we will show you

21      that demonstrate what the other

22      manufacturers were doing in the

23      marketplace, but we do not have

24      detailed information about exactly

25      what their markings looked like

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 136 of 343
Case 1:11-cv-22408-MGC Document 259 Entered on FLSD Docket 04/29/2013 Page 106 of
281

March 11, 2019

1          because they were never pursued in

2          this litigation.

3                  And so if they had been

4          pursued, let's say that they had been

5          served and they came into the U.S.

6          litigation, like Taishan and BNBM and

7          Knauf did, they would have a

8          Manufacturer Profile Form, and their

9          Manufacturer Profile Form would do

10         what TTP's did and itemize each order

11         and describe the spray markings on the

12         side and describe what was on the end

13         tape.  But because they were never

14         pursued as defendants, we don't have

15         that.

16                 So that's one of the ways that

17         the plaintiffs have tried to flip the

18         script and say we sued you, you gave

19         us a list of what you did, and now

20         we're going to say it must be you

21         because we see this generic marking on

22         your form, so it must be you.  It must

23         be you.  You said that you produced

24         some blank boards.  All blank boards

25         must be you.

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 137 of 343
Case 1:11-cv-22408-MGC Document 259 Entered on FLSD Docket 04/29/2019 Page 107 of 281
March 11, 2019

```
 1              Well, that's not enough,
 2       especially when, as you will see as we
 3       go through the evidence, the evidence
 4       will show that it is more likely than
 5       not and sometimes incredibly
 6       compelling showing that the drywall at
 7       issue that they're putting to Taishan
 8       was made by another specific
 9       manufacturer, ones that we can
10       identify and ones that they could have
11       pursued and didn't.
12              SPECIAL MASTER LEE:  And how
13       does the defense propose that we
14       resolve the edge tape issues if, as
15       the plaintiff says, the edge tape is
16       typically removed during installation
17       of the drywall?
18              MS. EIKHOFF:  So the way that
19       the PID claim-specific determinations
20       have been made is to look at whatever
21       product ID documentation is available,
22       and so the decisions have to be made
23       based on what was provided at the
24       time.
25              SPECIAL MASTER LEE:  Okay.
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 138 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2013 Page 108 of 281
Mar. 11, 2019

1          Now we're going to go through

2     specific categories, and we're going

3     to have to switch back and forth.

4          MS. DUGGAN:  I wanted to know

5     if I could just make one clarification

6     with regard to the defendants at issue

7     in this case, and I don't think

8     Ms. Eikhoff would disagree with me.

9     There's TG, as we refer to as Taishan

10    Gypsum Company, and TTP, Taihe Taishan

11    Plasterboard Company, they were two

12    separate defendants that were sued.

13    They're both represented by Alston &

14    Bird here and previously by

15    Hogan Lovells, and there is a ruling

16    from Judge Fallon in the MDL and then

17    the Fifth Circuit Court of Appeals

18    that they are alter egos and one and

19    the same, and for that reason we refer

20    to them as Taishan and we consider all

21    the documents for both to be

22    applicable.

23          MS. EIKHOFF:  We agree with

24    that.  The quote that was given from

25    the Fifth Circuit court was in the

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 139 of 343
Case 2:11-cv-22408-MSC-EEF Document 299 Entered on FLSD Docket 04/29/2019 Page 109 of
281
March 11, 2019

```
1           course of making that decision and
2           specifically referred to TG having
3           only two sales.
4                MR. VENDERBUSH:  And that was
5           relevant in the jurisdictional
6           setting.
7                SPECIAL MASTER LEE:  Okay.  So
8           I think you're up.
9                MR. MONTOYA:  We are if you
10          could switch the PowerPoints.  Judge,
11          I'm going to defer to Ms. Robertson
12          who's going to make the presentation
13          on C&K, and we're at slide 43 then.
14               SPECIAL MASTER LEE:  I think
15          we'll do this category and then we'll
16          get lunch.
17               MS. ROBERTSON:  All right.  So
18          the first bucket in our brief is C&K.
19          C&K is not on Taishan's Manufacturer
20          Profile Form.  C&K is not on the
21          informational reports that you heard
22          about earlier from Mr. Montoya.
23               However, plaintiffs do
24          recognize and observe that Taishan,
25          throughout the years, has acknowledged
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 140 of 343
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/29/2019 Page 110 of 281
March 11, 2019

1           that they exported drywall to the

2           United States that they either don't

3           know what markings were on them or

4           they had unspecified markings.

5                 And that's clear on the

6           Manufacturer Profile Form and that's

7           also clear on the statistical

8           spreadsheets you saw earlier.

9                 Specifically at slide 7, you

10           can see that the product label column

11           is filled with unspecified, and so we

12           believe that C&K could fall in the

13           sort of unspecified, unknown category,

14           despite the fact that Taishan doesn't

15           have it on their Manufacturer Profile

16           Form.

17                 C&K, the markings do read C&K

18           GYPSUM BOARD, as well as ASTM C 1396,

19           MADE IN CHINA.  I skipped up to slide

20           47 just to give you a quick overview

21           of what the markings look like.  This

22           is from an Amorin claimant's home, and

23           then the very next slide is what is in

24           the PID catalog as well as Florida

25           Amorin claimants.

March 11, 2019

```
 1              So briefly real quick, as we
 2         get into these buckets and we start to
 3         talk about markings, what happened in
 4         the course of the litigation is a
 5         claimant would suspect drywall, maybe
 6         their -- suspect Chinese drywall.
 7         Maybe their neighbor found Chinese
 8         drywall, maybe they were in a condo
 9         unit, maybe had a smell.  One way or
10         another, in 2008-2009, plaintiffs
11         started to suspect they had this
12         Chinese drywall.
13              Usually this resulted in
14         calling an inspector or calling
15         somebody in the industry to say:  Will
16         you come look at my home?  Is there
17         any indication of Chinese drywall?  I
18         have these sort of concerns.
19              So with those concerns, an
20         inspector would come, and they would
21         do a visual inspection.  The visual
22         inspection was usually looking at some
23         sort of wiring, some sort of coil,
24         anything that was sort of metal, as
25         Mr. Montoya said.  Button pushing,
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 142 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 112 of 281
March 11, 2019

1    we're looking maybe even at light

2    fixtures.  Is there corrosion on

3    there?

4         If there was a visual identity

5    or perhaps there's corrosion, then you

6    would start to do destructive testing,

7    which would be removing boards from

8    the home, removing chunks of boards

9    and looking for markings.  So that's

10   why we kind of get into this marking

11   thing that comes up.

12        So the markings followed at

13   first the visual of I believe there

14   could be Chinese drywall in my home.

15   Just to give a background, it also

16   explains why sometimes we get full

17   boards, sometimes we have partial

18   boards.

19        Partial boards are usually

20   those that were more destructive

21   testing or pulled out.  Whole boards

22   are for those claimants who usually

23   did full remediation, which wasn't

24   always possible here, as we've heard.

25   There are a bunch of claimants who

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 143 of 343
Case 2:11-cv-22408-MSC-EEF Document 299 Entered on FLSD Docket 04/29/2019 Page 113 of 281
March 11, 2019

1    haven't even remediated their homes

2    yet.  So those markings in those

3    plaintiffs' homes aren't usually full

4    boards because they haven't pulled

5    those walls out yet.

6         So we just have some quality

7    issues.  Just trying to get a little

8    bit of background on that.

9         So back to C&K.  C&K clearly

10   shows C&K GYPSUM BOARD.  I don't think

11   there's a dispute with either side

12   that the product ID in this bucket

13   reads C&K.  We can agree on that.

14        Our link from the plaintiffs'

15   side is through Taishan's documents as

16   well as documents that were pulled

17   from a bankruptcy proceeding.  The

18   document here at slide 44 is a

19   contract proposal between

20   International Materials Group, IMG,

21   and Shandong Taihe.

22        It's very clear just from the

23   face of the document that you have IMG

24   desiring to do business with Taishan

25   in March of 2006 for drywall.  It is

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 144 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 114 of 281
March 11, 2019

1      unsigned, we understand that, but the

2      TG_1292, 1293, that was from the

3      production that was produced to us in

4      2012.  Apollo Yang is a representative

5      of Taishan who did have the authority

6      to engage in contracts on behalf of

7      Taishan with United States customers.

8            So how and why would

9      International Materials Group at all

10     be relevant to Florida specifically

11     and C&K drywall?

12           So Guardian Industries was a

13     distributor defendant in this

14     litigation.  They had depositions.

15     There was potentially -- there was

16     even a settlement that kind of came

17     out.

18           Guardian is trying to figure

19     out how to get this drywall in 2006.

20     There's a need, there's a shortage,

21     and we're getting a discussion here of

22     oh, well, International Materials

23     Group, sounds like they're working

24     with Taihe.

25           Taihe is shipping product to

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 145 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 115 of 281
March 11, 2019

1       the United States, so on, so forth.

2       We're looking for these links.  We're

3       trying to piece together what we can

4       from the documents related to C&K.

5               So just as a quick reminder, we

6       have C&K -- or sorry, we have IMG

7       dealing with Apollo, and again,

8       confirmation that this is the same IMG

9       that Guardian, a Florida distributor,

10      knows is working with Taihe.

11              We're going to go a tiny bit

12      weedy.  Unfortunately, Special Master,

13      we just kind of have to with this

14      particular bucket.

15              So this next document is a

16      contract between the seller, York

17      Supply Company, and the buyer, WCI.

18              York Supply Company has the

19      same address and common ownership as

20      IMG.  We have Steve Gordon and we have

21      Steve Gordon.  Common ownership and

22      same address came out and was

23      confirmed by their bankruptcy

24      proceedings when they went to the

25      bankruptcy with WCI.  Those are tabs

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 146 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 116 of 281
March 11, 2019

1        to our PID brief.  They are also in

2        the C&K section, as you might recall.

3              So as plaintiffs are trying to

4        piece these puzzles together, we're

5        starting to see a little bit of

6        overlap, a little bit of similarities

7        here.  It looks like we're getting a

8        link to Taihe.  We don't have board

9        markings.  You know, they were not

10       part of the residual boards from

11       Taihe.  We have our claimants'

12       markings and then we have these

13       documents that are suggesting that

14       Taihe sold this -- sold to York Supply

15       and York Supply sold to WCI.

16             WCI only has C&K in its homes.

17       Like that's what they build their

18       homes with.  So that's how we're

19       closing the loop in a way here, what

20       we've been able to understand.

21             Now, WCI and York, they were

22       sued, but they were sued at a time

23       when WCI was already going into

24       bankruptcy or was bankrupt, so this

25       document is not part of the litigation

March 11, 2019

1       here, but is a public document pulled

2       from part of the bankruptcy

3       proceedings that we're doing trying to

4       piece together our product ID for C&K.

5               Now, when we actually look at

6       the markings, which all C&K markings

7       are denied by Taishan.  We are seeing

8       that, more or less, it's C&K GYPSUM

9       BOARD with ASTM C 1396, MADE IN CHINA.

10              What plaintiffs contend is, as

11      we looked at the Venture Supply

12      markings that had so many variations

13      and there were some font similarities,

14      some similarities -- some fonts that

15      weren't similar as well as the

16      residual boards that had the MEET AND

17      EXCEED that then became similar.

18              We find that we're also finding

19      lots of similarities here because,

20      importantly, photo ID 1, which is from

21      the Taihe tape section, is admitted by

22      Taishan.  These product, these

23      markings, this font is admitted by

24      Taishan.

25              When we look here and we have a

March 11, 2019

```
1          denial, but we're starting to see very
2          similar sort of fonts, caps, reading
3          about kind of in the same spot of the
4          board, but, you know, again, we're
5          denied here, we don't have Taihe tape
6          like we do here.
7               But as you sort of do kind of a
8          massage out the C&K bucket and you're
9          really kind of getting into the grits,
10         we're finding the contract ties that
11         are pretty suggestive that there was
12         some dealings with Florida companies
13         with Taihe to import board.
14              Those builders were using C&K
15         to complete their homes, and then you
16         actually are starting to get a
17         comparison of it, finally an admission
18         of these markings.  And I'm comparing
19         the font.
20              Now, I can promise that, you
21         know, Taishan's position is like,
22         well, of course we're going to admit
23         this marking.  It says Taishan on it.
24         You know, and so I think we can all
25         agree that this doesn't say Taishan.
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 149 of 343
Case 1:11-cv-22408-MGC Document 259 Entered on FLSD Docket 04/29/2019 Page 119 of
281
March 11, 2019

```
 1          It says C&K.  But Taishan doesn't
 2          admit to only board that only says
 3          Taishan.  We're more focusing on the
 4          actual font, the eyeball, and kind of
 5          looking at, well, you know, it's
 6          looking like we've got the same
 7          printer going off and we also have the
 8          board coming in at the same time that
 9          we know this admitted board came into
10          Florida.
11              I think that I will want to ask
12          really quickly just with my colleague
13          to make sure I properly represented
14          the sequence of the businesses.
15              (Pause.)
16              MS. ROBERTSON:  Sorry.  Thank
17          you so much for that short pause.  I
18          just want to clarify just so it's not
19          misrepresented.  WCI has other brands
20          they did build homes with, but when
21          you have a WCI home that has C&K in
22          it, it's only C&K.  So I just wanted
23          to clarify that sort of tie.
24              So I think we'll volley.
25              MS. EIKHOFF:  Yeah.  We have to
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 150 of 343
Case 2:11-cv-22408-MGC-EEF-MBN Document 299 Entered on FLSD Docket 04/29/2015 Page 120 of 281
March 11, 2019

1   volley the PowerPoint.  My C&K starts

2   on page 10.

3          In my introductory remarks, I

4   referenced a former defendant in this

5   case called Chenxiang, otherwise known

6   as C&K.  Ms. Lee, all of the evidence

7   that has been developed is that C&K

8   boards were made by Chenxiang.

9          Taishan testified that it

10  understood that C&K drywall was made

11  by Chenxiang.  Chenxiang is a

12  competitor of Taishan's.

13         The plaintiffs asked Taishan's

14  representative, well, would you ever

15  print boards with the competitor's

16  name on it?  And he said that would be

17  impossible.  We would never print

18  boards with our competitor's name on

19  it.

20         But it's not just Taishan's

21  testimony that says that C&K boards

22  were made by Chenxiang.  American

23  buyers who were deposed in this suit

24  testified that C&K boards were made by

25  Chenxiang.

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 151 of 343
Case 1:11-cv-22408-MGC-EEF-MBN Document 255 Entered on FLSD Docket 04/29/2015 Page 121 of 281
March 11, 2019

 1            There was a particular American

 2       distributor who went out and procured

 3       Chinese drywall.  The name of that

 4       witness was Wood Nation.  And he was

 5       asked about Chenxiang documents and

 6       C&K drywall, and he said yep,

 7       Chenxiang, that's C&K.

 8            And he said, but I thought we

 9       were here talking about Taishan sales.

10       And plaintiffs' counsel said, well, we

11       need to talk about the C&K sales too

12       because they're also a defendant in

13       this lawsuit.

14            The Consumer Product Safety

15       Commission report identifies Chenxiang

16       as the maker of C&K drywall.  We

17       provided a web link at page 27 of our

18       brief.

19            And the plaintiffs know exactly

20       who Chenxiang is because they named

21       them as a defendant in a complaint,

22       which is a point we've already made.

23            And their brief about C&K

24       markings says approximately 50,000

25       sheets of C&K drywall were shipped by

Mar. 11, 2019

```
 1          Chenxiang to Port Everglades in

 2          July 2006.

 3                  So how are they possibly saying

 4          that Taishan made C&K drywall?  Well,

 5          their theory keeps changing, and as

 6          you will see when you go back and look

 7          at our brief, the theory of

 8          attribution that we anticipated they

 9          would make when we wrote our brief was

10          apparently the last theory of

11          attribution, and now they have

12          developed a new theory of attribution

13          that somehow ties York to IMG.

14                  And you'll notice when we look

15          back at the transcript that

16          Ms. Robertson didn't even say anything

17          about C&K when she showed you those

18          documents.

19                  She said, well, here you see

20          there's a proposal by IMG to buy

21          boards from Taihe and then there's

22          this other e-mail talking about IMG,

23          ordering boards from IMG.  There was

24          nothing said about C&K in any of those

25          documents or in any of those
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 153 of 343
Case 1:11-cv-22408-MGC-TEU Document 299 Entered on FLSD Docket 04/29/2015 Page 123 of 281
March 11, 2019

```
1          discussions.  And so they don't have

2          any evidence connecting C&K.

3                Boiling down what we have

4          perceived their argument to be, and

5          this wasn't all presented to you, but

6          it's more laid out in their brief,

7          that one buyer bought C&K drywall from

8          Chenxiang.  That buyer was York.

9                And then a related company

10         sought to buy other drywall from

11         Taishan.  That related company is IMG.

12         Therefore, Taishan made all C&K

13         drywall.  That's not evidence.  That's

14         not even good logic.

15               If the plaintiffs wanted to get

16         after the manufacturer of C&K drywall,

17         they should have pursued their claims

18         against Chenxiang, who all the

19         witnesses said made it, who the U.S.

20         government says made it, and Mr. Serpe

21         said at the beginning in his

22         introductory remarks, well, Knauf put

23         their name on the sides of the

24         drywall.  Maybe Taishan should have.

25               Well, so did C&K.  They put
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 154 of 343
Case 4:11-cv-22408-MGC Document 299-1 Entered on FLSD Docket 04/29/2015 Page 124 of 281
March 11, 2019

1     their name on the side of the drywall,

2     C&K.  That's Chenxiang.

3          So the scales are so tipped

4     against the plaintiffs here, they have

5     not shown by the greater weight of the

6     evidence that Taishan made C&K

7     drywall.  The evidence shows that

8     Chenxiang did.

9          MR. MONTOYA:  Briefly, Your

10    Honor.

11         MS. ROBERTSON:  Yeah, I think

12    just briefly, I don't think I have to

13    respond to anything on there.

14         I think just briefly, I don't

15    think that plaintiffs disagree with

16    the link we're trying to make and how

17    it seems convoluted, but that's how

18    all -- not all.  That's how most

19    drywall from Taishan came into the

20    United States.

21         We can use Richard Hamm and

22    Wood Nation as an example, just as

23    Taishan's counsel did.  Richard Hamm

24    needed some drywall.  He calls up a

25    U.S. company called BNBM USA.  BNBM

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 155 of 343
Case 2:11-cv-22408-MGC Document 290 Entered on FLSD Docket 04/29/2015 Page 125 of 281
March 11, 2019

1          USA says, oh, yeah, I know a guy.

2          He's in China.  BNBM USA contacts

3          Taishan.

4               Taishan says, oh, yeah, we just

5          have this alter ego out there.

6          They're going to make it, but you

7          contract with BNBM.

8               TG contacts TTP.  TTP contacts

9          BNBM, they make a contract.  Richard

10         Hamm signs his contract with BNBM

11         only.

12              So all of this import of

13         drywall comes in this convoluted, why

14         are we going in these weird circles

15         with all these names.  You're saying

16         it's like Shandong Chenxiang in your

17         brief, but really Shandong Chenxiang

18         was also an exporter of drywall.

19              So it's kind of -- it's one of

20         those things where you're working with

21         the evidence, you're trying to draw

22         what you can out of it because all of

23         this drywall that comes into the

24         United States came through and touched

25         many different hands until,

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 156 of 343
Case 1:11-cv-22408-MGC Document 295 Entered on FLSD Docket 04/29/2015 Page 126 of
281
March 11, 2019

```
1        ultimately, it ended up in a
2        plaintiff's home.  I think that that's
3        point one.
4             I think the other part that is
5        very convenient with Shandong
6        Chenxiang, particularly, Shandong
7        Chenxiang went bankrupt in 2007.  We
8        know this because Bill Cher, who is
9        also Che Gang, wrote an e-mail to a
10       U.S. customer and said:  Well, they
11       were bankrupt, they closed their
12       factory three months ago.
13            And so I think it's a little
14       bit more of the story.  We are
15       constantly digging for evidence to try
16       to lift up and support our plaintiffs'
17       homes -- or claims rather, for the
18       evidence that they have in their homes
19       that we believe is attributable to
20       Taishan.
21            SPECIAL MASTER LEE:  So does
22       the plaintiff currently have any
23       evidence of a relationship between
24       Taishan and Chenxiang?
25            MS. ROBERTSON:  I don't think
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 157 of 343
Case 1:11-cv-22408-MGC Document 293-5 Entered on FLSD Docket 04/29/2015 Page 127 of 281
Mar. 11, 2019

1      the plaintiffs themselves have any

2      evidence of Taishan and the Chenxiang

3      company.  I think that the -- I think

4      that what we have is the evidence that

5      through the distributors, we're

6      linking the plaintiff's home to the

7      distributor to Shandong Chenxiang to

8      Taishan.

9          And it is kind of as presented

10     on the screen going through those

11     various contracts of just over time

12     they're looking for York or IMG with

13     WCI, York/IMG contacts Taishan, and

14     the drywall is coming into the United

15     States.

16          SPECIAL MASTER LEE:  And was

17     this a topic of the depositions that

18     were taken earlier this year?  And if

19     so, what was the testimony around

20     this?

21          MS. EIKHOFF:  The testimony --

22     I alluded to the testimony.  And if we

23     go back a slide, I have a specific

24     citation to it.  133 and 138.  You

25     will see the testimony of Taishan that

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 158 of 343
Case 1:11-cv-22408-MGC Document 293-1 Entered on FLSD Docket 04/29/2015 Page 128 of 281

March 11, 2019

1    Chenxiang made C&K drywall and it was

2    a competitor, that Taishan would never

3    use their brand on anything that they

4    made.

5         MS. ROBERTSON:  Yeah, I think

6    that as far as a depo topic, was the

7    relationship of Taishan and Chenxiang

8    a depo topic?  No.  Product ID was the

9    depo topic.  And so C&K by, I guess,

10   reference, was the depo topic.

11        But I don't believe the depo

12   notice read the relationship between

13   Taishan and Chenxiang.

14        MS. EIKHOFF:  No, but it did

15   ask for manufacturers that may have

16   made drywall at issue.

17        SPECIAL MASTER LEE:  And how

18   much of the product falls into this

19   category?

20        MS. ROBERTSON:  I think there's

21   50 homes.

22        MS. DUGGAN:  50 homes.

23        SPECIAL MASTER LEE:  Thank you.

24        I think lunch is here.  Do you

25   want to take a break for lunch?

March 11, 2019

```
 1                (Recess taken, 11:59 a.m. to
 2       12:45 p.m.)
 3                MS. ROBERTSON:  We are moving
 4       on to the next bucket, which is
 5       IMT Gypsum.  IMT Gypsum does appear on
 6       Taishan's manufacturer profile forms,
 7       which was Tab 11 to our PID brief.  It
 8       appears on several different lines,
 9       and Taishan admits through its
10       Manufacturer Profile Form to
11       manufacturing 206,595 sheets of
12       drywall with both blue and white edge
13       sealing tape, IMTGYPSUM, and spray
14       markings with DRYWALL
15       4feetX12feetX1/2inch.
16                Highlighted here are lines 110,
17       111 and 112 showing that they used the
18       exporter Beijing Building Material
19       Import & Export Company and the
20       quantity -- or the drywall had
21       markings on the edge sealing tape and
22       markings on the board itself.
23                Prior to the deposition in
24       2019, Taishan produced a package of
25       sales notification plans.  The entire
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 160 of 343
Case 1:11-cv-22408-MGC Document 259 Entered on FLSD Docket 04/29/2015 Page 130 of 281
March 11, 2019

1       package is found at Tab 15 of our

2       product identification brief.  That is

3       the Chinese version, followed by the

4       English version, which was a

5       translation by Taishan's counsel's

6       vendor.  I didn't want to misstate.

7               MS. EIKHOFF:  Yes.

8               MS. ROBERTSON:  The PSC had a

9       couple of issues with some of the

10      translations, so we haven't come to an

11      agreement with that yet, but that is

12      just kind of a little background,

13      Counsel, if you want to add one

14      qualifier.

15              MS. EIKHOFF:  Yeah.  Actually,

16      for the sales plan notification, those

17      translations were done in-house.  We

18      did not have a vendor for the sales

19      plan notification translations.

20              MS. ROBERTSON:  Okay.  Thank

21      you.

22              So just days before the

23      deposition, in response to the

24      deposition notice and the request for

25      production, we get the sales plan

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 161 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 131 of 281
March 11, 2019

1     notifications.  They were not

2     previously produced at any other time

3     in this litigation.

4          When asked about where these

5     sales plan notifications were found,

6     how they were found, where they were

7     held, Taishan's corporate

8     representative testified that he --

9     you know, he worked very diligently,

10    searched very, very hard and long for

11    responsive documents to prepare for

12    his deposition in 2019 and found a

13    cabinet that had a lot of paperwork,

14    and he and a colleague went though

15    this cabinet, found these sheets,

16    which I think totals 24 sales plan

17    notifications total, and gave them to

18    their lawyers.  They were translated

19    and produced I think somewhere around

20    the 19th of January of 2019.

21         The sales plan notification is

22    very important to the IMT bucket

23    because Taishan's own documents show

24    that they did, in fact, manufacture

25    IMT Gypsum, as is consistent with

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 162 of 343
Case 1:11-cv-22408-MGC Document 239 Entered on FLSD Docket 04/29/2015 Page 132 of 281
March 11, 2019

1    their Manufacturer Profile Form.

2         So the sales plan notification

3    is from the sales company to the

4    management department, all done

5    in-house, in-house document saying,

6    hey management department, we have

7    gotten a sales plan.  This is for --

8    this is the quantity, this is the

9    standard, and this is the specific

10   requirements.

11        The words are missing here.

12   There should be 6560 sheets and 1920

13   sheets for the respective different

14   sizes.

15        So we talked a lot with Mr. Che

16   about these sales plan notifications.

17   He said this is all he could find.  He

18   could only find these 24.  But we see

19   here for IMT specifically, we need to

20   have the specific edge tape that says

21   IMTGYMSUM.  Unfortunately, there's a

22   typo.  That typo is also in the

23   Chinese version.

24        We do know from Taishan's

25   Manufacturer Profile Form it is IMT

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 163 of 343
Case 2:11-cv-22408-MSC-EGT Document 293-1 Entered on FLSD Docket 04/29/2019 Page 133 of 281
March 11, 2019

1        Gypsum.  I don't think there's much

2        dispute over the fact that there's a

3        typo here in the specific requirement.

4              We'll note, though, that one

5        thing in the specific requirements is

6        back to those spray markings.  We have

7        one type of board being manufactured

8        here with no markings but with tape,

9        and another part of the order is

10       attached spray markings.  There's no

11       attachment.

12             The attachment here is what you

13       heard from my colleague earlier.

14       Those were those sheets given to the

15       spray marking workers that were thrown

16       away.

17             You know, so unfortunately,

18       we're left with this implication that

19       we have a spray marking on IMT Gypsum

20       board, Taishan gave specific

21       instructions regarding that spray

22       marking, and that sheet was thrown

23       away.

24             Plaintiffs have the burden of

25       persuasion here and we believe it is

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 164 of 343
Case 2:11-cv-22408-MGC-EEF-MBN Document 259 Entered on FLSD Docket 04/29/2019 Page 134 of
281
March 11, 2019

```
1         persuasive that IMT Gypsum was

2         manufactured by Taishan.  It went from

3         their sales department to their

4         management department and then to the

5         production folks with specific

6         instructions.

7              Now, this sales plan

8         notification specifically says

9         IMT Gypsum.  In preparation for this

10        presentation, there is a later sales

11        plan notification at 00046 that

12        incorporates by reference 00042.

13        Unfortunately, because I just realized

14        it in preparing for this, I didn't

15        question the witness, so I understand

16        if there's a contest of the

17        incorporation by reference.

18              But reading the facts in the

19        way it's presented here, we can

20        account for 39,780 sheets of drywall

21        that Taishan has provided records for,

22        yet their Manufacturer Profile Form

23        admits to 206,595 sheets of drywall.

24              Here again, we have an example

25        of we have partial evidence.  We don't
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 165 of 343
Case 3:11-cv-22408-MGC-EGT Document 299 Entered on FLSD Docket 04/29/2015 Page 135 of 281
March 11, 2019

 1          have all the evidence.  Taishan really

 2          is in the best position to have had

 3          this evidence for us.  They're able to

 4          find one, possibly two, sales plan

 5          notifications, but they represented to

 6          us they could find no others.

 7               Finding documents to support

 8          the Manufacturer Profile Form and also

 9          documents to support the spreadsheets

10          that we talked about earlier, that was

11          part of the deposition notice.  We

12          asked the witness to be prepared to

13          testify and produce documents to

14          support those charts, those

15          statistics.  We got this and other

16          company documents.

17               Now, IMT Gypsum is another one

18          that has branded IMTGYPSUM.COM with

19          the 4feetX12feetX1/2inch.  PID catalog

20          photo, this references the ECF filing

21          in Florida 155-2.

22               We have a couple of variations

23          as we've seen with some of the other

24          boards.  And then we have this

25          particular picture.  So PID-51 was

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 166 of 343
Case 3:11-cv-22408-MGC-EEE Document 259 Entered on FLSD Docket 04/29/2015 Page 136 of 281
March 11, 2019

1    introduced at the deposition of Che

2    Gang.  This is from a plaintiff's

3    home.  And we asked Mr. Che:  Is the

4    blue-and-white edge tape with

5    IMTGYPSUM the same as in this

6    paragraph?

7         Their Manufacturer Profile Form

8    identifies blue-and-white edge sealing

9    tape, IMTGYPSUM.

10        We have positive photo evidence

11   from a plaintiff's home, yet Mr. Che

12   says:  The information we still have

13   is incomplete.  And he can't make a

14   decision because he couldn't find or

15   discover this edge tape while he was

16   preparing for his deposition.

17        It's a little bit problematic

18   in that we did ask, as previously

19   stated, for the supporting material of

20   how they all came up with an MPF.  How

21   did you create this Manufacturer

22   Profile Form?  Where is the evidence

23   you used to support this Manufacturer

24   Profile Form?  That's not the first

25   time similar-type productions have

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 167 of 343
Case 3:11-cv-22408-MGC - EDCalifornia on Flor Docket 04/29/2019 Page 137 of 281
March 11, 2019

1           been asked in this litigation.

2                 But again, we get this sales

3           plan notification that talks about

4           IMT Gypsum.  It talks about IMT Gypsum

5           tape.  It talks about not having

6           boards marked.  It talks about marking

7           boards with this attached marking, all

8           of which, when we get to the

9           plaintiff's photo, does match what's

10          represented on the profile form,

11          what's represented by Che that this

12          blue-and-white tape looks similar, but

13          because he couldn't find any

14          additional documents, he can't confirm

15          it.

16                This is another one of those

17          examples of the sword and shield sort

18          of thing we kind of have throughout

19          the litigation and throughout these

20          product ID buckets.

21                Plaintiffs present this

22          evidence, we get so far, we feel like

23          we've pushed the limit, and then all

24          of a sudden we get pushback, well, I

25          couldn't find it, though.  But you did

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 168 of 343
Case 2:11-cv-22408-MSC-EEF Document 299 Entered on FLSD Docket 04/29/2019 Page 138 of
281
March 11, 2019

1      find the sales plan notification.

2          It says the same thing as your

3      Manufacturer Profile Form.  It's

4      matching what we're showing you on

5      this picture, but because you didn't

6      find this tape, which we also learned

7      isn't manufactured at Taishan's

8      facility, you're going to deny the

9      plaintiff's ID of this particular

10     bucket.

11         MS. EIKHOFF:  We should be at

12     slide 14, Ms. Lee.

13         So that presentation by

14     plaintiffs made it sound like Taishan

15     admitted on its Manufacturer Profile

16     Form that it made boards that looked

17     like the IMT Gypsum boards in this

18     category, and I want to make very

19     clear that that is not the case.

20         It is true that Taishan sold

21     boards with IMTGYPSUM on edge tape.

22     They have never denied that.  As a

23     matter of fact, they're the ones that

24     reported that.  And they reported it

25     in their Manufacturer Profile Form all

March 11, 2019

1       the way back in 2012 with specificity.

2               And part of that specificity

3       was that although those orders had

4       IMTGYPSUM written on the edge tape,

5       that what was sprayed on the side of

6       the board was DRYWALL

7       4feetX12feetX1/2inch.

8               In the catalog that we are

9       using to make these categorical

10      determinations, the photos that we

11      were required to admit or deny are

12      photos of the sides of boards with a

13      spray marking IMTGYPSUM.COM.  And

14      there is no evidence anywhere that

15      Taishan ever made any boards sprayed

16      IMTGYPSUM.COM on the side.

17              We did do some business with a

18      brand called IMT Gypsum, and I'm about

19      to show you, so did a lot of other

20      manufacturers and in quantities that

21      dwarf the business that Taishan did

22      for that brand.

23              Ms. Robertson also brought up

24      that the sales plan notifications, the

25      numbers of orders with IMT Gypsum tape

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 170 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 140 of
281
March 11, 2019

1      are smaller than the numbers that they

2      reported on their MPF, and that's

3      easily explained.

4              Mr. Serpe explained that to you

5      this morning.  He showed you a slide

6      that said that instructions on how to

7      prepare tapes and how to prepare

8      boards was often done orally or by

9      phone, in various other ways.

10             And so it is to Taishan's

11     credit that this initial discovery

12     offering in the case reported far more

13     than the sales plan notifications that

14     exist to this day.

15             So what we will show you is

16     that the plaintiffs have not satisfied

17     their burden of proof that Taishan

18     made boards with the specific

19     IMTGYPSUM.COM spray marking, and

20     instead are asking you to fill those

21     evidentiary gaps; to just assume that

22     Taishan made it.  Because they did one

23     transaction that relates to the

24     IMT Gypsum brand, then you should

25     assume that every board that has that

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 171 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 141 of 281
March 11, 2019

1    brand on it was also made by Taishan,

2    even when that assumption is refuted

3    by the evidence in the case.

4            So one of the things that

5    you've been hearing all morning, and

6    Ms. Robertson talked about it when she

7    was talking about C&K, is that you had

8    distributors and brokers and buyers

9    trying to get as much drywall from

10   China as they could during this

11   shortage.

12           And so we talked about

13   suppliers who have testified in this

14   case who said they were buying from

15   Chenxiang and they were buying from

16   Taishan and they were buying from

17   other manufacturers.  And U.S.

18   shipping records bear that out, and

19   specifically bear it out for

20   IMT Gypsum.

21           So we have located U.S.

22   shipping records that IMT, the company

23   at issue here, purchased lots of

24   boards from multiple manufacturers in

25   2006 and brought them into the United

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 172 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 142 of 281
March 11, 2019

1          States, specifically brought them into
2          Florida.

3               And this transaction right
4          here, to Beijing Building Materials
5          Import, is reported on our MPF.  It's
6          the one with the IMT on the edge tape.
7          And the exporter listed on our MPF is
8          Beijing Building Materials.  So we can
9          line up this one shipment as probably
10         coming from Taishan.

11              But then you look at who else
12         IMT was buying from at this same time
13         and look at the quantities.  There's
14         two lines here for Pingyi Baier.  So
15         there's -- they ordered twice as much
16         from Baier as they did from Taishan.

17              And then you look at who else
18         shows up on this shipping record, and
19         guess who it is.  Chenxiang, the
20         manufacturer who used to be a
21         defendant here that plaintiffs want to
22         pretend never existed, the same one
23         that made C&K drywall.

24              And look at the volume.  IMT
25         ordered ten times as much drywall from

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 173 of 343
Case 2:11-cv-22408-MSC-EDcument 299 Entered on FLSD Docket 04/29/2019 Page 143 of
281

March 11, 2019

```
 1        Chenxiang as it did from Taishan, and
 2        twice as much from Baier as it did
 3        from Taishan.
 4            But Taishan's the only
 5        defendant here and the only one who
 6        has submitted an MPF, and Taishan's
 7        MPF says, yeah, here it is, we did
 8        that transaction, and the spray
 9        markings on the side didn't say
10        IMTGYPSUM.
11            Now, the shipping records show
12        that the lion's share of IMT board was
13        made by C&K.  We know because the
14        evidence shows that C&K is the brand
15        of Chenxiang.
16            C&K GYPSUM, the bottom two
17        pictures are C&K, the brand for
18        Chenxiang.  IMTGYPSUM, this is the
19        exemplar we have that you have to
20        decide did Taishan make it or not.
21            It is exact -- the word
22        "GYPSUM" in C&K's drywall and in IMT's
23        drywall is exactly the same.  Compare
24        the G, the Y, the P, the S, the U and
25        the M.
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 174 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 144 of 281
March 11, 2019

1            So what the evidence is showing

2        you is not some attenuated speculative

3        theory that Taishan says that it made

4        board with IMTGYPSUM on the side, on

5        the edge tape, but they misrepresented

6        what they sprayed on the side, and we

7        should just assume that IMTGYPSUM,

8        that they really sprayed it on the

9        side, you should just assume that

10       that's what they did.

11            So instead of that speculative

12       theory, what the evidence is showing

13       you is that most of IMT came from

14       Chenxiang, who made C&K boards; and

15       IMT boards and C&K boards are almost

16       exactly identical.  The word "GYPSUM"

17       is identical in the two boards.

18            So we do not believe that the

19       plaintiffs have put forth the greater

20       weight of the evidence that Taishan

21       made the boards with IMT sprayed on

22       the side.

23            MR. MONTOYA:  Brief rebuttal?

24            MS. ROBERTSON:  So counsel's

25       representation that there was one

Case 2:09-md-02047-EEF-MBN  Document 22392-9  Filed 12/06/19  Page 175 of 343
Case 1:11-cv-22408-MGC  Document 299  Entered on FLSD Docket 04/29/2015  Page 145 of 281
March 11, 2019

1          transaction by Taishan of IMT Gypsum

2          just doesn't quite follow the same

3          logic.

4               IMT Gypsum appears on several

5          different lines of their Manufacturer

6          Profile Form.  It also appears on

7          several different lines of the

8          statistical spreadsheet that we

9          recovered from the 2010 e-mail.

10              In addition to that, we have

11         the witness, corporate witness for

12         Taishan, testifying:  I believe the

13         Manufacturer Profile Form created by

14         Mr. Peng is correct, but it's possible

15         that it's not very accurate, did not

16         pay attention to small details.

17              You'll hear some more about

18         this later from my colleague when she

19         talks about some of the other buckets,

20         but in particular, Taishan's argument

21         today that while their Manufacturer

22         Profile Form was so careful, that it

23         was so precise that it clearly says on

24         the edge sealing tape and from the

25         beginning we had admitted we put IMT

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 176 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 146 of 281
March 11, 2019

1          on our sealing tape, but the product

2          marking, it doesn't have those same

3          words.

4               That is again a sword/shield

5          argument, because if we look -- and

6          it's not at issue here in Florida, but

7          DUN Drywall, which is admitted to by

8          Taishan on their Manufacturer Profile

9          Form, does not include the sprayed

10         marking and the product marking on

11         their Manufacturer Profile Form.

12              So we have a bunch of

13         inconsistencies that really are

14         occurring here of when it is to their

15         benefit to say, well, that's not what

16         we read on the Manufacturer Profile

17         Form, so your argument's wrong.  You

18         didn't get it.

19              But they'll admit some of these

20         other things, and DUN is a perfect

21         example.  No contest there.  No

22         contest.

23              The product marking column of

24         the Manufacturer Profile Form does not

25         match the markings that are found on

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 177 of 343
Case 1:11-cv-22408-MGC Document 259 Entered on FLSD Docket 04/29/2013 Page 147 of 281
March 11, 2019

1      that board.  IMT should be looked at

2      no differently.

3              MS. EIKHOFF:  Could I just make

4      a point of clarification?  We did

5      submit an errata that the word

6      "accurate" in this quote was

7      mistranslated, and when that same

8      Chinese word was used every other

9      instance in the deposition, it was

10     translated as "precise."

11             And so on February 28th, we

12     provided to the PSC an errata signed

13     by Mr. Che, the witness, that noted

14     that translation error, and consistent

15     with the rest of the translation of

16     the deposition, that word should have

17     been translated as "precise."

18             MS. ROBERTSON:  We haven't

19     really addressed any of the errata

20     between the parties.  They did in fact

21     submit it.  I'm not trying to mislead

22     the special master.  If they'd like it

23     read into the record that it's not

24     very precise, so be it.

25             MS. EIKHOFF:  Thank you.

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 178 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2015 Page 148 of
281
March 11, 2019

```
 1              SPECIAL MASTER LEE:  Before we

 2         get to the next category, as we go

 3         through the categories, are any of

 4         those categories overlapping, meaning

 5         is there a home that has drywall that

 6         has several categories?

 7              MS. ROBERTSON:  Yes.

 8              SPECIAL MASTER LEE:  So it's

 9         not all distinct?

10              MS. ROBERTSON:  Yes.

11              SPECIAL MASTER LEE:  So what's

12         next?

13              MS. ROBERTSON:  It will be

14         ProWall.  That will be slide 57.

15              Next bucket is ProWall.

16         ProWall gets into the weeds again.

17         Anybody who knows my experience with

18         this case, I live in the weeds.  It's

19         fair.

20              MS. EIKHOFF:  True.

21              MS. ROBERTSON:  We have

22         Taishan, Run & Fly Jinan,

23         Manchester Holdings, Inc., Stock

24         Building Supply Company -- Stock

25         Building Supply Inc., apologies.
```

March 11, 2019

```
 1                 Our trace from Taishan to Stock
 2          Building Supply Inc., who built the
 3          homes in Florida, is that Taishan
 4          manufactured the drywall.  It was
 5          purchased by Run & Fly Jinan, which
 6          was a domestic Chinese company and
 7          exporter who sent the drywall from
 8          China to the United States through
 9          Manchester Holdings Inc., and
10          eventually purchased by Stock Building
11          Supply Inc., who built the plaintiffs'
12          homes.
13                 Again, this document is another
14          one of those that was newly produced
15          to us in January of 2019, everything
16          except for the TG-PID-00079, which is
17          the Bates number, and the red circle
18          in the middle, that was how it was
19          produced to plaintiffs who received a
20          version that did not have the English
21          red lettering and a version that had
22          the English red lettering, which is
23          the translation of each of the various
24          parts of this invoice.
25                 When we talked to Mr. Che about
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 180 of 343
Case 1:11-cv-22408-MGC  Document 299  Entered on FLSD Docket 04/29/2013  Page 150 of
281
March 11, 2019

```
 1          this invoice, we asked him why it
 2          wasn't produced until now.  Where was
 3          it from, what are we showing?  Because
 4          Run & Fly Jinan is not a company that
 5          is new to some of the arguments in
 6          this litigation.
 7                Mr. Che explained that this
 8          type of invoice for Taishan is known
 9          as a domestic invoice.  It's domestic
10          and they keep it -- it came from a
11          book or what appears to be sort of a
12          ledger book that has a carbon copy
13          that you flip through, write on one
14          page, flip to the next page, fill it
15          out, flip to the next page.  We only
16          received this one page as part of the
17          deposition production in 2019.
18                So why does it matter?  Why
19          were we all excited as plaintiffs when
20          we got this document?  We got this
21          document because, as I mentioned
22          earlier, Taishan to Run & Fly, Run &
23          Fly to Manchester Holdings.
24                We know from Manchester
25          Holdings' documents that they had a
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 181 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 151 of 281
March 11, 2019

1    packing list of drywall that came from

2    Run & Fly Jinan New Materials.  We

3    further know that Manchester sold that

4    drywall they purchased to Stock

5    Building Supply Inc.

6         Now, let's back up and see why

7    we care.  This is why we care.  The

8    volume here on the invoice produced by

9    Taishan is extremely important because

10   it is a precise number, 9,936 pieces,

11   which we can take to mean sheets, of

12   drywall.  If we take 598 plus 9338, we

13   get 9,936 pieces of drywall.

14        We have the Taishan invoice

15   going to Run & Fly.  Run & Fly

16   invoicing Manchester Holdings for the

17   same amount of gypsum board.

18        And then finally, coming in

19   through Georgia to Manchester-in-Home

20   and eventually to Stock Building

21   Supply, who built the homes, we have

22   this same 9,936 sheets of drywall,

23   country of origin is China.

24        Now, ProWall is another one of

25   those -- another one of these buckets

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 182 of 343
Case 1:11-cv-22408-MGC  Document 299  Entered on FLSD Docket 04/29/2019  Page 152 of
281
March 11, 2019

1       that we're going to hear about how

2       ProWall was manufactured by some other

3       folks and certainly not Taishan's, you

4       guys can't show it, and the like.

5               But again, we have traced this

6       distributor -- or the builder to the

7       distributor to the importer to the

8       maker for this drywall of 9,936

9       sheets.

10              Manchester asked where are we

11      getting this drywall?  Where is this

12      drywall coming from?  Who is your

13      manufacturer?  Let me know.

14              Manufacturer gets the response:

15      The full postal address of our gypsum

16      board manufacturer is as follows:

17      Headquarters, Shandong Taihe

18      Dongxin Co., Ltd.  That is the Taishan

19      that we've been talking about today.

20      That is the company that manufactured

21      the drywall that Manchester sold to

22      Stock Building Supply.

23              ProWall has markings that say

24      MADE IN CHINA MEETS ASTM with various

25      standards, with the C36 and the slash

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 183 of 343
Case 1:11-cv-22408-MGC Document 295 Entered on FLSD Docket 04/29/2019 Page 153 of 281
March 11, 2019

1    C1396.  These are relatively clear

2    markings in the homes.

3         So we have the plaintiff's

4    home -- or the product ID catalog

5    photo that shows that we have ProWall.

6    The reason they're in this category

7    specifically is the tape the Pro and

8    the capital W for the Wall and the

9    marking, all because we're able now in

10   2019 to receive an invoice from

11   Taishan that shows the 9,936 pieces of

12   drywall.

13        Now, Taishan's corporate

14   representative again did say the

15   reason that this board did not make it

16   to their Manufacturer Profile Form is

17   because that is the type of invoice

18   they use for domestic sales and

19   therefore didn't make it to the

20   Manufacturer Profile Form, and that's

21   why we don't see Taishan ProWall on

22   their Manufacturer Profile Form,

23   because it isn't what they would call

24   a VAT invoice, which is how they

25   suggest they put together their

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 184 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2013 Page 154 of 281
March 11, 2019

```
 1          Manufacturer Profile Form.
 2               But again, we don't have
 3          everything they used to support their
 4          Manufacturer Profile Form, so we're
 5          using the connection of Taishan to
 6          Run & Fly, Run & Fly Chinese domestic
 7          corporation shipped it to
 8          Manchester Holdings.
 9          Manchester Holdings sells it to Stock
10          Building Supply to build the homes
11          with the 9,936 sheets of drywall that
12          they purchased through the chain from
13          Taishan.
14               MS. EIKHOFF:  All right,
15          Ms. Lee, we are at slide 18.
16               So when I start talking to you
17          about the ProWall category, I want to
18          introduce to you a theme, and it's a
19          theme that we see throughout what the
20          plaintiffs have presented today, but
21          it's particularly pronounced in this
22          category.
23               And the theme is to just look
24          through a very small scope, something
25          that they say points to Taishan and
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 185 of 343
Case 1:11-cv-22408-MGC   Document 299 Entered on FLSD Docket 04/29/2019   Page 155 of
281
March 11, 2019

```
 1          ignore the rest of the story.  Ignore
 2          that there are other manufacturers out
 3          there, ignore that there are other
 4          documents out there.
 5               They present you with a single
 6          transaction and they have a theory
 7          that it somehow connects Taishan to
 8          the boards at issue and say just look
 9          at that, ignore other manufacturers,
10          just assume that Taishan made all of
11          this.
12               And in this case, it is
13          particularly pronounced because the
14          plaintiffs are not only saying that
15          Taishan made ProWall boards.  They are
16          also saying that BNBM made ProWall
17          boards, but not the ProWall
18          attributable to Taishan.
19               We have no idea what ProWall
20          they say is attributable to Taishan
21          versus attributable to BNBM, but I
22          will tell you that their theories of
23          attribution are mutually exclusive.
24          They're completely different stories.
25               And so in a few weeks, when you
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 186 of 343
Case 2:11-cv-22408-MSC-EEF-MBN Document 295 Entered on FLSD Docket 04/29/2019 Page 156 of 281
March 11, 2019

```
 1          hear their presentation attributing
 2          ProWall to BNBM, there's not going to
 3          be any mention of Manchester or any
 4          mention of Jinan Run & Fly or Stock
 5          Building Supply or any of these
 6          documents that they've just shown you.
 7               There's a whole different set
 8          of documents and there will be a
 9          different flowchart involving
10          different players and different
11          documents; Great Western Building
12          Materials, ProWall Building Products.
13               So before I get started, and we
14          will show you that we can identify and
15          have identified another manufacturer
16          that is responsible for the ProWall
17          boards that they've shown you, I would
18          submit to the special master that it
19          would not be appropriate for the
20          special master to make a decision
21          based on this set of evidence for
22          Taishan until she has also seen the
23          competing theory attributing it to
24          BNBM.  Because if you've already made
25          a decision as to Taishan and then
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 187 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2013 Page 157 of 281
March 11, 2019

1    you'll be presented with alternative

2    evidence attributing it to BNBM, the

3    special master will not have all of

4    the relevant evidence before her to

5    make this decision.

6         So I would ask that on this

7    particular category, because they're

8    attributing it under two different

9    theories to two different defendants,

10   that the special master reserve her

11   final ruling on this category.

12        I don't know why that's coming

13   up a little fuzzy, but the question

14   before the special master in this

15   category is:  Did Taishan make the

16   boards with these unique ProWall

17   markings?  These are what identify

18   these boards as ProWall, spray

19   markings that say ProWall GYPSUM BOARD

20   or end tape that says ProWall.  And I

21   don't know why that's coming up

22   pixillated on the screen, but I

23   believe on your copy it's clear.

24        Unlike their theory for

25   IMT Gypsum, where they say, oh, the

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 188 of 343
Case 1:11-cv-22408-MGC-EEF Document 299 Entered on FLSD Docket 04/29/2015 Page 158 of 281
March 11, 2019

1    word "IMT Gypsum" shows up somewhere

2    on the MPF, so let's just assume

3    anything with that word is Taishan's,

4    the word "ProWall" shows up nowhere in

5    Taishan's documents; not in any

6    e-mails they've produced, not in any

7    correspondence, not in the MPF,

8    nowhere.  No connection whatsoever to

9    ProWall.

10        And so how have the plaintiffs

11   come up with an explanation that would

12   attribute ProWall to Taishan?  Well,

13   once again, they're relying on

14   speculation and gap-filling in trying

15   to tie these products to Taishan

16   through a common buyer.  And in this

17   case the common buyer is Jinan Run &

18   Fly.  That's the common buyer.

19        But in this case, and I'm about

20   to lay this out in a little more

21   detail, the other manufacturer that is

22   being ignored is Tai'an Kang Yi Jia, a

23   competing drywall manufacturer also in

24   Taian, the same area of Taishan's

25   manufacturing facilities.

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 189 of 343
Case 4:11-cv-22408-MGC-EEF-MBN Document 299 Entered on FLSD Docket 04/29/2019 Page 159 of 281
March 11, 2019

1            Now, plaintiff's theory of

2        attribution rests on Taishan's single

3        sale of blank board with unmarked

4        white edge tape to Jinan Run & Fly.  I

5        want to be clear, we do not dispute

6        that that transaction occurred.

7            So lining up the 9,936 on our

8        invoice and the 9,936 on the other

9        e-mails, we agree that there was a

10       Taishan transaction with Jinan Run &

11       Fly.  But the documents tell the rest

12       of the story.

13           So on the same e-mail at Tab 53

14       of the plaintiff's exhibit, where the

15       plaintiff circled this is the address

16       where it came from, that's true.  That

17       is the address where that shipment

18       came from.  If you look at page 3 of

19       4 -- I'm sorry, it's one of their

20       exhibits, but, yes, if you look at

21       page 3 of 4 of their Tab 53 document,

22       the e-mail talks about --

23           Yes, I'll show it to you, and

24       can I get my glasses so I can see it?

25       Thank you.

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 190 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 160 of 281
March 11, 2019

1        And I'll show it to you,

2    Ms. Lee.  In view this is going to be

3    the first order we don't want to mess

4    up, a trial order, quantity of 10,000

5    sheets.  10,000 is approximately

6    9,936.  They say where is it coming

7    from.  They say it's coming from

8    Taishan.

9        Taishan did a blank unmarked

10    trial order for Jinan Run & Fly which

11    looks like it was going to be shipped

12    forward through Manchester and Stock

13    and eventually to ProWall.

14        But then what happened after

15    this very small trial order?  Mr. Che

16    testified that Jinan Run & Fly thought

17    that Taishan was too expensive and so

18    they turned to the competitor, Kang Yi

19    Jia.  Kang Yi Jia is also in the Taian

20    region.

21        And plaintiffs' counsel used to

22    have a document that they used as part

23    of their ProWall story that is a Jinan

24    Run & Fly production run from

25    May-June 2006 showing that someone

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 191 of 343
Case 1:11-cv-22408-MGC-EEF-MBN Document 259 Entered on FLSD Docket 04/29/2019 Page 161 of 281
March 11, 2019

 1          made 55,440 boards, and those boards,

 2          that later bigger order, the nontrial

 3          run order, that production run

 4          specifies that those boards were on

 5          steel pallets and had ProWall tapes.

 6               So there was a subsequent order

 7          specified with ProWall markings after

 8          the initial trial run with Taishan,

 9          which was the only run they ever did,

10          and those boards were blank.

11               Now, Taishan -- I'm sorry.

12          ProWall is apparently a building

13          materials company, and that part of

14          the story they're going to tell you

15          later when they unroll their theory

16          attributing these boards to BNBM.

17               But what happened in this case,

18          when you take off the myopic blinders

19          that just say I just want to look at

20          Taishan, what you see is a bigger

21          story, that there was an undisputed

22          trial run of blank boards by Taishan,

23          but that the rest of the order was

24          made by a competitor with ProWall

25          tapes, and therefore, we do not

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 192 of 343
Case 2:11-cv-22408-MCE-EEF Document 259 Entered on FLSD Docket 04/29/2019 Page 162 of 281
March 11, 2019

1        believe that this one transaction

2        translates into Taishan is the

3        manufacturer of everything with

4        ProWall markings on it.

5              SPECIAL MASTER LEE:  Is the

6        e-mail that you showed me the same

7        e-mail that's on page 62 of their

8        PowerPoint?

9              MS. EIKHOFF:  Yes, the one with

10       the address?  Yeah, it's the page 3 of

11       that same e-mail.

12             MS. ROBERTSON:  Quickly, one

13       thing I do want to clear up real

14       quick.  We didn't remove any evidence

15       not represented in our brief.  I

16       believe it's at Tab 50 and it's the

17       stock defendant -- or Distributors

18       Profile Form.  I think that's what

19       you're referring to as far as that.

20             To the extent you were

21       referring to something else, I

22       apologize.  I believe we just felt

23       that Tab 50 accomplished that.

24             But nonetheless, the point is

25       this:  I'm not asking you to assume

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 193 of 343
Case 1:11-cv-22408-MGC Document 295-1 Entered on FLSD Docket 04/29/2015 Page 163 of 281
March 11, 2019

1    anything.  There's no reason to delay

2    the ProWall bucket as it relates to

3    Taishan.  This ProWall, this Florida

4    ProWall has nothing to do with BNBM.

5    BNBM doesn't -- it has no part in this

6    discussion.

7         What I am asking -- what I am

8    telling you is that it is clear with

9    this number of this 9,936 pieces, as

10   we pop out here, we have ProWall

11   sheetrock and then 9,936.

12        So as we've done so frequently

13   in this case throughout the years, we

14   have gone and pored through various

15   different records to piece together

16   the evidence to tie the drywall in

17   plaintiffs' homes to Taishan.

18        This is a precise and specific

19   example of what you would do in a

20   products liability case to establish

21   the entire supply chain, and that was

22   done here for the 9,936 boards that we

23   find in Florida homes that have the

24   ProWall marking.

25        My understanding is that this

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 194 of 343
Case 1:11-cv-22408-MGC Document 259 Entered on FLSD Docket 04/29/2019 Page 164 of 281
March 11, 2019

1    ProWall with the capital W here, this

2    marking, this board from PID catalog

3    photo 44, is not going to come up in

4    the BNBM/ProWall argument at all.

5         We contend that this marking,

6    this language, this tape is Taishan.

7    This will not be discussed with BNBM.

8         SPECIAL MASTER LEE:  Can you

9    just go back to slide 60?

10        MS. ROBERTSON:  Yes.

11        SPECIAL MASTER LEE:  What is

12   the date on that packing list?

13        MS. ROBERTSON:  That's

14   March 23rd.

15        MR. SERPE:  It is March 23.

16        SPECIAL MASTER LEE:  Okay.  And

17   this is the packing list from Run &

18   Fly to Manchester Holdings?

19        MS. ROBERTSON:  Yes.

20        SPECIAL MASTER LEE:  So I guess

21   my question is:  Why is that packing

22   list dated before the one on 59?

23        MS. ROBERTSON:  This May 5 one?

24   And I think that's a very good

25   question.  I think what we often found

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 195 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 165 of 281
March 11, 2019

```
1        and that we see with a lot of the
2        other documents, whether it's the
3        statistical spreadsheet, the
4        Manufacturer Profile Form, the packing
5        list, the invoices, the export
6        materials, the dates do vary every
7        once in a while until everything goes
8        through.
9             I will definitely tell you,
10       Special Master, we did not talk to
11       Run & Fly Jinan.  We didn't.  So a
12       precise answer for you is probably
13       inappropriate for me to give.
14            But we do have varying dates
15       depending on whether it's a packing
16       list, an invoice, an export list.  And
17       these were the pieces we were able to
18       find and establish.
19            SPECIAL MASTER LEE:  So you
20       have varying dates even with other --
21       in other transactions, not just this
22       one?
23            MS. ROBERTSON:  Yes, correct.
24            SPECIAL MASTER LEE:  Okay.
25            MS. EIKHOFF:  If I may just
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 196 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2015 Page 166 of
281

March 11, 2019

```
 1        state for the record that the document

 2        that we were relying on for the 55,440

 3        boards with ProWall tapes that we

 4        referred to is in the Defendant

 5        Taishan's appendix at 55.

 6              MS. ROBERTSON:  I am going to

 7        sit down, and I believe my colleague

 8        is going to go, but I think maybe we

 9        want to do a short break, if that's

10        possible.

11              SPECIAL MASTER LEE:  Sure.

12        Take five minutes.

13              (Recess taken, 1:35?p.m. to

14        1:42?p.m.)

15              MS. SCHWAB:  So as we discussed

16        earlier, this is a bucket that is

17        admitted.  We are going over this only

18        to discuss the markings that have been

19        found on boards with edge tape, and as

20        we alluded to earlier, edge tape, the

21        practice is for it to be removed.  So

22        it's very important that we review the

23        markings on the boards because most of

24        the time the edge tape is no longer

25        there.
```

March 11, 2019

```
 1              So this is just to discuss
 2         how -- this is the edge tape.  I
 3         believe Ms. Eikhoff reviewed it
 4         earlier.  It's teal, it's Taihe.  I
 5         can't read Chinese characters but I
 6         will take the representation that it's
 7         the company's name.  And it is
 8         identified in the Manufacturer's
 9         Profile Form as Taishan edge sealing
10         tape.
11              This is a recap that Taishan
12         admits to this bucket, but because the
13         edge tape is removed, that's why it's
14         so important; that's why we are going
15         over this.  And any markings on boards
16         with edge tape, whether it's still
17         there in present day or whether it has
18         been removed, is critical and should
19         be admitted as well.
20              So this is a picture that
21         Taishan has admitted to the edge
22         sealing tape.  As you will see, I have
23         circled it in red.  That is admitted.
24              But what you also see is right
25         to the left of the beam is a date.  I
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 198 of 343
Case 2:11-cv-22408-MGC  Document 259  Entered on FLSD Docket 04/29/2019  Page 168 of
281
March 11, 2019

 1           believe that's 214491 is what it says.

 2           However, Taishan, in the deposition,

 3           Mr. Che Gang said -- and Taishan in

 4           its brief said:  The photo category

 5           includes additional numerical markings

 6           that are not consistent with Taishan's

 7           records.

 8                So if we had this marking

 9           without the Taishan tape, this would

10           be denied because it is not consistent

11           with Taishan's records.

12                However, because this claimant

13           was lucky and had the number, the

14           numerical marking and edge sealing

15           tape, it was admitted.  And there's a

16           few other examples like this.

17                Again, this is just a picture

18           with just the numbers, no marking.

19           This would be denied.  Here's another

20           one.  This is a better picture, and I

21           will represent to you that this photo

22           on the bottom of the edge tape, which

23           is the top of the Taihe edge tape, was

24           found on the same board, but to get a

25           better picture, I broke it into two

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 199 of 343
Case 3:11-cv-22408-MCG-EEF Document 299 Entered on FLSD Docket 04/29/2019 Page 169 of 281
March 11, 2019

```
 1            pictures, but this is the same board.

 2                 And this is admitted because

 3            the plaintiff was lucky and had the

 4            Taihe tape as well as the numerical

 5            marking.

 6                 But again, it's Taishan's

 7            position that they did not manufacture

 8            boards with numerical markings.  So

 9            unless the claimant had Taihe edge

10            tape, that would be denied.

11                 So that is all that I want to

12            say about that category, if you want

13            to respond.  Keep going?

14                 SPECIAL MASTER LEE:  I have a

15            question:  The numbers, what do the

16            numbers represent?  Are they lot

17            numbers or something else?

18                 MS. SCHWAB:  I believe that we

19            call them batch numbers.  We don't

20            know.  We call them batch numbers, and

21            I believe my colleague would like to

22            respond.

23                 MS. ROBERTSON:  Quickly, we

24            have one document that was part of the

25            sales plan notification bundle that's
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 200 of 343
Case 1:11-cv-22408-MGC   Document 299 Entered on FLSD Docket 04/29/2019   Page 170 of 281
March 11, 2019

1     at Tab 15 to our PID brief -- wait, I

2     apologize, it was a -- we have a

3     notification of collaboration of

4     drywall.  We attached this to our

5     brief.

6             And it's a one-sheet paper

7     where Taishan is essentially

8     subcontracting or outsourcing some of

9     its manufacture of drywall, and the

10    specific requirement, like we saw that

11    one thing says specific requirement,

12    that one document shows the specific

13    requirement was to have a work shift

14    stamp on the board.

15            So that's really the only piece

16    that we have that explains this date,

17    time and some particular number.  I

18    think there was potentially one other

19    piece of evidence.  I'll look up both

20    for you, Special Master, so you have

21    it.  I'll also give it to the

22    defendants, to the extent it's not in

23    our brief, but I'm pretty sure it is,

24    that potentially the other numbers

25    could have been a sheet number, but I

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 201 of 343
Case 2:11-cv-22408-MGC Document 259 Entered on FLSD Docket 04/29/2019 Page 171 of
281
March 11, 2019

1    think after giving that -- seeing the
2    document, we thought it was a work
3    shift time stamp.
4         And we'll provide those to both
5    sides, but I think you know what I'm
6    talking about.
7         MS. EIKHOFF:  Yeah.  And I will
8    be happy to respond on this.  We did
9    not expect this to be a topic for
10   today, but I'll be happy to state
11   Taishan's position on it for the
12   record.
13        Taishan, as I said at the
14   outset, does admit and has admitted to
15   the category that is Taihe edge tape
16   with its unique brand, with its --
17   with its name on it and its unique
18   markings on it.  That is not in
19   dispute.
20        And so when the plaintiffs say,
21   oh, but if there's just numbers on a
22   board without the tape, then they're
23   not admitting it.  That's right.
24   Because if you just show a board with
25   numbers on it, there's nothing from

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 202 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2013 Page 172 of 281
March 11, 2019

1          that picture that can positively

2          identify that as Taishan's product.

3                And as we've been saying all

4          day today, Taishan was not the only

5          manufacturer in this space and other

6          manufacturers could just as easily

7          make drywall board with numbers on it.

8                So if there is Taishan's unique

9          branding indicia, then yes, it is a

10         category that we've admitted.  It is

11         not a surprise that if there's not

12         Taishan's unique branding indicia that

13         we're not admitting it.

14                We're not just admitting that

15         any board they show that has numbers

16         on it is Taishan's board.

17                And my colleague,

18         Mr. Venderbush, is going to be talking

19         more about this whole category that

20         we're about to move into of generics,

21         where there are generic markings like

22         numbers, like MADE IN CHINA stamps on

23         boards that we cannot be in a position

24         to say that we admit all of them are

25         ours, because they aren't all ours.

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 203 of 343
Case 2:11-cv-22408-MHC-EEF-MBN Document 299-1 Filed 04/29/2014 Page 173 of 281
March 11, 2019

1          MS. ROBERTSON:  So quickly,

2     Special Master, apologies.  It's

3     Tab 34 to our PID brief.  The title of

4     the document is Notification of

5     Collaborative Processing.  It was

6     produced by Taishan at TG0211714.

7          MS. SCHWAB:  And, Your Honor, I

8     just want to make one note.

9     Ms. Eikhoff said anybody can produce

10    these -- these boards with just

11    numbers without the edge tape.  So

12    without the edge tape, their position

13    would be that they would deny it.

14         I think that this is a good

15    representation of where the tape is on

16    the board.  It's on the side that's

17    perpendicular to the markings, and so

18    if the marking is in the middle of the

19    board, the chances that you get the

20    tape and the marking are slim to none.

21         So unless you have a photo of

22    the entire board -- unless you have a

23    photo of the entire board, which would

24    only be if the claimant remediated and

25    took out the walls or was willing to

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 204 of 343
Case 1:11-cv-22408-MGC ECF Document 253 entered on FLSD Docket 04/29/2019 Page 174 of 281
March 11, 2019

1    have their entire home destructed,

2    then you wouldn't get this entire

3    picture.

4           So chances are you would get a

5    bore scope hole, which is just a small

6    hole and a camera can go up the small

7    hole inside the wall cavity and you'd

8    just get the numbers and not the edge

9    tape.

10          So the next category is MADE IN

11   CHINA MEETS OR EXCEEDS.  And the

12   reason why the S's are in brackets

13   will be explained as we go through

14   this bucket.

15          So to begin, Taishan in its

16   Manufacturer Profile Form admits to

17   manufacturing 482,435 sheets of

18   drywall with MADE IN CHINA MEET OR

19   EXCEED ASTM C1396 04 standard

20   markings.

21          Now, it's important to note

22   that it just says MEET OR EXCEED.

23   Both of them are singular.  And also

24   with white edge sealing tape.

25          Taishan also admits to

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 205 of 343
Case 2:11-cv-22408-MGC EDF Document 299-1 Entered on FLSD Docket 04/29/2014 Page 175 of 281
March 11, 2019

1       manufacturing 244,120 sheets with the

2       same MADE IN CHINA MEET OR EXCEED,

3       singular, with Taishan edge sealing

4       tape.  That's the Taihe teal tape that

5       we looked at earlier.

6            So there are, in this bucket, I

7       will call it, four different font

8       variations.  The first one -- this

9       picture looks a little grainy, but

10      it's like triple dot.  The second one

11      is single dot.  The third one is --

12      it's not really dotted at all.  And

13      the last one, again, not dotted, but

14      it's -- the font differences, you can

15      see in the A primarily and the D.

16           So let's look at the first one

17      that's number 15.  So this is a better

18      picture that you can see.  It's a

19      triple dot, is what I will call it.

20      And Taishan, in their position paper,

21      says they do not -- they do not deny

22      that products -- that boards with this

23      marking is theirs.  So that takes care

24      of the first font variation.

25           The second font variation,

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 206 of 343
Case 4:11-cv-22408-MGC-EEE Document 299 Entered on FLSD Docket 04/29/2019 Page 176 of 281
March 11, 2019

1        these are the residual boards that

2        Your Honor asked about earlier that

3        were found in 2018, and there are two

4        variations.  The first one is MADE IN

5        CHINA MEET OR EXCEEDS ASTM.  The

6        second one is MADE IN CHINA MEET OR

7        EXCEEDS, again, ASTM.  Both of the

8        MEET is singular, and both of the

9        EXCEEDS is plural.

10              The difference is in the font.

11       It's very minuscule, but they are

12       different.  And as you will see, the

13       top one takes care of the second

14       marking for font variations, and the

15       bottom one takes care of the font

16       variation at the third entry right

17       there, so we can check off both of

18       those font variations.

19              Now, the last one, Taishan has

20       not admitted and did not find any

21       residual boards.  However, we found

22       this board in one of the claimants'

23       homes in Florida who has remediated.

24       And as you'll see, it's the same

25       marking with the pointed A and it's

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 207 of 343
Case 2:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 177 of 281
Mar 11, 2019

```
1        MADE IN CHINA dot.  There's not a
2        space in between CHINA and MEETS.  But
3        as you'll see on the right-hand side,
4        the Taihe edge tape.  There's some
5        other Taihe edge tape, you can see
6        some above, but I have it circled
7        right here; and which is important
8        because -- we will review this in a
9        second, but for right now I will just
10       note that the font for this, we had
11       the Taihe edge tape, and that font,
12       Taishan would have admitted this
13       because of the Taihe edge tape;
14       however, if the edge tape was not
15       present, then it would have been
16       denied.
17            But I would represent to you,
18       Your Honor, that this -- that this
19       photo shows that they also
20       manufactured boards with this type of
21       font, so we can put a check on the
22       last one.
23            Now, this is a good
24       side-by-side comparison because at the
25       catalog which is at Tab 3 to the
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 208 of 343
Case 2:11-cv-22408-MGC Entered on FLSD Docket 04/29/2019 Page 178 of 281
March 11, 2019

1    plaintiff's product ID brief, photo 20

2    and photo 21 look nearly identical.

3    The only difference is that Taishan

4    has admitted to photo 20, but has

5    denied photo 21.

6         And why is that?  It's because

7    this is MEETS, plural, and the top,

8    photo 20 is MEET, singular.

9         Same thing for 17 and 18.

10   Identical font, identical words,

11   except for the top one is singular,

12   Taishan has admitted to it.  The MEET

13   is singular, and the bottom one,

14   Taishan has denied because it's MEETS,

15   plural.

16        Now, Your Honor, I would remind

17   you that the Manufacturer Profile Form

18   says MEET OR EXCEED, both singular.

19   Nowhere does it say MEET OR EXCEEDS,

20   plural.  It's only until the residual

21   boards were found in 2018 that Taishan

22   started to admit these boards.

23        They -- back in 2011, they

24   claimed that they had insufficient

25   evidence to admit or deny that they

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 209 of 343
Case 1:11-cv-22408-MGC Document 259 Entered on FLSD Docket 04/29/2019 Page 179 of 281
Mar. 11, 2019

```
 1          manufactured these boards, but in
 2          2018, whenever they were found with
 3          the MEET OR EXCEEDS, plural, they were
 4          now admitted to.
 5                  And I'd just like to point one
 6          other thing out for this picture that
 7          we saw earlier.  Again, edge tape,
 8          different kind of font that's found at
 9          photo 19 of the catalog.  There's
10          MEETS, MEETS OR EXCEEDS.  Both
11          MEETS -- both plural, which Taishan
12          claims they did not manufacture any
13          boards with MEETS, plural.  And also,
14          this is a date stamp or work shift
15          number also on this board.
16                  Mr. Che Gang was asked in his
17          deposition -- we saw this slide
18          earlier -- about whether -- which is
19          correct.  You found the residual
20          boards in 2018 that say MEET OR
21          EXCEEDS plural, but the Manufacturer
22          Profile Form says MEET OR EXCEED, both
23          singular.  Which one is correct?  You
24          can't have it both ways.
25                  And his response, and I will
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 210 of 343
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/29/2014 Page 180 of 281
March 11, 2019

```
1     read it as Ms. Eikhoff alluded to
2     earlier with the errata, says:  I
3     believe the Manufacturer Profile Form
4     created by Mr. Peng is correct, but
5     it's possible that it's not very
6     precise.  It did not pay attention to
7     small details such as the changes
8     between plural and singular forms.
9          And this is unfortunate because
10    this is such a big issue in the
11    plaintiffs' homes because a lot of
12    plaintiffs in Florida have variations
13    of drywall, and we don't have the
14    information from the printers from
15    Taishan, we don't have the records, we
16    don't have any of that.
17         So if we can't rely on the
18    Manufacturer Profile Form and can only
19    rely on Taishan's residual boards that
20    they luckily found, our hands are
21    tied.
22         So we believe that we have put
23    forth enough to show that Taishan
24    manufactured boards with MEETS OR
25    EXCEEDS, MEET OR EXCEEDS, and all of
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 211 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 181 of 281
March 11, 2019

```
1         the four font variations.
2              MR. VENDERBUSH:  So I think
3         we're going to slide 23.  So now we're
4         into the first of the two generic
5         categories, and I just want to reframe
6         the table that we're looking at
7         specific categories here, and we have
8         admitted to this where we found the
9         residual boards in our factory, so we
10        know that we made those, but these
11        other ones are different.
12             And given what you've heard
13        today and given what we know about the
14        market conditions in this time and
15        other manufacturers were out there and
16        other manufacturers were making boards
17        and other manufacturers were making
18        generic boards, that it does not
19        automatically flow that every board
20        with a generic marking was
21        fortuitously made by the only
22        manufacturer that plaintiffs continue
23        to pursue in this litigation when they
24        named other manufacturers and chose
25        not to pursue them.
```

March 11, 2019

1           That's what they are asking you

2       to presume, that they're all made by

3       Taishan because we're the only ones

4       here before you, and that doesn't

5       logically flow.

6           So it's not about a

7       presumption.  It's about -- I'll just

8       touch on their legal burden again --

9       that plaintiffs have to prove each of

10      the markings that we're talking about.

11      It's not just an, oh, MADE IN CHINA,

12      throw it all to Taishan.

13          My understanding, the special

14      master has to make a determination as

15      to each of the catalog pictures that

16      the parties have agreed to and make a

17      specific finding that plaintiffs have

18      met their burden of proof to tie that

19      specific finding, one by one, to

20      Taishan.

21          And some of the pictures that

22      they've showed you today from specific

23      claimants' houses then also show how

24      important it is that we're going to

25      have another step that's claim

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 213 of 343
Case 1:11-cv-22408-MGC-ECF Document 259-1 Entered on FLSD Docket 04/29/2019 Page 183 of
281
March 11, 2019

 1    specific to say what is it that that

 2    picture shows?  Does it show enough?

 3    Because we've seen that we then have

 4    issues about what is the level of

 5    claim-specific proof to tie any

 6    claimant to a category that you found

 7    to be sufficient or that Taishan has

 8    admitted to.

 9            So we think that is going to be

10    a step in this process when we get

11    down to a claim-specific objection

12    level in the future.

13            So I ask the special master to

14    require them to have the greater

15    weight of the evidence, not just to

16    make a presumption because they're

17    claiming that there are proof

18    problems.

19            And so here's where it's

20    important to go back to the myth of

21    only the two manufacturers.  And we've

22    showed you this chart before, that we

23    were at, at most, 30% of this market.

24    And remember, this is -- the equities

25    here have been a little skewed so far,

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 214 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 184 of 281
March 11, 2019

```
 1          because we have admitted when we found
 2          the residual board, and even before
 3          that in the MPF, back in 2011.  It's
 4          not that we were denying that we made
 5          board with some generic mark.
 6               We said that we did make some
 7          board with generic mark, and that was
 8          the question presented to us by
 9          Judge Fallon as the MPF exercise.  But
10          consistent with our understanding of
11          the market was that we hadn't made
12          every board with generic mark.
13               So that was the distinction we
14          were trying to draw in our MPF and
15          which we are still trying to draw to
16          this day, that it is not a binary
17          choice between did Taishan make all
18          generic board, did Taishan not make
19          all generic board.
20               We have accepted responsibility
21          for 128 of the 266 claims in the
22          generic board super-category that has
23          five subcategories that you have to
24          make five separate -- or not only --
25               MS. EIKHOFF:  Four.
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 215 of 343
Case 1:11-cv-22408-MGC  Document 299 Entered on FLSD Docket 04/29/2019  Page 185 of
281
March 11, 2019

1                MR. VENDERBUSH:  -- four now.

2           So the plaintiffs have ignored

3      all the other manufacturers when they

4      give you their presentation.  They

5      sued those manufacturers and they

6      didn't pursue them, and so we don't

7      have the discovery on what -- on what

8      their boards would have looked like.

9           And I want to suggest that it

10     makes sense -- it makes more sense

11     that Taishan did not make every

12     generic board that is in Florida, that

13     it makes much more sense, if you're

14     going to make a presumption, that

15     Taishan did not make every board

16     that's in Florida.

17           Because you've heard people

18     touch on it at the time -- or today,

19     but at the time, this was an

20     incredibly chaotic market and time

21     because for the -- there was a huge

22     drywall shortage.  People for the

23     first time were trying to source

24     drywall from other places, and it was

25     almost like drug dealing, right?  A

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 216 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2014 Page 186 of 281
March 11, 2019

```
1        guy heard about a guy who could get

2        you some drywall from China and I need

3        some drywall.

4            So people were scurrying

5        around, and you've gotten a sense of

6        that in the documents today.  Hey, I'm

7        sending you this random e-mail, and

8        maybe we documented it, maybe we

9        haven't, and so where can I find some

10       drywall?

11           And so people were asking --

12       and this was not a market that had

13       been put together before.  People were

14       making it up as they were going along,

15       and Taishan was making it up as it was

16       going along too because they had not

17       been in the export to America market

18       before this, which explains many of

19       the practices you've heard today.

20           This was new territory for

21       Taishan, and Taishan now doesn't sell

22       to the United States.  This was a

23       finite period in 2006 to 2007 that

24       Taishan, because of market conditions,

25       was drawn into the United States
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 217 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 187 of
281
March 11, 2019

 1          market.

 2                And so that is why they didn't

 3          have a manual for foreign sales,

 4          because they had never done it before.

 5          But now suddenly people were

 6          clambering.  And you saw -- you know,

 7          IMT went to all the different people

 8          in China to try to get some drywall

 9          because we're -- it's a housing boom

10          and we're repairing from all the

11          hurricanes.  We can make money if we

12          can get some drywall.  And so that's

13          what's happening here.

14                And the shipping -- so the

15          shipping records show it.  We've also

16          cited you to the Devon Trading Company

17          testimony where the Devon

18          representative states that customers

19          were specifically requesting generic

20          markings.

21                Do you have that cite there?

22                MS. EIKHOFF:  There's a lot of

23          different record citations, but they

24          are all laid out on pages 39 and 40 of

25          our PID brief.

March 11, 2019

```
 1              MR. VENDERBUSH:  Thank you.
 2          So that's really important,
 3      that this was a mark that -- because
 4      people were getting drywall from
 5      sources that they had never gotten it
 6      before, because you have the
 7      manufacturer.  Then you have these
 8      brokers and importers who are getting
 9      the drywall, and then they sell to
10      their customers, who are usually the
11      suppliers.
12          So they want to have something
13      that they can represent, right?  They
14      don't want to have Chinese characters
15      over all of it, they don't want to
16      have Chinese names.  So this generic
17      marking that meets minimum standards
18      for them that says MADE IN CHINA, that
19      says that it meets or exceeds the ASTM
20      American standard, that would be good
21      for them.
22          And they asked for that, and so
23      that's what they could sell to
24      suppliers.  Because it wasn't going to
25      say U.S. Gypsum on it, which was, you
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 219 of 343
Case 1:11-cv-22408-MGC Document 259 Entered on FLSD Docket 04/29/2013 Page 189 of 281
March 11, 2019

1      know, the usual domestic companies

2      that brokers would sell to suppliers.

3      It was new, and so it's this generic

4      product.  You wanted drywall?  I've

5      got drywall for you.

6             So that's where this generic

7      market comes from, and so importers

8      were asking different people to --

9      different manufacturers in China to

10     make it that way so they could resell

11     it, and those are the examples that

12     are on those, 38 and 39.

13            So they're making a big deal

14     out of the MPF, whether it has --

15     where we said MEET OR EXCEED, and that

16     that somehow proves or disproves

17     something.  It sort of gets used both

18     ways.

19            But I just want to sort of take

20     the attention off of that, because

21     when Mr. Che testified that -- this is

22     a discussion between accurate and

23     precise.

24            And I think it's when Mr. Peng

25     put that together, these are peoples

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 220 of 343
Case 2:11-cv-22408-MGC-EEF-MBN Document 259-1 Entered on FLSD Docket 04/29/2019 Page 190 of 281
March 11, 2019

1      who are native Chinese speakers, and

2      they're being asked to fill out

3      American documents, and so the sort of

4      variation is understandable, really.

5              So -- and actually, the

6      plaintiffs themselves mention it.

7      It's footnote 208 in their brief,

8      which is on page 46.  And they say

9      it's not a stretch that a Chinese

10     manufacturer operating in a foreign

11     language would make a grammatical

12     error.

13             So it's -- the MPF is not that

14     it included an S or it doesn't include

15     an S.  We relied on what we saw in our

16     board, right, the board that we found

17     in our factory.  And so that had the

18     MEET OR EXCEEDS, and that's what we

19     based our admission on.

20             So I want to close with the

21     idea that we do not presume that every

22     single MADE IN CHINA is Taishan just

23     because some of them were admitted.

24     But look at each picture and see if

25     the greater weight proves it because

Case 2:09-md-02047-EEF-MBN Document 22302-9 Filed 12/06/19 Page 221 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 191 of 281
March 11, 2019

1      there were other manufacturers in this

2      area.

3              MS. SCHWAB:  Ms. Lee, if you

4      can go to slide 80, please.

5              SPECIAL MASTER LEE:

6      Eight-zero?

7              MS. SCHWAB:  Eight-zero.

8              Very briefly, I just want to

9      touch on a few points that

10     Mr. Venderbush made.

11             There's three boards or three

12     photos that Taishan denies in this

13     category.  The first one is photo 21,

14     and as you'll see, it's not just a

15     generic, as Taishan calls it.  The

16     similarities are -- they're nearly

17     identical.

18             The top one and the bottom one,

19     same font, same lettering, same

20     spacing, same everything.  The only

21     difference, as we looked at before, is

22     the S.

23             Another one Taishan denies is

24     photo 18.  This is the second one,

25     MADE IN CHINA MEET OR EXCEEDS, top one

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 222 of 343
Case 2:11-cv-22408-MGC-EEF-MBN Document 299 Entered on FLSD Docket 04/29/2019 Page 192 of 281
March 11, 2019

1        they accept.  The bottom one they deny

2        because MEETS is plural.

3                Finally, the third one that

4        they denied is because -- it's photo

5        19 -- is because it says MADE IN CHINA

6        MEETS, plural.  And they say that they

7        didn't find any residual boards with

8        MEETS, plural, and so they -- it's

9        their -- they don't believe that

10       Taishan manufactured boards with

11       MEETS, plural.

12               However, the Taishan edge tape

13       on the right, also the date stamp and

14       the MEETS.  That's the third category

15       that they deny.

16               So we feel that we have met our

17       burden of persuasion to -- that all

18       three of these markings, 18, 19 and

19       21, are Taishan products.

20               SPECIAL MASTER LEE:  So

21       Defendants, can you just address photo

22       19?  Like what is your position on

23       that one?

24               MS. EIKHOFF:  Do you want me

25       to?

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 223 of 343
Case 3:11-cv-22408-MSC-EEF Document 299 Entered on FLSD Docket 04/29/2019 Page 193 of 281
March 11, 2019

1          MR. VENDERBUSH:  Go ahead.

2          MS. EIKHOFF:  Photo 19 has

3     MEETS with an S, and there are no

4     records at Taishan of any -- of ever

5     us manufacturing boards with an S at

6     the end of MEETS.

7          The evidence that we have and

8     what we have accepted responsibility

9     for are boards that say MEET OR

10    EXCEEDS.

11         I just want to take an

12    opportunity, and I don't think that

13    you'll disagree with me on this, that

14    when you have on your presentation PID

15    Catalog Photo 19, those are actually

16    not the photos from the catalog.

17         MS. SCHWAB:  Right.  This is

18    just a photo, an exemplar of photo 19.

19         MS. EIKHOFF:  Right.  So --

20         MR. VENDERBUSH:  According to

21    you.

22         MS. SCHWAB:  According?

23         MR. VENDERBUSH:  To you.

24         MS. SCHWAB:  Okay.  If you

25    classify this differently --

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 224 of 343
Case 1:11-cv-22408-MGC-EEF-MBN Document 239 Entered on FLSD Docket 04/29/2019 Page 194 of
281

Mar. 11, 2019

```
 1              MR. VENDERBUSH:  We don't know.
 2       This is the first we're seeing it.
 3              MS. EIKHOFF:  Yeah.  So I just
 4       want to just make clear that when
 5       Taishan was stating its positions for
 6       the court, it was stating them on the
 7       basis of the PID photo catalog and the
 8       photos in that catalog.
 9              So I just want to -- since that
10       says PID Catalog Photo 19, it is
11       another photo from a claim file that
12       you guys have attributed to category
13       photo 19.
14              MS. SCHWAB:  Right.  And, you
15       know, and I'll represent to you that
16       photo 19 says MADE IN CHINA.MEETS, and
17       it's the same font that's in this
18       photo.  This is just a photo that we
19       came across that we are using because
20       we think that it's a better picture
21       because it gives the full board.
22              SPECIAL MASTER LEE:  Does the
23       catalog photo have the tape?
24              MS. SCHWAB:  It does not.
25              MS. EIKHOFF:  No.  And
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 225 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 195 of
281
March 11, 2019

```
 1              actually, here's -- that's photo 19
 2              from the catalog, if you want to just
 3              see.
 4                   SPECIAL MASTER LEE:  Okay.
 5                   MS. SCHWAB:  And one final
 6              comment, Your Honor.  I would just
 7              like to note that I understand that
 8              Ms. Eikhoff's position is they haven't
 9              come across any records that they
10              manufactured boards with MEETS,
11              plural.  However, in light of the
12              Manufacturer Profile Form, only having
13              MEET OR EXCEEDS singular, and Mr. Che
14              Gang's testimony that it was not
15              necessarily precise with regards to
16              singular or plural, I think that --
17              I'm belaboring the point, but I will
18              move on.
19                   So Category J, which is drywall
20              with dimensions.  So again, in
21              Taishan's Manufacturing Profile Form,
22              they admit to manufacturing 203,130
23              sheets of drywall with white edge
24              tape -- with white edge sealing tape
25              without words printed thereon and
```

March 11, 2019

1          product markings DRYWALL, all caps,

2          4feetX12feetX1/2inch.

3                    Now, as Your Honor is likely

4          aware by now, that is the size of the

5          American size of gypsum board.

6                    So this is actually the photo

7          from the catalog, photo number 2, and

8          this is the only drywall with

9          dimensions marking that Taishan admits

10         in this bucket.

11                   In Mr. Che Gang's deposition in

12         2019, his position was Taishan does

13         not deny the possibility that 2 is a

14         product of Taishan as a possibility.

15                   In Taishan's brief, they say:

16         Taishan's litigation position to

17         accept responsibility for the markings

18         in photo 2 relied on its similarities

19         in font and print style to the MADE IN

20         CHINA exemplars it found.

21                   That's at page 44 in Taishan's

22         brief.

23                   So it's talking about this W,

24         and that's what Mr. Che Gang

25         explained, that they found some other

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 227 of 343
Case 2:11-cv-22408-MGC   Document 259 Entered on FLSD Docket 04/29/2013   Page 197 of 281

March 11, 2019

1    residual board in 2018 that had a

2    similar W, so because of the

3    similarities in the W with the drywall

4    with dimensions, they are accepting

5    this vari- -- this font variation.

6            Again, this is the same sword

7    and shield argument.  At one point

8    they want to say, oh, the fonts are

9    similar, and so they will accept it.

10   But whenever the fonts are -- whenever

11   other fonts are similar, like the

12   GYPSUM in C&K and the GYPSUM in

13   another marking, the Taishan sealing

14   board, they don't want to acknowledge

15   it and say, no, just because fonts are

16   similar, it doesn't mean that they're

17   both our product.

18           But here, they relied

19   exclusively on the similarities in the

20   W to accept this marking variation.

21           So this is photo number 2 from

22   the catalog, and this is photo

23   number 9 from the catalog, and I tried

24   to blow it up so I see that it's kind

25   of pixillated, but this is at Tab 3 to

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 228 of 343
Case 2:11-cv-22408-MSC-EScott Document 255 Entered on FLSD Docket 04/29/2019 Page 198 of
281
March 11, 2019

1          plaintiff's product ID brief, and

2          there are better pictures.

3                So number 2, Taishan admits

4          responsibility.  So you have drywall

5          with dimensions.  And as you'll see,

6          this is a big Y.  The D is capitalized

7          and the Y is capitalized, and that's

8          very important because the DRYWALL

9          4feetX12feetX1/2inch that is indicated

10         in the Manufacturer Profile Form that

11         Taishan admits to manufacturing, all

12         of the DRYWALL is capitalized.  Here,

13         just the D and just the Y is

14         capitalized.  So Taishan admits to

15         manufacturing this.

16               However, at page 19 of the

17         catalog, again, big Y, big D, Taishan

18         says, no, this isn't ours because we

19         didn't make -- the numerical markings

20         are not consistent with Taishan's

21         records.  They didn't manufacture

22         this.  So they said even though the Y

23         is similar, even though both of these

24         look nearly identical, this isn't one

25         of ours.

March 11, 2019

```
 1              Again, Mr. Che Gang was shown
 2         this picture -- this is found at photo
 3         5 in the catalog -- and was asked what
 4         did Taishan rely on to deny this
 5         marking?
 6              Mr. Che Gang's testimony was:
 7         Based on my years of experience in the
 8         gypsum board industry, the marking on
 9         page 5 is not a sprayed marking, but
10         rather a painted marking.
11              Now, that was discussed
12         earlier, the difference between a
13         spray marking and a painted marking
14         and the numerous font variations.
15              However, whenever this photo
16         was shown to Mr. Che Gang, which was
17         from Taishan's own production -- and
18         this makes it look like that it's
19         really grainy.  It's not that grainy,
20         but be that as it may, same font
21         variations, same type of writing --
22         was asked:  Is this the same marking
23         that's found at photo 5?
24              Mr. Che Gang's response was:
25         There's some similarities of fonts,
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 230 of 343
Case 2:11-cv-22408-MGC Document 259 Entered on FLSD Docket 04/29/2013 Page 200 of 281
March 11, 2019

1       but because the picture is in black
2       and white, you cannot see whether or
3       not it is injected by needle sprayer.
4       In addition to that, this set of
5       pictures cannot prove that the
6       products are from Taishan.
7              Now, this will come up and will
8       be discussed, but we would love to
9       have better quality photos.  We would
10      love to have photos that aren't in
11      black and white.  We would love to
12      have color photos.  But this is what
13      we were given.  We've asked for better
14      quality, we've asked for color photos
15      and have been told that this is the
16      best that we can do.
17             So even though the similarities
18      are striking, he said that there's
19      some similarities, but because of the
20      quality, he can't accept that.  And
21      that's why this marking was denied by
22      Taishan.
23             So this is a photo from
24      Venture, and I put this in here only
25      to show that this is also a painted

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 231 of 343
Case 2:11-cv-22408-MGC-EEF Document 299-3 Entered on FLSD Docket 04/29/2013 Page 201 of 281
March 11, 2019

1        marking.  And what's Taishan's

2        position here?  They accept this

3        Venture marking.

4              So if we go to the next slide,

5        I just show this to again show the

6        work shift number, work shift stamp I

7        think is what the correct term is.

8              Again, big Y that Taishan has

9        admitted to whenever it's followed by

10       or preceded by dimensions.  But if

11       it's with a date and work shift

12       number, what do they do?  They deny

13       the top one, but the bottom one, which

14       is Venture Supply, and we looked at

15       all of the different variations, the

16       bottom one is admitted.

17             And Mr. Venderbush said earlier

18       that anybody can stamp these numbers

19       and these dates and the time on their

20       boards.  But I would submit that the

21       fonts in these two photos are very --

22       are very similar.  I think that's

23       important because, again, whenever

24       it's beneficial to Taishan, they say

25       look at the similarities, we'll admit

1          that.  Whenever -- and then in other

2          situations when it's similar, they

3          won't take the same position.

4              Now, Your Honor, there are some

5          other markings for drywall with

6          dimensions that I have not gone over.

7          Those can be found at 6, 7, 8 and 10

8          of the catalog.  And I would submit

9          that because of all of the variations

10         in Taishan's position, that the reason

11         why they accepted just this one was

12         because of the similarity in the W

13         and, in contrast with the Manufacturer

14         Profile Form, where all of the letters

15         were in caps, that -- and this is

16         outlined in the brief, in the

17         variations in all of them, that

18         there's no way, because we weren't

19         lucky to find any residual boards for

20         any of these markings, that all of

21         them should be attributed to Taishan.

22              MS. EIKHOFF:  We should be at

23         slide 28.

24              MR. VENDERBUSH:  Thank you.

25              So here in drywall with

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 233 of 343
Case 2:11-cv-22408-MSC-EEF-MBN Document 299 Entered on FLSD Docket 04/29/2013 Page 203 of 281
March 11, 2019

1      dimensions, the plaintiffs begin to do

2      what they should be doing, which is --

3      which as I suggested in the last

4      category, which is to bring to you

5      their proof for each category.

6           And we heard about

7      subcategory 9 and we heard about

8      subcategory 5, and at the end,

9      Ms. Schwab said she didn't touch on 6,

10     7, 8 and 10.

11          So the fact that they have some

12     proof for 9 and some proof for 5

13     doesn't mean that then you just roll

14     all the cards over and put it all to

15     Taishan, that there is a burden of

16     proof and there is a fact-specific

17     inquiry for each of the different

18     subcategories.  And just because

19     there's variation doesn't mean that it

20     all goes to Taishan.

21          So here we can see the

22     variation in this category, we have at

23     least eight different looks of that.

24     And earlier today I think the

25     plaintiffs showed you the picture

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 234 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2013 Page 204 of 281
March 11, 2019

```
 1        of -- for Venture, and they put five
 2        different versions up here, and I
 3        would suggest that there's actually,
 4        at most, three, that this one and this
 5        one are the same, and this one and
 6        this one are the same, and this one --
 7        I mean, that doesn't really count
 8        because they haven't shown you
 9        anything that looks anything like that
10        in MADE IN CHINA or in DRYWALL.
11             So were there two different
12        sets that they showed you?  Yes, but
13        that's not eight different sets.  And
14        so there's not so much variation here
15        as meets the eye.
16             So the inquiry continues to be
17        subcategory specific, and we haven't
18        heard anything about 6, 7, 8 and 10.
19             And so they continue to rely on
20        the myth of the two manufacturers in
21        this hearing, and they discount
22        Taishan's attempt to acknowledge its
23        responsibility here where, by
24        accepting Category 2 -- which we did
25        accept.  We did not have to do that,
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 235 of 343
Case 4:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2013 Page 205 of 281
March 11, 2019

```
 1            but that Category 2 actually accounts

 2            for 529 of the 960 claims that are in

 3            this category.  So that is not a

 4            small -- even though it's only one of

 5            the eight, it's actually by far the

 6            largest section.

 7                 So that was not something that

 8            Taishan had to do, but they could

 9            have -- you know, if we were as

10            recalcitrant as we have been painted

11            today to just sit back and say prove

12            your case, right, so we haven't done

13            that.

14                 And so the equitable picture

15            here, I'm just trying to reset it a

16            little bit, that there have been

17            reasonable admissions that my client

18            has made, and it's not just we threw

19            away all the documents that were

20            making you prove your case, right?

21                 We're making denials where we

22            reasonably felt that we couldn't admit

23            it because that's what defendants do.

24            That's the defendant's right, to make

25            the plaintiffs prove their case.  And
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 236 of 343
Case 1:11-cv-22408-MGC-EEF Document 299 Entered on FLSD Docket 04/29/2019 Page 206 of 281
March 11, 2019

1      so on some they may have better proof,

2      on some they may have no proof.  So we

3      ask the special master to honor

4      Florida law and honor the record here

5      to make the determinations.

6              SPECIAL MASTER LEE:  Okay.

7              MS. SCHWAB:  Slide 88, please.

8      Your Honor, I just -- I noticed that

9      there's wasn't a cite to the photo on

10     the right that I represented was from

11     Taishan's production that I wanted to

12     provide.  It's Tab 30 at page 3 of

13     plaintiffs' product ID brief.

14             Mr. Venderbush is right.  We

15     didn't go through 6, we didn't go

16     through 7, we didn't go through the

17     other ones, but the reason is, is

18     because all of that is discussed in

19     depth in our brief.

20             We can go through all of those

21     today, but we don't think that it

22     would be efficient or beneficial

23     considering the Manufacturer Profile

24     Form doesn't distinguish between

25     capitalizations, plural, singular,

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 237 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 207 of 281
Mar. 11, 2019

1    none of that.

2           So we're relying on the

3    evidence that we have and the markings

4    that we have and the admissions, and

5    from that, we can extrapolate what we

6    can.

7           Taishan just said earlier that

8    there are other manufacturers besides

9    them that mark boards with these

10   markings.  Yet they haven't named one

11   manufacturer.  They haven't pointed to

12   one manufacturer with the drywall with

13   dimensions, so there's no one else

14   that we know of with the DRYWALL

15   4feetX12feetX1/2inch except for

16   Taishan.

17          And I am going to pass at the

18   time to my colleague, Mr. Serpe.

19          MR. SERPE:  One moment.

20   Special Master, I'd like to take a

21   short break.  I've got a couple of

22   questions I want to bounce of off

23   counsel about one of the slides they

24   put up that would be helpful for me on

25   this presentation, and then I'll be

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 238 of 343
Case 1:11-cv-22408-MGC Document 295 Entered on FLSD Docket 04/29/2019 Page 208 of 281
March 11, 2019

1          ready to go.

2               SPECIAL MASTER LEE:  Okay.

3          We'll take five minutes.

4               (Recess taken, 2:33?p.m. to

5          2:40?p.m.)

6               MR. SERPE:  The next bucket

7          we're going to attend to are unmarked

8          boards with white edge tapes.  The

9          denomination of these is an area that

10         calls for a little bit of precision as

11         to whether there was no edge tape or

12         whether it was white edge tape, but

13         we're going to -- let me start by

14         saying unmarked, there were no

15         markings on the board itself, white

16         edge tape.

17              So we start with Taishan's

18         Manufacturer Profile Form, we've

19         provided as Tab 11, and they admit to

20         351,745 sheets of drywall with no

21         product markings, no edge sealing tape

22         markings from -- it's a narrow window,

23         March of '6 to September of '6, so

24         it's a six-month window for Taishan,

25         and in that window they generated

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 239 of 343
Case 2:11-cv-22408-MSC-EEF-MBN Document 299 Entered on FLSD Docket 04/29/2019 Page 209 of 281

March 11, 2019

```
 1        351,745 boards to go into the United
 2        States.
 3               I like to convert boards to
 4        homes, how many homes are we talking
 5        about.  And you can measure a home and
 6        calculate.  But let me just tell you
 7        that my metric is 500.  Counsel might
 8        suggest a different number.  500
 9        sheets go into a home.  I've done that
10        based on having looked at sales
11        invoices for 200 homes built with
12        Taishan drywall in Virginia and
13        counted how many boards.  500 would be
14        an overestimate of how many Taishan
15        boards went into a home, but I use
16        that.
17               If you do that math, which I'm
18        terrible at, but did it before I
19        started, you're talking about enough
20        drywall to do 700 homes.  700 homes
21        with white board.
22               At line 11 of the profile form,
23        they admit to 19,000 sheets of drywall
24        with no product markings, but edge
25        sealing tape that is white edge
```

March 11, 2019

```
 1        sealing tape without words printed

 2        thereon.  So, you know, add that to

 3        the pile.

 4            Despite having sent that volume

 5        in, into the United States, Taishan,

 6        for the purposes of the contest that

 7        you're deciding, has admitted zero

 8        boards that are unmarked.

 9            Taishan has no lucky residual

10        board exemplar for which we can turn

11        to, so we end up in a situation where,

12        by counsel's definition, pounding away

13        on the burden of proof, Taishan's

14        position would be on a white board,

15        even though we sent in enough drywall

16        for here, 700 -- I'm going to do a

17        little bit more calculations on some

18        other documents -- we're responsible

19        for none of it.

20            The deposition which we took in

21        January, we went over a document with

22        Mr. Che, who was the 30(b)(6)

23        deponent.  And in it they acknowledged

24        998,778 square meters of board with

25        white, unlettered edge banding and
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 241 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2014 Page 211 of 281
March 11, 2019

 1      another 1,020,749 square meters of

 2      gypsum board with unknown.

 3              So let me just look at the

 4      unknowns for a second.  We've got,

 5      from their Manufacturer Profile Form,

 6      351,000 boards.  I said that's 700

 7      homes.

 8              For the unknown category, at a

 9      million square meters, Counsel can

10      correct my math, but I'm looking at

11      228,000 sheets.  That would be enough

12      for another 457 homes of unknown.  It

13      was unknown white and blank, but we

14      don't know.  We don't know.

15              Did they have records that have

16      been destroyed that haven't been

17      turned over?  But between these two

18      categories, the ones they acknowledge

19      were white, 700 homes.  Here's another

20      450 homes that they're saying unknown.

21      Between the two of them, that's 1,200

22      homes that Chinese -- that Taishan's

23      drywall installed in a home is going

24      to destroy that home from the inside

25      out, damaging the plaintiffs

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 242 of 343
Case 4:11-cv-22408-MGC-EEF-MBN Document 299 Entered on FLSD Docket 04/29/2019 Page 212 of 281
March 11, 2019

```
1        monumentally, turning their lives

2        upside down.

3            1,200 -- enough drywall, 1,200

4        families lives turned upside down.

5        Only 80 homes now are in this contest

6        to say, hey, I had the white board.

7        This has got to be yours, Taishan.

8            How many does Taishan accept?

9        The answer?  Zero.

10            So when we're talking about

11        equities, when we're talking about how

12        you should interpret evidence and the

13        defendants' conduct in this

14        litigation, we want to make sure that

15        we've emphasized the fact that because

16        of their marketing and marking

17        strategies, they end up in the

18        luxurious position where even though

19        they dumped toxic drywall on 1200

20        homes, they're able to sit back and

21        say, burden of proof, get out of jail

22        free card.

23            In the briefing we laid out how

24        United States custom law has very

25        specific regulations with respect to
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 243 of 343
Case 2:11-cv-22408-MGC-EGT Document 255 Entered on FLSD Docket 04/29/2019 Page 213 of 281
March 11, 2019

```
 1           how products have to be marked before
 2           they're imported into the United
 3           States.
 4                 We also provided citations to
 5           documents where some of the U.S.
 6           customers that were dealing with
 7           Taishan at the time said, hey, you
 8           need to make -- you have to print MADE
 9           IN CHINA, you have to put other
10           identification information on those
11           boards according to U.S. custom law.
12           That's the law.
13                 So we know back in 2006 that
14           Taishan was aware of it.  It would be
15           real incredulous to suggest that a
16           huge manufacturing concern like
17           Taishan was unaware of U.S. imports,
18           but we can show, because one of the
19           customers was e-mailing the U.S.
20           customs requirement to Taishan
21           contemporaneously, they knew about it.
22                 In the 30(b)(6), Mr. Che
23           offhandedly brushed it aside.  Oh,
24           different companies -- countries have
25           different things that they may require
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 244 of 343
Case 2:11-cv-22408-MGC-EFSK Document 295 Entered on FLSD Docket 04/29/2019 Page 214 of 281
March 11, 2019

1        on their board.  We don't pay any

2        attention to that.

3               So we now end up with enough --

4        clearly enough for 700 homes.  In my

5        mind, I lump their unknown into this

6        category as well.  To me it fits

7        conceptually, either 1,200 or 700

8        homes with these blank boards, no

9        information.

10              And we've got them specifically

11       violating U.S. law which required them

12       to print the identifying information

13       on the boards.

14              In terms of burden of proof,

15       burden of persuasion, we believe we

16       presented the special master with

17       overwhelming evidence regarding the

18       fact that Chinese clearly -- that

19       Taishan clearly made these boards.

20       They clearly imported them.  It's here

21       in the United States.

22              Now we have 80 homes, a tiny

23       fraction of that where people have

24       pulled the boards out, submitted the

25       proof, that's what it is.  Taishan is

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 245 of 343
Case 4:11-cv-22408-MGC-EECG Document 291 Entered on FLSD Docket 04/29/2014 Page 215 of
281
March 11, 2019

1    saying none of that is ours, so you

2    can't satisfy your burden of proof,

3    hiding behind a violation of U.S. law

4    that they were supposed to print

5    information on the board and did not.

6         We think in that situation that

7    the law -- they're quite right on the

8    burden of proof, and I went back and

9    looked at the inference and shifting

10   burden section of our brief, and we'll

11   be happy to supplement, but we believe

12   you do have the ability, as the finder

13   of fact, to make inferences against

14   the defendants based upon their

15   conduct.

16        Start with the basic jury

17   instruction, credibility of a witness,

18   in every trial you've ever been in.

19   If you believe that the witness has

20   been untruthful about one thing, you

21   may infer that they've been untruthful

22   for their entire testimony.  That's

23   standard.

24        If they violate U.S. law and

25   say, you know what, we're not going to

March 11, 2019

1    mark those boards, thumbing their nose

2    at the U.S. legal requirements for

3    importing, and then dump 700 or 1200

4    homes worth of drywall, hundreds of

5    thousands of sheets of drywall on the

6    U.S. market, engage in the course of

7    discovery, which we've briefed

8    ad nauseam, we've argued back and

9    forth over whether or not Taishan has

10   acted with -- beyond callous

11   disregard, really with intent to

12   deceive.

13          And we believe Judge Fallon has

14   so found, and we've laid that out.

15   I'm not going to delve into specific

16   items and argue back and forth with

17   counsel, but I believe that the court

18   will find that after the years of

19   delay, after the hide-the-ball

20   discovery tactics, after they violated

21   U.S. law, after they lied in

22   depositions, that the court has got

23   the ability to infer that on that vast

24   volume of blank board or white board

25   without markings that came in, tiny

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 247 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2014 Page 217 of 281
March 11, 2019

```
1        portion that is 80 homes, zero
2        admitted in violation of the law, that
3        you should infer against the
4        defendants and let's turn that
5        burden -- the burden of persuasion,
6        not the burden of proof.  Let's turn
7        the burden of persuasion to Taishan.
8             Explain yourselves.  Why didn't
9        you mark those boards?  Do you have
10       any evidence?
11            Now, I appreciate the Court's
12       ability to take a minute to ask
13       learned counsel where they got this
14       pie chart from, which is their slide
15       30, but I think it shows up like five
16       times in their presentation.  They
17       keep coming back to it, the pie chart.
18            And which, you put it up and
19       you look and they're calculating out
20       to 22%, how much drywall came from
21       other manufacturers other than
22       Taishan, Knauf and BNBM, who is their
23       parent company, right.  And they come
24       down, all these other companies, it's
25       this vast -- of the drywall that came
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 248 of 343
Case 2:11-cv-22408-MGC-EEF-MBN Document 299 Entered on FLSD Docket 04/29/2014 Page 218 of 281
March 11, 2019

1          into the United States, it's a vast

2          22%.  And counsel keep pounding me

3          specifically and the plaintiffs' team.

4          They had these plaintiffs, they let

5          them go, they should have presented

6          it.  Here's the evidence that there

7          were all those manufacturers.

8               Where did that come from?

9          Where do you get 22% from?

10              Well, it turns out that they

11         pick one of their markers for how much

12         drywall total came into the United

13         States.  They picked the HUD number.

14         So they start with, well, that's how

15         much drywall came in, in the number of

16         sheets or square meters, whatever unit

17         that you want.

18              What did they deduct from that?

19         They deducted how much they admitted

20         they sent in.  Those are their

21         numbers.  Assuming we put in 20% here

22         and 20% there and 20% here; so

23         therefore, add that up and you know

24         what we're not admitting?  We're not

25         admitting 22% of this.  So therefore,

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 249 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2013 Page 219 of 281
March 11, 2019

1          ergo, that had to have been some other
2          manufacturer in China that was sending
3          that stuff in there.  I think that's
4          hogwash.
5                 You put it in a pie chart and
6          take it out to a percentage like 22%
7          and cloak it with what looks like a
8          reliable amount of information, but
9          it's based on a deduction from their
10          assumptions or how much they've been
11          willing to admit they manufactured.
12                 Where is the hard documentation
13          that these manufacturers sent in
14          drywall to the United States?  Where
15          are the sales records, where are the
16          sheets, where are these other items?
17                 So two last kind of points on
18          this.  One of the points counsel makes
19          is, yeah, we named these other
20          manufacturers in the complaint.  Where
21          are they?  How come you haven't
22          brought them in?
23                 Counsel relies on the Consumer
24          Product Safety Commission as part of
25          the slide here.  When you go back and

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 250 of 343
Case 1:11-cv-22408-MGC   Document 299   Entered on FLSD Docket 04/29/2013   Page 220 of 281
March 11, 2019

```
 1          look at the Consumer Product Safety
 2          Commission, several of these
 3          manufacturers had their boards
 4          submitted to the Consumer Product
 5          Safety Commission and they were tested
 6          to see if they came from the same
 7          region, the same strata of the mine
 8          that Mr. Montoya was talking about,
 9          that you picked up the contamination
10          and that they would release gases.
11               And guess what?  Many, many of
12          the Chinese companies that were
13          sending a small amount of drywall at
14          the time, yeah, they had drywall, but
15          it wasn't from that mine.  There was
16          no sulfur in it.  It wasn't
17          off-gassing.
18               So it's not enough that it was
19          a Chinese company that happened to
20          make drywall at the time.  It had to
21          have been the problematic drywall that
22          had the sulfur that released the
23          corrosion.
24               So we come back again to --
25          we've been pursuing this for a decade,
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 251 of 343
Case 1:11-cv-22408-MGC  Document 299  Entered on FLSD Docket 04/29/2012  Page 221 of 281
March 11, 2019

1     fighting as hard as we can, looking

2     everywhere, to China.  Every time we

3     serve a complaint over there, it's

4     $100,000.  We've done everything we

5     can to get documentation.

6          And we turn to -- we're in the

7     United States.  We're doing this

8     across the ocean, we're doing it from

9     the standpoint where the state of

10    China goes through documents that

11    we've asked for and makes sure that

12    they're okay for state secrets before

13    they release them to us.

14          That laptop computer that

15    Mr. Montoya told you about?  Before

16    they gave us anything off the laptop,

17    it had to go through the state secrets

18    commission.  We only saw what they

19    wanted us to see.  So that's how we

20    get documents from companies like

21    that.

22          They're a Chinese company

23    that's state owned, and they've got

24    state ownership going all the way up

25    to the state of China.

March 11, 2019

```
 1              They have a division -- we
 2         cited this in your brief -- who
 3         specifically looks at their
 4         competitors to see what they're doing.
 5              And I again, in the deposition
 6         and today, I said show me a document
 7         where there was any substantial
 8         exporting of unmarked boards with
 9         white edge tape from any manufacturer
10         that was from the Taihe region that
11         had the contaminated sulfur.  One
12         document, one invoice.  I haven't seen
13         one.
14              Is there one out there?  Is it
15         possible another company sent them?
16         Anything's possible, Special Master,
17         but what I can tell you is, they did
18         enough to destroy 700 homes, 1200
19         homes if you lump in the unknowns.
20              We know they did, and it's
21         here, and it's corrosive, and we have
22         80 homes with that board that have
23         been destroyed.  Their response is:
24         Burden of proof.  We're done.  Didn't
25         mark it.  Too bad.  Still your burden
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 253 of 343
Case 2:11-cv-22408-MGC-EGC Document 295-1 Entered on FLSD Docket 04/29/2012 Page 223 of 281
March 11, 2019

1            of proof.

2                    They're in China, they know

3            their competitors.  They know how to

4            access documents and how to do the

5            research.  We're not there, we can't

6            do any of that, yet they want to say

7            we have to go and figure out about

8            these other companies, et cetera.

9                    We've done our best and what I

10           can tell you is we're unaware of

11           another Chinese company making

12           unmarked boards with white edge tape

13           that were sent into this state by

14           anyone other than Taishan.

15                   Thank you.  Special Master,

16           forgive me, I got ahead of myself.  I

17           just want to point out three last

18           documents that were in the PowerPoint.

19           Thank you, and I apologize for that.

20                   We were layering additional

21           proof of our diligence in pursuing

22           documentation.  Here is Taishan

23           specifically indicating that they're

24           not going to do spray markings.

25                   Exhibit A to the Defendant's

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 254 of 343
Case 1:11-cv-22408-MGC Document 295 Entered on FLSD Docket 04/29/2014 Page 224 of 281
March 11, 2019

```
 1        Manufacturer Profile Form
 2        acknowledging that they made white
 3        edge sealing tape without words.  And,
 4        as an example, the Wheeler case --
 5        this is one of the 80 families --
 6        white board, white tape, highly
 7        corrosive, and there's no markings on
 8        it.
 9             And the question becomes what
10        do you tell the Wheelers?  In this
11        situation and for the reasons I just
12        articulated, we believe we've met our
13        burden of persuasion because of the
14        huge volume they sent.  Their conduct,
15        particularly in not marking the
16        boards, and not marking the boards,
17        and their lack of presenting any
18        affirmative data to the contrary.
19             Thank you.
20             MR. VENDERBUSH:  Slide 32, I
21        think we're at.  So Mr. Serpe did a
22        little bit of a mini closing there, so
23        I'm not going to touch on everything
24        that he talked on.  I'm going to talk
25        about white edge tape and the -- some
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 255 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2015 Page 225 of 281
March 11, 2019

```
1              of the legal issues that relate to
2              white edge tape, and then I understand
3              we're going to have some real
4              closings.  So I think my colleague,
5              Ms. Eikhoff, will address some of the
6              other issues that Mr. Serpe raised
7              that were more global.
8                   So I just want to give you a
9              quick picture of what white edge tape
10             looks like.  We were talking about
11             generics before.  This is as generic
12             as it gets.  This is -- these are the
13             kinds of pictures that we're looking
14             at for them to say this was made by
15             Taishan, right?
16                  And, I mean, I have been a
17             products liability lawyer for
18             25 years, and product ID is a critical
19             issue in many cases.  And the
20             plaintiffs have to make the
21             connection, and Florida law requires
22             it, to connect the product to the
23             manufacturer.
24                  So the ultimate question in --
25             for each of these claims is going to
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 256 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2013 Page 226 of 281
Mar 11, 2019

```
 1          be can the claimant prove that the

 2          product in the home was corrosive,

 3          number one.

 4               I mean, Mr. Serpe says, oh,

 5          look at Mr. Wheeler's boards, they're

 6          corrosive.  We don't know that those

 7          boards are corrosive.  There's nothing

 8          about them on their face that says

 9          they're corrosive.

10               Do they have -- are there

11          chemical reports that say those

12          particular boards are corrosive?  And

13          then there's nothing that says that

14          those are Taishan boards.

15               So he said we don't know

16          anything about other people making

17          blank boards, but we do.  There is in

18          this record, and we -- there's buyer

19          testimony in our Appendix 67.

20               What distinguishing marks does

21          Pingyi Baier drywall have on it?

22               None.

23               Does it say Pingyi Baier on it?

24               No.

25               Does it say Chinese drywall?
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 257 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2015 Page 227 of 281
March 11, 2019

1          No.

2          It has no markings on it at

3     all?

4          Not that I recall.

5          How about the Beijing product,

6     Beijing Materials?

7          How about it?

8          What distinguishing marks does

9     it have?

10         None.

11         It doesn't say anything.

12         So in this hectic market,

13    people were getting the drywall that

14    they could get and Chinese

15    manufacturers were making it in

16    various different ways.

17         And so there is nothing that is

18    distinctive or unique about blank

19    drywall, and there's -- actually, we

20    have to look at each one of these

21    pictures.  It's not like it says

22    ProWall on it, or it's not like it's

23    something that's distinctive as we

24    would be used to in a product

25    liability product identification

Case 3:09-md-02047-EEF-MBN Document 22302-9 Filed 12/06/19 Page 258 of 343
Case 3:11-cv-22408-MGC-EGR Document 293 Entered on FLSD Docket 04/29/2013 Page 228 of 281
March 11, 2019

    1        setting.  If you have a product and

    2        there's nothing identifying about it,

    3        then there's nothing to tie it to the

    4        manufacturer.

    5             So if there's an absence of

    6        evidence, that is the state of the

    7        record.  And that's what the Blackston

    8        case is about, is that the Eleventh

    9        Circuit said in the asbestos setting,

   10        which I will submit the equities were

   11        even greater, the Eleventh Circuit

   12        said just because it's hard to prove

   13        exposure to asbestos doesn't mean that

   14        we're going to create a presumption

   15        that does not exist in the applicable

   16        state law.

   17             And that's what they're asking

   18        you to do, to sua sponte create a

   19        presumption that shifts the burden of

   20        proof to us to disprove that any of

   21        these products are ours.  And there's

   22        just no authority for that.

   23             So Blackston says you cannot do

   24        that.  They have not invoked Rule 37,

   25        and the inherent power that they cite

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 259 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2015 Page 229 of 281
March 11, 2019

1        in their brief, the cases that suggest

2        that might be available, they also say

3        that that would be a Rule 37-like

4        procedure.

5              So they need to move for that

6        and allow us to defend on that if

7        they're going to try to meet the very

8        specific Rule 37 factors, which

9        include bad faith, which they

10       themselves have said we couldn't have

11       done because we did this in the normal

12       course.

13             So I don't want to get into

14       litigating Rule 37.  I'm just saying

15       Rule 37 is not here.  So that's not a

16       basis for doing it.

17             And the reference to the

18       Tariff Act of 1930, which Mr. Serpe

19       obliquely referred to -- that's what

20       he was referring to about the

21       markings.  And he misstated it,

22       because it's not a statute that

23       requires a manufacturer to identify

24       their product.  It identifies -- in a

25       conspicuous place as legibly,

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 260 of 343
Case 1:11-cv-22408-MGC-EEF Document 259 Entered on FLSD Docket 04/29/2013 Page 230 of 281
March 11, 2019

1    indelibly and permanently as the

2    nature of the article or container

3    will permit in such manner as to

4    indicate to an alternate purchaser in

5    the United States the English name of

6    the country of origin of the article.

7         So it's not a product

8    identification statute, so there's not

9    some sort of reasonable care standard

10   that we have violated or something.

11   It is country of origin.

12        And the sanction for violating

13   the Tariff Act, if we have done that,

14   is set forth in the statute, and it is

15   not to change Florida law on the

16   burden of proof.

17        So -- and even if we put

18   that -- and it's not relevant because

19   even if we put it on, MADE IN CHINA,

20   we've seen MADE IN CHINA is not an

21   indelibly uniquely mark.

22        So there's just no basis that

23   they've provided you other than just

24   do it because we've been doing this

25   for ten years and it's hard.  And so

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 261 of 343
Case 4:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 231 of 281
March 11, 2019

1      that would just be unlawful as far as

2      we're concerned.

3            So we think that this is a

4      situation where the plaintiffs have --

5      that the special master cannot say as

6      a categorical matter not only have

7      they not proved that this has to be

8      our board, but that's not a -- that

9      wouldn't even be a meaningful ruling

10     because when we look at some of these

11     pictures, they're calling white edge

12     tape things that aren't edge tape,

13     right?

14            This came up at the -- at

15     Mr. Che's deposition where the

16     plaintiffs were calling things edge

17     tape and he had to correct them to say

18     that that's joint tape or face tape.

19            So we actually, if -- we would

20     have to go through each one of

21     these -- even if there were some

22     categorical saying, anytime you see

23     tape, that means it's Taishan, we

24     would still have to go through and say

25     but that's not edge tape. Just the

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 262 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2014 Page 232 of 281
March 11, 2019

1       fact that we made product with edge

2       tape doesn't mean that every time you

3       see a piece of white that it has to be

4       ours.

5               And they -- we haven't made

6       this impossible for them, right?

7       There are ways that could be done, but

8       they -- in a difficult situation, and

9       the Eleventh Circuit envisions that

10      there will be difficult situations of

11      proof in the product ID space.

12              So what could they have done?

13      They could have gone to every home and

14      found out where those boards came

15      from.  These supply chain records

16      exist and they've shown you some of

17      them over the course of the day.  It's

18      a difficult situation.

19              If you have proof -- they have

20      all documents from many of these

21      suppliers, and they could trace those

22      back to home -- because this is what

23      they're going to have to do eventually

24      is go, all right, Mr. Wheeler's house,

25      those five blank boards, how are those

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 263 of 343
Case 1:11-cv-22408-MGC-EEF Document 299 Entered on FLSD Docket 04/29/2019 Page 233 of
281
March 11, 2019

1    Taishan, right?  Well, they could go

2    find who -- the builder who built that

3    home and get the supply records and

4    then tie those back, and did those

5    come from one of the shipments that

6    Mr. Serpe referenced.

7         But it is not enough for an

8    individual product identification

9    inquiry to say -- to use volume.  You

10   shipped a lot of boards, therefore any

11   board that we call white edge tape is

12   yours.  That cannot be how a product

13   identification inquiry works.

14        So they could do it that way,

15   they could do drywall samples, where

16   they find one of these they can tie

17   back to a Taishan shipment and then

18   go, look, it has the same chemical

19   analysis that a Taishan board has.

20        But we don't even know that the

21   particular boards that we saw are

22   corrosive.

23        So this is not impossible.  It

24   is very difficult, I totally grant you

25   that.  But that is the burden that

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 264 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2014 Page 234 of 281
March 11, 2019

1      Florida law puts on a party that wants

2      to shift resources from one side of

3      the V to the other side of the V.  And

4      the wisdom of hundreds of years of law

5      says that this is what we demand in

6      our legal system before we do that

7      property shifting.

8            And on the white, unmarked edge

9      tape, it is a complete failure of

10     proof for what they've given you.

11           MR. SERPE:  You can leave that

12     up.  Drywall samples, chemical

13     analysis could identify the maker of

14     the drywall.

15           I've been in this case since

16     2009.  Tried the first case against

17     Taishan in the fall.  I have been on

18     every expert and science team since

19     then.  I have never heard an expert

20     witness, not once, that purported to

21     say here's a drywall sample and I can

22     do a chemical signature and show it

23     came from the same company.

24           If such proof existed, I'm

25     shocked that we haven't seen chemical

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 265 of 343
Case 1:11-cv-22408-MGC-EEF Document 299-1 Entered on FLSD Docket 04/29/2019 Page 235 of 281
March 11, 2019

1    analyses that have attempted to

2    exculpate the defendant presented at

3    this point.

4         We have a defendant in default.

5    Their drywall has already been

6    demonstrated to be corrosive,

7    demonstrated and adopted by

8    Judge Fallon, adopted by Judge Cooke,

9    that it off-gases and causes corrosion

10   in the homes.

11        We go in the homes, we find the

12   corrosion.  We have done all of the

13   scientific testing that we think is

14   possible in this case.

15        Supply chain.  We took those

16   depositions.  We went through all the

17   employees.  We went through the

18   records.  If we had found -- if there

19   was a way to do this, we would have

20   unturned those stones to have looked

21   for additional documentation and

22   presented it.  And it's not there.

23        So we're left with the burden

24   now to say what do you do with a

25   white, unmarked board?  Well, you do

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 266 of 343
Case 3:11-cv-22408-MGC-EGT Document 259 Entered on FLSD Docket 04/29/2012 Page 236 of
281
Mar. 11, 2019

1    what we did here, which is find out

2    exactly how much they made and under

3    what circumstances, and we did.

4          Counsel is quite right, and I

5    tried to say -- it's in our brief

6    about the Tariff Act because my strong

7    suit is more on the science than on

8    the legal analysis.  And in our brief

9    we specifically outlined the Tariff

10   Act and what their requirements are.

11         I think I just heard counsel

12   acknowledge his client violated that

13   law, they're not contesting that.

14   Guilty.  He points to penalties that

15   are in there that U.S. Customs could

16   have imposed against the manufacturer

17   for each shipment that had come in,

18   but that's not the context we're

19   talking about here.

20         We're talking about what do you

21   do, what does Your Honor do in the

22   context of this case.

23         Counsel talks about we've got

24   to go picture by picture because one

25   of the reasons is that there's joint

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 267 of 343
Case 1:11-cv-22408-MGC-Document 293 Entered on FLSD Docket 04/29/2013 Page 237 of 281
March 11, 2019

1     tape, and Mr. Che had to educate us

2     plaintiff lawyers what about joint

3     tape was when we took his deposition

4     in January.

5          Well, I'm sure Your Honor has

6     been in a home that's under

7     construction.  Before they paint, they

8     put the two boards together and then

9     the drywall mechanic puts a piece of

10    tape on the outside of the board, and

11    they put plaster over it and they sand

12    it smooth so that when you paint it

13    you can't see where the seam is.

14    That's joint tape for joints.  We know

15    what that is.  We know what joint tape

16    is, and we're not saying that a joint

17    tape is an edge tape.

18          Now, is there one photograph

19    somewhere where you look at it and

20    say, now, is that a joint tape or an

21    edge tape?  We can have that debate as

22    part of the contests or an individual

23    one-off, but really what we're here

24    about is what are we going to do with

25    Taishan having sent enough drywall to

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 268 of 343
Case 1:11-cv-22408-MGC Document 259 Entered on FLSD Docket 04/29/2013 Page 238 of
281
March 11, 2019

1    destroy 700 or 1200 homes, and now the

2    confirmation, how many of them are

3    they going to admit to?  Zero.

4            Why?  Burden of proof.

5            Eleventh Circuit, in our

6    closing we're going to distinguish

7    Eleventh Circuit and tell you how that

8    is inapplicable in this context, but

9    we'll hide behind the Eleventh Circuit

10   and say because of burden of proof and

11   the massive destruction we did, 80

12   homes here, zero, and we're going to

13   go home.

14           We don't think that the special

15   master should rule that way.  We

16   think, based on the huge volume of

17   data, the fact that, you know,

18   counsel, again with an opportunity to

19   show where is this drywall coming

20   from, this white drywall that's

21   corrosive and it's from the Taihe

22   region.  Where is that coming from?

23           We hear Pingyi again.  That's

24   one of the companies CPSC says makes a

25   drywall that doesn't release gases.

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 269 of 343
Case 1:11-cv-22408-MGC Document 295 Entered on FLSD Docket 04/29/2019 Page 239 of 281
March 11, 2019

```
 1          I'm looking for the proof at long
 2     last.  Here we are.  Who else did
 3     this?  I'm not seeing a single
 4     documentary evidence of that.
 5          We are urging Your Honor to
 6     judge the credibility of this
 7     corporate player, and they're a bad
 8     actor, to not believe their
 9     representations in this contest, to
10     take a look at this evidence,
11     including their decision to violate
12     the law, and make inferences against
13     Taishan based upon those adverse
14     negative conduct which is in your
15     power to do.
16          And we ask that you find that
17     we have met our burden of persuasion,
18     that Taishan was responsible for these
19     homes, and that in that context, it
20     should be Taishan's responsibility to
21     come forward with at least definitive
22     proof that another company made a
23     corrosive Chinese drywall board or
24     that they weren't responsible in this
25     context, and there's been none.
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 270 of 343
Case 1:11-cv-22408-MGC-EDocument 259 Entered on FLSD Docket 04/29/2013 Page 240 of
281
March 11, 2019

```
 1              Instead, it's a waving of hands
 2         that we're sorry that this is hard.
 3         This is just like the asbestos
 4         victims, these people all need to go
 5         home.  We're asking Your Honor to not
 6         rule that way.  Thank you.
 7              MR. MONTOYA:  Your Honor, that
 8         concludes the presentations on the
 9         buckets.
10              SPECIAL MASTER LEE:  I think
11         there was more on the PowerPoint.
12              MS. ROBERTSON:  Yeah, that's
13         for the conclusion.
14              SPECIAL MASTER LEE:  Okay.
15              MR. VENDERBUSH:  So you guys
16         are done with the buckets?
17              SPECIAL MASTER LEE:  Was there
18         anything else you wanted to address?
19              MR. VENDERBUSH:  Yeah, so
20         there's two more -- if you put ours up
21         one more time.
22              MS. EIKHOFF:  It should be the
23         very last slide of the presentation.
24              MR. VENDERBUSH:  The last two
25         slides, I think.
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 271 of 343
Case 3:11-cv-22408-MSC Document 299 Entered on FLSD Docket 04/29/2019 Page 241 of
281
March 11, 2019

```
 1              MS. EIKHOFF:  It's the last one
 2         slide.
 3              MR. VENDERBUSH:  Yeah, last
 4         slide.  So there's just photos 3 and 4
 5         are in the catalog, and they're not in
 6         their brief, and they weren't
 7         addressed here, so we -- there's no
 8         proof on that.
 9              MS. ROBERTSON:  I can --
10              MS. EIKHOFF:  You guys just
11         said you closed.  You said you were
12         done with the presentation.
13              MS. ROBERTSON:  It's not an
14         argument.  We were simply explaining
15         to the special master those markings
16         are in homes that have other markings
17         that were already discussed during
18         this presentation.
19              MR. VENDERBUSH:  Okay.
20              MS. ROBERTSON:  So apologies.
21              MR. VENDERBUSH:  She's going to
22         have to go through and do every photo,
23         so she's going to have to say
24         something about it presumably.
25              SPECIAL MASTER LEE:  Did the
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 272 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2014 Page 242 of
281
March 11, 2019

```
1              plaintiff want to say anything else

2              about these?

3                   MS. DUGGAN:  I don't think so.

4                   SPECIAL MASTER LEE:  No?  Okay.

5              So anything else before we do the

6              closing?  Yeah, we're going to take a

7              break.

8                   MR. SERPE:  Nothing else before

9              closing.

10                  SPECIAL MASTER LEE:  Okay.  Did

11             the plaintiff want to say anything

12             more about the drywall dimensions, 6,

13             7, 8, 10?  I think the defense was

14             pointing out that you didn't really

15             say anything about them other than

16             that they're variations on the same

17             theme.

18                  MR. SERPE:  Just a minute,

19             please.

20                  SPECIAL MASTER LEE:  You can

21             talk about it over the break, but

22             that's one question I have.

23                  MS. EIKHOFF:  Do you have any

24             questions for us?

25                  SPECIAL MASTER LEE:  On the
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 273 of 343
Case 3:11-cv-22408-MGC-EEF Document 299 Entered on FLSD Docket 04/29/2019 Page 243 of 281
March 11, 2019

```
1        defense side, did you want to say

2        anything more about the whole adverse

3        inference argument?

4              MS. EIKHOFF:  Yes.

5              SPECIAL MASTER LEE:  If you're

6        going to address in your closing.

7              MS. EIKHOFF:  Will do, thank

8        you.

9              SPECIAL MASTER LEE:  All right.

10       Give me one second.  One question just

11       for my knowledge:  Were there any

12       preservation issues addressed in the

13       MDL?

14             MS. ROBERTSON:  I think over

15       time of the MDL we had various

16       different arguments regarding the

17       preservation of evidence.  I think

18       that plaintiffs always consistently

19       tried to -- we presented a few times

20       asking for sanctions.

21             I don't believe that

22       Judge Fallon ever found spoliation had

23       been the result of the preservation

24       order as far as PTO #1 goes.  That is

25       correct, right, Christy?
```

March 11, 2019

```
 1          MS. EIKHOFF:  There has never
 2      been a finding of spoliation in the
 3      MDL, despite some allegations.
 4          MR. MONTOYA:  Judge, I think in
 5      terms of the spoliation type issues
 6      and the discovery issues, they are
 7      fully briefed in our brief.
 8      There are sections in there and we
 9      would rely on those.
10          SPECIAL MASTER LEE:  Yeah, I
11      read that.  I just didn't know -- it
12      didn't make clear to me whether there
13      was ever a ruling, a finding, anything
14      like that.
15          MS. DUGGAN:  No, there was not.
16          MS. ROBERTSON:  I can pull the
17      MDL record document from the orders
18      and read them if you would like.
19          SPECIAL MASTER LEE:  And I'm
20      correct that defense position is that
21      ProWall should be decided after the
22      BNBM hearing but the plaintiff doesn't
23      agree with that?
24          MS. DUGGAN:  We don't agree
25      because it's a different set of
```

March 11, 2019

 1          allegations in the homes at issue in
 2          Florida with regard to the boards that
 3          we claim were made by Taishan are not
 4          at issue.
 5                  MS. GRANT:  One thing.  It's a
 6          Texas home, and I believe there's only
 7          one of them.  That is the BNBM
 8          argument.  That's the reason.
 9                  MS. EIKHOFF:  So why don't you
10          let us talk at the break, because we
11          had never heard until it was said
12          today that there was a distinction
13          between ProWall markings and
14          attribution.
15                  We only saw the footnote in
16          their brief that said some are to
17          BNBM, some are to Taishan, but we
18          don't know how those are -- how those
19          are distinguished from one another.
20                  MR. VENDERBUSH:  Can I ask how
21          a Texas home is being litigated in the
22          Florida BNBM proceeding?
23                  MS. ROBERTSON:  I think that's
24          a question for BNBM, but we can
25          address that with the BNBM counsel.

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 276 of 343
Case 1:11-cv-22408-MGC Document 259 Entered on FLSD Docket 04/29/2019 Page 246 of
281

March 11, 2019

1           Once we get to the BNBM argument, I'm
2           happy to address that, but probably
3           not today.
4                   MR. DAVIDSON:  I was just
5           asking if we had to address it at all
6           in front of Special Master Lee since
7           it's a Texas property.
8                   MS. ROBERTSON:  Maybe we can
9           discuss and go offline.
10                  SPECIAL MASTER LEE:  From the
11          defense, when will the claim-specific
12          objections be addressed?  You said
13          there are claim-specific objections
14          that would have to be decided later.
15                  MS. EIKHOFF:  Yes, Your Honor.
16          So we -- Your Honor, I'm sorry.  That
17          was an old habit.
18                  Special Master Lee, we
19          submitted a preliminary list of
20          contests.
21                  SPECIAL MASTER LEE:  I saw it.
22                  MS. EIKHOFF:  And then our
23          final contest list is due on
24          April 8th.
25                  MS. DUGGAN:  I thought yours

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 277 of 343
Case 1:11-cv-22408-MGC Document 259 Entered on FLSD Docket 04/29/2013 Page 247 of 281
March 11, 2019

```
1        was due on April 2nd.
2             MS. EIKHOFF:  April 2nd.  April
3        2nd.
4             MS. DUGGAN:  We're going to
5        respond on April 8th and then we have
6        three days set aside with the special
7        master April 10th, 11th and 12th.
8             SPECIAL MASTER LEE:  Okay.
9             MS. EIKHOFF:  And in the
10       meantime, Ms. Lee, to the extent that
11       some of those objections can be
12       resolved between the parties, we're
13       working to see if we can.  But there
14       will no doubt be many objections that
15       will need to be resolved by the finder
16       of fact.
17            SPECIAL MASTER LEE:  Okay.  So
18       how much of a break do you want?
19            MS. DUGGAN:  10 minutes?  Is
20       that enough?
21            MS. EIKHOFF:  Sure.
22            SPECIAL MASTER LEE:
23       15 minutes?
24            MR. SERPE:  15, thanks.
25            (Recess taken, 3:21?p.m. to
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 278 of 343
Case 2:11-cv-22408-MGC-EEF Document 299-1 Entered on FLSD Docket 04/29/2019 Page 248 of 281
March 11, 2019

```
 1          3:42?p.m.)

 2              MS. SCHWAB:  Your Honor, you

 3          asked earlier about Category -- or

 4          photos 6, 7, 8 and 10, and I would

 5          just like to briefly respond to those.

 6              Photo number 6 is the same W as

 7          photo number 2 that Taishan relied on

 8          in making -- in admitting photo 2.

 9              Photo 7 is DRYWALL in all caps,

10          as stated in the Manufacturer Profile

11          Form, and Tab 62 to plaintiff's brief

12          is an e-mail chain between Che Gang

13          and Ivan Gonima, who is a U.S.

14          customer.  Mr. Che uses the asterisk

15          instead of X's to -- in the place of

16          4feetX12feetX1/2inch.

17              Number 8 is the same DRYWALL

18          all caps, just as the Manufacturer

19          Profile Form, and the asterisk again,

20          I would direct Your Honor to Tab 62 in

21          plaintiff's brief.

22              And 10, photo 10 is DRYWALL in

23          all caps again as indicated in the

24          Manufacturer Profile Form, and all of

25          these are discussed at length in
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 279 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 249 of 281
March 11, 2019

1          plaintiff's brief.  Thank you.

2                    SPECIAL MASTER LEE:  Thank you.

3          Are we ready for closing?

4                    MR. MONTOYA:  Mr. Serpe is

5          going to close.

6                    MS. EIKHOFF:  Are you guys

7          going to preserve a rebuttal?  Because

8          if you're saying it's our burden of

9          proof, then we should go first.  I'm

10         confused now as to whether you want it

11         to be our burden of proof or don't.

12                   MS. DUGGAN:  You want to go

13         first right now?  That would be fine

14         with us.

15                   MR. SERPE:  Go ahead.

16                   MS. DUGGAN:  That's fine, we'll

17         go last.

18                   MR. VENDERBUSH:  That's the

19         point, if they go first --

20                   MS. EIKHOFF:  The point is

21         we're not accepting that we have the

22         burden of proof.

23                   MR. SERPE:  Christy, we know

24         that you're not accepting that.  We're

25         stipulating that you're not accepting

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 280 of 343
Case 1:11-cv-22408-MGC   Document 299   Entered on FLSD Docket 04/29/2019   Page 250 of
281
March 11, 2019

```
 1              that you have the burden of proof.

 2                   MS. EIKHOFF:  Then go ahead.

 3                   MR. SERPE:  Special Master,

 4              there's a problem here, and the

 5              question is who's responsible.

 6                   I think it's clear from the

 7              presentation today that this is

 8              entirely a problem that was created by

 9              the defendants.  100% of this problem

10              was from their conduct, not only when

11              manufacturing, but what they've done

12              since that time.

13                   From the decision to make U.S.

14              drywall allegedly without a manual,

15              detailing how markings are supposed to

16              be put on the board, when the rest of

17              the company's corporate discipline is

18              you have a very specific manual on

19              exactly how to put the markings, where

20              to put them, what has to be on there,

21              and get our name on it.

22                   On the U.S. side, they either

23              didn't have that manual or it existed

24              and we're just being told that it

25              doesn't exist.
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 281 of 343
Case 1:11-cv-22408-MGC-EEF Document 293-2 entered on FLSD Docket 04/29/2019 Page 251 of 281
March 11, 2019

1          But from our standpoint, we

2     don't have the 40-page highly detailed

3     manual that they have for all the rest

4     of their drywall production.  We have

5     nothing.

6          What about the documents that

7     got sent down from the factory floor

8     saying make this much drywall for this

9     customer with these markings?  We got

10    those records.  They preserved those

11    records.

12         But we're being asked to

13    believe that the critical sheet of

14    paper, the part of the order that had

15    the marking information on it, well,

16    we just happened to throw that piece

17    out.  But not the order, just the

18    attachment that said what we put it

19    on.  And then we'll see if -- the

20    record that you can't show our product

21    from.

22         I'll go back to the opening

23    slide where Taishan told its

24    stockholders that they're going to

25    send over documents, only documents

Case 3:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 282 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 252 of 281
March 11, 2019

```
 1              that are beneficial to their case, and
 2              we'll use agencies to run interference
 3              for us.  So we don't get proof on what
 4              the markings were because supposedly
 5              they were thrown out.
 6                    We asked about edge tapes and
 7              what was printed on those.  Where are
 8              those records?  We haven't seen the
 9              first record of how the edge tapes
10              were printed and what was printed on
11              them and what was the order and how
12              was it accounted for.  Did the sales
13              documents -- you know, how was it
14              billed out.
15                    So we wait a decade, and
16              finally get a 30(b)(6) deposition of a
17              witness who he's been deposed three
18              times, his story has changed each
19              time.  But in his third iteration,
20              with a specific time frame on edge
21              tapes, what was your process, what was
22              the documentation, where are the
23              records.
24                    And his answer was there was a
25              whole factory to make the edge tapes.
```

March 11, 2019

```
1        It was so complex and big we have to

2        put it in its own factory.

3               Well, how did they know what to

4        make?  Did you send e-mails?  Where

5        are those e-mails?  Who looked for the

6        e-mails on the edge tape?  Oh, they

7        didn't have computers.  So what, you

8        would hand-deliver forms to them with

9        the specifications on how to make the

10       edge tape?  No, there was no paper.

11       We would call them or maybe I could go

12       over and tell them what to make.

13              So when they were making it,

14       did they keep a record?  Okay, today

15       we made, you know, 10,000 miles of

16       tape that said IMT or another marking

17       on the edge tape and then put it into

18       their file on what they had concluded

19       for that day.  No, no records

20       whatsoever of any edge tape

21       manufacturing process.

22              Did they really exist and we're

23       just being told they didn't, or did

24       Taishan just have a practice that

25       was -- that operated around no
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 284 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2013 Page 254 of 281
March 11, 2019

1        evidence being saved in realtime?  In

2        either event, this problem we're

3        facing is of their making.

4              So the question becomes if they

5        created a problem through their

6        practices, do they get a pass now to

7        say, whew, it was a good thing we did

8        that.  Now, no one's going to be able

9        to prove our drywall, and we should

10       get a pass with no responsibility

11       whatsoever.

12             And we're asking the special

13       master to not accept that definition,

14       that the entity that created the

15       problem shouldn't be able to walk away

16       from the damages that they caused.

17             So on the next layer down, the

18       records that we did get and the

19       photographs that we did get, we were

20       very sensitive to looking for pictures

21       of the markings so that we could match

22       them up and say now we have another

23       mug shot for the mug shot book that we

24       could compare a homeowner's home to to

25       see is this Taishan drywall.

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 285 of 343
Case 2:11-cv-22408-MGC Document 295 Entered on FLSD Docket 04/29/2013 Page 255 of
281

March 11, 2019

1           So we are produced this record

2       from Taishan, and in a deposition --

3       next slide, please -- of Mr. Che, he

4       was asked about the drywall in the

5       left-hand side, the black-and-white

6       picture.

7           And his answer is:  "This

8       picture is very much unclear.  If you

9       look at it from afar, it looks similar

10      in a small degree that that resembles

11      that of Taishan's; however, it would

12      be great if you can give me a more

13      clear version of it.

14          "Sir, do you see the words

15      'Taihe' in that photograph on the

16      labels?

17          "Well, I can only see the

18      Chinese character 'mountain.'  It was

19      blurry before the character and it's

20      pretty blurry after.  If I were to

21      speculate, and I can only speculate,

22      it might be Taishan's edge tape."

23          So we begin the process saying,

24      all right, do we have a better

25      picture?  Asked Taishan, please send

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 286 of 343
Case 1:11-cv-22408-MGC-EEF-MBN Document 299 Entered on FLSD Docket 04/29/2013 Page 256 of 281
March 11, 2019

1        us the color, the clearer picture of

2        this.  And lo and behold, last week we

3        get this picture, and it's clearly

4        Taihe edge tape.  Absolutely,

5        indisputably their edge tape.

6              Where has this photograph been?

7        Why do we go through ten years of

8        litigation, take a deposition where

9        this is what we're provided and a

10       witness says I don't know, maybe it

11       looks like mountain.  It's a little

12       blurry, I can only speculate about

13       that, when in their records all along

14       they had the color picture which

15       definitively proved product ID in the

16       case.

17             You've got to ask, who was it

18       that looked for this stuff?  Did they

19       really look hard or did they kind of

20       do a half-baked search, put a few

21       things together that are beneficial to

22       them in the U.S. litigation and send

23       those over, letting other people run

24       interference for them.

25             I suggest this is another of

Case 2:09-md-02047-EEF-MBN Document 22302-9 Filed 12/06/19 Page 287 of 343
Case 2:11-cv-22408-MCC-EEF Document 299 Filed 09/29/2019 Page 257 of 281
March 11, 2019

1    many examples in the brief and that we

2    presented today where Taishan has had

3    evidence and has not turned it over.

4         Really, after ten years, in

5    January, at the deposition and new

6    documents, the product ID briefing, we

7    see the final stand by Taishan on

8    their theme on how it is that we're

9    supposed to prove product ID.

10        It's the "luckily" testimony

11    from Mr. Che; a very ironic word from

12    our standpoint.  Let's break that

13    down.

14        A corporate witness, on the

15    basis of all of the depositions, all

16    of the records, this guy is the

17    foreign sales manager.  He's been

18    deposed three times.  He's asked about

19    the residual American-sized drywall

20    samples, those three pallets of

21    drywall that we found, and he said:

22    However, very luckily, during my

23    preparation of the witness testimony

24    in deposition representing Taishan,

25    these American-sized residual boards

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 288 of 343
Case 4:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 258 of 281
March 11, 2019

1          were discovered.

2               So very luckily for who?  Very

3          luckily for who?

4               Well, consider now that

5          Taishan's product ID paradigm is that

6          if you can match your product ID

7          exactly to what we see on these three

8          pallets, we're going to accept it.

9               But if you can't, insufficient

10         proof, we deny it.  This is their --

11         this is their final position.

12              So three pallets of drywall

13         with two markings and one illegible --

14         call it three markings of all of the

15         different buckets that we've talked

16         about.

17              Now, it's on a pallet.  I think

18         a reasonable inference for Your Honor

19         is that that came from the same

20         production run, the same printer,

21         (indicating) sprayed those words that

22         you see from the residual buckets,

23         residual boards that we talked about.

24         That was the same printer, same

25         production run, it's all on the same

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 289 of 343
Case 1:11-cv-22408-MGC Document 259 Entered on FLSD Docket 04/29/2019 Page 259 of 281
March 11, 2019

```
 1          pallet.  It was stacked up in the
 2          warehouse at the same time.
 3               So we've got one printer only
 4          for three different types of markings
 5          when there were at least four printers
 6          that were repeatedly changed out.
 7          Every time it was changed it was a
 8          different font.
 9               And we don't have pictures of
10          any other Taishan marking, even the
11          ones they acknowledge that they made
12          on their Manufacturer Profile Form.
13          We don't have a single picture of
14          that.
15               So, therefore, we don't have
16          the picture.  We don't have any of the
17          other production runs with any of the
18          other fonts, so we don't have a
19          picture like these three where we can
20          show it and Taishan will say, you know
21          what, we'll accept that one.
22               So to accept their formulation,
23          the only narrow band of homeowner that
24          gets compensation happens to be
25          someone that had the same font from
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 290 of 343
Case 2:11-cv-22408-MGC-EEF Document 299 Entered on FLSD Docket 04/29/2019 Page 260 of 281
March 11, 2019

1    the same production run that got lucky
2    that it was one of these three stacks
3    that they found.
4          Anyone else that's not a direct
5    match to this, they're out because we
6    can't prove that it matches an example
7    of the drywall that was in their
8    possession.
9          In so doing, they walk away
10   from the responsibility for every
11   other piece of drywall that they
12   manufactured which was sufficient to
13   build thousands of homes.
14         So the question becomes if
15   we're in the situation where we want
16   to know what else is there besides
17   these three -- just these three
18   pallets, where are the e-mails
19   directly to the customers in the U.S.?
20         We know Mr. Che, foreign sales
21   manager, and we've produced many
22   examples where he's directly e-mailing
23   back and forth with U.S. customers.
24         He's got a computer that he did
25   that with in this time frame.  He

March 11, 2019

```
 1          testified that it's been preserved.

 2          He was told to hang on to the

 3          computer.  So far so good.

 4               Then the question becomes:  In

 5          preparation for the deposition today,

 6          did you search your own e-mails, your

 7          own records to see what you had for

 8          foreign sales?  Did you e-mail a

 9          customer?  Did they e-mail back an

10          edge tape or a photograph or something

11          that they had that they wanted that

12          would be evidence to us that could be

13          used in the case?  What do you have?

14               And his response was:

15               (Video playback commenced.)

16               "QUESTION:  In preparing for

17          testifying as Taishan's corporate

18          representative, did you look at your

19          own computer hardware and e-mails to

20          look for evidence of

21          American-sized-drywall?

22               "ANSWER:  No, because the

23          attorneys already have all the

24          documents and evidence.  It would be

25          unefficient for unprofessionals like
```

March 11, 2019

```
 1         us to work on that.  In that case, you
 2         have to wait until next year to depose
 3         me."
 4              (Video playback stopped.)
 5              MR. SERPE:  So when asked did
 6         he look at his own e-mails, he says,
 7         no, I didn't.  It would be inefficient
 8         for unprofessionals like us to work on
 9         that.  In that case you would have to
10         wait until next year to depose me.
11              Let me break that down into two
12         halves.  The first is:  This is his
13         computer, where he stores e-mails from
14         foreign entities, who they were, how
15         to search that.  Who better to look at
16         that computer for evidence of U.S.
17         sales than the guy whose computer it
18         was who is the director of foreign
19         sales who's the 30(b)(6) witness?
20              Yet his testimony is he didn't
21         look at any of that.  He didn't do a
22         search.  He's going to rely on maybe
23         somebody else did that.
24              And then he concludes, in that
25         case, if you want me to do this,
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 293 of 343
Case 1:11-cv-22408-MGC   Document 299   Entered on FLSD Docket 04/29/2019   Page 263 of 281
March 11, 2019

1    you'll have to wait until next year to

2    depose me.

3         Third time out deposing him,

4    clearly on the notice of deposition it

5    was directly on this topic.  One of

6    the topics was making sure you got the

7    witness completely ready to testify

8    with documents in a manner in which he

9    was prepared for the deposition, and

10   he wasn't even reviewing his own

11   e-mails.  He did no search and then

12   he -- he'll joke that if he's got to

13   do that, if he's actually got to look

14   for his own responsive documents, we

15   can come back next year.

16        The look on his face as he

17   finished that answer to me was a

18   triumphant smirk.

19        Special Master, it's to do just

20   this and bring it back to burden and

21   to the equities here.

22        Mr. Walls, Mr. and Mrs. Walls

23   are one of the priority plaintiffs

24   whose case is set for trial this

25   summer.  They're a lovely retired

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 294 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 264 of 281
March 11, 2019

1          couple.  Their entire life was focused

2          towards being able to retire and have

3          this home.

4                The testimony from Mr. Walls

5          indicates what a day in the life is

6          like for the Walls family, and his

7          testimony is very gripping, but I

8          particularly want to point out that

9          twice a day she drives by the house.

10         Some days she pulls over.  She pulls

11         over because the house that she picks

12         up is just down the street and she

13         sees, and when she comes home, she's a

14         wreck.  She's crying, she's all messed

15         up.

16               So a year, come back in a year

17         if you want me to look for my own

18         records, which we didn't keep, or the

19         ones that are on my computer as the

20         head of the foreign sales department

21         I'm not actually going to look at,

22         when their overall strategy was don't

23         turn it over unless it's beneficial to

24         us.

25               We believe that in that

March 11, 2019

1          environment, as special master,

2          reviewing the evidence and for the

3          reasons we pointed out, that you

4          should find that this problem that

5          they created, that the plaintiffs are

6          suffering with, that these plaintiffs,

7          based on this vast amount of evidence

8          on the drywall imported by Taishan and

9          their lack of any concrete information

10         that it wasn't their drywall, we

11         believe you should rule in favor

12         across the board on all of these

13         buckets.  Thank you.

14               MS. EIKHOFF:  I don't have a

15         PowerPoint for my closing, Your Honor,

16         Special Master Lee.  But if you have

17         their PowerPoint handy, at a certain

18         point I may ask you to put up their

19         slide number 9.

20               Ms. Lee, what you just heard

21         from the plaintiffs was not a

22         summation of the evidence as closings

23         are.  Their conclusion was not focused

24         on the proof that they have to satisfy

25         their Florida law burden to show by

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 296 of 343
Case 2:11-cv-22408-MHC-EGT Document 259 Entered on FLSD Docket 04/29/2019 Page 266 of
281
Mar. 11, 2019

```
 1            the greater weight of the evidence
 2            that certain of these categories
 3            should be attributed to Taishan.
 4                 Instead of a summation of their
 5            evidence on product ID, you heard more
 6            of the same theme; the theme that we
 7            told you to expect when we filed our
 8            brief, the theme that we told you to
 9            expect when I stood up here this
10            morning in my opening remarks, the
11            theme that they have articulated
12            bluntly and clearly:  Taishan is a bad
13            actor.
14                 And that's what they're trying
15            to put in front of you in place of
16            evidence of product ID to connect the
17            boards of their clients to boards that
18            were manufactured by Taishan.
19                 And they keep telling you over
20            and over in many ways with many
21            distorted examples of what a bad actor
22            Taishan is.  And the goal of those
23            stories is to persuade you to presume
24            the evidence that they don't have, to
25            flip the burden of proof on Taishan,
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 297 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 267 of 281
March 11, 2019

1       to make Taishan prove that it didn't

2       make the boards for their hundreds and

3       hundreds of claimants.

4            That is not how Florida law

5       works, and it would be a violation of

6       Florida law to be persuaded by these

7       discovery stories and these

8       anti-Chinese manufacturer defendant

9       stories.  It would be a violation of

10      Florida law to replace their

11      evidentiary burden with an assumption

12      that Taishan made these boards because

13      we don't like Taishan.

14           That is not fair, that is not

15      justice, and that is not the law.

16           Now, we've heard a lot about

17      Taishan.  They've been painted as a

18      very nefarious villain today.  It's

19      not the first time we've heard it.

20      We've been hearing it for years.

21           They say Taishan is a giant

22      corporation over there in China.  Let

23      me tell you a little bit more about

24      Taishan's operations in China, because

25      I've been there more than once.

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 298 of 343
Case 2:11-cv-22408-MGC-EEF Document 295 Entered on FLSD Docket 04/29/2013 Page 268 of 281
March 11, 2019

```
1              Taishan has no English speakers

2        that work in Taishan.  They have no

3        presence outside of -- in the United

4        States whatsoever.  E-mails that you

5        have seen in English, the testimony

6        has been that they were translated

7        from Chinese to English using

8        something akin to Google Translate.

9              They don't have an e-mail

10        server.  Any e-mails that they send

11        are on the Chinese equivalent of like

12        a Yahoo or a Hotmail.

13              They have never exported goods

14        to the United States before 2006.  As

15        we've described, this was new for them

16        to ever be called upon to make boards

17        of these sizes to go over to the

18        United States.

19              And they certainly had no

20        experience with U.S. litigation.  The

21        idea, the whole concept of the U.S.

22        legal system is something that is so

23        foreign to their minds, they had no

24        frame of reference.

25              And I'm -- I've just been to
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 299 of 343
Case 2:11-cv-22408-MGC-EEF Document 299 Entered on FLSD Docket 04/29/2019 Page 269 of 281
March 11, 2019

 1          Taishan's headquarters and factory in

 2          the last couple of months.  I went the

 3          week after Christmas, working on this

 4          case.

 5                  There's no heat in the factory.

 6          There's no heat in the offices.  It

 7          was 18 degrees.  There's no lights in

 8          the offices unless -- only in the room

 9          that you're in.  There's no

10          receptionist.

11                  This is a company that in 2006

12          was called upon to make a new type of

13          board for a new type of customer with

14          absolutely no frame of reference at

15          all that U.S. litigation would arise

16          from it.

17                  And so they operated the way

18          that they always operate, in a

19          not-very-sophisticated manufacturing

20          environment in the Shandong province

21          of the People's Republic of China.

22                  They communicated using slips

23          of paper.  They communicated by phone.

24          They communicated in person.

25                  Yeah, there were some e-mails.

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 300 of 343
Case 2:11-cv-22408-MGC-EGT Document 259 Entered on FLSD Docket 04/29/2019 Page 270 of 281
March 11, 2019

1      We produced those e-mails.  Those

2      e-mails were produced -- e-mails

3      regarding American sales were produced

4      in 2012 in this case.  Plaintiffs have

5      had those for years.

6           And so we hear so much about

7      this evil intent to only mail the

8      evidence that is beneficial to

9      Taishan Company.  That's the modus

10     operandi of this evil Chinese company.

11          Let me give you a little

12     context of this document, because

13     you've heard it a lot today.  This was

14     an internal memorandum that was

15     written by Taishan in Chinese to other

16     Chinese nationals.

17          On May 11th, 2009, they were

18     just hearing about litigation in the

19     U.S., and before Taishan had retained

20     U.S. counsel, they were discussing how

21     to respond to this new development

22     that they weren't expecting.

23          And they respond to it the way

24     that nonlawyer, non-American, Chinese

25     manufacturing executives would

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 301 of 343
Case 2:11-cv-22408-MGC - ECF Document 293 Entered on FLSD Docket 04/29/2019 Page 271 of
281

March 11, 2019

```
 1          respond, in an uninformed, probably
 2          naive manner.
 3               What they say here doesn't make
 4          sense in the U.S. legal system, and
 5          the plaintiffs have alluded to that.
 6          They say, well, we're inclined not to
 7          respond to the lawsuit, but if it's
 8          necessary, we can maybe mail some
 9          evidence that's helpful to the
10          Taishan Company, just to the court.
11          We'll mail it to the court, and then
12          we can have the government departments
13          interfere to eliminate and reduce some
14          of this negative impact.
15               They have contorted that
16          uninformed internal nonlegal
17          discussion, contorted it to a motive
18          that they say persists to this day and
19          this month.  They accuse us currently
20          of only producing things that are
21          beneficial to us and accuse us of
22          withholding documents that aren't
23          beneficial to us.
24               It was not beneficial to us to
25          find these exemplars of generic
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 302 of 343
Case 1:11-cv-22408-MGC-EEF Document 299 Entered on FLSD Docket 04/29/2019 Page 272 of 281
March 11, 2019

1      markings because with the admissions

2      of those exemplars, Taishan has

3      accepted the legal responsibility for

4      PID for half of the generic boards at

5      issue in this case.

6           If we were going to

7      systematically withhold negative

8      documents and evidence and only

9      produce what's beneficial to us in

10     this case for nine years, those

11     exemplar photos that we produced never

12     would have seen the light of day.

13          So what you have here is not a

14     spoliation story.  What you have here

15     is a story of a manufacturing company

16     in China that didn't know that what it

17     was doing would, years later, become

18     subject to lawsuits in the United

19     States of America.

20          And the plaintiffs acknowledge

21     this.  They've acknowledged it today.

22     They've acknowledged it in their

23     brief, that when we threw away slips

24     of paper that might have said exactly

25     what the spray marking was going to be

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 303 of 343
Case 4:11-cv-22408-MGC-EEF Document 299-18 entered on FLSD Docket 04/29/2019 Page 273 of 281
March 11, 2019

1          at the -- that went to the factory,

2          that was in the normal course.  That

3          wasn't with knowledge that it was

4          evidence.  That wasn't in bad faith,

5          dereliction of U.S. litigation duties.

6                And so you look at their brief,

7          and they don't use the word

8          "spoliation."  It's nowhere in their

9          brief.  Instead, they want to infuse

10         Taishan's normal recordkeeping in

11         China in 2006 and 2007 with this bad

12         motive and this evil intent that's

13         unfounded and it's unfair.

14               Now, this isn't the first time

15         they've tried to make these kind of

16         points to the court, and we spent a

17         lot of time in this case in 2015 and

18         early 2016 dealing with discovery

19         issues that the plaintiffs said was

20         spoliation.

21               And I'm going to read to you

22         from Judge Fallon's order, which is at

23         the MDL Docket No. 19959 filed on

24         January 8th, 2016.

25               And in that order the Court

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 304 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 274 of 281
March 11, 2019

 1          said -- this is the bold heading:  The

 2          PSC Has Not Proven Spoliation.  He

 3          said, "This Court's Pretrial Order

 4          No. 1 entered on June 16th, 2009

 5          required all parties to take

 6          reasonable steps to preserve all

 7          documents, data and tangible things

 8          containing information potentially

 9          relevant to the subject matter of the

10          litigation.

11              "The Court finds insufficient

12          evidence of intentional failure to

13          preserve evidence under PTO #1 to

14          justify a finding of spoliation.  The

15          PSC has failed to prove that Taishan

16          destroyed, lost or altered evidence

17          relevant to potential violations of

18          the injunction or the relationship

19          between the defendants.

20              "The Court does not find

21          evidence that Taishan intentionally

22          violated PTO #1 or the general duty of

23          preservation."

24              They don't have a Rule 37

25          spoliation case.  That's why they

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 305 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 275 of 281
March 11, 2019

1        haven't filed a motion, and their

2        brief doesn't say that.  Instead,

3        their brief kind of makes it sort of

4        murkier.

5              Well, they threw away documents

6        at the time, and those documents would

7        be helpful now if they had been saved,

8        and they're bad guys, so let's go

9        ahead and presume that those documents

10       would be helpful to us.

11             You can't do that under Florida

12       law.  You can't do it under the

13       Eleventh Circuit either.

14             And there's another issue with

15       PTO #1 preservation and spoliation,

16       and we put it in our brief.  I didn't

17       think we were going to have to go

18       there today, but seems like the door's

19       been opened.

20             If we want to look at failure

21       to comply with PTO #1 preservation in

22       this case, we need look no further

23       than the plaintiffs' Supplemental

24       Profile Forms, which have been turned

25       in in this case in the last year.

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 306 of 343
Case 3:11-cv-22408-MGC-EEF Document 259 Entered on FLSD Docket 04/29/2019 Page 276 of
281

March 11, 2019

```
 1              And those forms, which were

 2        signed by the plaintiffs under penalty

 3        of perjury, 624 of the claimants said

 4        they did not comply with PTO #1 and

 5        preserve the specific drywall evidence

 6        that Judge Fallon ordered them to.

 7              That is 79% of the plaintiffs

 8        that said that they remediated their

 9        properties.  79% of them got rid of

10        the samples of drywall that could have

11        helped us on PID.

12              And so we don't think that they

13        can be heard to talk about Taishan and

14        document preservation, particularly

15        when there's no showing that Taishan

16        violated PTO #1.  They cannot be heard

17        and at the same time hundreds of their

18        clients have not complied with the

19        same order that they would be pointing

20        to.

21              And so what we come to is this:

22        We're not standing before you, Special

23        Master Lee, and being a recalcitrant

24        defendant that won't accept any

25        responsibility for anything and is
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 307 of 343
Case 2:11-cv-22408-MCG-EEF-MBN Document 259 Entered on FLSD Docket 04/29/2019 Page 277 of 281
March 11, 2019

 1        making them prove every single jot and

 2        every single tittle.

 3              It is not consistent with the

 4        plaintiffs' characterization of us of

 5        taking no responsibility when we have

 6        admitted to categories, based on our

 7        own evidence production, that assumes

 8        responsibility for the PID for 47% of

 9        the claims in this case.

10              But they're using their

11        mischaracterization of Taishan and

12        their prejudices against Taishan as a

13        party in this case in asking you to

14        flip the burden, to not make them

15        produce evidence, and to ignore away

16        all of the other evidence.

17              And we've shown you today,

18        Ms. Lee, that there is evidence of

19        other manufacturers and other players

20        in the marketplace that should be

21        called here -- should have been called

22        here to also stand and defend

23        themselves against these allegations.

24              It is not reasonable to

25        conclude that every variation of

March 11, 2019

```
 1          drywall, every marking, including no
 2          markings, all of them, every single
 3          one that's presented to you today,
 4          they're all Taishan.
 5                  That is not a reasonable
 6          conclusion, and we think that the only
 7          way you could conclude it would be if
 8          you accepted their mischaracterization
 9          of Taishan as a litigant and of
10          Florida law and Eleventh Circuit law.
11          And we ask you to hold them to their
12          burden of proof.  Thank you.
13                  MR. SERPE:  Special Master, was
14          there anything as part of that
15          argument that you had a question about
16          that you would like us to address?  I
17          mean, I'm dying to jump up and
18          ad seriatim go through that, but I
19          think that the parties have
20          articulated our positions.
21                  SPECIAL MASTER LEE:  Okay.  So
22          you're done?
23                  MR. SERPE:  Yes.
24                  SPECIAL MASTER LEE:  Okay.
25          Does either side desire to do any
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 309 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 279 of 281
March 11, 2019

```
1        supplemental briefing on any issue?
2        We should decide that today.
3               MR. SERPE:  Special Master,
4        unless you would like anything
5        addressed, of course we'll respond to
6        any request you make for
7        clarification.
8               In an effort to bring closure
9        for these families and not inject
10       another briefing schedule into this,
11       we would just as soon stand on what
12       we've submitted so far.
13              MS. EIKHOFF:  We agree.
14              SPECIAL MASTER LEE:  Okay.
15       Then what I'm inclined to do is I'm
16       going to go back through my notes and
17       go back through your briefs and the
18       appendices to your briefs, and then if
19       there's something that I have a
20       specific question about, I will e-mail
21       the group by Friday, probably, and
22       I'll group everything and we can
23       decide then if we should have a
24       conference call or you can just answer
25       in writing.  It won't be anything that
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 310 of 343
Case 1:11-cv-22408-MGC Document 299-1 Entered on FLSD Docket 04/29/2019 Page 280 of 281
March 11, 2019

```
1        requires long anything, so answering

2        in writing is perfectly okay, but if

3        you think there's a reason that we'd

4        want to get on the phone, we can do

5        that as well.  So I will let you know

6        that by Friday.

7             Is there anything else that we

8        need to address?

9             MS. DUGGAN:  We did have one

10       small favor.  I don't know if this has

11       to be on the record.

12            SPECIAL MASTER LEE:  We can go

13       off the record.

14            (Proceedings recessed at

15       4:29 p.m.)

16                 --o0o--

17

18

19

20

21

22

23

24

25
```

Case 2:09-md-02047-EEF-MBN Document 22392-9 Filed 12/06/19 Page 311 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 281 of
281
March 11, 2019

```
 1                REPORTER'S CERTIFICATION

 2

 3          I, Michael E. Miller, FAPR, RDR, CRR,

 4     Notary Public, hereby certify that this

 5     transcript is a true record of the

 6     proceedings held in the foregoing matter on

 7     Monday, March 11, 2019.

 8          I further certify that I am neither

 9     counsel for, related to, nor employed by any

10     of the parties or attorneys in the action in

11     which these proceedings were taken; and,

12     further, I am not a relative or employee of

13     any attorney of record in these proceedings,

14     nor am I financially or otherwise interested

15     in the outcome of said proceedings.

16

17          Subscribed and sworn to on March 13, 2019.

18

19

20     _____

       MICHAEL E. MILLER,

21     Fellow of the Academy of

       Professional Reporters

22     NCRA Registered Diplomate Reporter

       NCRA Certified Realtime Reporter

23

       Notary Public

24     My Commission Expires: 7/9/2020

25
```

# EXHIBIT

## "F"

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION, | MDL Docket No. 2047 |
| | SECTION L |
| THIS DOCUMENT RELATES TO: | JUDGE FALLON |
| | MAG. JUDGE WILKINSON |
| EDUARDO AND CARMEN AMORIN, *et al.*, individually and on behalf of others similarly situated | |
| Plaintiffs, | Case No. 2:11-cv-01395-EEF-JCW |
| vs. | |
| TAISHAN GYPSUM CO., LTD. F/K/A SHANDONG TAIHE DONGXIN CO., LTD.; TAIAN TAISHAN PLASTERBOARD CO., LTD., *et al.*, | |
| Defendants. | |

## TAISHAN GYPSUM CO., LTD. AND TAI'AN TAISHAN PLASTERBOARD CO., LTD.'s OBJECTIONS AND RESPONSES TO THE PLAINTIFF'S STEERING COMMITTEE'S SUPPLEMENTAL DOCUMENT REQUEST

Defendants Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd. ("Taishan") object and respond to the Plaintiff's Steering Committee's ("PSC") Supplemental Document Request as follows:

## GENERAL OBJECTIONS

Taishan hereby sets forth its general objections to the PSC's Supplemental Document Request on the following basis, all of which are incorporated into Taishan's responses by this reference:

1. Taishan objects to these Requests as unauthorized and untimely to the extent it purports to relate to "ALL CASES" in the MDL. Taishan submits that the only case in the MDL to

which these Requests could possibly relate is *Amorin*, 2:11-CV-01395-EEF-JCW (E.D. La.).

2.  Taishan objects to all of the Document Requests to the extent they seek information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, and/or other applicable privileges.

3.  Taishan objects to these Document Requests to the extent they seek or purport to seek information or documents: which are already in the custody of PSC; which are in the possession of other parties, third parties or in the public domain; or which are not in Taishan's possession, custody or control. To the extent that the PSC seeks information that is more readily available from other sources or already in the possession of the PSC, Taishan objects to these Document Requests as unduly burdensome. Taishan also objects to these Document Requests to the extent they seek to impose upon Taishan the duty to obtain documents, things, or other information from any sources other than its own corporate records. Such document requests are improper and exceed the scope of permissible discovery.

4.  All of these General Objections are incorporated by reference into each and every Document Request response set forth below. Without waiving, and in addition to the foregoing, Taishan makes the following specific objections to the PSC's Document Request:

**SPECIFIC OBJECTIONS AND RESPONSES TO THE PLAINTIFF'S STEERING
COMMITTEE'S SUPPLEMENTAL DOCUMENT REQUEST**

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 1:**

All documents relating to the method that you were relying on in your assertion to

Special Master Lee that "chemical analysis could identify the maker of the drywall" (Taishan

PowerPoint Slide 36) and/or that Taishan believes is available to compare chemical components

of residual boards found in Taishan's warehouse with boards from Plaintiffs' homes. See 2019

CHE Dep. At 71:1-6.

**RESPONSE NO. 1:**

Taishan objects to Document Request No. 1 to the extent that it seeks attorney-client

communications and attorney-work product. Specifically, "the method you were relying on in

your assertion to Special Master Lee" quotes from a demonstrative created by attorneys and not

entered into evidence. For the basis of this demonstrative, Taishan refers Plaintiffs to Taishan's

PID Deposition, January 22, 2019, at 71:1-6. Additionally, Plaintiffs are not entitled to documents

reflecting privileged and protected communications between Taishan, its attorneys and consulting

experts regarding possible chemical analyses. Subject to and without waiving the foregoing

objections, Taishan responds that it has no non-privileged, non-work product protected documents

in its custody and control.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 2:**

All documents relating to any and all methods for chemical analysis for product

identification for Chinese drywall.

**RESPONSE NO. 2:**

Taishan objects to Document Request No. 2 to the extent that it seeks attorney-client communications and attorney-work product. Specifically, Plaintiffs are not entitled to documents reflecting privileged and protected communications between Taishan, its attorneys and consulting experts regarding possible chemical analyses. Subject to and without waiving the foregoing objections, Taishan responds that it has no non-privileged, non-work product protected documents in its custody and control.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 3:**

All documents and samples (including those from other manufacturers) that you contend can serve as exemplars or known samples of Chinese drywall that can be used for the purpose of matching them against samples from individual homes.

**RESPONSE NO. 3:**

Taishan objects to Document Request No. 3 as vague, ambiguous and confusing because "documents" cannot be "exemplars" of Chinese drywall. Reasonably interpreting Request No. 3 as seeking only drywall samples, Taishan refers Plaintiffs to Taishan's PID Deposition, January 22, 2019, which states, "from the chemical analysis channel, we can compare whether the component of chemical from this board is the same as the chemical component which is covered from the residual boards in Taishan's warehouse." Subject to and without waiving the foregoing objections, Taishan is willing to make available to Plaintiffs exemplars from the drywall in its custody and control that are photographed in TG-PID-000001-000033, subject to the Court's approval for any untimely discovery activity.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 4:**

All documents from any tests you have conducted regarding chemical analysis to

identify the maker of the drywall.

**RESPONSE NO. 4:**

Taishan responds that it has conducted no "tests . . . regarding chemical analysis to identify the maker of the drywall," and thus has no documents responsive to Document Request No. 4.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 5:**

All documents from any tests in which chemical analysis was used to identify the maker of the drywall.

**RESPONSE NO. 5:**

See Response to Request No. 4.  N/A.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 6:**

Documents identifying the person(s) who conducted the above mentioned tests and their credentials.

**RESPONSE NO. 6:**

See Response to Request No. 4.  N/A.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 7:**

Documents identifying the source of the gypsum used in the drywall used in any of the above mentioned samples and/or tests.

**RESPONSE NO. 7:**

See Response to Request No. 4.  N/A.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 8:**

Documents identifying the batches, lot numbers, factory, and dates of manufacture for the drywall used in any of the above mentioned samples and/or tests.

**RESPONSE NO. 8:**

See Response to Request No. 4. N/A.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 9:**

Documents identify [sic] the end market(s) to which drywall from the aforementioned batches and lot numbers were sold.

**RESPONSE NO. 9:**

Taishan objects to Document Request No. 9 as vague, ambiguous and confusing. To the extent Request No. 9 references "aforementioned batches and lot numbers," and to the extent that phrase references Document Request No. 8, and to the extent that Document Request No. 8 is limited to "above mentioned samples and/or tests," Taishan refers to its Response to Requests No. 3 and No. 4.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 10:**

All literature, reports, and other documentation that discusses the reliability of chemical analysis to accurately conduct product identification for Chinese drywall.

**RESPONSE NO. 10:**

Taishan objects to Document Request No. 10 to the extent that it seeks attorney-client communications and attorney-work product. Specifically, Plaintiffs are not entitled to documents reflecting privileged and protected communications between Taishan, its attorneys and consulting experts regarding possible chemical analyses. Subject to and without waiving the foregoing objections, Taishan responds that it has no non-privileged, non-work product protected documents in its custody and control.

Respectfully submitted this 12th day of April 2019.

/s Michael P. Kenny
Bernard Taylor, Esq.
Georgia Bar No. 669625
Michael P. Kenny, Esq.
Georgia Bar No. 415064
Christina Hull Eikhoff, Esq.
Georgia Bar No. 242539
David Venderbush, Esq.
New York Bar No. 2920817
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
bernard.taylor@alston.com
mike.kenny@alston.com
christy.eikhoff@alston.com
david.venderbush@alston.com

*Counsel for Taishan Gypsum Co., Ltd. and*
*Tai'an Taishan Plasterboard Co., Ltd.*

Alan Dean Weinberger
Louisiana Bar No. 13331
HANGARTNER, RYDBERG & TERRELL, LLC
One Shell Square
701 Poydras Street, Suite 310
New Orleans, Louisiana 70179
Phone: (504) 434-6815
Fax: (504) 522-5689
aweinberger@hanrylaw.com

*Local Counsel for Taishan Gypsum Co., Ltd. and*
*Tai'an Taishan Plasterboard Co., Ltd.*

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, by U.S. mail and e-mail <u>or</u> by hand delivery and e-mail <u>and</u> upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 12th day of April, 2019.

/s Michael P. Kenny
Michael P. Kenny, Esq.
Georgia Bar No. 415064
ALSTON & BIRD LLP
1201 West Peachtree Street NW
Atlanta, Georgia  30309
Phone: (404) 881-7000
Fax: (404) 881-7777
mike.kenny@alston.com

*Counsel for Taishan Gypsum Co., Ltd. and*
*Tai'an Taishan Plasterboard Co., Ltd.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No. 1:11-CV-22408-MGC**

EDUARDO AND CARMEN AMORIN, *et al.*,
individually, and on behalf of all others
similarly situated,

       Plaintiffs,

v.

TAISHAN GYPSUM CO., LTD. F/K/A SHANDONG
TAIHE DONGXIN CO., LTD.; TAIAN TAISHAN
PLASTERBOARD CO., LTD., *et al.*,

       Defendants.

_____/

**TAISHAN GYPSUM CO., LTD. AND TAI'AN TAISHAN PLASTERBOARD**
**CO., LTD.'s OBJECTIONS AND RESPONSES TO THE PLAINTIFF'S STEERING**
**COMMITTEE'S SUPPLEMENTAL DOCUMENT REQUEST**

Defendants Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd.

("Taishan") object and respond to the Plaintiff's Steering Committee's ("PSC") Supplemental

Document Request as follows:

**GENERAL OBJECTIONS**

Taishan hereby sets forth its general objections to the PSC's Supplemental Document

Request on the following basis, all of which are incorporated into Taishan's responses by this

reference:

1.    Taishan objects to these Requests as untimely under Dkt. No. 174, which established a PID

      discovery deadline of March 5, 2019, and a PID evidentiary hearing, which was conducted

      on March 10, 2019.  These Requests were served on Taishan after the close of PID

      discovery and after the PID evidentiary hearing.

2.  Taishan objects to all of the Document Requests to the extent they seek information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, and/or other applicable privileges.

3.  Taishan objects to these Document Requests to the extent they seek or purport to seek information or documents: which are already in the custody of PSC; which are in the possession of other parties, third parties or in the public domain; or which are not in Taishan's possession, custody or control.  To the extent that the PSC seeks information that is more readily available from other sources or already in the possession of the PSC, Taishan objects to these Document Requests as unduly burdensome.  Taishan also objects to these Document Requests to the extent they seek to impose upon Taishan the duty to obtain documents, things, or other information from any sources other than its own corporate records.  Such document requests are improper and exceed the scope of permissible discovery.

4.  All of these General Objections are incorporated by reference into each and every Document Request response set forth below. Without waiving, and in addition to the foregoing, Taishan makes the following specific objections to the PSC's Document Request:

**SPECIFIC OBJECTIONS AND RESPONSES TO THE PLAINTIFF'S STEERING COMMITTEE'S SUPPLEMENTAL DOCUMENT REQUEST**

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 1:**

All documents relating to the method that you were relying on in your assertion to

Special Master Lee that "chemical analysis could identify the maker of the drywall" (Taishan

PowerPoint Slide 36) and/or that Taishan believes is available to compare chemical components of residual boards found in Taishan's warehouse with boards from Plaintiffs' homes. See 2019 CHE Dep. At 71:1-6.

**RESPONSE NO. 1:**

Taishan objects to Document Request No. 1 to the extent that it seeks attorney-client communications and attorney-work product. Specifically, "the method you were relying on in your assertion to Special Master Lee" quotes from a demonstrative created by attorneys and not entered into evidence. For the basis of this demonstrative, Taishan refers Plaintiffs to Taishan's PID Deposition, January 22, 2019, at 71:1-6. Additionally, Plaintiffs are not entitled to documents reflecting privileged and protected communications between Taishan, its attorneys and consulting experts regarding possible chemical analyses. Subject to and without waiving the foregoing objections, Taishan responds that it has no non-privileged, non-work product protected documents in its custody and control.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 2:**

All documents relating to any and all methods for chemical analysis for product identification for Chinese drywall.

**RESPONSE NO. 2:**

Taishan objects to Document Request No. 2 to the extent that it seeks attorney-client communications and attorney-work product. Specifically, Plaintiffs are not entitled to documents reflecting privileged and protected communications between Taishan, its attorneys and consulting experts regarding possible chemical analyses. Subject to and without waiving the foregoing objections, Taishan responds that it has no non-privileged, non-work product protected documents in its custody and control.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 3:**

All documents and samples (including those from other manufacturers) that you contend can serve as exemplars or known samples of Chinese drywall that can be used for the purpose of matching them against samples from individual homes.

**RESPONSE NO. 3:**

Taishan objects to Document Request No. 3 as vague, ambiguous and confusing because "documents" cannot be "exemplars" of Chinese drywall. Reasonably interpreting Request No. 3 as seeking only drywall samples, Taishan refers Plaintiffs to Taishan's PID Deposition, January 22, 2019, which states, "from the chemical analysis channel, we can compare whether the component of chemical from this board is the same as the chemical component which is covered from the residual boards in Taishan's warehouse." Subject to and without waiving the foregoing objections, Taishan is willing to make available to Plaintiffs exemplars from the drywall in its custody and control that are photographed in TG-PID-000001-000033, subject to the Court's approval for any untimely discovery activity.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 4:**

All documents from any tests you have conducted regarding chemical analysis to identify the maker of the drywall.

**RESPONSE NO. 4:**

Taishan responds that it has conducted no "tests . . . regarding chemical analysis to identify the maker of the drywall," and thus has no documents responsive to Document Request No. 4.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 5:**

All documents from any tests in which chemical analysis was used to identify the maker of the drywall.

**RESPONSE NO. 5:**

    See Response to Request No. 4.  N/A.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 6:**

    Documents identifying the person(s) who conducted the above mentioned tests and their credentials.

**RESPONSE NO. 6:**

    See Response to Request No. 4.  N/A.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 7:**

    Documents identifying the source of the gypsum used in the drywall used in any of the above mentioned samples and/or tests.

**RESPONSE NO. 7:**

    See Response to Request No. 4.  N/A.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 8:**

    Documents identifying the batches, lot numbers, factory, and dates of manufacture for the drywall used in any of the above mentioned samples and/or tests.

**RESPONSE NO. 8:**

    See Response to Request No. 4.  N/A.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 9:**

    Documents identify [sic] the end market(s) to which drywall from the aforementioned batches and lot numbers were sold.

**RESPONSE NO. 9:**

    Taishan objects to Document Request No. 9 as vague, ambiguous and confusing.  To the extent Request No. 9 references "aforementioned batches and lot numbers," and to the extent that

phrase references Document Request No. 8, and to the extent that Document Request No. 8 is
limited to "above mentioned samples and/or tests," Taishan refers to its Response to Requests No.
3 and No. 4.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 10:**

All literature, reports, and other documentation that discusses the reliability of
chemical analysis to accurately conduct product identification for Chinese drywall.

**RESPONSE NO. 10:**

Taishan objects to Document Request No. 10 to the extent that it seeks attorney-client
communications and attorney-work product. Specifically, Plaintiffs are not entitled to
documents reflecting privileged and protected communications between Taishan, its attorneys
and consulting experts regarding possible chemical analyses. Subject to and without waiving the
foregoing objections, Taishan responds that it has no non-privileged, non-work product protected
documents in its custody and control.

Dated: April 12, 2019

Respectfully submitted,

*/s/ Enjoliqué Aytch*
Enjoliqué Aytch
Fla. Bar No. 0104881
Email: enjolique.aytch@akerman.com
Akerman LLP
Las Olas Centre II, Suite 1600
350 East Las Olas Boulevard
Fort Lauderdale, FL 33301-2229
Telephone: (954) 463-2700
Facsimile: (954) 463-2224

**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777

Bernard Taylor, Esq.
Georgia Bar No. 669625
Michael P. Kenny, Esq.
Georgia Bar No. 415064
Christina Hull Eikhoff, Esq.
Georgia Bar No. 242539
David Venderbush, Esq.
New York Bar No. 2920817
bernard.taylor@alston.com
mike.kenny@alston.com
christy.eikhoff@alston.com
david.venderbush@alston.com

*Attorneys for Taishan Gypsum Co., Ltd. and*
*Tai'an Taishan Plasterboard Co., Ltd.*

## SERVICE LIST

Arnold Levin, Esq.
Sandra Duggan, Esq.
Frederick S. Longer, Esq.
LEVIN SEDRAN & BERMAN LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500
*Attorneys for Plaintiffs*

Jay P. Dinan
Email: jdinan@yourlawyer.com
Parker Waichman LLP
27300 Riverview Center Boulevard, Suite
103
Bonita Springs, Florida 34134
Office: 239.390.1000
Fax: 239.390.0055
*Counsel for Parker Waichman LLP Plaintiffs*

Dawn Barrios, Esq.
Emma Kingsdorf Schwab, Esq.
BARRIOS, KINGSDORF & CASTEIX,
LLP
701 Poydras Street, Suite 3650
New Orleans, Louisiana 70139,
504-524-3300
*Attorneys for Plaintiffs*

Jimmy Faircloth, Esq.
Faircloth, Melton, & Sobel
Gras Town Plaza,
412 N. 4th Street, Suite 230
Baton Rouge, LA 70802,
(225) 343-9535
*Attorney for Plaintiffs*

Leonard A. Davis, Esq.
HERMAN, HERMAN & KATZ, LLC
820 O'Keefe Avenue,
New Orleans, Louisiana 70113,
PH: (504) 581-4892
*Attorneys for Plaintiffs*

Scott A. George, Esq.
Jeffrey S. Grand, Esq.
Christopher Seeger, Esq.
Seeger Weiss LLP
1515 Market Street, Suite 1380
Philadelphia, PA 19102,
(215) 564-2300
*Attorney for Plaintiffs*

Pearl Anna Robertson, Esq.
IRPINO, AVIN, HAWKINS, LLP
2216 Magazine Street
New Orleans, LA 70130
504-525-1500
*Attorneys for Plaintiffs*

Jeffrey A. Breit, Esq.
BREIT DRESCHER IMPREVENTO,
P.C.
600 22nd Street, Suite 402
Virginia Beach, VA 23451
757-622-6000
*Attorneys for Plaintiffs*

James V. Doyle, Esq.
DOYLE LAW FIRM, PC
2100 Southbridge Pkwy., Suite 650
Birmingham, AL 35209
Tele: 205-533-9500 Fax: 844-638-5812
Jim.Doyle@DoyleFirm.com

Richard S. Lewis, Esq.
Hausfeld LLP,
1700 K Street, NW., Ste. 650
Washington, DC 20006
(202) 540-7200
*Attorneys for Plaintiffs*

*Attorneys for Plaintiffs*

Richard J. Serpe, Esq.
LAW OFFICES OF RICHARD J.
SERPE, PC.
580 E. MAIN STREET, SUITE 310
Norfolk, Virginia 23510
757-233-0009
*Attorneys for Plaintiffs*

Patrick Shanan Montoya
Email: Patrick@colson.com
Colson Hicks Eidson
255 Alhambra Circle, PH
Coral Gables, FL 33134-2351
Telephone: (305) 476-7400
Facsimile: (305) 476-7444
*Interim Lead Counsel for Plaintiffs*

David Venderbush, Esq.
Michael P. Kenney, Esq.
Kristine McAlister Brown, Esq.
Christina Hull Eikhoff, Esq.
Bernard Taylor, Esq.
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Tel: 404-881-7000 Fax: 404-881-7777
*Counsel for Defendant Taishan Gypsum Co.
Ltd, & Tai'an Taishan Plasterboard Co.*

Eric Matthew Hairston, Esq.
L. Christopher Vejnoska, Esq.
James L. Stengel, Esq.
Andrew K. Davidson, Esq.
Orrick, Herrington & Sutcliffe, LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105
Tel: 415-773-5700
*Counsel for BNBM PLC*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Case No. 2:11-CV-377-MSD**

EDUARDO AND CARMEN AMORIN, *et al.*,
individually, and on behalf of all others
similarly situated,

      Plaintiffs,

v.

TAISHAN GYPSUM CO., LTD. F/K/A SHANDONG
TAIHE DONGXIN CO., LTD.; TAIAN TAISHAN
PLASTERBOARD CO., LTD., *et al.*,

      Defendants.

_____/

**TAISHAN GYPSUM CO., LTD. AND TAI'AN TAISHAN PLASTERBOARD**
**CO., LTD.'s OBJECTIONS AND RESPONSES TO THE PLAINTIFF'S STEERING**
**COMMITTEE'S SUPPLEMENTAL DOCUMENT REQUEST**

      Defendants Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd.

("Taishan") object and respond to the Plaintiff's Steering Committee's ("PSC") Supplemental

Document Request as follows:

**OBJECTION**

      Taishan objects to these Requests as not in compliance with Federal Rule of Civil

Procedure 26, unauthorized and untimely, as the Court is considering the parties' competing

discovery and trial plans, and has not established any discovery period.

1

Dated: April 12, 2019                     Respectfully submitted,

                                          */s/ Eric D. Cook*
                                          Eric D. Cook
                                          Virginia Bar No. 68054
                                          Willcox & Savage P.C.
                                          Wells Fargo Center
                                          440 Monticello Ave., Suite 2200
                                          Norfolk, VA 23510
                                          Telephone: 757-628-5500
                                          Facsimile: 757-628-5566

                                          **ALSTON & BIRD LLP**
                                          1201 West Peachtree Street
                                          Atlanta, Georgia 30309
                                          Phone: (404) 881-7000
                                          Fax: (404) 881-7777

                                          Bernard Taylor
                                          Georgia Bar No. 669625
                                          Michael P. Kenny, Esq.
                                          Georgia Bar No. 415064
                                          Christina Hull Eikhoff, Esq.
                                          Georgia Bar No. 242539
                                          David Venderbush, Esq.
                                          New York Bar No. 2920817
                                          bernard.taylor@alston.com
                                          mike.kenny@alston.com
                                          christy.eikhoff@alston.com
                                          david.venderbush@alston.com

                                          *Attorneys for Taishan Gypsum Co., Ltd. and*
                                          *Tai'an Taishan Plasterboard Co., Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of April, 2019, I electronically filed the foregoing Notice and Request for Oral Argument with the Clerk of the Court using the CM/ECF system which will then send a notification of such filing (NEF) to counsel of records.

*/s/ Eric D. Cook*
Eric D. Cook
Virginia Bar No. 68054
Willcox & Savage P.C.
Wells Fargo Center
440 Monticello Ave., Suite 2200
Norfolk, VA 23510
Telephone: 757-628-5500
Facsimile: 757-628-5566
*Counsel for Taishan Gypsum Co., Ltd. and*
*Tai'an Taishan Plasterboard Co., Ltd.*

# EXHIBIT

# "G"

# ALSTON & BIRD

One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
404-881-7000 | Fax: 404-881-7777

Christina Hull Eikhoff                    Direct Dial: 404-881-4496                    Email: christy.eikhoff@alston.com

April 18, 2019

**VIA EMAIL**

Richard J. Serpe, Esq.
Law Offices of Richard J. Serpe, PC
580 East Main Street, Suite 310
Norfolk, VA 23510
rserpe@serpefirm.com

Re:     *Amorin v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co.,*
          *Ltd*, Civil Action No. 1:11-CV-22408-MGC (S.D. Fla.);
          *Amorin v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co.,*
          *Ltd*, Civil Action No. : 2:11-CV-01395-EEF-JCW (E.D. La);
          *Amorin v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co.,*
          *Ltd,* Civil Action No. 2:11-CV-377-MSD (E.D. Va.)

Dear Richard:

This letter relates to your Requests for Production of Documents to Taishan served on March 13, 2019, and our objections and responses to those discovery requests served on April 12, 2019. Your discovery pursuit is controversial, and we have met and conferred about the discovery extensively by email and on the phone. I expressly incorporate all of our positions stated in those dialogues, and we stand by all of our objections.

However, in an effort to resolve this discovery dispute, you have requested in writing some statements by us. Because these statements are true and entirely consistent with what we've already told you, we have agreed to summarize them here.

We understand that your new discovery pursuit arises from the following testimony of Taishan's corporate representative on January 22, 2019:

> Of course, there are other ways to make the [PID] determination. . . .
>
> Number two, from the chemical analysis channel, we can compare whether the component of chemical from this board is the same as the chemical component which is covered from the residual boards in Taishan's warehouse.

Alston & Bird LLP                                                                                        www.alston.com

Atlanta | Beijing | Brussels | Charlotte | Dallas | Los Angeles | New York | Raleigh | San Francisco | Silicon Valley | Washington, D.C.

April 18, 2019
Page 2

(Taishan Dep., Jan. 21, 2019, at 70-71). That proposal was made in good faith based on the witness's true beliefs from his long experience in the drywall manufacturing industry. To this day, you have never asked Taishan any questions about that statement, either during the remainder of that 2-day deposition or by subsequent interrogatories. Taishan did not represent, and has never represented, that it has in fact performed chemical analysis tests on its boards (or any other boards) for product identification purposes. That is why Taishan has no responsive documents to your document requests about prior testing.

At the Florida PID hearing on March 11, our demonstrative and oral argument paraphrased the above quoted deposition testimony. On the record, you vigorously argued against the feasibility of a comparative analysis of the chemical composition of drywall.

The possibility of doing a comparative analysis of the chemical composition of sample drywall boards has been discussed in attorney-client communications many times during our representation of Taishan. Any documentation of those communications would either be in an attorneys' notes of the conversations, or in the client's notes of the conversations. Both would be privileged and very difficult to isolate considering our 4+ year engagement in this case. We have also had oral conversations with consulting experts about the concept of doing a comparative analysis. However, no expert has ever been engaged by us on that issue, and it is not in the scope of any of our designated experts analysis and reports.

We continue to object to your discovery requests on this issue as substantively and procedurally improper. It is not Taishan's job to show you how to meet your burden of proof on Product ID, nor did it become Taishan's job by merely making suggestions (this was one of many) of ways you could do it. Moreover, the discovery requests are too late in Florida, too early in Virginia, and a distinct departure from our course of litigation in Louisiana.

We know you disagree. We are nevertheless providing you with this letter in the hopes that this dispute can come to an end.

Sincerely,

Christina Hull Eikhoff

cc:    Bernard Taylor, Esq.
       Mike Kenny, Esq.
       David Venderbush, Esq.
       Sandra Duggan, Esq.
       Leonard Davis, Esq.

LEGAL02/38910730v1

# EXHIBIT

# "H"



# EXHIBIT

# "I"



# EXHIBIT

# "J"





# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

EDUARDO AND CARMEN AMORIN, *et al.*, individually, and on behalf of all others similarly situated,

      Plaintiffs,

v.

TAISHAN GYPSUM CO., LTD. f/k/a SHANDONG TAIHE DONGXIN CO., LTD.; TAIAN TAISHAN PLASTERBOARD CO., LTD., *et al.*,

      Defendants.

Case No. 1:11-CV-22408-MGC

**[PROPOSED] ORDER GRANTING PLAINTIFFS' OBJECTIONS TO THE SPECIAL MASTER'S REPORT AND RECOMMENDATION REGARDING PRODUCT ID CATEGORIES ATTRIBUTABLE TO TAISHAN GYPSUM CO., LTD.**

THIS MATTER is before the Court on Plaintiffs' Objections to the Special Master's Report and Recommendation Regarding Product ID Categories Attributable to Taishan Gypsum Co., Ltd., filed April 29, 2019.

The Court having reviewed the Objections and being fully advised in the premises, IT IS HEREBY ORDERED THAT Plaintiffs' Objections are **GRANTED**.

The Court **FURTHER ORDERS and ADJUDGES** that the Special Master's Report and Recommendation Regarding Product ID Categories Attributable to Taishan Gypsum Co., Ltd. is hereby **MODIFIED** so that the following Product ID Categories (and markings contained in all photos therein) are attributable to Taishan Gypsum Co. Ltd.: C&K; IMT Gypsum; ProWall; Taian Tape or Taihe Tape; Made in China Meet[s] or Exceed[s]; Various drywall dimensions, including 4feetx12feetx1/2inch; Venture Supply; and White Edge Tape, boards with no markings or boards with no markings other than numbers.

**DONE and ORDERED** in Chambers, Miami, Florida, this ___ day of _____, 20__.

_____
Honorable Marcia G. Cooke
United States District Judge