UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:11-CV-22408-MGC

EDUARDO AND CARMEN AMORIN, *et al.*,
Individually, and on behalf of all others
similarly situated,

      Plaintiffs.

v.

TAISHAN GYPSUM CO., LTD. f/k/a
SHANDONG TAIHE DONGXIN CO., LTD.,
TAIAN TAISHAN PLASTERBOARD CO., LTD., *et al.*,

      Defendants.

_____/

## SPECIAL MASTER'S FIRST REPORT AND RECOMMENDATION REGARDING DEFENDANTS' CONTESTS AND SET-OFFS[1]

**THIS CAUSE** having come before Special Master Tiffani G. Lee for hearing on April 10-11, 2019, pursuant to the Order Appointing Special Master dated November 16, 2018 (ECF No. 110), and the Trial Plan for Property Damage Claims identified as Attachment A to the Order dated November 16, 2018 (ECF No. 112), and the Special Master having reviewed Defendant Taishan's Brief on Contests and Setoffs dated April 2, 2019 ("Taishan Defendants' Brief"), Plaintiffs' Omnibus Response to Defendants' Final Contests and Requests for Setoffs Regarding the Calculation of Remediation Damages for the Florida *Amorin* Plaintiffs dated April 8, 2019 ("Plaintiffs' Response"), Plaintiffs' Post-Hearing Briefing Regarding Defendants' Contests and Setoffs dated April 22, 2019 ("Plaintiffs' Post-Hearing Brief #1"), and Plaintiffs' Post-Hearing Briefing Regarding Defendants' Revised Objections "G" and "J" dated April 24, 2019 ("Plaintiffs'

---

[1] The "Taishan Defendants" are Defendants Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd.

**EXHIBIT 9 to Memorandum of Law in Support of Class Settlement**

Case 2:09-md-02047-EEF-MBN Document 22392-14 Filed 12/06/19 Page 2 of 15
Case 1:11-cv-22408-MGC Document 266 Entered on FLSD Docket 05/08/2019 Page 2 of 15

Post-Hearing Brief #2"), heard argument by the parties' counsel, and being otherwise advised in the premises, it is

FOUND AND RECOMMENDED as follows:

I. **PRELIMINARY STATEMENT**

The Court appointed the Special Master for the specific and limited purpose "to assist the expeditious resolution of disputes." (ECF No. 110 at 1). Specifically, the Special Master's duties are to "proceed with all reasonable diligence to facilitate the resolution of the Property Damage Claims as laid out in this Court's Order and Trial Plan." (ECF No. 110 at 2). Revisiting the findings and rulings of the MDL or this Court is not within the scope of the Special Master's duties as defined by the Order Appointing Special Master. Yet, in many respects, that is precisely what the Defendants ask in their contests. Further, while the clear purpose of the adoption of the remediation damages formula was to streamline the process for adjudicating the property damage claims to avoid the time and expense of individual adjudication of each claim, Defendants collectively propose that approximately 1500 of the approximate 1800 Florida property claims be "off-tracked," *i.e.,* excluded from the remediation damages formula process and returned to Judge Cooke for discovery and individual adjudication. Given the clear directive of the Order Appointing Special Master and the limited scope of the Special Master's duties, the Special Master rejects most of Defendants' contests.

II. **RELEVANT BACKGROUND**

This case involves a certified class action brought by property owners in Florida, Louisiana, and Virginia against companies responsible for defective Chinese-manufactured drywall. The United States Judicial Panel on Multidistrict Litigation consolidated several actions in an MDL proceeding in the United States District Court for the Eastern District of Louisiana where it was

litigated for approximately nine years. The MDL court remanded the action to this Court in 2018. *See* Remand Order filed June 6, 2018 (ECF No. 13).

During the approximate nine years the consolidated action was litigated in the MDL, Judge Fallon made several significant rulings. In September 2014, Judge Fallon entered his Findings of Fact and Conclusions of Law with Respect to Plaintiffs' Omnibus Motion for Class Certification Pursuant to Rule 23(a)(1)-(4) and 23(b)(3) (the "Class Certification Order"). *See In re Chinese-Manufactured Drywall Products Liability Litig.*, 2014 WL 4809520 (E.D. La. Sept. 26, 2014). In the Class Certification Order, Judge Fallon concluded that "class-wide damages can be established in an efficient manner without the need for a trial." *Id*. at ¶75. He further found that "[g]iven the extreme costs involved in litigating this matter, class members (as a whole) have no ability to individually prosecute these matters." *Id*. at ¶78. He then certified a class defined as:

> All owners of real properties in the United States, who are named Plaintiffs on the complaints in *Amorin*, *Germano*, *Gross*, and/or *Wilz* (*i.e.,* not an absent class member), asserting claims for remediated damages arising from, or otherwise related to Chinese Drywall manufactured, sold, distributed, supplied, marketed, inspected, imported or delivered by the Taishan Defendants.

*Id*. at ¶79.A. In October 2018, Judge Fallon accepted the Plaintiffs' Steering Committee's Notice of Clarification Regarding the Composition of the *Amorin* Class, in which Plaintiffs argued that it would be inequitable to reward Defendants for their dilatory tactics in this litigation by excluding former owners from the class definition. *See* Order & Reasons dated October 11, 2018 (MDL Document No. 21846) (finding that the *Amorin* Class includes both present and former homeowners whose homes were adversely affected by Chinese Drywall manufactured, sold, distributed, supplied, marketed, inspected, imported, or delivered by the Taishan Defendants).

In September 2017, Judge Fallon entered his Findings of Fact and Conclusions of Law Related to the June 9, 2015 Damages Hearing (the "Class Damages Order"). *See In re Chinese-Manufactured Drywall Products Liability Litig.*, 2017 WL 1421627 (E.D. La. April 24, 2017). In

3

the Class Damages Order, Judge Fallon adopted and incorporated the *Germano* FOFCOL regarding the scope of remediation required for class plaintiffs' properties. *Id*. at ¶6; *see also Id.* at ¶17 (summarizing the appropriate scope of remediation). Judge Fallon found that "[g]iven the unique circumstances surrounding Chinese drywall and the absence of efficient and appropriate alternatives, a formulaic method used to calculate remediation damages is fair and reasonable." *Id*. at. ¶55. In doing so, he rejected Defendants' challenge to the use of an estimation of remediation costs and their urging for a series of individual inspections and individual mini-trials that would result in significant costs to the claimants and further delay. *Id*. at ¶55. Judge Fallon noted that Chinese drywall presents a "truly unique dilemma" and found that "damages from Chinese drywall are not easily analogized to those of typical class actions." *Id*. at ¶63; *see also Id.* at ¶¶64-79 (comparing the Chinese drywall class action to class actions regarding asbestos, mass accidents, and antitrust to demonstrate why a formulaic method for calculating damages is appropriate in this case). Judge Fallon concluded that a formulaic approach is superior to thousands of individual proceedings. *Id*. at ¶¶87-90 (finding that it is "unnecessary and unjust to hold individual mini-trials to determine remediation damages in this case"). Finally, Judge Fallon adopted Plaintiffs' damages methodology to quantify the aggregate damages, including that

> [t]he damages awarded will be calculated by multiplying the under air square footage of the affected properties listed in the revised Class Plaintiffs' Spreadsheet by $105.91[2] *as adjusted* by the RS Means location factor. Ultimately, all such claims will be based on verifications, not only of the under air living space square footage of the contaminated property, but also the presence of Taishan Drywall in those properties.

*Id*. at ¶93.

---

[2] In a footnote, Judge Fallon noted that the $105.91 figure is the national square foot unit price with certified industrial hygienist (CIH) costs included and was calculated by Plaintiffs' expert using R.S. Means to adjust the $86 per square foot cost to reflect current-day building materials and labor. *Id*. at n. 10.

4

After the case was remanded to this Court, the parties filed a series of motions seeking to determine how much deference this Court would give to the decisions Judge Fallon made in the MDL. Ultimately, this Court gave preclusive effect to Judge Fallon's findings of fact and conclusions of law and adopted "**all** of Judge Fallon's factual and legal conclusions . . .." (ECF. No. 112 at 3) (emphasis in original).[3] In doing so, the Court found that "[t]he remediation formula [set by Judge Fallon in his 2015 Class Damages Order] represents a reasonable and reliable measure of the remediation damages which the Court will apply to determine the appropriate amount of property damages." *Id*. This Court also adopted a Trial Plan for Property Damages Claims with a schedule for the Plaintiffs to amend and update SPPFs and the parties to conduct limited discovery on three issues: Product ID, Ownership Verification, and Square Footage. (ECF No. 112 at Exhibit A).[4] The Trial Plan contemplates that the Special Master will use the Remediation Formula to issue a Report and Recommendation as to the total award for Property Damages Claims not later than May 31, 2019. *Id*. In January 2019, the parties jointly requested that the Special Master accept the parties' proposed modifications of certain deadlines in the Trial Plan for discovery and resolution of property damages. *See* Joint Submission to Special Master

---

[3] The Court denied as moot several motions, including Defendants' Motion and Memorandum to Enforce Discovery Rights (ECF No. 66) and Defendants' Motion to Reject Application of Remediation Damages Formula (ECF No. 61). *See* Order (ECF No. 112) at 4.

[4] As stated on its face, the SPPF

> "must be completed and signed by every person making a claim in this litigation against the manufacturer of Chinese Drywall, other than the Knauf Defendants, using one form per Property. In completing this Supplemental Profile Form, you are under oath and must provide all information within your knowledge, custody and control that is true and correct to the best of your knowledge. . . . You have an affirmative obligation to search for all documents, electronically stored information, and tangible things responsive to this questionnaire. . . . Failure to fully complete this Supplemental Profile Form and provide the appropriate documents may result in a motion filed against you pursuant to Rule 37 of the Federal Rules of Civil Procedure, which could include a request for dismissal of the action in whole or in part."

*See, e.g.,* Plaintiffs' Exhibit 19. The same is true for amendments to the profile forms. *See, e.g.,* Plaintiffs' Exhibit 40 (exemplar of a First Amended Supplemental Plaintiff Profile Form)).

5

Regarding Schedule for Discovery and Adjudication of Claims for Property Damages (ECF No. 162). That revised proposal, which the Special Master accepted, did not change the May 31st deadline for the Special Master's final Report and Recommendation.

Pursuant to the Trial Plan, the Defendants conducted limited discovery. On January 17, 2019, Defendants propounded Defendants' First Set of Interrogatories to All Claimants. (*See* Plaintiff's Exhibit 3). On February 1, 2019, Plaintiffs served their responses to Defendants' ownership and square footage discovery requests by way of a spreadsheet (as agreed by the parties) setting forth verified under-air square footage information and current ownership/assignment status for the 1,802 Florida *Amorin* claimants before the Court. The parties also engaged in informal exchanges of information (via e-mail and phone conference) in an attempt to resolve issues regarding various claims. (*See, e.g.,* Plaintiffs' Exhibit 5 (February 13, 2019 e-mail re follow-up to call regarding contests/set-offs for remediation damages); Plaintiffs' Exhibit 17 (April 2, 2019 e-mail exchange regarding Contests B and C); Plaintiffs' Exhibit 51 (April 1, 2019 e-mail exchange re under-air square footage)). Defendants also had available to them each claimant's "claim file" electronically accessible through the BrownGreer Portal. Those claim files include Plaintiff Profile Forms ("PPF"), Supplemental Plaintiff Profile Forms ("SPPF"), indicia of Chinese drywall in the home, proofs of ownership of the property, proofs of purchase and sale documents, evidence of damages, receipts and invoices for repairs and replacements, square footage information, information regarding remediation expenses, other remediation-related documents, and information regarding prior settlement payments. (*See* Plaintiffs' Omnibus Response at 3).

6

**III. DISCUSSION/ANALYSIS**[5]

      **a. Defendants' Contests That Seek to Revisit the Courts' Prior Rulings Should be Overruled.**

While the Defendants are within their right to present contests in accordance with the Trial Plan, the Special Master's role is not to revisit or second-guess the findings of fact, conclusions of law and other rulings made by Judge Fallon in the MDL proceeding or made or adopted by Judge Cooke in this proceeding. Further, the Defendants cannot now raise arguments and defenses that could or should have been made earlier in the litigation such as arguments, affirmative defenses and defenses that have been waived by virtue of their being defaulted. Accordingly, the following contests should be overruled for the reasons specified:

**Contest A – Claims Not Alleged in the Florida *Amorin* Complaint Are Not Before the Court.** Defendants seek to exclude five claims (#s 265, 312, 313, 378, and 1329) that were not alleged in the *Amorin* complaint because, in their view, "[u]nless Judge Cooke certifies a Florida-law subclass after a properly supported motion for certification and the required Rule 23 rigorous analysis, claimants not named as plaintiffs in the *Amorin* complaint are not within the Court's jurisdiction and cannot be litigated here." *See* Taishan Defendants' Brief at 13-14. In the Class Certification Order, however, Judge Fallon certified a class that included named Plaintiffs in *Amorin*, *Germano*, *Gross*, and/or *Wilz*. Because these claimants were included in earlier complaints identified in the MDL class definition, their property damage claims can be adjudicated here.

Under Contest A, Defendants also seek to exclude three claims (#s 236, 238, and 239) that are listed on the Plaintiffs' spreadsheet under the name Cobblestone on the Lake Master

---

[5] Defendants' Contest B – Plaintiffs Who Assigned Their Claims for Remediation Damages May Not Pursue Those Claims Against Taishan – was resolved by the parties. Plaintiffs withdrew 20 of the challenged claims, and Defendants withdrew their contest as to the other three.

7

Association, Inc. ("Cobblestone"). Defendants admit that Plaintiffs listed Cobblestone with a property address of "4351 Bellaria Way (building 4)" in the *Amorin* complaint, but they note that Plaintiffs did not list two of the three specific property units and the third was listed under an individual's name. *See* Taishan Defendants' Brief at 12-13. Given that Cobblestone was listed as a plaintiff in the *Amorin* complaint, Defendants could have conducted basic discovery to determine which specific units were at issue. They have been on notice of claimants within Cobblestone for some time. It would be inequitable to exclude these claims at this stage of the proceedings.

**Contest D** – Florida Law Does Not Permit Former Owners Who Never Remediated to Recover Remediation Damages – was partially resolved by the MDL's clarification of the class definition to confirm that former owners are included for equitable reasons. *See* Order & Reasons dated October 11, 2018 (MDL Document No. 21846). Plaintiffs also filed a motion seeking the MDL's determination as to whether the court-approved remediation damages formula applies to former owners. *See* Plaintiffs' Steering Committee's Motion for An Order (Under FRCP 55(b)) Applying the Remediation Damages Formula Adopted by the Findings of Fact & Conclusions of Law Related to the June 9, 2015 Damages Hearing to the Claims of Former Owners of Affected Properties (MDL Document No. 221155). On May 3, 2019, Judge Fallon issued his Order & Reasons granting in part and denying in part the motion. He granted the motion with respect to former owners who remediated the property before relinquishing ownership. He denied the motion with respect to those who did not, but concluded that the remediation damages formula creates a rebuttable presumption of their diminution damages calculation. *See* Order & Reasons dated May 3, 2019 (MDL Document No. 22237).

**Contest E** – Plaintiffs Who Do Not Fall Within the Class Definition Because They Never Owned the Damaged Properties Are Not Entitled to A Formulaic Damages Award - is essentially

8

an argument about whether condominium associations have standing to bring these property damage claims. Standing is an affirmative defense that has been waived by the Defendants' default.[6]

**Contest L** – Plaintiffs Whose Affected Property Was Completely Remediated Are Barred from the Formula Process by Court Order and Florida Law. Judge Cooke has already determined that "plaintiffs who have completely remediated may only recover the actual cost of remediation" and not formulaic damages. (ECF No. 112). The parties do not dispute this, but they do dispute whether some properties that Plaintiffs now list as partially remediated are, in fact, completely remediated. Plaintiffs argue that complete remediation is to be determined based upon the *Germano* protocol referenced and adopted in the Class Damages Order. When the Special Master reviews all of the remaining claim files to apply the court-approved remediation damages formula, any deficiencies or discrepancies regarding remediation status will be addressed. These claims should not be off-tracked at this stage.

**Contest M** – Florida Law Also Bars from the Formula Process Plaintiffs Whose Affected Property was Partially Remediated. Judge Fallon and Judge Cooke determined that properties that were partially remediated are entitled to damages under the approved formula. The *Barile Excavating* case cited by Defendants to support their argument that this ruling is contrary to Florida law (*See* Taishan Defendants' Brief at 31) is readily distinguishable as the holding is expressly limited to unfinished construction projects. *See Barile Excavating & Pipeline Co., Inc. v. Kendall Properties, Inc.*, 462 So. 2d 1129, 1130 (Fla 4th DCA 1984).

**Contest P** – The Remediation-Damages Formula Calculations Proffered By Plaintiffs Do Not Conform to the MDL Formula Adopted by the Court. In the Class Damages Order, Judge

---

[6] Even if the standing argument had not been waived by the Defendants, Florida law is clear that condominium associations have standing to sue on behalf of unit owners in some circumstances.

9

Fallon adopted Plaintiffs' methodology for determining remediation damages and adopted a remediation damages formula that was later adopted by Judge Cooke. The square foot price specified by Judge Fallon in 2017 was $105.91. He noted, however, that Plaintiffs' expert used the R.S. Means to adjust the per square foot cost to reflect current-day costs of building materials and labor. *See* Class Damages Order at ¶93, n.10. Consistent with the adjust to current-day costs made in the 2017 Class Damages Order, Plaintiffs argue that they are entitled to current remediation damages and that the remediation damages formula approved in the MDL and by this Court must be updated to include information according to the R.S. Means data for 2019, as adjusted for each zip code. *See* Plaintiffs' Post-Hearing Brief at 6. On April 18, 2019, Plaintiffs submitted a Supplemental Remediation Damages Spreadsheet based on this 2019 information with a national price per square foot of $117.94, as adjusted for local factors. This is appropriate given the intent to reflect current-day costs.

### b. Defendants' Contests That Seek the Special Master's Input on Matters Pending Before Judge Cooke or Judge Fallon Should be Overruled.[7]

The Special Master does not think it would be appropriate to weigh-in on matters that are currently pending before Judge Fallon or Judge Cooke for resolution. Accordingly, the following contests should be overruled for the reasons specified:

**Contest D** – Florida Law Does Not Permit Former Owners Who Never Remediated to Recover Remediation Damages – has been resolved by the MDL's ruling on the pending Plaintiffs' Steering Committee's Motion for an Order (Under FRCP 55(b)) Applying the Remediation Damages Formula Adopted By the Findings of Fact & Conclusions of Law Related to the June 9, 2015 Damages Hearing to the Claims of Former Owners of Affected Properties (MDL Document

---

[7] If the Court desires a Report and Recommendation from the Special Master on any of the pending motions, the Special Master stands ready to assist the Court upon request.

10

22155 filed on 3/15/2019). *See* Order & Reasons dated May 3, 2019 (MDL Document No. 22237) (granting in part and denying in part the Plaintiffs' Motion).

**Contest F** – Plaintiffs Who Failed to Submit an SPPF Are Due to be Dismissed – will be resolved by Judge Cooke. Defendants have filed two pending motions to dismiss seeking dismissal with prejudice of claims by *Amorin* class members who did not submit completed SPPFs by the court-ordered deadline of January 14, 2019. *See, e.g.,* Defendants' Motion to Dismiss Claims for Failure to Submit Supplemental Profile Forms (ECF No. 171). Judge Cooke's rulings on those motions will determine whether those claims survive.

**Contest J** – Plaintiffs Without Proof of Drywall Markings Attributable to Taishan Cannot Recover Against Taishan. The Special Master submitted her Report and Recommendation Regarding Product Identification Issues on April 8, 2019. Plaintiffs have filed objections. The matter is not fully briefed, but Judge Cooke's ruling on Plaintiffs' objections will resolve this issue. The Special Master has not submitted her Report and Recommendation regarding Production ID issues with respect to BNBM, but they will be resolved in similar fashion.

    c. **Defendants' Remaining Contests**

**Contest C** – Plaintiffs Purchased With Knowledge of Chinese Drywall In Affected Property – merits closer examination and consideration. The Taishan Defendants argue that the Special Master should exclude from the remediation damages formula process the claims of three plaintiffs who admitted on their SPPFs that they purchased an affected property with knowledge of the alleged defect of Chinese drywall. *See* Taishan Defendants' Brief at 16-17. BNBM further argues that claims for which this field was left blank should be excluded. The Special Master will issue a separate Report and Recommendation regarding the claims subject to Contest C on or before Friday, May 10, 2019.

11

**Contest G** – Current SPPFs That Lack a Claimant Signature are Unreliable – should be sustained. On their face, the profile forms – whether original, supplemental, or amended - state that they "must be signed." Plaintiffs' argument that verification of amended SPPFs was not required fails given the explicit contrary statement on the face of the profile forms. Only information contained in signed profile forms should be considered for purposes of applying the remediation damages formula to the claimants' property damage claims. However, this should not apply if the lack of signature resulted from a glitch in the BrownGreer Portal such that information completed in full by the claimants did not populate properly when the form was submitted or imported. *See* Plaintiffs' Post-Hearing Brief #1 at 3.

**Contest H** – Plaintiffs Who Failed to Fill Out All Relevant Fields in SPPFs Make it Impossible to Accurately Apply the Formula. Defendants argue that 518 claims should be excluded from the remediation damages formula process and "taken off-track" because a relevant or important field on the SPPF was left blank. *See* Taishan Defendants' Brief at 22-24. Plaintiffs counter that the blank fields do not relate to Product ID, ownership, or square footage. They further assert that they provided Defendants information regarding proof of ownership, square footage verification, and Product ID independent from the SPPF, including in response to written discovery requests from Defendants. *See* Plaintiffs' Post-Hearing Brief #1 at 2. Having received Plaintiffs' response to Defendants' ownership and square footage discovery in early February 2019, Defendants had until April 1, 2019 to engage in further (formal and informal) discovery to obtain additional information. They did not do so. These 518 claims should not be off-tracked at this stage. That said, if the Special Master later determines that there is insufficient information in any of these claim files to obtain reliable information to be used in applying the remediation damages

12

formula, those deficiencies will be addressed on an individual basis in the final Report and Recommendation.

**Contest I** – Properties with Incorrect or Unreliable Proof of Under-Air Square Footage Cannot Receive a Formula Calculation. Defendants argue that the Special Master should exclude from the remediation damages formula process 477 claims for which they claim inaccurate proof or no proof of under-air square footage has been submitted. *See* Taishan Defendants' Brief at 24. BNBM asserts this contest against 26 claims. They assert they have not been allowed sufficient discovery regarding under-air square footage. In response, Plaintiffs note that provided Defendants verified under-air square footage information in early February 2019 and have submitted proof of verified square footage and signed Declarations of Correctness of Square Footage signed by counsel for all Florida *Amorin* claimants seeking formula damages. *See* Plaintiffs' Post-Hearing Brief #1 at 4. Having received Plaintiffs' response to Defendants' square footage discovery in early February 2019, Defendants had until April 1, 2019 to engage in further (formal and informal) discovery to obtain additional information. They did not do so. These 477 claims should not be off-tracked at this stage. That said, the Special Master will not blindly accept the under-air square footage totals included in Plaintiffs' spreadsheet. Rather, as contemplated by the Class Damages Order, the Special Master will verify the information and, if the Special Master determines that any of those files lack reliable proof of under-air square footage, that deficiency will be addressed in the final Report and Recommendation.[8]

**Contest K** – Plaintiffs Without Proof to Identify the Manufacturer of Their Drywall Cannot Recover Against Taishan. Defendants argue that the Special Master should exclude from the

---

[8] Plaintiffs correctly note that there are many reliable sources of under-air square footage information. *See* Plaintiffs' Post-Hearing Brief #1 at 4, n.13. Indeed, the MDL Court noted that BrownGreer used three sources of information to verify square footage in connection with other settlements.

13

remediation damages formula process 103 claims they assert lack sufficient claim-specific PID proof that a property falls into a PID category that is attributable to Taishan. *See* Taishan Defendants' Brief at 26-30. They assert that some of these claims have no PID proof at all, some are based on an incorrect PID categorization, and others have insufficient PID proof. *Id*. at 26-27. Defendants are correct that Plaintiffs bear the evidentiary burden to show which of the Defendants made the drywall at issue in each property. However, these claim-specific issues re PID proof need not be resolved now. Rather, in adjudicating the claims subject to the remediation damages formula process, the Special Master will necessarily have to determine whether sufficient PID proof exists in each instance. Any deficiencies in PID proof will be addressed in the final Report and Recommendation.

**Contest N** – Plaintiffs Whose Subject Properties Were Remediation By Another Person or Entity Have No Remediation Damages to Recover. Defendants argue that the Special Master should exclude from the remediation damages formula process 417 claims with properties that were remediation by another entity, most often Knauf or a homebuilder. *See* Taishan Defendants' Brief at 33-34. This contest merits closer examination. The Special Master will issue a Report and Recommendation regarding this Contest on or before May 10, 2019.

**Contest O** – Plaintiffs Whose Claimed Diminution in Value is Less Than the Amount Requested Under the Remediation-Damages Formula – also merits closer examination and consideration. The Special Master will issue a Report and Recommendation regarding this Contest on or before May 10, 2019.

**Contest Q** – Plaintiffs Who Did Not Preserve Evidence During Remediation As Required Under MDL Pre-Trial Order 1 – also merits closer examination. The Special Master will issue a Report and Recommendation regarding this Contest on or before May 10, 2019.

14

## IV. RECOMMENDATIONS

Based upon the foregoing, the Special Master recommends that the following Contests by the Defendants be **sustained**: **Contest G**.

The Special Master further recommends that the following Contests by the Defendants be **overruled and/or denied**: **Contests A, D, E, F, H, I, J, K, L, M, and P**.

On or before May 10, 2019, the Special Master will issue a Report and Recommendation regarding Contests C, N, O, and Q.

**DONE AND SUBMITTED** in Miami, Florida on this 3rd day of May, 2019.

Respectfully submitted,
/s/ Tiffani G. Lee
TIFFANI G. LEE
HOLLAND & KNIGHT LLP
701 Brickell Avenue, Suite 3300
Miami, FL 33131
Phone: (305) 789-7725
Fax: (305) 789-7799
E-mail: tiffani.lee@hklaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 3, 2019, I served the foregoing Special Master's First Report and Recommendation Regarding Defendants' Contests and Set-Offs upon the parties' counsel via e-mail and will electronically file it with the Clerk of the Court using CM/ECF on May 6, 2019.

/s/ Tiffani G. Lee
Tiffani G. Lee

15