UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |
|---|---|
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS (except *The Mitchell Co., Inc. v. Knauf Gips KG, et al.*, Civil Action No. 09-4115 (E.D. La.)) | |

**DEFENDANTS' JOINDER IN CLASS COUNSEL'S MOTION FOR ENTRY OF AN ORDER AND JUDGMENT (1) GRANTING FINAL APPROVAL OF THE CLASS SETTLEMENT WITH TAISHAN AND (2) CERTIFYING THE SETTLEMENT CLASS, AND SUPPLEMENTAL MEMORANDUM IN SUPPORT THEREOF**

Defendants Taishan Gypsum Company Ltd., f/k/a Shandong Taihe Dongxin Co., Ltd. and Taian Taishan Plasterboard Co., Ltd. (collectively "Taishan"), along with additional released parties Beijing New Building Materials Public Limited Company ("BNBM PLC"), Beijing New Building Materials (Group) Co. Ltd. ("BNBM Group"), and China National Building Materials Co., Ltd. ("CNBM"),[1] (collectively, "Defendants") hereby join in Settlement Class Counsel's request that this Court grant final approval of the proposed class settlement in this case. Defendants submit this supplemental memorandum of law in further support of settlement to address certain factors relevant to approval under Federal Rule of Civil Procedure 23.

## I.   OVERVIEW OF THE SETTLEMENT

The Agreement provides for the funding by Taishan of a Settlement Fund in the aggregate amount of $248,000,000 into this Court's registry. Under the Settlement Agreement,

---

[1] The Additional Released Parties under the Settlement Agreement include BNBM PLC, BNBM Group, CNBM, as well as China National Building Materials Group Corporation ("CNBM Group"), which was earlier dismissed by the Court pursuant to the Foreign Sovereign Immunities Act.

Taishan was required to make an initial payment of $24,800,000.00 no later than 30 days following Preliminary Approval.  Taishan must make a second payment of $74,400,000.00 no later than (120) days following Preliminary Approval, which must be made by December 27, 2019, and final payment of the remainder, $148,800,000.00, which will be due no later than 60 days after Final Approval of the Settlement.  *See* Ex. 1, at ¶¶ 4.1.1-4.1.3.  Each known *Amorin* and *Brooke* Plaintiff was mailed an individualized estimate of gross recovery under the Settlement.  *See* Declaration of Jacob S. Woody Regarding Mailing of Individual Notice and Estimate Letters and Decisions of BrownGreer on Submitted Challenges to the Settlement Master Spreadsheet. Thus, this Settlement stands in stark contrast to proposed class settlements under which the class members receive no real benefit.  Compare *In re Katrina Canal Breach Lit.*, 628 F.3d 185, 195 (5th Cir. 2010) (concluding that settlement was not fair, reasonable, and adequate because there was no record before the district court "that the settlement [would] benefit the class in any way, either through the disbursement of individual checks or through a cy pres distribution.").

**II.     The Settlement is Fair, Adequate and Reasonable under Rule 23(e) and the Fifth Circuit's *Reed* Factors**

"A district court's approval of a class action settlement may be set aside only for abuse of discretion." *Newby v. Enron Corp.*, 394 F. 3d 296, 300 (5th Cir. 2004).[2]  "The gravamen of an approvable proposed settlement is that it be 'fair, adequate, and reasonable and is not the production of collusion between the parties.'"  *Id.* at 301; *see also Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 844 (E.D. La. 2007) (proponents of settlement bear the burden of

---

[2] Defendants do not dispute that the settlement class should be certified as urged by Settlement Class Counsel solely for the purposes of settlement.  *See* Rule 23(e)(1), 2018 Advisory Committee Note ("If the settlement is not approved, the parties' positions regarding certification for settlement should not be considered if certification is later sought for purposes of litigation.").

LEGAL02/39436465v1

establishing that settlement is fair, reasonable, and adequate). The Court must be "exacting and thorough" in evaluating whether a settlement is in the best interest of class members. *Turner*, 472 F. Supp. 2d at 842. However, "[b]ecause the public interest strongly favors the voluntary settlement of class actions, there is a strong presumption in favor of finding the settlement fair, reasonable, and adequate." *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico*, 910 F. Supp. 2d 891, 930-31 (E.D. La. 2012), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014); *Turner*, 472 F. Supp. 2d at 843 ("The public interest favoring settlement is especially apparent in the class action context where claims are complex and may involve a large number of parties, which otherwise could lead to years of protracted litigation and sky-rocketing expenses.").

Likewise, Rule 23(e)(2) now permits a court to approve a settlement "only on a finding that the settlement is fair, reasonable, and adequate after considering" the following factors:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;
> >
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> >
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

*See* Fed. R. Civ. Pro. 23(e)(2) (2018 amendments).

The Advisory Committee notes to the 2018 amendments to Rule 23 make clear that the amendments were not intended to supersede factors previously considered by appellate courts. *See* Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Note ("The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."). Accordingly, district courts in the Fifth Circuit continue to assess the fairness, adequacy and reasonableness of a class action settlement using, in addition to the Rule 23(e) factors, the six factors identified by the Fifth Circuit in *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983): "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, class representatives, and absent class members." *See, e.g.*, *Hays v. Eaton Grp. Attorneys, LLC*, Civil Action No. 17-88-JWD-RLB, 2019 WL 427331, at *9 (M.D. La. Feb. 4, 2019); *ODonnell v. Harris Cty., Texas*, Civil Action No. H-16-1414, 2019 WL 4224040, at *8 (S.D. Tex. Sept. 5, 2019). Although class counsel has addressed these concerns in its own briefing, Defendants address certain of these factors in greater detail below.[3]

---

[3] Each of the factors for consideration under Rule 23 and *Reed* are addressed in full in Settlement Class Counsel's motion for final approval, filed by Settlement Class Counsel on December 6, 2019. Settlement Class Counsel also earlier submitted a motion for preliminary approval (Doc. 22305), which the Court granted on August 29, 2019, *inter alia*, preliminarily approving the Settlement and preliminarily certifying the Settlement class (Doc. 22314).

### A. The Relief Afforded Under the Settlement Agreement is Fair, Reasonable, and Adequate Considering the Costs, Risks, and Delay of Trial and Appeal, and the Complexity, Expense, and Likely Duration of the Litigation

"In assessing this factor, courts consider the uncertainties of litigation and compare the settlement to potential future relief." *In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. 112, 147 (E.D. La. 2013). As this Court is aware, the MDL was initiated in 2009 and has occupied a significant space on the Court's docket for 10 years. There are over 22,000 docket entries in the MDL alone, which does not account for the substantial activity post-remand in the Southern District of Florida and the activity that had begun in the Eastern District of Virginia. *Id.* at 147-48 ("Such complex litigation . . . can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive").

Here, "there is no question that the issues to be tried are numerous and complex and would be time-consuming to resolve." *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico,* 910 F. Supp. 2d at 932. Adjudication of all individual claims would require many more years of litigation with trials staggered in phases. Indeed, at the time the Settlement Agreement was entered, the claims of 20 priority claimants in Florida and 39 priority claimants in Louisiana were proceeding to trial. Nonetheless, resolution of the *Amorin* Plaintiff cases in Florida and Louisiana (numbering well over 2,000 claimants) would require additional years of costly litigation, even if the cases were tried in flights. Preparation for trial on the *Amorin* Florida and Louisiana claims also would have required additional fact-specific and expert discovery pertaining to each of the individual claims, followed by likely dispositive motion practice and extensive pre- and post-trial filings.

Similarly, a trial plan had been entered by the Eastern District of Virginia for resolution of claims in the *Amorin* Virginia action and proceedings were scheduled to begin at the time the

Settlement Agreement was entered. Consequently, the Settlement Agreement is preferable to the continued, complex and time-consuming litigation and appeals on individual claims. *See, e.g.*, *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico,* 910 F. Supp. 2d at 932 ("Even assuming litigation could obtain the results that this Settlement provides, years of litigation would stand between the class and any such recovery[,]" concluding that factor weighed "strongly" in favor of granting final approval); *Turner*, 472 F. Supp. 2d at 37 ("The complexity, expense, and likely duration of the litigation make the option of settlement a far better alternative in this case than proceeding to trial" where claims and defenses were complex and litigation regarding individual damages would have taken years to resolve).

Moreover, recovery of any individual damages awards likely would be delayed by the realistic prospect of appeals that inevitably would follow trials, leaving little certainty in outcome for claimants. Any such appeals could prolong execution of judgment for many years. *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico*, 910 F. Supp. 2d at 932 ("In light of the numerous complex and novel issues of law presented in this case, appeals could extend this litigation for a decade or more."); *Turner*, 472 F. Supp. 2d at 846 ("an appeals process, if utilized, would add additional time and considerable expense and delay to the receipt of any relief afforded."); *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 291-92 (W.D. Tex. 2007) ("probability of further protracted litigation, including appeals, would be a certainty in the absence of a settlement," concluding factor weighed in favor settlement approval). Similarly, Plaintiffs also face challenges in enforcing and collecting on any judgment from the foreign Defendants.

In stark contrast to continued protracted litigation, appeal, and collection difficulties, this Settlement instead provides immediate monetary relief and avoids the risks and delays of

recovering on any final judgment. *In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. at 147-148 (finding that settlement "eliminates the transaction costs that further proceedings would impose and provides relief for the class sooner than continued litigation would.") (internal quotation marks omitted).

### B. The Extensive Proceedings and Discovery Conducted in the Litigation Enabled the Parties to Make an Informed Decision About Settlement

In connection with this factor, the Court must assess whether "the parties have obtained sufficient information to evaluate the merits of the competing positions." *In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. at 148. "[T]he question is not whether the parties have completed a particular amount of discovery, but whether the parties have obtained sufficient information about the strengths and weaknesses of their respective cases to make a reasoned judgment about the desirability of settling the case on the terms proposed." *Id.* This factor weighs strongly in support of final approval of the Settlement Agreement for several reasons.

First, the parties have engaged in significant discovery. That began with extensive jurisdictional discovery that included the production of thousands of documents as well as multiple rounds of written discovery and conducted depositions of numerous Taishan employees, including Taishan's corporate representatives. *See* April 21, 2017 Order on Rule 12(b) motions to dismiss (Doc. 20739) at 7-9. Similar discovery also occurred with the additional released parties throughout 2015.

With respect to claimant discovery, the parties agreed to a discovery process whereby claimants were to submit sworn plaintiff profile forms addressing issues including product identification, ownership, and square footage; this process resulted in thousands of supplemental plaintiff profile forms produced by Plaintiffs. Claim files also were produced that included documentation such as indicia of Chinese drywall, evidence of damages, receipts and invoices

for any repairs, information regarding prior settlement payments (if any), and other documentation. Additionally, the parties engaged in discovery directed to product identification, including a deposition of Taishan, to determine the categories of Chinese Drywall alleged to be attributable to Defendants. Discovery on product ID was followed in the Florida litigation by an evidentiary hearing before the Court-appointed special master who issued a report and recommendation on product ID that was pending ruling by Judge Cooke at the time of the Settlement Agreement. (Product Identification Report & Recommendation, 4/8/2019, FLSD ECF No. 233). Further, the parties completed fact discovery pertaining to 20 priority claimants in Florida and 39 priority claimants in Louisiana. Such discovery included over 90 fact depositions in Florida and Louisiana, as well as written discovery in Florida regarding ownership and square footage.

Similarly, as it relates to the Florida priority claimants, the parties completed expert discovery involving six experts per side that elucidated various defenses in the litigation and the individual claims for damage. These experts covered a range of topics including, *inter alia*, product defect, remediation damages, purported diminution in value, lost equity claims, and personal property damage claims.[4] Lastly, based on the claimant discovery, the parties briefed various legal and factual arguments relating to contests and setoffs that Defendants contend should apply to reduce any remediation damages award to certain individual claimants pursuant to the Court's remediation damages formula. Following the parties' briefing, the Florida Special

---

[4] Further, at the time the Settlement Agreement was negotiated, the parties were set to begin expert discovery relating to the Louisiana priority claimants, and a plan for adjudication of the Virginia claims, including discovery, had been entered by the Eastern District of Virginia in the *Amorin* Virginia action (*see* Civil Action No. 2:11-cv-00377-MSD-RJK, ECF No. 87 (May 20, 2019).

Master held a two-day evidentiary hearing on the subject and issued reports and recommendations, on May 6 and 13, 2019, (FLSD ECF Nos. 266 and 268) that found in Defendants' favor on certain challenges.

Second, the parties engaged in significant preliminary motion practice before this Court that resulted in substantive rulings on key preliminary issues, including: Motion to Vacate Preliminary Default (Doc. 15755), class certification (Doc. 18028 and 20740); personal jurisdiction over the BNBM and CNBM entities (Doc. 20739); and lack of subject matter jurisdiction under the Foreign Sovereign Immunities Act with respect to CNBM Group (Doc. 20150).  This Court also held evidentiary hearings and entered Findings of Fact and Conclusions of Law under Rule 55 on remediation damages (Doc. 20741).  Additionally, at the time of Settlement, the parties had the benefit of the Court's March 6, 2019 ruling on the BNBM Defendants' motion to dismiss the *Brooke* Complaints (joined by Taishan) that narrowed the causes of action in dispute as to all Defendants. (Doc. 22124).  In that same ruling, the Court also ruled on BNBM's statute of limitations defense in part by holding that claimants in key jurisdictions, including Florida, Louisiana, and Virginia, cannot rely on cross-jurisdictional tolling to save their claims.  Instead, each claimant will be individually required to prove that they "neither knew or should have known of their causes of action." (Doc. 22124).

In addition to the MDL court's rulings, significant rulings by the remand courts also informed the parties' positions and helped focus the issues in dispute.  For example, the Florida Special Master ruled on product ID following briefing and a day-long evidentiary hearing, concluding that there was insufficient evidence to find Taishan responsible for the manufacture of multiple categories of drywall in dispute.  That factual determination would eliminate a significant number of claims in Florida if approved by the district court.  Similarly, the Florida

Special Master's rulings on contests and set-offs (*see* Civil Action No. 1:11-cv-22408-MGC,FLSD ECF Nos. 266 and 268), if approved by the district court, also would narrow the scope of recovery by claimants. For example, the Special Master agreed with Defendants that claimants whose properties were remediated by another person or entity have no claim to remediation damages (impacting over 400 claims) and that plaintiffs whose claimed diminution in value is less than the amount under the remediation damages formula should be precluded from a formulaic award. Thus, not all claimants entitled to damages will be able to recover according to the remediation damages formula in full.

Considering the numerous substantive rulings in the litigation and the substantial discovery completed, the parties indisputably reached their Settlement Agreement after both sides gained a well-developed understanding of the merits of the claims and defenses. Accordingly, this factor weighs in favor of final approval. *In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. at 149 ("[I]n light of the substantial amount of formal and informal discovery and investigation, the Court concludes that the Settlement represents an informed, educated, and fair resolution of this dispute. Extensive information allowed the Parties to assess their positions in great detail and make a reasonable decision on settlement, which is all that is required."); *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico*, 910 F. Supp. 2d at 932-33 ("In light of the voluminous discovery produced, this *Reed* factor weighs strongly in favor of granting final approval to the Settlement Agreement.")

### C. Claimants Would Need to Overcome Numerous Obstacles to Prevail on the Merits and Recover Any Damages

The Court must consider the settlement terms compared to the "likely rewards the Class would receive at trial." *In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. at 149 ("If further litigation is unlikely to lead to greater relief for the Class, then this factor weighs in favor

of settlement.")  However, the Court "must not try the case in the settlement hearings because the very purpose of the compromise is to avoid the delay and expense of such a trial."  *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico*, 910 F. Supp. 2d at 933; *Turner*, 472 F. Supp. 2d at 848 ("A court's determination, or even evaluation, of whether any factual or legal issues exist that could prevent or otherwise hinder success on the merits at trial produces somewhat of a tension against the prohibition of trying the case in the settlement hearings.")

Here, if Settlement were not approved, Plaintiffs would face factual and legal hurdles to success on the merits and ultimate recovery.  More than half of the Florida *Amorin* plaintiffs would face the burden of overturning the Florida Special Master's Report and Recommendation on Product ID which found that Plaintiffs had not met their burden of proof on certain categories of Product ID. (FLSD ECF No. 233).  Those rulings (and the underlying state of the evidence) would make it more difficult for *Amorin* and *Brooke* Plaintiffs in other states with similar product ID to establish entitlement to damages.  All *Amorin* Plaintiffs would face the difficulty, time and expense of proving the amount of their non-remediation damages, such as purported loss in value, or to support an award of special/incidental damages, such as damages for alternative living expenses, loss of use and enjoyment, and damage to personal property, which would likely involve individual depositions and evidentiary proceedings.  Likewise, Plaintiffs have individualized evidentiary obstacles to demonstrate the requisite proof of ownership necessary to prevail on any claim and recover the amounts sought.  In addition, Defendants have urged (and would urge on appeal) numerous challenges to reliance on the preliminary defaults to support a judgment of liability and/or the efforts to use a default by one party against another non-defaulted party.  *See e.g. Wooten v. McDonald Transit Assoc., Inc.*, 788 F. 3d 490, 496 (5th Cir. 2015) (default judgment unassailable only insofar as it is supported by well-pleaded

allegations assumed to be true, but not conclusory allegations or conclusions of law) (citations omitted); *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (pleadings must demonstrate sufficient basis to support default judgment) (citation omitted).

The *Brooke* claimants, approximately 1,200 in several jurisdictions, face additional significant obstacles. Most *Brooke* claimants will not be able to avoid having their claims dismissed on statute of limitations grounds because they will have difficulty showing that they reasonably could not have known of their claims relating to Chinese drywall earlier. *See Bryant v. Universal Servs., Inc.*, No. CIV. A. 99-2944, 2000 WL 680258 at *3 (E.D. La. May 24, 2000) (approving settlement based in part on assertion that "putative class members would have little, if any, chance of prevailing on the merits because many of their actions are barred by the statute of limitations").

Furthermore, none of the Defendants is defaulted in the *Brooke* actions, requiring any remaining *Brooke* claimants to establish liability and causation, which puts *Brooke* claims in a drastically different posture than the *Amorin* claims that rely on preliminary defaults to avoid those issues at the trial level. *Brooke* Plaintiffs also would need to seek class certification over Defendants' active objections on Rule 23 issues, as well as subsequent appeal under Fed. R. Civ. P. 23(f). *Bryant*, 2000 WL 680258 at *3 ("the Court notes that this is a pre-certification class action and a substantial question exists as to whether the claims for monetary relief would render the case suitable for class certification."); *DeHoyos*, 240 F.R.D. at 290 (factor weighed in favor of approving settlement where, in part, plaintiffs would face "significant challenge to certifying the class outside the settlement context").

Lastly, if final judgment were to be reached on individual claims, an appeal on one or

more rulings by the MDL Court or remand courts likely would follow.[5]  Further, an appeal currently is pending before the Fifth Circuit by the BNBM and CNBM Defendants relating to rulings on personal jurisdiction and alter ego liability.  Should litigation continue, the outcome of the Fifth Circuit pending appeal particularly poses a risk to recovery against those parties by Plaintiffs asserting claims based on BNBM brand drywall.  Thus, the prospect of a lengthy appeals process weighs in favor of approval of the Settlement.  *See In re Shell Oil Refinery*, 155 F.R.D. 552, 563 (E.D. La. 1993) ("Even if the plaintiffs prevailed at trial and were awarded damages in excess of the amount of the settlement, lengthy appeals and expenses could be anticipated.").  In addition, the Settlement allows the claimants to avoid the time, cost, expense and complicated issues of attempting to collect a judgment from a foreign defendant.  *Hays*, 2019 WL 427331 at *10 (litigation would require time and resources and "further creates the risk that any judgment against the Defendant will not be collectible.")

Given the many substantial hurdles that Plaintiffs face, immediate recovery under the Settlement Agreement is a far more favorable result for class members than the uncertainty of protracted and expensive litigation, particularly as to the *Brooke* claimants, whereas the benefits of Settlement are available immediately to qualified claimants.  Accordingly, this factor weighs in favor of final approval of the Settlement.  *In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. at 149 ("Even assuming a favorable liability verdict and damages awarded at trial, the resulting recovery, likely years from now, would be diminished by the costs of litigation.  In light of these considerations, counsel could reasonably conclude that certain recovery through settlement is the preferred result.")

---

[5] For example, Defendants can anticipate appeals with respect to the rulings on class certification and formulaic remediation damages, among other issues.

### D. The Settlement Compares Favorably to the Range of Possible Recovery and the Certainty of Damages

Under this factor, the Court must "make an inquiry into whether the settlement's terms fall within a reasonable range of recovery, given the likelihood of the plaintiffs' success on the merits." *Turner*, 472 F. Supp. 2d at 849-50. However, in assessing this factor a court must be careful not to demand too great of a settlement since, as this Court has recognized, "compromise is the essence of settlement and the court should not make the proponents of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of which concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." *Id.* at 850 (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)); *see also In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico*, 910 F. Supp. 2d at 933 (a court should not attempt the "impossible task of deciding whether the parties have 'reached "exactly the remedy they would have asked the Court to enter absent the settlement"'"); Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Note ("Often, courts may need to forecast the likely range of possible classwide recoveries and the likelihood of success in obtaining such results. That forecast cannot be done with arithmetic accuracy, but it can provide a benchmark for comparison with the settlement figure.").

As set forth above, the Settlement Agreement provides for a Settlement Fund of $248 million, a portion of which ($24.8 million) already has been paid by Taishan. Thus, the Settlement provides class members with real, immediate monetary benefit available for distribution soon after final approval of the Settlement Agreement by this Court. Further, as explained in Settlement Class Counsel's motion for final approval, the individual settlement amounts were determined pursuant to the Allocation Model developed by the Allocation Neutral that accounts for the strengths and weaknesses of the property owner claims in the litigation. *See*

Declaration of J. Cal Mayo, Jr.  That the Allocation Plan is based on a "thoughtful and comprehensive evaluation" that accounts for prior rulings in this litigation supports approval. *Turner*, 472 F. Supp. 2d at 851 ("Taking into consideration the legal and factual obstacles recited in the previous section, the Court finds that the monetary compensation afforded to class members falls within the reasonable range of recovery.").

The fact that the amount of settlement payments to individual claimants may be less than any theoretical award under the Court's remediation formula does *not* mean the Settlement Agreement is unfair or dictate against final approval.  *Jenkins v. Trustmark Nat. Bank*, 300 F.R.D. 291, 304 (S.D. Miss. 2014) ("[a] settlement must be evaluated 'taking into account the uncertainty and risks involved in litigation,' and 'in light of the strength of the claims and possible defenses.'"); *In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. at 149 ("To merit approval, the Settlement need only represent a fair, reasonable, and adequate estimation of the value of the case.").  Even assuming Plaintiffs were successful in obtaining a damages award through continued litigation, Defendants would attack those awards on numerous grounds on appeal, such as inapplicability of the remediation damages formula to former owners of property, the fact that state law does not allow an award of estimated damages when actual damages are established, and no recovery is permitted in certain states for subsequent purchasers.  Such appeals would thereby delay any potential recovery on the judgments.  Likewise, Plaintiffs would face challenges and costs in attempting to collect any judgment from foreign defendants.

Consequently, because the Settlement Agreement "compares favorably with the range of possible recovery through litigation" and would provide immediate compensation without the need for further time-consuming and challenging litigation, appeals, and collection efforts, this factor weighs in favor of final approval.  *In re Oil Spill by Oil Rig Deepwater Horizon*, 295

F.R.D. at 149 ("Because the Settlement compares favorably with the range of possible recovery through litigation, this factor also supports settlement approval."); *DeHoyos*, 240 F.R.D. at 291 ("The Court determines that [the] substantial and immediate benefits from the settlement outweigh the risk of an uncertain, potentially protracted and costly litigation.).

### III. Conclusion

For the foregoing reasons, Defendants respectfully submit that the Court should approve the Settlement as fair, reasonable, and adequate, and otherwise in compliance with Federal Rule of Civil Procedure 23.

Respectfully submitted,

| | |
|---|---|
| */s/ Christina Hull Eikhoff*<br>Bernard Taylor, GA Bar No. 669625)<br>Michael P. Kenny, GA Bar No. 415064<br>Christina Hull Eikhoff, GA Bar No. 242539<br>David Venderbush, NY Bar No. 2920817<br>ALSTON & BIRD LLP<br>1201 West Peachtree Street<br>Atlanta, Georgia 30309<br>Phone: (404) 881-7000 Fax: (404) 881-7777<br>bernard.taylor@alston.com<br>mike.kenny@alston.com<br>christy.eikhoff@alston.com<br>david.venderbush@alston.com<br><br>*Counsel for Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd.* | Alan Dean Weinberger, LA Bar No. 13331<br>HANGARTNER, RYDBERG &<br>TERRELL, LLC<br>One Shell Square<br>701 Poydras Street, Suite 310<br>New Orleans, Louisiana 70179<br>Phone: (504) 434-6815<br>Fax: (504) 522-5689<br>aweinberger@hanrylaw.com<br><br>*Local Counsel for Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd.* |
| */s/ L. Christopher Vejnoska*<br>L. Christopher Vejnoska, CA Bar No. 96082<br>ORRICK, HERRINGTON &<br>SUTCLIFFE LLP<br>The Orrick Building<br>405 Howard Street<br>San Francisco, CA 94105<br>Tel: 415-773-5700<br>cvejnoska@orrick.com<br><br>*Counsel for CNBM Co., Ltd., BNBM (Group) Co., Ltd., and BNBM PLC* | James L. Stengel, NY Bar No. 1800556<br>Xiang Wang, NY Bar No. 4311114<br>ORRICK, HERRINGTON &<br>SUTCLIFFE LLP<br>51 West 52nd Street<br>New York, NY, 10019<br>Tel: 212-506-5000<br>jstengel@orrick.com<br>xiangwang@orrick.com |

Ewell E. Eagan, Jr., LA Bar No. 5239
Donna Phillips Currault, LA Bar No. 19533
GORDON, ARATA, MONTGOMERY,
BARNETT, MCCOLLAM, DUPLANTIS &
EAGAN, LLC
201 St. Charles Avenue, 40th Floor
New Orleans, LA 70170-4000
Tel: (504) 582-1111
eeagan@gamb.law
dcurrault@gamb.law

*Counsel for CNBM Co., Ltd.*

Harry Rosenberg, LA Bar No. 11465
PHELPS DUNBAR LLP
365 Canal St., Suite 2000
New Orleans, LA 70130
Tel: (504) 566-1311
Email: harr.rosenberg@phelps.com

*Liaison Counsel for Defendants*

## CERTIFICATE OF SERVICE

      I hereby certify that the above and foregoing pleading has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. mail and email and upon all parties by electronically uploading the same to File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047 on December 6, 2019.

      */s/ Michael P. Kenny*
      Michael P. Kenny, GA Bar No. 415064
      ALSTON & BIRD LLP
      1201 West Peachtree Street
      Atlanta, Georgia 30309
      Phone: (404) 881-7000 Fax: (404) 881-7777
      mike.kenny@alston.com
      *Counsel for Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd.*