# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS (except *The Mitchell Co., Inc. v. Knauf Gips KG, et al.*, Civil Action No. 09-4115 (E.D. La.)) | |

### SETTLEMENT CLASS COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR ENTRY OF AN ORDER AND JUDGMENT (1) GRANTING FINAL APPROVAL OF THE CLASS SETTLEMENT <u>WITH TAISHAN AND (2) CERTIFYING THE SETTLEMENT CLASS</u>

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ...........................................................................................vi

TABLE OF EXHIBITS ...............................................................................................xiv

I.      INTRODUCTION .................................................................................................1

II.     FACTUAL BACKGROUND.................................................................................4

        A.       History of the Chinese Drywall Proceedings ................................................4

                1.       The Origins of the Litigation .................................................4

                2.       The Omni Complaints ...........................................................5

                3.       Initial Proceedings in the MDL ............................................6

                4.       Litigation Against Knauf ......................................................7

                5.       Litigation Against Taishan ....................................................8

                6.       The *Brooke* Actions ...........................................................12

                7.       Remands of *Amorin* and *Brooke* Actions............................13

        B.       History of the Settlement Negotiations and Mediation.................................17

        C.       Material Terms of the Settlement ................................................................18

                1.       Settlement Class....................................................................18

                2.       Amount of Settlement ...........................................................19

                3.       Purpose of the Settlement .....................................................19

                4.       Releases and Bar Provision...................................................20

                5.       Allocation of the Settlement Fund Among Eligible Class Members ...............................................................................23

                6.       Challenges to Information on the Master Spreadsheet .....................30

                7.       Claims Administration.........................................................32

8.      Notice ..................................................................................33

9.      Opt-Outs..............................................................................39

10.     Objections ...........................................................................40

11.     Attorneys' Fees ...................................................................41

12.     Incentive Awards ................................................................41

III.    ARGUMENT ....................................................................................42

A.      Settlements of Complex Class Actions Are Favored.....................42

B.      Standards for Approval of Class Settlements ................................43

C.      The Requirements of Rule 23 Have Been Met For Certification
        of the Class....................................................................................46

        1.      Numerosity...........................................................................47

        2.      Commonality........................................................................47

        3.      Typicality .............................................................................48

        4.      Adequacy of Representation ................................................49

        5.      Common Questions of Law and Fact Predominate ...........51

        6.      The Class Settlement is Superior ........................................52

D.      Rule 23(e)(2) and the *Reed* Factors Support Granting Final Approval
        of the Settlement ...........................................................................53

        1.      The Class Representatives and Class Counsel Have Adequately
                Represented the Class (Rule 23(e)(2)(A)) ..........................55

        2.      The Proposal Was Negotiated at Arm's Length (Rule 23(e)(2)(B))
                and There is No Existence of Fraud or Collusion Behind the
                Settlement (*Reed* Factor 1)................................................56

        3.      The Relief Provided is Adequate, Taking Into Account the Costs,
                Risks, and Delays of Trial and Appeals (Rule 23(e)(2)(C)(i)) ..........58

a. The Complexity, Expense, and Likely Duration of the Litigation Weigh in Favor of Approval of the Settlement (*Reed* Factor 2).....................................................59

b. The Stage of the Proceedings and the Amount of Discovery Completed Support Approval of the Settlement (*Reed* Factor 3).....................................................60

c. Plaintiffs' Probability of Success on the Merits (*Reed* Factor 4).......................................................61

d. The Range of Possible Recovery (*Reed* Factor 5) .................62

e. The Opinion of Class Counsel Supports Approval of Settlement (*Reed* Factor 6) .................................63

4. The Relief Provided is Adequate, Taking Into Account the Effectiveness of the Proposed Method of Distributing Relief to the Class (Rule 23(e)(2)(C)(ii)) ......................................64

5. The Relief Provided is Adequate, Taking into Account the Terms of Any Proposed Award of Attorneys' Fees, Including Timing of Payment (Rule 23(e)(2)(C)(iii))........................................65

6. The Relief Provided is Adequate, Taking Into Account Any Agreement Required to be Identified Under Rule 23(e)(3) (Rule 23(e)(2)(C)(iv)) ..........................................66

7. The Settlement Treats Class Members Equitably Relative to Each Other (Rule 23(e)(2)(D)).............................................66

E. Notice to the Class Complied with this Court's Preliminary Approval Order and Due Process .....................................67

F. The CAFA Notice Requirement Has Been Satisfied by Taishan .................68

G. The Overwhelming Majority of the Class Supports the Settlement, and the Minimal Objections that Were Submitted Are Without Merit..........68

1. The Settlement Provides Eligible Class Members with Immediate Cash Benefits that Are Fair and Adequate Under the Circumstances ...................................................70

2. The Allocation Model Developed by the Allocation Neutral Treats Class Members Equitably and Is Fair and Reasonable..........74

a.     Product Identification Discounts.............................................80

b.     *Brooke* Discount.........................................................81

3.     Class Notice Satisfied Due Process ...................................82

4.     The Objectors Have Failed to Meet the Heavy Burden of Demonstrating that the Settlement Is Unreasonable.........................83

5.     Non-Class Members Lack Standing to Object to the Settlement .....87

a.     Michael Guerriero ..................................................89

b.     Mary Escudie ......................................................90

c.     Attorney Jimmy Doyle...........................................93

IV.     CONCLUSION............................................................................95

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Agretti v. ANR Freight Sys., Inc.*,
  982 F.2d 242 (7th Cir.1992)...................................................................... 87

*Air Line Stewards & Stewardesses Ass'n, Local 550 v. Trans World Airlines, Inc.*,
  630 F.2d 1164 (7th Cir. 1980).................................................................... 42

*Allapattah Services v. Exxon Corp.*,
  333 F.3d 1248 (11th Cir. 2003).................................................................. 78

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................... 47, 49, 51, 52

*Amorin v. Taishan Gypsum Co. Ltd.*,
  2019 WL 2172707 (E.D. Va. May 20, 2019)............................................... 46

*Ayers v. Thompson*,
  358 F.3d 356 (5th Cir. 2004)...................................................................... 84

*Bennett v. Behring*,
  737 F.2d 982 (11th Cir. 1984)............................................................... 43, 73

*Berardinelli v. Gen. Am. Life Ins. Co.*,
  357 F.3d 800 (8th Cir. 2004)...................................................................... 74

*Berger v. Compaq Comput. Corp.*,
  257 F.3d 475 (5th Cir. 2001)...................................................................... 49

*Braud v. Transp. Serv. Co. of Ill.*,
  2010 WL 3283398 (E.D. La. Aug. 17, 2010)......................................... 42, 73

*Bristol-Myers Squibb v. Superior Court of California*,
  137 S. Ct. 1773 (2017) .............................................................................. 11

*Califano v. Yamasaki*,
  442 U.S. 682 (1979) .................................................................................. 48

*Camp v. The Progressive Grp.*,
  2004 WL 2149079 (E.D. La. Sept. 23, 2004) ....................................... 44, 57

*Carter v. Forjas Taurus, S.A.*,
  2016 WL 3982489 (S.D. Fla. July 22, 2016) ..................................... 88, 91, 92

*Charron v. Pinnacle Grp. NY LLC*,
  2012 WL 2053530 (S.D.N.Y. June 6, 2012) ........................................................................ 78

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2nd Cir. 1974) ........................................................................ 45

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977) ........................................................................ passim

*DeHoyos v. Allstate Corp.*,
  240 F.R.D. 269 (W.D. Tex. 2007) ........................................................................ passim

*Eisen v. Carlisle & Jacquelin*,
  391 F.2d 555 (2d Cir. 1968) ........................................................................ 42

*Eisen v. Carlisle & Jacqueline*,
  417 U.S. 156 (1974) ........................................................................ 67

*Feder v. Electronic Data Systems Corp.*,
  248 Fed. Appx. 579 (5th Cir.2007) ........................................................................ 87

*Fla. Trailer & Equip. Co. v. Deal*,
  284 F.2d 567 (5th Cir. 1960) ........................................................................ 74

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982) ........................................................................ 48

*Georgevich v. Strauss*,
  96 F.R.D. 192 (M.D. Pa. 1982) ........................................................................ 44

*Giroux v. Essex Prop. Tr., Inc.*,
  2019 WL 2106587 (N.D. Cal. May 14, 2019) ........................................................................ 85

*Gould v. Alleco, Inc.*,
  883 F.2d 281 (4th Cir.1989) ........................................................................ 87

*Grunin v. Int'l House of Pancakes*,
  513 F.2d 114 (8th Cir.) ........................................................................ 45

*Hays v. Eaton Grp. Attorneys, LLC*,
  2019 WL 427331 (M.D. La. Feb. 4, 2019) ........................................................................ 54

*Hines v. Widnall*,
  334 F.3d 1253 (11th Cir. 2003) ........................................................................ 48

*Horton v. Goose Creek Indep. Sch. Dist.*,
  690 F.2d 470 (5th Cir. 1982) .................................................................. 49

*In re Cendant Corp. Sec. Litig.*,
  109 F. Supp. 2d 235 (D.N.J. 2000) ...................................................... 77, 78

*In re Chicken Antitrust Litig. Am. Poultry*,
  669 F.2d 228 (5th Cir. 1982) .................................................................. 43

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
  2019 WL 1057003 (E.D. La. Mar. 6, 2019) ................................. 13, 17, 18

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
  2018 WL 6046189 (E.D. La. Nov. 19, 2018) ...................................... 6, 14

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
  2018 WL 279629 (E.D. La. Jan. 2, 2018) ................................................ 10

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
  2017 WL 1476595 (E.D. La. Apr. 21, 2017) ........................................... 11

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
  2017 WL 1421627 (E.D. La. Apr. 21, 2017) ............................... 7, 8, 9, 10

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
  168 F. Supp. 3d 918 (E.D. La. 2016) ...................................................... 7, 9

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
  2014 WL 4809520 (E.D. La. Sept. 26, 2014) .................................... passim

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
  2013 WL 499474 (E.D. La. Feb. 7, 2013) .................................... 8, 49, 50

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
  894 F. Supp. 2d 819 (E.D. La. 2012) ......................................................... 9

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*,
  (*German*o), 706 F. Supp. 2d 655 (E.D. La. 2010) ............................... 5, 7

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.*,
  626 F. Supp. 2d 1346 (J.P.M.L. 2009) ................................................. 5, 47

*In re Combustion, Inc.*,
  968 F. Supp. 1116 (W.D. La. 1997) ......................................................... 44

*In re Corrugated Container Antitrust Litig.*,
  643 F.2d 195 (5th Cir. 1981) .............................................. 43, 53, 83, 85

*In re Corrugated Container Antitrust Litig.*,
   659 F.2d 1322 (5th Cir. 1981) ................................................................. 73

*In re Deepwater Horizon*,
   934 F.3d 434 (5th Cir. 2019) .......................................................... 65, 79

*In re Dell Inc.*,
   2010 WL 2371834 (W.D. Tex. June 11, 2010) ....................................... 78

*In re Educ. Testing Serv. Praxis Principles of Learning & Teaching Grades 7-12 Litig.*,
   555 F. Supp. 2d 661 (E.D. La. 2007) ...................................................... 83

*In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*,
   447 F. Supp. 2d 612 (E.D. La. 2006) ........................................ 60, 74, 85

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
   851 F. Supp. 2d 1040 (S.D. Tex. 2012) .................................................. 62

*In re Ins. Brokerage Antitrust Litig.*,
   579 F.3d 241 (3d Cir. 2009) ................................................................... 78

*In re Katrina Canal Breaches Litig.*,
   628 F.3d 185 (5th Cir. 2010) ................................................................. 79

*In re Lenovo Adware Litig.*,
   2019 WL 1791420 (N.D. Cal. Apr. 24, 2019) ........................................ 84

*In re Metlife Demutualization Litig.*,
   689 F. Supp. 2d 297 (E.D.N.Y. 2010) .................................................... 77

*In re Nissan Motor Corp. Antitrust Litig.*,
   552 F.2d 1088 (5th Cir. 1977) ............................................................... 67

*In re Oil Spill by Oil Rig Deepwater Horizon*,
   295 F.R.D. 112 (E.D. La. 2013) ..................................................... passim

*In re Oil Spill by the Oil Rig Deepwater Horizon*,
   910 F. Supp. 2d 891 (E.D. La. 2012) ............................................. passim

*In re Shell Oil Refinery*,
   155 F.R.D. 552 (E.D. La. 1993) ...................................................... 58, 59

*In re Syngenta AG MIR 162 Corn Litig.*,
   357 F. Supp. 3d 1094 (D. Kan. 2018) .................................................... 85

*In re U.S. Oil & Gas Litig.*,
   967 F.2d 489 (11th Cir. 1992) ...................................................................... 43

*In re Vioxx Prods. Liab. Litig.*,
   388 Fed. Appx. 391 (5th Cir. 2010) ............................................................. 87

*In re Vitamins Antitrust Class Actions*,
   215 F.3d 26 (D.C. Cir. 2000) ....................................................................... 88

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*,
   396 F.3d 922 (8th Cir.) ................................................................................ 44

*Klein v. O'Neal, Inc.*,
   705 F. Supp. 2d 632 (N.D. Tex. 2010) ............................................ 63, 73, 85

*Kornberg v. Carnival Cruise Lines, Inc.*,
   741 F.2d 1332 (11th Cir. 1984) .................................................................... 48

*Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*,
   733 F. Supp. 2d 997 (E.D. Wis. 2010) ......................................................... 77

*Maher v. Zapata Corp.*,
   714 F.2d 436 (5th Cir. 1983) ................................................................. passim

*Miller v. Republic Nat'l Life Ins. Co.*,
   559 F.2d 426 (5th Cir. 1977) ....................................................................... 43

*Newby v. Enron Corp.*,
   2008 WL 4178151 (S.D. Tex. Sept. 8, 2008) .............................................. 77

*ODonnell v. Harris Cty.*,
   2019 WL 4224040 (S.D. Tex. Sept. 5, 2019) ........................... 54, 56, 57, 63

*Oppenlander v. Standard Oil Co.*,
   64 F.R.D. 597 (D. Colo. 1974) .................................................................... 59

*Parker v. Anderson*,
   667 F.2d 1204 (5th Cir. 1982) ......................................................... 43, 53, 61

*Pearson v. Ecological Sci. Corp.*,
   559 F.2d 171 (5th Cir. 1975) ....................................................................... 43

*Petrovic v. Amoco Oil Co.*,
   200 F.3d 1140 (8th Cir. 1999) ..................................................................... 78

*Pettway v. Am. Cast Iron Pipe Co.*,
  576 F.2d 1157 (5th Cir. 1978)...................................................................... 43, 53, 63, 83

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ................................................................................................. 67

*Raines v. Florida*,
  987 F. Supp. 1416 (N.D. Fla. 1997).......................................................................... 74

*Reed v. Gen. Motors Corp.*,
  703 F.2d 170 (5th Cir. 1983)...................................................................... 43, 53, 61, 63

*Reynolds v. Beneficial Nat'l Bank*,
  288 F.3d 277 (7th Cir. 2002)..................................................................................... 44

*Salinas v. Roadway Express, Inc.*,
  802 F.2d 787 (5th Cir. 1986)..................................................................................... 72

*Slipchenko v. Brunel Energy, Inc.*,
  2015 WL 338358 (S.D. Tex. Jan. 23, 2015) ............................................................ 61

*Smith v. Crystian*,
  91 Fed. Appx. 952 (5th Cir. 2004) ........................................................................... 73

*Stearns v. Ticketmaster Corp.*,
  655 F.3d 1013 (9th Cir. 2011)................................................................................... 78

*Thacker v. Chesapeake Appalachia, LLC*,
  695 F. Supp. 2d 521 (E.D. Ky. 2010) ...................................................................... 77

*Transamerican Refining Corp. v. Dravo Corp.*,
  952 F.2d 898 (5th Cir. 1992)..................................................................................... 87

*Turner v. Murphy Oil USA, Inc.*,
  234 F.R.D. 597 (E.D. La. 2006)........................................................................... 47, 76

*Turner v. Murphy Oil USA, Inc.*,
  472 F. Supp. 2d 830 (E.D. La. 2007) ................................................................. passim

*United States v. Allegheny-Ludlum Indus., Inc.*,
  517 F.2d 826 (5th Cir. 1975)..................................................................................... 42

*United States v. Tex. Educ. Agency*,
  679 F.2d 1104 (5th Cir. 1982)............................................................................. 44, 46

*Van Bronkhorst v. Safeco Corp.*,
  529 F.2d 943 (9th Cir. 1976)........................................................................ 42

*Veal v. Crown Auto Dealerships, Inc.*,
  2007 WL 2700969 (M.D. Fla. Sept. 13, 2007) ......................................... 76

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ............................................................... 48, 51, 52

*Whitford v. First Nationwide Bank*,
  147 F.R.D. 135 (W.D. Ky. 1992)................................................................. 84

*Young v. Katz*,
  447 F.2d 431 (5th Cir. 1971)................................................................ 43, 45

**Statutes**

28 U.S.C. § 1292(b) .................................................................................. 11

28 U.S.C. § 1407 ........................................................................................ 5

28 U.S.C § 1711 ........................................................................................ 68

28 U.S.C. § 1715 ........................................................................................ 68

28 U.S.C. § 1715(b) .................................................................................. 68

**Rules**

Fed. R. Civ. P. 16(a), 16(c), 23(e)............................................................. 43

Fed. R. Civ. P. 23 ................................................................................. passim

Fed. R. Civ. P. 23(a) ...................................................... 3, 46, 48, 49, 95

Fed. R. Civ. P. 23(b) ...................................................... 2, 46, 51, 52, 95

Fed. R. Civ. P. 23(e) ............................................................................. passim

Fed. R. Civ. P. 60 ...................................................................................... 89

**Other Authorities**

1 *Newberg On Class Actions* § 1:3 (4th ed.).......................................... 44

2 *Newberg on Class Actions* § 4:63 (5th ed.) ......................................... 52

4 *Newberg on Class Actions* § 11.41 (4th ed.)........................................................ 44, 73

4 *Newberg on Class Actions* § 11.47 (4th ed.)........................................................ 63

4 *Newberg on Class Actions* § 11.50 (4th ed.)........................................................ 59, 62

4 *Newberg On Class Actions* § 11:55 (4th ed.)........................................................ 87

4 *Newberg On Class Actions* § 11:58 (4th ed.)........................................................ 84

4 *Newberg On Class Actions* § 13:22 (5th ed.)........................................................ 87

4 *Newberg On Class Actions* § 13:23 (5th ed.)........................................................ 88

7B Fed. Prac. & Proc. § 1797.1 (3d ed.) ................................................................ 84

*Manual for Complex Litigation* § 21.643 (4th ed.) .............................................. 94

*The Theory of Fee Regulation in Class Action Settlements*,
46 AM. U. L. REV. 1429 (1997)............................................................................ 58

# TABLE OF EXHIBITS

**Exhibit**

1       Proposed Order and Judgment

2       List of Opt-Out Plaintiffs

3       Proposed Order of Dismissal

4       Declaration of Class Counsel Sandra L. Duggan in Support of Settlement

5       Florida Special Master Product ID Report & Recommendation (FLSD ECF No. 233)

6       Plaintiffs' Objections to and Appeal from Florida Special Master Product ID Report & Recommendation (FLSD ECF No. 253)

7       Taishan's Opposition to Plaintiffs' Objections to Florida Special Master Product ID Report & Recommendation (FLSD ECF No. 277)

8       Plaintiffs' Reply in Support of Objections to Florida Special Master Product ID Report & Recommendation (FLSD ECF No. 297)

9       Special Master's Report & Recommendation Regarding Contests and Setoffs (FLSD ECF No. 266)

10      Special Master's Second Report & Recommendation Regarding Contests and Setoffs (FLSD ECF No. 268)

11      Declaration of J. Cal Mayo, Jr.

12      Declaration of Jacob S. Woody

13      Declaration of Shannon R. Wheatman, Ph.D.

14      Letter from Judge Fallon, docketed in *Amorin* in U.S.D.C. for the Southern District of Florida (FLSD ECF No. 336)

15      Analytics of Settlement Website Data

16      Affidavit of Class Representative David Griffin

17      Affidavit of Class Representative Lillian Eyrich

18        Affidavit of Class Representative Michelle Germano

19        Affidavit of Class Representative Virginia Tiernan

20        Affidavit of Class Representative Debra Williams

21        Affidavit of Class Representative Judd Mendelson

22        Declaration of Class Counsel Arnold Levin

23        Declaration of Class Counsel Stephen J. Herman

24        Declaration of Class Counsel Patrick S. Montoya

25        Declaration of Class Counsel Richard J. Serpe

26        Email from Francisco Albites of Parker Waichman authorizing dismissal of
          Michael Guerriero's Claims and Motion to Voluntarily Dismiss Certain
          Claims (FLSD ECF No. 81)

27        Parker Waichman Notice of Objection to Mediation (FLSD ECF No. 239)

## I.   **INTRODUCTION**

After ten years of contentious, hard-fought litigation on behalf of thousands of homeowners alleging damages from Chinese Drywall, Settlement Class Counsel[1] reached a negotiated class settlement with Taishan Gypsum Company Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd. and Taian Taishan Plasterboard Co. Ltd. (collectively "Taishan"),[2] which was preliminarily approved by this Court on August 29, 2019.[3] The Settlement Class includes:

> (1) all Class Members in the *Amorin* Class certified by Judge Fallon in MDL No. 2047 in *In re Chinese-Manufactured Prod. Liab. Litig.*, 2014 WL 4809520 (E.D. La. Sept. 26, 2014) ("*Amorin* Plaintiffs"); (2) all Plaintiffs who are named on one or more of the *Brooke* Complaints[4] ("*Brooke* Plaintiffs"); and (3) all other property owners with Chinese Drywall alleged to be attributed to Taishan and/or the Additional Released Parties[5] ("absent Class Members"). *Amorin* Plaintiffs and *Brooke* Plaintiffs are collectively referred to as "known Class Members."[6]

---

[1] Settlement Class Counsel are Arnold Levin, Stephen J. Herman, Richard J. Serpe, Patrick S. Montoya, and Sandra L. Duggan. *See* Preliminary Approval Order [Rec. Doc. 22314], at ¶ 5.

[2] The Settlement Agreement with Taishan (the "Settlement Agreement") is filed of record [*see* Rec. Doc. 22305-2]. Capitalized terms used in this Memorandum have the same meaning as those defined in the Settlement Agreement.

[3] *See* Preliminary Approval Order [Rec. Doc. 22314].

[4] The operative *Brooke* Complaints are: *Brooke, et al. v. The State-Owned Assets Supervision and Administration Commission of the State Council, et al.*, Civ. Action No. 15-4127 (E.D. La.); *Brooke, et al. v. The State-Owned Assets Supervision and Administration Commission of the State Council, et al.*, Civ. Action No. 15-6631 (S.D. Fla.) (Miami Case No. 15-24348); *Brooke, et al. v. The State-Owned Assets Supervision and Administration Commission of the State Council, et al.*, Civ. Action No. 15-6632 (E.D. Va.) (Norfolk Case No. 15-506).

[5] The Additional Released Parties are: Beijing New Building Materials Public Limited Company ("BNBM"); Beijing New Building Materials (Group) Co., Ltd. ("BNBM Group"); China National Building Materials Co., Ltd. ("CNBM"); China National Building Materials Group Corporation ("CNBM Group"), and the State-Owned Assets Supervision and Administration Commission of the State Council ("SASAC").

[6] Preliminary Approval Order [Rec. Doc. 22314], at ¶ 3; Settlement Agreement [Rec. Doc. 22305-2], at § 1.1.1. EXCLUDED from the Class are: (1) Plaintiffs listed on Exhibit 1 to the Settlement Agreement (Exhibit 1 includes 498 Plaintiffs who are included in a separate settlement agreement with Taishan); (2) the named Plaintiff and putative class members in *The Mitchell Co., Inc. v. Knauf Gips KG, et al.*, Civil Action No. 09-4115 (E.D. La.); and (3) Plaintiffs who asserted Claims against Taishan and/or the Additional Released Parties, but whose Claims were dismissed for failure to complete a Supplemental Plaintiff Profile Form ("SPPF") or by motion for voluntary dismissal. *Id.*

If approved, this Settlement will provide $248 million in cash for the benefit of all eligible *Amorin* Plaintiffs, all eligible *Brooke* Plaintiffs, and all eligible absent Class Members.[7] The overwhelming majority of Class Members – more than 97% – support the Settlement. In fact, out of 3,948 known Class Members, only 78 have opted out[8] and only 22 submitted an Objection.[9]

Under the Settlement, the distribution of Allocation Amounts to Eligible Class Members, based on the application of Objective Criteria under an Allocation Model, can and will be made within a few months after the Effective Date of the Settlement, since most Class Members are already identified on a Master Spreadsheet filed with the Court and no Claim Form is required for them.[10]

This Memorandum of Law is submitted by Settlement Class Counsel in support of their Motion for Final Approval of the Settlement and Certification of the Settlement Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3) and 23(e). The Parties seek entry of an Order and

---

[7] *See* Settlement Agreement [Rec. Doc. 22305-2], at §§ 1.13, 4.1. Subject to Court approval, certain fees and costs will be deducted from the Settlement Fund. *See id.* at §§ 4.1.1, 8.2.1, 16.1, 16.2.

[8] *See* Notice of Filing of Opt-Outs [Rec. Doc. 22388]. Not every Opt-Out request received by Settlement Class Counsel complied with § 9 of the Settlement Agreement. The requests filed at Rec. Docs. 22388-5, 22388-30, 22388-54, 22388-55 and 22388-88 purported to include parties who did not sign the request as required by § 9.2.1 of the Settlement Agreement ("Individual Class Members who desire to opt out must request to opt out and *must sign a pleading* seeking exclusion from the Settlement." (emphasis added)). The request filed at Rec. Doc. 22388-90 was not postmarked within the 90-day period pursuant to §§ 9.1.1 and 9.2.1 and was submitted and signed by Mark Floman in his individual capacity for an Affected Property for which the known Class Member is an LLC (M and M the Closers, LLC). Therefore, opt-out requests that did not comply with § 9 of the Settlement Agreement are not included in the opt-out totals or the list of opt-outs submitted herewith. Notice of these non-compliant opt-out requests has been sent to Jimmy Doyle, counsel of record for the parties identified on the non-compliant opt-out requests [Rec. Docs. 22388-5, 22388-30, 22388-54, 22388-55 and 22388-88].

[9] *See* Notice of Filing of Objections [Rec. Doc. 22389]. In addition to the 22 Objections from known Class Members, 5 Objections were submitted by non-Class Members. *See* Section III.G.5, *infra*.

[10] *See* Settlement Agreement [Rec. Doc. 22305-2], at §§ 12.1.4, 12.1.5. For absent Class Members and any other Class Members not listed on the Master Spreadsheet, the completion of a simple Claim Form with Objective Criteria is required. *See id.* at § 12.1.5; Claim Form [Rec. Doc. 22305-6].

Judgment[11] finding that the Settlement is fair, reasonable and adequate, that the Settlement was negotiated and entered into in good faith and without collusion, and that the Settlement should be approved pursuant to Fed. R. Civ. P. 23(e) because: (A) the Class Representatives and Settlement Class Counsel have adequately represented the Class; (B) the Settlement Agreement was negotiated at arm's length; (C) the relief provided for the Class is adequate, taking into account: (i) the costs, risks, and delay of trials and appeals; (ii) the effectiveness of the proposed method of distributing Allocation Amounts to Eligible Class Members, including the method of processing Class Member claims; (iii) the terms of the proposed award of attorneys' fees, including timing of payment[12]; and (iv) the absence of any agreement required to be identified under Rule 23(e)(3); and (D) the Settlement and the Allocation Model developed by the Allocation Neutral approved by the Court treat Class Members equitably relative to each other. In addition, Settlement Class Counsel seek certification of the Settlement Class under Rule 23(a) and Rule 23(b)(3) and also incentive awards for the Priority Plaintiffs in Florida who are Class Members, the Select Claimants in Louisiana who are Class Members, and the Settlement Class Representatives.

Further, Settlement Class Counsel respectfully request that the Court approve the Class Release and bar provision provided in Section 5.2 of the Settlement and the Taishan Release provided in Section 5.3 of the Settlement, and find that: (1) Notice was disseminated to the Class pursuant to the Preliminary Approval Order, satisfying Fed. R. Civ. P. 23 and Due Process; (2) all Class Members who did not submit a valid request to be excluded from the Settlement pursuant to Section 9 of the Settlement Agreement shall be bound by the Court's Judgment approving the

---

[11] The proposed "Order and Judgment" is attached hereto as Exhibit "1."

[12] *See* Settlement Class Counsel's Motion for an Award of Attorneys' Fees and Cost Reimbursements for Common Benefit Counsel and Individually Retained Attorneys Agreement ("Fee Petition") [Rec. Doc. 22363], set for hearing on December 11, 2019.

Settlement and certifying the Settlement Class; and (3) putative Class Members identified on the List of Opt-Out Plaintiffs[13] are deemed to have opted out of the Settlement and are referred to as "Opt-Out Plaintiffs." Settlement Class Counsel request that the Court lift the stay of prosecution of claims against Taishan and the Additional Released Parties, entered August 29, 2019 [Rec. Doc. 22314].

For the reasons set forth below, Settlement Class Counsel also ask that the Court deny and overrule all Objections filed in opposition to the Settlement.

Finally, Settlement Class Counsel request that the Court enter the accompanying Order dismissing with prejudice all Claims against Taishan and the Additional Released Parties in the Litigation and CDW-Related Actions in federal court, with the exception of those claimants who have submitted valid opt-out requests, with each party to bear his, her or its own costs.[14]

## II.   FACTUAL BACKGROUND

### A.   History of the Chinese Drawall Proceedings.

#### 1.   The Origins of the Litigation.

The *Chinese Drywall* Litigation arose out of thousands of individual and class action lawsuits filed in state and federal courts throughout the country on behalf of Plaintiffs seeking compensation for property damage and personal injuries allegedly caused by defective Chinese Drywall. In the aftermath of the devastation caused by Hurricanes Katrina and Rita at the end of the summer of 2005, and in conjunction with a housing boom in other parts of the country, there

---

[13] The List of "Opt-Out Plaintiffs" is attached hereto as Exhibit "2."

[14] The proposed Order of Dismissal is attached hereto as Exhibit "3." The Opt-Out Plaintiffs excluded from the Order of Dismissal are set forth on Exhibit A thereto. In addition, the Parties agreed upon Final Approval of the Settlement to file a joint motion with a proposed order to the Court seeking to purge any criminal and/or civil contempt proceedings against Taishan and/or the Additional Released Parties arising out of or relating to this Litigation. Settlement Agreement [Rec. Doc. 22305-2], at § 17.12.

was a critical shortage of drywall in the United States, which led to the importation of millions of square feet of drywall from China beginning in the fall of 2005 through 2008.

This Chinese-manufactured drywall was installed in thousands of properties, primarily in Florida and Louisiana, but also in Virginia, Alabama, Mississippi, Texas, Tennessee, Georgia, North Carolina, Illinois, Oklahoma, South Carolina, and California; and in time, many residents and owners began to notice unpleasant odors and corrosion to certain items made of metal.[15] These problems were linked to the presence of sulfur gases contaminating the interior of these properties; and Plaintiffs filed claims for damages in various jurisdictions across the country alleging that Chinese Drywall emits sulfur gases that cause extensive damage to properties and also, in some cases, physical ailments.[16] On June 15, 2009, the Judicial Panel for Multidistrict Litigation ("JPML") transferred all federal actions alleging damage from Chinese Drywall to the Eastern District of Louisiana for coordinated discovery and consolidated pretrial proceedings in MDL 2047 pursuant to 28 U.S.C. § 1407.[17]

### 2.     **The Omni Complaints.**

Since the formation of the MDL, thousands of claimants have been named on one or more Omnibus Class Action Complaints filed by the Plaintiffs' Steering Committee ("PSC") against more than 1,650 manufacturers, importers, suppliers, distributors, builders, installers, and insurers involved in the supply chain of Chinese Drywall installed in Plaintiffs' Affected Properties.[18] In

---

[15] *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.* (*German*o), 706 F. Supp. 2d 655, 663 (E.D. La. 2010) (Findings of Fact and Conclusions of Law).

[16] *Id.* at 659, 664-66, 710.

[17] Rec. Doc. 1; *see also In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 626 F. Supp. 2d 1346 (J.P.M.L. 2009).

[18] *See Payton v. Knauf Gips, KG*, No. 09-7628 (E.D. La.) (Omni I, I(A), I(B), I(C)); *Wiltz v. Beijing New Building Materials Public Limited Co.*, No. 10-361 (E.D. La.) (Omni II, II(A), II(B), II(C)); *Gross v. Knauf Gips, KG*, No. 09-6690 (E.D. La.) (original complaint, Omni III, III(A)); *Rogers v. Knauf Gips, KG*, No.

2010, Taishan filed motions to dismiss for lack of personal jurisdiction under Louisiana, Florida, and Virginia law. In order to protect the Plaintiffs' Claims where jurisdiction over Taishan was in question, the PSC filed identical *Amorin* Class Action Complaints in the MDL, the Southern District of Florida, and the Eastern District of Virginia. Each of the *Amorin* actions included all Plaintiffs named on any of the Omni actions against Taishan regardless of where the Plaintiff's property was located. These identical *Amorin* Complaints were transferred to the MDL by the JPML.[19]

### 3.    Initial Proceedings in the MDL.

The PSC pursued primarily two groups of drywall-manufacturer Defendants: (1) the Knauf

---

10-362 (E.D. La.) (Omni IV, IV(A), IV(B), IV(C)); *Amato v. Liberty Mutual Ins. Co.*, No. 10-932 (E.D. La.) (Omni V); *Hernandez v. AAA Ins.*, No. 10-3070 (E.D. La.) (Omni VI); *Abel v. Taishan Gypsum Co., Ltd.*, No. 11-080 (E.D. La.) (Omni VII); *Abreu v. Gebrueder Knauf Verwaltungsgesellschaft, KG*, No. 11-252 (E.D. La.) (Omni VIII); *Haya v. Taishan Gypsum Co., Ltd.*, No. 11-1077 (E.D. La.) (Omni IX); *Block v. Gebrueder Knauf Verwaltungsgesellschaft, KG*, No. 11-1363 (E.D. La.) (Omni X); *Benoit v. Lafarge S.A.*, No. 11-1893 (E.D. La.) (Omni XI); *Arndt v. Gebrueder Knauf Verwaltungsgesellschaft, KG*, No. 11-2349 (E.D. La.) (Omni XII); *Almeroth v. Taishan Gypsum Co., Ltd.*, No. 12-0498 (E.D. La.) (Omni XIII); *Cassidy v. Gebrueder Knauf Verwaltungsgesellschaft, KG*, No. 11-3023 (E.D. La.) (Omni XIV); *Amorin v. Taishan Gypsum Co., Ltd.*, No. 11-1672 (E.D. La.) (Omni XV); *Amorin v. Taishan Gypsum Co., Ltd.*, No. 11-1395 (E.D. La.) (Omni XVI); *Amorin v. Taishan Gypsum Co., Ltd.*, No. 11-1673 (Omni XVII); *Beane v. Gebrueder Knauf Verwaltungsgesellschaft, KG*, No. 13-609 (E.D. La.) (Omni XVIII); *Amorin v. State-Owned Assets Supervision and Administration Commission of the State Council*, No. 14-1727 (E.D. La.) (Omni XIX); *Brooke v. State-Owned Assets Supervision and Administration Commission of the State Council*, No. 15-4127 (E.D. La.) (Omni XX); *Macon v. Taishan Gypsum Co., Ltd.*, No. 17-1287 (N.D. Ala.) (Omni XXI); *Peoples v. Taishan Gypsum Co., Ltd.*, No. 17-2890 (N.D. Ga.) (Omni XXII); *Polk v. Taishan Gypsum Co., Ltd.*, No. 17-216H50 (S.D. Miss.) (Omni XXIII); *Bright v. Taishan Gypsum Co., Ltd.*, No. 17-0035 (E.D.N.C.) (Omni XXIV); *DeOliveira v. Taishan Gypsum Co., Ltd.*, No. 17-2019 (D.S.C.) (Omni XXV); *Redden v. Taishan Gypsum Co., Ltd.*, No. 17-1146 (W.D. Tenn.) (Omni XXVI); *Mertlitz v. Taishan Gypsum Co., Ltd.*, No. 17-140 (E.D. Tex.) (Omni XXVII); *Bayne v. Taishan Gypsum Co., Ltd.*, No. 17-1286 (N.D. Ala.) (Omni XXVIII); *Abner v. Taishan Gypsum Co., Ltd.*, No. 11-3094 (N.D. Calif.) (Omni XXIX); *Bentz v. Taishan Gypsum Co., Ltd.*, No. 17-2892 (N.D. Ga.) (Omni XXX); *Allen v. Taishan Gypsum Co., Ltd.*, No. 17-217LG (S.D. Miss.) (Omni XXXI); *Lochhead v. Taishan Gypsum Co.*, No. 17-294 (S.D. Tex.) (Omni XXXII); *Stutzman v. Taishan Gypsum Co., Ltd., et al.*, No. 17-1209 (S.D. Ill.) (Omni XXXIII); *Allman v. Taishan Gypsum Co., Ltd., et al.*, No. 17-00051 (E.D.N.C.) (Omni XXXIV); *Cole v. State-Owned Assets Supervision and Administration Commission of the State Council, et al.*, No. 18-00562 (N.D. Okla.) (Omni XXXV).

[19] *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2018 WL 6046189, at *2-3 (E.D. La. Nov. 19, 2018) (discussing background of identical *Amorin* complaints).

entities,[20] and (2) the Taishan entities.[21] Knauf entered its appearance early in the Litigation, in July 2009, agreeing to a limited waiver of service in November 2009.[22] In contrast, the Taishan entities failed to appear in the Litigation and a default was entered against Taishan in 2009.[23] In February 2010, the Court presided over a trial of seven families' claims in *Germano v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co. Ltd., et al*., Case No. 09-6687 (E.D. La.), after which the Court entered a monetary judgment in favor of Plaintiffs and against Taishan.[24] In March 2010, the Court presided over a trial of homeowners' claims in *Hernandez v. Knauf Gips KG*, Case No. 09-6050 (E.D. La.), after which the Court found in favor of Plaintiffs and against Knauf.[25]

### 4.   <u>Litigation Against Knauf.</u>

The Court's findings in *Germano* and *Hernandez* provided a foundation for Knauf and the PSC to enter into a comprehensive pilot remediation program for Knauf claimants on October 14, 2010 ("KPT Pilot Program").[26] The KPT Pilot Program proved a catalyst toward a negotiated resolution with Knauf. As a result, on December 20, 2011, the Knauf entities and the PSC entered

---

[20] *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2017 WL 1421627, at *1 (E.D. La. Apr. 21, 2017). The Knauf entities ("Knauf") are German-based, international manufacturers of building products, including drywall, whose Chinese subsidiary, Knauf Plasterboard (Tianjin) Co., Ltd., manufactured and sold its Chinese Drywall in the United States.

[21] *See id.* The Taishan entities are Chinese companies that include Taishan and its parents BNBM, BNBM Group, CNBM, CNBM Group, and SASAC. On March 10, 2016, the Court dismissed CNBM Group on the grounds of the Foreign Sovereign Immunity Act. *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 168 F. Supp. 3d 918 (E.D. La. 2016).

[22] *See Chinese Drywall*, 2017 WL 1421627, at *1.

[23] *See In re Chinese-Manufactured Drywall Prod. Liab. Litig*., 2014 WL 4809520, at *2 (E.D. La. Sept. 26, 2014) ("*Class FOFCOL*").

[24] *See Chinese Drywall*, 706 F. Supp. 2d 655.

[25] *See Chinese Drywall*, 2017 WL 1421627, at *1.

[26] *See id*. at *2.

into a class settlement agreement providing comprehensive remediation and cash benefits to homeowners with Knauf drywall, which the Court certified as a class action and approved on February 7, 2013.[27] In addition, the PSC reached class settlement agreements with hundreds of downstream Defendant homebuilders, suppliers, and installers (and most of their insurers), resulting in the resolution of "almost all of the Knauf Entities' chain-of-commerce litigation."[28] Relatedly, the PSC negotiated, and the Court approved, four additional class settlements with "several downstream entities in the Taishan chain of commerce and their insurers" for the benefit of mostly Virginia claimants.[29] Additionally, Plaintiffs reached a class settlement with Taishan of Assigned Claims in MDL No. 2047 on Behalf of the Porter-Blaine/Venture Supply Class Regarding Claims Assigned to the Class by the Porter-Blaine/Venture Participating Defendants and Participating Insurers Against Taishan Gypsum Company Ltd. and Taian Taishan Plasterboard Co., Ltd.[30]

### 5. Litigation Against Taishan.

After entry of the *Germano* judgment, Taishan entered its appearance in the MDL to contest jurisdiction and vacate the default judgments. In the meantime, defaults also were entered against CNBM, BNBM, and/or BNBM Group in various cases.[31] Two years later, after significant jurisdictional discovery, including depositions on several continents, a week of depositions personally overseen by the Court in Hong Kong, and extensive briefing, the Court issued its

---

[27] *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2013 WL 499474 (E.D. La. Feb. 7, 2013); *see also Chinese Drywall*, 2017 WL 1421627, at *2.

[28] *Chinese Drywall*, 2017 WL 1421627, at *2.

[29] *See* Order and Judgment dated 7/9/2013 [Rec. Doc. 16934], at 6.

[30] Rec. Doc. 21544.

[31] *See Chinese Drywall*, 2017 WL 1421627, at *8.

jurisdictional opinion. The Court declined to vacate the default judgments against Taishan and determined that Taishan was subject to the Court's jurisdiction under Louisiana, Florida, and Virginia law.[32]

With the issue of jurisdiction resolved, Taishan discharged its counsel and announced that it would not appear for a judgment debtor examination as ordered by the Court.[33] The Court entered a civil and criminal contempt order and injunction enjoining Taishan and its affiliates and/or subsidiaries from conducting any business in the United States until or unless Taishan participated in this judicial process.[34] During Taishan's absence from the jurisdiction, Plaintiffs filed a Motion for Class Certification pursuant to Rule 23(b)(3).[35] On September 26, 2014, the Court certified the *Amorin* class of named homeowners with defective drywall manufactured by any of the Taishan entities.[36] The Court scheduled a hearing to determine class damages.[37]

On the day that hearing was scheduled to begin on February 12, 2015, BNBM entered an appearance and requested a continuance of the class damages hearing.[38] Shortly thereafter, Taishan returned to the Litigation and paid the *Germano* judgment, plus fines,[39] and BNBM Group, CNBM, and additional CNBM entities appeared in the Litigation.[40] BNBM, BNBM Group, and

---

[32] *Chinese Drywall*, 894 F. Supp. 2d 819 (E.D. La. 2012), *aff'd*, 742 F.3d 576 & 753 F.3d 521 (5th Cir. 2014).

[33] *Chinese Drywall*, 168 F. Supp. 3d at 932.

[34] Contempt Order dated 7/17/2014 [Rec. Doc. 17869].

[35] *Chinese Drywall*, 2017 WL 1421627, at *4.

[36] *Class FOFCOL*, 2014 WL 4809520, at *16.

[37] *Chinese Drywall*, 2017 WL 1421627, at *5.

[38] Rec. Doc. 18331; *see also Chinese Drywall*, 2017 WL 1421627, at *5.

[39] *See* Notice of Appearance [Rec. Docs. 18352]; Notice of Payment of Contempt Penalty [Rec. Doc. 18448].

[40] Rec. Docs. 18397, 18411, 18427, 18428, 18431, 18444; *see also Chinese Drywall*, 2017 WL 1421627, at *5.

the CNBM entities filed jurisdictional challenges.[41] In addition, Defendants sought to decertify the *Amorin* class.[42]

On June 9, 2015, the Court oversaw the class damages hearing. Following extensive pretrial briefing, which included *Daubert* motions, the Parties presented remediation damages evidence at the class damages hearing, and after that hearing prepared extensive proposed findings of fact and conclusions of law.[43] On April 21, 2017, the Court entered an order on class damages adopting a formula for calculating remediation damages (the "Remediation Damages Formula") based on universally accepted RS Means data, analogous to that used by national builders.[44] The Court concluded that Plaintiffs' remediation damages should be "calculated by multiplying the under air square footage of the affected properties . . . by [the national unit square foot price for remediation] *as adjusted* by the RS Means location factor."[45] Also, on April 21, 2017, the Court denied Defendants' motion to decertify the *Amorin* class.[46]

In 2018, the Court rejected BNBM's and CNBM's efforts to vacate the defaults that had been entered against them.[47] Absent settlement, BNBM and CNBM will attack on appeal the validity, extent, and transferability of default.

---

[41] *See* BNBM and CNBM entities' Motions to Dismiss [Rec. Docs. 19527, 19646, 19663, 19664]; *see also* BNBM Group's Motion to Dismiss the Complaints Pursuant to Rule 12(b)(2) and 12(b)(5) [Rec. Doc. 18841].

[42] *See* CNBM's Motion to Decertify the Class [Rec. Doc. 20627]; Taishan's joinder in CNBM's Motion to Decertify the Class [Rec. Doc. 20632]; Defendants' Motion to Certify an Immediate Appeal from the Court's Order Denying their Motions to Decertify the Class (§1292(b) Motion #2) [Rec. Doc. 20780]; Taishan's Motion to Amend the Order Denying Class Decertification and the Class Damages Order and to Certify for Interlocutory Appeal Under Section 1292(b) [Rec. Doc. 20778].

[43] Rec. Doc. 19194 (Taishan) Rec. Doc. 19197 (Plaintiffs); Rec. Doc. 19198 (BNBM).

[44] *Chinese Drywall*, 2017 WL 1421627, at *14.

[45] *Id*. at *24.

[46] *See* Rec. Doc. 20741.

[47] *In re Chinese-Manufactured Drywall Prod. Liab. Litig*., 2018 WL 279629, at *8 (E.D. La. Jan. 2, 2018).

With respect to the ongoing efforts of CNBM and BNBM to contest jurisdiction over them, the Court entered an Order and Reasons on April 21, 2017, holding that the Claims against certain Defendants, including CNBMIT Co. Ltd., CNBM USA Corp., and United Suntech Craft, must be dismissed for lack of jurisdiction and that, for jurisdictional purposes (i) CNBM, BNBM Group, BNBM, and Taishan operate as a single business enterprise under Louisiana law, (ii) Taishan and BNBM are agents under Virginia and Florida law, (iii) there is jurisdiction over BNBM under Florida law for its manufacture and sales of BNBM Dragon Board in Florida, and (iv) the Court does not have jurisdiction over BNBM Group or the CNBM entities under Florida law or Virginia law.[48] Following these rulings, BNBM, BNBM Group and CNBM filed motions pursuant to 28 U.S.C. § 1292(b), seeking immediate appellate review.[49] On August 4, 2017, the Court certified its Jurisdiction Order for immediate appeal but, thereafter, Taishan, BNBM, BNBM Group, and CNBM filed supplemental motions to dismiss based on *Bristol-Myers Squibb v. Superior Court of California*, 137 S. Ct. 1773 (2017) ("*BMS*").[50] In order to protect the Plaintiffs facing potential dismissal challenges, the PSC filed protective *Amorin* and *Brooke* actions in each of the States where Affected Properties were located.[51] Extensive briefing occurred on the issue of the Court's

---

[48] *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2017 WL 1476595 (E.D. La. Apr. 21, 2017) ("Jurisdiction Order"), *mot. to certify appeal granted*, 2018 WL 4863625 (E.D. La. Mar. 6, 2018).

[49] Rec. Doc. 20779; Defendants' Petition for Permission to Appeal Pursuant to 28 U.S.C. § 1292(b), Fifth Circuit Docket 17-90027, filed by CNBM, BNBM Group, and BNBM [Rec. Doc. 20898-2] (permission denied by the Fifth Circuit on September 1, 2017).

[50] *See* Order & Reasons (8/4/2017) [Rec. Doc. 20890], vacated while *BMS* briefing occurred [Rec. Doc. 20927]; *see also* Rec. Doc. 20882. Defendants' 1292(b) motions on class damages and decertification were denied by Order & Reasons (8/22/2017) [Rec. Doc. 20910].

[51] *See* note 18, *supra* (citing Omni XVI-Omni XXXV).

jurisdiction over Defendants and, on November 30, 2017, the Court issued an opinion on personal jurisdiction that rejected the challenges under *BMS*.[52]

Thereafter, the BNBM and CNBM entities revisited their request for interlocutory review.[53] That request was granted in part by the Court, certifying the issues arising from the original Jurisdiction Order but denying certification with respect to issues raised by *BMS*.[54] BNBM, BNBM Group, and CNBM petitioned the Fifth Circuit for permission to appeal the Jurisdiction Order, which prompted additional briefing.[55] That petition was granted; the jurisdictional appeal is fully briefed and oral argument has been scheduled for the week of February 3, 2020.[56]

### 6. The *Brooke* Actions.

After the *Amorin* Class was certified in September 2014, additional complaints were filed with new Plaintiffs, who were not part of the certified *Amorin* Class, asserting similar claims against Taishan and the BNBM and CNBM entities and including, among the Defendants, SASAC.[57] Much like the protective *Amorin* Complaints, identical *Brooke* Complaints containing all of the same Plaintiffs were filed in Louisiana, Florida, and Virginia, which were then transferred to the MDL Court in Louisiana. Taishan, BNBM, BNBM Group, and CNBM entered their appearances in *Brooke*. However, there have been no defaults entered in the *Brooke* cases, there

---

[52] Rec. Doc. 20188.

[53] Rec. Doc. 21095; Rec. Doc. 21096.

[54] Rec. Doc. 21231.

[55] *See* Defendants' Petition, *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, No. 18-90013 (5th Cir. Mar. 15, 2018), Doc. No. 00514397054; Plaintiffs' Response, *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, No. 18-90013 (5th Cir. Mar. 15, 2018), Doc. No. 0051440659.

[56] *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, No. 18-30742 (5th Cir. Nov. 22, 2019), Doc. No. 00515211235.

[57] *See* notes 4, 18, *supra*.

have not been any responsive pleadings filed, and a class has not been certified. Further, BNBM moved to dismiss the *Brooke* Complaints, and this Court granted that motion, in part, by dismissing certain causes of action and ruling on BNBM's statute of limitations defense, that many claimants cannot rely on cross-jurisdictional tolling to save their Claims.[58] Otherwise, all of the issues in the *Brooke* actions are yet to be litigated, including individual determinations regarding application of the respective statutes of limitations, and the applicability of any rulings from the *Amorin* actions to the *Brooke* actions has not been determined.

### 7.    Remands of *Amorin* and *Brooke* Actions.

In 2018, this Court suggested that the Florida and Virginia *Amorin* actions be remanded.[59] On March 11, 2019, the Court suggested that the Florida and Virginia *Brooke* actions be remanded.[60] As a result, the Florida *Amorin* action was remanded to Judge Cooke in the Southern District of Florida (Civil Action No. 11-22408), the Virginia *Amorin* action was remanded to Judge Davis in the Eastern District of Virginia (Norfolk Civil Action No. 11-377), the Florida *Brooke* action was remanded to Judge Williams in the Southern District of Florida (Civil Action No. 15-24348), and the Virginia *Brooke* action was remanded to Judge Smith in the Eastern District of Virginia (Norfolk Civil Action No. 15-506). The Louisiana *Amorin* and *Brooke* actions remain in the MDL, and even though the Florida and Virginia *Amorin* and *Brooke* actions were remanded, all of these Plaintiffs' Claims also remain in the Louisiana *Amorin* and *Brooke* actions because the

---

[58] *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2019 WL 1057003 (E.D. La. Mar. 6, 2019).

[59] *See* Rec. Doc. 21242 (Florida); Rec. Doc. 21695 (Virginia). The *Amorin* cases were remanded by Order of the JPML to Florida on June 6, 2018, and to Virginia on October 10, 2018. *See* JPML Rec. Doc. 524 (Florida); JPML Rec. Doc. 547 (Virginia).

[60] *See* Rec. Doc. 22198; JPML Rec. Doc. 556.

Complaints are identical.[61] Since the Settlement was reached, all actions in the Litigation and CDW-Related Actions have been stayed during the Settlement approval process.[62]

Upon remand of the Florida *Amorin* cases, on November 16, 2018, Judge Cooke entered an ambitious two-track scheduling order designed to move the cases to resolution – one track for remediation damages and one track for other losses.[63] For the next six months, the Parties worked diligently and many times around the clock to execute the remand court's trial plan. On behalf of approximately 1,700 Florida *Amorin* Plaintiffs, Settlement Class Counsel responded to Defendants' discovery requests and contests regarding remediation damages, generally, and proof of Product ID, ownership status of Affected Properties, under air square footage, remediation status, prior payments for Chinese Drywall Claims, and assignments of claims to third parties, specifically. In addition, Settlement Class Counsel and other common benefit counsel, including PSC members and attorneys working under their direction, took the deposition of Taishan's 30(b)(6) witness and served written discovery on BNBM[64] regarding Product ID and the categories of Chinese Drywall alleged to be attributed to Defendants. Following the Product ID and remediation damages discovery, the Parties presented multiple briefs with evidentiary support and several days of oral argument to Special Master Tiffani Lee, appointed by Judge Cooke in Florida.

---

[61] *See Chinese Drywall*, 2018 WL 6046189, at *5-6 (staying, instead of dismissing, Florida and Virginia-based claims in the Louisiana *Amorin* Complaint).

[62] *See* MDL Rec. Docs. 22261, 22271, 22282, 22294, 22314; FLSD ECF Nos. 306, 313, 317, 319; VAED ECF Nos. 92, 95, 97, 99, 101.

[63] *See* Florida Trial Plan, *Amorin v. Taishan*, Civil Action No. 11-cv-22409 (Nov. 16, 2018) (FLSD ECF No. 112) [Rec. Doc. 21933-1].

[64] Settlement Class Counsel attempted to depose BNBM on Product ID issues. Though BNBM's 30(b)(6) witness had been granted approval to enter the United States, he had yet to formally receive his visa. Given the time constraints of Judge Cooke's trial plan order, the Parties agreed to written discovery of BNBM in lieu of live testimony. *See* Declaration of Class Counsel Sandra L. Duggan in Support of the Settlement ("Class Counsel Declaration") (attached hereto as Exhibit "4"), at ¶ 12.

Plaintiffs were successful on some, but not all, issues related to Product ID[65] and remediation

damages.[66] At the time the Settlement was reached a number of case-dispositive issues remained

unresolved.

In Florida, the Parties also engaged in discovery regarding Other Losses of 20 Priority

Plaintiffs set for trial in July 2019. During a two-month period, the Priority Plaintiffs produced

---

[65] At the time the Settlement was reached, the Special Master had entered her Report and Recommendation Regarding Product ID Categories Attributable to Taishan Defendants ("Product ID R&R"), rejecting Plaintiffs' arguments for attribution to Taishan for: "MADE IN CHINA MEETS OR EXCEEDS," nearly all of the Drywall with dimensions markings with the exception of one marking that Taishan admitted to and the other where Plaintiffs had direct evidence that it was a Taishan marking, Prowall, IMT Gypsum, C&K, and White Edge Tape and "blank boards." *See* Special Master's Product ID R&R (FLSD ECF No. 233) (attached hereto as Exhibit "5"). Plaintiffs' Objections to the Product ID R&R were pending before Judge Cooke at the time the Settlement was reached, and remain unresolved. *See* Plaintiffs' Objections to and Appeal from Product ID R&R (FLSD ECF No. 253) (attached hereto as Exhibit "6"); Taishan's Opposition to Plaintiffs' Objections to and Appeal from Product ID R&R (FLSD ECF No. 277) (attached hereto as Exhibit "7"); Plaintiffs' Reply in Further Support of Their Objections to and Appeal from Product ID R&R (FLSD ECF No. 297) (attached hereto as Exhibit "8").

[66] *See* Special Master's Report and Recommendation Regarding Defendants' Contests and Set-Offs (FLSD ECF No. 266) (attached hereto as Exhibit "9"); Special Master's Second Report and Recommendation Regarding Defendants' Contests and Set-Offs (FLSD ECF No. 268) (attached hereto as Exhibit "10"). The Special Master sustained the following Contests asserted by Defendants: (g) only SPPFs and amended SPPFs with signed verifications are admissible; (n) Plaintiffs whose Affected Property was remediated by another person or entity at no cost to the Plaintiffs have no remediation damages to recover; and (o) Plaintiffs whose diminution in value is less than the amount requested under the remediation damages formula are entitled to only the diminution in value and not remediation formula damages in accordance with Florida law. At the same time, the Special Master denied the following Contests asserted by Defendants: (a) certain Plaintiffs are not *Amorin* Class Members; (c) Plaintiffs who were aware of the Chinese Drywall prior to purchasing the Affected Property are not entitled to remediation or any other kind of damages; (e) condominium associations do not have standing as Class Members; (h) Plaintiffs who did not fill out all relevant fields in the SPPF should be off-tracked; (i) Plaintiffs who have more than one proof of under-air square footage should be off-tracked; (k) Plaintiffs who lack sufficient Product ID should be excluded from the remediation damages formula process; (l) and (m) Plaintiffs whose Affected Properties were partially or completely remediated should be off-tracked; (p) Plaintiffs eligible for the Remediation Damages Formula are only entitled to the 2015 RS Means national price per square foot; and (q) Plaintiffs who did not preserve evidence in compliance with Pre-Trial Order 1 should be off-tracked and resolved through individual adjudication. Further, the Special Master overruled the following Contests as they sought input on matters pending before Judge Cooke or Judge Fallon: (d) former owners are not entitled to the Remediation Damages Formula; (f) certain Plaintiffs did not submit an SPPF; and (j) Plaintiffs without proof of Product ID attributable to Taishan cannot recover against Taishan. The Settlement was reached before the deadline to file Objections to the Special Master's Reports and Recommendations on Defendants' Contests and before Judge Cooke had an opportunity to rule on related matters pending before her. Therefore, a number of issues pertaining to Plaintiffs' remediation damages remain unresolved.

relevant documents requested by Defendants on the subjects of alternative living expenses, short sales, foreclosures, bankruptcies, bodily injury claims, loss of use and enjoyment, punitive damages, lost equity, personal property damages and other losses. In addition, the Priority Plaintiffs prepared lists of fact witnesses and submitted themselves (and other owners of the Affected Properties) for deposition and home inspections if requested. Following fact discovery, Settlement Class Counsel and other common benefit counsel working under their direction engaged in expert discovery and motions practice in preparation of the trials scheduled for Other Loss claims. Tens of thousands of pages of expert reliance material were exchanged, including copious scientific testing data and complex housing market valuations. Depositions of both Plaintiff and Defendant experts were vigorously pursued, generating thousands of pages of expert transcripts. These depositions formed the basis of motion practice, which was fully briefed and pending at the time the proposed Settlement was reached. Further, Defendants filed an omnibus motion for summary judgment, which posited multiple theories as to why the Priority Plaintiffs should not be entitled to recover (or, to the extent they can recover, why their damages should be minimized). Plaintiffs responded to this motion, which was pending at the time the Settlement was reached.

Similar trial plans were set by the MDL Court with respect to the Louisiana *Amorin* claims, and by Judge Davis with respect to the Virginia *Amorin* claims.[67] In Louisiana, the Parties engaged in fact discovery involving 39 Select Claimants. These Plaintiffs (along with other owners of the subject Affected Properties) submitted themselves for depositions and home inspections, prepared lists of fact witnesses, and were preparing to engage in expert discovery at the time the Settlement

---

[67] *See* Order & Reasons re Trial Plan [Rec. Doc. 22251] (Louisiana Trial Plan); Memorandum Order re Trial Plan, Civil Action No. 11-cv-377 (VAED ECF No. 87) [Rec. Doc. 22253-1].

was reached. In advance of trial, this Court ruled that the former owners' diminished property values are presumptively the same as the cost required to remediate the homes.[68]

Proceedings with respect to the remanded *Brooke* cases were still in their infancy at the time the Settlement was reached. However, in addressing Defendants' motions to dismiss *Brooke* actions on statute of limitations grounds, the MDL Court recognized that class action tolling did not broadly apply, and thus, the viability of many *Brooke* claims would have to be addressed on a case-by-case basis if the Settlement is not approved.[69]

### B.    History of the Settlement Negotiations and Mediation.

These Chinese Drywall proceedings have been pending for over ten years. Settlement Class Counsel are very familiar with the strengths and weaknesses of the Plaintiffs' claims, the risks of continued litigation against foreign Defendants, and the costs and delays associated with pursuing judgments in multiple jurisdictions and the inevitable appeals even if successful.[70] The Parties engaged in arm's-length negotiations over several weeks to reach this Settlement.[71] Under the guidance of mediator John S. Freud,[72] Settlement Class Counsel made a global demand of Taishan, and the Parties exchanged detailed damages calculations and arguments in support of their respective positions, and made counter-offers and responded to the other side's positions.[73] In addition to Settlement Class Counsel, PSC member Pete Albanis of Morgan & Morgan, Plaintiffs'

---

[68] Rec. Doc. 22237, at 12.

[69] *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2019 WL 1057003 (E.D. La. Mar. 6, 2019).

[70] *See* Class Counsel Declaration, at ¶ 6.

[71] *See id.* at ¶ 21.

[72] Judge Cooke ordered the Parties to engage in mediation (FLSD ECF No. 113) at ¶ 3, and Plaintiffs timely filed a Notice of Mediation on the Florida docket. *See* Notice of Mediation (FLSD ECF No. 235); Joint Report No. 110 of Plaintiffs' and Defendants' Liaison Counsel [Rec. Doc. 22224], at 35 (citing Notice of Mediation). The Parties jointly selected Mr. John Freud as the Mediator (FLSD ECF No. 237). *See* Class Counsel Declaration, at ¶ 21; *see also* C.V. of John S. Freud [Rec. Doc. 22305-8].

[73] *See* Class Counsel Declaration, at ¶ 21.

Counsel Emma Schwab of Barrios, Kingsdorf & Casteix, Allison Grant, and Holly Werkema of Baron & Budd participated in and contributed to the negotiations of the Settlement. Following intense, hard-fought in-person negotiations that proceeded over two days, where each side acquiesced to compromises, on May 23, 2019, the Parties agreed to a Settlement Term Sheet on behalf of the Settlement Class that set forth (i) the class definition, (ii) the cash payment amount, (iii) the terms of funding, (iv) the Parties' agreement to jointly recommend to the Court that an Allocation Neutral be appointed to determine, subject to Court approval, the allocation criteria for awards from the Settlement Fund among eligible Class Members based on objective factors including, but not limited to: Product ID; square footage; ownership status; remediation status; and whether the claimant is an *Amorin* Class Member or a *Brooke* Plaintiff, and (v) the non-cash settlement terms.[74] Thereafter, over the next three months, the Parties met in person on multiple occasions and over the phone to negotiate the terms of the final Settlement Agreement.[75] At all times, these negotiations proceeded at arm's length.[76] The Parties did not enter into any side-agreements, and the Settlement contains all terms agreed to by the Parties.[77]

    **C.**    **Material Terms of the Settlement.**

        **1.**    **Settlement Class.**

The proposed Settlement Class includes all *Amorin* Plaintiffs, all *Brooke* Plaintiffs, and absent Class Members, except that the following Plaintiffs are expressly excluded from the Class: (1) 498 Florida *Amorin* Plaintiffs who were offered separate settlements from Taishan (as set forth

---

[74] *See* Class Counsel Declaration, at ¶ 23.

[75] *See id.*

[76] *See id.* at ¶ 24.

[77] *See id.*

on Exhibit 1 to the Settlement Agreement); (2) The Mitchell Company and other commercial builders included in *The Mitchell Co., Inc. v. Knauf Gips KG, et al.*, Civil Action No. 09-4115 (E.D. La.) (remanded to the Northern District of Florida); and (3) Plaintiffs whose Claims were dismissed for failure to complete an SPPF or by motion for voluntary dismissal.[78]

### 2.      Amount of Settlement.

Taishan agreed to pay $248,000,000 in cash to settle the Claims of Settlement Class Members. Taishan has made an initial payment of $24,800,000, which is in the Court Registry.[79] Under the Settlement Agreement, Taishan is obligated to make a second payment of $74,400,000 no later than 120 days following Preliminary Approval, *i.e.*, by December 27, 2019,[80] and a final payment of $148,800,000 no later than 60 days after Final Approval of the Settlement.[81]

### 3.      Purpose of the Settlement.

The purpose of the Settlement is to fairly and adequately resolve all Claims against Taishan and the Additional Released Parties for damages allegedly caused by Covered Chinese Drywall installed in Affected Properties owned by Plaintiff Class Members.[82] "Covered Chinese Drywall" is defined as "All drywall products alleged to be attributable to Taishan and/or the Additional Released Parties, including, but not limited to those products identified in the Taishan Product ID

---

[78] *See* Settlement Agreement [Rec. Doc. 22305-2], at § 1.1.1.

[79] *See* [Rec. Doc. 22330]. Subject to Court approval, a portion of the initial payment may be used to pay the costs of individual mailed Class Notice and other administrative expenses associated with the retention of the Allocation Neutral and the Claims Administrator. Settlement Agreement [Rec. Doc. 22305-2], at §§ 4.1.1, 8.2.1.

[80] *See* Settlement Agreement [Rec. Doc. 22305-2], at § 4.1.2.

[81] *See id.* at § 4.1.3.

[82] *See id.* at § 3.1.

Catalog."[83] The types or "brands" of Chinese Drywall included in the Settlement ("Covered Chinese Drywall") are the following:

> (A) BNBM and Dragon Brand; (B) C&K; (C) Chinese Manufacturer #2 (purple stamp); (D) Crescent City Gypsum; (E) DUN; (F) IMT Gypsum; (G) ProWall; (H) TAIAN TAISHAN and Taihe edge tape; (I) MADE IN CHINA MEET[S] OR EXCEED[S]; (J) various Drywall dimensions, including 4feet[x/*]12feet[x/*]1/2inch; (K) Venture Supply; and (L) White Edge Tape, boards with no markings or boards with no markings other than numbers or letters.[84]

The following drywall products are <u>excluded</u> from the Settlement (*i.e.*, they are not Covered Chinese Drywall): Knauf, Knauf Tianjin, KPT, Bedrock, ProRoc, Panel Rey, IMG, USG, Shamrock Gold, Lafarge, Georgia Pacific, National Gypsum, and any drywall manufactured outside of the People's Republic of China.[85]

### 4.  Releases and Bar Provision.

The released parties are Taishan, BNBM, BNBM Group, CNBM, CNBM Group, and SASAC.[86] As of the Effective Date of the Settlement,[87] each Settlement Class Member (known and unknown) will be deemed to have fully released any and all Released Claims against Taishan and the Additional Released Parties.[88] Further, Class Members who have not opted out will be barred from bringing or continuing suit on any Released Claims against Taishan or the Additional

---

[83] *See id.* at § 1.12.

[84] *Id.* at § 1.12 & Exhibit 2 to the Settlement Agreement; *see also* Rec. Doc. 22152-3.

[85] *See* Settlement Agreement [Rec. Doc. 22305-2], at § 1.1.2 & Exhibit 2 to the Settlement Agreement.

[86] *See id.* at § 1.1.2.

[87] The Effective Date of the Settlement is when the Settlement is Final, which is the date after the time to appeal the Order and Judgment has expired with no appeal having been taken; or if an appeal is sought, the day after the Order and Judgment is either affirmed, or any and all appeals, or motions for reargument or reconsideration are dismissed or denied, and the judgment is no longer subject to further appellate review. *See* Settlement Agreement [Rec. Doc. 22305-2], at § 2.1.

[88] *See id.* at § 5.2.1.

Released Parties.[89] Similarly, as of the Effective Date, Taishan will be deemed to have fully released any and all Released Claims against all Class Members who have not opted out of the Settlement.[90]

The term "Released Claims" is defined broadly to encompass "any and all Claims, including Other Losses, of a Class Member against Taishan or the Additional Released Parties pertaining to Chinese Drywall."[91]

The "Claims" subject to release in the Settlement generally are defined to include:

> any and all claims of any kind and nature whatsoever of a Class Member (a) arising out of, or in any manner related to, Covered Chinese Drywall, the Litigation, or CDW-Related Actions, and/or (b) for any and all losses, damages and/or injuries arising from, or in any manner related to, all and/or any of the claims described in (a) above, including but not limited to, any and all claims that a Class Member or anyone claiming by or through any Class Member has, may have, or may have had, regardless of whether such claim is known or unknown, filed or unfiled, asserted or as yet unasserted, or existing or contingent, whether asserted by petition, complaint, cross-claim, third party complaint, fourth-party complaint, arbitral demand, written demand, or otherwise (or any judgment or order entered on such claims), based upon or alleging any act, conduct, status or obligation of any person or entity (including Taishan and/or any Released Party) and/or any source of liability whatsoever, and regardless of the legal theory or theories of damages involved.[92]

The term "Claim" subject to release more specifically includes, but is not limited to, any claim:

> For damage to real or immovable property and/or personal or movable property, remediation and/or clean-up of property, diminution of property value, stigma, contamination, alternative living expenses, loss of use, loss of enjoyment, economic loss, personal injury, bodily injury (including death), fear, fear of illness

---

[89] *See id.* at § 5.2.2.

[90] *See id.* at § 5.3.1.

[91] *See id.* at § 5.1.

[92] *See id.* at § 1.7.

or disease, fear of developing illness or disease, fright, mental or emotional distress, pain and suffering, loss of earnings, impairment of earning capacity, loss of consortium, loss of support, loss of love and affection, equity and medical monitoring, bystander liability, wrongful death, survival actions, breach of contract, all statutory claims, punitive or exemplary damages, attorneys' fees, attorneys' costs or expenses, moving expenses, or additional rental or mortgage payments[93];

For nuisance, trespass, inconvenience, loss of use or enjoyment, negligence, negligence per se, tort, public or private nuisance, custody of a thing containing a vice or defect, strict liability, liability for ultrahazardous activities or conduct, absolute liability, wanton and reckless misconduct, malicious misconduct, servitude or obligation of vicinage, abuse of right, or any other liability legally asserted or assertable under any federal, state, or local statute, directive or regulation, redhibition, violation of any state or federal home warranty act, products liability act, unfair trade practices or consumer protection law, negligent discharge of a pollutant or corrosive substance, unjust enrichment, breach of express or implied warranty, breach of implied warranty of fitness and merchantability, breach of implied warranty of habitability, negligent misrepresentation, building code violations[94];

For punitive damages, whether statutory or common law[95];

For derivative or vicarious liability arising out of the conduct or fault of others for which Taishan and/or any Released Party may be responsible[96];

For any right legally assertable by the Class or any Class Member now or in the future, whether the claim is personal to each individual, is derivative of a claim now or in the future, or as assignee, successor, survivor, beneficiary, subrogee, or representative of a Class Member[97];

For a past, present, future, known, unknown, foreseen, unforeseen, contingent, nascent, mature claim or a claim arising at law, in equity

---

[93] *See id.* at § 1.7.1.

[94] *See id.* at § 1.7.2.

[95] *See id.* at § 1.7.3.

[96] *See id.* at § 1.7.4.

[97] *See id.* at § 1.7.5.

or otherwise, including but not limited to, claims for survival and wrongful death[98]; and

For all injuries or damages of any type, nature, or character arising from, attributable to, or in any way resulting from Covered Chinese Drywall.[99]

## 5.      Allocation of the Settlement Fund Among Eligible Class Members.

The Court appointed Mr. J. Cal Mayo, Jr. to serve as the Allocation Neutral responsible for developing a fair, reasonable, and adequate Allocation Model to allocate and distribute the Settlement Funds equitably among Eligible Class Members based on Objective Criteria.[100] Under the terms of the Settlement Agreement, there will be only one Allocation Amount per Affected Property, which is intended to provide compensation for remediation damages as well as Other Losses.[101] There will be no payment of Settlement Funds to Class Members for Claims for personal injury or bodily injury, although those Claims will be released.[102] Depending on the circumstances, an Allocation Amount may need to be divided among multiple Eligible Class Members asserting Claims with respect to the same Affected Property, and the court-appointed Claims Administrator BrownGreer shall have sole discretion to determine that division, unless the Allocation Model directs a specific division and distribution of the Allocation Amount applicable to the circumstances.[103] In order to be considered eligible for an Allocation Amount, Class Members

---

[98] *See id.* at § 1.7.6.

[99] *See id.* at § 1.7.7.

[100] *See id.* at § 1.5; *see also* C.V. of J. Cal Mayo, Jr. [Rec. Doc. 22305-7]. Previously, Mr. Mayo served as a Special Master appointed by the Court to resolve Product ID disputes among the Parties [Rec. Docs. 20306 (*SEALED) and 22252].

[101] *See* Settlement Agreement [Rec. Doc. 22305-2], at § 6.2.

[102] *Id.* at § 6.3.

[103] *Id.* at § 6.2.

must provide sufficient proof of indicia of Covered Chinese Drywall in the subject Affected Property.[104]

On August 19, 2019, Mr. Mayo filed his Allocation Model and Allocation Neutral Report on the MDL docket.[105] In the process of developing the Allocation Model, Mr. Mayo conferred jointly and separately with Settlement Class Counsel and counsel for Taishan and the Additional Released Parties, and he also reviewed various court orders and related legal authorities, other relevant documents filed of record in this Litigation, and other written and oral information provided by counsel.[106] After careful consideration, Mr. Mayo determined that the following factors will be used to calculate the Allocation Amounts for each Affected Property: (i) Under Air Square Footage of the Affected Property[107]; (ii) whether the Settlement Class Member is an *Amorin* Plaintiff, a *Brooke* Plaintiff, or an absent Class Member; (iii) proof of Product ID (*i.e.*, which category of Covered Chinese Drywall was installed in the Affected Property); and (iv) whether any prior payments were received by the Class Member for Chinese Drywall claims related to the Affected Property.[108]

Mr. Mayo concluded that the Ownership Status of Class Members (*i.e.*, whether they are current or former owners of an Affected Property) would not be a factor in calculating Allocation

---

[104] *Id*. at § 1.13.

[105] *See* Allocation Model and Allocation Neutral Report ("Allocation Model") [Rec. Doc. 22304-1]. On August 28, 2019, the Allocation Neutral filed a Supplement to his Allocation Model to address a unique situation involving an action pending in Alabama state court. *See* Supplement to Allocation Model and Allocation Neutral Report [Rec. Doc. 22310-1]. *See also* Declaration of J. Cal Mayo, Jr. dated 12/2/2019 (attached hereto as Exhibit "11").

[106] Allocation Model [Rec. Doc. 22304], at 2 & Exhibit 1 [Rec. Doc. 22304-1].

[107] Under Air Square Footage is "the area within the Affected Property that receives ventilation from the property's heating and air systems, not including garages, attics, or basements that are not part of this ventilation system." Settlement Agreement [Rec. Doc. 22305-2], at § 1.32.

[108] Allocation Model [Rec. Doc. 22304-1], at 2-4.

Amounts.[109] In making this decision, the Allocation Neutral was "guided by the decisions of the courts in Louisiana, Virginia, and Florida, [and he] generally assumed the remediation cost and the diminution in value equate, such that any former owner received less consideration for the house at the time of ownership separation."[110] Mr. Mayo recognized that "[o]bviously, various factors could distinguish particular circumstances (*i.e.*, an arm's length sale versus a foreclosure with debt forgiveness). However, due to the expense of a claim-by-claim analysis, [Mr. Mayo decided to] treat former owners and current owners the same for purposes of the allocation model."[111]

Mr. Mayo further determined that the Remediation Status of the Affected Property (*i.e.*, whether it was remediated in whole, in part, or not at all) is not a factor for consideration in the Allocation Model.[112] He explained that "[t]he need to conduct a claim-by-claim analysis for partial remediations and the resulting time and cost played a major role in [his] decision."[113] Likewise, "for efficiency and consistency purposes," the specific location of the Affected Property would not affect the value of the Allocation Amount, despite the fact that during the Litigation, "[t]he RS Means Location Factor provide[d] an adjustment to the national average construction cost based on zip code."[114]

---

[109] *Id.* at 4.

[110] *Id.*

[111] *Id.*

[112] *Id.*

[113] *Id.*

[114] *Id.*

With regard to Other Losses, Mr. Mayo explained that "[i]mplicit in the allocation value for each Unit [*i.e.*, each Affected Property], is a sum paid to resolve claims for Other Losses."[115] However, [d]etermining the particular Other Losses for a Unit and its individual owners would require detailed and cost-prohibitive inquiry and examination. The allocation model is designed for overall fair treatment of the Class Members."[116]

The Allocation Model developed by the Allocation Neutral uses a methodology that assigns relative values to the objective factors determined to be relevant in calculating Allocation Amounts. For example, *Brooke* Plaintiffs are ascribed a 20% value in comparison to *Amorin* Plaintiffs (*i.e.*, the *Brooke* claims are discounted by 80%). As explained by Mr. Mayo,

> For the *Amorin* plaintiffs, the MDL Court has entered a default judgment as to liability and has certified a class, which the courts in Florida and Virginia have acknowledged and adopted. The only step remaining to judicially resolve the *Amorin* claims is a per claim damages determination. In fact, the federal courts in Florida, Virginia, and Louisiana were proceeding with resolution of these claims at the time of settlement. The *Amorin* plaintiffs have the strongest claims.[117]

In contrast,

> The *Brooke* litigation remains in the early stages. The Defendants have not answered, no discovery has occurred, and no court has certified a class. Significant work must occur (taking much time and expense) to resolve these claims, in the face of various defenses, including statutes of limitation defenses. The *Brooke* plaintiffs' claims are worth much less than the *Amorin* plaintiffs' claims.[118]

---

[115] *Id.* at 5.

[116] *Id.*

[117] *Id.* at 2.

[118] *Id.*

Mr. Mayo further discounts the value of the claims of absent Class Members ("New Claims") on the grounds that they "are worth significantly less than the *Amorin* plaintiffs' claims and less than the *Brooke* plaintiffs' claims."[119] He ascribes a value of 5% to the New Claims in comparison to *Amorin* Plaintiffs' claims (in other words, a 95% discount is applied to these claims).

With regard to Product ID, the Allocation Model assigns certain discounts to the value of various categories of Covered Chinese Drywall that Defendants deny manufacturing and/or which were determined by the Special Master in Florida not to be attributable to Taishan. Because BNBM admits it manufactured (A) BNBM and Dragon Board and because Taishan admits it manufactured (E) DUN, (H) TAIAN TAISHAN and Taihe Edge Tape, and (K) Venture Supply, the presence of any of those brands of drywall in an Affected Property will not impose a discount on the value of the Allocation Amount for that property.[120] However, where there is evidence that (D) Crescent City Gypsum, (I) MADE IN CHINA MEET[S] OR EXCEED[S], or (J) various drywall dimensions, including 4feet[x/*]12feet[x/*]1/2inch, was installed in the Affected Property, a 25% discount will be applied since Defendants admit they "manufactured some [but not all] of the drywall" in those categories (*i.e.*, these categories of Covered Chinese Drywall have a value of 75% in comparison to the admitted brands).[121] Further, where the indicia of Product ID involves drywall that Defendants deny manufacturing, such as (B) C&K, (C) Chinese Manufacturer #2 (purple stamp), (F) IMT Gypsum, (G) Prowall, or (L) White Edge Tape, boards with no markings or boards with no markings other than numbers or letters, an 80% discount is applied (*i.e.*, the

---

[119] *Id.*

[120] *Id.* at 3.

[121] *Id.*

Allocation Neutral assigned these brands of drywall a 20% value in comparison to admitted brands).[122] Notably, Special Master Tiffani Lee in Florida ruled against Plaintiffs with regard to (B) C&K, (F) IMT Gypsum, (G) Prowall, and (L) White Edge Tape and "blank boards" during the Litigation, finding insufficient evidence that Taishan manufactured those particular products.[123]

In order to equitably account for various prior payments received by a majority (but not all) of the Class Members for their Chinese Drywall claims, the Allocation Model applies fair discounts (Set-Offs) to the square footage of the Affected Property on the basis that "the [prior] settlement paid for a portion of the remediation, theoretically reducing the square footage for which additional remediation is necessary."[124] To calculate the appropriate discount for prior payments, the Allocation Neutral instructs the Claims Administrator to divide the total amount of prior payments by the value of the 2019 Remediation Formula Damages Calculation for the Affected Property at issue (*i.e.*, the 2019 R.S. Means calculation for the Property), which will result in the percentage by which the Under Air Square Footage for the property should be adjusted.[125]

In situations where multiple parties have filed a claim with respect to the same Affected Property, if the claim is between (1) a condominium owner and condominium association or (2) a non-profit organization and homeowner, the condominium association or non-profit organization is assigned 92.5% of the Allocation Amount and the condominium owner or homeowner is

---

[122] *Id.*

[123] *See* Product ID R&R at 5-7 (Exhibit "5" hereto) and Plaintiffs' Objections to and Appeal from Product ID R&R at 16-20 (Exhibit "6" hereto).

[124] *See* Allocation Model [Rec. Doc. 22304-1], at 4.

[125] *Id.* ("For example, assuming a $20,000 prior payment, a home with 2000 square feet of space, and a $250,000 2019 Remediation Formula Calculation for the Unit, the discount is 20,000/250,000 or 8%. Thus, with a remaining square footage of 92% and a multiple of .92, the Adjusted Square Footage for the Unit, as used in the allocation calculation, is 1840 square feet.").

assigned the remaining 7.5%.[126] If multiple claims for the same property are submitted by property owners, either former and/or current owner(s) (*i.e.*, "Competing Claimants"), the Allocation Model establishes a default rule that the former owner is entitled to 100% of the Allocation Amount absent an assignment or evidence of fraudulent concealment.[127] However, a Competing Claimant was required to submit to the Claims Administrator by October 3, 2019, documentation to support his or her allocation of the Allocation Amount.[128]

Finally, if the Class Member assigned his or her remediation claim to a third party that is not a Settlement Class Member (*e.g.*, a commercial builder that is excluded from the Settlement) ("Assigned Claim"), or the Class Member is a condominium owner or former owner and the condominium association is a Plaintiff that received a separate settlement offer from Taishan and is excluded from the Settlement Class (as set forth on Exhibit 1 to the Settlement Agreement) ("Split Claim"), those Class Members are ascribed 7.5% of the Allocation Amount for the Affected Property at issue.[129]

The application of any discounts to the Under Air Square Footage of Affected Properties in the Settlement (for Product ID, prior payments, and/or Class Member Status), results in an "adjusted square footage" for the properties. After all of the Affected Properties are evaluated to determine whether any discounts should be applied, the aggregate adjusted square footage of all Affected Properties in the Settlement (taking into account the reductions for Assigned Claims and

---

[126] *Id.* at 5.

[127] *Id.* at 6.

[128] *See* Settlement Agreement [Rec. Doc. 22305-2], at § 12.1.2.

[129] Allocation Model [Rec. Doc. 22304-1], at 6.

Split Claims) will be divided into the total funds available for distribution to the Class[130] to determine the amount per square foot that will be awarded to each Eligible Class Member.[131]

In the Court's Preliminary Approval Order, the Court found that the Allocation Neutral appropriately performed his assigned function.[132] During the Class Notice/Opt-Out period, the Allocation Model was available for review by Settlement Class Members on the Settlement Website and on the Court's docket. The Settlement provides that the review, determination and approval of the Allocation Model by the Court shall be final and binding on the Parties and the Class. There shall be no right of appeal of the approval of the Allocation Model to any other court, including the U.S. Court of Appeals for the Fifth Circuit, such right of appeal having been knowingly and intentionally waived by each Settlement Class Member.[133]

### 6. Challenges to Information on the Master Spreadsheet.

In accordance with the Settlement Agreement, on August 29, 2019, Settlement Class Counsel filed on the Court's docket and published on the Chinese Drywall Settlement Website (ChineseDrywallSettlement.com) the Master Spreadsheet of Known Class Member Claims with sufficient proof of indicia of Covered Chinese Drywall in the subject Affected Property.[134] The Master Spreadsheet includes the following information for each Claim: (i) Under Air Square

---

[130] The Settlement provides that the costs for Claims Administration, individual mailed notice, and the services of the Allocation Neutral may be deducted from the Settlement Fund, subject to court approval. In addition, if the Court grants Settlement Class Counsel's motion for incentive awards for the Priority Plaintiffs, Select Claimants, and Settlement Class Representatives, and Class Counsel's motion for an award of 30% in attorneys' fees and 3% in cost reimbursements for Common Benefit Counsel and Individually Retained Attorneys [Rec. Doc. 22363], those amounts will be deducted from the Settlement prior to calculating Allocation Amounts for Class Members.

[131] Allocation Model [Rec. Doc. 22304-1], at 7.

[132] *See* Preliminary Approval Order [Rec. Doc. 22314], at ¶ 6.

[133] *See* Settlement Agreement [Rec. Doc. 22305-2], at § 6.6.

[134] Rec. Doc. 22312-1.

Footage, (ii) Product Identification, (iii) Ownership Status, (iv) Remediation Status, (v) Set-Offs, (vi) Assignments of rights to pursue Claims, and (vii) whether the claimant is an *Amorin* Plaintiff or a *Brooke* Plaintiff.[135] Settlement Class Members were afforded an opportunity to dispute the information on the Master Spreadsheet relating to his or her Claim by providing to the court-appointed Claims Administrator BrownGreer what he or she contends to be the correct information, as well as any supporting evidence or corroborating documentation by October 3, 2019.[136]

BrownGreer received 109 challenges from Class Members disputing information on the Master Spreadsheet with regard to their Claims.[137] BrownGreer evaluated these challenges, and, where appropriate, modified the information on the Master Spreadsheet for the challenges that were granted.[138] On October 31, 2019, BrownGreer published a Revised Master Spreadsheet on the MDL docket[139] and the Chinese Drywall Settlement Website, and followed up by issuing a Challenge Determination Notice to each Class Member who timely submitted a challenge under the Settlement.[140]

If the Settlement is approved, absent Class Members and any other Class Members not listed on the Master Spreadsheet who seek an Allocation Amount must complete the Claim Form approved by the Court under oath and submit supporting proofs of Objective Allocation Criteria

---

[135] *Id.*

[136] Settlement Agreement [Rec. Doc. 22305-2], at § 12.1.2; [Rec. Doc. 22316-1], at 6.

[137] *See* Declaration of Jacob Woody ("Woody Declaration") dated 12/2/2019 (attached as Exhibit "12" hereto), at ¶ 10.

[138] *Id.*

[139] Rec. Doc. 22355-1.

[140] Woody Declaration, at ¶ 11.

to the Claims Administrator[141] no later than the deadline set by the Court for making a claim for an Allocation Amount, which shall be within 30 days of Final Approval.[142]

### 7.   Claims Administration.

Under the Settlement, the Claims Administrator shall distribute Allocation Amounts based on the application of the Allocation Model to the Objective Allocation Criteria in the Master Spreadsheet (as revised based on challenges accepted by BrownGreer) for known Class Members, and to the supporting proofs of Objective Allocation Criteria timely submitted to the Claims Administrator by absent Class Members or any other Class Members not listed on the Master Spreadsheet. No additional evidence, documents or other information shall be considered by the Claims Administrator.[143]

Once the Allocation Amounts are calculated, BrownGreer will provide each Class Member seeking an award of Settlement funds "with an Allocation Amount determination made solely by the Claims Administrator, and a brief summary or explanation of how the Class Member's objective facts and circumstances were applied under the Allocation Model."[144] The Settlement provides Class Members with an opportunity to appeal the determination of their Allocation Amount on the grounds that the Allocation Model was "misapplied to his or her Claim."[145]

---

[141] *See* Claim Form [Rec. Doc. 22305-6]; Preliminary Approval Order [Rec. Doc. 22314], at ¶ 8.

[142] Settlement Agreement [Rec. Doc. 22305-2], at § 12.1.4.

[143] *Id.* at § 12.1.5.

[144] *Id.* at § 12.2.1.

[145] *Id.* at § 12.2.2.

8. **Notice.**

The Class Notice Period commenced upon the entry of the Preliminary Approval Order.[146] To satisfy Federal Rule of Civil Procedure 23 and Due Process, Settlement Class Counsel directed the Claims Administrator to disseminate the long-form notice approved by the Court[147] by first-class mail, postage prepaid, to the last known address of all known Class Members and their counsel of record, if any. The Notice contained sufficient information for each Class Member to make an informed decision by clearly and concisely stating, in plain English, the nature of the action, class definition, claims and defenses, and that any Class Member could object and enter an appearance. The Notice also explained that a Class Member could object to the Settlement, and provided the manner for objecting and the deadline for doing so. Further, the Notice explained how a Class Member could request exclusion, the time and manner for requesting exclusion, and the binding nature of a judgment on Class Members who do not request exclusion.

In addition, BrownGreer was asked by the Court and the Parties to provide *Amorin* Plaintiffs and *Brooke* Plaintiffs identified on the Master Spreadsheet with gross estimates of their potential recovery under the Settlement (before deducting attorneys' fees and costs approved by the Court). BrownGreer applied the Allocation Model[148] to the following information on the Master Spreadsheet for each Affected Property[149]: (a) Under Air Square Footage; (b) Product ID; (c) prior payments received by the Class Member for Chinese Drywall claims made with respect to the subject Affected Property; (d) whether the Class Member assigned any of his or her rights

---

[146] *Id.* at § 8.1.1.

[147] *See* Preliminary Approval Order [Rec. Doc. 22314], at ¶ 11; Long-Form Notice [Rec. Doc. 22316-1].

[148] Rec. Doc. 22304-1.

[149] *See* Master Spreadsheet [Rec. Doc. 22312-1].

to pursue claims with respect to the Affected Property; (e) whether the Class Member is an *Amorin* Plaintiff or a *Brooke* Plaintiff; and (f) whether multiple parties are asserting a claim regarding the Affected Property.[150] To arrive at a gross estimate for each Affected Property on the Master Spreadsheet, BrownGreer took into consideration the estimated costs of class notice and claims administration, and made assumptions regarding the number and value of claims that will be made by absent Class Members.[151] The Claims Administrator then prepared a letter ("Estimate Letter") for each Class Member on the Master Spreadsheet setting forth an estimated gross recovery under the Settlement.[152]

In cases where multiple parties have filed a claim with respect to the same Affected Property, BrownGreer prepared Estimate Letters notifying each of the competing Class Members that they must submit to the Claims Administrator any documents they have to support their claim no later than 35 days from the date of the Preliminary Approval Order.[153] BrownGreer also provided the competing Claimants with the total gross estimated recovery for the Affected Property at issue.[154]

On September 9, 2019, BrownGreer mailed to each known Class Member, *via* First Class Presort Mail, postage prepaid, a long-form notice, and for the *Amorin* Plaintiffs and *Brooke* Plaintiffs on the Master Spreadsheet, BrownGreer included an individualized Estimate Letter in the notice package.[155] For the dissemination of mailed notice, the Claims Administrator used the

---

[150] Woody Declaration, at ¶ 3.

[151] *Id.* at ¶ 4.

[152] *Id.*

[153] *Id.* at ¶ 5.

[154] *Id.*

[155] *Id.* at ¶ 6 & Exhibits "A" & "B" thereto.

mailing addresses for known Class Members identified on the BrownGreer Portal, the mailing addresses set forth in the most recent SPPFs, the mailing addresses provided by individual counsel of record, and/or the mailing addresses identified by BrownGreer through the United States Postal Service National Change of Address Database, to account for any discrepancies in the addresses of Class Members.[156] In total, BrownGreer mailed 3,965 notices to the Class.[157] In addition, BrownGreer sent the long-form notice and/or Estimate Letter *via* email to all counsel of record for Class Members (80 law firms received a copy of the long-form notice).[158] Counsel with clients on the Master Spreadsheet also received a spreadsheet with their clients' names and gross estimate amounts *via* email with the long-form notice.[159]

In accordance with the Preliminary Approval Order, Settlement Class Counsel provided a copy of the Notice to the MDL Court clerk and requested that it be posted at each courthouse and on all court dockets where the CDW-Related Actions are pending, including the MDL Court, the

---

[156] *Id.* at ¶ 6.

[157] *Id.* After BrownGreer mailed the long-form notices and Estimate Letters, 189 notices were returned, and following further investigation to obtain updated addresses from the United States Postal Service National Change of Address Database, 163 notices and, where applicable, the Estimate Letter were resent to Class Members. On several occasions, BrownGreer received updated address information from Class Members through the court-approved Settlement Website, Call Center, and/or through their counsel, in which case the Claims Administrator resent the notice and, where applicable, the Estimate Letter. *Id.* at ¶ 8. In total, BrownGreer transmitted the long-form notice to more than 99% of the known Class Members and to all counsel of record for these Class Members. Despite a concerted effort to individually mail the long-form notice to all known Class Members, approximately 26 returned notices were unable to be delivered, but these notices were intended for Class Members in Florida (17), Louisiana (5), and Mississippi (4) (*see* Woody Declaration, at ¶ 8). The Media Program developed and implemented by Kinsella Media, and approved by the Court, heavily targeted these states. *See* Declaration of Shannon R. Wheatman, Ph.D. on Implementation of Notices and Notice Plan dated 12/2/2019 ("Wheatman Declaration") (attached hereto as Exhibit "13"), at ¶ 6). In any event, counsel of record, if any, for each of these Class Members received the long-form notice (*see* Woody Declaration, at ¶ 8), and the long-form notice was published on the Court's website, the Court's docket, the dockets of each Court where CDW-Related Actions are pending, and the Settlement Website.

[158] Woody Declaration, at ¶ 7.

[159] *Id.*

Florida Courts, the Virginia Courts, and all other Courts listed on Exhibit 6 to the Settlement Agreement.[160] This Court facilitated the posting of Notice by writing a letter to all United States District Courts, the Fifth Circuit Court of Appeals, and to State Judges where CDW-Related Actions are pending,[161] and by posting it on the Court's MDL Chinese Drywall website.

As set forth in the long-form notice, Settlement Class Counsel established a toll-free number for Class Members to call with questions about the Settlement ("Call Center") and set up a Chinese Drywall Settlement website (ChineseDrywallSettlement.com) that provides Class Members an opportunity to review relevant Settlement materials and send written requests or questions to Settlement Class Counsel.[162] The Settlement Agreement, Master Spreadsheet, Notice, and important deadlines are posted on the website. In addition, there are answers to Frequently Asked Questions ("FAQs") for both individual Class Members and Attorneys.[163]

Settlement Class Counsel fulfilled their duty to answer inquiries from Settlement Class Members and potential members of the Settlement Class that were received primarily through the Call Center, by email *via* the Chinese Drywall Settlement website, and from direct inquiries made to the individual offices of Settlement Class Counsel. In total, Settlement Class Counsel responded to more than 270 inquiries made by Class Members and potential Class Members from 24 different states.[164] To respond to those inquiries, Settlement Class Counsel researched the specifics of

---

[160] Class Counsel Declaration, at ¶ 27.

[161] *See, e.g.*, Letter from Judge Fallon, filed on the *Amorin* docket in the U.S.D.C. for the Southern District of Florida (FLSD ECF No. 336) (attached hereto as Exhibit "14").

[162] Class Counsel Declaration, at ¶ 28.

[163] *Id.*

[164] *Id.* at ¶ 29 (calls were made by Class Members and potential Class Members from Alabama, Arkansas, Arizona, California, Colorado, Florida, Georgia, Iowa, Idaho, Illinois, Kansas, Kentucky, Louisiana, Massachusetts, Maryland, Michigan, Mississippi, North Carolina, New York, Pennsylvania, Ohio, South Carolina, Texas, and Virginia).

individual claims, confirmed information on the Master Spreadsheet, updated or corrected objective information, such as mailing addresses and name changes, facilitated communication with the Claims Administrator and/or individual counsel, and generally answered any questions and listened to the concerns that the Class Member or potential Class Member had.[165] In addition, when appropriate, Settlement Class Counsel immediately notified individual counsel of specific concerns or questions raised by Class Members or potential Class Members they represent. Settlement Class Counsel also provided individual counsel with a list of the names of all of their clients, to the best that they could be identified, who made inquiries to Settlement Class Counsel.[166]

Further, Settlement Class Counsel monitored activity on the Chinese Drywall Settlement website. During the Class Notice Period, the website was accessed by over 86,000 users and had in excess of 121,000 page views. Importantly, the website was accessed by individuals from all 50 states plus the District of Columbia, with the top five (5) states being Florida, Georgia, Virginia, Texas, and California. Settlement Class Counsel responded to all inquiries sent by Class Members and others through the Settlement website.[167]

To provide notice to absent Class Members, Taishan retained Kinsella Media LLC ("Kinsella Media") to develop and implement the Media Notice Program approved by the Court.[168] This plan included paid media in states containing at least one Affected Property of *Amorin* or *Brooke* Plaintiffs.[169] The media program heavily targeted the six states that each have over 1% of the Chinese Drywall Claims of *Amorin* and *Brooke* Plaintiffs – Florida, Louisiana, Alabama,

---

[165] *Id.*

[166] *Id.*

[167] *Id.* at ¶ 30. *See also* Analytics of Settlement Website Data (attached hereto as Exhibit "15").

[168] *See generally* Wheatman Declaration.

[169] *Id*. at ¶ 6.

Virginia, Mississippi, and Georgia ("Top 6 States").[170] These six states combined account for over 90% of the known Chinese Drywall products at issue in this Settlement.[171] Accordingly, the media program included one newspaper to cover each media market in Florida and Louisiana, ads on two lifestyle websites in Florida and Louisiana, Hispanic newspapers for each media market in Florida,[172] and a national magazine and national digital media that reached all states affected by this Litigation. Additionally, a heavier concentration of statewide digital media was targeted to the Top 6 States.[173]

The short-form, summary notice ("Publication Notice") approved by the Court was published in English and/or Spanish in the following newspapers and magazines: People, News Press, Gainesville Sun, Florida Times Union, Miami Herald, Orlando Sentinel, Panama City News, Tallahassee Democrat, Tampa Bay Times, Palm Beach Post, Baton Rouge Advocate, Daily Advertiser, American Press, Monroe News Star, New Orleans Advocate, Shreveport Times, Nuevo Ecos, Hola Noticias, El Clarin, El Sentinel, Centro Tampa, El Semanario Acción.[174] Publication in each newspaper and magazine occurred bi-weekly, weekly, or one time depending on each publication's specific schedule for thirty (30) days.[175] The Media Notice Program also included a 30-day digital program comprised of programmatic advertising and social media with

---

[170] Id.

[171] Florida and Louisiana account for 75.8% of the known Chinese Drywall claims in this Settlement and the four other states (Alabama, Virginia, Mississippi, and Georgia) account for an additional 14.7% of the known Chinese Drywall claims in this Settlement. The breakdown by state is: Florida (62.0%), Louisiana (13.8%), Alabama (6.6%), Virginia (5.2%), Mississippi (1.8%), Georgia (1.1%). Id. at ¶ 6.

[172] Hispanic population represents 26.1% of Florida, which is higher than the national average of 18.3%. QuickFacts, Census.gov (2018), https://www.census.gov/quickfacts/fact/table/FL,US/PST045218.

[173] Id. at ¶ 6.

[174] Id. at ¶¶ 16-18.

[175] Id.

focused targeting based on keywords, geography, and topics.[176] Further, the media program included banner ads on digital media, including premium websites (*e.g.,* DIY Network), local news and newspapers sites, including Florida Weekly and Louisiana Life, contextual targeting, Facebook, and Google Display Network (which includes YouTube).[177]

Finally, Settlement Class Counsel issued a press release about the Settlement, which was distributed on PR Newswire's US1 news circuit reaching 5,400 traditional media outlets (television, radio, newspapers, magazines) and relevant trade publications and 4,000 national websites.[178] The release highlighted the Call Center toll-free telephone number and the Settlement website address, so that Class Members could obtain complete information about their rights under the Settlement.[179]

### 9.      Opt-Outs.

Class Members were afforded ninety (90) days following the commencement of the Class Notice Period (*i.e.*, until November 27, 2019) to opt out of the Settlement by submitting to Settlement Class Counsel an original request to opt out signed by the Class Member.[180] A total of 92 opt-out requests were sent to Settlement Class Counsel[181] but not all complied with § 9 of the Settlement Agreement.[182] The total numbers of compliant opt-out requests are as follows:  78 known Class Members (representing only 2% of known Class Members) and 12 apparent absent

---

[176] *Id.* at ¶ 19.

[177] *Id.*

[178] *Id.* at ¶ 20.

[179] Class Counsel Declaration, at ¶ 33; Wheatman Declaration, at ¶ 20.

[180] Settlement Agreement [Rec. Doc. 22305-2], at § 9.1.1; Preliminary Approval Order [Rec. Doc. 22314], at ¶ 16.

[181] All of the opt-out requests have been filed on the Court docket. *See* Notice of Filing of Opt-Outs [Rec. Doc. 22388].

[182] *See* note 8, *supra*.

Class Members.[183] The remainder of the opt-out requests received by Class Counsel were deficient for various reasons. One opt-out request was untimely and otherwise not valid.[184] One opt-out request was submitted by a non-Class Member.[185] And several opt-out requests purported to name multiple claimants, but were signed by only one claimant.[186]

All but 4 of the opt-outs are represented by the same attorney, Jimmy Doyle.[187] The Class Members who did not opt out by the end of the opt-out deadline will be bound by the Settlement if it is approved by the Court, and the relief provided by the Settlement Agreement will be their sole and exclusive remedy for the Claims alleged by the Class.[188]

### 10.   Objections.

Class Members were afforded the right to object to the Settlement, any terms of the Settlement Agreement, and/or the approval process.[189] Out of 3,948 known Class Members, only 22 submitted Objections. As set forth in detail below in Section III.G, none of these Objections has any merit, and they should all be overruled.

---

[183] *See* List of Opt-Out Plaintiffs (Exhibit "2" hereto). Exhibit 2 does not include opt-out requests that did not comply with § 9 of the Settlement Agreement. *See* note 8, *supra*.

[184] *See* note 8, *supra*.

[185] Juana Martinez, who is represented by Jimmy Doyle, submitted an opt-out request [Rec. Doc. 22388-44], however, she is not a Settlement Class Member. Ms. Martinez was previously represented by Parker Waichman, who provided the PSC with authority to voluntarily dismiss her claim. Ms. Martinez's claim was dismissed by Judge Cooke in Florida [*see* Rec. Docs. 21888-1 & 21888-2] and also in the MDL [Rec. Doc. 21894]. Accordingly, Ms. Martinez is not a Class Member, and, therefore, her opt-out request is not valid, and she is not listed as an Opt-Out Plaintiff on Exhibit "2" hereto. Notice has been sent to her counsel of record, Jimmy Doyle, regarding this issue.

[186] *See* Notice of Filing of Opt-Outs [Rec. Docs. 22388-5, 22388-30, 22388-54, 22388-55, and 22388-88]. For those opt-out requests, Class Counsel recognize that the opt-out request is valid as to the party who signed the request, but not as to the non-signing additional party(ies).

[187] *See* Notice of Filing of Opt-Outs [Rec. Doc. 22388].

[188] Settlement Agreement [Rec. Doc. 22305-2], at § 9.1.1.

[189] Settlement Agreement [Rec. Doc. 22305-2], at § 10.1; Preliminary Approval Order [Rec. Doc. 22314], at ¶ 17.

11.     **Attorneys' Fees.**

Settlement Class Counsel filed a Fee Petition that is set for hearing on December 11, 2019.[190] The motion seeks an award of attorneys' fees equal to 30% of the Settlement Fund for Common Benefit Counsel and Individually Retained Attorneys and expense reimbursements totaling 3% of the Settlement Fund.[191] The award of any attorney's fee or reimbursement of any cost, including the allocation between and amongst the Attorneys, shall be determined by the Court; and all Attorneys agree that such determination is not appealable and hereby waive all appeals of any such determination.[192]

12.     **Incentive Awards.**

The Parties recommend to the Court that Incentive Awards of $10,000 be made, subject to Court approval, to the Priority Plaintiff claimants in Florida (one incentive award per property) who are members of the Settlement Class, and to the Select Claimants in Louisiana (one incentive award per property) who are members of the Settlement Class. These awards will appropriately recognize their efforts in participating in additional individualized discovery, including subjecting themselves for a deposition. The Parties further recommend Incentive Awards of $2,500 for the Settlement Class Representatives (to the extent they are not Florida Priority Plaintiff claimants or Louisiana Select Claimants) in recognition of their efforts in serving as named class representatives.

---

[190] Fee Petition [Rec. Doc. 22363]. Notably, no opposition to the Fee Petition was filed by the response deadline, November 27, 2019.

[191] The Settlement Agreement provides that Petitioning Attorneys shall be entitled to petition the MDL Court for attorneys' fees totaling in the aggregate up to 32% of the Settlement Funds, and reimbursement of reasonable expenses, excluding the cost of notice. *See* Settlement Agreement [Rec. Doc. 22305-2], at § 16.1. Settlement Class Counsel have agreed to limit the *combined* fee and expense request to 33% of the Settlement Fund, comprised of 30% in fees and the remaining 3% toward expenses, as set forth above. Fee Petition [Rec. Doc. 22363].

[192] Settlement Agreement [Rec. Doc. 22305-2], at § 16.1.

III.   **ARGUMENT**

A.   **Settlements of Complex Class Actions Are Favored.**

In determining whether to approve the Settlement, the Court should be guided by the strong judicial policy favoring pretrial settlement of claims in complex class action lawsuits. *See, e.g.*, *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 843 (E.D. La. 2007) (Fallon, J.); *Braud v. Transp. Serv. Co. of Ill.*, 2010 WL 3283398, at *3 (E.D. La. Aug. 17, 2010) (Knowles, Mag. J.).[193] The policy favoring settlement exists, in part, because of the complexity and size of class actions:

> Particularly in class action suits, there is an overriding public interest in favor of settlement. . . . It is common knowledge that class action suits have a well deserved reputation as being most complex. The requirement that counsel for the class be experienced attests to the complexity of the class action. . . . In these days of increasing congestion within the federal court system, settlements contribute greatly to the efficient utilization of our scarce judicial resources.

*Cotton*, 559 F.2d at 1331 (citing *United States v. Allegheny-Ludlum Indus., Inc.*, 517 F.2d 826 (5th Cir. 1975); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555 (2d Cir. 1968)); *see also Murphy Oil*, 472 F. Supp. 2d at 843 ("The public interest favoring settlement is especially apparent in the class action context where claims are complex and may involve a large number of parties, which otherwise could lead to years of protracted litigation and sky-rocketing expenses.").

---

[193] "Federal Courts look with great favor upon the voluntary resolution of litigation through settlement . . .. This rule has particular force regarding class action lawsuits." *Air Line Stewards & Stewardesses Ass'n, Local 550 v. Trans World Airlines, Inc.*, 630 F.2d 1164, 1166-67 (7th Cir. 1980) (citation omitted).

This Settlement preference also exists, in part, because of the amount of time and resources complex cases take to resolve, as illustrated by these proceedings, which now have been ongoing for over ten years:

> Complex litigation – like the instant case – can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly evasive. Accordingly, the Federal Rules of Civil Procedure authorize district courts to facilitate settlements in all types of litigation, not just class actions. . . . Although class action settlements require court approval, such approval is committed to the sound discretion of the district court.

*In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493-94 (11th Cir. 1992) (citations omitted) (citing Fed R. Civ. P. 16(a), 16(c), 23(e); *Bennett v. Behring*, 737 F.2d 982, 987 (11th Cir. 1984); *Cotton*, 559 F.2d at 1331)).

### B.    Standards for Approval of Class Settlements.

Determining the fairness of class settlements is left to the sound discretion of the district court. *See In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982) (citing *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 429 (5th Cir. 1977)); *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983); *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir.), *cert. denied*, 459 U.S. 828 (1982); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 218 (5th Cir. 1981), *cert. denied*, 456 U.S. 998 (1982); *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 (5th Cir. 1978), *cert. denied*, 439 U.S. 1115 (1979); *Cotton*, 559 F.2d at 1331; *Young v. Katz*, 447 F.2d 431, 432 (5th Cir. 1971); *see also U.S. Oil & Gas*, 967 F.2d at 493-94. The Fifth Circuit has consistently held that, as a result of their highly-favored status, settlements "'will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits.'" *Miller*, 559 F.2d at 428 (quoting *Pearson v. Ecological Sci. Corp.*, 559 F.2d 171, 176 (5th Cir. 1975)). Moreover, because settlements of class actions are "particularly favored," they

are not to be lightly rejected. *Maher*, 714 F.2d at 455; *see also Cotton*, 559 F.2d at 1331; *Murphy Oil*, 472 F. Supp. 2d at 843.

"[T]he proponents of the [class] settlement bear the burden of demonstrating that the settlement is fair, reasonable, and adequate." *Murphy Oil*, 472 F. Supp. 2d at 844. However, in the absence of contrary evidence, there is a presumption "in favor of the settlement's fairness." *Id.* at 843; *see also United States v. Tex. Educ. Agency*, 679 F.2d 1104, 1108 (5th Cir. 1982); *Camp v. The Progressive Grp.*, 2004 WL 2149079, at *7 (E.D. La. Sept. 23, 2004) ("The court may presume that a proposed settlement is fair and reasonable when it is the result of arm's length negotiations.") (citing 4 Alba Conte & Herbert B. Newberg, 4 *Newberg On Class Actions* § 11.41 (4th ed. 2002)).

In its role as a "fiduciary for absent class members," the district court has a responsibility to "critically examine[] the settlement's terms and implementation." *Murphy Oil*, 472 F. Supp. 2d at 843; *see also Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279-80 (7th Cir. 2002); *Georgevich v. Strauss*, 96 F.R.D. 192, 196 (M.D. Pa. 1982) ("[T]he Court must vigorously act as guardian of the rights of absentee class members."), *vacated on other grounds*, 772 F.2d 1078 (3d Cir. 1985) ("Before a court approves a class action settlement, it must determine that the settlement is fair, adequate, and reasonable"), *cert. denied*, 475 U.S. 1028 (1986); 1 *Newberg On Class Actions* § 1:3 (4th ed.); *Manual for Complex Litig.* § 21.61 (4th ed. 2004). In so doing, the district court must "'exercise the highest degree of vigilance.'" *Murphy Oil*, 472 F. Supp. 2d at 843 (quoting *Reynolds*, 288 F.3d at 279-80).[194] That vigilance is most meaningfully exercised where,

---

[194] In adjudicating the motion for final approval, "[t]he Court must be exacting and thorough in analyzing whether the settlement is in the best interests of class members, and should provide the basis for its conclusions in a reasoned opinion." *Murphy Oil*, 472 F. Supp. 2d at 842 (citing *Manual for Complex Litig.* § 21.61 (4th ed. 2004)); *see also In re Combustion, Inc*., 968 F. Supp. 1116, 1125 (W.D. La. 1997) (stating that a court may not give boilerplate approval to settlement, but must instead analyze the facts and law supporting its conclusion in a memorandum); *In re Wireless Tel. Fed. Cost Recovery Fees Litig*., 396 F.3d 922, 933 (8th Cir.), *cert. denied*, 546 U.S. 822 (2005).

as here, the interests of Class Members are both preserved and protected by a fair and reasonable resolution of their claims.

Yet, it is widely recognized that courts should exercise restraint in examining a proposed settlement for possible revision, and should not "make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes." *Cotton*, 559 F.2d at 1330 (quotation marks omitted). In other words, in weighing the benefits obtained by settlement against the hypothetical benefits that would accrue only upon a litigated recovery on the merits, courts are not expected to balance the scales. *See id.* The very object of a compromise is the certainty of resolution, and thus "to avoid the determination of sharply contested and dubious issues." *Young*, 447 F.2d at 433.

For this reason, the jurisprudence discourages a court from engaging in a hypothetical trial on the merits when considering the propriety of a settlement:

> It cannot be overemphasized that neither the trial court in approving the settlement nor [the appellate court] in reviewing that approval have the right or the duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute.

*Cotton*, 559 F.2d at 1330 (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir.), *cert. denied*, 423 U.S. 864 (1975) and citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 456 (2nd Cir. 1974)); *see also Murphy Oil*, 472 F. Supp. 2d at 843 ("The Court may not resolve contested issues of fact or law, but instead is concerned with the overall fairness, reasonableness, and adequacy of the proposed settlement as compared to the alternative of litigation."). The trial court is not required to decide the merits of the action or substitute a different view of the merits for that of the parties or counsel. *Maher*, 714 F.2d at 455 n.31 ("In other words, in determining the fairness, reasonableness, and adequacy of a proposed settlement, neither the district court nor the

appellate court on review, should reach ultimate conclusions on the issues of fact and law underlying the dispute."); *Tex. Educ. Agency*, 679 F.2d at 1108 (in approving a class settlement "we do not thereby reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute, as we recognize that normally a settlement is a process of compromise in which, in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation, . . . rather than an attempt to precisely delineate legal rights.") (citations and internal quotation marks omitted).

### C.  The Requirements of Rule 23 Have Been Met For Certification of the Class.

In this case, a litigation class involving the *Amorin* Plaintiffs has already been certified by this Court, *see Class FOFCOL*, 2014 WL 4809520, and adopted by both Judge Cooke in Florida and Judge Davis in Virginia on remand. *See* Order, *Amorin v. Taishan Gypsum Co. Ltd*., No. 1:11-cv-22408-MGC (S.D. Fla. Nov. 16, 2018) (FLSD ECF No. 112) [Rec. Doc. 21933-1] (adopting all MDL rulings including certification of the *Amorin* class); *Amorin v. Taishan Gypsum Co. Ltd.*, 2:11-cv-377, 2019 WL 2172707, at *2 (E.D. Va. May 20, 2019) (VAED ECF No. 87) [Rec. Doc. 22253-1] (adopting all pre-remand rulings of the MDL including certification of the *Amorin* class). Given that the *Amorin* class was already certified for litigation purposes, the requirements for certification under Rule 23 are readily met for the proposed Settlement Class.

Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is

superior to other available methods for fairly and efficiently adjudicating the controversy." As determined by *Amchem*, the issue of class management is not relevant for purposes of certifying the Class in the context of a settlement. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Because the preliminarily approved Settlement Class satisfies all the criteria under Rule 23(a) and Rule 23(b)(3), the instant motion should be granted.

### 1.   Numerosity.

The class definition includes over 2,800 Plaintiffs in the *Amorin* Class that filed suit against Taishan and the Additional Released Parties alleging damages sustained as a result of Covered Chinese Drywall that was installed in Plaintiffs' properties. In addition, there are approximately 1,200 Plaintiffs named on one or more *Brooke* Complaints. The Settlement Class consists of the *Amorin* Plaintiffs (with the exception of 498 Plaintiffs who were offered separate settlements by Taishan and Plaintiffs whose claims were dismissed for failure to submit an SPPF or by motion for voluntary dismissal), the *Brooke* Plaintiffs, and absent Class Members. Under these circumstances, the numerosity factor specified in Rule 23(a)(1) is satisfied. *Class FOFCOL*, 2014 WL 4809520, at *11; *see also Turner v. Murphy Oil USA, Inc.*, 234 F.R.D. 597, 604 (E.D. La. 2006) (Fallon, J.) (noting that "the Fifth Circuit has generally set the threshold of 100 to 150 people as satisfying the numerosity requirement").

### 2.   Commonality.

The commonality requirement of Rule 23(a)(2) is easily satisfied in this case. The JPML ordered that the numerous *Chinese Drywall* actions be consolidated in the MDL based on "the commonality of facts in the various cases."[195] Questions surrounding the defectiveness of the Chinese Drywall at issue, the effects of Chinese Drywall on members of the Settlement Class, and

---

[195] *Chinese Drywall,* 626 F. Supp. 2d 1346.

the damages caused thereby, are issues common to all Plaintiffs, satisfying this element of Rule 23(a). *See Califano v. Yamasaki*, 442 U.S. 682, 701 (1979) (Class relief is "peculiarly appropriate" when the "issues involved are common to the class as a whole" and they "turn on questions of law applicable in the same manner to each member of the class."); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) ("[E]ven a single common question will do.") (citations and alterations omitted); *Class FOFCOL*, 2014 WL 4809520, at \*11 ("The factual determination of class-wide property damages is common to the class members, and resolution of this common question will generate common answers apt to drive the resolution of the litigation.").

### 3.   Typicality.

Rule 23(a)(3) requires that the class representatives' claims be typical of the claims of the putative class members. Fed. R. Civ. P. 23(a)(3). "Typicality measures whether a sufficient nexus exists between the claims of the named representative[s] and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003) (internal quotations omitted). A plaintiff's claim is typical of the class members' claims if they "arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984), *cert. denied*, 470 U.S. 1004 (1985). The measure of whether a plaintiff's claims are typical is whether the nature of the plaintiff's claims, judged from both a factual and a legal perspective, are such that in litigating his or her personal claims he or she reasonably can be expected to advance the interests of other members of the class. *See*, *e.g.*, *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156-57 (1982).

Each of the Plaintiffs in the Settlement Class is seeking to recover, from Defendants, remediation damages and/or Other Losses allegedly caused by Covered Chinese Drywall. The Court previously found in *Amorin* that "[t]he property damage claims of the class representatives

48

are typical of, if not identical in nature to, those of the class members. The determination of these damages depends on the same factual predicate as to the manufacturer of the defective product, product identification, the mechanism of damage occurring in Class Members' homes, the need for remediation, the scope of remediation, the square footage costs of accomplishing the remediation, and alternative living expenses during remediation." *Class FOFCOL*, 2014 WL 4809520, at *12. Therefore, the typicality requirement is satisfied.

### 4.   Adequacy of Representation.

Rule 23(a)(4) requires that the named class representatives not possess interests which are antagonistic to the interests of the class. *See Amchem*, 521 U.S. at 625-26 ("[A class] [r]epresentative must be part of the class and possess the same interest and suffer the same injury as the class members.") (internal citation and quotations omitted). That section also mandates that class representatives possess "a sufficient level of knowledge and understanding" to take an active role in the litigation. *Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 482 (5th Cir. 2001) (citing *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982)). Second, the named class representatives' counsel "must be qualified, experienced, and generally able to conduct the litigation." *Chinese Drywall*, 2013 WL 499474, at *8.

In this case, David Griffin, Lillian Eyrich, Michelle Germano, Virginia Tiernan, Debra Williams, and Judd Mendelson were appointed to serve as named Class Representatives on behalf of the Settlement Class.[196] Mr. Griffin is an *Amorin* Plaintiff, who served as a Priority Plaintiff in Florida.[197] He formerly owned an Affected Property at 9801 Cobblestone Creek Drive, Boynton

---

[196] Preliminary Approval Order [Rec. Doc. 22314], at ¶ 4.

[197] *See* Affidavit of David Griffin (attached hereto as Exhibit "16"), at ¶ 6.

Beach, FL, 33472.[198] Ms. Eyrich is an *Amorin* Plaintiff, who is an attorney and served as a Select Claimant in Louisiana.[199] She owns an Affected Property at 130 22nd Street, New Orleans, LA 70124.[200] Ms. Germano is an *Amorin* Plaintiff, who served as the named class representative in the *Germano* action.[201] She formerly owned an Affected Property at 8171 N. View Boulevard, Norfolk, VA 23518.[202] Ms. Tiernan is a *Brooke* Plaintiff, who owns an Affected Property at 4326 Garden Boulevard, Cape Coral, FL 33909.[203] Ms. Williams is a *Brooke* Plaintiff, who owns an Affected Property at 8600 Scottsdale Drive, New Orleans, LA 70128.[204] Mr. Mendelson is a *Brooke* Plaintiff, who owns an Affected Property at 1507 Burrowin Drive, Chesapeake, VA 23321.[205]

Each of the Class Representatives is a member of the Settlement Class. Each has alleged that their Property was damaged by Covered Chinese Drywall.[206] The Class Representatives do not possess any interests antagonistic to the Class. They all have a high degree of knowledge and understanding of the Litigation.[207] They strongly support approval of the Settlement as fair, reasonable, and adequate, and they have urged the Court to grant the instant motion.[208] Moreover,

---

[198] *See id.* at ¶ 2.

[199] *See* Affidavit of Lillian Eyrich (attached hereto as Exhibit "17"), at ¶ 6.

[200] *See id.* at ¶ 2.

[201] *See* Affidavit of Michelle Germano (attached hereto as Exhibit "18"), at ¶ 5.

[202] *See id.* at ¶ 2.

[203] *See* Affidavit of Virginia Tiernan (attached hereto as Exhibit "19"), at ¶¶ 2, 5.

[204] *See* Affidavit of Debra Williams (attached hereto as Exhibit "20"), at ¶¶ 2, 5.

[205] *See* Affidavit of Judd Mendelson (attached hereto as Exhibit "21"), at ¶¶ 2, 5.

[206] *See* Affidavits of David Griffin, Lillian Eyrich, Michelle Germano, Virginia Tiernan, Debra Williams, and Judd Mendelson (Exhibits "16" – "21" hereto).

[207] *Id.*

[208] *Id.*

only 2% of the Class has opted out, reflecting that the overwhelming majority of the Class approves of the Settlement, as the Class Representatives do.

Settlement Class Counsel, individually and collectively, have vast experience in class actions and complex litigation generally, and are well-experienced in addressing the particular facts and circumstances of these decade-old *Chinese Drywall* proceedings specifically.[209] Settlement Class Counsel are comprised of Plaintiffs' Lead and Liaison Counsel in the MDL, members of the PSC, and Interim Lead Counsel in the Florida and Virginia *Amorin* and *Brooke* remand actions. They were lead counsel in the successful bellwether trials that took place early on in the case; they have aggressively prosecuted the cases on remand; they have served as Class Counsel in the Knauf and Virginia class settlements previously approved by this Court; and they have worked tirelessly on this case and funded it for over ten years. Such zealous and continuing representation by highly-qualified counsel has more than satisfied the requirement that the Settlement Class be adequately represented. *See Class FOFCOL*, 2014 WL 4809520, at *12.

### 5.   <u>Common Questions of Law and Fact Predominate.</u>

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "Predominance is established where common answers to common questions are likely to 'drive the resolution of the [instant] litigation.'" *Class FOFCOL*, 2014 WL 4809520, at *14 (quoting *Dukes*, 131 S. Ct. at 2551 ("what matters to class certification is not the raising of common 'questions' – even in droves – but, rather the capacity of a class-wide proceeding to generate common *answers* apt to drive the

---

[209] *See* Class Counsel Declaration; Declaration of Class Counsel Arnold Levin ("Levin Declaration") (attached hereto as Exhibit "22"); Declaration of Class Counsel Stephen J. Herman ("Herman Declaration") (attached hereto as Exhibit "23"); Declaration of Class Counsel Patrick S. Montoya ("Montoya Declaration") (attached hereto as Exhibit "24"); Declaration of Class Counsel Richard J. Serpe ("Serpe Declaration") (attached hereto as Exhibit "25"); *see also* C.V.'s of Settlement Class Counsel [Rec. Doc. 22035-9].

resolution of the litigation.") (emphasis in original)). Here, resolution of the issue of Taishan's liability for Class Members' damages predominates, as it is applicable to all Class Members. *Id.* A class settlement will ensure that Eligible Class Members receive payments for their Claims alleged to be caused by Covered Chinese Drywall.

Plaintiffs satisfy the predominance requirement because liability questions common to all Class Members substantially outweigh any possible issues that are individual to each Settlement Class Member. The salient evidence necessary to establish Plaintiffs' claims is common to both the Class Representatives and all members of the Class – they would all seek to prove entitlement to damages for Covered Chinese Drywall and that Taishan's conduct was wrongful. Furthermore, resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). In evaluating the proposed Settlement, any difficulties regarding management of this Class need not be considered. *Amchem*, 521 U.S. at 620; *see also* 2 William B. Rubenstein, *Newberg on Class Actions* § 4:63 (5th ed. 2018) ("Courts . . . regularly certify settlement classes that might not have been certifiable for trial purposes because of manageability concerns.").

### 6.    The Class Settlement is Superior.

The superiority of proceeding as a Settlement Class is clear. Resolving the claims of all class members in a single proceeding demonstrates the efficiency and benefits of the class procedure. These qualities are plainly superior to binary litigation. *See In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 910 F. Supp. 2d 891, 928-29 (E.D. La. 2012) ("*In re Deepwater Horizon*") ("The Class Structure enables the claims process established by the Settlement to be administered under Court supervision, provides the due process protections of Rule 23 to the class member Claimants, and enables the Court to enforce the

Settlement terms and administrative procedures for the benefit of class members, without necessitating new or individualized litigation."), *aff'd,* 739 F.3d 790 (5th Cir. 2014), *rehearing en banc denied*, 756 F.3d 320 (5th Cir. 2014), *cert. denied*, 135 S. Ct. 734 (2014). Further, the ability to administer the litigation in the context of the Settlement Class is vastly more desirable than confronting an uncertain future of costly litigation and the risks posed by efforts to enforce judgments against a foreign corporation.

### D.  Rule 23(e)(2) and the *Reed* Factors Support Granting Final Approval of the Settlement.

Federal Rule of Civil Procedure 23(e)(2) requires that the district court determine a proposed class settlement is fair, reasonable and adequate prior to granting approval of the settlement. To that end, the United States Court of Appeals for the Fifth Circuit has articulated six factors or "focal facets" that a court should consider when making that determination: (1) the existence of fraud or collusion behind the settlements; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and the absent class members (the "*Reed* Factors"). *See Reed*, 703 F.2d at 172 (adopting six-factor test cited in prior Fifth Circuit decisions including *Parker*, 667 F.2d at 1209; *Corrugated Container*, 643 F.2d at 217; and *Pettway*, 576 F.2d at 1214).

In 2018, Rule 23(e)(2) was amended to specify factors that a court should consider when determining if a proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Specifically, a court should consider whether:

> (A)   the class representatives and class counsel have adequately represented the class;

(B)     the proposal was negotiated at arm's length;

(C)     the relief provided for the class is adequate, taking into account:

      (i)     the costs, risks, and delay of trial and appeal;

      (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

      (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and

      (iv)    any agreement [made in connection with the proposal, which is] required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

Acknowledging that many courts have considered various factors in assessing the fairness and adequacy of proposed class settlements, the Advisory Committee Notes to the 2018 Amendments to Rule 23(e) make clear that: "[t]he goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *See Hays v. Eaton Grp. Attorneys, LLC*, 2019 WL 427331, at *8-9 (M.D. La. Feb. 4, 2019) (analyzing new Rule 23(e)(2) considerations along with *Reed* factors); *see also ODonnell v. Harris Cty.*, 2019 WL 4224040, at *8-9 (S.D. Tex. Sept. 5, 2019) (same).

An analysis of these relevant factors overwhelmingly favors approval of the Settlement before the Court.

1.      **The Class Representatives and Class Counsel Have Adequately
Represented the Class (Rule 23(e)(2)(A)).**

As discussed above, the Class Representatives and Settlement Class Counsel are highly

qualified to adequately represent the interests of the Settlement Class. The Class Representatives

are familiar with the Claims in this Litigation, they have closely followed the proceedings, they

have reviewed the Settlement, and they strongly support its approval as fair, reasonable, and

adequate.[210] The three *Amorin* Class Representatives, in particular, have been intimately involved

in the litigation process for many years. Ms. Germano served as the named class representative in

the *Germano* action filed in the Eastern District of Virginia in 2009 before the MDL was

established. Mr. Griffin and Ms. Eyrich participated in individualized discovery, sat for their

depositions, and prepared for and participated in pretrial proceedings in this Litigation following

the remands.

Further, Settlement Class Counsel aggressively pursued the Litigation on behalf of

Plaintiffs for over ten years. Among other things, they obtained defaults against Taishan and other

Defendants, they conducted several successful bellwether trials, they achieved nine class

settlements with hundreds of other Defendants, they pursued written discovery of Defendants and

third parties that generated millions of pages of documents, they took hundreds of depositions,

they engaged numerous experts, they achieved class certification and a Class Damages Order in

*Amorin*, and they aggressively litigated Claims in the remand courts on behalf of thousands of

Plaintiffs. Plainly, Settlement Class Counsel not only possess the experience with which to conduct

the Litigation and assess any potential global resolution, but having been so intimately involved

with the Litigation for such a long time, they were fully apprised of all the relevant facts necessary

---

[210] *See* Affidavits of Class Representatives (Exhibits "16" – "21" hereto).

to meaningfully and intelligently negotiate a class resolution of Plaintiffs' Claims.[211] *See generally* Adv. Committee Notes, 2018 Amendments to Rule 23(e)(2)(A), (B) (court should consider, in part, "whether counsel negotiating on behalf of the class had an adequate information base"); *see also ODonnell*, 2019 WL 4224040, at *9 (record showed "the class has been ably and diligently represented, in a case filled with legal and factual complexities").

This consideration weighs in favor of finding that the Settlement is fair, reasonable and adequate.

> **2.   The Proposal Was Negotiated at Arm's Length (Rule 23(e)(2)(B)) and There is No Existence of Fraud or Collusion Behind the Settlement (*Reed* Factor 1).**

The Settlement is the product of vigorous arm's-length negotiations between Settlement Class Counsel and Defendants. The Settlement was achieved through court-ordered mediation that was conducted by an experienced mediator.[212] *See generally* Adv. Committee Notes, 2018 Amendments to Rule 23(e)(2)(A), (B) ("[T]he involvement of a neutral or court-affiliated mediator ... may bear on whether [negotiations] were conducted in a manner that would protect and further the class interests"). In late April 2019, the Parties began settlement discussions that involved arm's-length negotiations over several weeks to reach this Settlement.[213] Under the guidance of Mr. Freud, Settlement Class Counsel made a global demand of Taishan, and the Parties exchanged detailed damages calculations and arguments in support of their respective positions, and made

---

[211] *See* Class Counsel Declaration.

[212] *See* Class Counsel Declaration, at ¶¶ 21-24; Rec. Doc. 22305-8; Order Referring to Magistrate Judge (FLSD ECF No. 113), at ¶ 3; Notice of Mediation (FLSD ECF No. 235); Joint Report No. 110 of Plaintiffs' and Defendants' Liaison Counsel [Rec. Doc. 22224], at 35 (citing Notice of Mediation).

[213] Class Counsel Declaration, at ¶ 21.

counter-offers and responded to the other side's positions.[214] In addition to Settlement Class Counsel, other counsel with intimate knowledge of the litigation participated in and contributed to the negotiations of the Settlement.[215] Following these intense, hard-fought, in-person mediation sessions, the Parties agreed to a Settlement Term Sheet on behalf of the Settlement Class.[216] Thereafter, over the next three months, the Parties met in person and over the phone to negotiate the terms of the final Settlement Agreement.[217] Throughout this process, both sides vigorously negotiated their respective positions on all material terms of the Settlement Agreement and the negotiations were non-collusive.[218] At all times, the Parties proceeded at arm's length.[219]

The law recognizes "a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary." *Camp*, 2004 WL 2149079 at *7; *see also Murphy Oil*, 472 F. Supp. 2d at 846 ("[A] presumption exists that settlement negotiations were conducted properly in the absence of collusion if the terms of the proposed settlement are demonstrably fair."). Certainly, there is no evidence of fraud or collusion in this matter. In fact, the lengthy record of this hard-fought and contentious litigation illustrates the "zealous advocacy that all sides deployed." *ODonnell*, 2019 WL 4224040, at *9.

Courts have held that where "the amount of the [attorneys'] fee is left entirely to the Court's discretion," as is the case here, "the possibility of collusion among counsel" is "exponentially decrease[d]." *Murphy Oil*, 472 F. Supp. 2d at 845. As this Court explained in *Murphy Oil*,

---

[214] *Id.*

[215] *Id.* at ¶ 22.

[216] *Id.* at ¶ 23.

[217] *Id.*

[218] *Id.* at ¶ 24.

[219] *Id.*

"[b]ecause the parties have not agreed to an amount or even a range of attorneys' fees, and have placed the matter entirely into the Court's hands for determination, there is no threat of the issue explicitly tainting the fairness of settlement bargaining." *Id.* (citing Bruce L. Hay, *The Theory of Fee Regulation in Class Action Settlements*, 46 AM. U. L. REV. 1429, 1432 (1997) ("[P]roper regulation of the counsel's fee is both necessary, and within limits, sufficient to mediate the tension between the goals of facilitating settlement and protecting the class against collusion.")).

For these reasons, this consideration weighs in favor of finding that the Settlement is fair, reasonable and adequate.

### 3.   The Relief Provided is Adequate, Taking Into Account the Costs, Risks, and Delays of Trial and Appeals (Rule 23(e)(2)(C)(i)).

A key concern in assessing the substantive terms of the Settlement "relate[s] to the cost and risk involved in pursuing a litigated outcome." Adv. Committee Notes, 2018 Amendments to Rule 23(e)(2)(C), (D). In making that assessment, "courts may need to forecast the likely range of classwide recoveries and the likelihood of obtaining such results." Factors two through six of the *Reed* Factors address these considerations.

Settlement Class Counsel respectfully submit that all of the factors that illuminate the significant costs, risks and likely delays of continued litigation and appeals support final approval of the Settlement. As the court in *In re Shell Oil Refinery*, 155 F.R.D. 552, 560 (E.D. La. 1993) pointed out:

> The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush.

*Id.* (quoting *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974) (internal quotations and alterations omitted)) (emphasis added).

**a.**     **The Complexity, Expense, and Likely Duration of the Litigation Weigh in Favor of Approval of the Settlement (Reed Factor 2).**

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *See* 4 *Newberg on Class Actions* § 11.50 (4th ed.). "In assessing this factor, courts consider the uncertainties of litigation and compare the settlement to potential future relief." *In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. 112, 147 (E.D. La. 2013) ("*In re Deepwater Horizon*") (citing *Shell Oil Refinery*, 155 F.R.D. at 563).

Timing and delay are significant here because there is no question about the complexity and expense of this Litigation. For more than ten years, the PSC has engaged in arduous efforts to establish jurisdiction over Taishan and the Additional Released Parties.[220] The PSC conducted extensive discovery of Defendants and third parties and concluded several successful bellwether trials in the MDL; they worked with experts on significantly complex scientific issues; and they continued to fight for Plaintiffs in the remand courts. There can be no doubt that the PSC expended significant resources vigorously prosecuting the Claims of thousands of Plaintiffs against Taishan and the Additional Released Parties. And considerably more time would be needed to adjudicate more than 1,200 *Brooke* claims, as there are no defaults in that action, no class has been certified, and no discovery had been undertaken.

---

[220] Although jurisdiction over Taishan has been firmly established, the status of jurisdiction over BNBM, BNBM Group, and CNBM is uncertain since there is an appeal of this Court's Jurisdiction Order currently in the Fifth Circuit. That appeal has been fully briefed, and oral argument has been scheduled for the week of February 3, 2020. *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, No. 18-30742 (5th Cir. Nov. 22, 2019), Doc. No. 00515211235.

The proposed Settlement provides much-needed cash payments now to Eligible Class Members and avoids the costs and risks of continued litigation, especially considering the substantial risks surrounding unresolved key issues such as Product ID and the validity of statutes of limitations defenses, where early rulings highlighted the potential for a significant percentage of the Class to end up with no recovery at all. Even for those who may recover, they likely would wait years for any recovery while Defendants exhaust their appeals.

For these reasons, this factor weighs heavily in favor of granting final approval to the Settlement.

> **b.      The Stage of the Proceedings and the Amount of Discovery Completed Support Approval of the Settlement (*Reed* Factor 3).**

"This factor 'asks whether the parties have obtained sufficient information to evaluate the merits of the competing positions.'" *See In re Deepwater Horizon*, 295 F.R.D. at 148 (quoting *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 620 (E.D. La. 2006)). "'Thus, the question is not whether the parties have completed a particular amount of discovery, but whether the parties have obtained sufficient information about the strengths and weaknesses of their respective cases to make a reasoned judgment about the desirability of settling the case on the terms proposed . . . .'" *Id.* (quoting *Educ. Testing*, 447 F. Supp. 2d at 620-21); *see also DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 292 (W.D. Tex. 2007).

The *Chinese Drywall* Litigation as a whole has proceeded for more than ten years with substantial discovery, expert analysis, bellwether trials, and other settlements that have provided insight into the strengths and potential vulnerabilities that Plaintiffs face. Indeed, Class Counsel took hundreds of depositions of employees of Defendants and third parties; coordinated the submission of thousands of profile forms detailing facts relevant to each Affected Property;

developed experts on issues of corrosion, metallurgy, electrical engineering, power electronics, electrical machinery, and failure analysis to demonstrate the devastating effects of having Chinese Drywall installed in Plaintiffs' homes, the proper scope of remediation, proper inspection protocols, Chinese law, and damages for lost equity and the economic impact of Chinese Drywall on real estate. Considering all of this information that was in the hands of Settlement Class Counsel, it is clear that the "settlement was achieved in the full context of the adversarial process." *Murphy Oil*, 472 F. Supp. 2d at 846.

This factor supports final approval of the Settlement.

> ### c.   *Plaintiffs' Probability of Success on the Merits (Reed Factor 4).*

In the absence of fraud or collusion behind the class settlement, "the probability of the plaintiffs' success on the merits has been held by the Fifth Circuit as the most important *Reed* factor." *Murphy Oil*, 472 F. Supp. 2d at 848 (citing *Parker*, 667 F.2d at 1209); *DeHoyos*, 240 F.R.D. at 287. In evaluating Plaintiffs' "likelihood of success, the Court must compare the terms of the settlement with the rewards the class would have been likely to receive following a successful trial." *DeHoyos*, 240 F.R.D. at 287 (citing *Reed*, 703 F.2d at 172). "At the same time, a district court 'must not try the case in the settlement hearings because the very purpose of the compromise is to avoid the delay and expense of such a trial.'" *See Slipchenko v. Brunel Energy, Inc.*, 2015 WL 338358, at *15 (S.D. Tex. Jan. 23, 2015) (quoting *Reed*, 703 F.2d at 172 (quotations and alterations omitted)); *see also Murphy Oil*, 472 F. Supp. 2d at 848 (citing *Reed*, 703 F.2d at 172).

While Class Counsel believe strongly in the Class Members' Claims, the outcome of the Litigation and ability to collect on any judgment is not guaranteed. At a minimum, Defendants would appeal any judgment and that would cause additional delays and expense. As noted above,

there is a pending appeal in the Fifth Circuit regarding jurisdiction over BNBM, BNBM Group, and CNBM.[221] The Florida Special Master's Report and Recommendation on Product ID essentially "dismissed" more than half of the Florida *Amorin* claims. Plaintiffs timely filed an Objection to this Report, which was pending before Judge Cooke at the time the Settlement was reached, but the outcome was uncertain. And, this Court's statute of limitations ruling makes the viability of the *Brooke* Plaintiffs' claims uncertain. For these and other reasons, there were questions as to the enforceability of any award, the size of the award, and the parties to whom the award would apply. These factors weigh in favor of settlement approval because "[c]ollectibility of a judgment is also a factor bearing on the reasonableness of a settlement in relation to the defendants' ability to withstand a greater one." 4 *Newberg on Class Actions* § 11.50 (4th ed.).

Finally, the potential duration of litigating Class Member claims to conclusion is a significant consideration. Even if members of the Class ultimately were to prevail on all issues at trial, the recovery, if collected, would be delayed for years from now, and greatly "diminished by the costs of litigation." *See In re Deepwater Horizon*, 295 F.R.D. at 149.

This factor weighs in favor of approving the Settlement.

### d.      The Range of Possible Recovery (*Reed* Factor 5).

"This factor requires the district court to 'establish the range of possible damages that could be recovered at trial and, then, by evaluating the likelihood of prevailing at trial and other relevant factors, determine whether the settlement is pegged at a point in the range that is fair to the plaintiff settlors.'" *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1067 (S.D. Tex. 2012) (quoting *Maher*, 714 F.2d at 460) (internal quotation marks and citations omitted). "The court's consideration of this factor 'can take into account the challenges

---

[221] *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, No. 18-30742 (5th Cir.).

to recovery at trial that could preclude the class from collecting altogether, or from only obtaining a small amount.'" *ODonnell*, 2019 WL 4224040, at *12 (quoting *Klein v. O'Neal, Inc*., 705 F. Supp. 2d 632, 656 (N.D. Tex. 2010)). The question is not whether the Plaintiffs have achieved the maximum result but whether the settlement "'fall[s] within a reasonable range of recovery, given the likelihood of the plaintiffs' success on the merits.'" *Id*. (internal quotation marks omitted).

The potential recovery in this Litigation ranges from nothing for many Plaintiffs, should, for instance, the Special Master's Report and Recommendation on Product ID be upheld or should Defendants win on their statute of limitations defense against the *Brooke* Plaintiffs, to anywhere up to the maximum damages allowed under the Remediation Damages Formula, plus Other Losses, minus additional expenses incurred. The $248,000,000 cash settlement amount is an excellent result when considering the potential risks and certain delays of continued litigation and appeals.

In addition, settling these Claims means that Eligible Class Members will finally receive much needed payments after nearly a decade of litigation based on the square footage of their homes and the other factors identified by the Allocation Neutral.

This factor weighs in favor of approving the Settlement.

### e.    The Opinion of Class Counsel Supports Approval of Settlement (*Reed Factor 6*).

The Fifth Circuit has recognized that courts must rely to a large degree on the judgment of competent counsel, terming such counsel the "linchpin" of an adequate settlement. *Reed*, 703 F.2d at 175. Thus, if experienced counsel determine that a settlement is in the best interests of the class, "the attorney's views must be accorded great weight." *Pettway*, 576 F.2d at 1216; 4 *Newberg on Class Actions* § 11.47 (4th ed.) ("[T]he recommendation of counsel is entitled to great weight following arm's-length settlement negotiations").

In this case, Settlement Class Counsel were appointed by the Court to represent the interests of the Plaintiffs based on their high level of competency and many years of experience litigating complex class action and multidistrict cases. These attorneys possess adequate information concerning the strengths and weaknesses of the case after extensive discovery, bellwether trials and significant briefing on relevant motions, and they strongly support the Settlement.[222]

The fact that Class Counsel support the Settlement weighs in favor of its approval.

       **4.**       **The Relief Provided is Adequate, Taking Into Account the Effectiveness of the Proposed Method of Distributing Relief to the Class (Rule 23(e)(2)(C)(ii)).**

The Parties agreed to jointly recommend to the Court that an Allocation Neutral be appointed to determine, subject to Court approval, the allocation criteria and method for equitably distributing awards from the Settlement Fund among Eligible Class Members based on objective factors including, but not limited to: Product ID; square footage; ownership status; remediation status; and whether the claimant is an *Amorin* Plaintiff, *Brooke* Plaintiff or absent Class Member. The Parties selected – and the Court appointed – Mr. Cal Mayo to serve as the Allocation Neutral responsible for developing a fair, reasonable, and adequate Allocation Model.

This Court found that the Allocation Neutral "appropriately performed his assigned function."[223] The Allocation Model uses a methodology that assigns relative values to the objective factors of square footage, Class Member status, Product ID, and prior payments received for Chinese Drywall Claims, in order to calculate Allocation Amounts. Once all of the Affected Properties are evaluated to determine whether any discounts should be applied to the Under Air

---

[222] Class Counsel Declaration, at ¶¶ 1, 6, 34; Levin Declaration (Exhibit "22" hereto), at ¶ 6; Herman Declaration (Exhibit "23" hereto), at ¶ 8; Montoya Declaration (Exhibit "24" hereto), at ¶ 6; Serpe Declaration (Exhibit "25" hereto), at ¶ 7.

[223] Preliminary Approval Order [Rec. Doc. 22314], at ¶ 6.

Square Footage of the Property (for Product ID, prior payments, or Class Member Status), resulting in an adjusted square footage for the Property, the aggregate adjusted square footage of all Affected Properties in the Settlement will be divided into the total funds available for distribution to the Class to determine the amount per square foot that will be awarded.[224]

The fact that the Allocation Neutral developed an Allocation Model, which allocates and distributes the Settlement Amount equitably among Eligible Class Members based on Objective Criteria, supports approval of the Settlement. This is consistent with the approach utilized and approved by the Fifth Circuit in the *Deepwater Horizon* Litigation. *See In re Deepwater Horizon*, 910 F. Supp. 2d at 918-20.[225]

### 5. The Relief Provided is Adequate, Taking into Account the Terms of Any Proposed Award of Attorneys' Fees, Including Timing of Payment (Rule 23(e)(2)(C)(iii)).

Settlement Class Counsel filed a Fee Petition seeking an award of attorneys' fees equal to 30% of the Settlement Fund for Common Benefit Counsel and Individually Retained Attorneys, and expense reimbursements totaling 3% of the Settlement Fund.[226] The Parties did not negotiate a particular fee amount. The award of any attorney's fee or reimbursement of any cost, including the allocation between and amongst the Attorneys, shall be determined by the Court; and all

---

[224] Allocation Model [Rec. Doc. 22304-1], at 7.

[225] This approach was again utilized and explicitly approved by the District Court in connection with the Halliburton/Transocean Class Settlement (*see* Order & Reasons, *In re Deepwater Horizon*, MDL No. 2179, Rec. Doc. 22252, at 20-21 (E.D. La. Feb. 15, 2017)), and at least implicitly approved by the Fifth Circuit, when certain aspects of the neutral's Distribution Model were challenged (*see In re Deepwater Horizon*, 934 F.3d 434 (5th Cir. 2019)).

[226] The Settlement Agreement provides that Petitioning Attorneys shall be entitled to petition the MDL Court for attorneys' fees totaling in the aggregate up to 32% of the Settlement Funds, and reimbursement of reasonable expenses, excluding the cost of notice. *See* Settlement Agreement [Rec. Doc. 22305-2], at § 16.1. Settlement Class Counsel have agreed to limit the *combined* fee and expense request to 33% of the Settlement Fund, comprised of 30% in fees and the remaining 3% toward expenses, as set forth above. Fee Petition [Rec. Doc. 22363].

Attorneys agree that such determination is not appealable and hereby waive all appeals of any such determination.[227]

As indicated in Section III(D)(2), *infra*, the Parties did not negotiate any set attorneys' fee amount or even any range of fees. Rather, the attorneys' fee issue is left entirely to the Court's discretion. This Court will thus determine an appropriate fee award and the timing of any payment of fees.

### 6.   The Relief Provided is Adequate, Taking Into Account Any Agreement Required to be Identified Under Rule 23(e)(3) (Rule 23(e)(2)(C)(iv)).

Under Rule 23(e)(3), the parties to a proposed class settlement "must file a statement identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). The only agreement entered into by the Parties here is the Settlement Agreement. The Parties did not enter into any side agreements, and the Settlement contains all terms agreed to by the Parties.[228] Therefore, there are no additional agreements for the Court to consider.

### 7.   The Settlement Treats Class Members Equitably Relative to Each Other (Rule 23(e)(2)(D)).

The question raised by this consideration is "whether the apportionment of relief among class members takes appropriate account of difference among their claims . . . ." Adv. Committee Notes, 2018 Amendments to Rule 23(e)(2)(C), (D). As discussed at length above, the Parties retained an Allocation Neutral to develop a method of allocating the Settlement Fund among all members of the Settlement Class taking into consideration the relative strengths and weaknesses of Plaintiffs' Claims. The Allocation Neutral considered all objective factors and determined which factors are relevant to a fair, reasonable, and adequate Allocation Model. Taking the

---

[227] Settlement Agreement [Rec. Doc. 22305-2], at § 16.1.

[228] Class Counsel Declaration, at ¶ 24.

numerous relevant, objective considerations into account, the Allocation Model apportions the relief in an equitable fashion among differently situated members of the Settlement Class.

**E.** **Notice to the Class Complied with this Court's Preliminary Approval Order and Due Process.**

In conjunction with preliminary approval of the Settlement, this Court ordered that Notice be disseminated to the Class. The Parties complied with the Court's order. Notice was disseminated *via* first-class mail, postage prepaid to the last known address of all known Class Members and their counsel of record, if any.[229] In addition, Settlement Class Counsel requested that a copy of the Notice be posted at each courthouse and on all court dockets where CDW-Related Actions are pending.[230] The Notice was posted on this Court's MDL Chinese Drywall website and on the MDL docket, the Southern District of Florida's website and dockets, and the Eastern District of Virginia Court's website and docket, as well as the Fifth Circuit website. The Notice was also posted on the Settlement website established by Settlement Class Counsel (ChineseDrywallSettlement.com).[231] Kinsella Media implemented the Publication and Media Notice Program as ordered by the Court.[232]

The Notices that have been disseminated and published comply with Due Process and support approval of the Settlement. *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173 (1974); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *see also In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1097 (5th Cir. 1977).

---

[229] *See* Woody Declaration, at ¶¶ 6-7; Class Counsel Declaration, at ¶ 26.

[230] *See* Class Counsel Declaration, at ¶ 27.

[231] *See id.* at ¶ 28.

[232] *See* Wheatman Declaration.

**F.      The CAFA Notice Requirement Has Been Satisfied by Taishan.**

The Class Action Fairness Act, 28 U.S.C § 1711 et seq. ("CAFA"), requires settling defendants to serve notice of a proposed settlement on the "appropriate" state and federal officials after a proposed class action settlement is filed with the court. 28 U.S.C. § 1715(b). Taishan, in conjunction with the Additional Released Parties, has satisfied this CAFA notice requirement.[233]

**G.      The Overwhelming Majority of the Class Supports the Settlement, and the Minimal Objections that Were Submitted Are Without Merit.**

An overwhelming majority of the Class (more than 97%) supports the proposed Settlement and have chosen to participate, which speaks volumes about the fairness, reasonableness, and adequacy of the Settlement. At the time the Settlement was reached, there were 3,948 known Class Members in this Litigation, which has been pending for more than ten years. Only 22 Class Members (approximately ½ of 1% of the Class) submitted Objections.[234] Attorney Jimmy Doyle, who is not a Class Member, also submitted a purported objection "on behalf of all Plaintiffs affected by the terms contained in the proposed Taishan Class Settlement,"[235] and 4 other non-Class Members with no standing to object (*i.e.*, persons expressly excluded from the Class

---

[233] *See* Declaration of Christina Hull Eikhoff Regarding Notice of Proposed Settlement Pursuant to 28 U.S.C. § 1715, dated 12/4/2019 [Rec. Doc. 22387-1].

[234] *See* Notice of Filing of Objections [Rec. Doc. 22389]. Three Objections submitted by Class Members represented by Jimmy Doyle are not signed by the Class Member, and include Mr. Doyle's electronic signature. *See* Objection of Dominesha Clay ("Clay Objection") [Rec. Doc. 22379-4]; Objection of Gary and Ina Helmick ("Helmick Objection" [Rec. Doc. 22379-2]; Objection of Stephen and Bonita Hemming [Rec. Doc. 22379-3]. Class Counsel had received an Objection from Kevin and Amy Gray, but it was later withdrawn during the Class Notice Period, and the Grays support the Settlement. Also, two Class Members submitted a "statement" or a "letter" expressing dissatisfaction with the amount of money they expect to receive from the Settlement (*see* Statement of Tina Ramsay [Rec. Doc. 22328]; Letter of Keith Morgan [Rec. Doc. 22336-1]), but neither of these Class Members submitted a formal Objection to the Settlement.

[235] *See* Objection of Jimmy Doyle ("Doyle Objection") [Rec. Docs. 22378 and 22389-27].

definition or Plaintiffs who excluded themselves from the Class) also submitted purported objections.[236]

The Objections focus principally on: (i) the particular individual recoveries allocated to certain Class Members based on Objective Criteria; and (ii) the fact there will be less than 100% recovery for all Claims. But those factors are present in any class settlement, which by its nature, seeks to compromise claims on an aggregate basis. The recoveries obtained for all Class Members are fair, reasonable and adequate, under the specific circumstances presented here. None of the Objections or purported objections presents a reasonable justification for delaying or denying final approval of the Settlement, and there is no reason (legal or otherwise) to impede the prompt distribution of much-needed Settlement Funds to Eligible Class Members, who have waited more than a decade to receive payments they deserve.

These Objections do not raise the types of concerns that have undermined other class settlements. None of the Objections raises any serious question as to the integrity, loyalty, or adequacy of the PSC or Class Counsel. No Objection raises a Due Process concern. No one has challenged the certification process and no one has articulated any credible objection to Class Notice. Likewise, there has been no credible allegation – and no evidence whatsoever – of any collusion or defect in the settlement process. Moreover, there has been no suggestion – nor could there be – that continued litigation against Taishan and the Additional Released Parties – all foreign Chinese companies – would be preferable to the Settlement before the Court, which is supported by almost all Class Members. At a minimum, continued prosecution of decade-old claims would

---

[236] *See* Purported Objection of Michael Guerriero ("Guerriero Objection") [Rec. Doc. 22389-24]; Purported Objection of Mary Escudie ("Escudie Objection") [Rec. Doc. 22389-23]; Purported Objection of Pamela Rigsby and Irene Page ("Rigsby Objection") [Rec. Docs. 22379-5 and 22389-25]; Purported Objection of Patricia Gottlieb ("Patricia Gottlieb") [Rec. Doc. 22389-26].

significantly delay recovery for Plaintiffs and would invite numerous appeals regardless of the result. Continued litigation provides no guarantee of any relief to the thousands of Chinese Drywall claimants who have chosen to participate in the Settlement. Further, without this Settlement, Plaintiffs would face difficulties in collecting on any judgments. For these reasons, all Objections and purported objections should be overruled.

1.    **The Settlement Provides Eligible Class Members with Immediate Cash Benefits that Are Fair and Adequate Under the Circumstances.**

The Settlement resolves a hard-fought and lengthy dispute that was likely to continue on a difficult road for some time. Over more than ten years, foreign Defendants challenged jurisdiction at every step along the way.[237] Moreover, Taishan and the Additional Released Parties have asserted a panoply of defenses to liability and damages (all of which would create appellate issues), including: statutes of limitations in *Brooke*; class certification in *Amorin*; aggregate damages calculations (remediation formula damages); defaults against BNBM, BNBM Group, and CNBM in all cases (and defectiveness of BNBM products absent default status); Product ID attribution in a majority of the actions; sufficiency of indicia of Product ID in most cases; the rights of former owners to collect remediation damages; the impact of "partial remediation"; the quantum of remediation damages in all cases; responsibility for Plaintiffs' Other Losses; the standing of condominium associations and non-profit organizations like Habitat for Humanity to bring actions against Defendants, etc. Without question, regardless of the outcome of any trials in Florida or elsewhere, the Parties would certainly appeal the judgments or verdicts, which would cause further delays in recovery and require the expenditure of additional sums. Further, even if Plaintiffs were

---

[237] Indeed, the jurisdictional appeal of BNBM, BNBM Group, and CNBM has been fully briefed and will be heard in the Fifth Circuit during the week of February 3, 2020. *See* note 220, *supra*.

successful, there would be significant challenges to collecting on any judgment or verdict. In that daunting context, the Parties have reasonably entered into a compromise of their many disputes.

The argument of some Objectors that the estimated Allocation Amounts will not satisfy 100% of their losses provides no basis to challenge the Settlement.[238] None of the Objectors challenge the overall fairness or adequacy of the Settlement, which will provide $248 million in cash benefits to Class Members.[239] Instead, these Class Members complain, for example, that the Allocation Amount may be inadequate to completely remediate their Affected Property,[240] or compensate for certain damages such as loss of use and enjoyment,[241] repair costs to an HVAC system,[242] or alternative living or relocation costs.[243] One Objector challenges Plaintiffs' Allocation Amount specifically because it is less than her award from the GBI settlement that was

---

[238] *See* Clay Objection [Rec. Doc. 22379-4]; Objection of Frederick Yorsch ("Yorsch Objection") [Rec. Doc. 22389-11], at page 2 of 13; Objection of Theodore and Cynthia Tarver ("Tarver Objection") [Rec. Doc. 22389-13], at pages 3-4 of 22; Objection of Robert Bishop ("Bishop Objection") [Rec. Doc. 22389-15], at pages 1-2; Objection of John Prestridge ("Prestridge Objection") [Rec. Doc. 22389-16], at pages 3-4 of 22; Objection of Matthew Harper ("Harper Objection") [Rec. Doc. 22389-17], at pages 3-4 of 21; Objection of Kent and Lindsey Archer ("Archer Objection") [Rec. Doc. 22389-18], at pages 3-5 of 22; Objection of Robert Brasher ("Brasher Objection") [Rec. Doc. 22389-20], at pages 3-5 of 22; Objection of Chris Cummins ("Cummins Objection") [Rec. Doc. 22389-14], at pages 3-4 of 22; Objection of Timothy and Sebrina Hall ("Hall Objection") [Rec. Doc. 22389-19], at pages 3-5 of 22; Objection of Robert and Debbie Hayes ("Hayes Objection") [Rec. Doc. 22389-21], at page 3 of 13; and Objection of James T. Zimmerman ("Zimmerman Objection") [Rec. Doc. 22389-22], at page 2 of 3.

[239] Subject to Court approval, certain fees and costs will be deducted from the Settlement Fund. Settlement Agreement [Rec. Doc. 22305-2], at §§ 4.1.1, 8.2.1, 16.1, 16.2.

[240] *See* Objection of Alisa Roundtree ("Roundtree Objection") [Rec. Doc. 22389-1], at page 3 of 21; Objection of Russell Moody ("Moody Objection") [Rec. Doc. 22389-10], at page 20 of 185; Objection of Dailyn Martinez ("Martinez Objection") [Rec. Doc. 22389-5], at pages 3-4 of 15; Hayes Objection [Rec. Doc. 22389-21], at page 3 of 13; Zimmerman Objection [Rec. Doc. 22389-22], at page 2 of 3.

[241] *See* Roundtree Objection [Rec. Doc. 22389-1], at page 3 of 21.

[242] *See* Tarver Objection [Rec. Doc. 22389-13], at page 4 of 22; Harper Objection [Rec. Doc. 22389-17], at page 5 of 21; Archer Objection [Rec. Doc. 22389-18], at page 5 of 22; Brasher Objection [Rec. Doc. 22389-20], at page 5 of 22.

[243] *See* Objection of Penny Alexander ("Alexander Objection") [Rec. Doc. 22389-2], at page 3 of 17; Harper Objection [Rec. Doc. 22389-17], at page 4 of 21.

reduced pro-rata.[244] One Objection suggests that attorneys' fees should not be deducted from Plaintiffs' awards under the Settlement.[245] And, several Objectors complain that the Settlement does not compensate for personal or bodily injuries.[246]

While such particularized complaints might motivate an individual to opt out, they do not provide a basis for undoing what is in the best interest of the other 97 percent of the Class. *See In re Deepwater Horizon*, 910 F. Supp. 2d at 938 ("For those few objectors unhappy with the Settlement, their remedy was simple: opt out.  The 'court will not dismantle this settlement for the sake of one class member's unique demands, particularly when the class member . . . had the right (and the means) to opt out and pursue its individual claims without disturbing the settlement for the rest of the class.'"). Courts have repeatedly recognized, no settlement ever provides 100% relief to Plaintiffs. *See Salinas v. Roadway Express, Inc.*, 802 F.2d 787, 790 (5th Cir. 1986) (recognizing that no settlement can "satisfy every class member's desires" and affirming lower court's approval of consent decree, despite objections from "thirty-four percent of the known class members"); *DeHoyos*, 240 F.R.D. at 275 ("[N]o settlement can attain perfection precluding objections."). After all, every settlement entails some compromise and a class settlement of this complexity needs only to meet the fair, reasonable and adequate standard for the class as a whole, not for any one unique class member.

Indeed, the fundamental and inherent quality of any settlement is the notion of "compromise." *In re Deepwater Horizon*, 910 F. Supp. 2d at 941 ("Settlements are compromises, and the fact that some class members wish BP had paid more compensation is no reason to reject

---

[244] *See* Objection of Lori Staton [Rec. Doc. 22389-3], at pages 2-3 of 17.

[245] *See* Objection of Kenneth Randall and Alicia Doherty ("Doherty Objection") [Rec. Doc. 22379-1], at 2-3.

[246] Harper Objection [Rec. Doc. 22389-17], at page 5 of 21; Tarver [Rec. Doc. 22389-13], at page 4 of 22; Clay [Rec. Doc. 22379-4].

the Settlement."); *see also Cotton*, 559 F.2d at 1330 ("[C]ompromise is the essence of a settlement"); *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1325 (5th Cir. 1981) ("A just result is often no more than an arbitrary point between competing notions of reasonableness."); *Bennett*, 737 F.2d at 986 ("[O]ur judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement."). What this means is that not everyone's needs will be completely met – each side must give and take. There is no requirement that Class Counsel "obtain the largest conceivable recovery for the class." *Klein*, 705 F. Supp. 2d at 649. Rather, "to be worthy of approval," a settlement "must simply be fair and adequate considering all the relevant circumstances." *Id.* Still, there is no serious question here that Class Counsel worked hard for many years to attempt to obtain the maximum possible total recovery for the class.

Strong judicial policy favors pretrial settlement of complex class action lawsuits. *See*, *e.g.*, *Smith v. Crystian*, 91 Fed. Appx. 952, 955 (5th Cir. 2004); *Maher*, 714 F.2d at 455; *Cotton*, 559 F.2d at 1331; *Murphy Oil*, 472 F. Supp. 2d at 843; *Braud*, 2010 WL 3283398, at *3; 4 *Newberg on Class Actions* § 11.41 (4th ed.). In this case, the Class Settlement was achieved through extensive, hard-fought, arm's-length negotiations among highly-experienced, competent and well-informed counsel. Settlement Class Counsel were guided by their desire to obtain the best result they could for the thousands of Plaintiffs awaiting relief for their losses caused by Chinese Drywall. The fact that an extremely small percentage of the Class (approximately ½ of 1%) objected to the Settlement on grounds that do not attack the overall fairness of the Settlement, is no reason to deny or delay final approval. *In re Deepwater Horizon*, 295 F.R.D. at 152 ("Where a few individuals complain about this or that term of a settlement, their objections serve only to delay and frustrate the interests of the majority of class members in receiving settlement benefits

as expeditiously as possible.").

Moreover, the fact that Class Members will not be made whole is likewise an insufficient basis for defeating settlement approval. *See Educ. Testing*, 447 F. Supp. 2d at 626 (overruling objections containing "wildly optimistic suggestions of upper-end recoveries that, given the significant legal hurdles ahead, were at the bottom end of the probability scale."); *Fla. Trailer & Equip. Co. v. Deal*, 284 F.2d 567, 573 (5th Cir. 1960) (Class Counsel need only establish that "it is prudent to eliminate the risks of litigation to achieve specific certainty, though admittedly it might be considerably less (or more) than were the case fought to the bitter end."); *Cotton*, 559 F.2d at 1334 (upholding class settlement as "proper and constructive" and holding that "[n]either side received all which it desired. Such is the nature of a compromise."); *Raines v. Florida*, 987 F. Supp. 1416, 1419 (N.D. Fla. 1997) ("That these claims are lost in the settlement is insufficient reason to find the settlement to be unfair. Settlement is a process of compromise."); *Murphy Oil*, 472 F. Supp. 2d at 873 & n.5 (approving settlement that released all personal injury claims, including past and future medical expenses); *In re Deepwater Horizon*, 295 F.R.D. at 158 ("It is well established that parties can settle claims without providing compensation for every alleged injury.") (citing *Maher*, 714 F.2d at 438 and *Berardinelli v. Gen. Am. Life Ins. Co.*, 357 F.3d 800, 805 (8th Cir. 2004)).

A handful of complaints about not receiving 100% satisfaction is not a reason to deny reasonable recovery to the thousands of Class Members who have accepted the Settlement after a decade of litigation and are deserving of final settlement approval and prompt payment of much-needed funds.

> ## 2.   The Allocation Model Developed by the Allocation Neutral Treats Class Members Equitably and Is Fair and Reasonable.

Objections about the distribution of the Settlement Funds is also not a reason to upend this

Settlement. The Court should reject the challenges to the methodology developed by the independent Allocation Neutral for allocating available Settlement Funds among Eligible Class Members, as set forth in the Allocation Model. Some Objectors contend, for example, that the discounts for certain Product ID buckets is unreasonable and/or unacceptable,[247] and the discount for *Brooke* Plaintiffs is too steep.[248] At least one Objector disputes the offset for payments received under prior Chinese Drywall settlements.[249] Another Objector summarily complains about the division of his Allocation Amount with a Competing Claimant on the basis that he is entitled to 100% of the property's Allocation Amount.[250]

    First – and contrary to the implication of those Objections – there is no one, single, "correct" way to internally allocate and distribute the available settlement proceeds among Eligible Class Members. There are, rather, a panoply of potential distribution models, each of which could

---

[247] *See* Roundtree Objection [Rec. Doc. 22389-1], at pages 4-5 of 21; Doherty Objection [Rec. Doc. 22379-1], at 1-2; Moody Objection [Rec. Doc. 22389-10], at pages 3-11 of 185. Mr. Moody objects on 10 different grounds. Although Class Counsel believe most of Mr. Moody's complaints emanate from his dispute with respect to the specific Product ID discount for his property (80% for ProWall), his objections are ambiguous, vague, and in some cases unintelligible, and thus waived. *See Murphy Oil*, 472 F. Supp. 2d at 853 (objection "must be sufficiently clear and unambiguous for court consideration, or otherwise the party will be deemed to have waived their objection.").

[248] *See* Roundtree Objection [Rec. Doc. 22389-1], at page 4 of 21; Objection of Charles Caulkins ("Caulkins Objection") [Rec. Doc. 22389-4], at pages 3-4 of 15; Helmick Objection [Rec. Doc. 22379-2]; Hemming Objection [Rec. Doc. 22379-3]; Cummins Objection [Rec. Doc. 22389-14], at pages 4-5 of 22; Bishop Objection [Rec. Doc. 22389-15], at pages 4-5 of 22; Archer Objection [Rec. Doc. 22389-18], at pages 4-5 of 22; Hall Objection [Rec. Doc. 22389-19], at pages 4-5 of 22; Brasher Objection [Rec. Doc. 22389-20], at pages 4-5 of 22.

[249] *See* Doherty Objection [Rec. Doc. 22379-1], at 2.

[250] *See* Objection of Van Foster for Good Ole Boyz, LLC ("Foster Objection") [Rec. Doc. 22389-12], at pages 3-4 of 18. Under the terms of the Settlement Agreement, there "will be only one Allocation Amount per Affected Property." Settlement Agreement [Rec. Doc. 22305-2], at § 6.2. Therefore, in cases where there are competing claims with respect to the same Affected Property, Class Members were required to "submit to the Claims Administrator documentation to support the allocation of the Allocation Amount for the property within 35 days of the Preliminary Approval Order," *id.* at § 12.1.2, and they were so advised in their Estimate Letter provided by BrownGreer, *see* Woody Declaration, at ¶ 5 & Exhibit B thereto. Mr. Foster failed to submit any documentation to the Claims Administrator, as required, to support his Allocation Amount, yet now contends he is entitled to the entirety of the settlement proceeds for his Affected Property. For this reason, Mr. Foster's Objection should be denied.

be reasonable, equitable, and fair.

Secondly, it is in the common and collective interest of the Settlement Class as a whole to develop and utilize an Allocation Model, as achieved by the Allocation Neutral, that can be implemented and administered in a relatively cost-effective, simple, fair, and efficient manner to conserve administrative expenses and precious resources, and thereby maximize the total and collective distribution of benefits to the Class as a whole.

Specifically, the Court should reject attempts to attack the lines drawn by the Allocation Neutral among Class Members based on their status as an *Amorin* Plaintiff, a *Brooke* Plaintiff, or a New (absent) Class Member, the strength of their Product ID evidence, and the associated values that were assigned. Of course, class actions, and all legal mechanisms and procedures, depend upon line-drawing, deadlines, and other practical and/or legal limitations as to which all interested parties are on notice. Complex case management depends upon line-drawing, as do ascertainable classes, and fair class action settlements.

The legal importance and necessity of reasonably drawn categories are illustrated in other recent class settlements, such as *Deepwater Horizon*[251] and *Murphy Oil*, 234 F.R.D. 597. The necessity and efficacy of categorizing classes into discrete groups (without the designation of formal sub-classes) has also been acknowledged and approved. *See, e.g.*, *Veal v. Crown Auto Dealerships, Inc.*, 2007 WL 2700969, at *1 (M.D. Fla. Sept. 13, 2007) (complex class divided into three groups based on circumstances of purchase transactions, without designation of subclasses).

Here, the reasonableness of the line-drawing in this particular Settlement emerges from the entry of defaults in *Amorin*, lengthy and intensive discovery and litigation process, by the ongoing verification and assessment of claims on the Master Spreadsheet, the exhaustive Product ID

---

[251] *In re Deepwater Horizon*, 910 F.Supp.2d 891.

proceedings before the Special Master in Florida, the lack of default entries in *Brooke*, and the review of all relevant and available documents and materials by a knowledgeable and disinterested Neutral appointed by the Court.

A virtue and value of the Settlement is that it does not arbitrarily or automatically assign a set damages figure that is the same for each class member (*e.g.*, it is not a pro rata allocation from a delimited fund) or ignore differences in the strength of proof, potentially viable defenses, and/or the degree of demonstrable damage. Virtually every class settlement is subject to an argument that some class members should have fared better vis-à-vis other class members. But the test is not whether the settlement is perfect in the estimation of each and every class member – a test no settlement could pass. Rather, the test is whether the allocations are "reasonable." *See, e.g.*, *Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*, 733 F. Supp. 2d 997, 1011 (E.D. Wis. 2010); *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 350 (E.D.N.Y. 2010); *In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235, 252 (D.N.J. 2000); *Newby v. Enron Corp.*, 2008 WL 4178151, at *5 (S.D. Tex. Sept. 8, 2008); *Thacker v. Chesapeake Appalachia, LLC*, 695 F. Supp. 2d 521, 533 (E.D. Ky. 2010).

It would be both "unfair" and "unreasonable" to compensate everyone within the Settlement Class exactly the same. And, it is both reasonable and fair that Class Members with more difficult or less valuable cases would generally be provided with less favorable relief. The Allocation Neutral took all of this into consideration and made distinctions that are "rationally related to the relative strengths and merits of similarly situated claims." *Deepwater Horizon II*, 739 F.3d at 814.

In the few cases at or near the edges, if a plaintiff feels that the settlement is inadequate, Rule 23 gives that person the right to opt out and continue to litigate to try to achieve a better

result. *See, e.g.*, *In re Deepwater Horizon*, 910 F. Supp. 2d at 938 (holding that for "objectors unhappy with the Settlement, their remedy was simple: opt out"); *Charron v. Pinnacle Grp. NY LLC*, 2012 WL 2053530, at *28 (S.D.N.Y. June 6, 2012) ("Class Members who wished to pursue [certain] claims and who preferred to go for every last dollar, had ample opportunity to opt out of the Class").

Essentially, the Objectors want the Court to reject the Class Settlement because particular settlement valuation calculations will be made for the Settlement Class Members. But the Fifth Circuit and other courts have repeatedly rejected that argument in the class certification and settlement approval context. For example, in the settlement affirmed in *In re Dell Inc*., 2010 WL 2371834, at *3 (W.D. Tex. June 11, 2010), *aff'd*, *appeal dismissed sub nom. Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632 (5th Cir. 2012), *cert. denied*, 568 U.S. 931 (2012), the objection that the settlement would "essentially require a mini-trial to determine whether each potential class member was damaged" was rejected, as the fact that claims may require individualized analysis is not fatal to commonality, and does not preclude approval. And the Eleventh Circuit has observed that "numerous courts have recognized that the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate." *Allapattah Services v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003); *accord Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1026 (9th Cir. 2011); *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 273 (3d Cir. 2009) (upholding district court's determination that settlement was fair, reasonable and adequate, where plan of allocation was "carefully devised to ensure a fair distribution of the settlement fund to the various types of claimants."); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1146 (8th Cir. 1999) ("a settlement which contains class members who may recover different amounts is acceptable"); *In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235, 252 (D.N.J.

2000) ("[A]a settlement which contains class members who may recover different amounts is acceptable."), *aff'd sub nom. In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001).

In addition, the identification of objective, merits-based criteria – and the publication of the Allocation Model, the Master Spreadsheet, and the revised Master Spreadsheet, and the provision of individual Estimates to each known Class Member on the Master Spreadsheet – easily distinguishes this case from *In re Katrina Canal Breaches*,[252] where the proposed settlement sought to simply put off the difficult question of equitable distribution until post-approval, by a special master, without providing the Class Members (or the Court) with advance clarity as to how fairness would be achieved. *See Deepwater Horizon II*, 739 F.3d at 814.

Moreover, this Class Settlement Allocation Model was developed similar to the Seafood Program Distribution Model in the BP Economic and Property Damages Settlement,[253] as well as the Allocation between the Old Class and the New Class, and the New Class internal Distribution Model in connection with the Halliburton and Transocean Settlement[254] – both of which were approved by the U.S. Fifth Circuit. As in those settlements, the Allocation Model here is fair and reasonable to the Class as a whole. It is both fair and reasonable that Class Members with more

---

[252] *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 194 (5th Cir. 2010) (holding that district court improperly approved a class settlement that sought simply to "punt[ ] the difficult question of equitable distribution from the court to the special master, without providing any more clarity as to how fairness will be achieved").

[253] *See In re Deepwater Horizon*, 910 F. Supp. 2d at 918-20.

[254] Order & Reasons, *In re Deepwater Horizon*, MDL No. 2179, Rec. Doc. 22252, at 20-21 (E.D. La. Feb. 15, 2017) ("[T]the proposed New Class consists exclusively of individuals and businesses that have already suffered loss and have potential standing to claim punitive damages. The New Class settlement compensates class members for punitive damages through detailed, objective distribution criteria. . . . All class members are protected by a specific, detailed, and objective framework that was developed and promulgated publicly by the Claims Administrator. The differences within the framework are rationally related to the relative strengths and merits of similarly situated claims"), *aff'd, In re Deepwater Horizon*, 934 F.3d 434 (affirming Distribution Model developed by Court-appointed Neutral under Halliburton/Transocean Class Settlements).

difficult and/or less valuable cases would generally be provided with less favorable relief. Indeed, it would be both "unfair" and "unreasonable" to compensate everyone within the Settlement Class exactly the same. The choice by over 97% of the Class Members to accept the Allocation Model, after receiving individualized estimates of their gross recoveries, strongly supports this Settlement as fair and reasonable in all of the following allocation criteria.

### a.    Product Identification Discounts[255]

In developing the Allocation Model, Mr. Mayo reviewed various court orders and related legal authorities, as well as numerous other materials as set forth in Exhibit 1 to the Allocation Model.[256] A significant, watershed ruling in this Litigation is the Florida Special Master Product ID Report and Recommendation.[257] In accordance with this Court's orders and Judge Cooke's Florida *Amorin* Trial Plan Order, Defendants were permitted to challenge each category (or "Bucket") of Chinese Drywall that Plaintiffs attributed to Taishan and/or BNBM. Defendants admitted to manufacturing drywall in Buckets (A) BNBM or Dragon Brand; (E) DUN; (H) TAIAN TAISHAN and Taihe edge tape; and (K) Venture Supply. They admitted to manufacturing some, but not all, of the marking variations in Buckets (D) Crescent City Gypsum; (I) MADE IN CHINA MEET[S] OR EXCEED[S]; and (J) "Drywall" with dimensions, including 4feet[x/*]12feet[x/*]1/2inch. Further, Defendants denied manufacturing drywall in Buckets (B) C&K; (C) Chinese Manufacturer #2 (purple stamp); (F) IMT Gypsum; (G) ProWall; and (L) White Edge Tape, boards with no markings or boards with no markings other than numbers or letters.[258]

---

[255] *See* Roundtree Objection [Rec. Doc. 22389-1], at pages 4-5 of 21; Moody Objection [Rec. Doc. 22389-10].

[256] *See* Mayo Declaration (Exhibit "11" hereto); Allocation Model [Rec. Doc. 22304-1], at 2 & Exhibit 1 to the Allocation Model.

[257] Product ID R&R.

[258] Rec. Doc. 22152-12.

The Parties engaged in Product ID discovery and presented multiple briefs with evidentiary support and then several days of oral argument to Special Master Tiffani Lee. Despite Class Counsel's zealous advocacy in support of Plaintiffs' Product ID contentions, the Special Master concluded there was insufficient evidence that Defendants manufactured the products they denied manufacturing, except for one marking for which Plaintiffs had direct evidence it was manufactured by Taishan.[259] Plaintiffs' Objections to the Special Master's Product ID R&R were pending but unresolved at the time the Settlement was reached. If the Special Master's ruling had been upheld by Judge Cooke, more than half of the Florida *Amorin* Plaintiffs (and likely similarly situated *Amorin* Plaintiffs in other jurisdictions and similarly situated *Brooke* Plaintiffs) would have recovered nothing. These vigorously contested Product ID battles would have continued in other remand Courts, and could have led to even further motion practice, discovery, trials, and appeals.

Under these circumstances, it cannot be said that the Allocation Neutral's discounts for Product ID are unreasonable. On the contrary, the Allocation Model fairly, reasonably, and equitably distributes the Settlement Fund among Class Members according to the strength of their Product ID proof.

### b.    *Brooke Discount*[260]

Significant differences between the *Amorin* Plaintiffs' situation and the posture of the *Brooke* actions justify the differential treatment of those two groups. First, the *Brooke* Complaints

---

[259] *See* Product ID R&R, at 5-7 and Plaintiffs' Objections to and Appeal from Product ID R&R, at 16-20.

[260] *See* Roundtree Objection [Rec. Doc. 22389-1], at page 4 of 21; *See* Caulkins Objection [Rec. Doc. 22389-4], at pages 3-4 of 15; Helmick Objection [Rec. Doc. 22379-2]; Hemming Objection [Rec. Doc. 22379-3]; Cummins Objection [Rec. Doc. 22389-14], at pages 4-5 of 22; Bishop Objection [Rec. Doc. 22389-15], at pages 4-5 of 22; Archer Objection [Rec. Doc. 22389-18], at pages 4-5 of 22; Hall Objection [Rec. Doc. 22389-19], at pages 4-5 of 22; Brasher Objection [Rec. Doc. 22389-20], at pages 4-5 of 22.

were not filed until September 2015, *after* Taishan returned to the Litigation and BNBM, BNBM

Group, and CNBM entered their appearances in the MDL. There are no defaults in *Brooke*, there

have not been any responsive pleadings filed, and a class has not been certified. Further, BNBM

moved to dismiss the *Brooke* Complaints (and CNBM filed a joinder), and this Court granted that

motion, in part, by dismissing certain causes of action and ruling on BNBM's statute of limitations

defense that most claimants cannot rely on cross-jurisdictional tolling to save their Claims. All

other issues in the *Brooke* actions are yet to be litigated, including individual determinations

regarding application of the respective statutes of limitations and statutes of repose.

In other words, the *Brooke* actions have significant countervailing considerations such as

the uncertainty of the legal viability of these claims and the early stages of the litigation. The

Allocation Neutral took these factors into consideration in arriving at the discount assigned to the

*Brooke* Plaintiffs' claims. None of the Objections as to the *Brooke* discount have any merit as they

do not challenge the overall fairness or adequacy of the Settlement.

### 3. Class Notice Satisfied Due Process.

One Objector (*Amorin* Plaintiff Russell Moody) suggests on behalf of all absent Class

Members that there are "serious doubts" that media outreach was sufficient in this case, but he

does not challenge the breadth of the notice program or the substance of the Class Notice.[261] His

statement raises the issue, but provides no evidence or support, and, for this reason alone, is without

merit. *See DeHoyos*, 240 F.R.D. at 293 ("General objections without factual or legal substantiation

do not carry weight."). And on the substance, the notice program crafted by media experts at

Kinsella Media (specializing in class notice issues and processes) was implemented in accordance

---

[261] Moody Objection [Rec. Doc. 22389-10], at page 11 of 185 ("There are serious doubts that the Settlement
Agreement's terms and conditions for media outreach, as defined on pages 24 and 25 have been met.").

with the Preliminary Approval Order, and it satisfies Rule 23 and Due Process.[262] Therefore, this Objection should be denied.

### 4.   The Objectors Have Failed to Meet the Heavy Burden of Demonstrating that the Settlement Is Unreasonable.

Although objections are certainly permitted in class action settlements, it is not easy for those objections to succeed in preventing a fair, reasonable and adequate class settlement. Special protections are afforded to "class members whose interests may be compromised in the settlement process[,] . . . includ[ing] notice . . . and an opportunity to voice objections to the settlement." *Pettway*, 576 F.2d at 1169; *Cotton*, 559 F.2d at 1331. Rule 23(e) grants any Class Member who has not opted out of a class settlement the opportunity to object provided he or she "compl[ies] with procedural requirements stipulated in the settlement agreement, such as filing a written statement of objection with the court in advance of the hearing and giving notice of intent to appear at the fairness hearing." *Murphy Oil*, 472 F. Supp. 2d at 853. The objection "must be sufficiently clear and unambiguous for court consideration, or otherwise the party will be deemed to have waived their objection." *Id.*; *see also In re Educ. Testing Serv. Praxis Principles of Learning & Teaching Grades 7-12 Litig.*, 555 F. Supp. 2d 661, 671 (E.D. La. 2007), *aff'd sub nom, Kochensky v. Educ. Testing Servs. Inc.*, 278 Fed. Appx. 400 (5th Cir. 2008) (untimely objections filed after the expiration of the objection deadline not considered).

Thereafter, it is the responsibility of the court, as a fiduciary to the class, to carefully examine all objections to a class settlement in conjunction with its assessment of the fairness and adequacy of the settlement. *Pettway*, 576 F.2d at 1219; *Corrugated Container*, 643 F.2d at 217-18; *Murphy Oil*, 472 F. Supp. 2d at 853 ("[C]ourts must independently examine all objections to

---

[262] *See* Wheatman Declaration, at ¶ 6; Preliminary Approval Order [Rec. Doc. 22314].

83

determine if they have merit and whether they raise questions regarding the fairness of [the] settlement."). All of the Objections here must confront the legal headwind that "[o]nce the court has given preliminary approval, an agreement is presumptively reasonable, and an individual who objects has a heavy burden of demonstrating that the settlement is unreasonable." *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 138-39 (W.D. Ky. 1992) (emphasis added); *DeHoyos*, 240 F.R.D. at 293. Therefore, generalized objections that do not have any factual or legal substantiation "do not carry weight." *DeHoyos*, 240 F.R.D. at 293; *In re Deepwater Horizon*, 910 F. Supp. 2d at 963-64 ("Certain objections are either so idiosyncratic, incomprehensible, or mislabeled that they do not warrant detailed consideration."); 4 *Newberg On Class Actions* § 11:58 (4th ed.); *see also* 7B Fed. Prac. & Proc. § 1797.1 (3d ed.) (providing that in class action settlement disputes "[o]nly clearly presented objections . . . will be considered").

At the same time, even substantive objections do not preclude approval of a class settlement. *See Ayers v. Thompson*, 358 F.3d 356, 368-73 (5th Cir. 2004) ("That several class members desire broader relief . . . does not prevent judicial approval of this settlement agreement, which promises substantial relief to the class."); *In re Deepwater Horizon*, 295 F.R.D. at 152 ("Objections that seek to renegotiate terms of the settlement based on individual preferences are unhelpful and improper."); *Murphy Oil*, 472 F. Supp. 2d at 853. Moreover, once the settlement is determined to be fair, reasonable, and adequate, "the Court is not authorized to insist upon changes that, in its judgment, might lead to a superior settlement." *In re Deepwater Horizon*, 910 F. Supp. 2d at 944.

Courts have consistently held that relatively few "objections and opt-outs in comparison to the large size of the class indicate overwhelming support among the Class Members and weigh in favor of approval" of the settlement as fair, reasonable, and adequate. *See In re Lenovo Adware*

*Litig.*, 2019 WL 1791420, at *7 (N.D. Cal. Apr. 24, 2019); *Giroux v. Essex Prop. Tr., Inc.*, 2019 WL 2106587, at *4-5 (N.D. Cal. May 14, 2019) ("The Court finds that the absence of objections and very small number of opt-outs indicate overwhelming support among the Class Members and weigh in favor of approval."); *In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094, 1103 (D. Kan. 2018) ("The fact that the [650,000] class members have reacted so overwhelmingly in favor of the settlement [17 opt-outs and 9 objections] further supports a finding that the settlement is fair and reasonable and adequate."); *Educ. Testing*, 447 F. Supp. 2d at 626 ("Although the Court is careful not to infer too much from a lack of objectors, that the class is made up of a relatively sophisticated group whose claims arise out of a professional examination suggests that the lack of objections is an indicium of support and not of apathy."); *Murphy Oil*, 472 F. Supp. 2d at 853; *Corrugated Container*, 643 F.2d at 217-18; *DeHoyos*, 240 F.R.D. at 293 ("minimal level of opposition from absent class members weighs in favor of approving the settlement"); *Cotton*, 559 F.2d at 1333 (approving settlement over objections of counsel purporting to represent almost 50% of class); *Klein*, 705 F. Supp. 2d at 661 ("[A]pproval can be given even if a significant portion of the class objects.").

In this case, the Settlement Agreement required Objectors to submit their Objection in writing to Class Counsel, setting forth all of the reasons therefor, and a statement whether the Class Member intends to appear at the Fairness Hearing, either with or without counsel.[263] Objectors

---

[263] Settlement Agreement [Rec. Doc. 22305-2], at §§ 10.1.1, 10.1.2, 10.1.6. Class Members Dailyn Martinez and Russell Moody have expressed an intention to appear at the Fairness Hearing without counsel. *See* Martinez Objection [Rec. Doc. 22389-5], at page 4 of 15; Moody Objection [Rec. Doc. 22389-10], at page 3 of 185. Class Member Frederick Yorsch intends to appear with his counsel Andrew Lemmon. *See* Yorsch Objection [Rec. Doc. 22389-11], at page 2 of 13. Class Member James Zimmerman intends to appear and "testify if necessary." He does not indicate whether his counsel Jimmy Doyle will appear as well. Zimmerman Objection [Rec. Doc. 22389-22], at page 2 of 3. The nine Objectors represented by David Horsley of Arthur Edge, PC (Van Foster for Good Ole Boyz, LLC; Theodore and Cynthia Tarver; Robert Bishop; John Prestridge; Matthew Harper; Kent and Lindsey Archer; Robert Brasher; Chris Cummins; and

were required to identify any witnesses they intend to call at the Fairness Hearing,[264] the subject

area of the witnesses' testimony, and all documents to be used or offered into evidence.[265] The

Settlement Agreement also required that the Objections be signed by the Class Member and his,

her or its counsel,[266] and "[f]ailure to comply timely and fully with these procedures shall result in

the invalidity and dismissal of any objection."[267]

---

Timothy and Sebrina Hall) indicated they do not intend to appear at the Fairness Hearing but they will be represented by their counsel. *See* Foster Objection [Rec. Doc. 22389-12]; Tarver Objection [Rec. Doc. 22389-13]; Bishop Objection [Rec. Doc. 22389-15]; Prestridge Objection [Rec. Doc. 22389-16]; Harper Objection [Rec. Doc. 22389-17]; Archer Objection [Rec. Doc. 22389-18]; Brasher Objection [Rec. Doc. 22389-20]; Cummins Objection [Rec. Doc. 22389-14]; and Hall Objection [Rec. Doc. 22389-19].

Non-Class Member Mary Escudie stated she intends to appear at the Fairness Hearing without her counsel Parker Waichman, "if it will help [her] case." Escudie Objection [Rec. Doc. 22389-23], at page 3 of 17.

The remaining Objectors either do not intend to appear or did not indicate a desire to do so.

[264] Settlement Agreement [Rec. Doc. 22305-2], at § 10.1.2. Ms. Martinez is the only Objector who identified witnesses to be called at the Fairness Hearing: Luis Diaz and Jeasiel Diaz (regarding damages). *See* Martinez Objection [Rec. Doc. 22389-5], at page 4 of 15.

[265] Settlement Agreement [Rec. Doc. 22305-2], at § 10.1.2. Ms. Martinez identified the following exhibits in her Objection: Contractor's Estimate; Photographs; Drywall Inspections; Health Reports; Rental Contracts; Property Damage Receipts; Estimated Gross Allocation; Chinese Drywall Pamphlet; SPPF; Deposition Transcript. *See* Martinez Objection [Rec. Doc. 22389-5], at page 4 of 15.

Mr. Moody identified the following exhibits in his Objection: Class Settlement Agreement; Motion to Protect the *Amorin* Class [Rec. Doc. 22135-1]; Allocation Model; Plaintiffs' Motion to Adopt Plan for Resolution of Florida *Amorin* Plaintiffs (FLSD ECF No. 52); Moody letter to Judge Fallon dated November 13, 2019; Moody letter to Judge Fallon dated October 13, 2019 (and attachments); Transcript of monthly status conference, October 23, 2019; March 29, 2018 New Orleans City Business article Judge: Return Chinese drywall lawsuits to original states; August 20, 2019 CISION PR Newswire article Plaintiffs' Steering Committee: Settlement Announced in Decade-Old Chinese Drywall Litigation Lawsuits. *See* Moody Objection [Rec. Doc. 22389-10], at page 12 of 185.

Neither Mr. Yorsch nor Mr. Zimmerman identified any documents to be offered into evidence. *See* Yorsch Objection [Rec. Doc. 22389-11]; Zimmerman Objection [Rec. Doc. 22389-22].

[266] *Id.* at § 10.1.3. *See also* note 235, *supra*, regarding Objections of Clay, Helmick and Hemming.

[267] *Id.* at § 10.2; Preliminary Approval Order [Rec. Doc. 22314]. The following Objections were filed on the MDL docket by Attorney Jimmy Doyle: (1) Dominesha Clay, (2) Kenneth Randall and Alicia Doherty, (3) Stephen and Bonita Hemming and (4) Pamela Rigsby and Irene Page. Class Counsel did not receive these objections *via* USPS, and the Clay and Hemming Objections were not signed by the Class Member. Moreover, Ms. Rigsby and Ms. Page do not have standing to object as they have opted out of the Settlement. *See* Section III.G.5, *infra*.

Despite sufficient notice to Class Members advising them of their rights to object or opt out of the Settlement, only 22 Objections were submitted by Class Members during the Notice Period. Significantly, none of the Objections shows any defect in the settlement process or inadequacy of representation of the Class. No Objection demonstrates that the Settlement is unfair or inadequate as a whole, and for those reasons, the Objections do not warrant a denial of the motion to grant final approval to the Settlement.

If approved, the thousands of Class Members who support the Settlement will finally receive payments after more than a decade of litigation. The suggestion of a small number of Objectors to prolong this Litigation any further is troublesome. Even if some individual members of the Class were to ultimately prevail on all issues at trial, the recovery, if collected, would be delayed for years, and greatly diminished by the costs of continued litigation. If any of the Plaintiffs truly desired to obtain the relief they believe they deserve and could obtain, they could have opted out of the Settlement and continued to litigate their individual cases.

### 5.   <u>Non-Class Members Lack Standing to Object to the Settlement.</u>

In the context of class settlements, non-settling parties generally have no standing to challenge the proposed settlement. *In re Deepwater Horizon*, 910 F. Supp. 2d at 941 (citing *Transamerican Refining Corp. v. Dravo Corp.*, 952 F.2d 898, 900 (5th Cir. 1992); *Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 246 (7th Cir.1992); *In re Vioxx Prods. Liab. Litig.*, 388 Fed. Appx. 391, 395 (5th Cir. 2010)). Plaintiffs falling outside the settlement class are entirely unaffected by the Settlement, and thus lack standing to challenge it. *Id.* (citing *Feder v. Electronic Data Systems Corp.*, 248 Fed. Appx. 579, 580 (5th Cir.2007); *Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir.1989); 4 *Newberg On Class Actions* § 11:55 (4th ed.)); *see also* 4 *Newberg On Class Actions* § 13:22 (5th ed.). Two Plaintiffs who were expressly excluded from the Class (Michael Guerriero

and Mary Escudie) submitted purported objections. As discussed in more detail below, because neither of these Plaintiffs has standing to object, their objections should be denied.

The Settlement Agreement expressly excludes from the Class: "(1) Plaintiffs listed on Exhibit 1 (Exhibit 1 includes 498 Plaintiffs who are included in a separate settlement agreement with Taishan); (2) the named Plaintiff and putative class members in *The Mitchell Co., Inc. v. Knauf Gips KG, et al.*, Civil Action No. 09-4115 (E.D. La.); and (3) Plaintiffs who asserted Claims against Taishan and/or the Additional Released Parties, but whose Claims were dismissed for failure to complete a [SPPF] or by motion for voluntary dismissal."[268]

Similarly, "class members who have opted out of a 23(b)(3) class action have no standing to object to a subsequent class settlement; by opting out they escape the binding effect of the class settlement." *In re Vitamins Antitrust Class Actions*, 215 F.3d 26, 28-29 (D.C. Cir. 2000) (internal quotations omitted); *see also Carter v. Forjas Taurus, S.A.*, 2016 WL 3982489, at *13 (S.D. Fla. July 22, 2016) ("[I]t is well-established that 'class members may either object or opt out, but they cannot do both.'") (quoting 4 *Newberg On Class Actions* § 13:23 (5th ed.)). Pamela Rigsby and Irene Page (co-owners of an Affected Property) opted out of the Settlement during the Notice Period,[269] yet, nevertheless submitted a purported objection "on behalf of those who do not opt out."[270] Similarly, Patricia Gottlieb submitted an Objection,[271] but then, after considering her

---

[268] Preliminary Approval Order [Rec. Doc. 22314], at ¶ 3; Settlement Agreement [Rec. Doc. 22305-2], at § 1.1.1.

[269] *See* Notice of Filing of Opt-Outs [Rec. Doc. 22388-20].

[270] *See* Rigsby Objection [Rec. Docs. 22379-5 and 22389-25].

[271] Ms. Gottlieb objected to the Settlement on the grounds that it did not provide remediation formula damages to all Class Members, and she contested the division of her Allocation Amount as to the condominium association.

options, timely elected to opt out of the Settlement.[272] As discussed in more detail below, because these Plaintiffs do not have standing to object, their Objection should be denied.

As non-Class Members, the following Objectors lack standing to object to the Settlement:

### a.    *Michael Guerriero*

Michael Guerriero submitted a purported objection to being excluded from the Settlement for failing to timely submit an SPPF.[273] However, Mr. Guerriero's exclusion from the Class is not simply due to his failure to submit an SPPF, but also because his claim was judicially dismissed with prejudice at the direction of his individual counsel Parker Waichman.[274] Now that a Class Settlement has been reached, Mr. Guerriero seeks to revive his dismissed claims by contending that medical issues he sustained in December 2017 prevented him from timely submitting an SPPF in March 2018. But his recourse, if any, was to file a motion to vacate his October 2018 dismissal under Federal Rule of Civil Procedure 60, not utilize the settlement process as a means of effectuating such an outcome.

---

[272] *See* Gottlieb Objection [Rec. Doc. 22389-26]; *see also* Gottlieb Opt-Out [Rec. Doc. 22388-92].

[273] *See* Guerriero Objection [Rec. Doc. 22389-24].

[274] Mr. Guerriero's claims were filed on the *Amorin* complaint and remanded to Judge Cooke in the Southern District of Florida on October 11, 2018. Upon remand, Defendants filed a Motion to Dismiss (FLSD ECF No. 62) certain claimants for failure to file SPPFs by the deadline prescribed by this Court – March 20, 2018 [Rec. Doc. 21162] and pursuant to the Florida Trial Plan Order [Rec. Doc. 21933-1]. Common benefit counsel working under the direction of Class Counsel notified individual counsel for each claimant subject to the Motion to Dismiss, including counsel for Mr. Guerriero Parker Waichman, that the motion was pending and we sought their position with regard to the motion. Francisco Albites of Parker Waichman responded that Mr. Guerriero "instructed us to close his case," and, thus, Mr. Guerriero was included on a Motion to Voluntarily Dismiss Certain Claims with prejudice (FLSD ECF No. 81) (email authorizing dismissal and motion to dismiss attached hereto, collectively, as Exhibit "26"). Judge Cooke judicially dismissed the claims of Mr. Guerriero and hundreds of other Plaintiffs on October 17, 2018 (FLSD ECF No. 96) [Rec. Doc. 21888-1]; *see also* MDL Order Dismissing Mr. Guerriero's Claims [Rec. Doc. 21894].

Unfortunately, Mr. Guerriero has no pending Chinese Drywall claims against Taishan or the Additional Released Parties and he is not a member of the Settlement Class. His Objection should be denied.

> b.      *Mary Escudie*

Mary Escudie has likewise objected to the Settlement because she was definitionally excluded from the Class.[275] She is one of the 498 Florida *Amorin* Plaintiffs who were offered separate individual settlements from Taishan prior to the negotiation of the Class Settlement – an individual offer that remained open throughout virtually the entire Class Notice Period. Her counsel Parker Waichman and Jimmy Faircloth negotiated this separate settlement on her behalf months before Class Counsel engaged in negotiations with Taishan for the remaining claimants. Mr. Faircloth represented to this Court that the Florida Individual Settlement ("FIS") "provides each and every Participating Plaintiff an individual offer of settlement based on a formula that carefully balances the strengths and weaknesses of each case on the merits and the shared benefits and risks of continuing litigation."[276] On May 31, 2019, Parker Waichman filed their communications with the FIS Plaintiffs under seal for *in camera* review by Judge Cooke.[277]

---

[275] *See* Escudie Objection [Rec. Doc. 22389-23]. Ms. Escudie asserts: "I am uncertain why or how I was excluded from this class late in the process and why others were not. I declined the alternative settlement offer so I believe I should be reinstated as a Known Class Member." *Id*. at page 3 of 17.

[276] *See* Motion to Lift PTO 32 [Rec. Doc. 22126], at 2.

[277] *See* Notice of Filing Confidential and Privileged Communications Regarding the Prior Florida Settlements Under Seal and for *In Camera* Review and Exhibit thereto (FLSD ECF No. 310). Apparently, in the Notice letters issued by Mr. Faircloth to Parker Waichman's individual clients regarding the FIS, he "informed clients that they would remain as member of the *Amorin* Class if they declined the settlement offer" from Taishan, *see* Declaration of Jimmy R. Faircloth, Jr. (FLSD ECF No. 337-2) [Rec. Doc. 22341-1], at ¶ 12, which is perhaps the source of Ms. Escudie's confusion as to why she was excluded from the Settlement Class.

At the hearing before Judge Cooke on June 5, 2019, Mr. Faircloth appeared on behalf of Parker Waichman and its clients in this Litigation, including Ms. Escudie, as well all other Plaintiffs who were offered the FIS by Taishan.[278] Both Taishan and Mr. Faircloth confirmed that these individual cases would go forward in the event any Plaintiff declined the offer from Taishan.[279]

Mr. Faircloth had previously informed Class Counsel that they had "no authority to speak for Parker Waichman's clients."[280] On April 18, 2018, Parker Waichman filed an objection to Class Counsel's Notice of Mediation "and any resulting mediation implicating the rights of Parker Waichman's clients under the settlement offer made by the Taishan entities."[281]

Nevertheless, Mr. Faircloth was present at the mediation of the Class Settlement (he signed in on behalf of all 498 Plaintiffs in the FIS), although he did not participate in any of the class settlement negotiations.

Despite her exclusion from the Class Settlement, Ms. Escudie has not been prejudiced. First, she was not prejudiced because she had a full settlement opportunity negotiated by her counsel that would have placed her on the same financial terms as the Class Members in the later-negotiated Class Settlement. As Ms. Escudie has acknowledged, her FIS offer included a "[Most Favored Nations] clause that suggests that if the [Class] settlement exceeds the current offer by

---

[278] *See* Transcript of Motions Hearing dated 6/5/2019 (FLSD ECF No. 315) [Rec. Doc. 22303-3], at 4. Mr. Faircloth expressly confirmed that he was speaking at this hearing on behalf of the 498 Plaintiffs who are involved in the FIS. *Id*. at 11 ("I'm speaking for the 498. Yes, Your Honor.").

[279] *Id.* ("[I]f they do not choose to reach a settlement agreement with us, then those [Plaintiffs] will be handled just like any other individual claim would be.").

[280] Transcript of Status Conf. before Judge Cooke dated 7/13/2018 (FLSD ECF No. 40), at 22.

[281] Notice of Objection to Mediation (FLSD ECF No. 239) (attached hereto as Exhibit "27"), at 1.

110% we can go back and request more funds."[282] That provision was specifically negotiated to protect Ms. Escudie (and the other 497 recipients of the FIS offers) against the very complaint she now makes – *i.e.*, that the difference between the rejected FIS settlement value and the Class Settlement value is "significant."[283] The Most Favored Nation clause of the FIS would have ensured that no difference (significant or otherwise) existed between Ms. Escudie's individual settlement value and the value recovered by her comparable peers in the Class Settlement. But Ms. Escudie has now rejected the FIS offer that would have made her "whole" vis-à-vis the Class Settlement, and she seeks to gain entry into a later-negotiated Class Settlement in which she cannot participate. None of the other 497 recipients of the FIS offers made that choice. Therefore, Ms. Escudie has foreclosed her settlement opportunity that would have placed her financially in the same shoes as if she had been a Settlement Class Member.

Second, Ms. Escudie has not been prejudiced regarding her ability to continue to prosecute her claim. Both Taishan and Mr. Faircloth have confirmed that *any Amorin* Plaintiff who did not accept the FIS will have their claims heard before Judge Cooke in the Southern District of Florida. The Florida Court has scheduled a status conference on January 8, 2020, to address the scheduling of trials for any remaining Florida *Amorin* cases (from the 498 FIS matter and opt-outs from the Class Settlement).[284] In fact, Ms. Escudie is the only claimant out of the 498 claimants who received an FIS offer who did not accept it. Therefore, as intended, Ms. Escudie's claims will proceed individually before Judge Cooke in relatively short order.

---

[282] Escudie Objection at [Rec. Doc. 22389-23], at page 3 of 17.

[283] *Id.*

[284] FLSD ECF No. 356.

### c.    *Attorney Jimmy Doyle*

Attorney Jimmy Doyle does not have standing to object. By the terms of the Settlement Agreement, "[a]ny *class member* who objects to approval of this Settlement . . . must make that objection by the following procedure . . . ."[285] Jimmy Doyle is not, and has never been, a Class Member. He is not a Plaintiff in the Litigation, and under the Settlement, he is not permitted to object on behalf of unspecified Class Members who did not sign the objection, and he continues to represent Class Members who support the Settlement. The Settlement Agreement specifically states, "an objection signed by counsel alone shall not be sufficient."[286]

Moreover, Mr. Doyle represents 96 *Amorin* Class Members and 168 *Brooke* Plaintiffs who support the Settlement. His purported objection seeks to equalize the recoveries of all Plaintiffs regardless of their status as an *Amorin* Class Member, a *Brooke* Plaintiff, or an absent Class Member, because according to Mr. Doyle, "All Covered Chinese Drywall claims are similarly situated."[287] This contention not only belies the evidence of record and ignores the rulings of the Courts in this Litigation, but if successful, each of the 96 *Amorin* Plaintiffs represented by Mr. Doyle could receive significantly _less_ than their current estimated recoveries. Mr. Doyle has placed himself in a conflict situation: he represents 264 Class Members who support the Settlement; he has solicited numerous opt-outs (4 *Amorin* Plaintiffs; 71 *Brooke* Plaintiffs; and 12 absent Class Members[288]); and he represents 6 Objectors to the Settlement (not including Pamela Rigsby and

---

[285] Settlement Agreement [Rec. Doc. 22305-2], at § 10.1 (emphasis added).

[286] Preliminary Approval Order [Rec. Doc. 22314], at ¶ 17; Settlement Agreement [Rec. Doc. 22305-2], at § 10.1.3.

[287] Doyle Objection [Rec. Doc. 22378], at 2.

[288] In addition, he solicited an opt out from a non-Class Member, Juana Martinez. *See* note 185, *supra*.

Irene Page or Patricia Gottlieb, who opted out)).[289] And his argument regarding adequacy of the Settlement Fund fails for the same reasons set forth above.[290] If his clients thought they should recover more, their solution was to opt out, not upend an agreement for thousands of others who seek imminent closure.

Mr. Doyle's attempt to object "on behalf of all Plaintiffs affected by the terms contained in the proposed Taishan Class Settlement"[291] should be summarily denied.

*   *   *

Importantly, none of the Objectors takes into account the risks of continued litigation against the foreign Defendants and issues of collectability. The Objectors conveniently ignore that the Settlement provides the Class with timely, certain, and meaningful recovery, while further litigation and any subsequent appeals are uncertain and would entail significant additional costs and substantially delay any recovery achieved. A careful examination of these Objections reveals no reason to deny final approval to the Settlement. Moreover, any of these Class Member Objectors could have opted-out if they thought they could achieve a better result through litigation. As pointed out in the *Manual for Complex Litigation*, "[a]n opportunity to opt out after the settlement terms are known ... might reduce the need to provide procedural support to objectors or to rely on objectors to reveal deficiencies in a proposed settlement. Class members who find the settlement unattractive can protect their own interests by opting out of the class." *Manual for Complex Litigation* § 21.643 (4th ed.); *see also Murphy Oil*, 472 F. Supp. 2d at 856 n.21. Thus, there is nothing in any of these Objections that warrants a denial of final approval of the Settlement.

---

[289] *See* Notice of Filing of Opt-Outs [Rec. Doc. 22388]; Notice of Filing of Objections [Rec. Doc. 22389].

[290] *See supra* at Section III.G.2.

[291] Doyle Objection [Rec. Doc. 22378], at page 1.

## IV.    <u>CONCLUSION</u>

The law favors settlements; and thus the settlement of thousands of claims against foreign manufacturers, in multi-state litigation with a long and complex history as well as an uncertain future, surely deserves the law's special favor. For all of the reasons set forth above, Settlement Class Counsel respectfully request that the Court enter the accompanying Rule 54(b) Order and Judgment: (1) granting final approval to the Settlement pursuant to Fed. R. Civ. P. 23(e)(2); (2) certifying the Settlement Class pursuant to Fed. R. Civ. P. 23(a), (b)(3) & (e); (3) finding that Notice was issued in accordance with the Court's Preliminary Approval Order, satisfying Fed. R. Civ. P. 23 and Due Process; (4) approving the Class Release and bar order in the Settlement; (5) approving the Taishan Release in the Settlement; (6) overruling all Objections filed in opposition to the Settlement; and (7) granting incentive awards to the Priority Plaintiffs, the Select Claimants, and the Settlement Class Representatives. The Parties also seek entry of the accompanying Order dismissing all Claims of Settlement Class Members who did not opt out in the Litigation and CDW-Related Actions. Filed herewith are Class Counsel's proposed Findings of Fact and Conclusions of Law.

Respectfully submitted,

Dated:  December 6, 2019                   By: */s/ Stephen J. Herman*
                                           Russ M. Herman (Bar No. 6819)
                                           Leonard A. Davis (Bar No. 14190)
                                           Stephen J. Herman (Bar No. 23129)
                                           Charles King (Bar No.34621)
                                           Herman, Herman & Katz, LLC
                                           820 O'Keefe Avenue
                                           New Orleans, LA 70113
                                           Phone: (504) 581-4892
                                           Fax: (504) 561-6024
                                           SHerman@hhklawfim.com
                                           *Plaintiffs' Liaison Counsel MDL 2047 and*
                                           *Settlement Class Counsel*

95

Arnold Levin
Fred S. Longer
Sandra L. Duggan
Keith J. Verrier
Nicholas J. Elia
Levin Sedran & Berman LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
alevin@lfsblaw.com
*Plaintiffs' Lead Counsel MDL 2047 and Settlement Class Counsel*

Patrick Shanan Montoya
Fla. Bar No. 0524441
Patrick@colson.com
Colson Hicks Eidson
255 Alhambra Circle, PH
Coral Gables, FL  33134-2351
Phone:  (305) 476-7400
Fax:  (305) 476-7444
*Plaintiffs' Steering Committee MDL 2047 and Settlement Class Counsel*

Richard J. Serpe, Esq.
LAW OFFICES OF RICHARD J. SERPE, PC
580 E. Main Street, Suite 310
Norfolk, Virginia 23510
Phone:  (757) 233-0009
Fax:  (757) 233-0455
Rserpe@serpefirm.com
*Plaintiffs' Steering Committee MDL 2047 and Settlement Class Counsel*

Dawn M. Barrios (on the brief)
Emma Kingsdorf Schwab (on the brief)
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Eschwab@bkc-law.com

Pearl A. Robertson (on the brief)
IRPINO AVIN HAWKINS LAW FIRM
2216 Magazine Street
New Orleans, LA 70130
Phone: (504) 525-1500
Fax: (504) 525-1501
probertson@irpinolaw.com

Gerald E. Meunier (on the brief)
Gainsburgh, Benjamin, David,
Meunier & Warshauer, LLC
2800 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2800
Phone:  (504) 522-2304
Fax:  (504) 528-9973
gmeunier@gainsben.com

Pete Albanis (on the brief)
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Myers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
palbanis@forthepeople.com

Allison Grant (on the brief)
Allison Grant, P.A.
14 Southeast 4th Street
Boca Raton, FL 33432
Phone: (561) 994-9646
Fax: (561) 431-4627
agrant@allisongrantpa.com

Holly Werkema (on the brief)
Baron and Budd
3102 Oak Lawn Ave., Ste. 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
hwerkema@baronbudd.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing has been served on Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, which will serve a notice of the uploading in accordance with the procedures established in MDL 2047, on this 6th day of December, 2019.

> */s/ Stephen J. Herman*
> Stephen J. Herman
> Herman, Herman & Katz, LLC
> 820 O'Keefe Avenue
> New Orleans, LA 70113
> Phone: (504) 581-4892
> Fax: (504) 561-6024
> SHerman@hhklawfim.com
> *Plaintiffs' Liaison Counsel MDL 2047 and Settlement Class Counsel*