# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

|  |  |
|---|---|
| EDUARDO AND CARMEN AMORIN, *et al.*, individually, and on behalf of all others similarly situated, | |
|      **Plaintiffs,** | Case No. 1:11-CV-22408-MGC |
| **v.** | |
| TAISHAN GYPSUM CO., LTD. f/k/a SHANDONG TAIHE DONGXIN CO., LTD.; TAIAN TAISHAN PLASTERBOARD CO., LTD., *et al.*, | |
|      **Defendants.** | |

## PLAINTIFFS' OBJECTIONS TO AND APPEAL FROM THE SPECIAL MASTER'S REPORT AND RECOMMENDATION REGARDING PRODUCT ID CATEGORIES ATTRIBUTABLE TO TAISHAN GYPSUM CO., LTD.

**EXHIBIT 6 to Memorandum of Law in Support of Class Settlement**

# TABLE OF CONTENTS

Table of Authorities.................................................................................. ii

I.    INTRODUCTION ................................................................................ 1

II.   THE STANDARD OF PROOF TO BE APPLIED........................................... 5

    A.   The Default Judgment is Not Irrelevant to the Burden of Proof. .............. 5

    B.   "Greater Weight of the Evidence" Requires Consideration of
the Totality of the Circumstances To Determine What is More Likely
Than Not............................................................................................. 6

    C.   Defendants' Litigation Misconduct Is Relevant to their Credibility. .......... 6

III.  ERRORS IN SPECIAL MASTER'S ANALYSIS THAT FLOW THROUGH
THE ENTIRE REPORT & RECOMMENDATION ........................................ 7

    A.   There Is No Evidence in the Record of Additional Manufacturers
of Defective Chinese Drywall ................................................................ 7

    B.   Evidence Regarding Taishan's Manufacturing Process. ........................... 9

    C.   Taishan's Suggested Chemical Analysis Test Doesn't Exist. ................... 10

IV.   CATEGORY-SPECIFIC ISSUES WITH THE SPECIAL
MASTER'S R&R ............................................................................... 11

    A.   Made in China Meet[s] or Exceed[s]..................................................... 11

    B.   Various Drywall Dimensions, Including 4feetx12feetx1/2inch. ............... 13

    C.   IMT Gypsum..................................................................................... 16

    D.   ProWall............................................................................................ 17

    E.   White Edge Tape, Boards with No Markings or
Boards with No Markings Other Than Numbers..................................... 18

    F.   C&K Drywall. ................................................................................... 20

V.    CONCLUSION .................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Au Bon Pain Corp. v. Artect, Inc.,*
  653 F.2d 61 (2d Cir. 1981) ........................................................................ 5

*Finkel v. Romanowicz,*
  577 F.3d 79 (2d Cir. 2009) ........................................................................ 5

*Huck v. Louisville Ladder, Inc.,*
  2008 WL 222682 (M.D. Fla. Jan. 25, 2008) .............................................. 6

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.,*
  894 F. Supp. 2d 819 (E.D. La. 2012) ......................................................... 9

*In re Chinese-Manufactured Drywall Prod. Liab. Litig.,*
  2017 WL 1421627 (E.D. La. Apr. 21, 2017) ...........................................5, 8

*In re Levin,*
  434 B.R. 910 (S.D. Fla. 2010) ................................................................... 6

*Lowery v. Ala. Power Co.,*
  483 F.3d 1184 (11th Cir. 2007) ................................................................. 6

*Michalic v. Cleveland Tankers, Inc.,*
  364 U.S. 325 (1960) .................................................................................. 6

*Peach State Labs, Inc. v. Environmental Manufacturing Solutions, LLC,*
  2011 WL 13140669 (M.D. Fla. Dec. 29, 2011) ......................................... 6

*Pulte Home Corp. v. Ply Gem Indus., Inc.,*
  804 F.Supp. 1471 (M.D. Fla. 1992) ........................................................... 6

*Sweeney v. Kimberly-Clark Corp.,*
  2016 WL 727173 (M.D. Fla. Feb. 22, 2016) .............................................. 6

*United States v. Almedina,*
  686 F.3d 1312 (11th Cir. 2012) ................................................................. 6

## Statutes

19 U.S.C. §1304(a) ......................................................................................... 9

**<u>Rules</u>**

Fed. R. Civ. P. 53(f) ..............................................................................................2, 5

Fed. R. Civ. P. 55(b)(2)............................................................................................ 5

## I.     **INTRODUCTION**

On April 8, 2019, the Special Master issued her Report and Recommendation Regarding Product ID Categories Attributable to Taishan ("Special Master's R&R").[1]  Before the Special Master was the determination of whether eight Product ID categories were attributable to Taishan.[2]  Because Taishan accepted responsibility for two of the Product ID categories (Venture Supply and Taihe Tape), the Special Master addressed six Product ID categories (C&K; IMT Gypsum; ProWall; Made in China Meet or Exceeds ("Meet[s] or Exceed[s]"); various Drywall dimensions, including 4feetx12feetx1/2 inch and 4feet*12feet*1/2inchs ("Dimensions"); and White Edge Tape, boards with no markings or boards with no markings other than numbers ("White Edge Tape").  Two of these Product ID categories (Meet[s] or Exceed[s] and Dimensions) are demonstrated by thirteen variations of the relevant markings, which are referenced by the respective photos in the Taishan Product ID Catalog (ECF No. 155-2) reflecting the marking variations.[3]

The Special Master determined that Plaintiffs did not meet their burden of proof on four of the Product ID categories at issue (C&K; IMT Gypsum; ProWall; and White Edge Tape).  She also determined that Plaintiffs did not meet their burden with respect to the majority of the "subdivided" Meet[s] or Exceed[s] and Dimensions categories, finding that attribution had been established for the markings in only three out of six photos within the

---

[1] *See* Special Master's Report and Recommendation Regarding Product ID Categories Attributable to Taishan Defendants ("SM R&R") (ECF No. 233).  Taishan Gypsum Co., Ltd. and its wholly-owned subsidiary and alter ego Taian Taishan Plasterboard Co., Ltd. will be referred to herein as "Taishan" or "Defendant." Plaintiffs' Brief in Support of Product ID Categories Attributable to Taishan ("Plaintiffs' PID Brief") is attached hereto as Exhibit "A" and incorporated herein by reference. The Exhibits to the Plaintiffs' PID Brief are referred to herein by their respective "Tab" number as "Plaintiffs' Tab" and incorporated herein by reference.  An Appendix with hyperlinks to the relevant documents is attached hereto as Exhibit "B."

[2] The Court's Omnibus Order Regarding Trial Plan set forth twelve categories of Product ID (*see* ECF No. 112 at 6 n.2), but four of those categories were not before the Special Master at this time.  Two categories – BNBM/Dragon Board and Chinese Manufacturer #2 (purple stamp) – are alleged to be manufactured by Defendant BNBM, which will be addressed separately; and DUN and Crescent City Gypsum are not alleged to be present in any Florida properties.

[3] The Court's Trial Plan required the Special Master to issue a Report and Recommendation as to whether the Product ID *categories* at issue should be attributed to Defendants despite their denial (ECF No. 112 at 6 (para. 3.a.vi)).  Problematically, the Special Master subdivided the Meet or Exceeds and Dimensions categories by attributing only certain specific photos in the Taishan Product ID Catalog to Taishan.

1

Meet[s] or Exceed[s] category and three out of seven photos within the Dimensions category. SM R&R at 10-11. In each of those six circumstances, Taishan had either explicitly or implicitly admitted it manufactured boards with the markings in question.[4]

Plaintiffs file these Objections to the Special Master's R&R[5] not only because the Special Master made specific errors with respect to the categories of Product ID that she found were not attributable to Taishan; but also, and equally important, because she applied an unmeetable burden of proof and completely disregarded the substantial and compelling direct and circumstantial evidence of attribution presented by Plaintiffs. There is no better illustration of the standard applied by the Special Master than the fact that there was only one piece of evidence that satisfied it – an *admission* by Taishan. On this score, the Special Master applied the preponderance standard in such a way that it literally could not be met by Plaintiffs. This is not hyperbole but merely an acknowledgment that *the Special Master only found that the burden of proof had been satisfied when it came with a Taishan admission.*

By requiring an admission by Taishan as a predicate for attribution, the Special Master disregarded direct evidence linking Taishan to certain Product ID categories and, importantly, gave no weight to the significant amount of compelling circumstantial evidence that supported Plaintiffs' claims, which should have tilted the scales in Plaintiffs' favor. In this regard, the Special Master effectively placed the burden on Plaintiffs to prove, not only by the greater weight of the evidence, but by evidence that was *direct and incontrovertible* that a particular board of drywall was manufactured by Taishan. In most cases, the Special Master conducted no analysis of the Plaintiffs' evidence.

To make matters worse, Taishan's acceptance of responsibility for particular markings was based largely, if not exclusively, on whether the exact same markings were contained on certain "residual" American-sized boards that Taishan discovered in its warehouse in late

---

[4] Of the seven contested photos within these two Product ID categories, the Special Master found the Plaintiffs met their burden of showing attribution on only two and that was because (1) the pictures of one were <u>identical</u> to pictures that were admitted by Defendant and (2) the wording on the second was the same as that listed in Defendant's Manufacturer Profile Form, *i.e.*, Taishan admitted the language. *See* SM R&R [ECF No. 233] at 9.

[5] Plaintiffs object pursuant to FRCP 53(f)(2). Specifically, Plaintiffs object to the Special Master's findings with respect to C&K, IMT Gypsum, ProWall, Meet[s] or Exceed[s] with respect to the findings regarding Photos 18, 19, and 21, Dimensions with respect to the findings regarding Photos 6, 7, 8, 10 and 11, and White Edge Tape.

2018, even though Plaintiffs had requested this evidence long ago.[6]  Problematically, Taishan did not find exemplars of all of the American-sized boards it ever manufactured; therefore, there is no basis to attribute only the "residual" drywall to Taishan, and exclude other drywall not found in the warehouse.  Moreover, Taishan's Manufacturer Profile Form ("MPF") states that Taishan only labeled its products when, and as, a certain purchaser might request that the drywall bear particular markings.[7]  Therefore, whether a particular marking is not found on a given piece of drywall is not, in and of itself, probative.  In fact, some of Taishan's admissions, after finding the residual boards, involved boards with markings it denied responsibility for merely months ago prior to discovery of these boards.[8]  Yet, the Special Master based her Product ID determinations almost exclusively on these flawed admissions.

In contrast, the Special Master ignored direct photographic evidence and significant circumstantial evidence.  For example, it is relevant, probative and significant that after ten years of litigation, Taishan has been unable to identify any specific manufacturer, other than Taishan, BNBM, Knauf and C&K, who manufactured defective Chinese drywall (*i.e.*, reactive drywall that experienced the same type of high-sulfur off-gassing).[9]  Taishan is aware that this highly relevant fact is damaging, so Defendant goes to great lengths to make the irrelevant point that other companies manufactured drywall in China and exported it to the United States, in the hopes of a creating an inference that these other companies also made

---

[6] *See generally* 2019 CHE Dep. [Pls.' Tab 20] at 258:4-260:12, 268:21-271:13; *see also* Pls.' Tabs 16-18.

[7] *See* Pls.' Tab 11 at 2; *see also, e.g.,* Pls.' Tab 10, at TG-0129675-676 (Taishan manufactured and exported to the U.S. 998778.91 m² of boards with "unlettered edge band, no coding, and neutral packaging" and 1,020,749.45 m² with "unknown" markings); Pls.' Tab 11 at 2.

[8] *See* Taishan's MPF [Pls.' Tab 11] at Ex. A (listing numerous markings with "Meet or Exceed"); Def.'s PID Br. at 37-38 (acknowledging manufacture of board with markings "Meet or Exceeds," "Exceeds" with an "s" after finding residual boards); SM R&R at 8-9.

[9] *See* CPSC RELEASE NO.10-243 (May 25, 2010) [Pls.' Tab 27] (identifying 10 manufacturers of the defective drywall, (all Taishan/Taihe, BNBM, Knauf, and/or C&K), and noting that the other Chinese drywall samples and the domestically manufactured samples "had low or no detectible emissions").  The only other company identified is "C&K," which Plaintiffs continue to believe received some or all of its drywall from Taishan. *See, e.g.,* Pls.' Tabs 40-45.  In 2004, CNBM (parent to BNBM) acquired C&K to manufacture their drywall beginning in 2004. Shortly thereafter, CNBM went public and assigned its manufacturing operations to BNBM. CNBM's public offering reorganized the lightweight building sector (which is dominated by gypsum board manufacturing), and gave BNBM control over gypsum board manufacturing, including majority control over Taishan's stock.  Finally, the loop is closed in 2009, upon C&K's bankruptcy and BNBM's purchase of all C&K assets on September 22, 2009.

3

the <u>defective</u> drywall that is at issue in this case.[10]  Indeed, the Consumer Product Safety Commission ("CPSC") tested drywall from different manufacturers and those tests confirmed what Judge Fallon has repeated throughout this litigation – not all Chinese-manufactured drywall is defective, but the defective Chinese-manufactured drywall *at issue in this litigation* was manufactured by either Taishan, BNBM, Knauf or C&K.[11]  Taishan does not point to any piece of evidence that identifies another manufacturer of *defective* Chinese drywall. Therefore, it is reasonable, and supported by the evidence, to infer that a non-Knauf board of high-sulfur off-gassing drywall manufactured during this time period was, more likely than not, made by Taishan or BNBM.  *Yet, this was given no weight by the Special Master*.

Similarly, the Special Master disregarded evidence of Defendant's misconduct throughout the course of the litigation.  Viewing numerous aspects of Defendant's litigation misconduct as relevant, Plaintiffs raised this issue before the Special Master, but she appeared to view it as a binary choice – either the Defendant's behavior was egregious enough to warrant a finding of spoliation or an adverse inference, or the behavior warranted no consideration at all.  Even assuming *arguendo* that Taishan's conduct does not constitute a predicate for formal spoliation sanctions or does not change the burden of proof, it is nevertheless relevant and important evidence first as to the ultimate Product ID determination under a "greater weight of the evidence" standard and second *as a matter of credibility*, particularly where much of Defendant's "rebuttal" to Plaintiffs' evidence involves Taishan's own largely self-serving contentions and representations.  Despite the relevance of this circumstantial evidence, *these facts were given effectively no weight by the Special Master*.

If left unaltered, the Special Master's R&R would dismiss, in their entirety, the claims of close to half of the Florida *Amorin* Class, who have been waiting nearly ten years to receive some compensation for the devastating financial damage and often heartbreaking emotional losses they incurred as a result of having defective Chinese drywall installed in their homes. Realizing that the impact on these homeowners is not a reason to hold Taishan accountable for damage done by someone else's product, it is important nonetheless that these

---

[10] *See, e.g.*, Defendant Taishan's Product Identification Contentions and Defenses, attached hereto as Exhibit "D," at 4-6.

[11] *See* fn.9, *supra*, discussing CPSC findings and C&K's relationship with Taishan.

homeowners not be held to an insurmountable burden of proof. This is particularly true here where Taishan does not outright deny that it manufactured the defective drywall in question but instead offers the unsatisfying non-denial position that "it has no records to reflect that it ever made a product with that marking" coupled with unsupported references to other possible guilty manufacturers.

The Court's review of the legal and factual findings of the Special Master is *de novo*.[12] For the reasons set forth herein and in Plaintiffs' PID Brief, Plaintiffs respectfully request that the Special Master's Report and Recommendation should be modified and amended.

## II.   THE STANDARD OF PROOF TO BE APPLIED

### A.   The Default Judgment is Not Irrelevant to the Burden of Proof.

The Special Master did not consider the fact that Taishan is in default when assessing the standard of proof. "Causation and liability have been conclusively established." *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2017 WL 1421627, at *23 ¶ 85 (E.D. La. Apr. 21, 2017). While the plaintiff generally maintains a burden to establish damages under FRCP 55(b)(2), Product ID would appear to be an issue of liability and/or causation,[13] and not damages. The Court, in this regard, has referred to a *challenge* by the *Defendants* to Product ID – as opposed to an affirmative burden on the part of the Plaintiffs.[14] That Taishan is liable for causing injury or loss to the Plaintiffs should accordingly be presumed, with the Defendants carrying the burden of persuasion. Even where the Plaintiffs have the burden to prove damages in a default proceeding, moreover, all reasonable inferences from the evidence are generally drawn in the Plaintiffs' favor. *See, e.g., Finkel v. Romanowicz,* 577 F.3d 79, 84 (2d Cir. 2009); *Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir. 1981).

### B.   "Greater Weight of the Evidence" Requires Consideration of the Totality of the Circumstances To Determine What is More Likely Than Not.

The Special Master stated at the outset that Plaintiffs bore the burden of proof "by the greater weight of the evidence standard," SM R&R at 4, a phrase that is used interchangeably

---

[12] Fed. R. Civ. P. 53(f).

[13] *See, e.g.,* SM R&R at 3 ("Plaintiffs bear the burden of proof to establish … that the drywall that *caused* any claimed damages was manufactured by the Taishan Defendants") (emphasis added).

[14] *See, e.g., Chinese Drywall*, 2017 WL 1421627, AT *50 ("Taishan will then be permitted to review and contest"); ECF No. 112 at 6 ("*Defendants may challenge* only....") (emphasis added); SM R&R at 3 ("the *Defendants are entitled to challenge* ….") (emphasis added).

with "preponderance of the evidence." *In re Levin,* 434 B.R. 910, 921 (S.D. Fla. 2010). Plaintiffs satisfy this burden when, upon consideration of ***all*** the evidence, it is ***more likely than not*** that the boards in question were manufactured by the Defendant. *See United States v. Almedina,* 686 F.3d 1312, 1315 (11th Cir. 2012); *see also Lowery v. Ala. Power Co.,* 483 F.3d 1184 (11th Cir. 2007). Significantly, "direct evidence of a fact is not required. Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Michalic v. Cleveland Tankers, Inc.,* 364 U.S. 325, 330 (1960); *Peach State Labs, Inc. v. Environmental Mfct. Solutions, LLC,* 2011 WL 13140669, at *4 (M.D. Fla. Dec. 29, 2011).

There is no caselaw in Florida that limits the method for establishing Product ID to direct photographic evidence and markings only even though it appears that was the standard applied by the Special Master. *See, e.g., Sweeney v. Kimberly-Clark Corp.,* 2016 WL 727173, at *7 (M.D. Fla. Feb. 22, 2016), *order clarified,* 2016 WL 7138530 (M.D. Fla. Mar. 3, 2016). ***Instead***, the appropriate standard involves a totality-of-the-circumstance approach. *See also, e.g., Huck v. Louisville Ladder, Inc.,* 2008 WL 222682, at *2 (M.D. Fla. Jan. 25, 2008); *Pulte Home Corp. v. Ply Gem Indus., Inc.,* 804 F.Supp. 1471, 1486 (M.D. Fla. 1992) (same).

## C. Defendants' Litigation Misconduct Is Relevant to its Credibility.

It is relevant to Taishan's credibility that its conduct at every point has been designed with one goal in mind – minimizing its financial exposure to the aggrieved homeowners – and it has not hesitated to disregard the rules and litigation norms when it thought that was the best way to achieve that goal. In addition, Defendants' discovery abuses and overall litigation tactics are important when weighing the presence or absence of certain evidence. For example, if Taishan says that it will only respond to discovery by providing evidence beneficial to the company and only do so "when necessary,"[15] it would explain, among other things, why volumes of direct evidence may be hard to obtain, why there are so few records "kept," and why Taishan denies it is responsible for certain markings and then change its position years later when "residual boards" turn up at the last minute.

This is significant because the Special Master essentially accepted without question Taishan's *post hoc* explanations at face value, disregarded the fact that Taishan intentionally failed to put its name or other identifying information on the vast majority of the drywall it

---

[15] Taishan Information Report [Pls.' Tab 6], at TG-0208430.

admits to manufacturing, and ignored the substantial body of direct photographic evidence and circumstantial evidence presented by Plaintiffs to refute same.[16]

Perhaps the Special Master was swayed, in part, by Taishan's new attempt to play the victim, repeatedly stating or implying that it has been denied a fair opportunity to have its arguments considered. Taishan argued that it is being wrongly condemned "because it is a Chinese company," that "[t]he rhetoric has at times swung dangerously close to xenophobic prejudice," and that this is the first time it has "had an opportunity to defend itself to a fact-finder on PID."[17] In other words, Taishan audaciously claims that it has been mistreated by Plaintiffs as an appeal to prejudice when, in fact, it is simply an innocent litigant seeking their day in court which has finally arrived. To be clear, Plaintiffs' citations to Defendant's litigation misconduct are based on Taishan's documents and direct quotations from Judge Fallon's opinions addressing that misconduct – they are not based upon preconceptions.

## III.   ERRORS IN SPECIAL MASTER'S ANALYSIS THAT FLOW THROUGH THE ENTIRE REPORT & RECOMMENDATION

### A.   There Is No Evidence in the Record of Additional Manufacturers of Defective Chinese Drywall.

One of the most persuasive pieces of evidence that a given sheet of drywall was manufactured by Taishan is that there are no additional manufacturers of defective Chinese drywall. The fact that a sheet of drywall is non-Knauf and high-sulfur off-gassing immediately gives rise to a presumption that it is a Taishan (or BNBM) board. Taishan understands this, so it goes all-in on trying to refute this fact but in doing so, does not offer a single piece of evidence that there are additional manufacturers of *defective* Chinese drywall.

Testing by the CPSC confirmed that the only drywall that was reactive (*i.e.*, high-sulfur off-gassing defective) was manufactured by Taishan, BNBM, Knauf and C&K.[18] That is consistent with Judge Fallon's findings that the "Chinese drywall at issue was largely manufactured by two groups of defendants: (1) the Knauf Entities, and (2) the Taishan Entities" with the Taishan Entities including both Taishan and BNBM. *See Chinese Drywall*,

---

[16] A detailed discussion of litigation tactics that have impacted on discovery is contained in Plaintiffs' PID Brief at pages 11-22, 23-30.

[17] Defs.' PID Br. [Ex. D] at 4, 13.

[18] *See* fn.9, *supra*, discussing CPSC findings and C&K's relationship with Taishan.

2017 WL 1421627, at *1-2.[19]  The CPSC tested samples of over fifteen other manufacturers'
drywall and concluded that they "had low or no detectable emission of hydrogen sulfide as
did the drywall samples tested that were manufactured domestically."[20] There is no question
from these findings that there are multiple manufacturers of drywall imported from China **but
only four** manufacturers of **defective** Chinese drywall.

Taishan then used the mere existence of other Chinese drywall manufacturers to recast
the entire case from one that involves **defective** Chinese drywall to one that, according to
Taishan, involves any and all Chinese drywall – this is simply false.  By changing the question,
it allows Taishan to create its strawman – "one of the misconceptions that has perpetuated in
this litigation is the notion that only two companies in China manufactured drywall that was
sent to the United States in the 2005-2009 time frame" – and then knock it down with a series
of charts and statistics about overall drywall manufacturing in China and imports to the U.S.[21]
But, this is a total misdirection and was irrelevant to the issues before the Special Master.[22]  It
is indisputable that the drywall at issue here is not **all** drywall manufactured in China, **it is
high-sulfur off-gassing defective drywall** and Taishan did not offer any evidence that there are
additional, unknown manufacturers of **defective** Chinese drywall.

Beyond trying to shift the focus away from the CPSC testing of drywall samples and
Judge Fallon's findings, Taishan was apparently hoping to create an inference that if other
companies manufactured drywall in China, one could assume they also manufactured
defective drywall.[23]  There is no evidence to support this inference and in fact, the CPSC report

---

[19] Taishan also quotes this statement from Judge Fallon's opinions and notes that he has made this
exact statement in at least 27 different orders.  *See* Def.'s PID Br. [Ex. D] at 4 n.3.

[20] CSPC Report [Pls.' Tab 15] at 1-2.

[21] *See, e.g.,* Def.'s PID Br. [Ex. D] at 4-6. *See also* March 11, 2019 PID Hearing Tr., attached hereto as
Exhibit "E," at 182:19-184:16 (Taishan discussing pie chart reflecting sales of drywall from China **not
sales of defective drywall**), at 216:18-219:23 (discussing problems with pie chart and fact that only
drywall at issue is high-sulfur off-gassing defective drywall).

[22] In fact, Taishan was clever with its word choice, always referring to "manufacturers of drywall,"
and never other manufacturers of "defective drywall." *See, e.g.,* Def.'s PID Br. [Ex. D] at 6.

[23] The only other piece of "evidence" Taishan argues supports its "other manufacturer" assertion is
that Plaintiffs named other manufacturer defendants early in the litigation.  These manufacturers were
not pursued once it became clear that the evidence showed that the manufacturers of defective drywall
were Knauf, Taishan and BNBM.

rebuts it. That did not stop Taishan from going to great pains to create a false impression, specifically identifying Pingyi Baier Building Materials Co., Ltd. ("Baier")[24] as another Chinese drywall manufacturer whose samples were tested by the CPSC, but failing to note that the CPSC found Baier's drywall non-reactive (not defective).[25] Yet, in spite of the complete lack of evidence that there are other manufacturers of ***defective*** Chinese drywall, the Special Master accepted Taishan's invitation to make unsupported inferences and gave no weight to the fact that a given piece of drywall was non-Knauf and defective.

### B.    Evidence Regarding Taishan's Manufacturing Process.

It is clear that Taishan's manufacturing process and record-keeping were inconsistent and inaccurate. These inconsistencies and inaccuracies provide circumstantial evidence that further Plaintiffs' position but were given no weight by the Special Master. For example, the Special Master ignored that: (1) Taishan sold at least 86 million square feet of its drywall to American homeowners during the relevant time period, with more than 9 million square feet going directly to Florida;[26] (2) Taishan made blank boards for export to the U.S., knowing that others might add markings;[27] (3) Taishan was legally required to, but did not, ensure that its boards for sale to and use in the United States were permanently marked as "Made in China" under the Tariff Act of 1930;[28] (4) Taishan claims that its Labeling Manuals "do not relate to Taishan's foreign sales or production;"[29] (5) Taishan used a multitude of different spray marking machines, which often stopped functioning after a short period of time and had to be replaced, and Taishan had no formal protocols for giving "employees in the production department…any written instructions on using the spray machines to put markings on American-sized drywall" and, in fact, Taishan admits "[t]here was no written instruction on the [spray machine printing] operation. Usually we [Taishan] did what the

---

[24] Def.'s PID Br. [Ex. D] at 8 (citing "Baier").

[25] Pls.' Tab 15 at 2.

[26] *See* Pls.' Tab 6. *See also, generally, In re Chinese-Manufactured Drywall Prod. Liab. Litig.,* 894 F. Supp. 2d 819 (E.D. La. 2012), *aff'd,* 742 F.3d 576 & 753 F.3d 521 (5th Cir. 2014).

[27] *See,* fn. 7, *supra*.

[28] 19 U.S.C. §1304(a).  *See also* 2019 Che Dep. [Pls.' Tab 20] at 252:14-254:10 (Taishan was aware of the requirement).

[29] Pls.' Tab 71, at ¶7.

customers requested";[30] (6) Taishan's 30(b)(6) Representative implausibly suggests that the edge tape production department (i) had no computers to receive email orders,[31] and (ii) no written requests were made for edge tape (and if such a request was ever jotted down, no records of any type, electronic or otherwise, were kept of the edge tape manufacturing process);[32] (7) Taishan's repeated acknowledgments and admissions that its customers would frequently put their own markings on the Taishan-manufactured drywall;[33] (8) Taishan's corporate representative testified to the lack of accuracy in the spray markings applied to boards: "according to our memory and speculation, usually [the printer] would use the font left from the prior work, only to change the content of the spray mark.  People are always lazy;[34] and (9) the fact that Taishan did not keep records of any specific spray markings.[35] This mounting evidence is directly relevant to why there may be slight differences in font, differences in wording (*e.g.*, meet"s" versus meet, "x" versus "*", etc.), no records of spray markings, etc.  Yet, the Special Master accorded the evidence no weight.

>    **C.    Taishan's Suggested Chemical Analysis Test Doesn't Exist.**

In an effort to heighten Plaintiffs evidentiary burden in this default proceeding, Taishan suggested that in the case of boards with "white edge tape, blank boards with no markings" Plaintiffs should be required to conduct something along the lines of chemical analysis, an argument that seemed to resonate with the Special Master who cited it in footnote 6 of her R&R, even though Taishan knows no such analysis can be performed.  In doing so, Taishan raised the required evidentiary bar by creating an inference that, without the bogus chemical analysis, Plaintiffs would fail to satisfy their burden.  Taishan argued to the Special Master that with drywall samples, "chemical analysis could identify the maker of a drywall." Immediately thereafter, Plaintiffs called upon Taishan to acknowledge that Product ID by chemical analysis was a fiction; after that was denied, sought discovery on the matter; and ultimately, Taishan acknowledged that it has never done any chemical analysis and refused

---

[30] *See, e.g.,* 2019 Che Dep. [Pls.' Tab 20] at 184:4-191:11, 212:25-215:13.

[31] *Id.* at 244:23-245:8.

[32] *Id.* at 247:19-248:3.

[33] *See, e.g.,* Pls.' Tab 10, at TG-0129675-676; Pls.' Tab 11 at 2.

[34] *See, e.g., id.* at 215:13.

[35] *See, e.g., id.* at 288:14-21.

to answer as to any reliable method for Product ID by chemical analysis. Taishan's suggestion that a chemical analysis product identification system was available was pure fiction and more evidence that the gamesmanship has never stopped.[36]

## IV.    CATEGORY-SPECIFIC ISSUES WITH THE SPECIAL MASTER'S R&R

### A.    Made in China Meet[s] or Exceed[s].

This category contains markings reflected in six photos – Photos 13, 17, 18, 19, 20 and 21.   Taishan admits it manufactured markings reflected in Photos 13, 17, and 20 which contain the words "Meet or Exceeds," but denies manufacturing markings reflected in Photos 18, 19, and 21.   The difference between the markings that were admitted and those that were denied is the addition of the letter "s" to the word "Meet" – in other words, Taishan admits it manufactured boards labelled "Meet or Exceeds" but denies it manufactured those labelled "Meet**s** or Exceeds."   Because Taishan admits responsibility for these two markings, the Special Master attributed those specific markings to Taishan.   *Id*. at 9.

As it relates to markings that contain an "s" in "Meets," the Special Master reached a vastly different conclusion because Taishan "den[ied], however, that it manufactured drywall with product markings that include 'MEETS'" and according to the Special Master, "[t]he Plaintiffs have not established otherwise."   SM R&R at 9.   The Special Master was simply wrong on both counts.

First, Taishan's "denial" is not really a denial, but simply a statement that "there are no records at Taishan of any -- of ever us manufacturing boards with an S at the end of MEETS."[37]   As discussed above, this lack of records is not surprising in light of all of the evidence of Taishan's manufacturing process and poor record keeping.   Indeed, as noted above, the evidence suggests that variations in fonts such as an additional "s" could be easily predicted.   This is further corroborated by Taishan's MPF on this very issue.   Taishan incorrectly filled out the MPF, denying responsibility for boards marked "Meet or Exceeds" because it had no records of manufacturing boards with that marking, but then after the

---

[36] *See* March 11, 2019 PID Hearing Tr. [Ex. E] at 232:14-19 ("they could do it that way . . . it has the same chemical analysis that a Taishan board has."); *see also* Taishan's Resp. and Obj. to PSC's Supp. Doc. Requests, attached hereto as Exhibit "F" (responses to discovery requests regarding purported chemical analysis); April 18, 2019 Eickhoff Letter to Serpe regarding chemical analysis testing, attached hereto as Exhibit "G."

[37] March 11, 2019 PID Hearing Tr. [Ex. E] at 192:2-6.

"residual boards" that said "Meet or Exceeds" were found in late-2018, it had to accept responsibility for those despite prior denials, SM R&R at 9.[38]

Furthermore, Photo 18, for which the Special Master denied attribution, depicts a board with the marking "Meets" with an "s," and illustrates that the board also contains the aqua blue Taihe edge tape that Taishan admits making.[39] Taishan has admitted that it manufactured boards with the aqua blue edge tape. Taishan Br., Ex. B, at 23; *see also* SM R&R at 8. Additionally, the font and print in Photo 18 is identical to Photo 17, which Taishan admits manufacturing.

The same is true for the version of Photo 19 that was provided to the Special Master as part of Plaintiffs' Product ID presentation. The same board with the marking "Meets" with an "s" also contains Taihe edge tape.[40] ***This is direct evidence that Taishan manufactured boards with the marking "Meets" with an "s."*** And, to make matters worse, the Special Master asked Taishan directly about the Taihe Tape in Photo 19 at the hearing and Taishan did not even pretend to offer explanation but simply repeated its position that it has no records indicating it manufactured boards with the marking "Meets" with an "s." Tr. at 191:20-192:10. Even with this "smoking gun" evidence, the Special Master ruled in favor of Taishan without so much as mentioning the direct photographic evidence in Photos 18 and 19. The Special Master also ignored the fact that the numerical sequence in Photo 19 is identical to Photo 9, which the Special Master found attributable to Taishan. In addition, Taishan admitted that

---

[38] *See* fn. 8, *supra*, (discussing discovery of residual boards and Taishan's eventual acknowledgement of responsibility for "Meet or Exceeds" marking).

[39] March 11, 2019 PID Hearing Tr. [Ex. E] at 191:3-19. *See also* Photo 18 [Pls.' Tab 57]. Other pictures of the same exact board that is reflected in Photo 18 show the edge tape even more clearly. *See* Dennis S. Hocker, 509 E. Sheridan Street, Unit 304, Dania, Florida, BrownGreer Doc 191809, at 11, attached hereto as Exhibit "H." Numerous pictures produced in this litigation illustrate the same "Meets" with an "s" along with aqua blue Taihe edge tape that show conclusively that Taishan does, in fact, manufacture boards with "Meets" with an "s" "or Exceeds." *See, e.g.*, Priority Plaintiffs John and Bertha Hernandez, 3516 N. Perry Avenue, Tampa, FL, BrownGreer Doc 365098, at 10-11, attached hereto as Exhibit "I."

[40] *See* Plaintiffs' PID Powerpoint, attached hereto as Exhibit "C," at Slides 78, 82 (all photos of the same board).

it manufactured Photo 15. Although the "s" was obscured in Photo 15, other pictures with this identical marking and font reveal the word "Meets" following the comma in the photo.[41]

In addition to the direct photographic evidence, there is voluminous circumstantial evidence that supports attribution of all photos in the "Meet[s] or Exceed[s]" category to Taishan. The Special Master conceded that the "font variations are minimal" among the pictures with that variation to be expected because of the numerous production lines and machines in use by Taishan. SM R&R at 8 & n.5. So, the Court could simply walk through the facts: (1) drywall with the "Meet[s] or Exceed[s]" is defective; (2) the "Meet[s] or Exceed[s]" is not a Knauf product; (3) Taishan admits it made drywall marked "Meet or Exceeds"; (4) boards with the "Meets or Exceeds" marking have been found to contain Taihe edge tape; (5) Taishan admits that its use of singular and plural was not always accurate;[42] (6) the "Meets" with an "s" "or Exceeds" marking is the same font as other admitted markings; and (7) Taishan had previously not taken responsibility for "Meet or Exceeds" markings it manufactured until it found the residual boards in December 2018. Add to that the evidence discussed above with respect to Taishan's manufacturing process and record keeping.

This evidentiary mountain is met with only Taishan's self-serving statements: (1) that the "Meet[s] or Exceed[s]" label is generic; (2) that these markings could be from some unidentified competitor; and (3) that it has no records of using "Meets" with an "s" marking. Nevertheless, the Special Master accepted, at face value, Defendant's unreliable, incredible and self-serving denials and ignored not only the circumstantial evidence discussed above, but also the direct photographic evidence. This is clear error.

**B.   Various Drywall Dimensions, Including 4feetx12feetx1/2inch.**

It is undisputed that Taishan manufactured drywall with the word "Drywall" and the phrase "4feetx12feetx1/2inch." This category involved 7 photos – Photos 5, 6, 7, 8, 9, 10 and 11. Taishan does not deny that it made the boards with the markings reflected in Photo 2 which shows the phrase "DrYwall" with a capital "Y" and the phrase "4feetx12feetx1/2inch."[43] SM R&R at 9. In addition, Taishan acknowledged in its MFP that

---

[41] *See* Photo 15 [Pls.' Tab 55]; *see also* John and Bertha Hernandez, BrownGreer Doc. 365099, at 14, 19 and 3650987, at 7, attached hereto as Exhibit "J."

[42] 2019 Che Dep. [Pls.' Tab 20] at 107:13-18.

[43] Def.'s PID Br. [Ex. D], at 41-44.

it made boards with the phrase "DRYWALL 4feetx12feetx1/2inch." Beyond that, Taishan once claimed it did not have any records to confirm or deny whether it made boards with the markings contained in the remaining photos and denies responsibility primarily because some of the photos reflect marking where the word "Drywall" is written in different font (*e.g.*, all capital letters – even though their MFP states "DRYWALL" in all capital letters) and several of the photos reflect an asterisk instead of a multiplication sign between the dimensions (*i.e.*, "4feet*12feet*1/2inch"). Based upon Taishan's admission, the Special Master found the markings found in Photo 2 to be attributable to Taishan and then, found Taishan responsible for the markings in Photo 5 because it used the same words as the MFP – "Drywall 4feetx12feetx1/2inch" – and Photo 9 because it had the same font for the word "DrYwall" with a capital "Y" as the admitted Photo 2. In other words, the Special Master only attributed the drywall markings in this category to Taishan when it admitted it or the markings in a given photo were identical to the markings it admitted.

The Special Master offers no explanation for denying Taishan's responsibility for the markings in Photos 6, 7, 8, 10 and 11. By finding Taishan liable only for the markings it admitted, either directly or indirectly, and accepting Taishan's self-serving representations with respect to their use of capital lettering or asterisks, the Special Master essentially made Taishan's credibility the determining factor in her analysis. And, what is troubling is that she did so in the face of compelling evidence showing Taishan's representations were inaccurate, and significant circumstantial evidence linking these boards to Taishan. In addition to the arguments below, the Special Master ignored all of the evidence regarding Taishan's manufacturing processes and record-keeping discussed above.

*First*, there is a fundamental problem with the Special Master's denial of the markings in Photo 6. That denial contained no explanation, which is significant because the Special Master appropriately found the markings in Photo 5 attributable to Taishan because "the marking on photo #5 reflects the same words listed on [Taishan's MPF], specifically "Drywall 4feetx12feetx1/2inch" – and Photo 6 is identical to Photo 5.[44] SM R&R at 9. Both contain

---

[44] The exemplar that is reflected in Photo 6 is cut off because it came from a ripped piece of drywall so it shows only "Drywall 4feetx12" with the jagged edge of the tear cutting through the "2" but there is no plausible dispute that had the piece of drywall not been torn, the remainder of the phrase – "feetx1/2inch" would follow what is seen in the photo.

the same words listed on Taishan's MPF, namely the "Drywall 4feetx12feetx1/2inch."[45] Both contain the same elongated "y" and both contain the same font. The only difference is that the markings in Photo 6 are printed in dot matrix. That difference is inconsequential particularly given the fact that other markings in dot matrix are (correctly and appropriately) attributed to Taishan. Furthermore, the dot matrix printing in Photo 6 (including the irregular/stray marks, particularly the letter "D") are identical to those that appear in Photo 17 (which the Special Master found attributable to Taishan).

*Second*, the Special Master's determination that the nearly identical marking – "Drywall 4feet*12feet*1/2inch" (an asterisk in place of the multiplication sign) – contained on the drywall in Photos 7 and 8 should not be attributable to Taishan flies in the face of the evidence. Indeed, the Special Master's refusal to infer that drywall with the nearly identical markings "Drywall 4feet*12feet*1/2inch" was also manufactured by Taishan can only be explained by her requirement that Taishan's responsibility be shown with *direct* evidence – *i.e.* an admission by Defendants – that Taishan used an asterisk in representing the board's dimensions. Taishan's key defense, beyond claiming that "other manufacturers may have produced drywall with these markings," was that it has not uncovered any records showing that it used an asterisk in place of a multiplication sign.[46] Yet, not only did Plaintiffs produce evidence directly calling into question this defense, namely numerous emails between Taishan personnel and United States' customers in which Taishan used asterisks instead of multiplication signs when discussing drywall dimensions,[47] but also Taishan initially admitted manufacturing the type of drywall depicted in Photo 35 in which an asterisk is used.[48] Photos 7 and 8 should have been attributed to Taishan.

*Finally*, with respect to the variations in the capitalization of the word "Drywall," the Special Master denied attribution for the markings in Photo 10 ("DRYWALL") and Photo 11 ("DryWall") without explanation. First, "DRYWALL" with all capital letters was identified on Taishan's MPF. In addition, Taishan admittedly has no idea what style the

---

[45] Pls.' Tab 61.

[46] *See* 2019 CHE Dep., [Pls.' Tab 20], at 129:16-25; *see also* Def.'s PID Br. [Ex. D], at 44.

[47] *See, e.g.*, Pls.' PID Br. 49, Tabs 62-64, 65 and 67.

[48] *See* MDL Rec. Doc. 8310-1, at 6.

word "Drywall" took when it was placed on their boards because it has no records. It is clear that it made boards with the specific dimensions described above and that those boards had the word "Drywall" on them in different forms. Given that Taishan manufactured defective high-sulfur "DrYwall" with a capital "Y," is it *more likely than not* that it also manufactured defective "DryWall" with a capital "W," particularly given the evidence in the record about the inconsistency of its manufacturing process, or instead that some other unknown and unidentified company manufactured defective high-sulfur "DryWall" with a capital W? The weight of the evidence clearly points to Taishan.

### C. IMT Gypsum

It is undisputed that Taishan manufactured drywall with "IMTGYPSUM" printed on it,[49] but the Special Master hinges her opinion on a distinction drawn between Taishan manufacturing board with "IMT Gypsum" printed on edge tape (admitted) vs. "IMT Gypsum" printed with spray markings, as opposed to edge tape (not admitted). Again, the Special Master accepted, at face value, the self-serving testimony of Defendants that it did not use "IMTGypsum.com" (simply because it found no records "that Taishan had sprayed the marking of 'IMT' on the back of its boards"[50]) and that it has no evidence of having used asterisks instead of multiplication signs.[51]

This conclusion flies in the face of the overwhelming weight of the evidence, including the facts referenced above with respect to Taishan's manufacturing process as well as the following: (1) the existence of at least one 2006 Sales Plan Notification from Taishan's Sales Department for the manufacture of IMT Gypsum drywall to Taishan's Management Department wherein the edge tape was to clearly read "IMT Gypsum" and a spray marking was to be attached (Taishan's production of the Sales Plan Notification did not include the attached spray marking);[52] (2) when asked what the "IMTGypsum" edge tape identified in the Manufacturer Profile Form looks like, Mr. CHE responded, "I was not able to discover

---

[49] SM R&R at 6 (citing Def.'s Tab 29).

[50] 2019 Che Dep. [Pls.' Tab 20] at 60:23-25.

[51] *See* SM R&R at 6.

[52] *See* Pls.' Tab 15, at TG-PID-000041-42.

the edge tape during my depo preparation as the corporation's representative";[53] (3) Taishan initially admitted to the manufacture of the type of drywall depicted in Photo 35 in which an asterisk is used;[54] and (4) Taishan's numerous emails to United States customers listing drywall dimensions using asterisks in lieu of a multiplication sign (*e.g.*, 12'*4'*1/2").[55]

Taking the fact that Taishan admittedly manufactured board marked "IMTGYPSUM" and the Sales Plan Notification indicated that there were to be spray markings (although not attached) would certainly make it more probable than not, absent evidence to the contrary, that the boards in questions were manufactured by Taishan.

### D. ProWall

The evidence presented to the Special Master clearly established that Taishan manufactured ProWall for a Chinese entity called Run & Fly (Jinan) New Materials Co. Ltd. who imported that drywall into the U.S.[56] SM R&R at 7. In fact, it is undisputed that Taishan sold at least 9,936 sheets of blank drywall to Run & Fly in 2006.[57] The evidence also shows that Run & Fly sold that same amount, 9,936 sheets of ProWall, to a North Carolina entity called Manchester In Home and Manchester subsequently sold, that same amount, 9,936 sheets of ProWall, to Stock Building Supply whose Florida locations distributed ProWall to installers in Florida. With these facts, it cannot seriously be questioned that Plaintiffs have established that it was "more likely than not" that Taishan manufactured ProWall.

However, the Special Master found that Plaintiffs did not meet their burden relying upon: (1) the suspect and self-serving deposition testimony of Taishan's corporate representative who had claimed that the batch of drywall it manufactured for Run & Fly was only a test batch and Run & Fly ultimately went with a less expensive manufacturer to fulfill

---

[53] *See, e.g.,* 2019 Che Dep. [Pls.' Tab 20] at 67:22-24.

[54] *See* MDL Rec. Doc. 8310-1, at 6. (While the document refers to "4feetX12feetX1/2inch" the photograph itself depicts "4feet*12feet").

[55] *See, e.g.,* Pls.' Tabs 62-64. *See also* March 11, 2019 PID Hearing [Ex. "E"] at 144:17-146:2 (Taishan admits to manufacturing DUN drywall. The "Product Markings" column on the MPF is blank for DUN drywall but indicates under the "Edge Sealing Tape Markings" column that it contains "Edge sealing tape: DUN Drywall." However, contrary to the MPF, the DUN boards have "DUN Drywall" markings on the boards themselves, not the edge tape, which Taishan admits it manufactured.).

[56] Pls.' PID Br. [Ex. A] at 40-43.

[57] *See, e.g.*, Pls.' Tab 19; 2019 Che Dep. [Tab 20] at 146:20-148:15.

17

their drywall needs; and (2) Taishan's claim that it has no record of having manufactured boards with the phrase "Meets ASTM C36/C1396 STANDARD," which appears on the ProWall boards as opposed to "Meet or Exceeds" that is indicated in the MPF.[58]

The only evidence in the record that any other entity produced ProWall drywall for Run & Fly is the self-serving testimony of Taishan's Rule 30(b)(6) witness.[59] **Yet, the Special Master found this denial to be conclusive**. This is precisely where Taishan's credibility problem comes into play and yet, the Special Master gave it no weight. Instead, the Special Master found this speculative and self-serving "evidence" overcame the direct and unrefuted evidence that Taishan provided Run & Fly with ProWall who then provided that drywall downstream to Stock who used that drywall in Florida.

### E. White Edge Tape, Boards with No Markings or Boards with No Markings Other Than Numbers.

There is no dispute that Taishan manufactured boards in this category, and noting that "Plaintiffs assert that the Taishan Defendants manufactured and exported nearly one million square meters of blank board with white edge tape to the United States," the Special Master concedes "it is likely that at least some of the boards in the Florida claimants' homes that fit this Product ID category were manufactured by the Taishan Defendants." SM R&R at 10. Yet, the Special Master declined to attribute this Product ID Category to Taishan because without more information, she "is unable to determine what portion or which claimants' homes" contained boards manufactured by Taishan. *Id*. In other words, the Special Master declined to hold Taishan accountable for none of the "nearly one million square meters of blank board[s]" because there would be no way to determine if a given "blank" board was manufactured by Taishan or someone else. The intentional failure to mark one's product should not provide a free pass to manufacturers of those products if they cause harm.

The relevant inquiry in this default proceeding is whether under the totality of the circumstances, it is more likely than not that Taishan manufactured the boards in the Category that were used in claimants' homes. Plaintiffs satisfied their burden of proving that

---

[58] The Special Master also noted Taishan's claim that their invoice with Run & Fly was a "common invoice" indicating for use in China as opposed to an "export invoice," a fact that hardly seems relevant in that the manufactured boards were American-sized and the evidence noted by the Special Master shows the boards ended up in the United States. SM R&R at 7.

[59] 2019 Che Dep. [Pls.' Tab 20] at 150:7-151:21; *see also* Def.'s PID Br. [Ex. D] at 34.

Taishan manufactured boards in this category generally, but the Special Master argues that Plaintiffs cannot meet their burden specifically as to each board. First of all, Plaintiffs are entitled to the reasonable inference that this non-Knauf high-sulfur off-gassing defective drywall was made by Taishan. Second, it is Taishan's manufacturing process and procedures, or lack thereof, that created the identification problem by failing to property mark their boards as required under U.S. law.[60] That alone should shift the burden to Defendant to refute that it did not manufacture a given board.

Attribution to Taishan is also supported by the fact that: (1) Taishan's documents admit to the manufacture and export of nearly one million square meets of blank board with white edge tape to the U.S.;[61] (2) Taishan admits in its MPF that it manufactured 351,745 sheets of drywall with no "Product Markings" and no "Edge Sealing Tape Markings" from 3/13/2006 to 9/15/2006;[62] (3) Taishan admits in its MPF that it manufactured 19,565 sheets of drywall with no "Product Markings" but "Edge Sealing Tape Markings" identified as "White Edge Sealing Tape (without words printed thereon)" from 4/26/2006-4/30/2007;[63] (4) Taishan reported, in April of 2006, that the "labeling for the remaining 1020749.452 square meters [10,987,347.10 square feet] of gypsum boards is *unknown*";[64] (5) Taishan admits it manufactured boards without any product or edge sealing tape markings, which were exported by Taian Taigo Trading Corp.;[65] and (6) there is no evidence (no document and no witness) who can say that there was ever any defective blank board with white edge tape exported to the U.S. by any competitor or other manufacturer.[66]

In response, Defendant argues that (1) other companies manufactured drywall, ***not defective drywall***, with white backing or white edge tape that contained no other markings;

---

[60] Pls.' PID Br. [Ex. A] at 28-30.

[61] *See* Pls.' Tab 10; *see also* Taishan MPF [Pls.' Tab 11] at lines 11, 62-63, 131, 198-201, 224-228, 231, 235.

[62] *See* Taishan MPF [Pls.' Tab 11] at lines 2-5, 16-21, 24-28, 122, 218 (totaling 351,745 sheets of drywall with no "Product Markings" and no "Edge Sealing Tape Markings" markings).

[63] *See id*. at lines 11, 62-63, 131, 198-201, 224-228, 231, 235 (totaling 19,565 sheets of drywall with no "Product Markings" but "White Edge Sealing Tape (without words printed thereon)").

[64] *See* Pls.' Tab 68, (emphasis supplied).

[65] *See* Pls.' Tabs 11 and 68.

[66] *See* 2019 Che Dep. [Pls.' Tab 20] at 27:5-13.

19

and (2) Plaintiffs should provide a "chemical analysis" to trace the drywall to Taishan – the very "chemical analysis" that Taishan knows is not possible to conduct.[67]  Yet, the Special Master did not stop to weigh the evidence (since Taishan presented none) and merely accepted Taishan's argument that more was required than the evidence set forth above for Plaintiffs to meet their burden, even going so far as to seemingly accept Taishan's bogus "chemical analysis" claim.  Under the Special Master's approach, Taishan is allowed to escape liability for millions of square feet of defective drywall that Taishan *admits* was shipped to the U.S.[68]

### F.    C&K Drywall.

The Special Master found that Taishan was not responsible for boards bearing markings in this Category.  SM R&R at 5.  Taishan's key rebuttal to its responsibility for this Category is that these boards were manufactured by a competitor, Shandong Chenxiang Building Materials Co., Ltd. ("Shandong Chenxiang").  *Id*.  Three key points were left unaddressed by the Special Master's analysis: (1) Shandong Chenxiang is noted as the shipper, not the manufacturer, of the drywall in question on many of Taishan's documents; (2) Taishan regularly fulfilled orders for American-sized drywall during times of increased demand for smaller gypsum board factories; and (3) York Building Supply imported C&K drywall, and (4) evidence indicated that Taishan had a contractual relationship with York Building Supply/International Materials Group to produce drywall.[69]  In addition, Shandong Chenxiang eventually went bankrupt and was ultimately acquired by BNBM.[70]

## V.    CONCLUSION

For these reasons, the Court should sustain Plaintiffs' Objections to the Special Master's R&R and find that the following Product ID Categories (and markings contained in all photos therein) are attributable to Taishan:  C&K; IMT Gypsum; ProWall; Meet[s] or Exceed[s]; Dimensions; and White Edge Tape.

---

[67] *See* Section III.C, *supra*.

[68] *See, e.g.*, SM R&R at 10 (citing Def's Tabs 27-29 and noting that "it is likely that at least some of the boards in the Florida claimants' homes that fit this Product ID were manufactured by the Taishan Defendants").

[69] *See, e.g.*, 2019 CHE Dep. [Pls.' Tab 20] at 68:11-15, 133:10-138:25; *see also* Pls.' Tabs 42-45.

[70] *See* fn.9, *supra*, discussing CPSC findings and C&K's relationship with Taishan.

20

Dated: April 29, 2019

Respectfully Submitted,

/s/ Patrick S. Montoya, Esq.
Patrick Shanan Montoya
Fla. Bar No. 0524441
Email: Patrick@colson.com
Colson Hicks Eidson
255 Alhambra Circle, PH
Coral Gables, FL  33134-2351
Telephone:  (305) 476-7400
Facsimile:  (305) 476-7444
*Interim Lead Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Southern District of Florida by using the CM/ECF System, which will send a notice of electronic filing on this 29th day of April, 2019.

/s/ Patrick S. Montoya, Esq.
Patrick Shanan Montoya
Fla. Bar No. 0524441
Email: Patrick@colson.com
Colson Hicks Eidson
255 Alhambra Circle, PH
Coral Gables, FL 33134-2351
Telephone: (305) 476-7400
Facsimile: (305) 476-7444
*Interim Lead Counsel for Plaintiffs*

22

# EXHIBIT

# "A"

# FILED UNDER SEAL

# EXHIBIT

# "B"

# <u>FILED UNDER SEAL</u>

# EXHIBIT

# "C"

# FILED UNDER SEAL

# EXHIBIT

# "D"

# <u>FILED UNDER SEAL</u>

# EXHIBIT

# "E"

Case 2:09-md-02047-EEF-MBN   Document 22397-7   Filed 12/09/19   Page 32 of 343
Case 1:11-cv-22408-MGC   Document 259   Entered on FLSD Docket 04/29/2023   Page 2 of 281
March 11, 2019

1           IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF FLORIDA
2
3   EDUARDO AND CARMEN        )
    AMORIN, et al.,           )
4   individually, and on      )   Case No.
    behalf of all others      )   1:11-CV-22408-MGC
5   similarly situated,       )
                              )
6        Plaintiffs,          )
                              )
7   v.                        )
                              )
8   TAISHAN GYPSUM CO., LTD.  )
    F/k/a SHANDONG TAIHE      )
9   DONGXIN CO., LTD.; TAIAN  )
    TAISHAN PLASTERBOARD      )
10  CO., LTD., et al.,        )
                              )
11       Defendants.          )
12
13             Monday, March 11, 2019
14
15        HEARING RE: PRODUCT IDENTIFICATION,
16   held before Special Master Tiffani G. Lee at
17   the offices of Holland & Knight LLP,
18   701 Brickell Avenue, Miami, Florida,
19   commencing at 9:45 a.m. on the above date,
20   before Michael E. Miller, Registered
21   Diplomate Reporter, Certified Realtime
22   Reporter and Notary Public.
23              — — —
24          GOLKOW LITIGATION SERVICES
        877.370.3377 ph | 917.591.5672 fax
25           deps@golkow.com

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 33 of 343
Case 1:11-cv-22408-MGC Document 25 Entered on FLSD Docket 04/29/2019 Page 3 of 281
March 11, 2019

```
 1     A P P E A R A N C E S:
 2     SPECIAL MASTER:
 3          TIFFANI G. LEE, ESQUIRE
            HOLLAND & KNIGHT, LLP
 4
 5     COUNSEL FOR THE PLAINTIFF CLASS:
 6          COLSON HICKS EIDSON
            BY:  PATRICK S. MONTOYA, ESQUIRE
 7               patrick@colson.com
            255 Alhambra Circle
 8          Penthouse
            Coral Gables, Florida 33134
 9          (305) 476-7400
10
11          LAW OFFICES OF RICHARD J. SERPE PC
            BY:  RICHARD J. SERPE, ESQUIRE
12               rserpe@serpefirm.com
            580 East Main Street
13          Suite 310
            Norfolk, Virginia 23510
14          (757) 233-0009
15
16          LEVIN SEDRAN & BERMAN
            BY:  SANDRA L. DUGGAN, ESQUIRE
17               sduggan@lfsblaw.com
            510 Walnut Street
18          Suite 500
            Philadelphia, Pennsylvania 19106
19          (215) 592-1500
20
21          IRPINO LAW FIRM
            BY:  PEARL A. ROBERTSON, ESQUIRE
22               probertson@irpinolaw.com
            2216 Magazine Street
23          New Orleans, Louisiana 70130
            (504) 525-1500
24
25
```

Case 2:09-md-02047-EEF-MBN Document 22397 Filed 12/09/19 Page 34 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 4 of 281
March 11, 2019

```
 1    A P P E A R A N C E S:
 2        BARRIOS KINGSDORF & CASTEIX LLP
          BY:  EMMA SCHWAB, ESQUIRE
 3            eschwab@bkc-law.com
          701 Poydras Street
 4        Suite 3650
          New Orleans, Louisiana 70139-3650
 5        (504) 524-3300
 6
 7        LAW OFFICE OF ALLISON GRANT, P.A.
          BY:  ALLISON KAY GRANT, ESQUIRE
 8            agrant@allisongrantpa.com
          14 Southeast 14th Street
 9        Boca Raton, Florida 33432
          (561) 994-9646
10
11    COUNSEL FOR TAISHAN GYPSUM COMPANY:
12        ALSTON & BIRD LLP
          BY:  BERNARD TAYLOR, ESQUIRE
13            bernard.taylor@alston.com
              CHRISTY HULL EIKHOFF, ESQUIRE
14            christy.eikhoff@alston.com
          One Atlantic Center
15        1201 West Peachtree Street
          Atlanta, Georgia 30309-3424
16        (404) 881-7000
17
          ALSTON & BIRD LLP
18        BY:  DAVID VENDERBUSH, ESQUIRE
              david.venderbush@alston.com
19        90 Park Avenue
          15th Floor
20        New York, New York 10016
          (212) 210-9400
21
22        AKERMAN LLP
          BY:  ENJOLIQUE D. AYTCH, ESQUIRE
23            enjolique.aytch@akerman.com
          350 East Las Olas Boulevard
24        Suite 1600
          Fort Lauderdale, Florida 33301
25        (954) 463-2700
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 35 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 5 of 281
March 11, 2019

```
 1    A P P E A R A N C E S:
 2    COUNSEL FOR BNBM DEFENDANTS:
 3       ORRICK HERRINGTON & SUTCLIFFE LLP
         BY:  ANDREW K. DAVIDSON, ESQUIRE
 4            adavidson@orrick.com
         The Orrick Building
 5       405 Howard Street
         San Francisco, California 94105
 6       (415) 773-5700
 7
         ABALLI MILNE KALIL
 8       BY:  JOSHUA D. POYER, ESQUIRE
              jpoyer@aballi.com
 9       2250 SunTrust International Center
         One Southeast Third Avenue
10       Miami, Florida 33131
         (305) 373-6600
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

March 11, 2019

```
 1                    PROCEEDINGS

 2              (March 11, 2019 at 9:45 a.m.)

 3              SPECIAL MASTER LEE:  Good

 4      morning, everyone.  This is Tiffani

 5      Lee, court-appointed special master in

 6      the case styled Amorin v. Taishan

 7      Gypsum, et al pending in the Southern

 8      District of Florida.

 9              We're here at the Miami office

10      of Holland & Knight for a hearing on

11      product identification issues that

12      will be related to the property damage

13      claims that I've been appointed to

14      adjudicate.

15              We'll first start with

16      appearances of the counsel.  For the

17      plaintiffs.

18              MR. MONTOYA:  Your Honor,

19      Patrick Montoya.

20              MR. SERPE:  Richard Serpe.

21              MS. DUGGAN:  Sandra Duggan from

22      Levin Sedran & Berman.

23              MS. GRANT:  Allison Grant.

24              MS. SCHWAB:  Emma Schwab.

25              MS. ROBERTSON:  Pearl
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 37 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 7 of 281
March 11, 2019

```
 1          Robertson.
 2                  MR. POYER:  Joshua Poyer for
 3          Beijing National Building Materials
 4          PLC.
 5                  MR. DAVIDSON:  Andrew Davidson
 6          for BNBM PLC.
 7                  MS. AYTCH:  Enjolique D. Aytch
 8          for Defendant Taishan.
 9                  MR. TAYLOR:  Bernard Taylor for
10          Taishan.
11                  MR. VENDERBUSH:  David
12          Venderbush for Taishan.
13                  MS. EIKHOFF:  Christy Hull
14          Eikhoff for Taishan.
15                  SPECIAL MASTER LEE:  Thank you
16          very much, and we'll turn it over to
17          plaintiff's counsel for presentation.
18                  MR. MONTOYA:  Thank you.
19                  Your Honor, thank you for
20          hosting us today.  I'm going to call
21          you Your Honor just because I'm much
22          more comfortable in that manner and I
23          won't trip over the phrasing
24          otherwise.
25                  You were appointed with a very
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 38 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 8 of 281
March 11, 2019

1    serious responsibility in this case.

2    We're here on behalf of 1700

3    plaintiffs that were affected in

4    Florida by Chinese drywall.

5         Your job, while a large one, is

6    also very limited in scope.  One of

7    the things we will talk about today I

8    think is, in many ways, the simplicity

9    of what you've been tasked with, but

10   the difficulties that the defendants

11   have made of this case and of the

12   information that's been available.  So

13   on behalf of those homeowners, I thank

14   you for your time today.

15        A little brief background on

16   Chinese drywall, and frankly, why we

17   are here.  Back in 2009 in this group

18   we filed among the first cases in the

19   Southern District of Florida were

20   Chinese drywall.  Basically, what

21   Chinese drywall does is it off-gases

22   sulfur.

23        There were mines in China that

24   had a layer of sulfur shale that ran

25   throughout the mines, was not cooked

March 11, 2019

1          out of the drywall when the drywall

2          was made.  It got into people's homes

3          and it off-gases, and that off-gassing

4          basically affects what we call

5          anything with a button, anything that

6          has silver, metal or copper.

7               So all the electronics, silver

8          tarnishes, it oxidizes the silver, and

9          computers, anything with a chip or a

10         motherboard, TVs.  It also affects

11         copper plumbing, so wiring and

12         plumbing as well.

13              It affected the -- the only

14         remedy and the court-ordered remedy

15         and the court-ordered protocol is to

16         rip and tear a home down to its studs,

17         take all the drywall out, HEPA vacuum

18         it, wipe it down, replace all the

19         appliances, all the affected wiring,

20         all the affected plumbing.  That's the

21         remedy.

22              So if you think to myself, this

23         is my home, this is my -- for most

24         people it's their biggest investment

25         in Florida.  The Chinese drywall was

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 10 of 343
Case 2:11-cv-22408-MGC Document 2 Entered on FLSD Docket 04/29/2019 Page 10 of 281
March 11, 2019

```
1           imported from '05 to '09.  That
2           coincided with the building boom that
3           was going on at that time and also the
4           hurricanes that were going on at the
5           time, and the shortage of drywall in
6           the U.S.
7                Typically, companies would not
8           import drywall because it wasn't
9           economical to do so.  Drywall is
10          heavy.  It costs a lot of money to
11          ship, so the U.S. gypsum market has
12          always been healthy and always been
13          able to satisfy demand.
14               But when the hurricanes
15          happened back in '05 to '09, the
16          building boom, the U.S. market simply
17          couldn't take on the demand.  So U.S.
18          distributors and others started
19          calling over to China to get drywall.
20          That's how the drywall problem started
21          was due to the building boom and to
22          the hurricanes.
23               You will hear some allusions in
24          this case and there was testimony from
25          the corporate heads of Taishan that
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 41 of 343
Case 1:11-cv-22408-MGC Document 2 Entered on FLSD Docket 04/29/2019 Page 11 of 281
March 11, 2019

1       essentially U.S. consumers were stuck

2       in a foreclosure crisis and now

3       they're blaming Chinese drywall.

4       Nothing could be further from the

5       truth.

6               The drywall has been found

7       defective.  The Court's found it

8       defective.  And we are here in a

9       default proceeding, so we're not here

10      to argue about the defective nature of

11      the drywall, but we wanted to give

12      Your Honor a background of how it

13      impacts people's lives.

14              I mentioned the foreclosure

15      aspect of it because I do believe it

16      goes to the conduct and overall

17      demeanor of the defendants.

18              For the defendants to come in

19      and blame the U.S. consumer saying:

20      Well, they can't pay their mortgages,

21      they got in over their head and now

22      they want to blame defective drywall

23      is indicative of the stance that these

24      companies have taken in this

25      litigation and the litigation abuse

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 12 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 12 of 281
March 11, 2019

1    that has gone on in this case.

2         At no time when I talk of the

3    litigation abuse or the -- we say

4    misrepresentations, I will say lies of

5    Taishan, I do not impute any of that

6    to lawyers in this room.  I think the

7    lawyers in the room are fine people.

8    I think they're doing the best job

9    they can with a very difficult and

10   very recalcitrant client.

11        We often go to hearings and

12   before or after a hearing you may

13   represent folks, I've represented

14   folks and I've had to tell people on

15   the other side, hey, you know what,

16   I'm having a hard time with my client.

17   We're going to fight on this issue,

18   but I really need an order to help

19   push my client towards what it needs

20   to do.

21        I have not had that

22   conversation with these folks in this

23   room on the other side of the table,

24   but I get the sense from what has

25   happened in this case, and I'm going

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 43 of 343
Case 1:11-cv-22408-MGC  Document 29 Entered on FLSD Docket 04/29/2019 Page 13 of 281
March 11, 2019

```
1          to go through it, that they're dealing

2          with a very difficult and recalcitrant

3          client.

4               So I don't want to have

5          anything construed that I'm saying

6          here as against the lawyers in this

7          room.  I think what they're dealing

8          with is a very, very difficult client.

9               And as an example, Taishan sat

10         on the sidelines for a year in this

11         case before they came in.  They were

12         defaulted, served through The Hague

13         Convention properly, and on the eve of

14         the default, on the appeal, they came

15         in and they only came in to contest

16         jurisdiction.

17              So the MDL Court, Judge Fallon,

18         allowed them to contest jurisdiction,

19         and we did discovery on jurisdiction

20         for about a year and a half to two

21         years.

22              When it went up on appeal, we

23         prevailed on jurisdiction, the

24         plaintiffs prevailed on jurisdiction

25         in front of two panels at the Fifth
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 14 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 14 of 281
March 11, 2019

1    Circuit.  This was one of the

2    statements in Taishan's brief.

3         Over its entire history, TG,

4    Taishan Gypsum, made only two sales to

5    a U.S. company.  That's back in 2010.

6         And you'll see from the heading

7    of the slide, Taishan actually

8    manufactured and shipped 86 million

9    square feet of drywall to the U.S.

10   I'm laying this out because you will

11   see how the story changes and evolves.

12   So I want you to remember two

13   shipments -- or sales of drywall to a

14   U.S. company.

15        May 11th, 2009, this is about

16   three or four months after the first

17   lawsuit was actually filed.  Taishan

18   hasn't appeared in the cases at all,

19   but their own internal documents show

20   that by May 11th, 2009, they're

21   already categorizing and able to

22   organize and report to themselves, to

23   their parent company, how much drywall

24   they had shipped to the U.S.

25        Now, back on May 11th, 2009, we

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 45 of 343
Case 1:11-cv-22408-MGC Document 23 Entered on FLSD Docket 04/29/2019 Page 15 of 281
March 11, 2019

 1    didn't have this document.  We didn't

 2    have it in 2010.  We didn't have it in

 3    '11, '12, '13, '14, or '15.  What we

 4    found throughout this case is that we

 5    get documents two, three, four, five

 6    years later down the road after

 7    they've been produced.

 8            So why am I telling you all

 9    this?  Because the fight on

10    jurisdiction was how much drywall did

11    they ship to Florida, how much drywall

12    did they ship to Louisiana,

13    North Carolina, Virginia.  And what we

14    found was a pattern of hiding

15    information and not being forthcoming

16    with information.

17            So this is by Taishan's own

18    admission in their own documents that

19    we didn't get until 2015.  This is at

20    Tab 6 in the binder: 446,000 meters of

21    drywall in 2005, 5.9 million square

22    meters, 240,000 square meters, 16,000

23    square meters.  Contrast that with

24    their statement to the Fifth Circuit

25    that they only made two sales to a

1       U.S. company.

2               October 20th, 2010, yet again

3       another document that we did not have

4       until 2015.  Six months after

5       litigation was filed against them and

6       they hadn't answered -- they knew that

7       they had been sued.  They had already

8       retained counsel.  They were already

9       talking to lawyers about what was

10      happening.

11              They were making their own

12      internal reports about what was there.

13      They already knew -- is there -- I

14      don't know if there's a pointer on

15      this.  Let me find one that has a

16      pointer.

17              So they still haven't responded

18      to the lawsuits at this point.

19      They're sitting on the sidelines, they

20      made a conscious decision to sit on

21      the sidelines, and you'll see their

22      internal documents will show that.

23              But by this point -- and this

24      starts to get to what we're really

25      here about today, which is the

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 47 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 17 of 281
March 11, 2019

1        markings and the labelings on the

2        drywall.

3            They were able to categorize

4        and knew that they printed Shandong

5        Taihe Dongxin, which is our name for

6        Taishan Gypsum in the factory -- on

7        the back of boards, 687,000 meters;

8        the same for Taian Taishan

9        Plasterboard, what we call TTP,

10       117,000 square meters; Taishan brand

11       edge sealing tape, 965,000 meters.

12           And another important category,

13       number 4, white, letter-free edge

14       sealing tape and no sprayed code

15       neutral packaging.  In other words, no

16       identifying marks on the board

17       whatsoever, almost a million square

18       meters.

19           And then 3.5 million square

20       meters that was custom ordered from

21       U.S. customers, where they should have

22       documents of what they sent out.

23           Again, they told the Fifth

24       Circuit two shipments, and here they

25       are in 2010, before they're even in

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 18 of 343
Case 2:11-cv-22408-MGC   Document 2   Entered on FLSD Docket 04/29/2019   Page 18 of 281
March 11, 2019

```
1        the litigation, already knowing what
2        they did, how they did it, who they
3        shipped to and how it was marked or
4        not marked.
5              And probably the most
6        remarkable category, at least to me,
7        in the litigation is number 6.  Over
8        a million square meters, the labeling
9        is unknown.
10             So here I am as the plaintiff
11       with the burden of proof, and I've got
12       a defendant who hides information for
13       four to five years or more -- and
14       we'll get into this later -- up and to
15       the eve of the depositions in January
16       is producing documents and producing
17       labeling on documents and producing
18       photos of drywall that they magically
19       found in their factory after ten years
20       of litigation.
21             When in October of 2010 they
22       apparently had the wherewithal to know
23       what was being shipped, where it was
24       being shipped and how much was being
25       shipped.
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 49 of 343
Case 3:11-cv-22408-MSC Document Dsqua-tfiled on 5/19 docket 04/29/2019 Page 19 of 281
March 11, 2019

```
 1              And they don't want to take

 2         responsibility for unmarked board, and

 3         they've got a million square meters.

 4         The labeling on the remaining drywall

 5         of 1 million square meters is unknown.

 6         And this isn't Patrick talking.  This

 7         is in their own documents at Tab 27.

 8              Again, we didn't have these

 9         documents until 2015.  I think it came

10         from the -- and my team will correct

11         me if I'm wrong -- from the magically

12         found computer.  So there was an

13         employee in the plant named Peng

14         Wenlong.  You'll hear this name.

15              Mr. Pong or Mr. Peng, depending

16         on the pronunciation, testified that

17         he was in the foreign sales department

18         at Taishan, but that was back in, I

19         think, his second deposition.

20              In his first deposition he just

21         said that he was responsible for

22         watering flowers and being the

23         gardener, but then later on it evolved

24         that he was in foreign sales.

25              Well, later on it evolved, when
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 50 of 343
Case 2:11-cv-22408-MGC   Document 29   Entered on FLSD Docket 04/23/2015   Page 20 of
281

March 11, 2019

```
 1          he got fired, the computer that he had
 2          that had close to 300,000 documents on
 3          it that were relevant to this case
 4          were on his computer.
 5                  So after the jurisdictional
 6          discovery in 2010 and then the rulings
 7          in '11 and '12, we were finally able
 8          to get ahold of his computer in 2015.
 9                  That's all detailed in the
10          brief, but that goes, again, to the
11          pattern -- and I'm trying to be
12          delicate -- of lies in this case.
13                  June 2010, again, they still
14          have not appeared in the litigation at
15          this point.  This is their own
16          internal documents.  They prepared a
17          statistical spreadsheet and analysis
18          for their parent entity for the
19          purpose of concluding the lawsuit.
20                  What had -- what were they able
21          to tell from their own internal
22          documents about what they created?
23          They had a two-page statement of the
24          data and statistics of exports to the
25          U.S. from 2005 to 2007, a three-page
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 51 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 21 of 281
March 11, 2019

1    spreadsheet from U.S. buyers -- so

2    they knew they were selling to the

3    U.S., even though they told the Fifth

4    Circuit they only made two shipments

5    there -- and then a 28-page

6    spreadsheet of product labeling.

7    That's at Tab 10 of this e-mail chain.

8            Why do we go through this here?

9    Why are we telling you about this?

10           So this is one of those

11   spreadsheets.  This was the detail

12   that they had back in 2010.  They were

13   able to track date, invoice number,

14   manufacturer, exporter, who the U.S.

15   customer was -- and remember, we don't

16   sell board to the U.S., we don't know

17   anything about the U.S. -- who issued

18   the invoice, where the drywall came

19   from, the size of it, how much they

20   produced, how it was delivered, where

21   it was going, how much it was worth,

22   how it was exported, what the product

23   label said.

24           We're here about, in part

25   today, about product labeling.  They

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/08/19 Page 52 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/23/2012 Page 22 of
281
March 11, 2019

1    were able to track the labeling.

2    Absolutely they were doing it.  They

3    were able to do it at the time.  This

4    was 2010.  They produced the drywall

5    in '05, '06, '7, '8 and '9.  Yet in

6    2010 they could tell you what they

7    had.

8         What you'll find out later as

9    we continue to go on is, well, certain

10   sales invoices and certain sales

11   notifications get produced on the eve

12   of deposition 10 years later that they

13   magically find in the factory.

14        The bottom line is their

15   discovery practices, their hiding of

16   documents -- Taishan's hiding of

17   documents, not counsel -- is used both

18   as a sword and a shield in this

19   litigation.  So when there's something

20   they don't like, they don't have it.

21   When they find something that's

22   beneficial to them, all of a sudden

23   they have it.

24        And then what they want to do

25   is flip the burden and say:  When we

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 53 of 343
Case 1:11-cv-22408-MGC Document 23 Entered on FLSD Docket 04/29/2015 Page 23 of 281
March 11, 2019

```
 1            make unlabeled drywall that is unknown
 2            to us, well, plaintiffs' got the
 3            burden.  No, it can't be that way.
 4            And that's what we briefed and put in
 5            our papers to you is that burden of
 6            proof needs to be shifted.
 7                 We made a prima facie case.
 8            We've passed muster.  We have the
 9            markings that they either admit or
10            deny that we all agree are at issue in
11            litigation.  The burden should shift
12            to them because of what they've done
13            and what they've hidden in this case.
14                 What I wanted to get to was the
15            amount of detail that they were able
16            to provide to themselves for their
17            parent company.  And this is part of
18            the 28-page spreadsheet.  All this is
19            in the briefing in your documents.
20                 So what do we know now?
21            86 million square feet of drywall have
22            been imported from '05 to '08.  They
23            knowingly exported to the United
24            States and targeted Florida in
25            particular.  They had exclusive
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 54 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 24 of 281
March 11, 2019

```
1              distributorship agreements with a
2              customer in Florida.
3                   But what did they say?  Why did
4              this all happen this way?  This was a
5              very early litigation strategy, and
6              it's at Tab 6 in your binder.  This is
7              probably, to me at least, probably the
8              most important document in the case as
9              we sit here today.
10                  So if you don't know, and we
11             didn't go into it enough in our
12             briefing, Taishan was held in both
13             civil and criminal contempt by
14             Judge Fallon in the MDL back in 2015.
15             And part of that process was there was
16             the discovery of attorney-client
17             privileged documents and a lot of
18             Taishan's own internal documents.
19                  And what we later found out
20             is -- and it's in the packet -- is
21             Taishan took the very early stance
22             that responding to lawsuits would be
23             too expensive.  They knew that their
24             assets were located in China and they
25             basically said, even if they lost,
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 55 of 343
Case 1:11-cv-22408-MGC   Document 2 Entered on FLSD Docket 04/29/2015   Page 25 of 281
March 11, 2019

```
1         they can't get us.  They thumbed their
2         nose at us because there's no treaty.
3         They figure you can't collect, so why
4         do we have to respond at all?  And
5         that's the stance they took throughout
6         this.
7              This is the document I'm
8         talking about.  This is Tab 6.  This
9         is the translation from their own
10        internal documents, and they say:
11        Summarizing the reasons above,
12        Taishan Company is inclined not to
13        respond to the lawsuit, but when
14        necessary, it will adopt methods such
15        as mailing the evidence that is
16        beneficial to Taishan Company to the
17        U.S. court and having the government
18        departments interfere, so as to
19        eliminate and reduce some negative
20        impact.
21             The key term there is
22        "beneficial," and you'll see that
23        throughout.  When it benefits them,
24        when it benefits Taishan to produce
25        the documents, like when they found
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 56 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 26 of 281

March 11, 2019

1          the magic residual boards that were

2          left over in their factories in

3          December of 2018 and then gave us the

4          photos in January of 2019, just before

5          the depositions a month or two ago, it

6          benefits them because they want to be

7          able to say, well, here's proof

8          positive that these are the boards we

9          made and these are the markings.  All

10         the other stuff, well, you know, I

11         don't know if we have documents of

12         that.  We don't have the documents of

13         that.  But we do have these, so we get

14         the benefit from that.  That's the

15         sword and the shield that I'm speaking

16         of.

17              Also in that same document:

18         After analysis, Taishan Company

19         believes that this lawsuit is

20         relatively complicated, and it plans

21         not to respond.

22              This is back in 2010, after the

23         lawsuits were filed, before they

24         responded.  It's a conscious

25         litigation strategy not to respond, to

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 57 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 27 of 281
March 11, 2019

1    continue to delay and to create

2    problems for these plaintiffs.

3        We already went through these

4    statements here, but this is their

5    words:  No treaty, they can't get us.

6        So they came in in 2010 only to

7    contest jurisdiction.  They denied any

8    knowledge in 2010 of exporting the

9    drywall to the U.S.

10       Well, I just spent the last ten

11   minutes, frankly, belaboring the

12   points that they knew what they

13   produced back in 2010.

14       They lied to the Fifth Circuit

15   and they have in their own internal

16   documents the volumes and volumes and

17   volumes of drywall.  So this is a

18   conscious strategy.

19       The last bullet point:

20   Taishan's witnesses were deemed not

21   credible, necessitating a second round

22   of depositions overseen by

23   Judge Fallon in Hong Kong.

24       First time I've ever heard of

25   it, I was involved in it, but we took

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 58 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 28 of
281

Margaret Herd on March 11, 2019

```
 1        the first round of jurisdictional
 2        depositions in Hong Kong of Taishan.
 3        We agreed to go out to Hong Kong to
 4        conduct the depositions there, and we
 5        set aside a week to do it.
 6             Present counsel was not
 7        involved in the case at that time.  It
 8        was four days of lawyer hell and
 9        torture, I will tell you that.  And
10        I'm not -- I'm not prone to hyperbole,
11        but here I will tell you the truth.
12        There was a lineup across the table
13        about like we are here in this room
14        with the party chairman, with a
15        translator from Taishan, with a
16        lawyer, two lawyers and a check
17        interpreter that they brought.
18             Within minutes, the
19        interpreters starting fighting with
20        each other, but what was most
21        remarkable to me was as the witness
22        was answering questions, was looking
23        down the row at the table at the party
24        boss to make sure that he could answer
25        the questions correctly.
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 59 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2015 Page 29 of 281
March 11, 2019

```
 1            So again, I don't blame the
 2       lawyers for what's happening in this
 3       case, but the short version is those
 4       depositions were so chaotic and so
 5       bad, I moved for sanctions in a case
 6       for the first time in my life, and I
 7       stood in front of Judge Fallon and
 8       moved for sanctions.
 9            And he took a look at the
10       transcripts and his quote in his order
11       was "these depositions turned into
12       chaos and dark night."  That was his
13       quote.
14            He said:  You know what, we're
15       going to do these over again.  I'm
16       going to fly out there myself.  I'm
17       going to go with the parties.  We're
18       getting a State Department
19       interpreter.  We're going to do this
20       the right way.
21            So what took a week and was
22       absolute madness ended up taking three
23       days with Judge Fallon coming out.
24       But he had to sit in and officiate and
25       try and get this right.  Those
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/08/19 Page 60 of 343
Case 1:11-cv-22408-MGC Document 23 Entered on FLSD Docket 04/29/2019 Page 30 of 281
March 11, 2019

        1          depositions led to him finding

        2          jurisdiction and then eventually the

        3          appeals that went up to the Fifth

        4          Circuit.

        5               What we haven't touched on yet

        6          is once they lost the jurisdictional

        7          battle, that's when they left the

        8          litigation, fired their lawyers, and

        9          that's when they were found in

       10          criminal and civil contempt.  So

       11          that's the timeline of what's going

       12          on.  Constant running, cat and mouse,

       13          hiding.

       14               So again, misrepresentations,

       15          that's a polite word.  In 2011, this

       16          is the chairman, Chairman Jia of

       17          Taishan.  He says:  TG produced the

       18          plasterboard.  They are very heavy.

       19          So we don't have plan to sell it to

       20          foreign countries.

       21               But we know they did.  We know

       22          by their own internal documents they

       23          did, and he knew in 2011 when he

       24          testified that they did.

       25               Mr. Peng, who I alluded to

March 11, 2019

1    before, the guy who had the missing

2    computer that went hidden for five

3    years, he says:  There is no exports

4    for us to the United States.

5              That's sworn testimony.

6              2015, Mr. Che, who you'll hear

7    a lot about as the day goes on, was

8    the -- I think was deposed three times

9    in this case, the most recent time in

10   Atlanta in January, and he's the

11   corporate representative at this time

12   because Mr. Peng has apparently been

13   fired and is no longer with the

14   company.

15             Mr. Che said:  Because I cannot

16   confirm where the gypsum boards that

17   were shipped to the United States, I

18   was unable to prepare for that.  So he

19   wasn't ready to testify about that in

20   2015.

21             Let's see what they say now.

22   Same guy, Mr. Che, in 2019:  In

23   preparation for the deposition, I did

24   read in detail what Mr. Peng (Wenlong)

25   had created regarding the detailed

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 62 of 343
Case 3:11-cv-22408-MGC Document 2 Entered on FLSD Docket 04/29/2019 Page 32 of 281
March 11, 2019

1          American-sized gypsum board.

2                  So what is he referring to

3          here?  There was a spreadsheet that

4          was prepared by Peng Wenlong; that was

5          that 28-page spreadsheet that I

6          referred to before.

7                  So by 2019, Mr. Che thought it

8          was due time to go ahead and review

9          that, nine years after the fact, and

10         now understands that there was

11         American-sized gypsum board.  Because

12         we know China operates on the metric

13         system and we've got -- what's it

14         called, the English system or whatever

15         it is that we do with feet.

16                 They made custom board that

17         said 4X12X1/2 inch.  They knew when

18         they were shipping it out in '05, '06,

19         '07, '08, '09, it was going to the

20         U.S., because those markings make no

21         sense in China.  But they would not

22         admit to it.  It didn't matter how

23         many times you asked them or how you

24         asked them, they don't know where it

25         went; they just produced the board.

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 63 of 343
Case 1:11-cv-22408-MGC   Document 29 entered on FLSD Docket 04/29/2019 Page 33 of
281
March 11, 2019

 1          Well, we all know it was going to the

 2     U.S.

 3              So they started to change their

 4     tune a little bit.  The question was

 5     asked:  Why use the term

 6     American-sized drywall?  Because

 7     frankly, they had never used it in the

 8     litigation up until this point.

 9              He says:  I used

10     "American-sized gypsum board" because

11     the gypsum board of this kind of size

12     is generally used in America and other

13     countries generally do not use this

14     size of gypsum board.

15              So they knew all along, but it

16     took us ten years to get to that

17     point.

18              I'll talk a little bit about

19     the markings.  These markings -- and

20     you'll see in the next two slides,

21     these come from the court-created --

22     the MDL court-created Chinese drywall

23     markings catalog.  This is what they

24     would admit to in 2011, the ones that

25     had the Taishan or Taihe brand on

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 64 of 343
Case 2:11-cv-22408-MGC Document 3 Entered on FLSD Docket 04/29/2019 Page 34 of 281
March 11, 2019

1    them.  So you'll become familiar very

2    quickly with these labels and what the

3    logos look like.  But at this point in

4    2011, this was all that they would

5    admit to as to their markings.

6         They would also admit in 2011

7    that they had drywall markings on the

8    back of the boards, they had produced

9    drywall with markings on the back of

10   the board that had these phrases;

11   DRYWALL 4feetX12feetX1/2inch, all

12   capital letters, MADE IN CHINA MEET OR

13   EXCEED ASTM, and then the standard,

14   and then the VENTURE SUPPLY.

15        Well, why do I bring this up

16   about what they're admitting?  They

17   admit they put those words on the back

18   of the board when they looked at those

19   photographs in the catalog that we

20   just looked at.  So if it's got this

21   edge tape that goes along the drywall

22   border, they'll admit to that.  And

23   they know they put these markings on

24   the back, but unless they've got the

25   tape and the markings on the same

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 65 of 343
Case 2:11-cv-22408-MGC Document 2 Entered on FLSD Docket 04/29/2019 Page 35 of
281
March 11, 2019

1       photo, they don't admit to it.

2           So basically what they said is

3       we know we made this board with this

4       type of marking, but there's

5       insufficient evidence to conclude that

6       the drywall depicted in this image was

7       sold by TTP, Taian Taishan

8       Plasterboard; among other reasons,

9       other manufacturers might have

10      produced drywall with these markings.

11          So on one hand, they'll say,

12      yeah, we knew we put it out there, we

13      had it, but it could have come from

14      somebody else.  We have yet to see who

15      that somebody else is.

16          So we talk about burden of

17      proof, plaintiffs got the burden of

18      proof.  Well, this is their defense.

19      Now, they really don't have any

20      affirmative defenses because they've

21      been defaulted.  But if this is their

22      defense, they then have the burden of

23      proof.

24          So who are the others?  You'll

25      hear a little bit about counterfeiting

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 66 of 343
Case 2:11-cv-22408-MGC Document 2 Entered on FLSD Docket 04/29/2019 Page 36 of 281
March 11, 2019

```
 1        and how they were very careful in the
 2        market to watch out for counterfeiting
 3        because their product is so good, but
 4        all we've heard is innuendo.  We've
 5        seen nothing about other Chinese
 6        manufacturers making boards with these
 7        markings.
 8              These are the same markings in
 9        2011.  They will admit to -- and this
10        is an example.  They'll admit to these
11        words, the meets or exceeds -- MEET OR
12        EXCEEDS ASTM.  They know they printed
13        drywall with those words, but they
14        won't admit to those specific photos,
15        whether it be because of the font or
16        some other reason, you'll hear more
17        about that, but that's really what's
18        in front of you today and for the next
19        few days.
20              Same thing with this marking,
21        Drywall 4feetX12feetX1/2inch, they'll
22        contend that there's insufficient
23        evidence.
24              So where are they today?  That
25        was back in 2011.  This is where they
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 67 of 343
Case 1:11-cv-22408-MGC Document 2 Entered on FLSD Docket 04/29/2019 Page 37 of
281
March 11, 2019

1    are today.  They say that they do not

2    deny Taian Taishan or Taihe tape, so

3    this is the edge tape I've been

4    talking a little bit about.  So the

5    edge tape and the manufacturing

6    process is done to protect the board,

7    and what the testimony has borne out

8    in this case is that when installers

9    put the board in in a home, generally

10   what they do is they rip the tape off

11   and then they install it.  But that's

12   what the drywall tape is.

13           So from a proof standpoint,

14   frankly, there's going to be some

15   issues because you're not always going

16   to have drywall end tape just by

17   nature of how the drywall is

18   installed.

19           But they will admit to this

20   tape, they will admit to stuff only

21   with their name on it, but they won't

22   admit to anything else.

23           Venture Supply, you'll hear a

24   little more about.  Not so much an

25   issue in Florida, but that was a

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 68 of 343
Case 2:11-cv-22408-MGC Document 1 Entered on FLSD Docket 04/29/2019 Page 38 of 281
March 11, 2019

```
1         specific run of drywall that Taishan
2         did for a company in Virginia named
3         Venture Supply, and they painted it on
4         the back.
5              And why do I go through these
6         slides, for example, Venture Supply
7         and the ones with edge tape?  Because
8         you'll find throughout our
9         presentation, whether it be the font
10        or the labeling or the phrasing, there
11        are other what we called buckets of
12        drywall.  There's eight other -- eight
13        total categories of drywall where
14        you're going to see similar font and
15        similar wording.
16             So what I'm getting at is
17        they'll admit to this, they'll admit
18        to this phrasing, they'll admit to the
19        font in this section, but when you see
20        another piece of drywall with the same
21        font but not the same edge tape,
22        they'll say, oh, must be somebody
23        else's.  Well, it's the same font.  It
24        came from the same printer, it came
25        from the same factory.  So that's the
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 69 of 343
Case 2:11-cv-22408-MGC-EGT Document 23 Entered on FLSD Docket 04/29/2019 Page 39 of 281

March 11, 2019

```
1              game that they're going to be playing.
2                      We'll talk about the markings
3              for a moment.  We found out at the
4              depositions in January that the
5              drywall labeling machines that they
6              have, my colleague, Mr. Serpe is going
7              to address this in much more detail.
8              They had four different machines for
9              labeling drywall.
10                     They have no records of what
11             font was used, whether it came out
12             with little dots or if it came out
13             with straight lines.  They have none
14             of that because -- and the testimony,
15             at least, was any notes of that were
16             thrown away.
17                     There were four different
18             machines.  They don't know what font
19             was there.  They don't have any
20             records of what was actually written
21             on the back from those machine
22             operators.  There's no protocol for
23             what the machine operators were
24             supposed to do.  It's one big guess at
25             this point, but they know they had
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 70 of 343
Case 1:11-cv-22408-MGC Document 5 Entered on FLSD Docket 04/23/2019 Page 40 of 281
March 11, 2019

```
1           four different machines.

2               So what they're doing, again,

3           these unknowns, they want to push back

4           on us from a burden of proof

5           standpoint when they had the

6           information at one time, they had the

7           information at the time of production,

8           but they didn't keep it.

9               So they want to take their lack

10          of recordkeeping and foist that burden

11          upon the plaintiff to be able to prove

12          it.  And that's why I'm going through

13          those categories.  It will become more

14          relevant later.

15              Same thing here, the markings.

16          There's going to be a lot of

17          discussion about a capital Y in the

18          middle of "DrYwall" and whether it's

19          their drywall or not and how it looks

20          like others.  These are their denials.

21              So they'll admit some that say

22          "DrYwall" with a capital Y, others, if

23          there's no capital Y they're going to

24          deny that.  But what we all know is

25          they say -- have the dimensions.
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 71 of 343
Case 1:11-cv-22408-MGC Document 59 Entered on FLSD Docket 04/29/2019 Page 41 of 281
Marjorie 11, 2019

```
1              So in terms of how we're
2         splitting this up, Mr. Serpe is going
3         to finish up when I sit down, and then
4         I think they will open, and then we'll
5         get into the specific categories of
6         documents.
7              I also -- one point I'm
8         missing, I skipped over that.  So
9         there was a Manufacturer Profile Form
10        that was produced in this litigation.
11        Just like in any mass tort, you'll
12        have court-ordered discovery.  There
13        was a profile form that was created
14        that they had to fill out.  There's a
15        Distributor Profile Form as well.  So
16        all the defendants had to fill in
17        these profile forms.
18             On the Manufacturer Profile
19        Form, they did a listing of the
20        drywall that was created and the
21        markings that were on it.  But what
22        you find in the Manufacturer Profile
23        Form is they will admit to marking
24        drywall with 4feetX12feetX1/2inch, but
25        what they didn't detail on the
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 72 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 42 of 281
March 11, 2019

```
 1        Manufacturer Profile Form was whether

 2        it was in uppercase and lowercase

 3        letters or whether it was in all

 4        capital letters.

 5             So Mr. Che, who was the

 6        corporate representative testifying

 7        this past January, had to admit that,

 8        well, Mr. Peng's spreadsheet that he

 9        made that was really part of the

10        Manufacturer Profile Form, it doesn't

11        go into great detail about what the

12        markings are.

13             We know it says Drywall

14        4feetX12feetX1/2, but they can't tell

15        us one way or the other whether it's

16        all capital letters or a mix of both.

17        Again, and you'll see what his

18        testimony was:  Well, maybe Mr. Peng

19        wasn't that careful in creating it.

20             Well, what has that done to us

21        ten years later?  It's left us as the

22        plaintiffs trying to figure out what

23        is what with this drywall when that is

24        their own records.  They admit to this

25        phrasing.  They just won't admit to
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 73 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 43 of 281
March 11, 2019

```
 1          the font, they won't admit to the
 2          capital letters, they won't admit to
 3          singulars or plurals.  That's what
 4          you're going to be seeing with the
 5          product ID binders.
 6                  This is a direct quote from
 7          Judge Fallon:  The Court is
 8          disheartened that delay tactics have
 9          permeated every aspect of the
10          defendant's litigation strategy; from
11          their initial failure to appear to
12          their now perpetual motion to
13          relitigate settled matters.
14                  We see that same delay tactic
15          from jurisdiction to document
16          discovery to document production and
17          to late-produced suddenly found
18          information on the eves of
19          depositions.
20                  So what do we know?
21          9.4 million square feet of drywall
22          directly to Florida, part of the
23          86 million.
24                  At this point, Taishan only
25          admits the manufacture of 1.4 million
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 74 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 44 of 281
March 11, 2019

1    square feet of drywall in Florida

2    plaintiffs' homes.  How does that come

3    about?

4           So a few weeks ago the parties

5    exchanged claimant-specific objections

6    or denials on homes, and whether or

7    not Taishan believed that the drywall

8    in a particular home based on the

9    photos was theirs or not.

10          So of the 1,700 claims that we

11   went through on the individual sheets,

12   they only admitted to about

13   1.4 million square sheet of drywall,

14   when their own records show they

15   shipped 9.4 million square feet of

16   drywall to Florida.

17          So overall, they know they've

18   got almost 9? million square feet of

19   drywall in Florida, yet when we look

20   at the individual contests, they'll

21   only admit to about a million and a

22   half square feet, which amounts to

23   about 15% of their total shipments

24   here.

25          So there's obviously a lot more

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/00/19 Page 75 of 343
Case 1:11-cv-22408-MGC Document 23 Entered on FLSD Docket 04/29/2015 Page 45 of
281
March 11, 2019

```
 1        drywall that made it to Florida from
 2        Taishan that is either not being --
 3        that is not being admitted to by them.
 4             Those denials are inconsistent
 5        with the product ID admissions from
 6        Taishan and to the evidence that
 7        plaintiffs have.
 8             So we had to go back -- and
 9        this was in 2012 this was filed.  This
10        was during the jurisdictional
11        discovery -- and try to figure out how
12        much drywall they actually shipped
13        here.
14             And the people in this room
15        along here to the left side of you, we
16        took everything that we had from
17        different distributors in the U.S.
18        because we weren't getting that
19        information from Taishan, and we
20        compiled this spreadsheet based off of
21        invoices and shipping documents, and
22        what we came up with was 87 million
23        total square feet of drywall and
24        9.3 million square feet, so very close
25        to what the numbers actually ended up
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 76 of 343
Case 1:11-cv-22408-MGC Document 2 Entered on FLSD Docket 04/23/2019 Page 46 of 281
March 11, 2019

1              being.

2                   The point of the matter is,

3              though, we had to figure that out for

4              ourselves when Taishan had that

5              information the whole time.  And that

6              was the information that I showed you

7              very early on in the presentation.

8              Back in 2010, before they came into

9              the lawsuit, they had already figured

10             out how much drywall they manufactured

11             and how it was labeled or wasn't

12             labeled.

13                  This is an overall view of the

14             1,700 cases, where they're located in

15             Florida.  There's 1,707 total claims

16             representing 1,581 properties.

17                  The reason there's less

18             properties than claims are

19             condominiums.  So if you've got a

20             condominium with 30 units or 40 units

21             of drywall, we counted it as one

22             property.  But this is what it looks

23             like geographically.

24                  And not surprisingly, it

25             follows along the major building

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 47 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 47 of 281
March 11, 2019

1          points when the building boom was

2          going on in '05 to '08.

3                    So as broad as this case is,

4          your task is product ID, which we're

5          here about today, ownership

6          verification, whether the plaintiff

7          owned or didn't own the home, and what

8          the square footage is.

9                    Frankly, I think that the

10         square footage issues will probably be

11         pretty easy to solve between the

12         parties.  I think for the most part

13         the ownership verification will

14         probably be along the same lines.

15                   The product ID is really where

16         the rubber meets the road.  These are

17         the calls that you have to make and

18         that are so important to these

19         plaintiffs.

20                   This is the general, what we

21         call buckets.  Again, we're going to

22         probably use the term "buckets"

23         throughout the day, the different

24         categories of drywall.  There are

25         eight of them at issue today; C&K has

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 78 of 343
Case 3:11-cv-22408-MGC Document 2 Entered on FLSD Docket 04/29/2019 Page 48 of 281
March 11, 2019

1    50; IMT, 66; ProWall, 96; Taian

2    Taishan or Taihe Tape, 107; with the

3    markings MADE IN CHINA MEETS OR

4    EXCEEDS, 266; the various drywall

5    dimension boards, 960; Venture Supply

6    has 5 in Florida; and then the

7    unmarked board with the white edge

8    tape, 80 Florida properties.

9         So, Your Honor, you can see

10   that the bulk of the claims are the

11   dimensional and the MADE IN CHINA.

12   Those really make up the bulk of the

13   claims, and then lesser down the line.

14   And these are the order we'll take

15   them in once we start doing the

16   product-specific categories.

17        We talked a little bit about

18   edge tape.  I just wanted to -- I

19   wanted to familiarize Your Honor with

20   that term.  I'm going to ask you to

21   put a pin in edge tape, I'm going to

22   get to it in a minute, because I've

23   got some slides that better address

24   what edge tape is.  I kind of already

25   did.  I told you it's the bottom

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/08/19 Page 79 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 49 of 281
March 11, 2019

```
 1              protective tape that typically gets

 2              peeled off during installation.

 3                   I've talked to you about these

 4              magic boards that showed up in their

 5              factory in December of 2018 when

 6              opposing counsel went out to

 7              prepare -- to China to prepare their

 8              clients for deposition and they were

 9              advised that there was three pallets

10              of drywall, one in an office area, I

11              believe, and one in a factory.  I may

12              be wrong on exactly where they are,

13              but I know they were in two different

14              spots in China with three different

15              sets of markings.  We call them

16              residual boards.

17                   The point is this:  We're ten

18              years down the line after the

19              lawsuit's been filed in 2009.  It's

20              December, it's the eve of the

21              depositions, and now all of a sudden

22              Taishan is finding drywall in their

23              own factory.

24                   And this isn't one board; this

25              is 400-something boards.  And you've
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 80 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 50 of 281
March 11, 2019

```
1        seen drywall before, it's
2        4feetX12feetX1/2inch.  It's not
3        something that you move around easily
4        or it gets lost.  They come in huge
5        pallets, and they would, you know,
6        take up the corner of this room
7        without a problem when they're stacked
8        up 40 or 50 high.  It's not something
9        that you lose.  It's not like losing
10       your cell phone.
11            This is 400 and something
12       sheets of drywall that could have been
13       found, that could have been made
14       available to us that weren't.  So it
15       begs the question:  What else is
16       there?  What else is out there at this
17       point, ten years later, that we don't
18       know about?
19            And our situation is this:  We
20       are now at this point ten years after
21       litigation.  The truth of the matter
22       is we could discover this case for
23       another five years.  Our folks have
24       been out of these homes since '5, '6,
25       '7, '8.  The time is now.  We have to
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 81 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 51 of 281

March 11, 2019

1        do it.  We are forced to do it,

2        because this litigation has to come to

3        an end for these plaintiffs.  They

4        need an answer one way or the other.

5                But for us to be forced, for

6        the plaintiffs to be forced into the

7        situation where we're getting stuff on

8        the eve of depositions ten years

9        later, that's where I ask you as the

10       finder of fact, as the trier of fact,

11       to shift the burden.

12               We've made a prima facie case.

13       They need to put up their defenses,

14       just based on their conduct alone.

15       That's the residual boards.

16               The Manufacturer Profile Form I

17       alluded to a little bit earlier.  That

18       was a court-ordered form.  We're

19       calling product ID, we're referring to

20       as PID.  The Taishan product ID

21       catalog was filed in the MDL at 155-2.

22       It's also in your materials.

23               And you'll see Taishan Gypsum

24       referred to as TG sometimes.  Taian

25       Taishan Plasterboard as TTP.  I refer

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 82 of 343
Case 3:11-cv-22408-MSC-EDocument 2Squared on 04/29/2019 Docket 04/29/2019 Page 52 of
Marietered, 2019
281

1    to both the companies overall as

2    Taishan.  Just makes it a lot easier.

3           Here's the scoreboard of what

4    you're having to deal with.

5           Taishan has denied they

6    produced C&K Gypsum, IMT is denied,

7    ProWall is denied.  Taian Taishan is

8    admitted to, MADE IN CHINA MEETS OR

9    EXCEEDS, whether it's singular or

10   plural, part of them are admitted to,

11   part are denied.

12          The dimensions, same thing,

13   admitted -- partially admitted,

14   partially denied.  Venture Supply is

15   admitted.  The unmarked boards with

16   the white edge tape are denied.

17          The point of this slide is here

18   you see the edge tape with the

19   color -- or the markings, and there --

20   so we know this is their board.  And

21   here you see the font and the typing,

22   the MADE IN CHINA.

23          What we found throughout our

24   analysis is that you will see this

25   same font and the same typing on other

March 11, 2019

```
 1        buckets of drywall that they won't
 2        admit to, but unless it has their
 3        tape, they won't admit to it.
 4             So basically what they're
 5        saying is if it's just this alone, I'm
 6        not going to admit to it.  It's got to
 7        have the tape for me to be able to
 8        admit to it.  Well, it can't be.  You
 9        produced it with this label, with this
10        font from whatever machines that you
11        no longer have and don't have the
12        labels to, and now you want to take
13        the position that that's not your
14        board when we know it's your board,
15        but you only admit to it when the tape
16        is on there.
17             It's that type of hiding, it's
18        that type of delay tactics, and
19        frankly, that lack of candor about
20        their own board that lead us to being
21        here today.
22             These are more examples of what
23        they've admitted to with their edge
24        tape, what it looks like.
25             And I'd ask you to put a pin on
```

Case 2:09-md-02047-EEF-MBN   Document 22397-7   Filed 12/09/19   Page 84 of 343
Case 1:11-cv-22408-MGC   Document 23   Entered on FLSD Docket 04/29/2019   Page 54 of
281
March 11, 2019

1        edge tape in terms of what it is in

2        describing it.  I just pulled this

3        piece of the testimony because I told

4        you there was record evidence that the

5        edge tape gets pulled off during

6        construction.

7              Taishan's corporate

8        representative understands that.  It's

9        the normal practice to remove the edge

10       sealing tape before the drywall is

11       installed, and in reality, this is

12       what it looks like on a construction

13       site.

14             So workers get the -- the

15       drywall installers go to put it in,

16       they rip off the edge tape.  So a lot

17       of times you just simply won't have

18       the edge tape when we're trying to

19       identify what's in a home or what's

20       not.

21             Before I turn the program over

22       to my colleague, Mr. Serpe, I think

23       there's one passage or one quote from

24       Judge Fallon that probably sums up

25       everything that I'm trying to talk to

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 85 of 343
Case 2:11-cv-22408-MGC Document 29 entered on FLSD Docket 04/29/2019 Page 55 of 281
March 11, 2019

1          you about today.  It at page 10 of our

2          brief.

3                    Judge Fallon, this was last

4          August:  The whole approach is just

5          delay, delay because people die, delay

6          because people lose their homes, delay

7          because they're frustrated and giving

8          up.

9                    And as a litigation strategy,

10         and it's kind of one of the elephants

11         in the room, maybe not the elephant in

12         this room, but in the litigation

13         overall.

14                    Part of the litigation strategy

15         is to make people walk away, have

16         people sell their homes, have people

17         give up on their homes, because when

18         people were faced with this problem,

19         they had the choice of keeping their

20         families in a toxic home that affected

21         their health, or moving out.

22                    Moving out -- can't pay two

23         mortgages.  Biggest asset.  I've got

24         to get rid of my home.

25                    Well, depending on how you see

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 86 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 56 of 281

March 11, 2019

```
 1          damages in the state of Florida and

 2          damage law, you've got to mitigate,

 3          right?  We all know you've got to

 4          mitigate.  That benefits their client.

 5          The longer they drag this out, the

 6          less they've got to deal with it.

 7               That's not right.  We know

 8          that's not right, and we know it's not

 9          right because in 2010 when we see

10          those documents they produced and they

11          created, that was their tactic.  They

12          said they would delay it.  They're not

13          going to respond to the lawsuits.

14               So we're asking you to shift

15          the burden of proof.  We know you take

16          this task extremely seriously for

17          these plaintiffs that are before you.

18               But I think as you hear our

19          presentations, I think it's very

20          important for you to consider the

21          equities in the situation.  As the

22          trier of fact, you have the ability to

23          determine credibility, to make

24          inferences, direct evidence,

25          circumstantial evidence, and in many
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 87 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 57 of 281
March 11, 2019

```
 1          cases the circumstantial evidence may
 2          be much stronger than the direct
 3          evidence.
 4               So I ask you to keep those
 5          concepts and thoughts in mind as I
 6          turn the clicker over to Mr. Serpe.
 7               SPECIAL MASTER LEE:  Before you
 8          do, and if you're going to get to it,
 9          it may be a trivial matter, but what
10          were the markings on the residual
11          boards that were discovered?
12               MR. MONTOYA:  We have photos of
13          those.
14               MR. SERPE:  I'm going to cover
15          that.
16               SPECIAL MASTER LEE:  Okay.
17               MR. MONTOYA:  Thank you.
18          Special Master, let me ask two favors.
19               Would it be all right if I sat
20          here during the presentation?
21               SPECIAL MASTER LEE:  Sure.
22               MR. SERPE:  And second, I beg
23          your indulgence.  I'm going to jump
24          around a little bit with the order of
25          the slides.  Can I get you to go back
```

Case 2:09-md-02047-EEF-MBN Document 22397 Filed 12/08/19 Page 88 of 343
Case 1:11-cv-22408-MGC Document 29 entered on FLSD Docket 04/29/2019 Page 58 of 281
March 11, 2019

1          to 25 just for a minute.

2                    Patrick emphasized the point,

3          which is critical to us, that with the

4          documentation of exports to Florida

5          where 9.4 million square feet of

6          Taishan drywall clearly came into

7          Florida, you're talking about a degree

8          of record where you've got the actual

9          purchaser of the supply house and,

10         boom, the board is landing there,

11         9.4 million square feet, representing

12         now, at this point, what Taishan had

13         admitted is only 15% of that.

14                   The point that I wanted to

15         emphasize, if you go to the next

16         slide, 26, and the callout, look above

17         at the deliveries that Taishan made to

18         unknown, state unknown, at 56,866,080

19         square feet.

20                   So here we don't have the

21         actual supply house that it's coming

22         into, but it came into the United

23         States.  These are export records.

24         Clearly 87 million square feet from

25         Taishan came in.

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/08/19 Page 89 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 59 of 281
March 11, 2019

```
 1                I just wanted to make the point

 2        that, when you look around the

 3        country, what states got hammered,

 4        hammered with Chinese drywall from

 5        Taishan.  Florida is by far and away

 6        triple any other state.  And there's

 7        only a handful of states that have had

 8        the impact.

 9                So the point becomes, when

10        you're considering the fact that

11        Taishan has only admitted 15%, 15% of

12        the boards that went into Florida,

13        understand that that is augmented by

14        the fact that 56 million additional

15        square foot got spread around the

16        United States, we would argue, the

17        majority to Florida.

18                Now, do we have direct proof on

19        which supply house?  No.  But it went

20        somewhere.  Where did these homes end

21        up?  Where did the drywall end up?

22        Florida, triple any other state.

23                And the point becomes it's not

24        that they're admitting 15%.  That's

25        15% they're admitting of sales that we
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 90 of 343
Case 3:11-cv-22408-MGC-EDocument 2 January red on Flsd Docket 04/23/2019 Page 60 of
March 11, 2019
281

1        know the supply house.

2              When it comes to their overall

3        drywall that came into the United

4        States, we're talking about like 1%

5        that they've admitted for the state of

6        Florida.

7              So the question becomes, well,

8        where did it all go?  Where did it all

9        go?

10             Another question is who else

11       was out there?  We addressed this in

12       the briefing.  And there was another

13       company, Knauf, who was a German-based

14       company.  They also imported drywall

15       with the same defect, the sulfur that

16       caused off-gassing.

17             Within a year, they admitted

18       their responsibility, began a program

19       fixing houses, and ultimately fixed

20       every house that their drywall was in.

21       Every one of their boards was marked

22       with the name Knauf on it, as is the

23       custom for U.S. drywall makers, USG,

24       National Gypsum, boom, right on the

25       board.  People -- responsible

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 91 of 343
Case 2:11-cv-22408-MSC-EGT Document 29 Entered on FLSD Docket 04/23/2019 Page 61 of 281
March 11, 2019

1        manufacturers mark their board.

2              But Knauf came in and repaired

3        everything.  None of these cases we're

4        talking about today have Knauf because

5        we know Knauf never made a board

6        blank, never made a board MEETS OR

7        EXCEEDS without a manufacturer name.

8              So who is this third boogieman?

9        Who is capable of sending 90 million

10       square feet of Chinese drywall into

11       the United States other than Taishan?

12             That was the specific topic

13       identified on the 30(b)(6) notice to

14       Taishan in the deposition we took in

15       January.  Where are the documents?

16       Who are the witnesses?  Who's going to

17       say anybody made any of these buckets.

18             Taishan hasn't produced a

19       single document or a single witness to

20       indicate that there was a third player

21       out there.

22             So not only are they admitting

23       a tiny percentage of what they sent

24       into the United States, they've got no

25       evidence that somebody else did.

Case 2:09-md-02047-EEF-MBN   Document 22397-7   Filed 12/09/19   Page 92 of 343
Case 1:11-cv-22408-MGC   Document 59   Entered on FLSD Docket 04/29/2019   Page 62 of 281
March 11, 2019

 1            So perhaps my learned opposing

 2       counsel would say:  Well, that's not

 3       our burden of proof to tell you who

 4       did it.  They accused us.

 5            In the documentation before the

 6       court in the record, we have Taishan

 7       as a dominant player in the market.

 8       We have quoted in the product ID brief

 9       the testimony where they've got their

10       own internal investigation department

11       looking at other manufacturers; are

12       they counterfeiting us, let's shut

13       that down.  They study the market.

14       They know it.

15            They bragged about how they had

16       brought claims against the other small

17       manufacturers and had shut down, and

18       they quoted percentages and dollars

19       that they had shut down other

20       manufacturers on counterfeiting.

21            So with a sophisticated, huge

22       market player, with its own division

23       studying other Chinese drywall

24       manufacturers, where is the first

25       document that some company other than

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 93 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 63 of
281
March 11, 2019

1          Taishan sent drywall into the state of

2          Florida?  Not one that's been

3          produced.

4                Let me go back to where Patrick

5          dropped off at slide 36.  So now we

6          have the question of what markings did

7          they make on the boards?  Separate

8          topic that they made some boards that

9          were unmarked, and we're going to come

10         to that separately.  But let's start

11         with those boards for which they did

12         put markings.

13               Well, they didn't put their

14         name on anything, as opposed to Knauf

15         and what we would argue responsible

16         U.S. manufacturers did.

17               So instead, they had various

18         markings.  And we're going to spend

19         most of the day today and tomorrow

20         looking at those markings.

21               But let's draw some

22         conclusions.  How did the markings get

23         on the boards?  As these boards are

24         moving down the factory line, there

25         are printers that put the markings on

Margie Hill, 2019

```
 1        the board, one board after another as

 2        they go down the line.  They're moving

 3        hundreds of thousands of these boards

 4        through.

 5             So you can imagine that a

 6        printer that's dealing with that kind

 7        of volume is taking a lot of ink.  In

 8        fact, in the deposition, Mr. Che told

 9        us that they've got -- needed to buy

10        so much ink that the manufacturers of

11        the machines would give them the

12        machines because they were looking for

13        the ink sales.

14             So these things were in a rough

15        environment.  There were lots of them,

16        at least four by manufacturing that

17        they told us about.  That often broke

18        down, they often had to be replaced.

19             So we've got multiple

20        production lines, multiple printers,

21        the printers are breaking, new

22        printers are come in.

23             Okay.  So what does that tell

24        you about what the markings are going

25        to look like?  If you look at the next
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 95 of 343
Case 3:11-cv-22408-MGC Document 29 entered on FLSD Docket 04/29/2019 Page 65 of 281
Marfinfired, 2019

```
1          slide, no standard protocol for
2          delivering marking instructions to the
3          spray marking operators.
4                    Pause for a second.  So again,
5          on the eve of deposition we found, in
6          a reference in another document, that
7          there was a markings manual and a
8          highly detailed set of instructions on
9          how markings are supposed to be done
10         on the boards.
11                   We wrote to opposing counsel.
12         Where is the manual?  We're ten years
13         in, we're arguing about markings.
14         Where is the manual on how to do the
15         markings on the board?
16                   The day before the deposition,
17         two days before the deposition, we're
18         in Atlanta for the deposition.  Here
19         it is, it's in Chinese.
20                   We get it, we use our resources
21         for interpreting, and it says this is
22         the current version but there were
23         three previous versions going right
24         back to the time when this board was
25         being manufactured.
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 96 of 343
Case 3:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/23/2019 Page 66 of 281
March 11, 2019

1          Where are the earlier versions?

2     Do you have an English translation?

3     Answer, well, that manual only applies

4     to drywall we make in China.  We don't

5     really have a manual for the board

6     that we exported that was American

7     sized.  That was something else, and

8     there's no documentation whatsoever.

9          So you've got a company, a big

10     industrial player, factories going up

11     everywhere, corporate chains of

12     authority, annual reports being filed,

13     and their claim is, yeah, we had this

14     process where we sold tens of millions

15     of, for them, square meters of drywall

16     to the United States, yet we had no

17     procedures, no written rules, no

18     protocol for how to mark the boards,

19     despite the fact that you can sure

20     believe that we got it for every other

21     board that we make.

22          So then how would the machine

23     operator know how to mark the board?

24     We call them on the phone, say, put

25     this in there.  Or maybe we would walk

March 11, 2019

```
 1        over to him and say, you know, say
 2        Venture Supply, Inc., Made in Taihe,
 3        or say 4feetX12feetX1/2inch.  We would
 4        tell them face-to-face or on the
 5        phone.  There's no e-mails, there's no
 6        documents of that.  We don't have any
 7        records of that.
 8             And Mr. Che acknowledges,
 9        well -- as a principle, so how does he
10        get that in to the printer?  Is there
11        a keyboard?  Is there a separate
12        computer that has memory?  No, no, no.
13        There's a keyboard, but it goes right
14        into the printer, and the printer
15        prints, and then when you're ready to
16        do a label change, it doesn't remember
17        what the previous labels were.  You
18        overwrite when you put in the key for
19        the next label.
20             I said, so who selects the
21        font, capitals versus small, periods,
22        the spacing, who does that?
23             Well, the machine operator does
24        that, he does all of that.  But some
25        of them are lazy -- his word -- and
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 98 of 343
Case 3:11-cv-22408-MGC-EDocument 2Squares on 6189 Docket 04/23/2019 Page 68 of
281
March 11, 2019

1      what they do is they don't really

2      change the settings from the last time

3      we did a label.

4           So there's no documentation,

5      there's no consistency, it changes all

6      the time.  You've got multiple

7      machines that come with different

8      fonts.  And who makes the decision?

9      Well, the machine operator -- the lazy

10     machine operators will key it in, and

11     that's how the printer knows what

12     labels to put out onto the boards.

13          So I'm going to do one more

14     flipping around.  We're going to go

15     from 37 and I want to go to the

16     residual board on page 40.  If you'll

17     go to slide 40 for me.  I'll come back

18     and pick up these other three slides.

19          This becomes important because

20     in December of -- just this last year,

21     Taishan goes out and finally looks for

22     examples of what they call

23     American-sized drywall.  That's their

24     new euphemism for the stuff that they

25     knew that they sent to the United

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/08/19 Page 99 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 69 of
281
March 11, 2019

```
 1          States.  And they -- they say, we
 2          searched for it to see if it was
 3          possible that the residual boards, in
 4          every corner of the warehouse, and in
 5          the end I discovered these residual
 6          boards.  So I called lawyers and the
 7          lawyers came and took pictures.
 8               Your Honor asked me a minute
 9          ago, what were those residual boards?
10          There were only three types.  In slide
11          41, which is the next slide, you'll
12          see that they did MADE IN CHINA MEET,
13          singular, OR EXCEEDS ASTM.
14               Not pictured here, they had a
15          stack of boards that had what you see
16          above, you know, the MEET OR EXCEEDS,
17          but also had Crescent City on it.
18          That is for the Louisiana case.  It's
19          not an issue in the state of Florida.
20               And then in a final photograph,
21          which we can supplement to you,
22          TG-PID-22.  It's very difficult to
23          read.  What we call it internally, it
24          was an illegible marking, and we're
25          not making really heads or tails out
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 100 of 343
Case 1:11-cv-22408-MGC Document 294 Entered on FLSD Docket 04/29/2019 Page 70 of 281
March 11, 2019

1    of it.

2         So as the special master has

3    now clearly discerned, we don't have

4    one exemplar per bucket.  We don't

5    have what they contend to be like a

6    mug shot book.  Let's get every label

7    you ever made, lay them out.  Then

8    when we get a photograph from one of

9    the houses we can compare it to the

10   mug shot book and see which labels,

11   what matched.  And if there's a match,

12   a photo identification, you have the

13   product ID.

14        So what we have here is now

15   we've got three mug shots.  That's all

16   we've got.  One of them we can't read.

17   Two of them, now, Taishan wants to

18   take the position that we're lucky

19   that they found them, because if they

20   can match -- now they're going to be

21   the arbiters.  So if they match the

22   font and the wording, the lettering to

23   the sample, they'll admit it.  And if

24   you can't, well, that's not their

25   drywall.

March 11, 2019

```
 1              Why don't we have a full mug
 2        shot book after all this time?  I
 3        believe Mr. Montoya made the point
 4        repeatedly, which is, the strategy has
 5        been don't give anything hurtful to
 6        us; only give things that are
 7        beneficial to us.
 8              Why these boards?  Well, they
 9        want to use them now as a sword.
10        They're going to say that unless it
11        meets these fonts exactly, we're going
12        to say, no, that's not our font.  We
13        didn't print that way.
14              So the last time I'll do it,
15        but if you'll go up to slide 38.  So
16        Venture Supply, there were only five
17        in Florida, they've all been admitted.
18              Why do we put the slide in
19        here?  Because it elegantly
20        demonstrates just how many different
21        fonts, type styles, layouts are here.
22        I think I'll jump up out of the chair
23        and actually point at a couple of
24        things here.
25              Number one, different printer
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 102 of 343
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/29/2019 Page 72 of 281
March 11, 2019

```
 1          types.  Look at the smooth printing.
 2          Different technical people use
 3          different words for it, but my IT
 4          people tell me this is technically
 5          called an impact printer versus a
 6          nonimpact printer.  I think of laser
 7          versus an old dot matrix.
 8               So Venture here is clearly the
 9          more advanced type of printer that's
10          making the nice smooth label.  And if
11          you'll look for the other red one
12          here, you've got these rows of
13          printing where it's spitting dots out
14          to create the letters that way.
15               So clearly you've got two
16          different types of printers here that
17          Taishan is using to print the label
18          VENTURE SUPPLY INC.
19               Mr. Che, in his deposition,
20          said:  We never did this.  But clearly
21          they did.  Clearly they did.
22               Why is that important?  Because
23          if we turn over photographic proof
24          with this type of printing, they're
25          denying it, saying we never did it.
```

March 11, 2019

```
1      Until they're caught.  Oh, yeah, I
2      guess we did.  And then they're going
3      to back off and come up with yet
4      another strategy on how they're going
5      to deny it.
6            What are the other differences?
7      Print differences.  Look at the E here
8      and here and here.  That's at least
9      three different types of Es.
10           Font.  Look at the U's.  This
11     one's got kind of an angle in it.
12     This one comes down and makes a harsh
13     kind of 90-degree turn, and this one
14     is a nice loop.  Different fonts.
15           And then this goes to the lazy
16     machine operator.  I hate the term,
17     but I'm using what Mr. Che told me,
18     not my characterization.  Are you
19     putting a space after the period, as,
20     you know, was drilled into us in
21     grammar school?  Or are you going to
22     jam it all together, not put the
23     space?
24           So now we're down on font
25     levels to this tremendous variation
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 104 of 343
Case 1:11-cv-22408-MGC Document 291 Entered on FLSD Docket 04/29/2019 Page 74 of 281
March 11, 2019

```
 1         depending on the machine operator on
 2         any given day, on which machine that
 3         it's being done on, what's the
 4         standard fonts.
 5              But the point, Special Master,
 6         becomes that any attempt by Taishan to
 7         disavow a board because the font
 8         doesn't match what's in that residual
 9         board is hopelessly insupportable
10         because they can't account for the
11         massive amount of variation that they
12         had within their own printers and with
13         their own print operators, without a
14         manual.
15              Gosh, it would be nice to have
16         the paper, right?  What did they
17         actually put on the board.
18              In this next slide, again,
19         late-discovered documents, just got
20         them.  And we're looking at
21         specifications that were internal to
22         the factory, and look at this.  It
23         says board with dimensions and so that
24         3660x1220x12.7-millimeter, that's the
25         metric equivalent of the U.S. drywall.
```

March 11, 2019

1    I guess their machines ran off of

2    millimeters.

3         So 12-foot by 4-foot by -- I'm

4    sorry, 12-foot by 8-foot by half an

5    inch thick, that's 3660x1220x12.7mm.

6    So this is clearly going to the United

7    States.  I'm just going to steal one

8    of my colleague's thunder, because

9    Patrick stole a couple of my things.

10        But IMT, we're going to point

11   that -- that's one of the issues that

12   we have here.  So we know this is

13   going to have a specific marking.  But

14   look here at the spray markings that

15   are attached to the document.  Produce

16   them.  We want to see what your

17   instructions were for the spray

18   marking so we can have them.

19        Answer:  The information of the

20   spray marking that is attached for the

21   use of the worker who inputs the

22   information, when they're done with

23   the information, the piece of paper is

24   thrown away.  This is our common

25   practice.

March 11, 2019

```
 1              I come back to the slide
 2        Patrick showed you with the 12 columns
 3        of information down to, you know,
 4        where it was made, when it was made,
 5        the cost, et cetera.  They've got
 6        their internal records when they want
 7        them for their purposes.
 8              When we ask for records,
 9        everything either never existed or was
10        thrown away.
11              I'm going to go off on a
12        tangent for one second and say these
13        are the markings on the boards, but
14        the edge tape that goes along the side
15        where they said Taihe -- they admitted
16        that one because that was their
17        standard tape they used over and over
18        again, it's in product catalogs.  You
19        can't miss it.
20              But we asked them, where's the
21        rest of the documents for what you
22        printed on other edge tapes?  Like
23        they made a specialty tape for Venture
24        Supply.  Show us how you made the edge
25        tapes for U.S. customers.
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 107 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 77 of
281
March 11, 2019

 1              In the deposition of Mr. Che,

 2      he told me that the separate factory

 3      that made the tapes had no computers,

 4      so they couldn't take an e-mail.

 5      There were no records of what they

 6      made.  And the way they would know

 7      what to print was that somebody would

 8      call them on the phone and tell them

 9      to print tape, that they wouldn't

10      write it down anywhere, and there were

11      no permanent records.

12              So you've got a warehouse

13      producing millions of miles of edge

14      tape with no e-mails, no computers and

15      no filing cabinets.  And that was the

16      document production for the edge tape

17      examples.

18              So we got no spray marking

19      documents and we got no edge tape

20      documents.

21              In conclusion, the plaintiffs

22      would ask that as the day unfolds with

23      respect to these individual so-called

24      buckets and the issues thrown back and

25      forth about burden of proof and what

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 108 of 343
Case 1:11-cv-22408-MGC Document 291 Entered on FLSD Docket 04/29/2019 Page 78 of 281
March 11, 2019

```
 1          has been shown versus not, that the

 2          Court take into account not only

 3          Mr. Montoya's description of the

 4          practices as found by Judge Fallon of

 5          delay and obfuscation by the

 6          defendant, but also take into account

 7          the incredible lengths that the

 8          plaintiffs have gone to to try and

 9          find this information from them, to

10          build the mug shot book to have every

11          picture so that we can compare

12          markings and do a fair assessment,

13          when we're told that we get two boards

14          that you can actually read the photo

15          of and that's it, despite ten years of

16          effort.

17              So that when we show that

18          enough drywall that says MEET OR

19          EXCEEDS was sent by Taishan into

20          Florida to make thousands of homes,

21          and that we have those markings, that

22          they haven't shown that anybody else

23          in China ever sent a board out that

24          said that, that when they argue that's

25          not enough, other people could have
```

March 11, 2019

1     done it, that the special master takes

2     into consideration, we asked at every

3     step for this information, and we're

4     getting implausible answers like, oh,

5     yeah, those documents that we had for

6     spray markings, we threw those away.

7     Never had a document for edge tape,

8     and we could only find two samples in

9     2018, nine years after Judge Fallon

10    issued an order saying everyone

11    preserve physical evidence in this

12    case.

13         And find that we have satisfied

14    our burden of moving forward with

15    proof that they made a drywall with

16    the markings that we claim, and that

17    the inference based on their conduct

18    should be that unless they can

19    disprove it, that's their drywall.

20         Thank you.

21         SPECIAL MASTER LEE:  I have one

22    question.  Did plaintiff ever obtain

23    the earlier marking manuals, either

24    for China-produced drywall or U.S.

25    directly?

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 110 of 343
Case 1:11-cv-22408-MGC Document 294 entered on FLSD Docket 04/29/2019 Page 80 of
281
March 11, 2019

1          MR. SERPE:  We had the manual

2     itself in Chinese produced to us from

3     2015.  Now, the earlier manuals --

4          MS. DUGGAN:  We were told

5     that -- Christy can correct me if I'm

6     wrong, that they overwrote them as

7     they revised them and there is no

8     longer an earlier version; is that

9     correct?

10          MS. EIKHOFF:  You had the

11     earlier manuals from -- that were

12     produced in 2012, and that was the

13     basis of your request for the

14     manuals -- you had, I guess, one of

15     them, right?  You had one of the

16     manuals.  That was the basis of your

17     request the Thursday before the

18     Tuesday deposition for the manuals

19     that were referenced in what you had.

20          SPECIAL MASTER LEE:  That's not

21     what he said.

22          MS. ROBERTSON:  Can I please

23     clarify?

24          I think this was unfortunately

25     some wires got crossed.  We had

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 111 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2013 Page 81 of 281
March 11, 2019

```
 1          pulled -- we had a document that was

 2          produced to us.  It referred to two

 3          manuals.  We asked for the two

 4          manuals --

 5                  SPECIAL MASTER LEE:  What was

 6          the date of that document?

 7                  MS. ROBERTSON:  That document

 8          was dated 2009, I believe.

 9                  MS. EIKHOFF:  And it was

10          produced in 2012 by Taishan's prior

11          counsel.

12                  MS. ROBERTSON:  Correct.  And

13          it referred to these two manuals.  We

14          asked for the two manuals that were

15          referred to in the document.

16                  I think that potentially where

17          there's a little bit of -- where we're

18          not having a meeting of the minds is I

19          think that you were just representing

20          is that one of the attachments to that

21          2009 e-mail was one of the -- one of

22          the documents we sought.  And we

23          didn't read the document to be that

24          way.

25                  MS. EIKHOFF:  Okay.
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 112 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 82 of 281
March 11, 2019

1              MS. ROBERTSON:  We read the

2      document to refer to two manuals that

3      we only received the later versions

4      of.

5              MS. EIKHOFF:  Okay.

6              MS. DUGGAN:  But am I correct

7      that you've represented to us that the

8      earlier versions of these manuals have

9      been overwritten over time, so they

10     don't exist?

11             MS. EIKHOFF:  That's right.  We

12     have the current versions of the

13     manuals and the declaration --

14             MR. SERPE:  For domestic --

15             MS. EIKHOFF:  For domestic,

16     that's right.

17             MR. SERPE:  There was never a

18     separate manual for American-sized or

19     U.S. imports.

20             MS. EIKHOFF:  And I'm sorry for

21     talking over you.  Sorry.  And I

22     apologize to the court reporter too.

23             But you're right, there was

24     never a separate manual that would

25     govern foreign sales, foreign

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 113 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 83 of 281
March 11, 2019

1      markings.  So the manuals that were

2      produced relate to Chinese domestic

3      practices.

4           MR. SERPE:  Subject to our

5      suggestion to the special master that

6      that's implausible.  That didn't

7      happen.  And this is another example

8      that everything they do is highly

9      detailed, except when it benefits them

10     not to have a manual, not to have

11     documents, not to have attachments,

12     and then they disappear.

13          As they indicated, all the way

14     back to 2009, they were going to do,

15     only send beneficial documents.  What

16     does that mean?  Don't send the ones

17     that hurt us.

18          SPECIAL MASTER LEE:  Okay.  So

19     why don't we take a five-minute break,

20     and we'll turn it over to defendant.

21          MS. EIKHOFF:  Sounds great.

22          (Recess taken, 10:58?a.m. to

23     11:07?a.m.)

24          MS. EIKHOFF:  Ms. Lee, I've

25     already introduced myself.  I'm

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 114 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 84 of 281
March 11, 2019

1    Christy Eikhoff of Alston & Bird.

2    Alston & Bird has represented Taishan

3    since 2015 when Taishan came back into

4    the litigation after they had taken a

5    break from -- they broke from their

6    prior counsel in the case.

7            And Mr. Taylor, my partner

8    Mr. Taylor, Mr. Venderbush, we have

9    been working on this case for the last

10   four years plus.  And on the day that

11   we came into Judge Fallon's courtroom,

12   which was March 17th, 2015 was when we

13   first physically appeared in his

14   courtroom, and we stood up and said to

15   Judge Fallon that Taishan was coming

16   back into the litigation to find out

17   who did they owe and how much did they

18   owe them.

19           Taishan understands it's in

20   default.  Taishan does not contest

21   jurisdiction in Florida.  And that has

22   been our focus over the four-plus

23   years that we've been involved in this

24   case, and that is our focus here today

25   to find out who had Taishan drywall

March 11, 2019

1    and how much should the damages be.

2    That's what we're here to do.

3         Now, what the plaintiffs have

4    focused on today is exactly what we

5    predicted they would focus on, and we

6    said it in our brief; that they're

7    going to come in and hammer two themes

8    home.

9         One theme that they will hammer

10   is that there were only ever two

11   Chinese drywall manufacturers that

12   sent goods into the U.S.  There was

13   Knauf, who we settled with, and then

14   there was Taishan, who should be

15   responsible for everything else that's

16   not Knauf.

17        And that myth, as we said in

18   our brief and as we'll go through in

19   more detail today, is demonstrably

20   false.  There were other Chinese

21   drywall manufacturers that sent goods

22   into the marketplace.  We'll get into

23   that in just a few slides.

24        But what they've spent the

25   lion's share of their time today doing

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 116 of 343
Case 1:11-cv-22408-MGC Document 294 Entered on FLSD Docket 04/29/2019 Page 86 of 281
March 11, 2019

```
 1          is to paint Taishan as a bad actor, to
 2          say Taishan's a bad guy, the company
 3          is full of bad guys, and they've been
 4          bad guys in this litigation; and
 5          therefore, they shouldn't get a fair
 6          shake.  We should just assume that
 7          they're responsible for everything,
 8          unless they can affirmatively disprove
 9          it.
10              There's a lot of problems with
11          that approach, and we're going to go
12          through those too.  But one of the
13          problems is you cannot take at face
14          value their characterizations of
15          Taishan's conduct and Taishan's
16          motives in this litigation.  Some of
17          their renditions of what has happened
18          is misleading.
19              In particular, a point that
20          Mr. Montoya made, he said that we lied
21          to the Fifth Circuit.  Not going to be
22          delicate about it, Taishan lied to the
23          Fifth Circuit.  That is what he told
24          you.  That is not true.  That did not
25          happen.
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 117 of 343
Case 1:11-cv-22408-MGC Document 292 Entered on FLSD Docket 04/29/2019 Page 87 of 281
March 11, 2019

1          As Mr. Montoya explained, there

2     are two related defendants that are

3     called Taishan.  There is Taishan

4     Gypsum, TG, and then Taian Taishan

5     Paperboard, TTP.  TTP is a subsidiary

6     of TG, and for purposes of this

7     litigation, we do call them both

8     Taishan.  We tend to merge them

9     because, for all practical purposes,

10    the liability is ultimately going to

11    be the same.  But they're two separate

12    companies.

13          And so these two separate

14    companies, TG and TTP, submitted in

15    the MDL two separate Manufacturer

16    Profile Forms, or MPFs.  One of the

17    Manufacturer Profile Forms was for

18    TTP, one for TG.

19          TTP's Manufacturer Profile Form

20    has a big exhibit to it, and it's a

21    chart, and you've seen it and you'll

22    see more of it; the chart that lists

23    each of the sales of the drywall in

24    American sizes and who ordered it,

25    what the sizes were, what the spray

March 11, 2019

1    markings were, what the edge tape was.

2         But TG only made two sales ever

3    to a U.S. company, and both of those

4    sales were to Venture Supply, a

5    category that we have admitted.

6         So here's Taishan Gypsum's

7    Manufacturer Profile Form from the

8    case.  It is not attached to what the

9    plaintiffs submitted, and frankly,

10   it's not attached to what we submitted

11   because Venture Supply is not at

12   issue.  That's not a disputed

13   category, so there really wouldn't be

14   any reason for them to show TG's

15   Manufacturer Profile Form with these

16   two sales.

17        But the quote that he showed

18   you from the Fifth Circuit was a quote

19   that said TG made two sales to a U.S.

20   company.  That is true.  It was to

21   Venture Supply.

22        So I use that as an example of

23   how careful you should be in accepting

24   some of the characterizations of our

25   client, mischaracterizations of our

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 119 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 89 of 281
March 11, 2019

```
1          client.
2               So they can be misleading, but
3          more importantly here, they're
4          irrelevant, because under the law, the
5          factfinder, the adjudicator, which is
6          the situation that you have been
7          commissioned to be, cannot be
8          prejudiced by thinking that someone's
9          a bad guy or a good guy.
10              Your job is to look at the
11         facts and the evidence and to make
12         decisions based on what the facts and
13         the evidence show, not the paint with
14         which a party has been colored as a
15         bad guy or a good guy.
16              And the reason that the
17         plaintiffs spend so much time
18         hammering these two themes, we
19         believe, is because it is -- they're
20         replacing those themes for evidence.
21              If they have an evidentiary gap
22         where they can't prove that Taishan
23         made the drywall that's at issue, then
24         they want to fill that gap with
25         presumptions that Taishan is a bad
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 120 of 343
Case 1:11-cv-22408-MGC Document 294 Entered on FLSD Docket 04/29/2019 Page 90 of
281
March 11, 2019

1    actor and a presumption that Taishan's

2    the only other manufacturer out there

3    who could have possibly made this, so

4    let's just assume it was Taishan.

5            Now, plaintiffs acknowledge

6    Florida law that they have the burden

7    of proof and that their burden of

8    proof is to show by the greater weight

9    of the evidence that these boards are

10   manufactured by Taishan.

11           This is from the plaintiffs'

12   brief, and it is a correct statement

13   of the law:  The determination before

14   the special master is governed by the

15   greater weight of the evidence

16   standard.

17           That is correct, and Mr. Serpe

18   at the beginning of our proceedings

19   today, said we bear the burden of

20   proof, and so that's why we think we

21   should have a rebuttal.  That's a fair

22   point.

23           But then from that clear and

24   correct statement of Florida law, they

25   take a bizarre pivot to say but you

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 121 of 343
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/29/2013 Page 91 of 281
March 11, 2019

```
 1          should change Florida law.  Adjustment
 2          should be made to the burden of proof.
 3          And Mr. Montoya said explicitly, the
 4          burden of proof should be flipped
 5          here.
 6               Special Master Lee, you don't
 7          have the authority to flip the burden
 8          of proof.  You don't have that
 9          authority as the special master, but
10          more importantly, Judge Cooke doesn't
11          have that authority.  No district
12          court has that authority.  And this
13          has been tried before in the product
14          ID setting.
15               The Eleventh Circuit in the
16          Blackston case, that was a case that
17          involved asbestos, another product
18          that caused a lot of harm to a lot of
19          people over a lot of years and a lot
20          of litigation, and aggravation on
21          behalf of all of the parties involved
22          in the courts.  Asbestos has been a
23          litigation nightmare.
24               And so there was a plaintiff in
25          the Blackston case that said to the
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/02/19 Page 122 of 343
Case 1:11-cv-22408-MGC Document 294 Entered on FLSD Docket 04/29/2013 Page 92 of 281

March 11, 2019

1       court, similarly to what the

2       plaintiffs are saying here today:

3       This isn't fair that we should have to

4       prove that you made this asbestos.

5       It's too hard.  It's too difficult.

6       There aren't enough records, there's

7       not enough identifying features.

8               We think there should be a

9       rebuttable presumption that the

10      defendant made this asbestos and make

11      the defendant rebut it.  If they can't

12      rebut it, then it's theirs.

13              And the Eleventh Circuit said

14      you can't do that.  Even if you've

15      been litigating a lot of years, even

16      if the records aren't great, even if

17      it's hard.  The burden of proof is

18      still on the plaintiff.

19              Now, plaintiffs have cited to

20      no Florida law that would allow this

21      court or you to change the burden of

22      proof.  They cited to the law what the

23      burden of proof is.

24              Now, we all know that under

25      Rule 37 there are times when an

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 123 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2019 Page 93 of 281
March 11, 2019

 1      adverse inference can be imposed by a

 2      court, but Rule 37 adverse inferences

 3      are governed by a very concrete set of

 4      judicial principles and rules that are

 5      not invoked here.

 6           The plaintiffs haven't moved

 7      for a Rule 37 sanction.  As we have

 8      explained, no spoliation occurred

 9      here, and they have admitted that our

10      recordkeeping was in the normal

11      course.

12           When Mr. Serpe was selling you,

13      oh, they got these slips of paper and

14      then they input them in the machine

15      and then they just threw them away.

16      Yeah, because it was a piece of paper

17      in a factory, and they threw it away

18      in the normal course.  They didn't

19      know there was any U.S. litigation.

20      This was in China in 2006.  They

21      didn't know that there was going to be

22      litigation over it.

23           And we cited in our brief

24      Eleventh Circuit law and all law is

25      clear on this issue.  Unless and until

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 124 of 343
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/29/2013 Page 94 of
281
March 11, 2019

1          you know that there's a claim being

2          brought, you don't have to save every

3          piece of paper, and they didn't.  So

4          no adverse inference can flow from

5          that.

6                   And Mr. Montoya, as we

7          expected, told stories about how bad

8          things were in Hong Kong in 2012 and

9          everybody was agitated, the judge was

10         agitated.  That was years ago, and

11         Judge Fallon has dealt with that.

12         Those were in his court.  They were

13         his issues to deal with and he has

14         dealt with them.  The Peng issues that

15         you heard about, Judge Fallon dealt

16         with that.

17                   There have been times in this

18         litigation, even since we've come in,

19         where we've had to deal with some

20         discovery issues and sometimes --

21         sometimes the plaintiffs have won

22         those issues, sometimes we've won.

23         There's been some back-and-forth, as

24         you would expect.

25                   But that's not before you

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 125 of 343
Case 1:11-cv-22408-MGC Document 294 Entered on FLSD Docket 04/29/2013 Page 95 of 281
March 11, 2019

1      today, and that cannot change the

2      burden of proof.  The fact that there

3      have been discovery issues in the past

4      that another judge dealt with, that

5      doesn't change the burden of proof.

6      That doesn't flip the burden as

7      they're asking you to do.

8           So they didn't refer to it

9      today, but they talk about the Tariff

10     Act of 1930.  Same thing.  It's not --

11     that can't flip the burden.  And so

12     there's no basis under Florida law

13     that says that a violation of a 1930

14     statute would shift the burden of

15     proof.

16          And I want to move past this

17     because they didn't spend much time on

18     it, so I don't want to spend more time

19     on it than they do, but I will say

20     this:  Even if the word "China" had

21     been printed on some of the boards,

22     that obviously doesn't resolve the

23     product ID issues, because we have

24     product ID disputes about boards that

25     say "China" on them.  So it would not

March 11, 2019

```
 1          shed any more light on whether Taishan

 2          made the boards or not.

 3               Now, let me turn away for a

 4          minute from their characterization of

 5          Taishan as a bad actor and talk about

 6          this myth, pervasive myth, that if

 7          it's not Knauf, then it must be

 8          Taishan.

 9               So we laid this out in our

10          brief, and I'll explain it again

11          today, that there have been two

12          Chinese manufacturing defendants that

13          were served and that appeared in this

14          litigation:  Knauf and then Taishan

15          and BNBM -- so three, but we're

16          talking about Taishan today, okay?

17               And what the plaintiffs have

18          done and the myth that's been created

19          and perpetuated over the course of

20          this litigation is, well, Knauf put

21          their name on their boards, and so

22          Knauf boards are Knauf's.  Knauf

23          settled those cases a few years ago,

24          and so now, everything else we have

25          that we think is Chinese drywall must
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 127 of 343
Case 1:11-cv-22408-MGC Document 29 Entered on FLSD Docket 04/29/2013 Page 97 of
281
March 11, 2019

```
 1          have been made by Taishan.

 2                But plaintiffs know that there

 3          are other Chinese drywall

 4          manufacturers besides Knauf and

 5          Taishan and BNBM.

 6                Mr. Serpe today referred to who

 7          is this third bogeyman.  Who else

 8          could possibly have made this drywall

 9          if not Taishan?  They asked the

10          question in their brief:  If the

11          drywall is not Knauf's and, as Taishan

12          claims, it is not Taishan's, it begs

13          the question whose drywall is it, as

14          if this is an unanswerable question.

15                But they know the answer to

16          this question because they sued other

17          Chinese drywall manufacturers.  They

18          sued them, but they did not pursue

19          them.

20                And so you will see today as we

21          go through the specific categories

22          that there is another major Chinese

23          drywall manufacturer in China that's

24          called Shandong Chenxiang Building

25          Materials.  Today we're going to call
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 128 of 343
Case 1:11-cv-22408-MGC Document 294 Entered on FLSD Docket 04/29/2019 Page 98 of
281
March 11, 2019

```
 1          it Chenxiang or C&K.  There's Pingyi
 2          Baier.  We're calling them Baier.
 3          There's Tai'an Kangyija Building
 4          Materials.  We'll call them Kang Yi
 5          Jia.
 6                These are just some of the
 7          other manufacturers that we know made
 8          drywall that came into the United
 9          States and that we know the plaintiffs
10          sued because they're named on the
11          early complaints.
12                But instead of pursuing those
13          other manufacturers, they've had their
14          eyes on Taishan, and with that blinder
15          vision are now saying Taishan made
16          everything.  Unless it says Knauf, you
17          should assume that Taishan made it.
18          You should find that Taishan made it.
19                But it's not just the
20          plaintiffs that know about these other
21          manufacturers.  The government
22          agencies of the United States know
23          that there are other manufacturers.
24          So when there was -- when the problem
25          with Chinese drywall arose in the 2008
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/08/19 Page 129 of 343
Case 1:11-cv-22408-MGC Document 294 Entered on FLSD Docket 04/29/2013 Page 99 of 281
March 11, 2019

```
 1        and '9 time period, and it became --

 2        as Mr. Montoya said, it was really the

 3        first time Chinese drywall had ever

 4        come into the United States because

 5        drywall supply had always been handled

 6        domestically until that point, until

 7        the circumstances created a shortage

 8        of domestic supply and forced builders

 9        and drywall suppliers to go outside of

10        the U.S. for their drywall needs.

11              So when this problem arose, the

12        Consumer Product Safety Commission did

13        a study into the drywall -- Chinese

14        drywall issue, and they identified

15        other manufacturers, including

16        Chenxiang and including Baier.

17              And the Housing and Urban

18        Development Agency also did a study.

19        Theirs came later than the CPSC study

20        and it is our understanding from

21        reading those reports that they relied

22        on some of the data that had been

23        collected by the CPSC, and they

24        concluded that 6,229,166 boards of

25        drywall from China came into the
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 130 of 343
Case 2:11-cv-22408-MSC-EEF Document 293 Entered on FLSD Docket 04/29/2013 Page 100 of 281
March 11, 2019

1    United States in the 2005 to 2007 time

2    frame, and by the way, the vast

3    majority came in in 2006.  That was

4    the year that it really came in.

5         What we've done is we've said,

6    well, this is the volume -- these are

7    the three defendants that the

8    plaintiffs have pursued.  This is the

9    volume that Knauf has reported.  This

10   is the volume Taishan reported.  This

11   is the volume BNBM reported.

12        And so that leaves about 22% of

13   the marketplace supplied by other

14   Chinese drywall manufacturers that

15   aren't one of the three defendants

16   that actively have been involved in

17   this litigation.  So that's more than

18   a fifth of the marketplace are other

19   Chinese drywall manufacturers.

20        Who is in this piece of the

21   pie, Chenxiang, Baier, Kang Yi Jia,

22   and countless others, smaller

23   manufacturers, some whose names we

24   know, some we don't know.

25        So there was a statistic that

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 131 of 343
Case 2:11-cv-22408-MGC Document 295 Entered on FLSD Docket 04/29/2015 Page 101 of 281
March 11, 2019

1      was used in the plaintiffs' opening

2      that Taishan has only admitted to 15%,

3      only 15%, and I think there was maybe

4      a little bit of -- the way the numbers

5      were presented perhaps didn't tell you

6      the full story; and so we thought --

7      we were scratching our heads, because

8      here we are at a PID, categorical PID

9      hearing, and we're looking at how much

10     of this PID we've admitted by category

11     and how much we're still disputing.

12          And if you look at how much of

13     the boards, according to the

14     plaintiffs' numbers, fall into the

15     categories that we have admitted, we

16     have admitted 47% of the boards by

17     category, almost half.

18          Keeping in mind we were 31% of

19     the marketplace, but we have admitted

20     almost half of these boards by

21     category so they can tell you how they

22     got to 15%.

23          What I surmise, based on what I

24     heard, is they looked at other

25     objections, nonproduct ID objections

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 132 of 343
Case 2:11-cv-22408-MGC Document 259 Entered on FLSD Docket 04/29/2019 Page 102 of 281
March 11, 2019

```
1        that we have asserted.  We do have
2        other defenses.  We'll get to those on
3        another day, they're not what we're
4        here for.
5             What we're here for today is to
6        determine product ID by category, and
7        within those categories, our
8        admissions of those categories cover
9        almost half of the boards that are
10       being presented to you.
11            So speaking of those other
12       defenses and other stages of your
13       adjudication as a special master, we
14       wanted to reiterate a point that we
15       made in our brief, but that's
16       important today.
17            So today's hearing is about the
18       categorical PID attribution.  I like
19       to think of that as the macro
20       determination, whether certain big
21       categories can be rightfully
22       attributed to Taishan with the
23       plaintiffs' proof by the greater
24       weight of the evidence, and which ones
25       there is insufficient proof to
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 133 of 343
Case 2:11-cv-22408-MGC-TEB Document 259 Entered on FLSD Docket 04/29/2019 Page 103 of 281
March 11, 2019

1          attribute the whole category to

2          Taishan.

3                    Now, there still will need to

4          be, in some cases, a claim-specific

5          determination of whether the

6          claim-specific proof falls into that

7          category.  So let me give you an

8          example.

9                    Taihe edge tape, as Mr. Montoya

10         told you, is a product ID marking that

11         we admit is ours, and I know that

12         there's been some things come up about

13         maybe it's counterfeit, maybe it's

14         not.

15                   For purposes of this

16         litigation, we have said this Taihe

17         edge tape is ours, and we're going to

18         concede for litigation purposes that

19         it's ours, even if maybe it was

20         counterfeited, it doesn't matter.  If

21         it looks like this, we are taking

22         responsibility for it.

23                   It says Taihe in English, by

24         the way.  These characters have our

25         brand name in Chinese.

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 134 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2013 Page 104 of 281
March 11, 2019

1           But some of the proof for some

2       of the specific claims aren't this

3       clear, and so this is an example of

4       one of the claims that the plaintiff

5       says, well, this is Taihe edge tape,

6       and you just see a little piece of

7       tape and a little line of blue.

8           And we object to that because

9       we say if this is all you've got,

10      this, to us, is not enough to prove

11      that this is a Taihe product.

12          We have identified those

13      objections on our claim-specific

14      contest.  We've done the preliminary.

15      We're going to do the final.  We are

16      working with the plaintiffs' side to

17      try to resolve as many of those

18      differences as we can, but

19      undoubtedly, there may be some, a few

20      at the margins, where we're going to

21      need a claim-specific proof

22      determination made of whether it falls

23      into the category or not.

24          So this is step one of PID, and

25      that second step will come in those

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 135 of 343
Case 1:11-cv-22408-MGC-EEF Document 299 Entered on FLSD Docket 04/29/2019 Page 105 of 281

March 11, 2019

1          subsequent proceedings.

2                  So at this point, we are ready

3          to get into the claim-specific

4          categories and as we laid them out,

5          these are the ones that are in

6          dispute.

7                  Category I and J are the

8          generic categories that are partially

9          contested, and we will -- have agreed

10         to take them in order as they're laid

11         out.  Do you have any questions for

12         me, Ms. Lee?

13                 SPECIAL MASTER LEE:  Do we know

14         anything about any markings used by

15         the other Chinese drywall

16         manufacturers or has that not been

17         discovered?

18                 MS. EIKHOFF:  That's a very

19         good question.  We have records that

20         we have obtained and we will show you

21         that demonstrate what the other

22         manufacturers were doing in the

23         marketplace, but we do not have

24         detailed information about exactly

25         what their markings looked like

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 136 of 343
Case 1:11-cv-22408-MGC Document 259 Entered on FLSD Docket 04/29/2013 Page 106 of 281
March 11, 2019

```
1        because they were never pursued in
2        this litigation.
3              And so if they had been
4        pursued, let's say that they had been
5        served and they came into the U.S.
6        litigation, like Taishan and BNBM and
7        Knauf did, they would have a
8        Manufacturer Profile Form, and their
9        Manufacturer Profile Form would do
10       what TTP's did and itemize each order
11       and describe the spray markings on the
12       side and describe what was on the end
13       tape.  But because they were never
14       pursued as defendants, we don't have
15       that.
16             So that's one of the ways that
17       the plaintiffs have tried to flip the
18       script and say we sued you, you gave
19       us a list of what you did, and now
20       we're going to say it must be you
21       because we see this generic marking on
22       your form, so it must be you.  It must
23       be you.  You said that you produced
24       some blank boards.  All blank boards
25       must be you.
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 137 of 343
Case 1:11-cv-22408-MGC Document 295 Entered on FLSD Docket 04/29/2019 Page 107 of
281
March 11, 2019

```
1              Well, that's not enough,
2       especially when, as you will see as we
3       go through the evidence, the evidence
4       will show that it is more likely than
5       not and sometimes incredibly
6       compelling showing that the drywall at
7       issue that they're putting to Taishan
8       was made by another specific
9       manufacturer, ones that we can
10      identify and ones that they could have
11      pursued and didn't.
12              SPECIAL MASTER LEE:  And how
13      does the defense propose that we
14      resolve the edge tape issues if, as
15      the plaintiff says, the edge tape is
16      typically removed during installation
17      of the drywall?
18              MS. EIKHOFF:  So the way that
19      the PID claim-specific determinations
20      have been made is to look at whatever
21      product ID documentation is available,
22      and so the decisions have to be made
23      based on what was provided at the
24      time.
25              SPECIAL MASTER LEE:  Okay.
```

March 11, 2019

```
 1              Now we're going to go through
 2         specific categories, and we're going
 3         to have to switch back and forth.
 4              MS. DUGGAN:  I wanted to know
 5         if I could just make one clarification
 6         with regard to the defendants at issue
 7         in this case, and I don't think
 8         Ms. Eikhoff would disagree with me.
 9         There's TG, as we refer to as Taishan
10         Gypsum Company, and TTP, Taihe Taishan
11         Plasterboard Company, they were two
12         separate defendants that were sued.
13         They're both represented by Alston &
14         Bird here and previously by
15         Hogan Lovells, and there is a ruling
16         from Judge Fallon in the MDL and then
17         the Fifth Circuit Court of Appeals
18         that they are alter egos and one and
19         the same, and for that reason we refer
20         to them as Taishan and we consider all
21         the documents for both to be
22         applicable.
23              MS. EIKHOFF:  We agree with
24         that.  The quote that was given from
25         the Fifth Circuit court was in the
```

Case 2:09-md-02047-EEF-MBN Document 22297-7 Filed 12/09/19 Page 139 of 343
Case 2:11-cv-22408-MSG-EEF Document 299 Entered on FLSD Docket 04/29/2015 Page 109 of 281
March 11, 2019

```
 1         course of making that decision and
 2         specifically referred to TG having
 3         only two sales.
 4              MR. VENDERBUSH:  And that was
 5         relevant in the jurisdictional
 6         setting.
 7              SPECIAL MASTER LEE:  Okay.  So
 8         I think you're up.
 9              MR. MONTOYA:  We are if you
10         could switch the PowerPoints.  Judge,
11         I'm going to defer to Ms. Robertson
12         who's going to make the presentation
13         on C&K, and we're at slide 43 then.
14              SPECIAL MASTER LEE:  I think
15         we'll do this category and then we'll
16         get lunch.
17              MS. ROBERTSON:  All right.  So
18         the first bucket in our brief is C&K.
19         C&K is not on Taishan's Manufacturer
20         Profile Form.  C&K is not on the
21         informational reports that you heard
22         about earlier from Mr. Montoya.
23              However, plaintiffs do
24         recognize and observe that Taishan,
25         throughout the years, has acknowledged
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 140 of 343
Case 1:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/29/2015 Page 110 of 281
March 11, 2019

```
 1          that they exported drywall to the
 2          United States that they either don't
 3          know what markings were on them or
 4          they had unspecified markings.
 5               And that's clear on the
 6          Manufacturer Profile Form and that's
 7          also clear on the statistical
 8          spreadsheets you saw earlier.
 9               Specifically at slide 7, you
10          can see that the product label column
11          is filled with unspecified, and so we
12          believe that C&K could fall in the
13          sort of unspecified, unknown category,
14          despite the fact that Taishan doesn't
15          have it on their Manufacturer Profile
16          Form.
17               C&K, the markings do read C&K
18          GYPSUM BOARD, as well as ASTM C 1396,
19          MADE IN CHINA.  I skipped up to slide
20          47 just to give you a quick overview
21          of what the markings look like.  This
22          is from an Amorin claimant's home, and
23          then the very next slide is what is in
24          the PID catalog as well as Florida
25          Amorin claimants.
```

March 11, 2019

```
 1              So briefly real quick, as we
 2       get into these buckets and we start to
 3       talk about markings, what happened in
 4       the course of the litigation is a
 5       claimant would suspect drywall, maybe
 6       their -- suspect Chinese drywall.
 7       Maybe their neighbor found Chinese
 8       drywall, maybe they were in a condo
 9       unit, maybe had a smell.  One way or
10       another, in 2008-2009, plaintiffs
11       started to suspect they had this
12       Chinese drywall.
13              Usually this resulted in
14       calling an inspector or calling
15       somebody in the industry to say:  Will
16       you come look at my home?  Is there
17       any indication of Chinese drywall?  I
18       have these sort of concerns.
19              So with those concerns, an
20       inspector would come, and they would
21       do a visual inspection.  The visual
22       inspection was usually looking at some
23       sort of wiring, some sort of coil,
24       anything that was sort of metal, as
25       Mr. Montoya said.  Button pushing,
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 142 of 343
Case 2:11-cv-22408-MGC-EEF Document 299 Entered on FLSD Docket 04/29/2019 Page 112 of 281
March 11, 2019

```
 1          we're looking maybe even at light

 2          fixtures.  Is there corrosion on

 3          there?

 4               If there was a visual identity

 5          or perhaps there's corrosion, then you

 6          would start to do destructive testing,

 7          which would be removing boards from

 8          the home, removing chunks of boards

 9          and looking for markings.  So that's

10          why we kind of get into this marking

11          thing that comes up.

12               So the markings followed at

13          first the visual of I believe there

14          could be Chinese drywall in my home.

15          Just to give a background, it also

16          explains why sometimes we get full

17          boards, sometimes we have partial

18          boards.

19               Partial boards are usually

20          those that were more destructive

21          testing or pulled out.  Whole boards

22          are for those claimants who usually

23          did full remediation, which wasn't

24          always possible here, as we've heard.

25          There are a bunch of claimants who
```

Case 2:09-md-02047-EEF-MBN Document 22297-7 Filed 12/09/19 Page 143 of 343
Case 2:11-cv-22408-MGC   Document 299   Entered on FLSD Docket 04/29/2019   Page 113 of 281
March 11, 2019

```
 1          haven't even remediated their homes
 2          yet.  So those markings in those
 3          plaintiffs' homes aren't usually full
 4          boards because they haven't pulled
 5          those walls out yet.
 6              So we just have some quality
 7          issues.  Just trying to get a little
 8          bit of background on that.
 9              So back to C&K.  C&K clearly
10          shows C&K GYPSUM BOARD.  I don't think
11          there's a dispute with either side
12          that the product ID in this bucket
13          reads C&K.  We can agree on that.
14              Our link from the plaintiffs'
15          side is through Taishan's documents as
16          well as documents that were pulled
17          from a bankruptcy proceeding.  The
18          document here at slide 44 is a
19          contract proposal between
20          International Materials Group, IMG,
21          and Shandong Taihe.
22              It's very clear just from the
23          face of the document that you have IMG
24          desiring to do business with Taishan
25          in March of 2006 for drywall.  It is
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 144 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 114 of 281
March 11, 2019

1      unsigned, we understand that, but the

2      TG_1292, 1293, that was from the

3      production that was produced to us in

4      2012.  Apollo Yang is a representative

5      of Taishan who did have the authority

6      to engage in contracts on behalf of

7      Taishan with United States customers.

8                So how and why would

9      International Materials Group at all

10     be relevant to Florida specifically

11     and C&K drywall?

12               So Guardian Industries was a

13     distributor defendant in this

14     litigation.  They had depositions.

15     There was potentially -- there was

16     even a settlement that kind of came

17     out.

18               Guardian is trying to figure

19     out how to get this drywall in 2006.

20     There's a need, there's a shortage,

21     and we're getting a discussion here of

22     oh, well, International Materials

23     Group, sounds like they're working

24     with Taihe.

25               Taihe is shipping product to

Case 2:09-md-02047-EEF-MBN Document 22297-7 Filed 12/09/19 Page 145 of 343
Case 4:11-cv-22408-MGC-EGT Document 299 Entered on FLSD Docket 04/29/2019 Page 115 of 281
March 11, 2019

```
 1        the United States, so on, so forth.
 2        We're looking for these links.  We're
 3        trying to piece together what we can
 4        from the documents related to C&K.
 5              So just as a quick reminder, we
 6        have C&K -- or sorry, we have IMG
 7        dealing with Apollo, and again,
 8        confirmation that this is the same IMG
 9        that Guardian, a Florida distributor,
10        knows is working with Taihe.
11              We're going to go a tiny bit
12        weedy.  Unfortunately, Special Master,
13        we just kind of have to with this
14        particular bucket.
15              So this next document is a
16        contract between the seller, York
17        Supply Company, and the buyer, WCI.
18              York Supply Company has the
19        same address and common ownership as
20        IMG.  We have Steve Gordon and we have
21        Steve Gordon.  Common ownership and
22        same address came out and was
23        confirmed by their bankruptcy
24        proceedings when they went to the
25        bankruptcy with WCI.  Those are tabs
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 146 of 343
Case 3:11-cv-22408-MGC   Document 299   Entered on FLSD Docket 04/29/2019   Page 116 of 281
March 11, 2019

1          to our PID brief.  They are also in

2          the C&K section, as you might recall.

3               So as plaintiffs are trying to

4          piece these puzzles together, we're

5          starting to see a little bit of

6          overlap, a little bit of similarities

7          here.  It looks like we're getting a

8          link to Taihe.  We don't have board

9          markings.  You know, they were not

10         part of the residual boards from

11         Taihe.  We have our claimants'

12         markings and then we have these

13         documents that are suggesting that

14         Taihe sold this -- sold to York Supply

15         and York Supply sold to WCI.

16              WCI only has C&K in its homes.

17         Like that's what they build their

18         homes with.  So that's how we're

19         closing the loop in a way here, what

20         we've been able to understand.

21              Now, WCI and York, they were

22         sued, but they were sued at a time

23         when WCI was already going into

24         bankruptcy or was bankrupt, so this

25         document is not part of the litigation

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 147 of 343
Case 2:11-cv-22408-MGC-EEF Document 295 Entered on FLSD Docket 04/29/2015 Page 117 of 281
March 11, 2019

```
 1            here, but is a public document pulled

 2            from part of the bankruptcy

 3            proceedings that we're doing trying to

 4            piece together our product ID for C&K.

 5                 Now, when we actually look at

 6            the markings, which all C&K markings

 7            are denied by Taishan.  We are seeing

 8            that, more or less, it's C&K GYPSUM

 9            BOARD with ASTM C 1396, MADE IN CHINA.

10                 What plaintiffs contend is, as

11            we looked at the Venture Supply

12            markings that had so many variations

13            and there were some font similarities,

14            some similarities -- some fonts that

15            weren't similar as well as the

16            residual boards that had the MEET AND

17            EXCEED that then became similar.

18                 We find that we're also finding

19            lots of similarities here because,

20            importantly, photo ID 1, which is from

21            the Taihe tape section, is admitted by

22            Taishan.  These product, these

23            markings, this font is admitted by

24            Taishan.

25                 When we look here and we have a
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 148 of 343
Case 1:11-cv-22408-MGC Document 295 Entered on FLSD Docket 04/29/2019 Page 118 of 281
March 11, 2019

1    denial, but we're starting to see very
2    similar sort of fonts, caps, reading
3    about kind of in the same spot of the
4    board, but, you know, again, we're
5    denied here, we don't have Taihe tape
6    like we do here.
7         But as you sort of do kind of a
8    massage out the C&K bucket and you're
9    really kind of getting into the grits,
10   we're finding the contract ties that
11   are pretty suggestive that there was
12   some dealings with Florida companies
13   with Taihe to import board.
14        Those builders were using C&K
15   to complete their homes, and then you
16   actually are starting to get a
17   comparison of it, finally an admission
18   of these markings.  And I'm comparing
19   the font.
20        Now, I can promise that, you
21   know, Taishan's position is like,
22   well, of course we're going to admit
23   this marking.  It says Taishan on it.
24   You know, and so I think we can all
25   agree that this doesn't say Taishan.

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 149 of 343
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/29/2019 Page 119 of 281
March 11, 2019

1          It says C&K.  But Taishan doesn't

2          admit to only board that only says

3          Taishan.  We're more focusing on the

4          actual font, the eyeball, and kind of

5          looking at, well, you know, it's

6          looking like we've got the same

7          printer going off and we also have the

8          board coming in at the same time that

9          we know this admitted board came into

10         Florida.

11              I think that I will want to ask

12         really quickly just with my colleague

13         to make sure I properly represented

14         the sequence of the businesses.

15              (Pause.)

16              MS. ROBERTSON:  Sorry.  Thank

17         you so much for that short pause.  I

18         just want to clarify just so it's not

19         misrepresented.  WCI has other brands

20         they did build homes with, but when

21         you have a WCI home that has C&K in

22         it, it's only C&K.  So I just wanted

23         to clarify that sort of tie.

24              So I think we'll volley.

25              MS. EIKHOFF:  Yeah.  We have to

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 150 of 343
Case 2:11-cv-22408-MGC   Document 299   Entered on FLSD Docket 04/29/2015   Page 120 of 281
March 11, 2019

```
 1        volley the PowerPoint.  My C&K starts
 2        on page 10.
 3             In my introductory remarks, I
 4        referenced a former defendant in this
 5        case called Chenxiang, otherwise known
 6        as C&K.  Ms. Lee, all of the evidence
 7        that has been developed is that C&K
 8        boards were made by Chenxiang.
 9             Taishan testified that it
10        understood that C&K drywall was made
11        by Chenxiang.  Chenxiang is a
12        competitor of Taishan's.
13             The plaintiffs asked Taishan's
14        representative, well, would you ever
15        print boards with the competitor's
16        name on it?  And he said that would be
17        impossible.  We would never print
18        boards with our competitor's name on
19        it.
20             But it's not just Taishan's
21        testimony that says that C&K boards
22        were made by Chenxiang.  American
23        buyers who were deposed in this suit
24        testified that C&K boards were made by
25        Chenxiang.
```

```
 1                There was a particular American

 2           distributor who went out and procured

 3           Chinese drywall.  The name of that

 4           witness was Wood Nation.  And he was

 5           asked about Chenxiang documents and

 6           C&K drywall, and he said yep,

 7           Chenxiang, that's C&K.

 8                And he said, but I thought we

 9           were here talking about Taishan sales.

10           And plaintiffs' counsel said, well, we

11           need to talk about the C&K sales too

12           because they're also a defendant in

13           this lawsuit.

14                The Consumer Product Safety

15           Commission report identifies Chenxiang

16           as the maker of C&K drywall.  We

17           provided a web link at page 27 of our

18           brief.

19                And the plaintiffs know exactly

20           who Chenxiang is because they named

21           them as a defendant in a complaint,

22           which is a point we've already made.

23                And their brief about C&K

24           markings says approximately 50,000

25           sheets of C&K drywall were shipped by
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 152 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2015 Page 122 of
281
March 11, 2019

1    Chenxiang to Port Everglades in

2    July 2006.

3         So how are they possibly saying

4    that Taishan made C&K drywall?  Well,

5    their theory keeps changing, and as

6    you will see when you go back and look

7    at our brief, the theory of

8    attribution that we anticipated they

9    would make when we wrote our brief was

10   apparently the last theory of

11   attribution, and now they have

12   developed a new theory of attribution

13   that somehow ties York to IMG.

14        And you'll notice when we look

15   back at the transcript that

16   Ms. Robertson didn't even say anything

17   about C&K when she showed you those

18   documents.

19        She said, well, here you see

20   there's a proposal by IMG to buy

21   boards from Taihe and then there's

22   this other e-mail talking about IMG,

23   ordering boards from IMG.  There was

24   nothing said about C&K in any of those

25   documents or in any of those

Case 2:09-md-02047-EEF-MBN Document 22297-7 Filed 12/09/19 Page 153 of 343
Case 1:11-cv-22408-MGC EEF-MBN Document 299 Entered on FLSD Docket 04/29/2015 Page 123 of 281
March 11, 2019

1    discussions.  And so they don't have

2    any evidence connecting C&K.

3            Boiling down what we have

4    perceived their argument to be, and

5    this wasn't all presented to you, but

6    it's more laid out in their brief,

7    that one buyer bought C&K drywall from

8    Chenxiang.  That buyer was York.

9            And then a related company

10   sought to buy other drywall from

11   Taishan.  That related company is IMG.

12   Therefore, Taishan made all C&K

13   drywall.  That's not evidence.  That's

14   not even good logic.

15           If the plaintiffs wanted to get

16   after the manufacturer of C&K drywall,

17   they should have pursued their claims

18   against Chenxiang, who all the

19   witnesses said made it, who the U.S.

20   government says made it, and Mr. Serpe

21   said at the beginning in his

22   introductory remarks, well, Knauf put

23   their name on the sides of the

24   drywall.  Maybe Taishan should have.

25           Well, so did C&K.  They put

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 154 of 343
Case 4:11-cv-22408-KGC-EEF Document 299 Entered on FLSD Docket 04/29/2019 Page 124 of 281
March 11, 2019

1    their name on the side of the drywall,

2    C&K.  That's Chenxiang.

3          So the scales are so tipped

4    against the plaintiffs here, they have

5    not shown by the greater weight of the

6    evidence that Taishan made C&K

7    drywall.  The evidence shows that

8    Chenxiang did.

9          MR. MONTOYA:  Briefly, Your

10   Honor.

11         MS. ROBERTSON:  Yeah, I think

12   just briefly, I don't think I have to

13   respond to anything on there.

14         I think just briefly, I don't

15   think that plaintiffs disagree with

16   the link we're trying to make and how

17   it seems convoluted, but that's how

18   all -- not all.  That's how most

19   drywall from Taishan came into the

20   United States.

21         We can use Richard Hamm and

22   Wood Nation as an example, just as

23   Taishan's counsel did.  Richard Hamm

24   needed some drywall.  He calls up a

25   U.S. company called BNBM USA.  BNBM

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 155 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2015 Page 125 of 281
March 11, 2019

1          USA says, oh, yeah, I know a guy.

2          He's in China.  BNBM USA contacts

3          Taishan.

4               Taishan says, oh, yeah, we just

5          have this alter ego out there.

6          They're going to make it, but you

7          contract with BNBM.

8               TG contacts TTP.  TTP contacts

9          BNBM, they make a contract.  Richard

10         Hamm signs his contract with BNBM

11         only.

12              So all of this import of

13         drywall comes in this convoluted, why

14         are we going in these weird circles

15         with all these names.  You're saying

16         it's like Shandong Chenxiang in your

17         brief, but really Shandong Chenxiang

18         was also an exporter of drywall.

19              So it's kind of -- it's one of

20         those things where you're working with

21         the evidence, you're trying to draw

22         what you can out of it because all of

23         this drywall that comes into the

24         United States came through and touched

25         many different hands until,

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 156 of 343
Case 3:11-cv-22408-MGC-TDocument 293 Entered on FLSD Docket 04/29/2015 Page 126 of 281

March 11, 2019

1          ultimately, it ended up in a

2          plaintiff's home.  I think that that's

3          point one.

4              I think the other part that is

5          very convenient with Shandong

6          Chenxiang, particularly, Shandong

7          Chenxiang went bankrupt in 2007.  We

8          know this because Bill Cher, who is

9          also Che Gang, wrote an e-mail to a

10         U.S. customer and said:  Well, they

11         were bankrupt, they closed their

12         factory three months ago.

13             And so I think it's a little

14         bit more of the story.  We are

15         constantly digging for evidence to try

16         to lift up and support our plaintiffs'

17         homes -- or claims rather, for the

18         evidence that they have in their homes

19         that we believe is attributable to

20         Taishan.

21             SPECIAL MASTER LEE:  So does

22         the plaintiff currently have any

23         evidence of a relationship between

24         Taishan and Chenxiang?

25             MS. ROBERTSON:  I don't think

Case 2:09-md-02047-EEF-MBN Document 22297-7 Filed 12/09/19 Page 157 of 343
Case 1:11-cv-22408-MGC Document 295 Entered on FLSD Docket 04/29/2015 Page 127 of 281
March 11, 2019

```
 1            the plaintiffs themselves have any
 2            evidence of Taishan and the Chenxiang
 3            company.  I think that the -- I think
 4            that what we have is the evidence that
 5            through the distributors, we're
 6            linking the plaintiff's home to the
 7            distributor to Shandong Chenxiang to
 8            Taishan.
 9                 And it is kind of as presented
10            on the screen going through those
11            various contracts of just over time
12            they're looking for York or IMG with
13            WCI, York/IMG contacts Taishan, and
14            the drywall is coming into the United
15            States.
16                 SPECIAL MASTER LEE:  And was
17            this a topic of the depositions that
18            were taken earlier this year?  And if
19            so, what was the testimony around
20            this?
21                 MS. EIKHOFF:  The testimony --
22            I alluded to the testimony.  And if we
23            go back a slide, I have a specific
24            citation to it.  133 and 138.  You
25            will see the testimony of Taishan that
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 158 of 343
Case 3:11-cv-22408-MSC Document 259 Entered on FLSD Docket 04/29/2015 Page 128 of 281
March 11, 2019

```
1    Chenxiang made C&K drywall and it was
2    a competitor, that Taishan would never
3    use their brand on anything that they
4    made.
5         MS. ROBERTSON:  Yeah, I think
6    that as far as a depo topic, was the
7    relationship of Taishan and Chenxiang
8    a depo topic?  No.  Product ID was the
9    depo topic.  And so C&K by, I guess,
10   reference, was the depo topic.
11        But I don't believe the depo
12   notice read the relationship between
13   Taishan and Chenxiang.
14        MS. EIKHOFF:  No, but it did
15   ask for manufacturers that may have
16   made drywall at issue.
17        SPECIAL MASTER LEE:  And how
18   much of the product falls into this
19   category?
20        MS. ROBERTSON:  I think there's
21   50 homes.
22        MS. DUGGAN:  50 homes.
23        SPECIAL MASTER LEE:  Thank you.
24        I think lunch is here.  Do you
25   want to take a break for lunch?
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 159 of 343
Case 2:11-cv-22408-MSC-EBobument 293-4led on FLSB Docket 04/29/2019 Page 129 of
281
March 11, 2019

1        (Recess taken, 11:59?a.m. to

2        12:45?p.m.)

3            MS. ROBERTSON:  We are moving

4        on to the next bucket, which is

5        IMT Gypsum.  IMT Gypsum does appear on

6        Taishan's manufacturer profile forms,

7        which was Tab 11 to our PID brief.  It

8        appears on several different lines,

9        and Taishan admits through its

10       Manufacturer Profile Form to

11       manufacturing 206,595 sheets of

12       drywall with both blue and white edge

13       sealing tape, IMTGYPSUM, and spray

14       markings with DRYWALL

15       4feetX12feetX1/2inch.

16           Highlighted here are lines 110,

17       111 and 112 showing that they used the

18       exporter Beijing Building Material

19       Import & Export Company and the

20       quantity -- or the drywall had

21       markings on the edge sealing tape and

22       markings on the board itself.

23           Prior to the deposition in

24       2019, Taishan produced a package of

25       sales notification plans.  The entire

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 160 of 343
Case 2:11-cv-22408-MGC-EGT Document 239 Entered on FLSD Docket 04/29/2015 Page 130 of 281
March 11, 2019

 1          package is found at Tab 15 of our

 2          product identification brief.  That is

 3          the Chinese version, followed by the

 4          English version, which was a

 5          translation by Taishan's counsel's

 6          vendor.  I didn't want to misstate.

 7                    MS. EIKHOFF:  Yes.

 8                    MS. ROBERTSON:  The PSC had a

 9          couple of issues with some of the

10          translations, so we haven't come to an

11          agreement with that yet, but that is

12          just kind of a little background,

13          Counsel, if you want to add one

14          qualifier.

15                    MS. EIKHOFF:  Yeah.  Actually,

16          for the sales plan notification, those

17          translations were done in-house.  We

18          did not have a vendor for the sales

19          plan notification translations.

20                    MS. ROBERTSON:  Okay.  Thank

21          you.

22                    So just days before the

23          deposition, in response to the

24          deposition notice and the request for

25          production, we get the sales plan

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 161 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2015 Page 131 of 281
March 11, 2019

1       notifications.  They were not

2       previously produced at any other time

3       in this litigation.

4            When asked about where these

5       sales plan notifications were found,

6       how they were found, where they were

7       held, Taishan's corporate

8       representative testified that he --

9       you know, he worked very diligently,

10      searched very, very hard and long for

11      responsive documents to prepare for

12      his deposition in 2019 and found a

13      cabinet that had a lot of paperwork,

14      and he and a colleague went though

15      this cabinet, found these sheets,

16      which I think totals 24 sales plan

17      notifications total, and gave them to

18      their lawyers.  They were translated

19      and produced I think somewhere around

20      the 19th of January of 2019.

21           The sales plan notification is

22      very important to the IMT bucket

23      because Taishan's own documents show

24      that they did, in fact, manufacture

25      IMT Gypsum, as is consistent with

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 162 of 343
Case 2:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 132 of 281
March 11, 2019

1         their Manufacturer Profile Form.

2              So the sales plan notification

3         is from the sales company to the

4         management department, all done

5         in-house, in-house document saying,

6         hey management department, we have

7         gotten a sales plan.  This is for --

8         this is the quantity, this is the

9         standard, and this is the specific

10        requirements.

11             The words are missing here.

12        There should be 6560 sheets and 1920

13        sheets for the respective different

14        sizes.

15             So we talked a lot with Mr. Che

16        about these sales plan notifications.

17        He said this is all he could find.  He

18        could only find these 24.  But we see

19        here for IMT specifically, we need to

20        have the specific edge tape that says

21        IMTGYMSUM.  Unfortunately, there's a

22        typo.  That typo is also in the

23        Chinese version.

24             We do know from Taishan's

25        Manufacturer Profile Form it is IMT

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 163 of 343
Case 2:11-cv-22408-MCG-EEF-MBN Document 293 Entered on FLSD Docket 04/29/2019 Page 133 of 281
March 11, 2019

1    Gypsum.  I don't think there's much

2    dispute over the fact that there's a

3    typo here in the specific requirement.

4         We'll note, though, that one

5    thing in the specific requirements is

6    back to those spray markings.  We have

7    one type of board being manufactured

8    here with no markings but with tape,

9    and another part of the order is

10   attached spray markings.  There's no

11   attachment.

12        The attachment here is what you

13   heard from my colleague earlier.

14   Those were those sheets given to the

15   spray marking workers that were thrown

16   away.

17        You know, so unfortunately,

18   we're left with this implication that

19   we have a spray marking on IMT Gypsum

20   board, Taishan gave specific

21   instructions regarding that spray

22   marking, and that sheet was thrown

23   away.

24        Plaintiffs have the burden of

25   persuasion here and we believe it is

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 164 of 343
Case 3:11-cv-22408-MSC-EEF-MBN Document 299 Entered on FLSD Docket 04/29/2019 Page 134 of 281
March 11, 2019

1     persuasive that IMT Gypsum was

2     manufactured by Taishan.  It went from

3     their sales department to their

4     management department and then to the

5     production folks with specific

6     instructions.

7          Now, this sales plan

8     notification specifically says

9     IMT Gypsum.  In preparation for this

10    presentation, there is a later sales

11    plan notification at 00046 that

12    incorporates by reference 00042.

13    Unfortunately, because I just realized

14    it in preparing for this, I didn't

15    question the witness, so I understand

16    if there's a contest of the

17    incorporation by reference.

18          But reading the facts in the

19    way it's presented here, we can

20    account for 39,780 sheets of drywall

21    that Taishan has provided records for,

22    yet their Manufacturer Profile Form

23    admits to 206,595 sheets of drywall.

24          Here again, we have an example

25    of we have partial evidence.  We don't

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 165 of 343
Case 2:11-cv-22408-MGC   Document 299   Entered on FLSD Docket 04/29/2015   Page 135 of
281
March 11, 2019

1    have all the evidence.  Taishan really

2    is in the best position to have had

3    this evidence for us.  They're able to

4    find one, possibly two, sales plan

5    notifications, but they represented to

6    us they could find no others.

7         Finding documents to support

8    the Manufacturer Profile Form and also

9    documents to support the spreadsheets

10   that we talked about earlier, that was

11   part of the deposition notice.  We

12   asked the witness to be prepared to

13   testify and produce documents to

14   support those charts, those

15   statistics.  We got this and other

16   company documents.

17        Now, IMT Gypsum is another one

18   that has branded IMTGYPSUM.COM with

19   the 4feetX12feetX1/2inch.  PID catalog

20   photo, this references the ECF filing

21   in Florida 155-2.

22        We have a couple of variations

23   as we've seen with some of the other

24   boards.  And then we have this

25   particular picture.  So PID-51 was

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 166 of 343
Case 2:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2015 Page 136 of 281
March 11, 2019

```
 1      introduced at the deposition of Che

 2      Gang.  This is from a plaintiff's

 3      home.  And we asked Mr. Che:  Is the

 4      blue-and-white edge tape with

 5      IMTGYPSUM the same as in this

 6      paragraph?

 7          Their Manufacturer Profile Form

 8      identifies blue-and-white edge sealing

 9      tape, IMTGYPSUM.

10          We have positive photo evidence

11      from a plaintiff's home, yet Mr. Che

12      says:  The information we still have

13      is incomplete.  And he can't make a

14      decision because he couldn't find or

15      discover this edge tape while he was

16      preparing for his deposition.

17          It's a little bit problematic

18      in that we did ask, as previously

19      stated, for the supporting material of

20      how they all came up with an MPF.  How

21      did you create this Manufacturer

22      Profile Form?  Where is the evidence

23      you used to support this Manufacturer

24      Profile Form?  That's not the first

25      time similar-type productions have
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 167 of 343
Case 3:11-cv-22408-MGC-EEF Document 299 Entered on FLSD Docket 04/29/2019 Page 137 of 281
March 11, 2019

1          been asked in this litigation.

2               But again, we get this sales

3          plan notification that talks about

4          IMT Gypsum.  It talks about IMT Gypsum

5          tape.  It talks about not having

6          boards marked.  It talks about marking

7          boards with this attached marking, all

8          of which, when we get to the

9          plaintiff's photo, does match what's

10         represented on the profile form,

11         what's represented by Che that this

12         blue-and-white tape looks similar, but

13         because he couldn't find any

14         additional documents, he can't confirm

15         it.

16              This is another one of those

17         examples of the sword and shield sort

18         of thing we kind of have throughout

19         the litigation and throughout these

20         product ID buckets.

21              Plaintiffs present this

22         evidence, we get so far, we feel like

23         we've pushed the limit, and then all

24         of a sudden we get pushback, well, I

25         couldn't find it, though.  But you did

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 168 of 343
Case 1:11-cv-22408-MGC   Document 299 Entered on FLSD Docket 04/29/2015   Page 138 of 281
March 11, 2019

1           find the sales plan notification.

2              It says the same thing as your

3           Manufacturer Profile Form.  It's

4           matching what we're showing you on

5           this picture, but because you didn't

6           find this tape, which we also learned

7           isn't manufactured at Taishan's

8           facility, you're going to deny the

9           plaintiff's ID of this particular

10          bucket.

11             MS. EIKHOFF:  We should be at

12          slide 14, Ms. Lee.

13             So that presentation by

14          plaintiffs made it sound like Taishan

15          admitted on its Manufacturer Profile

16          Form that it made boards that looked

17          like the IMT Gypsum boards in this

18          category, and I want to make very

19          clear that that is not the case.

20             It is true that Taishan sold

21          boards with IMTGYPSUM on edge tape.

22          They have never denied that.  As a

23          matter of fact, they're the ones that

24          reported that.  And they reported it

25          in their Manufacturer Profile Form all

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 169 of 343
Case 3:11-cv-22408-MGC-EEF Document 299 Entered on FLSD Docket 04/29/2015 Page 139 of 281
March 11, 2019

```
 1              the way back in 2012 with specificity.
 2                   And part of that specificity
 3              was that although those orders had
 4              IMTGYPSUM written on the edge tape,
 5              that what was sprayed on the side of
 6              the board was DRYWALL
 7              4feetX12feetX1/2inch.
 8                   In the catalog that we are
 9              using to make these categorical
10              determinations, the photos that we
11              were required to admit or deny are
12              photos of the sides of boards with a
13              spray marking IMTGYPSUM.COM.  And
14              there is no evidence anywhere that
15              Taishan ever made any boards sprayed
16              IMTGYPSUM.COM on the side.
17                   We did do some business with a
18              brand called IMT Gypsum, and I'm about
19              to show you, so did a lot of other
20              manufacturers and in quantities that
21              dwarf the business that Taishan did
22              for that brand.
23                   Ms. Robertson also brought up
24              that the sales plan notifications, the
25              numbers of orders with IMT Gypsum tape
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 170 of 343
Case 2:11-cv-22408-MGC-EEF-MBN Document 255 Entered on FLSD Docket 04/29/2019 Page 140 of 281
March 11, 2019

1          are smaller than the numbers that they

2          reported on their MPF, and that's

3          easily explained.

4                    Mr. Serpe explained that to you

5          this morning.  He showed you a slide

6          that said that instructions on how to

7          prepare tapes and how to prepare

8          boards was often done orally or by

9          phone, in various other ways.

10                   And so it is to Taishan's

11         credit that this initial discovery

12         offering in the case reported far more

13         than the sales plan notifications that

14         exist to this day.

15                   So what we will show you is

16         that the plaintiffs have not satisfied

17         their burden of proof that Taishan

18         made boards with the specific

19         IMTGYPSUM.COM spray marking, and

20         instead are asking you to fill those

21         evidentiary gaps; to just assume that

22         Taishan made it.  Because they did one

23         transaction that relates to the

24         IMT Gypsum brand, then you should

25         assume that every board that has that

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 171 of 343
Case 2:11-cv-22408-MGC-EBC Document 259 Entered on FLSD Docket 04/29/2019 Page 141 of 281
March 11, 2019

1    brand on it was also made by Taishan,

2    even when that assumption is refuted

3    by the evidence in the case.

4        So one of the things that

5    you've been hearing all morning, and

6    Ms. Robertson talked about it when she

7    was talking about C&K, is that you had

8    distributors and brokers and buyers

9    trying to get as much drywall from

10   China as they could during this

11   shortage.

12       And so we talked about

13   suppliers who have testified in this

14   case who said they were buying from

15   Chenxiang and they were buying from

16   Taishan and they were buying from

17   other manufacturers.  And U.S.

18   shipping records bear that out, and

19   specifically bear it out for

20   IMT Gypsum.

21       So we have located U.S.

22   shipping records that IMT, the company

23   at issue here, purchased lots of

24   boards from multiple manufacturers in

25   2006 and brought them into the United

March 11, 2019

1          States, specifically brought them into

2          Florida.

3                  And this transaction right

4          here, to Beijing Building Materials

5          Import, is reported on our MPF.  It's

6          the one with the IMT on the edge tape.

7          And the exporter listed on our MPF is

8          Beijing Building Materials.  So we can

9          line up this one shipment as probably

10          coming from Taishan.

11                  But then you look at who else

12          IMT was buying from at this same time

13          and look at the quantities.  There's

14          two lines here for Pingyi Baier.  So

15          there's -- they ordered twice as much

16          from Baier as they did from Taishan.

17                  And then you look at who else

18          shows up on this shipping record, and

19          guess who it is.  Chenxiang, the

20          manufacturer who used to be a

21          defendant here that plaintiffs want to

22          pretend never existed, the same one

23          that made C&K drywall.

24                  And look at the volume.  IMT

25          ordered ten times as much drywall from

Case 2:09-md-02047-EEF-MBN Document 22307-7 Filed 12/09/19 Page 173 of 343
Case 2:11-cv-22408-MGC-EGT Document 259 Entered on FLSD Docket 04/29/2019 Page 143 of 281
March 11, 2019

1       Chenxiang as it did from Taishan, and

2       twice as much from Baier as it did

3       from Taishan.

4           But Taishan's the only

5       defendant here and the only one who

6       has submitted an MPF, and Taishan's

7       MPF says, yeah, here it is, we did

8       that transaction, and the spray

9       markings on the side didn't say

10      IMTGYPSUM.

11          Now, the shipping records show

12      that the lion's share of IMT board was

13      made by C&K.  We know because the

14      evidence shows that C&K is the brand

15      of Chenxiang.

16          C&K GYPSUM, the bottom two

17      pictures are C&K, the brand for

18      Chenxiang.  IMTGYPSUM, this is the

19      exemplar we have that you have to

20      decide did Taishan make it or not.

21          It is exact -- the word

22      "GYPSUM" in C&K's drywall and in IMT's

23      drywall is exactly the same.  Compare

24      the G, the Y, the P, the S, the U and

25      the M.

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 174 of 343
Case 1:11-cv-22408-MGC Document 295 Entered on FLSD Docket 04/29/2013 Page 144 of 281
March 11, 2019

```
 1                    So what the evidence is showing
 2          you is not some attenuated speculative
 3          theory that Taishan says that it made
 4          board with IMTGYPSUM on the side, on
 5          the edge tape, but they misrepresented
 6          what they sprayed on the side, and we
 7          should just assume that IMTGYPSUM,
 8          that they really sprayed it on the
 9          side, you should just assume that
10          that's what they did.
11                    So instead of that speculative
12          theory, what the evidence is showing
13          you is that most of IMT came from
14          Chenxiang, who made C&K boards; and
15          IMT boards and C&K boards are almost
16          exactly identical.  The word "GYPSUM"
17          is identical in the two boards.
18                    So we do not believe that the
19          plaintiffs have put forth the greater
20          weight of the evidence that Taishan
21          made the boards with IMT sprayed on
22          the side.
23                    MR. MONTOYA:  Brief rebuttal?
24                    MS. ROBERTSON:  So counsel's
25          representation that there was one
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 175 of 343
Case 2:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2015 Page 145 of 281
March 11, 2019

1     transaction by Taishan of IMT Gypsum

2     just doesn't quite follow the same

3     logic.

4           IMT Gypsum appears on several

5     different lines of their Manufacturer

6     Profile Form.  It also appears on

7     several different lines of the

8     statistical spreadsheet that we

9     recovered from the 2010 e-mail.

10          In addition to that, we have

11    the witness, corporate witness for

12    Taishan, testifying:  I believe the

13    Manufacturer Profile Form created by

14    Mr. Peng is correct, but it's possible

15    that it's not very accurate, did not

16    pay attention to small details.

17          You'll hear some more about

18    this later from my colleague when she

19    talks about some of the other buckets,

20    but in particular, Taishan's argument

21    today that while their Manufacturer

22    Profile Form was so careful, that it

23    was so precise that it clearly says on

24    the edge sealing tape and from the

25    beginning we had admitted we put IMT

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 176 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 146 of 281
March 11, 2019

1    on our sealing tape, but the product

2    marking, it doesn't have those same

3    words.

4         That is again a sword/shield

5    argument, because if we look -- and

6    it's not at issue here in Florida, but

7    DUN Drywall, which is admitted to by

8    Taishan on their Manufacturer Profile

9    Form, does not include the sprayed

10   marking and the product marking on

11   their Manufacturer Profile Form.

12        So we have a bunch of

13   inconsistencies that really are

14   occurring here of when it is to their

15   benefit to say, well, that's not what

16   we read on the Manufacturer Profile

17   Form, so your argument's wrong.  You

18   didn't get it.

19        But they'll admit some of these

20   other things, and DUN is a perfect

21   example.  No contest there.  No

22   contest.

23        The product marking column of

24   the Manufacturer Profile Form does not

25   match the markings that are found on

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 177 of 343
Case 4:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 147 of 281
March 11, 2019

```
 1          that board.  IMT should be looked at

 2          no differently.

 3               MS. EIKHOFF:  Could I just make

 4          a point of clarification?  We did

 5          submit an errata that the word

 6          "accurate" in this quote was

 7          mistranslated, and when that same

 8          Chinese word was used every other

 9          instance in the deposition, it was

10          translated as "precise."

11               And so on February 28th, we

12          provided to the PSC an errata signed

13          by Mr. Che, the witness, that noted

14          that translation error, and consistent

15          with the rest of the translation of

16          the deposition, that word should have

17          been translated as "precise."

18               MS. ROBERTSON:  We haven't

19          really addressed any of the errata

20          between the parties.  They did in fact

21          submit it.  I'm not trying to mislead

22          the special master.  If they'd like it

23          read into the record that it's not

24          very precise, so be it.

25               MS. EIKHOFF:  Thank you.
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 178 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 148 of 281

March 11, 2019

```
 1                    SPECIAL MASTER LEE:  Before we

 2              get to the next category, as we go

 3              through the categories, are any of

 4              those categories overlapping, meaning

 5              is there a home that has drywall that

 6              has several categories?

 7                    MS. ROBERTSON:  Yes.

 8                    SPECIAL MASTER LEE:  So it's

 9              not all distinct?

10                    MS. ROBERTSON:  Yes.

11                    SPECIAL MASTER LEE:  So what's

12              next?

13                    MS. ROBERTSON:  It will be

14              ProWall.  That will be slide 57.

15                    Next bucket is ProWall.

16              ProWall gets into the weeds again.

17              Anybody who knows my experience with

18              this case, I live in the weeds.  It's

19              fair.

20                    MS. EIKHOFF:  True.

21                    MS. ROBERTSON:  We have

22              Taishan, Run & Fly Jinan,

23              Manchester Holdings, Inc., Stock

24              Building Supply Company -- Stock

25              Building Supply Inc., apologies.
```

March 11, 2019

```
 1              Our trace from Taishan to Stock
 2         Building Supply Inc., who built the
 3         homes in Florida, is that Taishan
 4         manufactured the drywall.  It was
 5         purchased by Run & Fly Jinan, which
 6         was a domestic Chinese company and
 7         exporter who sent the drywall from
 8         China to the United States through
 9         Manchester Holdings Inc., and
10         eventually purchased by Stock Building
11         Supply Inc., who built the plaintiffs'
12         homes.
13              Again, this document is another
14         one of those that was newly produced
15         to us in January of 2019, everything
16         except for the TG-PID-00079, which is
17         the Bates number, and the red circle
18         in the middle, that was how it was
19         produced to plaintiffs who received a
20         version that did not have the English
21         red lettering and a version that had
22         the English red lettering, which is
23         the translation of each of the various
24         parts of this invoice.
25              When we talked to Mr. Che about
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 180 of 343
Case 3:11-cv-22408-MGC-EEF Document 299 Entered on FLSD Docket 04/29/2019 Page 150 of 281
March 11, 2019

```
 1          this invoice, we asked him why it
 2          wasn't produced until now.  Where was
 3          it from, what are we showing?  Because
 4          Run & Fly Jinan is not a company that
 5          is new to some of the arguments in
 6          this litigation.
 7              Mr. Che explained that this
 8          type of invoice for Taishan is known
 9          as a domestic invoice.  It's domestic
10          and they keep it -- it came from a
11          book or what appears to be sort of a
12          ledger book that has a carbon copy
13          that you flip through, write on one
14          page, flip to the next page, fill it
15          out, flip to the next page.  We only
16          received this one page as part of the
17          deposition production in 2019.
18              So why does it matter?  Why
19          were we all excited as plaintiffs when
20          we got this document?  We got this
21          document because, as I mentioned
22          earlier, Taishan to Run & Fly, Run &
23          Fly to Manchester Holdings.
24              We know from Manchester
25          Holdings' documents that they had a
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 181 of 343
Case 2:11-cv-22408-MSC-EGT Document 293 Entered on FLSD Docket 04/29/2019 Page 151 of 281
March 11, 2019

1    packing list of drywall that came from

2    Run & Fly Jinan New Materials.  We

3    further know that Manchester sold that

4    drywall they purchased to Stock

5    Building Supply Inc.

6        Now, let's back up and see why

7    we care.  This is why we care.  The

8    volume here on the invoice produced by

9    Taishan is extremely important because

10   it is a precise number, 9,936 pieces,

11   which we can take to mean sheets, of

12   drywall.  If we take 598 plus 9338, we

13   get 9,936 pieces of drywall.

14       We have the Taishan invoice

15   going to Run & Fly.  Run & Fly

16   invoicing Manchester Holdings for the

17   same amount of gypsum board.

18       And then finally, coming in

19   through Georgia to Manchester-in-Home

20   and eventually to Stock Building

21   Supply, who built the homes, we have

22   this same 9,936 sheets of drywall,

23   country of origin is China.

24       Now, ProWall is another one of

25   those -- another one of these buckets

Case 2:09-md-02047-EEF-MBN Document 22297-7 Filed 12/09/19 Page 182 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 152 of 281
March 11, 2019

1      that we're going to hear about how

2      ProWall was manufactured by some other

3      folks and certainly not Taishan's, you

4      guys can't show it, and the like.

5           But again, we have traced this

6      distributor -- or the builder to the

7      distributor to the importer to the

8      maker for this drywall of 9,936

9      sheets.

10          Manchester asked where are we

11     getting this drywall?  Where is this

12     drywall coming from?  Who is your

13     manufacturer?  Let me know.

14          Manufacturer gets the response:

15     The full postal address of our gypsum

16     board manufacturer is as follows:

17     Headquarters, Shandong Taihe

18     Dongxin Co., Ltd.  That is the Taishan

19     that we've been talking about today.

20     That is the company that manufactured

21     the drywall that Manchester sold to

22     Stock Building Supply.

23          ProWall has markings that say

24     MADE IN CHINA MEETS ASTM with various

25     standards, with the C36 and the slash

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 183 of 343
Case 2:11-cv-22408-MGC-EEF-MBN Document 299 Entered on FLSD Docket 04/29/2019 Page 153 of
281

March 11, 2019

```
 1          C1396.  These are relatively clear
 2          markings in the homes.
 3               So we have the plaintiff's
 4          home -- or the product ID catalog
 5          photo that shows that we have ProWall.
 6          The reason they're in this category
 7          specifically is the tape the Pro and
 8          the capital W for the Wall and the
 9          marking, all because we're able now in
10          2019 to receive an invoice from
11          Taishan that shows the 9,936 pieces of
12          drywall.
13               Now, Taishan's corporate
14          representative again did say the
15          reason that this board did not make it
16          to their Manufacturer Profile Form is
17          because that is the type of invoice
18          they use for domestic sales and
19          therefore didn't make it to the
20          Manufacturer Profile Form, and that's
21          why we don't see Taishan ProWall on
22          their Manufacturer Profile Form,
23          because it isn't what they would call
24          a VAT invoice, which is how they
25          suggest they put together their
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 184 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 154 of 281
March 11, 2019

1       Manufacturer Profile Form.

2              But again, we don't have

3       everything they used to support their

4       Manufacturer Profile Form, so we're

5       using the connection of Taishan to

6       Run & Fly, Run & Fly Chinese domestic

7       corporation shipped it to

8       Manchester Holdings.

9       Manchester Holdings sells it to Stock

10      Building Supply to build the homes

11      with the 9,936 sheets of drywall that

12      they purchased through the chain from

13      Taishan.

14             MS. EIKHOFF:  All right,

15      Ms. Lee, we are at slide 18.

16             So when I start talking to you

17      about the ProWall category, I want to

18      introduce to you a theme, and it's a

19      theme that we see throughout what the

20      plaintiffs have presented today, but

21      it's particularly pronounced in this

22      category.

23             And the theme is to just look

24      through a very small scope, something

25      that they say points to Taishan and

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 185 of 343
Case 2:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 155 of 281
March 11, 2019

1    ignore the rest of the story.  Ignore

2    that there are other manufacturers out

3    there, ignore that there are other

4    documents out there.

5         They present you with a single

6    transaction and they have a theory

7    that it somehow connects Taishan to

8    the boards at issue and say just look

9    at that, ignore other manufacturers,

10   just assume that Taishan made all of

11   this.

12        And in this case, it is

13   particularly pronounced because the

14   plaintiffs are not only saying that

15   Taishan made ProWall boards.  They are

16   also saying that BNBM made ProWall

17   boards, but not the ProWall

18   attributable to Taishan.

19        We have no idea what ProWall

20   they say is attributable to Taishan

21   versus attributable to BNBM, but I

22   will tell you that their theories of

23   attribution are mutually exclusive.

24   They're completely different stories.

25        And so in a few weeks, when you

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 186 of 343
Case 2:11-cv-22408-MGC-EEF-MBN Document 299 Entered on FLSD Docket 04/29/2019 Page 156 of 281
March 11, 2019

1        hear their presentation attributing

2        ProWall to BNBM, there's not going to

3        be any mention of Manchester or any

4        mention of Jinan Run & Fly or Stock

5        Building Supply or any of these

6        documents that they've just shown you.

7               There's a whole different set

8        of documents and there will be a

9        different flowchart involving

10       different players and different

11       documents; Great Western Building

12       Materials, ProWall Building Products.

13              So before I get started, and we

14       will show you that we can identify and

15       have identified another manufacturer

16       that is responsible for the ProWall

17       boards that they've shown you, I would

18       submit to the special master that it

19       would not be appropriate for the

20       special master to make a decision

21       based on this set of evidence for

22       Taishan until she has also seen the

23       competing theory attributing it to

24       BNBM.  Because if you've already made

25       a decision as to Taishan and then

Case 2:09-md-02047-EEF-MBN  Document 22397-7  Filed 12/09/19  Page 187 of 343
Case 1:11-cv-22408-MGC  Document 259  Entered on FLSD Docket 04/29/2015  Page 157 of 281
March 11, 2019

1        you'll be presented with alternative

2        evidence attributing it to BNBM, the

3        special master will not have all of

4        the relevant evidence before her to

5        make this decision.

6             So I would ask that on this

7        particular category, because they're

8        attributing it under two different

9        theories to two different defendants,

10       that the special master reserve her

11       final ruling on this category.

12            I don't know why that's coming

13       up a little fuzzy, but the question

14       before the special master in this

15       category is:  Did Taishan make the

16       boards with these unique ProWall

17       markings?  These are what identify

18       these boards as ProWall, spray

19       markings that say ProWall GYPSUM BOARD

20       or end tape that says ProWall.  And I

21       don't know why that's coming up

22       pixillated on the screen, but I

23       believe on your copy it's clear.

24            Unlike their theory for

25       IMT Gypsum, where they say, oh, the

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 188 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2015 Page 158 of 281
March 11, 2019

 1          word "IMT Gypsum" shows up somewhere

 2          on the MPF, so let's just assume

 3          anything with that word is Taishan's,

 4          the word "ProWall" shows up nowhere in

 5          Taishan's documents; not in any

 6          e-mails they've produced, not in any

 7          correspondence, not in the MPF,

 8          nowhere.  No connection whatsoever to

 9          ProWall.

10              And so how have the plaintiffs

11          come up with an explanation that would

12          attribute ProWall to Taishan?  Well,

13          once again, they're relying on

14          speculation and gap-filling in trying

15          to tie these products to Taishan

16          through a common buyer.  And in this

17          case the common buyer is Jinan Run &

18          Fly.  That's the common buyer.

19              But in this case, and I'm about

20          to lay this out in a little more

21          detail, the other manufacturer that is

22          being ignored is Tai'an Kang Yi Jia, a

23          competing drywall manufacturer also in

24          Taian, the same area of Taishan's

25          manufacturing facilities.

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 189 of 343
Case 2:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 159 of 281
March 11, 2019

1          Now, plaintiff's theory of

2     attribution rests on Taishan's single

3     sale of blank board with unmarked

4     white edge tape to Jinan Run & Fly.  I

5     want to be clear, we do not dispute

6     that that transaction occurred.

7          So lining up the 9,936 on our

8     invoice and the 9,936 on the other

9     e-mails, we agree that there was a

10    Taishan transaction with Jinan Run &

11    Fly.  But the documents tell the rest

12    of the story.

13         So on the same e-mail at Tab 53

14    of the plaintiff's exhibit, where the

15    plaintiff circled this is the address

16    where it came from, that's true.  That

17    is the address where that shipment

18    came from.  If you look at page 3 of

19    4 -- I'm sorry, it's one of their

20    exhibits, but, yes, if you look at

21    page 3 of 4 of their Tab 53 document,

22    the e-mail talks about --

23         Yes, I'll show it to you, and

24    can I get my glasses so I can see it?

25    Thank you.

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 190 of 343
Case 4:11-cv-22408-MGC-EEF Document 299 Entered on FLSD Docket 04/29/2019 Page 160 of 281
March 11, 2019

1          And I'll show it to you,

2     Ms. Lee.  In view this is going to be

3     the first order we don't want to mess

4     up, a trial order, quantity of 10,000

5     sheets.  10,000 is approximately

6     9,936.  They say where is it coming

7     from.  They say it's coming from

8     Taishan.

9          Taishan did a blank unmarked

10    trial order for Jinan Run & Fly which

11    looks like it was going to be shipped

12    forward through Manchester and Stock

13    and eventually to ProWall.

14          But then what happened after

15    this very small trial order?  Mr. Che

16    testified that Jinan Run & Fly thought

17    that Taishan was too expensive and so

18    they turned to the competitor, Kang Yi

19    Jia.  Kang Yi Jia is also in the Taian

20    region.

21          And plaintiffs' counsel used to

22    have a document that they used as part

23    of their ProWall story that is a Jinan

24    Run & Fly production run from

25    May-June 2006 showing that someone

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 191 of 343
Case 1:11-cv-22408-MGC-EGT Document 299 Entered on FLSD Docket 04/29/2015 Page 161 of 281
March 11, 2019

1    made 55,440 boards, and those boards,

2    that later bigger order, the nontrial

3    run order, that production run

4    specifies that those boards were on

5    steel pallets and had ProWall tapes.

6         So there was a subsequent order

7    specified with ProWall markings after

8    the initial trial run with Taishan,

9    which was the only run they ever did,

10   and those boards were blank.

11        Now, Taishan -- I'm sorry.

12   ProWall is apparently a building

13   materials company, and that part of

14   the story they're going to tell you

15   later when they unroll their theory

16   attributing these boards to BNBM.

17        But what happened in this case,

18   when you take off the myopic blinders

19   that just say I just want to look at

20   Taishan, what you see is a bigger

21   story, that there was an undisputed

22   trial run of blank boards by Taishan,

23   but that the rest of the order was

24   made by a competitor with ProWall

25   tapes, and therefore, we do not

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 192 of 343
Case 2:11-cv-22408-MGC Document 253 Entered on FLSD Docket 04/29/2015 Page 162 of 281
March 11, 2019

```
 1        believe that this one transaction
 2        translates into Taishan is the
 3        manufacturer of everything with
 4        ProWall markings on it.
 5              SPECIAL MASTER LEE:  Is the
 6        e-mail that you showed me the same
 7        e-mail that's on page 62 of their
 8        PowerPoint?
 9              MS. EIKHOFF:  Yes, the one with
10        the address?  Yeah, it's the page 3 of
11        that same e-mail.
12              MS. ROBERTSON:  Quickly, one
13        thing I do want to clear up real
14        quick.  We didn't remove any evidence
15        not represented in our brief.  I
16        believe it's at Tab 50 and it's the
17        stock defendant -- or Distributors
18        Profile Form.  I think that's what
19        you're referring to as far as that.
20              To the extent you were
21        referring to something else, I
22        apologize.  I believe we just felt
23        that Tab 50 accomplished that.
24              But nonetheless, the point is
25        this:  I'm not asking you to assume
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 193 of 343
Case 1:11-cv-22408-MGC   Document 299 Entered on FLSD Docket 04/29/2019   Page 163 of
281
March 11, 2019

1          anything.  There's no reason to delay

2          the ProWall bucket as it relates to

3          Taishan.  This ProWall, this Florida

4          ProWall has nothing to do with BNBM.

5          BNBM doesn't -- it has no part in this

6          discussion.

7               What I am asking -- what I am

8          telling you is that it is clear with

9          this number of this 9,936 pieces, as

10         we pop out here, we have ProWall

11         sheetrock and then 9,936.

12              So as we've done so frequently

13         in this case throughout the years, we

14         have gone and pored through various

15         different records to piece together

16         the evidence to tie the drywall in

17         plaintiffs' homes to Taishan.

18              This is a precise and specific

19         example of what you would do in a

20         products liability case to establish

21         the entire supply chain, and that was

22         done here for the 9,936 boards that we

23         find in Florida homes that have the

24         ProWall marking.

25              My understanding is that this

March 11, 2019

```
 1          ProWall with the capital W here, this
 2          marking, this board from PID catalog
 3          photo 44, is not going to come up in
 4          the BNBM/ProWall argument at all.
 5                 We contend that this marking,
 6          this language, this tape is Taishan.
 7          This will not be discussed with BNBM.
 8                 SPECIAL MASTER LEE:  Can you
 9          just go back to slide 60?
10                 MS. ROBERTSON:  Yes.
11                 SPECIAL MASTER LEE:  What is
12          the date on that packing list?
13                 MS. ROBERTSON:  That's
14   March 23rd.
15                 MR. SERPE:  It is March 23.
16                 SPECIAL MASTER LEE:  Okay.  And
17          this is the packing list from Run &
18          Fly to Manchester Holdings?
19                 MS. ROBERTSON:  Yes.
20                 SPECIAL MASTER LEE:  So I guess
21          my question is:  Why is that packing
22          list dated before the one on 59?
23                 MS. ROBERTSON:  This May 5 one?
24   And I think that's a very good
25          question.  I think what we often found
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 195 of 343
Case 1:11-cv-22408-MGC   Document 259 Entered on FLSD Docket 04/29/2015   Page 165 of 281
March 11, 2019

```
1        and that we see with a lot of the

2        other documents, whether it's the

3        statistical spreadsheet, the

4        Manufacturer Profile Form, the packing

5        list, the invoices, the export

6        materials, the dates do vary every

7        once in a while until everything goes

8        through.

9             I will definitely tell you,

10       Special Master, we did not talk to

11       Run & Fly Jinan.  We didn't.  So a

12       precise answer for you is probably

13       inappropriate for me to give.

14            But we do have varying dates

15       depending on whether it's a packing

16       list, an invoice, an export list.  And

17       these were the pieces we were able to

18       find and establish.

19            SPECIAL MASTER LEE:  So you

20       have varying dates even with other --

21       in other transactions, not just this

22       one?

23            MS. ROBERTSON:  Yes, correct.

24            SPECIAL MASTER LEE:  Okay.

25            MS. EIKHOFF:  If I may just
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 196 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2015 Page 166 of 281
March 11, 2019

```
 1          state for the record that the document

 2          that we were relying on for the 55,440

 3          boards with ProWall tapes that we

 4          referred to is in the Defendant

 5          Taishan's appendix at 55.

 6               MS. ROBERTSON:  I am going to

 7          sit down, and I believe my colleague

 8          is going to go, but I think maybe we

 9          want to do a short break, if that's

10          possible.

11               SPECIAL MASTER LEE:  Sure.

12          Take five minutes.

13               (Recess taken, 1:35?p.m. to

14          1:42?p.m.)

15               MS. SCHWAB:  So as we discussed

16          earlier, this is a bucket that is

17          admitted.  We are going over this only

18          to discuss the markings that have been

19          found on boards with edge tape, and as

20          we alluded to earlier, edge tape, the

21          practice is for it to be removed.  So

22          it's very important that we review the

23          markings on the boards because most of

24          the time the edge tape is no longer

25          there.
```

March 11, 2019

```
 1              So this is just to discuss
 2         how -- this is the edge tape.  I
 3         believe Ms. Eikhoff reviewed it
 4         earlier.  It's teal, it's Taihe.  I
 5         can't read Chinese characters but I
 6         will take the representation that it's
 7         the company's name.  And it is
 8         identified in the Manufacturer's
 9         Profile Form as Taishan edge sealing
10         tape.
11              This is a recap that Taishan
12         admits to this bucket, but because the
13         edge tape is removed, that's why it's
14         so important; that's why we are going
15         over this.  And any markings on boards
16         with edge tape, whether it's still
17         there in present day or whether it has
18         been removed, is critical and should
19         be admitted as well.
20              So this is a picture that
21         Taishan has admitted to the edge
22         sealing tape.  As you will see, I have
23         circled it in red.  That is admitted.
24              But what you also see is right
25         to the left of the beam is a date.  I
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 198 of 343
Case 2:11-cv-22408-MSC-TFcv-EEDocument 299-19red on FLSD Docket 04/29/2019 Page 168 of 281
March 11, 2019

1    believe that's 214491 is what it says.

2    However, Taishan, in the deposition,

3    Mr. Che Gang said -- and Taishan in

4    its brief said:  The photo category

5    includes additional numerical markings

6    that are not consistent with Taishan's

7    records.

8         So if we had this marking

9    without the Taishan tape, this would

10   be denied because it is not consistent

11   with Taishan's records.

12        However, because this claimant

13   was lucky and had the number, the

14   numerical marking and edge sealing

15   tape, it was admitted.  And there's a

16   few other examples like this.

17        Again, this is just a picture

18   with just the numbers, no marking.

19   This would be denied.  Here's another

20   one.  This is a better picture, and I

21   will represent to you that this photo

22   on the bottom of the edge tape, which

23   is the top of the Taihe edge tape, was

24   found on the same board, but to get a

25   better picture, I broke it into two

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 199 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 169 of 281
March 11, 2019

1    pictures, but this is the same board.

2            And this is admitted because

3    the plaintiff was lucky and had the

4    Taihe tape as well as the numerical

5    marking.

6            But again, it's Taishan's

7    position that they did not manufacture

8    boards with numerical markings.  So

9    unless the claimant had Taihe edge

10   tape, that would be denied.

11           So that is all that I want to

12   say about that category, if you want

13   to respond.  Keep going?

14           SPECIAL MASTER LEE:  I have a

15   question:  The numbers, what do the

16   numbers represent?  Are they lot

17   numbers or something else?

18           MS. SCHWAB:  I believe that we

19   call them batch numbers.  We don't

20   know.  We call them batch numbers, and

21   I believe my colleague would like to

22   respond.

23           MS. ROBERTSON:  Quickly, we

24   have one document that was part of the

25   sales plan notification bundle that's

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 200 of 343
Case 2:11-cv-22408-MGC-EEF-MBN Document 291 Entered on FLSD Docket 04/29/2019 Page 170 of 281
March 11, 2019

1    at Tab 15 to our PID brief -- wait, I

2    apologize, it was a -- we have a

3    notification of collaboration of

4    drywall.  We attached this to our

5    brief.

6         And it's a one-sheet paper

7    where Taishan is essentially

8    subcontracting or outsourcing some of

9    its manufacture of drywall, and the

10    specific requirement, like we saw that

11    one thing says specific requirement,

12    that one document shows the specific

13    requirement was to have a work shift

14    stamp on the board.

15         So that's really the only piece

16    that we have that explains this date,

17    time and some particular number.  I

18    think there was potentially one other

19    piece of evidence.  I'll look up both

20    for you, Special Master, so you have

21    it.  I'll also give it to the

22    defendants, to the extent it's not in

23    our brief, but I'm pretty sure it is,

24    that potentially the other numbers

25    could have been a sheet number, but I

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 201 of 343
Case 2:11-cv-22408-MGC-EEF Document 293 Entered on FLSD Docket 04/29/2013 Page 171 of 281
March 11, 2019

         1        think after giving that -- seeing the
         2        document, we thought it was a work
         3        shift time stamp.
         4              And we'll provide those to both
         5        sides, but I think you know what I'm
         6        talking about.
         7              MS. EIKHOFF:  Yeah.  And I will
         8        be happy to respond on this.  We did
         9        not expect this to be a topic for
        10        today, but I'll be happy to state
        11        Taishan's position on it for the
        12        record.
        13              Taishan, as I said at the
        14        outset, does admit and has admitted to
        15        the category that is Taihe edge tape
        16        with its unique brand, with its --
        17        with its name on it and its unique
        18        markings on it.  That is not in
        19        dispute.
        20              And so when the plaintiffs say,
        21        oh, but if there's just numbers on a
        22        board without the tape, then they're
        23        not admitting it.  That's right.
        24        Because if you just show a board with
        25        numbers on it, there's nothing from

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 202 of 343
Case 3:11-cv-22408-MSC-EC Document 299 Entered on FLSD Docket 04/29/2019 Page 172 of 281
March 11, 2019

```
 1          that picture that can positively
 2          identify that as Taishan's product.
 3              And as we've been saying all
 4          day today, Taishan was not the only
 5          manufacturer in this space and other
 6          manufacturers could just as easily
 7          make drywall board with numbers on it.
 8              So if there is Taishan's unique
 9          branding indicia, then yes, it is a
10          category that we've admitted.  It is
11          not a surprise that if there's not
12          Taishan's unique branding indicia that
13          we're not admitting it.
14              We're not just admitting that
15          any board they show that has numbers
16          on it is Taishan's board.
17              And my colleague,
18          Mr. Venderbush, is going to be talking
19          more about this whole category that
20          we're about to move into of generics,
21          where there are generic markings like
22          numbers, like MADE IN CHINA stamps on
23          boards that we cannot be in a position
24          to say that we admit all of them are
25          ours, because they aren't all ours.
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 203 of 343
Case 2:11-cv-22408-MGC-EGF Document 259 Entered on FLSD Docket 04/29/2013 Page 173 of 281
March 11, 2019

1        MS. ROBERTSON:  So quickly,

2    Special Master, apologies.  It's

3    Tab 34 to our PID brief.  The title of

4    the document is Notification of

5    Collaborative Processing.  It was

6    produced by Taishan at TG0211714.

7        MS. SCHWAB:  And, Your Honor, I

8    just want to make one note.

9    Ms. Eikhoff said anybody can produce

10   these -- these boards with just

11   numbers without the edge tape.  So

12   without the edge tape, their position

13   would be that they would deny it.

14       I think that this is a good

15   representation of where the tape is on

16   the board.  It's on the side that's

17   perpendicular to the markings, and so

18   if the marking is in the middle of the

19   board, the chances that you get the

20   tape and the marking are slim to none.

21       So unless you have a photo of

22   the entire board -- unless you have a

23   photo of the entire board, which would

24   only be if the claimant remediated and

25   took out the walls or was willing to

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 204 of 343
Case 3:11-cv-22408-MGC-EEF Document 253 Entered on FLSD Docket 04/29/2019 Page 174 of 281
March 11, 2019

1    have their entire home destructed,

2    then you wouldn't get this entire

3    picture.

4         So chances are you would get a

5    bore scope hole, which is just a small

6    hole and a camera can go up the small

7    hole inside the wall cavity and you'd

8    just get the numbers and not the edge

9    tape.

10         So the next category is MADE IN

11    CHINA MEETS OR EXCEEDS.  And the

12    reason why the S's are in brackets

13    will be explained as we go through

14    this bucket.

15         So to begin, Taishan in its

16    Manufacturer Profile Form admits to

17    manufacturing 482,435 sheets of

18    drywall with MADE IN CHINA MEET OR

19    EXCEED ASTM C1396 04 standard

20    markings.

21         Now, it's important to note

22    that it just says MEET OR EXCEED.

23    Both of them are singular.  And also

24    with white edge sealing tape.

25         Taishan also admits to

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 205 of 343
Case 2:11-cv-22408-MSC-EEF-MBN Document 299 Entered on FLSD Docket 04/29/2019 Page 175 of 281
March 11, 2019

1    manufacturing 244,120 sheets with the

2    same MADE IN CHINA MEET OR EXCEED,

3    singular, with Taishan edge sealing

4    tape.  That's the Taihe teal tape that

5    we looked at earlier.

6         So there are, in this bucket, I

7    will call it, four different font

8    variations.  The first one -- this

9    picture looks a little grainy, but

10   it's like triple dot.  The second one

11   is single dot.  The third one is --

12   it's not really dotted at all.  And

13   the last one, again, not dotted, but

14   it's -- the font differences, you can

15   see in the A primarily and the D.

16        So let's look at the first one

17   that's number 15.  So this is a better

18   picture that you can see.  It's a

19   triple dot, is what I will call it.

20   And Taishan, in their position paper,

21   says they do not -- they do not deny

22   that products -- that boards with this

23   marking is theirs.  So that takes care

24   of the first font variation.

25        The second font variation,

Case 2:09-md-02047-EEF-MBN  Document 22397-7  Filed 12/09/19  Page 206 of 343
Case 1:11-cv-22408-MGC  Document 299  Entered on FLSD Docket 04/29/2019  Page 176 of 281
March 11, 2019

1          these are the residual boards that

2          Your Honor asked about earlier that

3          were found in 2018, and there are two

4          variations.  The first one is MADE IN

5          CHINA MEET OR EXCEEDS ASTM.  The

6          second one is MADE IN CHINA MEET OR

7          EXCEEDS, again, ASTM.  Both of the

8          MEET is singular, and both of the

9          EXCEEDS is plural.

10                 The difference is in the font.

11         It's very minuscule, but they are

12         different.  And as you will see, the

13         top one takes care of the second

14         marking for font variations, and the

15         bottom one takes care of the font

16         variation at the third entry right

17         there, so we can check off both of

18         those font variations.

19                 Now, the last one, Taishan has

20         not admitted and did not find any

21         residual boards.  However, we found

22         this board in one of the claimants'

23         homes in Florida who has remediated.

24         And as you'll see, it's the same

25         marking with the pointed A and it's

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 207 of 343
Case 2:11-cv-22408-MGC Document 259 Entered on FLSD Docket 04/29/2019 Page 177 of 281
March 11, 2019

1    MADE IN CHINA dot.  There's not a

2    space in between CHINA and MEETS.  But

3    as you'll see on the right-hand side,

4    the Taihe edge tape.  There's some

5    other Taihe edge tape, you can see

6    some above, but I have it circled

7    right here; and which is important

8    because -- we will review this in a

9    second, but for right now I will just

10   note that the font for this, we had

11   the Taihe edge tape, and that font,

12   Taishan would have admitted this

13   because of the Taihe edge tape;

14   however, if the edge tape was not

15   present, then it would have been

16   denied.

17        But I would represent to you,

18   Your Honor, that this -- that this

19   photo shows that they also

20   manufactured boards with this type of

21   font, so we can put a check on the

22   last one.

23        Now, this is a good

24   side-by-side comparison because at the

25   catalog which is at Tab 3 to the

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 208 of 343
Case 2:11-cv-22408-MGC-EEF-MBN Document 299 Entered on FLSD Docket 04/29/2014 Page 178 of 281
March 11, 2019

1   plaintiff's product ID brief, photo 20

2   and photo 21 look nearly identical.

3   The only difference is that Taishan

4   has admitted to photo 20, but has

5   denied photo 21.

6        And why is that?  It's because

7   this is MEETS, plural, and the top,

8   photo 20 is MEET, singular.

9        Same thing for 17 and 18.

10  Identical font, identical words,

11  except for the top one is singular,

12  Taishan has admitted to it.  The MEET

13  is singular, and the bottom one,

14  Taishan has denied because it's MEETS,

15  plural.

16       Now, Your Honor, I would remind

17  you that the Manufacturer Profile Form

18  says MEET OR EXCEED, both singular.

19  Nowhere does it say MEET OR EXCEEDS,

20  plural.  It's only until the residual

21  boards were found in 2018 that Taishan

22  started to admit these boards.

23       They -- back in 2011, they

24  claimed that they had insufficient

25  evidence to admit or deny that they

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 209 of 343
Case 2:11-cv-22408-MGC-EEF-MBN Document 299 Entered on FLSD Docket 04/29/2019 Page 179 of 281

March 11, 2019

1    manufactured these boards, but in
2    2018, whenever they were found with
3    the MEET OR EXCEEDS, plural, they were
4    now admitted to.
5         And I'd just like to point one
6    other thing out for this picture that
7    we saw earlier.  Again, edge tape,
8    different kind of font that's found at
9    photo 19 of the catalog.  There's
10   MEETS, MEETS OR EXCEEDS.  Both
11   MEETS -- both plural, which Taishan
12   claims they did not manufacture any
13   boards with MEETS, plural.  And also,
14   this is a date stamp or work shift
15   number also on this board.
16        Mr. Che Gang was asked in his
17   deposition -- we saw this slide
18   earlier -- about whether -- which is
19   correct.  You found the residual
20   boards in 2018 that say MEET OR
21   EXCEEDS plural, but the Manufacturer
22   Profile Form says MEET OR EXCEED, both
23   singular.  Which one is correct?  You
24   can't have it both ways.
25        And his response, and I will

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 210 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2013 Page 180 of 281
March 11, 2019

1    read it as Ms. Eikhoff alluded to

2    earlier with the errata, says:  I

3    believe the Manufacturer Profile Form

4    created by Mr. Peng is correct, but

5    it's possible that it's not very

6    precise.  It did not pay attention to

7    small details such as the changes

8    between plural and singular forms.

9         And this is unfortunate because

10   this is such a big issue in the

11   plaintiffs' homes because a lot of

12   plaintiffs in Florida have variations

13   of drywall, and we don't have the

14   information from the printers from

15   Taishan, we don't have the records, we

16   don't have any of that.

17        So if we can't rely on the

18   Manufacturer Profile Form and can only

19   rely on Taishan's residual boards that

20   they luckily found, our hands are

21   tied.

22        So we believe that we have put

23   forth enough to show that Taishan

24   manufactured boards with MEETS OR

25   EXCEEDS, MEET OR EXCEEDS, and all of

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 211 of 343
Case 4:11-cv-22408-MGC-EEF Document 299 Entered on FLSD Docket 04/29/2013 Page 181 of
281
March 11, 2019

1          the four font variations.

2               MR. VENDERBUSH:  So I think

3          we're going to slide 23.  So now we're

4          into the first of the two generic

5          categories, and I just want to reframe

6          the table that we're looking at

7          specific categories here, and we have

8          admitted to this where we found the

9          residual boards in our factory, so we

10         know that we made those, but these

11         other ones are different.

12              And given what you've heard

13         today and given what we know about the

14         market conditions in this time and

15         other manufacturers were out there and

16         other manufacturers were making boards

17         and other manufacturers were making

18         generic boards, that it does not

19         automatically flow that every board

20         with a generic marking was

21         fortuitously made by the only

22         manufacturer that plaintiffs continue

23         to pursue in this litigation when they

24         named other manufacturers and chose

25         not to pursue them.

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 212 of 343
Case 1:11-cv-22408-MGC-EEF Document 259 Entered on FLSD Docket 04/29/2019 Page 182 of 281
March 11, 2019

1          That's what they are asking you

2     to presume, that they're all made by

3     Taishan because we're the only ones

4     here before you, and that doesn't

5     logically flow.

6          So it's not about a

7     presumption.  It's about -- I'll just

8     touch on their legal burden again --

9     that plaintiffs have to prove each of

10    the markings that we're talking about.

11    It's not just an, oh, MADE IN CHINA,

12    throw it all to Taishan.

13         My understanding, the special

14    master has to make a determination as

15    to each of the catalog pictures that

16    the parties have agreed to and make a

17    specific finding that plaintiffs have

18    met their burden of proof to tie that

19    specific finding, one by one, to

20    Taishan.

21         And some of the pictures that

22    they've showed you today from specific

23    claimants' houses then also show how

24    important it is that we're going to

25    have another step that's claim

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 213 of 343
Case 2:11-cv-22408-MGC ECF Document 255 entered on FLSD Docket 04/29/2014 Page 183 of 281
March 11, 2019

1    specific to say what is it that that

2    picture shows?  Does it show enough?

3    Because we've seen that we then have

4    issues about what is the level of

5    claim-specific proof to tie any

6    claimant to a category that you found

7    to be sufficient or that Taishan has

8    admitted to.

9            So we think that is going to be

10   a step in this process when we get

11   down to a claim-specific objection

12   level in the future.

13           So I ask the special master to

14   require them to have the greater

15   weight of the evidence, not just to

16   make a presumption because they're

17   claiming that there are proof

18   problems.

19           And so here's where it's

20   important to go back to the myth of

21   only the two manufacturers.  And we've

22   showed you this chart before, that we

23   were at, at most, 30% of this market.

24   And remember, this is -- the equities

25   here have been a little skewed so far,

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 214 of 343
Case 1:11-cv-22408-MGC-EEF-MBN Document 299 Entered on FLSD Docket 04/29/2014 Page 184 of 281
March 11, 2019

```
1          because we have admitted when we found

2          the residual board, and even before

3          that in the MPF, back in 2011.  It's

4          not that we were denying that we made

5          board with some generic mark.

6               We said that we did make some

7          board with generic mark, and that was

8          the question presented to us by

9          Judge Fallon as the MPF exercise.  But

10         consistent with our understanding of

11         the market was that we hadn't made

12         every board with generic mark.

13              So that was the distinction we

14         were trying to draw in our MPF and

15         which we are still trying to draw to

16         this day, that it is not a binary

17         choice between did Taishan make all

18         generic board, did Taishan not make

19         all generic board.

20              We have accepted responsibility

21         for 128 of the 266 claims in the

22         generic board super-category that has

23         five subcategories that you have to

24         make five separate -- or not only --

25              MS. EIKHOFF:  Four.
```

March 11, 2019

 1              MR. VENDERBUSH:  -- four now.

 2              So the plaintiffs have ignored

 3         all the other manufacturers when they

 4         give you their presentation.  They

 5         sued those manufacturers and they

 6         didn't pursue them, and so we don't

 7         have the discovery on what -- on what

 8         their boards would have looked like.

 9              And I want to suggest that it

10         makes sense -- it makes more sense

11         that Taishan did not make every

12         generic board that is in Florida, that

13         it makes much more sense, if you're

14         going to make a presumption, that

15         Taishan did not make every board

16         that's in Florida.

17              Because you've heard people

18         touch on it at the time -- or today,

19         but at the time, this was an

20         incredibly chaotic market and time

21         because for the -- there was a huge

22         drywall shortage.  People for the

23         first time were trying to source

24         drywall from other places, and it was

25         almost like drug dealing, right?  A

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 216 of 343
Case 2:11-cv-22408-MGC Document 259 Entered on FLSD Docket 04/29/2014 Page 186 of 281
March 11, 2019

```
 1          guy heard about a guy who could get

 2          you some drywall from China and I need

 3          some drywall.

 4               So people were scurrying

 5          around, and you've gotten a sense of

 6          that in the documents today.  Hey, I'm

 7          sending you this random e-mail, and

 8          maybe we documented it, maybe we

 9          haven't, and so where can I find some

10          drywall?

11               And so people were asking --

12          and this was not a market that had

13          been put together before.  People were

14          making it up as they were going along,

15          and Taishan was making it up as it was

16          going along too because they had not

17          been in the export to America market

18          before this, which explains many of

19          the practices you've heard today.

20               This was new territory for

21          Taishan, and Taishan now doesn't sell

22          to the United States.  This was a

23          finite period in 2006 to 2007 that

24          Taishan, because of market conditions,

25          was drawn into the United States
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 217 of 343
Case 4:11-cv-22408-MGC-EEE Document 293 Entered on FLSD Docket 04/29/2013 Page 187 of 281
March 11, 2019

```
 1            market.
 2                 And so that is why they didn't
 3            have a manual for foreign sales,
 4            because they had never done it before.
 5            But now suddenly people were
 6            clambering.  And you saw -- you know,
 7            IMT went to all the different people
 8            in China to try to get some drywall
 9            because we're -- it's a housing boom
10            and we're repairing from all the
11            hurricanes.  We can make money if we
12            can get some drywall.  And so that's
13            what's happening here.
14                 And the shipping -- so the
15            shipping records show it.  We've also
16            cited you to the Devon Trading Company
17            testimony where the Devon
18            representative states that customers
19            were specifically requesting generic
20            markings.
21                 Do you have that cite there?
22                 MS. EIKHOFF:  There's a lot of
23            different record citations, but they
24            are all laid out on pages 39 and 40 of
25            our PID brief.
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 218 of 343
Case 1:11-cv-22408-MGC-EEF Document 295 Entered on FLSD Docket 04/29/2019 Page 188 of 281
March 11, 2019

1          MR. VENDERBUSH:  Thank you.

2          So that's really important,

3     that this was a mark that -- because

4     people were getting drywall from

5     sources that they had never gotten it

6     before, because you have the

7     manufacturer.  Then you have these

8     brokers and importers who are getting

9     the drywall, and then they sell to

10    their customers, who are usually the

11    suppliers.

12         So they want to have something

13    that they can represent, right?  They

14    don't want to have Chinese characters

15    over all of it, they don't want to

16    have Chinese names.  So this generic

17    marking that meets minimum standards

18    for them that says MADE IN CHINA, that

19    says that it meets or exceeds the ASTM

20    American standard, that would be good

21    for them.

22         And they asked for that, and so

23    that's what they could sell to

24    suppliers.  Because it wasn't going to

25    say U.S. Gypsum on it, which was, you

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 219 of 343
Case 3:11-cv-22408-MGC-EEF Document 29 Entered on FLSD Docket 04/29/2019 Page 189 of 281
March 11, 2019

1          know, the usual domestic companies

2          that brokers would sell to suppliers.

3          It was new, and so it's this generic

4          product.  You wanted drywall?  I've

5          got drywall for you.

6               So that's where this generic

7          market comes from, and so importers

8          were asking different people to --

9          different manufacturers in China to

10         make it that way so they could resell

11         it, and those are the examples that

12         are on those, 38 and 39.

13              So they're making a big deal

14         out of the MPF, whether it has --

15         where we said MEET OR EXCEED, and that

16         that somehow proves or disproves

17         something.  It sort of gets used both

18         ways.

19              But I just want to sort of take

20         the attention off of that, because

21         when Mr. Che testified that -- this is

22         a discussion between accurate and

23         precise.

24              And I think it's when Mr. Peng

25         put that together, these are peoples

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 220 of 343
Case 2:11-cv-22408-MGC Document 295 Entered on FLSD Docket 04/29/2013 Page 190 of 281
March 11, 2019

1          who are native Chinese speakers, and

2          they're being asked to fill out

3          American documents, and so the sort of

4          variation is understandable, really.

5                So -- and actually, the

6          plaintiffs themselves mention it.

7          It's footnote 208 in their brief,

8          which is on page 46.  And they say

9          it's not a stretch that a Chinese

10         manufacturer operating in a foreign

11         language would make a grammatical

12         error.

13               So it's -- the MPF is not that

14         it included an S or it doesn't include

15         an S.  We relied on what we saw in our

16         board, right, the board that we found

17         in our factory.  And so that had the

18         MEET OR EXCEEDS, and that's what we

19         based our admission on.

20               So I want to close with the

21         idea that we do not presume that every

22         single MADE IN CHINA is Taishan just

23         because some of them were admitted.

24         But look at each picture and see if

25         the greater weight proves it because

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 221 of 343
Case 2:11-cv-22408-MGC   Document 293   Entered on FLSD Docket 04/29/2019   Page 191 of
281
March 11, 2019

1       there were other manufacturers in this

2       area.

3              MS. SCHWAB:  Ms. Lee, if you

4       can go to slide 80, please.

5              SPECIAL MASTER LEE:

6       Eight-zero?

7              MS. SCHWAB:  Eight-zero.

8              Very briefly, I just want to

9       touch on a few points that

10      Mr. Venderbush made.

11             There's three boards or three

12      photos that Taishan denies in this

13      category.  The first one is photo 21,

14      and as you'll see, it's not just a

15      generic, as Taishan calls it.  The

16      similarities are -- they're nearly

17      identical.

18             The top one and the bottom one,

19      same font, same lettering, same

20      spacing, same everything.  The only

21      difference, as we looked at before, is

22      the S.

23             Another one Taishan denies is

24      photo 18.  This is the second one,

25      MADE IN CHINA MEET OR EXCEEDS, top one

March 11, 2019

```
 1        they accept.  The bottom one they deny
 2        because MEETS is plural.
 3              Finally, the third one that
 4        they denied is because -- it's photo
 5        19 -- is because it says MADE IN CHINA
 6        MEETS, plural.  And they say that they
 7        didn't find any residual boards with
 8        MEETS, plural, and so they -- it's
 9        their -- they don't believe that
10        Taishan manufactured boards with
11        MEETS, plural.
12              However, the Taishan edge tape
13        on the right, also the date stamp and
14        the MEETS.  That's the third category
15        that they deny.
16              So we feel that we have met our
17        burden of persuasion to -- that all
18        three of these markings, 18, 19 and
19        21, are Taishan products.
20              SPECIAL MASTER LEE:  So
21        Defendants, can you just address photo
22        19?  Like what is your position on
23        that one?
24              MS. EIKHOFF:  Do you want me
25        to?
```

March 11, 2019

```
 1              MR. VENDERBUSH:  Go ahead.

 2              MS. EIKHOFF:  Photo 19 has

 3      MEETS with an S, and there are no

 4      records at Taishan of any -- of ever

 5      us manufacturing boards with an S at

 6      the end of MEETS.

 7              The evidence that we have and

 8      what we have accepted responsibility

 9      for are boards that say MEET OR

10      EXCEEDS.

11              I just want to take an

12      opportunity, and I don't think that

13      you'll disagree with me on this, that

14      when you have on your presentation PID

15      Catalog Photo 19, those are actually

16      not the photos from the catalog.

17              MS. SCHWAB:  Right.  This is

18      just a photo, an exemplar of photo 19.

19              MS. EIKHOFF:  Right.  So --

20              MR. VENDERBUSH:  According to

21      you.

22              MS. SCHWAB:  According?

23              MR. VENDERBUSH:  To you.

24              MS. SCHWAB:  Okay.  If you

25      classify this differently --
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 224 of 343
Case 2:11-cv-22408-MSC-EEF-MBN Document 235 Entered on FLSD Docket 04/29/2019 Page 194 of
281
March 11, 2019

1          MR. VENDERBUSH:  We don't know.

2     This is the first we're seeing it.

3          MS. EIKHOFF:  Yeah.  So I just

4     want to just make clear that when

5     Taishan was stating its positions for

6     the court, it was stating them on the

7     basis of the PID photo catalog and the

8     photos in that catalog.

9          So I just want to -- since that

10    says PID Catalog Photo 19, it is

11    another photo from a claim file that

12    you guys have attributed to category

13    photo 19.

14         MS. SCHWAB:  Right.  And, you

15    know, and I'll represent to you that

16    photo 19 says MADE IN CHINA.MEETS, and

17    it's the same font that's in this

18    photo.  This is just a photo that we

19    came across that we are using because

20    we think that it's a better picture

21    because it gives the full board.

22         SPECIAL MASTER LEE:  Does the

23    catalog photo have the tape?

24         MS. SCHWAB:  It does not.

25         MS. EIKHOFF:  No.  And

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 225 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 195 of 281
March 11, 2019

1        actually, here's -- that's photo 19

2        from the catalog, if you want to just

3        see.

4              SPECIAL MASTER LEE:  Okay.

5              MS. SCHWAB:  And one final

6        comment, Your Honor.  I would just

7        like to note that I understand that

8        Ms. Eikhoff's position is they haven't

9        come across any records that they

10       manufactured boards with MEETS,

11       plural.  However, in light of the

12       Manufacturer Profile Form, only having

13       MEET OR EXCEEDS singular, and Mr. Che

14       Gang's testimony that it was not

15       necessarily precise with regards to

16       singular or plural, I think that --

17       I'm belaboring the point, but I will

18       move on.

19             So Category J, which is drywall

20       with dimensions.  So again, in

21       Taishan's Manufacturing Profile Form,

22       they admit to manufacturing 203,130

23       sheets of drywall with white edge

24       tape -- with white edge sealing tape

25       without words printed thereon and

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 226 of 343
Case 2:11-cv-22408-MGC-EEF-MBN Document 299-1 Entered on FLSD Docket 04/29/2012 Page 196 of 281

March 11, 2019

1    product markings DRYWALL, all caps,

2    4feetX12feetX1/2inch.

3          Now, as Your Honor is likely

4    aware by now, that is the size of the

5    American size of gypsum board.

6          So this is actually the photo

7    from the catalog, photo number 2, and

8    this is the only drywall with

9    dimensions marking that Taishan admits

10   in this bucket.

11         In Mr. Che Gang's deposition in

12   2019, his position was Taishan does

13   not deny the possibility that 2 is a

14   product of Taishan as a possibility.

15         In Taishan's brief, they say:

16   Taishan's litigation position to

17   accept responsibility for the markings

18   in photo 2 relied on its similarities

19   in font and print style to the MADE IN

20   CHINA exemplars it found.

21         That's at page 44 in Taishan's

22   brief.

23         So it's talking about this W,

24   and that's what Mr. Che Gang

25   explained, that they found some other

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 227 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 197 of
281
March 11, 2019

1     residual board in 2018 that had a

2     similar W, so because of the

3     similarities in the W with the drywall

4     with dimensions, they are accepting

5     this vari- -- this font variation.

6          Again, this is the same sword

7     and shield argument.  At one point

8     they want to say, oh, the fonts are

9     similar, and so they will accept it.

10    But whenever the fonts are -- whenever

11    other fonts are similar, like the

12    GYPSUM in C&K and the GYPSUM in

13    another marking, the Taishan sealing

14    board, they don't want to acknowledge

15    it and say, no, just because fonts are

16    similar, it doesn't mean that they're

17    both our product.

18          But here, they relied

19    exclusively on the similarities in the

20    W to accept this marking variation.

21          So this is photo number 2 from

22    the catalog, and this is photo

23    number 9 from the catalog, and I tried

24    to blow it up so I see that it's kind

25    of pixillated, but this is at Tab 3 to

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 228 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2014 Page 198 of
281

March 11, 2019

1          plaintiff's product ID brief, and

2          there are better pictures.

3                    So number 2, Taishan admits

4          responsibility.  So you have drywall

5          with dimensions.  And as you'll see,

6          this is a big Y.  The D is capitalized

7          and the Y is capitalized, and that's

8          very important because the DRYWALL

9          4feetX12feetX1/2inch that is indicated

10         in the Manufacturer Profile Form that

11         Taishan admits to manufacturing, all

12         of the DRYWALL is capitalized.  Here,

13         just the D and just the Y is

14         capitalized.  So Taishan admits to

15         manufacturing this.

16                   However, at page 19 of the

17         catalog, again, big Y, big D, Taishan

18         says, no, this isn't ours because we

19         didn't make -- the numerical markings

20         are not consistent with Taishan's

21         records.  They didn't manufacture

22         this.  So they said even though the Y

23         is similar, even though both of these

24         look nearly identical, this isn't one

25         of ours.

March 11, 2019

```
 1              Again, Mr. Che Gang was shown
 2      this picture -- this is found at photo
 3      5 in the catalog -- and was asked what
 4      did Taishan rely on to deny this
 5      marking?
 6              Mr. Che Gang's testimony was:
 7      Based on my years of experience in the
 8      gypsum board industry, the marking on
 9      page 5 is not a sprayed marking, but
10      rather a painted marking.
11              Now, that was discussed
12      earlier, the difference between a
13      spray marking and a painted marking
14      and the numerous font variations.
15              However, whenever this photo
16      was shown to Mr. Che Gang, which was
17      from Taishan's own production -- and
18      this makes it look like that it's
19      really grainy.  It's not that grainy,
20      but be that as it may, same font
21      variations, same type of writing --
22      was asked:  Is this the same marking
23      that's found at photo 5?
24              Mr. Che Gang's response was:
25      There's some similarities of fonts,
```

March 11, 2019

```
 1        but because the picture is in black

 2        and white, you cannot see whether or

 3        not it is injected by needle sprayer.

 4        In addition to that, this set of

 5        pictures cannot prove that the

 6        products are from Taishan.

 7              Now, this will come up and will

 8        be discussed, but we would love to

 9        have better quality photos.  We would

10        love to have photos that aren't in

11        black and white.  We would love to

12        have color photos.  But this is what

13        we were given.  We've asked for better

14        quality, we've asked for color photos

15        and have been told that this is the

16        best that we can do.

17              So even though the similarities

18        are striking, he said that there's

19        some similarities, but because of the

20        quality, he can't accept that.  And

21        that's why this marking was denied by

22        Taishan.

23              So this is a photo from

24        Venture, and I put this in here only

25        to show that this is also a painted
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 231 of 343
Case 2:11-cv-22408-MGC-EEF-MBN Document 299 Entered on FLSD Docket 04/29/2019 Page 201 of 281
March 11, 2019

1      marking.  And what's Taishan's

2      position here?  They accept this

3      Venture marking.

4          So if we go to the next slide,

5      I just show this to again show the

6      work shift number, work shift stamp I

7      think is what the correct term is.

8          Again, big Y that Taishan has

9      admitted to whenever it's followed by

10     or preceded by dimensions.  But if

11     it's with a date and work shift

12     number, what do they do?  They deny

13     the top one, but the bottom one, which

14     is Venture Supply, and we looked at

15     all of the different variations, the

16     bottom one is admitted.

17         And Mr. Venderbush said earlier

18     that anybody can stamp these numbers

19     and these dates and the time on their

20     boards.  But I would submit that the

21     fonts in these two photos are very --

22     are very similar.  I think that's

23     important because, again, whenever

24     it's beneficial to Taishan, they say

25     look at the similarities, we'll admit

Case 2:09-md-02047-EEF-MBN   Document 22397-7   Filed 12/09/19   Page 232 of 343
Case 1:11-cv-22408-MGC   Document 299   Entered on FLSD Docket 04/29/2019   Page 202 of 281
March 11, 2019

1          that.  Whenever -- and then in other

2          situations when it's similar, they

3          won't take the same position.

4               Now, Your Honor, there are some

5          other markings for drywall with

6          dimensions that I have not gone over.

7          Those can be found at 6, 7, 8 and 10

8          of the catalog.  And I would submit

9          that because of all of the variations

10          in Taishan's position, that the reason

11          why they accepted just this one was

12          because of the similarity in the W

13          and, in contrast with the Manufacturer

14          Profile Form, where all of the letters

15          were in caps, that -- and this is

16          outlined in the brief, in the

17          variations in all of them, that

18          there's no way, because we weren't

19          lucky to find any residual boards for

20          any of these markings, that all of

21          them should be attributed to Taishan.

22               MS. EIKHOFF:  We should be at

23          slide 28.

24               MR. VENDERBUSH:  Thank you.

25               So here in drywall with

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 233 of 343
Case 4:11-cv-22408-MGC-EEF-MBN Document 295-1 Entered on FLSD Docket 04/29/2013 Page 203 of 281
March 11, 2019

1      dimensions, the plaintiffs begin to do

2      what they should be doing, which is --

3      which as I suggested in the last

4      category, which is to bring to you

5      their proof for each category.

6            And we heard about

7      subcategory 9 and we heard about

8      subcategory 5, and at the end,

9      Ms. Schwab said she didn't touch on 6,

10     7, 8 and 10.

11           So the fact that they have some

12     proof for 9 and some proof for 5

13     doesn't mean that then you just roll

14     all the cards over and put it all to

15     Taishan, that there is a burden of

16     proof and there is a fact-specific

17     inquiry for each of the different

18     subcategories.  And just because

19     there's variation doesn't mean that it

20     all goes to Taishan.

21           So here we can see the

22     variation in this category, we have at

23     least eight different looks of that.

24     And earlier today I think the

25     plaintiffs showed you the picture

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 234 of 343
Case 1:11-cv-22408-MGC-EEF Document 23 Entered on FLSD Docket 04/29/2013 Page 204 of 281
March 11, 2019

```
 1          of -- for Venture, and they put five

 2          different versions up here, and I

 3          would suggest that there's actually,

 4          at most, three, that this one and this

 5          one are the same, and this one and

 6          this one are the same, and this one --

 7          I mean, that doesn't really count

 8          because they haven't shown you

 9          anything that looks anything like that

10          in MADE IN CHINA or in DRYWALL.

11               So were there two different

12          sets that they showed you?  Yes, but

13          that's not eight different sets.  And

14          so there's not so much variation here

15          as meets the eye.

16               So the inquiry continues to be

17          subcategory specific, and we haven't

18          heard anything about 6, 7, 8 and 10.

19               And so they continue to rely on

20          the myth of the two manufacturers in

21          this hearing, and they discount

22          Taishan's attempt to acknowledge its

23          responsibility here where, by

24          accepting Category 2 -- which we did

25          accept.  We did not have to do that,
```

March 11, 2019

```
1        but that Category 2 actually accounts
2        for 529 of the 960 claims that are in
3        this category.  So that is not a
4        small -- even though it's only one of
5        the eight, it's actually by far the
6        largest section.
7              So that was not something that
8        Taishan had to do, but they could
9        have -- you know, if we were as
10       recalcitrant as we have been painted
11       today to just sit back and say prove
12       your case, right, so we haven't done
13       that.
14             And so the equitable picture
15       here, I'm just trying to reset it a
16       little bit, that there have been
17       reasonable admissions that my client
18       has made, and it's not just we threw
19       away all the documents that were
20       making you prove your case, right?
21             We're making denials where we
22       reasonably felt that we couldn't admit
23       it because that's what defendants do.
24       That's the defendant's right, to make
25       the plaintiffs prove their case.  And
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 236 of 343
Case 2:11-cv-22408-MGC-EEF Document 29 Entered on FLSD Docket 04/29/2013 Page 206 of 281
March 11, 2019

1      so on some they may have better proof,

2      on some they may have no proof.  So we

3      ask the special master to honor

4      Florida law and honor the record here

5      to make the determinations.

6              SPECIAL MASTER LEE:  Okay.

7              MS. SCHWAB:  Slide 88, please.

8      Your Honor, I just -- I noticed that

9      there's wasn't a cite to the photo on

10     the right that I represented was from

11     Taishan's production that I wanted to

12     provide.  It's Tab 30 at page 3 of

13     plaintiffs' product ID brief.

14             Mr. Venderbush is right.  We

15     didn't go through 6, we didn't go

16     through 7, we didn't go through the

17     other ones, but the reason is, is

18     because all of that is discussed in

19     depth in our brief.

20             We can go through all of those

21     today, but we don't think that it

22     would be efficient or beneficial

23     considering the Manufacturer Profile

24     Form doesn't distinguish between

25     capitalizations, plural, singular,

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 237 of 343
Case 2:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 207 of 281
March 11, 2019

1      none of that.

2              So we're relying on the

3      evidence that we have and the markings

4      that we have and the admissions, and

5      from that, we can extrapolate what we

6      can.

7              Taishan just said earlier that

8      there are other manufacturers besides

9      them that mark boards with these

10     markings.  Yet they haven't named one

11     manufacturer.  They haven't pointed to

12     one manufacturer with the drywall with

13     dimensions, so there's no one else

14     that we know of with the DRYWALL

15     4feetX12feetX1/2inch except for

16     Taishan.

17             And I am going to pass at the

18     time to my colleague, Mr. Serpe.

19             MR. SERPE:  One moment.

20     Special Master, I'd like to take a

21     short break.  I've got a couple of

22     questions I want to bounce of off

23     counsel about one of the slides they

24     put up that would be helpful for me on

25     this presentation, and then I'll be

March 11, 2019

1        ready to go.

2              SPECIAL MASTER LEE:  Okay.

3        We'll take five minutes.

4              (Recess taken, 2:33?p.m. to

5        2:40?p.m.)

6              MR. SERPE:  The next bucket

7        we're going to attend to are unmarked

8        boards with white edge tapes.  The

9        denomination of these is an area that

10       calls for a little bit of precision as

11       to whether there was no edge tape or

12       whether it was white edge tape, but

13       we're going to -- let me start by

14       saying unmarked, there were no

15       markings on the board itself, white

16       edge tape.

17             So we start with Taishan's

18       Manufacturer Profile Form, we've

19       provided as Tab 11, and they admit to

20       351,745 sheets of drywall with no

21       product markings, no edge sealing tape

22       markings from -- it's a narrow window,

23       March of '6 to September of '6, so

24       it's a six-month window for Taishan,

25       and in that window they generated

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 239 of 343
Case 1:11-cv-22408-MGC-EEF Document 299 Entered on FLSD Docket 04/29/2019 Page 209 of 281
March 11, 2019

1    351,745 boards to go into the United

2    States.

3         I like to convert boards to

4    homes, how many homes are we talking

5    about.  And you can measure a home and

6    calculate.  But let me just tell you

7    that my metric is 500.  Counsel might

8    suggest a different number.  500

9    sheets go into a home.  I've done that

10   based on having looked at sales

11   invoices for 200 homes built with

12   Taishan drywall in Virginia and

13   counted how many boards.  500 would be

14   an overestimate of how many Taishan

15   boards went into a home, but I use

16   that.

17        If you do that math, which I'm

18   terrible at, but did it before I

19   started, you're talking about enough

20   drywall to do 700 homes.  700 homes

21   with white board.

22        At line 11 of the profile form,

23   they admit to 19,000 sheets of drywall

24   with no product markings, but edge

25   sealing tape that is white edge

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 240 of 343
Case 1:11-cv-22408-MGC Document 259 Entered on FLSD Docket 04/29/2019 Page 210 of 281
March 11, 2019

1          sealing tape without words printed

2          thereon.  So, you know, add that to

3          the pile.

4               Despite having sent that volume

5          in, into the United States, Taishan,

6          for the purposes of the contest that

7          you're deciding, has admitted zero

8          boards that are unmarked.

9               Taishan has no lucky residual

10         board exemplar for which we can turn

11         to, so we end up in a situation where,

12         by counsel's definition, pounding away

13         on the burden of proof, Taishan's

14         position would be on a white board,

15         even though we sent in enough drywall

16         for here, 700 -- I'm going to do a

17         little bit more calculations on some

18         other documents -- we're responsible

19         for none of it.

20               The deposition which we took in

21         January, we went over a document with

22         Mr. Che, who was the 30(b)(6)

23         deponent.  And in it they acknowledged

24         998,778 square meters of board with

25         white, unlettered edge banding and

Case 2:09-md-02047-EEF-MBN  Document 22397-7  Filed 12/09/19  Page 241 of 343
Case 1:11-cv-22408-MGC  Document 299  Entered on FLSD Docket 04/29/2014  Page 211 of
281
March 11, 2019

1      another 1,020,749 square meters of

2      gypsum board with unknown.

3          So let me just look at the

4      unknowns for a second.  We've got,

5      from their Manufacturer Profile Form,

6      351,000 boards.  I said that's 700

7      homes.

8          For the unknown category, at a

9      million square meters, Counsel can

10     correct my math, but I'm looking at

11     228,000 sheets.  That would be enough

12     for another 457 homes of unknown.  It

13     was unknown white and blank, but we

14     don't know.  We don't know.

15         Did they have records that have

16     been destroyed that haven't been

17     turned over?  But between these two

18     categories, the ones they acknowledge

19     were white, 700 homes.  Here's another

20     450 homes that they're saying unknown.

21     Between the two of them, that's 1,200

22     homes that Chinese -- that Taishan's

23     drywall installed in a home is going

24     to destroy that home from the inside

25     out, damaging the plaintiffs

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 242 of 343
Case 2:11-cv-22408-MSC-EEF-MBN Document 299 Entered on FLSD Docket 04/29/2019 Page 212 of 281
March 11, 2019

1          monumentally, turning their lives

2          upside down.

3                 1,200 -- enough drywall, 1,200

4          families lives turned upside down.

5          Only 80 homes now are in this contest

6          to say, hey, I had the white board.

7          This has got to be yours, Taishan.

8                 How many does Taishan accept?

9          The answer?  Zero.

10                So when we're talking about

11         equities, when we're talking about how

12         you should interpret evidence and the

13         defendants' conduct in this

14         litigation, we want to make sure that

15         we've emphasized the fact that because

16         of their marketing and marking

17         strategies, they end up in the

18         luxurious position where even though

19         they dumped toxic drywall on 1200

20         homes, they're able to sit back and

21         say, burden of proof, get out of jail

22         free card.

23                In the briefing we laid out how

24         United States custom law has very

25         specific regulations with respect to

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 243 of 343
Case 3:11-cv-22408-MGC-EEF Document 299 Entered on FLSD Docket 04/29/2019 Page 213 of 281
March 11, 2019

           1            how products have to be marked before
           2            they're imported into the United
           3            States.
           4                 We also provided citations to
           5            documents where some of the U.S.
           6            customers that were dealing with
           7            Taishan at the time said, hey, you
           8            need to make -- you have to print MADE
           9            IN CHINA, you have to put other
          10            identification information on those
          11            boards according to U.S. custom law.
          12            That's the law.
          13                 So we know back in 2006 that
          14            Taishan was aware of it.  It would be
          15            real incredulous to suggest that a
          16            huge manufacturing concern like
          17            Taishan was unaware of U.S. imports,
          18            but we can show, because one of the
          19            customers was e-mailing the U.S.
          20            customs requirement to Taishan
          21            contemporaneously, they knew about it.
          22                 In the 30(b)(6), Mr. Che
          23            offhandedly brushed it aside.  Oh,
          24            different companies -- countries have
          25            different things that they may require

March 11, 2019

```
 1        on their board.  We don't pay any
 2        attention to that.
 3             So we now end up with enough --
 4        clearly enough for 700 homes.  In my
 5        mind, I lump their unknown into this
 6        category as well.  To me it fits
 7        conceptually, either 1,200 or 700
 8        homes with these blank boards, no
 9        information.
10             And we've got them specifically
11        violating U.S. law which required them
12        to print the identifying information
13        on the boards.
14             In terms of burden of proof,
15        burden of persuasion, we believe we
16        presented the special master with
17        overwhelming evidence regarding the
18        fact that Chinese clearly -- that
19        Taishan clearly made these boards.
20        They clearly imported them.  It's here
21        in the United States.
22             Now we have 80 homes, a tiny
23        fraction of that where people have
24        pulled the boards out, submitted the
25        proof, that's what it is.  Taishan is
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 245 of 343
Case 4:11-cv-22408-MGC Document 259 Entered on FLSD Docket 04/29/2014 Page 215 of 281
March 11, 2019

1      saying none of that is ours, so you

2      can't satisfy your burden of proof,

3      hiding behind a violation of U.S. law

4      that they were supposed to print

5      information on the board and did not.

6               We think in that situation that

7      the law -- they're quite right on the

8      burden of proof, and I went back and

9      looked at the inference and shifting

10     burden section of our brief, and we'll

11     be happy to supplement, but we believe

12     you do have the ability, as the finder

13     of fact, to make inferences against

14     the defendants based upon their

15     conduct.

16              Start with the basic jury

17     instruction, credibility of a witness,

18     in every trial you've ever been in.

19     If you believe that the witness has

20     been untruthful about one thing, you

21     may infer that they've been untruthful

22     for their entire testimony.  That's

23     standard.

24              If they violate U.S. law and

25     say, you know what, we're not going to

March 11, 2019

```
 1          mark those boards, thumbing their nose
 2          at the U.S. legal requirements for
 3          importing, and then dump 700 or 1200
 4          homes worth of drywall, hundreds of
 5          thousands of sheets of drywall on the
 6          U.S. market, engage in the course of
 7          discovery, which we've briefed
 8          ad nauseam, we've argued back and
 9          forth over whether or not Taishan has
10          acted with -- beyond callous
11          disregard, really with intent to
12          deceive.
13                  And we believe Judge Fallon has
14          so found, and we've laid that out.
15          I'm not going to delve into specific
16          items and argue back and forth with
17          counsel, but I believe that the court
18          will find that after the years of
19          delay, after the hide-the-ball
20          discovery tactics, after they violated
21          U.S. law, after they lied in
22          depositions, that the court has got
23          the ability to infer that on that vast
24          volume of blank board or white board
25          without markings that came in, tiny
```

March 11, 2019

```
 1        portion that is 80 homes, zero
 2        admitted in violation of the law, that
 3        you should infer against the
 4        defendants and let's turn that
 5        burden -- the burden of persuasion,
 6        not the burden of proof.  Let's turn
 7        the burden of persuasion to Taishan.
 8                Explain yourselves.  Why didn't
 9        you mark those boards?  Do you have
10        any evidence?
11                Now, I appreciate the Court's
12        ability to take a minute to ask
13        learned counsel where they got this
14        pie chart from, which is their slide
15        30, but I think it shows up like five
16        times in their presentation.  They
17        keep coming back to it, the pie chart.
18                And which, you put it up and
19        you look and they're calculating out
20        to 22%, how much drywall came from
21        other manufacturers other than
22        Taishan, Knauf and BNBM, who is their
23        parent company, right.  And they come
24        down, all these other companies, it's
25        this vast -- of the drywall that came
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 248 of 343
Case 2:11-cv-22408-MGC   Document 299   Entered on FLSD Docket 04/29/2019   Page 218 of 281
March 11, 2019

```
1          into the United States, it's a vast

2          22%.  And counsel keep pounding me

3          specifically and the plaintiffs' team.

4          They had these plaintiffs, they let

5          them go, they should have presented

6          it.  Here's the evidence that there

7          were all those manufacturers.

8                Where did that come from?

9          Where do you get 22% from?

10               Well, it turns out that they

11         pick one of their markers for how much

12         drywall total came into the United

13         States.  They picked the HUD number.

14         So they start with, well, that's how

15         much drywall came in, in the number of

16         sheets or square meters, whatever unit

17         that you want.

18               What did they deduct from that?

19         They deducted how much they admitted

20         they sent in.  Those are their

21         numbers.  Assuming we put in 20% here

22         and 20% there and 20% here; so

23         therefore, add that up and you know

24         what we're not admitting?  We're not

25         admitting 22% of this.  So therefore,
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 249 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 219 of 281
March 11, 2019

```
 1            ergo, that had to have been some other
 2            manufacturer in China that was sending
 3            that stuff in there.  I think that's
 4            hogwash.
 5                 You put it in a pie chart and
 6            take it out to a percentage like 22%
 7            and cloak it with what looks like a
 8            reliable amount of information, but
 9            it's based on a deduction from their
10            assumptions or how much they've been
11            willing to admit they manufactured.
12                 Where is the hard documentation
13            that these manufacturers sent in
14            drywall to the United States?  Where
15            are the sales records, where are the
16            sheets, where are these other items?
17                 So two last kind of points on
18            this.  One of the points counsel makes
19            is, yeah, we named these other
20            manufacturers in the complaint.  Where
21            are they?  How come you haven't
22            brought them in?
23                 Counsel relies on the Consumer
24            Product Safety Commission as part of
25            the slide here.  When you go back and
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 250 of 343
Case 1:11-cv-22408-MGC-EEF-MBN Document 299 Entered on FLSD Docket 04/29/2019 Page 220 of 281
March 11, 2019

```
 1              look at the Consumer Product Safety
 2              Commission, several of these
 3              manufacturers had their boards
 4              submitted to the Consumer Product
 5              Safety Commission and they were tested
 6              to see if they came from the same
 7              region, the same strata of the mine
 8              that Mr. Montoya was talking about,
 9              that you picked up the contamination
10              and that they would release gases.
11                   And guess what?  Many, many of
12              the Chinese companies that were
13              sending a small amount of drywall at
14              the time, yeah, they had drywall, but
15              it wasn't from that mine.  There was
16              no sulfur in it.  It wasn't
17              off-gassing.
18                   So it's not enough that it was
19              a Chinese company that happened to
20              make drywall at the time.  It had to
21              have been the problematic drywall that
22              had the sulfur that released the
23              corrosion.
24                   So we come back again to --
25              we've been pursuing this for a decade,
```

Case 3:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 251 of 343
Case 3:11-cv-22408-MGC-EEF-MBN Document 299 Entered on FLSD Docket 04/29/2019 Page 221 of 281
March 11, 2019

1    fighting as hard as we can, looking

2    everywhere, to China.  Every time we

3    serve a complaint over there, it's

4    $100,000.  We've done everything we

5    can to get documentation.

6         And we turn to -- we're in the

7    United States.  We're doing this

8    across the ocean, we're doing it from

9    the standpoint where the state of

10   China goes through documents that

11   we've asked for and makes sure that

12   they're okay for state secrets before

13   they release them to us.

14        That laptop computer that

15   Mr. Montoya told you about?  Before

16   they gave us anything off the laptop,

17   it had to go through the state secrets

18   commission.  We only saw what they

19   wanted us to see.  So that's how we

20   get documents from companies like

21   that.

22        They're a Chinese company

23   that's state owned, and they've got

24   state ownership going all the way up

25   to the state of China.

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 252 of 343
Case 2:11-cv-22408-MGC   Document 239   Entered on FLSD Docket 04/29/2019   Page 222 of 281
March 11, 2019

```
 1            They have a division -- we
 2       cited this in your brief -- who
 3       specifically looks at their
 4       competitors to see what they're doing.
 5            And I again, in the deposition
 6       and today, I said show me a document
 7       where there was any substantial
 8       exporting of unmarked boards with
 9       white edge tape from any manufacturer
10       that was from the Taihe region that
11       had the contaminated sulfur.  One
12       document, one invoice.  I haven't seen
13       one.
14            Is there one out there?  Is it
15       possible another company sent them?
16       Anything's possible, Special Master,
17       but what I can tell you is, they did
18       enough to destroy 700 homes, 1200
19       homes if you lump in the unknowns.
20            We know they did, and it's
21       here, and it's corrosive, and we have
22       80 homes with that board that have
23       been destroyed.  Their response is:
24       Burden of proof.  We're done.  Didn't
25       mark it.  Too bad.  Still your burden
```

March 11, 2019

1          of proof.

2                    They're in China, they know

3          their competitors.  They know how to

4          access documents and how to do the

5          research.  We're not there, we can't

6          do any of that, yet they want to say

7          we have to go and figure out about

8          these other companies, et cetera.

9                    We've done our best and what I

10         can tell you is we're unaware of

11         another Chinese company making

12         unmarked boards with white edge tape

13         that were sent into this state by

14         anyone other than Taishan.

15                   Thank you.  Special Master,

16         forgive me, I got ahead of myself.  I

17         just want to point out three last

18         documents that were in the PowerPoint.

19         Thank you, and I apologize for that.

20                   We were layering additional

21         proof of our diligence in pursuing

22         documentation.  Here is Taishan

23         specifically indicating that they're

24         not going to do spray markings.

25                   Exhibit A to the Defendant's

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 254 of 343
Case 3:11-cv-22408-MGC-EDC Document 299 Entered on FLSD Docket 04/29/2014 Page 224 of 281
March 11, 2019

1       Manufacturer Profile Form

2       acknowledging that they made white

3       edge sealing tape without words.  And,

4       as an example, the Wheeler case --

5       this is one of the 80 families --

6       white board, white tape, highly

7       corrosive, and there's no markings on

8       it.

9            And the question becomes what

10      do you tell the Wheelers?  In this

11      situation and for the reasons I just

12      articulated, we believe we've met our

13      burden of persuasion because of the

14      huge volume they sent.  Their conduct,

15      particularly in not marking the

16      boards, and not marking the boards,

17      and their lack of presenting any

18      affirmative data to the contrary.

19           Thank you.

20           MR. VENDERBUSH:  Slide 32, I

21      think we're at.  So Mr. Serpe did a

22      little bit of a mini closing there, so

23      I'm not going to touch on everything

24      that he talked on.  I'm going to talk

25      about white edge tape and the -- some

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 255 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 225 of 281
March 11, 2019

```
 1        of the legal issues that relate to

 2        white edge tape, and then I understand

 3        we're going to have some real

 4        closings.  So I think my colleague,

 5        Ms. Eikhoff, will address some of the

 6        other issues that Mr. Serpe raised

 7        that were more global.

 8               So I just want to give you a

 9        quick picture of what white edge tape

10        looks like.  We were talking about

11        generics before.  This is as generic

12        as it gets.  This is -- these are the

13        kinds of pictures that we're looking

14        at for them to say this was made by

15        Taishan, right?

16               And, I mean, I have been a

17        products liability lawyer for

18        25 years, and product ID is a critical

19        issue in many cases.  And the

20        plaintiffs have to make the

21        connection, and Florida law requires

22        it, to connect the product to the

23        manufacturer.

24               So the ultimate question in --

25        for each of these claims is going to
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 256 of 343
Case 1:11-cv-22408-MGC Document 295 Entered on FLSD Docket 04/29/2013 Page 226 of 281
March 11, 2019

1    be can the claimant prove that the

2    product in the home was corrosive,

3    number one.

4         I mean, Mr. Serpe says, oh,

5    look at Mr. Wheeler's boards, they're

6    corrosive.  We don't know that those

7    boards are corrosive.  There's nothing

8    about them on their face that says

9    they're corrosive.

10        Do they have -- are there

11   chemical reports that say those

12   particular boards are corrosive?  And

13   then there's nothing that says that

14   those are Taishan boards.

15        So he said we don't know

16   anything about other people making

17   blank boards, but we do.  There is in

18   this record, and we -- there's buyer

19   testimony in our Appendix 67.

20        What distinguishing marks does

21   Pingyi Baier drywall have on it?

22        None.

23        Does it say Pingyi Baier on it?

24        No.

25        Does it say Chinese drywall?

1              No.

2              It has no markings on it at

3       all?

4              Not that I recall.

5              How about the Beijing product,

6       Beijing Materials?

7              How about it?

8              What distinguishing marks does

9       it have?

10             None.

11             It doesn't say anything.

12             So in this hectic market,

13      people were getting the drywall that

14      they could get and Chinese

15      manufacturers were making it in

16      various different ways.

17             And so there is nothing that is

18      distinctive or unique about blank

19      drywall, and there's -- actually, we

20      have to look at each one of these

21      pictures.  It's not like it says

22      ProWall on it, or it's not like it's

23      something that's distinctive as we

24      would be used to in a product

25      liability product identification

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 258 of 343
Case 4:11-cv-22408-MGC-EEF-MBN Document 299 Entered on FLSD Docket 04/29/2013 Page 228 of 281
March 11, 2019

1    setting.  If you have a product and

2    there's nothing identifying about it,

3    then there's nothing to tie it to the

4    manufacturer.

5         So if there's an absence of

6    evidence, that is the state of the

7    record.  And that's what the Blackston

8    case is about, is that the Eleventh

9    Circuit said in the asbestos setting,

10   which I will submit the equities were

11   even greater, the Eleventh Circuit

12   said just because it's hard to prove

13   exposure to asbestos doesn't mean that

14   we're going to create a presumption

15   that does not exist in the applicable

16   state law.

17        And that's what they're asking

18   you to do, to sua sponte create a

19   presumption that shifts the burden of

20   proof to us to disprove that any of

21   these products are ours.  And there's

22   just no authority for that.

23        So Blackston says you cannot do

24   that.  They have not invoked Rule 37,

25   and the inherent power that they cite

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 259 of 343
Case 1:11-cv-22408-MGC Document 295 Entered on FLSD Docket 04/29/2013 Page 229 of 281
March 11, 2019

```
 1            in their brief, the cases that suggest
 2            that might be available, they also say
 3            that that would be a Rule 37-like
 4            procedure.
 5                  So they need to move for that
 6            and allow us to defend on that if
 7            they're going to try to meet the very
 8            specific Rule 37 factors, which
 9            include bad faith, which they
10            themselves have said we couldn't have
11            done because we did this in the normal
12            course.
13                  So I don't want to get into
14            litigating Rule 37.  I'm just saying
15            Rule 37 is not here.  So that's not a
16            basis for doing it.
17                  And the reference to the
18            Tariff Act of 1930, which Mr. Serpe
19            obliquely referred to -- that's what
20            he was referring to about the
21            markings.  And he misstated it,
22            because it's not a statute that
23            requires a manufacturer to identify
24            their product.  It identifies -- in a
25            conspicuous place as legibly,
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 260 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2014 Page 230 of 281
March 11, 2019

```
1              indelibly and permanently as the
2              nature of the article or container
3              will permit in such manner as to
4              indicate to an alternate purchaser in
5              the United States the English name of
6              the country of origin of the article.
7                   So it's not a product
8              identification statute, so there's not
9              some sort of reasonable care standard
10             that we have violated or something.
11             It is country of origin.
12                  And the sanction for violating
13             the Tariff Act, if we have done that,
14             is set forth in the statute, and it is
15             not to change Florida law on the
16             burden of proof.
17                  So -- and even if we put
18             that -- and it's not relevant because
19             even if we put it on, MADE IN CHINA,
20             we've seen MADE IN CHINA is not an
21             indelibly uniquely mark.
22                  So there's just no basis that
23             they've provided you other than just
24             do it because we've been doing this
25             for ten years and it's hard.  And so
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 261 of 343
Case 1:11-cv-22408-MGC   Document 299   Entered on FLSD Docket 04/29/2014   Page 231 of
281
March 11, 2019

1          that would just be unlawful as far as

2          we're concerned.

3                   So we think that this is a

4          situation where the plaintiffs have --

5          that the special master cannot say as

6          a categorical matter not only have

7          they not proved that this has to be

8          our board, but that's not a -- that

9          wouldn't even be a meaningful ruling

10         because when we look at some of these

11         pictures, they're calling white edge

12         tape things that aren't edge tape,

13         right?

14                  This came up at the -- at

15         Mr. Che's deposition where the

16         plaintiffs were calling things edge

17         tape and he had to correct them to say

18         that that's joint tape or face tape.

19                  So we actually, if -- we would

20         have to go through each one of

21         these -- even if there were some

22         categorical saying, anytime you see

23         tape, that means it's Taishan, we

24         would still have to go through and say

25         but that's not edge tape.  Just the

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 262 of 343
Case 1:11-cv-22408-MGC-EEF Document 299 Entered on FLSD Docket 04/29/2014 Page 232 of
281
March 11, 2019

```
1        fact that we made product with edge

2        tape doesn't mean that every time you

3        see a piece of white that it has to be

4        ours.

5              And they -- we haven't made

6        this impossible for them, right?

7        There are ways that could be done, but

8        they -- in a difficult situation, and

9        the Eleventh Circuit envisions that

10       there will be difficult situations of

11       proof in the product ID space.

12             So what could they have done?

13       They could have gone to every home and

14       found out where those boards came

15       from.  These supply chain records

16       exist and they've shown you some of

17       them over the course of the day.  It's

18       a difficult situation.

19             If you have proof -- they have

20       all documents from many of these

21       suppliers, and they could trace those

22       back to home -- because this is what

23       they're going to have to do eventually

24       is go, all right, Mr. Wheeler's house,

25       those five blank boards, how are those
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 263 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2013 Page 233 of 281
March 11, 2019

1   Taishan, right?  Well, they could go

2   find who -- the builder who built that

3   home and get the supply records and

4   then tie those back, and did those

5   come from one of the shipments that

6   Mr. Serpe referenced.

7        But it is not enough for an

8   individual product identification

9   inquiry to say -- to use volume.  You

10  shipped a lot of boards, therefore any

11  board that we call white edge tape is

12  yours.  That cannot be how a product

13  identification inquiry works.

14       So they could do it that way,

15  they could do drywall samples, where

16  they find one of these they can tie

17  back to a Taishan shipment and then

18  go, look, it has the same chemical

19  analysis that a Taishan board has.

20       But we don't even know that the

21  particular boards that we saw are

22  corrosive.

23       So this is not impossible.  It

24  is very difficult, I totally grant you

25  that.  But that is the burden that

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 264 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2012 Page 234 of 281
March 11, 2019

```
1        Florida law puts on a party that wants
2        to shift resources from one side of
3        the V to the other side of the V.  And
4        the wisdom of hundreds of years of law
5        says that this is what we demand in
6        our legal system before we do that
7        property shifting.
8               And on the white, unmarked edge
9        tape, it is a complete failure of
10       proof for what they've given you.
11              MR. SERPE:  You can leave that
12       up.  Drywall samples, chemical
13       analysis could identify the maker of
14       the drywall.
15              I've been in this case since
16       2009.  Tried the first case against
17       Taishan in the fall.  I have been on
18       every expert and science team since
19       then.  I have never heard an expert
20       witness, not once, that purported to
21       say here's a drywall sample and I can
22       do a chemical signature and show it
23       came from the same company.
24              If such proof existed, I'm
25       shocked that we haven't seen chemical
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 265 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2014 Page 235 of 281
March 11, 2019

1     analyses that have attempted to

2     exculpate the defendant presented at

3     this point.

4            We have a defendant in default.

5     Their drywall has already been

6     demonstrated to be corrosive,

7     demonstrated and adopted by

8     Judge Fallon, adopted by Judge Cooke,

9     that it off-gases and causes corrosion

10    in the homes.

11           We go in the homes, we find the

12    corrosion.  We have done all of the

13    scientific testing that we think is

14    possible in this case.

15           Supply chain.  We took those

16    depositions.  We went through all the

17    employees.  We went through the

18    records.  If we had found -- if there

19    was a way to do this, we would have

20    unturned those stones to have looked

21    for additional documentation and

22    presented it.  And it's not there.

23           So we're left with the burden

24    now to say what do you do with a

25    white, unmarked board?  Well, you do

March 11, 2019

```
 1        what we did here, which is find out

 2        exactly how much they made and under

 3        what circumstances, and we did.

 4             Counsel is quite right, and I

 5        tried to say -- it's in our brief

 6        about the Tariff Act because my strong

 7        suit is more on the science than on

 8        the legal analysis.  And in our brief

 9        we specifically outlined the Tariff

10        Act and what their requirements are.

11             I think I just heard counsel

12        acknowledge his client violated that

13        law, they're not contesting that.

14        Guilty.  He points to penalties that

15        are in there that U.S. Customs could

16        have imposed against the manufacturer

17        for each shipment that had come in,

18        but that's not the context we're

19        talking about here.

20             We're talking about what do you

21        do, what does Your Honor do in the

22        context of this case.

23             Counsel talks about we've got

24        to go picture by picture because one

25        of the reasons is that there's joint
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 267 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2012 Page 237 of 281
March 11, 2019

1          tape, and Mr. Che had to educate us

2          plaintiff lawyers what about joint

3          tape was when we took his deposition

4          in January.

5                    Well, I'm sure Your Honor has

6          been in a home that's under

7          construction.  Before they paint, they

8          put the two boards together and then

9          the drywall mechanic puts a piece of

10         tape on the outside of the board, and

11         they put plaster over it and they sand

12         it smooth so that when you paint it

13         you can't see where the seam is.

14         That's joint tape for joints.  We know

15         what that is.  We know what joint tape

16         is, and we're not saying that a joint

17         tape is an edge tape.

18                    Now, is there one photograph

19         somewhere where you look at it and

20         say, now, is that a joint tape or an

21         edge tape?  We can have that debate as

22         part of the contests or an individual

23         one-off, but really what we're here

24         about is what are we going to do with

25         Taishan having sent enough drywall to

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 268 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 238 of 281
March 11, 2019

```
1        destroy 700 or 1200 homes, and now the
2        confirmation, how many of them are
3        they going to admit to?  Zero.
4                Why?  Burden of proof.
5                Eleventh Circuit, in our
6        closing we're going to distinguish
7        Eleventh Circuit and tell you how that
8        is inapplicable in this context, but
9        we'll hide behind the Eleventh Circuit
10       and say because of burden of proof and
11       the massive destruction we did, 80
12       homes here, zero, and we're going to
13       go home.
14               We don't think that the special
15       master should rule that way.  We
16       think, based on the huge volume of
17       data, the fact that, you know,
18       counsel, again with an opportunity to
19       show where is this drywall coming
20       from, this white drywall that's
21       corrosive and it's from the Taihe
22       region.  Where is that coming from?
23               We hear Pingyi again.  That's
24       one of the companies CPSC says makes a
25       drywall that doesn't release gases.
```

March 11, 2019

```
 1          I'm looking for the proof at long

 2          last.  Here we are.  Who else did

 3          this?  I'm not seeing a single

 4          documentary evidence of that.

 5                  We are urging Your Honor to

 6          judge the credibility of this

 7          corporate player, and they're a bad

 8          actor, to not believe their

 9          representations in this contest, to

10          take a look at this evidence,

11          including their decision to violate

12          the law, and make inferences against

13          Taishan based upon those adverse

14          negative conduct which is in your

15          power to do.

16                  And we ask that you find that

17          we have met our burden of persuasion,

18          that Taishan was responsible for these

19          homes, and that in that context, it

20          should be Taishan's responsibility to

21          come forward with at least definitive

22          proof that another company made a

23          corrosive Chinese drywall board or

24          that they weren't responsible in this

25          context, and there's been none.
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 270 of 343
Case 2:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 240 of 281
March 11, 2019

 1              Instead, it's a waving of hands

 2         that we're sorry that this is hard.

 3         This is just like the asbestos

 4         victims, these people all need to go

 5         home.  We're asking Your Honor to not

 6         rule that way.  Thank you.

 7              MR. MONTOYA:  Your Honor, that

 8         concludes the presentations on the

 9         buckets.

10              SPECIAL MASTER LEE:  I think

11         there was more on the PowerPoint.

12              MS. ROBERTSON:  Yeah, that's

13         for the conclusion.

14              SPECIAL MASTER LEE:  Okay.

15              MR. VENDERBUSH:  So you guys

16         are done with the buckets?

17              SPECIAL MASTER LEE:  Was there

18         anything else you wanted to address?

19              MR. VENDERBUSH:  Yeah, so

20         there's two more -- if you put ours up

21         one more time.

22              MS. EIKHOFF:  It should be the

23         very last slide of the presentation.

24              MR. VENDERBUSH:  The last two

25         slides, I think.

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 271 of 343
Case 2:11-cv-22408-MGC  Document 299  Entered on FLSD Docket 04/29/2019  Page 241 of
281
March 11, 2019

1              MS. EIKHOFF:  It's the last one

2       slide.

3              MR. VENDERBUSH:  Yeah, last

4       slide.  So there's just photos 3 and 4

5       are in the catalog, and they're not in

6       their brief, and they weren't

7       addressed here, so we -- there's no

8       proof on that.

9              MS. ROBERTSON:  I can --

10              MS. EIKHOFF:  You guys just

11       said you closed.  You said you were

12       done with the presentation.

13              MS. ROBERTSON:  It's not an

14       argument.  We were simply explaining

15       to the special master those markings

16       are in homes that have other markings

17       that were already discussed during

18       this presentation.

19              MR. VENDERBUSH:  Okay.

20              MS. ROBERTSON:  So apologies.

21              MR. VENDERBUSH:  She's going to

22       have to go through and do every photo,

23       so she's going to have to say

24       something about it presumably.

25              SPECIAL MASTER LEE:  Did the

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 272 of 343
Case 2:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/29/2019 Page 242 of 281
March 11, 2019

1     plaintiff want to say anything else

2     about these?

3          MS. DUGGAN:  I don't think so.

4          SPECIAL MASTER LEE:  No?  Okay.

5     So anything else before we do the

6     closing?  Yeah, we're going to take a

7     break.

8          MR. SERPE:  Nothing else before

9     closing.

10          SPECIAL MASTER LEE:  Okay.  Did

11     the plaintiff want to say anything

12     more about the drywall dimensions, 6,

13     7, 8, 10?  I think the defense was

14     pointing out that you didn't really

15     say anything about them other than

16     that they're variations on the same

17     theme.

18          MR. SERPE:  Just a minute,

19     please.

20          SPECIAL MASTER LEE:  You can

21     talk about it over the break, but

22     that's one question I have.

23          MS. EIKHOFF:  Do you have any

24     questions for us?

25          SPECIAL MASTER LEE:  On the

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 273 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2013 Page 243 of 281
March 11, 2019

```
 1              defense side, did you want to say
 2              anything more about the whole adverse
 3              inference argument?
 4                   MS. EIKHOFF:  Yes.
 5                   SPECIAL MASTER LEE:  If you're
 6              going to address in your closing.
 7                   MS. EIKHOFF:  Will do, thank
 8              you.
 9                   SPECIAL MASTER LEE:  All right.
10              Give me one second.  One question just
11              for my knowledge:  Were there any
12              preservation issues addressed in the
13              MDL?
14                   MS. ROBERTSON:  I think over
15              time of the MDL we had various
16              different arguments regarding the
17              preservation of evidence.  I think
18              that plaintiffs always consistently
19              tried to -- we presented a few times
20              asking for sanctions.
21                   I don't believe that
22              Judge Fallon ever found spoliation had
23              been the result of the preservation
24              order as far as PTO #1 goes.  That is
25              correct, right, Christy?
```

March 11, 2019

```
 1            MS. EIKHOFF:  There has never
 2       been a finding of spoliation in the
 3       MDL, despite some allegations.
 4            MR. MONTOYA:  Judge, I think in
 5       terms of the spoliation type issues
 6       and the discovery issues, they are
 7       fully briefed in our brief.
 8       There are sections in there and we
 9       would rely on those.
10            SPECIAL MASTER LEE:  Yeah, I
11       read that.  I just didn't know -- it
12       didn't make clear to me whether there
13       was ever a ruling, a finding, anything
14       like that.
15            MS. DUGGAN:  No, there was not.
16            MS. ROBERTSON:  I can pull the
17       MDL record document from the orders
18       and read them if you would like.
19            SPECIAL MASTER LEE:  And I'm
20       correct that defense position is that
21       ProWall should be decided after the
22       BNBM hearing but the plaintiff doesn't
23       agree with that?
24            MS. DUGGAN:  We don't agree
25       because it's a different set of
```

March 11, 2019

```
 1        allegations in the homes at issue in
 2        Florida with regard to the boards that
 3        we claim were made by Taishan are not
 4        at issue.
 5             MS. GRANT:  One thing.  It's a
 6        Texas home, and I believe there's only
 7        one of them.  That is the BNBM
 8        argument.  That's the reason.
 9             MS. EIKHOFF:  So why don't you
10        let us talk at the break, because we
11        had never heard until it was said
12        today that there was a distinction
13        between ProWall markings and
14        attribution.
15             We only saw the footnote in
16        their brief that said some are to
17        BNBM, some are to Taishan, but we
18        don't know how those are -- how those
19        are distinguished from one another.
20             MR. VENDERBUSH:  Can I ask how
21        a Texas home is being litigated in the
22        Florida BNBM proceeding?
23             MS. ROBERTSON:  I think that's
24        a question for BNBM, but we can
25        address that with the BNBM counsel.
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 276 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 246 of 281
March 11, 2019

1        Once we get to the BNBM argument, I'm

2        happy to address that, but probably

3        not today.

4                MR. DAVIDSON:  I was just

5        asking if we had to address it at all

6        in front of Special Master Lee since

7        it's a Texas property.

8                MS. ROBERTSON:  Maybe we can

9        discuss and go offline.

10               SPECIAL MASTER LEE:  From the

11       defense, when will the claim-specific

12       objections be addressed?  You said

13       there are claim-specific objections

14       that would have to be decided later.

15               MS. EIKHOFF:  Yes, Your Honor.

16       So we -- Your Honor, I'm sorry.  That

17       was an old habit.

18               Special Master Lee, we

19       submitted a preliminary list of

20       contests.

21               SPECIAL MASTER LEE:  I saw it.

22               MS. EIKHOFF:  And then our

23       final contest list is due on

24       April 8th.

25               MS. DUGGAN:  I thought yours

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 277 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2014 Page 247 of
281
March 11, 2019

```
1          was due on April 2nd.

2                  MS. EIKHOFF:  April 2nd.  April

3          2nd.

4                  MS. DUGGAN:  We're going to

5          respond on April 8th and then we have

6          three days set aside with the special

7          master April 10th, 11th and 12th.

8                  SPECIAL MASTER LEE:  Okay.

9                  MS. EIKHOFF:  And in the

10         meantime, Ms. Lee, to the extent that

11         some of those objections can be

12         resolved between the parties, we're

13         working to see if we can.  But there

14         will no doubt be many objections that

15         will need to be resolved by the finder

16         of fact.

17                 SPECIAL MASTER LEE:  Okay.  So

18         how much of a break do you want?

19                 MS. DUGGAN:  10 minutes?  Is

20         that enough?

21                 MS. EIKHOFF:  Sure.

22                 SPECIAL MASTER LEE:

23         15 minutes?

24                 MR. SERPE:  15, thanks.

25                 (Recess taken, 3:21?p.m. to
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 278 of 343
Case 2:11-cv-22408-MGC-EGT Document 299 Entered on FLSD Docket 04/29/2014 Page 248 of 281
March 11, 2019

1          3:42?p.m.)

2               MS. SCHWAB:  Your Honor, you

3          asked earlier about Category -- or

4          photos 6, 7, 8 and 10, and I would

5          just like to briefly respond to those.

6               Photo number 6 is the same W as

7          photo number 2 that Taishan relied on

8          in making -- in admitting photo 2.

9               Photo 7 is DRYWALL in all caps,

10         as stated in the Manufacturer Profile

11         Form, and Tab 62 to plaintiff's brief

12         is an e-mail chain between Che Gang

13         and Ivan Gonima, who is a U.S.

14         customer.  Mr. Che uses the asterisk

15         instead of X's to -- in the place of

16         4feetX12feetX1/2inch.

17              Number 8 is the same DRYWALL

18         all caps, just as the Manufacturer

19         Profile Form, and the asterisk again,

20         I would direct Your Honor to Tab 62 in

21         plaintiff's brief.

22              And 10, photo 10 is DRYWALL in

23         all caps again as indicated in the

24         Manufacturer Profile Form, and all of

25         these are discussed at length in

March 11, 2019

```
 1          plaintiff's brief.  Thank you.
 2               SPECIAL MASTER LEE:  Thank you.
 3          Are we ready for closing?
 4               MR. MONTOYA:  Mr. Serpe is
 5          going to close.
 6               MS. EIKHOFF:  Are you guys
 7          going to preserve a rebuttal?  Because
 8          if you're saying it's our burden of
 9          proof, then we should go first.  I'm
10          confused now as to whether you want it
11          to be our burden of proof or don't.
12               MS. DUGGAN:  You want to go
13          first right now?  That would be fine
14          with us.
15               MR. SERPE:  Go ahead.
16               MS. DUGGAN:  That's fine, we'll
17          go last.
18               MR. VENDERBUSH:  That's the
19          point, if they go first --
20               MS. EIKHOFF:  The point is
21          we're not accepting that we have the
22          burden of proof.
23               MR. SERPE:  Christy, we know
24          that you're not accepting that.  We're
25          stipulating that you're not accepting
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 280 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2013 Page 250 of 281
March 11, 2019

1          that you have the burden of proof.

2                    MS. EIKHOFF:  Then go ahead.

3                    MR. SERPE:  Special Master,

4          there's a problem here, and the

5          question is who's responsible.

6                    I think it's clear from the

7          presentation today that this is

8          entirely a problem that was created by

9          the defendants.  100% of this problem

10         was from their conduct, not only when

11         manufacturing, but what they've done

12         since that time.

13                   From the decision to make U.S.

14         drywall allegedly without a manual,

15         detailing how markings are supposed to

16         be put on the board, when the rest of

17         the company's corporate discipline is

18         you have a very specific manual on

19         exactly how to put the markings, where

20         to put them, what has to be on there,

21         and get our name on it.

22                   On the U.S. side, they either

23         didn't have that manual or it existed

24         and we're just being told that it

25         doesn't exist.

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 281 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2013 Page 251 of 281
March 11, 2019

1            But from our standpoint, we

2     don't have the 40-page highly detailed

3     manual that they have for all the rest

4     of their drywall production.  We have

5     nothing.

6            What about the documents that

7     got sent down from the factory floor

8     saying make this much drywall for this

9     customer with these markings?  We got

10    those records.  They preserved those

11    records.

12           But we're being asked to

13    believe that the critical sheet of

14    paper, the part of the order that had

15    the marking information on it, well,

16    we just happened to throw that piece

17    out.  But not the order, just the

18    attachment that said what we put it

19    on.  And then we'll see if -- the

20    record that you can't show our product

21    from.

22           I'll go back to the opening

23    slide where Taishan told its

24    stockholders that they're going to

25    send over documents, only documents

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 282 of 343
Case 3:11-cv-22408-MGC-EDocument 299-1 Entered on FLSD Docket 04/29/2014 Page 252 of 281
March 11, 2019

1          that are beneficial to their case, and

2          we'll use agencies to run interference

3          for us.  So we don't get proof on what

4          the markings were because supposedly

5          they were thrown out.

6               We asked about edge tapes and

7          what was printed on those.  Where are

8          those records?  We haven't seen the

9          first record of how the edge tapes

10         were printed and what was printed on

11         them and what was the order and how

12         was it accounted for.  Did the sales

13         documents -- you know, how was it

14         billed out.

15              So we wait a decade, and

16         finally get a 30(b)(6) deposition of a

17         witness who he's been deposed three

18         times, his story has changed each

19         time.  But in his third iteration,

20         with a specific time frame on edge

21         tapes, what was your process, what was

22         the documentation, where are the

23         records.

24              And his answer was there was a

25         whole factory to make the edge tapes.

March 11, 2019

```
 1          It was so complex and big we have to

 2          put it in its own factory.

 3                  Well, how did they know what to

 4          make?  Did you send e-mails?  Where

 5          are those e-mails?  Who looked for the

 6          e-mails on the edge tape?  Oh, they

 7          didn't have computers.  So what, you

 8          would hand-deliver forms to them with

 9          the specifications on how to make the

10          edge tape?  No, there was no paper.

11          We would call them or maybe I could go

12          over and tell them what to make.

13                  So when they were making it,

14          did they keep a record?  Okay, today

15          we made, you know, 10,000 miles of

16          tape that said IMT or another marking

17          on the edge tape and then put it into

18          their file on what they had concluded

19          for that day.  No, no records

20          whatsoever of any edge tape

21          manufacturing process.

22                  Did they really exist and we're

23          just being told they didn't, or did

24          Taishan just have a practice that

25          was -- that operated around no
```

March 11, 2019

```
1        evidence being saved in realtime?  In
2        either event, this problem we're
3        facing is of their making.
4             So the question becomes if they
5        created a problem through their
6        practices, do they get a pass now to
7        say, whew, it was a good thing we did
8        that.  Now, no one's going to be able
9        to prove our drywall, and we should
10       get a pass with no responsibility
11       whatsoever.
12            And we're asking the special
13       master to not accept that definition,
14       that the entity that created the
15       problem shouldn't be able to walk away
16       from the damages that they caused.
17            So on the next layer down, the
18       records that we did get and the
19       photographs that we did get, we were
20       very sensitive to looking for pictures
21       of the markings so that we could match
22       them up and say now we have another
23       mug shot for the mug shot book that we
24       could compare a homeowner's home to to
25       see is this Taishan drywall.
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 285 of 343
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/29/2013 Page 255 of 281
March 11, 2019

```
1              So we are produced this record

2       from Taishan, and in a deposition --

3       next slide, please -- of Mr. Che, he

4       was asked about the drywall in the

5       left-hand side, the black-and-white

6       picture.

7              And his answer is:  "This

8       picture is very much unclear.  If you

9       look at it from afar, it looks similar

10      in a small degree that that resembles

11      that of Taishan's; however, it would

12      be great if you can give me a more

13      clear version of it.

14             "Sir, do you see the words

15      'Taihe' in that photograph on the

16      labels?

17             "Well, I can only see the

18      Chinese character 'mountain.'  It was

19      blurry before the character and it's

20      pretty blurry after.  If I were to

21      speculate, and I can only speculate,

22      it might be Taishan's edge tape."

23             So we begin the process saying,

24      all right, do we have a better

25      picture?  Asked Taishan, please send
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 286 of 343
Case 3:11-cv-22408-MCC-EEF Document 293 Entered on FLSD Docket 04/29/2019 Page 256 of 281
March 11, 2019

1          us the color, the clearer picture of

2          this.  And lo and behold, last week we

3          get this picture, and it's clearly

4          Taihe edge tape.  Absolutely,

5          indisputably their edge tape.

6                Where has this photograph been?

7          Why do we go through ten years of

8          litigation, take a deposition where

9          this is what we're provided and a

10          witness says I don't know, maybe it

11          looks like mountain.  It's a little

12          blurry, I can only speculate about

13          that, when in their records all along

14          they had the color picture which

15          definitively proved product ID in the

16          case.

17                You've got to ask, who was it

18          that looked for this stuff?  Did they

19          really look hard or did they kind of

20          do a half-baked search, put a few

21          things together that are beneficial to

22          them in the U.S. litigation and send

23          those over, letting other people run

24          interference for them.

25                I suggest this is another of

March 11, 2019

1         many examples in the brief and that we

2         presented today where Taishan has had

3         evidence and has not turned it over.

4              Really, after ten years, in

5         January, at the deposition and new

6         documents, the product ID briefing, we

7         see the final stand by Taishan on

8         their theme on how it is that we're

9         supposed to prove product ID.

10             It's the "luckily" testimony

11        from Mr. Che; a very ironic word from

12        our standpoint.  Let's break that

13        down.

14             A corporate witness, on the

15        basis of all of the depositions, all

16        of the records, this guy is the

17        foreign sales manager.  He's been

18        deposed three times.  He's asked about

19        the residual American-sized drywall

20        samples, those three pallets of

21        drywall that we found, and he said:

22        However, very luckily, during my

23        preparation of the witness testimony

24        in deposition representing Taishan,

25        these American-sized residual boards

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 288 of 343
Case 2:11-cv-22408-MGC-EEF Document 293 Entered on FLSD Docket 04/29/2019 Page 258 of 281
March 11, 2019

1          were discovered.

2                    So very luckily for who?  Very

3          luckily for who?

4                    Well, consider now that

5          Taishan's product ID paradigm is that

6          if you can match your product ID

7          exactly to what we see on these three

8          pallets, we're going to accept it.

9                    But if you can't, insufficient

10         proof, we deny it.  This is their --

11         this is their final position.

12                   So three pallets of drywall

13         with two markings and one illegible --

14         call it three markings of all of the

15         different buckets that we've talked

16         about.

17                   Now, it's on a pallet.  I think

18         a reasonable inference for Your Honor

19         is that that came from the same

20         production run, the same printer,

21         (indicating) sprayed those words that

22         you see from the residual buckets,

23         residual boards that we talked about.

24         That was the same printer, same

25         production run, it's all on the same

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 289 of 343
Case 1:11-cv-22408-MGC-EEF Document 299-9 Entered on FLSD Docket 04/29/2012 Page 259 of 281
March 11, 2019

```
 1        pallet.  It was stacked up in the

 2        warehouse at the same time.

 3             So we've got one printer only

 4        for three different types of markings

 5        when there were at least four printers

 6        that were repeatedly changed out.

 7        Every time it was changed it was a

 8        different font.

 9             And we don't have pictures of

10        any other Taishan marking, even the

11        ones they acknowledge that they made

12        on their Manufacturer Profile Form.

13        We don't have a single picture of

14        that.

15             So, therefore, we don't have

16        the picture.  We don't have any of the

17        other production runs with any of the

18        other fonts, so we don't have a

19        picture like these three where we can

20        show it and Taishan will say, you know

21        what, we'll accept that one.

22             So to accept their formulation,

23        the only narrow band of homeowner that

24        gets compensation happens to be

25        someone that had the same font from
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 290 of 343
Case 2:11-cv-22408-MGC Document 259 Entered on FLSD Docket 04/29/2014 Page 260 of 281
March 11, 2019

1        the same production run that got lucky

2        that it was one of these three stacks

3        that they found.

4               Anyone else that's not a direct

5        match to this, they're out because we

6        can't prove that it matches an example

7        of the drywall that was in their

8        possession.

9               In so doing, they walk away

10       from the responsibility for every

11       other piece of drywall that they

12       manufactured which was sufficient to

13       build thousands of homes.

14              So the question becomes if

15       we're in the situation where we want

16       to know what else is there besides

17       these three -- just these three

18       pallets, where are the e-mails

19       directly to the customers in the U.S.?

20              We know Mr. Che, foreign sales

21       manager, and we've produced many

22       examples where he's directly e-mailing

23       back and forth with U.S. customers.

24              He's got a computer that he did

25       that with in this time frame.  He

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 291 of 343
Case 2:11-cv-22408-MSC-EGT Document 259 Entered on FLSD Docket 04/29/2019 Page 261 of 281
March 11, 2019

```
 1          testified that it's been preserved.
 2          He was told to hang on to the
 3          computer.  So far so good.
 4                Then the question becomes:  In
 5          preparation for the deposition today,
 6          did you search your own e-mails, your
 7          own records to see what you had for
 8          foreign sales?  Did you e-mail a
 9          customer?  Did they e-mail back an
10          edge tape or a photograph or something
11          that they had that they wanted that
12          would be evidence to us that could be
13          used in the case?  What do you have?
14                And his response was:
15                (Video playback commenced.)
16                "QUESTION:  In preparing for
17          testifying as Taishan's corporate
18          representative, did you look at your
19          own computer hardware and e-mails to
20          look for evidence of
21          American-sized-drywall?
22                "ANSWER:  No, because the
23          attorneys already have all the
24          documents and evidence.  It would be
25          unefficient for unprofessionals like
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 292 of 343
Case 2:11-cv-22408-MGC Document 295 Entered on FLSD Docket 04/29/2019 Page 262 of 281
March 11, 2019

1        us to work on that.  In that case, you

2        have to wait until next year to depose

3        me."

4                (Video playback stopped.)

5                MR. SERPE:  So when asked did

6        he look at his own e-mails, he says,

7        no, I didn't.  It would be inefficient

8        for unprofessionals like us to work on

9        that.  In that case you would have to

10       wait until next year to depose me.

11               Let me break that down into two

12       halves.  The first is:  This is his

13       computer, where he stores e-mails from

14       foreign entities, who they were, how

15       to search that.  Who better to look at

16       that computer for evidence of U.S.

17       sales than the guy whose computer it

18       was who is the director of foreign

19       sales who's the 30(b)(6) witness?

20               Yet his testimony is he didn't

21       look at any of that.  He didn't do a

22       search.  He's going to rely on maybe

23       somebody else did that.

24               And then he concludes, in that

25       case, if you want me to do this,

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 293 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 263 of 281
March 11, 2019

```
1        you'll have to wait until next year to
2        depose me.
3             Third time out deposing him,
4        clearly on the notice of deposition it
5        was directly on this topic.  One of
6        the topics was making sure you got the
7        witness completely ready to testify
8        with documents in a manner in which he
9        was prepared for the deposition, and
10       he wasn't even reviewing his own
11       e-mails.  He did no search and then
12       he -- he'll joke that if he's got to
13       do that, if he's actually got to look
14       for his own responsive documents, we
15       can come back next year.
16            The look on his face as he
17       finished that answer to me was a
18       triumphant smirk.
19            Special Master, it's to do just
20       this and bring it back to burden and
21       to the equities here.
22            Mr. Walls, Mr. and Mrs. Walls
23       are one of the priority plaintiffs
24       whose case is set for trial this
25       summer.  They're a lovely retired
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 294 of 343
Case 4:11-cv-22408-MGC-EECO Document 299-1 Entered on FLSD Docket 04/29/2012 Page 264 of 281
March 11, 2019

```
 1        couple.  Their entire life was focused

 2        towards being able to retire and have

 3        this home.

 4              The testimony from Mr. Walls

 5        indicates what a day in the life is

 6        like for the Walls family, and his

 7        testimony is very gripping, but I

 8        particularly want to point out that

 9        twice a day she drives by the house.

10        Some days she pulls over.  She pulls

11        over because the house that she picks

12        up is just down the street and she

13        sees, and when she comes home, she's a

14        wreck.  She's crying, she's all messed

15        up.

16              So a year, come back in a year

17        if you want me to look for my own

18        records, which we didn't keep, or the

19        ones that are on my computer as the

20        head of the foreign sales department

21        I'm not actually going to look at,

22        when their overall strategy was don't

23        turn it over unless it's beneficial to

24        us.

25              We believe that in that
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 295 of 343
Case 1:11-cv-22408-MGC Document 259 Entered on FLSD Docket 04/29/2019 Page 265 of 281
March 11, 2019

1    environment, as special master,

2    reviewing the evidence and for the

3    reasons we pointed out, that you

4    should find that this problem that

5    they created, that the plaintiffs are

6    suffering with, that these plaintiffs,

7    based on this vast amount of evidence

8    on the drywall imported by Taishan and

9    their lack of any concrete information

10    that it wasn't their drywall, we

11    believe you should rule in favor

12    across the board on all of these

13    buckets.  Thank you.

14         MS. EIKHOFF:  I don't have a

15    PowerPoint for my closing, Your Honor,

16    Special Master Lee.  But if you have

17    their PowerPoint handy, at a certain

18    point I may ask you to put up their

19    slide number 9.

20         Ms. Lee, what you just heard

21    from the plaintiffs was not a

22    summation of the evidence as closings

23    are.  Their conclusion was not focused

24    on the proof that they have to satisfy

25    their Florida law burden to show by

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 296 of 343
Case 2:11-cv-22408-MGC-Electronically Filed on 12/19/Docket 04/29/2019 Page 266 of
281
March 11, 2019

```
1        the greater weight of the evidence

2        that certain of these categories

3        should be attributed to Taishan.

4             Instead of a summation of their

5        evidence on product ID, you heard more

6        of the same theme; the theme that we

7        told you to expect when we filed our

8        brief, the theme that we told you to

9        expect when I stood up here this

10       morning in my opening remarks, the

11       theme that they have articulated

12       bluntly and clearly:  Taishan is a bad

13       actor.

14            And that's what they're trying

15       to put in front of you in place of

16       evidence of product ID to connect the

17       boards of their clients to boards that

18       were manufactured by Taishan.

19            And they keep telling you over

20       and over in many ways with many

21       distorted examples of what a bad actor

22       Taishan is.  And the goal of those

23       stories is to persuade you to presume

24       the evidence that they don't have, to

25       flip the burden of proof on Taishan,
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 297 of 343
Case 2:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/29/2019 Page 267 of 281
March 11, 2019

1     to make Taishan prove that it didn't

2     make the boards for their hundreds and

3     hundreds of claimants.

4          That is not how Florida law

5     works, and it would be a violation of

6     Florida law to be persuaded by these

7     discovery stories and these

8     anti-Chinese manufacturer defendant

9     stories.  It would be a violation of

10    Florida law to replace their

11    evidentiary burden with an assumption

12    that Taishan made these boards because

13    we don't like Taishan.

14         That is not fair, that is not

15    justice, and that is not the law.

16         Now, we've heard a lot about

17    Taishan.  They've been painted as a

18    very nefarious villain today.  It's

19    not the first time we've heard it.

20    We've been hearing it for years.

21         They say Taishan is a giant

22    corporation over there in China.  Let

23    me tell you a little bit more about

24    Taishan's operations in China, because

25    I've been there more than once.

March 11, 2019

```
 1              Taishan has no English speakers
 2     that work in Taishan.  They have no
 3     presence outside of -- in the United
 4     States whatsoever.  E-mails that you
 5     have seen in English, the testimony
 6     has been that they were translated
 7     from Chinese to English using
 8     something akin to Google Translate.
 9              They don't have an e-mail
10     server.  Any e-mails that they send
11     are on the Chinese equivalent of like
12     a Yahoo or a Hotmail.
13              They have never exported goods
14     to the United States before 2006.  As
15     we've described, this was new for them
16     to ever be called upon to make boards
17     of these sizes to go over to the
18     United States.
19              And they certainly had no
20     experience with U.S. litigation.  The
21     idea, the whole concept of the U.S.
22     legal system is something that is so
23     foreign to their minds, they had no
24     frame of reference.
25              And I'm -- I've just been to
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 299 of 343
Case 2:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 269 of 281
March 11, 2019

1    Taishan's headquarters and factory in

2    the last couple of months.  I went the

3    week after Christmas, working on this

4    case.

5         There's no heat in the factory.

6    There's no heat in the offices.  It

7    was 18 degrees.  There's no lights in

8    the offices unless -- only in the room

9    that you're in.  There's no

10    receptionist.

11         This is a company that in 2006

12    was called upon to make a new type of

13    board for a new type of customer with

14    absolutely no frame of reference at

15    all that U.S. litigation would arise

16    from it.

17         And so they operated the way

18    that they always operate, in a

19    not-very-sophisticated manufacturing

20    environment in the Shandong province

21    of the People's Republic of China.

22         They communicated using slips

23    of paper.  They communicated by phone.

24    They communicated in person.

25         Yeah, there were some e-mails.

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 300 of 343
Case 2:11-cv-22408-MGC-EEF-MBN Document 293 Entered on FLSD Docket 04/29/2019 Page 270 of 281
March 11, 2019

```
 1          We produced those e-mails.  Those
 2          e-mails were produced -- e-mails
 3          regarding American sales were produced
 4          in 2012 in this case.  Plaintiffs have
 5          had those for years.
 6              And so we hear so much about
 7          this evil intent to only mail the
 8          evidence that is beneficial to
 9          Taishan Company.  That's the modus
10          operandi of this evil Chinese company.
11              Let me give you a little
12          context of this document, because
13          you've heard it a lot today.  This was
14          an internal memorandum that was
15          written by Taishan in Chinese to other
16          Chinese nationals.
17              On May 11th, 2009, they were
18          just hearing about litigation in the
19          U.S., and before Taishan had retained
20          U.S. counsel, they were discussing how
21          to respond to this new development
22          that they weren't expecting.
23              And they respond to it the way
24          that nonlawyer, non-American, Chinese
25          manufacturing executives would
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 301 of 343
Case 1:11-cv-22408-MGC Document 295 Entered on FLSD Docket 04/29/2019 Page 271 of
281
March 11, 2019

1    respond, in an uninformed, probably
2    naive manner.
3        What they say here doesn't make
4    sense in the U.S. legal system, and
5    the plaintiffs have alluded to that.
6    They say, well, we're inclined not to
7    respond to the lawsuit, but if it's
8    necessary, we can maybe mail some
9    evidence that's helpful to the
10   Taishan Company, just to the court.
11   We'll mail it to the court, and then
12   we can have the government departments
13   interfere to eliminate and reduce some
14   of this negative impact.
15       They have contorted that
16   uninformed internal nonlegal
17   discussion, contorted it to a motive
18   that they say persists to this day and
19   this month.  They accuse us currently
20   of only producing things that are
21   beneficial to us and accuse us of
22   withholding documents that aren't
23   beneficial to us.
24       It was not beneficial to us to
25   find these exemplars of generic

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 302 of 343
Case 2:11-cv-22408-MGC-EEF-MBN Document 299 Entered on FLSD Docket 04/29/2019 Page 272 of 281
March 11, 2019

1    markings because with the admissions

2    of those exemplars, Taishan has

3    accepted the legal responsibility for

4    PID for half of the generic boards at

5    issue in this case.

6         If we were going to

7    systematically withhold negative

8    documents and evidence and only

9    produce what's beneficial to us in

10   this case for nine years, those

11   exemplar photos that we produced never

12   would have seen the light of day.

13        So what you have here is not a

14   spoliation story.  What you have here

15   is a story of a manufacturing company

16   in China that didn't know that what it

17   was doing would, years later, become

18   subject to lawsuits in the United

19   States of America.

20        And the plaintiffs acknowledge

21   this.  They've acknowledged it today.

22   They've acknowledged it in their

23   brief, that when we threw away slips

24   of paper that might have said exactly

25   what the spray marking was going to be

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 303 of 343
Case 2:11-cv-22408-MGC-EEF-MBN Document 299 Entered on FLSD Docket 04/29/2019 Page 273 of 281
March 11, 2019

    1          at the -- that went to the factory,

    2          that was in the normal course.  That

    3          wasn't with knowledge that it was

    4          evidence.  That wasn't in bad faith,

    5          dereliction of U.S. litigation duties.

    6              And so you look at their brief,

    7          and they don't use the word

    8          "spoliation."  It's nowhere in their

    9          brief.  Instead, they want to infuse

   10          Taishan's normal recordkeeping in

   11          China in 2006 and 2007 with this bad

   12          motive and this evil intent that's

   13          unfounded and it's unfair.

   14              Now, this isn't the first time

   15          they've tried to make these kind of

   16          points to the court, and we spent a

   17          lot of time in this case in 2015 and

   18          early 2016 dealing with discovery

   19          issues that the plaintiffs said was

   20          spoliation.

   21              And I'm going to read to you

   22          from Judge Fallon's order, which is at

   23          the MDL Docket No. 19959 filed on

   24          January 8th, 2016.

   25              And in that order the Court

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 304 of 343
Case 2:11-cv-22408-MGC-EEF-MBN Document 239 Entered on FLSD Docket 04/29/2019 Page 274 of 281
March 11, 2019

```
 1            said -- this is the bold heading:  The

 2            PSC Has Not Proven Spoliation.  He

 3            said, "This Court's Pretrial Order

 4            No. 1 entered on June 16th, 2009

 5            required all parties to take

 6            reasonable steps to preserve all

 7            documents, data and tangible things

 8            containing information potentially

 9            relevant to the subject matter of the

10            litigation.

11                 "The Court finds insufficient

12            evidence of intentional failure to

13            preserve evidence under PTO #1 to

14            justify a finding of spoliation.  The

15            PSC has failed to prove that Taishan

16            destroyed, lost or altered evidence

17            relevant to potential violations of

18            the injunction or the relationship

19            between the defendants.

20                 "The Court does not find

21            evidence that Taishan intentionally

22            violated PTO #1 or the general duty of

23            preservation."

24                 They don't have a Rule 37

25            spoliation case.  That's why they
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 305 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 275 of 281
March 11, 2019

1         haven't filed a motion, and their

2         brief doesn't say that.  Instead,

3         their brief kind of makes it sort of

4         murkier.

5                 Well, they threw away documents

6         at the time, and those documents would

7         be helpful now if they had been saved,

8         and they're bad guys, so let's go

9         ahead and presume that those documents

10        would be helpful to us.

11                You can't do that under Florida

12        law.  You can't do it under the

13        Eleventh Circuit either.

14                And there's another issue with

15        PTO #1 preservation and spoliation,

16        and we put it in our brief.  I didn't

17        think we were going to have to go

18        there today, but seems like the door's

19        been opened.

20                If we want to look at failure

21        to comply with PTO #1 preservation in

22        this case, we need look no further

23        than the plaintiffs' Supplemental

24        Profile Forms, which have been turned

25        in in this case in the last year.

```
 1              And those forms, which were
 2         signed by the plaintiffs under penalty
 3         of perjury, 624 of the claimants said
 4         they did not comply with PTO #1 and
 5         preserve the specific drywall evidence
 6         that Judge Fallon ordered them to.
 7              That is 79% of the plaintiffs
 8         that said that they remediated their
 9         properties.  79% of them got rid of
10         the samples of drywall that could have
11         helped us on PID.
12              And so we don't think that they
13         can be heard to talk about Taishan and
14         document preservation, particularly
15         when there's no showing that Taishan
16         violated PTO #1.  They cannot be heard
17         and at the same time hundreds of their
18         clients have not complied with the
19         same order that they would be pointing
20         to.
21              And so what we come to is this:
22         We're not standing before you, Special
23         Master Lee, and being a recalcitrant
24         defendant that won't accept any
25         responsibility for anything and is
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 307 of 343
Case 2:11-cv-22408-MGC Document 259 Entered on FLSD Docket 04/29/2019 Page 277 of 281
March 11, 2019

1        making them prove every single jot and
2        every single tittle.
3             It is not consistent with the
4        plaintiffs' characterization of us of
5        taking no responsibility when we have
6        admitted to categories, based on our
7        own evidence production, that assumes
8        responsibility for the PID for 47% of
9        the claims in this case.
10            But they're using their
11       mischaracterization of Taishan and
12       their prejudices against Taishan as a
13       party in this case in asking you to
14       flip the burden, to not make them
15       produce evidence, and to ignore away
16       all of the other evidence.
17            And we've shown you today,
18       Ms. Lee, that there is evidence of
19       other manufacturers and other players
20       in the marketplace that should be
21       called here -- should have been called
22       here to also stand and defend
23       themselves against these allegations.
24            It is not reasonable to
25       conclude that every variation of

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 308 of 343
Case 1:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 278 of 281
March 11, 2019

1    drywall, every marking, including no

2    markings, all of them, every single

3    one that's presented to you today,

4    they're all Taishan.

5            That is not a reasonable

6    conclusion, and we think that the only

7    way you could conclude it would be if

8    you accepted their mischaracterization

9    of Taishan as a litigant and of

10   Florida law and Eleventh Circuit law.

11   And we ask you to hold them to their

12   burden of proof.  Thank you.

13           MR. SERPE:  Special Master, was

14   there anything as part of that

15   argument that you had a question about

16   that you would like us to address?  I

17   mean, I'm dying to jump up and

18   ad seriatim go through that, but I

19   think that the parties have

20   articulated our positions.

21           SPECIAL MASTER LEE:  Okay.  So

22   you're done?

23           MR. SERPE:  Yes.

24           SPECIAL MASTER LEE:  Okay.

25   Does either side desire to do any

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 309 of 343
Case 3:11-cv-22408-MGC-EEF-MBN Document 259 Entered on FLSD Docket 04/29/2019 Page 279 of 281
March 11, 2019

```
1              supplemental briefing on any issue?
2              We should decide that today.
3                   MR. SERPE:  Special Master,
4              unless you would like anything
5              addressed, of course we'll respond to
6              any request you make for
7              clarification.
8                   In an effort to bring closure
9              for these families and not inject
10             another briefing schedule into this,
11             we would just as soon stand on what
12             we've submitted so far.
13                  MS. EIKHOFF:  We agree.
14                  SPECIAL MASTER LEE:  Okay.
15             Then what I'm inclined to do is I'm
16             going to go back through my notes and
17             go back through your briefs and the
18             appendices to your briefs, and then if
19             there's something that I have a
20             specific question about, I will e-mail
21             the group by Friday, probably, and
22             I'll group everything and we can
23             decide then if we should have a
24             conference call or you can just answer
25             in writing.  It won't be anything that
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 310 of 343
Case 1:11-cv-22408-MGC Document 293 Entered on FLSD Docket 04/29/2019 Page 280 of 281
March 11, 2019

```
 1         requires long anything, so answering

 2         in writing is perfectly okay, but if

 3         you think there's a reason that we'd

 4         want to get on the phone, we can do

 5         that as well.  So I will let you know

 6         that by Friday.

 7              Is there anything else that we

 8         need to address?

 9              MS. DUGGAN:  We did have one

10         small favor.  I don't know if this has

11         to be on the record.

12              SPECIAL MASTER LEE:  We can go

13         off the record.

14              (Proceedings recessed at

15         4:29 p.m.)

16                   --o0o--

17

18

19

20

21

22

23

24

25
```

Case 2:09-md-02047-EEF-MBN Document 22397-7 Filed 12/09/19 Page 311 of 343
Case 2:11-cv-22408-MGC Document 299 Entered on FLSD Docket 04/29/2019 Page 281 of 281
March 11, 2019

```
1                  REPORTER'S CERTIFICATION

2

3         I, Michael E. Miller, FAPR, RDR, CRR,

4    Notary Public, hereby certify that this

5    transcript is a true record of the

6    proceedings held in the foregoing matter on

7    Monday, March 11, 2019.

8         I further certify that I am neither

9    counsel for, related to, nor employed by any

10   of the parties or attorneys in the action in

11   which these proceedings were taken; and,

12   further, I am not a relative or employee of

13   any attorney of record in these proceedings,

14   nor am I financially or otherwise interested

15   in the outcome of said proceedings.

16

17        Subscribed and sworn to on March 13, 2019.

18

19

20   _____

     MICHAEL E. MILLER,

21   Fellow of the Academy of

     Professional Reporters

22   NCRA Registered Diplomate Reporter

     NCRA Certified Realtime Reporter

23

     Notary Public

24   My Commission Expires: 7/9/2020

25
```

# EXHIBIT

# "F"

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURED
DRYWALL PRODUCTS LIABILITY
LITIGATION,

MDL Docket No. 2047

SECTION L
JUDGE FALLON
MAG. JUDGE WILKINSON

THIS DOCUMENT RELATES TO:

EDUARDO AND CARMEN AMORIN, *et al.*, individually and on behalf of others similarly
situated

                    Plaintiffs,

Case No. 2:11-cv-01395-EEF-
JCW

vs.

TAISHAN GYPSUM CO., LTD. F/K/A
SHANDONG TAIHE DONGXIN CO.,
LTD.; TAIAN TAISHAN PLASTERBOARD
CO., LTD., *et al.*,

                    Defendants.

### TAISHAN GYPSUM CO., LTD. AND TAI'AN TAISHAN PLASTERBOARD CO., LTD.'s OBJECTIONS AND RESPONSES TO THE PLAINTIFF'S STEERING COMMITTEE'S SUPPLEMENTAL DOCUMENT REQUEST

Defendants Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd. ("Taishan") object and respond to the Plaintiff's Steering Committee's ("PSC") Supplemental Document Request as follows:

### GENERAL OBJECTIONS

Taishan hereby sets forth its general objections to the PSC's Supplemental Document Request on the following basis, all of which are incorporated into Taishan's responses by this reference:

1. Taishan objects to these Requests as unauthorized and untimely to the extent it purports to relate to "ALL CASES" in the MDL. Taishan submits that the only case in the MDL to

1

which these Requests could possibly relate is *Amorin*, 2:11-CV-01395-EEF-JCW (E.D. La.).

2.  Taishan objects to all of the Document Requests to the extent they seek information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, and/or other applicable privileges.

3.  Taishan objects to these Document Requests to the extent they seek or purport to seek information or documents: which are already in the custody of PSC; which are in the possession of other parties, third parties or in the public domain; or which are not in Taishan's possession, custody or control.  To the extent that the PSC seeks information that is more readily available from other sources or already in the possession of the PSC, Taishan objects to these Document Requests as unduly burdensome.  Taishan also objects to these Document Requests to the extent they seek to impose upon Taishan the duty to obtain documents, things, or other information from any sources other than its own corporate records.   Such document requests are improper and exceed the scope of permissible discovery.

4.  All of these General Objections are incorporated by reference into each and every Document Request response set forth below. Without waiving, and in addition to the foregoing, Taishan makes the following specific objections to the PSC's Document Request:

**SPECIFIC OBJECTIONS AND RESPONSES TO THE PLAINTIFF'S STEERING COMMITTEE'S SUPPLEMENTAL DOCUMENT REQUEST**

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 1:**

      All documents relating to the method that you were relying on in your assertion to Special Master Lee that "chemical analysis could identify the maker of the drywall" (Taishan PowerPoint Slide 36) and/or that Taishan believes is available to compare chemical components of residual boards found in Taishan's warehouse with boards from Plaintiffs' homes. See 2019 CHE Dep. At 71:1-6.

**RESPONSE NO. 1:**

      Taishan objects to Document Request No. 1 to the extent that it seeks attorney-client communications and attorney-work product. Specifically, "the method you were relying on in your assertion to Special Master Lee" quotes from a demonstrative created by attorneys and not entered into evidence. For the basis of this demonstrative, Taishan refers Plaintiffs to Taishan's PID Deposition, January 22, 2019, at 71:1-6. Additionally, Plaintiffs are not entitled to documents reflecting privileged and protected communications between Taishan, its attorneys and consulting experts regarding possible chemical analyses. Subject to and without waiving the foregoing objections, Taishan responds that it has no non-privileged, non-work product protected documents in its custody and control.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 2:**

      All documents relating to any and all methods for chemical analysis for product identification for Chinese drywall.

**RESPONSE NO. 2:**

Taishan objects to Document Request No. 2 to the extent that it seeks attorney-client communications and attorney-work product. Specifically, Plaintiffs are not entitled to documents reflecting privileged and protected communications between Taishan, its attorneys and consulting experts regarding possible chemical analyses. Subject to and without waiving the foregoing objections, Taishan responds that it has no non-privileged, non-work product protected documents in its custody and control.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 3:**

All documents and samples (including those from other manufacturers) that you contend can serve as exemplars or known samples of Chinese drywall that can be used for the purpose of matching them against samples from individual homes.

**RESPONSE NO. 3:**

Taishan objects to Document Request No. 3 as vague, ambiguous and confusing because "documents" cannot be "exemplars" of Chinese drywall. Reasonably interpreting Request No. 3 as seeking only drywall samples, Taishan refers Plaintiffs to Taishan's PID Deposition, January 22, 2019, which states, "from the chemical analysis channel, we can compare whether the component of chemical from this board is the same as the chemical component which is covered from the residual boards in Taishan's warehouse." Subject to and without waiving the foregoing objections, Taishan is willing to make available to Plaintiffs exemplars from the drywall in its custody and control that are photographed in TG-PID-000001-000033, subject to the Court's approval for any untimely discovery activity.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 4:**

All documents from any tests you have conducted regarding chemical analysis to

identify the maker of the drywall.

**RESPONSE NO. 4:**

Taishan responds that it has conducted no "tests . . . regarding chemical analysis to identify the maker of the drywall," and thus has no documents responsive to Document Request No. 4.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 5:**

All documents from any tests in which chemical analysis was used to identify the maker of the drywall.

**RESPONSE NO. 5:**

See Response to Request No. 4. N/A.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 6:**

Documents identifying the person(s) who conducted the above mentioned tests and their credentials.

**RESPONSE NO. 6:**

See Response to Request No. 4. N/A.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 7:**

Documents identifying the source of the gypsum used in the drywall used in any of the above mentioned samples and/or tests.

**RESPONSE NO. 7:**

See Response to Request No. 4. N/A.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 8:**

Documents identifying the batches, lot numbers, factory, and dates of manufacture for the drywall used in any of the above mentioned samples and/or tests.

**RESPONSE NO. 8:**

See Response to Request No. 4.  N/A.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 9:**

Documents identify [sic] the end market(s) to which drywall from the aforementioned batches and lot numbers were sold.

**RESPONSE NO. 9:**

Taishan objects to Document Request No. 9 as vague, ambiguous and confusing.  To the extent Request No. 9 references "aforementioned batches and lot numbers," and to the extent that phrase references Document Request No. 8, and to the extent that Document Request No. 8 is limited to "above mentioned samples and/or tests," Taishan refers to its Response to Requests No. 3 and No. 4.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 10:**

All literature, reports, and other documentation that discusses the reliability of chemical analysis to accurately conduct product identification for Chinese drywall.

**RESPONSE NO. 10:**

Taishan objects to Document Request No. 10 to the extent that it seeks attorney-client communications and attorney-work product.  Specifically, Plaintiffs are not entitled to documents reflecting privileged and protected communications between Taishan, its attorneys and consulting experts regarding possible chemical analyses.  Subject to and without waiving the foregoing objections, Taishan responds that it has no non-privileged, non-work product protected documents in its custody and control.

Respectfully submitted this 12th day of April 2019.

/s Michael P. Kenny
Bernard Taylor, Esq.
Georgia Bar No. 669625
Michael P. Kenny, Esq.
Georgia Bar No. 415064
Christina Hull Eikhoff, Esq.
Georgia Bar No. 242539
David Venderbush, Esq.
New York Bar No. 2920817
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
bernard.taylor@alston.com
mike.kenny@alston.com
christy.eikhoff@alston.com
david.venderbush@alston.com

*Counsel for Taishan Gypsum Co., Ltd. and*
*Tai'an Taishan Plasterboard Co., Ltd.*

Alan Dean Weinberger
Louisiana Bar No. 13331
HANGARTNER, RYDBERG & TERRELL, LLC
One Shell Square
701 Poydras Street, Suite 310
New Orleans, Louisiana 70179
Phone: (504) 434-6815
Fax: (504) 522-5689
aweinberger@hanrylaw.com

*Local Counsel for Taishan Gypsum Co., Ltd. and*
*Tai'an Taishan Plasterboard Co., Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on Plaintiffs' Liaison Counsel, Russ Herman, by U.S. mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 12th day of April, 2019.

/s Michael P. Kenny
Michael P. Kenny, Esq.
Georgia Bar No. 415064
ALSTON & BIRD LLP
1201 West Peachtree Street NW
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
mike.kenny@alston.com

*Counsel for Taishan Gypsum Co., Ltd. and
Tai'an Taishan Plasterboard Co., Ltd.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No. 1:11-CV-22408-MGC**

EDUARDO AND CARMEN AMORIN, *et al.*,
individually, and on behalf of all others
similarly situated,

      Plaintiffs,

v.

TAISHAN GYPSUM CO., LTD. F/K/A SHANDONG
TAIHE DONGXIN CO., LTD.; TAIAN TAISHAN
PLASTERBOARD CO., LTD., *et al.*,

      Defendants.

_____/

**TAISHAN GYPSUM CO., LTD. AND TAI'AN TAISHAN PLASTERBOARD**
**CO., LTD.'s OBJECTIONS AND RESPONSES TO THE PLAINTIFF'S STEERING**
**COMMITTEE'S SUPPLEMENTAL DOCUMENT REQUEST**

      Defendants Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd.

("Taishan") object and respond to the Plaintiff's Steering Committee's ("PSC") Supplemental

Document Request as follows:

**GENERAL OBJECTIONS**

      Taishan hereby sets forth its general objections to the PSC's Supplemental Document

Request on the following basis, all of which are incorporated into Taishan's responses by this

reference:

1.   Taishan objects to these Requests as untimely under Dkt. No. 174, which established a PID

     discovery deadline of March 5, 2019, and a PID evidentiary hearing, which was conducted

     on March 10, 2019. These Requests were served on Taishan after the close of PID

     discovery and after the PID evidentiary hearing.

2. Taishan objects to all of the Document Requests to the extent they seek information protected from discovery by the attorney-client privilege, the attorney work-product doctrine, and/or other applicable privileges.

3. Taishan objects to these Document Requests to the extent they seek or purport to seek information or documents: which are already in the custody of PSC; which are in the possession of other parties, third parties or in the public domain; or which are not in Taishan's possession, custody or control. To the extent that the PSC seeks information that is more readily available from other sources or already in the possession of the PSC, Taishan objects to these Document Requests as unduly burdensome. Taishan also objects to these Document Requests to the extent they seek to impose upon Taishan the duty to obtain documents, things, or other information from any sources other than its own corporate records. Such document requests are improper and exceed the scope of permissible discovery.

4. All of these General Objections are incorporated by reference into each and every Document Request response set forth below. Without waiving, and in addition to the foregoing, Taishan makes the following specific objections to the PSC's Document Request:

**SPECIFIC OBJECTIONS AND RESPONSES TO THE PLAINTIFF'S STEERING COMMITTEE'S SUPPLEMENTAL DOCUMENT REQUEST**

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 1:**

All documents relating to the method that you were relying on in your assertion to Special Master Lee that "chemical analysis could identify the maker of the drywall" (Taishan

PowerPoint Slide 36) and/or that Taishan believes is available to compare chemical components of residual boards found in Taishan's warehouse with boards from Plaintiffs' homes. See 2019 CHE Dep. At 71:1-6.

**RESPONSE NO. 1:**

Taishan objects to Document Request No. 1 to the extent that it seeks attorney-client communications and attorney-work product. Specifically, "the method you were relying on in your assertion to Special Master Lee" quotes from a demonstrative created by attorneys and not entered into evidence. For the basis of this demonstrative, Taishan refers Plaintiffs to Taishan's PID Deposition, January 22, 2019, at 71:1-6. Additionally, Plaintiffs are not entitled to documents reflecting privileged and protected communications between Taishan, its attorneys and consulting experts regarding possible chemical analyses. Subject to and without waiving the foregoing objections, Taishan responds that it has no non-privileged, non-work product protected documents in its custody and control.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 2:**

All documents relating to any and all methods for chemical analysis for product identification for Chinese drywall.

**RESPONSE NO. 2:**

Taishan objects to Document Request No. 2 to the extent that it seeks attorney-client communications and attorney-work product. Specifically, Plaintiffs are not entitled to documents reflecting privileged and protected communications between Taishan, its attorneys and consulting experts regarding possible chemical analyses. Subject to and without waiving the foregoing objections, Taishan responds that it has no non-privileged, non-work product protected documents in its custody and control.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 3:**

All documents and samples (including those from other manufacturers) that you contend can serve as exemplars or known samples of Chinese drywall that can be used for the purpose of matching them against samples from individual homes.

**RESPONSE NO. 3:**

Taishan objects to Document Request No. 3 as vague, ambiguous and confusing because "documents" cannot be "exemplars" of Chinese drywall. Reasonably interpreting Request No. 3 as seeking only drywall samples, Taishan refers Plaintiffs to Taishan's PID Deposition, January 22, 2019, which states, "from the chemical analysis channel, we can compare whether the component of chemical from this board is the same as the chemical component which is covered from the residual boards in Taishan's warehouse." Subject to and without waiving the foregoing objections, Taishan is willing to make available to Plaintiffs exemplars from the drywall in its custody and control that are photographed in TG-PID-000001-000033, subject to the Court's approval for any untimely discovery activity.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 4:**

All documents from any tests you have conducted regarding chemical analysis to identify the maker of the drywall.

**RESPONSE NO. 4:**

Taishan responds that it has conducted no "tests . . . regarding chemical analysis to identify the maker of the drywall," and thus has no documents responsive to Document Request No. 4.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 5:**

All documents from any tests in which chemical analysis was used to identify the maker of the drywall.

**RESPONSE NO. 5:**

     See Response to Request No. 4. N/A.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 6:**

     Documents identifying the person(s) who conducted the above mentioned tests and their credentials.

**RESPONSE NO. 6:**

     See Response to Request No. 4. N/A.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 7:**

     Documents identifying the source of the gypsum used in the drywall used in any of the above mentioned samples and/or tests.

**RESPONSE NO. 7:**

     See Response to Request No. 4. N/A.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 8:**

     Documents identifying the batches, lot numbers, factory, and dates of manufacture for the drywall used in any of the above mentioned samples and/or tests.

**RESPONSE NO. 8:**

     See Response to Request No. 4. N/A.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 9:**

     Documents identify [sic] the end market(s) to which drywall from the aforementioned batches and lot numbers were sold.

**RESPONSE NO. 9:**

     Taishan objects to Document Request No. 9 as vague, ambiguous and confusing. To the extent Request No. 9 references "aforementioned batches and lot numbers," and to the extent that

phrase references Document Request No. 8, and to the extent that Document Request No. 8 is limited to "above mentioned samples and/or tests," Taishan refers to its Response to Requests No. 3 and No. 4.

**SUPPLEMENTAL REQUEST FOR PRODUCTION NO. 10:**

All literature, reports, and other documentation that discusses the reliability of chemical analysis to accurately conduct product identification for Chinese drywall.

**RESPONSE NO. 10:**

Taishan objects to Document Request No. 10 to the extent that it seeks attorney-client communications and attorney-work product. Specifically, Plaintiffs are not entitled to documents reflecting privileged and protected communications between Taishan, its attorneys and consulting experts regarding possible chemical analyses. Subject to and without waiving the foregoing objections, Taishan responds that it has no non-privileged, non-work product protected documents in its custody and control.

Dated: April 12, 2019

Respectfully submitted,

*/s/ Enjoliqué Aytch*
Enjoliqué Aytch
Fla. Bar No. 0104881
Email: enjolique.aytch@akerman.com
Akerman LLP
Las Olas Centre II, Suite 1600
350 East Las Olas Boulevard
Fort Lauderdale, FL 33301-2229
Telephone: (954) 463-2700
Facsimile: (954) 463-2224

**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777

Bernard Taylor, Esq.
Georgia Bar No. 669625
Michael P. Kenny, Esq.
Georgia Bar No. 415064
Christina Hull Eikhoff, Esq.
Georgia Bar No. 242539
David Venderbush, Esq.
New York Bar No. 2920817
bernard.taylor@alston.com
mike.kenny@alston.com
christy.eikhoff@alston.com
david.venderbush@alston.com

*Attorneys for Taishan Gypsum Co., Ltd. and*
*Tai'an Taishan Plasterboard Co., Ltd.*

## SERVICE LIST

| | |
|---|---|
| Arnold Levin, Esq.<br>Sandra Duggan, Esq.<br>Frederick S. Longer, Esq.<br>LEVIN SEDRAN & BERMAN LLP<br>510 Walnut Street, Suite 500<br>Philadelphia, PA 19106<br>215-592-1500<br>*Attorneys for Plaintiffs* | Jay P. Dinan<br>Email: jdinan@yourlawyer.com<br>Parker Waichman LLP<br>27300 Riverview Center Boulevard, Suite 103<br>Bonita Springs, Florida 34134<br>Office: 239.390.1000<br>Fax: 239.390.0055<br>*Counsel for Parker Waichman LLP Plaintiffs* |
| Dawn Barrios, Esq.<br>Emma Kingsdorf Schwab, Esq.<br>BARRIOS, KINGSDORF & CASTEIX, LLP<br>701 Poydras Street, Suite 3650<br>New Orleans, Louisiana 70139,<br>504-524-3300<br>*Attorneys for Plaintiffs* | Jimmy Faircloth, Esq.<br>Faircloth, Melton, & Sobel<br>Gras Town Plaza,<br>412 N. 4th Street, Suite 230<br>Baton Rouge, LA 70802,<br>(225) 343-9535<br>*Attorney for Plaintiffs* |
| Leonard A. Davis, Esq.<br>HERMAN, HERMAN & KATZ, LLC<br>820 O'Keefe Avenue,<br>New Orleans, Louisiana 70113,<br>PH: (504) 581-4892<br>*Attorneys for Plaintiffs* | Scott A. George, Esq.<br>Jeffrey S. Grand, Esq.<br>Christopher Seeger, Esq.<br>Seeger Weiss LLP<br>1515 Market Street, Suite 1380<br>Philadelphia, PA 19102,<br>(215) 564-2300<br>*Attorney for Plaintiffs* |
| Pearl Anna Robertson, Esq.<br>IRPINO, AVIN, HAWKINS, LLP<br>2216 Magazine Street<br>New Orleans, LA 70130<br>504-525-1500<br>*Attorneys for Plaintiffs* | Jeffrey A. Breit, Esq.<br>BREIT DRESCHER IMPREVENTO, P.C.<br>600 22nd Street, Suite 402<br>Virginia Beach, VA 23451<br>757-622-6000<br>*Attorneys for Plaintiffs* |
| James V. Doyle, Esq.<br>DOYLE LAW FIRM, PC<br>2100 Southbridge Pkwy., Suite 650<br>Birmingham, AL 35209<br>Tele: 205-533-9500 Fax: 844-638-5812<br>Jim.Doyle@DoyleFirm.com | Richard S. Lewis, Esq.<br>Hausfeld LLP,<br>1700 K Street, NW., Ste. 650<br>Washington, DC 20006<br>(202) 540-7200<br>*Attorneys for Plaintiffs* |

*Attorneys for Plaintiffs*

| | |
|---|---|
| Richard J. Serpe, Esq.<br>LAW OFFICES OF RICHARD J.<br>SERPE, PC.<br>580 E. MAIN STREET, SUITE 310<br>Norfolk, Virginia 23510<br>757-233-0009<br>*Attorneys for Plaintiffs* | Patrick Shanan Montoya<br>Email: Patrick@colson.com<br>Colson Hicks Eidson<br>255 Alhambra Circle, PH<br>Coral Gables, FL 33134-2351<br>Telephone: (305) 476-7400<br>Facsimile: (305) 476-7444<br>*Interim Lead Counsel for Plaintiffs* |
| David Venderbush, Esq.<br>Michael P. Kenney, Esq.<br>Kristine McAlister Brown, Esq.<br>Christina Hull Eikhoff, Esq.<br>Bernard Taylor, Esq.<br>Alston & Bird LLP<br>1201 West Peachtree Street<br>Atlanta, Georgia 30309-3424<br>Tel: 404-881-7000 Fax: 404-881-7777<br>*Counsel for Defendant Taishan Gypsum Co.*<br>*Ltd, & Tai'an Taishan Plasterboard Co.* | Eric Matthew Hairston, Esq.<br>L. Christopher Vejnoska, Esq.<br>James L. Stengel, Esq.<br>Andrew K. Davidson, Esq.<br>Orrick, Herrington & Sutcliffe, LLP<br>The Orrick Building<br>405 Howard Street<br>San Francisco, CA 94105<br>Tel: 415-773-5700<br>*Counsel for BNBM PLC* |

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Case No. 2:11-CV-377-MSD

EDUARDO AND CARMEN AMORIN, *et al.*,
individually, and on behalf of all others
similarly situated,

      Plaintiffs,

v.

TAISHAN GYPSUM CO., LTD. F/K/A SHANDONG
TAIHE DONGXIN CO., LTD.; TAIAN TAISHAN
PLASTERBOARD CO., LTD., *et al.*,

      Defendants.

_____/

**TAISHAN GYPSUM CO., LTD. AND TAI'AN TAISHAN PLASTERBOARD
CO., LTD.'s OBJECTIONS AND RESPONSES TO THE PLAINTIFF'S STEERING
COMMITTEE'S SUPPLEMENTAL DOCUMENT REQUEST**

      Defendants Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd.

("Taishan") object and respond to the Plaintiff's Steering Committee's ("PSC") Supplemental

Document Request as follows:

**<u>OBJECTION</u>**

      Taishan objects to these Requests as not in compliance with Federal Rule of Civil

Procedure 26, unauthorized and untimely, as the Court is considering the parties' competing

discovery and trial plans, and has not established any discovery period.

1

Dated: April 12, 2019                    Respectfully submitted,

*/s/ Eric D. Cook*
Eric D. Cook
Virginia Bar No. 68054
Willcox & Savage P.C.
Wells Fargo Center
440 Monticello Ave., Suite 2200
Norfolk, VA 23510
Telephone: 757-628-5500
Facsimile: 757-628-5566

**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, Georgia 30309
Phone: (404) 881-7000
Fax: (404) 881-7777

Bernard Taylor
Georgia Bar No. 669625
Michael P. Kenny, Esq.
Georgia Bar No. 415064
Christina Hull Eikhoff, Esq.
Georgia Bar No. 242539
David Venderbush, Esq.
New York Bar No. 2920817
bernard.taylor@alston.com
mike.kenny@alston.com
christy.eikhoff@alston.com
david.venderbush@alston.com

*Attorneys for Taishan Gypsum Co., Ltd. and
Tai'an Taishan Plasterboard Co., Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of April, 2019, I electronically filed the foregoing Notice and Request for Oral Argument with the Clerk of the Court using the CM/ECF system which will then send a notification of such filing (NEF) to counsel of records.

*/s/ Eric D. Cook*
Eric D. Cook
Virginia Bar No. 68054
Willcox & Savage P.C.
Wells Fargo Center
440 Monticello Ave., Suite 2200
Norfolk, VA 23510
Telephone: 757-628-5500
Facsimile: 757-628-5566
*Counsel for Taishan Gypsum Co., Ltd. and Tai'an Taishan Plasterboard Co., Ltd.*

# EXHIBIT

# "G"

# ALSTON & BIRD

One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
404-881-7000 | Fax: 404-881-7777

Christina Hull Eikhoff                    Direct Dial: 404-881-4496                    Email: christy.eikhoff@alston.com

April 18, 2019

**VIA EMAIL**

Richard J. Serpe, Esq.
Law Offices of Richard J. Serpe, PC
580 East Main Street, Suite 310
Norfolk, VA 23510
rserpe@serpefirm.com

Re:    *Amorin v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co.,*
         *Ltd*, Civil Action No. 1:11-CV-22408-MGC (S.D. Fla.);
         *Amorin v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co.,*
         *Ltd*, Civil Action No. : 2:11-CV-01395-EEF-JCW (E.D. La);
         *Amorin v. Taishan Gypsum Co., Ltd., f/k/a Shandong Taihe Dongxin Co.,*
         *Ltd,* Civil Action No. 2:11-CV-377-MSD (E.D. Va.)

Dear Richard:

This letter relates to your Requests for Production of Documents to Taishan served on March 13, 2019, and our objections and responses to those discovery requests served on April 12, 2019. Your discovery pursuit is controversial, and we have met and conferred about the discovery extensively by email and on the phone. I expressly incorporate all of our positions stated in those dialogues, and we stand by all of our objections.

However, in an effort to resolve this discovery dispute, you have requested in writing some statements by us. Because these statements are true and entirely consistent with what we've already told you, we have agreed to summarize them here.

We understand that your new discovery pursuit arises from the following testimony of Taishan's corporate representative on January 22, 2019:

> Of course, there are other ways to make the [PID] determination. . . .
>
> Number two, from the chemical analysis channel, we can compare whether the component of chemical from this board is the same as the chemical component which is covered from the residual boards in Taishan's warehouse.

---

Alston & Bird LLP                                                                                                    www.alston.com

Atlanta | Beijing | Brussels | Charlotte | Dallas | Los Angeles | New York | Raleigh | San Francisco | Silicon Valley | Washington, D.C.

April 18, 2019
Page 2

(Taishan Dep., Jan. 21, 2019, at 70-71).  That proposal was made in good faith based on the witness's true beliefs from his long experience in the drywall manufacturing industry.  To this day, you have never asked Taishan any questions about that statement, either during the remainder of that 2-day deposition or by subsequent interrogatories.  Taishan did not represent, and has never represented, that it has in fact performed chemical analysis tests on its boards (or any other boards) for product identification purposes.  That is why Taishan has no responsive documents to your document requests about prior testing.

At the Florida PID hearing on March 11, our demonstrative and oral argument paraphrased the above quoted deposition testimony.  On the record, you vigorously argued against the feasibility of a comparative analysis of the chemical composition of drywall.

The possibility of doing a comparative analysis of the chemical composition of sample drywall boards has been discussed in attorney-client communications many times during our representation of Taishan.  Any documentation of those communications would either be in an attorneys' notes of the conversations, or in the client's notes of the conversations.  Both would be privileged and very difficult to isolate considering our 4+ year engagement in this case.  We have also had oral conversations with consulting experts about the concept of doing a comparative analysis.  However, no expert has ever been engaged by us on that issue, and it is not in the scope of any of our designated experts analysis and reports.

We continue to object to your discovery requests on this issue as substantively and procedurally improper.  It is not Taishan's job to show you how to meet your burden of proof on Product ID, nor did it become Taishan's job by merely making suggestions (this was one of many) of ways you could do it.  Moreover, the discovery requests are too late in Florida, too early in Virginia, and a distinct departure from our course of litigation in Louisiana.

We know you disagree.  We are nevertheless providing you with this letter in the hopes that this dispute can come to an end.

Sincerely,

Christina Hull Eikhoff

cc:    Bernard Taylor, Esq.
       Mike Kenny, Esq.
       David Venderbush, Esq.
       Sandra Duggan, Esq.
       Leonard Davis, Esq.

LEGAL02/38910730v1

# EXHIBIT

# "H"



# EXHIBIT

# "I"



# EXHIBIT

# "J"





## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

EDUARDO AND CARMEN AMORIN,
*et al.*, individually, and on behalf of all
others similarly situated,

      Plaintiffs,

v.

TAISHAN GYPSUM CO., LTD. f/k/a
SHANDONG TAIHE DONGXIN CO.,
LTD.; TAIAN TAISHAN
PLASTERBOARD CO., LTD., *et al.*,

      Defendants.

Case No. 1:11-CV-22408-MGC

### [PROPOSED] ORDER GRANTING PLAINTIFFS' OBJECTIONS TO THE SPECIAL MASTER'S REPORT AND RECOMMENDATION REGARDING PRODUCT ID CATEGORIES ATTRIBUTABLE TO TAISHAN GYPSUM CO., LTD.

THIS MATTER is before the Court on Plaintiffs' Objections to the Special Master's Report and Recommendation Regarding Product ID Categories Attributable to Taishan Gypsum Co., Ltd., filed April 29, 2019.

The Court having reviewed the Objections and being fully advised in the premises, IT IS HEREBY ORDERED THAT Plaintiffs' Objections are **GRANTED**.

The Court **FURTHER ORDERS and ADJUDGES** that the Special Master's Report and Recommendation Regarding Product ID Categories Attributable to Taishan Gypsum Co., Ltd. is hereby **MODIFIED** so that the following Product ID Categories (and markings contained in all photos therein) are attributable to Taishan Gypsum Co. Ltd.: C&K; IMT Gypsum; ProWall; Taian Tape or Taihe Tape; Made in China Meet[s] or Exceed[s]; Various drywall dimensions, including 4feetx12feetx1/2inch; Venture Supply; and White Edge Tape, boards with no markings or boards with no markings other than numbers.

       **DONE and ORDERED** in Chambers, Miami, Florida, this ___ day of _____,

20__.


_____
Honorable Marcia G. Cooke
United States District Judge