# Tab #21

EXHIBIT 7 (part 3 of 3) to Memorandum of Law in Support of Class Settlement

**Drywall**

**Indicia**

**Guide**

## KPT CHINESE Drywall

# 1    Knauf Plasterboard (Tianjin) Ltd.        page   3 - 4

## NON-KPT CHINESE DRYWALL

# 2    Crescent City        page   5

# 3    Taihe        page   6

# 4    Taishan        page   7 - 8

# 5    Venture Supply        page   9

# 6    BNBM        page   10

# 7    C&K        page   11

# 8    Dragon Brand        page   12

# 9    IMG        page   13

# 10    Bedrock Gypsum        page   14

# 11    IMT        page   15

# 12    ProWall Inc.        page   16

# 13    KNAUF MADE IN GERMANY – Counterfeit Board        page   17

# 14    LAFARGE MADE IN GERMANY – Counterfeit Board        page   18

# 15    Unknown Chinese Manufacturer 1        page   19

# 16    Unknown Chinese Manufacturer 2        page   20

# 17    Unknown Chinese Manufacturer 3        page   21

## NON-REACTIVE DRYWALL

# 18    National Gypsum        page   22

# 19    American Gypsum        page   23 - 25

# 20    CertainTeed/ProRoc        page   26 - 27

# 21    Georgia Pacific        page   28 - 29

# 22    Lafarge        page   30 - 31

# 23    NORGIPS USA Inc.        page   32

# 24    Panel Rey        page   33

# 25    USG        page   34 - 35

# 26    PT Knauf Gypsum Indonesia Ltd.        page   36

# 27    Guangdong Knauf New Building Material Products Co. Ltd.        page   37

# 28    Knauf Plasterboard (Wuhu) Co. Ltd.        page   38

# 29    Knauf do Brasil Ltd.        page   39

# 30    Knauf Gips KG        page   40

# 31    James Hardie        page   41

# 32    Federal Gypsum Company        page   42

# 33    Temple Inland        page   43

# 34    Flintcote Company        page   44

<table>
<tr><td>

**KPT CHINESE DRYWALL**

</td><td>

# 1    **Knauf Plasterboard (Tianjin) Ltd.**

</td><td>1 of 2</td></tr>
</table>

## <u>Reactive KPT Chinese Drywall</u>

### M1:

Label:



Marking:        **KNAUF – TIANJIN CHINA – ASTM C36**

Printing Type:  BLUE – DOUBLE – DOT

Requirements:   Indicia photos must clearly indicate the presence of KPT drywall by displaying the full marking or distinctive parts such as "KNAUF-" and/or "TIANJIN CHINA" in blue-double-dot printing.

Please note that photos only displaying "KNAUF", "ASTM C36" or parts of it are not a unique indicia for KPT and therefore insufficient.

## <u>Non - reactive KPT Chinese Drywall</u> (subject to Section 4.9 of the Settlement Agreement)

### M 2:

Label:



Marking:        **KNAUF – TianJin, China – ASTM C36 -  [DATE]  [TIME]**

Printing Type:  BLUE – DOUBLE – DOT

Requirements:   Photo must allow unique identification of KPT drywall by displaying the full marking or distinctive parts such as "KNAUF-" and/or "TianJin, CHINA" in blue-double-dot printing.

Please note that photos only displaying "KNAUF", "ASTM C36" or parts of it are not a unique indicia for KPT and therefore insufficient.

Case 2:09-cv-02047-EEF-MBN Document 22807-10 Filed 12/09/19 Page 5 of 647

## Insufficient Indicia for KPT

| | |
|---|---|
| Edge Tape: | Blue – Yellow |
| Label: | |



| | |
|---|---|
| Marking: | " KNAUF     CERTIFIED TO ISO 9001     KNAUF     STANDARD BOARD " |
| Note: | The blue-yellow edge tape is also used by other Knauf companies, see Guangdong Knauf New Building Material Products Co. Ltd (# 27, p. 36), and therefore an insufficient indicia for KPT. Please provide a photo either of the marking M1 or M2 as stated above. |

| | |
|---|---|
| Front marking: | " **K** " |
| Label: | |



| | |
|---|---|
| Note: | The label "K" on the front side of the drywall sheet is used by most Knauf companies and therefore insufficient indicia for KPT. Please provide a photo either of the marking M1 or M2 of the back side of the board as stated above. |

Case 2:09-md-02047-EEF-MBN Document 22807-10 Filed 12/09/19 Page 6 of 647

Case 2:09-md-02047-EEF-JCW Document 20-1 Entered on FLSD Docket 05/13/2013 Page 713 of 759

Case 2:09-md-02047-EEF-JCW Document 20-1 Entered on FLSD Docket 05/13/2013 Page 713 of 759

**NON – KPT CHINESE DRYWALL**

**# 2   Crescent City**

**Marking:**

Label:



Marking:   **Made in China Crescent City Gypsum**

Printing Type:   black letters

NON – KPT CHINESE DRYWALL

# # 3    Taihe

**Marking:**

Label:





Marking:    **MADE IN CHINA, MEETS OR EXCEEDS ASTM C1396 04 STANDARD**

Printing Type:    black letters

Edge Tape:    White – Blue – Green

Label





Marking:    " Taihe "   +   white triangle in red circle   +   [chinese symbols]

**NON – KPT CHINESE DRYWALL**

### # 4   Taishan

1 of 2

---

**M 1:**

Label:



Marking:       **4feetX12feetX1/2inch        DrYwall      [DATE] [TIME]**

Printing Type:   black letters

---

**M 2:**

Label:



Marking:       **TAIAN  TAISHAN**

Printing Type:   black letters

---

**M 3:       Drywall  4feetx12feetx1/2inch**

Label:



Marking:       **Drywall  4feetx12feetx1/2inch**

Printing Type:   black letters

Case 2:09-md-02047-EEF-MBN Document 22807-10 Filed 12/09/19 Page 9 of 647
Case 2:09-md-02047-EEF-MBN Document Documentation-10 SEE Docket 2013/Page 9 Page 5716 of 759

**M 4:**

Label:



Marking:   **DRYWALL  4feet*12feet*1/2inch**

Printing Type:  black letters

Edge Tape:   White – Glossy  (<u>Material:</u> plastic)

Label:



Marking:     no marking on edge tape

Case 2:09-md-02047-EEF-MBN Document 20688-10 LTS Filed 03/30/11 Page 10 of 759

NON – KPT
CHINESE
DRYWALL

# 5    Venture Supply

---

**M 1:**

Label:



Marking:    **VENTURE SUPPLY INC.**   MFG TAJHE CHINA

Printing Type:    black letters

---

**M 2:**

Label:



Marking:    **VENTURE SUPPLY INC.**   MFG TAIHE CHINA

Printing Type:    black letters

# 6    BNBM

**M 1:**

Label:



Marking:    **BEIJING NEW BUILDING MATERIALS CO LTD.**

Printing Type:    Blue letters,  framed

**M 2:**

Label:



Marking:    **BEIJING NEW BUILDING MATERIALS PUBLIC LIMITED COMPANY Beijing, China ASTM 1396-04  [DATE]  [TIME]**

Printing Type:    black letters

**NON – KPT CHINESE DRYWALL**

# # 7    C & K

**Marking:**

Label



Marking:    **C&K GYPSUM BOARD ASTM C 1396 MADE IN CHINA**

Printing Type:    black letters

Edge Tape:    Blue – Grey – White

Label:





Marking:    " C&K"   +   [Chinese symbol]

Case 2:09-md-02047-EEF-MBN Document 22897-10 Filed 12/09/19 Page 13 of 647
Case 2:09-md-02047-EEF-MBN Document 20-4 Filed 03/11/13 Page 43 of 759
Page 20 of 759

**NON – KPT CHINESE DRYWALL**

# 8    **Dragon Brand**

---

**Marking:**

Label:



Marking: **DRAGON BRAND DRYWALL PER ½" 4`X12`ASTM C 1396  MADE IN CHINA    [TIME] [DATE]**

Printing Type: black letters

---

Edge Tape: Light – Dark Blue – White

Label:



Marking:    " DRYWALL "

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 14 of 647
Case 2:09-md-02047-EEF-MBN Document 20688-10 L5-DE-0028/0411 Page 14 Page 721 of
759

## NON – KPT CHINESE DRYWALL

# # 9    IMG

**Marking:**

Label:



Marking: **IMG ASTM C 1396**    Made in CHINA [DATE]

Printing Type:  black letters

Edge Tape:  Blue – White

Label:



Marking:  n/a

NON – KPT CHINESE DRYWALL

# # 10  Bedrock Gypsum

| | |
|---|---|
| Edge Tape: | Yellow – Black – White |
| Label: |  |
| Marking: | Bedrock Gypsum<sup>TM</sup> Manufactured to ASTM C 1396 388 Market Street 4th Floor, San Francisco CA 94111 Made in China |

## NON – KPT CHINESE DRYWALL

### # 11  IMT

**Marking:**

Label:



Marking: **MADE IN CHINA IMTGYPSUM.COM ASTM C 1396**

Printing Type: black letters

NON – KPT
CHINESE
DRYWALL

# # 12  Pro Wall Inc.

Marking:

Label:



| | |
|---|---|
| Marking: | **MADE IN CHINA MEETS ASTM C36/C1396 STANDARD** |
| Printing Type: | black letters |

| | |
|---|---|
| Edge Tape: | White – Blue – Yellow |
| Label: | |



| | |
|---|---|
| Marking: | " ½" x 12`TE    ProWall " |

p. 16

Case 2:09-md-02047-EEF-MBN Document 22887-10 Filed 12/09/19 Page 18 of 647
Case 2:09-md-02047-EEF-MBN Document 20-4 filed 06-11-09 Dkt 2804511 Page 18 Page 25 of 759

**NON – KPT CHINESE DRYWALL**

## # 13   KNAUF MADE IN GERMANY

### COUNTERFEIT BOARD

**M 1:**

Label:



Marking:  GYPSUM WALLBOARD [DATE] [TIME]  -96-  MADE IN  GERMANY BY **KNAUF**
MADE TO ASTM C36              ½" THICK          FDG GYPSUM

Printing Type:  blue – single – dot   **and**   blue – double – dot

Note:  This marking is apparently a counterfeit board and has not been
produced by any Knauf company

" FDG " is the wrong shortcut of flue gas desulflurization

**Correct:  FGD**

**M 2:**

Label:



Marking:  **[DATE]    MADE IN GERMANY**

Printing Type:  black letters

Note:  Printing " MADE IN GERMANY "  **and**  [DATE] (Month/Day/Year) is no
typical marking for any German company

p. 17

Case 2:09-md-02047-EEF-MBN Document 2 Filed 12/09/19 Page 26 of

**NON – KPT CHINESE DRYWALL**

# # 14   LAFARGE MADE IN GERMANY

**Marking:**

Label:



| Marking: | **LAFARGE   [DATE] [TIME]** | **GER 1    ASTM C36** |
|---|---|---|
| | **MADE IN GERMANY** | |

Printing Type:   black letters

Note:   This is assumingly a counterfeit board produced in China

Printing " MADE IN GERMANY "  **and**  [DATE] (Month/Day/Year) is no typical marking for any German company

Case 2:09-md-02047-EEF-MBN Document 22387-10 Filed 12/09/19 Page 20 of 759

NON – KPT
CHINESE
DRYWALL

# # 15   Unknown Chinese Manufacturer 1

**Marking:**

Label:



| | |
|---|---|
| Marking: | **[DATE]  J  [TIME]  1   MEETS ASTM C36** |
| Printing Type: | black letters |

| | |
|---|---|
| Note: | Unknown Chinese Manufacturer |

Case 2:09-md-02047-EEF-MBN Document 22387-10 Filed 12/09/19 Page 21 of 647
Case 2:09-md-02047-EEF-MBN Document 20688-10 Filed 28/04/11 Page 21 of 759
Page 28 of 759

| NON – KPT CHINESE DRYWALL | # 16   Unknown Chinese Manufacturer 2 |
|---|---|

**Marking:**

Label:





Marking:   **Manufactured to Conform to ASTM Standard C36**

**4 x 12 x 1/2        MADE IN CHINA**

Printing Type:   black letters

Note:        Unknown Chinese Manufacturer

**NON – KPT CHINESE DRYWALL**

# # 17   Unknown Chinese Manufacturer 3

**Marking:**

Label:



Marking:         **MADE IN CHINA ASTM C 1396**

Printing Type:  black letters

Note:                Unknown Chinese Manufacturer

NON
REACTIVE
DRYWALL

# # 18   National Gypsum

**M 1:**

Label:



Marking:   **National Gypsum company**

Printing Type:   black letters

**M 2:**

Label:



Marking:   **GridMarX ™ Patent Product**
**National Gypsum Properties**
**PRODUCT  INFO  @  www.gridmarx.com**

Printing Type:   black letters

Edge Tape:   White – Black – Yellow

Label:



Marking:   (12,7 x 3658mm)     National Gypsum Company  Charlotte, NC 28211

Case 2:09-md-02047-EEF-MBN Document 22897-10 Filed 12/09/19 Page 24 of 647
Case 2:09-md-02047-EEF-MBN Document 20687 Filed 02/20/17 Page 731 of 759

**M 1:**

Label:



Marking:  **ARMENDARTZ  [TIME]**

Printing Type:  black letters

**M 2:**

Label:



Marking:  **UNDERWRITER LABORATORIES INC.  [DATE]
[NAME, eg. C. Stone]**

Printing Type:  black letters

Note:  There are different varieties of the marking behind [DATE]

Case 2:09-md-02047-EEF-MBN Document 20647-1 Filed 02/04/11 Page 25 of 32 of 759

**NON REACTIVE DRYWALL**

**# 19  American Gypsum**

2 of 3

---

**M 3:**

Label:



Marking: **Gypsum Board F-3724 FIRE RESISTANCE CLASSIFICATION SEE UL FIRE RESISTANCE DIRECTORY R14169**

Printing Type:  blue – single – dot

---

Edge Tape:  Blue – White – Red

Label:



**M 1:**  AMERICAN GYPSUM, ALBUQUERQUE, NM

Label:



**M 2:**  MANUFACTURED TO MEET ASTM C1396 AND C36

| Edge Tape: | White – Purple |
|---|---|

**Label:**



**M 1:**  AMERICAN GYPSUM, INTERIOR CEILING BOARD  Panel de techo para interiors

**Label:**



**M 2:**  MANUFACTURED BY AMERICAN GYPSUM, DALLAS, TX

**NON REACTIVE DRYWALL**

**# 20   CertainTeed / ProRoc**

**Marking:**

Label:





Marking:

**GYPSUM BOARD ISSUE NO. F-3600 FIRE RESISTANCE CLASSIFICATION SEE UL PRODUCTS CERTIFIED FOR CANADA DIRECTORY AND FIRE RESISTANCE DIRECTORY R3660**

**MADE IN USA ASTM 1396 & C36  CAN/CSA**

Printing Type:  black letters

Edge Tape:  Black – Blue

Label:



Marking:  CertainTeed   ProRoc   REGULAR GYPSUM BOARD

NON
REACTIVE
DRYWALL

# # 20   CertainTeed / ProRoc

2 of 2

| Edge Tape: | White with Red letters |
| --- | --- |
| Label: |  |
| Marking: | ProRoc    PANEL DE YESO TIPO X |

Case 2:09-md-02047-EEF-MBN Document 22897-10 Filed 12/09/19 Page 29 of 647
Case 2:09-md-02047-EEF-MBN Document 20494 Filed 08/05/16 Page 23 of 36 of 759

NON
REACTIVE
DRYWALL

---

**M 1:**

Label:



Marking:         **GP DENSGLASS ULTRA**

Printing Type:   black letters

---

**M 2:**

Label:



Marking:         **[DATE]   IN1B   [TIME]   GP TR: CERTIFIED 96% RECYCLED**

Printing Type:   black letters

---

**M 3:**

Label:



Marking:         **DENS SHIELD TILE BACKER   [DATE]**

Printing Type:   black letters

Case 2:09-md-02047-EEF-MBN Document 22387-10 Filed 12/09/19 Page 30 of 647
759
Case 2:09-md-02047-EEF-MBN Document 20-4 Filed 06-00-PSL Filed 02/08/011 Page 30 of 937 of

**NON REACTIVE DRYWALL**

# # 21   Georgia Pacific

**M 4:**

Label:

Marking:   **[DATE]  /  TX1   08**

Printing Type:  black letters

Edge Tape:   Black – White – Red

Label:



Marking:        TOUGHROCK

Case 2:09-md-02047-EEF-MBN Document 22897-10 Filed 12/09/19 Page 31 of 647

**M 1:**

Label:



Marking: LABORATORIES INC. GYPSUM BOARD FIRE RESISTANCE DIRECTORY IN WIDE TYPE LGC6A

Printing Type: black letters

**M 2:**

Label:



Marking: [DATE]        PALATKA, FL          [TIME]

Printing Type: black letters

Case 2:09-md-02047-EEF-MBN Document 22897-10 Filed 12/09/19 Page 32 of 647
Case 2:09-md-02047-EEF-MBN Document 22897-10 Filed 12/09/19 Page 32 of 647
759

**M 3:**

Label:



Marking:        [TIME]   [COLOUR]   TEAM

Printing Type:  black letters

Note:           [Colour] could be WHITE, YELLOW, BLUE or RED


Edge Tape:      white

Label:



Marking:        LAFARGE     Manufactured by Lafarge North America Inc.

Fabricado por Lafarge North America Inc.

**NON REACTIVE DRYWALL**

## # 23   NORGIPS Inc.

**M 1:**

Label:





Marking:      NORGIPS USA INC. GYPSUM WALLBOARD THICKNESS ½"

Printing Type:   blue letters

**M 2:**

Label:



Marking:      MADE IN POLAND OPOLEN

Printing Type:   blue letters

**NON REACTIVE DRYWALL**

## # 24 Panel Rey

**M 1:**

Label:



Marking:         PANEL REY 2

Printing Type:   black letters

**M 2:**

Label:





Marking:         ½"X12´ REG   [TIME]   [DATE]

Printing Type:   black letters

Edge Tape:       White - Blue

Label:



Marking:         Hecho en Mèxico por PANEL REY S.A., Hidalgo

Case 2:09-md-02047-EEF-MBN Document 22897-10 Filed 12/09/19 Page 35 of 647
Case 2:09-md-02047-EEF-MBN Document 20645-11 Filed 02/04/17 Page 33 of 742 of 759

**M 1:**

Label:





Marking:        100 % RECYCLED PAPER SINCE 1967

Printing Type:   black letters

**M 2:**

Label:



Marking:        GYPSUM BOARD

Printing Type:   black letters,  framed

Case 2:09-md-02047-EEF-MBN Document 20646-1 Filed 12/20/16 Page 36 of 743

| | |
|---|---|
| Edge Tape: | White – Blue |
| Label: |  |
| **M 1:** | USG SHEETROCK Brand   Interior Ceiling Panel  Sag-Resistant |
| Label: |  |
| **M 2:** | United States Gypsum Company<br>125 South Franklin Street, Chicago, IL 60606<br>A Subsidiary of USG Corporation |

| | |
|---|---|
| Edge Tape: | White – Yellow – Green |
| Label: |  |
| **Marking:** | United States Gypsum Company<br>125 South Franklin Street, Chicago, IL 60606<br>A Subsidiary of USG Corporation |

NON REACTIVE DRYWALL

# # 26   PT Knauf Gypsum Indonesia Ltd.

**M 1:**

Label:





Marking:     **KNAUF –**     PLASTERBOARD 48  STD  12,5x1220x3660 mm TE
NATURAL  GYPSUM     [DATE] ASTM C36

Printing Type:   blue letters

Note:            plant number:  48

---

Edge Tape:   Grey – Blue

Label:



Marking:     STANDARD BOARD      KNAUF

Case 2:09-md-02047-EEF-MBN Document 22897-10 Filed 12/09/19 Page 38 of 647
Case 2:09-md-02047-EEF-MBN Document 20687-10 Filed 02/04/19 Page 38 of 759
759

NON REACTIVE DRYWALL

# # 27  Guangdong Knauf New Building Material Products Co. Ltd.

**M 1:**

Label:



Marking:         Dongguan China ASTM C 36

Printing Type:   blue – single – dot

**M 2:**

Label:



Marking:         plant number:  38

Printing Type:   blue – single – dot

Edge Tape:      Blue – Yellow

Label:



Marking:         " KNAUF   CERTIFIED TO ISO 9001   KNAUF   STANDARD BOARD "

NON
REACTIVE
DRYWALL

# # 28  Knauf Plasterboard (Wuhu) Co. Ltd.

**M 1:**

Label:



 

Marking:        KNAUF – WuHu,   China – ASTM C36 – [DATE]  [TIME]

Printing Type:   blue letters

**M 2:**

Label:



Marking:        KNAUF  [Chinese symbols]  18  (plant number)

Printing Type:   blue letters

Edge Tape:      Blue – Yellow - White

Label:



Marking:        " KNAUF "

NON REACTIVE DRYWALL

# # 29   Knauf do Brasil Ltd.

**Marking:**

Label:







Marking:        KNAUF ST – 12,5mm – ARMAZENAR EM LOCAL SECO - OO

Printing Type:   blue – double – dot             blue – single – dot

---

Edge Tape:     Blue - Yellow

Label:



Marking:        " KNAUF "

NON REACTIVE DRYWALL

# # 30  Knauf Gips KG

**Marking:**

Label:





Marking:         CE KNAUF                              AUSBAUPLATTE

Printing Type:  blue – or – red – double dot        blue – single - dot

**NON REACTIVE DRYWALL**

# # 31  James Hardie

**Marking:**

Label:



Marking:        HARDIEBACKER

**NON REACTIVE DRYWALL**

# # 32   Federal Gypsum Company

| | |
|---|---|
| Edge Tape: | White - Green |
| Label: |  |
| Marking: | Federal Gypsum Company |

**NON REACTIVE DRYWALL**

# # 33  Temple Inland

---

**Marking:**

Label:



Marking:           A071806 01144

Printing Type:   black letters

---

Edge Tape:    White – Blue – Pink

Label:







Marking:        Temple Inland       ½" X 12            54

NON REACTIVE DRYWALL

# # 34   Flintcote Company

**Marking:**

Label:



Marking:          THE FLINTCOTE COMPANY

# Tab #22

# <u>FILED UNDER SEAL</u>

# Tab #23

# FILED UNDER SEAL

# Tab #24

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| | : | MDL NO. 2047 |
| IN RE: CHINESE MANUFACTURED DRYWALL | : | |
| PRODUCTS LIABILITY LITIGATION | : | SECTION:  L |
| | : | |
| | : | JUDGE FALLON |
| | : | MAG. JUDGE WILKINSON |
| .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. | : | |

**THIS DOCUMENT RELATES TO ALL CASES**

**PRE-TRIAL ORDER # 11**

Pursuant to this Court's instruction during the status conference of August 14, 2009, the

Court received profile forms from the Plaintiffs and Defendants.

IT IS ORDERED that these profile forms are to be distributed to the appropriate parties

and filed and returned on or before September 2, 2009.  Plaintiff profile forms shall be returned

to Plaintiffs' Liaison Counsel, Russ Herman, either electronically to drywall@hhkc.com, or in

hard copy to, Russ M. Herman, Plaintiffs' Liaison Counsel, Herman, Herman, Katz, & Cotlar,

L.L.P., 820 O'Keefe Ave., New Orleans, LA 70113.  Defendant profile forms shall be returned

to Defendants' Liaison Counsel, Kerry Miller, either electronically to kmiller@frilot.com, or in

hard copy to Kerry J. Miller, Defendants' Liaison Counsel, Frilot L.L.C., 1100 Poydras St., Suite

3700, New Orleans, LA 70163.

New Orleans, Louisiana, this 17th day of August, 2009.

ELDON E. FALLON
UNITED STATES DISTRICT JUDGE

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 50 of 647
Case 1:11-cv-22408-MGC Document 277-2 Entered on FLSD Docket 05/13/2013 Page 757 of
759

# Tab #25

Case 2:09-md-02047-EEF-MBN Document 22397-12 Filed 12/09/19 Page 51 of 647
Case 2:09-md-02047-EEF-MBN Document 1083 Filed 03/09/10 Page 5 of 758
759

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL | ) | MDL No. 2047 |
| PRODUCTS LIABILITY LITIGATION | ) | |
| | ) | SECTION: L |
| | ) | |
| THIS DOCUMENT RELATES TO ALL CASES | ) | JUDGE FALLON |
| | ) | MAG. JUDGE WILKINSON |
| | ) | |

## PRE-TRIAL ORDER NO. 1F

In Pre-Trial Order Nos. 1C, 1D, and 1E, the Court lifted the stay on motion practice in the MDL proceedings and clarified the status of motion practice and stay of responsive pleadings in *Gross, et al. v. Knauf Gips, KG, et al.,* No. 09-6690 (R. Docs. 509, 718 and 1078). Since that time, plaintiffs have filed other large Omnibus complaints and numerous individual actions. In order to clarify the deadline dates and to alleviate the need for defendants to move for extensions of time in which to respond, the Court hereby adopts the following deadlines that apply in all cases:

IT IS ORDERED all defendants be and they hereby are granted an automatic extension of time in which to respond to Complaints in the MDL. Responsive pleadings are now due fifty (50) days after service of a Complaint on a defendant.

IT IS FURTHER ORDERED that counsel shall enter their appearance on behalf of their client(s) within twenty (20) days after service of a Complaint on a defendant.

IT IS FURTHER ORDERED that each plaintiff shall submit a plaintiff profile form within forty (40) days of filing a complaint.

IT IS FURTHER ORDERED that defendants shall respond to the appropriate profile form within forty (40)days after service of a Complaint on a defendant. Once completed, the profile form is to be provided to Liaison Counsel. Profile forms are not filed with the Court and

are not served on Lexis Nexis File & Serve.  The Court has approved a Plaintiff Profile Form, a

Defendant Manufacturers' Profile Form, a Contractor/Installer Profile Form, a Builder Defendant

Profile Form, a Defendant Distributor Profile Form, and the Importer/Exporter/Broker Profile

Form.  See Pre-Trial Order Nos. 11, 12A, and 14.  Profile forms for other defendants are still

under discussion.

      Any questions regarding these deadlines and/or proper filing techniques should be

directed to a party's respective Liaison Counsel.

      NEW ORLEANS, LOUISIANA, this _____9th_____ day of March, 2010.

                                ELDON E. FALLON
                                UNITED STATES DISTRICT JUDGE

1009893v.1

# Exhibit C

# Tab #26

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  CHINESE MANUFACTURED DRYWALL | : MDL No. 2047 |
| PRODUCTS LIABILITY LITIGATION | : Section L |
| ——————————————————— | : |
| This Document Relates to | : JUDGE FALLON |
| ALL CASES | : MAG. JUDGE WILKINSON |

---

## DEFENDANT MANUFACTURERS' PROFILE FORM

All Defendant Drywall Manufacturers must complete and submit this Defendant Manufacturers' Profile Form.  Each Defendant Drywall Manufacturer must complete and sign a Defendant Manufacturers' Profile Form for all shipments or deliveries of Chinese Drywall into, or for importation into, the US from 2001 through 2009.   Each Defendant Drywall Manufacturer must complete and sign a separate Exhibit A for any individual named Plaintiff with an action pending in Federal Court.  If additional knowledge becomes known after completion, this Defendant Manufacturers' Profile Form must be supplemented.  If additional space is needed to answer any questions or complete your responses, additional pages may be attached.  In addition, if any attachments or documents are provided in response to any question, please identify the specific question within this Defendant Manufacturers' Profile Form that relates to the specific attachment or document.

The questions contained within this Profile Form are non-objectionable and shall be answered without objection.  By answering this Profile Form, you are not waiving the attorney work product and/or attorney client privileges.  Similarly, by disclosing the identity of consultants, such consultants may remain non-testifying experts and are subject to all protections afforded by law.  Please print legibly or type your responses in English.

I.      **CONTACT INFORMATION OF DEFENDANT MANUFACTURER COMPLETING THIS PROFILE FORM**

      A.       Manufacturer Name_____

      B.       Address_____

      C.       Phone number_____

      D.       Email address_____

      E.       Web site_____

      F.       President or CEO_____

      G.       Headquarters if Foreign_____

      H.       Address of USA Headquarters_____

      I.       Name of supervisor at USA
Headquarters_____

      J.       Principal Place of Business in USA_____

      K.       List of all offices or locations in USA where entity has done business at any time in 2001 through 2009_____

      L.       Name of Manager at each office or location identified in I(J) above_____

                           _____


(If you have identified more than one entity in I(A) above separately answer I(B)-1(L) for each entity.)

II.     **COUNSEL INFORMATION OF DEFENDANT MANUFACTURER**

A.    Name:_____

B.    Address:_____

C.    Phone Number:_____

D.    Fax Number:_____

E.    E-Mail:_____

III.    **CHINESE DRYWALL PRODUCT IDENTIFICATION AND CHAIN OF DISTRIBUTION**

1.    Product Identification:

Name of Manufacturer(s)' drywall product:
_____

Identify any markings on the drywall product (e.g. lot number, batch number, serial number, color markings, UPC codes, etc.):_____

List all trademarks applicable to the product:
_____

Is the drywall that is the subject of this litigation known or referred to, either by the public or only internally within your company, by any other names, brand names, titles, or designations?  Provide a detailed list of all names, brand names, titles, and designations by which this drywall is known:
_____

Is the drywall that is the subject of this litigation manufactured in any other types or versions? Please describe such other types and how they may be identified:
_____

Is the drywall that is the subject of this litigation sold by any other party under its own name?  If so, provide a list of all parties selling your drywall under their names, and the brand names under which the drywall is sold:
_____

2.    Shipment Information (identify the following for each shipment to, or for importation to, the United States):

Exporter Name:    _____

Address of Exporter:    _____

_____

_____

Date of Export:    ____/____/_____ (Month / Day / Year)

Name of all ports through which shipment was in transit: _____

Name of final port where shipment was offloaded: _____

Date shipment was offloaded:  ____/____/_____ (Month / Day / Year)

Amount of Drywall exported: _____

Name of shipper:    _____

Address of shipper:    _____

_____

2

Mode of Shipment: _____

Name of vessel: _____

3.     Importer Information (identify the following for each importer):

Importer Name: _____

Address of Importer: _____

_____

_____

Date of Import: _____/_____/_____ (Month / Day / Year)

Amount of Drywall imported:_____

4.     Distributor in USA:

To the extent you are aware of the distributor or drywall contractor/installer, for any shipments of your product to the USA, provide such information: _____

_____

_____

_____

5.     Are you are of any brokers or intermediary agents involved in the supply chain who purchased or took possession of your product, either directly from you or from a successor in distribution? If so, identify such brokers or intermediary agents by name, address, and phone number, and provide any correspondence or other documentation in your possession concerning such brokers or agents.

_____

6.     If any of your Chinese drywall was stored at any time by or for you at any location, identify the following:

Name of entity providing storage: _____

Address of entity providing storage: _____

_____

_____

3

Dates product was stored:

____/____/_____ (Month / Day / Year)  to  ____/____/_____ (Month / Day / Year)

Quantity of product stored:                        _____

Price paid for storage:                        _____

Name of contact person at storage facility:  _____

Phone number:  _____

Email address:  _____

List any complaints made or received regarding storage of the product:

_____

7. Describe all agreements existing between the manufacturer and: exporters; importers; shippers; and distributors, relating to each shipment of Chinese drywall to, or for importation to, the United States.

8. For all shipments or deliveries of Chinese Drywall into, or for importation into, the US from 2001-2009, please indicate whether you provided any of the following

    a.        Express warranties;

    b.        Product specifications;

    c.        Product information and/or instructions for storage or use

## IV.    **INSURANCE**

A. Identify all policies of insurance, including all CGL, Product Liability, Builder's Risk, D&O and Excess insurance policies relating to claims.

1. For each policy, identify the following:

Insurer:  _____

Dates policy in effect:

____/____/_____ (Month / Day / Year)  to  ____/____/_____ (Month / Day / Year)

Policy Number:                _____

Type of Policy:                _____

Insurance Agent                _____

Policy Coverage Limits        _____

Produce a copy of the Declaration page, exclusions and policy of insurance.

B. Identify all claims you have made on any insurance policies relating to the manufacture or shipment of products identified in Section V above.

1. For each claim please provide the following:

Date:       ____/____/_____ (Month / Day / Year)

Insurer:  _____

Description of claim:  _____

Insurer's response to claim:  _____

4

If in litigation:

Caption of Case:_____

Name and address of attorneys involved:_____

_____

_____

Insurance carriers involved:_____

_____

### *CERTIFICATION*

      I declare under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746 that all information provided in this Defendant Manufacturers' Profile Form is true and correct to the best of my knowledge, and that I have supplied all of the documents requested in this declaration, to the extent that such documents are in my possession, custody or control.


_____    _____    _____

Signature                            Print Name                        Date

Case 2:09-md-02047-EEF-MBN   Document 22397-10   Filed 12/09/19   Page 60 of 647
Case 1:11-cv-22408-MGC   Document 277-8   Entered on FLSD Docket 05/13/2019   Page 8 of
595

# Tab #27

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | : : : : | MDL No. 2047 Section L |
| | : | |
| ———————————— | : : | JUDGE FALLON |
| This Document Relates to ALL CASES | : : : | MAG. JUDGE WILKINSON |

## TAISHAN GYPSUM CO. LTD. MANUFACTURER PROFILE FORM

All Defendant Drywall Manufacturers must complete and submit this Defendant Manufacturers' Profile Form. Each Defendant Drywall Manufacturer must complete and sign a Defendant Manufacturers' Profile Form for all shipments or deliveries of Chinese Drywall into, or for importation into, the US from 2001 through 2009. Each Defendant Drywall Manufacturer must complete and sign a separate Exhibit A for any individual named Plaintiff with an action pending in Federal Court. If additional knowledge becomes known after completion, this Defendant Manufacturers' Profile Form must be supplemented. If additional space is needed to answer any questions or complete your responses, additional pages may be attached. In addition, if any attachments or documents are provided in response to any question, please identify the specific question within this Defendant Manufacturers' Profile Form that relates to the specific attachment or document.

The questions contained within this Profile Form are non-objectionable and shall be answered without objection. By answering this Profile Form, you are not waiving the attorney work product and/or attorney client privileges. Similarly, by disclosing the identity of consultants, such consultants may remain non-testifying experts and are subject to all protections afforded by law. Please print legibly or type your responses in English.

I.   **CONTACT INFORMATION OF DEFENDANT MANUFACTURER COMPLETING THIS PROFILE FORM**

    A.   Manufacturer Name: Taishan Gypsum Co. Ltd. ("Taishan")[1]

    B.   Address: Dawenkou, Daiyue Distirct, Shandong Province, P.R. China

    C.   Phone number: (0086) (538) 8811449

    D.   Email address: taihe@public.taptt.sd.cn

    E.   Web site: www.taihegroup.com

    F.   President or CEO: None.  Jia Tongchun is the Legal Representative and Chairman of the Board of Taishan

    G.   Headquarters if Foreign: Taian, China

    H.   Address of USA Headquarters: None

    I.   Name of supervisor at USA Headquarters: None

    J.   Principal Place of Business in USA: None

---

[1] Taishan is responding to Defendant Manufacturers' Profile Form in these multidistrict proceedings without waiving any of its rights to object, in these or in any other proceedings, to: (i) the relevance or admissibility of any information disclosed on this form or its attachments; (ii) the sufficiency of process or the service of process upon it; (iii) the jurisdiction of this or any other court over it; and/or (iv) any discovery that may be served upon it on any grounds including, without limitation, that such discovery violates the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters.

K.   List of all offices or locations in USA where entity has done business at any time in 2001 through 2009

   **Taishan has never had an office in the US or otherwise operated out of any location in the US.**

L.   Name of Manager at each office or location identified in I(J) above **Not applicable**

(If you have identified more than one entity in I(A) above separately answer I(B)-1(L) for each entity.)

## II.   COUNSEL INFORMATION OF DEFENDANT MANUFACTURER

| | | | |
|---|---|---|---|
| A. | Name: | Joe Cyr<br>Frank Spano<br>Eric Statman<br>Matthew Galvin | Richard C. Stanley<br>Thomas P. Owen, Jr. |
| B. | Address: | HOGAN LOVELLS US LLP<br>875 3rd Avenue<br>New York, New York 10022 | STANLEY, REUTER, ROSS,<br>THORNTON & ALFORD, LLC<br>909 Poydras Street, Suite 2500<br>New Orleans, Louisiana 70112 |
| C. | Phone Number: | (212) 918-3000 | 504-523-1580 |
| D. | Fax Number: | (212) 918-3100 | 504-524-0069 |
| E. | E-Mail: | joe.cyr@hoganlovells.com<br>frank.spano@hoganlovells.com<br>eric.statman@hoganlovells.com<br>matthew.galvin@hoganlovells.com | rcs@stanleyreuter.com<br>tpo@stanleyreuter.cm |

## III.   CHINESE DRYWALL PRODUCT IDENTIFICATION AND CHAIN OF DISTRIBUTION

1.   Product Identification:

Name of Manufacturer(s)' drywall product:

**Taishan manufactured drywall to US dimensions on a made-to-order OEM basis on two isolated occasions for a U.S. purchaser, Venture Supply, Inc. ("Venture Supply").**

Identify any markings on the drywall product (e.g. lot number, batch number, serial number, color markings, UPC codes, etc.):

**The drywall was imprinted with the following marks: VENTURE SUPPLY INC. MFG: SHANDONG TAIHE, CHINA.   The drywall also had sealing tape on its edges with the marking "Venture Supply."**

List all trademarks applicable to the product:

**No Taishan trademarks were applicable to the drywall manufactured by Taishan and sold to Venture Supply.   Taishan is unaware whether Venture Supply or any other parties applied their own trademarks to drywall manufactured by Taishan.**

Is the drywall that is the subject of this litigation known or referred to, either by the public or only internally within your company, by any other names, brand names, titles, or designations? Provide a detailed list of all names, brand names, titles, and designations by which this drywall is known:

**In 2007, the company changed its name from Shandong Taihe Dongxin Co. to Taishan Gypsum Co. Ltd.   Accordingly to the best of Taishan's knowledge, drywall manufactured**

for Venture Supply was not known by any other names other than the product markings described above.

Is the drywall that is the subject of this litigation manufactured in any other types or versions? Please describe such other types and how they may be identified:

**With regards to drywall that was exported to the US, Taishan manufactured only standard drywall to US dimensions.**

Is the drywall that is the subject of this litigation sold by any other party under its own name? If so, provide a list of all parties selling your drywall under their names, and the brand names under which the drywall is sold:

**Taishan has no knowledge of the brand names under which Venture Supply may have resold it.**

2.      Shipment Information (identify the following for each shipment to, or for importation to, the United States):

| | |
|---|---|
| Exporter Name: | **Taishan sold the drywall to Venture Supply in China.  Venture Supply took title to the drywall in China and shipped the drywall to the United States.  However, Taishan referred to itself as the "exporter" for purposes of preparing tax invoices under Chinese tax law.** |
| Address of Exporter: | See I (B.) above |

**Date of Export:  2 / 24 / 2006**      (Month / Day / Year)

**Date of Export:  7 / 20 /2006**      (Month / Day / Year)

Name of all ports through which shipment was in transit: **Unknown**

Name of final port where shipment was offloaded:  **Taishan does not have knowledge of where the drywall purchased by Venture Supply was offloaded.  The drywall left the port in China on vessels bound for Norfolk, VA and Camden, NJ respectively.**

Date shipment was offloaded:  **Unknown**

| | |
|---|---|
| Amount of Drywall exported: | **The February 24, 2006 and July 20, 2006 shipments of drywall by Venture Supply to the United States contained 100,000 and 53,912 sheets of drywall respectively.** |
| Name of shipper: | Unknown |
| Address of shipper: | |
| Mode of Shipment: | **Venture Supply shipped the drywall to the U.S. by ocean-going freight.** |
| Name of vessel: | **The bills of lading for the February 24, 2006 and July 20, 2006 shipments indicate that the shipments were shipped aboard the Vessel Glykofiloussa and the Vessel Atlantic Fortune respectively.** |

3.      Importer Information (identify the following for each importer):

| | |
|---|---|
| Importer Name: | Venture Supply, Inc. |
| Address of Importer: | 1140 Azalea Garden Road, Norfolk, VA 23502-5612 |

Date of Import:   Unknown

Amount of Drywall imported:

**As described above, the February 24, 2006 and July 20, 2006 shipments of drywall contained 100,000 and 53,912 sheets of drywall respectively.**

4.      Distributor in USA:

To the extent you are aware of the distributor or drywall contractor/installer, for any shipments of your product to the USA, provide such information:

**Venture Supply, Inc.**

5.      Are you aware of any brokers or intermediary agents involved in the supply chain who purchased or took possession of your product, either directly from you or from a successor in distribution? If so, identify such brokers or intermediary agents by name, address, and phone number, and provide any correspondence or other documentation in your possession concerning such brokers or agents.

**Tobin Trading, Inc. executed the contracts for both sales of drywall on behalf of Venture Supply.**

6.      If any of your Chinese drywall was stored at any time by or for you at any location, identify the following:

Name of entity providing storage:          **Taishan stored the drywall for a limited time at its facility prior to inspection and acceptance by Venture Supply's agent in China.  Taishan has no knowledge regarding any further storage of the drywall after Taishan delivered it to Venture Supply in China.**

Address of entity providing storage:       **See I (B.) above**

**Dates product was stored:  Taishan stored Venture Supply's second order of drywall at its facility between February 2006 and June 2006 (dates are approximate).**

_____/_____/_____ (Month / Day / Year) to _____/_____/_____  (Month / Day / Year)

Quantity of product stored:

Price paid for storage:

Name of contact person at storage facility:

Phone number:

Email address:

List any complaints made or received regarding storage of the product:

7.      Describe all agreements existing between the manufacturer and: exporters; importers; shippers; and distributors, relating to each shipment of Chinese drywall to, or for importation to, the United States.

**Taishan sold drywall to Venture Supply pursuant to two written agreements that are already in the record in *Germano, et al. v. Taishan Gypsum Co., Ltd.,* et al., Case No. 09-6687. The agreements were negotiated and executed in China and provided for dispute resolution in China.**

8. For all shipments or deliveries of Chinese Drywall into, or for importation into, the US from 2001-2009, please indicate whether you provided any of the following

    a.   Express warranties;    **The Venture Supply agreements described the quantity of drywall, the price, the dimensions and the Chinese GBT specification applicable to the order.**

    b.   Product specifications;    China GB/T9775-1999.

    c.   Product information and/or instructions for storage or use

**In the normal course of business, a package of drywall manufactured by Taishan contained the following warnings:**

**(1) Pickup/do not turn over**

**(2) Breakable**

**(3) Avoid rain/moisture**

## IV.   **INSURANCE**

   A.   Identify all policies of insurance, including all CGL, Product Liability, Builder's Risk, D&O and Excess insurance policies relating to claims.

      1.   For each policy, identify the following:

         Insurer: **Taishan has no insurance policies that relate to the Shipments.**

         Dates policy in effect:

         ____/____/____ (Month / Day / Year) to ____/____/(Month / Day / Year)

         Policy Number:

         Type of Policy:

         Insurance Agent

         Policy Coverage Limits

         Produce a copy of the Declaration page, exclusions and policy of insurance.

   B.   Identify all claims you have made on any insurance policies relating to the manufacture or shipment of products identified in Section V above.

      1.   For each claim please provide the following:

         Date: ____/____/____ (Month / Day / Year)

         Insurer:

         Description of claim:

         Insurer's response to claim:

         If in litigation:

         Caption of Case:

         Name and address of attorneys involved:

10/10/13   16:48   TSG   0538-8811999                    p.06

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 66 of 647
Case 2:09-md-02047-EEF-MBN Document 20-1 Entered on FLSD Docket 08/13/2019 Page 14 of 595

_____
_____
_____
_____

Insurance carriers involved:

_____
_____
_____
_____

## CERTIFICATION

    I declare under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746 that all information provided in this Defendant Manufacturers' Profile Form is true and correct to the best of my knowledge, and that I have supplied all of the documents requested in this declaration, to the extent that such documents are in my possession, custody or control.

_____  _____  _2010. 10. 13_
Signature                 Print Name                Date

# Tab #28

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL | : | MDL No. 2047 |
| PRODUCTS LIABILITY LITIGATION | : | Section L |
| | : | |
| | : | |
| _____ | : | JUDGE FALLON |
| This Document Relates to | : | MAG. JUDGE WILKINSON |
| ALL CASES | : | |

## TAI'AN TAISHAN PLASTERBOARD CO. LTD. MANUFACTURER PROFILE FORM

All Defendant Drywall Manufacturers must complete and submit this Defendant Manufacturers' Profile Form. Each Defendant Drywall Manufacturer must complete and sign a Defendant Manufacturers' Profile Form for all shipments or deliveries of Chinese Drywall into, or for importation into, the US from 2001 through 2009. Each Defendant Drywall Manufacturer must complete and sign a separate Exhibit A for any individual named Plaintiff with an action pending in Federal Court. If additional knowledge becomes known after completion, this Defendant Manufacturers' Profile Form must be supplemented. If additional space is needed to answer any questions or complete your responses, additional pages may be attached. In addition, if any attachments or documents are provided in response to any question, please identify the specific question within this Defendant Manufacturers' Profile Form that relates to the specific attachment or document.

The questions contained within this Profile Form are non-objectionable and shall be answered without objection. By answering this Profile Form, you are not waiving the attorney work product and/or attorney client privileges. Similarly, by disclosing the identity of consultants, such consultants may remain non-testifying experts and are subject to all protections afforded by law. Please print legibly or type your responses in English.

I.  **CONTACT INFORMATION OF DEFENDANT MANUFACTURER COMPLETING THIS PROFILE FORM**

    A.    Manufacturer Name: **Tai'an Taishan Plasterboard Co. Ltd. ("TTP")**[1]

    B.    Address: **Houzhou Villiage, Dawenkou, Daiyue District, Taian, Shandong Province, P.R. China**

    C.    Phone number: **(0086) (538) 8811966**

    D.    Email address:

    E.    Web site:

    F.    President or CEO: **None. Song Qinghai was the Plant Manager for TTP.**

    G.    Headquarters if Foreign: **Taian, China**

    H.    Address of USA Headquarters: **None**

    I.    Name of supervisor at USA Headquarters: **None**

    J.    Principal Place of Business in USA: **None**

---

[1] **TTP is responding to Defendant Manufacturers' Profile Form without waiving any of its rights to object, in these or in any other proceedings, to: (i) The relevance or admissibility of any information disclosed on this form or its attachments; (ii) the sufficiency of process or the service of process upon it; (iii) the jurisdiction of this or any other court over it; and/or (iv) any discovery that may be served upon it on any grounds including, without limitation, that such discovery violates the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters.**

K.    List of all offices or locations in USA where entity has done business at any time in 2001 through 2009.

**TTP has never had an office in the US or otherwise operated out of any location in the US.**

L.    Name of Manager at each office or location identified in I(J) above **Not applicable**

(If you have identified more than one entity in I(A) above separately answer I(B)-1(L) for each entity.)

## II.    COUNSEL INFORMATION OF DEFENDANT MANUFACTURER

| | | | |
|---|---|---|---|
| A. | Name: | **Joe Cyr**<br>**Frank Spano**<br>**Eric Statman**<br>**Matthew Galvin** | **Richard C. Stanley**<br>**Thomas P. Owen, Jr.** |
| B. | Address: | **HOGAN LOVELLS US LLP**<br>**875 3rd Avenue**<br>**New York, New York 10022** | **STANLEY, REUTER, ROSS,**<br>**THORNTON & ALFORD, LLC**<br>**909 Poydras Street, Suite 2500**<br>**New Orleans, Louisiana 70112** |
| C. | Phone Number: | **(212) 918-3000** | **504-523-1580** |
| D. | Fax Number: | **(212) 918-3100** | **504-524-0069** |
| E. | E-Mail: | **joe.cyr@hoganlovells.com**<br>**frank.spano@hoganlovells.com**<br>**eric.statman@hoganlovells.com**<br>**matthew.galvin@hoganlovells.com** | **rcs@stanleyreuter.com**<br>**tpo@stanleyreuter.em** |

## III.    CHINESE DRYWALL PRODUCT IDENTIFICATION AND CHAIN OF DISTRIBUTION

1.    Product Identification:

Name of Manufacturer(s)' drywall product:

**TTP manufactured drywall to US dimensions on a made-to-order OEM basis and sold the drywall exclusively in China. Each such sale is identified on the Chart attached hereto as Exhibit A.**

Identify any markings on the drywall product (e.g. lot number, batch number, serial number, color markings, UPC codes, etc.):

**TTP printed markings on the drywall in accordance with the purchasers' instructions. All such markings are set forth on Exhibit A.**

List all trademarks applicable to the product:

**TTP is unaware whether any other parties applied their own trademarks to drywall manufactured by TTP.**

Is the drywall that is the subject of this litigation known or referred to, either by the public or only internally within your company, by any other names, brand names, titles, or designations? Provide a detailed list of all names, brand names, titles, and designations by which this drywall is known:

**As set forth above, certain purchasers requested that the drywall bear particular markings. Those markings are described to the best of TTP's knowledge on Exhibit A on the column labeled "Product Markings." Additionally, certain purchasers requested that the tape attached to the edges of the drywall bear certain markings. Those markings are described to**

the best of TTP's knowledge on Exhibit A on the column labeled "Edge Sealing Tape Markings."

Is the drywall that is the subject of this litigation manufactured in any other types or versions? Please describe such other types and how they may be identified:

**With regards to drywall that was exported to the US, TTP manufactured only standard drywall to US dimensions.**

Is the drywall that is the subject of this litigation sold by any other party under its own name? If so, provide a list of all parties selling your drywall under their names, and the brand names under which the drywall is sold:

**TTP has no knowledge of the brand names under which the purchasers of its drywall may have resold it.**

2.    Shipment Information (identify the following for each shipment to, or for importation to, the United States):

| | |
|---|---|
| Exporter Name: | **TTP sold drywall to purchasers, which were primarily Chinese trading companies, exclusively in China. The purchasers took title to the drywall in China and the drywall was then shipped to the United States. However, when TTP made sales to US-based distributors in China, TTP referred to itself as the "exporter" for purposes of preparing tax invoices under Chinese tax law. In these instances, TTP is listed in the "Exporter" column on Exhibit A.** |
| Address of Exporter: | **Where known, the address of the purchaser of TTP's drywall in China, which may have arranged for the shipment of the drywall to the United States, is provided on Exhibit A.** |
| Date of Export: | **Approximate dates for each sale of drywall by TTP in China are set forth on Exhibit A.** |

Name of all ports through which shipment was in transit: **Unknown**

Name of final port where shipment was offloaded:  **Where TTP has information about the stated destinations of certain shipments of drywall, such information is provided on Exhibit A.**

Date shipment was offloaded: **Unknown**

| | |
|---|---|
| Amount of Drywall exported: | **The quantity of drywall for each TTP sale of drywall in China is set forth at Exhibit A.** |
| Name of shipper: | **Unknown** |
| Address of shipper: | **Unknown** |
| Mode of Shipment: | **Unknown** |
| Name of vessel: | **Unknown** |

3.    Importer Information (identify the following for each importer):

| | |
|---|---|
| Importer Name: | **Where known, the party that imported the drywall that TTP sold in China is identified in the "Importer" column on Exhibit A.** |

Address of Importer:

| |
|---|
| **Where known, the addresses of the party that imported the drywall that TTP sold in China are provided on Exhibit A.** |

Date of Import: **Unknown**

Amount of Drywall imported:

**The quantity of drywall TTP sold to each purchaser in China is set forth at Exhibit A.**

4.   Distributor in USA:

To the extent you are aware of the distributor or drywall contractor/installer, for any shipments of your product to the USA, provide such information:

**TTP does not have knowledge regarding whether or to what extent the purchasers of its drywall in China identified on Exhibit A were involved in the distribution or installation of that drywall in the USA. Moreover, TTP does not have knowledge regarding other companies or individuals who may have distributed or installed that drywall in the USA.**

5.   Are you aware of any brokers or intermediary agents involved in the supply chain who purchased or took possession of your product, either directly from you or from a successor in distribution? If so, identify such brokers or intermediary agents by name, address, and phone number, and provide any correspondence or other documentation in your possession concerning such brokers or agents.

**TTP does not have knowledge regarding whether any of the purchasers of its drywall in China identified on Exhibit A served as brokers or intermediary agents involved in the supply chain for the drywall. Moreover, TTP does not have knowledge of other companies or individuals who may served as brokers or intermediary agents with respect to the drywall.**

6.   If any of your Chinese drywall was stored at any time by or for you at any location, identify the following:

Name of entity providing storage:   **Generally, TTP stored drywall for a limited time at its facility prior to delivery to the purchaser in China. TTP has no knowledge concerning any further storage of drywall after TTP delivered it to the purchaser in China.**

Address of entity providing storage:

Dates product was stored:

____/____/____ (Month / Day / Year) to ____/____/____   (Month / Day / Year)

Quantity of product stored:

Price paid for storage:

Name of contact person at storage facility:

Phone number:

Email address:

List any complaints made or received regarding storage of the product:

7.   Describe all agreements existing between the manufacturer and: exporters; importers; shippers; and distributors, relating to each shipment of Chinese drywall to, or for importation to, the United States.

If in litigation:
_____

Caption of Case:
_____

Name and address of attorneys involved:

_____
_____
_____

Insurance carriers involved:

_____
_____
_____

### CERTIFICATION

    I declare under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746 that all information provided in this Defendant Manufacturers' Profile Form is true and correct to the best of my knowledge, and that I have supplied all of the documents requested in this declaration, to the extent that such documents are in my possession, custody or control.

Signature  朱庆海          Print Name  朱庆海          Date  2010. 10. 14

# Tab #29

**EXHIBIT A to the Defendant Manufacturers' Profile Form**

| No. | Date (Y/M/D) | Exporter | Importer | Quantity (approx. number of sheets) | Amount | Product Markings | Edge Sealing Tape Markings | Additional Notes |
|-----|------|----------|----------|------|--------|------------------|----------------------------|------------------|
| 1 | 2006-3-13 | Shandong Oriental International Trading Corp. | Unknown | 82,000 | ¥ 2,052,005 | Made in China Cr | White edge sealing tape (without words printed thereon) | |
| 2 | 2006-3-13 | Shandong Oriental International Trading Corp., Ltd. | Unknown | 109,300 | ¥ 2,736,007 | | | |
| 3 | 2006-3-13 | Shandong Oriental International Trading Corp., Ltd. | Unknown | 4,500 | ¥112,999 | | | |
| 4 | 2006-3-21 | Lianyungang Yuntai International Trade Co., Ltd. | Unknown | 3,500 | ¥87,518 | | | |
| 5 | 2006-3-21 | Lianyungang Yuntai International Trade Co., Ltd. | Unknown | 3000 | ¥75,015 | | | |
| 6 | 2006-4-22 | Shanghai Yuyuan Market Import & Export Co., Ltd. | Unknown | 95,740 | ¥2,516,384 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | White edge sealing tape (without words printed thereon) | Shanghai Yuyuan Market Import & Export Co. Ltd. last known address is: 19 Wen Chuan Rd. Shanghai, China. |
| 7 | 2006-4-22 | Shanghai Yuyuan Market Import & Export Co., Ltd. | Unknown | 4,190 | ¥110,118 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | White edge sealing tape (without words printed thereon) | The last known address of Shanghai Yuyuan Market Import & Export Co. Ltd. is listed at row 6 above. |
| 8 | 2006-4-22 | Shanghai Yuyuan Market Import & Export Co., Ltd. | Unknown | 41,625 | ¥ 1,094,080 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | White edge sealing tape (without words printed thereon) | The last known address of Shanghai Yuyuan Market Import & Export Co. Ltd. is listed at row 6 above. |

**EXHIBIT A to the Defendant Manufacturers' Profile Form**

- 2 -

| No. | Date (Y/M/D) | Exporter | Importer | Quantity (approx. number of sheets) | Amount | Product Markings | Edge Sealing Tape Markings | Additional Notes |
|---|---|---|---|---|---|---|---|---|
| 9 | 2006-4-23 | Orient International Holding Shanghai Foreign Trade Co., Ltd. | Unknown | 3,360 | ¥ 87,024 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 10 | 2006-4-23 | Orient International Holding Shanghai Foreign Trade Co., Ltd. | Unknown | 10,080 | ¥ 173,981 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 11 | 2006-4-26 | Qingdao Aoni Decoration Board and Materials Co., Ltd. | Unknown | 460 | ¥ 11,502 | | White edge sealing tape (without words printed thereon) | |
| 12 | 2006-4-28 | Shanghai Yuyuan Market Import & Export Co., Ltd. | Unknown | 1,300 | ¥ 34,190 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | White edge sealing tape (without words printed thereon) | The last known address of Shanghai Yuyuan Market Import & Export Co. Ltd. is listed at row 6 above. |
| 13 | 2006-4-28 | Shanghai Yuyuan Market Import & Export Co., Ltd. | Unknown | 335,500 | ¥ 8,819,442 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | White edge sealing tape (without words printed thereon) | The last known address of Shanghai Yuyuan Market Import & Export Co. Ltd. is listed at row 6 above. |
| 14 | 2006-4-28 | Shanghai Yuyuan Market Import & Export Co., Ltd. | Unknown | 4,080 | ¥ 107,225 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | White edge sealing tape (without words printed thereon) | The last known address of Shanghai Yuyuan Market Import & Export Co. Ltd. is listed at row 6 above. |

EXHIBIT A to the Defendant Manufacturers' Profile Form

- 3 -

| No. | Date (Y/M/D) | Exporter | Importer | Quantity (approx. number of sheets) | Amount | Product Markings | Edge Sealing Tape Markings | Additional Notes |
|---|---|---|---|---|---|---|---|---|
| 15 | 2006-4-28 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 44,125 | ¥ 1,062,810 | DRYWALL 4feetX12feetX1/2inch | White edge sealing tape (without words printed thereon) | Beijing Building Materials Import & Export Co., Ltd.'s last known address is:<br><br>Jin Yu Mansion Room 2013 No.129 Xuan Wu Men W. Road, Beijing, China. |
| 16 | 2006-5-9 | Taian Taigao Trading Co., Ltd. | Unknown | 19,920 | ¥ 466,344 | | | Taian Taigao Trading Co.,Ltd.'s last known address is:<br><br>No.157 Dongyue Road, Taian, China. |
| 17 | 2006-5-12 | Nantong Economic and Technological Development Zone Corporation | Unknown | 3,840 | ¥ 116,796 | | | |
| 18 | 2006-5-14 | Taian Taigao Trading Co., Ltd. | Unknown | 14,250 | ¥ 333,923 | | | Taian Taigao Trading Co.,Ltd.'s last known address is listed at row 16 above. |
| 19 | 2006-5-15 | Taian Taigao Trading Co., Ltd. | Unknown | 76,085 | ¥ 1,781,150 | | | Taian Taigao Trading Co.,Ltd.'s last known address is listed at row 16 above. |
| 20 | 2006-5-24 | Taian Taigao Trading Co., Ltd. | Unknown | 16,550 | ¥ 2,309,688 | | | Taian Taigao Trading Co.,Ltd.'s last known address is listed at row 16 above. |

**EXHIBIT A to the Defendant Manufacturers' Profile Form**

- 4 -

| No. | Date (Y/M/D) | Exporter | Importer | Quantity (approx. number of sheets) | Amount | Product Markings | Edge Sealing Tape Markings | Additional Notes |
|---|---|---|---|---|---|---|---|---|
| 21 | 2006-5-26 | Taian Taigao Trading Co., Ltd. | Unknown | 67,825 | ¥ 387,345 | | | Taian Taigao Trading Co.,Ltd.'s last known address is listed at row 16 above. |
| 22 | 2006-5-15 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 32,850 | ¥ 880,037 | DRYWALL 4feetX12feetX1/2inch | White edge sealing tape (without words printed thereon) | Beijing Building Materials Import & Export Co., Ltd.'s last known address is: Jin Yu Mansion Room 2013  No.129 Xuan Wu Men W. Road, Beijing, China. |
| 23 | 2006-5-15 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,110 | ¥ 110,165 | DRYWALL 4feetX12feetX1/2inch | White edge sealing tape (without words printed thereon) | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |
| 24 | 2006-5-15 | Qingdao Kanghong Import and Export Co., Ltd. | Unknown | 7,380 | ¥ 95,645 | | | |
| 25 | 2006-5-15 | Qingdao Kanghong Import and Export Co., Ltd. | Unknown | 7,380 | ¥ 95,645 | | | |
| 26 | 2006-5-18 | Zhejiang Provincial Second Light Industry Enterprises Group Imp. & Exp. Co., Ltd. | Unknown | 4,600 | ¥ 111,461 | | | |

**EXHIBIT A to the Defendant Manufacturers' Profile Form**

- 5 -

| No. | Date (Y/M/D) | Exporter | Importer | Quantity (approx. number of sheets) | Amount | Product Markings | Edge Sealing Tape Markings | Additional Notes |
|---|---|---|---|---|---|---|---|---|
| 27 | 2006-5-19 | Lianyungang Yuntai International Trade Co., Ltd. | Unknown | 3,500 | ¥ 87,518 | | | |
| 28 | 2006-5-19 | Lianyungang Yuntai International Trade Co., Ltd. | Unknown | 2,925 | ¥ 73,015 | | | |
| 29 | 2006-5-22 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 3,780 | ¥ 89,926 | DRYWALL 4feetX12feetX1/2inch | White edge sealing tape (without words printed thereon) | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above |
| 30 | 2006-5-22 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 3,780 | ¥ 89,926 | DRYWALL 4feetX12feetX1/2inch | White edge sealing tape (without words printed thereon) | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above |
| 31 | 2006-5-22 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 2,525 | ¥ 60,732 | DRYWALL 4feetX12feetX1/2inch | White edge sealing tape (without words printed thereon) | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above |
| 32 | 2006-5-22 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,675 | ¥ 111,337 | DRYWALL 4feetX12feetX1/2inch | White edge sealing tape (without words printed thereon) | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above |

EXHIBIT A to the Defendant Manufacturers' Profile Form

- 6 -

| No. | Date (Y/M/D) | Exporter | Importer | Quantity (approx. number of sheets) | Amount | Product Markings | Edge Sealing Tape Markings | Additional Notes |
|---|---|---|---|---|---|---|---|---|
| 33 | 2006-5-22 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,675 | ¥ 111,337 | DRYWALL 4feetX12feetX1/2inch | White edge sealing tape (without words [printed thereon]) | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above |
| 34 | 2006-5-22 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,675 | ¥ 111,337 | DRYWALL 4feetX12feetX1/2inch | White edge sealing tape (without words printed thereon) | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above |
| 35 | 2006-5-22 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,675 | ¥ 111,337 | DRYWALL 4feetX12feetX1/2inch | White edge sealing tape (without words printed thereon) | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above |
| 36 | 2006-5-22 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,675 | ¥ 111,337 | DRYWALL 4feetX12feetX1/2inch | White edge sealing tape (without words printed thereon) | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above |
| 37 | 2006-5-22 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,675 | ¥ 111,337 | DRYWALL 4feetX12feetX1/2inch | White edge sealing tape (without words printed thereon) | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above |

EXHIBIT A to the Defendant Manufacturers' Profile Form

- 7 -

| No. | Date (Y/M/D) | Exporter | Importer | Quantity (approx. number of sheets) | Amount | Product Markings | Edge Sealing Tape Markings | Additional Notes |
|---|---|---|---|---|---|---|---|---|
| 38 | 2006-5-22 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,675 | ¥ 111,337 | DRYWALL 4feetX12feetX1/2inch | White edge sealing tape (without words printed thereon) | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above |
| 39 | 2006-5-22 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,675 | ¥ 111,337 | DRYWALL 4feetX12feetX1/2inch | White edge sealing tape (without words printed thereon) | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above |
| 40 | 2006-5-22 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,675 | ¥ 111,337 | DRYWALL 4feetX12feetX1/2inch | White edge sealing tape (without words printed thereon) | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above |
| 41 | 2006-5-22 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,675 | ¥ 111,337 | DRYWALL 4feetX12feetX1/2inch | White edge sealing tape (without words printed thereon) | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above |
| 42 | 2006-5-22 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,125 | ¥ 102,350 | DRYWALL 4feetX12feetX1/2inch | White edge sealing tape (without words printed thereon) | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above |

EXHIBIT A to the Defendant Manufacturers' Profile Form

- 8 -

| No. | Date (Y/M/D) | Exporter | Importer | Quantity (approx. number of sheets) | Amount | Product Markings | Edge Sealing Tape Markings | Additional Notes |
|---|---|---|---|---|---|---|---|---|
| 43 | 2006-5-22 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,125 | ¥ 102,350 | DRYWALL 4feetX12feetX1/2inch | White edge sealing tape (without words printed thereon) | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above |
| 44 | 2006-5-22 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,125 | ¥ 102,350 | DRYWALL 4feetX12feetX1/2inch | White edge sealing tape (without words printed thereon) | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above |
| 45 | 2006-5-22 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,125 | ¥ 102,350 | DRYWALL 4feetX12feetX1/2inch | White edge sealing tape (without words printed thereon) | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above |
| 46 | 2006-5-22 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,125 | ¥ 102,350 | DRYWALL 4feetX12feetX1/2inch | White edge sealing tape (without words printed thereon) | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above |
| 47 | 2006-5-22 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,125 | ¥ 102,350 | DRYWALL 4feetX12feetX1/2inch | White edge sealing tape (without words printed thereon) | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above |

**EXHIBIT A to the Defendant Manufacturers' Profile Form**

- 9 -

| No. | Date (Y/M/D) | Exporter | Importer | Quantity (approx. number of sheets) | Amount | Product Markings | Edge Sealing Tape Markings | Additional Notes |
|-----|------|----------|----------|-----------|--------|------------------|-------------|-------|
| 48 | 2006-5-22 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,125 | ¥ 102,350 | DRYWALL 4feetX12feetX1/2inch | White edge sealing tape (without words printed thereon) | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above |
| 49 | 2006-5-22 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,125 | ¥ 102,350 | DRYWALL 4feetX12feetX1/2inch | White edge sealing tape (without words [printed thereon]) | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above |
| 50 | 2006-5-22 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,125 | ¥ 102,350 | DRYWALL 4feetX12feetX1/2inch | White edge sealing tape (without words printed thereon) | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above |
| 51 | 2006-5-22 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 960 | ¥ 15,859 | DRYWALL 4feetX12feetX1/2inch | White edge sealing tape (without words printed thereon) | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above |
| 52 | 2006-5-22 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 1,700 | ¥40,681 | DRYWALL 4feetX12feetX1/2inch | White edge sealing tape (without words printed thereon) | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above |

**EXHIBIT A to the Defendant Manufacturers' Profile Form**

- 10 -

| No. | Date (Y/M/D) | Exporter | Importer | Quantity (approx. number of sheets) | Amount | Product Markings | Edge Sealing Tape Markings | Additional Notes |
|---|---|---|---|---|---|---|---|---|
| 53 | 2006-5-24 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,175 | ¥111,982 | DRYWALL 4feetX12feetX1/2inch | White edge sealing tape (without words printed thereon) | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above |
| 54 | 2006-5-24 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,175 | ¥111,982 | DRYWALL 4feetX12feetX1/2inch | White edge sealing tape (without words printed thereon) | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above |
| 55 | 2006-5-24 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,175 | ¥111,982 | DRYWALL 4feetX12feetX1/2inch | White edge sealing tape (without words printed thereon) | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above |
| 56 | 2006-5-24 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,300 | ¥114,934 | DRYWALL 4feetX12feetX1/2inch | White edge sealing tape (without words printed thereon) | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above |
| 57 | 2006-5-24 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,300 | ¥114,934 | DRYWALL 4feetX12feetX1/2inch | White edge sealing tape (without words printed thereon) | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |

EXHIBIT A to the Defendant Manufacturers' Profile Form

- 11 -

| No. | Date (Y/M/D) | Exporter | Importer | Quantity (approx. number of sheets) | Amount | Product Markings | Edge Sealing Tape Markings | Additional Notes |
|---|---|---|---|---|---|---|---|---|
| 58 | 2006-5-24 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,300 | ¥114,934 | DRYWALL 4feetX12feetX1/2inch | White edge sealing tape (without words printed thereon) | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |
| 59 | 2006-5-24 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,300 | ¥114,934 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |
| 60 | 2006-5-26 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 3,000 | ¥80,370 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |
| 61 | 2006-5-26 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 2,950 | ¥78,763 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |
| 62 | 2006-5-28 | Qingdao Kanghong Import and Export Co., Ltd. | Unknown | 6,000 | ¥77,760 | | White edge sealing tape (without words printed thereon) | |
| 63 | 2006-5-28 | Qingdao Kanghong Import and Export Co., Ltd. | Unknown | 1,380 | ¥17,885 | | White edge sealing tape (without words printed thereon) | |

**EXHIBIT A to the Defendant Manufacturers' Profile Form**

- 12 -

| No. | Date (Y/M/D) | Exporter | Importer | Quantity (approx. number of sheets) | Amount | Product Markings | Edge Sealing Tape Markings | Additional Notes |
|---|---|---|---|---|---|---|---|---|
| 64 | 2006-5-29 | Orient International Holding Shanghai Foreign Trade Co., Ltd. | Unknown | 3,025 | ¥81,564 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 65 | 2006-5-29 | Orient International Holding Shanghai Foreign Trade Co., Ltd. | Unknown | 330 | ¥81,564 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 66 | 2006-5-29 | Orient International Holding Shanghai Foreign Trade Co., Ltd. | Unknown | 6,725 | ¥97,877 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 67 | 2006-6-2 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 3,625 | ¥89,704 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |
| 68 | 2006-6-2 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 3,850 | ¥63,439 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |
| 69 | 2006-6-2 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,200 | ¥104,076 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |

EXHIBIT A to the Defendant Manufacturers' Profile Form

- 13 -

| No. | Date (Y/M/D) | Exporter | Importer | Quantity (approx. number of sheets) | Amount | Product Markings | Edge Sealing Tape Markings | Additional Notes |
|---|---|---|---|---|---|---|---|---|
| 70 | 2006-6-2 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,200 | ¥104,076 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |
| 71 | 2006-6-2 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,200 | ¥104,076 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |
| 72 | 2006-6-2 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,200 | ¥104,076 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |
| 73 | 2006-6-2 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,200 | ¥104,076 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |
| 74 | 2006-6-2 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,200 | ¥104,076 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |

**EXHIBIT A to the Defendant Manufacturers' Profile Form**

- 14 -

| No. | Date (Y/M/D) | Exporter | Importer | Quantity (approx. number of sheets) | Amount | Product Markings | Edge Sealing Tape Markings | Additional Notes |
|---|---|---|---|---|---|---|---|---|
| 75 | 2006-6-2 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,200 | ¥104,076 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |
| 76 | 2006-6-2 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,200 | ¥104,076 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |
| 77 | 2006-6-2 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,200 | ¥104,076 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |
| 78 | 2006-6-2 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,200 | ¥104,076 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |
| 79 | 2006-6-2 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,200 | ¥104,076 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 88 of 647
Case 2:11-cv-22408-MSC Document 27-9 Entered on FLSD Docket 03/13/2019 Page 36 of
595

**EXHIBIT A to the Defendant Manufacturers' Profile Form**

- 15 -

| No. | Date (Y/M/D) | Exporter | Importer | Quantity (approx. number of sheets) | Amount | Product Markings | Edge Sealing Tape Markings | Additional Notes |
|---|---|---|---|---|---|---|---|---|
| 80 | 2006-6-2 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,200 | ¥104,076 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |
| 81 | 2006-6-2 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,200 | ¥104,076 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |
| 82 | 2006-6-2 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,200 | ¥104,076 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |
| 83 | 2006-6-2 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,200 | ¥104,076 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |
| 84 | 2006-6-2 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,200 | ¥104,076 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |

**EXHIBIT A to the Defendant Manufacturers' Profile Form**

- 16 -

| No. | Date (Y/M/D) | Exporter | Importer | Quantity (approx. number of sheets) | Amount | Product Markings | Edge Sealing Tape Markings | Additional Notes |
|---|---|---|---|---|---|---|---|---|
| 85 | 2006-6-2 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,200 | ¥104,076 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |
| 86 | 2006-6-2 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,200 | ¥104,076 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above |
| 87 | 2006-6-2 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,200 | ¥104,076 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above |
| 88 | 2006-6-2 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,200 | ¥104,076 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above |
| 89 | 2006-6-2 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,200 | ¥104,076 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |

**EXHIBIT A to the Defendant Manufacturers' Profile Form**

- 17 -

| No. | Date (Y/M/D) | Exporter | Importer | Quantity (approx. number of sheets) | Amount | Product Markings | Edge Sealing Tape Markings | Additional Notes |
|---|---|---|---|---|---|---|---|---|
| 90 | 2006-6-2 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,200 | ¥104,076 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |
| 91 | 2006-6-2 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,200 | ¥104,076 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |
| 92 | 2006-6-10 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 3,775 | ¥89,926 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |
| 93 | 2006-6-11 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 2,025 | ¥34,934 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |
| 94 | 2006-6-13 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,500 | ¥116,505 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |

**EXHIBIT A to the Defendant Manufacturers' Profile Form**

- 18 -

| No. | Date (Y/M/D) | Exporter | Importer | Quantity (approx. number of sheets) | Amount | Product Markings | Edge Sealing Tape Markings | Additional Notes |
|-----|------|----------|----------|--------|--------|------------------|----------------------------|------------------|
| 95 | 2006-6-13 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,500 | ¥116,505 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |
| 96 | 2006-6-13 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,500 | ¥116,505 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |
| 97 | 2006-6-13 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,500 | ¥116,505 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |
| 98 | 2006-6-13 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,500 | ¥116,505 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |
| 99 | 2006-6-13 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,500 | ¥116,505 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |

EXHIBIT A to the Defendant Manufacturers' Profile Form

- 19 -

| No. | Date (Y/M/D) | Exporter | Importer | Quantity (approx. number of sheets) | Amount | Product Markings | Edge Sealing Tape Markings | Additional Notes |
|---|---|---|---|---|---|---|---|---|
| 100 | 2006-6-13 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,500 | ¥116,453 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |
| 101 | 2006-6-13 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 960 | ¥16,214 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |
| 102 | 2006-6-13 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 960 | ¥16,214 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |
| 103 | 2006-6-13 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,000 | ¥99,120 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |
| 104 | 2006-6-13 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,000 | ¥99,120 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 93 of
595
Case 1:11-cv-22408-MGC Document 27-3 Entered on FLSD Docket 08/15/2011 Page 41 of
595

EXHIBIT A to the Defendant Manufacturers' Profile Form

- 20 -

| No. | Date (Y/M/D) | Exporter | Importer | Quantity (approx. number of sheets) | Amount | Product Markings | Edge Sealing Tape Markings | Additional Notes |
|---|---|---|---|---|---|---|---|---|
| 105 | 2006-6-13 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,000 | ¥99,120 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |
| 106 | 2006-6-13 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4,000 | ¥99,120 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |
| 107 | 2006-6-13 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 3,800 | ¥94,164 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |
| 108 | 2006-6-13 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 2200 | ¥56,906 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |
| 109 | 2006-6-13 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4000 | ¥103,560 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 94 of 647
Case 1:11-cv-22408-MGC Document 27-3 Entered on FLSD Docket 08/15/2011 Page 42 of
595

EXHIBIT A to the Defendant Manufacturers' Profile Form

- 21 -

| No. | Date (Y/M/D) | Exporter | Importer | Quantity (approx. number of sheets) | Amount | Product Markings | Edge Sealing Tape Markings | Additional Notes |
|---|---|---|---|---|---|---|---|---|
| 110 | 2006-6-13 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4000 | ¥103,560 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |
| 111 | 2006-6-13 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4000 | ¥103,560 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |
| 112 | 2006-6-13 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 4000 | ¥103,560 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |
| 113 | 2006-6-13 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3300 | ¥85,470 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 114 | 2006-6-13 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3300 | ¥85,470 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 115 | 2006-6-21 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3300 | ¥85,470 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |

**EXHIBIT A to the Defendant Manufacturers' Profile Form**

- 22 -

| No. | Date (Y/M/D) | Exporter | Importer | Quantity (approx. number of sheets) | Amount | Product Markings | Edge Sealing Tape Markings | Additional Notes |
|-----|--------------|----------|----------|-------------------------------------|--------|------------------|----------------------------|------------------|
| 116 | 2006-6-24 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3300 | ¥85,470 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 117 | 2006-6-24 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3300 | ¥85,470 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 118 | 2006-6-25 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 3300 | ¥81,774 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |
| 119 | 2006-6-25 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 8,765 | ¥226,848 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |
| 120 | 2006-6-25 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3,800 | ¥66,278 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 121 | 2006-6-26 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 960 | ¥16,570 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |

**EXHIBIT A to the Defendant Manufacturers' Profile Form**

- 23 -

| No. | Date (Y/M/D) | Exporter | Importer | Quantity (approx. number of sheets) | Amount | Product Markings | Edge Sealing Tape Markings | Additional Notes |
|---|---|---|---|---|---|---|---|---|
| 122 | 2006-6-26 | Jiangsu Sainty International Economic & Technical Cooperation Co., Ltd. | Unknown | 550 | ¥14,176 | | | |
| 123 | 2006-6-26 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3,300 | ¥85,470 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 124 | 2006-6-26 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3,300 | ¥85,470 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 125 | 2006-6-27 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 1,350 | ¥34,900 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |
| 126 | 2006-6-27 | Beijing Building Materials Import & Export Co., Ltd. | Unknown | 675 | ¥16,702 | DRYWALL 4feetX12feetX1/2inch | Blue and white edge sealing tape: IMTGYPSUM | The last known address of Beijing Building Materials Import & Export Co., Ltd. is listed at row 22 above. |
| 127 | 2006-6-28 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 1,320 | ¥34,188 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |

**EXHIBIT A to the Defendant Manufacturers' Profile Form**

- 24 -

| No. | Date (Y/M/D) | Exporter | Importer | Quantity (approx. number of sheets) | Amount | Product Markings | Edge Sealing Tape Markings | Additional Notes |
|-----|--------------|----------|----------|-------------------------------------|--------|------------------|----------------------------|------------------|
| 128 | 2006-6-28 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3,300 | ¥85,470 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 129 | 2006-6-28 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3,300 | ¥85,470 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 130 | 2006-6-28 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 1980 | ¥51,282 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 131 | 2006-6-29 | Zibo International Economic and Technical Cooperation Corporation | Unknown | 985 | ¥25,484 | | White edge sealing tape (without words [printed thereon]) | |
| 132 | 2006-7-8 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3300 | ¥86,380 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 133 | 2006-7-8 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3300 | ¥86,380 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 134 | 2006-7-9 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3300 | ¥86,380 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |

**EXHIBIT A to the Defendant Manufacturers' Profile Form**

- 25 -

| No. | Date (Y/M/D) | Exporter | Importer | Quantity (approx. number of sheets) | Amount | Product Markings | Edge Sealing Tape Markings | Additional Notes |
|---|---|---|---|---|---|---|---|---|
| 135 | 2006-7-9 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3300 | ¥86,380 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 136 | 2006-7-9 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3300 | ¥86,380 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 137 | 2006-7-10 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3300 | ¥86,380 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 138 | 2006-7-10 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3300 | ¥86,380 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 139 | 2006-7-10 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3300 | ¥86,380 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 140 | 2006-7-13 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3300 | ¥84,895 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 141 | 2006-7-13 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3300 | ¥86,380 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 142 | 2006-7-14 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3300 | ¥84,895 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |

EXHIBIT A to the Defendant Manufacturers' Profile Form

- 26 -

| No. | Date (Y/M/D) | Exporter | Importer | Quantity (approx. number of sheets) | Amount | Product Markings | Edge Sealing Tape Markings | Additional Notes |
|---|---|---|---|---|---|---|---|---|
| 143 | 2006-7-21 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 760 | ¥20,122 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 144 | 2006-7-21 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3,640 | ¥61,771 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 145 | 2006-7-21 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 760 | ¥20,122 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 146 | 2006-7-21 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3,640 | ¥61,771 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 147 | 2006-7-22 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 760 | ¥20,122 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 148 | 2006-7-22 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3,640 | ¥61,771 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 149 | 2006-7-22 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 760 | ¥20,122 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 150 | 2006-7-22 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3,640 | ¥61,771 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |

EXHIBIT A to the Defendant Manufacturers' Profile Form

- 27 -

| No. | Date (Y/M/D) | Exporter | Importer | Quantity (approx. number of sheets) | Amount | Product Markings | Edge Sealing Tape Markings | Additional Notes |
|---|---|---|---|---|---|---|---|---|
| 151 | 2006-7-22 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 760 | ¥20,122 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 152 | 2006-7-22 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3,640 | ¥61,771 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 153 | 2006-7-24 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 760 | ¥20,122 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 154 | 2006-7-24 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3,640 | ¥61,771 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 155 | 2006-7-24 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 760 | ¥20,122 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 156 | 2006-7-24 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3,640 | ¥61,771 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 157 | 2006-7-25 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3,300 | ¥84,895 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 158 | 2006-7-25 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 760 | ¥20,122 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |

EXHIBIT A to the Defendant Manufacturers' Profile Form

- 28 -

| No. | Date (Y/M/D) | Exporter | Importer | Quantity (approx. number of sheets) | Amount | Product Markings | Edge Sealing Tape Markings | Additional Notes |
|---|---|---|---|---|---|---|---|---|
| 159 | 2006-7-25 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3,640 | ¥61,771 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 160 | 2006-7-25 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 760 | ¥20,122 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 161 | 2006-7-25 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3,640 | ¥61,771 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 162 | 2006-7-26 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3,300 | ¥84,895 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 163 | 2006-7-26 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3,300 | ¥84,895 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 164 | 2006-7-26 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3,300 | ¥84,895 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 165 | 2006-7-27 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3,300 | ¥84,895 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 166 | 2006-7-27 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 1,980 | ¥50,937 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |

EXHIBIT A to the Defendant Manufacturers' Profile Form

- 29 -

| No. | Date (Y/M/D) | Exporter | Importer | Quantity (approx. number of sheets) | Amount | Product Markings | Edge Sealing Tape Markings | Additional Notes |
|---|---|---|---|---|---|---|---|---|
| 167 | 2006-7-27 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 2,650 | ¥67,916 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 168 | 2006-7-28 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 760 | ¥20,122 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 169 | 2006-7-28 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3,640 | ¥61,771 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 170 | 2006-7-29 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 1,980 | ¥50,937 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 171 | 2006-7-29 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3,300 | ¥84,895 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 172 | 2006-7-30 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3,300 | ¥84,895 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 173 | 2006-7-30 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3,300 | ¥84,895 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 174 | 2006-7-31 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3,300 | ¥84,895 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |

EXHIBIT A to the Defendant Manufacturers' Profile Form

- 30 -

| No. | Date (Y/M/D) | Exporter | Importer | Quantity (approx. number of sheets) | Amount | Product Markings | Edge Sealing Tape Markings | Additional Notes |
|---|---|---|---|---|---|---|---|---|
| 175 | 2006-7-31 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3,300 | ¥84,895 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 176 | 2006-8-1 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3,300 | ¥84,895 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 177 | 2006-8-2 | TTP | Wood Nation | 13,200 | $55,440.00 | TAIAN TAISHAN PLASTERBOARD CO., GYPSUM DRYWALL PER ASTM C 1396 04 CONTACT: 813-994-6499 | Edge sealing tape: TTPC | The purchaser reportedly shipped the drywall to Tampa, USA.<br><br>Wood Nation's last known address was:<br><br>10740 Plantation Bay Drive Tampa, FL 33647. |
| 178 | 2006-8-2 | TTP | Triax Trading | 5,760 | $24,422.40 | | | |
| 179 | 2006-8-3 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3,640 | ¥61,771 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 180 | 2006-8-3 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 760 | ¥20,122 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 181 | 2006-8-3 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3,640 | ¥61,771 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |

**EXHIBIT A to the Defendant Manufacturers' Profile Form**

- 31 -

| No. | Date (Y/M/D) | Exporter | Importer | Quantity (approx. number of sheets) | Amount | Product Markings | Edge Sealing Tape Markings | Additional Notes |
|-----|------|----------|----------|------------------|--------|------------------|---------------------------|------------------|
| 182 | 2006-8-3 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 760 | ¥20,122 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 183 | 2006-8-8 | TTP | Wood Nation | 13,200 | $55,440.00 | TAIAN TAISHAN PLASTERBOARD CO., GYPSUM DRYWALL PER ASTM C 1396 04 CONTACT: 813-994-6499 | Edge sealing tape: TTPC | The purchaser reportedly shipped the drywall to Tampa, USA.[1]<br><br>Wood Nation's last known address is listed above at row 177. |
| 184 | 2006-8-15 | Shanghai Kaidun Development Co., Ltd. | Unknown | 950 | ¥16,402 | Mega Gypsum | White edge sealing tape (without words printed thereon) | |
| 185 | 2006-8-15 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3,300 | ¥84,895 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 186 | 2006-8-15 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3,300 | ¥84,895 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 187 | 2006-8-15 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3,300 | ¥84,895 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 188 | 2006-8-15 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3,300 | ¥84,895 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |

[1] All references to destinations is based upon a review of documents in TTP's possession. TTP has no first hand knowledge of the products' destination in fact.

EXHIBIT A to the Defendant Manufacturers' Profile Form

- 32 -

| No. | Date (Y/M/D) | Exporter | Importer | Quantity (approx. number of sheets) | Amount | Product Markings | Edge Sealing Tape Markings | Additional Notes |
|---|---|---|---|---|---|---|---|---|
| 189 | 2006-8-16 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 4,400 | ¥169,790 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 190 | 2006-8-17 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 1,940 | ¥49,417 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 191 | 2006-8-17 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 600 | ¥16,097 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 192 | 2006-8-17 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 725 | ¥12,354 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 193 | 2006-8-17 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 150 | ¥4,024 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 194 | 2006-8-17 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 600 | ¥16,097 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 195 | 2006-8-17 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 2,900 | ¥49,417 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 196 | 2006-8-17 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 725 | ¥12,354 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |

EXHIBIT A to the Defendant Manufacturers' Profile Form

- 33 -

| No. | Date (Y/M/D) | Exporter | Importer | Quantity (approx. number of sheets) | Amount | Product Markings | Edge Sealing Tape Markings | Additional Notes |
|---|---|---|---|---|---|---|---|---|
| 197 | 2006-8-17 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 150 | ¥4,024 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 198 | 2006-8-18 | Shanghai Yujin Industry Co., Ltd. | Unknown | 630 | ¥16,596 | | White edge sealing tape (without words [printed thereon]) | |
| 199 | 2006-8-18 | Hangzhou Great Import and Export Co., Ltd. | Unknown | 500 | ¥12,950 | | White edge sealing tape (without words [printed thereon]) | |
| 200 | 2006-8-18 | Hangzhou Great Import and Export Co., Ltd. | Unknown | 500 | ¥12,950 | | White edge sealing tape (without words [printed thereon]) | |
| 201 | 2006-8-18 | Shanghai Yujin Industry Co., Ltd. | Unknown | 630 | ¥16,596 | | White edge sealing tape (without words [printed thereon]) | |
| 202 | 2006-8-21 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3,640 | ¥61,771 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 203 | 2006-8-21 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 760 | ¥20,122 | "Taishan" edge sealing tape; laser code: MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 204 | 2006-8-21 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3,640 | ¥61,771 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 205 | 2006-8-21 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 760 | ¥20,122 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 107 of 647
Case 2:09-md-02047-MCE-EDL Document 27748 Entered on FLSD Docket 05/13/2019 Page 55 of
595

EXHIBIT A to the Defendant Manufacturers' Profile Form

- 34 -

| No. | Date (Y/M/D) | Exporter | Importer | Quantity (approx. number of sheets) | Amount | Product Markings | Edge Sealing Tape Markings | Additional Notes |
|---|---|---|---|---|---|---|---|---|
| 206 | 2006-8-22 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3,640 | ¥61,771 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 207 | 2006-8-22 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 760 | ¥20,122 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 208 | 2006-8-22 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3,640 | ¥61,771 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 209 | 2006-8-22 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 760 | ¥20,122 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 210 | 2006-8-23 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3,640 | ¥61,771 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 211 | 2006-8-23 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 760 | ¥20,122 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 212 | 2006-8-23 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 3,640 | ¥61,771 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |
| 213 | 2006-8-23 | SIIC Shanghai International Trade Group Pudong Co., Ltd. | Unknown | 760 | ¥20,122 | MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD | "Taishan" edge sealing tape | |

**EXHIBIT A to the Defendant Manufacturers' Profile Form**

- 35 -

| No. | Date (Y/M/D) | Exporter | Importer | Quantity (approx. number of sheets) | Amount | Product Markings | Edge Sealing Tape Markings | Additional Notes |
|-----|------|----------|----------|------|--------|------------------|----------------------------|------------------|
| 214 | 2006-9-8 | Shandong Yuanhua International Trading Co., Ltd. | Unknown | 2,600 | ¥71,630 | Made in China, ceiling | Edge sealing tape: CRESCENT CITY | |
| 215 | 2006-9-15 | TTP | Shenzhen Yongfeng Investment Co., Ltd. | 3,640 | $10,847.20 | Marathon Construction | Edge sealing tape/laser code: Marathon Construction | The purchaser reportedly shipped the drywall to New York. Shenzhen Yongfeng Investment. Co., Ltd's last known address was: 1900-12 International Chamber of Commerce Center Shenzhen, China. |
| 216 | 2006-9-15 | TTP | Shenzhen Yongfeng Investment Co., Ltd. | 2,730 | $8,105.60 | Marathon Construction | Edge sealing tape/laser code: Marathon Construction | The purchaser reportedly shipped the drywall to New York. Shenzhen Yongfeng Investment. Co., Ltd's last known address is listed at row 215 above. |

**EXHIBIT A to the Defendant Manufacturers' Profile Form**

- 36 -

| No. | Date (Y/M/D) | Exporter | Importer | Quantity (approx. number of sheets) | Amount | Product Markings | Edge Sealing Tape Markings | Additional Notes |
|---|---|---|---|---|---|---|---|---|
| 217 | 2006-9-15 | TTP | Shenzhen Yongfeng Investment Co., Ltd. | 3,640 | $10,847.20 | Marathon Construction | Edge sealing tape/laser code: Marathon Construction | The purchaser reportedly shipped the drywall to New York. Shenzhen Yongfeng Investment. Co., Ltd's last known address is listed in row 215 above |
| 218 | 2006-9-15 | TTP | GD Distributors LLC | 880 | $11,601.22 | | | The purchaser reportedly shipped the drywall to New Orleans. |
| 219 | 2006-10-5 | TTP | TOV Trading | 2,000 | $5,200.00 | | Edge sealing tape: OEG | The purchaser reportedly shipped the drywall to New York. The last known address for TOV Trading is: 5014 20th Avenue Brooklyn, NY 11204 |
| 220 | 2006-10-5 | TTP | TOV Trading | 14,000 | $37,100.00 | | Edge sealing tape: OEG | The purchaser reportedly shipped the drywall to New York is listed in row 219 above. |

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/08/19 Page 110 of 647
Case 2:09-cv-2404-MCE Document 27-8 Entered on FSD Docket 05/13/2010 Page 58 of
595

**EXHIBIT A to the Defendant Manufacturers' Profile Form**

- 37 -

| No. | Date (Y/M/D) | Exporter | Importer | Quantity (approx. number of sheets) | Amount | Product Markings | Edge Sealing Tape Markings | Additional Notes |
|---|---|---|---|---|---|---|---|---|
| 221 | 2006-10-5 | TTP | TOV Trading | 3,400 | $13,850.00 | | Edge sealing tape: OEG | The last known address for TOV Trading is listed at row 219 above. |
| 222 | 2006-10-5 | TTP | TOV Trading | 9,000 | $23,400.00 | | Edge sealing tape: OEG | The last known address for TOV Trading is listed at row 219 above. |
| 223 | 2006-11-16 | TTP | Shenzhen Yongfeng Investment Co., Ltd. | 9,100 | $25,025.00 | | Edge sealing tape/laser code: Marathon Construction. | The purchaser reportedly shipped the drywall to the USA. |
| 224 | 2006-11-24 | Xuzhou Hanbang Global Trade Co., Ltd. | Unknown | 960 | ¥16,213 | | White edge sealing tape (without words [printed thereon]) | |
| 225 | 2006-11-27 | China Xuzhou International Economic & Technological Cooperation Co., Ltd. | Unknown | 810 | ¥13,413 | | White edge sealing tape (without words [printed thereon]) | |
| 226 | 2006-11-27 | China Xuzhou International Economic & Technological Cooperation Co., Ltd. | Unknown | 150 | ¥2,484 | | White edge sealing tape (without words [printed thereon]) | |

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 111 of 647
Case 2:09-cv-22408-MCE-EF Document 277-8 Entered on FLSD Docket 05/13/2011 Page 59 of
595

**EXHIBIT A to the Defendant Manufacturers' Profile Form**

- 38 -

| No. | Date (Y/M/D) | Exporter | Importer | Quantity (approx. number of sheets) | Amount | Product Markings | Edge Sealing Tape Markings | Additional Notes |
|-----|------|----------|----------|----------|--------|------------------|----------------------------|------------------|
| 227 | 2006-12-2 | TTP | Stone Pride International Corp. | 2,640 | $10,032.00 | | White edge sealing tape (without words [printed thereon]) | |
| 228 | 2006-12-26 | Jiangsu Easthigh Group Import & Export Co. , Ltd. | Unknown | 1,360 | ¥21,855 | | White edge sealing tape (without words [printed thereon]) | The purchaser reportedly shipped the drywall to the USA. |
| 229 | 2006-12-28 | TTP | Shenzhen Yongfeng Investment Co., Ltd. | 7,280 | $20,020.00 | | Edge sealing tape/laser code: Marathon Construction, | The purchaser reportedly shipped the drywall to New York. |
| 230 | 2006-12-28 | TTP | Shenzhen Yongfeng Investment Co., Ltd. | 2,600 | $11,824.00 | | Edge sealing tape/laser code: Marathon Construction, | |
| 231 | 2007-1-12 | Qingdao Joy Industrial & Development Co., Ltd. | Unknown | 1,900 | ¥31,266 | | White edge sealing tape (without words [printed thereon]), no laser code | |
| 232 | 2007-2-9 | TTP | Shenzhen Yongfeng Investment Co., Ltd. | 1,800 | $5,005.00 | | Edge sealing tape/laser code: Marathon Construction, | The purchaser reportedly shipped the drywall to New York.<br><br>Shenzhen Yongfeng Investment. Co., Ltd's last known address is listed at row 215 above |
| 233 | 2007-2-9 | TTP | Shenzhen Yongfeng Investment Co., Ltd. | 3,900 | $17,737.20 | | Edge sealing tape/laser code: Marathon Construction, | Shenzhen Yongfeng Investment. Co., Ltd's last known address was listed at row 215 above |

EXHIBIT A to the Defendant Manufacturers' Profile Form

- 39 -

| No. | Date (Y/M/D) | Exporter | Importer | Quantity (approx. number of sheets) | Amount | Product Markings | Edge Sealing Tape Markings | Additional Notes |
|-----|------|----------|----------|-------------|--------|------------------|------------------|------------------|
| 234 | 2007-4-30 | TTP | Oriental Trading Company LLC | 2,000 | 7738.00 | | Edge sealing tape: DUN Drywall | The purchaser reportedly shipped the drywall to Miami. |
| 235 | 2007-4-30 | TTP | B America Corporation | 660 | $5,656.20 | | White edge sealing tape (without words [printed thereon]) | The purchaser reportedly shipped the drywall to Miami. |
| 236 | 2007-5-28 | TTP | Oriental Trading Company LLC | 4,900 | $12,740.00 | | Edge sealing tape: DUN Drywall | The purchaser reportedly shipped the drywall to Miami. |
| 237 | 2007-5-28 | TTP | Oriental Trading Company LLC | 5,880 | $15,288.00 | | Edge sealing tape: DUN Drywall | The purchaser reportedly shipped the drywall to Miami. |
| 238 | 2007-5-28 | TTP | Oriental Trading Company LLC | 1,960 | $5,096.00 | | Edge sealing tape: DUN Drywall | The purchaser reportedly shipped the drywall to Miami. |
| 239 | 2007-5-28 | TTP | Oriental Trading Company LLC | 4,900 | $12,740.00 | | Edge sealing tape: DUN Drywall | The purchaser reportedly shipped the drywall to Miami. |
| 240 | 2007-6-12 | TTP | Oriental Trading Company LLC | 2,940 | $12,740.00 | | Edge sealing tape: DUN Drywall | The purchaser reportedly shipped the drywall to Miami. |
| 241 | 2007-6-26 | TTP | Oriental Trading Company LLC | 2,000 | $7,738.00 | | Edge sealing tape: DUN Drywall | The purchaser reportedly shipped the drywall to Miami. |

**EXHIBIT A to the Defendant Manufacturers' Profile Form**

- 40 -

| No. | Date (Y/M/D) | Exporter | Importer | Quantity (approx. number of sheets) | Amount | Product Markings | Edge Sealing Tape Markings | Additional Notes |
|-----|--------------|----------|----------|-------------------------------------|--------|------------------|----------------------------|------------------|
| 242 | 2007-7-3 | TTP | Oriental Trading Company LLC | 6,700 | $25,795.00 | | Edge sealing tape: DUN Drywall | The purchaser reportedly shipped the drywall to Miami, USA. |
| 243 | 2007-7-3 | TTP | Oriental Trading Company LLC | 6700 | $25,795.00 | | Edge sealing tape: DUN Drywall | The purchaser reportedly shipped the drywall to Miami, USA. |

# Tab #30

Case 2:09-md-02047-EEF-MBN Document 22897-10 Filed 12/09/19 Page 115 of 647
Case 2:09-md-02047-MBN Document 22897-10 Filed 12/09/19 Page 115 of 647
595

Confidential - Subject to Further Confidentiality Review

1       UNITED STATES DISTRICT COURT
          EASTERN DISTRICT OF LOUISIANA
2
    _____
3                           § MDL NO. 2047
    IN RE:                  §
4   CHINESE-                § SECTION: L
    MANUFACTURED            §
5   DRYWALL PRODUCTS        § JUDGE FALLON
    LIABILITY               §
6   LITIGATION              § MAGISTRATE
    _____  § JUDGE WILKINSON
7
                    -   -   -
8
      CROSS NOTICED IN VARIOUS OTHER ACTIONS
9
                    -   -   -
10
                April 7, 2011
11
                    -   -   -
12
        CONFIDENTIAL - SUBJECT TO FURTHER
13            CONFIDENTIALITY REVIEW
14                  -   -   -
15      Videotaped deposition of WENLONG
    PENG, held at 3 Pedder Street, Central,
16  Hong Kong, China, commencing at 8:59
    a.m., on the above date, before Linda L.
17  Golkow, Certified Court Reporter,
    Registered Diplomate Reporter, Certified
18  Realtime Reporter and Notary Public.
19
20                  -   -   -
21
22        GOLKOW TECHNOLOGIES, INC.
       ph 877.370.3377 | fax 917.591.5672
23            deps@golkow.com
24

Confidential - Subject to Further Confidentiality Review

```
 1                MR. SPANO:  I understand
 2        your point.
 3                   -  -  -
 4                EXAMINATION
 5                   -  -  -
 6   BY MR. SEEGER:
 7        Q.    Good morning, Mr. Peng.
 8        A.    Good morning.
 9        Q.    Did I pronounce your name
10   correctly?  If I call you Mr. Peng, is
11   that a correct pronunciation of your
12   name?
13        A.    Peng.
14        Q.    Okay.  Mr. Peng.
15              Mr. Peng, what other names
16   have you used in your business career
17   other than Mr. Peng?
18        A.    I also use another name,
19   Frank Clem, F-R-A-N-K, one word, C-L-E-M,
20   another word.
21        Q.    Mr. Clem, I would just like
22   to note for the record that you've
23   written the name that's on the paper in
24   front of you in English.  Correct, sir?
```

Confidential - Subject to Further Confidentiality Review

```
 1          the word.
 2               MR. SEEGER:  Do you want
 3          them talking?
 4               THE WITNESS:   I have a
 5          question.  Can I bring it up?
 6               MR. SEEGER:  He asked her.
 7          I think he has a question he wants
 8          to ask.
 9               MR. SPANO:  Okay.
10               THE WITNESS:  Can I go to
11          the bathroom?
12               MR. SEEGER:  Of course.  I'm
13          sure you're not alone.
14               THE VIDEOTAPE TECHNICIAN:
15          The time now is approximately
16          10:03 a.m., and we are now off the
17          record.
18                    -  -  -
19               (Whereupon, a recess was
20          taken from 10:03 a.m. until
21          10:16 a.m.)
22                    -  -  -
23               THE VIDEOTAPE TECHNICIAN:
24          This begins tape 2 of today's
```

Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 118 of 647
Case 2:09-md-02047-EEF-MBN Document 21841-3 Filed 10/11/18 Page 66 of 595

```
 1           deposition.  The time now is
 2           approximately 10:16 a.m., and
 3           we're back on the record.
 4    BY MR. SEEGER:
 5           Q.    Mr. Peng, before we broke, I
 6    was asking you if you had any
 7    conversations with Mr. Jia and Mr. Zhang.
 8    Did you listen in by telephone to the
 9    depositions that we've had the last few
10    days?
11           A.    No.
12           Q.    Okay.  Let's go back to your
13    work experience at TG.  What is your
14    current title at TG?
15           A.    The manager of the, I can
16    translate into either foreign sales or
17    foreign trade department.
18           Q.    How long have you held that
19    position, Mr. Peng?
20           A.    Are you referring to how
21    long have I been in this position
22    recently or in total how long have I been
23    in that position?
24           Q.    Mr. Peng, how long have you
```

Confidential - Subject to Further Confidentiality Review

```
 1    been the manager of foreign sales or

 2    trade at TG?

 3                 MR. SPANO:  Objection to

 4           form.

 5                 THE WITNESS:  I am the

 6           foreign trade, not a foreign trade

 7           company.

 8    BY MR. SEEGER:

 9           Q.    I don't understand.

10                 INTERPRETER 2:  The check

11           interpreter believes that the

12           witness said, we have foreign

13           trade department, not a foreign

14           trade company.

15                 MR. SEEGER:  Let me ask my

16           question again.

17    BY MR. SEEGER:

18           Q.    Mr. Peng, how long have you

19    held the title -- strike that.

20                 Mr. Peng, you described your

21    current position with TG as the manager

22    of foreign sales or the manager of

23    foreign trade.  Do I have that correct?

24                 INTERPRETER 1:  Foreign
```

Confidential - Subject to Further Confidentiality Review

```
 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF LOUISIANA
 2

 3    _____
                                 §  MDL NO. 2047
      IN RE:                     §
 4    CHINESE-                    §  SECTION: L
      MANUFACTURED               §
 5    DRYWALL PRODUCTS            §  JUDGE FALLON
      LIABILITY                   §
 6    LITIGATION                  §  MAGISTRATE
      _____    §  JUDGE WILKINSON
 7

                          -   -   -
 8

        CROSS NOTICED IN VARIOUS OTHER ACTIONS
 9
                          -   -   -
10

                     April 8, 2011
11
                          -   -   -
12

        CONFIDENTIAL - SUBJECT TO FURTHER
13            CONFIDENTIALITY REVIEW
14                        -   -   -
15          Videotaped deposition of WENLONG
      PENG, held at 3 Pedder Street, Central,
16    Hong Kong, China, commencing at 9:02
      a.m., on the above date, before Linda L.
17    Golkow, Certified Court Reporter,
      Registered Diplomate Reporter, Certified
18    Realtime Reporter and Notary Public.
19
20                        -   -   -
21
             GOLKOW TECHNOLOGIES, INC.
22        ph 877.370.3377 | fax 917.591.5672
                   deps@golkow.com
23
24
```

Confidential - Subject to Further Confidentiality Review

```
  1                    -  -  -

  2              THE VIDEOTAPE TECHNICIAN:

  3         This begins Day 2, Tape Number 1

  4         of the deposition of Mr. Peng

  5         Wenlong.

  6              The time now is

  7         approximately 9:02 a.m., and we're

  8         now back on the record.

  9                    -  -  -

 10              WENLONG PENG, after having

 11         been previously sworn through the

 12         interpreter, was examined and

 13         testified as follows:

 14                    -  -  -

 15              EXAMINATION

 16                    -  -  -

 17    BY MR. SEEGER:

 18         Q.    Good morning, Mr. Peng.  I

 19    just want to remind you that you're still

 20    under oath, the oath that the court

 21    reporter administered to you yesterday.

 22    Do you understand that?

 23         A.    I understand.

 24              MR. SPANO:  Before we
```

Case 2:09-md-02047-EEF-MBN  Document 22397-10  Filed 12/09/19  Page 122 of 647 of
Case 2:09-md-02047-MCJ-DPC  Document 22413  Filed 09/06/19  Page 122 of
595

Confidential - Subject to Further Confidentiality Review

```
 1            form.
 2                  THE WITNESS:  I don't
 3            understand.  What is the question
 4            you are asking?
 5   BY MS. BASS:
 6            Q.   Did he make such a
 7   representation to American customers?
 8                  INTERPRETER 1:  Counsel, the
 9            word "representation," would you
10            mind to help me, because there are
11            more than one way of translating
12            it.
13   BY MS. BASS:
14            Q.   Did he make a statement to
15   American customers stating that his
16   company was the first to use containers
17   to export gypsum board to the United
18   States in China?
19                  MR. SPANO:  Objection to
20            form.
21                  THE WITNESS:  I don't
22            recall.
23   BY MS. BASS:
24            Q.   Mr. Peng, did you review the
```

Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 123 of 647
Case 2:09-md-02047-EEF-MBN Document 22243-1 Filed 12/02/19 Page 471 of
595

Confidential - Subject to Further Confidentiality Review

```
 1    profile form filed on behalf of TTP in

 2    this litigation?

 3                    INTERPRETER 1:  Manufacturer

 4          profile form?

 5                    MS. BASS:  Yes.

 6                    MR. CHEN:  Objection.  The

 7          translation referred to when he

 8          was representing TTP.

 9                    INTERPRETER 1:  Counsel,

10          would you mind to help me with the

11          word "on behalf of"?

12    BY MS. BASS:

13          Q.    Did you review the profile

14    form filed by TTP in this litigation?

15          A.    Under the guidance of my --

16    of our attorney, I saw it.

17          Q.    Did you assist in the

18    preparation of the exhibit attached to

19    the profile form listing the exports of

20    Chinese drywall into the United States?

21                    MR. SPANO:  Objection to

22          form and mischaracterizes the

23          document.

24                    INTERPRETER 1:  Let me
```

```
 1              translate once more because I need
 2              to translate upside down to make
 3              it clear to him.
 4                   THE WITNESS:  According to
 5              the requirements and guidance of
 6              our attorney, I did make
 7              preparation, and I did make
 8              inquiries to my company about
 9              technical information of the 12.7
10              millimeter drywall.  I did not
11              make preparation to the attorney
12              of the information, what you
13              mentioned just earlier, that the
14              drywall information -- the
15              information of the drywall from
16              China shipped to the United
17              States, I mentioned about this
18              earlier.  There is no exports for
19              us to the United States.
20    BY MS. BASS:
21         Q.   Are you aware, Mr. Peng,
22    that 1.7 million sheets of drywall
23    produced by TTP were shipped into the
24    United States?
```

```
 1                MR. SPANO:  Objection to
 2           form.
 3                THE WITNESS:  Can you repeat
 4           the question?  I don't understand
 5           it.
 6                MS. BASS:  Please ask the
 7           witness the same question that I
 8           previously posed.
 9                (Interpreter repeats the
10           question.)
11                THE WITNESS:  I did provide
12           to our attorney, to my attorney
13           for the drywall of 12.7 mm
14           thickness that were produced by
15           TTP company.  I'm not sure whether
16           this drywall was shipped to the
17           United States or not.  We also
18           cannot say this.
19      BY MS. BASS:
20           Q.    Are you suggesting, Mr.
21      Peng, that the document filed by your
22      attorneys in the MDL proceeding
23      reflecting 1.7 million sheets of drywall
24      manufactured by TTP ending up in the
```

# Tab #31

Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 127 of 647 of
Case 4:09-md-02047-EEF-MBN Document 22287 Entered on FLSD Docket 11/2019 Page 127 of
595
Confidential - Subject to Further Confidentiality Review

```
 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF LOUISIANA
 2

      _____
 3                               §  MDL NO. 2047
      IN RE:                     §
 4    CHINESE-                   §  SECTION: L
      MANUFACTURED               §
 5    DRYWALL PRODUCTS           §  JUDGE FALLON
      LIABILITY                  §
 6    LITIGATION                 §  MAGISTRATE
      _____     §  JUDGE WILKINSON
 7
                         -   -   -
 8
        CROSS NOTICED IN VARIOUS OTHER ACTIONS
 9
                         -   -   -
10
                    January 13, 2012
11
                         -   -   -
12
         CONFIDENTIAL - SUBJECT TO FURTHER
13             CONFIDENTIALITY REVIEW
14                       -   -   -
15        Continued videotaped deposition of
      WENLONG PENG, held at the Executive
16    Centre, Level 3, Three Pacific Place, One
      Queen's Road East, Hong Kong, China,
17    commencing at 8:32 a.m., on the above
      date, before Ann Marie Mitchell,
18    Certified Court Reporter, Registered
      Diplomate Reporter, Certified Realtime
19    Reporter and Notary Public.
                         -   -   -
20

21

          GOLKOW TECHNOLOGIES, INC.
22     877.370.3377 ph | 917.591.5672 fax
              deps@golkow.com
23

24
```

Confidential - Subject to Further Confidentiality Review

```
 1              Mitchell.  And, Your Honor, please

 2              proceed.

 3                        -   -   -

 4                   WENLONG PENG, after having

 5              been duly sworn, was examined and

 6              testified as follows:

 7                        -   -   -

 8                   THE COURT:  You may proceed,

 9              Counsel.

10                   MR. SEEGER:  Thank you, Your

11              Honor.

12                        -   -   -

13                   EXAMINATION

14                        -   -   -

15     BY MR. SEEGER:

16              Q.   Good morning, Mr. Peng.

17     Good to see you again.

18              A.   Hello.

19              Q.   I questioned you in April.

20              A.   That's correct, the last

21     time.

22              Q.   I've got some exhibits I

23     want to go through, and we should be able

24     to get through this relatively quickly
```

Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 129 of 647
Case 2:14-cv-02722-NGG Document 15-3 Filed 07/18/14 Page 129 of 595
Confidential - Subject to Further Confidentiality Review

```
 1    company called Rothchilt International,

 2    spelled R-O-T-H-C-H-I-L-T International?

 3         A.    I have not seen this before

 4    this time.

 5         Q.    Have you ever heard of a

 6    gentleman named Sunny Jawahar, last name

 7    spelled J-A-W-A-H-A-R?

 8         A.    I don't know this person.

 9         Q.    Have you ever heard of a

10    company called La Suprema, L-A, new word,

11    S-U-P-R-E-M-A?

12         A.    I have not heard of this

13    company.

14         Q.    Have you ever heard of a

15    gentleman named Soloman Abadi,

16    S-O-L-O-M-A-N, next word, A-B-A-D-I?

17         A.    I have not heard of this

18    person.

19         Q.    Have you ever heard of a

20    company called Banner Supply Company?

21         A.    No.

22         Q.    Have you ever visited the

23    United States?

24         A.    I have not.
```

```
 1              MS. BESKIN:  Just one

 2         moment, please.

 3    BY MS. BESKIN:

 4         Q.    Have you ever heard of C&K

 5    board?

 6         A.    C&K, I'm not sure.  Perhaps

 7    there is a gypsum board factory.  It may

 8    be called this name in Shandong.  Maybe

 9    this company produce certain brand of

10    gypsum board.  I'm not sure.

11         Q.    What's the name of the

12    company that produces this C&K board?

13         A.    I'm not sure, but I

14    personally think perhaps it's located at

15    Shandong Linyi.

16         Q.    This company that you're

17    thinking of that produce C&K board, is it

18    affiliated with Taishan Gypsum?

19         A.    They're both gypsum board

20    manufacturers, but they don't have any

21    specific relationships in terms of

22    company relationships.  I personally

23    believe they're competitors.

24              MS. BESKIN:  No further
```

Confidential - Subject to Further Confidentiality Review

```
1          questions.
2                  THE COURT:  Anyone else?
3          Questions?
4                  Okay.  Then, Frank, you're
5          on cross-examination, any cross.
6                  -   -   -
7                  EXAMINATION
8                  -   -   -
9    BY MR. SPANO:
10         Q.    Good morning, Mr. Peng.
11               Did Taishan Gypsum ship
12   either of the two orders sold to Venture
13   Supply to the State of Virginia?
14         A.    No.  Taishan Gypsum board
15   company only shipped the shipment to
16   Lianyungang port, China.  The rest of the
17   matter was handled by Mr. Phillip.
18         Q.    Is that true for both of the
19   Venture Supply orders, that TG delivered
20   them to the Lianyungang port in China?
21         A.    We shipped to Lianyungang
22   port according to the requirement of the
23   customer, and we give the shipment to the
24   buyer in that location.
```

```
 1              Q.    Did TG advertise its drywall

 2    in Virginia?

 3              A.    No.

 4              Q.    I'm going to show the

 5    witness now what was marked yesterday as

 6    Defendant's Che-2, which is the TTP

 7    manufacturer's profile form.

 8              Mr. Peng, could you look at

 9    Exhibit A to the TTP MPF in Chinese,

10    entry number 177 related to Wood Nation?

11              A.    Where is it?

12              Q.    Can you find entry number

13    177?

14              MR. SEEGER:  Excuse me.

15              Before the questions start, are

16              you going to lay a foundational

17              basis for why he's referring to

18              this exhibit?  I won't make any

19              objections after that, I just --

20              is there a foundational basis for

21              him doing this?

22              MR. SPANO:  Yes.

23              MR. SEEGER:  I would like

24              that to be --
```

Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 133 of 647
Case 2:14-cv-02722-NG Document 28-10 Filed 07/30/18 Page 133 of 647
Confidential - Subject to Further Confidentiality Review
595

```
  1              THE COURT:  Yes.  That's

  2         good.

  3    BY MR. SPANO:

  4              Q.    Mr. Peng, before I ask you

  5    particular questions about the

  6    manufacturer's profile form, are you

  7    familiar with the information contained

  8    in this document?

  9              A.    I'm not very familiar with

 10    it.  I have only collected this

 11    information upon the request of the

 12    attorney.

 13              Q.    Did you prepare --

 14    withdrawn.

 15              Is it correct that you

 16    provided information to the attorneys

 17    that they used to prepare this document?

 18              A.    Upon the requirement of the

 19    attorney, I have collected and compiled

 20    and provided this information.

 21              Q.    Do you understand that

 22    you're testifying as a corporate

 23    representative of TG and TTP with respect

 24    to the manufacturer's profile forms?
```

Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 134 of 647
Case 2:14-cv-02722-MLCF-DEK Document 43-8 Filed 01/13/2015 Page 32 of 595
Confidential - Subject to Further Confidentiality Review

```
 1              A.     The attorney told me that.

 2              Q.     Can you explain generally

 3       how you compiled the information that you

 4       provided to the attorneys to use in

 5       preparing these forms?

 6              A.     First of all, I consulted

 7       the sales handler regarding the different

 8       sales information.  And then I reviewed

 9       invoices, contracts and documents in

10       relevant departments.  And I compiled the

11       document according to the format provided

12       by counsel.

13              Q.     Do the manufacturer's

14       profile forms of TG and TTP contain all

15       of the company's information on the

16       subject matters addressed in those

17       documents?

18                     MR. SEEGER:  I have to

19              object to that, Judge, because the

20              witness testified that he helped

21              prepare portions of it.  Maybe

22              it's easier to just figure out

23              what portions he prepared and then

24              I won't have to object anymore.
```

```
 1                    THE COURT:  I'll let counsel
 2          handle it.  He's got the witness.
 3                    MR. SPANO:  I'll withdraw
 4          the question.
 5   BY MR. SPANO:
 6          Q.    Have you reviewed the
 7   manufacturer's profile forms of TG and
 8   TTP in this litigation?
 9          A.    Under the guidance and upon
10   the request of the attorney, yes, I did
11   review them.
12          Q.    And based upon your review,
13   to the best of the company's knowledge,
14   both TG and TTP, is the information
15   contained in their profile forms accurate
16   and complete?
17          A.    For all the information I
18   could possibly collect, and according to
19   our recollection, I think it is complete
20   and accurate.
21          Q.    Could we look now at entry
22   number 177 related to Wood Nation.
23          A.    I see this entry.
24          Q.    Do you recall answering
```

Confidential - Subject to Further Confidentiality Review

```
 1    counsel's questions regarding the

 2    markings on the drywall sold to Wood

 3    Nation?

 4            A.    You mean just now?

 5            Q.    In this deposition earlier.

 6            A.    Yes, I remember.

 7            Q.    Do you see the column

 8    entitled "Product Markings"?

 9            A.    Yes, I see it.

10            Q.    And I'm going to read into

11    the record what is written there

12    regarding the product markings on the

13    drywall sold to Wood Nation.

14                 "Taian Taishan Plasterboard

15    Co., Gypsum Drywall Per ASTM C 1396 04

16    Contact:  813-994-6499."

17            A.    That's what it appears to

18    be.

19            Q.    To the best of TTP's

20    knowledge, was that the information that

21    was marked on the drywall sold to Wood

22    Nation?

23            A.    From what we have collected

24    and compiled, that should be the case.
```

# Tab #32

Confidential - Subject to Further Confidentiality Review

```
 1    UNITED STATES DISTRICT COURT
 2    EASTERN DISTRICT OF LOUISIANA
 3    ********************************************
 4    IN RE:  CHINESE-MANUFACTURED    MDL NO. 2047
      DRYWALL PRODUCTS LIABILITY
 5    LITIGATION                      SECTION:  L
 6    THIS DOCUMENT APPLIES TO        JUDGE FALLON
      ALL CASES
 7                                    MAG. JUDGE
                                      WILKINSON
 8
      ********************************************
 9
10        CONFIDENTIAL - SUBJECT TO FURTHER
11           CONFIDENTIALITY REVIEW
12           Tuesday, January 22, 2019
13
14
15
16        Videotaped 30(b)(6) Deposition of
      TAISHAN GYPSUM CO., LTD f/k/a SHANDONG TAIHE
17    DONGXIN CO., LTD. RE: PRODUCT IDENTIFICATION,
      through the testimony of GANG CHE, held at
18    Alston & Bird LLP, 1201 West Peachtree
      Street, Atlanta, Georgia, commencing at
19    8:49 a.m., on the above date, before
      Michael E. Miller, Registered Diplomate
20    Reporter, Certified Realtime Reporter and
      Notary Public.
21
22
23              __ __ __
24        GOLKOW LITIGATION SERVICES
      877.370.3377 ph | 917.591.5672 fax
25           deps@golkow.com
```

Confidential - Subject to Further Confidentiality Review

595

```
 1                   GANG CHE,

 2             having been first duly sworn,

 3                testified as follows:

 4                   EXAMINATION

 5   BY MR. MONTOYA:

 6        Q.    Good morning.

 7        A.    Good morning.

 8        Q.    Tell us your name please, sir.

 9        A.    Che Gang.

10        Q.    Sir, you're here today to

11   testify as the corporate representative on

12   behalf of Taian Taishan Plasterboard and

13   Taishan Gypsum, correct?

14        A.    Correct.

15        Q.    For the purposes of this

16   deposition, I'm going to use the term

17   "Taishan" to refer to both Taishan Gypsum and

18   Taian Taishan Plasterboard.

19             Is that acceptable to you?

20        A.    Yes.

21        Q.    In the past depositions we've

22   used the term TG and TTP.  Do you recall

23   those terms?

24        A.    I don't have a clear

25   recollection on that.  There was such an
```

Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 140 of 647
Case 2:09-md-02047-EEF-MBN Document 22380 Filed 12/06/19 Page 88 of 595
Confidential - Subject to Further Confidentiality Review

1    A.     Yes.

2    Q.     I'm going to hand you

3    Exhibit 1D, like dog, 1D to your deposition.

4           (Deposition Exhibit PID-1D

5    marked.)

6    BY MR. MONTOYA:

7    Q.     I'll represent to you that

8    Exhibit 1D is photographs 27, 28 and 29 from

9    Exhibit 1.

10          Do you see that?

11   A.     I see that.

12   Q.     I'll ask you also to take a

13   look at Exhibit 3, and the photographs 27, 28

14   and 29 correspond to Crescent City Gypsum.

15          Do you see that?

16   A.     I see that.

17   Q.     And Taishan agrees that at

18   Exhibit 1D, photograph 29, that it

19   manufactured boards with those markings,

20   correct?

21   A.     Can you repeat that?

22   Q.     Sure.

23   A.     I did not hear clearly.

24   Q.     Taishan agrees that the

25   markings contained in photograph 29 of

Confidential - Subject to Further Confidentiality Review

1   Exhibit 1D were produced by Taishan?

2        A.      Taishan does not deny the

3   number 29 was produced by Taishan.

4        Q.      Sir, do you know what the

5   term -- the letters 16, 1-6, OC on photograph

6   29 mean?

7        A.      I do not know.

8        Q.      Did you see documents in your

9   research that show that Taishan stamped

10  "16OC" on some of the drywall that it

11  manufactured?

12       A.      During the depo preparation as

13  the corporation representative, we tried very

14  hard to look and found in a corner of a

15  warehouse residue boards bearing the American

16  size marks at the time.  Included in those

17  boards are the markings similar to the

18  markings on page 29.

19            Upon comparing the residue

20  boards with American size with the boards on

21  the picture, the conclusion we made is

22  Taishan denies that it has produced the

23  product on the picture of 27 and 28.

24            But Taishan does not deny that

25  the product bearing the marking on picture 29

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 142 of 645
Case 2:14-cv-02722-MRH Document 3 Filed 09/12/16 Page 142 of 590
Confidential - Subject to Further Confidentiality Review
595

1    was produced by Taishan.

2              MR. TAYLOR:  Counsel, we're

3         right within that 50- to 60-minute

4         period.  I don't want to --

5              MR. MONTOYA:  That's fine.

6         We're at a break.

7              THE VIDEOGRAPHER:  We're now

8         going off the video record.  The time

9         is currently 9:45 a.m.  This is the

10        end of Media No. 1.

11             (Recess taken, 9:45 a.m. to

12        9:59 a.m.)

13             THE VIDEOGRAPHER:  We are now

14        back on the video record with the

15        beginning of Media No. 2.  The time is

16        currently 7:59 a.m. -- I'm sorry,

17        9:59 a.m.

18   BY MR. MONTOYA:

19        Q.    Sir, Exhibit 1D, photograph 29,

20   is that the same drywall that is identified

21   at line 214 of Exhibit 7 in the Manufacturer

22   Profile Form?

23             THE WITNESS:  Can you

24        reinterpret what line it was?

25             THE INTERPRETER:  The

Confidential - Subject to Further Confidentiality Review

```
1    China Cr" to be stamped on the back of

2    Taishan drywall?

3              THE INTERPRETER:  The

4         interpreter needs to clarify a

5         translation for law firm.

6              MR. MONTOYA:  You can say

7         attorneys.  That's fine.

8              THE INTERPRETER:  Mr. Che

9         specifically said law firm's name in

10        Chinese.  Not sure how to --

11             MS. ROBERTSON:  Hogan Lovells?

12             THE INTERPRETER:  Thank you.

13   A.     I was not saying that I handed

14   over those documents to my attorney.  I was

15   saying that we have submitted all the

16   documents in 2010 to Hogan Lovells --

17             MS. ROBERTSON:  L-O-V-E-L-L-S.

18   A.     -- attorneys, and again, in

19   2015, upon the compilation of Austin --

20   Sidley Austin and submitted to the Court.  If

21   you cannot still find it, it was probably

22   made through telephone calls or face-to-face

23   in our company by our customers.

24   BY MR. MONTOYA:

25   Q.     As you prepared to be the
```

1    corporate representative for Taishan today,

2    did you see any documents where a customer

3    requested the markings "Made in China Cr"?

4         A.    I did not see that.

5         Q.    Sir, Exhibit 1D, photograph 27,

6    can you take a look at that, please?  Can you

7    hold that up to the camera for us so he can

8    get a view of it?

9         A.    (Witness complies.)

10        Q.    I appreciate that.  Thank you.

11              Would you agree with me that

12   photograph 27 has white edge tape in it?

13        A.    I do not see that.

14        Q.    Do you know what the white

15   stripes are in photograph 27?

16        A.    It should be a tape of edge

17   connection.

18              THE INTERPRETER:  This is the

19         interpreter speaking.  That's a

20         literal translation.

21        A.    Which means that during the

22   production of the board, in between two

23   boards, they will need to be connected by the

24   edge connection tape.  The purpose of it is

25   to prevent cracks created between the two

Case 2:09-md-02047-EEF-MBN Document 22897-10 Filed 12/09/19 Page 145 of 643
Case 2:14-cv-02722-NG-JC Document 1-7 Filed 04/16/14 Page 145 of 93
Confidential - Subject to Further Confidentiality Review
595

 1    boards.

 2    BY MR. MONTOYA:

 3          Q.    Sir, is it your position that

 4    in Exhibit 27 -- or photograph 27, in the

 5    lower left-hand corner, that this is not

 6    white edge tape?

 7          A.    According to my experience of

 8    working in this industry for years, the edge

 9    tape is supposed to be positioned on its

10    short side.  The spray marking is parallel

11    with the long side of the board.

12                So when you look at the spray

13    marking parallel to the long side of the

14    board, for sure it is not, an edge tape.  The

15    only possibility is that its an edge

16    connection tape.  This is determined

17    according to my years of experience working

18    in this industry.

19          Q.    Sir, I want to ask you to take

20    a look at Exhibit 41.

21                (Deposition Exhibit PID-41

22          marked.)

23                THE WITNESS:  May I have a

24          copy?  Thank you.

25                MR. MONTOYA:  Bernard, do we

Confidential - Subject to Further Confidentiality Review

```
1              have a stipulation that Exhibit 41

2              were the photographs that were

3              produced to us late last week,

4              TG-PID-1 through -- on Saturday, 1

5              through 33?

6                   MR. TAYLOR:  So stipulated.

7                   THE WITNESS:  In the document,

8              look at TG-PID-000022.  It is clearly

9              represented that the edge tape is at a

10             vertical position in relation to the

11             spray marking.

12                  Therefore, the question you

13             just asked, which that is paralleled

14             with the spray marking, for sure it is

15             not the edge tape.

16                  The most possible explanation

17             is it is the edge connection tape

18             during the production.

19   BY MR. MONTOYA:

20        Q.    When you said the edge

21   connection tape, you're referring to

22   Exhibit 1D, photograph 27, correct?

23        A.    Correct.

24        Q.    And Exhibit 41 is photographs

25   that were taken in China at a Taishan
```

Confidential - Subject to Further Confidentiality Review

1    factory, correct?

2         A.    It is during my depo

3    preparation as a corporate representative

4    that we have found this board in the corner

5    of the Taishan warehouse when searching for

6    markings.  It took us a lot of efforts.

7         Q.    Sir, I'm going to ask you to

8    look at Exhibit 41, photograph 2.  Do you

9    agree with me that is drywall that Taishan

10   manufactured?

11        A.    Yes.

12        Q.    It also has a white edge that

13   runs parallel with the product markings,

14   correct?

15             THE WITNESS:  Can you

16        reinterpret it?

17             THE INTERPRETER:  The

18        interpreter will reinterpret.

19             (Translation.)

20        A.    The edge -- the white tape is

21   not edge tape.  It is a face paper of the

22   gypsum board.  There are two papers in the

23   gypsum board during production.  One is on

24   top; one is at the bottom.

25             The side that have spray

Confidential - Subject to Further Confidentiality Review

1    marking, we call it the back.  In order to

2    distinguish the front side with the back

3    side, each paper has a different color.

4              When you look at the white

5    strip of paper parallel with the spray

6    marking, it is a face paper, not an edge

7    tape, just like the picture that I showed you

8    just now.  It clearly reflected this issue.

9    BY MR. MONTOYA:

10        Q.    Sir, I want to ask you to turn

11   to photograph 15 of Exhibit 41.  Sir, does --

12   Taishan agrees that it manufactured board

13   with the markings at photograph 15, correct?

14        A.    This is only part of our

15   markings.

16        Q.    I'm sorry, my question was:

17   Does Taishan admit that it manufactured

18   boards with the markings contained at

19   Exhibit 15 -- I'm sorry, photograph 15.

20        A.    The more complete picture of

21   this marking can be found on page 23.  This

22   is a more complete information.  The picture

23   just mentioned is only part of it.

24        Q.    At Exhibit 41, photograph 23,

25   Taishan admits that it produced drywall with

Confidential - Subject to Further Confidentiality Review
595

```
 1    these markings, correct?

 2         A.      Correct.

 3         Q.      What was the edge sealing tape

 4    on photograph 23?

 5         A.      The edge tape of picture 23 can

 6    be seen on page 25.

 7         Q.      And that edge tape at

 8    photograph 25 says "Manufactured in P.R.C.,

 9    Crescent City Gypsum, Incorporated," correct?

10         A.      Are you reading this?

11         Q.      Yes.

12         A.      Yes.

13         Q.      Sir, I'm going to ask you to

14    take a look at Exhibit 1D, photograph 28.

15    Yes, number 28.  Do you see photograph 28?

16         A.      Yes.

17         Q.      And I'm going to ask the

18    interpreter to interpret the words:  Does

19    photograph 28 contain the words "Ceiling

20    16OC, Wall 21OC"?

21              THE INTERPRETER:  This is the

22         interpreter speaking.  The original

23         document is in English.

24              MR. MONTOYA:  Yes.

25              THE INTERPRETER:  Would you
```

Confidential - Subject to Further Confidentiality Review

1   BY MR. MONTOYA:

2        Q.     At Exhibit 41, photograph 21,

3   can you hold that up for the camera, please.

4        A.     (Witness complies.)

5        Q.     Thank you.

6               In the Manufacturer Profile

7   Form when Taishan says "white edge sealing

8   tape" or "white edge tape," is this the tape

9   that Taishan was referring to?

10       A.     Correct.  The white edge tape

11  is the kind of tape, not the tape reflected

12  in the picture.

13       Q.     Can you explain that for us,

14  please?

15       A.     To explain what?

16       Q.     I don't understand what you

17  meant by "the tape" versus --

18            MR. MONTOYA:  If you want to

19       read back his answer, that would help

20       me.

21            (The following portion of the

22       record was read.)

23            "ANSWER:  Correct.  The white

24       edge tape is the kind of tape, not the

25       tape reflected in the picture."

Confidential - Subject to Further Confidentiality Review

```
 1                    (End of readback.)

 2        A.      White edge tape is a type of

 3   tape.  If you say "the white edge tape," in

 4   Chinese it means the specific tape that

 5   you're referring to.

 6                    According to the information we

 7   learned from customers, at the time while

 8   producing the gypsum board with American

 9   sizes, a lot of manufactured -- manufacturers

10   used the white edge tape just like this kind

11   without words on it, even to the point that

12   there were no spray marking on the back of

13   the board.

14                    THE INTERPRETER:  The

15           interpreter needs to clarify with

16           deponent.

17                    (Translation.)

18        A.      Even including some of the

19   spray marking without brand name, just like

20   the one we mentioned earlier, et cetera.

21   Similar products produced according to

22   customers' requests.

23   BY MR. MONTOYA:

24        Q.      Sir, as an example, if I look

25   at Exhibit 41, photograph 21, in the
```

Confidential - Subject to Further Confidentiality Review

1   Manufacturer Profile Form -- here's what I'm

2   going to read, from the Manufacturer Profile

3   Form, line 227.

4        A.      I have got it.

5   BY MR. MONTOYA:

6        Q.      When the Manufacturer Profile

7   Form says "white edge sealing,"

8   S-E-A-L-I-N-G, "tape (without words [printed

9   thereon])," is that the tape that Taishan is

10  referring to and is photographed in

11  photograph 21?

12       A.      Correct.

13            MS. EIKHOFF:  Counsel, I do

14       want to make a clarification for the

15       record that I can make a

16       representation that the photograph at

17       21 is a photograph of the same board

18       pictured at photograph 20.

19       A.      Which is to say that reflected

20  on picture 21, there was only the edge tape.

21  It did not reflect, however, what is on

22  line 227 where it says no spray marking.

23            According to the information we

24  learned from our customers, many

25  manufacturers had produced boards with white

Confidential - Subject to Further Confidentiality Review

```
 1    edge tape without wording on the spray

 2    marking.

 3              Therefore, by only looking at

 4    something that is white, without wording and

 5    is edge tape and it has no spray markings on

 6    it, you cannot really decide it is a product

 7    produced by Taishan.  We need more

 8    comprehensive information in order to confirm

 9    the product.

10    BY MR. MONTOYA:

11         Q.    Sir, I need to go back to a

12    question I asked you earlier when you

13    referenced the Manufacturer Profile Form.  I

14    believe that you said that you had spoke to a

15    Mr. Peng or Pang in one of your answers.

16              Which Mr. Peng did you speak

17    to?

18         A.    The Mr. Peng here is referred

19    to a Mr. Wenlong Peng, W-E-N-L-O-N-G,

20    P-E-N-G, the gentleman who came for his

21    deposition here.

22         Q.    When did you last speak with

23    him?

24         A.    I inquired Mr. Peng in

25    regarding to the issue of markings when I was
```

Confidential - Subject to Further Confidentiality Review

1    preparing for my deposition as a corporate

2    representative recently.

3         Q.      Is Mr. Peng still employed by

4    one of the Taishan companies?

5         A.      No.

6         Q.      Are you friends with Mr. Peng?

7         A.      We used to be colleagues.

8         Q.      Did Mr. Peng participate in the

9    meetings to prepare for your deposition?

10        A.      No.

11        Q.      Did you meet with him,

12   Mr. Peng, to prepare for your deposition as

13   the corporate representative of Taishan?

14        A.      I contact him via telephone.

15        Q.      How many times did you talk to

16   him to prepare for your deposition today?

17        A.      I don't have a clear

18   recollection as of how many times I've talked

19   to him, but during the preparation of my

20   deposition as the corporate representative, I

21   have contacted a lot of people for relevant

22   information either through telephone or

23   through face-to-face conversation.

24              I've tried very hard in that

25   regard and talked to many people; therefore I

Confidential – Subject to Further Confidentiality Review

```
 1                    THE WITNESS:  May I answer the
 2         question?
 3                    MR. TAYLOR:  Yes.
 4                    THE WITNESS:  Can you ask
 5         again?  I forgot.
 6                    THE INTERPRETER:  The
 7         interpreter will repeat the question.
 8                    (Translation.)
 9         A.      Correct.
10    BY MR. MONTOYA:
11         Q.      I'm going to ask you to turn
12    your attention to Exhibit 1F.  Exhibit 1F,
13    photograph 30, Taishan denies that it
14    manufactured the board with the markings in
15    photograph 30?
16         A.      Correct.
17         Q.      What evidence do you have that
18    Taishan did not manufacture the board in
19    Exhibit 30?
20         A.      During the preparation of my
21    deposition as a corporate representative, I
22    have reviewed a large quantity of
23    information, and I have referred to the
24    manufacturer's profile as well as compared
25    the residual boards in our warehouse.  In
```

Confidential - Subject to Further Confidentiality Review

595

1    addition to that, I have also reviewed a

2    large quantity of pictures.

3              There is no evidence to support

4    that Taishan has manufactured the gypsum

5    board reflected in the picture with the

6    marking "IMT" on it reflected from Taishan's

7    manufacturer's profile.

8              The Taishan manufactured board

9    with "IMT" marking on it, the marking is on

10   the blue-and-white edge tape.  The spray

11   marking only reflects the drywall 4 feet by

12   12 feet by half inch.  It did not spray the

13   wording of "IMT" on the back of the board;

14   therefore Taishan deny the products bearing

15   these markings were produced by Taishan.

16        Q.    What documents do you rely upon

17   to say that Taishan did not manufacture

18   drywall with the markings "IMTGypsum.com" on

19   it?

20        A.    The wordings reflected on the

21   manufacturer's profile, "IMT," is different

22   from the wording reflected from the pictures;

23   therefore no records was discovered that

24   Taishan had sprayed the marking of "IMT" on

25   the back of its boards.

```
1       Q.     Sir, you relied upon Mr. Song's
2   work from about eight or nine years ago in
3   your answer, correct?
4               MR. TAYLOR:  By "Mr. Song," are
5        you referring to Mr. Peng?
6               MR. MONTOYA:  No.
7               MR. TAYLOR:  Okay.  Sorry.
8               MR. MONTOYA:  Mr. Song.
9               THE INTERPRETER:  S-O-N-G?
10              MR. MONTOYA:  Yeah.
11              (Translation.)
12      A.     Which Mr. Song are you
13  referring to?
14  BY MR. MONTOYA:
15      Q.     The one who signed the
16  Manufacturer Profile Form on behalf of
17  Taishan.
18      A.     Can you ask the question again?
19      Q.     Sure.
20              When Taishan determined that it
21  did not mark drywall "IMTGypsum.com" you went
22  to look at Mr. Song Qing Hai's work from the
23  Manufacturer Profile Form, correct?
24      A.     Correct.
25      Q.     You didn't talk to Mr. Song
```

1    certain requirements for signatures.  I

2    believe the signature should have been the

3    signature of a legal person or a supervisor.

4         Q.    You would agree with me that

5    Mr. Peng and not Song Qing Hai did the work

6    to create the Manufacturer Profile Form on

7    behalf of Taishan?

8              MR. TAYLOR:  Objection to form.

9         A.    I think at the time the most

10   knowledgeable person as well as the person

11   who was able to collect the best information

12   for submission to the court or according to

13   the requirement of the attorneys and the

14   court is Mr. Peng, because at the time

15   Mr. Peng had the most direct contact of the

16   work and who did the work directly as well.

17   BY MR. MONTOYA:

18        Q.    Sir, I'm going to ask you to

19   take a look at the Manufacturer Profile Form

20   at Exhibit 7 and ask you to look at lines 59

21   to 61.  Let me start this another way.  I'm

22   sorry.

23             Sir, I'm going to ask you to

24   accept that lines 59 through 61, 67 through

25   112, 118 through 119, 121, and 125 to 126

Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 159 of 647
Case 1:11-cv-22408-MGC Document 12/09/19 Confidential-Subject to Docket 09/15/2014 Page 107 of 595
Confidential - Subject to Further Confidentiality Review

1    state that the edge sealing tape markings are

2    blue-and-white edge sealing tape with the

3    words "IMTGypsum."

4              You can take your time in

5    looking at those lines.

6        A.    Correct.

7              (Deposition Exhibit PID-28

8        marked.)

9    BY MR. MONTOYA:

10       Q.    I'm going to ask you to take a

11   look at Exhibit 28, which I'm handing to you

12   and your counsel.  Is the blue-and-white edge

13   sealing tape with "IMTGypsum" in the profile

14   form at lines 59 through 61, 67 through 112,

15   118 to 119, 121, and 125 and 126 the same

16   edge tape as Exhibit 28?

17       A.    This information is not

18   complete.  I cannot make such a decision.

19       Q.    What does the blue-and-white

20   edge tape in the Manufacturer Profile Form

21   with "IMTGypsum" look like?

22       A.    I was not able to discover the

23   edge tape during my depo preparation as the

24   corporation's representative.  As far as I

25   know, this company, which is Beijing Building

1    Material Import & Export Company, had

2    manufactured in a lot of factories, the

3    American-sized products.

4              According to the description of

5    many customers, at the time in the very

6    beginning, they started to make

7    American-sized gypsum board in many small

8    factories such as Pingyi or Zaozhuang,

9    because the small factories had comparatively

10   low price.

11             Later, because the quantity of

12   products manufactured by the small factories

13   could not meet the demand of the customers,

14   therefore it approached Taishan to process

15   part of their boards.

16             Therefore, if you're only

17   showing me the information contained in this

18   one picture, I'm not able to determine

19   whether or not it was manufactured by

20   Taishan.

21        Q.    Sir, what document do you have

22   that is evidence in lines 59 through 61, 67

23   through 112, 118 and 119, 121 and 125 to 126

24   that Taishan made blue-and-white edge sealing

25   tape with the words "IMTGypsum"?

1        A.      It is reflected on the

2    manufacturer's profile chart.  We have to

3    believe it is the best information that we

4    could have collected and compiled.

5                Also, in picture 28, it did not

6    show what is the sprayed mark.  If you look

7    at this picture together with picture

8    number 30, then Taishan would deny that it is

9    a product of Taishan because Taishan's spray

10   mark does not include "IMT."  "IMT" was only

11   included on the edge tapes.

12               Therefore, we need more

13   information on this picture to make a

14   determination.

15       Q.      Sir, we --

16               MS. EIKHOFF:  I'm sorry.  Could

17           we get a counsel representation as to

18           the origin of PID-28?  There's no

19           Bates number on it so I just wanted to

20           see if you all know where it came

21           from.

22               MS. SCHWAB:  Yeah, we'll get it

23           to you at a break.

24               MS. EIKHOFF:  Okay.  Thank you.

25               ///

BY MR. MONTOYA:

  Q.    Sir, what document can Taishan

point me to to justify its answer in the

Manufacturer Profile Form that there's

blue-and-white edge tape marked "IMTGypsum"?

  A.    Can I ask -- can you ask your

question again?  I don't feel like it is a

question.

        THE INTERPRETER:  May the

        interpreter repeat or would you like

        to rephrase?

        MR. MONTOYA:  Repeat it one

        more time.

        (Translation.)

  A.    From the manufacturer profile,

it did say that there are wording as of

"IMTGypsum."  However, from our product, we

only have the drywall spray marked as 4 feet

by 12 feet by half inch; therefore, you

cannot determine it is a product of Taishan

only by looking at edge tape.

        Of course, there are other ways

to make the determination.  One is that if

you provide more information to me, I can

make comparison.

Confidential - Subject to Further Confidentiality Review

1          Number two, from the chemical

2    analysis channel, we can compare whether the

3    component of chemical from this board is the

4    same as the chemical component which is

5    covered from the residual boards in Taishan's

6    warehouse.

7          Another way would be the

8    manufacturer can be discovered by reviewing

9    the customers' invoices, and from the

10   manufacturer, to discover the importer.

11   Therefore, you will discover the supply chain

12   and to find out which manufacturer produced

13   those products.

14          Maybe through that way, you

15   would discover that many small manufacturers

16   had produced products with the same labels.

17   I don't know if those matters are visible in

18   the United States.

19   BY MR. MONTOYA:

20        Q.    Sir, do you remember when we

21   looked at Exhibit 37, there was a picture of

22   the edge tape for Crescent City?

23        A.    I do remember that.

24        Q.    Taishan doesn't have the label

25   that it lists in the Manufacturer Profile

Case 2:09-md-02047-EEF-MBN Document 15006-12 Filed 08/15/12 Page 2 of
595
Confidential - Subject to Further Confidentiality Review

 1    Form when it says blue-and-white edge sealing

 2    tape with "IMTGypsum," correct?

 3         A.    But on the tape, it had

 4    reflected the most important words.  The

 5    information contained on the manufacturer's

 6    profile is correct.  Some information may not

 7    be most precise, but it wouldn't be just like

 8    this scenario, which is different.

 9              For example, what's reflected

10    on the picture of PID-1F, 30, which reflects

11    a complete different sprayed marking from

12    ours.

13         Q.    Sir, Taishan doesn't have a

14    picture of the label -- I'm sorry.

15              Sir, Taishan doesn't have a

16    picture of the edge tape markings contained

17    at lines 59 to 61 of the profile form,

18    correct?

19         A.    I indeed did not discover

20    either the picture or the physical object of

21    this edge tape during the preparation of my

22    deposition as the corporation's

23    representative.  I'm talking about page 59.

24         Q.    And the same answer is true

25    from Taishan for lines 67 to 112, from 118 to

Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 165 of 647
Case 1:11-cv-22408-MGC Document 101-1 Entered on FLSD Docket 05/15/2014 Page 3 of
595

1   119, 121, and 125 through 126, that Taishan

2   does not have a picture of the label that's

3   identified in the Manufacturer Profile Form

4   as blue-and-white edge tape with "IMTGypsum"

5   on it.

6          A.     If the numbers you have just

7   mentioned are the numbers that you have

8   earlier confirmed, that is correct.

9          Q.     And there's no art, like you

10  got for Crescent City for those same lines,

11  59 through 61, 67 through 112, 118 to 119,

12  121, and 125 to 126?

13         A.     No, there was no Crescent City.

14         Q.     My question was:  Is there any

15  art like you've got for Crescent City for

16  lines 59 through 61 for the blue-and-white

17  edge sealing tape with "IMTGypsum"?

18             THE WITNESS:  Can you

19         reinterpret it?

20  BY MR. MONTOYA:

21         Q.     Sir, you don't have any artwork

22  or any drawing that shows the blue-and-white

23  edge sealing tape with "IMTGypsum" printed on

24  it?

25         A.     I indeed did not discover

Confidential - Subject to Further Confidentiality Review

1    spray marking, it is not Taishan's product.

2                During my deposition

3    preparation as the corporation's

4    representative, I have tried to search many

5    information in regarding to Taishan's

6    products.  I did not discover anything marked

7    with the three words "IMT" on it.

8                MR. MONTOYA:  For the record,

9         Exhibit 51 is from Scott and Jordana

10        Saltzman's home, S-A-L-T-Z-M-A-N, at

11        8485 Breezy Hill Drive.  That's in

12        Boynton Beach.

13               MS. EIKHOFF:  Thank you.

14               (Deposition Exhibit PID-1H

15        marked.)

16   BY MR. MONTOYA:

17        Q.    I'm going to hand you

18   Exhibit 1H to your deposition.

19               Sir, Taishan agrees that the

20   drywall in photographs 1, 14, 15, and 16 was

21   manufactured by Taishan, correct?

22        A.    Taishan does not deny that

23   these are products manufactured by Taishan.

24        Q.    Sir, I'm going to ask you to

25   look at Exhibit 7, the Manufacturer Profile

Confidential - Subject to Further Confidentiality Review

1    Form, line 177, please.

2         A.    I see that.

3         Q.    The product markings contain

4    the phone number 813-994-6499, correct?

5         A.    Correct.  That's what it says

6    under Product Markings.

7         Q.    And that's the same information

8    for line 183 in Exhibit 7?

9         A.    Correct.  183 and line 177 are

10   the same.

11        Q.    Lines 177 and 183 say that the

12   edge tape is "TTPC."

13              Do you see that?

14        A.    I see that.

15        Q.    Can you describe the edge tape

16   with "TTPC" on it?

17        A.    During the preparation of my

18   deposition in the capacity of corporation

19   representative, I tried hard to search for

20   information; however, I did not see any edge

21   tape bearing the words "TTPC" either as a

22   sample or as the object.

23        Q.    Do you know what color the edge

24   tape that is in lines 177 and 183 is?

25        A.    The manufacturer's profile does

Confidential - Subject to Further Confidentiality Review

1    not reflect that information.

2        Q.    Did you ask Mr. Peng what color

3    the "TTPC" edge tape was at lines 177 and

4    183?

5        A.    I did not ask such detailed

6    questions; however, as a representative of

7    the corporation, while preparing my

8    deposition, I did make phone call to Mr. Peng

9    in regarding to the markings.

10            Mr. Peng, since he has already

11   left a long time ago, he did not recall a lot

12   of the information, and also, it's been quite

13   a while ago.

14       Q.    Did you take any notes of your

15   conversations with Mr. Peng regarding the

16   Manufacturer Profile Form at Exhibit 7?

17       A.    No.

18       Q.    You agree with me that in many

19   instances Taishan was able to report what

20   color the edge tape was in the Manufacturer

21   Profile Form?

22            THE WITNESS:  Reinterpret that.

23            THE INTERPRETER:  The

24       interpreter will reinterpret.

25            (Translation.)

Confidential - Subject to Further Confidentiality Review

```
1          to the photographs, and that's what we

2          believe has happened here.  And the

3          witness has -- we've talked to the

4          witness, and the witness is ready to

5          explain the issue.

6                THE WITNESS:  First of all, I

7          apologize.  Perhaps it was because my

8          description of a set of pictures might

9          have initiated some mis- -- some

10         confusion from the opposing counsels,

11         even to our own counsel at Alston.

12               Now, what I said by a set of

13         pictures, I meant that for the

14         pictures on each page, Alston

15         attorneys had provided me with more

16         pictures corresponding to that page of

17         pictures.

18               What I'm trying to say is they

19         provided more pictures based on the

20         pictures of page 1, page 14, page 15,

21         and page 16 for me to make

22         determinations.

23               By providing more information

24         to me, I was able to say that Taishan

25         does not deny such and such marks or
```

Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 170 of 647
Case 1:11-cv-00080-WS-C Document 146-2 Entered on FLSD Docket 08/15/2011 Page 170 of
595
Confidential - Subject to Further Confidentiality Review

1          such and such sealing tapes.

2     BY MR. MONTOYA:

3          Q.     Where are those photographs?

4          A.     Those pictures should be kept

5     in your picture pool.

6          Q.     Do you know if those

7     photographs were provided to us?

8          A.     It is not that I provided them

9     to you.  It is that you have a pool of

10    pictures to be provided to me in order for me

11    to determine the gypsum boards and to refer

12    to those pictures in that regard.

13               (Deposition Exhibit PID-35

14         marked.)

15    BY MR. MONTOYA:

16         Q.     I'm going to hand you

17    Exhibit 35 to your deposition.  I'm going to

18    ask the witness to read the Chinese

19    characters after the English language word

20    "Attachments" and have that be interpreted.

21         A.     "American Packing Method."

22    BY MR. MONTOYA:

23         Q.     Sir, are you familiar with the

24    term "tapered edge," T-A-P-E-R-E-D, edge?

25         A.     I am familiar with it.

```
 1          Q.      From 2005 to 2007, did Taishan
 2    manufacture drywall with tapered edge?
 3          A.      According to my experience of
 4    working in this industry for years, there are
 5    only two types of edges.  One is tapered
 6    edge.
 7                  THE INTERPRETER:  The
 8          interpreter needs to clarify.
 9                  (Translation.)
10          A.      Another one is square edge.
11                  The normal gypsum board,
12    meaning the gypsum board used for ordinary
13    projects, we use only square edge.
14                  THE INTERPRETER:  Interpreter
15          correction.
16          A.      For ordinary projects we use
17    tapered edge.  When under ordinary
18    construction, there is a gap left between two
19    tapered edges.
20                  THE INTERPRETER:  Interpreter
21          needs to check dictionary for a word.
22                  Interpreter clarifying with
23          deponent.
24                  (Translation.)
25                  THE WITNESS:  May I explain to
```

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 172 of 647
Case 1:11-cv-22408-MGC Document 11-1 Entered on FLSD Docket 08/15/2011 Page 120 of 595
Confidential - Subject to Further Confidentiality Review

```
 1          the interpreter?

 2                  (Translation.)

 3          A.      In between the two tapered

 4    edge, the crack has been filled up by a

 5    filling powder in shape of upside-down

 6    triangle or trapezoidal shape.

 7    BY MR. MONTOYA:

 8          Q.      Sir, I appreciate your answer.

 9    My question was:  Did Taishan manufacture

10    drywall with tapered edges in 2005 to 2007?

11                  THE WITNESS:  I'm not done yet.

12                  MR. MONTOYA:  I'm sorry.

13          A.      And after it's been filled up

14    and flattened, you will put a joint tape,

15    which we mentioned in the morning, on top of

16    that.  That is to prevent a crack created

17    between two gypsum boards when they are

18    connected together.  Therefore, the gypsum

19    board in the world are usually use -- are

20    usually being manufactured by using tapered

21    edges.

22                  When using a square edge, it is

23    usually to process something on top of the

24    gypsum board, to cut and divide them into

25    small boards, about the size of 600 by 600,
```

```
 1   or 1.2 meter by 600, which is to be used
 2   together with trapezoidal-shaped structure.
 3            Therefore, ordinarily, most of
 4   the gypsum boards have tapered edges.  Square
 5   edges are rarely used.  It is only used in
 6   the small numbers of the board.  This is a
 7   universal use for gypsum boards in the world.
 8   BY MR. MONTOYA:
 9        Q.    Sir, I appreciate your answer.
10            The question I asked requires a
11   yes-or-no answer:  Did Taishan manufacture
12   boards with a tapered edge from the years
13   2005 through 2007, yes or no?
14        A.    Yes.
15        Q.    Did customers from time to time
16   request that Taishan put the words "Tapered
17   Edge" on the edge tape?
18        A.    That's possible.
19        Q.    I'm going to ask you to look at
20   Exhibit 35 and the photograph numbered
21   TG-0234635.
22            Did Taishan manufacture drywall
23   with edge tape as shown in TG-0234635?
24        A.    Do you not have a Chinese
25   version for that?
```

1  Q.    My only question is:  Is the

2  photograph -- is that edge tape that was

3  created by or manufactured by Taishan?

4  A.    This picture is very much

5  unclear.  If you look at it from afar, it

6  looks similar in a small degree that

7  resembles that of Taishan's; however, it

8  would be great if you can give me a more

9  clear version of it.

10  Q.    Sir, do you see the words

11  "Taihe" in that photograph on the labels?

12  A.    Well, I can only see the

13  Chinese character "mountain."  It was blurry

14  before the character and it was pretty blurry

15  after.  If I were to speculate, and I can

16  only speculate, it might be Taishan's edge

17  tape.

18  Q.    Sir, I'm going to ask you to

19  take a look at the Manufacturer Profile Form,

20  Exhibit 7, at line 6, please.

21      Do you see line 6?

22  A.    Yes.

23  Q.    I'd ask you to focus on the

24  column that says Edge Sealing Tape Markings

25  where it says "white edge sealing tape

```
 1        think you misstated.

 2               MR. MONTOYA:  I'm sorry, "Meet

 3        or Exceed."  I apologize.

 4        A.    You mean do they all have the

 5   words "Meet or Exceed"?

 6   BY MR. MONTOYA:

 7        Q.    In the singular.

 8        A.    Yes.

 9               (Deposition Exhibit PID-1I

10        marked.)

11   BY MR. MONTOYA:

12        Q.    Okay.  I'm going to hand you

13   Exhibit 1I.

14               MR. MONTOYA:  My understanding

15        is we've got less than five minutes on

16        the tape, so we'll switch out.

17               MS. EIKHOFF:  Okay.

18               THE VIDEOGRAPHER:  We are now

19        going off the video record.  The time

20        is currently 2:34 p.m.  This is the

21        end of Media No. 4.

22               (Recess taken, 2:34 p.m. to

23        2:46 p.m.)

24               THE VIDEOGRAPHER:  We are now

25        back on the video record with the
```

Confidential - Subject to Further Confidentiality Review

1          beginning of Media No. 5.  The time is

2          currently 2:46 p.m.

3    BY MR. MONTOYA:

4          Q.     Sir, I'm going to ask you to

5    look at Exhibit 1I, page 13.

6                 Do you see it?

7          A.     Yes.

8          Q.     And Taishan does not deny that

9    the markings in -- on page 13 are its?

10         A.     Correct.

11         Q.     And the word "Meet" is singular

12   on page 13?

13         A.     Correct.

14         Q.     How did you determine that

15   page 13 were markings from Taishan?

16         A.     During preparing for the

17   deposition as Taishan's corporate

18   representative, I've tried hard to search for

19   products, and finally we found in a corner of

20   our warehouse the American-sized gypsum

21   board.

22                And because the spray marking

23   on those residual American-sized gypsum board

24   is similar to the picture depicted here;

25   therefore, we do not deny it is the spray

```
 1   marking of Taishan.
 2        Q.     Sir, I'm going to ask you to
 3   look at page 17 of Exhibit 1I.  My
 4   understanding is that Taishan does not deny
 5   that the markings on page 17 are from
 6   Taishan.
 7        A.     Correct.
 8        Q.     The word "Meet" on page 17 is
 9   singular?
10        A.     Yes.
11        Q.     And the word "Exceeds" is
12   plural, correct?
13        A.     Yes.
14        Q.     How did you determine that this
15   is one of Taishan's boards at page 17 of
16   Exhibit 1I?
17        A.     During preparation on my
18   deposition as Taishan's corporate
19   representative, we went to the warehouse and
20   tried to discover, and we did discover, some
21   American-sized residual gypsum boards.  And
22   one of the kind of the boards that we have
23   discovered bears the spray marking
24   information which is similar to that on top
25   of page 17; therefore, we do not deny that
```

Confidential - Subject to Further Confidentiality Review

1    this is Taishan's board.

2          Q.     I want you to hold page 13 and

3    17 side by side.  Or I'll just show them to

4    you.

5                MR. TAYLOR:  Yeah, he'd have to

6          tear it apart.

7    BY MR. MONTOYA:

8          Q.     Is the font the same in

9    photograph 13 and 17?

10         A.     Comparatively similar.

11         Q.     I'd like you to turn to page 20

12   of Exhibit 1I.  My understanding is that

13   Taishan does not deny that the board markings

14   at Exhibit A are from Taishan?

15               And I should have said at

16   page 20, not Exhibit A.  I'm sorry.

17               MR. TAYLOR:  Yeah.

18         A.     Correct.

19   BY MR. MONTOYA:

20         Q.     I'm going to ask you to take a

21   look at photograph 18 of Exhibit 1I.  Taishan

22   denies that the markings on page 18 of

23   Exhibit 1I are from Taishan?

24         A.     Correct.

25         Q.     The markings on page 18 use the

```
 1    term "Meets" in the plural, correct?

 2         A.     Correct.

 3         Q.     The markings on the drywall on

 4    page 18 uses the term "Exceeds" in the

 5    plural, correct?

 6         A.     Correct.

 7         Q.     What did you rely upon to

 8    determine that the drywall in Exhibit 18 was

 9    not from Taishan?

10         A.     In preparing for my deposition

11    as Taishan's corporate representative, we

12    have tried to look for, and I have reviewed

13    many information and we have discovered --

14                THE INTERPRETER:  The

15         interpreter would like to reinterpret

16         the last sentence.

17         A.     I have reviewed many

18    information and also a big quantity of

19    pictures.  We have discovered in the corners

20    of our warehouse the residual American-sized

21    gypsum board which has the sprayed markings

22    on them.

23                Comparing those spray markings

24    with the ones specified on the manufacturer

25    profile, we decide those words, "Meet,"
```

Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 180 of 647
Case 2:14-cv-02722-MCF-JCW Document 27-1 Filed 09/15/2011 Page 180 of 428 of
595
Confidential - Subject to Further Confidentiality Review

1    without S, are not from Taishan.  Therefore,

2    we --

3              THE INTERPRETER:  Interpreter

4         needs to correct herself.  The

5         interpreter needs to clarify with the

6         deponent.

7              (Translation.)

8              THE INTERPRETER:  The

9         interpreter will reinterpret the last

10        part where she stopped at.

11        A.    After the comparison with the

12   manufacturer's profile, we decided that those

13   words with the word "Meet," without S, are

14   the spray markings on the boards that belong

15   to Taishan; therefore, we deny that the spray

16   markings on page 18, which has the word --

17   the letter S, that is a board from Taishan.

18             We have also not discovered any

19   records in Taishan that records the word

20   "Meet" with the letter S.

21   BY MR. MONTOYA:

22        Q.    Sir, I asked you some questions

23   earlier, just a few minutes ago, where we

24   went through the entries in the Manufacturer

25   Profile Form where it said "Meet or Exceed"

1    in the singular and the descriptions.

2              Do you remember that?

3    A.     I remember that.

4    Q.     The photographs we received

5    from the factory on Saturday show that the

6    Taishan board says "Exceeds" in the plural.

7              Which of these is correct?

8              MR. TAYLOR:  Objection to form.

9              THE WITNESS:  Do I need to

10   answer that?

11             MR. TAYLOR:  Yes.

12             MR. MONTOYA:  Yes.

13   A.     I believe the Manufacturer

14   Profile Form created by Mr. Peng is correct,

15   but it's possible that it's not very

16   accurate.  It did not pay attention to small

17   details, such as the changes between plural

18   and singular forms.

19             However, while preparing for

20   the deposition, while as the Taishan

21   corporate representative, we have discovered

22   the residual American-sized gypsum board in

23   the storage with the spray marking, which can

24   actually give a remedy to the defects such as

25   that, which is to say that all our

```
1    information is accurate.
2    BY MR. MONTOYA:
3         Q.    Sir, if you could take a look
4    at page 18 of Exhibit 1I, and if you hold it
5    horizontally, do you see the edge tape in the
6    lower right-hand corner?
7         A.    I see that.
8         Q.    Is that Taishan edge tape?
9         A.    Left -- lower left or lower
10   right?
11        Q.    Where the circle is.
12        A.    (Indicating.)
13        Q.    Yes, sir.
14        A.    I see that.
15        Q.    Is that Taishan edge tape?
16        A.    I cannot confirm that.
17        Q.    Why not?
18        A.    The information is much lacking
19   on it.
20        Q.    What other information would
21   you need to confirm it?
22        A.    More complete and comprehensive
23   information.
24        Q.    Such as?
25        A.    Such as information on page 14.
```

Confidential - Subject to Further Confidentiality Review

1    Profile Form at line 15, please.  Do you see

2    line 15?

3         A.     I see that.

4         Q.     I'm going to ask you to look at

5    lines 22 to 23 and 29 through 58.  Do you

6    agree with me that the product markings for

7    each of those lines, 15, 22 to 23, and 29

8    through 58, is "DRYWALL" in all capital

9    letters --

10        A.     Stop for a moment.  I

11   apologize.  First of all, let me know which

12   document you want me to look at and then let

13   me know which part of the document you want

14   me to look at before you ask a question.

15              It's important -- it's

16   impossible for me to look through everything

17   and then come back to the specific lines you

18   asked me to look at.

19   BY MR. MONTOYA:

20        Q.     I'm looking at the same

21   Manufacturer Profile Form as you have in your

22   hands.

23              MR. TAYLOR:  Counsel --

24        A.     Which part of line 15 do you

25   want me to focus on?

Confidential -- Subject to Further Confidentiality Review

1    BY MR. MONTOYA:

2         Q.     Sure.   The Product Marking

3    section.

4         A.     All right.

5         Q.     And I'm going to ask you to

6    look at the same Product Marking sections for

7    line 15, 22 through 23, and 29 through 58.

8              MR. TAYLOR:   Counsel, we

9         appreciate you giving him the

10        opportunity.   Thank you.

11        A.     I see that.

12   BY MR. MONTOYA:

13        Q.     And in all of those lines, the

14   product markings are "DRYWALL" in all capital

15   letters, correct?

16        A.     Correct.

17        Q.     How do you know -- how does

18   Taishan know that the word "DRYWALL" is in

19   all capital letters for the drywall that

20   Taishan manufactured at lines 15, 22 to 23,

21   and 29 to 58?

22        A.     Like I said earlier, the

23   Manufacturer Profile Form created by Mr. Peng

24   is correct but not necessarily precise

25   because it did not distinguish capital letter

1    with lowercase letter.

2        Q.    Is it possible that Taishan

3    manufactured drywall with product markings

4    with the word "Drywall" but not in all

5    capital letters?

6            THE WITNESS:  Ask again,

7        please.

8            THE INTERPRETER:  The

9        interpreter will reinterpret.

10           (Translation.)

11           (Pause.)

12           MR. MONTOYA:  There's still a

13       pending question, correct?

14       A.    During my preparation for the

15   deposition as representative of Taishan

16   Corporation, I have tried very hard to search

17   for many materials, including compare sample

18   boards, compare the Manufacturer Profile

19   Forms and many pictures.

20           I did not discover any direct

21   information regarding the word "Drywall";

22   therefore, I cannot be sure of that.

23       Q.    Sir, I'm going to ask you to

24   focus on my question.

25           Is it possible that Taishan

Confidential - Subject to Further Confidentiality Review

1   manufactured drywall with the term -- with

2   the word "Drywall" not in all capital letters

3   from 2005 to 2007?

4        A.    Because I've not received more

5   information in that regard; therefore I

6   cannot confirm with you about that.  I have

7   not discovered relevant record in Taishan.

8             (Deposition Exhibit PID-1J

9        marked.)

10  BY MR. MONTOYA:

11       Q.    Sir, I'm going to hand you

12  Exhibit 1J to your deposition.  Sir, you

13  agree with me that Taishan does not deny that

14  the drywall markings contained at Exhibit 1J,

15  page 2, were manufactured by Taishan?

16       A.    We're not sure whether or not

17  the product depicted on Exhibit PID-1J,

18  page 2 is from Taishan.  The W in the word

19  "Drywall" is similar to the W we have

20  discovered on the spray marking on the boards

21  which have American sizes and are residual

22  that we have discovered in Taishan's

23  warehouse.

24  BY MR. MONTOYA:

25       Q.    All I'm trying to find out is:

1    In Exhibit 3, my understanding is that

2    Taishan does not deny that page 2 of

3    Exhibit 1J was manufactured by Taishan.

4              Am I mistaken?

5              MR. TAYLOR:  Objection to form.

6         A.    Can you repeat which exhibit --

7    BY MR. MONTOYA:

8         Q.    Sure.  I'm sorry.

9         A.    -- you were referring to?

10        Q.    Exhibit 3, category J.

11        A.    PID-3, first of all, Taishan

12    denied the product markings on 5, 6, 7, 8, 9,

13    10, 11.

14        Q.    I'm asking you about 2.

15             MR. TAYLOR:  I don't think he

16        was finished.

17        A.    As for 2, we neither confirm

18    nor deny that it is a product of Taishan

19    because of the significant lack of

20    information on it.

21    BY MR. MONTOYA:

22        Q.    Are there any other answers

23    regarding product ID in Exhibit 3 that you're

24    changing as corporate representative of

25    Taishan today?

Confidential - Subject to Further Confidentiality Review

```
 1              MR. TAYLOR:  Objection to form.
 2              THE INTERPRETER:  The
 3         interpreter needs to inquire of
 4         counsel the meaning for "you're
 5         changing as corporate representative
 6         of Taishan today."
 7              Can you paraphrase as for
 8         "changing"?
 9    BY MR. MONTOYA:
10         Q.    My reading of Exhibit 3,
11    category J, is that Taishan does not deny the
12    markings in photograph 2.  What you're
13    telling me today is that you can neither
14    confirm nor deny the markings in
15    photograph 2.
16              Is my understanding correct?
17              MR. TAYLOR:  Objection, form.
18         A.    I do not deny the possibility
19    that 2 is a product of Taishan, as a
20    possibility.
21    BY MR. MONTOYA:
22         Q.    And as we look at photograph 2,
23    the word "Drywall" contains both capital
24    letters and lowercase letters, correct?
25         A.    Correct.
```

Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 189 of 647
Case 1:11-cv-00080-MSC Document 1 Entered on FLSD Docket 05/17/2011 Page 137 of 595
Confidential - Subject to Further Confidentiality Review

```
 1                    MR. TAYLOR:  Objection to form.

 2     BY MR. MONTOYA:

 3           Q.      You'd agree with me that the

 4     Manufacturer Profile Form at Exhibit 7 does

 5     not distinguish between capital letters or

 6     lowercase letters in the Product Marking

 7     section with the word "Drywall"?

 8                    MR. TAYLOR:  Did you give a

 9           line number?  No, you didn't.

10                    MR. MONTOYA:  No, I'm talking

11           about the entire form.

12                    MR. TAYLOR:  Okay.  All right.

13           Just objection, form.

14           A.      The "Drywall" in the entire

15     document?

16     BY MR. MONTOYA:

17           Q.      Here's what I'm asking:  In the

18     Manufacturer Profile Form at Exhibit 7, when

19     the word "Drywall" is contained as a product

20     marking, the Manufacturer Profile Form does

21     not distinguish between capital letters and

22     lowercase letters, correct?

23           A.      It uses all capital letters

24     under Product Markings column.

25           Q.      And that's because Mr. Peng did
```

Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 190 of 647
Case 1:11-cv-22408-MGC Document 131 Entered on FLSD Docket 05/09/15 Page 138 of
595

Confidential - Subject to Further Confidentiality Review

1    not distinguish between capital letters and

2    lowercase letters when reporting in the

3    Manufacturer Profile Form, correct?

4              MR. TAYLOR:  Objection to form.

5         A.    I cannot confirm that because I

6    was not the one who created the Manufacturer

7    Profile Form.

8    BY MR. MONTOYA:

9         Q.    I'm going to ask you to look at

10   Exhibit J, photographs 2 and 9, which I'll

11   hold out in front of you.  Is the Y in

12   "Drywall" at page 2 the same as the Y in

13   "Drywall" at page 9?

14        A.    There's some similarities.

15        Q.    What about the W?  Is the W on

16   page 2 the same as the W on page 9 of

17   Exhibit 1J?

18        A.    I cannot see the W very

19   clearly.  I would need you to provide me with

20   more information, because I believe every

21   picture should have a set of pictures that

22   come with it, not only this one picture.

23        Q.    You can hand those back to me,

24   sir.

25              If you could take a look at

Confidential - Subject to Further Confidentiality Review

1    Exhibit 1J, number 5, please.  My

2    understanding is that Taishan denies that it

3    marked drywalls -- drywall as depicted in the

4    photograph at page 5 of Exhibit 1J; is that

5    correct?

6         A.    Correct.

7              (Deposition Exhibit PID-20

8         marked.)

9    BY MR. MONTOYA:

10        Q.    I'm going to show you what's

11   been marked as Exhibit 20 to your deposition.

12             Sir, before I ask you a

13   question about Exhibit 20, could you tell me

14   what Taishan relied upon to deny the markings

15   at page 5 of Exhibit 1J?

16        A.    Based on my years of experience

17   in the gypsum board industry, the marking on

18   page 5 is not a sprayed marking, but rather a

19   painted marking.

20        Q.    How are you able to tell that?

21        A.    Usually the markings sprayed by

22   marking sprayer machine is not in such a

23   density, neither this dark.  Just like the

24   sample board -- sample board we have

25   provided, it is aggregated by many very tiny

Confidential - Subject to Further Confidentiality Review

1    dots or a little bigger dots, because while

2    spraying, the mark spraying machine injects

3    needle-like sprays, not paintings.

4         Q.    Sir, I'm going to ask you

5    questions about Exhibit 20 now, if you could

6    turn to that, please.

7              Exhibit 20 is an e-mail dated

8    November 1st, 2006 from Jiapo Yang to Wenny

9    Yin.

10             Do you see that?

11        A.    I see that.

12        Q.    And Jiapo Yang was also known

13   as Apollo Yang?

14        A.    Apollo Yang, Yang Jiapo.  His

15   English name is Apollo Yang.  That is

16   correct.

17        Q.    And he's a Taishan -- or was a

18   Taishan employee?

19        A.    Yes.

20        Q.    And he sent pictures of

21   container packages to Wenny Yin, correct?

22        A.    That's what is reflected from

23   the document.

24        Q.    I'm going to ask you to take a

25   look at the photograph that's attached to

Confidential - Subject to Further Confidentiality Review

1    Exhibit 20 that's labeled TG-234500.

2              Do you see that?

3              Sir, I'm asking you to look at

4    the photograph that you have right in front

5    of you.

6         A.    I see that.

7         Q.    I'd like you to take a look at

8    the photograph at TG-234500, and at the same

9    time page 5 of Exhibit 1J that's right in

10   front of you.

11             Would you agree with me that

12   the markings contained at TG-234500 are the

13   same as that as in Exhibit 1J, page 5?

14        A.    There's some similarities of

15   fonts, but because the picture is in black

16   and white, you cannot see whether or not it

17   is injected by needle sprayer.  In addition

18   to that, this set of pictures cannot prove

19   that the products are from Taishan.

20        Q.    When Mr. Yang took pictures

21   back in 2006, did he take them in color?

22             MR. TAYLOR:  Objection to form.

23        A.    You provided this document.  I

24   do not know what was -- what was it like from

25   what he took.  I am also not certain whether

```
1    or not these were taken by Jiapo Yang because

2    there is no explanation or remarks whatsoever

3    contained in the e-mail.

4    BY MR. MONTOYA:

5        Q.    Sir, I'm going to ask you to

6    look at Exhibit 1J again.  At Exhibit 1J,

7    Taishan is denying photographs 6, 7, 8 and 10

8    and 11; is that correct?

9            MR. TAYLOR:  Objection to form.

10       A.    Yes.

11   BY MR. MONTOYA:

12       Q.    What did Taishan rely upon to

13   deny 6, 7, 8 and 10 and 11 of Exhibit 1J?

14           MR. TAYLOR:  Is it all right,

15       Counsel, if he takes them one at a

16       time?

17           MR. MONTOYA:  Sure.

18           MR. TAYLOR:  Okay.

19   BY MR. MONTOYA:

20       Q.    Sir, if you would like to go

21   through the photographs one at a time, that's

22   acceptable.

23       A.    Remember at the time we were

24   determining the picture on number 6, we had

25   our attorney provided us also with a set of
```

Confidential – Subject to Further Confidentiality Review

1    pictures.  I don't know if you have those

2    pictures in hand.

3         Q.     When was that?

4         A.     While we were determining

5    PID-3, at that time, because we could not see

6    clearly from the picture on number 6;

7    therefore, we raised a question to the

8    attorney to see whether there are more

9    pictures or more details.

10            But if I'm not mistaken in my

11   memory, there are other more detailed

12   pictures, as a set of pictures, under

13   number 6.

14        Q.     Is your -- is Taishan's

15   position that it doesn't have enough

16   information to admit that it manufactured

17   drywall with the markings at photograph 6?

18        A.     At the time we required more

19   information in order to make the

20   determination, and also, you should be the

21   one that provided those information.

22        Q.     Why was number 7 denied by

23   Taishan?

24            THE WITNESS:  How long has it

25   been?  I would like to take a break.

Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 196 of 647
Case 1:14-cv-24342-MGC Document 31-1 Entered on FLSD Docket 09/15/2017 Page 474 of 595
Confidential - Subject to Further Confidentiality Review

```
1              MR. TAYLOR:  Yeah.
2              THE WITNESS:  I'd like to go to
3         the restroom.
4              MR. MONTOYA:  I just want to
5         get an answer to that question.
6              MR. TAYLOR:  Okay.  Just answer
7         one question.
8    A.      The basis for determining
9    number 7 is because the W on page 7 is
10   different from our W.  The W from Taishan
11   resembles a rounder bottom, but this W is
12   more squared.
13             While preparing for the
14   deposition as company's representative, I
15   tried hard to discover many information, but
16   I have not found that Taishan had any
17   spray -- sprayed marks like this one.
18             MR. MONTOYA:  Take a break.
19             MR. TAYLOR:  Okay.  Thanks.
20             THE VIDEOGRAPHER:  We're now
21        going off the video record.  The time
22        is currently 3:43 p.m.  This is the
23        end of Media No. 5.
24             (Recess taken, 3:43 p.m. to
25        3:59 p.m. )
```

Confidential - Subject to Further Confidentiality Review

```
 1              THE VIDEOGRAPHER:  We are now
 2        back on the video record with the
 3        beginning of Media No. 6.  The time is
 4        currently 3:59 p.m.
 5   BY MR. MONTOYA:
 6        Q.     Sir, I'm going to ask you to go
 7   briefly back to Exhibit 20, please.  That was
 8   the e-mail from Apollo Yang.
 9        A.     I see that.
10        Q.     I just wanted to clarify that
11   the first page of Exhibit 20 is the English
12   translation, but the originals are TG-234499
13   through 234511.  Do you see that?
14              Do you acknowledge that the
15   e-mail was written by Apollo Yang?
16              MR. TAYLOR:  Objection, form.
17              MR. MONTOYA:  What's the
18        objection?
19              MS. EIKHOFF:  Form.
20              MR. TAYLOR:  Form.
21              MR. MONTOYA:  But what's wrong
22        with it?
23              MR. TAYLOR:  We don't know
24        that.  That's what it says, but I
25        don't know if he can acknowledge that.
```

```
 1            MR. MONTOYA:  Let me ask you
 2       this way then:  Is there a business
 3       records problem, exception 803(6)
 4       problem with this document?  I'm
 5       asking for a stipulation because I
 6       don't want to have to walk him through
 7       it.
 8            MR. TAYLOR:  Yeah.  I think
 9       we'd have to look at it and think
10       about it, but as far as we know, this
11       document says it came from Apollo
12       Yang, but --
13            MS. EIKHOFF:  It was produced
14       by Hogan Lovells, right?
15            MS. ROBERTSON:  No, no, it was
16       produced from Peng's computer in 2015.
17            MR. TAYLOR:  Oh, is that right?
18            MS. EIKHOFF:  Okay.  Well, I
19       appreciate that clarification.
20            MR. TAYLOR:  Then those
21       stipulations are okay.
22            MR. MONTOYA:  All right.
23            You can put that exhibit down
24       now, sir, thank you.
25            ///
```

Confidential - Subject to Further Confidentiality Review

```
 1    BY MR. MONTOYA:
 2         Q.     I'm going to ask you to take
 3    another look at Exhibit 41.  In your earlier
 4    testimony you had referenced the letter W in
 5    some of the photographs that were taken at
 6    the Taishan factory.
 7               Do you recall that?
 8         A.     Yes.
 9         Q.     And you described the W as
10    having a rounder bottom and having some
11    different characteristics.
12               Do you recall that?
13         A.     Yes.
14         Q.     Where is the W that you were
15    referring to in the photographs in
16    Exhibit 41?
17         A.     Page 18, the W on page 18.
18         Q.     Does the W at page 18 appear to
19    be the same W at Exhibit 1, page 2?
20         A.     Very similar.
21         Q.     Does the Manufacturer Profile
22    Form, Exhibit 7 -- does it contain any
23    information as to whether the markings are
24    painted on the drywall?
25         A.     The Manufacturer Profile Form
```

Confidential – Subject to Further Confidentiality Review

1    does not contain the information whether or

2    not it was painted; however, as a corporate

3    representative of Taishan in preparing of my

4    deposition, I've learned and confirmed that

5    ever since 2004 Taishan had already started

6    to use the spray marking.

7         Q.    Who did you get that

8    information from?

9         A.    I confirmed with the personnel

10   of our purchasing department as well as our

11   production department.

12        Q.    Can you give me any names?

13        A.    The person in the production

14   department is a lady by the name of Madam

15   Zhu, Z-H-U.  I'm not sure about her full

16   name.

17              In purchasing department at the

18   time, it was a Mr. Pi, who was in charge of

19   the spray marking machine.

20        Q.    I'll take you back to

21   Exhibit 1J.  I'd ask you to look at page 8.

22              Why does Taishan deny that it

23   manufactured the drywall with the markings

24   contained at page 8?

25        A.    During the preparation of the

Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 201 of 647
Case 1:11-cv-02408-MSK-KLM Document 1-5 Entered on FLSD Docket 09/15/2014 Page 149 of 595
Confidential - Subject to Further Confidentiality Review

1  deposition as Taishan's corporate

2  representative, I have done a lot of research

3  and have searched for a lot of information.

4  And the conclusion made out of that is that

5  Taishan's 4x12x1/2, the symbol of

6  multiplication sign, is actually not the sign

7  itself, but a checkmark.  It is not the star

8  sign.

9       Q.     And for clarification, when you

10  say the checkmark, is it the English letter

11  x?

12       A.     Multiplication sign.

13       Q.     That looks like an x in

14  English.

15       A.     Correct.

16       Q.     Is it Taishan's position that

17  it has never manufactured drywall with

18  markings with the asterisk at page 8?

19       A.     From my discovery through much

20  effort in researching, I discovered

21  information and materials in my capacity as

22  the corporate representative for preparing

23  the deposition; I did not find any record

24  which shows the asterisk as the

25  multiplication sign.

Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 202 of 647
Case 1:11-cv-02088-MSK-CBS Document 1-Exhibit 9 Docket 08/15/2011 Page 450 of 595
Confidential - Subject to Further Confidentiality Review

1    Q.    What evidence do you have that

2  Taishan never manufactured a drywall board

3  with the markings -- with an asterisk in the

4  markings?

5    A.    I have not -- I have not

6  discovered any record containing Taishan's

7  information with asterisk sign in it while I

8  was preparing for my deposition as Taishan's

9  corporate representative.

10    Q.    If a customer asked you --

11  asked Taishan from 2005 to 2007 to prepare

12  markings with an asterisk, could Taishan have

13  done it?

14          MR. TAYLOR:  Objection to form.

15    A.    Currently we have not

16  discovered the record of Taishan using

17  asterisk as multiplication sign so far.  We

18  have also not discovered any request from

19  customer as to replace multiplication sign

20  with asterisk.

21          Customarily, using a

22  multiplication sign is easier to operate than

23  using an asterisk.

24  BY MR. MONTOYA:

25    Q.    Sir, what do you call the --

Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 203 of 647
Case 1:11-cv-22408-MGC Document 122-7 Entered on FLSD Docket 08/15/2014 Page 151 of 595
Confidential - Subject to Further Confidentiality Review

1    this symbol here on page 8?  Is that an

2    asterisk or a multiplication sign?  How do

3    you refer to it?

4         A.     We call it asterisk.

5         Q.     Please focus on my question:

6    Did Taishan have the ability to put an

7    asterisk as a product marking in its

8    factories from 2005 to 2007 on drywall?

9              MR. TAYLOR:  Objection to form.

10              THE WITNESS:  Do I need to

11        answer?

12              MR. TAYLOR:  Yes, answer.

13        A.     I'm not sure about that because

14   I have not discovered Taishan's record for

15   putting the asterisk sign; therefore, I'm not

16   sure whether or not Taishan is capable of

17   putting that sign.

18   BY MR. MONTOYA:

19        Q.     You just don't know.

20        A.     I did not find relevant records

21   while I was preparing as a witness for the

22   company as a corporate representative.

23        Q.     Sir, what evidence does Taishan

24   rely upon to deny that its -- that the

25   markings contained on the drywall at page 10

Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 204 of 647
Case 1:11-cv-22408-MGC Document 27-3 Entered on FLSD Docket 08/15/2011 Page 452 of 595
Confidential - Subject to Further Confidentiality Review

1    of Exhibit 1J?

2        A.    Because all letters on the

3    picture of page 10 are capital letters.  We

4    did not discover any similar letters from

5    Taishan's record while I was preparing for

6    the deposition as a corporate representative.

7        Q.    What evidence does Taishan rely

8    upon to deny that it manufactured the drywall

9    shown in photograph 11 of Exhibit 1J?

10       A.    It's because the W contained on

11   page 11 is cornered and squared.  It is not

12   like the W of Taishan's product, which is

13   round.

14       Q.    Taishan doesn't have any

15   documents to show that it did not mark its

16   drywall with the W as depicted in

17   photograph -- or page 11, correct?

18       A.    During the preparation of my

19   deposition as the corporate representative,

20   we have discovered from the warehouse the

21   American-sized residual gypsum board has the

22   injected W which is different from this one.

23       Q.    Is the W that you're referring

24   to the W in Exhibit 41 that you showed us at

25   photograph 18, I believe?

Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 205 of 647
Case 1:19-cv-22488-MGC Document xxx Entered on FLSD Docket 08/15/2019 Page 453 of 595

Confidential – Subject to Further Confidentiality Review

1      A.      Correct.

2              (Deposition Exhibit PID-1B

3      marked.)

4  BY MR. MONTOYA:

5      Q.      I'm going to hand you

6  Exhibit 1B to your deposition.  Sir, what

7  evidence does Taishan have to deny that it

8  manufactured the boards -- or the drywall in

9  the photograph at Exhibit 1B, page 34?

10     A.      During my preparation for the

11 deposition as Taishan's corporate

12 representative, I have done a lot of

13 research, acquiring information.  I have not

14 found any record showing that Taishan had

15 manufactured any edge tape or sprayed marking

16 bearing the letters "C&K."

17             And according to my knowledge,

18 C&K is also a gypsum board manufacturer; its

19 Chinese name is Chenxiang.  And from the

20 information I learned from customers, at that

21 time, Chenxiang had also manufactured a lot

22 of the products with white edge tape and

23 without sprayed letters.

24             THE INTERPRETER:  The

25     interpreter needs clarification.

Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 206 of 647
Case 1:11-cv-22408-MGC Document 291-1 Entered on FLSD Docket 09/15/2014 Page 454 of
595

Confidential - Subject to Further Confidentiality Review

```
1              (Translation.)

2       A.    Or it has manufactured

3  according to the request of the customers,

4  the American size label -- sprayed labeled

5  universal-sized board.

6              THE INTERPRETER:  Interpreter

7       needs clarifying.

8              (Translation.)

9              THE INTERPRETER:  There's no

10      correction on the interpretation.

11             MR. MONTOYA:  No correction?

12             THE INTERPRETER:  No

13      correction.

14  BY MR. MONTOYA:

15      Q.    Which customers did you speak

16  with?

17      A.    I don't have a clear

18  recollection of that, but it is a common

19  knowledge in the industry.  We have learned

20  relevant information from our many

21  interactions with customers.

22             At the time there were many

23  small factories in Pingyi, such as Chenxiang,

24  Baier, or Zhongxing, et cetera, and also

25  Kang Yijia in Taian, and some small factories
```

Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 207 of 647
Case 1:11-cv-22408-MGC Document 117 Entered on FLSD Docket 03/15/2013 Page 455 of
595
Confidential - Subject to Further Confidentiality Review

```
 1             "without label" in the English

 2             translation.

 3   BY MR. MONTOYA:

 4       Q.     What records do you have to

 5   support your statements that all these

 6   companies that you mentioned produced the

 7   drywall that you've described?

 8       A.     First of all, this kind of

 9   information was open at the time in the

10   industry.

11             Secondly, if you could check,

12   you'll find all those manufacturers were

13   included in your initial complaint.  In other

14   words, you know about it.

15       Q.     Did you take any notes of your

16   conversations with your customers?

17       A.     In China, how should I put it,

18   we don't have this kind of behavior.

19       Q.     Here's what I'm asking:  When

20   you prepared for your testimony as the

21   corporate representative and you inquired

22   about the C&K drywall, my understanding is

23   you called customers to get information.

24             Did you take any notes of those

25   conversations?
```

Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 208 of 647
Case 2:09-md-02047-EEF-MBN Document 22297-10 Entered 05/00/19 Page 456 of
595
Confidential - Subject to Further Confidentiality Review

1          MR. TAYLOR:  Objection to form.

2     A.     There have been many changes,

3   one after another, between 2006 and 2007 as

4   for the customer information.  It's been so

5   long that we're not even sure whether or not

6   those companies still exist.

7          Because at the time, between

8   2005 to 2007, while Taishan was manufacturing

9   American-sized gypsum board, I was only a

10  salesperson; therefore, I have had

11  interactions with many customers, but no

12  records were left.

13  BY MR. MONTOYA:

14     Q.     Sir, did Taishan ever

15  manufacture any drywall for the company

16  Chenxiang?  And I'm sorry for my

17  pronunciation.

18     A.     No.  We're competitors.  It's

19  impossible for us to manufacture gypsum board

20  for them.  The quality of our products far

21  exceeds that of theirs.

22     Q.     Did Taishan ever enter into any

23  contracts with the company Chenxiang?

24     A.     Not according to my knowledge,

25  because we're competitors.  There is an

1    unspoken rule in the industry.  It's

2    impossible for me to use my product, which is

3    very good, to gold coating such a small

4    factory.

5           Q.      Sir, did Taishan do any

6    business with York Building Supply Company

7    that you're aware of?

8                   MR. TAYLOR:  Can you say that

9           name again?

10                  MR. MONTOYA:  Yes.

11   BY MR. MONTOYA:

12          Q.      York Building Supply.

13                  MR. TAYLOR:  Okay.  Thanks.

14          Thank you.

15   BY MR. MONTOYA:

16          Q.      Like New York.

17          A.      Is that a Chinese company or a

18   foreign company?

19          Q.      It's a company outside of

20   China.

21          A.      York?  Is it listed on the

22   Manufacturer Profile Form?

23          Q.      No, sir.

24          A.      I really do not recall there is

25   such a company.

Confidential - Subject to Further Confidentiality Review

```
 1          Q.     Do you know if Taishan ever did

 2   any business with a company called

 3   HLK Industries?  And I will also tell you it

 4   is not on the Manufacturer Profile Form.

 5          A.     I also don't recall that.

 6                 (Deposition Exhibit PID-1G

 7          marked.)

 8   BY MR. MONTOYA:

 9          Q.     Sir, I'm going to hand you

10   Exhibit 1G to your deposition.

11                 Sir, does Taishan deny that it

12   manufactured the board, the drywall, shown on

13   page 43 of Exhibit 1G?

14          A.     Correct.

15          Q.     Please tell us why.

16          A.     During the time to prepare for

17   my deposition on behalf of the corporation,

18   Taishan, as its representative, I have

19   reviewed a lot of materials as well as

20   compared a lot of information.

21                 I did not find any information

22   of Taishan having produced products for

23   ProWall.

24          Q.     Is your answer the same for

25   page 44 of Exhibit 1G?
```

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 211 of 647
Case 1:11-cv-22408-MGC Document 27 entered on FLSD Docket 08/15/2013 Page 159 of
595

Confidential - Subject to Further Confidentiality Review

1      A.      Page 44?

2      Q.      Yes, sir.

3      A.      Correct.

4      Q.      From 2006 to 2007, did Taishan

5   manufacture drywall that said on the edge

6   tape "Fire Resistive Gypsum"?

7      A.      Edge?  Which edge are you

8   referring to?

9      Q.      The edge tape.

10      A.      What is information reflected

11   in there?

12      Q.      My question is:  Did Taishan

13   ever manufacture any drywall -- manufacture

14   any drywall with the edge tape that had the

15   words "Fire Resistive Gypsum" on it from 2006

16   to 2007?

17      A.      Are you talking about American

18   size?

19      Q.      Yes.

20      A.      If you are talking about

21   American size, then during the preparation of

22   my deposition as Taishan corporate

23   representative, I did not find any

24   information with the edge tape bearing the

25   words fire resistive, something, something,

Confidential - Subject to Further Confidentiality Review

```
1    BY MR. MONTOYA:
2          Q.    Can you tell us what Exhibit 50
3    is, sir?
4          A.    It is an invoice.
5          Q.    An invoice from whom?
6          A.    It should be from -- it should
7    be from Taishan.
8          Q.    Is this --
9          A.    It is a common invoice.
10         Q.    Did you say the term "common
11   invoice"?
12         A.    Correct.
13         Q.    What do you mean by common
14   invoice?
15         A.    There are two types of invoices
16   in China.  The invoice for ordinary taxpayers
17   is called an invoice for added value.
18              THE INTERPRETER:  Interpreter
19         needs to clarify.
20              (Translation.)
21         A.    The small-scale taxpayers
22   invoice belongs to the category of commercial
23   invoice.  In China, only ordinary taxpayers
24   may issue a common invoice and value-added
25   tax invoice.
```

Confidential - Subject to Further Confidentiality Review

1          But a small-scale taxpayer can

2    also accept common invoice; he cannot accept

3    value-added tax invoice, and he can only

4    issue common invoice.

5    BY MR. MONTOYA:

6          Q.     Sir, Exhibit 50 is an invoice

7    from Taishan to Run & Fly (Jinan) New

8    Materials Company, Limited, correct?

9          A.     Correct.

10         Q.     And it's dated May 8th, 2006?

11         A.     Correct.

12         Q.     Did Run & Fly (Jinan) New

13   Materials Company, Limited request that

14   Taishan make drywall for it pursuant to this

15   invoice?

16         A.     Manufacturing gypsum boards is

17   not to be in accordance with an invoice.  The

18   invoice is something like a receipt after a

19   sales transaction is completed.

20         Q.     Sir, does this invoice tell you

21   that Taishan manufactured drywall for Run &

22   Fly (Jinan) New Materials Company, Limited?

23         A.     Correct.  We call it gypsum

24   board.

25         Q.     Okay.  What dimensions were

Confidential - Subject to Further Confidentiality Review

1    produced by Taishan for Run & Fly (Jinan) New

2    Materials?

3         A.    It's 3.66 meter by 1.22 meter

4    by 12.7.

5         Q.    Is that the same as the

6    dimensions 4 feet by 12 feet by 1/2 inch?

7         A.    When you make the conversion,

8    it is the same.

9         Q.    How many pieces of drywall

10   total were ordered by Run & Fly (Jinan) New

11   Materials from Taishan?

12        A.    I'll need to add them.

13        Q.    What are the numbers in this

14   invoice?

15        A.    There are two numbers.

16        Q.    What are those two numbers?

17        A.    There is a total when you add

18   those two together.

19        Q.    What's the total?

20        A.    May I have a calculator?

21        Q.    Well, can you tell me what the

22   numbers are?

23        A.    The line on top is 598.  The

24   line at the bottom is 9,338.

25             MR. SERPE:  Counsel, can we get

Confidential - Subject to Further Confidentiality Review

1          a stipulation that the total is 9,936?

2                MR. TAYLOR:  I object to your

3          question.  Somebody wants to go home,

4          I think.

5                MR. SERPE:  No, no, I got the

6          calculator out.  I'm trying to be

7          helpful here.

8                MR. TAYLOR:  Okay.  We're good.

9    BY MR. MONTOYA:

10         Q.    Do we agree that the total is

11   9,936 boards?

12               MR. TAYLOR:  Yes.

13         A.    If this gentleman does not have

14   any problem with your math, it should be

15   correct.

16   BY MR. MONTOYA:

17         Q.    Okay.  Is the sale to Run & Fly

18   (Jinan) New Materials reported in the

19   Manufacturer Profile Form, Exhibit 7?

20         A.    No.

21         Q.    Why not?

22         A.    Because at the time it issued a

23   common invoice; therefore, we do not think it

24   is for exporting because all that is involved

25   in exporting would want a value-added tax

Confidential - Subject to Further Confidentiality Review

1  invoice.

2          If it did not request a

3  value-added tax invoice but you're exporting

4  it, you have to supplementally pay an

5  additional tax to the Chinese custom, which

6  is not a good deal.

7          Therefore, at the time, we did

8  not believe it was for exporting.

9      Q.    Do you know what the markings

10  are on this drywall that was produced for

11  Run & Fly (Jinan) New Materials?

12      A.    White edge tape with no

13  writings without spray marking.

14      Q.    White edge tape and no spray

15  marking, correct?

16      A.    Correct.

17      Q.    And you later found out that

18  these boards went to the United States,

19  correct?

20          MR. TAYLOR:  Objection to the

21      form.

22      A.    We did not find out that it

23  went to the United States.  But afterwards,

24  we confirmed that the size is American size.

25          ///

Confidential - Subject to Further Confidentiality Review

```
 1   BY MR. MONTOYA:

 2        Q.      How did you find out that the

 3   size was American size?

 4        A.      Because later, everybody was

 5   saying the size of 4 feet by 12 feet by half

 6   inch is an American size.

 7        Q.      What other sales did you do

 8   with Run & Fly (Jinan) New Materials?

 9        A.      For Jinan Run & Fly New

10   Material Company, we have only made this one

11   batch with American size, and also, it was

12   with the white edge tape with no writings and

13   no spray marking on the back.  And common

14   invoice was issued.

15              From what we learned

16   afterwards, because Taishan's price is

17   comparatively high, then it went to Kang

18   Yijia and made purchase for a lot of gypsum

19   boards with American size.

20        Q.      Can you explain the last part

21   of your answer for us, when you say that

22   the -- I think what you said is the drywall

23   went to Kang Yijia, which I can't pronounce,

24   and they made a lot of purchase of gypsum

25   boards for the American size.
```

Confidential - Subject to Further Confidentiality Review

```
1                    Explain that for us.

2                    MR. TAYLOR:  Objection to the

3           form.

4           A.     What kind of explanation you're

5      asking?

6      BY MR. MONTOYA:

7           Q.     I didn't understand the second

8      part of your answer.  Can you explain it more

9      for us?

10          A.     Afterwards, according to what

11     we have learned, Jinan Run & Fly New Material

12     Company, Limited had only ordered one batch

13     of American-sized gypsum board from Taishan,

14     and also, it was white edge tape without

15     writings and without spray marking on the

16     back.

17                    Afterwards, because Taishan's

18     product price was comparatively high, Jinan

19     Run & Fly New Material Company ordered a lot

20     of American-sized gypsum board from Kang

21     Yijia.

22                    Am I helping you to understand

23     now?

24          Q.     Yes, I understand now.  Thank

25     you.
```

Confidential - Subject to Further Confidentiality Review

1    MR. MONTOYA:  Just one more

2    quick one.

3    MR. TAYLOR:  Okay.

4  BY MR. MONTOYA:

5    Q.    Did Taishan ever do any

6  business with a company called Manchester in

7  Home?

8    A.    I don't believe it's listed on

9  the Manufacturer Profile Form.

10    Q.    It is not on the Manufacturer

11  Profile Form.

12    A.    Because I really don't recall

13  there is such a company.

14    Q.    Sir, did Taishan ever do any

15  business directly with a company named Stock

16  Building Supply?

17    A.    Is it also not included on the

18  manufacturers list?

19    Q.    It is not.

20    A.    Because I also do not recall

21  such a company.

22    MR. MONTOYA:  I think we can

23    adjourn for the day.

24    MR. TAYLOR:  Right, get started

25    again at 7:00 a.m.

Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 220 of 647
Case 2:14-cv-02722-MLCF-DEK Document 234-35 Filed 08/15/2017 Page 168 of
595

Confidential – Subject to Further Confidentiality Review

1        them down.

2    BY MR. SERPE:

3        Q.      Mr. Che, have you ever seen

4    Exhibit PID-9 before?

5        A.      Yes.

6        Q.      I direct your attention to

7    paragraph 14 of PID-9.

8        A.      I see that.

9        Q.      Taishan understood that this

10   was an order from Judge Fallon in the court

11   case with respect to preserving evidence, did

12   it not?

13       A.      It should be the case.

14       Q.      And Taishan understood that the

15   order required Taishan to preserve all

16   evidence regarding its U.S. exports, correct?

17       A.      Taishan's understanding is that

18   according to the order of Judge Fallon, that

19   Taishan has the responsibility to keep all

20   evidence related to the case.

21       Q.      When did Taishan first receive

22   a copy of Judge Fallon's order, Pretrial

23   Order 9, regarding preservation of evidence?

24            MS. EIKHOFF:  Richard, did you

25       mean PTO 1?

Confidential - Subject to Further Confidentiality Review

```
1              MR. SERPE:  I'm sorry, PTO 1.

2       Thank you, Christy.

3       A.      I don't recall the detailed

4   date; however, I do remember that in 2010,

5   when the lawsuit was initiated, Hogan Lovells

6   showed us the court order and requested us to

7   comply with the court order to preserve all

8   relevant information that is relevant to this

9   case.

10  BY MR. SERPE:

11      Q.      The order on Exhibit 9 has a

12  date at the top of June 16th, 2009.

13              Do you see that?

14      A.      I see that.

15      Q.      Is it your testimony under oath

16  today that Taishan did not receive a copy of

17  the judge's order until 2010, over six months

18  after the date of the order?

19      A.      Because at the time I was

20  preparing for the deposition as company

21  representative, I did review the depositions

22  of President Jia and Mr. Peng.

23              From that I understand that

24  Taishan had entered into the lawsuit in 2010;

25  therefore, before that I believe Taishan did
```

Confidential - Subject to Further Confidentiality Review

1  not have any other way to receive such a

2  document.  Because President Jia twice

3  demanded Taishan's relevant personnel in 2010

4  and 2011 to preserve documents and evidence

5  in relation to this lawsuit.

6      Q.    How did President Jia order

7  relevant personnel in 2010 to preserve

8  documents and evidence in relation to this

9  lawsuit?

10     A.    While I was preparing for my

11  deposition as the corporation representative,

12  I reviewed President Jia and Mr. Peng's

13  record in this regard.

14           I believe in two separate

15  meetings, President Jia demanded that

16  relevant personnel should preserve documents

17  and evidence in relation to the American

18  lawsuit.

19     Q.    Did President Jia give written

20  instructions at those meetings?

21     A.    When I was reviewing documents

22  for the preparation of my deposition as

23  representative of the company, I did not find

24  in the record any instructions in that regard

25  in writing.

Confidential - Subject to Further Confidentiality Review

1    Q.    If there were two months

2  between those orders, would the Venture

3  Supply information have to be put back into

4  the printing machine or was the old order

5  still in memory?

6              MR. TAYLOR:  Objection to form.

7    A.    It's hard to explain this

8  question.  There are many different kinds of

9  scenarios.  One would be that the prior

10  information was replaced; then in that case

11  you have to reenter the information according

12  to the customer's request.

13              If -- just in case this spray

14  marking machine had a problem while producing

15  Venture Supply's order, it will be replaced.

16  After you have troubleshoot the problem and

17  you reinstall it back, it should have still

18  stored Venture Supply's information.

19  BY MR. SERPE:

20    Q.    How many different printing

21  machines did Taishan use between 2005 and

22  2009 to spray markings on American-sized

23  drywall?

24              MR. TAYLOR:  Objection to form,

25        misconstrues the witness' prior

1    testimony.

2             THE WITNESS:  Do I need to

3    answer the question?

4             MR. TAYLOR:  Yes, please.

5    A.      Taishan during the period of

6    2005 and 2007 manufactured American-sized

7    gypsum board.

8             While I was preparing for my

9    witness testimony on behalf of the company of

10   Taishan, I reviewed material and found that

11   at the time there were three production lines

12   in Taishan that manufactured the

13   American-sized gypsum board.

14            According to my communication

15   with the personnel in the production

16   department, one production line should have

17   at least one to two sprayed marking machine,

18   which is to say it is possible that there are

19   three to six spray marking machines for the

20   three production lines.  This is only our

21   speculation based on the description of the

22   production department.

23            For details, it's been a while,

24   so they also did not have a clear

25   recollection.

Confidential - Subject to Further Confidentiality Review

```
 1   BY MR. SERPE:
 2        Q.    What efforts were made to
 3   search the spray marking machines at the
 4   three production lines to determine whether
 5   they still had American-sized drywall
 6   markings stored in them?
 7             MR. TAYLOR:  Objection to form.
 8             You can answer.
 9             THE WITNESS:  May I take a
10        break?
11             MR. TAYLOR:  Well, I think
12        we're almost finished.  He's only got
13        ten minutes left.
14             MR. SERPE:  Can we get an
15        answer, finish this last section?
16             MR. TAYLOR:  Yeah, once we
17        answer this question, we can -- once
18        we answer this question, we'll be
19        finished for the night.
20             THE WITNESS:  All right.  Will
21        you reask your question?
22   BY MR. SERPE:
23        Q.    What efforts were made to
24   search the spray marking machines at the
25   three production lines to determine whether
```

Confidential - Subject to Further Confidentiality Review

```
 1    they still had American-sized drywall

 2    markings stored in them?

 3              MR. TAYLOR:  Objection to form.

 4       A.    We tried to look for the spray

 5    marking machine that was left from the years

 6    in the back in the production department, but

 7    the information provided by the production

 8    department, according to their recollection,

 9    is at the time there were a few suppliers of

10    the spray marking machine that supplied the

11    machine for us.

12              THE INTERPRETER:  The

13         interpreter needs to clarify.

14              (Translation.)

15       A.    One is Hewlett-Packard,

16    Xiaobawang.  Another one is Duo Finuo, and

17    the other one is Wei Dijie.  And yet another

18    one is called Xiamen Liantai.  As for who

19    used which one, they also did not remember

20    clearly.

21              Plus the fact that some of the

22    spray marking machine was given to Taishan as

23    a gift because the suppliers of those

24    machines wanting to sell their ink.

25              When there were problems with
```

Confidential – Subject to Further Confidentiality Review

1   the spray marking machine or if the machine

2   did not work the way it's supposed to work,

3   they would take them away.  Also, based on

4   the production quantity of Taishan, all those

5   spray marking machines did not have a long

6   lifespan.

7                I am now trying to search but

8   have not found the spray marking machine of

9   those brands because many years ago Taishan

10  had changed all its spray marking machine to

11  Hitachi.

12               MR. SERPE:  May I ask one more?

13               MR. TAYLOR:  Okay.  I figured

14       there'd be a follow-up on that one.

15  BY MR. SERPE:

16       Q.    Was the manufacturing

17  department told in 2010 that the spray

18  marking machines were to be preserved under

19  Judge Fallon's preservation order?

20       A.    When I was preparing for the

21  witness deposition representing Taishan as a

22  corporation in 2010, I reviewed Chairman Jia

23  and Mr. Peng's deposition record.

24               Mr. Peng is one of our managers

25  in the sales department.  He did notice us to

```
 1    preserve relevant documents and material.
 2    That, I know.
 3              Chairman Jia had notified us to
 4    preserve relevant documents and material in
 5    the two meetings held in 2010 and 2011, but
 6    according to his deposition record, he did
 7    not remember who were present at the meeting
 8    at the time.
 9              MR. TAYLOR:  Okay?
10              MR. SERPE:  Okay.
11              MR. TAYLOR:  All right.
12              THE VIDEOGRAPHER:  We are now
13         going off the video record.  The time
14         is currently 7:22 p.m.  This is the
15         end of Media No. 8.
16              (Proceedings recessed at
17         7:22 p.m.)
18                   --o0o--
19
20
21
22
23
24
25
```

1    UNITED STATES DISTRICT COURT
2    EASTERN DISTRICT OF LOUISIANA
3    ***********************************************
4    IN RE:  CHINESE-MANUFACTURED   MDL NO. 2047
     DRYWALL PRODUCTS LIABILITY
5    LITIGATION                     SECTION:  L
6    THIS DOCUMENT APPLIES TO       JUDGE FALLON
     ALL CASES
7                                   MAG. JUDGE
                                    WILKINSON
8
     ***********************************************
9
10
11       CONFIDENTIAL - SUBJECT TO FURTHER
12          CONFIDENTIALITY REVIEW
13        Wednesday, January 23, 2019
14
15
16       Videotaped 30(b)(6) Deposition of
     TAISHAN GYPSUM CO., LTD f/k/a SHANDONG TAIHE
17   DONGXIN CO., LTD. RE: PRODUCT IDENTIFICATION,
     through the testimony of GANG CHE, VOLUME 2,
18   held Alston & Bird LLP, 1201 West Peachtree
     Street, Atlanta, Georgia, commencing at
19   8:03 a.m., on the above date, before
     Michael E. Miller, Registered Diplomate
20   Reporter, Certified Realtime Reporter and
     Notary Public.
21
22
23              __ __ __
24       GOLKOW LITIGATION SERVICES
        877.370.3377 ph | 917.591.5672 fax
25          deps@golkow.com

```
 1                    PROCEEDINGS

 2          (January 23, 2019 at 8:03 a.m.)

 3              THE VIDEOGRAPHER:  We are now

 4       back on the video record with the

 5       beginning of Media No. 1, Volume 2 in

 6       the deposition of Che Gang with the

 7       interpreter Sunny Wang.

 8              The time is currently 8:03 a.m.

 9       and the date is January 23rd, 2019.

10              (The interpreter was reminded

11       of her oath.)

12                 GANG CHE,

13       having been previously duly sworn,

14          testified as follows:

15                 EXAMINATION

16   BY MR. SERPE:

17       Q.    Good morning, Mr. Che.

18       A.    Good morning.

19       Q.    Did you have a pleasant

20   evening?

21       A.    Very good.

22       Q.    Are you ready to give more

23   testimony on behalf of Taishan this morning?

24       A.    Yes.

25       Q.    When we left off yesterday you
```

Confidential – Subject to Further Confidentiality Review

1    it to me again.

2        Q.      Xie xie.

3        A.      Thank you.

4        Q.      Before the end of the

5    deposition yesterday, you were telling me

6    about having spoken to the production

7    department about their recollection of the

8    spray marking machines.

9              Do you recall that?

10       A.      Yes.

11       Q.      And you told me about five

12   different spray marking machines and gave me

13   their names.

14       A.      Those information about marking

15   machines were acquired during my preparation

16   of the deposition as a representative of

17   Taishan Corporation through communication

18   with our production department as well as

19   purchasing department, so those are most of

20   the information I could get out of it.

21             And also we tried to find the

22   old spray marking machine that we possibly

23   could find, and we also tried to recover the

24   specific spray mark information that Taishan

25   did before so that we could accommodate the

Confidential - Subject to Further Confidentiality Review

```
1    attorneys and the judge to correctly

2    distinguish Taishan's products, but

3    unfortunately we did not find the old spray

4    marking machine.

5              And also the people in the

6    production and purchasing department

7    explained to me that the spray marking

8    machine is only a machine with a spraying

9    head.  When the information you input later

10   replaced the information prior, the prior

11   information is gone.

12             Assume that I could find the

13   spray marking machine, there wouldn't be any

14   prior information in it.  We could even not

15   be able to open the machine itself.  But we

16   still tried our very best to look for the old

17   machines, but we did not find them.

18        Q.    Am I correct that when you -- a

19   machine operator puts in a new spray marking,

20   it removes the last spray marking from the

21   previous production?

22        A.    Not removed, but rather

23   replaced.

24        Q.    Replaced.

25        A.    Covered.
```

1    Q.    Replaced, and you can't go back

2    and get it back again.

3    A.    After it was replaced, the

4    information shown would only be the new

5    information.  If you want to input old

6    information again, you have to redo it.

7    Q.    And if you want to input old

8    information again, does the machine operator

9    have a keyboard to type on?

10    A.    Using the keyboard, which is

11    connected to the machine and input it.

12    Q.    So, for example, he could type

13    the letters for Venture Supply,

14    V-E-N-T-U-R-E, et cetera?

15            MR. TAYLOR:  Objection to the

16        form.

17            THE WITNESS:  I don't

18        understand his question.  Can he

19        reask?

20            THE INTERPRETER:  Interpreter

21        can repeat if it's okay.

22            MR. SERPE:  Sunny, you tell me

23        is it better for me to ask a new

24        question or can you reinterpret for

25        me?

1    types of the spray marking machine the most.

2              And also those three production

3    lines that produced American-sized gypsum

4    board, the spray marking machine used is

5    between three to six, but as for what brands

6    were being used, they could not be sure.

7         Q.    And between 2005 and 2007, the

8    spray marking machines on those three to six

9    production lines were changed frequently; is

10   that correct?

11             MR. TAYLOR:  Objection to form.

12        A.    I think there might be a

13   mistake in your question.  I did not say

14   there were six production lines producing

15   American-sized gypsum board; I said three

16   lines.

17   BY MR. SERPE:

18        Q.    Three lines with between three

19   and six marking machines; is that correct?

20        A.    Are you asking me?

21        Q.    Yes.  Is that correct?

22        A.    Perhaps that is the number.

23        Q.    Thank you for that

24   clarification.

25             Were the employees in the

Confidential - Subject to Further Confidentiality Review

```
 1   production department given any written
 2   instructions on using the spray machines to
 3   put markings on American-sized drywall?
 4        A.     While I was preparing for my
 5   witness deposition representing Taishan, I
 6   looked for many documents in regarding to
 7   markings.  I've also inquired relevant
 8   personnel as well as tried to have them
 9   recall the situation at the time.
10             As for the exported gypsum
11   board or the gypsum board that we did not use
12   domestically, not only American size, usually
13   we operate according to the customer's
14   request.  We did not have a standard method
15   to stipulate that.
16             For our domestic products,
17   which are the products that carry Taishan's
18   brand, the customer would make a demand
19   according to Taishan's request.  We have a
20   requirement in regarding to their markings
21   universally; that's there is a written
22   record.
23             And along with the changes in
24   the market as well as production, all these
25   documents have been modified in different
```

1    time phases.

2              I'm done.

3        Q.    Focusing only on the

4    American-sized, or nondomestic, drywall,

5    there was no standard method for printing

6    given to the machine operators; is that

7    correct?

8              MR. TAYLOR:  Objection to form.

9              THE WITNESS:  Do I need to

10       answer?

11             MR. TAYLOR:  Yes.  Sorry I was

12       trying to...

13             (Comments off the stenographic

14       record.)

15             THE WITNESS:  Reinterpret that.

16             THE INTERPRETER:  The

17       interpreter will reinterpret that.

18             (Translation.)

19       A.    While I was preparing for the

20   witness testimony representing Taishan, I

21   tried to find relevant information and try to

22   recall the situation at the time.  There was

23   no written instruction on the operation.

24   Usually we did what the customers requested.

25             ///

Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 237 of 647
Case 1:11-cv-22408-MGC Document 41-4 Entered on FLSD Docket 08/15/2014 Page 185 of
595
Confidential - Subject to Further Confidentiality Review

1    BY MR. SERPE:

2         Q.     Between 2005 and 2007, if the

3    customer did not specify what font they

4    wanted English words to be printed in, would

5    the machine operator type the words in and

6    let the machine's automatic font be used?

7              MR. TAYLOR:  Objection, form.

8         A.     I don't think the machine has a

9    capability to automatically choose fonts, but

10   according to our memory and speculation,

11   usually it would use the font left from the

12   prior work, only to change the content of the

13   spray mark.  People are always lazy.

14   BY MR. SERPE:

15        Q.     I'm going to ask you about some

16   specific font types and ask you whether or

17   not spray machines used by Taishan between

18   2005 and 2007 to manufacture American-sized

19   drywall used these specific printing fonts.

20              Did you understand the

21   question?

22        A.     I think you were making a

23   statement.

24        Q.     Do you understand the

25   statement.

Confidential - Subject to Further Confidentiality Review

 1   possible through e-mail or through flash

 2   drive or by printing out paper or

 3   face-to-face communication or telephonic

 4   confirmation according to customers'

 5   requests.

 6       Q.    Was the independent production

 7   department which manufactured the tapes told

 8   of Judge Fallon's preservation order to

 9   protect evidence of U.S. markings?

10       A.    While I was preparing for my

11   witness deposition on behalf of Taishan, I

12   checked President Jia and Mr. Peng's

13   deposition record in regarding to

14   preservation.

15            I have found from the record

16   that all relevant departments have been

17   notified to preserve documents and evidence

18   in according to the court order during the

19   American lawsuit.

20       Q.    Who in the tape production

21   department was responsible for preserving

22   evidence of American drywall markings?

23            MR. TAYLOR:  Objection to form.

24       A.    First of all, as I was

25   preparing for the witness deposition

1    representing Taishan, I specifically went to

2    look for relevant issues regarding to tapes,

3    markings, productions.  I have also tried to

4    look for the tapes, the molding tools

5    information and material in regarding to the

6    American-sized tapes.

7              First of all, the effective

8    life usage span for tape is approximately

9    half a year.  Usually when the molding tool

10   is not being used for six months, which is

11   not conventional, it would be sent back to

12   the molding tool factory to open up new

13   moldings.

14             And also during my preparation

15   as a witness for the deposition representing

16   Taishan, through my comparison with the

17   material I have discovered regarding to

18   Taishan's production, the last time Taishan

19   produced American-sized gypsum board was

20   approximately in the first half year of 2007.

21             I believe the evidence

22   preservation order from Judge Fallon in

23   relation to Taishan's American lawsuit was

24   made in 2009 according to the information I

25   got yesterday.  Taishan entered into the

Confidential - Subject to Further Confidentiality Review

```
 1    lawsuit in 2010; therefore, these records

 2    were no longer in existence in 2008 and 2009.

 3    This is a common practice.

 4                MR. TAYLOR:  Counsel, if the

 5          witness is finished with his answer...

 6                MR. SERPE:  Just a second,

 7          Bernard.

 8                MR. TAYLOR:  Okay.

 9                (Conference out of the hearing

10          of the reporter.)

11                MR. SERPE:  Two questions and I

12          think we'll take a break.

13                MR. TAYLOR:  Okay.  Are you

14          okay with that?

15                THE WITNESS:  Can we take a

16          break right now?

17                MS. ROBERTSON:  The question

18          was a who did you talk to, and he

19          didn't answer it.

20                MR. TAYLOR:  Okay.

21                THE WITNESS:  Two more

22          questions and we're all done?

23                MR. TAYLOR:  No, no, no.

24                MR. SERPE:  Break.

25                THE WITNESS:  Okay.  Then let's
```

```
 1           take a break.  It's been too long.
 2                   MR. TAYLOR:  Whoa, whoa.
 3                   MR. SERPE:  Can I ask two
 4           questions before the break?
 5                   MR. TAYLOR:  Before the break,
 6           just two questions.
 7                   THE WITNESS:  Would that be
 8           long?
 9                   MR. SERPE:  No.
10                   Do you remember my last
11           question?
12                   THE WITNESS:  Would you remind
13           me of that?
14                   MR. SERPE:  Mike?
15                   (The following portion of the
16           record was read.)
17                   "QUESTION:  Who in the tape
18           production department was responsible
19           for preserving evidence of American
20           drywall markings?"
21                   (End of readback.)
22                   MR. TAYLOR:  And there was an
23           objection to the form of the question.
24           A.      As for that question, I believe
25      every Taishan employee that has relevant
```

1          MR. TAYLOR:  Objection to form.

2     A.     During my preparation of

3   witness testimony for the deposition

4   representing Taishan, I reviewed the

5   deposition record of Chairman Jia and

6   Mr. Peng related to preserving documents, and

7   Taishan required to preserve relevant

8   documents and material to the American

9   lawsuit.  But no one required us to find

10  these American-sized gypsum board because at

11  that time there was no use of it at all.

12          This time while I was preparing

13  for the witness testimony in deposition

14  representing Taishan Corporation, in order to

15  confirm the markings of the Taishan

16  American-sized gypsum boards, in order to

17  better serving the purpose of find out the

18  Taishan American-sized gypsum boards'

19  markings, we tried our very best and found

20  these, found these American-sized residual

21  gypsum boards in the warehouse.

22  BY MR. SERPE:

23     Q.     Taishan took no steps when it

24  learned of Judge Fallon's preservation order

25  to determine whether samples of

Confidential - Subject to Further Confidentiality Review

1   American-sized drywall were still in

2   Taishan's possession; isn't that correct?

3            MR. TAYLOR:  Objection to form.

4       A.     Taishan received the judge's

5   order, and Taishan's understanding is to

6   preserve the relevant documents and material.

7   It is Taishan to preserve.

8            At that time nobody required us

9   to find those American-sized residual gypsum

10  boards.  If at the time somebody required us

11  to find these American-sized residual gypsum

12  boards, Taishan would definitely execute and

13  respect the opinion of the judge and to

14  preserve those.

15           Even though Taishan does not

16  have a requirement nor a practice to keep

17  gypsum board samples, the best result is that

18  during my preparation for the witness

19  testimony for the deposition as Taishan's

20  representative, in order to discover the

21  truth about Taishan's American-sized gypsum

22  boards, those were discovered.

23      Q.     Taishan was not advised by

24  anyone to preserve samples of American-sized

25  drywall after receiving Judge Fallon's order?

```
1              MR. TAYLOR:  Objection to form.

2              THE WITNESS:  Do I need to

3         answer it?

4              MR. TAYLOR:  Yes.

5    A.      While I was preparing for the

6    witness testimony for the deposition

7    representing Taishan, I've only discovered

8    the order to have Taishan preserving

9    documents and materials related to the

10   American lawsuit.  I did not discover any

11   record that anyone had required Taishan to

12   preserve these American-sized residual gypsum

13   boards.

14             MR. SERPE:  Bernard, I'm about

15        to start a topic that's going to take

16        45 minutes or more.

17             MR. TAYLOR:  Well, we're

18        about -- we're right at lunchtime.

19        You know he's got to start heading out

20        of here 2:30, 2:45.

21             MS. ROBERTSON:  You said 3:00

22        yesterday.

23             MR. TAYLOR:  Hmm?

24             MS. ROBERTSON:  You said 3:00

25        yesterday.
```

```
1          currently 12:26 p.m.
2                  MR. TAYLOR:  Counsel, the --
3          there was some confusion in the
4          Taishan witness' prior testimony
5          regarding requirements that -- of the
6          judge's order concerning drywall, and
7          the witness would like to clarify that
8          now.  Sunny, I think you need to --
9                  THE INTERPRETER:  Oh, okay.
10                 MR. TAYLOR:  Should I say it
11         again?
12                 THE INTERPRETER:  It's okay.
13         I've got it.
14                 MR. TAYLOR:  Okay.
15                 (Translation.)
16                 THE WITNESS:  Perhaps when I
17         was making a narrative statement
18         and which confused someone, what I
19         said was that no one required Taishan
20         to look for the residual
21         American-sized gypsum board.
22                 Taishan did, according to the
23         requirements of the judge, preserve
24         documents, material and the residual
25         gypsum boards with American sizes.
```

1         Taishan has strictly complied and

2         executed the order of the judge.

3              I'm done answering your

4         question.

5  BY MR. SERPE:

6        Q.    What information do you base

7  your updated answer on that someone at

8  Taishan preserved American-sized gypsum

9  boards when they received Judge Fallon's

10  order?

11        A.    It is based on that the judge's

12  court order required Taishan to preserve all

13  documents, materials, including gypsum

14  boards, related to the American lawsuit.

15  Taishan has also strictly executed this

16  requirement.

17        Q.    Did you find a document which

18  told you that a Taishan employee placed the

19  drywall in the warehouse so that they could

20  preserve American-sized drywall for the

21  preservation order?

22         THE WITNESS:  Reinterpret it.

23         THE INTERPRETER:  The

24         interpreter will repeat.

25         (Translation.)

Confidential - Subject to Further Confidentiality Review

1         A.      While I was preparing for the

2    witness testimony in deposition representing

3    Taishan, the material that I saw on the court

4    order is that Taishan is to preserve

5    documents, materials, including gypsum

6    boards, related to the American lawsuit.

7    BY MR. SERPE:

8         Q.      Are you done?

9         A.      Yes.

10                (Deposition Exhibit PID-42

11        marked.)

12   BY MR. SERPE:

13        Q.      Would you look at Exhibit 42.

14        A.      I see it.

15        Q.      Can you identify what that is

16   for us?

17        A.      This is sales plan

18   notification.  It was written by the

19   salespeople in the sales department, a

20   requirement for the production plan.

21                MR. SERPE:  Counsel, I want to

22        confirm our agreement that we're going

23        to reserve our right to object to

24        the -- or come up with an alternative

25        translation of the characters since we

1        received this on the 19th and have not
2        had time to process it.
3                MR. TAYLOR:  I'm confused.  I
4        don't understand what's the --
5                MS. EIKHOFF:  These are not --
6        these are not the agreed-upon final
7        translations.
8                MR. SERPE:  Yeah.  Right.  We
9        just received these translations.
10               MR. TAYLOR:  Oh.  Okay.  All
11       right.
12               MR. SERPE:  We looked at them.
13       We disagree with some of them.
14               MR. TAYLOR:  Yeah.
15               MR. SERPE:  And we just want to
16       reserve the right to come back and
17       offer our own translations --
18               MR. TAYLOR:  Translations.
19               MR. SERPE:  -- or come up with
20       an agreed set.
21               MR. TAYLOR:  That's fine.
22       That's absolutely fine.
23    BY MR. SERPE:
24       Q.    Once the sales plan
25    notifications were written by the people in

Confidential - Subject to Further Confidentiality Review

1    the sales department, were they given to the

2    production department?

3         A.      Yes.

4         Q.      Where were these documents

5    found that are now in Exhibit 42?

6         A.      The documents in Exhibit 42 was

7    kept in our sales department.

8         Q.      Had the documents that were

9    collected in Exhibit 42 ever been provided to

10   anyone outside the sales department before

11   the last few weeks?

12              MR. TAYLOR:  Objection to form.

13        A.      It is definitely to be sent to

14   the production department for production

15   requirement instructions.

16   BY MR. SERPE:

17        Q.      When was the Exhibit 42

18   documents first provided as part of the

19   lawsuit over American-sized drywall to the

20   attorneys in the case?

21              THE WITNESS:  Can you repeat

22        your question?

23              THE INTERPRETER:  Interpreter

24        can repeat.

25              (Translation.)

1    A.     While I was preparing for the

2    witness testimony in deposition representing

3    Taishan, in order to truly discover the

4    relevant information regarding to Taishan's

5    American-sized gypsum board, I have found

6    these documents and have given the

7    information to the attorneys.  But as for

8    whether or not this information was copied

9    and taken by Zhi Tong or Hogan Lovells, I'm

10   not sure.

11   BY MR. SERPE:

12    Q.     Where in the sales department

13   were the sales plan notifications which are

14   now in Exhibit 42 found?  For example, were

15   they in a box, or were they in a cabinet?

16    A.     Upon receiving the court order

17   requiring us to preserve documents and

18   materials in relation to the U.S. lawsuit, I

19   have -- we have kept relevant material in a

20   cabinet.

21         As I was preparing for the

22   witness testimony and deposition for Taishan,

23   I have reviewed a lot of materials, and I

24   have discovered this material which I think

25   is helpful for us to have a better

```
1    understanding of Taishan's markings;

2    therefore, I shared the material with the

3    attorneys.

4         Q.    Who put the sales notification

5    documents in the cabinet that was being used

6    to preserve documents for the U.S. lawsuit?

7              MR. TAYLOR:  Objection to form.

8              THE WITNESS:  Do I need to

9         answer that?

10             MR. TAYLOR:  Yes.

11             THE WITNESS:  Can you repeat

12        that?

13             THE INTERPRETER:  Interpreter

14        will repeat.

15             (Translation.)

16        A.    As regarding to the

17   preservation of the related material on

18   American-sized gypsum board, at the time it

19   was Mr. Peng who compelled it and put it in

20   the cabinet.

21   BY MR. SERPE:

22        Q.    Has Taishan ever maintained a

23   listing of all of the documents that were

24   being preserved for the purposes of the U.S.

25   lawsuit?
```

1    A.      While I was preparing for my

2    witness testimony for the deposition

3    representing Taishan, I did not discover such

4    a document list.  However, when Mr. Peng left

5    his employment, he said all the documents in

6    the cabinets are the documents related to

7    American lawsuit, and they are to be strictly

8    preserved.  That's why those documents have

9    always been kept in there.

10    Q.      Are the sales notification

11    plans that are contained in Exhibit 42 all of

12    the sale notification plans that were in the

13    cabinet being used to preserve documents for

14    the U.S. litigation?

15            MR. TAYLOR:  Objection to form.

16    A.      While I was preparing for the

17    witness testimony for the deposition

18    representing Taishan, I searched relevant

19    documents, and the documents in the cabinet

20    in that time frame should be all

21    sales-related documents, not necessarily only

22    related to American lawsuit.

23            In it, there are also domestic

24    documents as well as documents to other

25    countries.  These are the documents that I

1    could find in regarding to American-sized

2    gypsum boards sales plan notices.

3    BY MR. SERPE:

4         Q.    Were you the only person that

5    went through the sales notification plans to

6    pick out the sales plans that were for

7    American-sized drywall or did someone else

8    also look?

9         A.    While I was preparing for the

10   witness testimony for the deposition

11   representing Taishan, I looked for all

12   American-sized gypsum board-related sales

13   plan notices and documents.  Then I picked

14   them out one by one and had my colleague help

15   me to make copies and to scan the documents,

16   and then I submitted them to share with my

17   attorneys.

18        Q.    Did you copy and scan every

19   page of the sales notification plans for

20   American-sized drywall?

21             MR. TAYLOR:  Objection to form.

22             THE WITNESS:  Do I need to

23        answer?

24             MR. TAYLOR:  Shi de.

25        A.    I did copy, scan and share all

Confidential — Subject to Further Confidentiality Review

```
 1    the sales plan notices relating to

 2    American-sized gypsum board and shared with

 3    my attorneys.

 4              THE INTERPRETER:  Interpreter

 5         correction:  The deponent actually

 6         said in addition to all those notices

 7         that I could find.

 8    BY MR. SERPE:

 9         Q.    Will you look at page 34 on the

10    top.

11         A.    I see that.

12         Q.    That's a sales notification

13    plan for a sale to Venture

14    Supply, Incorporated; is that correct?

15         A.    It was issued as a sales plan

16    notification in regarding to the entering of

17    a contract with Venture Supply Company.

18         Q.    And the information contained

19    in the sales plan notification included

20    specific requirements for the contract?

21         A.    It should be the requirements

22    for the production of these sizes of gypsum

23    board.

24         Q.    And how many requirements are

25    listed for the sales plan notification that's
```

Confidential - Subject to Further Confidentiality Review

1    at the top of page 34?

2         A.    I don't understand your

3    question.

4         Q.    Mr. Che, is there a section for

5    specific requirements on the printed form?

6         A.    Yes.

7         Q.    How many specific requirements

8    were listed for the sales notification plan

9    to Venture Supply that's at the top of

10   page 34 of Exhibit 42?

11        A.    The sales plan notice is for

12   the purpose of notification internally;

13   therefore, the information is not that

14   strict.

15             There are four requirements

16   listed on this notice requirements, but the

17   requirements about the tapered edge is listed

18   on it.  It is listed on the top, right after

19   12.7.

20        Q.    What is the fourth requirement

21   under the Specific Requirements section?

22        A.    The requirement number 4 says

23   the spray mark is attached.

24             THE INTERPRETER:  Interpreter

25             needs to clarify.

Confidential - Subject to Further Confidentiality Review

```
 1                (Translation.)

 2                THE INTERPRETER:  There's no

 3        change on the interpretation.

 4                MR. SERPE:  Question for the

 5        interpreter.

 6                (Conference out of the hearing

 7        of the reporter.)

 8  BY MR. SERPE:

 9        Q.      Where is the attached ink jet

10  code that was referenced as the fourth

11  specific requirement to this sales

12  notification plan?

13                MR. TAYLOR:  Objection to form.

14        A.      Let me explain to you the

15  operation process, because at the time I

16  happened to be a salesperson working on it.

17                For example, the two sales plan

18  notification on page 34, the point number 4

19  below that specified what are those spray

20  markings, but because Chinese are not very

21  sensitive to English --

22                THE INTERPRETER:  The

23        interpreter needs to clarify.

24                (Translation.)

25        A.      -- when the worker who would
```

Confidential – Subject to Further Confidentiality Review

1   initially input the spray marking would not

2   be able to understand it completely, in that

3   circumstance, the person who issued the plan

4   notification would print out a more formal

5   spray marking requirement attached to it.

6           The information of spray

7   marking that is attached is for the use of

8   the spray marking worker who input the

9   information.  When this person completed

10  inputting this information, this piece of

11  paper will be thrown away.  This is our

12  common operation practice.

13  BY MR. SERPE:

14      Q.    Who issued the sales

15  notification plan at the top of PID-42,

16  page 34?

17      A.    Definitely it was issued by a

18  salesperson from the sales company, but there

19  was no name identified.

20      Q.    Would you look on Exhibit 42

21  right next to requirement number 4 and tell

22  me whose name is written there in Chinese.

23      A.    Fu Tinghuan.  But this is the

24  signature of the approving boss who approved

25  the issuance of the sales plan notification.

Confidential - Subject to Further Confidentiality Review

1    It is a different font or writing from the

2    one who issued the production.

3              Of course I'm not blaming you

4    for that.  If I were to look at English, I

5    wouldn't be able to distinguish who wrote

6    what.

7         Q.    A minute ago you said the

8    answer:  "Definitely it was issued by a

9    salesperson from the sales company, but there

10   was no name identified."

11             Do you remember testifying

12   under oath to that?

13             THE INTERPRETER:  Interpreter

14        needs to clarify.

15             (Translation.)

16        A.    There was no signature, which

17   means the person did not sign his name on it.

18   Let me explain what I meant one more time.

19             What I was trying to say is the

20   person who issued this sales plan

21   notification did not sign his name on it.

22   The signature on it is the signature of the

23   approving boss who approved the issuance of

24   the sales plan notification.  It is a

25   different person from the one who filled out

1    this sales plan notification.

2    BY MR. SERPE:

3        Q.      Yesterday you told me that Fu

4    Tinghuan was not involved in sales of

5    American-sized drywall.  Do you recall that

6    testimony?  And that, therefore, it was not

7    necessary to search his computer.

8        A.      At the time Mr. Fu Tinghuan was

9    a sales manager of Taishan Company.  Because

10    the sales plan notification would need a

11    boss' signature; therefore, he was only in

12    charge of signing it.  He was not involved in

13    any specific businesses.

14            This sales plan notification

15    was filled out by a salesperson, submitted to

16    the boss for signature as approval, and then

17    it would be issued downwards.

18        Q.    Done?

19        A.    Yes.

20        Q.    Between 2005 and 2007, did the

21    industrial park retain spray markings from

22    American-sized drywall?

23            MR. TAYLOR:  Objection to form.

24        A.      Regarding to spray marking, I

25    believe I have done ample explanation during

Confidential – Subject to Further Confidentiality Review

```
 1   the prior question about spray marking
 2   machines.  Can you be specific in your
 3   question?
 4   BY MR. SERPE:
 5        Q.      Did any of the employees who
 6   worked for Taishan in the industrial park
 7   between 2005 and 2007 make it a practice to
 8   retain copies of the spray markings that were
 9   being put on American-sized drywall?
10              MR. TAYLOR:  Objection to form.
11        A.      Maybe I was not very clear on
12   my prior explanation.  Let me explain the
13   process one more time for you.
14              After our attached spray
15   marking was handed over to the spray marking
16   worker to be input, inputted, when the input
17   of the spray marking was completed, this
18   piece of paper would be trash and be thrown
19   away.  This sales plan notification would
20   also be thrown away after this batch of
21   production has finished its delivery.
22              I don't know whether or not my
23   explanation may be of help to you.
24   BY MR. SERPE:
25        Q.      Done?
```

```
 1          A.      Done.

 2                  (Deposition Exhibit PID-49

 3          marked.)

 4                  MR. SERPE:  Bernard, there's

 5          highlightings on the sets that have

 6          been handed to you.  We have another

 7          set for Helen.

 8                  MR. TAYLOR:  Yes.  Okay.

 9                  MR. SERPE:  The rest of these

10          sets are not highlighted.

11                  MS. EIKHOFF:  Okay.

12                  MR. SERPE:  Okay?

13   BY MR. SERPE:

14          Q.      Can you identify Exhibit PID-49

15   in front of you?

16          A.      Do you want me to read the

17   title on top of it?

18          Q.      Yes, please.

19          A.      Right here?  Quality Management

20   Policy.

21                  MS. EIKHOFF:  Counsel, could I

22          just ask a clarifying question:  Is

23          this a composite of two documents or

24          is this just one?

25                  MS. ROBERTSON:  That's correct.
```

Confidential - Subject to Further Confidentiality Review

1    As we got from the FTP site, the

2    Chinese was one file and the machine

3    translations yesterday were two files.

4    This does not include the machine, but

5    it is one document containing two --

6    the two manuals that were produced by

7    Taishan on Monday.

8              MS. EIKHOFF:  Thank you.

9    BY MR. SERPE:

10        Q.    Mr. Che, if you look where

11   we've put the yellow divider at page 143, is

12   this a different document?

13        A.    This is the management policy

14   for product marking usage.

15        Q.    Mr. Che, we received these

16   documents on Monday and have not had a chance

17   to do a thorough translation into English.

18   We would like you to --

19        A.    In fact -- I'm sorry.

20              MR. TAYLOR:  Wait for the

21   question.

22   BY MR. SERPE:

23        Q.    We would like to direct your

24   attention to pages where we have highlighted

25   Chinese characters and ask you to tell us

Confidential - Subject to Further Confidentiality Review

1    what they say so that the interpreter can

2    provide English translations for us.

3              Will you turn to page 82.  What

4    is highlighted at the bottom of document

5    82 -- page 82?  I apologize.

6        A.    I didn't quite understand you

7    just now.  Did you want me to read it --

8        Q.    Yes, please.

9        A.    -- or did you want the

10   interpreter interpret it --

11       Q.    Good question.

12       A.    -- directly?

13       Q.    I would like you to read it so

14   the interpreter can interpret it.

15       A.    All right.  If it is not a

16   waste of your time.

17              This document first revision

18   issuance date is March the 1st, 2008.  The

19   second revision issuance date is

20   October the 20th, 2009.  The third revision

21   issuance date is January the 20th, 2016.

22   Approved by Jia Tongchun.  Verified by Ren

23   Xulian.

24              That's it.

25       Q.    Go to the second document that

Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 264 of 647
Case 1:14-cv-22484-MGC Document 150-1 Entered on FLSD Docket 05/15/2014 Page 372 of 595
Confidential - Subject to Further Confidentiality Review

 1   begins on page 143.  And if you flip to the

 2   next page, please read the characters so I

 3   can ask the interpreter to interpret.

 4        A.    This document's revision

 5   issuance is as follows:  The first revision

 6   issuance date is July the 15th, 2007.  The

 7   second revision issuance date is

 8   August the 1st, 2008.  The third revision

 9   issuance date is September the 20th, 2009.

10   The fourth revision issuance date is January

11   the 10th, 2011.  The fifth revision issuance

12   date is May the 1st, 2013.  The sixth

13   issuance --

14             THE INTERPRETER:  Interpreter

15        start over again.

16        A.    The sixth revision issuance

17   date is August the 10th, 2014.  Approved by

18   Ren Xulian.  Verified by Wang Ruikun.

19             MR. SERPE:  Bernard, we're at

20        an hour, and I'm sensitive to not

21        plunging into another area that's

22        going to hang us up.

23             MR. TAYLOR:  How are we doing

24        on getting ready?

25             MR. SERPE:  I can tell you that

1          when we get back.

2                    MR. TAYLOR:  All right.

3                    THE VIDEOGRAPHER:  We're now

4          going off the video record.  The time

5          is currently 1:23 p.m.  This is the

6          end of Media No. 4.

7                    (Recess taken, 1:23 p.m. to

8          1:38 p.m.)

9                    THE VIDEOGRAPHER:  We are now

10         back on the video record with the

11         beginning of Media No. 5.  The time is

12         currently 1:38 p.m.

13                    (Deposition Exhibit PID-6

14         marked.)

15   BY MR. SERPE:

16         Q.    I hand you Exhibit PID-6.

17   Mr. Che, will you identify what PID-6 is?

18         A.    Taishan Gypsum Company, Limited

19   Manufacturer Profile Form.

20         Q.    Please look at Section III,

21   number 2.  I believe it's on page 0009 in

22   Chinese --

23                    MR. TAYLOR:  And 3.

24   BY MR. SERPE:

25         Q.    -- and page 3 in English.

# Tab #33

March 22, 2011

Joe Cyr
Frank Spano
Eric Statman
Matthew Galvin
HOGAN LOVELLS US LLP
875 3rd Avenue
New York, NY 10022
Telephone: 212-918-3000
Facsimile: 212-918-3100

**BY ECF & U.S. Mail**

Hon. Eldon E. Fallon
U.S. District Court for the Eastern District of Louisiana
500 Poydras Street
Room C456
New Orleans, LA 70130

RE:     **IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION; MDL No. 2047; THIS DOCUMENT PERTAINS TO ALL MATTERS**

Honorable Judge Fallon:

      We represent Defendants Taishan Gypsum Co. Ltd. ("TG") and Tai'an Taishan Plasterboard Co. Ltd. ("TTP") (together, "Defendants") in the above-captioned matter. We have prepared this submission after consulting with Plaintiff's liaison counsel to supplement our letter response dated March 7, 2011 to the Court's order on February 23, 2011 that Defendants provide information relating to their trademarks in accordance with Pre-Trial Order No. 10 and to the Photographic Examples of Chinese Drywall Markings contained on the Court's website at http://www.laed.uscourts.gov/Drywall/DrywallMarkings.htm (the "Website").

      Defendants have examined the images on the Website and compared them to their records containing information about drywall sold to U.S. dimensions. The attached appendix indicates which images on the Website depict markings that are consistent with those described in Defendants' records. Because photographs of the drywall sold by Defendants in the relevant period are generally unavailable, we cannot comment with certainty as to the origins of most of the drywall pictured on the Website. Furthermore, many of the markings on the Website are ubiquitous and may have been placed on drywall by multiple manufacturers. For example, entry 16 on the website—MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD—may well represent other manufacturers' markings even where our contracts indicate that Defendants put the same or similar markings on their drywall.

Additionally, we have enclosed a catalog of images of trademarks and markings applicable to Defendants' products, including their drywall. However, our records indicate that these trademarks and markings were rarely applied to the drywall sold to U.S. dimensions to customer specification. In some cases, such trademarks were applied to edge sealing tape, but we understand that was usually removed prior to installation, so it may have limited utility as a means of product verification. Nevertheless, Defendants propose that these images be added to the Website and labeled Taishan Gypsum 1-9 in accordance with Pre-Trial Order No. 10.

Sincerely,

Matthew J. Galvin

cc:    Lenny Davis, Esq.

Encl.

Case 2:09-md-02047-EEF-MBN Document 22287-10 Filed 12/09/19 Page 369 of 647
Case 1:Case 2:09-md-02047-EEF-MBN Document 3015-1 Filed 05/09/11 Page 99 Page 217 of
595

APPENDIX

**MDL-2047 Chinese Manufactured Drywall Products Liability Litigation**

**Comments by Defendants Taishan Gypsum Co. Ltd and Tai'an Taishan Plasterboard Co. Ltd
to the Chinese Drywall Markings: Photographic Examples, located at
http://www.laed.uscourts.gov/Drywall/DrywallMarkings.htm**

| NO. ON MDL COURT WEB-SITE | CURRENT NAME ON MDL WEBSITE | TAIAN TAISHAN PLASTERBOARD CO., LTD. | TAISHAN GYPSUM CO. LTD. |
|---|---|---|---|
| 1 | Bedrock Gypsum | TTP has no record of selling drywall to U.S. dimensions with these markings. | TG has no record of selling drywall to U.S. dimensions with these markings. |
| 2 | Beijing New Building Materials PLC (BNBM) | TTP has no record of selling drywall to U.S. dimensions with these markings. | TG has no record of selling drywall to U.S. dimensions with these markings. |
| 3 | C&K Gypsum | TTP has no record of selling drywall to U.S. dimensions with these markings. | TG has no record of selling drywall to U.S. dimensions with these markings. |
| 4 | Crescent City Gypsum | TTP has no record of selling drywall to U.S. dimensions with these markings. | TG has no record of selling drywall to U.S. dimensions with these markings. |
| 5 | Dragon Brand Drywall | TTP has no record of selling drywall to U.S. dimensions with these markings. | TG has no record of selling drywall to U.S. dimensions with these markings. |
| 6 | IMG Drywall | TTP has no record of selling drywall to U.S. dimensions with these markings. | TG has no record of selling drywall to U.S. dimensions with these markings. |
| 7 | International Materials Trading (IMT) Gypsum | TTP has no record of selling drywall to U.S. dimensions with these markings. | TG has no record of selling drywall to U.S. dimensions with these markings. |
| 8 | Knauf Dongguan | TTP has no record of selling drywall to U.S. dimensions with these markings. | TG has no record of selling drywall to U.S. dimensions with these markings. |
| 9 | Knauf Tianjin | TTP has no record of selling drywall to U.S. dimensions with these markings. | TG has no record of selling drywall to U.S. dimensions with these markings. |
| 10 | Knauf WuHu | TTP has no record of selling drywall to U.S. dimensions with these markings. | TG has no record of selling drywall to U.S. dimensions with these markings. |

2

APPENDIX (CONT'D)

## MDL-2047 Chinese Manufactured Drywall Products Liability Litigation

| No. on MDL Court Web-site | Current name on MDL website | Taian Taishan Plasterboard Co., Ltd. | Taishan Gypsum Co. Ltd. |
|---|---|---|---|
| 11 | Pro Wall | TTP has no record of selling drywall to U.S. dimensions with these markings. | TG has no record of selling drywall to U.S. dimensions with these markings. |
| 12 | Taihe | TTP's records indicate that it sold drywall to U.S. dimensions with the following markings:<br><br>"MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD" with edge tape similar to that depicted at entry 12 on the Website. | |
| 13 | Taian Taishan | TTP's records indicate that it sold drywall to U.S. dimensions with the following markings:<br><br>"MANUFACTURED BY: TAIAN TAISHAN PLASTERBOARD" CO., GYPSUM DRYWALL PER ASTM C 1396 04 CONTACT: 813-994-6499. | TG has no record of selling drywall to U.S. dimensions with these markings. |
| 14 | Taishan | TTP records indicate that it sold drywall to U.S. dimensions with the following:<br><br>"DRYWALL 4feetX12feetX1/2inch"<br><br>However, there is insufficient evidence to conclude that the drywall depicted in this image was sold by TTP because, among other reasons, other manufacturers may have produced drywall with these markings. | TG has no record of selling drywall to U.S. dimensions with these markings. |
| 15 | Unknown | TTP records indicate that it sold drywall to U.S. dimensions with the following markings:<br><br>"DRYWALL 4feetX12feetX1/2inch"<br><br>However, there is insufficient evidence to conclude that the drywall depicted in this image was sold by TTP because, among other reasons, other manufacturers may have produced drywall with these markings. | TG has no record of selling drywall to U.S. dimensions with these markings. |
| 16 | Unknown | TTP records indicate that it sold drywall to U.S. dimensions with the following marking: | TG has no record of selling drywall to U.S. dimensions with these markings. |

3

APPENDIX (CONT'D)

**MDL-2047 Chinese Manufactured Drywall Products Liability Litigation**

| NO. ON MDL COURT WEB-SITE | CURRENT NAME ON MDL WEBSITE | TAIAN TAISHAN PLASTERBOARD CO., LTD. | TAISHAN GYPSUM CO. LTD. |
|---|---|---|---|
| | | "MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD" However, there is insufficient evidence to conclude that the drywall depicted in this image was sold by TTP because, among other reasons, other manufacturers may have produced drywall with these markings. | |
| 17 | Unknown | TTP records indicate that it sold drywall to US dimensions with the following marking: "DRYWALL 4feetX12feetX1/2inch" However, there is insufficient evidence to conclude that the drywall depicted in this image was sold by TTP because, among other reasons, other manufacturers may have produced drywall with these markings. | TG has no record of selling drywall to U.S. dimensions with these markings. |
| 18 | Unknown | TTP has no record of selling drywall to U.S. dimensions with these markings. | TG has no record of selling drywall to U.S. dimensions with these markings. |
| 19 | Unknown | TTP has no record of selling drywall to U.S. dimensions with these markings. | TG has no record of selling drywall to U.S. dimensions with these markings. |
| 20 | Unknown | TTP has no record of selling drywall to U.S. dimensions with these markings. | TG has no record of selling drywall to U.S. dimensions with these markings. |
| 21 | Unknown | TTP records indicate that it sold drywall to US dimensions with the following marking: "MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD" However, TTP cannot reliably determine whether the markings depicted on entry 21 were placed on drywall sold by TTP due to the poor quality of the image. Further, there is insufficient evidence to conclude that the drywall depicted in this image was sold by TTP because, among other reasons, other manufacturers may have | TG has no record of selling drywall to U.S. dimensions with markings similar to those depicted on entry 21. |

Case 2:09-md-02047-EEF-MBN Document 22287-10 Filed 12/09/19 Page 37 of 647
Case 1:Case 2:09-md-02047-EEF-MBN Document 22287-10 Filed 12/09/19 Page 44 Page 220 of
595

4

APPENDIX (CONT'D)

**MDL-2047 Chinese Manufactured Drywall Products Liability Litigation**

| No. on MDL Court Web-site | Current name on MDL website | Taian Taishan Plasterboard Co., Ltd. | Taishan Gypsum Co. Ltd. |
|---|---|---|---|
| | | produced drywall with these markings. | |
| 22 | Unknown | TTP has no record of selling drywall to U.S. dimensions with these markings. | TG has no record of selling drywall to U.S. dimensions with these markings. |
| 23 | Unknown (9th) | TTP records indicate that it sold drywall to U.S. dimensions with the following markings:<br><br>"MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD"<br><br>However, there is insufficient evidence to conclude that the drywall depicted in this image was sold by TTP because, among other reasons, other manufacturers may have produced drywall with these markings. | TG has no record of selling drywall to U.S. dimensions with these markings. |
| 24 | Unknown (10th) | TTP records indicate that it sold drywall to U.S. dimensions with the following markings:<br><br>"MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD"<br><br>However, TTP cannot reliably determine whether the markings depicted on entry 24 were placed on drywall sold by TTP because the image is incomplete. Further, there is insufficient evidence to conclude that the drywall depicted in this image was sold by TTP because, among other reasons, other manufacturers may have produced drywall with these markings. | TG has no record of selling drywall to U.S. dimensions with these markings. |
| 25 | Unknown (11th) | TTP records indicate that it sold drywall to U.S. dimensions with the following markings:<br><br>"MADE IN CHINA MEET OR EXCEED ASTM C1396 04 STANDARD"<br><br>However, there is insufficient evidence to conclude that the drywall depicted in this image was sold by TTP because, among other reasons, other manufacturers may have produced | TG has no record of selling drywall to U.S. dimensions with these markings. |

5

APPENDIX (CONT'D)

**MDL-2047 Chinese Manufactured Drywall Products Liability Litigation**

| NO. ON MDL COURT WEB-SITE | CURRENT NAME ON MDL WEBSITE | TAIAN TAISHAN PLASTERBOARD CO., LTD. | TAISHAN GYPSUM CO. LTD. |
|---|---|---|---|
| | | drywall with these markings. | |
| 26 | Venture Supply Inc. (Tajhe/Taihe) | TTP has no record of selling drywall to U.S. dimensions with these markings. | TG sold drywall to U.S. dimensions with the following description:<br><br>"VENTURE SUPPLY INC. MFG. TAIHE CHINA"<br><br>However, there is insufficient evidence that the drywall depicted on the images at entry 26 was sold by TG because, among other reasons, other manufacturers may have produced drywall with these markings. |
| | **Non-Chinese Manufactured Drywall** | | |
| 27 | Georgia Pacific | TTP has no record of selling drywall to U.S. dimensions with these markings. | TG has no record of selling drywall to U.S. dimensions with these markings. |
| 28 | Lafarge | TTP has no record of selling drywall to U.S. dimensions with these markings. | TG has no record of selling drywall to U.S. dimensions with these markings. |
| 29 | National Gypsum | TTP has no record of selling drywall to U.S. dimensions with these markings. | TG has no record of selling drywall to U.S. dimensions with these markings. |
| 30 | USG | TTP has no record of selling drywall to U.S. dimensions with these markings. | TG has no record of selling drywall to U.S. dimensions with these markings. |
| | **Drywall From Unknown Origins** | | |
| 31 | Pro-Roc | TTP has no record of selling drywall to U.S. dimensions with these markings. | TG has no record of selling drywall to U.S. dimensions with these markings. |
| 32 | Unknown (12th) | TTP has no record of selling drywall to U.S. dimensions with these markings. | TG has no record of selling drywall to U.S. dimensions with these markings. |
| 33 | Unknown (13th) | TTP has no record of selling drywall to U.S. dimensions with these markings. | TG has no record of selling drywall to U.S. dimensions with these markings. |

6

APPENDIX (CONT'D)

**MDL-2047 Chinese Manufactured Drywall Products Liability Litigation**

| NO. ON MDL COURT WEB-SITE | CURRENT NAME ON MDL WEBSITE | TAIAN TAISHAN PLASTERBOARD CO., LTD. | TAISHAN GYPSUM CO. LTD. |
|---|---|---|---|
| 34 | Unknown (14th) | TTP has no record of selling drywall to U.S. dimensions with these markings. | TG has no record of selling drywall to U.S. dimensions with these markings. |
| 35 | Unknown (15th) | TTP's records indicate that it sold drywall to to U.S. dimensions with the following markings:<br><br>"DRYWALL 4feetX12feetX1/2inch"<br><br>However, there is insufficient evidence to conclude that the drywall depicted in this image was sold by TTP because, among other reasons, other manufacturers may have produced drywall with these markings. | TG has no record of selling drywall to U.S. dimensions with these markings. |

# TAISHAN GYPSUM



# TAISHAN GYPSUM WANG



# TAISHAN GYPSUM



# TAISHAN GYPSUM WANG



# TAISHAN GYPSUM FIVE STAR



# TAISHAN GYPSUM WEST LAKE



# TAISHAN GYPSUM DUN



# TAISHAN GYPSUM MA



**TAISHAN GYPSUM**

法 斯 特

# Tab #34

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 285 of 647
Case 2:11-cv-22408-MGC Document 27 Entered on FLSD Docket 09/15/2013 Page 233 of 595

1

```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF LOUISIANA
 2

 3
           ******************************************************************
 4

           IN RE:  CHINESE-MANUFACTURED
 5         DRYWALL PRODUCTS
           LIABILITY LITIGATION
 6

                                    CIVIL DOCKET NO. 09-MD-2047 "L"
 7                                  NEW ORLEANS, LOUISIANA
                                    FRIDAY, APRIL 17, 2015, 10:00 A.M.
 8         THIS DOCUMENT RELATES TO
           ALL CASES
 9

           ******************************************************************
10

11                   TRANSCRIPT OF MOTION HEARING PROCEEDINGS
                  HEARD BEFORE THE HONORABLE ELDON E. FALLON
12                      UNITED STATES DISTRICT JUDGE

13

           APPEARANCES:
14

15         FOR THE PLAINTIFFS'
           LIAISON COUNSEL:         HERMAN HERMAN KATZ
16                                  BY:  RUSS M. HERMAN, ESQUIRE
                                         LEONARD A. DAVIS, ESQUIRE
17                                  820 O'KEEFE AVENUE
                                    NEW ORLEANS LA  70113
18

19                                  LEVIN, FISHBEIN, SEDRAN & BERMAN
                                    BY:  ARNOLD LEVIN, ESQUIRE
20                                       SANDRA L. DUGGAN, ESQUIRE
                                    510 WALNUT STREET, SUITE 500
21                                  PHILADELPHIA, PA 19106

22
           FOR THE STATE/FEDERAL
23         COORDINATION COMMITTEE:  BARRIOS, KINGSDORF & CASTEIX
                                    BY:  DAWN M. BARRIOS, ESQUIRE
24                                  701 POYDRAS STREET, SUITE 3650
                                    NEW ORLEANS LA 70139
25
```

08:58:43

**OFFICIAL TRANSCRIPT**

1              **P-R-O-C-E-E-D-I-N-G-S**

2              FRIDAY, APRIL 17, 2015

3          M O R N I N G    S E S S I O N

4              (COURT CALLED TO ORDER)

5

6

09:46:16  7          THE DEPUTY CLERK:  All rise.

09:46:23  8          THE COURT:  Be seated, please.

09:46:23  9              The first motion we have is the Motion to Strike

09:46:36 10     the Highly Confidential Matter.  Taishan says that the Court

09:46:41 11     has ruled that the privilege is removed, but they feel that

09:46:47 12     there is a distinction between confidential and

09:46:51 13     nonconfidential, and would like to keep some of them not open

09:46:58 14     to the public.

09:47:00 15          MR. HERMAN:  May I approach, Your Honor?

09:47:01 16          THE COURT:  Yes.

09:47:17 17          MR. HERMAN:  I have a copy of this bench book that I'm

09:47:20 18     going to argue from for each of the defense firms, BNBM,

09:47:29 19     Taishan, and CNBM.

09:47:33 20              May it please the Court, Russ Herman for

09:47:37 21     plaintiffs on this issue.

09:47:39 22              The issue really is whether or not documents

09:47:44 23     which indicate an exception to privilege under crime fraud

09:47:50 24     should be made public.

09:47:53 25              Preliminarily, we note that in the past China has

                              **OFFICIAL TRANSCRIPT**

Case 2:09-md-02047-EEF-MBN  Document 22397-10  Filed 12/09/19  Page 287 of 647
Case 1:11-cv-22408-MGC  Document 277  Entered on FLSD Docket 09/15/2013  Page 235 of
595                                                                                          5

09:47:59 1  brought into the United States defective toys that are lead

09:48:02 2  based, defective built, defective pet supplies, defective

09:48:05 3  drywall and, recently, defective flooring.

09:48:08 4           We believe that there is no reason why these

09:48:12 5  documents should not be made public, so I'm going to address

09:48:15 6  them by number in the bench book.

09:48:18 7           If we turn first to Item 21, Your Honor, we see

09:48:31 8  that BNBM and Taishan, as we look there, knew before they

09:48:46 9  shipped substantial defective drywall to the United States it

09:48:51 10 was defective.  They sent it to a lab, and on May 11, 2006, it

09:48:59 11 was reported that USG said the board had a sulfuric smell to

09:49:03 12 it, and the lab said that both types of board had a very

09:49:08 13 distinct sulfur smell to them.

09:49:11 14          This was between an exclusive agent appointed in

09:49:18 15 the United States and BNBM.  You'll see the BNBM cards attached

09:49:26 16 to this communication.

09:49:30 17          This is in spite of the fact that Taishan denied

09:49:35 18 in depositions in Hong Kong that they knew in advance that the

09:49:39 19 drywall was defective.

09:49:41 20          Then, if we look at item 22, we look at the

09:49:53 21 states where the drywall was brought into the United States,

09:49:58 22 the Gulf States primarily and North Carolina and Virginia.  As

09:50:03 23 we turn the pages, we see that after 2006, substantial

09:50:09 24 shipments were made by Taishan of board which they knew was

09:50:14 25 defective.

**OFFICIAL TRANSCRIPT**

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 288 of 647
Case 1:11-cv-22408-MGC Document 27 Entered on FLSD Docket 08/15/2013 Page 236 of 595

6

|09:50:17| 1 | That brings us to, Your Honor, the Hogan Lovells
|09:50:32| 2 | e-mail.  Now, the defendants -- I've put in their bench book
|09:50:35| 3 | these e-mails.  I know that they are under seal.  I know they
|09:50:38| 4 | are marked highly confidential.  But there has already been an
|09:50:42| 5 | ego, alter ego, single enterprise finding, and so these are, in
|09:50:49| 6 | fact, their documents.  Therefore, whatever was released to us
|09:50:57| 7 | has been given today to defense counsel for Taishan, BNBM and
|09:51:06| 8 | CNBM.
|09:51:08| 9 | If we look at page 26, we see -- I'm sorry,
|09:51:16|10 | Item 26, we see several things that CNBM and BNBM were notified
|09:51:26|11 | about the litigation, and they were determined to withdraw from
|09:51:30|12 | it.  We believe that these some-odd three thousand people who
|09:51:37|13 | have been victimized since 2006 deserve to know that.
|09:51:42|14 | The next page says that Chairman Jia of Taishan
|09:51:48|15 | is not able to make a decision, it's got to be made higher up.
|09:51:53|16 | And who are the higher-ups, BNBM and CNBM.
|09:51:59|17 | There are other e-mails.  The next one relates to
|09:52:05|18 | CNBM, BNBM and SASAC.
|09:52:12|19 | Then it follows that Your Honor's contempt order
|09:52:19|20 | and the injunction was reported up the line to CNBM and BNBM by
|09:52:29|21 | Taishan.
|09:52:30|22 | Now, we looked at the actual relationships among
|09:52:38|23 | these folks who are defendants before Your Honor.  If we look
|09:52:44|24 | at pages 2 through 11 -- Items 2 through 11 -- and I'm not
|09:52:52|25 | going to go through all of them, I'll just take the 2010

**OFFICIAL TRANSCRIPT**

# Tab #35

```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF LOUISIANA
 2

 3      ****************************************************************

 4      In re:  CHINESE-MANUFACTURED      MDL DOCKET NO. 09-MD-2047
        DRYWALL PRODUCTS LIABILITY        SECTION L
 5      LITIGATION                        NEW ORLEANS, LOUISIANA
                                          Tuesday, December 8, 2015
 6      THIS DOCUMENT RELATES TO:         8:00 A.M.

 7      ALL CASES

 8
        ****************************************************************
 9

10               TRANSCRIPT OF MOTION HEARING PROCEEDINGS
               HEARD BEFORE THE HONORABLE ELDON E. FALLON
11                   UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19      OFFICIAL
        COURT REPORTER:   TERRI A. HOURIGAN, CRR, RPR
20                        CERTIFIED REALTIME REPORTER
                          REGISTERED PROFESSIONAL REPORTER
21                        500 POYDRAS STREET, ROOM B-275
                          NEW ORLEANS, LOUISIANA  70130
22                        (504) 589-7775
                          Terri Hourigan@laed.uscourts.gov
23

24      PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY.  TRANSCRIPT
        PRODUCED BY COMPUTER.
25
```

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 391 of 647
Case 1:11-cv-22408-MGC Document 27 Entered on FLSD Docket 08/15/2013 Page 239 of 595

45

09:09AM 1      But we don't have to look just at the default judgment,

09:09AM 2   Your Honor.  We don't have to look at what Your Honor has said

09:09AM 3   and found in decisions.

09:09AM 4      Next.  Oh, Beijing New Building Materials Public

09:09AM 5   Limited Company, BNBM PLC, one of the alphabet soup of CNBM,

6   BNBM and Taishan.

09:10AM 7      It says 100 percent ownership -- just what I'm saying.

09:10AM 8   Not what Mr. Cao says, who we will depose hopefully because you

09:10AM 9   may have given us -- I will say "may," Your Honor -- 45 days to

09:10AM 10  work on that yesterday.

09:10AM 11     This is their own documents.  This document is filed in

09:10AM 12  a Chinese stock exchange, and it's filed each and every year.

09:10AM 13     Next.  On the annual reports, "each and every year."

09:10AM 14     Next.  The Board of Directors, the Supervisory

09:10AM 15  Committee, and all directors, supervisors, and senior

09:10AM 16  executives of the Company confirm that there are no

09:10AM 17  misrepresentations or misleading statements contained in or

09:10AM 18  material omissions from this report, and accept joint and

09:11AM 19  several responsibilities for the truthfulness, accuracy and

09:11AM 20  completeness of the contents of this report.

09:11AM 21     Mr. Cao, Chairman of the company, under oath.  Cao has

09:11AM 22  been director of CNBM Group since April 2014.  He is General

09:11AM 23  Manager of CNBM Group.

09:11AM 24     March 2005, to present, Cao has been President and

09:11AM 25  Executive Director of CNBM.

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 292 of 647
Case 2:11-cv-22408-MGC Document 27 Entered on FLSD Docket 08/15/2013 Page 240 of 595

46

09:11AM 1    2005 to present, Cao held a range of positions at BNBM

09:11AM 2   Group.  Currently, Cao is Chairman of the Supervisory Committee

09:11AM 3   at BNBM Group.

09:11AM 4    Your Honor, this is a case that is very important to

09:11AM 5   our jurisprudence, because China is still a communist nation.

09:12AM 6    Since about 2006, at least, according to Hank Paulson,

09:12AM 7   they transitioned and they are trying to enter our world.  And

09:12AM 8   they are welcome in our world, and we welcome them in our

09:12AM 9   world.  But when they say it's no small thing that he was on

09:12AM 10  the Supervisory Committee, that's the Communist Party Committee

09:12AM 11  in the corporation.

09:12AM 12   When I asked the question at the deposition, the answer

09:12AM 13  was more like it was a social club.

09:12AM 14   Well, we could take judicial notice that that was not a

09:12AM 15  social club.

09:12AM 16   Next.  Now there is a big difference between what is

09:12AM 17  said in the courtroom, what is said in depositions, and what is

09:13AM 18  said in documents that are filed, and what the truth is.

09:13AM 19   We all sat in Hong Kong, Your Honor, in a dungeon, and

09:13AM 20  couldn't believe the deposition of Fu Tinghuan -- I have

09:13AM 21  difficulty with Chinese names.

09:13AM 22   When he said, "In China, we exaggerate a little bit."

09:13AM 23  Exaggerate a little bit.  That's allowed.

09:13AM 24   Everybody in that room, and Your Honor will speak for

09:13AM 25  yourself, I'm excluding you, because I don't know your opinion,

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 393 of 647
Case 1:11-cv-22408-MGC Document 27 Entered on FLSD Docket 08/15/2013 Page 41 of 595

47

09:13AM 1    knew what he was saying.  In China, we can lie.

09:13AM 2          Next.  Finally, May 11th, 2009, report to Chiefs Song

09:14AM 3    and Cao.  In this conglomerate as we heard them depict this as,

4    they are the two heads:  Cao and Song.

09:14AM 5          Song, I read once someplace that he is the sixth most

09:14AM 6    influential businessman in China.

09:14AM 7          What does it say?  After analysis, Taishan Company

09:14AM 8    believes that this lawsuit is relatively complicated and it

09:14AM 9    plans not to respond, but when necessary it will provide

09:14AM 10   documents that are beneficial to Taishan Company to the Court

09:14AM 11   that accepted this case.  Beneficial.

09:14AM 12         That means they will triage their documents and give us

09:14AM 13   what they want to give us and not give us, which is harmful,

09:14AM 14   and Taishan will come in here if they have to, but CNBM Group

09:14AM 15   will stay home in China and CNBM Group is directing them to do

09:15AM 16   that.

09:15AM 17         I'm not the only one that feels this way about those

09:15AM 18   companies.

09:15AM 19         Morgan Stanley offering memorandum.  This is their

09:15AM 20   investment advisor, the one that put this whole thing together,

21   this global prospectus.

09:15AM 22         What did they say about their client?  We cannot

09:15AM 23   guarantee the accuracy of facts and statistics derived from

09:15AM 24   official sources and industry publications with respect to the

09:15AM 25   PRC, the People's Republic of China, the PRC economy, and the

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 294 of 647
Case 1:11-cv-22408-MGC Document 274 Entered on FLSD Docket 08/15/2013 Page 242 of 595

48

09:15AM 1   PRC building materials industry contained in this prospectus

09:15AM 2   and the investors should not place undue reliance on them.

09:15AM 3        I wouldn't buy something with that cautionary language

09:15AM 4   in it.  And I don't think Morgan Stanley is in business to hurt

09:16AM 5   the clients that they are representing.  But they felt that

09:16AM 6   they had to do this to prevent plaintiffs from suing Morgan

09:16AM 7   Stanley, because after all, the operatives of CNBM were all

09:16AM 8   over the United States in road shows selling their stock.

09:16AM 9        Now, what did Mr. Cao produce on ownership?  He

09:16AM 10  produced a business license from 1981 -- long before 2006.

09:16AM 11       And unfortunately, we have BNBM's word, year in and

09:16AM 12  year out, CNBM Group, CNBM, BNBM, Taishan.  BNBM has told us

09:16AM 13  who owns the company, and they are not entitled to it.

09:17AM 14       They have been playing hide the pea for a long time,

09:17AM 15  Your Honor.

09:17AM 16       Next.  We took depositions in this case, Russ and I,

09:17AM 17  Mr. Herman and I, of their 30(b)(6) witnesses.  And my God,

09:17AM 18  they were producing documents -- machine documents that you

09:17AM 19  couldn't read.  We were having them produced from Chinese to

09:17AM 20  English and working with them.

09:17AM 21       And they produced the bulk of the documents after the

09:17AM 22  depositions.  That is not fair.  But that is what we were

09:17AM 23  blessed with.

09:17AM 24       And they still continue to dump documents on us at

09:17AM 25  4:30 in the morning.  This has been an organized effort to see

09:32AM 1    controls BNBM; and BNBM controls Taihe, and not only that, the

09:32AM 2    two companies that were doing business in the United States

09:32AM 3    violating your order, Jushi and China Triumph.

09:32AM 4         I'm going to save that for another day.

09:32AM 5         Next line, please.  It shows that JP Morgan Chase had

09:32AM 6    about eight percent in total share capital in 2005 of these

09:32AM 7    various interlocking corporations.

09:32AM 8         This deals with CNBM and it talks about the Parent

09:33AM 9    Group, which is CNBMG, but how are they not doing business in

09:33AM 10   the United States if they controlled, through JP Morgan, eight

09:33AM 11   percent of the capital?  That is an extraordinary amount of

09:33AM 12   capital to be controlled.

09:33AM 13        Next.  Now in 2006, they embarked on making CNBM, after

09:33AM 14   passing a resolution in 2005, a public company.  And in the

09:33AM 15   prospectus of CNBM Company, published by Morgan Stanley at

09:33AM 16   their request, it shows that Taihe became a subsidiary,

09:33AM 17   consolidated with BNBM, long-term control of Taihe's board of

09:33AM 18   directors.  Of course, there were five directors.  They got to

09:33AM 19   elect three.  Then who elected BNBM?  Why CNBM?

09:33AM 20        Who elected CNBM?  CNBMG.

09:34AM 21        Still in 2006, you give me the next slide, please, who

09:34AM 22   is the Parent?  In all of these documents who is the Parent

09:34AM 23   CNBM Group Corporation.

09:34AM 24        Who are the controllers?  Collectively, Parent, BNBMG,

09:34AM 25   Building Materials Academy, which incidentally they owned

09:34AM 1      100 percent of, and CNBM Trading.

09:34AM 2            Next slide, please.  You know, this is a very

09:34AM 3      interesting case on the facts.

09:34AM 4            Just Brandeis once remarked that sunlight is the best

09:34AM 5      disinfectant.  And what we're faced with here is and

09:34AM 6      disinfecting a Chinese corporate enterprise that permeates our

09:34AM 7      culture in which they use our Courts, but deny our Courts the

09:35AM 8      opportunity to judge their torts, their commercial activity.

09:35AM 9            And they recognize that if their products fail to

09:35AM 10     perform as expected, they not only would get negative publicity

09:35AM 11     from defects and failures, but they would have claims from

09:35AM 12     purchasers.

09:35AM 13           Now that is a public representation, not a private

09:35AM 14     representation.

09:35AM 15           And it says:  A Parent at CNBMG, the company that

09:35AM 16     CNBM's controlling shareholder may differ from those of the

09:35AM 17     company's other shareholders, and the parent could make

09:35AM 18     decisions that were not in the best interests of shareholders.

09:35AM 19           That is an important statement.

09:35AM 20           Also, it says, look you may not be able to serve the

09:36AM 21     company or its directors.  Well, we know that is true.

09:36AM 22           It says, PRC judgments obtained from non-PRC Courts,

09:36AM 23     does that explain motive?

09:36AM 24           Where in any enterprise, in any individual, if you want

09:36AM 25     to be treated like a person in our Courts, and our law is that

09:36AM 1   you are a person, then you have to subject yourself to the same

09:36AM 2   laws that a person would.

09:36AM 3   You can't hide.  That is what piercing the corporate

09:36AM 4   veil means.  That is what Chairman Song of CNBMG, CNBM, and

09:36AM 5   BNBMG said, that you have got to watch out, the U.S. is passing

09:36AM 6   the corporate veil.

09:37AM 7   Next.  The directors of Mr. Song -- we're in 2006 now,

09:37AM 8   one of those critical years.  And by the way, learned counsel

09:37AM 9   opposite tried the limit, as he can, he's an advocate.  The

09:37AM 10  shipments from 2005 to 2007, we're going to show you the

09:37AM 11  evidence, Your Honor, that we're really dealing with 2005,

09:37AM 12  2006, 2007, and 2008, but Mr. Song Zhiping and Mr. Cao Jianglin

09:37AM 13  continue to be directors of the Parent.

09:37AM 14  The directors of the Parent, and why is this key?

09:37AM 15  Because this is commercial enterprise.  The directors of the

09:37AM 16  Parent are only involved in the high level decision-making of

09:37AM 17  strategic and policy matters, formulation of business plans,

09:37AM 18  investment strategies, changes in business focus, market, and

09:37AM 19  customer groups.

09:38AM 20  What about our 4,000 people here?  What about all of

09:38AM 21  the companies in these various states that they either ran or

09:38AM 22  sold this material to, which was inherently defective?

09:38AM 23  I remember from Planiol and Pothier -- maybe this only

09:38AM 24  applies in a code state -- that, you know, if you buy a vase,

09:38AM 25  and you think it's porcelain, you can't tell that it's not

10:33AM 1    think that is a disadvantage to my client that ought not be

10:33AM 2    borne.

10:33AM 3         I don't think we need that affidavit, by the way.  It

10:33AM 4    was offered in good faith.  I think it was helpful and

10:33AM 5    relevant, but if the cost of keeping that affidavit is further

10:33AM 6    delay, we would ask you to disregard it.

10:33AM 7         THE COURT:  Okay.

10:34AM 8         MR. LEVIN:  Your Honor, we would like to reconsider

10:34AM 9    that, and get back to you very shortly on it.

10:34AM 10        We just don't think you can drop into this courtroom

10:34AM 11   like Mary Poppins and then just remove yourself having tainted

10:34AM 12   the record.

10:34AM 13        THE COURT:  All right.  We have another -- I will let

10:34AM 14   you all think about it, and give me the benefit of your view.

10:34AM 15   I will rule on it one way or the other.

10:34AM 16        MR. HERMAN:  The problem is, you have read it, and you

10:34AM 17   thought it was helpful.

        18        THE COURT:  Yeah.

10:34AM 19        MR. HERMAN:  Now if it's taken out, we have got a

10:34AM 20   problem.

10:34AM 21        I do want to thank counsel opposite, and particularly

10:34AM 22   the Court, for agreeing to begin at eight o'clock this morning.

10:34AM 23        Whoever the "they" is I referred to, I'm sure I was

10:34AM 24   accurate, and I did not include opposing counsel.

10:34AM 25        I have a great deal of disdain for Taishan and BNBM.

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 299 of 647
Case 1:11-cv-22408-MGC Document 27 Entered on FLSD Docket 09/15/2013 Page 247 of
595

84

10:34AM 1          THE COURT:  All right.  With regard -- counsel makes a

10:34AM 2  point.  I wouldn't allow you to cast aspersions on opposing

10:35AM 3  counsel because both of you all are officers of the Court.

10:35AM 4          But henceforth, let's talk about the issues rather than

10:35AM 5  whether or not somebody lied or didn't lie.  That is not

10:35AM 6  helpful to me one way or the other.

10:35AM 7          Harry, you have something?

10:35AM 8          MR. ROSENBERG:  Yes, Your Honor.  If it please the

10:35AM 9  Court, good morning, Your Honor.

10:35AM 10         We would like to just raise with the Court a separate

10:35AM 11  issue, Your Honor, which relates to a pleading filed by the PSC

10:35AM 12  yesterday evening.

10:35AM 13         And if the Court please, Ms. Eikhoff, who represents

10:35AM 14  Taishan, would like to address the Court initially on that

10:35AM 15  matter.

16         THE COURT:  Okay.

17         MR. ROSENBERG:  Thank you, Judge.

18         MS. EIKHOFF:  Thank you, Your Honor.  I'm Christy

10:35AM 19  Eikhoff here on behalf of Taishan.

10:35AM 20         Your Honor, yesterday in a conference that we had in

10:35AM 21  chambers prior to the Court's regularly scheduled status

10:35AM 22  conference, we talked about the parties filing motions and the

10:35AM 23  timing of responses to those motions.

10:36AM 24         In that conference, the Court directed counsel that if

10:36AM 25  they are going to file a motion, they should call the other

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 300 of 647
Case 1:11-cv-22408-MGC Document 274 Entered on FLSD Docket 08/15/2019 Page 248 of 595

85

10:36AM 1    side and let them know so the parties can work out a time table

10:36AM 2    for both a response and a hearing.

10:36AM 3         Just a few hours later, we received by e-mail a filing

10:36AM 4    notice that the PSC had filed a motion for sanctions, that we

10:36AM 5    had no idea it was coming.

10:36AM 6         It came in the context of filings related to the Peng

10:36AM 7    discovery hearing, which this Court is well familiar with.

10:36AM 8    It's background is on September 17th in a conference we had

10:36AM 9    with the Court, and this Court had questions about Mr. Peng and

10:36AM 10   his documents and his whereabouts, and set an evidentiary

10:36AM 11   hearing on that issue.

10:36AM 12        Importantly, that hearing was not set on the PSC's

10:36AM 13   motions, but rather at the Court's directive.

10:36AM 14        Also, importantly, since September 17th, the PSC has

10:36AM 15   made several attempts to expand the scope of those proceedings

10:36AM 16   well beyond what the Court directed.  They have wanted it to be

10:37AM 17   about other discovery issues, about alter ego, about the other

10:37AM 18   defendants in this case, and this Court has rejected that

10:37AM 19   numerous times, both from the bench, and in written orders.

10:37AM 20        The hearing is about Mr. Peng and his discovery in 2015

10:37AM 21   in the contempt tract of these proceedings.

10:37AM 22        We had opening statements on November 17th.  After that

10:37AM 23   we had another conference with the Court to talk about whether

10:37AM 24   more briefing on the issue would be necessary.  And the

10:37AM 25   agreement that was made with the Court's endorsement was that

# Tab #36

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No. 1:11-CV-22408-MGC**
美国佛罗里达南区联邦地方法院
**案件编号：1:11-CV-22408-MGC**

EDUARDO AND CARMEN AMORIN, *et al.*,
individually, and on behalf of all others
similarly situated,
EDUARDO AND CARMEN AMORIN 等，以个人名义，并代表所有其他类似情况的原告

      Plaintiffs,
      原告

v.
诉

TAISHAN GYPSUM CO., LTD. F/K/A SHANDONG
TAIHE DONGXIN CO., LTD.; TAIAN TAISHAN
PLASTERBOARD CO., LTD., *et al.*,
泰山石膏有限公司（曾用名山东泰和东新股份有限公司和泰安市泰山纸面石膏板有限公司），等

      Defendants.
      被告
_____/

**DECLARATION OF CHE GANG**
车刚的声明

I, Che Gang, declare as follows:
本人，车刚，声明如下：

1. My name is Che Gang. I am over eighteen (18) years of age and suffer from no legal disability.
   我的姓名是车刚。我已超过十八（18）周岁，具有法定行为能力。

2. This affidavit is true and correct, and based on my own personal knowledge.
   本宣誓陈述书真实准确，且基于我本人所知情况。

3. I am the manager of the foreign sales department for Taishan Gypsum Co., Ltd. ("Taishan"), and have been employed by Taishan since 2001.
   我是泰山石膏有限公司（"泰山"）的外贸部经理，从 2001 年开始受雇于泰山。

4. I served as Taishan's designated corporate representative witness for Taishan's 30(b)(6) deposition on January 22-23, 2019 (the "PID Deposition").
我于 2019 年 1 月 22 日至 23 日作为泰山指定的公司代表证人参加了泰山的 30(b)(6)质证（"产品标识质证"）。

5. At the request of Plaintiffs' attorneys, Taishan produced the following documents in January 2019: (1) Quality Management Regulation (TG-PID-000081), and (2) Product Identification Use Management Regulation (TG-PID-000143). Because of the proprietary competitive information contained in these documents, they were designated as Highly Confidential under the Court's Protective Orders. For purposes of this Affidavit, I will refer to them as "the Regulation Manuals."
经原告律师的要求，泰山于 2019 年 1 月提供了下述文件：（1）《质量管理规定》（TG-PID-000081），及（2）《产品标识使用管理规定》（TG-PID-000143）。由于这些文件含有专有竞争性质信息，法庭保护令将其指定为高度机密。为本宣誓陈述书之目的，我将他们称为"管理手册"。

6. During the PID Deposition, Plaintiffs' Counsel introduced the Regulation Manuals as exhibits. Plaintiffs asked me to read aloud certain portions of the Regulation Manuals that Plaintiffs' counsel had highlighted beforehand, and I complied. Plaintiffs' Counsel asked me no other questions about the Regulation Manuals.
在产品标识质证过程中，原告律师将管理手册作为附件进行了介绍。原告要求我大声读出管理手册中原告律师之前标黄的部分内容，我按照要求做了。原告律师没有再就管理手册向我提出其他问题。

7. The Regulation Manuals govern only Taishan's production of drywall for sale and use within the People's Republic of China. The Regulation Manuals do not relate to Taishan's foreign sales or production, including its past production of American-sized drywall.
管理手册只管理泰山在中华人民共和国境内供销售和使用的石膏板的生产。管理手册不涉及泰山供外国销售或生产的产品，包括此前生产的美国尺寸石膏板。

8. Taishan has never considered the Regulation Manuals to be related to the U.S. litigation.
泰山从来都不认为管理手册与美国诉讼相关。

9. Taishan's company policies require that when the Regulation Manuals are revised, those revisions supersede the prior versions. That business practice avoids confusion about which policies and procedures govern current production. Taishan has implemented that regular business practice with respect to the Regulation Manuals for at least the last 15 years.
泰山的公司规定要求，一旦管理手册修订，修订内容将取代此前版本的内容。该企业惯例可以避免当前生产过程受哪一个管理规定和程序管辖的混乱。泰山在管理手册方面执行这种固定的企业惯例已经至少 15 年了。

2

10. Taishan made every effort to comply with the Court's preservation orders in U.S. litigation. It has not knowingly destroyed or deleted any materials that it knew to be relevant to the issues in the case.
泰山在美国诉讼中已经竭尽全力遵守法庭的证据保存命令。泰山从未故意破坏或删除它知道与案件争议相关的任何材料。

11. Taishan's counsel has read portions of my PID Deposition transcript to me in Mandarin. During that review, I realized that portions were inaccurately transcribed or contained misstatements by me that needed clarification. I have submitted the following errata sheet to correct the record.
泰山的律师已经将我在产品标识质证中的记录稿的部分内容用中文读给我听了。在审阅过程中，我意识到有一些内容记录有误或是对我的证词有错误表述，我需要予以澄清。为更正记录，我提交以下勘误表。

_____
Che Gang
车刚

_____
Date

日期

3

**ERRATA FOR**
**TAISHAN 30(B)(6) DEPOSITION**
**JANUARY 22-23, 2019**
泰山 30(B)(6)证词勘误
2019 年 1 月 22-23 日

In my capacity as Taishan's corporate designee for the above-referenced deposition, I, Che Gang, wish to make the following corrections:

作为上述质证的泰山公司被指定代表证人，本人，车刚，希望作出以下更正：

| Page 页码 | Line 行数 | Change 更正内容 | Reason 理由 |
|---|---|---|---|
| 19 | 19 | "residue" to "residual" "剩余"改成 "剩余的" | Translation error 翻译错误 |
| 31 | 15 | "residue" to "residual" "剩余"改成 "剩余的" | Translation error 翻译错误 |
| 36 | 19-20 | "Austin – Sidley Austin" to "Alston & Bird" "盛德" 改成 "奥斯顿" | Translation/transcription error 翻译/记录错误 |
| 59 | 9 | "Correct" to "Taishan has no evidence that it made the drywall at photographs 27 and 28 in that time frame. "正确" 改成 "泰山没有证据证明在该时间段内生产了图片 27 和 28 中的石膏板" | Double negatives in the question were confusing. 提问中的双重否认让人难以理解 |
| 82 | 10-12 | "But because the attorney told us that all these pictures are from one set, which is to say they're together" to "But because the attorney showed us additional pictures from this category marking" "但因为律师告诉我们所有这些照片是一组，也就是说他们是一起的" 改成 "但因为律师给我们看了这组标识中的其他照片" | Misspoke (clarified on record at page 89) 口误（在记录的第 89 页进行了澄清） |
| 84 | 17-19 | "And our attorney told us that | Misspoke (clarified on |

| | | these four photographs consist of one set of photographs" to "And our attorney showed us additional pictures from this category marking"<br>"并且我们的律师告诉我们这四张照片构成一组"改成"并且我们的律师给我们看了这组标识中的其他照片" | record at page 89)<br>口误（在记录的第 89 页进行了澄清） |
|---|---|---|---|
| 87 | 3-6 | "I relied on the statements made by my attorneys to me that the picture 15 and 16's drywalls is the same set of drywall as the ones before" to "I relied on my review of other photos in the 15 and 16 categories"<br>"我的依据是我的律师告诉我图片 15 和 16 上的石膏板和之前的那些是同一块石膏板"改成"我的依据是我审阅了第 15 和 16 组的其他照片" | Misspoke (clarified on record at page 89)<br>口误（在记录的第 89 页进行了澄清） |
| 87 | 10-12 | "Because the attorneys told us it's one set of products" to "Because the attorneys showed us additional pictures from this category marking"<br>"因为律师告诉我们这些是一组产品"改成"因为律师给我们看了这组标识的其他照片" | Misspoke (clarified on record at page 89)<br>口误（在记录的第 89 页进行了澄清） |
| 96 | 11 | "Exhibit 19" to "page 19"<br>"附件 19"改成"第 19 页" | Misspoke<br>口误 |
| 107 | 16 | "accurate" to "precise"<br>"accurate"改成"precise" | Translation error (inconsistent with page 72:7 and 112:24, which uses "precise")<br>翻译错误（与第 72:7 和 112:24 页内容不一致，这些页码的记录中使用的是"precise"） |

| 118 | 14 | "There's some similarities" to "There's some similarities, but the other photo at page 9 is inconsistent with Taishan's records." <br> "有一些相似性"改成 "有一些相似性，但是第9页的其他照片与泰山的记录不相符合" | Incomplete answer <br> 答案不完整 |
|---|---|---|---|
| 150 | 17-18 | "Kang Yijia" to "Kang Yijia, a competing drywall company in Tai'an," <br> "康亿家" 改成 "康亿家，我们在泰安的一家生产石膏板的竞争公司" | Incomplete answer <br> 答案不完整 |
| 277 | 3 | "Yes" to "Yes, a separate copy was given." <br> "是" 改成 "是，给了（他们）一份单独的副本" | Clarification <br> 澄清 |
| 277 | 13 | "It is" to "A copy is" <br> "它是"改成 "副本是" | Clarification <br> 澄清 |
| 279 | 19 | "compelled" to "compiled" <br> "compelled"改成 "compiled" | Transcription error <br> 记录错误 |
|  |  |  |  |

6

# Tab #37

# FILED UNDER SEAL

# Tab #38

# FILED UNDER SEAL

# Tab #39

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |  |
|---|---|---|---|
|  | : | MDL NO. 2047 |  |
| IN RE: CHINESE-MANUFACTURED DRYWALL |  |  | : |
| PRODUCTS LIABILITY LITIGATION | : | SECTION:  L |  |
|  | : |  |  |
|  | : | JUDGE FALLON |  |
|  | : | MAG. JUDGE WILKINSON |  |

.. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. :

**THIS DOCUMENT RELATES TO ALL CASES**

**PRETRIAL ORDER #1**
**Setting Initial Conference**

It appearing that civil actions listed on Schedule A, attached hereto, which were

transferred to this Court by order of the Judicial Panel on Multi District Litigation pursuant to its

order of June 15, 2009 merit special attention as complex litigation, the following Order is

issued:

1.  INTRODUCTION—It is not yet known how many attorneys will eventually join this

litigation, but we can assume it will be a large number.  As attorneys involved in a multi-district

case, you will probably be laboring together for some time in the future with work progressively

becoming more complicated and exacting.  Some of you know each other and some are complete

strangers.  Undoubtedly each has a different style and personality.  It is likely that during the

course of this litigation your working relationship will occasionally be strained, communication

derailed, and mutual trust questioned.  The just and efficient resolution of this litigation will

depend in large measure on the way you as attorneys comport yourselves and overcome the temptations and trepidations inherent in a case of this magnitude. The Manual for Complex Litigation recognizes that judicial involvement in managing complex litigation does not lessen the duties and responsibilities of the attorneys. To the contrary, the added demands and burdens of this type of litigation place a premium on professionalism and require counsel to fulfill their obligations as advocates in a manner that will foster and sustain good working relations among fellow counsel and the Court. The Court expects, indeed insists, that professionalism and courteous cooperation permeate this proceeding from now until this litigation is concluded. The court record should never be the repository of ill- chosen words arising out of a sense of frustration over real or imagined issues. Because of the high level of competence and experience of attorneys who are generally involved in multi-district litigation, this Court is confident that this objective will be achieved without judicial intervention.

2.  APPLICABILITY OF ORDER—Prior to the initial pretrial conference and entry of a comprehensive order governing all further proceedings in this case, the provisions of this Order shall govern the practice and procedure in those actions that were transferred to this Court by the Judicial Panel on Multi District Litigation pursuant to its order of June 15, 2009 listed on Schedule A. This Order also applies to all related cases filed in all sections of the Eastern District of Louisiana and will also apply to any "tag-along actions" later filed in, removed to, or transferred to this Court.

3.  CONSOLIDATION—The civil actions listed on Schedule A are consolidated for

pretrial purposes.  Any "tag-along actions" later filed in, removed to or transferred to this Court, or directly filed in the Eastern District of Louisiana, will automatically be consolidated with this action without the necessity of future motions or orders.   This consolidation, however, does not constitute a determination that the actions should be consolidated for trial, nor does it have the effect of making any entity a party to any action in which he, she or it has not been named, served or added in accordance with the Federal Rules of Civil Procedure.

4.  DATE OF INITIAL CONFERENCE AND AGENDA FOR

CONFERENCE—Matters relating to pretrial and discovery proceedings in these cases will be addressed at an initial pretrial conference to be held on July 9, 2009 at 2:00 p.m. in Judge Eldon E. Fallon's courtroom, Room C- 468, United States Courthouse, 500 Poydras Street, New Orleans, Louisiana.  Counsel are expected to familiarize themselves with the *Manual for Complex Litigation, Fourth* ("MCL 4th") and be prepared at the conference to suggest procedures that will facilitate the expeditious, economical, and just resolution of this litigation. The items listed in MCL 4th Sections 22.6,  22.61, 22.62, and 22.63 shall, to the extent applicable, constitute a tentative agenda for the conference.  Counsel shall confer and seek consensus to the extent possible with respect to the items on the agenda, including a proposed discovery plan, amendment of pleadings,  consideration of any class action allegations and motions, and be prepared to select trial dates.  If the parties have any suggestions as to any case management orders or additional agenda items,  these shall be faxed to (504) 589-6966 or otherwise submitted to the Court by July 6, 2009.

5. POSITION STATEMENT—Plaintiffs and defendants shall submit to the Court by July 1, 2009 a brief written statement indicating their preliminary understanding of the facts involved in the litigation and the critical factual and legal issues. These statements will not be filed with the Clerk, will not be binding, will not waive claims or defenses, and may not be offered in evidence against a party in later proceedings. The parties' statements shall list all pending motions, as well as all related cases pending in state or federal court, together with their current status, including any discovery taken to date, to the extent known. The parties shall be limited to one such submission for all plaintiffs and one such submission for all defendants.

6. APPEARANCE—Each party represented by counsel shall appear at the initial pretrial conference through their attorney who will have primary responsibility for the party's interest in this litigation. Parties not represented by counsel may appear in person or through an authorized and responsible agent. To minimize costs and facilitate a manageable conference, parties with similar interests may agree, to the extent practicable, to have an attending attorney represent their interest at the conference. A party, by designating an attorney to represent the party's interest at this initial conference, will not be precluded from personally participating or selecting other representation during the future course of this litigation, nor will attendance at the conference waive objections to jurisdiction, venue or service.

7. SERVICE—Prior to the initial pretrial conference, service of all papers shall be made on each of the attorneys on the Panel Attorney Service List attached hereto and designated as Schedule B. Any attorney who wishes to have his/her name added to or deleted from such Panel

-4-

Attorney Service List may do so upon request to the Clerk of this Court and notice to all other persons on such service list. The parties shall present to the Court at the initial conference a list of attorneys and their office addresses, phone and fax numbers, and E-mail addresses.

8. EXTENSION AND STAY—Each defendant is granted an extension of time for responding by motion or answer to the complaint(s) until a date to be set by this Court. Pending the initial conference and further orders of this Court, all outstanding discovery proceedings are stayed, and no further discovery shall be initiated. Moreover, all pending motions must be renoticed for resolution on a motion day or days after the Court's initial conference herein.

9. MASTER DOCKET FILE—Any pleadings or document which is to be filed in any of these actions shall be filed with the Clerk of this Court and not in the transferor court. The Clerk of this Court will maintain a master docket case file under the style "In Re: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION" and the identification "MDL No. 2047 ". When a pleading is intended to be applicable to all actions, this shall be indicated by the words: "This Document Relates to All Cases." When a pleading is intended to apply to less than all cases, this Court's docket number for each individual case to which the document number relates shall appear immediately after the words "This Document Relates to". The following is a sample of the pleading style:

IN RE: CHINESE-MANUFACTURED DRYWALL          MDL No. 2047
PRODUCTS LIABILITY LITIGATION

                                              SECTION: L

This Document Relates to:                     Judge Fallon
                                              Mag. Judge Wilkinson

-5-

Case 2:09-md-02047-EEF-MBN  Document 23397-10  Filed 04/09/18  Page 316 of 647
Case 1:21-cv-22409-MGC  Document 2W  Document 1  Filed 04/09/18  Page 2 of 595  Page 264 of
595

10.  FILING—All documents filed in this Court, subsequent to those initiating a new

case, must be filed electronically pursuant to Local Rule 5.7 E and this Court's Administrative

Procedures for Electronic Filing.  Attorneys may register for electronic filing at

www.laed.uscourts.gov/cmecf/cm_ecf_training.htm.  An attorney who, due to exceptional

circumstances, is unable to comply with the requirements of electronic filing, may apply to the

Court for an order granting an exemption.  The application shall be in writing, filed with the

Clerk of Court, and shall state the reason for the attorney's inability to comply.

Pro se litigants who have not been authorized to file electronically shall continue to file their

pleadings with the Clerk of this Court in the traditional manner, on paper.

The Clerk of Court is directed to make all entries on the master docket sheet with a notation

listing the cases to which the document applies, except that a document closing a case will also

be entered on the individual docket sheet.  All documents shall be filed in the master file.

11.  DOCKETING—When an action that properly belongs as a part of In Re: Chinese-

Manufactured Drywall Products Liability Litigation is hereinafter filed in the Eastern District of

Louisiana or transferred here from another court, the Clerk of this Court shall:

   a.     File a copy of this Order in the separate file for such action;

   b.     Make an appropriate entry on the master docket sheet;

   c.     Forward to the attorneys for the plaintiff in the newly filed or transferred

          case a copy of this Order;

   d.     Upon the first appearance of any new defendant, forward to the attorneys

          for the defendant in such newly filed or transferred cases a copy of this

          Order.

12.  APPEARANCES—Counsel who appeared in a transferor court prior to transfer need

not enter an additional appearance before this Court.  Moreover, attorneys admitted to practice

and in good standing in any United States District Court are admitted *pro hac vice* in this

litigation, and the requirements of Local Rules 83.2.6E  and 83.2.7 are waived.  Association of

local counsel is not required.

13.  REMAND STIPULATIONS—In the event that a case is remanded, the parties shall

furnish to the Clerk of Court a stipulation or designation of the contents of the record and furnish

all necessary copies of any pleadings filed so as to enable the transferee clerk to comply with the

order of remand.

14.  PRESERVATION OF EVIDENCE—All parties and their counsel are reminded of

their duty to preserve evidence that may be relevant to this action.  The duty extends to

documents, data, and tangible things in possession, custody and control of the parties to this

action, and any employees, agents, contractors, carriers, bailees, or other nonparties who possess

materials reasonably anticipated to be subject to discovery in this action.  "Documents, data, and

tangible things" is to be interpreted broadly to include writings, records, files, correspondence,

reports, memoranda, calendars, diaries, minutes, electronic messages, voice mail, E-mail,

telephone message records or logs, computer and network activity logs, hard drives, backup data,

removable computer storage media such as tapes, discs and cards, printouts, document image

files, Web pages, databases, spreadsheets, software, books, ledgers, journals, orders, invoices,

bills,  vouchers,  checks statements, worksheets, summaries,  compilations, computations, charts,

diagrams, graphic presentations, drawings, films, charts, digital or chemical process photographs, video, phonographic, tape or digital recordings or transcripts thereof, drafts, jottings and notes, studies or drafts of studies or other similar such material. Information that serves to identify, locate, or link such material, such as file inventories, file folders, indices, and metadata, is also included in this definition. Preservation includes the obligation not to alter any such thing as to its form, content or manner of filing. Until the parties reach an agreement on a preservation plan or the Court orders otherwise, each party shall take reasonable steps to preserve all documents, data and tangible things containing information potentially relevant to the subject matter of this litigation. Each counsel is under an obligation to the Court to exercise all reasonable efforts to identify and notify parties and nonparties, including employees of corporate or institutional parties of the contents of this paragraph. Failure to comply may lead to dismissal of claims, striking of defenses, imposition of adverse inferences or other dire consequences.

Before any devices, tangible things, documents, and other records which are reasonably calculated to lead to admissible evidence are destroyed, altered, or erased, counsel shall confer to resolve questions as to whether the information should be preserved. If counsel are unable to agree, any party may apply to this Court for clarification or relief from this Order upon reasonable notice.

15. FILING OF DISCOVERY REQUESTS—In accordance with Rule 5(d) of the Federal Rules of Civil Procedure, discovery requests and responses are not to be filed with the Clerk nor sent to the Judge's Chambers, except when specifically ordered by the Court to the extent needed in connection with a motion.

-8-

16.  LIAISON COUNSEL—<u>Two weeks prior</u> to the initial conference, counsel for the
plaintiffs and counsel for the defendant(s) shall, to the extent they have not already done so,
confer and seek consensus on the selection of a candidate for the position of liaison counsel for
each group who will be charged with essentially administrative matters.  For example, liaison
counsel shall be authorized to receive orders and notices from the Court on behalf of all parties
within their liaison group and shall be responsible for the preparation and transmittal of copies of
such orders and notices to the parties in their liaison group and perform other tasks determined
by the Court.  Liaison counsel shall be required to maintain complete files with copies of all
documents served upon them and shall make such files available to parties within their liaison
group upon request.  Liaison counsel are also authorized to receive orders and notices from the
Judicial Panel on Multi District Litigation pursuant to Rule 5.2(e) of the Panel's *Rules of
Procedure* or from the transferee court on behalf of all parties within their liaison group and shall
be responsible for the preparation and transmittal of copies of such orders and notices to the
parties in their liaison group.  The expenses incurred in performing the services of liaison
counsel shall be shared equally by all members of the liaison group in a manner agreeable to the
parties or set by the Court failing such agreement.  Proposals for the designation of liaison
counsel shall be submitted to the Court no later than one week prior to the date of the initial
conference. Appointment of liaison counsel shall be made by the Court after full consideration of
the proposals.  At the first conference liaison counsel and/or the parties should be prepared to
discuss any additional needs for an organizational structure or any additional matters consistent
with the efficient handling of this matter.

17.  PLAINTIFFS' STEERING COMMITTEE—It is the Court's intent to appoint a

Plaintiffs' Steering Committee ("PSC") to conduct and coordinate the discovery stage of this litigation with the defendant's representatives or committee. Applications/nominations for the PSC positions must be filed with the Eastern District of Louisiana's Clerk's Office either electronically or on paper (original and one copy) on or before July 10, 2009. Notice must also be served upon counsel named in the attached list on the day of filing. The main criteria for membership in the PSC will be: (a) willingness and availability to commit to a time-consuming project; (b) ability to work cooperatively with others; and (c) professional experience in this type of litigation (d) willingness to commit the necessary resources to pursue this matter. Applications/nominations should succinctly address each of the above criteria as well as any other relevant matters. No submissions longer than four (4) pages will be considered. The Court will only consider attorneys who have filed a civil action in this litigation.

Objections may be made to the appointment of a proposed applicant/nominee. Nevertheless, the Court will entertain only written objections to any application/nomination. These must be filed with the Clerk of Court either electronically or on paper (original and one copy) on or before July 17, 2009. The objections, if there be any, must be short, yet thorough, and must be supported by necessary documentation. As with the application/nomination, any objection must be served on all counsel appearing on the attached list on the day of filing.

The PSC will have the following responsibilities:

Discovery

    (1)    Initiate, coordinate, and conduct all pretrial discovery on behalf of plaintiffs in all actions which are consolidated with the instant multi district litigation.

    (2)    Develop and propose to the Court schedules for the commencement,

-10-

execution, and completion of all discovery on behalf of all plaintiffs.

(3)     Cause to be issued in the name of all plaintiffs the necessary discovery requests, motions, and subpoenas pertaining to any witnesses and documents needed to properly prepare for the pretrial discovery of relevant issue found in the pleadings of this litigation. Similar requests, notices, and subpoenas may be caused to be issued by the PSC upon written request by an individual attorney in order to assist him/her in the preparation of the pretrial stages of his/her client's particular claims.

(4)     Conduct all discovery in a coordinated and consolidated manner on behalf and for the benefit of all plaintiffs. No attorney for a plaintiff may be excluded from attending the examination of witnesses and other proceedings. Such attorney may suggest questions to be posed to deponents through the designated PSC members provided that such questions are not repetitious.

Hearings and Meetings

(1)     Call meetings of counsel for plaintiffs for any appropriate purpose, including coordinating responses to questions of other parties or of the Court. Initiate proposals, suggestions, schedules, or joint briefs, and any other appropriate matter(s) pertaining to pretrial proceedings.

(2)     Examine witnesses and introduce evidence at hearings on behalf of plaintiffs.

(3)     Act as spokesperson for all plaintiffs at pretrial proceedings and in response to any inquiries by the Court, subject of course to the right of any

-11-

plaintiff's counsel to present non-repetitive individual or different

positions.

Miscellaneous

(1)     Submit and argue any verbal or written motions presented to the Court or

Magistrate on behalf of the PSC as well as oppose when necessary any

motions submitted by the defendant or other parties which involve matters

within the sphere of the responsibilities of the PSC.

(2)     Negotiate and enter into stipulations with Defendants regarding this

litigation.  All stipulations entered into by the PSC, except for strictly

administrative details such as scheduling, must be submitted for Court

approval and will not be binding until the Court has ratified the

stipulation.  Any attorney not in agreement with a non-administrative

stipulation shall file with the Court a written objection thereto within ten

(10) days after he/she knows or should have reasonably become aware of

the stipulation.  Failure to object within the term allowed shall be deemed

a waiver and the stipulation will automatically be binding on that party.

(3)     Explore, develop, and pursue all settlement options pertaining to any

claim or portion thereof of any case filed in this litigation.

(4)     Maintain adequate files of all pretrial matters and have them available,

under reasonable terms and conditions, for examination by plaintiffs or

their attorneys.

(5)     Prepare periodic status reports summarizing the PSC's work and progress.

These reports shall be submitted to the Plaintiffs' Liaison Counsel who

-12-

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 323 of 647
Case 1:11-cv-22408-MGC Document 47 Entered on FLSD Docket 09/09/2013 Page 271 of
595

will promptly distribute copies to the other plaintiffs' attorneys.

(6)    Perform any task necessary and proper for the PSC to accomplish its responsibilities as defined by the Court's orders.

(7)    Perform such other functions as may be expressly authorized by further orders of this Court.

(8)    Reimbursement for costs and/or fees for services will be set at a time and in a manner established by the Court after due notice to all counsel and after a hearing.

18.   DEFENDANT(S) STEERING COMMITTEE–The Court will consider the recommendations of the defendant(s) for membership on the defendant(s) steering committee. Defendant(s) Steering Committee will have the duties and responsibilities described in Paragraph 17 of this order as it pertains to this respective group.

19. MDL 2047 WEBSITE–A website particular to MDL 2047 has been created and can be accessed by going to this Court's website located at www.laed.uscourts.gov and clicking on the button for Drywall MDL. The MDL 2047 website may also be accessed directly by going to www.laed.uscourts.gov/drywall/drywall.htm . The website will contain forms, court orders, minute entries, a calendar of upcoming events, and other relevant information.

20.   COMMUNICATION WITH THE COURT—Unless otherwise ordered by this Court, all substantive communications with the Court shall be in writing, with copies to opposing counsel. Nevertheless, the Court recognizes that cooperation by and among plaintiffs' counsel

-13-

and by and among defendant's counsel is essential for the orderly and expeditious resolution of this litigation. The communication of information among and between plaintiffs' counsel and among and between defendant's counsel shall not be deemed a waiver of the attorney-client privilege or the protection afforded attorney's work product, and cooperative efforts contemplated above shall in no way be used against any plaintiff by any defendant or against any defendant by any plaintiff. Nothing contained in this provision shall be construed to limit the rights of any party or counsel to assert the attorney-client privilege or attorney work product doctrine.

New Orleans, Louisiana, this 16th Day of June, 2009

ELDON E. FALLON
UNITED STATES DISTRICT JUDGE

Attachments

-14-

IN RE: CHINESE-MANUFACTURED DRYWALL
PRODUCTS LIABILITY LITIGATION                    MDL No. 2047


## SCHEDULE A

|  | EDLA<br>SEC. L/3 |
|---|---|
| **Middle District of Florida** |  |
| Shane M. Allen, et al. v. Knauf Plasterboard (Tianjin) Co., Ltd., et al., C.A. No. 2:09-54 | 09-4112 |
| Duane Ankney v. Knauf Gips KG, et al., C.A. No. 2:09-166 | 09-4113 |
| Kristin Morgan Culliton v. Taylor Morrison Services, Inc., et al., C.A. No. 8:09-589 | 09-4114 |
| **Northern District of Florida** |  |
| The Mitchell Co., Inc. v. Knauf Gips KG, et al., C.A. No. 3:09-89 | 09-4115 |
| **Southern District of Florida** |  |
| Lawrence Riesz, et al. v. Knauf Plasterboard (Tianjin) Co., Ltd., et al., C.A. No. 0:09-60371 | 09-4116 |
| Karin Vickers, et al. v. Knauf Gips KG, et al., C.A. No. 1:09-20510 | 09-4117 |
| Lorena Garcia, et al. v. Lennar Corp., et al., C.A. No. 1:09-20739 | 09-4118 |
| Janet Morris-Chin, et al. v. Knauf Plasterboard (Tianjin) Co., Ltd., et al., C.A. No. 1:09-20796 | 09-4119 |
| **Eastern District of Louisiana** |  |
| Jill M. Donaldson, et al. v. Knauf Gips KG, et al., C.A. No. 2:09-2981 |  |
| **Southern District of Ohio** |  |
| Steven Minafri v. M/I Homes, Inc., et al., C.A. No. 2:09-167 | 09-4120 |

Case 2:09-md-02047-EEF-MBN Document 23397-10 Filed 03/09/18 Page 274 of
Case 1:11-cv-22408-MGC Document 2 Entered on FLSD Docket 03/15/2011 Page 274 of
595
Printed on 06/15/2009

SCHEDULE B

# Judicial Panel on Multidistrict Litigation - Panel Service List
## for
## MDL 2047 - IN RE: Chinese-Manufactured Drywall Products Liability Litigation

### *** Report Key and Title Page ***

Please Note: This report is in alphabetical order by the last name of the attorney. A party may not be represented by more then one attorney. See Panel rule 5.2(c).

**Party Representation Key**
    * Signifies that an appearance was made on behalf of the party by the representing attorney.
    # Specified party was dismissed in some, but not all, of the actions in which it was named as a party.
    All counsel and parties no longer active in this litigation have been suppressed.

**This Report is Based on the Following Data Filters**
    Docket: 2047 - Chinese-Manufactured Drywall PL
    For Open Cases

Case 2:14-cv-02400-MHT-CSC Document 24-1 Filed 08/18/14 Page 275 of 595

Docket:  2047 - IN RE: Chinese-Manufactured Drywall Products Liability Litigation

Status:   Transferred on 06/15/2009

Transferee District:  LAE      Judge:  Fallon, Eldon E.

Printed on 06/15/2009

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| Atlas, Jan Douglas<br>ADORNO & YOSS LLP<br>350 East Las Olas Blvd<br>Suite 1700<br>Fort Lauderdale, FL 33301 | =>**Phone: (954) 766-7823  Fax: (954) 766-7800  Email: jda@adorno.com**<br>Banner Supply Co.* |
| Bass, Hilarie<br>GREENBERG TRAURIG LLP<br>1221 Brickell Avenue<br>Miami, FL 33131 | =>**Phone: (305) 579-0500  Fax: (305) 579-0717  Email: bassh@gtlaw.com**<br>Lennar Corp.*; Lennar Homes, LLC fka Lennar Homes, Inc.*; U.S. Home Corp.* |
| Baumann, Gary F.<br>FULMER LEROY ALBEE BAUMANN & GLASS<br>2866 East Oakland Park Blvd.<br>Ft. Lauderdale, FL 33306 | =>**Phone: (954) 707-4430  Fax: (954) 707-4431  Email: gbaumann@fulmerleroy.com**<br>Independent Builders Supply Association, Inc.* |
| Becnel, Jr, Daniel E.<br>BECNEL LAW FIRM LLC<br>106 West Seventh Street<br>P.O. Drawer H<br>Reserve, LA 70084 | =>**Phone: (985) 536-1186  Fax: (985) 536-6445  Email: dbecnel@becnellaw.com**<br>Donaldson, Jill M.; Oertling, John |
| Boldt, Kimberly L.<br>ALTERS BOLDT BROWN RASH & CULMO PA<br>4141 N.E. 2nd Avenue<br>Suite 201<br>Miami, FL 33137 | =>**Phone: (305) 571-8550  Fax: (305) 571-8558  Email: kimberly@abbrclaw.com**<br>Barrozo, Hector*; DeBarrozo, Maria Ines Pinar*; Garcia, Angela*; Garcia, Lorena* |
| Briscoe, Edward J.<br>FOWLER WHITE BURNETT PA<br>Espirito Santo Plaza<br>1395 Brickell Avenue<br>14th Floor<br>Miami, FL 33131-3302 | =>**Phone: (305) 789-9252  Fax: (305) 789-9251  Email: EJB@Fowler-White.com**<br>Black Bear Gypsum Supply, Inc.* |
| Burge, S. Greg<br>BURR & FORMAN LLP<br>420 North 20th Street<br>Suite 3400<br>Birmingham, AL 35203 | =>**Phone: (205) 458-5101  Fax: (205) 244-5612  Email: gburge@burr.com**<br>Rightway Drywall, Inc.* |
| Casper, Christopher C.<br>JAMES HOYER NEWCOMER & SMILJANICH PA<br>One Urban Centre<br>4830 West Kennedy Boulevard<br>Suite 550<br>Tampa, FL 33609-2589 | =>**Phone: (813) 286-4100  Fax: (813) 286-4174  Email: ccasper@jameshoyer.com**<br>Culliton, Kristin Morgan* |

Note: Please refer to the report title page for complete report scope and key.

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| Cole, Susan J. BICE COLE LAW FIRM 999 Ponce De Leon Boulevard Suite 710 Coral Gables, FL 33134 | => **Phone: (305) 444-1225  Fax: (305) 446-1598  Email: cole@bicecolelaw.com** L&W Supply Corp. dba Seacoast Supply*; USG Corp.* |
| Coutroulis, Chris S. CARLTON FIELDS PA P.O. Box 3239 4221 West Boy Scout Boulevard Suite 1000 Tampa, FL 33601-3239 | => **Phone: (813) 223-7000  Fax: (813) 229-4133  Email: ccoutroulis@carltonfields.com** M/I Homes, Inc.* |
| Diaz, Jr., Victor Manuel PODHURST ORSECK JOSEFSBERG ET AL City National Bank Building Suite 800 25 W. Flagler Street Miami, FL 33130 | => **Phone: (305) 358-2800  Fax: (305) 358-2382  Email: vdiaz@podhurst.com** Green, Dajan*; Morris-Chin, Janet* |
| Gilman, Kenneth G. GILMAN & PASTOR LLP 6363 Highcroft Drive Naples, FL 34119 | => **Phone: (239) 213-9960  Fax: (239) 213-9946  Email: kgilman@gilmanpastor.com** Ankney, Duane |
| Interior Exterior Bldg., 727 S. Cortez New Orleans, LA 70119 | => Interior Exterior Building Supply |
| Knauf Gips KG, Ridham Dock, Kemsley Sittingbourne, Kent ME 9 8SR, UK | => Gebr Knauf Verwaltungsgesellschaft KG; Knauf Gips KG |
| Knauf Plasterboard, North Yinhe Bridge, East Jingjin Road Beichen District Tianjin, China 300400 P.R.C. | => Knauf Plasterboard (Tianjin) Co., Ltd. |
| Knauf Plasterboard, No. 2 Gang Wan Road RC-241009 Whuhu Anhui, China | => Knauf Plasterboard (Dongguan) Co., Ltd.; Knauf Plasterboard (Wuhu) Co., Ltd. |
| Knauf Plasterboard, No. 2 Xinsha Development Zone RC-52347 Guangdong, China | => Knauf Plasterboard (Dongguan) Co., Ltd. |
| La Suprema Enterprise, 221 NE 164th Street North Miami Beach, FL 33160 | => La Suprema Enterprise, Inc. |

---

Note: Please refer to the report title page for complete report scope and key.

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| La Suprema Trading, Inc.,<br>221 NE 164th Street<br>N. Miam Beach, FL 33160 | =><br>La Suprema Trading, Inc. |
| Landskroner, Jack<br>LANDSKRONER GRIECO MADDEN LTD<br>1360 West 9th Street<br>Suite 200<br>Cleveland, OH 44113 | =>**Phone: (216) 522-9000  Fax: (216) 522-9007**<br>Minafri, Steven |
| Levin, Arnold<br>LEVIN FISHBEIN SEDRAN & BERMAN<br>510 Walnut Street<br>Suite 500<br>Philadelphia, PA 19106-3697 | =>**Phone: (215) 592-1500  Fax: (215) 592-4663  Email: alevin@lfsblaw.com**<br>Martinez, Felix*; Martinez, Jenny*; Niemczura, Walter*; Raphael, Gene*; Santiago, Jason*; Tarzy,<br>Jim*; Vickers, Karin* |
| Loredo, Raul Ricardo<br>MINTZER SOROWITZ & ZERIS<br>255 Alhambra Circle<br>Suite 1150<br>Coral Gables, FL 33134 | =>**Phone: (304) 774-9966  Fax: (305) 774-7743  Email: rloredo@defensecounsel.com**<br>Interior Exterior Building Supply, LP* |
| Nicholas, Steven L.<br>CUNNINGHAM BOUNDS LLC<br>1601 Dauphin Street<br>P.O. Box 66705<br>Mobile, AL 36660 | =>**Phone: (251) 471-6191  Fax: (251) 479-1031  Email: sln@cunninghambounds.com**<br>Mitchell Co., Inc. (The)* |
| Reise, Jack<br>COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP<br>120 East Palmetto Park Road<br>Suite 500<br>Boca Raton, FL 33432 | =>**Phone: (561) 750-3000  Fax: (561) 750-3364  Email: jreise@csgrr.com**<br>Riesz, Lawrence*; Schnee, Jennifer* |
| Rothchilt International,<br>N-510 Chia Hsn Bld.<br>Annex 96 Chung Shan N. Rd. Sec. 2<br>Taipei, Taiwan R.O.C. | =><br>Rothchilt International Ltd. |
| Sivyer, Neal A.<br>SIVYER BARLOW & WATSON PA<br>401 East Jackson Street<br>Suite 2225<br>Tampa, FL 33602 | =>**Phone: (813) 221-4242  Fax: (813) 227-3598**<br>Taylor Morrison Services, Inc. dba Morrison Homes; Taylor Woodrow Communities at Vasari,<br>LLC* |
| South Kendall Constructio,<br>2368 SE 17th Ter.<br>Homestead, FL 33035 | =><br>South Kendall Construction Corp. |
| Steckler, Bruce<br>BARON & BUDD<br>3102 Oak Lawn Ave, Ste 1100 | =>**Phone: (214) 521-3605  Fax: (214) 520-1181  Email: bsteckler@baronbudd.com**<br>Foster, Katherine L.* |

Note: Please refer to the report title page for complete report scope and key.

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| Dallas, TX 75219-4281 | |
| | |
| Taishan Gypsum Co., Ltd., | => |
| Dawenkou, Taian | Taishan Gypsum Co., Ltd. fka Shandong Taihe Dongxin Co., Ltd. |
| Shandong, China 271026 | |
| | |
| Weinstein, Scott Wm. | **=>Phone: (239) 433-6880  Fax: (239) 433-6836  Email: sweinstein@forthepeople.com** |
| MORGAN & MORGAN PA | Allen, Nicole J.*; Allen, Shane M.* |
| 12800 University Drive | |
| Suite 600 | |
| Fort Myers, FL 33907-5337 | |

Note: Please refer to the report title page for complete report scope and key.

# Tab #40

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL | ) | MDL No. 2047 |
| PRODUCTS LIABILITY LITIGATION | ) | |
| | ) | SECTION: L |
| | ) | |
| | ) | JUDGE FALLON |
| | ) | MAG. JUDGE WILKINSON |
| | ) | |

**THIS DOCUMENT RELATES TO ALL CASES**

## <u>PRE-TRIAL ORDER NO. 1(B)</u>
### (Preservation of Physical Evidence)

Pursuant to the Court's duty to supervise pretrial proceedings in this case, including discovery, and pursuant to the Court's inherent power, the Court hereby modifies Paragraph 14 of Pretrial Order No. 1 to address the Court's expectations, from this date forward, with respect to the preservation of physical evidence from properties that may be repaired by the parties during the course of this litigation. Those persons or entities who do not undertake to repair their properties are, by definition, preserving the physical evidence, so long as the drywall and any building components and contents that are believed to be affected by the allegedly defective drywall remain intact. This Order addresses preservation requirements for those persons or entities who (1) were transferred to this Court by the Judicial Panel on Multidistrict Litigation, pursuant to its Order of June 15, 2009; (2) any tag-along actions subsequently transferred to this Court by the Judicial Panel on Multidistrict Litigation pursuant to Rule 7.4 of the Rules of Procedure of that Panel; (3) all related cases originally filed in this Court or transferred or removed to this Court; (4) those persons or entities who intend to or may seek recovery relating to Chinese-manufactured drywall, including putative members of any class actions; and (5) any subsidiaries and affiliates of all defendants in any

such actions.

In summary, from this date forward, all persons or entities who have or who intend to pursue a claim relating to allegedly defective Chinese-manufactured drywall and their agents, subsidiaries and affiliates shall preserve the following physical evidence at their own expense, subject to further order by the Court. Notwithstanding the foregoing, the Court reiterates that Paragraph 14 of Pre-Trial Order No. 1 remained in full force and effect up until this modification.

A.  Preservation of Physical Evidence:

1.  ***Drywall*** -- The Parties shall maintain at least two samples (of ten inches by ten inches (10" x 10") in size if possible) of every different drywall brand or marking removed from an affected property, including taking samples of unmarked drywall. If there are any markings on the sample, the samples should include as much of the identifiable marking as possible. In addition, the parties also shall preserve at least one sample of each type of drywall endtape, if any, that is found during inspection, repair or removal of drywall in or from a property. These drywall and endtape samples shall be labeled with the date of collection, the room location and the specific wall that the sample was taken from. These drywall and endtape samples shall be stored separately in double-bagged polyethylene zip-lock bags or equivalents, and not grouped together. Any drywall or endtape sample to be preserved under this paragraph shall be stored in reasonable climate controlled conditions and free of water or moisture. All samples should be clearly labeled on the outside of the plastic bag or equivalent, and then placed inside a second plastic bag or equivalent. The label shall include the name and address of the property from which the sample was taken, the date sampled, a sampler identification which identifies the type of item (e.g. drywall, copper wire, etc.), and where the item was taken from in the property.

In addition to taking these samples, the Parties shall photograph the backside of each Chinese drywall board immediately after it is removed on-site, and, document on a floor plan, building diagram, or other similar form of documentation, the location of each full or partial Chinese drywall board removed from the property and its photograph.  Photographs of the wall sections should be taken so that any markings on the backside of the drywall sections are most clearly visible in the photographs.

2.      *HVAC coil material samples* --  Before removing any HVAC coils or attachments, the Parties shall identify the location of each HVAC system on a floor plan, building diagram, or other similar form of documentation, and photograph the HVAC coil and all affected attachments while the HVAC coil and other attachments remain intact. For each HVAC coil removed from the property, the Parties shall either: (a) preserve the entire removed HVAC coil,  or (b) select and label: (i) at least eight representative copper U-bends (four from each side); and (ii) at least eight sections (at least six to ten inches long) of refrigerant line or other straight copper tubing associated with the coil or thermostatic expansion valve (TXV) for each HVAC system that is removed from the property.  In the event that there are HVAC systems that are not removed or repaired,  they should be also identified on the floor plan, building diagram, or other similar form of documentation.  An appropriately trained HVAC technician should then cut off the labeled segments with a pipe cutter or saw.  The serial number, make, and model of each affected HVAC coil shall be recorded and photographed.

All samples of copper U-bends, refrigerant line, and tubing (but not the HVAC coil with refrigerant line attached, if preserved) shall be placed separately in double-bagged zip-lock bags, and not grouped together.  These samples must be allowed to dry, whether wet

from condensation or refrigerant, before the zip-lock bag is sealed and stored. Any HVAC coil or sample to be preserved under this paragraph shall be stored in reasonable climate controlled conditions. All such samples should be clearly labeled on the outside of the plastic bag or equivalent, and then placed inside a second plastic bag or equivalent. The label shall include the name and address of the property from which the sample was taken, the date sampled, a sampler identification which identifies the type of item (drywall, copper wire, etc.), and where the item was taken from in the property.

3.      ***Plumbing component samples*** – The parties shall photograph all of the allegedly affected plumbing fixtures removed from the property, while they are still in place before removal and identify their location on a floor plan, building diagram, or other similar form of documentation. If multiple allegedly affected bathroom or kitchen plumbing fixtures are removed from the property, the Parties shall preserve one complete allegedly affected fixture. In addition, if allegedly affected copper connecting segments to fixtures ("stubouts") are removed, the Parties shall preserve at least one segment (at least four (4) inches long) of such copper stubouts. To the extent that such items are removed, the Parties shall also preserve at least one allegedly affected brass shower valve and a section of any allegedly affected copper riser pipe (at least eight (8) inches long) from between the shower valves and shower head in a bathroom. The Parties shall photograph each sample before cutting or removing the sample from the corresponding location or fixture. An appropriately trained person should cut off, where necessary, each sample with a pipe cutter or saw, and protect all sharp edges with tape or by other appropriate means. These samples should be stored separately in double-bagged polyethylene zip-lock bags or equivalents (if possible due to the size of the sample taken), and not grouped together. These samples must be allowed to dry

Case 2:09-md-02047-EEF-MBN Document 22397-12 Filed 12/09/19 Page 336 of 647
Case 1:11-cv-22408-MGC Document 247-1 Entered on FLSD Docket 08/09/13 Page 9 of Page 284 of
595

before the zip-lock bag, if any, is sealed and stored. Any fixture or sample to be preserved under this paragraph shall be stored in reasonable climate controlled conditions. All samples should be clearly labeled on the outside of the plastic bag or equivalent and then placed inside a second plastic bag or equivalent. The label shall include the name and address of the property from which the sample was taken, the date sampled, a sampler identification which identifies the type of item (drywall, copper wire, etc.), and where the item was taken from in the property.

4. ***Electrical component samples*** -- The Parties shall preserve at least three affected electrical receptacles and three affected switches, if available, from a wall or walls with allegedly defective Chinese-manufactured drywall. The samples do not need to be taken from a single wall. Similarly, the Parties shall preserve at least three affected receptacles and three affected switches, if available, from a wall or walls with non-Chinese manufactured drywall. These samples likewise do not need to be taken from a single wall but should be representative of the types of receptacles and switches found in the property.

Additionally, if smoke detectors, carbon monoxide detectors, intruder alarm devices or any similar life safety devices are present, the Parties shall collect at least two of each type of device from each floor, if available. The Parties shall photograph these selected samples prior to their removal and identify the location of all samples and photographs on a floor plan, building diagram, or other similar form of documentation. An appropriately trained person should cut the electrical wires connecting the receptacles, switches and other electrical fixtures, so that at least two (2) inches of each wire remain connected to the device. For smoke detectors and similar devices, the electrician should cut the wires above any plug or similar connector. If other less common devices with copper wire connections are found,

the Parties should preserve representative samples as described in this subparagraph 4.

These samples should be stored in zip-lock bags. Samples shall not be stored in wet conditions. If wet from condensation, the sample must be allowed to dry before the zip-lock bag is sealed and stored. Any sample devices and wiring to be preserved under this paragraph shall be stored in reasonable climate controlled conditions. All samples should be clearly labeled on the outside of the plastic bag or equivalent and then placed inside a second plastic bag or equivalent. The label shall include the name and address of the property from which the sample was taken, the date sampled, a sampler identification which identifies the type of item (drywall, copper wire, etc.), and where the item was taken from in the property.

5. ***Photograph or video affected items:*** To the extent that a party intends to seek a recovery for building components or contents not described herein allegedly affected by defective Chinese manufactured drywall, such claimed other building components shall be documented by photograph or video and reasonable sampling consistent with this Order. Unless otherwise agreed by all parties in advance of the repair or removal, to the extent that a Party is contending that an appliance has been damaged or affected by defective Chinese drywall and seeks to recover damages for same, then that party shall preserve representative samples of that portion of the appliance exhibiting those effects (e.g., blackened coils in a refrigerator). This paragraph is not related to incidental damages, such as damage to cabinetry, countertops, wood trim, or other materials that must be replaced in order to access or remove the allegedly defective Chinese-manufactured drywall or are necessarily damaged through the repairs to the property. All samples should be clearly labeled on the outside of the plastic bag or equivalent and then placed inside a second plastic bag or equivalent. The

label shall include the name and address of the property from which the sample was taken, the date sampled, a sampler identification which identifies the type of item (drywall, copper wire, etc.), and where the item was taken from in the property.

B.     Property owners and renters shall preserve, at their own expense, any and all personal property items that they claim to be affected by the allegedly defective Chinese-manufactured drywall for which they intend to pursue recovery.

C.     This duty to preserve only applies to those persons or entities that intend to seek recovery for damages in connection with repairs to properties that contain allegedly defective Chinese-manufactured drywall, or recovery for damages to personal property contained in such a property, or personal injury from allegedly defective Chinese-manufactured drywall.

D.     This Order pertains only to preservation of physical evidence in properties being repaired, and it replaces the provisions of Paragraph 14 of Pretrial Order #1 that pertain to physical evidence other than documents.  The Court may enter a separate order that pertains to documents, which may similarly replace the provisions of Paragraph 14 of Pretrial Order #1 that pertain to documents.

E.     Nothing in this Order shall be construed to affect the discoverability or admissibility of evidence.  All objections to discoverability, admissibility or sufficiency of evidence are maintained and may be asserted at any time.

F.     Evidence or material not preserved in compliance with this Pre-Trial Order may be subject to exclusion for use in either discovery or trial of the matter and further, the party responsible for failing to preserve evidence may be subject to the claim or defense of spoliation.

G.     This Order may be subject to future modification when and if a remediation protocol is developed in this litigation.

New Orleans, Louisiana, this 9th day of October, 2009.

ELDON E. FALLON
UNITED STATES DISTRICT JUDGE

# Tab #41

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL | ) | MDL No. 2047 |
| PRODUCTS LIABILITY LITIGATION | ) | |
| | ) | SECTION: L |
| | ) | |
| **THIS DOCUMENT RELATES TO ALL CASES** | ) | JUDGE FALLON |
| | ) | MAG. JUDGE WILKINSON |
| | ) | |

## PRE-TRIAL ORDER NO. 1(I)
### (Preservation of Physical Evidence)

Pursuant to the Court's inherent power and duty to supervise pretrial proceedings in this case,

and in light of the Court's findings of fact and conclusions of law in *Hernandez v. Knauf Gips KG, et*

*al.*, Case No. 2:09-cv-06050-EEF-JCW (E.D. La.) and *Germano, et al. v. Taishan Gypsum Co. Ltd.,*

*et al.*, Case No. 2:09-cv-06687-EEF-JCW (E.D. La.), which included the Court's promulgation of

an appropriate repair protocol and determination of the evidence sufficient to establish a claim for

damages in connection with defective Chinese-manufactured drywall, the Court hereby modifies

Pre-Trial Order No. 1(B) to address the Court's expectations, from this date forward, with respect to

the preservation of physical evidence from properties with defective Chinese-manufactured

drywall that have been or may be repaired by certain homebuilders or homeowners, including

without limitation those homeowners who have repaired and subsequently lost possession of

affected properties via foreclosure, sale, short sale, a deed in lieu of foreclosure or any other

manner (the "Preserving Parties"). This Order does not apply to homeowners who did not repair

their affected properties prior to losing possession via foreclosure, sale, short sale, a deed in lieu

of foreclosure or any other manner.

This Order addresses preservation requirements for Preserving Parties, within the jurisdiction of the Court, that intend to seek recovery for damages in connection with properties that contain defective Chinese-manufactured drywall and are parties to: (1) cases that were transferred to this Court by the Judicial Panel on Multidistrict Litigation, pursuant to its Order of June 15, 2009; (2) any tag-along actions subsequently transferred to this Court by the Judicial Panel on Multidistrict Litigation pursuant to Rule 7.4 of the Rules of Procedure of that Panel; or (3) related cases originally filed in this Court or transferred or removed to this Court.

With respect to these Preserving Parties only, this Pre-Trial Order No. 1(I) supersedes and replaces the requirements of Pre-Trial Order No. 1(B). Specifically, the Preserving Parties that preserved physical evidence pursuant to the requirements of Pre-Trial Order No. 1(B) prior to the date of this Order are permitted to dispose of all physical evidence that they would not be required to preserve under this Order (subject to the procedures outlined in section C, below).

Notwithstanding the foregoing, the Court reiterates that Pre-Trial Order No. 1(B) remains in full force and effect with respect to all other parties to whom that order applied, aside from the aforementioned Preserving Parties. From this date forward, the Preserving Parties shall be subject to the following requirements for the preservation of physical evidence in connection with their pursuit of a claim relating to allegedly defective Chinese-manufactured drywall.

A.    <u>Preservation of Physical Evidence</u>:

1.    ***Drywall*** -- The Preserving Parties shall maintain at least two samples (of ten inches by ten inches (10" x 10") in size if possible) of every different drywall brand or marking removed from an affected property, including taking samples of unmarked drywall. If there are any markings on the sample, the samples should include as much of the identifiable marking as possible. In addition, the Preserving Parties shall preserve at

2

least one sample of each type of drywall endtape, if any, that is found during inspection, repair or removal of drywall in or from an affected property. These drywall and endtape samples shall be labeled with the date of collection, the room location and the specific wall that the sample was taken from. These drywall and endtape samples shall be stored separately in double-bagged polyethylene zip-lock bags or equivalents, and not grouped together. Any drywall or endtape sample to be preserved under this paragraph shall be stored in reasonable climate controlled conditions and free of water or moisture. All samples should be clearly labeled on the outside of the plastic bag or equivalent, and then placed inside a second plastic bag or equivalent. The label shall include the name and address of the property from which the sample was taken, the date sampled, a sampler identification which identifies the type of item (e.g. drywall), and where the item was taken from in the property.

In addition to taking these samples, the Preserving Parties shall photograph the backside of each Chinese-manufactured drywall board from the property immediately after it is removed on-site, and, document on a floor plan, building diagram, or other similar form of documentation, the location of each full or partial Chinese-manufactured drywall board and its corresponding photograph. Photographs of these wall sections should be taken so that any markings on the backside of the drywall sections are most clearly visible in the photographs.

2.      ***HVAC coil material samples*** -- The Preserving Parties shall photograph the HVAC coil for each HVAC system.

3

Case 2:09-md-02047-EEF-MBN Document 23397-16 Filed 03/09/21 Page 344 of 647
Case 2:09-md-02047-EEF-MBN Document 22457 Filed 12/14/21 Page 292 of
595

3.     ***Plumbing component samples*** – The Preserving Parties shall photograph at least one allegedly affected plumbing fixture or component, while it is still in place.

4.     ***Electrical component samples*** -- The Preserving Parties shall photograph at least three affected electrical receptacles or switches. These selected receptacles and switches do not need to be from a single wall but should be representative of the types of receptacles and switches found in the property. Additionally, if smoke detectors, carbon monoxide detectors, intruder alarm devices or any similar life safety devices are present, the Preserving Parties shall photograph at least one of each type of device.

5.     ***Other Building Materials and Components, and Certain Appliances*** -- To the extent Preserving Parties intend to seek recovery for building materials or components not described herein allegedly damaged or affected by defective Chinese-manufactured drywall, the Preserving Party shall photograph or video any such materials or components. Additionally, to the extent Preserving Parties intend to seek recovery for refrigerators, freezers, wine coolers, ice machines, microwaves, cook tops, ovens, washing machines and clothes dryers or fixed appliances allegedly damaged or affected by defective Chinese-manufactured drywall, the Preserving Party shall photograph or take video of representative samples of that portion of the appliance exhibiting those damages or effects (e.g., blackened coils in a refrigerator). This paragraph is not related to incidental damages, such as damage to cabinetry, countertops, wood trim, or other materials or components that have been or will be replaced in order to access or remove the allegedly

4

1082466v1

defective Chinese-manufactured drywall or are necessarily damaged through the repairs to the property.

B.     The Preserving Parties shall preserve, at their own expense, any and all personal property items that they claim to be affected by the allegedly defective Chinese-manufactured drywall for which they intend to pursue recovery, unless approved otherwise by the Court.

C.     The Preserving Parties that preserved physical evidence pursuant to the requirements of Pre-Trial Order No. 1(B) prior to the date of this Order are permitted to dispose of all physical evidence that they would not be required to preserve under this Order, after providing at least thirty days' written notice (as set forth below) of their intention to dispose of such physical evidence to the parties against whom it is seeking or may seek recovery against relating to Chinese-manufactured drywall.  The written notice must allow those parties to whom notice was provided an opportunity to inspect the physical evidence upon reasonable notice. For purposes of complying with this written notice requirement, the Preserving Parties shall file with the Court a Notice of Disposal of Physical Evidence in the form attached to this Order, and serve the Notice of Disposal of Physical Evidence to the parties in this MDL through LexisNexis File & Serve in the master case number 2:09-md-02047-EEF-JCW and also additionally provide a copy of the Notice of Disposal of Physical Evidence to Plaintiffs' Liaison Counsel, Russ M. Herman, either electronically to drywall@hhkc.com, or in hard copy to, Russ M. Herman, Plaintiffs' Liaison Counsel, Herman, Herman, Katz & Cotlar, L.L.P., 820 O'Keefe Avenue, New Orleans, LA   70113; to Defendants' Liaison Counsel, Kerry Miller, either electronically to kmiller@frilot.com, or in hard copy to Kerry J. Miller, Defendants' Liaison Counsel, Frilot, L.L.C., 1100 Poydras Street, Suite 3700, New Orleans, LA   70163; to Homebuilders'    Liaison    Counsel,    Dorothy    Wimberly,    either    electronically    to

dwimberly@stonepigman.com, or in hard copy to Dorothy Wimberly, Homebuilders' Liaison Counsel, Stone Pigman Walther Wittmann L.L.C., 546 Carondelet Street, New Orleans, LA 70130; and to Insurance Liaison Counsel, Judy Y. Barrasso, either electronically to cdwinsurance@barrassousdin.com, or in hard copy to Judy Y. Barrasso, Insurance Liaison Counsel, Barrasso Usdin Kupperman Freeman & Sarver, LLC, 909 Poydras Street, 24th Floor, New Orleans, LA 70112, (504) 589-9700 and fax (504) 589-9701. Upon the expiration of the thirty-day period, the Preserving Parties may dispose of such physical evidence and will not be subject to a claim or defense of spoliation with respect to its disposal of such physical evidence.

D.    This duty to preserve only applies to those Preserving Parties that intend to seek recovery for damages in connection with repairs to properties that contain allegedly defectively Chinese-manufactured drywall, or recovery for damages to personal property contained in such a property, or personal injury from allegedly defective Chinese-manufactured drywall.

E.    Consistent with Pre-Trial Order No. 1(B), this Order pertains only to preservation of physical evidence in properties with allegedly defective Chinese-manufactured drywall that have been or will be repaired, and it replaces the provisions of Paragraph 14 of Pre-Trial Order No. 1 pertaining to physical evidence other than documents. This Order does not apply to preservation of documents, which is set forth in Paragraph 14 of Pre-Trial Order No. 1, which remains in full force and effect. Furthermore, the Court may enter a separate Order regarding the obligation to preserve evidence for claims relating to foreclosed properties and short sales; however, until such time, Pre-Trial Orders Nos. 1 and 1(B) shall remain in full force and effect.

F.    Nothing in this Order shall be construed to affect the discoverability or admissibility of evidence. All objections to discoverability or admissibility of evidence are maintained and may be asserted at any time.

1082466v1

G.      Evidence or materials not preserved in compliance with this Pre-Trial Order may be

subject to exclusion for use in either discovery or trial of the matter and further, the party responsible

for failing to preserve evidence may be subject to the claim or defense of spoliation.

H.      This Order may be subject to future modification.


**NEW ORLEANS, LOUISIANA**, this _24th_ day of _____January_____, 2012.


                              _____
                              **ELDON E. FALLON**
                              **UNITED STATES DISTRICT JUDGE**

7

Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 348 of 647
Case 2:09-md-02047-EEF-MBN Document 22467-1 Filed 01/15/20 Page 296 of
595

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL | ) | MDL No. 2047 |
| PRODUCTS LIABILITY LITIGATION | ) | |
| | ) | SECTION: L |
| | ) | |
| **THIS DOCUMENT RELATES TO ALL CASES** | ) | JUDGE FALLON |
| | ) | MAG. JUDGE WILKINSON |
| | ) | |

<u>NOTICE OF DISPOSAL OF PHYSICAL EVIDENCE BY [INSERT PARTY NAME]</u>

Subject to the requirements of Pretrial Order No. 1(I), dated January __, 2012,

[Homebuilder] hereby gives notice of its intention to dispose of the physical evidence that

[Homebuilder] was previously preserving pursuant to the requirements of Pretrial Order No. 1B.

Any person or entity wishing to inspect this physical evidence must do so within thirty (30) days

of the date of this notice upon reasonable notice to [INSERT PARTY NAME] by contacting:

_____ by telephone at: (###) ###-

#### or by e-mail at _____@_____.com.  Upon the expiration of the thirty-day period,

[INSERT PARTY NAME] may dispose of such physical evidence.

Dated: _____, 2012                    Respectfully submitted,

                                       [INSERT SIGNATURE BLOCK OF COUNSEL]

1082467v1

# Tab #42

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) | MDL No. 2047 SECTION: L |
| This Document Relates to ALL CASES | ) ) | Judge Fallon Mag. Judge Wilkinson |

## PRE-TRIAL ORDER NO. 1(J)
### (Preservation and Disposal of Physical Evidence)

Pursuant to the Court's inherent power and duty to supervise pretrial proceedings in this case, and in light of the Court's final approval of multiple "Class Action Settlements"[1] and the recent partial payment of claims submitted in connection with one or more of those Class Action Settlements, the Court hereby modifies Pre-Trial Order ("PTO") No. 1(I) to relieve certain parties from their obligation to continue preserving physical evidence and to clarify those parties' right to dispose of physical evidence in and/or from certain properties that have or had defective Chinese-manufactured drywall ("Affected Properties").

PTO 1(I), as well as PTO 1 and PTO 1(B) before it, set forth the preservation requirements for those property owners and homebuilders that were seeking recovery of damages associated with the Affected Properties they own(ed) and/or repaired. In light of the Class Action Settlements, which resolved the vast majority of claims arising out of or related in any way to Chinese-manufactured drywall found in Affected Properties against the settling parties

---

[1] "Class Action Settlements" means all settlements listed on the "Settlements" page of this Court's website, http://www.laed.uscourts.gov/Drywall/Settlements.htm, including but not limited to: (1) the Builder, Installer, Supplier & Insurer Settlement, (2) the Banner Settlement, (3) the Interior Exterior Settlement, (4) the L&W Settlement, (5) the Knauf Settlement; and (6) the Virginia Settlements.

(except only those claims (i) belonging to those persons or entities that specifically opted out of the Class Action Settlements; or (ii) not included in the Knauf Settlement), the Court finds it appropriate to reduce, if not entirely eliminate, the burden placed on certain parties to preserve physical evidence from Affected Properties, as set forth below.

1.      This PTO 1(J) modifies the requirements to preserve physical evidence set forth in Paragraphs A and B of PTO 1(I), but does not supersede PTO 1(I) in any other respect.

2.      Except as provided in Paragraph 3 and 4 below, all property owners and homebuilders that no longer intend to pursue recovery for damages associated with defective Chinese-manufactured drywall in an Affected Property outside of the Class Action Settlements are hereby permitted to dispose of all remaining physical evidence in and/or from that Affected Property.

3.      Property owners and homebuilders must continue to preserve physical evidence in and/or from an Affected Property in accordance with Paragraphs A and B of PTO 1(I) only if they: (i) intend to pursue recovery for that Affected Property or remain  a party to a lawsuit for damages associated with defective Chinese-manufactured drywall in that Affected Property outside of the Class Action Settlements (including, without limitation, if they opted out of one or more of the Class Action Settlements); or (ii) have submitted a claim in one or more of the Class Action Settlements that has yet to be deemed eligible, but only until all appeals set forth in Claims Administration Procedure ("CAP") No. 2013-5 have been exhausted.   Preservation requirements under this paragraph are as follows:

(a) **Defective Drywall in Affected Property is All KPT Chinese Drywall.**[2]  If a property owner or homebuilder has claims associated with an Affected Property in which all of the defective drywall was KPT Chinese Drywall , and that property owner or homebuilder has not yet resolved all of their claims relating to that Affected Property against the Knauf Defendants or other parties in the supply chain of the defective drywall (*e.g.,* manufacturers, suppliers, distributors, installers, and homebuilders) (collectively, "Supply Chain Parties"; individually, "Supply Chain Party"), that property owner or homebuilder shall continue to preserve all physical evidence in accordance with PTO 1(I).

(b) **Defective Drywall in Affected Property is "Mixed".**[3]  If a property owner or homebuilder has claims associated with an Affected Property in which the defective drywall was Mixed, and they have not yet resolved all of their claims relating to that Affected Property against the Knauf Defendants or other Supply Chain Parties, that property owner or homebuilder shall continue to preserve physical evidence in accordance with PTO 1(I).  If a property owner or homebuilder has claims associated with an Affected Property in which the defective drywall is Mixed, and they have resolved all of their

---

[2] "KPT Chinese Drywall" shall mean any and all drywall products manufactured, sold, marketed, distributed, and/or supplied by Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT") and which are alleged to be defective.   "KPT Chinese Drywall" shall not include drywall products, manufactured, sold, marketed, distributed, and /or supplied by any Knauf Defendant other than KPT.

[3]   Defective drywall in the Affected Property is "Mixed" if it contains some KPT Chinese Drywall **and** some defective drywall manufactured by another Chinese manufacturer of drywall other than KPT, including, without limitation, Taishan Gypsum Co., Ltd. and its related entities.

claims relating to the KPT Chinese Drywall (leaving unresolved claims relating to Non-KPT Chinese Drywall,[4] that property owner or homebuilder shall continue to preserve physical evidence in accordance with PTO 1(I); provided, however, the property owner or homebuilder may dispose of all samples of the KPT Chinese Drywall, and the endtape from that KPT Chinese Drywall, so long as the property owner or homebuilder continues to preserve all photographic and other documentary evidence of the Chinese-manufactured drywall in the Affected Property as required by Paragraph A.1. of PTO 1(I).

(c) **Defective Drywall in Affected Property is All Non-KPT Chinese Drywall.** If a property owner or homebuilder has an Affected Property in which all of the defective drywall was Non-KPT Chinese Drywall, that property owner or homebuilder shall continue to preserve all physical evidence in accordance with PTO 1(I).

4.    Notwithstanding the obligation to preserve evidence set forth in Paragraph 3(i) above, property owners or homebuilders may dispose of all remaining physical evidence from that Affected Property upon the entry of a dismissal or final judgment in all lawsuits or other proceedings involving that Affected Property.

---

[4] "Non-KPT Chinese Drywall" shall mean any and all reactive drywall products manufactured, sold, marketed, distributed, and/or supplied by a Chinese manufacturer other than KPT, including but not limited to, Taishan Gypsum Co., Ltd. f/k/a Shandong Taihe Dongxin Co., Ltd.; Taian Taishan Plasterboard, Ltd.; Pingyi Zhongxin Paper-Faced Plasterboard Co., Ltd. f/k/a Shandong Chenxiang Building Materials Co., Ltd.; Crescent City Gypsum, Inc.; Beijing New Building Materials Public Ltd. Co., and China National Building Material Co., Ltd., and China National Building Material Group Corporation.

5.    In addition, in the event a property owner opted out an Affected Property from one or more of the Class Action Settlements ("Opt-Out Property"), all Supply Chain Parties associated with that Opt-Out Property shall continue to preserve any physical evidence they removed from that Opt-Out Property in accordance with this Court's prior evidence preservation orders; provided, however, that a Supply Chain Party may dispose of this physical evidence if the Opt-Out Property in question is not the subject of a pending lawsuit or arbitration proceeding against that Supply Chain Party, so long as the Supply Chain Party provides the owner of the Opt-Out Property (through their counsel, if known; otherwise, directly to the owner), together with all other known Supply Chain Parties (through their counsel, if known; otherwise, directly to the Supply Chain Parties) for that Opt-Out Property, at least thirty days' written notice (as set forth below) of their intention to dispose of such physical evidence.  The written notice must allow: (i) the owner of and all known Supply Chain Parties for that Opt-Out Property an opportunity to inspect the physical evidence upon reasonable notice; and (ii) the owner of that Opt-Out Property the opportunity to take possession of the physical evidence at the owner's expense.  For purposes of complying with this written notice requirement, the Supply Chain Party desiring to dispose of physical evidence removed from an Opt-Out Property shall serve the property owner and all other known Supply Chain Parties with a Notice of Disposal of Physical Evidence in the form attached to this Order, and serve the Notice of Disposal of Physical Evidence to the parties in this MDL through File & Serve in the master case number 2:09-md-02047-EEF-JCW.

6.    Disposal of any and all physical evidence by a property owner, homebuilder or other Supply Chain Party in accordance with this Order shall not subject that property owner,

homebuilder or other Supply Chain Party to a claim or defense of spoliation with respect to its disposal of such physical evidence.

NEW ORLEANS, LOUISIANA, this 20 day of March, 2015.

**ELDON E. FALLON**
**UNITED STATES DISTRICT JUDGE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE-MANUFACTURED DRYWALL          )          MDL No. 2047
PRODUCTS LIABILITY LITIGATION                )
                                             )          SECTION: L
                                             )
**THIS DOCUMENT RELATES TO ALL CASES**       )          JUDGE FALLON
                                             )          MAG. JUDGE WILKINSON
                                             )

## NOTICE OF DISPOSAL OF PHYSICAL EVIDENCE BY [INSERT PARTY NAME]

Subject to the requirements of Pretrial Order No. 1(J), dated March __,
2015, [INSERT PARTY NAME] hereby gives notice of its intention to dispose of
the physical evidence that [INSERT PARTY NAME] was previously preserving from
the following property or properties:


[INSERT PROPERTY ADDRESS(ES)]


Any person or entity wishing to inspect this physical evidence or, in the case
of the owner of the property, take possession of this physical evidence at
their own expense, must do so within thirty (30) days of the date of this
notice upon reasonable notice to [INSERT PARTY NAME] by contacting:
_____ by telephone at: (###)
###- #### or by e-mail at _____@_____.com. Upon the expiration of the
thirty-day period, [INSERT PARTY NAME] may dispose of such physical evidence.

Dated: _____, 2015

                                          Respectfully submitted,
                                          [INSERT SIGNATURE BLOCK OF COUNSEL]

# Tab #43

**Appendix 1**
**to the Parties' Joint Submission to Special Master**
**Regarding Product Identification Discovery and Adjudication**

|  | Product ID Category | Exemplar Markings Numbers from Taishan Product ID Catalog[1] | Plaintiffs' Position | Taishan's Position | BNBM's Position |
|---|---|---|---|---|---|
| A. | BNBM/Dragon board | 22, 23, 24, 25, 26 | Allege that products with these type of markings were manufactured by BNBM | Deny that products with these type of markings were manufactured by Taishan | Subject to sufficient claimant-specific proof of Product ID, including but not limited to location and dimensions of markings, font type and color, and other physical and visual characteristics of drywall boards, do not deny that products with this type of markings were manufactured by BNBM |
| B. | C & K | 34, 35, 36 | Allege that products with these type of markings were manufactured by Taishan | Deny that products with these type of markings were manufactured by Taishan | Deny that products with this type of markings were manufactured by BNBM |

[1] The Taishan Product ID Catalog was prepared by Plaintiffs based on a review of Product ID documentation submitted by *Amorin* claimants in multiple states. A copy is attached hereto as Appendix 2. The numbers in this column correspond to numbers printed on each page of exemplar markings in the Taishan Product ID Catalog.

| | | | Allege that products with these type of markings were manufactured by BNBM | Deny that products with these type of markings were manufactured by Taishan | Deny that products with this type of markings were manufactured by BNBM |
|---|---|---|---|---|---|
| C. | Chinese Manufacturer #2 (purple stamp) | 37 | | | |
| D. | Crescent City Gypsum | 27, 28, 29 | N/A because no Florida claimants allege these markings. | | |
| E. | DUN | 42 | N/A because no Florida claimants allege these markings. | | |
| F. | IMT Gypsum | 30, 31, 32, 33 | Allege that products with these type of markings were manufactured by Taishan | Deny that products with these type of markings were manufactured by Taishan | Deny that products with this type of markings were manufactured by BNBM |
| G. | ProWall | 43, 44 | Allege that products with these type of markings were manufactured by Taishan | Deny that products with these type of markings were manufactured by Taishan | Deny that products with this type of markings were manufactured by BNBM |
| H. | Taian Taishan or Taihe Tape | 1, 14, 15, 16 | Allege that products with these type of markings were manufactured by Taishan | Subject to sufficient claimant-specific proof of Product ID, including but not limited to location and dimensions of markings, font type and color, and other physical and visual characteristics of drywall boards, do not deny that products with these type of markings were manufactured by Taishan | Deny that products with this type of markings were manufactured by BNBM |

2

| | | | | | |
|---|---|---|---|---|---|
| I. | Made in China Meet or Exceeds | 13, 17, 18, 19, 20, 21 | Allege that products with these type of markings were manufactured by Taishan | Deny that products with the following markings were manufactured by Taishan: 18, 19, 21. Subject to sufficient claimant-specific proof of Product ID, including but not limited to location and dimensions of markings, font type and color, and other physical and visual characteristics of drywall boards, do not deny that products with the following markings were manufactured by Taishan: 13, 17, 20. | Deny that products with this type of markings were manufactured by BNBM |
| J. | Various Drywall dimensions, including 4feetx12feetx1/2 inch and 4feet*12feet*1/2inch | 2, 5, 6, 7, 8, 9, 10, 11 | Allege that products with these type of markings were manufactured by Taishan | Deny that products with the following markings were manufactured by Taishan: 5, 6, 7, 8, 9, 10, 11. Subject to sufficient claimant-specific proof of Product ID, including but not limited to location | Deny that products with this type of markings were manufactured by BNBM |

3

| | | | | | |
|---|---|---|---|---|---|
| | | | | and dimensions of markings, font type and color, and other physical and visual characteristics of drywall boards, do not deny that products with the following markings were manufactured by Taishan: 2. | |
| K. | Venture Supply | 38, 39, 40, 41 | Allege that products with these type of markings were manufactured by Taishan | Subject to sufficient claimant-specific proof of Product ID, including but not limited to location and dimensions of markings, font type and color, and other physical and visual characteristics of drywall boards, do not deny that products with these type of markings were manufactured by Taishan | Deny that products with this type of markings were manufactured by BNBM |
| L. | Boards with white edge tape and no other markings; boards with no markings or boards with no markings other than numbers; and any | 12, 3, 4, | Allege that products with these type of markings were manufactured by Taishan | Deny that products with these type of indicia were manufactured by Taishan | Deny that products with this type of indicia were manufactured by BNBM |

4

| | other product ID categories | | | | |
| --- | --- | --- | --- | --- | --- |

LEGAL02/38679846v1

# Tab #44

## TAISHAN – PRELIMINARY FLORIDA CONTESTS AND SETOFFS
## OBJECTION KEY

| OBJECTION | DESCRIPTION |
|:---:|:---|
| | **CLAIM OWNERSHIP** |
| A | Claimant not an *Amorin* named plaintiff |
| B | Claimant assigned *Amorin* claim to other person or entity |
| C | Claimant purchased with knowledge of Chinese Drywall in affected property |
| | **PROPERTY OWNERSHIP** |
| D | Claimant does not currently own affected property |
| E | Claimant never owned affected property |
| | **SPPF DEFICIENCIES** |
| F | Claimant failed to submit SPPF |
| G | No claimant signature on current SPPF submission |
| H | Claimant failed to fill out all relevant fields in SPPF |
| | **UNDER AIR SQUARE FOOTAGE** |
| I | Incorrect reported under air square footage |
| | **PRODUCT IDENTIFICATION** |
| J | Chinese Drywall in affected property was not manufactured by Taishan |
| K | Insufficient proof to identify manufacturer of Chinese Drywall |
| | **REMEDIATION** |
| L | Affected property was completely remediated |
| M | Affected property was partially remediated |
| N | Remediation of affected property funded by other person or entity |
| | **DIMINUTION IN VALUE** |
| O | Claimant's reported diminution in value is less than the amount requested under the remediation-damages formula |
| | **OBJECTION TO FORMULA VALUES** |
| P | Remediation-damages formula calculation proffered by Plaintiffs does not conform to the formula adopted by the Court |
| | **EVIDENCE PRESERVATION** |
| Q | Claimant did not preserve evidence during remediation as required under MDL Pre-Trial Order 1 |

| COLOR CODE KEY | |
|:---:|:---|
| *Pink* | Claim disqualified from any recovery from Taishan |
| *Blue* | Claim disqualified from remediation-damages formula |
| *Gold* | Dispute PSC's remediation-damages formula calculation |

# Tab #45

Taishan - Preliminary Florida Contests and Setoffs

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 1 | Abadi, Jamal and Hamzey | 11546 Hammocks Glade Drive | Riverview | FL | 33569 | DGJP | $10,361.83 |
| 2 | Abbott, Carl D. and Adele | 10320 SW Stephanie Way, Unit 7-206 | Port St. Lucie | FL | 34987 | DJP | $8,356.30 |
| 3 | Abel, Kenneth | 10400 SW Stephanie Way #5210 | Port St. Lucie | FL | 34987 | DHJOP | $0.00 |
| 4 | Abraham, Kondoor and Mary (CJJ Real Estate Holdings, Inc.) | 109 Pine Lane | Lehigh Acres | FL | 33971 | JLPQ | $9,975.92 |
| 5 | Abraham, Kondoor and Mary (CJJ Real Estate Holdings, Inc.) | 111 Pine Lane | Lehigh Acres | FL | 33971 | JLPQ | $19,975.92 |
| 7 | Acosta-Mesa, Wilda and Ariel | 3913 10th Street SW | Lehigh Acres | FL | 33976 | JP | $10,308.30 |
| 8 | Adam's Mortgage, LLC | 4278 Tyler Circle | St. Petersburg | FL | 33709 | HJP | $4,956.57 |
| 10 | Adams, Richard and Marilyn | 5748 Stay Sail Ct. | Cape Coral | FL | 33914 | LNOPQ | $587,819.34 |
| 11 | Adamson, Andre | 5650 NW 54th Avenue | Tamarac | FL | 33319 | IP | $12,091.01 |
| 12 | Adaniel, Jesus and Amy | 9709 Cobblestone Creek Drive | Boynton Beach | FL | 33437 | DHJLPQ | $47,150.63 |
| 13 | Adolph, Jane | 1617 SE 8th Place | Cape Coral | FL | 33990 | DIJMNPQ | $101,632.47 |
| 14 | Aguilar, Delsa | 1690 Renaissance Commons Blvd. Unit 1209 | Boynton Beach | FL | 33426 | DLNPQ | $187,349.16 |
| 15 | Aldi, Inc. | 6503 Interbay Boulevard | Tampa | FL | 33611 | OP | $10,529.74 |
| 16 | Aldred, Timothy and Pearl | 9001 Sunrise Lakes Blvd. #201 | Sunrise | FL | 33322 | HIJLPQ | $357.74 |
| 17 | Aleman, Axas and Salazar, Enrique | 376 NE 34th Avenue | Homestead | FL | 33033 | DHP | $13,704.35 |
| 18 | Alexander, Lynne | 1660 Renaissance Commons Blvd., Unit 2505 | Boynton Beach | FL | 33426 | DIJLNOPQ | $194,261.40 |
| 19 | Alonso, Miguel and Liudmila | 5135 Balmer Street | Lehigh Acres | FL | 33971 | GHJLPQ | $4,525.16 |
| 20 | Altidor, Julie | 4757 Tuscan Loon Drive | Tampa | FL | 33619 | DHJLOPQ | $0.00 |
| 21 | Altizio, Ignazio and Macciavello, Giovanni | 19250 Stone Hedge Dr. | Tampa | FL | 33647 | ADHP | $0.00 |
| 22 | Alvarez, Ricardo | 8013 W. 36th Ave., Unit 3 | Hialeah | FL | 33157 | DHIJP | $4,547.04 |
| 23 | Amadeo, Antonio and Oliva, Edelerto | 543 West Davis Blvd. | Tampa | FL | 33606 | JMPQ | $9,924.80 |
| 24 | Amaral, Antonio and Isabel | 5221 Athens Way | Venice | FL | 34293 | JP | $0.00 |

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 368 of 647
Case 1:11-cv-22408-MGC Document 27 Entered on FLSD Docket 08/15/2013 Page 516 of 693
Taishan - Preliminary Florida Contests and Setoffs

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 25 | Ancer, Jason and Heather | 21523 Draycott Way | Land O'Lakes | FL | 34637 | DIJP | $21,702.84 |
| 26 | Andersen, Michael | 2105 SW 39th Terrace | Cape Coral | FL | 33914 | GIJLPQ | $21,592.50 |
| 28 | Anderton, Gloria and George | 6227 Paradise Point Dr. | Palmetto Bay | FL | 33157 | DHIJLPQ | $0.00 |
| 29 | Andreoli, Robert | 17827 Lake Azure Way | Boca Raton | FL | 33496 | DIP | $286,864.65 |
| 30 | Angel, Wendel and Dawn | 2051 NW 3rd Terrace | Cape Coral | FL | 33993 | HJLNPQ | $221,176.37 |
| 31 | Anise, Maikel and Karen | 9661 Cobblestone Creek | Boynton Beach | FL | 33472 | DGP | $35,343.03 |
| 32 | Ankiel, Rick and Lory | 138 Ocean Bay Drive | Jensen Beach | FL | 34957 | DHJP | $15,488.25 |
| 33 | Ankum, Freda G. | 1016 North J. Street | Pensacola | FL | 32501 | IMPQ | $8,430.82 |
| 34 | Antinarelli, Paulette | 914 SW 23rd Street | Cape Coral | FL | 33991 | GHJLPQ | $17,821.92 |
| 35 | Aponte, Sandra Hallums, Baron | 20442 SW 317th Street | Homestead | FL | 33030 | HP | $1,886.78 |
| 36 | Appelman, Louis and Sara | 1157 SW 39th Terrace | Cape Coral | FL | 33914 | GHLP | $13,788.26 |
| 37 | Areces, Miguel and Jacqueline | 5300 Seagrape Drive | Ft. Pierce | FL | 34982 | DGIP | $18,864.37 |
| 38 | Arevalo, Luis and Johns, Silvia | 8218 Santa Monica Avenue | Tamarac | FL | 33321 | IJOP | $9,205.31 |
| 39 | Arguello, John and Laura | 12430 SW 50th Street, Unit 107 | Miramar | FL | 33027 | DIP | $5,391.53 |
| 40 | Argueta, Gabriel and Garcia Suyopa, Elisabeth | 2620 61st Street W | Lehigh Acres | FL | 33971 | GHLPQ | $6,706.77 |
| 41 | Arquimides, Rafi, Jr. and Alonso, Isel Y. | 7557 County Road 721 | Lorida | FL | 33857 | IJP | $0.00 |
| 42 | Arrington, Angel | 2113 Delightful Drive | Ruskin | FL | 33570 | FLPQ | $655.77 |
| 43 | Arriola, Ruben and Martha, Barriento, Marc | 17181 Morris Bridge Road | Thonotosassa | FL | 33592 | JP | $9,118.85 |
| 44 | Astrin, Scott and Terri | 8600 Athena Court | Lehigh Acres | FL | 33971 | P | $9,336.66 |
| 45 | Attard, Kenneth & Dahlfues, John | 194 SE 2nd Avenue | Deerfield Beach | FL | 33441 | IPQ | $7,851.24 |
| 46 | Attard, Steve and Samantha | 13369 Little Gem Circle | Ft. Myers | FL | 33913 | BGLNPQ | $15,487.98 |
| 47 | Auguste, Alide | 2182 SE North Blackwell Drive | Port St. Lucie | FL | 34952 | GLOPQ | $9,202.01 |
| 48 | Auker, Dan and Frances | 10820 Tiberio Drive | Ft. Myers | FL | 33913 | GLPQ | $15,007.94 |
| 50 | Avery, Janet | 10671 Camarelle Circle | Ft. Myers | FL | 33913 | DGP | $31,302.13 |

Case 2:09-md-02047-EEF-MBN Document 22307-10 Filed 12/09/19 Page 369 of 647
Case 1:11-cv-22408-MGC Document 27 Entered on FLSD Docket 09/15/2011 Page 517 of
599
Taishan - Preliminary Florida Contests and Setoffs

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 51 | Avner, Brett and Wendy | 18020 Via Bellamare Lane | Miromar Lakes | FL | 33913 | GHJLOPQ | $0.00 |
| 52 | Ayala, Cynthia | 4720 S.W. 166th Court | Miami | FL | 33185 | CDGHIJP | $0.00 |
| 53 | Ayanbadejo, Oladele and Uzcategui, Natalee | 1360 Bayview Drive | Fort Lauderdale | FL | 33304 | DIJP | $0.00 |
| 54 | Aymerich, Jason | 11318 Bridge Pine Drive | Riverview | FL | 33569 | GLNOPQ | $141,493.00 |
| 55 | Azor, Harry and Stephania | 12430 SW 50th Street, Unit 105 | Miramar | FL | 33027 | DHIOP | $0.00 |
| 56 | Babamov, Hristo and Cvetanka | 11570 Hammocks Glade Drive | Riverview | FL | 33569 | DIP | $74,765.90 |
| 57 | Bacon, Doug and Joy | 19712 Lake Osceola Lane | Odessa | FL | 33556 | DGJP | $18,458.25 |
| 58 | Baez, Ramon and Franca, Sylvia | 904 Sistina Avenue | Coral Gables | FL | 33146 | DJLPQ | $7,889.64 |
| 59 | Baker, Garry and Lynn | 2817 NW 4th Terrace | Cape Coral | FL | 33993 | DJOP | $19,907.25 |
| 60 | Baker, Keith and Linda | 12077 Honeysuckle Road | Ft. Myers | FL | 33966 | DIJP | $0.00 |
| 61 | Ballard, Marcia (Trustee Ballard Marcia Revocable Living Trust) | 11216 Godwit Court | New Port Richey | FL | 34654 | DGIJLPQ | $4,525.16 |
| 62 | Banner, Luke and Deborah | 1766 SE North Buttonwood Drive | Port St. Lucie | FL | 34952 | DIJP | $6,966.74 |
| 63 | Barber, David and Joyce | 4435 Gevalia Drive | Brooksville | FL | 34604 | GHIJLPQ | $0.00 |
| 64 | Barcia, Aurora | 6119 NW Densaw Terrace | Port St. Lucie | FL | 34986 | DLPQ | $14,987.88 |
| 65 | Barnes, Arlana | 4745 and 4747 28th Street South West (1178 & 2356 sq ft) | Lehigh Acres | FL | 33973 | JMPQ | $8,411.95 |
| 66 | Barnett, Dean on behalf of Wilbar Investments, LLC | 9420 Eden Manor | Parkland | FL | 33076 | GIJLPQ | $38,782.87 |
| 67 | Barning, Sheryl | 4142 Bismarck Palm Dr. | Tampa | FL | 33610 | HP | $2,832.50 |
| 68 | Barragan, Fernando and Barbara | 8935 SW 228th Lane | Cutler Bay | FL | 33190 | DHIJP | $19,583.26 |
| 69 | Barreto, Adolfo and Gonzalez, Laura | 8111 W 36th Avenue Unit #3 | Hialeah | FL | 33018 | DHIJP | $6,983.33 |
| 70 | Barriento, Marc | 4057 SW Cheribon Street | Port St. Lucie | FL | 34953 | DP | $9,215.21 |

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 71 | Barrios, Ana and Becerra, Alexander | 11584 Hammocks Glade Drive | Riverview | FL | 33569 | GILPQ | $7,687.81 |
| 72 | Bartschat, Eric and Anne Marie | 7855 Hawthorne Terrace, Unit 1604 | Naples | FL | 34113 | IJP | $18,436.48 |
| 73 | Bas, Ayse | 1690 Renaissance Commons Blvd. #1419 | Boynton Beach | FL | 33426 | ILNPQ | $190,801.10 |
| 74 | Bast, Peter and Robin | 1690 Renaissance Commons Blvd., Unit 1428 | Boynton Beach | FL | 33426 | ILNPQ | $185,683.40 |
| 75 | Batra, Vinod | 2565 Deerfield Lake Court | Cape Coral | FL | 33993 | DHJLPQ | $11,628.67 |
| 76 | Batsch, Kevin | 186 S.E. 2nd Street, Unit 186 | Deerfield Beach | FL | 33441 | DIJP | $7,851.24 |
| 77 | Battista, Leo | 9001 Sunrise Lakes Blvd. 311 | Sunrise | FL | 33322 | DHIJMNPQ | $0.00 |
| 78 | Bautista, Mario | 184 SE 2nd Street | Deerfield Beach | FL | 33441 | DIJP | $7,851.24 |
| 79 | Bdaiwi, Dirar | 12421 SW 50 CT Unit 335 | Miramar | FL | 33027 | DIP | $10,000.00 |
| 80 | Beerbower, Michael | 11417 Bridge Pine Drive | Riverview | FL | 33569 | DP | $275,334.04 |
| 81 | Bekhor, Lidan | 14141 Citrus Crest Circle | Tampa | FL | 33625 | HP | $11,511.67 |
| 82 | Belfour, Ed and Ashli | 7260 Wisteria Avenue | Parkland | FL | 33076 | DGILNPQ | $23,098.82 |
| 83 | Bell, Peter and Karen | 5140 SE Mariner Gardens Circle, Unit I-65 | Stuart | FL | 34997 | DIJP | $10,000.00 |
| 84 | Belson, Luydmila | 198 Medici Terrace | North Venice | FL | 34275 | IJLNPQ | $163,483.62 |
| 85 | Benes, Mary Anne (nka Mary Anne Ali Bocas) | 174 SE 2nd Street | Deerfield Beach | FL | 33441 | HIJP | $7,851.24 |
| 86 | Benish, Frances | 11353 SW Mountain Ash Circle | Port St. Lucie | FL | 34987 | GJLPQ | $8,220.54 |
| 89 | Bentley, Lonnette and Lowery, Kenneth | 4458 Preacher Lane | Jay | FL | 32565 | IMPQ | $7,864.22 |
| 90 | Benzo, Ramon and Candida | 2576 Sea Wind Way | Clearwater | FL | 33763 | DIJP | $25,400.00 |
| 91 | Bereijo, Joseph | 8007 West 36th Avenue, Apt. 5 | Hialeah | FL | 33018 | DJP | $4,547.04 |
| 92 | Berra, Dale and Jane and Woodruff, Henry and Nancy | 310 Mestre Place | North Venice | FL | 34275 | GIJP | $11,387.57 |
| 93 | Billy, Ronald and Tabitha | 3261 Lee Way Court Unit 506 North | Ft. Myers | FL | 33903 | BDGHILNPQ | $93,768.56 |
| 94 | Binda, Coral | 3366 S.W. Frankford Street | Port St. Lucie | FL | 34953 | JP | $7,176.64 |

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 95 | Birkholz, Berlyn and Elaine | 12644 20th Street | East Parrish | FL | 34129 | DP | $0.00 |
| 96 | Bishop, Michael | 2310 SW 19th Street | Cape Coral | FL | 33991 | P | $12,096.21 |
| 97 | Black, Douglas and Elizabeth | 833 King Leon Way | Sun City Center | FL | 33573 | GJP | $14,586.57 |
| 98 | Blanchard, Abelar | 418 Vine Cliff Street | Ruskin | FL | 33570 | DJP | $6,658.67 |
| 99 | Blue Water Coach Homes Condominium Association | 174 Shadroe Cove Circle, Unit 1003 | Cape Coral | FL | 33991 | EGILNPQ | $15,917.10 |
| 100 | Blue Water Coach Homes Condominium Association | 175 Shadroe Cove Circle, Unit 1103 | Cape Coral | FL | 33991 | EGIJLPQ | $15,917.10 |
| 101 | Blue Water Coach Homes Condominium Association | 202 Shadroe Cove Circle, Unit 403 | Cape Coral | FL | 33991 | AEGILPQ | $15,917.10 |
| 102 | Blue Water Coach Homes Condominium Association | 221 Shadroe Cove Circle, Unit 1302 | Cape Coral | FL | 33991 | DEGIJLNPQ | $163,383.79 |
| 103 | Blue Water Coach Homes Condominium Association | 221 Shadroe Cove Circle, Unit 1303 | Cape Coral | FL | 33991 | EGIJLNPQ | $66,731.72 |
| 104 | Blue Water Coach Homes Condominium Association | 221 Shadroe Cove Circle, Unit 1304 | Cape Coral | FL | 33991 | EGIJLPQ | $15,917.10 |
| 105 | Blue Water Coach Homes Condominium Association, Inc. | 174 Shadroe Cove Circle,  Unit 1002 | Cape Coral | FL | 33991 | AEGILPQ | $11,003.59 |
| 106 | Blue Water Coach Homes Condominium Association, Inc. (Kay Sanders) | 174 Shadroe Cove Circle, Unit 1004 | Cape Coral | FL | 33991 | AEGIJLPQ | $15,917.10 |
| 107 | Blue Water Coach Homes Condominium Association, Inc. | 181 Shadroe Cove Circle, Unit 1204, Cape Coral, FL 33991 | Cape Coral | FL | 33991 | EIJP | $15,917.10 |
| 108 | Blue Water Coach Homes Condominium Association, Inc. | 194 Shadroe Cove Circle, Unit 601 | Cape Coral | FL | 33991 | AEGILNPQ | $11,003.59 |
| 109 | Blue Water Coach Homes Condominium Association, Inc. | 194 Shadroe Cove Circle, Unit 602 | Cape Coral | FL | 33991 | AEILNPQ | $11,003.59 |
| 110 | Blue Water Coach Homes Condominium Association, Inc. | 194 Shadroe Cove Circle, Unit 604 | Cape Coral | FL | 33991 | AEGILPQ | $25,997.32 |

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 372 of 647
Case 2:12-cv-22408-MCE-EEF Document 2 cument entered on FLSD Docket 08/15/2013 Page 520 of 593
Taishan - Preliminary Florida Contests and Setoffs

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 111 | Blue Water Coach Homes Condominium Association, Inc. | 206 Shadroe Cove Circle, #304 | Cape Coral | FL | 33991 | AEGILNPQ | $180,064.26 |
| 112 | Blue Water Coach Homes Condominium Association, Inc. (Casper, Bruce and Barbara) | 174 Shadroe Cove Circle, Unit 1001 | Cape Coral | FL | 33991 | AEIP | $11,003.59 |
| 113 | Blue Water Coach Homes Condominium Association, Inc. (Molinaro, Peter) | 182 Shadroe Cove Circle, #801 | Cape Coral | FL | 33991 | AEIP | $9,793.70 |
| 114 | Blue Water Coach Homes Condominium Association, Inc. (Shafer, Sam and Mary) | 206 Shadroe Cove Circle Unit 301 | Cape Coral | FL | 33991 | AEGILNPQ | $11,003.59 |
| 115 | Blue Water Condo Assoc. | 178 Shadroe Cove Circle Unit 904 | Cape Coral | FL | 33991 | AEGILPQ | $15,917.10 |
| 116 | Blue Water Condo Assoc. | 182 Shadroe Cove Circle, Unit 803 | Cape Coral | FL | 33991 | AEGILPQ | $15,997.32 |
| 117 | Blue Water Condo Assoc. | 182 Shadroe Cove Circle, Unit 804 | Cape Coral | FL | 33991 | AEGILPQ | $25,997.32 |
| 118 | Blue Water Condo Assoc. | 190 Shadroe Cove Circle Unit 701 | Cape Coral | FL | 33991 | AEGILNPQ | $11,003.59 |
| 119 | Blue Water Condo Assoc. | 190 Shadroe Cove Circle Unit 702 | Cape Coral | FL | 33991 | AEGILNPQ | $11,003.59 |
| 120 | Blue Water Condo Assoc. | 190 Shadroe Cove Circle Unit 703 | Cape Coral | FL | 33991 | AEGHILPQ | $15,997.32 |
| 121 | Blue Water Condo Assoc. | 190 Shadroe Cove Circle Unit 704 | Cape Coral | FL | 33991 | EGILPQ | $25,997.32 |
| 122 | Blue Water Condo Assoc. | 198 Shadroe Cove Circle, Unit 501 | Cape Coral | FL | 33991 | AEGILNPQ | $11,003.59 |
| 123 | Blue Water Condo Assoc. | 198 Shadroe Cove Circle, Unit 502 | Cape Coral | FL | 33991 | AEGHILPQ | $11,003.59 |
| 124 | Blue Water Condo Assoc. | 198 Shadroe Cove Circle, Unit 504 | Cape Coral | FL | 33991 | AEGILPQ | $25,917.10 |
| 125 | Blue Water Condo Assoc. | 202 Shadroe Cove Circle, Unit 401 | Cape Coral | FL | 33991 | AEGILPQ | $21,003.59 |
| 126 | Blue Water Condo Assoc. | 202 Shadroe Cove Circle, Unit 402 | Cape Coral | FL | 33991 | AEGILPQ | $11,003.59 |

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 373 of 647
Case 2:12-cv-22408-MCE-EEF Document 20 Entered on FLSD Docket 08/15/2019 Page 521 of
909
Taishan - Preliminary Florida Contests and Setoffs

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 127 | Blue Water Condo Assoc. | 202 Shadroe Cove Circle, Unit 404 | Cape Coral | FL | 33991 | AEGILPQ | $15,917.10 |
| 128 | Blue Water Condo Assoc. | 206 Shadroe Cove Circle, Unit 302 | Cape Coral | FL | 33991 | AEGILPQ | $11,003.59 |
| 129 | Blue Water Condo Assoc. | 206 Shadroe Cove Circle, Unit 303 | Cape Coral | FL | 33991 | AEGILPQ | $15,917.10 |
| 130 | Blue Water Condominium | 178 Shadroe Cove Circle, Unit 902 | Cape Coral | FL | 33991 | AEIP | $21,003.59 |
| 131 | Blue Water Condominium | 178 Shadroe Cove Circle, Unit 903 | Cape Coral | FL | 33991 | AEGILPQ | $11,750.15 |
| 132 | Blue Water Condominium Association | 178 Shadroe Cove Circle, Unit 901 | Cape Coral | FL | 33991 | EGILPQ | $11,003.59 |
| 133 | Blue Water Condominium Association | 194 Shadroe Cove Circle, Unit 603 | Cape Coral | FL | 33991 | AEIP | $15,997.32 |
| 134 | Bobrow, Scott and Cheryl | 7217 Wisteria Avenue | Parkland | FL | 33076 | GIP | $33,580.91 |
| 135 | Boersma, Kenneth and Garty f/k/a Lepore, Victoria | 9664 Cobblestone Creek Drive | Boynton Beach | FL | 33472 | DGP | $88,509.45 |
| 136 | Bohorquez, Noe A. Machado | 10837 NW 79 Street | Miami | FL | 33185 | HIJLPQ | $3,428.70 |
| 137 | Bonome-Rodriguez, Ramon | 8031 W 36th Avenue Unit #1 | Hialeah | FL | 33018 | IJP | $4,563.81 |
| 138 | Bontu, Praksah R. and Rupa | 809 King Leon Way | Sun City Center | FL | 33573 | DGIP | $88,051.13 |
| 139 | Bookman, Sheryl and Jarrod | 9821 Cobblestone Creek | Boynton Beach | FL | 33472 | DP | $35,134.47 |
| 140 | Borgardt, David and Katherine | 2160 NW 23rd Avenue | Cape Coral | FL | 33993 | GP | $11,444.80 |
| 141 | Borges, Virgilio and Janaina | 5660 Kensington Loop | Ft. Myers | FL | 33912 | DIJP | $0.00 |
| 143 | Bosch, Yunia and Muris, Luis | 8049 W 36th Avenue #2 | Hialeah | FL | 33018 | IJP | $4,547.04 |
| 144 | Bosse, David and Christina | 1916 Bright Water Drive | Gulf Breeze | FL | 32563 | DP | $0.00 |
| 145 | Boucvalt, Shane | 14147 Citrus Crest Circle | Tampa | FL | 33625 | DGP | $10,000.00 |
| 146 | Bourguignon, Susan | 14149 Citrus Crest Circle | Tampa | FL | 33625 | DP | $0.00 |

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 374 of 647
Case 2:14-cv-02400-CEF-MBN Document 270 Entered on FLSD Docket 08/15/2019 Page 9 of 922
Taishan - Preliminary Florida Contests and Setoffs

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 147 | Bowers, Gail and Roger | 2805 W. Shelton Avenue | Tampa | FL | 33611 | HJP | $14,847.51 |
| 148 | Bradley, Leon Sr. and Robin | 1661 Lewis Road | Milton | FL | 32570 | IMPQ | $15,845.88 |
| 149 | Bradley, Rebecca | 438 34th Avenue N. | St. Petersburg | FL | 33704 | DP | $0.00 |
| 150 | Bradshaw, Patrick | 109010 Observatory Way | Tampa | FL | 33647 | DHJP | $0.00 |
| 151 | Bradshaw, Steven | 1128 Barclay Wood Drive | Ruskin | FL | 33570 | DP | $10,000.00 |
| 152 | Brady, Michael and Barbara | 1704 NW 9th Terrace | Cape Coral | FL | 33993 | GLNOPQ | $124,208.26 |
| 153 | Braga, Henry and Deborah | 1325 NW 1st Avenue | Cape Coral | FL | 33993 | DHP | $5,770.63 |
| 154 | Bragoli, Frank and Carolyn | 1690 Renaissance Commons Blvd., Unit 1314 | Boynton Beach | FL | 33426 | HILNPQ | $189,001.40 |
| 156 | Brantley (Thrasher), Collett | 2128 NW 17th Avenue | Cape Coral | FL | 33993 | P | $85,724.29 |
| 157 | Brathwaite, Melvin and Maryann | 4904 19th Street N. | St. Petersburg | FL | 33714 | DGIJP | $4,765.50 |
| 158 | Brennan, Arlene | 7 NW 13 Place | Cape Coral | FL | 33993 | DP | $11,917.26 |
| 159 | Breslow, Mark and Amanda | 3408 Grossglen Place | Wesley Chapel | FL | 33544 | IJP | $7,019.59 |
| 161 | Brewton, I.D. and Sonia III | 8804 Jernigan Road | Pensacola | FL | 32514 | DHIP | $14,721.29 |
| 162 | Brice, Philip | 1690 Renaissance Commons Blvd., Unit 1227 | Boynton Beach | FL | 33426 | ILNPQ | $194,384.85 |
| 163 | Brown, Alganan and Regina | 4297 S.W. McClellan Street, Port St. Lucie, Florida 34953 | Port St. Lucie | FL | 34953 | DJP | $11,183.65 |
| 164 | Brown, David | 3101 W. Oakellar Avenue | Tampa | FL | 33611 | DHJP | $8,801.53 |
| 165 | Brown, Morton and Ruth | 10360 S.W. Stephanie Way, Unit 6-105 | Port St. Lucie | FL | 34953 | DHJP | $11,331.17 |
| 166 | Brown, Shameca | 2917 E. 31st Avenue | Tampa | FL | 33610 | HP | $8,503.35 |
| 167 | Browne, James and Jill | 2507 Tylers River Run | Lutz | FL | 33559 | P | $54,728.01 |
| 168 | Brumbaugh, Russell and Carol | 232 SE 15th Terrace | Cape Coral | FL | 33990 | GLPQ | $17,260.80 |
| 169 | Brynn, Gerald E. and Brynn, Betty J. | 511 Rimini Vista Way | Sun City Center | FL | 33573 | DGILP | $17,153.63 |

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 171 | Buck, David and Wendy | 10320 SW Stephanie Way Unit 207 | Port St. Lucie | FL | 34987 | DHP | $918.80 |
| 172 | Burkhead, Samantha and John L. | 4457 Marvin Reaves Road | Jay | FL | 32565 | DIP | $4,692.07 |
| 173 | Burns, Ronald and Joan | 3237 NW 21st Terrace | Cape Coral | FL | 33993 | GIKLPQ | $12,540.65 |
| 174 | Busbee, Clarence and Sheri Jr. | 3031 Lake Manatee Court | Cape Coral | FL | 33909 | HIP | $18,089.75 |
| 175 | Caballero, Frank and Carmen | 12761 SW 53rd Street | Miramar | FL | 33027 | IJP | $0.00 |
| 176 | Cabrera, Israel and Diana | 8037 W 36th Avenue 2 | Hialeah | FL | 33018 | DIJP | $0.00 |
| 178 | Callan, Paul and Gloria | 8650 Athena Court | Lehigh Acres | FL | 33971 | HMPQ | $10,283.84 |
| 179 | Calloway, Frederic (Kent) and Amanda | 2333 Hwy. 168 | Century | FL | 32535 | HILPQ | $7,310.73 |
| 180 | Callwood, Sandy and Alberto | 11522 Hammocks Glade Drive | Riverview | FL | 33569 | DGP | $28,376.67 |
| 181 | Cammarata, Louis and Michele | 1660 Renaissance Commons Blvd., Unit 2503 | Boynton Beach | FL | 33426 | HILNPQ | $187,180.36 |
| 182 | Campola, Patsy and Maureen | 9607 Cinnamon Court | Parkland | FL | 33076 | GHILNPQ | $155,511.42 |
| 183 | Cape Quality Homes, Inc. | 1132 SW 18th Avenue | Cape Coral | FL | 33991 | DGHLNPQ | $16,097.40 |
| 184 | Caple, Janelle | 946 South West 6th Court | Cape Coral | FL | 33991 | DIJP | $11,828.91 |
| 185 | Capote, Emerito and Norma | 2382 SW Halissee Street | Port St. Lucie | FL | 34953 | JP | $11,351.21 |
| 186 | Capps, Wilburn and Joyce | 1402 SW 4th Lane | Cape Coral | FL | 33991 | DP | $17,073.11 |
| 187 | Caputo, Marc Turer, Scott | 2220 Soho Bay Court | Tampa | FL | 33606 | DFP | $5,557.89 |
| 188 | Carbonell, Wayne and Kimberly | 1718 NE 27th Terrace | Cape Coral | FL | 33909 | DGP | $16,033.28 |
| 189 | Cardamone, Steve and Annette | 1112 SE 16th Terrace | Cape Coral | FL | 33990 | DP | $12,540.65 |
| 190 | Cardenas, Edward | 5030 SW 126 Avenue, Unit 203 | Miramar | FL | 33027 | DIP | $5,391.53 |
| 191 | Cardenas, Francisco and Elsa | 6928 Marble Fawn Place | Riverview | FL | 33578 | DGHLNPQ | $867.04 |
| 192 | Cardenas, Frank, III | 4402 Ruth Avenue South | Lehigh Acres | FL | 33972 | GIJP | $10,766.48 |
| 193 | Cardiello, Frank and Gayle | 1006 NW 38th Place | Cape Coral | FL | 33993 | DGILPQ | $14,014.05 |
| 196 | Caricato, Lisa | 13471 Little Gem Circle | Ft. Myers | FL | 33913 | BDHLNPQ | $1,847.65 |
| 197 | Carlson, Albert and Olson, Sandra | 12661 Oak Bend Drive | Ft. Myers | FL | 33905 | DJP | $31,326.09 |

Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 376 of 647
Case 1:11-cv-22408-MGC Document 270 Entered on FLSD Docket 08/13/2013 Page 524 of
633
Taishan - Preliminary Florida Contests and Setoffs

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 199 | Carney, Garnet and William | 11001 Gulf Reflections Drive, Unit 302 | Ft. Myers | FL | 33908 | ILPQ | $0.00 |
| 200 | Carney, Garnet and William | 11001 Gulf Reflections Drive, Unit 306 | Ft. Myers | FL | 33908 | ILPQ | $0.00 |
| 202 | Carter, Daniel and My-Duyen | 508 NW 38th Avenue | Cape Coral | FL | 33993 | DGP | $12,540.65 |
| 203 | Carter, Daniel and My-Duyen | 522 NW 36th Place | Cape Coral | FL | 33993 | DGP | $12,540.65 |
| 204 | Casalengo, Roger and Kramer, Betty Ann | 1690 Renaissance Commons Blvd., Unit 1324 | Boynton Beach | FL | 33426 | DILNPQ | $188,740.99 |
| 205 | Casanas, Dulce Guerra, Enrique | 8019 W 36th Avenue #2 | Hialeah | FL | 33018 | JP | $4,547.04 |
| 206 | Casanova, Carlos | 34830 Turnbury Court 44 | Zephyr Hills | FL | 33541 | DHIJP | $0.00 |
| 207 | Casburn, Richard and Judy | 2120 Della Drive | Naples | FL | 34117 | DIJP | $4,897.49 |
| 208 | Castillo, Jorge | 128 NE 8th Terrace | Cape Coral | FL | 33909 | DP | $204,735.82 |
| 209 | Castro, Lidice | 1147 NW 19 Avenue | Cape Coral | FL | 33993 | HIP | $11,344.42 |
| 210 | Catalano, Pete and Annett | 1458 SW Goodman Avenue | Port St. Lucie | FL | 34952 | DGP | $25,104.73 |
| 212 | Cattano, Phyllis | 2107 N.E. Juanita Place | Cape Coral | FL | 33909 | IP | $11,966.24 |
| 213 | Cavalieri, Sam, John, Jennifer and Candace | 8177 Emerald Avenue | Parkland | FL | 33076 | DIP | $150,846.22 |
| 214 | Cayre, Jack | 4351 Bellaria Way #445 | Ft. Myers | FL | 33916 | DHIJLNP | $801.71 |
| 215 | Cegielski, Boguslaw and Ning | 246 SW 26th Street | Cape Coral | FL | 33993 | GJLPQ | $13,664.24 |
| 216 | Ceglio, Carmine and Donna | 10511 Sarah Way | Port St. Lucie | FL | 34987 | DGHIJLNPQ | $338,218.36 |
| 217 | Chan, Yut Siong | 3702 Ralston Road | Plant City | FL | 33566 | DGLPQ | $22,489.61 |
| 218 | Chandler, Rasheeta | 11112 Ancient Futures Drive | Tampa | FL | 33647 | DHIJP | $6,979.50 |
| 219 | Chatmon, Lillian | 4151 Bismarck Palm Drive | Tampa | FL | 33610 | JP | $17,145.74 |
| 220 | Chau, Van and Waas, John | 18238 Hepatica Road | Ft. Myers | FL | 33967 | GJLPQ | $3,504.08 |
| 221 | Chavez, Rolando Javier | 11215 Laurel Brook Court | Riverview | FL | 33569 | DGJLPQ | $11,812.48 |
| 222 | Cheeran, David C. and Mary | 987 Fish Hook Cove | Bradenton | FL | 34212 | GIJP | $30,817.88 |
| 223 | Chimelis, Ariel and Michelle | 561 SW Prater Avenue | Port St. Lucie | FL | 34953 | DHIP | $17,441.30 |
| 224 | Chinoy, Vinita and Raymond | 11525 Hammocks Glade Drive | Riverview | FL | 33569 | DP | $15,282.02 |

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 225 | Christodoulou, Louis and Maryann | 11221 Godwit Court | New Port Richey | FL | 34654 | DGIJLP | $2,476.16 |
| 227 | Cintula, Theodore | 2212 Sifield Greens Way | Sun City Center | FL | 33573 | DGIJP | $20,153.32 |
| 228 | Clark, Jimmy and Patricia | 3432 SW 15th Terrace | Cape Coral | FL | 33914 | DJP | $0.00 |
| 229 | Clark, John and Mary | 10854 Tiberio Drive | Ft. Myers | FL | 33913 | GLP | $11,517.17 |
| 230 | Clark, Robert and Linda | 816 Chapel Avenue | Lehigh Acres | FL | 33971 | GJLNPQ | $242,709.64 |
| 231 | Clark, William and Tracy | 11329 Bridge Pine Drive | Riverview | FL | 33569 | IP | $11,110.55 |
| 232 | Clarke, Joseph and Sandra | 325 Cipriani Way | Nokomis | FL | 34275 | DHLPQ | $14,280.06 |
| 233 | Clarke, Paul and Heather | 8723 SW 21st Court | Miramar | FL | 33025 | IJMP | $0.00 |
| 234 | Clarke, Roger | 17979 Lake Azure Way | Boca Raton | FL | 33496 | DP | $571,674.91 |
| 235 | Claro, Felix | 6399 Fielding Street | North Port | FL | 34288 | GHLNPQ | $35,298.23 |
| 236 | Cobblestone on the Lake Master Association, Inc. | 4351 Bellaria Way, Unit 444, Fort Myers, FL 33196 | Fort Myers | FL | 33916 | AEHIJKLNPQ | $5,630.70 |
| 237 | Cobblestone on the Lake Master Association, Inc. | 4385 Cortina Circle Unit 137 | Ft. Myers | FL | 33916 | AEHIJLNPQ | $624.63 |
| 238 | Cobblestone on the Lake Master Association, Inc. | 4351 Bellaria Way, Unit 447 | Fort Myers | FL | 33916 | AEHIJLNPQ | $5,630.70 |
| 239 | Cobblestone on the Lake Master Association, Inc. (Cocquerelle, Nicolas) | 4351 Bellaria Way #443 | Ft. Myers | FL | 33916 | AEHIJLNPQ | $15,955.65 |
| 240 | Cobblestone on the Lake Master Association, Inc. (Tirbaso, William and Anne) | 4351 Bellaria Way Unit 446 | Ft. Myers | FL | 33916 | AEHIJMNPQ | $5,630.70 |
| 241 | Cobblestone on the Lake Master Association, Inc. (Tirbaso, William and Rita) | 4351 Bellaria Way Unit 442 | Ft. Myers | FL | 33916 | AEHIJLNPQ | $5,630.70 |
| 242 | Cohen, Jay and Shari | 1690 Renaissance Commons Blvd., Unit 1405 | Boynton Beach | FL | 33426 | ILNPQ | $201,146.28 |

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 243 | Cohen, Lawrence | 1690 Renaissance Commons Apartment 1426 Boynton Beach, Florida 33426 | Boynton Beach | FL | 33426 | P | $201,133.96 |
| 244 | Cole, John and Star | 2766 Blue Cypress Lake Court | Cape Coral | FL | 33909 | DLPQ | $11,264.31 |
| 245 | Colello, Jenine | 2201 NW Embers Terrace | Cape Coral | FL | 33993 | DGHP | $12,073.20 |
| 246 | Collingwood, Sharon and Samuel | 12777 Kentwood Avenue | Ft. Myers | FL | 33913 | DP | $5,057.39 |
| 247 | Colman, Kevin and Maria | 2248 NE 19 Terrace | Homestead | FL | 33035 | DHIJP | $10,000.00 |
| 249 | Conlin, Patrick | 1690 Renaissance Commons Blvd., Unit 1218 | Boynton Beach | FL | 33426 | ILNPQ | $203,065.92 |
| 250 | Conroy, John | 1750 NW 24th Place | Cape Coral | FL | 33993 | DIP | $13,242.65 |
| 251 | Conway Centre, LLC | 1609 Port St. Lucie Blvd. | Port St. Lucie | FL | 34952 | IMPQ | $18,811.73 |
| 252 | Conway Centre, LLC | 1621 Port St. Lucie Blvd. | Port St. Lucie | FL | 34952 | GHIMPQ | $12,534.46 |
| 253 | Conway Centre, LLC | 1637 Port St. Lucie Blvd. | Port St. Lucie | FL | 34952 | GIMPQ | $11,698.83 |
| 254 | Conway Centre, LLC | 1645 Port St. Lucie Blvd. | Port St. Lucie | FL | 34952 | GIMPQ | $13,323.30 |
| 255 | Conway Centre, LLC | 1649 Port St. Lucie Blvd. | Port St. Lucie | FL | 34952 | GHIMPQ | $5,849.41 |
| 256 | Conway Centre, LLC | 1653 Port St. Lucie Blvd. | Port St. Lucie | FL | 34952 | IJMPQ | $5,849.41 |
| 257 | Conway Centre, LLC | 1657 Port St. Lucie Blvd. | Port St. Lucie | FL | 34952 | GHIJMPQ | $13,370.09 |
| 258 | Coolidge, Sheila | 3055 Royal Palm Drive | North Port | FL | 34288 | GHILNP | $49,537.26 |
| 260 | Coratti, Philip | 130 Ocean Bay Drive | Jensen Beach | FL | 34957 | CIJP | $16,601.18 |
| 261 | Corea, Edgar and Gilmore, Elsie | 12600 SW 50th Court, #407 | Miramar | FL | 33027 | ADGIP | $2,435.04 |
| 262 | Costanzo, Richard and Beverly | 6920 Long Leaf Drive | Parkland | FL | 33076 | ADGHIJLPQ | $20,676.86 |
| 263 | Cotraccia, Manfredo and Maria | 11569 Hammocks Glade Drive | Riverview | FL | 33569 | ADHIP | $18,817.81 |
| 264 | Cove, Joseph, Jr | 214 SW 39th Terrace | Cape Coral | FL | 33914 | GHJLNPQ | $89,835.62 |
| 265 | Covetta, Melvin | 1203 NW 24th Place | Cape Coral | FL | 33993 | ADJP | $9,743.84 |
| 266 | Covos, Sebastian and Villaneuva, Emilse | 8129 W 36th Avenue Unit #6 | Hialeah | FL | 33018 | GIJLPQ | $4,909.20 |
| 267 | Cox, Shawn and Lisa | 9404 Scarborough Court | Port St. Lucie | FL | 34986 | DGLP | $46,025.66 |
| 268 | Crabtree, Steven Cole | 4805 Royal Birkdale Way | Wesley Chapel | FL | 33543 | DIJP | $0.00 |

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 379 of 647
Case 2:11-cv-02408-MCE Document 270 Entered on FLSD Docket 09/15/2011 Page 3 of 27
Taishan - Preliminary Florida Contests and Setoffs

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 269 | Craig, Bill and Jill | 4143 Wildstar Circle | Wesley Chapel | FL | 33544 | ILPQ | $18,850.51 |
| 270 | Craig, Michael and Deborah | 4678 19th Avenue S. | St. Petersburg | FL | 33711 | DP | $5,429.34 |
| 271 | Crawford, Scott and Dawn | 3228 NE 4 Street | Pompano Beach | FL | 33062 | DILNPQ | $201,115.27 |
| 272 | Croley, Paul | 140 S. Dixie Hwy. Unit 512 | Hollywood | FL | 33020 | DHIJMPQ | $8,482.51 |
| 273 | Cruz, Alfredo | 417 Fire Brand Street | Palm Bay | FL | 32908 | JP | $10,187.51 |
| 274 | Cruz, Eduardo | 4304 21 Street SW | Lehigh Acres | FL | 33976 | IJOP | $11,608.71 |
| 275 | Cruz, Robert and Sandra | 12444 South Bridge Terrace | Hudson | FL | 34669 | DIJP | $25,536.39 |
| 276 | Cubas, Mirtha and Hernandez, Aida | 1050 NW 36th Place | Cape Coral | FL | 33993 | DP | $6,993.39 |
| 277 | Cuellar, Javier and Echeverri, Laura | 12735 Kentwood Avenue | Ft. Myers | FL | 33913 | DGP | $27,871.56 |
| 279 | Cummings, Brian and Leslie | 221 SE 24th Street | Cape Coral | FL | 33990 | DP | $10,338.16 |
| 280 | Cusack, Cherl and Maddox, Cecil | 11313 Laurel Book Court | Riverview | FL | 33569 | JP | $17,761.97 |
| 281 | Cushen, Mark | 1309 Little Alafia Drive | Plant City | FL | 33567 | GHJP | $26,064.81 |
| 282 | D & B Assets, LLC | 11812 Bayport Lane #2403 | Ft. Myers | FL | 33908 | DHIP | $7,437.29 |
| 283 | D'Ambrosio, Angelo and Deborah | 1660 Renaissance Commons Blvd., Unit 2305 | Boynton Beach | FL | 33426 | DIJLNPQ | $214,433.42 |
| 284 | D'Ambrosio, John and Pamela | 338 Mestre Place | North Venice | FL | 34275 | DGIP | $56,735.92 |
| 285 | D'Loughy, Daniel | 9424 Scarborough Court | Port St. Lucie | FL | 34952 | DGIJLNP | $133,071.17 |
| 286 | Daley, Donnett | 2518 55th Street W. | Lehigh Acres | FL | 33971 | JP | $8,460.44 |
| 287 | Daniels, Anatoly | 1907 SE 21st Court | Homestead | FL | 33035 | DIP | $22,417.10 |
| 288 | Daniels, Lula | 5918 Bilek Drive | Pensacola | FL | 32526 | DGILPQ | $13,265.43 |
| 289 | Danza, Madelina | 3550 Lansing Loop Unit 101 | Estero | FL | 33928 | JLPQ | $6,743.44 |
| 290 | Dao, Cuc | 857 SW 17th Street | Cape Coral | FL | 33991 | DIJP | $0.00 |
| 291 | DaSilva, Manuel | 5210 SW 24th Avenue | Cape Coral | FL | 33914 | HIP | $16,523.29 |
| 292 | Davis, Chris | 300 East Bogia Road | McDavid | FL | 32568 | IP | $5,081.50 |
| 293 | Davis, Gordon and Estela | 201 Medici Terrace | North Venice | FL | 34275 | DGILNP | $53,860.86 |
| 294 | Dawkins, Benny | 13103 Linden Drive | Spring Hill | FL | 34609 | HIJP | $12,399.99 |
| 295 | De Jesus, Amelia | 9653 Cobblestone Creek Drive | Boynton Beach | FL | 33472 | DIP | $12,500.56 |
| 296 | De Vicente, Evelyn Duboq | 8049 NW 108 Place | Doral | FL | 33178 | DIJP | $13,702.81 |

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 380 of 647
Case 1:11-cv-22408-MGC Document 270-1 Entered on FLSD Docket 09/15/2019 Page 528 of 666
Taishan - Preliminary Florida Contests and Setoffs

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 298 | Deeg, David and Hooker, Deborah | 516 Southwest Akron Avenue | Stuart | FL | 34994 | DP | $17,040.20 |
| 299 | DeFrancesco, Joyce and Richard | 2218 S.W. Embers Terrace | Cape Coral | FL | 33991 | GLPQ | $11,181.56 |
| 300 | DeKeyser, Lee and Phyllis | 6051 Jonathan's Bay Circle Unit 401 | Ft. Myers | FL | 33908 | IJLPQ | $18,231.01 |
| 301 | Del Toro, Gilbert and Zamira | 7565 Bristol Circle | Naples | FL | 34124 | DHIJP | $10,000.00 |
| 302 | Del Valle, Craig | 3830 Misty Landing Drive | Valrico | FL | 33594 | DIJLPQ | $13,743.97 |
| 303 | Delayo, William and Jennifer | 19848 Maddelena Circle | Ft. Myers | FL | 33967 | BDHJLNPQ | $1,441.47 |
| 304 | Delgado, Pedro and Margarita | 2023 SW 30th Terrace | Cape Coral | FL | 33914 | JP | $16,117.65 |
| 305 | Delisser, John and Marvalyn | 1120 SW Gardena Avenue | Port St. Lucie | FL | 34953 | HP | $9,639.18 |
| 306 | Delmas, Hantz and Melmas, Mary Menzies | 22796 S.W. 89th Place | Cutler Bay | FL | 33190 | HIP | $14,139.90 |
| 307 | Demirgian, Edward and Tonia | 24504 Sunrise Drive | Port Charlotte | FL | 33980 | DIJP | $16,438.33 |
| 308 | DeMonaco, Charles | 92 Belle Grove Lane | Royal Palm Beach | FL | 33411 | BDLNPQ | $834.97 |
| 309 | DeNaeva, Marta | 1690 Renaissance Commons Blvd., Unit 1224 | Boynton Beach | FL | 33426 | HLNPQ | $203,633.96 |
| 310 | DeNavea, Martha Lisa | 1690 Renaissance Commons Blvd., Unit 1429 | Boynton Beach | FL | 33426 | LNPQ | $189,398.65 |
| 311 | Derzhko, Miroslam and Jaroslawa (Gloria) | 6953 Topeka Lane | North Port | FL | 34291 | DHIJP | $229,880.74 |
| 312 | Desire, Marie | 4734 14th St. SW , Lehigh Acres, FL 33973 | Lehigh Acres | FL | 33973 | AHJP | $4,079.71 |
| 313 | Desire, Marie | 4736 14th Street SW, Lehigh Acres, FL 33973 | Lehigh Acres | FL | 33973 | AJP | $3,529.71 |
| 314 | Destacamento, Marilou and Aladin | 910 Alaska Avenue | Lehigh Acres | FL | 33971 | JP | $14,439.53 |
| 315 | DeYoung, John C. | 4147 Courtside Way | Tampa | FL | 33618 | DGIP | $18,078.05 |
| 316 | Diallo, Alfa and Molero, Karla | 7300 Wisteria Avenue | Parkland | FL | 33076 | GILPQ | $35,748.73 |
| 317 | Diaz, Nelisbet | 20441 SW 317th Street | Homestead | FL | 33030 | HP | $7,499.82 |

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 381 of 647
Case 1:11-cv-22408-MGC Document 277-10 Entered on FLSD Docket 09/15/2015 Page 529 of 699
Taishan - Preliminary Florida Contests and Setoffs

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 321 | Dion, David and Parks, Eunice | 9781 Cobblestone Creek | Boynton Beach | FL | 33472 | DGILNPQ | $47,016.28 |
| 322 | DiPonti, Robert and Dolores | 4139 NE 9th Avenue | Cape Coral | FL | 33909 | DGLNP | $57,802.05 |
| 323 | DiSapio, Tonya and Carmine | 24518 Wallaby Lane | Punta Gorda | FL | 33955 | DHP | $36,873.25 |
| 324 | Disla, David | 4101 Country Club Blvd. | Cape Coral | FL | 33904 | GLPQ | $14,559.91 |
| 325 | Distel, Matthew and Stephanie | 1145 NW 28th Avenue | Cape Coral | FL | 33993 | DJP | $18,065.64 |
| 326 | Ditianquin, Marlon | 1690 Renaissance Commons Blvd., Unit 1309 | Boynton Beach | FL | 33426 | ILNPQ | $196,141.66 |
| 327 | Dixon, Demetrius | 11421 Mountain Bay Drive | Riverview | FL | 33569 | DGJP | $14,867.34 |
| 328 | Doerre, Christopher J. | 5280 Tamiami Court | Cape Coral | FL | 33904 | DIP | $21,338.68 |
| 329 | Dominguez, Antonio and Zenedia | 15539 SW 182nd Lane | Miami | FL | 33187 | DINP | $221,489.35 |
| 330 | Dong, Chi and Lu, Qun | 1562 Hextel Avenue SW | Port St. Lucie | FL | 34953 | DIP | $8,761.93 |
| 331 | Donohue, Mark and Lori | 3833 Langdrum Drive | Wesley Chapel | FL | 33543 | DIJP | $6,435.05 |
| 332 | Dora, Rolanda | 2206 SW Plymouth Street | Port St. Lucie | FL | 34953 | P | $0.00 |
| 333 | Dorman, Timothy and Melissa | 10703 Rockledge View Drive | Riverview | FL | 33579 | DJP | $27,921.00 |
| 334 | Dorsey, Rachael and David | 102 NW 24th Avenue | Cape Coral | FL | 33993 | DJP | $1,629.00 |
| 335 | Dos Ramos, Jose J. Pereira | 10841 NW 79 Street | Doral | FL | 33178 | JP | $4,326.42 |
| 336 | Dos Santos, Ana S. Sanches, Migel Borturiera | 8415 NW 113th Place | Doral | FL | 33178 | ILNPQ | $274,015.86 |
| 337 | Dow, Jared | 172 S.E. 2nd Street | Deerfield Beach | FL | 33441 | DGHIP | $7,851.24 |
| 338 | Dowdy, Alfred and Joyce | 2553 Deerfield Lake Court | Cape Coral | FL | 33993 | DJLPQ | $11,628.67 |
| 339 | Downing, Kenneth and Maria | 10540 E. Park Avenue | Port St. Lucie | FL | 34987 | IMPQ | $17,180.58 |
| 340 | Driskell, Jamie | 4150 Bismarck Palm Dr. | Tampa | FL | 33610 | P | $3,865.00 |
| 341 | Dryman, Lauren f/k/a Bove, Lauren | 10211 Avelar Ridge Drive | Riverview | FL | 33578 | DJP | $18,516.27 |
| 342 | Dudreck, Albert and Thomas | 10622 Camarelle Circle | Ft. Myers | FL | 33913 | P | $13,811.10 |
| 344 | Dunn, Keith and Crystal | 11547 Hammocks Glade Drive | Riverview | FL | 33569 | DHP | $7,999.95 |
| 345 | Durrance, Barry and Denise | 18030 Driftwood Lane | Lutz | FL | 33558 | DGIJLPQ | $8,444.36 |

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 382 of 647
Case 1:11-cv-22408-MGC Document 27 Entered on FLSD Docket 09/15/2015 Page 930 of
933

Taishan - Preliminary Florida Contests and Setoffs

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 346 | Dwight, Randy and Hutchinson, Mercedes | 12430 SW 50th Street #127 | Miramar | FL | 33027 | DHIP | $8,982.50 |
| 347 | Earley, Amanda and Peter | 15828 Caloosa Creek Circle | Ft. Myers | FL | 33908 | DJP | $9,516.47 |
| 348 | Eastman, Julie Mae, as Trustee | 7050 Ambrosia Lane Unit #3408 | Naples | FL | 34119 | IJP | $8,590.48 |
| 349 | Eck, August and Tina | 3910 Embers Parkway | Cape Coral | FL | 33933 | DIJP | $16,943.62 |
| 350 | Edouard, Louis and Kathleen | 815 King Leon Way | Sun City Center | FL | 33573 | GHLPQ | $11,765.69 |
| 352 | Edwards, Norma | 1050 NW Leonardo Circle | Port St. Lucie | FL | 34986 | DJP | $14,947.77 |
| 353 | Edwards, Richard | 1629 SW 14th Place | Cape Coral | FL | 33991 | DHP | $14,610.75 |
| 354 | Eggeling, William | 6231 NW Hacienda Lane | Port St. Lucie | FL | 34986 | DP | $10,000.00 |
| 355 | Ehrsam, Howard and Lisa | 10320 S.W. Stephanie Way, Unit 209 | Port St. Lucie | FL | 34987 | DHJMNPQ | $0.00 |
| 356 | Eldurone, Florencia | 1623 Roosevelt Avenue | Lehigh | FL | 33972 | DGHIJLPQ | $16,858.01 |
| 358 | Ellington, Peter and Robyn | 1213 NW 37 Place | Cape Coral | FL | 33993 | DIP | $10,000.00 |
| 359 | Elliott, Mary | 2996 Centerwood Drive | Jacksonville | FL | 32218 | DGJP | $13,332.76 |
| 360 | Elliott, Roger and Allison | 2003 SW Laredo Street | Stuart | FL | 34994 | IP | $17,810.28 |
| 362 | Ellison, Maynard and David | 6060 Jonathan's Bay Circle, Unit 202 | Ft. Myers | FL | 33908 | DIP | $14,453.08 |
| 363 | Eltahawy, Sherif and Leyon, Mikhail | 2195 3rd Lane SW | Vero Beach | FL | 32962 | DHIJP | $8,075.12 |
| 364 | Emandez, Vincent and Doren | 11310 Bridge Pine Drive | Riverview | FL | 33569 | DGHIJLPQ | $17,761.97 |
| 365 | Emerald Greens at Carrollwood, LLC | 13942 Clubhouse Drive (6B) | Tampa | FL | 33618 | DFP | $0.00 |
| 366 | Emerald Greens at Carrollwood, LLC | 4143 Courtside Way (2C) | Tampa | FL | 33618 | DFP | $0.00 |
| 367 | Emerald Greens at Carrollwood, LLC | 4145 Courtside Way (2B) | Tampa | FL | 33618 | DFP | $0.00 |
| 368 | Eng, James and Yvonne | 2520 Cape Coral Parkway | Cape Coral | FL | 33914 | IP | $12,735.78 |
| 369 | Engasser, Paul and Patricia | 1451 NW 39th Avenue | Cape Coral | FL | 33993 | GIJLP | $12,523.79 |

Case 1:12-cv-22408-MGC Document 227-10 Entered on FLSD Docket 08/15/2013 Page 431 of
Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 383 of 647
Taishan - Preliminary Florida Contests and Setoffs

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 370 | Englander, Mark | 1690 Renaissance Commons Blvd., Unit 1508 | Boynton Beach | FL | 33426 | DIJLNPQ | $188,897.96 |
| 371 | Englert, Thomas and Karen | 1657 SW Mackey Avenue | Port St. Lucie | FL | 33973 | DHP | $15,950.53 |
| 372 | Enterprising Management Group, LLC | 7000 West 12 Avenue, Suite 4 | Hialeah | FL | 33014 | AIJMNPQ | $0.00 |
| 373 | Entrust (Edward Adams) | 11843 Bayport Lane 804 | Fort Myers | FL | 33908 | BDGILNPQ | $101,534.44 |
| 374 | Ercolino, Vincent | 1690 Renaissance Commons Blvd., Unit 1206 | Boynton Beach | FL | 33426 | ILNPQ | $190,949.42 |
| 375 | Erickson, William Charles | 161 Partridge Street | Lehigh Acres | FL | 33974 | JP | $0.00 |
| 376 | Escalona, Ileana and Delgado, Ruben | 8141 W 36th Avenue #4 | Hialeah | FL | 33018 | DHJP | $4,547.04 |
| 377 | Escudie, Mary | 4724 Butler National Drive | Wesley Chapel | FL | 33543 | DHIJP | $22,533.29 |
| 378 | Ess (deceased) , Thomas/Judy | 3131 Sea Trawler Bend, #4, North Fort Myers, FL 33903 | North Fort Myers | FL | 33903 | ABDHLNPQ | $774.65 |
| 379 | Estadt, Barry and Jean | 529 Rimini Vista Way | Sun City Center | FL | 33571 | DGHLPQ | $15,321.00 |
| 380 | Estrela, Jose Antonio and Maria Agostinha Estrela as Trustees of the Estrela Family Living Trust under agreement dated the 1st day of April, 2008 | 1690 Renaissance Commons Blvd., Unit 1423 | Boynton Beach | FL | 33426 | HILNPQ | $200,234.58 |
| 381 | Etter, Steven and Cathy | 18894 SE Jupiter Inlet Way | Tequesta | FL | 33469 | DILNPQ | $412,757.78 |
| 382 | Evans, Donald and Barbara | 13944 Clubhouse Drive | Tampa | FL | 33618 | DGHIMPQ | $16,471.97 |
| 383 | Evans, Wessels and Pauline | 5235 Skyline Blvd. | Cape Coral | FL | 33914 | GHJLPQ | $11,571.80 |
| 384 | Ewald, Thomas and Christina | 6050 Jonathan's Bay, Unit 401 | Ft. Myers | FL | 33908 | DGILPQ | $11,959.55 |
| 385 | Ezeogu, Franklin | 3506 E. 11th Ave. | Tampa | FL | 33605 | DGJP | $0.00 |
| 386 | Falke, Maureen | 3224 NE 4 Street | Pompano Beach | FL | 33069 | DGIP | $24,333.67 |
| 388 | Feldkamp, Andrew and Dawn | 5237 Butte Street | Lehigh Acres | FL | 33971 | DGIP | $6,556.93 |
| 389 | Felix, Bruno | 11102 NW 83rd Street #106 | Doral | FL | 33178 | DIJP | $19,172.85 |
| 390 | Feltner, Donna | 4139 Constantine Loop | Wesley Chapel | FL | 33543 | JP | $4,398.54 |

Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 384 of 647
Case 1:11-cv-22408-MGC Document 27 Entered on FLSD Docket 08/15/2011 Page 332 of
Taishan - Preliminary Florida Contests and Setoffs

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 392 | Fernandez, Frederico and Maria | 8061 W 36th Avenue #1 | Hialeah | FL | 33018 | DJP | $4,909.20 |
| 393 | Fernandez, Hely and Fuermayor, Carmen | 15090 SW 16th Street | Davie | FL | 33326 | DHIP | $29,006.45 |
| 394 | Fernandez, Victor and Iris | 402 Lincoln Blvd. | Lehigh Acres | FL | 33936 | IJP | $11,889.36 |
| 395 | Ferrara, Elena | 8031 W. 36th Avenue #4 | Hialeah | FL | 33018 | JP | $4,547.04 |
| 396 | Ferrer, Haydee | 10845 NW 79 Street | Miami | FL | 33178 | JP | $3,844.44 |
| 397 | Ferrigno, Joseph and Christina | 3713 Embers Parkway | Cape Coral | FL | 33993 | DIJP | $25,797.85 |
| 398 | Ferroni, Peter and Christian | 188 SE 2nd Street | Deerfield Beach | FL | 33441 | DGIJP | $7,851.24 |
| 399 | Figueroa, Ramon and Lillian | 4230 Tyler Circle | St. Petersburg | FL | 33771 | DP | $16,652.36 |
| 400 | Filardo, Thomas and Thomas, Jr. | 182 SE 2nd Street | Deerfield Beach | FL | 33441 | IP | $7,272.78 |
| 402 | First CZ Real Estate, LLC (Dan Matousek) | 1909 SW 25th Street | Cape Coral | FL | 33914 | DP | $11,484.91 |
| 403 | Fischer, Dirk | 424 NW 38th Avenue | Cape Coral | FL | 33993 | DHLPQ | $6,020.51 |
| 404 | Fisher, Regina | 1518 Thompson Ave | Lehigh Acres | FL | 33972 | HJP | $7,089.14 |
| 405 | Flaherty, Catherine (nka Catherine Dobbs) | 3501 Grassglen Place | Wesley Chapel | FL | 33544 | DGIJLPQ | $7,019.59 |
| 406 | Flaherty, Sean | 1690 Renaissance Commons Blvd., Unit 1402 | Boynton Beach | FL | 33426 | DLNPQ | $213,633.94 |
| 407 | Flint, Joseph and Sloan, Danielle | 1192 S.W. Kickaboo Road | Port St. Lucie | FL | 34953 | DGJP | $12,035.20 |
| 408 | Flores, David and Vasquez, Monica | 8936 SW 228th Lane | Miami | FL | 33190 | DIJP | $21,052.90 |
| 409 | Floyd, Leroy and Bernadette | 2602 Rhode Island Avenue | Fort Pierce | FL | 34947 | DGP | $16,950.08 |
| 410 | Fluharty, Carson and Charlene | 1706 Graduate Way | Pensacola | FL | 32514 | IP | $18,269.41 |
| 411 | Fong, Charmaine | 9816 Cobblestone Lakes Court | Boynton Beach | FL | 33472 | HP | $24,941.93 |
| 412 | Forest, Gerard and Hopal | 564 Conover Avenue | Palm Bay | FL | 32907 | DIJP | $14,606.83 |
| 413 | Forman, Stephen and Beverly | 254 Mestre Place | North Venice | FL | 34275 | DGP | $30,528.74 |
| 414 | Foster, Gregg | 615-617 Memorial Drive | Sebring | FL | 33870 | GIP | $10,766.72 |
| 415 | Foster, William and Vicki | 10814 Fortina Drive | Ft. Myers | FL | 33913 | LP | $67,078.81 |
| 416 | Fowler, Gerald and Darlene | 1219 Gordon Oaks Drive | Plant City | FL | 33563 | DIJP | $8,154.50 |
| 417 | Fox, Edwin and Lisa | 512 Southwest Camden Avenue | Stuart | FL | 34994 | DIP | $16,751.38 |

Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 385 of 647
Case 2:09-cv-22408-MCE-EEF Document 20 Entered on FLSD Docket 08/13/2013 Page 533 of
999
Taishan - Preliminary Florida Contests and Setoffs

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 418 | Foxwell, Craig and Linda | 11207 Laurel Brook Court | Riverview | FL | 33569 | DJP | $14,190.97 |
| 419 | Francipane, Sal & Susan | 4005 SW 23rd Avenue, Cape Coral, FL 33914 | Cape Coral | FL | 33914 | GJLP | $14,247.91 |
| 420 | Francisco, Thomas and Jane | 1728 Bobcat Trail | North Port | FL | 34288 | DIJP | $17,180.58 |
| 421 | Frank, David and Catherine | 826 King Leon Way | Sun City Center | FL | 33573 | DGP | $14,524.44 |
| 422 | Frankhouser, Roy and Mary | 9853 Whipporwill Trail | Jupiter | FL | 33478 | DGHIP | $17,845.12 |
| 424 | Franklin, Allen and Tiffany | 1133 NW 27th Court Cape | Cape Coral | FL | 33993 | DP | $14,158.93 |
| 425 | Frankze, Julianne and Joshua | 1201 NW 2 Street | Cape Coral | FL | 33993 | DP | $10,000.00 |
| 426 | Frasiolas, Steve and Harriet | 11436 Mountain Ash Circle | Port St. Lucie | FL | 34987 | GIJMPQ | $10,364.18 |
| 427 | Fraveletti, Frank and Carolann | 203 SE 30th Terrace | Cape Coral | FL | 33904 | GP | $13,720.87 |
| 428 | Frazier, Sr., Frank and Jessie | 412 S. First Street | Pensacola | FL | 32507 | IP | $6,125.02 |
| 429 | Freel, Kevin | 2236 Soho Bay Court | Tampa | FL | 33606 | DIJP | $7,452.11 |
| 430 | Freijo, Isis | 8049 W 36th Avenue #7 | Hialeah | FL | 33018 | IJP | $4,506.80 |
| 431 | Frelich, Kathy | 14059 Danpark Loop | Ft. Myers | FL | 33912 | DGJLPQ | $6,919.00 |
| 432 | Freudiger, George | 135 S.W. 57th Terrace | Cape Coral | FL | 33914 | GJLP | $8,054.57 |
| 433 | Fugazy, Lenni and Justin | 157 SE 16th Terrace | Cape Coral | FL | 33990 | DIP | $25,159.25 |
| 434 | Fuller, John and Sandra | 3452 Kentia Palm Court | North Port | FL | 34288 | DGHILNPQ | $116,069.29 |
| 435 | Gaines, Timothy and Julia | 5302 SW 27th Place | Cape Coral | FL | 33914 | GHILPQ | $12,624.88 |
| 438 | Gallegos, Porfirio | 16541 SW 62nd Street | Southwest Ranches | FL | 33331 | GILNPQ | $178,325.86 |
| 439 | Gallucci, Gary and Patricia | 10862 Tiberio Drive | Ft. Myers | FL | 33913 | GHIJLP | $13,000.50 |
| 440 | Galvis, Luis and Beatriz | 9669 Cobblestone Creek Drive | Boynton Beach | FL | 33472 | JP | $24,941.93 |
| 441 | Garcia, Alexander and Sylvia | 8049 West 36th Avenue, Unit #1 | Hialeah | FL | 33018 | HJMPQ | $4,909.20 |
| 442 | Garcia, Armando | 12421 SW 50 Court, Unit 305 | Miramar | FL | 33027 | IMPQ | $8,648.91 |
| 443 | Garcia, Ernesto and Ortega Zilghean | 422 Belle Grove Lane | Royal Palm Beach | FL | 33411 | DHP | $0.00 |
| 444 | Garcia, Irma and Diaz, Marvin | 3479 NE 4th Street | Homestead | FL | 33033 | IJP | $14,506.56 |
| 445 | Garcia, Joseph | 10452 SW Sarah Way | Port St. Lucie | FL | 34987 | HILPQ | $14,976.55 |

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 446 | Garraffa, Ronald and Debra | 13025 Beech Street | Odessa | FL | 33556 | DGHILNPQ | $20,027.73 |
| 447 | Garrett, June | 2310-2312 NE 8th Place | Cape Coral | FL | 33909 | DGJP | $9,379.21 |
| 448 | Garrido, Carlos and Olga | 8111 West 36th Avenue #4 | Hialeah | FL | 33018 | JP | $4,547.04 |
| 449 | Garrity, Scott and Amy | 14820 Ninebark Court | Land O'Lakes | FL | 34638 | IJP | $10,474.42 |
| 450 | Garvey, Stephen and Karen | 11813 Bayport Lane #3 | Ft. Myers | FL | 33908 | DHJPQ | $5,170.91 |
| 451 | Gatchell, David and Linda | 11116 Ancient Futures Drive | Tampa | FL | 33647 | IJP | $7,720.55 |
| 452 | Gatto, Charles | 273 Swan Lane | Jupiter | FL | 33458 | DGJP | $148,395.39 |
| 453 | Gaynor, Peter and Tracy | 6860 Long Leaf Drive | Parkland | FL | 33076 | GIJP | $35,171.03 |
| 454 | Gelman, Aleksandra and Roza | 2849 St. Barts Square | Vero Beach | FL | 33483 | DHP | $18,216.76 |
| 455 | Genta, Michael | 409 Evening Falls Drive | Pensacola | FL | 32534 | DIJP | $6,780.74 |
| 456 | Geraci, Vincent and Joan | 420 NW 38th Avenue | Cape Coral | FL | 33993 | DGP | $10,835.33 |
| 457 | Gerber, Avis and Russell | 3800 Mossy Oak Drive | Ft. Myers | FL | 33905 | DGHIJMPQ | $27,669.26 |
| 458 | Gesualdo, Domenic and Darlene | 3232 NE 4 Street | Pompano Beach | FL | 33062 | DGIP | $131,010.37 |
| 459 | Ghafari, David and Sylvia | 921 Acroft Avenue | Lehigh Acres | FL | 33971 | DIJP | $0.00 |
| 460 | Ghanta, Madhav | 11458 Water Oak Place | Davie | FL | 33330 | BDGIJLNPQ | $0.00 |
| 461 | Giannini Trust, Dominic | 622 SW 31st Street | Cape Coral | FL | 33914 | GHLPQ | $12,641.73 |
| 462 | Giannoussidis, Nikolaos | 1189 Bayport Lane Unit 404 | Ft. Myers | FL | 33908 | GJLPQ | $8,263.99 |
| 463 | Gil, Franklin | 5030 SW 126th Avenue, Unit 205 | Miramar | FL | 33027 | DHIP | $8,648.91 |
| 464 | Gill, Pamela and Theodore | 13464 Little Gem Circle | Ft. Myers | FL | 33913 | BCDGHJLNPQ | $1,197.60 |
| 465 | Gillette, Henry and Jane | 2406 31st Avenue | Tampa | FL | 33610 | DHP | $10,515.75 |
| 466 | Gillman, James c/o Carolyn Houck | 6435 Dallas Avenue | Pensacola | FL | 32526 | IP | $0.00 |
| 467 | Gittens, Dian | 4130 Bismark Palm Drive | Tampa | FL | 33610 | GP | $10,297.84 |
| 469 | Glaum, Leroy and Virginia | 1405 Emerald Dunes Drive #32 | Sun City Center | FL | 33573 | GILNP | $65,117.51 |
| 470 | Glickman, David and Joan | 3236 N.E. 4 Street | Pompano Beach | FL | 33062 | GHILNPQ | $263,517.56 |
| 471 | Glover, Diane | 838 SW Sultan Drive | Port St. Lucie | FL | 34953 | IP | $18,156.60 |
| 472 | Godbee-Awe, Christy | 1319 Rushgrove Circle | Dover | FL | 33527 | IP | $12,142.45 |
| 474 | Gody, Anthony and Candace | 10842 Tiberio Drive | Ft. Myers | FL | 33913 | HIP | $31,150.49 |
| 475 | Goede, John and Kristin | 7527 Bristol Circle | Naples | FL | 34120 | IP | $3,807.89 |

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 476 | Golden, Leonard and Marian | 152 SE 23rd Street | Cape Coral | FL | 33990 | P | $10,092.00 |
| 479 | Golovkin, Sergei and Natalia | 17763 Lake Azure Way | Boca Raton | FL | 33496 | HJLPQ | $30,249.87 |
| 480 | Gomez, Armando and Fran | 1708 Acacia Avenue | Lehigh Acres | FL | 33972 | IJP | $6,147.99 |
| 481 | Gonzalez, Adalberto and Annette | 11336 Bridge Pine Drive | Riverview | FL | 33569 | DHIPQ | $368,689.25 |
| 482 | Gonzalez, Barbara and Mark | 7512 Bridgeview Drive | Westley Chapel | FL | 33545 | DGIP | $7,742.72 |
| 483 | Gonzalez, David | 20401 SW 317 Street | Homestead | FL | 33030 | DP | $0.00 |
| 484 | Gonzalez, Fred | 8908 W 229 Street | Cutler Bay | FL | 33190 | DJP | $14,182.70 |
| 485 | Gonzalez, Jesus A. | 702 Calvin Avenue | Lehigh Acres | FL | 33972 | DHJMPQ | $5,840.90 |
| 486 | Gonzalez, Jose | 2628 SE Export Avenue | Port St. Lucie | FL | 34952 | DGJP | $10,000.00 |
| 487 | Gonzalez, Marcos | 10902 NW 83rd Street #202 | Doral | FL | 33178 | DHJMPQ | $0.00 |
| 488 | Gonzalez, Petra and Castillo, Boris | 8141 West 36th Avenue Unit 3 | Hialeah | FL | 33018 | DJP | $0.00 |
| 489 | Gonzalez, Sergio and Maria | 3171 Sea Trawler Bend Apt. 2 North | Ft. Myers | FL | 33903 | JOP | $14,956.82 |
| 490 | Goodman, Donna | 2630 SE South Blackwell Drive | Port St. Lucie | FL | 34952 | P | $10,752.80 |
| 491 | Gordon, Ryan | 10302 Stone Moss Avenue | Tampa | FL | 33647 | P | $6,000.25 |
| 492 | Gorie, Patrick | 593 SW Columbus Drive | Port St. Lucie | FL | 34953 | DGHP | $83,832.02 |
| 493 | Gorton, Peter and Elaine | 915 Regal Manor Way | Sun City Center | FL | 33573 | JP | $10,047.62 |
| 494 | Gotay, Sandra | 1968 SE 23rd Avenue | Homestead | FL | 33035 | JP | $0.00 |
| 495 | Gottlieb, Patricia | 8841 Sunrise Lakes Blvd., #110 | Sunrise | FL | 33322 | GJLNPQ | $5,595.21 |
| 497 | Grant, Kenneth and Allison | 10400 SW Stephanie Way Unit 105 | Port St. Lucie | FL | 34986 | IJMNP | $7,741.28 |
| 498 | Grant, Tonia | 2412 E 31st Avenue | Tampa | FL | 33610 | DP | $10,672.70 |
| 499 | Grassel, Eric and Svetlana | 3033 Lake Manatee Court | Cape Coral | FL | 33993 | LP | $17,026.83 |
| 500 | Graves, Marvin and Diana | 28505 Talori Terrace | Bonita Springs | FL | 34135 | GILNP | $17,603.08 |
| 501 | Graziano, John and Lisa | 21509 Draycott Way | Land O'Lakes | FL | 34637 | DIP | $37,186.80 |
| 502 | Graziano, Michael and Garcia-Graziano, Francis | 8079 W. 36th Avenue #1 | Hialeah | FL | 33018 | DJP | $4,835.42 |
| 503 | Green, Crystal | 2408 E. 31st Avenue | Tampa | FL | 33610 | DHJP | $0.00 |

Case 1:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 388 of 647
Case 2:09-md-02047-EEF-JCW Document 20 Filed 05/15/2019 Page 536 of 693
Taishan - Preliminary Florida Contests and Setoffs

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 504 | Green, David and Sonia | 3430 Cypress Marsh Drive | Ft. Myers | FL | 33905 | JMP | $16,643.99 |
| 505 | Greenleaf, Julianna | 8026 Marsh Circle | LaBelle | FL | 33935 | GLPQ | $7,972.01 |
| 506 | Gregory, Robert and Fern | 11420 South West Mountain Ash Circle | Port St. Lucie | FL | 34987 | DJP | $9,602.75 |
| 507 | Griffin, David | 9801 Cobblestone Creek Drive | Boynton Beach | FL | 33472 | DP | $10,000.00 |
| 508 | Griffith, Richard and Olga | 142 SW Covington Road | Port St. Lucie | FL | 34953 | DP | $7,726.38 |
| 509 | Gropp, Terry and Hillary | 2530 Boatramp Road | Palm City | FL | 34990 | DIJPQ | $1,062,204.44 |
| 510 | Grout, John and Lynette | 9174 Estero River Circle | Estero | FL | 33928 | DP | $31,066.64 |
| 511 | Grueninger, Susan and Jeffrey | 606 San Antonio Avenue | Coral Gables | FL | 33146 | DJP | $10,000.00 |
| 513 | Guillette, Jason and Melissa | 2525 White Sand Lane | Clearwater | FL | 33763 | DHJP | $4,939.38 |
| 514 | Gutierrez De Garcia, Jose and Maribel | 8127 NW 108th Place | Doral | FL | 33178 | IJLNP | $120,393.18 |
| 515 | H. Harris Investments, Inc. | 4437 Governors Street | Pace | FL | 32571 | IJKP | $3,724.16 |
| 516 | H. Harris Investments, Inc. | 4439 Governors Street | Pace | FL | 32571 | IJKP | $3,724.16 |
| 517 | H. Harris Investments, Inc. | 4441 Governors Street | Pace | FL | 32571 | HIJKP | $3,724.16 |
| 518 | H. Harris Investments, Inc. | 4443 Governors Street | Pace | FL | 32571 | IJKP | $3,724.16 |
| 519 | H. Harris Investments, Inc. | 4445 Governors Street | Pace | FL | 32571 | HIJKP | $3,724.16 |
| 520 | H. Harris Investments, Inc. | 4447 Governors Street | Pace | FL | 32571 | IJKP | $3,724.16 |
| 521 | H. Harris Investments, Inc. | 4451 Governors Street | Pace | FL | 32571 | IJKP | $3,724.16 |
| 522 | H. Harris Investments, Inc. | 4453 Governors Street | Pace | FL | 32571 | HIJKP | $3,724.16 |
| 523 | H. Harris Investments, Inc. | 4453 Nobility Court | Pace | FL | 32571 | IJKP | $4,915.14 |
| 524 | H. Harris Investments, Inc. | 4455 Governors Street | Pace | FL | 32571 | JKP | $3,724.16 |
| 525 | H. Harris Investments, Inc. | 4455 Nobility Court | Pace | FL | 32571 | HIJKP | $4,915.14 |
| 526 | H. Harris Investments, Inc. | 4456 Nobility Court | Pace | FL | 32571 | HIJKP | $4,915.14 |
| 527 | H. Harris Investments, Inc. | 4457 Governors Street | Pace | FL | 32571 | HIJKP | $3,724.16 |
| 528 | H. Harris Investments, Inc. | 4457 Nobility Court | Pace | FL | 32571 | IJKP | $4,915.14 |
| 529 | H. Harris Investments, Inc. | 4458 Governors Street | Pace | FL | 32571 | IJKP | $3,724.16 |
| 530 | H. Harris Investments, Inc. | 4458 Nobility Court | Pace | FL | 32571 | IJKP | $4,915.14 |
| 531 | H. Harris Investments, Inc. | 4459 Governors Street | Pace | FL | 32571 | IJKP | $3,724.16 |
| 532 | H. Harris Investments, Inc. | 4459 Nobility Court | Pace | FL | 32571 | IJKP | $4,915.14 |

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 533 | H. Harris Investments, Inc. | 4460 Governors Street | Pace | FL | 32571 | IJKP | $3,724.16 |
| 534 | H. Harris Investments, Inc. | 4460 Nobility Court | Pace | FL | 32571 | HJKP | $4,915.14 |
| 535 | H. Harris Investments, Inc. | 4461 Governors Street | Pace | FL | 32571 | IJKP | $3,724.16 |
| 536 | H. Harris Investments, Inc. | 4462 Governors Street | Pace | FL | 32571 | JKP | $3,724.16 |
| 537 | H. Harris Investments, Inc. | 4463 Nobility Court | Pace | FL | 32571 | HIJKP | $4,915.14 |
| 538 | H. Harris Investments, Inc. | 4464 Governors Street | Pace | FL | 32571 | IJKP | $3,724.16 |
| 539 | H. Harris Investments, Inc. | 4464 Nobility Court | Pace | FL | 32571 | JKP | $4,915.14 |
| 540 | H. Harris Investments, Inc. | 4465 Governors Street | Pace | FL | 32571 | IJKP | $3,724.16 |
| 541 | H. Harris Investments, Inc. | 4466 Governors Street | Pace | FL | 32571 | JKP | $3,724.16 |
| 542 | H. Harris Investments, Inc. | 4467 Governors Street | Pace | FL | 32571 | IJKP | $3,724.16 |
| 543 | H. Harris Investments, Inc. | 4468 Governors Street | Pace | FL | 32571 | IJKP | $3,724.16 |
| 544 | H. Harris Investments, Inc. | 4469 Governors Street | Pace | FL | 32571 | IJKP | $3,724.16 |
| 545 | H. Harris Investments, Inc. | 4471 Governors Street | Pace | FL | 32571 | IJKP | $3,724.16 |
| 546 | H. Harris Investments, Inc. | 4473 Governors Street | Pace | FL | 32571 | IJKP | $3,724.16 |
| 547 | H. Harris Investments, Inc. | 4475 Governors Street | Pace | FL | 32571 | IJKP | $3,724.16 |
| 548 | H. Harris Investments, Inc. | 4485 Governors Street | Pace | FL | 32571 | JKP | $3,724.16 |
| 549 | H. Harris Investments, Inc. | 4487 Governors Street | Pace | FL | 32571 | JKP | $3,724.16 |
| 550 | H. Harris Investments, Inc. | 4491 Governors Street | Pace | FL | 32571 | HJKP | $3,724.16 |
| 551 | H. Harris Investments, Inc. | 4493 Governors Street | Pace | FL | 32571 | JKP | $3,724.16 |
| 552 | H. Harris Investments, Inc. | 4497 Governors Street | Pace | FL | 32571 | JKP | $3,724.16 |
| 553 | H. Harris Investments, Inc. | 4499 Governors Street | Pace | FL | 32571 | JKP | $3,724.16 |
| 554 | H. Harris Investments, Inc. (Stonecypher, Dannie and Nancy) | 4489 Governor Street | Pace | FL | 32571 | JKP | $3,724.16 |
| 556 | Hahn, Letitia | 1690 Renaissance Commons Blvd., Unit 1221 | Boynton Beach | FL | 33426 | DLNP | $211,861.68 |
| 557 | Hamilton, Roger | 1518 Jefferson Avenue | Lehigh Acres | FL | 33972 | DJP | $7,489.82 |
| 558 | Hamwee, Mark | 2557 Deerfield Lake Court | Cape Coral | FL | 33909 | DJP | $17,628.50 |
| 559 | Hanlon, Patrick and Ann | 3407 West Oakellar Avenue | Tampa | FL | 33611 | HLPQ | $26,106.93 |
| 560 | Hansen, Matt and Tracie | 15009 Wind Whisper Drive | Odessa | FL | 33556 | DJLNPQ | $8,497.52 |

Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 390 of 647
Case 1:11-cv-22408-MGC Document 270-1 Entered on FLSD Docket 08/13/2013 Page 538 of 558
Taishan - Preliminary Florida Contests and Setoffs

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 561 | Hardesty, Richard | 14145 Citrus Crest Circle | Tampa | FL | 33625 | DIP | $8,479.09 |
| 562 | Harikrishnan, Sundaram and Jeeva | 542 Rimini Vista Way | Sun City Center | FL | 33573 | GHJLP | $21,565.77 |
| 563 | Harmer, Barbara and Frank | 6550 Caicos Court | Vero Beach | FL | 32967 | DJMOP | $18,484.16 |
| 564 | Harmer, David and Heidi Kay | 1324 SW 27 Terrace | Cape Coral | FL | 33914 | DHJP | $0.00 |
| 565 | Harris, Ralph and Bain-Harris, Jean | 1601 Eldron Blvd., SE | Palm Bay | FL | 32909 | JP | $5,171.10 |
| 566 | Harrison, Barrie and Hillary | 142 SE 20th Street | Cape Coral | FL | 33990 | DGLPQ | $55,629.08 |
| 567 | Harrison, George and Maria | 6052 NW 116 Drive #19A | Coral Springs | FL | 33076 | DGJP | $17,879.32 |
| 568 | Harrison, Wesley | 6661 Woodland Road | Macclenny | FL | 32063 | JP | $4,197.03 |
| 569 | Harter, Harry and Olga | 2040 NW 1st Street | Cape Coral | FL | 33993 | GHJLPQ | $5,599.97 |
| 570 | Hartmann, Kurt and Tracy | 4013 SW 5th Place | Cape Coral | FL | 33914 | DIP | $0.00 |
| 571 | Hartwell, Terry | 1400 Barth Road | Molino | FL | 32577 | IP | $0.00 |
| 572 | Harumph, LLC | 2841 St. Bart's Square | Vero Beach | FL | 32967 | HLNPQ | $18,216.76 |
| 573 | Harvey, Ronald and Brandy Jr. | 5919 Bilek Drive | Pensacola | FL | 32526 | DHP | $7,248.30 |
| 574 | Haseltine, James and Joanne | 12020 Creole Court | Parrish | FL | 34219 | JLPQ | $19,870.03 |
| 575 | Hasselschwert, Craig and Jane | 8499 Chase Preserve Drive | Naples | FL | 34113 | DGHILNP | $0.00 |
| 576 | Hattemer, Greg and Jennifer | 2202 SW 13th Avenue | Cape Coral | FL | 33991 | P | $14,124.37 |
| 577 | Hatton, Patrick and Jeannette | 10912 Observatory Way | Tampa | FL | 33647 | GJP | $7,247.94 |
| 578 | Hayden, Michael | 1509 NE 35th Street | Cape Coral | FL | 33909 | DJP | $6,930.35 |
| 579 | Haywood, Manisha Adwani | 1690 Renaissance Commons Blvd. Unit 1127 | Boynton Beach | FL | 33426 | DLNP | $187,069.42 |
| 580 | Heath, Jr., Howell and Kathleen | 213 NW 1st Street | Cape Coral | FL | 33993 | JP | $15,110.14 |
| 581 | Heckler, Richard | 12231 Oak Ramble Drive | Spring Hill | FL | 34610 | DGJP | $11,232.67 |
| 582 | Heckman, Gary and Hall, Katherine | 1041 Fish Hook Circle | Bradenton | FL | 34212 | DGJLNP | $470,161.23 |
| 583 | Heinemann, Bernard and Barbara | 5202 SW 28th Place | Cape Coral | FL | 33914 | GLP | $14,096.29 |
| 584 | Heller, James and Barbara | 839 King Leon Way | Sun City Center | FL | 33573 | GJP | $12,344.35 |
| 585 | Helmick, Maria and Timothy | 8931 SW 228th Lane | Miami | FL | 33190 | DHIP | $24,249.00 |
| 586 | Helmkamp, Christopher and Zivile | 306 Mestre Place | North Venice | FL | 34275 | GP | $11,969.40 |

Case 1:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 391 of 647
Case 2:09-md-02047-EEF-MBN Document 22206-2 Filed 03/15/2019 Page 939 of 939
Taishan - Preliminary Florida Contests and Setoffs

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 587 | Helms, Dorothy | 385 Evening Falls Drive | Pensacola | FL | 32534 | DHJP | $3,131.74 |
| 588 | Hembree, Roger and Laura | 8558 Pegasus Drive | Lehigh Acres | FL | 33971 | DHJOP | $44,920.99 |
| 589 | Hendrix, Valentine | 2404 E. 31st Avenue | Tampa | FL | 33610 | P | $3,417.28 |
| 590 | Herbert, Ken and Foglia, Margo | 822 King Leon Way | Sun City Center | FL | 33573 | JP | $12,768.44 |
| 591 | Hernandez, Alexandra | 10902 NW 83rd Street Apt. 7-224 Doral, FL 33178 | Doral | FL | 33178 | DJP | $0.00 |
| 592 | Hernandez, Humberto | 1204 NW 33 Place | Cape Coral | FL | 33993 | GJP | $0.00 |
| 593 | Hernandez, John and Bertha | 3516 N. Perry Avenue | Tampa | FL | 33603 | LP | $13,660.31 |
| 594 | Hernandez, Mario and Jessica | 2716 Blue Cypress Lake Court | Cape Coral | FL | 33909 | DHJP | $18,570.21 |
| 595 | Hernandez, Yenny and Perez, Jorge | 3603 SW 20 Street | Lehigh Acres | FL | 33976 | LPQ | $6,279.90 |
| 596 | Herrera, Francisco and Hernandez, Marisela | 6034 NW 116 Drive | Coral Springs | FL | 33076 | DJP | $0.00 |
| 597 | Herron, Christopher | 4334 Huddleston Drive | Wesley Chapel | FL | 33545 | IP | $7,624.26 |
| 598 | Hickey, Brian and Juliano, Enrico | 4844 NW North Macedo Blvd. | Port St. Lucie | FL | 34983 | DJP | $0.00 |
| 599 | Hicks, Diane | 3802 N. 24th Street | Tampa | FL | 33610 | DJP | $9,789.16 |
| 600 | Himmelberger, Kyle and Mamie | 900 SW Embers Terrace | Cape Coral | FL | 33991 | DJP | $23,228.11 |
| 601 | Hipps, Edd and Mary | 4506 Highland Creek Drive | Plant City | FL | 33567 | P | $12,075.72 |
| 602 | Hirt, Frederick and Ellen | 7814 Classics Drive | Naples | FL | 34113 | JLPQ | $23,205.30 |
| 603 | Hobbie, Wendy Lee | 1690 Renaissance Commons Blvd., Unit 1411 | Boynton Beach | FL | 33426 | DLNP | $210,684.99 |
| 605 | Hoffman, Hannelore and Lengel, Donna | 13964 Clubhouse Drive | Tampa | FL | 33618 | DGP | $17,260.80 |
| 607 | Holland, Roy Trust | 9805 Alhambra Lane | Bonita Springs | FL | 34135 | DGJLPQ | $16,733.77 |
| 608 | Holt, Herschel and Karen | 200 Camp Harberson Lane | Baker | FL | 32531 | GLPQ | $0.00 |
| 609 | Hornbeck, Ronald and Linda | 174 Shadroe Cove Circle Unit 1003 | Cape Coral | FL | 33991 | ILP | $0.00 |
| 611 | Howard, Robert | 8554 Pegasus Drive | Lehigh Acres | FL | 33971 | DJP | $0.00 |

Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 392 of 647
Case 1:11-cv-22408-MGC Document 27 Entered on FLSD Docket 08/15/2011 Page 540 of 1000
Taishan - Preliminary Florida Contests and Setoffs

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 612 | Huard, Eric | 1101 NW 13th Terrace | Cape Coral | FL | 33993 | GHLP | $4,091.14 |
| 613 | Hubbard, Curtis and Michelle | 3617 East Renellie Circle | Tampa | FL | 33629 | GJLP | $15,138.64 |
| 614 | Hueston, Deborah A. | 10320 SW Stephanie Way, Unit 211, Bldg. 7 | Port St. Lucie | FL | 34987 | DJP | $10,912.93 |
| 615 | Huette, David and Jennifer | 3449 Grassglen Place | Wesley Chapel | FL | 33544 | DJP | $8,048.10 |
| 616 | Huff, Jessica | 3832 Hyde Park Drive | Ft. Myers | FL | 33905 | DGHPQ | $98,324.85 |
| 617 | Hughes, Amanda | 5938 Bilek Drive | Pensacola | FL | 32526 | IP | $7,226.13 |
| 618 | Hukriede Larry | 1120 NW 23rd Avenue | Cape Coral | FL | 33993 | JP | $13,984.91 |
| 619 | Hunia, Edward and Mary Sue | 10844 Tiberio Drive | Ft. Myers | FL | 33913 | GLP | $10,238.06 |
| 620 | Hurley, Jonathan and April | 3745 Rockwood Drive | Pace | FL | 32571 | GLP | $4,850.86 |
| 621 | Hussey, John | 4554 SE 6th Court | Cape Coral | FL | 33904 | DGLPQ | $7,493.16 |
| 622 | Huszar, Steve and Nancy | 10838 SW Meeting Street | Port St. Lucie | FL | 34987 | DIP | $4,647.64 |
| 623 | Iannazzi, Ronald and Florence | 813 King Leon Way | Sun City Center | FL | 33573 | GLP | $15,154.79 |
| 624 | Ibarra, Jhon and Hurtatis, Gledys | 363 NE 35th Terrace | Homestead | FL | 33030 | HJP | $14,880.93 |
| 625 | Irani, Jal and Shiraz | 19273 Stone Hedge Drive | Tampa | FL | 33647 | DIJP | $15,867.92 |
| 626 | Irvin, Timothy and Karen | 1690 Renaissance Commons Blvd., Unit 1216 | Boynton Beach | FL | 33426 | LNP | $191,148.40 |
| 627 | Ivory, James | 16315 Maya Circle | Punta Gorda | FL | 33955 | DLNP | $14,814.07 |
| 628 | Jacko, Jan | 519 SE 25 Lane | Cape Coral | FL | 33909 | HJMPQ | $5,064.29 |
| 629 | Jackson, Edmund | 3227 Surfside Blvd. | Cape Coral | FL | 33914 | DGHLNPQ | $311,490.40 |
| 631 | Jackson, Michael | 707 SE 16th Court | Fort Lauderdale | FL | 33316 | DHJP | $0.00 |
| 632 | Jackson, Tiffany (nka Tiffany Jackson Norris) | 6750 Gulley Lane | Pensacola | FL | 32505 | GLPQ | $9,289.51 |
| 633 | Jacobs, Tammy | 3801 Machado Street | Tampa | FL | 33603 | DIP | $0.00 |
| 634 | Jacques, Paul and Michelle | 2336 NW Padova Street | Port St. Lucie | FL | 34986 | DHJP | $22,601.32 |
| 635 | Jaen, Ruben | 10320 Stephanie Way #202 Port St. Lucie, FL 34987 | Port St. Lucie | FL | 34987 | DIP | $0.00 |

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 636 | James, Jason and Jessica | 3850 NW 32nd Place | Cape Coral | FL | 33993 | DP | $29,165.83 |
| 637 | James, Richard and Marion | 804 King Leon Way, Sun City, Florida 33573 | Sun City Center | FL | 33573 | DGP | $14,586.57 |
| 639 | Jarman, Marcus and Jaclyn | 473 Pinebrook Circle | Cantonment | FL | 32533 | DHLPQ | $16,069.37 |
| 641 | Jerome, Nekette | 11609 Hammocks Glade Drive | Riverview | FL | 33569 | DEP | $11,063.75 |
| 642 | Jioia, Perry and Alice | 1690 Renaissance Commons Blvd., Unit 1327 | Boynton Beach | FL | 33426 | DHLNPQ | $199,961.68 |
| 643 | Johansson, Henrik and Jennifer | 27070 Eden Rock Court | Bonita Springs | FL | 34135 | GHIJLP | $18,774.80 |
| 644 | Johnson, Abraham | 11316 Bridge Pine Drive | Riverview | FL | 33569 | DP | $11,865.97 |
| 645 | Johnson, Aiasha and Geoffrey | 190 SE 2nd Street | Deerfield Beach | FL | 33441 | JP | $7,851.24 |
| 646 | Johnson, Andre and Janelle | 11375 Canyon Maple Blvd. | Davie | FL | 33330 | BDGIJLNPQ | $687.81 |
| 647 | Johnson, Christopher | 2024 NW 5th Street | Cape Coral | FL | 33991 | GLNPQ | $10,441.06 |
| 648 | Johnson, Edward and Gail | 2724 SW 36th Lane | Cape Coral | FL | 33914 | GJP | $18,443.85 |
| 649 | Johnson, Marjorie V. and Reuben | 704 SW 23rd Terrace | Cape Coral | FL | 33991 | DJOP | $10,000.00 |
| 650 | Johnson, Michael and Janet | 189 Medici Terrace | North Venice | FL | 34275 | GIJLP | $18,824.89 |
| 651 | Johnson, Simartra | 2410 E. 31st Avenue | Tampa | FL | 33610 | P | $10,672.70 |
| 652 | Joiner, David and Charity | 5505 Perkins Street | Pensacola | FL | 32526 | DP | $12,645.52 |
| 653 | Jones, Brian and Davis, Kimberly | 2015 Sea Ray Shore Drive | Clearwater | FL | 33763 | DGLNPQ | $675.92 |
| 654 | Jones, James and Athena | 13715 Sanford Hill Place | Riverview | FL | 33579 | P | $15,566.73 |
| 655 | Jones, Kenneth | 6079 SE Crooked Oak Avenue | Hobe Sound | FL | 33455 | DGJLNP | $0.00 |
| 656 | Jones, Roosevelt and  Green, Barbara | 1420 Emerald Dunes Drive | Sun City Center | FL | 33573 | HIJLNPQ | $135,495.34 |
| 657 | Jones, Rosetta and Lucious | 4894 Genevive Court | Pensacola | FL | 32526 | HP | $13,941.40 |
| 658 | Joseph, David and Pamela | 514 NW Dover Court | Port St. Lucie | FL | 34983 | GIP | $90,600.10 |
| 659 | Joseph, Leonard | 5768 Rhapsody Avenue | North Port | FL | 34288 | DJP | $10,000.00 |
| 660 | Junco, Jorge | 536 Vincinda Crest Way | Tampa | FL | 33619 | DGP | $11,275.01 |
| 661 | Kallfelz, Marita | 1690 Renaissance Commons Blvd., Unit 1315 | Boynton Beach | FL | 33426 | DHLNPQ | $190,997.42 |

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 662 | Kana, Patrick | 3744 NE 15th Place | Cape Coral | FL | 33909 | DEGHILNPQ | $5,777.29 |
| 663 | Kapalin, Daniel and Danielle | 14115 Stowbridge Avenue | Tampa | FL | 33626 | BDJLNPQ | $630.89 |
| 664 | Karaian, George and Bernadette | 11842 Bayport Lane 2102 | Ft. Myers | FL | 33908 | GHJLNP | $124,933.53 |
| 665 | Karcher, John and Coaker, Deborah | 1730 Old Burnt Store Road North | Cape Coral | FL | 33993 | GJLNP | $22,186.09 |
| 666 | Karlstromer, Steve and Rose | 4976 Seville Court | Cape Coral | FL | 33904 | P | $19,847.91 |
| 667 | Kaufman, Leslie | 1690 Renaissance Commons Blvd., Unit 1307 | Boynton Beach | FL | 33426 | LNP | $203,633.96 |
| 668 | Kaufman/Manley, a General Partnership | 13966 Clubhouse Drive | Tampa | FL | 33618 | GP | $19,466.66 |
| 669 | Kayea, Charles | 5159 9th Street, NE | Ruskin | FL | 33570 | DJP | $12,449.10 |
| 670 | Kehl, Hans and Beate | 4832 SE 24th Place | Cape Coral | FL | 33914 | DGJP | $7,948.01 |
| 671 | Keller, Brad and Kerry | 9950 Via San Marco Loop | Ft. Myers | FL | 33905 | DLNP | $18,617.31 |
| 672 | Kellner, Alan and Ilana | 1690 Renaissance Commons Blvd., Unit 1310 | Boynton Beach | FL | 33426 | LNP | $190,488.78 |
| 674 | Kelly, Francine | 8416 101st Court | Vero Beach | FL | 32967 | DGIP | $20,208.10 |
| 675 | Kelso, Christopher | 4234 Tyler Circle N. #102 B | St. Petersburg | FL | 33709 | IOP | $6,721.43 |
| 676 | Kelson, Sherrie | 5951 Annette Street | Pensacola | FL | 32506 | DHP | $6,915.22 |
| 677 | Kennard, Rick | 11314 Bridge Pine Drive | River View | FL | 33569 | DP | $10,000.00 |
| 678 | Kennedy, William and Perone, Samuel | 7063 Lost Garden Terrace | Parkland | FL | 33076 | CJMPQ | $261,815.36 |
| 679 | Kepler, LLC | 6071 Jonathan's Bay Circle, Unit 501 | Ft. Myers | FL | 33908 | DGJLPQ | $12,862.88 |
| 680 | Khatamian, Houchang and Hazel | 2710 SW 10th Avenue | Cape Coral | FL | 33914 | GJLP | $10,558.18 |
| 681 | Kim, Charles and Helen | 991 Fish Hook Cove | Bradenton | FL | 34212 | DGHLPQ | $21,111.19 |
| 682 | Kim, Mai and Bui, Tom | 8561 Pegasus Drive | Lehigh Acres | FL | 33971 | DJP | $18,203.18 |
| 683 | King, Carolyn and Alfred | 8726 93rd Court | Vero Beach | FL | 32967 | GJMP | $9,917.95 |
| 684 | Kingsnorth, Bob and Grace | 2556 Deerfield Lake Court | Cape Coral | FL | 33993 | HJP | $11,628.67 |
| 685 | Kirchheimer, Roni and Ana | 11443 Laurel Brook Court | Riverview | FL | 33569 | DP | $16,465.28 |
| 686 | Kitney, Selwyn and Deborah | 140 South Dixie Highway #604 | Hollywood | FL | 33020 | P | $8,632.33 |
| 687 | Knight, Rosemary | 21311 Morning Mist Way | Land O'Lakes | FL | 34637 | HLPQ | $649.03 |
| 688 | Knowles, Timothy and Tosha | 7636 Killiam Road | Century | FL | 32535 | GLP | $7,259.28 |

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 689 | Kobzar, Paul and Millie | 3316 19th Street SW | Lehigh Acres | FL | 33872 | DGJLPQ | $10,078.04 |
| 690 | Kolich, John and Susanna | 1690 Renaissance Commons Blvd., Unit 1519 | Boynton Beach | FL | 33426 | DLNP | $189,912.27 |
| 691 | Kotajarvi, Peter | 4141 Courtside Way | Tampa | FL | 33618 | DP | $26,298.15 |
| 692 | Kovens, Arthur and Martha | 1660 Renaissance Commons Blvd., Unit 2527 | Boynton Beach | FL | 33426 | DHJLNP | $215,562.66 |
| 694 | Kramer, Dan and Carolyn | 3245 Sundance Circle | Naples | FL | 34109 | JLP | $10,816.51 |
| 695 | Kranz, Helene | 8644 Athena Court | Lehigh Acres | FL | 33971 | DP | $8,837.63 |
| 696 | Krause, Donald | 11685 Bald Eagle Way | Naples | FL | 34120 | DGIJMNPQ | $419.71 |
| 697 | Krause, Howard as Trustee of the Naomi Krause Revocable Trust | 1690 Renaissance Commons Blvd, Unit 1109 | Boynton Beach | FL | 33426 | GLNP | $193,817.76 |
| 698 | Kropf, Leneva Jean | 1690 Renaissance Commons Blvd., Unit 1205 | Boynton Beach | FL | 33426 | GLNP | $198,854.62 |
| 699 | Krueckel, Susanne and Schneider, Wolfgang | 2724 SW 25th Street | Cape Coral | FL | 33914 | GJP | $0.00 |
| 700 | Kurtz, Charles and Betty | 1306 Little Alafia Drive | Plant City | FL | 33567 | DP | $21,044.54 |
| 701 | Lacey-Fredette, Susan | 2229 SE 5th Court | Cape Coral | FL | 33990 | DIP | $19,580.02 |
| 702 | Ladd Holdings, LLC | 3111 Bayshore Blvd. | St. Petersburg | FL | 33703 | DGHLP | $49,241.81 |
| 703 | LaGambina, Angelo and Anna | 1142 SW Kickaboo Road | Port St. Lucie | FL | 34953 | P | $12,035.20 |
| 704 | Lalwani, Gul and Deborah | 4590 Kodiak Drive | Vero Beach | FL | 32967 | DP | $23,745.31 |
| 705 | Lamonge, Yves | 906 E. 10th Street | Lehigh Acres | FL | 33972 | DP | $12,465.28 |
| 708 | Lang, Dennis and Karen | 1717 NE 4th Place | Cape Coral | FL | 33909 | JP | $17,514.84 |
| 709 | Larrazabal, Alejandro | 10902 NW 83rd Street Apt. 212 | Doral | FL | 33178 | DJP | $8,400.24 |
| 710 | Larry, Rosemarie | 700 Geddes St. SW | Palm Beach | FL | 32908 | DP | $1,219.22 |
| 711 | Latona, Giovanni and Christine | 2056 NE 20th Terrace | Cape Coral | FL | 33909 | DP | $10,000.00 |
| 712 | Lau, Donald K. Trustee | 13936 Clubhouse Drive | Tampa | FL | 33618 | DP | $16,966.66 |
| 713 | Laurent, Roland and Marie | 506 Tropicana Parkway W. | Cape Coral | FL | 33993 | GHJLPQ | $15,491.30 |

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 396 of 544
Case 1:11-cv-22408-MGC Document 27 Entered on FLSD Docket 08/15/2013 Page 396 of 999
Taishan - Preliminary Florida Contests and Setoffs

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 714 | Lavin, Eduardo and Esperanza , Escalona, Ileana and Delgado, Ruben | 8141 W 36th Avenue #5 | Hialeah | FL | 33018 | DHJP | $0.00 |
| 715 | Layton, Clark | 3208 39th Street West | Lehigh Acres | FL | 33971 | DGJMPQ | $5,298.52 |
| 716 | Lazaro, Jesus and Teresita | 4225 NW 21st Street | Cape Coral | FL | 33993 | P | $8,330.60 |
| 717 | Leach, Kenneth and Dinah | 19412 La Serena Drive | Ft. Myers | FL | 33967 | GHJLNPQ | $4,108.18 |
| 720 | Leger, Marie | 3803 Machado Street | Tampa | FL | 33610 | P | $10,672.70 |
| 721 | Lehmann, Horst and Linda | 10512 SW Sarah Way | Port St. Lucie | FL | 34981 | DIJP | $10,000.00 |
| 722 | Lemberg, Mark and Diana | 1690 Renaissance Commons Blvd., Unit 1328 | Boynton Beach | FL | 33426 | HLNP | $187,457.70 |
| 723 | Leon, Aldo and Tonya | 2656 Juniper Lane | Davie | FL | 33330 | BGIJLNPQ | $0.00 |
| 724 | Leon, Daimarys and  Rodriguez, Yalier | 8111 W 36th Avenue Unit #6 | Hialeah | FL | 33018 | IJP | $7,409.20 |
| 725 | Leon, Pablo | 700 SW 6th Court | Pompano Beach | FL | 33060 | DGIJOP | $7,946.71 |
| 726 | Lester, John and Jacine and Schiller, Larry | 13861 Fern Trail | N.Fort Myers | FL | 33903 | GHIJLNPQ | $120,180.37 |
| 727 | Lester, John and Jacine and Schiller, Larry | 1901 NE 4th Place | Cape Coral | FL | 33909 | DP | $20,453.99 |
| 728 | Lester, John and Jacine and Schiller, Larry | 921 NW 8th Place | Cape Coral | FL | 33993 | DP | $11,495.64 |
| 729 | Lester, Lorainne | 435 S. Oregon Avenue, Unit 401 | Tampa | FL | 33606 | DP | $24,967.83 |
| 731 | Levitan, Rosaliya | 81 Port Royal Drive | Palm Coast | FL | 32164 | DHJP | $11,557.25 |
| 732 | Lewis, Eloise | 817 King Leon Way | Sun City Center | FL | 33573 | DP | $22,821.72 |
| 733 | Lewis, Lesley | 1690 Renaissance Commons Blvd, Unit 1223 | Boynton Beach | FL | 33426 | LNPQ | $200,677.66 |
| 734 | Licon, Eddie | 10715 Rockledge View Drive | Riverview | FL | 33579 | DP | $17,621.55 |
| 735 | Lindenfeld, Helene (3178 New York, LLC) | 3178 New York St. | Miami | FL | 33133 | DHIP | $17,263.81 |
| 736 | Lindsay, Horace and Donna | 2804 St. Bart's Square | Vero Beach | FL | 32967 | DHP | $80,967.89 |
| 737 | Lippold, Patricia and Hibbs, Janet | 2214 Siefield Greens Way | Sun City Center | FL | 33573 | P | $10,896.63 |
| 738 | Lister, Mindy and Martin | 1698 Brightleaf Circle | Cantonment | FL | 32533 | DLNP | $320,772.89 |
| 739 | Lizotte, Richard and  Robichaux, Ronald, Jr. | 2120 Sifield Greens Way | Sun City Center | FL | 33573 | DGJP | $19,171.89 |

Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 397 of 647
Case 1:11-cv-22408-MGC Document 27 Entered on FLSD Docket 08/15/2011 Page 545 of
647
Taishan - Preliminary Florida Contests and Setoffs

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 740 | Lizotte, Richard and Robichaux, Ronald, Jr. | 2124 Siefield Greens Way | Sun City Center | FL | 33573 | DGJP | $19,733.43 |
| 741 | LJPTRD, LLC - Patricia Sanford (POA) | 3853 Albacete Circle | Punta Gorda | FL | 33950 | DIP | $10,113.19 |
| 742 | Lloyd, William and Jenny | 8131 200th Street | McAlpin | FL | 32062 | GP | $0.00 |
| 743 | Loader, Jennifer C. | 3918 West Bay Court Avenue | Tampa | FL | 33611 | DGP | $0.00 |
| 744 | Londono, Mauricio | 4635 Rolling Green Drive | Wesley Chapel | FL | 33543 | P | $14,313.77 |
| 745 | Lonergan, John, Sr. | 393 NW Stratford Lane | Port St. Lucie | FL | 34983 | DIJP | $13,731.09 |
| 746 | Look, Peter | 2125 Santa Barbara Boulevard | Cape Coral | FL | 33990 | DGJLPQ | $9,328.96 |
| 747 | Lopez, Abner | 1009 Chadbourne Avenue | Lehigh Acres | FL | 33971 | GJLPQ | $0.00 |
| 748 | Lopez, Carlos and Talento, Irisol | 1617 Southeast 21st Street | Cape Coral | FL | 33990 | DJMP | $13,894.97 |
| 749 | Lopez, David and Yesenia | 8141 West 36th Avenue, Unit 6 | Hialeah | FL | 33018 | JP | $4,909.20 |
| 750 | Lopez, Rebekah | 1940 SE 23 Avenue | Homestead | FL | 33035 | DJP | $0.00 |
| 751 | Lopez, Stephen | 622 Wilmington Parkway | Cape Coral | FL | 33993 | LNPQ | $97,039.28 |
| 752 | Lor, Sivhout and Yi Phung | 10531 SW Sarah Way | Port St. Lucie | FL | 34987 | DJP | $17,494.78 |
| 753 | Lorenzo, Lisandro | 6097 NW 116th Drive | Coral Spring | FL | 33076 | DJP | $3,111.19 |
| 754 | Love, Nakisha | 2540 Middleton Grove Drive | Brandon | FL | 33511 | JP | $11,979.04 |
| 755 | Lowande, Paul and Renee | 2308 NE Juanita Place | Cape Coral | FL | 33909 | DGP | $12,114.67 |
| 756 | Lugo, Marcela and Rafael | 1951 SW 22 Drive | Homestead | FL | 33035 | HIJLPQ | $0.00 |
| 757 | Lumar, Semyon and Darina | 11825 Bayport Lane, Unit #4 | Ft. Myers | FL | 33908 | GJLPQ | $10,177.29 |
| 758 | Lumare Properties c/o Mauricio Reyes Henao | 3301 NE 183rd Street Unit #2005 | Aventura | FL | 33160 | DGIP | $29,370.11 |
| 759 | Luna Ocean Residences Condominium Association, Inc. | 704 N. Ocean Blvd., Hallways and Vestibules, Pompano Beach, FL 33062 | Pompano Beach | FL | 33062 | EIMPQ | $51,699.69 |
| 760 | Luna Ocean Residences Condominium Association, Inc. | 704 N. Ocean Blvd., Unit 1001 | Pompano Beach | FL | 33062 | EIMNPQ | $13,337.16 |
| 761 | Luna Ocean Residences Condominium Association, Inc. | 704 N. Ocean Blvd., Unit 1002 | Pompano Beach | FL | 33062 | EIMNPQ | $13,026.77 |

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 762 | Luna Ocean Residences Condominium Association, Inc. | 704 N. Ocean Blvd., Unit 1003 | Pompano Beach | FL | 33062 | EIMNPQ | $11,702.75 |
| 763 | Luna Ocean Residences Condominium Association, Inc. | 704 N. Ocean Blvd., Unit 1004 | Pompano Beach | FL | 33062 | EIMPQ | $13,860.95 |
| 764 | Luna Ocean Residences Condominium Association, Inc. | 704 N. Ocean Blvd., Unit 402 | Pompano Beach | FL | 33062 | EIP | $13,026.77 |
| 765 | Luna Ocean Residences Condominium Association, Inc. | 704 N. Ocean Blvd., Unit 601 | Pompano Beach | FL | 33062 | EIMPQ | $13,337.16 |
| 766 | Luna Ocean Residences Condominium Association, Inc. | 704 N. Ocean Blvd., Unit 602 | Pompano Beach | FL | 33062 | EIMNPQ | $13,026.77 |
| 767 | Luna Ocean Residences Condominium Association, Inc. | 704 N. Ocean Blvd., Unit 603 | Pompano Beach | FL | 33062 | EIMNPQ | $11,702.75 |
| 768 | Luna Ocean Residences Condominium Association, Inc. | 704 N. Ocean Blvd., Unit 604 | Pompano Beach | FL | 33062 | EIMNPQ | $13,860.95 |
| 769 | Luna Ocean Residences Condominium Association, Inc. | 704 N. Ocean Blvd., Unit 701 | Pompano Beach | FL | 33062 | EIP | $13,337.16 |
| 770 | Luna Ocean Residences Condominium Association, Inc. | 704 N. Ocean Blvd., Unit 702 | Pompano Beach | FL | 33062 | EIMNPQ | $13,026.77 |
| 771 | Luna Ocean Residences Condominium Association, Inc. | 704 N. Ocean Blvd., Unit 703 | Pompano Beach | FL | 33062 | EIMNPQ | $11,702.75 |
| 772 | Luna Ocean Residences Condominium Association, Inc. | 704 N. Ocean Blvd., Unit 704 | Pompano Beach | FL | 33062 | EIMNPQ | $13,860.95 |
| 773 | Luna Ocean Residences Condominium Association, Inc. | 704 N. Ocean Blvd., Unit 801 | Pompano Beach | FL | 33062 | EIMNPQ | $13,337.16 |
| 774 | Luna Ocean Residences Condominium Association, Inc. | 704 N. Ocean Blvd., Unit 901 | Pompano Beach | FL | 33062 | EIP | $13,337.16 |
| 775 | Luna Ocean Residences Condominium Association, Inc. | 704 N. Ocean Blvd., Unit 902 | Pompano Beach | FL | 33062 | EIMNPQ | $13,026.77 |
| 776 | Luna Ocean Residences Condominium Association, Inc. | 704 N. Ocean Blvd., Unit 903 | Pompano Beach | FL | 33062 | EIMNPQ | $11,702.75 |

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 777 | Luna Ocean Residences Condominium Association, Inc. | 704 N. Ocean Blvd., Unit 904 | Pompano Beach | FL | 33062 | EIMNPQ | $13,860.95 |
| 778 | Lundberg, Richard & Kathleen | 2116 SW 28th Lane | Cape Coral | FL | 33914 | IJP | $86,923.21 |
| 779 | Lundy, William and Gena | 8820 Hwy. 89 | Milton | FL | 32570 | HMPQ | $8,200.71 |
| 780 | Luntz, George and Adrienne | 1660 Renaissance Commons Blvd., Unit 2501 | Boynton Beach | FL | 33426 | IJLNPQ | $186,899.08 |
| 781 | Lyda, Frank and Janette | 8555 Pegasus Drive | Lehigh Acres | FL | 33971 | HJMNPQ | $132,284.44 |
| 782 | Lynch, Robert and Colette | 5012 SE Mariner Garden Circle | Stuart | FL | 34997 | IP | $10,228.12 |
| 783 | Machado, William Bicelis and Lopez, Franyelina | 14721 SW 6 Street | Pembroke Pines | FL | 33027 | GHILNPQ | $0.00 |
| 784 | Macrory, Ann | 544 Bimini Bay Blvd. | Apollo Beach | FL | 33572 | DIJP | $16,849.01 |
| 785 | Macrory, Ann | 558 Bimini Bay Blvd. | Apollo Beach | FL | 33572 | DIJP | $16,849.01 |
| 786 | Madera, Eligio and Belkys | 1301 SW Parma Avenue | Port St. Lucie | FL | 34953 | P | $7,699.73 |
| 788 | Madigan, Murphy | 1660 Renaissance Commons Blvd., Unit 2119 | Boynton Beach | FL | 33426 | IJLNPQ | $186,899.10 |
| 789 | Madonia, Joseph | 10848 Tiberio Drive | Ft. Myers | FL | 33913 | DIJMP | $30,214.00 |
| 790 | Madrigal, Wsvaldo and Martha | 2716 16th Street West | Lehigh Acres | FL | 33971 | DP | $10,963.48 |
| 791 | Magdalena Gardens Condo Association | 240 W. End Avenue Unit 1213 | Punta Gorda | FL | 33950 | EIJMPQ | $8,690.56 |
| 792 | Magdalena Gardens Condo Association (Thomas and Cathy Arnold) | 240 W. End Avenue Unit 312 | Punta Gorda | FL | 33950 | EIJMPQ | $8,570.23 |
| 793 | Magdalena Gardens Condo Association (Golin, Steven and Karen) | 240 W. End Avenue Unit 513 | Punta Gorda | FL | 33950 | EIMPQ | $8,690.56 |
| 794 | Magdalena Gardens Condo Association | 240 W. End Avenue Unit 713 | Punta Gorda | FL | 33950 | EHIJMPQ | $8,690.56 |
| 795 | Magdalena Gardens Condo Association | 240 W. End Avenue Unit 822 | Punta Gorda | FL | 33950 | EGIJMPQ | $10,381.88 |
| 796 | Magdalena Gardens Condo Association (Scott Forbes) | 240 W. End Avenue, Unit 1011 | Punta Gorda | FL | 33950 | EHIMPQ | $8,690.56 |
| 797 | Magdalena Gardens Condo Association (Scott Forbes) | 240 W. End Avenue, Unit 1012 | Punta Gorda | FL | 33950 | EHIJMPQ | $8,570.23 |
| 798 | Magdalena Gardens Condo Association (Scott Forbes) | 240 W. End Avenue, Unit 1013 | Punta Gorda | FL | 33950 | EHIJMPQ | $8,690.56 |
| 799 | Magdalena Gardens Condo Association | 240 W. End Avenue, Unit 111 | Punta Gorda | FL | 33950 | EIJMPQ | $8,690.56 |

Case 2:09-md-02047-EEF-MBN Document 22207-10 Filed 12/09/19 Page 400 of 647
Case 1:11-cv-22408-MGC Document 270 Entered on FLSD Docket 08/13/2019 Page 548 of 599
Taishan - Preliminary Florida Contests and Setoffs

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 800 | Magdalena Gardens Condo Association (Raloi, LLC) | 240 W. End Avenue, Unit 1212 | Punta Gorda | FL | 33950 | EIMPQ | $8,570.23 |
| 801 | Magdalena Gardens Condo Association | 240 W. End Avenue, Unit 1221 | Punta Gorda | FL | 33950 | EIJMPQ | $77,114.11 |
| 802 | Magdalena Gardens Condo Association | 240 W. End Avenue, Unit 123 | Punta Gorda | FL | 33950 | EGIJMPQ | $10,642.60 |
| 803 | Magdalena Gardens Condo Association (Beni Brik) | 240 W. End Avenue, Unit 1311 | Punta Gorda | FL | 33950 | EHIJMPQ | $8,690.56 |
| 804 | Magdalena Gardens Condo Association (Beni Brik) | 240 W. End Avenue, Unit 1312 | Punta Gorda | FL | 33950 | EHJMPQ | $8,570.23 |
| 805 | Magdalena Gardens Condo Association (Humpreys, Thomas) | 240 W. End Avenue, Unit 1321 | Punta Gorda | FL | 33950 | EIJMPQ | $10,642.60 |
| 806 | Magdalena Gardens Condo Association | 240 W. End Avenue, Unit 1322 | Punta Gorda | FL | 33950 | EIJMPQ | $44,049.02 |
| 807 | Magdalena Gardens Condo Association (Humphreys, Thomas) | 240 W. End Avenue, Unit 1323 | Punta Gorda | FL | 33950 | EIJMPQ | $10,642.60 |
| 808 | Magdalena Gardens Condo Association (Marston, Claire) | 240 W. End Avenue, Unit 1412 | Punta Gorda | FL | 33950 | EGHIJMPQ | $8,570.23 |
| 809 | Magdalena Gardens Condo Association (Intelconst Investments, LLC) | 240 W. End Avenue, Unit 1521 | Punta Gorda | FL | 33950 | EIMPQ | $95,356.56 |
| 810 | Magdalena Gardens Condo Association | 240 W. End Avenue, Unit 1522 | Punta Gorda | FL | 33950 | EHIJMPQ | $10,381.88 |
| 811 | Magdalena Gardens Condo Association | 240 W. End Avenue, Unit 211 | Punta Gorda | FL | 33950 | EHIJMPQ | $8,690.56 |
| 812 | Magdalena Gardens Condo Association | 240 W. End Avenue, Unit 212 | Punta Gorda | FL | 33950 | EGIJMNPQ | $8,570.23 |
| 813 | Magdalena Gardens Condo Association | 240 W. End Avenue, Unit 222 | Punta Gorda | FL | 33950 | EHIJMNPQ | $10,381.88 |
| 814 | Magdalena Gardens Condo Association (Kelly Gaylord) | 240 W. End Avenue, Unit 321 | Punta Gorda | FL | 33950 | EIJMPQ | $10,642.60 |
| 815 | Magdalena Gardens Condo Association (Kelly Gaylord) | 240 W. End Avenue, Unit 322 | Punta Gorda | FL | 33950 | EHIJMPQ | $10,381.88 |

Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 401 of 647
Case 2:11-cv-22408-MCE-Document 2-10 Entered on FLSD Docket 09/15/2019 Page 549 of
609
Taishan - Preliminary Florida Contests and Setoffs

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 816 | Magdalena Gardens Condo Association | 240 W. End Avenue, Unit 411 | Punta Gorda | FL | 33950 | EGIMPQ | $8,690.56 |
| 817 | Magdalena Gardens Condo Association (Siegward Osicki) | 240 W. End Avenue, Unit 413 | Punta Gorda | FL | 33950 | EIMPQ | $8,690.56 |
| 818 | Magdalena Gardens Condo Association | 240 W. End Avenue, Unit 511 | Punta Gorda | FL | 33950 | EGIMPQ | $8,690.56 |
| 819 | Magdalena Gardens Condo Association (Mark and Wendy Lee) | 240 W. End Avenue, Unit 512 | Punta Gorda | FL | 33950 | EIMPQ | $8,570.23 |
| 820 | Magdalena Gardens Condo Association (ITSM Corp.) | 240 W. End Avenue, Unit 711 | Punta Gorda | FL | 33950 | EIJMPQ | $8,690.56 |
| 821 | Magdalena Gardens Condo Association | 240 W. End Avenue, Unit 712 | Punta Gorda | FL | 33950 | EIJMPQ | $8,570.23 |
| 822 | Magdalena Gardens Condo Association (Luis Gamboa) | 240 W. End Avenue, Unit 723 | Punta Gorda | FL | 33950 | EFJP | $10,642.60 |
| 823 | Magdalena Gardens Condo Association | 240 W. End Avenue, Unit 812 | Punta Gorda | FL | 33950 | EGIJMPQ | $8,570.23 |
| 824 | Magdalena Gardens Condo Association | 240 W. End Avenue, Unit 813 | Punta Gorda | FL | 33950 | EHIJMPQ | $8,690.56 |
| 825 | Magdalena Gardens Condo Association (Jorda, Carlos and Dalia) | 240 W. End Avenue, Unit 912 | Punta Gorda | FL | 33950 | EIMPQ | $8,570.23 |
| 826 | Magdalena Gardens Condo Association | 240 W. End Avenue, Unit 921 | Punta Gorda | FL | 33950 | EIJMPQ | $142,324.21 |
| 827 | Magdalena Gardens Condo Association | 240 W. End Avenue, Unit 922 | Punta Gorda | FL | 33950 | EHIJMPQ | $2,076.37 |
| 828 | Magdalena Gardens Condo Association (Marston, Claire) | 240 W. End Avenue, Unit 923 | Punta Gorda | FL | 33950 | EHIJMPQ | $10,642.60 |
| 829 | Magdalena Gardens Condo Association | 240 West End Avenue, Unit 1223 | Punta Gorda | FL | 33950 | EIJMPQ | $146,095.77 |
| 830 | Magdalena Gardens Condo Association (Albacete, Alfonso and Anzola, Francisco) | 240 West End Avenue, Unit 1313 | Punta Gorda | FL | 33950 | EMPQ | $38,635.05 |
| 831 | Magdalena Gardens Condo Association (Amorin, Eduardo and Carmen) | 240 W. End Avenue, Unit 721 | Punta Gorda | FL | 33950 | EIJMPQ | $10,642.60 |

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 832 | Magdalena Gardens Condo Association (Anderson, Samuel Gregory) | 240 W. End Drive, Unit 911 | Punta Gorda | FL | 33950 | EHMPQ | $18,690.56 |
| 833 | Magdalena Gardens Condo Association (Brown, Cortland) | 240 W. End Drive Unit 1512 | Punta Gorda | FL | 33950 | EDHJKNPQ | $8,570.23 |
| 834 | Magdalena Gardens Condo Association (Divanno, Michael F.) | 240 W. End Avenue, Unit 913 | Punta Gorda | FL | 33950 | EIKMPQ | $8,690.56 |
| 835 | Magdalena Gardens Condo Association (Fabio Rainuzzo) | 240 W. End Avenue Unit 722 | Punta Gorda | FL | 33950 | EIJMPQ | $10,381.88 |
| 836 | Magdalena Gardens Condo Association (Ferger, Gary) | 240 W. End Avenue, Unit 1422 | Punta Gorda | FL | 33950 | EIMNPQ | $10,381.88 |
| 837 | Magdalena Gardens Condo Association (Herston, James) | 240 W. End Avenue, Unit 421 | Punta Gorda | FL | 33950 | EHIJMNPQ | $10,642.60 |
| 838 | Magdalena Gardens Condo Association (John Katarsky) | 240 W. End Avenue Unit 323 | Punta Gorda | FL | 33950 | EHIJMPQ | $10,642.60 |
| 839 | Magdalena Gardens Condo Association (King Properties) | 240 W. End Avenue, Unit 1511 | Punta Gorda | FL | 33950 | EIMPQ | $8,690.56 |
| 840 | Magdalena Gardens Condo Association (Mario Massaro) | 240 W. End Avenue Unit 823 | Punta Gorda | FL | 33950 | EHIJMPQ | $10,642.60 |
| 841 | Magdalena Gardens Condo Association (Martzluff, Paul) | 240 W. End Avenue, Unit 412 | Punta Gorda | FL | 33950 | EHIMPQ | $8,570.23 |
| 842 | Magdalena Gardens Condo Association (Perez, Gustavo) | 240 W. End Avenue, Unit 1421 | Punta Gorda | FL | 33950 | EIMPQ | $10,642.60 |
| 843 | Magdalena Gardens Condo Association (Tom Arnold) | 240 W. End Avenue Unit 311 | Punta Gorda | FL | 33950 | EGIJMPQ | $8,690.56 |
| 844 | Maguire, Vincent and Wende | 11503 Mountain Bay Drive | Riverview | FL | 33569 | DGP | $12,621.38 |
| 845 | Malhoe, Ashok | 1617 SE 21st Street | Cape Coral | FL | 33990 | DEFJP | $2,500.00 |

Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 403 of 647
Case 2:12-cv-22408-MCE Document 27 Entered on FLSD Docket 08/15/2019 Page 951 of
1000
Taishan - Preliminary Florida Contests and Setoffs

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 846 | Malkki, Donna and Clough, Daniel | 10400 SW Stephanie Way Building 5, Unit 208 | Port St. Lucie | FL | 34986 | DJP | $10,000.00 |
| 847 | Mallin, Karen and Jonathan | 3008 West San Carlos Street | Tampa | FL | 33629 | DHJLNPQ | $0.00 |
| 848 | Maloy, Jack and Louise | 1328 SW 4th Avenue | Cape Coral | FL | 33991 | HIJP | $207,300.50 |
| 849 | Mancini, Richard | 11813 Bayport Lane 304 | Ft. Myers | FL | 33908 | JP | $7,938.99 |
| 850 | Mancuso, Robert and Lorraine | 812 King Leon Way | Sun City Center | FL | 33573 | GJLP | $14,504.55 |
| 851 | Mandel, Lee | 3750 Birch Terrace | Davie | FL | 33330 | GIJMP | $40,371.03 |
| 852 | Maness, Danielle Lee | 1690 Renaissance Commons Blvd., Unit 1128 | Boynton Beach | FL | 33426 | ILNPQ | $193,817.76 |
| 853 | Maniscalco, Frank and Grace | 11853 Bayport Lane #4 | Ft. Myers | FL | 33908 | DGIP | $11,578.60 |
| 854 | Manserra, Agostino and Teresa | 4275 Tyler Circle Street | St. Petersburg | FL | 33709 | DP | $10,000.00 |
| 855 | Manso, Jose | 8099 W. 36th Avenue #4 | Hialeah | FL | 33018 | JP | $0.00 |
| 856 | Mantuo, Joe Ellen | 11001 Gulf Reflections Drive Unit A308 | Ft. Myers | FL | 33908 | DP | $11,652.04 |
| 858 | Maradona, Michael and Arlen | 20516 Ardore Lane | Estero | FL | 33928 | DGJP | $19,427.78 |
| 860 | Marin, Cassandra | 3865 SW Wycoff Street | Port St. Lucie | FL | 34953 | DP | $12,627.66 |
| 861 | Marin, Jose and Monica | 8904 SW 229th Street | Miami | FL | 33190 | DJP | $10,000.00 |
| 862 | Marinell, Derek | 1047 Gladys Street | Lehigh Acres | FL | 33974 | GJLPQ | $0.00 |
| 863 | Mariner Village Investments LLC | 4987 Mariner Garden Circle | Stuart | FL | 34997 | DGIJLNPQ | $123,334.26 |
| 864 | Mariner Village Investments LLC | 4991 Mariner Garden Circle | Stuart | FL | 34997 | DGILNPQ | $130,412.87 |
| 865 | Mariner Village Investments LLC | 4996 Mariner Garden Circle | Stuart | FL | 34997 | DGHIMNPQ | $15,993.04 |
| 866 | Mariner Village Investments LLC | 4999 Mariner Garden Circle | Stuart | FL | 34997 | DGIJLNPQ | $148,801.86 |
| 867 | Mariner Village Investments LLC | 5008 Mariner Garden Circle | Stuart | FL | 34997 | DGIJLNPQ | $23,838.87 |

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 868 | Mariner Village Investments LLC | 5011 Mariner Garden Circle | Stuart | FL | 34997 | DGILNPQ | $16,474.37 |
| 869 | Mariner Village Investments LLC | 5015 Mariner Garden Circle | Stuart | FL | 34997 | DGILNPQ | $46,834.17 |
| 870 | Mariner Village Investments LLC | 5016 Mariner Garden Circle | Stuart | FL | 34997 | DGILNPQ | $15,993.04 |
| 871 | Mariner Village Investments LLC | 5043 Mariner Garden Circle | Stuart | FL | 34997 | DGIJLNPQ | $98,567.88 |
| 872 | Mariner Village Investments LLC | 5072 Mariner Garden Circle | Stuart | FL | 34997 | DGIJLNPQ | $156,063.51 |
| 873 | Mariner Village Investments LLC | 5128 Mariner Garden Circle | Stuart | FL | 34997 | DGHIJMNPQ | $16,628.12 |
| 874 | Mariner Village Investments LLC | 5144 Mariner Garden Circle | Stuart | FL | 34997 | DGHIJMNPQ | $16,474.37 |
| 875 | Mariner Village Investments LLC | 5156 Mariner Garden Circle, Stuart, FL 34997 | Stuart | FL | 34997 | DGHIJMNPQ | $16,628.12 |
| 876 | Marion, James | 1172 South West Kickaboo Road | Port St. Lucie | FL | 34953 | DGJP | $12,643.87 |
| 877 | Mark, Ray Rae, Pamela Burke and Oltz, Marcia | 11324 Bridge Pine Drive | Riverview | FL | 33569 | DIP | $15,261.97 |
| 878 | Marlinga, Don and Janice | 11697 Bald Eagle Way | Naples | FL | 34119 | DJP | $0.00 |
| 879 | Marquez, Jodie | 8874 SW 229 Street | Miami | FL | 33190 | JMPQ | $14,182.70 |
| 880 | Marquina, Belkys | 8129 W 36th Avenue - Unit 5 | Hialeah | FL | 33018 | GJP | $4,547.04 |
| 881 | Marrero, Ingrid | 8105 W. 36th Avenue #4 | Hialeah | FL | 33018 | JP | $4,547.04 |
| 882 | Marshall, George B. and Linda A. | 101 Sand Dunes Road | Ormand Beach | FL | 32176 | GJLPQ | $8,385.99 |
| 883 | Martel, Jean and Carmelle | 10852 Tiberio Drive | Ft. Myers | FL | 33913 | GHILP | $12,630.50 |
| 884 | Martin, James | 4405 Crystal Downs Court | Wesley Chapel | FL | 33543 | IP | $0.00 |
| 885 | Martin, Patrick and Alice | 11842 Bayport Lane #210-4 | Ft. Myers | FL | 33908 | P | $189,789.12 |
| 887 | Martinez, Dailyn | 1624 NW 37th Avenue | Cape Coral | FL | 33993 | P | $33,760.56 |

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 405 of 647
Case 2:11-cv-22408-MCE Document 270 Entered on FLSD Docket 08/15/2019 Page 953 of 998
Taishan - Preliminary Florida Contests and Setoffs

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 889 | Mas, Rachel and Bonilla, Fred | 304 Chaucer Avenue | Lehigh Acres | FL | 33936 | JP | $5,096.23 |
| 890 | Maseda, Alfredo and Gladys | 2310 NE 33rd Terrace | Cape Coral | FL | 33909 | DGHJLPQ | $3,807.89 |
| 891 | Masih, Parveem | 2533 Deerfield Lake Court | Cape Coral | FL | 33909 | JLPQ | $17,628.50 |
| 892 | Mastrogiacomo, Kim | 6071 Jonathans Bay Circle, Unit 401 | Ft. Myers | FL | 33908 | DJP | $10,000.00 |
| 893 | Matash, Mark and Cathleen | 7051 Ambrosia Lane, Unit 3503 | Naples | FL | 34119 | ADOP | $5,594.04 |
| 894 | Mathieu, Vladimir and/ or Soldavini-Clapper, Brigid | 3580 Lansing Loop, Unit #102 | Estero | FL | 33928 | DIP | $21,293.87 |
| 895 | Matos, Mary | 12508 Twin Branch Acres | Tampa | FL | 33626 | HJLPQ | $0.00 |
| 896 | Mattesich, John; Johnson, Rosemary and Morin, Barbara | 4338 Jacaranda Parkway | Cape Coral | FL | 33993 | GJP | $13,611.07 |
| 897 | Mattia, Michael and Mary Ellen | 10834 Kensington Park Avenue | Riverview | FL | 33569 | DGP | $11,400.38 |
| 898 | Mattox, Dread | 6551 Woodlawn Road | Macclenny | FL | 32063 | GIP | $6,417.54 |
| 899 | Matute, Argerie | 8884 SW 229 Street | Cutler Bay | FL | 33190 | P | $14,182.70 |
| 900 | Maurice, Carmine and Emmanie | 149 Pennfield | Lehigh Acres | FL | 33974 | JP | $4,622.61 |
| 901 | Maya, Adi | 12337 NW 69th Court | Parkland | FL | 33076 | DGIJLPQ | $65,458.15 |
| 902 | Mazza, Frank and Black, Andrew | 619 N.E. 8th Avenue | Fort Lauderdale | FL | 33304 | GIJP | $8,026.80 |
| 903 | Mazza, Luigi | 16232 SW 57th Lane | Miami | FL | 33193 | HJLPQ | $0.00 |
| 904 | Mazzola, Bruce and Santos, Jeomarcio | 3590 Lansing Loop Unit #204 | Estero | FL | 33928 | DGHLPQ | $0.00 |
| 905 | McAdoo, Kevin and Julie | 6218 S. Jones Road | Tampa | FL | 33611 | JMPQ | $16,278.89 |
| 906 | McCarthy, Mary Ann and Miller, Vicki | 954 Marilyn Avenue S. | Lehigh Acres | FL | 33936 | DGJP | $0.00 |
| 907 | McClure, Michael and Christyllne | 364 NE 35th Terrace | Homestead | FL | 33033 | P | $12,494.36 |
| 908 | McCombs, Holly (nka Holly Kramer) | 4136 Bismarck Palm Drive | Tampa | FL | 33610 | DHP | $3,999.77 |
| 909 | McCoy, Douglas and Carolyn | 230 Mestre Place | North Venice | FL | 34275 | DGIJLPQ | $27,790.50 |
| 910 | McDavid, Fernon and Loretta | 11321 Bridge Pine Drive | Riverview | FL | 33569 | DGP | $26,900.00 |
| 911 | McEldowney, Larry | 916 Fitch Avenue | Lehigh Acres | FL | 33872 | DJOP | $19,146.86 |
| 912 | McIntosh, Chyrille | 1600 State Avenue | Lehigh Acres | FL | 33972 | DJP | $33,822.22 |

Case 1:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 406 of 647
Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 08/15/2019 Page 954 of 999
Taishan - Preliminary Florida Contests and Setoffs

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 915 | McKinney, Ali and Ilka | 10806 SW Meeting Street | Port St. Lucie | FL | 34987 | JP | $13,557.28 |
| 916 | McKnight, Ashley and Gloria | 505 NW 3rd Place | Dania Beach | FL | 33004 | DGIP | $0.00 |
| 917 | McLendon, Brian and Stephanie | 11317 Bridge Pine Drive | Riverview | FL | 33569 | DIP | $28,102.91 |
| 918 | McMillan, Annette and John | 403 E. Maxwell Street | Pensacola | FL | 32503 | P | $15,315.68 |
| 919 | McNealy, James and Fran | 8882 SW 229 Street | Cutler Bay | FL | 33190 | P | $15,702.28 |
| 920 | McNeill, Michael and Stephanie | 13940 Clubhouse Drive | Tampa | FL | 33618 | DP | $18,604.29 |
| 921 | Medina, Nelson | 18472 Sunflower Road | Ft. Myers | FL | 33967 | IJP | $16,987.84 |
| 922 | Medina, Pedro | 10440 SW Stephanie Way, Unit 211 | Port St. Lucie | FL | 34987 | IP | $0.00 |
| 923 | Medrano, Ramon and Nedy | 11411 Bridge Pine Drive | Riverview | FL | 33569 | DGP | $3,834.54 |
| 924 | Meier, Harald | 15991 Old Wedgewood Court | Ft. Myers | FL | 33908 | GJLPQ | $46,279.29 |
| 925 | Meinholz, Nancy | 1660 Renaissance Commons Blvd. Unit 2211 | Boynton Beach | FL | 33426 | DIJLNPQ | $190,397.42 |
| 926 | Meinke, Mark and Jennifer | 11540 Hammocks Glade Drive | Riverview | FL | 33569 | DGP | $8,460.71 |
| 927 | Meister, David and Diane | 6060 Jonathan's Bay Circle #302 | Ft. Myers | FL | 33908 | DGHJLPQ | $16,953.08 |
| 928 | Mena, Eduardo and Claudia (aka Claudia Arauz) | 8105 W 36th Avenue Unit 1 | Hialeah | FL | 33018 | IJP | $5,506.80 |
| 929 | Mendez, Claudia | 12960 Turtle Cove Trail North | Ft. Myers | FL | 33903 | BDILNPQ | $12,500.00 |
| 930 | Mendez, Wilmer | 2201 N.E. 4th Avenue | Cape Coral | FL | 33909 | DHJP | $23,436.63 |
| 931 | Mendoza, Maritza | 20320 SW 87 Place | Cutler Bay | FL | 33189 | P | $75,551.45 |
| 932 | Menz, Charlotte | 112 SW 35th Avenue | Cape Coral | FL | 33991 | DP | $11,484.91 |
| 933 | Meserve, Living Trust of Roklyn | 619 NW 1st Terrace | Cape Coral | FL | 33993 | DJP | $177,515.69 |
| 934 | Metcalfe, George and Amy | 106 NW Willow Grove Avenue, | Port St. Lucie | FL | 34986 | DP | $0.00 |
| 935 | Meyer, Harry E. Jr. | 3014 Spruce Street | Zolfo Springs | FL | 33890 | FJP | $0.00 |
| 936 | Meyer, Ken | 120 SE 4th Terrace | Cape Coral | FL | 33990 | JP | $6,333.70 |

Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 407 of 647
Case 1:11-cv-22408-MGC Document 27 Entered on FLSD Docket 08/15/2011 Page 95 of 133
Taishan - Preliminary Florida Contests and Setoffs

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 937 | Meyers, Stuart and Lee | 12491 Verandah Blvd. | Ft. Myers | FL | 33905 | DJP | $17,704.20 |
| 938 | Michalopoulos, Anthony and Sheridan, Lindsey | 538 S.E. 2nd Street | Cape Coral | FL | 33990 | DIP | $10,000.00 |
| 939 | Miguelez, David and Stephanie | 330 Cipriani Way | North Venice | FL | 34275 | GHIJLNPQ | $240,055.71 |
| 941 | Miller, Alan and Christine | 983 Fish Hook Cove | Bradenton | FL | 34212 | GIJLPQ | $23,230.35 |
| 942 | Miller, Craig and Danyell | 1045 Venetian Drive #203 | Melbourne | FL | 32904 | IP | $0.00 |
| 943 | Miller, Donald and Judith | 1837 Notre Dame Avenue | Port St. Lucie | FL | 34953 | DGHILPQ | $0.00 |
| 944 | Miller, Mitchell | 13320 Shetland Lane | Ft. Myers | FL | 33912 | P | $9,562.87 |
| 945 | Miller, Robert | 1660 Renaissance Commons Blvd, Unit 2205 | Boynton Beach | FL | 33426 | IJLNPQ | $204,433.42 |
| 946 | Milligan, Robin | 4349 Crystal Downs Court | Wesley Chapel | FL | 33543 | DP | $42,379.53 |
| 947 | Mione, Anthony and Lillian | 565 S.W. Haskell Avenue | Port St. Lucie | FL | 34953 | P | $6,880.11 |
| 948 | Miranda, Jose and Adela | 8890 SW 229 Street | Miami | FL | 33190 | DJP | $14,182.70 |
| 949 | Miranda, Sergio | 8019 W. 36th Avenue Unit #6 | Hialeah | FL | 33018 | GJP | $4,909.20 |
| 950 | Mis, Michael and Delma | 110 NE 21st Avenue | Cape Coral | FL | 33909 | JP | $10,913.37 |
| 952 | Mitchell, Robert and Bonnie | 1442 Eldorado Parkway | Cape Coral | FL | 33914 | GLPQ | $34,514.09 |
| 953 | Mohammed, Imtiaz and Sabita | 324 Laurel Avenue South | South Lehigh Acres | FL | 33974 | GHLPQ | $8,210.66 |
| 954 | Molina, Carlos and Margarita | 1690 Renaissance Commons Blvd., Unit 1308 | Boynton Beach | FL | 33426 | DILNPQ | $213,633.94 |
| 955 | Monge, Erika | 8171 W 36th Avenue #3 | Hialeah | FL | 33018 | GJP | $4,560.46 |
| 956 | Monge, Giraldo and Kelly | 177 SE 2nd Court | Deerfield Beach | FL | 33441 | GIJP | $8,210.66 |
| 957 | Monte, Michael and Kara | 1450 McIlin Drive | Plant City | FL | 33565 | P | $21,733.11 |
| 958 | Montero, Jorge and Niza | 11622 Hammocks Glade Drive | Riverview | FL | 33569 | P | $2,807.71 |
| 959 | Moody, Russel and Beverly | 806 NW 38th Place | Cape Coral | FL | 33993 | JP | $13,400.21 |
| 960 | Moore, David and Deborah | 10320 SW Stephanie Way #7-208 | Port St. Lucie | FL | 34987 | DJP | $0.00 |

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 961 | Morales, Jose and Dawn | 215 NW 29 Terrace | Cape Coral | FL | 33993 | JP | $5,933.89 |
| 962 | Morgan, Keith and Shirley | 6545 Caicos Court | Vero Beach | FL | 32967 | GJLPQ | $22,675.48 |
| 963 | Morillo, Madelyn | 11337 Bridge Pine Drive | Riverview | FL | 33569 | DGHP | $12,781.82 |
| 964 | Morin, Frank and Walsh, Gladys | 10868 Tiberio Drive | Ft. Myers | FL | 33913 | JLNPQ | $15,074.79 |
| 965 | Morisset, Onel and Margareth | 2414 E. 31st Avenue | Tampa | FL | 33610 | MNPQ | $11,514.53 |
| 966 | Morris, James and Joyce | 12626 Astor Place | Ft. Myers | FL | 33913 | DJMPQ | $15,428.26 |
| 967 | Morris, Robert | 14123 Stilton Street | Tampa | FL | 33626 | BJLNPQ | $12,500.00 |
| 968 | Morton, Tony and Veronica and Tipton, Mendel and Debbie | 703 SW 22nd Terrace | Cape Coral | FL | 33991 | DP | $13,597.40 |
| 969 | Mosley, Toni | 6143 Laurelwood Drive | Ft. Myers | FL | 33905 | DJPQ | $6,881.20 |
| 970 | Mosley, Tracey and Tami | 12200 Minnesota Avenue | Punta Gorda | FL | 33955 | HJLP | $5,530.74 |
| 971 | Motollo, Eugene and Lynette | 3608 101st Avenue E | East Parrish | FL | 34219 | GJLNP | $0.00 |
| 972 | Mueller, Lawrence and Jaime | 939 Golden Pond Court | Cape Coral | FL | 33909 | GJLP | $18,570.21 |
| 974 | Muenchen, Stephen M. Jr. | 2537 Deerfield Lake Court | Cape Coral | FL | 33909 | JLP | $18,570.21 |
| 975 | Muenchen, Stephen, Sr. | 2565 Keystone Lake Drive | Cape Coral | FL | 33993 | DJP | $17,628.50 |
| 976 | Mullen, Carl | 9948 Cobblestone Creek Drive | Boynton Beach | FL | 33472 | GLP | $520,646.38 |
| 977 | Mundt, Elaine | 11806 Bayport Lane 2501 | Ft. Myers | FL | 33908 | DGP | $0.00 |
| 978 | Muradali, Fazeel | 5030 SW 126th Avenue, #221 | Miramar | FL | 33027 | DP | $8,982.50 |
| 979 | Murphy, William | 4755 Tuscan Loon Drive | Tampa | FL | 33619 | DGJP | $0.00 |
| 980 | Murray, Paul | 1690 Renaissance Commons Blvd., Unit 1522 | Boynton Beach | FL | 33426 | LNP | $188,935.94 |
| 981 | Murray, Paul and Lois | 1660 Renaissance Commons Blvd, Unit 2415 | Boynton Beach | FL | 33426 | JLNP | $188,477.88 |
| 982 | Murray, Robin and Marva | 535 Davidson Street South East Unit 50 | Palm Bay | FL | 32909 | DGJP | $5,294.96 |
| 983 | Musa, Massimo and Karrie | 2208 SoHo Bay Court | Tampa | FL | 33606 | DGLP | $6,068.31 |
| 984 | Muth, Fred and Linda | 4148 Bismarck Palm Drive | Tampa | FL | 33610 | DGP | $10,000.00 |
| 985 | Myers, Paul and Lisa | 376 NW Sheffield | Port St. Lucie | FL | 34987 | DP | $10,000.00 |
| 986 | Nappa, Michael and Teresa | 3020 Lake Manatee Court | Cape Coral | FL | 33909 | DGHILNPQ | $21,751.91 |
| 987 | Nardone, George | 2049 Diplomat Parkway W. | Cape Coral | FL | 33993 | HJMPQ | $12,991.30 |

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 989 | Naustdal, Donna | 2576 Keystone Lake Drive | Cape Coral | FL | 33909 | DJLP | $10,401.94 |
| 990 | Neal, Stephen | 2817 NE 5th Avenue | Cape Coral | FL | 33909 | JMP | $11,484.91 |
| 991 | Necastro, Daniel CC. and Maryjo | 8617 Via Rapallo Drive | Estero | FL | 33928 | DJP | $13,098.31 |
| 994 | Neuhalfen, Anna (nka Anna Oelrich) | 4403 Chiquita Blvd. South | Cape Coral | FL | 33914 | GHJLPQ | $19,583.17 |
| 995 | Newman, Evelyn | 140 S. Dixie Highway #619 | Hollywood | FL | 33020 | DIP | $10,572.82 |
| 996 | Nguyen, Hung Huu and Hoang Oanh Ngoc | 7212 N. Clark Avenue | Tampa | FL | 33614 | GLPQ | $14,199.69 |
| 997 | Nguyen, Thai and Lieu | 26 NW 6th Street | Cape Coral | FL | 33993 | IP | $12,933.76 |
| 998 | Nguyen, Tony and Vivian | 1213 SW 1st Terrace | Cape Coral | FL | 33991 | GHIJLNPQ | $131,281.13 |
| 999 | Nguyen, Tracy and Mai, Tuyen | 103 SE 16th Place | Cape Coral | FL | 33990 | ILPQ | $13,340.65 |
| 1000 | Nichols, James and Kathleen | 1217 NE 7th Place | Cape Coral | FL | 33909 | DJP | $22,678.98 |
| 1001 | Nijhawan, Balraj and Pushpa c/o Pradeep Nijhawan, POA, | 825 King Leon Way | Sun City Center | FL | 33573 | GP | $15,174.85 |
| 1002 | Nilsson, Jan Erik and Anette | 2806 St. Barts Square | Vero Beach | FL | 32962 | GLP | $19,714.22 |
| 1003 | Nobo, Raquel | 8001 W 36th Avenue - Unit 2 | Hialeah | FL | 33018 | HIJP | $4,560.46 |
| 1004 | Nord, John | 13960 Clubhouse Drive | Tampa | FL | 33618 | GJP | $19,827.66 |
| 1006 | Notarpasquale, Agostina | 11401 Bright Star Lane | Riverview | FL | 33569 | DGJP | $9,470.36 |
| 1007 | Nowicki, John C. | 2713 S.W. 18th Avenue | Cape Coral | FL | 33914 | DP | $10,000.00 |
| 1008 | Nowling, Michael and Angel | 3323 Farrish Road | Jay | FL | 32565 | P | $6,291.38 |
| 1009 | Nuccio, Thomas and Darlene | 198 Shadroe Cove Circle, Bldg 5, Unit 502 | Cape Coral | FL | 33991 | ADFIJLP | $0.00 |
| 1010 | Nudelman, Gene and Levina, Tatyana | 7240 Wisteria Avenue | Parkland | FL | 33076 | DHP | $13,210.25 |
| 1011 | Nunes, Norberto | 7060 Venice Way Unit 301 | Naples | FL | 34119 | HIJMNPQ | $123,109.45 |
| 1012 | Nunez, Alvaro | 10833 NW 79 St. | Doral | FL | 33178 | DGHIJP | $412.18 |
| 1013 | Nunez, Carmela | 2650 Amber Lake Drive | Cape Coral | FL | 33909 | DGP | $15,230.74 |

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 410 of 647
Case 1:11-cv-22408-MGC Document 27 Entered on FLSD Docket 08/15/2011 Page 58 of
99
Taishan - Preliminary Florida Contests and Setoffs

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 1014 | Nunez, Jeovany and Monica | 8049 W. 36th Avenue #4 | Hialeah | FL | 33018 | DJP | $4,547.04 |
| 1015 | Nuqui, Magno and Aracelli | 10860 Tiberio Drive | Ft. Myers | FL | 33913 | GHLPQ | $12,738.06 |
| 1016 | Nuss, Douglas | 20044 Larino Loop | Estero | FL | 33928 | BDJLNPQ | $10,000.00 |
| 1017 | Nyce, Tracy | 106 Burano Court | North Venice | FL | 34275 | DGJP | $17,247.43 |
| 1018 | O'Brien, Jason | 19252 Stone Hedge Drive | Tampa | FL | 33647 | DKP | $6,035.05 |
| 1019 | O'Brien, Kelly and Lori | 3120 W. Wallcraft Avenue | Tampa | FL | 33611 | DJP | $32,515.03 |
| 1020 | O'Key, Dennis  Trustee of the Dennis A. O'Key Revocable Trust | 318 SE 14th Terrace | Cape Coral | FL | 33990 | DGHLPQ | $19,515.46 |
| 1021 | O'Neil, Gerald and Brasch, Jacqueline | 818 King Leon Way | Sun City Center | FL | 33573 | DGJP | $22,895.46 |
| 1022 | O'Rourke, Gabriela | 19229 Stone Hedge Drive | Tampa | FL | 33647 | DJP | $4,075.78 |
| 1023 | Octobre, Marie | 1609 SW 22 Lane | Cape Coral | FL | 33991 | DP | $6,795.42 |
| 1024 | Ojeda, Benjamin and Nancy | 765 East Oklahoma Avenue | Labelle | FL | 33935 | DGP | $10,751.08 |
| 1025 | Okaily, Okaily AM and Lois | 1690 Renaissance Commons Blvd., Unit 1215 | Boynton Beach | FL | 33426 | DHILNPQ | $211,354.60 |
| 1026 | Okaily, Rhoda and Aly | 1690 Renaissance Commons Blvd., Unit 1412 | Boynton Beach | FL | 33426 | HILNPQ | $189,539.74 |
| 1027 | Oler, Danette and Raymond | 160 E. Mariana Avenue, North | Ft. Myers | FL | 33971 | DJP | $30,604.73 |
| 1028 | Olivo, Luis | 613 S.E. 25th Terrace | Cape Coral | FL | 33904 | JP | $13,717.73 |
| 1030 | Olson, Dina and Olson-Dobol, Melissa | 357 NE 35th Terrace | Homestead | FL | 33033 | JP | $12,474.31 |
| 1031 | Ondrovic, Joseph | 14122 Kensington Lane | Ft. Myers | FL | 33912 | DGIJP | $0.00 |
| 1032 | Oravetz, Michael | 2810 NW 13th Street | Cape Coral | FL | 33993 | JMNPQ | $132,408.31 |
| 1033 | Organista, Maria | 2902 Nadine Lane | Lehigh Acres | FL | 33971 | JP | $3,451.54 |
| 1034 | Orjuela, Sonia | 14726 SW 6 Street Building 41, Unit 4101 | Pembroke Pines | FL | 33027 | GHILNPQ | $645.00 |
| 1035 | Ortega, Ricardo and  Harris, Richard | 14018 SW 274 Terrace | Homestead | FL | 33032 | IJP | $14,927.46 |
| 1036 | Ortiz, Amelia and Mark, Candace | 9701 Cobblestone Creek Drive | Boynton Beach | FL | 33472 | DJP | $31,523.03 |

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 1037 | Ortiz, Daysi and Diaz, Rafael | 8199 West 36th Ave. Unit 10 | Hialeah | FL | 33018 | JP | $4,909.20 |
| 1038 | Osborne, Jason and Pemberton-Osborne, Janna | 14981 Toscana Way | Naples | FL | 34120 | DGJP | $7,037.17 |
| 1039 | Osterberg, David and Andrea | 3404 W. Sevilla Street | Tampa | FL | 33629 | DP | $20,318.28 |
| 1040 | Overbeck, David | 13525 Little Gem Circle | Ft. Myers | FL | 33913 | BDHLNPQ | $0.00 |
| 1041 | Ovicher, Joseph and Celine | 1690 Renaissance Commons Blvd., Unit 1417 | Boynton Beach | FL | 33426 | DILNPQ | $187,458.90 |
| 1042 | Owen, Scott and Emilia | 2032 North West 1st Place | Cape Coral | FL | 33993 | DGJP | $6,508.00 |
| 1043 | Page, Michael and Rikke | 20092 Larino Loop | Estero | FL | 33928 | BDILNPQ | $403.63 |
| 1044 | Palombi, Mark and Allison | 10612 SW Kelsey Way, | Port St. Lucie | FL | 34987 | DHJP | $17,829.03 |
| 1045 | Parikh, Jayesh and Kirti | 7569 Bristol Circle | Naples | FL | 34120 | DGIJP | $100,265.23 |
| 1046 | Parker, William Jr. | 2322 Anthens Avenue | Pensacola | FL | 32507 | P | $18,148.22 |
| 1047 | Parker, William Sr. | 2318 Athens Avenue | Pensacola | FL | 32507 | P | $10,519.70 |
| 1048 | Parr, Patrick and Linda | 3145 NE 15th Avenue | Cape Coral | FL | 33909 | HJLPQ | $11,444.80 |
| 1049 | Parra, Judy | 12430 SW 50th Street, #109 | Miramar | FL | 33027 | IP | $5,391.53 |
| 1050 | Paskow, Ross and Jacyln | 12430 SW 50th Street - Unit 129 | Miramar | FL | 33027 | DGIP | $8,099.48 |
| 1051 | Pass, Herbert and Arlene | 8826 NW 13 Street | Plantation | FL | 33322 | IJP | $4,144.72 |
| 1053 | Patching, Trevor and Karen | 8751 Thornbrook Terrace Point | Boynton Beach | FL | 33473 | BDJLNPQ | $0.00 |
| 1054 | Pate, Jeremy | 6311 Ard Road | Pensacola | FL | 32526 | GILPQ | $7,149.64 |
| 1055 | Patin, Jose | 11305 Laurel Brook Ct. | Riverview | FL | 33569 | DP | $16,217.73 |
| 1056 | Patterson, Gary and Nicole | 3096 Juniper Lane | Davie | FL | 33330 | DFIP | $37,389.50 |
| 1057 | Patterson, Joan | 1934 Rowland Drive | Odessa | FL | 33556 | JP | $14,289.51 |
| 1058 | Patterson, Kelli | 622 SW 147th Terrace | Pembroke Pines | FL | 33027 | DIJP | $2,500.00 |
| 1059 | Paukovich, Michael and Margarita | 11623 Hammocks Glade Drive | Riverview | FL | 33569 | GHIJLNPQ | $156,082.62 |
| 1060 | Pauls, Henry and Gerna | 14906 Man O War Drive | Odessa | FL | 33556 | GHIJMPQ | $11,224.26 |
| 1061 | Peace Harbor Condominium Association, Inc. | 900 E. Marion Avenue Unit 1201 | Punta Gorda | FL | 33950 | EGJLPQ | $11,010.28 |

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 1062 | Peace Harbor Condominium Association, Inc. | 900 E. Marion Avenue Unit 1203 | Punta Gorda | FL | 33950 | EGJLPQ | $11,010.28 |
| 1063 | Peace Harbor Condominium Association, Inc. (Robert Morton) | 900 E. Marion Avenue Unit 1301 | Punta Gorda | FL | 33950 | EGJLPQ | $11,010.28 |
| 1064 | Peace Harbor Condominium Association, Inc. | 900 E. Marion Avenue Unit 1303 | Punta Gorda | FL | 33950 | EGJLPQ | $11,010.28 |
| 1065 | Peace Harbor Condominium Association, Inc. | 900 E. Marion Avenue Unit 1401 | Punta Gorda | FL | 33950 | EGJLPQ | $11,010.28 |
| 1066 | Peace Harbor Condominium Association, Inc. (Steven Oyer) | 900 E. Marion Avenue Unit 1402 | Punta Gorda | FL | 33950 | EGJLPQ | $11,010.28 |
| 1067 | Pech, Guenter and Eveline | 118 SE 23rd Place | Cape Coral | FL | 33990 | GJLPQ | $15,087.95 |
| 1068 | Pelaez, Diego and Moreno, Juliana | 11231 NW 84th Street | Doral | FL | 33178 | IJP | $233,254.58 |
| 1069 | Pelligra, Anna R. | 1922 SE 22 Court | Homestead | FL | 33035 | DIJP | $0.00 |
| 1070 | Peloquin, Michael and Erin | 12747 Kentwood Avenue | Ft. Myers | FL | 33913 | DGP | $29,312.90 |
| 1071 | Peltier, Isaac and Shanon | 2811 W. Shelton Avenue | Tampa | FL | 33611 | JLNP | $16,968.89 |
| 1072 | Pena, Alfredo, Dheng, Guo and Wu, Mei Ai | 8019 W 36th Avenue Unit 1 | Hialeah | FL | 33018 | BDGHJP | $0.00 |
| 1073 | Penix, Frederick | 4334 Fieldview Circle | Wesley Chapel | FL | 33545 | IJP | $4,680.49 |
| 1074 | Penny, Andrew and Rachel | 1814 NW 22nd Place | Cape Coral | FL | 33993 | DJP | $16,763.56 |
| 1075 | Penzimer, Marilyn | 1690 Renaissance Commons Blvd., Unit 1420 | Boynton Beach | FL | 33426 | DHILNPQ | $201,354.62 |
| 1076 | Perecca, Joel | 1690 Renaissance Commons Blvd., Unit 1211 | Boynton Beach | FL | 33426 | HIJLNPQ | $187,996.01 |
| 1077 | Pereiro, Mirta | 8025 W. 36th Avenue #1 | Hialeah | FL | 33018 | IJP | $4,909.20 |
| 1078 | Perez, Andres and Raquel | 574 Eisenhower Blvd. | Lehigh Acres | FL | 33974 | GLNPQ | $159,464.15 |
| 1079 | Perez, Carlos | 8129 W 36th Street Unit #3 | Hialeah | FL | 33018 | DJP | $4,560.46 |
| 1080 | Perez, Esdras | 1835 Dalmation Avenue | Port St. Lucie | FL | 34953 | DEGJP | $6,623.56 |
| 1082 | Perez, Mike | 10829 NW 79 Street | Doral | FL | 33178 | DJP | $12,661.49 |

Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 413 of 647
Case 2:11-cv-02349-MCE Document 270 FLSD Docket 08/15/2014 Page 61 of
Taishan - Preliminary Florida Contests and Setoffs

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 1083 | Perga, Anthony and Marcia, et al | 13932 Clubhouse Drive | Tampa | FL | 33618 | DGHILNPQ | $198,110.99 |
| 1084 | Pernell, Staci | 2082 Sundown Drive | Clearwater | FL | 33763 | DFJP | $0.00 |
| 1085 | Perone, Samuel | 7261 Lemon Grass Drive | Parkland | FL | 33076 | DGIJP | $224,953.89 |
| 1086 | Peter, Arish and Dalal, Alpa | 1690 Renaissance Commons Blvd., Unit 1401 | Boynton Beach | FL | 33426 | ILNPQ | $189,194.36 |
| 1087 | Petrella, Elaine | 7534 Bristol Circle | Naples | FL | 34120 | JP | $2,896.46 |
| 1088 | Pezze, Daniel and Carol | 1160 Wapello Street | North Port | FL | 34286 | DHP | $153,481.88 |
| 1089 | Pfeiffer, Marion | 1117 Cassin Avenue | Lehigh Acres | FL | 33971 | DGJP | $15,689.84 |
| 1090 | Pham, Kelly | 8696 Pegasus Drive | Lehigh Acres | FL | 33971 | DGHJLPQ | $17,832.13 |
| 1091 | Philippe, Kerrine and Dickenson, Peter | 206 Taylor Bay Lane | Brandon | FL | 33510 | GHJLPQ | $10,996.23 |
| 1092 | Pietrantonio, Robert and Tamie | 6050 Jonathan's Bay Circle Unit 102 Building 5 | Ft. Myers | FL | 33908 | DGJP | $14,060.54 |
| 1094 | Pimenta, Rodolfo | 2101 SW Dixen Court | Port St. Lucie | FL | 34953 | DJP | $26,191.19 |
| 1095 | Pineda, Samantha | 1142 Earhart Street E | Lehigh Acres | FL | 33974 | P | $9,151.71 |
| 1096 | Pinney, Nelson and Losi | 138 SE 29th Street | Cape Coral | FL | 33904 | DGHJLPQ | $9,914.80 |
| 1099 | Podrebarac, Gary | 29235 Caddyshack Lane | San Antonio | FL | 33576 | DGHJLPQ | $21,454.20 |
| 1100 | Poggio, James and Janice | 13409 Ainsworth Lane | Port Charlotte | FL | 33981 | DFJP | $0.00 |
| 1101 | Pollman, Todd and Robyn | 417 Holly Fern Terrace | Deland | FL | 32713 | DIJP | $10,179.01 |
| 1102 | Pollux, LLC | 1145 Pineda Street East | Lehigh Acres | FL | 33974 | DGHJLPQ | $17,461.12 |
| 1103 | Pollux, LLC | 1220 Ederle Street | Lehigh Acres | FL | 33974 | GHJLPQ | $18,566.36 |
| 1104 | Pollux, LLC | 1257 Brookpark Avenue | Lehigh Acres | FL | 33913 | DGHJLPQ | $15,216.97 |
| 1105 | Pollux, LLC | 721 Ashley Road | Lehigh Acres | FL | 33974 | DGHJLPQ | $17,610.94 |
| 1106 | Pope, Jackie and Ronald | 433 Evening Falls Drive | Pensacola | FL | 32534 | JP | $9,979.25 |
| 1107 | Poplausky, Maurice and Hanna | 1690 Renaissance Commons Blvd., Unit 1529 | Boynton Beach | FL | 33426 | DIJLNPQ | $213,633.94 |
| 1109 | Portnoy, Sidney (decesased) and Sandra | 6572 East 41st Court | Sarasota | FL | 34243 | GIJLPQ | $4,795.14 |

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 1110 | Posey, Susan | 5934 Bilek Drive | Pensacola | FL | 32526 | DGLPQ | $9,077.68 |
| 1111 | Potter, Harold and Tricia | 4819 Portmamock Way | Wesley Chapel | FL | 33543 | DJP | $32,107.16 |
| 1112 | Powell, Laura Ann and Lindeerth | 8870 SW 229th Street | Cutler Bay | FL | 33190 | DJP | $15,759.35 |
| 1113 | Prendergast, Kenneth and Naomi | 564 Bimini Bay Blvd. | Apollo Beach | FL | 33572 | JP | $20,718.58 |
| 1114 | Priester, Isembe and Stephanie | 3805 Machado Street | Tampa | FL | 33610 | DP | $0.00 |
| 1115 | Prieto, Belkis | 8049 W 36th Avenue #5 | Hialeah | FL | 33018 | DJP | $4,560.46 |
| 1116 | Prokopetz, Jerry, Jason and Linda | 2548 Deerfield Lake Court | Cape Coral | FL | 33909 | JP | $11,628.67 |
| 1117 | Promenade at Tradition Community Association, Inc. | 10360 SW Stephanie Way, Unit 101 | Port St. Lucie | FL | 34987 | EHJLPQ | $11,919.44 |
| 1118 | Promenade at Tradition Community Association, Inc. | 10360 SW Stephanie Way, Unit 102 | Port St. Lucie | FL | 34987 | EHJLPQ | $8,229.29 |
| 1119 | Promenade at Tradition Community Association, Inc. | 10360 SW Stephanie Way, Unit 201 | Port St. Lucie | FL | 34987 | EHJLPQ | $1,310.59 |
| 1120 | Promenade at Tradition Community Association, Inc. | 10360 SW Stephanie Way, Unit 202 | Port St. Lucie | FL | 34987 | EHJLPQ | $8,302.83 |
| 1121 | Promenade at Tradition Community Association, Inc. | 10360 SW Stephanie Way, Unit 203 | Port St. Lucie | FL | 34987 | EHJLPQ | $8,082.22 |
| 1122 | Promenade at Tradition Community Association, Inc. | 10360 SW Stephanie Way, Unit 204 | Port St. Lucie | FL | 34987 | EHJLPQ | $8,229.29 |
| 1123 | Promenade at Tradition Community Association, Inc. | 10360 SW Stephanie Way, Unit 205 | Port St. Lucie | FL | 34987 | EHJLPQ | $9,679.94 |
| 1124 | Promenade at Tradition Community Association, Inc. | 10360 SW Stephanie Way, Unit 208 | Port St. Lucie | FL | 34987 | EHJLPQ | $0.00 |
| 1125 | Promenade at Tradition Community Association, Inc. | 10360 SW Stephanie Way, Unit 210 | Port St. Lucie | FL | 34987 | EHJLPQ | $8,302.83 |
| 1126 | Promenade at Tradition Community Association, Inc. | 10400 SW Stephanie Way, Unit 211 | Port St. Lucie | FL | 34987 | EHJLPQ | $8,302.83 |
| 1127 | Promenade at Tradition Community Association, Inc. | 10440 SW Stephanie Way, Unit 104 | Port St. Lucie | FL | 34987 | EHJLPQ | $0.00 |

Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 415 of 647
Case 1:11-cv-22408-MGC Document 27 Entered on FLSD Docket 08/15/2019 Page 63 of
Taishan - Preliminary Florida Contests and Setoffs

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 1128 | Promenade at Tradition Community Association, Inc. | 10440 SW Stephanie Way, Unit 105 | Port St. Lucie | FL | 34987 | EHLPQ | $8,229.29 |
| 1129 | Promenade at Tradition Community Association, Inc. | 10440 SW Stephanie Way, Unit 106 | Port St. Lucie | FL | 34987 | EHLPQ | $1,187.84 |
| 1130 | Promenade at Tradition Community Association, Inc. | 10440 SW Stephanie Way, Unit 201 | Port St. Lucie | FL | 34987 | EHJLPQ | $11,919.44 |
| 1131 | Promenade at Tradition Community Association, Inc. | 10440 SW Stephanie Way, Unit 202 | Port St. Lucie | FL | 34987 | EHJLPQ | $8,302.83 |
| 1132 | Promenade at Tradition Community Association, Inc. | 10440 SW Stephanie Way, Unit 203 | Port St. Lucie | FL | 34987 | EHLPQ | $8,082.22 |
| 1133 | Promenade at Tradition Community Association, Inc. | 10440 SW Stephanie Way, Unit 204 | Port St. Lucie | FL | 34987 | EHLPQ | $49,558.96 |
| 1134 | Promenade at Tradition Community Association, Inc. | 10440 SW Stephanie Way, Unit 205 | Port St. Lucie | FL | 34987 | EHLPQ | $9,679.94 |
| 1135 | Promenade at Tradition Community Association, Inc. | 10440 SW Stephanie Way, Unit 207 | Port St. Lucie | FL | 34987 | EHLPQ | $8,356.30 |
| 1136 | Promenade at Tradition Community Association, Inc. | 10440 SW Stephanie Way, Unit 210 | Port St. Lucie | FL | 34987 | EHLPQ | $8,082.22 |
| 1137 | Promenade at Tradition Community Association, Inc. | 10440 SW Stephanie Way, Unit 212 | Port St. Lucie | FL | 34987 | EHLPQ | $11,919.44 |
| 1138 | Promenade at Tradition Community Association, Inc. | 10480 SW Stephanie Way, Unit 101 | Port St. Lucie | FL | 34987 | EHJLPQ | $11,919.44 |
| 1139 | Promenade at Tradition Community Association, Inc. | 10480 SW Stephanie Way, Unit 202 | Port St. Lucie | FL | 34987 | EHLPQ | $0.00 |
| 1140 | Promenade at Tradition Community Association, Inc. | 10480 SW Stephanie Way, Unit 206 | Port St. Lucie | FL | 34987 | EHLPQ | $8,082.22 |
| 1141 | Promenade at Tradition Community Association, Inc. | 10520 SW Stephanie Way, Unit 212 | Port St. Lucie | FL | 34987 | EHJLPQ | $187,431.66 |
| 1142 | Promenade at Tradition Community Association, Inc. | 10560 SW Stephanie Way, Unit 102 | Port St. Lucie | FL | 34987 | EHJLPQ | $156,858.68 |

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 1143 | Promenade at Tradition Community Association, Inc. | 10560 SW Stephanie Way, Unit 203 | Port St. Lucie | FL | 34987 | EHLPQ | $8,082.22 |
| 1144 | Promenade at Tradition Community Association, Inc. | 10560 SW Stephanie Way, Unit 205 | Port St. Lucie | FL | 34987 | EHLPQ | $9,679.94 |
| 1145 | Promenade at Tradition Community Association, Inc. | 10560 SW Stephanie Way, Unit 206 | Port St. Lucie | FL | 34987 | EHLPQ | $8,356.30 |
| 1146 | Promenade at Tradition Community Association, Inc. | 10560 SW Stephanie Way, Unit 208 | Port St. Lucie | FL | 34987 | EHLPQ | $9,679.94 |
| 1147 | Promenade at Tradition Community Association, Inc. | 10560 SW Stephanie Way, Unit 209 | Port St. Lucie | FL | 34987 | EHLPQ | $62,710.37 |
| 1148 | Promenade at Tradition Community Association, Inc. | 10560 SW Stephanie Way, Unit 212 | Port St. Lucie | FL | 34987 | EHJLPQ | $120,343.77 |
| 1149 | Promenade at Tradition Community Association, Inc. (Casey, Hugh) | 10440 SW Stephanie Way, Unit 206 | Port St. Lucie | FL | 34987 | EHLPQ | $8,356.30 |
| 1152 | Prynada, Christine | 2068 Zuyder Terrace | North Port | FL | 34286 | HLNPQ | $154,750.96 |
| 1153 | PSC Enterprises, LLC | 362 Eisenhower Blvd. | Lehigh Acres | FL | 33974 | CDGJMPQ | $8,502.70 |
| 1154 | Puerto, Rafael M. | 10902 NW 83rd Street #214 | Doral | FL | 33178 | DJP | $0.00 |
| 1155 | Purcell, Veronica | 6845 Mitchell Street | Jupiter | FL | 33458 | DJP | $0.00 |
| 1156 | Puzo, Roberto and Zuraya | 5772 SW 162 Pass | Miami | FL | 33193 | DHIJLNPQ | $9,164.59 |
| 1158 | Quaranta, Benito | 4541 Rolling Green Drive | Wesley Chapel | FL | 33543 | DGJP | $7,203.80 |
| 1159 | Quattrocchi, William A. | 10320 SW Stephanie Way Unit #212 | Port St. Lucie | FL | 34987 | DJP | $10,000.00 |
| 1160 | Querol, Damien | 3301 NE 183rd Street, Unit 1207 | Aventura | FL | 33160 | BDGIP | $0.00 |
| 1161 | Quezada, Nelly | 11404 Laurel Brook Court | Riverview | FL | 33569 | DJP | $10,990.22 |
| 1162 | Quinn, Christopher and Katherine | 4210 West Kensington Avenue | Tampa | FL | 33629 | DGP | $21,523.67 |
| 1163 | Quittner, Lee and Alyssa | 9830 Cobblestone Creek | Boynton Beach | FL | 33472 | DHP | $94,013.28 |

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 1164 | Raburn, Jacob and Melissa | 4102 Three Oaks Road | Plant City | FL | 33565 | DHLNPQ | $4,317.98 |
| 1165 | Racius, Lubraine and Anese | 4013 24th Street SW | Lehigh Acres | FL | 33971 | DGP | $0.00 |
| 1166 | Rahman, Mohamad | 935 Bayshore Drive | Terra Ceia | FL | 34250 | P | $319,452.26 |
| 1167 | Ramirez, Xiomara, Villavicencio, Carlos and DeLaCruz-Oller, Nelida | 8019 W. 36th Avenue #5 | Hialeah | FL | 33018 | GJP | $4,547.04 |
| 1168 | Rand, Richard | 8607 Athena Court | Lehigh Acres | FL | 33971 | DGP | $10,631.84 |
| 1169 | Randazzo, Antonio and Deborah | 2193 Willoughby Street | Port Charlotte | FL | 33980 | DJP | $10,000.00 |
| 1170 | Raphael, Gene and Que | 3018 Lake Butler Court | Cape Coral | FL | 33909 | DJP | $10,000.00 |
| 1171 | Rappa, Erasmo and Kathleen | 2128 South West 5th Avenue | Cape Coral | FL | 33991 | JLNPQ | $5,643.74 |
| 1172 | Raspall, Maria and Stephanie | 8105 W. 36th Avenue #3 | Hialeah | FL | 33018 | HJMPQ | $4,483.33 |
| 1173 | Ratliff, Duane and Beth | 4205 Amelia Plantation Court | Vero Beach | FL | 32967 | DJP | $10,000.00 |
| 1174 | Rattan, Ravindra | 2942 SW Skyline St. | Port St. Lucie | FL | 34987 | DJP | $10,000.00 |
| 1175 | Raucci, Steven and Dorothy | 10856 Tiberio Drive | Ft. Myers | FL | 33913 | DGHP | $12,738.06 |
| 1177 | Razzaq, Anjum and Hasan, Seema | 4820 Portmarnock Way | Wesley Chapel | FL | 33543 | HIJLNPQ | $16,066.61 |
| 1178 | RCR Holdings II, LLC | 1690 Renaissance Commons #1101 | Boynton Beach | FL | 33426 | DLNPQ | $192,179.42 |
| 1179 | RCR Holdings II, LLC | 1690 Renaissance Commons #1102 | Boynton Beach | FL | 33426 | DHLNPQ | $191,363.42 |
| 1180 | RCR Holdings II, LLC | 1690 Renaissance Commons #1104 | Boynton Beach | FL | 33426 | DHLNPQ | $192,203.42 |
| 1181 | RCR Holdings II, LLC | 1690 Renaissance Commons #1105 | Boynton Beach | FL | 33426 | DHLNPQ | $191,015.42 |
| 1182 | RCR Holdings II, LLC | 1690 Renaissance Commons #1110 | Boynton Beach | FL | 33426 | DHLNPQ | $191,060.42 |
| 1183 | RCR Holdings II, LLC | 1690 Renaissance Commons #1112 | Boynton Beach | FL | 33426 | DHLNPQ | $191,715.62 |

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 418 of 647
Case 1:11-cv-22408-MGC Document 27 Entered on FLSD Docket 08/15/2011 Page 966 of
999
Taishan - Preliminary Florida Contests and Setoffs

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 1184 | RCR Holdings II, LLC | 1690 Renaissance Commons #1123 | Boynton Beach | FL | 33426 | DHLNPQ | $191,337.62 |
| 1185 | RCR Holdings II, LLC | 1690 Renaissance Commons #1129 | Boynton Beach | FL | 33426 | DHLNPQ | $190,397.42 |
| 1186 | RCR Holdings II, LLC | 1690 Renaissance Commons #1201 | Boynton Beach | FL | 33426 | DHLNPQ | $192,053.42 |
| 1187 | RCR Holdings II, LLC | 1690 Renaissance Commons #1204 | Boynton Beach | FL | 33426 | DHILNPQ | $192,329.42 |
| 1188 | RCR Holdings II, LLC | 1690 Renaissance Commons #1207 | Boynton Beach | FL | 33426 | DHLNPQ | $191,186.42 |
| 1189 | RCR Holdings II, LLC | 1690 Renaissance Commons #1208 | Boynton Beach | FL | 33426 | DHLNPQ | $191,418.62 |
| 1190 | RCR Holdings II, LLC | 1690 Renaissance Commons #1210 | Boynton Beach | FL | 33426 | DHLNPQ | $190,949.42 |
| 1191 | RCR Holdings II, LLC | 1690 Renaissance Commons #1214 | Boynton Beach | FL | 33426 | DHLNPQ | $190,673.42 |
| 1192 | RCR Holdings II, LLC | 1690 Renaissance Commons #1220 | Boynton Beach | FL | 33426 | DHLNPQ | $190,673.42 |
| 1193 | RCR Holdings II, LLC | 1690 Renaissance Commons #1222 | Boynton Beach | FL | 33426 | DLNPQ | $191,670.62 |
| 1194 | RCR Holdings II, LLC | 1690 Renaissance Commons #1229 | Boynton Beach | FL | 33426 | DLNPQ | $190,397.42 |
| 1195 | RCR Holdings II, LLC | 1690 Renaissance Commons #1305 | Boynton Beach | FL | 33426 | DLNPQ | $190,745.40 |
| 1196 | RCR Holdings II, LLC | 1690 Renaissance Commons #1306 | Boynton Beach | FL | 33426 | DLNPQ | $190,949.42 |
| 1197 | RCR Holdings II, LLC | 1690 Renaissance Commons #1316 | Boynton Beach | FL | 33426 | DLNPQ | $192,629.40 |
| 1198 | RCR Holdings II, LLC | 1690 Renaissance Commons #1318 | Boynton Beach | FL | 33426 | DLNPQ | $191,225.40 |
| 1199 | RCR Holdings II, LLC | 1690 Renaissance Commons #1319 | Boynton Beach | FL | 33426 | DLNPQ | $192,629.42 |

Case 1:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 419 of 647
Case 2:09-md-02047-EEF-MBN Document 20297-10 Entered on FLSD Docket 08/15/2019 Page 53 of 999
Taishan - Preliminary Florida Contests and Setoffs

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 1200 | RCR Holdings II, LLC | 1690 Renaissance Commons #1320 | Boynton Beach | FL | 33426 | DLNPQ | $190,823.42 |
| 1201 | RCR Holdings II, LLC | 1690 Renaissance Commons #1322 | Boynton Beach | FL | 33426 | DLNPQ | $191,354.42 |
| 1202 | RCR Holdings II, LLC | 1690 Renaissance Commons #1325 | Boynton Beach | FL | 33426 | DLNPQ | $191,738.42 |
| 1203 | RCR Holdings II, LLC | 1690 Renaissance Commons #1326 | Boynton Beach | FL | 33426 | DLNPQ | $191,174.40 |
| 1204 | RCR Holdings II, LLC | 1690 Renaissance Commons #1403 | Boynton Beach | FL | 33426 | DLNPQ | $191,418.60 |
| 1205 | RCR Holdings II, LLC | 1690 Renaissance Commons #1407 | Boynton Beach | FL | 33426 | DLNPQ | $191,865.60 |
| 1206 | RCR Holdings II, LLC | 1690 Renaissance Commons #1408 | Boynton Beach | FL | 33426 | DLNPQ | $190,397.40 |
| 1207 | RCR Holdings II, LLC | 1690 Renaissance Commons #1414 | Boynton Beach | FL | 33426 | DHLNPQ | $190,673.40 |
| 1208 | RCR Holdings II, LLC | 1690 Renaissance Commons #1415 | Boynton Beach | FL | 33426 | DHLNPQ | $190,511.40 |
| 1209 | RCR Holdings II, LLC | 1690 Renaissance Commons #1416 | Boynton Beach | FL | 33426 | DHLNPQ | $192,053.42 |
| 1210 | RCR Holdings II, LLC | 1690 Renaissance Commons #1425 | Boynton Beach | FL | 33426 | DHLNPQ | $190,949.40 |
| 1211 | RCR Holdings II, LLC | 1690 Renaissance Commons #1516 | Boynton Beach | FL | 33426 | DHLNPQ | $192,881.42 |
| 1212 | RCR Holdings II, LLC | 1690 Renaissance Commons #1517 | Boynton Beach | FL | 33426 | DHLNPQ | $190,334.42 |
| 1213 | RCR Holdings II, LLC | 1690 Renaissance Commons #1518 | Boynton Beach | FL | 33426 | DHLNPQ | $190,949.42 |
| 1214 | RCR Holdings II, LLC | 1690 Renaissance Commons #1520 | Boynton Beach | FL | 33426 | DHLNPQ | $188,641.42 |
| 1218 | Rebello, Deodato | 1675 St. Claire Avenue E | North Ft. Myers | FL | 33914 | GLPQ | $13,038.66 |
| 1219 | Reber, Todd and Melissa | 5385 Schaag Road | Molino | FL | 32577 | P | $21,990.43 |

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 1220 | Reckseit, Ronald and Jacqueline | 1690 Renaissance Commons Blvd. Unit 1111 | Boynton Beach | FL | 33426 | DGIKLNPQ | $187,883.60 |
| 1221 | Reckseit, Ronald and Jacqueline | 1690 Renaissance Commons Blvd. Unit 1225 | Boynton Beach | FL | 33426 | DGIKLNPQ | $188,868.08 |
| 1222 | Reeves, Michael and Kathryn | 2226 Soho Bay Court | Tampa | FL | 33606 | DP | $10,000.00 |
| 1223 | Reilly, Reed and Victoria | 8648 Athena Court | Lehigh Acres | FL | 33971 | DIP | $9,265.47 |
| 1224 | Reino, Frank | 921 SW 23rd Street | Cape Coral | FL | 33990 | DGIJLNPQ | $168,821.56 |
| 1225 | Renaud, Jodi and Eric | 3505 W. Empedrado Street #5 | Tampa | FL | 33629 | DGJLNPQ | $17,565.11 |
| 1226 | Renaud, Paris and  Baird-Renaud, Merle | 1016 Willard Avenue | Lehigh Acres | FL | 33972 | GJP | $0.00 |
| 1227 | Renzetti, Nicholas and Adrienne | 1690 Renaissance Commons Blvd., Unit 1321 | Boynton Beach | FL | 33426 | DLNP | $211,354.60 |
| 1228 | Requejado, Osvaldo and Norka | 3504 SW 147 Place | Miami | FL | 33185 | DHJPQ | $230,979.39 |
| 1229 | Resnick, Jonathan S. and Diane | 17910 Monte Vista Drive | Boca Raton | FL | 33496 | DHJP | $36,801.22 |
| 1230 | Restrepo, Soccoro | 8932 SW 228th Lane | Miami | FL | 33190 | DHIJP | $19,583.26 |
| 1231 | Retfalvi, Paul | 1722 Hansen Street | Sarasota | FL | 34231 | DGIJP | $10,000.00 |
| 1232 | Reveles, Juan | 10798 NW 81st Lane | Doral | FL | 33178 | JLNPQ | $215,122.27 |
| 1233 | Riback, Martin- Trustees of the Martin Riback Revocable Trust Agreement dated April 4, 1997 | 1690 Renaissance Commons Blvd., Unit 1212 and Unit 1410 | Boynton Beach | FL | 33426 | AHLNPQ | $191,086.78 |
| 1234 | Rice, Chaence | 1727 NW 19th Street | Cape Coral | FL | 33993 | IJP | $6,998.29 |
| 1235 | Richards, John and Patricia | 811 King Leon Way | Sun City Center | FL | 33573 | GLNP | $11,805.80 |
| 1236 | Richardson, Jr., Eddie and Mary | 2913 E. 31st Avenue | Tampa | FL | 33610 | DP | $9,409.00 |
| 1237 | Richardson, Valerie | 8596 Athena Court | Lehigh Acres | FL | 33971 | IJP | $10,630.47 |
| 1238 | Richman, Steven and Marsha | 1690 Renaissance Commons Blvd., Unit 1422 | Boynton Beach | FL | 33426 | DGLNPQ | $212,612.84 |
| 1239 | Ricketts, Joseth | 5339 SW 40 Avenue | Fort Lauderdale | FL | 33314 | ILNOP | $124,423.00 |

Case 1:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 421 of 647
Case 1:11-cv-22408-MGC Document 270 Entered on FLSD Docket 08/13/2014 Page 569 of 909
Taishan - Preliminary Florida Contests and Setoffs

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 1240 | Riley, Estela | 419 SW 19th Terrace | Cape Coral | FL | 33914 | GP | $12,933.59 |
| 1242 | Rincon, Gabriel and Rosas, Luz Angela | 6038 NW 116 Drive | Coral Springs | FL | 33076 | GJLNPQ | $11,898.89 |
| 1244 | Risko, Mark and Beverly Ann | 5910 Bilek Drive | Pensacola | FL | 32526 | DHIJKP | $18,560.98 |
| 1245 | Rismiller, Tod | 3619 Oasis Boulevard | Cape Coral | FL | 33915 | DJP | $10,000.00 |
| 1246 | Rivas, Rigoberto and Maria, Mitjans, Luis and Loynaz, Arturo | 3506 Tropicana Parkway West | Cape Coral | FL | 33993 | DJP | $5,125.92 |
| 1247 | Rivera, Damian and Sonia | 3518 20th Street, SW | Lehigh Acres | FL | 33976 | GJLPQ | $12,213.68 |
| 1248 | Rivera, Jorge and Margarita | 306 West Tropicana Parkway | Cape Coral | FL | 33993 | GJLNPQ | $15,141.64 |
| 1250 | RMM Investments, LLC | 1660 Renaissance Commons Blvd, Unit 2112 | Boynton Beach | FL | 33426 | DJLNPQ | $95,162.61 |
| 1251 | RMM Investments, LLC | 1690 Renaissance Commons Blvd., Unit 1103 | Boynton Beach | FL | 33426 | LNPQ | $188,319.32 |
| 1253 | Roberts, Alice and Dickinson, William | 11825 Bayport Lane | Ft. Myers | FL | 33908 | IJLNPQ | $23,738.28 |
| 1255 | Robertson, Laurie, Teague, Eddie and Michele | 2807 21st Street W | Lehigh Acres | FL | 33971 | DP | $15,657.35 |
| 1256 | Robichaux, Ronald Jr. | 1416 Emerald Dunes Drive | Sun City Center | FL | 33573 | DGJP | $24,934.20 |
| 1257 | Robichaux, Ronald Jr. | 1422 Emerald Dunes Drive | Sun City Center | FL | 33573 | DGHP | $23,114.20 |
| 1258 | Robinhood Terrace, LLC | 5611 Shannon Drive | Fort Pierce | FL | 34951 | DJP | $7,525.31 |
| 1259 | Robinson, Louis | 2809 37th St. S.W. | Leigh Acres | FL | 33976 | IJP | $6,545.39 |
| 1260 | Robinson, Peter | 8580 Athena Court | Lehigh Acres | FL | 33971 | DJLNPQ | $7,901.72 |
| 1261 | Robinson, Taurean and Jo-Ann | 22766 SW 89th Place | Cutler Bay | FL | 33190 | DIP | $2,964.99 |
| 1262 | Robinson, Terry and Wallace | 2828 Wallace Lake Road | Pace | FL | 32571 | IP | $18,269.41 |
| 1263 | Robles, Amparo and Jose | 12430 SW 50th Street, Apt. 147 | Miramar | FL | 33027 | DFJP | $5,573.01 |
| 1264 | Rocca, Frank and Kathleen | 2735 NW 42nd Avenue | Cape Coral | FL | 33993 | GIJOP | $19,258.14 |
| 1265 | Rodgers, Albert and Aquilla | 4783 SW 176 Terrace | Miramar | FL | 33029 | JP | $21,799.95 |
| 1266 | Rodriguez, Iyanse | 1483 Southwest 146 Court | Miami | FL | 33184 | HIJP | $78,365.93 |
| 1267 | Rodriguez, Otonier and Margarita | 14141 Whitter Lane | Port Charlotte | FL | 33981 | FJP | $5,103.08 |
| 1268 | Rodriguez, Victor and Jill | 304 Lancelot Avenue | Lehigh Acres | FL | 33974 | DHJP | $12,729.78 |

Case 1:11-cv-22408-MGC Document 270 Filed on FLSD Docket 08/15/2019 Page 57 of 97
Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 422 of 647
Taishan - Preliminary Florida Contests and Setoffs

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 1269 | Rodriguez, Wilfredo and Angeline Rodriguez, Barbara | 18069 S.W. 54th Street | Miramar | FL | 33029 | GHJLNPQ | $0.00 |
| 1270 | Romain, Doug | 10846 SW Meeting Street | Port St. Lucie | FL | 34987 | IJLNPQ | $15,923.15 |
| 1271 | Romero, M.D. Jacqueline and Jose | 3645 7th Avenue, NW | Naples | FL | 34120 | LNPQ | $744,356.95 |
| 1273 | Rose, Mary and Donnelly, James | 11837 Bayport Lane Unit #4 | Ft. Myers | FL | 33908 | DGP | $9,518.86 |
| 1274 | Rose, Michael | 185 Medici Terrace | North Venice | FL | 34275 | GIJLNP | $17,127.10 |
| 1275 | Rosen, Kevin | 17830 Monte Vista Drive | Boca Raton | FL | 33496 | DHIJP | $340,974.34 |
| 1276 | Rosen, Michael | 17538 Middlebrook Way | Boca Raton | FL | 33496 | DHIJP | $323,430.05 |
| 1277 | Rosen, Sheree | 11618 Hammocks Glade Drive | Riverview | FL | 33569 | DGJP | $0.00 |
| 1278 | Ross, Robert and Natalie | 1418 Emerald Dunes Drive | Sun City Center | FL | 33573 | DGP | $18,923.24 |
| 1279 | Roth, Stephen and Leslie | 6050 Jonathan's Bay Circle Unit 402 | Ft. Myers | FL | 33908 | DGIJLNPQ | $13,530.54 |
| 1280 | Rousseau, Gisselle | 1976 SE 23 Avenue | Homestead | FL | 33035 | DIJP | $1,193.90 |
| 1281 | Rovezzi, James and Narcissa | 1660 Renaissance Commons Blvd, Unit 2418 | Boynton Beach | FL | 33426 | DLNPQ | $212,018.27 |
| 1282 | Roy, Brien ("Clifford") | 8007 West 36 Avenue, Apt. 4 | Hialeah | FL | 33018 | DHIJP | $4,547.04 |
| 1283 | Roy, Gerard and Nancy | 2832 SW 36th Terrace | Cape Coral | FL | 33914 | GLNPQ | $199,193.44 |
| 1284 | Roy, Sandy | 10580 SE Stephanie Way Unit 203 | Port St. Lucie | FL | 34987 | DIP | $0.00 |
| 1285 | RSJ Hospitalet Investments, LLC | 8049 W. 36th Avenue #6 | Hialeah | FL | 33018 | JMNP | $4,547.04 |
| 1286 | Rubin, Mitchell | 9800 Cobblestone Lakes Court | Boynton Beach | FL | 33472 | DGIP | $21,183.75 |
| 1287 | Ruff, Jeremy and Lina | 1601 W. 15th Street | Lehigh Acres | FL | 33972 | HPQ | $132,452.35 |
| 1288 | Russo, Charles and Josephine | 2246 Sifield Greens Way | Sun City Center | FL | 33573 | JLNP | $14,800.70 |
| 1289 | Rutski, Timothy and Minnie | 8807 Osceola Acres Trail | Odessa | FL | 33556 | DJPQ | $39,436.98 |

Case 1:09-md-02047-EEF-MBN Document 22380-10 Filed 12/09/19 Page 423 of 647
Case 2:09-md-02047-EEF-JCW Document 22297-10 Filed 08/15/2019 Page 571 of 638
Taishan - Preliminary Florida Contests and Setoffs

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 1290 | Ryffel, Eric | 2700 Rita Avenue North | Lehigh Acres | FL | 33971 | DGJLNP | $7,425.16 |
| 1291 | Sabatino, Dominic and Hiskey, Richard | 1660 Renaissance Commons Blvd, Unit 2518 | Boynton Beach | FL | 33426 | LNPQ | $187,579.38 |
| 1292 | Sabesan, Lawrence | 6308 41st Court | Sarasota | FL | 34243 | HLNPQ | $218,166.25 |
| 1293 | Saeks, Sieglinde | 2810 NW 14th Terrace | Cape Coral | FL | 33993 | HJP | $11,288.26 |
| 1294 | Sage, Richard and Barbara | 1705 NW 14th Avenue | Cape Coral | FL | 33993 | GJLNPQ | $223,342.18 |
| 1295 | Sakalauskas, Alberto and Laura | 3142 SW Martin Street | Port St. Lucie | FL | 34988 | HJLNPQ | $13,764.95 |
| 1297 | Salas, Esteban and Gomez, Iveth | 8129 W. 36th Avenue #1 | Hialeah | FL | 33018 | IP | $4,563.81 |
| 1298 | Saliba, Dawn | 6102 Raintree Trail | Fort Pierce | FL | 34950 | DIP | $6,315.10 |
| 1299 | Salman, Samir and Julia | 3620 SW 3rd Terrace | Cape Coral | FL | 33991 | DGLNPQ | $14,265.89 |
| 1300 | Salter, Kenneth and Cindy | 5484 Inwood Drive | Pace | FL | 32571 | HIJP | $10,555.59 |
| 1301 | Saltzman, Scott and Jordana | 8485 Breezy Hill Drive | Boynton Beach | FL | 33437 | DLNPQ | $0.00 |
| 1302 | Samos Holdings, LLC (Foustanellas, Peter) | 27021 Eden Road Ct. | Bonita Springs | FL | 34135 | HJLNPQ | $18,196.71 |
| 1303 | San Filippo, Keith and Linda | 3208 NE 4 Street | Pompano Beach | FL | 33069 | DGIJP | $21,786.47 |
| 1304 | Sanchez, Julio and Nelaine | 8037 W. 36th Avenue Unit 1 | Hialeah | FL | 33018 | DIP | $4,563.81 |
| 1305 | Sanden, Paul Conrad | 824 Boca Ciega Isle Drive | St. Petersburg | FL | 33706 | DHIJP | $86,711.72 |
| 1306 | Sangiovanni, Ralph and Catherine | 2219 SE 27th Street | Cape Coral | FL | 33904 | DIJP | $32,453.29 |
| 1307 | Santacruz, Jose and Yvette | 4806 Portmarnock Way | Wesley Chapel | FL | 33543 | DIJP | $7,707.16 |
| 1308 | Santana, Francisco and Maricellis and Santana, Ramon and Caren | 11311 Bridge Pine Drive | Riverview | FL | 33569 | GJP | $15,168.38 |
| 1309 | Santiago, Cesar and Crespo, Eileen | 12978 Turtle Cove Trail | North Ft. Myers | FL | 33903 | BGHLNPQ | $0.00 |
| 1310 | Santillo, Keith | 1690 Renaissance Commons Blvd., Unit 1323 | Boynton Beach | FL | 33426 | BHLNPQ | $201,354.62 |
| 1311 | Santimauro, Robert and Joanne | 22220 Red Laurel Lane | Estero | FL | 33928 | DGJLNPQ | $33,409.26 |
| 1312 | Santos, Hector and Fenta, Nigest | 7516 Bridgeview Drive | Wesley Chapel | FL | 33545 | DIP | $0.00 |
| 1313 | Santos, Joel | 3223 31st Street West | Lehigh Acres | FL | 33971 | EGIJP | $8,416.23 |

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 424 of 647
Case 1:11-cv-22408-MGC Document 270-1 Entered on FLSD Docket 08/13/2012 Page 572 of
999
Taishan - Preliminary Florida Contests and Setoffs

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 1314 | Sarwar, Choudhry | 19263 Stonehedge Drive | Tampa | FL | 33647 | P | $6,000.25 |
| 1315 | Schafer, Clyde and Pauline | 814 King Leon Way | Sun City Center | FL | 33573 | GLNP | $11,618.41 |
| 1316 | Schandelmeier, Patricia | 25748 Deep Creek Blvd. | Punta Gorda | FL | 33983 | DHJP | $0.00 |
| 1317 | Schatzle, Judith | 3445 NW 18th Terrace | Cape Coral | FL | 33993 | GHIJLNPQ | $18,642.54 |
| 1318 | Schieber, Sid and Susan | 540 Bimini Bay Blvd. | Apollo Beach | FL | 33572 | HJP | $16,849.01 |
| 1319 | Schleifer, Dr. Jochen and Riehm, Dr. Susanne | 844 SW 36th Terrace | Cape Coral | FL | 33914 | GIJLNPQ | $14,888.99 |
| 1320 | Schneider-Christians, Michael and Verena | 2549 Deerfield Lake Court | Cape Coral | FL | 33909 | DGHJLNPQ | $11,628.67 |
| 1322 | Schour, Stephen and Mitchell, Susan | 1690 Renaissance Commons Blvd., Unit 1106 | Boynton Beach | FL | 33426 | HLNPQ | $190,811.42 |
| 1323 | Schulman, Norman and Roxanne | 6580 Martinque Way | Vero Beach | FL | 32967 | DHIJLNP | $23,504.01 |
| 1324 | Scocco, Bart | 3330 NW 39th Lane | Cape Coral | FL | 33993 | DGJP | $4,148.25 |
| 1325 | Scott, Benjamin and Fay | 5256 NW S. Lovett Circle | Port St. Lucie | FL | 34986 | GILNP | $7,706.39 |
| 1326 | Scott, Cynthia and Jonathan | 1984 Gloria Circle | Palm Bay | FL | 32905 | DHIP | $29,039.05 |
| 1327 | Scott, Denise | 14051 Danpark Loop | Ft. Myers | FL | 33912 | DJP | $7,765.36 |
| 1328 | Scott, James and Karen | 525 SW Akron Avenue | Stuart | FL | 34994 | DGILNPQ | $21,711.53 |
| 1329 | Seal, Liz Eneida | 543 Sacramento Street | North Fort | FL | 33903 | AGJLNPQ | $0.00 |
| 1330 | Seddon, Robert and Joan | 13946 Clubhouse Drive | Tampa | FL | 33618 | DGP | $17,815.66 |
| 1331 | Segnello, Jeffrey and Monica | 393 NW Sheffield Circle | Port St. Lucie | FL | 34983 | DJP | $29,587.21 |
| 1332 | Seijo, Lazaro and Mirta | 1927 SE 22nd Drive | Homestead | FL | 33035 | BDHILPQ | $0.00 |
| 1333 | Sellman, Terry and Donna | 10710 Miracle Lane | New Port Richey | FL | 34654 | HIJLNPQ | $18,947.56 |
| 1334 | Sena, Dale | 816 West Braddock Street | Tampa | FL | 33603 | GP | $0.00 |
| 1335 | Serajuddowla, Mohammad and Ruth | 8710 Pegasus Drive | Lehigh Acres | FL | 33971 | LNPQ | $16,954.86 |
| 1338 | Serrino, Jeanine | 1220 NW 17th Street | Cape Coral | FL | 33993 | DJLNOPQ | $192,590.55 |
| 1339 | Shaw, John | 827 SW 17th Street | Cape Coral | FL | 33991 | DP | $11,316.34 |
| 1340 | Shaw, Scott and Jackie | 3125 SW 22nd Avenue | Cape Coral | FL | 33914 | DIJP | $12,884.29 |
| 1341 | Shedd, Kevin and Christine | 229 NW 25th Avenue | Cape Coral | FL | 33993 | DP | $26,637.87 |

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 425 of 647
Case 1:11-cv-22408-MGC Document 270 Entered on FLSD Docket 08/13/2019 Page 573 of
Taishan - Preliminary Florida Contests and Setoffs
999

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 1342 | Sheehan, Michael and Willman, Courtney and Hussey, Greer A. | 3531 SW 15th Place | Cape Coral | FL | 33914 | GLNPQ | $14,617.06 |
| 1343 | Shehadi, Fred and Susan | 1423 Joseph Circle | Gulf Breeze | FL | 32563 | DHILNPQ | $25,512.84 |
| 1344 | Shelmandine, Gerald A. and Connie L., Hartley, Charles and Janet | 11106 Kiskadee Circle | New Port Richey | FL | 34654 | IP | $4,696.48 |
| 1345 | Sher, Golub and Donna | 30018 Five Farms Avenue | Wesley Chapel | FL | 33543 | GILNPQ | $8,792.77 |
| 1346 | Sheridan Beach Club Condominium Number Three, Inc. | 509 E. Sheridan Street, Unit 301 | Dania Beach | FL | 33004 | AEHIJMNPQ | $4,348.01 |
| 1347 | Sheridan Beach Club Condominium Number Three, Inc. | 509 E. Sheridan Street, Unit 304 | Dania Beach | FL | 33004 | EHIJLNPQ | $4,348.01 |
| 1348 | Sheridan Beach Club Condominium Number Three, Inc. | 509 E. Sheridan Street, Unit 307 | Dania Beach | FL | 33004 | EGHIMNPQ | $4,348.01 |
| 1349 | Sheridan Beach Club Condominium Number Three, Inc. | 509 E. Sheridan Street, Unit 408 | Dania Beach | FL | 33004 | EIP | $4,726.09 |
| 1350 | Sheridan Beach Club Condominium Number Three, Inc. | 519 E. Sheridan Street, Unit 103 | Dania Beach | FL | 33004 | EGIJP | $4,348.01 |
| 1351 | Sheridan Beach Club Condominium Number Three, Inc. | 519 E. Sheridan Street, Unit 306 | Dania Beach | FL | 33004 | EHIJMNPQ | $4,348.01 |
| 1352 | Sheridan Beach Club Condominium Number Three, Inc. | 529 E. Sheridan Street, Pool Bath | Dania Beach | FL | 33004 | AEFIJP | $3,788.44 |
| 1353 | Sheridan Beach Club Condominium Number Three, Inc. | 529 E. Sheridan Street, Unit 105 | Dania Beach | FL | 33004 | EIJP | $4,348.01 |
| 1354 | Sheridan Beach Club Condominium Number Three, Inc. | 529 E. Sheridan Street, Unit 404 | Dania Beach | FL | 33004 | EIJP | $4,726.09 |
| 1355 | Sheridan Beach Club Condominium Number Three, Inc. (509 Sheridan Street 103 Land Trust) | 509 E Sheridan Street Unit 103 | Dania Beach | FL | 33004 | EIP | $4,348.01 |
| 1356 | Sheridan Beach Club Condominium Number Three, Inc. (Beckmeier, Marc and Gavidia, Laura) | 519 E. Sheridan Blvd. #206 | Dania Beach | FL | 33004 | EGIJP | $4,348.01 |

Taishan - Preliminary Florida Contests and Setoffs

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 1357 | Sheridan Beach Club Condominium Number Three, Inc. (Bishop, Chad) | 529 E. Sheridan Street #403 | Dania Beach | FL | 33004 | EHIJMPQ | $5,954.88 |
| 1358 | Sheridan Beach Club Condominium Number Three, Inc. (Bracco, Kirsten) | 529 E. Sheridan Street #406 | Dania Beach | FL | 33004 | EIJP | $5,954.88 |
| 1359 | Sheridan Beach Club Condominium Number Three, Inc. (Comaze-FL, LLC- Javier Zepeda) | 519 E. Sheridan Street, #101 | Dania Beach | FL | 33004 | EIJLNPQ | $4,348.01 |
| 1360 | Sheridan Beach Club Condominium Number Three, Inc. (Ferrari, Ercole and Divina) | 509 E. Sheridan Street, #308 | Dania Beach | FL | 33004 | EGILNPQ | $4,348.01 |
| 1361 | Sheridan Beach Club Condominium Number Three, Inc. (Galiardo, Frederick and Jeanne) | 509 E. Sheridan, Unit 405 | Dania Beach | FL | 33004 | EGIJP | $5,954.88 |
| 1362 | Sheridan Beach Club Condominium Number Three, Inc. (Glassman, Monica and Childs, Joan) | 529 E. Sheridan Street #307 | Dania Beach | FL | 33004 | EJLNPQ | $4,348.01 |
| 1363 | Sheridan Beach Club Condominium Number Three, Inc. (Gravel, Kathie) | 529 E. Sheridan, Unit 301 | Dania Beach | FL | 33004 | EIJLNPQ | $4,348.01 |
| 1364 | Sheridan Beach Club Condominium Number Three, Inc. (Gunson, Christopher) | 509 E. Sheridan, Unit 305 | Dania Beach | FL | 33004 | EGIJP | $4,348.01 |
| 1365 | Sheridan Beach Club Condominium Number Three, Inc. (Miller, Brenda J. and  Martinez, William) | 509 E. Sheridan Street #306 | Dania Beach | FL | 33004 | EGIP | $4,348.01 |
| 1366 | Sheridan Beach Club Condominium Number Three, Inc. (Ospina, Richard) | 509 E. Sheridan Street #303 | Dania Beach | FL | 33004 | EGIP | $4,348.01 |
| 1367 | Sheridan Beach Club Condominium Number Three, Inc. (Romero, Roberto M.) | 519 E. Sheridan Street #105 | Dania Beach | FL | 33004 | EGIJLNPQ | $4,348.01 |

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 427 of 647
Case 1:11-cv-22408-MGC Document 27-1 Entered on FLSD Docket 08/15/2019 Page 575 of 999
Taishan - Preliminary Florida Contests and Setoffs

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 1368 | Sheridan Beach Club Condominium Number Three, Inc. (Royak, Paula and Jules) | 519 E. Sheridan Street #107 | Dania Beach | FL | 33004 | EGJLNPQ | $4,348.01 |
| 1369 | Sheridan Beach Club Condominium Number Three, Inc. (Santoni, Andrea) | 529 E. Sheridan Street #408 | Dania Beach | FL | 33004 | EGJP | $0.00 |
| 1370 | Sheridan Beach Club Condominium Number Three, Inc. (Torchia, Saverio and Ornella) | 509 E. Sheridan Street, #302 | Dania Beach | FL | 33004 | EGILNPQ | $4,348.01 |
| 1371 | Sherman, Aryn and Cody | 3833 Misty Landing Drive Valrico, FL 33594 | Valrico | FL | 33594 | DJP | $10,000.00 |
| 1372 | Sherman, Louise | 11107 Ancient Futures Drive | Tampa | FL | 33647 | JP | $0.00 |
| 1373 | Shuss, Gregory | 10858 Tiberio | Ft. Myers | FL | 33913 | DGILNP | $29,675.34 |
| 1374 | Siddiqui, Hassan | 11429 Laurel Brook Court | Riverview | FL | 33569 | DHP | $33,639.58 |
| 1375 | Siegel, Sandra | 1690 Renaissance Commons Blvd., Unit 1427 | Boynton Beach | FL | 33426 | LNPQ | $202,104.64 |
| 1377 | Siegel, William and Sandra | 3220 NE 4 Street | Pompano Beach | FL | 33069 | DGIP | $22,951.83 |
| 1378 | Sierra, Santos | 8719 Pegasus Drive | Lehigh Acres | FL | 33971 | P | $16,747.07 |
| 1379 | Silva, Maria | 10308 Stone Moss Avenue | Tampa | FL | 33647 | DP | $14,831.96 |
| 1380 | Silva, Raphael and Grace | 10312 Stone Moss Avenue | Tampa | FL | 33647 | DHP | $16,000.25 |
| 1381 | Silverblatt, James and Cheryl | 194 Medici Terrace | North Venice | FL | 34275 | GIJLNPQ | $16,343.47 |
| 1382 | Simonian, Thomas and Petty, Barbara R. | 8582 Athena Court, Bldg. 4, Unit #210 | Lehigh Acres | FL | 33971 | GJLNPQ | $7,901.72 |
| 1383 | Simpson, Kayan and Briscoe, Christopher | 9682 Clemmons Street | Parkland | FL | 33076 | DHIJP | $7,800.69 |
| 1384 | Sims, Fred | 1206 North "V" Street | Pensacola | FL | 32505 | HIP | $5,988.91 |
| 1385 | Sims, Willie | 3720 James Street | Pensacola | FL | 32505 | DHIP | $4,389.60 |
| 1386 | Singh, Govinhd | 8374 Sumner Avenue | Ft. Myers | FL | 33908 | DGJP | $17,723.55 |

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 428 of 647
Case 1:11-cv-22408-MGC Document 27 Entered on FLSD Docket 08/13/2014 Page 376 of
Taishan - Preliminary Florida Contests and Setoffs

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 1387 | Singleton, Robert and Krista | 5201 W. Neptune Way | Tampa | FL | 33609 | JLNPQ | $20,761.04 |
| 1388 | Sistrunk, Earl | 6615 Sable Ridge Lane | Naples | FL | 34109 | DGIMNPQ | $16,062.48 |
| 1389 | Skair, Kevin and Fabiola | 11148 Ancient Futures Drive | Tampa | FL | 33647 | DJMNPQ | $12,926.82 |
| 1390 | Skipper, Phillip and Cheryl | 1600 Evers Haven | Cantonment | FL | 32533 | DHIP | $13,231.09 |
| 1391 | Smith, Christopher | 5205 Athens Way North | North Venice | FL | 34293 | GIJP | $1,248.68 |
| 1392 | Smith, Gloria and Robert | 11837 Bayport Lane, Unit 1, Building 7, Phase 2 | Ft. Myers | FL | 33908 | GILNPQ | $9,518.86 |
| 1393 | Smith, Richard | 8001 Sherwood Circle | Labelle | FL | 33935 | DFP | $9,162.40 |
| 1394 | Smith, Scott and Wendy | 3840 Sorrel Vine Drive | Wesley Chapel | FL | 33544 | DHIJP | $10,000.00 |
| 1395 | Smith-Jacob, Shakira Pitman, Kendrick | 12421 SW 50 Court #337 | Miramar | FL | 33027 | IP | $5,599.48 |
| 1396 | Solana, Marlen | 507 Lincoln Avenue | Lehigh Acres | FL | 33972 | DHJP | $6,630.23 |
| 1397 | Somohano, Martha | 388 NE 34th Avenue | Homestead | FL | 33033 | IP | $12,474.31 |
| 1398 | Sonnie, Eric and Andrea | 10864 Tiberio Drive | Ft. Myers | FL | 33913 | HJP | $10,238.06 |
| 1400 | Sotomayor, Josefa (aka Josefa Echeverria) and Alvaro Alcivar | 8069 NW 108 Place | Doral | FL | 33178 | EIJP | $4,326.42 |
| 1401 | Sparkman, David and Elizabeth | 3014 Via Parma Street | Plant City | FL | 33566 | IJLNPQ | $11,548.06 |
| 1402 | Spencer, Edna | 3806 N. 24th Street | Tampa | FL | 33610 | HP | $11,972.35 |
| 1403 | Spiga, Saturnino and Susan | 8617 Via Rapallo Drive #203 | Estero | FL | 33928 | FJP | $12,356.36 |
| 1404 | Sponsel, David and Julia | 3332 Grassglen Place | Wesley Chapel | FL | 33544 | DHIJP | $19,141.64 |
| 1405 | Sposa, Jacqueline | 10639 Camarelle Circle | Ft. Myers | FL | 33913 | DGILNP | $22,510.44 |
| 1407 | Stamper, Kevin and Si-Jong | 430 Breckenridge Circle, SE | Palm Bay | FL | 32909 | HIJP | $15,636.34 |
| 1408 | Steed, Max | 2580 Keystone Lake Drive | Cape Coral | FL | 33993 | HJLNPQ | $11,628.67 |
| 1409 | Steele Family Enterprises, LLC | 6736 Magnolia Point Drive | Land O'Lakes | FL | 34637 | DGJLNPQ | $10,431.44 |
| 1410 | Stein, Amy | 19269 Stone Hedge Drive | Tampa | FL | 33647 | DGP | $1,029.00 |
| 1412 | Stevens, Gregory | 14151 Citrus Crest Circle | Tampa | FL | 33625 | DP | $11,748.21 |
| 1413 | Stewart, Chester | 6848 Long Leaf Drive | Parkland | FL | 33076 | DGIJP | $240,615.55 |
| 1414 | Stewart, Joseph and Sandra | 4338 Wildstar Circle | Wesley Chapel | FL | 33544 | GHILNPQ | $15,400.59 |
| 1415 | Stewart, Stephen and Danielle | 6415 McRae Place | Vero Beach | FL | 32967 | DHJLNPQ | $16,812.90 |
| 1416 | Stock, Wayne C. | 10604 Broadland Pass | Tohonotosassa | FL | 33592 | HP | $0.00 |

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 429 of 647
Case 1:11-cv-22408-MGC Document 270 Entered on FLSD Docket 08/13/2019 Page 977 of 999
Taishan - Preliminary Florida Contests and Setoffs

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 1417 | Strehle, Etta and Jones, Bruce | 542 Bimini Bay Boulevard | Apollo Beach | FL | 33572 | P | $21,770.93 |
| 1418 | Strelec, Betty A. | 5187 Kumquat Avenue | North Port | FL | 34286 | DHIJP | $9,980.94 |
| 1419 | Stringer, Allen and June | 306 Cirpriani Way | North Venice | FL | 34275 | GIJP | $14,160.65 |
| 1420 | Sturm, Ann | 14055 Dan Park Loop | Ft. Myers | FL | 33912 | DHJP | $8,875.27 |
| 1421 | Sullivan, William and Sheila | 12623 20th Street East | Parrish | FL | 34219 | GIP | $19,605.95 |
| 1422 | Summerall, Charles and Sharon | 2060 Deerwood Road | Seffner | FL | 33584 | GJLNPQ | $0.00 |
| 1423 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | 8851 Sunrise Lakes Blvd - Unit 76-218 - Moore, V. BLDG 76. APT 218 | Sunrise | FL | 33322 | EGHIJKLNPQ | $2,268.52 |
| 1424 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | 2721 N Pine Island Road - Bldg. 69, apt. 101 (Parson) | Sunrise | FL | 33322 | EGHIJLNPQ | $3,213.74 |
| 1425 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | 2721 N Pine Island Road - Bldg. 69, apt. 102 (Van Kolem) | Sunrise | FL | 33322 | EGHIJKLNPQ | $3,213.74 |
| 1426 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | 2721 N Pine Island Road - Bldg. 69, apt. 104 (Marques,H) | Sunrise | FL | 33322 | EGHIJKLNPQ | $3,213.74 |
| 1427 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | 2721 N Pine Island Road - Bldg. 69, apt. 106 (Llanio) | Sunrise | FL | 33322 | EGHIJKLNPQ | $2,419.76 |
| 1428 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | 2721 N Pine Island Road - Bldg. 69, apt. 108 (Cyrus) | Sunrise | FL | 33322 | EGHIJKLNPQ | $2,419.76 |
| 1429 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | 2721 N Pine Island Road - Bldg. 69, apt. 205 (Schapson) | Sunrise | FL | 33322 | EGHIJKLNPQ | $2,419.76 |
| 1430 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | 2721 N Pine Island Road - Bldg. 69, apt. 206 (Parro) | Sunrise | FL | 33322 | EGHIJKLNPQ | $2,419.76 |

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 1431 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | 2721 N Pine Island Road - Bldg. 69, apt. 209 (Sabina) | Sunrise | FL | 33322 | EGHIJKLNPQ | $3,213.74 |
| 1432 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | 2721 N Pine Island Road - Bldg. 69, apt. 210 (Santiago) | Sunrise | FL | 33322 | EGHIJKLNPQ | $3,213.74 |
| 1433 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | 2721 N Pine Island Road - Bldg. 69, apt. 302 (Bogen) | Sunrise | FL | 33322 | EGHIJKLNPQ | $3,213.74 |
| 1434 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | 2721 N Pine Island Road - Bldg. 69, apt. 304  (Williams) | Sunrise | FL | 33322 | EGHIJLNPQ | $3,213.74 |
| 1435 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | 2721 N Pine Island Road - Bldg. 69, apt. 305  (Lucarello) | Sunrise | FL | 33322 | EGHIJKLNPQ | $2,419.76 |
| 1436 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | 2721 N Pine Island Road - Bldg. 69, apt. 306  (Potter Johnson) | Sunrise | FL | 33322 | EGHIJKLNPQ | $2,419.76 |
| 1437 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | 2721 N Pine Island Road - Bldg. 69, apt. 308 (Farid) | Sunrise | FL | 33322 | EGHIJKLNPQ | $2,419.76 |
| 1438 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | 2721 N Pine Island Road - Bldg. 69, apt. 309 (Barnwell) | Sunrise | FL | 33322 | EGHIJKLNPQ | $3,213.74 |
| 1439 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | 2721 N Pine Island Road - Bldg. 69, apt. 310  (Benitez-Reyes) | Sunrise | FL | 33322 | EGHIJLNPQ | $3,213.74 |
| 1440 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | 2800 N Pine Island Road  - Bldg. 62, apt. 309 (Messina Nelly) | Sunrise | FL | 33322 | EGHIJKLNPQ | $3,213.74 |

Case 1:11-cv-22408-MGC Document 270-10 Entered on FLSD Docket 09/15/2011 Page 9 of 579
Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 431 of 647
Taishan - Preliminary Florida Contests and Setoffs

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 1441 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | 2801 N Pine Island Road - Bldg 72 apt 102 | Sunrise | FL | 33322 | EGHIJKLNPQ | $3,213.74 |
| 1442 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | 2801 N Pine Island Road - Bldg 72 apt 104 (Dustman) | Sunrise | FL | 33322 | EGHIJKLNPQ | $3,213.74 |
| 1443 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | 2801 N Pine Island Road - Bldg 72 apt 201 (Sanchez) | Sunrise | FL | 33322 | EGHIJKLNPQ | $3,213.74 |
| 1444 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | 2801 N Pine Island Road - Bldg 72 apt 202 (Levine) | Sunrise | FL | 33322 | EGHIJKLNPQ | $3,213.74 |
| 1445 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | 2801 N Pine Island Road - Bldg 72 apt 303 (Bronstein) | Sunrise | FL | 33322 | EGHIJKLNPQ | $3,213.74 |
| 1446 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | 2811 N Pine Island Road - Bldg. 71, apt. 112 Thomas | Sunrise | FL | 33322 | EGHIJKLNPQ | $3,213.74 |
| 1447 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | 2811 N Pine Island Road - Bldg. 71, apt. 311 Acosta | Sunrise | FL | 33322 | EGHIJKLNPQ | $3,213.74 |
| 1448 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | 2811 N Pine Island Road - Bldg. 71, apt. 312 Feldman | Sunrise | FL | 33322 | EGHIJKLNPQ | $3,213.74 |
| 1449 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | 2911 N Pine Island Road - Bldg 66 Apt 302 | Sunrise | FL | 33322 | EGHIJKLNPQ | $3,213.74 |
| 1450 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | 2911 N Pine Island Road - Bldg. 66 apt. 103 Kelman | Sunrise | FL | 33322 | EGHIJKLNPQ | $3,213.74 |

Case 1:11-cv-22408-MGC Document 27 Entered on FLSD Docket 08/15/2019 Page 580 of 593
Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 432 of 647
Taishan - Preliminary Florida Contests and Setoffs

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 1451 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | 8851 Sunrise Lakes Blvd - Unit 76-201 - Quint, Irving & Yvette. B76-Unit 201 | Sunrise | FL | 33322 | EGHIJKLNPQ | $2,835.65 |
| 1452 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | 8851 Sunrise Lakes Blvd - Unit 76-202 - McFarlane, Earle. BLDG 76. Unit 202 | Sunrise | FL | 33322 | EGHIJKLNPQ | $2,344.14 |
| 1453 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | 8851 Sunrise Lakes Blvd - Unit 76-203 - MCClean, Henry. BLDG, 76. APT, 203 | Sunrise | FL | 33322 | EGHIJKLNPQ | $3,024.70 |
| 1454 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | 8851 Sunrise Lakes Blvd - Unit 76-207 - Morales. BLDG, 76. APT. 207 | Sunrise | FL | 33322 | EGHIJKLNPQ | $3,024.70 |
| 1455 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | 8851 Sunrise Lakes Blvd - Unit 76-208 - Delcolle, P. BLDG.76, APT. 208 | Sunrise | FL | 33322 | EGHIJKLNPQ | $2,268.52 |
| 1456 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | 8851 Sunrise Lakes Blvd - Unit 76-210 - Goldstein, F. BLDG 76.APT 210 | Sunrise | FL | 33322 | EGHIJKLNPQ | $3,213.74 |
| 1457 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | 8851 Sunrise Lakes Blvd - Unit 76-211 - Rodriguez (Figueroa). BLDG 76. APT 211 | Sunrise | FL | 33322 | EGHIJKLNPQ | $2,268.52 |
| 1458 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | 8861 Sunrise Lakes Blvd - Unit 83-311 - Herman. BLDG 83. APT 311 | Sunrise | FL | 33322 | EGHIJKLNPQ | $3,213.74 |

Case 0:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 433 of 647
Case 1:11-cv-22408-MGC Document 27 Entered on FLSD Docket 08/15/2013 Page 581 of 693
Taishan - Preliminary Florida Contests and Setoffs

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 1459 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | 8881 Sunrise Lakes Blvd - Unit 75-207 | Sunrise | FL | 33322 | EGHIJKLNPQ | $2,419.76 |
| 1460 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | 8881 Sunrise Lakes Blvd - Unit 75-208 - Friedman, Lola. BLDG. 75, APT. 208 | Sunrise | FL | 33322 | EGHIJKLNPQ | $2,419.76 |
| 1461 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | 8881 Sunrise Lakes Blvd - Unit 75-308 - Nott, Leete. BLDG. 75, APT. 308 | Sunrise | FL | 33322 | EGHIJKLNPQ | $2,419.76 |
| 1462 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | 9681 Sunrise Lakes Blvd - Bldg 136 Apt 307 | Sunrise | FL | 33322 | EGHIJKLNPQ | $3,894.30 |
| 1463 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | 9681 Sunrise Lakes Blvd - Bldg 136 Apt 207 | Sunrise | FL | 33322 | EGHIJKLNPQ | $3,213.74 |
| 1464 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | 9681 Sunrise Lakes Blvd - Bldg 136 Apt 310 | Sunrise | FL | 33322 | EGHIJKLNPQ | $3,690.13 |
| 1465 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | 9900 Sunrise Lakes Blvd - Bldg 153 Apt 311 | Sunrise | FL | 33322 | EGHIJKLNPQ | $3,213.74 |
| 1466 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | 9900 Sunrise Lakes Blvd - Bldg 153 Apt 312 | Sunrise | FL | 33322 | EGHIJKLNPQ | $3,213.74 |
| 1467 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | Bldg. 68 – 8841 Sunrise Lakes Blvd., Unit 303 | Sunrise | FL | 33322 | EGHIKLNPQ | $3,213.74 |
| 1468 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | Bldg. 69 – 2721 Pine Island Road N., Unit 201 | Sunrise | FL | 33322 | EGHIKLNPQ | $3,213.74 |

Case 1:11-cv-22408-MGC Document 27 Entered on FLSD Docket 08/15/2011 Page 582 of
Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 434 of 647
Taishan - Preliminary Florida Contests and Setoffs

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 1469 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | Bldg. 69 – 2721 Pine Island Road N., Unit 202 | Sunrise | FL | 33322 | EGHIKLNPQ | $3,213.74 |
| 1470 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | Bldg. 69 – 2721 Pine Island Road N., Unit 203 | Sunrise | FL | 33322 | EGHIKLNPQ | $3,213.74 |
| 1471 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | Bldg. 69 – 2721 Pine Island Road N., Unit 301 | Sunrise | FL | 33322 | EGHIKLNPQ | $3,213.74 |
| 1472 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | Bldg. 69 – 2721 Pine Island Road N., Unit 303 | Sunrise | FL | 33322 | EGHIKLNPQ | $3,213.74 |
| 1473 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | Bldg. 71 – 2811 Pine Island Road N., Unit 210 | Sunrise | FL | 33322 | EGHIKLNPQ | $3,213.74 |
| 1474 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | Bldg. 71 – 2811 Pine Island Road N., Unit 310 | Sunrise | FL | 33322 | EGHIKLNPQ | $3,213.74 |
| 1475 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | Bldg. 72 – 2801 Pine Island Road N., Unit 101 | Sunrise | FL | 33322 | EGHIJKLNPQ | $2,419.76 |
| 1476 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | Bldg. 72 – 2801 Pine Island Road N., Unit 203 | Sunrise | FL | 33322 | EGHIJKLNPQ | $3,213.74 |
| 1477 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | Bldg. 72 – 2801 Pine Island Road N., Unit 301 | Sunrise | FL | 33322 | EGHIJKLNPQ | $3,213.74 |
| 1478 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | Bldg. 72 – 2801 Pine Island Road N., Unit 302 | Sunrise | FL | 33322 | EGHIJKLNPQ | $2,419.76 |

Case 1:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 435 of 647
Case 1:11-cv-22408-MGC Document 27 Entered on FLSD Docket 08/15/2019 Page 583 of 593
Taishan - Preliminary Florida Contests and Setoffs

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 1479 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | Bldg. 72 – 2801 Pine Island Road N., Unit 304 | Sunrise | FL | 33322 | EGHIKLNPQ | $3,213.74 |
| 1480 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | Bldg. 75 – 8881 Sunrise Lakes Blvd., Unit 107 | Sunrise | FL | 33322 | EGHIJKLNPQ | $2,419.76 |
| 1481 | Sunrise Lakes Condominium Apt Phase III, Inc 1 | Bldg. 76 – 8851 Sunrise Lakes Blvd., Unit 205 | Sunrise | FL | 33322 | EGHIJKLNPQ | $0.00 |
| 1482 | Sunrise Lakes Condominium Apt Phase III, Inc 2 | 2761 Pine - Unit 92-107 - Grumer. BLDG 92. APT 107 | Sunrise | FL | 33322 | EGHIJKLNPQ | $2,835.65 |
| 1483 | Sunrise Lakes Condominium Apt Phase III, Inc 2 | 2761 Pine - Unit 92-310 - Corbeil-Lorange. BLDG 92 Apt 310 | Sunrise | FL | 33322 | EGHIJKLNPQ | $2,835.65 |
| 1484 | Sunrise Lakes Condominium Apt Phase III, Inc 2 | 2761 Pine Island Rd. North, Bldg 92, Unit 209 | Sunrise | FL | 33322 | EGHIJKLNPQ | $2,835.65 |
| 1485 | Sunrise Lakes Condominium Apt Phase III, Inc 2 | 2761 Pine Island Road N, Unit 92-208 | Sunrise | FL | 33322 | EGHIJKLNPQ | $2,835.65 |
| 1486 | Sunrise Lakes Condominium Apt Phase III, Inc 2 | 9001 Sunrise Lakes - 88-312 - Feldman, M BLDG. 88, APT. 312 | Sunrise | FL | 33322 | EGHIJKLNPQ | $3,213.74 |
| 1487 | Sunrise Lakes Condominium Apt Phase III, Inc 2 | 9021 Sunrise Lakes Blvd - Unit 89-102 - Hirsch BLDG. 89, APT. 102 | Sunrise | FL | 33322 | EGHIJKLNPQ | $2,230.71 |
| 1488 | Sunrise Lakes Condominium Apt Phase III, Inc 2 | 9021 Sunrise Lakes Blvd - Unit 89-105 - Vecchio BLDG. 89 APT. 105 | Sunrise | FL | 33322 | EGHIJKLNPQ | $2,230.71 |

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 1489 | Sunrise Lakes Condominium Apt Phase III, Inc 2 | 9041 Sunrise Lakes Blvd - Unit 90-309 - McCaffey, Brad. BLDG 90. APT 309 CCD | Sunrise | FL | 33322 | EGHIJKLNPQ | $2,344.14 |
| 1490 | Sunrise Lakes Condominium Apt Phase III, Inc 2 | Bldg. 88 – 9001 Sunrise Lakes Blvd., Unit 101 | Sunrise | FL | 33322 | EGHIKLNPQ | $3,213.74 |
| 1491 | Sunrise Lakes Condominium Apt Phase III, Inc 2 | Bldg. 88 – 9001 Sunrise Lakes Blvd., Unit 301 | Sunrise | FL | 33322 | EGHIJKLNPQ | $3,213.74 |
| 1492 | Sunrise Lakes Condominium Apt Phase III, Inc 2 | Bldg. 88 – 9001 Sunrise Lakes Blvd., Unit 311 | Sunrise | FL | 33322 | EGHIKLNPQ | $3,213.74 |
| 1493 | Sunrise Lakes Condominium Apt Phase III, Inc 2 | Bldg. 89 – 9021 Sunrise Lakes Blvd., Unit 101 | Sunrise | FL | 33322 | EGHIKLNPQ | $2,230.71 |
| 1494 | Sunrise Lakes Condominium Apt Phase III, Inc 2 | Bldg. 89 – 9021 Sunrise Lakes Blvd., Unit 201 | Sunrise | FL | 33322 | EGHIJKLNPQ | $2,230.71 |
| 1495 | Sunrise Lakes Condominium Apt Phase III, Inc 2 | Bldg. 89 – 9021 Sunrise Lakes Blvd., Unit 202 | Sunrise | FL | 33322 | EGHIKLNPQ | $2,230.71 |
| 1496 | Sunrise Lakes Condominium Apt Phase III, Inc 2 | Bldg. 89 – 9021 Sunrise Lakes Blvd., Unit 203 | Sunrise | FL | 33322 | EGHIKLNPQ | $2,230.71 |
| 1497 | Sunrise Lakes Condominium Apt Phase III, Inc 2 | Bldg. 89 – 9021 Sunrise Lakes Blvd., Unit 204 | Sunrise | FL | 33322 | EGHIKLNPQ | $2,230.71 |
| 1498 | Sunrise Lakes Condominium Apt Phase III, Inc 2 | Bldg. 89 – 9021 Sunrise Lakes Blvd., Unit 205 | Sunrise | FL | 33322 | EGHIKLNPQ | $2,230.71 |

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 437 of 647
Case 1:11-cv-22408-MGC Document 27 Entered on FLSD Docket 08/15/2013 Page 585 of 699
Taishan - Preliminary Florida Contests and Setoffs

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 1499 | Sunrise Lakes Condominium Apt Phase III, Inc 2 | Bldg. 89 – 9021 Sunrise Lakes Blvd., Unit 206 | Sunrise | FL | 33322 | EGHIKLNPQ | $2,230.71 |
| 1500 | Sunrise Lakes Condominium Apt Phase III, Inc 2 | Bldg. 89 – 9021 Sunrise Lakes Blvd., Unit 207 | Sunrise | FL | 33322 | EGHIKLNPQ | $2,230.71 |
| 1501 | Sunrise Lakes Condominium Apt Phase III, Inc 2 | Bldg. 89 – 9021 Sunrise Lakes Blvd., Unit 209 | Sunrise | FL | 33322 | EGHIJKLNPQ | $2,230.71 |
| 1502 | Sunrise Lakes Condominium Apt Phase III, Inc 2 | Bldg. 89 – 9021 Sunrise Lakes Blvd., Unit 210 | Sunrise | FL | 33322 | EGHIKLNPQ | $2,230.71 |
| 1503 | Sunrise Lakes Condominium Apt Phase III, Inc 2 | Bldg. 89 – 9021 Sunrise Lakes Blvd., Unit 211 | Sunrise | FL | 33322 | EGHIKLNPQ | $2,230.71 |
| 1504 | Sunrise Lakes Condominium Apt Phase III, Inc 2 | Bldg. 89 – 9021 Sunrise Lakes Blvd., Unit 212 | Sunrise | FL | 33322 | EGHIKLNPQ | $2,230.71 |
| 1505 | Sunrise Lakes Condominium Apt Phase III, Inc 2 | Bldg. 92 – 2761 Pine Island Road N., Unit 207 | Sunrise | FL | 33322 | EGHIKLNPQ | $2,835.65 |
| 1506 | Sunrise Lakes Condominium Apt Phase III, Inc 2 | Bldg. 92 – 2761 Pine Island Road N., Unit 307 | Sunrise | FL | 33322 | EGHIKLNPQ | $2,835.65 |
| 1507 | Sunrise Lakes Condominium Apt Phase III, Inc 2 | Bldg. 92 – 2761 Pine Island Road N., Unit 308 | Sunrise | FL | 33322 | EGHIJKLNPQ | $2,835.65 |
| 1508 | Sunrise Lakes Condominium Apt Phase III, Inc 2 | Bldg. 92 – 2761 Pine Island Road N., Unit 309 | Sunrise | FL | 33322 | EGHIKLNPQ | $2,835.65 |

Case 1:11-cv-22408-MGC Document 27 Entered on FLSD Docket 09/15/2011 Page 96 of 198
Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 438 of 647
Taishan - Preliminary Florida Contests and Setoffs

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 1509 | Sunrise Lakes Condominium Apt Phase III, Inc 2 | Bldg. 97 – 9261 Sunrise Lakes Blvd., Unit 301 | Sunrise | FL | 33322 | EGHIKLNPQ | $3,213.74 |
| 1510 | Sunrise Lakes Condominium Apt Phase III, Inc 2 | Bldg. 97 – 9261 Sunrise Lakes Blvd., Unit 302 | Sunrise | FL | 33322 | EGHIKLNPQ | $3,213.74 |
| 1511 | Sunrise Lakes Condominium Apt Phase III, Inc 2 | Bldg. 97 – 9261 Sunrise Lakes Blvd., Unit 303 | Sunrise | FL | 33322 | EGHIJKLNPQ | $3,213.74 |
| 1512 | Sunrise Lakes Condominium Apt Phase III, Inc 2 | Bldg. 97 – 9261 Sunrise Lakes Blvd., Unit 304 | Sunrise | FL | 33322 | EGHIJKLNPQ | $3,213.74 |
| 1513 | Sunrise Lakes Condominium Apt Phase III, Inc 2 | Bldg. 97 – 9261 Sunrise Lakes Blvd., Unit 307 | Sunrise | FL | 33322 | EGHIKLNPQ | $3,213.74 |
| 1514 | Sunrise Lakes Condominium Apt Phase III, Inc 2 | Bldg. 97 – 9261 Sunrise Lakes Blvd., Unit 308 | Sunrise | FL | 33322 | EGHIJKLNPQ | $2,419.76 |
| 1515 | Sunrise Lakes Condominium Apt Phase III, Inc 2 | Bldg. 97 – 9261 Sunrise Lakes Blvd., Unit 309 | Sunrise | FL | 33322 | EGHIKLNPQ | $0.00 |
| 1516 | Sunrise Lakes Condominium Apt Phase III, Inc 2 | Bldg. 97 – 9261 Sunrise Lakes Blvd., Unit 310 | Sunrise | FL | 33322 | EGHIKLNPQ | $3,213.74 |
| 1517 | Sunrise Lakes Condominium Apt Phase III, Inc 2 | Bldg. 97 – 9261 Sunrise Lakes Blvd., Unit 311 | Sunrise | FL | 33322 | EGHIKLNPQ | $3,213.74 |
| 1518 | Sunrise Lakes Condominium Apt Phase III, Inc 2 | Bldg. 97 – 9261 Sunrise Lakes Blvd., Unit 312 | Sunrise | FL | 33322 | EGHIKLNPQ | $3,213.74 |

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 1519 | Sunrise Lakes Condominium Apt Phase III, Inc 5 | Bldg. 153 – 9900 Sunrise Lakes Blvd., Unit 307 | Sunrise | FL | 33322 | EGHIKLNPQ | $0.00 |
| 1520 | Surdow, Sean and Francis | 3813 18th Street | Lehigh Acres | FL | 33971 | DHP | $10,071.62 |
| 1522 | Sutton, Stuart | 2210 Soho Bay Court | Tampa | FL | 33606 | DHP | $6,068.31 |
| 1524 | Swartz, Christopher and Sylvia | 4030 South West 9th Place | Cape Coral | FL | 33914 | GJP | $11,625.40 |
| 1525 | Swartz, Douglas | 2230 NW Juanita Place | Cape Coral | FL | 33993 | GHIJLNPQ | $221,557.58 |
| 1526 | Sweeney, Patrick and Susan | 3100 Orangetree Bend | Ft. Myers | FL | 33905 | DJP | $12,260.38 |
| 1527 | Sylvester, Kristen and Nolan | 5764 Jade Moon Circle | Milton | FL | 32583 | DHP | $13,681.66 |
| 1528 | Szuflada, Susan and Juan | 3357 S.W. Mundy Street | Port St. Lucie | FL | 34953 | DIP | $45,009.68 |
| 1533 | Talerico, Michelle & Tom | 240 SE 29th Street | Cape Coral | FL | 33904 | CGHLPQ | $13,383.47 |
| 1534 | Tataris, Anna and DeJesus, Roy | 4842 Tuscan Loon Drive | Tampa | FL | 33619 | DHJP | $0.00 |
| 1535 | Taylor, George and Anna | 9345 Bell Ridge Drive | Pensacola | FL | 32526 | HJP | $12,347.86 |
| 1536 | Taylor, Lloyd and Hoxter, Scott | 1660 Renaissance Commons Blvd., Unit 2603 | Boynton Beach | FL | 33426 | DHIJLNPQ | $199,399.10 |
| 1537 | Teegarden, Randy | 4433 Fieldview Circle | Wesley Chapel | FL | 33545 | DJP | $16,970.31 |
| 1538 | Teitelbaum, Ronald and Donna | 11825 Bayport Lane #502 | Ft. Myers | FL | 33908 | GJLPQ | $9,937.29 |
| 1539 | Tempel, Harvey and Lisa | 1660 Renaissance Commons Blvd, Unit 2323 | Boynton Beach | FL | 33426 | DHLNPQ | $203,703.68 |
| 1540 | Templeton, Sherry | 13934 Clubhouse Drive | Tampa | FL | 33618 | GHILPQ | $49,430.77 |
| 1541 | Thomas, Pious/Soni | 1739 Queen Palm Way | North Port | FL | 34288 | DIP | $25,730.70 |
| 1542 | Thomas, Steven and Elaine | 1840 Cody Lane | Fort Pierce | FL | 34945 | DIJP | $0.00 |
| 1544 | Thompson, Benjamin and Deborah | 11527 Hammocks Glade Drive | Riverview | FL | 33569 | GIP | $11,364.58 |
| 1546 | Thompson, Lisa | 1412 NW 12th Place | Cape Coral | FL | 33993 | DP | $10,124.84 |

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 1547 | Thompson, Venesia and Logan, Susan | 1690 Renaissance Commons Blvd., Unit 1226 | Boynton Beach | FL | 33426 | DHLNPQ | $213,633.96 |
| 1548 | Tighe, Edward | 2820 St. Barts Square | Vero Beach | FL | 32967 | DILPQ | $21,839.85 |
| 1549 | Tinney, Marjorie | 171 SE 2nd Court | Deerfield Beach | FL | 33441 | JP | $8,210.66 |
| 1550 | Toledo, Maria | 8141 W 36th Avenue #1 | Hialeah | FL | 33018 | JP | $4,563.81 |
| 1552 | Tomac, Tom and Carrie | 11601 Hammocks Glade Drive | Riverview | FL | 33569 | BDIOP | $9,639.83 |
| 1553 | Tomson, Ants and Aino | 15168 Fiddlesticks Blvd. | Ft. Myers | FL | 33912 | DGILNPQ | $682,334.24 |
| 1554 | Toppin, Nikita | 19227 Stone Hedge Drive | Tampa | FL | 33647 | IJP | $5,867.92 |
| 1555 | Torres-Barajas, Ramiro and Torres, Noel | 1031 SW College Park Road | Port St. Lucie | FL | 34953 | DHJP | $10,090.94 |
| 1556 | Torres-Lutz, Marcelo and Cecilia | 334 Cipriani Way | Venice | FL | 34275 | DHP | $26,650.27 |
| 1557 | Touriz, Christopher and Denise | 8031 W. 36th Avenue #3 | Hialeah | FL | 33018 | JOP | $4,560.46 |
| 1558 | Touriz, Christopher and Denise | 8079 W 36th Avenue #2 | Hialeah | FL | 33018 | DJOP | $4,560.46 |
| 1559 | Townsend, Steven and Maher, Christopher | 225 NE 5th Terrace | Cape Coral | FL | 33909 | DJP | $20,976.85 |
| 1561 | Tran, Minh | 11307 Bridge Pine Drive | Riverview | FL | 33569 | DIP | $13,717.73 |
| 1562 | Trillo, Raquel | 12421 SW 50 CT, Unit 303 | Miramar | FL | 33027 | GJP | $962.77 |
| 1563 | Troutman, Rodney and Sheila | 336 Siena Vista Place | Sun City Center | FL | 33573 | JP | $13,309.94 |
| 1564 | Trujillo, Lisset | 8049 W 36th Avenue #3 | Hialeah | FL | 33018 | DJP | $0.00 |
| 1565 | Tucker, Joseph and Deborah | 2285 SW Plymouth Street | Port St. Lucie | FL | 34983 | DIP | $12,420.82 |
| 1566 | Tuller Investments, LLC | 1690 Renaissance Commons Blvd., Unit 1419 | Boynton Beach | FL | 33426 | DHLNPQ | $294,143.82 |
| 1567 | Tupper, Douglas and Loreen | 7937 Camden Woods Drive | Tampa | FL | 33619 | DIJP | $5,521.10 |
| 1568 | Twin Crest Associates, LLC | 1660 Renaissance Commons Blvd., Unit 2212 | Boynton Beach | FL | 33426 | DHP | $0.00 |

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 1569 | Ucci, Walter | 1562 SW 150th Terrace | Davie | FL | 33326 | DHIJLNPQ | $34,548.36 |
| 1570 | Unschuld, Neal | 6072 N.W. 116th Drive | Coral Spring | FL | 33076 | DIJP | $105,957.45 |
| 1571 | Urso, Christopher | 2120 Delightful Drive | Ruskin | FL | 33570 | DJP | $9,920.61 |
| 1572 | Urtubey, Jason | 2617 69th Street W | Lehigh Acres | FL | 33971 | DHJP | $0.00 |
| 1573 | Usaga, Johana Rodriguez, Jesus | 12986 S.W. 135 Street | Miami | FL | 33186 | DHIP | $0.00 |
| 1574 | Utterback, John and Beverly | 1241 Kendari Terrace | Naples | FL | 34120 | IJP | $5,529.55 |
| 1575 | Vaca, Amada | 1152 SW Kickaboo Road | Port St. Lucie | FL | 34953 | DJP | $0.00 |
| 1576 | Vacationhit, LLC a/k/a Koch, Torsten and Diana | 2118 SW 25th Street | Cape Coral | FL | 33914 | DGHJLPQ | $14,892.93 |
| 1577 | Vacca, Natalie | 126 NW 3rd Avenue | Cape Coral | FL | 33993 | DGIJLNP | $18,474.45 |
| 1578 | Vaccaro, Chase and Robin | 14117 Stilton Street | Tampa | FL | 33626 | DGIP | $5,683.29 |
| 1579 | Valdes, Jorge and Juana | 1962 SE 22 Court | Homestead | FL | 33035 | HIJP | $0.00 |
| 1580 | Valdes, Michael and Florenda | 8912 SW 229th Street | Cutler Bay | FL | 33190 | DGIJLPQ | $35,381.56 |
| 1581 | Valentin, Miguel | 10902 NW 83rd St., Apt. 208 | Doral | FL | 33178 | JP | $8,667.11 |
| 1582 | Valle, Gladys | 302 NE 14th Street | Cape Coral | FL | 33909 | DIP | $165,498.53 |
| 1584 | Vargas, Teodoro and Yolanda | 5112 Cactus Needle Lane | Wesley Chapel | FL | 33543 | DP | $10,000.00 |
| 1585 | Vasquez, Claudia | 702 S.W. 147 Avenue | Pembroke Pines | FL | 33027 | GILNPQ | $0.00 |
| 1586 | Vaughan, Gregory and Pauline | 2036 NW 7th Street | Cape Coral | FL | 33993 | DGJLPQ | $3,216.26 |
| 1587 | Vaughan-Miller, Marilyn Faye and Miller, Gerald | 2601 Mary Elizabeth Lane | Plant City | FL | 33565 | P | $18,023.45 |
| 1588 | Vayda, Richard and Rita | 366 Recker Highway | Auburndale | FL | 33823 | GP | $5,103.84 |
| 1589 | Venetian Village of Brevard Condo Association, Inc. | 1045 Venetian Drive (3 of 8) #201 | Melbourne | FL | 32904 | EJP | $8,546.29 |
| 1590 | Venetian Village of Brevard Condo Association, Inc. | 1045 Venetian Drive (4 of 8) #102 | Melbourne | FL | 32904 | EJP | $6,196.28 |
| 1591 | Venetian Village of Brevard Condo Association, Inc. | 1045 Venetian Drive (6 of 8) #104 | Melbourne | FL | 32904 | EJP | $6,196.28 |

Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 442 of 647
Case 2:11-cv-22408-MCE-EEF Document 1 Entered on FLSD Docket 08/15/2019 Page 590 of
999
Taishan - Preliminary Florida Contests and Setoffs

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 1592 | Venetian Village of Brevard Condo Association, Inc. | 1045 Venetian Drive (7 of 8) #205 | Melbourne | FL | 32904 | EP | $8,546.29 |
| 1593 | Venetian Village of Brevard Condo Association, Inc. | 1045 Venetian Drive (8 of 8) #203 | Melbourne | FL | 32904 | EP | $8,291.05 |
| 1594 | Venetian Village of Brevard Condo Association, Inc. | 1045 Venetian Drive #204 | Melbourne | FL | 32904 | EP | $8,044.60 |
| 1595 | Ventimiglia, Sal | 9597 Cinnamon Court | Parkland | FL | 33076 | DGHIP | $198,084.90 |
| 1596 | Vescio, Angelo and Elena | 425 - 21st Court SW | Vero Beach | FL | 32960 | HILNPQ | $168,555.35 |
| 1597 | Vickers, Phillip and Sandra | 29234 Caddy Shack Lane | San Antonio | FL | 33576 | DIJMPQ | $8,795.16 |
| 1598 | Victor, Remi L., Jr. | 4351 Bellaria Way, #440 | Ft. Myers | FL | 33916 | DIJLPQ | $0.00 |
| 1599 | Vieau, Mark | 11842 Bayport Lane, Building #2103 | Ft. Myers | FL | 33908 | DGHILNPQ | $195,377.73 |
| 1600 | Vila, Desiree | 2204 Soho Bay Court | Tampa | FL | 33606 | DGIP | $6,527.00 |
| 1601 | Villalobos, Angel and Maria | 10849 NW 79 Street | Doral | FL | 33178 | JP | $2,640.62 |
| 1602 | Villalobos, Gilliam | 8129 W. 36th Avenue Unit #4 | Hialeah | FL | 33018 | DJP | $4,547.04 |
| 1603 | Villarama, Lilia | 202 Medici Terrace | North Venice | FL | 34275 | DGJP | $25,822.68 |
| 1604 | Villasana, George and Michael | 170 SE 2nd Street | Deerfield Beach | FL | 33441 | DJP | $7,851.24 |
| 1605 | Villaverde, Gilbert & Gloria | 1616 SW 52nd Street | Cape Coral | FL | 33914 | DGJLP | $34,556.88 |
| 1606 | Vitiello, Anthony and Laura | 2619 NW 10th Terrace | Cape Coral | FL | 33993 | DGJOP | $2,500.00 |
| 1607 | Vollmar, Frank and Elizabeth | 1820 SW 3rd Avenue | Cape Coral | FL | 33991 | DJP | $21,484.91 |
| 1608 | Vollrath, Richard and Rebecca | 319 Siena Vista Place Unit 271 | Sun City Center | FL | 33573 | DGIJLPQ | $15,709.66 |
| 1609 | Von dem Bach, Christine | 6302 Shield Drive | Cresview | FL | 32539 | DOP | $4,408.66 |
| 1611 | Wagley, David | 4607 Loraine Avenue South | Lehigh Acres | FL | 33976 | JP | $3,275.65 |
| 1612 | Wagner, Jonathon and Samantha | 11526 Hammocks Glade Drive | Riverview | FL | 33569 | DGIJP | $8,876.87 |
| 1613 | Walker, William and Melissa | 1536 Abyss Drive | Odessa | FL | 33556 | DGJLPQ | $21,501.83 |
| 1614 | Walls, Larry and Rosalee | 2510 Van Buren Parkway | Cape Coral | FL | 33993 | DP | $29,032.63 |
| 1616 | Walter, Katie n/k/a Simonds, Katie | 4002 24th Street SW | Lehigh Acres | FL | 33976 | DJP | $17,130.73 |
| 1618 | Wardallyy, Arthur | 8576 Athena Court | Lehigh Acres | FL | 33971 | GIJP | $10,276.47 |

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 1619 | Warren, Megan and John | 919 Monroe Avenue | Lehigh Acres | FL | 33972 | GHJP | $7,130.73 |
| 1620 | Washington, Joseph and Brenda | 28833 Lindenhurst Drive | Wesley Chapel | FL | 33544 | HJP | $15,299.54 |
| 1621 | Watson, Jerry; Gordon; Karen and Charles | 1759 Fuller Drive | Gulf Breeze | FL | 32563 | FIP | $12,434.73 |
| 1622 | Watson, Joan Trust | 10834 Tiberio Drive | Ft. Myers | FL | 33913 | DGHLNPQ | $25,130.50 |
| 1623 | Way, Cedric and Michele | 14929 Man O War Drive | Odessa | FL | 33556 | JP | $10,661.73 |
| 1625 | Webster, Stephen | 4351 Bellaria Way, Unit #441 | Ft. Myers | FL | 33916 | DIJP | $5,630.70 |
| 1626 | Wegweiser, Wanda and Rebecca | 1690 Renaissance Commons Apt. 1312 | Boynton Beach | FL | 33426 | DILNPQ | $198,586.78 |
| 1627 | Weiner, Darryl | 6890 Long Leaf Drive | Parkland | FL | 33076 | GJMPQ | $28,458.06 |
| 1628 | Weinsberg, Edgar and Yvonne | 6568 41st Street | Sarasota | FL | 34243 | GHLPQ | $13,389.14 |
| 1629 | Weisinger, Max | 3733 Kenyon Street | Ft. Myers | FL | 33905 | DP | $14,566.72 |
| 1630 | Weiss, Stephen Buckwald, David Borowiec, Gary (Sofla Realty NHL, LLC) | 711 SE 16th Court | Ft. Lauderdale | FL | 33304 | DHIJP | $7,835.24 |
| 1631 | Welch, Billy and Kay | 1102 Amber Lake Court | Cape Coral | FL | 33909 | IJMNPQ | $321,790.07 |
| 1632 | Wheeler, Dennis and Diane | 4226 S.W. 1st Avenue | Cape Coral | FL | 33914 | DJP | $0.00 |
| 1633 | Wheeler, Richard and Elizabeth | 5159 44th Avenue North | St. Petersburg | FL | 33709 | JP | $5,490.12 |
| 1634 | Whelan, John and Robin | 6588 Canton Street | Ft. Myers | FL | 33966 | DIJP | $16,241.63 |
| 1635 | White, Jill and Vincent | 11001 Gulf Reflections Drive, A304 | Ft. Myers | FL | 33907 | HJLNPQ | $88,406.79 |
| 1637 | White, Taegan and Richard | 24331 SW 129 Court | Homestead | FL | 33032 | P | $4,951.28 |
| 1638 | Whitlock, Scott and Lucille | 1124 NE 15th Street | Cape Coral | FL | 33909 | DP | $15,208.28 |
| 1639 | Whitney, Brian | 435 S. Oregon Avenue Unit 402 | Tampa | FL | 33606 | DGILPQ | $17,287.54 |
| 1640 | Wienstroer, Danny and Patrick | 11509 Hammocks Glade Drive | Riverview | FL | 33569 | IP | $10,154.59 |
| 1641 | Wiesman, Robert H. and Juan Z | 3508 41st Street SW, Lehigh Acres, Florida 33976 | Lehigh Acres | FL | 33976 | DHJP | $1,000.00 |
| 1642 | Wilcox, Eric and Karen | 14117 Stowbridge Avenue | Tampa | FL | 33626 | BLNPQ | $16,367.90 |
| 1643 | Wiley, John | 1541 Gerona Terrace | North Point | FL | 34286 | DGHP | $10,000.00 |

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 444 of 647
Case 2:11-cv-22408-MCE Document 27 Entered on FLSD Docket 08/15/2011 Page 592 of
999
Taishan - Preliminary Florida Contests and Setoffs

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 1644 | Wiley, Thad | 1660 Renaissance Commons Blvd., Unit 2111 | Boynton Beach | FL | 33426 | DHIJLNPQ | $211,354.62 |
| 1645 | Wilkie, Robert and Dolores | 1742 Bobcat Trail | North Port | FL | 34288 | DGILNPQ | $237,260.76 |
| 1646 | Willey, Ryan and Danielle | 1722 Graduate Way | Pensacola | FL | 32514 | HIP | $18,439.24 |
| 1647 | Williams, Catina | 1032 Kindly Road | North Ft. Myers | FL | 33903 | DGHIJLPQ | $0.00 |
| 1648 | Williams, David and Cassidy | 334 NW 17th Terrace | Cape Coral | FL | 33993 | DJP | $1,682.02 |
| 1649 | Williams, Helen | 4155 Bismarck Palm Drive | Tamps | FL | 33610 | JP | $3,865.00 |
| 1650 | Williams, Jeffrey and Joan | 2025 McArthur Avenue | Alva | FL | 33920 | DHP | $0.00 |
| 1652 | Williams, Vashaun and Erika | 2730 Beech Grove | Wesley Chapel | FL | 33544 | P | $6,076.18 |
| 1653 | Wilson, Darrell and Darlene | 24226 Santa Inez Road | Punta Gorda | FL | 33955 | ILPQ | $14,307.25 |
| 1654 | Wilson, Diane and Richard | 11812 Bayport Lane #2404 | Ft. Myers | FL | 33908 | IJLPQ | $16,970.17 |
| 1655 | Wilson, Matthew Jack | 4114 W. Watrous Avenue | Tampa | FL | 33629 | DHIJP | $6,987.06 |
| 1656 | Wilson, Michael | 513 SE 17th Place | Cape Coral | FL | 33990 | DIP | $0.00 |
| 1657 | Wilson, Michael and Wilson-Romans, Adma | 1986 NW 79TH TERRACE | Pembroke Pines | FL | 33024 | DHIP | $11,000.87 |
| 1658 | Wilson, Reginald and Smith, Marsha | 1917 North Liberty Street | Jacksonville | FL | 32206 | GJP | $0.00 |
| 1659 | Winder, Diedre and Merle Dean | 10846 Tiberio Drive | Ft. Myers | FL | 33913 | DIP | $10,238.06 |
| 1660 | Winn, Brandon and Juliet | 12616 20th Street East | Parrish | FL | 34219 | DGILPQ | $19,619.09 |
| 1661 | Winsome, Russell n/k/a Hutchinson, Winsome | 184 Wanatah Avenue | Lehigh Acres | FL | 33874 | DIP | $20,795.82 |
| 1662 | Wint, Edmond and Dockery-Wint, Jacqueline | 1590 Abalom Street | Port Charlotte | FL | 33980 | GHILNPQ | $119,525.43 |
| 1663 | Wites, Marc and Jennifer | 17625 Middlebrook Way | Boca Raton | FL | 33496 | HJLPQ | $39,849.60 |
| 1664 | Wohleber, David and Marlene | 4095 Cherrybrook Loop | Ft. Myers | FL | 33966 | DGIP | $0.00 |
| 1665 | Wong, Kenneth | 4230 NW. 33rd Street | Cape Coral | FL | 33993 | DGOP | $0.00 |
| 1666 | Woodard, Benjamin and Deborah | 10600 Tara Dawn Circle | Pensacola | FL | 32534 | DHP | $6,301.24 |

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 445 of 647
Case 1:11-cv-22408-MGC Document 27 Entered on FLSD Docket 08/15/2011 Page 593 of 688
Taishan - Preliminary Florida Contests and Setoffs

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 1667 | Woods, Claudia | 3804 N. 24th Street | Tampa | FL | 33610 | DIP | $11,457.45 |
| 1668 | Woods, Randy and Sherry | 3205 North West 76th | Jennings | FL | 32053 | GILPQ | $5,305.09 |
| 1669 | Workforce Housing Ventures, Inc. | 3907 Langdrum Drive | Wesley Chapel | FL | 33543 | DHJLPQ | $8,170.39 |
| 1670 | Worthington, George and Adria | 169 SE 2nd Court | Deerfield Beach | FL | 33441 | JP | $7,851.24 |
| 1671 | Wruble, Aaron and Wendy | 1294 Exotic Avenue | North Port | FL | 34288 | DHJOP | $11,190.78 |
| 1672 | Yamamoto, Sean and Christine | 1113 NE 4th Avenue | Cape Coral | FL | 33909 | DGP | $12,045.70 |
| 1673 | Yarbor, Brian | 5583 Douglas Ferry Road | Caryville | FL | 32427 | GHMPQ | $12,098.81 |
| 1674 | Yassa, Alain | 3402 NW 5th Terrace | Cape Coral | FL | 33993 | GLPQ | $11,635.18 |
| 1675 | Yelton, Charles | 23086 Madelyn Avenue | Port Charlotte | FL | 33954 | DJP | $11,874.30 |
| 1676 | Yeshman, Larry | 2534 NW 25th Place | Cape Coral | FL | 33993 | P | $12,639.15 |
| 1677 | Yildirim, Mode | 11553 Bay Gardens Loop | Riverview | FL | 33569 | JP | $10,637.22 |
| 1679 | Yudess, Daniel and Karen | 1131 Tropicana Parkway W | Cape Coral | FL | 33993 | DGJP | $6,125.92 |
| 1680 | Yusuf, Nejeh | 3732 SW 7th Place #4 | Cape Coral | FL | 33914 | IP | $5,672.21 |
| 1681 | Zagalsky, Yefim and Alekseyeva, Yelena | 1690 Renaissance Commons Blvd., Unit 1418 | Boynton Beach | FL | 33426 | DHJLNQP | $213,339.57 |
| 1683 | Zaman, Khayru and Najneen | 5109 3rd Street, W. | Lehigh Acres | FL | 33971 | DGLPQ | $12,139.92 |
| 1684 | Zamora, Michael | 3044 Lake Manatee Drive | Cape Coral | FL | 33909 | DHJP | $17,100.37 |
| 1685 | Zapata, Jorge William and Zapata, Nidia | 140 S. Dixie Highway, Unit 606 | Hollywood | FL | 33020 | DIJMPQ | $12,682.51 |
| 1686 | Zavala, Carlos | 14119 Danpark Loop | Ft. Myers | FL | 33912 | DGJP | $9,936.15 |
| 1687 | Zelazny, Louis | 405 NW 8th Terrace | Cape Coral | FL | 33991 | DHJP | $8,300.09 |
| 1688 | Zhang, Dong | 2234 Soho Bay Court | Tampa | FL | 33606 | DILPQ | $7,837.76 |
| 1689 | Zhou, Zhongmin and Huang, Qinxi | 1660 Renaissance Commons Blvd., Unit 2416 | Boynton Beach | FL | 33426 | DHJLNPQ | $211,740.66 |
| 1690 | Zitner, Sheldon | 1690 Renaissance Commons Blvd., Unit 1311 | Boynton Beach | FL | 33426 | HLNPQ | $195,568.53 |
| 1691 | Ball, Ashley | 19420 La Serena Drive | Fort Myers | FL | 33967 | DIP | $10,000.00 |

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 446 of 647
Case 1:11-cv-22408-MGC Document 27 Entered on FLSD Docket 08/15/2019 Page 594 of 999
Taishan - Preliminary Florida Contests and Setoffs

| Claimant # | Claimant Name | Affected Property Address | City | State | Zip | Objections | Setoffs |
|---|---|---|---|---|---|---|---|
| 1692 | Magdalena Gardens Condo Association | 240 West End Avenue, Unit 313 | Punta Gorda | FL | 33950 | EHMPQ | $0.00 |
| 1693 | Reinstein, Michael | 100 Spring Hill Drive | Jensen Beach | FL | 34957 | MPQ | $0.00 |
| 1719 | Promenade at Tradition Community Association, Inc. | 10560 Stephanie Way Unit 1-104 | Port St. Lucie | FL | 34987 | EHIJLPQ | $0.00 |
| 1767 | Promenade at Tradition Community Association, Inc. | 10560 SW Stephanie Way Unit 1-207 | Port St. Lucie | FL | 34987 | EHILPQ | $0.00 |
| 1794 | Venetian Village of Brevard Condo Association, Inc. | 1045 Venetian Drive #202 | Melbourne | FL | 32904 | DIP | $0.00 |

# Tab #46

# <u>FILED UNDER SEAL</u>

# Tab #47

# FILED UNDER SEAL

# Tab #48

# FILED UNDER SEAL

# Tab #49

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 1:11-CV-22408-MGC

EDUARDO AND CARMEN AMORIN, *et al.*,
individually, and on behalf of all others
similarly situated,

       Plaintiffs,

v.

TAISHAN GYPSUM CO., LTD. F/K/A SHANDONG
TAIHE DONGXIN CO., LTD.; TAIAN TAISHAN
PLASTERBOARD CO., LTD., *et al.*,

       Defendants.

_____/

### DECLARATION OF NICKIE BONENFANT

I, Nickie Bonenfant, declare as follows:

1.     I am over 21 years of age and am competent to give this declaration. I have personal knowledge of the facts set forth in this declaration and, if called to testify about these facts, I could and would do so completely and under oath.

2.     I am the Chief Operating Officer at ImportGenius. ImportGenius is a subscription-based software that collects and compiles information about shipping activity, including from publicly available sources, such as U.S. Government records. In that role, I am familiar with the public records from which that information is derived.

3.     Attached as Exhibit A to this declaration is a true and correct copy of a spreadsheet compiled using public-sourced data within our ImportGenius database.

4.     I have reviewed the data underlying the compilation in Exhibit A.  Based on my review, the compilation reflects data derived from publicly available official shipping records of the U.S. Customs and Border Protection, an agency of the U.S. government.

5.     Those official records are true and correct, and I have possession of those records.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 27, 2019.

By: _____
        Nickie Bonenfant

2

# Tab #50

ImportGenius.com
info@importgenius.com
Toll Free: 855-573-9976
International: +1 480-745-3396

| PRODUCT DESCRIPTION | CONSIGNEE | SHIPPER | ARRIVAL DATE | GROSS WEIGHT (LB) | GROSS WEIGHT (KG) | FOREIGN PORT | US PORT | VESSEL NAME | COUNTRY OF ORIGIN | MARKS &AMP; NUMBERS | CONSIGNEE ADDRESS | SHIPPER ADDRESS | QUANTITY | MEASU REMEN T | MEASU REMEN T UNIT | BILL OF LADING | SHIP REGISTERED IN | CARRIER NAME |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BOARD GYPSUM BOARD GYPSUM BOARD | INTERNATIONAL MATERIALS TRADING | PINGYI BAIER BUILDING MATERIALS | 06/27/2006 | 576400 | 262000 | TSINGTAO | PT. EVERGLADES | | China | IMT IMT IMT | SBISBEE | TOWN,PINGYI,SHANDO | 6900 | 570 | CM | ITMAI80601079226 | | ITALIA MARITIMMA S P A |
| BOARD GYPSUM PLASTER BOARD GYPSUM | INTERNATIONAL MATERIALS TRADING | BEIJING BUILDING MATERIALS IMPORT | 06/27/2006 | 576400 | 262000 | TSINGTAO | PT. EVERGLADES | | China | N/M N/M | SBISBEE | B307 YINYU MANSION, | 6560 | 400 | CM | ITMAI80601079251 | | ITALIA MARITIMMA S P A |
| TH IS SHIPMENT CONTAINS NO WOOD | INTERNATIONAL MATERIALS TRADING,LTD | SHANDONG CHENXIANG G.B.M.CO.,LTD. | 06/27/2006 | 5199275 | 2363307 | TSINGTAO | PT. EVERGLADES | ZIM ISRAEL NAVIGATION CO | China | N/M N/M | CL 109-229 | TECHNOLOGICAL | 26800 | 63566 | CM | ZIMUQIN90006385 | | ZIM ISRAEL NAVIGATION CO LTD |
| GYPSUM BOARD | INTERNATIONAL MATERIALS TRADING | SHANDONG CHENXIANG GYPSUM CONSTRUCT | 06/16/2006 | 31196 | 14180 | QINGDAO | PT. EVERGLADES | ZIM CONTAINER | China (Mainland) | N/M | COURT 109- | DEVELOP AREA PINGYI | 15360 | 0 | CM | SCNASCNAQD2213360 | PEOPLES REP OF CHINA | S C NORTH AMERICA INC |
| BOARDS GYPSUM BOARDS GYPSUM BOARDS | INTERNATIONAL MATERIALS TRADING | PINGYI BAIER BUILDING MATERIAL | 06/06/2006 | 583000 | 265000 | NINGPO | PT. EVERGLADES | COMPANY | China | NO MARKS | SBISBEE | LINYI SHANDONG | 6900 | 0 | CM | DNCYQDF065038PVS | PEOPLES REP OF CHINA | LINE LTD |

# Tab #51

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DAVID GROSS, CHERYL GROSS, AND LOUIS VELEZ, individually, and on behalf of all others similarly situated, | CASE NO.: 09-6690<br>SECTION: L<br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |
| **Plaintiffs,** | |
| v. | CLASS ACTION COMPLAINT |
| KNAUF GIPS KG; KNAUF PLASTERBOARD (TIANJIN) CO., LTD.; KNAUF PLASTERBOARD (WUHU), CO., LTD.; KNAUF PLASTERBOARD (DONGGUAN) CO., LTD.; TAISHAN GYPSUM CO., LTD., f/k/a SHANDONG TAIHE DONGXIN CO., LTD.; GEORGIA-PACIFIC LLC; PINGYI BAIER BUILDING MATERIALS CO., LTD.; CHANGZHOU YINHE WOOD INDUSTRY CO., LTD.; KING SHING STEEL ENTERPRISES CO., LTD.; NANHAI SILK IMP. & EXP. CORPORATION; JINAN RUN & FLY NEW MATERIALS CO., LTD.; SHANDONG YIFANG GYPSUM INDUSTRY CO., LTD.; SIIC SHANGHAI INTERNATIONAL TRADE (GROUP) CO., LTD.; TIANJIN TIANBAO CENTURY DEVELOPMENT CO., LTD.; WIDE STRATEGY LIMITED; SHANDONG ORIENTAL INTERNATIONAL TRADING CO., LTD.; SHANGHAI EAST BEST ARTS & CRAFTS CO., LTD.; QINGDAO YILIE INTERNATIONAL TRADE CO., LTD.; TAI'AN KANGYIJIA BUILDING MATERIALS CO., LTD.; USG CORPORATION; BEIJING NEW BUILDING MATERIALS PUBLIC LIMITED COMPANY, ("BNBM"); CHINA NATIONAL BUILDING MATERIALS CO. LTD., ("CNBM"); BEIJING NEW BUILDING MATERIALS (GROUP) CO., LTD., ("BNBM GROUP"); CHINA NATIONAL BUILDING MATERIAL GROUP CORPORATION ("CNBM GROUP"); PINGYI ZHONGXING PAPER-FACED | JURY TRIAL DEMAND |

1

PLASTERBOARD CO., LTD. f/k/a
SHANDONG CHENXIANG BUILDING
MATERIALS CO., LTD., (CHENXIANG);
SINKIANG TIANSHAN BUILDING
MATERIAL AND GYPSUM PRODUCT CO.,
LTD.; TAISHAN GYPSUM CO., LTD.
LUCHENG BRANCH; YUNAN TAISHAN
GYPSUM AND BUILDING MATERIAL CO.
LTD.; TAI'AN JINDUN BUILDING
MATERIAL CO., LTD.; TAISHAN GYPSUM
(XIANGTAN) CO. LTD.; TAISHAN GYPSUM
(PINGSHAN) CO., LTD.; TAISHAN GYPSUM
(HENGSHUI) CO., LTD.; TAISHAN GYPSUM
(HENAN) CO., LTD.; HUBEI TAISHAN
BUILDING MATERIAL CO., LTD.;
TAISHAN GYPSUM (TONGLING) CO., LTD.;
WEIFANG AOTAI GYPSUM CO., LTD.;
TAISHAN GYPSUM (PIZHOU) CO., LTD.;
FUXIN TAISHAN GYPSUM AND BUILDING
MATERIAL CO., LTD.; TAISHAN GYPSUM
(WENZHOU) CO., LTD.; TAISHAN GYPSUM
(CHONGQING) CO., LTD.; TAISHAN
GYPSUM (JIANGYIN) CO., LTD.;
QINHUANGDAO TAISHAN BUILDING
MATERIAL CO., LTD.; TAI'AN TAISHAN
GYPSUM BOARD CO., LTD.; TAISHAN
GYPSUM (BAOTOU) CO., LTD.; SHAANXI
TAISHAN GYPSUM CO., LTD; ROTHCHILT
INTERNATIONAL, LTD.; L&W SUPPLY
CORPORATION d/b/a SEACOAST SUPPLY;
BANNER SUPPLY CO.; LA SUPREMA
TRADING, INC.; LA SUPREMA
ENTERPRISE, INC.; BLACK BEAR GYPSUM
SUPPLY, INC.; SMOKEY MOUNTAIN
MATERIALS, INC.; EMERALD COAST
BUILDING MATERIALS;
INTERIOR/EXTERIOR BUILDING SUPPLY,
LP.; INTERIOR/EXTERIOR ENTERPRISES,
LLC; RIGHTWAY DRYWALL, INC.;
INDEPENDENT BUILDERS SUPPLY
ASSOCIATION, INC.; TOBIN TRADING
INC.; VENTURE SUPPLY INC.; KNAUF
INSULATION GMBH a/k/a KNAUF USA;
CNBM USA CORP.; SUNRISE BUILDING
MATERIALS LTD.; DEVON
INTERNATIONAL; TRIORIENT TRADING,

2

INC.; GREAT WESTERN BUILDING
MATERIALS; ALL INTERIOR SUPPLY,
INC.; A&R HARDWARE SUPPLY, INC.;
DAVIS CONSTRUCTION SUPPLY, LLC;
ELITE SUPPLY CORPORATION;
INTERNATIONAL MATERIALS TRADING,
INCORPORATED; MARATHON
CONSTRUCTION MATERIALS INC.;
STEELER, INC.; MAURICE PINCOFFS
COMPANY, INC.; METRO RESOURCES
CORP.; NORTHERN PACIFIC LUMBER
CO.; ORIENTAL MERCHANDISE
COMPANY, INC. f/k/a ORIENTAL TRADING
COMPANY, INC.; STOCK BUILDING
SUPPLY, LLC; STOCK BUILDING SUPPLY,
INC.; BEDROCK BUILDING MATERIALS,
LLC; THE CHINA CORPORATION, LTD.;
TOV TRADING INC.; BUILDERS GYPSUM
SUPPLY, L.L.P.; BUILDERS GYPSUM
SUPPLY CO., INC.; J.W. ALLEN &
COMPANY INCORPORATED; PHOENIX
IMPORTS CO., LTD.; TMO GLOBAL
LOGISTICS, LLC; QUIET SOLUTIONS INC.;
MAZER'S DISCOUNT HOME CENTERS,
INC.; KNAUF GYPSUM INDONESIA;
GUANGDONG KNAUF NEW BUILDING
PRODUCTS CO., LTD.; KNAUF AMF GMBH
& CO. KG; KNAUF DO BRASIL LTD.;
TAIAN TAISHAN PLASTERBOARD CO.,
LTD.; SHANGHAI YU YUAN IMP & EXP
CO., LTD. and; JOHN DOE Defendants 1-20,

        Defendants.
_____/

## AMENDED CLASS ACTION COMPLAINT

Pursuant to Fed. R. Civ. P. 23, Plaintiffs bring this class action on behalf of themselves

and all other similarly situated individuals and entities that have owned, own, or acquired homes,

residences, or other structures physically located in the United States containing defective

drywall that was designed, manufactured, exported, imported, distributed, delivered, supplied,

marketed, or sold by Defendants, Knauf Gips KG ("Knauf Gips"); Knauf Plasterboard (Tianjin)

Case 2:09-md-02047-EEF-MBN Document 23297-10 Filed 12/09/21 Page 459 of 647
Case 1:11-cv-22408-MGC Document 27-1 Document 23368 Filed 06/19/09 Page 460 of 595
595

Co., Ltd. ("Knauf Tianjin"); Knauf Plasterboard (Wuhu) Co., Ltd.; Knauf Plasterboard (Dongguan) Co., Ltd.; Taishan Gypsum Co., Ltd. F/k/a as Shandong Taihe Dongxin Co., Ltd. ("Taishan"); Georgia-Pacific LLC; Pingyi Baier Building Materials Co., Ltd.; Changzhou Yinhe Wood Industry Co., Ltd.; King Shing Steel Enterprises Co., Ltd.; Nanhai Silk Imp. & Exp. Corporation; Jinan Run & Fly New Materials Co., Ltd.; Shandong Yifang Gypsum Industry Co., Ltd.; Siic Shanghai International Trade (Group) Co., Ltd.; Tianjin Tianbao Century Development Co., Ltd.; Wide Strategy Limited; Shandong Oriental International Trading Co., Ltd.; Shanghai East Best Arts & Crafts Co., Ltd.; Qingdao Yilie International Trade Co., Ltd.; Tai'an Kangyijia Building Materials Co., Ltd.; USG Corporation ("USG"); Beijing New Building Materials Public Limited Co. ("BNBM"); China National Building Materials Co. Ltd.; Beijing New Building Materials (Group) Co. Ltd.; China National Building Material Group Corporation ("CNBM Group"); Pingyi Zhongxing Paper-Faced Plasterboard Co., Ltd. f/k/a Shandong Chenxiang Building Materials Co., Ltd. ("Chenxiang"); Sinkiang Tianshan Building Material And Gypsum Product Co, Ltd.; Taishan Gypsum Co., Ltd. Lucheng Branch; Yunan Taishan Gypsum And Building Material Co. Ltd.; Tai'an Jindun Building Material Co., Ltd.; Taishan Gypsum (Xiangtan) Co. Ltd.; Taishan Gypsum (Pingshan) Co., Ltd.; Taishan Gypsum (Hengshui) Co., Ltd.; Taishan Gypsum (Henan) Co., Ltd.; Hubei Taishan Building Material Co., Ltd.; Taishan Gypsum (Tongling) Co., Ltd.; Weifang Aotai Gypsum Co., Ltd.; Taishan Gypsum (Pizhou) Co., Ltd.; Fuxin Taishan Gypsum And Building Material Co., Ltd.; Taishan Gypsum (Wenzhou) Co., Ltd.; Taishan Gypsum (Chongqing) Co., Ltd.; Taishan Gypsum (Jiangyin) Co., Ltd.; Qinhuangdao Taishan Building Material Co., Ltd.; Tai'an Taishan Gypsum Board Co., Ltd.; Taishan Gypsum (Baotou) Co., Ltd.; Shaanxi Taishan Gypsum Co., Ltd; Rothchilt International, Ltd. ("Rothchilt"); L&W Supply Corporation d/b/a Seacoast Supply ("Seacoast"); Banner

4

Supply Co. ("Banner"); La Suprema Trading, Inc. ("La Suprema Trading"); La Suprema

Enterprise, Inc. ("La Suprema Enterprise"); Black Bear Gypsum Supply, Inc. ("Black Bear");

Smokey Mountain Materials, Inc.; Emerald Coast Building Materials; Interior/Exterior Building

Supply, LP; Interior/Exterior Enterprises LLC; Rightway Drywall Inc.; Independent Builders

Supply Association, Inc. ("IBSA"); Tobin Trading Inc. ("Tobin"); Venture Supply Inc.

("Venture"); Knauf Insulation GMBH a/k/a Knauf USA ("Knauf USA"); CNBM USA Corp.;

Sunrise Building Materials Ltd.; Devon International; Triorient Trading, Inc.; Great Western

Building Materials; All Interior Supply, Inc.; A&R Hardware Supply, Inc.; Davis Construction

Supply, LLC; Elite Supply Corporation; International Materials Trading, Incorporated; Marathon

Construction Materials Inc.; Steeler, Inc.; Maurice Pincoffs Company, Inc.; Metro Resources

Corp.; North Pacific Lumber Co.; Oriental Merchandise Company, Inc. f/k/a Oriental Trading

Company, Inc.; Stock Building Supply, LLC; .; Oriental Merchandise Company, Inc. f/k/a

Oriental Trading Company, Inc.; Stock Building Supply, LLC; Stock Building Supply, Inc.;

Bedrock Building Materials, LLC; The China Corporation, Ltd.; Tov Trading Inc.; Builders

Gypsum Supply, L.L.P.; Builders Gypsum Supply Co., Inc.; J.W. Allen & Company

Incorporated; Phoenix Imports Co., Ltd.; TMO Global Logistics, LLC; Quite Solutions Inc.;

Mazer's Discount Home Centers, Inc.; Knauf Gypsum Indonesia; Guangdong Knauf New

Building Product Co., Ltd.; Knauf Amf GmbH & Co. Kg; Knauf Do Brasil Ltd.; Taian Taishan

Plasterboard Co., Ltd.; Shanghai Yu Yuan Imp & Exp Co., Ltd.; and John Doe defendants 1-20.

    The Defendants have marketed their products in a manner designed to conceal their

identity making a class action appropriate since it would visit an injustice by permitting these

wrongdoers, who among them have inflicted an injury upon the entirely innocent Plaintiffs, to

escape liability merely because the nature of their conduct and the resulting harm has made it difficult or impossible to prove which of them has caused harm.

In support thereof, Plaintiffs state as follows:

## JURISDICTION, PARTIES, AND VENUE

1.      This action is within the original jurisdiction of this Court by virtue of 28 U.S.C. §1332(d)(2) and the Class Action Fairness Act.  *See* 28 U.S.C. § 1711, *et. seq.*  Plaintiffs and certain Defendants are citizens of different states and the amount in controversy of this Class action exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

2.      Venue in this district satisfies the requirements of 28 U.S.C. §1391(b)(1)-(2) because Plaintiffs and a significant number of the absent class members reside in this jurisdiction and a substantial amount of the events and occurrences giving rise to the claim occurred in this District, or a substantial part of the property that is the subject of this action is situated in this district.

## PLAINTIFFS

3.      Plaintiff Louis Velez owns a home located at 5427 Paris Avenue, New Orleans, LA 70122.

4.      Approximately two years ago, Mr. Velez undertook to remodel his home using defective Chinese drywall.  Mr. Velez has no way of identifying the manufacturer of the defective Chinese drywall in his home.

5.      By way of explanation, an inspection of Mr. Velez's home revealed the drywall in his home has markings with unintelligible numbering.  There are no corresponding markings identifying the manufacturer of the drywall.

6.      Notwithstanding his inability to identify the manufacturer of the drywall in his home, there are several factors demonstrating there is Chinese manufactured drywall in Mr. Velez's home.  For instance, Mr. Velez has experienced several instances of corrosion, bad odors, and a renter living in the home, Bruce Velez, has experienced headaches and other personal injuries that have been linked to the defective Chinese drywall at issue in this litigation.

7.      The defective Chinese drywall that is installed in Mr. Velez's home was designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold by certain unknown defendants.

8.      The defective Chinese drywall in Mr. Velez's home has caused him to suffer property damages.

9.      Plaintiffs David Gross and Cheryl Gross (the "Gross Plaintiffs") (the Velez Plaintiffs and the Gross Plaintiffs shall be referred to herein collectively as "Plaintiffs"), together own a home located at 400 Hay Place, New Orleans, LA 70124.

10.      Following the ravishes of Hurricanes Katrina and Rita, the Gross Plaintiffs undertook to repair heavy damages that had been sustained to their home.  After the completion of the repairs in December 2006, Plaintiffs moved back into their home.

11.      The Gross Plaintiffs have since discovered that defective Chinese drywall was used during the repairs to their home.  The Gross Plaintiffs have no way of identifying the manufacturer of the defective Chinese drywall in their home.

12.      By way of explanation, an inspection of the Gross Plaintiffs' home revealed "made in China" markings on their drywall without any corresponding markings identifying the manufacturer.

13. The defective Chinese drywall that is installed in the Gross Plaintiffs' home was designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold by certain unknown defendants.

14. The defective Chinese drywall in the Gross Plaintiffs' home has caused both property damage and personal injuries to the Gross Plaintiffs.

## DEFENDANTS

15. Defendant Knauf Gips is a German corporation doing business in several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia. One of Knauf Gips' affiliates, Knauf Verwaltungsgsellschaft KG, owns a substantial stake in USG. Knauf Gips is a leading manufacturer of building materials and systems. Knauf Gips, together with its affiliates, including Knauf Tianjin, provides building materials and systems to customers in over 50 countries, including the United States. Upon information and belief, at all materials times hereto, Knauf Gips supervised, operated, trained and otherwise exercised control and/or had the right to control the operations of Knauf Tianjin, and its agents, apparent agents, and employees.

16. Among other things, in 1995, Knauf Gips introduced its advanced production techniques and technology into China. From 1997 through 2001, Knauf Gips invested in China and established three plasterboard plants which are located in Wuhu, Tianjin and Dongguan. The product quality of all Knauf Gips' plants in China, including Knauf Tianjin, are strictly controlled according to the requirements of Knauf Gips' headquarters in Germany. Moreover, Knauf Gips' sales and technical support teams support Knauf Gips' businesses throughout the world, including Knauf Tianjin in China. Knauf Tianjin and its employees are the actual and/or apparent agents of Knauf Gips.

8

Case 2:09-md-02047-EEF-MBN Document 23207-10 Filed 12/09/19 Page 464 of 647
Case 1:11-cv-22408-MGC Document 27 Entered on FLSD Docket 09/09/11 Page 106 of 412 of
595

17.     Upon information and belief, Knauf Gips, together with its affiliates and/or actual or apparent agents, including Knauf Tianjin, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia. Upon information and belief, Knauf Gips and/or Knauf Tianjin has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Knauf Gips and/or Knauf Tianjin manufactured and sold, directly and indirectly, to certain suppliers in the United States.

18.     Defendant Knauf Tianjin is a foreign corporation doing business in several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia. Knauf Tianjin is involved in the manufacturing and sale of gypsum drywall. Knauf Tianjin is the actual agent and/or apparent agent of Knauf Gips. Upon information and belief, Knauf Tianjin, individually and/or together with and at the direction and control of its principal, Knauf Gips, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia. Knauf Tianjin and/or Knauf Gips has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Knauf Tianjin and/or Knauf Gips manufactured and sold, directly and indirectly, to certain suppliers in the United States.

9

Case 2:09-md-02047-EEF-MBN Document 23297-40 Filed 12/09/19 Page 465 of 647
Case 2:09-md-02047-EEF-MBN Document 22937-40 Filed 08/09/19 Page 4 of 595

Case 1:Case 2:09-md-02047-EEF-MBN Document 27 Document... Filed... Page 413 of
595

19.    Defendant Knauf Plasterboard (Wuhu) Co. Ltd.**,** is a foreign corporation doing business in several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Knauf Plasterboard (Wuhu) Co., Ltd. is involved in the manufacturing and/or sale of gypsum drywall.  Upon information and belief, Knauf Plasterboard (Wuhu) Co., Ltd. manufactured, sold, distributed, marketed or placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Upon information and belief, Knauf Plasterboard Wuhu Co., Ltd. has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States.  Upon information and belief, Knauf Plasterboard (Wuhu) Co., Ltd. manufactured and/or sold to certain suppliers in the United States.

20.    Defendant Knauf Plasterboard (Dongguan) Co., Ltd., is a foreign corporation doing business in several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Knauf Plasterboard (Dongguan) Co., Ltd. is involved in the manufacturing and/or sale of gypsum drywall.  Upon information and belief, Knauf Plasterboard (Dongguan) Co., Ltd. manufactured, sold, distributed, marketed and/or placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia. Knauf Plasterboard (Dongguan) Co., Ltd. has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in

Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 466 of 647
Case 1:Case 2:09-md-02047-EEF-MBN Document 27 Document 669-1 Filed 06/00/11 Page 9 of Page 414 of
595

numerous structures in the United States. Upon information and belief, Knauf Plasterboard

(Dongguan) Co., Ltd. manufactured and/or sold to certain suppliers in the United States.

21.     Defendant Knauf USA is an Indiana corporation with a principal place of business

in Shelbyville, Indiana. By information and belief, Knauf USA is a subsidiary of Knauf GIPS.

22.     By information and belief, Knauf USA acted as an agent for Knauf GIPS and

other Knauf entities by promoting and marketing the drywall at issue in this litigation to

American suppliers. Accordingly, Knauf USA caused the drywall at issue in the case to be

imported, distributed, delivered, supplied, inspected, marketed and/or sold.

23.     Defendant Georgia-Pacific LLC is a Delaware limited liability corporation having

its principal place of business in Atlanta, Georgia. Georgia-Pacific LLC is involved in the

manufacturing and/or sale of gypsum drywall. Upon information and belief, Georgia-Pacific

LLC manufactured, distributed, marketed and/or sold the drywall at issue in this litigation.

24.     Upon information and belief, Defendant Pingyi Baier Building Materials Co.,

Ltd., is a foreign corporation doing business in several States, including but not limited to,

Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia. Pingyi Baier

Building Materials Co., Ltd. is involved in the manufacturing and/or sale of gypsum drywall.

Upon information and belief, Pingyi Baier Building Materials Co., Ltd. manufactured, sold,

distributed, marketed and/or placed within the stream of commerce gypsum drywall with the

expectation that the drywall would be purchased by thousands of consumers, if not more, within

various States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas,

North Carolina, and Virginia. Pingyi Baier Building Materials Co., Ltd. has continuously and

systematically distributed and sold drywall to numerous purchasers in the United States and their

drywall is installed in numerous structures in the United States. Upon information and belief,

Pingyi Baier Building Materials Co., Ltd. manufactured and/or sold to certain suppliers in the United States.

25.     Upon information and belief, Defendant Changzhou Yinhe Wood Industry Co., Ltd., is a foreign corporation doing business in several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Changzhou Yinhe Wood Industry Co., Ltd. is involved in the manufacturing and/or sale of gypsum drywall. Upon information and belief, Changzhou Yinhe Wood Industry Co., Ltd. manufactured, sold, distributed, marketed and/or placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Changzhou Yinhe Wood Industry Co., Ltd. has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States.  Upon information and belief, Changzhou Yinhe Wood Industry Co., Ltd. manufactured and/or sold to certain suppliers in the United States.

26.     Upon information and belief, Defendant King Shing Steel Enterprises Co., Ltd., is a foreign corporation doing business in several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  King Shing Steel Enterprises Co., Ltd. is involved in the manufacturing and/or sale of gypsum drywall.  Upon information and belief, King Shing Steel Enterprises Co., Ltd. manufactured, sold, distributed, marketed and/or placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina,

and Virginia.  King Shing Steel Enterprises Co., Ltd. has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States.  Upon information and belief, King Shing Steel Enterprises Co., Ltd. manufactured and/or sold to certain suppliers in the United States.

27.     Upon information and belief, Defendant Nanhai Silk Imp. & Exp. Corporation is a foreign corporation doing business in several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Nanhai Silk Imp. & Exp. Corporation is involved in the manufacturing and/or sale of gypsum drywall.  Upon information and belief, Nanhai Silk Imp. & Exp. Corporation manufactured, sold, distributed, marketed and/or placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Nanhai Silk Imp. & Exp. Corporation has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States.  Upon information and belief, Nanhai Silk Imp. & Exp. Corporation manufactured and/or sold to certain suppliers in the United States.

28.     Upon information and belief, Defendant Jinan Run & Fly New Materials Co., Ltd., is a foreign corporation doing business in several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Jinan Run & Fly New Materials Co., Ltd. is involved in the manufacturing and/or sale of gypsum drywall.  Upon information and belief, Jinan Run & Fly New Materials Co., Ltd. manufactured, sold, distributed, marketed and/or placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States,

including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia. Jinan Run & Fly New Materials Co., Ltd. has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Upon information and belief, Jinan Run & Fly New Materials Co., Ltd. manufactured and/or sold to certain suppliers in the United States.

29. Upon information and belief, Defendant Shandong Yifang Gypsum Industry Co., Ltd., is a foreign corporation doing business in several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia. Shandong Yifang Gypsum Industry Co., Ltd. is involved in the manufacturing and/or sale of gypsum drywall. Upon information and belief, Shandong Yifang Gypsum Industry Co., Ltd. manufactured, sold, distributed, marketed and/or placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia. Shandong Yifang Gypsum Industry Co., Ltd. has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Upon information and belief, Shandong Yifang Gypsum Industry Co., Ltd. manufactured and/or sold to certain suppliers in the United States.

30. Upon information and belief, Defendant Siic Shanghai International Trade (Group) Co., Ltd., is a foreign corporation doing business in several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia. Siic Shanghai International Trade (Group) Co., Ltd. is involved in the manufacturing and/or sale of gypsum drywall. Upon information and belief, Siic Shanghai International Trade (Group) Co.,

14

Ltd. manufactured, sold, distributed, marketed and/or placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia. Siic Shanghai International Trade (Group) Co., Ltd. has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Upon information and belief, Siic Shanghai International Trade (Group) Co., Ltd. manufactured and/or sold to certain suppliers in the United States.

31. Upon information and belief, Defendant Tianjin Tianbao Century Development Co., Ltd., is a foreign corporation doing business in several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia. Tianjin Tianbao Century Development Co., Ltd. is involved in the manufacturing and/or sale of gypsum drywall. Upon information and belief, Tianjin Tianbao Century Development Co., Ltd. manufactured, sold, distributed, marketed and/or placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia. Tianjin Tianbao Century Development Co., Ltd. has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Upon information and belief, Tianjin Tianbao Century Development Co., Ltd. manufactured and/or sold to certain suppliers in the United States.

32. Upon information and belief, Defendant Wide Strategy Limited, is a foreign corporation doing business in several States, including but not limited to, Louisiana, Alabama,

Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 471 of 647
Case 2:09-md-02047-EEF-MBN Document 27 Filed 06/04/09 Page 16 of 19
595

Florida, Mississippi, Texas, North Carolina, and Virginia. Wide Strategy Limited is involved in the manufacturing and/or sale of gypsum drywall. Upon information and belief, Wide Strategy Limited manufactured, sold, distributed, marketed and/or placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia. Wide Strategy Limited has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Upon information and belief, Wide Strategy Limited manufactured and/or sold to certain suppliers in the United States.

33.     Upon information and belief, Defendant Shandong Oriental International Trading Co., Ltd., is a foreign corporation doing business in several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia. Shandong Oriental International Trading Co., Ltd. is involved in the manufacturing and/or sale of gypsum drywall. Upon information and belief, Shandong Oriental International Trading Co., Ltd. manufactured, sold, distributed, marketed and/or placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia. Shandong Oriental International Trading Co., Ltd. has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Upon information and belief, Shandong Oriental International Trading Co., Ltd. manufactured and/or sold to certain suppliers in the United States.

Case 2:09-md-02047-EEF-MBN Document 23397-10 Filed 02/08/19 Page 472 of 647
Case 2:09-md-02047-EEF-MBN Document 27 Filed 06/09/09 Page 17 of 20 of
595

34.     Upon information and belief, Defendant Shanghai East Best Arts & Crafts Co., Ltd., is a foreign corporation doing business in several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Shanghai East Best Arts & Crafts Co., Ltd. is involved in the manufacturing and/or sale of gypsum drywall.  Upon information and belief, Shanghai East Best Arts & Crafts Co., Ltd. manufactured, sold, distributed, marketed and/or placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Shanghai East Best Arts & Crafts Co., Ltd. has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States.  Upon information and belief, Shanghai East Best Arts & Crafts Co., Ltd. manufactured and/or sold to certain suppliers in the United States.

35.     Upon information and belief, Defendant Qingdao Yilie International Trade Co., Ltd., is a foreign corporation doing business in several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Qingdao Yilie International Trade Co., Ltd. is involved in the manufacturing and/or sale of gypsum drywall.  Upon information and belief, Qingdao Yilie International Trade Co., Ltd. manufactured, sold, distributed, marketed and/or placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Qingdao Yilie International Trade Co., Ltd. has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their

drywall is installed in numerous structures in the United States. Upon information and belief, Qingdao Yilie International Trade Co., Ltd. manufactured and/or sold to certain suppliers in the United States.

36.    Upon information and belief, Defendant Tai'an Kangyijia Building Materials Co., Ltd., is a foreign corporation doing business in several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia. Tai'an Kangyijia Building Materials Co., Ltd. is involved in the manufacturing and/or sale of gypsum drywall. Upon information and belief, Tai'an Kangyijia Building Materials Co., Ltd. manufactured, sold, distributed, marketed and/or placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia. Tai'an Kangyijia Building Materials Co., Ltd. has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Upon information and belief, Tai'an Kangyijia Building Materials Co., Ltd. manufactured and/or sold to certain suppliers in the United States.

37.    Defendant Taishan is a foreign corporation doing business in several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia. Taishan is involved in the manufacturing and sale of gypsum drywall. Upon information and belief, Taishan manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia. Taishan has

continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Upon information and belief, Taishan manufactured and sold to certain suppliers in the United States.

38. Upon information and belief, defendant Taishan is owned and/or controlled by defendant Beijing New Building Materials Public Limited Co. ("BNBM"), which is a state-owned entity and respectively controlled by the Chinese government. BNBM is traded on the Shenzhen Stock Exchange.

39. Defendant, BNBM caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

40. Defendant China National Building Material Co., Ltd., is a partially owned subsidiary of BNBM Group.

41. Defendant, China National Building Material Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

42. Upon information and belief, defendant BNBM is owned and/or controlled by defendant Beijing New Building Materials (Group) Co., Ltd. ("BNBM Group"), which is a state owned entity and respectively controlled by the Chinese government.

43. Defendant BNBM Group caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

44. Upon information and belief, BNBM Group is owned and/or controlled by China National Building Materials Group Co. ("CNBM Group"), which is a state owned entity and respectively controlled by the Chinese government. CNBM Group is traded on the Hong Kong stock exchange.

Case 2:09-md-02047-EEF-MBN Document 23297-40 Filed 02/09/18 Page 475 of 647
Case 1:Case 2:09-md-02047-EEF-MBN Document 27 Document 06-1 Filed 05/06/09 Page 04 of Page 473 of
595

45.     Defendant CNBM Group caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

46.     Defendant CNBM USA Corp. is a California corporation with a principal place of business in California.  By information and belief, CNBM USA Corp. is a subsidiary of either BNBM, China National Building Material Co., Ltd., BNBM Group or CNBM Group.

47.     By information and belief, CNBM USA Corp. acted as an agent for BNBM, China National Building Material Co., Ltd., BNBM Group and/or CNBM Group by promoting and marketing the drywall at issue in this litigation to American suppliers.  Accordingly, CNBM USA Corp. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

48.     To the extent Taishan, BNBM, China National Building Material Co., Ltd., BNBM Group and CNBM Group are deemed to be foreign sovereign entities, Plaintiffs bring their claims against these entities pursuant to 28 U.S.C. § 1605(a)(2), the commercial activity exception to the Foreign Sovereign Immunities Act, or alternatively under § 1605(a)(5), the tortious act exception.  Plaintiffs allege that the claims against Taishan, BNBM, China National Building Material Co., Ltd., BNBM Group and CNBM Group are based upon commercial activities carried on in the United States.  The claims also seeks monetary damages against a foreign state for damage to property occurring in the United States, caused by the tortious acts or omissions of that foreign state, or of any official or employee of that foreign state while acting within the scope of his office or employment.

49.     Defendant Chenxiang is a foreign corporation doing business in several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Chenxiang is involved in the manufacturing and sale of gypsum drywall.  Upon

Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 476 of 647
Case 2:09-md-02047-EEF-MBN Document 27 Filed 09/08/09 Page 21 of 24
595

information and belief, Chenxiang manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within various States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia. Chenxiang has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and their drywall is installed in numerous structures in the United States. Upon information and belief, Chenxiang manufactured and sold to certain suppliers in the United States.

50. Defendant Sinkiang Tianshan Building Material And Gypsum Product Co., Ltd, is a foreign corporation and is a manufacturer of plasterboard. Defendant Sinkiang Tianshan Building Material And Gypsum Product Co., Ltd. is a subsidiary of Taishan.

51. Defendant Sinkiang Tianshan Building Material And Gypsum Product Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

52. Defendant Taishan Gypsum Co., Ltd. Lucheng Branch is a foreign corporation that operates a manufacturing plant. Defendant Taishan Gypsum Co., Ltd. Lucheng Branch is a subsidiary of Taishan.

53. Defendant Taishan Gypsum Co. Ltd. Lucheng Branch caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

54. Defendant Yunan Taishan Gypsum And Building Material Co., Ltd., is a foreign corporation and is a manufacturer and wholesaler of gypsum products. Defendant Yunan Taishan Gypsum And Building Material Co., Ltd. has a joint-stock agreement with Defendant BNBM.

21

Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/08/19 Page 477 of 647
Case 1:Case 2:09-md-02047-EEF-MBN Document 27 Document 304-1 Filed 12/08/19 Page 23 of 25
595

55.     Defendant Yunan Taishan Gypsum And Building Material Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

56.     Defendant Tai'an Jindun Building Material Co., Ltd., is a foreign corporation and is a manufacturer and wholesaler of gypsum products. Defendant Tai'an Jindun Building Material Co., Ltd. has joint-stock agreement with Defendant BNBM.

57.     Defendant Tai'an Jindun Building Material Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

58.     Defendant Taishan Gypsum (Xiangtan) Co. Ltd., is a foreign corporation. Defendant Taishan Gypsum (Xiangtan) Co. Ltd. is a subsidiary of Taishan.

59.     Defendant Taishan Gypsum (Xiangtan) Co. Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

60.     Defendant Taishan Gypsum (Pingshan) Co., Ltd., is a foreign corporation and is a manufacturer of gypsum products. Defendant Taishan Gypsum (Pingshan) Co., Ltd. is a subsidiary of Taishan.

61.     Defendant Taishan Gypsum (Pingshan) Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

62.     Defendant Taishan Gypsum (Hengshui) Co., Ltd., is a foreign corporation and is a manufacturer of gypsum. Defendant Taishan Gypsum (Hengshui) Co. Ltd., is a subsidiary of Taishan.

63.     Defendant Taishan Gypsum (Hengshui) Co,. Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

Case 2:09-md-02047-EEF-MBN Document 23297-10 Filed 12/09/19 Page 478 of 647
Case 1:Case 2:09-md-02047-EEF-JCW Document 27 Filed 08/09/19 Page 23 of Page 426 of
595

64.     Defendant Taishan Gypsum (Henan) Co., Ltd., is a foreign corporation and is a subsidiary of Taishan.

65.     Defendant Taishan Gypsum (Henan) Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

66.     Defendant Hubei Taishan Building Material Co., Ltd. is foreign corporation and is a manufacturer of gypsum.  Defendant Hubei Taishan Building Material Co., Ltd. is a subsidiary of Defendant BNBM.

67.     Defendant Hubei Taishan Building Material Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

68.     Defendant Taishan Gypsum (Tongling) Co., Ltd., is a foreign corporation and is a subsidiary of Taishan.

69.     Defendant Taishan Gypsum (Tongling) Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

70.     Defendant Weifang Aotai Gypsum Co., Ltd., is a foreign corporation and is a manufacturer and wholesaler of gypsum products.  Defendant Weifang Aotai Gypsum Co., Ltd. is a subsidiary of Taishan.

71.     Defendant Weifang Aotai Gypsum Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

72.     Defendant Taishan Gypsum (Pizhou) Co., Ltd. is a foreign corporation and is a manufacturer of gypsum.  Defendant Taishan Gypsum (Pizhou) Co. is a subsidiary of Taishan.

73.     Defendant Taishan Gypsum (Pizhou) Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

74.     Defendant Fuxin Taishan Gypsum And Building Material Co., Ltd., is a foreign corporation and is a subsidiary of Taishan.

75.     Defendant Fuxin Taishan Gypsum And Building Material Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

76.     Defendant Taishan Gypsum (Wenzhou) Co., Ltd., is a foreign corporation and is a subsidiary of Taishan.

77.     Defendant Taishan Gypsum (Wenzhou) Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

78.     Defendant Taishan Gypsum (Chongqing) Co., Ltd., is a foreign corporation and is a subsidiary of Taishan.

79.     Defendant Taishan Gypsum (Chongqing) Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

80.     Defendant Taishan Gypsum (Jiangyin) Co., Ltd., is a foreign corporation and is a manufacturer of gypsum.  Defendant Taishan Gypsum (Jiangyin) Co., Ltd. is a subsidiary of Taishan.

81.     Defendant Taishan Gypsum (Jiangyin) Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

82.     Defendant Qinhuangdao Taishan Building Material Co., Ltd., is a foreign corporation and is a manufacturer of gypsum.  Defendant Qinhuangdao Taishan Building Material Co., Ltd. is a subsidiary of Taishan.

83. Defendant Qinhuangdao Taishan Building Material Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

84. Defendant Tai'an Taishan Gypsum Board Co., Ltd., is a foreign corporation and is a subsidiary of Defendant BNBM.

85. Defendant Tai'an Taishan Gypsum Board Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

86. Defendant Taishan Gypsum (Baotou) Co., Ltd., is a foreign corporation and is a subsidiary of Taishan.

87. Defendant Taishan Gypsum (Baotou) Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

88. Defendant Shaanxi Taishan Gypsum Co., Ltd., is a foreign corporation and subsidiary of Taishan.

89. Defendant Shaanxi Taishan Gypsum Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

90. Defendant USG is a Delaware corporation doing business in several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia. USG, together with its various affiliates, including Seacoast, is the nation's largest distributor of drywall and related building products.

91. Defendant Seacoast is a Delaware corporation doing business in several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia. Seacoast is a subsidiary of USG.

92.     Defendant Banner is a Florida corporation, having its principal place of business in Miami-Dade County, Florida.  Banner is a supplier of drywall and related building products. Banner supplied the drywall at issue in this litigation in Florida and/or other affected states.

93.     Defendant La Suprema Trading is a Florida corporation, having its principal place of business in Miami-Dade County, Florida.  La Suprema Trading is a supplier of drywall and related building products.  La Suprema Trading supplied the drywall at issue in this litigation in Florida and/or other affected states.

94.     Defendant La Suprema Enterprise is a Florida corporation, having its principal place of business in Miami-Dade County, Florida.  La Suprema Enterprise is a supplier of drywall and related building products.  La Suprema Enterprise supplied the drywall at issue in this litigation in Florida and/or other affected states.

95.     Defendant Black Bear is a Florida corporation, having its principal place of business in Largo, Florida.  Black Bear is a supplier of drywall and related building products. Black Bear supplied the drywall at issue in this litigation in Florida and/or other affected states.

96.     Defendant Smokey Mountain Materials, Inc. is a foreign corporation, having its principal place of business in Knoxville, Tennessee.  Smokey Mountain Materials, Inc. is a supplier of drywall and related building products.  By information and belief, Smokey Mountain Materials, Inc. supplied the drywall at issue in this litigation in certain of the affected states.

97.     Defendant Emerald Coast Building Materials is a division of Smokey Mountain Materials, Inc.  Emerald Coast Building Materials is a supplier of drywall and related building products.  By information and belief, Emerald Coast Building Materials supplied the drywall at issue in this litigation in certain of the affected states.

Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/08/19 Page 482 of 647
Case 1:Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/08/19 Page 5 of 130 of
595

98.     Defendant Interior/Exterior Building Supply, LP is a Louisiana Limited partnership with a principal place of business in New Orleans, Louisiana.  Interior/Exterior Building Supply, LP is a supplier of drywall and related building products.  Interior/Exterior Building Supply, LP supplied the drywall at issue in this litigation in Louisiana and/or other affected states.

99.     Defendant Interior/Exterior Enterprises LLC, is a Louisiana Limited liability company with its principal place of business in New Orleans, Louisiana.  Interior/Exteriors Enterprises LLC is a supplier of drywall and related building products.  Interior/Exteriors Enterprises LLC supplied the drywall at issue in this litigation in Louisiana and/or other affected states.

100.    Defendant Rightway Drywall, Inc., is a Georgia corporation with its principal place of business in Mason and/or Bonaire, Georgia.  Rightway Drywall, Inc. is a supplier of drywall and related building products.  By information and belief, Rightway Drywall, Inc., supplied the drywall at issue in this litigation in certain of the affected states.

101.    Defendant IBSA is a member owned buying organization with its principal place of business in Smithfield, North Carolina, and is authorized to do and doing business in several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  IBSA is a supplier of drywall and related building products.

102.    Defendant Rothchilt is a foreign corporation doing business in several States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia.  Rothchilt exports products, including gypsum drywall, to customers in the United States.  Upon information and belief, Rothchilt sold, distributed, marketed and placed with the stream of commerce gypsum drywall with the expectation that the drywall would be purchased

by thousands of consumers, if not more, within various States, including but not limited to, Louisiana, Alabama, Florida, Mississippi, Texas, North Carolina, and Virginia. Rothchilt has continuously and systematically distributed and sold drywall to numerous purchasers in the United States and the drywall supplied by Rothchilt is installed in numerous structures in the United States.

103.    Defendant Tobin is a Virginia corporation with its principal place of business located at 5008 Gatehouse Way, Virginia Beach, Virginia, 23455.

104.    Defendant Tobin imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall at issue in this case. Tobin supplied the drywall at issue in this litigation in Virginia and/or other affected states.

105.    Defendant Venture is a Virginia corporation with its principal place of business located at 1140 Azalea Garden Road, Norfolk, Virginia, 23502.

106.    Venture imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall to builders that was supplied to and damaged Plaintiffs and Class Members. Venture also imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall directly to some Plaintiff and Class Members. Venture supplied the drywall at issue in this litigation in Virginia and/or other affected states.

107.    Defendant Sunrise Building Materials Ltd., is a Canadian Corporation with its principle place of business located at Unit 7, 55 Nugget Ave., Scarborough, Toronto, ON, Canada, M15 3L1. Sunrise Building Materials Ltd. is a supplier of drywall and related building products. By information and belief, Sunrise Building Materials Ltd., supplied the drywall at issue in this litigation in certain of the affected states.

Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 484 of 647
Case 1:Case 2:09-md-02047-EEF-MBN Document 27-1 Filed 01/04/2019 Page 31 of 732 of
595

108.     Defendant Devon International is a Pennsylvania Corporation with a principle place of business located in King of Prussia, Pennsylvania.  Devon International is a supplier of drywall and related building products.  By information and belief, Devon International supplied the drywall at issue in this litigation in certain of the affected states.

109.     Defendant Triorient Trading, Inc., is a Connecticut Corporation with a principal place of business located in Stamford, Connecticut.  Triorient Trading, Inc. is a supplier of drywall and related building products.  By information and belief, Triorient Trading, Inc. supplied the drywall at issue in this litigation in certain of the affected states.

110.     Defendant Great Western Building Materials is a Arizona Corporation with a principal place of business located in California.  Great Western Building Materials is a supplier of drywall and related building products.  By information and belief, Great Western Building Materials supplied the drywall at issue in this litigation in certain of the affected states.

111.     Defendant All Interior Supply, Inc., is a Florida Corporation with a principal place of business located in Hialeah, Florida.  All Interior Supply, Inc. is a supplier of drywall and related building products.  By information and belief, All Interior Supply, Inc. supplied the drywall at issue in this litigation in certain of the affected states.

112.     Defendant A&R Hardware Supply, Inc., is a Florida Corporation with a principal place of business located in Miami, Florida.  A&R Hardware Supply, Inc. is a supplier of drywall and related building products.  By information and belief, A&R Hardware Supply, Inc. supplied the drywall at issue in this litigation in certain of the affected states.

113.     Defendant Davis Construction Supply, LLC is a Florida Corporation with a principal place of business located in Newberry, Florida.  Davis Construction Supply, LLC is a

supplier of drywall and related building products. By information and belief, Davis Construction Supply, LLC supplied the drywall at issue in this litigation in certain of the affected states.

114. Defendant Elite Supply Corporation is a New York corporation with a principal place of business located in Elmhurst, New York. Elite Supply Corporation is a supplier of drywall and related building products. By information and belief, Elite Supply Corporation supplied the drywall at issue in this litigation in certain of the affected states.

115. Defendant International Materials Trading, Incorporated is a Nevada corporation with a principal place of business located in Carson City, Nevada. International Materials Trading, Incorporated is a supplier of drywall and related building products. By information and belief, International Materials Trading, Incorporated supplied the drywall at issue in this litigation in certain of the affected states.

116. Defendant Marathon Construction Materials Inc. is a New York corporation with a principal place of business located in New York, NY. Marathon Construction Materials Inc. is a supplier of drywall and related building products. By information and belief, Marathon Construction Materials Inc. supplied the drywall at issue in this litigation in certain of the affected states.

117. Defendant Steeler, Inc. is a Washington corporation with a principal place of business located in Seattle, Wa. Steeler, Inc. is a supplier of drywall and related building products. By information and belief, Steeler, Inc. supplied the drywall at issue in this litigation in certain of the affected states.

118. Defendant Maurice Pincoffs Company, Inc. is a Texas corporation with a principal place of business located in Houston, TX. Maurice Pincoffs Company, Inc. is a

supplier of drywall and related building products. By information and belief, Maurice Pincoffs Company, Inc. supplied the drywall at issue in this litigation in certain of the affected states.

119.    Defendant Metro Resources Corp. is a Nevada corporation with a principal place of business located in Carson City, Nevada. Metro Resources Corp. is a supplier of drywall and related building products. By information and belief, Metro Resources Corp. supplied the drywall at issue in this litigation in certain of the affected states.

120.    Defendant North Pacific Lumber Co. is a Oregon corporation with a principal place of business located in Portland, OR. North Pacific Lumber Co. is a supplier of drywall and related building products. By information and belief, North Pacific Lumber Co. supplied the drywall at issue in this litigation in certain of the affected states.

121.    Defendant Oriental Merchandise Company, Inc. f/k/a Oriental Trading Company, Inc. is a Louisiana corporation with a principal place of business located in Metairie, La. Oriental Merchandise Company, Inc. is a supplier of drywall and related building products. By information and belief, Oriental Merchandise Company, Inc. supplied the drywall at issue in this litigation in certain of the affected states.

122.    Defendant Stock Building Supply, LLC is a North Carolina limited liability corporation with a principal place of business located in Raleigh, NC. Stock Building Supply, LLC is a supplier of drywall and related building products. By information and belief, Stock Building Supply, LLC supplied the drywall at issue in this litigation in certain of the affected states.

123.    Defendant Stock Building Supply, Inc. is a North Carolina corporation with a principal place of business located in Raleigh, NC. Stock Building Supply, Inc. is a supplier of

drywall and related building products.  By information and belief, Stock Building Supply, Inc. supplied the drywall at issue in this litigation in certain of the affected states.

124.    Defendant Bedrock Building Materials, LLC is a Washington limited liability corporation with a principal place of business located in Olympia, Wa.  Bedrock Building Materials, LLC is a supplier of drywall and related building products.  By information and belief, Bedrock Building Materials, LLC supplied the drywall at issue in this litigation in certain of the affected states.

125.    Defendant The China Corporation, Ltd. is a foreign limited liability corporation that is a supplier of drywall and related building products.  By information and belief, The China Corporation, Ltd. supplied the drywall at issue in this litigation in certain of the affected states.

126.    Defendant Tov Trading Inc. is a New York corporation with a principal place of business located in Brooklyn, NY.  Tov Trading Inc. is a supplier of drywall and related building products.  By information and belief, Tov Trading Inc. supplied the drywall at issue in this litigation in certain of the affected states.

127.    Defendant Builders Gypsum Supply, L.L.P. is a Texas limited liability corporation with a principal place of business located in Houston, TX.  Builders Gypsum Supply, L.L.P. is a supplier of drywall and related building products.  By information and belief, Builders Gypsum Supply, L.L.P. supplied the drywall at issue in this litigation in certain of the affected states.

128.    Defendant Builders Gypsum Supply Co., Inc. is a Texas corporation with a principal place of business located in Houston, TX.  Builders Gypsum Supply Co., Inc. is a supplier of drywall and related building products.  By information and belief, Builders Gypsum Supply Co., Inc. supplied the drywall at issue in this litigation in certain of the affected states.

Case 2:09-md-02047-EEF-MBN   Document 22297-10   Filed 12/09/19   Page 488 of 647
Case 1:Case 2:09-md-02047-EEF-MBN   Document 27   Document 608-1 10-11 0:19/ Page 23 of 736 of
595

129.     Defendant J.W. Allen & Company Incorporated is a Louisiana corporation with a principal place of business located in Kenner, La.  J.W. Allen & Company Incorporated is a supplier of drywall and related building products.  By information and belief, J.W. Allen & Company Incorporated supplied the drywall at issue in this litigation in certain of the affected states.

130.     Defendant Phoenix Imports Co., Ltd. is a Georgia corporation with a principal place of business located in Roswell, Ga.  Phoenix Imports Co., Ltd. is a supplier of drywall and related building products.  By information and belief, Phoenix Imports Co., Ltd. supplied the drywall at issue in this litigation in certain of the affected states.

131.     Defendant TMO Global Logistics, LLC is a Virginia corporation with a principal place of business located in Charlottesville, VA.  TMO Global Logistics, LLC is a supplier of drywall and related building products.  By information and belief, TMO Global Logistics, LLC supplied the drywall at issue in this litigation in certain of the affected states.

132.     Defendant Quite Solutions Inc. is a Texas corporation with a principal place of business located in Allen, Tx.  Quite Solutions Inc. is a supplier of drywall and related building products.  By information and belief, Quite Solutions Inc. supplied the drywall at issue in this litigation in certain of the affected states.

133.     Defendant Mazer's Discount Home Centers, Inc. is a Delaware corporation with a principal place of business located in Wilmington, De.  Mazer's Discount Home Centers, Inc. is a supplier of drywall and related building products.  By information and belief, Mazer's Discount Home Centers, Inc. supplied the drywall at issue in this litigation in certain of the affected states.

134.   Defendant Knauf Gypsum Indonesia is a foreign corporation that is responsible for the import/export of the drywall at issue in this litigation to the United States.  By information and belief, Knauf Gypsum Indonesia is a subsidiary of Knauf GIPS.

135.   Defendant Knauf Gypsum Indonesia caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

136.   Defendant Guangdong Knauf New Building Product Co., Ltd. is a foreign corporation that is responsible for the import/export of the drywall at issue in this litigation to the United States.  By information and belief, Guangdon Knauf New Building Product Co., Ltd. is a subsidiary of Knauf GIPS.

137.   Defendant Guangdong Knauf New Building Product Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

138.   Defendant Knauf Amf GmbH & Co. Kg is a foreign corporation that is responsible for the import/export of the drywall at issue in this litigation to the United States.  By information and belief, Knauf Amf GmbH & Co. Kg is a subsidiary of Knauf GIPS.

139.   Defendant Knauf Amf GmbH & Co. Kg caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

140.   Defendant Knauf Do Brasil Ltd. is a foreign corporation that is responsible for the import/export of the drywall at issue in this litigation to the United States.  By information and belief, Knauf Do Brasil Ltd. is a subsidiary of Knauf GIPS.

141.   Defendant Knauf Do Brasil Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

Case 2:09-md-02047-EEF-MBN Document 23297-10 Filed 02/09/18 Page 490 of 647
Case 1:case 2:2009-md-02047-dashfnnnn27 Document 06-11-60 01/28/09 Pages 5 of Page 738 of
595

142.    Defendant Taian Taishan Plasterboard Co., Ltd. is a foreign corporation that is responsible for the import/export of the drywall at issue in this litigation to the United States.  By information and belief, Taian Taishan Plasterboard Co., Ltd. is a subsidiary of Knauf GIPS.

143.    Defendant Taian Taishan Plasterboard Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

144.    Defendant Shanghai Yu Yuan Imp & Exp Co., Ltd. is a foreign corporation that is responsible for the import/export of the drywall at issue in this litigation to the United States.

145.    Defendant Shanghai Yu Yuan Imp & Exp Co., Ltd. caused the drywall at issue in the case to be imported, distributed, delivered, supplied, inspected, marketed and/or sold.

146.    John Doe Defendants One (1) through Twenty (20) are corporations, partnerships, companies, or other entities involved in the marketing, design, development, manufacture, production, testing, inspecting, selling, advertising, promoting, distribution, importing, exporting, delivery, or supply of the defective drywall, whose identities are not presently known by Plaintiffs.

**FACTS GIVING RISE TO INDUSTRY WIDE ALTERNATIVE LIABILITY**

147.    At all times herein mentioned, the Defendants collectively controlled 100% of the relevant market for the sale, distribution, exporting, importing, supplying, and/or marketing of the defective Chinese drywall at issue in this litigation.  The Conduct of the Defendants occurred simultaneously at all relevant times.

148.    The defective drywall at issue in this litigation presents a uniform risk of harm. That is, the drywall was defective since it emitted noxious gases that caused property damages and/or personal injuries to Plaintiffs and Class Members.

Case 2:09-md-02047-EEF-MBN Document 22297-40 Filed 12/09/19 Page 491 of 647
Case 1:Case 2:09-md-02047-EEF-MBN Document 22297-40 Filed 12/09/19 Page 36 of 739 of
595

149.     Plaintiffs, and Plaintiffs alone, have engaged in a genuine and diligent effort to identify the manufacturers and other parties connected to the distribution of the defective drywall in this litigation without success due to the inherent inability to identify the manufacturer of the product that caused them harm.  This inability to identify the product manufacturer results from the Defendants' deliberate distribution of the defective Chinese drywall in a manner that makes it difficult and/or impossible for consumers to determine the source of the drywall.

150.     For instance, Defendants concealed the origin of the defective Chinese drywall by distributing it without any packaging and/or markings that can be used to track the product to a specific manufacturer, supplier, distributor, etc.  By way of example, certain manufacturers have deliberately engaged in subterfuge by marking their drywall as "made in China" without any corresponding markings identifying that defendant as the manufacturer of the drywall in question.  The Plaintiffs Steering Committee ("PSC") has identified several such unidentifiable markings that have been made of record in accordance with PTO 10.

151.     Since the drywall at issue in this litigation is a fungible product that is difficult to trace in the absence of such identifying characteristics, all Defendants are liable to Plaintiffs in ratio to their proportionate share of the relevant market.

152.     Given the uncertainty as to which Defendant has caused the Plaintiffs' harm, the burden should be upon Defendants to prove that they did not cause the harm to Plaintiffs and Class Members consistent with Restatement (Second) of Torts Section 433(B).

## FACTS REGARDING PRODUCT DEFECT

153.     Upon information and belief, Defendants' drywall contains gypsum.

154.     In "defective drywall" (such as that designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold by Defendants herein), the

gypsum and other components of the product break down and release sulfides and other noxious gases that are then emitted (or "off-gassed") from the drywall. This action seeks damages from Defendants for their joint and several acts and/or omissions.

155. Sulfides and other noxious gases, such as those emitted from Defendants' drywall, cause corrosion and damage to personal property (such as air conditioning and refrigerator coils, faucets, utensils, electrical wiring, copper, electronic appliances and other metal surfaces and property).

156. Exposure to sulfide and other noxious gases, such as those emitted from Defendants' drywall, causes personal injury resulting in eye irritation, sore throat and cough, nausea, fatigue, shortness of breath, fluid in the lungs, and/or neurological harm.

157. As a direct and proximate result of Defendants' actions and omissions, Plaintiffs' and the Class Members' structures, personal property, and bodies have been exposed to Defendants' defective and unfit drywall and the corrosive and harmful effects of the sulfide and other noxious gases being released from Defendants' defective drywall.

158. Defendants tortiously manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed and/or sold the defective drywall, which was unfit for its intended purpose and unreasonably dangerous in its normal use in that the drywall caused corrosion and damage to personal property in Plaintiffs' and Class Members' homes, residences or structures and/or caused personal injury resulting in eye irritation, a sore throat and cough, nausea, fatigue, shortness of breath, fluid in the lungs, and/or neurological harm.

159. Defendants recklessly, wantonly, and/or negligently manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed and/or sold the defective drywall at issue in this litigation.

Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 493 of 647
Case 1:Case 2:09-md-02047-EEF-JCW Document 27 Document 968 Filed 01/08/09 Pages 38 Page 41 of
595

160.     Defendants recklessly, wantonly and/or negligently implement faulty, procedures

for purposes of formulating, preparing, testing, and otherwise ensuring the quality and/or

character of the defective drywall at issue in this litigation.

161.     As a direct and proximate result of Defendants' defective and unfit drywall and

the corrosive and harmful effects of the sulfide and other noxious gases being released from

these products, Plaintiffs and Class Members have suffered, and continue to suffer economic

harm and/or personal injury.

162.     As a direct and proximate result of Defendants' defective and unfit drywall and

the corrosive and harmful effects of the sulfide and other noxious gases being released from

these products, the Plaintiffs and the Class Members have suffered, and continue to suffer

damages.  These damages include, but are not limited to, costs of inspection; costs and expenses

necessary to remedy, replace and remove the defective drywall and other property that has been

impacted; lost value or devaluation of their homes, residences or structures and property; loss of

use and enjoyment of their home and property; and/or damages associated with personal injuries.

163.     As a direct and proximate result of Defendants' defective and unfit drywall and

the corrosive and harmful effects of the sulfide and other noxious gases being released from

these products, Plaintiffs and the Class Members have been exposed to toxic gases, suffered

personal injury, have been placed at an increased risk of disease, and have need for injunctive

relief in the form of repair of their home, of their home contracts, emergency/corrective notice,

environmental testing and monitoring, and/or medical monitoring.

164.     Defendants engaged in a course of conduct, individually and/or collectively, that

caused the Plaintiffs' and Class Members' exposure to the defective drywall at issue in this

litigation by virtue of their interdependent conscious parallel conduct in the manufacture,

Case 2:09-md-02047-EEF-MBN Document 23297-40 Filed 12/09/19 Page 494 of 647
Case 1:Case 2:09-md-02047-EEF-MBN Document 27-1 Filed 03/08/19 Page 34 of 42 of
595

exporting, importing, distribution, delivery, supply, inspection, marketing, and/or sale of the defective drywall at issue in this litigation. Defendants' parallel conduct suggests their common behavior was not the result of idiosyncratic decision making.

165. By information and belief, certain of the foreign defendants have positioned themselves in a manner designed to avoid or evade liability for their role in causing the manufacture, exporting, importing, distribution, delivery, supply, marketing, and/or sale of the defective drywall at issue in this litigation by making it difficult for injured consumers (located in the United States) to accomplish service on them. Such foreign defendants are seemingly attempting to avoid responsibility for their tortious conduct.

## FACTS REGARDING INVESTORS WHO AIDED AND ABETTED DEFENDANTS

166. J.P. Morgan Chase & Co. ("J.P. Morgan"), and certain other corporations and entities (collectively the "Investing Entities"), engaged in a deliberate and/or reckless course of conduct designed to aid and abet Defendants in the manufacture, exporting, importing, distribution, delivery, supply, marketing, and/or sale of the defective drywall at issue in this litigation.

167. By information and belief, but for these investments by the Investing Entities, Defendants would not have been able to manufacture, export, import, distribute, deliver, supply, market, and/or sell of the defective drywall at issue in this litigation.

168. The Investing Entities were aware or should have been aware that Defendants were manufacturing, exporting, importing, distributing, delivering, supplying, marketing, and/or selling the defective drywall at issue in this litigation in a manner that would make it difficult for injured consumers (located in the United States) to accomplish service on the foreign defendants.

169.     Notwithstanding their apparent knowledge and/or negligent failure to discover the tortious scheme by the foreign defendants, the Investing Entities purposefully made investments with these foreign defendants in a manner that was designed to shield them from liability to American property owners.

170.     For instance, J.P. Morgan acquired a 12.3% interest in CNBM's tradeable shares with the understanding that this entity would profit from its exploitation of homeowners seeking to rebuild their lives after the devastation of hurricanes Rita and Katrina. This type of investment was ideal to the Investing Entities since these investments could be very profitable while avoiding the risk of loss where the foreign defendants can avoid the service of process by American consumers and responsibility for their tortious conduct.

171.     Other entities that are known to own an interest in CNBM are Atlantis Investment Management Ltd., Schroder Investment Management Limited, Baillie Gifford & Co., Callander Alex, Menzies Robin, Plowden Charles, Telfer Andrew, Warden Alison, Whitley Sarah, and Government of Singapore Investment Corporation Pte Ltd.

172.     Entities that are known to own an interest in BNBM are China Construction Bank, Cha Genlou, Industrial and Commercial Bank of China, Aerospace Science & Technology Finance Co., Ltd., China Social Insurance Fund Portfolia 108, Bank of China, Agricultural Bank of China, Zhongrong International Trust Co., Ltd.

173.     By investing in entities such as CNBM and BNBM, the Investing Entities put themselves in a position to profit from the exploitation of American Consumers who were injured by Defendants.

174.     Accordingly, the Investing Entities engaged in a course of conduct, individually and/or collectively, that caused the Plaintiffs' and Class Members' exposure to the defective

Case 2:09-md-02047-EEF-MBN Document 23297-10 Filed 12/09/19 Page 496 of 647
Case 2:09-md-02047-EEF-MBN Document 2 Filed 12/09/19 Page 496 of 595
595

drywall at issue in this litigation by virtue of their interdependent conscious parallel conduct in investing in foreign entities responsible for the manufacture, exporting, importing, distribution, delivery, supply, inspection, marketing, and/or sale of the defective drywall.

175. Additional discovery will reveal the full role and responsibility of the Investing Entities for the damages incurred by Plaintiffs and Class Members and their potential as party defendants.

## FACTS REGARDING OTHER ENTIITIES THAT MAY HAVE AIDED AND ABETTED DEFENDANTS

176. Plaintiffs' investigation has revealed several entities that are affiliated with certain foreign defendants.

177. Tai'an Taihe Shengyuan Industry and Trade Co., Ltd., is a foreign corporation that has a joint-stock agreement with Defendant BNBM.

178. BNBM Design & Research Institute Co., Ltd., is a foreign defendant that has a joint-stock agreement with Defendant BNBM.

179. Shuoguang Tejing Technology Development Co., Ltd., is a foreign defendant that has a joint-stock agreement with Defendant BNBM.

180. Tancheng Xinxing New Decoration Material Co., Ltd., is a foreign corporation operating in the paper products industry. Defendant Tancheng Xinxing New Decoration Material Co., Ltd. has a joint-stock agreement with Defendant BNBM.

181. BNBM Technology Development Co., Ltd., is a foreign corporation that has a joint-stock agreement with Defendant BNBM.

182. Xuzhou Falashite Building Material Co., Ltd, is a foreign corporation and is a subsidiary of Defendant BNBM.

183.    Tai'an Donglian Investment and Trade Co., Ltd., is a foreign corporation and is a subsidiary of Defendant BNBM.

184.    BNBM Zhaoqing Co., Ltd., is a foreign corporation and is a subsidiary of Defendant BNBM.

185.    BNBM Suzhou Co., Ltd., is a foreign corporation and is a subsidiary of Defendant BNBM.

186.    Beijing New Material Incubator Co., Ltd., is a foreign corporation and is a subsidiary of Defendant BNBM.

187.    BNBM Taicang Co., Ltd., is a foreign corporation and is a subsidiary of Defendant BNBM.

188.    BNBM Chengdu Co., Ltd., is a foreign corporation and is a subsidiary of Defendant BNBM.

189.    BNBM Hubei Co., Ltd., is a foreign corporation and is a subsidiary of Defendant BNBM.

190.    Hubei Taishan Building Material Co., Ltd., is a foreign corporation and is a subsidiary of Taishan.

191.    BNBM Ningbo Co., Ltd., is a foreign corporation and is a  subsidiary of Defendant BNBM.

192.    BNBM Building Plastic Co., Ltd., is a foreign corporation and is a subsidiary of Defendant BNBM.

193.    BNBM Suzhou Mineral Fiber Ceiling Co., Ltd., is a foreign corporation and is a subsidiary of Defendant BNBM.

194.    BNBM Home Co., Ltd., is a foreign corporation and is a subsidiary of Defendant BNBM.

195.    BNBM Guang'an Co., Ltd., is a foreign corporation and is a subsidiary of Defendant BNBM.

196.    BNBM Beijing Chenlong Decoration Engineering Co., Ltd. (aka BNBM Chenlong Decoration Co. Ltd.), is a foreign corporation and is a subsidiary of Defendant BNBM.

197.    China National Building Material Investment Co., Ltd., is a foreign corporation that is owned and/or controlled by CNBM Group.

198.    BNBM Commercial Trading Co., Ltd., is a foreign corporation that is owned and/or controlled by CNBM Group.

199.    Beijing New Building Material (Group) Co., Ltd., Xiamen Sales Center is a foreign corporation that is owned and/or controlled by CNBM Group.

200.    Beijing New Building Material (Group) Co., Ltd., Zhengzhou Branch is a foreign corporation that is owned and/or controlled by CNBM Group.

201.    Baoding Zhugen New Material Company is a foreign corporation that is owned and/or controlled by CNBM Group.

202.    Beijing CNBM  International Corporation, is a foreign corporation that is owned and/or controlled by CNBM Group.

203.    Beijing New Building Material (Group) Co., Ltd., Shijiazhuang Branch is a foreign corporation that is owned and/or controlled by CNBM Group.

204.    China National Building Material And Equipment Import & Export Corporation (aka CNBM Equipment, China National Building Material Import and Export Company, China National Building Material Import and Export Company, CNBM Trading, CNBM International,

43

Case 2:09-cv-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 499 of 647
Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 499 of
595

CNBM International Corp., and China New Building Material[s] & Equipment[s] Import & Export Corp.).

205.    By information and belief, China Building Materials Academy is a foreign corporation that is owned and/or controlled by CNBM Group.

206.    By information and belief, CNBM International Engineering Co. Ltd. is a foreign corporation that is owned and/or controlled by CNBM Group.

207.    Zhujiang Building Material Industrial Co., Ltd., is a foreign corporation that is owned and/or controlled by CNBM Group.

208.    CNBM Hangzhou Design & Research Institute is a foreign corporation that is owned and/or controlled by CNBM Group.

209.    BNBM Beijing Zhugen Sales Center (aka BNBM Zhugen Sales Center) is a foreign corporation that is owned and/or controlled by CNBM Group.

210.    BNBM International Co., Ltd., is a foreign corporation that is owned and/or controlled by CNBM Group.

211.    Beijing New Building Material (Group) Co., Ltd., Jinan Branch is a foreign corporation that is owned and/or controlled by CNBM Group.

212.    BNBM Tianjin Century Sales Corporation is a foreign corporation that is owned and/or controlled by CNBM Group.

213.    Neo-China Group Engineering Consultancy Corporation is a foreign corporation that is owned and/or controlled by CNBM Group.

214.    BNBM Plastic Pipe Co., Ltd., is a foreign corporation that is owned and/or controlled by CNBM Group.

44

215. By information and belief, China Triumph International Engineering Co. Ltd. is a foreign corporation that is owned and/or controlled by CNBM Group.

216. By information and belief, CTIEC Shenzhen Scieno-Tech Engineering Materials Co. Ltd. is a foreign corporation that is owned and/or controlled by CNBM Group.

217. By information and belief, CNBM Technology Co. Ltd. is a foreign corporation that is owned and/or controlled by CNBM Group.

218. By information and belief, Beijing New Building Material (Group) Co., Ltd. North China Branch is a foreign corporation that is owned and/or controlled by CNBM Group.

219. By information and belief, Tian'an Jindun Building Material Co., Ltd. is a foreign corporation that is owned and/or controlled by CNBM Group.

220. By information and belief, Taishan Paper Gypsum Co., Ltd. Tia'an is a foreign corporation that is owned and/or controlled by CNBM Group.

221. By information and belief, Taishan Gypsum Co. Ltd. Jiangxi is a foreign corporation that is owned and/or controlled by CNBM Group.

222. By information and belief, Shanghai Hengsheng New Building Material Development Company Limited is a foreign corporation that is owned and/or controlled by CNBM Group.

223. By information and belief, Xian Wall Materials Research & Design Institute is a foreign corporation that is owned and/or controlled by CNBM Group.

224. By information and belief, United Suntech Craft, Harvest Supreme International Ltd., and Rich Well (Far East) Ltd., and Beijing Building Materials Import and Export Co., Ltd., are other potential parties who may have aided and abetted the Defendants in this action.

225.    Additional discovery will reveal the full role and responsibility of the above entities for the damages incurred by Plaintiffs and Class Members and their potential as party defendants.

## CLASS ACTION ALLEGATIONS

226.    Plaintiffs bring this suit as a class action pursuant to Rules 23(a), (b)(1), (b)(2), (b)(3) and/or 23(c)(4) of the Federal Rules of Civil Procedure, on behalf of themselves and the following Class comprised of:

> All owners and landlords of real properties located in the United States containing defective Chinese drywall manufactured, sold, distributed, and/or supplied by Defendants.

227.    The following Persons shall be excluded from the Class: (1) Defendants and their subsidiaries, affiliates, officers and employees; (2) all Persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the judge(s) to whom this case is assigned and any immediate family members thereof.

228.    For purposes of this Complaint, as to each affected property owned by a class member, the law of the State where the property is located should apply to the claims of such class members.  To the extent the Court determines Plaintiffs are improper class representatives for class members who own property outside the State of Louisiana, stand-alone classes, with class representatives to be identified at a later date, should be used to represent the interests of class members who own property outside of Louisiana.

229.    Upon information and belief, the Defendants' defective and unfit drywall was installed in at least hundreds of homes, residences, or other structures owned by Plaintiffs or Class Members.  Therefore, the Class is sufficiently numerous such that the joinder of all members of the Class in a single action is impracticable.

46

Case 2:09-md-02047-EEF-MBN Document 22287-10 Filed 12/09/19 Page 502 of 647
Case 1:Case 2:09-md-02047-EEF-MBN Document 27 Filed 01/04/09 Page 19 of Page 450 of
595

230.    There are numerous common questions of law and fact that predominate over any questions affecting only individual members of the Class.  Among these common questions of law and fact are the following:

      a.          whether Defendants' drywall products that release sulfide and other noxious gases are defective and/or unfit for their intended purpose;

      b.          whether Defendants tortiously manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall products;

      c.          whether Plaintiffs and Class Members are entitled to recover compensatory, exemplary, incidental, consequential, and/or other damages as a result of Defendants' unlawful and tortious conduct;

      d.          whether Plaintiffs and Class Members are entitled to recover injunctive and/or equitable relief as a result of Defendants' unlawful and tortious conduct; and

      e.          whether Plaintiffs and Class Members are entitled to proceed against Defendants under a market share alternative theory of liability.

231.    The legal claims of Plaintiffs are typical of the legal claims of other Class Members.  Plaintiffs have the same legal interests and need for legal remedies as other Class Members.

232.    The Plaintiffs and each member of the Class have defective and unfit drywall in their homes, residences, or other structures.  Due to the drywall in Plaintiffs' and Class Members' homes, residences, or other structures, Plaintiffs and Class Members suffered damages and the need for injunctive and equitable relief, as set forth herein.

47

Case 2:09-md-02047-EEF-MBN Document 22397-40 Filed 12/09/19 Page 503 of 647
Case 1:Case 2:09-md-02047-EEF-MBN Document 22397-40 Filed 12/09/19 Page 451 of
595

233.     Plaintiffs are adequate representatives of the Class and, together with their legal counsel, will fairly and adequately protect the interests of the Class.  Plaintiffs have no conflict with the Class and are committed to the vigorous prosecution of this action.

234.     The undersigned counsel are competent counsel experienced in class action litigation, mass torts, and litigation involving defective and harmful products.  Counsel will fairly and adequately protect the interests of the class.

235.     The various claims asserted in this action are certifiable under the provisions of Federal Rules of Civil Procedure 23(b)(1) because prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

236.     The claims for injunctive relief in this case are certifiable under Fed. R. Civ. P. 23(b)(2).  Defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole.

237.     A class action is superior to other methods of dispute resolution in this case.  The Class members have an interest in class adjudication rather than individual adjudication because of their overlapping rights.  It is highly desirable to concentrate the resolution of these claims in this single forum because it would be difficult and highly unlikely that the affected Class members would protect their rights on their own without this class action case.  Management of

the class will be efficient and far superior to the management of individual lawsuits.
Accordingly, Plaintiffs' legal claims are properly certified pursuant to Rule 23(b)(3).

238.    The issues common to the class members' claims, some of which are identified above, are alternatively certifiable pursuant to Fed. R. Civ. P. 23(c)(4), as resolution of these issues would materially advance the litigation, and class resolution of these issues is superior to repeated litigation of these issues in separate trials.

239.    Defendants have by their conduct concealed their tortious conduct and their identities and as such the statute of limitations and prescription should not run on the claims of Plaintiffs and Class Members.

## COUNT I
## NEGLIGENCE
### (Against All Defendants)

240.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

241.    Defendants owed a duty to Plaintiffs and Class Members to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, i) marketing, and/or j) selling this drywall, including a duty to adequately warn of their failure to do the same.

242.    Defendants knew or should have known that their wrongful acts and omissions would result in harm and damages in the manner set forth herein.

243.    Defendants breached their duty to exercise reasonable care in the designing, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, and/or selling this drywall.

244.    Defendants likewise breached their duties to Plaintiffs and Class Members by failing to warn about the defective nature of the drywall.  Defendants, through the exercise of

reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the property and bodies of Plaintiffs and Class Members.

245. Defendants breached their duty to exercise reasonable care to timely remove and/or recall from the market and/or otherwise prevent the continued contact of Plaintiffs and Class Members with the drywall, upon leaning it had been sold in an unreasonably dangerous condition.

246. Given the defect in the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm, damages and/or personal injuries to Plaintiffs and Class Members.

247. As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members were harmed and have incurred damages and/or personal injuries as described herein.

## COUNT II
## NEGLIGENCE PER SE
### (Against All Defendants)

248. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

249. Defendants owed statutory duties to Plaintiffs and Class Members to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, i) marketing, and/or j) selling this drywall.

250. Defendants breached their statutory duties to the Plaintiffs and Class Members by failing to exercise reasonable care in a) designing, b) manufacturing, c) exporting, d) importing,

Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 506 of 647
Case 1:Case 2:09-md-02047-EEF-MBN Document 27 Filed 01/08/09 Page 9 of 454 of
595

e) distributing, f) delivering, g) supplying, h) inspecting, i) marketing, and/or j) selling this drywall.

251. Defendants likewise breached their statutory duties, including but not limited to those imposed under the International Building Code ("IBC") and other State and local Building Codes, to Plaintiffs and Class Members by failing to warn about the defective nature of the drywall. For instance, it is specifically alleged that Defendants furnished the drywall in violation of ASTMC C 1396/C 1396M-069, and its predecessor(s). Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the property and bodies of Plaintiffs and Class Members.

252. Given the defect in the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm, damages and/or personal injuries to Plaintiffs and Class Members.

253. As a direct and proximate cause of Defendants' acts and omissions, Plaintiffs and Class Members were harmed and have incurred damages and/or personal injuries as described herein.

## COUNT III
## BREACH OF EXPRESS AND/OR IMPLIED WARRANTIES
### (All Defendants)

254. Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

255. Defendants and/or their agents were in privity with Plaintiffs and Class Members and/or Plaintiffs and Class Members were foreseeable third party beneficiaries of any warranty.

256. At the times Defendants utilized, supplied, inspected, and/or sold this drywall for use in structures owned by Plaintiffs and Class Members, Defendants knew, or it was reasonably foreseeable, that the drywall would be installed in structures owned by Plaintiffs and Class

Members for use as a building material, and expressly or impliedly warranted the product to be fit for that use.

257.     Defendants placed their drywall products into the stream of commerce in a defective condition and these products were expected to, and did, reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

258.     The drywall was defective and not merchantable because it was unfit for the uses intended or reasonably foreseeable by Defendants; to wit, the installation of the drywall in structures owned by Plaintiffs and Class Members for use as a building material, because it contained defects as set forth herein.

259.     The Defendants breached their warranty because the drywall was not fit and safe for the particular purposes for which the goods were required (to be installed in structures owned by Plaintiffs and Class Members as a building material) due to the defects set forth herein.

260.     Defendants had reasonable and adequate notice of the Plaintiffs' and the Class Members' claims for breach of warranty and failed to cure.

261.     As a direct and proximate cause of Defendants' breach of warranties, Plaintiffs and Class Members have incurred harm and damages and/or personal injuries as described herein.

## COUNT IV
### PRIVATE NUISANCE
### (Against All Defendants)

262.      Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

263.     The Defendants' tortious or wrongful acts or omissions have caused sulfide gas and/or other chemical leaching into structures owned by Plaintiffs and Class Members which has

Case 2:09-md-02047-EEF-MBN Document 23297-10 Filed 12/08/19 Page 508 of 647
Case 1:Case 2:09-md-02047-EEF-MBN Document 27 Document Filed 01/19/09 Page 13 of Page 456 of
595

unreasonably interfered, and continues to interfere, with the Plaintiffs' and Class Members' use and enjoyment of their properties and caused them harm and damage as discussed herein.

264.    Defendants' interference has impaired the rights of Plaintiffs' and Class Members' health, comfort, safety, free use of their property, and/or peaceful enjoyment of their property.

265.    Defendants' invasions were intentional and unreasonable, and/or unintentional but otherwise negligent or reckless.

266.    The interference with Plaintiffs' and Class Members' use of their property caused by Defendants is substantial and is ongoing.

267.    Defendants' private nuisance was the direct, proximate, and foreseeable cause of Plaintiffs' and Class Members' damages, injuries, harm, loss, and increased risk of harm, which they suffered and will continue to suffer.

268.    As a direct and proximate cause of Defendants' creation of a private nuisance, Plaintiffs and Class Members have incurred harm and damages and/or personal injuries as described herein.

## COUNT V
## NEGLIGENT DISCHARGE OF A CORROSIVE SUBSTANCE
### (All Defendants)

269.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

270.    Defendants had actual or constructive knowledge of the extremely corrosive and dangerous propensities of the drywall at issue in this litigation.

271.    Notwithstanding their actual or constructive knowledge of the corrosive and dangerous propensities of the drywall, Defendants nevertheless designed, manufactured, imported, distributed, delivered, supplied, marketed, inspected, installed, or sold the drywall for use in the homes or other structures owned by Plaintiffs and class members.

Case 2:09-md-02047-EEF-MBN Document 22297-40 Filed 12/08/19 Page 509 of 647
Case 1:Case 2:09-md-02047-EEF-JCW Document 27 Document 666-1 Filed 12/09/09 Page 49 of Page 457 of
595

272.   By causing the sale, distribution, delivery, and/or supply of the drywall under these circumstances, Defendants breached their duty to exercise reasonable care and created a foreseeable zone of risk of injury to Plaintiffs and class members.

273.   Defendants likewise breached their duties to Plaintiffs and Class Members by failing to warn about the corrosive and dangerous propensities of the drywall.  Defendants, through the exercise of reasonable care, knew or should have known the nature of the defective drywall and the adverse effects that it could have on the property and bodies of Plaintiffs and Class Members.

274.   Plaintiffs and class members have suffered injuries by virtue of their exposure to the defective drywall at issue in this litigation.  Given the defect in the Defendants' drywall, Defendants knew or should have known that their product could, and would, cause harm, damages and/or personal injuries to Plaintiffs and Class Members.

275.   As a direct and proximate result of Defendants' acts and omissions, Plaintiffs and Class Members were harmed and have incurred damages and/or personal injuries as described herein.  The injuries sustained by Plaintiffs and Class Members are within the foreseeable zone of risk created by Defendants.

**COUNT VI**
**UNJUST ENRICHMENT**
**(All Defendants)**

276.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

277.   Defendants received money as a result of Plaintiffs' and Class Members' purchases of Defendants' defective drywall, or purchases of structures containing this drywall, either directly or through an agent, and Defendants wrongfully accepted and retained these benefits to the detriment of Plaintiffs and Class Members.

278.     Defendants' acceptance and retention of these benefits under the circumstances make it inequitable and unjust for Defendants to retain the benefit without payment of the value to the Plaintiffs and the Class Members.

279.     Defendants, by the deliberate and tortious conduct complained of herein, have been unjustly enriched in a manner which warrants restitution.

**COUNT VII**
**VIOLATION OF CONSUMER PROTECTION ACTS**
**(All Defendants)**

280.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

281.     This is an action for relief under the various Consumer Protection Acts of the jurisdictions in which affected properties are present.  *See* L.SA-R.S. 51:1401, *et seq.* (Louisiana Unfair Trade Practices and Consumer Protection Law); Ala. Code 1975 § 8-19-1, *et seq.* (Alabama Deceptive Trade Practices Act); G.S. § 75-1.1, *et seq.* (North Carolina Consumer Protection Act); F.S. § 501.201, *et seq.* (Florida Deceptive and Unfair Trade Practices Act); Va. Code. Ann. § 59.1-196, *et seq.* (Virginia Consumer Protection Act); Tex. Bus. Com. Code Ann. § 17.41, *et seq.* (Texas Deceptive Trade Practices-Consumer Protection Act); Miss. Code Ann. § 75-24-1, *et seq.* (Mississippi Consumer Protection Act).

282.     The Defendants' acts and omissions as well as their failure to use reasonable care in this matter as alleged in this complaint, including but not limited to, the knowing misrepresentation or failure to disclose the source, affiliation, origin, characteristics, ingredients, standards and quality of defective drywall constitute violation of the aforementioned provisions of the Consumer Protection Acts of the Relevant States.

283.     Plaintiffs and Class Members have suffered actual damages as a result of Defendants' violation of these Consumer Protection Acts and are entitled to relief.

55

284.     As a direct and proximate cause of Defendants' violations of the Consumer Protection Acts of the Relevant States, Plaintiffs and Class Members have incurred harm and damages as described herein.

## COUNT VIII
### EQUITABLE AND INJUNCTIVE RELIEF AND MEDICAL MONITORING
### (All Defendants)

285.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

286.     Plaintiffs and the Class Members are without adequate remedy at law, rendering injunctive and other equitable relief appropriate.

287.     Plaintiffs and the Class Members will suffer irreparable harm if the Court does not render the injunctive relief and medical monitoring relief set forth herein, and if defendants are not ordered to recall, buy back, rescind, and/or repair the structures owned by Plaintiffs and Class Members.

288.     Plaintiffs, on behalf of themselves and all others similarly situated, demand injunctive and equitable relief and further, that defendants be ordered to: (1)  to buy back or rescind the contracts for Plaintiffs' and Class Members' homes or other structures, or  in the alternative, remedy, repair and/or replace the drywall in such structures upon proof by the defendants of the feasibility of such remedy or repair; (2) cease and desist from misrepresenting to the Class and the general public that there is no defect in, or danger associated with, the drywall; (3) institute, at their own cost, a public awareness campaign to alert the Class and general public of the defect and dangers associated with the drywall; and (4) create, fund, and support a medical monitoring program.

289.     Until Defendants' defective drywall has been removed, Defendants should provide continued environmental and air monitoring in the structures owned by Plaintiffs and Class Members.

290.      Plaintiffs and Class Members have been exposed to greater than normal background levels of sulfides and other hazardous chemicals as a result of exposures to Defendants' defective and unfit drywall and have suffered personal injuries as a result.

291.     The sulfides and other noxious gases which have been released from Defendants drywall and to which Plaintiffs and Class Members have been exposed are proven hazardous, dangerous, or toxic substances.

292.     Plaintiffs' and Class Members' exposures were caused by the Defendant's negligent or otherwise tortious conduct.

293.     Plaintiffs' and Class Members' exposure may lead to serious health problems, diseases, and medical conditions that may be prevented by timely medical diagnosis and treatment.

294.     The method and means for diagnosing the Plaintiffs' and Class Members' potential medical problems are well accepted in the medical and scientific community and will be of great benefit to the Plaintiffs and Class Members by preventing or minimizing health problems that they may encounter as a result of the defective and unfit drywall.

295.     As a proximate result of their exposure to sulfide and other noxious gases from Defendants' defective and unfit drywall, Plaintiffs and Class Members have developed a significantly increased risk of contracting a serious latent disease.

296.      Monitoring procedures exist that make the early detection of any latent disease possible that are different from those normally recommended in the absence of the exposure.

57

297.    The prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

## DEMAND FOR JURY TRIAL

Plaintiffs, individually and on behalf of the Class Members, hereby demand a trial by jury as to all issues so triable as a matter of right.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs, on behalf of themselves and all others similarly situated demand upon Defendants jointly and severally for:

    a.   an order certifying the case as a class action;

    b.   an order appointing Plaintiffs as the Class Representatives of the Class;

    c.   an order appointing undersigned counsel and their firms as counsel for the Class;

    d.   compensatory and statutory damages;

    e.   punitive damages as allowed by law;

    f.   pre and post-judgment interest as allowed by law;

    g.   injunctive relief;

    h.   an award of attorneys' fees as allowed by law;

    i.   an award of taxable costs; and

    j.   any and all such further relief as this Court deems just and proper.

                  Respectfully submitted,

Dated: October 19, 2009            /s/ Russ M. Herman
                        Russ M. Herman, Esquire
                        Leonard A. Davis, Esquire
                        HERMAN, HERMAN, KATZ & COTLAR, LLP
                        820 O'Keefe Avenue
                        New Orleans, Louisiana 70113
                        Phone: (504) 581-4892

Fax: (504) 561-6024
*Plaintiffs' Liaison Counsel*
*MDL 2047*

**PLAINTIFFS' STEERING COMMITTEE**

Arnold Levin
Fred S. Longer
Matthew C. Gaughan
Levin, Fishbein, Sedran & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106
215-592-1500 (phone)
215-592-4663 (fax)
Alevin@lfsblaw.com
*Plaintiffs' Lead Counsel*
*MDL 2047*

Dawn M. Barrios
Barrios, Kingsdorf & Casteix, LLP
701 Poydras Street, Suite 3650
New Orleans, LA 70139
Phone: (504) 524-3300
Fax: (504) 524-3313
Barrios@bkc-law.com

Daniel E. Becnel, Jr.
Becnel Law Firm. LLC
P.O. Drawer H
106 W. Seventh Street
Reserve, LA 70084
Phone: (985) 536-1186
Fax: (985) 536-6445
dbecnel@becnellaw.com

Victor Manuel Diaz
Podhurst Orseck, P.A.
25 Flagler Street, 8th Floor
Miami, FL 33130
Phone: (305) 358-2800
Fax: (305) 358-2382
vdiaz@podhurst.com

Bruce William Steckler

Ervin A. Gonzalez
Colson, Hicks, Eidson, Colson
  Matthews, Martinez, Gonzales,
  Kalbac & Kane
255 Aragon Avenue, 2nd Floor
Coral Gables, FL 33134
Phone: (305) 476-7400
Fax: (305) 476-7444
Ervin@colson.com

Ben W. Gordon, Jr.
Levin, Papantonio, Thomas, Mitchell
  Echsner & Proctor, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502
Phone: (850) 435-7000
Fax: (850) 435-7020
bgordon@levinlaw.com

Hugh P. Lambert
Lambert and Nelson
701 Magazine Street
New Orleans, LA 70130
Phone: (504) 581-1750
Fax: (504) 529-2931
hlambert@lambertandnelson.com

James Robert Reeves

Baron & Budd, P.C.
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 75219
Phone: (214) 521-3605
Fax: (214) 520-1181
bsteckler@baronbudd.com

Gerald E. Meunier
Gainsburgh, Benjamin, David, Meunier
 & Warshauer, LLC
2800 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163-2800
Phone: (504) 522-2304
Fax: (504) 528-9973
gmeunier@gainsben.com

Jerrold Seith Parker
Parker, Waichman, Alonso LLP
27399 Riverview Center Blvd.
Bonita Springs, FL 34134
Phone: (239) 390-1000
Fax: (239) 390-0055
Jerry@yourlawyer.com

Lumpkin & Reeves
160 Main Street
Biloxi, MS 39530
Phone: (228) 374-5151
Fax: (228) 374-6630
jrr@lumpkinreeves.com

Christopher Seeger
Seeger Weiss, LLP
One William Street
New York, NY 10004
Phone: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com

Scott Wm. Weinstein
Morgan & Morgan
12800 University Drive, Suite 600
Ft. Meyers, FL 33907
Phone: (239) 433-6880
Fax: (239) 433-6836
sweinstein@forthepeople.com

## OF COUNSEL TO PLAINTIFFS' STEERING COMMITTEE

Richard S. Lewis
HAUSFELD LLP
1700 K Street, N.WSuite  650
Washington, DC 20006
Phone: (202) 540-7200
Fax:  (202) 540-7201
rlewis@hausfeldllp.com

Daniel K. Bryson
Lewis & Roberts
3700 Glenwood Avenue, Suite 410
Raleigh, NC 27612
Phone: (919) 981-0191
Fax: (919) 981-0431
dkb@lewis-roberts.com

Jeremy W. Alters
Alters, Boldt, Brown, Rash & Culmo, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
Phone: (305) 571-8550
Fax: (305) 571-8559
jeremy@abbrclaw.com

Richard Serpe, Esquire
LAW OFFICES OF RICHARD J. SERPE
Crown Center, Suite 310
580 East Main Street
Norfolk, VA 23510-2322
Phone: (757) 233-0009
Fax: (757) 233-0455
rserpe@serpefirm.com

## INDIVIDUAL PLAINTIFFS' COUNSEL

Case 2:09-cv-03047-EEF-MBN Document 2222-10 Filed 12/09/09 Page 516 of 647
Case 1:Case 2:09-md-02047-EEF-JCW Document 168-9 Filed 08/03/2009 Page 9 of Page 464 of
595

Russ M. Herman
Leonard A. Davis
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Avenue
New Orleans, Louisiana 70113
Phone: (504) 581-4892
Fax: (504) 561-6024

**SPECIAL COUNSEL TO PLAINTIFFS'
STEERING COMMITTEE**

Harry T. Lemmon
Attorney at Law
650 Poydras Street, Suite 2335
New Orleans, LA 70130
Phone: (504) 581-5644
Fax: (504) 581-2156
htlemmon@bellsouth.net

Edward F. Sherman
Tulane Law School
6329 Freret Street
New Orleans, LA 70118-5670
Phone: (504) 865-5979
esherman@tulane.edu

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served on Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 19th day of October, 2009.

/s/ Leonard A. Davis
Leonard A. Davis
Herman, Herman, Katz & Cotlar, LLP
820 O'Keefe Ave.
New Orleans, LA 70113
PH: (504) 581-4892
Fax: (504) 561-6024
ldavis@hhkc.com

# Tab #52



山东　泰安市工业统一发票

137090610125
00036993

Run & Fly Jinan New Materials Co. Ltd.

May 8, 2006

2006  5  8

济南润福来新材料有限公司

记帐联

Amount

dimension　unit　volume unit price

内板　340×1600×187　张　898　34.972　1493326　RMB 14,933.26

340×1600×187　张　9118　2170　2399866o　RMB 239,986.60

total amount: RMB 254,919.86

贰伍肆仟玖佰壹拾玖元捌角陆分　2549i986外

EXHIBIT
PID-50



# Tab #53

## Gin Lin

**From:** Heather Hahn
**Sent:** Friday, March 10, 2006 9:48 AM
**To:** 'Henry Chia'
**Cc:** TC Hui; Gin Lin
**Subject:** RE: Sheetrock

Dear Henry,

Noted with much thanks.

Regards
Heather

**From:** Henry Chia [mailto:henrydgls@yahoo.com.sg]
**Sent:** Thursday, March 09, 2006 7:25 PM
**To:** Heather Hahn
**Subject:** RE: Sheetrock

Dear Heather,

The full postal address of our Gypsum Board manufactureres as follows:

**HEADQUATERS**
**SHANDONG TAIHE DONGXIN COMPANY LTD**
**DAWENKOU, DAIYUE district of Taian**
**SHANDONG PROVINCE,**
**PEOPLES REPUBLIC OF CHINA**
**TELEPHONE : + 86 - (0538) 8811293 8811428**
**FAX : ( 0086-538) 8811250**
**PC 271026**
**WEBSITE : http://www.taihegroup.com**
**EMAIL : taihe@public.taptt.sd.cn**

**EXPORT OFFICE**
~~201-3~~ RUYIBEI BUILDING
**HUALONG ROAD JINAN**
**SHANDONG**
**PEOPLES REPUBLIC OF CHINA**

*Heather Hahn <HHahn@manchesterfurniture.com>* wrote:

> Dear Henry,
>
> My name is Heather Hahn and I work with Scott Brown at Manchester In Home    Could you please give
> us the factory address?  We need it to set the factory up in our computer system.
>
> Regards

3/10/2006

---

**From:** TC Hui
**Sent:** Thursday, March 09, 2006 10:18 AM
**To:** Heather Hahn
**Subject:** FW: Sheetrock

-----Original Message-----
**From:** Henry Chia [mailto:henrydgls@yahoo.com.sg]
**Sent:** Thursday, March 09, 2006 8:08 AM
**To:** orchid chen
**Cc:** Scott Brown; TC Hui; Kok Hui
**Subject:** Re: Sheetrock

Hi Orchid / Victor

My reply to your email is outline ( in blue print ) as follows :

Best Regards
Henry Chia

*orchid chen <runfly_jinan@yahoo.com.cn>* wrote:

Hi Henry,
I made a mistake in my last letter,the size should be1220*3660*12.7mm.
Now follows should be confirm:

Hi henry,
Now please confirm follows:

1,the pallet is gypsum board pallet.
Correction. The pallet must be made from wood ( repeat wooden pallet ) and **NOT** gypsum board pallet. **The cost of EACH wooden pallet is RMB 75.** Please ensure that the wooden pallets are strong enough to withstand the weight of the 92 sheets of finished products when stacked.

2,each pallet contains 46pieces
Correct. Each stack contains 46 sheets of gypsum board on a pallet. When two of these are binded together (one on top of another) by iron strips to make a total of 92 sheets per pallet.

3,price is USD3.78/PC(1220*3660*12.7mm).(FOBQingdao)
Correct. The price is USD3.78 per sheet ( 1220*3660*12.7 mm ) FOB Qingdao. The sheetrock must be tapered edge.

the total for 10,000 sheets is USD37800.
In order not to have any odd numbers in a pallet ( 10000 divided by 92 sheets equal 108.70 pallets ), the correct quantity should round up to 10120 sheets. ( 10120 divide by 92 sheets equal 110 pallets ) The total fund amount to be transfered is USD38253.60 and not USD37800.00

4,do you need proforma invoice?

(Yes. Besides the proforma invoice, we need Bill of Lading, packing list, fumigation

certificate and etc. for US custom clearance and banking purposes. Will let you know more details at a later date.

**PLEASE LET ME KNOW WHOM WE SHALL ISSUE THE PURCHASE ORDER TO ???**

5. Bank information:
Pay to: BANK OF CHINA SHANDALU SUB-BRANCH JINAN
Swift code:BKCHCNBJ51B
Address:127,Shanda Road,Jinan,Shandong ,China
Postcode:250013
Tel:+86 531 86429373,86991504
Fax:+86 531 86429373
Beneficiary:Run&Fly(Jinan) New Material Co.,ltd
A/C:419101562288093001

Best regards!

Orchid

*Henry Chia <henrydgls@yahoo.com.sg>* Ð µÀƒ°

Hi Orchid / Victor

Please see below message which is self explanatory. Kindly provide me the factory full account information so that we can do the fund transfer

Best Regards
Henry Chia

*Lim Kok Hui <limkokhui@barang.com.sg>* wrote:

Henry,

In view that this is going to be the first order and we don't want to mess up  the trial order qty will be 10,000 sheets of (1/2x4 x12). MIH will wire the fund into the factory account by this weekend or next Monday. Please provide all info needed to TC Hui for fund transfer. TC is the financial controller of Manchester Group

We have contacted Chris Ball and there is another ship leaving the port on 23 - 25 Mar. The exact date will confirm later. We have about 15days to produce 10,000 sheets and load up onto the ship bulk break
We can change the pallets to using the reject of sheetrock. There will be 2 stack on one pallet. Each stack is 46 pieces and whole pallet will be 92 pieces
We will be there on the 15 Mar and if we can see our products there it will be great. Please follow up.

Kokhui

3/10/2006

Page 4 of

♡ Meet your soulmate!
**Yahoo! Asia presents Meetic** - where millions of singles gather

ÑÅ»¢1GÂâ·ÑÓÊÏª°Ù·Ô°Ù·ÁÀ→»øÐÅ

Do you Yahoo!?
New and Improved Yahoo! Mail - 1GB free storage

Do you Yahoo!?
Yahoo! Movies - Search movie info and celeb profiles and photos

# Tab #54

## Manchester In Home

1515 W Green Drive
High Point, NC 27260 USA

### Invoice

| | |
|---|---|
| Invoice # : | 1859 |
| Date : | 4/7/2006 |

**BILL TO**
Stock Building Supply
PO Box 90088

Raleigh, NC 27675 USA

**SHIP TO**
Stock Building Supply

| PO # | 4268760-00 | Terms | | Net 60 | Due Date | 6/8/2006 |
|---|---|---|---|---|---|---|
| Container #L-RCK1180QINHOU | | ETD | 3/23/2006 | Salesman | House, House | Order | 1131 |

| Item # | Description | | Quantity | Unit Price | Extended |
|---|---|---|---|---|---|
| PWSR41212 | Prowall Sheetrock 4" x 12' x 1/2" | | 9936 | $4.51 | $44,811.36 |
| | | | 9936 | | $44,811.36 |

Notes: Consignee: Manchester In Home
Notify: Manchester In Home
Ship Via: Cosco
Ship: Landed
Legx: Manchester In Home
Comments: Customer request date
Container:
Customer Contact Phone: 336-882-0005.
USE EAST COAST SERVICES
COMMERCIAL INVOICE MUST

| | |
|---|---|
| Discount: | $0.00 |
| Freight: | $0.00 |
| Sales Taxes: | $0.00 |
| Total: | $44,811.36 |

*paid on 5/11/06*
*1kr.*

## Country of Origin China

| Term | FOB VESSEL |
|---|---|
| Description | Wooded Furn |
| Gross WT (kgs) | 421200 |
| Net WT (kgs) | 317440 |
| Port of Loading | QINGDAO |
| Port of Discharge | HOUSTON |

Payable only to:
GMAC Commercial Finance
PO Box 403058
Atlanta, GA 30384-3058

THANK YOU FOR YOUR BUSINESS.

STOCK-AVNER-000088

## RUN&FLY (JINAN) NEW MATERIAL CO.,LTD

3-201, Ruyibei BLD, Hualong Road, Jinan, Shandong, China   Zip Code:250100

# PACKING    LIST

| To:<br>MANCHESTER IN HOME | Date: 23/3/2006 | | Inv. No.: RF-MIH-20060301 | | |
|---|---|---|---|---|---|
| | PAYMENT:<br>BY T/T | | | | |
| | From:<br>QINGDAO PORT. CHINA | | To:<br>HOUSTON | | |
| Kinds of Packages<br>Description of Goods | Quantity | Gross Weight | Net weight | Volume | |
| NORMAL GYPSUM BOARD<br>1220MM*3660MM*12.7MM<br><br>PALLET PACKING | 9.936PIECES | 421.200KGS | 397.440KGS | 563CBM | |
| | 216 PALLETS<br>563CBM | | | | |
| TOTAL | NINE THOUSAND NINE HUNDRED AND THIRTY-SIX PIECES O... | | | | |

PO#4288780

STOCK-AVNER-000089

Carrier RICKMERS LINIE GmbH & Ce KG Hamburg   **Bill of Lading**   Multimodal Transport or Port to Port Shipment Page 2

# RICKMERS-LINIE

Shipper

**RUN&FLY (JINAN) NEW MATERIAL CO.,LTD**
3-201,RUYIBEI BLD,HUALONG ROAD,JINAN,SHANDONG
CHINA FAX: 0086-531-88030465 TEL: 0086-531-88030108

B/L No.   **RCKHBSQINHOU38**

Consignee

**STOCK BUILDING SUPPLY**
PO BOX 90068 RALEIGH NC 26275
TEL:919-431-1187 FAX:919-431-1190

Notify Address

**TMO GLOBAL LOGISTICS**
600 PETER JEFFERSON PARKWAY, SUITE 30
CHARLOTTESVILLE VA 22967   TEL 434-923-3375

Forwarding Agent:

Vessel   Voyage No   Reference

**RICKMERS TOKYO V 180**

Port of Loading:   Place of Receipt:

**QINGDAO PORT,CHINA**

Port of Discharge:   Place of Delivery:

**HOUSTON,TX**

Gross Weight   Measurement

| | | | |
|---|---|---|---|
| MANCHESTER IN HOME | NORMAL GYPSUM BOARD | 421200KGS | 903.491M3 |
| | PLYWOOD PALLET 46 PIECES IN ONE PALLET | | |
| | 216PALLETS IN ALL | | |
| | 9936 PIECES GYPSUM BOARD | | |

REMARK:1  10 CRATES OF GYPSUM BOARD COVER TORN SLIGHTLY
2   2 CARTES OF GYPSUM BOARD STRAPPING BINDS BROKEN

LINER TERM HOOK/HOOK

FREIGHT COLLECT

SAY TWO HUNDRED SIXTEEN PALLETS ONLY

Place and date of issue:

**QINGDAO**   **MAR.31 2006**

Number of original Bs/L
**HOUSTON**   **THREE**

STOCK-AVNER-000090

Stock Building Supply

3.7.08 Houston

| STORE: | Houston Port |
| VENDOR: | Manchester Homes, Inc. |
| | Gypsum Wallboard |
| TERMS: | |
| CONFIRM/INP: | |
| DATE: | 3/7/2008 |

| W.T. # | P.O. # | SBS SKU | DESCRIPTION | MH ITEM # | Crates | Total Pieces | u/m | COST | Cost Cost |
|--------|--------|---------|-------------|-----------|--------|--------------|-----|------|-----------|
| 1 | 4288780 | G1212 | GYPSUM 1/2 4X12 | | | 9,936 | PC | $5.41 | $53,753.76 |
| | | | | | | | MSF | $112.71 | |

Page 1

STOCK-AVNER-000091

# Tab #55

Scott

The time schedules are subjected to Jinan Run & Fly receiving 50% deposit ( USD120304.80 ) fund remittance by 27th May 2006 ( China Local Time ). It is also subjected to availability of 40 foot HQ containers provided by the shipping company.

10    containers x 504 sheets x USD4.09 per sheet = USD 20613.60
100 containers x 504 sheets x USD4.09 per sheet = USD 206136.00
330 steel pallets x USD42.00 per pallet          = USD 13860.00

**TOTAL AMOUNT:  USD240609.60 (two hundred forty thousand six hundred and nine and cents sixty only)**

**PRODUCTION & SHIPPING SCHEDULE:**

27th May 2006
Received 50% deposit ( USD120304.80 ) from MIH through bank confirmation.

28th May 2006
Commence production for 330 pieces of steel pallets
Commence production for 55440 pieces ( 110 containers ) of Prowall tapes

29th May 2006
Completed production 30 pieces of steel pallets and delivered to Taihe Factory
Continue production for balance 300 pieces steel pallets

1st June 2006
Completed production for 55440 pieces ( 10 containers ) of Prowall tapes9
Send Prowall tape samples to Scott ( MIH )
Commence production for 55440 sheets ( 110 containers ) of sheetrock

3rd June 2006
Completed production for 5040 sheets ( 10 containers ) of sheetrock
Continue production balance 50400 sheets ( 100 container ) of sheetrock
Packaging and loading 5040 sheets ( 10 containers ) sheetrock ( subjected to availability of 40ft HQ containers ) The 10 containers are then transported by road to Qingdao Port.

7th June 2006
Completed producing balance 300 pieces of steel pallets

3rd June 2006 to 10th June 2006
Producing, Packaging, loading into containers, and transporting the balance 50400 sheets of sheetrock to Qingdao Port ( subjected to availability of 40ft HQ containers )

One Hundred Twenty  Thousand Three Hundred Four DOLLARS and Eighty  CENTS ********************

**Run & Fly (Jinan) New Material Co.,**                              05/30/2006                          $120,304.80

Run & Fly (Jinan) New Material Co.,
3-201 Ruyibei Building
Hualong Road
Jinan Shandong,

0

**Run & Fly (Jinan) New Material Co.,**                                                               R1021

| 05/30/2006 | Total: | $120,304.80 |
|------------|--------|-------------|
| Voucher # | Amount | |
| Deposit 50%-052606 | $120,304.80 | |

**Run & Fly (Jinan) New Material Co.,**                                                               R1021

| 05/30/2006 | Total: | $120,304.80 |
|------------|--------|-------------|
| Voucher # | Amount | |
| Deposit 50%-052606 | $120,304.80 | |

# Tab #56

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL | : | MDL No. 2047 |
| PRODUCT LIABILITY LITIGATION | : | Section L |
| | : | |

| | | |
|---|---|---|
| This Document Relates to | : | JUDGE FALLON |
| ALL CASES | : | MAG. JUDGE WILKINSON |

## DISTRIBUTOR PROFILE FORM

All Defendant Drywall Distributors must complete and submit this Defendant Distributors' Profile Form. Additionally, each Defendant Drywall Distributor must sign and date Exhibit A to the Defendant Distributors' Profile Form for each property owned, rented or occupied by persons who are named Plaintiffs in suits pending in the MDL. The term "Chinese Drywall or Wallboard" encompasses all wallboard of Chinese origin or manufacture without reference to whether the particular wall board has been found to be defective. If additional knowledge becomes known after completion, this Defendant Distributors' Profile Form must be supplemented. If additional space is needed to answer any questions or complete your responses, additional pages may be attached. The questions contained within this Profile Form are non-objectionable and shall be answered without objection. By answering this Profile Form, you are not waiving the attorney work product and/or attorney client privileges. Similarly, by disclosing the identity of consultants, such consultants may remain non-testifying experts and are subject to all protections afforded by law. Please print legibly or type your responses in English.

## I.    IDENTIFICATION AND CONTACT INFORMATION

A.    Distributor's Name:  Stock Building Supply of Florida, Inc. n/k/a Stock Building Supply of Florida, LLC.

B.    Distributor's Address:  Stock Building Supply of Florida, LLC's current mailing address is 8020 Arco Corporate Drive, Raleigh, NC  27617

C.    Website: None

D.    Headquarters if Foreign: N/A

E.    Address of USA Headquarters:  Stock Building Supply of Florida, LLC is currently registered with the Florida Secretary of State's Office, but it ceased active business operations anywhere in Florida before the end of the third quarter of 2009.  To the extent Stock Building Supply of Florida, LLC has current U.S. headquarters, they exist at 8020 Arco Corporate Drive, Raleigh, NC  27617.

F.    Name of supervisor at USA Headquarters: None

G.    Principal Place of Business in USA:  Stock Building Supply of Florida, LLC ceased active business operations anywhere in Florida before the end of the third quarter of 2009.  To the extent it has a current principal place of business, it exists at 8020 Arco Corporate Drive, Raleigh, NC  27617.

H.  Has Distributor operated under any other names from 2001 to 2009? If so, please list and explain for each different locale. <u>Stock Building Supply of Florida, Inc. is now known as Stock Building Supply of Florida, LLC. Stock Building Supply of Florida, Inc. was previously known as McGinnis Lumber Company at Plant City.</u>

I.  Did Distributor also install Chinese Drywall? If so, describe involvement as installer. <u>No.</u>

## II.  COUNSEL INFORMATION OF DEFENDANT DISTRIBUTOR

A.  Name: <u>A. Todd Brown, Hunton & Williams LLP</u>
B.  Address: <u>Bank of America Plaza, 101 South Tryon Street, Suite 3500, Charlotte, North Carolina 28280</u>
C.  Phone Number: <u>704-378-4727</u>
D.  Fax Number: <u>704-378-4890</u>
E.  E-Mail: <u>tbrown@hunton.com</u>

## III.  DISTRIBUTOR'S PURCHASE OF CHINESE DRYWALL

For each purchase of Chinese Drywall between 2001 and 2009, please describe all sources from which Distributor purchased Chinese drywall, including manufacturers, exporters, importers, other distributors, sales agents, and/or sales brokers. Attach additional sheets as necessary.

A.  Source: <u>Stock Building Supply of Florida, Inc. (and Stock Building Supply of Florida, LLC) did not purchase Chinese drywall. Rather, during 2006, the global sourcing department of Stock Building Supply, Inc. n/k/a Stock Building Supply, LLC in Raleigh, NC, purchased and received Chinese manufactured drywall from three sources: Guardian Building Products Distribution, Inc., Manchester Holdings, Inc. d/b/a Manchester In-Home, and North Pacific Group, Inc. Stock Building Supply, Inc. arranged for Chinese drywall to be shipped to the lumberyards of Stock Building Supply of Florida, Inc. The names and addresses of the entities from whom Stock Building Supply, Inc. purchased Chinese manufactured drywall in 2006 are as follows:</u>

Guardian Building Products Distribution, Inc.
Attn: Duane H. Faulkner, President
979 Batesville Road
Greer, South Carolina 29651

Guardian Building Products Distribution, Inc.
Attn: CT Corporation System
Registered Agent in SC
75 Beattie Place
Greenville, South Carolina 29601

Manchester Holdings, Inc.
 d/b/a Manchester In-home
c/o President
1515 West Green Drive
High Point, NC 27260

Manchester Holdings, Inc. d/b/a Manchester In-home
Mr. Patrick Meisky
Registered Agent
Manchester Holdings, Inc.
1515 West Green Drive
High Point, NC 27260

North Pacific Group, Inc.      North Pacific Group, Inc.
Southern Division         Portland Headquarters
797 Industrial Park Dr.       10200 SW Greenburg Rd.
Waynesboro, Mississippi 39367  Portland, Oregon 97223

    1.    Name of Chinese Drywall Manufacturer, if known: Stock Building Supply of Florida, Inc. (and Stock Building Supply of Florida, LLC) did not purchase Chinese drywall. Upon information and belief, Guardian and Manchester sourced their Chinese drywall from manufacturers known as Baier Building Materials Co., Ltd or as Taihe (the latter also may be known as Shandong Taihe Dong-xin Co. Ltd., Taishan Gypsum Co. Ltd., or Taian Taishan Plasterboard Co., Ltd.). The identity of the entity from which North Pacific obtained Chinese drywall is presently unknown.

    2.    Address of Chinese Drywall Manufacturer, if known: Stock Building Supply of Florida, Inc. lacks knowledge of the addresses of the manufacturers of the Chinese manufactured drywall that it received.

    3.    Name of Chinese Drywall Product, if known: Unknown

    4.    Dates of purchase(s): Stock Building Supply of Florida, Inc. (and Stock Building Supply of Florida, LLC) did not purchase Chinese drywall. Upon information and belief, Stock Building Supply, Inc. purchased Chinese manufactured drywall from Guardian, Manchester, and/or North Pacific during 2006.

    5.    Total Volume of received Chinese Drywall product: Upon information and belief, Stock Building Supply, Inc. received approximately 56,016 net sheets from Manchester; 17,643 net sheets from Guardian; and 952 net sheets from North Pacific. Upon information and belief, Stock Building Supply, Inc. shipped to the Florida lumberyards of Stock Building Supply of Florida, Inc. approximately 19 net truck loads of Chinese drywall from Guardian and 106 net truck loads of Chinese drywall from Manchester.

    6.    Identify any markings on the Chinese Drywall product (e.g., lot number, batch number, serial number, color markings, UPC codes, etc.): Upon information and belief, Stock Building Supply of Florida, Inc. n/k/a Stock Building Supply of Florida, LLC, Stock Building Supply, Inc. n/k/a Stock Building Supply, LLC, and/or their counsel may have obtained knowledge that the end tape on the Manchester drywall contained the word "ProWall" and that the end tape on Guardian drywall contained phrase "Taihe Gypsum ½" x 4' x 12' TE Standard Board" or "Gypsum Wallboard ½" x 4' x 12' TE Standard, Meets or Exceeds ASTM C36."

    7.    List all trademarks of the product, if known: Unknown

    8.    The name and address of any importer, exporter, purchasing agent, or sales broker involved or referenced in any way with respect to your purchases of Chinese Drywall: Stock Building Supply of Florida, Inc. (and Stock Building Supply of Florida, LLC) did not purchase Chinese drywall. Upon information and belief, Guardian and Manchester served as the

purchasing agent and/or sales broker for Stock Building Supply, Inc.'s purchases of Chinese drywall. Upon information and belief, North Pacific was a U.S. building materials distributor from which Stock Building Supply, Inc. purchased drywall without knowing whether the drywall was manufactured domestically or in China.

9.    If known, prior to your receipt of or taking title to the Chinese Drywall, if any of your Chinese drywall was stored at any time by or for you at any location, identify the following: Unknown to Stock Building Supply of Florida, Inc. n/k/a Stock Building Supply of Florida, LLC.

Name of entity providing storage: _____

Address of entity providing storage: _____

Dates product was stored:

_____/_____/_____ (Month / Day / Year) to _____/_____/_____ (Month / Day / Year)

Quantity of product stored: _____

Price paid for storage: _____

Name of contact person at storage facility: _____

Phone number: _____

Email address: _____

List any complaints made or received regarding storage of the product: _____

## IV.    DISTRIBUTOR'S ABILITY TO TRACK SHIPMENTS

Please state whether you are able to track the distribution of Chinese drywall? If yes, provide names and/or entities of those to whom you supplied Chinese drywall. If you cannot track the distribution of Chinese drywall, please provide a description of your distribution process, including a description of database accessibility of this information, and the name and address of the person or persons with knowledge of the same: Stock Building Supply of Florida, Inc. (and Stock Building Supply of Florida, LLC) did not purchase Chinese drywall. Upon information and belief, upon arrival of the Chinese drywall, which was obtained from Guardian and Manchester, at ports in the United States, Stock Building Supply, Inc.'s freight forwarders transferred the drywall by truck to various lumberyards in FL, NC, and TX, including lumberyards of Stock Building Supply of Florida, Inc. Upon information and belief, at the lumberyards, Chinese manufactured drywall was purchased, received, sold and distributed against the same commodity product code as domestically produced drywall. The Chinese product was thereby stored in the same location and intermingled with domestically produced drywall. As a result, Stock Building Supply of Florida, Inc. n/k/a Stock Building Supply of

Florida, LLC is unable to track or identify to which customers or jobsites Chinese manufactured drywall was shipped. Pat Managan of Stock Building Supply, LLC has knowledge of the distribution process, and his address is the same as the corporate headquarters.

## V. INSURANCE

A.   Identify all policies of insurance, including all CGL, Product Liability, Builder's Risk, D&O and Excess insurance policies relating to claims.[1]

For each policy, identify the following:

1.   Insurer: Liberty Mutual Fire Insurance Company
     Dates policy in effect: 08 / 01 / 2005 to 08 / 01 / 2006
     Policy Number: RG2-C51-004344-035
     Type of Policy: CGL-Primary
     Insurance Agent: Willis of Maryland, Inc.
     Policy Coverage Limits:      PI / PD Liability $2,000,000 (each occurrence)
                                  General Aggregate Limit $4,000,000

2.   Insurer: Liberty Mutual Fire Insurance Company
     Dates policy in effect: 08 / 01 / 2006 to 08 / 01 / 2007
     Policy Number: RG2-C51-004344-036
     Type of Policy: CGL- Primary
     Insurance Agent: Willis of Maryland, Inc.
     Policy Coverage Limits:      PI / PD Liability $2,000,000 (each occurrence)
                                  General Aggregate Limit $5,000,000

3.   Insurer: Liberty Mutual Fire Insurance Company
     Dates policy in effect: 08 / 01 / 2007 to 08 / 01 / 2008
     Policy Number: TB2-C51-004344-037
     Type of Policy: CGL- Primary
     Insurance Agent: Willis of Maryland, Inc.
     Policy Coverage Limits:      Each Occurrence Limit $2,000,000
                                  General Aggregate Limit $5,000,000

4.   Insurer: Granite State Insurance Company
     Dates policy in effect: 08 / 01 / 2008 to 08 / 01 / 2009
     Policy Number: GL 187-18-48
     Type of Policy: CGL-Primary
     Insurance Agent: Willis of Maryland, Inc.
     Policy Coverage Limits:      Each Occurrence Limit $2,000,000
                                  General Aggregate Limit $5,000,000

---

[1] Listing policies does not purport to represent coverage status.

5.   Insurer: National Union Fire Insurance Company
     Dates policy in effect: 08 / 01 / 2009 to 08 / 01 / 2010
     Policy Number: GL 0939569
     Type of Policy: CGL - Primary
     Insurance Agent: Willis of Maryland, Inc.
     Policy Coverage Limits:     Each Occurrence Limit $2,000,000
                                 General Aggregate Limit $5,000,000

6.   Insurer: ACE Europe
     Dates policy in effect: 08 / 01 / 2005 to 07 / 31 / 2006
     Policy No: 47UK202497
     Type of Policy: Excess - Public and Products Liability
     Insurance Agent: Willis UK
     Policy Coverage Limits: £10,000,000

7.   Insurer:       ACE Europe
     Dates:         08 / 01 / 2006 to 07 / 31 / 2007
     Policy No:     47UK202497
     Type of Policy: Excess - Public and Products Liability
     Insurance Agent: Willis UK
     Policy Coverage Limits: GBP10,000,000

8.   Insurer: Zurich Global Corporate UK
     Dates:  8 / 01 / 2007 to 07 / 31 / 2008
     Policy No: 7046052
     Type of Policy: Excess - Public/Pollution/Products Liability
     Insurance Agent: Willis UK
     Policy Coverage Limits: $20,000,000

9.   Insurer: Zurich Global Corporate UK
     Dates: 08 / 01 / 2008 to 08 / 01 / 2009
     Policy No: UMB3793022-00
     Type of Policy: Excess - Commercial Umbrella Liability Policy
     Insurance Agent: Willis UK
     Policy Coverage Limits:  $10,000,000

10.  Insurer: Zurich Global Corporate UK
     Dates: 08 / 01 / 2008 to 07 / 31 / 2009
     Policy No: 7046052
     Type of Policy: Excess - Public/Pollution/Products Liability
     Insurance Agent: Willis UK
     Policy Coverage Limits: $20,000,000

11. Insurer: Zurich Global Corporate UK
    Dates: 08 / 01 / 2009 to 08 / 01 / 2010
    Policy No: UMB3793022-01
    Type of Policy: Excess -Commercial Umbrella Liability Policy
    Insurance Agent: Willis UK
    Policy Coverage Limits: $10,000,000

12. Insurer: Zurich Global Corporate UK
    Dates: 08 / 01 / 2009 to 07 / 31 / 2010
    Policy No: 7046052
    Type of Policy: Excess - Public/Pollution/Products Liability
    Insurance Agent: Willis UK
    Policy Coverage Limits: $20,000,000

DPF-STOCK BUILDING SUPPLY OF FL-1-00007

## CERTIFICATION

I declare under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746 that all information provided in this Defendant Distributor's Profile Form is true and correct to the best of my knowledge, and that I have supplied all of the documents requested in this declaration, to the extent that such documents are in my possession, custody or control.

February 13, 2012
Date

Stock Building Supply of Florida, LLC
Entity

By: _Pat Managan_

Pat Managan

Its: _Authorized Agent_

# Tab #57

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | : MDL No. 2047<br>: Section L |
| | : |
| This Document Relates to<br>Case No. 09-4119 | : JUDGE FALLON<br>: MAG. JUDGE WILKINSON |

## DEFENDANT MANUFACTURERS' PROFILE FORM

All Defendant Drywall Manufacturers must complete and submit this Defendant Manufacturers' Profile Form. Each Defendant Drywall Manufacturer must complete and sign a Defendant Manufacturers' Profile Form for all shipments or deliveries of Chinese Drywall into, or for importation into, the US from 2001 through 2009. Each Defendant Drywall Manufacturer must complete and sign a separate Exhibit A for any individual named Plaintiff with an action pending in Federal Court. If additional knowledge becomes known after completion, this Defendant Manufacturers' Profile Form must be supplemented. If additional space is needed to answer any questions or complete your responses, additional pages may be attached. In addition, if any attachments or documents are provided in response to any question, please identify the specific question within this Defendant Manufacturers' Profile Form that relates to the specific attachment or document.

The questions contained within this Profile Form are non-objectionable and shall be answered without objection. By answering this Profile Form, you are not waiving the attorney work product and/or attorney client privileges. Similarly, by disclosing the identity of consultants, such consultants may remain non-testifying experts and are subject to all protections afforded by law. Please print legibly or type your responses in English.

I.     **CONTACT INFORMATION OF DEFENDANT MANUFACTURER COMPLETING THIS PROFILE FORM**

   A.     Manufacturer Name: Knauf Gips KG ("Knauf Gips")[1]

   B.     Address  Am Bahnof 7, 97346, Iphofen, Germany

   C.     Phone number  +49 9323 31-0

   D.     Email address info@mail.knauf.de

   E.     Web site  http://www.knauf.de

   F.     President or CEO  Klaus Koch

   G.     Headquarters if Foreign  Iphofen, Germany

   H.     Address of USA Headquarters  None

   I.     Name of supervisor at USA Headquarters  None

---

[1] Knauf Gips KG is responding to Defendant Manufacturers' Profile Form voluntarily and in the spirit of cooperation in these multidistrict proceedings but without waiving any of its rights to object, in these or in any other proceedings, to: (i) the sufficiency of process or the service of process upon it; (ii) the jurisdiction of this or any other court over it; and/or (iii) any discovery and that may be served upon it on any grounds including, without limitation, that such discovery violates the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters.

J.    Principal Place of Business in USA_None_____

K.    List of all offices or locations in USA where entity has done business at any time in 2001 through
      2009_None_____

L.    Name of Manager at each office or location identified in I(J) above_None_____

(If you have identified more than one entity in I(A) above separately answer I(B)-I(L) for each entity.)

## II.   COUNSEL INFORMATION OF DEFENDANT MANUFACTURER

A.    Name: Doug Sanders, Baker & McKenzie LLP; Don Hayden, Baker & McKenzie LLP

B.    Address: 130 E. Randolph Dr., One Prudential Plaza, Chicago IL 60657;

      Mellon Financial Center, 1111 Brickell Avenue, Suite 1700, Miami FL 33131

C.    Phone Number: +1 312 861-8075; +1 305 789-8966

D.    Fax Number: +1 312 698-2375; +1 305 789-8953

E.    E-Mail: douglas.b.sanders@bakernet.com; donald.j.hayden@bakernet.com

## III.   CHINESE DRYWALL PRODUCT IDENTIFICATION AND CHAIN OF DISTRIBUTION

1.    Product identification:    Knauf Gips has not manufactured Chinese Drywall and responds
                                 none or not applicable to all of the questions in Section III.

      Name of Manufacturer(s)' drywall product:

      Identify any markings on the drywall product (e.g. lot number, batch number, serial number, color
      markings, UPC codes, etc.):

      List all trademarks applicable to the product :

      Is the drywall that is the subject of this litigation known or referred to, either by the public or only
      internally within your company, by any other names, brand names, titles, or designations?  Provide
      a detailed list of all names, brand names, titles, and designations by which this drywall is known:

      Is the drywall that is the subject of this litigation manufactured in any other types or versions?
      Please describe such other types and how they may be identified:

      Is the drywall that is the subject of this litigation sold by any other party under its own name?  If so,
      provide a list of all parties selling your drywall under their names, and the brand names under which
      the drywall is sold:

2.    Shipment Information (identify the following for each shipment to, or for importation to, the United
      States):

      Exporter Name:          _____

      Address of Exporter:    _____

                              _____

                              _____

2

Date of Export: _____/____/_____ (Month / Day / Year)

Name of all ports through which shipment was in transit. _____

Name of final port where shipment was offloaded: _____

Date shipment was offloaded: _____/____/_____ (Month / Day / Year)

Amount of Drywall exported: _____

Name of shipper: _____

Address of shipper: _____

_____

_____

Mode of Shipment: _____

Name of vessel: _____

3.   Importer Information (identify the following for each importer):

Importer Name. _____

Address of Importer: _____

_____

_____

Date of Import: _____/____/_____ (Month / Day / Year)

Amount of Drywall imported: _____

4.   Distributor in USA:

To the extent you are aware of the distributor or drywall contractor/installer, for any shipments of your product to the USA, provide such information:

5.   Are you are of any brokers or intermediary agents involved in the supply chain who purchased or took possession of your product, either directly from you or from a successor in distribution? .

6.   If any of your Chinese drywall was stored at any time by or for you at any location, identify the following:

Name of entity providing storage. _____

Address of entity providing storage. _____

_____

_____

3

Dates product was stored:

_____ / _____ (Month / Day / Year) to _____ / ____ / _____ (Month / Day / Year)

Quantity of product stored: _____

Price paid for storage: _____

Name of contact person at storage facility: _____

Phone number: _____

Email address: _____

List any complaints made or received regarding storage of the product:

_____

7.     Describe all agreements existing between the manufacturer and: exporters; importers; shippers; and distributors, relating to each shipment of Chinese drywall to, or for importation to, the United States.

8.     For all shipments or deliveries of Chinese Drywall into, or for importation into, the US from 2001-2009, please indicate whether you provided any of the following:

     a.      Express warranties:_____

     b.      Product specifications:_____

     c.      Product information and/or instructions for storage or use:_____

IV.    **INSURANCE**

    A.     Identify all policies of insurance, including all CGL, Product Liability, Builder's Risk, D&O and Excess insurance policies relating to claims.

       1.     For each policy, identify the following:

          Insurer: _____

          Dates policy in effect: _____

          01/01/2009 (Month / Day / Year) to 12/31/2009 (Month / Day / Year)

          Policy Number: _____

          Type of Policy: _____

          Insurance Agent _____

          Policy Coverage Limits _____

          Produce a copy of the Declaration page, exclusions and policy of insurance.

    B.     Identify all claims you have made on any insurance policies relating to the manufacture or shipment of products identified in Section V above.

       1.     For each claim please provide the following:

4

Date: ___/___/_____ (Month / Day / Year)

Insurer: _____

Description of claim: _____

Insurer's response to claim: _____

If in litigation: _____

Caption of Case: _____

Name and address of attorneys involved: _____

_____

_____

Insurance carriers involved: _____

## CERTIFICATION

I declare under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746 that all information provided in this Defendant Manufacturers' Profile Form is true and correct to the best of my knowledge, and that I have supplied all of the documents requested in this declaration, to the extent that such documents are in my possession, custody or control.

_____        _Oliver Fröhlich_        _September 01, 2009_
Signature                         Print Name                Date

5

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 548 of 647
Case 2:11-cv-22408-MGC Document 27 Entered on FLSD Docket 08/13/2015 Page 496 of
595

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE MANUFACTURED DRYWALL        : MDL No. 2047
PRODUCTS LIABILITY LITIGATION              : Section L
                                           :
This Document Relates to                   : JUDGE FALLON
Case No. 09-4119                           : MAG. JUDGE WILKINSON

## DEFENDANT MANUFACTURERS' PROFILE FORM

All Defendant Drywall Manufacturers must complete and submit this Defendant Manufacturers' Profile Form. Each Defendant Drywall Manufacturer must complete and sign a Defendant Manufacturers' Profile Form for all shipments or deliveries of Chinese Drywall into, or for importation into, the US from 2001 through 2009. Each Defendant Drywall Manufacturer must complete and sign a separate Exhibit A for any individual named Plaintiff with an action pending in Federal Court. If additional knowledge becomes known after completion, this Defendant Manufacturers' Profile Form must be supplemented. If additional space is needed to answer any questions or complete your responses, additional pages may be attached. In addition, if any attachments or documents are provided in response to any question, please identify the specific question within this Defendant Manufacturers' Profile Form that relates to the specific attachment or document.

The questions contained within this Profile Form are non-objectionable and shall be answered without objection. By answering this Profile Form, you are not waiving the attorney work product and/or attorney client privileges. Similarly, by disclosing the identity of consultants, such consultants may remain non-testifying experts and are subject to all protections afforded by law. Please print legibly or type your responses in English.

I.   CONTACT INFORMATION OF DEFENDANT MANUFACTURER COMPLETING THIS
     PROFILE FORM

     A.   Manufacturer Name_Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT")[1]

     B.   Address North Yinhe Bridge, East Jingu Road, Beichen District, Tianjin, 300400, P.R. China

     C.   Phone number +86 22-2697-2777

     D.   Email address info@mail.knauff.com.cn

     E.   Web site N/A

     F.   President or CEO _David Gregory, Chief Executive Officer

     G.   Headquarters if Foreign_Tianjin, China

---

[1] Knauf Plasterboard (Tianjin) Co., Ltd. is responding to Defendant Manufacturers' Profile Form voluntarily and in the spirit of cooperation in these multidistrict proceedings but without waiving any of its rights to object, in these or in any other proceedings, to: (i) the sufficiency of process or the service of process upon it; (ii) the jurisdiction of this or any other court over it; and/or (iii) any discovery and that may be served upon it on any grounds including, without limitation, that such discovery violates the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters.

H.      Address of USA Headquarters: None

I.      Name of supervisor at USA Headquarters: None

J.      Principal Place of Business in USA: None

K.      List of all offices or locations in USA where entity has done business at any time in 2001 through 2009: None

L.      Name of Manager at each office or location identified in I(J) above: None

(If you have identified more than one entity in I(A) above separately answer I(B)-I(L) for each entity.)

## II.    COUNSEL INFORMATION OF DEFENDANT MANUFACTURER

A.      Name: Doug Sanders, Baker & McKenzie LLP; Don Hayden, Baker & McKenzie LLP

B.      Address: 130 E. Randolph Dr., One Prudential Plaza, Chicago IL 60657;

Mellon Financial Center, 1111 Brickell Avenue, Suite 1700, Miami FL 33131

C.      Phone Number: +1 312 861-8075; +1 305 789-8966

D.      Fax Number: +1 312 698-2375; +1 305 789-8953

E.      E-Mail: douglas.b.sanders@bakernet.com; donald.j.hayden@bakernet.com

## III.    CHINESE DRYWALL PRODUCT IDENTIFICATION AND CHAIN OF DISTRIBUTION

1.      Product Identification:

Name of Manufacturer(s)' drywall product:

Identify any markings on the drywall product (e.g. lot number, batch number, serial number, color markings, UPC codes, etc.): Knauf-Tianjin China-ASTM C36 [date code/time code]

List all trademarks applicable to the product: : "Knauf" is a registered trademark in China.

Is the drywall that is the subject of this litigation known or referred to, either by the public or only internally within your company, by any other names, brand names, titles, or designations? Provide a detailed list of all names, brand names, titles, and designations by which this drywall is known: _____ No.

Is the drywall that is the subject of this litigation manufactured in any other types or versions? Please describe such other types and how they may be identified: Standard drywall can be manufactured in different sizes, but all standard drywall for sale to U.S. was manufactured as 12.7mm x 1220mm x 3660mm.

Is the drywall that is the subject of this litigation sold by any other party under its own name? If so, provide a list of all parties selling your drywall under their name, and the brand names under which the drywall is sold: _____ No.

2.      Shipment Information (identify the following for each shipment to, or for importation to, the United States).

See the attached table which KPT incorporates herein as its response to Question No. 2 and Section III generally.

Exporter Name: _____

Address of Exporter: _____

Date of Export: ___/___/_____ (Month / Day / Year)

Name of all ports through which shipment was in transit: _____

Name of final port where shipment was offloaded: _____

Date shipment was offloaded: ___/___/_____ (Month / Day / Year)

Amount of Drywall exported: _____

Name of shipper: _____

Address of shipper: _____

_____

_____

Mode of Shipment: _____

Name of vessel: _____

3.  Importer Information (identify the following for each importer):

Importer Name: _____

Address of Importer: _____

_____

_____

Date of Import: ___/___/_____ (Month / Day / Year)

Amount of Drywall imported: _____

4.  Distributor in USA:

To the extent you are aware of the distributor or drywall contractor/installer, for any shipments of your product to the USA, provide such information: __KPT sold its products to three companies in the United States, Interior Exterior Supply, Rothchilt International and L&W Supply Company. KPT has learned that at least a portion of its drywall that was sold to Rothchilt International was sold to Banner Supply Company in Florida. KPT has no knowledge of the distribution chain of its plasterboard in the United States beyond that__

5.  Are you are of any brokers or intermediary agents involved in the supply chain who purchased or took possession of your product, either directly from you or from a successor in distribution? .

See attachment in response to Question No. 2. _____

6.  If any of your Chinese drywall was stored at any time by or for you at any location, identify the following:

Name of entity providing storage:   KPT stored drywall for a limited time period at its facility prior to shipment and then the drywall was transported to the ship where it was loaded immediately. KPT does not have any knowledge of

how its drywall is handled or stored in the regular course of business once the drywall is put on the ship at the port in China.

Address of entity providing storage: _____

_____

_____

Dates product was stored:

_____/____/____ (Month / Day / Year) to ____/____/____ (Month / Day / Year)

Quantity of product stored: _____

Price paid for storage: _____

Name of contact person at storage facility: _____

Phone number: _____

Email address: _____

List any complaints made or received regarding storage of the product:

_____

7. Describe all agreements existing between the manufacturer and: exporters; importers; shippers; and distributors, relating to each shipment of Chinese drywall to, or for importation to, the United States.

KPT has entered into agreements with three entities to sell plasterboard into the United States in 2005 and 2006. All of the agreements are single page agreements or purchase orders.

8. For all shipments or deliveries of Chinese Drywall into, or for importation into, the US from 2001-2009, please indicate whether you provided any of the following

a. Express warranties: None _____

b. Product specifications: Standard gypsum board; 12.7mm x 1220mm x 3660mm ___

c. Product information and/or instructions for storage or use: None _____

IV. **INSURANCE**

A. Identify all policies of insurance, including all CGL, Product Liability, Builder's Risk, D&O and Excess insurance policies relating to claims.

_____ KPT does not have insurance responsive to this request. _____

1. For each policy, identify the following:

Insurer: _____

Dates policy in effect:

_____/____/____ (Month / Day / Year) to ____/____/____ (Month / Day / Year)

Policy Number: _____

4

Type of Policy: _____

Insurance Agent _____

Policy Coverage Limits _____

Produce a copy of the Declaration page, exclusions and policy of insurance.

B.    Identify all claims you have made on any insurance policies relating to the manufacture or shipment of products identified in Section V above.

    1.    For each claim please provide the following:

        Date: _____/_____/_____ (Month / Day / Year)

        Insurer: _____

        Description of claim: _____

        Insurer's response to claim: _____

        If in litigation:

        Caption of Case: _____

        Name and address of attorneys involved: _____

        _____

        _____

        Insurance carriers involved: _____

        _____

## CERTIFICATION

    I declare under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746 that all information provided in this Defendant Manufacturers' Profile Form is true and correct to the best of my knowledge, and that I have supplied all of the documents requested in this declaration, to the extent that such documents are in my possession, custody or control.

_Mark Norris_ (signature)

_____      Mark Norris      _____ 2nd September 2009

Signature               Print Name             Date

| Purchaser | Purchaser Contact Information | Shipment Date | Volume (m2) | Ship | Port of Loading | Port of Delivery | Ship Arrival Date* | Other Export/Import Data |
|---|---|---|---|---|---|---|---|---|
| Interior Exterior Building Supply Co. | P.O. Box 4002, New Orleans, Louisiana, USA, 70178 | 8 December 2005 | 446,651 | Mistras | Tianjin | New Orleans | 2006-1-16 | J.W. Allen & Co. Inc. 200 Crofton Road, Box 34, Kenner LA, 70062 USA |
| | | 23 December 2005 | 637,631 | HBC Toronto | Tianjin | New Orleans | 2006-2-2 | J.W. Allen & Co. Inc. 200 Crofton Road, Box 54, Kenner LA, 70062 USA |
| | | 4 March 2006 | 748,760 | Dal Confidence | Tianjin | New Orleans | 2006-4-14 | J.W. Allen & Co. 200 Crofton Road, Box 34, Kenner LA, 70062 USA |
| | sub-total | | 1,833,045 | | | | | |
| L&W Corporation** | 125 S. Franklin St, Chicago, IL 60606, +1 312 606-4115 | 11 April 2006 | 800,995 | M.V. Good Immunity | Nanjing | Tampa | 2006-5-19 | N/A |
| | | 16 January 2006 | 23,558 | Jnjienberg Maersk | Xingang | Miami | February 2006 | La Suprema Enterprise, Inc. 20201 East Country Club Dr., Suite 501, Aventura, FL 33180 |
| | | 21 January 2006 | 33,757 | Ohenslinn Maersk | Xingang | Miami | February 2006 | La Suprema Enterprise, Inc. 20201 East Country Club Dr., Suite 501, Aventura, FL 33180 |
| | | 23 February 2006 | 84,592 | A.P. Moller | Xingang | Miami | March 2006 | La Suprema Enterprise, Inc. 20201 East Country Club Dr., Suite 501, Aventura, FL 33180 |
| | | 4 March 2006 | 112,323 | St. Meteor | Xingang | Miami | April 2006 | La Suprema Enterprise, Inc. 20201 East Country Club Dr., Suite 501, Aventura, FL 33180 |
| | | 9 March 2006 | 140,654 | E.R. Amsterdam | Xingang | Miami | April 2006 | La Suprema Enterprise, Inc. 20201 East Country Club Dr., Suite 501, Aventura, FL 33180 |
| | | 17 March 2006 | 140,654 | E.R. Felixstowe | Xingang | Miami | April 2006 | La Suprema Enterprise, Inc. 20201 East Country Club Dr., Suite 501, Aventura, FL 33180 |
| | | 24 March 2006 | 108,785 | Nedlloyd Drake | Xingang | Miami | May 2006 | La Suprema Enterprise, Inc. 20201 East Country Club Dr., Suite 501, Aventura, FL 33180 |
| | | 31 March 2006 | 108,785 | Nedlloyd Maersk | Xingang | Miami | May 2006 | La Suprema Enterprise, Inc. 20201 East Country Club Dr., Suite 501, Aventura, FL 33180 |
| | | 7 April 2006 | 168,785 | E.R. London | Xingang | Miami | May 2006 | La Suprema Enterprise, Inc. 20201 East Country Club Dr., Suite 501, Aventura, FL 33180 |
| | | 14 April 2006 | 126,588 | E.R. Amsterdam | Xingang | Miami | May 2006 | La Suprema Enterprise, Inc. 20201 East Country Club Dr., Suite 501, Aventura, FL 33180 |
| Rothchild International Limited | | 29 April 2006 | 98,458 | St. Illinois | Xingang | Miami | May 2006 | La Suprema Enterprise, Inc. 20201 East Country Club Dr., Suite 501, Aventura, FL 33180 |
| | | 28 April 2006 | 98,458 | Nedlloyd Drake | Xingang | Miami | May 2006 | La Suprema Enterprise, Inc. 20201 East Country Club Dr., Suite 501, Aventura, FL 33180 |
| | | 5 May 2006 | 98,458 | [sic] | Xingang | Miami | June 2006 | La Suprema Enterprise, Inc. 20201 East Country Club Dr., Suite 501, Aventura, FL 33180 |
| | | 11 May 2006 | 98,458 | E.R. London | Xingang | Miami | June 2006 | La Suprema Enterprise, Inc. 20201 East Country Club Dr., Suite 501, Aventura, FL 33180 |
| Knauf Plasterboard (Tianjin) Co. Ltd. | N-310 Chin Hsin Bldg, Annex, 96 Chung Shiao N. Rd. Sec. 2, Taipei Taiwan R.O.C. — 886 02 2522436 | 18 May 2006 | 98,458 | E.R. Amsterdam | Xingang | Miami | June 2006 | La Suprema Enterprise, Inc. 20201 East Country Club Dr., Suite 501, Aventura, FL 33180 |
| | | 23 May 2006 | 98,458 | E.R. Felixstowe | Xingang | Miami | June 2006 | La Suprema Enterprise, Inc. 20201 East Country Club Dr., Suite 501, Aventura, FL 33180 |
| | | 2 June 2006 | 112,523 | Nedlloyd Drake | Xiangang | Miami | July 2006 | La Suprema Enterprise, Inc. 20201 East Country Club Dr., Suite 501, Aventura, FL 33180 |
| | | 9 June 2006 | 112,523 | Nedlloyd Merator | Xiangang | Miami | July 2006 | La Suprema Enterprise, Inc. 20201 East Country Club Dr., Suite 501, Aventura, FL 33180 |

| Date | | Ship | Port | Port | Month | Consignee |
|---|---|---|---|---|---|---|
| 13 June 2006 | 28,131 | S.L. Charger | Xiangang | Miami | July 2006 | La Suprema Enterprise, Inc. 20201 East Country Club Dr., Suite 501, Aventura, FL 33180 |
| 13 June 2006 | 56,262 | S.L. Eufrance | Xiangang | Miami | July 2006 | La Suprema Enterprise, Inc. 20201 East Country Club Dr., Suite 501, Aventura, FL 33180 |
| 19 June 2006 | 84,392 | S.L. Meteor | Xiangang | Miami | July 2006 | La Suprema Enterprise, Inc. 20201 East Country Club Dr., Suite 501, Aventura, FL 33180 |
| 23 June 2006 | 56,262 | E.R. Felixstowe | Xiangang | Miami | July 2006 | La Suprema Enterprise, Inc. 20201 East Country Club Dr., Suite 501, Aventura, FL 33180 |
| 30 June 2006 | 140,654 | E.R. Felixstowe | Xiangang | Miami | August 2006 | La Suprema Enterprise, Inc. 20201 East Country Club Dr., Suite 501, Aventura, FL 33180 |
| 6 July 2006 | 140,654 | Nedlloyd Drake | Xiangang | Miami | August 2006 | La Suprema Enterprise, Inc. 20201 East Country Club Dr., Suite 501, Aventura, FL 33180 |
| 28 July 2006 | 135,938 | E.R. Amsterdam | Xiangang | Miami | September 2006 | La Suprema Enterprise, Inc. 20201 East Country Club Dr., Suite 501, Aventura, FL 33180 |
| 7 August 2006 | 141,271 | S.L. Lightning | Xiangang | Miami | September 2006 | La Suprema Enterprise, Inc. 20201 East Country Club Dr., Suite 501, Aventura, FL 33180 |
| 11 August 2006 | 84,392 | Nedlloyd Drake | Xiangang | Miami | September 2006 | La Suprema Enterprise, Inc. 20201 East Country Club Dr., Suite 501, Aventura, FL 33180 |
| 18 August 2006 | 140,654 | Nedlloyd Mercator | Xiangang | Miami | September 2006 | La Suprema Enterprise, Inc. 20201 East Country Club Dr., Suite 501, Aventura, FL 33180 |
| sub-total | 2,951,975 | | | | | |
| TOTAL | 5,286,635 | | | | | |

*Shipment/arrival dates for sales in Nashville are approximate. Nashville and La Suprema used DSL Star Express as shipper. KW could not track shipments directly to US once they left China port because records of China do not match completely with records of U.S. Customs. DSL Star Express may have changed ships. DSL Star Express address is: 8606 Ivan Trail Drive, TX 77241 USA.

** Based on information received from L&W Supply Corporation, as much as 50% of this shipment was destroyed in transit.

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 555 of 647
Case 2:09-md-02047-MCE Document 20 Entered on FLSD Docket 08/15/2015 Page 503 of
595

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | : MDL No. 2047<br>: Section L |
| | : |
| This Document Relates to | : JUDGE FALLON |
| Case Nos. 09-4119, 09-4117 | : MAG. JUDGE WILKINSON |

## DEFENDANT MANUFACTURERS' PROFILE FORM

All Defendant Drywall Manufacturers must complete and submit this Defendant Manufacturers' Profile Form. Each Defendant Drywall Manufacturer must complete and sign a Defendant Manufacturers' Profile Form for all shipments or deliveries of Chinese Drywall into, or for importation into, the US from 2001 through 2009. Each Defendant Drywall Manufacturer must complete and sign a separate Exhibit A for any individual named Plaintiff with an action pending in Federal Court. If additional knowledge becomes known after completion, this Defendant Manufacturers' Profile Form must be supplemented. If additional space is needed to answer any questions or complete your responses, additional pages may be attached. In addition, if any attachments or documents are provided in response to any question, please identify the specific question within this Defendant Manufacturers' Profile Form that relates to the specific attachment or document.

The questions contained within this Profile Form are non-objectionable and shall be answered without objection. By answering this Profile Form, you are not waiving the attorney work product and/or attorney client privileges. Similarly, by disclosing the identity of consultants, such consultants may remain non-testifying experts and are subject to all protections afforded by law. Please print legibly or type your responses in English.

I.   **CONTACT INFORMATION OF DEFENDANT MANUFACTURER COMPLETING THIS PROFILE FORM**

    A.   Manufacturer Name _Knauf Plasterboard (Wuhu) Co., Ltd. ("Knauf Wuhu")[1]_

    B.   Address _No. 2 Gangwan Road, Development Zone, Wuhu, Anhui 241009 P.R. China_

    C.   Phone number _+86 0553-5842653_

    D.   Email address _info@mail.knauf.com.cn_

    E.   Web site _http://www.knauf.com.cn_

    F.   President or CEO _David Gregory, Chief Executive Officer_

    G.   Headquarters if Foreign _Wuhu, Anhui, P.R. China_

    H.   Address of USA Headquarters _None_

    I.   Name of supervisor at USA Headquarters _None_

    J.   Principal Place of Business in USA _None_

---

[1] Plasterboard (Wuhu) Co., Ltd. ("Knauf Wuhu") is responding to Defendant Manufacturers' Profile Form voluntarily and in the spirit of cooperation in these multidistrict proceedings but without waiving any of its rights to object, in these or in any other proceedings, to: (i) the sufficiency of process or the service of process upon it; (ii) the jurisdiction of this or any other court over it; and/or (iii) any discovery and that may be served upon it on any grounds including, without limitation, that such discovery violates the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters.

K.    List of all offices or locations in USA where entity has done business at any time in 2001 through 2009: None

L.    Name of Manager at each office or location identified in I(J) above: None

(If you have identified more than one entity in I(A) above separately answer I(B)-I(L) for each entity.)

II.    **COUNSEL INFORMATION OF DEFENDANT MANUFACTURER**

A.    Name: Doug Sanders, Baker & McKenzie LLP; Don Hayden, Baker & McKenzie LLP

B.    Address: 130 E. Randolph Dr., One Prudential Plaza, Chicago IL 60657;

Mellon Financial Center, 1111 Brickell Avenue, Suite 1700, Miami FL 33131

C.    Phone Number: +1 312 861-8075; +1 305 789-8966

D.    Fax Number: +1 312 698-2375; +1 305 789-8953

E.    E-Mail: douglas.b.sanders@bakernet.com; donald.j.hayden@bakernet.com

III.    **CHINESE DRYWALL PRODUCT IDENTIFICATION AND CHAIN OF DISTRIBUTION**

1.    Product Identification:

Name of Manufacturer(s)' drywall product:

Identify any markings on the drywall product (e.g. lot number, batch number, serial number, color markings, UPC codes, etc.): Knauf-Wuhu, China-ASTM C36 [date code/time code]

List all trademarks applicable to the product: "Knauf" is a registered trademark in China.

Is the drywall that is the subject of this litigation known or referred to, either by the public or only internally within your company, by any other names, brand names, titles, or designations? Provide a detailed list of all names, brand names, titles, and designations by which this drywall is known: No.

Is the drywall that is the subject of this litigation manufactured in any other types or versions? Please describe such other types and how they may be identified: Standard drywall can be manufactured in different sizes, but all standard drywall for sale to U.S. was 12.7mm x 1220mm x 3660mm.

Is the drywall that is the subject of this litigation sold by any other party under its own name? If so, provide a list of all parties selling your drywall under their names, and the brand names under which the drywall is sold: No.

2.    Shipment Information (identify the following for each shipment to, or for importation to, the United States):

See the attached table which Knauf Wuhu incorporates herein as its response to Question No. 2 and Section III generally.

Exporter Name:

Address of Exporter:

2

Date of Export: _____ / _____ (Month / Day / Year)

Name of all ports through which shipment was in transit: _____

Name of final port where shipment was offloaded: _____

Date shipment was offloaded: _____ / _____ (Month / Day / Year)

Amount of Drywall exported: _____

Name of shipper: _____

Address of shipper: _____

_____

_____

Mode of Shipment: _____

Name of vessel: _____

3.  Importer Information (identify the following for each importer):

Importer Name: _____

Address of Importer: _____

_____

_____

Date of Import: _____ / _____ (Month / Day / Year)

Amount of Drywall imported: _____

4.  Distributor in USA:

To the extent you are aware of the distributor or drywall contractor/installer, for any shipments of your product to the USA, provide such information:  Knauf Wuhu sold its products to two companies in the United States, Interior Exterior Supply and L&W Supply Company. Knauf Wuhu has no knowledge of the distribution chain of its plasterboard in the United States beyond that.

5.  Are you are of any brokers or intermediary agents involved in the supply chain who purchased or took possession of your product, either directly from you or from a successor in distribution?  .

See attachment in response to Question No. 2.

6.  If any of your Chinese drywall was stored at any time by or for you at any location, identify the following:

Name of entity providing storage:     Knauf Wuhu stored drywall for a limited time period at its facility prior to shipment and then the drywall was transported to the ship where it was loaded immediately.  Knauf Wuhu does not have any knowledge of how its drywall is handled or stored in the regular course of business once the drywall is put on the ship at the port in China.

Address of entity providing storage: _____

3

Dates product was stored: _____

_____/_____/_____ (Month / Day / Year) to _____/_____ (Month / Day / Year)

Quantity of product stored: _____

Price paid for storage: _____

Name of contact person at storage facility: _____

Phone number: _____

Email address: _____

List any complaints made or received regarding storage of the product:

_____    _____

7.  Describe all agreements existing between the manufacturer and: exporters; importers; shippers; and distributors, relating to each shipment of Chinese drywall to, or for importation to, the United States.

Knauf Wuhu entered an agreement to sell plasterboard to Interior Exterior Building Supply Co. on July 5, 2006. Knauf Wuhu sold plasterboard to L&W Supply Corporation by way of a purchase order on February 22, 2006.

8.  For all shipments or deliveries of Chinese Drywall into, or for importation into, the US from 2001-2009, please indicate whether you provided any of the following

    a.  Express warranties: None._____

    b.  Product specifications: Standard gypsum board: 12.7mm x 1220mm x 3660mm.___

    c.  Product information and/or instructions for storage or use: None._____

IV.  **INSURANCE**

    A.  Identify all policies of insurance, including all CGL, Product Liability, Builder's Risk, D&O and Excess insurance policies relating to claims.

        Knauf Wuhu did not have insurance responsive to this request._____

    1.  For each policy, identify the following:

        Insurer: _____

        Dates policy in effect:

        _____/_____/_____ (Month / Day / Year) to _____/_____ (Month / Day / Year)

        Policy Number: _____

        Type of Policy: _____

        Insurance Agent _____

        Policy Coverage Limits _____

4

Produce a copy of the Declaration page, exclusions and policy of insurance.

B.    Identify all claims you have made on any insurance policies relating to the manufacture or shipment of products identified in Section V above.

1.    For each claim please provide the following:

Date: _____ / ___ / _____ (Month / Day / Year)

Insurer: _____

Description of claim: _____

Insurer's response to claim: _____

If in litigation:

Caption of Case: _____

Name and address of attorneys involved: _____

_____

_____

Insurance carriers involved: _____

_____

## CERTIFICATION

I declare under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746 that all information provided in this Defendant Manufacturers' Profile Form is true and correct to the best of my knowledge and that I have supplied all of the documents requested in this declaration, to the extent that such documents are in my possession, custody or control.

_____            Liang Chang Jiang            2009. 9. 2
Signature                            Print Name                   Date

5

| Manufacturer | Purchaser | Purchaser Contact Information | Shipment Date | Volume (m) | Ship | Port of Loading | Port of Delivery | Ship Arrival Date* | Other Export/Import Information |
|---|---|---|---|---|---|---|---|---|---|
| Guangdong Knauf/New Building Material Products Co., Ltd. ("Knauf Dongguan") | L&W Supply Corporation | 125 S. Franklin St, Chicago, IL 60606, +1 312 606-5930 | 23 January 2006 | 538,616 | Ms-Atta | Huangpu | Canaveral | 9 March 2006 | N/A |
| | L&W Supply Corporation | 125 S. Franklin St, Chicago, IL 60606, +1 908 231-1500 | 9 March 2006 | 312,743 | Mv Vong An Cheng | Huangpu | Canaveral | 2 May 2006 | NA |
| | L&W Supply Corporation | 125 S. Franklin St, Chicago, IL 60606, +1 908 931-1500 | 7 April 2006 | 368,328 | Vishva Kirmu | Huangpu | New Orleans | 18 June 2006 | NA |
| | TOTAL: | | | 1,219,687 | | | | | |

*Based on US Customs Data

# Tab #58

Case 2:09-md-02047-EEF-MBN Document 20688-2 Filed 04/05/19 Page 510 of 595

美国地区法院

路易斯安娜州东部区

关于:中国制造的石膏板产品责任诉讼 : 跨地区诉讼第 2047 号
: L 部分

_____

本文件相关案件 :
所有案件 : FALLON 法官
: WILKINSON 司法官

_____

**被告关联方/子公司/母公司制造商资料表**

CNBM/BNBM/TG 必须填写并呈递本被告关联方/子公司/母公司制造商资料表[1]。CNBM/BNBM/TG 必须填写并签署一份被告关联方/子公司/母公司制造商资料表,列明从 2001 年至今在美国的所有活动。如在完成本资料表后得知其他信息,则必须加以补充。如回答任何问题或填写答复的空间不够,可另加附页。此外,如在回复任何问题时需提供任何附件或文件,请指明本资料表中与该具体附件或文件相关的具体问题。

本资料表中的问题均为不可被异议的问题,并应被回答而无异议。填写本资料表,并不表示您放弃律师工作成果和/或律师-委托人守密特权。同样,通过披露顾问的身份,此等顾问可以保持为非作证专家,且受到法律提供的所有保护。请以英文清楚书写或键入您的答复。

I.   **填写本资料表的被告制造商的联系信息**

   A.   石膏板制造商的关联方、子公司或母公司的名称:北新集团建材股份有限公司("北新建材")[2]

   B.   地址:中国北京市海淀区复兴路 17 号国海广场 2 号楼 15 层

   C.   电话号码:+86 400-898-5566

   D.   电邮地址:bnbm@bnbm.com.cn

   E.   网址:www.bnbm.com.cn

   F.   总裁或首席执行官:陈雨 (总经理)

   G.   总部 (如位于国外):中国北京市海淀区复兴路 17 号国海广场 2 号楼 15 层

   H.   美国总部地址:无

   I.   境外和/或美国总部主管姓名:无

   J.   美国主要营业地点:无

_____

[1] 关联方应指与母公司(或类母公司)实体存在经济关系,与子公司(或类子公司)实体存在纵向关系,以及与具有相同母公司(或类母公司)的实体之间存在横向关系。

[2] 北新建材在跨地区诉讼中呈递本被告关联方/子公司/母公司制造商资料表并不表示北新建材在跨地区诉讼或任何其他诉讼中放弃反对下述事项的任何其权利:(i)反对本表或其附件中披露的任何信息的相关性或证明力;(ii)反对北新建材发送或送达传票的充分性;(iii)反对本法院或任何其他法院对北新建材的管辖权;和/或(iv)以任何理由反对针对北新建材进行的任何证据开示,包括但不限于,该等证据开示违反《关于从外国调取民事或商事证据的海牙公约》。

K. 于 2001 年起至今的任何时间，该实体在美国经营所在的所有办事处或地点的列表：<u>无</u>

L. 于 2001 年起至今的任何时间，已与在美国的个人或公司进行过交易或从事业务的所有管理人员、代理或代表的列表：<u>蔡凯（2005 年至 2007 年任国际业务部总经理助理）（前雇员）；卢凯龙（2005 年至2006 年任国际业务部总经理助理）（前雇员）（见附注 2）</u>

M. 上文第 H、I 和/或 J 项中指明的每个办事处或地点的经理姓名：<u>无</u>

（如果您在上文第 I(A)项中列明多于一个实体，请就每个实体分部回答第 I(B)-I(M) 项。）

II. <u>被告制造商的律师信息</u>

A. 姓名：<u>Michael Barr; Michael Moore; Richard Fenton</u>

B. 地址：<u>Dentons US LLP
1221 Avenue of the Americas
New York, NY 10020-1089 USA</u>

C. 电话号码：<u>+1 212 768 6700</u>

D. 传真号码：<u>+1 212 768 6800</u>

E. 电邮：<u>Michael.barr@dentons.com; Michael.moore@dentons.com; Richard.fenton@dentons.com</u>

III. <u>关联方及子公司信息</u>

A. 在美国或在其管辖权内从事业务的每一个子公司或关联方的名称[3]：<u>见附表 A</u>

B. 上述 A 项中所述的每一实体的地址：<u>见附表 A</u>

C. 上述 A 项中所述业务的类型：<u>见附表 A</u>

D. 上述 A 项中所述的每一实体的电话号码：<u>见附表 A</u>

E. 上述 A 项中所述从事业务的每一实体的最初注册设立州及地址：<u>见附表 A</u>

F. 列明上述 A 项中所述的每一实体的所有商标、专利及服务标记：<u>见附表 A</u>

G. 上述 A 项中所述的每一实体在从事业务时的全称（包括任何商号或其他名称）：<u>见附表 A</u>

H. 请说明上述 A 项中所述的每一实体就进口中国石膏板到美国与任何中国石膏板的制造、出口商、进口商、运货人或经销商签订的所有协议：<u>见附表 A</u>

---

[3]根据 2015 年 3 月 26 日聆讯的法庭指令，附表 A 列明了尽北新建材目前所知的所有与该问题有关的第一层直属子公司/关联方。北新建材对此问题的回复并不代表北新建材承认附表 A 中列明的任何子公司系属于法庭于 2014 年 7 月 17 日签发的藐视法庭令[Doc.No. 17869]或任何其他诉请中所称的"关联方"。

IV. **保险**

    A.     请列明与索赔有关的所有保单，包括所有一般商业综合责任保险、产品责任险、建造险、董监事及高级管理人员责任险和超额保险保单。.

        1.     请就每份保单提供以下信息：

            承保人：<u> 无               </u>

            保单生效日期：

            ___/___/_____ (月 / 日 / 年) 至 ___/___/_____ (月 / 日 /年)

            保单编号：          <u>                    </u>

            保单类型：          <u>                    </u>

            保险代理：          <u>                    </u>

            保险代理在美国的代理地址：   <u>             </u>

            保单承保范围限制：     <u>              </u>

            请提供保险的声明页、例外情况和保单副本。

    B.     请说明您就本案对任何保单提起的全部索赔。

        1.     请就每项索赔提供以下信息：

            日期：___/___/_____ (月 / 日 / 年)

            承保人：<u>                    </u>

            索赔说明：<u>                    </u>

            承保人对索赔的回应：<u>             </u>

            若在诉讼中：

            案件标题：<u>                    </u>

            所涉律师姓名和地址：<u>             </u>

            <u>                              </u>

            <u>                              </u>

            所涉保险公司：<u>                    </u>

<u>声明</u>

　　本人根据《美国法典》第 28 编第 1746 节声明，就本人所知，提供于本被告制造商资料表的全部信息均为真实且准确。并且本人已提供本声明中所要求的所有由本人拥有、照管或控制的文件，否则愿受美利坚合众国法律项下的伪证罪刑罚。

| | | |
|---|---|---|
| _____ | 陈雨 | 03/04/2015 |
| 签名 | 正楷姓名 | 日期 |

| 附表 A 关联方及子公司信息 | | |
|---|---|---|
| III. | 泰山石膏股份有限公司 | 北新建材集团有限公司 |
| A. 在美国或在其管辖权内从事业务的每一个子公司或关联方的名称： | 相关披露请见泰山石膏股份有限公司的资料表 | 相关披露请见北新建材集团有限公司的资料表。 |
| B. 上述 A 项中所述的每一实体的地址： | | |
| C. 上述 A 项中所述业务的类型： | 石膏板销售 | 石膏板出口代理商 |
| D. 上述 A 项中所述的每一实体的电话号码： | | |
| E. 上述 A 项中所述从事业务的每一实体的最初注册设立州及地址： | | |
| F. 列明上述 A 项中所述的每一实体的所有商标、专利及服务标记： | 泰山牌 | |
| G. 上述 A 项中所述的每一实体在从事业务时所用的全称（包括任何商号或其他名称）： | 泰山石膏股份有限公司 | 北新建材集团有限公司 |
| H. 请说明上述 A 项中所述的每一实体就进口中国石膏板到美国与任何中国石膏板的制造商、出口商、进口商、运营人或经销商签订的所有协议： | | 见附表 B |

附表 B

北新集团冀北新建材销售石膏板提供出口代理服务

| | |
|---|---|
| 2005 年 11 月 | 向 EAC & Son's Corp 出口石膏板 |
| 2005 年 11 月 | 向 Great Western Building Materials/Boan International Investment Co., Ltd. 出口石膏板 |
| 2005 年 11 月 | 向 Wood Nation, Inc. 出口石膏板 |

附表 C

| 北新建材的石膏板销售（北新集团未担任其出口代理商） | |
|---|---|
| 2006 年 2 月 | 向 Great Western Building Materials/Boan International Investment Co., Ltd.销售石膏板 |
| 2006 年 3 月和 4 月 | 向 Triorient Trading Co. 销售石膏板 |
| 2006 年 3 月 | 向 Davis Construction Supply Co.销售石膏板 |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | : MDL No. 2047 |
| | : Section L |
| | : |
| This Document Relates to | : JUDGE FALLON |
| ALL CASES | : MAG. JUDGE WILKINSON |

## DEFENDANT AFFILIATE/SUBSIDIARY/PARENT MANUFACTURERS' PROFILE FORM

CNBM/BNBM/TG must complete and submit this Defendant Affiliate/Subsidiary/Parent Manufacturers' Profile Form[1]. CNBM/BNBM/TG must complete and sign a Defendant Affiliate/Subsidiary/Parent Manufacturers' Profile Form for all activity in the US from 2001 through present. If additional knowledge becomes known after completion, this Form must be supplemented. If additional space is needed to answer any questions or complete your responses, additional pages may be attached. In addition, if any attachments or documents are provided in response to any question, please identify the specific question within this Form that relates to the specific attachment or document.

The questions contained within this Profile Form are non-objectionable and shall be answered without objection. By answering this Profile Form, you are not waiving the attorney work product and/or attorney client privileges. Similarly, by disclosing the identity of consultants, such consultants may remain non-testifying experts and are subject to all protections afforded by law. Please print legibly or type your responses in English.

I. **CONTACT INFORMATION OF DEFENDANT MANUFACTURER COMPLETING THIS PROFILE FORM**

   A.   Name of Affiliate, Subsidiary or Parent of Drywall Manufacturer: Beijing New Building Materials Public Limited Company ("BNBMPLC")[2]

   B.   Address: 15F, Building 2, Guohai Plaza, No. 17 Fuxing Road, Haidian District, Beijing, China

   C.   Phone number: +86 400-898-5566

   D.   Email address: bnbm@bnbm.com.cn

   E.   Web site: www.bnbm.com.cn

   F.   President or CEO: Yu CHEN (General Manager)

   G.   Headquarters if Foreign: 15F, Building 2, Guohai Plaza, No. 17 Fuxing Road, Haidian District, Beijing, China

   H.   Address of USA Headquarters: None

---

[1] Affiliate shall mean a financial relationship with a parent (or parent-like) entity, a vertical relationship with a subsidiary (or subsidiary-like) entity, and a horizontal relationship between entities that share a common parent (or parent-like) entity.
[2] BNBMPLC is submitting this Defendant Affiliate/Subsidiary/Parent Manufacturers' Profile Form in these multidistrict proceedings without waiving any of its rights to object, in these or in any other proceedings, to: (i) the relevance or admissibility of any information disclosed on this form or its attachments; (ii) the sufficiency of process or the service of process upon it; (iii) the jurisdiction of this or any other court over it; and/or (iv) any discovery that may be served upon it on any grounds including, without limitation, that such discovery violates the Hague Convention to the Taking of Evidence Abroad in Civil or Commercial Matters.

I.   Name of supervisor at Foreign and/or USA Headquarters: <u>None</u> _____

J.   Principal Place of Business in USA: <u>None</u> _____

K.   List of all offices or locations in USA where entity has done business at any time in 2001 through present: <u>None</u> _____

L.   List of all officers, agents or representatives who have transacted or done business with individuals or companies in the USA at any time from 2001 through present: <u>Kai Cai (Assistant to the Manager of International Business Department from 2005-2007) (former employee); Kailong Lu (Assistant to the Manager of International Business Department from 2005-2006) (former employee) (See fn. 2)</u>

M.   Name of Manager at each office or location identified in H, I and/or J above; <u>None</u> _____

(If you have identified more than one entity in I(A) above separately answer I(B)-I(M) for each entity.)

II.   **COUNSEL INFORMATION OF DEFENDANT MANUFACTURER**

A.   Name: <u>Michael Barr; Michael Moore; Richard Fenton</u> _____

B.   Address: <u>Dentons US LLP, 1221 Avenue of the Americas New York, NY 10020-1089 USA</u> ____

C.   Phone Number: <u>+1 212 768 6700</u> _____

D.   Fax Number: <u>+1 212 768 6800</u> _____

E.   E-Mail: <u>Michael.barr@dentons.com;Michael.moore@dentons.com; Richard.fenton@dentons.com</u>

III.   **AFFILIATE AND SUBSIDIARY INFORMATION**

A.   Name of every subsidiary or affiliate that transacts business in the United States or within its jurisdiction[3]: <u>See Table A</u> _____

B.   Address of each entity identified in A above: <u>See Table A</u> _____

C.   Identification of the type of business identified in A above: <u>See Table A</u> _____

D.   Phone number of each entity identified in A above: <u>See Table A</u> _____

E.   Initial state of incorporation and location where each entity transacts business identified in A above: <u>See Table A</u> _____

F.   Listing of all trademarks, patents and service marks for each entity identified in A above: <u>See Table A</u> _____

G.   The full name including any trade names or other names which the entity identified in A above transacts business: <u>See Table A</u> _____

H.   Describe all agreements existing between the entity identified in A above and between any manufacturer, exporter, importer, shipper or distributor of Chinese drywall for the importation to the United States: <u>See Table A</u> _____

---

[3] Consistent with the Court's instructions at the March 26, 2015 conference, Table A lists all direct subsidiaries/affiliates responsive to this request to the best of BNBMPLC's current knowledge. BNBMPLC's response is not an admission that any listed subsidiary is an "affiliate," as used in the Court's July 17, 2014 Contempt Order [Doc. No. 17869] or any other pleading.

IV.     **INSURANCE**

    A.     A.Identify all policies of insurance, including all CGL, Product Liability, Builder's Risk, D&O and Excess insurance policies relating to claims.

       1.     For each policy, identify the following:

         Insurer:   <u>None</u>

         Dates policy in effect:

         ___/ ___/ _____ (Month / Day / Year) to ___/ ___/ _____ (Month / Day / Year)

         Policy Number: _____

         Type of Policy: _____

         Insurance Agent _____

         Address of Insurance _____

         Agent in the United States _____

         Policy Coverage Limits _____

         Produce a copy of the Declaration page, exclusions and policy of insurance.

    B.     Identify all claims you have made on any insurance policies regarding this matter.

       1.     For each claim please provide the following:

         Date:   ___/ ___/ _____ (Month / Day / Year)

         Insurer: _____

         Description of claim: _____

         Insurer's response to claim: _____

         If in litigation:

         Caption of Case: _____

         Name and address of attorneys involved: _____

         _____

         _____

         Insurance carriers involved: _____

         _____

## CERTIFICATION

I declare under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746 that all information provided in this Defendant Manufacturers' Profile Form is true and correct to the best of my knowledge, and that I have supplied all of the documents requested in this declaration, to the extent that such documents are in my possession, custody or control.

| | | |
|---|---|---|
| Signature | CHEN YU<br>Print Name | 03/04/2015<br>Date |

TABLE A

SUBSIDIARY/AFFILIATE INFORMATION

| III. | Taishan Gypsum Co., Ltd. | Beijing New Building Material (Group) Co., Ltd. |
|---|---|---|
| A. Name of every subsidiary or affiliate that transacts business in the United States or within its jurisdiction | For relevant disclosure, please see the Profile Form of Taishan Gypsum Co., Ltd. | For relevant disclosure, please see the Profile Form of Beijing New Building Material (Group) Co., Ltd |
| B. Address of each entity identified in A above : | | |
| C. Identification of the type of business identified in A above: | Drywall sales | Drywall export agency |
| D. Phone number of each entity identified in A above: | | |
| E. Initial state of incorporation and location where each entity transacts business identified in A above: | | |
| F. Listing of all trademarks, patents and service marks for each entity identified in A above: | Taishan | |

| | Taishan Gypsum Co., Ltd. | Beijing New Building Material (Group) Co., Ltd. |
|---|---|---|
| **G. The full name including any trade names or other names which the entity identified in A above transacts business:** | | |
| **H. Describe all agreements existing between the entity identified in A above and between any manufacturer, exporter, importer, shipper or distributor of Chinese drywall for the importation to the United States:** | | See Table B |

**TABLE B**

**BNBMPLC DRYWALL SALES FOR WHICH BNBM GROUP WAS EXPORT AGENT**

| | | |
|---|---|---|
| Export of drywall to EAC & Son's Corp. | | November 2005 |
| Export of drywall to Great Western Building Materials/Boan International Investment Co., Ltd. | | November 2005 |
| Export of drywall to Wood Nation, Inc. | | November 2005 |

## TABLE C

### BNBMPLC DRYWALL SALES FOR WHICH BNBM GROUP WAS NOT EXPORT AGENT

| | |
|---|---|
| February 2006 | Sale of drywall to Great Western Building Materials/Boan International Investment Co., Ltd. |
| March and April 2006 | Sale of drywall to Triorient Trading Co. |
| March 2006 | Sale of drywall to Davis Construction Supply Co. |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

IN RE: CHINESE MANUFACTURED DRYWALL     : MDL No. 2047
PRODUCTS LIABILITY LITIGATION     : Section L

This Document Relates to     : JUDGE FALLON
ALL CASES     : MAG. JUDGE WILKINSON

PEOPLE'S REPUBLIC OF CHINA

CITY OF SHANGHAI

DECLARATION OF JIA LISHUANG

This is a declaration being made in accordance with and pursuant to 28 U.S.C. § 1746.

I, Jia Lishuang（贾立双）, declare under penalty of perjury under the laws of the United States of America that the following statements are true and correct:

1.    I am over eighteen (18) years of age, am competent to testify to the matters contained herein, and have personal knowledge of these facts.

2.    I am a senior translator with the Shanghai Transbridge Co., Ltd., and work in the office in Shanghai, China. Shanghai Transbridge Co., Ltd is a professional translation service provider in China.

3.    I am fluent in the languages of Chinese and English.

4.    I hereby certify that I translated Beijing New Building Materials Public Limited Company's ("BNBMPLC") Defendant Affiliate/Subsidiary/Parent Manufacturers' Profile Form ("BNBMPLC 's Profile Form") between the English and Chinese languages. I further certify that the English version of the BNBMPLC 's Profile Form is a true and accurate translation of the Chinese version of the BNBMPLC 's Profile Form. I also certify that the English version of the BNBMPLC 's Profile Form and the Chinese version of the BNBMPLC 's Profile Form are accurate translations of one another.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 1, 2015

贾立双

Jia lishung

美国地区法院

路易斯安娜州东部区

| | |
|---|---|
| 关于:中国制造的石膏板产品责任诉讼 | : 跨地区诉讼第 2047 号<br>: L 部分 |
| | : |
| 本文件相关案件 | : FALLON 法官 |
| 所有案件 | : WILKINSON 司法官 |

**被告关联方/子公司/母公司制造商资料表**

CNBM/BNBM/TG 必须填写并呈递本被告关联方/子公司/母公司制造商资料表[1]。CNBM/BNBM/TG 必须填写并签署一份被告关联方/子公司/母公司制造商资料表，列明从 2001 年至今在美国的所有活动。如在完成本资料表后得知其他信息，则必须加以补充。如回答任何问题或填写答复的空间不够，则可另附页。此外，如在回复任何问题时需提供任何附件或文件，请指明本资料表中与该具体附件或文件相关的具体问题。

本资料表中的问题均为不可被异议的问题，并应被回答而无异议。填写本资料表，并不表示您放弃律师工作成果和/或律师-委托人守密特权。同样，通过披露顾问的身份，此等顾问可以保持为非作证专家，且受到法律提供的所有保护。请以英文清楚书写或键入您的答复。

I. **填写本资料表的被告制造商的联系信息**

    A. 石膏板制造商的关联方、子公司或母公司的名称：北新建材集团有限公司（"北新集团"）[2]

    B. 地址：北京市海淀区首体南路 9 号 4 号楼 10 层 1001 室

    C. 电话号码：+86 10-68799690

    D. 电邮地址：jagr@bnbmg.com.cn

    E. 网址：www.bnbm.com.cn

    F. 总裁或首席执行官，陶铮（总经理）

    G. 总部（如位于国外）：北京市海淀区首体南路 9 号 4 号楼 10 层 1001 室

    H. 美国总部地址：无

    I. 境外和/或美国总部主管姓名：无

    J. 美国主要营业地点：无

    K. 于 2001 年起至今的任何时间，该实体在美国经营所在的所有办事处或地点的列表：　无

---

[1] 关联方应指与母公司（或类母公司）实体存在经济关系，与子公司（或类子公司）实体存在纵向关系，以及与具有相同母公司（或类母公司）的实体之间存在横向关系。

[2] 北新集团在跨地区诉讼中呈递本被告关联方/子公司/母公司制造商资料表并不表示北新集团在跨地区诉讼或任何其他诉讼中放弃反对下述事项的权利：(i)反对本表或其附件中披露的任何信息的相关性或证明力；(ii)反对对北新集团发送或送达传票的充分性；(iii)反对本法院或任何其他法院对北新集团的管辖权；和/或(iv)以任何理由反对针对北新集团进行的任何证据开示，包括但不限于，该等证据开示违反《关于从外国调取民事或商事证据的海牙公约》。北新集团进一步明确北新集团不生产石膏板。

L. 于 2001 年起至今的任何时间，已与在美国的个人或公司进行过交易或从事过业务的所有管理人员、代理或代表的列表：魏春山（北新集团国际业务部副经理）

M. 上文第 H、I 和/或 J 项中指明的每个办事处或地点的经理姓名：无

（如果您在上文第 I(A)项中列明多于一个实体，请就每个实体分部回答第 I(B)-I(M) 项。）

II. 被告制造商的律师信息

    A. 姓名：Michael Barr; Michael Moore; Richard Fenton

    B. 地址：Dentons US LLP
             1221 Avenue of the Americas
             New York, NY 10020-1089 USA

    C. 电话号码：+1 212 768 6700

    D. 传真号码：+1 212 768 6800

    E. 电邮：Michael.barr@dentons.com; Michael.moore@dentons.com; Richard.fenton@dentons.com

III. 关联方及子公司信息

    A. 在美国或在其管辖权内从事业务的每一个子公司或关联方的名称[3]：见附表 A

    B. 上述 A 项中所述的每一实体的地址：见附表 A

    C. 上述 A 项中所述业务的类型：见附表 A

    D. 上述 A 项中所述的每一实体的电话号码：见附表 A

    E. 上述 A 项中所述从事业务的每一实体的最初注册设立州及地址：见附表 A

    F. 列明上述 A 项中所述的每一实体的所有商标、专利及服务标记：见附表 A

    G. 上述 A 项中所述的每一实体在从事业务时的全称（包括任何商号或其他名称）：见附表 A

    H. 请说明上述 A 项中所述的每一实体就进口中国石膏板到美国与任何中国石膏板的制造商、出口商、进口商、运货人或经销商签订的所有协议：见附表 A

IV. 保险

    A. 请列明与索赔有关的所有保单，包括所有一般商业综合责任保险、产品责任险、建造险、董监事及高级管理人员责任险和超额保险保单。.

        1. 请就每份保单提供以下信息：

---

[3] 根据 2015 年 3 月 26 日聆讯的法庭指令，附表 A 列明了尽北新集团目前所知的所有与该问题有关的第一层直属子公司/关联方。北新集团对此问题的回复并不代表北新集团承认附表 A 中列明的任何子公司属于法庭于 2014 年 7 月 17 日签发的裁视法庭令[Doc.No.17869]或任何其他诉请中所称的"关联方"。

承保人：无 _____

保单生效日期：

___/___/_____(月／日／年) 至 ___/___/_____(月／日／年)

保单编号： _____

保单类型： _____

保险代理： _____

保险代理在美国的代理地址： _____

保单承保范围限制： _____

请提供保险的声明页、例外情况和保单副本。

B.    请说明您就本案对任何保单提起的全部索赔。

1.    请就每项索赔提供以下信息：

日期： ___/___/_____(月／日／年)

承保人： _____

索赔说明： _____

承保人对索赔的回应： _____

若在诉讼中：

案件标题： _____

所涉律师姓名和地址： _____

_____

_____

所涉保险公司： _____

_____

*声明*

　　本人根据《美国法典》第 28 编第 1746 节声明，就本人所知，提供于本被告制造商资料表的全部信息均为真实且准确。并且本人已提供本声明中所要求的所有由本人拥有、照管或控制的文件，否则愿受美利坚合众国法律项下的伪证罪刑罚。

| _(signature)_ | _(signature)_ | 15、4、3 |
| --- | --- | --- |
| 签名 | 正楷姓名 | 日期 |

附表 A
关联方及子公司信息

| III. | 北新国际木业有限公司 | 北新集团厦门国际贸易有限公司 | 中国建材股份有限公司 | 北新集团建材股份有限公司 |
|---|---|---|---|---|
| A. 在美国或在其管辖权内从事业务的每一个子公司或关联方的名称； | | | 相关披露请见中国建材股份有限公司的资料表。 | 相关披露请见北新集团建材股份有限公司的资料表。 |
| B. 上述 A 项中所述的每一实体的地址； | 北京市海淀区首体南路 9 号 4 栋 8 层 901 室 | 厦门市湖里区殿前街道长岩路 223 号主楼八楼 878 单元 | | |
| C. 上述 A 项中所述业务的类型； | 木材进口 | 木材进口 | | 石膏板销售 |
| D. 上述 A 项中所述的每一实体的电话号码； | 010-68799770 | 0592-2276016 | | |
| E. 上述 A 项中所述从事业务的每一实体的最初注册设立州及地址； | 无 | 无 | | |
| F. 列明上述 A 项中所述的每一实体的所有商标、专利及服务标记； | 无 | 无 | | 龙牌 |
| G. 上述 A 项中所述的每一实体在其业务时的全称（包括任何商号或其他名称）； | 北新国际木业有限公司 | 北新集团厦门国际贸易有限公司 | | 北新集团建材股份有限公司 |
| H. 请说明上述 A 项中所述的由中国往美国进口中国石膏板或运到美国的任何中国石膏板的制造商、出口商、进口商、运客人或经销商签订的所有协议； | 无 | 无 | | 见附表 B |

附表 B

北新集团就北新建材销售石膏板提供出口代理服务

| | |
|---|---|
| 2005 年 11 月 | 向 EAC & Son's Corp 销售石膏板 |
| 2005 年 11 月 | 向 Great Western Building Materials/Boan International Investment Co., Ltd. 销售石膏板 |
| 2005 年 11 月 | 向 Wood Nation, Inc. 销售石膏板 |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL<br>PRODUCTS LIABILITY LITIGATION | : MDL No. 2047<br>: Section L<br>: |
| This Document Relates to<br>ALL CASES | : JUDGE FALLON<br>: MAG. JUDGE WILKINSON |

## DEFENDANT AFFILIATE/SUBSIDIARY/PARENT MANUFACTURERS' PROFILE FORM

CNBM[1]/BNBM/TG must complete and submit this Defendant Affiliate/Subsidiary/Parent Manufacturers' Profile Form[1]. CNBM/BNBM/TG must complete and sign a Defendant Affiliate/Subsidiary/Parent Manufacturers' Profile Form for all activity in the US from 2001 through present. If additional knowledge becomes known after completion, this Form must be supplemented. If additional space is needed to answer any questions or complete your responses, additional pages may be attached. In addition, if any attachments or documents are provided in response to any question, please identify the specific question within this Form that relates to the specific attachment or document.

The questions contained within this Profile Form are non-objectionable and shall be answered without objection. By answering this Profile Form, you are not waiving the attorney work product and/or attorney client privileges. Similarly, by disclosing the identity of consultants, such consultants may remain non-testifying experts and are subject to all protections afforded by law. Please print legibly or type your responses in English.

I.   **CONTACT INFORMATION OF DEFENDANT MANUFACTURER COMPLETING THIS PROFILE FORM**

   A.   Name of Affiliate, Subsidiary or Parent of Drywall Manufacturer: Beijing New Building Material (Group) Co., Ltd. ( "BNBM Group")[2]

   B.   Address: Room 1001, 10F, Building 4, No.9 South Shouti Road, Haidian District, Beijing

   C.   Phone number: +86 10-68799690

   D.   Email address: jager@bnbmg.com.cn

   E.   Web site: www.bnbmg.com.cn

   F.   President or CEO: Zheng TAO (General Manager)

---

[1] Affiliate shall mean a financial relationship with a parent (or parent-like) entity, a vertical relationship with a subsidiary (or subsidiary-like) entity, and a horizontal relationship between entities that share a common parent (or parent-like) entity.

[2] BNBM Group is submitting this Defendant Affiliate/Subsidiary/Parent Manufacturers' Profile Form in these multidistrict proceedings without waiving any of its rights to object, in these or in any other proceedings, to: (i) the relevance or admissibility of any information disclosed on this form or its attachments; (ii) the sufficiency of process or the service of process upon it; (iii) the jurisdiction of this or any other court over it; and/or (iv) any discovery that may be served upon it on any grounds including, without limitation, that such discovery violates the Hague Convention to the Taking of Evidence Abroad in Civil or Commercial Matters. BNBM Group further notes that it does not manufacture drywall.

G.    Headquarters if Foreign: Room 1001, 10F, Building 4, No.9 South Shouti Road, Haidian District, Beijing

H.    Address of USA Headquarters: None

I.    Name of supervisor at Foreign and/or USA Headquarters: None

J.    Principal Place of Business in USA: None

K.    List of all offices or locations in USA where entity has done business at any time in 2001 through present: None

L.    List of all officers, agents or representatives who have transacted or done business with individuals or companies in the USA at any time from 2001 through present: Chunshan Wei (Deputy Manager of International Business Department of BNBM Group)

M.    Name of Manager at each office or location identified in H, I and/or J above: None

(If you have identified more than one entity in I(A) above separately answer I(B)-I(M) for each entity.)

## II.    COUNSEL INFORMATION OF DEFENDANT MANUFACTURER

A.    Name: Michael Barr; Michael Moore; Richard Fenton

B.    Address: Dentons US LLP, 1221 Avenue of the Americas New York, NY 10020-1089 USA

C.    Phone Number: +1 212 768 6700

D.    Fax Number: +1 212 768 6800

E.    E-Mail: Michael.barr@dentons.com;Michael.moore@dentons.com; Richard.fenton@dentons.com

## III.    AFFILIATE AND SUBSIDIARY INFORMATION

A.    Name of every subsidiary or affiliate that transacts business in the United States or within its jurisdiction[3] See Table A

B.    Address of each entity identified in A above: See Table A

C.    Identification of the type of business identified in A above: See Table A

D.    Phone number of each entity identified in A above: See Table A

E.    Initial state of incorporation and location where each entity transacts business identified in A above: See Table A

F.    Listing of all trademarks, patents and service marks for each entity identified in A above: See Table A

G.    The full name including any trade names or other names which the entity identified in A above transacts business: See Table A

---

[3] Consistent with the Court's instructions at the March 26, 2015 conference, Table A lists all direct subsidiaries/affiliates responsive to this request to the best of BNBM Group's current knowledge. BNBM Group's response is not an admission that any listed subsidiary is an "affiliate," as used in the Court's July 17, 2014 Contempt Order [Doc. No. 17869] or any other pleading.

H.    Describe all agreements existing between the entity identified in A above and between any manufacturer, exporter, importer, shipper or distributor of Chinese drywall for the importation to the United States: See Table A _____

## IV.    INSURANCE

A.    Identify all policies of insurance, including all CGL, Product Liability, Builder's Risk, D&O and Excess insurance policies relating to claims,

    1.    For each policy, identify the following:

    Insurer:    ____None_____

    Dates policy in effect:

    ___/ ___/ _____ (Month / Day / Year) to ___/ ___/ _____ (Month / Day / Year)

    Policy Number:    _____

    Type of Policy:    _____

    Insurance Agent    _____

    Address of Insurance    _____

    Agent in the United States    _____

    Policy Coverage Limits    _____

    Produce a copy of the Declaration page, exclusions and policy of insurance.

B.    Identify all claims you have made on any insurance policies regarding this matter.

    1.    For each claim please provide the following:

    Date:  ___/ ___/ _____ (Month / Day / Year)

    Insurer: _____

    Description of claim: _____

    Insurer's response to claim: _____

    If in litigation:

    Caption of Case: _____

    Name and address of attorneys involved: _____

    _____

    _____

    _____

    Insurance carriers involved: _____

---

## CERTIFICATION

I declare under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746 that all information provided in this Defendant Manufacturers' Profile Form is true and correct to the best of my knowledge, and that I have supplied all of the documents requested in this declaration, to the extent that such documents are in my possession, custody or control.

| | | |
|---|---|---|
| _____ | _____ | 15.4.3 |
| Signature | Print Name | Date |

**TABLE A**

**SUBSIDIARY/AFFILIATE INFORMATION**

| III. | BNBM Group Forest Products Co., Ltd. | BNBM Group Xiamen International Trade Co., Ltd. | China National Building Material Company Limited | Beijing New Building Materials Public Limited Company |
|---|---|---|---|---|
| A. Name of every subsidiary or affiliate that transacts business in the United States or within its jurisdiction | | | For relevant disclosure, please see the Profile Form of China National Building Material Company Limited. | For relevant disclosure, please see the Profile Form of Beijing New Building Materials Public Limited Company. |
| B. Address of each entity identified in A above: | Room 901, 9F, Building 4, No.9 South Shouti Road, Haidian District, Beijing | Unit 878, 8F, Main Building, No.223 Changbao Road, Dianqian Sub-district, Huli District, Xiamen | | |
| C. Identification of the type of business identified in A above: | Timber import | Timber import | | Drywall sales |
| D. Phone number of each entity identified in A above: | 010-68799770 | 0592-2276016 | | |
| E. Initial state of incorporation and location where each entity transacts business identified in A above: | None | None | | |
| F. Listing of all trademarks, patents and service marks for each entity identified in A above: | None | None | | Dragon |
| G. The full name including any trade names or other names which the entity identified in A above transacts business: | BNBM Group Forest Products Co., Ltd. | BNBM Group Xiamen International Trade Co., Ltd. | | Beijing New Building Materials Public Limited Company |
| H. Describe all agreements existing between the entity identified in A above and between any manufacturer, | None | None | | See Table B |

exporter, importer, shipper or distributor of Chinese drywall for the importation to the United States:

**TABLE B**

**BNBMPLC DRYWALL SALES FOR WHICH BNBM GROUP WAS EXPORT AGENT**

| | |
|---|---|
| November 2005 | Sale of drywall to EAC & Son's Corp. |
| November 2005 | Sale of drywall to Great Western Building Materials/Boan International Investment Co., Ltd. |
| November 2005 | Sale of drywall to Wood Nation, Inc. |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | : MDL No. 2047 : Section L |
| This Document Relates to ALL CASES | : JUDGE FALLON : MAG. JUDGE WILKINSON |

PEOPLE'S REPUBLIC OF CHINA

CITY OF SHANGHAI

DECLARATION OF JIA LISHUANG

This is a declaration being made in accordance with and pursuant to 28 U.S.C. § 1746.

I, Jia Lishuang （贾立双）, declare under penalty of perjury under the laws of the United States of America that the following statements are true and correct:

1.  I am over eighteen (18) years of age, am competent to testify to the matters contained herein, and have personal knowledge of these facts.

2.  I am a senior translator with the Shanghai Transbridge Co., Ltd., and work in the office in Shanghai, China. Shanghai Transbridge Co., Ltd is a professional translation service provider in China.

3.  I am fluent in the languages of Chinese and English.

4.  I hereby certify that I translated Beijing New Building Material (Group) Co., Ltd.'s ("BNBM Group") Defendant Affiliate/Subsidiary/Parent Manufacturers' Profile Form ("BNBM Group's Profile Form") between the English and Chinese languages. I further certify that the English version of the BNBM Group's Profile Form is a true and accurate translation of the Chinese version of the BNBM Group's Profile Form. I also certify that the English version of the BNBM Group's Profile Form and the Chinese version of the BNBM Group's Profile Form are accurate translations of one another.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April ___1___, 2015

贾立双

Jia lishuang

# Tab #59

# FILED UNDER SEAL

# Tab #60

IN THE CIRCUIT COURT OF

BALDWIN COUNTY, ALABAMA

No. CV-2009-900948

- - -

CHAD EVERTT LANGHAM, et al.:
                          :
        v.                :
                          :
ACE HOME CENTER, et al.   :

- - -

MARCH 24, 2011

- - -

Videotape deposition of
ROBERT SCHARF, taken pursuant to notice,
was held at THE RADISSON VALLEY FORGE,
1160 First Avenue, King of Prussia,
Pennsylvania, commencing at 9:24 a.m., on
the above date, before LISA CAPALDO, a
Certified Professional Reporter and
Notary Public in and for the Commonwealth
of Pennsylvania.

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 595 of 647
Case 1:11-cv-22408-MGC Document 27 Entered on FLSD Docket 09/15/2015 Page 543 of 595

14

BY MR. LAW:

      Q.    Tell us your name, please, sir.

      A.    Robert Scharf.

      Q.    Mr. Scharf, I'm Jonathon Law.  We met before the deposition.  I'm going to ask you a few questions today.  If you don't understand any of my questions, tell me that and I'll try to clarify it for you.

      A.    Okay.

      Q.    If I ask a bad question, it's my job to fix it.  So if you tell me, I'll repeat or clarify the question for you.

      A.    Okay.

      Q.    If you answer the question, we'll assume you understood it.  Is that fair enough?

      A.    That's fair enough.

      Q.    If you need to slow me down, just tell me.

      A.    You'll be all right.

      Q.    What's your current address,

Robert Scharf                                    March 24, 2011

41

1         A.    I don't believe so.

2         Q.    And you've seen the name

3    Devon Building Products before, haven't

4    you?

5         A.    I have.

6         Q.    Who came up with that

7    division or --

8         A.    I don't know.

9         Q.    Devon Building Products, was

10   that just kind of a trade name under

11   which Devon International Trading

12   marketed some building products?

13               MR. BROWN:  Object to the

14        form.  You have to answer.

15               THE WITNESS:  I don't know.

16   BY MR. LAW:

17        Q.    Did you ever work for a

18   company called Devon Building Products?

19        A.    No.

20        Q.    Whose idea was it to import

21   drywall from China?

22        A.    NorPac was the one that made

23   the inquiry about drywall.

24        Q.    Who at NorPac made the

Robert Scharf                                    March 24, 2011

42

1    inquiry, the initial inquiry?

2           A.    I would think that would be

3    Jay Buckley.

4           Q.    Was NorPac having a hard

5    time finding domestic drywall for its

6    customers at that time?

7           A.    I don't know.

8           Q.    Tell me about the initial

9    inquiry from Mr. Buckley.

10          A.    He wanted to know if we

11   could get drywall made in China.

12          Q.    Do you know if North Pacific

13   or when Mr. Buckley came to you had

14   previously ordered any drywall from

15   China?

16          A.    Did I know that when he

17   first came to me?

18          Q.    Yes, sir.

19          A.    I did not know it.

20          Q.    You know that now?

21          A.    I'm aware of it now, yes.

22          Q.    Do you know why North

23   Pacific wanted to purchase drywall

24   imported from China as opposed to obtain

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 598 of 647
Case 1:11-cv-22408-MGC Document 27 Entered on FLSD Docket 08/15/2015 Page 546 of 595

1    it from its domestic customers?

2         A.    It was less expensive.

3         Q.    The drywall manufactured in

4    China cost less to make than it did in

5    the U.S, didn't it?

6         A.    It cost less to buy for

7    sure.

8         Q.    And in turn North Pacific

9    could buy from Devon for a cheaper price

10   and sell it to its customers and have a

11   greater profit?

12        A.    I don't know what they did

13   with it.  All I know is what I paid for

14   it and what I could sell it to them for.

15        Q.    Did you do -- look into any

16   market prices for drywall that could be

17   purchased in the U.S. prior going to

18   China?

19        A.    I did.

20        Q.    Tell me what did you do to

21   find out about the market price of

22   drywall in U.S. versus China?

23        A.    I went across the street to

24   Home Depot and saw what they were selling

Case 1:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 599 of 647
Case 2:09-md-02047-EEF-MBN Document 22387-10 Entered on FLSD Docket 09/15/2015 Page 547 of 595

1    it for.

2         Q.    How much were they selling

3    it for?

4         A.    At that point it was about

5    $11.00 to $20.00 depending on the size,

6    and the year before it was maybe $7.00 a

7    board.  So now I realized that we

8    probably could buy it in China.

9         Q.    You said 11 to 20 depending

10   on size.  How much was the four by 12 by

11   half inch going for at that time?

12        A.    I think over there it was

13   like $21.00 a sheet.  But there's not a

14   big market in residential products in

15   home centers for four by 12 product,

16   board.

17        Q.    The four by 12 by half inch

18   it's used primarily in residential

19   construction, isn't it?

20        A.    No, not to my knowledge.

21   Four by eight is used in residential.

22   And I think five eighths is the most

23   common thickness for residential and you

24   can use half inch.  Four by 12 boards are

Robert Scharf                                    March 24, 2011

82

1    International did, and you mentioned that
2    they did a little plywood and some
3    motorcycles and plastics at the bottom of
4    page ten there.
5           A.    Yes.
6           Q.    And then over on page 11 you
7    were asked about sourcing.  And I'm on
8    line six on page 11, and you said, no,
9    everything was in China, but they didn't
10   buy anything at that point on spec.
11   Everything was for somebody's purchase
12   order.
13          And the question to you is
14   what did you mean by they didn't buy
15   anything at that point on spec?
16          A.    Nothing came in and was
17   warehoused and resold in less than
18   container loads.  Everything they sourced
19   they would have a customer for like the
20   drywall.  They gave us an order for an
21   entire boat.  We weren't out selling
22   drywall in the United States to anybody.
23          Q.    The drywall was made on
24   spec, wasn't it?  Meaning --

Robert Scharf                                    March 24, 2011

83

1          A.    No.  No.

2          Q.    -- from specs that we talked

3    about?

4          A.    No.  No.  That's not what I

5    mean by spec.

6          Q.    What did you mean by spec --

7          A.    Spec load was that it came

8    in.  You put it in a warehouse someplace

9    and you resold it.  You didn't have a

10   customer for it.  You were speculating on

11   the sale of it.  That's what that meant.

12         Q.    So you didn't mean by

13   specifications there?

14         A.    No.

15         Q.    I'm going to mark as exhibit

16   number four another series of E-mails.

17   Again, they start on the second page

18   which I'm not too interested in.  What

19   I'm going to ask you about is an E-mail

20   from Mr. Buckley on the bottom to you and

21   he's referencing some documents that are

22   needed down there and there's a list.  Do

23   you see that?

24         A.    I see it, yes.

Robert Scharf                                    March 24, 2011

84

1        Q.    And Mr. Buckley here back in
2    January of 2006, he was giving you a list
3    of items that North Pacific needed to
4    provide to some of its big customers of
5    drywall.  Is that correct?
6        A.    That's correct.
7        Q.    Do you recall who any of
8    those big customers were?
9        A.    No, I don't know any of
10   them.
11       Q.    And he mentioned in here the
12   weight again, and then he also mentioned
13   a certificate of formaldehyde omission,
14   item number four.  Do you see that?
15       A.    Yes.
16       Q.    Did you ever obtain a
17   certificate of formaldehyde omission to
18   provide to North Pacific?
19       A.    No.
20       Q.    He's requested a
21   specification sheet, and I think we
22   talked about that.  And you never
23   provided a specification sheet?
24       A.    I didn't we -- I didn't

Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/18 Page 603 of 647
Case 2:12-cv-22408-MCE-LFB Document 27 Entered on FLSD Docket 08/15/2019 Page 551 of
595

85

1    provide it.

2            Q.      He asks about voids in the

3    board.  What does that mean?  What are

4    voids in the board?

5            A.      There's no product, holes,

6    missing.

7            Q.      Did you ever see when you

8    went to some of these other factories any

9    boards that had voids in it?

10           A.      I didn't notice.  I didn't,

11   you know, look that carefully, but I know

12   that they are famous for having for

13   having too much in one spot and not

14   enough in another spot and have voids.  A

15   lot of their products they do that with.

16           Q.      You say they being the

17   products made in China?

18           A.      Yes, correct.

19           Q.      So they actually would have

20   the paper on each side but wouldn't have

21   any gypsum --

22           A.      They'd be missing, voids.

23           Q.      That would be a

24   manufacturing defect, wouldn't it?

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 604 of 647
Case 1:11-cv-22408-MGC Document 27 Entered on FLSD Docket 08/15/2019 Page 552 of 595

1          A.    I don't know what it was.
2     It may not be a defect.  They may try to
3     do it.  I don't know.
4          Q.    It's not supposed to be made
5     that way, is it?
6          A.    Not for us.
7          Q.    And then he asks in number
8     eight a copy of a stamp on each sheet
9     equal to or exceeds ASTM.  Do you see
10    that?
11         A.    Yes.  I believe the drywall
12    had it all -- it was on every piece of
13    drywall.
14         Q.    And you knew back in January
15    of '06 that those were documents that
16    North Pacific needed to provide to its
17    customers to rely upon?
18         A.    I don't know -- I know what
19    Jay wanted.  I'm not sure.
20         Q.    Well, he wanted those
21    documents we just talked about to provide
22    to his customers that would be customers
23    of North Pacific.  Is that right?
24         A.    You have to ask Jay.  I know

Robert Scharf                          March 24, 2011

87

1    what he asked me for, but I'm not sure
2    what he -- I don't know what he wanted
3    them for.
4            Q.    What was North Pacific going
5    to do with all this drywall?
6            A.    They sold it.
7            Q.    And they were selling it to
8    their customers?
9            A.    And I believe they pre-sold
10   it also.
11           Q.    And they pre-sold it to
12   wholesalers?
13           A.    I don't know who they sold
14   it to.
15           Q.    And to your knowledge did
16   they sell directly to builders or did
17   they sell to other customers like BMW?
18           A.    No, I'm not sure -- I really
19   don't know who they sold to.
20           Q.    You and Mr. Buckley never
21   talked about who the North Pacific
22   customers were?
23           A.    The last thing he would tell
24   me was who his customers were.

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 606 of 647
Case 1:11-cv-22408-MGC Document 27 Entered on FLSD Docket 08/15/2019 Page 554 of 595

1          A.     They had -- I don't remember
2    how many pieces in a unit, but the units
3    weighed 6,000 pounds.  So they are three
4    tons, and they are four by -- four by
5    eight, four by 12 sheets.  They put them
6    on a skid, on a wood skid.  They put I
7    don't know maybe six or seven bands
8    around it.
9                They put heavy boards,
10   heavier drywall boards around all sides.
11   They then strapped it and banded it.
12   Well, first they put plastic over
13   everything, visqueen over everything,
14   over the drywall.  Then this is just a
15   packaging cover so that it won't rub up
16   against each other.  The ends won't get
17   broken or bent or anything like that.
18          Q.     I'm going to show you
19   Exhibit-27.  Does that show you some of
20   these packages of drywall and how they
21   were packaged together?
22          A.     Yes.
23          Q.     Did you ever see -- did
24   Devon request that anybody else's name be

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 607 of 647
Case 1:11-cv-22408-MGC Document 270 Entered on FLSD Docket 08/15/2019 Page 555 of
595

Robert Scharf                                    March 24, 2011

131

1    placed on any of these sheets of drywall

2    or the packaging?

3          A.    No.  I don't think we

4    requested our own name being placed on it

5    to tell you the truth.

6          Q.    Did you review the purchase

7    order?

8          A.    I've seen the purchase

9    order.

10         Q.    You reviewed the purchase

11   order placed by North Pacific, didn't

12   you?

13         A.    I'm sorry?

14         Q.    You reviewed the purchase

15   order placed by North Pacific?

16         A.    You talking about reviewed

17   it now recently or when we got it?

18         Q.    When the purchase order was

19   placed?

20         A.    Yes.

21         Q.    I'm going to show you

22   Exhibit-28.  Is that the purchase order?

23         A.    I believe this is the

24   purchase order.

Robert Scharf                                    March 24, 2011

132

1          Q.     And this purchase order
2     would have been used in China to have the
3     drywall manufactured?
4          A.     This purchase order?
5          Q.     Yes, sir.
6          A.     No, I believe we would then
7     give a purchase order.
8          Q.     And I saw in your previous
9     testimony in your deposition in front of
10    you you mentioned that you had obtained
11    purchase orders from North Pacific so you
12    could go to the factories to have the
13    drywall manufactured.  Is that kind of
14    how it worked?  You went with purchase
15    order in hand?
16         A.     No.  I don't physically show
17    them my purchase order.  Once I have a
18    purchase order, then I can go out and buy
19    -- this is $4 million worth of product.
20         Q.     The $4 million was paid up
21    front, wasn't it?
22         A.     No, it wasn't paid at all.
23         Q.     Well, and that was a poor
24    question.  The money that Devon paid to

Robert Scharf                                    March 24, 2011

133

 1    the factory for the manufacture of the
 2    drywall, it was paid up front, wasn't it?
 3            A.    Normally you pay 30 percent
 4    when you give an order, and then you pay
 5    the balance when it's on the water.
 6    That's normally what happens.
 7            Q.    So before it arrived in the
 8    U.S. it was paid for?
 9            A.    It was paid for, yes.
10            Q.    The purchase order exhibit
11    whatever it is references grade A
12    drywall.  What is grade A?
13            A.    I don't know.
14            Q.    Is there a grade B?
15            A.    No, there is no --
16            Q.    Did you ever discuss --
17            A.    No.  No.
18            Q.    And this purchase order
19    states must have stamp that the product
20    meets or exceeds North American ASTM
21    standards?
22            A.    That's correct.
23            Q.    And it was a requirement of
24    the purchase order with Devon that the

Robert Scharf                                March 24, 2011

134

1    gypsum board had a stamp on it indicating
2    that it complied with ASTM standards?
3            A.    That's correct.
4            Q.    Is Exhibit-29 a photograph
5    of that stamp?
6            A.    That's it.
7            Q.    And it said meet or exceeds
8    ASTM 1396?
9            A.    That's correct.
10           Q.    And that was required by the
11   purchase order, wasn't it?
12           A.    Yeah.  I think it's required
13   by customs also.
14           Q.    Did you have any document or
15   anything from customs that says that?
16           A.    Says what?
17           Q.    That the requirement of the
18   stamp?
19           A.    I don't know, but I know
20   that customs is the one who will check
21   stuff like this, and they'll hold up your
22   load if it doesn't have the right
23   approval so I'm not sure.
24           Q.    And that stamp would have

Robert Scharf                                    March 24, 2011

135

1    been put on the board at the time it was

2    made, wouldn't it?

3            A.    Yes.   This is done with

4    what's called an in-line printer.   So as

5    they print -- as they run the drywall, as

6    the board goes through, there's an

7    in-line printer there that would print

8    that out.

9            Q.    And we know you placed the

10   order around February 21st of '06.   How

11   long did it take to make all this?

12           A.    Oh, that's a good question.

13   I think they made it in less than a

14   month.   There may be some documentation

15   there of the exact time.

16           Q.    Do you know if production

17   started right around the time the order

18   was placed?

19           A.    Yes.

20           Q.    At the time the stamp was

21   placed on this board, Devon did not have

22   any test reports indicating that it met

23   ASTM 1396, correct?

24                   MS. CALDWELL:   Object to the

Robert Scharf                                    March 24, 2011

136

1              form.   Asked and answered many
2         times.
3                   MR. LAW:   I don't think so.
4                   THE WITNESS:   The only forms
5         that I remember seeing were the
6         ones that were in Chinese.
7    BY MR. LAW:
8         Q.    So the time the drywall --
9    the stamp was placed on the drywall all
10   you had seen was the Chinese report?
11        A.    I was told that they had met
12   ASTM approval.  They had ASTM approval.
13   I was told that by the factory.  And then
14   they gave us whatever they had that was
15   it was in Chinese Julian would have read
16   it to me.  He would say, Bob, this is 60
17   pounds or this is whatever.  So that's
18   what would have happened.
19        Q.    And what you are referring
20   to they gave you was a spec sheet that
21   was in Chinese?
22        A.    Yeah, they are in here
23   someplace.  I know I reviewed them the
24   other day.

Robert Scharf                                    March 24, 2011

163

1    I'm not sure why they didn't take it,

2    NorPac, but they didn't accept it in New

3    Orleans.

4           Q.    Do you know where that half

5    that load ended up going in New Orleans

6    that North Pacific didn't accept?

7           A.    No, I don't, but you'll

8    probably find it.

9           Q.    So the other half of the

10   load is what was sitting on the dock that

11   never shipped, right?

12          A.    That's correct.  It was at

13   the port, yeah, in Qingdao, China, yes.

14          Q.    For all you know it's still

15   sitting there today?

16          A.    Well, it was a year or so

17   after we shipped it was still there.  I

18   know that.

19          Q.    You don't know if it ever

20   made it to the U.S.?

21          A.    I don't know.

22          Q.    Now, was it your

23   understanding from communicating with Mr.

24   Buckley that North Pacific had promised

Robert Scharf                                    March 24, 2011

164

1    some of -- the whole load, the Phoenix
2    load to its customers and when half of it
3    didn't show up they needed drywall pretty
4    fast?
5            A.    No, I don't know that it
6    made a difference.  I don't know whether
7    it made a difference, what I did with
8    them or what they did with Phoenix.  They
9    had -- to my knowledge they had these
10   loads pre-sold, and they wanted to get
11   them out and they wanted to get paid.
12   That's what they wanted.
13           Q.    They had them pre-sold to
14   North Pacific customers?
15           A.    North Pacific had them
16   pre-sold, and they wanted to get it off
17   the boat and they wanted to get it out to
18   their customers.
19           Q.    Exhibit-31 -- and before we
20   get into that, was there a shortage of
21   domestic drywall around this time in '06?
22           A.    There was.
23           Q.    That's kind of what prompted
24   you to go to China and get a better price

Robert Scharf                                      March 24, 2011

165

1    on drywall, wasn't it?

2            A.      It did.

3            Q.      Basically you saw an

4    opportunity in a tough market to bring

5    some Chinese drywall in to make a profit,

6    didn't you?

7            A.      They saw it and I went and

8    did it, yes.

9            Q.      Do you know why North

10   Pacific didn't go over there themselves

11   and go straight to the factory?

12           A.      They didn't want to deal

13   with China directly.  I know that.  I'm

14   not sure why.  I think they didn't want

15   to have to pay for it before they got it.

16           Q.      I'm going to show you

17   Exhibit-31, and for the record I skipped

18   it earlier.  We're going to go back to

19   31.  You got two copies there.

20           A.      I think you just gave me

21   this now.

22           Q.      Let your attorney take a

23   quick look at it if you will.

24           A.      He's not my attorney.

Robert Scharf                                    March 24, 2011

166

1      Q.      That's right.  Let Devon's
2  attorney look at it.
3      A.      Thank you.
4      Q.      And again, the sequence it
5  starts on page number two and the first
6  E-mail from Mr. Buckley to you.
7              In the first E-mail Mr.
8  Buckley is asking you what the sheets
9  look like and if each sheet has the stamp
10 stamped on it.  Is that right?
11     A.      That's correct.
12     Q.      Did you ever look at any
13 U.S. drywall to see if each U.S. sheet
14 had an ASTM stamp on it?
15     A.      Not really.  I've never been
16 in the drywall business.  It's not
17 something --
18     Q.      I understand.  And when Mr.
19 Buckley would ask you these questions
20 such as is the stamp on every board,
21 would you go back to the factory and try
22 to find out?
23     A.      That's exactly what I did.
24     Q.      So this is your first rodeo

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 617 of 647
Case 1:11-cv-22408-MGC Document 27 Entered on FLSD Docket 08/15/2019 Page 565 of 595

1   here?

2          A.     That's correct.

3          Q.     All right.  So he asked you

4   if it's on each board, and you said in

5   response, I don't think so.  I don't

6   think it's required for half inch.  But

7   you then went back to the factory, didn't

8   you, to find out if it was on each board?

9          A.     Well, they would put it on

10  each board.

11         Q.     And Mr. Buckley told you in

12  response that the ones he had seen said

13  meets ASTM requirements on the paper

14  edges.  Now, that would be U.S.

15  drywall --

16         A.     Well, I don't believe any

17  Chinese drywall puts anything on the

18  edges.

19         Q.     And that's talking about the

20  little tape around the --

21         A.     That they pull off.  That

22  would have the manufacturer on it and it

23  would have the standards.

24         Q.     Now, the little tape around

Robert Scharf                    March 24, 2011

168

1   the Chinese drywall didn't have anything

2   on it, did it?

3          A.    I don't believe it did.

4          Q.    And you in response told him

5   in the middle of the page on your E-mail

6   I will request it be stamped?

7          A.    Right.

8          Q.    And you actually went back

9   to the factory and told them stamp it on

10  every board, didn't you?

11         A.    Actually, print it is really

12  better than the word stamped.

13         Q.    I agree.  So you went back

14  to the factory and asked if they have the

15  meets or exceeds printed on every board?

16         A.    Yeah, I probably said

17  stamped, but it should have said printed.

18         Q.    Just make clear --

19         A.    It's a print.  I showed you

20  how they do that.  It's just an in-line

21  printer.

22         Q.    Did you ever watch them

23  print that on the boards out of the

24  in-line printer?

Robert Scharf                                    March 24, 2011

                                                          169

1          A.    I've seen the in-line
2  printers work in a lot of products.  My
3  guess is I saw it over there, but I'm not
4  sure.
5          Q.    But after Mr. Buckley told
6  you to have it printed on the board, you
7  went back to the factory and told them to
8  print --
9          A.    We have to have it on each
10 board and they said it's not a problem.
11         Q.    And then also Mr. Buckley
12 noted that would help North Pacific sell
13 it, didn't he?
14         A.    Yeah, that's what he said.
15         Q.    He actually wanted it not to
16 just say meets ASTM but to actually add
17 the words or exceeds?
18         A.    Yes, but I think that's
19 pretty much a standard terminology on
20 products with ASTM.  I think most of them
21 say meets or exceeds ASTM standards.
22         Q.    Is that why you had asked
23 the factory to put the or exceeds on the
24 boards?

Robert Scharf                                    March 24, 2011

170

1        A.    No, I don't think I asked
2   them to put it -- or maybe I did if
3   that's what Jay wanted, but I think they
4   already had the in-line printer and they
5   had the printing set up for it.
6        Q.    And Jay sent you some
7   pictures of some U.S. stamps as an
8   example.  I'm going to show you
9   Exhibit-34.  Is that Mr. Buckley
10  E-mailing you some pictures of the stamp
11  so you could take it to the factory and
12  tell them what to put on it?
13       A.    I don't see the stamp.
14       Q.    Well, the pictures are
15  attached.  You'll see attachments.  I
16  don't have the actual pictures.  They
17  weren't produced, but the E-mail refers
18  to attachments, and you'll see it's got
19  the little attachment.
20       A.    Yeah, so I don't know.
21       Q.    Was it your understanding or
22  at least does the E-mail indicate that
23  Mr. Buckley E-mailed you some pictures of
24  some examples that you could take to the

Case 2:09-cv-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 621 of 647
Case 1:11-cv-22408-MGC Document 277 Entered on FLSD Docket 09/15/2015 Page 569 of
595

Robert Scharf                                    March 24, 2011

171

1    factory and show it to them?

2           A.     Yes.

3           Q.     That point in time marks the

4    order had already been placed, doesn't

5    it?

6           A.     March 23rd.  When did it

7    ship?  Do you know?

8           Q.     I think you told me the

9    order was placed around February 21st of

10   '06, and I believe the records indicate

11   it shipped on May 12th?

12          A.     Oh, May.  It probably wasn't

13   made yet then.

14          Q.     Didn't you tell me earlier

15   that it had been made when we saw the

16   E-mail around February 21st of 2000 --

17          A.     I think that's when we

18   ordered it.  I ordered it the week of

19   February 20th in China.

20          Q.     And then you came home and

21   went back to China when they started

22   making it?

23          A.     No.  I went there, saw the

24   factory, came home, went back three weeks

Robert Scharf                                    March 24, 2011

172

1   later, ordered it, came back and I think
2   I went back when they were shipping it.
3   Then I went to the port.
4           Q.      So you communicated during
5   this time with Mr. Chu who was in China?
6           A.      That's correct.
7           Q.      And then Mr. Chu would go to
8   the factory and communicate with them?
9           A.      I believe so.
10          Q.      I'm going to show you
11  exhibit number 35.  Then what I'm going
12  to ask you about is this E-mail down here
13  from Jay Buckley to you Mr. Scharf, and
14  he said pictures of the stamp they are
15  putting on it will work just fine.  So
16  you all had some pictures sent to Mr.
17  Buckley for him to look at and see if the
18  stamp is what he wanted on the board?
19          A.      Yeah, we have that picture
20  in here.
21          Q.      And I was going to ask about
22  that.  That's photograph 29 that depicts
23  the stamp?
24          A.      Yeah.

# Tab #61

Message                                                          Page 1 of 2

## Fred Pond

**From:**      Jay Buckley
**Sent:**      Thursday, January 26, 2006 11:44 AM
**To:**        'Bob Scharf'
**Subject:** RE: NEED

WE GOT THE COMMITTMENT THIS MORNING FOR 600 CONTAINERS(SUBJECT TO EVERYTHING BEING AS WE ARE TELLING THEM). MONEY APPROVED AND ALL. HOPEFULLY WILL GET GO AHEAD FOR 1000 CONTAINERS NEXT WEEK.
MORE GOOD NEWS IN THAT IF EVERYTHING GOES GOOD ON THE APRIL-MAY DELIVERIES, THEY WILL REPEAT FOR AUG-SEPT DELIVERY.
I AM HYPERVENTILATING.

> -----Original Message-----
> **From:** Bob Scharf [mailto:bscharf@devonintl.com]
> **Sent:** Thursday, January 26, 2006 11:38 AM
> **To:** Jay Buckley
> **Subject:** FW: NEED
>
> drywall or plywood
>
> **From:** Jay Buckley [mailto:jbuckley@northpacific.com]
> **Sent:** Thursday, January 26, 2006 12:36 PM
> **To:** Bob Scharf
> **Cc:** Ruth Wu
> **Subject:** RE: NEED
>
> I ALSO NEED PRICING ON  REGULAR 5/8" AND FIRERATED 5/8" IN 4 X 8 - 10 - 12' TO PUT ON THE SHIP THAT GOES TO HOUSTON FOR VINCE.
>
> > -----Original Message-----
> > **From:** Bob Scharf [mailto:bscharf@devonintl.com]
> > **Sent:** Thursday, January 26, 2006 10:08 AM
> > **To:** Jay Buckley
> > **Cc:** Ruth Wu
> > **Subject:** RE: NEED
> >
> > thanks we have started working on list will get answers asap
> >
> > **From:** Jay Buckley [mailto:jbuckley@northpacific.com]
> > **Sent:** Thursday, January 26, 2006 11:00 AM
> > **To:** robertscharf@aol.com; Bob Scharf
> > **Cc:** Ruth Wu
> > **Subject:** NEED
> >
> > NEED THE FOLLOWING INFO FOR ONE OF THE BIG BUYERS OF THE BOATS OF DRYWALL:
> > 1- # SHEETS PER BUNDLE ( both 4 x 8  and 4 x 12 )
> > 2- CONFIRM THAT WEIGHT IS 1.95 LB PER SY FOOT .( THIS MUST BE ACCURATE )
> > 3- ARRIVAL DATES –APPROXIMATE
> > 4- CERTIFICATE OF FORMALDEHYDE EMISSION
> > 5- SPECIFICATION SHEET
> > 6- HAVE HAD VOIDS IN BOARD IN PAST SHIPMENTS FROM CHINA. NEED ASSURANCE THIS WILL NOT BE THE CASE.
> > 7- MUST HAVE SAMPLES OF ACTUAL PRODUCT
> > 8- IF POSSIBLE NEED COPY OF STAMP THAT WILL BE ON EACH SHEET FOR (EQUAL TO OR EXCEEDS ASTM) OR YOUR EQUILAVENT.

12/29/2006

NP 0017

EXHIBIT
4
3/24/11 _bc_

PENGAD 800-631-6989

Page 2 of 2

Message

WE ARE HAVING COMPUTER PROBLEMS, PLEASE CONFIRM RECEIPT OF THIS AND NEED
THE ANSWERS AS DETAILED AS POSSIBLE AND AS SOON AS POSSIBLE. THEY ARE
HAVING ANOTHER MEETING ON THIS MONDAY NEXT WEEK. THESE PEOPLE ARE A  2 1/2
BOAT BUYER. A LOT OF THEIR QUESTIONS WE WERE ABLE TO ANSWER ALREADY. NEED
YOUR HELP ON THE ABOVE.

THANKS

NP 0018

12/29/2006

# Tab #62


North Pacific

SOUTHERN
P. O. Box 391
Waynesboro, MS 39367
Tel 601-735-5051
Fax 601-735-2602
www.northpacific.com

## PURCHASE ORDER

403000165924

Order Date: 02/08/06
Account #: DEVON001
Branch/Division: 40301001
Phone #: (610)265-8000
Fax #:
Page: 1 of 1

**VENDOR:**

Devon International Trading Inc
1100 1st Ave Ste 100
King of Prussia PA 19406

**SHIP TO:**

North Pacific Group
TBD
( ) -

ALL PURCHASES ARE SUBJECT TO THE GENERAL TERMS AND CONDITIONS OF PURCHASE ORDER POSTED ON OUR
WEBSITE (WWW.NORTHPACIFIC.COM/ECOM/TERMS.HTML), WHICH TERMS AND CONDITIONS ARE BY THIS REFERENCE
INCORPORATED HEREIN. A PRINTED COPY OF THE TERMS AND CONDITIONS IS ALSO AVAILABLE ON REQUEST.

| Exp. Ship Date: 03/20/06 | Ship Via: Vessel | Frt Term: DestPort/CIF |
| Ref. #: CHINA IMPORT | Conf. By: SCHARF | Buyer: JBuckley |
| Vessel/Container: | Verbal P.O. #:SCHARF | |

| QUANTITY | UOM | ITEM / DESCRIPTION | PRICE / UOM | EXTENDED AMOUNT |
|---|---|---|---|---|
| 485044 | PC | BGWGYAAA120504     1/2 4x12 | 177.00  /MSF | 4,120,933.82 |
| | | Gypsum Drywall A Grade | | |
| | | PRODUCT DELIVERED TO DRY STORAGE AREA FOR 30 | | |
| | | DAY FREE PICK UP. | | |
| | | MUST HAVE STAMP THAT THIS PRODUCT MEETS OR | | |
| | | EXCEEDS NORTH AMERICAN ASTM STANDARDS AND | | |
| | | MATCH PREVIOUSLY AGREED UPON SAMPLES. | | |
| | | NOR PAC IS NOT RESPONSIBLE FOR ANY DAMAGED | | |
| | | PRODUCT AND/OR LATE SHIPMENTS. | | |
| | | # OF PIECES ARE APPROXIMATE. | | |
| | | PORT DESTINATION IS TO BE PENSACOLA,FL. | | |
| | | PRODUCT MUST BE FREE OF MOISTURE AND MOLD. | | |
| | | Quantities are approximate | | |
| | | ALL THE ABOVE SUBJECT TO APPROVAL AT PORT IN | | |
| | | PENSACOLA, FL | | |
| | | ACTUAL THICKNESS IS 12.7MM. | | |
| | | | SUBTOTAL: | 4,120,933.82 |
| | | THANK YOU FOR THE ORDER! | | |

EXHIBIT
28
3/24/11 qc
PENGAD 800-631-6989

DEVON 07223

**TERMS:** Net 10 days AA of car/truck

**TOTAL:** $4,120,933.82

**PLEASE SIGN AND RETURN:**

PLEASE INDICATE THAT YOU HAVE ACCEPTED THIS PURCHASE ORDER, INCLUDING ITS GENERAL TERMS AND CONDITIONS, BY SIGNING ABOVE AND
RETURNING A SIGNED COPY TO NORTH PACIFIC GROUP, INC., BY FACSIMILE OR MAIL. IF YOU DO NOT SIGN AND RETURN THIS PURCHASE ORDER, PLEASE
SEE THE PROVISIONS OF THE GENERAL TERMS AND CONDITIONS DEALING WITH ACCEPTANCE. CURRENCY IN U.S. FUNDS UNLESS OTHERWISE NOTED.
THIS CERTIFIES THAT THE SELLER WILL ENSURE THAT THE LADING WILL BE PROPERLY LOADED, BLOCKED AND BRACED FOR SAFE TRANSPORTATION.

# Tab #63

# Bob Scharf

| | |
|---|---|
| **From:** | Jay Buckley [jbuckley@northpacific.com] |
| **Sent:** | Wednesday, March 22, 2006 6:47 PM |
| **To:** | Bob Scharf |
| **Subject:** | RE: DRYWALL |

Will let you know more tomorrow.

-----Original Message-----
From Bob Scharf [mailto:bscharf@devonit.com]
Sent: Wednesday, March 22, 2006 11:47 AM
To: Jay Buckley
Subject: Re: DRYWALL

Just tell me what you and I'll make it work
-----Original Message-----
From "Jay Buckley" <jbuckley@northpacific.com>
Date: Wed, 22 Mar 2006 14:31:25
To:"Bob Scharf" <bscharf@devonintl.com>
Subject: RE: DRYWALL

FRANK IS MORE INTERESTED IN A SMALLER VESSEL ON THE NEXT ONE. THEN WE CAN SEND TO MORE
AREAS WITH SMALLER VESSELS. MAY NEED A SMALL ONE TO
MOBILE, MANATEE, FL, WILMINGTON, NC, CAMDEN, NJ, HOUSTON, TX. BUT 1000 TRUCKS TO EACH LOCATION IS
TO MUCH. LET ME KNOW WHAT YOU CAN DO.

-----Original Message-----
From Bob Scharf [mailto:bscharf@devonintl.com]
Sent: Wednesday, March 22, 2006 2:43 PM
To: Jay Buckley
Subject: RE: DRYWALL

I will request the board be stamped

-----Original Message-----
From Jay Buckley [mailto:jbuckley@northpacific.com]
Sent: Wednesday, March 22, 2006 3:44 PM
To: Bob Scharf
Subject: RE: DRYWALL

The ones we have seen has "meets astm requirements" printed on the paper edges. Please
have someone check with the chinese on ours. Not a problem one way or the other but will
help us in selling it. thanks

-----Original Message-----
From Bob Scharf [mailto:bscharf@devonintl.com]
Sent: Wednesday, March 22, 2006 2:26 PM
To: Jay Buckley
Subject: RE: DRYWALL

I don't think so   but I'm not sure   I don't think its required for 1/2

-----Original Message-----
From Jay Buckley [mailto:jbuckley@northpacific.com]
Sent: Wednesday, March 22, 2006 3:07 PM
: Bob Scharf
Subject: RE: DRYWALL

IS IT ACTUALLY STAMPED ON THE BOARD SOMEWHERE???



DEVON 07125

1

000649

-----Original Message-----
From Bob Scharf [mailto:bscharf@devonit.com]
Sent: Wednesday, March 22, 2006 9:00 AM
To: Jay Buckley
Subject: Re: DRYWALL


How about a certificate
-----Original Message-----
From "Jay Buckley" <jbuckley@northpacific.com>
Date: Wed, 22 Mar 2006 11:10:06
To:<robertscharf@aol.com>, <bscharf@devonintl.com>
Subject: DRYWALL


"MEETS OR EXCEEDS ASTM STANDARDS"
IS THIS STAMPED ON EVERY SHEET AND IS IT STAMPED ON THE PAPER OR THE BOARD?
CAN WE GET A DIGITAL PICTURE SENT TO ME OF THE ACTUAL STAMP?

000650

DEVON 07126

# Tab #64

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 632 of 647
Case 1:11-cv-22408-MGC Document 27 Entered on FLSD Docket 09/15/2019 Page 580 of
595

Message                                                              Page 1 of 1

## Bob Scharf

| **From:** | Jay Buckley [jbuckley@northpacific.com] |
| **Sent:** | Thursday, March 23, 2006 3:38 PM |
| **To:** | Bob Scharf |
| **Subject:** | FW: ASTM Standard Pictures |
| **Attachments:** | DSCF0450.JPG; DSCF0451.JPG; DSCF0452.JPG; DSCF0453.JPG; DSCF0454.JPG |

**Subject:** FW: ASTM Standard Pictures

WE HAVE HAD SOME FOLKS TO ASK IF THE DRYWALL IS STAMPED, WITH ASTM STANDARDS, BELOW
IS THE PICTURES, THE FIRST ATTACHMENT HAVE THE FULL STATEMENT AND THE OTHER FOUR
CONTAIN PARTS OF THE FIRST ATTACHMENT, LOOKING AT THE FIRST ONE, DEPENDING ON YOUR
COMPUTER, IF YOU ZOOM INTO ABOUT 100% TO 125% YOU CAN SEE THE STAMP IN ITS ENTIRETY,
MIGHT HAVE TO SCROLL TO THE RIGHT TO SEE WHOLE STAMP



EXHIBIT
34
3/24/11 ec

000648

DEVON 07124

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 633 of 647
Case 1:11-cv-22408-MGC Document 27 Entered on FLSD Docket 08/15/2019 Page 581 of
595

Message                                                                Page 1 of 1

## Bob Scharf

| | |
|---|---|
| **From:** | Jay Buckley [jbuckley@northpacific.com] |
| **Sent:** | Thursday, March 23, 2006 3:38 PM |
| **To:** | Bob Scharf |
| **Subject:** | FW: ASTM Standard Pictures |
| **Attachments:** | DSCF0450.JPG; DSCF0451.JPG; DSCF0452.JPG; DSCF0453.JPG; DSCF0454.JPG |

**Subject:** FW: ASTM Standard Pictures

WE HAVE HAD SOME FOLKS TO ASK IF THE DRYWALL IS STAMPED, WITH ASTM STANDARDS, BELOW
IS THE PICTURES, THE FIRST ATTACHMENT HAVE THE FULL STATEMENT AND THE OTHER FOUR
CONTAIN PARTS OF THE FIRST ATTACHMENT, LOOKING AT THE FIRST ONE, DEPENDING ON YOUR
COMPUTER, IF YOU ZOOM INTO ABOUT 100% TO 125% YOU CAN SEE THE STAMP IN ITS ENTIRETY,
MIGHT HAVE TO SCROLL TO THE RIGHT TO SEE WHOLE STAMP

000648

DEVON 07124

# Tab #65



Devon - 00452

# Tab #66



MADE IN CHINA   MEET OR EXCEEDS ASTM C1396 04 STANDARD

Case 2:09-md-02047-EEF-MBN Document 22297-10 Filed 12/09/19 Page 638 of 647
Case 1:11-cv-22408-MGC Document 27-8 Entered on FLSD Docket 09/15/2019 Page 586 of
595



MADE IN CHINA MEET OR EXCEEDS ASTM C1396 04 STANDARD

# Tab #67

Case 2:09-md-02047-EEF-MBN Document 22397-10 Filed 12/09/19 Page 640 of 647
Case 1:11-cv-22408-MGC Document 27 Entered on FLSD Docket 09/15/2011 Page 588 of 595
Salomon H. Abadi

Page 1

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


                              X
IN RE:                        X   MDL No. 2047
CHINESE-MANUFACTURED          X
DRYWALL PRODUCTS              X   SECTION: L
LIABILITY LITIGATION          X
                              X   JUDGE FALLON
This document applies X
to all cases                  X   MAG. JUDGE WILKINSON



30(b)(6) VIDEOTAPED DEPOSITION OF
LA SUPREMA ENTERPRISE, INC. and
LA SUPREMA TRADING, INC., by and through
SALOMON H. ABADI
Monday, October 19, 2009




GOLKOW TECHNOLOGIES, INC.
ph 877.370.3377  |  fax 917.591.5672
deps@golkow.com

Salomon H. Abadi

```
                                               Page 17
  1                  (The Interpreter and Witness
  2           were sworn by the reporter.)
  3                  SALOMON H. ABADI,
  4     Having taken an oath to tell the truth, the
  5     whole truth, and nothing but the truth, was
  6     examined and testified as follows:
  7                       EXAMINATION
  8     BY MR. GONZALEZ:
  9           Q.     I understand you speak some
 10     English.
 11           A.     Yes, some.
 12           Q.     All right.  It's important that
 13     you allow the interpreter to translate first
 14     before you answer, even if you understood the
 15     question.
 16           A.     Okay.  It will be like that.
 17           Q.     It will make it go smoother.
 18           A.     Okay.
 19           Q.     Tell us your name.
 20           A.     Salomon Abadi.
 21           Q.     By whom are you employed?
 22           A.     La Suprema Enterprise.
 23           Q.     In what capacity?
 24           A.     I am the owner.
```

Salomon H. Abadi

Page 105

1    to the drywall.

2              MR. HAYDEN:  And just so I'm

3         clear, because we're going back to

4         Knauf again, KPT, right?

5              MR. GONZALEZ:  Knauf Tianjin.

6         A.    99.999 percent was dispatched

7    to all of the Banner yards, Banner Supply

8    yards.  And a little bit was dispatched to

9    84 Lumber in Fort Myers.

10   BY MR. GONZALEZ:

11        Q.    What year for each, please?

12   Specifically what years for Banner.

13        A.    2006.

14        Q.    And what about for lumber,

15   84 Lumber?

16        A.    The same.

17        Q.    2006?

18        A.    Yes.

19        Q.    Did 84 Lumber make a complaint

20   to you about the quality of the drywall made

21   by Knauf Tianjin that you sold it?

22        A.    No.  Oh, forgive me.  I need to

23   go to the boys' room one minute.

24        Q.    Sure, absolutely.

Salomon H. Abadi

Page 106

```
 1                THE VIDEOGRAPHER:  Going off
 2          the record, it's 2:29.
 3                (Recess taken, 2:29 p.m. to
 4          2:37 p.m.)
 5                THE VIDEOGRAPHER:  Please hold.
 6          We're back on the record.  The time is
 7          2:37.
 8   BY MR. GONZALEZ:
 9          Q.    How much product did you --
10   when I say "product," I'm talking about the
11   drywall -- did you purchase from China from
12   the Beijing company and Pingyi Baier as
13   opposed to Knauf?
14          A.    He's got his -- you have the
15   documents.
16          Q.    I do.  Right.  What's your
17   understanding, if you were going to say
18   percentagewise and there's three entities,
19   BNB or Beijing, Pingyi Baier and Knauf, more
20   or less?
21          A.    More or less about -- a little
22   bit more than 50 -- a little bit more than
23   50% was purchased from Knauf.  One could say
24   that about 30% was -- from whatchamacallit,
```

Salomon H. Abadi

```
1     from Beijing Building Materials, and the
2     other 20 from Pingyi Baier.  That's -- well,
3     I don't know.  I'm guessing here.
4            Q.    An educated estimate?
5            A.    Give-and-take, yeah.
6            Q.    Okay.  What distinguishing
7     marks does the Pingyi Baier drywall have on
8     it?
9            A.    None.
10           Q.    Does it say "Pingyi Baier" on
11    it?
12           A.    No.
13           Q.    Does it say "Chinese Drywall"?
14           A.    No.
15           Q.    It has no markings on it at
16    all?
17           A.    Not that I recall.
18           Q.    How about the Beijing product,
19    Beijing Materials?
20           A.    What about it?
21           Q.    What distinguishing marks does
22    it have?
23           A.    None.
24           Q.    It doesn't say BNB, BMB or
```

Salomon H. Abadi

Page 108

1    Beijing Materials?

2         A.    It doesn't say -- it doesn't

3    say anything.

4         Q.    How about Knauf?  Knauf?

5         A.    Knauf has its -- its

6    whatchamacallit -- its Knauf label.

7         Q.    Okay.  Now, in 2006, do you --

8    I'm going to ask you, there's a long list of

9    companies here and I'm going to ask you which

10   ones you remember La Suprema selling to.

11              AC-1 Building, do you remember

12   that?

13        A.    Yes.

14        Q.    Did you sell to them?

15        A.    Yes.

16        Q.    What year did you sell Chinese

17   drywall to them?

18        A.    I believe we could simplify.

19   Everything was sold in 2006.

20        Q.    Okay.  Let's do it that way.

21   I'll ask -- I'm going to give you this

22   preface so that you'll know that it's the

23   same question, and the question for all of

24   these will be, do you remember selling

Salomon H. Abadi

Page 109

1    Chinese drywall to the following companies in

2    2006?

3            A.      That's fine.

4            Q.      AC 1 Building.

5            A.      Yes.

6            Q.      All Steel?

7            A.      Yes.

8            Q.      Banner Miami?

9            A.      Yes.

10           Q.      Banner Fort Myers?

11           A.      Yes.

12           Q.      Banner Pompano?

13           A.      Yes.

14           Q.      Banner Port St. Lucie?

15           A.      Yes.

16           Q.      Banner Supply Company Tampa?

17           A.      Yes.

18           Q.      Black Bear Gypsum?

19           A.      Yes.

20           Q.      Cape Cement and Supply?

21           A.      Yes.

22           Q.      Cape Cement and Supply Company?

23    May be the same one.

24           A.      Well, it's the same, yes.

# Tab #68

# FILED UNDER SEAL