IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| EDUARDO AND CARMEN AMORIN, *et al.*, individually, and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>TAISHAN GYPSUM CO., LTD. f/k/a SHANDONG TAIHE DONGXIN CO., LTD.; TAIAN TAISHAN PLASTERBOARD CO., LTD., *et al.*,<br><br>    Defendants. | Case No. 1:11-CV-22408-MGC |

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR OBJECTIONS TO AND APPEAL FROM THE SPECIAL MASTER'S REPORT AND RECOMMENDATION REGARDING PRODUCT ID CATEGORIES ATTRIBUTABLE TO TAISHAN GYPSUM CO., LTD.**

EXHIBIT 8 to Memorandum of Law in Support of Class Settlement

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................. 1

II. THERE IS NO DEFERENCE GIVEN WITH *DE NOVO* REVIEW ..................... 3

III. DEFENDANT MISCHARACTERIZES THE THRUST OF
PLAINTIFFS' OBJECTIONS ................................................................................ 3

IV. TAISHAN'S ARGUMENTS, INTENDED TO DEFLECT
RESPONSIBILITY TO "OTHER MANUFACTURERS,"
ARE BASELESS .................................................................................................. 6

    A. Taishan's "Other Manufacturer" Argument Ignores the
       Findings of the CPSC ............................................................................. 7

    B. There is No "Admission" in Plaintiffs' Pleadings that Benefits
       Taishan ................................................................................................... 7

    C. Taishan's Chemical Analysis Defense is a Fiction ...................................... 8

V. SPECIFIC PRODUCT ID CATEGORIES ............................................................. 9

VI. CONCLUSION ................................................................................................... 10

I.    **INTRODUCTION**

In its Response to Plaintiffs' Objections[1] to the Special Master's Product ID Report and Recommendation, Defendant Taishan does not, because it cannot, contest the most salient point that summarizes the Product ID determinations at issue – the Special Master only found Taishan liable for a given Product ID marking when Taishan had admitted it manufactured boards with those markings.[2] Contrary to Defendant's misdirected credibility arguments,[3] Plaintiffs' Objections are directed at the Special Master's erroneous application of an evidentiary burden that can ultimately only be satisfied with an admission by one party.

Taishan calls into question the genuineness of the critique of the Special Master's ruling because Plaintiffs did not object to any of the Product ID rulings that favored Plaintiffs.[4] It argues Plaintiffs are "purely results-oriented" claiming that the Special Master "got everything wrong except for where she attributed certain denied markings to Taishan";[5] and "asserting error where [she] was unpersuaded by Plaintiffs' evidence, but welcoming her conclusions when they align with Plaintiffs' goals."[6] Of course, because the only Product ID

---

[1] *See* Plaintiffs' Objections to and Appeal form the Special Master's Report and Recommendation Regarding Product ID Categories [ECF No. 253] ("Objections"). The Special Master's Product ID Report & Recommendation [ECF No. 233] will be referred to herein as "SM PID R&R."

[2] *See generally* Defendant Taishan's Response to Plaintiffs' Objections [ECF No. 277] ("Def.'s Obj. Resp."). Of the seven contested photos within Product ID categories I ("Meet[s] or Exceed[s]") and J ("Drywall with Dimensions")), the Special Master found the Plaintiffs met their burden of showing attribution on only two that were contested by Taishan and that was because (1) the pictures of one were *identical* to pictures that were *admitted* by Defendant and (2) the wording on the second was the same as that listed in Defendant's Manufacturer Profile Form, *i.e.*, Taishan *admitted* the language. *See* SM PID R&R [ECF No. 233] at 9.

[3] *See, e.g.*, Defs.' Obj. Resp. [ECF No. 277] at 4-5 (Taishan claims Plaintiffs Objections are an "attack" by Plaintiffs on the Special Master's "credibility" and "an insult to [her] considered conclusions."). Clearly, Plaintiffs are not attacking the Special Master but instead challenging her rulings.

[4] Specifically, Plaintiffs objected to the Special Master's findings with respect to C&K, IMT Gypsum, ProWall, Meet[s] or Exceed[s] with respect to the findings regarding Photos 18, 19, and 21, Dimensions with respect to the findings regarding Photos 6, 7, 8, 10 and 11, and White Edge Tape. Plaintiffs raised specific objections to the Special Master's analysis impacting on all PID categories (ECF No. 253 at 5-11) and specific objections individual to each PID category (*id.* at 11-20).

[5] Def.'s Obj. Resp. [ECF No. 277] at 1. The only two markings that Taishan denied, which the Special Master found attributable, the two described in footnote 2, *supra*, were implicitly admitted.

[6] *Id.* at 1.

1

categories that the Special Master found attributable to Taishan were based on a Taishan admission, there would be no need for Plaintiffs to challenge those findings.

Equally confusing is Defendant's refrain that Plaintiffs are simply seeking to relitigate matters using the same arguments that were considered and rejected by the Special Master. That is precisely what the Objections are intended to accomplish. *See* Fed. R. Civ. P. 53(f)(3)(4). The standard of review on objections to the findings of fact and conclusions of law in a Special Master's report and recommendation is unquestionably *de novo*, meaning that it is the Court's role to reconsider and reweigh the evidence based upon the specific objections of the objecting party. *See United States v. Williams*, 340 F.3d 1231, 1237 (11th Cir. 2003). Taishan's suggestion that the Court should give deference to the Special Master's legal and factual conclusions flies directly in the face of the governing legal standard. *Id*.

Most importantly, Defendant once again challenges the only conclusion that can be reasonably drawn from the facts in this litigation – there were only two (2) manufacturer groups of defective drywall, Taishan and Knauf. Judge Fallon made this finding repeatedly (over 27 times according to the Defendant[7]), *see, e.g., In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 2018 WL 279629, at *1 (E.D. La. Jan. 2, 2018) ("The Chinese drywall at issue was largely manufactured by two groups of defendants: (1) the Knauf Entities and (2) the Taishan Entities."), and the Consumer Product Safety Commission ("CPSC") has said so as well.[8] In its Response, Taishan continues its effort to confuse by conflating manufacturers of ***drywall*** with manufacturers of ***defective drywall***.[9] The only support Taishan offers for the presence of potentially additional manufacturers of defective drywall (some of whom were not foreign) is allegations in Plaintiffs' early Complaints *before* discovery, allegations that were

---

[7] Def.'s PID Brief [ECF No. 253-4], *filed under seal*, at 4 n.3.

[8] The CPSC Report names 10 manufacturers of defective drywall but, other than Knauf, all are Taishan entities. For a further discussion see Plaintiffs' Objections at 3 n.9. In footnote 9, Plaintiffs mistakenly cited to Tab 27 of Pls.' PID Brief as the relevant CPSC Report. However, the CPSC Report is in the record as Tab 15 to Def.'s PID Brief and attached hereto as Exhibit "A." As BNBM and Taishan are a single business entity under Florida law (ECF No. 122 at 3), they will be referred to collectively herein as Taishan. In addition, C&K was under the control of CNBM beginning in 2004. Following CNBM's Global Offering, the Group Corporation reorganized, moving all manufacture of drywall to BNBM and its subsidiaries. Ultimately, C&K declared bankruptcy in 2009 and its assets were bought by BNBM. Pls.' Obj. [ECF 253] at 3 n.9.

[9] *See* Def.'s Obj. Resp. [ECF No. 277] at 5-7.

2

subsequently abandoned once additional information surfaced. Contrary to Defendant's assertion, these allegations are not "admissions," nor are they evidence in this case. Indeed, as it became apparent that these entities did not produce reactive drywall, Plaintiffs made no efforts to advance the litigation against them. Given the established findings by the MDL Court and the CPSC, it is reasonable to presume that if a given board of **defective** Chinese drywall is not Knauf board,[10] it was manufactured by Taishan.

Finally, Taishan proceeds through the specific Product ID categories ignoring, among other things, Plaintiffs' photographs evidencing that certain markings are attributable to Taishan, thus demonstrating why the Special Master's findings were incorrect.

## II. THERE IS NO DEFERENCE GIVEN WITH *DE NOVO* REVIEW

Addressing a Special Master's report and recommendation, Rules 53(f)(3) and (4) of the Federal Rules of Civil Procedure state, respectively, that "the court must decide *de novo* all objections to findings of fact," and "must decide *de novo* all objections to conclusions of law." Fed. R. Civ. P. 53(f)(3)(4); *see also United States v. 10.0 Acres Of Land*, 2010 WL 4387559, at *1 (S.D. Fla. Sept. 3, 2010). *De novo* review "requires [the court] to look at a question as if [they] are the first court to consider it." *United States v. Williams*, 340 F.3d at 1237 (11th Cir. 2003). As the Eleventh Circuit clearly stated: "Put simply, it is definitionally impossible to give deference of any sort to a decision being reviewed *de novo*."

Yet, Defendant's Response repeatedly seeks to impermissibly afford the Special Master's determination that very deference. Defendant argues that Plaintiffs should be foreclosed from repeating arguments that were rejected by the Special Master or that the Court should refrain from reweighing the evidence. This is clearly wrong and should be rejected.

## III. DEFENDANT MISCHARACTERIZES THE THRUST OF PLAINTIFFS' OBJECTIONS

Plaintiffs' Objections are focused on (1) the impermissible application of the standard of proof applied by the Special Master, (2) overarching issues that the Special Master

---

[10] Unlike Taishan, whose drywall labeling varied order to order, Knauf board was uniformly labeled and readily identified. *See* MDL PTO 10, Photo Catalog, available at http://www.laed.uscourts.gov/sites/default/files/drywall/images/DrywallMarkings/09_KNAUF_TIANJIN.pdf. That the Plaintiffs' Omnibus Complaint raised *allegations* against other drywall manufacturers is further explained by the MDL plaintiffs' efforts to preserve the statute of limitations for homeowners who were unable to immediately identify the manufacturer of their drywall.

3

impermissibly failed to address, including direct photographic evidence, and (3) specific findings as to each Product ID category that are incorrect because the standard of proof applied was too great.

*Application of the Burden of Proof*. While the Special Master used the phrase "greater weight of the evidence," that standard was applied in such a way that the Plaintiffs could never meet it absent an explicit or implicit admission by Taishan. Whether Defendant believes the Special Master considered other evidence or the Special Master cited a deposition transcript along the way,[11] *the results of the analysis speak for themselves*. Because it was purportedly a "weighing" of evidence, the Special Master's PID R&R suggests that absent a Taishan admission, none of the evidence presented by Plaintiffs' (including direct photographic evidence) was able to get to the so-called 51% threshold required to tip the scales in favor of finding attribution.

And, to the extent the Special Master's findings were the result of a "weighing" of evidence, that "weighing" was not articulated in the SM's PID R&R. In fact, in many instances, the Special Master does not provide an analysis of the evidence to explain how she arrived at her findings.[12] And that includes numerous instances, cited in Plaintiffs' Objection, where there was clear evidence that illustrated a given marking should be attributable to Taishan, *i.e.*, in Category I ("Meet[s] or Exceed[s]") where the Special Master relied upon the testimony of Taishan's Rule 30(b)(6) witness who claimed there was no evidence that Taishan did not use the plural "Meets" with an "s" to find that certain markings were not attributable to Taishan when there was direct photographic evidence of boards with admitted Taihe (Taishan) edge tape on the same board containing markings with the plural "Meets."[13] Similarly, the Special Master relied upon Taishan's testimony that Defendant could not locate any records[14] indicating it manufactured the drywall depicted in Photo #6 (Drywall

---

[11] Defendant incredibly notes the SM's reliance upon Taishan's Rule 30(b)(6) designee, Che Gang. *See, e.g.,* Def.'s Obj. Resp. [ECF No. 277] at 4. Crediting Taishan's and its designee's credibility is one of Plaintiffs' overarching complaints about the SM's analysis. *See, e.g.,* Pls.' Obj. [ECF No. 253] at 4.

[12] *See, e.g.*, SM PID R&R [ECF No. 233] at 8-9 (not discussing Plaintiffs' evidence), at 9-10 (same).

[13] Pls.' Obj. [ECF No. 253] at 12-13 nn. 39-41.

[14] *Id*. at 14; *see also* 2019 Che Dep. [Pls.' Tab 20] [ECF No. 253-2], *filed under seal*, at 106:10-20.

4

4feetx12feetx1/2inches) notwithstanding the Special Master's finding that Photo #5, with identical markings, was attributed to Taishan.

***The Default and Defendant's Misconduct***. Defendant makes much of Plaintiffs' discussion of the effect of the defaults on the standard of proof. Plaintiffs have shown that the Defendant's defaults impact on the standard of proof to be applied and the inferences that should be drawn in this proceeding.[15] There is no need to discuss that further as the parties' positions are well set. Defendant, however, glosses over the larger point – that the default and Taishan's litigation misconduct was still relevant.

As a matter of credibility, Defendant's default and misconduct are directly relevant to the claims at issue.[16] Such considerations are particularly relevant where Taishan relies on Plaintiffs' purported failure to produce evidence sufficient to surmount the threshold required by the Special Master. For example, Taishan's intentional and systematic failure to properly mark its boards for identification purposes and its failure to preserve manufacturing evidence that Taishan admits once existed, is most appropriately considered to favor the Plaintiffs (*i.e.*, it is reasonable and expected that direct evidence would be impossible to achieve in such circumstances).[17]

In addition, as Taishan claims, "[b]oth Taishan and the Special Master determined that the best evidence of Taishan's markings was Taishan's actual exemplars, which formed the basis for Taishan's admissions and denials in the Special Master's PID determination process."[18] This is precisely the point. The Special Master's heavy and almost exclusive reliance on Taishan's exemplars to the exclusion of other direct or circumstantial evidence is fundamentally flawed because: (1) the exemplars were disclosed to Plaintiffs for the first time in January 2019, (2) Taishan was unable to provide exemplars for each of the different markings it admitted to using on drywall it manufactured (*i.e.*, there are clearly boards it manufactured for which Taishan has no exemplars and, therefore, the absence of an exemplar has no evidentiary value), and (3) Taishan often could not locate any records to confirm or

---

[15] *Id.* at 5-6.

[16] *Id.* at 6-7.

[17] *Id.* at 9-10.

[18] Def.' Obj. Resp. [ECF No. 277] at 12.

5

deny whether it had manufactured a particular marking.[19] These were all items directly bearing on credibility and the weight that should have been accorded certain evidence that the Special Master impermissibly failed to recognize.

### IV. TAISHAN'S ARGUMENTS, INTENDED TO DEFLECT RESPONSIBILITY TO "OTHER MANUFACTURERS," ARE BASELESS

The factual record before the Special Master established that only two Chinese manufacturers exported drywall to the United States that was defective. Those two manufacturers were Knauf and the Taishan entities. Yet, at the PID hearing, Taishan argued that "other manufacturers" were responsible for the Chinese Drywall that permeates Florida equating being a manufacturer of *drywall* generally with being a manufacturer of *defective drywall* specifically, and ignoring the key fact that the only drywall proven defective (reactive) by the CPSC was manufactured by Knauf and Taishan.[20] In fact, Taishan has offered no proof whatsoever that any manufacturer other than it (and Knauf) produced any percentage of the defective drywall. Furthermore, Taishan's efforts to attribute blame to other manufacturers should be rejected at this point in a default proceeding. While Taishan may be challenging whether Plaintiffs have met their burden of showing it should be held liable for a given marking, it cannot raise the bar by suggesting that some unknown third party may have manufactured the board in question when it failed to plead comparative fault as an affirmative defense and is in default. *See, e.g., Watson v. Seat & Crawford*, 8 Fla. 446 (Fla. 1859); *Harless v. Kuhn*, 403 So. 2d 423, 425 (Fla. 1981).

Taishan's sleight-of-hand persists here. Specifically, Taishan persists with three misdirected arguments: First, Taishan's representations that Plaintiffs' homes have defective (reactive) drywall that was not manufactured by Taishan is false; second, Taishan falsely claims "allegations" against other named manufacturers from 2009 should be treated as "admissions" that the defective drywall at issue was made by an unknown "other" entity; and third, Taishan seeks to benefit from the myth that chemical testing is possible to achieve positive product identification.

---

[19] *See, e.g.*, 2019 Che Dep. [Pls. Tab 20] [ECF No. 253-2], *filed under seal*, at 106:18-20, 113:20-115:20, 129:16-130:5-9. This includes customer's special requests where Taishan testified that it could not admit or deny such markings as it had no records. *Id.* at 24:20-25:6.

[20] *See* fn. 8, *supra*.

6

A. **Taishan's "Other Manufacturer" Argument Ignores the CPSC's Findings**

Plaintiffs allege damages because their home included defective (*i.e.* reactive) drywall manufactured in China. Importantly, the CPSC Report clearly identifies the top 10 manufacturers of reactive drywall – which includes only Taishan entities and Knauf.[21] Thus, there is nothing "absurd" about the presumption that if reactive drywall is in Plaintiffs' homes and it is not Knauf's, then it is likely attributable to Taishan.[22] Taishan attempts to skirt liability through misdirection, conveniently focusing on unknown "other" manufacturers of drywall (notably, not defective drywall). But, the "other manufacturer" defense is contrary to the only record evidence and publicly available information. The Defendants are correct, the CPSC identified and tested many different manufacturers' imported and domestic drywall; however, the other manufacturers were *not* identified as having supplied defective (reactive) drywall to the U.S. market or to Plaintiffs. Notably, Taishan never sought to bring in additional manufacturers as third-party defendants in this case.[23] Consequently, the presumption that non-Knauf reactive drywall is Taishan drywall is well-placed.

B. **There is No "Admission" in Plaintiffs' Pleadings that Benefits Taishan**

Taishan fails to cite any record evidence of additional manufacturers of defective (reactive) drywall but instead points to the allegations in Plaintiffs' original Complaint. As is typical in all litigation, the fact that Plaintiffs initially sued additional manufacturers is not dispositive to Plaintiffs' theories later in the litigation. This is particularly so because, for many years, Defendants did not participate in the lawsuits against them while other named parties appeared, participated, and excluded themselves as manufacturers of defective drywall. Yet, Taishan attempts to take advantage of a decade-old pleading to assert that those allegations against other initially named Defendants are "an admission" by Plaintiffs that these entities manufactured defective drywall.[24] Taishan urges this conclusion by misstating

---

[21] *See id.*

[22] *See* Def.'s Obj. Resp. [ECF No. 277] at 6-7.

[23] *See* Comparative Fault, page 6, *supra*.

[24] *See* Def.'s Obj. Resp. [ECF No. 277] at 6.

7

the import and applicability of the Court's opinion in *Downer v. Royal Caribbean Cruises Ltd.*, which found that plaintiffs are bound by *admissions* made in the pleadings.[25]

*Downer* is inapposite primarily because it dealt with the impact of an *admission* in a complaint and not the import of an *allegation*. In *Downer*, defendants brought a motion to compel arbitration pursuant to employment and collective bargaining agreements with plaintiffs. 2012 WL 1966288, at *1. Plaintiffs opposed the motion arguing, in part, that because defendants did not attach each of the employment agreements at issue they could not prove that arbitration was warranted. *See id.* at *1 n.1. In finding in favor of defendants, the Court explained that because plaintiffs admitted that they had entered into written agreements (which included the mandatory arbitration agreements) in their complaint, their pleadings defeated their opposition to arbitration. *See id*. No such *admissions* exist here where Plaintiffs' Complaint contained good faith *allegations* against third-parties (not personal admissions) which were later, through the course of discovery, shown to be unsupported. These allegations provide no evidentiary support for Taishan's "unknown other" defense.

### C. Taishan's Chemical Analysis Defense is a Fiction

Chemical analysis of drywall for the purpose of finding a "fingerprint" is not only implausible, it is impossible. Yet, Taishan maintains the false *suggestion* by its corporate representative that such testing is available, and in error, the Special Master afforded the suggestion weight despite Taishan's failure to produce a shred of proof that such a test exists. Even if Taishan were correct, Taishan's attempts to attribute liability to another entity would require Taishan to have affirmatively pled and proved it under Florida law.[26] Taishan cannot now plead and prove their comparative fault defense because it is in default.

Tellingly, following the Product ID hearing, Plaintiffs requested that Taishan provide evidence of its so-called chemical analysis but Defendant demurred, refusing to respond to any discovery on the topic, formal, informal, with an expert, or otherwise.[27] Beyond the unsupported speculation promoted by Taishan, Defendant never produced evidence (*i.e.*, drywall samples) in the first instance due to its decision to willfully default, such that even if

---

[25] *Id.* (citing *Downer v. Royal Caribbean Cruises, Ltd.*, 2012 WL 1966288 (S.D. Fla. May 31, 2012)).

[26] *See* Comparative Fault, page 6, *supra*.

[27] *See* Def.'s Obj. & Resp. to Pls.' Supp. Doc. Req. [ECF No. 253-6]; April 18, 2019 Eickhoff Letter to Serpe [ECF No. 253-7].

some sort of testing existed (which is denied), there is no evidence to support the proposition. As a defaulted Defendant, Taishan may not benefit by *suggesting* that a non-existent chemical analysis was an alternative means for providing product identification. Counsel's arguments are not evidence. Plaintiffs should not be saddled with defeating factually unsupported defenses that were never even presented until the PID hearing. The Special Master's acceptance of this unfounded argument as fact should be overruled.

## V. SPECIFIC PRODUCT ID CATEGORIES

Plaintiffs' positions with respect the various Product ID categories are set forth in detail in both the briefing before the Special Master and Plaintiffs' Objections.[28] There is no reason to reiterate all those facts here. However, there are a few issues raised by Defendant's Response that warrant comment: (1) mischaracterization of the evidence in certain categories, and (2) failure to address issues with respect to Category I ("Meet[s] or Exceed[s]") and Category J ("Drywall with Dimensions").

*Mischaracterization of the Evidence*. Defendant's Response is misleading:

- **Category B ("C&K")**: Taishan claims Plaintiffs distort the record because it purportedly does not regularly fulfill orders for smaller manufacturers.[29] There are numerous citations in the record of doing exactly that.[30] Taishan states that Plaintiffs never previously argued issues related to Shandong Chenxiang's bankruptcy.[31] That is simply not true. The issue was raised before the Special Master.[32]
- **Category F ("IMT Gypsum")**: Taishan asserts that "Taishan's corporate representative testified that Taishan did not mark boards with the 'IMTGypsum.com' spray markings and did not use asterisks instead of multiplication signs."[33] However, Mr. Che actually testified no records were discovered that Taishan had sprayed the marking "IMT" on the back of its boards. Furthermore, Taishan denied this marking because "[t]he wordings reflected on the manufacturer's profile, 'IMT,' is different form the wording reflected from the

---

[28] *See* Pls.' PID Brief [ECF No. 253-1], *filed under seal*, at 31-56; Pls.' Obj. [ECF No. 253] at 11-20.

[29] Def.'s Obj. Resp. [ECF No. 277] at 9.

[30] *See, e.g.,* 2019 Che Dep. [Pls.' Tab 20] [ECF No. 253-2], *filed under seal*, at 68:11-20; *see also* Statistics of U.S. Gypsum Boards by Indirect Export during 2005-2007 [Pls.' Tab 8] [ECF No. 253-2], *filed under seal*, at TG-129677; Pls' Obj. [ECF No. 253] at 17-18 (Taishan admitted manufacture for Run & Fly).

[31] *See* Def.'s Obj. Resp. [ECF No. 277] at 10.

[32] *See* PID Hearing Tr. [ECF No. 253-5] at 125:4-20

[33] Def.'s Obj. Resp. [ECF No. 277] at 11.

9

pictures . . . ."[34] In other words, it was typical Tiashan, it simply didn't know if it was Taishan's board, vastly different from a denial. And particularly relevant in light of its own failure to keep adequate records.

- **Category G ("ProWall")**: Taishan originally denied manufacturing ProWall but later admitted manufacturing board for "Run and Fly," who sold the exact same amount to Manchester, who sold the exact same amount to a Florida distributor – the very third-party manufacturing Taishan attempts to minimize.[35]

*Category I ("Meet[s] or Exceed[s]")*. Taishan chooses not to respond to Plaintiffs' Objection regarding the Special Master's conclusion that Taishan should not be attributed boards that contained the plural "meet[s]" because it is directly contradicted by photographic evidence in the record that shows "meet[s]" with an "s" on the same board with Taihe edge tape that Taishan admits to manufacturing. This is direct photographic evidence contradicting the Special Master's finding yet Taishan has no rebuttal.[36]

*Category J ("Drywall with Dimensions")*. Again, Taishan chooses not to respond to Plaintiffs' Objection that the Special Master's denial of Photo 6 makes no sense considering her attribution of Photo 5 which contains the identical marking[37] in the identical printing style (dot matrix) as Photo 17 (also attributed to Taishan.) Further, the Objection that the Special Master's reliance upon Taishan's claim it does not use asterisks (Photo 8) was fundamentally flawed because other boards, for which Taishan previously admitted responsibility, show that asterisks were used,[38] and communications between Taishan and U.S. customers discussed using asterisks instead of multiplication signs for drywall dimensions.[39]

## VI. CONCLUSION

For the reasons set forth above and in Plaintiffs' Objections, the Court should sustain Plaintiffs' Objections to the Special Master's R&R.

---

[34] *See* 2019 Che Dep. [Pls.' Tab 20] [ECF No. 253-2], *filed under seal*, at 60:20-25.

[35] *See, e.g.*, Pls.' Obj. [ECF No. 253] at 17-18.

[36] *See, e.g.*, *id*. at 12.

[37] *See* Pls. Obj. at 14-15.

[38] *See* Pls.' Obj. at 15 & nn. 47-48. In addition, Taishan's corporate representative did not offer a denial but instead testified that he "did not find any record which shows the asterisk as the multiplication sign." *See* also 2019 Che. Dep. [Pls.' Tab 20] [ECF No. 253-2], *filed under seal*, at 129:16-25.

[39] *See, e.g., id*. at 14-15. With respect to Category L ("White Edge Tape"), Plaintiffs rely upon the arguments previously advanced but note the discussion on pages 6 through 9, *supra*.

Dated: May 20, 2019

Respectfully Submitted,

/s/ Patrick S. Montoya, Esq.
Patrick Shanan Montoya
Fla. Bar No. 0524441
Email: Patrick@colson.com
Colson Hicks Eidson
255 Alhambra Circle, PH
Coral Gables, FL  33134-2351
Telephone:  (305) 476-7400
Facsimile:  (305) 476-7444
*Interim Lead Counsel for Plaintiffs*

11

## CERTIFICATE OF SERVICE

I hereby certify that that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Southern District of Florida by using the CM/ECF System, which will send a notice of electronic filing on this 20th day of May, 2019.

/s/ Patrick S. Montoya, Esq.
Patrick Shanan Montoya
Fla. Bar No. 0524441
Email: Patrick@colson.com
Colson Hicks Eidson
255 Alhambra Circle, PH
Coral Gables, FL 33134-2351
Telephone: (305) 476-7400
Facsimile: (305) 476-7444
*Interim Lead Counsel for Plaintiffs*

# EXHIBIT

# "A"

CPSC Identifies Manufacturers of Problem Drywall Made in China    Page 1 of 2

Case 2:09-md-02047-EEF-MBN   Document 22397-11   Filed 12/09/19   Page 16 of 17
Case 1:11-cv-22408-MGC   Document 297-1   Entered on FLSD Docket 05/20/2015   Page 2 of 3



# NEWS from CPSC



## U.S. Consumer Product Safety Commission

Office of Information and Public Affairs                                         Washington, DC 20207

FOR IMMEDIATE RELEASE                               **CPSC Recall Hotline: (800) 638-2772**
May 25, 2010                                        CPSC Media Contact: (301) 504-7908
Release #10-243

## CPSC Identifies Manufacturers of Problem Drywall Made in China

WASHINGTON, D.C. - The U.S. Consumer Product Safety Commission (CPSC) is releasing today the names of the drywall manufacturers whose drywall emitted high levels of hydrogen sulfide in testing conducted for the agency by Lawrence Berkeley National Laboratory (LBNL). There is a strong association between hydrogen sulfide and metal corrosion.

Of the samples tested, the top ten reactive sulfur-emitting drywall samples were all produced in China. Some of the Chinese drywall had emission rates of hydrogen sulfide 100 times greater than non-Chinese drywall samples.

"Homeowners who have problem drywall in their homes are suffering greatly", said CPSC Chairman Inez Tenenbaum. "I appeal to these Chinese drywall companies to carefully examine their responsibilities to U.S. families who have been harmed and do what is fair and just".

At the U.S.-China Strategic and Economic Dialogue meetings in Beijing May 24-25, U.S. officials pressed the Chinese government to facilitate a meeting between CPSC and the Chinese drywall companies whose products were used in U.S. homes, and which exhibit the emissions identified during the testing procedures. The Strategic and Economic Dialogue represents the highest-level bilateral forum to discuss a broad range of issues between the two nations.

The following list identifies the top 10 drywall samples tested that had the highest emissions of hydrogen sulfide, along with the identity of the manufacturer of the drywall and the year of manufacture, from highest to lowest.

- Knauf Plasterboard (Tianjin) Co. Ltd.: (year of manufacture 2005) China
- Taian Taishan Plasterboard Co. Ltd.: (2006) China
- Shandong Taihe Dongxin Co.: (2005) China
- Knauf Plasterboard (Tianjin) Co. Ltd.: (2006) China
- Taian Taishan Plasterboard Co. Ltd.: (2006) China
- Taian Taishan Plasterboard Co. Ltd.: (2006) China
- Shandong Chenxiang GBM Co. Ltd. (C&K Gypsum Board): (2006) China
- Beijing New Building Materials (BNBM): (2009) China
- Taian Taishan Plasterboard Co. Ltd.: (2009) China
- Shandong Taihe Dongxin Co.: (2009) China

Other Chinese drywall samples had low or no detectable emissions of hydrogen sulfide as did the drywall samples tested that were manufactured domestically. They include: Knauf Plasterboard Tianjin: (2009) China; Tiger ***ShiGao JianCai***liangpianzhuang: (2006) China; USG Corporation: (2009) U.S.; Guangdong Knauf New Building Material Products Co. Ltd.: (2009) China; 3/8" drywall manufacturer uncertain (date uncertain): China; Knauf Plasterboard (Wuhu) Co. Ltd.: (2009) China; CertainTeed Corp.: (2009) U.S.; Georgia Pacific Corp.: (2009) U.S.; Dragon Brand, Beijing New Building Materials Co. Ltd.: (2006) China; CertainTeed Corp.: (2009) U.S.;

CPSC Identifies Manufacturers of Problem Drywall Made in China Page 2 of 2
Case 2:09-md-02047-EEF-MBN Document 22397-11 Filed 12/09/19 Page 17 of 17
Case 1:11-cv-22408-MGC Document 297-1 Entered on FLSD Docket 05/20/2015 Page 3 of 3

Pingyi Baier Building Materials Co. Ltd.: (2009) China; Sample purchased in China, manufacturer unknown: (2009) China; Panel Rey S.A.: (2009) Mexico; Lafarge North America: (2009) U.S.; National Gypsum Company: (2009) U.S.; National Gypsum Company: (2009) U.S.; Georgia Pacific Corp.: (2009) U.S.; Pabco Gypsum: (2009) U.S.; Temple-Inland Inc.: (2009) U.S.; and USG Corporation: (2009) U.S.

Last month, CPSC released the results of drywall emissions tests by LBNL. The studies showed a connection between certain Chinese drywall and corrosion in homes. In addition, the patterns of reactive sulfur compounds emitted from drywall samples show a clear distinction between certain Chinese drywall samples manufactured in 2005/2006 and other Chinese and non-Chinese drywall samples.

To date, CPSC has spent over $5 million to investigate the chemical nature and the chain of commerce of problem drywall. Earlier this year, CPSC and HUD issued an identification protocol to help consumers identify problem drywall in their homes. Last month, CPSC and HUD issued remediation guidance to assist impacted homeowners.

See the chart (pdf) listing drywall chamber test results.

---

The U.S. Consumer Product Safety Commission is charged with protecting the public from unreasonable risks of serious injury or death from thousands of types of consumer products under the agency's jurisdiction. The CPSC is committed to protecting consumers and families from products that pose a fire, electrical, chemical, or mechanical hazard. The CPSC's work to ensure the safety of consumer products - such as toys, cribs, power tools, cigarette lighters, and household chemicals - contributed significantly to the decline in the rate of deaths and injuries associated with consumer products over the past 30 years.

To report a dangerous product or a product-related injury, call CPSC's Hotline at (800) 638-2772 or CPSC's teletypewriter at (301) 595-7054. To join a CPSC e-mail subscription list, please go to https://www.cpsc.gov/cpsclist.aspx. Consumers can obtain recall and general safety information by logging on to CPSC's Web site at www.cpsc.gov.

