UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:   CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL 2047<br><br>SECTION "L" |
| **This document relates to:**<br><br>*Elizabeth Bennett, et al v. Gebr. Knauf Verwaltungsgesellschaft, KG, et al*<br><br>Case No. 14:cv-2722 | JUDGE ELDON FALLON<br><br>MAGISTRATE JOSEPH WILKINSON, JR. |

**MEMORANDUM IN SUPPORT OF
RULE 23 MOTION TO DENY CLASS CERTIFICATION**

**MAY IT PLEASE THE COURT:**

Defendant, Knauf Gips KG and Knauf Plasterboard (Tianjin) Co., Ltd. (the "Knauf Defendants"), through undersigned counsel, respectfully submit this Memorandum in Support of their Motion to Deny Class Certification pursuant to Rule 23 of the Federal Rules of Civil Procedure as to the class claims asserted by the *Bennett* Plaintiffs in the Fifth Amended Class Action Complaint (the "*Bennett* Complaint"). The Court should deny class certification because Plaintiffs did not timely move for class certification, and cannot otherwise meet their burden to establish a certifiable class under Rule 23(a), (b)(1), (b)(2), or (b)(3).

**I.   BACKGROUND**

    **A.   MDL 2047**

From 2004 through 2006, a housing boom in parts of the United States and rebuilding efforts necessitated by Hurricanes Rita and Katrina in the Gulf South led to a shortage of

construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used to construct and refurbish homes in coastal areas of the country, notably the Gulf and East Coasts. Sometime after the Chinese drywall was installed, homeowners began to complain of foul-smelling odors, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829–30 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014). Many of these homeowners also began to complain of various physical afflictions believed to have been caused by the Chinese drywall.

These homeowners then began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. Because of the commonality of facts in the various cases, this litigation was designated as a multidistrict litigation. Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation ("JPML") on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 09-2047 before this Court.  On June 16, 2009, this Court entered PTO 1 regarding preservation of evidence, amongst other things. On October 9, 2009, this Court entered PTO 1(B) regarding preservation of evidence.   On January 24, 2012, this Court entered PTO 1(I) regarding preservation of evidence.

Since the inception of MDL 2047 in June of 2009, numerous cases have been consolidated, containing thousands of claims; over 20,000 records docs have been entered into the record, millions of documents exchanged in discovery, dozens of depositions, and over 30 Pretrial Orders have been issued; the Court has appointed steering committees and liaison counsel for plaintiffs,

homebuilders, insurers, installers, and manufacturers; it has presided over monthly status conferences, hearings, and several bellwether trials.

### B. The *Bennett* Complaint, Class Allegations, Claims, and Relief Sought

The original *Bennett* Complaint was filed on November 13, 2014 and was subsequently transferred to the Eastern District of Louisiana and consolidated into MDL 2047.[1] The *Bennett* Complaint was amended multiple times to amend parties and claims. The Fifth Amended Complaint is the operative complaint in this matter.[2] Following interventions, the complaint consists of named plaintiffs for 130 properties in Texas, Louisiana, Mississippi, Alabama, and Florida asserting class and individual claims for primarily monetary and also injunctive relief.[3]

In the *Bennett* complaint, Plaintiffs allege that "Class Members' homes, structures, personal property, and bodies have been exposed to Defendants' defective and unfit drywall and the corrosive and harmful effects of the sulfur compounds and other noxious gases being released from Defendants' problematic drywall."[4] As a result, Plaintiffs allege that class members "have suffered, and continue to suffer, economic harm and/or personal injury" and there "damages include, but are not limited to, cost of inspection; cost and expenses necessary to remedy, replace and remove" the drywall and other property; "lost value or devaluation of their homes and property; loss of use and enjoyment of their home and property, and/or damages associated with personal injuries."[5] Plaintiffs allege that class members have been exposed to harmful sulfur compounds, suffered personal injury, have been placed at an increased risk of disease, and have need for repair and remediation of their homes, rescission of contracts, the ordering of

---

[1] The stay of the action was lifted "without limitation" on September 6, 2018 (Rec. Doc. 21762).
[2] Rec. Doc. 21334 (Fifth Amended Complaint).
[3] *Id*. at Exhibit A, Rec. Doc. 21796 (First Intervention); Rec. Doc. 22357 (Second Intervention).
[4] *Id*. at ¶ 27.
[5] *Id*. at ¶ 32.

emergency/corrective notice, the ordering of testing and monitoring, and/or the ordering of medical monitoring.[6]

Each Plaintiff listed in the Bennett complaint seeks to be a class representative of a nationwide class under Rule 23 defined as:

> All owners and residents (past and present) of real property located in the United States containing problematic/defective Chinese drywall manufactured, sold, distributed, and/or supplied by Knauf.

Plaintiffs seek certification of a class under Rule 23(a) and (b)(1), (b)(2), and (b)(3). For its Rule 23(a) and (b)(3) class allegations, Plaintiffs allege the following common facts to the class:

a.  whether Defendants' drywall products that release sulfur compounds and other noxious gases are defective and/or unfit for their intended purposes;

b.  whether Defendants tortuously manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, sold, and/or installed defective drywall products;

c.  whether Plaintiffs and Class Members are entitled to recover compensatory, exemplary, incidental, consequential, and/or other damages as a result of Defendants' unlawful and tortious conduct; and

d.  whether Plaintiffs and Class Members are entitled to recover injunctive and/or equitable relief as a result of Defendants' unlawful and tortious conduct.[7]

Next, Plaintiffs allege that that a Rule 23(b)(2) class is certifiable because "Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief is appropriate respecting the Class as a whole."[8] Plaintiffs allege a need for injunctive relief in the form of repair and remediation of their homes.[9] Additionally, Plaintiffs allege the class members will suffer irreparable harm if the Court does not render the injunctive relief by ordering

---

[6] *Id.* at ¶ 33.
[7] *Id.* at ¶ 37.
[8] *Id.* at ¶ 42.
[9] *Id.* at ¶ 33.

medical monitoring relief and ordering Defendants to recall, buy back, rescind, and/or repair class members properties.[10]

Finally, Plaintiffs allege that a Rule 23(b)(1) class is appropriate solely on the allegation that:

> prosecuting separate actions by or against individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the class; or adjudications with respect to individual Class members that, as a practical matter, would be dispositive of the interests of the other Class members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Plaintiffs allege property damages, personal injuries, economic losses and other compensatory and punitive damages and request monetary amounts for negligence,[11] negligence *per se*,[12] strict liability,[13] breach of express or implied warranty,[14] redhibition,[15] Louisiana Products Liability Act (LPLA),[16] private nuisance,[17] and negligent discharge of a corrosive substance.[18] Additionally, Plaintiffs and class members seek monetary damages for unjust enrichment,[19] and violation of various state consumer protection laws.[20] Additionally Plaintiff seek injunctive relief/medical monitoring.[21]

---

[10] *Id*. at ¶ 134.
[11] *Id*. at ¶¶ 45-52.
[12] *Id*. at ¶¶ 53-59.
[13] *Id*. at ¶¶ 60-77.
[14] *Id*. at ¶¶ 78-85.
[15] *Id*. at ¶¶ 86-95.
[16] *Id*. at ¶¶ 96-108.
[17] *Id*. at ¶¶ 109-115.
[18] *Id*. at ¶¶116-122.
[19] *Id*. at ¶¶ 123-126.
[20] *Id*. at ¶¶ 127-131.
[21] *Id*. at ¶¶ 132-144.

## II. LEGAL STANDARDS

The party seeking class certification bears the burden of proving all the requirements set out in Rule 23 of the Federal Rules of Civil Procedure. *Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 479 n.4 (5th Cir. 2001). Class certification is within the district court's discretion, and this decision is essentially a factual inquiry. *Vizena v. Union Pac. R.R. Co.*, 360 F.3d 496, 502-03 (5th Cir. 2004); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996). The district court must make specific findings regarding how the case satisfies or fails to satisfy the requirements of Rule 23. *Vizena*, 360 F.3d at 503.

## III. ARGUMENT

### A. The *Bennett* class failed to timely seek certification.

Federal Rule of Civil Procedure 23(c)(1) provides that class action certification must be determined "at an early practicable time." Despite the pendency of this action for years, and Plaintiffs' representations to the Court and the Defendants that individual trials would be required in courts of competent venue and jurisdiction where alleged affected properties are located, Plaintiffs have never dismissed their class allegations nor have they timely sought class certification.[22]

Indeed, based on Plaintiffs' statements to the Court and the parties, and because Plaintiffs never timely moved for class certification, this Court instructed Plaintiffs to file protective individual actions in courts of competent jurisdiction.[23] Courts have routinely denied class

---

[22] Local Rule 23.1(B) requires that "[w[ithin 91 days after filing of a complaint in a class action or filing of a notice of removal of the class action from state court, whichever is later, plaintiff must move for class certification under FRCP 23(c)(1), unless this period is extended upon motion for good cause and order by the court. Local Rule 23.1(B) is an extension of Federal Rule of Civil Procedure 23(c)(1). *Taylor v. Denka Performance Elastomer LLC*, No. CV 17-7668, 2018 WL 339109, at *2 (E.D. La. Jan. 9, 2018).

[23] The stay of the action was lifted "without limitation" on September 6, 2018. Rec. Doc. 21762 (Order lifting stay in Bennett). After the passing of the Local Rule 23.1(B) deadline, the Court entered a Case Management Order following opportunity of the parties to submit proposed case management orders. Subsequently, the Court addressed the issue of transfer back to courts of competent venue and jurisdiction in the amended CMO. Rec. Doc.

allegations where Plaintiffs failed to timely seek certification.[24]  Therefore, the Court should deny and dismiss the class allegations because a timely motion for class certification was never filed. In any event, for the reasons set forth below, Plaintiffs cannot otherwise meet the requirements to certify a class under Rule 23.

> **B.     A class is not certifiable under Rule 23(a) and (b)(3) because the issues are uncommon and predominate over any common ones.**

The *Bennett* complaint alleges a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure. Rule 23 provides in relevant part:

> **(a)     Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
>
> **(b)     Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: . . . . (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include: (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

---

22359 (Amended CMO) ("Plaintiff will file protective actions in courts of proper venue and jurisdiction for cases to be remanded by December 15, 2019").

[24] *Escoe v. State Farm Fire & Cas. Co.*, No. CIV.A. 07-1123, 2007 WL 2903048, at *2–3 (E.D. La. Sept. 27, 2007) (striking class allegations because Plaintiffs did not seek certification timely under local rules and stating on the proposed class does not meet the requirements for certification because of several flaws in the class allegations, including "most glaring" that individual issues predominate). To comply with the local rule, a plaintiff may not rely on class allegations contained in a complaint, but must, instead, file a motion for class certification. *Cassidy v. Ford Motor* Co., No. CV 15-2483, 2016 WL 3001131, at *1 (E.D. La. May 25, 2016) (citing *Escoe*., No. 07-1123, 2007 WL 2903048, at *2 (E.D. La. Sept. 27, 2007). The penalty for failing to satisfy Local Civil Rule 23.1(B), without moving for an extension of time, is the dismissal of class allegations. *Id*.; *McGuire v. Gulf Stream Coach, Inc*., No. 06-5659, 2007 WL 1198935, at *1 (E.D. La. Apr. 20, 2007) (and cases cited therein).

Thus, read in combination, Rule 23(a) and (b)(3) provide six requirements which must be met for a group of claims to be certified as a class action—numerosity, commonality, typicality, adequacy, predominance, and superiority. As Plaintiffs have not sought class certification, and because common questions of law and fact are lacking and do not predominate, the Court must deny class certification under Rule 23(a) and (b)(3) on this basis alone.

First, Rule 23(a)(2) requires that there be issues of law or fact common to the class. The commonality requirement is satisfied if at least one issue's resolution will affect all or a significant number of class members. *James v. City of Dall.*, 254 F.3d 551, 570 (5th Cir. 2001); *Mullen*, 186 F.3d at 625. Commonality, unlike predominance, is a very low threshold. *James*, 254 F.3d at 570. The only perceived common issues relate to an aspect of Defendants' conduct; namely product defect. Following years of discovery, bellwether trials, and settlements, this issue is not in dispute.

On the other hand, the disputed issues involve the uncommon issues of whether Plaintiffs can prove entitlement, type, and extent of damages on an individual basis. Although, Plaintiffs allege in the complaint these questions are common to all class members, it is undeniable that Plaintiffs and members of the proposed class are required to meet burdens under individual state law and produce evidence to establish their individual damages. While the issues of "whether and the type of damages" to which each proposed class member is entitled superficially appears common to all proposed class members, "upon closer observation, however, commonality proves fleeting."[25] For example, each plaintiff has a different, distinct, set of claims that will have to be proven under the given state law over defenses. Some remediated their properties under different scopes of remediation by replacing the defective drywall and now seek the costs incurred for

---

[25] Rec. Doc. 22287 at p. 13 (Order and Reasons Deny Class Certification in *Mitchell*).

remediation.[26] Others have not remediated and will have to establish a remediation scope and cost estimate through expert testimony.[27] Between each property, the cost and scope of remediation will differ from plaintiff-to-plaintiff based on the individual properties and for properties that are non-remediated, it varies from plaintiff-to-plaintiff on the costs allegedly incurred due to maintaining a property with alleged Chinese-drywall in addition to the alleged expected costs and scope of remediation. Plaintiffs will assert individual and distinct personal property loss claims which will have to be established on an individual level.[28] Some, but not all, seek moving and alternative living costs for vacating properties.[29] Certain Plaintiffs seek loss of enjoyment/loss of use based on their own individual circumstances whereas others seek claims related to stigma/diminution in value.[30] Certain Plaintiffs seek certain types of economic loss claims like lost rent.[31] Some Plaintiffs still own their properties whereas others are making claims post-sale or after foreclosure.[32] Finally, the *Bennett* complaint still alleges that class members "have suffered, and continue to suffer, economic harm and/or personal injury" which will be determined on an individual, plaintiff-by-plaintiff basis dependent on the given state law where the property is located.[33] In sum, Plaintiffs cannot show the resolution of at least one of these issues would affect all or a significant number of all nationwide class members. The Knauf Defendants defenses will also be evaluated on an individual basis, including but not limited to statute of

---

[26] Exhibit 11 (Natal - Louisiana); Exhibit 12 (CDO Investments - Florida); Exhibit 13 (Arrowhead - Mississippi).
[27] Exhibit 6 (Arnold - Louisiana); Exhibit 7 (Baldwin- Texas); Exhibit 8 (Powell – Mississippi); Exhibit 9 (Bennett – Alabama); Exhibit 10 (Blevins - Florida).
[28] Exhibits 1-17: Various Plaintiff Fact Sheets.
[29] Exhibit 2 (Macksey).
[30] Exhibit 3 (Junius).
[31] Exhibit 4 (Martinez).
[32] Exhibit 5 (Baber); Exhibit 3 (Junius).
[33] Rec. Doc. 21334 at ¶ 32. (Fifth Amended Complaint).

limitations/prescription, evidence preservation and presentment in compliance with this Courts' PTOs, and purchase with knowledge/assumption of risk.[34]

Moreover, when considering how these issues might be resolved, any argument in favor of finding commonality further deteriorates.[35] For example, Plaintiffs seek a nationwide class which will require state-by-state, plaintiff-by-plaintiff determinations based on the distinct state law. Indeed, the named Plaintiffs themselves are comprised of owners of property in five different states with distinct laws: Alabama, Mississippi, Louisiana, Texas, and Florida.[36] Therefore, any determination of liability, causation, and damages in favor of one plaintiff with property in one particular state will not be common or determinative of another plaintiff's claim in another state because the unique circumstances of each plaintiff and the "distinct" state laws.[37] The distinction is expounded when considering potential unnamed class members and/or a nationwide class. Thus, whether and what type of damages each proposed plaintiff and/or class member might be entitled to is plaintiff, and state specific. As the movant, Plaintiffs bear the burden of demonstrating that variations among these state laws do not "pose 'insuperable obstacles' to certification." *Spence v. Glock*, 227 F.3d 308, 313 (5th Cir. 2000) (quoting *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1017 (D.C. Cir. 1986). As this Court has previously determined, these "[v]ariations in state law may swamp any common issues," *Castano*, 84 F.3d at 741 (citations omitted), and therefore questions are not common to the class.[38]

Even if a common issue can be determined, Rule 23(b)(3) requires that the class common issues of law or fact predominate over the questions affecting individual class members.

---

[34] Rec. Docs. 22368 – 74.
[35] Rec. Doc. 22287 at p. 13 (Order and Reasons Deny Class Certification in *Mitchell*).
[36] Rec. Doc. 21334 at Exhibit A (Fifth Amended Complaint).
[37] Rec. Doc. 22287 at p. 14 (Order and Reasons Deny Class Certification in *Mitchell*).
[38] *Id*.

Predominance is established where common answers to common questions are likely to "drive the resolution of the [instant] litigation." *See Walmart-Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("[W]hat matters to class certification is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceedings to generate common answers apt to drive the resolution of the litigation." (citing Richard A. Nagareda, *The Preexistence Principle and the Structure of the Class Action*, 103 COLUM. L. REV. 149, 132 (2003)). In *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, the Supreme Court explained, "Rule 23(b)(3) . . . does not require a plaintiff seeking class certification to prove that each 'elemen[t] of [her] claim [is] susceptible to classwide proof.'" 568 U.S. 455, 469 (2013). Rather the rule requires common questions "predominate over any questions affecting only individual [class] members." *Id.* at 468 (quoting Fed. R. Civ. P. 23(b)(3)). Where the issue of damages does not lend itself to "mechanical calculation, but requires separate 'mini-trials' of an overwhelmingly large number of individual claims" the need to calculate individual damages will defeat predominance. *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 307 (5th Cir. 2003); *see also Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 342–343 (4th Cir. 1998) (finding the claims of the members of a putative class are "inherently individualized," "the need for individual proof of damages" will bar class certification).

In its predominance analysis, a district court should consider how the cases would proceed to trial, that is, whether any cases would require individual trials on particular issues. *See Castano*, 84 F.3d at 744–45 (finding certification was inappropriate where individual trials would be necessary to determine an element of the plaintiffs' fraud claims). To satisfy Rule 23(b)(3)'s requirement that common questions of law and fact predominate, "the predominance test asks whether a class suit for the unitary adjudication of common issues is economical and efficient in

the context of all the issues in the suit." 2 NEWBERG ON CLASS ACTIONS § 4:25 (4th ed. 2010); *see also Amchem*, 521 U.S. at 623 ("The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." (citing 7A Wright, Miller, & Kane 518–19)).

Here, Plaintiffs allege property and personal injuries and request monetary damages for negligence,[39] negligence *per se*,[40] strict liability,[41] breach of express or implied warranty,[42] redhibition,[43] Louisiana Products Liability Act (LPLA),[44] private nuisance,[45] and negligent discharge of a corrosive substance.[46] Additionally, Plaintiffs and class members seek monetary damages for unjust enrichment,[47] and violation of various state consumer protection laws.[48] Finally, Plaintiffs seek "injunctive relief" of buying back their properties and medical monitoring.[49]

Each cause of action will be separately applied under the applicable state law of the state where the property is located based on each plaintiffs' circumstances. Nonetheless, Plaintiffs seek a "nationwide" class, despite the fact each class member will have separate, distinct, and individual set of actions based on their own circumstances arising under the state laws where the property is located, including but not limited to the named Plaintiff states: Texas, Louisiana, Mississippi, Alabama, and Florida. The individualized, uncommon and predominating issues are whether each proposed class member is entitled to a certain type and extent of property damages, personal injury

---

[39] Rec. Doc. 21334 (Fifth Amended Complaint at ¶¶ 45-52).
[40] *Id*. at ¶¶ 53-59.
[41] *Id*. at ¶¶ 60-77.
[42] *Id*. at ¶¶ 78-85.
[43] *Id*. at ¶¶ 86-95.
[44] *Id*. at ¶¶ 96-108.
[45] *Id*. at ¶¶ 109-115.
[46] *Id*. at ¶¶116-122.
[47] *Id*. at ¶¶ 123-126.
[48] *Id*. at ¶¶ 127-131.
[49] *Id*. at ¶¶ 132-144.

damages, economic damages, and/or other compensatory and punitive damages, which will be determined based on each unique plaintiff's circumstances and the applicable, distinct state law. Given the state-specific and plaintiff-specific nature of these claims, beyond a superficial level, the issue of whether Plaintiffs are entitled to the types and amount of damages each individual class member seeks is the predominating issue in these cases and uncommon across all class members.[50] Plaintiffs from each state will have a discrete set of causes of actions permissible under the given state law and those claims, burdens of proof, defenses, and damages are "inherently individualized" state-by-state, and plaintiff-by-plaintiff.[51]

For example, Plaintiffs from Louisiana will assert redhibition claims only available to Louisiana properties, which require different standards of proof, defenses, and extent of damages than Plaintiffs from any of the other states.[52] The same is true for any Plaintiff in a particular state as opposed to any other *Bennett* plaintiff that has filed a claim for property located in a different state. Furthermore, the basis for a claim and whether it is available to a given Plaintiff will deviate from plaintiff-to-plaintiff and from state-to-state. Indeed, certain plaintiffs assert claims for future remediation costs, and the entitlement, scope, and amount will have to be proven on a case-by-case basis.[53] Other plaintiffs have already remediated properties and their claims will revolve around the individual incurred expenses, the scope of the remediation work, and the ability to establish product ID now that the alleged KPT board was removed.[54] Some plaintiffs have sold

---

[50] Rec. Doc. 22287 at p. 14 (Order and Reasons denying class certification in *Mitchell*).
[51] *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 602 (5th Cir. 2006); *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 307 (5th Cir. 2003); *see also Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 342–343 (4th Cir. 1998).
[52] Exhibits 1-17 (Various Plaintiff Fact Sheets).
[53] Exhibit 6 (Arnold - Louisiana); Exhibit 7 (Baldwin - Texas); Exhibit 8 (Powell – Mississippi); Exhibit 9 (Bennett – Alabama); Exhibit 10 (Blevins - Florida).
[54] Exhibit 11 (Natal - Louisiana); Exhibit 12 (CDO Investments - Florida); Exhibit 13 (Arrowhead - Mississippi).

properties (before or after remediation),[55] others have lost or acquired through foreclosure,[56] and each will have to prove entitlement to a distinct, individualized type and amount of damages based on their individually alleged economic losses and according to the unique state law where the property is located. Certain plaintiffs assert entitlement to loss of use/enjoyment claims or diminution in value which will differ in terms of evidence, scope, and entitlement depending on state law while other Plaintiffs have not asserted entitlements to such claims for damages. Some seeks damages when there is nothing left on the Property following destruction of the property.[57] Finally, the *Bennett* complaint still alleges exposure and personal injury claims and each individual plaintiff would have suffered different alleged periods and magnitudes of exposure and suffered different alleged symptoms as a result.[58] In short, a determination of these plaintiffs' claims and damages are "inherently individualized," will require separate "mini-trials" that do not lend themselves to simply "mechanical calculation" of damages, and therefore, the need to make individual determination as to entitlement and calculation of individual damages will defeat predominance. *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 307 (5th Cir. 2003); *see also Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 342–343 (4th Cir. 1998) (finding the claims of the members of a putative class are "inherently individualized," "the need for individual proof of damages" will bar class certification).

Throughout the CMO in this matter, Plaintiffs have represented that the named Plaintiff claims would be returned to where the properties are located for individual trials, which is why this Court ordered Plaintiffs to file individual protective actions in courts of competent venue and

---

[55] Exhibit 3 (Junius); Exhibit 13 (Arrowhead).
[56] Exhibit 5 (Baber); Exhibit 15 (Jamarillo); (Russo) Exhibit 16 (Bank of Louisiana).
[57] Exhibit 1 (Charles).
[58] *See Exxon Mobil Corp.*, 461 F.3d at 602 (5th Cir. 2006).

jurisdiction like non-Knauf matters in MDL-2047.[59]  Indeed, Plaintiffs' own filings requesting remand and extension to conduct third-party discovery on individual claims confirms that the predominating issues are "case-specific" and "unique" to the individual claims or cases.[60]  Plainly, Plaintiffs are unable to show common issues for a nationwide class predominate, much less do common issues predominate across the named Plaintiff claims. Therefore, Plaintiffs cannot meet the burden of demonstrating that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P 23(b)(3). Thus, Plaintiffs cannot demonstrate predominance of common issues and for this reason alone, the Court should deny class certification under Rule 23(b)(3).

### C. A class is not certifiable under Rule 23(a) and (b)(2) because the monetary relief sought is not incidental to the injunctive relief.

A class action may be maintained if Rule 23(a) is satisfied and if:

> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

To be certifiable, the injunctive relief sought must be specific. *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 524 (5th Cir. 2007) (citing FED. R. CIV. P. 65(d)); *see also Ala. Nursing Home Ass'n v. Harris*, 617 F.2d 385, 387–88 (5th Cir. 1980).  Furthermore, to qualify for class-wide injunctive relief, class members must have been harmed in essentially the same way, and injunctive relief must predominate over monetary damage claims. *Id.* (citing *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 975 (5th Cir. 2000). "[M]onetary relief predominates in [Rule 23](b)(2) class actions unless it is incidental to requested injunctive or declaratory relief." *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998).

---

[59] Rec. Doc. 22359 (Amended CMO).
[60] Rec. Doc. 22384-1 at p. 5; Rec. Doc. 22385 (requesting extension to conduct third-party discovery on individual plaintiff damages).

Incidental damages "flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief." *Id*. "Liability for incidental damages should not require additional hearings to resolve the disparate merits of each individual's case; it should neither introduce new and substantial legal or factual issues, nor entail complex individualized determinations." *Id*.

All plaintiff submissions seek monetary damages instead of injunctive relief.[61] As set forth above, the central, uncommon, and predominating issues are whether and to what extent Plaintiffs are entitled to monetary compensation for repairs and damages associated with alleged Chinese drywall.  As such, class certification under Rule 23(b)(3) is inappropriate because the injunctive relief sought does not predominate over the sought monetary relief.  It is undisputed that the primary, predominating relief sought is monetary relief.  Furthermore, individual trials will be required to resolve the disparate merits of each individual's case and require new and substantial issues which will vary plaintiff-by-plaintiff and state-to-state. In short, liability for damages will require individualized determinations. Indeed, even the "injunctive relief" is centered on monetary relief to compensate for alleged remediation costs[62] and costs for medical monitoring, and is otherwise not specific to satisfy Rule 23(b)(3).[63]  Therefore, because monetary relief is not "incidental" to the injunctive relief sought in this matter, the injunctive relief does not predominate over the monetary relief, and this Court should deny class certification under Rule 23(b)(2).

---

[61] Exhibits 1-17 (Various Plaintiff Submission).
[62] Rec. Doc. 21334 (Fifth Amended Complaint at ¶¶ 132 – 144).
[63] *Id*. at ¶¶ 132 – 144.

> **D.     A class is not certifiable under Rule 23(a) and (b)(1) because the primary relief is monetary damages, there are no allegations of a limited fund, and Plaintiffs cannot show how adjudication of one class member property claim is dispositive of others.**

Plaintiffs allege that the various claims asserted in the *Bennett* action are certifiable under the provisions of Rule 23(b)(1). A class action may be maintained if Rule 23(a) is satisfied and if:

> (1)     prosecuting separate actions by or against individual class members would create a risk of:
>
> > (A)     inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
> >
> > (B)     adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

First, certification in unavailable under Rule 23(b)(1)(A) because the action is primarily and principally to recover money damages.[64] Rule 23(b)(1)(A) provides that a class action can be maintained if "prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class action." Fed. R. Civ. P. 23(b)(1)(A). However, certification under Rule 23(b)(1)(A) is inappropriate if class members seek primarily monetary relief. *Mitchell v. State Farm Fire & Cas. Co.*, 327 F.R.D. 552, 565 (N.D. Miss. 2018) (citing *Johnson v. Geico Cas. Co.*, 673 F.Supp.2d 255, 270 (D. Del. 2009) ("Certification under Rule 23(b)(1)(A) is generally inappropriate where the primary relief sought is monetary damages."); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1193 (9th Cir. 2001); *Morris v. Transouth Financial Corp.*, 175 F.R.D. 694, 699 (M.D. Ala. 1997) ("... this is

---

[64] All plaintiff submissions seek monetary damages, and not injunctive relief. Exhibits 1-17 (Various Plaintiff Submissions).

primarily and principally an action to recover damages. As such, it is inappropriate for certification under Rule 23(b)(1)(A)); *Rambarran v. Dynamic Airways, LLC*, 2015 WL 4523222 (S.D. N.Y. 2015) ("Here, Plaintiffs are seeking monetary damages... [c]ertification under Rule 23(b)(1)(A) is thus unavailable."). Furthermore, the mere allegation by plaintiffs of a possibility that the prosecution of separate actions could create the risk of inconsistent adjudications with respect to individual class members and incompatible standards of conduct for the Defendants cannot satisfy the requirements of certification in light of plaintiffs' claims. *See Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 421 (5th Cir. 1998). The phrase "incompatible standards of conduct" refers to the situation where "different results in separate actions would impair the opposing party's ability to pursue a uniform continuing course of conduct." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1193 (9th Cir. 2011) (quoting 7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, Federal Practice and Procedure § 1773 at 431 (2d ed.1986)). Rule 23(b)(1)(A) certification requires more, however, "than a risk that separate judgments would oblige the opposing party to pay damages to some class members but not to others or to pay them different amounts...." *Id.* Indeed, given the individual-specific nature of the plaintiffs' claims for monetary damages, there can be no perceived "risk of inconsistent adjudications or incompatible standards of conduct in having those claims adjudicated separately." *See Allison*, 151 F.3d at 421.

    Second, the class is not certifiable under Rule 23(b)(1)(B). A class that fails to meet Rule 23(b)(1)(A) may still be certified under Rule 23(b)(1)(B) when "prosecuting separate actions by or against individual class members would create a risk of ... (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B). The "shared character of rights

claimed or relief awarded" under a Rule 23(b)(1)(B) class "entails that any individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833–34, 119 S. Ct. 2295, 2308–09, 144 L. Ed. 2d 715 (1999). Indeed, a Rule 23(b)(1)(B) class is "usually applied when a 'limited fund' exists, such that non-class members seeking damages would likely deplete the fund and deprive class members of any recovery." *Baker v. Wash. Mut. Fin. Grp., LLC.*, 193 Fed. Appx. 294, 297 (5th Cir. 2006) (citing *Ortiz*, 527 U.S. at 815. Here, Plaintiffs do not contend that a limited fund exists and otherwise have not and cannot show how any individual adjudication of a particular property owner's Chinese drywall claim would substantially affect or dispose of any other class member's claims. For this reason, certification is improper under Rule 23(b)(1)(B).

## IV.  CONCLUSION

For these reasons, the Court should deny class certification because Plaintiffs did not timely move for class certification and, cannot otherwise meet their burden to establish a certifiable class under Rule 23(a), (b)(1), (b)(2), or (b)(3).

Respectfully submitted,

**FISHMAN HAYGOOD, LLP**

/s/ *Kerry J. Miller*
**KERRY J. MILLER (#24562), T.A.
PAUL C. THIBODEAUX (#29446)
DANIEL J. DYSART (#33812)**
201 St. Charles Avenue, Suite 4600
New Orleans, LA  70170
Telephone:  504.556.5549
Facsimile:  504.310.0275
Email:  kmiller@fishmanhaygood.com
*Counsel for Defendant,
The Knauf Defendants*

## CERTIFICATE OF SERVICE

      I hereby certify that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, individually to pro se claimants via U.S. Mail, and that the foregoing was filed with the Clerk of Court of the United States Court for the Eastern District of Louisiana, on this 9th day of December, 2019.

                                                /s/ *Kerry J. Miller*
                                                **KERRY J. MILLER**