**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **In Re: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL 2047**<br><br>**SECTION "L"** |
| **This document relates to:**<br><br>***Elizabeth Bennett, et al v. Gebr. Knauf Verwaltungsgesellschaft, KG, et al***<br><br>**Case No. 14:cv-2722** | **JUDGE ELDON FALLON**<br><br>**MAGISTRATE JOSEPH WILKINSON, JR.** |

**OPPOSITION TO PLAINTIFFS' MOTION FOR SUGGESTION OF REMAND**

**MAY IT PLEASE THE COURT:**

Defendants, Knauf Gips KG and Gebr. Knauf (Tianjin) Co., Ltd. (the "Knauf Defendants"), through undersigned counsel, respectfully submit this Memorandum in Support of their Opposition to Plaintiffs' Motion for Suggestion of Remand (R. Doc. 22384). For the reasons stated herein, Plaintiffs' Motion should be denied.

## I. Factual and Procedural Background

### A. MDL 2047

From 2004 through 2006, a housing boom in parts of the United States and rebuilding efforts necessitated by Hurricanes Rita and Katrina in the Gulf South led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used to construct and refurbish homes in coastal areas of the country, notably the Gulf and East Coasts. Sometime after the Chinese drywall was installed, homeowners began to complain of foul-smelling odors, the corrosion and blackening of metal wiring, surfaces,

and objects, and the breaking down of appliances and electrical devices in their homes. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829–30 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014). Many of these homeowners also began to complain of various physical afflictions believed to have been caused by the Chinese drywall.

These homeowners then began to file lawsuits in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. Because of the commonality of facts in the various cases, this litigation was designated as a multidistrict litigation. Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation ("JPML") on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 09-2047 before this Court. On June 16, 2009, this Court entered PTO 1 regarding preservation of evidence, amongst other things. On October 9, 2009, this Court entered PTO 1(B) regarding preservation of evidence. On January 24, 2012, this Court entered PTO 1(I) regarding preservation of evidence.

Since the inception of MDL 2047 in June of 2009, numerous cases have been consolidated, containing thousands of claims; over 20,000 documents have been entered into the record, millions of documents have been exchanged in discovery, dozens of depositions have been taken, and over 30 Pretrial Orders have been issued; the Court has appointed steering committees and liaison counsel for plaintiffs, homebuilders, insurers, installers, and manufacturers; it has presided over monthly status conferences, hearings, and several bellwether trials.[1]

[1] *See* Order, R. Doc. 16570 at 3-4.

**B. The Bennett Complaint**

The original Bennett Complaint was filed on November 13, 2014 in the Northern District of Alabama and was subsequently transferred and consolidated into MDL 2047. The Complaint was amended multiple times to amend the parties and claims. The Fifth Amended Class Action Complaint (the "Fifth Amended Complaint") was filed on May 14, 2018. Following the Fifth Amended Complaint, certain plaintiffs intervened. The Fifth Amended Complaint is the operative complaint in this matter.

After the Fifth Amended Complaint was entered and, as discussed at the March 7, 2018 status conference, the Knauf entities filed responsive pleadings, including various motions to dismiss and motions for summary judgment that were granted, resulting in dismissals with prejudice for all but two defendants. *See* R. Docs. 21794-95. As to the remaining defendants, the Knauf Defendants, the parties agreed to plaintiff form submissions and deadlines for submissions of Plaintiff Profile Forms ("PPF") and Supplemental Plaintiff Profile Forms ("SPPF") in the fall of 2018. On December 19, 2018, the Court entered a Case Management Order ("CMO") that included deadlines for the completion of discovery of Plaintiff Fact Sheets ("PFS") and third-party discovery. *See* R. Doc. 21992. The PFSs and required supporting documents were required to be submitted by February 18, 2019.

Plaintiffs waited until a few days before the PFS deadline to produce PFSs and supporting documents. The Knauf Defendants moved to dismiss those that were not filed by the deadline (R. Doc. 22107) and commenced review of the over 100 PFSs produced along with supporting documents. Following review, on April 2, 2019, the Knauf Defendants began to file motions to dismiss/strike claims for Plaintiffs' failure to provide complete responses and documentation in support of their claims. *See* R. Doc. 22206. On April 23, 2019, the Court heard oral argument and it was Plaintiffs' position that the submitted forms and supporting documents were complete and

not deficient. Therefore, the Court ordered that the parties move towards plaintiff depositions and directed the parties to file any necessary motions if supplemental documents were or were not produced. *See* R. Doc. 22227.

Following multiple extensions of discovery deadlines at the benefit of *all* parties, the Court issued the most recent and operative CMO on November 4, 2019 (R. Doc. 22359), which ends fact discovery on December 31, 2019. The Court's operative CMO directs the parties to "adhere to the Case Management Order as outlined" in the Order and the Court has noted the importance of completing discovery before the end of the year at recent status conferences. Since May of 2019, the Knauf Defendants have worked diligently to set Plaintiff depositions and have accommodated Plaintiffs' schedules and choice of location for depositions. The majority of the depositions have resulted in the identification of supplemental Plaintiff documents not produced in connection with the PPFs, SPPFs, and/or PFSs. In some instances, those documents have been produced after the depositions, requiring potential redepositions, and in others, no further documents have been received. At the same time, the Knauf Defendants have been required to unilaterally set all remaining Plaintiff depositions for the month of December in order to ensure compliance with the Court's CMO.[2]

Now, despite Plaintiffs prior assertions and the CMO's directive to Plaintiffs to file individual protective actions in courts of competent venue and jurisdiction,[3] Plaintiffs seek a

[2] As discussed at a recent status conference, due to Plaintiffs not being made available for depositions in September and October and multiple depositions being cancelled by Plaintiffs in November and December, the Knauf Defendants have been forced to unilaterally set the "time and place" of all remaining depositions pursuant to Rule 30 in order to complete the depositions by the discovery deadline.

[3] In light of the failure of Plaintiffs to dismiss class allegations or timely seek certification, the Knauf Defendants have filed a Motion to Deny Class Certification under Rule 23. *See* R. Doc. 22399.

suggestion of remand and ask this Court to remand the matter to the Northern District of Alabama to allow all 130 cases to begin discovery anew.[4]

## II. Legal Standard for Remand

"'The Panel is reluctant to order remand absent a suggestion of remand from the transferee district court.' … There are no public figures evidencing how often, if ever, the Panel has remanded a case over the objection of the transferee judge." *DeLaventura v. Columbia Acorn Tr.*, 417 F. Supp. 2d 147, 152 (D. Mass. 2006) (quoting R. Proc. Jud. Panel Multidistrict Litig. 7.6(d)).

## III. Argument

### A. Maintaining this action in the Transferee District Court is consistent with the purpose of multi-district consolidation and the prerequisites for multi-district consolidation remain applicable.

"Since all 94 district courts follow identical rules concerning discovery and trial preparation, one excellent innovation in civil practice is the idea that a single judge might manage a number of "related" cases, getting them all ready for trial in a uniform manner and returning the "trial-ready" cases from whence they came (i.e., to the district courts with proper jurisdiction and venue) for trials before local juries." *DeLaventura*, 417 F. Supp. 2d at 148. At present, the over 120 consolidated claims in *Bennett* are not "trial-ready" and have not completed consolidated discovery and other pre-trial proceedings as set forth in the CMO. While Plaintiffs allege a series of issues related to the facts of their individual claims and the discovery they have produced, it is the purpose of this MDL and the consolidation of discovery and pre-trial issues to efficiently complete pre-trial proceedings and prepare the claims for trial, which will take place in multiple different courts. Remand at this juncture would directly negate the purposes of multi-district

[4] Plaintiffs have alternatively sought a one-hundred eighty (180) day extension of all deadlines to start conducting discovery to support their claims and damages, which the Knauf Defendants have opposed. R. Doc. 22398.

consolidation and this Court's operative CMO. Indeed, maintaining this action in the Transferee District reinforces those purposes.

"The three prerequisites for multi-district consolidation are: (1) existence of a common question of fact, (2) transfer will be convenient for witnesses and parties, and (3) transfer will promote the just and efficient conduct of the action." 3 Owen & Davis on Prod. Liab. § 21:5 (4th ed. 2019) (citing 28 U.S.C. § 1407(a)). "The most important criteria appears to be that transfer will, on balance, serve the just and efficient conduct of the actions." *Id.* (citing cases). At present, all three prerequisites remain applicable to the *Bennett* action: (1) many of the claims present similar discovery-based issues that are more appropriately handled through consolidation; (2) retaining the action in the Transferee District is convenient for witnesses and parties, who can rely on one schedule and one set of rules; and (3) consolidation promotes efficient conduct of the action. On the other hand, if remand occurs at this time, there will be over 120 claimants with 130 property cases that will be "reset"—taxing judicial resources in dozens of different courts, subject to different schedules, likely to face inconsistent rulings, and at a complete waste of this Court's years-long efforts to complete this MDL's consolidated proceedings and ready claims for transfer. Finally, other courts have acknowledged that this Court is well-equipped to handle cases of this nature. *See, e.g.*, *DeLaventura*, 417 F. Supp. 2d at 156 (discussing Judge Fallon's superb handling of *Vioxx*).

**B. There is no reason to deviate from the CMO.**

Plaintiffs contend that remand is appropriate because this action has only involved individualized (as opposed to centralized) discovery for many years but fail to provide a compelling reason to disturb the current agreed-upon CMO. Indeed, as this Court is well-aware, every MDL it has presided over has dealt with consolidated, pre-trial proceedings of individual plaintiff issues like plaintiff submission forms, discovery deficiencies, depositions, and dispositive

motions. Additionally, Plaintiffs have not explained their motive for suddenly moving for such relief now if, in fact, individualized discovery was a concern for many years.

There is no reason to disrupt the CMO that the Knauf Defendants and the *Bennett* Plaintiffs previously agreed to, which runs discovery through the end of the year and additional deadlines into Q1 of 2020. R. Doc. 22359 at 1-2. Doing so would conform with the goals of consolidated MDL proceedings, this Court's CMO, and will not delay but will actually streamline the claims and issues to be tried in the individual courts of competent venue and jurisdiction. In short, Plaintiffs are unable to provide any justification for abandoning this current CMO and the deadlines within, and instead attach an outdated version of the CMO in support of their Motion.

**C. Plaintiffs' argument for remand hinges on class certification, yet Plaintiffs have failed to timely seek certification or establish the requirements for Rule 23 certification.**

Multi-district consolidation allows a transferee court to prepare a number of related cases for trial in a uniform manner and thereafter return them "to the district courts with *proper jurisdiction and venue*[] for trials before local juries." *DeLaventura*, 417 F. Supp. 2d at 148 (emphasis added). Here, Plaintiffs' argument for remand relies on the assumption that the U.S. District Court for the Northern District of Alabama is the district court with proper jurisdiction and venue for the *Bennett* action based on Plaintiffs' own illogical and unsupported conclusion that the *Bennett* putative class will be certified and the individual claims consolidated for trial. *See* R. Doc. 22384-1 at 6 ("It would be more efficient for the remaining issues in this case to be decided by the district judge who will actually be presiding over the trial in the Northern District of Alabama."). However, Plaintiffs' own admissions indicate that certification is unlikely and therefore the

Northern District of Alabama will not be the "district court[] with proper jurisdiction and venue" for all of the *Bennett* claimants.[5]

Particularly, Plaintiffs' Motion demonstrates that the predominance requirement for class certification under Rule 23(b)(3) is unlikely to be satisfied in *Bennett*, as common questions do not "predominate over any questions affecting only individual [class] members." *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, No. 09-4115, 2019 WL 2924135, at *9 (E.D. La. July 8, 2019) (citations omitted).[6] For instance, Plaintiffs state that the remaining issues in the *Bennett* case involve "(i) fact-intensive questions about whether certification of a homeowner class in *Bennett* is appropriate, (ii) fact-intensive questions about the extent and cost of remediation Plaintiff and proposed class members will demand for each affected property, and (iii) fact-intensive questions about other types of damages allegedly suffered by Plaintiff and proposed class members." R. Doc. 22384-1 at 6. Additionally, Plaintiffs note that discovery in this action has led to "hundreds of discrete responses per plaintiff" corresponding to "130 affected properties." R. Doc. 22384-1 at 1.[7] Accordingly, Plaintiffs' own Motion evidences that predominance is unlikely to be satisfied for class certification.

The Knauf Defendants likewise believe that the *Bennett* class cannot be certified. There are presently over 120 plaintiffs named in *Bennett*, with properties or former properties in five (5) states. Some claimants still own their subject property, while others have sold their property or lost it in foreclosure. Some of the properties have been remediated, either partially or completely, and others have not. Some claimants purchased property when they knew or should have known that

---

[5] Plaintiffs cannot seek and establish certification as set forth in the Knauf Defendants' Motion to Deny Class Certification. R. Doc. 22399.

[6] *See* R. Doc. 22287 at 18 (same).

[7] See also R. Doc. 22384-1 at 2 ("The parties in Bennett are now involved in discovery that relates only to the individual claims….").

it contained Chinese drywall and some claimants purchased in foreclosure sales. In short, to the extent there are common issues, the individualized issues predominate in this matter.

Indeed, the only common issue is the conduct of the Knauf Defendants. And, despite the Knauf Defendants' conduct remaining the same for each plaintiff, "whether the proposed class members … are entitled to certain types of remediation damages remains to be determined" and, "given the state-specific and Plaintiff-specific nature of these claims, beyond a superficial level, this issue is not common to all class members." *Chinese-Manufactured Drywall*, 2019 WL 2924135, at *10 (R. Doc. 22287 at 18-19). Consequently, Plaintiffs cannot sustain their "burden of demonstrating that 'questions of law or fact common to class members predominate over any questions affecting only individual members.'" *Id.* (quoting Fed. R. Civ. P. 23(b)(3)). Plaintiffs cannot demonstrate predominance.

Additionally, the class is not certifiable as a Rule 23(a) and (b)(2) class because monetary relief is not "incidental" to the injunctive relief sought in this matter, the injunctive relief does not predominate over the monetary relief, and this Court should deny class certification under Rule 23(b)(2). *See* Motion to Deny Class Certification, R. Doc. 22339.[8] Furthermore, certification in unavailable under Rule 23(b)(1)(A) because the action is primarily and principally to recover money damages,[9] and given the individual-specific nature of the plaintiffs' claims for monetary

[8] To qualify for class-wide injunctive relief, class members must have been harmed in essentially the same way, and injunctive relief must predominate over monetary damage claims. *Id*. (citing *Bolin v. Sears*, *Roebuck & Co*., 231 F.3d 970, 975 (5th Cir. 2000). "[M]onetary relief predominates in [Rule 23](b)(2) class actions unless it is incidental to requested injunctive or declaratory relief." *Allison v. Citgo Petroleum Corp*., 151 F.3d 402, 415 (5th Cir. 1998). Incidental damages "flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief." *Id*. "Liability for incidental damages should not require additional hearings to resolve the disparate merits of each individual's case; it should neither introduce new and substantial legal or factual issues, nor entail complex individualized determinations." *Id*.

[9] All plaintiff submissions seek monetary damages, and not injunctive relief. *See* R. Doc. 22339. *See also Mitchell v. State Farm Fire & Cas. Co.*, 327 F.R.D. 552, 565 (N.D. Miss. 2018) (citing *Johnson v. Geico Cas. Co.*, 673 F. Supp. 2d 255, 270 (D. Del. 2009) ("Certification under Rule 23(b)(1)(A) is generally inappropriate where the primary relief sought is monetary damages."); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1193 (9th Cir. 2001); *Morris v. Transouth Financial Corp.*, 175 F.R.D. 694, 699 (M.D. Ala. 1997) ("[T]his is primarily and principally an action to recover damages. As such, it is inappropriate for certification

damages, there can be no perceived "risk of inconsistent adjudications or incompatible standards of conduct in having those claims adjudicated separately." *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 421 (5th Cir. 1998); *see also* R. Doc. 22339.

Consequently, the *Bennett* action is unlikely to be certified as a Rule 23 class in the Northern District of Alabama and, absent certification, venue is improper in that court for the majority of the claimants. Thus, without a certifiable class, or individual actions in courts of competent venue and jurisdiction, remand is inappropriate. Furthermore, because Plaintiffs' claims will be treated as individual claims, it would be inappropriate at this time to transfer to an improper court or a multitude of different courts while pre-trial and established CMO issues remain outstanding.

**D. This Court can decide dispositive motions.**

Finally, it is within this Court's discretion to rule on substantive motions and pre-trial motions regarding discovery. Some of the more frequently used techniques for managing MDLs include making substantive rulings on consolidated legal claims. 3 Owen & Davis on Prod. Liab. § 21:6 (4th ed. 2019) (citing *In re Temporomandibular Joint (TMJ) Implants Products Liability Litigation*, 97 F.3d 1050 (8th Cir. 1996) (summary judgment upheld on defendants' lack of duty to warn recipients of dangers in product and that product was not defectively designed)); *see also In re Norplant Contraceptive Prod. Liab. Litig.*, 215 F. Supp. 2d 795, 835 (E.D. Tex. 2002) ("The court's ruling on these two motions for partial summary judgment therefore completes the centralized pretrial proceedings pertaining to Multidistrict Litigation number 1038[.]").

---

under Rule 23(b)(1)(A)"); *Rambarran v. Dynamic Airways, LLC*, No. 14-10138, 2015 WL 4523222, at *12 (S.D.N.Y. July 27, 2015) ("Here, Plaintiffs are seeking monetary damages ... [c]ertification under Rule 23(b)(1)(A) is thus unavailable.").

Accordingly, the Court should not hesitate to rule on the Knauf Defendants' pending dispositive motions in this matter.

## IV. Conclusion

For the reasons stated herein, the Knauf Defendants respectfully submit that this Court should deny Plaintiffs' Motion for Suggestion of Remand and continue to oversee the just and efficient conduct of the *Bennett* action.

Respectfully submitted,

**FISHMAN HAYGOOD, L.L.P.**

*/s/ Kerry J. Miller*
**KERRY J. MILLER (#24562), T.A.**
**PAUL C. THIBODEAUX (#29446)**
**DANIEL J. DYSART (#33812)**
201 St. Charles Avenue, 46TH Floor
New Orleans, LA 70170
Telephone: (504) 556-5549
Facsimile: (504) 310-0275
Email: kmiller@fishmanhaygood.com
Email: pthibodeaux@fishmanhaygood.com
Email: ddysart@fishmanhaygood.com

***Counsel for the Knauf Defendants***

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that the above and foregoing pleading has been served via electronic mail on all counsel of record this 10th day of December, 2019.

*/s/ Kerry J. Miller*
**KERRY J. MILLER**