UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALLPRODUCT LIABILITY LITIGATION | : : : : : : : : | MDL NO. 2047<br><br>SECTION: L<br><br>JUDGE FALLON<br>MAG. JUDGE WILKINSON |

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Comes now Art Edge, PC ("Edge") and submits the following in support of its Motion to Compel Arbitration and Stay Proceedings. Edge shows onto the Court the following:

**STATEMENT OF RELEVANT FACTS**

1. In the Fall of 2009, Dan Bryson of Lewis & Roberts, LLC (now with Whitfield, Bryson & Mason, LLP) and others (Bryson Group)[1] approached Brian Collins (Collins Law Office f/k/a Collins & Horsley f/k/a Collins & Downey), Art Edge (Art Edge, PC) and Eddie Sexton (Gentle, Turner & Sexton) (Collins Group) regarding a Co-Counsel Agreement related to Chinese Drywall cases filed in the Eastern District of Louisiana. (Exhibit A − Affidavit of H. Arthur Edge, III, at ¶ 7.)

2. Contained within the Agreement is a "Dispute Resolution" clause that reads "Alabama law shall apply to all disputes related to the terms of this agreement. In the event of

---

[1] The Bryson Group is comprised of Dan Bryson of Lewis & Roberts, PLLC (Currently with Whitfield, Bryson & Mason, LLP), Stephen Mullins of Luckey & Mullins, Gary Mason of Mason, LLP (Currently with Whitfield, Bryson & Mason, LLP), Joe Rhine of Lea, Rhine & Rosburgh, PLLC and Christopher Coffin of Pendley, Baudin and Coffin, LLP

a dispute arising from this agreement, the Law Firms agreed to submit the matter to confidential and binding arbitration utilizing rules promulgated by the American Arbitration Association ("AAA"). The parties agree to first try to select an unbiased arbitrator; however, if that effort fails, to file with the AAA. The hearing would be in Birmingham, Alabama." (*See* Co-Counsel Agreement, included as "Attachment 1" to Exhibit A.)

3. Additionally, the Agreement affects interstate commerce because the parties to the agreement are headquartered in different states requiring travel for meetings and participating in the Louisiana-based MDL and because funds are being transferred across state lines.

## ARGUMENT

I. **The Court Lacks Jurisdiction Over this Fee Dispute.**

 A. **The Parties' Fee-Related Claims Must be Arbitrated Pursuant to the FAA.**

The FAA "is a congressional declaration of a liberal policy favoring arbitration." *Moses H. Cone Mem'l. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Section 3 of the FAA provides for a stay of legal proceedings whenever the issues in a case are within the reach of an arbitration agreement. *Midwest Mechanical Contractors, Inc. v. Commonwealth Constr. Co.,* 801 F.2d 748, 751 (5th Cir. 1986) (discussing 9 U.S.C. § 3). If a valid arbitration agreement exists, the FAA is <u>mandatory</u> and divests courts of jurisdiction: "If the issues in a case are within the reach of the agreement, the district court has no discretion under section 3 to deny the stay." *Id.*

To succeed on a motion to compel arbitration and stay proceedings, a party must prove two things: (1) that there is a written agreement calling for arbitration between it and the other party or parties; and (2) that the subject transaction involves or affects interstate commerce. *See Ex parte Allen*, 798 So. 2d 668, 671 (Ala. 2001). All claims alleged in this matter are subject to arbitration pursuant to the FAA, 9 U.S.C. § 1, *et seq*., and applicable Alabama law, because the Co-Counsel Agreement incorporates an arbitration clause which applies to all parties, and because the transactions at issue involve and affect interstate commerce.

### i. The Co-CounselAgreement was Signed by Edge and Bryson and Incorporates a Written Arbitration Agreement.

The Co-Counsel Agreement between the parties was signed by Art Edge, on behalf of H. Arthur Edge, III, P.C., and by Daniel K. Bryson, on behalf of Lewis & Roberts, PLLC (Ex. A ¶ 7; Ex. A, Attachment 1 [the Co-Counsel Agreement]), and incorporates the following arbitration provision:

> **§ 7 Dispute Resolution** Alabama law shall apply to all disputes related to the terms of this agreement. In the event of a dispute arising from this agreement, the Law Firms agree to submit the matter to confidential and binding arbitration utilizing rules promulgated by the American Arbitration Association ("AAA"). The parties agree to first try to select an unbiased arbitrator; however, if that effort fails, to file with the AAA. The hearing would be in Birmingham, Alabama.

(Ex. A, Attachment 1 ¶ 7.) Accordingly, all claims asserted in this matter are subject to arbitration pursuant to the parties' intent as expressed by the arbitration agreement.

### ii. The Arbitration Clause is Broad and Encompasses all Fee Related Disputes.

3

The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *see also Harvey v. Joyce*, 199 F.3d 790, 793 (5th Cir. 2000) (discussing *Moses H. Cone*). In making this determination, the Fifth Circuit distinguishes between broad and narrow arbitration clauses. If the clause is broad, the action should be stayed and the arbitrators permitted to decide whether the dispute falls within the clause. *Sedco v. Petroleos Mexicanos Mexican Nat'l Oil*, 767 F.2d 1140, 1145 n. 10 (5th Cir. 1985) (citing *Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59, 64 (2d Cir. 1983)). On the other hand, if the clause is narrow, the court may determine whether the dispute falls within the clause and should be compelled to arbitration. *Id.* Any dispute is to be decided in favor of arbitration: "[a] presumption of arbitrability exists requiring that whenever the scope of an arbitration clause is fairly debatable or reasonably in doubt, the court should decide the question of construction in favor of arbitration. *Mar-Len of Louisiana, Inc. v. Parsons-Gilbane*, 773 F.2d 633, 635–36 (5th Cir. 1985) (citing *United Steelworkers of America v. Warrior & Gulf Navigational Co.*, 363 U.S. 574, 583, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)). Indeed, "[t]he weight of this presumption is heavy: arbitration should not be denied 'unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation that could cover the dispute at issue.'" *Id.* at 636 (quoting *Wick v. Atlantic Marine, Inc.*, 605 F.2d 166, 168 (5th Cir. 1979)).

Courts generally hold that arbitration clauses containing the "any dispute" language, such as the one within the Co-Counsel Agreement, are of the "broad" type. *See Sedco*, 767 F.2d at 1144 (clause deemed broad that governed "any dispute or difference between the parties"); *Mar–Len*, 773 F.2d at 634 (clause deemed broad that governed "any dispute . . . with respect to the interpretation or performance of" the contract); *Neal*, 918 F.2d at 38 (broad clause governed "any and all disputes" between the parties). As noted in *Sedco*, "[i]t is difficult to imagine broader general language than that contained in the . . . arbitration clause, 'any dispute' . . . ." 767 F.2d at 1145 (*quoting Caribbean Steamship Co., S.A., v. Sonmez Denizcilik Ve Ticare*t, 598 F.2d 1264, 1266 (2d Cir.1979)).

The language used in the Co-Counsel Agreement, which was draft by The Bryson Group, states that "In the event of a dispute arising from this agreement, the Law Firms agree to submit the matter to confidential and binding arbitration…." (Ex. A, Attachment 1 ¶ 7.) The scope of this language is broad and, pursuant to the FAA and cases cited above, dictates that this court stay this proceeding and compel this dispute to arbitration.

### iii.   The Co-Counsel Agreement Involves and Affects Interstate Commerce.

In order to compel arbitration, the transaction in question must involve interstate commerce so as to render the FAA, 9 U.S.C. § 1, *et seq.*, applicable. Section 2 of the FAA provides, in pertinent part, that a "written provision in . . . a contract evidencing a transaction **involving commerce** to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

5

revocation of any contract." 9 U.S.C. § 2 (emphasis added). The United States Supreme Court explained what activities "involve commerce" under the FAA in *Citizens Bank v. Alafabco, Inc.*, stating:

> We have interpreted the term "involving commerce" in the FAA as the functional equivalent of the more familiar term "affecting commerce"--words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power. *Allied-Bruce Terminix Cos.,* 513 U.S., at 273-274, 115 S.Ct. 834.
>
> . . .
>
> **Congress' Commerce Clause power "may be exercised in individual cases without showing any specific effect upon interstate commerce" if in the aggregate the economic activity in question would represent "a general practice . . . subject to federal control."** *Mandeville Island Farms, Inc. v. American Crystal Sugar Co.,* 334 U.S. 219, 236, 68 S.Ct. 996, 92 L.Ed. 1328 (1948). *See also Perez v. United States,* 402 U.S. 146 (1971); *Wickard v. Filburn,* 317 U.S. 111, 127-128 (1942). Only that general practice need bear on interstate commerce in a substantial way. *Maryland v. Wirtz*, 392 U.S. 183, 196-197, n. 27 (1968); *NLRB v. Jones & Laughlin Steel Corp*., 301 U.S. 1, 37-38 (1937).

539 U.S. 52, 123 S.Ct. 2037 (2003) ("*Alafabco*") (emphasis added). Following *Alafabco*, the Alabama Supreme Court has held that "the FAA is applicable to transactions (1) that use the channels of interstate commerce, (2) that involve the instrumentalities of interstate commerce, or persons or things in interstate commerce, or (3) that involve general activities having a substantial effect on interstate commerce." *Edwards v. Costner*, 979 So. 2d 757, 761 (Ala. 2007) (citing *McKay Bldg. Co. v. Juliano,* 949 So. 2d 882, 885 (Ala. 2006)). Furthermore, when determining whether contracts fall under the FAA, "the requirement that an individual contract involve interstate commerce should be read in the broadest possible terms because the word 'involving' signals 'an intent to exercise Congress' commerce power to the full.'" *Jim

*Walter Homes, Inc. v. Saxton*, 880 So. 2d 428, 432 (Ala. 2003) (quoting *Allied-Bruce Terminix Cos. V. Dobson*, 513 U.S. 265, 277 (1995)).

The Co-Counsel Agreement involves or affects interstate commerce because it was entered into by parties in various different states, involves claims litigated in Louisiana, and because the parties were required to cross state lines including firms located in North Carolina, Washington DC, Mississippi and Alabama and send funds electronically across state lines in order to perform their contractual duties under the Co-Counsel Agreement.

**WHEREFORE**, premises considered, Edge requests that this Honorable Court compel arbitration of all claims alleged by all parties pursuant to the arbitration agreement attached hereto, and stay all proceedings until arbitration has completed, and for any other or different relief the Court deems just.

s/ David L. Horsley
David L. Horsley (ASB-6090-i47h)


s/ H. Arthur Edge, III
H. Arthur Edge, III (ASB-8927-d64h)

**OF COUNSEL**:
ARTHUR EDGE, III, P.C.
2320 Highland Avenue South, Suite 175
Birmingham, Alabama 35205
telephone: (205) 453-0322
facsimile: (205) 453-0326
art@edgelawyers.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on December 10, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF E-filing system and Lexis File and Serve which will send notification of such filing; and I hereby certify that any non-E-filing participants to whom the foregoing is due will have a copy of same placed in the United States mail, first class postage prepaid and properly addressed this same day.

                                                   s/ H. Arthur Edge, III
                                                   OF COUNSEL