UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL 2047<br><br>SECTION "L" |
| **This document relates to:**<br><br>*Elizabeth Bennett, et al v. Gebr. Knauf Verwaltungsgesellschaft, KG, et al*<br><br>Case No. 14:cv-2722 | JUDGE ELDON FALLON<br><br>MAGISTRATE JOSEPH WILKINSON, JR. |

**MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
ON CLAIMS ASSERTED BY SKYLINE GLASS LLC**

**MAY IT PLEASE THE COURT:**

Defendants, Knauf Gips KG and Knauf Plasterboard (Tianjin) Co., Ltd. (the "Knauf Defendants"), through undersigned counsel, respectfully submit this Memorandum in Support of their Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as to the claims asserted by Skyline Glass LLC against them in Plaintiffs' Fifth Amended Class Action Complaint (the "Fifth Amended Complaint").

**I.  Factual and Procedural Background**

   *A.  MDL 2047 and the Bennett Complaint*

From 2004 through 2006, a housing boom in parts of the United States and rebuilding efforts necessitated by Hurricanes Rita and Katrina in the Gulf South led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used to construct and refurbish homes in coastal areas of the country,

notably the Gulf and East Coasts. Sometime after the Chinese drywall was installed, homeowners began to complain of foul-smelling odors, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829–30 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014). Many of these homeowners also began to complain of various physical afflictions believed to have been caused by the Chinese drywall.

These homeowners then began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. Because of the commonality of facts in the various cases, this litigation was designated as a multidistrict litigation. Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation ("JPML") on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 09-2047 before this Court. On June 16, 2009, this Court entered PTO 1 regarding preservation of evidence, amongst other things. On October 9, 2009, this Court entered PTO 1(B) regarding preservation of evidence. On January 24, 2012, this Court entered PTO 1(I) regarding preservation of evidence.

Since the inception of MDL 2047 in June of 2009, numerous cases have been consolidated, containing thousands of claims; over 20,000 records docs have been entered into the record, millions of documents exchanged in discovery, dozens of depositions, and over 30 Pretrial Orders have been issued; the Court has appointed steering committees and liaison counsel for plaintiffs, homebuilders, insurers, installers, and manufacturers; it has presided over monthly status conferences, hearings, and several bellwether trials.[1]

---

[1] *See* Order, R. Doc. No. 16570, pp. 3-4.

### B. *The Bennett Complaint and Skyline*

The original Bennett Complaint was filed on November 13, 2014 in the Northern District of Alabama and was subsequently transferred and consolidated into MDL 2047. The Complaint was amended multiple times to amend the parties and claims. Skyline was listed in an intervention complaint to the Fifth Amended Complaint. The Fifth Amended Complaint was filed on March 6, 2018. The Fifth Amended Complaint is the operative complaint in this matter.

Skyline is a plaintiff in the operative Fifth Amended Complaint and has made claims against Knauf Gips KG and KPT regarding the alleged presence of defective Chinese drywall installed in their property located at 10769 NW 81st Lane, Doral, Florida (the "Property"). In conducting discovery in this MDL and in Bennett, this Court approved a Plaintiff Profile Form, Supplemental Plaintiff Profile Form, Owner Disclosure Affidavit, and Plaintiff Fact Sheet to be completed by Plaintiffs and set forth full and complete answers and documents regarding the claims and damage amounts sought by all Bennett Plaintiffs. Skyline completed and submitted a PPF, SPPF, PFS, <u>but</u> failed to complete an Owner Disclosure Affidavit. The documents were completed under penalty of perjury.

Skyline bought the Property on January 18, 2018. (Exhibit A - PFS). Skyline was aware the Property that the property was built around 2006 and that it was being sold at an auction following foreclosure. (Exhibit B: Transcript at 27, 33). Prior to the sale of the Property, Skyline was aware in general about the presence of Chinese-drywall during the construction boom and on the news and in light of it being in the residential and construction industry in South Florida. (Exhibit B: Transcript at 28-30). Skyline was also aware of the existence of allegedly defective Chinese-manufactured drywall from the news in South Florida and that it involved properties built in 2006 and 2007. *Id*. Skyline never viewed the Property. (Exhibit B: Transcript at 54). Skyline

never inspected the Property prior to purchase. (Exhibit B: Transcript at 23).  Skyline purchased the Property without receiving property disclosures. (Exhibit B: Transcript at 41).  Skyline purchased the Property following a calculation of the market value of the Property and an amount it was willing to bid to account in a calculated risk. (Exhibit B: Transcript at 43-44).  Despite Skyline's understanding that the market value of the Property prior to purchasing was over $300,000, it purchased the Property at auction for $251,000. (Exhibit B: Transcript at 50).  Notwithstanding the knowledge of the existence of Chinese drywall in general, having no disclosures, no visual inspection, and no Chinese-drywall inspection, Skyline went forward and closed on the Property and purchased it "as-is."  Skyline did not obtain any assignments or warranties from the prior owners or the seller. (Exhibit B: Transcript at 33-34).

Skyline never moved into the Property. (Exhibit B: Transcript at 33).  Skyline never had to move into another Property due to Chinese drywall and never paid rent to live elsewhere. (Exhibit B: Transcript at 47).   The owner of Skyline – Santiago Guzman – resided in different property before the purchase of the Property and still remains there. (Exhibit B: Transcript at 47).  As an investment property, Skyline never offered the Property for lease or received any offer to lease until after the Property was remediated. (Exhibit B: Transcript at 59-60).  Skyline has never had the Property appraised and has provided no support for a diminution in value claim. (Exhibit A: PFS). Skyline has not incurred any moving costs related to Chinese drywall, and otherwise has not provided any support for the claim. (Exhibit A: PFS).  Skyline has not incurred any storage costs related to Chinese drywall, and otherwise has not provided any support. (Exhibit A: PFS).  Skyline has not incurred any utility costs related to Chinese drywall, and otherwise has not provided any support. (Exhibit A: PFS).  Skyline has not produced any evidence of remediation costs, and has not provided any proof of payment for any remediation costs. (Exhibit A: PFS).  Skyline has not

produced evidence of damages to any appliances that are related to Chinese drywall. (Exhibit A: PFS). Skyline has not preserved any personal items it alleges were replaced due to Chinese drywall, and has not provided any support for the cost of replacing such items. (Exhibit A: PFS). Skyline has not provided any support for a loss of use/loss of enjoyment claim and has never resided in the Property. (Exhibit A: PFS).

Skyline alleges it performed a full remediation of the Property after July 2018. Skyline did not submit evidence preserved in compliance with PTO 1B, or PTO 1(I), did submit any retained samples or physical evidence of drywall, electrical components, plumbing components, or any personal property it alleges was damaged by Chinese-manufactured drywall. (Exhibit A: PFS). Skyline has not produced any evidence of KPT drywall installed in the Property. (Exhibit A: PFS). Skyline was deposed on November 18, 2019, and did not provide any supplemental documents within twenty-one (21) days of the deposition.

## II.   Legal Standards

### A.   *Rule 56 Summary Judgment Standard*

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is required if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2]  "A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3]

When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the

---

[2] FED. R. CIV. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").
[3] *Bennett v. Hartford Ins. Co. of Midwest*, 890 F.3d 597, 604 (5th Cir. 2018) (quoting *Johnson v. World All. Fin. Corp.*, 830 F.3d 192, 195 (5th Cir. 2016) (internal quotation marks omitted)).

movant bears the burden of proof at trial.[4] However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[5]

On a motion for summary judgment, "[a]lthough 'the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor,' summary judgment remains appropriate if the non-movant's evidence is 'merely colorable' or 'not significantly probative.'"[6] "Only when 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party' is a full trial on the merits warranted."[7] Furthermore, "[d]iscovery is not a prerequisite to the disposition of a motion for summary judgment."[8] "If it appears that further discovery will not provide evidence creating a genuine issue of material fact, the district court may grant summary judgment."[9]

## III.  Argument

### A. *Plaintiff Assumed the Risk of Chinese Drywall by knowingly and voluntarily purchasing the Property "As-Is" under the circumstances.*

In *Blackburn v. Dorta*, 348 So.2d 287 (Fla.1977), the Florida Supreme Court discussed the doctrine of assumption of risk at length, in an attempt to unravel this "enigma wrapped in a mystery." *Id*. at 290 (internal quotation omitted). First, the court addressed "primary assumption

---

[4] *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2558, 91 L.Ed.2d 265 (1986).
[5] *Id.* at 322; *see also Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir. 1993).
[6] *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.,* 892 F.3d 167, 170 (5th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)).
[7] *Lindsey v. Sears Roebuck & Co*., 16 F.3d 616, 618 (5th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249).
[8] *Carder v. Cont'l Airlines, Inc*., 595 F. App'x 293, 299 (5th Cir. 2014) (quoting *Skiba v. Jacobs Entm't Inc*., 587 Fed. Appx. 136, 138 (5th Cir. 2014) (per curiam)).
[9] *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (citing *Access Telecom, Inc. v. MCI Telecomm. Corp*., 197 F.3d 694, 720 (5th Cir.1999); *see also Washington v. Allstate Ins. Co*., 901 F.2d 1281, 1285 (5th Cir.1990) ("This court has long recognized that a plaintiff's entitlement to discovery prior to a ruling on a motion for summary judgment is not unlimited, and may be cut off when the record shows that the requested discovery is not likely to produce the facts needed by the plaintiff to withstand a motion for summary judgment.").

of risk," and explained that this term "is simply another means of stating that the defendant was not negligent, either because he owed no duty to the plaintiff in the first instance, or because he did not breach the duty owed." *Id*. at 290. For example, "[i]t can be said that a passenger assumes the risk of lurches and jerks which are ordinary and usual to the proper operation of the train, but that he does not assume the risk of extraordinary or unusual lurches and jerks resulting from substandard operation of the train." *Id*. at 291. Although articulated in terms of assuming the risk, this concept is more appropriately framed in terms of the standard of care, i.e.

> The railroad owes a duty to operate its train with the degree of care of an ordinary prudent person under similar circumstances which include some lurching and jerking.... So long as the lurching or jerking is not extraordinary due to substandard conduct of the railroad, there is no breach of duty and, hence, no negligence on the part of the railroad.

*Id*. Thus, "primary assumption of risk," rather than an affirmative defense, is instead an attempt to negate that any breach of a duty occurred. The affirmative defense version of the assumption of risk doctrine precludes recovery where a plaintiff voluntarily and unreasonably exposes herself to a known risk, albeit a risk created by a defendant's negligence. *Id*. The Florida Supreme Court offers the example of a landlord who has negligently permitted his tenant's premises to become highly flammable and a fire ensues. *Id*. If the tenant returns from work to find the premises ablaze, but unreasonably rushes into the fire to retrieve his favorite hat, his claims against the landlord would be subject to the assumption of risk doctrine. *Id*. Because the tenant's conduct is clearly unreasonable, the Blackburn court explains that "this conduct can just as readily be characterized as contributory negligence.... It is the failure to exercise the care of a reasonably prudent man under similar circumstances." *Id*.

Here, Skyline bought the Property on January 18, 2018. Skyline was aware the Property was built around 2006 and that it was being sold at an auction following foreclosure. Being in the

residential and construction industry in South Florida, Skyline was aware in general about Chinese-drywall in properties built in 2006 and 2007 during the construction boom and saw the issue of Chinese drywall on the news prior to the sale of the Property. Still Skyline never viewed the Property, never inspected the Property, never conducted a Chinese-drywall inspection and purchased the Property without receiving any property disclosures. Skyline purchased the Property following a calculation of the market value of the Property and an amount it was willing to bid to account for the calculated risk it was taking. Notwithstanding the knowledge of the existence of Chinese drywall, having no disclosures, no visual inspection, and no Chinese-drywall inspection, Skyline went forward and closed on the Property and purchased it "as-is." Skyline also did so despite Skyline's understanding that the market value of the Property prior to purchasing was significantly higher than the amount it bid at the auction. This Court has cautioned that when a property owner purchases property in areas known to have the possibility of Chinese drywall they are assuming a risk without conducting a Chinese drywall inspection. Rec. Doc. 20934. For these reasons alone, Skyline claims are barred under Florida law.

### B. *Plaintiffs Failed to Comply with PTOs and to Preserve and Present Evidence of Drywall Manufacturers and/or Damages to the Prejudice of the Knauf Defendants*.

The evidence demonstrates that Plaintiffs did not comply with the requirements of PTO 1, PTO 1(B), or PTO 1(I). On June 16, 2009, this Court entered PTO 1 regarding preservation of evidence, amongst other things. On October 9, 2009, this Court entered PTO 1(B) regarding preservation of evidence. Pursuant to PTO 1(B), which was entered in October 2009 prior to the remediation of any of the below claims, the Court stated that Owners were and are required to preserve evidence by following a few basic procedures, including but not limited to:

> The parties shall photograph the backside of each Chinese drywall board immediately after it is removed on-site, and, document on a floor plan, building

diagram, or other similar form of documentation, the location of each full or partial Chinese drywall board removed from the property and its photograph. Photographs of the wall sections should be taken so that any markings on the backside of the drywall sections are most clearly visible in the photographs.[10]

On January 24, 2012, this Court entered PTO 1(I) regarding preservation of evidence. Courts have routinely dismissed claims for failing to comply with pretrial orders, particularly when compliance involves a necessary to meet a plaintiff's burden. *In re Deepwater Horizon*, 922 F.3d 660, 665 (5th Cir. 2019); *Moore v. CITGO Ref. & Chemicals Co., L.*P., 735 F.3d 309, 315 (5th Cir. 2013)

 "A district court has broad discretion in all discovery matters, and such discretion will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse." *Moore*, 725 F.3d at 315 (quot*ing Kelly v. Syria Shell Petroleum Dev. B.V*., 213 F.3d 841, 855 (5th Cir. 2000) (internal quotation omitted). Indeed, this Court has previously determined that failure of a plaintiff to comply with the preservations standards in PTO 1, PTO 1(B), and PTO 1(I) results in prejudice to the defendants because without compliance, a plaintiff cannot establish how much, if any, drywall of a  particular manufacturer was or was not installed in the property.[11]

Despite numerous plaintiff forms requesting the information and separate deposition requests for physical evidence of KPT drywall, Plaintiffs did not present any evidence of KPT drywall before, at, or  within 21 days of the deposition   Plaintiff also failed to timely produce evidence of other physical evidence or materials allegedly damaged by Chinese drywall.  This Court has recognized that while Plaintiff may be able to submit additional evidence, including testimony, such evidence is insufficient to overcome the requirements to comply with the

---

[10] *Id*. at p. 3; *see also* PTO 1(B).
[11] See Rec. Doc. 20930 and Rec. Doc. 20933.

preservation and presentment pretrial orders in this matter. Therefore, summary judgment should be granted.

### C. *Plaintiffs' Damages are Unsupported.*

Skyline's claims for loss of use, diminution in value, personal property losses, remediation costs, rental costs, and other costs are unrelated to Chinese drywall, and otherwise completely unsupported. Plaintiff claims $24,000.00 for "rent" that he was going to charge his girlfriend to live in the Property. However, no lease agreement or other evidence has been provided in support. Plaintiff has not provided any evidence to support a loss of use or loss of enjoyment claim and Plaintiff never moved into the Property and has never lived in it since the alleged remediation. Plaintiff has not provided any proof for the alleged remediation costs incurred. Plaintiff's claims for moving costs and other personal property losses are unrelated to Chinese drywall because Plaintiff never moved into the Property. And, the claim is otherwise completely devoid of evidence or support. Indeed, all claims for economic losses are completely empty of any evidence or support. Therefore, as a matter of law, Plaintiff cannot meet its burden to establish these claims under any jurisdiction or claim.

## IV. Conclusion

For the reasons set forth above, this Court should grant summary judgment, dismiss the claims with prejudice.

Respectfully submitted,

**FISHMAN HAYGOOD, LLP**

/s/ *Kerry J. Miller*
**KERRY J. MILLER (#24562), T.A.**
**PAUL C. THIBODEAUX (#29446)**
**DANIEL J. DYSART (#33812)**
201 St. Charles Avenue, 46th Floor
New Orleans, LA 70170
Telephone:  (504) 556-5549
Facsimile:  (504) 310-0275
Email:       kmiller@fishmanhaygood.com
Email:       ddysart@fishmanhaygood.com
*Counsel for Defendant,*
*The Knauf Defendants*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, and to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, and that the foregoing was filed with the Clerk of Court of the United States Court for the Eastern District of Louisiana, on this 11th day of December, 2019.

*/s/ Kerry J. Miller*
**KERRY J. MILLER**