Plaintiff Profile Form - Residential Properties

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE:  CHINESE MANUFACTURED DRYWALL | MDL NO. 2047 | For Internal Use Only |
| PRODUCTS LIABILITY LITIGATION | SECTION: L | File Number |
| THIS DOCUMENT RELATES TO: ALL CASES | JUDGE FALLON | |
| | MAG. JUDGE WILKINSON | Date Received |

This Plaintiff Profile Form must be completed and signed by every person making a claim in this litigation using one form per affected address.  In completing this Profile Form, you are under oath and must provide information that is true and correct to the best of your knowledge.  If you cannot recall all of the details requested, please provide as much information as you can and expressly indicate "unknown" in the space provided when not known.  You must supplement your responses if you learn they are incomplete or incorrect in any material respect.  You may and should consult with your attorney if you have any questions regarding completion of this form.  If you are completing the form for someone who has died or who cannot complete the Profile Form, please answer as completely as you can for that person.

The questions and requests for production contained within this Profile Form are non-objectionable and shall be answered without objection.  By answering this Profile Form, you are not waiving the attorney work product and/or attorney client privileges.  Similarly, by disclosing the identity of consultants, such consultants may remain non-testifying experts and are subject to all protections afforded by law.

To the extent that the form does not provide enough space to complete your responses, you may attach as many sheets of paper as necessary.   All photographs produced in response to this form shall be in color and attached to or printed on 8 1/2" x 11" white paper.

**Section I. Property Information**

| | |
|---|---|
| Name Property Owner | Daniel & Shona Blonsky |
| Address of Affected Property | 8220 SW 60 CT |
| | South Miami, FL  33143 |
| Is this Property:* | **Residential**   Commercial   Governmental |
| Name of Person Completing this Form | Daniel Blonsky |
| Is above your primary residence? | **Yes**  No |
| Mailing Address (if different) | |
| Phone: | ( 305 )  753 - 8587 |

* If your response is commercial or governmental you should not fill out the remaining questions, you will receive a follow up form at a later date.

| | |
|---|---|
| Circle one: | **Owner-Occupant**   Owner Only   Renter-Occupant |
| Represented By: | Jimmy Doyle |
| Address: | DOYLE LAW FIRM, PC |
| | 2100 Southbridge Pkwy, #650 |
| | Birmingham, AL  35209 |
| Phone: | ( 205 )  533 - 9500 |
| Case No. /Docket Info: | Bennett v. Knauf. 14-cv-2722 |

**Section II. Insurance Information**

Homeowner/ Renter Insurer:

| | |
|---|---|
| Policy #: | |
| Agent: | M & L Insurance |
| Address: | 2855 North University Drive, Suite 110 |
| | Coral Springs, FL  33065 |
| Phone: | ( 954 )  340 - 2323 |

**+ Attach Copy of  Insurance Declaration Page**

**Section III. Claimant Information**

| Name of Claimant | Dates Occupied | | Gender | Date of Birth | Are you claiming personal injuries?* | Identify Claimant Status as an Owner-Occupant, an Owner Only, or an Occupant or Renter Only |
|---|---|---|---|---|---|---|
| | Move-in | Leave | | | Circle One | |
| Daniel Blonsky | 04/01/ 09 | / / | **M** / F | 06/12/ 65 | Yes  **No** | Owner - Occupant |
| Shona Blonsky | 04/ 01/ 09 | / / | M / **F** | 07/19/ 73 | Yes  **No** | Owner - Occupant |
| | / / | / / | M / F | / / | Yes  No | |
| | / / | / / | M / F | / / | Yes  No | |
| | / / | / / | M / F | / / | Yes  No | |
| | / / | / / | M / F | / / | Yes  No | |
| | / / | / / | M / F | / / | Yes  No | |
| | / / | / / | M / F | / / | Yes  No | |
| | / / | / / | M / F | / / | Yes  No | |
| | / / | / / | M / F | / / | Yes  No | |

* Personal injuries include claims for mental anguish and medical monitoring.

EXHIBIT
A

EXHIBIT
2

3776⊃√

Plaintiff Profile Form - Residential Properties

## Section IV. Inspection Information

**1.0. Have you, or has anyone on your behalf, conducted an inspection into whether Chinese-manufactured drywall is present in your home?** (Yes) No

**1.1. If "Yes" to Question 1.0 Section IV. Who conducted the inspection?** Chinese Drywall Screening, LLC

**1.2. When did the inspection take place?** 02 / 12 / 14

**2.0. Has a determination been made that Chinese-manufactured drywall is present in your home?** (Yes) No

**2.1. If "Yes" to Question 2.0. Section IV. Who made this determination?** Chinese Drywall Screening, LLC

**2.2. When was this determination made?** 02 / 12 / 14

## Section V. Drywall Information

| Drywall Manufacturer | Markings on Drywall | Location in Home |
|---|---|---|
| Knauf Plasterboard Tianjin | KNAUF TIANJIN CHINA | walls |
| | ASTM C36 | |
| | | |
| | | |

## Section VI. Home Information

| | | | Yes | No |
|---|---|---|---|---|
| Approx. Sq. Ft. of House: | 4,844 | | | |
| Estimated Sq. Ft. of Drywall | -------- | Occupied | X | |
| Height of Interior Walls | 9' min. | Year-round | X | |
| Number of Bedrooms: | 6 | Summer | | |
| Number of Bathrooms: | 5 | Winter | | |

### Plumbing System

| | Blackening or Corrosion? | | |
|---|---|---|---|
| | Yes | No | N/A |
| PVC/ CPVC/ Plastic Piping | | X | |
| Copper Piping | X | | |
| Copper Fixtures | X | | |
| Other Fixtures | X | | |
| Were repairs made to the plumbing system? | | X | |
| Dates: | | | |

### Electrical System

| | Blackening or Corrosion? | | |
|---|---|---|---|
| | Yes | No | N/A |
| Receptacles | X | | |
| Switches | X | | |
| Main Panel | X | | |
| 2nd Panel | | | X |
| Exposed Copper Wires | X | | |
| Were repairs made to the electrical system? | | X | |
| Dates: | | | |

+ Attach Copy of Floor Plan on 8 1/2" X 11" paper

## Section VII. Construction/Renovation Information

**Date Range for New Home Construction: (Month/Day/Year)**

| Start Date: | / / | Completion Date | / / |
|---|---|---|---|
| Move In Date: | / / | Date Acquired Home | / / |

**Date Range for Renovations: (Month/Day/Year)**

| Start Date: | / / | Completion Date | / / |
|---|---|---|---|
| Move In Date: | / / | | |

| Renovation(s) | Yes | No | N/A |
|---|---|---|---|
| First Floor: 1/2 Wall of drywall replaced | | | |
| First Floor: Full Wall of drywall replaced | | | |
| Second Floor: Any drywall replaced | | | |

## Section VIII. Homebuilder/ General Contractor/ Developer Information

**Homebuilder/ General Contractor/ Developer's Name:**
GC3 Development, successor to Custom Homes

**Address:** 5979 SW 56 ST

Miaim, FL 33155

**Phone:** ( 305 ) 778 - 2252

+ Attach Copy of Construction/Renovation Contract
+ Attach Copy of New Home Warranty Declaration

## Section IX. Drywall Installer

**Drywall Installer's Name:**
Campos Metal Framing

**Address:** 8567 Coral Way, Unit 209

Miami, FL 33155

**Phone:** ( 786 ) 355 - 5454

## Section X. Drywall Supplier

**Drywall Supplier's Name:**
Banner Supply Company

**Address:** 7195 NW 30th Street

Miami, FL 33122

**Phone:** ( 305 ) 593 - 2946

Plaintiff Profile Form - Residential Properties

**Section XI. Verification of Plaintiff Profile Form**

I declare under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746 that all information provided in this Plaintiff Profile Form is true and correct to the best of my knowledge, and that I have supplied all of the documents requested in this declaration to the extent that such documents are in my possession, custody or control.

| | 7-12-15 | | |
|---|---|---|---|
| Claimant's Signature | Date Signed | Claimant's Signature | Date Signed |
| Shona Blonsky | 4 19 19 | | |
| Claimant's Signature | Date Signed | Claimant's Signature | Date Signed |
| Claimant's Signature | Date Signed | Claimant's Signature | Date Signed |

Supplemental Plaintiff Profile Form – Residential and Commercial Properties

> **For Internal Use Only**
> File No. _____
>
> **Date Received:**
> _____

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

In re:  Chinese Manufactured Drywall
Products Liability Litigation

This Document Relates to:

MDL NO. 2047
SECTION:  L
JUDGE FALLON
MAG. JUDGE WILKINSON

*Elizabeth Bennett v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.,* Civil Action No.: 14-cv-2722-EEF-JCW (E.D.La)

This Supplemental Plaintiff Profile Form must be completed and signed by every person making a claim in this litigation against the manufacturer of Chinese Drywall, Knauf Plasterboard Tianjin      , using one form per Property. In completing this Supplemental Profile Form, you are under oath and must provide all information within your knowledge, custody and control that is true and correct to the best of your knowledge.  If you have already submitted a Plaintiff Profile Form, this Supplemental Plaintiff Profile Form will be in addition to and supplement the prior Profile Form submitted.  You have an affirmative obligation to search for all documents, electronically stored information, and tangible things responsive to this questionnaire.  You may and should consult with your attorney if you have any questions regarding completion of this form. If you are completing the form for someone who has died or who cannot complete the Profile Form, please answer as completely as you can for that person.

The responses contained within this Supplemental Plaintiff Profile Form are made without waiving any rights or objections as to relevance or privilege and are made without any abrogation of legal defenses, including those of the Collateral Source Doctrine.

The questions and requests for production contained within this Supplemental Profile Form are non-objectionable and shall be answered without objection. By answering this Supplemental Profile Form, you are not waiving the attorney work product and/or attorney client privileges. Similarly, by disclosing the identity of consultants, such consultants may remain non-testifying experts if provided for by applicable law, and are subject to all protections afforded by law.  Failure to fully complete this Supplemental Profile Form and provide the appropriate documents may result in a motion filed against you pursuant to Rule 37 of the Federal Rules of Civil Procedure, which could include a request for dismissal of the action in whole or in part.

All photographs produced in response to this form shall be in color.

### Section I. Claimant and Property Information

Name of Claimant: Daniel       F       Blonsky
First Name       M.I.       Last Name       Suffix

Shona       R       Blonsky
Co-Claimant First Name (if applicable)       M.I.       Last Name       Suffix

Business/Entity Name (if applicable)

1



Supplemental Plaintiff Profile Form -- Residential and Commercial Properties

Address of Property in this Lawsuit ("Property"):

8220 SW 60 Court
_____
Address 1                                                    Address 2

South Miami                                      FL          33143
_____
City                                             State       Zip Code

Is the Property residential or commercial?  Residential

Name of Person
Completing this Form:   Daniel          F      Blonsky
                        _____
                        First Name      M.I.   Last Name            Suffix

Mailing Address (if different):

_____
Address 1                                                    Address 2

_____
City                                             State       Zip Code

Phone Number of Person Completing This Form: ( 305 ) 753 - 8587

---

**Section II. Purchase, Sale and/or Transfer of Ownership of a Property and Assignments of Claims**

When did you acquire the Property? Month/Day/Year: 1 / 20 / 2009

When was Chinese drywall installed in the Property (to the best of your knowledge)?
Month/Day/Year: ?? / ?? / 2008

When you acquired the Property, were you aware that it contained Chinese drywall?  ☐ Yes  ☑ No

If you were not aware, at the time you acquired the Property, that the Property contained Chinese drywall, when did you first become aware that the Property contained Chinese drywall?
Month/Year: 2 / 2014

If you believe Chinese drywall was installed after you acquired the Property, when and how did you first become aware that the Property contained Chinese drywall?

_____
_____

If you acquired the Property knowing that the Property contained Chinese drywall, have you expressly acquired an assignment or other personal right of action that allows you to pursue a claim for damages?
☐ Yes  ☐ No

If Yes, attach a copy of the document assigning any right or claim to you.

If Yes, did you acquire the assignment with the purchase of the Property or at some later time?

_____

Have you sold or transferred ownership of the Property since you acquired it?  ☐ Yes  ☑ No

If No, go to Section III.

If Yes, on what date did you sell or transfer ownership of the Property?

Month/Day/Year: _____ / _____ / _____

2

Supplemental Plaintiff Profile Form – Residential and Commercial Properties

If you have sold or transferred ownership of the Property, did you at the time of sale assign to anyone any right of action for damages relating to the Property?  ☐ Yes    ☐ No

If you have sold or transferred ownership of the Property, did you expressly retain a personal right of action to allow you to pursue damages?  ☐ Yes    ☐ No

If you answered Yes to either of the two prior questions, attach a copy of any documents relating to your sale or transfer of ownership of the Property and to the assignment of a right of action for damages.

## Section III.  Product Identification and Evidence Retention

Did you provide evidence of Chinese drywall in the Property to the Plaintiffs' Steering Committee to be placed in the PSC FileCloud Database?  ☑ Yes    ☐ No

If Yes, do you have any additional evidence of Chinese drywall in the Property that you have not provided to the Plaintiffs' Steering Committee?  ☐ Yes    ☑ No

If No, go to Section IV.  If Yes, **attach** all additional evidence of Chinese drywall in the Property that you have not already provided to the Plaintiffs' Steering Committee.

## Section IV. Bankruptcy, Foreclosure or Short Sale

Do you contend that you entered personal bankruptcy as a result of damage to your Property from defective Chinese Drywall?  ☐ Yes    ☑ No

If Yes, answer the following questions:

If you entered personal bankruptcy, identify the case number and docket information of the filing.

Court filed in: _____

Date of filing: _____/_____/_____
                Month    Day    Year

Docket No.: _____

Present Status: _____

Attach your bankruptcy petition and documents filed therewith, including (1) the schedule of assets and liabilities; (2) the schedule of income and expenditures; (3) the statement of financial affairs; (4) the schedule of executory contracts and unexpired leases; (5) the list of creditors and amount and nature of claims; (6) the source, amount, and frequency of the debtor's income; (7) the list of all the debtor's property; and (8) the detailed list of the debtor's monthly living expenses.

Do you contend that a foreclosure or short sale occurred as a result of damage to your Property from defective Chinese Drywall?  ☐ Yes    ☑ No

If Yes, answer the following questions:

If the Property was the subject of a foreclosure or short sale, identify the following:

Foreclosure or Short Sale?                    _____

Supplemental Plaintiff Profile Form – Residential and Commercial Properties

Lender's name: _____

Loan Number: _____

Original Loan/Mortgage Amount: $_____

Date of Original Loan/Mortgage: ____/____/____
Month   Day   Year

At the Date of Foreclosure or Short Sale,
the amount owed on the Loan/Mortgage: $_____

Date of Foreclosure or Short Sale: ____/____/____
Month   Day   Year

Short Sale Price (if applicable): $_____

Attach all loan/mortgage documentation and documentation pertaining to the acquisition of the property.

Attach all documents relating to any foreclosure or short sale, including but not limited to any financial statements provided to the lender, a seller's hardship letter, tax returns, W-2 forms, payroll stubs, and bank statements provided to the lender, and comparative market analyses of comparable sales provided to the lender.

### Section V. Already Remediated Property

Has the Property been partially or completely remediated? Completed remediated

If completely or partially remediated, answer the following questions. If No, go to Section VI.

Please identify the dates during which the remediation took place:
May 2014 through August 2014

Please identify who performed the work to remediate the property (for example: self, name of contractor, name of remediation service): Certified Mold Free Corp.

If the Property has been partially remediated, identify the rooms of the Property that were remediated, the current condition and status of the remediation and the amount of work remaining to be remediated:

Attach any documents supporting any work that you or others performed for remediation of the Property.

If the Property has been partially or completely remediated, what was the total cost to date for the remediation of the Property?
$ 37,650

Attach all invoices and documents to support the total cost of remediation to date.

4

Supplemental Plaintiff Profile Form -- Residential and Commercial Properties

Attach all invoices, purchase receipts and documents supporting the total cost or value of any appliances, fixtures or other electronics that you claim were damaged by Chinese drywall.

Attach all invoices, purchase receipts and documents supporting the total cost or value of any other movables (property or possessions, not including land or buildings) that you claim were damaged by Chinese drywall.

If the Property has been completely remediated, what was the date the remediation was completed?
Month/Year: __8__ / 2014

Have you preserved at least two samples (of ten inches by ten inches (10" x 10") in size if possible) of every different drywall brand or marking removed from the Property? ☑ Yes  ☐ No

If you have preserved samples, where are the samples located?
Garage at the property

Have you preserved at least one sample of each type of drywall endtape, if any, that was found during inspection, repair or removal of drywall in or from the Property?  ☐ Yes  ☑ No

If you have preserved samples, where are the samples located?

Have you photographed the backside of each Chinese-manufactured drywall board removed from the Property immediately after it was removed, and have you documented on a floor plan or other similar diagram the location of each full or partial Chinese-manufactured drywall board and its photograph?
☑ Yes  ☐ No

If you have photographed and documented each Chinese-manufactured board, please attach the photograph(s) and floor plan.

Have you photographed the HVAC coil, at least one (1) plumbing component and three (3) electrical components that you allege were damaged by Chinese drywall? ☑ Yes  ☐ No

If you have photographed these materials, please attach the photographs.

Have you photographed any other building materials, components, or other personal property for which you intend to seek recovery?  ☑ Yes  ☐ No

If you have photographed these materials, please attach the photographs.

**Section VI. Prior Payments**

Have you received any payments, including but not limited to settlement payments, payments from homebuilders, and insurance payments, related to damages you claim to have suffered caused by defective Chinese drywall in the Property or related to any other harm caused by defective Chinese drywall? ☑ Yes  ☐ No

If Yes, identify the source(s) and state the amount of payment(s) you received?

Source:  American Strategic Insurance Corp.

Amount of payments received: $ Subject to confidentiality agree

Supplemental Plaintiff Profile Form – Residential and Commercial Properties

Source: _____

Amount of payments received:  $ _____

Source: _____

Amount of payments received:  $ _____

If you received payments from the Knauf settlement, state the percentage of the Chinese Drywall that was identified as "KPT Chinese Drywall" as described in section 1.27 of the Knauf Settlement Agreement: _____%

Attach documents reflecting the total amount you received from the source(s).

### Section VII. Other Damages

If you incurred alternative living expenses as a result of Chinese Drywall, identify the total moving cost and/or alternative living expense you incurred.

$ 7,000 _____

Attach all receipts and documents supporting the total moving cost and/or alternative living expense you incurred.

If you experienced any loss of use and/or loss of enjoyment of the Property as a result of Chinese Drywall, identify the total amount of such loss.

$ 125,000 _____

Attach all documentation to support the total amount claimed for the loss.

If you claim a diminution in value of the Property as a result of Chinese Drywall, identify the total amount of such diminution of value being claimed.

$ _____

Attach all documentation to support the total amount claimed for diminution of value, including documents showing that the Property's previous value.

### Section VIII. "Under Air" Square Footage

Has the under air square footage of the Property changed at any time since installation of the Chinese drywall?  ☐ Yes   ☑ No

If the square footage has changed, please identify the date(s) and change(s) to under air square footage, and attach all documentation that relates to each change:

Date: _____

Change: _____

Date: _____

Change: _____

Supplemental Plaintiff Profile Form – Residential and Commercial Properties

Date: _____

Change: _____

### Section IX. Verification of Supplemental Plaintiff Profile Form

I declare under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746 that I am the claimant identified in this Supplemental Plaintiff Profile Form and that all information provided in this Supplemental Plaintiff Profile Form is true and correct to the best of my knowledge, and that I have supplied all of the documents requested in this declaration to the extent that such documents are in my possession, custody or control.

I further declare under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746 that all information previously provided by me in my original Plaintiff Profile Form continues to be true and correct and has been updated to the best of my knowledge.

|                      |                  |         |          | March 21, 2018 |
|----------------------|------------------|---------|----------|----------------|
| Claimant's signature |                  |         |          | Date signed    |
|                      |                  |         |          | 11/19/19       |
| Name:                | Daniel Blonsky   |         |          |                |

| Address: | 8220 SW 60 Court |           |          |
|----------|------------------|-----------|----------|
|          | Address 1        | Address 2 |          |
|          | South Miami      | FL        | 33143    |
|          | City             | State     | Zip Code |

Phone No.: ( 305 ) 753  - 8587

Email:    dblonsky@coffeyburlington.com

7

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL NO. 2047** |
| | **SECTION: L** |
| **THIS DOCUMENT RELATES TO:** | |
| | **JUDGE ELDON FALLON** |
| *Elizabeth Bennett, et al. v. Knauf Gips, KG, et al.* | **MAG. JUDGE WILKINSON** |
| **2:14-cv-02722-EEF-JCW** | |

## PLAINTIFF FACT SHEET

Name of Plaintiff: __Daniel Blonsky & Shona Blonsky__

Affected Property Address: __8220 SW 60 Court, South Miami, FL 33143__

# I. Purchase, Sale and/or Transfer of Ownership of Property

1. On what date did you purchase the Property?

**Response**: Plaintiff objects to this question as duplicative. In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants. Plaintiff has previously provided this information to defendants in the Bennett Supplemental Plaintiff Profile Form ("SPPF"). Plaintiff directs the defendants to Section II of the SPPF. Without waiving said objection, Plaintiff adopts the SPPF response again here and intends to provide the exact same date as provided in the verified SPPF as follows: Plaintiff purchased the property:

(Month/Day/Year) __01__ / __29__ / __2009__

2. When you took ownership of the Property, what was the name of the seller?

__G.C. Custom Homes, Inc.__



1

  
3. Name and address of the realtor?

Esslinger Wooten Maxwell

4. Name and address of the closing agent?

Joseph Blonsky, P.A., 8232 SW 82nd Place, Miami, FL  33143

5. What was the price of the home when you purchased it?  $ 1,100,000.00

6. Was it an "as-is" sale?

**Response**: Plaintiff objects to the use of "as-is" in this question as vague, ambiguous, uncertain, and unintelligible; consequently, Plaintiff cannot determine the exact nature of the information being sought.  This term is not defined and is not commonly understood with one accepted meaning; multiple inpretations are possible.  Without waiving said objection, plaintiff responds as follows:

☐ Yes   ☐ No   ☑ I'm not sure.

7. If you sold or transferred ownership of the Property, what was the name of the purchaser?

N/A

8. If you sold or transferred ownership of the Property, what was the name and address of the realtor?

N/A

9. If you sold or transferred ownership of the Property, what was the name and address of closing agent?

N/A

10. If you sold or transferred ownership of the Property, what was the price paid for home?
                    $ N/A

## II.  Appraisal of the Home

11. Date of each appraisal:

a. _____/_____/20_____
b. _____/_____/20_____

2

## Conclusions

Based our best ability, belief and knowledge along with our thorough assessments, visual observations and testing, we are of the professional opinion that no corrosive drywall is present in the property with the possible exception of the master suite.  It is undetermined as to the cause or source of the suspect sulfur deposition on the test coupons of the master suite.  Some possible sources other than corrosive drywall could be bath vents and sewer lines.

Since the measurements of sulfur deposition for the coupons in the master suite were less than the outdoor coupons, it could be theoretically determined that the levels of sulfide gases present within the master suite are not problematic.  However, we do not opine as to the sulfides in the outside environment nor as to what levels may be problematic.

We appreciate the opportunity to work with you on this matter.  Please feel free to contact us for any clarifications or further assistance.

Sincerely,

Howard Ehrsam, P.E., LEED AP
CGC 1509717
on behalf of Chinese Drywall Screening, LLC

Attachments:  Exhibit A - Certifications of the Inspector
              Exhibit B – Scope of Services
              Exhibit C – Corrosion Test Coupons and Readings

**PFS REQUEST FOR DOCUMENT PRODUCTION #1**: Please produce copies of any and all appraisals performed on the house both prior and subsequent to the occurrence of any of the events alleneged in the petition.

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 1."

## III.  Discovery of Drywall

12.  Date that the property was constructed and/or renovated that installed the allegedly defective Chinese Drywall.

**Response**:  Plaintiff objects to this question as duplicative.  In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants.  Plaintiff has previously provided this information to defendants in the Bennett Supplemental Plaintiff Profile Form ("SPPF").  Plaintiff directs the defendants to  Section II of the SPPF.  Without waiving said objection, Plaintiff adopts the SPPF response again here and intends to provide the exact same date as provided in the verified SPPF as follows: The property construction and/or renovation that installed the allegedly defective drywall occurred on or about the following date (to the best of my knowledge):

> (Month/Day/Year)          ____/____/20 _06-07_

**PFS REQUEST FOR DOCUMENT PRODUCTION #2**: Please produce all documents, reports, photographs, videotapes, samples and any other materials which evidence and/or identify that there is defective Chinese Drywall in the Property.

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 2."

## IV.  Manufacturer/Seller of Drywall

13.  Who sold or distributed the drywall in the house?

**Response**:  Plaintiff objects to this question as duplicative.  In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants.  Plaintiff has previously provided this information to defendants in the Plaintiff Profile Form ("PPF").  Plaintiff directs the defendants to  Section X of the PPF.  Without waiving said objection, Plaintiff adopts the PPF response again here and intends to provide the exact same information as provided in the verified PPF as follows:   The drywall Supplier's name (to the best of my knowledge) is:

Banner Supply Company

**PFS REQUEST FOR DOCUMENT PRODUCTION #3**: Please produce all documents, reports, photographs, videotapes, samples and any other materials which evidence and/or identify the manufacturer of drywall installed in the house. The submission must be in the form of PTO 1(B).

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 3."

## V. Damages

14. Identify any harm, financial or otherwise, that you contend was caused by defective Chinese Drywall installed in the Property.

**Response**: Plaintiff directs the defendants to review the complaint filed with the court in this case for a full listing of the claims being asserted and the damages being sought. The defective Knauf Chinese Drywall emitted gasses that cause damage to Plaintiff's home and the personal property contained therein. It also significantly diminished the use and enjoyment of the home; therefore, Plaintiff seeks the following: all compensatory, statutory, and/or punitive damages; all pre-judgment and post-judgment interest as allowed by law; any appropriate injunctive relief; an award of attorney's fees as allowed by law; an award of taxable costs; and, any and all such further relief as a jury or judge presiding over my trial deems just and proper. Other damages include, but are not limited to:

Financial: Partial remediation cost of 37,650.00. Replacement and repair or appliances,

electronics, and air conditioning.

15. If you contend that you entered personal bankruptcy as a result of damage to your property from defective Chinese Drywall, please describe the facts and circumstances that relate to your claim.

N/A

16. If you contend that you entered short sale and/or foreclosure as a result of damage to your property from defective Chinese Drywall, please describe the facts and circumstances that relate to your claim.

N/A

**PFS REQUEST FOR DOCUMENT PRODUCTION #4:** If you claim loss of income, please produce any copies of any and all documentation upon which you intend to rely upon to prove this claim.

> **Response:** All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 4."

17. If you claim diminution of the property as a result of Chinese Drywall, state with particularity each fact which supports your claim.

As the property owner, I am aware that mandatory disclosure of Chinese Drywall

diminishes the resale value of the property.

18. Identify the appliances, fixtures and/or other electronics, if any, that you claim were damaged by Chinese Drywall in the property.

> **Response:** An list of damaged items is attached as "Exhibit 14."

19. If you vacated the property because of the alleged presence of Chinese Drywall, please provide: Address of each location you stayed thereafter.

a. 8232 SW 82nd Place, Miami, FL  33143

b. _____

c. _____

20. If you vacated the property because of the alleged presence of Chinese Drywall, please provide: Time periods in which you resided at each property.

a. _08_ / _01_ /20 _14_   to   _09_ / _01_ /20 _14_

b. ____ / ____ /20____   to   ____ / ____ /20____

c. ____ / ____ /20____   to   ____ / ____ /20____

21. If you vacated the property because of the alleged presence of Chinese Drywall, please provide: Moving costs and/or alternative living expenses you claim to have incurred as a result of the alleged presence of Chinese Drywall.

a. $ _1,500.00_

b. $ _____

c. $ _____

**PFS REQUEST FOR DOCUMENT PRODUCTION #5**: If you vacated the property because of the alleged presence of Chinese Drywall, please provide any documentation to support your claims.

>    **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 5."

22. Are you claiming damages for personal injury? ☐ Yes (explain below) ☑ No

_____

_____

23. If you suffered personal injuries as a result of the alleged presence of Chinese Drywall: Date you allege that you first sustained personal injuries as a result of your exposure to allegedly defective Chinese Drywall.

>    **Response**:   ☑ N/A

24. If you suffered personal injuries as a result of the alleged presence of Chinese Drywall: What specific injuries have you suffered?

>    **Response**:   ☑ N/A

25. If you suffered personal injuries as a result of the alleged presence of Chinese Drywall: Name and address of any doctor, physician, surgeon, chiropractor, or osteopath who examined and/or treated your alleged injuries.

>    **Response**:   ☑ N/A

## VI.  Potential Witnesses/Evidence

26. Has any written or recorded statement been taken from any witness or person who has knowledge of relevant facts, including the nature, character, and extent of the injuries referred to in the petition, and for each statement identified?

>    ☐ Yes   ☑ No   ☐ I don't know

27. If the answer to 26 is "yes," please state: The name, address, and telephone number of the person from whom the statement was taken.

N/A _____

_____

28. If the answer to 26 is "yes," please state: The name, address, and telephone number of the person who took the statement.

N/A

29. If the answer to 26 is "yes," please state: The name address, and telephone number of the party having custody of such statement.

N/A

30. If the answer to 26 is "yes," please state: The date the statement was taken.

N/A

## VII. Already Remediated Properties

31. If you already remediated the Property, who conducted the remediation?

Certified Mold Free Corp.

32. When did the remediation commencement date occur?

05 / 01 /20 14

33. When did the remediation end date occur?

08 / 30 /20 14

34. What was the scope of the remediation and the scope of the work carried out?

See remediation report.

7

35.  What costs or expenses, if any, did you incur related to the remediation of the Property?

**$37,650.00**

36.  Were any samples from the remediation retained?

☑ Yes    ☐ No

37.  If the response to 36 is "yes," were the samples compliant with PTO 1(B)?

☑ Yes    ☐ No

38.  Were any photographs taken of the allegedly defective Chinese Drywall?

☑ Yes    ☐ No

39.  If the response to 38 is "yes," were the photographs compliant with PTO 1(B)?

☑ Yes    ☐ No

**PFS REQUEST FOR DOCUMENT PRODUCTION #6**:  Please produce the following documentation concerning the remediation of the Property:  Any evidence of KPT Chinese Drywall and Non-KPT Chinese Drywall, if any, in the Property prior to remediation.

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 6."

**PFS REQUEST FOR DOCUMENT PRODUCTION #7**: Please produce the following documentation concerning the remediation of the Property:  Interior photographs of the Affected Property immediately prior to the commencement of, and following completion of, the remediation, including photographs and/or video images of the flooring and major components such as cabinets, moldings, doors, intercom systems, and fixtures for every room and bathroom and, to the extent possible, security systems, appliances and audio such as surround sound.

** The photographs do not need to be pictures taken specifically for the litigation. For example, family photographs or photographs taken for purposes of refinancing a mortgage are acceptable in the absence of other photographs.

8



# Exhibit A

# Certification

## Certification of the Inspector

The undersigned do hereby certify that, to the best of our knowledge and belief:

- The statements of fact contained within this report are true and correct.

- The statements of opinions have certain limitations. It is not feasible and is impossible to confirm 100% of corrosive drywall was either removed or is not present. There are several conditions that we have seen that could prevent discovery without a more exhaustive investigation. They include, but are not limited to:

  - Low strontium, corrosive drywall that is domestic and non-homogeneous.

  - Limited amounts of corrosive drywall in inaccessible areas or installed in a way that would seclude it from available receptacles and switches.

  - Limited amounts of high strontium drywall covered with joint compound or heavy textures hindering detection by x-ray fluorescence.

  - Variable amounts of low off-gassing drywall or drywall with corrosive recycled gypsum.

- We have no present or prospective interest in the property that is the subject of this report and we have no personal interest with respect to the parties involved. We have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

- The information in this report is based on the existing conditions of the structure's materials, documents, and information (written or verbal) supplied by contractor, the owner or their representatives, and our observations during the inspection.

- Our compensation or engagement in this assignment is not contingent upon the development or reporting of a predetermined conclusion that favors the cause of the client, the remediator, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this report.

- Any use of this report by any other parties without our expressed or written consent is prohibited. Should another individual or entity rely on this analysis or its conclusions without our consent, they shall indemnify Chinese Drywall Screening, LLC, its employees, and service providers from all damages, losses or expenses that may occur as a result of its use.

- Our report is based on information made available to us at this time. Should additional information become available, we reserve the right to determine the impact, if any, of the new information on our opinions and conclusions and to revise our opinions and conclusions if necessary and warranted by the discovery of additional information.

- The provided services and documentation have been completed to the best of our knowledge and based on current known facts regarding reactive drywall.

Howard Ehrsam, P.E., LEED AP
CGC 1509717
on behalf of Chinese Drywall Screening, LLC



# Scope of Screening

## Scope of Services

### Phase I and Phase II – Visual and Product ID

Chinese Drywall Screening, LLC (CDS) conducted a visual investigation of the various elements within the property for the presence of reactive drywall.

Investigative services typically include, but are not limited to:
- Verification of a sulfur attack on various components of the property
- Visual inspection of the drywall markings in respective areas of the sulfur attack
- Documentation of findings
- Samples of reactive drywall prepared for future laboratory analysis

CDS provided the above investigation in multiple areas throughout the home. However, we cannot guarantee all types of reactive drywall within the subject property were identified.

The inspection required removal of various sections of drywall to be utilized as visual access points. These access points were sealed upon completion. For each unique variety of drywall discovered, at least one sample piece of drywall was preserved for future lab testing to be held by the homeowner.

The corroded elements along with any discovered drywall markings were documented during the inspection. Observations were recorded and photographed. Refer to the report and photograph exhibit(s) for details.

The following engineering report is utilized as a reference in regards to the sulfur attack on copper: Unified Engineering Report File 4050 dated March 17, 2009. Unified Engineering, Inc; 3056 Weber Drive, Aurora, IL 60502.



**Scope of Screening**

## Scope of Services (continued)

### X-ray Florescence (XRF) for Strontium

XRF analyzers are handheld instruments used predominantly to evaluate the presence of metal constituents in building materials or other products.  XRF works by exposing a material to high energy x-rays and measuring those x-rays and comparing them to the known and unique pattern of x-rays produced by each element.  For help in identifying corrosive drywall, XRF is used to determine levels of strontium (Sr) present within the gypsum of the drywall throughout the property.

Strontium is a light metal that is a common, naturally occurring element found within the earth.  Certain geographical regions have higher concentrations than others that can translate to the origin of the raw materials.  Strontium levels above 1850 ppm have been associated with drywall of Chinese origin.  However, high levels of strontium do exist in drywall from other origins and testing must be used in conjunction with other means to produce proper conclusions.

The attenuating effects of joint compound and textures could inhibit the detection of small amounts of corrosive drywall.  Furthermore, corrosive drywall could also be present in inaccessible areas that include, but are not limited to, walls above drop ceilings, fire stopping, behind tile, behind cabinets, under raised floor systems, etc.  However, the potential for these conditions can be reduced or eliminated with proper property evaluation and corrosion evaluation.

### Sulfur Corrosion Testing - Environmental

Our patent pending method for environmental corrosion testing is the analyzing of deposited sulfur on copper and/or silver coupons utilizing x-ray florescence.  The sulfur is a byproduct of the corrosion of the metals from sulfide gases.  Problematic or corrosive drywall emits sulfide gases that react with copper and silver to form copper sulfide and silver sulfide respectively on the surface of the test coupons.  This process is accelerated utilizing forced air over a set period of time.



# Scope of Screening

## Scope of Services (continued)

X-ray florescence (XRF) is utilized to quantify the sulfur deposits on the coupons in ug/cm$^2$ (micrograms per square centimeter).  Readings can then be interpreted to determine the presence of sulfide gases that may be present within the subject property.  A non-detect (ND) reading upon analyzing the test coupons indicates there are no detectable sulfur deposits on the surface of the coupons.  This in turn leads to the conclusion that there are no sulfide gases present at any significant or detectable levels during the course of the exposure period.  Positive readings for sulfur are compared against various controls and environmental conditions to make determinations as to the source for cause.

### Sulfur Corrosion Testing – Drywall

Our internally developed method of sulfur corrosion testing specific samples of drywall is to analyze copper and/or silver coupons for deposited sulfur utilizing x-ray florescence.  The sulfur is a byproduct of the corrosion of the metals from emitted sulfide gases.  Problematic or corrosive drywall emits sulfide gases that react with copper and silver to form copper sulfide and silver sulfide respectively on the surface of test coupons.  This process can be accelerated by elevating the temperature.

X-ray florescence (XRF) is utilized to quantify the sulfur deposits on the coupons in ug/cm$^2$ (micrograms per square centimeter).  Readings can then be interpreted to determine to whether the drywall tested is corrosive and at what proportionate levels.  A non-detect (ND) reading upon analyzing the test coupons indicates there are no detectable sulfur deposits on the surface of the coupons.  This in turn leads to the conclusion that the drywall is non-corrosive at any significant or detectable levels during the course of the testing period.  Positive readings for sulfur are compared against various controls and known samples in order to make proper determinations as to the conditions of the samples being tested.  Samples with low levels of off gassing may need multiple rounds of testing to verify that the gypsum is the root source of the corrosive gases and the sulfur deposition is not a result from de-absorbed environmental sources.



# Exhibit C – Corrosion Test
# Coupons and Readings



| Area | Copper/Cu (ug/cm2) | Silver/Ag (ug/cm2) |
|---|---|---|
| Den and G. Bath | ND | ND |
| Living | ND | 9 |
| Dining/Hall | <1 | 5 |
| Kitchen/Fam | ND | 1 |
| Stair Landing | <1 | 1 |
| 2nd Floor Hall | ND | ND |

| Area | Copper/Cu (ug/cm2) | Silver/Ag (ug/cm2) |
|---|---|---|
| G. Bed, JJ Bath | 6 | 12 |
| G.Bed/Bath-Baby | ND | ND |
| Master Suite | 49 | 51 |
| Outside – Back | 68 | 74 |
| Outside – Front | 64 | 80 |
| Case Compare | 49 | 43 |



Inspections and documentation from leading experts

July 26, 2016

Daniel and Shona Blonsky
8220 SW 60th Court
South Miami, FL 33143

RE:     Chinese Drywall Testing Services; FL01-0451
        Post Remediation Environmental Corrosion Testing
        8220 SW 60th Court S. Miami, FL 33143

Mr. & Mrs. Blonsky,

At your request, Environmental Corrosion Testing (ECT) of the subject property was performed from February 24, 2016 to February 29, 2016. Chinese Drywall Screening, LLC (CDS) is providing the enclosed results for your use.

## Subject Property

A 4,844 sq ft, home built in 2008 located in Harris Estates – 8220 SW 60th Court in South Miami.

## Overview

The property contained limited amounts of corrosive drywall that was remediated by Gary Rosen of Certified Mold Free Corp in August of 2014. CDS was engaged to test for the presence of any remaining corrosive drywall utilizing our specialized Environmental Corrosion Testing procedures. The first round of testing was preformed in December of 2014 to verify that no sulfide gases remain. Refer to separate report dated January 13, 2015. It was requested that a more thorough testing was to be completed on the master suite.

## Scope and Methodology

All drywall in the master suite was retested utilizing an x-ray fluorescence analyzer. The 2nd component to the testing was our state of the art method for environmental corrosion testing which is the analysis of deposited sulfur on copper and/or silver coupons utilizing x-ray florescence. Refer to the attached scope exhibits for details.

## Procedures

An ECT device was set inside various areas of the master suite. The areas were isolated from each other with temporary visqueen partitions. A device was also set outside as a comparison.

Various measures were taken to prevent other potential sources of sulfide gases interfering with the testing. Other potential sources include sewer gases, gas burning appliances, kerosene heaters, wood or coal stoves, tobacco smoke, malfunctioning chimney's and outside air entering inside the property. These were all verified not to be present to the extent feasible. However,

8220 SW 60th Ct., S. Miami, FL
FL01-0451      Page 2 of 2

there were a significant amount of contents in the closets and all items were not specifically
inspected nor were products analyzed for origins or content.

## Results

At the conclusion of the exposure period, the subject property along with all of the testing devices
appeared to be undisturbed and in the same condition as it was upon the initial set up. Electric
timers within the devices indicated no interruption of power. Temperature and humidity in the
unit at the end of the testing period was 77° F and 53% respectively. All coupons looked pristine
and had no visual evidence of corrosion.

Below is a summary of the results:

| Location | Silver (Ag) $S (ug/cm^2)$ | Copper (Cu) $S (ug/cm^2)$ |
|---|---|---|
| M. Bed | 16 | 13 |
| Treadmill | ND | 4 |
| N. Closet | 23 | 19 |
| S. Closet | 25 | 21 |
| M. Bath | ND | 9 |
| M. Toilet | 3 | 3 |
| Outside - porch of 1100 | 46 | 50 |
| Typical Exterior | 30-80 | 30-60 |
| Typical CDW Property | 200-500+ | 200-500+ |

ND = Non-detect/below detectable limits

## Conclusion

Based on the non-detectable to low readings combined with high sensitively of the test and the
small, confined spaces, CDS is of the opinion that corrosive drywall is not present.

We appreciate the opportunity to work with you on this matter. Please feel free to contact us for
any clarifications or further assistance.

Sincerely,

Howard Ehrsam, P.E., LEED AP
CGC 1509717
on behalf of Chinese Drywall Screening, LLC

Attachments:   Exhibit A - Certifications of the Inspector
               Exhibit B - Scopes
               Exhibit C – Coupon Exhibit



Exhibit A

Certification

## Certification of the Inspector

The undersigned do hereby certify that, to the best of our knowledge and belief:

- The statements of fact contained within this report are true and correct.

- The statements of opinions have certain limitations. It is not feasible and is impossible to confirm 100% of corrosive drywall was either removed or is not present. There are several conditions that we have seen that could prevent discovery without a more exhaustive investigation. They include, but are not limited to:

    - Low strontium, corrosive drywall that is domestic and non-homogeneous.

    - Limited amounts of corrosive drywall in inaccessible areas or installed in a way that would seclude it from available receptacles and switches.

    - Limited amounts of high strontium drywall covered with joint compound or heavy textures hindering detection by x-ray fluorescence.

    - Variable amounts of low off-gassing drywall or drywall with corrosive recycled gypsum.

- We have no present or prospective interest in the property that is the subject of this report and we have no personal interest with respect to the parties involved. We have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

- The information in this report is based on the existing conditions of the structure's materials, documents, and information (written or verbal) supplied by contractor, the owner or their representatives, and our observations during the inspection.

- Our compensation or engagement in this assignment is not contingent upon the development or reporting of a predetermined conclusion that favors the cause of the client, the remediator, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this report.

- Any use of this report by any other parties without our expressed or written consent is prohibited. Should another individual or entity rely on this analysis or its conclusions without our consent, they shall indemnify Chinese Drywall Screening, LLC, its employees, and service providers from all damages, losses or expenses that may occur as a result of its use.

- Our report is based on information made available to us at this time. Should additional information become available, we reserve the right to determine the impact, if any, of the new information on our opinions and conclusions and to revise our opinions and conclusions if necessary and warranted by the discovery of additional information.

- The provided services and documentation have been completed to the best of our knowledge and based on current known facts regarding reactive drywall.

Howard Ehrsam, P.E., LEED AP
CGC 1509717
on behalf of Chinese Drywall Screening, LLC



# Scope of Screening

## Scope of Screening Services Performed

### X-ray Florescence (XRF) for Strontium

XRF analyzers are handheld instruments used predominantly to evaluate the presence of metal constituents in building materials or other products. XRF works by exposing a material to high energy x-rays and measuring those x-rays and comparing them to the known and unique pattern of x-rays produced by each element. For help in identifying corrosive drywall, XRF is used to determine levels of strontium (Sr) present within the gypsum of the drywall throughout the property.

Strontium is a light metal that is a common, naturally occurring element found within the earth. Certain geographical regions have higher concentrations than others that can translate to the origin of the raw materials. Strontium levels above 1850 ppm have been associated with drywall of Chinese origin. However, high levels of strontium do exist in drywall from other origins and testing must be used in conjunction with other means to produce proper conclusions.

The attenuating effects of joint compound and textures could inhibit the detection of small amounts of corrosive drywall. Furthermore, corrosive drywall could also be present in inaccessible areas that include, but are not limited to, walls above drop ceilings, fire stopping, behind tile, behind cabinets, under raised floor systems, etc. However, the potential for these conditions can be reduced or eliminated with proper property evaluation and corrosion evaluation.



CHINESE | SCREENING
DRYWALL
Inspections and documentation from leading experts

# Scope of Screening

## Scope of Services

### Environmental Corrosion Testing (ECT)

Our state of the art method for environmental corrosion testing is the analysis of deposited sulfur on copper and/or silver coupons utilizing x-ray florescence. The sulfur is a byproduct of the corrosion of the metals from sulfide gases. Corrosive drywall emits sulfide gases that react with copper and silver to form copper sulfide and silver sulfide respectively on the surface of the test coupons. Neighboring porous materials will also emit sulfide gases for a limited amount of time due to the exposure to corrosive drywall gases. The de-absorption process is a critical part of the remediation in order to avoid problematic corrosion of new copper materials that could indicate a false positive for the presence of corrosive drywall. Testing is done after the de-absorption process and/or treatment for the absorbed gases. The process of the gases reacting with the test coupons is accelerated utilizing forced air over a set period of time.

X-ray florescence (XRF) is utilized to quantify the sulfur deposits on the coupons in ug/cm$^2$ (micrograms per square centimeter). Readings can then be interpreted to determine the presence of sulfide gases that may be present within the subject property. A non-detect (ND) reading upon analyzing the test coupons indicates there are no detectable sulfur deposits on the surface of the coupons. This in turn leads to the conclusion that there are no sulfide gases present at any significant or detectable levels during the course of the exposure period. Positive readings for sulfur are compared against various controls and environmental conditions to draw comparisons and interpret results.



## Exhibit C – Corrosion Test
## Coupon Exhibit







# Property Screening Report

## 8220 SW 60th Court, South Miami, FL  33143

Screening Date:
2-12-14

Prepared for:
Daniel Blonsky

Report Number:
FL01-0325

CDS Inspector:
Howard Ehrsam



CHINESE DRYWALL SCREENING LLC

Inspections and documentation from leading experts



Inspections and documentation from leading experts

February 17, 2014

Daniel Blonsky
8220 SW 60th Court
South Miami, FL  33143

RE:          Chinese Drywall Screening Report:  FL01-0325
Community:   Harris Estates

Dear Mr. Blonsky,

At your request, an investigation of the above referenced property was performed on **February 12, 2014**. Chinese Drywall Screening, LLC (CDS) is providing the summary below for your use. This is a professional opinion based on visual inspections and testing of accessible materials.

Based on our visual observations of blackened A/C coils, electrical wires and copper plumbing coupled with known affects from reactive drywall, CDS is of the opinion that reactive drywall is present in the above referenced property.  The distinctive odor associated with corrosive drywall was not noticed upon entry nor throughout the inspection.  Elevated levels of strontium characteristic to Chinese drywall corresponded to outlets containing corroded wiring.  Strontium readings were around 2000 to 2100 similar to MDL 2046 No. 9 – Knauf-Tianjin but no destructive investigation was performed to verify.

X-ray fluorescence testing and inspection for visible evidence of sulfur attack was performed throughout the property in order to identify areas of Chinese drywall.  Although additional testing is needed to verify, corrosive and/or Chinese drywall appears to be limited to the following areas of the first floor only:

| | |
|---|---|
| • Foyer | • Dining Hall |
| • Office | • Hall/Entry to Kitchen |
| • Cabana/Office Bath | • Under stair closet |

Refer to attachments for details of the findings and specific locations.

Please feel free to contact us should you have any questions regarding our findings or if we may be of further assistance to you.

Sincerely,

*Howard Ehm*

Howard Ehrsam, P.E., LEED AP
CGC 1509717
on behalf of Chinese Drywall Screening, LLC
Enclosures: Report with Photo Exhibit



# Overview

## Overview of Subject Property



**Client:** Daniel Blonsky

**Address:** 8220 SW 60th Court
South Miami, FL 33143

**Subdivision:** Harris Estates

**Builder:** GC Custom Homes

**Model:** n/a

**Size:** Total 4,844 sf

**Exterior wall types:** CBS - Concrete Block exterior

**Completion date:** 2008



# Scope of Screening

## Scope of Services

Inspections and documentation from leading experts

### Phase I and Phase II – Visual and Product ID

Chinese Drywall Screening, LLC (CDS) conducted a visual investigation of the various elements within the property for the presence of reactive drywall.

Investigative services typically include, but are not limited to:
- Verification of a sulfur attack on various components of the property
- Visual inspection of the drywall markings in respective areas of the sulfur attack
- Documentation of findings
- Samples of reactive drywall prepared for future laboratory analysis

CDS provided the above investigation in multiple areas throughout the home. However, we cannot guarantee all types of reactive drywall within the subject property were identified.

The inspection required removal of various sections of drywall to be utilized as visual access points. These access points were sealed upon completion. For each unique variety of drywall discovered, at least one sample piece of drywall was preserved for future lab testing to be held by the homeowner.

The corroded elements along with any discovered drywall markings were documented during the inspection. Observations were recorded and photographed. Refer to the report and photograph exhibit(s) for details.

The following engineering report is utilized as a reference in regards to the sulfur attack on copper: Unified Engineering Report File 4050 dated March 17, 2009. Unified Engineering, Inc; 3056 Weber Drive, Aurora, IL 60502.



# Scope of Screening

## Scope of Services (continued)

### X-ray Florescence (XRF) for Strontium

XRF analyzers are handheld instruments used predominantly to evaluate the presence of metal constituents in building materials or other products. XRF works by exposing a material to high energy x-rays and measuring those x-rays and comparing them to the known and unique pattern of x-rays produced by each element. For help in identifying corrosive drywall, XRF is used to determine levels of strontium (Sr) present within the gypsum of the drywall throughout the property.

Strontium is a light metal that is a common, naturally occurring element found within the earth. Certain geographical regions have higher concentrations than others that can translate to the origin of the raw materials. Strontium levels above 1850 ppm have been associated with drywall of Chinese origin. However, high levels of strontium do exist in drywall from other origins and testing must be used in conjunction with other means to produce proper conclusions.

The attenuating effects of joint compound and textures could inhibit the detection of small amounts of corrosive drywall. Furthermore, corrosive drywall could also be present in inaccessible areas that include, but are not limited to, walls above drop ceilings, fire stopping, behind tile, behind cabinets, under raised floor systems, etc. However, the potential for these conditions can be reduced or eliminated with proper property evaluation and corrosion evaluation.



# Summary Narrative

## Observations and Conclusions

### Observations

Blackening or "black deposits" (determined to be copper sulfide) as defined by Unified Engineering File No. 4050 associated with reactive drywall were observed on the A/C evaporator coils of the unit on the 2nd floor and on the external refrigerant lines for both first and second floor units. The evaporator coils for the 1st floor unit were replaced with aluminum coils that had areas of white chalky residue. Blackening on wires within the A/C unit was observed. The 2nd floor A/C unit is next to the stair and above the ceiling that has corrosive drywall. Blackening was not observed on the water heater's copper piping. Blackening was observed on the ground wires of inspected receptacles and switches at areas of high strontium. Blackening was not observed in areas absent of high strontium and not adjacent to it. A familiar odor associated with reactive Chinese drywall was not noticed upon entry or during the inspection but no walls were cut or opened. Various areas of the following rooms had elevated levels of strontium and blackened wires: Foyer, Office, Cabana/office Bath, Dining Hall, and Kitchen Entry Hall. All others had 2 ranges of strontium that were below the threshold that would be considered Chinese or corrosive. Red and green dot stickers were placed on walls corresponding to whether Chinese drywall was present. Red dots indicate high strontium and Chinese/corrosive drywall. Green dots indicate non-Chinese drywall. In the remediation areas, walls were marked with blue masking tape outlining limits to be removed. Walls were also marked indicating areas to be removed for observation during post remediation verification (PRV).

### Conclusions

Based on our visual observations, experience and current state of knowledge in the industry, Chinese Drywall Screening, LLC is of the opinion that corrosive drywall **is** present in the subject property, limited to portions of the first floor only. Chinese drywall was observed in the Foyer, Office, Cabana/Office Bathroom, Hall at Dining Room, entry to Kitchen. Chinese drywall was not observed in the other areas of the home. No evidence of Chinese drywall was observed on the second floor. Blackening observed on the 2nd floor A/C was determined to be from the neighboring corrosive drywall at the base of the stairs near the intake for the A/C.

### Recommendations

All drywall should be removed in rooms where Chinese drywall was discovered. Additional testing and verification should be performed after demolition in order to verify no other Chinese drywall is present. Abatement techniques similar to asbestos removal should be followed. To minimize the impact to occupancy, remediation could be done in 2 phases:

Phase 1: Brick column to Kitchen

Phase 2: Balance of Foyer, Office & Bathroom



Inspections and documentation from leading experts

It is the intent of CDS to inform and empower the Client with enough knowledge to make the best, well informed decision that is in the best interests of the Client. Towards that end, we recommend that you contact an attorney to discuss your legal rights, including potential claims against your builder, along with the installer, supplier and manufacturer of the drywall. In addition, we recommend you to consult with an attorney before you notify your homeowner's insurance.

For owners of properties with reactive drywall, it important to understand preservation of evidence when selling or remediating as well as the importance of 3rd party verification of the remediation. More information is available on our website or toll free at 855-CDW-Help (239-4357).


CHINESE DRYWALL SCREENING

# Drywall and Corrosion Summary by Room

| | Room | Wall | Corrosion? | Floor | Client : Daniel Blonsky   Date: 2/12/14 Description (MDL# - Manufacturer - Markings - Location) |
|---|---|---|---|---|---|
| Foyer | | | Y | 1 | Corrosion and strontium levels around 2,000 ppm on various walls and ceilings |
| | | | | | |
| Hall | | | Y | 1 | Corrosion and strontium levels around 2,000 ppm at base of stairs, along Dining Room before Kitchen |
| | | | | | |
| Stair Closet | | | Y | 1 | Corrosion and strontium levels around 2,000 ppm at bevel strip under stairs in closet |
| | | | | | |
| Office | | | Y | 1 | Corrosion and strontium levels around 2,000 ppm on various walls |
| | | | | | |
| Cabana Bath | | | Y | 1 | Corrosion and strontium levels around 2,000 ppm limited to upper wall right of sink |
| | | | | | Walls with stone and tile need to be verified at time of demo |
| Dining Rm | | | N | 1 | No evidence of corrosive or Chinese drywall, but verify at time of demo |
| | | | | | |
| Living Rm | | | N | 1 | No evidence of corrosive or Chinese drywall, but verify at time of demo |
| | | | | | |
| China Rm | | | N | 1 | No evidence of corrosive or Chinese drywall, but verify at time of demo |
| | | | | | |
| Utility Rm | | | N | 1 | No evidence of corrosive or Chinese drywall, but verify at time of demo |
| | | | | | |
| Kitchen | | | N | 1 | No evidence of corrosive or Chinese drywall, but verify at time of demo |
| | | | | | |
| Second Floor | | | N | 2 | No evidence of corrosive or Chinese drywall |
| | | | | | |

**Checklist of items:**

| | |
|---|---|
| ■ Photos of coils. | ☐ Photos of plumbing trim. |
| ☐ Photos of copper water lines. | ☐ Photos of furnishings. |

MB = Master Bed, B1 = Bedroom 1, F = Family Room, L = Living Room, D = Dining Room, Bns = Bonus Room, Fyr = Foyer, H = Hallway, K = Kitchen, Gar = Garage

* TYPICALLY, MAJOR ROOMS NOT LISTED ABOVE EITHER HAD RESTRICTED ACCESS OR THERE WAS NO EVIDENCE OF SULFUR ATTACK

This is form is for use by Chinese Drywall Screening, LLC only. Use of this form is only permitted with the expressed written consent of Chinese Drywall Screening, LLC. Information contained on this form is proprietary and confidential and shall not be disclosed without the expressed written consent of Chinese Drywall Screening, LLC. © 2010   Rev. 10/29/10



**Exhibit A**

Inspections and documentation from leading experts

# Certification

## Certification of the Inspector

The undersigned do hereby certify that, to the best of our knowledge and belief:

- The statements of fact contained within this report are true and correct.

- The statements of opinions have certain limitations. It is not feasible and is impossible to confirm 100% of corrosive drywall was either removed or is not present. There are several conditions that we have seen that could prevent discovery without a more exhaustive investigation. They include, but are not limited to:

  - Low strontium, corrosive drywall that is domestic and non-homogeneous.

  - Limited amounts of corrosive drywall in inaccessible areas or installed in a way that would seclude it from available receptacles and switches.

  - Limited amounts of high strontium drywall covered with joint compound or heavy textures hindering detection by x-ray fluorescence.

  - Variable amounts of low off-gassing drywall or drywall with corrosive recycled gypsum.

- We have no present or prospective interest in the property that is the subject of this report and we have no personal interest with respect to the parties involved. We have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

- The information in this report is based on the existing conditions of the structure's materials, documents, and information (written or verbal) supplied by contractor, the owner or their representatives, and our observations during the inspection.

- Our compensation or engagement in this assignment is not contingent upon the development or reporting of a predetermined conclusion that favors the cause of the client, the remediator, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this report.

- Any use of this report by any other parties without our expressed or written consent is prohibited. Should another individual or entity rely on this analysis or its conclusions without our consent, they shall indemnify Chinese Drywall Screening, LLC, its employees, and service providers from all damages, losses or expenses that may occur as a result of its use.

- Our report is based on information made available to us at this time. Should additional information become available, we reserve the right to determine the impact, if any, of the new information on our opinions and conclusions and to revise our opinions and conclusions if necessary and warranted by the discovery of additional information.

- The provided services and documentation been completed to the best of our knowledge and based on current known facts regarding reactive drywall.

Howard Ehrsam, P.E., LEED AP
CGC 1509717
on behalf of Chinese Drywall Screening, LLC



# PHOTO EXHIBIT FOR:

## DANIEL BLONSKY












# PHOTO EXHIBIT FOR:

## DANIEL BLONSKY





# PHOTO EXHIBIT FOR:

## DANIEL BLONSKY










# PHOTO EXHIBIT FOR:

## DANIEL BLONSKY





# PHOTO EXHIBIT FOR:

## DANIEL BLONSKY





# PHOTO EXHIBIT FOR:

## DANIEL BLONSKY





# PHOTO EXHIBIT FOR:

## DANIEL BLONSKY





CHINESE|SCREENING
DRYWALL
Inspections and documentation from leading experts

# PHOTO EXHIBIT FOR:

## DANIEL BLONSKY





**CHINESE DRYWALL SCREENING** LLC
Inspections and documentation from leading experts

## PHOTO EXHIBIT FOR:

## DANIEL BLONSKY










PHOTO EXHIBIT FOR:

DANIEL BLONSKY





# PHOTO EXHIBIT FOR:

## DANIEL BLONSKY










# PHOTO EXHIBIT FOR:

## DANIEL BLONSKY





# PHOTO EXHIBIT FOR:

## DANIEL BLONSKY





# PHOTO EXHIBIT FOR:

## DANIEL BLONSKY





# PHOTO EXHIBIT FOR:

## DANIEL BLONSKY








Chinese Drywall Screening, LLC
PH: 772-224-8660 / FX: 772-905-0676
www.chinesedrywallscreening.com



# PHOTO EXHIBIT FOR:

## DANIEL BLONSKY





# PHOTO EXHIBIT FOR:

## DANIEL BLONSKY

 

 

 



# PHOTO EXHIBIT FOR:

## DANIEL BLONSKY










# PHOTO EXHIBIT FOR:

## DANIEL BLONSKY





# PHOTO EXHIBIT FOR:

## DANIEL BLONSKY










# PHOTO EXHIBIT FOR:

## DANIEL BLONSKY










# PHOTO EXHIBIT FOR:

## DANIEL BLONSKY





# PHOTO EXHIBIT FOR:

## DANIEL BLONSKY












# PHOTO EXHIBIT FOR:

## DANIEL BLONSKY







# Exhibit 4

# Exhibit 5

# Exhibit 6

# Exhibit 7

# Exhibit 8



# Certified Mold Free Corp

**2881 W Lake Vista Cir**
**Davie, FL 33328**

# QUOTE

| Date | Estimate # |
|------|-----------|
| 3/17/2014 | 3238 |

**Name / Address**

Daniel F. Blonsky
8220 SW 60th Court,
South Miami, FL  33143

| Description | Total |
|---|---|
| CHINESE DRYWALL REMOVAL, REBUILD, DESTRUCTIVE TESTING AND PAINT.<br>$16250 for Area #1.  $16250K for Area #2. Prepay 50% to schedule work.<br><br>This price assumes that the scope of work is not more than 10% greater than what Howard/CDS has indicated is CDW. But includes additional destructive testing as requested by Mrs. Blonsky.<br><br>This quote valid for 30 days.<br><br>Price includes protect flooring and content.  Remove and later reset crown and base.  Remove and replace drywall. Level 5 finish.  Due to the requirement to check every wall and ceiling downstairs, the entire downstairs will be repainted except 2 FAUX ceilings.<br><br>IMPORTANT:  The only potential concern we have for quality may be the wood beams in the entry foyer.  These were finished after the drywall was installed when the house was being built.  Obviously we cannot do this in the same order at this point.  We will try as best we can to keep the beams perfect but if they need repainting/ staining that will be the home owner's responsibility.<br><br>See addendum attached for addition comments and/or conditions.<br><br><br>PAYMENT TERMS:  50% prepayment for each area, with the balance due for the first area before starting the second area. Final balance due upon completion.<br>This quote valid for 30 days.<br>Price is for payment by check.  3% service charge for credit cards.<br>Please see attached PROCEDURES, DISCLAIMERS AND LIEN RIGHTS.<br><br>Gary Rosen, Ph.D.<br>FL Lic Building Contractor CBC1250821,<br>FL Lic Mold Assessor # MRSA95,<br>FL Lic Mold Remediator #MRSR41 | 32,500.00 |

| **Total** | **$32,500.00** |
|---|---|

Each person accepting the proposal shall be personally liable for full compliance herewith.  Signing this agreement constitutes a work order and cannot be cancelled without expense to customer.

Customer signature indicates agreement with the terms and policies where applicable.  Accepted and agreed to by:

SIGN: _____   DATE: _5/7/14_

PRINT: _DANIEL BLONSKY_

| Phone # | Fax # | E-mail | Web Site |
|---|---|---|---|
| 954-614-6860 | 954-452-3543 | lrosen01@gmail.com | www.mold-free.org |

**Blonsky CDW Addendum:**

Remediation includes additional destructive examination that your wife has indicated she wants. See below.

Based on discussions with your wife, the work will be done in 2, 1 week periods. We need at least 2 weeks between periods so we can continue to support our other clients.

Area #1:  South end of house from the North side of the entry area. 1st floor only. Study/den, living room (by pool), entry, bathroom.

Area #2:  Everything North of this area including AC closet, dining room, hallway, under stairs, kitchen, family room. 1st floor only.

Area #2 will be done during a one week period when your family is on vacation. The reason being that the area includes the main hallway and the AC for the downstairs.  Hard to work in this area when house is occupied.  If you are willing to go without AC for a few days then we can do this when you are not on vacation. But your wife said you wanted to have the work done in the summer when you are on vacation.

Area #1:  Can be done when house is occupied. You will not be able to use the front door or that area of the house for approximately one week.  We can start this any time.  Before the summer is no problem. Given that this area has the majority of the Chinese Drywall, for health reasons not sure why you would want to wait for the summer?

Blonsky Preparation:  No major prep work needs to be done on your part except your cabinet maker will detach the built ins in the Study/den before we work on Area #1.  We will move things around. No storage is needed.  We are concerned about the cleanliness of any storage facility and problems with nicks and scratches.  We will move items in the Study/Den into the living room by the pool and cover them and then move them back when done. Please remove valuables such as money and jewelry from work areas. Dining room.  Not much Chinese drywall there.  We can cover large dining room table and chairs.

Scope of work:  Your wife wants every wall and every ceiling downstairs tested.  She wants Howard's testing retested to make sure everything is perfect when we are done.  This means making openings and checking the color of the gypsum core throughout the downstairs.  This is easy to do but requires that all the walls and ceilings on the first floor (except FAUX ceilings see below) be repaired and then painted when done.  The baseboards and crown need to come down but can be recycled and reset after new drywall installed.  If the crown is pressed wood and not real wood it might fall apart and not be able to be recycled.  We are not responsible for any damage to the baseboard or crown.  Usually there is none.

 Crown and base will have to be repainted upon completion of the rebuild.  We are going to check the FAUX ceilings in the D.R. and L.R. without damaging them by opening areas in the adjacent soffits and peeking into the ceiling behind the existing crown molding. This will allow us to check the entire perimeter of these ceilings for CDW.  Not sure if Howard tested these ceilings or not based on the report. But testing with the laser is not accurate through such finish and should be double checked. And your wife wants everything checked and double checked.

Howard in his report recommends that every area be double checked during demolition.  That is what we will do.

In the CDS report Howard recommends that all drywall in a room be removed if any Chinese drywall is present. But we don't do that. On an internal wall once you open one side you can almost always

definitively determine the type of drywall on the other wall, and where we can rule out Chinese drywall we leave the existing drywall. Otherwise we follow his recommendations.

No permits will be pulled for this work. This means doing some work on Sat and Sunday.

Once our work is done, you should have an electrician come in and change out the electrical receptacles, switches, and clean ends of wires. All smoke detectors in the house should be changed out both upstairs and down. Not included in our price. Plumbing is no issue. AC coils should be replaced with new to avoid any potential for water leaks that could lead to flooding and mold. Not included in our price.

One last thing ... we are going to check the back of the tiled bathroom wall for Chinese drywall. If there is any we will remove but not retile. That is up to you.

_____          5-23-14
Home owner signature                     Date

**DANIEL BLONSKY**
**SHONA BLONSKY**
6220 SW 60TH CT
SOUTH MIAMI, FL 33143

3522

63-460/660
01

MAY 23, 2014

Date

Pay to the
Order of   CERTIFIED MOLD, FREE CORR                    $ -8125 ⁰⁰

Eighty One Mill Twenty Ṣηρ.d ⁰⁰                    Dollars

COCONUT GROVE BANK
Main Office
2701 South Bayshore Drive
Coconut Grove, Florida 33133

For   ESTIMATE #3238

⑈066004600⑈ 0124781108⑈ 3522

# Exhibit 9

# Exhibit 10

14:56 ↻

# Check Image

Routing Number **066004600**



**DANIEL BLONSKY**
**SHONA BLONSKY**
8220 SW 60TH CT
SOUTH MIAMI, FL 33143

3468

63-480/660
01

Jan. 29. 2014
Date

Pay to the
Order of  *Gabriel Giorgis*                     $ 450. ⁵⁰⁄₁₀₀

*Four hundred fifty*                                    Dollars

COCONUT GROVE BANK
Main Office
2701 South Bayshore Drive
Coconut Grove, Florida 33133

For  *repairs.*                          *Shona Blonsky*

⑆066004600⑆ 012478110811⑈ 3468

# GIANTIVAL CORPORATION

2575 SW 27TH AVE - MIAMI - FL - 33133
TEL: ( 786 ) 286 7813

**JOB: SHONA BLONSKY**

* CUT OUT DRYWALL IN 3 LOCATIONS ( LAUNDRY- HALLWAY - A/C CLOSET )

* REPAIR DRYWALL

* PRIMER AND PAINT  WALLS ( 2 COATS )

TOTAL :  $ 450



**DRAFT INVOICE**

—— **INVOICE** ——

| | |
|---|---|
| Remit To: | ALS Group USA, Corp. |
| | PO Box 975444 |
| | Dallas, TX 75397-5444 |
| Attn: | Accounts Receivable |
| TEL: | (281) 530-5656 |
| FAX: | (281) 530-5887 |
| T.I.N.: | 76-0606679 |

Service Request: P1400381
Customer No : 043590

# INVOICE PAID

P.O. Number: paid by Check #3467

Project Name: Blonsky
Project Number:

Attn: Shona Blonsky
Shona Blonsky
srblonsky@yahoo.com
8220 SW 60th Ct.
Miami, FL 33143

Report To: Shona Blonsky
Shona Blonsky
8220 SW 60th Ct.
Miami, FL 33143

ALS Project Manager: Sue Anderson(Sue.Anderson@alsglobal.com)
Phone: 805-526-7161
ALS TSR: Sue Anderson

Samples submitted on: 1/31/14

**Analytical Services**

**Solid**

| Method | Test Description | QTY | Unit Price | TAT Surcharge | Adj Unit Price | Extended Price |
|---|---|---|---|---|---|---|
| S8-ECD | Orthorhombic, Cyclooctasulfur from Drywall Material Using GC/ECD | 2 | 100.00 | 0% | 100.00 | 200.00 P |

**Amount Due:** 200.00

**VISA** [mastercard] Pay with credit card online at www.caslab.com

Terms: Net 30 days, 1.5% interest per month (18% per year) charge on past due accounts.

Subject to ALS Terms & Conditions

ADDRESS 10450 Stancliff Road Suite 210, Houston TX 77099 USA   PHONE +1 281 530 5656   FAX +1 281 530 5887
ALS GROUP USA CORP   Part of the ALS Group   An ALS Limited Company
www.alsglobal.com

14:56 ↻

## Check Image

Routing Number 066004600

**DANIEL BLONSKY**
**SHONA BLONSKY**
8220 SW 60TH CT
SOUTH MIAMI, FL 33143

3467
63-400/660
01

1/28/14

Date

Pay to the
Order of   ALS  Environmental                    $ 200.⁰⁰/100

Two Hundred                                       Dollars

COCONUT GROVE BANK
Main Office
2701 South Bayshore Drive    P1400381
Coconut Grove, Florida 33133

For   G C / ECD Test            Shona Blondley

⑆066004600⑆ 012478110811ꞏ 3467          ꞏ000000 20000ꞏ

| JPMORGANCHASE BK NA | | CR TO NMD |
|---|---|---|
| 020514 | >074909982< | PAYEE ALL |
| 23590156 | 0975444 | RTS RSVD |
| 00005880 | 045 | 0000000818126858 |

14.2.3

# GIANTIVAL CORPORATION

2575 SW 27TH AVE - MIAMI - FL - 33133
TEL: ( 786 ) 286 7813

JOB: **SHONA BLONSKY**

* REMOVE DRYWALL TO LOCATE LABELING ON BACK OF DRYWALL

* INSTALL PLASTIC CONTAINMENT IN HALLWAY.

* INSTALL NEW  DRYWALL

* FINISH JOB

* PRIMER AND PAINT  WALLS ( 2 COATS )

TOTAL :  $ 350

02/18/2014

14:55

# Check Image

Routing Number 066004600

**DANIEL BLONSKY**
**SHONA BLONSKY**
8220 SW 60TH CT
SOUTH MIAMI, FL 33143

3481
63-460/680
01

2/18/2014
Date

Pay to the
Order of  *Gabriel Giorgios*                           $ 350 ²²/₁₀₀

*Three hundred fifty* _____ **Dollars**

COCONUT GROVE BANK®
Main Office
2701 South Bayshore Drive
Coconut Grove, Florida 33133

For *Drywall repair /foyer*                    *Shona Blonsky*

⑆066004600⑆ 0124781108⑈ 3481

14.2.3

14:49 ↻

## Check Image

Routing Number 066004600

**DANIEL BLONSKY**
**SHONA BLONSKY**
8220 SW 60TH CT
SOUTH MIAMI, FL 33143

3474
83-460/660
01

Feb. 12, 2014
Date

Pay to the Order of _Chinese Drywall Screening_ | $ 900 ⁰⁰/₁₀₀

_Nine hundred_ Dollars

COCONUT GROVE BANK
Main Office
2701 South Bayshore Drive
Coconut Grove, Florida 33133

For _initial assessment_                Shona Blonsky

⑆066004600⑆ 012478110811⑈ 3474

PAY TO THE ORDER OF
GULFSTREAM BUSINESS BANK
PORT SANTI LUCIE, FL 34952
FOR DEPOSIT ONLY
06/07/12
CHINESE DRYWALL SCREENING
OPERATING ACCOUNT
01500174

14:56

# Check Image

Routing Number **066004600**



DANIEL BLONSKY
SHONA BLONSKY
8220 SW 60TH CT
SOUTH MIAMI, FL 33143

3522
53-450/660
01

MAY 23, 2014

Date

Pay to the Order of  *CERTIFIED MOLD, FREE CORP*   $ -8125 ⁰⁰

*Eighty One Thousand Twenty Five* ⁰⁰    Dollars

COCONUT GROVE BANK
Main Office
2701 South Bayshore Drive
Coconut Grove, Florida 33133

For *ESTIMATE #3238*

⑆066004600⑆ 0124781108⑈ 3522

PAY TO THE ORDER OF
WACHOVIA
FOR DEPOSIT ONLY
CERTIFIED MOLD FREE CORP.
200003485574 10

14.2.3

14:56

## Check Image

Routing Number 066004600

**DANIEL BLONSKY**
**SHONA BLONSKY**
8220 SW 60TH CT
SOUTH MIAMI, FL 33143

3533

53-460/660
01

7/25/14

Date

Pay to the
Order of _Certified Mold Free Corp_

$ 16,250.⁰⁰/₁₀₀

_Sixteen thousand two hundred_ ——————— Dollars

COCONUT GROVE BANK
Main Office
2701 South Bayshore Drive
Coconut Grove, Florida 33133

For _Chinese Drywall Remediation_

_Shona Blonsky_

M*

⑆066004600⑆ 0124781108⑈ 3533

PAY TO THE ORDER OF
WACHOVIA
FOR DEPOSIT ONLY
CERTIFIED MOLD FREE CORP.
2000034237410

14.2.3

14:56

# Check Image

Routing Number **066004600**



**DANIEL BLONSKY**
**SHONA BLONSKY**
**8220 SW 80TH CT**
**SOUTH MIAMI, FL 33143**

3547

63-460/460
01

_8/13/14_ Date

Pay to the
Order of _Certified Mold Free Corp._  | $ 8,125.²⁰⁄₁₀

_Eight thousand one hundred twenty five ———_ **Dollars**

COCONUT GROVE BANK
Main Office
2701 South Bayshore Drive
Coconut Grove, Florida 33133

For _remediation - final pmt_    _Shona Blonsky_

⑆066004600⑆ 012478110B⑈ 3547

PAY TO THE ORDER OF
WACHOVIA
FOR DEPOSIT ONLY
CERTIFIED MOLD FREE CORP.
2000034237410

14.2.3

14:29 ↻

## Check Image

Routing Number **066004600**

**DANIEL BLONSKY**
**SHONA BLONSKY**
**6220 SW 60TH CT**
**SOUTH MIAMI, FL 33143**

3555

8/27/14

Date

Pay to the Order of — Rons Window Decor    $ 793.⁰⁰/₁₀₀

Seven hundred ninty three — Dollars

COCONUT GROVE BANK
Main Office
2701 South Bayshore Drive
Coconut Grove, Florida 33133

For Cleanly, remagle install drapery    Shona Blonsky

⑆066004600⑆ 0124781108⑈ 3555

PAY TO THE ORDER OF
WELLS FARGO BANK, N.A.
063109913
FOR DEPOSIT ONLY
RONS WINDOW DECOR INC
2020000120157

14.2.3

14:56

## Check Image

Routing Number **066004600**



**DANIEL BLONSKY**
**SHONA BLONSKY**
8220 SW 60TH CT
SOUTH MIAMI, FL 33143

3429
63-460/660
01

Dec. 3, 2014
Date

Pay to the
Order of Chinese Drywall Screening | $ 1,750.00/100

One thousand seven hundred fifty —— Dollars

COCONUT GROVE BANK
Main Office
2701 South Bayshore Drive
Coconut Grove, Florida 33133

For Corros:ch(Coupon) testing     Shona Blonsky

⑆066004600⑆ 0124781108⑈ 3429

121114 -0359 21740897 890311805>863115

PAY TO THE ORDER OF
GULFSTREAM BUSINESS BANK
PORT SAINT LUCIE, FL 34952
067014712
FOR DEPOSIT ONLY
CHINESE DRYWALL SCREENING
OPERATING ACCOUNT
015004274

14.2.3

14:57

## Check Image

Routing Number **066004600**



**DANIEL BLONSKY**
**SHONA BLONSKY**
**8220 SW 60TH CT**
**SOUTH MIAMI, FL 33143**

3317

2/25/15

Date

Pay to the
Order of *Certified Mold Free Corp.*  | $ 500.⁰⁰⁄₁₀₀

*Five hundred* _____ **Dollars**

COCONUT GROVE BANK
Main Office
2701 South Bayshore Drive
Coconut Grove, Florida 33133

For *testing in bedroom*       *Shona Blonsk*

⑆066004600⑆ 0124781108⑈ 3317

PAY TO THE ORDER OF
WACHOVIA
FOR DEPOSIT ONLY
CERTIFIED MOLD FREE CORP.
2000034237410

14.2.3

# Exhibit 11

# Exhibit 12



## CHINESE DRYWALL FREE CERTIFICATE

FR: Gary Rosen, Ph.D.                                                        12-4-14
RE: 8220 SW 60th Ct S. Miami, FL

Chinese Drywall Screening (ChineseDrywallScreening.com) inspected 8220 SW 60th Ct S. Miami, FL for corrosive Chinese drywall. Corrosive Chinese drywall was found in areas of the first floor. No Chinese drywall was found upstairs.

The precise locations of the problem drywall were mapped out by Chinese Drywall Screening. Problem drywall was present in both walls and ceilings in these areas.

Our firm was hired to perform Chinese Drywall remediation. Under EPA Level 1 containment, all corrosive Chinese drywall was removed from the home. Wall and ceiling cavities were carefully cleaned of Chinese drywall dust and new (U.S. manufactured) drywall was installed.

The square footage of the area remediated was 1932 sq ft.

I hereby certify that 8220 SW 60th Ct S. Miami, FL is free of all detectable Chinese drywall.

Sincerely,

Gary Rosen, Ph.D., LEED AP
State Licensed Mold Remediation MRSD-417
State Licensed Mold Assessment Contractor MRSA-95
State Licensed Building Contractor CBC1250821
www.Chinese-Drywall.org
www.Mold-Free.org



# Exhibit 13