**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: CHINESE MANUFACTURED | ) | |
| DRYWALL PRODUCTS LIABILITY | ) | |
| LITIGATION | ) | MDL NO. 2047 |
| | ) | |
| THIS DOCUMENT RELATES TO: | ) | |
| | ) | SECTION: L |
| ALL CASES | ) | |
| | ) | JUDGE FALLON |
| | ) | |
| | ) | MAG. JUDGE WILKINSON |
| | ) | |

**THE BRYSON GROUP'S OPPOSITION TO ART EDGE, PC'S RESPONSE TO THE
COURT'S OCTOBER 31, 2019 ORDER AND ART EDGE, P.C.'S MOTION TO
COMPEL ARBITRATION AND STAY PROCEEDINGS**

Whitfield Bryson & Mason LLP, Rhine Law Firm, P.C., Pendley Baudin & Coffin, and

Luckey & Mullins (collectively, the "Bryson Group") hereby respond to certain of Art Edge

P.C.'s ("Edge") filings related to the Court's October 31, 2019 Order: Motion to Compel

Arbitration and Stay Proceedings [Doc. 22402], Memorandum in Support [Doc. 22402-1], and

Response to the Court's October 31, 2019 Order [Doc. 22403] ("Edge Motions"). For the

reasons set forth herein, this Court can and should direct the Clerk of Court to distribute from the

held fees the portion owed to the Bryson Group.

**ARGUMENT**

**I.  This Court has jurisdiction over this controversy.**

    **a.  Because the disputed funds are in the registry of this Court, this Court has
    ancillary jurisdiction over this controversy.**

This Court has jurisdiction over the disputed funds. On October 10, 2019, this Court

issued the Order Granting Settlement Administrator's Motion to Deposit Disputed Attorney Fees

into the Registry of the Court [Doc. 22343], whereby it caused the disputed sum of $6,866,796.33 to be deposited into the registry of the Court.  The exercise of ancillary jurisdiction is appropriate where the subsidiary controversy "has direct relation to property or assets actually or constructively drawn into the court's possession or control by the principal suit." *Fulton National Bank of Atlanta v. Hozier*, 267 U.S. 276, 280, 69 L. Ed. 609, 45 S. Ct. 261 (1925). As the court has possession over the funds at issue, its authority to maintain control over attorneys' fees in this case and to make decisions as to allocation and distribution of the fund cannot be seriously disputed.

Nonetheless, Edge cites several cases in support of its view that this Court cannot maintain jurisdiction over the disputed fees. These cases are readily distinguishable because in each of them the court did <u>not</u> maintain control of the actual fees at issue.

In *In re NFL Players' Concussion Injury Litig.*, 2019 U.S. App. LEXIS 32786, *6-7, 2019 WL 5618161 (3d Cir. October 31, 2019) ("NFL"), Attorney John Lorentz referred to class counsel, Anapol Weiss, several former NFL players to serve as class representatives.  Lorentz did not play any role whatsoever beyond referring retired NFL players to Anapol Weiss.  Lorentz asserted that based on an alleged oral agreement, he was entitled to one-third of the <u>common benefit fees</u> awarded to Anapol Weiss for their role as class counsel.  When he was unable to collect his fee from the distribution already made to Anapol Weiss, Lorentz filed a Motion to Intervene.  The Third Circuit noted that while it "arguably retained ancillary jurisdiction to enforce the *In re: NFL* settlement agreement—**between attorneys of record**—it arguably could not retain ancillary jurisdiction to hear a separate breach of contract claim relating to a non-settlement agreement issue, an alleged oral promise." *Id.* at *7 (emphasis added).  Here, not only are the disputed funds held in the registry of the Court, but the written Agreement is an

agreement to allocate fees among attorneys of record in this case on the basis of work actually performed for the clients.

Edge's reliance on *Law Office of Daniel E. Becnel, Jr. v. John Arthur Eaves Law Firm*, 2001 U.S. Dist. LEXIS 19037, 2001 WL 1426681 (EDLA 2001)*,* is equally unavailing. In *Becnel,* attorney Becnel filed a fee dispute Complaint in the Eastern District of Louisiana, even though the MDL was in the Eastern District of Pennsylvania and the Eastern District of Louisiana did not possess control over any fee funds.   The fee dispute case was randomly assigned to Judge Ginger Berrigan who transferred the fee dispute Judge Porteous.  *Becnel* at *3. Judge Porteous transferred the matter back to Section C.   The assigned Section C judge ultimately declined to exercise ancillary jurisdiction over the fee dispute but noted that ancillary jurisdiction would have attached if the matter was a class action. *Becnel* at *6  ("**However, other than in the settlement of class actions**, courts have declined to exercise ancillary jurisdiction over disputes between attorneys as to the proper division of fees earned in the underlying litigation.") (emphasis added).

b.      **The *Jenkins* factors support ancillary jurisdiction.**

Edge further insists that the Court apply the analysis set forth in *Jenkins v. Weinshienk*, 670 F.2d 915 (10th Cir. 1982): (1) an ancillary matter should arise from the transaction that was the basis of the principal proceeding, during the course of the principal proceedings, or as an integral part of the main proceedings; (2) the federal court should be able to determine the matter without a substantial new fact-finding proceeding; (3) failing to determine the matter should not deprive a party of any important procedural or substantive right; or (4) the matter should be decided in order to protect the integrity of the principal proceeding or insure that its disposition is not frustrated. *Id*. at 918.  Each of these factors weigh in favor of ancillary jurisdiction.

*First*, this dispute arises from funds generated by a settlement approved by this Court and administered under its direction.  The settlement was part of the proceedings that this court presided over and this Court awarded the attorneys' fees at issue.

*Second*, the Court is more than able to decide this matter without a substantial new fact-finding proceeding. This Court is already knowledgeable about the work involved by the attorneys who participated in this extraordinarily complex and prolonged litigation. It is intimately familiar with the manner in which work in this case was delegated and performed.  It knows exceedingly well the path towards settlement and the need for confidentiality. Moreover, it is well-versed in the work done by contract lawyers in this matter many of whom, as a group which including members of the Bryson Group, spent nearly two years in fee litigation before this Court.

*Third*, if this Court fails to determine the matter, the Bryson Group will be denied its right to fees awarded by this Court and will embroil it in a dispute amongst attorneys, some of whom are not parties to these proceedings.

*Fourth*, and last, fees are the province of the Court in a class action and this Court should determine the fee allocation  in order to protect its sovereignty over all aspects of this case.

In sum, the facts in this fee dispute are clearly distinguishable from those in the cases cited by Edge, and this Court has ancillary jurisdiction to determine the distribution of the disputed attorneys' fees in its possession.

## II.    Counsel waived any agreement to arbitrate distribution of attorneys' fees in this action when it agreed to be bound by the Knauf Settlement Agreement.

Each of the lawyers who are making claim to the disputed funds already agreed to have this Court allocate fees when their clients accepted the terms of the Knauf Settlement Agreement. The Knauf Settlement Agreement contains numerous provisions regarding the

Court's role in allocating attorneys' fees and costs. See Section 14 Attorneys' fees. [Doc 16407-3 at p. 64-66]. For example, §14.2 states in part that:

> All attorney's fees and costs **as well as the allocation of attorneys' fees** and costs among the PSC, common benefit counsel, Settlement Class Counsel and individual retained counsel are subject to the approval of the Court and to a determination by the Court that the common benefit counsel work was valid and bona fide. The Court's determination shall be final and not subject to appeal. (Emphasis added).

Section 14.3 further states that

> **The Court's award of attorneys' fees and costs shall settle and finally resolve any claim for attorneys' fees or costs that can be claimed by any counsel representing or working for the benefit either of a Participating Class Member or the Class.** The award for attorneys' fees and costs shall include, but not be limited to: (i) all preparation and litigation work on behalf of any Participating Class Member of the Class; (ii) this Settlement; (iii) the Pilot Program; (iv) the Major Builder Settlement Agreements; (v) any agreement governing homes remediated prior to the Execution Date; and (vi) any other previous settlement between Knauf and any other party relating to claims arising from KPT Chinese Drywall unless attorneys' fees and reasonable costs have already been separately addressed under such settlement. Upon final approval, this agreement concerning attorneys' fees and costs shall supersede and replace the attorneys' fees and costs arrangements in the Pilot Program and the Major Builder Settlement Agreements. [Emphasis added].

"Participating Class Member" is by definition "all Class Members who do not opt-out as provided in Sections 8.1 and 8.2." [Doc 16407-3 at p. 9].[1] And by not opting out, a claimant and her counsel are bound by what they voluntarily agree to accept. "When a claimant opts into the agreement, the claimant and the claimant's primary counsel agree to be bound by the terms of the agreement." Eldon E. Fallon, *Common Benefit Fees in Multidistrict Litigation*, 74 La. L. Rev. (2014). All of the attorneys' fees at issue here relate to claimants that have *opted into* the agreement; therefore, all claimant's counsel, including Edge, agreed to be bound by the provisions in the various settlement agreements mandating that the Court finally resolve any

---

[1] The Global Settlement Agreement contains substantively similar provisions. [Doc. 14373-5 §§ 1.23, 8.2, 16.6 and 16.7].

claim for attorneys' fees.  In doing so, counsel has waived any right to arbitrate the distribution of attorneys' fees.

**III.**     **Arbitration inherently conflicts with the statutory obligation of this Court under Rule 23(h) to determine attorneys' fees in this class action.**

This Court is presiding over the settlement of a class action and is therefore duty bound to resolve fee allocation disputes.  As stated by this Court, since it has "previously determined that the claims met the [requirements of ] Rule 23 … [it] is obligated to determine a fair compensation for all counsel in this case." *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 2018 U.S. Dist. LEXIS 76528, *16, 2018 WL 2095729 (2018 E.D. La.).  Additionally, this Court has noted that pursuant to Rule 23(h), the Court has the authority and responsibility for setting attorneys' fees." [Doc. 21168 at p. 7].

The Federal Arbitration Act does not override the Court's Rule 23 authority.  Instead, it provides that arbitration contracts "shall be valid, irrevocable, and enforceable, **save upon such grounds as exist at law or in equity for the revocation of any contract**."  9 USCS § 2.  As noted above, by accepting the Knauf Settlement Agreement, Edge and his clients have waived their right to enforce the arbitration provision. Further, the Supreme Court has held that  "If Congress did intend to limit or prohibit waiver of a judicial forum for a particular claim, such an intent will be deducible from the statute's text or legislative history, or from an **inherent conflict between arbitration and the statute's underlying purposes**." *Shearson/American Express v. McMahon*, 482 U.S. 220, 227, 107 S. Ct. 2332, 2337-2338, 96 L. Ed. 2d 185, 194 (1987) (internal citations omitted) (emphasis added).

Pursuant to Rule 23, this Court not only possesses the authority, but also the responsibility and the obligation to set attorneys' fees to be distributed to counsel under the class

action settlements.  Ordering arbitration would inherently conflict with the Court's responsibility and obligation set forth in Rule 23.

**IV.    The Court should uphold the fee provision in the Agreement because both Louisiana and Alabama state law support awarding the 25% fee percentage agreed to in an arm's length transaction with the Collins Group, that included Edge.**

Because both Louisiana and Alabama state law support awarding the 25% fee percentage agreed to in an arm's length transaction with the Collins Group, that included Edge, the Court should uphold the fee provision in the Agreement.

Edge asserts that the Bryson Group is not entitled to its agreed upon 25% fee because (i) "Bryson was unable to secure any common benefit time for The Collins Group" (ii) Bryson "did not travel to Alabama after the initial meeting for any meetings with Edge or Collins," (iii) Bryson "did not inform the Collins Group of any pending settlement or negotiations" and (iv) "[t]he vast majority of the work provided by The Bryson Group was administrative in nature and performed by paralegals." [Doc. 22403 at p. 7]. These assertions are each factually incorrect.

*First*, the Agreement states that "Dan Bryson will assist the Collins Group in joining MDL committees." [Agreement, Doc. 22400-2 ¶ 3].  Joining a Committee is not the same as getting common benefit work, it simply means that it is possible that the attorney could be assigned work. The Agreement does not guarantee that Bryson will secure common benefit time for the Collins Group, as Bryson alone cannot deliver on such a promise. The record does, however, include Bryson's discussion with PSC leadership about assigning the Collins Group Alabama specific research assignments. [Bryson Aff., Doc. 22400-3 ¶7].  The talent available to the PSC for common benefit work was immense and this work was highly coveted.  The fact that the PSC leadership did not send common benefit assignments to this group of lawyers is not a breach of the Agreement. [Edge Response,, Doc. 22403 at p. 7].

*Second*, the Agreement states that "**upon request**, at least once per quarter, Bryson will travel to Birmingham to consult with the Collins Group." (¶4) (emphasis added.) There exists nothing in the record that any such requests were made, as none were issued. Therefore, absent any evidence that Bryson refused any such request, the mere fact that Bryson did not travel to Birmingham is indicative of the fact that the Collins Group made no such requests, not that the Bryson Group breached the Agreement. Further, Edge makes no record about the type of information he would have desired.

*Third,* the Agreement does not require Bryson to notify the Collins Group of information he possessed as a PSC member that could not be shared. It is inconceivable that the Agreement's language to "keep each other informed about their work projects and additional case acquisition" or "to communicate in order to make key strategic decisions with regard to filings in the MDL" could be construed to force Bryson to reveal the substance and status of confidential, complex, and precarious negotiation positions, not all of which he was even privy to. Further, Bryson had numerous conversations with the Collins Group and with Brian Collins specifically as directed by him. [Bryson Aff., Doc. 22400-3 ¶ 9, Ex. D-G].

*Fourth*, Edge asserts that because much of the work performed on the cases was undertaken by paralegals, yet he makes no reference to any provision in the agreement that requires tasks to be performed by attorneys rather than experienced paralegals. Paralegals and attorneys often have different knowledge and skill sets and the most efficient process for prosecuting CDW claims was to have a paralegal, who was intimately familiar with the manner in which the Court, opposing counsel, and BrownGreer desired the data to be accumulated, presented and filed, perform those tasks in conjunction with a knowledgeable attorney.

As a legal mater, under the state law of both Louisiana and Alabama, this Court should honor the attorneys' fee division set forth in the Agreement.

> **a.**     **Louisiana courts generally uphold the fee provisions in joint venture agreements and do not examine the work performed.**

The Agreement at issue here is a joint venture agreement because it contains a division of the attorneys' fees between the Collins Group and the Bryson Group, after the Collins Group, the retained attorney, procured the employment of the Bryson Group to assist the Collins Group in handling cases involving a contingency fee.

> In the situation where a retained attorney associates, employs or procures the employment of another attorney to assist him in handling a case involving a contingency fee, the agreement regarding division of the fee is a joint venture which gives the parties to the contract the right to participate in the fund resulting from the payment of the fee by the client….When the attorneys … have entered into an agreement regarding the division of the fee the Code of Professional Responsibility (or Rules of Professional Conduct) does not prohibit enforcement of that agreement and does not require apportioning of the fee on a quantum meruit basis."

*Scurto v. Siegrist*, 598 So. 2d 507, 509-510 (La. App. 1st Cir. 4/10/92) (citing *Duer & Taylor v. Blanchard, Walker, O'Quin & Roberts*, 354 So.2d 192 (La. 1978)). The Bryson Group fulfilled its obligations in handling the cases and is due the 25% of attorneys' fees that the Collins Group, including Edge, agreed to.

> **b.**     **Alabama courts also generally uphold the fee provisions in joint venture agreements and do not examine the work performed.**

Alabama law also supports enforcing the attorneys' fees provision in the joint venture agreement. "Where an attorney retained on a contingent-fee basis to prosecute a claim engages another lawyer to assist in the litigation, upon an agreement to share the fee in case of success, otherwise to receive nothing, they become joint venturers." *Wachovia Bank, N.A. v. Jones, Morrison & Womack, P.C.*, 42 So. 3d 667, 678 (Ala. 2009) (quoting 46 Am. Jur. 2d Joint

Ventures § 50 (2006)). Thus in *Ex parte Counts*, 683 So. 2d 968 (Ala. May 31, 1996), a Louisiana attorney contacted an Alabama attorney to be local counsel, and a joint venture agreement provided that local counsel would file the Complaint, assist in discovery, serve as local counsel and would receive 40% of any contingency fee received.  Shortly thereafter, the Louisiana attorney settled one of the two cases, and the local counsel requested his 40%.  The other attorney insisted that obtaining the fee was conditioned upon performance of discovery and trial work, and that the fee should be determined on a *quantum meruit* basis.  The Alabama Supreme Court disagreed and based its decision on basic contract law.  As here, there was no dispute that a valid contract existed or any dispute as to the written terms of the contract.  The Court held that 40% was due under the clear and plain meaning of the contract and that the attorney must accept the terms and results of the contract.  *Id.* at 970.

Because the law in both Louisiana and Alabama supports enforcing the terms of the joint venture Agreement at issue here, the Court should award the Bryson Group $1,013,940.35, representing 25% of the fees awarded from the recoveries of 174 plaintiffs represented jointly by the Bryson Group and the Collins Group.

## <u>CONCLUSION</u>

For the reasons set forth herein, this Court has jurisdiction and the responsibility to distribute the disputed attorneys' fees and should honor the joint venture Agreement and award the Bryson Group $1,013,940.35, representing 25% of the fees awarded from the recoveries of 174 plaintiffs represented jointly by the Bryson Group and the Collins Group.

Respectfully submitted this the 13th day of December, 2019.


_____*s/Daniel Bryson*_____
Daniel K. Bryson
WHITFIELD, BRYSON & MASON, LLP
900 W. Morgan Street
Raleigh, NC 27603
Tel: (919) 600-5000
Fax: (919) 600-5035

Gary E. Mason
WHITFIELD BRYSON & MASON LLP
5101 Wisconsin Avenue NW, Suite 305
Washington, D.C. 20016
Telephone: (202) 429-2290

Joel R. Rhine
RHINE LAW FIRM, PC
1612 Military Cutoff Rd, Suite 300
Wilmington, NC 28403
Tel: (910) 772-9960
Fax: (910) 772-9062

Chris Coffin
PENDLEY BAUDIN & COFFIN, LLP
24110 Eden Street
Plaquemine, LA 70764
Telephone: (225) 687-6396

Steve Mullins
LUCKEY & MULLINS
1629 Government Street
Ocean Springs, MS 39564
Telephone: (228) 875-3175

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that the above and forgoing has been served upon Plaintiffs' Liaison Counsel, Russ Herman, by U.S. Mail and email or hand delivery and email and upon all parties by electronically uploading same to Lexis Nexis File and Serve® in accordance with Pre-Trial Order No.: 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with procedures established in MDL 2047 on this 13th day of December, 2019.

*/s/ Daniel K. Bryson*
Daniel K. Bryson