Plaintiff Profile Form - Residential Properties

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE:  CHINESE MANUFACTURED DRYWALL | MDL NO. 2047 |
| PRODUCTS LIABILITY LITIGATION | SECTION: L |
| THIS DOCUMENT RELATES TO: ALL CASES | JUDGE FALLON |
| | MAG. JUDGE WILKINSON |

For Internal Use Only

File Number

Date Received

This Plaintiff Profile Form must be completed and signed by every person making a claim in this litigation using one form per affected address.  In completing this Profile Form, you are under oath and must provide information that is true and correct to the best of your knowledge.  If you cannot recall all of the details requested, please provide as much information as you can and expressly indicate "unknown" in the space provided when not known.  You must supplement your responses if you learn they are incomplete or incorrect in any material respect. You may and should consult with your attorney if you have any questions regarding completion of this form.  If you are completing the form for someone who has died or who cannot complete the Profile Form, please answer as completely as you can for that person.

The questions and requests for production contained within this Profile Form are non-objectionable and shall be answered without objection. By answering this Profile Form, you are not waiving the attorney work product and/or attorney client privileges. Similarly, by disclosing the identity of consultants, such consultants may remain non-testifying experts and are subject to all protections afforded by law.

To the extent that the form does not provide enough space to complete your responses, you may attach as many sheets of paper as necessary.   All photographs produced in response to this form shall be in color and attached to or printed on 8 1/2" x 11" white paper.

**Section I. Property Information**

Name Property Owner: Abigail Cohen

Address of Affected Property: 20305 Chestnut Grove Drive
Tampa, FL  33647

Is this Property:* (Residential)   Commercial   Governmental

Name of Person Completing this Form: Abigail Cohen

Is above your primary residence? (Yes)  No

Mailing Address (if different):

Phone: ( 813 )  435 - 8897

* If your response is commercial or governmental you should not fill out the rrmaining questions, you will receive a follow up form at a later date.

Circle one: (Owner-Occupant)   Owner Only   Renter-Occupant

Represented By: Jimmy Doyle

Address: DOYLE LAW FIRM, PC
2100 Southbridge Pkwy, #650
Birmingham, AL 35209

Phone: ( 205 )  533 - 9500

Case No. /Docket Info:

**Section II. Insurance Information**

Homeowner/ Renter Insurer:

Policy #: 9 71 608706

Agent: Ronald Hilton Agency

Address: 17210 Camelot Court, Suite 101
Land O Lakes, FL  34638

Phone: ( 813 )  948 - 0900

+ Attach Copy of  Insurance Declaration Page

**Section III. Claimant Information**

| Name of Claimant | Dates Occupied | | Gender | Date of Birth | Are you claiming personal injuries?* *Circle One* | | Identify Claimant Status as an Owner-Occupant, an Owner Only, or an Occupant or Renter Only |
|---|---|---|---|---|---|---|---|
| | Move-in | Leave | | | | | |
| Abigail Cohen | 11/29/06 | / / | M (F) | / / | Yes | (No) | Owner - Occupant |
| | / / | / / | M / F | / / | Yes | No | |
| | / / | / / | M / F | / / | Yes | No | |
| | / / | / / | M / F | / / | Yes | No | |
| | / / | / / | M / F | / / | Yes | No | |
| | / / | / / | M / F | / / | Yes | No | |
| | / / | / / | M / F | / / | Yes | No | |
| | / / | / / | M / F | / / | Yes | No | |
| | / / | / / | M / F | / / | Yes | No | |

* Personal injuries include claims for mental anguish and medical monitoring.

**EXHIBIT A**

Page 1

Plaintiff Profile Form - Residential Properties

### Section IV. Inspection Information

1.0. Have you, or has anyone on your behalf, conducted an inspection into whether Chinese-manufactured drywall is present in your home?   (Yes)   No

   1.1. If "Yes" to Question 1.0 Section IV. Who conducted the inspection?   Drywall Science, LLC

      1.2. When did the inspection take place?   04 /27/ 15

2.0. Has a determination been made that Chinese-manufactured drywall is present in your home?   (Yes)   No

   2.1. If "Yes" to Question 2.0. Section IV. Who made this determination?   Drywall Science, LLc

      2.2. When was this determination made?   04 /27/ 15

### Section V. Drywall Information

| Drywall Manufacturer | Markings on Drywall | Location in Home |
|---|---|---|
| Knauf Plasterboard Tianjin | KNAUF TIANJIN CHINA ASTM C 36 | Walls & ceiling |
| | | |
| | | |

### Section VI. Home Information

| | | | Yes | No |
|---|---|---|---|---|
| Approx. Sq. Ft. of House: | 2,546 | | | |
| Estimated Sq. Ft. of Drywall | ---------- | Occupied | X | |
| Height of interior Walls | 10' | Year-round | X | |
| Number of Bedrooms: | 3 | Summer | | |
| Number of Bathrooms: | 2.5 | Winter | | |

#### Plumbing System

| | Blackening or Corrosion? | | |
|---|---|---|---|
| | Yes | No | N/A |
| PVC/ CPVC/ Plastic Piping | | X | |
| Copper Piping | X | | |
| Copper Fixtures | X | | |
| Other Fixtures | X | | |
| Were repairs made to the plumbing system? | | X | |
| Dates: | | | |

#### Electrical System

| | Blackening or Corrosion? | | |
|---|---|---|---|
| | Yes | No | N/A |
| Receptacles | X | | |
| Switches | X | | |
| Main Panel | X | | |
| 2nd Panel | | | X |
| Exposed Copper Wires | X | | |
| Were repairs made to the electrical system? | | X | |
| Dates: | | | |

+ Attach Copy of Floor Plan on 8 1/2" X 11" paper

### Section VII. Construction/Renovation Information

Date Range for New Home Construction: (Month/Day/Year)

| | | | |
|---|---|---|---|
| Start Date: | 08/ 30/ 05 | Completion Date | 10 /29 /06 |
| Move In Date: | 11/ 29/ 06 | Date Acquired Home | 11/29/06 |

Date Range for Renovations: (Month/Day/Year)

| | | | |
|---|---|---|---|
| Start Date: | / / | Completion Date | / / |
| Move In Date: | / / | | |

| Renovation(s) | Yes | No | N/A |
|---|---|---|---|
| First Floor: 1/2 Wall of drywall replaced | | | |
| First Floor: Full Wall of drywall replaced | | | |
| Second Floor: Any drywall replaced | | | |

### Section VIII. Homebuilder/ General Contractor/ Developer Information

Homebuilder/ General Contractor/ Developer's Name:

   Mercedes Homes

Address:   667 North Wickham Road

   Melbourne, FL  32901

Phone:   ( 321 )   259  -  6972

+ Attach Copy of Construction/Renovation Contract

+ Attach Copy of New Home Warranty Declaration

### Section IX. Drywall Installer

Drywall Installer's Name:

   Residential Drywall, Inc.

Address:   P.O. Box 273924

   Tampa, FL  33688

Phone:   ( 813 )   930  -  9200

### Section X. Drywall Supplier

Drywall Supplier's Name:

   Banner Building Supply

Address: 

Phone:   (     )     -

Plaintiff Profile Form - Residential Properties

**Section XI. Verification of Plaintiff Profile Form**

I declare under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746 that all information provided in this Plaintiff Profile Form is true and correct to the best of my knowledge, and that I have supplied all of the documents requested in this declaration to the extent that such documents are in my possession, custody or control.

| | | | |
|---|---|---|---|
| Claimant's Signature | 7/19/2015<br>Date Signed | Claimant's Signature | Date Signed |
| Claimant's Signature | Date Signed | Claimant's Signature | Date Signed |
| Claimant's Signature | Date Signed | Claimant's Signature | Date Signed |

Supplemental Plaintiff Profile Form – Residential and Commercial Properties

**For Internal Use Only**
File No. _____

**Date Received:**
_____

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

In re:  Chinese Manufactured Drywall
Products Liability Litigation

This Document Relates to:

MDL NO. 2047
SECTION: L
JUDGE FALLON
MAG. JUDGE WILKINSON

*Elizabeth Bennett v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.,*  Civil Action No.: 14-cv-2722-EEF-JCW (E.D.La)

This Supplemental Plaintiff Profile Form must be completed and signed by every person making a claim in this litigation against the manufacturer of Chinese Drywall,  Knauf Plasterboard Tianjin      , using one form per Property. In completing this Supplemental Profile Form, you are under oath and must provide all information within your knowledge, custody and control that is true and correct to the best of your knowledge.  If you have already submitted a Plaintiff Profile Form, this Supplemental Plaintiff Profile Form will be in addition to and supplement the prior Profile Form submitted.  You have an affirmative obligation to search for all documents, electronically stored information, and tangible things responsive to this questionnaire.  You may and should consult with your attorney if you have any questions regarding completion of this form. If you are completing the form for someone who has died or who cannot complete the Profile Form, please answer as completely as you can for that person.

The responses contained within this Supplemental Plaintiff Profile Form are made without waiving any rights or objections as to relevance or privilege and are made without any abrogation of legal defenses, including those of the Collateral Source Doctrine.

The questions and requests for production contained within this Supplemental Profile Form are non-objectionable and shall be answered without objection. By answering this Supplemental Profile Form, you are not waiving the attorney work product and/or attorney client privileges. Similarly, by disclosing the identity of consultants, such consultants may remain non-testifying experts if provided for by applicable law, and are subject to all protections afforded by law.  Failure to fully complete this Supplemental Profile Form and provide the appropriate documents may result in a motion filed against you pursuant to Rule 37 of the Federal Rules of Civil Procedure, which could include a request for dismissal of the action in whole or in part.

All photographs produced in response to this form shall be in color.

## Section I. Claimant and Property Information

Name of Claimant: Abigail                    J    Cohen

| First Name | M.I. | Last Name | Suffix |
|---|---|---|---|
| Co-Claimant First Name (if applicable) | M.I. | Last Name | Suffix |

Business/Entity Name (if applicable)

1

Supplemental Plaintiff Profile Form – Residential and Commercial Properties

Address of Property in this Lawsuit ("Property"):

| 20305 Chestnut Grove Drive | | |
|---|---|---|
| Address 1 | | Address 2 |
| Tampa | FL | 33647 |
| City | State | Zip Code |

Is the Property residential or commercial?   Residential

Name of Person
Completing this Form:

| Abigail | J | Cohen | |
|---|---|---|---|
| First Name | M.I. | Last Name | Suffix |

Mailing Address (if different):

| | | |
|---|---|---|
| Address 1 | | Address 2 |
| | | |
| City | State | Zip Code |

Phone Number of Person Completing This Form: ( 813 ) 435 - 8897

### Section II. Purchase, Sale and/or Transfer of Ownership of a Property and Assignments of Claims

When did you acquire the Property? Month/Day/Year:  11  /  29  /  2006

When was Chinese drywall installed in the Property (to the best of your knowledge)?
Month/Day/Year: _____ / _____ /  2006

When you acquired the Property, were you aware that it contained Chinese drywall?  ☐ Yes  ☑ No

If you were not aware, at the time you acquired the Property, that the Property contained Chinese drywall, when did you first become aware that the Property contained Chinese drywall?
Month/Year:  4  /  2015

If you believe Chinese drywall was installed after you acquired the Property, when and how did you first become aware that the Property contained Chinese drywall?

If you acquired the Property knowing that the Property contained Chinese drywall, have you expressly acquired an assignment or other personal right of action that allows you to pursue a claim for damages?
☐ Yes  ☐ No

If Yes, attach a copy of the document assigning any right or claim to you.

If Yes, did you acquire the assignment with the purchase of the Property or at some later time?

Have you sold or transferred ownership of the Property since you acquired it?  ☐ Yes  ☑ No

If No, go to Section III.

If Yes, on what date did you sell or transfer ownership of the Property?

Month/Day/Year: _____ / _____ / _____

2

Supplemental Plaintiff Profile Form – Residential and Commercial Properties

If you have sold or transferred ownership of the Property, did you at the time of sale assign to anyone any right of action for damages relating to the Property?  ☐ Yes   ☐ No

If you have sold or transferred ownership of the Property, did you expressly retain a personal right of action to allow you to pursue damages?  ☐ Yes   ☐ No

If you answered Yes to either of the two prior questions, attach a copy of any documents relating to your sale or transfer of ownership of the Property and to the assignment of a right of action for damages.

### Section III.  Product Identification and Evidence Retention

Did you provide evidence of Chinese drywall in the Property to the Plaintiffs' Steering Committee to be placed in the PSC FileCloud Database?  ☑ Yes   ☐ No

If Yes, do you have any additional evidence of Chinese drywall in the Property that you have not provided to the Plaintiffs' Steering Committee?  ☐ Yes   ☑ No

If No, go to Section IV.  If Yes, **attach** all additional evidence of Chinese drywall in the Property that you have not already provided to the Plaintiffs' Steering Committee.

### Section IV. Bankruptcy, Foreclosure or Short Sale

Do you contend that you entered personal bankruptcy as a result of damage to your Property from defective Chinese Drywall?  ☐ Yes   ☑ No

If Yes, answer the following questions:

If you entered personal bankruptcy, identify the case number and docket information of the filing.

Court filed in: _____

Date of filing: _____/_____/_____
                    Month        Day            Year

Docket No.: _____

Present Status: _____

Attach your bankruptcy petition and documents filed therewith, including (1) the schedule of assets and liabilities; (2) the schedule of income and expenditures; (3) the statement of financial affairs; (4) the schedule of executory contracts and unexpired leases; (5) the list of creditors and amount and nature of claims; (6) the source, amount, and frequency of the debtor's income; (7) the list of all the debtor's property; and (8) the detailed list of the debtor's monthly living expenses.

Do you contend that a foreclosure or short sale occurred as a result of damage to your Property from defective Chinese Drywall?  ☐ Yes   ☑ No

If Yes, answer the following questions:

If the Property was the subject of a foreclosure or short sale, identify the following:

Foreclosure or Short Sale? _____

Supplemental Plaintiff Profile Form – Residential and Commercial Properties

Lender's name: _____

Loan Number: _____

Original Loan/Mortgage Amount: $_____

Date of Original Loan/Mortgage: _____/_____/_____
                                 Month   Day    Year

At the Date of Foreclosure or Short Sale,
the amount owed on the Loan/Mortgage: $_____

Date of Foreclosure or Short Sale: _____/_____/_____
                                    Month   Day    Year

Short Sale Price (if applicable): $_____

Attach all loan/mortgage documentation and documentation pertaining to the acquisition of the property.

Attach all documents relating to any foreclosure or short sale, including but not limited to any financial statements provided to the lender, a seller's hardship letter, tax returns, W-2 forms, payroll stubs, and bank statements provided to the lender, and comparative market analyses of comparable sales provided to the lender.

### Section V. Already Remediated Property

Has the Property been partially or completely remediated?  No _____

If completely or partially remediated, answer the following questions.  If No, go to Section VI.

Please identify the dates during which the remediation took place:

_____

Please identify who performed the work to remediate the property (for example: self, name of contractor, name of remediation service): _____

If the Property has been partially remediated, identify the rooms of the Property that were remediated, the current condition and status of the remediation and the amount of work remaining to be remediated:

Attach any documents supporting any work that you or others performed for remediation of the Property.

If the Property has been partially or completely remediated, what was the total cost to date for the remediation of the Property?

$_____

Attach all invoices and documents to support the total cost of remediation to date.

Supplemental Plaintiff Profile Form – Residential and Commercial Properties

Attach all invoices, purchase receipts and documents supporting the total cost or value of any appliances, fixtures or other electronics that you claim were damaged by Chinese drywall.

Attach all invoices, purchase receipts and documents supporting the total cost or value of any other movables (property or possessions, not including land or buildings) that you claim were damaged by Chinese drywall.

If the Property has been completely remediated, what was the date the remediation was completed?

Month/Year: _____/_____

Have you preserved at least two samples (of ten inches by ten inches (10" x 10") in size if possible) of every different drywall brand or marking removed from the Property?   ☐ Yes   ☐ No

If you have preserved samples, where are the samples located?

_____

Have you preserved at least one sample of each type of drywall endtape, if any, that was found during inspection, repair or removal of drywall in or from the Property?   ☐ Yes   ☐ No

If you have preserved samples, where are the samples located?

_____

Have you photographed the backside of each Chinese-manufactured drywall board removed from the Property immediately after it was removed, and have you documented on a floor plan or other similar diagram the location of each full or partial Chinese-manufactured drywall board and its photograph?
☐ Yes   ☐ No

If you have photographed and documented each Chinese-manufactured board, please attach the photograph(s) and floor plan.

Have you photographed the HVAC coil, at least one (1) plumbing component and three (3) electrical components that you allege were damaged by Chinese drywall?   ☐ Yes   ☐ No

If you have photographed these materials, please attach the photographs.

Have you photographed any other building materials, components, or other personal property for which you intend to seek recovery?   ☐ Yes   ☐ No

If you have photographed these materials, please attach the photographs.

**Section VI. Prior Payments**

Have you received any payments, including but not limited to settlement payments, payments from homebuilders, and insurance payments, related to damages you claim to have suffered caused by defective Chinese drywall in the Property or related to any other harm caused by defective Chinese drywall?   ☐ Yes   ☑ No

If Yes, identify the source(s) and state the amount of payment(s) you received?

Source: _____

Amount of payments received:  $ _____

Supplemental Plaintiff Profile Form – Residential and Commercial Properties

Source: _____

Amount of payments received:  $ _____

Source: _____

Amount of payments received:  $ _____

If you received payments from the Knauf settlement, state the percentage of the Chinese Drywall that was identified as "KPT Chinese Drywall" as described in section 1.27 of the Knauf Settlement Agreement: _____%

Attach documents reflecting the total amount you received from the source(s).

*Section VII. Other Damages*

If you incurred alternative living expenses as a result of Chinese Drywall, identify the total moving cost and/or alternative living expense you incurred.

$_____

Attach all receipts and documents supporting the total moving cost and/or alternative living expense you incurred.

If you experienced any loss of use and/or loss of enjoyment of the Property as a result of Chinese Drywall, identify the total amount of such loss.

$ 300,000.00_____

Attach all documentation to support the total amount claimed for the loss.

If you claim a diminution in value of the Property as a result of Chinese Drywall, identify the total amount of such diminution of value being claimed.

$_____

Attach all documentation to support the total amount claimed for diminution of value, including documents showing that the Property's previous value.

*Section VIII. "Under Air" Square Footage*

Has the under air square footage of the Property changed at any time since installation of the Chinese drywall?  ☐ Yes   ☑ No

If the square footage has changed, please identify the date(s) and change(s) to under air square footage, and attach all documentation that relates to each change:

Date: _____

Change: _____

Date: _____

Change: _____

Supplemental Plaintiff Profile Form – Residential and Commercial Properties

Date: _____

Change: _____

### Section IX. Verification of Supplemental Plaintiff Profile Form

I declare under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746 that I am the claimant identified in this Supplemental Plaintiff Profile Form and that all information provided in this Supplemental Plaintiff Profile Form is true and correct to the best of my knowledge, and that I have supplied all of the documents requested in this declaration to the extent that such documents are in my possession, custody or control.

I further declare under penalty of perjury under the laws of the United States of America and pursuant to 28 U.S.C. § 1746 that all information previously provided by me in my original Plaintiff Profile Form continues to be true and correct and has been updated to the best of my knowledge.

_____     04/10/2018

Claimant's signature                            Date signed

Name: ABIGAIL J COHEN

Address: 20308 CHESTNUT GROVE DR
Address 1                          Address 2

TAMPA FL 33647
City                    State      Zip Code

Phone No.: (813) 438-8897

Email: ABIGAIL_FRESIA@ICLOUD.COM

7

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br><br>SECTION: L |
| THIS DOCUMENT RELATES TO:<br><br>*Elizabeth Bennett, et al. v. Knauf Gips, KG, et al.*<br>**2:14-cv-02722-EEF-JCW** | JUDGE ELDON FALLON<br><br>MAG. JUDGE WILKINSON |

## PLAINTIFF FACT SHEET

Name of Plaintiff: ___Abigail Cohen___

Affected Property Address: ___20305 Chestnut Gove Drive, Tampa, FL  33647___

## I.  Purchase, Sale and/or Transfer of Ownership of Property

1.  On what date did you purchase the Property?

**Response:**  Plaintiff objects to this question as duplicative.  In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants.  Plaintiff has previously provided this information to defendants in the Bennett Supplemental Plaintiff Profile Form ("SPPF").  Plaintiff directs the defendants to Section II of the SPPF. Without waiving said objection, Plaintiff adopts the SPPF response again here and intends to provide the exact same date as provided in the verified SPPF as follows: Plaintiff purchased the property:

(Month/Day/Year) ___11_ / _29_ / _2006___

2.  When you took ownership of the Property, what was the name of the seller?

Mercedes Homes, Inc.

1

3.  Name and address of the realtor?

Carolyn Kocher, 4233 Poinsettia Drive, St. Petersburg, FL 33706

4.  Name and address of the closing agent?

B-D-R Title Corp., 5909 D. Hampton Oaks Parkway, Tampa, FL  33610

5.  What was the price of the home when you purchased it?  $ 427,721.00

6.  Was it an "as-is" sale?

**Response**:  Plaintiff objects to the use of "as-is" in this question as vague, ambiguous, uncertain, and unintelligible; consequently, Plaintiff cannot determine the exact nature of the information being sought.  This term is not defined and is not commonly understood with one accepted meaning; multiple inpretations are possible.  Without waiving said objection, plaintiff responds as follows:

☐ Yes   ☑ No   ☐ I'm not sure.

7.  If you sold or transferred ownership of the Property, what was the name of the purchaser?

N/A

8.  If you sold or transferred ownership of the Property, what was the name and address of the realtor?

N/A

9.  If you sold or transferred ownership of the Property, what was the name and address of closing agent?

N/A

10.  If you sold or transferred ownership of the Property, what was the price paid for home?        $ N/A

## II.  Appraisal of the Home

11.  Date of each appraisal:

a.  05 / 27 /20 06

b. _____/_____/20_____

2

**PFS REQUEST FOR DOCUMENT PRODUCTION #1:** Please produce copies of any and all appraisals performed on the house both prior and subsequent to the occurrence of any of the events allenged in the petition.

> **Response:** All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 1."

## III.   Discovery of Drywall

12.   Date that the property was constructed and/or renovated that installed the allegedly defective Chinese Drywall.

**Response:** Plaintiff objects to this question as duplicative. In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants. Plaintiff has previously provided this information to defendants in the Bennett Supplemental Plaintiff Profile Form ("SPPF"). Plaintiff directs the defendants to Section II of the SPPF. Without waiving said objection, Plaintiff adopts the SPPF response again here and intends to provide the exact same date as provided in the verified SPPF as follows: The property construction and/or renovation that installed the allegedly defective drywall occurred on or about the following date (to the best of my knowledge):

> (Month/Day/Year)          ____/____/20 06

**PFS REQUEST FOR DOCUMENT PRODUCTION #2:** Please produce all documents, reports, photographs, videotapes, samples and any other materials which evidence and/or identify that there is defective Chinese Drywall in the Property.

> **Response:** All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 2."

## IV.   Manufacturer/Seller of Drywall

13.   Who sold or distributed the drywall in the house?

**Response:** Plaintiff objects to this question as duplicative. In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants. Plaintiff has previously provided this information to defendants in the Plaintiff Profile Form ("PPF"). Plaintiff directs the defendants to Section X of the PPF. Without waiving said objection, Plaintiff adopts the PPF response again here and intends to provide the exact same information as provided in the verified PPF as follows: The drywall Supplier's name (to the best of my knowledge) is:

I don't know.

**PFS REQUEST FOR DOCUMENT PRODUCTION #3**: Please produce all documents, reports, photographs, videotapes, samples and any other materials which evidence and/or identify the manufacturer of drywall installed in the house. The submission must be in the form of PTO 1(B).

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 3."

## V.  Damages

14.  Identify any harm, financial or otherwise, that you contend was caused by defective Chinese Drywall installed in the Property.

**Response**:  Plaintiff directs the defendants to review the complaint filed with the court in this case for a full listing of the claims being asserted and the damages being sought.  The defective Knauf Chinese Drywall emitted gasses that cause damage to Plaintiff's home and the personal property contained therein.  It also significantly diminished the use and enjoyment of the home; therefore, Plaintiff seeks the following:  all compensatory, statutory, and/or punitive damages; all pre-judgment and post-judgment interest as allowed by law; any appropriate injunctive relief; an award of attorney's fees as allowed by law; an award of taxable costs; and, any and all such further relief as a jury or judge presiding over my trial deems just and proper.   Other damages include, but are not limited to:

Extensive personal property damage, additional financial burden due to failing a/c and

appliances.

15.  If you contend that you entered personal bankruptcy as a result of damage to your property from defective Chinese Drywall, please describe the facts and circumstances that relate to your claim.

N/A

16.  If you contend that you entered short sale and/or foreclosure as a result of damage to your property from defective Chinese Drywall, please describe the facts and circumstances that relate to your claim.

N/A

**PFS REQUEST FOR DOCUMENT PRODUCTION #4**: If you claim loss of income, please produce any copies of any and all documentation upon which you intend to rely upon to prove this claim.

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 4."

17.  If you claim diminution of the property as a result of Chinese Drywall, state with particularity each fact which supports your claim.

N/A _____

_____

_____

_____

18.  Identify the appliances, fixtures and/or other electronics, if any, that you claim were damaged by Chinese Drywall in the property.

> **Response**: An list of damaged items is attached as "Exhibit 14."

19.  If you vacated the property because of the alleged presence of Chinese Drywall, please provide:  Address of each location you stayed thereafter.

a. N/A _____

b. _____

c. _____

20.  If you vacated the property because of the alleged presence of Chinese Drywall, please provide:  Time periods in which you resided at each property.

a. N/A /_____/20_____   to   _____/_____/20_____

b. _____/_____/20_____   to   _____/_____/20_____

c. _____/_____/20_____   to   _____/_____/20_____

21.  If you vacated the property because of the alleged presence of Chinese Drywall, please provide:  Moving costs and/or alternative living expenses you claim to have incurred as a result of the alleged presence of Chinese Drywall.

a. $ N/A _____

b. $_____

c. $_____

**PFS REQUEST FOR DOCUMENT PRODUCTION #5:** If you vacated the property because of the alleged presence of Chinese Drywall, please provide any documentation to support your claims.

> **Response:** All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 5."

22. Are you claiming damages for personal injury? ☐ Yes (explain below) ☑ No

_____

_____

23. If you suffered personal injuries as a result of the alleged presence of Chinese Drywall: Date you allege that you first sustained personal injuries as a result of your exposure to allegedly defective Chinese Drywall.

> **Response:** ☑ N/A

24. If you suffered personal injuries as a result of the alleged presence of Chinese Drywall: What specific injuries have you suffered?

> **Response:** ☑ N/A

25. If you suffered personal injuries as a result of the alleged presence of Chinese Drywall: Name and address of any doctor, physician, surgeon, chiropractor, or osteopath who examined and/or treated your alleged injuries.

> **Response:** ☑ N/A

## VI. Potential Witnesses/Evidence

26. Has any written or recorded statement been taken from any witness or person who has knowledge of relevant facts, including the nature, character, and extent of the injuries referred to in the petition, and for each statement identified?

☐ Yes ☑ No ☐ I don't know

27. If the answer to 26 is "yes," please state: The name, address, and telephone number of the person from whom the statement was taken.

N/A

_____

_____

6

28.  If the answer to 26 is "yes," please state:  The name, address, and telephone number of the person who took the statement.

N/A

29.  If the answer to 26 is "yes," please state:  The name address, and telephone number of the party having custody of such statement.

N/A

30.  If the answer to 26 is "yes," please state:  The date the statement was taken.

N/A

## VII.  Already Remediated Properties

31.  If you already remediated the Property, who conducted the remediation?

  **Response:**   ☑ N/A

32.  When did the remediation commencement date occur?

  **Response:**   ☑ N/A

33.  When did the remediation end date occur?

  **Response:**   ☑ N/A

34.  What was the scope of the remediation and the scope of the work carried out?

  **Response:**   ☑ N/A

35.  What costs or expenses, if any, did you incur related to the remediation of the Property?

  **Response:**   ☑ N/A

36. Were any samples from the remediation retained?

    **Response**:   [✓] N/A

37. If the response to 36 is "yes," were the samples compliant with PTO 1(B)?

    **Response**:   [✓] N/A

38. Were any photographs taken of the allegedly defective Chinese Drywall?

    **Response**:   [✓] N/A

39. If the response to 38 is "yes," were the photographs compliant with PTO 1(B)?

    **Response**:   [✓] N/A

**PFS REQUEST FOR DOCUMENT PRODUCTION #6**:  Please produce the following documentation concerning the remediation of the Property:  Any evidence of KPT Chinese Drywall and Non-KPT Chinese Drywall, if any, in the Property prior to remediation.

    **Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 6."

**PFS REQUEST FOR DOCUMENT PRODUCTION #7**:  Please produce the following documentation concerning the remediation of the Property:  Interior photographs of the Affected Property immediately prior to the commencement of, and following completion of, the remediation, including photographs and/or video images of the flooring and major components such as cabinets, moldings, doors, intercom systems, and fixtures for every room and bathroom and, to the extent possible, security systems, appliances and audio such as surround sound.

** The photographs do not need to be pictures taken specifically for the litigation. For example, family photographs or photographs taken for purposes of refinancing a mortgage are acceptable in the absence of other photographs.

    **Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 7."

**PFS REQUEST FOR DOCUMENT PRODUCTION #8**:  Please produce the following documentation concerning the remediation of the Property:  The remediation contract and an itemization from the contractor who performed the remediation work of the materials used during the remediation, including, but not limited to, manufacturer, model number, and quantity.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 8."

**PFS REQUEST FOR DOCUMENT PRODUCTION #9**:   Please produce the following documentation concerning the remediation of the Property:  An itemized invoice from the contractor who performed the remediation work ("Itemized Invoice") showing the scope of work carried out.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 9."

**PFS REQUEST FOR DOCUMENT PRODUCTION #10**:   Please produce the following documentation concerning the remediation of the Property:  Proof of payment of the Itemized Invoice and any other expenses, such as cancelled checks, credit card statements, etc.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 10."

**PFS REQUEST FOR DOCUMENT PRODUCTION #11**:   Please produce the following documentation concerning the remediation of the Property:  A floor plan of the Affected Property with dimensions.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 11."

**PFS REQUEST FOR DOCUMENT PRODUCTION #12**:   Please produce the following documentation concerning the remediation of the Property:  An Environmental Certificate.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 12."

**PFS REQUEST FOR DOCUMENT PRODUCTION #13**:   Please produce the following documentation concerning the remediation of the Property:  An Owner Disclosure Affidavit in the form attached as Exhibit 1, which includes a certification that the materials provided comprise all of the available documentation regarding the following:  The drywall that was in the Affected Property prior to the commencement of the remediation; and, the scope, extent, and cost of the remediation.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 13."

9

**VERIFICATION**

I hereby verify that the responses to the Plaintiff Fact Sheet are correct to the best of my knowledge.


_____          01/24/19
Signature of Plaintiff                           _____
                                                 Date


_____
            Abigail J. Cohen
Printed Name

# Exhibit 1

**FREA**

## COVER NOTE

*INSURED: Scott R. Heinrich / Scott Appraisal Services, Inc.*

*MAILING ADDRESS:* 5909 West Palmira Avenue
Tampa, Fl 33629

*This is to certify that the undersigned has procured insurance coverage as hereafter specified from certain companies and/or underwriters.*

*EFFECTIVE: 05/27/2006*          *TERM:* 12 Months

*COVERAGE:* Professional Liability for Specified Professions

- Profession: Real Estate Appraiser
- Claims Made Form: MPL#26901 (9/87)
- Retroactive Date: 05/27/2004
- Limits: Per Occurrence: $1,000,000    Annual Aggregate: $1,000,000
- Deductible: $1,000

*CONDITIONS:*

- Real Estate Agent/ Broker Referral Indemnity
- Knowledge of Wrongful Act Exclusion
- Pending and/or Prior Litigation Exclusion
- Defense within Policy Limit
- Deductible includes Loss Adjustment Expenses

*COMPANIES PARTICIPATING:*

National Union Fire Insurance Company of Pittsburgh, PA

*ASSIGNED COVER NOTE #: Z FREA 04-5266*

*Issued at:* 4907 Morena Blvd., Suite 1415
San Diego, CA 92117

**DATE: May 1, 2006**          **BY:** S. Shiley

*Insurance, when effected shall be subject to all terms and conditions of policy (ies) which will be issued, and in the event of any inconsistency herewith, the terms and provisions of the policy prevail.*

| Borrower/Client | Cohen |
| Property Address | 20000 Chestnut Grove Blvd |
| City | Tampa |
| Lender | MHi Mortgage |

| County | Hillsborough | State | FL | Zip Code | 33647-3322 |

AC# 1764747

## STATE OF FLORIDA

DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION
FLORIDA REAL ESTATE APPRAISAL BD

SEQ# L04112901297

| DATE | BATCH NUMBER | LICENSE NBR |
| --- | --- | --- |
| 11/29/2004 | 040474794 | RD4489 |

The CERTIFIED RESIDENTIAL APPRAISER
Named below IS CERTIFIED
Under the provisions of Chapter 475 FS.
Expiration date: NOV 30, 2006

HEINRICH, SCOTT R
3909 WEST PALMIRA AVENUE
TAMPA                    FL 33629

DISPLAY AS REQUIRED BY LAW

JEB BUSH
GOVERNOR

DIANE CARR
SECRETARY

| Borrower/Client | Cohen |
| --- | --- |
| Property Address | 20305 Chestnut Grove Drive |
| City | Tampa |
| Lender | MHi Mortgage |

| County | Hillsborough | State | FL | Zip Code | 33647-3322 |
| --- | --- | --- | --- | --- | --- |





## Comparable 4

6016 Pratt Street

| | |
|---|---|
| Prox. to Subject | 4.53 miles S |
| Sale Price | 460,000 |
| Gross Living Area | 2,754 |
| Total Rooms | 8 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2.0 |
| Location | Good |
| View | Residential   } |
| Site | 12,500 sf +/-   } |
| Quality | CBS,Fr/VGood |
| Age | 19 Actual        } |

## Comparable 5

| | |
|---|---|
| Prox. to Subject | |
| Sale Price | |
| Gross Living Area | |
| Total Rooms | |
| Total Bedrooms | |
| Total Bathrooms | |
| Location | |
| View | |
| Site | |
| Quality | |
| Age | |

## Comparable 6

| | |
|---|---|
| Prox. to Subject | |
| Sale Price | |
| Gross Living Area | |
| Total Rooms | |
| Total Bedrooms | |
| Total Bathrooms | |
| Location | |
| View | |
| Site | |
| Quality | |
| Age | |



Total Bathrooms    2.5
Location           Good
View               Res/Conserv
Site               6,172 SF +/-
Quality            CBS,Fr/VGood
Age                New

## Comparable 2

8118 Camella Lane
Prox. to Subject    0.07 miles S
Sale Price          495,000
Gross Living Area   2,538
Total Rooms         8
Total Bedrooms      3
Total Bathrooms     2.0
Location            Good
View                Res/Conserv
Site                7,409 SF +/-
Quality             CBS,Fr/VGood
Age                 New



## Comparable 3

6610 Portland Oak Ct
Prox. to Subject    4.51 miles SE
Sale Price          487,500
Gross Living Area   2,875
Total Rooms         9
Total Bedrooms      4
Total Bathrooms     3.5
Location            Good
View                Res/Conserv
Site                9,078 SF +/-
Quality             CBS,Fr/VGood
Age                 New



| Borrower/Client | Cohen |
| Property Address | |
| City | Tampa |
| County | Hillsborough |
| State | FL |
| Zip Code | 33647-3322 |
| Lender | MHi Mortgage |



### Comparable 1

8251 Dunham Station Drive

| | |
|---|---|
| Prox. to Subject | 0.36 miles NE |
| Sale Price | 495,000 |
| Gross Living Area | 2,629 |
| Total Rooms | 8 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2.5 |
| Location | Good |
| View | Res/Conserv |
| Site | 6,172 SF +/- |
| Quality | CBS,Fr/VGood |
| Age | New |



### Comparable 2

8118 Camella Lane

| | |
|---|---|
| Prox. to Subject | 0.07 miles S |
| Sale Price | 495,000 |
| Gross Living Area | 2,538 |
| Total Rooms | 8 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.0 |
| Location | Good |
| View | Res/Conserv |
| Site | 7,409 SF +/- |
| Quality | CBS,Fr/VGood |
| Age | New |



### Comparable 3

6610 Portland Oak Ct

| | |
|---|---|
| Prox. to Subject | 4.51 miles SE |
| Sale Price | 487,500 |
| Gross Living Area | 2,875 |
| Total Rooms | 9 |
| Total Bedrooms | 4 |
| Total Bathrooms | 3.5 |
| Location | Good |
| View | Res/Conserv |
| Site | 9,078 SF +/- |
| Quality | CBS,Fr/VGood |
| Age | New |

| Borrower/Client | Cohen | | | | |
| Property Address | 20305 Chestnut Grove Drive | | | | |
| City | Tampa | County | Hillsborough | State FL | Zip Code 33647-3322 |
| Lender | MHi Mortgage | | | | |

Case 2:09-md-02047-EEF-MBN   Document 22435-2   Filed 12/23/19   Page 28 of 62



### Subject View

| | |
|---|---|
| 20305 Chestnut Grove Drive | |
| Sales Price | 452,721 |
| Gross Living Area | 2,502 |
| Total Rooms | 8 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.5 |
| Location | Good |
| View | Res/Conserv |
| Site | 6,000 Sq.Ft. |
| Quality | CBS,Fr/VGood |
| Age | New |



### Subject Interior



### Subject Interior



Location          Code
View              Res/Conserv
                  Res
Quality           CBS,Fr/VGood
Age               New



**Subject Interior**



**Subject Interior**



Location       Good
View           Res/Conserv
               300 Sqft
Quality        CBS,Fr/VGood
Age            New

**Subject Rear**



**Subject Street**





### Subject Front

| | |
|---|---|
| 20305 Chestnut Grove Drive | |
| Sales Price | 452,721 |
| Gross Living Area | 2,502 |
| Total Rooms | 8 |
| Total Bedrooms | 3 |
| Total Bathrooms | 2.5 |
| Location | Good |
| View | Res/Conserv |
| Site | 6,000 Sq.Ft. |
| Quality | CBS,Fr/VGood |
| Age | New |



### Subject Rear



### Subject Street



FIRST FLOOR

Sketch by Apex IV™

Comments: **FIRST FLOOR**

| AREA CALCULATIONS SUMMARY | | | |
|---|---|---|---|
| Code | Description | Size | Net Totals |
| GLA1 | First Floor | 1754.00 | 1754.00 |
| GLA2 | Second Floor | 748.00 | 748.00 |
| P/P | Lanai | 150.00 | |
| | Entry Porch | 120.00 | 270.00 |
| GAR | Attached Garage | 400.00 | 400.00 |
| TOTAL LIVABLE | (rounded) | | 2502 |

| LIVING AREA BREAKDOWN | | |
|---|---|---|
| Breakdown | | Subtotals |
| First Floor | | |
| 6.0 x | 62.0 | 372.00 |
| 14.0 x | 24.0 | 336.00 |
| 14.0 x | 19.0 | 266.00 |
| 20.0 x | 39.0 | 780.00 |
| Second Floor | | |
| 11.0 x | 40.0 | 440.00 |
| 4.0 x | 12.0 | 48.00 |
| 13.0 x | 20.0 | 260.00 |
| 7 Calculations Total (rounded) | | 2502 |

| FEATURE | SUBJECT | COMPARABLE SALE #4 | | COMPARABLE SALE #5 | | COMPARABLE SALE #6 | |
|---|---|---|---|---|---|---|---|
| Address | 20305 Chestnut Grove Drive | 6016 Pratt Street | | | | | |
| | Grand Hampton | Tampa Palms | | | | | |
| Proximity to Subject | | 4.53 miles S | | | | | |
| Sale Price | $ 452,721 | | $ 460,000 | | $ | | $ |
| Sale Price/Gross Liv. Area | $ 180.94 sq.ft. | $ 167.03 sq.ft. | | $ sq.ft. | | $ sq.ft. | |
| Data Source(s) | | Exterior Inspection | | | | | |
| Verification Source(s) | | Pub Recs/MLS | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | Conventional | | | | | |
| Concessions | | None Noted | | | | | |
| Date of Sale/Time | | 4/2006 | | | | | |
| Location | Good | Good | | | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | | | | |
| Site | 6,000 Sq.Ft. | 12,500 sf +/-  } | | | | | |
| View | Res/Conserv | Residential  } | | | | | |
| Design (Style) | Two Story | Contemp | | | | | |
| Quality of Construction | CBS,Fr/VGood | CBS,Fr/VGood | | | | | |
| Actual Age | New | 19 Actual  } | | | | | |
| Condition | New | Good/Updated} | +10,000 | | | | |
| Above Grade | Total | Bdrms. | Baths | Total | Bdrms. | Baths | | Total | Bdrms. | Baths | | Total | Bdrms. | Baths | |
| Room Count | 8 | 3 | 2.5 | 8 | 4 | 2.0 | +3,000 | | | | |
| Gross Living Area | 2,502 sq.ft. | 2,754 sq.ft. | -10,100 | sq.ft. | 0 | sq.ft. | 0 |
| Basement & Finished | N/A | None | | | | | |
| Rooms Below Grade | None | None | | | | | |
| Functional Utility | Adequate | Adequate | | | | | |
| Heating/Cooling | Central | Central | | | | | |
| Energy Efficient Items | Typical | Typical | | | | | |
| Garage/Carport | 2 Car Garage | 2 Car Garage | | | | | |
| Porch/Patio/Deck | Entry, Lanai | Entry, Lanai | | | | | |
| Pool, FP, Etc. | None | None | | | | | |
| Upgrades | Upgrades | Comparable | | | | | |
| | | | | | | | |
| Net Adjustment (Total) | | ☒ + ☐ - | $ 2,900 | ☐ + ☐ - | $ | ☐ + ☐ - | $ |
| Adjusted Sale Price | | Net Adj. 0.6 % | | Net Adj. % | | Net Adj. % | |
| of Comparables | | Gross Adj. 5.0 % | $ 462,900 | Gross Adj. % | $ | Gross Adj. % | $ |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #4 | COMPARABLE SALE #5 | COMPARABLE SALE #6 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | No qualified prior sales | No qualified prior sales | | |
| Price of Prior Sale/Transfer | recorded within past 3 years | recorded within past year | | |
| Data Source(s) | Public Records | Public Records | | |
| Effective Date of Data Source(s) | Current | Current | | |

Analysis of prior sale or transfer history of the subject property and comparable sales

Analysis/Comments

comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no

reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory

Freddie Mac Form 70 March 2005

Page 1 of 6

Fannie Mae Form 1004 March 2005

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

File No. HI14042  Page #4

# Uniform Residential Appraisal Report

File # HI14042

There are **7** comparable properties currently offered for sale in the subject neighborhood ranging in price from $ **420,000** to $ **525,000** .

There are **12** comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ **360,000** to $ **500,000** .

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 20305 Chestnut Grove Drive | 8251 Dunham Station Drive | | 8118 Camella Lane | | 6610 Portland Oak Ct | |
| | Grand Hampton | Grand Hampton | | Grand Hampton | | Buckingham @ Tampa Palms | |
| Proximity to Subject | | 0.36 miles NE | | 0.07 miles S | | 4.51 miles SE | |
| Sale Price | $         452,721 | | $       495,000 | | $     495,000 | | $     487,500 |
| Sale Price/Gross Liv. Area | $    180.94 sq.ft. | $    188.28 sq.ft. | | $    195.04 sq.ft. | | $    169.57 sq.ft. | |
| Data Source(s) | | Exterior Inspection | | Exterior Inspection | | Exterior Inspection | |
| Verification Source(s) | | Pub Recs/MLS/Builder | | Pub Recs/App's File/MLS/Realtor | | Public Records/MLS/Realtor | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing | | Conventional | | Conventional | | Conventional | |
| Concessions | | None Noted | | None Noted | | None Noted | |
| Date of Sale/Time | | 6/2006 | | 5/2006 | | 6/2006 | |
| Location | Good | Good | | Good | | Good | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 6,000 Sq.Ft. | 6,172 SF +/- | | 7,409 SF +/- | | 9,078 SF +/- | -5,000 |
| View | Res/Conserv | Res/Conserv | | Res/Conserv | | Res/Conserv | |
| Design (Style) | Two Story | Two Story | | Two Story | | Two Story | |
| Quality of Construction | CBS,Fr/VGood | CBS,Fr/VGood | | CBS,Fr/VGood | | CBS,Fr/VGood | |
| Actual Age | New | New | | New | | New | |
| Condition | New | New | | New | | New | |
| Above Grade | Total | Bdrms. | Baths | Total | Bdrms. | Baths | Total | Bdrms. | Baths | Total | Bdrms. | Baths |
| Room Count | 8 | 3 | 2.5 | 8 | 4 | 2.5 | | 8 | 3 | 2.0 | +3,000 | 9 | 4 | 3.5 | -6,000 |
| Gross Living Area | 2,502 sq.ft. | 2,629 sq.ft. | -5,100 | 2,538 sq.ft. | | 2,875 sq.ft. | -14,900 |
| Basement & Finished | N/A | None | | None | | None | |
| Rooms Below Grade | None | None | | None | | None | |
| Functional Utility | Adequate | Adequate | | Adequate | | Adequate | |
| Heating/Cooling | Central | Central | | Central | | Central | |
| Energy Efficient Items | Typical | Typical | | Typical | | Typical | |
| Garage/Carport | 2 Car Garage | 2 Car Garage | | 2 Car Garage | | 3 Car Garage | -5,000 |
| Porch/Patio/Deck | Entry, Lanai | Ent,Por,Bal,Pat | -15,000 | Entry, Lanai | | Entry, Lanai | |
| Pool, FP, Etc. | None | None | | Cg Pool | -30,000 | None | |
| Upgrades | Upgrades | Comparable | | Comparable | | Comparable | |
| Net Adjustment (Total) | | ☐ + ☒ - | $        -20,100 | ☐ + ☒ - | $       -27,000 | ☐ + ☒ - | $      -30,900 |
| Adjusted Sale Price | | Net Adj.      4.1 % | | Net Adj.     5.5 % | | Net Adj.     6.3 % | |
| of Comparables | | Gross Adj.   4.1 % | $   474,900 | Gross Adj.  6.7 % | $   468,000 | Gross Adj.  6.3 % | $   456,600 |

I ☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s)   Public Records/MLS

My research ☒ did ☐ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s)   Public Records/MLS

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | No qualified prior sales | 8/2005 | 1/2006 | No qualified prior sales |
| Price of Prior Sale/Transfer | recorded within past 3 years | $359,000 | $369,500 | recorded within past year |
| Data Source(s) | Public Records | Public Records | Public Records | Public Records |
| Effective Date of Data Source(s) | Current | Current | Current | Current |

Analysis of prior sale or transfer history of the subject property and comparable sales   No qualified prior sales were recorded in public records for the subject,
Comparable 3, or Comparable 4. Comparables 1 & 2 transferred previously as

# Uniform Residential Appraisal Report

File # HI14042

The purpose of this [Case 2:09-md-02047-EEF-MBN Document 22435-2 Filed 12/23/19 Page 40 of 62] market value of the subject property.

## SUBJECT

| | |
|---|---|
| Property Address | 20305 Chestnut Grove Drive City Tampa State FL Zip Code 33647-3322 |
| Borrower Cohen | Owner of Public Record Mercedes Homes Inc County Hillsborough |
| Legal Description | Grand Hampton Phase 1C-1/2A-1 Lot 52 Block 15 |
| Assessor's Parcel # | A-02-27-19-763-000015-000520 Tax Year 2005 R.E. Taxes $ TBD |
| Neighborhood Name | Bellevue @ Grand Hampton Map Reference S02-T27-R19 Census Tract 102.06 |
| Occupant ☐ Owner ☐ Tenant ☒ Vacant | Special Assessments $ 1,933.00 CDD Fee ☒ PUD HOA $ 163.92 ☐ per year ☒ per month |
| Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe) | |
| Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe) New Construction | |
| Lender/Client MHi Mortgage | Address 5909-F Hampton Oaks Parkway, Tampa, FL 33610 |

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? ☒ Yes ☐ No

Report data source(s) used, offering price(s), and date(s). There is an agreement for sale of the subject as new construction by Mercedes Homes with the borrower for $452,721 (including land).

I ☒ did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed. Upon review of the contract for sale of the subject property, it appears the sale is an arm's length transaction with no personal property included.

## CONTRACT

Contract Price $ 452,721 Date of Contract Pending Is the property seller the owner of public record? ☒ Yes ☐ No Data Source(s) Contract/Pub Recs

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? ☒ Yes ☐ No

If Yes, report the total dollar amount and describe the items to be paid. $13,582 Figure reflects closing cost assistance.

## NEIGHBORHOOD

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | One-Unit Housing Trends | One-Unit Housing | Present Land Use % |
|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | Property Values ☐ Increasing ☒ Stable ☐ Declining | PRICE $ (000) | One-Unit 65 % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | AGE (yrs) | 2-4 Unit % |
| Growth ☐ Rapid ☒ Stable ☐ Slow | Marketing Time ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | 150 Low New | Multi-Family % |
| Neighborhood Boundaries The subject is located just south of County Line Road, approximately 1.5 miles | | 800 High 20 | Commercial 5 % |
| west of Bruce B. Downs Boulevard. The area is residential in nature. | | 400-500 Pred. 1-10 | Other 30 % |

Neighborhood Description The subject is located in the developing gated/guarded planned community of Grand Hampton. Location is reasonably convenient to employment centers, schools, shopping, and normal community amenities. Police and fire protection are adequate. No apparent adverse factors are noted.

Market Conditions (including support for the above conclusions) General market conditions within the subject neighborhood appear to be normal. Special loan discounts, unusual interest buydowns, and other special concessions are not known to be prevalent. Supply and demand appear to be in balance. Typical marketing time is 90 to 180 days.

## SITE

| | |
|---|---|
| Dimensions 50 x 120 | Area 6,000 Sq.Ft. Shape Mostly Rectangular View Res/Conserv |
| Specific Zoning Classification PD-A | Zoning Description Planned Development |
| Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe) | |

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? ☒ Yes ☐ No If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements – Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street Asphalt Street | ☒ | |
| Gas | | | Sanitary Sewer | ☒ | | Alley None | | |

FEMA Special Flood Hazard Area ☐ Yes ☒ No FEMA Flood Zone A4 FEMA Map # 1201120070E FEMA Map Date 8/15/1989

Are the utilities and off-site improvements typical for the market area? ☒ Yes ☐ No If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? ☐ Yes ☒ No If Yes, describe

No readily observable adverse site conditions or external factors noted. Site and flood data taken from public records and subject to current survey.

## IMPROVEMENTS

| General Description | Foundation | Exterior Description materials/condition | Interior materials/condition |
|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | ☒ Concrete Slab ☐ Crawl Space | Foundation Walls N/A | Floors Carp,Tile/Good |
| # of Stories 2 | ☐ Full Basement ☐ Partial Basement | Exterior Walls CBS,Frame/Good | Walls Drywall/Good |
| Type ☒ Det. ☐ Att. ☐ S-Det./End Unit | Basement Area N/A sq.ft. | Roof Surface Conc Tile/Good | Trim/Finish Wood/Good |
| ☒ Existing ☐ Proposed ☐ Under Const. | Basement Finish N/A % | Gutters & Downspouts Aluminum/Good | Bath Floor CTile/Good |
| Design (Style) Two Story | ☐ Outside Entry/Exit ☐ Sump Pump | Window Type SH-Alum/Good | Bath Wainscot CTile/Good |
| Year Built 2005-6 | Evidence of ☐ Infestation N/A | Storm Sash/Insulated None | Car Storage ☐ None |
| Effective Age (Yrs) New | ☐ Dampness ☐ Settlement | Screens Screens/Good | ☒ Driveway # of Cars 2 Car |
| Attic ☐ None | Heating ☒ FWA ☐ HWBB ☐ Radiant | Amenities ☐ Woodstove(s) # | Driveway Surface Concrete |
| ☒ Drop Stair ☐ Stairs | ☐ Other Fuel Electric | ☐ Fireplace(s) # ☐ Fence | ☒ Garage # of Cars 2 Car |
| ☐ Floor ☐ Scuttle | Cooling ☒ Central Air Conditioning | ☒ Patio/Deck Brick ☒ Porch Entry,Lan | ☐ Carport # of Cars |
| ☐ Finished ☐ Heated | ☐ Individual ☐ Other | ☐ Pool ☐ Other | ☐ Att. ☐ Det. ☒ Built-in |

Appliances ☐P Refrigerator ☒ Range/Oven ☒ Dishwasher ☒ Disposal ☒ Microwave ☐ Washer/Dryer ☐ Other (describe)

Finished area above grade contains: 8 Rooms 3 Bedrooms 2.5 Bath(s) 2,502 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.). Covered entry, large lanai, french doors, solid surface kitchen counter tops, upgraded wall tile, upgraded cabinets, recessed lighting, volume ceilings, security system, sprinkler system

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.). Subject is recently completed new construction. Physical depreciation does not apply. No external obsolescence noted. Floor plan appears functional from inspection. The subject is of very good quality construction.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? ☐ Yes ☒ No If Yes, describe

Appraiser is not qualified to properly address issues of soundness or structural integrity. If borrower wants a professional determination of

| SUBJECT INFORMATION | | |
|---|---|---|
| | Subject Address | 20305 Chestnut Grove Drive |
| | Legal Description | Grand Hampton Phase 1C-1/2A-1 Lot 52 Block 15 |
| | City | Tampa |
| | County | Hillsborough |
| | State | FL |
| | Zip Code | 33647-3322 |
| | Census Tract | 102.06 |
| | Map Reference | S02-T27-R19 |

| SALES PRICE | | |
|---|---|---|
| | Sale Price | $ 452,721 |
| | Date of Sale | Pending |

| CLIENT | | |
|---|---|---|
| | Borrower/Client | Cohen |
| | Lender | MHi Mortgage |

| DESCRIPTION OF IMPROVEMENTS | | |
|---|---|---|
| | Size (Square Feet) | 2,502 |
| | Price per Square Foot | $ 180.94 |
| | Location | Good |
| | Age | New |
| | Condition | New |
| | Total Rooms | 8 |
| | Bedrooms | 3 |
| | Baths | 2.5 |

| APPRAISER | | |
|---|---|---|
| | Appraiser | Scott Heinrich |
| | Date of Appraised Value | November 21, 2006 |

| VALUE | | |
|---|---|---|
| | Final Estimate of Value | $ 467,000 |

# Exhibit 2

# Exhibit 3



**Drywall Science, LLC**

**7600 Alico Road**
**Suite 1, Box 1221**
**Fort Myers, FL 33912**
**(239) 989-8519**
www.drywallscience.com

## DRYWALL INSPECTION REPORT

This report summarizes testing of drywall and possible related conditions
for the residence at: 20305 Chestnut Grove Dr.,  Tampa, Florida

Date of test:     4/27/2015
Tracking:         042715-01

### Step 1 - ODORS

Does the home or certain rooms have either a sulfur-like odor or other unusual odors? Defective drywall apparently causes a chemical reaction that gives off a rotten-egg stench, which grows worse with heat and humidity.

**There was a sulfur-like smell in THE RESIDENCE**

### Step 2 – CHARCOAL OR BLACK CORROSION OF COPPER FREON LINES

Look to see if the compressed Freon line into the air handler has a black appearance, due to sulfur corrosion. Blackening copper corrosion is typically caused by exposure to corrosive gases. Blackening copper corrosion is typically caused by exposure to corrosive gases.

Normal Tubing                                                    Residence Tubing






**There was  excessive corrosion or blackening on HVAC copper lines. Copper coils replaced several times. Coils now aluminum.**

### Step 3 – BLACKENED CORRODED WIRING
Inspect electrical wiring for distinctive corrosion.

Normal Wiring                                                    Residence Wiring




**There was visible excessive corrosion or blackening on inspected Copper wiring and other metal building components (photos below**

**Step 4 - SCIENTIFIC ANALYTICAL TESTING**

X-Ray fluorescence (XRF) is utilized to determine levels of Strontium (Sr).

The EH&E study also found that by using hand-held x-ray fluorescence (XRF) and Fourier Transform Infrared (FTIR) instruments, they were able to detect markers that could identify Chinese-made dry wall at a sheet-by-sheet level.

USCPSC Press Statement 23 November 2009

Steps 1-3 above are possible results of gases emitted by defective drywall. These gases are reported to include carbon disulfide, carbonyl sulfide, hydrogen sulfide, and mercaptan.  It has recently been reported (4-09) that strontium sulfide or strontium sulfate may be a contaminant contributing to defective drywall.

Strontium is a chemical element with the symbol Sr and the atomic number 38. An alkaline earth metal, strontium is a soft silver-white or yellowish metallic element that is highly reactive chemically. The metal turns yellow when exposed to air. It occurs naturally in the minerals clestine and strontianite. The 90 Sr isotope is present in radioactive fallout and has a half-life of 28.90 years. Both strontium and strontianite are named after Strontian, a village in Scotland near which the mineral was first discovered.

<u>Characteristics</u>

Due to its extreme reactivity with oxygen and water, this element occurs naturally only in compounds with other elements, as in the minerals strontianite and celestite.

Strontium is a grey/silvery metal that is softer than calcium and even more reactive in water, with which strontium reacts on contact to produce strontium hydroxide and hydrogen gas. It burns in air to produce both strontium oxide and strontium nitride, but since it does not react with nitrogen below 380°C it will only form the oxide spontaneously at room temperature. It should be kept under kerosene to prevent oxidation; freshly exposed strontium metal rapidly turns a yellowish color with the formation of the oxide. Finely powdered strontium metal will ignite spontaneously in air at room temperature. Volatile strontium salts impart a crimson color to flames, and these salts are used in pyrotechnics and in the production of flares. Natural strontium is a mixture of four radiostable isotopes.

<u>Sr Conclusions and Summary</u>

The federal government does not regulate the chemical ingredients of imported drywall.

However, testing of drywall manufactured in the USA and imported drywall from China using XRF has shown the imported drywall has consistently higher levels of Strontium.

"The initial analysis shows the presence of strontium at 2570ppm and 2670ppm in the Chinese drywall samples, whereas strontium was detected in the US-manufactured drywall at 244ppm to 1130ppm."

EPA report 7 May 2009

" These statistical findings are consistent with the previous EPA studies of different drywall samples that showed elevated levels of Strontium and Sulfur in Chinese drywall."

USCPSC study 28 October 2009

**Figure 1** below shows the levels of Sr in drywall analyzed from various USA manufacturers (USA 1-7) and from China imports (Import 1-4).

**Figure 2** shows XRF measurements from various locations in the residence; therefore a direct comparisome can be made.

Baseline ppm Sr

| | | |
|---|---|---|
| Test 1: | 1228 | USA 1 |
| Test 2: | 228 | USA 2 |
| Test 3: | 1150 | USA 3 |
| Test 4: | 298 | USA 4 |
| Test 5: | 271 | USA 5 |
| Test 6: | 1276 | USA 6 |
| Test 7: | 449 | USA 7 |
| Test 8: | 4888 | Import 1 |
| Test 9: | 3700 | Import 2 |
| Test 10: | 2090 | Import 3 |
| Test 11: | 2885 | Import 4 |



Figure 1

Residence ppm Sr

| | | |
|---|---|---|
| Test 1: | 2201 | Garage |
| Test 2: | 2616 | Kitchen |
| Test 3: | 2502 | Dining |
| Test 4: | 2417 | Living |
| Test 5: | 2021 | Den |
| Test 6: | 2127 | Bath |
| Test 7: | 2400 | MBR |
| Test 8: | 2326 | MBR clos |
| Test 9: | 2427 | MBR ba |
| Test 10: | 2501 | Stairs |
| Test 11: | 2320 | Bath |
| Test 12: | 2401 | BRM1 |
| Test 13: | 2426 | BRM2 |
| Test 14: | 2016 | Laundry |
| Test 15: | 2126 | Bonus |
| Test 16: | 2208 | Ceilings |
| Test 17: | | |



Figure 2

* The test locations were randomly selected from each respective room.  The stated results may not be necessarily indicative of all the drywall in the respective room. * ceilings one piece

**Conclusion: The levels of Sr throughout the residence were consistent with those found in Chinese drywall. There was excessive corrosion or blackening on the HVAC copper lines and excessive blackening on ground wires. KPT (Knauf Tainjin) Chinese drywall confirmed in the residence (see photos below).**

**A sample was not taken from the residence and sent to a laboratory for further testing.**
**** Samples with high levels of Sr may be sent to independent laboratories for further analysis***

**Tainted Drywall History**

At the height of the U.S. housing boom, when building materials were in short supply, American construction companies used millions of pounds of Chinese-made drywall because it was abundant and cheap.

Now that decision is haunting hundreds of homeowners and apartment dwellers who are concerned that the wallboard gives off fumes that can corrode copper pipes, blacken jewelry and silverware, and possibly sicken people.

Shipping records indicate that imports of potentially tainted Chinese building materials exceeded 500 million pounds during a four-year period of soaring home prices. The drywall may have been used in more than 100,000 homes, according to some estimates, including houses rebuilt after Hurricane Katrina.

The drywall apparently causes a chemical reaction that gives off a rotten-egg stench, which grows worse with heat and humidity. The Chinese drywall is also made with a coal byproduct called fly ash that is less refined than the form used by U.S. drywall makers.

Dozens of homeowners in the Southeast have sued builders, suppliers and manufacturers, claiming the very walls around them are emitting smelly sulfur compounds that are potentially poisoning their families and rendering their homes uninhabitable.

Builders have filed their own lawsuits against suppliers and manufacturers, claiming they unknowingly used the bad building materials.

The Consumer Product Safety Commission is investigating, as are health departments in Virginia, Louisiana, North Carolina, Florida, and Washington State.

Companies that produced some of the wallboard said they are looking into the complaints, but downplayed the possibility of health risks.

Federal authorities say they are investigating just how much of the wallboard was imported. Shipping records  show that more than 540 million pounds of plasterboard — which includes both drywall and ceiling tile panels — was imported from China between 2004 and 2008, although it's unclear whether all of that material was problematic or only certain batches.

Most of it came into the country in 2006, following a series of Gulf Coast hurricanes and a domestic shortage brought on by the national housing boom.

The Chinese board was also cheaper. One homeowner was quoted saved $1,000 by building his house with it instead of a domestic product.

In 2006, enough wallboard was imported from China to build some 100,000 homes of roughly 2,000 square feet each, according to the shipping records and estimates supplied by the nationwide drywall supplier United States Gypsum.

Experts and advocates say many homes may have been built with a mixture of Chinese and domestic drywall, potentially raising the number of affected homes much higher.

So far, the problem appears to be concentrated in the Southeast, which blossomed with new construction during the housing boom and where the damp climate appears to cause the gypsum in the building material to degrade more quickly. In Florida alone, more than 35,000 homes may contain the product, experts said.

In Louisiana, the state health department has received complaints from at least 350 people in just a few weeks. Many of the affected homeowners rebuilt after Hurricane Katrina only to face the prospect of tearing down their houses and rebuilding again.

The drywall furor is the latest in a series of scares over potentially toxic imports from China. In 2007, Chinese authorities ratcheted up inspections and tightened restrictions on exports after manufacturers were found to have exported tainted cough syrup, a toxic pet food ingredient and toys decorated with lead paint.

Scientists hope to understand the problem by studying the chemicals in the board. Drywall consists of wide, flat boards used to cover walls.

It is often made from gypsum, a common mineral that can be mined or manufactured from the byproducts of coal-fired power plants.

**US Product Safety Commission Recommendations to Affected Homeowners**

To date, CPSC has received more than 2000 reports from 32 states, the District of Columbia and Puerto Rico from consumers and homeowners concerned about problem drywall in their homes.

Homeowners who believe they may have problem drywall should immediately report to CPSC by calling 800-638-2772 or logging on to www.CPSC.gov Hearing- or speech challenged individuals may access the phone number through TTY by calling the toll-free Federal Relay Service at 800-877-8339.

Federal and state health experts suggest these steps to improve indoor air quality and to reduce exposure to substances that can cause health concerns:

o  Open windows as much as possible to let in fresh air.
o  Keep the temperature inside homes at the lowest comfortable setting.
o  Run the air conditioner or dehumidifier.
o  Also, spend as much time outdoors in fresh air as possible.
o  Do not smoke, and especially do not smoke indoors. Cigarette smoke contains, among other contaminants, formaldehyde.

To read the technical research reports or for more information, log on to www.DrywallResponse.gov.











Thank you for your business!

# Exhibit 4

# Exhibit 5

# Exhibit 6

# Exhibit 7

# Exhibit 8

# Exhibit 9

# Exhibit 10

# Exhibit 11

# Exhibit 12

# Exhibit 13

# Exhibit 14

# Plaintiff Fact Sheet

Plaintiff: ___Abigail J. Cohen_____

Property Address: _____20305 Chestnut Grove Dr, Tampa FL 33647_____

## Question #18 Itemization (Personal Property Damage)

| # | Description of Damaged Item | Value ($) |
|---|---|---|
| 1 | Flat-Screen TV | $3,000 |
| 2 | Flat-Screen TV (#2) | $3,000 |
| 3 | Refrigerator | $3,000 |
| 4 | Washer | $1,500 |
| 5 | Dryer | $1,500 |
| 6 | Microwave | $250 |
| 7 | Stove-top | $500 |
| 8 | Air-Conditioning Coils | $1,200 |
| 9 | Electrical Switches | $100 |
| 10 | Smoke Alarms | $50 |
| 11 | Bathroom Fixtures | $100 |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |

| 17 | | |
|----|--|--|
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |
| 29 | | |
| 30 | | |
| 31 | | |
| 32 | | |
| 33 | | |
| 34 | | |
| 35 | | |

Total:  $  14,200