UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:  CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL 2047 <br><br> SECTION "L" |
| This document relates to: <br><br> *Elizabeth Bennett, et al v. Gebr. Knauf Verwaltungsgesellschaft, KG, et al* <br><br> Case No. 14:cv-2722 | JUDGE ELDON FALLON <br><br> MAGISTRATE JOSEPH WILKINSON, JR. |

**MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
ON CLAIMS ASSERTED BY CARLOS SALABARRIA**

**MAY IT PLEASE THE COURT:**

Defendant, Knauf Gips KG and Knauf Plasterboard (Tianjin) Co., Ltd. (the "Knauf Defendants"), through undersigned counsel, respectfully submit this Memorandum in Support of its Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as to the claims asserted by Carlos Salabarria against them in Plaintiffs' Fifth Amended Class Action Complaint (the "Fifth Amended Complaint").

**I.      Factual and Procedural Background**

      **A.      *MDL 2047 and the Bennett Complaint***

From 2004 through 2006, a housing boom in parts of the United States and rebuilding efforts necessitated by Hurricanes Rita and Katrina in the Gulf South led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used to construct and refurbish homes in coastal areas of the country,

notably the Gulf and East Coasts. Sometimes after the Chinese drywall was installed, homeowners began to complain of foul-smelling odors, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829–30 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014). Many of these homeowners also began to complain of various physical afflictions believed to have been caused by the Chinese drywall.

These homeowners then began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. Because of the commonality of facts in the various cases, this litigation was designated as a multidistrict litigation. Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation ("JPML") on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 09-2047 before this Court. On June 16, 2009, this Court entered PTO 1 regarding preservation of evidence, amongst other things. On October 9, 2009, this Court entered PTO 1(B) regarding preservation of evidence. On January 24, 2012, this Court entered PTO 1(I) regarding preservation of evidence.

Since the inception of MDL 2047 in June of 2009, numerous cases have been consolidated, containing thousands of claims; over 20,000 records docs have been entered into the record, millions of documents exchanged in discovery, dozens of depositions, and over 30 Pretrial Orders have been issued; the Court has appointed steering committees and liaison counsel for plaintiffs, homebuilders, insurers, installers, and manufacturers; it has presided over monthly status conferences, hearings, and several bellwether trials.[1]

---

[1] *See* Order, R. Doc. No. 16570, pp. 3-4.

**B.**     *The Bennett Complaint and Plaintiff*

The original Bennett Complaint was filed on November 13, 2014 in the Northern District of Alabama and was subsequently transferred and consolidated into MDL 2047. The Complaint was amended multiple times to amend the parties and claims, and certain plaintiffs later intervened. The Fifth Amended Complaint is the operative complaint in this matter.

Carlos Salabarria is a plaintiff in the operative Fifth Amended Complaint and has made claims against Knauf Gips KG and KPT regarding the alleged presence of defective Chinese drywall installed in their property located at 12940 SW 135th Street, Miami, FL (the "Property"). In conducting discovery in this MDL and in Bennett matter, this Court approved a Plaintiff Profile Form, Supplemental Plaintiff Profile Form, Owner Disclosure Affidavit, and Plaintiff Fact Sheet to be completed by Plaintiffs and set forth full and complete answers regarding the claims and damage amounts sought by all Bennett Plaintiffs.  Carlos Salabarria completed and submitted a PPF, SPPF, PFS.  The documents were completed under penalty of perjury. See Exhibit A. Salabarria was deposed on November 18, 2019 and had twenty-one (21) days to supplement documents.

Plaintiff bought the Property in 2015. (Exhibit A: Plaintiff Submissions); (Exhibit B: Transcript at 20-29).    Prior to the purchase, Plaintiff was aware of the issue of defective Chinese drywall in south Florida.   Plaintiff viewed the Property one time and then put in an offer to purchase the Property "as-is." Plaintiff was aware at the time of the sale the Property was built in 2007.   However, having been aware of the nature of Chinese drywall, and the fact the Property was built in 2007, Plaintiff did not conduct any inspection prior to purchase and did not receive and/or produce any property disclosures. (Exhibit A: Plaintiff Submissions); (Exhibit B: Transcript at 20-29).  Plaintiff knew Chinese drywall had a corrosive impact on Properties and still purchased

the Property "as-is" without investigating further. (Exhibit A: Plaintiff Submissions); (Exhibit B: Transcript at 20-29).

In part, Carlos Salabarria asserted claims for personal property. Salabarria failed to provide documents and competent evidence to support his claims for personal property and discarded items he alleges were damaged due to Chinese drywall in violation of this Court's pretrial orders. (Exhibit A: Plaintiff Submissions); (Exhibit B: Transcript at 43-52).

## II. Law & Argument

### A. Legal Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is required if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] "A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3]

When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial.[4] However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[5]

On a motion for summary judgment, "[a]lthough 'the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor,' summary judgment remains

---

[2] FED. R. CIV. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").
[3] *Bennett v. Hartford Ins. Co. of Midwest*, 890 F.3d 597, 604 (5th Cir. 2018) (quoting *Johnson v. World All. Fin. Corp.*, 830 F.3d 192, 195 (5th Cir. 2016) (internal quotation marks omitted)).
[4] *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2558, 91 L.Ed.2d 265 (1986).
[5] *Id.* at 322; *see also Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir. 1993).

appropriate if the non-movant's evidence is 'merely colorable' or 'not significantly probative.'"[6] "Only when 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party' is a full trial on the merits warranted."[7] Furthermore, "[d]iscovery is not a prerequisite to the disposition of a motion for summary judgment."[8] "If it appears that further discovery will not provide evidence creating a genuine issue of material fact, the district court may grant summary judgment."[9]

### B. *Plaintiff Assumed the Risk of Chinese Drywall by knowingly and voluntarily purchasing the Property "As-Is" under the circumstances.*

In *Blackburn v. Dorta*, 348 So.2d 287 (Fla.1977), the Florida Supreme Court discussed the doctrine of assumption of risk at length, in an attempt to unravel this "enigma wrapped in a mystery." *Id*. at 290 (internal quotation omitted). First, the court addressed "primary assumption of risk," and explained that this term "is simply another means of stating that the defendant was not negligent, either because he owed no duty to the plaintiff in the first instance, or because he did not breach the duty owed." *Id*. at 290. For example, "[i]t can be said that a passenger assumes the risk of lurches and jerks which are ordinary and usual to the proper operation of the train, but that he does not assume the risk of extraordinary or unusual lurches and jerks resulting from substandard operation of the train." *Id*. at 291. Although articulated in terms of assuming the risk, this concept is more appropriately framed in terms of the standard of care, i.e.

---

[6] *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.,* 892 F.3d 167, 170 (5th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)).
[7] *Lindsey v. Sears Roebuck & Co*., 16 F.3d 616, 618 (5th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249).
[8] *Carder v. Cont'l Airlines, Inc*., 595 F. App'x 293, 299 (5th Cir. 2014) (quoting *Skiba v. Jacobs Entm't Inc*., 587 Fed. Appx. 136, 138 (5th Cir. 2014) (per curiam)).
[9] *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (citing *Access Telecom, Inc. v. MCI Telecomm. Corp*., 197 F.3d 694, 720 (5th Cir.1999); *see also Washington v. Allstate Ins. Co*., 901 F.2d 1281, 1285 (5th Cir.1990) ("This court has long recognized that a plaintiff's entitlement to discovery prior to a ruling on a motion for summary judgment is not unlimited, and may be cut off when the record shows that the requested discovery is not likely to produce the facts needed by the plaintiff to withstand a motion for summary judgment.").

> The railroad owes a duty to operate its train with the degree of care of an ordinary prudent person under similar circumstances which include some lurching and jerking.... So long as the lurching or jerking is not extraordinary due to substandard conduct of the railroad, there is no breach of duty and, hence, no negligence on the part of the railroad.

*Id*. Thus, "primary assumption of risk," rather than an affirmative defense, is instead an attempt to negate that any breach of a duty occurred.  The affirmative defense version of the assumption of risk doctrine precludes recovery where a plaintiff voluntarily and unreasonably exposes herself to a known risk, albeit a risk created by a defendant's negligence. *Id*. The Florida Supreme Court offers the example of a landlord who has negligently permitted his tenant's premises to become highly flammable and a fire ensues. *Id*. If the tenant returns from work to find the premises ablaze, but unreasonably rushes into the fire to retrieve his favorite hat, his claims against the landlord would be subject to the assumption of risk doctrine. *Id*. Because the tenant's conduct is clearly unreasonable, the Blackburn court explains that "this conduct can just as readily be characterized as contributory negligence.... It is the failure to exercise the care of a reasonably prudent man under similar circumstances." *Id*.

Plaintiff bought the Property in 2015. Prior to the purchase, Plaintiff was aware of problem with Chinese drywall in south Florida.   Plaintiff viewed the Property one time and then put in an offer to purchase the Property "as-is." Plaintiff was aware at the time of the sale the Property was built in 2007.  However, having been aware of the nature of Chinese drywall, and the fact the Property was built in 2007, Plaintiff did not conduct a Chinese drywall inspection prior to purchase and did not receive and/or produce any property disclosures. Plaintiff knew Chinese drywall has a corrosive impact on Properties and still purchased the Property "as-is" without investigating further. This Court has cautioned that when a property owner purchases property in areas known to have the possibility of Chinese drywall they are assuming a risk without conducting a Chinese

drywall inspection. Rec. Doc. 20934. Here, Plaintiff did not act reasonable or prudent and assumed the risk because he failed to investigate into whether the Property had Chinese drywall prior to purchase when Plaintiff knew about Chinese drywall in South Florida and had a corrosive impact on properties. For these reasons alone, Plaintiff's claims are barred under Florida law.

### C. *No Evidence Supporting Personal Property or Loss of Use.*

Carlos Salabarria alleges claims and damages for personal property.[10] However, Carlos Salabarria did not timely provide sufficient evidence to support its claims pursuant to the Court's approved forms, at the deposition, or following the deposition. Plaintiff bears the burden at trial to prove their claims and damages and the evidence provided is insufficient, not colorable, and not probative to meet his burden under any standards.[11] Because there is a complete absence of documents, support, or evidence for the personal property or loss of use claims, summary judgment should be granted in favor of defendants.[12]

Furthermore, Plaintiff failed to comply with the Court's pretrial orders. This Court entered PTO 1(B) and PTO 1(I) regarding preservation of evidence. Courts have routinely dismissed claims for failing to comply with pretrial orders, particularly when compliance involves a necessary element to meet a plaintiff's burden. *In re Deepwater Horizon*, 922 F.3d 660, 665 (5th Cir. 2019); *Moore v. CITGO Ref. & Chemicals Co., L.*P., 735 F.3d 309, 315 (5th Cir. 2013). "A district court has broad discretion in all discovery matters, and such discretion will not be disturbed

---

[10] Exhibit A (Plaintiff Submissions).

[11] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 106 S.Ct. 2548, 2558, 91 L.Ed.2d 265 (1986); *see also Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir. 1993); *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.,* 892 F.3d 167, 170 (5th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)); *Lindsey v. Sears Roebuck & Co*., 16 F.3d 616, 618 (5th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249).

[12] In Florida, "[l]oss of use damages are only recoverable when an owner suffers a complete deprivation of his property." *AT&T Corp. v. Lanzo Constr. Co., Fl*., 74 F. Supp. 2d 1223, 1225 (S.D. Fla. 1999). Therefore, for example, when the owners of a home experience severe roof leaks, but continue to reside in the home, they are not entitled to damages for loss of use. *Schryburt v. Olesen*, 475 So. 2d 715, 717 (Fla. Dist. Ct. App. 1985).

ordinarily unless there are unusual circumstances showing a clear abuse." *Moore*, 725 F.3d at 315 (quot*ing Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000) (internal quotation omitted). Indeed, this Court has previously determined that failure of a plaintiff to comply with the preservations standards in PTO 1, PTO 1(B), and PTO 1(I) results in prejudice to the defendants. Because Plaintiff discarded the personal property allegedly damaged due to Chinese drywall in contravention of this Court's orders, the personal property claims should be dismissed.

### III.  CONCLUSION

For these reasons, this Court should grant summary judgment, dismissing the claims with prejudice.

Respectfully submitted,

**FISHMAN HAYGOOD, LLP**

/s/ *Kerry J. Miller*
**KERRY J. MILLER (#24562), T.A.**
**PAUL C. THIBODEAUX (#29446)**
**DANIEL J. DYSART (#33812)**
201 St. Charles Avenue, Suite 4600
New Orleans, LA  70170
Telephone:     504.556.5549
Facsimile:     504.310.0275
Email:          kmiller@fishmanhaygood.com
*Counsel for Defendants,*
*Knauf Gips KG and*
*Knauf Plasterboard (Tianjin) Co., Ltd.*

**CERTIFICATE OF SERVICE**

      I hereby certify that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, individually to pro se claimants via U.S. Mail, and that the foregoing was filed with the Clerk of Court of the United States Court for the Eastern District of Louisiana, on this 23rd day of December, 2019.

                                    /s/ *Kerry J. Miller*
                                    **KERRY J. MILLER**