UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:   CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL 2047 |
| | SECTION "L" |
| **This document relates to:** | JUDGE ELDON FALLON |
| *Elizabeth Bennett, et al v. Gebr. Knauf Verwaltungsgesellschaft, KG, et al* | |
| Case No. 14:cv-2722 | MAGISTRATE JOSEPH WILKINSON, JR. |

**MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
ON CLAIMS ASSERTED BY KURT AND SUZANNE TOLLIVER**

**MAY IT PLEASE THE COURT:**

Defendants, Knauf Gips KG and Knauf Plasterboard (Tianjin) Co., Ltd. (the "Knauf Defendants"), through undersigned counsel, respectfully submit this Memorandum in Support of their Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as to the claims asserted by Kurt and Suzanne Tolliver against it in Plaintiffs' Fifth Amended Class Action Complaint (the "Fifth Amended Complaint").

**I.    Factual and Procedural Background**

    **A.    *MDL 2047, the Knauf Class Settlement Agreement and the Bennett Complaint***

From 2004 through 2006, a housing boom in parts of the United States and rebuilding efforts necessitated by Hurricanes Rita and Katrina in the Gulf South led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used to construct and refurbish homes in coastal areas of the country,

notably the Gulf and East Coasts. Sometime after the Chinese drywall was installed, homeowners began to complain of foul-smelling odors, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829–30 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014). Many of these homeowners also began to complain of various physical afflictions believed to have been caused by the Chinese drywall.

These homeowners then began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. Because of the commonality of facts in the various cases, this litigation was designated as a multidistrict litigation. Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation ("JPML") on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 09-2047 before this Court.  On June 16, 2009, this Court entered PTO 1 regarding preservation of evidence, amongst other things. On October 9, 2009, this Court entered PTO 1(B) regarding preservation of evidence.   On January 24, 2012, this Court entered PTO 1(I) regarding preservation of evidence.

Since the inception of MDL 2047 in June of 2009, numerous cases have been consolidated, containing thousands of claims; over 20,000 records docs have been entered into the record, millions of documents exchanged in discovery, dozens of depositions, and over 30 Pretrial Orders have been issued; the Court has appointed steering committees and liaison counsel for plaintiffs, homebuilders, insurers, installers, and manufacturers; it has presided over monthly status conferences, hearings, and several bellwether trials.[1]

---

[1] *See* Order, R. Doc. No. 16570, pp. 3-4.

**B.**     *The Knauf Class Settlement Agreement*

On December 20, 2011, several Knauf Entities and the PSC entered into a global, class Settlement Agreement ("Knauf Class Settlement Agreement"), which was designed to resolve all Knauf related, Chinese drywall claims. (R. Doc. 16407-3).  On February 7, 2013,  the Court issued an Order and Judgment certifying the Knauf Class Settlement Agreement and granting final approval to five pending settlements involving the Knauf entities, several downstream entities, and their insurers. (R. Doc. 16570).  BrownGreer PLC was designated and approved by the Court and the Parties as the Settlement Administrator.

**C.**     *The Bennett Complaint and Plaintiffs*

The original Bennett Complaint was filed on November 13, 2014 in the Northern District of Alabama and was subsequently transferred and consolidated into MDL 2047. The Complaint was amended multiple times to amend the parties and claims, and certain plaintiffs later intervened. The Fifth Amended Complaint is the operative complaint in this matter.

Kurt and Suzanne Tolliver are plaintiffs in the operative Fifth Amended Complaint and have made claims against Knauf Gips KG and KPT regarding the alleged presence of defective Chinese drywall installed in their property located at 4531 SW Darwin Boulevard, Port St. Lucie, FL 34953 (the "Property").  In conducting discovery in this MDL and in Bennett matter, this Court approved a Plaintiff Profile Form, Supplemental Plaintiff Profile Form, Owner Disclosure Affidavit, and Plaintiff Fact Sheet to be completed by Plaintiffs and set forth full and complete answers regarding the claims and damage amounts sought by all Bennett Plaintiffs.  Kurt and Suzanne Tolliver completed and submitted a PPF, SPPF, PFS.  The documents were completed under penalty of perjury. (Exhibit A - PPF and SPPF; Exhibit B: PFS). Kurt and Suzanne Tolliver were deposed on July 10, 2019 and had twenty-one (21) days to supplement documents.

Kurt and Suzanne Tolliver purchased the Property on September 11, 2015. The previous owner, and Tolliver's predecessor-in-title, purportedly discovered Chinese drywall in the Property in 2010. (Exhibit C: Prior Owner Claimant Documents). The previous owner was part of filed claims against the Knauf Defendants for Chinese drywall located in the Property in Case no. 10-362. *Id*. The previous owner was part of the Knauf Class Settlement Agreement, and various other settlement agreements with builders, suppliers, and installers, and made claims and obtained certain benefits from one or more of the settlement agreements. *Id*.

The previous owner that had filed claims against Knauf and made claims in the Knauf Class Settlement Agreement, allegedly performed a self-remediation of the Property and had a third-party come test the property post-remediation in 2015. (Exhibit B: PFS - August 2015 Appraisal for Tolliver at 24, 41). Prior to the 2015 purchase of the Property by Plaintiffs, Kurt and Suzanne Tolliver had an appraisal conducted in August 2015. In the appraisal, Plaintiffs were informed of the Chinese drywall in the Property, the remediation efforts by the previous owner, and the post-remediation testing. (Exhibit B: PFS - August 2015 Appraisal for Tolliver 24, 41); (Exhibit D: Transcript at 27-29). Tolliver has never provided any inspection reports or evidence of further inquiry into the presence of Chinese drywall, the remediation efforts, or the post-remediation testing. Therefore, Plaintiff knew Chinese drywall was in the Property prior to purchasing the Property in 2015 and still purchased the Property "as-is" without investigating further into the remediation efforts, the post-remediation testing, and the presence of Chinese drywall.

In part, Kurt and Suzanne Tolliver asserted claims in their submissions for loss of use and personal property. Kurt and Suzanne Tolliver still live in the Property and failed to provide documents and competent evidence to support their claims for loss of use and personal property.

**II.     Law & Argument**

  **A.     *Legal Standard***

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is required if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2] "A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3]

When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial.[4] However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[5]

On a motion for summary judgment, "[a]lthough 'the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor,' summary judgment remains appropriate if the non-movant's evidence is 'merely colorable' or 'not significantly probative.'"[6] "Only when 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party' is a full trial on the merits warranted."[7] Furthermore, "[d]iscovery is not a prerequisite to the disposition of a motion for summary judgment."[8] "If it appears that

---

[2] FED. R. CIV. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").
[3] *Bennett v. Hartford Ins. Co. of Midwest*, 890 F.3d 597, 604 (5th Cir. 2018) (quoting *Johnson v. World All. Fin. Corp.*, 830 F.3d 192, 195 (5th Cir. 2016) (internal quotation marks omitted)).
[4] *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2558, 91 L.Ed.2d 265 (1986).
[5] *Id.* at 322; *see also Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir. 1993).
[6] *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.,* 892 F.3d 167, 170 (5th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)).
[7] *Lindsey v. Sears Roebuck & Co*., 16 F.3d 616, 618 (5th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249).
[8] *Carder v. Cont'l Airlines, Inc*., 595 F. App'x 293, 299 (5th Cir. 2014) (quoting *Skiba v. Jacobs Entm't Inc.*, 587 Fed. Appx. 136, 138 (5th Cir. 2014) (per curiam)).

further discovery will not provide evidence creating a genuine issue of material fact, the district court may grant summary judgment."[9]

    **B.**    *The Property was Previously in Litigation, Settled, and Released by the Knauf Class Settlement Agreement.*

As part of the Knauf Class Settlement Agreement, Plaintiffs' predecessor-in-title filed claims related to alleged Chinese drywall in the Property. The Property was included in the Knauf Settlement Agreement, as well as the other related settlement agreements, and Plaintiffs' predecessor-in-title filed claims and obtained benefits from one or more settlement funds while being denied other benefits for failure to provide supporting materials in connection with the requirements of the agreements. Therefore, pursuant to this Court's final order approving the Knauf Class Settlement Agreement, the claims of Plaintiffs are within the scope of the Knauf Class Settlement Agreement and the Released Claims and the current claims of Plaintiffs are now barred. (R. Doc. 16407-3; R. Doc. 16570).[10]

    **C.**    *Plaintiffs were Aware of Chinese Drywall Pre-Purchase and Purchased As-Is Without Further Investigation.*

In *Blackburn v. Dorta*, 348 So.2d 287 (Fla.1977), the Florida Supreme Court discussed the doctrine of assumption of risk at length, in an attempt to unravel this "enigma wrapped in a mystery." *Id*. at 290 (internal quotation omitted). First, the court addressed "primary assumption of risk," and explained that this term "is simply another means of stating that the defendant was not negligent, either because he owed no duty to the plaintiff in the first instance, or because he

---

[9] *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (citing *Access Telecom, Inc. v. MCI Telecomm. Corp*., 197 F.3d 694, 720 (5th Cir.1999); *see also Washington v. Allstate Ins. Co*., 901 F.2d 1281, 1285 (5th Cir.1990) ("This court has long recognized that a plaintiff's entitlement to discovery prior to a ruling on a motion for summary judgment is not unlimited, and may be cut off when the record shows that the requested discovery is not likely to produce the facts needed by the plaintiff to withstand a motion for summary judgment.").

[10] Alternatively, as a Property in active litigation since 2009 and part of the Knauf Class Settlement Agreement, Plaintiffs claims are barred based on their own negligence or assumption of risk. *See Blackburn v. Dorta*, 348 So.2d 287 (Fla.1977).

did not breach the duty owed." *Id*. at 290. For example, "[i]t can be said that a passenger assumes the risk of lurches and jerks which are ordinary and usual to the proper operation of the train, but that he does not assume the risk of extraordinary or unusual lurches and jerks resulting from substandard operation of the train." *Id*. at 291. Although articulated in terms of assuming the risk, this concept is more appropriately framed in terms of the standard of care, i.e.

> The railroad owes a duty to operate its train with the degree of care of an ordinary prudent person under similar circumstances which include some lurching and jerking.... So long as the lurching or jerking is not extraordinary due to substandard conduct of the railroad, there is no breach of duty and, hence, no negligence on the part of the railroad.

*Id*. Thus, "primary assumption of risk," rather than an affirmative defense, is instead an attempt to negate that any breach of a duty occurred. The affirmative defense version of the assumption of risk doctrine precludes recovery where a plaintiff voluntarily and unreasonably exposes herself to a known risk, albeit a risk created by a defendant's negligence. *Id*. The Florida Supreme Court offers the example of a landlord who has negligently permitted his tenant's premises to become highly flammable and a fire ensues. *Id*. If the tenant returns from work to find the premises ablaze, but unreasonably rushes into the fire to retrieve his favorite hat, his claims against the landlord would be subject to the assumption of risk doctrine. *Id*. Because the tenant's conduct is clearly unreasonable, the Blackburn court explains that "this conduct can just as readily be characterized as contributory negligence.... It is the failure to exercise the care of a reasonably prudent man under similar circumstances." *Id*.

The previous owner that had filed claims against Knauf and made claims in the Knauf Class Settlement Agreement, performed a self-remediation of the Property and had a third-party come test the property post-remediation. Kurt and Suzanne Tolliver were informed of the Chinese drywall in the Property, the remediation efforts by the previous owner, and the post-remediation

testing *before* they purchased the Property.  Therefore, Plaintiff knew Chinese drywall was in the Property and still purchased the Property "as-is" without investigating further into the remediation efforts or the post-remediation testing. This Court has cautioned that when a property owner purchases property in areas known to have the possibility of Chinese drywall they are assuming a risk without conducting a Chinese drywall inspection. Rec. Doc. 20934.  Here, Plaintiff did not act reasonable or prudent and assumed the risk because they failed to investigate into whether the Property still had Chinese drywall, even though they were put on notice of alleged Chinese drywall in the Property prior to purchase.   For these reasons, Plaintiff's claims are barred under Florida law.

### D. *No Evidence Supporting Loss of Use and Personal Property*

Kurt and Suzanne Tolliver allege claims and damages for loss of use and personal property.[11] However, Kurt and Suzanne Tolliver did not timely provide sufficient evidence to support its claims pursuant to the Court's approved forms, at the deposition, or following the deposition. Kurt and Suzanne Tolliver bear the burden at trial to prove their claims and damages and the evidence provided is insufficient, not colorable, and not probative to meet their burden under any standards.[12]  Furthermore, it is undisputed they still live in the Property.[13]  Because there is a complete absence of documents, support, or evidence for the loss of use and personal property, summary judgment should be granted in favor of defendants.

---

[11] Exhibit A (Plaintiff Submissions).

[12] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 106 S.Ct. 2548, 2558, 91 L.Ed.2d 265 (1986); *see also Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir. 1993); *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.,* 892 F.3d 167, 170 (5th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)); *Lindsey v. Sears Roebuck & Co*., 16 F.3d 616, 618 (5th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249).

[13] In Florida, "[l]oss of use damages are only recoverable when an owner suffers a complete deprivation of his property." *AT&T Corp. v. Lanzo Constr. Co., Fl*., 74 F. Supp. 2d 1223, 1225 (S.D. Fla. 1999).  Therefore, for example, when the owners of a home experience severe roof leaks, but continue to reside in the home, they are not entitled to damages for loss of use. *Schryburt v. Olesen*, 475 So. 2d 715, 717 (Fla. Dist. Ct. App.  1985).

### III. CONCLUSION

For these reasons, the Court should grant summary judgment, dismissing the claims with prejudice.

Respectfully submitted,

**FISHMAN HAYGOOD, LLP**

/s/ *Kerry J. Miller*

**KERRY J. MILLER (#24562), T.A.**
**PAUL C. THIBODEAUX (#29446)**
**DANIEL J. DYSART (#33812)**
201 St. Charles Avenue, Suite 4600
New Orleans, LA 70170
Telephone:     504.556.5549
Facsimile:     504.310.0275
Email:     kmiller@fishmanhaygood.com
*Counsel for Defendants,*
*Knauf Gips KG and*
*Knauf Plasterboard (Tianjin) Co., Ltd.*

### CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, individually to pro se claimants via U.S. Mail, and that the foregoing was filed with the Clerk of Court of the United States Court for the Eastern District of Louisiana, on this 6th day of January, 2020.

/s/ *Kerry J. Miller*
**KERRY J. MILLER**