**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br><br>SECTION: L |
| THIS DOCUMENT RELATES TO:<br><br>*Elizabeth Bennett, et al. v. Knauf Gips, KG, et al.*<br>**2:14-cv-02722-EEF-JCW** | JUDGE ELDON FALLON<br><br>MAG. JUDGE WILKINSON |

**PLAINTIFF FACT SHEET**

Name of Plaintiff:  Nicole Norris & Michael Norris

Affected Property Address: 700 Artic Fox Run, Madisonville, LA 70447

## I.  Purchase, Sale and/or Transfer of Ownership of Property

1.  On what date did you purchase the Property?

**Response**:  Plaintiff objects to this question as duplicative.  In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants.  Plaintiff has previously provided this information to defendants in the Bennett Supplemental Plaintiff Profile Form ("SPPF").  Plaintiff directs the defendants to Section II of the SPPF. Without waiving said objection, Plaintiff adopts the SPPF response again here and intends to provide the exact same date as provided in the verified SPPF as follows: Plaintiff purchased the property:

(Month/Day/Year)        08 / 10 / 2006

2.  When you took ownership of the Property, what was the name of the seller?

Sampson Construction, LLC

**EXHIBIT**
**C**


EXHIBIT
3

1

3.  Name and address of the realtor?

Nancy Pigrenet, 800 Causeway Blvd., Suite 1-A, Mandeville, LA  70448

4.  Name and address of the closing agent?

William P. Curry, Jr., Bayou Title, Inc., 1820 St. Charles Ave., #201, New Orleans, LA  70130

5.  What was the price of the home when you purchased it?  $ 315,000.00

6.  Was it an "as-is" sale?

**Response:**  Plaintiff objects to the use of "as-is" in this question as vague, ambiguous, uncertain, and unintelligible; consequently, Plaintiff cannot determine the exact nature of the information being sought.  This term is not defined and is not commonly understood with one accepted meaning; multiple inpretations are possible.  Without waiving said objection, plaintiff responds as follows:

☐ Yes   ☑ No   ☐ I'm not sure.

7.  If you sold or transferred ownership of the Property, what was the name of the purchaser?

N/A

8.  If you sold or transferred ownership of the Property, what was the name and address of the realtor?

N/A

9.  If you sold or transferred ownership of the Property, what was the name and address of closing agent?

N/A

10.  If you sold or transferred ownership of the Property, what was the price paid for home?
          $ N/A

## II.  Appraisal of the Home

11.  Date of each appraisal:

    a. __03_ / _01_ /20_07___

    b. _____ / _____ /20_____

2

**PFS REQUEST FOR DOCUMENT PRODUCTION #1**: Please produce copies of any and all appraisals performed on the house both prior and subsequent to the occurrence of any of the events allenged in the petition.

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 1."

## III.  Discovery of Drywall

12.  Date that the property was constructed and/or renovated that installed the allegedly defective Chinese Drywall.

**Response**:  Plaintiff objects to this question as duplicative.  In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants.  Plaintiff has previously provided this information to defendants in the Bennett Supplemental Plaintiff Profile Form ("SPPF").  Plaintiff directs the defendants to  Section II of the SPPF. Without waiving said objection, Plaintiff adopts the SPPF response again here and intends to provide the exact same date as provided in the verified SPPF as follows: The property construction and/or renovation that installed the allegedly defective drywall occurred on or about the following date (to the best of my knowledge):

> (Month/Day/Year)          ____/____/20__06__

**PFS REQUEST FOR DOCUMENT PRODUCTION #2:** Please produce all documents, reports, photographs, videotapes, samples and any other materials which evidence and/or identify that there is defective Chinese Drywall in the Property.

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 2."

## IV.  Manufacturer/Seller of Drywall

13.  Who sold or distributed the drywall in the house?

**Response**:  Plaintiff objects to this question as duplicative.  In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants.  Plaintiff has previously provided this information to defendants in the Plaintiff Profile Form ("PPF"). Plaintiff directs the defendants to  Section X of the PPF.  Without waiving said objection, Plaintiff adopts the PPF response again here and intends to provide the exact same information as provided in the verified PPF as follows:  The drywall Supplier's name (to the best of my knowledge) is:

I don't know.

**PFS REQUEST FOR DOCUMENT PRODUCTION #3**: Please produce all documents, reports, photographs, videotapes, samples and any other materials which evidence and/or identify the manufacturer of drywall installed in the house. The submission must be in the form of PTO 1(B).

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 3."

## V.  Damages

14.  Identify any harm, financial or otherwise, that you contend was caused by defective Chinese Drywall installed in the Property.

**Response**:  Plaintiff directs the defendants to review the complaint filed with the court in this case for a full listing of the claims being asserted and the damages being sought.  The defective Knauf Chinese Drywall emitted gasses that cause damage to Plaintiff's home and the personal property contained therein.  It also significantly diminished the use and enjoyment of the home; therefore, Plaintiff seeks the following:  all compensatory, statutory, and/or punitive damages; all pre-judgment and post-judgment interest as allowed by law; any appropriate injunctive relief; an award of attorney's fees as allowed by law; an award of taxable costs; and, any and all such further relief as a jury or judge presiding over my trial deems just and proper.  Other damages include, but are not limited to:

Financial - ongoing problems with a/c, appliance, electrical, plumbing and personal property

- all damaged by the drywall gasses.

15.  If you contend that you entered personal bankruptcy as a result of damage to your property from defective Chinese Drywall, please describe the facts and circumstances that relate to your claim.

N/A

16.  If you contend that you entered short sale and/or foreclosure as a result of damage to your property from defective Chinese Drywall, please describe the facts and circumstances that relate to your claim.

N/A

**PFS REQUEST FOR DOCUMENT PRODUCTION #4**: If you claim loss of income, please produce any copies of any and all documentation upon which you intend to rely upon to prove this claim.

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 4."

17.  If you claim diminution of the property as a result of Chinese Drywall, state with particularity each fact which supports your claim.

N/A _____

_____

_____

_____

18.  Identify the appliances, fixtures and/or other electronics, if any, that you claim were damaged by Chinese Drywall in the property.

> **Response**: An list of damaged items is attached as "Exhibit 14."

19.  If you vacated the property because of the alleged presence of Chinese Drywall, please provide: Address of each location you stayed thereafter.

a. N/A _____

b. _____

c. _____

20.  If you vacated the property because of the alleged presence of Chinese Drywall, please provide: Time periods in which you resided at each property.

a. _____/_____/20_____  to  _____/_____/20_____

b. _____/_____/20_____  to  _____/_____/20_____

c. _____/_____/20_____  to  _____/_____/20_____

21.  If you vacated the property because of the alleged presence of Chinese Drywall, please provide: Moving costs and/or alternative living expenses you claim to have incurred as a result of the alleged presence of Chinese Drywall.

a. $ N/A _____

b. $_____

c. $_____

**PFS REQUEST FOR DOCUMENT PRODUCTION #5:**  If you vacated the property because of the alleged presence of Chinese Drywall, please provide any documentation to support your claims.

> **Response:**  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 5."

22.  Are you claiming damages for personal injury?  ☐ Yes (explain below) ☑ No

_____

_____

23.  If you suffered personal injuries as a result of the alleged presence of Chinese Drywall:  Date you allege that you first sustained personal injuries as a result of your exposure to allegedly defective Chinese Drywall.

> **Response:**  ☑ N/A

24.  If you suffered personal injuries as a result of the alleged presence of Chinese Drywall:  What specific injuries have you suffered?

> **Response:**  ☑ N/A

25.  If you suffered personal injuries as a result of the alleged presence of Chinese Drywall:  Name and address of any doctor, physician, surgeon, chiropractor, or osteopath who examined and/or treated your alleged injuries.

> **Response:**  ☑ N/A

## VI.  Potential Witnesses/Evidence

26.  Has any written or recorded statement been taken from any witness or person who has knowledge of relevant facts, including the nature, character, and extent of the injuries referred to in the petition, and for each statement identified?

> ☐ Yes  ☑ No  ☐ I don't know

27.  If the answer to 26 is "yes," please state:  The name, address, and telephone number of the person from whom the statement was taken.

N/A _____

_____

28.  If the answer to 26 is "yes," please state:  The name, address, and telephone number of the person who took the statement.

N/A

29.  If the answer to 26 is "yes," please state:  The name address, and telephone number of the party having custody of such statement.

N/A

30.  If the answer to 26 is "yes," please state:  The date the statement was taken.

N/A

## VII.  Already Remediated Properties

31.  If you already remediated the Property, who conducted the remediation?

Response:   [✓] N/A

32.  When did the remediation commencement date occur?

Response:   [✓] N/A

33.  When did the remediation end date occur?

Response:   [✓] N/A

34.  What was the scope of the remediation and the scope of the work carried out?

Response:   [✓] N/A

35.  What costs or expenses, if any, did you incur related to the remediation of the Property?

Response:   [✓] N/A

36. Were any samples from the remediation retained?

    **Response**: ☑ N/A

37. If the response to 36 is "yes," were the samples compliant with PTO 1(B)?

    **Response**: ☑ N/A

38. Were any photographs taken of the allegedly defective Chinese Drywall?

    **Response**: ☑ N/A

39. If the response to 38 is "yes," were the photographs compliant with PTO 1(B)?

    **Response**: ☑ N/A

**PFS REQUEST FOR DOCUMENT PRODUCTION #6**: Please produce the following documentation concerning the remediation of the Property: Any evidence of KPT Chinese Drywall and Non-KPT Chinese Drywall, if any, in the Property prior to remediation.

    **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 6."

**PFS REQUEST FOR DOCUMENT PRODUCTION #7**: Please produce the following documentation concerning the remediation of the Property: Interior photographs of the Affected Property immediately prior to the commencement of, and following completion of, the remediation, including photographs and/or video images of the flooring and major components such as cabinets, moldings, doors, intercom systems, and fixtures for every room and bathroom and, to the extent possible, security systems, appliances and audio such as surround sound.

\*\* The photographs do not need to be pictures taken specifically for the litigation. For example, family photographs or photographs taken for purposes of refinancing a mortgage are acceptable in the absence of other photographs.

    **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 7."

**PFS REQUEST FOR DOCUMENT PRODUCTION #8**: Please produce the following documentation concerning the remediation of the Property: The remediation contract and an itemization from the contractor who performed the remediation work of the materials used during the remediation, including, but not limited to, manufacturer, model number, and quantity.

8

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 8."

**PFS REQUEST FOR DOCUMENT PRODUCTION #9**:  Please produce the following documentation concerning the remediation of the Property:  An itemized invoice from the contractor who performed the remediation work ("Itemized Invoice") showing the scope of work carried out.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 9."

**PFS REQUEST FOR DOCUMENT PRODUCTION #10**:  Please produce the following documentation concerning the remediation of the Property:  Proof of payment of the Itemized Invoice and any other expenses, such as cancelled checks, credit card statements, etc.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 10."

**PFS REQUEST FOR DOCUMENT PRODUCTION #11**:  Please produce the following documentation concerning the remediation of the Property:  A floor plan of the Affected Property with dimensions.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 11."

**PFS REQUEST FOR DOCUMENT PRODUCTION #12**:  Please produce the following documentation concerning the remediation of the Property:  An Environmental Certificate.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 12."

**PFS REQUEST FOR DOCUMENT PRODUCTION #13**:  Please produce the following documentation concerning the remediation of the Property:  An Owner Disclosure Affidavit in the form attached as Exhibit 1, which includes a certification that the materials provided comprise all of the available documentation regarding the following:  The drywall that was in the Affected Property prior to the commencement of the remediation; and, the scope, extent, and cost of the remediation.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 13."

## VERIFICATION

I hereby verify that the responses to the Plaintiff Fact Sheet are correct to the best of my knowledge.


_____          _____
Signature of Plaintiff                                     Date   1/19/19


_____
Printed Name   Nicole Norris

# Exhibit 1

WAYNE SANDOZ & ASSOCIATES, INC.

File No. 205-506

## APPRAISAL OF



### LOCATED AT:

700 ARCTIC FOX RUN
MADISONVILLE, LA  70447-9592

### FOR:

BROKER'S HOME, LLC
4051 VETERANS BLVD. STE. 400
METAIRIE, LA  70002

### AS OF:

August 4, 2006

### BY:

THOMAS L. SANDOZ

732 BEHRMAN HWY., SUITE A, GRETNA, LA 70056   PHONE: 504.392.9465  FAX: 504.392.9469

# Uniform Residential Appraisal Report

File No. 205-506

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

**SUBJECT**

| | | |
|---|---|---|
| Property Address 700 ARCTIC FOX RUN | City MADISONVILLE | State LA   Zip Code 70447-9592 |
| Borrower NORRIS | Owner of Public Record SAMPSON CONSTRUCTION | County ST. TAMMANY |
| Legal Description LOT 67, PHASE 2, FOX BRANCH ESTATES | | |
| Assessor's Parcel # NOT AVAILABLE IN NORMAL COURSE | Tax Year 2006 | R.E. Taxes $ UNKNOWN |
| Neighborhood Name FOX BRANCH ESTATES | Map Reference MLS-205 | Census Tract 0403.01 |

Occupant [ ] Owner  [ ] Tenant  [X] Vacant   Special Assessments $ N/A   [ ] PUD   HOA $ N/A   [ ] per year  [ ] per month

Property Rights Appraised  [X] Fee Simple  [ ] Leasehold  [ ] Other (describe)

Assignment Type  [X] Purchase Transaction  [ ] Refinance Transaction  [ ] Other (describe)

Lender/Client BROKER'S HOME, LLC   Address 4051 VETERANS BLVD. STE. 400, METAIRIE, LA 70002

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? [X] Yes  [ ] No

Report data source(s) used, offering price(s), and date(s). DATA SOURCE: MLS  LIST DATE: 12/28/2005  LIST PRICE: $315,595

I  [X] did  [ ] did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.
THE TERMS OF THE CONTRACT FOR SALE ARE TYPICAL FOR THE AREA AND PROPERTY TYPE.

**CONTRACT**

Contract Price $ 315,595   Date of Contract 12/15/2005   Is the property seller the owner of public record? [X] Yes  [ ] No   Data Source(s) CONTRACT

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower?  [ ] Yes  [X] No
If Yes, report the total dollar amount and describe the items to be paid.  $ N/A   N/A

**NEIGHBORHOOD**

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|
| Location | [ ] Urban [X] Suburban [ ] Rural | Property Values | [X] Increasing [ ] Stable [ ] Declining | PRICE | AGE | One-Unit | 90 % |
| Built-Up | [X] Over 75% [ ] 25-75% [ ] Under 25% | Demand/Supply | [ ] Shortage [X] In Balance [ ] Over Supply | $(000) | (yrs) | 2-4 Unit | % |
| Growth | [X] Rapid [ ] Stable [ ] Slow | Marketing Time | [X] Under 3 mths [ ] 3-6 mths [ ] Over 6 mths | 230 Low | NEW | Multi-Family | % |
| | | | | 350 High | 5 | Commercial | % |
| Neighborhood Boundaries  BOUNDING STREETS ARE: HWY. 1085, HWY. 22, INTERSTATE 12, HWY. 1077 | | | | 320 Pred. | 2 | Other  VCNT | 10 % |

Neighborhood Description  THE SUBJECT IS LOCATED IN A TYPICAL RESIDENTIAL NEIGHBORHOOD FOR THE AREA. ACCESS TO EMPLOYMENT, SHOPPING, AND CONSUMER SERVICES IS ADEQUATE AND TYPICAL.

Market Conditions (including support for the above conclusions)  MARKET ACTIVITY IN THE AREA IS STEADY. VALUES HAVE BEEN INCREASING FOR 2-3 YEAR PERIOD. SOME INDICATIONS OF POTENTIAL FUTURE INCREASES ARE PRESENT. SUPPLY & DEMAND ARE IN BALANCE WITH NO SIGNIFICANT ABUNDANCE OF INVENTORY EVIDENT. SEE ADDENDUM FOR FURTHER COMMENTS.

**SITE**

| | | | |
|---|---|---|---|
| Dimensions 100 X 125 (EST. - SUBJ.TO SURVEY) | Area 12500 Sq.Ft. | Shape RECTANGULAR | View SIMILAR PROPERTIES |

Specific Zoning Classification SFR   Zoning Description SINGLE FAMILY RESIDENTIAL

Zoning Compliance  [X] Legal  [ ] Legal Nonconforming (Grandfathered Use)  [ ] No Zoning  [ ] Illegal (describe)

Is the highest and best use of the subject property as improved (or as proposed per plans and specifications) the present use? [X] Yes  [ ] No   If No, describe.

| Utilities | Public | Other (describe) | Off-site Improvements—Type | Public | Private |
|---|---|---|---|---|---|
| Electricity | [X] | | Street CONCRETE | [X] | |
| Gas | [X] | Water [X] | Alley NONE | | |
| | | Sanitary Sewer [X] | | | |

FEMA Special Flood Hazard Area  [ ] Yes  [X] No   FEMA Flood Zone C   FEMA Map # 225205 0205C   FEMA Map Date 10/17/1989

Are the utilities and off-site improvements typical for the market area? [X] Yes  [ ] No   If No, describe.

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? [ ] Yes  [X] No   If Yes, describe.

**IMPROVEMENTS**

| GENERAL DESCRIPTION | FOUNDATION | EXTERIOR DESCRIPTION  materials/condition | INTERIOR  materials/condition |
|---|---|---|---|
| Units [X] One [ ] One with Accessory Unit | [X] Concrete Slab [ ] Crawl Space | Foundation Walls  SLAB-NEW | Floors  CPT/WD/CT-NEW |
| # of Stories  1 | [ ] Full Basement [ ] Partial Basement | Exterior Walls  BRK/STC-NEW | Walls  DRYWALL-NEW |
| Type [X] Det. [ ] Att. [ ] S-Det./End Unit | Basement Area  0.0000 sq. ft. | Roof Surface  C.SHINGLE-NEW | Trim/Finish  WD/PAINT-NEW |
| [X] Existing [ ] Proposed [ ] Under Const. | Basement Finish  N/A % | Gutters & Downspouts NONE | Bath Floor  CERAMIC-NEW |
| Design (Style) TRADITIONAL | [ ] Outside Entry/Exit [ ] Sump Pump | Window Type  S.H.ALUM-NEW | Bath Wainscot  FBGL-NEW |
| Year Built 2006 | Evidence of [ ] Infestation | Storm Sash/Insulated  N/A | Car Storage [ ] None |
| Effective Age (Yrs) 0 | [ ] Dampness [ ] Settlement | Screens  YES-NEW | [ ] Driveway  # of Cars |
| Attic [X] None | Heating [X] FWA [ ] HWBB [ ] Radiant | Amenities | Driveway Surface CONCRETE |
| [X] Drop Stair [ ] Stairs | [ ] Other  Fuel GAS | [X] Fireplace(s) # 1 [X] Fence | [X] Garage  # of Cars  2 |
| [ ] Floor [ ] Scuttle | Cooling [X] Central Air Conditioning | [X] Patio/Deck [ ] Porch | [ ] Carport  # of Cars |
| [ ] Finished [ ] Heated | [ ] Individual [ ] Other | [ ] Pool [ ] Other | [X] Att. [ ] Det. [ ] Built-in |

Appliances  [X] Refrigerator  [X] Range/Oven  [X] Dishwasher  [X] Disposal  [X] Microwave  [ ] Washer/Dryer  [ ] Other (describe)

Finished area above grade contains:  7 Rooms  3 Bedrooms  2.5 Bath(s)  2,571 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.).  JETTED TUB IN MASTER BATH.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).  QUALITY OF CONSTRUCTION OF THE SUBJECT IS AVERAGE AND TYPICAL OF THE AREA. NO REPAIRS ARE REQUIRED TO MEET NORMAL STANDARDS FOR THE AREA. NO FUNCTIONAL OBSOLESCENCE WAS OBSERVED. THE SUBJECT DOES NOT APPEAR TO HAVE SUFFERED ANY READILY VISIBLE DAMAGE AS A RESULT OF HIRRUCANE KATRINA.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? [ ] Yes  [X] No   If Yes, describe.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? [X] Yes  [ ] No   If No, describe.

# Uniform Residential Appraisal Report

File No. 205-506

There are **5** comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 310,000 to $ 379,000

There are **4** comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 303,899 to $ 325,000

| FEATURE | SUBJECT | COMPARABLE SALE NO. 1 | | COMPARABLE SALE NO. 2 | | COMPARABLE SALE NO. 3 | |
|---|---|---|---|---|---|---|---|
| | | | +(-) $ Adjustment | | +(-) $ Adjustment | | +(-) $ Adjustment |
| | 700 ARCTIC FOX RUN | 704 ARCTIC FOX RUN | | 113 RED FOX RUN | | 109 RED FOX RUN | |
| Address | MADISONVILLE | MADISONVILLE, LA | | MADISONVILLE, LA | | MADISONVILLE, LA | |
| Proximity to Subject | | 0.20 Miles E | | 0.09 Miles E | | 0.28 Miles E | |
| Sale Price | $ 315,595 | $ 303,899 | | $ 315,000 | | $ 310,000 | |
| Sale Price/Gross Liv. Area | $ 122.75 sq. ft. | $ 127.31 sq. ft. | | $ 140.44 sq. ft. | | $ 137.41 sq. ft. | |
| Data Source(s) | INSPECTION | MLS | | MLS | | MLS | |
| Verification Source(s) | INSPECTION | BROKER | | BROKER | | BROKER | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | N/A | CNV | | CNV $300 | | CNV $1275 | |
| Concessions | NONE KNOWN | NONE KNOWN | | CLOS.COSTS | -300 | CLOS.COSTS | -1,275 |
| Date of Sale/Time | 12/15/2005 | 6/16/2006 | | 4/7/2006 | | 2/13/2006 | |
| Location | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Site | 100 X 125 | 75 X 125 | 4,500 | 120 X 147 X VD | -4,500 | 60/97 X 164/147 | |
| View | SIMILAR PROPS | SIMILAR PROPS | | SIMILAR PROPS | | SIMILAR PROPS | |
| Design (Style) | TRADITIONAL | TRADITIONAL | | TRADITIONAL | | TRADITIONAL | |
| Quality of Construction | BRICK/STUCCO | BRICK/STUCCO | | BRICK/STUCCO | | BRICK/STUCCO | |
| Actual Age | 0A/0E | 0A/0E | | 2A/1E | | 1A/1E | |
| Condition | NEW | NEW | | GOOD | 2,500 | GOOD | 2,500 |
| Above Grade | Total / Bdrms / Baths | Total / Bdrms / Baths | | Total / Bdrms / Baths | | Total / Bdrms / Baths | |
| Room Count | 7 / 3 / 2.5 | 7 / 3 / 2.5 | | 8 / 4 / 3 | -1,500 | 8 / 4 / 2 | 1,500 |
| Gross Living Area 38.00 | 2,571 sq. ft. | 2,387 sq. ft. | 7,000 | 2,243 sq. ft. | 12,500 | 2,256 sq. ft. | 12,000 |
| Basement & Finished | N/A | N/A | | N/A | | N/A | |
| Rooms Below Grade | N/A | N/A | | N/A | | N/A | |
| Functional Utility | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Heating/Cooling | CENTRAL | CENTRAL | | CENTRAL | | CENTRAL | |
| Energy Efficient Items | TYPICAL | TYPICAL | | TYPICAL | | TYPICAL | |
| Garage/Carport | 2-GARAGE | 2-GARAGE | | 2-GARAGE | | 2-GARAGE | |
| Porch/Patio/Deck | PORCH/PATIO | PORCH/PATIO | | POR./COV PATIO | -1,500 | POR/COV PATIO | -1,500 |
| | FPL/JET TUB | FPL/JET TUB | | FPL/JET TUB | | FPL/JET TUB/SS | -1,000 |
| KITCHEN APPL | FENCE | FENCE | | FENCE | | FENCE | |
| | BUILT INS | BUILT INS | | BUILT INS | | BUILT INS | |
| Net Adjustment (Total) | | X + / - $ | 11,500 | X + / - $ | 7,200 | X + / - $ | 12,225 |
| Adjusted Sale Price | | Net Adj. 3.8% | | Net Adj. 2.3% | | Net Adj. 3.9% | |
| of Comparables | | Gross Adj. 3.8% $ | 315,399 | Gross Adj. 7.2% $ | 322,200 | Gross Adj. 6.4% $ | 322,225 |

I **X** did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research **X** did ☐ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.

Data source(s)  MLS

My research **X** did ☐ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.

Data source(s)  MLS

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE NO. 1 | COMPARABLE SALE NO. 2 | COMPARABLE SALE NO. 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | N/A | N/A | N/A | N/A |
| Price of Prior Sale/Transfer | N/A | N/A | N/A | N/A |
| Data Source(s) | MLS | MLS | MLS | MLS |
| Effective Date of Data Source(s) | 2006 | 2006 | 2006 | 2006 |

Analysis of prior sale or transfer history of the subject property and comparable sales   N/A

Summary of Sales Comparison Approach.   ALL COMPARABLES ARE THE MOST RECENT SALES SIMILAR TO THE SUBJECT. ADJUSTMENTS ARE BASED ON MARKET EXTRACTED DATA FROM PAIRED SALES ANALYSES. SITE ADJUSTMENTS REFLECT NET LAND VALUE DIFFERENTIALS. CONDITION ADJUSTMENTS REFLECT ACTUAL/EFFECTIVE AGE DIFFERENTIALS AS THEY RELAT TO PHYSICAL DEPRECIATION.

Indicated Value by Sales Comparison Approach $ 320,000

Indicated Value by:  Sales Comparison Approach $ 320,000      Cost Approach (if developed) $ 326,900      Income Approach (if developed) $ N/A

BOTH THE COST AND SALES APPROACHES SUPPORT THE FINAL VALUE, WITH THE SALES APPROACH GIVEN THE MOST WEIGHT. RENTAL DATA FOR SINGLE FAMILY HOMES IS SCARCE AND UNRELIABLE,THEREFORE THE INCOME APPROACH WAS NOT UTILIZED.

This appraisal is made **X** "as is," ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 320,000 as of  8/4/2006 , which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 70 March 2005                          Produced using ACI software, 800.234.8727 www.aciweb.com                          Fannie Mae Form 1004 March 2005

Page 2 of 6                                    1004_05 033006

Wayne Sandoz & Associates

## Uniform Residential Appraisal Report

File No. 205-506

**ADDITIONAL COMMENTS**

**COST APPROACH TO VALUE (not required by Fannie Mae)**

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)   LAND VALUE IS BASED ON LAND SALES FROM THE SAME OR COMPETING AREAS IN THE APPRAISAL FILE.

| COST APPROACH | | |
|---|---|---|
| ESTIMATED ☐ REPRODUCTION OR ☒ REPLACEMENT COST NEW | OPINION OF SITE VALUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . = $ | 65,000 |
| Source of cost data MARSHALL AND SWIFT | Dwelling        2,571 Sq. Ft. @ $    85.00 . . . . . . . . . . = $ | 218,535 |
| Quality rating from cost service GOOD       Effective date of cost data 2006 | Sq. Ft. @ $    . . . . . . . . . . . = $ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | AMENITIES | 20,000 |
| 1) SEE DIAGRAM FOR LIVING AREA CALCULATIONS. | Garage/Carport 506      Sq. Ft. @ $    25.50 . . . . . . . . . = $ | 12,903 |
| 2) COST ESTIMATES BASED ON MARSHALL VALUATION SERVICES. | Total Estimate of Cost-New      . . . . . . . . . . . . . . . = $ | 251,438 |
| 3) SITE VALUE BASED ON LAND SALES. | Less   55   Physical | Functional | External | |
| 4) EXTERNAL OR FUNCTIONAL OBSOLESCENCE IF ANY, IS | Depreciation       $0      = $ ( | 0) |
| EXPLAINED IN ADDENDA SECTION. | Depreciated Cost of Improvements . . . . . . . . . . . . . . . . . = $ | 251,438 |
| | "As-is" Value of Site Improvements . . . . . . . . . . . . . . . . . . = $ | 10,500 |
| Estimated Remaining Economic Life (HUD and VA only)        55 Years | INDICATED VALUE BY COST APPROACH . . . . . . . . . . . . . . . . = $ | 326,900 |

| INCOME | INCOME APPROACH TO VALUE (not required by Fannie Mae) | |
|---|---|---|
| Estimated Monthly Market Rent $        N/A X Gross Rent Multiplier    N/A = $ | 0 Indicated Value by Income Approach | |
| Summary of Income Approach (including support for market rent and GRM) SEE COMMENTS IN RECONCILIATION SECTION. | | |

**PROJECT INFORMATION FOR PUDs (if applicable)**

Is the developer/builder in control of the Homeowners' Association (HOA)?  ☐ Yes  ☐ No   Unit type(s)  ☐ Detached  ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal name of project  N/A

| Total number of phases   N/A | Total number of units N/A | Total number of units sold  N/A |
|---|---|---|
| Total number of units rented  N/A | Total number of units for sale N/A | Data source(s)  N/A |

Was the project created by the conversion of an existing building(s) into a PUD?  ☐ Yes  ☐ No   If Yes, date of conversion.  N/A

Does the project contain any multi-dwelling units?  ☐ Yes  ☐ No   Data source(s)  N/A

Are the units, common elements, and recreation facilities complete?  ☐ Yes  ☐ No   If No, describe the status of completion. N/A

Are the common elements leased to or by the Homeowners' Association?  ☐ Yes  ☐ No   If Yes, describe the rental terms and options.  N/A

Describe common elements and recreational facilities.  N/A

Freddie Mac Form 70 March 2005                           Produced using ACI software, 800.234.8727 www.aciweb.com                           Fannie Mae Form 1004 March 2005
Page 3 of 6
1004_05 032005

## Uniform Residential Appraisal Report

File No. 205-506

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

# Uniform Residential Appraisal Report

File No. 205-506

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1.   I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2.   I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3.   I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4.   I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5.   I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6.   I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7.   I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8.   I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9.   I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

# Uniform Residential Appraisal Report

File No. 205-506

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name THOMAS L. SANDOZ | Name |
| Company Name WAYNE SANDOZ & ASSOCIATES, INC. | Company Name |
| Company Address 732 BEHRMAN HWY. SUITE A | Company Address |
| GRETNA, LA 70056 | |
| Telephone Number 504.392.9465 | Telephone Number |
| Email Address tommy@sandozassoc.com | Email Address |
| Date of Signature and Report 08/07/2006 | Date of Signature |
| Effective Date of Appraisal 8/4/2006 | State Certification # |
| State Certification # R0755 | or State License # |
| or State License # | State |
| or Other (describe)        State # | Expiration Date of Certification or License |
| State LOUISIANA | |
| Expiration Date of Certification or License 12/31/2007 | |

ADDRESS OF PROPERTY APPRAISED
700 ARCTIC FOX RUN
MADISONVILLE, LA  70447-9592

APPRAISED VALUE OF SUBJECT PROPERTY $ 320,000

LENDER/CLIENT
Name WENDY CASTILLO
Company Name BROKER'S HOME, LLC
Company Address 4051 VETERANS BLVD. STE. 400
METAIRIE, LA  70002
Email Address dorand@brokershome.com

SUBJECT PROPERTY
☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
   Date of Inspection
☐ Did inspect interior and exterior of subject property
   Date of Inspection

COMPARABLE SALES
☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
   Date of Inspection

Wayne Sandoz & Associates

COMMENTS ON MARKET CONDITIONS

| Borrower: NORRIS | | File No.: 205-506 |
| Property Address: 700 ARCTIC FOX RUN | | Case No.: |
| City: MADISONVILLE | State: LA | Zip: 70447-9592 |
| Lender: BROKER'S HOME, LLC | | |

ON 8/29/05, THE NEW ORLEANS METROPOLITAN AREA EXPERIENCED CATASTROPHIC DAMAGES CAUSED BY HURRICANE KATRINA. LARGE PORTIONS OF THE EASTBANK OF ORLEANS, SOUTHERN PORTIONS OF ST. TAMMANY PARISH, ALL OF ST. BERNARD PARISH, AND ALL OF LOWER PLAQUEMINES PARISH WERE INUNDATED WITH FLOODING. MOST OTHER AREAS OF THE METROPOLITAN AREA EXPERIENCED WIND DAMAGE OF VARYING DEGREES. THE CITY AND SURROUNDING AREA WERE ALL EVACUATED. THE LONG RANGE EFFECTS ON POPULATION FIGURES AND EMPLOYMENT DATA ARE UNKNOWN. IT IS EXPECTED THAT THE AREA WILL EXPERIENCE A NEAR TERM DECLINE IN POPULATION, AS MANY RESIDENTS WILL RELOCATE DUE TO LACK OF HOUSING, LIMITED AVAILABILITY OF OPEN SCHOOLS, LOSS OF EMPLOYMENT, AND OTHER FACTORS DIRECTLY RELATED TO THIS EVENT.

THE OVERALL ELEVATION OF THE AREA IS VERY FLAT AND IS AT OR BELOW MEAN SEA LEVEL. THE AREA WAS TO BE PROTECTED FROM FLOODING BY A LEVEE SYSTEM. MOST OF THE LEVEE SYSTEMS WERE SUCCESSFUL. SEVERAL AREAS, HOWEVER, WERE HEAVILY FLOODED DUE TO BREACHES IN LEVEE SYSTEMS AND TIDAL SURGE FROM HURRICANE KATRINA. THE MOST HEAVILY IMPACTED AREAS WERE THE EAST BANK OF THE CITY OF NEW ORLEANS, LOWER PLAQUEMINES PARISH, AND ALL OF ST. BERNARD PARISH.

THE OVERALL INCREASE IN POPULATION FROM 1990-2000 IS ATTRIBUTABLE TO THE INCREASE OF POPULATION IN THE NORTHSHORE AREA. OVERALL EMPLOYMENT IN THE AREA HAS EXPERIENCED MODERATE GAINS. THE LONG RANGE IMPACT OF LOSSES INCURRED FROM HURRICANE KATRINA HAVE YET TO BE DETERMINED. MANY ESTIMATES CALL FOR THE LOSS OF OVER 100,000 JOBS DUE TO THE SHIFT OF POPULATION.

THE IMPACT OF THE STORM HAS YET TO BE DETERMINED. POPULATION FIGURES AND EMPLOYMENT RATES ARE CURRENTLY IN A STATE OF FLUX. WHILE A LARGE NUMBER OF RESIDENTS ARE HOMELESS, AREAS WHICH EXPERIENCED NO FLOODING ARE EXPERIENCING STRONG DEMAND IN TERMS OF RESIDENTIAL HOUSING AND NEIGHBORHOOD COMMERCIAL USE. IT HAS BEEN REPORTED IN THE PRESS THAT THE AREA CAN EXPECT TO SEE A LOSS OF SEVERAL HUNDRED THOUSAND RESIDENTS AS A RESULT OF THE DEVASTATION EXPERIENCED IN SOME AREAS BECAUSE OF THE FLOODING EXPERIENCED FOLLOWING THIS STORM.

THE INTERMEDIATE AND LONG TERM EFFECT ON THE LOCAL REAL ESTATE MARKET CAUSED BY HURRICANE KATRINA CANNOT, AS YET, BE MEASURED OR QUANTIFIED. UNTIL THERE ARE: 1) A LONG TERM RECOVERY AND RECONSTRUCTION PLAN; 2) SOME FACTUAL DEMOGRAPHIC DATA REGARDING RE-POPULATION OF AND EMPLOYMENT IN THE AREA; AND 3) EMPIRICAL MARKET DATA OF POST FLOOD SALES/LEASING ACTIVITY APPLICABLE TO THE SUBJECT PROPERTY, ANY PREDICTIONS WOULD BE HIGHLY SPECULATIVE.

MARKET VALUES IN THE UNAFFECTED AREAS OF ST. TAMMANY PARISH HAVE INCREASED DRAMATICALLY SINCE THE STORM AS MANY OF THE DISPLACED RESIDENTS OF ORLEANS, ST. BERNARD, AND PLAQUEMINES PARISH RELOCATED TO SEEK VIABLE HOUSING. PUBLISHED REPORTS IN LOCAL NEWSPAPERS HAVE ESTIMATED THAT ST. TAMMANY PARISH COULD INSTANTLY ABSORB AN ADDITIONAL 50,000 HOUSING UNITS TO SATISFY THE DEMAND OF THE INCREASED POPULATION. THIS HAS CAUSED TREMENDOUS UPWARD PRESSURE ON VALUES AND THE TREND IS EXPECTED TO CONTINUE FOR THE FORESEEABLE FUTURE.

FOR THOSE PROPERTIES LIKE THE SUBJECT THAT WERE NOT DAMAGED BY THE EVENT, IT SEEMS REASONABLE TO CONCLUDE THAT THE SHORT TERM OUTLOOK IS REASONABLY GOOD. BECAUSE OF THE MANY PROPERTIES THAT WERE TAKEN OUT OF COMMERCE, DEMAND FOR PROPERTIES THAT ARE PHYSICALLY AND FUNCTIONALLY VIABLE APPEARS TO BE SUBSTANTIALLY ENHANCED.

THE EFFECTIVE DATE OF THIS APPRAISAL ASSIGNMENT IS SUBSEQUENT TO THE ARRIVAL OF HURRICANE KATRINA. THE APPRAISER HAS RESEARCHED AND ANALYZED ALL REASONABLY AVAILABLE DATA TO ARRIVE AT AN ACCURATE APPRAISAL OF THE SUBJECT PROPERTY. THE READER/USER IS CAUTIONED THAT AS ADDITIONAL POST-KATRINA DATA BECOMES AVAILABLE, THE VALUE CONCLUSIONS IN THIS REPORT MAY BE SUBSTANTIALLY AFFECTED.

SUBJECT PROPERTY PHOTO ADDENDUM

| Borrower: NORRIS | | File No.: 205-506 | |
|---|---|---|---|
| Property Address: 700 ARCTIC FOX RUN | | Case No.: | |
| City: MADISONVILLE | State: LA | | Zip: 70447-9592 |
| Lender: BROKER'S HOME, LLC | | | |



**FRONT VIEW OF
SUBJECT PROPERTY**

Appraised Date: August 4, 2006
Appraised Value: $ 320,000



**REAR VIEW OF
SUBJECT PROPERTY**



**STREET SCENE**

SUBJECT PHOTOGRAPH ADDENDUM

| | | |
|---|---|---|
| Borrower: NORRIS | File No.: 205-506 | |
| Property Address: 700 ARCTIC FOX RUN | Case No.: | |
| City: MADISONVILLE | State: LA | Zip: 70447-9592 |
| Lender: BROKER'S HOME, LLC | | |



INTERIOR

Comments:



INTERIOR

Comments:



INTERIOR

Comments:



INTERIOR

Comments:

SUBJECT PHOTO ADDENDUM

| Borrower: NORRIS | | File No.: 205-506 | |
| --- | --- | --- | --- |
| Property Address: 700 ARCTIC FOX RUN | | Case No.: | |
| City: MADISONVILLE | State: LA | | Zip: 70447-9592 |
| Lender: BROKER'S HOME, LLC | | | |



INTERIOR

Comments:



ALTERNATE REAR VIEW

Comments:



ALTERNATE FRONT VIEW

Comments:



ALTERNATE STREET VIEW

Comments:

**FLOORPLAN**

| | | |
|---|---|---|
| Borrower: NORRIS | | File No.: 205-506 |
| Property Address: 700 ARCTIC FOX RUN | | Case No.: |
| City: MADISONVILLE | State: LA | Zip: 70447-9592 |
| Lender: BROKER'S HOME, LLC | | |



Sketch by Apex IV™

Comments:

## AREA CALCULATIONS SUMMARY

| Code | Description | Net Size | Net Totals |
|---|---|---|---|
| GLA1 | First Floor | 2571.32 | 2571.32 |
| P/P | Open Patio | 165.99 | 165.99 |
| GAR | Garage | 506.25 | 506.25 |

Net LIVABLE Area   ( Rounded )   2571

## LIVING AREA BREAKDOWN

| Breakdown | Subtotals |
|---|---|
| First Floor | |
| 23.65 x 54.50 | 1288.93 |
| 2.50 x 10.95 | 27.38 |
| 1.95 x 39.90 | 77.81 |
| 18.80 x 36.20 | 680.56 |
| 7.20 x 7.25 | 52.20 |
| 8.70 x 35.30 | 307.11 |
| 3.30 x 6.50 | 21.45 |
| 9.50 x 12.20 | 115.90 |

8 Items   ( Rounded )   2571

732 BEHRMAN HWY., SUITE A, GRETNA, LA 70056   PHONE: 504.392.9465  FAX: 504.392.9469

COMPARABLE PROPERTY PHOTO ADDENDUM

| Borrower: NORRIS | | File No.: 205-506 |
| Property Address: 700 ARCTIC FOX RUN | | Case No.: |
| City: MADISONVILLE | State: LA | Zip: 70447-9592 |
| Lender: BROKER'S HOME, LLC | | |



**COMPARABLE SALE #1**

704 ARCTIC FOX RUN
MADISONVILLE, LA
Sale Date: 6/16/2006
Sale Price: $ 303,899



**COMPARABLE SALE #2**

113 RED FOX RUN
MADISONVILLE, LA
Sale Date: 4/7/2006
Sale Price: $ 315,000



**COMPARABLE SALE #3**

109 RED FOX RUN
MADISONVILLE, LA
Sale Date: 2/13/2006
Sale Price: $ 310,000

**LOCATION MAP**

| | |
|---|---|
| Borrower: NORRIS | File No.: 205-506 |
| Property Address: 700 ARCTIC FOX RUN | Case No.: |
| City: MADISONVILLE | State: LA   Zip: 70447-9592 |
| Lender: BROKER'S HOME, LLC | |



# Exhibit 2

# Exhibit 3





# Exhibit 4

# Exhibit 5

# Exhibit 6

# Exhibit 7

# Exhibit 8

# Exhibit 9

# Exhibit 10

# Exhibit 11

# Exhibit 12

# Exhibit 13

# Exhibit 14

# Plaintiff Fact Sheet

Plaintiff:   Michael and Nicole Norris

Property Address:  700 Arctic Fox Run, Madisonville, LA 70447

## Question #18 Itemization (Personal Property Damage)

| # | Description of Damaged Item | Value ($) |
|---|---|---|
| 1 | 3 Ton Central Air/Heat | $5900.00 |
| 2 | 3 Ton Central Air/Heat | $5900.00 |
| 3 | GE Profile Arcita refrigerator | $2789.99 |
| 4 | GE Profile washer and dryer | $1484.00 |
| 5 | Hunter celling fan | $131.99 |
| 6 | | |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |

| 17 | | |
|----|----|----|
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |
| 29 | | |
| 30 | | |
| 31 | | |
| 32 | | |
| 33 | | |
| 34 | | |
| 35 | | |

Total: $ 16205.98