UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| In Re: **CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL 2047** |
|---|---|
| | **SECTION "L"** |
| **This document relates to:** | |
| ***Elizabeth Bennett, et al v. Gebr. Knauf Verwaltungsgesellschaft, KG, et al*** | **JUDGE ELDON FALLON** |
| **Case No. 14:cv-2722** | **MAGISTRATE JOSEPH WILKINSON, JR.** |

**MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT
ON CLAIMS ASSERTED BY JAMES BLEVINS**

**MAY IT PLEASE THE COURT:**

Defendants, Knauf Gips KG and Knauf Plasterboard (Tianjin) Co., Ltd. (the "Knauf Defendants"), through undersigned counsel, respectfully submit this Memorandum in Support of their Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as to the claims asserted by James Blevins ("Blevins") against them in Plaintiffs' Fifth Amended Class Action Complaint (the "Fifth Amended Complaint").

I.    **Factual and Procedural Background**

A.    *MDL 2047 and the Bennett Complaint*

From 2004 through 2006, a housing boom in parts of the United States and rebuilding efforts necessitated by Hurricanes Rita and Katrina in the Gulf South led to a shortage of construction materials, including drywall. As a result, drywall manufactured in China was brought into the United States and used to construct and refurbish homes in coastal areas of the country,

notably the Gulf and East Coasts. Sometime after the Chinese drywall was installed, homeowners began to complain of foul-smelling odors, the corrosion and blackening of metal wiring, surfaces, and objects, and the breaking down of appliances and electrical devices in their homes. *See In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 894 F. Supp. 2d 819, 829–30 (E.D. La. 2012), *aff'd*, 742 F.3d 576 (5th Cir. 2014). Many of these homeowners also began to complain of various physical afflictions believed to have been caused by the Chinese drywall.

These homeowners then began to file suit in various state and federal courts against homebuilders, developers, installers, realtors, brokers, suppliers, importers, exporters, distributors, and manufacturers who were involved with the Chinese drywall. Because of the commonality of facts in the various cases, this litigation was designated as a multidistrict litigation. Pursuant to a Transfer Order from the United States Judicial Panel on Multidistrict Litigation ("JPML") on June 15, 2009, all federal cases involving Chinese drywall were consolidated for pretrial proceedings in MDL 09-2047 before this Court.  On June 16, 2009, this Court entered PTO 1 regarding preservation of evidence, amongst other things. On October 9, 2009, this Court entered PTO 1(B) regarding preservation of evidence.   On January 24, 2012, this Court entered PTO 1(I) regarding preservation of evidence.

 Since the inception of MDL 2047 in June of 2009, numerous cases have been consolidated, containing thousands of claims; over 20,000 records docs have been entered into the record, millions of documents exchanged in discovery, dozens of depositions, and over 30 Pretrial Orders have been issued; the Court has appointed steering committees and liaison counsel for plaintiffs, homebuilders, insurers, installers, and manufacturers; it has presided over monthly status conferences, hearings, and several bellwether trials.[1]

---

[1] *See* Order, R. Doc. No. 16570, pp. 3-4.

B.     *The Bennett Complaint and Blevins*

The original Bennett Complaint was filed on November 13, 2014 in the Northern District of Alabama and was subsequently transferred and consolidated into MDL 2047. The Complaint was amended multiple times to amend the parties and claims.  Blevins was named in the Fifth Amended Complaint that was filed on May 14, 2018. The Fifth Amended Complaint is the operative complaint in this matter.

Blevins is a plaintiff in the operative Fifth Amended Complaint and has made claims against Knauf Gips KG and KPT regarding the alleged presence defective Chinese drywall installed in his property located at 2636 SE 19th Place, Cape Coral, FL 33904 (the "Property").  In conducting discovery in this MDL and in Bennett, this Court approved a Plaintiff Profile Form, Supplemental Plaintiff Profile Form, and Plaintiff Fact Sheet to be completed by Plaintiffs and set forth full and complete answers regarding the claims and damage amounts sought by all Bennett Plaintiffs.  Blevins completed and submitted a PPF, SPPF, and PFS. The documents were completed under penalty of perjury. *See* Exhibits A (PPF), B (SPPF), and C (PFS).

Blevins bought the lot on which the Property was built on June 15, 2004 and subsequently constructed a house on the lot. *See* Warranty Deed attached to Exhibit B, SPPF; *see also* Exhibit D, Blevins Depo., at 11:11-16.  Blevins moved out of the Property after deciding to move to South Carolina. Exhibit D, Blevins Depo., at 24:13-25:9, 27:25-28:5.  Blevins asserts that he first became aware that Chinese Drywall had been installed in the Property in August 2017. *See* SPPF, Exhibit B, at 2.   Blevins also testified, however, that he had decided to move out of the Property before the discovery of Chinese drywall. *See* Exhibit D, Blevins Depo., at 27:25-28:5. Blevins chose to move to South Carolina because he and his new wife, Merla Blevins, had visited Merla's cousin in South Carolina and had enjoyed it there. *See id.* at 27:17-21; *see also id.* at 25:23-24. Blevins'

plan was to move out of the property, take his RV to South Carolina, and "take [his] time to buy up there." *See id.* at 27:25-28:5.

As to his damages claims, Blevins has stated that he experienced loss of use/loss of enjoyment damages of $275,000. *See* Exhibit B, SPPF, at 6. The sole basis for claiming this amount is by multiplying $25,000 times twelve years. *See* Exhibit D, Blevins Depo., at 46:4-48:1. Blevins amended this amount at his deposition to claim $24,000 per year for twelve years. *See id.* at 47:4-9. Blevins also claims a diminution in property value of $283,866, *see* Exhibit B, SPPF, at 6, but his sole support for this claim is that the tax assessor lowered the value of the Property to $0 for tax purposes, *see* Exhibit D, Blevins Depo., at 48:21-52:2. Blevins was responsible for the decision by the assessor to lower the value of the property to $0 for tax purposes. *See id.* at 51:4-14. Additionally, Blevins claims $33,610.55 in alternative living expenses, *see* Exhibit C (PFS), at 5 (Response to Question 21), but all of the claims for damages related solely to his property in South Carolina, *see, e.g.*, Exhibit D, Blevins Depo., at 82:13-15.

Blevins stated that he has documents from his mortgage as well as the certificate of livability he received when he took over the house after it was built, but those documents have not been produced. *See* Exhibit D, Blevins Depo., at 12:9-14:4.[2] Other than a second drywall inspection report (which was subsequently provided to the Knauf Defendants), Blevins testified that everything he provided to his attorney in support of his claims had been attached to Exhibits A, B, and C. *See id.* at 22:13-23:23; *see also id.* at 20:12-16. Blevins also testified, however, that he has credit card statements supporting his claim for interest, but he has not produced those statements. *See* Exhibit D, Blevins Depo., at 72:4-73:2. Blevins testified that he had multiple

---

[2] The questions pertained to a Notice of Deposition, which is attached as Exhibit E.

documents and other information that might support claims for his "old house" in Florida, but none of that information or those documents have been produced. *See, e.g.*, *id.,* at 78:6-82:15.

With respect to his individual property damage claims, Blevins submitted an itemization totaling $3645.00. *See* Exhibit 14 to Exhibit C (PFS). None of the items on his itemization were repaired, and many were still functioning. *See* Exhibit D, Blevins Depo., at 83:25-84:17, 87:14-17. Blevins' only support for the assigned "values" on his itemization were (as to his air conditioner) an uncertain recollection of a verbal estimate provided at some point in the past or, (as to his microwave) an uncertain online estimate that he purports to have looked up at one point and that concerned generally "built-in" microwaves, and (with respect to the other items) a guess he formulated based on his experience as a "jack-of-all-trades." *See id.* at 84:18-85:8 (air conditioning air handler and coils), 86:4-23 (electrical components), 87:21-23 (two fans and four light fixtures), 90:1-6 (plumbing fixtures), 91:21-92:2 (microwave), 93:14-93:24 (microwave), 94:3-15 (mirrors); *see also id.* at 91:5-20.

## II.     Legal Standards

### A.     *Rule 56 Summary Judgment Standard*

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is required if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] "A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[4]

When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the

---

[3] FED. R. CIV. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

[4] *Bennett v. Hartford Ins. Co. of Midwest*, 890 F.3d 597, 604 (5th Cir. 2018) (quoting *Johnson v. World All. Fin. Corp.*, 830 F.3d 192, 195 (5th Cir. 2016) (internal quotation marks omitted)).

movant bears the burden of proof at trial.[5]   However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[6]

On a motion for summary judgment, "[a]lthough 'the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor,' summary judgment remains appropriate if the non-movant's evidence is 'merely colorable' or 'not significantly probative.'"[7]   "Only when 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party' is a full trial on the merits warranted."[8]   Furthermore, "[d]iscovery is not a prerequisite to the disposition of a motion for summary judgment."[9]   "If it appears that further discovery will not provide evidence creating a genuine issue of material fact, the district court may grant summary judgment."[10]

---

[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2558, 91 L.Ed.2d 265 (1986).

[6] *Id.* at 322; *see also Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir. 1993).

[7] *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.,* 892 F.3d 167, 170 (5th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)).

[8] *Lindsey v. Sears Roebuck & Co*., 16 F.3d 616, 618 (5th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249).

[9] *Carder v. Cont'l Airlines, Inc*., 595 F. App'x 293, 299 (5th Cir. 2014) (quoting *Skiba v. Jacobs Entm't Inc*., 587 Fed. Appx. 136, 138 (5th Cir. 2014) (per curiam)).

[10] *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (citing *Access Telecom, Inc. v. MCI Telecomm. Corp*., 197 F.3d 694, 720 (5th Cir.1999); *see also Washington v. Allstate Ins. Co*., 901 F.2d 1281, 1285 (5th Cir.1990) ("This court has long recognized that a plaintiff's entitlement to discovery prior to a ruling on a motion for summary judgment is not unlimited, and may be cut off when the record shows that the requested discovery is not likely to produce the facts needed by the plaintiff to withstand a motion for summary judgment.").

III.     **Argument**

Plaintiff's claims are due to be dismissed because Plaintiff has not and cannot provide competent evidence to support his damages claims. First, as to all of Plaintiff's claims for damages relative to his property in South Carolina, Plaintiff plainly testified that he decided to move to South Carolina before he learned the Property contained Chinese Drywall. Second, with respect to Plaintiff's claim for loss of use/loss of enjoyment, there is no evidence that Plaintiff left the house until after he decided to move to South Carolina; indeed, the only evidence on this claim is Blevins' counsel provided a formula that Blevins subsequently applied. Third, as to all amounts that Blevins might have claimed with respect to the Property (other than for personal property), Blevins testified that he has possession of documents that would potentially bear on those claims, but he has not produced them. Finally, as to Plaintiff's claim for personal property amounts, Blevins provided no competent support for the values he assigned to those items, resting instead on speculative recollections or (in most cases) his own guesses. Blevins' claim should be dismissed.

A.     **Blevins cannot recover for any damages relative to moving to South Carolina.**

As with other torts, causation is an essential element on property-damage and products-liability claims. *See, e.g.*, *Gringauz v. Sherwin-Williams Co.*, Case No. 09-60197-COV-DIMITROULEAS, 2010 WL 11530661, at *6 (collecting cases). As to his claims for damages arising out of his expenses in South Carolina, Blevins cannot succeed in showing that those alleged damages were "caused" by Chinese Drywall. Rather, Blevins plainly testified that he and his new wife decided independently of Chinese Drywall to move to South Carolina. *See* Exhibit D, Blevins Depo., at 27:17-28:5. Blevins cannot claim that his expenses in South Carolina were caused by Chinese Drywall; thus, his claim for those expenses should be dismissed.

**B.** **There is no evidence to support that Blevins experienced any loss of use/loss of enjoyment.**

"[L]oss-of-use damages can be an element of compensatory damages when the damage is to personal property and the damage amounts to less than total destruction of the property." *See MCI Worldcom Network Servs., Inc. v. Mastec, Inc.*, 995 So. 2d 221, 223 (Fla. 2008). "However, the purpose of compensatory damages is to compensate, not to punish defendants or bestow a windfall on plaintiffs." *See id.* at 224 (internal quotations omitted) (citing *Cooperative Leasing, Inc. v. Johnson*, 872 So. 2d 956, 958 (Fla. Dist. Ct. App. 2004)). If a plaintiff did not actually lose any use of the property at issue, he or she cannot recover for loss of use. *See id.* at 229 ("Because MCI did not actually suffer the loss of use of its telecommunications service, damages for loss of use measured by the rental replacement value would result in a windfall to MCI. Any damages to MCI based on rental replacement are theoretical.").

Here, Blevins testified that the only basis for his "loss of use" claim was a formula provided by his attorney. *See* Exhibit D, Blevins Depo., at 46:4-48:1. Indeed, there is no evidence that Blevins lost any intended use of the home; the indisputable testimony is that he only left the home when he and his wife decided—independently of any consideration of Chinese Drywall—to move to South Carolina. *See id.* at 27:17-28:5. Because Blevins has not provided and cannot provide any evidence to support his claim for loss of use, that claim should be dismissed. *See, e.g.*, *MCI Worldcom Network Servs., Inc.*, 995 So. 2d at 223.

**C.** **Blevins has not provided any information to support any Florida-based damages for the Property.**

Blevins admittedly did not initially make any claim for amounts related to his "old house" in Florida. *See, e.g.*, Exhibit D, Blevins Depo., at 78:6-82:15. During his deposition, Blevins stated that he "apparently would" be making such a claim and that the supporting information would be

provided. *See id.* No documentation or information on any amounts relative to Plaintiff's Florida home have been received; thus, those claims should be dismissed.

Relatedly, Plaintiff cannot succeed on his diminution claim. The sole support that Plaintiff has for this claim is that the property assessor lowered the value of his property to $0 for tax purposes. *See id.*, at 48:21-52:2. But Blevins was responsible for the decision by the assessor to lower the value of the property to $0. *See id.* at 51:4-14. Blevins has no competent evidence to support that his property was diminished in value—much less that it was actually diminished in value to $0—and this claim should be dismissed. *See, e.g.*, *Davenport v. Thor Motor Coach, Inc.*, Case No. 3:14-cv-537-J25-PDB, 2015 WL 13021664, at *8 (M.D. Fla. Aug. 6, 2015) (explaining in the context of a breach-of-warranty claim concerning a newly purchased vehicle that a plaintiff had failed to provide any evidence of diminution from "someone specifically trained and experienced in the industry" and that consequently the claim for diminution should be dismissed).

**D.    Plaintiff has not provided documentation to support his claims for personal-property damage.**

Despite repeated requests for documentation to support his claims for damage to personal property items, Blevins has not provided anything other than his one-page itemization. *See* Exhibit 14 to Exhibit C (PFS), Even more, the values on that itemization are not supported by competent evidence: the "value" assigned to his air conditioner was based on an estimate about which Blevins could not remember the details, the "value" assigned to his microwave was based on an uncertain recollection of a general search for built-in microwaves, and the "values" assigned to the other items were based solely on Blevins' guesses formed from years as a "jack-of-all-trades." *See* Exhibit D, Blevins Depo., at 84:18-85:8 (air conditioning air handler and coils), 86:4-23 (electrical components), 87:21-23 (two fans and four light fixtures), 90:1-6 (plumbing fixtures), 91:21-92:2 (microwave), 93:14-93:24 (microwave), 94:3-15 (mirrors); *see also id.* at 91:5-20. Plaintiff has

not provided and cannot now provide documentation to support these claims; thus, as with his other damages claims, the claims for damage to personal property should be dismissed.

## IV.  Conclusion

Based on all the discovery in MDL 2047 and the case-specific discovery as to Blevins, the facts do not support any claims against the Knauf Defendants.  Blevins cannot substantiate any of the facts forming the basis of the claims against the Knauf Defendants, and there is no genuine issue material fact preventing summary judgment.  Therefore, this Court should grant summary judgment, dismissing the claims with prejudice.

Respectfully submitted,

**FISHMAN HAYGOOD, LLP**

/s/ *Kerry J. Miller*

**KERRY J. MILLER (#24562), T.A.**
**PAUL C. THIBODEAUX (#29446)**
**DANIEL J. DYSART (#33812)**
201 St. Charles Avenue, Suite 4600
New Orleans, LA  70170
Telephone:    504.556.5549
Facsimile:    504.310.0275
Email:          kmiller@fishmanhaygood.com
***Counsel for Defendants,***
***Knauf Gips KG and***
***Knauf Plasterboard (Tianjin) Co., Ltd.***

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served upon Russ Herman, Plaintiffs' Liaison Counsel, by email, to all parties by electronically uploading the same to LexisNexis File & Serve in accordance with Pre-Trial Order No. 6, individually to pro se claimants via U.S. Mail, and that the foregoing was filed with the Clerk of Court of the United States Court for the Eastern District of Louisiana, on this 7th day of January, 2020.

/s/ *Kerry J. Miller*

**KERRY J. MILLER**