UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047<br><br>SECTION: L |
| THIS DOCUMENT RELATES TO:<br><br>*Elizabeth Bennett, et al. v. Gebrueder Knauf Verwaltungsgesellschaft, KG, et al.*<br>2:14-cv-02722-EEF-JCW | JUDGE ELDON FALLON<br><br>MAG. JUDGE WILKINSON |

**PLAINTIFFS ISIDRO & MARFELIA CALDERON'S OPPOSITION TO DEFENDANT
KNAUF'S MOTION FOR SUMMARY JUDGMENT**

# Table of Contents

**Page**

I.    Statement of Material Facts ………………………………………………   5

     A.    MDL-2047…………………………………………………………….   5

     B.    The *Bennett* Class Action ………………………...………………….   7

     C.    Plaintiffs Isidro & Marfelia Calderon in the
          *Bennett* Complaint…………………………………………………….   8

II.   Standard of Review ……………………………………………………….   9

III.  Argument ………………………………………………………………….   10

     A.    Plaintiffs' Claims Are Timely Filed Under Florida's
          Delayed Discovery Rule …………………………………………….   11

          i.    *Product liability claims are subject to the delayed
               discovery rule in Florida*……………………………………….   12

          ii.    *Defective Chinese-manufactured drywall is a
               latent defect and Plaintiffs had no obligation
               to hire a Chinese drywall inspector before the
               date of discovery* ……………………………………………….   14

          iii.    *Knauf had a duty to warn Plaintiffs regarding
               defective nature of its drywall after the sale,
               but chose to remain silent* ……………………………………….   15

          iv.    *All Florida Plaintiffs' Claims Are Protected By The
               Equitable Tolling Principles Decided By The U.S.
               Supreme Court In American Pipe if filed on or before
               February 7, 2013*……………………………………………….   19

     B.    Plaintiffs' Loss of Use & Enjoyment Claim is Appropriate
          Under Florida Law……………………………………………………...   20

     C.    A Genuine Issue of Material Fact Exists for Plaintiffs'
          Personal Property & Diminution In Value Claims…………………….   21

IV.   Conclusion ………………………………………………………………..   23

Table of Authorities

**Page**

*American Pipe & Const. Co. v. Utah*,
    414 U.S. 538 (1974)                    20

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)                    9

*Babush v. Am. Home Products Corp.*,
    589 So.2d 1379 (Fla. Dist. Ct.App. 1991)    12

*Bailey v. Missouri P.R. Co.*,
    383 So. 2d 397, 1980 La. App. LEXIS 3636 (1980)    23

*Brito v. County of Palm Beach*,
    753 So.2d 109 (Fla. 4th DCA 1998)    19

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)    9

*Clark v. Coats & Clark, Inc.*,
    929 F.2d 604 (11th Cir. 1991)    9

*Davis v. Monahan*,
    832 So.2d 708 (Fla. 2002)    12, 13

*Felix v. Hoffmann-LaRoche, Inc.*,
    540 So.2d 102 (Fla.1989)    19

*Fitzpatrick v. City of Atlanta*,
    2 F.3d 1112 (11th Cir. 1993)    9

*Gallick v. B O R.R.*,
    83 S.ct. 659 (U.S. 1963)    24

*Griffin v. Singletary*,
    17 F.3d 356 (11th Cir. 1994)    20

*Hamrac v. Dorel Juvenile Grp., Inc.*, No. 3:09vd390/RV/MD,
    2010 WL 1879278 (N.D. Fla. May 11, 2010)    12, 13

*Hawkins v. Champion Int'l. Corp.*,
    662 So.2d 1005 (Fla. 1st DCA 1995)    14

*High v. Westinghouse Elec. Corp.*,
    610 So.2d 1259 (Fla. 1992)    16

*In Re Chinese Manufactured  Drywall Prod. Liab. Liti.*,    22, 23

706 F. Supp. 2d 655 (E.D. La. 2010)

*In re Depuy Orthopedics, Inc.*,          22
    870 F.3d 345 (5th Cir. 2017)

*Lloyds Underwriters at London v. Keystone Equipment Finance Corp.*,   17
    25 So.3d 89 (Fla. 4th DCA 2009)

*Masker v. Smith*,      14
    405 So.2d 432 (Fla. 5th DCA 1981)

*McCreary v. Florida Residential Property and Casualty*   20
*Joint Underwriting Association,*
    758 So.2d 692 (4th Dist. Ct.App. 1999)

*Mid-Continent Casualty Company v. Adams Homes of*   21
*Northwest Florida, Inc.*,
    725 F.App'x. 777 (11th Cir. 2018)

*Raie v. Cheminova, Inc.*,      20
    336 F.3d 1278 (11th Cir. 2003)

*Samson v. R.J. Reynolds Tobacco Co.*,   12
    No. 96-414-CIV-T-24(B), 1997 WL 373475
    (M.D. Fla. June 2, 1997)

*Sta-Rite Indus., Inc. v. Levey*,   16
    909 So.2d 901 (Fla. 3d DCA 2004)

*State v. Harris*,      17
    881 So.2d 1079 (Fla. 2004).
*Tolan v. Cotton*,     9
    134 S. Ct. 1861 (2014)

*Univ. of Miami v. Bogorff*,   12
    583 So.2d 1000 (Fla. 1991)

Fed. R. Civ. P. 56(a)      9
Fla. Stat. § 95.031      12, 13
Fla. Stat. § 95.11      11
5C Michie's Jurisprudence, Damages, § 32 (2006)   20
Restatement (Second) of Torts § 929 (1979)   20
Restatement (Third) of Torts: Products Liability § 2   16, 19

Plaintiffs Isidro & Marfelia Calderon, by and through the undersigned counsel of record, oppose the motion for summary judgment filed by the Knauf Defendants.  As grounds, Plaintiffs offer the following:

## I.    STATEMENT OF MATERIAL FACTS

### A.  MDL-2047.

This litigation arises from alleged property damage and caused by the presence of Chinese drywall in homes and other buildings. Hurricanes Katrina and Rita devastated the Gulf Coast in 2005. These disasters, coinciding as they did with a boom in new housing construction, helped precipitate a shortage of drywall for the construction and reconstruction of homes in the United States. As a result, from approximately 2005 to 2008, Chinese drywall entered the United States market, changing hands in the chain of commerce, and ultimately finding its way into thousands of homes and buildings in the United States, primarily in Florida, Louisiana, Alabama, Mississippi, Texas, and Virginia.  Sometime after the installation of Chinese drywall in these properties, homeowners, residents, and occupants began to notice and complain of odd odors, corrosion of metal components, failure of electronics and appliances, and in some cases, physical ailments, such as nose bleeds, skin irritation, and respiratory problems. In response to these complaints, a number of governmental agencies and special interest groups, notably the federal Consumer Products Safety Commission and the Department of Housing and Urban Development, began to investigate, conduct testing, and issue remediation protocols related to Chinese drywall.

The present litigation commenced with the filing of lawsuits in 2009 in both federal and state courts by property owners and occupants damaged by the Chinese drywall installed in their residences and businesses, in addition to suits filed by some homebuilders who repaired these

properties. Defendants and declaratory judgment plaintiffs include homebuilders, developers, installers, retailers, realtors, brokers, suppliers, importers, exporters, and distributors, as well as their insurers and the insurers of homeowners, who were involved with the Chinese drywall in the affected properties. Because of the commonality of facts in the various federal lawsuits, the litigation was designated as Multi-District Litigation 2047 by the Judicial Panel on Multidistrict Litigation. On June 15, 2009, the Panel transferred all federal actions alleging damages from Chinese drywall to the U.S. District for the Eastern District of Louisiana for coordinated and consolidated proceedings.

Since the inception of MDL 2047, numerous cases were consolidated, containing thousands of claims; in addition, the Court issued numerous opinions, pretrial orders, and minute entries; the Court has facilitated mediations; and in the Court thousands of documents have been filed. Additionally, the Court has corresponded and coordinated with a number of state and federal court judges who also preside over related Chinese drywall cases.  The discovery revealed that the manufacturers of the drywall in question generally fell into two groups: the Knauf entities[1] and the Taishan entities[2]. After one of the Taishan entities was held in preliminary default, the Court conducted a bellwether evidentiary default hearing.  Shortly thereafter, the Court held its first bellwether, bench trial involving the Knauf entities. With regard to these bellwether proceedings, the Court issued detailed findings of fact and conclusions of law, concluding that the Chinese drywall at issue was in fact defective due to its release of

---

[1]  The term "Knauf entities" includes: Knauf Plasterboard (Tianjin) Co., Ltd. ("KPT"), Knauf Plasterboard (Wuhu) Co., Ltd., Guangdong Knauf New Building Material Products Co., Ltd., Knauf Gips KG, Gebr. Knauf Verwaltungsgesellschaft KG, Knauf International GmbH, Knauf Insulation GmbH ("KI"), Knauf UK GmbH, Knauf AMF GmbH & Co. KG, Knauf do Brasil Ltda. and PT Knauf Gypsum Indonesia.

[2]  The term "Taishan entities" includes: Taishan Gypsum Co. Ltd. and Taian Taishan Plasterboard Co. Ltd., among others.

corrosive gasses, requiring remediation of properties containing this drywall. The Court also issued a remediation protocol.

An initial settlement was reached in the Knauf portion of the litigation in October 2010, when the PSC and the Knauf entities entered into a Court-approved pilot program for remediation of homes containing drywall manufactured by Knauf. The pilot program led to a broader settlement agreement that extended the pilot program and provided remediation benefits to plaintiffs with filed claims.  On December 11, 2012, the final Knauf-related agreement, labeled, "Third Amended Settlement Agreement Regarding Claims Against the Knauf Defendants In MDL No. 2047" was filed with the Court.  A preliminary approval of the agreement was issued at the time, but no fairness hearing was immediately held and no certification of a proposed class was approved.  Instead, the Court later held a consolidated fairness hearing for the five interrelated settlements: L&W; Banner; INEX; Global; and Knauf. Ultimately, on February 7, 2013, the Court certified a settlement class that included the Knauf entities and notice was published.  The Knauf settlement class provided benefits to participants limited to remediation.  All other claims were omitted including those claims for personal property, negligence, strict liability, consumer protection acts, nuisance, unjust enrichment, or non-pecuniary claims were settled with the Knauf entities.

### B.  The *Bennett* Class Action.

The original *Bennett* Complaint was filed on November 13, 2014, in the United States District Court for the Northern District of Alabama and was subsequently transferred and consolidated into MDL 2047 via a conditional transfer order issued by the Judicial Panel on Multidistrict Litigation. The Complaint was amended multiple times, primarily to amend the parties.  The Fifth Amended Class Action Complaint was filed on March 6, 2018, and includes

the following claims: 1) negligence; 2) negligence per se; 3) strict liability; 4) breach of express and/or implied warranty; 5) Redhibition (by Louisiana plaintiffs); 6) Louisiana Products Liability Act (by Louisiana plaintiffs); 7) private nuisance; 8) negligent discharge of a corrosive substance; 9) unjust enrichment; 10) violation of consumer protection acts; 11) equitable injunctive relief and medical monitoring.  In the prayer for relief, Plaintiffs seek: certification of the class action; order appointing named plaintiffs as class representatives; compensatory, statutory, and/or punitive damages; pre- and post-judgment interest as allowed by law; injunctive relief; an award of attorney's fees as allowed by law; and award of taxable costs; and, any other relief a court deems just and proper.  This Court approved the Fifth Amended Class Action Complaint on May 14, 2018.

### C.  Plaintiffs Marfelia & Isidro Calderon in the *Bennett* Complaint.

Plaintiffs Marfelia and Isidro Calderon own a property in the State of Florida that contains drywall manufactured by the Knauf Defendants that is alleged to be defective. Plaintiffs' claim was filed in a *Bennett* Action amended complaint on January 30, 2016.  The street address of Plaintiffs' property at issue is: 3441 SW Haines Street, Port St. Lucie, FL 34953 ("Affected Property").  Plaintiffs assert all claims in the Fifth Amendment Complaint and seek all relief available under current Florida law.

Plaintiffs purchased the Affected Property on June 13, 2005. A copy of the deed is attached hereto as Exhibit A.  Plaintiffs completed a Plaintiff Profile Form (Exhibit B) that verified the date that the Knauf drywall was discovered and the identity of the manufacturer confirmed on November 2, 2015.  Plaintiffs also completed a Supplemental Plaintiff Profile Form (Exhibit C) and a Plaintiff Fact Sheet (Exhibit D).  Plaintiffs engaged Chinese Drywall Screening, LLC on October 30, 2015 to conduct an inspection of their Affected Property.  A

copy of the inspection report is attached hereto as Exhibit E. The inspection report confirms the date that the Affected Property was inspected in 2015 and found to contain defective Knauf-manufactured drywall.

Plaintiffs Marfelia & Isidro Calderon, were deposed by counsel for Knauf on July 11, 2019 in Miami, Florida and affirmed the responses in their three discovery forms, including the date of discovery of the defective Knauf-manufactured drywall in the Affected Property. Plaintiffs also provided testimony under oath that affirmed the responses in the discovery documents related to damages, including loss of rent, loss of use and enjoyment, and personal property damages, among other topics addressed by counsel for the defendants. Plaintiffs attended the deposition voluntarily and answered all questions posed by counsel for the Knauf Defendants.

## II. STANDARD OF REVIEW

Summary judgment is only warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making the determination, "all justifiable inferences are to be drawn in [the non-movant's] favor." *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). The movant may argue that "there is an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), but "it is never enough simply to state that the non-moving party cannot meet its burden at trial," *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991). If the non-moving party provides more than a mere "scintilla of evidence" demonstrating that "the jury could reasonably find for the plaintiff," it will defeat the motion. *Anderson*, 477 U.S. at 252. This can be done by pointing out where the record "contains supporting evidence . . . which was

'overlooked or ignored' by the moving party." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993) (citing *Celotex*, 477 U.S. at 332 (Brennan, J., dissenting)).

### III.   ARGUMENT

Summary judgment is clearly not appropriate in this instance.  In order to prevail with this summary judgment motion, Defendants must demonstrate that there are no issues of material fact to be decided by a trier of fact in the transferor court.  This has not been done.  Defendants have stipulated to liability; therefore, the calculation of appropriate damages for these Plaintiffs is all that remains unless Defendant presents some persuasive legal basis for dismissal.  In this instance, they have not done so.

Plaintiffs have provided ample information through pleadings and the discovery process for the Defendants to understand each claim asserted and the areas of damages being sought. Most claims and damages have not been challenged by Defendants through this motion. (See Section I(B) *supra* for the claims and damages stated in the Fifth Amended Complaint).  For the purpose of this motion, the Court need only find the existence of a genuine issue of material fact to deny Defendants' motion.

 The Court can look to its prior orders for one area of damages at issue – calculation of remediation damages.  Previously, this Court issued multiple orders during the consolidated pre-trial stage of the MDL proceedings instructing the parties that full remediation damages are appropriate for plaintiffs that establish defective Chinese-manufactured drywall in the living space of their home. (See, e.g., Doc. 20741).  The Court even adopted a formula to arrive at the remediation damages (square footage of a home multiplied by the appropriate R.S. Means cost per square foot).  Defendants have not stipulated to remediation damages to date and have engaged an expert to present testimony at trial regarding their calculation of remediation

damages by another method; consequently, this is a genuine issue of material fact that will be decided by the trier of fact.

Plaintiffs also provided responses to discovery requests directing Defendants to the Fifth Amended Class Action Complaint for the areas of damages that have neither been addressed nor challenged by Defendants to this point. And, when taken in a light most favorable to the non-movant, in this case the Plaintiffs, the unresolved areas of damages present genuine issues of material fact that must be decided by a trier of fact.

This lawsuit was filed because Defendant Knauf manufactured defective drywall found in Plaintiffs' Affected Property. The Knauf Defendants have stipulated to this Court that the product is indeed defective. Although counsel for Defendant Knauf has crafted an argument for summary judgment, the facts and law in this instance simply do not support their legal position or their motion.

The exhibits, including the deed, plaintiff profile form, supplemental plaintiff profile form, plaintiff fact sheet and Chinese drywall inspection report that are attached to this response will demonstrate that, at a minimum, Plaintiffs' claims are viable and several genuine issues of material fact exist that should defeat Defendants' motion and allow these Plaintiffs to move forward with his case beyond this summary judgment challenge.

A.      **Plaintiffs' Claims Are Timely Filed Under Florida's Delayed Discovery Rule.**

Under Fla. Stat. § 95.11, Florida's product liability statute, Plaintiffs have four (4) years to file a claim from the date of discovery. Here, Plaintiffs filed their claim less than one year after discovering the presence of Knauf's defective drywall in his home; therefore, their claim was timely filed. Defendants have urged the Court to grant summary judgment in this instance because, they allege, Plaintiffs learned that the Affected Property contained Knauf's defective

product much earlier than Plaintiffs acknowledge, but that is clearly in conflict with Plaintiffs' deposition testimony attached to Defendant's motion.  Plaintiff affirmed during their depositions that discovery of the Knauf-manufactured drywall occurred as a result of an inspection of their home by Chinese Drywall Screening, LLC.  Plaintiff also executed a verified Plaintiff Profile Form and Supplemental Plaintiff Profile Form, under penalty of perjury, affirming the very same date of discovery.

### i.   Product liability claims are subject to the delayed discovery rule in Florida.

Plaintiffs' statute of limitations did not begin to run when he purchased her house in 2005.  Under Florida law, a cause of action accrues or begins to run for purposes of the statute of limitations upon the occurrence of the last element of the cause of action. *Davis v. Monahan*, 832 So.2d 708, 709 (Fla. 2002); see Fla. Stat. § 95.031. However, products liability claims are subject to an exception, "in which the accrual of the cause of action is delayed until the plaintiff either knows or should know that the last element of the cause of action occurred." *Davi*s, 832 So.2d at 709; see Fla. Stat. § 95.031(2)(b). This is commonly referred to as the delayed discovery rule. *Davis*, 832 So.2d at 709.  Florida's delayed discovery rule applies to defective Chinese-manufactured product liability claims.

Knowledge of a products liability claim need not rise to the level of legal certainty; instead, the plaintiff "need only have notice, through the exercise of reasonable diligence, of the possible invasion of [her] legal rights." *Hamrac v. Dorel Juvenile Grp., Inc*., No. 3:09vd390/RV/MD, 2010 WL 1879278, at *4 (N.D. Fla. May 11, 2010) (quoting *Univ. of Miami v. Bogorff*, 583 So.2d 1000, 1004 (Fla. 1991) ).  "There must be two essential facts present for the statute to begin to run. There must be a distinct injury and some causal connection between the injury and exposure to [the offending] product." *Samson v. R.J. Reynolds Tobacco Co*., No.

96-414-CIV-T-24(B), 1997 WL 373475, at *5 (M.D. Fla. June 2, 1997) (citing *Babush v. Am. Home Products Corp.*, 589 So.2d 1379 (Fla. Dist. Ct.App. 1991) ).  In other words, the limitations period on a products liability claim begins to run only when the plaintiff knows or should have known of a causal connection between a distinct injury caused by the product in question during exposure.  In this instance, Defendants cannot demonstrate that Plaintiffs, who are laymen, should have known that her home contained defective drywall made by Defendant Knauf or that he was being exposed to off-gassing from drywall.

Defendants have not presented any tangible evidence that Plaintiffs' discovery responses regarding discovery of the defective Knauf product are incorrect and the date of discovery is some earlier identifiable date.  Reliance on an argument that Plaintiffs acted unreasonably in their effort to discover the drywall at an earlier date is a genuine difference regarding a material fact in which a trier of fact could find that Plaintiff acted reasonably; therefore, this Court must find in favor of the nonmovant and deny summary judgment.

It is an unreasonable position that some unidentified smell or corrosion places a homeowner on notice that her home contains defective drywall.  In Florida, like any southern state, there could be any number of environmental sources causing a smell.  In addition, there could be environmental sources causing corrosion such as well water or a water supply with a high sulfur content.  It is not an unreasonable explanation for a "smell" to be present in and around a Florida home caused by an environmental source outside the home. Defendants have failed to provide undisputed proof that the smell noted by Plaintiff intermittently during her ownership was indeed generated by Knauf's defective drywall in the Affected Property.

Plaintiffs have no expertise in construction, environmental contaminants, or defective Chinese drywall.  It takes an inspection by an experienced drywall inspector to confirm the

existence of defective Chinese-manufactured in a property.  In addition, not every homeowner is prepared to pay a fee between $500.00 and $2,000.00 for a thorough inspection of their home for the presence of defective drywall manufactured by Knauf.  "Discovery" under Florida law occurs when the manufacturer's markings are found, not at any point earlier. This would be the causal connection to the possible injury.  It is certainly possible for a trier of fact to find that Plaintiffs' actions were reasonable.

> ii.     *Defective Chinese-manufactured drywall is a latent defect and Plaintiffs had no obligation to hire a Chinese drywall inspector before the date of discovery.*

Defective Chinese-made drywall is not an obvious defect easily seen by a homeowner. It is hidden inside walls or buried under insulation in attics in some cases.  With the manufacturer's ink stamp markings concealed inside walls, the defect is considered "latent" according to Florida law. Florida courts have defined a latent defect broadly, as one which is "not apparent by use of one's ordinary senses from a casual observation of the premises." *Hawkins v. Champion Int'l. Corp.*, 662 So.2d 1005, 1007 (Fla. 1st DCA 1995).  Florida courts have also found that there is no duty to discover "latent defects which… could not be discovered by a reasonable and customary search." *Masker v. Smith*, 405 So.2d 432, 433-34 (Fla. 5th DCA 1981).  Whether a reasonable person would discover the defective drywall through a casual, customary inspection is an issue of fact.

Locating defective Chinese drywall and determining the identity of the manufacturer requires specialized knowledge and experience.  It requires cutting holes in walls; it requires crawling into tight spaces in attics; it requires specialized tools and devices; and, in many cases, it requires sending samples to a lab for testing.  Finding defective drywall is rarely done through a casual observation of the premises or by using one's ordinary senses.  This standard under

Florida law is contrary to Defendant's argument that an unidentified smell in the home or noticing tarnish on metal in the home places a duty on the homeowner to hire a Chinese drywall inspector immediately; consequently, this Court should deny Defendants' motion.

> ### iii.   Defendant Knauf should be equitably estopped from arguing that notice has been given to any homeowner, because it had a post-sale duty to warn regarding defective nature of its drywall, but chose to remain silent.

The Defendants argue that because an unidentified smell was periodically noticed by Plaintiffs in the Affected Property at times or corrosion was noticed on copper in the Affected Property; therefore, Plaintiffs were allegedly on notice of the presence of the defective product produced by Knauf; however, Defendants fail to specify what notice Plaintiffs received.  What are the exact warnings that Plaintiffs or consumers should have received from Knauf?  And, what date did Knauf publish the warnings to consumers?  Defendant Knauf has failed to present any specific notice in its motion that Plaintiffs might have received.

Defendants could easily have sent warnings to potential recipients of its drywall – they're in possession of business records that could have been used to identify all downstream purchasers and ultimately the recipients of their product.  Defendant Knauf chose to take no action to remedy the problem they created.  In Florida, under some circumstances, manufacturers have a duty to warn about certain risks even after a product is no longer in the manufacturer's possession and has been transferred or sold to the consumer or end-user. *See High v. Westinghouse Elec. Corp*., 610 So.2d 1259, 1263 (Fla. 1992) (finding the defendant "had a duty to timely notify the entity to whom it sold the electrical transformers… once it was advised of the PCB contamination"); *Sta-Rite Indus., Inc. v. Levey*, 909 So.2d 901, 905 (Fla. 3d DCA 2004) (jury question existed on failure to warn claim "in the light of similar severe accidents which occurred both before and after the sale of the pump in question").  Defendant Knauf's

responsibility does not end once the product leaves its possession.  Under Florida law, a manufacturer must keep abreast of developments in the state of the art and cannot ignore incidents involving its products.

If Defendant Knauf's position is that a warning was given to Plaintiffd, they should produce that warning.  Without a specific warning to Plaintiffs by Defendant Knauf or some downstream distributor or agent, Plaintiffs are left without the ability to evaluate the terms of the purported warning for adequacy; in addition, in the absence of any post-sale warning by Knauf for its defective drywall, the Knauf Defendants should be equitably estopped from arguing that notice was provided to a homeowner in the State of Florida.  The principles of equitable estoppel are applicable here to prevent the Knauf Defendants from taking unfair advantage of homeowners who may have only received limited or inaccurate information about the defective Knauf-manufactured drywall. "The elements of equitable estoppel are (1) a representation as to a material fact that is contrary to a later-asserted position, (2) reliance on that representation, and (3) a change in position detrimental to the party claiming estoppel, caused by the representation and reliance thereon." *State v. Harris*, 881 So.2d 1079, 1084 (Fla. 2004).  "The 'representation' upon which an estoppel may be predicated may consist of words, conduct, or, if there is a duty to speak, silence." *Lloyds Underwriters at London v. Keystone Equipment Finance Corp.*, 25 So.3d 89, 93 (Fla. 4th DCA 2009) (citations omitted).  Given Knauf's failure to provide post-sale warnings to consumers and homeowners, this Court must view the omission in a light most favorable to Plaintiffs and find a material fact exists to be decided by a trier of fact regarding notice.

The Restatement of Torts (Third) supports Plaintiff's position that Defendant Knauf had a duty to warn homeowners about the potential risks its defective product posed.  Subsection 2(c) of the Third Restatement provides that a product:

> is defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the instructions or warnings renders the product not reasonably safe.

Restatement (Third) of Torts: Products Liability § 2.

As is clear from the plain language of subsection (c), the warning defect standard focuses on the notion of "reasonableness" for judging the adequacy of warnings, a malleable notion that is intertwined with the facts and circumstances of each case.  "Whether the warning actually given was reasonable in the circumstances is to be decided by the trier of fact." Restatement (Third) of Torts: Products Liability § 2 comment i.

Comment i of Section 2 also assists the trier of fact by providing a non-exhaustive list of factors to guide the determination as to whether a warning was adequate in any given situation:

> No easy guideline exists for courts to adopt in assessing the adequacy of product warnings and instructions. In making their assessments, courts must focus on various factors, such as content and comprehensibility, intensity of expression, and the characteristics of expected user groups.

Additionally, comment i lists a number of factors for the trier of fact to consider when determining whether a manufacturer such as Defendant Knauf may rely on an intermediary to warn end-users, and thereby discharge its duty to warn, or conversely, is required to warn end-users directly:

> There is no general rule as to whether one supplying a product for the use of others through an intermediary has a duty to warn the ultimate product user directly or may rely on the intermediary to

> relay warnings. The standard is one of reasonableness in the circumstances. Among the factors to be considered are the gravity of the risks posed by the product, the likelihood that the intermediary will convey the information to the ultimate user, and the feasibility and effectiveness of giving a warning directly to the user. Thus, when the purchaser of machinery is the owner of a workplace who provides the machinery to employees for their use, and there is reason to doubt that the employer will pass warnings on to employees, the seller is required to reach the employees directly with necessary instructions and warnings if doing so is reasonably feasible.
> ....
> Whether the warning actually given was reasonable in the circumstances ***is to be decided by the trier of fact***.

*Id*. (emphasis added).

Thus, under the Third Restatement (that has been adopted by the Florida Supreme Court), the determination as to whether a manufacturer like Defendant Knauf discharged its duty to warn end-users by adequately warning an intermediary is clearly a question reserved for the trier of fact. This is consistent with longstanding Florida law, which provides that "[t]he sufficiency and reasonableness of a manufacturer's warnings are fact questions appropriate for the jury to decide unless such warnings are 'accurate, clear, and unambiguous.'" *Brito v. County of Palm Beach*, 753 So.2d 109, 112 (Fla. 4th DCA 1998) (quoting *Felix v. Hoffmann-LaRoche, Inc*., 540 So.2d 102, 104 (Fla.1989)).

"Among the factors to be considered" by the trier of fact in determining whether a manufacturer has a duty to warn end-users directly are: (1) "the gravity of the risks posed by the product"; (2) "the likelihood that the intermediary will convey the information to the ultimate user"; and (3) "the feasibility and effectiveness of giving a warning directly to the user." Restatement (Third) of Torts: Products Liability § 2 comment i. The use of the word "among" demonstrates that this list of factors is intended to be inclusive rather than exhaustive. At bottom, the "standard is one of reasonableness." *Id*. Thus, depending on the facts and circumstances

presented in each case, other pertinent factors may be considered when deciding whether a manufacturer has a duty to warn end-users.  But, without any specific warning from or by the Knauf Defendants, this Court must view the omission in a light most favorable to Plaintiffs, the nonmovant, and find that a genuine issue of material fact exists regarding the notice that might have started the running of the Florida four-year statute of limitations for defective products.

> ### iv.  All Florida Plaintiffs' Claims Are Protected By The Equitable Tolling Principles Decided By The U.S. Supreme Court In American Pipe if filed on or before February 7, 2013.

On February 7, 2013, this Court approved a settlement class in the Chinese drywall litigation that included the Knauf entities. (Rec. Doc. 16570). Plaintiff filed their claim in this *Bennett* action on January 30, 2016, less than four years after the settlement class was approved.

While deciding a Florida-related appeal, the Eleventh Circuit was unequivocal about recognition of equitable tolling of a statute of limitations. *See Raie v. Cheminova, Inc*., 336 F.3d 1278, 1282 (11th Cir. 2003).  "According to *American Pipe*, the filing of a class action complaint tolls the statute of limitations on individual claims by class members." *Id*.; *See American Pipe & Const. Co. v. Utah*, 414 U.S. at 550-52, 94 S.Ct. at 764-65; *see also Griffin v. Singletary*, 17 F.3d 356, 361 (11th Cir. 1994). "There is no dispute that American Pipe has been followed in Florida state courts." *Id*.  All claims against the Knauf Defendants for defective drywall in Florida properties are fully protected by the *American Pipe* equitable tolling principles until February 7, 2017, the four-year anniversary of the settlement class approval; thus, Plaintiffs' drywall claims are timely filed.  For this reason alone, Defendant's summary judgment motion must be denied on the issue of the statute of limitations.

**B.**     **Plaintiffs' Loss of Use & Enjoyment Claim is Appropriate Under Florida Law.**

Plaintiffs have asserted a claim for loss of use and enjoyment of the property due to the presence of defective Chinese drywall manufactured by Knauf Defendants.  The Knauf Defendants have acknowledged that their product is defective and stipulated to liability.  In Exhibit C, the Supplemental Plaintiff Profile Form, Plaintiffs asserted their right to loss of use and enjoyment damages and assigned a value believed to be reasonable and appropriate based on past verdicts in the Chinese drywall litigation (See Page 6 of SPPF).  Loss of use and enjoyment damages are non-pecuniary in nature and are to be assessed by the trier of fact.

Plaintiffs are entitled to recover damages under Florida law for loss of use and enjoyment of a residential property. For instance, in *McCreary v. Florida Residential Property and Casualty Joint Underwriting Association*, Fran and Cain McCreary sued their insurance provider for refusing to defend them against a complaint by their neighbor, L. Anton Rebalko. 758 So.2d 692, 693 (4th Dist. Ct.App. 1999). Rebalko's complaint alleged that the McCrearys' failure to "control, supervise, and confine their dogs to their own premises" was an "ongoing clear and present danger to the health, safety and comfort of [Rebalko]" that ultimately rendered him "unsafe and insecure [ ] in the use and enjoyment of his own property." *Id*. at 694. The Fourth District Court of Appeals concluded "Rebalko's claim that the actions of the [McCrearys] 'ultimately renders unsafe and insecure [Rebalko] in the use and enjoyment of his own property,' when fairly read, creates a factual issue as to the loss of use of the property...." *Id*. at 695. A similar result is appropriate in this instance.

In another analogous case, Adams Homes of Northwest Florida "built and sold homes in the interior of the Driftwood Development without regard for ... an adequate drainage plan...." *Mid-Continent Casualty Company v. Adams Homes of Northwest Florida, Inc*., 725 F.App'x.

777, 780-81 (11th Cir. 2018). Specifically, Adams Homes constructed homes that are prone to flooding. The flooding made "[Homeowners'] ordinary use or occupation of their property physically uncomfortable" and "disturb[ed] the [Homeowners'] free use ... of their property." *Id*. These allegations, fairly read, create a factual issue as to loss of use. Physical discomfort in the use of property, like insecurity and lack of safety in the use of property, raises the specter of loss of use and damages are to be assessed by the trier of fact.

This Court has also previously addressed loss of use and enjoyment, stating, "[t]he Taishan property owners will still have an opportunity at later phases to seek damages for alternative living expenses and loss of use and enjoyment of their properties. Those issues can be addressed and resolved later when the Court remands the cases in this MDL." *In Re Chinese Manufactured Drywall Prod. Liab. Liti.,* 706 F. Supp. 2d 655, 693 (E.D. La. 2010); *See In re Depuy Orthopedics*, *Inc*., 870 F.3d 345 (5th Cir. 2017). This Court does not intend to assume the transferor courts' duties after pre-trial matters are completed. *Id*.

Defendants have argued that loss of use and enjoyment is appropriate only if a plaintiff is unable to live in the home. Plaintiffs are not required to prove that they were unable to live in the property in order to recover for loss of use an enjoyment under Florida law. The parties differ in their valuation, but it is ultimately the trier of fact that will decide the appropriate loss of use and enjoyment damages. Clearly, with regard to loss of use and enjoyment, a genuine issue of material fact exists, and summary judgment is due to be denied.

**C.    A Genuine Issue of Material Fact Exists for Plaintiffs' Personal Property Damages & Diminution In Value Damages.**

Plaintiffs have asserted a claim for damaged personal property that is alleged to be caused by off-gassing from the defective Chinese drywall manufactured by Knauf Defendants. As previously noted, the Defendants have stipulated to liability in this case. In Exhibit D (See

Plaintiffs' itemization in Exhibit 14 to the PFS), the Plaintiff Fact Sheet, Plaintiffs provided the value of personal property lost during ownership of the Affected Property and assigned a value believed to be reasonable and appropriate based on a variety of sources such as receipts, invoices, internet research or memory.  Plaintiffs' justification for the damaged personal property was offered as testimony at their two depositions.

With regard to the diminution in value of the property, Plaintiffs have asserted a claim and will rely on fact witnesses at trial to quantify the value.  Plaintiffs are not property appraisers or realtors.  A claim for the diminution in value was present in the complaint and a trier of fact will be charged with evaluating testimony from Plaintiffs' fact witnesses at trial related to this component of damages.

In addition to the testimony and documentary evidence offered thus far, Plaintiffs will offer expert testimony at trial regarding the effect of drywall off-gassing on components of the home and personal property susceptible to corrosion.  Defendants will no doubt assign a different value to personal property damage, but Plaintiffs' testimony and documentary support are sufficient to be considered by the trier of fact.

This Court considered consequential damages such as lost rental income and personal property damage and found that damages are not limited to the diminution in value of the property and may include damages for loss in use and other consequential injuries.  *In Re Chinese Manufactured  Drywall Prod. Liab. Liti.,* 706 F. Supp. 2d 655, 692 (E.D. La. 2010). This Court's ruling was consistent with the Restatement of Torts regarding compensation for consequential damages.  See Restatement (Second) of Torts § 929 (1979) (providing that damages for injury to real property include compensation for loss of use of the property and other consequential injuries in addition to any permanent property damage, whether measured by

restoration or market value);  5C Michie's Jurisprudence, Damages, § 32 (2006) (rule encompasses recovery of expenses incidental to irreparable injury); *accord Bailey v. Missouri P.R. Co.,* 383 So. 2d 397, 402, 1980 La. App. LEXIS 3636 at *15 (1980) (tortfeasor must compensate his victim "for even the most improbable severe consequences of his wrongful act."), citing, *Gallick v. B O R.R.,* 83 S.Ct. 659 (U.S. 1963).  Plaintiffs request this same standard to be applied in this instance.  Plaintiffs' personal property and diminution in value damages are a consequential effect of the off-gassing from the defective drywall; therefore, a jury could find in favor of Plaintiffs that those damages are recoverable under Florida law; thus a genuine issue of material fact exists regarding personal property and diminution in value damages.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion For Summary Judgment should be denied.  Multiple issues of material fact exist and are due to be decided by a trier of fact.

Respectfully submitted on this 8th day of January, 2020.

/s/ *James V. Doyle, Jr.*

James V. Doyle, Jr.
DOYLE LAW FIRM, PC
2100 Southbridge Pkwy., Suite 650
Birmingham, AL 35209
Tele: 205-533-9500
Fax: 844-638-5812
jimmy@doylefirm.com

*Attorney for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing Plaintiffs Isidro and Marfelia Calderon Opposition to Defendant Knauf's Motion for Summary Judgment has been served on Plaintiffs' Liaison Counsel, Russ Herman, and Defendants' Liaison Counsel, Kerry Miller, by U.S. Mail and e-mail or by hand delivery and e-mail and upon all parties by electronically uploading the same to Lexis Nexis File & Serve in accordance with Pretrial Order No. 6, and that the foregoing was electronically filed with the Clerk of Court of the United States District Court for the Eastern District of Louisiana by using the CM/ECF System, which will send a notice of electronic filing in accordance with the procedures established in MDL 2047, on this 8th day of January, 2020.

/s/ *James V. Doyle, Jr.*

James V. Doyle, Jr.
DOYLE LAW FIRM, PC