# Exhibit D

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION** | **MDL NO. 2047**<br><br>**SECTION: L** |
| **THIS DOCUMENT RELATES TO:**<br><br>***Elizabeth Bennett, et al. v. Knauf Gips, KG, et al.***<br>**2:14-cv-02722-EEF-JCW** | **JUDGE ELDON FALLON**<br><br>**MAG. JUDGE WILKINSON** |

## PLAINTIFF FACT SHEET

Name of Plaintiff: _Isidro Calderon_

Affected Property Address: _3441 SW Haines Street, Port St. Lucie, FL 34953_

## I.  Purchase, Sale and/or Transfer of Ownership of Property

1.  On what date did you purchase the Property?

**Response**:  Plaintiff objects to this question as duplicative.  In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants.  Plaintiff has previously provided this information to defendants in the Bennett Supplemental Plaintiff Profile Form ("SPPF").  Plaintiff directs the defendants to Section II of the SPPF. Without waiving said objection, Plaintiff adopts the SPPF response again here and intends to provide the exact same date as provided in the verified SPPF as follows: Plaintiff purchased the property:

(Month/Day/Year)  _06_ / _13_ / _05_

2.  When you took ownership of the Property, what was the name of the seller?

_Majestic Land Holdings, Inc._

1

3. Name and address of the realtor?

N/A

4. Name and address of the closing agent?

Debbie Delapena, 4010 57th Avenue South, Suite 104, Lake Worth, FL 33463

5. What was the price of the home when you purchased it?  $ 246,996.41

6. Was it an "as-is" sale?

**Response**: Plaintiff objects to the use of "as-is" in this question as vague, ambiguous, uncertain, and unintelligible; consequently, Plaintiff cannot determine the exact nature of the information being sought.  This term is not defined and is not commonly understood with one accepted meaning; multiple inpretations are possible.  Without waiving said objection, plaintiff responds as follows:

☑ Yes ☐ No ☐ I'm not sure.

7. If you sold or transferred ownership of the Property, what was the name of the purchaser?

N/A

8. If you sold or transferred ownership of the Property, what was the name and address of the realtor?

N/A

9. If you sold or transferred ownership of the Property, what was the name and address of closing agent?

N/A

10. If you sold or transferred ownership of the Property, what was the price paid for home?
      $ N/A

## II.  Appraisal of the Home

11. Date of each appraisal:

a. _____/_____/20_____

b. _____/_____/20_____

2

**PFS REQUEST FOR DOCUMENT PRODUCTION #1**: Please produce copies of any and all appraisals performed on the house both prior and subsequent to the occurrence of any of the events allenged in the petition.

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 1."

## III.  Discovery of Drywall

12.  Date that the property was constructed and/or renovated that installed the allegedly defective Chinese Drywall.

**Response**:  Plaintiff objects to this question as duplicative.  In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants.  Plaintiff has previously provided this information to defendants in the Bennett Supplemental Plaintiff Profile Form ("SPPF").  Plaintiff directs the defendants to  Section II of the SPPF. Without waiving said objection, Plaintiff adopts the SPPF response again here and intends to provide the exact same date as provided in the verified SPPF as follows: The property construction and/or renovation that installed the allegedly defective drywall occurred on or about the following date (to the best of my knowledge):

> (Month/Day/Year)          ____/____/20_06_

**PFS REQUEST FOR DOCUMENT PRODUCTION #2**: Please produce all documents, reports, photographs, videotapes, samples and any other materials which evidence and/or identify that there is defective Chinese Drywall in the Property.

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 2."

## IV.  Manufacturer/Seller of Drywall

13.  Who sold or distributed the drywall in the house?

**Response**:  Plaintiff objects to this question as duplicative.  In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants.  Plaintiff has previously provided this information to defendants in the Plaintiff Profile Form ("PPF"). Plaintiff directs the defendants to  Section X of the PPF.  Without waiving said objection, Plaintiff adopts the PPF response again here and intends to provide the exact same information as provided in the verified PPF as follows:   The drywall Supplier's name (to the best of my knowledge) is:

I don't know._____

**PFS REQUEST FOR DOCUMENT PRODUCTION #3**: Please produce all documents, reports, photographs, videotapes, samples and any other materials which evidence and/or identify the manufacturer of drywall installed in the house. The submission must be in the form of PTO 1(B).

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 3."

## V. Damages

14.  Identify any harm, financial or otherwise, that you contend was caused by defective Chinese Drywall installed in the Property.

**Response**: Plaintiff directs the defendants to review the complaint filed with the court in this case for a full listing of the claims being asserted and the damages being sought. The defective Knauf Chinese Drywall emitted gasses that cause damage to Plaintiff's home and the personal property contained therein. It also significantly diminished the use and enjoyment of the home; therefore, Plaintiff seeks the following: all compensatory, statutory, and/or punitive damages; all pre-judgment and post-judgment interest as allowed by law; any appropriate injunctive relief; an award of attorney's fees as allowed by law; an award of taxable costs; and, any and all such further relief as a jury or judge presiding over my trial deems just and proper. Other damages include, but are not limited to:

The deteriorating house has caused stress for my family; we're continually fixing problems

caused by the defective Chinese drywall. And, we can't sell and move until it's fixed.

15.  If you contend that you entered personal bankruptcy as a result of damage to your property from defective Chinese Drywall, please describe the facts and circumstances that relate to your claim.

N/A

16.  If you contend that you entered short sale and/or foreclosure as a result of damage to your property from defective Chinese Drywall, please describe the facts and circumstances that relate to your claim.

N/A

4

**PFS REQUEST FOR DOCUMENT PRODUCTION #4**: If you claim loss of income, please produce any copies of any and all documentation upon which you intend to rely upon to prove this claim.

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 4."

17.  If you claim diminution of the property as a result of Chinese Drywall, state with particularity each fact which supports your claim.

N/A _____

_____

_____

_____

18.  Identify the appliances, fixtures and/or other electronics, if any, that you claim were damaged by Chinese Drywall in the property.

> **Response**: An list of damaged items is attached as "Exhibit 14."

19.  If you vacated the property because of the alleged presence of Chinese Drywall, please provide:  Address of each location you stayed thereafter.

> a. N/A _____
>
> b. _____
>
> c. _____

20.  If you vacated the property because of the alleged presence of Chinese Drywall, please provide:  Time periods in which you resided at each property.

> a. N/A /_____/20_____   to   _____/_____/20_____
>
> b. _____/_____/20_____   to   _____/_____/20_____
>
> c. _____/_____/20_____   to   _____/_____/20_____

21.  If you vacated the property because of the alleged presence of Chinese Drywall, please provide:  Moving costs and/or alternative living expenses you claim to have incurred as a result of the alleged presence of Chinese Drywall.

> a. $ N/A _____
>
> b. $_____
>
> c. $_____

**PFS REQUEST FOR DOCUMENT PRODUCTION #5**: If you vacated the property because of the alleged presence of Chinese Drywall, please provide any documentation to support your claims.

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 5."

22. Are you claiming damages for personal injury? ☐ Yes (explain below) ☑ No

_____

_____

23. If you suffered personal injuries as a result of the alleged presence of Chinese Drywall: Date you allege that you first sustained personal injuries as a result of your exposure to allegedly defective Chinese Drywall.

> **Response**: ☑ N/A

24. If you suffered personal injuries as a result of the alleged presence of Chinese Drywall: What specific injuries have you suffered?

> **Response**: ☑ N/A

25. If you suffered personal injuries as a result of the alleged presence of Chinese Drywall: Name and address of any doctor, physician, surgeon, chiropractor, or osteopath who examined and/or treated your alleged injuries.

> **Response**: ☑ N/A

## VI.  Potential Witnesses/Evidence

26. Has any written or recorded statement been taken from any witness or person who has knowledge of relevant facts, including the nature, character, and extent of the injuries referred to in the petition, and for each statement identified?

☐ Yes   ☑ No   ☐ I don't know

27. If the answer to 26 is "yes," please state: The name, address, and telephone number of the person from whom the statement was taken.

N/A_____

_____

28.  If the answer to 26 is "yes," please state:  The name, address, and telephone number of the person who took the statement.

N/A

_____

29.  If the answer to 26 is "yes," please state:  The name address, and telephone number of the party having custody of such statement.

N/A

_____

30.  If the answer to 26 is "yes," please state:  The date the statement was taken.

N/A

_____

## VII.  Already Remediated Properties

31.  If you already remediated the Property, who conducted the remediation?

    **Response:**   [✓] N/A

32.  When did the remediation commencement date occur?

    **Response:**   [✓] N/A

33.  When did the remediation end date occur?

    **Response:**   [✓] N/A

34.  What was the scope of the remediation and the scope of the work carried out?

    **Response:**   [✓] N/A

35.  What costs or expenses, if any, did you incur related to the remediation of the Property?

    **Response:**   [✓] N/A

36. Were any samples from the remediation retained?

   **Response:**   ☑ N/A

37. If the response to 36 is "yes," were the samples compliant with PTO 1(B)?

   **Response:**   ☑ N/A

38. Were any photographs taken of the allegedly defective Chinese Drywall?

   **Response:**   ☑ N/A

39. If the response to 38 is "yes," were the photographs compliant with PTO 1(B)?

   **Response:**   ☑ N/A

**PFS REQUEST FOR DOCUMENT PRODUCTION #6:**  Please produce the following documentation concerning the remediation of the Property:  Any evidence of KPT Chinese Drywall and Non-KPT Chinese Drywall, if any, in the Property prior to remediation.

   **Response:**  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 6."

**PFS REQUEST FOR DOCUMENT PRODUCTION #7:**  Please produce the following documentation concerning the remediation of the Property:  Interior photographs of the Affected Property immediately prior to the commencement of, and following completion of, the remediation, including photographs and/or video images of the flooring and major components such as cabinets, moldings, doors, intercom systems, and fixtures for every room and bathroom and, to the extent possible, security systems, appliances and audio such as surround sound.

** The photographs do not need to be pictures taken specifically for the litigation. For example, family photographs or photographs taken for purposes of refinancing a mortgage are acceptable in the absence of other photographs.

   **Response:**  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 7."

**PFS REQUEST FOR DOCUMENT PRODUCTION #8:**  Please produce the following documentation concerning the remediation of the Property:  The remediation contract and an itemization from the contractor who performed the remediation work of the materials used during the remediation, including, but not limited to, manufacturer, model number, and quantity.

8

> **Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 8."

**PFS REQUEST FOR DOCUMENT PRODUCTION #9**:   Please produce the following documentation concerning the remediation of the Property:  An itemized invoice from the contractor who performed the remediation work ("Itemized Invoice") showing the scope of work carried out.

> **Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 9."

**PFS REQUEST FOR DOCUMENT PRODUCTION #10**:   Please produce the following documentation concerning the remediation of the Property:  Proof of payment of the Itemized Invoice and any other expenses, such as cancelled checks, credit card statements, etc.

> **Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 10."

**PFS REQUEST FOR DOCUMENT PRODUCTION #11**:   Please produce the following documentation concerning the remediation of the Property:  A floor plan of the Affected Property with dimensions.

> **Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 11."

**PFS REQUEST FOR DOCUMENT PRODUCTION #12**:   Please produce the following documentation concerning the remediation of the Property:  An Environmental Certificate.

> **Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 12."

**PFS REQUEST FOR DOCUMENT PRODUCTION #13**:   Please produce the following documentation concerning the remediation of the Property:  An Owner Disclosure Affidavit in the form attached as Exhibit 1, which includes a certification that the materials provided comprise all of the available documentation regarding the following:  The drywall that was in the Affected Property prior to the commencement of the remediation; and, the scope, extent, and cost of the remediation.

> **Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 13."

## VERIFICATION

I hereby verify that the responses to the Plaintiff Fact Sheet are correct to the best of my knowledge.

_____
Signature of Plaintiff

Date  1 / 23 / 2019

ISIDRO CALDERON
Printed Name

# Exhibit 1

# Exhibit 2

# Exhibit 3

# Property Screening Report

Isibro Calderon

Screening Date:

10-30-15

Prepared for:

Isibro Calderon

Report Number:

FL01-0436

CDS Inspector:

Howard Ehrsam



Inspections and documentation from leading experts



November 5, 2015

Isibro Calderon
3441 SW Haines Street
Port St. Lucie, FL 34953

RE: Chinese Drywall Screening Report Number FL01-0436

Mr. Calderon,

Based on our visual observations of blackened A/C coils, electrical wires and copper plumbing, coupled with known affects from reactive drywall, CDS is of the opinion that reactive drywall **is present** in the above referenced property.  Walls were tested for strontium levels using x-ray florescence (XRF) and high strontium levels around 2600 ppm corresponded with odor and corrosion.  The distinctive odor associated with reactive drywall was noticed upon entry and throughout the inspection.  Reactive drywall markings discovered are:

| No. | Drywall Mfg | Markings on Drywall | Location in home |
|-----|-------------|---------------------|------------------|
| 9 | Knauf-Tianjin | "KNAUF-TIANJIN" | See Summary |

Strontium levels and corrosion were consistent throughout the property indicating that KPT was the type throughout the walls of the property.  Another type of drywall found that is not typically reactive is No. 31 – ProRoc.  This type was observed on the garage ceiling from the attic.

Based on the **2,504** sf size of the home with **10'** average ceiling height, we estimate that there is about **11,000** sf of drywall in the home. The estimated percentage of reactive drywall that is KPT is 100%.

There is currently a remediation program that you may be eligible for.  We recommend that you contact an attorney for further information.

Please feel free to contact us should you have any questions regarding our findings or if we may be of further assistance to you.

Sincerely,

Howard Ehrsam, P.E., LEED AP
CGC 1509717
on behalf of Chinese Drywall Screening, LLC

Enclosures: Report with Photo Exhibit



# Overview

## Overview of Subject Property



**Client:** Isibro Calderon

**Address:** 3441 SW Haines St
Port St. Lucie, FL 34953

**Builder:** Majestic

**Size:** Total 2,504 sf

**Completion date:** 2007



# Scope of Screening

## Scope of Screening Services Performed

Chinese Drywall Screening, LLC (CDS) conducted a detailed visual inspection of the various elements within the home that typically react to the presence of reactive drywall.  Some of the known affects are pitting and blackening copper, tarnishing silver, corroding and spotting chrome and brass, and delaminating mirrors.

Based on the experience, knowledge and ability to recognize these affects, CDS completed a thorough inspection of the various elements of the home containing these materials.  These elements include, but are not limited to:

- Air conditioning components
- Gas lines (if applicable)
- Water lines
- Electrical wiring
- Coaxial cabling
- Refrigerator components
- Mirrors
- Plumbing fixtures and drains

Some of the above elements were photographed during the inspection and are attached as "Photo Narrative Exhibit".  Refer to the photographs for specific observations.

Items that may be affected by reactive drywall but were not inspected by CDS include, but are not limited to:

- Large appliances
- Small appliances
- Televisions
- Audio/video equipment
- Personal possessions
- Smoke detectors
- Doorbells
- Security systems
- Control wiring
- Thermostats

The following engineering report is utilized as a reference in regards to the visual effects on copper: Unified Engineering Report File 4050 dated March 17, 2009. Unified Engineering, Inc; 3056 Weber Drive, Aurora, IL 60502.



# Scope of Screening

## Scope of Services (continued)

### X-ray Florescence (XRF) for Strontium

XRF analyzers are handheld instruments used predominantly to evaluate the presence of metal constituents in building materials or other products. XRF works by exposing a material to high energy x-rays and measuring those x-rays and comparing them to the known and unique pattern of x-rays produced by each element. For help in identifying corrosive drywall, XRF is used to determine levels of strontium (Sr) present within the gypsum of the drywall throughout the property.

Strontium is a light metal that is a common, naturally occurring element found within the earth. Certain geographical regions have higher concentrations than others that can translate to the origin of the raw materials. Strontium levels above 1850 ppm have been associated with drywall of Chinese origin. However, high levels of strontium do exist in drywall from other origins and testing must be used in conjunction with other means to produce proper conclusions.

The attenuating effects of joint compound and textures could inhibit the detection of small amounts of corrosive drywall. Furthermore, corrosive drywall could also be present in inaccessible areas that include, but are not limited to, walls above drop ceilings, fire stopping, behind tile, behind cabinets, under raised floor systems, etc. However, the potential for these conditions can be reduced or eliminated with proper property evaluation and corrosion evaluation.



# Summary Narrative

## Observations and Conclusions

## **Observations**

- Blackening or "black deposits" defined to be copper sulfide by Unified Engineering File No. 4050 associated with reactive drywall were observed on the copper refrigerant lines at the air handler.  The coil was recently replaced about 3 months ago with an aluminum coil and slight blackening was present on the new copper sections.  Original refrigerant lines outside the unit had heavy amounts of blackening.
- Blackening was observed on the control wires of the garage door opener.
- Blackening was observed on the water heater located in the garage.
- Blackening was observed on the exposed wiring of inspected receptacles and switches.
- Blackening was observed on the copper water lines under the kitchen sink
- Faucets and other plumbing trim had corrosive spotting.
- Walls and ceilings were tested utilizing a Thermo Fisher x-ray fluorescence (XRF) analyzer throughout the property.  Readings were around 2600 ppm which was consistent throughout the property with the readings of the KPT that was observed.
- There was an odor associated with corrosive drywall throughout the property including the garage.

## **Conclusions**

Based on our visual observations, testing, experience and current state of knowledge in the industry, Chinese Drywall Screening, LLC is of the professional opinion that the reactive drywall manufactured by **Knauf TIANJIN (KPT) is present** throughout the subject property.

It is the intent of CDS to inform and empower the Client with enough knowledge to make the best, well informed decision that is in the best interests of the Client.  Towards that end, we recommend that you contact an attorney to discuss your legal rights, including potential claims against the builder, along with the installer, supplier and manufacturer of the drywall.

What you can do today:  Three primary items to consider for immediate action are:  1) Legal representation.  2) Property tax reduction and 3) Mortgage forbearance if applicable. There are pros and cons to each and we recommend getting a full understanding prior to moving forward. There are active lawsuits and settlements that the property may qualify for but time is of the essence.  It is critical to understand the implications with the various details and we recommend contacting an attorney for legal advice.

More information is available on our website or call us toll free at 855-CDW-HELP.



# Drywall Markings Index

## Reference for Drywall Markings

Multi District Litigation No. 2047 was created for the Chinese-manufactured drywall products liability litigation.  United States District Court, Eastern District of Louisiana developed a compilation of photograph examples that CDS utilized as a reference for developing conclusions in the identification of the origin of the reactive drywall in the subject property.  These photographs are available at: http://www.laed.uscourts.gov/Drywall/DrywallMarkings.htm or click on the individual links below.

## Chinese Drywall Markings Index

*Last Updated: September 23, 2009*

| No. | Chinese Manufactured Drywall | | |
|---|---|---|---|
| 1 | Bedrock Gypsum | 20 | Unknown |
| 2 | Beijing New Building Materials PLC (BNBM) | 21 | Unknown |
| 3 | C&K Gypsum | 22 | Unknown |
| 4 | Crescent City Gypsum | 23 | Unknown |
| 5 | Dragon Brand Drywall | 24 | Unknown |
| 6 | IMG Drywall | 25 | Unknown |
| 7 | International Materials Trading (IMT) Gypsum | 26 | Venture Supply Inc.  (Tajhe/Taihe) |
| 8 | Knauf Dongguan | No. | Non-Chinese Manufactured Drywall |
| 9 | Knauf Tianjin | 27 | Georgia Pacific |
| 10 | Knauf WuHu | 28 | Lafarge |
| 11 | Pro Wall | 29 | National Gypsum |
| 12 | Taihe | 30 | USG |
| 13 | Taian Taishan | No. | Drywall From Unknown Origins |
| 14 | Taishan | 31 | Pro-Roc |
| 15 | Unknown | 32 | Unknown |
| 16 | Unknown | 33 | Unknown (Palatka, FL) [Lafarge] |
| 17 | Unknown | 34 | Unknown |
| 18 | Unknown | 35 | Unknown |

(Top row: 19 | Unknown)



Exhibit A

# Certification

## Certification of the Inspector

The undersigned do hereby certify that, to the best of our knowledge and belief:

- The statements of fact contained within this report are true and correct.

- The statements of opinions have certain limitations.  It is not feasible and is impossible to confirm 100% of corrosive drywall was either removed or is not present.  There are several conditions that we have seen that could prevent discovery without a more exhaustive investigation.  They include, but are not limited to:

  - Low strontium, corrosive drywall that is domestic and non-homogeneous.

  - Limited amounts of corrosive drywall in inaccessible areas or installed in a way that would seclude it from available receptacles and switches.

  - Limited amounts of high strontium drywall covered with joint compound or heavy textures hindering detection by x-ray fluorescence.

  - Variable amounts of low off-gassing drywall or drywall with corrosive recycled gypsum.

- We have no present or prospective interest in the property that is the subject of this report and we have no personal interest with respect to the parties involved.  We have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

- The information in this report is based on the existing conditions of the structure's materials, documents, and information (written or verbal) supplied by contractor, the owner or their representatives, and our observations during the inspection.

- Our compensation or engagement in this assignment is not contingent upon the development or reporting of a predetermined conclusion that favors the cause of the client, the remediator, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this report.

- Any use of this report by any other parties without our expressed or written consent is prohibited.  Should another individual or entity rely on this analysis or its conclusions without our consent, they shall indemnify Chinese Drywall Screening, LLC, its employees, and service providers from all damages, losses or expenses that may occur as a result of its use.

- Our report is based on information made available to us at this time.  Should additional information become available, we reserve the right to determine the impact, if any, of the new information on our opinions and conclusions and to revise our opinions and conclusions if necessary and warranted by the discovery of additional information.

- The provided services and documentation have been completed to the best of our knowledge and based on current known facts regarding reactive drywall.

Howard Ehrsam, P.E., LEED AP
CGC 1509717
on behalf of Chinese Drywall Screening, LLC



# Photo Exhibit
## 3441 SW Haines St.
## Port St. Lucie, FL 34953



















# Photo Exhibit
## 3441 SW Haines St.
## Port St. Lucie, FL 34953



















# Photo Exhibit
## 3441 SW Haines St.
## Port St. Lucie, FL 34953



















## Photo Exhibit
## 3441 SW Haines St.
## Port St. Lucie, FL 34953

  

  

  

  



**Photo Exhibit**
**3441 SW Haines St.**
**Port St. Lucie, FL 34953**

  

  

  

  



Photo Exhibit
3441 SW Haines St.
Port St. Lucie, FL 34953



















## Photo Exhibit
## 3441 SW Haines St.
## Port St. Lucie, FL 34953

  



# Exhibit 4

# Exhibit 5

# Exhibit 6

# Exhibit 7

# Exhibit 8

# Exhibit 9

# Exhibit 10

# Exhibit 11

# Exhibit 12

# Exhibit 13

# Exhibit 14

# Plaintiff Fact Sheet

Plaintiff: Isidro Calderon

Property Address: 3441 SW Haines St, Port St Lucie FL 34953

## Question #18 Itemization (Personal Property Damage)

| # | Description of Damaged Item | Value ($) |
|---|---|---|
| 1 | Samsung Stainless Steal Refridgerator | $2,200.00 |
| 2 | Kenmore Refidgerator | $800.00 |
| 3 | General Electric Stove $ Oven | $600.00 |
| 4 | Whirlpool Dryer Machine | $700.00 |
| 5 | Whirlpool Washer Machine | $800.00 |
| 6 | Air Conditioner Unit $ System | $2,500.00 |
| 7 | Samsung 62 inch Television | $2,100.00 |
| 8 | Water heating boiler Tank | $550.00 |
| 9 | Computer (HP Desktop) | $850.00 |
| 10 | Dish washer | $250.00 |
| 11 | Samsung Microwave | $250.00 |
| 12 | Sofa's | $3,500.00 |
| 13 | 3 Bedroomsets | $6,000.00 |
| 14 | Furniture | $5,000.00 |
| 15 | | |
| 16 | | |

**Total = $26,100.00**