# Exhibit D

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: CHINESE-MANUFACTURED DRYWALL PRODUCTS LIABILITY LITIGATION | MDL NO. 2047 <br><br> SECTION: L |
| THIS DOCUMENT RELATES TO: <br><br> ***Elizabeth Bennett, et al. v. Knauf Gips, KG, et al.*** <br> **2:14-cv-02722-EEF-JCW** | JUDGE ELDON FALLON <br><br> MAG. JUDGE WILKINSON |

**PLAINTIFF FACT SHEET**

Name of Plaintiff: Levi Taylor

Affected Property Address: 4090 SW Kallen Street, Port St. Lucie, FL 34953

## I.  Purchase, Sale and/or Transfer of Ownership of Property

1.  On what date did you purchase the Property?

**Response**:  Plaintiff objects to this question as duplicative.  In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants.  Plaintiff has previously provided this information to defendants in the Bennett Supplemental Plaintiff Profile Form ("SPPF").  Plaintiff directs the defendants to Section II of the SPPF. Without waiving said objection, Plaintiff adopts the SPPF response again here and intends to provide the exact same date as provided in the verified SPPF as follows: Plaintiff purchased the property:

      (Month/Day/Year)     07 / 07 / 2005

2.  When you took ownership of the Property, what was the name of the seller?

Lester Lydzinski

3. Name and address of the realtor?

New Homes Realty, 8000 South U.S. Highway 1, Port St. Lucie, FL

4. Name and address of the closing agent?

Gail Logan, 1680 SW Bayshore Blvd. Suite 229, Port St. Lucie, FL  34984

5. What was the price of the home when you purchased it?  $ 292,600.00

6. Was it an "as-is" sale?

**Response**: Plaintiff objects to the use of "as-is" in this question as vague, ambiguous, uncertain, and unintelligible; consequently, Plaintiff cannot determine the exact nature of the information being sought.  This term is not defined and is not commonly understood with one accepted meaning; multiple inpretations are possible.  Without waiving said objection, plaintiff responds as follows:

[✓] Yes    [ ] No    [ ] I'm not sure.

7. If you sold or transferred ownership of the Property, what was the name of the purchaser?

N/A

8. If you sold or transferred ownership of the Property, what was the name and address of the realtor?

N/A

9. If you sold or transferred ownership of the Property, what was the name and address of closing agent?

N/A

10. If you sold or transferred ownership of the Property, what was the price paid for home?

$ N/A

## II.  Appraisal of the Home

11. Date of each appraisal:

a. _____/_____/20_____

b. _____/_____/20_____

2

**PFS REQUEST FOR DOCUMENT PRODUCTION #1**: Please produce copies of any and all appraisals performed on the house both prior and subsequent to the occurrence of any of the events alleged in the petition.

> **Response:** All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 1."

## III. Discovery of Drywall

12. Date that the property was constructed and/or renovated that installed the allegedly defective Chinese Drywall.

**Response:** Plaintiff objects to this question as duplicative. In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants. Plaintiff has previously provided this information to defendants in the Bennett Supplemental Plaintiff Profile Form ("SPPF"). Plaintiff directs the defendants to Section II of the SPPF. Without waiving said objection, Plaintiff adopts the SPPF response again here and intends to provide the exact same date as provided in the verified SPPF as follows: The property construction and/or renovation that installed the allegedly defective drywall occurred on or about the following date (to the best of my knowledge):

> (Month/Day/Year)          ____/____/20 05-06

**PFS REQUEST FOR DOCUMENT PRODUCTION #2**: Please produce all documents, reports, photographs, videotapes, samples and any other materials which evidence and/or identify that there is defective Chinese Drywall in the Property.

> **Response:** All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 2."

## IV. Manufacturer/Seller of Drywall

13. Who sold or distributed the drywall in the house?

**Response:** Plaintiff objects to this question as duplicative. In addition, Plaintiff objects to this question on the ground that it seeks information in the possession of, known to, or otherwise equally available to the defendants. Plaintiff has previously provided this information to defendants in the Plaintiff Profile Form ("PPF"). Plaintiff directs the defendants to Section X of the PPF. Without waiving said objection, Plaintiff adopts the PPF response again here and intends to provide the exact same information as provided in the verified PPF as follows: The drywall Supplier's name (to the best of my knowledge) is:

I don't know.

3

**PFS REQUEST FOR DOCUMENT PRODUCTION #3**: Please produce all documents, reports, photographs, videotapes, samples and any other materials which evidence and/or identify the manufacturer of drywall installed in the house. The submission must be in the form of PTO 1(B).

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 3."

## V.  Damages

**14.**  Identify any harm, financial or otherwise, that you contend was caused by defective Chinese Drywall installed in the Property.

**Response:**  Plaintiff directs the defendants to review the complaint filed with the court in this case for a full listing of the claims being asserted and the damages being sought. The defective Knauf Chinese Drywall emitted gasses that cause damage to Plaintiff's home and the personal property contained therein.  It also significantly diminished the use and enjoyment of the home; therefore, Plaintiff seeks the following:  all compensatory, statutory, and/or punitive damages; all pre-judgment and post-judgment interest as allowed by law; any appropriate injunctive relief; an award of attorney's fees as allowed by law; an award of taxable costs; and, any and all such further relief as a jury or judge presiding over my trial deems just and proper.  Other damages include, but are not limited to:

Constant repairs and replacement of appliances, electronics, personal items, and air

conditioning.  The sulfur smell is also horrible.

**15.**  If you contend that you entered personal bankruptcy as a result of damage to your property from defective Chinese Drywall, please describe the facts and circumstances that relate to your claim.

N/A

**16.**  If you contend that you entered short sale and/or foreclosure as a result of damage to your property from defective Chinese Drywall, please describe the facts and circumstances that relate to your claim.

N/A

4

**PFS REQUEST FOR DOCUMENT PRODUCTION #4**: If you claim loss of income, please produce any copies of any and all documentation upon which you intend to rely upon to prove this claim.

> **Response**: All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 4."

17.  If you claim diminution of the property as a result of Chinese Drywall, state with particularity each fact which supports your claim.

N/A _____

_____

_____

_____

18.  Identify the appliances, fixtures and/or other electronics, if any, that you claim were damaged by Chinese Drywall in the property.

> **Response**: An list of damaged items is attached as "Exhibit 14."

19.  If you vacated the property because of the alleged presence of Chinese Drywall, please provide:  Address of each location you stayed thereafter.

> a. N/A _____
>
> b. _____
>
> c. _____

20.  If you vacated the property because of the alleged presence of Chinese Drywall, please provide:  Time periods in which you resided at each property.

> a. _____/_____/20_____  to  _____/_____/20_____
>
> b. _____/_____/20_____  to  _____/_____/20_____
>
> c. _____/_____/20_____  to  _____/_____/20_____

21.  If you vacated the property because of the alleged presence of Chinese Drywall, please provide:  Moving costs and/or alternative living expenses you claim to have incurred as a result of the alleged presence of Chinese Drywall.

> a. $ N/A _____
>
> b. $_____
>
> c. $_____

**PFS REQUEST FOR DOCUMENT PRODUCTION #5:**  If you vacated the property because of the alleged presence of Chinese Drywall, please provide any documentation to support your claims.

> **Response:**  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 5."

22.  Are you claiming damages for personal injury?  ☐ Yes (explain below) ☑ No

_____

_____

23.  If you suffered personal injuries as a result of the alleged presence of Chinese Drywall:  Date you allege that you first sustained personal injuries as a result of your exposure to allegedly defective Chinese Drywall.

> **Response:**  ☑ N/A

24.  If you suffered personal injuries as a result of the alleged presence of Chinese Drywall:  What specific injuries have you suffered?

> **Response:**  ☑ N/A

25.  If you suffered personal injuries as a result of the alleged presence of Chinese Drywall:  Name and address of any doctor, physician, surgeon, chiropractor, or osteopath who examined and/or treated your alleged injuries.

> **Response:**  ☑ N/A

## VI.  Potential Witnesses/Evidence

26.  Has any written or recorded statement been taken from any witness or person who has knowledge of relevant facts, including the nature, character, and extent of the injuries referred to in the petition, and for each statement identified?

> ☐ Yes  ☑ No  ☐ I don't know

27.  If the answer to 26 is "yes," please state:  The name, address, and telephone number of the person from whom the statement was taken.

N/A _____

_____

6

28. If the answer to 26 is "yes," please state: The name, address, and telephone number of the person who took the statement.

N/A

29. If the answer to 26 is "yes," please state: The name address, and telephone number of the party having custody of such statement.

N/A

30. If the answer to 26 is "yes," please state: The date the statement was taken.

N/A

## VII. Already Remediated Properties

31. If you already remediated the Property, who conducted the remediation?

**Response:** ☑ N/A

32. When did the remediation commencement date occur?

**Response:** ☑ N/A

33. When did the remediation end date occur?

**Response:** ☑ N/A

34. What was the scope of the remediation and the scope of the work carried out?

**Response:** ☑ N/A

35. What costs or expenses, if any, did you incur related to the remediation of the Property?

**Response:** ☑ N/A

36. Were any samples from the remediation retained?

   **Response**:   ☑ N/A

37. If the response to 36 is "yes," were the samples compliant with PTO 1(B)?

   **Response**:   ☑ N/A

38. Were any photographs taken of the allegedly defective Chinese Drywall?

   **Response**:   ☑ N/A

39. If the response to 38 is "yes," were the photographs compliant with PTO 1(B)?

   **Response**:   ☑ N/A

**PFS REQUEST FOR DOCUMENT PRODUCTION #6**:  Please produce the following documentation concerning the remediation of the Property:  Any evidence of KPT Chinese Drywall and Non-KPT Chinese Drywall, if any, in the Property prior to remediation.

   **Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 6."

**PFS REQUEST FOR DOCUMENT PRODUCTION #7**:  Please produce the following documentation concerning the remediation of the Property:  Interior photographs of the Affected Property immediately prior to the commencement of, and following completion of, the remediation, including photographs and/or video images of the flooring and major components such as cabinets, moldings, doors, intercom systems, and fixtures for every room and bathroom and, to the extent possible, security systems, appliances and audio such as surround sound.

** The photographs do not need to be pictures taken specifically for the litigation. For example, family photographs or photographs taken for purposes of refinancing a mortgage are acceptable in the absence of other photographs.

   **Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 7."

**PFS REQUEST FOR DOCUMENT PRODUCTION #8**:  Please produce the following documentation concerning the remediation of the Property:  The remediation contract and an itemization from the contractor who performed the remediation work of the materials used during the remediation, including, but not limited to, manufacturer, model number, and quantity.

8

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 8."

**PFS REQUEST FOR DOCUMENT PRODUCTION #9**:   Please produce the following documentation concerning the remediation of the Property:  An itemized invoice from the contractor who performed the remediation work ("Itemized Invoice") showing the scope of work carried out.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 9."

**PFS REQUEST FOR DOCUMENT PRODUCTION #10**:   Please produce the following documentation concerning the remediation of the Property:  Proof of payment of the Itemized Invoice and any other expenses, such as cancelled checks, credit card statements, etc.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 10."

**PFS REQUEST FOR DOCUMENT PRODUCTION #11**:   Please produce the following documentation concerning the remediation of the Property:  A floor plan of the Affected Property with dimensions.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 11."

**PFS REQUEST FOR DOCUMENT PRODUCTION #12**:   Please produce the following documentation concerning the remediation of the Property:  An Environmental Certificate.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 12."

**PFS REQUEST FOR DOCUMENT PRODUCTION #13**:   Please produce the following documentation concerning the remediation of the Property:  An Owner Disclosure Affidavit in the form attached as Exhibit 1, which includes a certification that the materials provided comprise all of the available documentation regarding the following:  The drywall that was in the Affected Property prior to the commencement of the remediation; and, the scope, extent, and cost of the remediation.

**Response**:  All documents in Plaintiff's possession responsive to this request are attached as "Exhibit 13."

**VERIFICATION**

I hereby verify that the responses to the Plaintiff Fact Sheet are correct to the best of my knowledge.

_____
Signature of Plaintiff

_____   _____
                                   Date   1/18/19

Levi   TAYLOR
_____
Printed Name

# Exhibit 1

# Exhibit 2

# Exhibit 3



# REACTIVE DRYWALL INSPECTION REPORT

## 4090 SW Kallen St

**Inspection Date:**
**03/01/2017**
**Prepared For:**
Levi Taylor

**Prepared By:**
A-PROtected
Home Inspection Services
Port St. Lucie, FL. 34953
Phone 772-528-0873

**Report Number:**
**3594CD**
**Senior Inspector:**
Jerry Cook
HI402



© 2017 A-Protected Home Inspection Services

# REPORT OVERVIEW

**THE HOUSE IN PERSPECTIVE**

Chinese Drywall: Produced primarily by Knauf Plasterboard Tianjin (KPT), has been corroding wires, pipes and air conditioning units. Both federal and state environmental agencies are currently testing the drywall to determine the exact cause of the toxicity, but none of the suspect chemicals belong in drywall. The choices are sulfur, which turns into sulfuric acid when mixed with humid air; magnesium oxide, which is released in toxic form when exposed to humidity or heat; and fly ash residue, a by-product from Chinese power plants.

03/01/2017
Re: Investigation of a single family residence located at:

4090 SW Kallen St

Port St Lucie, FL. 34953

Dear : Levi Taylor
Per your request, we have prepared a written report containing a summarized presentation of our findings and professional conclusions relating to the content and/or geographic origin of the drywall building materials present within the above-identified (residential) property.

Upon conclusion of this inspection, A PROtected Property Inspections is of the opinion that reactive drywall is present in the subject property.

Please be advised that A PROtected Property Inspections uses nondestructive methods for determining the presence or absence of corrosive drywall and cannot guarantee the presence or absence of corrosive drywall without further destructive testing and/ or laboratory confirmation. The attached report describes the subject property, relevant data.
In preparing this inspection, it has been our intent to conform to the most recent Case Definition; Case Definition (12-18-09) for Drywall Associated Corrosion in Residences released by the Florida Department of Health. Additional effort has been made to substantially conform to MDL NO. 2047 Pretrial Order #13 US District Court, Eastern District of Louisiana and CPSC Interim ID guidance January 28, 2010.
The opportunity to assist you has been appreciated.
Respectfully submitted,

*Jerry Cook*

HI402 / MRSA892

Chinese Drywall Advisors

# Summary of Important Information:

## Assignment Information:

Client Levi Taylor

Purpose of the Report ........... Presentation of our findings and professional conclusions relating to the content, stability, and/or geographic origin of the drywall building materials present within the defined subject property.

Inspection date 03/01/2017

Property Identification
Property Type CBS

Property Location or
Address . 4090 SW Kallen St

County ................................... St. Lucie

Year Built ............................... 2006

Year Remodeled ................... None known

Cladding Type ....................... Stucco

Identified Homebuilder ......... Unknown

Gross Living Area ................. SF (Per Tax Assessor records) 2179

This confidential report is prepared exclusively for
© 2017

# Scope of Work:

It is the intent of the inspector to follow the guidance as set forth by the Florida Department of Health in Case Definition (12-18-09) for Drywall Associated Corrosion in Residences. Additional effort has been made to substantially conform to MDL NO. 2047 Pretrial Order #13 US District Court, Eastern District of Louisiana and CPSC Interim ID guidance January 28, 2010.
The scope of this analysis includes the following:

·   Identify the subject property by address and legal description.

·   If possible, identify the homebuilder or general contractor responsible for construction.

·   Ascertain if any renovations involving the installation of new drywall were completed in 2001 or later.

·   Determine certain physical characteristics such as year built, total square footage, exterior cladding type, if water and sewer is municipal or well and septic.

·   Check for the presence of sulfur odors caused by reactive drywall, well water or dry plumbing traps allowing the escape of sewer gases.

·   Record electrical equipment failure and the frequency of failure as reported by the occupants, if equipment was replaced, approximate replacement dates and supporting documentation if any. This includes such electrical equipment such as HVAC, televisions, fire and carbon monoxide alarms, computers, microwaves, refrigerators, light bulbs and light switches.

·   Determine the history of any HVAC (mechanical system) failures as reported by the occupants, if equipment such as copper coils was replaced, approximate replacement dates and supporting documentation if any.

·   Visually inspect for corrosion of HVAC coils and refrigerant lines, electrical outlet ground wires within 24 inches of the floor, blackening of silver mirror backings and other metallic components.

·   Present in written form, the results of this inspection including photographs of the subject property, general physical characteristics of the building, source of water and sewer service, client supplied reports of electrical and mechanical failures, observations and photographs of metals corrosion, a presentation of XRF testing data, and the laboratory results of sample(s) if sent for confirming evidence of reactive drywall.

# Analytical Methodology:

The non-invasive methodology used by A PROtected Property Inspections for this analysis is comprised of a three-step process, as outlined in the below graphic.

## Sensory

Odors(1)
Are sulfur-type, or other unusual ordors, noticeable in any interior space?
Reactive drywall may cause a rotten-egg smell resulting from a chemical reaction that is fostered by heat and humidity.

## Sentinel

Affective Dates
The home was constructed or renovated with new drywall since 2001. This includes water damage repairs from hurricanes. Signs of Corrosion(3) Exposure to corrosive gasses emanating from defective drywall may darken or cause advanced corrosion of metals, such as electrical wiring, HVAC coils or copper water lines. Other affected metallic surfaces may include chrome plated bathroom fixtures, silver and copper jewelry, and/or mirror backing in bathrooms.

## Instruments

Analytical Testing(4)
This methodology uses X-ray fluorescence (XRF) to test for elevated levels of the element strontium which serves as a marker or indicator for the presence of what is generally termed as "Chinese Drywall."

(1)Many homes with reactive drywall do not exhibit noticeable odors or unusual smells.

(3)Other causes of observed corrosion may include hydrogen sulfide from well water, sewer gas, or soil gas.

(4)X-Ray Fluorescence (XRF) instruments work by exposing a sample to be measured to a beam of X-Rays. The atoms of the sample absorb energy from the X-Rays, become temporarily excited and then emit secondary X-Rays. Each chemical element emits X-Rays at a unique energy. By measuring the intensity and characteristic energy of the emitted X-Rays, an XRF analyzer can provide qualitative and quantitative analysis regarding the composition of the material being tested.( A PROtected Property Inspections does not use this method. )

# Analysis of the Drywall Building Component:

## Introduction

This report section will summarize the three-step analysis of our investigation of the subject property.

## Sensory Survey:

### *Odors*

Have residents or visitors reported the presence of sulfur like odors within the home?

·    Yes   X No   ·    Comments: any?

Is there a presence of sulfur like odors within the home?

X Yes   ·   No   ·    Comments:

Is there any strong odor that could mask the wallboard odor or act as another odor source?

·    Yes   X No ·    Comments:

Important notice: Odors have not been reported in all homes exhibiting drywall associated corrosion.

## Sentinel Investigation

Step 1 – Sentinel Indicators of Drywall Associated Corrosion

Was the home

Built in 2001 or after? ........................ X Yes   ·   No ·    Comments: 2005

Any remodeling or

Renovation in 2001 or after? ............ ·    Yes   No ·    Comments: X N/A

Any water damage repairs requiring

new drywall in 2001 or after? ·    Yes X No ·    Comments:

### *Property Screening Profile*

Domestic water supply (1) .................. X Public ·   Well ·    Comments:

Sanitary waste disposal (1) ................. X Sewer ·   Septic ·    Comments:

Natural or propane gas service (1) ...... ·    Yes X No ·    Comments: Electric

Exposed drywall with Chinese

writing or symbols ........................... ·    Yes X No ·    Comments:

History of excessive

HVAC Repairs .................................. X Yes • No • Comments:

(1)Other causes of observed corrosion include hydrogen sulfide from well water, sewer gas or soil gas.

## *Metal Corrosion Observations*

1) Visually inspect HVAC evaporator coil and refrigerant (HVAC) lines for sulfur corrosion on copper.

Evidence found? X Yes • No

Comments: HVAC air handler was located in the garage attic resting on a horizontal axis. Support was not necessarily incorrect but not to where the inspector could be assured the unit would hold its shape to be able to reinstall the cover. Therefore the air handler was not inspected.

1) Visually inspect electric service panel copper components for sulfide corrosion.

Evidence found? X Yes • No

Comments: Hot water heater with copper fittings was close to the electric panel with no blackening corrosion therefore the panel cover was not removed

2) Visually inspect electrical receptacles/switch wiring for sulfide corrosion on copper.

Evidence found? X Yes • No

Comments: A large number of outlets and switches were examined. No blackening corrosion consistent with reactive drywall was found.
Typical view of Electrical Wiring :

Typical view of Electrical Wiring:

Visual observations of under sink copper and other copper for sulfide corrosion.

Evidence found? X Yes • No

1) Comments: No blackening corrosion was found on under sink exposed copper
Typical under sink copper

2) Visual observations of Exposed drywall with Chinese writing or symbols

Evidence found? • Yes X No

Comments: There was absolutely no evidence of reactive drywall due to corrosion within the home. The garage attic was inspected.

# Conclusions
## Based on Observed and Supporting Indicators

A summary of the steps taken to determine the presence or absence of reactive drywall and the findings of each step are:

1.) The front cover of the HVAC system's air handler unit (AHU) was removed to inspect for corrosion typically associated with reactive drywall on the copper components due to uncertainty of air handler support.

2.) Electrical outlets were pulled and examined throughout the home; abnormal corrosion or darkening was evident on the exposed copper wiring.

3.) Under the kitchen sink were examined for exposed copper. Copper found was evident of corrosion.

.
Therefore A PROtected Property Inspections is of the opinion that reactive drywall is present in the subject property.

Please be advised that A PROtected Property Inspections uses nondestructive methods for determining the presence or absence of reactive drywall and cannot guarantee the presence or absence of corrosive drywall without further destructive testing and/or laboratory confirmation.

# Certification

I certify that, to the best of my knowledge and belief:

1. The statements of fact contained within this report are true and correct.

2. The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.

3. I have no present or prospective interest in the property that is the subject of this report and I have no personal interest with respect to the parties involved.

4. I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

5. My engagement in this assignment was not contingent upon developing or reporting predetermined results.

My analyses, opinions and conclusions were developed, and this report has been prepared, in conformity with Case Definition (12-18-09) for Drywall Associated Corrosion in Residences by the Florida Department of Health. Additional effort has been made to substantially conform to MDL NO. 2047 Pretrial Order #13 US District Court, Eastern District of Louisiana and CPSC Interim ID guidance January 28, 2010.

*Jerry Cook*

_____
Jerry F. Cook, HI402 – MRSA8










# Exhibit 4

# Exhibit 5

# Exhibit 6

# Exhibit 7

# Exhibit 8

# Exhibit 9

# Exhibit 10

# Exhibit 11

# Exhibit 12

# Exhibit 13

# Exhibit 14

# Plaintiff Fact Sheet

Plaintiff: _Levi  Taylor_

Property Address: _4090 SW Kallen ST   PSL, Fl_

## Question #18 Itemization (Personal Property Damage)

| # | Description of Damaged Item | Value ($) |
|---|---|---|
| 1 | Vizio TV 50" | 600 |
| 2 | A/C | 2000 |
| 3 | Refrigerator | 1600 |
| 4 | Dishwasher | 350 |
| 5 | Microwave oven | 100 |
| 6 | Microwave | 100 |
| 7 | Stove/oven | 450 |
| 8 | Kitchen Sinks / Bathroom x4 | 300 ea |
| 9 | garbage Disposal | 200 |
| 10 | | |
| 11 | | |
| 12 | | |
| | | |
| | | |
| 15 | | |
| 16 | | |